# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | Joint Administration Requested |

## APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS AND DEBTORS IN POSSESSION TO RETAIN AND EMPLOY EPIQ BANKRUPTCY SOLUTIONS, LLC AS CLAIMS, NOTICING, AND BALLOTING AGENT PURSUANT TO 28 U.S.C. § 156(C), RULE 2002(F) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2002-1(F) AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby submit this application (the "Application") for entry of an order authorizing the Debtors to retain Epiq Bankruptcy Solutions, LLC ("Epiq") as claims, noticing, and balloting agent of the United States Bankruptcy Court for the District of Delaware,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1 of Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to (i) perform certain noticing functions; (ii) assist the Debtors in analyzing and reconciling proofs of claim filed against the Debtors' estates; and (iii) assist the Debtors with balloting in connection with any proposed chapter 11 plan. In support of this Application, the Debtors rely upon the affidavit of Daniel C. McElhinney, Executive Director of Epiq (the "McElhinney Affidavit"), attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.     On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), Bankruptcy Rule 2002 and Local Rule 2002-1(f).

## BACKGROUND OF THE DEBTORS

5.  Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.  The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.  The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

---

[2] The Debtors' subsidiaries that own the Chicago Cubs baseball operations and an interest in the broadcast network Comcast SportsNet Chicago, LLC are not Debtors in these cases.

8.  The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million. During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9.  By this Application, the Debtors seek authority to employ and retain Epiq to act as claims, noticing, and balloting agent (the "Claims Agent") in these chapter 11 cases as of the Petition Date, pursuant to 28 U.S.C. § 156(c), Bankruptcy Rule 2002, and Local Rule 2001-1(f).

## BASIS FOR RELIEF

10.  Pursuant to 28 U.S.C. § 156(c),[3] this Court is authorized to utilize agents and facilities other than the office of the Clerk of the Bankruptcy Court (the "Clerk") for the administration of bankruptcy cases, including such matters as (i) giving notice of the order for relief, the hearings and orders filed in the case, the meeting of creditors pursuant to section 341 of the Bankruptcy Code, and the setting of a claims bar date; (ii) providing record keeping and

---

[3] 28 U.S.C. § 156(c) provides, in relevant part, that "[a]ny court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the cost of such facilities or services are paid for out of the assets of the estate and are not charged to the United States."

claims docketing and reconciliation; and (iii) mailing and tabulating ballots for the purposes of voting in chapter 11 cases. In addition, Local Rule 2002-1(f) requires a debtor to file an application to retain a claims and noticing agent within ten (10) days of the Petition Date in all cases with more than 200 creditors.

11. As described more fully in the affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in Support of First Day Motions (the "Bigelow Affidavit") and the Debtors' Consolidated List of Creditors, filed concurrently herewith, the Debtors have more than 60,000 potential creditors. See Bigelow Affidavit at ¶ 33. Accordingly, pursuant to Local Rule 2002-1(f) and for the reasons set forth below, the Debtors submit this Application to engage Epiq to act as Claims Agent to the Court.

12. In connection with this Application, the Debtors have evaluated several potential candidates to serve as Claims Agent. Following that review, and in consideration of the number of anticipated claimants and other parties-in-interest, the nature of the Debtors' businesses, and the scope of the tasks for which the Debtors will require the assistance of a claims, noticing, and balloting agent, the Debtors respectfully submit that the appointment of Epiq is in the best interests of the Debtors' estates, their creditors, parties-in-interest, and this Court. Based on Epiq's considerable experience in providing similar services in large chapter 11 cases, the Debtors believe that Epiq is eminently qualified to serve as Claims Agent in these chapter 11 cases. The Debtors' estates, creditors, parties-in-interest, and this Court will benefit as a result of Epiq's experience and cost-effective methods.

13. Epiq has been retained in numerous complex chapter 11 cases in this District. See, e.g., In re WCI Communities, Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 5, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23,

2008); In re Quaker Fabric Corp., Case No. 07-11146 (KG) (Bankr. D. Del. Aug. 20, 2007); In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 17, 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 3, 2006) (MFW); In re Foamex International Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Sept. 20, 2005).

