# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | Joint Administration Requested |

## MOTION OF THE DEBTORS FOR AN
## ORDER AUTHORIZING, BUT NOT DIRECTING, THE
## PAYMENT OF CERTAIN PREPETITION SALES, USE, FRANCHISE
## AND PROPERTY TAXES, LICENSING FEES, AND SIMILAR OBLIGATIONS

The above-captioned debtors and debtors in possession (each a "Debtor" and

collectively, the "Debtors") hereby move this Court (the "Motion") pursuant to sections 105(a)

and 507(a)(8) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order

(i) authorizing the Debtors, in their discretion, to pay certain accrued and outstanding prepetition

sales, use, franchise and real and personal property taxes, and such other similar taxes as the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Debtors deem necessary, as well as fees for licenses, and other similar charges and assessments, and (ii) authorizing banks and other financial institutions to honor and process all checks and wire transfers related to the payment of such prepetition taxes and such other prepetition fees, charges and assessments.  The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in Support of First Day Motions (the "Bigelow Affidavit").  In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a) and 507(a)(8) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.      Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.      The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.      The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

8.      The Debtors are based in the United States, with headquarters located in Chicago, Illinois.  In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million.  During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue.  Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments.  For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9.      In the ordinary course of business, the Debtors incur certain sales, use, franchise and real and personal property taxes, fees for licenses and reporting, and other similar charges and assessments (collectively, the "Taxes") that are payable directly to various state and local taxing authorities (collectively, the "Taxing Authorities") as such payments become due. The Debtors have facilities and operations located throughout the United States; accordingly, they are subject to the payment of Taxes to numerous Taxing Authorities located throughout the country.[3]

10.     Although the Debtors believe that they are current on all of their Taxes that have become due as of the Petition Date, because many of such Taxes are paid on a periodic basis (and in arrears), there is in many instances a lag between the time when the Debtors incur an obligation to pay the Taxes and the date such Taxes become due and payable.  Various Taxing

---

[3] The most recent Form 10-K filed by Debtor Tribune Company states that the Debtors had printing plants, business offices, editorial offices, studios, transmitters and/or warehouse space in at least 15 states and the District of Columbia, demonstrating the wide geographic scope of the Debtors' operations.  See Form 10-K for the year ending Dec. 31, 2007, located at http://www.sec.gov/Archives/edgar/data/726513/000110465908018845/a08-2334_110k.htm.

Authorities may therefore have claims against the Debtors for Taxes that have accrued but remain unpaid as of the Petition Date, and for certain other Taxes that will come due during the pendency of these cases.

11.    By this Motion, the Debtors seek authority, in their discretion, to pay the relevant Taxing Authorities any Taxes that have accrued, but were not yet due and owing or were not paid in full, as of the Petition Date and any prepetition Taxes that arose prior to the Petition Date that become due and owing during the pendency of these cases in the ordinary course of business.  The Debtors estimate that as of the Petition Date, their accrued and unpaid liabilities for Taxes included approximately $2.7 million in sales and use taxes, $4.6 million in personal property taxes, $8.2 million in real property taxes, $24,000 in franchise taxes, $1.0 million in certain state and local taxes, licensing fees, charges, and similar assessments, and $142,000 in other, similar tax obligations.   By this Motion, the Debtors seek to pay such Taxes up to the amounts specified as estimates in this paragraph plus additional amounts, if necessary, up to 25% beyond the foregoing estimates.  Although the Debtors believe that their estimates of their tax liabilities set forth in this Motion have been accurately and completely prepared, permitting total payments on account of such prepetition Taxes up to 125% of their estimated amount will permit the Debtors to pay most or all additional tax liabilities that may be identified while limiting or eliminating the need to secure further Court approvals for payment of such amounts.  The Office of the United States Trustee has been consulted concerning this relief, and the United States Trustee does not object to the relief requested herein.

12.    In addition, the Debtors are subject to certain audit investigations and may be subject to further audit investigations (the "Audits") during the pendency of these cases that may result in prepetition Taxes (the "Audit Amounts").  The Debtors have included such real and potential Audit Amounts in their estimates in this Motion, and the Debtors seek authority, in

their discretion, to satisfy any such Audit Amounts in the ordinary course of business. However, nothing contained herein or in the order approving this Motion constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Audit Amount. The Debtors expressly reserve all rights with respect to any Audit. Furthermore, the Debtors reserve the right to contest the Audit Amounts, if any, claimed to be due as a result of the Audits.

13.    To implement the relief requested herein, the Debtors further request that the order approving this Motion authorize banks and other financial institutions to honor and process transfers, deposits, or checks issued by any of the Debtors on account of any prepetition Taxes that have not cleared as of the Petition Date and to rely on the representations of the Debtors as to which checks are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## BASIS FOR RELIEF

14.    There are several reasons to grant the relief requested herein. First, a portion of the Taxes may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code and therefore must be paid in full under any plan of reorganization. See 11 U.S.C. § 1129(a)(9)(c). Second, in some or all of the states in which the Debtors do business, liens can attach to real and personal property on which the Debtors have unpaid property Taxes, thus potentially entitling the relevant Taxing Authorities to a secured claim against property of the relevant Debtor's estate. Payment of those Taxes will therefore affect only the timing of the payments, and not the amounts that would ultimately be payable to the applicable Taxing Authorities.

15.    Third, certain Taxing Authorities may assert that certain of the Taxes are so-called "trust fund" taxes that the Debtors are required to collect from third parties and hold in trust for the benefit of such Taxing Authorities. To the extent that the Debtors collect sales, use

and other Taxes from their customers on behalf of the Taxing Authorities, such Taxes may not constitute property of the estate.  See Begier v. Internal Revenue Service, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because such funds are not property of the debtor's estate).  As a consequence, the Debtors would not have an equitable interest in such Taxes and, assuming they could be adequately identified and traced, such amounts would not constitute property of the Debtors' estates and would not be subject to the automatic stay.  See City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994); see also 11 U.S.C. § 541(d) (limiting property of the estate to property in which a debtor has legal title).  Accordingly, because the Debtors have no equitable interest in any such trust fund Taxes, payment of such Taxes does not prejudice the rights of any of the Debtors' other creditors, and the Debtors should be able to pay any Taxes that constitute trust fund taxes as they become due and payable.

16.    Even if some of the Taxes would not ordinarily be considered "trust fund" taxes in a particular jurisdiction, payment of such Taxes should nevertheless be authorized because some Taxing Authorities may audit the Debtors if such Taxes are not timely paid.  Such audits would needlessly divert the Debtors' attention from their reorganization efforts.  In addition, like unpaid property taxes, some Taxing Authorities may also seek to impose liens on the Debtors' assets on account of unpaid "trust fund" Taxes, which liens would require time, effort and expense for the Debtors to challenge and remove.  An improper lien or the failure to pay certain Taxes might also affect the Debtors' good standing in a particular state, potentially affecting the Debtors' ability to continue operating in the ordinary course.  Timely payment of the Taxes is necessary to avoid such distractions and is thus in the best interests of the Debtors and their estates.

17.     Fourth, some states hold responsible officers personally liable in various circumstances for unpaid sales and use taxes. See, e.g., John F. Olson et al., Director & Officer Liability: Indemnification and Insurance § 3:21 (2003) ("some states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation, regardless of cause") (citing W. Va. Code § 11-15-17 and Ohio Rev. Code Ann. § 5739.33).  To the extent that any such "trust fund" taxes remain unpaid by any of the Debtors, their officers could be subject to civil liability or criminal prosecution during the pendency of these chapter 11 cases. The possibility of any such lawsuit or criminal prosecution would distract the Debtors and their officers in their effort to implement a successful reorganization strategy to the detriment of all parties-in-interest.

18.     Under Bankruptcy Rule 6003, any motion seeking to use property of the estate pursuant to Bankruptcy Code section 363, or seeking to satisfy prepetition claim amounts within 20 days of the Petition Date, requires that the debtor demonstrate that such relief would prevent "immediate and irreparable harm."  As described more fully in the Bigelow Affidavit, the Debtors believe that, among other things, their successful reorganization will require good standing within the states in which they do business and a complete devotion of effort by their officers and directors to these cases.  Given that the Debtors operate in 15 states and the District of Columbia, often with more than one facility in each state, and have sales in most, if not all states, there are a vast number of state and local Taxing Authorities with which the Debtors interact.  If any of the Taxing Authorities attempt to exercise certain remedies against the Debtors, it would have the devastating effect of distracting the attention of the Debtors' management and professionals away from the important task of the Debtors' successful reorganization.  For these reasons, if the relief requested herein is not granted, the tax obligations

described above would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, their reorganization efforts.

19. In numerous chapter 11 cases, bankruptcy courts in this District have exercised their equitable powers under section 105(a) of the Bankruptcy Code to authorize debtors to pay their prepetition tax obligations. See, e.g., In re Hilex Poly Co. LLC, Case No. 08-10890 (Bankr. D. Del. May 6, 2008) (KJC); In re Linens Holdings Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008); In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Feb. 20, 2008) (KG); In re Lillian Vernon Corp., Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS); In re Buffets Holdings, Inc., Case No. 08-10141 (Bankr. D. Del. Jan 23, 2008) (MFW); In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (Bankr. D. Del. Aug. 7, 2007) (CSS); In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. Jan. 4, 2006) (MFW); In re Meridian Automotive Systems – Composite Operations, Case No. 05-11168 (Bankr. D. Del. April 27, 2005) (MFW); In re Maxide Acquisitions, Inc., Case No. 05-10429 (Bankr. D. Del. Feb. 15, 2005) (MFW); In re Ultimate Electronics, Inc., Case No. 05-10104 (Bankr. D. Del. Jan. 13, 2005) (PJW).

20. Nothing in this Motion or any order entered with respect hereto should be construed as affecting the Debtors' ability to contest the amount or basis of any Taxes that may be due to the various Taxing Authorities, or requiring the Debtors to pay any of the applicable Taxes, and the Debtors expressly reserve all of their rights and defenses with respect thereto.

### NOTICE

21. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative

agents for the Debtors' prepetition loan facilities; and (vii) the indenture trustee for the Debtors'

prepetition notes.  Notice of this Motion and any order entered hereon will be served in

accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the

Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

22.    The Debtors have not previously sought the relief requested herein from

this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors, in their discretion, to pay any accrued and outstanding Taxes in the ordinary course of business, (ii) authorizing banks and other financial institutions to honor and process all checks and wire transfers involving the payment of such Taxes, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      December 8, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Bridget J. Hauserman
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION