## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | Joint Administration Requested |

## MOTION OF THE DEBTORS FOR
## AN ORDER AUTHORIZING THE DEBTORS TO
## (I) PAY INSTALLMENTS UNDER PREPETITION
## INSURANCE PREMIUM FINANCE ARRANGEMENT,
## (II) CONTINUE PREPETITION INSURANCE PROGRAMS
## AND (III) PAY ALL PREPETITION OBLIGATIONS IN RESPECT THEREOF

The above-captioned debtors and debtors in possession (each a "Debtor" and

collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court

(the "Motion") pursuant to sections 105(a) and 363(b) of the United States Code (the

"Bankruptcy Code") for entry of an order, authorizing the Debtors to (i) pay, in the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

discretion, all postpetition installment payments under their prepetition insurance premium finance arrangement as they come due, (ii) continue their prepetition insurance programs, and (iii) pay all prepetition obligations in respect thereof.  The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in Support of First Day Motions (the "Bigelow Affidavit").  In further support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.      Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors.  The Debtors

2

operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.      The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the <u>Los Angeles Times</u> and the <u>Chicago Tribune</u>. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.      The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

8.      The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "<u>Tribune Entities</u>") recorded revenues of approximately $5.1 billion, resulting in net income

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

of approximately $87.0 million.  During this time, the publishing segment contributed

approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment

segment contributed approximately 28% of the Tribune Entities' revenue.  Advertising revenue

is the primary source of revenue for both the publishing and broadcasting and entertainment

segments.  For the quarterly period ended September 28, 2008, the consolidated financial

statements of the Tribune Entities reported approximately $7.6 billion in total assets and

approximately $13.9 billion in total liabilities.

## THE INSURANCE POLICIES AND PAYMENT OBLIGATIONS

9.      In connection with the day-to-day operations of their businesses, the

Debtors maintain various insurance programs (the "Insurance Programs") and related insurance

policies (as set forth on a non-exhaustive list attached hereto as Exhibit A,[3] the "Insurance

Policies")[4] through several different insurance providers (the "Insurance Providers").[5]  As

described above (at ¶¶ 5 - 8), the Debtors operate a large and sophisticated business and have

numerous Insurance Policies covering a variety of matters such as general liability, media

---

[3] Due to the size, complexity and number of business units that the Debtors operate, it is possible that certain of the Debtors' Insurance Policies may have been inadvertently omitted from the list of Insurance Policies attached hereto as Exhibit A.  Accordingly, Exhibit A represents a non-exhaustive list of Insurance Policies and the Debtors reserve the right, pursuant to the terms and conditions of this Motion and without further order from the Court, to amend Exhibit A to add any Insurance Policies that were omitted therefrom and to request that the relief requested herein apply equally to all such entities.  In the event the Debtors add any Insurance Policies to Exhibit A, the Debtors will serve this Motion, any order approving same, and a revised version of Exhibit A upon the issuer(s) of any such Insurance Policy or Policies, the Office of the United States Trustee, and any official committee(s) appointed in the Debtors' chapter 11 cases.

[4] In addition to the Insurance Policies listed in Exhibit A, the Debtors maintain numerous insurance policies with respect to workers' compensation, employee health, dental, disability, and life insurance benefits.  These policies are addressed in a separate motion filed contemporaneously herewith pertaining to the Debtors' employee benefits programs.

[5] One of the Insurance Providers, Multimedia Insurance Company, is a Vermont corporation and a wholly-owned direct subsidiary of Debtor Tribune Company.  Multimedia Insurance Company did not commence a chapter 11 case on the Petition Date.

liability, directors' and officers' liability, fiduciary liability, property, travel, and aviation, among others.[6]

10.    The Debtors are required to pay premiums under the Insurance Programs based on a fixed amount established and billed by each Insurance Provider.  The aggregate annual premiums under Insurance Programs, excluding the Financed Premium Policy (as described below) are approximately $10.2 million.  Depending on the particular Insurance Policy, premiums are either (i) paid in monthly installments or (ii) pre-paid at a policy's inception or renewal.

11.    Nearly all premiums under the Debtors' Insurance Policies are paid at the policy's inception, and hence were paid in full prior to the Petition Date.  In addition, those Insurance Policies under which premiums are paid in monthly installments were paid in full prior to the Petition Date.  The Debtors accordingly believe that they have satisfied their financial obligations under those Insurance Policies.  Out of an abundance of caution, however, in order to prevent any disruption of the Debtors' Insurance Policies and any attendant harm to the Debtors' businesses that such disruption would cause, the Debtors seek authorization, but not the direction, to make any prepetition premium payments as necessary and to perform any other prepetition obligations that may be necessary to maintain the Insurance Policies.[7]

12.    In one case, the Debtors have entered into a premium finance arrangement (the "Premium Finance Arrangement", a copy of which is attached hereto as Exhibit B) to

---

[6] One of the non-Debtor affiliates of the Debtors, Chicago National League Baseball Club, Inc., is covered by an insurance program mandated by and brokered through Major League Baseball.  That program is not listed on Exhibit A hereto and is not covered by this Motion.

[7] To implement the relief sought herein to maintain their Insurance Programs and make ongoing payments on account of the Premium Finance Arrangement, the Debtors request that the order approving this Motion provide that the Debtors' banks and financial institutions are authorized to process and honor all checks and transfers issued for payments approved by that order and/or reissue checks for any payments approved by that order where checks may be dishonored postpetition and to rely on the representations of the Debtors as to which checks are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instruction.

finance payment of the $2,374,081 premium[8] under their property insurance policy (the

"Financed Insurance Policy") with Factory Mutual Insurance Company ("FMIC"). The Debtors

executed the Premium Finance Arrangement with Premium Financing Specialists, Inc. ("PFS")

on August 19, 2008, covering the Financed Insurance Policy, which is effective from September

1, 2008 through July 1, 2009.  Under the Premium Finance Arrangement, PFS paid

$2,172,782.55 in upfront insurance premiums to FMIC in connection with the Financed

Insurance Policy.  In return, the Debtors were obligated to pay eleven (11) monthly installments

of $201,298.45 (the "PFS Payments") at an annual interest rate of 3.8% (the "Finance

Payments") to PFS as provided in the schedule to the Premium Financing Arrangement.

13.    The Debtors have made all PFS Payments that came due prior to the

Petition Date.  The Debtors are required to pay the next PFS Payment on January 1, 2009.  By

this Motion, the Debtors seek authority to make the January 1 payment and, for the avoidance of

doubt, all remaining payments under the Premium Finance Arrangement, which total $1,207,790.

### RELIEF REQUESTED

14.    By this Motion, the Debtors seek authority to continue performing their

obligations under the Insurance Programs and the Premium Finance Arrangement.  In view of

the importance of maintaining the insurance coverage with respect to their business activities and

the preservation of the Debtors' cash flow by financing their property insurance premium, the

Debtors believe it is in the best interests of their estates and their creditors for the Court to

authorize the Debtors to honor their obligations under the Insurance Programs and the Premium

Finance Arrangement.  Any other alternative would likely require considerable cash

---

[8] Prior to entering into the Premium Financing Arrangement the Debtors made a single cash down payment of
$201,298.45 thereby reducing the portion of the premium financed under the Premium Financing Agreement to
$2,172,782.55.

expenditures, result in the Debtors obtaining insurance coverage on less desirable terms than

their current coverage, and would be detrimental to the Debtors' restructuring efforts.

## BASIS FOR RELIEF REQUESTED

15.    The Court may authorize the Debtors to pay PFS pursuant to the Premium

Finance Arrangement and honor their obligations under the Insurance Programs under section

363(b) of the Bankruptcy Code.  Section 363(b)(1) authorizes a debtor in possession "after notice

and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of

the estate."  11 U.S.C. § 363(b)(1).

16.    Pursuant to section 363(b), a bankruptcy court is empowered to authorize

a debtor to expend funds in the bankruptcy court's discretion outside of the ordinary course of

the debtor's business.  In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

"Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of

circumstances."  Id.; see also In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (D.

Del. 1999) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with

'substantial freedom to tailor his orders to meet differing circumstances' and to avoid 'shackling

the judge with unnecessarily rigid rules.'") (internal citation omitted).  Although section 363(b)

does not set forth a standard for determining when it is appropriate to authorize transactions

outside of the ordinary course, courts generally grant such relief if the debtors articulate a sound

business purpose.  See Fulton State Bank v. Schipper (In re Schipper), 993 F.2d 513, 515 (7th

Cir. 1991).  In addition, "[a] debtor's business decision should be approved by the court unless it

is shown to be so manifestly unreasonable that it could not be based upon sound business

judgment, but only on bad faith or whim or caprice."  In re Aerovox, Inc., 269 B.R. 74, 80

(Bankr. D. Mass. 2001) (internal citation omitted).

7

17.    The Debtors have compelling business reasons for seeking to maintain their Insurance Policies in force.  The insurance coverage provided under the Debtors' Insurance Policies are essential for preserving the Debtors' businesses, property, and assets, and, in many cases, such coverage is required by various regulations, laws, and contracts that govern the Debtors' business.  If the Debtors did not continue to perform their obligations under the Insurance Policies and the Premium Finance Arrangement, their coverage under the Insurance Policies could be voided.  Disruption of their insurance coverage would expose the Debtors to serious risks, including: (a) the possible incurrence of direct liability for the payment of claims that otherwise would have been payable by the Insurance Providers under the Insurance Policies; (b) the possible incurrence of material costs and other losses that otherwise would have been reimbursed by the Insurance Providers under the Insurance Policies; (c) the possible loss of good-standing certification to conduct business in states that require the Debtors to maintain certain levels of insurance coverage; (d) the possible inability to obtain similar types of insurance coverage; and (e) the possible incurrence of higher costs for re-establishing lapsed policies or obtaining new insurance coverage.[9]  Any or all of these consequences would be seriously harmful to the Debtors' business and restructuring efforts, as they would expose the Debtors to higher costs and increased risks of loss at a minimum.  To avoid those consequences, the relief requested herein should be granted.

18.    Additionally, if postpetition installment payments under the Premium Finance Arrangement are not paid as they come due, PFS could seek relief from the automatic stay to terminate the Financed Insurance Policy.  Pursuant to the Premium Finance Arrangement, the Debtors assigned to PFS all unearned premiums and loss payments with reference to the

---

[9] Nothing contained herein is intended or should be construed as:  (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

Financed Insurance Policy as security for payment of the Premium Finance Arrangement. As a result, PFS may be entitled to adequate protection of their interests in the Financed Insurance Policies pursuant to section 363(e) of the Bankruptcy Code. The Debtors' failure to provide such adequate protection—for example, by not paying the ongoing installments due under the Premium Finance Arrangement, as requested herein—may constitute cause, under section 362(d) of the Bankruptcy Code, for PFS to obtain relief from the automatic stay to terminate the Financed Insurance Policy. If PFS succeeds in such a request, the Debtors would be forced to seek replacement insurance coverage. Even if the Debtors are able to purchase replacement insurance coverage, it is doubtful that they would be able to do so on terms and conditions as favorable as those presently in place under the Financed Insurance Policy. In addition, given the current circumstances, there is no assurance that the Debtors would be able to obtain insurance coverage quickly enough to prevent a lapse in coverage.

19.    The relief requested in this Motion is commonly granted in chapter 11 cases in this District of roughly comparable size and complexity. See, e.g., In re Buffets Holdings, Inc., Case No, 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008 (interim order), Feb. 11, 2008 (final order)); In re Quaker Fabrics Corp., Case No. 07-11146 (KG) (Bankr. D. Del. Sept. 5, 2007); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 3, 2007); In re Pliant Corp., No. 06-10001 (Bankr. D. Del. Feb. 1, 2006); In re Budget Group, Inc., No. 02-12152 (Bankr. D. Del. July 30, 2002); In re USG Corporation, No. 01-2094 (Bankr. D. Del, June 27, 2001); In re Pillowtex, Inc., No. 00-4211 (Bankr. D. Del. Nov. 14, 2000).

20.    Under Bankruptcy Rule 6003, any motion seeking to use property of the estate pursuant to Bankruptcy Code section 363, or seeking to satisfy prepetition claim amounts

within 20 days of the Petition Date, requires that the debtor demonstrate that such relief would prevent "immediate and irreparable harm." As described more fully in the Bigelow Affidavit, and for the reasons stated above, the Debtors believe any interruption in insurance coverage caused by the Debtors' inability to pay prepetition claim amounts or generally satisfy their obligations as they come due under the Insurance Policies and the Premium Finance Arrangement will cause immediate and irreparable harm to the Debtors' estates. The Debtors accordingly believe that maintaining continued and uninterrupted insurance coverage under the favorable terms and conditions provided by the Insurance Policies and the Premium Finance Arrangement clearly is in the best interests of the Debtors, their estates, and their creditors. Accordingly, the Debtors seek authority for to pay all postpetition installment payments under the Premium Finance Arrangement and the Insurance Policies as they come due.

## NOTICE

21.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; and (vii) the indenture trustee for the Debtors' prepetition notes. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

22.    No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the Debtors request this Court to enter an order, in substantially the form attached hereto, (i) authorizing the Debtors to pay, in their discretion, all postpetition installment payments under the Premium Finance Arrangement as they come due, (ii) authorizing the Debtors continue their prepetition Insurance Programs, and (iii) authorizing the Debtors to pay, in their discretion, all prepetition obligations in respect thereof, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
        December 8, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Bridget J. Hauserman
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

        -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION