# EXHIBIT B



P O BOX 419090
KANSAS CITY, MO 64141-6090
(816)942-6336 FAX: (816)942-7352

**Premium Financing Specialists, Inc.**
A MISSOURI CORPORATION, HOME OFFICE, KANSAS CITY, MISSOURI
**PREMIUM FINANCE AGREEMENT**

| | | | AGENT (Name & Place of business) | INSURED Name and residence or business |
|---|---|---|---|---|
| **A** | CASH PRICE (TOTAL PREMIUMS) | $2,374,081.00 | FM GLOBAL | TRIBUNE |
| **B** | CASH DOWN PAYMENT | $201,298.45 | 300 SOUTH NORTHWEST HWY | 435 NORTH MICHIGAN AVENUE |
| **C** | PRINCIPAL BALANCE (A MINUS B) | $2,172,782.55 | PARK RIDGE       IL     60068 (847)430-7000 | CHICAGO         IL     60611 |

**LOAN DISCLOSURE**                                                  Quote Number: 16347

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 3.8 % | $41,500.40 | $2,172,782.55 | $2,214,282.95 |

| | YOUR PAYMENT SCHEDULE WILL BE | | ITEMIZATION OF THE AMOUNT FINANCED: |
|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | THE FULL AMOUNT FINANCED WAS PAID TO THE INSURANCE COMPANY. |
| 11 | $201,298.45 | MONTHLY Beginning: 9/1/2008 | |

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:** A late charge will be imposed on any installment in default 5 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge in accordance with Rule of 78's. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $20.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | # OF TERMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 8/1/2008 | FACTORY MUTUAL INSURANCE CO | PRPRTY | 12 | $2,374,081.00 |

| (CHECK CORRECT BOX)   ☐ PERSONAL   ☑ COMMERCIAL | | | TOTAL $ | $2,374,081.00 |
|---|---|---|---|---|

The undersigned insured directs Premium Financing Specialists, Inc. (herein, "Lender") to pay the premiums on the policies described above. In consideration of such premium payments the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the Provisions herein set forth.

The named insured:
1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.
2. Irrevocably appoints Lender **attorney-in-fact** of the insured with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.
3. Understands that the finance charge begins to accrue as of the earliest policy effective date.

4. Agrees to all provisions set out on pages 1 and 2 of this agreement.
NOTICE:
A. Do not sign this agreement before you read it or if it contains any blank space.
B. You are entitled to a completely filled in copy of this agreement.
C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

D. Keep your copy of this agreement to protect your legal rights.

_Rodden_                                            8-19-08
(Signature of Insured or Authorized Agent)          DATE

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____              _____
SIGNATURE OF AGENT                          DATE

(10/07) Copyright 1968 Premium Financing Specialists, Inc.         Page 1 of 2

08/19/06                          PLUS - ILC

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If cancellation occurs, the insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law.

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an insured's check or electronic funding is dishonored for any reason, the insured will pay to Lender a fee, if permitted by law, of $20 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender' Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement of the policy on behalf of the insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The insured agrees that Lender has no liability to the insured if the policy is not reinstated.

**11. ASSIGNMENT:** The insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's succesors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the insured on Lender' behalf (except to the extent expressly required by applicable law).

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money insured owes under this Agreement. (Not applicable in KY or MD)

**15. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligent or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the insured and can only be changed in writing and signed by both parties except that the insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the insured's address on the Agreement will govern this Agreement.

## AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the insured has received a copy of this Agreement and has authorized this transaction, the insured's signature is genuine, and the down payment has been received from the insured in cash, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtness of the insured.

# PREMIUM FINANCING SPECIALISTS, INC.

| | | |
|---|---|---|
| Insured | TRIBUNE | |
| Account Number | | |
| Amount Financed | $2,172,782.55 | |
| APR | 3.800% | |
| Effective Date | 8/1/2008 | |

| PYMT DATE | PYMT AMT | Number of Days in Period | EARNED INTEREST | REMAINING BALANCE |
|---|---|---|---|---|
| 9/1/2008 | $201,298.45 | 30 | $6,880.48 | $1,978,364.58 |
| 10/1/2008 | $201,298.45 | 30 | $6,264.82 | $1,783,330.95 |
| 11/1/2008 | $201,298.45 | 30 | $5,647.21 | $1,587,679.71 |
| 12/1/2008 | $201,298.45 | 30 | $5,027.65 | $1,391,408.92 |
| 1/1/2009 | $201,298.45 | 30 | $4,406.13 | $1,194,516.59 |
| 2/1/2009 | $201,298.45 | 30 | $3,782.64 | $997,000.78 |
| 3/1/2009 | $201,298.45 | 30 | $3,157.17 | $798,859.50 |
| 4/1/2009 | $201,298.45 | 30 | $2,529.72 | $600,090.77 |
| 5/1/2009 | $201,298.45 | 30 | $1,900.29 | $400,692.61 |
| 6/1/2009 | $201,298.45 | 30 | $1,268.86 | $200,663.02 |
| 7/1/2009 | $201,298.45 | 30 | $635.43 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | | | $0.00 | $0.00 |
| | $2,214,282.95 | 330 | $41,500.40 | |

ol←

J. B. (Jack) Rodden
Vice President/Treasurer
312/222-8613

# TRIBUNE

Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611
fax: 312/222-3148

August 19, 2008

Dave Feller
Vice President
Premium Financing Specialists, Inc.
13520 Wyandotte
Kansas City, MO  64145

Dear Mr. Feller:

This letter is to confirm the understanding and agreement between Tribune Company (the
"insured") and Premium Financing Specialists, Inc. (the "Lender") with respect to the parties'
Premium Finance Agreement in connection with Tribune's property insurance policy from
Factory Mutual Insurance Company, effective August 1, 2008 (the "Agreement").  This letter
agreement will supercede and control in the event of any inconsistency between the terms of this
letter agreement and the Premium Finance Agreement.

Insured will have five (5) days from the due date of any installment payment before being
considered to be in default of the Agreement. Not earlier than the sixth (6th) date from the due
date of any installment payment, Lender may issue a written Notice of Intent to Cancel,
providing at least ten (10) days written notice to insured, as well as such other notice as may be
required by statute, of Lender's intent to cancel the policy.  Insured shall have ten (10) days from
the date of its receipt of any such Notice of Intent to Cancel to cure any default before Lender
shall issue any Notice of Cancellation of the policy.

If Lender issues a Notice of Cancellation and the policy is cancelled, and insured subsequently
brings its account with Lender current, Lender will send to the insurer a Request for
Reinstatement of the policy, and will assist and cooperate with the insured in seeking such
reinstatement

This confirms that if insured cancels the policy, it is obligated under the Agreement only to the
extent that any unearned premium is insufficient to pay off the balance of the account under the
Agreement.

Finally, this confirms that insured is not obligated to provide any collateral or security to Lender
in connection with the Agreement other than the security expressly identified in paragraph 1 of
the Agreement.

Dave Fuller
August 19, 2008
Page 2

Please indicate Lender's agreement to the terms of this letter by returning a copy of the letter, signed in the space indicated below, to the undersigned at your earliest convenience.  Thank you for your courtesy and cooperation regarding this matter.

Sincerely,

Jack Rodden

AGREED: _____

Premium Financing Specialists, Inc.