## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | Joint Administration Requested |

## MOTION FOR AN INTERIM ORDER AND A FINAL ORDER PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

The above-captioned debtors and debtors in possession (each a "Debtor" and

collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court

(the "Motion") for entry of (i) an interim order (the "Interim Order") and (ii) a final order (the

"Final Order") pursuant to sections 105(a) and 366 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code"): (a) prohibiting utility providers (each a "Utility Provider" and collectively, the "Utility Providers") from altering, refusing, or discontinuing services to the Debtors, except as set forth herein; (b) deeming the Utility Providers adequately assured of future performance; and (c) establishing procedures for resolving requests for additional adequate assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Utility Providers. The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in Support of First Day Motions (the "Bigelow Affidavit"). In further support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.      Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.      The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.      The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

8.      The Debtors are based in the United States, with headquarters located in Chicago, Illinois.  In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million.  During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue.  Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments.  For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

### RELIEF REQUESTED

9.      By this Motion, the Debtors seek entry of (i) an Interim Order and (ii) a Final Order (a) prohibiting the Utility Providers from altering, refusing, or discontinuing service to the Debtors on account of prepetition invoices, including the making of demands for security deposits or accelerated payment terms; (b) providing that the Utility Providers have "adequate assurance of payment" within the meaning of section 366 of the Bankruptcy Code based, inter alia, on the Debtors' establishment of a segregated account containing an amount equal to fifty percent (50%) of the Debtors' estimated average monthly cost of utility service, which may be adjusted by the Debtors for reasons specified herein following the final hearing on this Motion; and (c) establishing procedures for resolving requests for additional adequate assurance and authorizing the Debtors to provide adequate assurance of future payment to the Utility Providers.

10.      Uninterrupted Utility Services are essential to the Debtors' ongoing operations and the success of the Debtors' reorganization efforts.  A disruption of the Utility

Services at any of the Debtors' facilities would likely be costly to the Debtors and harmful to their businesses, as the Debtors would be forced from the outset of these chapter 11 cases to focus on finding replacement Utility Providers and services, rather than focusing on the operation and restructuring of their businesses.  Moreover, the business disruption that would likely result from interruption of the Utility Services would damage customer relationships, revenues, and profits and would adversely affect the Debtors' restructuring efforts, to the detriment of their estates, creditors, and employees.  It is therefore critical that Utility Services to the Debtors continue uninterrupted.

## A.    The Utility Providers

11.    In connection with the operation of their businesses and management of their properties, the Debtors incur utility expenses in the ordinary course of business for, among other things, water, sewer service, electricity, gas, local and long-distance telecom service, data service, fiber transmission, waste disposal and other similar services (the "Utility Services").  On a monthly basis, the Debtors spend approximately $5.510 million for the various Utility Services. These Utility Services are provided by approximately 200 Utility Providers nationwide, with which one or more of the Debtors may have multiple utility accounts.  A non-exhaustive list of the Utility Providers is attached hereto as Exhibit A.[3]

## B.    The Proposed Adequate Assurance

12.    Section 366(a) of the Bankruptcy Code prohibits utilities from altering, refusing, or discontinuing service to a debtor for the first twenty (20) days of a bankruptcy case.

---

[3] While the Debtors have exercised their best efforts to list all of their Utility Providers and account numbers in Exhibit A, it is possible that certain Utility Providers and/or account numbers may have been omitted from this list. The Debtors reserve the right to amend Exhibit A to add any Utility Providers and/or account numbers that were omitted therefrom and to request that the relief requested herein apply equally to all such entities and accounts. Furthermore, the relief requested herein shall apply to all of the Debtors' accounts with every Utility Provider listed in Exhibit A regardless of whether or not such accounts are contained in Exhibit A.  In addition, the Debtors reserve the right to argue that any of the entities now or hereafter listed in Exhibit A are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

However, pursuant to section 366(c)(2) of the Bankruptcy Code, in a chapter 11 case, a utility

provider may refuse or discontinue service to a debtor after the first thirty (30) days if the debtor

has not furnished the utility provider with adequate assurance of future payment.

13.     The Debtors intend to pay all postpetition obligations to the Utility

Providers in a timely manner, consistent with the ordinary course of operating their businesses

postpetition.  However, to provide adequate assurance of payment for future services to the

Utility Providers as set forth in section 366(c) of the Bankruptcy Code, the Debtors propose to

deposit an initial sum equal to fifty percent (50%) of the Debtors' estimated average monthly

cost of Utility Services (the "Adequate Assurance Deposit"), into an interest-bearing, newly-

created, segregated account (the "Adequate Assurance Account") within twenty (20) days of the

Petition Date, pending further order of this Court.  Because the Debtors' approximate monthly

spending on Utility Services is $5.510 million, the Adequate Assurance Deposit will be

approximately $2.755 million.

14.     The Debtors further propose to maintain the Adequate Assurance Account

with a minimum balance equal to fifty percent (50%) of the Debtors' estimated average monthly

cost of Utility Services through the final hearing on the Motion.  Thereafter, the Debtors propose

to adjust the amount in the Adequate Assurance Account to reflect several factors: (i) the

termination of Utility Services by the Debtors regardless of any Additional Assurance Requests

(as defined below), (ii) agreements with Utility Providers, and (iii) to remove from the monthly

spending figure cited in paragraph 11, supra, any amount spent on Utility Services from Utility

Providers that already hold deposits or other security from the Debtors for such Utility Services.

These adjustments will permit the Debtors to maintain the Adequate Assurance Account with an

amount that consistently provides the Utility Providers that do not otherwise hold deposits or security for their Utility Services with a half-monthly deposit on account of such services.

15.     The Debtors submit that the Adequate Assurance Deposit, taken together with the facts and circumstances of the Debtors' chapter 11 cases (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers. Specifically, the Debtors collectively comprise one of the largest and most prominent media-related businesses in the United States.  As set forth in the Bigelow Affidavit, the Debtors have considerable liquidity with which to continue operating their businesses and substantial ongoing cash flow.  As a result, the Debtors are objectively very likely to continue paying their obligations to the Utility Providers post-petition.

16.     These protections ensure that all Utility Providers will have adequate assurance of payment throughout these cases, and the Debtors believe that no other or further assurance is necessary.  However, if any Utility Provider believes adequate assurance is required beyond the protections described herein, it must request such assurance pursuant to the procedures described below (the "Adequate Assurance Procedures").

C.     **Proposed Adequate Assurance Procedures**

17.     To ensure that all Utility Providers receive adequate notice of the Proposed Adequate Assurance, the Debtors propose that the Court approve and adopt the following Adequate Assurance Procedures:

a.     The Debtor will serve a copy of this Motion, together with the proposed final utility order, which includes the proposed procedures, on each Utility Provider within three (3) business days after entry of the Interim Order by the Court.[4]

---

[4] In addition, the Debtors seek authority, without further order of this Court, to supplement the list of Utility Providers on Exhibit A if any Utility Provider has been inadvertently omitted.  If the Debtors supplement the list subsequent to the filing of this Motion, the Debtors will serve a copy of this Motion and the proposed final utility order on any Utility Provider (the "Supplemental Utility Provider") that is added to the list by such supplement (the

b.     If a Utility Provider is not satisfied with the Adequate Assurance Deposit provided by the Debtors, the Utility Provider must serve a request for additional adequate assurance (the "Additional Assurance Request") so that it is received by the Debtors at the following addresses: (i) Tribune Company, 435 North Michigan Avenue, Chicago, Illinois 60611, Attn: Ms. Stephanie Pater and (ii) Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Kenneth P. Kansa.

c.     Any Additional Assurance Request must (i) be in writing; (ii) set forth the location(s) for which Utility Services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, and (iv) set forth why the Utility Provider believes that the Proposed Adequate Assurance is not sufficient additional adequate assurance of future payment.

d.     Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving an Additional Assurance Request, if the Debtors, in their discretion, determine that the Additional Assurance Request is reasonable.

e.     If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider, the Debtors will request a hearing before this Court within a reasonable time after receipt of the Additional Assurance Request to determine the adequacy of assurance of payment with respect to a particular Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code. Such hearing will be without prejudice to the right of any Utility Provider to seek relief separately under section 366(c)(3) of the Bankruptcy Code (any hearing requested by the Debtors or a Utility Provider, the "Determination Hearing").

f.     Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be restrained from altering, refusing, or discontinuing service to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

---

"Supplemental Service").

g.      The Adequate Assurance Deposit shall be deemed adequate assurance of payment for any Utility Provider that fails to make an Additional Assurance Request.

18.      The Debtors request a final hearing on this Motion to be held within twenty-five (25) days of the Petition Date to ensure that, if a Utility Provider argues that it can unilaterally refuse service to any of the Debtors on the thirty-first (31st) day after the Petition Date, they will have the opportunity, to the extent necessary, to request that the Court make such modifications to the Adequate Assurance Procedures in time to avoid any potential termination of Utility Services.

## DISCUSSION

19.      The starting point for determining whether proposed adequate assurance for utilities is in fact adequate is section 366 of the Bankruptcy Code.  While the form of adequate assurance of payment may be limited under subsection 366(c) to the types of security enumerated in subsection 366(c)(1)(A), the amount of the deposit or other form of security remains within the reasonable discretion of the Court.[5]  It is well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment. See, e.g., In re Caldor, Inc.—NY, 199 B.R. 1, 3 (S.D.N.Y. 1996) (stating that "[s]ection 366(b) requires [a] Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'") (citation omitted); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances ...").  Instead, the protection granted to a utility is intended to avoid exposing the

_____

[5] Section 366(c)(1)(A) provides that "assurance of payment" may be in the form of cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or another form of security that is mutually agreed on between the utility and the debtor.  11 U.S.C. § 366(c)(1)(A).

utility to an unreasonable risk of nonpayment. See, e.g., Mass. Elec. Co. v. Keydata Corp. (In re

Keydata Corp.), 12 B.R. 156, 158 (1st Cir. B.A.P. 1981).  Further, courts have recognized that, in

determining what constitutes "adequate" assurance, a bankruptcy court must "focus upon the

need of the utility for assurance, and … require that the debtor supply no more than that, since

the debtor almost perforce has a conflicting need to conserve scarce financial resources."

Virginia Elec. & Power Co. v. Caldor, Inc.—NY, 117 F.3d 646, 650 (2d Cir. 1997) (quoting

Penn Jersey, 72 B.R. at 985).

      20.     The adequate assurance proposed to be provided by the Debtors in this

Motion gives the Utility Providers ample assurance of payment in a well-precedented manner.

The facts and circumstances surrounding the Debtors demonstrate that they operate a prominent

and well-established business with ample liquidity to honor their postpetition obligations to the

Utility Providers.  To bolster the Utility Providers' assurance of payment even further, the

Debtors propose to make the Adequate Assurance Deposit, the initial amount of which will equal

fifty percent (50%) of their average monthly expenditures for all Utility Services (subject to

adjustment as described in paragraph 14, supra, after the date of the final hearing on the motion),

into an interest-bearing, newly-created, segregated account for the express purposes of providing

adequate assurance to the Utility Providers.[6]  This segregated fund provides concrete assurance

of the Debtors' payment of their future obligations to the Utility Providers.  That assurance alone

satisfies section 366's requirement for adequate assurance of payment.

      21.     The Debtors propose to protect the Utility Providers further by

establishing the Adequate Assurance Procedures provided herein, under which any Utility

---

[6] Reducing the amount of the Adequate Assurance Deposit by removing the average monthly costs of those Utility Providers that hold prepetition deposits or other security for payment of Utility Services is appropriate and warranted in these cases, given that those Utility Providers already by definition hold a deposit to assure payment from the Debtors of their Utility Services.

Provider can request additional adequate assurance in the event that it can demonstrate facts and circumstances that it will provide postpetition services to the Debtors that would merit greater protection. Establishing a single set of Adequate Assurance Procedures is necessary in the Debtors' cases given the large number of Utility Providers (over 200), the diverse nature of the Debtors' businesses, and the large number of the Debtors' facilities that use the Utility Services. Although the Debtors do not believe that any Utility Provider should require assurance of payment beyond that afforded by the Adequate Assurance Payment, the centralized Adequate Assurance Procedures ensure that any requests therefor can be addressed in a timely fashion by the Debtors and their counsel without the submission of piecemeal, varied requests to the Court over time.

22.     The mechanisms proposed in this Motion strike a reasonable, common-sense balance between providing "adequate assurance of payment for utility service that is satisfactory" as set forth in section 366(c)(2) of the Bankruptcy Code, on the one hand, and the Debtors' well-recognized need to conserve cash for use in their business on the other. The need to strike this balance has been acknowledged by courts and commentators since the 2005 amendments to section 366. See, e.g., In re Syroco, Inc., 374 B.R. 60, 61-62 (Bankr. D.P.R. 2007) (holding that a court may order assurance of payment to a utility provider to be adequate absent objection from the utility provider); In re Beach House Property, LLC, 2008 WL 961498 (Bankr. S.D. Fla. 2008) (holding that a court may determine the form of adequate assurance to be provided to a utility provider absent agreement of the parties on the issue). In light of the need to strike that balance, section 366 should "be read to require a utility to bargain in good faith with the trustee or debtor in possession before electing to discontinue service thereafter." See Bertrand Pan & Jennifer Taylor, Sustaining Power: Applying 11 U.S.C. § 366 in Chapter 11

Post-BAPCPA, 22 Bankr. Dev. J. 371, 382, 389 (2006) (stating that Congress's intent could not

have been to allow a utility unfettered discretion in determining what constitutes a satisfactory

assurance of payment, because such an interpretation would be "completely inconsistent with the

purpose of 366," and that "reading 366(c) to require a utility to negotiate in good faith … would

enable courts to give utilities deference in the negotiating process, but also prevent utilities from

refusing to negotiate or making unreasonable demands in the negotiation process"), and to have

such requests adjudicated at a Determination Hearing absent an agreement with the Debtors.

23.     The Debtors propose the Adequate Assurance Procedures as a mechanism

to facilitate good faith bargaining between the Debtors and the Utility Providers and as a means

to ensure that the determination of whether adequate assurance is satisfactory to the Utility

Providers is balanced and reasonable in the event that any of the Utility Providers believe they

are entitled to protection beyond that afforded by the proposed Adequate Assurance Deposit.

The Adequate Assurance Procedures also ensure that the Utility Providers are not prejudiced by

the continuation of the Utility Services, given that they have a full and fair opportunity on notice

to make any requests for additional assurance of payment to the Bankruptcy Court.

24.     In addition to its powers to grant the relief sought in this Motion under

section 366, this Court also has the authority to grant the relief requested herein pursuant to

section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order,

process or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  The purpose of section 105(a) is "to assure the bankruptcy courts [sic] power to

take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2

Collier on Bankruptcy, ¶ 105.01 (15th rev. ed. 2008).  For all of the reasons described herein, the

proposed Adequate Assurance Procedures protect the Debtors without materially prejudicing the

Utility Providers. Therefore, the proposed Adequate Assurance Procedures implement section 366 in a manner fully consistent therewith and are an appropriate exercise of this Court's authority under section 105(a) of the Bankruptcy Code.

25.     This Court has granted relief similar to that requested herein – i.e., establishment of an adequate assurance deposit equal to 50% of monthly expenditures on utilities and comparable adequate assurance procedures – in other chapter 11 cases pursuant to its powers under sections 105(a) and 366 of the Bankruptcy Code. See, e.g., In re Linens Holdings Co., Case No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008 (interim order), May 27, 2008 (final order)); In re Hilex Poly Co. LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008 (interim order), May 22, 2008 (final order)); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008 (interim order), Feb. 28, 2008 (final order)); In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 7, 2007 (interim order), Sept. 4, 2007 (final order)); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. April 3, 2007 (interim order), April 25, 2007 (final order)); In re Medifacts Int'l, Inc., Case No. 07-10110 (PJW) (Bankr. D. Del. Jan. 30, 2007 (interim order), Feb. 20, 2007 (final order)); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2007 (interim order), Nov. 21, 2006 (final order)); and In re Nellson Nutraceutical, Inc., Case No. 06-10072 (PJW) (Bankr. D. Del. Jan. 31, 2006 (interim order), Feb. 23, 2006 (final order)). The relief sought in this Motion thus represents a well-precedented and reasonable means of adequately assuring payment for the Utility Services while ensuring that the Debtors' businesses are permitted to operate without the prospect of disruptions that would result from the interruption of those services.

## NOTICE

26.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the indenture trustee for the Debtors' prepetition notes; and (viii) the Utility Providers.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

27.     Notice of entry of the Interim Order and notice of the hearing on the final relief requested herein also will be provided to the Utility Providers, each other party that the Debtors believe could be affected by this Motion, and all other parties required to receive service under Rule 2002-1(b) of the Local Rules.

## NO PRIOR REQUEST

28.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order, in substantially the form attached hereto, and a Final Order, in substantially the form attached hereto, (a) prohibiting Utility Providers from altering, refusing, or discontinuing services to the Debtors, except as set forth herein; (b) deeming the Utility Providers adequately assured of future performance; (c) establishing the Adequate Assurance Procedures; and (d) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      December 8, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Kenneth P. Kansa
Bridget J. Hauserman
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION