# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | Joint Administration Requested |

## ORDER GRANTING THE DEBTORS' MOTION FOR (I) AN ORDER AUTHORIZING, ON AN EMERGENCY BASIS, PAYMENT OF CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) AN ORDER AUTHORIZING, BUT NOT DIRECTING, AFTER NOTICE AND A HEARING, DEBTORS TO PAY CERTAIN OBLIGATIONS ARISING IN CONNECTION WITH GOODS RECEIVED BY THE DEBTORS WITHIN THE TWENTY DAY PERIOD BEFORE THE PETITION DATE

Upon the Motion[2] of the above-captioned debtors and debtors in possession for

entry of (i) an order authorizing, on an emergency basis, the Debtors to pay, in their discretion,

certain prepetition claims of critical vendors and (ii) an order authorizing, but not directing, after

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to such terms in the Motion.

notice and a hearing, the Debtors, in their discretion, to pay certain obligations arising under section 503(b)(9) of the Bankruptcy Code in connection with goods supplied by vendors that were received by the Debtors in the ordinary course of their businesses within the twenty day period before the Petition Date; and upon consideration of the Motion and all pleadings related thereto, including the Bigelow Affidavit; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and good and sufficient cause appearing therefor, it is hereby:

ORDERED, that the Motion is granted with respect to payment of the Critical Vendor Claims; and it is further

ORDERED, that the Debtors are authorized, in their discretion and in the reasonable exercise of their business judgment, to pay and/or effect a Cancellation of the prepetition claims of Critical Vendor Claims subject to the conditions set forth in this Order; and it is further

ORDERED, that the Debtors' payment of the Critical Vendor Claims shall not exceed $20,350,000 million in the aggregate unless otherwise ordered by the Court after notice and a hearing; and it is further

ORDERED, that after the date hereof, the Debtors shall determine who is a Critical Vendor by considering, among other things, whether failure to pay such creditor's prepetition claims will have a material impact on the Debtors' operations; and it is further

2

ORDERED, that the Debtors shall undertake all appropriate efforts to cause each Critical Vendor to enter into Trade Agreement with the Debtors, including, but not limited to, the following terms:

(a)     The amount of such Critical Vendor's estimated prepetition claim, after accounting for any setoffs, other credits and discounts thereto, shall be as mutually determined in good faith by the Critical Vendor and the Debtors (but such amount shall be used only for purposes of the Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

(b)     The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions as set forth in this Court's Order;

(c)     The Critical Vendor's agreement to provide goods and/or services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs), or such other favorable trade terms as mutually agreed to by the Debtors and such Critical Vendor, and the Debtors' agreement to pay the Critical Vendor in accordance with such terms;

(d)     The Critical Vendor's agreement not to file or otherwise assert against the Debtors, their estates or any of their assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Critical Vendor by the Debtors arising from goods provided to the Debtors prior to the Petition Date, and that, to the extent that the Critical Vendor has previously obtained such a Lien, the Critical Vendor shall immediately take all necessary actions to release such Lien;

(e)     The Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby;

(f)     The Critical Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

(g)     If a Critical Vendor who has received payment of a prepetition claim subsequently refuses to supply goods to the Debtors on Customary Trade Terms or other favorable trade terms, any payments received by the

3

Critical Vendor on account of its Critical Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Critical Vendor, and that such Critical Vendor shall immediately repay to the Debtors any payments received on account of its Critical Vendor Claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of setoff or reclamation.

ORDERED, that the Debtors may, in their discretion, enter into a Trade Agreement with an individual Critical Vendor and the terms of any such Trade Agreement are hereby incorporated by reference and approved; and it is further

ORDERED, that any such Trade Agreement entered into by the Debtors with an individual Critical Vendor and hereby incorporated by reference and approved shall not automatically terminate upon confirmation of a plan of reorganization (the "Confirmation Date"); and it is further

ORDERED, that the Debtors may, in their discretion, terminate a Trade Agreement with an individual Critical Vendor (a "Terminated Critical Vendor"), together with the other benefits to the Terminated Critical Vendor as contained in this Order, at their discretion provided, however, that in the event the Debtors terminate a Trade Agreement with a Critical Vendor they shall provide notice of such termination to the office of the United States Trustee and any other official committee of unsecured creditors appointed in these cases; and it is further

ORDERED, that if the Debtors choose not to immediately terminate a Trade Agreement upon a refusal by the participating Critical Vendor party to provide goods in accordance with such Trade Agreement, the Debtors shall not be deemed to have waived their right to terminate such Trade Agreement; and it is further

ORDERED, that if a Trade Agreement is terminated as set forth above, or a Critical Vendor who has received payment of a prepetition claim later refuses to continue to supply goods to the Debtors on Customary Trade Terms during the pendency of these chapter 11 cases, the Debtors may, in their discretion, deem provisional payments made to the Critical Vendor on account of prepetition Trade Claims to have been in payment of then outstanding postpetition amounts owed to such Terminated Critical Vendor without further order of the Court or action by any person or entity.  Such Terminated Critical Vendor shall then immediately repay to the Debtors any payments made to it on account of its Critical Vendor Claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendor, without the right of setoff or reclamation; and it is further

ORDERED, that upon termination of a Trade Agreement by the Debtors, and any related recovery by the Debtors from the Terminated Critical Vendor of amounts paid by the Debtors to the Terminated Critical Vendor, the claim for which such payment initially was made shall be reinstated as a prepetition claim in the amount disgorged as a result of the termination, subject to objection by the Debtors and other parties-in-interest and the claims allowance process; and it is further

ORDERED, that the execution of the Trade Agreement by the Debtors shall not be declared a waiver of any other cause of action, including avoidance actions, that may be held by the Debtors; and it is further

ORDERED, that nothing in this Order shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid hereunder; and it is further

ORDERED, that all applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions; and it is further

ORDERED, that notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is intended to constitute, the assumption or adoption of any contract or agreement under 11 U.S.C. § 365; and it is further

ORDERED, that the Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order; and it is further

ORDERED, that the Court will consider authorization of payment of certain Twenty Day Claims at a hearing scheduled for _____, 2008 at _____ [_.m] (EST) with objections due by _____, 2008 at _____ [_.m] (EST); and it is further

ORDERED, that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
         _____, 2008

         _____
         United States Bankruptcy Judge

6