**EXHIBIT B**

## OMNIBUS AMENDMENT

This OMNIBUS AMENDMENT, dated as of December 8, 2008 (this "Amendment"), is by and among TRIBUNE RECEIVABLES, LLC, as Borrower (the "Borrower"), TRIBUNE COMPANY, as Servicer (in such capacity, the "Servicer") and as Parent (the "Parent"), the subsidiaries of Parent party hereto (the "Sub-Originators"), BARCLAYS BANK PLC, as a committed lender (in such capacity, the "Lender"), as a funding agent in such capacity, the "Funding Agent") and as the administrative agent (in such capacity, the "Administrative Agent").

## BACKGROUND

1.      Borrower, Servicer, the Lender, the Funding Agent and the Administrative Agent are parties to that certain Receivables Loan Agreement, dated as of July 1, 2008 (as heretofore amended, the "RLA").

2.      The Parent, the Servicer, the Sub-Originators and the Borrower are parties to that certain Receivables Purchase Agreement, dated as of July 1, 2008 (as heretofore amended, the "RPA").

3.      The Borrower,  the Servicer, the Persons party thereto as Sub-Servicers and the Administrative Agent are parties to that certain Servicing Agreement, dated as of July 1, 2008 (as heretofore amended, the "Servicing Agreement").

4.      On December 8, 2008 (the "Filing Date"), the Parent and each of the Filing Sub-Originators (as defined below) filed, with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

5.      The Lender has agreed to continue to make Loans available to the Borrower notwithstanding the Chapter 11 Cases (as defined below) upon the terms and conditions set forth in the RLA and the other Transaction Documents, as amended by this Amendment.

6.      The parties hereto desire to amend the RLA, the RPA and the Servicing Agreement in certain respects as set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

SECTION 1.   Definitions.  Capitalized terms used in this Amendment and not otherwise defined herein shall have the meanings assigned thereto in the RLA.

SECTION 2.   Amendments to RLA.

(a)      Section 1.1 of the RLA is hereby amended by inserting each of the following definitions thereto in appropriate alphabetical order:

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court as shall have jurisdiction over the Chapter 11 Cases.

"**Budget**" means a 13 week projection as to sources and uses of funds delivered to the Administrative Agent and the Lenders, and which shall be in form and detail reasonably acceptable to the Administrative Agent.

"**Carve-out**" has the meaning set forth in the Financing Orders.

"**Chapter 11 Cases**" means the Chapter 11 cases of the Parent and certain of its Subsidiaries jointly administered under case no. 08-13141 in the Bankruptcy Court.

"**DIP Documents**" means the Post-Petition Omnibus Amendment, the Guaranty, the Guaranty Security Agreement, the Letter of Credit Agreement and the DIP Fee Letter.

"**DIP Fee Letter**" means, collectively, (i) the amended and restated fee letter, dated as of December 8, 2008, between Parent and the Administrative Agent with respect to, among other things, the Applicable Margin, and (ii) the fee letter, dated as of December 8, 2008, between the Parent and the Administrative Agent as to, among other things, the amendment fee with respect to the Post-Petition Omnibus Amendment.

"**Filing Date**" means December 8, 2008.

"**Filing Debtor**" means Parent, a Filing Sub-Originator or any other Subsidiary of Parent that is a debtor in any of the Chapter 11 Cases.

"**Filing Sub-Originator**" means each of the Sub-Originators listed on Schedule I to the Post-Petition Omnibus Amendment.

"**Final Financing Order**" means an order of the Bankruptcy Court which contains substantially the same provisions as the Interim Financing Order, in form and substance satisfactory to the Administrative Agent.

"**Financing Orders**" mean, collectively, the Interim Financing Order and the Final Financing Order.

"**Guarantor**" means each of Parent and the Filing Debtors.

"**Guarantor Collateral**" means the assets of the Guarantors subjected to liens in favor of the Administrative Agent under the Guaranty Security Agreement and the Financing Orders.

"**Guaranty**" means the Guaranty, dated as of December 8, 2008, of the Guarantors in favor of the Administrative Agent, as the same may be amended, restated or otherwise modified from time to time.

"**Guaranty Security Agreement**" means the Security Agreement, dated as of December 8, 2008, among the Parent, the Filing Debtors and the Administrative Agent, as the same may be amended, restated or otherwise modified from time to time.

"**Interim Financing Order**" means an order of the Bankruptcy Court entered on an emergency and/or interim basis, in form and substance satisfactory to the Administrative Agent, and after notice given and a hearing conducted in accordance with Bankruptcy Rule 4001(c) no later than December 10, 2008 authorizing and approving the transactions contemplated in the DIP Documents and finding, among other things, that the Lenders are extending credit to the Borrower in good faith within the meaning of Bankruptcy Code § 364(e), which order shall, on an interim basis, (i) approve the payment by the Borrower and the Parent of the fees set forth in Clause 2.4(c) hereof and the professional fees of the Administrative Agent, (ii) grant and approve the liens and security interests and administrative expense claims contemplated in the Transaction Documents, (iii) otherwise be in form and substance satisfactory to the Administrative Agent and (iv) prior to the entry of the Final Financing Order, be in full force and effect and shall not have been stayed, reversed, vacated or otherwise modified without the prior written consent of the Lenders.

"**Letter of Credit Agreement**" means the Letter of Credit Agreement, dated as of December 8, 2008, between Barclays, as letter of credit provider, the Parent and certain Subsidiaries of the Parent party thereto, as the same may be amended, restated or otherwise modified from time to time.

"**Permitted Adverse Claim**" means an Adverse Claim that is permitted to exist under the covenants contained in Section 4.27 of the Receivables Purchase Agreement.

"**Permitted Disposition**" shall be as agreed between the Parent and the Administrative Agent.

"**Post-Petition Omnibus Amendment**" means the Omnibus Amendment, dated as of December 8, 2008, among the Borrower, the Parent, the Servicer, the Sub-Originators, the Lenders party thereto, the Funding Agent and the Administrative Agent.

"**Pre-Petition Loan Balance**" means, as of any date of determination, an amount equal to (a) the aggregate Principal Balance of the Loans as of the opening of business on the Filing Date minus (b) all amounts applied by the Borrower to the repayment of the principal amount of the Loans in accordance with Clause 2.6(b)(ii) or (v) and 2.7(b)(vi) or (viii) of the Receivables Loan Agreement after the Filing Date (it being understood that each Repeat Advance shall constitute a repayment of the Loans in an amount equal to such Repeat Advance for purposes of this definition).

(b)    The definition of "Base Rate" is hereby amended by changing the word "higher" in the first line thereof to "highest," inserting ", and" after clause (ii) of such definition and adding the following new clause (iii) and proviso at the end of such definition:

(iii) one month LIBOR determined on such date in good faith by the Administrative Agent in the manner contemplated by the definition of Eurodollar Rate; provided that in no event shall the Base Rate be less than 3.25% per annum.

(c)     The definition of "Eurodollar Rate" is hereby amended by inserting the following proviso at the end thereof: "; provided that in no event shall the Eurodollar Rate be less than 2.25% per annum".

(d)     The definition of "Facility Limit" is hereby amended by inserting the following proviso at the end thereof: "provided, further, that the Facility Limit shall not exceed $225,000,000 until the Pre-Petition Loan Balance shall have been reduced to zero".

(e)     The definition of "Facility Termination Date" is hereby amended by deleting the date "June 28, 2010" where it appears in clause (a) thereof and substituting "April 10, 2009" therefor.

(f)     The definition of "Material Adverse Effect" set forth in Clause 1.1 of the RLA is hereby amended by deleting clauses (a) and (b) thereof, and replacing such clauses with the following:

> (a) the status, existence, perfection or priority of the interest of the Administrative Agent in the Guarantor Collateral, taken as a whole, (b) the value or collectibility of the Guarantor Collateral, taken as a whole,".

(g)     The definition of "Maturity Date" is hereby amended by deleting the date "June 28, 2010" where it appears therein and substituting "April 10, 2009" therefor.

(h)     The definition of "Scheduled Commitment Facility Termination Event" is hereby amended by deleting the phrase "the day falling two years after the Closing Date" and substituting therefor the phrase "April 10, 2009."

(i)     The definition of "Security Documents" set forth in Clause 1.1 of the RLA is hereby amended by inserting the phrase "the Guaranty Security Agreement," after the phrase "the Security Agreement," where it appears in the first line thereof.

(j)     The definition of "Senior Credit Agreement" is amended by deleting the phrase "and as such may be further amended, supplemented, amended and restated or otherwise modified from time to time," and substituting therefor the phrase "as in effect immediately prior to the Filing Date."

(k)     The definition of "Transaction Documents" set forth in Clause 1.1 of the RLA is hereby amended by inserting the phrase ", the DIP Documents" after the phrase "the Fee Letter" where it appears in the second line thereof.  For the avoidance of doubt, it is understood and agreed that the Transaction Documents do not include the Senior Credit Agreement or any hedge agreement between a Guarantor and a Secured Party.

(l)     The  definition of "Transaction Party Obligations" in Clause 1.1 of the RLA is hereby amended by inserting the phrase "other than the Letter of Credit Agreement" after the term "Transaction Document" in each case where such term appears.

(m)    The definition of "Yield Reserve" set forth in <u>Clause 1.1</u> of the RLA is hereby amended by deleting the percentage "3%" where it appears in the equation set forth therein and substituting therefor the percentage "8%".

(n)    <u>Clause 2.4(c)</u> is hereby amended by inserting the phrase "or the DIP Fee Letter, as applicable" after the phrase "among the Borrower, Tribune, the Administrative Agent and the Funding Agents" where it appears in <u>clause (i)</u> thereof.

(o)    <u>Clause 5.1(c)</u> is hereby amended by inserting the phrase "except for Adverse Claims created under the Transaction Documents" after the phrase "or permit any Equity Interests of the Borrower to be subject to any Adverse Claim" where it appears in the first sentence thereof.

(p)    <u>Clause 5.1(i)</u> is hereby amended by inserting the phrase "except as contemplated by the Transaction Documents" after the phrase "in addition to the other covenants set forth herein" where it appears in the second sentence thereof.

(q)    <u>Clause 5.1</u> is hereby amended by inserting the following <u>paragraphs (y)</u>, <u>(z)</u> and <u>(aa)</u> at the end thereof:

(y)  **Chapter 11 Cases**

The Borrower shall deliver to the Administrative Agent, promptly after the same is available, copies of all pleadings, motions, applications, judicial information, financial information, Budgets and any revisions thereof and information with respect thereto, and other documents filed by or on behalf of the Borrower with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of the Borrower to any official committee appointed in the Chapter 11 Cases or any lenders or agents with respect to any Indebtedness outstanding on the Filing Date and such other information as shall be reasonably requested by the Administrative Agent.

(z)  **No Surcharge**

The Borrower shall not, and shall not permit any Affiliate to, assert any charges under Section 506(c) of the Bankruptcy Code against any Collateral securing the Loans.

(aa)  **No Superpriority Claims**

The Borrower shall not, and shall not permit any Affiliate to, permit to exist any claims entitled to a superpriority under Section 364(c)(1) of the Bankruptcy Code, other than those of the Administrative Agent and the other Secured Parties, except for those claims that are junior in priority and subordinated in all respects to those of the Administrative Agent and the other Secured Parties.

(r)    <u>Clause 5.2</u> of the RLA is hereby amended by deleting the parenthetical "(but subject to the last sentence of this Clause)" where it appears in the second line thereof and by deleting the last sentence thereof in its entirety.

(s)    Paragraph (a) of Clause 7.1 of the RLA is hereby amended by inserting new subparagraph (viii) and (ix) at the end thereof as follows:

(viii)    any Guarantor shall fail to make any payment under the Guaranty when required thereunder; or

(ix)    any Transaction Party shall fail to make any payment under the Letter of Credit Agreement when due;

(t)    Paragraph (c) of Clause 7.1 of the RLA is hereby deleted in its entirety and the following paragraph (c) is hereby substituted therefor:

(c)    [Reserved];

(u)    Paragraph (d) of Clause 7.1 of the RLA is hereby amended by adding the following at the end thereof:

or the Administrative Agent shall, for any reason, fail or cease to have a valid and perfected first priority lien on the Guarantor Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Filing Date and a junior, perfected security interest in and lien on the Guarantor Collateral which is subject to a Permitted Adverse Claim, including, without limitation, a validly perfected security interest or lien in existence as of the Filing Date, or a valid lien perfected (but not granted) after the Filing Date to the extent such perfection in respect of a pre-Filing Date claim is expressly permitted under the Bankruptcy Code and valid and enforceable rights of setoff held by depository institutions (and any Bankruptcy Court-ordered replacement liens therefor of the same extent and priority);.

(v)    Paragraph (m) of Clause 7.1 of the RLA is hereby deleted in its entirety and the following is hereby substituted therefor:

(m)    [Reserved];

(w)    Paragraph (n) of Clause 7.1 of the RLA is hereby deleted in its entirety and the following is hereby substituted therefor:

(n)    [Reserved];

(x)    Paragraph (b) of Clause 7.2 of the RLA is hereby deleted in its entirety and the following paragraph (b) is hereby substituted therefor:

(b)    an Event of Bankruptcy shall occur with respect the Borrower; or

(y)    Paragraph (c) of Clause 7.2 of the RLA is hereby deleted in its entirety and the following paragraph (c) is hereby substituted therefor:

(c)    [Reserved];

(z)    Clause 7.2 of the RLA is hereby amended by inserting the following paragraphs (d) through (p) at the end thereof:

(d)      the Bankruptcy Court shall enter an order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or appointing a trustee in any of the Chapter 11 Cases or appointing a responsible officer or an examiner with enlarged powers relating to the operation of any Filing Debtor or its affiliates' business (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code Section 1106(b);

(e)      an order of the Bankruptcy Court shall be entered in any of the Chapter 11 Cases amending, supplementing, staying, vacating or otherwise modifying any of the Financing Orders, or any Filing Debtor shall apply for authority to do so; provided that no Facility Termination Event shall occur under this paragraph (e) to the extent that any such amendment, supplement or other modification is made in compliance with this Agreement and is not adverse, in the reasonable judgment of the Administrative Agent, to the rights and interests of the Lenders under this Agreement and the other Transaction Documents;

(f)      any Filing Debtor shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of any Filing Debtor) any other Person's opposition of, any motion made in the Bankruptcy Court by any Lender seeking confirmation of the amount of such Lender's claim in respect of the obligations under the Transaction Documents or the validity and enforceability of the liens in favor of the Administrative Agent;

(g)      any Filing Debtor shall seek to, or shall support (in any such case by way of motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of any Filing Debtor) any other Person's motion to, disallow in whole or in part any Lender's claim in respect of the obligations hereunder or to challenge the validity and enforceability of the liens in favor of the Administrative Agent.

(h)      from and after the date of entry thereof, the Interim Financing Order shall cease to be in full force and effect (or shall have been vacated, stayed, reversed, modified or amended), in each case without the consent of the Required Funding Agents, and the Final Financing Order shall not have been entered prior to such cessation (or vacatur, stay, reversal, modification or amendment);

(i)      the Final Financing Order shall not have been entered by the Bankruptcy Court on or before January 9, 2009; or from and after the date of entry thereof, the Final Financing Order shall cease to be in full force and effect (or shall have been vacated, stayed, reversed, modified or amended), in each case without the consent of the Required Funding Agents;

(j)　　any Filing Debtor shall make any payment on any Indebtedness arising before the Filing Date, other than as permitted under the Financing Orders as permitted hereunder, as permitted by order of the Bankruptcy Court in respect of claims that are (i) authorized by the "first day" orders in the Chapter 11 Cases in an aggregate amount not to exceed $80,000,000, and (ii) authorized in subsequent orders in the Chapter 11 Cases in an aggregate amount for all such orders not to exceed $25,000,000;

(k)　　any Filing Debtor shall fail to comply with the terms of the Financing Orders;

(l)　　the entry of an order (other than the Financing Orders) granting either (x) any other claim superpriority status or (y) an Adverse Claim equal or superior to that granted to the Administrative Agent for the benefit of the Administrative Agent and the Lenders, other than with respect to the Carve-Out, Permitted Adverse Claims on any Guarantor Collateral and, with respect to depository institutions holding valid and enforceable rights of setoff, any replacement liens therefor of the same extent and priority;

(m)　　the entry of an order authorizing recovery by any Person from the Collateral for any costs of preservation or disposition thereof under Section 506(c) of the Bankruptcy Code in a *non de minimus* amount or (except as provided in the Final Financing Order) authorizing the use of cash collateral (other than a de minimus amount of cash collateral) without consent in writing by the Administrative Agent;

(n)　　the entry of one or more orders granting relief from the automatic stay so as to allow any third party to proceed against any interests of the Filing Debtors in assets, which have a value in excess of $25,000,000 in the aggregate;

(o)　　the filing by any Filing Debtor of any motion or proceeding which could reasonably be expected to result in material impairment of the Lenders' rights under the Transaction Documents; or a final determination by the Bankruptcy Court (or any other court of competent jurisdiction) with respect to any motion or proceeding brought by any other party which results in any material impairment of the Lenders' rights under the Transaction Documents; or

(p)　　the Final Payout Date shall not have occurred on or prior to the earlier of (i) April 10, 2009, and (ii) the forty fifth day after the occurrence of the Facility Termination Date;

(aa)　　Clause 11.6 of the RLA is hereby amended by adding the following phrase at the end of clause (III) of paragraph (a): "or to the Bankruptcy Court or as the Bankruptcy Court otherwise directs".

(bb)　　The parties hereto acknowledge and agree that, on and after the Effective Date (as defined below), (x) interest on the Loans shall be calculated by reference to the Eurodollar Rate or the Base Rate, and (y) references in the Transaction Documents to the calculation of such interest on the basis of a different type of rate shall be disregarded.

SECTION 3.   Amendments to RPA.

(a)      Article I of the RPA is hereby amended by inserting a new Section 1.11 after Section 1.10 thereof as follows:

> Section 1.11.  Discharge.  Each Originator agrees that (i) its obligations under the Transaction Documents shall not be discharged by the entry of an order confirming a plan of reorganization under the Chapter 11 Cases (and such Originator, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (ii) any superpriority claim granted to the Administrative Agent and the Lenders pursuant to the Financing Orders and the security interest granted to the Administrative Agent pursuant to the Financing Orders and the Transaction Documents shall not be affected in any manner by the entry of an order confirming a plan of reorganization under the Chapter 11 Cases.

(b)      Section 2.02 of the RPA is hereby deleted in its entirety.

(c)      Section 3.01(e) of the RPA is hereby amended by inserting the phrase ", other than the Chapter 11 Cases" at the end of the first sentence thereof.

(d)      Paragraph (i) of Section 3.01 of the RPA is hereby deleted in its entirety and the following paragraph (i) is hereby substituted therefor:

> (i)  [Reserved];

(e)      Paragraph (o) of Section 3.01 of the RPA is hereby deleted in its entirety and the following is hereby substituted therefor:

> (o)      [Reserved]

(f)      Section 3.01(t) is hereby amended by inserting the phrase "Except as provided in the Transaction Documents," at the beginning of the first sentence thereof.

(g)      Section 4.09 is hereby amended by inserting the phrase "Except as provided in the Transaction Documents," at the beginning of the first sentence thereof.

(h)      Section 4.12 of the RPA is hereby deleted in its entirety and the following Section 4.12 is hereby substituted therefor:

> SECTION 4.12  [Reserved]

(i)      Section 4.25 of the RPA is hereby amended by deleting the parenthetical "but subject to the last sentence of this Clause" where it appears in the second line thereof and by deleting the last sentence thereof in its entirety.

(j)      The RPA is hereby amended by inserting a new Section 4.27 set forth on Schedule II attached hereto and the following new Section 4.28 after Section 4.26 thereof as follows:

Section 4.28  <u>Use of Proceeds</u>.  The Transaction Parties shall use the proceeds of the Loans and the proceeds of the sale of the Receivables under the Transaction Documents in a manner consistent with the requirements of the Bankruptcy Code; provided that no proceeds of any Loan shall be used directly or indirectly for the purpose, whether immediate, incidental or ultimate, of purchasing or carrying any Margin Stock.

(k)      <u>Section 5.03</u> of the RPA is hereby amended by adding the following new clause (d) at the end thereof:

(d)      Each Originator acknowledges and agrees to the exercise of rights and remedies afforded to the Administrative Agent and the Lenders under the Transaction Documents in accordance with the terms thereof including without limitation the last paragraph of Section 7.2 of the Receivables Loan Agreement (*Facility Termination Events*).

(l)      <u>Paragraph (d)</u> of <u>Section 7.01</u> of the RPA is hereby deleted in its entirety and the following <u>paragraph (d)</u> is hereby substituted therefor:

(d) [Reserved];

(m)      <u>Paragraph (e)</u> of <u>Section 7.01</u> of the RPA is hereby deleted in its entirety and the following <u>paragraph (e)</u> is hereby substituted therefor:

(e)      [Reserved];

(n)      <u>Paragraph (i)</u> of <u>Section 7.01</u> of the RPA is hereby deleted in its entirety and the following <u>paragraph (i)</u> is hereby substituted therefor:

(i) [Reserved];

(o)      <u>Paragraph (j)</u> of <u>Section 7.01</u> of the RPA is hereby deleted in its entirety and the following <u>paragraph (j)</u> is hereby substituted therefor:

(j)      this Agreement, any Account Agreement or any other Transaction Document to which an Originator is a party or any provision hereof or thereof shall cease, for any reason, to be in full force and effect with respect to an Originator (other than as a result of a termination of an Originator's obligations in compliance with Section 1.09 (*Termination of Status as Originator*), or an Originator shall (except as expressly permitted by any Transaction Document) so assert in writing or shall otherwise seek to terminate or disaffirm its obligations hereunder or under any other Transaction Document to which it is a party; or

(p)      <u>Section 8.04</u> of the RPA is hereby amended by adding the following phrase at the end of clause (III) thereof: "or to the Bankruptcy Court or as the Bankruptcy Court otherwise directs".

SECTION 4.  <u>Amendments to Servicing Agreement</u>.

(a)      <u>Paragraph (m)</u> of <u>Section 2.3</u> of the Servicing Agreement is hereby deleted in its entirety and the following <u>paragraph (m)</u> is hereby substituted therefor:

(m) [Reserved];

    (b)    Paragraph (f) of Section 2.9 of the Servicing Agreement is hereby deleted in its entirety and the following paragraph (f) is hereby substituted therefor:

(f)    [Reserved]; or

    (c)    Paragraph (i) of Section 2.9 of the Servicing Agreement is hereby deleted in its entirety and the following paragraph (i) is hereby substituted therefor:

(i) [Reserved];

    (d)    Section 3.1(e) of the Servicing Agreement is hereby amended by inserting the phrase ", other than the Chapter 11 Cases" at the end of the first sentence thereof.

    (e)    Paragraph (i) of Section 3.1 of the Servicing Agreement is hereby deleted in its entirety and the following paragraph (i) is hereby substituted therefor:

(i) [Reserved];

    (f)    Paragraph (p) of Section 3.1 of the Servicing Agreement is hereby deleted in its entirety and the following paragraph (p) is hereby substituted therefor:

(p)    The Security Agreement and the Guaranty Security Agreement, together with the filing of the financing statements contemplated by the Transaction Documents, are effective to transfer to the Administrative Agent for the benefit of the Secured Parties a valid and perfected first priority undivided percentage security interest in each Receivable existing or hereafter arising, the Related Security, Collections with respect thereto, the Facility Accounts and the other Collateral, free and clear of any Adverse Claim, except as created by the Transaction Documents. There have been duly filed all financing statements or other similar instruments or documents necessary under the UCC (or any comparable law) of all appropriate jurisdictions to perfect the Borrower's and the Administrative Agent's ownership or security interest in the Receivables, the Related Security, the Collections and the other Collateral. Except for filings required under the Transaction Documents, no effective financing statement or other instrument similar in effect is filed in any recording office listing any Transaction Party as debtor and listing any Receivables, Related Security, the Facility Accounts or other Collateral, or any interest therein or proceeds thereof.

    (g)    Paragraph (k) of Section 4.1 of the Servicing Agreement is hereby deleted in its entirety and the following paragraph (k) is hereby substituted therefor:

(k) [Reserved];

    (h)    Paragraph (g) of Section 4.1 of the Servicing Agreement is hereby amended by inserting the phrase "Except as provided in the Transaction Documents," at the beginning thereof.

(i)     Section 4.1(q) of the Servicing Agreement is hereby amended by deleting the parenthetical "but subject to the last sentence of this Clause" where it appears in the second line thereof and by deleting the last sentence thereof in its entirety.

SECTION 5.   Waiver.  Upon the occurrence of the Effective Date, the Administrative Agent, the Funding Agent and the Lender hereby waive each Originator Termination Event, Facility Termination Event, a Trigger Event and a Servicer Default under the RLA and the other Transaction Documents that arose from the commencement of the Chapter 11 Cases and hereby waive (i) the automatic declaration of the Facility Termination Date and automatic acceleration of the Loans pursuant to Sections 7.2 and 7.3 of the RLA, (ii) the automatic occurrence of the Termination Date pursuant to Section 7.01 of the RPA and (iii) the automatic termination of the appointment of the Servicer and the Sub-Servicers pursuant to Section 2.9 of the Servicing Agreement, in each case as a result of the commencement of the Chapter 11 Cases.  Except as described in the immediately preceding sentence, nothing in this Section 5 shall be deemed to be a waiver, amendment, or modification of the Transaction Documents or a consent to the noncompliance by any Transaction Party with any other provisions of the Transaction Documents.

SECTION 6.   Representations and Warranties.  Each Transaction Party hereby represent and warrant that after giving effect to this Amendment, (i) the representations and warranties of such Transaction Party contained in the Transaction Documents shall be true and correct on and as of the Effective Date as though made on and as of such date, and shall have been deemed to have been made on and as of such date, and (ii) no event shall have occurred and be continuing, or would result from this Amendment, that constitutes a Facility Event.

SECTION 7.   Reservation of Rights.  The Transaction Parties each hereby acknowledge and agree that the terms of the Receivables Loan Agreement and the Security Agreement are not modified by the Chapter 11 Cases and none of this Amendment, the making of any credit under the Transaction Documents by the Lender and Lender's or the Administrative Agent's consent thereto either before or after the date hereof shall constitute (w) an approval of the accuracy of all or any portion of the Borrower funding request or related certification, (x) a waiver or forbearance by the Lender or the Administrative Agent under any of the Transaction Documents, (y) the acceptance by the Lender or the Administrative Agent of any course of conduct by the Transaction Parties or any other Person or (z) an agreement by the Lender or the Administrative Agent to amend any of the Transaction Documents without all required approvals or related certification.  The Borrower and the Servicer each hereby further acknowledge and agree that the Lender and the Administrative Agent reserve all rights, remedies and options under the Transaction Documents to require the Borrower to satisfy in all respects the conditions relating to the making of any extension of credit under the Transaction Documents and each of the Transaction Parties to perform all of its obligations under the Transaction Documents which are then due and owing or are susceptible of performance, as the case may be.

SECTION 8.   Confirmation of the Transaction Documents.  The Transaction Parties each hereby acknowledge and agree that, except as herein expressly amended, the Transaction Documents are each ratified and confirmed in all respects and shall remain in full force and effect in accordance with their respective terms.  Without limiting the foregoing, each Transaction Party ratifies and reaffirms (a) its grant of a security interest in all the Collateral sold

or pledged by it, and represents, confirms and agrees that such security interest is a perfected security interest securing all Secured Obligations and (b) all of its other obligations under the Transaction Documents executed and delivered by it.

SECTION 9.   Conditions to Effectiveness.  This Amendment, including the waiver set forth in Section 5 hereof, shall become effective on the date (the "**Effective Date**") on which each of the following conditions shall have been satisfied:

(a)    The Administrative Agent shall have received this Amendment, the Guaranty, the Guaranty Security Agreement and the Letter of Credit Agreement and all other documents required to be delivered thereunder, duly executed by each of the parties thereto;

(b)    All of the "first day orders" entered by the Bankruptcy Court in the Chapter 11 Cases shall be reasonably satisfactory in form and substance to the Administrative Agent;

(c)    The Administrative Agent shall have received a copy certified by the Secretary of the Parent of the Interim Financing Order entered by the Bankruptcy Court no later than December 10, 2008 and the Interim Financing Order shall be in full force and effect and shall not have been vacated, stayed, reversed, modified or amended;

(d)    The Administrative Agent and the Lenders shall be satisfied that the Administrative Agent and the Lenders shall have the protection of Section 364(e) of the Bankruptcy Code;

(e)    The Administrative Agent and the Lenders shall have received in immediately available funds all amounts required to be paid to them on such effective date under the DIP Fee Letter;

(f)    The representations and warranties set forth in Section 6 hereof shall be true and correct;

(g)    The Administrative Agent shall have received certified copies of resolutions of the Board of Directors of the Transaction Parties authorizing the execution, delivery and performance by the Transaction Parties of this Amendment and the other DIP Documents;

(h)    The Administrative Agent shall have received a certificate of the Secretary or an Assistant Secretary (or other appropriate representative) of each Transaction Party certifying the names of the officer or officers of such Transaction Party authorized to sign the DIP Documents, together with a sample of the true signature of each such officer (it being understood that the Administrative Agent and each Lender may conclusively rely on each such certificate until formally advised by a like certificate of any changes therein);

(i)    The Administrative Agent shall have received evidence of payment by the Borrower and the Parent of all accrued and unpaid reasonable out-of-pocket costs and expenses to the extent then due and payable on the date hereof, together with all reasonable attorney fees and reasonable out-of-pocket expenses of the Administrative Agent to the extent invoiced prior to the date hereof;

(j)     The Administrative Agent and each Lender shall have received, dated the Effective Date, an opinion of Sidley Austin LLP, counsel to the Borrower, which opinion shall be in form and substance reasonably satisfactory to the Administrative Agent;

(k)     The Administrative Agent shall have received a certificate signed by an officer of the Parent dated as of the date hereof, affirming the matters set forth in Sections 9(b) through (f) and (k) as of the date hereof; and

(l)     The Administrative Agent shall have received such other documents as the Administrative Agent or any Lender may reasonably request.

If the Effective Date shall not have occurred by 5:00 p.m., New York City time on December 12, 2008, as determined by the Administrative Agent, this Amendment and the Letter of Credit Agreement shall be null and void.

SECTION 10. Miscellaneous.  The RLA, RPA and Servicing Agreement as amended hereby, remains in full force and effect.  Any reference to the RLA, RPA or Servicing Agreement from and after the date hereof shall be deemed to refer to the RLA, RPA or Servicing Agreement, respectively, as amended hereby unless otherwise expressly stated.  This Amendment may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.  Executed counterparts of this Amendment may be delivered by facsimile, which shall be effective as delivery of a manually executed signature page.  The Borrower and the Parent shall pay any and all fees due to the Administrative Agent in connection with the execution of this Amendment. This Amendment shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to the conflict of Laws principles thereof (other than Section 5-1401 of the New York General Obligations Law) and the obligations, rights and remedies of the parties under this Amendment shall be determined in accordance with such laws.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereunto duly authorized, as of the date first above written.

**TRIBUNE RECEIVABLES LLC**
as Borrower

By:_____
Name:  Chandler Bigelow III
Title:   President/Treasurer

**TRIBUNE COMPANY**
as Servicer

By:_____
Name:  Chandler Bigelow III
Title:   Senior Vice President/Chief Financial Officer

**CHICAGOLAND TELEVISION NEWS, INC.**
**TRIBUNE BROADCAST HOLDINGS, INC.**
**TRIBUNE INTERACTIVE, INC.**
**TRIBUNE TELEVISION HOLDINGS, INC.**
**WGN CONTINENTAL BROADCASTING**
       **COMPANY**
**WPIX, INC.**
**TRIBUNE TELEVISION NEW ORLEANS, INC.**
**KSWB INC.**
**KTLA INC.**
**KIAH INC.**
**TOWER DISTRIBUTION COMPANY**
**TRIBUNE TELEVISION NORTHWEST, INC.**
**TRIBUNE TELEVISION COMPANY**
**CHANNEL 40, INC.**
**CHANNEL 39, INC.**
**LOS ANGELES TIMES COMMUNICATIONS LLC**
**WDCW BROADCASTING, INC.**
**ORLANDO SENTINEL COMMUNICATIONS**
       **COMPANY**
**SUN-SENTINEL COMPANY**
**GOLD COAST PUBLICATIONS, INC.**
**FORUM PUBLISHING GROUP, INC.**
**THE DAILY PRESS, INC.**
**CHICAGO TRIBUNE COMPANY**
**THE BALTIMORE SUN COMPANY**
**THE HARTFORD COURANT COMPANY**
**THE MORNING CALL, INC**.
as Sub-Originators


By:_____
Name:  Chandler Bigelow III
Title:  Assistant Treasurer

**BARCLAYS BANK PLC**
as Administrative Agent


By:_____
Name:
Title:


**BARCLAYS BANK PLC**
as a Committed Lender and a Funding Agent for the Class
A Loans


By:_____
Name:
Title:

## SCHEDULE I

## FILING SUB-ORIGINATORS

Chicagoland Television News, Inc.,
Tribune Broadcast Holdings, Inc.,
Tribune Television Holdings, Inc.,
WGN Continental Broadcasting Company,
WPIX, Inc.,
Tribune Television New Orleans, Inc.,
KSWB Inc.,
KTLA Inc.,
KIAH Inc.,
Tower Distribution Company,
Tribune Television Northwest, Inc.,
Tribune Television Company,
Channel 40, Inc.,
Channel 39, Inc.,
Los Angeles Times Communications LLC,
WDCW Broadcasting, Inc.,
Orlando Sentinel Communications Company,
Sun-Sentinel Company,
Gold Coast Publications, Inc.,
Forum Publishing Group, Inc.,
The Daily Press, Inc.,
Chicago Tribune Company,
The Baltimore Sun Company,
The Hartford Courant Company
The Morning Call, Inc.

# SCHEDULE I

# INCORPORATED COVENANTS

SCHEDULE 4.27 TO OMNIBUS AMENDMENT

SECTION 4.27. <u>Negative Covenants</u>.

For purposes of this Section 4.27,

(x) the following terms shall have the meanings assigned thereto in the Senior Credit Agreement as in effect on the Filing Date, modified so that references therein to clauses of Section 5.02 of the Senior Credit Agreement are references to the corresponding clauses, if any, of this Section 4.27 and to the extent any such cross-references to clauses of Section 5.02 of the Senior Credit Agreement shall not have been restated in this Section 4.27, such cross-references shall be deemed to be inapplicable herein, and with such other modifications as indicated in the following: "Asset Sale" (with the last sentence of the definition thereof containing the $10.0 million threshold deleted), "Board of Directors", "Capital Expenditure", "Cash Equivalent", "Casualty Event", "Closing Date", "Dividend", "ESOP Documentation", "Guaranteed Debt", "Hedging Obligation", "Immaterial Subsidiary", "Intellectual Property", "Intercompany Junior Subordinated Notes", "Lien", "Net Cash Proceeds", "Parent Acquisition Bridge Loan", "Parent Acquisition Bridge Loan Documents", "Parent High Yield Notes", "Parent High Yield Notes Documents", "Permitted Acquisition", "Permitted Lien", "PHONES", "Retained Amount" and "TMCT Real Property", and "Zell Investment Agreement", and

(y) the following term shall have the following meaning:  "Companies" means the Originators and its Subsidiaries.

Without the consent of the Required Funding Agents, the Originators will not and will not cause or permit any Subsidiaries to:

(a)     <u>Liens, Etc.</u>  Create, permit or suffer to exist any Lien on or with respect to any of its properties, whether now owned or hereafter acquired, other than:

(i)     Permitted Liens;

(ii)     Liens securing Purchase Money Obligations incurred pursuant to Section 4.27(c)(v) upon or in any real property, equipment or any fixed or capital assets acquired or held by Parent or any Subsidiary in the ordinary course of business to secure the purchase price of such property, equipment or assets or to secure Indebtedness incurred solely for the purpose of financing the acquisition, construction or improvement of such property, equipment or assets, in each case created within 180 days of any such acquisition or the completion of such construction or improvement, or Liens existing on such property, equipment or assets at the time of its acquisition (other than any such Liens created in contemplation of such acquisition that were not incurred to finance the acquisition of such property), or Liens securing Capitalized Lease Obligations incurred pursuant to Section 4.27(c)(v) or extensions, renewals or replacements of any of the foregoing for the same or a lesser amount, provided, however, that no such Lien shall extend to or cover any properties other than the property, equipment or assets being acquired constructed or improved, and no such

extension, renewal or replacement shall extend to or cover any properties not theretofore subject to the Lien being extended, renewed or replaced;

(iii)    the Liens existing on the Filing Date;

(iv)    Liens on (x) property of a Person existing at the time such Person is merged into or consolidated with Parent or any Subsidiary of Parent or becomes a Subsidiary of Parent and (y) any property existing at the time of its acquisition thereof by Parent or any of its Subsidiaries; provided that such Liens were not created in contemplation of such merger, consolidation or acquisition and do not extend to any assets other than (A) those of the Person so merged into or consolidated with Parent or such Subsidiary or (B) such assets acquired by Parent or such Subsidiary or (C) improvements on or proceeds of the assets described in clause (A) or (B);

(v)    Liens in favor of the Administrative Agent under the Transaction Documents and the Financing Orders;

(vi)    [RESERVED];

(vii)    [RESERVED];

(viii)    replacement Liens ordered by the Bankruptcy Court of the same extent and priority for valid and enforceable rights of setoff held by depository institutions;

(ix)    Liens on cash collateral securing letter of credit obligations permitted under Section 4.27(c)(xvi), provided that cash collateral securing obligations in respect of letters of credit not issued under the Letter of Credit Agreement may not exceed 105% of the outstanding amount of such letters of credit;

(x)    Liens securing Indebtedness permitted to be incurred under Section 4.27(c)(xi)(B); and

(xi)    other Liens securing obligations in an aggregate amount not to exceed $5,000,000; provided such Liens are junior and subordinate in all respects to the Liens in favor of the Administrative Agent under the Transaction Documents and the Financing Orders.

(b)    Mergers, Dispositions, Etc. Merge or consolidate with or into, or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of the assets of Parent and its Subsidiaries taken as a whole (whether now owned or hereafter acquired) to, any Person, except that:

(i)    any Subsidiary of Parent may merge or consolidate with or into, or dispose of assets to any Guarantor, any Subsidiary of Parent that is a holding company with no stand-alone operations or income may merge or consolidate with or into or dispose of all or substantially all of such Subsidiary's assets to Parent, any Subsidiary of Parent may distribute to Parent any Equity Interests of

such Subsidiary's Subsidiaries; provided that no Trigger Event exists or would result therefrom;

(ii)     any Subsidiary of Parent may merge into or consolidate with any other Person or permit any other Person to merge into or consolidate with it so long as, either (1) such Subsidiary shall be the survivor thereof, or (2) if the other Person shall be the survivor thereof, such other Person surviving such consolidation or merger shall be a U.S. organized entity and, if such other Person is merging with a Guarantor, such Person shall assume all the obligations of such Guarantor under the Transaction Documents; provided that no Trigger Event exists or would result therefrom;

(iii)     as part of any Asset Sale otherwise permitted by this Agreement, any Subsidiary of Parent may merge into or consolidate with any other Person or permit any other Person to merge into or consolidate with it; provided that no Trigger Event exists or would result therefrom; and

(iv)     any Subsidiary of Parent may liquidate or dissolve if Parent determines in good faith that such liquidation or dissolution is in the best interest of Parent and is not materially disadvantageous to the Lenders; provided that no Trigger Event exists or would result therefrom.

(c)     Indebtedness.  Incur, create, assume or permit to exist, directly or indirectly, any Indebtedness, except:

(i)     Indebtedness owed to Parent or to a wholly owned Subsidiary of Parent permitted by Section 4.27(h)(vi);

(ii)     Indebtedness existing on the Filing Date;

(iii)     Indebtedness incurred under this Agreement or any other Transaction Document;

(iv)     Indebtedness of a Person existing at the time such Person is merged into or consolidated with Parent or a Subsidiary of Parent or becomes a Subsidiary of Parent in connection with a Permitted Acquisition; provided that such Indebtedness is not created in contemplation of such Permitted Acquisition;

(v)     Indebtedness in respect of Purchase Money Obligations, Capitalized Lease Obligations and other Indebtedness not otherwise permitted hereunder which, together with Indebtedness secured by Liens permitted under Section 4.27(a)(xi), does not exceed an aggregate principal amount of $5,000,000 at any time outstanding and any guarantee of Indebtedness in respect thereof;

(vi)     endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business;

(vii)     [RESERVED];

(viii)     [RESERVED];

(ix)     [RESERVED];

(x)     [RESERVED];

(xi)     to the extent constituting Indebtedness, (A) obligations under performance bonds, surety bonds and letter of credit obligations to provide security for worker's compensation claims and (B) obligations in respect of bank overdrafts not more than five Business Days overdue, in each case, incurred in the ordinary course of business;

(xii)     to the extent constituting Indebtedness, indemnification obligations and other similar obligations of Parent and its Subsidiaries in favor of directors, officers, employees, consultants or agents of Parent or any of its Subsidiaries extended in the ordinary course of business;

(xiii)     Guaranteed Debt with respect to payment obligations of any wholly owned Subsidiary in respect of Indebtedness otherwise permitted under this Section 4.27(c); provided that on and after the Filing Date no Subsidiary shall guarantee Indebtedness of other Persons incurred prior to the Filing Date other than pursuant to the Transaction Documents;

(xiv)     Indebtedness owing to insurance companies to finance insurance premiums incurred in the ordinary course of business;

(xv)     [RESERVED];

(xvi)     letters of credit in an aggregate amount, calculated to include letters of credit issued under the Letter of Credit Agreement, not to exceed $50,000,000, provided that obligations in respect of letters of credit not issued under the Letter of Credit Agreement may be secured by cash collateral in an amount not to exceed 105% of the outstanding amount of such letters of credit;

(xvii)     [RESERVED];

(xviii)     [RESERVED];

(xix)     [RESERVED];

(xx)     [RESERVED];

(xxi)     [RESERVED];

(xxii)     [RESERVED];

(xxiii)     [RESERVED]; and

(xxiv)     Indebtedness incurred in connection with a Permitted Disposition to the extent agreed to by the Administrative Agent.

(d)     Payment Restrictions Affecting Subsidiaries.     Directly or indirectly, enter into or suffer to exist, any agreement or arrangement which by its terms limits the ability of any of its Subsidiaries (other than an Immaterial Subsidiary) to declare or pay

dividends or other distributions in respect of its Equity Interests or repay or prepay any Indebtedness owed to, make loans or advances to, or otherwise transfer assets to or make investments in, the Company or any Subsidiary of the Company other than an Immaterial Subsidiary, except (i) restrictions, limitations, conditions and prohibitions under or imposed by any indenture, agreement, instrument or other contractual arrangement (A) imposed or binding upon Eagle New Media Investments, LLC, Eagle Publishing Investments, LLC or any Subsidiary established to insure risks of Parent and its Subsidiaries, including, without limitation, Multimedia Insurance Company, (B) in effect on the Closing Date (including this Agreement) and any similar indentures, agreements or instruments to the extent such restrictions, limitations, conditions and prohibitions are no more restrictive, taken as a whole, than those set forth in such existing indentures, agreements or instruments (including this Agreement), (C) [RESERVED] or (D) imposed on a Guarantor or a Subsidiary in connection with a Permitted Disposition so long as such limitations do not have a material adverse impact on the Collateral or materially and adversely affect such Guarantor's ability to satisfy the Obligations when due; (ii) any restrictions consisting of customary provisions contained in leases, licenses and joint ventures and other agreements; (iii) restrictions with respect to any Asset Sale permitted under Section 4.27(e) pending the close of the sale of such Asset Sale; (iv) any restriction or encumbrance on the transfer of any assets subject to the Liens permitted by Section 4.27(a); (v) prohibitions or conditions under applicable law, rule or regulation; (vi) any agreement or instrument in effect at the time a Person first became a Subsidiary of Parent or the date such agreement or instrument is otherwise assumed by Parent or any of its Subsidiaries, so long as such agreement or instrument was not entered into in contemplation of such Person becoming a Subsidiary of Parent or such assumption; (vii) this Agreement and the other Transaction Documents; (viii) [RESERVED]; (ix) customary provisions in Organizational Documents, asset sale and stock sale agreements and other similar agreements that restrict the transfer of ownership interests in any partnership, limited liability company or similar Person; (x) restrictions on cash or other deposits or net worth imposed by suppliers or landlords or customers under contracts entered into in the ordinary course of business; (xi) any instrument governing Indebtedness assumed in connection with any Permitted Acquisition or transaction permitted by Section 4.27(f), which encumbrance or restriction is not applicable to any Person, or the properties or assets of any Person, other than the Person or the properties or assets of the Person so acquired; (xii) in the case of any joint venture which is not a Guarantor in respect of any matters referred to above, restrictions in such Person's Organic Documents or pursuant to any joint venture agreement or stockholders agreements solely to the extent of the Equity Interests of or property held in the subject joint venture or other entity; (xiii) any encumbrance or restriction imposed by any agreement or instrument imposing an encumbrance or restriction permitted under Section 4.27(m); (xiv) [RESERVED]; or (xv) restrictions imposed by applicable law.

 (e) <u>Asset Sales</u>. Effect any Asset Sale, or agree to effect any Asset Sale, except that the following shall be permitted:

  (i) disposition of used, damaged, worn out, obsolete or surplus property by any Company in the ordinary course of business and the abandonment or other disposition of Intellectual Property, in each case as determined by Parent in its reasonable judgment to be no longer economically practicable to maintain or useful in the conduct of the business of the Companies taken as a whole;

(ii)        (A) Dispositions as part of a Permitted Disposition and (B) arm's-length Asset Sales approved by the Bankruptcy Court for cash (other than Dispositions pursuant to clause (A)); provided that (x) the aggregate fair market value of the assets sold in all Asset Sales and all Dispositions consummated pursuant to this clause (ii) (B) shall not exceed $15,000,000;

(iii)       leases of real or personal property in the ordinary course of business;

(iv)       Asset Sales by any Subsidiary that is not a Guarantor;

(v)        Investments and other transactions in compliance with Section 4.27(b);

(vi)       Investments and other transactions in compliance with Section 4.27(h);

(vii)      [RESERVED];

(viii)      dispositions of cash and Cash Equivalents and inventory and goods held for sale in the ordinary course of business;

(ix)       Asset Sales in the ordinary course of business where (x) property is exchanged for credit against the purchase price of similar replacement property or (y) the proceeds of such Asset Sale are promptly applied to the purchase price of such replacement property;

(x)        Asset Sales to Parent or to a Subsidiary (including through the dissolution of any Subsidiary); provided that if the transferor of such property is a Guarantor or Parent and only to the extent that such property does not constitute cash or Cash Equivalents (i) the transferee thereof must either be Parent or a Guarantor or (ii) to the extent such transaction constitutes an Investment, such transaction is permitted under Section 4.27(h);

(xi)       Liens not prohibited by Section 4.27(a) (including Permitted Liens existing on the Filing Date);

(xii)      dispositions of (x) accounts receivable in connection with the collection or compromise thereof or (y) accounts receivable, payment intangibles and related assets in connection with this Agreement;

(xiii)     leases, subleases, assignments, licenses or sublicenses, in each case in the ordinary course of business and which do not materially interfere with the business of Parent and the Subsidiaries;

(xiv)      transfers of property subject to Casualty Events upon receipt of the Net Cash Proceeds of such Casualty Event;

(xv)       [RESERVED];

(xvi)    arm's-length Asset Sales approved by the Bankruptcy Court for cash to the extent that concurrently therewith (A) the principal amount of the Loans are repaid by an amount equal to the net cash proceeds thereof and there is a permanent reduction in the Commitments in the same amount or (B) the net cash proceeds thereof are held as cash collateral for the Secured Obligations in a segregated account of and under the sole control of the Administrative Agent in which the Administrative Agent has a first priority perfected security interest subject to no other Adverse Claim; and

(xvii)    Dividends permitted by Section 4.27(g).

Notwithstanding anything to the contrary, Originators are not permitted to sell, transfer or otherwise dispose of Receivables Property except pursuant to the Receivables Purchase Agreement.

(f)    Acquisitions.  Purchase or otherwise acquire (in one or a series of related transactions) all or a substantial part of the property and/or Equity Interests (whether tangible or intangible) of any Person (or agree to do any of the foregoing at any future time), except that the following shall be permitted:

(i)    Capital Expenditures by Parent and the Subsidiaries shall be permitted to the extent permitted by Section 4.27(i)(C);

(ii)    purchases and other acquisitions of inventory, materials, equipment and intangible property in the ordinary course of business;

(iii)    Investments in compliance with Section 4.27(h);

(iv)    leases of real or personal property in the ordinary course of business;

(v)    [RESERVED];

(vi)    acquisitions of operating assets, or all or substantially all of the equity of any Person that becomes a Guarantor the assets of which Person shall be operating assets, in each case which assets (and such equity of such Person, as applicable) shall become subject to the Lien of the Administrative Agent under the Guaranty Security Agreement and the Financing Orders; provided that the total consideration paid by the Companies shall not exceed $50,000,000 for all acquisitions permitted under this clause;

(vii)    transactions permitted by Section 4.27(g); and

(viii)    Investments and other transactions in compliance with Section 4.27(b).

(g)    Dividends.  Authorize, declare or pay, directly or indirectly, any Dividends with respect to any Company, except that the following shall be permitted:

(i)    Dividends by (A) any Company to Parent or any Guarantor that is a wholly owned Subsidiary of Parent, (B) any Company to its direct parent if

such parent is a Guarantor and (C) any Subsidiary that is not a Guarantor to its direct parent;

(ii)    [RESERVED];

(iii)    (A) payments by Parent (directly or indirectly) to or on behalf of ESOP in an amount sufficient to pay franchise taxes and other fees required to maintain the legal existence of ESOP and (B) payments by Parent to or on behalf of ESOP in an amount sufficient to pay out-of-pocket legal, accounting and filing costs and other expenses in the nature of overhead in the ordinary course of administration of the ESOP;

(iv)    [RESERVED];

(v)    [RESERVED];

(vi)    [RESERVED];

(vii)    Dividends to the ESOP in an amount not to exceed the ESOP Note Repayment Amounts as and when due and payable, so that the amount of such payment to the ESOP equals the amount of the concurrent payment by the ESOP to Parent;

(viii)    [RESERVED];

(ix)    [RESERVED];

(x)    [RESERVED];

(xi)    [RESERVED]; and

(xii)    Dispositions made as part of a Permitted Disposition.

(h)    <u>Investment, Loan and Advances</u>.  Directly or indirectly, lend money or credit (by way of guarantee or otherwise) or make advances to any Person, or purchase or acquire any stock, bonds, notes, debentures or other obligations or securities of, or any other interest in, or make any capital contribution to, any other Person (all of the foregoing, collectively, "<u>Investments</u>"), except that the following shall be permitted:

(i)    [RESERVED];

(ii)    Investments outstanding on the Filing Date;

(iii)    the Companies may (w) acquire and hold accounts receivable owing to any of them if created or acquired in the ordinary course of business and payable or dischargeable in accordance with customary terms, (x) invest in, acquire and hold cash and Cash Equivalents, (y) endorse negotiable instruments held for collection in the ordinary course of business or (z) make lease, utility and other similar deposits in the ordinary course of business;

(iv)    [RESERVED];

(v)      loans and advances to directors, employees and officers of Parent and the Subsidiaries for bona fide business purposes and to purchase Equity Interests of Parent, in an aggregate amount not to exceed $5,000,000 at any time outstanding; provided that no loans in violation of Section 402 of the Sarbanes-Oxley Act shall be permitted hereunder;

(vi)      Investments (i) by any Company in Parent or any Guarantor (including, without limitation, the Intercompany Junior Subordinated Notes), (ii) by any Company in any Person that, in connection with an Investment that is a Permitted Acquisition, becomes a Guarantor, (iii) by a Subsidiary that is not a Guarantor in any other Subsidiary that is not a Guarantor, and (iv) by any Company in any Subsidiary that is not a Guarantor provided that such Investment is made in the ordinary course of business and permitted by order of the Bankruptcy Court;

(vii)      Investments in securities of trade creditors or customers in the ordinary course of business received upon foreclosure or pursuant to any plan of reorganization or liquidation or similar arrangement upon the bankruptcy or insolvency of such trade creditors or customers;

(viii)      Investments made by Parent or any Subsidiary as a result of consideration received in connection with an Asset Sale made in compliance with Section 4.27(e);

(ix)      [RESERVED];

(x)      Investments (including minority Investments and joint ventures) in Persons that do not constitute Subsidiaries, in each case valued at the fair market value (determined by Parent in good faith) of such Investment at the time each such Investment is made, in an aggregate amount pursuant to this clause (x) not to exceed $50,000,000;

(xi)      [RESERVED];

(xii)      acquisitions of all or a substantial part of the property and/or Equity Interests of any Person permitted under Section 4.27(f) (other than clause (iii) thereof);

(xiii)      Investments arising under the Transaction Documents;

(xiv)      the creation or formation of new Subsidiaries so long as such new Subsidiary concurrently with its creation or formation becomes a Guarantor under the Guaranty and a debtor granting a security interest to the Administrative Agent under the Guaranty Security Agreement pursuant to joinder documentation reasonably satisfactory to the Administrative Agent;

(xv)      [RESERVED];

(xvi)      [RESERVED];

(xvii)    Guaranteed Indebtedness otherwise permitted under Section 4.27(c) and Indebtedness permitted under Section 4.27(c)(i);

(xviii)    [RESERVED]; and

(xix)    Investments in connection with a Permitted Disposition.

(i)    Financial Covenants.

(A)    [RESERVED]

(B)    [RESERVED]

(C)    Limitation on Capital Expenditures.  Permit the aggregate amount of Capital Expenditures (excluding (i) the purchase of the TMCT Real Property, (ii) expenditures of insurance proceeds to rebuild or replace any asset, (iii) leasehold improvement expenditures for which Parent or a Subsidiary is reimbursed by the lessor, sublessor or sublessee and (iv) expenditures of proceeds (including Net Cash Proceeds) of any asset sale permitted under Section 4.27(e)) made in calendar year 2009 to exceed $145,000,000.

(j)    Prepayments of Other Indebtedness and Modifications of Certain Documents, etc.  Directly or indirectly:

(i)    make (or give any notice in respect thereof) any voluntary or optional payment or prepayment on or redemption or acquisition for value of, or any prepayment or redemption as a result of any asset sale, change of control or similar event of, any Indebtedness other than Indebtedness outstanding under the Transaction Documents; or

(ii)    amend or modify, or permit the amendment or modification of, any provision of any Transaction Document (as defined in the Senior Credit Agreement and including any Parent Acquisition Bridge Loan Documents, any Parent High Yield Notes Documents and the Zell Investment Agreement), the ESOP Documentation or the PHONES in any manner that is adverse in any material respect to the interests of the Administrative Agent or the Lenders; provided that Parent may amend the ESOP Documentation to the extent required by the Internal Revenue Service in order to obtain a favorable determination letter with respect to the ESOP or to comply with changes in applicable law.

(k)    Limitation on Issuance of Capital Stock.

(i)    With respect to Parent, issue any Equity Interest that is not common stock or warrants, options or other rights to acquire in each case Parent common stock.

(ii)    With respect to any Subsidiary, issue any Equity Interest (including by way of sales of treasury stock) or any options or warrants to purchase, or securities convertible into, any Equity Interest, except (v) for issuances made in connection with re-incorporating a Subsidiary in a different jurisdiction, issuances made in connection with mergers of Subsidiaries effected

for purposes of relocating such Subsidiaries in a different jurisdiction or becoming a limited liability company and conversions of corporations into limited liability companies, in each case so long the owners of the Equity Interests remain the same immediately after such conversions; (w) issuances of Equity Interests as part of a Permitted Disposition; (x) for stock splits, stock dividends and additional issuances of Equity Interests which do not decrease the percentage ownership of any Subsidiaries in any class of the Equity Interest of such Subsidiary; (y) Subsidiaries of Parent formed after the Closing Date may issue Equity Interests to Parent or the Subsidiary of Parent which is to own such Equity Interests; and (z) Subsidiaries of Parent for and after the Closing Date may issue de minimis amounts of Equity Interests to comply with applicable local laws. All Equity Interests issued in accordance with this Section 4.27(k)(ii) by Tribune Finance, LLC or Tribune Broadcasting Holdco LLC shall be subject to the pledge pursuant to the Guaranty Security Agreement.

(l)    Business. Parent and the Subsidiaries shall not engage in any business other than those businesses in which Parent and its Subsidiaries are engaged on the Filing Date or, in the good faith judgment of the Board of Directors, which are incidental or related thereto, reasonable extensions thereof or reasonably similar or complementary thereto.

(m)    No Further Negative Pledge. Enter into any agreement, instrument, deed or lease which prohibits or limits the ability of any Guarantor to create, incur, assume or suffer to exist any Lien upon any of their respective properties or revenues, whether now owned or hereafter acquired, or which requires the grant of any security for an obligation if security is granted for another obligation, except the following: (i) this Agreement and the other Transaction Documents; (ii) covenants in documents creating Liens not prohibited by Section 4.27(a) prohibiting further Liens on the properties encumbered thereby; (iii) any other agreement that does not restrict in any manner (directly or indirectly) Liens created pursuant to the Transaction Documents on any Collateral or Guarantor Collateral and does not require the direct or indirect granting of any Lien securing any Indebtedness or other obligation by virtue of the granting of Liens on or pledge of property of any Guarantor to secure obligations under the Transaction Documents; (iv) any prohibition or limitation that (a) exists pursuant to applicable requirements of law, (b) consists of customary restrictions and conditions contained in any agreement relating to the sale of any property permitted under Section 4.27(e) pending the consummation of such sale, (c) restricts subletting or assignment of leasehold interests contained in any lease or sublease governing a leasehold interest of Parent or a Subsidiary, (d) exists in any agreement in effect at the time such Subsidiary becomes a Subsidiary of Parent, so long as such agreement was not entered into in contemplation of such Person becoming a Subsidiary or (e) [RESERVED]; (v) any prohibition or limitation in indentures and agreements existing on the Filing Date; (vi) [RESERVED]; (vii) restrictions on assignment contained in any contract entered into by any Company; and (viii) limitations imposed in connection with a Permitted Disposition, so long as such limitations do not extend beyond the asset subject to the Disposition and any Investments received as consideration for such Disposition.

(n)    [RESERVED]

(o)    ERISA. For plan years beginning after December 31, 2007, Parent shall not make, and shall cause its Subsidiaries not to make, any contributions (other than

"elective contributions" within the meaning of Treas. Reg. § 1.401(k)-6) to the Tribune Company 401(k) Savings and Profit Sharing Plan; provided, that for the 2007 plan year, Parent shall be permitted to make contributions with respect to such year in 2008.

Notwithstanding anything in the foregoing to the contrary nothing in this Section 4.27 shall prohibit the Originators or any of their Subsidiaries from agreeing to (i) any transaction at any future time (whether prior to or subsequent to the Final Payout Date) to the extent the consummation of such transaction would otherwise have been permitted as of the date of entering into such transaction and the obligation of the applicable Originators or Subsidiaries to consummate such transaction remains subject to the consent of the Administrative Agent or the Lenders if otherwise required under this Section 4.27 and (ii) any other transaction at any future time so long as such transaction shall be consummated subsequent to the Final Payout Date; it being understood that this paragraph shall not be deemed to be consent to by the Administrative Agent or the Lenders to any transaction not otherwise permitted under the Transaction Documents.