**Attachment 3**


**Security Agreement Dated as of July 1, 2008**
**Among Tribune Receivables, LLC**
**and Barclays Bank, PLC**

Execution Copy

SECURITY AGREEMENT

Dated as of July 1, 2008

among

TRIBUNE RECEIVABLES, LLC,
as Borrower

and

BARCLAYS BANK PLC,
as Administrative Agent

9177466 08059699

# TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS

SECTION 1.1.    Certain Terms.................................................................................................... 1

SECTION 1.2.    Other Terms ..................................................................................................... 2

ARTICLE II
SECURITY INTEREST

SECTION 2.1.    Grant of Security............................................................................................. 2

SECTION 2.2.    Security for Obligations................................................................................. 2

SECTION 2.3.    Continuing Security Interest .......................................................................... 2

ARTICLE III
REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS

SECTION 3.1.    Borrower Representations, Warranties, Covenants and Agreements ........ 3

ARTICLE IV
ATTORNEY-IN-FACT

SECTION 4.1.    Administrative Agent Appointed Attorney-in-Fact ................................... 4

SECTION 4.2.    Administrative Agent May Perform ............................................................. 6

SECTION 4.3.    The Administrative Agent's Duty of Care................................................... 6

ARTICLE V
REMEDIES

SECTION 5.1.    Certain Remedies ............................................................................................ 6

SECTION 5.2.    Expenses .......................................................................................................... 8

ARTICLE VI
RELEASE OF COLLATERAL

SECTION 6.1.    Release of Collateral ...................................................................................... 8

SECTION 6.2.    Effect of Release ............................................................................................ 9

ARTICLE VII
MISCELLANEOUS PROVISIONS

SECTION 7.1.    Transaction Document ................................................................................... 9

SECTION 7.2.    Amendments; Etc............................................................................................ 9

SECTION 7.3.    Binding Effect; Assignments ........................................................................ 9

SECTION 7.4.    Addresses for Notices .................................................................................... 9

SECTION 7.5.    Section Captions ........................................................................................... 10

## TABLE OF CONTENTS
(continued)

Page

SECTION 7.6.    Severability ................................................................................ 10

SECTION 7.7.    Governing Law; Submission to Jurisdiction; Entire Agreement;
Waiver of Jury Trial, Etc ...................................................... 10

SECTION 7.8.    Remedies Cumulative .......................................................... 11

SECTION 7.9.    Counterpart .......................................................................... 11

SECTION 7.10.    Administrative Agent Not Bound ........................................ 11

SECTION 7.11.    Further Assurances................................................................ 11

SECTION 7.12.    Enforcement of Remedies.................................................... 11

SECTION 7.13.    Other Security ...................................................................... 11

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT, dated as of July 1, 2008 (as it may be amended or supplemented from time to time, this "Security Agreement"), is among TRIBUNE RECEIVABLES, LLC, a limited liability company organized under the laws of Delaware (the "Borrower"), and BARCLAYS BANK PLC, as administrative agent for the Secured Parties identified below (in such capacity, the "Administrative Agent").

## W I T N E S S E T H:

WHEREAS, the Borrower, Tribune Company, as the Servicer, the persons from time to time party thereto as Conduit Lenders and Committed Lenders, Barclays Bank PLC, as a Funding Agent and such other Persons as may from time to time become parties thereto in such capacity, and the Administrative Agent have entered into a Receivables Loan Agreement, dated as of the date hereof (as amended or otherwise modified from time to time, the "Receivables Loan Agreement"), pursuant to which the Lenders have agreed, subject to the terms and conditions of the Receivables Loan Agreement, to make Loans from time to time to Borrower; and

WHEREAS, it is a condition precedent to the making of the initial Loan that Borrower execute and deliver this Security Agreement.

NOW, THEREFORE, the parties hereto hereby agree as follows:

## ARTICLE I

## DEFINITIONS

SECTION 1.1. <u>Certain Terms</u>. Terms defined in the Receivables Loan Agreement are, unless otherwise defined herein or as the context otherwise requires, used herein as defined therein. In addition, the following terms shall have the following meanings (such meanings to be applicable to both the singular and plural forms of the terms defined):

"Administrative Agent" has the meaning set forth in the preamble, or its permitted successors or assigns pursuant to the Receivables Loan Agreement.

"Borrower" has the meaning set forth in the preamble.

"Collateral" has the meaning set forth in Section 2.1.

"Secured Obligations" has the meaning set forth in Section 2.2.

"Secured Party" means, collectively, each Lender, each Agent and each other Indemnified Party.

9177466 08059699

"Security Agreement" has the meaning set forth in the preamble.

SECTION 1.2.  Other Terms.  All terms used in Article 9 of the UCC and not specifically defined herein, are used herein as defined in such Article 9.

ARTICLE II

SECURITY INTEREST

SECTION 2.1.  Grant of Security.  Borrower hereby pledges and collaterally assigns to the Administrative Agent (for the benefit of the Secured Parties), and hereby grants to the Administrative Agent (for the benefit of the Secured Parties) a security interest in, all property of Borrower wherever located, whether now or hereafter existing, owned, licensed, leased, consigned, arising or acquired (the "Collateral"), including, without limitation, all of Borrower's right, title and interest in, to and under:

(a)     all Pool Receivables and Related Security with respect thereto;

(b)     all of Borrower's rights, remedies, powers and privileges in respect of the Servicing Agreement, the Receivables Purchase Agreement, and all other Transaction Documents (excluding the Receivables Loan Agreement, this Security Agreement and the Fee Letter);

(c)     the Facility Accounts and any other account into which Collections or other proceeds of the foregoing may be deposited or with respect to which Permitted Investments may be credited; and all funds on deposit in the Facility Accounts or any such other account, together with all certificates and instruments, if any, from time to time evidencing the Facility Accounts or any such other account, and funds on deposit and all investments made with such funds, all claims thereunder or in connection therewith, and interest, dividends, moneys, instruments, securities and other property from time to time received, receivable or otherwise distributed in respect of any or all of the foregoing;

(d)     all chattel paper, accounts, instruments, general intangibles and other personal property of the Borrower (excluding the Receivables Loan Agreement, this Security Agreement and the Fee Letter); and

(e)     all Collections and all other products and proceeds of the foregoing.

SECTION 2.2.  Security for Obligations.  This Security Agreement secures the payment and performance of all obligations of Borrower now or hereafter existing or arising under, or in connection with, the Receivables Loan Agreement and each other Transaction Document, whether for principal, interest, costs, fees, expenses, indemnities or otherwise (all such obligations of Borrower being called the "Secured Obligations").

SECTION 2.3.  Continuing Security Interest.  This Security Agreement shall create a continuing security interest in the Collateral and shall:

(a)    remain in full force and effect until the Administrative Agent's interest in the Collateral shall have been released in accordance with Article VI;

(b)    be binding upon the Borrower, its successors, transferees and assigns; and

(c)    inure, together with the rights and remedies of the Administrative Agent hereunder, to the benefit of the Administrative Agent (for the benefit of the Secured Parties) and its successors and transferees and assigns.

ARTICLE III

REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS

SECTION 3.1.   Borrower Representations, Warranties, Covenants and Agreements.   The Borrower represents, warrants, covenants and agrees with the Administrative Agent (for the benefit of the Secured Parties) as follows:

(a)    This Security Agreement creates a valid security interest in favor of the Administrative Agent, on behalf and for the benefit of the Secured Parties, in the Collateral, free and clear of any Adverse Claims.  There is no UCC financing statement or other document creating or evidencing a lien now on file in any public office with respect to which the Borrower is the debtor or granting party covering any of the Collateral, and until the termination of this Security Agreement, the Borrower will not execute or authorize any such UCC financing statement or statements, except pursuant to the Transaction Documents, and the Borrower further agrees that it will not grant, permit or suffer to exist any Adverse Claim upon any of the Collateral (including, without limitation, describing the Collateral in such financing statements as "all assets of this debtor" as "all personal property, whether now owned or hereafter acquired").

(b)    The Borrower shall, at its expense, make, procure, execute (if necessary), authorize and deliver such financing statement or statements, or amendments thereof or supplements thereto, or other instruments, certificates and supplemental writings, and do and deliver all acts, things, writings and assurances as may be necessary or appropriate to perfect, preserve, protect and enforce the security interest of the Administrative Agent in the Collateral and the priority of such security interest under applicable law (including, without limitation, all actions as the Administrative Agent may from time to time reasonably request).

(c)    The Borrower covenants and agrees to warrant and defend its title to and ownership of the Collateral, at its own expense, against the claims and demands of all other parties claiming an interest in any portion of the Collateral.

(d)    None of the Lenders, the Administrative Agent or any of their respective successors and permitted assigns assumes any of the obligations of the Borrower or any of its affiliates under the Collateral or any transaction, agreement or contract out of which the Collateral, or any thereof, arises.

(e)    Upon the occurrence of a Trigger Event, the Borrower shall, upon the request of the Administrative Agent, promptly, at its expense:

(i)    Deliver, or cause to be delivered, to the Administrative Agent (or its designee), with appropriate endorsement or assignment, all instruments, chattel paper, monies, checks, notes, drafts and other evidence of indebtedness, or other property in the nature of items of payment representing proceeds of any of the Collateral, which are then in, or may thereafter come into, the Borrower's possession; and

(ii)    Upon the request of the Administrative Agent, direct all parties obligated on any of the Collateral to make all payments due or to become due thereon directly to the Administrative Agent or to such other person or officer as may be specified by the Administrative Agent.

(f)    The Borrower shall perform (or cause to be performed), at its sole cost and expense, any and all steps, and shall pay the amount of all expenses, necessary to obtain, preserve, perfect, defend and enforce the perfected security interest of the Administrative Agent in any of the Collateral free and clear of all Adverse Claims, and preserve, defend, enforce and collect the Collateral. The Borrower shall promptly execute and deliver at its own expense all further instruments and documents and take all further action that may be necessary or desirable or that the Administrative Agent may request in order to enable the Administrative Agent to exercise and enforce its rights and remedies hereunder in respect of the Collateral.

(g)    The Borrower shall promptly notify the Administrative Agent of any claim, action or proceeding affecting title to any portion of the Collateral or the security interests herein granted and, at the request of the Administrative Agent, appear in and defend, at the Borrower's expense, any such action or proceeding.

(h)    The Borrower shall comply in all material respects with all of its covenants and agreements contained in all instruments and documents constituting Collateral.

ARTICLE IV

ATTORNEY-IN-FACT

SECTION 4.1.  Administrative Agent Appointed Attorney-in-Fact. The Borrower hereby irrevocably appoints the Administrative Agent (for the benefit of the Secured Parties) as the Borrower's attorney-in-fact, with full authority in the place and stead of Borrower and in the name of the Borrower or otherwise, from time to time in the Administrative Agent's discretion following the occurrence and during the continuation of a Trigger Event, to:

(a)    ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(b)     receive, endorse, and collect any drafts or other instruments, documents and chattel paper, in connection with clause (a) above;

(c)     file any claims or take any action or institute any proceedings which the Administrative Agent may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of the Administrative Agent and the Secured Parties with respect to any of the Collateral;

(d)     sell, transfer, assign or otherwise deal in or with the Collateral or any part thereof pursuant to the terms and conditions hereunder;

(e)     defend, settle, compromise or adjust any suit, action or proceeding relating to the Collateral and, in connection therewith, to give such discharges or releases as the Administrative Agent may reasonably deem appropriate;

(f)     pay or discharge Adverse Claims levied or placed on or threatened against the Collateral;

(g)     direct any parties liable for any payment under any of the Collateral to make payment of any and all monies due and to become due thereunder directly to the Administrative Agent or as the Administrative Agent shall direct;

(h)     sign and endorse any drafts, assignments, proxies, stock powers, verifications, notices and other documents relating to the Collateral;

(i)     execute and deliver all assignments, conveyances, statements, financing statements, renewal financing statements, pledge agreements, affidavits, notices and other agreements, instruments and documents that the Administrative Agent may determine necessary in order to perfect and maintain the security interests and liens granted in this Security Agreement and in order to fully consummate all of the transactions contemplated herein;

(j)     sign any instrument sanctioning the transfer of any or all of the Collateral into the name of any transferee to whom the Collateral or any part thereof may be sold pursuant to Article V hereof; and

(k)     perform the affirmative obligations of the Borrower under the Transaction Documents.

The Administrative Agent agrees that it will not take any of the actions described in the prior sentence unless a Trigger Event has occurred and is continuing, except that the Administrative Agent may take control of the Cash Reserve Account at any time, and may take control of the other Facility Accounts and exercise the rights with respect thereto granted under the Receivables Loan Agreement at any time following the occurrence and during the continuation of a Facility Event. The Borrower hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Section 4.1 is irrevocable and coupled with an interest. The Administrative Agent shall be under no duty to exercise or withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to the Administrative Agent

in this Security Agreement, and shall not be liable for any failure to do so or any delay in doing so. The Administrative Agent shall not be liable for any act or omission or for any error of judgment or any mistake of fact or law in its individual capacity or its capacity as attorney-in-fact except acts or omissions resulting from its gross negligence or willful misconduct. This power of attorney is conferred on the Administrative Agent solely to protect, preserve and realize upon its security interest in the Collateral.

SECTION 4.2. <u>Administrative Agent May Perform</u>. If the Borrower fails to perform any agreement contained herein or in the other Transaction Documents in respect of any Collateral, the Administrative Agent may, itself, perform, or cause the performance of such agreement, and the expenses of the Administrative Agent incurred in connection therewith shall be payable by Borrower pursuant to <u>Section 5.2</u>. No such performance of any agreement by the Administrative Agent on behalf of the Borrower, and no such advance or expenditure therefor, shall relieve the Borrower of any default under the terms of this Security Agreement or any other Transaction Document.

SECTION 4.3. <u>The Administrative Agent's Duty of Care</u>. Other than the exercise of reasonable care to ensure the safe custody of the Collateral while being held by the Administrative Agent hereunder, the Administrative Agent shall have no duty or liability to preserve rights pertaining thereto, it being understood and agreed that the Borrower shall be responsible for preservation of all rights in the Collateral, and the Administrative Agent shall be relieved of all responsibility for Collateral upon surrendering it or tendering the surrender of it to the Borrower. The Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if such Collateral is accorded treatment substantially equal to that which the Administrative Agent accords its own property, which shall be no less than the treatment employed by a reasonable and prudent agent in the industry, it being understood that the Agent shall not have responsibility for: (i) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relating to any Collateral, whether or not the Administrative Agent has or is deemed to have knowledge of such matters; or (ii) taking any necessary steps to preserve rights against any parties with respect to any Collateral.

ARTICLE V

REMEDIES

SECTION 5.1. <u>Certain Remedies</u>. Without limiting any right or authorization the Administrative Agent may otherwise have under this Agreement or the other Transaction Documents, after any Facility Termination Event shall have occurred and be continuing:

(a)    The Administrative Agent (on behalf and for the benefit of the Secured Parties) may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein, in the Receivables Loan Agreement or otherwise available to it, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral).

(b)    The Administrative Agent may notify the Obligors with respect to the Receivables, or any of them, of the Administrative Agent's security interest in the Collateral.

(c)    All Collections and other cash proceeds received by the Administrative Agent in respect of any sale of, collections from, or other realization upon all or any part of the Collateral shall be held by the Administrative Agent as collateral for, and applied against, all or any part of the Secured Obligations in the order of priority set forth in Section 2.7 of the Receivables Loan Agreement.

(d)    In making the determinations and allocations required by Section 5.1(c), the Administrative Agent may rely upon information supplied by the Lenders, the Indemnified Parties or the Servicer under the Receivables Loan Agreement as to the amounts payable with respect to Secured Obligations, and the Administrative Agent shall have no liability to the Borrower, any Indemnified Party, the Servicer or any Lender for actions taken in reliance on such information, except for its own gross negligence or willful misconduct.

(e)    If, through the operation of any bankruptcy, reorganization, insolvency or other laws or otherwise, the Administrative Agent's security interest hereunder is enforced with respect to some, but not all, of the Secured Obligations then outstanding, the Administrative Agent shall nonetheless apply the proceeds of the Collateral for the benefit of the Secured Parties in the proportions and subject to the priorities referenced in Section 5.1(c).

(f)    Upon the occurrence of a Facility Termination Event and during the continuation thereof, without limiting the generality of this Section and upon reasonable notice, the Administrative Agent may, in its sole discretion, and if so directed by the Required Committed Lenders shall sell or otherwise dispose of or realize upon the Collateral, or any part thereof, in one or more transactions, by any method typically used for the sale or other disposition of or realization upon such type of collateral, including, but not limited to, private sale to a restricted group of purchasers (the choice of such methods to be at the sole discretion of the Administrative Agent), at such price or prices and on such other terms as the Administrative Agent may deem commercially reasonable (the Borrower hereby acknowledges that a private sale to a restricted group of purchasers may be at prices and on terms less favorable to the seller than the prices and other terms which might have been obtained through another method of disposition and, notwithstanding the foregoing, the Borrower agrees that the price received in a private sale, in and of itself, shall not constitute grounds that the sale was made in a commercially unreasonable manner), for cash, credit or for future delivery or otherwise in accordance with applicable law. To the extent permitted by law, any Lender may in such event bid for the purchase of such Collateral. The Borrower agrees that, to the extent notice of any sale shall be required by law, any requirement of reasonable notice shall be met if notice, specifying the place and time of such sale (including, if applicable, the time after which any private sale is to be made), is personally served on or mailed, postage prepaid, to the Borrower, in accordance with the notice provisions of the Receivables Loan Agreement at least ten (10) days before the time of such sale. The Administrative

Agent shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. The Administrative Agent may adjourn any sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(g)    In addition to the rights and remedies hereunder, upon the occurrence of a Facility Termination Event, the Administrative Agent may, after providing the notices required by Section 9-621 of the UCC or otherwise complying with the requirements of applicable law of the relevant jurisdiction (unless the Borrower objects thereto in accordance with applicable law), retain all or any portion of the Collateral in satisfaction of the Secured Obligations. Unless and until the Administrative Agent shall have provided such notices, however, the Administrative Agent shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

(h)    In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which the Administrative Agent or the Lenders are legally entitled, the Borrower shall be liable for the deficiency, together with interest thereon at the rate specified in the Receivables Loan Agreement, together with the costs of collection and the fees of any attorneys employed by the Administrative Agent to collect such deficiency. Any surplus remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the Borrower or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

SECTION 5.2. Expenses. The Borrower agrees to pay upon demand by the Administrative Agent or any Lender, the amount of any and all out-of-pocket expenses of the Administrative Agent or such Lender, including the fees and disbursements of its counsel and of any experts and agents, which the Administrative Agent or such Lender may incur in connection with (i) the administration of this Security Agreement as contemplated by the Transaction Documents, (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Collateral in accordance with the Transaction Documents, or (iii) the exercise or enforcement of any of the rights of the Administrative Agent or such Lender hereunder.

ARTICLE VI

RELEASE OF COLLATERAL

SECTION 6.1. Release of Collateral. The Administrative Agent's right, title and interest in the Collateral shall be released and this Agreement shall terminate effective on the Final Payout Date. Further, upon any purchase or repurchase of a Pool Receivable pursuant to the Servicing Agreement or the Receivables Purchase Agreement, the Administrative Agent shall release its security interest in any Collateral in the manner provided in Section 6.2 below; provided that if any payment, or any part thereof, of any of the Transaction Party Obligations in rescinded or must otherwise be restored or returned by the Administrative Agent or any Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Seller, the Borrower or any Obligor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or a trustee or similar officer for, any Seller, the Borrower or any Obligor or any

conservator of, or a trustee or similar officer for, any Seller, the Borrower or any Obligor or any substantial part of its property, or otherwise, this Security Agreement, all rights hereunder and the liens created hereby shall continue to be effective, or be reinstated, as though such payments had not been made.

SECTION 6.2.  Effect of Release.  When the release of any of the Collateral is effective in accordance with Section 6.1, all right, title and interest of the Administrative Agent in, to and under such Collateral shall terminate and shall revert to the Borrower, its successors and assigns, and the right, title and interest of the Administrative Agent therein shall thereupon cease, terminate and become void; and, upon the request of the Borrower, its successors or assigns, and at the cost and expense of the Borrower, its successors or assigns, the Administrative Agent shall authorize such UCC-3 financing statements or such other instruments as are necessary or desirable to terminate and remove of record any documents constituting public notice of this Agreement (in the case of a release of all of the Collateral) and, in any case, the security interests and assignments granted hereunder with respect to the Collateral being released and shall assign and transfer, or cause to be assigned and transferred, and shall deliver or cause to be delivered to the Borrower, all property, including all moneys, instruments and securities, of the Borrower then held by the Administrative Agent with respect to the Collateral being released.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

SECTION 7.1.  Transaction Document.  This Security Agreement is a Transaction Document executed pursuant to the Receivables Loan Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof.

SECTION 7.2.  Amendments; Etc.  No amendment to or waiver of any provision of this Security Agreement nor consent to any departure by the Borrower herefrom shall in any event be effective unless the same shall be in writing and signed by the Administrative Agent with the consent of the Required Committed Lenders, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.  No delay on the part of the Administrative Agent in exercising any of its options, powers or rights, nor any partial or single exercise thereof, shall constitute a waiver thereof.

SECTION 7.3.  Binding Effect; Assignments.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns and shall also inure to the benefit of the parties to the Receivables Loan Agreement and the other Transaction Documents and their respective successors and assigns.  The Borrower may not assign or transfer its rights and obligations hereunder or any interest therein without the prior written consent of the Administrative Agent.

SECTION 7.4.  Addresses for Notices.  All notices and other communications provided for hereunder shall be provided in the manner described in Schedule 2 (*Address and Notice Information*) to the Receivables Loan Agreement.

SECTION 7.5.  Section Captions.  Section captions used in this Security Agreement are for convenience of reference only and shall not affect the construction of this Security Agreement.

SECTION 7.6.  Severability.  Wherever possible each provision of this Security Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Security Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Agreement.

SECTION 7.7.  Governing Law; Submission to Jurisdiction; Entire Agreement; Waiver of Jury Trial, Etc.

(a)  THIS SECURITY AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK EXCEPT TO THE EXTENT THAT, UNDER THE UCC, THE VALIDITY OR PERFECTION OF THE SECURITY INTEREST HEREUNDER, OR REMEDIES HEREUNDER IN RESPECT OF ANY PARTICULAR COLLATERAL, ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.  EACH OF THE PARTIES HERETO HEREBY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND OF ANY NEW YORK STATE COURT SITTING IN THE CITY OF NEW YORK FOR PURPOSES OF ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. NOTHING IN THIS SECTION 7.7 SHALL AFFECT THE RIGHT OF ANY PARTY TO BRING ANY ACTION OR PROCEEDING AGAINST ANY OTHER PARTY OR ITS RESPECTIVE PROPERTIES IN THE COURTS OF OTHER JURISDICTIONS.  THIS SECURITY AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS CONSTITUTE THE ENTIRE UNDERSTANDING AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDE ANY PRIOR AGREEMENTS, WRITTEN OR ORAL, WITH RESPECT THERETO.

EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE), OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN)

OR ACTIONS OF BORROWER, THE ADMINISTRATIVE AGENT OR ANY OTHER
AFFECTED PARTY. BORROWER ACKNOWLEDGES AND AGREES THAT IT HAS
RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION (AND
EACH OTHER PROVISION OF EACH OTHER TRANSACTION DOCUMENT TO WHICH
IT IS A PARTY) AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR
THE ADMINISTRATIVE AGENT ENTERING INTO THIS AGREEMENT AND EACH
SUCH OTHER TRANSACTION DOCUMENT.

SECTION 7.8. Remedies Cumulative. All rights and remedies afforded to the
Administrative Agent by reason of this Security Agreement are separate and cumulative
remedies, and shall be in addition to all other rights and remedies in favor of the Administrative
Agent existing at law or in equity or otherwise. None of such remedies, whether or not exercised
by the Administrative Agent, shall be deemed to exclude, limit or prejudice the exercise of any
other legal or equitable remedy or remedies available to the Administrative Agent.

SECTION 7.9. Counterpart. This Security Agreement may be executed in any number
of counterparts, each of which where so executed and delivered shall be an original, but all of
which shall constitute one and the same instrument. It shall not be necessary in making proof of
this Security Agreement to produce or account for more than one such counterpart.

SECTION 7.10. Administrative Agent Not Bound.

(a)      This Security Agreement shall not be construed as creating a partnership
or joint venture agreement between the Administrative Agent and the Borrower.

(b)      The Administrative Agent shall not be obligated to perform or discharge
any obligation of the Borrower as a result of the collateral assignment hereby effected.

(c)      The acceptance by the Administrative Agent of this Security Agreement,
with all the rights, powers, privileges and authority so created, shall not at any time or in
any event obligate the Administrative Agent to appear in or defend any action or
proceeding relating to the Collateral to which it is not a party, or to take any action
hereunder, or to expend any money or incur any expenses or perform or discharge any
obligation, duty or liability in connection with the Collateral.

SECTION 7.11. Further Assurances. The Borrower authorizes the Administrative
Agent, to the extent permitted by law, to file any financing statements without the signature of
Borrower and further authorizes the Administrative Agent, to the extent permitted by law, to file
a photographic or other reproduction of this Security Agreement in lieu of a financing statement.

SECTION 7.12. Enforcement of Remedies. In enforcing any rights hereunder the
Administrative Agent shall not be required to resort to any particular security, right or remedy
through foreclosure or otherwise or to proceed in any particular order of priority, or otherwise act
or refrain from acting, and, to the extent permitted by law, the Borrower hereby waives and
releases any right to a marshaling of assets.

SECTION 7.13. Other Security. To the extent that any of the Secured Obligations are
now or hereafter secured by property other than the Collateral (including, without limitation, real

and other personal property owned by the Borrower), or by a guarantee, endorsement or property of any other Person, then the Administrative Agent (for the benefit of the Secured Parties) shall have the right to proceed against such other property, guarantee or endorsement upon the occurrence of any Facility Termination Event, and the Administrative Agent (for the benefit of the Secured Parties) has the right, in its sole discretion, to determine which rights, security, liens, security interests or remedies the Administrative Agent shall at any time pursue, relinquish, subordinate, modify or take with respect thereto, without in any way modifying or affecting any of them or any of the Administrative Agent's rights or the Secured Obligations under this Security Agreement or under any other of the Transaction Documents.

(Signatures Follow)

IN WITNESS WHEREOF, each of the undersigned have caused this Security Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

TRIBUNE RECEIVABLES, LLC,
as Borrower

By: _____

Name:  Brian F. Litman

Title:   Assistant Treasurer

S-1

BARCLAYS BANK PLC,
as Administrative Agent

By _____
Name: _____
Title: _____
Pierre Duleyrie
Director