# EXHIBIT "1"

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In the Matter of                                    :
                                                    :    Chapter 11
TRIBUNE COMPANY, et al.,[1]                         :    Case Nos. 08-13141
                                                    :    Jointly Administered
                                        Debtors.    :
-------------------------------------------------------x    **Related to Docket No. 19**

## INTERIM ORDER PURSUANT TO SECTIONS 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) AND 365 OF THE BANKRUPTCY CODE (1) AUTHORIZING THE DEBTORS TO GUARANTEE AN AMENDED SECURITIZATION FACILITY AND FOR CERTAIN DEBTORS TO CONTINUE SELLING RECEIVABLES AND RELATED RIGHTS PURSUANT THERETO, (2) AUTHORIZING THE DEBTORS TO ENTER INTO A LETTER OF CREDIT FACILITY, (3) MODIFYING THE AUTOMATIC STAY AND (4) GRANTING OTHER RELATED RELIEF

---

[1]      "Debtors" means, collectively, Tribune Company; 435 Production Company; 5800 Sunset Productions Inc.; Baltimore Newspaper Networks, Inc.; California Community News Corporation; Candle Holdings Corporation; Channel 20, Inc.; Channel 39, Inc.; Channel 40, Inc.; Chicago Avenue Construction Company; Chicago River Production Company; Chicago Tribune Company; Chicago Tribune Newspapers, Inc.; Chicago Tribune Press Service, Inc.; ChicagoLand Microwave Licensee, Inc.; Chicagoland Publishing Company; Chicagoland Television News, Inc.; Courant Specialty Products, Inc.; Direct Mail Associates, Inc.; Distribution Systems of America, Inc.; Eagle New Media Investments, LLC; Eagle Publishing Investments, LLC; forsalebyowner.com corp.; ForSaleByOwner.com Referral Services, LLC; Fortify Holdings Corporation; Forum Publishing Group, Inc.; Gold Coast Publications, Inc.; GreenCo, Inc.; Heart & Crown Advertising, Inc.; Homeowners Realty, Inc.; Homestead Publishing Co.; Hoy, LLC; Hoy Publications, LLC; InsertCo, Inc.; Internet Foreclosure Service, Inc.; JuliusAir Company, LLC; JuliusAir Company II, LLC; KIAH Inc.; KPLR, Inc.; KSWB Inc.; KTLA Inc.; KWGN Inc.; Los Angeles Times Communications LLC; Los Angeles Times International, Ltd.; Los Angeles Times Newspapers, Inc.; Magic T Music Publishing Company; NBBF, LLC; Neocomm, Inc.; New Mass. Media, Inc.; New River Center Maintenance Association, Inc.; Newscom Services, Inc.; Newspaper Readers Agency, Inc.; North Michigan Production Company; North Orange Avenue Properties, Inc.; Oak Brook Productions, Inc.; Orlando Sentinel Communications Company; Patuxent Publishing Company; Publishers Forest Products Co. of Washington; Sentinel Communications News Ventures, Inc.; Shepard's Inc.; Signs of Distinction, Inc.; Southern Connecticut Newspapers, Inc.; Star Community Publishing Group, LLC; Stemweb, Inc.; Sun-Sentinel Company; The Baltimore Sun Company; The Daily Press, Inc.; The Hartford Courant Company; The Morning Call, Inc.; The Other Company LLC; Times Mirror Land and Timber Company; Times Mirror Payroll Processing Company, Inc.; Times Mirror Services Company, Inc.; TMLH 2, Inc.; TMLS 1, Inc.; TMS Entertainment Guides, Inc.; Tower Distribution Company; Towering T Music Publishing Company; Tribune Broadcast Holdings, Inc.; Tribune Broadcasting Company; Tribune Broadcasting Holdco, LLC; Tribune Broadcasting News Network, Inc.; Tribune California Properties, Inc.; Tribune Direct Marketing, Inc.; Tribune Entertainment Company; Tribune Entertainment Production Company; Tribune Finance, LLC; Tribune Finance Service Center, Inc.; Tribune License, Inc.; Tribune Los Angeles, Inc.; Tribune Manhattan Newspaper Holdings, Inc.; Tribune Media Net, Inc.; Tribune Media Services, Inc.; Tribune Network Holdings Company; Tribune New York Newspaper Holdings, LLC; Tribune NM, Inc.; Tribune Publishing Company; Tribune Television Company; Tribune Television Holdings, Inc.; Tribune Television New Orleans, Inc.; Tribune Television Northwest, Inc.; ValuMail, Inc.; Virginia Community Shoppers, LLC; Virginia Gazette Companies, LLC; WATL, LLC; WCWN LLC; WDCW Broadcasting, Inc.; WGN Continental Broadcasting Company; WLVI Inc.; WPIX, Inc.; and WTXX Inc.

Upon the motion dated December 10, 2008 (the "Motion")[2] of the above-captioned

Debtors seeking an order of this Court, pursuant to sections 362(d), 363(b)(1), 363(f), 363(m),

364(c)(1), 364(c)(2), 364(c)(3), 364(d) 364(e) and 365 of title 11, of the United States Code (the

"Bankruptcy Code"):  (i) authorizing Tribune Company and the other Originators[3] to enter into

an omnibus amendment (as amended, supplemented or otherwise modified from time to time, the

"Omnibus Amendment") to (a) that certain Receivables Loan Agreement, dated as of July 1,

2008 (as heretofore amended, the "RLA") among Tribune Company, Tribune Receivables, LLC

("Tribune Receivables" or the "Buyer") and Barclays Bank PLC, in its capacities as Lender,

Funding Agent and Administrative Agent (in all such capacities, and together with its successors

in such capacities, the "RLA Agent"), (b) that certain Receivables Purchase Agreement, dated as

of July 1, 2008 (as heretofore amended, the "RPA") among Tribune Receivables, Tribune

Company and the other Originators and (c) that certain Servicing Agreement, dated as of July 1,

2008 (as heretofore amended, the "Servicing Agreement") among Tribune Receivables, Tribune

Company and the other Originators, which Omnibus Amendment shall, among other things,

increase the aggregate principal amount of Loans (as defined in the RLA, as amended by the

Omnibus Amendment) available to Tribune Receivables under the RLA, as amended by the

Omnibus Amendment, to $300,000,000; (ii) authorizing Tribune Company and the other Debtors

---

[2]      Capitalized terms used but not otherwise defined herein shall have the same meanings assigned thereto in the Motion.

[3]      "Originators" means, collectively, the following Debtors: Tribune Company, Chicagoland Television News, Inc., Tribune Broadcast Holdings, Inc., Tribune Interactive, Inc., Tribune Television Holdings, Inc., WGN Continental Broadcasting Company, WPIX, Inc., Tribune Television New Orleans, Inc., KSWB Inc., KTLA Inc., KIAH Inc., Tower Distribution Company, Tribune Television Northwest, Inc., Tribune Television Company, Channel 40, Inc., Channel 39, Inc., Los Angeles Times Communications LLC, WDCW Broadcasting, Inc., Orlando Sentinel Communications Company, Sun-Sentinel Company, Gold Coast Publications, Inc., Forum Publishing Group, Inc., The Daily Press, Inc., Chicago Tribune Company, The Baltimore Sun Company, The Hartford Courant Company and The Morning Call, Inc.

to guarantee certain of the obligations of Tribune Receivables under the RLA, RPA and Servicing Agreement, in each case, as amended by the Omnibus Amendment (collectively, the "Amended Agreements") and other Transaction Documents (as defined in the Amended Agreements), and execute a guarantee in favor of the RLA Agent in connection therewith (as amended, supplemented or otherwise modified from time to time, the "Guaranty") and secure their obligations under the Guaranty, the Amended Agreements and the Transaction Documents pursuant to a security agreement (as amended, supplemented or otherwise modified from time to time, the "Guaranty Security Agreement"); (iii) authorizing Tribune Company and the other Debtors to enter into, perform its reimbursement and other obligations under, and provide the required cash collateral under, a new, postpetition letter of credit facility in the amount of up to $50,000,000 (as amended, supplemented or otherwise modified from time to time, the "Letter of Credit Agreement") to be provided by Barclays Bank PLC, as administrative agent (in such capacity, the "LC Agent") and issuing bank (in such capacity, the "Issuing Bank") and a syndicate of other financial institutions (including Barclays Bank PLC, the "Lenders"); (iv) granting the RLA Agent, the LC Agent, the Issuing Bank and the Lenders priority in payment with respect to the obligations of Tribune Company and the other Debtors under the Amended Agreements, the Guaranty, the Guaranty Security Agreement and the Letter of Credit Agreement over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, other than in respect of the Carve-Out (as defined below); (v) scheduling an interim hearing (the "Interim Hearing") on the Motion to consider entry of an interim order (this "Order") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (vi) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established, by this Court to

consider entry of a final order (the "Final Order") authorizing on a final basis, among other things, the Omnibus Amendment, the Guaranty, the Guaranty Security Agreement and the Letter of Credit Agreement, and granting other related relief; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and the Court having considered the Motion and all documents related thereto, and after due deliberation and sufficient cause appearing therefor; the Interim Hearing having been held on December 10, 2008); and all objections or responses, if any, to the Motion having been withdrawn or overruled either prior to the Hearing, or at the Hearing; and upon the record of the Hearing;

BASED UPON THE RECORD MADE AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1.      On December 8, 2008 (the "Filing Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      This Court has jurisdiction over these proceedings and the parties and the property of the Debtors affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.      Subject to Paragraph 26, the Debtors admit that, in accordance with the terms of the RLA, as amended, Tribune Receivables is truly and justly indebted to the RLA Agent, without defense, counterclaim or offset of any kind, and that as of the Filing Date was liable to the RLA Agent under the RLA in the aggregate principal amount of $225,000,000 plus accrued and unpaid interest and fees thereon. Subject to Paragraph 26, the Debtors further admit that the obligations of Tribune Receivables to RLA Agent are secured by valid, perfected, enforceable, first-priority liens and security interests granted to the RLA Agent, which liens are not subject to

subordination, upon and in substantially all of Tribune Receivables' assets and property. Subject to Paragraph 26, the Debtors release and discharge all claims and causes of action of every kind and nature existing prior to the Filing Date against the RLA Agent, its affiliates, agents, officers, directors, employees and attorneys (collectively, the "Released Parties"), and all claims and causes of action of every kind and nature existing prior to the Filing Date, in connection with or related to all rights and other property heretofore conveyed to Tribune Receivables and/or the RLA Agent pursuant to the RLA, the RPA and the Servicing Agreement as each of the foregoing have been amended, whether arising at law or at equity, including, without limitation, any claims for recharacterization, subordination, substantive consolidation, avoidance or other debtor claims arising under or pursuant to Sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code with respect to the RLA, the RPA, the Servicing Agreement, the Omnibus Amendment, the Amended Agreements, and the transactions thereunder; provided that nothing in this Order releases any party thereto from their contractual obligations or their property interests in the Receivables or the residuals thereof under the Amended Agreements.

4.    Subject to Paragraph 26, the Debtors admit that the transfers of the RPA Assets by the Originators pursuant to the provisions of the RPA, as amended, whether occurring prior to or subsequent to the Filing Date, constitute true sales or true contributions under applicable non-bankruptcy law and are hereby deemed true sales or true contributions. Subject to Paragraph 26, the Debtors further admit that upon the transfer of the RPA Assets to Tribune Receivables, the RPA Assets did (with respect to transfers occurring prior to the Filing Date) and will (with respect to the transfers occurring on or after the Filing Date) become the sole property of Tribune Receivables, and none of the Debtors, nor any creditors of the Debtors, shall retain any ownership rights, claims, liens or interests in and to the RPA Assets, or any proceeds thereof

pursuant to section 541 of the Bankruptcy Code or otherwise. Consistent with, but without limiting the generality of, the foregoing, the Debtors further admit, subject to Paragraph 26, that upon their transfer by each of the Originators pursuant to the provisions of the RPA, as amended, neither the RPA Assets, nor the proceeds thereof, shall constitute property of the bankruptcy estates of any of the Debtors, including notwithstanding any intentional or inadvertent deposit of any proceeds of the RPA Assets in non-segregated bank accounts owned or controlled by any of the Debtors, and this Court, in exercising jurisdiction over the Debtors and their bankruptcy estates, shall have no jurisdiction over such RPA Assets or the proceeds thereof, excepting only the Debtors' residual interest in the RPA Assets after payment in full of amounts pursuant to the Amended Agreements, the Guaranty and the Guaranty Security Agreement.

5.    The Debtors seek access to the financing proposed to be provided by the Amended Agreements and the Letter of Credit Agreement in order to assure sufficient available sources of working capital and financing to carry on the operation of their businesses. Specifically, the Amended Agreements will permit the Originators to continue transferring the Receivables, the Related Security and the Collections (each as defined in the RLA and hereinafter, collectively, the "RPA Assets") to Tribune Receivables, allowing them to continue their prepetition practice of converting Receivables to cash as soon as possible to provide cash flow necessary for various business purposes. The Letter of Credit Agreement will permit Tribune Company to obtain stand-by letters of credit necessary in the ordinary course of its, and certain of its subsidiaries', businesses. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, to purchase and supply new inventory and otherwise finance their operations, is essential to the Debtors' continued viability. In addition, the Debtors' need for financing is immediate. In the absence of the proposed

financing, serious and irreparable harm to the Debtors business operations and their estates could occur which may include third parties declining to conduct business dealings with the Debtors. The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

6.    Given their current financial condition, financing arrangements and capital structure, the Debtors cannot obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.   Financing on a postpetition basis is not otherwise available without the Debtors (i) granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, other than as described below in respect of the Carve-Out, and (ii) securing, pursuant to sections 364(c) and (d) of the Bankruptcy Code, such indebtedness and obligations with security interests in and liens on substantially all of the Debtors' assets as described below.

7.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the indenture trustee for the Debtors' prepetition notes; (viii) the administrative agent for the Debtors' Receivables Facility; and (ix) the Debtors' primary cash management banks.  No creditors' committee has been appointed in any of the Chapter 11 Cases.  Under the circumstances, such notice of the Interim Hearing and

the relief requested in the Motion complies with the requirements of Sections 102(1), 364(c) and 364(d) of the Bankruptcy Code and Rules 2002 and 4001(c) of the Bankruptcy Rules.

       8.     The terms and conditions of the Amended Agreements, the Guaranty, the Guaranty Security Agreement, the Letter of Credit Agreement and each of the other instruments and agreements executed or to be executed in connection therewith (collectively, the "Financing Agreements") are in the best interests of the Debtors and their estates, and the Debtors are expressly authorized and empowered to enter into the Financing Agreements to which they are a party, each in substantially the form annexed to the Motion, and are further expressly authorized to perform and do all acts that may be required in connection with the Financing Agreements. Upon execution and delivery thereof, each Financing Agreement shall constitute valid and binding obligations of the Debtors, enforceable against each such Debtor in accordance with their respective terms. The terms and conditions of the Financing Agreements have been negotiated in good faith and at arm's length and the transfers made or to be made and the obligations incurred or to be incurred shall be deemed to have been made for fair or reasonably equivalent value and in good faith (and without intent to "hinder, delay or defraud any creditor" of the Debtors) as those terms are used in the Bankruptcy Code and the transactions contemplated thereunder shall be deemed to have been made in "good faith," as that term is used in the Bankruptcy Code. The RLA Agent shall be entitled, derivatively, to assert any and all of the rights of Tribune Receivables, including, without limitation, those arising under Section 363(m) of the Bankruptcy Code, arising as a result thereof.

      Based upon the foregoing findings and conclusions, and upon the record made at the Interim Hearing, and good and sufficient cause appearing therefore;

      IT IS HEREBY ORDERED that:

9.    Tribune Company and the other Debtors are expressly authorized and empowered (i) to execute and deliver the Omnibus Amendment, the Guaranty, the Guaranty Security Agreement and all related documents and instruments to be executed and delivered in connection therewith, (ii) to transfer, and shall be deemed to have transferred, free and clear of all liens, claims, encumbrances and other interests of any of the Originators, or their respective creditors pursuant to sections 363(b)(1) and (f) of the Bankruptcy Code, the RPA Assets to Tribune Receivables, without recourse (except to the limited extent provided therein) and (iii) to make, execute and deliver all instruments and documents and perform all other acts (including, without limitation, the perfection of Tribune Receivables' ownership interest in the RPA Assets) that may be required in connection with the Amended Agreements, the Guaranty, the Guaranty Security Agreement and the transactions contemplated thereby; it being expressly contemplated that pursuant to the terms of the Amended Agreements, Tribune Company shall be expressly authorized and empowered pursuant to section 363(b)(1) of the Bankruptcy Code to service, administer and collect the RPA Assets on behalf of Tribune Receivables pursuant to the Amended Agreements, and with respect to the Originators and Tribune Receivables, each shall be expressly authorized and empowered pursuant to section 363(b)(1) of the Bankruptcy Code to make, execute and deliver all instruments and documents and perform all other acts (including, without limitation, the perfection of Tribune Receivables' interest in the RPA Assets) that may be required in connection with the Amended Agreements and the transactions contemplated thereby.  Moreover, Tribune Receivables shall be entitled to the full benefits of section 363(m) of the Bankruptcy Code in connection with any transfers made pursuant to the provisions of the Amended Agreements, with the RLA Agent being entitled to assert Tribune Receivables' rights thereunder derivatively.  The obligations of the Debtors under the Guaranty, the Guaranty

Security Agreement and this Order are hereinafter referred to as the "Guaranteed Obligations." All indemnification and other obligations of Tribune Company and the other Originators owing to the RLA Agent and the other Related Parties under the Omnibus Amendment, the Amended Agreements, the other Transaction Documents and this Order are hereinafter referred to as the "Indemnification Obligations." All obligations of Tribune Company and the other the Originators owing to Tribune Receivables under the Omnibus Amendment, the Amended Agreements, the other Transaction Documents and this Order are hereinafter referred to as the "Receivables Obligations." For the avoidance of doubt, the Guaranteed Obligations, the Indemnification Obligations and the Receivables Obligations do not include any amounts owing to Barclays Bank PLC or its affiliates under or in connection with (i) any swap claims, or (ii) any credit agreement in existence prior to the Filing Date not related to the Financing Agreements and other Transaction Documents ((i) and (ii) together, "Other Prepetition Indebtedness") and the property hereafter conveyed to Tribune Receivables and/or the RLA Agent pursuant to the Amended Agreements shall not secure such Other Prepetition Indebtedness. Notwithstanding the foregoing, Barclays Bank PLC shall be entitled to all of the rights and remedies accorded to it pursuant to the "safe harbor" provisions of the Bankruptcy Code.

10.     The Debtors are expressly authorized and empowered to execute and deliver to the LC Agent and the Issuing Bank the Letter of Credit Agreement and all related documents and instruments to be executed and delivered in connection therewith (collectively, the "Letter of Credit Documents"). The Debtors are authorized to comply with and perform all of the terms and conditions of the Letter of Credit Documents, including, without limitation, all reimbursement obligations thereunder, and the Debtors are directed to repay amounts owed thereunder to the LC Agent, the Issuing Bank and the Lenders in accordance with and subject to

the terms and conditions set forth in the Letter of Credit Documents and this Order.   All extensions of credit made under the Letter of Credit Agreement and interest thereon and all fees, costs, expenses, indebtedness, obligations and liabilities of the Debtors to the LC Agent, the Issuing Bank and the Lenders under the Letter of Credit Documents and this Order are hereinafter referred to as the "Letter of Credit Obligations."

11.    Tribune Company and the other Debtors are authorized to use the extensions of credit and the proceeds of the Loans (as defined in the RLA, as amended by the Omnibus Amendment) in the operation of the Debtors' businesses, provided, that the use of the extensions of credit and the proceeds of the Loans are consistent with the terms of the Financing Agreements, the other Transaction Documents and this Order.

12.    In accordance with section 364(c)(1) of the Bankruptcy Code, the Indemnification Obligations, the Guaranteed Obligations, the Receivables Obligations and Letter of Credit Obligations shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.   Subject only to the Carve-Out, no cost or expense of administration under sections 105, 364(c)(1), 503(b), 506(c), 507(b) of the Bankruptcy Code, or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Superpriority Claims of the RLA Agent, the LC Agent, the Issuing Bank and the Lenders arising out of the Indemnification Obligations, the Guaranteed Obligations, the

Receivables Obligations and the Letter of Credit Obligations, as applicable. The RLA Agent shall be permitted to enforce the Superpriority Claims in respect of the Receivables Obligations on a derivative basis on behalf of Tribune Receivables.

13.    As security for the Indemnification Obligations, the Receivables Obligations and the Guaranteed Obligations, the RLA Agent and Tribune Receivables shall have and are hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests in, and liens on (the "Liens"), all present and after-acquired property of all of the Debtors of any nature whatsoever, including, without limitation, 100% of the capital stock of all domestic subsidiaries of the Debtors and 66% of the capital stock of all foreign subsidiaries of the Debtors, all promissory notes, including, without limitation, all inter-company notes, all tangible and intangible personal property and fixtures, including, but not limited to all equipment, inventory, general intangibles, including, without limitation, patents, trademarks, copyrights and trade secrets, real estate, leasehold interests, any Federal, state, county or other tax refund or overpayment, all cash, money, certificates of deposit, time deposits, accounts, investment property, securities, chattel paper, accounts receivable, notes receivable, instruments, contracts, contract rights, all causes of action and proceeds thereof (which includes, without limitation, upon entry of the Final Order, any avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof), commercial tort claims and other property contained in any account maintained by any Debtor, including all cash and cash equivalents and all proceeds of the foregoing, whether now owned or hereafter acquired (collectively, together with all proceeds and products of any or all of the foregoing, the "RLA Collateral"):

(a) pursuant to Bankruptcy Code § 364(c)(2), a first priority, perfected Lien upon all of the Debtors' right, title and interest in, to and under all RLA Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Filing Date; and

(b) pursuant to Bankruptcy Code § 364(c)(3), a junior, perfected Lien upon all of the Debtors' right, title and interest in, to and under all RLA Collateral, subject to: any validly perfected and enforceable security interest or lien in existence as of the Filing Date, valid and enforceable rights of setoff held by depository institutions (and any Court-ordered replacement liens therefor of the same extent and priority), valid liens perfected (but not granted) after the Filing Date (to the extent such perfection in respect of a pre-Filing Date claim is expressly permitted under the Bankruptcy Code), and Permitted Liens (as such term is defined in the Financing Agreements);

provided, however, that the foregoing Liens upon the RLA Collateral shall not extend to the Excluded Assets (as defined in the Guaranty Security Agreement); provided, further, however, that the foregoing Liens upon the RLA Collateral shall extend to the cash proceeds resulting from any disposition of any such Excluded Assets.  Concurrently with the transfer of any asset included in the RLA Collateral to Tribune Receivables, such asset shall be released from the lien arising under this Order and the Guaranty Security Agreement; provided, that such asset shall be subject to the liens arising under the Amended Agreements.  The RLA Agent shall have the right to assert and enforce derivatively the Liens granted to Tribune Receivables pursuant to the Amended Agreements, the other Transaction Documents and this Order.

14.    As security for the Letter of Credit Obligations, the LC Agent, on behalf of the Issuing Bank and the Lenders, shall have and is hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise), pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of Tribune Company's right, title and interest in and to cash in an amount equal to 105% of the Letter of Credit Obligations at any time outstanding together with all proceeds of the foregoing, whether now owned or hereafter

acquired (the "LC Cash Collateral") and which shall at all times be maintained in the Collateral Account (as defined in the Letter of Credit Agreement).

15.    Except to the extent expressly set forth in Paragraph 13, Paragraph 14 and Paragraph 16, the Liens granted pursuant to this Order to the RLA Agent and the LC Agent shall not be subordinated to or made pari passu with any other lien or security interest under section 364(d) of the Bankruptcy Code.  The Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the RLA Agent and the LC Agent shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Liens shall in no way affect the validity, perfection or priority of such Liens.  If, however, the RLA Agent or the LC Agent, in their respective sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Liens, the Debtors are directed to cooperate with and assist in such process.  The stay imposed by section 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Order.

16.    Any provision of this Order, the Amended Agreements, the Guaranty, the Guaranty Security Agreement or the Letter of Credit Documents to the contrary notwithstanding, the Liens in the RLA Collateral and Superpriority Claims granted to the RLA Agent (but specifically excluding, however, Liens in (i) any and all RPA Assets, and (ii) the LC Cash

Collateral) shall be subject and subordinate to a carve-out (the "Carve-Out") for (a) the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to sections 327, 328 or 1103(a) of the Bankruptcy Code, by the Debtors and any statutory committee appointed in the Chapter 11 Cases and any disbursements of any member of such committee in an aggregate amount not to exceed $5,000,000 (plus professional fees and disbursements incurred prior to the delivery of the Carve-Out Notice (as defined below) to the extent subsequently allowed) following the occurrence and during the pendency of a Facility Termination Event or an Event of Default (as such terms are defined in the RLA, as amended by the Omnibus Amendment, and by the Letter of Credit Agreement, respectively) and notice from either the RLA Agent or the LC Agent of the triggering of such carve-out (the "Carve-Out Notice") and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court; provided, however, that the Carve-Out shall not include professional fees and disbursements incurred in connection with asserting any claims or causes of action against the RLA Agent, the LC Agent, the Issuing Bank or the Lenders and/or challenging or raising any defense to the Indemnification Obligations, Guaranteed Obligations, Receivables Obligations or Letter of Credit Obligations or other obligations under the Financing Agreements, provided, further, however, that the Carve-Out may include professional fees and disbursements for investigation of such claims, causes of action or defenses. As long (x) as no Facility Termination Event or Event of Default shall have occurred and be continuing or, (y) a Facility Termination Event or Event of Default has occurred and is continuing, and no Carve-Out Notice shall have been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses, to the extent permitted by the Bankruptcy Court payable under sections 330 and 331 of the Bankruptcy Code, as the same may be payable, and the amount so

paid shall not reduce the Carve-Out; provided, however, that, upon delivery of a Carve-Out Notice, the foregoing permission to pay allowed compensation and to reimburse expenses shall be limited to the professional fees and disbursements incurred prior to the delivery of the Carve-Out Notice described in the parenthetical in the second preceding sentence plus the Carve-Out.

17.    Other than the Carve-Out, the Debtors, for themselves and their estates, shall not assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the RLA Agent, the LC Agent, the Issuing Bank or the Lenders upon the RPA Assets, the RLA Collateral or the LC Cash Collateral; provided, however, that such waiver shall not be effective unless approved at the Final Hearing.  The Debtors, for themselves and their respective estates, and by entry of this Order all other parties in interest, are deemed to waive and may not assert any rights, claims and/or benefits under section 552(b) of the Bankruptcy Code; provided, however, that such waiver shall not be effective unless approved at the Final Hearing to be held on the date and at the time set forth in Paragraph 30 of this Order.

18.    All proceeds of the RPA Assets or RLA Collateral of any kind which are now or shall hereafter come into the possession or control of any Debtor, or to which any Debtor or Tribune Receivables is now or shall become entitled under the Financing Agreements, shall be promptly deposited only into accounts upon which the RLA Agent has Liens perfected pursuant to deposit account control agreements, and such collections and proceeds shall remain subject to all of the security interests and liens of the RLA Agent and shall be treated in accordance with this Order.  Subject to the provisions of this Order, all financial institutions in which any deposit accounts, lockboxes, blocked accounts or other accounts of any of the Debtors are located are hereby authorized and directed to comply with any request of the RLA Agent under the

Financing Agreements to turn over to the RLA Agent all funds therein without setoff or deduction of any kind.

19.    Pursuant to the Amended Agreements, Tribune Receivables may deduct from the purchase price of RPA Assets amounts which are payable by the Originators to Tribune Receivables in respect of violations of certain representations and warranties and dilution items (all of such amounts, collectively, the "Repayment Amounts"), and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary so as to permit the deduction of such amounts by Tribune Receivables.  The payment by Tribune Receivables of the purchase price for Receivables which are subsequently reduced by such Repayment Amounts constitutes an extension of credit to the applicable Originators. Accordingly, to the extent that the deduction described in the first sentence of this Paragraph 19 is not available, Tribune Receivables is granted, pursuant to section 364(c)(1) of the Bankruptcy Code an allowed administrative claim against the applicable Originators, with priority over all other administrative claims.

20.    The performance by the Originators and Tribune Receivables of their respective obligations under the Financing Agreements, and the consummation of the transactions contemplated by the Financing Agreements, and the conduct by the Originators and Tribune Receivables of their respective businesses, do not, and shall not, provide a basis for a substantive consolidation of the assets and liabilities of the Originators, or any of them, with the assets and liabilities of Tribune Receivables or a finding that the separate corporate identities of the Originators and Tribune Receivables may be ignored.  Notwithstanding any other provision of this Order, the RLA Agent, the LC Agent, the Issuing Bank and the Lenders have agreed to enter into the Financing Agreements and the other Transaction Documents in express reliance on

Tribune Receivables being a separate and distinct legal entity, with assets and liabilities separate and distinct from those of any of the Debtors.

21.     As is customary in commercial transactions of this nature, the Originators and Tribune Receivables, respectively, will be required and are hereby authorized and directed (without the necessity of any further application being made to or Order being obtained from this Court) to pay or reimburse Tribune Receivables, the RLA Agent, the LC Agent, the Issuing Bank and the Lenders and their respective affiliates and agents, respectively, for the payment of certain fees and expenses pursuant to the Financing Agreements and the other Transaction Documents (the "Fees"). In addition, pursuant to the fee letters dated December 8, 2008 (the "Fee Letters"), Tribune Company has agreed and is hereby authorized and directed (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay the fees referred to in the Fee Letters in consideration of the RLA Agent's and the LC Agent's respective services in structuring and negotiating the Omnibus Amendment and the Letter of Credit Agreement.

22.     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the RLA Agent and the LC Agent to exercise, upon the occurrence of any Facility Termination Event or Event of Default (as defined in the RLA, as amended by the Omnibus Amendment, or the Letter of Credit Agreement, respectively), all rights and remedies to the extent provided for in the Financing Agreements and the other Transaction Documents, and, to the extent provided for in the Financing Agreements and the other Transaction Documents, to take any or all of the following actions without further order of or application to this Court: (a) cease to make any extensions of credit or loans or advances to the Debtors or Tribune Receivables; (b) declare all obligations to be immediately

due and payable; (c) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the RLA Agent or the LC Agent against the obligations, and otherwise enforce rights against the RLA Collateral and LC Cash Collateral in the possession of the RLA Agent or the LC Agent for application towards the obligations; (d) demand payment or performance of any Guaranteed Obligation; and (e) take any other actions or exercise any other rights or remedies permitted under this Order, the Financing Agreements, the other Transaction Documents or applicable law to effect the repayment and satisfaction of the Obligations; provided, that the RLA Agent shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to Kaye Scholer LLP, as counsel to Merrill Lynch as agent under the Bridge Facility, (425 Park Avenue, New York, New York 10022, Attn: Margot Schonholtz, Esq.) the United States Trustee, counsel to the Debtors and counsel to any statutory committee appointed in the Chapter 11 Cases prior to exercising any enforcement rights or remedies in respect of the RLA Collateral (other than the rights described in clauses (a), (b) and (c) above (to the extent they might be deemed remedies in respect of the RLA Collateral) and other than with respect to the placement of administrative holds on any deposit accounts or securities accounts); provided further, that the Debtors shall have the right to seek continuation of the automatic stay during such five (5) day period solely on the basis that no Facility Termination Event or Event of Default has occurred and is continuing.  Notwithstanding anything herein to the contrary, no extensions of credit, RLA Collateral, LC Cash Collateral, or any portion of the Carve-Out may be used to object to, or contest, in any manner, or raise any defenses to, the validity, perfection, priority, extent, amount or enforceability of the Letter of Credit Obligations, Receivables Obligations, Indemnification Obligations, Guaranteed Obligations, or the obligations of the Originators under or in connection with Financing

Agreements or other Transaction Documents, or to assert any claims or causes of action against the RLA Agent, the Released Parties, the LC Agent, the Issuing Bank, the Lenders, or any agent of any of the foregoing under, or in connection with, the Financing Agreements, the other Transaction Documents or the transactions thereunder, provided, however, that the Carve-Out may include professional fees and disbursements for investigation of such claims, causes of action or defenses.

23.    The Financing Agreements, the other Transaction Documents and the provisions of this Order shall be binding upon the Debtors and Tribune Receivables and their respective successors and assigns (including any trustee hereinafter appointed for the estate of any of the Originators) and inure to the benefit of the Debtors and Tribune Receivables (and, derivatively, the RLA Agent) and (except with respect to any trustee hereinafter appointed for the estate of any of the Originators) their respective successors and assigns.

24.    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (x)(1) the validity of any transfer of the RPA Assets made pursuant to the provisions of the Amended Agreements or (2) letters of credit issued and the security granted thereunder, in each case, prior to written notice to the RLA Agent, the LC Agent and Tribune Receivables of the effective date of such reversal, stay, modification or vacation, (y) the validity of any obligation, indebtedness or liability incurred by each of the Originators prior to written notice to the RLA Agent, the LC Agent and Tribune Receivables of the effective date of such reversal, stay, modification or vacation or (z) the validity and enforceability of any priority authorized or created hereby or pursuant to the Amended Agreements, the Guaranty, the Guaranty Security Agreement or the Letter of Credit Agreement.  Notwithstanding any such reversal, stay, modification or vacation,

any indebtedness, obligations or liabilities incurred, or payment made, by any of the Originators prior to written notice to the RLA Agent, the LC Agent and Tribune Receivables of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the RLA Agent, the LC Agent and Tribune Receivables shall be entitled to all the rights, remedies, privileges and benefits, granted herein and pursuant to the Amended Agreements with respect to all such indebtedness, obligations or liabilities (including, without limitation, with respect to the manner in which the proceeds of the RPA Assets are applied) and to the full benefits of 11 U.S.C. § 363(m) and 364(e) in connection therewith.

25.    Upon transfer to Tribune Receivables, the RPA Assets are and shall be the property of Tribune Receivables and not of the estates of any of the Debtors and accordingly no expenses of administration of the Chapter 11 Cases or any future proceeding or case which may result from the Chapter 11 Cases, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against the RPA Assets, or the proceeds thereof pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the RLA Agent and no such consent shall be implied from any other action, inaction, or acquiescence by the RLA Agent.

26.    The stipulations, admissions, and releases contained in Paragraph 3 and Paragraph 4 shall be binding on all parties in interest, including, without limitation, any official committee that may be appointed in these chapter 11 cases, unless, and solely to the extent that, (a) any party in interest files an objection to this Order challenging such stipulations, admissions, releases, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Released Parties (an "Objection"), in each case no later than the later of (1) sixty (60)

days after the formation of the official committee of unsecured creditors, or (2) seventy-five (75) days after the Filing Date.  If no such objection is timely filed then, without further order of the Court, all of the stipulations, admissions and releases set forth in <u>Paragraph 3</u> and <u>Paragraph 4</u> shall be binding on all parties in interest in these chapter 11 cases and shall not be subject to challenge or modification in any respect.  If any such objection is timely filed, the stipulations, admissions and releases shall nonetheless remain binding on all parties in interest and shall be preclusive except to the extent that any such stipulations, admissions and releases are expressly challenged pursuant to such timely filed objection.

27.     This Order shall be effective, <u>nunc pro tunc</u>, as of the Filing Date.  To the extent that any provisions of this Order may be inconsistent with the provisions of any prior or contemporaneous interim order entered with respect to the continuation of the facilities evidenced by the Amended Agreements on an interim basis (pending a hearing on the Motion), the provisions of this Order shall govern.  To the extent that any of the provisions of this Order may be inconsistent with the terms and conditions of the Amended Agreements, the provisions of this Order shall govern.

28.     Pursuant to Bankruptcy Rules 6004(g), 6006(d), 9014, 9006(c) and 7062, this Order shall be an additional exception to Rule 62(a) of the Federal Rules of Civil Procedure.  Specifically, pursuant to this Order, the ten day automatic stay periods of Bankruptcy Rules 6004(g) and 6006(d) are expressly inapplicable to this Order and the transactions including, without limitation, transfers contemplated hereby, and accordingly, this Order shall become operative immediately upon entry on the docket.

29.     On or before the third business day following entry of this Order, the Debtors shall mail copies of a notice of the entry of this Order, together with a copy of this Order and a

copy of the Motion, to the parties having been given notice of the Interim Hearing, to any party which has filed prior to such date a request for notices with this Court and to counsel for any statutory committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code.   The notice of entry of this Order shall state that any party in interest objecting to the Motion shall file written objections with the Clerk, United States Bankruptcy Court for the District of Delaware no later than 4:00 p.m. on December 29, 2008.   Objections shall be served so that the same are received on or before such date by: (a) counsel for Debtors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attention: Bryan Krakauer, Esq.; and Cole, Schotz, Meisel, Forman & Leonard, P.A., 1000 N. West Street, Suite 1200, Wilmington, Delaware 19801, Attention: Norman L. Pernick, Esq.; (b) counsel for Barclays Bank PLC, Mayer Brown LLP, 1675 Broadway, New York, NY 10019-5820, Attn: Brian Trust, Esq. and Amit K. Trehan, Esq.; and Edwards Angell Palmer & Dodge LLP, 99 North Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: William E. Chipman, Jr., Esq.;(c) counsel for the Creditors' Committee (if retained); and (d) counsel for the United States Trustee, 844 King Street, Room 2207, Lockbox 35, Joseph J. McMahon, Jr., Esq.

30.     The Final Hearing will be held on January 5, 2009 at 1:30 p.m.

Dated: Wilmington, Delaware
          December ___, 2008

                                                    _____
                                                    KEVIN J. CAREY, CHIEF
                                                    UNITED STATES BANKRUPTCY JUDGE