**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**MOTION OF DEBTOR CHICAGO TRIBUNE COMPANY FOR AN ORDER AUTHORIZING ENTRY INTO A POSTPETITION MASTER SERVICES AGREEMENT WITH DOW JONES & COMPANY, INC.**

Chicago Tribune Company, one of the above-captioned debtors and debtors in possession ("CTC" or the "Debtor" and collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") authorizing CTC to enter into that certain Master Services Agreement and related Statement of

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Work 1 (collectively, the "MSA"),[2] by and between CTC and Dow Jones & Company, Inc. ("Dow Jones"). CTC believes that the MSA is an ordinary course of business transaction, inasmuch as the publishing Debtors, including CTC, have entered into numerous printing and other similar outsourcing agreements. However, certain unique circumstances, including the appointment only yesterday (December 18) of a Committee (defined below) in these cases, have caused CTC to determine to seek the relief requested herein out of an abundance of caution. In support of this Motion, CTC respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). [Docket No. 43].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

---

[2] Nothing contained in this Motion is intended to alter any provision of the MSA. In the event of a discrepancy between the description of the MSA provided herein and the terms of the MSA, the terms of the MSA shall control.

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

6. CTC is a multi-product, multi-channel news and information source. Through its subsidiaries, CTC's operations include the publishing, printing and distribution of various publications. For example, in addition to publishing, printing and distributing the Chicago Tribune, CTC also operates RedEye, a free daily newspaper in Chicago targeting young, urban commuters. CTC also publishes, prints and distributes various other niche publications, including free real estate, automotive and help wanted guides, as well as the Spanish-language newspaper, Hoy.

7. In order to meet its business needs commencing as of the first of the year, Dow Jones has retained CTC under the MSA for a provisional ninety (90) day term pending Bankruptcy Court approval of this Motion, to provide printing and related services to Dow Jones in certain Midwest markets for various publications produced, published and sold by Dow Jones (the "Dow Jones Publications"). Dow Jones desires to retain CTC to perform these services under the MSA on a long-term basis, and assuming the relief requested herein is granted, the full ten (10) year term of the MSA will become operative.[3] The MSA is attached hereto as Exhibit A.[4]

8. The MSA provides that, with respect to the Dow Jones Publications, CTC will provide various printing services to Dow Jones, including primarily (a) Pre-Printing

[3] For larger contracts, such as the MSA, a ten (10) year term is customary.

[4] Certain provisions of the MSA reflect information that is confidential, proprietary, or commercially or competitively sensitive to either or both parties. In order to protect the business interests of both parties to the agreement, the MSA attached hereto has been redacted to eliminate such terms. However, CTC has filed the unredacted version of the MSA under seal and is willing to provide, on a confidential basis, unredacted copies of the MSA to this Court, the Office of the United States Trustee and/or counsel to the Committee.

Services, (b) Printing Services, and (c) Transportation and Inserting Services, each of which is defined and described more fully below:

a. Pre-Printing Services: CTC will perform the functions, services and tasks related to the pre-press work, file processing and press work necessary to prepare printing presses to print the Dow Jones Publications (the "Pre-Printing Services"). The Pre-Printing Services will be provided in accordance with the production schedules and specifications contained in the MSA.

b. Printing Services: Subject to the terms and conditions specified in the MSA, Dow Jones will provide CTC with the newsprint necessary to print the Dow Jones Publications. CTC will then utilize its own printing press and facilities to perform the functions, services and tasks necessary to print and label the Dow Jones Publications in accordance with the specifications contained in the Printing Services Agreement (the "Printing Services").

c. Transportation and Inserting Services: In accordance with the terms and conditions specified in the MSA, CTC will perform the functions, services and tasks necessary to bundle, load and transport the Dow Jones Publications (the "Transportation Services"). CTC will also perform the functions, services and tasks necessary to insert designated inserts to appropriate Dow Jones Publications (the "Inserting Services").

## RELIEF REQUESTED

9. CTC, in the exercise of its business judgment, has determined that it is in the best interests of CTC, its estate and creditors to enter into the MSA. The publishing Debtors, including CTC, have previously entered numerous other outsourcing agreements pursuant to

which they print and/or deliver other newspaper publications. Such outsourcing agreements are not in any way unusual or unique in the publishing industry, as illustrated by the fact that the Debtors who are in the publishing industry have previously entered into approximately fifty-nine (59) other outsourcing printing agreements and approximately fifty (50) other commercial delivery agreements with other publications. Accordingly, CTC believes that its proposed entry into the MSA is within the ordinary course of business for purposes of section 363 of the Bankruptcy Code, and therefore does not require Court approval.

10. Nevertheless, sensitive to certain unique circumstances, including the appointment of a Committee just yesterday (December 18), and following discussions with Dow Jones, CTC has determined out of an abundance of caution to seek Court authorization to enter the MSA for the full contract term. Further, as indicated above, the MSA has a provisional term of ninety (90) days that will extend to the full term intended by the parties if CTC obtains an order of this Court authorizing CTC to enter into the MSA within forty-five (45) days of the Effective Date of the MSA. By this Motion, CTC respectfully requests entry of an order authorizing CTC to enter into the MSA with Dow Jones, so as to extend the term of the MSA.

**BASIS FOR RELIEF**

11. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

12. In this Circuit, courts have repeatedly approved the use of a debtor's assets outside of the ordinary course of business if the debtor can propose a sound business

justification. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363).

13. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In other words, the business judgment rule essentially shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or gross abuse of discretion. See In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

14. There are substantial business justifications for granting the relief requested herein. The MSA is the product of arms-length, good-faith negotiations by and between CTC and Dow Jones. After extensively evaluating the language of the MSA, CTC believes that the MSA contains terms which are fair and reasonable, consistent with industry

practice, and very economically favorable to CTC, as CTC will be able to largely utilize its existing printing, production and transportation capacity to meet its performance requirements under the MSA, thereby allowing it the potential to generate substantial revenue and profits of millions of dollars annually on little additional investment. Moreover, CTC has determined that its entry into the MSA will have a positive impact on its overall business operations by expanding an important relationship with Dow Jones. Accordingly, CTC believes that it is in the best interests of CTC, its estate and creditors to enter into the MSA.

**NOTICE**

15. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Committee; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the indenture trustee for the Debtors' prepetition notes; (viii) counsel to Dow Jones; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, CTC submits no other or further notice is necessary.

**NO PRIOR REQUEST**

16. CTC has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, CTC respectfully requests that the Court enter an order, in substantially the form attached hereto as Exhibit B, (i) authorizing CTC to enter into the MSA and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 19, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kerriann S. Mills
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: ______________________
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION