## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF CHANDLER BIGELOW III, SENIOR VICE PRESIDENT AND CHIEF FINANCIAL OFFICER OF TRIBUNE COMPANY IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), and 503(c)(3) AUTHORIZING THE IMPLEMENTATION OF AN EMPLOYEE RETENTION PLAN

I, Chandler Bigelow III, declare as follows:

1.      I am a Senior Vice President and the Chief Financial Officer of Tribune

Company, a corporation organized under the laws of Delaware and the parent company of both

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

KWGN, Inc. ("KWGN") and KPLR, Inc. ("KPLR") (each a "Debtor" and collectively, the "Debtors").[2]

2.      I submit this declaration (the "Declaration") in support of the Debtors' "Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(c)(3) Authorizing the Implementation of an Employee Retention Plan" (the "Motion"). I am familiar with the contents of this Motion, and supporting data, and I believe that the relief sought (i) is necessary to enable the Debtors to operate in chapter 11 with minimum disruption or loss of productivity or value; (ii) provides significant benefits to the Debtors at costs that are not material to the estate; and (iii) is in the best interests of the Debtors, their estates, and creditors.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, on information supplied to me by other members of the Debtors' management teams and/or professionals retained by the Debtors, on information learned from my review of relevant documents, or on my opinion based upon my experience and knowledge of the Debtors' operations, financial condition and present liquidity needs. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

## BACKGROUND INFORMATION

4.      On October 3, 2008, KWGN, on the one hand, and Community Television of Colorado, LLC, and Community Television of Colorado License, LLC, (collectively, "Community Colorado"), on the other, entered into a local marketing agreement (the "LMA") which, inter alia, integrated certain operations of KDVR, Community Colorado's Fox affiliate in Denver, and KWGN. Under the LMA, both KDVR and KWGN will operate out of Community

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Colorado's KDVR's studios with Community Colorado, as an independent contractor, providing operating and programming related services.

5.    Also on October 3, 2008, KPLR, on the one hand, and Community Television of Missouri, LLC, and Community Television of Missouri License, LLC, (collectively, "Community Missouri"), on the other, entered into a shared services agreement (the "SSA"), which, inter alia, integrated certain operations of KTVI, Community Missouri's Fox affiliate in St. Louis, and KPLR.  Under the SSA, KPLR and KTVI will operate  out of KPLR's studios with Community Missouri, acting as an independent contractor,  providing operating and programming related services. (Community Colorado and Community Missouri may sometimes collectively be referred to herein as "Community").

6.    The LMA and SSA (together, the "Agreements") enable the relevant stations in Denver and St. Louis  to integrate operating facilities, production of local news, and certain programming functions.  This integration of facilities, production of news operations, and certain programming functions is intended, among other things, to significantly reduce the Debtors' costs, streamline its operations, and enable the Debtors to deliver a better and higher-quality product to their customers and viewers.

7.    Although the Debtors have already seen some benefit from the integration, they are still in the process of transitioning and consolidating certain of their operations with those of Community.  This transition requires the short-term retention and continued employment by the Debtors of thirty-three (33) key non-insider and non-management employees (the "Transitional Employees") whose positions will be eliminated as a result of consolidation of operations under the LMA and SSA, but who are necessary to effectuate a smooth and orderly integration of the relevant Denver and St. Louis broadcast stations under the Agreements.  The

Transitional Employees provide a wide range of required services to the Denver and St. Louis television stations, including advertising sales and traffic support, engineering, and production assistance for the local news.  These services will continue to be required as the Debtors and Community complete their integration under the Agreements.

8.      Accordingly, the Debtors have asked the Transitional Employees  to remain in their current employment for a short period of time as the Agreements are fully implemented.  In return for the Transitional Employees' agreement to remain until a date certain (the "Termination Dates"), the Debtors seek authorization to pay the Transitional Employees certain retention compensation.  The Termination Dates for the Transitional Employees are staggered between December 31, 2008, and March 2009.  The proposed compensation for the Transitional Employees are more fully explained on the attached Exhibit A attached to the Motion.  The amount of the proposed compensation is calculated for all Transitional Employees by reference to their length of service.  With respect to the union Transitional Employees, these payments will be made in compliance with section 8.05 of their collective bargaining agreement ("CBA") which governs the payment of severance and, thus, constitutes contractually required severance payments thereunder.  The payments made to the union Transitional Employees are not additional to the severance payments set forth in their CBA.

## RELIEF REQUESTED

9.      The Debtors currently employ twenty (20) full-time, non-union Transitional Employees at KWGN and five (5) non-union and eight (8) union Transitional Employees at KPLR.  As noted, without the continued services of the Transitional Employees for a brief period, implementation of the Agreements will be hampered.  Because the Transitional Employees' continued service is necessary to the integration of the stations under the

Agreements and because the Transitional Employees continue to perform needed services for the Debtors, the Debtors believe that it is appropriate and in the best interests of their estates that the Debtors pay the proposed compensation to the Transitional Employees. Finally, as the aggregate amount of the proposed retention compensation is relatively small – approximately $384,317.98, net to the Debtors – the cost to the Debtors and their estates from making the proposed payments will not be economically material to the Debtors' estates while the payments will provide significant benefit to the estates.

10.    The Debtors believe, and I agree, that at this critical stage in the integration of the television stations, the Debtors cannot risk any disruption of their business operations or their relationships with Community under the Agreements. In addition, KWGN and KPLR, as FCC licensees, operate under legal requirements that generally dictate ongoing broadcasting operations at the licensee stations and require the Debtors to perform matters as basic as the upkeep of broadcasting towers and as pressing as warning local residents in case of an emergency. Payment of the retention compensation will help to ensure that operations continue without disruption. Further, the failure to fund the retention plan could lead to Transitional Employees leaving their jobs in order to immediately find employment elsewhere. The Transitional Employees understand that their jobs with the Debtors are not permanent. A primary incentive of the Transitional Employees to remain at their jobs through the successful integration of the Debtors' and Community's stations is the promise of the retention payment that they will receive at the completion of their employment. This is especially so as the Transitional Employees will be let go on a rolling basis through March of 2009. If the Transitional Employees leaving the Debtors' employment earlier in the transition period are not paid the retention payment, the remaining Transitional Employees will understand that they too

are ineligible. This could lead to the remaining Transitional Employees opting to leave before their Termination Dates, which would, in turn, limit the ability of the Debtors to fully realize the value of the Agreements. Finally, if the relief requested herein is not granted, the Transitional Employees themselves would suffer hardship and, in many instances, financial difficulties, particularly since they cannot expect continued employment with the Debtors.

11.    The Transitional Employees are not officers, directors, or otherwise "insiders" of the Debtors, as set forth in section 101(31)(B) of the Bankruptcy Code. They are non-management employees involved in the day-to-day operations of the relevant stations. Further, the payments in issue are not unusual under these circumstances. The Debtors have previously made similar retention payments to employees as part of the sale and consolidation of television stations as well as in connection with the wind-down of discontinued business operations.

12.    The Debtors believe, and I agree, that the relief requested is of immediate and significant benefit to the Debtors and the Debtors' estates and is necessary to a complete and successful integration of the Denver and St. Louis stations.

I declare under the penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: _December 24, 2008_

_CBigelow III_
_____
Chandler Bigelow III
Senior Vice President & Chief Financial Officer
Tribune Company