# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

Hearing Date: January 15, 2009 at 1:30 p.m. (ET)
Objection Deadline: January 8, 2009 at 4:00 p.m. (ET)

## APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SIDLEY AUSTIN LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. § 327(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby submit this Application (the "Application") for entry of an order authorizing the employment and retention of Sidley Austin LLP ("Sidley") as general reorganization and bankruptcy counsel for the Debtors pursuant to sections 327(a) and 1107(a)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), nunc pro tunc to the Petition Date. Factual background in support of this Application is set forth in the Affidavit of James F. Conlan in Support of Application for an Order Authorizing the Employment and Retention of Sidley Austin LLP as Attorneys for the Debtors and Debtors-in-Possession and Disclosure of Compensation Pursuant to 11 U.S.C. § 329 (the "Conlan Affidavit"), filed concurrently with this Application and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and no official committee has yet been established in these cases.

4. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.  Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.  The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.  The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through its television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80 percent of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

8. The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million. During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9. The Debtors hereby seek to employ and retain Sidley as their counsel in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code and nunc pro tunc to the Petition Date, to represent the Debtors in all aspects of their reorganization on the terms described herein. The Debtors' cases are complex and require counsel – such as Sidley – with extensive experience in bankruptcy, insolvency and restructuring matters, as well as specialized and substantial experience in litigation, corporate, real estate, intellectual property, banking, media, regulatory and tax law.

### I. Background Concerning Sidley

10. Sidley is a full-service law firm with a national and international presence. Sidley has more than 1,800 lawyers in sixteen (16) offices in major cities throughout the United States, Europe, Asia and Australia. Sidley has experience and expertise in nearly every major substantive area of legal practice, and its clients include leading public companies and privately-held businesses in a variety of industries and major nonprofit organizations. In particular, Sidley

4

has extensive corporate and securities, tax, finance and regulatory practices with hundreds of attorneys acting on behalf of many of the largest companies in the world. Sidley also has a global corporate reorganization and bankruptcy practice composed of roughly fifty (50) attorneys, plus attorneys in numerous other principal areas of practice that have sub-specialties in bankruptcy.

11.     Sidley is frequently retained to act as general bankruptcy counsel in complex chapter 11 cases commenced in this District, including In re Hilex Poly Co., Case No. 08-10890 (KJC) (Bankr. D. Del. 2008); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. 2006), In re Meridian Automotive Systems – Composite Operations, Case No. 05-11168 (MFW) (Bankr. D. Del. 2005), In re The Flintkote Co. and Flintkote Mines Ltd., Case No. 04-11300 (JKF) (Bankr. D. Del. 2004); In re Federal-Mogul Global Inc., T&N Limited, et al., Case No. 01-10578 (JKF) (Bankr. D. Del. 2001); and In re Owens Corning, Case No. 00-3837 (JKF) (Bankr. D. Del. 2000).

12.     Sidley has acted as outside counsel to the Debtors with respect to for a wide range of matters – including general corporate matters, litigation matters, tax matters, media law and regulatory matters, and real estate matters, among others – for more than 20 years, and has developed extensive and detailed knowledge of all aspects of the Debtors' business operations.[3] The partners and associates of Sidley who will advise the Debtors in these cases have wide-ranging experience in bankruptcy and insolvency law, as well as in litigation, corporate, real estate, intellectual property, banking and tax law. The Debtors believe that Sidley is uniquely qualified to represent them as debtors-in-possession in these chapter 11 cases, and

---

[3] In addition to its representation of Tribune Company, the lead Debtor in these cases and the ultimate parent of all of the other Debtors, Sidley has active representations for ten (10) other Debtors, and has formerly represented six (6) other Debtors.

that Sidley's extensive knowledge respecting the Debtors will allow them to have effective and cost-efficient representation in the conduct of their chapter 11 cases.

13. The Debtors have also chosen to retain the law firm of Cole, Schotz, Foreman, Meisel & Leonard, P.A. ("Cole Schotz") to act as their bankruptcy co-counsel in these chapter 11 cases. The Debtors are submitting, concurrently herewith, a separate application to retain Cole Schotz. Sidley does not maintain an office in the State of Delaware, and the Debtors are required to retain Delaware counsel. Sidley and bankruptcy lawyers from Cole Schotz have worked together on matters in the past and have conferred about their respective roles in these cases in order to avoid duplication of effort.

## II. Scope of Sidley's Proposed Services

14. Sidley's professional services are necessary to enable the Debtors to effectively execute their duties as debtors in possession. Subject to the oversight and orders of this Court, the Debtors anticipate that Sidley will perform the following legal services, among others, in these chapter 11 cases:

(a) provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b) take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c) prepare on behalf of the Debtors all necessary motions, answers, orders, reports and other legal papers in connection with the administration of the Debtors' estates;

(d) attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

    (e)    perform any and all other legal services for the Debtors in connection with these chapter 11 cases and with implementation of the Debtors' plan of reorganization;

    (f)    advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

    (g)    provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

    (h)    provide legal advice and perform legal services with respect to matters involving the negotiation of the terms and the issuance of corporate securities, matters relating to corporate governance and the interpretation, application or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

    (i)    provide legal advice and legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

    (j)    render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

## III. Proposed Compensation and Reimbursement Arrangements

15. Subject to this Court's approval, Sidley intends to (i) charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates in effect on the date such services are rendered, and (ii) seek reimbursement of actual and necessary costs and expenses incurred by Sidley in connection with these cases. Sidley has informed the Debtors that its hourly rates are subject to periodic adjustment from time to time in accordance with Sidley's established billing practices and procedures. Sidley's domestic billing rates in effect from January 1, 2009 range from $575 to $1,100 per hour for partners, $400 to $875 per

7

hour for counsel and senior counsel, $240 to $650 per hour for associates, and $95 to $385 per hour for para-professionals.

16. In addition to the hourly rates set forth above, Sidley customarily charges its clients for all costs and expenses incurred in connection with a client's case. These charges include, among other things, long-distance telephone and telecopier charges, mail and express mail charges, special or hand delivery charges, document processing charges, filing fees, photocopying charges, travel expenses, expenses for "working meals," computerized research, and transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime. Sidley will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Sidley's other clients and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

17. Sidley has represented the Debtors in connection with their restructuring efforts to date. On November 24, 2008, Sidley received an advance payment retainer in the amount of $3.5 million. On December 4, 2008, that retainer was further increased by $1 million.

18. Sidley's unpaid fees and expenses for the post-November 24, 2008 period were less than the advance payment retainer, and Sidley allocated the advance payment retainer to its unpaid prepetition fees and expenses. As of the Petition Date, the remaining amount of the advanced payment retainer over unpaid fees and expenses owed to Sidley was approximately $1,400,000.00 and such amount will be used to satisfy any initial post-petition fees and expenses incurred by Sidley.

19. Sidley has received approximately $2,991,701.75 in fees and $51,615.56 in expenses from the Debtors within one (1) year prior to the Petition Date on account of legal services rendered in contemplation of or in connection with the restructuring efforts of the

Debtors and the filing of these chapter 11 cases. The advance payment retainer was allocated to these amounts. A breakdown of the payments to Sidley is provided in the concurrently-filed Conlan Affidavit. See Conlan Affidavit at ¶ 9.

20.    Sidley has advised the Debtors that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in these chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court.

### SIDLEY'S DISCLOSURES CONCERNING ITS RETENTION BY THE DEBTORS AND STANDARDS APPLICABLE THERETO

21.    The standard for a debtor-in-possession to employ attorneys as general bankruptcy counsel is set forth in Sections 327(a) and 1107 of the Bankruptcy Code, as interpreted by the Third Circuit. Those sections provide that a debtor-in-possession, with the Court's approval, may employ attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for counsel to be retained, "counsel must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e). In general, however, subject to the requirements of section 327(a) and 1107, a debtor-in-possession is entitled to the counsel of their choosing. See, e.g., In re Vouzianas, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

9

22.     As described in detail in the attached Conlan Affidavit, Sidley has conducted an extensive search of its conflict database with respect to the Debtors and a voluminous list of parties in interest and potential parties in interest in these chapter 11 cases. See Conlan Affidavit at ¶ 2. The scope of that conflicts search is set out on Exhibit A to the Conlan Affidavit, while the results of the conflicts search are set forth on Exhibit B to the Conlan Affidavit. Based on the results of that conflicts search, Sidley has informed the Debtors that, as set forth in more detail in the concurrently filed Conlan Affidavit and subject to any explanations and/or exceptions contained therein, Sidley (a) does not hold or represent any interest adverse to the Debtors' estates, and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

23.     Sidley has informed the Debtors that Sidley has not shared or agreed to share any compensation received in connection with these chapter 11 cases with any entity other than its partners and associates in accordance with Sidley's partnership agreement and section 504(b) of the Bankruptcy Code.

## NOTICE

24.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the indenture trustee for the Debtors' prepetition notes; (viii) proposed counsel to the Official Committee of Unsecured Creditors; and (ix) all parties who have requested to receive notices in the Debtors' chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

25. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court enter an order (i) authorizing the Debtors to employ and retain Sidley as their general reorganization and bankruptcy counsel pursuant to sections 327(a) and 1107 of the Bankruptcy Code, nunc pro tunc to the Petition Date, on the terms and conditions set forth herein, and (ii) granting such other and further relief as may be just and proper.

Dated: December 26, 2008

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)

_____
David P. Eldersveld
Vice President, Deputy General Counsel
& Secretary