UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: January 15, 2009 at 1:30 p.m. (ET)**
**Objection Deadline: January 8, 2009 at 4:00 p.m. (ET)**

**APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. § 327(a) FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISORS, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") hereby submit this application (the "Application") for the entry of an order under section 327(a) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") authorizing the Debtors' employment of Alvarez & Marsal North America, LLC,

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

together with its wholly owned subsidiaries, affiliates (all of which are owned by Alvarez & Marsal North America, LLC's parent company and employees), agents, and independent contractors (collectively, "A&M") to serve as restructuring advisors to the Debtors in these cases (the "Chapter 11 Cases"). In support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order jointly administering the Chapter 11 Cases for procedural purposes only.

2. The Debtors are continuing in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Cases. On December 18, 2008, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases.

4. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is section 327(a) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5. Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors

operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6. The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7. The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

8. The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million. During this time, the publishing segment contributed

---

2 The Debtors' subsidiaries that own the Chicago Cubs baseball operations and an interest in the broadcast network Comcast SportsNet Chicago, LLC are not Debtors in these cases.

approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9. By this Application, the Debtors seek to employ A&M to assist them in their restructuring in these Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms set forth herein and in the engagement letter between Debtors and A&M dated November 8, 2008 (the "Engagement Letter"). A copy of the Engagement Letter is attached hereto as Exhibit A and incorporated herein by reference.

10. The Debtors are familiar with the professional standing and reputation of A&M. The Debtors understand and recognize that A&M has a wealth of experience in providing advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex Chapter 11 Cases on behalf of debtors and creditors throughout the United States.

11. Thomas E. Hill, the Managing Director of A&M leading this assignment, is well-suited to provide the restructuring services required by the Debtors. Mr. Hill has an extensive background in providing services to financially distressed businesses and/or chapter 11 debtors in the past. Certain of Mr. Hill's company-side representations include USG Corporation, Peter J. Schmidtt Co. Inc., Horizon Coal, Allied Products and Addington Energy

Inc (AEI). Mr. Hill has also had significant creditor-side representations such as Collins & Aikman and United Press International.

12. Moreover, Mr. Hill and various other A&M employees have devoted substantial amounts of time and effort pre-filing to, among other things, researching options relative to maximizing the enterprise value of the Debtors, advising and assisting the Debtors with respect to ongoing bank negotiations, supporting the financial department in the management of its liquidity resources, assisting the Debtors in their contingency planning efforts and supporting the Debtors in securing post-petition financing. A&M professionals were invaluable to the Debtors throughout this process and have played an instrumental role in their recent restructuring efforts to date.

**SCOPE OF SERVICES**

13. Subject to this Court's approval, A&M has agreed to provide the Debtors with certain restructuring advisory services. Among other things, A&M will provide assistance to the Debtors with respect to the management of the overall restructuring process, including the development of ongoing business / financial plans and conducting restructuring negotiations with creditors with respect to an overall exit strategy for their Chapter 11 Cases.

14. Pursuant to the Engagement Letter (as modified hereby), A&M will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of the Chapter 11 Cases, including, but not limited to:

A) Assistance to the Debtors in the preparation of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

B) Assistance to the Debtors with information and analyses required pursuant to their post-petition financing;

C) Assistance with the identification and implementation of short-term cash management procedures;

D) Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

E) Assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

F) Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

G) Attendance at meetings and assistance in discussions with potential investors, banks and other secured lenders, the Official Committee of Unsecured Creditors, the United States Trustee, other parties in interest and professionals hired by the same, as requested;

H) Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

I) Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including information contained in the disclosure statement;

J) Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers; and

K) Rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary and consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

**A&M'S DISINTERESTEDNESS**

15. A&M has informed the Debtors that, except as may be set forth in the Declaration of Thomas E. Hill (the "Hill Declaration"), filed concurrently herewith and attached hereto as Exhibit B, to the best of Thomas E. Hill's knowledge, A&M (i) is not a creditor, equity security holder, or insider of the Debtors, (ii) was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or any class of

creditors or equity security holders, and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

16. If any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

17. A&M has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

**TERMS OF RETENTION**

18. A&M is not owed any amounts with respect to its pre-petition fees or expenses.

19. The Debtors understand that A&M intends to apply to the Court for allowance of compensation and reimbursement of expenses for financial advisory support services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding local rules, orders of this Court and guidelines established by the United States Trustee. The customary hourly rates, subject to periodic adjustments, charged by A&M professionals anticipated to be assigned to this case are as follows:

| | |
|---|---|
| Managing Directors | $525 - 750 |
| Directors / Senior Directors | $375 - 550 |
| Associates / Senior Associates | $275 - 450 |
| Administration / Analysts | $175 - 350 |

20. In addition to compensation for professional services rendered by A&M personnel, A&M will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' Chapter 11 Cases, including but not limited to, transportation costs, lodging, food, telephone, copying, and messenger services.

21. A&M received a retainer in connection with preparing for the filing of these Chapter 11 Cases. The unapplied residual retainer, which is estimated to total

approximately $350,000, will constitute a general retainer for post-petition services, will not be segregated by A&M in a separate account, and will be held until the end of these Chapter 11 Cases and applied to A&M's finally approved fees in these proceedings.

22. The Debtors have chosen **Lazard Frères & Co. LLC** ("Lazard") to act as investment bankers and financial advisors for the Debtors. The Debtors are submitting, concurrently herewith, a separate application for the retention of Lazard. Both Lazard and A&M have advised the Debtors that they will make every effort to avoid duplication of their work.

**DISPUTE RESOLUTION PROVISIONS**

23. The Debtors and A&M have agreed, subject to the Court's approval of this Application, that: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by A&M to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in the Bankruptcy Court or the District Court for the District of Delaware (if the reference is withdrawn); (b) A&M and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if the Bankruptcy Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in Exhibit C attached hereto); and (e)

judgment on any arbitration award may be entered in any court having proper jurisdiction. By this Application, the Debtors seek approval of this agreement by the Court. Further, A&M has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the District of Delaware (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

**NOTICE**

24. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Official Committee of Unsecured Creditors; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the administrative agent for the Debtors' postpetition loan facility; (viii) the indenture trustee for the Debtors' prepetition notes; and (ix) all parties having requested notices in the Debtors' chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

25. No prior Application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as Exhibit A, granting the relief requested herein and (ii) granting such other and further relief as the Court may deem proper.

Dated: December 26, 2008

Respectfully submitted,

**TRIBUNE COMPANY**
(for itself and on behalf of each Debtor)

By: David P. Eldersveld
Title: Vice President, Deputy General Counsel & Secretary