# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

Hearing Date: January 15, 2009 at 1:30 p.m. (ET)
Objection Deadline: January 8, 2009 at 4:00 p.m. (ET)

## APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY PRICEWATERHOUSECOOPERS LLP AS COMPENSATION AND TAX ADVISORS AND INDEPENDENT AUDITORS TO THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby apply to the Court for the entry of an order authorizing them to retain and

employ PricewaterhouseCoopers LLP ("PwC") as compensation and tax advisors and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

-2-

independent auditors to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Debtors: (i) submit the Declaration of William T. England, a Partner of PwC (the "England Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in these chapter 11 cases. On December 18, 2008, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 327(a) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.      Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.      The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.      The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

8.  The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million. During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

**RELIEF REQUESTED**

9.  The Debtors desire to retain and employ PwC as compensation and tax advisors and independent auditors to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to the Petition Date. The Debtors utilized PwC for such services prior to the Petition Date, and have entered into five (5) separate engagement letters by which the Debtors intend for PwC to provide such services to the Debtors subsequent to the Petition Date, subject to the approval of the Court. Specifically, the Debtors retained PwC pursuant to an engagement letter dated as of December 1, 2008 (the "Compensation Engagement Letter"), to provide general compensation advisory services to the Debtors. The Compensation Engagement Letter is attached hereto as Exhibit B and incorporated herein by reference. The Debtors also retained PwC, pursuant to two separate engagement letters, both dated May 1, 2008 (the "Audit Engagement Letters"), to perform an integrated audit of the financial statements of Tribune Company, Tribune Broadcasting Holdco, LLC and Tribune Finance, LLC, each a debtor

-4-

in these cases (the "Companies"), at December 28, 2008 and for the year then ending. Copies of the Audit Engagement Letters are attached hereto as Exhibit C and incorporated herein by reference. In addition, the Debtors entered into two separate engagement letters with PwC, both on December 11, 2008 to provide, (i) services related to general tax consulting (the "Tax Engagement Letter"), and (ii) services related to claims responses and settlement (the "Claims Engagement Letter", collectively with Compensation Engagement Letter, the Audit Engagement Letters, and the Tax Engagement Letter, the "Engagement Letters" and each an "Engagement Letter"). The Tax Engagement Letter and the Claims Engagement Letter are attached hereto as Exhibit D and Exhibit E, respectively and are incorporated herein by reference. The Debtors now seek authority to employ PwC in these cases on the terms and subject to the conditions described below and in the Engagement Letters.

          10.     Prior to the Petition Date, PwC had acted as an outside adviser and independent auditor to Tribune Company and its affiliates for many years, gaining considerable experience with the Debtors' current corporate, financial and internal structures. In providing its services to the Debtors, PwC's professionals have worked closely with the Debtors' management, internal staff and other professionals. Given the considerable time, effort and expenditure that would be required for a new auditor to develop an understanding of the Debtors' businesses as thorough as the understanding already possessed by PwC, the Debtors wish to continue utilizing PwC's services subsequent to the Petition Date and believe that doing so will be both efficient for their business operations and cost-effective for their estates.

          11.     PwC is a leading full-service accounting, consulting and financial services firm that conducts business on a global basis. PwC routinely advises large corporate clients on all aspects of their businesses. Of relevance to the Debtors' circumstances, PwC has

considerable experience providing accounting, tax, auditing and financial advisory services to businesses in a chapter 11 environment, and has been employed in numerous cases under the Bankruptcy Code, including the chapter 11 cases of Sea Containers Ltd., American Home Mortgage Holdings, Inc., Buffets Holding, Inc., Calpine Corporation, Dana Corporation, Delphi Corporation, Foamex International Inc., Meridian Automotive Systems Composites Operations, Inc., Adelphia Communications Corp., Crown Pacific Partners, KB Toys, TouchAmerica and many others.

12.     The Debtors anticipate that PwC will render services to the Debtors as needed throughout the course of these chapter 11 cases. General descriptions of the types of services that the Debtors anticipate that PwC will render are set forth in the Engagement Letters. In particular, the Debtors anticipate that PwC will perform, among others, the following services:[3]

> (a) General Compensation Advisory Services, including, but not limited to:
>
>> i. advising on the design of annual and long-term incentive programs;
>>
>> ii. preparing cost estimates for implementing any arrangements;
>>
>> iii. advising on participant target levels for the incentive programs; and
>>
>> iv. advising on severance and retention programs.
>
> (b) Integrated Auditing Services of the Debtors at December 28, 2008 and for the year then ending;

---

[3] This summary is qualified in its entirety by reference to the provisions of the Engagement Letters. To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letters, the terms of the Engagement Letters shall control.

(c) Review Tribune Company's unaudited consolidated quarterly financial information;

(d) General Tax Consulting Services, including, but not limited to:

  i. advising on tax issues resulting from the Debtors' chapter 11 cases including assisting with the structuring and estimation of the tax effects of restructuring plan alternatives;

  ii. advising on tax planning or reporting matters;

  iii. preparing and/or reviewing original and amended returns for all taxes including federal, state and local income taxes, gross receipts, license, sales and use taxes and property taxes.

(e) Claims Response and Settlement Services including, but not limited to:

  i. assisting in managing, responding to and verifying the accuracy of claims submitted for federal income taxes, state and local net income taxes, franchise, sales use, property and business license or gross receipts taxes as a result of the Debtors' chapter 11 cases;

  ii. assist in negotiating settlements with taxing authorities with respect to claims submitted due to the Debtors' chapter 11 cases, as well as tax assessments for which the Debtors requests assistance during the pendency of these cases.

(f) Additional compensation, tax and/or accounting consulting, as requested by the Debtors.

13.  The Debtors' management has determined that the Debtors require the above-listed services in order to operate their businesses effectively and to meet the additional requirements imposed on the Debtors' businesses by the commencement of these chapter 11 cases. As noted above, PwC has substantial expertise both in working with the Debtors' businesses specifically and, more generally, in working with businesses in a chapter 11

environment. Accordingly, PwC is well qualified to perform these services and assist the Debtors in these chapter 11 cases.

14. PwC's services as compensation and tax advisors, as well as its role as independent auditor, do not duplicate those provided to the Debtors by any of the Debtors' other professionals. The Debtors will monitor PwC's services to ensure that all parties make every reasonable effort to avoid any duplication that might arise between the services provided by PwC and the services provided by Lazard Frères & Co. LLC ("Lazard"), as financial advisors and investment bankers to the Debtors, or any other professionals employed by the Debtors.

15. Pursuant to the terms and conditions of the Engagement Letters, and subject to the Court's approval, PwC intends to (a) seek compensation for the Audit Engagement Letters' based on a fixed fee structure;[4] and (b) charge for all other professional services on an hourly basis in accordance with its ordinary rates in effect on the date services are rendered; and (c) charge on a monthly basis for its reasonable out-of-pocket expenses and internal per ticket charges for booking travel.[5]

16. The PwC professionals providing the compensation, tax advisory and independent audit services will consult with internal PwC bankruptcy advisors to ensure compliance with the requirements of the Bankruptcy Code, as well as to decrease the overall fees associated with the administrative aspects of PwC postpetition engagements. The services provided by these PwC bankruptcy advisors shall include, but are not limited to, assistance with

---

[4] Although the Audit Engagement Letters indicate that PwC's "fee estimates are based upon the time required by the individuals assigned to the engagement" the Debtors and PwC have negotiated a fixed fee for such services. The fee estimates comprise a flat fee for the work identified as of the date of the Audit Engagement Letters. PwC will continue to update the Debtors on significant changes in our fee estimate as the audits progress and if additional estimates are needed to complete the services.

[5] The hourly rates charged by PwC professionals differ based on, among other things, each professional's level of experience, which may be altered from time to time.

the bankruptcy retention documents; assistance with the required disinterestedness disclosures; and assistance with completion of the requisite fee applications, and assistance with compliance with the other applicable Bankruptcy Rules, Local Rules, orders of this Court and guidelines established by the United States Trustee. Due to the specialized nature of the services, and consistency between bankruptcy venues, specific billing rates have been established for these bankruptcy advisors.[6]

17. Pursuant to the terms of the Compensation Engagement Letter, the Tax Engagement Letter and the Claims Engagement Letter, the Debtors have agreed to indemnify PwC and their respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables (as defined in and under the respective Engagement Letter), except to the extent determined to have resulted from PwC's gross negligence or other intentional misconduct relating to such Services and/or Deliverables. Also pursuant to the terms of the Compensation Engagement Letter, the Tax Engagement Letter and the Claims Engagement Letter, the Debtors agreed to that PwC's liability to pay damages, except to the extent finally determined to have resulted from PwC's gross negligence or intentional misconduct, for any losses incurred by the Debtors as a result of breach of contract, negligence or other tort committed by PwC, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to PwC for the particular services provided under the applicable Engagement Letter. In addition, pursuant to the terms of the Compensation Engagement Letter, the Tax Engagement Letter and the Claims Engagement Letter, PwC will not be liable in any event for lost profits or any consequential, indirect,

---

[6] The rate per hour for these PwC bankruptcy advisors by level of experience will be as follows: Partner: $780; Managing Director: $675; Director/Senior Manager: $565; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates are subject to periodic adjustments.

punitive, exemplary or special damages and shall have no liability to the Debtors arising from or relating to any third party hardware, software, information or materials selected or supplied by the Debtors.

18. Consistent with the prevailing standards for retention of professionals in chapter 11 cases in the Third Circuit, however, the Debtors request (and PwC agrees) that the order approving PwC's retention provide that notwithstanding anything to the contrary in the Engagement Letters, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of PwC's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letters as modified by the Order.

19. In addition, and again in recognition of the prevailing standards and requirements for the retention of professionals in chapter 11 cases, the Debtors request (and PwC agrees) that notwithstanding any contrary provisions in the Engagement Letters, all of PwC's fees and expenses in these cases will be subject to approval of the Court upon proper application by PwC in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee (the "U.S.

Trustee") and any other applicable requirements. The estimated fees in connection with the Audit Engagement Letters are approximately $1,815,000 not including reasonable out-of-pocket expenses.

20. Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Additionally, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries that set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause. The Debtors submit that the requirements of Local Rule 2016-2(d) should be tailored to the nature of PwC's engagement and its compensation structure.

21. The Debtors are seeking approval of PwC's retention with PwC being required to report the time incurred by PwC's professionals as described with the proposed billing formats below. PwC has advised the Debtors that it is not PwC's general practice to keep detailed time records similar to those kept by attorneys and respectively requested a waiver to maintaining contemporaneous time descriptions in time periods of tenths of an hour.

22. PwC intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, as described below:

Fixed Fee Estimates - PwC intends to include as an exhibit to each fee application, a narrative summary describing the services offered and a summary of the hours of time spent by each professional to support the Fee Estimates.

<u>Hourly Services</u> - PwC will submit a narrative summary of each project category describing the services offered, identification of each professional, number of hours spent and the amount of compensation requested, as well as reasonably detailed records of its hourly fees that shall set forth a description of the services rendered by each professional and the amount of time spent on each date. These time descriptions still provide the ability to review the time entries and evaluate the services provided by PwC professionals.

23. The Debtors submit that given the nature of the services to be provided by PwC, such billing formats and associated time details will be sufficient for the Debtors and other parties-in-interest to make an informed judgment regarding the nature and appropriateness of PwC's services and fees. Furthermore, PwC, when providing services to clients outside of chapter 11, does not record its time and services in tenths of an hour. Accordingly, to the extent necessary based on the foregoing, the Debtors respectfully request that the information requirements set forth in Local Rule 2016-2(d) are hereby modified and waived, to the extent necessary, with respect to PwC's services.

24. Prior to the Petition Date, on or about December 4, 2008, the Debtors provided PwC with a retainer of $50,000 pursuant to the terms of the Compensation Engagement Letter (the "<u>Compensation Retainer</u>") for services rendered or to be rendered and for reimbursement of expenses. The Compensation Retainer has been and will be applied on account of fees and expenses incurred and to be incurred in assisting the Debtors in connection with, these chapter 11 cases. In particular, on or about December 8, 2008, PwC applied $8,395 of the Retainer as payment for fees and expenses incurred or expected to be incurred for the period through and including December 7, 2008. Accordingly, as of the date hereof, $41,605 of the Retainer remained unapplied.[7]

---

[7] The amount of the Retainer remaining after application of PwC's fees and expenses reflects deductions for the amount of estimated, rather than actual fees and expenses incurred for the period prior to the Petition Date. Accordingly, the amount of the Retainer remaining after application of PwC's <u>actual</u> fees and expenses for the prepetition period may differ from the amount reported above.

-12-

## LEGAL AUTHORITY

25.  The Debtors seek to retain PwC pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

26.  To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, PwC has no connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or in the England Declaration. In particular:

(a)  PwC is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

(b)  As described above, prior to the Petition Date, PwC performed certain professional services for the Debtors. After PwC's application of funds from the Retainer, as described in paragraph 11 above, the Debtors do not owe PwC any amount for services performed prior to the Petition Date.

(c) From time to time, PwC has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters <u>unrelated</u> to these chapter 11 cases. As described below, however, PwC has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters.

27. To check and clear potential conflicts of interest in these cases, PwC performed a conflicts search on the Debtors and other significant parties-in-interest (collectively, the "<u>Interested Parties</u>").[8] The identities of the Interested Parties were provided to PwC by the Debtors and are set forth on <u>Schedule 1</u> to the England Declaration. PwC's review of its relationships with these parties-in-interest is continuing and PwC will file a supplemental affidavit disclosing the results of the remaining entities in an expedient manner. PwC's research of its relationships with the Interested Parties indicated that PwC was formerly employed by certain of the Interested Parties (or their apparent affiliates, as the case may be) for whom PwC provided financial advisory and other similar services unrelated to the Debtors' cases. A summary of such parties that PwC was able to locate as of the date of this Application using its reasonable efforts are listed on <u>Schedule 2</u> to the England Declaration.

28. Despite the efforts described above to identify and disclose PwC's connections with parties in interest in these cases, because the Debtors and their non-debtor affiliates consist of over 115 entities with thousands of creditors and other relationships, PwC is

---

[8] As of the date of this Application, PwC has completed its conflicts search on all of the Debtors and the results of that conflicts search are described in the England Declaration. Given the large number of Interested Parties listed on Schedule 1 to the England Declaration, however, it has not been possible for PwC to complete a search of all of those parties as of the date of this Application. PwC will promptly file a supplemental declaration in the event that completion of the search of all remaining Interested Parties results in any additional disclosures in connection with their retention by the Debtors in these cases.

unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if PwC discovers additional information that requires disclosure, PwC will file a supplemental disclosure with the Court as promptly as possible.

29. To the best of the Debtors' knowledge, information and belief, and as described in the England Declaration, PwC neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that PwC is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. For all of the reasons previously stated, the Debtors submit that the employment of PwC would be in the best interests of the Debtors and their respective estates. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the England Declaration.

## NOTICE

30. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the indenture trustee for the Debtors' prepetition notes; (viii) proposed counsel to the Official Committee of Unsecured Creditors; and (ix) any party who has requested to receive notices in these chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

31.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) authorizing the Debtors to retain and employ PwC as compensation and tax advisors and independent auditors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms and conditions described herein and in the Engagement Letters (as modified by the additional terms and conditions described herein and in the proposed order approving this Application), nunc pro tunc to the Petition Date; and (ii) granting such other and further relief as the Court may deem proper.

Dated: December 26, 2008

        TRIBUNE COMPANY
        (for itself and on behalf of each Debtor)

        *[signature]*
        David P. Eldersveld
        Vice President, Deputy General Counsel
        & Secretary