**EXHIBIT B**



PricewaterhouseCoopers LLP
One North Wacker
Chicago, IL 60606
Telephone (312) 298 2000
Facsimile (312) 298 2001
www.pwc.com

December 1, 2008

Ms. Mary A. Wilderotter
Chairman, Compensation Committee
Tribune Company
C/o Citizens Communications Company
3 High Ridge Park
Stamford, CT 06905

Dear Ms. Wilderotter:

This letter confirms that PricewaterhouseCoopers LLP ("we" or "us" or "PwC") is pleased to be engaged to provide the services described below to the Tribune Company. ("you" or "Client").

**Scope of Our Services**

You are engaging us to provide the following services (the "Services"):

- **General Compensation Advisory Services**

    As requested by the Compensation Committee of the Board we will provide compensation advisory services which include but are not limited to the following:

    - Provide advice on the design of annual and long-term incentive programs;
    - Preparing cost estimates for implementing any arrangements;
    - Advising on participant target levels for the incentive programs, and
    - Advising on severance and retention programs

These services include as appropriate, attending meetings, telephone calls and providing written reports or communications of our analyses, findings, and observations.

We will report directly to you, as Chairman of the committee. You, in turn, may delegate certain activities and request us to work with other members of the committee and / or with members of Tribune staff as necessary to provide the services described above.

If the scope of the engagement changes, or you request additional services that are not within the scope of this agreement, we will notify you that those services are out-of-scope and additional fees will be incurred at our hourly rates. Finally, if the scope of the work is unrelated to this engagement, or there is a significant departure from the existing engagement, we will provide you with a scope of services description which will incorporate the terms of this agreement for your approval and signature.

**Ownership and Use**

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these



Ms. Mary A. Wilderotter
December 1, 2008

Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

### Tribune Responsibilities

To facilitate PricewaterhouseCoopers' work, you will need to provide the following assistance:

- Access to necessary information and documentation related to Tribune's executive compensation programs
- Access to necessary compensation data for Tribune incumbent executives

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls.

Under Rule 407(e)(3)(iii) of SEC Regulation S-K, Tribune is required to make certain disclosures regarding the role of compensation consultants and the process for engaging and working with compensation consultants. To the extent that Tribune intends to name PwC as compensation consultant in these required disclosures, Tribune agrees to provide draft language to PwC for review with regard to the description of our role and related processes.

### Potential Conflict Of Interest Disclosure

PwC does not accept commissions or referral fees from current or potential vendors or service providers to our clients. PwC may, however, provide professional services to such organizations and receive payment for such services. Client acknowledges that PwC may have such professional relationships with one or more of the organizations whose products or services are to be evaluated in connection with this engagement, and agrees not to assert that such relationships cause any conflicts of interest in connection with the services agreed to herein.

### Timing of Engagement

This letter and any addendums will be effective through March 31, 2009. We will be prepared to provide specific deliverables within a mutually agreeable timeframe. In the event the agreed timetable requires that Tribune provide us with needed information or other assistance within a specified period of time, the failure to timely provide this assistance may require adjustment to our completion date. In addition, in the event unforeseen circumstances occur that impact our ability to meet the final completion date of a particular service, we will contact you to discuss an acceptable revised completion date.



Ms. Mary A. Wilderotter
December 1, 2008

### Termination and Dispute Resolution

Either party may terminate the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

### Limitations on Liability

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our liability to pay damages for any losses incurred by you as a result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this engagement letter. In addition, we will not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

### Indemnification

You agree to indemnify and hold us and our partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this Agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.

### Regulatory Matters

Notwithstanding anything to the contrary in this Agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

### Other Written Advice

Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.



Ms. Mary A. Wilderotter
December 1, 2008

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this Agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this Agreement.

**PCAOB Rule 3522**

You have represented to us, and by signing this Agreement, confirm that no other advisor providing advice or assistance with respect to the subject matter of this Agreement has imposed any conditions of confidentiality, as defined by Public Company Accounting Oversight Board ("PCAOB") Rule 3522. In addition, you agree that if, after we begin providing services covered by this Agreement any other advisor imposes conditions of confidentiality with respect to the matter that is subject to this Agreement, you will notify us immediately so that we can cease all work in order to avoid any impairment to independence under PCAOB Rule 3522.

**Our Team**

The project team will be led by:

Paul Perry, Partner, Human Resource Services
Paul will be the primary liaison between PwC and Tribune, and will be responsible for the quality of all services provided under this engagement.

Scott N. Olsen, Principal, Human Resource Services
Scott will assist Paul in this engagement, particularly with regard to the design of annual and long-term incentive plans.

Brandon Yerre, Director Human Resource Services
Brandon will assist Scott and Paul in all aspects of the work completed.

Our project team will be assisted by Partners and staff from our Human Resource Services practices.



Ms. Mary A. Wilderotter
December 1, 2008

**Fees**

Fees will be based on time required by our professionals to complete the services. Individual hourly rates vary according to the experience and skill required. Our fees for these services will be based on the following hourly rates:

| Partner/Principal | $750 |
|---|---|
| Manager | $375 |
| Senior Associate | $275 |
| Associate | $215 |

Hourly rates may be revised from time to time, and we will notify you of any such adjustments that will be reflected in billings.

We also will bill Tribune for our reasonable out-of-pocket expenses and our internal per ticket charges for booking travel. Our internal per ticket travel charge is an allocation of estimated costs of running our travel department in a manner to maximize cost savings.

**Payment Schedule**

Upon the signing of this engagement letter a retainer of $50,000 will be due and payable. PwC will at least monthly account for the services it provides. The retainer fee of $50,000 will serve as a credit for services provided.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

\* \* \* \* \*



Ms. Mary A. Wilderotter
December 1, 2008

We look forward to working with you and Tribune's staff during this important engagement. If you have any questions or comments regarding the terms of this Agreement, please do not hesitate to call me at (646) 471-0651. If this Agreement is in accordance with your understanding of our engagement, please sign one copy of this letter and return it to us.

Yours very truly,

PricewaterhouseCoopers LLP

By: *Paul Perry*

    Paul C. Perry, Partner

cc:    Mr. Bill Pate, Tribune Company

**ACKNOWLEDGED AND AGREED:**

**Tribune Company, on behalf of its subsidiaries and affiliates**

**Signature of client official:** _____

**Please print name:** Mary Agnes Wilderotter

**Title:** Chairman, Compensation Committee

**Date:** _____

(6)