**EXHIBIT E**

# PRICEWATERHOUSECOOPERS

December 11, 2008

Mr. Patrick Shanahan
Vice President, Tax
The Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611

PricewaterhouseCoopers LLP
One North Wacker
Chicago IL 60606
Telephone (312) 298 2000
Facsimile (312) 298 2001

Subject: Assistance with Claims Response and Settlement

Dear Mr. Shanahan:

This letter confirms that the Tribune Company ("you" or "Tribune") has engaged PricewaterhouseCoopers LLP ("we" or "us" or "PwC") to provide the below described services.

**Scope of Our Services**

- You are engaging us to provide the following services (the "Services"):

- Assist in managing, responding to and verifying the accuracy of claims submitted for federal income taxes, state and local net income taxes, franchise, sales, use, property and business license or gross receipts taxes as a result of Tribune's Chapter 11 bankruptcy filing.

- Assist in negotiating settlements with taxing authorities with respect to claims submitted due to the Chapter 11 bankruptcy filing, as well as tax assessments for which the Tribune requests our assistance during the bankruptcy period. Additionally, we will provide assistance with respect to expediting, resolving and negotiating settlements of existing and pending federal, state and local tax audits or other tax controversies.

- Such additional tax services as you may request during the pendency of the Chapter 11 proceedings.

**We expect to provide you with the following Services:**

Our services will be performed in the below two phases.

<u>*Phase I*</u>

PwC will assist Tribune in analyzing claims for federal, state and local net income taxes, and state and local franchise, sales, use, property, business license, and gross receipts taxes. Before beginning the project, PwC's team will meet with Tribune to discuss each party's responsibilities and to establish a mutually agreed-upon strategy and objectives for reviewing and responding to claims. Based upon this discussion, we will assist you in reviewing each claim to determine the validity and accuracy of the amount(s) requested by the taxing authority. Using the results of our evaluation, we will identify potential courses of resolution for each claim, as well as provide a recommendation using all available facts. We will prepare correspondence for the Tribune's review and signature where necessary to ensure that all deadlines are met. We will meet with Tribune at regular intervals (e.g., weekly) and at other designated times to discuss the status of each claim, and to determine whether the claim should resolved under the services provided in Phase II.

We will prepare a report, updated weekly, to track the claims with information necessary to organize and respond to claims in a timely manner. This report will serve as the basis for our meetings and will include the claim, the amount requested, the results of our analysis of the claim, the PwC

# PRICEWATERHOUSECOOPERS

DRAFT - For Discussion Purposes Only

recommended course of action with regard to resolution to the claim, and the progress toward the resolution strategy ultimately agreed to by Tribune. The report will also identify needed approvals or action steps required to effectuate the agreed upon resolution strategy for each claim.

## *Phase II*

The primary objective of this phase is to reduce the dollar value of claims selected by Tribune during Phase I for resolution. The reductions will be accomplished through proactive negotiations with taxing authorities such that Tribune's overall liabilities will be more manageable once it emerges from Bankruptcy Court protection. We will provide additional assistance as requested by Tribune throughout the bankruptcy period, which may include analyzing tax assessments and negotiating settlements for pre-petition liabilities and participating in existing and pending audits or administrative appeals.

The first step in this phase will be to meet with you to discuss each claim and any existing assessments or pending administrative appeals for which we will provide assistance. Based on the information obtained through this meeting, we will work with you to develop an overall negotiating strategy, including the development of suggested settlement terms and assignment of tasks between Tribune and PwC for execution of the overall strategy. For example, depending upon the level of historical knowledge and materiality of the liability in a given jurisdiction, Tribune may choose to have its own employees take the lead on negotiations with auditors or other officials of the taxing authority or it may delegate the negotiation process to PwC.

Once these issues are addressed, we will proceed with actual negotiations, with the objective of reaching formal settlement agreements with the identified taxing jurisdictions where PwC will take the lead role in negotiations. Such agreements will ratify the actual settlement terms negotiated with the taxing jurisdiction and will additionally seek to ensure that Tribune's directors, officers, and employees are held harmless in their personal capacities for any of the tax obligations in question. In situations where Tribune employees may conduct negotiations on their own, we will be available to consult and assist them in any manner requested by the Company.

In addition, PwC will be available to assist Tribune in other tax matters that may arise during the Chapter 11 proceedings. This includes, but is not limited to, providing services to the Company and its outside counsel in analyzing technical tax issues that arise in connection with ongoing or future audits by taxing authorities, or any other assistance on federal, state, or local tax issues that Tribune may request.

Deliverables producing during Phase II may include, but are not limited to, preparation of written correspondence necessary to carryout the objects established by the Company, such as settlement offers or other correspondence with state auditors or bankruptcy representatives, formal settlement agreements, and memoranda addressing technical issues.

## Ownership and Use

We are providing these Services solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material delivered to you under this engagement letter, except as follows: PwC will own its working papers and preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which may have been discovered or created by PwC as a result of its provision of the Services. You

2



DRAFT - For Discussion Purposes Only

will have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us. Any spreadsheets or software tools that PwC provides to Client are for Client's convenience and are provided as is. PwC will not be responsible for results obtained by anyone other than PwC from the use of those items.

**Your Responsibilities**

To facilitate our work, Tribune will need to provide the following assistance:

- A listing of taxing authorities that are potential claimants,
- A listing of all pending tax audits and tax assessments that have been issued by taxing authorities but which have not yet been paid by the Company,
- Claims actually submitted by the taxing authorities, and any related correspondence and documents,
- Access to information necessary to verify the accuracy of each claim and to negotiate a settlement, and
- Access to Tribune employees knowledgeable about the Tribune's operations and tax filings.

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

You confirm that the requirements for audit committee pre-approval under the Sarbanes-Oxley Act of 2002 have been complied with relating to this engagement.

**Fees and Expenses**

Our fee is based on the time required by our professionals to complete the engagement. Individual hourly rates are provided below for each staff class and vary according to the experience and skill required.

| | |
|---|---|
| Partner | $625 - $760 |
| Managing Director | $600 - $625 |
| Director | $450 - $500 |
| Manager | $280 - $320 |
| Senior Associate | $200 - $240 |
| Associate | $155 - 180 |
| Professional Assistant | $145 |

We also will bill Tribune for our reasonable out-of-pocket expenses.

3



DRAFT - For Discussion Purposes Only

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this agreement. In the event we believe an additional fee is required as the result of the failure of the Tribune to meet any of these requests or for any other reason, we will inform you promptly.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 30days of the invoice date.

We reserve the right to charge interest on any past due balances at a rate of 1% per month or part thereof.

**Termination and Dispute Resolution**

Either party may terminate the Services by giving notice to that effect. Any dispute relating in any way to the Services or this letter shall be resolved by arbitration, except that either party shall be free to seek equitable relief in court. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before a panel of three arbitrators. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and in any event no later than two years after any such cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our liability to pay damages for any losses incurred by you as a result of breach of contract, negligence or other tort committed by us, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular service provided under this engagement letter. In addition, we will not be liable in any event for lost profits or any consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability to you arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold us and other PricewaterhouseCoopers firms engaged as subcontractors hereunder, and our respective partners, principals and employees harmless from and against any and all third party claims resulting from any of the Services or Deliverables under this agreement, except to the extent determined to have resulted from our gross negligence or other intentional misconduct relating to such Services and/or Deliverables.



DRAFT - For Discussion Purposes Only

**Regulatory Matters**

Notwithstanding anything to the contrary in this agreement, you have no obligation of confidentiality with respect to any materials, advice or portions of Deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PricewaterhouseCoopers provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Treasury Regulations Section 1.6011-4 requires that taxpayers disclose to the IRS their participation in certain reportable transactions. Additionally, certain states have adopted rules with purposes similar to Treasury Regulations under Internal Revenue Code Section 6011. You agree to advise us if you determine that any matter covered by this agreement is a reportable transaction that is required to be disclosed under Section 1.6011-4, or is a transaction requiring disclosure to a particular state under such state's particular statutes or regulations.

Similar rules under Internal Revenue Code Sections 6111 and 6112 require that we submit information returns and maintain lists of certain client engagements if we are material advisors to clients that have participated in a reportable transaction. Additionally, certain states have adopted rules similar in scope to Internal Revenue Code Sections 6111 and 6112, thereby creating similar registration and list maintenance requirements in those states. Therefore, if we determine, after consultation with you, that you have participated in a transaction causing us to have a registration and/or list maintenance obligation, we will place your name and other required information on a list. We will contact you if we are required to provide your name to the IRS or any state in connection with any matter under this agreement.

**PCAOB Rule 3522**

You have represented to us, and by signing this agreement, confirm that no other advisor providing advice or assistance with respect to the subject matter of this agreement has imposed any conditions of confidentiality, as defined by Public Company Accounting Oversight Board ("PCAOB") Rule 3522. In addition, you agree that if, after we begin providing services covered by this agreement any other advisor imposes conditions of confidentiality with respect to the matter that is subject to this agreement, you will notify us immediately so that we can cease all work in order to avoid any impairment to independence under PCAOB Rule 3522.

**Federal (Internal Revenue Code Section 6694) and State Preparer Standards**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.



DRAFT - For Discussion Purposes Only

Our work may require consultation with a PWC subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

By entering into this engagement letter, you are binding to its terms your subsidiaries and affiliates to the extent you have the authority to do so; we disclaim any contractual or other responsibility to any other subsidiaries and affiliates. You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the services we provide, non-CPA owners may be involved in providing services to you now or in the future.

We are pleased to have the opportunity to provide services to you. If you have any questions about the contents of this letter, please discuss them with Douglas L. Pinney at (312) 298-2106, Timothy Byrd (312) 298-3823, or Janet Krueger (312) 298-2040. If the Services and terms outlined in this letter are acceptable, please sign one copy of this letter in the space provided and return it to the undersigned.

Very truly yours,

PricewaterhouseCoopers LLP


By: _____
    Douglas L. Pinney, Partner


**ACKNOWLEDGED AND AGREED:**

**Tribune Company, individually and on behalf of its subsidiaries and affiliates**


**Signature of client official:**      _____

**Please print name:**      _____

**Title:**      _____

**Date:**      _____