# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

Hearing Date: January 15, 2009 at 1:30 p.m. (ET)
Objection Deadline: January 8, 2009 at 4:00 p.m. (ET)

## APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY DANIEL J. EDELMAN, INC. AS CORPORATE COMMUNICATIONS AND INVESTOR RELATIONS CONSULTANTS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby apply to the Court for the entry of an order authorizing them to retain and

employ Daniel J. Edelman, Inc. ("Edelman") as corporate communications and investor relations

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (4817); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The

consultants in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code,

11 U.S.C. §§101-1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this Application, the Debtors: (i)

submit the Declaration of Jeff Zilka, the Executive Vice President of Financial Communications

of Edelman (the "Zilka Declaration"), a copy of which is attached hereto as Exhibit A and

incorporated herein by reference; and (ii) respectfully represent as follows:

### STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner in

these chapter 11 cases.  On December 18, 2008, the Office of the United States Trustee appointed

an Official Committee of Unsecured Creditors in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought

herein is section 327(a) of the Bankruptcy Code.

---

Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## BACKGROUND OF THE DEBTORS

5.    Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6.    The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7.    The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

8.      The Debtors are based in the United States, with headquarters located in Chicago, Illinois.  In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million.  During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue.  Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments.  For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9.      The Debtors desire to retain and employ Edelman as corporate communications and investor relations consultants in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc as of the Petition Date.  An engagement letter between the Debtors and Edelman, dated December 2, 2008, and as amended on December 22, 2008 (the "Engagement Letter"), is attached hereto as Exhibit B and incorporated herein by reference.  The Engagement Letter describes the terms and conditions of Edelman's proposed engagement by the Debtors.  The Debtors now seek authority to employ Edelman in these cases on the terms and subject to the conditions described below and in the Engagement Letter.

10.     Edelman is a full-service independent global public relations firm. Formed in 1952, Edelman routinely advises large corporate clients on all communications and

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not

public relations aspects of their businesses.  Their financial and crisis and issues management

practice have considerable experience in working with businesses in a chapter 11 environment,

and Edelman has served as lead corporate communications consultant in numerous cases under

the Bankruptcy Code, including the chapter 11 cases of Summit Global Logistics; Propex;  Jays

Foods; PlusFunds; Merit Health Systems; Hoboken Floors; Levitz Home Furnishings; Perry

Capital/Republic Engineered; Berry-Hill Galleries; Penthouse Media; Allegiant Telecom; Avado

Brands; Parmalat USA; Rand McNally; American Classic Voyages; Dade Behring; Retirement

Systems of Alabama/US Airways; Service Merchandise; DecisionOne; Florsheim; and Asia

Global Crossing.

      11.     Edelman is very familiar with the Debtors' current corporate

communications needs, having worked intensively since November 2008 with the Debtors'

corporate communications executives to provide communications and investor relations services

in conjunction with this filing.  During the period leading up to the Petition Date, Edelman

assisted in the development of a comprehensive communications strategy and materials used by

its senior executives and vendor/accounts payable, human resources, advertising and sales, and

real estate staffs on the Petition Date, by which the Debtors made public announcements of the

commencement of these chapter 11 cases and will make other communications to all relevant

audiences.  Accordingly, Edelman has developed significant relevant experience and expertise

that will assist it in providing effective and efficient services in these chapter 11 cases.

      12.     The Debtors anticipate that Edelman will render corporate

communications consulting, investor relations, and related services to the Debtors as needed

---

Debtors in these cases.

throughout the course of these chapter 11 cases as described in the Engagement Letter and the Zilka Declaration.

13.     The Debtors' management has determined that the Debtors require knowledgeable corporate communications consultants and investor relations experts to provide corporate communications and investor relations services in these chapter 11 cases.  As noted above, Edelman has substantial expertise in all of these areas.  Moreover, as also indicated above, Edelman has obtained valuable institutional knowledge of the Debtors' communications needs as a result of its long standing relationship with the Debtors and its activities in providing services to the Debtors prior to the Petition Date.  Accordingly, Edelman is well qualified to perform these services and assist the Debtors in these chapter 11 cases.

14.     Pursuant to the terms and conditions of the Engagement Letter, and subject to the Court's approval, Edelman intends to (a) charge for its professional services on a pre-billed and pre-paid $50,000 per month retainer basis that is in accordance with its ordinary transaction/crisis rates in effect on the date services are rendered; (b) charge on a monthly basis for its estimated internal expenses for the prior month, including, but not limited to, local phone, fax, copier, postage and database and research tools; and (c) seek direct payment by the Debtors for any other actual and necessary out-of-pocket expenses, where practicable, otherwise Edelman intends to seek reimbursement and/or pre-payment for the same.[3]  Edelman will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the corporate communications consulting services described

---

[3] The rates charged by Edelman professionals differ based on, among other things, each professional's level of experience, which may be altered from time to time.

above by category and nature of the services rendered.[4] Notwithstanding any contrary provisions in the Engagement Letter, Edelman will maintain all such time records in tenth-of-an-hour increments.

15.    The Engagement Letter also provides that the Debtors will indemnify Edelman from and against any third-party liabilities, actions, claims, damages, judgments or expenses, including reasonable attorneys' fees and costs, (collectively "Claims") that arise out of or relate to: (i) information, statements or materials (including any Claims relating to intellectual property rights therein), prepared or provided by the Debtors, that the Debtors directed Edelman to use or that were approved by the Debtors, including, without limitation, any Claims of infringement or misappropriation of copyright, trademark, patent, trade secret or other intellectual property or proprietary right, infringement of the rights of privacy or publicity, or defamation or libel; (ii) product liability or death, personal injury or property damage arising out of, or relating to, the Debtors' acts or omissions or the Debtors' products, services or equipment; and/or (iii) the Debtors' gross negligence or willful misconduct.

16.    Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Edelman's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant

---

[4] The names and current hourly rates of the Edelman professionals expected to have primary responsibility for providing services to the Debtors are listed on Schedule 2 to the Zilka Declaration.

to <u>In re United Artists Theatre Co.</u>, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial

determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court,

after notice and a hearing, to be a claim or expense for which that person should not receive

indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified

by the Order.

17.     Notwithstanding any contrary provisions in the Engagement Letter, all of

Edelman's fees and expenses in these cases will be subject to approval of the Court upon proper

application by Edelman in accordance with sections 330 and 331 of the Bankruptcy Code,

Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee

(the "U.S. Trustee") and any other applicable requirements.

18.     Prior to the Petition Date, on November 24, 2008 and December 4, 2008,

the Debtors provided Edelman with two retainers that total $110,000 (collectively, the

"Retainer") for services rendered or to be rendered and for reimbursement of expenses.  The

Retainer has been and will be applied on account of fees and expenses incurred and to be

incurred in assisting the Debtors in connection with, these chapter 11 cases.  In particular, as of

December 14, 2008, Edelman had applied approximately $98,000 of the Retainer as payment for

fees and expenses incurred or expected to be incurred for the period through and including that

date.  Accordingly, as of the date hereof, approximately $12,000 of the Retainer remained

unapplied.[5]

---

[5]The amount of the Retainer remaining after application of Edelman's fees and expenses reflects deductions for the amount of estimated, rather than actual fees and expenses incurred for the period prior to the Petition Date. Accordingly, the amount of the Retainer remaining after application of Edelman's <u>actual</u> fees and expenses for the prepetition period may differ from the amount reported above.

19.    To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, Edelman has no connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or in the Zilka Declaration.  In particular:

(a)    Edelman is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

(b)    Prior to the Petition Date, Edelman performed certain professional services for the Debtors, as described in paragraph 11 above.  After Edelman's application of funds from the Retainer, as described in paragraph 18 above, the Debtors do not owe Edelman any amount for services performed prior to the Petition Date.

(c)    From time to time, Edelman has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters unrelated to these chapter 11 cases.  As described below, however, Edelman has undertaken a search to determine, and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters.

20.    To check and clear potential conflicts of interest in these cases, Edelman performed a conflicts search on the Debtors and other significant parties-in-interest (collectively, the "Interested Parties").  The identities of the Interested Parties were provided to Edelman by the Debtors and are set forth on Schedule 1 to the Zilka Declaration.  Edelman's research of its relationships with the Interested Parties indicated that Edelman was or is employed by certain of

the Interested Parties, for whom Edelman has provided or is providing public relations services unrelated to the Debtors' cases. Due to confidentiality obligations, Edelman is unable to disclose the identities of such entities at this time.

21.    Despite the efforts described above to identify and disclose Edelman's connections with parties in interest in these cases, because the Debtors and their non-debtor affiliates consist of over 115 entities with thousands of creditors and other relationships, Edelman is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Edelman discovers additional information that requires disclosure, Edelman will file a supplemental disclosure with the Court as promptly as possible.

22.    To the best of the Debtors' knowledge, information and belief, and as described in the Zilka Declaration, Edelman neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Edelman is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. The Debtors submit that their employment of Edelman would be in the best interests of the Debtors and their respective estates and creditors. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Zilka Declaration.

23.    As noted above and notwithstanding any contrary provisions in the Engagement Letter, Edelman intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of this Court, and pursuant to any additional procedures that may be established by the Court in these cases.

## NOTICE

24.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Official Committee of Unsecured Creditors; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the administrative agent for debtors' postpetition loan facility; (viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

25.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) authorizing the Debtors to retain and employ Edelman as corporate communications consultants and investor relations consultants in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms and conditions described herein and in the Engagement Letter (as modified by the additional terms and conditions described herein), nunc pro tunc to the Petition Date; and (ii) granting such other and further relief as the Court may deem proper.

Dated:  December 26, 2008

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)

David P. Eldersveld
Vice President, Deputy General Counsel
& Secretary