# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: January 15, 2009 at 1:30 p.m. (ET)**
**Objection Deadline: January 8, 2009 at 4:00 p.m. (ET)**

## APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§ 327(a), 328(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors (each a "Debtor" and collectively, the "Debtors") hereby submit this Application (the "Application") for entry of an order, in substantially the form attached hereto, authorizing the Debtors to employ and retain Lazard Frères & Co. LLC

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

("Lazard") as investment banker and financial advisor to the Debtors pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), nunc pro tunc to the Petition Date (as defined herein). In support of the Application, the Debtors submit the Declaration of James E. Millstein (the "Millstein Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in these chapter 11 cases. On December 18, 2008, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a), 328(a) and 1107 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5. Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors

operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6. The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7. The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

8. The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income

---

[2] The broadcasting and entertainment segment also includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

of approximately $87.0 million. During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

## RELIEF REQUESTED

9. By this Application, the Debtors seek authorization to employ and retain Lazard to perform investment banking and financial advisory services for the Debtors in connection with these chapter 11 cases pursuant to sections 327(a), 328(a) and 1107 of the Bankruptcy Code, nunc pro tunc to the Petition Date upon the terms and conditions contained in that certain engagement letter, dated as of December 2, 2008, by and between Lazard and the Debtors (the "Engagement Letter") and the related indemnification agreement of the same date (the "Indemnification Letter" and, together with the Engagement Letter, the "Lazard Agreement"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein.

10. Lazard is well qualified to assist the Debtors on the matters for which the Debtors proposes to retain it. Lazard is an investment banking firm focused on providing financial and investment banking advice and transaction execution on behalf of its clients. Lazard's broad range of corporate advisory services includes services pertaining to such areas as general financial advice, domestic and cross-border mergers and acquisitions, divestitures, privatization, special committee assignments, takeover defenses, corporate restructurings, and

strategic partnerships/joint ventures. Lazard also has a significant asset management business. In addition, Lazard is a registered broker-dealer with the United States Securities and Exchange Commission.

11. Lazard and its professionals have extensive experience and an excellent reputation for providing high quality financial advisory services to debtors and creditors in large and complex chapter 11 cases and other debt restructurings, and Lazard is very familiar with the Debtors' financial and business operations. Lazard's employees have advised debtors, creditors, equity constituencies and government agencies in many complex financial reorganizations. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $350 billion in debtors' assets, including the chapter 11 cases of Adelphia Communications Corporation, Armstrong World Industries, Inc., Calpine Corporation, Daewoo Corporation, Lehman Brothers Holdings, Inc., Tropicana Entertainment, LLC, Movie Gallery, Inc., New Century TRS Holdings, Inc., Northwest Airlines Inc., Owens Corning Corp., Vertis Holdings, Inc., Vlasic Foods International, Inc., WCI Communities, Inc., Wellman, Inc. and Worldcom, Inc.

12. The Debtors have selected Lazard, subject to the Court's approval, to serve as their investment banker and financial advisor in connection with these chapter 11 cases. On December 2, 2008, the Debtors engaged Lazard to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization and to prepare for the commencement of these chapter 11 cases. In providing services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, debt structure, creditors, business

and operations and related matters. Accordingly, Lazard has developed significant relevant experience and expertise regarding the Debtors that will assist Lazard in providing effective and efficient services in these chapter 11 cases.

13. The Debtors believe that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing the services described herein and in the Engagement Letter and that the value to the Debtors of such services and the amount of the deferred Restructuring/Disposition Fee and, if applicable, Other Disposition fee (each as defined in the Engagement Letter) are reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided to the Debtors pursuant to the Engagement Letter. With its experienced senior professionals and familiarity of the Debtors' businesses, Lazard fulfills a critical role that complements the services offered by the Debtors' other restructuring professionals.

14. Specifically, the Debtors seek to employ Lazard to provide financial advisory and investment banking services including the following,[3] as necessary and requested:

> a. Review and analyze the Debtors' business, operations and financial projections;
>
> b. Evaluate the Debtors' potential debt capacity in light of its projected cash flows;
>
> c. Assist in the determination of a capital structure for the Debtors;
>
> d. Assist in the determination of a range of values for the Debtors on a going concern basis;

---

[3] Capitalized terms used in this summary and the summaries regarding compensation, indemnification, contribution and reimbursement below but not otherwise defined herein shall have the meanings set forth in the Lazard Agreement. Each such summary is solely for the benefit of the Court and parties in interest. To the extent that any such summary and the terms of the Lazard Agreement are inconsistent, the terms of the Lazard Agreement shall control.

6

e. Advise the Debtors on tactics and strategies for negotiating with the Stakeholders;

f. Render financial advice to the Debtors and participate in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

g. Advise the Debtors on the timing, nature and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

h. Advise and assist the Debtors in evaluating potential Financing transactions, and, subject to Lazard's agreement to act, and, if requested by Lazard, to execution of appropriate agreements, on behalf of the Debtors, contact potential sources of capital as the Debtors may designate and assist the Debtors in implementing such Financing;

i. Assist the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with the Restructuring;

j. Assist the Debtors in identifying and evaluating candidates for a potential Majority Disposition and, if requested by the Debtors, Other Disposition, advising the Debtors in connection with negotiations and aiding in the consummation of a Majority Disposition and, if requested by the Debtors, any other Disposition;

k. Attend meetings of the Debtors' Board of Directors and its committees with respect to matters on which Lazard has been engaged to advise the Debtors;

l. Provide testimony, as necessary, with respect to matters on which Lazard has been engaged to advise the Debtors in any proceeding before the Bankruptcy Court; and

m. Provide the Debtors with other financial restructuring advice.

15. Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders established by this Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Further, because the Debtors are seeking approval of the Fee Structure under section 328(a) of the Bankruptcy Code, the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and should not be deemed to constitute a "bonus" or fee enhancement under applicable law.

16.     The Debtors request that notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, in light of services to be provided by Lazard and the structure of Lazard's compensation pursuant to the Engagement Letter, Lazard and its professionals should be excused from maintaining time records as set forth in Local Rule 2016-2 and the United States Trustee Fee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter; provided, however, that Lazard shall instead present to the Court reasonably detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services and the individuals who provided professional services on behalf of the Debtors. For similar reasons, the Debtors further request that, if the United States Trustee for the District of Delaware objects to the Monthly Fee and the Restructuring/Disposition Fee, that such objection be based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided, however, that "reasonableness" for this purpose shall be evaluated by comparing (among other things) the transaction fees payable in these cases to fees paid to other investment banking firms with similar experience and

reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria.

17. Lazard has developed the Fee Structure for this matter in accordance with its customary terms and billing procedures. In summary, the Fee Structure provides for the following compensation to Lazard:

    a. A monthly fee of $200,000 (the "<u>Monthly Fee</u>"), payable on the first day of each month until the expiration or termination of Lazard's engagement. One half (50%) of all Monthly Fees paid in respect of any months following the 12th month of the engagement shall be credited (without duplication) against any Restructuring/Disposition Fee (as defined herein) payable; provided, that such credit shall only apply to the extent that the Restructuring/Disposition Fee is approved in its entirety by the Bankruptcy Court;

    b. A fee equal to $16.0 million, payable upon the earlier of consummation of a Majority Disposition or a Restructuring (the "<u>Restructuring/Disposition Fee</u>");

    c. In the event that the Debtors request Lazard's assistance in connection with any disposition of a portion of the business, assets or securities of the Debtors that would not constitute a Majority Disposition (each, an "<u>Other Disposition</u>"), other than the contemplated dispositions of all or a portion of the Debtors' interests in certain specified assets or businesses,[4] the Debtors and Lazard will mutually agree in good faith on a fee to be paid to Lazard on consummation of any such transaction, which fee will appropriately compensate Lazard in light of the magnitude and complexity of the Other Disposition, the fees customarily paid to investment bankers of similar standing for similar transactions and the other fees payable to Lazard hereunder, subject to approval of this Court;

    d. In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors

---

[4] Certain of these specified assets and businesses are confidential. The version of the Engagement Letter filed herewith has been redacted to remove reference to these particular assets and/or businesses. The Debtors do not believe that such redaction materially affects the disclosures made by the Debtors and Lazard in connection with the Application.

        shall promptly reimburse Lazard for all: (i) reasonable out-of-pocket expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (ii) other reasonable out-of-pocket fees and expenses including out-of-pocket fees and expenses of counsel which are approved by the Debtors in advance (with such approval not to be unreasonably withheld by the Debtors), if any;

    e. As part of the compensation payable to Lazard, the Debtors agree to the indemnification, contribution and other provisions of the Indemnification Letter which are incorporated into the Engagement Letter in their entirety.

18. The Debtors understand that the Fee Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances. Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Fee Structure. As is customary in the case of investment bankers and similar financial advisors, it is difficult, if not impossible, to measure the ultimate benefit of Lazard's services hereunder by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. The Debtors and Lazard have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Lazard and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

19. The Debtors have agreed to reimburse, indemnify and to make certain contributions to Lazard and certain related parties in accordance with the Indemnification Letter. The Indemnification Letter provides, among other things, that the Debtors will indemnify, hold harmless and defend Lazard and its affiliates and the respective directors, officers, members, employees, agents and controlling persons of both Lazard and its affiliates (collectively, the "Indemnified Parties") for any loss, claim, damage, liability or expense relating to, arising out of or in connection with Lazard's engagement by the Debtors.

20. The Indemnification Letter was fully negotiated between the Debtors and Lazard at arm's-length and the terms of the Indemnification Letter are customary for financial advisors and investment bankers such as Lazard for proceedings both out of court and in chapter 11. The Debtors respectfully submit that the Indemnification Letter, viewed in conjunction with the other terms of Lazard's proposed retention, is reasonable and in the best interests of the Debtors, their estates.

21. The Debtors intend that the services of Lazard will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases. Specifically, the Debtors have retained Alvarez & Marsal North America LLC ("A&M") as financial advisors in these chapter 11 cases to assist the Debtors in their information gathering, compliance with their reporting requirements, preparation of the schedules of assets and liabilities and statements of financial affairs, and other, similar issues. The Debtors will monitor both Lazard's and A&M's performance of services to ensure that duplication of effort does not occur. The Debtors have also advised Lazard that they may retain additional professionals during the term of Lazard's engagement, and the Debtors will ensure that Lazard and any other such professionals will work cooperatively to integrate their respective work.

22. To check and clear potential conflicts of interest in these cases, Lazard performed a conflicts search on the Debtors and other significant parties-in-interest (collectively, the "Interested Parties"). The identities of the Interested Parties were provided to Lazard by the Debtors and are set forth on Schedule 1 to the Millstein Declaration. Lazard has researched its electronic client files and records to determine its connections with the Interested Parties. Lazard's research of its relationships with the Interested Parties indicated that Lazard formerly was employed by certain of the Interested Parties for whom Lazard provided financial advisory and similar services unrelated to the Debtors' cases. Such parties are listed on Schedule 2 to the Millstein Declaration.

23. Despite the efforts described above to identify and disclose Lazard's connections with parties in interest in these cases, because the Debtors and their non-debtor affiliates consist of over 115 entities with thousands of creditors and other relationships, Lazard is unable to state with certainty that every client relationship or other connection has been disclosed. To the extent that Lazard discovers any, or enters into any new, material relationship with any Interested Parties, it will supplement this disclosure to the Court promptly.

24. To the best of the Debtors' knowledge, information and belief, and except to the extent disclosed in the Millstein Declaration, Lazard neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Lazard is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. The Debtors submit that their employment of Lazard would be in the best interests of the Debtors and their respective estates. The Debtors' knowledge, information and

belief regarding the matters set forth herein are based, and made in reliance, upon the Millstein Declaration.

## NOTICE

25. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Official Committee of Unsecured Creditors; (vi) the administrative agents for the Debtors' prepetition loan facilities; (vii) the administrative agent for debtors' postpetition loan facility; (viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

26. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors to retain Lazard as investment banker to the Debtors in these chapter 11 cases pursuant to sections 327(a), 328(a) and 1107 of the Bankruptcy Code, <u>nunc pro tunc</u> to the Petition Date, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: December 26, 2008

        TRIBUNE COMPANY
        (for itself and on behalf of each Debtor)

        *[signature]*
        David P. Eldersveld
        Vice President, Deputy General Counsel
        & Secretary