IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN, EMPLOY, AND COMPENSATE CERTAIN PROFESSIONALS UTILIZED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS PURSUANT TO SECTIONS 105(a), 327, 328, AND 330 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") pursuant to sections 105(a), 327, 328, and 330 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order authorizing the Debtors to employ and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

compensate certain professionals utilized in the ordinary course of the Debtors' business. In support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.  On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner in these cases.

4.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a), 327, 328 and 330 of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

5.  Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in publishing, interactive, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

6. The Debtors' publishing segment currently operates eight (8) market leading daily newspapers and related businesses, distributes entertainment and syndicated content, and manages a 24-hour cable news channel. The Debtors are the nation's third largest newspaper publisher in terms of revenue and circulation. Daily newspapers published by the Debtors include the Los Angeles Times and the Chicago Tribune. The Debtors' publishing segment also manages the websites of their daily newspapers, television stations, and other branded sites targeting specific communities of interest. As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees.

7. The Debtors' broadcasting and entertainment segment includes 23 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[2] Through their television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80% of television households in the United States. Thirteen (13) of the Debtors' stations are affiliates of The CW Television Network, America's "fifth" major broadcast network. Seven (7) are affiliates of Fox Broadcasting Network. As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees.

8. The Debtors are based in the United States, with headquarters located in Chicago, Illinois. In fiscal year 2007, the Debtors and their non-debtor subsidiaries (collectively, the "Tribune Entities") recorded revenues of approximately $5.1 billion, resulting in net income of approximately $87.0 million. During this time, the publishing segment contributed approximately 72% of the Tribune Entities' revenue and the broadcasting and entertainment segment contributed approximately 28% of the Tribune Entities' revenue. Advertising revenue

---

[2] The Debtors' subsidiaries that own the Chicago Cubs baseball operations and the broadcast network Comcast SportsNet Chicago, LLC are not Debtors in these cases.

3

is the primary source of revenue for both the publishing and broadcasting and entertainment segments. For the quarterly period ended September 28, 2008, the consolidated financial statements of the Tribune Entities reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities.

### RELIEF REQUESTED

9. The Debtors regularly utilize the services of various attorneys, accountants, financial advisors, and similar professionals in the ordinary course of their business operations (each an "Ordinary Course Professional" and, collectively, the "Ordinary Course Professionals"). Given the remarkable size and complexity of the Debtors and their business operations, it is unsurprising that the engagement and utilization of numerous professionals on a nationwide (and, in some cases, global) basis is necessary. The Ordinary Course Professionals provide services to the Debtors on numerous discrete matters unrelated to these chapter 11 cases, including, but not limited to, general litigation, employment and labor law, First Amendment law, media law and FCC compliance, intellectual property law, real estate, accounting, auditing, and tax matters. A non-exclusive list of the Debtors' current Ordinary Course Professionals is attached hereto as Exhibit A. Other Ordinary Course Professionals have been, or may be, utilized by the Debtors from time to time.

10. The Debtors hereby seek authority to continue to utilize the services of the Ordinary Course Professionals postpetition without the necessity of filing formal applications for the employment and compensation of each Ordinary Course Professional pursuant to sections 327, 329, 330 and 331 of the Bankruptcy Code. In the ordinary course of the Debtors' business, they utilize approximately seventy-three (73) different sets of counsel and accounting advisors, as set forth on Exhibit A hereto. It would be prohibitively expensive and administratively

burdensome to both the Debtors and this Court to request each such Ordinary Course Professional to apply separately for approval of its employment and compensation. Furthermore, as discussed in ¶¶ 17-20 below, the Debtors do not believe that section 327 of the Bankruptcy Code requires Bankruptcy Court approval for retention of the Ordinary Course Professionals, but they nevertheless seek the relief requested herein out of an abundance of caution.

11. The Debtors request that they be permitted to employ and retain the Ordinary Course Professionals on terms substantially similar to those in effect prior to the Petition Date, but subject to the terms and conditions described herein. The Debtors represent that: (a) they wish to employ the Ordinary Course Professionals as necessary for the day-to-day operations of the Debtors' businesses; (b) the fees and expenses incurred by the Ordinary Course Professionals will be monitored by the Debtors' in-house legal and business personnel and will be kept to a minimum; and (c) the Ordinary Course Professionals will not perform substantial services relating to bankruptcy matters without further permission of the Court.

## EMPLOYMENT AND COMPENSATION PROCEDURES

12. The Debtors propose that the Court approve the following procedures for the retention and compensation of Ordinary Course Professionals (the "OCP Procedures"):[3]

(a) Following the submission by an Ordinary Course Professional of (i) an OCP Affidavit (as defined herein) and (ii) a monthly invoice setting forth in reasonable detail the nature of the services rendered by such Ordinary Course Professional, the Debtors shall be authorized to pay, without the requirement of Court approval, 100% of the post-petition fees and expenses incurred by such Ordinary Course Professional, provided that the fees incurred by such Ordinary Course Professional (excluding expenses) do not exceed the amount specified on Exhibit A per month on average over the prior rolling three-month period with respect to each Ordinary Course Professional (the "Monthly Cap").

---

[3] The OCP Procedures will not apply to attorneys or other professionals specifically retained or to be retained by the Debtors pursuant to separate orders of this Court.

5

(b) In the event that the fees incurred and invoiced by any Ordinary Course Professional exceed the monthly cap set forth in clause (a) above, such Ordinary Course Professional shall be required to seek this Court's approval of all such fees in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and applicable orders of the Court.

(c) Each Ordinary Course Professional shall file with the Court and serve upon (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Committee, (iii) counsel to the Debtors, (iv) the administrative agent for the Debtors' prepetition loan facilities; and (v) the administrative agent for the Debtors' postpetition loan facility (collectively, the "Notice Parties") an Affidavit of Ordinary Course Professional (the "OCP Affidavit"), in substantially the form attached hereto as Exhibit B, on or before the later of (i) 30 days after the entry of an order by this Court granting the Motion; or (ii) thirty (30) days from commencing post-petition services to the Debtors.

(d) The Notice Parties shall have ten (10) days after the receipt of each OCP Affidavit (the "Objection Deadline") to object to the Debtors' employment and compensation of such Ordinary Course Professional. Any objecting party shall serve any such objection upon each of the Notice Parties and the respective Ordinary Course Professional on or before the Objection Deadline. If any such objection cannot be consensually resolved within ten (10) days of its receipt by the Debtors, the objection shall be scheduled for a hearing before the Court at the next regularly scheduled omnibus hearing date or such other date otherwise agreeable to the parties thereto. If no objection is received from any of the Notice Parties by the Objection Deadline with respect to any particular Ordinary Course Professional, the Debtors shall be authorized to employ and compensate such Ordinary Course Professional in accordance with the OCP Procedures.

(e) Commencing on March 31, 2009, and on a quarterly basis thereafter so long as a plan of reorganization has not become effective, the Debtors shall file with the Court and serve upon the Notice Parties a statement that includes the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the previous quarter; and (c) a general description of the services

                    rendered by such Ordinary Course Professional during the previous quarter.

      (f)      The Debtors reserve the right to supplement the list of Ordinary Course Professionals in <u>Exhibit A</u> hereto from time to time, in their discretion, as necessary to add or remove Ordinary Course Professionals without the need for further Court approval. In such event, the Debtors will file a supplemental list of Ordinary Course Professionals with this Court and serve it on the Notice Parties. If no objection is received from any of the Notice Parties by the Objection Deadline with respect to the supplemental list of Ordinary Course Professionals, the Debtors shall be authorized to employ and compensate such additional Ordinary Course Professionals in accordance with the OCP Procedures. In the event any Ordinary Course Professional exceeds or expects to exceed the Monthly Cap on an ongoing basis, the Debtors reserve their rights immediately to seek the retention of such Ordinary Course Professional by separate application pursuant to the relevant provision(s) of the Bankruptcy Code and applicable orders of this Court.

        13.     The Monthly Caps proposed by the Debtors for the various Ordinary Course Professionals range from $1,000 to $50,000 per Ordinary Course Professional, with a median Monthly Cap of $11,250 and an average Monthly Cap overall of less than $18,500.[4] The Debtors submit that while certain of the Monthly Caps exceed those established in other chapter 11 cases in this District, the proposed Monthly Caps are facially reasonable in light of the extraordinary size and scope of the Debtors' businesses and their chapter 11 cases, which are the largest non-financial chapter 11 cases ever commenced in this District in terms of assets. See BankruptcyData.com, <u>20 Largest Public Company Non-Financial Bankruptcy Filings, 1980-Present</u>, http://bankruptcydata.com/Research/ Largest_Overall_Non-Financial.pdf (last visited Dec. 15, 2008). The Debtors' businesses are simply far larger even than the "normal" complex

---

[4] The Debtors reserve the right, in any supplemental list of Ordinary Course Professionals filed with the Court and served on the Notice Parties as set forth above, to increase or decrease the Monthly Cap applicable to any particular Ordinary Course Professional(s); provided, however, that the Monthly Cap for any Ordinary Course Professional whose Monthly Cap on <u>Exhibit A</u> filed herewith is $35,000 or less shall not be permitted to have their Monthly Cap increased above $35,000 without further order of the Court.

7

corporate families that commence chapter 11 proceedings in this District and, accordingly, the ordinary course of their business and their need for legal, accounting, and similar services is larger than is customary for chapter 11 cases here. It follows that the scope of the relief granted herein should also take into account these unusual circumstances.

14. Moreover, the proposed Monthly Caps are reasonable in light of the Debtors' historical need to employ and utilize significant numbers of attorneys, accountants, and similar professionals in operating their businesses on a daily basis on matters unrelated to their chapter 11 proceedings. Rather than seek a one-size-fits-all Monthly Cap for each Ordinary Course Professional, the Debtors have established the Monthly Caps for each Ordinary Course Professional with reference to the historical utilization of the relevant firms and their projected future usage. Recent orders of the Court in other cases in this District have permitted a variable range of monthly caps on this basis. See, e.g., In re Pierre Foods, Inc., Case No. 08-11480 (KG) (Bankr. D. Del. Aug. 13, 2008) ($30,000 monthly cap per professional with one firm permitted a $55,000 cap); In re JHT Holdings, Inc., Case No. 08-11267 (BLS) (Bankr. D. Del. July 21, 2008) ($30,000 monthly cap per professional with one firm permitted a $65,000 cap); In re Tropicana Entm't LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) ($35,000 monthly cap per professional with one firm permitted a $90,000 cap); In re Holley Performance Prods., Inc., Case No. 08-10256 (PJW) (Bankr. D. Del. Mar. 17, 2008) ($50,000 monthly cap per professional).[5]

15. Accordingly, the Debtors submit that the employment and compensation of the Ordinary Course Professionals, subject to the OCP Procedures, should be approved.

## BASIS FOR RELIEF REQUESTED

---

[5] The proposed Monthly Caps herein are, however, more modest than those recently approved in other large chapter 11 cases. See, e.g., In re Lehman Bros. Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008) ($150,000 monthly cap per ordinary course professional).

16. The Debtors and their estates would be well served by the retention of the Ordinary Course Professionals because of such professionals' past relationships with and understanding of the Debtors and their business operations. While some of the Ordinary Course Professionals may wish to continue to represent the Debtors on an ongoing basis, others may be unwilling to do so if the Debtors cannot pay them in the ordinary course of business. If the knowledge and expertise of any Ordinary Course Professional with respect to the particular areas and matters for which it was responsible prior to the Petition Date are lost, the Debtors will undoubtedly incur additional and unnecessary expenses as other professionals without such background and expertise will have to be retained to assist the Debtors with their business operations. The Debtors respectfully submit that it is in the best interest of all parties in interest in these cases to avoid any disruption in the professional services rendered by the Ordinary Course Professionals in the day-to-day operations of the Debtors' businesses. For these reasons, the OCP Procedures should be approved.

17. The Ordinary Course Professionals will not be involved in the administration of the Debtors' chapter 11 cases. Instead, the Ordinary Course Professionals will provide professional services in connection with the Debtors' ongoing business operations – i.e., services which they performed for the Debtors prior to the commencement of these cases. To the extent that the services provided by the Ordinary Course Professionals may involve some element of administration of the Debtors' estates, that involvement will be minimal. Consequently, the Debtors do not believe that the Ordinary Course Professionals are "professionals," as that term is used in section 327 of the Bankruptcy Code, whose retention must be approved by the Court.

18. Although the term "professional" is not defined in the Bankruptcy Code, courts in this District and others consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code and, therefore, must be retained with Court approval:

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, ..., (5) the extent of the employee's involvement in the administration of the debtor's estate, ... and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term.

In re Am. Tissue, Inc., 331 B.R. 169, 173 (Bankr. D. Del. 2005) (quoting In re First Merchants Acceptance Corp., 1997 WL 873551 at *2 (D. Del. 1997)). The First Merchants court went on to state that "[i]n applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in toto.". First Merchants, 1997 WL 873551 at *3.

19. Applying the above analysis compels the conclusion that the Ordinary Course Professionals are not "professionals" within the meaning of the Bankruptcy Code. None of the Ordinary Course Professionals will be involved in the development of the plan of reorganization in these cases, and all of the Ordinary Course Professionals' services relate to the day-to-day maintenance of the Debtors' business operations. The Ordinary Course Professionals are not entrusted with administering significant (or, in most cases, any) elements of the Debtors' estates, nor are they controlling or managing assets that are central to the Debtors' reorganization. Although the Ordinary Course Professionals, who are comprised of many

prominent legal and accounting advisors, have considerable specialized knowledge and skill, that does not counterbalance the preceding factors such that the Ordinary Course Professionals properly constitute "professionals" under the Bankruptcy Code.[6]

20. Nevertheless, out of an abundance of caution, and recognizing that attorneys and accountants are customarily retained in large, complex chapter 11 cases as ordinary course professionals, the Debtors seek the relief requested in this Motion to avoid any subsequent controversy regarding the Debtors' employment and compensation of the Ordinary Course Professionals during the pendency of these chapter 11 cases. Notwithstanding the relief requested in this Motion or the inclusion of any Ordinary Course Professionals on Exhibit A hereto, the Debtors will seek specific Court authority under section 327 of the Bankruptcy Code to employ any professionals involved in the actual administration of these chapter 11 cases.

21. Retention and payment plans similar to that proposed herein have been approved by this Court in numerous other chapter 11 cases. See, e.g., In re Hilex Poly Co., LLC, Case No. 08-10890 (KJC) (Bankr. D. Del. 2008); In re Charys Holding Co., Inc., Case No. 08-10289 (BLS) (Bankr. D. Del. 2008); In re Wickes Holdings, LLC, Case No. 08-10212 (KJC) (Bankr. D. Del. 2008); In re Global Motorsport Group, Inc., Case No. 08-10192 (KJC) (Bankr. D. Del. 2008); In re Friedman's, Inc., Case No. 08-10161 (CSS) (Bankr. D. Del. 2008); In re

---

[6] Moreover, many courts that have interpreted that term have applied the provisions of section 327 of the Bankruptcy Code only to those parties that provide services relating directly to the bankruptcy proceeding or centrally to the Debtors' business. See, e.g., In re Cyrus II P'ship, 2008 WL 3003824, *2-3 (Bankr. S.D. Tex. 2008) (professionals under section 327 are those parties central to the reorganization of the estate); In re Artra Group, Inc., 308 B.R. 858, 860 (Bankr. N.D. Ill. 2003) (a party is not a professional under section 327 if it provides services that would be necessary outside of bankruptcy); In re Argus Group 1700, 199 B.R. 525, 534 (Bankr. E.D. Pa. 1996) ("the term 'professional person' is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate"); In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals involved in the actual reorganization effort, rather than the debtor's ongoing business affairs, require court approval under section 327); In re That's Entertainment Mktg. Group, Inc., 168 B.R. 226, 230 (N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate requires prior court approval under section 327). Here, the Ordinary Course Professionals are being retained to render essentially identical services to the Debtors that they were performing on the Debtors' behalf prepetition.

Buffet Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. 2008); In re Pac-West Telecomm, Inc., Case No. 07-10562 (BLS) (Bankr. D. Del. 2007); In re Mortgage Lenders Network USA, Inc., Case No. 07-10146 (PJW) (Bankr. D. Del. 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. 2006); In re Cone Mills Corp., et al., No. 03-12944 (MFW) (Bankr. D. Del. October 27, 2003); In re SHC, Inc., et al., Case No. 03-1002 (MFW) (Bankr. D. Del. July 25, 2003); In re Maxxim Medical Group, Inc., et al., Case No. 03-10438 (PJW) (Bankr. D. Del. 2003); In re Budget Group Inc., et al., Case No. 02-12152 (MFW) (Bankr. D. Del. 2002). The Debtors submit that similar authorization is appropriate in these chapter 11 cases.

## NOTICE

22. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Committee; (vi) the administrative agent for the Debtors' prepetition loan facilities; (vii) the administrative agent for the Debtors' postpetition loan facility; (viii) the indenture trustee for the Debtors' prepetition notes; and (ix) all parties having requested notices in the Debtors' chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

23. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to employ and compensate the Ordinary Course Professionals on a post-petition basis in accordance with the OCP Procedures, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 26, 2008

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION