IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, et al., | ) | Case No. 08-13141 (KJC) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Re: D.I. 11 and 61** |

OPPOSITION OF PEPCO ENERGY SERVICES, INC.
TO DEBTORS' MOTION FOR AN INTERIMORDER AND A FINAL ORDER
PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE
(I) PROHIBITING UTILITY PROVIDERS FROM ALTEING, REFUSING, OR
DISCONTIUING UTILITY SERVICES, (II) DEEMING UTILITY PROVIDERS
ADEQUATELYASSURED OFFUTURE PERFORMANCE, AND (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

Pepco Energy Services, Inc. ("PES"), by and through its undersigned counsel, hereby files this Opposition, pursuant to Section 366 of the Bankruptcy Code, opposing the relief requested in the Debtors' Motion for an Interim Order and a Final Order Pursuant to Sections 105(a) and 366 of the Bankruptcy Code: (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment (D.I. 11) ("Motion" ), and in support thereof, respectfully states as follows:

### General Background

1. On or about December 8, 2008, the Debtors filed a voluntary petition in this proceeding.

2. The Debtors also filed the Motion on the same date.

1

3. PES is a competitive energy supplier, being a reseller of electricity and gas purchased at wholesale and delivered to the end user through the electric distribution system owned and operated by a local utility, and PES is a provider of various consulting services.

4. PES does not manufacture electricity or gas, it does not harness power and it has no monopoly in the marketplace.

5. If PES ceased providing its services, the Debtors could acquire power from a local utility or another competitive energy supplier.

6. The Debtors[1] entered into an executory contract with PES entitled *Master Electric Sales Agreement* ("Agreement"). See Exhibit A attached hereto.

7. PES is uncertain as of this date as to the prepetition amount owed by the Baltimore Newspaper Networks, Inc., the contracting party under the Agreement.

8. The Debtors did not provide a deposit for PES's services.

9. In the Motion, the Debtor identifies PES as one of approximately two hundred (200) entities that constitute a utility company under Section 366 although PES is simply not a utility company, which term is not defined in Section 366 of the Code.

10. In Footnote 3 of the Motion, the Debtors reserve the right to argue that any of the entities listed on Exhibit A of the Motion are not "utilities" within the meaning of Section 366(a) of the Bankruptcy Code.

11. On Exhibit A, the Debtors identified three (3) accounts with PES, Acct. Nos. 103-5925713 (2); and 103-5925521.

---

[1] The contracting party was the Baltimore Newspaper Networks, Inc. d/b/a The Baltimore Sun.

12.     The Debtors also identified their local utility service provider, Pepco, with eight (8) accounts with the Debtors.

13.     The Debtors propose to deposit an initial sum equal to fifty percent (50%) of the Debtors' estimated average monthly cost of Utility Services into an interest-bearing, newly created, segregated account as an "Adequate Assurance Deposit."

Argument

I.

PES is Not a "Utility"

14.     Section 366 provides that

>   (a)     Except as provided in subsections (b) and (c) of this section, a *utility* may not alter, refuse, or discontinue service to, or discriminate against, . . . the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such *utility* for service rendered before the order for relief was not paid when due. (emphasis added)
>
>   (b)     Such *utility* may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment in the form of a deposit or other security, for service after such date . . .
>
>   (c)     . . .
>   (2)     Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

15.     The word "utility" is not defined by the Bankruptcy Code. In determining the meaning of the word "utility," courts have been provided guidance from the legislative history regarding § 366. Both the House Judiciary Report and the Senate Report state:

> This section gives debtors protection from a cutoff of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have **some special position with respect to the debtor**, such as an electric company, gas supplier, or telephone company **that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.**

*See* In Matter of Darby, 470 F.3d 573, 574 (5th Cir. 2006); In re Monroe Well Service, Inc., 83 B.R. 317, 321 (Bankr. E.D. Pa. 1988); In re Kiriluck, 76 B.R. 979, 982 (Bankr. E.D. Pa. 1987); In re Moorefield, 218 B.R. 795, 796 (Bankr. M.D.N.C. 1997); and In re One Stop Realtour Place, Inc., 268 B.R. 430, 436 (Bankr. E.D. Pa. 2001) (Chapter 7).

16. The court in Moorefield specifically addressed whether the provider of a cable television wire service constitutes a utility pursuant to Section 366 of the Code. In ruling, and even though cable television is ordinarily a monopoly, the court held that Time Warner is not a utility because cable television is not as important as the other utilities named in the legislative history of section 366. *See* In re Moorefield, 218 B.R. 795 (1997) (Chapter 13). Also see In the Matter of Darby, 470 F.3d 573 (2006) (Chapter 13).

17. The court in One Stop Realtour Place held that Allegiance, a telephone carrier, was a "utility" pursuant to section 366. In ruling, the court held that it was a utility because the evidence presented indicated that the debtor could not easily obtain comparable services and that it was a utility within the ordinary meaning because it provided service to the public and was subject to regulation by the FCC and the Pennsylvania PUC. One Stop Realtour Place, Inc., 268 B.R. at 436. Similarly, in another decision, the court was concerned, under Section 366, with whether the debtor would be forced to incur a large and very possibly prohibitive expense in the form of rewiring in order to seek electrical service from another source. See In re Good Time Charlie's Ltd., 25 B.R. 226, 227 (Bankr. E.D.Pa. 1982).

18.	Section 366 of the Bankruptcy Code simply does not apply to a competitive energy supplier of electricity and gas. A competitive energy supplier is basically a reseller of electricity and gas that it purchases at wholesale and which it sells to consumers at unregulated, market rates in competition with other suppliers and the supply service available from the local utility (often referred to as "standard offer service" or "provider of last resort" service). The competitive energy supplier does not hold a monopoly power, it does not possess a state-granted franchised service territory, the commodity energy service is readily available through a local utility or from other competitive suppliers, and the cost of this service to the Debtors is no higher than it is to any other comparable utility customer in the geographic territory served by the Debtors' utility companies.

II.

Section 365 v. Section 366

19.	Most important, Section 366 is designed to provide for continued services from a utility with monopoly power after the filing of a petition under Chapter 11.

20.	Section 366 was not intended to address contracts with competitive energy suppliers.

21.	The protections provided by Section 366 to a *utility* address adequate assurance of payment of future obligations - it does not address prepetition obligations of the debtor - seemingly because of the monopoly strength of a utility and the protections to the public, and the utility, associated with such monopoly power.

22.	The Debtors regularly accumulate a significant debt each month to PES, and greater amounts during higher usage months, for PES's competitive electricity and gas.

23. PES does not receive the benefits and protections provided by the government to a utility.

24. In the event the Debtors want to compel PES to continue providing its services, then the Debtors must satisfy the requirements of Section 365, if applicable, including, without limitation:

    A. Comply with all of the terms of the PES contract under Section 365;

    B. Assume its contract with PES under Section 365(b)(1);

    C. Cure or promptly cures the prepetition arrearage to PES under Section 365(b)(1)(A); and

    D. Provide adequate assurance of future performance to a non-utility under Section 365(b)(1)(C).

25. The Court should not impose the provisions of Section 366 on PES since:

    A. PES is not entitled or required to be treated as a utility under Section 366 of the Code;

    B. PES does not want adequate assurance of future performance equivalent to a mere two (2) weeks of average usage. Rather, adequate protection in the form of two (2) months' average commodity charges is more appropriate. See e.g. In re Stagecoach Enterprises, Inc., 1 B.R. 732 (Bank. M.D. Fl. 1979);

    C. PES does not want to be exposed to the high risk of the Debtors accumulating a substantial post-petition administrative claim to PES; and

    D. PES is willing to forego receiving the proposed payment of an adequate assurance of future performance under these circumstances.

## Conclusion

For the foregoing reasons, PES requests that the Court deny the Motion with respect to PES and grant such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

*/s/ James M. Hoffman*
James M. Hoffman, Esquire
Goren, Wolff, Orenstein, & Hoffman, LLC
15245 Shady Grove Road, Suite 465
Rockville, MD 20850
(301) 984-6266
(301) 816-0592
jhoffman@gwolaw.com


SULLIVAN · HAZELTINE · ALLINSON LLC

William D. Sullivan (No.2820)
4 East 8th Street, Suite 400
Wilmington, DE  19801
Tel: (302) 428-8191
Fax: (302) 428-8195

*Counsel for Pepco Energy Services, Inc*