# Exhibit A



## Master Electric Sales Agreement

This Master Electric Sales Agreement ("Agreement"), (together with all hereby incorporated confirmation agreements ("Confirmation") relating to this Agreement, is entered into this 9th day of March, 2004 by and between Pepco Energy Services, Inc. ("PES" or "Seller") a Delaware Corporation, and The Baltimore Sun with its principal place of business located at 501 North Calvert Street Baltimore, MD 21278 ("Buyer"). Both Seller and Buyer may hereinafter be referred to singly as "Party" or jointly as "Parties."

### Background:

This Agreement sets forth the terms and conditions for electricity sales transactions entered into by Buyer and Seller during the duration of this Agreement; it does not obligate the Parties to enter into any particular electricity sales transactions. Each transaction specific contract between the Parties ("Contract"), under this Agreement, will consist of (i) this Agreement, and (ii) a written Confirmation signed by both Buyer and Seller.

A Confirmation shall be a written document that (i) confirms a written or oral agreement between the Parties, and (ii) is substantially in the form of the Confirmation. The Confirmation shall, at a minimum, identify the price for the Electricity ("Contract Price"), the delivery point, and the term of the Contract.

### Terms and Conditions:

1) <u>Nature of Services</u>. This agreement is based on serving 100% of the electric use of Buyer's facilities and the historic electricity use and load profile information provided. Seller requires that Buyer provide six months notice, in writing, of any material change in usage including, but not limited to, closing part or all of the facilities covered under this agreement, expansion of the facilities covered under this agreement, or a significant change in the operation covered under this agreement. In the event of breach of this agreement, Buyer shall pay Seller damages from the loss, if any, in the market value of the electric supply procured by Seller to meet Buyer's electricity requirements compared to the contract value if any, as determined by Seller in a commercially reasonable manner. Damages represent a reasonable estimate of costs that are difficult to ascertain, and in no way be construed or interpreted as a penalty.

2) <u>Quality</u>. Seller unconditionally guarantees delivery of the electricity supply to Buyer's delivery point(s), subject only to service supply interruptions that would otherwise occur if Buyer continued to be supplied by the EDC. Seller warrants that the quality of the electricity will be the same as that supplied by the EDC.

3) <u>Price</u>. The Contract Price shall be agreed to by Buyer and Seller for each specific Contract, and shall be expressed in the Confirmation.

4) <u>Term</u>. This Agreement shall remain in full force and effect for one year from the date executed, and from month to month thereafter unless terminated by either Party with fifteen (15) days advance notice; provided, however, that if one or more Contracts are in effect, termination shall not be effective until the expiration or latest completion date of such Contracts.

5) <u>Transmission</u>. Transmission shall be provided by Seller at the same price charged by the EDC unless otherwise specified in the Confirmation.

6) <u>Delivery</u>. Sale and Delivery of electric generation service will be made to a point or points on the PJM Transmission Grid identified by the EDC for such deliveries ("Delivery Point(s)"). Delivery to meters at each specified facility will be made by the EDC.

7) <u>Damages</u>.

   a) If Seller fails to deliver to any of the Delivery Points all or part of the electric power required by the Buyer as set forth herein for any reason other than Force Majeure, Buyer may purchase electric power from its EDC or alternative supplier to cover the amount the Seller failed to supply for the period of such failure. Buyer agrees to use its best efforts to obtain such replacement electric power at a reasonable cost. Unless Seller's failure to deliver all or part of the electric power required by Buyer hereunder is excused by an event of Force Majeure, Seller shall reimburse Buyer for any such purchase of replacement electric power in an amount equal to the positive difference, if any, between the total cost to Buyer of covering such purchases (including any incidental costs such as administrative costs, brokerage fees, transmission or increased tax costs) and the cost to Buyer had Seller fully performed its obligations hereunder. Unless Seller's failure to deliver all or part of the electric power required by Buyer hereunder is excused by an event of Force Majeure, Seller further agrees to pay any penalties imposed by the EDC or other competent authority (including, without limitation, power pool or power exchange) for such failure to deliver.

1

b) Each Party shall exercise reasonable efforts to minimize such damages.

c) In no event shall either Party be liable to the other under this Agreement or any Contract formed hereunder for any incidental, indirect, special, punitive or consequential damages other than liquidated damages specified above.

8) <u>Billing and Payment</u>. Unless otherwise specified in the Confirmation, while receiving generation and transmission service from Seller, Buyer will receive an invoice from the EDC describing Seller's charges for the electricity delivered in the previous period. Seller's charges will appear as a single line item on Buyer's EDC's bill. Buyer's local EDC will invoice Buyer for all electricity distribution charges, including, without limitation, customer charges, distribution service energy and demand charges, meter charges, and transition charges (if any). Buyer is responsible for payments Buyer owes to the local EDC for distribution and other related costs that have been authorized by the State Agency. When receiving electric service from Seller, Buyer shall pay Seller the total amount due as shown on the monthly billing within 30 days from the date of billing. Any amount not paid by such due date will be past due and will accrue interest at a monthly rate of 1.0% or maximum allowable under law. Any amount paid on past due accounts will first be applied to interest and then to principal.

9) <u>Notices</u>. All invoices, statements, notices and communications made pursuant to the Contract shall be made as follows:

To Seller:
Pepco Energy Services, Inc.
Attn: Contract Administrator
1300 North 17th Street
Suite 1600
Arlington, VA 22209
Phone: (703) 253-1800
Fax:    (703) 253-1697

To Buyer:
The Baltimore Sun
Attn:
501 North Calvert Street
Baltimore, MD 21278

Phone:410-332-6000
Fax:

10) <u>Taxes</u>. If any of Buyer's accounts are used for tax-exempt purposes, check the "Tax Exempt" box and provide completed exemption certificates. Tax owed includes any sales, gross receipts or other tax appropriately billable for the sale of products or services to the delivery point under this agreement in the jurisdiction of the sale. Exemption from taxation is extended only with respect to sales covered by certificates of exemption provided to Seller by the Buyer and deemed valid under the laws of the jurisdiction of the sale. Taxes appropriately billed or billable in a jurisdiction, including the effect caused by any changes in the tax law or tax rates during the term of this agreement, are the responsibility of the Buyer and remain a liability of the Buyer until paid to Seller. Liabilities imposed in this Section shall survive the termination of this Agreement, and of any Contract formed hereunder.

**Check here for Tax Exempt Accounts ☐**
**Identify Tax-Exempt account numbers on Confirmation**

11) <u>Financial Responsibility</u>.

a) In the event that either Party shall (i) make an assignment or general arrangement for the benefit of creditors; (ii) default in the payment or performance of any obligation to the other Party; (iii) file a petition or otherwise commence a proceeding under any bankruptcy or similar law for the protection of creditors, or have such a proceeding commenced against it; (iv) otherwise become bankrupt or insolvent; (v) become unable to pay its debts as they become due; or (vi) fail to give adequate assurance of its ability to pay or otherwise perform its obligations under the Contract within forty-eight (5) days of a reasonable request by the other Party, then the other Party shall have the right to either withhold and/or suspend deliveries, or terminate any Contracts without prior notice, in addition to any and all other remedies available hereunder or under law. Notwithstanding the above, in addition to any and all other remedies available under each Contract and under law, Seller may immediately suspend deliveries to Buyer hereunder in the event that Buyer has not paid any undisputed amount due Seller hereunder on or before the second day following the date such payment is due. Each Party reserves all rights to set-offs, counterclaims, and other defenses to which it is or may become entitled under this Agreement.

b) Seller may terminate this Agreement with 10 days written notice if Buyer experiences, in Seller's reasonable opinion, a material adverse change in Buyer's credit, financial condition, or ongoing business activities that jeopardize Seller's ability to collect payment under this Agreement. Notwithstanding, Buyer will have 10 days from such notice to provide Seller with adequate collateral to ensure payment in order to avoid Contract termination.

c) Seller may, in addition to seeking damages for any breach of this Agreement, immediately terminate Buyer's service, without further notice if Buyer fails to pay any amount due in accordance with this agreement, fails to provide required financial assurance or otherwise fails to fully comply with the terms and conditions of the Agreement. Notwithstanding, Buyer will have 5 days to cure any such contract deficiency in order to avoid Contract termination.

2.

12) Force Majeure. Force Majeure is the only excuse for non-performance of this Agreement. Except for payment obligations already incurred, a Force Majeure event will, upon notice, excuse the Parties' performance during the event. Force Majeure means any event beyond the reasonable control of a Party, which prevents, in whole or in part, that Party's performance or obligations hereunder. Force Majeure includes, but is not limited to: act of God; strike; lockout; act of the public enemy; war; blockade; riot; fire, storm, flood; freeze; explosion; and governmental restraint. Force Majeure includes Force Majeure events of the EDC or other entity we use to deliver electric generation supply to Buyer and curtailment or disruption by the EDC. The party claiming excuse will promptly advise the other party of such Force Majeure event and shall seek to remedy the occurrence.

13) Governing Law. This Agreement, and all Contracts in accordance with this Agreement, shall be construed in accordance with the laws of the State of Maryland, without regard to its choice of law rules.

14) Miscellaneous.

   a) Buyer is responsible for installing, maintaining and operating all equipment required by the EDC to receive electric service, unless Buyer assigns that responsibility to Seller by separate agreement.

   b) This Agreement and any Contracts hereto shall be binding upon and inure to the benefit of the successors, assigns, and heirs of the Parties hereto. No assignment of the rights or obligations of either Party under this Agreement, or under any Contract, may be made without the prior written consent of the other Party; such consent is not to be unreasonably withheld.

   c) Failure by either Party to enforce any term or condition of this Agreement, or of any Contract hereto, shall not constitute a waiver of any other or subsequent enforcement hereof.

   d) If a dispute arises between the Seller and Buyer ("Parties"), the dispute shall be submitted for final and binding arbitration to a single arbitrator selected by the American Arbitration Association ("AAA"). The arbitration shall be conducted in accordance with the rules and procedures of the AAA and shall take place in the city closest to the Customer that has an office of the AAA. The costs of the arbitration shall be shared equally by the Parties.

   e) Liability as described in Item 7 of this agreement, is the sole and exclusive remedy and all other remedies or damages at law or in equity, except for anticipatory repudiation claims, are expressly waived. Neither party will be liable for consequential, incidental, punitive exemplary or indirect damages, lost profits or any other business interruption damages, in tort, contract or otherwise. Indemnities and limitations of liability are without regard to cause, including a party's sole, joint, concurrent, active or passive negligence, but neither party will be liable for any claims resulting from the other party's gross negligence, willful misconduct or bad faith.

   f) Seller may pass through any incremental costs associated with any material changes to the regulations which impact Sellers costs, with 30 days notice identifying the change.

15) Confidentiality. The Buyer and Seller shall keep the terms and conditions of this Agreement confidential except as may be required in order to effectuate the terms of the Agreement or to meet the lawful requirements of any regulatory body having jurisdiction. All proprietary information furnished to one party by the other herein shall be treated as confidential and as the sole property of the party providing such information and shall not be used by the receiving party for any purpose not expressly authorized under this agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their authorized representatives as of the date first above written.

Buyer: The Baltimore Sun

By: _____  9/9/04

DIRECTOR OF FACILITIES

Pepco Energy Services, Inc.

By: _____

**CARYN L. BACON**
**SENIOR VICE PRESIDENT**

3



## Confirmation

*This serves to confirm the following Contract entered into by and between Buyer and Pepco Energy Services, Inc. and is subject to the Master Electric Sales Agreement agreed to and entered into by the parties hereto.*

| | |
|---|---|
| *Date:* | September 8, 2004 |
| *Buyer:* | The Baltimore Sun |
| *Seller:* | Pepco Energy Services, Inc. |
| *PES Representative:* | **Don Patch** |
| *Type of Transaction:* | Electric Service – Full Requirements<br>The prices offered are based on serving **100% of the electric use** of Buyer's facility, and that the historic electricity use and load profile information provided is characteristic of Buyers' facility use. |
| *Point of Delivery:* | BGE Zone |
| *Account Number:* | Type II Account Numbers: **3234624011, 3859624019, 9517152018, 9851913364** |
| *Billing Address:* | *501 North Calvert Street*<br>Baltimore, MD 21278 |
| *Billing:* | Buyer selects dual billing by checking here ☐. |
| *Term of Contract and Pricing:* | First Available meter read date (MRD) to January 2005 MRD (3 ᴏᴋ-ᴊᴇꜩ Billing months)<br>**5.388** cents per kwh      ᴏᴋ-ᴊᴇꜩ<br><br>Electric Service Price is defined as the cents per kwh for Generation and Transmission Service to the Point of Delivery.<br><br>On-Peak is the hours of 7:00 AM to 11:00 PM Monday through Friday excluding NERC holidays. Off-Peak is all other hours. |
| *Option to extend:* | PES, with mutual agreement from the Buyer, may continue electric service to Buyer, with written notice to Buyer at any time during the term of this Confirmation, if the electric service price for an |

additional four (4) Billing Months is less than the utility default service rate, Standard Offer Service or Price to Compare.

Buyer warrants that all information contained in this Confirmation is correct and true. Seller shall not be responsible for any incorrect information that would prevent delivery of electric supply to Buyer.

*Prices within this Confirmation are valid until 4 PM on the date shown within this Confirmation. To indicate acceptance, Buyer must sign below and return to Pepco Energy Services at fax number 703-253-1687.*

FoR`
Buyer: The Baltimore Sun

By: _Richard J. Donati_

Title: _Director of Facilities_

Signature: _____

Date: _9/8/04_

Seller: Pepco Energy Services, Inc.

By:_____CARYN L. BACON_____
          SENIOR VICE PRESIDENT

Title: _____

Signature: _Caryn P. B_

Date: _9/9/04_



## *Exhibit 1*

*This serves as a confirmation for sale of electric service to The Baltimore Sun by Pepco Energy Services, Inc. and is subject to the Master Electric Sales Agreement agreed to and entered into by the parties hereto. Prices contained herein are subject to changes in market conditions prior to acceptance.*

| | |
|---|---|
| *Date:* | September 15, 2006 |
| *Buyer:* | The Baltimore Sun |
| *Seller:* | Pepco Energy Services, Inc. (PES) |
| *PES Marketing Representative:* | Don Patch |
| *Product:* | Generation and Transmission Service to the Point of Delivery |
| *Contract Term:* | December 2006 Meter Read Date (MRD) to December 2009 MRD.   6|C-JE3 |
| *Point of Delivery:* | PJM – BGE Zone |
| *EDC accounts:* | 5119920012 and 7421002563 |
| *Billing:* | Buyer will be dual billed for each account: one bill from the EDC the other from PES. PES's invoice under this confirmation is to be sent to:<br><br>The Baltimore Sun<br>501 North Calvert Street<br>Baltimore, MD 21278<br>Attn: Richard Donati, Director of Facilities<br>410-332-6306 |
| *Scope of Service:* | 100% of BUYER's Electricity Purchase Requirements (where Electricity Purchase Requirements is defined as facility load minus facility generation.) |
| *Product and Pricing:* | Buyer shall purchase from Seller the electric service to meet 100% of BUYER's generation and transmission requirements net of BUYER's on-site generation. "On Peak" is defined as 7:00 am to 10:59 PM on weekdays excluding NERC holidays and weekends. "Off Peak" is 11:00 PM to 6:59 am weekdays, 12:00 AM to 11:59 PM weekends, and 12:00 am to 11:59 PM on NERC holidays. |

Service under this Confirmation will follow the LMP Pricing until such time that Buyer selects a Fixed Price. The choice to select a fixed price is at the sole discretion of Buyer.

A. **LMP Pricing** is described in Sections A.1 through A.7

    1. Hourly On-Peak and Off-Peak load following Electric Service in any amount- this product includes Energy only and does not cover the cost of Transmission Losses, Ancillary Services, Transmission Service and Installed Capacity. For this component, unless changed by the Buyer, Buyer shall pay Seller for the hourly energy at the Day-ahead Locational Marginal Price (LMP) for the PJM BGE zone grossed up for Distribution Energy Losses. Seller will schedule Buyer's load in the Day-Ahead market according to the best forecast of Buyer's requirements available to Seller. For scheduled load, the Buyer will pay the Seller the Day-Ahead Locational Marginal Price (LMP) for the PJM BGE zone grossed up for Distribution Energy Losses. In any event the minimum scheduled load under this provision will be the sum of fixed quantities of energy to which the parties have agreed pursuant to this confirmation and any subsequent confirmations for this account. This portion of pricing shall not apply to the purchase of any such fixed quantities of energy. For the positive difference between Buyer's scheduled load and actual load, Buyer will pay Seller the Real-time LMP for the PJM BGE zone grossed up for Distribution Energy Losses. For the negative difference between Buyer's scheduled load and actual load, Buyer will be credited the Real-time LMP for the PJM BGE zone grossed up for Distribution Energy Losses. This portion of pricing shall apply to Buyer's entire purchased load.

    2. Buyer shall pay Seller per MWh for all PJM Ancillary Services incurred by Seller associated with the purchase of energy for Buyer. These charges will be passed through to Buyer at cost. These charges are defined by PJM and include:
        Transmission Losses
        Regulation
        Operating Reserves
        PJM Scheduling, System Control and Dispatch Services
        RTO Scheduling, System Control and Dispatch Services
        Reactive Supply and Voltage Control from Generation Sources Services

    3. Buyer shall pay Seller a Transmission Service charge equal to the prevailing PJM OATT for PJM BGE Zone (reference PJM Transmission Tariff Attachment H-2 Annual Transmission Rates – Baltimore Gas and Electric Company, Item #1) without any markup times the Buyer's Transmission Obligation.

    4. Buyer shall pay Seller an Installed Capacity charge equal to the Price of capacity times Buyer's Capacity Obligation. The Price of capacity will be negotiated between Buyer and Seller prior to delivery.

    5. A PES fee of $1.25/MWh plus any amount of load curtailed under a qualified PJM Demand Side Response program, will be added to the Buyer's monthly bill.     *ok – JES*

    6. In accordance with PJM rules, Buyer agrees to not participate in any PJM Demand Side Response Program directly with PJM or any Curtailment Service Provider (CSP) without Seller's consent, and agrees to pay any cost charged to Seller by PJM associated with any such participation by Buyer.

2

7.  Seller will pay Buyer the Real-time LMP minus $1.25/MWh and associated ancillary charges for grossed up for Distribution Energy Losses for all electric export from the unless such export is scheduled in the day-ahead market, in such case the day-ahead LMP minus $1.25/MWh and associated ancillary charges will be paid to Buyer provided; however, that Seller receives suitable credit from PJM via properly and timely delivered eSchedule for amount of such export. Seller will take title to any such power at an LMP bus specified by Buyer prior to any export and all export pricing will be based upon the reconciled LMP for that bus provided by PJM. Buyer is not obligated to export power under this agreement at any time. Buyer represents that it meets all legal and regulatory conditions required to enter into any export power sales as described herein.

B.  Fixed Pricing is defined as a fixed price per MWh for all or a portion of Buyer's Electric Purchase Requirements. Seller agrees that upon Buyer's request it will provide offers to sell fixed price blocks of electricity per Buyer's defined request. Buyer has no obligation to accept such offers. To the extent that Buyer and Seller have agreed to any such Transactions the face value of each transaction will be added to the cost determined in Section A.1 herein. Seller agrees that it will, upon Buyer's request sell, i.e., liquidate, any fixed price block Transaction and any gain or loss on such transaction will be charged or credited, as appropriate, to the next invoice to the Buyer. Furthermore, Buyer reserves the right to solicit fixed price block offers from other wholesale suppliers, and Seller agrees that if Buyer desires to purchase/sell such fixed price blocks of power from another wholesale supplier that it will execute such purchase/sale on Buyer's behalf providing that Seller has an existing counterparty relationship with such wholesale supplier and that such wholesale supplier maintains suitable credit with Seller in Seller's sole discretion.

Buyer: The Baltimore Sun Company

By: _____

Name: Ric Domat / Steve Seidl

Title: Dir-Procurement / VP-Operations

Date: 9/22/06

Seller: Pepco Energy Services, Inc.

By: _____

Name: CARYN L. BACON

Title: SENIOR VICE PRESIDENT

Date: 9/29/06

3



### Exhibit #2

*This serves as a confirmation for sale of electric service to The Baltimore Sun ("Baltimore Sun") by Pepco Energy Services, Inc. and is subject to the Master Electric Sales Agreement agreed to and entered into by the parties hereto. Prices contained herein are subject to changes in market conditions prior to acceptance.*

| | |
|---|---|
| *Date:* | September 15, 2006 |
| *Buyer:* | The Baltimore Sun |
| *Seller:* | Pepco Energy Services, Inc. (PES) |
| *PES Marketing Representative:* | Don Patch |
| *Product:* | Energy Only |
| *Contract Term:* | 1/1/2007 – 12/31/07 |
| *Point of Delivery:* | PJM BGE Zone |
| *EDC accounts:* | EDC accounts 5119920012 and 7421002563 |
| *Billing:* | Buyer will be dual billed for the accounts listed above. Buyer shall receive a bill on a calendar month basis from Seller for the usage of the account listed above for Generation and Transmission Service. Energy purchased under this confirmation will be settled as described herein pursuant to Item #1 of this Exhibit. Seller's invoice under this confirmation is to be sent pursuant to the Master Agreement and Exhibit #1 as follows: |

The Baltimore Sun
501 North Calvert Street
Baltimore, MD 21278
Attn: Richard Donati, Director of Facilities
410-332-6306

| | |
|---|---|
| *Scope of Service:* | Buyer's fixed quantity, fixed price Electricity Purchase. |
| *Product and Pricing:* | Fixed quantity, fixed price power to Buyer to supplement Exhibit # 1 dated September 15, 2006. |

1

*Pricing for electric service is described below for the following components:*

1. A fixed quantity of On-Peak only block delivered to the PJM BGE Zone as defined pursuant to Exhibit # 1, Electric Service in the amounts set forth below – this component includes Energy only – no Distribution Energy Losses. For the fixed quantity block only, deficit usage will be settled against the real-time hourly energy price at the PJM BGE Zone, no additional congestion charges are applicable.

|  | MW | $MWh |  |
|---|---|---|---|
| 1/1/07 – 12/31/07 | 3.0 | $70.25 | ok –JEJ |

2. A fixed quantity of Off-Peak only block delivered to the PJM BGE Zone as defined pursuant to Exhibit # 1, Electric Service in the amounts set forth below – this component includes Energy only – no Distribution Energy Losses. For the fixed quantity block only, deficit usage will be settled against the real-time hourly energy price at the PJM BGE Zone, no additional congestion charges are applicable.

|  | MW | $MWh |  |
|---|---|---|---|
| 1/1/07 – 12/31/07 | 3.0 | $70.25 | ok – JES |

Buyer: The Baltimore Sun Company    Seller: Pepco Energy Services, Inc.

By: _____    By: _____

Title: DIR-FACILITIES  VP-OPERATIONS    Title: CARYN L. BACON
SENIOR VICE PRESIDENT

Date: 9/22/06    Date: 9/29/06

2



## Exhibit

This Exhibit confirms the following Agreement entered into by and between Buyer and Pepco Energy Services, Inc, and is subject to the Master Electric Sales Agreement agreed to and entered into by the parties hereto. This Exhibit is subject to the terms and conditions of the Exhibit dated September 15, 2006.

Date: October 12, 2007

| Seller: | Pepco Energy Services, Inc.<br>1300 North 17ᵗʰ Street<br>Suite 1600<br>Arlington, VA 22209 | Buyer: | The Baltimore Sun Company<br>501 North Calvert Street<br>Baltimore, MD 21278 |
|---|---|---|---|
| Contact:<br>Phone:<br>Fax:<br>Email: | Don Patch<br>(703) 543-7035<br>(703) 253-1687<br>dpatch@pepcoenergy.com | Contact:<br>Phone:<br>Fax:<br>Email: | Gene Travagline<br>(410) 332-0286<br>(410) 332-6947<br>Gene.travagline@baltsun.com |

Type of Transaction:    Generation & Transmission Service to Point of Delivery – 100% of Buyer's Electricity Purchase Requirements

Account and Meter Nos.:    5119920012 and 7421002563

Point of Delivery:    BGE

Term:    1/1/2008 to 12/31/2008    ok - JE)

Billing:    Dual Billing. Buyer shall receive a bill from Seller that reflects the All-In fixed price per kilowatt hour described in this Exhibit multiplied by the number of kilowatt hours delivered during the billing period. Buyer will receive a separate bill from EDC for delivery services.

Scope of Service:    100% of Buyer's Electricity Purchasing Requirements

Special Provisions:

1) **Fixed Quantity Energy Price.** Pricing for a Fixed Quantity of Energy Service in the amount of 3000 kW per hour for the Contract Term. This component includes energy only at the BGE Zone. Buyer shall pay seller $0.07205/kWh for this Energy Service. If the Buyer's actual load is less than the fixed quantity of Energy Service, Seller shall credit Buyer's at a rate equal to the applicable hourly Real-Time LMP for the BGE Zone.    ok -JB

On-Peak is defined as the hours between 7 a.m. and 11 p.m. inclusive, Eastern Prevailing Time, Monday through Friday, except for NERC-defined holidays. Off-Peak is defined as the hours between 11 p.m. and 7 a.m., Eastern Prevailing Time, Monday through Friday, and all day Saturday and Sunday, and NERC-defined holidays.

Buyer warrants that all information contained in this Exhibit is correct and true. Seller shall not be responsible for any incorrect information that would prevent delivery of electric supply to Buyer.

Prices within this Exhibit are valid until 4 PM on the dates shown within this Exhibit. To indicate acceptance, Buyer must sign below and return to Pepco Energy Services at fax number (703) 253-1687.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their authorized representatives.

| Seller | Pepco Energy Services, Inc. | Buyer | The Baltimore Sun Company |
|--------|------------------------------|-------|----------------------------|
| Name | CARYN L. BACON | Name | GENE V. TRAVAGLINE |
| Title | SENIOR VICE PRESIDENT | Title | DIRECTOR: FACILITIES |
| Signature | | Signature | |
| Date | 10/17/07 | Date | 10/15/07 |


**Energy Services**

<u>Exhibit</u>

This Exhibit confirms the following Agreement entered into by and between Buyer and Pepco Energy Services, Inc. and is subject to the Master Electric Sales Agreement agreed to and entered into by the parties hereto. This Exhibit is subject to the terms and conditions of the Exhibit dated September 15, 2006.

Date: November 13, 2008

| Seller: | Pepco Energy Services, Inc.<br>1300 North 17ᵗʰ Street<br>Suite 1600<br>Arlington, VA 22209 | Buyer: | The Baltimore Sun Company<br>501 North Calvert Street<br>Baltimore, MD 21278 |
|---|---|---|---|
| Contact:<br>Phone:<br>Fax:<br>Email: | Don Patch<br>(703) 543-7035<br>(703) 253-1687<br>dpatch@pepcoenergy.com | Contact:<br>Phone:<br>Fax:<br>Email: | Gene Travagline<br>(410) 332-6286<br>(410) 332-6947<br>Gene.travagline@baltsun.com |

**Type of Transaction:** Generation & Transmission Service to Point of Delivery – 100% of Buyer's Electricity Purchase Requirements

**Account and Meter Nos.:** 5119920012 and 7421002563

**Point of Delivery:** BGE

**Term:** 1/1/2009 to 12/31/2009    ok -JU

**Billing:** **Dual Billing.** Buyer shall receive a bill from Seller that reflects the All-In fixed price per kilowatt hour described in this Exhibit multiplied by the number of kilowatt hours delivered during the billing period. Buyer will receive a separate bill from EDC for delivery services.

**Scope of Service:** 100% of Buyer's Electricity Purchasing Requirements

**Special Provisions:**

1) <u>Fixed Quantity Energy Price.</u> Pricing for a Fixed Quantity of <u>Energy Service in the amount of 2,000 kW per hour</u> for the Contract Term. This component includes energy only at the BGE Zone. Buyer   ok -JU
shall pay seller $0.07835/kWh for this Energy Service. If the Buyer's actual load is less than the fixed quantity of Energy Service, Seller shall credit Buyer's at a rate equal to the applicable hourly Real-Time LMP for the BGE Zone.

On-Peak is defined as the hours between 7 a.m. and 11 p.m. inclusive, Eastern Prevailing Time, Monday through Friday, except for NERC-defined holidays. Off-Peak is defined as the hours between 11 p.m. and 7 a.m., Eastern Prevailing Time, Monday through Friday, and all day Saturday and Sunday, and NERC-defined holidays.

Buyer warrants that all information contained in this Exhibit is correct and true. Seller shall not be responsible for any incorrect information that would prevent delivery of electric supply to Buyer.

EE-PJMBLK          Page 1 of 2          Buyer's Initials _____
PES ID: 1253632                                       Date_____

Prices within this Exhibit are valid until 4 PM on the dates shown within this Exhibit. To indicate acceptance, Buyer must sign below and return to Pepco Energy Services at fax number (703) 253-1687.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their authorized representatives.

| Seller | Pepco Energy Services, Inc. | Buyer | The Baltimore Sun Company |
|---|---|---|---|
| Name | JAMES SAVAGE | Name | GENE V. TRAVAGLINE |
| Title | DIRECTOR, PRICING | Title | DIRECTOR: Facilities/Operations |
| Signature | | Signature | |
| Date | 11/14/08 | Date | 11/14/08 |