## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: January 27, 2009 at 4:00 p.m.** |
| | **Hearing Date: February 3, 2009 at 10:00 a.m.** |

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) IMPLEMENT A SEVERANCE POLICY FOR NON-UNION EMPLOYEES AND (II) CONTINUE SEVERANCE ARRANGEMENTS IN ACCORDANCE WITH COLLECTIVE BARGAINING AGREEMENTS

Tribune Company and most of its wholly-owned subsidiaries, each of which is a

debtor and debtor in possession herein (each a "Debtor" and collectively, the "Debtors"), hereby

move this Court (the "Motion") for entry of an order, in substantially the form attached hereto as

Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code"), authorizing the Debtors to (i) implement a severance policy (the "Non-Union Severance Policy") for non-union employees (the "Non-Union Employees") and (ii) comply with existing severance obligations expressly set forth in the applicable collective bargaining agreements (collectively, the "CBAs") with various unions (the "Union Severance Arrangements").

The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in support of the Motion (the "Bigelow Affidavit"). In further support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

3.      An official committee of unsecured creditors was established on December 18, 2008.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

2

## BACKGROUND

5.      Debtor Tribune Company ("Tribune") is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. The Debtors operate businesses in (i) publishing and (ii) broadcasting and entertainment.

6.      The Debtors currently employ approximately 13,940 full-time and 2,450 part-time employees (the "Employees"). Approximately fifteen percent (15%) of the Debtors' Employees are represented by unions (the "Union Employees") and are covered under various collective bargaining agreements (the "CBAs").

7.      The newspaper publishing and broadcasting industries are in the midst of an unprecedented decline which has only been exacerbated by the current recession. While the Debtors' newspaper advertising revenue continues to be in line with, and in some cases superior to, other large metropolitan newspapers, newspaper advertising revenue generally is in significant decline, down industry-wide approximately 15-20% over last year in major metropolitan markets. Further, while the Debtors' television broadcasting stations continue to outperform the broader television broadcasting industry, the Debtors' broadcasting revenue nevertheless lags their last year's performance.

8.      Prior to the Petition Date, the Debtors performed an in-depth analysis of their financial performance in order to identify areas for improvement. This analysis helped the Debtors to identify some key steps that could be taken to improve their overall financial performance. The Debtors have implemented and continue to implement aggressive strategic initiatives to enhance operating cash flow and mitigate the impact of the severe economic downturn. Strategic initiatives aimed at generating incremental cash flow through cost savings include improvements in operating efficiencies, web width (newspaper page size) reductions and newspaper redesigns.

3

9.      In addition to the foregoing cost savings, the Debtors have made substantial reductions in their workforce in the past eighteen (18) months and believe that it is prudent to consider further workforce reductions if current economic conditions persist.  Under the present circumstances, the Debtors believe that it would be beneficial to establish a single Non-Union Severance Policy for all Non-Union Employees.

## **RELIEF REQUESTED**

10.      By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing, but not directing, the Debtors to (i) implement the Non-Union Severance Policy and (ii) comply with the Union Severance Arrangements.  Although the Debtors' implementation of the Non-Union Severance Policy and performance under the Union Severance Arrangements may be within their ordinary course of business, the Debtors seek Court authorization to provide their Employees with additional certainty and comfort.  The Debtors also seek Court authorization to continue their performance of the Union Severance Arrangements to the extent that some of this performance may constitute payment of prepetition claims because some of the prepetition CBAs quantify the amount of severance pay based on the Union Employees' years of service, much of which occurred during the prepetition period.

### A.      *Non-Union Severance Policy*

11.      Under the Debtors' proposed Non-Union Severance Policy, a Non-Union Employee,[2] whose employment is involuntarily terminated by the Debtors without cause, is eligible to receive a minimum of two (2) weeks base pay for the first year of service and a

---

[2]      Part-time Employees will be eligible for severance only if they have been employed with the Debtors for at least 24 months and work a minimum of 20 hours per week.

46429/0001-5274326v1

maximum of an additional week of base pay for every completed twelve (12) months of service thereafter (the "Severance Pay").

       12.     Severance Pay may be paid in the form of salary continuation or a lump sum payment. If Severance Pay is made in the form of salary continuation, certain benefits will continue at active Employee rates for the length of the severance period (but excluding short-term disability, long-term disability, 401(k) participation, business travel accident insurance and commuter reimbursement) at the discretion of the Debtors' applicable business unit. However, if Severance Pay is in the form of a lump sum payment, benefits will not continue (other than health benefits in connection with COBRA at the former Employee's expense). Subject to the terms of applicable sales, commission or incentive plans, Severance Pay provided to certain Non-Union Employees who are terminated may include monthly or quarterly sales bonuses or commissions if viewed as part of the Non-Union Employee's salary. Group and individual outplacement services may also be offered at the discretion of the Debtors' applicable business unit.

       13.     Additionally, as a condition to receiving any payments under the Non-Employee Severance Policy, an Employee must execute (and not later revoke) an agreement containing, among other things, a waiver and general release of claims against the Debtors, their affiliates, and Employees (the "Waiver and Release Agreement").

       14.     The Non-Union Severance Policy are guidelines for the Debtors' applicable business units to implement for eligible Employees on a discretionary basis. The Non-Union Severance Policy does not constitute a contractual obligation of the Debtors to their Employees, and, except for the Waiver and Release Agreement, does not supersede or impair

46429/0001-5274326v1

other contractual commitments that the Debtors may have made or may make in the future with respect to individual Non-Union Employees' severance arrangements.

15.    The Debtors have determined that the Non-Union Severance Policy is within the range of severance benefits provided by comparable companies in the applicable industries and believe that providing such benefits is an important means of decreasing Employee attribution and increasing Employee morale.  Accordingly, by this Motion, the Debtors request authority, but not direction, to implement the Non-Union Severance Policy.

**B.    *Severance Arrangements Under Collective Bargaining Agreements***

16.    The Debtors' Union Employees are represented by 26 local union bargaining units.  Prior to the Petition Date and in the ordinary course of business, the Debtors made severance payments in accordance with certain CBAs.  Some, but not all, CBAs provide Union Employees with severance pay (the "Union Severance Pay").  Union Employees are generally eligible to receive approximately one (1) week of Union Severance Pay per year of service under a majority of the applicable CBAs, though a few of the CBAs provide for more Union Severance Pay and some CBAs have no provisions for Union Severance Pay at all.

17.    By this Motion, the Debtors seek only to make severance payments to Union Employees in compliance with governing CBAs that contain an express provision providing for such payments.  With regard to those CBAs that are silent with respect to Union Severance Pay, the Debtors will comply with the bargaining obligations under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, over the effects of a layoff or a reduction in force, which may include the negotiation of severance pay.

18.    The Debtors believe that failure to perform the terms of the CBAs pertaining to Union Severance Pay would cause unrest and strain relationships with Union

Employees. Additionally, if the Debtors were to attempt to modify the Union Severance

Arrangements, the Debtors would be required to follow certain guidelines under section 1113 of

the Bankruptcy Code, placing additional administrative burdens on the Debtors and causing the

Debtors to expend estate resources which would not be cost efficient given the existing terms of

the Union Severance Arrangements.

19.     Accordingly, the Debtors believe that the appropriate course of action is to

perform under the terms of the Union Severance Arrangements, which terms are consistent with

industry practice and are generally comparable to the terms under the Non-Union Severance

Policy. Accordingly, by this Motion the Debtors request authority, but not direction, to continue

performing under the terms of the Union Severance Arrangements.

## BASIS FOR RELIEF

20.     The Debtors believe that their implementation of the Non-Union

Severance Policy and their performance of the Union Severance Arrangements (i) are within the

range of market comparables, (ii) provide their Employees with a fair and important benefit,

(iii) evidence the Debtors' sound business judgment, and (iv) are consistent with the applicable

statutory limitations in the Bankruptcy Code.

**A.      *Approval of the Non-Union Severance Policy is Authorized Under Sections 363(b) and 105(a) of the Bankruptcy Code.***

21.     Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow

the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). Debtors' decisions to use, sell or lease assets outside the

ordinary course of business must be based upon the sound business judgment of the debtor. See

In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a

section 363(b) application must find from the evidence presented before him a good business

reason to grant such application); see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); In re Ionosphere Clubs, Inc., 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is a "good business reason").

22.    The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

23.    Courts generally have held that authorization of an employee severance program, as with similar motions under section 363(b)(1), was appropriate so long as the debtor has exercised sound business judgment in proposing the severance plan. See, e.g., In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (Bankr. D. Del. 1999) (approving program where "a sound business purpose justified the Debtors' employee incentive programs"); see also In re Dana Corp., 358 BR. at 576-77 (determining that a compensation plan was within a debtor's business judgment as measured by a variety of metrics, including whether the cost of the plan is reasonable and whether it is consistent with industry standards); In re Global Home Prods., LLC, 369 B.R. at 786 (same).

8

24.    In the present case, the Debtors have determined that the Non-Union Severance Policy is within the range of comparable industry practice and believe that providing such benefits is an important means of decreasing Employee attribution and increasing Employee morale.  For the foregoing reasons, the Non-Union Severance Policy is entirely appropriate and is justified by the sound business judgment of the Debtors.

**B.    *The Non-Union Severance Policy Complies with Section 503(c) of the Bankruptcy Code.***

25.    Section 503(c) of the Bankruptcy Code was intended by Congress to restrict retention and severance payments in respect of "insiders."  See 11 U.S.C. § 503(c).  In particular, section 503(c)(2) permits severance payments to insiders only to the extent such payments are (i) made pursuant to a severance program applicable to all employees, and (ii) less than ten times the mean severance pay made to non-management employees during the calendar year in which the payments are made.  11 U.S.C.§ 503(c)(2).  As previously stated, the Non-Union Severance Policy covers all Non-Union Employees.  The Debtors' insiders and non-management Non-Union Employees receive identical treatment under the Non-Union Severance Policy, and the Debtors believe that insiders will not receive more than ten times the mean Severance Pay provided to non-management Non-Union Employees.  Therefore, the Debtors submit that the Non-Union Severance Policy complies with section 503(c)(2).

**C.    *Failure to Perform Under the Collective Bargaining Agreements Will Require the Debtors to Comply With Section 1113 of the Bankruptcy Code.***

26.    Courts in this district have regularly authorized debtors to perform under collective bargaining agreements, and in particular, have authorized debtors to make prepetition severance payments pursuant to collective bargaining agreements.  Such relief requested herein has been granted in this district.  See, e.g., In re ACG Holdings, Inc., Case No. 08-11467 (CSS)

9

(Bankr. D. Del. Aug. 12, 2008); In re Werner Holding Co., Inc., Case No. 06-10578 (KJC) (Bankr. D. Del. June 13, 2006).

27.     The failure to perform under applicable CBAs and failure to provide Union Severance Pay to Union Employees would likely place a significant administrative burden on the Debtors.  Attempts to modify the Debtors' CBAs would require the Debtors to comply with subsections 1113(b) and (e) of the Bankruptcy Code.  In addition, the Debtors expect union representatives to immediately seek relief to compel payment of the prepetition unpaid severance amounts.  The potential legal remedies—arbitration and grievance procedures—available to the Debtors' unions to attempt to enforce the CBAs may proceed notwithstanding the automatic stay of section 362 in light of the way various courts have interpreted section 1113(f) of the Bankruptcy Code.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 82 (3d Cir. 1997); Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines), 122 F.3d 120, 137 (3d Cir. 1997); In re Roth Am., Inc., 975 F.2d 949, 956 (3d Cir. 1992); Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989-90 (2d Cir. 1990).  For the foregoing reasons, and because the terms of the existing Union Severance Arrangements are not unreasonable, the Debtors believe that the most cost efficient approach is to continue performing such obligations under the applicable CBAs.

## **RESERVATION OF RIGHTS**

28.     Nothing contained herein is intended to, or shall be, construed as an assumption of the CBAs.

46429/0001-5274326v1

## NOTICE

29.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) proposed counsel for the Official Committee of Unsecured Creditors; (vi) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing facility; and (viii) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

30.     The Debtors have not previously sought the relief requested herein from this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

11

46429/0001-5274326v1

WHEREFORE, the Debtors respectfully seek entry of an order, in substantially the form of the order attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing, but not directing, the Debtors to implement the Non-Union Severance Policy, (ii) comply with the Union Severance Arrangements, and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
      January 13, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
D'Lisia E. Bergeron
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
      -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS-IN-
POSSESSION

12