# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### AFFIDAVIT OF CHANDLER BIGELOW III, SENIOR VICE PRESIDENT AND CHIEF FINANCIAL OFFICER OF TRIBUNE COMPANY IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) IMPLEMENT A SEVERANCE POLICY FOR NON-UNION EMPLOYEES AND (II) CONTINUE SEVERANCE ARRANGEMENTS IN ACCORDANCE WITH COLLECTIVE BARGAINING AGREEMENTS

STATE OF ILLINOIS   )
                    ) ss:
COUNTY OF COOK      )

I, Chandler Bigelow, declare as follows:

1. I am a Senior Vice President and the Chief Financial Officer of Tribune

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Company, a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").[2]

2. I submit this affidavit (the "Affidavit") in support of the Debtors' "Motion for an Order Authorizing the Debtors to (I) Implement a Severance Policy For Non-Union Employees and (II) Continue Severance Arrangements in Accordance With Collective Bargaining Agreements" (the "Motion").

3. All facts set forth in this Affidavit are based on my personal knowledge, on information supplied to me by other members of the Debtors' management teams and/or professionals retained by the Debtors, on information learned from my review of relevant documents, or on my opinion based upon my experience and knowledge of the Debtors' operations, financial condition and present liquidity needs. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Affidavit on behalf of the Debtors.

4. The Debtors currently employ approximately 13,940 full-time and 2,450 part-time employees (the "Employees"). Approximately fifteen percent (15%) of the Debtors' Employees are represented by unions (the "Union Employees") and are covered under various collective bargaining agreements (the "CBAs").

5. The newspaper publishing and broadcasting industries are in the midst of an unprecedented decline which has only been exacerbated by the current recession. While the Debtors' newspaper advertising revenue continues to be in line with, and in some cases superior to, other large metropolitan newspapers, newspaper advertising revenue generally is in significant decline, down industry-wide approximately 15-20% over last year in major metropolitan markets. Further, while the Debtors' television broadcasting stations continue to

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

outperform the broader television broadcasting industry, the Debtors' broadcasting revenue nevertheless lags their last year's performance.

6. Prior to the Petition Date, the Debtors performed an in-depth analysis of their financial performance in order to identify areas for improvement. This analysis helped the Debtors to identify some key steps that could be taken to improve their overall financial performance. The Debtors have implemented and continue to implement aggressive strategic initiatives to enhance operating cash flow and mitigate the impact of the severe economic downturn. Strategic initiatives aimed at generating incremental cash flow through cost savings include improvements in operating efficiencies, web width newspaper page size) reductions and newspaper redesigns.

7. In addition to the foregoing cost savings, the Debtors have made substantial reductions in their workforce in the past eighteen (18) months and believe that it is prudent to consider further workforce reductions if current economic conditions persist. The Debtors' severance arrangements with terminated employees during this prepetition period varied by business unit. Under the present circumstances, the Debtors believe that it would be beneficial to establish a single Non-Union Severance Policy for all Non-Union Employees.

8. Under the Debtors' proposed Non-Union Severance Policy, a Non-Union Employee,[3] whose employment is involuntarily terminated by the Debtors without cause, is eligible to receive a minimum of two (2) weeks base pay for the first year of service and a maximum of an additional week of base pay for every completed twelve (12) months of service thereafter (the "Severance Pay").

---

[3] Part-time Employees will be eligible for severance only if they have been employed with the Debtors for at least 24 months and work a minimum of 20 hours per week.

3

9. Severance Pay may be paid in the form of salary continuation or a lump sum payment. If Severance Pay is made in the form of salary continuation, certain benefits will continue at active Employee rates for the length of the severance period (but excluding short-term disability, long-term disability, 401(k) participation, business travel accident insurance and commuter reimbursement) at the discretion of the Debtors' applicable business unit. However, if Severance Pay is in the form of a lump sum payment, benefits will not continue (other than health benefits in connection with COBRA at the former Employee's expense). Subject to the terms of applicable sales, commission and incentive plans, Severance Pay provided to certain Non-Union Employees who are terminated may include monthly or quarterly sales bonuses or commissions if viewed as part of the Non-Union Employee's salary. Group and individual outplacement services may also be offered at the discretion of the Debtors' applicable business unit.

10. Additionally, as a condition to receiving any payments under the Non-Employee Severance Policy, an Employee must execute (and not later revoke) an agreement containing, among other things, a waiver and general release of claims against the Debtors, their affiliates, and Employees

11. I believe that the Non-Union Severance Policy is within the range of severance benefits provided by comparable companies within the applicable industries and that providing such benefits will decrease Employee attribution and increase Employee morale.

12. Based on information and calculations that I have reviewed, I believe that the Severance Pay that insiders of the Debtors may receive under the Non-Union Severance Policy will not exceed ten times the mean of the Severance Pay that non-management Employees may receive under the Non-Union Severance Policy.

13. The Debtors' Union Employees are represented by 26 local union bargaining units. Prior to the Petition Date and in the ordinary course of business, the Debtors made severance payments in accordance with certain CBAs. Some, but not all, CBAs provide Union Employees with severance pay (the "Union Severance Pay"). Union Employees are generally eligible to receive approximately one (1) week of Union Severance Pay per year of service under a majority of the applicable CBAs, though a few of the CBAs provide for more Union Severance Pay and some CBAs have no provisions for Union Severance Pay at all.

14. I believe that the Debtors' failure to perform the terms of the CBAs pertaining to Union Severance Pay would cause unrest and strain relationships between the Debtors and Union Employees. Additionally, I believe that modifying the Union Severance Arrangements would place additional administrative burdens on the Debtors and cause the Debtors to expend estate resources which would not be cost efficient given the existing terms of the Union Severance Arrangements.

15. Accordingly, I believe that the appropriate course of action for the Debtors is to perform under the terms of the Union Severance Arrangements, which terms are consistent with industry practice and are generally comparable to the terms under the Non-Union Severance Policy.

16. I believe that the Debtors' implementation of the Non-Union Severance Policy and the Debtors' compliance with the Union Severance Arrangements (i) are within the range of market comparables, (ii) provide their Employees with a fair and important benefit, and (iii) are within the Debtors' sound business judgment.

17. I believe that the relief requested by the Motion is in the best interests of the Debtors' stakeholders and other parties-in-interest.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: January 13, 2009

_____
Chandler Bigelow III
Senior Vice President & Chief Financial Officer
Tribune Company

Sworn to and subscribed before me this 13th day of January, 2009.

_____
Notary Public

"OFFICIAL SEAL"
Margaret M. Weimer
Notary Public, State of Illinois
My Commission Expires Feb. 1, 2009