# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: January 27, 2009 @ 4:00 p.m. (ET)<br>Hearing Date: February 3, 2009 @ 10:00 a.m. (ET) |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO LIMIT CREDITOR ACCESS TO CONFIDENTIAL AND PRIVILEGED INFORMATION *NUNC PRO TUNC* TO THE FORMATION DATE AND TO ESTABLISH RELATED PROCEDURES PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 1102(B)(3) AND 1103(C)

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby moves this Court (the "Motion") to Limit Creditor Access to Confidential and Privileged Information *Nunc Pro Tunc* to the Formation Date and to Establish Related Procedures Pursuant to Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

698.000-23793

Code Sections 105(a), 1102(b)(3) and 1103(c). In support of the Motion, the Committee respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors remain in possession of their properties and continue to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

3. On December 18, 2008 (the "Formation Date"), the Office of the United States Trustee for the District of Delaware appointed the Committee.

4. In addition, on the Formation Date, the Committee met with and selected Chadbourne & Parke LLP ("Chadbourne") as its general counsel, and Landis Rath & Cobb LLP ("LRC") as its co-counsel.

## JURISDICTION

5. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 1102 and 1103.

## RELIEF REQUESTED

7. The Committee seeks entry of an order (the "Procedures Order") confirming that Bankruptcy Code Section 1102(b)(3)(A) neither authorizes nor requires the

Committee to disclose the Debtors' Confidential Information[2] or any information subject to the attorney-client or some other state, federal or other jurisdictional privilege law (the "Privileged Information"). For the sake of clarity, it bears emphasis that nothing in the Procedures Order extends to information which any member of the Committee has received other than in its capacity as a Committee member.

8. The Committee further requests that the Procedures Order: (a) clarify the Committee's duties and obligations under Bankruptcy Code Section 1102(b)(3); (b) institute procedures for the Committee to satisfy its statutory obligations to provide access to information to its constituent creditors or solicit and receive comments from its constituent creditors; and (c) institute procedures for the disclosure of Confidential Information to third-parties who request such information.

9. Accordingly, the Committee seeks entry of the Procedures Order, substantially in the form attached hereto, *nunc pro tunc* to the Formation Date, clarifying the Committee's requirements under Bankruptcy Code Sections 1102(b)(3)(A) and (B), and instituting uniform procedures designed to allow the Committee to satisfy its obligations thereunder, as summarized below:[3]

---

[2] As used herein, "Confidential Information" shall mean any non-public information of the Debtors, including without limitation, non-public information concerning the Debtors' assets, liabilities, business operations, projections, analyses, compilations, and studies. Confidential Information shall also include any other non-public documents prepared by the Debtors, their advisors, or any other agents of the Debtors, where such information is furnished, disclosed or otherwise made known to the Committee, its professionals, its members (but only if a member received such information in its capacity as a member) and the members' respective agents or advisors (collectively, the "Committee Parties"), whether intentionally or unintentionally, by any written, oral, electronic, facsimile, or computer-related forms of communication. Confidential Information shall also include any analyses, compilations, abstracts, studies, summaries or other documents, reports or records prepared by the Debtors or any of the Committee Parties which contain, reflect or, otherwise are generated from any information deemed to be Confidential Information. Confidential Information shall also include, *inter alia*, any non-public information of the Debtors that may have been provided to any of the Committee Parties prior to the Petition Date, provided, however, that any such information shall be subject to any confidentiality agreement or other similar agreement entered into between the Debtors and the applicable Committee Party. Confidential Information shall not include any information or portions of information that are or become generally available to the public, or are or become available to any of the Committee Parties on a non-confidential basis, but in any such case, only to the extent such information became available to the applicable Committee Parties' knowledge without violation of a contractual, legal, or fiduciary obligation to the Debtors or any of their respective affiliates or representatives. Confidential Information also shall not include information that was, to the applicable Committee Parties' knowledge, in the possession of, obtained by, or available to any Committee Party in a capacity other than being a Committee Party or on a non-confidential basis from a source which is not bound by a confidentiality agreement with the Debtors or any other contractual, fiduciary or other legal obligation of confidentiality to the Debtors. The Committee has modified the definition of Confidential Information in an effort to clarify the term but does not believe any material terms have been modified.

[3] The following summary provides an overview of the proposed Procedures Order and is qualified in its entirety by reference to the actual proposed Procedures Order, attached hereto. All terms used in this summary and not otherwise defined shall have the same meaning as ascribed to them in the proposed Procedures Order.

a. <u>Access to Creditor Information</u>. In satisfaction of its obligation under Bankruptcy Code Section 1102(b)(3)(A) to provide information to the creditors that it represents, the Committee may establish a website and/or an electronic mail address for creditors to submit questions and comments to the Committee. The Committee's website may provide general information regarding the Debtors' cases; highlights of significant events and materials, including important deadlines; related links to relevant websites and information; a general review of the chapter 11 process; and answers to frequently asked questions and specific questions of relevance to or made by general unsecured creditors. The Committee shall be authorized to retain Kurtzman Carson Consultants LLC as its website administration agent.

b. <u>Privileged and Confidential Information</u>. The Committee shall not be required or obligated to disseminate to any entity, without further court order, any Confidential Information, Committee Confidential Information, or Privileged Information (as each is defined in the Procedures Order).

c. <u>Creditor Information Requests</u>. The Committee shall respond to a general unsecured creditor's request for information within thirty (30) days of the Committee's receipt of such request. Such response shall provide access to the requested information or reasons why such information will not be provided. If the information request is denied because it requests Confidential Information, Committee Confidential Information or Privileged Information (each as defined in the Procedures Order), which cannot be disclosed or the request is unduly burdensome, such creditor, after good faith attempts to meet and confer with the Committee, can file a motion requesting such information be provided. In responding to an information request, the Committee shall consider certain factors, including, without limitation, the creditor's willingness to enter into a confidentiality agreement and trading restrictions; whether the requesting creditor is involved in claims or equity interest trading; or whether the requesting creditor is a current or prospective competitor of the Debtors.

    d. <u>Release of Confidential Information of Third Parties</u>. If the Committee agrees that Confidential Information of the Debtors should be supplied to any general unsecured creditor, by request or otherwise, it shall do so only if such creditor executes a confidentiality agreement substantially in the form attached to the Procedures Order as Exhibit "B" (the "<u>Confidentiality Agreement</u>") and pursuant to the procedures set forth in the Protocol Order. The Committee may in its sole discretion disclose any Committee Confidential Information.

    10.    The requested relief will ensure that confidential, privileged, proprietary, and/or material non-public information is not disseminated to the detriment of the Debtors' estates. Moreover, it will assist the Committee in performing its statutory function and, as importantly in cases as large as the Debtors', create a cost-effective and efficient process for compliance with Bankruptcy Code Section 1102(b)(3).

## BASIS FOR RELIEF REQUESTED

    11.    Bankruptcy Code Section 1102 governs the appointment of creditors' and equity security holders' committees. <u>See</u> 11 U.S.C. § 1102(a). The Bankruptcy Abuse Prevention and Consumer Protection Act (the "<u>BAPCPA</u>") was signed into law on April 20, 2005, with the majority of provisions becoming effective on October 17, 2005. Among BAPCPA's amendments and additions to the Bankruptcy Code, Section 1102(b)(3) now provides, in relevant part:

A committee appointed under subsection (a) shall --

    (A)    provide access to information for creditors who

        (i)  hold claims of the kind represented by that committee; and

        (ii)  are not appointed to the committee;

>   (B)   solicit and receive comments from the creditors described in subparagraph (A); and
>
>   (C)   be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

11 U.S.C. § 1102(b)(3)(A)-(C). This amendment, however, provides committees with no guidance regarding the fulfillment of these obligations.

12.   If a statute is clear and unambiguous, the court "must give effect to the unambiguously expressed intent of Congress." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988). However, when, as here, "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters . . . the intention of the drafters, rather than the strict language, controls." U.S. v. Ron Pair Enters., Inc. 289 U.S. 235, 242-43 (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564 (1982)).

13.   With no definition of the term "information" or guidance on the timing of mechanism for providing access to information, the Committee submits that Bankruptcy Code Section 1102(b)(3)(A) is vague and ambiguous, and thus requests that the Court enter the Procedures Order to clarify the Committee's obligations.

A.   **Access to Information**

14.   The Bankruptcy Code requires a committee "to provide access to information," but it fails to establish guidelines for appropriate methods to provide such access or the type, kind and extent of the information to be provided. This broad mandate could lend itself to an interpretation of Bankruptcy Code Section 1102(b)(3)(A) that requires a committee to provide access to <u>all</u> information provided to it by a debtor or developed through the Committee's exercise of its investigative function, regardless of whether the information is confidential, privileged, proprietary or material non-public information. It could also be

interpreted to require the Committee to provide such information to <u>all</u> creditors regardless of whether a creditor has expressed an interest in receiving information and regardless of the cost to the estates.

15. It is entirely likely that Bankruptcy Code Section 1102(b)(3)'s drafters intended the section to codify what creditors' committee counsel have, in general, been doing all along, which is responding to creditors' individual requests for non-privileged public information. Indeed, if Congress had instead intended for Bankruptcy Code Section 1102(b)(3) to require a committee to provide creditors with unrestricted access to all information that a committee receives from a debtor, the provision would frustrate several provisions of the Bankruptcy Code, including a committee's authority under Bankruptcy Code Section 1103(c) to obtain information and to act as a fiduciary for its constituents.

16. Without clarification by the Court, the Committee's efforts in this case may be frustrated because the Debtors may be hesitant to share confidential and sensitive information -- precisely the information the Committee requires and typically receives to carry out its fiduciary obligations -- for fear that the shared information may be disseminated to the members of the public, including competitors and interested buyers. Moreover, without Court intervention, the Committee may be deterred from conducting its own independent investigations out of concern that its findings may be disseminated to inappropriate parties. These concerns could impede the Committee's efforts to obtain information. In addition, requiring dissemination of such information to all creditors in a case of this size may undermine the Committee's efforts to maximize recoveries to its constituents.

### B. Soliciting and Receiving Comments

17. The statute also requires a committee to "solicit and receive comments" from creditors, but does not establish acceptable methods for fulfilling a committee's obligation to do so. Because the cost associated with this requirement will ultimately be born by the Debtors' estates, the means for soliciting and receiving comments must be tailored to reflect the circumstances of the case.

18. The Committee submits that its proposal to invite creditors to comment on matters related to this bankruptcy proceeding by letter provides a cost-effective and efficient method for the Committee to satisfy its obligation under Bankruptcy Code Section 1102(b)(3)(B). One leading commentary on the Bankruptcy Code has suggested that Bankruptcy Code Section 1102(b)(3)(B) contemplates solicitation of comments from creditors by letter. *See* 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1102.08 (15TH ED. REV. 2005) ("Perhaps the simplest way would be for a committee to send a letter to creditors notifying them that they welcome to provide comments to the committee or its professionals.").

### C. Court Authorized to Establish Requested Procedures Under Bankruptcy Code Section 105(a)

19. Bankruptcy Code Section 105(a) empowers the Court to "issue any order . . . . that is necessary or appropriate to carry out the provisions of this title." The Committee submits the requested relief is necessary for the Committee to fulfill its obligations as set forth under Bankruptcy Code Section 1103(c), as described above. Moreover, the requested relief is appropriate and within the Court's authority. Absent the relief sought herein, the Committee may be in breach of its obligations under Bankruptcy Code Section 1102(b)(3). Accordingly, the relief requested by the Procedures Motion is unquestionably "necessary and appropriate" to

enable the Committee to fulfill its statutory duties. The Court should thus enter the Procedures Order under Bankruptcy Code Section 105(a).

## NOTICE AND NO PRIOR REQUEST

20. Notice of this motion has been given to (a) the Debtors; (b) counsel to the Debtors; (c) the Office of the United States Trustee for the District of Delaware; and (d) all other parties that have filed a notice of appearance in these cases. In light of the nature of the relief requested, the Committee submits that no further notice need be given.

21. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Committee requests that the Court: (i) grant the relief requested by the Motion; (ii) enter the Procedures Order, substantially in the form attached hereto, granting the requested relief *nunc pro tunc* to December 18, 2008; and (iii) grant such further relief as is just and proper.

Dated: January 16, 2009
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Adam G. Landis
_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Mona A. Parikh (No. 4901)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Proposed Counsel to the Official Committee of Unsecured Creditors*