## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Docket Ref. No. ____ |

### ORDER APPROVING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO LIMIT CREDITOR ACCESS TO CONFIDENTIAL AND PRIVILEGED INFORMATION *NUNC PRO TUNC* TO THE FORMATION DATE AND TO ESTABLISH RELATED PROCEDURES PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 1102(B)(3) AND 1103(C)

Upon consideration of the Official Committee of Unsecured Creditors' Motion to Limit Creditor Access to Confidential and Privileged Information *nunc pro tunc* to the Formation Date and to Establish Related Procedures Pursuant to Bankruptcy Code Sections 105(a), 1102(b)(3) and 1103(c) (the "Motion"); and due and proper notice having been given; and a hearing on the Motion having been held (the "Hearing"); and the Court having considered the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); LVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Motion and all responses; and upon the record of the Hearing; and after due deliberation and sufficient cause appearing therefor

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     <u>Jurisdiction and Venue; Core Proceeding</u>.   The Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. §§ 157 and 1334.   This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b).   Venue of these chapter 11 cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

B.     <u>Statutory Predicates</u>.   The statutory predicates for the relief sought in the Motion are Bankruptcy Code Sections 105(a), 1102(b)(3) and 1103.

C.     <u>Adequacy of Notice</u>.   Notice of the Motion was timely, adequate, proper and sufficient and constituted the best notice practicable under the particular circumstances, and no other or further notice of the Motion is required.

D.     <u>Opportunity to be Heard</u>. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein and granted in this Order has been afforded.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     <u>Objections</u>.   All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights in connection therewith therein, which are not otherwise resolved in this Order, are overruled on the merits.

2.     <u>Motion</u>.   The Motion is hereby GRANTED to the extent provided herein.

3.     <u>Committee Confidential Information</u>.   The Committee, its professionals and its members and their respective agents, representatives, advisors and counsel, shall not be required, absent entry of an order of this Court, to disseminate information to unsecured creditors developed independently or obtained from third-parties other than the Debtors, which

information is non-public in nature, including, but not limited to, any recommendations or reports to Committee members prepared by its professionals, and/or any information deemed by the Committee's professionals to be of a sensitive and confidential nature (the "Committee Confidential Information").

    4.    Access To Creditor Information.   In satisfaction of the Committee's obligation to provide access to information for creditors and solicit and receive comments in accordance with Bankruptcy Code Sections 1102(b)(3)(A) and (B), and to otherwise clarify and fix the statutory that the Committee provide access to information for general unsecured creditors, the Committee may, in its reasonable discretion, until the earliest to occur of dissolution of the Committee, dismissal of these chapter 11 cases, or conversion of these chapter 11 cases, or upon further order of the Court:

    a.  Establish and maintain an Internet-accessed website or an electronic mail address for creditors to submit questions and comments to the Committee;

    b.  Establish and maintain an Internet-accessed website (the "Committee Website") for the benefit of constituent unsecured creditors, that may provide, without limitation:

        i.  general information concerning the chapter 11 cases of the Debtors including, case dockets and docket filings, or access or links or the Internet address to the case dockets and docket filings, and general information concerning significant parties in the cases;

        ii.  periodic Committee-written reports summarizing recent proceedings, events and public financial information;

        iii.  highlights of significant and material events in the cases;

    iv.    deadlines for upcoming significant and material events or time and place for hearings in the cases;

    v.    the internet address, access or links to the claims docket as and when established by the Debtors or any claim agent retained in the cases;

    vi.    a general overview of the chapter 11 process, press releases (if any) issued by any of the Debtors or the Committee;

    vii.    responses to creditor questions, comments and requests for access to information; provided, however, that the Committee may privately provide such responses in the exercise of its reasonable discretion, including in light of the nature of the information request and the creditor's agreements to appropriate confidentiality and trading of claims or interests constraints;

    viii.    answers to frequently asked questions; and

    ix.    access or links or the internet address to other relevant websites and information.[2]

c.  Retain Kurtzman Carson LLC ("KCC") as the Committee's Website Administrative Agent, on the terms as set forth in the services agreement attached hereto as Exhibit "A" (the "KCC Services Agreement").

5.    <u>Privileged and Confidential Information</u>.  Absent entry of an order of this Court to the contrary, the Committee shall not be required or obligated to disseminate to any entity (all references to "entity" herein shall be as defined in Bankruptcy Code Section 101(15), "Entity"):  (a) Confidential Information (as defined in the Motion); (b) Committee Confidential Information; or (c) Privileged Information.

---

[2] No access or link will bypass the login and password requirements of the PACER or ECF websites.  To obtain a PACER account and password, parties should contact the PACER Service Center at (800) 676-6856 or visit its website via the Internet at www.pacer.psc.uscourts.gov.

6.    <u>Information Subject to Discovery</u>.  Any information received (formally or informally) by the Committee from any Entity in connection with an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or in connection with any formal or informal discovery in any contested matter, adversary proceeding or other litigation in these chapter 11 cases or related to the Debtors shall not be governed by the terms of this Order but, rather, by any order governing such discovery or adversary proceeding, contested matter on other litigation; <u>provided</u>, <u>however</u>, that any information received (formally or informally) by the Committee from the Debtors shall be governed by the terms of this Order and any confidentiality agreement between the Committee and the Debtors concerning these chapter 11 cases. Notwithstanding anything to the contrary contained in this Order, this Order does not govern information which any member of the Committee has received other than in its capacity as a member of the Committee.

7.    <u>Identification</u>.  The Debtors shall assist the Committee in identifying any Confidential Information concerning the Debtors that is provided by the Debtors or their agents or professionals, or by any third party, to the Committee, its agents and professionals.

8.    <u>Creditor Information Requests</u>.  If a general unsecured creditor (the "<u>Requesting Creditor</u>") submits a written request (including electronic mail) (the "<u>Information Request</u>") for the Committee to disclose or provide information, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (including, if relevant, on the Committee Website) (the "<u>Response</u>"), including providing access to the information requested or the reasons the Information Request cannot be complied with.  If the Response is to deny the Request because the Committee believes the Information Request implicates Confidential Information, Committee Confidential Information or Privileged Information that need not be disclosed pursuant to the

terms of this Order or otherwise under 11 U.S.C. § 1102 (b)(3)(A), or that the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion shall be served and the hearing on such motion shall be noticed and scheduled pursuant to the rules of the court. The Committee shall not object to any Requesting Creditor's request to participate in any such hearing by telephone conference. Nothing herein shall be deemed to preclude the Requesting Creditor from requesting (or the Committee objecting to such request) that the Committee provide the Requesting Creditor a log or other index of any information specifically responsive to the Requesting Creditor's request that the Committee deems to be Confidential Information, Committee Confidential Information or Privileged Information. Furthermore, nothing herein shall be deemed to preclude the Requesting Creditor from requesting that the Court conduct an in camera review of any information specifically responsive to the Requesting Creditor's request that the Committee claims is Confidential Information, Committee Confidential Information, or Privileged Information. Finally, nothing in this paragraph or order limits, affects, or otherwise prejudices the rights, if any, of individuals to seek relief from this Court under 11 U.S.C. § 1102(b)(3).

9. _Committee Response_. In its Response to an Information Request for access to Confidential Information or Committee Confidential Information, the Committee shall consider whether:

> a. the Requesting Creditor is willing to enter into the confidentiality agreement, substantially in the form attached hereto as Exhibit "B" (the "Confidentiality Agreement"), and which form of Confidentiality Agreement is hereby approved, and trading restrictions with respect to such Confidential Information and/or Committee Confidential Information and represents that such trading restrictions and any information-screening

process complies with applicable securities laws, Bankruptcy Rules or contract laws; and

    i.   <u>Claims/Equity Security Traders</u>: If the Requesting Creditor is involved in purchasing, selling or trading claims against or equity interest in the Debtors, the Requesting Creditor must file serve upon counsel to the Committee, the Debtors and the United States Trustee, a document with the Court, and confirming that it has established an information screening barrier ("<u>Screening Wall</u>") that will be enforced, that no Confidential Information or Committee Confidential Information will be revealed to purchasers, sellers or claims traders or any persons or entities involved in trading of claims and listing the name of the person that has been designated as monitor to ensure compliance with the provisions hereof; and

    ii.   <u>Market Competitors</u>: If the Requesting Creditor is a competitor or prospective competitor of the Debtors and the information requested may impair the Debtors' business in any material way, no information will be disclosed unless the Court orders such disclosure after notice and a hearing. The determination that a Requesting Creditor is a competitor or prospective creditor is reviewable by the Court; and

   b.  under the particular facts, such agreement and any information-screening process that it implements will reasonably protect the confidentiality of such information;

<u>provided, however</u>, that if the Committee elects to provide access to Confidential Information or Committee Confidential Information on the basis of the entry into the Confidentiality Agreement and such trading restrictions, the Committee shall have no responsibility for the Requesting Creditor's compliance with, or liability for violation of, applicable or contract laws. Any disputes with respect to this paragraph shall be resolved as provided in the preceding paragraph, and, to the extent applicable, the next paragraph.

10.    <u>Release of Confidential Information or Privileged Information of the Debtors to Third Parties</u>. Notwithstanding anything herein to the contrary, if the Information Request implicates Confidential Information or Privileged Information of the Debtors (or any other Entity other than the Committee) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information or Privileged Information to creditors, the Committee shall make a demand for the benefit of the Debtors' creditors pursuant to the following procedures:

a.  <u>Debtors' Confidential Information or Privileged Information</u>. If the Confidential Information or Privileged Information is information of the Debtors, the Committee shall submit a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors ("<u>Debtors' Counsel</u>"), stating that such information will be disclosed in the manner described in the Committee Confirmation Demand unless the Debtors object to such Committee Information Demand on or before ten (10) days after the service of such Committee Information Demand. If the Debtors lodge such an objection, the Debtors, the Committee and the Requesting Party shall work in good faith to resolve the Debtors' objection to the Committee Information Demand. In the event that the Debtors' objection is not resolved, the Debtors shall schedule a hearing (that is acceptable to the Committee and Requesting Creditor) no later than twenty (20) days after the service of the Committee Information Demand. At such hearing, the Debtors must demonstrate why such Committee Information Demand is prejudicial to the Debtors and why the Debtors should not comply with the request pursuant to 11 U.S.C. § 704(a)(7).

b.  <u>Third Party Confidential Information</u>. If the Confidential Information is information of another Entity, the Committee shall submit a written request, each captioned as a "Committee Information Demand," to such Entity and its counsel of record, with a copy to Debtors' Counsel, stating that such information will be disclosed in the manner described in the Committee Information Demand unless such Entity or the Debtors

object to such Committee Information Demand on or before ten (10) days after the service of such Committee Information Demand. If the Debtors or the Entity lodge such an objection, the Debtors, the Committee, the Entity and Requesting Creditor shall work in good faith to resolve the Debtors' or the Entity's objection to the Committee Information Demand. In the event that the Debtors' or the Entity's objection is not resolved, the Debtors shall schedule a hearing (that is acceptable to the Committee, the Entity and Requesting Creditor) no later than twenty (20) days after the service of the Committee Information Demand. At such hearing, the objecting party must demonstrate why such Committee Information Demand should not be complied with and why the Debtors should not comply pursuant to 11 U.S.C. § 704(a)(7).

c.   The Committee may in its sole discretion disclose any Committee Confidential Information pursuant to and consistent with the terms of this Order.

Nothing in this paragraph or this order limits, affects, or otherwise prejudices the rights, if any, of individuals to seek relief from this Court under 11 U.S.C. § 1102(b)(3).

11.    <u>Limitations</u>.   Nothing in this Order requires the Committee to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in Bankruptcy Code Section 1102(b)(3).

12.    <u>Committee Website Expenses</u>.   The fees and expenses of KCC as Committee's Website Administrative Agent incurred by the Committee under the terms of the KCC Services Agreement (the "<u>Committee Website Expenses</u>") shall be paid directly to KCC by the Debtors' estates without further order of the Court upon the service of appropriate invoices by KCC upon counsel for the Debtors, the United States Trustee and counsel to the Committee. Committee Website Expenses shall be treated as administrative expense priority claims against the Debtors' estates pursuant to Bankruptcy Code Section 503(b).

13.    <u>Limitation of Liability</u>.  None of the Debtors, the Committee nor any of their respective directors, officers, employees, members, attorneys, consultants, advisors and agents (acting in such capacity) (collectively, the "<u>Covered Parties</u>"), shall have or incur any liability to any Entity (including the Debtors and their affiliates) or any governmental Entity (as such term is defined under 11 U.S.C. § 101(14)) for any act taken or omitted to be taken in compliance with this Order.  To the extent applicable law affords the Covered Parties qualified immunity or similar protections for any act taken or omitted to be taken in compliance with this Order, entry of this Order shall not limit or otherwise affect such qualified immunity or similar protection.

14.    <u>Effective Date</u>.  This Order shall be effective as of _____, 2009.

15.    <u>Binding</u>.  This Order shall be binding in all respects upon the Debtors, Committee and affected parties and any successors thereto and all creditors and parties-in-interest.

16.    <u>Nonseverable</u>.    The provisions of this Order are nonseverable and mutually dependent.

17.    <u>Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Order in all respect and further to hear and determine all matters arising from the construction and implementation of this Order.

Dated: _____, 2009
      Wilmington, Delaware

_____
The Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

# EXHIBIT A



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 14th day of January, 2009, between the Official Committee of Unsecured Creditors (hereinafter referred to collectively as the "Committee") in the Chapter 11 cases (the "Cases") of Tribune Company, and Kurtzman Carson Consultants LLC (hereinafter referred to as "KCC").

The services rendered by KCC will commence February 3, 2009, and continue until either party shall exercise its rights of suspension or termination as set forth below.

"KCC" shall mean Kurtzman Carson Consultants LLC, its servants, agents, employees, licensees, and subcontractors, and the term "Committee" shall include all members of the committee in their capacity as such and their respective servants, agents, employees, licensees and subcontractors.

## Terms and Conditions

I.      SERVICES

A.      KCC agrees to provide the Committee with technology and other services in connection with the Committee's involvement in the Cases.

B.      KCC may upon request provide a communications plan including but not limited to preparation of communications materials, dissemination of information and a call center staffed by KCC.

II.     DOCUMENT MANAGEMENT

KCC agrees to provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court and as requested by the Committee and/or the Court.

III.    PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Committee agrees to use its best efforts to cause Tribune Company to pay KCC for its services, and reasonable and documented expenses at the rates or prices in effect on the day such services are rendered and/or expenses are incurred, in accordance with the KCC Fee Structure. KCC shall receive a retainer in the amount of $5,000 for services to be performed and expenses to be incurred in this matter due upon execution of this Agreement. KCC acknowledges that the Committee, its individual members and their respective advisors or professionals (including, but not limited to, counsel to the Committee) shall have no obligation to pay its fees, expenses or any indemnity amounts.

1



## KCC AGREEMENT FOR SERVICES

B.      KCC's prices are adjusted periodically to reflect changes in the business and economic environment.

C.      Committee agrees to use its best efforts to cause Tribune Company to pay reasonable and documented expenses incurred by KCC related to transportation, lodging, meals, publications, postage and other third-party charges, in addition to the hourly consulting fees set forth in the KCC Fee Structure. Where the expenses related to these items are expected to exceed $10,000 in any single month, KCC may require advance payment.

D.      KCC agrees to submit its invoice to the Committee and Tribune Company monthly. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, Committee further agrees to use its best efforts to cause Tribune Company to pay a late charge, calculated as one and one-half percent (1-1/2%) of the amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, notice shall be given to KCC within ten (10) days of receipt of the invoice by the Committee.  Late charges shall not accrue on any amounts in dispute.  The balance of the invoice amount is due and payable by Tribune Company in the normal course.

IV.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Committee agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      Committee further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed during the course of its Agreement by KCC shall be the exclusive property of KCC.

C.      Furthermore, upon Committee's request at any time or times while this Agreement is in effect, KCC shall immediately deliver to Committee, at Committee's sole expense, any or all of the non-proprietary data and records held by KCC pursuant to this Agreement, in the form requested by Committee.

V.      CONFIDENTIALITY

KCC, on behalf of itself and its employees, agrees to keep confidential all records and other information with respect to the Committee.  Committee agrees to keep all proprietary, non-public information with respect to KCC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

2



# KCC AGREEMENT FOR SERVICES

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party upon thirty (30) days' written notice to the other party, or for cause, in which event no notice shall be required. Cause shall mean an act or omission to act by KCC performed with either gross negligence or wanton misconduct that causes, or an act or omission with the intent to cause, harm to the Committee's efforts in the Cases. Cause shall also mean failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC has any reasonable fear of non-payment.

B.    In the event that this contract is terminated, regardless of the reason for such termination; KCC shall cooperate with Committee to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer. Committee agrees to use its best efforts to cause Tribune Company to pay for such services in accordance with KCC's then existing prices for such services.

VII.    SYSTEM IMPROVEMENTS

KCC will provide continuous improvements in the quality of service to the Committee. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Committee, so long as any such changes do not materially interfere with ongoing services provided to the Committee.

VIII.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    Committee shall use its best efforts to cause Tribune Company to indemnify and hold KCC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by KCC in good faith with due care and without gross negligence in reliance upon instructions or orders received from Committee as to anything arising in connection with its performance under this Agreement. KCC shall be without liability to Committee with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without gross negligence or willful or wanton misconduct.

B.    Except as provided herein, KCC's liability to Committee or any person claiming through or under Committee for any claim, loss, damages or expense of any kind, even if KCC has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC shall be limited to the total amount billed or billable to Committee for the portion of the particular work which gave rise to the loss or damage. In no event shall KCC's liability to Committee for any losses or damages, whether direct or indirect, arising out of this Agreement exceed the total amount

3



# KCC AGREEMENT FOR SERVICES

billed to Committee and paid to KCC for the services contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.      Committee is responsible for the accuracy of the programs and data it submits for processing to KCC and for the output. Committee agrees to initiate and maintain backup files that would allow Committee to regenerate or duplicate all programs and data submitted by Committee to KCC.

D.      Committee agrees that except as set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

IX.      INDEPENDENT CONTRACTORS

Committee and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

X.      FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.      NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

4



# KCC AGREEMENT FOR SERVICES

Kurtzman Carson Consultants LLC
2335 Alaska Ave.
El Segundo, CA 90245
Attn: James Le
Tel: (310) 823-9000
Fax: (310) 823-9133

Landis Rath & Cobb LLP
919 Market St., Suite 1800
PO Box 2087
Wilmington, DE 19899
Attn: Adam Landis, Esq.
Tel: (302) 467-4410
Fax: (302) 467-4450

Landis Rath & Cobb LLP
919 Market St., Suite 1800
PO Box 2087
Wilmington, DE 19899
Attn: Matthew McGuire, Esq.
Tel: (302) 467-4400
Fax: (302) 467-4450

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XII.   APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIII.   ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Committee represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of Committee and an officer of KCC.

XIV.   ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

XV.   ARBITRATION.

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration


KURTZMAN
CARSON
CONSULTANTS

## KCC AGREEMENT FOR SERVICES

Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in the Los Angeles County, State of California.

XVI.   ATTORNEYS' FEES.

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, Court costs, and all other expenses, which may be set by the Court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:     James M. Le

TITLE:  Chief Operating Officer

The Official Committee of Unsecured Creditors of Tribune Company, et al.

JPMorgan Chase Bank, N.A., solely in its capacity as Co-Chair of the Creditors' Committee and not in its individual capacity

BY:     Miriam Kulnis
TITLE: Executive Director

Warner Bros. Television, solely in its capacity as Co-Chair of the Creditors' Committee and not in its individual capacity

BY:     Wayne M. Smith
TITLE:  Vice President, Senior Litigation & Chief Patent Counsel



# KCC OFFICIAL COMMITTEE
# FEE STRUCTURE

## WEBSITE ADMINISTRATION

### KCC CaseView

| | |
|---|---|
| Creation of case-specific public website | Waived |
| Hosting case-specific public website | $200.00 per month |
| Image Storage | Waived |
| Creditor Storage | Waived |
| Case-specific voicemail box for creditor inquiries | Waived |
| Case-specific e-mail box for creditor inquiries | Waived |

## OPTIONAL SERVICES[1]

### Consulting Services & Rates

| | | |
|---|---|---|
| Clerical | $45.00 - $65.00 | per hour |
| Project Specialist | $80.00 - $140.00 | per hour |
| Consultant | $165.00 - $245.00 | per hour |
| Senior Consultant | $255.00 - $275.00 | per hour |
| Senior Managing Consultant | $295.00- $325.00 | per hour |
| Technology/Programming Consultant | $145.00 - $195.00 | per hour |
| Weekend, holidays and overtime | Waived | |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning and bar-coding) | $0.25 per imaged page |
| Virtual data room | $2,500 one time set-up fee |

---

[1] Expenses shall be consistent with the general practice procedures authorized in the District of Delaware.

1



# KCC OFFICIAL COMMITTEE
# FEE STRUCTURE

**Notice Printing & Publication Services**

| | |
|---|---|
| Setup | Waived |
| Inserting creditor information into customized documents | $0.15 per piece |
| Electronic noticing (e-mail) | $50.00 per 1,000 |
| Electronic noticing (domestic facsimile) | $0.50 per page |
| Document folding and inserting | $0.10 per document |
| Legal notice publishing | Quote prior to publishing |

**Other Expenses**

| | |
|---|---|
| Printing, photocopies and labels | $0.10 per image |
| Facsimile – standard incoming/outgoing correspondences | No charge |

2

# EXHIBIT B

## CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Confidentiality Agreement and Nondisclosure Agreement ("Agreement") is hereby entered into as of _____ by and between the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company and its affiliated debtors and debtors-in-possession (the "Debtors") and [INSERT CREDITOR NAME] ("Creditor").

### WITNESSETH

WHEREAS, Creditor has made a Request for Confidential Information and/or Committee Confidential Information pursuant to the Order Regarding Creditor Access to Information and Setting and Fixing Creditor Information Sharing Procedures and Protocols Under 11 U.S.C. §§ 105(a), 1102(b)(3) and 1103(c) (the "Protocol Order");[1]

WHEREAS, this Agreement is intended to facilitate the delivery of Confidential Information and/or Committee Confidential Information from the Debtors or the Committee to Creditor and to establish Creditor's rights and obligations with respect to such information.

NOW THEREFORE, in consideration of the foregoing, and as a condition to the Committee providing such Confidential Information and/or Committee Confidential Information to Creditor, the Committee and Creditor hereby agree as follows:

1.    With respect to Confidential Information and/or Committee Confidential Information disclosed under this Agreement, the party receiving Confidential Information and/or Committee Confidential Information shall:

    a.    hold the Confidential Information and/or Committee Confidential Information in confidence, exercising a degree of care not less than the care used by receiving party to protect its own proprietary or confidential information that it does not wish to disclose;

    b.    restrict disclosure of the Confidential Information and/or Committee Confidential Information solely to the [CREDITOR], its affiliates, and its and their directors, officers, employees, and/or agents/consultants, with a need to know and not disclose it to any other person;

    c.    advise those persons to whom the Confidential Information and/or Committee Confidential Information is proposed to be disclosed of their obligations with respect to

---

[1] All capitalized terms not herein defined shall have the same meaning as ascribed to them in the Protocol Order, a copy of which is attached hereto as Exhibit 1.

the Confidential Information and/or Committee Confidential Information; and

d.   use the Confidential Information and/or Committee Confidential Information only in a manner approved in writing by the Committee.

2.     The Confidential Information and the Committee Confidential Information shall be deemed the property of the Committee and, upon written request, the Creditor shall return to the Committee, or destroy all Confidential Information and/or Committee Confidential Information received in tangible form or will destroy or erase such Confidential Information and/or Committee Confidential Information if it is recorded on an erasable storage medium, all such Confidential Information and/or Committee Confidential Information, except in each case as required by law, rule, regulation or internal document retention policies for compliance purposes. If Creditor loses or makes an unauthorized disclosure of any Confidential Information and/or Committee Confidential Information, it shall notify the Committee promptly and use reasonable efforts to retrieve the lost or wrongfully disclosed Confidential Information and/or Confidential Committee Information.

3.     The Creditor shall have no obligation to preserve the proprietary nature of such Confidential Information and/or Committee Confidential Information which:

a.   was lawfully in Creditor's possession at the time of the disclosure and was obtained free of any obligation to keep it confidential;

b.   is or becomes publicly available other than by a breach of this Agreement;

c.   is developed by or on behalf of such party independent of any Confidential Information and/or Committee Confidential Information;

d.   is received from a third party whose disclosure to the knowledge of the party, after due inquiry, does not violate any confidentiality obligation; or

e.   is disclosed pursuant to the requirement or request of a duly empowered governmental, regulatory or supervisory agency or authority or court of competent jurisdiction to the extent such disclosure is required by a valid law, regulation, rule or court order, and prompt notice is given by the recipient to the disclosing party of any such requirement or request (except in connection with any

regulatory examination), unless such notice is prohibited by law.

4.     This Agreement shall benefit and be binding upon the parties hereto and with each party's written consent their respective successors and assigns.

5.     This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to choice of law principles and shall be subject to the jurisdiction of the Bankruptcy Court.

6.     This Agreement shall become effective as of the date executed by all parties to the Agreement and shall terminate upon the earlier of the closing or dismissal of the Debtors' cases, except as may otherwise be ordered by the Court.

7.     The parties acknowledge that in the event of an unauthorized disclosure, the damages incurred by the Debtors or the Committee may be difficult if not impossible to ascertain, and that the Debtors or the Committee may seek injunctive relief as well as monetary damages against the Creditor for breaches this Agreement.

8.     The Creditor acknowledges that it is aware and will advise its representatives that the United States securities laws restrict persons with material non-public information about a company obtained directly or indirectly from that company from purchasing or selling securities of such company and from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

9.     This Agreement constitutes the entire understanding between the parties with respect to the Confidential Information and/or Committee Confidential Information provided hereunder.  No amendment or modification of this Agreement shall be valid or binding on the parties unless made in writing and executed on behalf of each party by its duly authorized representative.

10.    This Agreement may be executed in one or more counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.  Facsimile signatures to this Agreement shall be deemed to be binding upon the parties.

11.    Each party represents that it has caused this Agreement to be executed on its behalf as of the date written below by a representative empowered to bind that party with respect to the undertakings and obligations contained herein.

Executed and effective this ___day of _____, 2009.