```
                  IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE

                                - - -

IN RE:                       :  Chapter 11
                             :
TRIBUNE COMPANY, et al,      :  Case No. 08-13141 (KJC)
                             :
                             :  Wilmington, Delaware
                             :  January 15, 2009
          Debtors           :  1:39 o'clock p.m.
. . . . . . . . . . . . . . . :

                             HEARING
                  BEFORE THE HONORABLE KEVIN J. CAREY
                  UNITED STATES BANKRUPTCY COURT JUDGE

                                - - -

APPEARANCES:

For the Debtor:      JAMES F. CONLAN, ESQUIRE
                     BRYAN KRAKAUER, ESQUIRE
                     KEVIN LANTRY, ESQUIRE
                     JANET HENDERSON,ESQUIRE
                     Sidley Austin LLP
                     One South Dearborn Street
                     Chicago, IL  60603

                            - and -

                     NORMAN L. PERNICK, ESQUIRE
                     J. KATE STICKLES, ESQUIRE
                     Cole, Shotz, Meisel, Forman
                     & Leonard, P.A.
                     1000 N. West Street
                     Suite 1200
                     Wilmington, Delaware  19801

For the Trustee:     WILLIAM HARRINGTON, ESQUIRE
                     U.S. Department of Justice
                     Office of the United States Trustee
                     J. Caleb Boggs Federal Building
                     844 King Street, Suite 2207
                     Wilmington, DE  19801

                                - - -
```

APPEARANCES:  (continued)
For the Creditors    DAVID M. LeMAY, ESQUIRE
Committee:           DOUGLAS E. DEUTSCH, ESQUIRE
                     HOWARD SEIFE, ESQUIRE
                     Chadbourne & Parke LLP
                     30 Rockefeller Plaza
                     New York, NY  10112

                            - and -

                     ADAM G. LANDIS, ESQUIRE
                     Landis Rath & Cobb LLP
                     919 Market Street
                     Suite 1800
                     Wilmington, DE  19899

For Barclays:        WILLIAM E. CHIPMAN, JR., ESQUIRE
                     Edwards Angell Palmer & Dodge
                     919 North Market Street
                     15th Floor
                     Wilmington, DE  19801

                     BRIAN TRUST, ESQUIRE
                     AMIT TREHAN, ESQUIRE
                     Mayer Brown LLP
                     1675 Broadway
                     New York, NY  10019-5820

For JP Morgan Chase: DAMIAN S. SCHAIBLE, ESQUIRE
                     Davis Polk & Wardwell
                     450 Lexington Avenue
                     New York, NY  10017

For Pension Benefit  CASSANDRA BURTON, ESQUIRE
Guaranty Corp:

                            - - -

Audio Operator:      Theresa Pullan

Transcribed by:      Paula L. Curran, CET

        (Proceedings recorded by The Record Player digital
sound recording; transcript provided by AAERT-certified
transcriber.)

```
 1                  (The following occurred in open court at 1:39

 2       o'clock p.m.)

 3                  THE CLERK:  All rise.

 4                  THE COURT:  Good afternoon, everyone.

 5                  MR. PERNICK:  Good afternoon, your Honor.  Norman

 6       Pernick on behalf of the debtor, Tribune Companies, your

 7       Honor.

 8                  Your Honor, I think we have a pretty straightforward

 9       agenda today and I propose to just go through it in the order

10       that it was listed, unless the Court prefers otherwise.

11                  THE COURT:  That's fine.

12                  MR. PERNICK:  Okay.  And just to make sure that

13       we're in sync with the Court, I'll just go through each one,

14       even where you've entered an order, just to make sure that

15       we've got our records straight.

16                  THE COURT:  Very well.

17                  MR. PERNICK:  Item Numbers 1 through 10, Item Number

18       1 was the cash management motion and Numbers 2 through 10

19       were various retention applications.  They've been continued,

20       by agreement, to the February 2nd omnibus hearing.

21                  THE COURT:  That's fine.  I do have two comments I'd

22       like to make.  One is, I do note that with respect to one of

23       the applications, it indicates that hourly rates, in some

24       cases, might reach as high as $1,100.  I will tell you what

25       I've told others and so far, it's really only come up with
```

4

1    accounting firms and that is, it may be that the market has

2    reached that place, but I've never yet awarded an hourly rate

3    of $1,000 or more and if someone would like me to do that, at

4    the appropriate time, they will need to make an evidentiary

5    record that that is where the market now is.

6            And I guess secondly, consistent with my practice in

7    cases of this size, I do appoint fee examiners.

8            MR. PERNICK:  Mm-hamm.

9            THE COURT:  So, I would ask that the parties consult

10   and recommend two or three candidates for that position for

11   me to consider.

12           MR. PERNICK:  Will do, your Honor.

13           THE COURT:  Thank you.

14           MR. PERNICK:  Item Number 11 was critical vendor.

15   Your Honor was kind enough to enter an order granting that

16   motion.

17           Item Number 12 was the authorization implementation

18   of an employee retention plan with respect to a limited

19   number of employees.  It's not the major plan that we will

20   probably be proposing within the next month.  Your Honor was

21   kind enough to enter that order.

22           Item Number 13 was authority to pay pre-petition

23   contributions to a union pension plan and again, the Court

24   was kind enough to enter that order.

25           That takes us to Item Number 14, which was the

1    ordinary course of payment to pre-petition claims for

2    brokers.  There were no objections filed to that motion.  We

3    actually did file a supplemental statement in support of that

4    and we're going to present to the Court a consensual modified

5    order.  Ms. Henderson is going to present that in a moment,

6    your Honor.  I'm just going to run through overview of the

7    matters.

8              THE COURT:  Very well.

9              MR. PERNICK:  Item Number 15 is the DIP, the final

10   DIP order and Mr. Krakauer is going to present a consensual

11   modified final order to the Court on that.

12             Item Number 16 was a motion authorizing a post-

13   petition master services agreement with Dow Jones and again,

14   Ms. Henderson will present a consensual modified final order

15   on that matter to the Court.

16             Item Number 17 was the interim compensation

17   procedures.  There was some discussion with the U.S. Trustee

18   and the committee and we do have a proposed form of order

19   that's consensual, to present with the Court.  I'm sorry, we

20   did file that with the Court, actually.  And Ms. Henderson's

21   prepared to answer any questions or I can, that the Court may

22   have on that.

23             THE COURT:  I've signed the order.

24             MR. PERNICK:  Thank you, your Honor.  Item Number 18

25   was the first omnibus motion to reject leases.  We did

```
 1    withdraw the lease with respect to one landlord and we filed

 2    a revised form of order with the Court.

 3              THE COURT:  It has been signed.

 4              MR. PERNICK:  Thank you, your Honor.  Item Number 19

 5    was the ordinary course professional's motion.  A

 6    certification of counsel was filed with the Court on that

 7    one, also.

 8              THE COURT:  I signed that order, as well.

 9              MR. PERNICK:  Thank you.  Item Number 20 is the

10    Section 366 final order for utilities.  There were some

11    objections filed.  We have resolved all the objections and

12    when we get to that in the agenda, I will present to the

13    Court a final order proposed for that matter.

14              THE COURT:  All right.

15              MR. PERNICK:  And the last item is Item Number 21,

16    which is a status report on the extension of time to file

17    statements and schedules and Ms. Henderson's going to handle

18    that.

19              MR. LANDIS:  Your Honor, if I might, for the record,

20    Adam Landis from Landis Rath & Cobb.  I'm proposed Delaware

21    counsel to the Official Committee of Unsecured Creditors.  I

22    wanted to do a couple of introductions, your Honor, of my

23    colleagues from Chadbourne & Parke, who are here.  They are

24    proposed counsel to the Official Committee, as well.  I have

25    to my immediate left, Howard Seife, David LeMay and Douglas
```

1    Deutsch.  I filed motions for their admission pro hoc vice,

2    all of which have been approved, at this point.

3           I want to point out for the record that, as is

4    typical in many of these cases, a lot goes on outside the

5    courtroom and we've been working with the debtors to get to

6    consensual orders where we had questions or issues.

7    Ordinarily, your Honor, you wouldn't be treated to this level

8    of fire power of committee professionals.  However, we took

9    the opportunity, while everyone was in Wilmington, to meet

10    with the debtors to talk about a number of matters in the

11    case that are pending, that we expect to be pending and we

12    used the time pretty efficiently, so we figure we have

13    already combined and at least, be introduced to your Honor,

14    because I'm sure you'll be seeing some subset of this group

15    throughout the case.

16           THE COURT:  I'll look forward to it.

17           MR. LANDIS:  Thank you.

18           MS. HENDERSON:  Good afternoon, your Honor.  Janet

19    Henderson, Sidley Austin, on behalf of the debtors.

20           Your Honor, the first matter that we have for you

21    today in terms of presenting an order, relates to the

22    so-called broker motion.  This was a first day motion.  A

23    portion of the motion was bifurcated in respect of sales

24    representative employees.  The U.S. Trustee raised questions

25    concerning the amount that might be payable to these

1   employees over the $10,950 cap.  We subsequently went back,

2   did some further diligence, filed a supplemental statement.

3   We believe the amounts involved and this is, I believe, all

4   in the supplemental statement, aggregate around $350,000

5   total.

6           We've walked through this with the United States

7   Trustee's Office, with the committee, the steering committee.

8   There are no objections and if it pleases the Court, we are

9   prepared to submit a form of order today.

10          THE COURT:  That would be fine.  Let me ask if

11  anyone else cares to be heard in connection with this motion.

12  I hear no response.

13          MS. HENDERSON:  May I approach, your Honor?

14          THE COURT:  You may.  Thank you.

15          (Pause.)

16          THE COURT:  That order has been signed.

17          MS. HENDERSON:  Thank you, your Honor.

18          MR. KRAKAUER:  Your Honor, Bryan Krakauer, on behalf

19  of the debtors.  This is in connection with our DIP financing

20  final order with Barclays.  We've had extensive discussions

21  with the unsecured creditors' committee, through their

22  counsel on the form of final order.  We've lost, so there is

23  an informal steering committee, also, the senior lenders and

24  we've also been confirmed with them fairly extensively on the

25  order.  We've worked out any issues that they had.  Also

1    talked to the U.S. Trustee.  So, what we have to present is

2    a, I think, fully consensual final order.

3            A couple of things, just for the record.  One of the

4    points the committee raised pertinently, we agree with is for

5    the LC facility that we're not replacing the existing letters

6    of credit that were issued pre-petition.  To the extent there

7    are un-drawn, existing letters of credit, that are

8    outstanding, we would not take the new facility to basically

9    replace them.  Whatever happens with those existing LCs

10   happens.  And we've also indicated we're willing to confirm

11   that in writing to the creditors' committee, we agree with

12   that comment.

13           In terms of the order that's being presented for

14   certain things, it requires us to go back to the Court, for

15   instance, to extend the maturity date, to change any economic

16   terms, if we were going to do that.  For certain other

17   things, it does not require us to come back to the Court if

18   we make non-economic types of changes.  But we've also agreed

19   with the committee, if we're going to do that, we will give

20   them advance notice, so they have an opportunity to comment

21   and respond.

22           There is a -- one of the points is with respect to

23   permitted indebtedness, there are some provisions in the

24   order for, in our agreement with Barclays, for us to incur

25   new debt and there's a reference and a side letter to the

1     fact that it has to be consistent with this financing order.

2     Essentially, what that means and people just asked me to put

3     it on the record, is the fact that no -- none of the new debt

4     that would be incurred to the administrative claim, would be

5     equal or senior to the Barclays super-priority.  And that's

6     basically, the idea being consistent with this order.

7               And that's basically, about it.  There is one point

8     that the U.S. Trustee raised with respect to payment of

9     Barclays' fees and expenses for their counsel in doing the

10    work on these documents and there's been a direct discussion

11    with Mr. Trust from Barclays and Mr. McMahon.  So, I'll let

12    Mr. Trust to state what the agreement is on that.

13               THE COURT:  Very well.

14               MR. KRAKAUER:  Okay.

15               MR. TRUST:  For the record, your Honor, Brian Trust

16    of Mayer Brown, counsel to Barclays Bank, PLC, briefly.  In

17    connection with the resolution of any outstanding issues or

18    discussions in connection with the final order, I'd like to

19    put two statements with respect to two constituents, on the

20    record.

21               One, based on my discussions with Mr. McMahon of the

22    Office of the United States Trustee, while Barclays

23    professionals and counsel are not 327 professionals and

24    therefore, they are not filing fee applications, we have

25    agreed and have undertaken to provide a copy, courtesy copy

1    of any invoices when issued, to Mr. McMahon.  And I've also

2    been asked to confirm and of course, I do confirm, that if,

3    for any reason, there was any dispute over the reasonableness

4    of said fees, that this Court would have jurisdiction to

5    determine the resolution of that issue.

6             I'd also like to, very briefly, just put on the

7    record two points, your Honor, with respect to discussions

8    with Cleary Gottlieb, who is counsel for Morgan Stanley.  We

9    have agreed to say the following.  One, no "safe harbor"

10   rights of any entity in connection with or an account of a

11   contract or transaction of the type listed in Bankruptcy

12   Code, Sections 555, 556, 559, 560 and 561.  Whether such

13   "safe harbor" rights may or may not -- I'm sorry -- whatever

14   such "safe harbor" rights may or may not be are affected by

15   the entry of this final order approving the DIP financing.

16            I would also note, your Honor, that to the extent

17   Morgan Stanley affected a valid pre-petition set-off right,

18   the final order approving the DIP financing is not intended

19   to affect such pre-petition set-off right to the extent that

20   pre-petition set-off right was, in fact, valid.  Thank you,

21   your Honor.

22            THE COURT:  Thank you.

23            MR. KRAKAUER:  If there are any other comments and

24   then I'll finish up.

25            THE COURT:  All right, let me ask if anyone else

1   cares to be heard in connection with the financing motion.

2           MR. LeMAY:  May I be heard briefly, your Honor?

3           THE COURT:  Yes.

4           MR. LeMAY:  Good afternoon, your Honor, my name is

5   David LeMay from Chadbourne & Parke.  It's a pleasure to be

6   in your courtroom.  We represent the Official Committee of

7   Unsecurd Creditors.  I should note, also, that our retention

8   papers, as well as those of Mr. Landis' firm, will be on file

9   tomorrow.

10          Your Honor, the committee did quite a bit of due

11  diligence on both the financial and the legal side with

12  respect to the DIP motion.  I'm not going to give a long,

13  windy recitation.  But the committee was satisfied that this

14  DIP was appropriate within its own terms.  And what I mean by

15  that is, it's a very short-term facility, as the Court knows

16  and there are a number of features which make sense or, at

17  least, don't make egregious nonsense in this facility, that

18  might not be quite so innocuous in a different or other type

19  of facility.  So, that's just by way of saying if, in April,

20  a longer facility comes down the road, we're going to look at

21  all of that with a very fresh eye.

22          With respect to this facility, your Honor, we did

23  ask for two changes which I wanted the Court to know and

24  they're incorporated in the order that you're going to be

25  asked to sign.  One, the amount of the carve out has been

1   increased from $5 to $7 and a half million.  And two, perhaps

2   more importantly from the estate point of view, avoidance

3   actions and the proceeds of avoidance actions will generally

4   not be subject to the liens and super-priority claims of the

5   debtor of possession financer.  The interim order

6   contemplated that those avoidance actions and proceeds would

7   be so subject.  We negotiated with that.  The resolution is a

8   general rule that they are not to be subject to the liens or

9   claims of the debtor in possession financer, with the

10  exception, which we think is a perfectly sensible exception,

11  that to the extent that the debtor in possession lender has

12  gone out of pocket to fund the carve out, then they can look

13  to avoidance actions and proceeds thereof, to replenish, in

14  effect, that $7 and a half million carve out.

15          THE COURT:  I saw that in the blackline.  I don't

16  think I've seen that before.  I thought that was a clever

17  resolution of that issue.

18          MR. LeMAY:  Well, the first person who showed it to

19  me, is now a colleague of yours in the District of

20  Massachusetts.  His name is Joel Rosenthal and he was the guy

21  who taught me that that was a good way to breach the ground.

22  Thank you, your Honor.

23          THE COURT:  Thank you.  Does anyone care to be heard

24  in connection with the financing motion?

25          MS. BURTON:  Good afternoon, your Honor, Cassandra

1  Burton for the Pension Benefit Guaranty Corporation.  PBGC

2  just wants to go on the record stating that it does not

3  object to this motion.  Based on conversations with debtor's

4  counsel, when PBGC representatives were informed that the

5  non-debtor Cubs are not an originator of this facility and

6  that the Cubs are not subject to securitization under this

7  facility.  That is all.

8           THE COURT:  Thank you.

9           MS. BURTON:  Thank you.

10          THE COURT:  Does anyone else care to be heard?

11          MR. SCHAIBLE:  Your Honor, Damian Schaible of Davis,

12  Polk & Wardwell on behalf of JP Morgan, as agent for the

13  debtors pre-petition senior lender facility.  Much like

14  counsel to the unsecured creditors committee, I just wanted

15  to put on the record today that the agent and the lenders

16  have no objection to the relief requested today in the

17  Barclays facility.  A number of our comments to both the

18  facility and the order having been accepted.  However, we

19  would reserve all of our rights regarding the terms of any

20  extension of or amendment to this facility or a replacement

21  of the facility, because certain of the terms that are in the

22  facility are okay for the agent and the lenders for such a

23  short-term facility, but might well not be with respect to a

24  longer facility.  Thank you, your Honor.

25          THE COURT:  Thank you.  Does anyone else want to be

1    heard in connection with the financing motion?  I hear no

2    further response.

3              MR. KRAKAUER:  Your Honor, you sound like you have

4    the blackline.

5              THE COURT:  I do and I have reviewed it and I do not

6    have any questions.  Have any further changes been made since

7    the blackline that I received?

8              MR. KRAKAUER:  No, there is not, your Honor.

9              THE COURT:  All right.

10             MR. KRAKAUER:  I'm very happy to report that I have

11   an original, do you want me to hand it up?

12             THE COURT:  Yes.

13             MR. KRAKAUER:  Okay.

14             THE COURT:  Thank you.  All right, well, based upon

15   the record made at the hearing on the interim relief that was

16   granted and the obviously, extensive discussions that have

17   occurred since that time, with the constituents concerned and

18   in light of the absence of objections, I will grant the

19   relief that's been requested and I have signed that order.

20             MR. KRAKAUER:  Thank you very much, your Honor.

21             MS. HENDERSON:  Your Honor, the next item that we

22   have for you is the motion of the Chicago Tribune Company for

23   an order authorizing entry into a post-petition master

24   services agreement with Dow Jones & Company.  There were no

25   objections filed to this motion.

1          However, through discussions between the parties and

2     with the creditors committee, we concluded that one

3     particular provision could be improved from a drafting point

4     of view.  There was an inadvertent technical glitch with

5     respect to a timing issue for dispute resolution.  We opted

6     to clarify that provision with assistance of the committee

7     and consequently, we filed an amendment a couple of days ago

8     for that sole purpose, to simply to correct this draft and

9     glitch.  Consequently, no certification was filed, just by

10    virtue of the timing in getting the amendment.  But I do have

11    the form of order, today, your Honor, if I may approach.

12          THE COURT:  You may.

13          (Pause.)

14          THE COURT:  Thank you.  Does anyone else care to be

15    heard in connection with this motion?  I hear no response.

16    That order has been signed.

17          MS. HENDERSON:  Thank you, your Honor.

18          MR. PERNICK:  Your Honor, Item Number 19 is the

19    final hearing on the utilities motion.  Formal objections --

20          THE COURT:  That would be Number 20.

21          MR. PERNICK:  I'm sorry, Number 20, thank you.

22    Formal objections were filed by Florida Power & Light

23    Company, Connecticut Light & Power Company, and Pepco Energy

24    Services and also, a letter response was submitted by

25    Alternative Waste Water Systems.

```
 1              In addition, as I'm sure the Court saw, Florida

 2    Power & Light moved to reconsider the interim order.  The

 3    motion for reconsideration and all the objections have been

 4    resolved or settled, subject to agreement between the debtors

 5    and the objecting utility providers and I have a proposed

 6    form of final order and a redline, which I'll be happy to

 7    walk the Court through, but if I can approach?

 8              THE COURT:  Yes.

 9              MR. PERNICK:  That might help you if you can look at

10    it.

11              THE COURT:  Thank you.

12              (Pause.)

13              THE COURT:  Thank you.

14              MR. PERNICK:  The specific change of the substantive

15    changes are, first, that the introductory paragraph now

16    includes references to the objections and the motion for

17    reconsideration.

18              Next, is that Energy Louisiana, Energy New Orleans,

19    Florida Power & Light, Potomac Electric and DelMarVa Power &

20    Light are excepted from this interim order and the final

21    order.

22              Third, Pepco Energy Services and Alternative Waste

23    Water Systems are excluded from the list of utility

24    providers. Both, at their request, they do not consider

25    themselves to be utilities and so, they do not want to be --
```

1   and we're fine with that -- they do not want to be under the

2   terms and conditions of this order.  And the exhibit that's

3   attached to your Honor's copy of the final order, deletes

4   those two from the exhibit.

5           Footnote 3, now provides -- I'm sorry, Footnote 3

6   now provides that the motion is actually withdrawn as to PES

7   and AWS, that's just to be clear on the record.

8           And Footnote 4, provides that pursuant to the

9   authority that was granted by the Court in the interim order,

10  the debtors have reached agreement with the objecting utility

11  providers, Connecticut Light & Power Company and all of the

12  other ones that are listed there.  And in light of the

13  resolution of all the objections and to the motion to

14  reconsider, we'd respectfully request that the Court enter

15  the order.  Of course, if your Honor has any questions, I'm

16  happy to answer them.

17          THE COURT:  All right, thank you.  I have no

18  questions.  Let me ask if anyone else cares to be heard in

19  connection with this motion?

20          MR. LeMAY:  Very briefly, your Honor.  Your Honor,

21  David LeMay, again, for the committee.  This -- the

22  resolution of this motion was one of the several topics that

23  the debtors' counsel took us through in the meeting that we

24  just concluded before this hearing.  We've reviewed the

25  proposed resolutions with objectors.  We think they're very

1  sensible and on that basis, I would urge that the Court grant

2  the order.

3          THE COURT:  All right, thank you.  Does anyone else

4  care to be heard?  I hear no further response.

5          MR. PERNICK:  Your Honor, just so the Court's aware,

6  we've actually also received additional adequate assurance

7  requests and as the Court would expect, we are working

8  through those with those parties.  But none of them have an

9  objection to the order and we've resolved most of them and we

10  anticipate resolving any of the other ones that are

11  outstanding.

12          THE COURT:  Very well.  In light of that, the order

13  has been signed.

14          MR. PERNICK:  Thank you, your Honor.

15          MS. HENDERSON:  Your Honor, I believe the last item

16  before the Court today is a status conference in respect to

17  the debtor's progress in completing the schedules and

18  statement of financial affairs.  Your Honor might recall that

19  the date set, pursuant to the last hearing, with the

20  understanding that it was not a date with which we would very

21  likely be able to comply, was January 22nd.  Hence, the

22  determination to have a status hearing today, with regard to

23  our progress and what a realistic date would appear to be.

24          I can report, your Honor, that substantial progress

25  has been made.  As your Honor can appreciate, there is a

1    great deal of information to be accumulated and processed

2    when we are talking about 111 debtors spread over 15 states

3    and the District of Colombia.  This is a massive and somewhat

4    herculean effort.  But our financial advisors and the company

5    are working very, very hard to get this done as expeditiously

6    as possible.

7            We have been in communication with the committee,

8    the steering committee for our lenders and of course, the

9    United States Trustee's Office in respect of those efforts

10   and our progress and I can report that we have an

11   understanding with Mr. McMahon that our date for filing the

12   schedules can be extended until, first -- 60 days from our

13   initial filing date, so I believe that will be March 22nd or

14   23rd.  That's 60 days from January 22nd.

15           That said, we'd like to tell you that we don't think

16   that there will be any amendments required to the schedules,

17   once they are filed.  It's entirely possible that

18   particularly in respect of Schedule F, which is proving to be

19   the most meddlesome, that it may be than an amendment will be

20   required, at some juncture, but we will do our best to avoid

21   that.

22           What we would like to do, your Honor, is if

23   possible, submit an order under certification of counsel

24   rather than re-file an entirely new motion, if that's

25   acceptable to the Court?

1              THE COURT:  That's fine and the order that I signed

2    on December 10th, does indicate that the subject of this

3    hearing would be to consider whether there should be a

4    further extension.  So, I think that's sufficient notice to

5    the world that debtor might and likely would ask for more

6    time, as was indicated at the first day hearing.  So, I'm

7    willing to accept an order under certification, but I'll ask

8    now whether anyone would like to heard in connection with

9    that request?  I hear no further response.

10             MS. HENDERSON:  Thank you, your Honor.

11             THE COURT:  All right.  Is there anything further

12   for today?

13             MR. PERNICK:  The debtor has nothing further, your

14   Honor, except thank you for your time.

15             THE COURT:  You're welcome.  Thank you, Counsel,

16   that concludes this hearing.  The Court will stand in recess.

17             (Proceeding adjourned 2:05 o'clock p.m.)

18                             *  *  *

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Geraldine C. Laws, CET          Dated 1/26/09
Laws Transcription Service