

# FORM 8-K

## TRIBUNE CO - TRBCQ

**Filed: April 09, 1999 (period: April 05, 1999)**

Report of unscheduled material events or corporate changes.

Source: TRIBUNE CO, 8-K, April 09, 1999

EXHIBIT 4

TRIBUNE COMPANY,

ISSUER

AND

BANK OF MONTREAL TRUST COMPANY,

TRUSTEE

INDENTURE

DATED AS OF APRIL 1, 1999

SUBORDINATED DEBT SECURITIES

Source: TRIBUNE CO, 8-K, April 09, 1999

Reconciliation and tie between Trust Indenture Act of 1939 and
Indenture dated as of April 1, 1999 between Tribune Company and Bank of Montreal
Trust Company

| Trust Indenture Act Section | Indenture Section |
|---|---|
| (S) 310 (a)(1) | 6.09 |
| (a)(2) | 6.09 |
| (a)(3) | Not Applicable |
| (a)(4) | Not Applicable |
| (a)(5) | 6.09 |
| (b) | 6.08, 6.10 |
| (S) 311 (a) | 6.13 |
| (b) | 6.13 |
| (b)(2) | 7.03(a), 7.03(b) |
| (S) 312 (a) | 7.01, 7.02(a) |
| (b) | 7.02(b) |
| (c) | 7.02(c) |
| (S) 313 (a) | 7.03(a) |
| (b) | 7.03(b) |
| (c) | 7.03(a), 7.03(b) |
| (d) | 7.03(b) |
| (S) 314 (a) | 7.04 |
| (a)(4) | 10.07 |
| (b) | Not Applicable |
| (c)(1) | 1.02 |
| (c)(2) | 1.02 |
| (c)(3) | Not Applicable |
| (d) | Not Applicable |
| (e) | 1.02 |
| (S) 315 (a) | 6.01(a) |
| (b) | 6.02, 7.03(a) |
| (c) | 6.01(b) |
| (d) | 6.01(c) |
| (d)(1) | 6.01(a), 601(c)(1) |
| (d)(2) | 6.01(c)(2) |
| (d)(3) | 6.01(c)(3) |
| (e) | 5.14 |
| (S) 316 (a) | 1.01 |
| (a)(1)(A) | 5.02, 5.12 |
| (a)(1)(B) | 5.02, 5.13 |
| (a)(2) | Not Applicable |
| (b) | 5.08 |
| (c) | 1.04(d) |
| (S) 317 (a)(1) | 5.03 |
| (a)(2) | 5.04 |

-i-

Source: TRIBUNE CO, 8-K, April 09, 1999

```
       (b)              ............................   10.03
(S) 318 (a)             ............................    1.07
```
_____

NOTE:  This reconciliation and tie shall not, for any purpose, deemed to be a part of the Indenture.

-ii-

NOTE:  This reconciliation and tie shall not, for any purpose, deemed to be a part of the Indenture.

-ii-

TABLE OF CONTENTS

|  | Page |
|---|---|
| RECITALS OF THE COMPANY | 1 |
| ARTICLE I DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION | 1 |
| SECTION 1.01.  Definitions | 1 |
| Act | 2 |
| Affiliate | 2 |
| Authenticating Agent | 2 |
| Board of Directors | 2 |
| Board Resolution | 2 |
| Business Day | 2 |
| Commission | 2 |
| Company | 3 |
| Company Request or Company Order | 3 |
| Corporate Trust Office | 3 |
| Corporation | 3 |
| Currency | 3 |
| Depository | 3 |
| Discharged | 3 |
| Dollar or $ | 3 |
| Event of Default | 3 |
| Fixed Rate Security | 3 |
| Floating Rate Security | 3 |
| Foreign Currency | 3 |
| Global Security | 3 |
| Holder | 4 |
| Indenture | 4 |
| Officers' Certificate | 4 |
| Opinion of Counsel | 4 |
| Original Issue Discount Security | 4 |
| Outstanding | 4 |
| Paying Agent | 5 |
| Person | 5 |
| Predecessor Security | 5 |
| Redemption Date | 6 |
| Redemption Price | 6 |
| Responsible Officer | 6 |
| Securities | 6 |
| Security Register | 6 |
| Significant Subsidiary | 6 |
| Subsidiary | 6 |
| Trustee | 6 |

Source: TRIBUNE CO, 8-K, April 09, 1999

|  |  | Page |
|---|---|---|
|  | Trust Indenture Act............................................... | 6 |
|  | Vice President.................................................... | 7 |
|  | United States..................................................... | 7 |
|  | U.S. Government Obligations....................................... | 7 |
| SECTION 1.02. | Compliance Certificates and Opinions.............................. | 7 |
| SECTION 1.03. | Form of Documents Delivered to Trustee............................ | 7 |
| SECTION 1.04. | Acts of Holders................................................... | 8 |
| SECTION 1.05. | Notices, Etc., to Trustee and Company............................. | 9 |
| SECTION 1.06. | Notice to Holders; Waiver......................................... | 10 |
| SECTION 1.07. | Conflict with Trust Indenture Act................................. | 10 |
| SECTION 1.08. | Effect of Headings and Table of Contents.......................... | 10 |
| SECTION 1.09. | Successors and Assigns............................................ | 10 |
| SECTION 1.10. | Separability Clause............................................... | 11 |
| SECTION 1.11. | Benefits of Indenture............................................. | 11 |
| SECTION 1.12. | Governing Law..................................................... | 11 |
| SECTION 1.13. | Legal Holidays.................................................... | 11 |
| SECTION 1.14. | Incorporators, Stockholders, Officers and Directors Exempt from Individual Liability............................... | 11 |

ARTICLE II
SECURITY FORMS....................................................... 12

| SECTION 2.01. | Forms Generally................................................... | 12 |
| SECTION 2.02. | Form of Trustee's Certificate of Authentication................... | 12 |
| SECTION 2.03. | Securities Issuable in the Form of a Global Security.............. | 13 |
| SECTION 2.04. | CUSIP Number...................................................... | 15 |

ARTICLE III
THE SECURITIES....................................................... 16

| SECTION 3.01. | Amount Unlimited; Issuable in Series.............................. | 16 |
| SECTION 3.02. | Denominations..................................................... | 19 |
| SECTION 3.03. | Execution, Authentication, Delivery and Dating.................... | 19 |
| SECTION 3.04. | Temporary Securities.............................................. | 21 |
| SECTION 3.05. | Registration, Registration of Transfer and Exchange............... | 21 |
| SECTION 3.06. | Mutilated, Destroyed, Lost and Stolen Securities.................. | 22 |
| SECTION 3.07. | Payment of Interest; Interest Rights Preserved.................... | 23 |
| SECTION 3.08. | Persons Deemed Owners............................................. | 24 |
| SECTION 3.09. | Cancellation...................................................... | 24 |
| SECTION 3.10. | Computation of Interest........................................... | 24 |
| SECTION 3.11. | Currency of Payments in Respect of Securities..................... | 24 |
| SECTION 3.12. | Judgments......................................................... | 25 |

Source: TRIBUNE CO, 8-K, April 09, 1999

```
                                                                      Page
                                                                      ----
                              ARTICLE IV
                       SATISFACTION AND DISCHARGE............................  25

SECTION 4.01.   Satisfaction and Discharge of Indenture...................  25
SECTION 4.02.   Application of Trust Money................................  27

                              ARTICLE V
                       REMEDIES.........................................  27

SECTION 5.01.   Events of Default.........................................  27
SECTION 5.02.   Acceleration of Maturity; Rescission and Annulment.........  29
SECTION 5.03.   Collection of Indebtedness and Suits for
                   Enforcement by Trustee.................................  30
SECTION 5.04.   Trustee May File Proofs of Claim..........................  31
SECTION 5.05.   Trustee May Enforce Claims Without Possession of
                   Securities............................................  32
SECTION 5.06.   Application of Money Collected............................  32
SECTION 5.07.   Limitation on Suits.......................................  33
SECTION 5.08.   Unconditional Right of Holders to Receive Principal,
                   Premium and Interest..................................  33
SECTION 5.09.   Restoration of Rights and Remedies........................  34
SECTION 5.10.   Rights and Remedies Cumulative............................  34
SECTION 5.11.   Delay or Omission Not Waiver..............................  34
SECTION 5.12.   Control by Holders........................................  34
SECTION 5.13.   Waiver of Past Defaults...................................  35
SECTION 5.14.   Undertaking for Costs.....................................  35
SECTION 5.15.   Waiver of Stay or Extension Laws..........................  35
SECTION 5.16.   Duty to Accelerate........................................  36

                              ARTICLE VI
                       THE TRUSTEE......................................  36

SECTION 6.01.   Certain Duties and Responsibilities.......................  36
SECTION 6.02.   Notice of Defaults........................................  37
SECTION 6.03.   Certain Rights of Trustee.................................  37
SECTION 6.04.   Not Responsible for Recitals or Issuance of Securities....  39
SECTION 6.05.   May Hold Securities.......................................  39
SECTION 6.06.   Money Held in Trust.......................................  39
SECTION 6.07.   Compensation and Reimbursement............................  39
SECTION 6.08.   Disqualification; Conflicting Interests...................  40
SECTION 6.09.   Corporate Trustee Required; Eligibility...................  40
SECTION 6.10.   Resignation and Removal; Appointment of Successor.........  40
SECTION 6.11.   Acceptance of Appointment by Successor....................  42
SECTION 6.12.   Merger, Conversion, Consolidation or Succession
                   to Business...........................................  43
SECTION 6.13.   Preferential Collection of Claims Against Company.........  43
SECTION 6.14.   Appointment of Authenticating Agent.......................  43
```

Source: TRIBUNE CO, 8-K, April 09, 1999

```
                                                                        Page
                                                                        ----
                              ARTICLE VII
              HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY...............  45

SECTION 7.01.   Company to Furnish Trustee Names and Addresses
                     of Holders...........................................  45
SECTION 7.02.   Preservation of Information; Communications to
                     Holders..............................................  45
SECTION 7.03.   Reports by Trustee........................................  47
SECTION 7.04.   Reports by Company........................................  47

                              ARTICLE VIII
              CONSOLIDATION, MERGER, CONVEYANCE, TRANSFER OR LEASE............  48

SECTION 8.01.   Company May Consolidate, Etc., Only on Certain Terms.......  48
SECTION 8.02.   Successor Corporation Substituted.........................  48

                              ARTICLE IX
              SUPPLEMENTAL INDENTURES.................................  49

SECTION 9.01.   Supplemental Indentures without Consent of Holders.........  49
SECTION 9.02.   Supplemental Indentures with Consent of Holders............  50
SECTION 9.03.   Execution of Supplemental Indentures......................  51
SECTION 9.04.   Effect of Supplemental Indentures.........................  51
SECTION 9.05.   Conformity with Trust Indenture Act.......................  51
SECTION 9.06.   Reference in Securities to Supplemental Indentures.........  51

                              ARTICLE X
              COVENANTS........................................  52

SECTION 10.01.  Payment of Principal, Premium and Interest................  52
SECTION 10.02.  Maintenance of Office or Agency...........................  52
SECTION 10.03.  Money for Securities Payments To Be Held in Trust.........  52
SECTION 10.04.  Corporate Existence.......................................  53
SECTION 10.05.  Maintenance of Properties.................................  54
SECTION 10.06.  Payment of Taxes and Other Claims.........................  54
SECTION 10.07.  Statement as to Compliance................................  54
SECTION 10.08.  Waiver of Certain Covenants...............................  55
SECTION 10.09.  Payment of Additional Amounts.............................  55

                              ARTICLE XI
              REDEMPTION OF SECURITIES................................  55

SECTION 11.01.  Applicability of Article..................................  55
SECTION 11.02.  Election to Redeem; Notice to Trustee.....................  55
SECTION 11.03.  Selection by Trustee of Securities to Be Redeemed.........  56
SECTION 11.04.  Notice of Redemption......................................  56
```

Source: TRIBUNE CO, 8-K, April 09, 1999

|  |  | Page |
|---|---|---|
| SECTION 11.05. | Deposit of Redemption Price................................ | 57 |
| SECTION 11.06. | Securities Payable on Redemption Date..................... | 57 |
| SECTION 11.07. | Securities Redeemed in Part............................... | 57 |

ARTICLE XII
SINKING FUNDS........................................ 58

| SECTION 12.01. | Applicability of Article.................................. | 58 |
| SECTION 12.02. | Satisfaction of Sinking Fund Payments with Securities..... | 58 |
| SECTION 12.03. | Redemption of Securities for Sinking Fund................. | 58 |

ARTICLE XIII
DEFEASANCE.......................................... 59

| SECTION 13.01. | Applicability of Article.................................. | 59 |
| SECTION 13.02. | Defeasance upon Deposit of Moneys or U.S. Government Obligations............................................ | 59 |
| SECTION 13.03. | Deposited Moneys and U.S. Government Obligations to Be Held in Trust...................................... | 61 |
| SECTION 13.04. | Repayment to Company...................................... | 61 |

ARTICLE XIV
SUBORDINATION....................................... 61

| SECTION 14.01. | Securities Subordinate to Senior Indebtedness............. | 61 |
| SECTION 14.02. | Payment Over of Proceeds upon Dissolution, Etc............ | 62 |
| SECTION 14.03. | Prior Payment to Senior Indebtedness upon Acceleration of Securities........................................ | 64 |
| SECTION 14.04. | Default in Senior Indebtedness............................ | 65 |
| SECTION 14.05. | Payment Permitted if No Default........................... | 65 |
| SECTION 14.06. | Subrogation Rights of Holders of Senior Indebtedness...... | 65 |
| SECTION 14.07. | Provision Solely to Define Relative Rights................ | 66 |
| SECTION 14.08. | Trustee to Effectuate Subordination....................... | 66 |
| SECTION 14.09. | No Waiver of Subordination Provisions..................... | 66 |
| SECTION 14.10. | Notice to Trustee......................................... | 67 |
| SECTION 14.11. | Reliance on Judicial Order or Certificate of Liquidating Agent................................................. | 68 |
| SECTION 14.12. | Trustee Not Fiduciary for Holders of Senior Indebtedness.......................................... | 68 |
| SECTION 14.13. | Rights of Trustee as Holder of Senior Indebtedness; Preservation of Trustee's Rights...................... | 68 |
| SECTION 14.14. | Article XIV Applicable to Paying Agents................... | 69 |

---

NOTE:   This table of contents shall not, for any purpose, deemed to be a part of the Indenture.

Source: TRIBUNE CO, 8-K, April 09, 1999

INDENTURE, dated as of April 1, 1999 between Tribune Company, a corporation duly organized and existing under the laws of the State of Delaware (herein called the "Company"), having its principal office at 435 North Michigan Avenue, Chicago, Illinois 60611, and Bank of Montreal Trust Company, a trust company duly organized and existing under the laws of the State of New York, as Trustee (herein called the "Trustee").

## RECITALS OF THE COMPANY

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its unsecured debentures, notes or other evidences of indebtedness (herein called the "Securities"), to be issued in one or more series as in this Indenture provided.

All things necessary to make this Indenture a valid agreement of the Company, in accordance with its terms, have been done.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof, as follows:

## ARTICLE I

## DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 1.01.  Definitions.

For all purposes of this Indenture and any indenture supplemental hereto, except as otherwise expressly provided or unless the context otherwise requires:

   (1)  the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

   (2)  all other terms used herein which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein as of the date of this Indenture;

   (3)  all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or

-1-

permitted hereunder shall mean such accounting principles as are generally accepted at the date of such computation;

(4) the word "including" (and with correlative meaning "include") means including, without limiting the generality of, any description preceding such term; and

(5) the words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

Certain terms, used principally in Article Six, are defined in that Article.

"Act," when used with respect to any Holder, has the meaning specified in Section 1.04(a).

"Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Authenticating Agent" means, with respect to the Securities of any series, any Person authorized by the Trustee to act on behalf of the Trustee to authenticate the Securities of such series.

"Board of Directors" means either the board of directors of the Company or a duly authorized committee of such board.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Business Day" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which banking institutions in the City of Chicago, State of Illinois or The City of New York, State of New York or any city in which the Trustee's Corporate Trust Office is located, are authorized or obligated by law or regulation to close.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

Source: TRIBUNE CO, 8-K, April 09, 1999

"Company" means the Person named as the "Company" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Company" shall mean such successor corporation.

"Company Request" or "Company Order" means a written request or order signed in the name of the Company by its Chairman of the Board, its President and Chief Executive Officer, or a Vice President, and by its Treasurer, an Assistant Treasurer, its Controller, an Assistant Controller, its Secretary or an Assistant Secretary, and delivered to the Trustee.

"Corporate Trust Office" means the principal office of the Trustee in The City of New York, New York, at which at any particular time its corporate trust business shall be principally administered, which office at the date of execution of this Indenture is located at Wall Street Plaza, 88 Pine Street, 19th Floor, New York, New York 10005.

"Corporation" includes corporations, associations, companies, business trusts and limited partnerships.

"Currency" means Dollars or Foreign Currency.

"Depository" means unless otherwise specified by the Company pursuant to either Sections 2.03 or 3.01, with respect to Securities of any series issuable or issued as a Global Security, The Depository Trust Company, New York, New York, or any successor thereto registered under the Securities and Exchange Act of 1934, as amended, or other applicable statute or regulation.

"Discharged" has the meaning specified in Section 13.02.

"Dollar" or "$" means the currency of the United States that at the time of payment is legal tender for the payment of public and private debts.

"Event of Default" has the meaning specified in Section 5.01.

"Fixed Rate Security" means a Security which provides for the payment of interest at a fixed rate.

"Floating Rate Security" means a Security which provides for the payment of interest at a variable rate determined periodically by reference to any security issued by the Company or another company or to an index or otherwise as specified pursuant to Section 3.01.

"Foreign Currency" means a currency issued by the government of any country other than the United States or a composite currency the value of which is determined by reference to the values of the currencies of any group of countries.

"Global Security" means a Security issued to evidence all or a part of any series of Securities which is executed by the Company and authenticated and delivered by the Trustee to

-3-

Source: TRIBUNE CO, 8-K, April 09, 1999

the Depository or pursuant to the Depository's instruction, all in accordance with this Indenture and pursuant to a Company Order, which shall be registered as to principal and interest in the name of the Depository or its nominee.

"Holder" means the Person or Persons in whose name or names a particular Security is registered in the Security Register.

"Indebtedness" has the meaning specified in Section 14.01.

"Indenture" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and shall include the terms of particular series of Securities established as contemplated by Section 3.01.

"Net Worth" means the aggregate amount of stockholders' investment as determined in accordance with generally accepted accounting principles.

"Officers' Certificate" means a certificate signed by the Chairman of the Board, the President, or a Vice President, and by the Treasurer, an Assistant Treasurer, the Controller, an Assistant Controller, the Secretary or an Assistant Secretary, of the Company, and delivered to the Trustee.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Company, and who shall be reasonably acceptable to the Trustee.

"Original Issue Discount Security" means any Security which provides for an amount less than the principal amount thereof to be due and payable upon the declaration of acceleration of the maturity thereof pursuant to Section 5.02.

"Outstanding", when used with respect to Securities or any series of Securities, means, as of the date of determination, all Securities or all Securities of such series, as the case may be, theretofore authenticated and delivered under this Indenture, except:

    (1) Securities theretofore cancelled by the Trustee or any Authenticating Agent or delivered to the Trustee or any Authenticating Agent for cancellation;

    (2) Securities, or portions thereof, for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the Company) in trust or set aside and segregated in trust by the Company (if the Company shall act as its own Paying Agent) for the Holders of such Securities; provided that, if such Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made;

-4-

Source: TRIBUNE CO, 8-K, April 09, 1999

    (3) Securities which have been paid pursuant to Section 3.06 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Securities are held by a bona fide purchaser in whose hands such Securities are valid obligations of the Company; and

    (4) Securities which have been Discharged pursuant to Section 13.02;

provided, however, that in determining whether the Holders of the requisite principal amount of the Outstanding Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, (i) the principal amount of an Original Issue Discount Security which shall be deemed to be Outstanding for such purposes shall be the portion of the principal amount thereof that could be declared to be due and payable upon the occurrence of an Event of Default and the continuation thereof pursuant to the terms of such Original Issue Discount Security as of such time and (ii) Securities owned by the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Securities which the Trustee knows to be so owned shall be so disregarded. Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor.

    "Paying Agent" means any Person authorized by the Company to pay the principal of (and premium, if any), interest or other amounts on any Securities on behalf of the Company.

    "Person" means any individual, corporation, limited liability company, partner-ship, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

    "Predecessor Security" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security, and, for the purposes of this definition, any Security authenticated and delivered under Section 3.06 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

    "principal" of a Security on any day and for any purpose means the amount (including without limitation, in the case of an Original Issue Discount Security, any accrued original issue discount, but excluding interest) that is payable with respect to such Security as of such date and for such purpose (including without limitation, in connection with any sinking fund, upon any redemption at the option of the Company upon any purchase or exchange at the option of the Company or the holder of such Security and upon the acceleration of the maturity of such Security).

-5-

Source: TRIBUNE CO, 8-K, April 09, 1999

"Redemption Date", when used with respect to any Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

"Redemption Price", when used with respect to any Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

"Responsible Officer", when used with respect to the Trustee, means the chairman or any vice chairman of the board of directors, the chairman or any vice chairman of the executive committee of the board of directors, the chairman of the trust committee, the president, any vice president, any assistant vice president, the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

"Securities" has the meaning stated in the first recital of this Indenture and more particularly means any Securities authenticated and delivered under this Indenture.

"Security Register" has the meaning specified in Section 3.05.

"Senior Indebtedness" has the meaning specified in Section 14.01.

"Significant Subsidiary" has the meaning specified in Section 5.01.

"Subsidiary" means a corporation more than 50% of the outstanding voting stock of which is owned, directly or indirectly, by the Company or by one or more other Subsidiaries, or by the Company and one or more other Subsidiaries. For the purposes of this definition, "voting stock" means stock which ordinarily has voting power for the election of directors, whether at all times or only so long as no senior class of stock has such voting power by reason of any contingency.

"Trustee" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such with respect to one or more series of Securities pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean and include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" shall mean and include each such Person, and "Trustee," as used with respect to the Securities of any series, shall mean the Trustee with respect to Securities of that series.

"Trust Indenture Act" means the Trust Indenture Act of 1939, as amended, as in force at the date as of which this instrument was executed, except as provided in Section 9.05; provided, however, that in the event that such act is amended after such date, "Trust Indenture Act" means, to the extent required by such amendment, the Trust Indenture Act of 1939, as amended.

-6-

Source: TRIBUNE CO, 8-K, April 09, 1999

"Vice President", when used with respect to the Company or the Trustee, means any vice president, whether or not designated by a number or a word or words added before or after the title "vice president".

"United States" means the United States of America (including the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction.

"U.S. Government Obligations" has the meaning specified in Section 13.02.

SECTION 1.02.  Compliance Certificates and Opinions.

Upon any application or request by the Company to the Trustee to take any action under any provision of this Indenture, the Company shall furnish to the Trustee an Officers' Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate or opinion need be furnished.

Every certificate (other than any Officers' Certificate delivered pursuant to Section 10.07) or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

    (1) a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

    (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

    (3) a statement that, in the opinion of each such individual, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

    (4) a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 1.03.  Form of Documents Delivered to Trustee.

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters

-7-

Source: TRIBUNE CO, 8-K, April 09, 1999

and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate or opinion may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company stating that the information with respect to such factual matters is in the possession of the Company, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Any certificate or opinion of an officer or opinion of counsel may be based, insofar as it relates to any accounting matters, upon a certificate or opinion of, or representations by, an accountant or firm of accountants in the employ of the Company, unless such officer or counsel, as the case may be, knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such accounting matters are erroneous. Any certificate or opinion of any independent firm of public accountants filed with and directed to the Trustee shall contain a statement that such firm is independent.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

SECTION 1.04.   Acts of Holders.
                ----------------

(a)   Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by a specified percentage of Holders of one or more series then Outstanding may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such specified percentage of Holders in person or by an agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments is or are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of
                                                ------------
the Trustee and the Company, if made in the manner provided in this Section.

(b)   The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity other than his individual capacity, such

-8-

Source: TRIBUNE CO, 8-K, April 09, 1999

certificate or affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner which the Trustee deems sufficient.

(c)  The ownership of Securities shall be proved by the Security Register.

(d)  The Company may fix a record date for the purpose of determining the identity of the Holders entitled to participate in any Act authorized or permitted under this Indenture, which record date shall be the later of (i) 10 days prior to the first solicitation of the written instruments required for such Act or (ii) the date of the most recent list of Holders furnished to the Trustee prior to such solicitation pursuant to Section 7.01. If such a record date is fixed, the Persons who were the Holders of the Securities of the affected series at the close of business on such record date (or their duly authorized proxies) shall be the only Persons entitled to execute written instruments with respect to such Act, or to revoke any written instrument previously delivered, whether or not such Persons shall continue to be Holders of the Securities of such series after such record date. No such written instrument shall be valid or effective for more than 150 days after such record date.

(e)  Any request, demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Security shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Security.

SECTION 1.05.  Notices, Etc., to Trustee and Company.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with,

(1)  the Trustee by any Holder or by the Company shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, or

(2)  the Company by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Company addressed to the attention of its Secretary at 435 North Michigan Avenue, Chicago, Illinois 60611, or at any other address previously furnished in writing to the Trustee by the Company.

Any such Act or other document shall be in the English language.

-9-

Source: TRIBUNE CO, 8-K, April 09, 1999

SECTION 1.06.  Notice to Holders; Waiver.

Where this Indenture or any Security provides for notice to Holders of any event, such notice shall be deemed sufficiently given (unless otherwise herein or in such Security expressly provided) if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice provided, however, that, in any case, any notice to Holders of Floating Rate Securities regarding the determination of a periodic rate of interest, if such notice is required pursuant to Section 3.01, shall be sufficiently given if given in the manner specified pursuant to Section 3.01. In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders or the validity of the proceedings to which such notice relates. Where this Indenture or any Security provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

SECTION 1.07.  Conflict with Trust Indenture Act.

If any provision hereof limits, qualifies or conflicts with the duties imposed by operation of Section 318(c) of the Trust Indenture Act, the imposed duties shall control. If any provision of this Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the latter provisions shall be deemed to apply to this Indenture as so modified or excluded, as the case may be.

SECTION 1.08.  Effect of Headings and Table of Contents.

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

SECTION 1.09.  Successors and Assigns.

All covenants and agreements in this Indenture by the Company shall bind its successors and assigns, whether so expressed or not.

-10-

Source: TRIBUNE CO, 8-K, April 09, 1999