SECTION 1.10.  Separability Clause.
                -------------------

         In case any provision in this Indenture or in the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 1.11.  Benefits of Indenture.
                --------------------

         Except as expressly provided in Article Fourteen with respect to
                                         ----------------
holders of Senior Indebtedness, nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

SECTION 1.12.  Governing Law.
                -------------

         This Indenture and the Securities shall be governed by and construed in accordance with the laws of the State of Illinois except as may be otherwise required by mandatory provisions of law.

SECTION 1.13.  Legal Holidays.
                --------------

         Unless otherwise specified pursuant to Section 3.01, in any case where
                                                ------------
the due date of interest on or principal of any Security or the date fixed for redemption of any Security shall not be a Business Day then (notwithstanding any other provision of this Indenture or of the Securities) payment of interest or principal (and premium, if any) need not be made on such date, but may be made on the next succeeding Business Day or on such other date specified pursuant to Section 3.01 with the same force and effect as if made on such due date or
- ------------
Redemption Date and no interest shall accrue for the period from and after such prior date; provided, however that if the next succeeding Business Day is in the
             --------  -------
next calendar year, such payment shall be made on the preceding Business Day or on such other date specified pursuant to Section 3.01.
                                                        ------------

SECTION 1.14.  Incorporators, Stockholders, Officers and Directors Exempt from
                --------------------------------------------------------------
               Individual Liability.
               --------------------

         No recourse under or upon any obligation, covenant or agreement contained in this Indenture, or in any Security, or because of any indebtedness evidenced thereby, shall be had against any incorporator, as such, or against any past, present or future stockholder, officer or director, as such, of the Company or of any successor, either directly or through the Company or any successor, under any rule of law, statute or constitutional provision or by the enforcement of any assessment or by any legal or equitable proceeding or otherwise, all such liability being expressly waived and released by the acceptance of the Securities by the Holders thereof and as part of the consideration for the issue of the Securities.

                                      -11-

Source: TRIBUNE CO, 8-K, April 09, 1999

ARTICLE II

SECURITY FORMS

SECTION 2.01.  Forms Generally.
---------------

The Securities of each series shall be in substantially the form or forms as shall be established by or pursuant to a Board Resolution or in one or more indentures supplemental hereto, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with any rules of any securities exchange or all as may, consistently herewith, be determined by the officers executing such Securities to be necessary or appropriate, as evidenced by their execution of the Securities. If the form of Securities of any series is established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action together with a true and correct copy of the form of the Securities of such series approved by or pursuant to such Board Resolution shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Company Order contemplated by Section 3.03 for the
            ------------
authentication and delivery of such Securities.

The definitive Securities shall be printed, lithographed or engraved on steel engraved borders or may be produced in any other manner, all as determined by the officers executing such Securities, as evidenced by their execution of such Securities.

SECTION 2.02.  Form of Trustee's Certificate of Authentication.
---------------------------------------------

The Trustee's certificate of authentication on all Securities shall be in substantially the following form:

-12-

Source: TRIBUNE CO, 8-K, April 09, 1999

This is one of the Securities of the series designated pursuant to the within-mentioned Indenture.

By: _____
    As Trustee

        OR

By: _____
    As Authenticating Agent


By: _____
    Authorized Officer


SECTION 2.03.  Securities Issuable in the Form of a Global Security.

    (a)  If the Company shall establish pursuant to Section 3.01 that the Securities of a particular series are to be issued in whole or in part in the form of one or more Global Securities, then the Company shall execute and the Trustee shall, in accordance with Section 3.03 and the Company Order delivered to the Trustee thereunder, authenticate and make available for delivery, such Global Security or Securities, which (i) shall represent, and shall be denominated in an amount equal to the aggregate principal amount of, the Outstanding Securities of such series to be represented by such Global Security or Securities, (ii) shall be registered in the name of the Depository for such Global Security or Securities or its nominee, (iii) shall make available for delivery by the Trustee to the Depository or pursuant to the Depository's instruction and (iv) shall bear a legend substantially to the following effect: "THIS GLOBAL SECURITY MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY OR ANOTHER NOMINEE OF THE DEPOSITORY OR BY THE DEPOSITORY OR ANY SUCH NOMINEE TO A SUCCESSOR OF THE DEPOSITORY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITORY."

    (b)  Notwithstanding any other provision of this Section 2.03 or of Section 3.05, unless otherwise provided in the Global Security, a Global Security may be transferred, in whole but not in part and in the manner provided in Section 3.05, only to the Depository or another nominee of the Depository for such Global Security, or to a successor Depository for such Global Security selected or approved by the Company or to a nominee of such successor Depository. Except as provided below, owners solely of beneficial interests in a Global Security shall not be entitled to receive physical delivery of the Securities represented by such Global Security and will not be considered the Holders thereof for any purpose under the Indenture.

-13-

Source: TRIBUNE CO, 8-K, April 09, 1999

(c) If at any time the Depository for a Global Security notifies the Company that it is unwilling or unable to continue as Depository for such Global Security or if at any time the Depository for the Securities for such series shall no longer be eligible or in good standing under the Securities Exchange Act of 1934, as amended, or other applicable statute or regulation, the Company shall appoint a successor Depository with respect to such Global Security. If a successor Depository for such Global Security is not appointed by the Company within 90 days after the Company receives such notice or becomes aware of such ineligibility, the Company's election pursuant to Section 3.01(18) shall no longer be effective with respect to such Global Security and the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of the Global Security in exchange for such Global Security.

(d) The Company may at any time and in its sole discretion determine that the Securities of any series issued or issuable in the form of one or more Global Securities shall no longer be represented by such Global Security or Securities. In such event the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Securities or Securities.

(e) A Global Security will also be exchangeable if there shall have occurred and is continuing an Event of Default or an event which, with the giving of notice or lapse of time or both, would constitute an Event of Default with respect to the Securities of such series represented by such Global Security. In such event the Company will execute, and the Trustee, upon receipt of a Company Order for the authentication and delivery of individual Securities of such series in exchange in whole or in part for such Global Security, will authenticate and deliver individual Securities of such series of like tenor and terms in definitive form in an aggregate principal amount equal to the principal amount of such Global Security or Securities representing such series in exchange for such Global Securities or Securities.

(f) If specified by the Company pursuant to Section 3.01 with respect to Securities issued or issuable in the form of a Global Security, the Depository for such Global Security may surrender such Global Security in exchange in whole or in part for individual Securities of such series of like tenor and terms in definitive form on such terms as are acceptable to the Company and such Depository. Thereupon the Company shall execute, and the Trustee shall authenticate and deliver, without service charge, (1) to each Person specified by such Depository a new Security or Securities of the same series of like tenor and terms and of any authorized denominations as requested by such Person or the Depository in aggregate principal amount equal to and in exchange for such Person's beneficial interest in the Global Security; and (2) to such Depository a new Global Security of like tenor and terms and in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Securities delivered to Holders thereof.

-14-

Source: TRIBUNE CO, 8-K, April 09, 1999

(g) Upon issuance, all Securities with identical terms and held by the Depository on behalf of its participants will be represented by one or more Global Security and be deposited with the Depository and registered in the name of a nominee of the Depository. The Company may request the Trustee at any time to consolidate two or more outstanding Global Securities having identical terms and for which interest has been paid to the same date.

(h) In any exchange provided for in any of the preceding five paragraphs, the Company will execute and the Trustee will authenticate and deliver individual fully registered Securities in authorized denominations, provided that the definitive Securities so issued in exchange for a Global Security shall be in denominations of $100,000 and any aggregate principal amount and tenor as the portion of such Global Security to be exchanged, and provided further that, unless the Company agrees otherwise, Securities in certificated registered form will be issued in exchange for a Global Security, or any portion thereof, only if such Securities in certificated registered form were requested by written notice to the Trustee or the Securities Registrar by or on behalf of a person who is beneficial owner of an interest thereof given through the Holder hereof. Except as provided above, owners of beneficial interest in a Global Security will not be entitled to receive physical delivery of Securities in certificated registered form and will not be considered the Holders thereof for any purpose under the Indenture. No service charge shall be made for any such registration of transfer or exchange, but the Company may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith. Upon the exchange of a Global Security for individual Securities, such Global Security shall be cancelled by the Trustee. Securities issued in exchange for a Global Security pursuant to this Section 2.03 shall be registered in such names and in such authorized denominations as the Depository for such Global Security, pursuant to the instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Securities to the persons in whose names such Securities are so registered.

(i) Members in and participants of the Depository shall have no rights under the Indenture with respect to any Global Security held on their behalf by a Depository, and such Depository may be treated by the Company, the Trustee and any agent of the Company or the Trustee as the owner of such Global Security for all purposes whatsoever.

(j) Any Company Order delivered pursuant to Section 3.03 by the Company with respect to the authentication, exchange, endorsement or delivery or redelivery of a Global Security shall be in writing, signed by any one of the officers enumerated under the definition of "Company Order" contained in Section 1.01 or by any officer authorized by a previously delivered Company Order, but need not comply with Section 1.02 and need not be accompanied by an Opinion of Counsel.

SECTION 2.04.  CUSIP Number

The Company in issuing Securities of any series may use a "CUSIP" number, and if so, the Trustee may use the CUSIP number in notices of redemption or exchange as a convenience to Holders of such series; provided, that any such notice may state that no representation is made as to the correctness or accuracy of the CUSIP number printed on the

-15-

Source: TRIBUNE CO, 8-K, April 09, 1999

notice or on the Securities of such series, and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Company will promptly notify the Trustee of any change in the CUSIP number of any series of Securities.

## ARTICLE III

### THE SECURITIES

SECTION 3.01.  Amount Unlimited; Issuable in Series.

The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the initial issuance of Securities of any series:

(1) the title of the Securities of the series (which shall distinguish the Securities of the series from all other Securities);

(2) any limit upon the aggregate principal amount of the Securities of the series which may be authenticated and delivered under this Indenture (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of the series pursuant to Sections 2.03, 3.04, 3.05, 3.06, 9.06 or 11.07);

(3) the formula, if any, by which the principal amount of Securities of the series outstanding may be determined from time to time;

(4) the date or dates on which or periods during which the Securities of the series may be issued and the date or dates on which or the range of dates within which the principal of (and premium, if any, on) the Securities of the series are or may be payable or the method of determination thereof;

(5) the rate or rates or the methods of determination thereof at which the Securities of the series shall bear interest, if any, the date or dates from which such interest shall accrue and the dates on which such interest shall be payable and the record date for the interest payable on any such interest date;

(6) the place or places, if any, in addition to The City of New York, where the principal of (and premium, if any) and interest on Securities of the series shall be payable and the method of payment therefor;

-16-

Source: TRIBUNE CO, 8-K, April 09, 1999

(7) the period or periods within which or the dates on which, the price or prices at which and the terms and conditions upon which Securities of the series may be redeemed, in whole or in part, at the option of the Company and/or the method by which such period or periods, dates, price or prices and terms and conditions shall be determined;

(8) the obligation, if any, of the Company to redeem, purchase, convert, exchange or repay Securities of the series pursuant to any sinking fund or analogous provisions or otherwise or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Securities of the series shall be redeemed, purchased, converted, exchanged or repaid, in whole or in part, pursuant to such obligation and/or the method by which such period or periods, price or prices or terms and conditions shall be determined;

(9) provisions, if any, for the defeasance of Securities of the series;

(10) if other than denominations of $1,000 and any integral multiple thereof, the denominations in which Securities of the series shall be issuable;

(11) if other than the principal amount thereof, the portion of the principal amount of Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof pursuant to Section 5.02 or the method by which such portion shall be determined;

(12) if other than Dollars, the Foreign Currency in which Securities of the series shall be denominated, or in which payment of the principal of (and premium, if any) and interest on the Securities of the series may be made or the method by which such Foreign Currency shall be determined;

(13) if the principal of (and premium, if any) or interest on Securities of the series are to be payable, at the election of the Company or a Holder thereof, in a Currency other than that in which the Securities are denominated or stated to be payable without such election, the periods within which and the terms and conditions upon which, such election may be made and the time and the manner of determining the exchange rate between the Currency in which the Securities are denominated or payable without such election and the Currency in which the Securities are to be paid if such election is made;

(14) if the amount of payments of principal (and premium, if any) or interest on the Securities of the series may be determined with reference to one or more securities issued by the Company or another company or to an index including, but not limited to, an index based on a Currency or Currencies other than that in which the Securities are payable, or any other type of index, the manner in which such amounts shall be determined;

-17-

Source: TRIBUNE CO, 8-K, April 09, 1999

(15) if the Securities of the series are denominated or payable in a Foreign Currency, any other terms concerning the payment of principal of (premium, if any) or any interest on such Securities (including the Currency or Currencies of payment thereof);

(16) the right of the Company, if any, to extend or defer interest payment periods and the duration of such extension or deferral, the dates on which such payment of interest shall be payable and whether and under what circumstances additional interest on amounts deferred shall be payable;

(17) any additional Events of Default or covenants provided for with respect to Securities of the series or any Events of Default or covenants herein specified which shall not be applicable to the Securities of the series;

(18) whether the Securities of the series shall be issued in whole or in part in the form of a Global Security or Securities; the terms and conditions, if any, upon which such Global Security or Securities may be exchanged in whole or in part for other individual Securities or for other Global Securities; and the Depository for such Global Security or Securities;

(19) whether the Securities of the series are to be issuable in definitive form (whether upon original issuance or upon exchange of a temporary Security of the series) only upon receipt of certain certificates or other documents or satisfaction of other conditions, and, if so, the form and terms of such certificates, documents or conditions; and

(20) any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

All Securities of any one series shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto. All Securities of any series need not be issued at the same time and may be issued from time to time, consistent with the terms of this Indenture, if so provided by or pursuant to such Board Resolution and set forth in such Officer's Certificate or in any such indenture supplemental hereto.

At the option of the Company, interest on the Securities of any series that bears interest may be paid by mailing a check to the address of the person entitled thereto as such address shall appear in the Security Register.

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Company and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth, or providing the manner for determining, the terms of the series.

-18-

SECTION 3.02. Denominations.

The Securities of each series shall be issuable in registered form without coupons in such denominations as shall be specified as contemplated by Section 3.01. In the absence of any such provisions with respect to the Securities of any series, the Securities of such series shall be issuable in denominations of $1,000 and any integral multiple thereof and shall be payable only in Dollars.

SECTION 3.03. Execution, Authentication, Delivery and Dating.

The Securities shall be executed on behalf of the Company by its Chairman of the Board, its President, or one of its Vice Presidents, under its corporate seal reproduced thereon attested by its Secretary or one of its Assistant Secretaries. The signature of any of these officers on the Securities may be manual or facsimile. The seal of the Company may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Securities. Typographical and other minor errors or defects in any such reproduction of the seal or any such signature shall not affect the validity or enforceability of any Security that has been duly authenticated and delivered by the Trustee.

Securities bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities.

At any time and from time to time after the execution and delivery of this Indenture, the Company may deliver Securities of any series executed by the Company to the Trustee for authentication, together with a Company Order for the authentication and delivery of such Securities, and the Trustee in accordance with the Company Order and subject to the provisions hereof shall authenticate and make such Securities available for delivery. If the form or terms of the Securities of the series have been established in or pursuant to one or more Board Resolutions as permitted by Sections 2.01 and 3.01, in authenticating such Securities, and accepting the additional responsibilities under this Indenture in relation to such Securities, the Trustee shall be entitled to receive, and (subject to Section 6.01) shall be fully protected in relying upon, an Opinion of Counsel stating that:

    (1) all instruments furnished by the Company to the Trustee in connection with the authentication and delivery of such Securities conform to the requirements of this Indenture and constitute sufficient authority hereunder for the Trustee to authenticate and deliver such Securities;

    (2) the form of such Securities has been established in conformity with the provisions of this Indenture;

-19-

Source: TRIBUNE CO, 8-K, April 09, 1999

(3) the terms of such Securities have been established in conformity with the provisions of this Indenture;

(4) in the event that the form or terms of such Securities have been established in a supplemental indenture, the execution and delivery of such supplemental indenture have been duly authorized by all necessary corporate action of the Company, such supplemental indenture has been duly executed and delivered by the Company and, assuming due authorization, execution and delivery by the Trustee, is a valid and binding obligation enforceable against the Company in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law);

(5) the execution and delivery of such Securities have been duly authorized by all necessary corporate action of the Company and such Securities have been duly executed by the Company and, assuming due authentication by the Trustee and delivery by the Company, are the valid and binding obligations of the Company enforceable against the Company in accordance with their terms, entitled to the benefit of the Indenture, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law); and

(6) the amount of Outstanding Securities of such series, together with the amount of such Securities, does not exceed any limit established under the terms of this Indenture on the amount of Securities of such series that may be authenticated and delivered.

In the event that all Securities of a series are not issued at the same time, the Trustee shall authenticate and deliver the Securities of such series executed and delivered by the Company for original issuance upon receipt of an order of the Company (which need not comply with Section 1.02 hereof), signed by an officer or employee of the Company identified to the Trustee in an Officers' Certificate, if the Trustee has previously received the Company Order and Opinion of Counsel referred to in the third paragraph of this Section 3.03 with respect to the issuance of any Securities of such series.

The Trustee shall not be required to authenticate such Securities if the issue of such Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Each Security shall be dated the date of its authentication.

-20-

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture.

SECTION 3.04.  Temporary Securities.

Pending the preparation of definitive Securities of any series, the Company may execute, and upon Company Order the Trustee shall authenticate and make available for delivery, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Securities may determine, as evidenced by their execution of such Securities.

If temporary Securities of any series are issued, the Company will cause definitive Securities of that series to be prepared without unreasonable delay. After the preparation of definitive Securities of such series, the temporary Securities of such series shall be exchangeable for definitive Securities of such series upon surrender of the temporary Securities of such series at the office or agency of the Company for that series, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Securities of any series the Company shall execute and the Trustee shall authenticate and make available for delivery in exchange therefor a like principal amount of definitive Securities of the same series of authorized denominations. Until so exchanged the temporary Securities of any series shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of such series.

SECTION 3.05.  Registration, Registration of Transfer and Exchange.

The Company or the Trustee shall keep a register (the "Security Register") in which, subject to such reasonable regulations as the Company or the Trustee may prescribe, the Company or the Trustee shall provide for the registration of Securities and of transfers of Securities.

Upon surrender for registration of transfer of any Security of any series at the office or agency designated by the Company for that series, the Company shall execute, and the Trustee shall authenticate and make available for delivery, in the name of the designated transferee or transferees, one or more new Securities of the same series, of any authorized denominations and of a like aggregate principal amount.

At the option of the Holder, subject to Section 2.03, Securities of any series may be exchanged for other Securities of the same series, of any authorized denominations and of a like aggregate principal amount, upon surrender of the Securities to be exchanged at such office or agency. Whenever any Securities are so surrendered for exchange, the Company shall execute,

-21-

Source: TRIBUNE CO, 8-K, April 09, 1999

and the Trustee shall authenticate and make available for delivery, the Securities which the Holder making the exchange is entitled to receive.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Company or any registrar with respect to such series of Securities, duly executed by the Holder thereof or his attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Company or the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 3.04, 9.06 or 11.07 not involving any transfer.

The Company shall not be required (i) to issue, register the transfer of or exchange Securities of any series during a period beginning at the opening of business 15 days before the day of the mailing of a notice of redemption of Securities of that series selected for redemption under Section 11.03 and ending at the close of business on the day of such mailing, or (ii) to register the transfer of or exchange any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

None of the Company, the Trustee, any Paying Agent or the Securities Registrar will have any responsibility or liability for any aspect of the Depository's records relating to or payment made on account of beneficial ownership interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial ownership interests.

SECTION 3.06.  Mutilated, Destroyed, Lost and Stolen Securities.

If any mutilated Security is surrendered to the Company or to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (i) evidence to their satisfaction of the destruction, loss or theft of any Security and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security has been acquired by a bona fide purchaser, the Company shall execute and upon the Company's request the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of

-22-

Source: TRIBUNE CO, 8-K, April 09, 1999

the same series and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of that series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

SECTION 3.07.  Payment of Interest; Interest Rights Preserved.
              ------------------------------------------------

Interest on any Security which is payable, and is punctually paid or duly provided for, on any interest payment date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the record date (as hereinafter defined) for such interest notwithstanding the cancellation of such Security upon the registration of transfer or exchange subsequent to the record date and prior to such interest payment date; provided, however, that if and to the extent that the Company
                --------  -------
shall default in the payment of the interest due on such interest payment date, such defaulted interest shall be paid to the Persons in whose names outstanding Securities are registered at the close of business on a subsequent record date established by notice given by mail by and on behalf of the Company to the Holders of Securities not less than fifteen days preceding such subsequent record date, such record date to be not less than ten days preceding the date of payment of such defaulted interest. The term "record date" as used in this Section 3.07 with respect to any regular interest payment date shall mean such
- ------------
day preceding such interest payment date as may have been established as the record date with respect to an interest payment date for Securities of such series in a Board Resolution in accordance with Section 3.01 hereof. The Company
                                                             ------------
may also make payment of any defaulted interest in any other lawful manner not inconsistent with the requirements of any securities exchange in which the Securities may be listed, and upon such notice as may be required by such exchange if, after notice given by the Company to the Trustee of the proposed payment pursuant to this sentence, such manner of payment shall be deemed practicable by the Trustee.

-23-

Source: TRIBUNE CO, 8-K, April 09, 1999

SECTION 3.08.  Persons Deemed Owners.
                ----------------------

       Prior to due presentment of a Security for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Security is registered as the owner of such Security for the purpose of receiving payment of principal of (and premium, if any) and (subject to Section 3.07) interest on such Security and for all other purposes whatsoever, whether or not such Security be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

SECTION 3.09.  Cancellation.
                ------------

       All Securities surrendered for payment, redemption, registration of transfer or exchange or for credit against any sinking fund payment shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it; provided, however, that if surrendered to any Authenticating Agent, such Securities shall be promptly cancelled by such Authenticating Agent and forwarded to the Trustee. The Company may at any time deliver to the Trustee for cancellation any Securities previously authenticated and delivered hereunder which the Company may have acquired in any manner whatsoever, and all Securities so delivered shall be promptly cancelled by the Trustee. No Securities shall be authenticated in lieu of or in exchange for any Securities cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Securities held by the Trustee shall be disposed of as directed by a Company Order; provided that the Trustee shall not be required to dispose of securities in a manner deemed impracticable by the Trustee.

SECTION 3.10.  Computation of Interest.
                -----------------------

       Except as otherwise specified as contemplated by Section 3.01 for Securities of any series, interest on the Securities of each series shall be computed on the basis of a year of twelve 30-day months.

SECTION 3.11.  Currency of Payments in Respect of Securities.
                ---------------------------------------------

       (a) Except as otherwise specified pursuant to Section 3.01, payment of the principal of (and premium, if any) and interest on Securities of any series will be made in Dollars.

       (b) For purposes of any provision of the indenture where the Holders of Outstanding Securities may perform an Act which requires that a specified percentage of the Outstanding Securities of all series perform such Act and for purposes of any decision or determination by the Trustee of amounts due and unpaid for the principal (and premium, if any) and interest on the Securities of all series in respect of which moneys are to be disbursed ratably, the principal of (and premium, if any) and interest on the Outstanding Securities denominated in a Foreign Currency will be the amount in Dollars based upon exchange rates determined as specified pursuant to Section 3.01 for Securities of such series, as of the date for determining

-24-

Source: TRIBUNE CO, 8-K, April 09, 1999

whether the Holders entitled to perform such Act have performed it, or as of the date of such decision or determination by the Trustee, as the case may be.

(c) Any decision or determination to be made by the Trustee regarding exchange rates may be made instead by an agent appointed by the Trustee and acceptable to the Company; provided that such agent shall accept such appointment in writing and the terms of such appointment shall be acceptable to the Company and shall, in the opinion of the Company and the Trustee at the time of such appointment, require such agent to make such determination by a method consistent with the method provided pursuant to Section 3.01 for the making of such decision or determination. All decisions and determinations of the Trustee or the agent regarding exchange rates shall be in its sole discretion and shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Company and all Holders of the Securities.

SECTION 3.12. Judgments.

The Company may provide pursuant to Section 3.01 for Securities of any series that the obligation, if any, of the Company to pay the principal of (and premium, if any) and interest on the Securities of any series in a Foreign Currency or Dollars (the "Designated Currency") as may be specified pursuant to Section 3.01 is of the essence and thereby agree that, to the fullest extent possible under applicable law, judgments in respect of such Securities shall be given in the Designated Currency. In such event, the obligation of the Company to make payments in the Designated Currency of the principal of (and premium, if any) and interest on such Securities shall, notwithstanding any payment in any other Currency (whether pursuant to a judgment or otherwise), be discharged only to the extent of the amount of the Designated Currency that the Holder receiving such payment may, in accordance with normal banking procedures, purchase with the sum paid in such other Currency (after any premiums and cost of exchange) on the Business Day in the country of issue of the Designated Currency immediately following the day on which such Holder receives such payment. If the amount in the Designated Currency that may be so purchased for any reason falls short of the amount originally due, the Company shall pay such additional amounts as may be necessary to compensate for such shortfall, and any obligation of the Company not discharged by such payment shall be due as a separate and independent obligation and, until discharged as provided herein, shall continue in full force and effect.

ARTICLE IV

SATISFACTION AND DISCHARGE

SECTION 4.01. Satisfaction and Discharge of Indenture.

This Indenture, with respect to the Securities of any series (if all series issued under this Indenture are not to be affected), shall upon Company Request cease to be of further effect (except as to any surviving rights of registration of transfer or exchange of Securities herein

-25-

Source: TRIBUNE CO, 8-K, April 09, 1999

expressly provided for), and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when

    (1) either

        (A) all Securities theretofore authenticated and delivered (other than (i) Securities which have been destroyed, lost or stolen and which have been replaced or paid as provided in Section 3.06 and (ii) Securities for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust, as provided in Section 10.03) have been delivered to the Trustee for cancellation; or

        (B) all such Securities not theretofore delivered to the Trustee for cancellation

            (i) have become due and payable, or

            (ii) will become due and payable at their stated maturity within one year, or

            (iii) if the Securities of such series are denominated and payable only in Dollars (except as provided pursuant to Section 3.01) and such Securities are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Company,

and the Company, in the case of (i), (ii) or (iii) above, has deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount in Dollars sufficient to pay and discharge the entire indebtedness on such Securities not theretofore delivered to the Trustee for cancellation, for principal (and premium, if any) and interest to the date of such deposit (in the case of Securities which have become due and payable) or to the stated maturity or Redemption Date, as the case may be;

    (2) the Company has paid or caused to be paid all other sums payable hereunder by the Company; and

    (3) the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

-26-

Source: TRIBUNE CO, 8-K, April 09, 1999

In the event there are Securities of two or more series hereunder, the Trustee shall be required to execute an instrument acknowledging satisfaction and discharge of this Indenture only if requested to do so with respect to Securities of all series as to which it is Trustee and if the other conditions thereto are met. In the event there are two or more Trustees hereunder, then the effectiveness of any such instrument shall be conditioned upon receipt of such instruments from all Trustees hereunder.

Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Company to the Trustee under Section 6.07, the obligations of the Trustee to any Authenticating Agent under Section 6.14 and, if money shall have been deposited with the Trustee pursuant to subclause (B) of clause (1) of this Section, the obligations of the Trustee under Section 4.02 and the last paragraph of Section 10.03 shall survive.

SECTION 4.02. Application of Trust Money.

Subject to the provisions of the last paragraph of Section 10.03, all money deposited with the Trustee pursuant to Section 4.01 shall be held in trust and applied by it, in accordance with the provisions of the Securities and this Indenture, to the payment, either directly or through any Paying Agent (including the Company acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

ARTICLE V

REMEDIES

SECTION 5.01. Events of Default.

"Event of Default," wherever used herein with respect to Securities of any series, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body which has occurred and is continuing):

(1) default in the payment of any interest upon any Security of that series when it becomes due and payable, and continuance of such default for a period of 30 days (subject to the Company's right, if any, to defer any payment or extent any due date in accordance with the terms of the Securities of such series); or

(2) default in the payment of the principal of (or premium, if any, on) any Security of that series when due and payable as therein or herein provided whether at its maturity or upon acceleration, redemption or otherwise; or

-27-

Source: TRIBUNE CO, 8-K, April 09, 1999

(3) default in the deposit of any sinking fund payment, when and as due by the terms of a Security of that series; or

(4) default in the performance, or breach, of any covenant or warranty of the Company in this Indenture (other than a covenant or warranty a default in whose performance or whose breach is elsewhere in this Section 5.01 specifically dealt with or which has expressly been
------------
included in this Indenture solely for the benefit of series of Securities other than that series), and continuance of such default or breach for a period of 60 days after there has been given, by registered or certified mail, to the Company by the Trustee or to the Company and the Trustee by the Holders of at least 25% in principal amount of the Outstanding Securities of that series a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "Notice of Default" hereunder; or

(5) the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of the Company or any Significant Subsidiary in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or (B) a decree or order adjudging the Company or any Significant Subsidiary a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Company or any Significant Subsidiary under any applicable Federal or State law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Company or a Significant Subsidiary or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order for relief or any such other decree or order unstayed and in effect for a period of 60 consecutive days; or

(6) the commencement by the Company or any Significant Subsidiary of a voluntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by the Company or any Significant Subsidiary to the entry of a decree or order for relief in an involuntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law now or hereafter in effect or to the commencement of any bankruptcy or insolvency case or proceeding against the Company or any Significant Subsidiary, or the filing by the Company or any Significant Subsidiary of a petition or answer or consent seeking reorganization or relief under any applicable Federal or State law now or hereafter in effect, or the consent by the Company or any Significant Subsidiary to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or similar official of the Company or any Significant Subsidiary or of any substantial part of the property of the Company or any Significant Subsidiary, or the making by the

-28-

Source: TRIBUNE CO, 8-K, April 09, 1999

Company or any Significant Subsidiary of an assignment for the benefit of creditors, or the Company or any Significant Subsidiary shall fail generally to pay its debts as they become due, or the taking of corporate action by the Company or any Significant Subsidiary in furtherance of any such action; or

(7) any other Event of Default provided with respect to Securities of that series.

For purposes of this Section 5.01 the term "Significant Subsidiary" shall mean any Subsidiary (i) which, as of the close of the fiscal year of the Company immediately preceding the date of any determination hereunder, contributed more than 7% of the consolidated gross operating revenues of the Company and its Subsidiaries, or (ii) the Net Worth of which (determined in a manner consistent with the manner of determining consolidated Net Worth of the Company and its Subsidiaries) as of the close of such immediately preceding fiscal year exceeded 7% of the consolidated Net Worth of the Company and its Subsidiaries.

SECTION 5.02. Acceleration of Maturity; Rescission and Annulment.

If an Event of Default with respect to Securities of any series at the time Outstanding, occurs and is continuing, then in every such case, unless the principal of all of the Securities of such series shall have already become due and payable, the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Securities of that series may declare the principal amount (or, in the case of certain Securities which provide for less than the entire principal amount thereof to be due and payable upon a declaration of acceleration of the maturity thereof pursuant to this Section 5.02, such portion of the principal amount as may be specified in the terms of that series of Securities) and the interest accrued thereon of all of the Securities of that series to be due and payable immediately, by a notice in writing to the Company (and to the Trustee if given by Holders), and upon any such declaration such principal amount (or specified amount) and interest accrued thereon shall become immediately due and payable.

At any time after such a declaration of acceleration with respect to Securities of any series has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of a majority in principal amount of the Outstanding Securities of that series, by written notice to the Company and the Trustee, may rescind and annul such declaration and its consequences if

(1) the Company has paid or deposited with the Trustee a sum in the Currency in which such Securities are denominated (except as otherwise provided pursuant to Section 3.01) sufficient to pay

(A) all overdue interest on all Securities of that series,

(B) the principal of (and premium, if any, on) any Securities of that series which have become due otherwise than by such declaration of

-29-

Source: TRIBUNE CO, 8-K, April 09, 1999

acceleration and interest thereon at the rate or rates prescribed therefor in such Securities,

(C) to the extent that payment of such interest is lawful, interest upon overdue interest at the rate or rates prescribed therefor in such Securities, and

(D) all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel;

and

(2) all Events of Default with respect to Securities of that series, other than the nonpayment of the principal of Securities of that series which have become due solely by such declaration of acceleration, have been cured or waived as provided in Section 5.13.

------------

No such rescission shall affect any subsequent default or impair any right consequent thereon.

For all purposes under this Indenture, if a portion of the principal of any Original Issue Discount Securities shall have been accelerated and declared due and payable pursuant to the provisions hereof, then, from and after such declaration, unless such declaration shall have been rescinded and annulled, the principal amount of such Original Issue Discount Securities shall be deemed, for all purposes hereunder, to be such portion of the principal thereof as shall be due and payable as a result of such declaration; and payment of the portion of the principal thereof as shall have become due and payable as a result of such declaration, together with interest, if any, thereon and all other amounts owing thereunder, shall constitute payment in full of such Original Issue Discount Securities.

SECTION 5.03.  Collection of Indebtedness and Suits for Enforcement by Trustee.
----------------------------------------------------------------

The Company covenants that if

(1) default is made in the payment of any interest on any Security when such interest becomes due and payable (subject to the Company's right, if any, to extend or defer an interest payment date in accordance with the terms of such Security) and such default continues for a period of 30 days; or

(2) default is made in the payment of the principal of (or premium, if any, on) any Security when due and payable whether at its maturity or upon acceleration, redemption or otherwise;

(3) default is made in the deposit of any sinking fund payment when and as due by the terms of any Security,

Source: TRIBUNE CO, 8-K, April 09, 1999