DUANE MORRIS LLP
Frederick B. Rosner
1100 North Market Street
Suite 1200
Wilmington, DE 19801
(302) 659-4900
fbrosner@duanemorris.com

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
2 Park Avenue
New York, NY 10016
(212) 592-1400
sselbst@herrick.com

Attorneys for Intelsat Corporation

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------ x
                                     :
In re:                               :   Chapter 11
                                     :
TRIBUNE COMPANY, et al.,             :   Case No.:   08-13141 (KJC)
                                     :
            Debtors.                 :   Jointly Administered
                                     :
                                     :   Hearing Date: February 20, 2009 @ 10:00 a.m.
                                     :   Objection Deadline: February 13, 2009 @ 4:00 p.m.
------------------------------------ x

**MOTION OF INTELSAT CORPORATION FOR ADEQUATE PROTECTION OF ITS
INTERESTS PURSUANT TO 11 U.S.C. § 363(e) AND FOR ALLOWANCE
AND PAYMENT OF 11 U.S.C. § 503(a) ADMINISTRATIVE EXPENSE CLAIM**

TO:   THE HONORABLE KEVIN J. CAREY,
      UNITED STATES BANKRUPTCY JUDGE

Intelsat Corporation ("Intelsat"), by its counsel, Herrick, Feinstein LLP and Duane Morris LLP, hereby moves this Court (the "Motion") for an order compelling the debtors Tribune Broadcasting Company and Tower Distribution Company (collectively "Tribune" or the

DM3\915944.1

"Debtors"), to provide adequate protection to Intelsat and to make payments when due under its unexpired satellite transponder lease agreements with Intelsat, pending the Debtors' decision whether to assume or reject the same. In addition, Intelsat seeks (i) the allowance and payment of an administrative claim in the amount of $457,419.35 for amounts due for satellite transponder service to the Debtors since the petition date, and (ii) a post-petition deposit in the amount of $560,000 as adequate assurance of future performance of the Debtors' obligations to Intelsat. In support of the Motion, Intelsat states as follows:

## SUMMARY

1. Since filing for protection on December 8, 2008 (the "Petition Date") under chapter 11 of 11 U.S.C. (the "Bankruptcy Code"), the Debtors have continued their operations and continued to use Intelsat's communication satellites. But the Debtors are not paying Intelsat for the satellite service they are using. Through February 1, 2009, the Debtors owe Intelsat $457,419.35 for post-petition satellite transponder usage. Under applicable law, the Debtors are obligated to make current payment for post-petition services; Intelsat is not required to continue to subsidize the Debtors' operations. All amounts the Debtors owe Intelsat for post-petition services should be allowed as an administrative claim and paid without delay.

2. Given the Debtors' post-petition defaults, the Debtors should only be allowed to continue to use Intelsat's satellites if they can provide Intelsat with assurance of adequate protection that they will make payment when due in accordance with the terms of their agreement with Intelsat.

## JURISDICTION

3. On the Petition Date, the Debtors and various subsidiaries and affiliates of each filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (the

"Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered. The Debtors are continuing in possession of their property, and operating and managing their debtors-in-possession pursuant to sections 1007 and 1008 of the Bankruptcy Code.

4. This Court has jurisdiction over the Chapter 11 Cases and this Motion pursuant to 28 U.S.C. sections 157(b) and 1334. This Motion constitutes a core proceeding as defined in 28 U.S.C. section 157(b)(2).

## BACKGROUND

5. Intelsat owns communication satellites and sells transponder capacity (the capacity to transmit data) on those satellites. Intelsat's customers use its transponder capacity for voice, data, video and Internet connectivity in over 200 countries and territories.

6. Based in Chicago, Illinois, the Debtors are America's largest employee-owned media and entertainment company. The Debtors' operations are conducted through two business segments, publishing and broadcasting and entertainment.

7. As of the Petition Date, PamAmSat Corporation ("PamAmSat"), a predecessor to Intelsat, and Debtor Tower Distribution Company were parties to that certain Full-Time Transponder Capacity Agreement (Pre-Launch) dated December 12, 2002 (the "2002 Agreement"), a copy of which is attached hereto as Exhibit A. The 2002 Agreement was subsequently assigned to Intelsat.

8. As of the Petition Date, PanAmSat, and Debtor Tribune Broadcasting Company were party to that certain Full-Time Capacity Transporter Agreement (Pre-launch) dated June 30, 2006 (the "2006 Agreement" and together with the 2002 Agreement, the ("Transponder Agreements"), a copy of which is annexed hereto as Exhibit B. The 2006 Agreement was subsequently assigned to Intelsat.

9. Since the Petition Date through February 1, 2009, the Debtors have failed to make payment for post-petition services in the aggregate amount of $457,419.35 under the Transponder Agreements.

10. Despite the Debtors' failure to make payment, Intelsat continues to allow the Debtors to access its communication satellites according to the Transponder Agreements.

## ARGUMENT

### I. Intelsat Is Entitled To Administrative Expense Priority For All Post-Petition Amounts Owing Under The Transponder Agreements Pursuant To 11 U.S.C. § 503(B)(1)(A).

11. All amounts the Debtors owe to Intelsat for post-petition performance under the Transponder Agreements should be allowed as an administrative expense claim and the Debtors should be directed to pay such amounts. Section 503(b)(1)(A) provides, in pertinent part "After notice and a hearing, there shall be allowed administrative expenses... including the actual, necessary costs and expenses of preserving the estate." (Headings omitted.)

12. One court stated that "[p]ending the decision to reject [an executory contract], the non-debtor entity to the contract is entitled to payment as an administrative expense for goods and services provided during the period of time before the debtor assumes or rejects the contract." In re Bethlehem Steel Corp., 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003), citing Matter of Washington-St. Tammany Electric Cooperative, Inc., 111 B.R. 555, 558 (Bankr. E.D. La. 1989). This Court has noted that "all expenses and liabilities incurred while the lease is in effect are an administrative expense." In re Johnston, Inc., 164 B.R. 551, 553 (Bankr. E.D. Tex. 1994).

13. Without access to Intelsat's communication satellites, the Debtors would lose a significant means of distribution for their services because Intelsat is one of the Debtors' primary satellite providers. Without Intelsat's performance under the Transponder Agreements, the

Debtors' ability to reorganize will clearly be jeopardized. The value of the Debtors' estate is thus dependent in part on their relationship with Intelsat.

14. Accordingly, Intelsat's claim for unpaid services provided since the Petition Date under the Transponder Agreements, in the amount of $457,419.35 through February 1, 2009, is properly an administrative claim under section 503(b) of the Bankruptcy Code as an actual and necessary cost and expense of preserving the bankruptcy estate. See Washington-St. Tammany Electric Cooperative, 111 B.R. at 559-60 (finding that the payment for utility service supplied to debtor by creditor post-petition is entitled to administrative expense treatment, as the post-petition services supplied by creditor were crucial to maintaining the viability of debtor's business). The administrative claim is properly due and payable without delay in accordance with this request under section 503(a) of the Bankruptcy Code.

## II. The Debtors Must Provide Adequate Protection By Making Full And Regular Monthly Payments To Intelsat Pursuant To 11 U.S.C. §363(E).

15. Intelsat is entitled to adequate protection of its interests if the Debtors are to be allowed to continue to use Intelsat satellites before they assume or reject the Agreement. Section 363(e) of the Bankruptcy Code, provides, in pertinent part:

> [A]t any time, on request of an entity that has an interest in property used ... the court, with our without a hearing, **shall** prohibit or condition such use ... as is necessary to provide adequate protection of such interest ...

11 U.S.C. §363(e) (emphasis added).

16. Section 363(e) requires a debtor benefiting from the use of a contract to provide adequate assurance to its counterparty by making full and regular payments under the contract. Such payments must continue until such agreement is either assumed or rejected. See Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 783 F.2d

1283, 1287 (5th Cir. 1986) (adequate protection provided to creditors by Chapter 11 is generally considered interim relief).

17. Courts have routinely held that providing adequate protection is mandatory. As described by one bankruptcy court:

> Section 363(e) is not permissive or discretionary - it states that the "shall" grant the relief specified, at any time, on request... If adequate protection cannot be offered, such use, sales or lease of the collateral must be prohibited.

In re Metromedia Fiber Network, Inc., 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003). Accord In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986) (Section 363(e) provides that, on the request of an entity having an interest in property used or proposed to be used, "the court, with or without a hearing, *shall* prohibit or condition such use ... as is necessary to provide adequate protection of such interest.") (emphasis added); Perez v. Peake, 373 B.R. 468, 482 (S.D. Tex. 2007) (creditors often use section 363(e) to impose on debtor the duty to provide adequate protection of an interest in property the debtor proposes to use during the bankruptcy case); In re DeSardi, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("[t]he concept of adequate protection finds its basis in the Fifth Amendment's protection of property interests.") (citation omitted).

18. Payments providing adequate protection should be made according to the terms of the contract. "There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate ... [Such] presumption in favor of the contract price is viable unless the debtor introduces convincing evidence to the contrary." In re Bethlehem Steel Corp., 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003), citing Washington-St. Tammany Electric Cooperative, 111 B.R. at 559 and Braniff Airways, 783 F.2d at 1285. See also In re Briscoe Enterprises, Ltd., 994 F.2d 1160, 1169 (5th Cir. 1993) (noting

that the contract rate is often the appropriate interest rate, which should factor in the appropriate risk premium).

19. The Debtors are obligated to make payments of the full post-petition amounts due under the Transponder Agreements, yet they have failed to make full payment for post-petition services. Thus, the appropriate adequate protection in this case would be for the Debtors to post a deposit in the amount of two months' service under the Transponder Agreement, an amount equal to $560,000. Such a deposit would be consistent with the form of adequate protection provided to utilities under section 366 of the Bankruptcy Code.

20. The Debtors' use of Intelsat's transponder facilities is the space-age equivalent of a traditional property lease. Instead of leasing square feet on Earth, the Debtors are leasing capacity on satellites. While the precise setting is new, the applicable law is not. One court, in evaluating section 363(e) under a traditional land lease, said approvingly:

> [S]everal courts have specially held that a Landlord's right to timely payment of post-petition rent constitutes an interest in property entitled to adequate protection ... [and] such protection is provided where the debtor makes ongoing current payments under the lease.

In re P.J. Clarke's Restaurant Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001), citing In re Mr. Gatti's, Inc., 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994). That reasoning also applies here.

21. Because Intelsat has not received adequate protection in the form of full payments under the Transponder Agreements, the Debtors must decide what they should do. They have the option to surrender their use of the satellites and avoid providing adequate protection or it must provide adequate protection. See, e.g., Metromedia Fiber Network, 290 B.R. at 491; Braniff Airways, 783 F.2d at 1285.

22. Accordingly, Intelsat respectfully moves this Court to condition the Debtors' use of Intelsat's transponder capacity upon the Debtors providing adequate protection in the form of a deposit of $560,000, equal to two months' service under the Transponder Agreements.

## CONCLUSION

**WHEREFORE,** Intelsat respectfully requests that the Court enter an order (i) granting Intelsat adequate protection in the form of a deposit in the amount of $560,000 for the use of its satellites pending a decision to assume or reject the Transponder Agreements, (ii) for the allowance and payment of Intelsat's administrative expense priority claim in the amount of $457,419.35, and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: January 30, 2009
Wilmington, Delaware

Respectfully submitted,

DUANE MORRIS LLP

/s/ Frederick B. Rosner
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 659-4900
Facsimile: (302) 657-4901

-and-

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

Attorneys for Intelsat Corporation