DUANE MORRIS LLP
Frederick B. Rosner
1100 North Market Street
Suite 1200
Wilmington, DE 19801
(302) 659-4900
fbrosner@duanemorris.com

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
2 Park Avenue
New York, NY 10016
(212) 592-1400
sselbst@herrick.com

Attorneys for Intelsat Corporation

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| TRIBUNE COMPANY, et al., | : Case No.:  08-13141 (KJC) |
| | : |
| Debtors. | : **Hearing Date:  February 20, 2009 @ 10:00 a.m.** |
| | : **Objection Deadline:  February 13, 2009 @ 4:00 p.m.** |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF INTELSAT CORPORATION PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF OF CERTAIN PREPETITION AMOUNTS BETWEEN INTELSAT CORPORATION AND DEBTORS

**TO:    THE HONORABLE KEVIN J. CAREY,
         UNITED STATES BANKRUPTCY JUDGE**

Intelsat Corporation ("Intelsat"), by its counsel, Herrick, Feinstein LLP and

Duane Morris LLP, hereby moves this Court pursuant to sections 362 and 553 of title 11 of the

United States Bankruptcy Code (the "Bankruptcy Code") for relief from the automatic stay in

order to effectuate a setoff of certain prepetition amounts owing between Intelsat and the above-captioned Debtors in connection with executory contracts between Intelsat and the Debtors, all as set forth below.

## PRELIMINARY STATEMENT

1.    Prior to the commencement of its chapter 11 case, the Debtors defaulted on payments for services provided by Intelsat in the amount of approximately $163,225.82.  The defaults relate to payments for satellite transponder capacity that the Debtors leased from Intelsat and used in the distribution of their services.  In addition, the Debtors owe approximately $457,419.35 for services that Intelsat has provided to the Debtors since the commencement of the Debtors' chapter 11 cases.

2.    Intelsat seeks to setoff a portion of the pre-petition deposit held by it under the Transponder Agreements (as hereinafter defined) against the full pre-petition amounts due and owing by the Debtors.

## JURISDICTION

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. section 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. sections 1408 and 1409.

## BACKGROUND

4.    On December 8, 2008 (the "Petition Date"), Debtor Tribune Company and certain affiliates and subsidiaries each commenced a case (the "Chapter 11 cases") in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered.

5.    Intelsat owns communication satellites and sells transponder capacity (the capacity to transmit data) on those satellites. Intelsat's customers use its transponder capacity for voice, data, video and Internet connectivity in over 200 countries and territories.

6.    Based in Chicago, Illinois, the Debtors are America's largest employee-owned media and entertainment company. The Debtors' operations are conducted through two business segments, publishing and broadcasting and entertainment.

7.    As of the Petition Date, PamAmSat Corporation ("PamAmSat"), a predecessor to Intelsat, and Debtor Tower Distribution Company were parties to that certain Full-Time Transponder Capacity Agreement (Pre-Launch) dated December 12, 2002 (the "2002 Agreement"), a copy of which is attached hereto as Exhibit A. The 2002 Agreement was subsequently assigned to Intelsat.

8.    As of the Petition Date, PanAmSat, and Debtor Tribune Broadcasting Company were party to that certain Full-Time Capacity Transporter Agreement (Pre-launch) dated June 30, 2006 (the "2006 Agreement" and together with the 2002 Agreement, the ("Transponder Agreements"), a copy of which is annexed hereto as Exhibit B. The 2006 Agreement was subsequently assigned to Intelsat.

9.    As of the Petition Date, Intelsat held a security deposit in the aggregate amount of $237,200 (the "Deposit"), which was posted by the Debtor pursuant to the Transponder Agreements.

10.    As of the Petition Date, Intelsat held claims in the amount of approximately $163,225.82 against the Debtors for prepetition capacity provided under the Transponder Agreements (the "Tribune Obligations").

## ARGUMENT

### I.    Setoff of the Deposit Against the Tribune Obligations is Appropriate.

11.    By this Motion, Intelsat seeks relief from the automatic stay in order to effectuate a setoff between Intelsat and the Debtors a portion of the Deposit -- against the full amount of the Tribune Obligations, namely $163,225.82.  Section 553 of the Bankruptcy Code provides that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."  11 U.S.C. section 553(a).

12.    Four conditions must exist in order for section 553(a) to preserve the right of setoff:

1)    the creditor holds a "claim" against the debtor that arose prepetition;

2)    the creditor "owes" a debt to the debtor that arose prepetition;

3)    the claim and the debt are mutual; and

4)    the claim and the debt are each enforceable and valid.

5 Collier on Bankruptcy at section 553.01[1]; In re Koch, 224 B.R. 572, 576 (Bankr. E.D. Va. 1998); Eastern Airlines, Inc. v. Chemical Bank, Inc., 1997 U.S. Dist. LEXIS 7380, at *5 (Bankr. S.D.N.Y. 1997); In re Bennett Funding Group, Inc., 212 B.R. 206. 212 (2d Cir. BAP 1997).

13.    Mutuality is not defined by the Bankruptcy Code.  However, it is generally held to mean that the prepetition claim and debt must be owed in the same right between the same parties, and the parties must be acting in the same capacity.  5 Collier on Bankruptcy at section 553.03[3][a]; In re Carlle, 242 B.R. 881 (Bankr. E.D. Va. 1999); In re O.P.M. Leasing Services, Inc. 68 B.R. 979, 986 (Bankr. S.D.N.Y. 1987).  Mutuality is said to exist where the mutual debt

and mutual credit exist at the time of the filing of the chapter 11 cases. See, e.g., In re Communicall Central, Inc., 106 B.R. 540, 545 (Bankr. N.D. Ill. 1989) (where both debts arose prepetition, court found mutuality of obligation and allowed setoff).

14.     The Debtors paid the Deposit to Intelsat prior to the Petition Date to secure their obligations under the Transponder Agreements. Prior to the Petition Date, the Debtors defaulted upon approximately $163,225.82 of their payment obligations under the Transponder Agreements. As a result of the filing of the Debtors' Chapter 11 Cases, such amounts constitute prepetition general unsecured claims held by Intelsat against the Debtors' estates. Accordingly, these amounts are currently held by and owing to and from the same parties (i.e., Intelsat and the Debtors) acting in the same capacity (i.e., counterparties under the Transponder Agreements.) Such amounts, therefore, can properly be setoff against the Deposit.

## II.     Relief from the Automatic Stay to Effectuate the Setoff is Appropriate.

15.     Prior to effectuating a setoff, a creditor must obtain relief from the automatic stay or must otherwise obtain an order allowing the setoff. See In re Academy Answering Services, Inc., 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988). Pursuant to section 362 of the Bankruptcy Code, an automatic stay was in effect upon the commencement of each of the Debtors' Chapter 11 Cases. The automatic stay expressly prohibits the following:

> the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor…

11 U.S.C. section 362(a)(7).

16.     Although the automatic stay is intended to protect a debtor from interference with its efforts to successfully reorganize and to prevent certain creditors from gaining an unfair distribution in respect of their claims against the debtor, "upon request of a party in interest and

after notice and a hearing" the Court is empowered to grant relief from the stay in order to effectuate a setoff. 11 U.S.C. section 362(d). "The automatic stay does not defeat the right of setoff, rather it 'merely stays its enforcement pending an orderly examination of the debtor's and creditor's rights." In re Luz International, Ltd., 219 B.R. 837, 841 (9th Cir. BAP 1998) (internal citings omitted); see also In re Whitaker, 173 B.R. 359 (Bankr. S.D. Ohio 1994) (granting relief from automatic stay upon cause shown in order to effectuate setoff); In re NTG Indus, Inc., 103 B.R. 195 (Bankr. N.D. III 1989) (granting relief from automatic stay to allow creditor to setoff prepetition claims). Upon establishing its right to setoff, a party "makes a prima facie showing of 'cause' for relief from stay". In re Orlinski, 140 B.R. 600, 603 (Bank. S.D. Ga. 1991). Once such as showing is made, the burden shifts to the debtor to rebut the right to setoff or cause for relief from the stay.

17.    Courts frequently grant relief from the automatic stay to allow parties to effectuate a setoff of prepetition debts, including the setoff of prepetition deposits held by a creditor against prepetition amounts due and owing from a debtor. See, e.g., In re Communicall Central Inc., 106 B.R. at 545 (granting relief from stay to setoff security deposit against unpaid lease obligations); In re Springfield Casket Co., Inc., 21 B.R. 223, 228 (Bankr. S.D. Ohio 1982) (granting bank's request for relief from automatic stay to exercise right of setoff of prepetition deposits against debtor's prepetition unpaid obligations); see also In re Express Freight Lines, 130 B.R. 288, 294 (Bankr. E.D. Wisc. 1991) (lifting stay to permit setoff); In re Julien Co., 116 B.R. 623, 629 (Bankr. W.D. Tenn. 1990) (granting requested relief from stay to effectuate setoff); In re NTG Indus, Inc., 103 B.R. at 197-98 (granting relief from stay to permit setoff).

18.    In the instant case, Intelsat should be granted relief from the automatic stay in order to effectuate a setoff of a portion of the Deposit against the full amount of the Tribune

Obligations. The setoff does not require any payment by the Debtors. Therefore, the Debtors will not be harmed if relief from the automatic stay is granted to effectuate the requested setoff. The practical effect of such a setoff would be to reduce the amount of debt the Debtors are required to pay Intelsat. In view of the existence of the right to setoff a potion of the Tribune Obligations against the Deposit and that such a setoff would not impede or jeopardize either estate's attempts to reorganize or prejudice other creditors, cause exists to grant Intelsat relief from the automatic stay to effectuate the setoff.

19.     Based upon the foregoing, Intelsat submits that the proposed setoff of a portion of the Deposit against the full amount of the Tribune Obligations is appropriate and authorized under section 553 of the Bankruptcy Code, and Intelsat should be granted relief from the automatic stay in order to effectuate such setoff.

## CONCLUSION

**WHEREFORE,** Intelsat respectfully requests that the Court enter an order (i) authorizing Intelsat to set off a portion of the Deposit against the pre-petition Tribune Obligations of $163,225.82 due under the Transponder Agreements, and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: January 30, 2009
      Wilmington, Delaware

Respectfully submitted,

DUANE MORRIS LLP

/s/ Frederick B. Rosner
Frederick B. Rosner (DE 3995)
1100 North Market Street
Suite 1200
Wilmington, DE 19801
Telephone: (302) 659-4900
Facsimile: (302) 657-4901

-and-

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
2 Park Avenue
New York, NY 10016
Telephone: (212) 592-1400
Facsimile: (212) 592-1500

Attorneys for Intelsat Corporation