# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: February 13, 2009 at 4:00 p.m. (ET)**<br>**Hearing Date: February 20, 2009 at 10:00 a.m. (ET)** |

## MOTION OF DEBTOR TRIBUNE COMPANY FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING AMENDMENT AND ASSIGNMENT OF ENGAGEMENT LETTER WITH J.P. MORGAN SECURITIES INC.

Tribune Company, one of the above-captioned debtors and debtors in possession ("Tribune" and, collectively with its affiliates that have commenced chapter 11 cases in this District, the "Debtors") hereby moves this Court (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6006 and 9014

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-5315724v1

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order authorizing the consensual assignment by Tribune of its rights and obligations under that certain Engagement Letter dated as of July 9, 2007 (the "Engagement Letter") between Tribune and J.P. Morgan Securities Inc. ("JPMorgan") to Chicago National League Ball Club, LLC ("CNLBC"), a non-Debtor affiliate of Tribune. In connection with such assignment, the Engagement Letter will be amended to extend its term through and including April 15, 2009. The assignment of Tribune's rights and obligations under the Engagement Letter, as amended, is to be effected in accordance with a proposed assignment agreement (the "Assignment Agreement") by and among Tribune, JPMorgan and CNLBC, a copy of which is attached to this Motion as Exhibit A. In support of this Motion, Tribune respectfully represents as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6006 and 9014.

## BACKGROUND TO THE MOTION

6.  On or about July 9, 2007, Tribune and JPMorgan entered into the Engagement Letter.[2] Pursuant to the terms of the Engagement Letter, Tribune engaged JPMorgan to serve as a financial advisor in connection with the disposition of an interest in certain of Tribune's non-Debtor subsidiaries, including (i) CNLBC, Wrigley Field Premium Ticket Services, LLC, Chicago Cubs Dominican Baseball Operations, LLC, and Diana-Quentin, LLC (each a "Non-Debtor Subsidiary") and/or (ii) the approximately 25.34% equity interest in Comcast SportsNet Chicago, LLC ("CSC") indirectly held by Tribune (the "CSC Equity Interest" and, together with the Non-Debtor Subsidiaries, the "Assets"). None of the Non-Debtor Subsidiaries have filed chapter 11 petitions, nor has CSC.

7.  The Assets collectively comprise the business of the Chicago Cubs baseball team (the "Cubs"). Prior to the time that the Engagement Letter was entered into, it has been the publicly-stated intention of Tribune to dispose of all or a majority of its interest in the Cubs. See Press Release dated April 2, 2007 (available at http://www.tribune.com/pressroom/releases/2007/04032007.html) (announcing Tribune's intent to dispose of an interest in the Cubs). Tribune has continued actively to pursue such a

---

[2] Nothing contained in this Motion is intended to alter any provision of the Engagement Letter. In the event of a discrepancy between the description of the Engagement Letter provided herein and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

disposition since the commencement of its chapter 11 case. The Cubs represent one of the most valuable assets of the Debtors' chapter 11 estates, and Tribune intends to implement the disposition of the Assets, with approvals from the Bankruptcy Court as necessary, in the near term.

8. From the time Tribune entered into the Engagement Letter, JPMorgan has actively advised Tribune and the Non-Debtor Subsidiaries with respect to disposition of the Assets, and JPMorgan is currently advising these parties in connection with the advanced stages of negotiations of an agreement contemplating disposition of the Assets. Over the year-and-a-half that it has been engaged by Tribune to advise it in connection with disposition of the Assets, JPMorgan has developed an extensive understanding of the facts and circumstances relevant to disposition of the Assets, a detailed understanding of the issues present in the negotiations concerning the proposed disposition, and a unique base of transaction-specific knowledge key to completing the negotiations and successfully closing a disposition in a timely manner. In short, JPMorgan has played and is continuing to play an integral role in most, if not all, aspects of the proposed disposition of the Assets, and both Tribune (a Debtor) and CNLBC (a non-Debtor) believe that the continued engagement of JPMorgan is important to ensure the timely and successful conclusion of the disposition process for the maximum value.

9. The terms and conditions applicable to JPMorgan's engagement in connection with the disposition, including JPMorgan's compensation therefor, are commercially sensitive and confidential. JPMorgan has advised the Debtors that disclosing the specific terms of the engagement would cause JPMorgan competitive and business harm. Accordingly, while the Debtors have provided the Engagement Letter to the Committee and will provide it to the

46429/0001-5315724v1

Court and to the Office of the United States Trustee upon request, the Debtors have not filed the Engagement Letter with this Motion.

10. In general, however, the Engagement Letter provides that JPMorgan will render financial advisory services to Tribune in exchange for a Transaction Fee, calculated as specified in the Engagement Letter. The Transaction Fee will be payable as a closing cost at the closing of any disposition of the Assets, regardless of the process or mechanics used to effectuate the disposition. The Engagement Letter further provides that Tribune shall reimburse the reasonable expenses incurred by JPMorgan in connection with its services.

11. Pursuant to the terms of the Engagement Letter, JPMorgan was only obligated to provide its services in connection with the disposition of the Assets through January 7, 2009, which is the expiration date of the Engagement Letter. However, because of the vital role JPMorgan continues to play in the process, Tribune requested that JPMorgan continue to act as financial advisor with respect to the disposition of the Assets subsequent to the Petition Date and extend the term of its engagement. In addition, because JPMorgan Chase Bank, N.A. ("JPMorgan Chase Bank"), an affiliate of JPMorgan, acts as Administrative Agent and in other capacities under that certain Credit Agreement dated May 17, 2007 among Tribune, various lenders, and an number of financial institutions as agents (the "Credit Agreement"), and because JPMorgan Chase Bank serves on the Committee, JPMorgan was only willing to continue acting as financial advisor with respect to the disposition of the Assets if the Committee was apprised of the situation and did not object to JPMorgan's ongoing engagement in connection with the disposition of the Assets. After being briefed on the circumstances, the Committee (excluding JPMorgan Chase Bank for these purposes) has advised Tribune and JPMorgan that they do not

46429/0001-5315724v1

object to JPMorgan continuing to act in its capacity as advisor for purposes of the disposition of the Assets, as contemplated by the Assignment Agreement.

12. JPMorgan has advised Tribune that throughout its engagement, JPMorgan has maintained an "ethical wall" between the JPMorgan personnel engaged under the Engagement Letter and those individuals that are primarily responsible for the Tribune credit exposure (including through the Credit Agreement) and that sit on the Committee. JPMorgan has further advised Tribune that the two groups do not share information regarding the Debtors or the Assets,[3] and, furthermore, that the two groups (a) are located in physically separate facilities, (b) have different reporting and supervisory chains and (c) maintain separate filing systems and record keeping. Still, if this Motion is approved, JPMorgan has advised Tribune and JPMorgan Chase Bank has advised the Committee that, out of an abundance of caution, JPMorgan Chase Bank will voluntarily recuse itself from any Committee discussion of, and vote on, any proposed disposition of the Assets.

13. In addition to the foregoing factors, Tribune and JPMorgan believe that the Engagement Letter should be assigned to CNLBC in order to more accurately reflect the substance of the transaction. Moreover, the proposed assignment will ensure that the Debtors' non-Debtor affiliates bear their own costs during the pendency of the Debtors' chapter 11 cases. Accordingly, by this Motion, Tribune seeks to enter into the Assignment Agreement attached hereto as Exhibit A, which would, inter alia, extend the term of the Engagement Letter through

---

[3] JPMorgan has advised Tribune that, as is customary for "ethical walls," select senior-level personnel have been considered to be "on top of the wall" in order to effectively manage and coordinate the various activities of the firm. Certain of these personnel may have received information from time to time from members of both groups, but in no event would they be permitted to share information from one group with members of the other group.

46429/0001-5315724v1

and including April 15, 2009 and assign Tribune's rights and obligations under the Engagement Letter to CNLBC.

**RELIEF REQUESTED**

14.     Tribune believes that its proposed entry into the Assignment Agreement, and the assignment of its rights and obligations under the Engagement Letter to CNLBC, a non-Debtor, is within the ordinary course of business for purposes of section 363 of the Bankruptcy Code, in part because no material expenditure of resources of Tribune's estate is intended to be effected as a result of the Assignment Agreement. Accordingly, it is at least arguable that Tribune's entry into and performance of the Assignment Agreement do not require Court approval. However, due to the advanced nature of negotiations currently underway in connection with disposition of the Assets, to avoid any potential disruption of JPMorgan's involvement in connection therewith, and to ensure that all parties in interest receive thorough disclosure of Tribune's actions in connection with the disposition of the Assets, Tribune has determined out of an abundance of caution to seek Court authorization to enter into the Assignment Agreement. Accordingly, by this Motion, Tribune respectfully requests entry of an order authorizing Tribune to enter into the Assignment Agreement and, in accordance therewith, to assign all of its rights and obligations under the Engagement Letter to CNLBC. Tribune further requests entry of an order authorizing Tribune to perform all obligations associated with the Assignment Agreement.

**BASIS FOR RELIEF REQUESTED**

15.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that

46429/0001-5315724v1

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. In this Circuit, courts have repeatedly approved the use of a debtor's assets outside of the ordinary course of business if the debtor can propose a sound business justification. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363).

17. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In other words, the business judgment rule essentially shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or gross abuse of discretion. See In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

18.  Tribune believes that it is in the best interests of its estate and creditors, and is an exercise of its sound business judgment, to assign the Engagement Letter to CNLBC. As described above (at ¶¶ 8-13), JPMorgan has actively advised Tribune in connection with the disposition of the Assets since July of 2007 and has developed a critical understanding of the facts and circumstances relevant to the disposition of the Assets. Negotiations with respect to the disposition of the Assets are now at a critical point, as Tribune and CNLBC anticipate finalizing an agreement for the disposition of the Assets in the near term. Any interruption in JPMorgan's financial advisory services at this juncture could impede CNLBC's ability to finalize an agreement for disposition of the Assets and to receive the greatest possible proceeds on account of the disposition. CNLBC therefore believes, and Tribune agrees, that it is in CNLBC's best interests to continue utilizing JPMorgan's financial advisory services. However, Tribune does not desire to incur any additional expense or potential liability in connection with the Engagement Letter. By assigning its rights and obligations under the Engagement Letter to CNLBC, Tribune will eliminate any such potential expenses and liabilities going forward. Moreover, the proposed assignment will simultaneously enable CNLBC to continue utilizing the services of JPMorgan on an uninterrupted basis in connection with the ongoing negotiations toward disposition of the Assets. As a result, Tribune believes that the consensual assignment of the Engagement Letter and its extension are both warranted and appropriate under the circumstances.

## NO PRIOR REQUEST

19.  Tribune has not previously sought the relief requested herein from this or any other Court.

46429/0001-5315724v1

## NOTICE

20. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) proposed counsel for the Committee; (iii) the administrative agents for the Debtors' prepetition loan facilities; (iv) the administrative agent for debtors' postpetition loan facility; (v) the indenture trustees for the Debtors' prepetition notes; (vi) counsel for JPMorgan; and (x) all parties having requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, Tribune respectfully requests that the Court enter an order (i) authorizing the assignment of the Engagement Letter by Tribune and its extension in accordance with the terms of the Assignment Agreement; (ii) authorizing Tribune's entry into and performance under the Assignment Agreement; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: January 30, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Kenneth P. Kansa
Kerriann S. Mills
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

46429/0001-5315724v1

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ Kate Stickles
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

Proposed Attorneys for Debtors and Debtors
In Possession

11