IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: February 20, 2009 at 10:00 a.m. (ET)<br>Objections Due: February 13, 2009 at 4:00 p.m. (ET) |

**APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 328(a) AND 1103(a) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT OF MOELIS & COMPANY LLC AS INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO JANUARY 6, 2009**

The Official Committee of Unsecured Creditors (the "Committee") of Tribune Company,

*et al.* (collectively, the "Debtors"), for its Application (the "Application") for Entry of an Order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") Authorizing the Employment of Moelis & Company LLC ("Moelis") as Investment Banker to the Committee, effective January 6, 2009, respectfully represents:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION AND BACKGROUND

2. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner in these Chapter 11 cases.

5. On December 18, 2008, the Office of the United States Trustee for Region 3 appointed the Committee, which was originally comprised of the following eight members: (i) JPMorgan Chase Bank, N.A., (ii) Merrill Lynch Capital Corporation, (iii) Deutsche Bank Trust Company Americas, as Indenture Trustee, (iv) Warner Bros. Television, (v) Vertis, Inc., (vi) Mr. William Niese, (vii) Pension Benefit Guaranty Corporation, and (viii) Washington-Baltimore

Newspaper Guild, Local 32035. On December 30, 2008, the U.S. Trustee added Wilmington Trust Company, as Successor Indenture Trustee, to the Committee.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 327(a) of the Bankruptcy Code.

## RELIEF REQUESTED

7. By this Application, the Committee respectfully requests entry of an order authorizing the Committee's retention of Moelis as its investment banker in these Chapter 11 cases, pursuant to section 328(a) of the Bankruptcy Code, effective as of January 6, 2009, the date Moelis was retained by the Committee.

8. An engagement letter between the Committee and Moelis, dated January 30, 2009 (the "Engagement Letter") is attached hereto as Exhibit "B" and is incorporated herein by reference. The Engagement Letter describes (a) the various services that Moelis anticipates performing for the Committee in these Chapter 11 cases (as described more fully herein) and (b) the terms and conditions of Moelis' proposed engagement by the Committee.

## MOELIS' QUALIFICATIONS

9. The Committee respectfully submits that the services of Moelis are necessary and appropriate to enable it to continue to evaluate the complex financial and economic issues that have been and will continue to be raised during the pendency of these Chapter 11 cases and to assist the Committee in fulfilling its fiduciary and statutory duties to the Debtors' unsecured creditors. After interviewing several investment banking firms, the Committee selected Moelis because of its professionals' in-depth expertise in providing investment banking services to debtors and creditors in restructuring and distressed situations.

10. Moelis is an investment banking firm with its principal office located at 245 Park Avenue, 32nd Floor, New York, New York 10167. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Holdings LLC, a privately-owned company. Moelis' chief executive officer is Kenneth D. Moelis and the Recapitalization & Restructuring Group is co-headed by Thane W. Carlston and William Q. Derrough. Moelis currently has approximately 150 employees.

11. Moelis provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to: (i) general financial advice; (ii) mergers, acquisitions, and divestitures; (iii) corporate restructurings; (iv) special committee assignments; and (v) capital raising. Professionals at Moelis have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

12. Since Moelis' registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., Cannery Casino Resorts, LLC, Entravision Communications Corporation, Invitrogen Corporation, NBTY, Inc., WCI Steel, Inc., Westwood One, Inc. and Yahoo! Inc. In addition, prior to joining Moelis, Moelis' professionals provided restructuring and other advisory services in a number of Chapter 11 cases, including, but not limited to, those of Adelphia Business Solutions, Inc., Delphi Corporation, Exide Technologies, Federal-Mogul Corporation, Bally Total Fitness, Foamex L.P., and Friedman's Inc.

13. In light of the size and complexity of these Chapter 11 cases, the Committee requires the services of a seasoned and experienced investment banker, and one that is familiar

with (i) the Debtors' businesses and operations and (ii) the Chapter 11 process. The Committee submits that the employment and retention of Moelis is in the best interests of the Debtors, their estates and creditors.

## SERVICES TO BE PROVIDED BY MOELIS

14. Moelis will render the following investment banking services to the Committee pursuant to the Engagement Letter (collectively, the "Investment Banking Services"):

(a) undertake, in consultation with the Committee, a customary business and financial analysis of the Company;

(b) to the extent Moelis reasonably deems necessary, appropriate and feasible, or as the Committee may request, review and analyze the Company's assets and its operating and financial strategies;

(c) review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(d) evaluate the Company's debt capacity and assist in the determination of an appropriate capital structure for the Company;

(e) as the Committee requests, identify, initiate, review, solicit proposals for, and evaluate any Restructuring (as defined below), and, if directed, develop and evaluate alternative proposals for a Restructuring;

(f) advise and assist the Committee, and if the Committee requests, participate in the negotiations of any Restructuring;

(g) determine and evaluate the risks and benefits of considering, initiating and consummating any Restructuring;

(h) assist the Committee in valuing the Company's assets or business, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated from the Company's bankruptcy estates;

(i) be available to meet with the Committee, the Company's management, the Company's board of directors, creditor groups, equity holders or other parties to discuss any Restructuring;

(j) participate in hearings before the Bankruptcy Court and provide relevant testimony; and

(k) such other investment banking services as may be reasonably requested by the Committee, including, but not limited to, M&A and asset sale processes, and that is within the scope of the engagement.

In light of Moelis' substantial expertise in all of these areas, the Committee believes Moelis is well-qualified to perform these services and assist the Committee in these Chapter 11 cases.

**PAYMENT OF FEES AND EXPENSES AND OTHER TERMS OF THE ENGAGEMENT**

15. The Committee seeks approval of the following fee structure (the "Fee Structure") pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a Committee appointed under section 1102 of the Bankruptcy Code "with the court's approval, may employ or authorize the employment of a professional person under section 327 or section 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a).

16. The terms of Moelis' proposed compensation are fully set forth in the Engagement Letter, and the Committee respectfully refers this Court to the Engagement Letter for a full recitation of its terms. In summary, pursuant to the terms and conditions of the

Engagement Letter and subject to this Court's approval, Moelis' compensation will be: (i) a monthly fee of $200,000 for the duration of the engagement (the "Monthly Fee"); and (ii) upon consummation of a Restructuring (as defined in the Engagement Letter), a restructuring fee (the "Restructuring Fee") in the amount of $7,500,000. Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the Monthly Fee in the applicable amount every month during the term of this agreement. One-half (50%) of the aggregate Monthly Fees actually paid by the Debtors commencing with the 13th Monthly Fee shall be deducted from the Restructuring Fee otherwise payable to Moelis.

17. The Fee Structure appropriately reflects the nature of the services to be provided by Moelis and is consistent with the fee structures typically utilized by leading investment banks. Moelis intends to apply for compensation of professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to Court approval and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, consistent with the proposed compensation set forth in the Engagement Letter.

18. At this time, it is not possible to estimate the number of months that will be required to perform the services contemplated by the Engagement Letter or the aggregate amount of the fees payable pursuant to the Engagement Letter. Accordingly, it is not possible to estimate the total compensation to be paid to Moelis under the Engagement Letter.

19. In addition to any fees payable to Moelis hereunder, and regardless of whether or not any transaction contemplated by the Engagement Letter is proposed or consummated, Moelis will be entitled to reimbursement on a monthly basis for travel costs and other reasonable out-of-pocket expenses, including all reasonable fees, disbursements and other charges of counsel

retained by Moelis, incurred in connection with, or arising out of Moelis' activities under or contemplated by Moelis' engagement (the "Expenses").

20. The fees and expense reimbursement provisions described above are consistent with normal and customary billing practices for cases of this size and complexity which require the level and scope of services outlined. Moelis and the Committee believe that the foregoing compensation arrangements are both reasonable and market-based. Recently, similar Fee Structures have been approved for Moelis in other large and complex cases. *See In re TOUSA, Inc.*, Case No. 08-10928 (JKO) (Bankr. S.D. Fla. Aug. 27, 2008); *In re Greektown Holdings, LLC*, Case No. 08-53104 (WS) (Bankr. W.D. Mich. Oct. 15, 2008); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (PJW) (Bankr. Del. Jul. 30, 2008).

21. As indicated in the declaration of Thane W. Carlston, attached hereto as <u>Exhibit "A"</u> (the "Carlston Declaration"), Moelis' standard practice is to charge flat monthly fees plus a "transaction fee" that is payable upon consummation of a restructuring or other defined transaction. This is the standard fee arrangement that is followed by other investment banking firms who provide restructuring services and is consistent with the fee arrangements that have been authorized in other Chapter 11 cases in which Moelis and other leading investment banks have been retained.

22. Moelis will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. In addition, although Moelis does not charge for its services on an hourly basis, Moelis nevertheless will maintain records of time spent by its professionals in connection with the rendering of services for the Committee by category and nature of the services rendered, <u>provided, however,</u> that Moelis seeks approval to maintain time records in one-half hour increments.

23. As described in detail in the Carlston Declaration, Moelis has conducted a search of its conflict database and has made other internal inquiries with respect to the Debtors and a voluminous list of parties in interest and potential parties in interest in these chapter 11 cases. The scope of that search and of those inquiries is set out on Schedule "1" to the Carlston Declaration, while the results are set forth on Schedule "2" to the Carlston Declaration. Upon information and belief, Moelis does not represent and does not hold any interest adverse to the Debtors' estates or their creditors in connection with these chapter 11 cases.

24. In addition, Moelis has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## INDEMNIFICATION

25. The Engagement Letter provides that the Debtors will reimburse the expenses of, indemnify and hold harmless, Moelis and its affiliates and their current or former directors, officers, partners, members, attorneys, agents and employees and their respective successors and assigns (collectively, the "Indemnified Persons") under certain circumstances, as described more specifically in the provisions (the "Indemnification Provisions") that are attached as Annex A to (and made a part of) the Engagement Letter.

26. The Committee and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and implemented in other large Chapter 11 cases by bankruptcy courts. *See, e.g., In re New Century TRS Holdings, Inc.*, Case No 07-10416 (Bankr. D. Del. April 26, 2007); *In re Foamex Int'l, Inc.* Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); *In re United Artists Theatre Co.*, 315 F.3d 217 (3d

Cir. 2003); *In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), *aff'd*, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

27. Investment bankers seek indemnification for a variety of reasons. First, Moelis should have its expenses reimbursed if it is subpoenaed to testify or has to produce documents in connection with, or is made a party to litigation arising out of, these chapter 11 cases. Second, Moelis intends to rely (and is entitled to rely) on the accuracy and completeness of the financial information and other information to be provided by the Debtors. Moelis may also be involved in transactions in which the Debtors and/or the Committee direct that certain actions be taken. It is appropriate that Moelis be protected from liabilities that are attributable to acts, omissions or misstatements by other parties. Moelis therefore seeks indemnification for liabilities and losses that arise out of the inaccuracy of information provided by the Debtors, or that otherwise are attributable to actions or omissions by the Debtors and the Committee.

28. Second, the performance of Moelis' responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. For example, Moelis may be called upon to provide advice as to the value of various assets or the values of bids submitted for the purchase of certain of the Debtors' assets. Moelis seeks indemnification for such matters (excluding cases in which Moelis has acted with bad faith, gross negligence or willful misconduct) in order to ensure that Moelis will be free to exercise its best professional judgment independently, and without fear of litigation from persons whose financial interests might be adversely affected by those judgments.

29. The proposed indemnification provisions are consistent with the standards that normally govern trustees and committees in Chapter 11 cases. *See In re Chicago Pacific Corp.*,

773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee can be personally liable only "for a willful and deliberate violation of his fiduciary duties"); *In re Hutchinson*, 5 F.3d 750 (4th Cir. 1993) (collecting cases); 6 *Collier on Bankruptcy* §§ 704.04[1], 721.05[2][b] (15th ed. 2001). Members of creditors' committees, and their professionals, also are protected from liability in the absence of gross negligence. *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). In fact, in *PWS Holding* the Court of Appeals for the Third Circuit held that professionals similarly should be protected from liability in the absence of gross negligence. *See* 228 F.3d at 246.

30. The proposed indemnification provisions are consistent with the rules that courts have consistently applied in "business judgment" cases as well. In those cases, courts consistently have found that a "negligence" standard is not useful in examining business decisions, because "inescapably there can be no available objective standard by which the correctness of every corporate decision may be measured, by the courts or otherwise." *Auerbach v. Bennett*, 47 N.Y.2d 619, 629-31, 419 N.Y.S.2d 920, 926-27, 393 N.E.2d 994, 1000-01 (1979). Instead, matters involving business judgment and advice should not be subject to review for anything short of "gross negligence." *See, e.g., Cede & Co.*, 634 A.2d 345, 364 n. 31, 366-7 (confirming that under Delaware law liability for breach of a director's duty of care should be predicated only on gross negligence); *Smith v. Van Gorkom*, 488 A.2d 858 (Del. 1982) (same).

31. For these reasons, indemnification agreements are common market practice, both inside and outside of bankruptcy cases, and it is the standard practice for firms like Moelis to obtain indemnification of the kind sought in the Engagement Letter.

32. For the foregoing reasons, the Committee submits that the proposed indemnification provisions are appropriate and should be approved.

## PREPETITION PAYMENTS

33. Moelis has not received any payments for professional services rendered or to be rendered in contemplation or in connection with these cases.

## NOTICE

34. Notice of this Application has been provided to: (i) Debtors; (ii) counsel to the Debtors; (iii) Office of the United States Trustee for the District of Delaware; and (iv) all parties having requested notices in the Debtors' chapter 11 cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Committee submits that no other or further notice is necessary.

## NO PREVIOUS REQUEST

35.     No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order (i) authorizing the Committee's retention of Moelis as investment banker for the Committee on the terms set forth herein, effective January 6, 2009 and (ii) granting such other and further relief as may be just and proper.

Dated: January 30, 2009

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL.**

JPMorgan Chase Bank, N.A., solely in its capacity as Co-Chair of the Creditors' Committee and not in its individual capacity.

_____
Miriam Kulnis
Executive Director

Warner Bros. Television, solely in its capacity as Co-Chair of the Creditors' Committee and not in its individual capacity.

_____
Wayne M. Smith
Vice President, Senior Litigation & Chief Patent Counsel

## NO PREVIOUS REQUEST

35. No previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an order (i) authorizing the Committee's retention of Moelis as investment banker for the Committee on the terms set forth herein, effective January 6, 2009 and (ii) granting such other and further relief as may be just and proper.

Dated: January 30, 2009

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF TRIBUNE
COMPANY, ET AL.

JPMorgan Chase Bank, N.A., solely in its
capacity as Co-Chair of the Creditors'
Committee and not in its individual capacity.

_____
Miriam Kulnis
Executive Director

Warner Bros. Television, solely in its capacity
as Co-Chair of the Creditors' Committee and not
in its individual capacity.

_____
Wayne M. Smith
Vice President, Senior Litigation & Chief Patent
Counsel