# Exhibit 1

# BOSTWICK & JASSY LLP

*Trial and Appellate Advocates*

12400 Wilshire Boulevard, Suite 400                                                          Gary L. Bostwick *
Los Angeles, CA 90025                                                                              Jean-Paul Jassy

October 25, 2007

*VIA E-MAIL*

Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC
202 West First Street
Los Angeles, CA 90012
Email: julie.xanders@latimes.com

Re:     General Advice for Los Angeles Times Communications LLC

Dear Julie:

Thank you for selecting Bostwick & Jassy LLP to serve as counsel for Los Angeles Times Communications LLC (the "Company"). The purpose of this letter is to confirm our engagement to represent the Company in connection with the general advice file, described below.

Scope of Representation. We are being engaged to represent the Company in connection with general advice that the Company may, from time to time, seek from us. Except as we may agree otherwise in writing, we will be representing only the Company and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of the Company. Except as we may otherwise agree, the terms of this letter apply to other engagements for the Company that we may undertake (e.g., any active litigation matters). We will, however, open a new litigation file for active litigation matters.

Tribune Company Retention Policy. We have read the attached Tribune Company Retention Policy and accept its terms. The attached Tribune Company Retention Policy is incorporated into this letter as if set forth in full.

Fees and Charges. Our fees are based on hours charged at scheduled rates that are periodically adjusted, generally as of the beginning of a calendar year. My hourly rate for this matter is $365. In addition to fees, our statements include our actual costs for fees of governmental agencies and disbursements and/or charges for third parties (collectively "Charges").

Telephone: (310) 979-6059   www.bostwickjassy.com   Fax: (310) 314-8401

*Certified Specialist, Appellate Law, The State Bar of California Board of Legal Specialization. Also admitted to practice in Wyoming.*

Unless we otherwise expressly agree in writing, any estimates we may provide from time to time and any Fee Deposits or advances against costs we may require are not a limitation on our fees and other charges.

We have agreed to undertake this engagement on the condition that the Company shall be obligated to pay all amounts due in accordance with the provisions of this letter.

Fee Deposit. We have agreed to undertake this engagement without requiring an advance deposit (a "Fee Deposit") for legal fees and/or Charges. However, we reserve the right in the future (i) to require that you deposit with us a Fee Deposit in such amount as we shall then request and (ii) from time to time thereafter to require that the amount of the Fee Deposit be increased.

Termination of Representation. The Company has the right to terminate our representation at any time. Subject to our ethical obligation to give the Company reasonable notice to arrange for alternate representation, we may terminate our representation at any time.

Our Document Retention. It is our policy and practice to destroy our files five (5) years after the file is first closed unless the client requests a shorter or longer retention period in writing. Files are generally closed at the conclusion of a lawsuit or completion of a transaction.

No Warranties. It is not possible to warrant a successful result or represent that a particular result can be obtained within a given time framework or cost estimate. The Company acknowledges that we have not made any representations, promises, warranties or guarantees, express or implied, regarding the outcome of this matter or any advice given in connection with this or any other matter.

Arbitration. Any dispute between us concerning our fees or charges shall, if the Company so elects, be submitted to arbitration under rules of the California State Bar, and shall be binding if (i) each of us so agrees after any such dispute arises, or (ii) such arbitration becomes binding under such rules. Any dispute between us concerning our fees or charges not so submitted to binding arbitration under the rules of the California State Bar, or that remains unresolved after non-binding arbitration under such rules, and any other dispute between or among any of the Company and us or any of our attorneys and agents, including but not limited to claims of malpractice, errors or omissions, or any other claim of any kind regardless of the facts or the legal theories, shall be finally settled by mandatory binding arbitration in Los Angeles, California, conducted in accordance with California Code of Civil Procedure §§ 1282 *et seq.*, including, but not limited to, section 1283.05, with each party to bear its own costs and attorneys' fees and disbursements. Such arbitration shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the parties choosing the third arbitrator. Judgment on a binding arbitration award may be entered in any court of competent jurisdiction. *We mutually acknowledge that, by this agreement to arbitrate, each of us irrevocably waives our rights to court or jury trial. The Company has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this engagement letter and consent to the foregoing agreement to arbitrate.*

2

..

If the foregoing is an acceptable basis for our engagement as counsel, I would appreciate it if you, as an authorized representative of the Company, would counter-sign this letter and return it to us. If you have any questions or concerns, please call. Once again, thank you for selecting us to represent Los Angeles Times Communications LLC.

Yours very truly,

Jean-Paul Jassy

for BOSTWICK & JASSY LLP

Attachment:  Tribune Company Retention Policy

The undersigned has read and understood this engagement letter and agrees that it correctly sets forth the terms upon which Bostwick & Jassy LLP has been engaged by the undersigned in connection with the representation described herein.

Dated: _____, 2007

_____
Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC

If the foregoing is an acceptable basis for our engagement as counsel, I would appreciate it if you, as an authorized representative of the Company, would counter-sign this letter and return it to us. If you have any questions or concerns, please call. Once again, thank you for selecting us to represent Los Angeles Times Communications LLC.

Yours very truly,

Jean-Paul Jassy

for BOSTWICK & JASSY LLP

Attachment. Tribune Company Retention Policy

The undersigned has read and understood this engagement letter and agrees that it correctly sets forth the terms upon which Bostwick & Jassy LLP has been engaged by the undersigned in connection with the representation described herein.

Dated: _October 2 1_, 2007

Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC

3

# TRIBUNE COMPANY RETENTION POLICY

Tribune Company and counsel must work together to obtain efficiently delivered quality legal services.  To that end, by accepting an assignment your firm agrees to the following Tribune Retention Policy:

I.    Retention of Counsel

Tribune's Law Department is responsible for strategic and substantive decisions regarding the course of each matter, as well the selection of the appropriate outside attorney to handle each aspect of each matter. To improve our ability to make such judgments and  to coordinate the work of in-house and outside counsel, an in-house attorney is assigned as the Managing Attorney for each matter.  It is your responsibility to keep the Managing Attorney regularly apprised of all developments in each matter. The Managing Attorney should be copied on all communications and correspondence relating to the matter. Tribune expects you to provide the Managing Attorney ample time to review and suggest revisions in substantive pleadings, agreements or other case-related documents. Periodic litigation updates, generally monthly, for all pending litigation matters must also be provided to the Managing Attorney.

II.    Staffing

The number of attorneys and legal assistants assigned to a matter must be approved by the Managing Attorney before work on the matter may begin.  Generally, Tribune expects each matter to be staffed by one partner, and if necessary, one associate.

Tribune also expects that assigned attorneys will remain on the matter to conclusion unless authorized by Tribune.

Tribune will be provided  the hourly billing rates for individual attorneys and legal assistants assigned to Tribune matters.  Should the firm elect to change its rates during the pendency of any Tribune matter, the firm must notify Tribune in writing at least 30 days before the date the new rate is to take effect.

Assigned staff must perform tasks appropriate to their experience and billing rates. Generally, Tribune will not pay for:

- Routine tasks performed by attorneys, such as summarizing depositions or organizing trial exhibits, that are more appropriately assigned to a legal assistant.

- Staffing inefficiencies caused by the unavailability of personnel including expenses related to familiarizing a replacement attorney or legal assistant with an existing matter.

- More than one attendee at any deposition, hearing or other proceeding unless preapproved by Tribune Managing Attorney.

- Non-attorney/non-paralegal staff, such as library staff or computer technicians.

- Secretarial time, or for services of word processors, proofreaders, records clerks, facsimile operators or similar firm employees. In extraordinary circumstances, the Managing Attorney may approve the reimbursement of overtime payments to such employees. When overtime payments are approved, you agree to make every effort to keep such overtime charges to a minimum.

- Summer associate or intern time.

- Administrative activities, such as preparing invoices, annual auditor responses or discussing billing, budgets or other related reports.

- Any other charges that are part of the normal overhead of operating an office, including office supplies, staff meals and transportation. Charges for docket clerks or court runs by firm personnel are also considered normal overhead.

- Travel time should not be billed unless the attorney actively is engaged in and working on Tribune matters while traveling and such travel has been approved in advance.

III.    Budget

Unless otherwise directed by the Managing Attorney, a budget is to be prepared for each matter and submitted to the Managing Attorney for approval before work on the matter begins. The Managing Attorney may request a separate budget for any segment of any matter. If the matter assigned is a litigation matter, the responsible attorney should provide an itemized list of tasks and their related costs at the outset of the representation. The list should include a discovery plan which details the costs for depositions, motions, document production, expert discovery and other trial preparation. Tribune recognizes that budgets for matters may change with changed circumstances. However, any changes in the projected budget should be discussed as soon as possible with the Managing Attorney. Where legal bills are in excess of 10% over the budget provided by the responsible attorney, Tribune reserves the right not to pay the excess fees unless the Managing Attorney was notified in writing of the anticipated increases over the budgeted amount and the Managing Attorney agreed to the revised budget.

IV.    Billing Procedures

Unless otherwise agreed in writing, bills and budget statements should be submitted monthly, and each bill shall cover work performed in the preceding calendar month.

Tribune expects to receive monthly bills by the fifteenth (15th) day of the month. Tribune retains the right to obtain additional information regarding any bill.

V.    Billing Format

Billing statements should provide the Managing Attorney with a clear understanding of the work performed on Tribune's behalf, by whom the work was performed, and the cost and duration of each work segment. Where work is performed on more than one matter in any month, each matter should be separately detailed in the monthly bill.

Each bill shall contain the following information:

- the name of the Tribune entity (e.g., Tribune Media Services, Los Angeles Times, Newsday, Sun-Sentinel, Daily Press, Greenwich Time, The Baltimore Sun, The Orlando Sentinel, The Hartford Courant, The Morning Call, The Advocate) for which the services were performed;

- a file number or brief identifier of the matter to which the services relate;

- the billing period involved;

- a detailed description of each task performed in single-activity time entries, including the date it was performed, who performed it, their rate, the time expended and the charges for each task;

- a summary showing the rate, total hours/charges, and rank (e.g., partner, associate, legal assistant) of each staff member billing;

- a description of any reimbursable expenses or disbursements made on behalf of Tribune during the statement period;

- billing in .10 hour increments;

- a detailed description of all work including, but not limited to:

    -- the name and affiliation of any other person with whom the attorney or legal assistant meets, confers or otherwise interacts with and the subject matter of any such meeting, telephone call or other action;

    -- the identity of any deponents and the subject of the deposition;

    -- the specific subject matter of any research performed;

    -- the specific motion, brief or agreement worked on and the precise nature of the work performed; and

3

-- the identity of any materials/documents reviewed.

Generic descriptions, such as "drafted brief," "worked on agreement," "telephone call," "conference," "reviewed documents," "research," or "work on project or case" are not acceptable for billing purposes.

Each monthly bill shall also be accompanied by a statement that includes the budget for the matter. The bill should identify fees and expenses to date as compared to the budget. The partner responsible for each matter should sign all billing statements, representing to Tribune that he or she has reviewed the statements and that they are in accord with all provisions and instructions of this policy.

VI.    Expenses

Tribune will pay actual costs for expenses. Copies of actual invoices for any single expense over $1,000 must be included with the bill. All bills should contain a summary of charges for each expense totaled by category.

Tribune will only reimburse:

- reasonable expenses for computerized legal research such as Lexis and Westlaw, not to exceed actual cost;

- local toll and long-distance calls on an actual-cost basis;

- photocopying at actual cost, not to exceed .10 per page;

- reasonable travel expenses including coach or economy airfares, car rental and meals;

- reasonable hotel expenses not to exceed $175 per night unless travel is to a major urban center where standard hotel rates regularly exceed that amount;

- actual charges billed for messenger deliveries, including overnight and express, that are incurred in the interest of dispatch and reliability.

Tribune will not pay for:

- local transportation charges;

- cellular telephone charges;

- travel time for attorneys or legal assistants unless they are performing work for Tribune and the Managing Attorney has approved the compensation in advance;

- out-of-town entertainment expenses;

- in-town or in-office working meals.

Fees and expenses relating to the use of independent contractors such as expert witnesses, investigators, court reporters or independent paralegals must be approved in advance by the Managing Attorney. Extraordinary expenses, such as computerization of litigation documents, must also be approved in advance by the Managing Attorney. All such fees and expenses should be billed on an actual-cost basis and should be billed in a format identical or substantially similar to the main billing statement.

VII.    Conflicts of Interest

Tribune is concerned about potential conflicts of interest. Your attorneys should review proposed assignments for any conflicts of interest regarding any Tribune entity before accepting any matter, and should promptly notify the Managing Attorney of any actual or potential conflicts. Tribune also expects you to establish a conflict identification system that will allow you to notify our senior counsel in advance if your firm is considering representing a client in any of the following types of matters:

- Opposing a public records request under any Freedom of Information Act or similar statute;

- Seeking to deny the public or any journalist or media organization (not limited to Tribune or any of its subsidiaries) access to any meeting, proceeding or information, other than routine motions for discovery protective orders that do not involve the sealing of judicial records in court files;

- Subpoenaing any journalist or media organization for testimony, documents or information;

- Representing a client pursuing a defamation or invasion of privacy claim against any journalist or media organization;

- Representing any client in any other action against any media organization.

Tribune acknowledges that the above matters may not necessarily present a conflict under traditional canons of ethics. Because of the special history of Tribune Company and our commitment to the protection of First Amendment freedoms, however, we believe that advance notice and open communication about these types of legal matters will be in the best interest of maintaining a long-term and rewarding relationship between us.

VIII.    General

All Tribune matters must be treated confidentially in all respects. Tribune reserves the right to require additional information regarding your invoices and/or that you reorganize

5

the information currently requested.  By way of example, Tribune may require that you supply your invoices electronically.  By representing Tribune, you agree to comply with such requests, and to do so at your own expense.

Please review this policy and let us know if you have any questions or comments regarding your representation of Tribune. We look forward to working with you.



BOSTWICK & JASSY LLP

*Trial and Appellate Advocates*

12400 Wilshire Boulevard, Suite 400                                    Gary L. Bostwick \*
Los Angeles, CA 90025                                                  Jean-Paul Jassy

December 2, 2008

***VIA E-MAIL***

Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC
202 West First Street
Los Angeles, CA 90012
julie.xanders@latimes.com

Mr. Jeff Short
Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
JShort@tribune.com

Ms. Carey Moran
Los Angeles Times
202 West First Street
Los Angeles, CA 90012
carey.moran@latimes.com

      Re:    Engagement of Bostwick & Jassy LLP

Dear Ms. Xanders, Mr. Short and Ms. Moran:

      The purpose of this letter is to confirm our engagement by Los Angeles Times Communications LLC ("The Times"), Tribune Company ("Tribune") and Carey Moran ("Moran" or "Employee") to represent them in connection with the Litigation (as defined below). We appreciate your confidence and thank you for selecting us as counsel.

      1.    Scope of Representation.  We have been engaged to represent The Times, Tribune and Moran (The Times, Tribune and Moran are sometimes hereinafter referred to as the "Clients") in connection with the lawsuit filed by George Liberman Enterprises, Inc. (the

Telephone: (310) 979-6059   www.bostwickjassy.com   Fax: (310) 314-8401

\*Certified Specialist, Appellate Law, The State Bar of California Board of Legal Specialization. Also admitted to practice in Wyoming.

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 2

"plaintiff") entitled *George Liberman Enterprises, Inc. v. Los Angeles Times Communications LLC, et al.*, Los Angeles Superior Court, Case No. BC 401646 (such lawsuit, together with any related claims and proceedings in the trial court, is referred to hereinafter collectively as the "Litigation"). Except as we may agree otherwise in writing, we will be representing only The Times, Tribune and Moran and will not be representing any parent, subsidiary or other affiliated entity nor any shareholder, partner, member, director, officer, employee, agent or insurer of The Times or Tribune. Because it may not be practical or efficient to keep each of you fully informed on all matters relating to our representation of you, each of you has appointed and designated Julie Xanders, Esq. (your "representative") as the person with whom we will communicate and from whom we will take direction regarding decisions to be made and all other aspects of the Litigation. Accordingly, you hereby authorize us to communicate solely with your representative as to all matters relating to the Litigation and to rely on instructions given by such representative to us. We understand that each of you will rely upon your representative to keep you informed and to involve you as she deems appropriate. We stand ready to answer any questions any of you may have at any time and may from time to time copy you on some communications. We will, however, with your concurrence, not attempt to make you aware of all oral communications or copy you on all e-mails, letters and the like or include you in all decisions, and will rely on your representative to keep you informed.

    2.    <u>Waiver of Conflict of Interest</u>. Our joint representation of The Times, Tribune and Moran in the Litigation is undertaken on the understanding that none of you now perceives any actual conflict of interest in such joint representation. However, since you may not always perceive matters in the same way and because your interests do or may vary, it is possible that a conflict of interest now exists or may arise. Examples of such potential conflicts of interest include, but are not limited to, the following:

        (a)    One or more of the Clients may differ on litigation strategy or the issue of whether to settle the Litigation on certain terms.

        (b)    One or more of the Clients could seek to avoid the imposition of actual and/or punitive damages by claiming that the actions of the other Clients, rather than their own actions, caused the alleged injury to the plaintiff. For example, The Times might argue that actions of Employee were not authorized or ratified and/or that Employee concealed improper motivations for Employee's actions.

        (c)    One or more of the Clients could, at some point, seek contribution or indemnity from one of the other Clients for any claims arising out of the Litigation.

        (d)    Employee could be the subject of claims, or may wish to assert claims, arising out of his employment or his relationship or dealings with the plaintiff which might be adverse to the interests of the other Clients.

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 3

      (e)     The Times may at some point in the Litigation assert that Employee was not acting within the course and scope of Employee's employment, or Employee may be subject to claims with respect to which he is not entitled to indemnity from The Times. In that event, The Times may take the position that it would no longer pay for defense of Employee, whereas presumably Employee would disagree with that position.

      (f)     The law is complex, especially as applied to actual facts and circumstances, and the factual circumstances also may be complicated. Therefore as a practical matter it is not possible to anticipate and describe, or to advise each of you about, all potential conflicts of interest between or among you, about the pros and cons of any particular item from the point of view of each of you, or of the adverse effects of those conflicts upon our representation of any one or more of you.

Although joint representation may result in tactical advantage, convenience, efficiency or reduced legal expense, joint representation also has the following disadvantages that you must acknowledge and accept as a condition to our engagement:

      (a)     Joint representation may result in less vigorous assertion or protection of one person's individual or separate interests than if we were to represent only that person.

      (b)     Joint representation has the further disadvantage that no attorney-client privilege would apply to communications between or among you or with us in any dispute between or among you. In other words, we cannot keep confidential from one of you any communication with another one of you in the course of the joint representation, and we could be compelled to testify concerning any such communication. You should also know that communications which occur during the course of the joint representation will lose their privileged character if they should be offered in a future civil proceeding between the Clients.

      (c)     When we communicate with you concerning matters of potential conflict or the pros and cons of any particular item, we may rely on communication with fewer than all of you. For this reason and possibly others, joint representation may have the disadvantage of communication that is less complete or effective than if we represented only one person.

      (d)     You should not assume that we will advise each of you of the substance of every communication received by us from any one of you.

If you sign this letter, you waive the potential conflict of interest arising from such joint representation and acknowledge that, if any actual dispute arises between or among the Clients

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 4

concerning the subject of the joint representation, absent further consent from each of you, we may be required to withdraw as counsel to one or more or all of you. If we withdraw, a client who then is required to or does engage independent counsel may incur legal costs (e.g., for new counsel to become familiar with the matter) that would be avoided by separate representation throughout the matter. We will notify you in such an event that we intend either to withdraw completely from the representation of any client in the Litigation or continue as counsel for one or more of the Clients. At present, we would seek to continue to represent The Times to the extent we determine that we could appropriately do so, notwithstanding any adversity between you and the interests of the parties we would so continue to represent. Accordingly, your signature below constitutes your consent to our present and continued future representation of The Times, and Employee agrees not to assert any conflict of interest or seek to disqualify us from representing The Times now or in the future, despite any adversity between the interests of The Times and Employee that may arise. Nonetheless, notwithstanding your consent hereto, depending on the circumstances at the time, we may be required to withdraw or we may be disqualified from representing any of you in the event of a dispute between or among you.

Each of you should feel free to consult independent counsel at any time concerning matters which are the subject of the joint representation, including whether or not to sign this engagement letter by which you will be providing this waiver and consent.

3.    Fees and Charges. Our fees are based on hours charged at scheduled rates. The hourly rates at this time are $365 for me and $475 for my partner, Gary Bostwick. In addition to fees, our statements include our actual costs for fees of governmental agencies and disbursements and/or charges for third parties (collectively "Charges"). Statements are submitted monthly and are due and payable upon receipt.

We have agreed to undertake this engagement without requiring an advance deposit (a "Fee Deposit") for legal fees and/or Charges. However, we reserve the right in the future (i) to require that you deposit with us a Fee Deposit in such amount as we shall then request and (ii) from time to time thereafter to require that the amount of the Fee Deposit be increased. Unless we otherwise expressly agree in writing, any estimates we may provide from time to time and any Fee Deposits or advances against costs we may require are not a limitation on our fees and other charges.

We have agreed to undertake this engagement on the condition that The Times will be responsible for payment of our fees and Charges for the defense of Clients in accordance with the provisions of this letter. As to the Employee and Tribune, payment of fees by one other than the client may afford an economic benefit, but it also may have disadvantages. For example, although attorneys are bound not to permit any interference with independence of the attorney's professional judgment or with the attorney-client relationship as a result of payment of the client's fees by another, The Times may have desires or demands that could influence the

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 5

Employee in making choices among alternative courses of action or that may inhibit the Employee in asserting rights or resisting obligations. Also, if The Times ceases to pay our fees and other Charges, we will have the right to withdraw from representing the Employee. The withdrawal could result in Employee incurring additional costs to engage and bring new counsel "up to speed" and could also result in delay or other prejudice. By signing this letter where indicated below, Employee acknowledges these disclosures and consent to the payment by The Times of the legal fees and other charges incurred on Employee's behalf. Employee also agrees that we may withdraw if The Times fails to pay Employee's legal fees and other Charges, unless Employee agrees to pay them and does so in a timely fashion.

    4.    <u>Termination of Representation</u>. Any Client has the right to terminate our representation of that Client at any time. Subject to our ethical obligation to give you reasonable notice to arrange for alternate representation, we may terminate our representation of you at any time. Unless we agree to render other legal services to the Clients, our representation will terminate upon completion of the Litigation.

    5.    <u>Clients' Document Retention</u>. Clients agree that they will be responsible for providing us with all records pertinent to this matter, including information stored electronically such as e-mails and other computerized records. If Clients have in effect document retention policies that could result in the destruction, deletion or alteration of information that could potentially be discoverable in this matter, it is very important that Clients institute steps to stop all such destruction, deletion or alteration and to preserve all such information in the form that it now exists. In particular, you should notify your officers and employees that may have potentially discoverable emails or other paper or electronic files not to delete or destroy them, but to allow for the preservation of these records. Please remember that information that may be potentially discoverable includes not only information that is relevant to the underlying dispute but also information that could lead to the discovery of relevant information. You should err on the side of caution, and make sure that potentially discoverable information is no longer subject to destruction under your standard document retention policies until you speak with us further on this important subject.

    6.    <u>Insurance Coverage</u>. It is possible that there may be insurance coverage for the claims made against you in this matter, and if so, it is possible prompt notification must be given to any carriers involved. If you would like us to explore possible coverage, please immediately mail us policies and documents you may have concerning coverage, and discuss the matter with us.

    7.    <u>Our Document Retention</u>. It is our policy and practice to destroy our files five (5) years after the file is first closed unless the client requests a shorter or longer retention period in writing. Files are generally closed at the conclusion of the Litigation.

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 6

8.    <u>No Warranties</u>.  As you know, litigation is by its nature unpredictable.  It is not possible to warrant a successful result or represent that a particular result can be obtained within a given time framework.  We appreciate your awareness of and patience with the pitfalls of litigation.  You acknowledge that we have not made any representations, promises, warranties or guarantees to you, express or implied, regarding the outcome of your matter.

9.    <u>Arbitration</u>.  Any dispute between us concerning our fees or charges shall, if you so elect, be submitted to arbitration under rules of the California State Bar, and shall be binding if (i) each of us so agrees after any such dispute arises, or (ii) such arbitration becomes binding under such rules.  Any dispute between us concerning our fees or charges not so submitted to binding arbitration under the rules of the California State Bar, or that remains unresolved after non-binding arbitration under such rules, and any other dispute between or among you and us or any of our attorneys and agents, including but not limited to claims of malpractice, errors or omissions, or any other claim of any kind regardless of the facts or the legal theories, shall be finally settled by mandatory binding arbitration in Los Angeles, California, conducted in accordance with California Code of Civil Procedure §§ 1282 *et seq.*, including, but not limited to, section 1283.05, with each party to bear its own costs and attorneys' fees and disbursements.  Such arbitration shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the parties choosing the third arbitrator.  Judgment on a binding arbitration award may be entered in any court of competent jurisdiction.  Arbitration has the potential to provide a more timely, more economic and more confidential resolution of any dispute between us.  There will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury.  *We mutually acknowledge that, by this agreement to arbitrate, each of us irrevocably waives our rights to court or jury trial.  You have the right to consult separate legal counsel at any time as to any matter, including whether to enter into this engagement letter and consent to the foregoing agreement to arbitrate.*

10.    <u>Tribune Company Retention Policy</u>.  We have read the attached Tribune Company Retention Policy and accept its terms.  The attached Tribune Company Retention Policy is incorporated into this letter as if set forth in full.

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 7

> If the foregoing is an acceptable basis for our engagement as counsel, I would appreciate it if you would sign the enclosed copy of this letter and return it to us.  If you have any questions or concerns, please call.

> Once again, thank you for selecting us to represent you in this matter.

Sincerely,

Jean-Paul Jassy
BOSTWICK & JASSY LLP

Attachment:   Tribune Company Retention Policy

> The undersigned have read and understood this engagement letter and agree that it correctly sets forth the terms upon which Bostwick & Jassy LLP has been engaged by the undersigned in connection with the representation described herein and have waived any conflict of interest on the part of this Firm arising out of the representation described above.

Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC


Jeff Short
Tribune Company


Carey Moran

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 7

     If the foregoing is an acceptable basis for our engagement as counsel, I would appreciate it if you would sign the enclosed copy of this letter and return it to us. If you have any questions or concerns, please call.

     Once again, thank you for selecting us to represent you in this matter.

     Sincerely,

     Jean-Paul Jassy
     BOSTWICK & JASSY LLP

Attachment:  Tribune Company Retention Policy

     The undersigned have read and understood this engagement letter and agree that it correctly sets forth the terms upon which Bostwick & Jassy LLP has been engaged by the undersigned in connection with the representation described herein and have waived any conflict of interest on the part of this Firm arising out of the representation described above.

_____
Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC

_____
~~Jeff Short~~ Mark Stopus2ck
Tribune Company

_____
Carey Moran

Ms. Xanders, Mr. Short and Ms. Moran
December 2, 2008
Page 7

    If the foregoing is an acceptable basis for our engagement as counsel, I would appreciate it if you would sign the enclosed copy of this letter and return it to us. If you have any questions or concerns, please call.

    Once again, thank you for selecting us to represent you in this matter.

Sincerely,

Jean-Paul Jassy
BOSTWICK & JASSY LLP

Attachment:   Tribune Company Retention Policy

    The undersigned have read and understood this engagement letter and agree that it correctly sets forth the terms upon which Bostwick & Jassy LLP has been engaged by the undersigned in connection with the representation described herein and have waived any conflict of interest on the part of this Firm arising out of the representation described above.

_____
Julie Xanders, Esq.
Senior Vice President, Legal
Los Angeles Times Communications LLC

_____
Jeff Short
Tribune Company

Carey Moran

## TRIBUNE COMPANY RETENTION POLICY

Tribune Company and counsel must work together to obtain efficiently delivered quality legal services.  To that end, by accepting an assignment your firm agrees to the following Tribune Retention Policy:

I.    Retention of Counsel

Tribune's Law Department is responsible for strategic and substantive decisions regarding the course of each matter, as well the selection of the appropriate outside attorney to handle each aspect of each matter. To improve our ability to make such judgments and  to coordinate the work of in-house and outside counsel, an in-house attorney is assigned as the Managing Attorney for each matter.  It is your responsibility to keep the Managing Attorney regularly apprised of all developments in each matter. The Managing Attorney should be copied on all communications and correspondence relating to the matter. Tribune expects you to provide the Managing Attorney ample time to review and suggest revisions in substantive pleadings, agreements or other case-related documents. Periodic litigation updates, generally monthly, for all pending litigation matters must also be provided to the Managing Attorney.

II.    Staffing

The number of attorneys and legal assistants assigned to a matter must be approved by the Managing Attorney before work on the matter may begin.  Generally, Tribune expects each matter to be staffed by one partner, and if necessary, one associate.

Tribune also expects that assigned attorneys will remain on the matter to conclusion unless authorized by Tribune.

Tribune will be provided  the hourly billing rates for individual attorneys and legal assistants assigned to Tribune matters.  Should the firm elect to change its rates during the pendency of any Tribune matter, the firm must notify Tribune in writing at least 30 days before the date the new rate is to take effect.

Assigned staff must perform tasks appropriate to their experience and billing rates. Generally, Tribune will not pay for:

- Routine tasks performed by attorneys, such as summarizing depositions or organizing trial exhibits, that are more appropriately assigned to a legal assistant.

- Staffing inefficiencies caused by the unavailability of personnel including expenses related to familiarizing a replacement attorney or legal assistant with an existing matter.

- More than one attendee at any deposition, hearing or other proceeding unless preapproved by Tribune Managing Attorney.

- Non-attorney/non-paralegal staff, such as library staff or computer technicians.

- Secretarial time, or for services of word processors, proofreaders, records clerks, facsimile operators or similar firm employees. In extraordinary circumstances, the Managing Attorney may approve the reimbursement of overtime payments to such employees. When overtime payments are approved, you agree to make every effort to keep such overtime charges to a minimum.

- Summer associate or intern time.

- Administrative activities, such as preparing invoices, annual auditor responses or discussing billing, budgets or other related reports.

- Any other charges that are part of the normal overhead of operating an office, including office supplies, staff meals and transportation. Charges for docket clerks or court runs by firm personnel are also considered normal overhead.

- Travel time should not be billed unless the attorney actively is engaged in and working on Tribune matters while traveling and such travel has been approved in advance.

III.    Budget

Unless otherwise directed by the Managing Attorney, a budget is to be prepared for each matter and submitted to the Managing Attorney for approval before work on the matter begins. The Managing Attorney may request a separate budget for any segment of any matter. If the matter assigned is a litigation matter, the responsible attorney should provide an itemized list of tasks and their related costs at the outset of the representation. The list should include a discovery plan which details the costs for depositions, motions, document production, expert discovery and other trial preparation. Tribune recognizes that budgets for matters may change with changed circumstances. However, any changes in the projected budget should be discussed as soon as possible with the Managing Attorney. Where legal bills are in excess of 10% over the budget provided by the responsible attorney, Tribune reserves the right not to pay the excess fees unless the Managing Attorney was notified in writing of the anticipated increases over the budgeted amount and the Managing Attorney agreed to the revised budget.

IV.    Billing Procedures

Unless otherwise agreed in writing, bills and budget statements should be submitted monthly, and each bill shall cover work performed in the preceding calendar month.

Tribune expects to receive monthly bills by the fifteenth (15th) day of the month. Tribune retains the right to obtain additional information regarding any bill.

V.   Billing Format

Billing statements should provide the Managing Attorney with a clear understanding of the work performed on Tribune's behalf, by whom the work was performed, and the cost and duration of each work segment. Where work is performed on more than one matter in any month, each matter should be separately detailed in the monthly bill.

Each bill shall contain the following information:

- the name of the Tribune entity (e.g., Tribune Media Services, Los Angeles Times, Newsday, Sun-Sentinel, Daily Press, Greenwich Time, The Baltimore Sun, The Orlando Sentinel, The Hartford Courant, The Morning Call, The Advocate) for which the services were performed;

- a file number or brief identifier of the matter to which the services relate;

- the billing period involved;

- a detailed description of each task performed in single-activity time entries, including the date it was performed, who performed it, their rate, the time expended and the charges for each task;

- a summary showing the rate, total hours/charges, and rank (e.g., partner, associate, legal assistant) of each staff member billing;

- a description of any reimbursable expenses or disbursements made on behalf of Tribune during the statement period;

- billing in .10 hour increments;

- a detailed description of all work including, but not limited to:

    -- the name and affiliation of any other person with whom the attorney or legal assistant meets, confers or otherwise interacts with and the subject matter of any such meeting, telephone call or other action;

    -- the identity of any deponents and the subject of the deposition;

    -- the specific subject matter of any research performed;

    -- the specific motion, brief or agreement worked on and the precise nature of the work performed; and

-- the identity of any materials/documents reviewed.

Generic descriptions, such as "drafted brief," "worked on agreement," "telephone call," "conference," "reviewed documents," "research," or "work on project or case" are not acceptable for billing purposes.

Each monthly bill shall also be accompanied by a statement that includes the budget for the matter. The bill should identify fees and expenses to date as compared to the budget. The partner responsible for each matter should sign all billing statements, representing to Tribune that he or she has reviewed the statements and that they are in accord with all provisions and instructions of this policy.

VI.    Expenses

Tribune will pay actual costs for expenses.  Copies of actual invoices for any single expense over $1,000 must be included with the bill.  All bills should contain a summary of charges for each expense totaled by category.

Tribune will only reimburse:

- reasonable expenses for computerized legal research such as Lexis and Westlaw, not to exceed actual cost;

- local toll and long-distance calls on an actual-cost basis;

- photocopying at actual cost, not to exceed .10 per page;

- reasonable travel expenses including coach or economy airfares, car rental and meals;

- reasonable hotel expenses not to exceed $175 per night unless travel is to a major urban center where standard hotel rates regularly exceed that amount;

- actual charges billed for messenger deliveries, including overnight and express, that are incurred in the interest of dispatch and reliability.

Tribune will not pay for:

- local transportation charges;

- cellular telephone charges;

- travel time for attorneys or legal assistants unless they are performing work for Tribune and the Managing Attorney has approved the compensation in advance;

- out-of-town entertainment expenses;

- in-town or in-office working meals.

Fees and expenses relating to the use of independent contractors such as expert witnesses, investigators, court reporters or independent paralegals must be approved in advance by the Managing Attorney. Extraordinary expenses, such as computerization of litigation documents, must also be approved in advance by the Managing Attorney. All such fees and expenses should be billed on an actual-cost basis and should be billed in a format identical or substantially similar to the main billing statement.

## VII.    Conflicts of Interest

Tribune is concerned about potential conflicts of interest. Your attorneys should review proposed assignments for any conflicts of interest regarding any Tribune entity before accepting any matter, and should promptly notify the Managing Attorney of any actual or potential conflicts. Tribune also expects you to establish a conflict identification system that will allow you to notify our senior counsel in advance if your firm is considering representing a client in any of the following types of matters:

- Opposing a public records request under any Freedom of Information Act or similar statute;

- Seeking to deny the public or any journalist or media organization (not limited to Tribune or any of its subsidiaries) access to any meeting, proceeding or information, other than routine motions for discovery protective orders that do not involve the sealing of judicial records in court files;

- Subpoenaing any journalist or media organization for testimony, documents or information;

- Representing a client pursuing a defamation or invasion of privacy claim against any journalist or media organization;

- Representing any client in any other action against any media organization.

Tribune acknowledges that the above matters may not necessarily present a conflict under traditional canons of ethics. Because of the special history of Tribune Company and our commitment to the protection of First Amendment freedoms, however, we believe that advance notice and open communication about these types of legal matters will be in the best interest of maintaining a long-term and rewarding relationship between us.

## VIII.    General

All Tribune matters must be treated confidentially in all respects. Tribune reserves the right to require additional information regarding your invoices and/or that you reorganize

the information currently requested.  By way of example, Tribune may require that you supply your invoices electronically.  By representing Tribune, you agree to comply with such requests, and to do so at your own expense.

Please review this policy and let us know if you have any questions or comments regarding your representation of Tribune. We look forward to working with you.