IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

DISTRICT OF COLUMBIA    )
                                           :    ss.:
CITY OF WASHINGTON    )

John I. Stewart, Jr., being duly sworn, deposes and says:

1. I am a partner of Crowell & Moring LLP (the "Firm"), which maintains offices at, among other places, 1001 Pennsylvania Avenue, NW, Washington, D.C. 20004 and 800 Wilshire Boulevard, Suite 500, Los Angeles, CA 90017.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2. This Affidavit is submitted in connection with an Order of the United States Bankruptcy Court for the District of Delaware, entered on or about January 15, 2009, authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary course of business during the pendency of these chapter 11 cases.

3. Prior to joining the Firm, John Vandevelde, a partner of the Firm, represented certain of the Debtors, their reporters and other employees in various criminal matters. The Debtors have asked the Firm to continue such representation in the future as and when needed.

4. In addition, the Firm has represented and advised the Debtors as to certain copyright royalty matters arising from retransmission proceedings and related issues with respect to certain aspects of the Debtors' business operations (the "Copyright Royalty Matters"). The Debtors have requested, and the Firm has agreed, to continue to provide such services to the Debtors on a postpetition basis during the course of these chapter 11 cases.

5. The Copyright Royalty Matters involve the collection and distribution of royalties paid in to the U.S. Treasury by cable and satellite companies under statutory licenses that were enacted to avoid the transactions costs that would otherwise be necessary to negotiate licenses between hundreds of copyright owners of television programs, on the one hand, and thousands of cable operators and satellite carriers on the other. I and my Firm have represented the entire U.S. commercial television broadcast industry in the Copyright Royalty Matters since 1980, shortly after the first of the statutory licenses was enacted. In those representations, we seek to maximize the collective share awarded to all U.S. television stations from the annual royalty funds, through litigation or negotiation with the representatives of other industries such

as sports and motion pictures, who similarly represent all of the copyright holders in their respective industries. All of the broadcasters we represent agree in advance on the methodology by which they will receive their individual shares of the industry award, and thus do not pursue conflicting individual claims. By agreement of all the broadcasters, the costs of collecting and distributing the royalties, including the Firm's legal fees and expenses, are deducted from the royalty funds before the net remainder is distributed to the broadcasters. The distribution of royalties to broadcasters on this collective basis is efficient and productive, and retaining separate counsel to pursue an individual broadcaster's royalty claims apart from the group would be costly. Since 1980, there has been only a single, unsuccessful, instance of a broadcaster pursuing individual royalty claims through separate counsel.

      6.     The Firm's current customary rates, subject to change from time to time are as follows: Partners: $480 - $895; Counsel: $435 - $645; and Associates: $275 - $535. In the normal course of its business, the Firm revises its billing rates from time to time, usually at the beginning of each calendar year, and requests that, effective January 1st of each year, the aforementioned rates be revised to the regular hourly rates which will be in effect at that time.

      7.     In the ordinary course of its business, the Firm maintains a database for purposes of performing "conflicts checks." The Firm's database contains information regarding the Company's present and past representations. Pursuant to Federal Rule of Bankruptcy Procedure 2014(a), I obtained a list of the entities identified in Rule 2014(a) from counsel to the Debtors for purposes of searching the aforementioned database and determining the connection(s) which the Firm has with such entities. The Firm's search of the database is ongoing and, to date, has identified the following connections:

    a.    In addition to representing certain of the Debtors in connection with the Copyright Royalty Matters regarding satellite royalties, the Firm represents the National

        Association of Broadcasters (of which certain of the Debtors are members) in connection with the Copyright Royalty Matters regarding cable royalties.

b.     Prior to joining the Firm, John Vandevelde, a partner of the Firm, represented certain of the Debtors, their reporters and other employees in various criminal matters. The Debtors have asked the Firm to continue such representation in the future as and when needed.

c.     NBC Universal Domestic Television is listed as one of the thirty largest unsecured creditors (on a consolidated basis) of the Debtors. The Firm represents and advises NBC in the Copyright Royalty Matters. The Firm also represents NBC Universal Inc. and certain of its affiliates, including Universal City Studios Productions LLLP (collectively, "NBC"), as creditors in the Debtors' bankruptcy cases. The Debtors and NBC have waived any conflicts and the Firm has established an ethics wall by circulating a notice to all Firm attorneys and employees regarding the ethics wall. The ethics wall prohibits the Firm's attorneys representing the Debtors and NBC in the Copyright Royalty Matters from disclosing, exchanging, or providing access to confidential information concerning the Copyright Royalty Matters by any means to the Firm's attorneys representing NBC in the Debtors' bankruptcy cases. Similarly, the ethics wall prohibits the Firm's attorneys representing NBC in the Debtors' bankruptcy cases from disclosing, exchanging, or providing access to confidential information concerning the Firm's representation of NBC in the Debtors' bankruptcy cases by any means to the Firm's attorneys representing the Debtors and NBC in the Copyright Royalty Matters. In addition, the ethics wall prohibits each such group of the Firm's attorneys from accessing confidential information by any means from the other group of the Firm's attorneys.

d.     Attached as <u>Exhibit 1</u> is a list of the Firm's active and former clients that have been identified from the list of the entities identified in Rule 2014(a) that the Firm received from the Debtors' counsel.

8.     Neither I nor any partner of, or professional employed by, the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm, as permitted by 11 U.S.C. §504(b).

9.     I understand that any compensation paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

10. Neither I nor any partner of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed.

11. The Debtors owe the Firm $0.00 for prepetition services. The Firm is not waiving any and all claims that it has against the Debtors, including the amount referenced in the prior sentence.

12. The Firm currently holds a retainer from the Debtors in the approximate amount of $0.00. In connection with the Copyright Royalty Matters regarding satellite royalties, the Firm collects, holds, and disburses on a rolling basis copyright royalties for a collective ad hoc entity known as the "Broadcaster Claimants Group" (of which certain of the Debtors are members). As mentioned above, the Firm's fees and expenses incurred in connection with the Copyright Royalty Matters are paid out of the gross royalties received from the U.S. Copyright Office (a) by the National Association of Broadcasters (of which certain of the Debtors are members) in cable matters and (b) by the Firm on behalf of the Broadcaster Claimants Group in satellite matters.

13. The Firm is party to privileged and confidential agreements with the Debtors relating to the Copyright Royalty Matters regarding satellite royalties. Due to the privileged and confidential nature of the agreements, as well as the ongoing and litigious nature of the Copyright Royalty Matters, copies of such agreements are not submitted with this Affidavit. The Firm does not have any agreements with the Debtors relating to any future criminal matters.

14. The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 13, 2009

_____
John I. Stewart, Jr., Affiant

Sworn to and subscribed before me
this 13th day of Feb 2009

_____
Notary Public

> CHERYL L. BEST
> NOTARY PUBLIC
> District of Columbia
> My Commission Expires November 14, 2010

**Exhibit 1 – Stewart Affidavit**

1.      The Firm currently represents the following entities who were identified on the Debtors' Rule 2014(a), or who may be affiliates of entities identified on the Rule 2014(a) list, in matters wholly unrelated to these chapter 11 cases:

| | |
|---|---|
| ACE USA | Merrill Lynch & Co., Inc. |
| Bank of America, N.A. | Metropolitan Life Insurance Company |
| Bank of America Securities LLC | Microsoft Corp. |
| Citigroup Inc. | MSD Capital LP |
| Certain employees of Edelman Inc. | New York Life Insurance Co. |
| Elliott Management Corp. | Procter & Gamble |
| Farallon Capital Management LLC | Silver Point Capital LP |
| Gannett Co. Inc. | Sony Corp. |
| GEICO | Sony Pictures Entertainment Inc. |
| General Electric Capital Corp. | Sprint/Nextel |
| Goldman Sachs & Co. | Travelers Companies Inc. |
| Hearst-Argyle Television, Inc. | Wachovia Bank |
| Johnson & Johnson | Wachovia Corp. |
| Lehman Brothers, Inc. | Wilmington Trust Co. |
| Littlejohn & Co. | Zurich North America Insurance Co. |

2.      The Firm previously represented the following entities who were identified on the Debtors' Rule 2014(a), or who may be affiliates of entities identified on the Rule 2014(a) list, in matters wholly unrelated to these chapter 11 cases:

| | |
|---|---|
| Aegon USA Investment Management | John Hancock Mutual Life Insurance |
| American Express | Lazard Freres & Co. |
| American International Group | McDonald's |
| Anheuser Busch | Merrill Lynch, Pierce, Fenner & |
| Barclays Bank Plc | Smith, Inc. |
| Bowater North America Corp. | Navigant Consulting |
| Carnival Cruise Lines, Inc. | Neuberger & Berman |
| Citadel Investment Group | New York Life Investment |
| Davis Polk & Wardell | Management LLC |
| Dell Computer Corp. (n/k/a Dell Inc.) | Pfizer Inc. |
| Deloitte & Touche LLP | Reckitt Benckiser |
| Federal Insurance Co. | Societe General |
| Ford | Strategic Value Partners, LLC |
| Franklin Advisers Inc. | Time Warner, Inc. |
| Franklin Mutual Advisers LLC | Verizon Wireless |
| General Mills, Inc. | Viacom Inc. |
| General Motors | Witkoff Group LLC |