# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: February 20, 2009 at 10:00 a.m.<br>Related to Docket Nos. 292 and 293 |

## JOINT OBJECTION OF DEBTORS TOWER DISTRIBUTION COMPANY AND TRIBUNE BROADCASTING COMPANY TO (I) MOTION OF INTELSAT CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF OF PREPETITION AMOUNTS AND (II) MOTION OF INTELSAT CORPORATION FOR ADEQUATE PROTECTION AND ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Tower Distribution Company and Tribune Broadcasting Company, debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the "Debtors"), by and through their undersigned counsel, hereby submit this joint objection (the "Objection") to the Motions of Intelsat Corporation ("Intelsat") for (i) entry of an order granting relief from the automatic stay in order to effectuate a setoff of certain prepetition amounts owed to Intelsat by the Debtors (the "Stay Relief Motion"); and (ii) entry of an order for the allowance and payment of an administrative claim in the amount of $457,419.35 for postpetition amounts due under Intelsat's contracts with the Debtors and compelling the Debtors to provide adequate protection and assurance of future performance in the form of an additional deposit in the amount of $560,000 (the "Adequate Protection Motion", and together with the Stay Relief Motion, the "Motions"). In support of this Objection, the Debtors respectfully state as follows:

## BACKGROUND TO THE MOTIONS

1. Intelsat is a provider of communications satellite transponder capacity services to the Debtors. The satellite transponders are dedicated circuits through which the Debtors transmit communications broadcast signals, at specified bandwidths, from their television stations to their customers. Intelsat provides these transponder capacity services to the Debtors on a 24 hour/seven days per week basis, pursuant to two contracts: (i) a Full-Time Transponder Capacity Agreement dated December 12, 2002 between Intelsat and Tower Distribution Company (the "Tower Agreement", attached to the Motions as Exhibit A); and (ii) a Full-Time Transponder Capacity Agreement dated June 30, 2006 between Intelsat and Tribune Broadcasting Company (the "TBC Agreement", attached to the Motions as Exhibit B).

2. Each of the Tower and TBC Agreements, at section 3.1, specify the monthly fees and deposits due for the transponder capacity services during the Capacity Terms of the respective Agreements.[2] The Tower Agreement provides that Tower Distribution Company shall

---

[2] Each of the Tower and TBC Agreements were executed with an effective date prior to the launch of the satellites on which the Debtors were to be provided with transponder capacity. The "Capacity Term" commences from the

2

pay a monthly fee of $180,000 and a deposit equal to one month's fee, "which shall be held by [Intelsat] and applied towards the Monthly Fee due for the last month of the Capacity Term." (Tower Agreement § 3.1; Appendix A.) The TBC Agreement provides that Tribune Broadcasting Company shall pay a monthly fee of $100,000 and that its deposit in the amount of $57,200 paid on account of the preceding contract between the parties would be applied to the TBC Agreement and "shall be held by [Intelsat] and applied towards the Monthly Fee due for the last month of the Capacity Term."

## THE STAY RELIEF MOTION

3. The Stay Relief Motion seeks relief from the automatic stay to permit Intelsat to effectuate a setoff of prepetition payment defaults in the aggregate amount of $163,225.82 [3] against the prepetition deposits held by Intelsat pursuant to each of the Debtors' Agreements. The Debtors do not dispute that Intelsat has a contractual right to utilize the deposit in accordance with the terms of each Agreement. Each Agreement is unambiguous concerning the circumstances in which Intelsat may apply its deposit. As those circumstances are not met under the instant facts, Intelsat is not entitled to apply the deposits to prepetition amounts owed to it at this time. Such a result does not prejudice Intelsat, as it maintains possession of the deposits and is adequately protected by this security in respect of the prepetition amounts owed, i.e., the Debtors are not using or otherwise dissipating the deposits.

4. Even if, however, this Court were to determine that Intelsat is entitled now to exercise setoff rights, those rights would be limited by applicable legal requirements, including

---

time the satellites are placed into commercial orbit and runs, as to the Tower Agreement, for a ten-year term, and as to the TBC Agreement, for a 7 year term. (Tower Agreement § 2.1; TBC Agreement § 2.1.).

[3] The Debtors' books and records show that $163,225.87 in the aggregate remains unpaid on these contracts for prepetition services.

the requirement of mutuality. The Stay Relief Motion appears to "lump" both deposits and the claims against both Debtors together for setoff purposes, which is clearly impermissible.

**I.     Intelsat is Not Entitled to Effectuate Setoff to Remedy the Debtors' Payment Defaults Under the Terms of the Agreements**

5.     While the remedy of setoff is inherently equitable in nature and is not dependent on any express contractual right, CDI Trust v. U.S. Electronics Inc. (In re Communication Dynamics, Inc.), 382 B.R. 219, 226 (Bankr. D. Del. 2008), in this case, the parties have specified by contract that the deposits under each of the Agreements are to be held by Intelsat and applied towards the monthly fees for the last month of the Capacity Terms, as defined in the Agreements. The Tower and TBC Agreements each set forth remedies available to Intelsat for late payments and such remedies do not include application of the deposits. (See Tower Agreement §§ 3.4, 7.4(A)(I); TBC Agreement §§ 3.3, 7.4(A)(I).) Rather, the only provisions directly addressing Intelsat's right in respect of the deposits provide that the deposits may be applied to the end of the Capacity Terms. Intelsat may not use section 553 to give it greater rights than it otherwise has under the Agreements. Compare CDI Trust v. U.S. Electronics Inc. (In re Communication Dynamics, Inc.), 382 B.R. 219, 226 (Bankr. D. Del. 2008) (permitting setoff where the contract expressly reserved all legal and equitable remedies for breach of the parties' agreement) with In re McLean Indus., Inc., 90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) (While "setoff does not depend on the parties having contractually agreed to the right, it does not follow that such a right survives when its exercise is inconsistent with the express agreement between the parties. It is well settled ... that setoff may be limited or precluded by agreement or mode of dealing.") (collecting authorities). Accordingly, the Debtors respectfully submit that Intelsat is not currently entitled to setoff the prepetition amounts due under the Agreements.

4

## II. Even if Intelsat is Entitled to Effectuate a Setoff, it May Only Setoff Amounts Owed by a Debtor Against Deposits Paid by Such Debtor

6. Section 553 permits setoff only of "mutual debts". The basic requirement of mutuality is that the "same parties must each owe the other something in the same capacity." 5 Collier on Bankruptcy ¶ 553.01[1] (15th Ed. Rev.). Each of the Debtors is a distinct legal entity having entered into distinct transponder capacity agreements with Intelsat.

7. Intelsat seeks to setoff the full prepetition amounts due under the Tower and TBC Agreements against the deposits that it holds. (Stay Relief Mot. ¶ 2.) However, the Stay Relief Motion fails to distinguish the Debtors, the prepetition claims owed by each, and the deposits held pursuant to each of the Agreements. Accordingly, if the Court determines that Intelsat has a valid claim for setoff under section 553, such relief should be limited to allow Intelsat only to setoff amounts owed by Tower Distribution Company against the deposit held pursuant to the Tower Agreement and amounts by Tribune Broadcasting Company against the deposit held pursuant to the TBC Agreement.[4]

## THE ADEQUATE PROTECTION MOTION

8. The Adequate Protection Motion seeks to require the Debtors both to pay now as an administrative expense priority the postpetition amounts due under each of the Agreements and the payment of an additional substantial deposit in the amount of $560,000 for the use of transponder capacity on its satellites pending the Debtors' decision to assume or reject the Agreements. The Debtors object to the relief sought for the following reasons. Although styled as an "adequate protection" motion, Intelsat describes the relief that it seeks alternatively as

---

[4] The records of Tower Distribution Company show a prepetition balance of $40,645.17 and a deposit of $180,000. If Intelsat is permitted to setoff this prepetition claim, then the entire claim will be satisfied and there will be a remaining deposit balance of $139,354.83 on account of the Tower Agreement. The records of Tribune Broadcasting Company show a prepetition balance of $122,580.70 and a deposit of $57,200. If Intelsat is permitted to setoff this prepetition claim, then $57,200 of the claim will be satisfied, the deposit will be consumed, and there will be a remaining prepetition claim of $65,380.70.

5

"adequate assurance of future performance of the Debtors' obligations to Intelsat" (Adequate Protection Mot. ¶ 2), and "adequate protection in the form of full payments under the Transponder Agreements" (Adequate Protection Mot. ¶ 21).[5] Regardless, however, of the nomenclature, Intelsat cannot carry its burden of demonstrating any entitlement to the additional deposit it seeks as security for the Debtors' postpetition performance.

### I. The Debtors are Current on their Postpetition Obligations and Intelsat's Section 503(b)(1)(A) Claim is Now Moot

9. As a threshold matter, the Debtors dispute the amount ($457,419.35) Intelsat claims was due and owing under the Agreements as of the date these Motions were filed. The Debtors' books and records show that as of the date these Motions were filed, Tower Distribution Company was current on its postpetition payments to Intelsat (having made a payment of $139,354.83 on January 5, 2009 for the pro-rated month of December and a payment of $180,000.00 on January 14, 2009 for the month of January) and that Tribune Broadcasting Company owed Intelsat $177,419.30 (representing $77,419.30 for the prorated month of December and $100,000 for the month of January). Accordingly, the Debtors believe that the Motions overstate the amounts owed on account of postpetition services under the Agreements by $280,000 as of the date the Motions were filed.

10. Tribune Broadcasting Company has subsequently brought its account with Intelsat current, having made a payment of $77,419.30 on February 6 and a payment of $100,000 on February 8. The brief delay in the remittance of these payments was due in large part to transitioning the Debtors' accounting and bookkeeping functions from pre- to post-petition and all of the additional administrative burdens attendant to transitioning from pre- to post-petition

---

[5] In the "Summary" section, Intelsat states: "Given the Debtors' post-petition defaults, the Debtors should only be allowed to continue to use Intelsat's satellites if they can provide Intelsat with assurance of adequate protection that they will make payment when due in accordance with the terms of their agreement with Intelsat." Id.

6

operations. The Debtors intend to perform their postpetition payment obligations going forward, pending a decision on contract assumption or rejection. As the Debtors are current on all postpetition payment obligations, they respectfully submit that Intelsat's request for administrative expense priority payments pursuant to section 503(b)(1)(A), is now moot.

## II. Intelsat is Not Entitled to Additional "Adequate Protection" or "Adequate Assurance"

11. The Debtors oppose Intelsat's request for a substantial additional deposit (twice the size of the prepetition deposits required under the Agreements) as "adequate protection" on the following grounds. Intelsat's entire argument is based on an erroneous premise-- that it has suffered a failure of adequate protection by virtue of the Debtors' alleged failure to make the postpetition payments due under the Agreements. (Adequate Protection Mot. ¶ 19). In fact, however, all such payments have been made and were always intended to be made. Accordingly, the predicate for the Adequate Protection Motion has been rendered moot.

12. Further, whether the deposit request is cast as adequate assurance or adequate protection, under section 363(e), of future payments under a lease, Intelsat does not and cannot demonstrate entitlement to the requested relief.[6] As noted, Intelsat is being paid currently. Moreover, there has been no allegation that the Debtors lack sufficient liquidity to meet their postpetition operating needs; indeed they have ample liquidity, as evidenced by a $300 million debtor in possession financing facility. Such voluntary payments and future access to liquidity is itself adequate assurance of performance. See In re Grant Broadcasting of Philadelphia, Inc., 71

---

[6] As Intelsat is not a secured creditor seeking adequate protection of a prepetition security interest in collateral, most of cases cited in the Motion are inapposite. See, e.g., In re Metromedia Fiber Network, Inc., 290 B.R. 487, 491 (Bankr. S.D.N.Y 2003) ("The relief which must be provided is "adequate protection" for the entity's security interest in the property."); In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986) (Case concerns objections of institutional lender creditors to debtor's proposed transaction as a sub rosa plan of reorganization, not a request for adequate protection under § 363(e)); Perez v. Peake, 373 B.R. 468 (S.D. Tex. 2007) (Case concerns "adequate protection" for mortgage lenders under §§ 1326(a)(1)(B) and (C)); In re DeSardi, 340 B.R. 790 (Bankr. S.D. Tex. 2006) (Case concerns "adequate protection" for holders of liens on vehicles under § 1325(a) and local rules).

7

B.R. 891, 902 (Bankr. D. Penn. 1987) ("We believe that the Debtors' voluntary remittance of payments for whatever [television] programming they use does constitute adequate protection of the Programmer's rights."). Since, as one of the cases cited by Intelsat observes, adequate protection "is provided where the debtor makes ongoing current payments," Intelsat is already adequately protected. See In re P.J. Clarke's Restaurant Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001). No further deposit is required or warranted under applicable authority.[7]

## CONCLUSION

13. For the foregoing reasons, the Debtors respectfully request that the Court deny Intelsat's Motions.

---

[7] Finally, Intelsat asserts that the $560,000 additional deposit is justified by analogy to an adequate assurance deposit allowed to utilities. (Adequate Protection Mot. ¶ 19.) This analogy fails, since Intelsat is not a utility as defined under section 366 of the Bankruptcy Code, nor has it so asserted.

Dated: Wilmington, Delaware
February 13, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

PROPOSED ATTORNEYS FOR
DEBTORS AND DEBTORS IN
POSSESSION