UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| TRIBUNE COMPANY, *et al.*,[1] | : |  |
|  | : | Case Number 08-13141 (KJC) |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

Hearing Date:  February 20, 2009 at 10:00 A.M.
Objection Deadline:  February 16, 2009 at 5:00 P.M.

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§ 327(a), 328(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE AND REQUEST TO CONTINUE THE HEARING ON THE APPLICATION PENDING COMPLETION OF DISCOVERY (DOCKET ENTRY # 147)**

---

[1]

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); new River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxnet Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1

In support of her objection to the application for an order authorizing the Debtors to employ

and retain Lazard Frères & Co. LLC ("Lazard") as investment banker and financial advisor pursuant

to 11 U.S.C. §§ 327(a), 328(a) and 1107, *nunc pro tunc* to the Petition Date (the "Application") and

her request to continue the hearing on the Application pending completion of discovery, Roberta A.

DeAngelis, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel,

avers:

## PRELIMINARY STATEMENT

Lazard failed to disclose its recent strategic advisory engagement by the Sun-Times Media

Group, Inc. (the "Chicago Sun-Times").  In February, 2008, Lazard was engaged by the Strategic

Alternatives Review Committee of the Chicago Sun-Times' Board of Directors to assist the company

in its "evaluation of the Company's strategic alternatives to enhance shareholder value."

Additionally, in November, 2003 Lazard was employed by the Chicago Sun-Times (formerly known

as Hollinger International, Inc.) in connection with its restructuring efforts.  Governing authority

provides that negligent and/or unintentional failures to disclose are grounds for denial of an

employment request.  Lazard's failure to disclose its connections with the Chicago Sun-Times was

knowing and willful.  Second, to the extent that Lazard advised the Chicago Sun-Times post-

petition, Lazard may have a disqualifying conflict of interest and/or not be a "disinterested person"

under 11 U.S.C. §§ 327(a) and 101(14)(C).  The U.S. Trustee intends to conduct discovery to

explore the disclosure, conflict and disinterestedness issues.[2]  Third, the Debtors/Lazard propose

---

[2]

The U.S. Trustee forwarded an informal discovery request to the Debtors and Lazard on January 14, 2009.  The informal discovery request related to Lazard's February, 2008 engagement by the Chicago Sun-Times.  While the U.S. Trustee received certain documents from Lazard in response to that request, the response was not complete.  Further, the U.S. Trustee did not receive a response to that request from the Debtors.

several unreasonable terms/conditions of employment which are discussed in further detail below.

## INTRODUCTION

1.      Under (i) 28 U.S.C. § 1334, (ii) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Application.

2.      Under 28 U.S.C. § 586(a)(3)(I), the U.S. Trustee is charged with monitoring applications filed under 11 U.S.C. § 327 "and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications."  The U.S. Trustee has a corresponding duty to review applications filed under 11 U.S.C. § 1103.  *See, e.g., In re Calabrese*, 173 B.R. 61 (Bankr. D. Conn. 1994).  These duties are part of the U.S. Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Application.

## GROUNDS/BASIS FOR RELIEF

*Lazard Failed to Disclose its Connections with the Chicago Sun-Times in Violation of Federal Rule of Bankruptcy Procedure 2014(a)*

4.      On February 15, 2008, the Chicago Sun-Times announced that the Strategic Alternatives Review Committee of its Board of Directors hired Lazard "to assist the Company in its evaluation of the Company's strategic alternatives to enhance shareholder value." The Chicago Sun-

Times quarterly report filed with the Securities and Exchange Commission on or about November 7, 2008 (approximately one month prior to the Debtors' bankruptcy filings) suggested that Lazard's engagement was ongoing:

> On February 4, 2008, the Company announced that its Board of Directors had begun an evaluation of the Company's strategic alternatives to enhance shareholder value. These alternatives may include, but are not limited to, joint ventures or strategic partnerships with third parties, and/or the sale of the Company or any or all of its assets. The Company subsequently announced that it had retained Lazard Frères & Co. LLC in connection therewith. There can be no assurances that the evaluation process will result in any specific transactions, and subject to legal requirements, the Company does not intend to disclose developments arising from the strategic evaluation process unless the Company enters into a definitive agreement for a transaction approved by its Board of Directors.

Sun-Times 11/7/08 10-Q at 27.

5.      According to the Chicago Sun-Times' 2007 annual report filed with the SEC on or about March 12, 2008, the Chicago Sun-Times properties consist of "more than 100 newspapers and associated websites and news products in the greater Chicago metropolitan area." More than 90% of the Chicago Sun-Times' revenue for the calendar year ending December 31, 2007 was derived from advertising in (77%), and circulation of (21%), the aforementioned publications. Sun-Times 3/12/08 10-K at 6. In describing its competition, the Chicago Sun-Times specifically named only one competitor – the Chicago Tribune – in its 2007 annual report:

> Each of the Company's Chicago area newspapers competes to varying degrees with radio, broadcast and cable television, direct marketing and other communications and advertising media, including free Internet sites, as well as with other newspapers having local, regional or national circulation. The Chicago metropolitan region is served by thirteen local daily newspapers of which the Company owns eight. The *Chicago Sun-Times* competes in the Chicago region with the *Chicago Tribune*, a large established metropolitan daily and Sunday

newspaper.  In addition, the *Chicago Sun-Times* and other Company newspapers face competition from other newspapers published in adjacent or nearby locations and circulated in the Chicago metropolitan area market.

Sun-Times 3/12/08 10-K at 8-9.

6.    Lazard previously represented Hollinger International, Inc. ("Hollinger"), now known as the Chicago Sun-Times, in connection with its restructuring efforts.  On or about November 17, 2003, Hollinger announced that its board of directors had employed Lazard LLC to "review and evaluate its strategic alternatives, including a possible sale of the company, a sale of one or more of its major properties or other possible transactions."  Hollinger 11/17/03 6-K Ex. 99-1 (Press release dated 11/17/03 regarding restructuring).  Contemporaneous news reports indicated that Hollinger (with Lazard's assistance) put the *Chicago Sun-Times* and its sibling Chicago publications up for sale, *see*, *e.g.*, Jeremy Mullman, *Hollinger Puts Sun-Times on the Block*, CRAIN'S CHICAGO BUSINESS, Feb. 2, 2004, but a deal for the papers was not consummated.

7.    The Tribune Company's 2007 annual report filed with the SEC confirms that the *Chicago Tribune* is a significant asset of the Debtors.  For the year ending December 31, 2007, the *Chicago Tribune*'s (the daily newspaper and related businesses) gross revenue was approximately $828 million.  Tribune 3/20/08 10-K at 8-9.  The Debtors' gross publishing revenues totaled approximately $3.66 billion and gross operating revenues totaled approximately $5.06 billion for calendar year 2007.  Tribune 3/20/08 10-K at 8-9.  In its 2007 annual report, the Tribune Company acknowledged that "the Company's newspapers compete for readership and advertising with other metropolitan, suburban and national newspapers, and also with television, radio, Internet services and other media. Competition for newspaper advertising is based upon circulation levels, readership

demographics, price, service and advertiser results, while competition for circulation is based upon

the content of the newspaper, service and price."  Tribune 3/20/08 10-K at 10.

8.    On December 26, 2008, the Debtors filed the Application.  The Declaration of James

E. Millstein in support of the Application (the "Millstein Declaration") is attached as Exhibit A

thereto.  The Millstein Declaration does not contain any reference to the Chicago Sun-Times or the

Hollinger engagements.

9.    Federal Rule of Bankruptcy Procedure 2014(a) states:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee.  The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee.  The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.  The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

10.    The disclosure requirement contained in Bankruptcy Rule 2014(a) is "considered

sacrosanct because the complete and candid disclosure by a [professional] seeking employment is

indispensable to the court's discharge of its duty to assure the [professional's] eligibility for

employment . . . and to make an informed decision on whether the engagement is in the best interest

of the estate." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (Walrath, C.J.) (citations

omitted).  Under Bankruptcy Rule 2014(a), professionals are required to disclose "all connections

with parties in interest in the case, rather than furnishing only those which appear to implicate

'disinterestedness' or 'adverse interest' concerns . . . . " *eToys*, 331 B.R. at 190 (emphasis in original,

citations omitted).  Additionally, under 11 U.S.C. § 328(c), this Court has the power to deny

allowance of compensation and reimbursement of expenses to a professional if, "at any time during

the professional person's employment," the professional holds an interest adverse to the estate with

respect to the matter on which such professional person is employed.  Accordingly, the duty to

disclose under Bankruptcy Rule 2014(a) is a continuing obligation to facilitate this Court's critical

role in ensuring that impermissible conflicts of interest are rooted out.  *See Rome v. Braunstein*, 19

F.3d 54, 57-58 (1ˢᵗ Cir. 1994); *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998);

*In re CF Holding Corp.*, 164 B.R. 799, 804-05 (Bankr. D. Conn. 1994).

      11.     The disclosure requirements of Bankruptcy Rule 2014(a) have been construed

strictly by the courts in furtherance of the Rule's protective function.  *See In re Jore Corp.*, 298 B.R.

703, 725 (Bankr. D. Mont. 2003).  Accordingly, any and all information which has any bearing on

a professional's eligibility for employment must be disclosed.  *See Jore Corp.*, 298 B.R. at 725 (the

disclosure requirements of Rule 2014(a) "do not give the attorney the right to withhold information

because it is not apparent to him or her that a conflict exists"); *In re Southmark Corp.*, 181 B.R. 291,

296 (Bankr. N.D. Tex. 1995) ("The professional person must disclose and continue to disclose all

connections that may effect [sic] employment eligibility" (citation omitted)); *In re The Leslie Fay

Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) ("All facts that may have any bearing on the

disinterestedness of a professional must be disclosed" (emphasis added)); *In re EWC, Inc.*, 138 B.R.

276, 280 (Bankr. W.D. Okla. 1992) (in complying with disclosure obligations, professionals are not

free to "pick and choose which connections are irrelevant and trivial"). This Court is under no

obligation to sift through the record for the purposes of policing professional conflicts of interest –

under Bankruptcy Rule 2014(a), it is the professional's exclusive duty to bring the requisite

information to the Court's attention. *See In re BH & P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir. 1991).

12.     To protect the integrity of the self-reporting system established by Bankruptcy Rule

2014(a), courts have consistently held that a professional's failure to disclose connections constitutes

grounds for termination of employment and disallowance/disgorgement of compensation and

reimbursement sought by and/or paid to the professional. *See Kravit, Gass & Weber, S.C. v. Michel

(In re Crivello)*, 134 F.3d 831, 836 (7th Cir. 1998) ("Though [Bankruptcy Rule 2014(a)] allows the

fox to guard the proverbial hen house, counsel who fail to disclose timely and completely their

connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an

employment order and deny compensation") (quoted in *I.G. Petroleum, L.L.C. v. Fenasci (In re West

Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005); *Leslie Fay*, 175 B.R. at 533 ("So important is the

duty of disclosure that the failure to disclose relevant connections is an independent basis for the

disallowance of fees") (quoted in *eToys*, 331 B.R. at 190).[3] The question of whether a professional's

failure to disclose connections under Bankruptcy Rule 2014(a) warrants termination of employment

and/or denial of compensation and reimbursement is committed to this Court's sound discretion.

Courts have severely punished failures to disclose connections under Bankruptcy Rule 2014(a) that

---

[3]

While the instant failure to disclose was discovered by the U.S. Trustee prior to a hearing on the Application,
courts have strictly enforced Rule 2014's requirements both at the employment stage and after entry of an employment
order. *See, e.g., United States v. Azevedo (In re Azevedo)*, 92 B.R. 910, 910-11 (Bankr. E.D. Cal. 1988) (denying
employment application for failure to comply with Rule 2014(a)). Lazard should not be the beneficiary of the fact that
the firm's failure to disclose its connections with the Chicago Sun-Times was discovered before this Court ruled on the
Debtors' application to employ the firm.

bear on whether a professional has a potential or actual conflict of interest. *See Jore Corp.*, 298 B.R. at 727-32 (failure of counsel to chapter 11 debtor in possession to disclose limitation on ability to take positions adverse to lender warranted denial of all compensation and reimbursement). Allegedly inadvertent failures to disclose connections under Bankruptcy Rule 2014(a) as well as willful and intentional failures have been grounds for denial of all compensation and reimbursement. *See, e.g., Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881-82 (9th Cir. 1995) (bankruptcy court did not abuse its discretion in disallowing compensation to counsel to chapter 11 debtor in possession; firm's failure to disclose that its retainer was paid by officer of the debtor with funds borrowed from the debtor was "willful"); *EWC, Inc.*, 138 B.R. at 281 (failure of counsel to chapter 11 debtor in possession to disclose representation of debtor's sole shareholder in unrelated divorce proceeding established grounds for denial/disgorgement of all compensation).

13.     Lazard's engagements with the Chicago Sun-Times and Hollinger are matters that Lazard was obligated to disclose in connection with the Application.  The case law cited above indicates that this Court and others have construed professional disclosure obligations under Rule 2014(a) broadly to ensure that professionals appearing before it produce all information relevant to evaluating its fitness for employment.  There are two major newspapers dedicated to the Chicago area, and this Court is undoubtedly entitled to know whether the Debtors and Lazard propose that Lazard represent them both in connection with their respective restructuring/"strategic" efforts.

14.     Moreover, it appears that the Chicago Sun-Times is a party to an executory contract with the Chicago Tribune Company, a debtor in the above-captioned cases.  The Chicago Sun-Times' 2007 annual report indicates that "the Company entered into a contract with Chicago Tribune

Company for home delivery and suburban single-copy delivery of the Chicago Sun-Times and most of its suburban publications.  The Company continues to distribute single-copy editions of the *Chicago Sun-Times* within the city of Chicago and continues to operate the circulation sales and billing functions with the exception of single copy billing in the suburbs." Sun-Times 3/12/08 10-K at 8.  If the Chicago Sun-Times is party to a distribution arrangement with Chicago Tribune Company, the Chicago Sun-Times is a "creditor" and/or a "party in interest" under Rule 2014(a).

15.     Lazard's failure to disclose its recent engagement by the Chicago Sun-Times was both knowing and willful.  It is reasonable to expect that the prospective head of the Debtors' engagement for Lazard would have cleared the hire internally (with the engagement head on the Chicago Sun-Times matter, assuming that the engagement heads are not the same person) and informed the Boards of Directors of both the Chicago Sun-Times and Tribune Company before accepting the engagement.  If Lazard vetted its prospective engagement by the Debtors internally and disclosed the engagement to the respective boards of the Chicago Sun-Times and Tribune Company, that effort would have required substantial coordination between the Lazard personnel staffing/proposed to staff both engagements.  In other words, if it was important enough to Lazard to inform both the Chicago Sun-Times and the Debtors of the concurrent engagements, Lazard's failure to disclose the Chicago Sun-Times engagement to this Court was not merely an oversight.

*Lazard, Strategic Advisor to the Chicago Sun-Times, May Hold or Represent an Interest Adverse to the Debtors' Estates and/or Not Be a Disinterested Person*

16.     Section 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

17.     Courts have defined the "interest adverse" language in 11 U.S.C. § 327(a) as follows:

(1)  to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
(2) to possess a predisposition under circumstances that render such a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005)

(citations omitted);  *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

18.     11 U.S.C. § 327(c) provides:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is [an] objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

19.     The term "disinterested person" is defined in part as a person who

does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)(C).  This provision, better known as the "catch-all" provision, "has been held

broad enough to include anyone who 'in the slightest degree might have some interest or relationship

that might faintly color the independence and impartial attitude required [of estate professionals] by

the Code and the Bankruptcy Rules.'"  *In re BH & P, Inc.*, 949 F.2d 1300, 1309 (3d Cir. 1991)

(internal citations omitted).

20.    As discussed above, the Chicago Sun-Times' quarterly report for the third quarter of 2008, dated one month prior to the Debtors' bankruptcy filings, indicates that Lazard was providing strategic advice to the firm.  Based upon information and belief, Lazard's engagement by the Chicago Sun-Times continued into the post-petition period.  Accordingly, Lazard may hold or represent an interest adverse to the Debtors' estates and/or not be a "disinterested person," thus rendering the firm ineligible for employment.

*Other Objections*

21.    The Debtors seek this Court' approval of the Fee Structure under 11 U.S.C. § 328(a).

(a.)    This Court should decline to insulate the Fee Structure from subsequent review under 11 U.S.C. §§ 330.  The sheer magnitude of the compensation which the Debtors propose to pay Lazard – more than $18 million if the engagement lasts a year and the firm is entitled to a Restructuring/Disposition Fee – counsels caution.  The size of the Restructuring/Disposition Fee suggests that the Debtors and Lazard view the firm's engagement as primarily involving an investment banking role.  However, it is unclear at this juncture whether Lazard's role in the cases will primarily be that of investment banker, financial advisor, or some mixture of both roles.

(b.)    The Fee Structure contemplates that the Debtors and Lazard will agree at a later date to (a) fee(s) for any Other Disposition, defined (with certain exceptions) as a disposition of a portion of the business, assets or securities of the Debtors that would not constitute a Majority Disposition.  Appl. ¶ 17(c).  Given that we do not know what the amount(s) of such fee(s) is/are, this Court is not in a position to determine that the fee(s) is/are reasonable at this juncture.  To the extent that the Debtors are seeking a determination today that any Other Disposition fee(s) which they agree to pay Lazard is/are entitled to protection under 11 U.S.C. § 328(a), the Court should decline to make

that finding.

(c.)    The Monthly Fee is proposed to be paid in advance on the first day of each month. The U.S. Trustee requests confirmation that the fourth "ORDERED" paragraph in the proposed form of order (bottom of page 2) means that Lazard will abide by the procedures in the Debtors' proposed administrative order related to professional compensation (that is, file monthly fee applications with respect to a given month before seeking payment of compensation/reimbursement related to that month) and will not be paid in advance.

22.    In paragraph 16 of the Application, the Debtors/Lazard seek a waiver of the information requirements of Local Bankruptcy Rule 2016-2 to provide "reasonable detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services and the individuals who provided professional services on behalf of the Debtors." It is unclear to the U.S. Trustee what the Debtors/Lazard are proposing in this regard. The U.S. Trustee does not object to a limited waiver of the information requirements to allow Lazard to keep time records in ½-hour increments, but the balance of the relief requested by the Debtors/Lazard with respect to time records should be denied, as they have not established "cause" for relief.

23.    Paragraph 4 of the Engagement Letter provides:

> No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

It is unclear whether this paragraph is designed to insulate Lazard's compensation or reimbursement from reduction in the event of administrative insolvency. To the extent that this provision is designed to have that effect, the U.S. Trustee objects.

24.     Paragraph 12 of the Engagement Letter provides:

> In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all fo the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

In paragraph 11 of the Millstein Declaration, Millstein states:

> [A]s noted above, Lazard is the U.S. operating subsidiary of an international financial advisory and asset management firm and thus has several legally separate and distinct affiliates. Although it is possible that employees of certain affiliates may assist Lazard in connection with Lazard's engagement, as Lazard is the only entity being retained by the Debtors, we have researched only the electronic client files and records of Lazard, not of all of its affiliates, to determine connections with any interested parties.

Neither the Debtors nor Lazard should be permitted to use the services of Lazard's affiliates, including Lazard Capital Markets LLC, for two reasons. First, it is unclear whether Lazard contemplates sharing compensation or reimbursement from its engagement by the Debtors with its affiliates. 11 U.S.C. § 504(a) prohibits estate professionals from sharing compensation or reimbursement for professional services with other persons. *See generally In re Winstar Communications, Inc.*, 378 B.R. 756 (Bankr. D. Del. 2007). Lazard's affiliates are other persons subject to the prohibition. Second, as Lazard itself concedes, the firm's database for identifying Rule 2014(a) "connections" does not include information relating to its affiliates. Accordingly, this Court is not in a position to determine whether Lazard affiliates hold or represent an interest adverse to the Debtors' estates and/or are "disinterested persons" under 11 U.S.C. § 327(a).

25.     The Millstein Declaration does not disclose any payments received from the Debtors during the year prior to the Debtors' bankruptcy filings, notwithstanding Millstein's statement that Lazard provided pre-petition services to the Debtors.  Millstein Decl. ¶ 6.  Lazard should confirm that it did not receive any such payments.

*Request to Continue Hearing Pending Completion of Discovery; Reservation of Rights*

26.     In order to prepare for a contested hearing on, *inter alia*, the non-disclosure, conflict of interest, and compensation matters discussed in this objection, the U.S. Trustee needs a reasonable amount of time to conduct discovery.  Accordingly, the February 20, 2009 hearing should be used as a status conference for the purpose of discussing preliminary discovery matters and scheduling a new hearing date for the Application.  At the February 20 hearing, the U.S. Trustee will be prepared to report on the results of her efforts to obtain informal discovery from the Debtors and Lazard.

27.     The U.S. Trustee reserves the right to conduct discovery and the right to supplement this objection.

**[Continued on next page – space intentionally left blank]**

**CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court continue the hearing on the Application to a later date to allow the U.S. Trustee to conduct discovery or, alternatively, enter an order granting relief consistent with this objection.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**

**BY:**  /s/ Joseph J. McMahon, Jr.
Joseph J. McMahon, Jr., Esquire (# 4819)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6497 (Fax)

Date:  February 16, 2009

16