# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., [1] | Case No. 08-13431 (KJC) |
| Debtors. | Jointly Administered |

## SECOND SUPPLEMENTAL AFFIDAVIT OF JAMES F. CONLAN IN SUPPORT OF APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SIDLEY AUSTIN LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE

STATE OF ILLINOIS    )
                     ) ss:
COUNTY OF COOK       )

JAMES F. CONLAN declares as follows:

1. I am a partner in the law firm of Sidley Austin LLP ("Sidley" or the "Firm") and am resident at its office located at One South Dearborn Street in Chicago, Illinois

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

60603. I make this second supplemental affidavit (the "Second Supplemental Affidavit") in support of the proposed employment and retention of Sidley by each of the above-captioned entities, all of which are debtors and debtors-in-possession herein (collectively, the "Debtors"), as their general reorganization and bankruptcy counsel in the above-referenced chapter 11 cases pursuant to sections 327(a) and 1107(a) of title 11 of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, nunc pro tunc to the Debtors' petition date on December 8, 2008 (the "Petition Date"). Unless otherwise stated in this Second Supplemental Affidavit, I have personal knowledge of the facts set forth herein.

2. I submit this Second Supplemental Affidavit at the request of the Office of the United States Trustee ("U.S. Trustee"). This Second Supplemental Affidavit is made to address certain issues raised by U.S. Trustee and to clarify and augment the disclosures to the Court concerning Sidley's engagement in my original affidavit submitted in support of Sidley's retention on December 26, 2008 ("Original Affidavit") and my first supplemental affidavit submitted on January 23, 2009 (the "First Supplemental Affidavit").

3. The highest billing rate that will be charged by any Sidley attorney for services rendered to the Debtors under Sidley's current billing rates that became effective on January 1, 2009 and continuing until Sidley's next Firm-wide rate adjustment will be $925 per hour. In the event subsequent billing rate adjustments occur during these chapter 11 proceedings, no Sidley attorney's future billing rates for services rendered to the Debtors shall exceed my adjusted billing rate.

4. In paragraph 8 of the Original Affidavit and paragraph 4 of the First Supplemental Affidavit, I described the amount of the advance payment retainer held by Sidley as of the dates of those affidavits and confirmed that such amount would be used to satisfy any

2

initial post-petition fees and expenses incurred by Sidley on behalf of the Debtors. In addition, if the Court were to order that any portion of these funds be returned to the Debtors, Sidley would comply with that order regardless of any rights it might otherwise have arising from the fact that its engagement letter with the Debtors provides that these funds constitute an advance payment retainer.

5. Sidley has provided legal services to Tribune Company and affiliates for many years and those legal services have involved many subject matters. Attached hereto as Exhibit 1 is a list of all payments (for all types and categories of legal services) received by Sidley from Tribune Company, on behalf of itself or any and all of its subsidiaries, during the one-year period prior to the Petition Date. Exhibit 1 is organized chronologically by the date when funds were received from Tribune Company, listing the (i) invoice number, (ii) the invoice date, (iii) the first and last work date covered by the invoice, (iv) the payment date, and (v) the payment amount. This list separately itemizes invoices for each billing matter for which Sidley provided services. The invoices listed below the line on the next to the last page of Exhibit 1 reflect services rendered prior to the Petition Date even though the invoices were generated post-petition.

6. The table set forth at the end of paragraph 9 of the Original Affidavit listed all the fees and expenses of Sidley for services rendered in contemplation or in connection with the restructuring efforts of the Debtors and the filing of these chapter 11 cases during the one-year period prior to the Petition Date. The invoice dates for the first two entries in that table reflected the date of a first draft of the applicable invoices rather than the final invoices that were approved and paid by Tribune Company. The final invoice dates were November 12, 2008 for the $78,212.14 invoice and June 25, 2008 for the $41,348.12 invoice.

7. The U.S. Trustee has raised concerns that various payments received by Sidley during the 90 days prior to the Petition Date might be avoidable as preferential transfers. Sidley provided contrary evidence to the U.S. Trustee, including (i) that Sidley held a retainer in the amount of $375,252.21 prior to the preference period and applied that retainer as payment for certain outstanding invoices during the preference period, and (ii) that both the overall ranges of time and actual average time between the invoice date and payment date for all payments received during (a) the preference period and (b) the 21-months prior to the preference period were very similar. Nevertheless, the U.S. Trustee felt that certain outstanding invoices totaling $324,584.12 that were paid with the $3.5 million retainer that was received by Sidley on November 24, 2008 were sufficiently older than the average time between the invoice date and the payment date to make them susceptible to avoidance as preferential transfers. Although Sidley does not agree with the U.S. Trustee's perspective, Sidley has agreed to promptly arrange with the Debtors to reimburse or credit the Debtors in the amount of $324,584.24. In addition, Sidley hereby waives any claim, including any claim under Section 502(h) of the Bankruptcy Code, arising from paying this $324,584.42 back to the Debtors.

8. As set forth in my Original Affidavit, Sidley has conducted extensive searches of its conflicts databases and has disclosed all the known circumstances where it may represent clients other than the Debtors in matters involving the Debtors. Although applicable canons and/or rules of ethics may prevent Sidley from being adverse to certain parties in interest in these chapter 11 cases based on Sidley's past or current representation of such parties, I do not believe that there is any greater restriction in any general Sidley policy that would prohibit

4

Sidley, as Debtors' counsel in these chapter 11 cases, from being adverse in these cases to past or current Sidley clients.[2]

9. This Supplemental Affidavit is made without prejudice to Sidley's rights to supplement further its disclosures in the Debtors' chapter 11 cases.

---

[2] Sidley's Lawyer's Manual provides that litigation adverse to an accounting firm, investment banking firm, commercial lending institution, brand name pharmaceutical manufacturer or biotech company, or insurance company should not be commenced without first discussing the proposed engagement with a Management Committee member.

I declare under penalty of perjury that the foregoing is true and correct.

_____
James F. Conlan

Sworn to and subscribed
before me this 19th day of
February 2009.

_____
Notary Public

"OFFICIAL SEAL"
Joyce M. Bochenski
Notary Public, State of Illinois
My Commission Expires July 25, 2009