# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:                                                           :  Chapter 11
                                                                 :
TRIBUNE COMPANY, et al.,[1]                                      :  Case No. 08-13141 (KJC)
                                                                 :
                              Debtors.                           :  Jointly Administered
---------------------------------------------------------------- x  Docket Ref No. 245

## ORDER, PURSUANT TO 11 U.S.C. §§ 327 AND 1103 AND FED. R. BANKR. P. 2014, AUTHORIZING THE RETENTION AND EMPLOYMENT OF ALIXPARTNERS, LLP AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL., NUNC PRO TUNC TO DECEMBER 19, 2008

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Upon consideration of the application (the "<u>Application</u>")[2] of the Official Committee of Unsecured Creditors (the "Creditors' Committee") for entry of an order, pursuant to sections 327 and 1103 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 2014 of the Federal Bankruptcy Rules (the "<u>Bankruptcy Rules</u>"), authorizing the employment and retention of AlixPartners, LLP ("<u>AlixPartners</u>") as its financial advisor pursuant to the terms of the engagement letter dated as of December 19, 2008 (the "<u>Engagement Letter</u>"); and the Court having considered the Application and the Declaration of Alan D. Holtz dated January 16, 2009 (the "<u>Declaration</u>") in support of the Application; and the Court finding that (A) AlixPartners (i) does not hold an interest adverse to the interest of the Debtors' estates with respect to the matters on which AlixPartners will be employed and (ii) is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; (B) the Application and the Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"); (C) the relief requested in the Application is in the best interests of the Debtors, their estates and creditors; (D) notice of the Application was due and proper under the circumstances, after due deliberation, and good and sufficient cause appearing therefore, it is hereby:

IT IS ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is granted, as modified herein.

---

[2]   Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Application.

2.      The retention and employment of AlixPartners, as financial advisor to the

Creditors' Committee, pursuant to sections 327 and 1103 of the Bankruptcy Code and Rule 2014

of the Bankruptcy Rules, *nunc pro tunc* to December 19, 2008, on the terms and conditions set

forth in the Engagement Letter (attached hereto) and the Application, is approved.

3.      AlixPartners shall be compensated in accordance with the procedures set forth

set forth in sections 330 and 331 of the Bankruptcy Code and any other applicable provisions of

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, this Order and any other

applicable orders of this Court.

4.      Nothing in this Order is intended to or shall be deemed to prejudice or

augment the rights of the Acting United States Trustee under 11 U.S.C. §§ 328(c), 330 and 331

and applicable law in the event that the Committee seeks to employ any additional financial

professionals or experts to investigate and/or pursue claims and causes of action related to the

2007 leveraged buyout

5.      The indemnification provisions of the Engagement Letter are approved

subject to the terms of this Order, and the Debtors shall indemnify and hold harmless

AlixPartners and its affiliates, and their past, present, and future partners, directors, officers,

owners, employees and agents, pursuant to and in accordance with the Engagement Letter.

Further, the indemnification provisions set forth in the Engagement Letter are subject during the

pendency of the Debtors' bankruptcy cases to the following modifications:

> (a)  subject to the provisions of subparagraph (c), *infra*, the Debtors are
> authorized to indemnify, and shall indemnify, AlixPartners in accordance
> with the Engagement Letter for any claim arising from, related to, or in
> connection with the services provided for in the Engagement Letter, but
> not for any claim arising from, related to, or in connection with
> AlixPartners' postpetition performance of any other services unless such
> postpetition services and indemnification therefore are approved by the
> Bankruptcy Court;

3

(b) notwithstanding any provisions of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify AlixPartners or provide contribution or reimbursement to AlixPartners (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from AlixPartners' bad faith, self dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of AlixPartners' contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would not be prohibited by In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), infra, to be a claim or expense for which AlixPartners should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter, as modified by this Order;

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, AlixPartners believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, AlixPartners must file an application therefore in this Court, and the Debtors may not pay any such amounts to AlixPartners before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by AlixPartners and does not limit the duration of the Debtors' obligation to indemnify AlixPartners; and

(d) any limitation on liability pursuant to the terms of the Engagement Letter shall be eliminated.

6.    Notwithstanding anything contained in the Engagement Letter to the contrary, in the event that AlixPartners augments its professional staff with independent contractors, AlixPartners will charge the Debtors for the independent contractor's services at the compensation rate provided by AlixPartners to the independent contractor.

4

7.    This Court shall retain jurisdiction to construe and enforce the terms of this Order.

Dated: February 20, 2009

HON. KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY
JUDGE

NY3 - 481806.01