## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 438**<br>**Hearing Date: March 10, 2009 10:00 a.m.**<br>**Reply Deadline: March 5, 2009** |

## DEBTORS' OBJECTION TO THE MOTION OF ALLEN FRANCISCO FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor in possession (each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the Motion of Allen Francisco ("Francisco") for Relief From Stay Under Section 362 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") filed February 20, 2009 [Docket No. 438] (the "Motion").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The facts and circumstances supporting this Objection are set forth in the Affidavit of Don Liebentritt, Executive Vice President and General Counsel of Tribune Company, in support of the Objection (the "Liebentritt Affidavit").  A copy of the Liebentritt Affidavit is attached hereto as Exhibit A.  In further support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      Francisco's Motion is not the garden-variety relief from stay motion where a single claimant, whose claim is fully covered by insurance, is permitted to continue pre-petition litigation solely for the purpose of collecting insurance proceeds at no expense to the debtor's estate.  Instead, Francisco's pre-petition case (the "Action") is one of at least 50 other pre-petition personal injury cases pending against the Debtors where (i) the Debtors' insurance coverage generally has a $1 million deductible per occurrence and (ii) the insurer is not required to provide any defense or coverage until the Debtors have expended $1 million on defense costs or damages (or the insurer, in its sole discretion, has concluded that the damages will exceed $1 million).[2]  As of the Petition Date, the Debtors had only expended approximately $120,954.00 on damages or defense costs in connection with the Action.

2.      What Francisco is seeking – relief from the automatic stay to only recover insurance proceeds with no cost to the Debtors' estates – is simply not possible.  If the Action were permitted to continue and the Debtors were not required to expend any estate resources by continuing the defense, the insurers would likely claim a breach of the Debtors' obligations

---

[2] The insurance coverage applicable to one of the at least 50 other pre-petition personal injury cases has a $500,000 deductible per occurrence.

under the insurance policy, thus leaving no insurance coverage for Francisco to claim against.[3]

Alternatively, the insurers might step in and begin defending the Action, but would in turn assert

a contribution claim against the Debtors for the costs up to the $1 million deductible.  Further, if

the Action proceeded to judgment and Francisco was awarded something less than $880,000 (the

balance of the Debtors' deductible obligation), he would not be entitled to receive anything from

the insurers.  None of these results are what Francisco is seeking in his motion requesting relief

from the automatic stay.  Unfortunately, that is because what Francisco is looking for is

something that is not consistent with the facts.

> 3.      If Francisco were granted relief from the automatic stay it would not

simply harm the Debtors by opening the floodgates for at least 50 other personal injury claimants

to seek the same relief, it would also invite the plaintiffs in at least 45 pre-petition cases against

the Debtors involving media-related claims (such as defamation, slander and libel) to

immediately seek relief from the automatic stay.  The Debtors' insurance coverage for these

media-related claims is also subject to a $1 million deductible obligation, but the defense costs

(which are much more expensive than the defense costs for personal injury cases) are not

included in the deductible.  In 2008, the Debtors expended more than $500,000 in defense costs

in just one of these cases.  In addition, the Debtors are subject to at least 15 employment–related

cases (such as wrongful termination and breach of employment contract), none of which are

covered by insurance.  Thus, the relief that Francisco is seeking would result in substantial costs

to the Debtors' estates.

> 4.      The Debtors believe that the best way to handle Francisco's request (and

other similar requests that may be made) is for the Debtors and the Official Committee of

---

[3] No statements contained in this Motion or the Liebentritt Affidavit should be construed as an admission by the Debtors' with respect to any insurers' rights and obligations under applicable insurance policies, or as a waiver of the Debtors' rights and defenses with respect to such policies.

Unsecured Creditors (the "Creditors' Committee") to devise an efficient procedure for

liquidating the pre-petition personal injury and other similar disputed claims pending against the

Debtors once a bar date for filing proofs of claim has been established in these chapter 11

proceedings.[4]  The Debtors anticipate filing a motion in the near-term seeking to establish a bar

date for claims.

## ARGUMENT

5.      The automatic stay imposed by section 362(a) prevents "the

commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that

was . . . commenced before the commencement of the case under [the Bankruptcy Code.]"

Section 362(d) of the Bankruptcy Code directs a bankruptcy court to grant relief from the

automatic stay imposed by section 362(a) of the Bankruptcy Code only where the moving party

can demonstrate "cause".[5]  Accordingly, Francisco bears the prima facie burden of establishing

cause.  See, e.g., In re RNI Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006).

6.      In determining whether Francisco has demonstrated sufficient cause to lift

the automatic stay, the Court should consider (i) whether allowing the litigation to continue in

another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii)

whether maintaining the stay will cause any hardship to Francisco and whether this hardship is

greater than the resulting hardship to the Debtors; and (iii) the probability of Francisco prevailing

---

[4] The Debtors and the Creditors' Committee are currently in discussions about using an alternative dispute resolution procedure for liquidating these types of disputed claims, and would anticipate seeking Court approval of such a process once they have reached a consensus.

[5] Specifically, section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> 1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

on the merits of the Action. <u>See</u>, <u>e.g.</u>, <u>In re Rexene Prods. Co.</u>, 141 B.R. 574, 576 (Bankr. D. Del. 1992). As discussed in greater detail below, Francisco fails to meet each of these factors and, consequently, fails to establish that cause exists to lift the automatic stay.

A.      **Significant Prejudice to the Debtors Will Result if the Stay is Lifted**

7.      The Debtors submit that they would incur significant prejudice if the relief requested in the Motion is granted. As mentioned above, the insurance policy applicable to the Action has a $1 million dollar deductible obligation, and the terms of the policy require the Debtors to incur $1 million in liability or defense costs before the insurer has an obligation to assume the defense or satisfy a judgment. As a result, if the Action is permitted to go forward, it will require the Debtors to continue paying defense costs or risk breaching the insurance coverage, or if the insurers were to assume the defense, they would assert a contribution claim up to the balance of the Debtors' $1 million deductible.

8.      Further, and also as discussed above, should this Court grant the relief requested in the Motion, it could create a domino effect with respect to at least 50 other pre-petition personal injury cases pending against the Debtors, all but one of which is subject to a $1 million deductible obligation. This domino effect could extend to (i) at least 45 pre-petition media-related cases, each of which expose the Debtors to not only a $1 million dollar deductible obligation, but also to significant additional defense costs and (ii) at least 15 employment–related cases, none of which are covered by insurance. In fact, a number of the plaintiffs in the personal injury and media-related cases have already threatened to seek relief from the automatic stay.

9.      Permitting such a domino effect to occur would not only cause the Debtors to incur substantial defense costs, it would also undermine the purpose of chapter 11 proceedings, which are designed to both provide the Debtors' with a breathing spell and to more

efficiently liquidate claims through a claims allowance process.  See, e.g., Bormann v. Raymark Indus. Inc., 946 F. 2d 1031, 1036 (3d Cir. 1991) (noting that the automatic stay is designed to provide debtors with a breathing spell).  In the present case, the Debtors and Creditors Committee are currently in discussions regarding procedures to liquidate disputed pre-petition claims in a manner that would save administrative costs for both the Debtors and the claimants.[6] Granting the relief requested in the Motion would undermine those efforts.

**B.    The Debtors' Interests in Maintaining the Automatic Stay Outweigh Francisco's Interests in Liquidating his Claim**

10.    The Debtors submit that their interests in maintaining the protections of the automatic stay far outweigh Francisco's interests in liquidating his claim at this time.  As set forth above, it is impossible to permit Francisco to continue to pursue the Action without either jeopardizing the insurance coverage or requiring the Debtors to directly or indirectly pay the defense costs.  Thus, Francisco cannot access any insurance coverage in excess of the $1 million deductible without causing up to $880,000 in defense costs to be borne by the Debtors' estates.  As for liquidating any claim against the Debtors' estates, the Debtors submit that both Francisco and the Debtors will be in a better position to determine the amount of resources to expend in pursuing the Action once the Debtors have formulated and filed a plan of reorganization that indicates the estimated distribution on account of general unsecured claims.  However, under the present circumstances, there is simply no compelling reason to lift the automatic stay. Accordingly, Francisco has failed to establish that the prejudice, if any, to Francisco outweighs the prejudice to the Debtors.

---

[6] The Debtors are aware that certain of the pre-petition personal injury claims may give rise to exceptional circumstances where limited relief from the automatic stay would be beneficial to both the Debtors and the personal injury claimant.  In such rare circumstances, the Debtors may, where prudent, attempt to reach stipulations with the personal injury claimant.

C.    **Francisco Has Failed to Demonstrate a Likelihood of Success on the Merits of the Action**

11.    Francisco has failed to establish cause for lifting the automatic stay under the standards discussed above. As a result, the Debtors submit that the Court need not consider the probability of success on the merits of the Action. However, any analysis of this factor indicates that Francisco has not even attempted to demonstrate that this test is met. In order to satisfy this third requirement, Francisco would have needed, at a minimum, to submit evidence showing that he was likely to win a judgment substantially in excess of the $880,000 remaining deductible, thereby showing that he could obtain significant relief from the insurance coverage. The Debtors believe, based on their familiarity with the Action, that Francisco could not make such a showing. Accordingly, Francisco has provided no basis for this Court to conclude that he has any probability of succeeding in obtaining any value from insurance if he were allowed to continue with the Action at this time.[7]

## CONCLUSION

12.    Francisco has utterly failed to demonstrate "cause" for lifting the automatic stay. The Debtors will clearly suffer prejudice if the Action is permitted to proceed at this stage in their cases. Granting the relief requested in the Motion will, in all likelihood, lead to

---

[7] Further, the Debtors note that Francisco has advised the Illinois court that if he is not successful in obtaining relief from the automatic stay to pursue the action against the Debtors, he may seek to continue the litigation only against the driver (who was an employee of the Debtor) involved in the accident. Since the Debtors generally have various indemnity obligations to their employees (which, in connection with the Action, has involved providing separate defense counsel to the driver), the Debtors believe that Francisco's continued pursuit of the action against the driver may be a violation of the automatic stay. See American Film Technologies Inc. v. Taritero (In re American Film Technologies), 175 B.R. 847 (Bankr. D. Del 1994) (granting preliminary injunction staying prosecution of state court litigation after finding that indemnification and collateral estoppel implication of claims could cause irreparable harm to the Debtor); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (noting that the automatic stay may be extended to non-debtor parties "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment against the debtor.").

a flood of similar requests by other personal injury, media-related, employment-related and

similar claimants.  For these reasons, the Motion should be denied.


Dated:  Wilmington, Delaware                Respectfully submitted,
        March 3, 2008

                                            SIDLEY AUSTIN LLP
                                            James F. Conlan
                                            Bryan Krakauer
                                            Kevin T. Lantry
                                            Kerriann S. Mills
                                            One South Dearborn Street
                                            Chicago, IL  60603
                                            Telephone:  (312) 853-7000
                                            Facsimile:  (312) 853-7036

                                                    -and-

                                            COLE, SCHOTZ, MEISEL,
                                            FORMAN & LEONARD, P.A.

                                            By: _____
                                            Norman L. Pernick (No. 2290)
                                            J. Kate Stickles (No. 2917)
                                            Patrick J. Reilley (No. 4451)
                                            1000 N. West Street, Suite 1200
                                            Wilmington, DE  19801
                                            Telephone:  (302) 652-3131
                                            Facsimile:  (302) 652-3117

                                            ATTORNEYS FOR DEBTORS AND
                                            DEBTORS IN POSSESSION