IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, | ) | Case No. 08-13141-KJC |
| et al.[1], | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: March 25, 2009 at 3:00 p.m.** |
| | ) | **Objection Deadline: March 18, 2009 at 4:00 p.m.** |

## MOTION FOR RELIEF FROM STAY

Andrew Faggio and his wife, Jennifer Faggio (collectively, the "Faggios"), hereby request relief (the "Motion") from the automatic stay pursuant to section 362 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1552 (the "Bankruptcy Code"). In support of their Motion, the Faggios respectfully state as follows:

## BACKGROUND OF THE DEBTORS

1.    On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these cases.

3.    On December 18, 2008, the United States Trustee (the "UST") appointed the official committee of unsecured creditors (the "Creditors' Committee").

4.    Based in Chicago, Illinois, Tribune Company ("Tribune") is America's largest employee-owned media and entertainment company and is the ultimate parent company of each of the Debtors (Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company In Support of First Day

---

[1]  For a complete list of debtors in these cases, please refer to Docket No. 4.

Motions [Docket No. 3] (the "Bigelow Affidavit") ¶ 8). Tribune is a media industry leader, reaching more than 80% of U.S. households through its newspaper and other publications, its television and radio broadcast stations and cable channels, and its other entertainment offerings (*id.*).

## THE MOVANTS

5.      On January 31, 2003, Andrew Faggio suffered catastrophic, life-changing injuries when he was involved in an automobile accident with Mr. Leon Brown, an employee/contractor of The Hartford Courant Company, one of the Debtors in these cases ("Hartford").

6.      Brown was a newspaper carrier delivering morning papers for Hartford. He was driving illegally (as he had been trained to do by Hartford). Mr. Faggio, on his way to work, came upon Mr. Brown's car, attempted to avoid an accident, and ended up striking Mr. Brown's car and then a tree. As a result of the accident, Mr. Faggio is a quadriplegic, permanently hospitalized in a minimally conscious state. Mr. Faggio will remain completely dependent on caregivers for the rest of his life.

7.      At the time of the accident, Mr. Faggio was a 37 year-old, New Haven, Connecticut police detective. He and his wife, Jennifer Faggio, have two young children, Andrew (who at the time of the accident was 3 years old) and Nicholas (who at the time of the accident was 9 months old).

8.      Mr. Faggio is now a resident of The Hospital for Special Care in New Britain, Connecticut; a "maintenance" care facility. Mr. Faggio will never be able to return home and requires twenty four hour care as a result of the traumatic brain injury he suffered in the collision.

9.      On or about December 29, 2004, Jennifer Faggio, Conservator of Andrew Faggio and Jennifer Faggio filed a lawsuit in Superior Court of Middlesex County at Middletown Connecticut, C.A. No. MMX-CV-05-4003488s (X04) (the "State Court Action"). On October 16, 2006, the Faggios submitted the Third Amended Complaint against Mr. Brown and Hartford. A copy of the Third Amended Complaint is attached as Exhibit A.

10.      Discovery has been ongoing. Written discovery has been filed and answered. By formal written responses to interrogatories, Hartford has disclosed liability insurance coverage for this incident in levels up to approximately one hundred twenty five million dollars (see Exhibit B). To date over 20 depositions of expert and fact witnesses have been completed. The Faggios have disclosed their experts according to the terms of the trial court's scheduling order, most of whom have been disposed. Hartford has disclosed three experts thus far, but declined to make them available for deposition until the mediation was concluded (See paragraph 11 below). Little discovery remains to be done. Trial is scheduled for September 2009.

11.      On December 8, 2008 (also known as the Petition Date), the parties in the State Court Action participated in non-binding mediation before the Honorable Robert Holzberg, Judge of the Superior Court, Middletown, Connecticut. Before that mediation could be concluded, Judge Holzberg received notice of the bankruptcy filing. The mediation was immediately discontinued.

## BASIS FOR THE RELIEF REQUESTED

12.      Grounds for relief from the automatic stay exist under Section 362(d)(1) of the Bankruptcy Code, which provides that "[o]n request of a party in interest and after

notice and a hearing the court shall grant relief from the stay provided under subsection
(a) of this section. . . for cause ..." 11 U.S.C. § 362(d)(1). The automatic stay is "not
meant to be indefinite or absolute, and in appropriate circumstances, relief may be
granted." *In re Rexene Products Company*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).
"Cause is not defined in the Code; it must be determined on a case-by-case basis." *Id.*
(internal citations omitted). The purpose of the automatic stay is to (i) prevent certain
creditors from gaining a preference for their claims; (ii) to forestall depletion of the
debtor's assets due to legal costs in defending actions against it; and (iii) to avoid
interference with the orderly liquidation or rehabilitation of the debtor. *Id.* Cause may be
established by "a single factor such as a desire to permit an action to proceed in another
tribunal", or "lack of any connection with or interference with the pending bankruptcy
case." *Id.* (citing H.R. Rep. No. 95-595, 95[th] Cong., 1[st] Sess., 343-4 (1977) U.S.Code
Cong. & Admin.News pp. 5787, 6300). "It will often be more appropriate to permit
proceedings to continue in their place of origin, when no great prejudice to the
bankruptcy estate would result, in order to leave the parties to their chosen forum and to
relieve the bankruptcy court from any duties that may be handled elsewhere." *Id.*

13.        "In deciding whether there is sufficient cause present to lift the stay, the
Court must conduct a balancing test whereby the interests of the estate are weighed
against the hardships that will be incurred by the movants." *In re Todd Shipyards, Corp.*,
92 B.R. 600, 602 (Bankr. D. N.J. 1988).

14.        Here, the balancing test weighs heavily in favor of the Faggios. As
explained in detail below and in the Affidavits of Ellen Barker, MSN, APN. (the "Barker
Aff.") and Mrs. Jennifer Faggio (the "Faggio Aff.") attached as Exhibits C and D,

respectively, Mr. Faggio requires more aggressive treatment that what is currently available. That treatment will cost in excess of $150,000 per year (in addition to the current costs). However, his insurance will not pay for that treatment and his family cannot afford to. If this litigation that has been pending for over five years could be resolved in favor of the Faggios, the resulting recovery will allow the family to pay for his treatment. The longer this litigation is stayed, the longer Mr. Faggio goes without the much-needed treatment. According to Ms. Barker, delays in providing this treatment will cause deterioration in Mr. Faggio's condition, and will make the treatments less effective when re-instituted. Thus, the harm to the Faggios in delaying this matter further is not only grave but is immeasurable.

15.     Mr. Faggio is in a minimally conscious state (Barker Aff. ¶ 10). He is not in a purely vegetative state (*id.*). He is aware of his surroundings and experiences pain (*id.*). He communicates by facial gestures and eye movements (*id.* at ¶ 9).

16.     Since December 2007, Mr. Faggio has been a long term patient at the Hospital for Special Care (*id.* at ¶ 11). Prior to December 2007, Mr. Faggio had been receiving aggressive rehabilitative care, including but not limited to, daily physical therapy, occupational therapy, and hands on nursing efforts to maintain his level of consciousness and minimize his physical discomfort (*id.*). However, Mr. Faggio is no longer receiving that level of care, his recovery being deemed at a "plateau." (*id.* at ¶ 13).

17.     As a result of the decrease in the level of his care, Mr. Faggio has developed increased hypertonicity and spasticity in his limbs, which includes progressive contractures of his upper and lower extremities (*id.* at ¶ 14). Also, because of withdraw of more aggressive treatment, Mr. Faggio has developed an abnormal sleep cycle making

it difficult to rouse him during the day for treatment and family visits (*id*. at ¶ 15). Ms. Barker believes that aggressive physical therapy can help Mr. Faggio with these conditions and his overall health (*id.* at ¶¶ 14 and 16). As she states, "the more stimulation the patient receives, the more body and mind are called into use and response, with resulting benefit to his immune systems and other organs" (*id.* at ¶ 16).

18.     In sum, Ms. Barker recommends "the resumption of aggressive rehabilitative treatments so as to reduce his spasticity, decrease the pain associated with spasticity, re-orient him to a normal sleep/awake cycle, increase his alertness and responsiveness to family visitors and caregivers, and generally improve his health and prospects for a longer life" (*id.* at ¶ 17). Without the treatments, Mr. Faggio's health will "continue to decline unnecessarily with potentially life-threatening results" (*id.* at ¶ 19).

19.     Mrs. Faggio agrees. Since the time her husband's care was scaled back, she has observed his condition deteriorate (Faggio Aff. ¶ 7). He is less responsive to her and his children (*id.*). He appears to be in pain every time she visits (*id.*). One of Mrs. Faggio's main goals in bringing the State Court Action was to provide her husband with the best possible care for as long as he lives (*id*. at ¶ 9). However, for financial reasons, she is unable to pay for that care herself (*id*. at ¶ 8).

20.     On the other hand, if this case was allowed to proceed, the Debtors would suffer no harm. The Debtors' management, advisors and legal counsel in charge of the reorganization would not be distracted from their efforts by this case in Connecticut, especially, where, as here, the litigation involves one distinct debtor and that debtor's employees and outside counsel is able to handle matters effectively and efficiently.

21.     Additionally, the Debtors will not be prejudiced if this case was allowed to proceed to judgment because the Debtors' insurers, not the Debtors, would have ultimate liability for the claims.  The Faggios propose to litigate their claims to final judgment and then proceed against the Debtors' insurers, not the property of the Debtors, to liquidate those claims.

22.     Finally, the Faggios have a high probability of success on the merits of this case.  As set forth above and in the Third Amended Complaint, at the time of accident, Mr. Brown was delivering newspapers for Hartford.  At the time of the accident. Mr. Brown was driving his automobile on the wrong side of the road, as he had been trained by Hartford to do at the time of the accident.  There was simply no way for Mr. Faggio to avoid a collision when he approached Mr. Brown's vehicle.  However, in his attempt to do just that – avoid an accident – he struck Mr. Brown's vehicle and then careened into a tree.  Such facts give rise to a high probability of success on the merits.

23.     As in many of these types of motions, the Debtors are likely to argue that the floodgates of similar litigation will ensue and that the breathing spell afforded by the automatic stay is critical to this bankruptcy case.  In making these arguments, the Debtors will attempt to skim over the details of Mr. Faggio's situation.  However, that is what makes this case different and those very details are precisely why this particular request should be granted.

WHEREFORE, the Faggios request that this Court grant relief from the automatic stay to allow these cases to proceed to final judgment. A proposed form of order is attached as Exhibit E.

Dated: March 5, 2009

Etta R. Wolfe (DE ID 4164)
Smith Katzenstein & Furlow LLP
The Corporate Plaza
800 Delaware Ave., 10th Floor
Wilmington, DE  19899
(302) 652-8400 (phone)
(302) 652-8405 (fax)
erw@skfdelaware.com

Counsel for the Faggios