## IN THE UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: TRIBUNE COMPANY, et al.,[1]: | : | CHAPTER 11 |
|  | : |  |
| Debtors. | : | CASE NO. 08-13141 (KJC) |
|  | : |  |
|  | : | (Jointly Administered) |
|  | : | **Objection Deadline: March 18, 2009 at 4:00 p.m.** |
|  | : | **Hearing Date: March 25, 2009 at 3:00 p.m.** |

## MOTION OF JON VAN SENUS, BY AND THROUGH HIS GUARDIAN AD LITEM, NEALA OLSON, FOR RELIEF FROM THE AUTOMATIC STAY TO RECEIVE PAYMENT PURSUANT TO SETTLEMENT AGREEMENT

Jon Van Senus, by and through his guardian ad litem, Neala Olson, ("Movant") by his attorneys

Elliott Greenleaf and Callahan & Blaine hereby submit, pursuant to 11 U.S.C. §§ 362(d)(1) and (2) and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company 8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo. Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo. Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); Julius Air Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276) Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Conrant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Fed. R. Bankr. P. 4001(a), this Motion Of The Conservator Of Jon Van Senus For Relief From the Automatic Stay to Receive Payment Pursuant to Settlement Agreement (the "Motion"). In support of the Motion, the Movant states as follows:

## INTRODUCTION

1.    On December 8, 2008, (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed with the Court voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2.    The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3.    A committee of unsecured creditors (the "Committee") was appointed on December 30, 2008.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

5.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.    The statutory bases for the relief requested in the Motion include 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001.

## BACKGROUND

7.    On or about March 7, 2007, Jon Van Senus ("Mr. Van Senus") was riding his bicycle in Newport Beach, California, and was struck by a delivery truck delivering Los Angeles Times newspapers to retail establishments. The driver of the delivery truck was an employee and/or agent of the Los Angeles Times Communications, LLC (the "Los Angeles Times" or the "Debtor"), one of the Debtors herein. Rather than stopping and rendering emergency aid to Mr. Van Senus, the Los Angeles Times' employee and/or agent raced away from the scene and left Mr. Van Senus to die in the bushes on

2

the side of the road.  The Los Angeles Times employee and/or agent was later caught and convicted for felony hit and run.

8.      Mr. Van Senus, who is currently 45 years old, suffered a severe, traumatic and permanent brain injury due to the accident.  He has the mental capacity of a 6 year old and lacks the ability to care for himself.  As a result of this injury, he will require lifetime medical care and full-time supervision. He is unable to attend to his own safety and day-to-day medical needs.

9.      Movant filed a civil complaint (the "Complaint") against the Los Angeles Times in the Superior Court of California for Orange County on April 5, 2007 (the "Litigation").[2]  A true and correct copy of the Complaint is attached hereto as Exhibit A.

10.      On or about October 7, 2008, Movant reached a settlement of the Litigation with the Los Angeles Times upon conclusion of two days of mediation (the "Settlement Agreement").  Pursuant to the Settlement Agreement, the Debtor's commercial liability insurers, Zurich North America Insurance Company ("Zurich") and St. Paul Travelers Insurance Company ("St. Paul," and together with Zurich, the "Insurers"), are obligated to pay the Movant the total sum of $6 million (the "Settlement Funds")  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B.  The Settlement Agreement provides a full and complete release for the Los Angeles times by Movant.

11.      On or about January 28, 2009, Judge Randall Sherman of the Orange County Superior Court approved the terms of the Settlement Agreement.  A true and correct copy of the order approving the Settlement Agreement is attached hereto as Exhibit C (the "Settlement Order").

---

[2]      The Litigation also named, Tai Vo, a distributor of the Los Angeles Times newspaper, and Thomas Ngo, an employee of the Los Angeles Times, as defendants.  Movant reached a settlement with these other two defendants, which obligates Progressive Insurance Company and 21st Century Insurance Company, the defendants' respective insurers, to pay Movant a total sum of $1,050,000.  Movant submits that the terms of the settlement with these defendants are not germane to the relief requested by this Motion.

12.    The Settlement Agreement does not require that any payments be made directly from the Debtor's estate and no further action is required on behalf of the Debtor to effectuate the terms of the Settlement Agreement.

13.    The Debtor maintains separate insurance policies with Zurich (the "Zurich Insurance Policy") and St. Paul (the "St. Paul Insurance Policy") (collectively, the "Insurance Policies"). The Zurich Policy and St. Paul Policy will provide the Settlement Funds. The Zurich Insurance Policy has $3 million in coverage. Of that $3 million, there is a $1 million deductible amount which is to be paid by Zurich and is to be reimbursed by the Debtor. The St. Paul Insurance Policy has limits of $25 million in coverage. The St. Paul Insurance Policy will pay the second $3 million of the Settlement Funds.

14.    Both the Insurance Policies provide that the bankruptcy or insolvency of the insured does not relieve any obligations of the Insurers to satisfy outstanding claims. For example, Section IVB1 of the Zurich Insurance Policy specifically provides, under General Conditions: Bankruptcy, as follows:

> Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

Likewise, the St. Paul Insurance Policy sets forth, under Section VII, C, entitled Bankruptcy or Insolvency, as follows:

> 1.    The Insured's bankruptcy, insolvency or inability to pay, when the bankruptcy, insolvency or inability to pay of any issuer of Scheduled Underlying Insurance will not relieve us of our obligations under this policy.

True and correct copies of the relevant portions of the Insurance Policies are attached hereto as Exhibit D.

## RELIEF REQUESTED

15.    By this Motion, the Movant seeks entry of an order modifying the automatic stay to grant the Movant immediate authorization to receive a portion of the Settlement Funds pursuant to the Settlement Agreement.

16.    Movant is aware that in the context of a stay relief motion brought by a different personal injury claimant, the Debtors have alleged great prejudice to the Debtors' estates if the first $1 million of coverage, which is subject to the deductible obligation, is implicated.  In order to avoid such alleged prejudice at this present time, Mr. Van Senus is not seeking stay relief with respect to the first $1 million in coverage and is only seeking to collect the remaining $5 million of the Settlement Funds (the "Uncontested Proceeds") at this juncture.  Mr. Van Senus intends to file a subsequent motion with respect to the remaining $1 million of the Settlement Funds.  Mr. Van Senus expressly reserves all rights with respect to payment of the first $1 million of coverage and nothing in this Motion shall be construed as a waiver of any and all rights with respect thereto.

## BASIS FOR RELIEF REQUESTED

17.    Section 362(d) of the Bankruptcy Code provides for relief from stay as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2)    with respect to a stay of an act against property under subsection (a) of this section, if –

(A)    the debtor does not have an equity in such property; and

(B)    such property is not necessary to an effective reorganization.

5

11 U.S.C. § 362(d).

**Balancing of the Hardships Constitutes Cause to Lift the Stay.**

18.     Cause exists to lift the automatic stay to allow Movant access to the Uncontested

Proceeds. "Cause" is "a broad and flexible concept which permits a bankruptcy court, as a court of

equity, to respond to inherently fact-sensitive situations." In re Vankell, 311 B.R. 205, 215 (Bankr. E.D.

Tenn. 2004); In re Indian River Estates, Inc., 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) ("As used in §

362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court

of equity, to respond to inherently fact-sensitive situations."); In re Rexene Prods. Co., 141 B.R. 574,

576 (Bankr. D. Del. 1992).

19.     In order to establish cause for relief under section 362(d)(1), "the party seeking relief

from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its]

favor.' " Atl. Marine, Inc v. Am. Classic Voyages, Co. (In re American Classic Voyages, Co.), 298 B.R.

222, 225 (D. Del. 2003) (quoting In re FRG, 115 B.R. 72, 74 (E.D. Pa. 1990)); In re RNI WindDown

Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006).

20.     In considering whether to lift the automatic stay with respect to the personal injury

claimants, Delaware Bankruptcy Courts have considered the three criteria established by In re Rexene:

        1.      Whether there will be great prejudice to the estate or the debtor in

continuing the civil suit;

        2.      Whether the hardship to the creditor outweighs the hardship to the debtor

in maintaining the stay;

        3.      The probability that the creditor will prevail on the merits.

Rexene, 141 B.R. at 576.

21.     In accordance with these Rexene factors, cause exists for granting relief from stay

because the Mr. Van Senus is greatly prejudiced by delay in receiving an already liquidated settlement

6

whereas the Debtors' estate will not be prejudiced by allowing payment of the Uncontested Proceeds

from the Insurance Policies; and the Settlement Agreement conclusively establishes the merits of the

Litigation.

22.     First, the hardship that Movant will be forced to endure if the stay is not lifted wholly

outweighs the negligible hardship to the Debtors if the stay is maintained. The Movant and Mr. Van

Senus stand to endure tremendous hardship if the stay is not lifted and access to the Uncontested

Proceeds is not granted.

23.     As discussed above, Mr. Van Senus suffered a severe and physical disability as a result of

the accident and requires constant medical supervision and care. The costs of such extensive medical

treatment are exorbitant. The only money Mr. Van Senus has to pay for his lifelong medical needs are

the Uncontested Proceeds.

24.     In order to provide for Mr. Van Senus' medical care while awaiting disbursement of the

Uncontested Proceeds, Mr. Van Senus' mother – a woman of limited means – has been forced to borrow

and advance over $40,000. Clearly, Mr. Van Senus and his mother will face a severe hardship if

immediate access to the Uncontested Proceeds is not granted.

25.     The Settlement Proceeds are already subject to liens in excess of $450,000 (the "Provider

Liens"). The California Department of Healthcare Services has a lien for $137,277.51; Medical

Services for the Indigent has a lien for $40,308.88; and CCS, Mr. Van Senus' current provider has a lien

for $279,526.52 for past services.

26.     Indeed, CCS has intimated to Mr. Van Senus' counsel that they are unwilling to fund Mr.

Van Senus' care indefinitely and if he cannot come forth with payment soon, Mr. Van Senus will have

to be moved to another care facility; assuming that there exists a care facility that will accept Mr. Van

Senus without any available funds to pay for the facility. See e-mail from CCS dated March 6, 2009 and attached hereto at Exhibit E.

27.    Thus, between the Provider Liens, attorneys fees and reimbursement of the more than $500,000 in expenses advanced in connection with the Litigation, the proceeds Mr. Van Senus has already received from the other settling defendants are exhausted. Absent receipt of the Uncontested Proceeds, Mr. Van Senus has no money to pay for continuing medical care. Clearly, there is extensive hardship to Mr. Van Senus if relief from stay is not immediately granted.

28.    Second, no prejudice will result to the Debtors' estates in lifting the automatic stay. All claims are fully resolved pursuant to the Settlement Agreement. There is no litigation to continue. There is no further action required of the Debtors' estates to defend the Litigation. All that remains is for the Insurers to pay agreed upon, liquidated amounts – the Uncontested Proceeds – and requires no further action to be taken on the part of the Debtors.

29.    Thus, unlike all other unresolved personal injury claims, the Debtors will not expend any time or resources of the estate in defending the Litigation. There will be absolutely no costs at all to the Debtors estates if the automatic stay is lifted. Since the Litigation was settled prior to the Petition Date, lifting the stay will not hinder the administration of the Debtors' estates in the least. There is no prejudice to the Debtors in the payment of the Uncontested Proceeds by the Insurers.

30.    The Uncontested Proceeds should not be considered property of the Debtor's estate because the terms of the Settlement Agreement extinguish any right or interest of the Debtor to the Uncontested Proceeds. See First Fidelity Bank v. McAteer, 985 F.2d 114, 118-19 (3d Cir. 1993) (recognizing that a debtor's contractual right to an insurance policy is property of the estate while a third party's right to the proceeds of such insurance policy does not constitute property of the estate). "The estate in bankruptcy only includes property to which the debtor would have had a right if the debtor

8

were solvent." Id. at 117 (citing In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1401 (5th Cir. 1987)).

31.     Several courts have recognized that where the debtor does not have a cognizable interest in the proceeds of an insurance policy, then these policy proceeds do not constitute property of the estate. See e.g., Excelsior Insurance Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 353-54 (D.N.J. 1996) (finding that the proceeds of a liability insurance policy that were assigned by the debtor pursuant to a settlement agreement prior to the bankruptcy filing did not qualify as property of the estate under section 541); In re Edgeworth, 993 F.2d 51, 55 (5th Cir. 1993) (holding that proceeds of a Chapter 11 debtor's malpractice liability insurance were not property of the estate where debtor had no right or interest in such proceeds); Landry v. Exxon Pipeline Co., 260 B.R. 769, 783-90 (Bankr. M.D. La. 2001) (finding that proceeds of Chapter 11 debtor's general liability policies, which were payable only to third party claimants, were not included as property of the estate under section 541 of the Bankruptcy Code); In re Scott Wetzel Servs., Inc., 243 B.R. 802, 804-05 (Bankr. M.D. Fla. 1999) (holding that debtor did not possess interest in proceeds of liability insurance policy because the proceeds were payable only for the benefit of those harmed by the debtor pursuant to the policy); In re Florian, 233 B.R. 25, 26-27 (Bankr. D. Conn. 1999) (holding that proceeds of commercial liability insurance policy payable to third party were not property of the debtor's estate); Cardinal Casualty Co. v. Correct Mfg. Corp. (In re Correct Mfg. Corp.), 88 B.R. 158, 162 (Bankr. S.D. Ohio 1988) (holding that debtor's insurance contracts were property of the estate only to the extent of the debtor's legal title; the estate's interest did not encompass the right to receive the insurance proceeds). Cf. In re Kaiser Aluminum Corp., 343 B.R. 88, 94 (D. Del. 2006).

32.     The Movant's claim is distinctive in that the Uncontested Proceeds are not general proceeds of an insurance policy that may be used to satisfy numerous other personal injury claims. The

Debtors and the Insurers have already committed to payment of those amounts out of the Insurance Policies and thus are of no value to the Debtors in defending any other existing personal injury claims. Since the Uncontested Proceeds cannot be employed by the Debtors for any other use in the administration of their estates, payment of the Uncontested Proceeds will have no negative implications on the Debtors' bankruptcy proceedings.

33.     Furthermore, the Movant's claim is a fully liquidated claim against the Debtors' estates as a result of the Settlement Agreement and Settlement Order.  In contrast to all other unresolved personal injury claims, the amount of Movant's claim is established conclusively by the Settlement Agreement and Settlement Order and the Debtors need not –and are precluded from – taking any action to contest the amount or the status of the Movant's claim.  Since no further action is required on behalf of the Debtors, there is no cognizable hardship in granting relief from the automatic stay.

34.     As stated above, the Debtors' estates have absolutely no liability with respect to payment of the Uncontested Proceeds.  In essence, the lack of liability for payment of the Uncontested Proceeds renders the Movant's claim just a "number" relative to the Debtors' estates.  Since the assets of the Debtors' estates will not be diminished in the least by payment of the Uncontested Proceeds, maintaining the stay produces no hardship whatsoever to the Debtors.  There is simply no detriment to the Debtors' interests.  Indeed, payment of the Uncontested Proceeds is consistent with the exact purpose of the Debtors' obtaining such insurance agreements in the first instance.

35.     Furthermore, since the Litigation is no longer pending the Debtors will not be forced to expend one dollar toward defense costs of the Litigation.  Unlike other unresolved personal injury lawsuits, any defense costs related to the Litigation were capped prior to the Petition Date and cannot be considered a hardship to the Debtors' estates.  Similarly, since the Uncontested Proceeds do not include

10

the $1 million deductible obligation of the Debtors, any argument that the Debtors are prejudiced indirectly by collection from the Insurers is plainly inapposite.

36.     In short, because the Debtors are not required to expend any time or resources toward the Litigation and are not responsible for payment of one dollar of the Uncontested Proceeds, lifting the stay to allow payment of the Uncontested Proceeds is incapable of prejudicing the Debtors' interests.

37.     Therefore, upon a balancing of the relative hardships, it is evident that that Movant will be forced to endure significantly more injurious hardship than the Debtors if the relief from stay is not granted.

38.     With respect to the third and final factor, there is no debate as to the probability that Movant will prevail on the merits of the Litigation. While the Settlement Agreement does not establish the Debtor's liability with respect to the Litigation, it clearly demonstrates that Movant possesses a meritorious claim against the Debtor. Therefore, the third factor undoubtedly weighs in favor of lifting the stay to allow Movant access to the Uncontested Proceeds.

## NOTICE

39.     Notice of this Motion is being provided to: (I) the Office of the United States Trustee for the District of Delaware; (II)United States Securities and Exchange Commission; (III) Office of the United States Attorney for the District of Delaware; (IV) the Internal Revenue Service; (V) counsel for the Committee; (VI) administrative agent for the Debtors' prepetition loan facilities; (VII) administrative agent for the Debtors' post petition loan facility; (VIII) the indenture trustee for the Debtors' prepetition notes; and (IX) all parties required to receive service under Rule 2002-1(b) of the Local Rules.

## NO PRIOR REQUESTS

40.     The Movant has not previously sought the relief requested herein from this or any other Court.

11

WHEREFORE, the Movant request that this Court enter an order in the form attached to this Motion granting the Movant relief from the automatic stay to permit the Movant to receive payment of the Uncontested Proceeds.

Dated: March 7, 2009
     Wilmington, Delaware

**ELLIOTT GREENLEAF**

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Elliott Greenleaf
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 656-3714
Email:  rxza@elliottgreenleaf.com
Email:  nrl@elliottgreenleaf.com

and

CALLAHAN & BLAINE
Edward Susolik, Esquire
Sarah C. Serpa
3 Hutton Drive, Ninth Floor
Santa Ana, CA 92707
(714) 241-4444

*Counsel to Jon Van Senus, by and through his guardian ad litem, Neala Olson*

12

1142276 3 3/7/09