**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 9, 2009 at 10:00 a.m. EST**<br>**Objection Deadline: April 2, 2009 at 4:00 p.m. EST** |

# MOTION OF DEBTOR TRIBUNE COMPANY FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND 363(f) OF THE BANKRUPTCY CODE AUTHORIZING (I) ENTRY INTO A DIRECT LEASE WITH MOSBY, INC. OF CERTAIN REAL PROPERTY LOCATED IN MARYLAND HEIGHTS, MISSOURI AND (II) THE SALE OF THE PROPERTY TO SUMMIT WESTLINE INVESTORS, LLC

Tribune Company, one of the debtors and debtors in possession in the above-captioned chapter 11 cases ("Tribune" or the "Debtor" and collectively, with its affiliates that have commenced these chapter 11 cases, the "Debtors"), by and through its undersigned counsel,

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

hereby moves this Court (the "Motion") for the entry of an order pursuant to sections 105(a) and 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code") authorizing Tribune (i) to enter into a direct lease with its current sub-lessee, Mosby, Inc. (the "Direct Lease") attached hereto as Exhibit A, for a parcel of real property commonly known as 11830 Westline Industrial Drive, Maryland Heights, Missouri, (the "Westline Property") and, as part of the same overall transaction, (ii) to sell the Westline Property to Summit Westline Investors, L.L.C. (the "Purchaser") on such terms and conditions as set forth in the Purchase and Sale Agreement dated as of March 11, 2009 (the "Sale Agreement") attached hereto as Exhibit B, subject to the Direct Lease and free and clear of all other liens, claims and encumbrances. In support of this Motion, Tribune respectfully states the following:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). [Docket No. 43].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

6. The Westline Property is an office complex with three one-story buildings and one two-story building on a parcel of real estate covering approximately 10.29 acres. The Westline Property is located in an area that features similar office complexes, industrial buildings, and hotel properties. Historically, the Westline Property was leased by The Times Mirror Company from its affiliate, TMCT, LLC, and then subleased to a third-party tenant. The current tenant, Mosby, Inc. ("Mosby") has subleased the Westline Property since 1997 pursuant to a sublease agreement that expires in August 2009.

7. In June 2000, Tribune completed the acquisition of The Times Mirror Company and its seven daily newspapers, including the Los Angeles Times, the Baltimore Sun, and the Hartford Courant. As part of this transaction, Tribune obtained a purchase option on a portfolio of eight properties that were owned by TMCT, LLC, including the Westline Property, the headquarters for the Los Angeles Times, and the headquarters and printing facilities for the Baltimore Sun and the Hartford Courant. In April 2008, Tribune exercised its purchase option and acquired the portfolio of former TMCT, LLC properties. Neither Tribune nor any of the other Debtors have conducted any of their own business operations on the Westline Property, nor do any of the Debtors anticipate having any need to use the Westline Property directly in the future.

8. In light of those facts, Tribune began marketing the Westline Property in February 2008, in anticipation of a sale as soon as practicable after exercising its purchase option. Tribune listed the Westline Property with Gateway Commercial and Cushman & Wakefield, real estate brokers (the "Brokers"). The Brokers have actively and aggressively

marketed the Westline Property for over a year, sending marketing materials to nearly fifty potential purchasers and conducting fifteen property tours. Despite these efforts, Tribune only received three offers from prospective buyers, including that of the Purchaser. The first offer was received in April 2008 for $6.375 million, the second offer was received in August 2008 for $8 million but later withdrawn for lack of financing; and the Purchaser's initial offer for $8.1 million was received in September 2008. Accordingly, Tribune and the Purchaser have negotiated and executed the Sale Agreement setting forth the material terms of the parties' agreement for the sale of the Westline Property to the Purchaser.[2]

9. The Sale Agreement provides that the Purchaser will purchase the Westline Property for $7 million, paid in full in cash at the closing, subject to prorations and adjustments as provided for in the Sale Agreement. The difference between the Purchaser's initial offer and the final purchase price is attributable to the lost rental income stream of approximately $250,000 per month due to the delay of the original closing scheduled for December 2008. The Sale Agreement contemplates that closing will occur on or before fifteen days after (i) the expiration of the Purchaser's study period[3], or (ii) the Purchaser's written waiver of its rights to terminate the Sale Agreement, whichever is earlier (the "Closing Date"). (Sale Agreement ¶ 4.1.) In accordance with the terms of the Sale Agreement, the Purchaser has deposited the sum of $250,000.00 in earnest money into an escrow account to be applied to the purchase price on the Closing Date. (Sale Agreement ¶ 1.5.)

---

[2] The parties respectfully reserve their rights to make modifications to the Sale Agreement and the Direct Lease based upon the results of the Purchaser's due diligence study period, which modifications may be made in writing without further approval from this Court either before or after this Court's approval of the sale transaction contemplated herein, provided that such modifications are not material either individually or in the aggregate.

[3] The Sale Agreement provides that the Purchaser shall have forty-five days from the Effective Date of the Sale Agreement to inspect the Westline Property and conduct a review of all pertinent documents (the "Study Period"). The Study Period may be extended at Purchaser's election by one additional 30-day period. (See Sale Agreement ¶ 3.1.)

10. The parties' respective obligations under the Sale Agreement are conditioned upon Tribune's entry into a Direct Lease with Mosby. (Sale Agreement ¶ 3.4.) Currently, Tribune is the successor to The Times Mirror Company on both the lease and sublease of the Westline Property. When Tribune exercised its purchase option on the Westline Property, it also succeeded to TMCT, LLC's master lease, becoming lessor, lessee, and sublessor at once. To eliminate this convoluted structure and facilitate the sale of the Westline Property to the Purchaser, Tribune and Mosby will terminate their sublease agreement and enter into a new Direct Lease, to be assumed by the Purchaser upon the Closing Date.[4]

11. Tribune has determined that entering into the Direct Lease with Mosby and selling the Westline Property to the Purchaser, on the terms set forth in the Sale Agreement, is in the best interests of the Debtors and their estates. By this Motion, Tribune respectfully seeks entry of an order authorizing Tribune (i) to enter into the Direct Lease and (ii) to sell the Westline Property to the Purchaser subject to the Direct Lease and free and clear of all other liens, claims and encumbrances.

**BASIS FOR THE RELIEF REQUESTED**

12. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

---

[4] Tribune and Mosby are parties to a Lease Clarification Agreement, dated December 11, 2007, which provides that "At the option of Tribune and upon five (5) days advance written notice from Tribune to Mosby, Mosby agrees to enter into a direct lease with the then-current owner of the Premises ... Upon the execution of the Direct Lease between the owner of the Premises and Mosby, the Sublease shall terminate and Mosby and Tribune shall have no further liability to the other under the Sublease except with respect to liabilities that specifically survive the termination of the Sublease." (Lease Clarification Agreement ¶ 4.)

13. Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363).

14. Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

15. Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. See, e.g., In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). To impose more

exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1986).

### A. The Direct Lease Should Be Approved as a Proper Exercise of Tribune's Sound Business Judgment

16. Tribune has determined that it is in the best interests of the parties to clarify and simplify the Mosby lease prior to the Closing Date of the sale of the Westline Property to the Purchaser. Tribune and Mosby will terminate their existing sublease agreement and enter into a new Direct Lease on substantially the same terms, which will then be assigned to the Purchaser pursuant to the Sale Agreement. (See Direct Lease ¶¶ 1-2; Sale Agreement ¶ 1.1(c); Assignment and Assumption of Lease, Exhibit B to Sale Agreement).

17. The Direct Lease is the product of good faith, arms' length negotiations among the parties. Mosby is not affiliated with Tribune or any of the Debtors. The terms of the Direct Lease are substantially similar to the terms of the existing sublease and do not create any additional obligations for Tribune's bankruptcy estate. Given that there are no defaults under the prepetition sublease agreement, there are no potential claims that will arise from Tribune's termination of the sublease and entry into the postpetition Direct Lease. The assumption of the Direct Lease by the Purchaser releases Tribune from liability with respect to any ongoing obligations under the Direct Lease following the Closing Date. (See Assignment and Assumption of Lease, Exhibit B to Sale Agreement, ¶ 3) As such, none of Tribune's creditors will be prejudiced by Tribune's entry into the Direct Lease.

18. Further, the Sale Agreement is expressly conditioned on Tribune's entry into the Direct Lease. The Sale Agreement provides that "in the event that [Tribune] fails to

deliver to Purchaser a fully-executed copy of the [Direct] Lease at least one (1) business day prior to the Closing Date, then Purchaser may elect... as Purchaser's sole and exclusive remedy hereunder... to either (i) terminate this [Sale] Agreement and receive the return of the Earnest Money; or (ii) extend the Closing Date to August 10, 2009." (Sale Agreement ¶ 3.4.) If the Closing Date is delayed until August 10, the day after the existing sublease agreement expires, then the purchase price will be reduced according to the calculations set forth in the Sale Agreement. (Id.) Therefore, in order to preserve the value of the Sale Agreement for its bankruptcy estate, Tribune respectfully requests that this Court approve Tribune's termination of its existing sublease agreement and the entry into a new Direct Lease with Mosby.

**B. The Sale Should Be Approved as a Proper Exercise of Tribune's Sound Business Judgment**

19. There are substantial business justifications for selling the Westline Property to the Purchaser on the terms set forth in the Sale Agreement. First, the Westline Property provides limited, if any, value to the Debtors' business operations. Tribune does not anticipate utilizing the Westline Property as part of its business operations going forward. Indeed, Tribune maintained its leasehold rights to the Westline Property since acquiring The Times Mirror Company in June 2000 only so that it could one day exercise its purchase option to the entire portfolio, which included properties that add substantial value to the Debtors' ongoing businesses. The portfolio option was negotiated such that Tribune could not cherry-pick those properties it found most appealing; accordingly, as soon as Tribune determined that it would exercise its purchase option it took action to market the Westline Property for sale.

20. Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that "sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f). Tribune respectfully submits that approval of the sale of the Westline Property as a

private sale is appropriate under the circumstances. Tribune has actively marketed the property in a year that has been marked by unprecedented turmoil in the real estate and financial markets. During this time period, the Brokers actively reached out to reputable developers, brokers, and potential end users of the Westline Property and toured the property with fifteen potentially interested parties. Tribune received and reviewed only two other offers for the Westline Property, neither of which matched the purchase price and terms contained in the Purchaser's offer. Tribune is informed by its Brokers that the longer the Westline Property stays on the market, the more likely the selling price will decline as interest wanes and new properties become available. Thus, Tribune believes that further marketing efforts for public sale are unlikely to result in higher and better offers for the Westline Property and, as a result, that the Court should order that no other or further marketing process for the Westline Property is required and that the sale of the Westline Property may proceed by private sale to the Purchaser.

21. The Sale Agreement is the product of good faith, arms' length negotiations among the parties. The Purchaser is not affiliated with Tribune or any of the Debtors. As discussed above, the consideration to be paid by the Purchaser is fair and reasonable under the circumstances. Accordingly, Tribune requests that this Court find that the Purchaser a good faith purchaser under section 363(m) and that the sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.

22. The Sale Agreement and the Brokers' Exclusive Listing Agreement ("Listing Agreement", as amended, attached hereto as Exhibit C) provide that once the closing of the sale occurs, the Brokers will be compensated in an amount equal to two percent (2%). (Sale Agreement ¶ 8.1; Listing Agreement ¶ 5.) Tribune submits that in light of the substantial marketing efforts carried out by the Brokers during the past year, culminating in the successful

sale of the Westline Property to the Purchaser, such commission fee is reasonable and appropriate. The Listing Agreement also provides that certain advertising costs shall be borne by Tribune in connection with marketing the Westline Property for sale. (Listing Agreement ¶ 4.) Accordingly, Tribune seeks this Court's authorization to pay to the Brokers a 2% commission, plus any documented expenses reasonably incurred on Tribune's behalf in connection with marketing the Westline Property, from the sale proceeds upon closing.

23. The Debtors have provided extensive information concerning the proposed sale of the Westline Property to the financial advisors for the Official Committee of Unsecured Creditors and the Steering Committee of Tribune's prepetition lenders, and the Debtors understand that those constituencies do not object to the transactions proposed herein.

24. In light of the foregoing, Tribune respectfully submits that selling the Westline Property to the Purchaser on the terms set forth in the Sale Agreement is supported by Tribune's sound business judgment and is in the best interests of the Debtors' estates and creditors.

## C. <u>The Sale Should Be Approved Free and Clear of Liens, Claims and Encumbrances</u>

25. Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if "(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests, (2) the entity holding the lien, claim, interest or encumbrance consents to the proposed sale, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

26. Tribune seeks this Court's approval to sell the Westline Property to the Purchaser subject to the Direct Lease with Mosby and free and clear of all other existing liens, claims, and encumbrances. Upon closing, existing liens, claims and encumbrances (if any), will attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have against the Westline Property.

27. Accordingly, Tribune submits that the Westline Property may be sold free and clear of all liens, claims and encumbrances, including the interests of the Debtors' post-petition debtor in possession lenders, pursuant to section 363(f) of the Bankruptcy Code.

**NOTICE**

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agents for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition loan facility; (v) counsel to the Purchaser; (vi) counsel to Mosby; (vii) all other parties that offered to purchase the Westline Property; (viii) all parties that have asserted liens or claims on the Westline Property; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Tribune submits no other or further notice is necessary.

**NO PRIOR REQUEST**

29. Tribune has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, Tribune respectfully requests that the Court enter an order (i) authorizing Tribune to enter into the Direct Lease with Mosby; (ii) authorizing Tribune to sell the Westline Property to the Purchaser pursuant to the Sale Agreement and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
March 20, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: ______________________
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION