# **EXHIBIT A**

# **DIRECT LEASE**

LEASE AGREEMENT (ST. LOUIS)

BY AND BETWEEN

TRIBUNE COMPANY,

A DELAWARE CORPORATION,

AS LANDLORD

AND

MOSBY, INC.,

A MISSOURI CORPORATION,

AS TENANT

# TABLE OF CONTENTS

**Page**

1.  Termination of Sublease ...................................................................................... 1

2.  Lease .................................................................................................................... 1

3.  Use ....................................................................................................................... 2

4.  Term ..................................................................................................................... 2

5.  Rent. ..................................................................................................................... 2

6.  Maintenance and Repair ...................................................................................... 3

7.  Alterations and Additions .................................................................................... 3

8.  Liens ..................................................................................................................... 3

9.  Assignment and Subletting .................................................................................. 4

10. Exemption of Landlord from Liability ................................................................. 4

11. Triple Net Lease ................................................................................................... 4

12. Tenant's Environmental Representations and Indemnification of Landlord ...................... 4

13. Indemnification of Landlord ................................................................................ 6

14. Insurance .............................................................................................................. 7

15. Waiver of Subrogation ......................................................................................... 8

16. Utilities and Services ........................................................................................... 9

17. Real Property Taxes ............................................................................................. 9

18. Damage or Destruction ...................................................................................... 10

19. Condemnation .................................................................................................... 11

20. Default ................................................................................................................ 11

21. Remedies ............................................................................................................ 13

22. Interest on Past-Due Obligations ...................................................................... 14

23. Holding Over ..................................................................................................... 14

24. Quiet Enjoyment ................................................................................................ 15

25. Estoppel Certificate ........................................................................................... 15

26. Surrender of Premises ........................................................................................ 15

27. Notices ............................................................................................................... 15

28. [Intentionally Deleted] ...................................................................................... 16

29. Defined Terms and Headings ............................................................................. 16

30. Enforceability .................................................................................................... 16

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 31. | Brokers | 16 |
| 32. | Attorneys' Fees | 16 |
| 33. | Time | 16 |
| 34. | Successors and Assigns | 16 |
| 35. | Entire Agreement | 16 |
| 36. | Recordation | 17 |
| 37. | Exhibits | 17 |
| 38. | Covenants and Conditions | 17 |
| 39. | Survival | 17 |
| 40. | No Joint Venture | 17 |
| 41. | Calendar Days and Business Days | 17 |
| 42. | Subordination, Nondisturbance and Attornment | 17 |
| 43. | Counterparts | 17 |
| 44. | Waiver | 17 |
| 45. | Landlord's Access | 18 |
| 46. | [Intentionally Deleted] | 18 |
| 47. | Severability | 18 |
| 48. | Governing Law | 18 |
| 49. | Further Assurances | 18 |

<u>Exhibits</u>

Exhibit A – Legal Description

Exhibit B – Form of Memorandum of Lease

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made and entered into as of _____, 2009, by and between Tribune Company, a Delaware corporation ("Landlord"), and Mosby, Inc., a Missouri corporation ("Tenant").

## R E C I T A L S

WHEREAS, The Times Mirror Company (as tenant) and TMCT, LLC (as landlord) entered into that certain Lease Agreement, dated as of August 8, 1997, whereby The Times Mirror Company leased from TMCT, LLC, among other real property, that certain real property commonly known as 11830 Westline Industrial Drive, St. Louis, Missouri and more properly described on Exhibit A, attached hereto and made a part hereof (the "Premises"), which Lease Agreement was amended and restated in that certain Amended and Restated Lease Agreement, dated as of September 22, 2006, between Landlord, as successor in interest to The Times Mirror Company (as tenant) and TMCT, LLC (as landlord) (collectively with the Lease Agreement, as amended from time to time, the "Original Lease");

WHEREAS, Landlord, as successor in interest to The Times Mirror Company, and Tenant are parties to that certain Sublease Agreement, dated as of August 8, 1997, as amended by that certain First Amendment to Sublease Agreement dated as of March 27, 1998 (collectively, the "Sublease"), whereby the Tenant subleases from Landlord the Premises;

WHEREAS, Landlord purchased the Premises from TMCT, LLC pursuant to an option to purchase set forth in the Original Lease, and TMCT, LLC assigned to Landlord all of TMCT, LLC's right, title and interest as landlord in and to the Original Lease;

WHEREAS, Landlord is currently the sole owner of the Premises and the sublessor's interest in the Sublease; and

WHEREAS, Landlord and Tenant desire to terminate the Sublease effective as of the date hereof and desire to enter into a direct lease for the Premises and all improvements, fixtures, and equipment located thereon or attached to said real property.

NOW, THEREFORE, in consideration of the mutual covenants, agreements and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

## AGREEMENT

1.     Termination of Sublease.  The Sublease is terminated effective as of the date hereof and Landlord and Tenant shall have no further rights, liabilities or obligations under the Sublease, except with respect to those obligations or liabilities that specifically survive the termination of the Sublease.

2.     Lease.  Landlord leases to Tenant and Tenant leases from Landlord the Premises, together with all buildings, improvements, equipment and fixtures located on or attached to said real estate now or during the Term of this Lease, subject to the terms, covenants and conditions

set contained in this Lease. Tenant acknowledges that it or its subsidiaries have occupied the Premises for an extended period of time prior to the Commencement Date and Tenant agrees to lease the Premises on an "as is" and "with all faults" basis.

3.    Use. The Premises may be used by Tenant in the manner used by Tenant prior to the Commencement Date. The Premises may also be used by Tenant for any use permitted by applicable zoning and other applicable law, so long as any such new use does not reduce the fair market value of the Premises. Tenant shall not allow the Premises to be used for any unlawful purpose, nor shall Tenant cause or maintain or permit any nuisance in, on, or about the Premises. Tenant shall not commit or suffer the commission of any waste in, on, or about the Premises. Tenant shall comply with all governmental laws, ordinances, regulations, directives, covenants and restrictions of record as of August 8, 1997 or thereafter promulgated ("Regulations") applicable to the use and its occupancy of the Premises, and shall promptly comply with the Regulations for the prevention and abatement of any violations or nuisances in or upon, or connected with, the Premises, all at Tenant's sole expense. If, as a result of any change in the Regulations, the Premises must be altered to lawfully accommodate Tenant's use and occupancy, such alterations shall be made solely at Tenant's expense. Tenant shall not do or permit anything to be done on or about the Premises or bring or keep anything therein which will in any way jeopardize the coverage of insurance thereon.

4.    Term. The term (the "Term") of this Lease shall commence as of the date hereof (which shall be referred to herein as the "Commencement Date"), and shall end at midnight on August 7, 2009 (the "Termination Date"), unless sooner terminated as herein provided.

5.    Rent.

5.1    For the period beginning on the Commencement Date through and including the Termination Date, Tenant shall pay as rent (the "Rent") for the Premises: (i) the amount (the "Base Rent") each calendar month as provided in this Section 5, (ii) the cost of all utilities and services as set forth herein, (iii) the cost of insurance as set forth herein, as applicable and (iv) the cost of the Real Property Tax as set forth herein, as applicable. Each payment of Base Rent made pursuant to this Section 5 shall be made in advance on the first day of each calendar month. In the event that the Term commences on a day other than the first day of the month and Tenant has paid Base Rent for that entire month pursuant to the Sublease, Tenant shall not be required to pay any additional Base Rent under this Section 5 for that month. In the event that the Term ends on a date other than the first day of the month, the installment for any partial month shall be prorated on the basis of thirty (30) calendar days per month.

5.2    The Base Rent shall be paid in monthly installments as set forth herein, without deduction or offset, in such currency of the United States as at the time shall be legal tender for the payment of public and private debts, at such place as Landlord may designate from time to time.

5.3    The Base Rent payable by Tenant is Two Hundred and Fifty Thousand Nine Hundred and Forty Eight and 57/100 Dollars ($250,948.57) per month.

6.    <u>Maintenance and Repair</u>.  Tenant shall at all times keep in good condition and repair the Premises and every part thereof, structural and non-structural, including, without limiting the generality of the foregoing, all plumbing, heating, air conditioning, ventilating, electrical, lighting facilities and equipment within the Premises, fixtures, walls (interior and exterior), foundations, ceilings, roofs (interior and exterior), floors, windows, doors, plate glass and skylights located within the Premises, and all gardening, landscaping, driveways, parking lots, fences and signs located on the Premises and sidewalks and parkways adjacent to the Premises.  Notwithstanding the foregoing, Tenant shall have the rights specified in <u>Sections 7</u> and <u>18</u> below.  It is hereby understood and agreed that other than its obligations under <u>Section 18</u> below, Landlord has no other obligation to repair and maintain the Premises or any part thereof, all of which obligations are intended to be that of Tenant.  Tenant expressly waives to the extent permitted by law the benefit of any statute or other law or regulation now or hereafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition and repair.

7.    <u>Alterations and Additions</u>.  Tenant shall be permitted to make any alterations, improvements, additions, or installations ("<u>Improvements</u>") in, on or about the Premises; provided, however, that Tenant shall not make any of the following Improvements without the consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed: (i) any Improvement which will result in a modification to the footprint of any load bearing exterior wall of the Premises or any material portion thereof; (ii) any single project of which one or more Improvements is a part costing (including all costs that are capitalized according to GAAP standards) in excess of Fifteen Million Dollars ($15,000,000); (iii) any Improvement which will render the Premises unusable for the general purpose for which the Premises was used prior to the construction of such Improvement.  Tenant shall be responsible for payment of all governmental fees and costs imposed in connection with the Improvements and/or the use of the Premises by Tenant, and Landlord shall not have any obligation in that regard.  Tenant shall properly construct any and all Improvements in compliance with all applicable laws and shall not make Improvements which reduce the fair market value of the Premises.  Promptly after the completion of any Improvements, Tenant shall provide Landlord with as-built plans and specifications for such Improvements.  All Improvements which may be made on the Premises by Tenant or any subtenant shall be made in compliance with all applicable Regulations, and any such Improvements shall be the sole and exclusive property of Tenant during the Term of this Lease; provided that any such Improvements (other than Tenant's trade fixtures and personal property, which Tenant may elect to remove at the expiration or earlier termination of this Lease pursuant to <u>Section 26</u>) shall become the property of Landlord and remain upon and be surrendered with the Premises at the expiration or prior termination of the Lease.

8.    <u>Liens</u>.  Tenant shall keep the Premises and Tenant's interest in the Premises free from any liens arising out of any work performed, materials furnished, or obligations incurred by Tenant.  In the event that Tenant shall not, within thirty (30) days following the imposition of any such lien, cause the same to be released of record by payment or posting of a proper bond, Landlord shall have, in addition to all other remedies provided herein and by law, the right, but not the obligation, to cause the same to be released by such means as it shall deem proper, including payment of the claim giving rise to such lien.  All such sums paid by Landlord and all expenses, including attorneys' fees, incurred by it in connection therewith shall be payable to

Landlord by Tenant on demand.  If Tenant shall, in good faith, contest the validity of any such lien, then Tenant shall, after prior written notice to Landlord, at its sole cost and expense, defend itself and Landlord against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof against Landlord or the Premises, provided that (i) neither the Premises nor any part thereof would be in any danger of being sold, forfeited, lost or interfered with, and (ii) Tenant shall furnish to Landlord a surety bond in form and from a surety reasonably satisfactory to Landlord in an amount equal to one hundred fifty percent (150%) of such contested lien indemnifying Landlord against liability for the same and holding the Premises free from the effect of such lien.

    9.    <u>Assignment and Subletting</u>.

    Tenant may not assign, sublet, mortgage, hypothecate or otherwise encumber its interest in this Lease or the Premises without the written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion.  However, Tenant shall have the right, without the consent of Landlord but upon ten (10) days prior written notice to Landlord, to assign this Lease to: (i) any corporation or other business entity that succeeds to the business of Tenant or Reed Elsevier Inc. as a result of a merger, consolidation, sale of assets, or other business reorganization; or (ii) any entity owned or controlled by Tenant or Reed Elsevier Inc. or under common ownership and control with Tenant or Reed Elsevier Inc. and any entity owned or controlled by Tenant or under common ownership and control by any such entities; or (iii) to a Business Division Successor (any such entity described in clauses (i), (ii) and (iii) is hereinafter referred to as an "<u>Affiliate</u>").  The terms "common ownership and control" mean ownership of at least fifty (50%) percent of the equity and voting or other decision making power for effecting the management and policy making decisions of the entity.  The term "Business Division Successor" means an entity that purchases or otherwise succeeds to the ownership or control of a bona-fide business division or subsidiary of Reed Elsevier Inc.  Tenant shall be permitted, without the consent of Landlord, to grant a license with respect to the Premises to any entity or individual providing services to Tenant. Notwithstanding the foregoing or anything to the contrary in this Lease,

    (I) any transfer under the foregoing subsections (i), (ii) or (iii) of this Section 9 shall be subject to the following conditions: (a) Tenant will not be released from its obligations under this Lease and will remain liable hereunder and (b) the transferee will execute an assignment and assumption agreement in a form reasonably satisfactory to Landlord whereby transferee will assume all of Tenant's obligations under this lease; and

    (II)    as an absolute condition precedent to any such transfer, without the satisfaction of which such transfer would be deemed null and void, the tangible net worth of such transferee and Tenant, in total, subsequent to such assignment shall be greater than or equal to the tangible net worth of Tenant immediately prior to such transfer.

    10.    <u>Exemption of Landlord from Liability</u>.  Landlord shall not be liable to Tenant and Tenant hereby assumes all risks and waives all claims against Landlord for any damage to any property or any injury to or death of any person in or about the Premises by or from any cause

whatsoever arising at any time, and without limiting the generality of the foregoing, whether caused by fire, steam, electricity, gas, water, or rain, or from the breakage, leakage, obstruction or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Tenant.    Landlord shall not-be liable or responsible for any loss or damage to any property or person occasioned by theft, fire, act of God, acts of third parties, public enemy, injunction, riot, strike, insurrection, war, court order, requisition or order of governmental body or authority, or other matter beyond the control of Landlord.    In further explanation of and not in limitation of the foregoing provisions of this Section 10, Landlord shall only remain liable for any damage to any property or any injury to or death of any person in or about the Premises which may result from the active negligence or willful acts or omissions of Landlord, or its agents, or employees or contractors.

11.    Triple Net Lease.  This Lease is intended to be a "triple net" lease and it should be interpreted accordingly.

12.    Tenant's Environmental Representations and Indemnification of Landlord. Tenant hereby agrees that:

12.1    Tenant acknowledges that it has occupied the Premises for an extended period of time prior to the Commencement Date.  Accordingly, it is Tenant's obligation at its sole cost and expense to comply with any and all Environmental Laws with respect to Hazardous Substances, including those existing on the Premises on or prior to the Commencement Date during Tenant's occupancy of the Premises and whether or not such is currently known.  Such obligation, and any liability that Tenant may have for any breach thereof, shall survive the termination or expiration of this Lease.

12.2    In the event Tenant discovers or determines the existence on the Premises of any condition resulting from Hazardous Substances that were disposed, discharged, leaked, handled or otherwise present on the Premises during Tenant's occupancy of the Premises, the presence of which may require investigation, removal or remedial action pursuant to any law, Environmental Law or may be the basis for the assertion of any third party claims, including claims of governmental entities, Tenant shall promptly notify Landlord thereof and Tenant shall, at its sole cost and expense, proceed with all due diligence as may be required by applicable Environmental Laws with respect to Hazardous Substances (including those existing prior to the Commencement Date).  In the event that Tenant fails to proceed with due diligence, Landlord may, at its option, proceed to take the appropriate action and shall be reimbursed by Tenant therefor.

12.3    Any Hazardous Substances used by Tenant or its agents, employees, contractors, subtenants, assignees and invitees on, in, or about the Premises will be contained, treated, stored, used and disposed of in a safe manner and in accordance with all Environmental Laws.

12.4    Tenant will use, keep and maintain the Premises in compliance with, and shall not cause or permit the Premises to be in violation of, any Environmental Laws.

12.5   Neither Tenant nor its agents, employees, contractors, subtenants, assignees and invitees will use the Premises in a manner which causes any Hazardous Substance to be deposited, and will not deposit any Hazardous Substance, except in compliance with Environmental Laws, into the atmosphere, into the soil or into the ground water of the Premises. If Tenant or its agents, employees, contractors, subtenants, assignees or invitees shall cause or permit a "release," as such term is defined in the Environmental Laws, unless the release occurs after termination of the Lease, or from off-site, Tenant, upon actual knowledge thereof, will promptly notify Landlord in writing of such release and begin investigation and remediation of such release and complete such remediation at Tenant's own cost and expense as required by the Environmental Laws.

12.6   Tenant shall indemnify, defend and hold harmless Landlord, its officers, directors, employees, shareholders, affiliates, successors and assigns (the "Indemnitees") against any and all damages, claims (including without limitation, third party claims of personal injury or real or personal property damages), costs, losses (including losses of value and income), legal, accounting, actions, causes of action, consulting, engineering, investigation, remediation and removal costs, and other expenses whether at law, in equity, or administrative (including without limitation attorneys' fees and court costs) (hereinafter collectively referred to as "Claims"), which may be imposed upon, incurred by or asserted against any of the Indemnitees by any other party or parties, including without limitation a governmental entity, arising out of or in connection with the breach by Tenant of Tenant's covenants in this Section 12.  This obligation by Tenant to indemnify, defend, and hold harmless the Landlord includes, without limitation, costs incurred by the Indemnitees for or in connection with any investigation of site conditions or any cleanup, remedial, monitoring, restoration or closure work required by any federal, state, or local governmental agency or political subdivision, or any third party action, because of any Hazardous Substances present in the soil, air, surface or ground water, on, under, or about the Premises, including, without limitation, any sums paid in settlement of claims, penalties, attorneys' fees, court costs, consultant and laboratory fees, as a result of Tenant's and its agents', employees', contractors', subtenants', assignees' and invitees' activities on or in connection with the Premises, but excluding that portion of any damages to the extent caused by Indemnitees or any of their respective agents.

12.7   Promptly upon becoming aware of any matter described above to which the indemnity applies, Landlord shall provide Tenant with notice of the same provided that any delay in providing such notice shall not impair the indemnity hereunder unless the delay actually causes prejudice to the Tenant, and the Indemnitees shall reasonably cooperate with Tenant in the defense of the matter.  Tenant's obligations pursuant to the indemnity in Subsection 12.6 above shall survive the termination or expiration of this Lease.

12.8   As used herein, the term "Hazardous Substances" shall mean all hazardous substances, hazardous wastes, hazardous materials, toxic materials, or toxic substances and any other substances, including asbestos, petroleum and its by-products, the remediation, disposal, storage, production, or use of which is regulated by federal, state or local laws, ordinances, regulations, permit conditions, administrative orders and

similar requirements pertaining to health, safety and the environment, including, but not limited to, substances listed under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq.; the Hazardous Materials Transportation Act, 42 U.S.C. § 1801 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq.; the Clean Water Act, 33 U.S.C. § 1251 et seq.; the Safe Drinking Water Act, 42 U.S.C. § 300f et seq. the Clean Air Act, 42 U.S.C. § 7401 et seq.; the California Hazardous Waste Control Law, Cal. Health and Safety Code § 25100 et seq.; and the Porter-Cologne Water Quality Control Act, Cal. Water Code § 13000 et seq., as each may be amended from time to time (herein referred to as "Environmental Laws").

13.    Indemnification of Landlord.  Tenant shall defend, indemnify and hold Landlord harmless from any and all claims, demands, judgments, damages, liabilities, costs, expenses and losses, including attorneys' fees and court costs, arising from Tenant's use of the Premises or use of the Premises by any party holding under Tenant, or from the conduct of Tenant's business, or from the conduct of the business of any party holding under Tenant, or from any activity, work or things done in or about the Premises except to the extent caused by the active negligence or willful misconduct of Landlord.  Tenant further agrees to defend, indemnify and hold Landlord harmless from any and all claims, demands, judgments, damages, liabilities, costs, expenses and losses arising from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Lease. If any action or proceeding is brought against Landlord by reason of any such matters, Tenant agrees to defend such action or proceeding at Tenant's sole expense by counsel reasonably satisfactory to Landlord.  If Landlord receives insurance proceeds with respect to any claim or loss for which it is insured pursuant to the terms of this Lease, Tenant shall reduce its payment to Landlord pursuant to this Section 13 to the extent of such proceeds.  The provisions of this Section 13 shall survive the expiration or prior termination of this Lease with respect to any claims or liability relating to matters occurring after the Commencement Date and prior to such expiration or termination.

14.    Insurance.

14.1    Tenant shall, at Tenant's expense, obtain and keep in force during the entire term of this Lease a Comprehensive General Liability policy (including Premises Liability and Contractual Liability, Occurrence form) insuring Landlord and Tenant against covered liability arising out of the Premises or its use, occupancy or maintenance, including all areas appurtenant thereto.  Such insurance shall name Landlord as an additional insured and shall provide coverage in limits of at least $5,000,000 combined single limit for bodily injury or death to any one person, $5,000,000 for bodily injury or death to any number of persons in respect of any one accident or occurrence and $1,000,000 for property damage in respect of one accident or occurrence.  Tenant may maintain up to a $2,000,000 deductible on the insurance required in this Subsection 14.1. The insurance coverage limits required under this Section 14.1 shall be increased every three years to reflect any increases in the Consumer Price Index for All Urban Consumers U.S. City Average, All Items (base years 1982-84 = 100), published by the United States Department of Labor, Bureau of Labor Statistics.

14.2    Tenant shall, at Tenant's expense, obtain and keep in force during the entire term of this Lease a policy of insurance covering loss or damage to all improvements, fixtures and equipment located upon or affixed to the Premises, including, without limitation, walls (interior and exterior), foundations, ceilings, roofs (interior and exterior), floors, windows, doors, plate glass and skylights located within the Premises, all plumbing, electrical, elevator and lighting facilities and equipment in, on or about the Premises, all landscaping, driveways, parking lots, fences and signs located on the Premises and sidewalks and parkways adjacent to the Premises, and any personal property or fixtures of Tenant located on or affixed to the Premises, in the amount of the full replacement value thereof, as the same may exist from time to time, against (i) all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry), and (ii) flooding. Said insurance shall name Landlord as loss payee and shall provide for payment of loss thereunder to Landlord and Tenant as their interests may appear. Tenant may maintain up to a $500,000 deductible on the insurance required in this Subsection 14.2.

14.3    Tenant shall, at Tenant's expense, obtain and keep in force during the entire term of the Lease a policy or policies of boiler and machinery insurance, if applicable, in an amount not less than one hundred percent (100%) of the actual replacement value thereof (including the cost of debris removal but excluding foundations and excavations and land).

14.4    Tenant may self-insure for the insurance required in Subsections 14.1, 14.2 and 14.3 in an aggregate amount not to exceed five percent (5%) of Tenant's tangible net worth (as determined by certified financial statements not more than twelve (12) months old) upon providing notice to Landlord and Tenant shall, to the extent self-insured, be responsible for all amounts which would have been payable by an insurer if Tenant had not elected to self-insure.  All deductibles shall be considered self-insurance and shall be subject to all provisions in this Lease governing insurance coverage, including any provisions concerning a waiver of subrogation.

14.5    Tenant shall, at Tenant's expense, obtain and keep in force during the entire term of the Lease a policy or policies of Workers' Compensation Insurance, including Employers' Liability Insurance, or qualified self-insurance, which is in full compliance with the applicable Workers' Compensation or similar laws.

14.6    Tenant shall deliver to Landlord certificates evidencing the existence and amounts of such insurance, with loss payable clauses as required by this Section 14.  No such policy shall be cancelable or subject to reduction of coverage or other modification except after thirty (30) days' prior written notice to Landlord.  Tenant shall, at least thirty (30) days prior to the expiration of such policies, furnish Landlord with renewals or "binders" thereof, or if Tenant fails to furnish such renewals, then Landlord may, upon ten days written notice to Tenant, order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand.

14.7    Tenant shall not carry concurrent insurance insuring against the risks against which insurance is required hereunder unless such concurrent insurance satisfies all of the requirements for Tenant's insurance set forth in this Lease (including but not limited to naming Landlord as an additional insured).

14.8    So long as there exists a sublessee of any portion of the Premises which is required, by the terms of its sublease, to carry insurance which is no less comprehensive than that described above, and which names Landlord as an additional insured thereon or loss payee thereof, as the case may be, then Tenant shall have no obligation during the term of such sublease to carry the insurance required hereunder with respect to such portion of the Premises as long as such sublessee actually maintains such required insurance.

14.9    At Landlord's sole option, Landlord may elect to obtain all insurance set forth in this Section 14.9.  In the event that Landlord so elects, the cost of such insurance to Landlord shall be included in Base Rent, as set forth in Section 5 hereof.

15.    Waiver of Subrogation.  Except as otherwise provided in this Lease, to the extent they receive payment for any loss or damage arising out of or incident to perils occurring in, on or about the Premises, Tenant and Landlord each hereby release and relieve the other, and waive their entire right of recovery against the other for such loss or damage, whether due to the negligence of Landlord or Tenant or their agents, employees, contractors and/or invitees, but only to the extent permitted by the parties' insurance carriers.  Tenant and Landlord shall use their best efforts to obtain waiver of subrogation endorsements from such carrier or carriers.

16.    Utilities and Services.  Tenant shall, during the entire term of this Lease, procure and pay for all utilities and services supplied to the Premises, including but not limited to water, gas, heat, light, power, telephone, security, and janitorial services, together with any taxes thereon.

17.    Real Property Taxes.  Tenant shall pay directly to each County Tax Collector, or other appropriate assessing authority, as it becomes due and not less than ten (10) days before delinquency, the amount of the Real Property Tax, as defined in Subsection 17.1, applicable to the Premises during the term of this Lease.  Notwithstanding the foregoing, Tenant shall have no obligation to pay for the Real Property Taxes due for the period prior to the Commencement Date, even if those Real Property Taxes are not assessed until after the Commencement Date, except where such Real Property Taxes accrued during the Sublease Term.  Further, Tenant shall have no obligation to pay any penalties or interest assessed with respect to the Premises for a period prior to the Commencement Date, even if such penalties or interest are not assessed until after the Commencement Date.  If any Real Property Taxes constituting assessments are, at the election of the taxpayer, payable in installments, Landlord shall make an election to make such payments in installments and Tenant shall be responsible for the payment of the installments of such Real Property Taxes as shall be due and payable during the term of this Lease.

17.1    As used herein, "Real Property Tax" shall mean any form of real estate tax or assessment, general, special, ordinary or extraordinary, and any license fee, commercial rental tax, improvement bond or bonds, levy or tax (other than inheritance,

personal income or estate taxes) imposed on the Premises by any authority having the direct or indirect power to tax, including any city, state or federal government or any school, agricultural, sanitary, fire, street, drainage or other improvement district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part, as against Landlord's right to rent or other income therefrom, and as against Landlord's business of leasing the Premises, including any tax, fee, levy, assessment or charge (i) in substitution of, partially or totally, any tax, fee, levy, assessment or charge hereinabove included, (ii) the nature of which was hereinbefore included within this definition, or (iii) which is imposed by reason of this lease transaction, any modifications or changes hereto, or any transfers hereof.

17.2    During the term of this Lease, Tenant shall reimburse to Landlord, upon presentation of a written invoice therefor, any and all taxes payable by Landlord (other than net income taxes) whether or not now customary or within the contemplation of the parties hereto: (i) upon, allocable to, or measured by or on the gross or net rent payable hereunder, including without limitation any gross income tax or excise tax levied by any State, any political subdivision thereof, or the Federal Government with respect to the receipt of such rent; or (ii) upon or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Tenant of the Premises or any portion thereof; or (iii) upon or measured by the Tenant's gross receipts or payroll or the value of Tenant's equipment, furniture, fixtures, and other personal property of Tenant or leasehold improvements, alterations, additions, located in the Premises.

17.3    Tenant shall pay prior to delinquency all taxes assessed against and levied upon trade fixtures, furnishings, equipment and all other personal property of Tenant contained in the Premises or elsewhere.  Tenant shall cause such trade fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Landlord.  If any of Tenant's said personal property shall be assessed with Landlord's real property, Tenant shall pay Landlord the taxes attributable to Tenant within ten (10) days after receipt of a written statement setting forth the taxes applicable to Tenant's property.

17.4    Tenant may contest the imposition of any taxes, including without limitation, the current assessment, and if required by law, Landlord shall join in any such proceedings brought by Tenant.  However, Tenant shall pay the costs and fees of the proceedings.  Upon the final determination of any proceeding or contest, Tenant shall pay the taxes due, together with all costs, charges, interest and penalties incidental to the proceedings if Tenant does not pay the taxes when due and contests such taxes.  Tenant shall not be in default under the Lease for nonpayment of such taxes so long as the taxes are paid under protest if such payment under protest is necessary to prevent the property from being sold under a "tax sale" or similar enforcement proceeding.

18.    Damage or Destruction.

18.1    In the event that the Premises is damaged or destroyed, then Tenant shall repair or rebuild such structure to substantially the condition in which it was immediately

prior to the casualty, but in no event shall Tenant be required to repair or rebuild non-functional or decorative items (e.g., statues).

18.2    Tenant shall commence to rebuild or repair the Premises promptly after such damage or destruction, provided that all permits required for such work have been obtained at the time necessary with the Tenant using reasonable diligence to obtain such permits, and shall proceed with diligence to complete the restoration.  If Tenant is not able to obtain permits to restore the Premises as required hereunder, then Tenant shall repair or rebuild the Premises as required hereunder to the maximum extent to which it can obtain permits to do so.  Tenant shall not have the right to terminate this Lease as the result of any damage to or destruction of the Premises, and Tenant hereby waives the right to do so under any applicable statute, code, case law or other legal doctrine. This Lease shall remain in full force and effect, and Tenant shall be entitled to an equitable abatement of the Rent during the time and to the extent any portion of the Premises is unfit for occupancy; provided, however, that the amount of such abatement shall not exceed the amount of loss of rents or business interruption insurance proceeds, if any, payable to Landlord by reason of such damage or destruction. In the event Tenant is obligated to rebuild the Premises pursuant to this Section 18, then all insurance proceeds arising out of insurance coverage procured by Landlord (other than loss of rents insurance or business interruption insurance), if any, shall be made available to Tenant to pay for the cost of such repair, rebuilding or restoration.  Notwithstanding the foregoing, Landlord may, at Landlord's sole option, inform Tenant, following such damage or destruction but prior to the commencement of such repairs or rebuilding, of its desire to terminate this Lease.  If Landlord so elects to terminate, Tenant shall immediately remit all insurance proceeds arising out of insurance coverage procured by Tenant to Landlord and this Lease shall terminate on the day that is ten (10) business days following Tenant's receipt of Landlord's notice of is election to terminate.  Upon such termination of this Lease, Landlord and Tenant shall have no further rights or obligations hereunder, except under such provisions of this Lease that, by their terms, expressly survive the expiration or termination of this Lease.

19.    Condemnation.

19.1    In the event that all or any portion of the Premises shall be lawfully condemned or taken in any manner for any public or quasi-public use, or conveyed by Landlord in lieu thereof (a "Taking"), Tenant may require that Landlord rebuild or repair the portion of the Premises taken so that the same will be in substantially the same condition it was prior to the Taking.  Notwithstanding the foregoing, Landlord shall only be obligated to rebuild or restore the portion of the Premises subject to the Taking to the extent of the award Landlord receives for such Taking pursuant to Section 19.2.

19.2    Upon a permanent Taking, Landlord and Tenant shall be entitled to the following portions of the award (less the costs and fees incurred in the collection thereof) in no order of priority:

(a)    To Tenant, an amount equal to the fair market value of its personal property and fixtures that it is entitled to remove at the expiration or earlier termination of this Lease and that are condemned as part of the Taking;

(b)    To Tenant, an amount equal to the damages Tenant suffers as a result of the interruption of its business from the Taking; and

(c)    To Landlord, the balance of the award.

In no event shall Tenant be entitled to any award for the value of its leasehold interest. If Landlord and Tenant are not able to obtain separate awards from the condemning authority for the above amounts, then such amounts shall be determined by the mutual agreement of the parties, or if the parties are unable to agree, then by binding arbitration in accordance with the rules of the American Arbitration Association then in effect.

19.3    In the event of a permanent Taking, the Rent shall be equitably abated in proportion to the Base Rent fairly allocable to the part of the Premises so taken, and Landlord shall be obligated to restore the Premises only to the extent of any severance damages received as part of the condemnation award. The amount of the abatement shall be determined by the mutual agreement of the parties, or if the parties are unable to agree, then by binding arbitration in accordance with the rules of the American Arbitration Association then in effect.

19.4    No temporary Taking of the Premises and/or of Tenant's rights therein or under this Lease shall terminate this Lease or give Tenant any right to abatement of Rent hereunder. Any award made to Tenant by reason of any such temporary Taking shall belong entirely to Tenant and Landlord shall not be entitled to share therein.

20.    Default.

20.1    The following events shall be deemed to be events of default by Tenant under this Lease:

(a)    Tenant shall fail to make any payment of Rent or any other payment required to be made by Tenant hereunder, as and when due, and such failure shall continue for a period of five (5) business days after receiving written notice of said failure; or

(b)    Tenant shall fail to comply with any term, provision or covenant of this Lease other than a default pursuant to Subsection (a) of this Section, and shall not cure such failure within thirty (30) days of receiving written notice of such failure; provided, however, that if the default cannot reasonably be cured within such 30-day period, including by reason of having to regain possession of the Premises from a sublessee, Tenant shall not be in default of this Lease if Tenant shall commence to cure the default, including commencing an action to regain possession of the Premises, within said 30-day period and diligently continues to prosecute the cure; or

(c)     The leasehold interest of Tenant shall be levied upon under execution or be attached by process of law or Tenant shall fail to contest diligently the validity of any lien or claimed lien and give sufficient security to Landlord to insure payment thereof or shall fail to satisfy any judgment rendered thereon and have the same released, and such default shall continue for thirty (30) days after written notice thereof to Tenant; or

(d)     Tenant shall become insolvent, admit in writing its inability to pay its debts generally as they become due, file a petition in bankruptcy or a petition to take advantage of any insolvency statute, make an assignment for the benefit of creditors, make a transfer in fraud of creditors, apply for or consent to the appointment of a receiver of itself or of the whole or any substantial part of its property, or file a petition or answer seeking reorganization or arrangement under the federal or any state bankruptcy laws, as now in effect or hereafter amended, or any other applicable law or statute of the United States or any state thereof, or have filed against it a case or proceeding under any such law or statute which is consented to or acquiesced in by Tenant, results in the entry of an order for relief, or remains undismissed for ninety (90) days; or

(e)     A court of competent jurisdiction shall enter an order, judgment or decree adjudicating Tenant a bankrupt, or appointing a receiver of Tenant, or of the whole or any substantial part of its property, without the consent of Tenant, or approving a petition filed against Tenant seeking reorganization or arrangement of Tenant under the bankruptcy laws of the United States, or any state thereof, as now in effect or hereafter amended, and such order, judgment or decree shall not be vacated or set aside or stayed within ninety (90) days from the date of entry thereof.

20.2    Landlord's failure to perform any of its obligations under this Lease shall constitute a default by Landlord under the Lease if the failure shall continue for thirty (30) days after written notice of the failure from Tenant to Landlord.  If the required performance cannot be completed within thirty (30) days, Landlord's failure to perform shall constitute a default under the Lease unless Landlord undertakes to cure the failure within thirty (30) days and diligently prosecutes the cure to completion as soon as reasonably possible.

21.    Remedies.

21.1    In case of an event of default by Tenant hereunder (as defined in Section 20), Landlord shall not terminate this Lease unless such default is not cured as provided herein and is a "material default." For purposes of this Lease, a "material default" shall mean (i) a default described in Subsection 20.1(a), (ii) the failure to carry insurance required hereunder to be carried by Tenant, (iii) the failure to repair or maintain the Premises as required under the Lease, (iv) a default described in Subsection 20.1(b-e) that is likely to result in a cost, loss of value or liability to Landlord of five million dollars ($5,000,000) or more, or (v) a material incurable default.  In circumstances where Landlord has no right to terminate this Lease or where Landlord chooses not to terminate

this Lease, Landlord shall have all other remedies available at law or in equity, including the right to sue for rent as it comes due and the right to obtain damages from Tenant for breach of contract.

21.2    Upon the occurrence of any material default (as defined in <u>Subsection 21.1</u>), Landlord shall have, in addition to any other remedies available to Landlord at law or in equity, the option to terminate this Lease by written notice thereof to Tenant, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying the Premises or any part thereof in accordance with applicable state law, without being liable for prosecution or any claim or damages therefor; and Landlord may recover from Tenant the following:

(a)    The worth at the time of award of any unpaid Rent which has been earned at the time of such termination (as used in this subparagraph (a) and (b) of this <u>Section 21</u>, the "worth at the time of award" shall be computed by allowing interest from the date the sums became due at the lesser of (i) the 30-day LIBOR rate (as published in the Wall Street Journal) plus 600 basis points (the "<u>Default Interest Rate</u>"), or (ii) the maximum rate permitted by law); plus

(b)    The worth at the time of award of the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided; plus

(c)    The worth at the time of award of the amount by which the unpaid Rent for the balance of the Term after the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided (as used in this subparagraph (c), the "worth at the time of award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus 1%); plus

(d)    Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, specifically including, but not limited to, attorneys' fees and court costs, brokerage commissions and advertising expenses incurred; and

(e)    At Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable law.

21.3    Upon a default of Tenant hereunder, Landlord, upon ten (10) days written notice, may cure such default of Tenant and Tenant shall, immediately upon demand, reimburse Landlord for any and all reasonable expenses incurred by Landlord to cure such default.

21.4    No act by Landlord shall terminate this Lease other than the written notice specified above.  No waiver by Landlord of any violation or breach of any of the terms, provisions and covenants herein contained shall be deemed or construed to constitute a waiver of any other or later violation or breach of the same or any other of the terms, provisions, and covenants herein contained.  Delay by Landlord in enforcement of one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default.  The acceptance of any Rent hereunder by Landlord following the occurrence of any default, whether or not known to Landlord, shall not be deemed a waiver of any such default, except only a default in the payment of the Rent so accepted.

21.5    Tenant waives any right to terminate this Lease or to withhold Rent on Landlord's default under this Lease.

22.    <u>Interest on Past-Due Obligations</u>.   Except as expressly provided herein, any amount due to Landlord which is not paid when due shall bear interest at the Default Interest Rate (as defined in <u>Section 21.2(a)</u>), but in no event greater than the maximum amount permitted to be contracted for under applicable law.  Payment of such interest shall not excuse or cure any default by Tenant under this Lease.

23.    <u>Holding Over</u>.  Tenant shall pay Landlord for each day Tenant retains possession of the Premises or part thereof after termination hereof by lapse of time or otherwise the Rent prorated on a daily basis and all damages and expenses sustained by Landlord by reason of such retention as provided in this Lease.  Tenant hereby indemnifies and holds Landlord harmless from any loss or liability resulting from such holding over and delay in surrender.  If Landlord gives notice to Tenant of Landlord's election thereof, such holding over shall constitute renewal of this Lease for a period of time from month-to-month at One Hundred Twenty Percent (120%) of the Base Rent, but if the Landlord does not so elect, acceptance by Landlord of rent after such termination shall not constitute a renewal.   This provision shall not be deemed to waive Landlord's right of reentry or any other right hereunder or at law.

24.    <u>Quiet Enjoyment</u>.  Landlord represents and warrants that it has full right and authority to enter into this Lease and that Tenant, while paying the rental and performing its other covenants and agreements herein set forth, shall peaceably and quietly have, hold and enjoy the Premises for the Term without interference from Landlord subject to the terms and provisions of this Lease.  Landlord shall not be liable for any interference or disturbance by third persons, nor shall Tenant be released from any of the obligations of this Lease because of such interference or disturbance.

25.    <u>Estoppel Certificate</u>.  Each party to this Lease will from time to time as requested by the other party, on not less than ten (10) days prior written notice, execute, acknowledge and deliver to the other party a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications that this Lease is in full force and effect as modified and stating the modifications).  That statement will certify the dates to which the Lease Base Rent, additional rent, and any other charges have been paid.  That statement will also state whether, to the knowledge of the person signing the certificate, the other party is in default beyond any applicable grace period provided in the Lease in the performance of any of its

obligations under this Lease.  If the other party is in default beyond any applicable grace period, the statement will specify each default of which the signer has knowledge.  It is intended that this statement may be relied upon by others with whom the party requesting the certificate may be dealing.

26.    Surrender of Premises.  Tenant shall, upon the expiration or prior termination of the Term, surrender to Landlord the Premises and all repairs, changes, alterations, fixtures, additions, and improvements thereto in good order and condition, reasonable wear and tear excepted.  Notwithstanding the foregoing, Tenant shall have the option, in its sole discretion, to remove any or all personal property owned by Tenant and any or all fixtures installed on the Premises by Tenant, provided that Tenant shall restore any damage to the Premises resulting from such removal.  Tenant shall indemnify Landlord against any loss or liability resulting from delay by Tenant in so surrendering the Premises, including without limitation any claims made by any succeeding tenant founded on such delay.

27.    Notices.  All notices and demands which may or are required to be given by either party to the other hereunder shall be in writing.  All notices and demands by the Landlord to the Tenant shall be personally delivered or sent by United States certified mail, postage prepaid, or by prepaid express mail or overnight courier addressed to (i) Reed Elsevier, Inc., Two Newton Place, Newton, Massachusetts 00245, Attention: William Conway; (ii) Reed Elsevier Inc., 125 Park Avenue, 23rd Floor, New York, New York 10019, Attention: Henry Z. Horbaczewski; and Benjamin J. Randall, Randall and Kenig, LLP, 455 Cityfront Plaza, Suite 2510, Chicago, Illinois 60611, or such other person(s) or to such other place(s) as Tenant may from time to time designate in a notice to Landlord.  All notices and demands to Landlord shall be personally delivered or sent by United States certified mail, postage prepaid, or by prepaid express mail or overnight courier addressed to (i) Tribune Company, 435 N. Michigan Avenue, Chicago, Illinois 60611, Attention: Director of Real Estate; (ii) Paul, Hastings, Janofsky & Walker LLP, 191 North Wacker Drive, Chicago, Illinois 60606, Attention: Daniel J. Perlman, Esq.; or such other person(s) or to such other place(s) as Landlord may from time to time designate in a notice to Landlord.  Notices and demands delivered personally shall be deemed given on the date of delivery; notices and demands delivered by mail shall be deemed given three (3) days after deposit in the United States mail; and notices and demands delivered by express mail or overnight courier shall be deemed given one (1) day after deposit.

28.    Defined Terms and Headings.  The Section and paragraph headings herein are for convenience of reference and shall in no way define, increase, limit, or describe the scope or intent of any provision of this Lease.  The term "Landlord" in these presents shall include Landlord, its successors, and assigns.  Any indemnification of, insurance of, or option granted to Landlord shall also benefit, include or be exercisable by Landlord's trustee, beneficiary, agents and employees, as the case may be.  The term "Tenant" shall include Tenant and its successors and assigns, subject to any limitation on assignment provided in this Lease.  Tenant agrees to furnish promptly upon demand a corporate resolution, proof of due authorization by partners, or other appropriate documentation evidencing the due authorization of Tenant to enter into this Lease.

29.    Enforceability.  If for any reason whatsoever any of the provisions hereof shall be unenforceable or ineffective, all of the other provisions shall be and remain in full force and effect.

30.    Brokers.  The parties to this Lease represent and warrant to each other that neither party dealt with any broker or finder in connection with the consummation of this Lease and each party agrees to protect, defend, indemnify and hold the other party harmless from and against any and all claims or liabilities for brokerage commissions or finder's fees arising out of that party's acts in connection with this Lease.  The provisions of this Section 30 shall survive the expiration or early termination of this Lease.

31.    Attorneys' Fees.  In the event that any action or proceeding is brought to enforce any term, covenant or condition of this Lease on the part of Landlord or Tenant, the prevailing party in such litigation shall be entitled to reasonable attorneys' fees to be fixed by the court in such action or proceeding.

32.    Time.  Time is of the essence of this Lease and all of its provisions.

33.    Successors and Assigns.  The terms, covenants and conditions contained herein shall be binding upon and inure to the benefit of the permitted heirs, successors, executors, administrators, and permitted assigns of the parties hereto.  In the event Landlord sells the Premises or any portion thereof, Landlord shall automatically be relieved of, liability for obligations under this Lease arising on and after the date title is conveyed to the purchaser.

34.    Entire Agreement.  This Lease, together with its exhibits, contains all agreements of the parties hereto and supersedes any previous negotiations.  There have been no representations made by the Landlord or understandings made between the parties regarding the leasing of the Premises by Tenant other than those set forth in this Lease and its exhibits. This Lease may not be modified except by a written instrument duly executed by the parties hereto.

35.    Recordation.  Tenant may record this Lease or any memorandum hereof without the prior written consent of Landlord.  If requested by Tenant, Landlord shall execute a memorandum of this Lease in recordable form in the form of Exhibit B hereto.

36.    Exhibits.  Attached to this Lease and a part hereof are exhibits identified as follows: Exhibit A (Legal Description), Exhibit B (Memorandum of Lease).

37.    Covenants and Conditions.  Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition.

38.    Survival.  Except as otherwise expressly provided herein, all obligations, covenants, warranties and representations shall survive the expiration or prior termination of this Lease.

39.    No Joint Venture.  The parties intend by this Lease to establish the relationship of Landlord and Tenant only, and do not intend to create a partnership, joint venture, joint enterprise or any business relationship other than that of Landlord and Tenant.

40.    Calendar Days and Business Days.  All time periods described in this Lease in terms of days shall mean calendar days unless otherwise provided herein.  If any last day for performance of any act falls upon a day either of the parties is not open for business, such last day will be the next following business day.

41.    Subordination, Nondisturbance and Attornment.  Tenant shall upon demand execute, acknowledge and deliver to Landlord, any and all instruments that may be reasonably necessary to subordinate this Lease and all rights of Tenant hereunder to the lien of any mortgage or deed of trust on the Premises created pursuant to a new loan or refinancing of an existing loan entered into by Landlord after the date hereof provided that the beneficiary thereunder executes a nondisturbance agreement in recordable form and in form and substance acceptable to Tenant and any Mortgagee whereby the beneficiary agrees (a) that in the event it should become necessary to foreclose said deed of trust it will cause the sale of the Premises to be made subject to this Lease, including, without limitation, the provisions for the Additional Term (provided that the Tenant is not in default past any applicable notice and grace period under this Lease at the time of such foreclosure), and (b) in the event of condemnation or damage by fire, casualty or other causes as covered by fire and extended coverage insurance, the condemnation award or proceeds of such insurance shall be used for reconstruction or otherwise disbursed as provided in this Lease notwithstanding any provision in the mortgage or deed of trust to the contrary.

42.    Counterparts.  This Lease may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

43.    Waiver.  Neither Landlord nor Tenant shall be deemed to have waived the default or breach of any term, covenant or condition of this Lease by the other party unless such waiver shall be in writing and signed by the party charged with such waiver.  The acceptance of Rent or any other payment by Landlord shall not be deemed a waiver of any default or breach by Tenant.  No waiver by Landlord or Tenant of any default or breach of any term, covenant or condition of this Lease by the other party shall be doomed to be a waiver of any other term, covenant or condition of this Lease, or of any subsequent default or breach by the other party of the same term, covenant or condition of this Lease.

44.    Landlord's Access.  Landlord and Landlord's agents shall have the right to enter the Premised at any time, in the case of an emergency, and otherwise at reasonable times and upon reasonable notice for the purpose of showing the same to prospective purchasers, lenders, or lessees, and for other reasonable and proper purposes.

45.    Severability.  If the provisions of this Lease or the application of any provision of this Lease to any person or circumstances is, to any extent, held to be invalid or unenforceable, the remainder of this Lease or the application of that provision to persons or circumstances other than those as to which it is held invalid or unenforceable, will be affected, and each provision of this Lease will be valid and be enforced to the fullest extent permitted by law.

46.    Governing Law.  This Lease will be governed by and in all respects, including, without limitation, with respect to any claims relating to this Lease arising prior to the Commencement Date, shall be construed in accordance with the laws of the state where the

Premises are located (except for its choice of law provisions) to the fullest extent permitted by the state in which the Premises is located.

      47.   <u>Further Assurances</u>.  Each party to this Lease will, at its own cost and expense, execute and deliver such further documents and instruments and will take such other actions as may be reasonably required or appropriate to evidence or carry out the intent and purposes of this Lease.

[<em>Signature Page Follows</em>]

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the date first above written.

LANDLORD

**TRIBUNE COMPANY**, a Delaware corporation

By:_____
    Name: _____
    Title: _____

TENANT

**MOSBY, INC.**, a Missouri corporation

By:_____
    Name: _____
    Title: _____

EXHIBIT A

**PREMISES**

Parcel No. 1:

Lot One (1) of MOSBY SUBDIVISION, a tract of land being Lot 2 and Lot 3 of West Port Industrial Subdivision 6th Addition, and Lot 4-A of Lot Split Plat of plat recorded in Plat Book 261 Page 16, recorded in Plat Book 125 Pages 82 and 83, all according to the plat thereof recorded in Plat Book 322 Page 76 of the St. Louis County Records.

EXCEPTING THEREFROM that part conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.

Parcel No. 2:

A part of Lot One (1) of MOSBY SUBDIVISION, a tract of land being parts of Lots 2 and 3 of West Port Industrial Subdivision Sixth Addition: as per plat recorded in Plat Book 125 Pages 82 and 83 of the St. Louis County Records, and Lot 4-A of Plat recorded in Plat Book 261 Page 16, all according to plat thereof recorded in Plat Book 322 Page 76 and being the same property as conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.

EXHIBIT B

**MEMORANDUM OF LEASE**

**(ATTACHED)**

_____

(space above reserved for Recorder of Deeds certification)

**TITLE OF DOCUMENT**:   Memorandum of Lease

**DATE OF DOCUMENT**:   _____, 2009

**LANDLORD/GRANTOR**:   TRIBUNE COMPANY, a Delaware corporation, having an address at 435 North Michigan Avenue, Chicago, Illinois 60611

**TENANT/GRANTEE**:   MOSBY, INC., a Missouri corporation, having an address at c/o Reed Elsevier, Inc., Two Newton Place, Newton, Massachusetts 00245

**LEGAL DESCRIPTION**:   See Exhibit A attached hereto and incorporated by reference herein.

**REFERENCE BOOK AND PAGE(S)**:     Not Applicable.

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE (this "**Memorandum of Lease**") is made and entered into as of the _____ day of _____, 2009, by and between Tribune Company, a Delaware corporation, having an address at 435 N. Michigan Avenue, Chicago, Illinois 60611 ("**Owner**") and Mosby, Inc., a Missouri corporation, having an address at c/o Reed Elsevier, Inc., Two Newton Place, Newton, Massachusetts 00245 ("**Tenant**").  Owner and Tenant are sometimes referred to in this Lease as a "**Party**" or collectively as the "**Parties**".

## W I T N E S S E T H:

For and in consideration of each and every covenant, agreement and undertaking set forth in that certain Lease Agreement between Owner and Tenant dated as of the date hereof (the "**Lease**"), an executed copy of which is in the possession of each party hereto, Owner and Tenant do hereby covenant and agree as follows:

1.       DEFINED TERMS.  Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Lease.

2.       PREMISES.  Subject in all respects to the terms, provisions and conditions of the Lease, Owner has leased to Tenant and Tenant has leased from Owner that certain real property, including all air space thereof, located in the County of St. Louis, State of Missouri and legally described on **Exhibit A** attached hereto and incorporated herein (the "**Premises**").

3.       TERM.  Subject in all respects to the terms, provisions and conditions of the Lease, the term of the Lease shall commence on _____, 2009 and shall expire at midnight on August 7, 2009.

4.       CONFLICTING PROVISIONS.  In the event that any conflict exists between the terms and provisions of this Memorandum of Lease and the terms and provisions of the Lease, the terms and provisions of the Lease shall control in all respects.

5.       EFFECT OF MEMORANDUM OF LEASE.  Owner and Tenant have executed, delivered and shall record this Memorandum of Lease for the purpose of giving notice to third persons of the existence and effect of the Lease without recording the entire Lease.  It is acknowledged that the complete terms, provisions and conditions of the Lease appear therein. Nothing contained herein shall change, modify or affect any of the terms, provisions or conditions of the Lease or the rights, duties, obligations, covenants, agreements and undertakings created thereby, all of which remain in full force and effect.

6.       COUNTERPARTS.  This Memorandum of Lease may be executed with counterpart signature pages and in duplicate originals, each of which shall be deemed an original, and all of which shall together constitute a single instrument.

*[REMAINDER OF THIS PAGE INTENTIONALLY BLANK]*

IN WITNESS WHEREOF, the parties hereto have executed this MEMORANDUM OF LEASE as of the date first above written.

OWNER

**TRIBUNE COMPANY**, a Delaware corporation

By:_____
    Name: _____
    Title: _____

TENANT

**MOSBY, INC.**, a Missouri corporation

By:_____
    Name: _____
    Title: _____

STATE OF ILLINOIS            )

COUNTY OF COOK           ) ss.:

On the _____ day of _____, in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the State of Illinois.

_____

Name:
Title:

STATE OF _____ )

COUNTY OF _____ )ss.:


On the _____ day of _____, in the year 2009, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the State of _____.


_____

Name:
Title:

# EXHIBIT A

## PREMISES

Parcel No. 1:

Lot One (1) of MOSBY SUBDIVISION, a tract of land being Lot 2 and Lot 3 of West Port Industrial Subdivision 6th Addition, and Lot 4-A of Lot Split Plat of plat recorded in Plat Book 261 Page 16, recorded in Plat Book 125 Pages 82 and 83, all according to the plat thereof recorded in Plat Book 322 Page 76 of the St. Louis County Records.

EXCEPTING THEREFROM that part conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.

Parcel No. 2:

A part of Lot One (1) of MOSBY SUBDIVISION, a tract of land being parts of Lots 2 and 3 of West Port Industrial Subdivision Sixth Addition: as per plat recorded in Plat Book 125 Pages 82 and 83 of the St. Louis County Records, and Lot 4-A of Plat recorded in Plat Book 261 Page 16, all according to plat thereof recorded in Plat Book 322 Page 76 and being the same property as conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.