# EXHIBIT C

# LISTING AGREEMENT

## EXCLUSIVE LISTING AGREEMENT
## SALE OR LEASE TRANSACTION

Tribune Company ("Owner") hereby appoints Cushman & Wakefield of California, Inc. ("C&W") as its sole agent and grants to C&W the exclusive right to sell or lease the real property located at 11830 Westline Industrial Drive, Maryland Heights, MO 63146, as more particularly described on Exhibit "A-5" (the "Property").

1) **TERM:** The term of this Agreement begins on November 1, 2007 and will end at midnight on August 30, 2008.

2) **C&W'S SERVICES:** C&W will enlist the efforts of its firm to secure a satisfactory purchaser(s) and/or tenant(s) for the Property, and if C&W deems it necessary, C&W will also solicit the cooperation of other licensed real estate brokers. Owner hereby acknowledges and agrees that C&W may cooperate with Gateway Commercial and/or such other locally licensed broker as C&W may select to perform services hereunder. As and to the extent requested by Owner, C&W will negotiate the terms of any sale or lease on behalf of Owner and in Owner's interest.

3) **OWNER REFERRALS:** Owner will refer to C&W all inquiries and offerings received by Owner regarding the Property.

4) **ADVERTISING:** Owner authorizes C&W to market the Property. C&W, at its expense, will provide its standard flier/brochure. Any additional advertising and promotion will be done at Owner's expense pursuant to a program and budget agreed upon by Owner and C&W and may identify C&W as exclusive agent for the Property.

5) **COMMISSION:** If, during the term hereof, Owner sells or leases all or any interest in the Property, Owner will pay to C&W a commission in accordance with the attached Schedule of Commissions. Within 15 days after the end of the term, C&W will provide to Owner a list of prospective purchaser(s) and tenant(s) (i) to whom the Property was submitted (by C&W, Owner or any third party in accordance with the terms of this Agreement) during the term and (ii) who have submitted a bona fide written proposal or with whom there has been bona fide negotiations, in each case, during the term. If a prospective purchaser or tenant, appearing on said list, enters into a lease, purchase contract or option with Owner or one of its affiliates with respect to the Property within 180 days after the end of the term, and the lease is execute or the purchase thereafter closes in accordance with the terms of such purchase contract or option, Owner will pay a commission to C&W as provided above.

    Existing Tenant Lease. In the event of a lease by or sale to the existing tenant at the Property, Reed Elsevier, or any affiliate thereof ("Existing Tenant"), the listing broker's portion of the commission shall be reduced by twenty percent (20%). Additionally, if the property is sold subsequent to a lease by the Existing Tenant, the listing broker's portion of the commission for such sale transaction shall be reduced by twenty percent (20%). There shall be no reduction as to the commission payable to the broker representing the tenant and/or purchaser.

6) **OUTSIDE BROKERS:** If C&W recognizes an outside broker (including any brokers of C&W other than the listing team) representing the purchaser or tenant in a transaction for which a commission is payable hereunder, C&W will request such broker to agree to accept an equitable portion (but not more than half) of the commission as its compensation. If such broker so agrees, Owner will pay to C&W the commission provided for herein, out of which C&W will pay to such broker its agreed share and retain the balance as C&W's compensation. If such broker does not so agree, then negotiations will be suspended until such agreement is obtained. C&W will not be liable for failure to obtain such agreement.

7) **PROPERTY INFORMATION:** To the extent Owner learns of any toxic, contaminated or hazardous substances, or defective conditions at the Property, Owner shall so inform C&W and Owner authorizes C&W to transmit such information to prospective purchasers and tenants. Owner has advised C&W that Owner intends that except as otherwise agreed in writing by Owner or as expressly required by law, the sale will be as is, where is and with all faults.

8) **OTHER CLIENTS:** Owner acknowledges that C&W may represent potential purchasers and tenants consents to such dual representation.

9) **FEES AND EXPENSES:** If either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs so incurred. Any

portion of a commission not paid to C&W when due will bear interest from the due date until paid at the legal rate of interest.

10) **AUTHORITY:** Owner represents that it is the owner of the Property and/or has the full right, power and authority to execute this Agreement and to consummate a transaction as provided herein, and to perform Owner's obligations hereunder. The individuals signing this Agreement represent that they are authorized signatories.

11) **PROFESSIONAL ADVICE:** C&W recommends that Owner obtain legal, tax or other professional advice relating to this Agreement and the proposed sale or lease of the Property, as well as the condition and/or legality of the Property, including, but not limited to, the Property's improvements, equipment, soil, tenancies, title, environmental aspects and compliance with the Americans With Disabilities Act. C&W will have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and C&W. Owner further agrees that in determining the financial soundness of any prospective purchaser or tenant, Owner will rely solely upon Owner's own investigation and evaluation, notwithstanding C&W's assistance in gathering any financial information.

12) **NON-DISCRIMINATION:** It is unlawful for either Owner or C&W to discriminate against any persons because of their race, color, religion, national origin, sex, disability or family status.

13) **SURVIVAL:** This Agreement is binding upon the parties hereto and their respective successors and assigns. The terms "Owner", "Tenant" and "Purchaser" include subsidiaries, controlled affiliates, successors, assigns and nominees.

14) **PUBLICITY:** Owner hereby consents to C&W's publicizing its role in any transaction entered into, subject to Owner's prior approval of such publicity.

15) **COUNTERPARTS:** This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement.

16) **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Owner and C&W and supersedes all prior discussions as to the subject matter hereof. No modification of this Agreement will be effective unless made in writing and signed by both Owner and C&W. Owner acknowledges receipt of a copy of this Agreement and the Schedule of Commissions.

| TRIBUNE COMPANY | CUSHMAN & WAKEFIELD OF CALIFORNIA, INC. |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Title: Treasurer | Title: Executive Vice President |
| Address: 435 N. Michigan | Address: 10250 Constellation Blvd #2200 |
| Chicago, IL 60611 | Los Angeles CA 90067 |
| Date: 11-26-07 | Date: 11/27/07 |

## SCHEDULE OF COMMISSIONS

### SECTION A - SALES

**No Outside Broker:**

2% of the total sales price.

**With Outside Broker:**   (Where Purchaser is represented by an Outside Broker)

2.5% of the total sales price.

For purposes of the commission hereunder, the term Outside Broker shall include any brokers or salespersons of C&W other than the listing team.

<u>Time of Payment:</u>  The commission shall be paid in full at the time of the closing or transfer of title to the property, except in the case of an installment purchase contract, in which case the commission shall be paid in full at the time of the first payment under the installment purchase contract between Owner and Purchaser.

<u>Computation of Sales Price:</u>  The commission shall be computed in accordance with the above rates based upon the total sales price, which shall include any mortgages, loans or other debt obligations of Owner which may be assumed by Purchaser or which Purchaser takes title "subject to," any purchase money loans or mortgages taken back by Owner and the sales price of any fixtures or other personal property sold by separate agreement between Owner and Purchaser as part of the overall sales of the real property.

<u>Purchase Option:</u>  If Owner grants a purchase option, C&W will be paid a commission at the above rate as and when amounts are paid for the option (and for extensions thereof). Upon closing of the sale, C&W will be paid a commission at the above rate on the total sales price (excluding any amount paid for the option and applied to the sales price).

### SECTION B - LEASES

**No Outside Broker:**

3.33% of the total rental for the first 5 years or any fraction thereof, plus

1.67% of the total rental for the remaining term.

**With Outside Broker:**   (Where Tenant is represented by an Outside Broker)

5% of the total rental for the first 5 years or any fraction thereof, plus

2.5% of the total rental for the remaining term.

For purposes of the commission hereunder, the term Outside Broker shall include any brokers or salespersons of C&W other than the listing team.

<u>CONDITIONS REGARDING LEASES</u>

<u>Cancellation Clauses</u>:  C&W will be paid a commission based upon the entire lease term notwithstanding any right of Landlord to cancel the lease. If Tenant has a right to cancel the lease after the term has commenced (and for reasons unrelated to casualty, condemnation, default and the like), the commission will initially be based upon the rental for the non-cancellable portion of the lease term plus the amount of any cancellation payment payable by Tenant; if such right is not thereafter exercised, Landlord will promptly pay C&W the balance of the commission. A lease will be deemed canceled only if Tenant vacates the premises. If a lease is terminated or amended and Tenant remains under a new or different arrangement, C&W shall be paid the balance of its commission through the initial term. If a cancellation payment includes the unamortized commission, then C&W will be paid a full commission as if no right of cancellation existed.

<u>Computation of Commissions</u>:  Commissions shall be computed in accordance with the above rates based upon the aggregate rental set forth in the lease, including rental attributable to rent increases (but not tax or operating expense escalation's) and to additional space required to be leased by Tenant. If a rental concession is made by Landlord

allowing Tenant not to pay rent for the initial months of the lease term, then the commission shall be calculated on the average rental for the entire term with the first year being deemed to commence on the first day of the lease term whether or not rent is payable.

<u>Time of Payment</u>: Commissions on leases shall be paid in full on the execution and delivery of the lease between Landlord and Tenant.

<u>Purchase Option:</u> If the lease, at the time of initial execution, contains an option or right to purchase, and if Tenant purchases the property during the term of the lease, whether or not strictly pursuant to the option or right, Landlord will pay to C&W, upon closing of the transaction, a sales commission as provided in Section A of this Schedule. If the sale occurs during a period of the lease term for which C&W has been paid a leasing commission, the portion of C&W's share of the leasing commission attributable to the unexpired portion of the term will be credited against the sales commission. C&W will not be required to make a refund should the sales commission be less than the amount of the credit.

<u>Sale by Landlord:</u> In the event of a sale, conveyance or other disposition of all or any portion of Landlord's interest in the Property at which the lease is made, Landlord shall remain responsible to pay C&W the commissions due and/or which may become due hereunder, unless Landlord shall obtain from the grantee of its interest and deliver to C&W an agreement, in form and substance and from a party acceptable to C&W, whereby the grantee assumes Landlord's commission obligations hereunder.

<u>General:</u> The terms "Landlord", "Tenant", "Purchaser" and "Seller", shall be deemed to include any subsidiaries, affiliates, successors and nominees of any of same.

OSELAS
JANUARY 2001
4

EXHIBIT A- 5

PARCEL NO. 1: Lot One (1) of MOSBY SUBDIVISION, a tract of land being Lot 2 and Lot 3 of West Port Industrial Subdivision 5th Addition, and Lot 4-A of Lot Split Plat of plat recorded in Plat Book 261 Page 16, recorded in Plat Book 125 Pages 82 and 83, all according to the plat thereof recorded in Plat Book 322 Page 76 of the St. Louis County Records.

EXCEPTING THEREFROM that part conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.

PARCEL NO. 2: A part of Lot One (1) of MOSBY SUBDIVISION, a tract of land being part of Lots 2 and 3 of West Port Industrial Subdivision Sixth Addition, as per plat recorded in Plat Book 125 Pages 82 and 83 of the St. Louis County Records, and Lot 4-A of Plat recorded in Plat book 261 Page 16, all according to plat thereof recorded in Plat Book 322 Page 76 and being the same property as conveyed by instrument recorded in Book 9695 Page 974 of the St. Louis County Records.