        14.     Specifically, as Claims Agent, Epiq will undertake the actions and procedures provided in the agreement, dated November 26, 2008, attached hereto as Exhibit B (the "Engagement Letter") including, but not limited to, the following:

- a. Notifying all potential creditors of the filing of the chapter 11 petitions discussed herein and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code;

- b. Notifying all potential creditors of the last date for the filing of proofs of claim and furnishing a form for filing a proof of claim to creditors and parties-in-interest;

- c. Filing affidavits of service for all mailings performed by Epiq, including a copy of each notice, a list of persons to whom such notice was mailed, and the date mailed;

- d. Maintaining an official copy of the Debtors' Schedules, listing creditors and amounts owed;

- e. Docketing all claims filed and maintaining the official claims register on behalf of the Clerk and providing to the Clerk an exact duplicate thereof;

- f. Specifying in the claims register for each claim docket (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant, (iv) the filed amount of the claim, if liquidated and (v) the allowed amount of the claim;

- g. Recording all transfers of claims and providing notices of the transfer as required pursuant to Bankruptcy Rule 3001(e);

- h. Maintain the official mailing list of all entities that have requested service of pleadings in these cases;

- i. Maintain the official mailing list of all entities that have filed a proof of claim or proof of interest, which lists shall be available upon request of the Clerk's Office;

- j. Notifying all potential creditors and parties-in-interest of any hearings on a disclosure statement and confirmation of a plan of reorganization;

k.  Mailing the Debtors' disclosure statement, plan, ballots and any other related solicitation materials to holders of impaired claims and equity interests;

l.  Receiving and tallying ballots and responding to inquiries respecting voting procedures and the solicitation of votes on the plan;

m.  Providing any other distribution services as are necessary or required; and

n.  Providing such other claims processing, noticing, and related administrative services as may be requested from time to time by the Debtors, including, but not limited to, maintaining a website for the limited purpose of disseminating publicly-available information about the Debtors' chapter 11 cases (http://chapter11.epiqsystems.com/tribune) such as copies of notices and key pleadings and establishing a toll-free call center to operate during the early days of the chapter 11 cases to provide publicly-available information about the cases.

15. Epiq has advised the Debtors of its willingness to perform the above-described services in accordance with the terms of the Engagement Letter and the guidelines promulgated by the Judicial Conference of the United States for the implementation of Section 156(c), Title 28, United States Code, 28 U.S.C. § 156(c).

16. The McElhinney Affidavit represents that Epiq has conducted a thorough analysis of its contacts with each of the Debtors and the significant potential creditors and parties-in-interest in these chapter 11 cases. To the best of Epiq's knowledge, neither Epiq nor any of its personnel have any relationship with the Debtors that would impair Epiq's ability to serve as Claims Agent. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor. To the best of Epiq's knowledge, such relationships are completely unrelated to these chapter 11 cases. In addition, Epiq personnel may have relationships with certain of the Debtors' creditors or other parties in interest. However, to the best of Epiq's knowledge, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to these chapter 11 cases. Epiq has and will continue to represent clients in matters unrelated to these chapter 11 cases. Epiq also has had and will

continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases. Based upon the McElhinney Affidavit, Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

17. Epiq's compensation is set forth in the Engagement Letter. The Debtors respectfully submit that such compensation is reasonable in light of the services to be performed by Epiq, as Claims Agent. Furthermore, the Debtors request authorization to compensate Epiq for services rendered, without further order this Court, upon the submission of monthly invoices by Epiq of reasonably detailed invoices to the Debtors, the Office of the United States Trustee, and any official committee(s) appointed in the Debtors' chapter 11 cases; provided, however, that such parties shall have 15 days from the submission of each such invoice to object thereto, and the Court shall resolve any such objections.

18. As part of the overall compensation payable to Epiq under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations. The Engagement Letter provides that the Debtors will indemnify Epiq to the extent permitted by applicable law for any claim arising from, related to, or in connection with Epiq's performance of the services described in the Engagement Letter. The Debtors request the Court's approval of the indemnification provisions in the Engagement Letter, subject to the following clarifications:

    a. Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, Epiq, in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Epiq's performance of the services described in the Engagement Letter;

    b. Epiq shall not be entitled to indemnification, contribution, or reimbursement for services other than the claims agent services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

c. Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Court's Order; and

d. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Epiq believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, Epiq must file an application before this Court, and the Debtors may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Epiq.

## NOTICE

19. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; and (vii) the indenture trustee for the Debtors' prepetition notes. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

20.     No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein, and such further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 8, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION