# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket No. 233** |
| | **Hearing: April 9, 2009 at 10:00 a.m.**<br>**Objection Deadline: April 2, 2009 at 4:00 p.m.** |

**MOTION OF THE DEBTORS FOR AN ORDER (A) APPROVING AMENDMENTS TO SECURITIZATION FACILITY AND (B) MODIFYING THE FINAL ORDER PURSUANT TO SECTIONS 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) AND 365 OF THE BANKRUPTCY CODE (1) AUTHORIZING THE DEBTORS TO GUARANTEE AN AMENDED SECURITIZATION FACILITY AND FOR CERTAIN DEBTORS TO CONTINUE SELLING RECEIVABLES AND RELATED RIGHTS PURSUANT THERETO, (2) AUTHORIZING THE DEBTORS TO ENTER INTO A LETTER OF CREDIT FACILITY, (3) MODIFYING THE AUTOMATIC STAY, AND (4) GRANTING OTHER RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (0031); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order (the "Order," pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (A) modifying the Final Financing Order (as defined below) and (B) authorizing Debtor Tribune Company and the other Originators[2] to:  (i) to enter into (a) an Amended and Restated Receivables Loan Agreement (as amended, supplemented or otherwise modified from time to time, the "ARRLA"), among Tribune Company, Tribune Receivables, LLC ("Tribune Receivables" or the "Buyer"); Barclays Bank PLC ("Barclays"), in its capacities as Lender and Administrative Agent (in all such capacities, and together with its successors in such capacities, the "RLA Agent"), and other financial institutions from time to time party thereto as Lenders, (b) an Amended and Restated Receivables Purchase Agreement (as amended, supplemented or otherwise modified from time to time, the "ARRPA"), among Tribune Receivables, Tribune Company and the other Originators, and (c) an Amended and Restated Servicing Agreement (as amended, supplemented or otherwise modified from time to time, the "ARSA"), among Tribune Receivables, Tribune Company and the other Originators which, among other things:  (x) reduce the Aggregate Commitment (as defined in the ARRLA) from $300,000,000 to up to $225,000,000 (consisting of an Aggregate Revolving Loan Commitment (as defined in the

---

[2]  "Originators" means, collectively, the following: Tribune Company, Chicagoland Television News, Inc., Tribune Broadcast Holdings, Inc., Tribune Interactive, Inc., Tribune Television Holdings, Inc., WGN Continental Broadcasting Company, WPIX, Inc., Tribune Television New Orleans, Inc., KSWB Inc., KTLA Inc., KIAH Inc., Tower Distribution Company, Tribune Television Northwest, Inc., Tribune Television Company, Channel 40, Inc., Channel 39, Inc., Los Angeles Times Communications LLC, WDCW Broadcasting, Inc., Orlando Sentinel Communications Company, Sun-Sentinel Company, Gold Coast Publications, Inc., Forum Publishing Group, Inc., The Daily Press, Inc., Chicago Tribune Company, The Baltimore Sun Company, The Hartford Courant Company, and The Morning Call, Inc.  At the time of this Motion, the Debtors and Barclays were actively working to add Debtor Tribune Media Services, Inc. as an Originator.

2

ARRLA) in the amount of [up to $75,000,000] and an Aggregate Term Commitment (as defined

in the ARRLA) of [up to $150,000,000]), and (y) extend the Maturity Date (as defined in the

ARRLA) of the Loans (as defined in the ARRLA) to the earliest to occur of (1) the 45th day

after the commencement of scheduled amortization (which scheduled amortization will

commence on April 10, 2010), (2) the effective date of a chapter 11 plan of reorganization for

Tribune Company, (3) the date on which a sale of all or substantially all of the assets of the

Debtors is consummated under section 363 of the Bankruptcy Code and (4) the date on which

maturity of the Loans is accelerated pursuant to the terms of the ARRLA, (ii) authorizing

Tribune Company and the other Debtors to guarantee certain of the obligations of Tribune

Receivables under the Amended and Restated Securitization Agreements (as defined below), and

execute an Amended and Restated Guaranty (as amended, supplemented or otherwise modified

from time to time, the "ARG") in favor of the RLA Agent in connection therewith and to secure

their obligations under the ARG and the Amended and Restated Securitization Agreements

pursuant to an Amended and Restated Guaranty Security Agreement (as amended, supplemented

or otherwise modified from time to time, the "ARGSA" and together with the ARRLA, the

ARRPA, the ARSA, the ARG and the other Transaction Documents (as defined in the ARRLA),

the "Amended and Restated Securitization Agreements"); (iii) authorizing Tribune Company and

the other Debtors to enter into an Amendment No. 2 to Letter of Credit Agreement

("Amendment No. 2") which shall amend that certain Post-Petition Letter of Credit Agreement

dated as of December 8, 2008 (as heretofore amended pursuant to Amendment No. 1 to Letter of

Credit Agreement dated as of March 6, 2009, and as amended, supplemented or otherwise

modified from time to time, the "Letter of Credit Agreement," and together with Amendment

No. 2, and the Amended and Restated Securitization Agreements, the "Amended and Restated

Financing Agreements") among Barclays, as administrative agent (in such capacity, the "LC Agent") and issuing bank (in such capacity, the "Issuing Bank") and a syndicate of other financial institutions (including Barclays, the "Lenders") and the Debtors; and (iv) granting other related relief.  In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.  This Court granted the requested "first day" relief and ordered the cases to be jointly administered.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

3.      On December 11, 2008, this Court entered its Interim Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and For Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter Into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Interim Financing Order") (Docket No. 67).

4.      On December 18, 2008, the United States Trustee appointed the official creditor committee of unsecured creditors (the "Committee").

4

5.      On January 15, 2008, this Court entered its Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Final Financing Order") (Docket No. 233).

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 365 of title 11 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

7.      The Debtors' initial amended securitization facilities (the "Existing Facilities") as authorized by this Court by the Final Financing Order were 120-day facilities and expire on or about April 10, 2009.  The purpose of the limited 120-day period was to provide the Debtors a reasonable period of time to evaluate the impact of these chapter 11 proceedings on their businesses, determine their longer term financing needs, and explore alternatives for such financing.  Since entry of the Final Financing Order approving the Existing Facilities, the Debtors and Barclays continued to negotiate an extended securitization facility (the "Extended Securitization Facility"), to be syndicated by Barclays to other Lenders, and an amended letter of credit facility (the "Amended Letter of Credit Facility" together with the Extended Securitization Facility, the "Amended Facilities"), as documented by the Amended and Restated Financing

Agreements.  The terms of the Extended Securitization Facility are substantially provided in the

term sheet (the "Term Sheet") developed by the Debtors and Barclays in support of Barclays'

syndication efforts and attached hereto as Exhibit B.  The terms of the Amended Letter of Credit

Facility are described below.  The final versions of the Amended and Restated Financing

Agreements will be filed with this Court prior to the April 9, 2009 hearing scheduled for this

Motion.

## RELIEF REQUESTED

8.    By this Motion, the Debtors request authority to:

a.  enter into the Amended and Restated Securitization Agreements,
which shall, among other things, reduce the Aggregate
Commitment available to Tribune Receivables to up to
$225,000,000 (consisting of an Aggregate Revolving Loan
Commitment (as defined in the ARRLA) in the amount of [up to
$75,000,000] and an Aggregate Term Commitment (as defined in
the ARRLA) of [up to $150,000,000]);

b.  guarantee certain of the obligations of Tribune Receivables under
the Amended and Restated Securitization Agreements, and execute
the ARG in favor of the RLA Agent in connection therewith and
secure their obligations under the Amended and Restated
Securitization Agreements;

c.  enter into, perform their reimbursement and other obligations
under, and provide the required LC Cash Collateral (as defined
below) under, the Letter of Credit Agreement, in the amount of up
to $50,000,000 to be provided by Barclays, as the LC Agent and
the Issuing Bank and a syndicate of other Lenders;

d.  grant to the RLA Agent, the LC Agent, the Issuing Bank and the
Lenders priority in payment with respect to the obligations of
Debtor Tribune Company and the other Debtors under the
Amended and Restated Financing Agreements over any and all
administrative expenses of the kinds specified in Bankruptcy Code
§§ 503(b) and 507(b), other than in respect of the Carve-Out (as
defined below);

e.  seek other related relief described in the proposed Order; and

f.  pursuant to Bankruptcy Rule 4001(c)(2), have this Motion heard at
a final hearing and the final proposed Order entered thereto.

I.    **Request for Authority to Guarantee the Extended Securitization Facility and to Continue Selling Receivables and Related Rights Pursuant Thereto**

9.    The Debtors seek access to the financing proposed to be provided by the Amended and Restated Financing Agreements to assure sufficient available sources of working capital and financing to carry on the operation of their businesses.  Specifically, the Extended Securitization Facility will permit the Originators to continue transferring the Receivables, the Related Security and the Collections (each as defined in the ARRLA and hereinafter, collectively, the "ARRPA Assets") to Tribune Receivables, allowing them to continue their established practice of converting Receivables to cash as soon as possible to provide cash flow necessary for various business purposes.  The Amended Letter of Credit Facility will permit Debtor Tribune Company to obtain standby letters of credit necessary in the ordinary course of its, and certain of its subsidiaries', businesses.  In the absence of the proposed financing, serious and irreparable harm to the Debtors and their estates could occur which may include third parties declining to conduct business dealings with the Debtors.  The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to the Debtors' successful reorganization.

10.    The Debtors have a vital business purpose for continuing the Amended Facilities.  It is essential that the Debtors' employees, vendors, service providers, and customers remain confident in the Debtors' ability to transition their businesses smoothly through the chapter 11 process, operate normally in that environment, and implement their reorganization plan in an expeditious manner.  The Amended Facilities facilitate all such things, including, most importantly, to effectuate the Debtors' reorganization efforts.

46429/0001-5434862v1

(1)    **Amended and Restated Securitization Agreements Terms**

11.    The Amended and Restated Securitization Agreements include the

following terms:

a)    The facility limit under the ARRLA is reduced to up to $225,000,000 (consisting of an Aggregate Revolving Loan Commitment (as defined in the ARRLA) in the amount of [up to $75,000,000] and an Aggregate Term Commitment (as defined in the ARRLA) of [up to $150,000,000]).

b)    The Maturity Date (as defined in the ARRLA) for the Loans under the ARRLA is changed to the earliest of (i) the 45th day after the commencement of scheduled amortization (which scheduled amortization will commence on April 10, 2010), (ii) the effective date of a chapter 11 plan or reorganization for the parent, (iii) the date on which a sale of all or substantially all of the assets of the guarantors is consummated under section 363 of the Bankruptcy Code and (iv) the date on which maturity of the Loans is accelerated pursuant to the loan agreement as a result of a Facility Termination Event (as defined in the ARRLA).

c)    The various representations, covenants, defaults and amortization triggers in the Existing Facilities are revised and incorporated into the Amended and Restated Securitization Agreements.

d)    The Facility Termination Events relating to the bankruptcy proceedings in these cases are retained in the ARRLA.

e)    The Amended and Restated Securitization Agreements are revised to accommodate syndication by Barclays to other Lenders, including provisions for defaulting lenders, replacement of lenders, additional administration agent provisions and revised fee letters.

(2)    **Amended and Restated Guaranty**

12.    The material terms of the ARG are as follows:

a)    Debtor Tribune Company and the other Debtors guarantee, jointly and severally, payment of all Loans outstanding under the ARRLA as of any date.

b)    Debtor Tribune Company and the other Debtors also guarantee the secured obligations, i.e., other obligations of Tribune Receivables under the ARRLA and the other Transaction Documents, whether for principal, interest, costs, fees, expenses, indemnities or otherwise.

8

c)  If a Trigger Event (as defined in the ARRLA) or Facility Termination Event occurs under the ARRLA at such a time when any of the Loans or secured obligations are not yet due and payable, Debtor Tribune Company and the other Debtors agree to pay the full amount that would be due and payable under the ARG if such Loans and secured obligations were due and payable.

d)  The obligations of Debtor Tribune Company and the other Debtors under the ARG are secured pursuant to the ARGSA.

**(3)     Amended and Restated Guaranty Security Agreement**

13.     The material terms of the ARGSA are as follows:

a)  Debtor Tribune Company and the other Debtors grants to the Administrative Agent, for the benefit of the Secured Parties (as defined in the ARGSA), a first priority, perfected security interest in all of their personal assets and property of any kind or description.

b)  The Collateral (as defined in the ARGSA) pledged under the ARGSA secures the obligations of Debtor Tribune Company and the other Debtors under the ARRPA, the ARG, the ARSA and any other document or instrument executed in connection therewith.

c)  The security interest granted under the ARGSA is a first priority, perfected security interest in all Collateral that is not otherwise encumbered by a perfected security interest as of the Petition Date.  It is a junior, perfected security interest in all Collateral that is subject to a permitted lien.

d)  If a Facility Termination Event occurs, the RLA Agent may, upon five (5) business days written notice to Debtor Tribune Company and the other Debtors, enforce its security interest and exercise any and all remedies available under the ARGSA, the Transaction Documents, or the financing orders, including foreclosing on the Collateral.

**(4)     Letter of Credit Agreement**

14.     The significant elements of the Amended Letter of Credit Facility, as

amended by Amendment No. 2, are as follows:

a)  Type of Facility:  An Amended Letter of Credit Facility in the amount of up to $50,000,000

b)  LC Agent:  Barclays Bank PLC

c) <u>Lenders</u>:  Barclays and the other lenders from time to time party to the Letter of Credit Agreement

d) <u>Account Parties</u>:  Debtor Tribune Company and the other Debtors that are signatories to the Letter of Credit Agreement

e) <u>Guarantors</u>:  The debtor subsidiaries that are signatories to the Letter of Credit Agreement

f) <u>Commitment Amount</u>:  $50,000,000

g) <u>Interest Rate</u>:  The LC Agent's base rate plus a margin of 5% per annum

h) <u>Collateral</u>:  The "LC Cash Collateral" (as that term is defined in the Final Financing Order), means the amounts deposited into the collateral account from time to time pursuant to Section 8.2.4 of the Letter of Credit Agreement. The applicable account party is obligated to cash collateralize each outstanding obligation in an amount at least equal to 105% of such obligation.

i) <u>Termination Date</u>:  The termination date means the earlier of (a) April 10, 2010 or (b) such other date on which the commitments terminate pursuant to Section 9 of the Letter of Credit Agreement.

j) <u>Tenor of Letters of Credit</u>:  Each letter of credit shall expire on a date no later than the first anniversary of the issuance date of such letter of credit (or, in the case of any renewal or extension thereof, no later than one year after such renewal or extension), and any letter of credit that provides for automatic extension or renewal shall provide that such extension or renewal may be terminated by notice from the Issuing Bank of not less than 30 days.

k) <u>Security</u>:  The facility will be secured by a first priority, perfected, security interest in, and lien on, the LC Cash Collateral pursuant to section 364(d) of the Bankruptcy Code, with priority over (i) any other lien or security interest under section 364(d) of the Bankruptcy Code, (ii) any and all other liens and claims against the property of the Company or of the Debtor subsidiaries or the Collateral existing on the Petition Date, and (iii) priority claims (including administrative expenses) alleging priority pursuant to section 503, section 506(c) or section 507 of the Bankruptcy Code, heretofore or hereafter arising or incurred in the chapter 11 cases or in any converted or superseding case or cases under any chapter of the Bankruptcy Code.

l) <u>Representations and Warranties</u>:  Usual and customary for a facility of this type.

10

m) <u>Covenants</u>:  Usual and customary for a facility of this type, including but not limited to:  (i) the furnishing of certain financial reports, notices of default, and chapter 11 filings to the LC Agent and (ii) a covenant not to permit to exist any claims entitled to a superpriority under section 364(c)(1) of the Bankruptcy Code, other than those of the LC Agent and the Lenders.

n) <u>Events of Default</u>:  Usual and customary for a facility of this type, including but not limited to:  (i) non-payment of reimbursement obligations under the Letter of Credit Agreement, (ii) non-compliance with the provisions of the Letter of Credit Agreement, as amended, (iii) dismissal or conversion of the chapter 11 cases, (iv) the modification or failure to enter into effect of the financing orders, or the Debtors' failure to comply with the financing orders, (v) the contest or disallowance of any Lender's claim related to the Receivables or LC facilities, (vi) Facility Termination Events or Facility Events (as defined in the ARRLA) or refinancings of the Existing Facilities or the Extended Securitization Facility and (vii) other bankruptcy-related events as discussed in Section 9.1 of the Letter of Credit Agreement.

**(5)    Principal Order Terms**

15.    The principal terms set forth in the proposed Order:

a)  Authorize Debtor Tribune Company and the other Debtors to enter into the Amended and Restated Financing Agreements with Barclays;

b)  Authorize Debtor Tribune Company and the other Debtors to perform and do all acts that may be required in connection with the Amended and Restated Financing Agreements and the transactions contemplated thereby;

c)  Provide that except to the extent specifically modified pursuant to the proposed Order, all of the terms, conditions, provisions, findings of fact and conclusions of law of the Final Financing Order and the documents and agreements approved pursuant thereto are hereby ratified and shall remain in full force and effect; and

d)  Establish that all references in the Final Financing Order to each of the various Financing Agreements (as defined in the Final Financing Order) shall be deemed to refer to such agreements as amended and/or restated by the Amended and Restated Financing Agreements, and all references in the Final Financing Order to the RPA Assets shall be deemed to refer to the ARRPA Assets.

46429/0001-5434862v1

16.    The provisions of the Amended Facilities requested by this Motion provide the Debtors with a critical source of continued liquidity and send an important message to the numerous vendors and literally millions of customers that deal with the Debtors that the Debtors have sufficient liquidity to continue to conduct their business.  This liquidity assurance is extremely beneficial to the Debtors and their estates.

17.    Finally, Barclays, as the RLA Agent, LC Agent, Issuing Bank and Lender, has determined that the relief requested in this Motion is acceptable to it.

## II.    Request to Modify the Automatic Stay

18.    Pursuant to the Final Financing Order and the Amended and Restated Financing Agreements, Tribune Receivables may deduct from the purchase price of RPA Assets amounts which are payable by the Originators to Tribune Receivables in respect of violations of certain representations and warranties and dilution items (all of such amounts, collectively, the "Repayment Amounts"), and the automatic stay provisions of section 362 of the Bankruptcy Code should continue to be modified to the extent necessary so as to permit the deduction of such amounts by Tribune Receivables.  The payment by Tribune Receivables of the purchase price for Receivables, which are subsequently reduced by such Repayment Amounts, constitutes an extension of credit to the applicable Originators.  Accordingly, to the extent that such deduction is not available, Tribune Receivables should continue to receive, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed administrative claim against the applicable Originators, with priority over all other administrative claims.

19.    The performance by the Originators and Tribune Receivables of their respective obligations under the Final Financing Order and the Amended and Restated Financing Agreements, and the consummation of the transactions contemplated by the Amended and

12

Restated Financing Agreements, and the conduct by the Originators and Tribune Receivables of their respective businesses, should not provide a basis for a substantive consolidation of the assets and liabilities of the Originators, or any of them, with the assets and liabilities of Tribune Receivables or a finding that the separate corporate identities of the Originators and Tribune Receivables may be ignored.  Further, the RLA Agent, the LC Agent, the Issuing Bank and the Lenders have agreed to enter into the Amended and Restated Securitization Agreements in express reliance on Tribune Receivables being a separate and distinct legal entity, with assets and liabilities separate and distinct, from that and those of any of the Debtors.

20.    As is customary in commercial transactions of this nature, the Originators and Tribune Receivables, respectively, are required (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay or reimburse Tribune Receivables, the RLA Agent, the LC Agent, the Issuing Bank and the Lenders and their respective affiliates and agents, respectively, for the payment of certain fees and expenses pursuant to the Amended and Restated Financing Agreements (the "Fees").  In addition, pursuant to the fee letters (the "Fee Letters"), Debtor Tribune Company has agreed (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay the fees referred to in the Fee Letters in consideration of the RLA Agent's and the LC Agent's respective services in structuring and negotiating the Amended and Restated Financing Agreements.

21.    Therefore, the automatic stay provisions of section 362 of the Bankruptcy Code should continue to be vacated and modified to the extent necessary to permit the RLA Agent and the LC Agent to exercise, upon the occurrence of any Facility Termination Event or Event of Default (as defined in the ARRLA or the Letter of Credit Agreement, respectively), all

46429/0001-5434862v1

rights and remedies provided for in the Amended and Restated Financing Agreements, and to take any or all of the following actions without further order of or application to this Court: (a) cease to make any extensions of credit or loans or advances to the Debtors or Tribune Receivables; (b) terminate the commitments and declare all obligations to be immediately due and payable; (c) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the RLA Agent or the LC Agent against the obligations, and otherwise enforce rights against the RLA Collateral and LC Cash Collateral in the possession of the RLA Agent or the LC Agent for application towards the obligations; and (d) take any other actions or exercise any other rights or remedies permitted under the proposed Order, the Amended and Restated Financing Agreements or applicable law to effect the repayment and satisfaction of the Obligations; provided, that the RLA Agent shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the United States Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the RLA Collateral (other than the rights described above to the extent they might be deemed remedies in respect of the RLA Collateral) and other than with respect to freezing any deposit accounts or securities accounts; provided, further, that the Debtors shall have the right during such five (5) day period to seek continuation of the automatic stay solely on the basis that no Facility Termination Event or Event of Default has occurred.  Notwithstanding anything herein or in the Order to the contrary, no extensions of credit, RLA Collateral, LC Cash Collateral, or any portion of the Carve-Out may be used to object to, or contest, in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the letter of credit obligations, receivables obligations, indemnification obligations, guaranteed obligations, or the obligations of the Originators under or in connection with Amended and Restated

14

Financing Agreements, or to assert any claims or causes of action against the RLA Agent, the

released parties, the LC Agent, the Issuing Bank, the Lenders, or any agent of any of the

foregoing.

## DISCLOSURE UNDER LOCAL RULE 4001-2

22.     The Debtors provided disclosures in accordance with Rule 4001-2 of the

Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local

Rules") in the Debtors' Motion to Approve an Order (I) Authorizing the Debtors to Guarantee an

Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and

Related Rights Pursuant Thereto, (II) Authorizing the Debtors to Enter Into a Letter of Credit

Facility, (III) Modifying the Automatic Stay and (IV) Granting Other Related Relief Pursuant to

Sections 105,362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e)

and 365 of the Bankruptcy Code (Docket No. 19).

## APPLICABLE AUTHORITIES

23.     The continuation of the Amended Facilities is vital to the success of the

Debtors' reorganization efforts and is the only available means for the Debtors to access

sufficient post-petition financing for their operations.  The preservation of the Debtors'

businesses and the Debtors' ability to reorganize successfully depend heavily on the expeditious

approval of this Motion.  Absent this Court's approval of the relief sought herein, the Debtors

face a substantial risk of severe disruption to their business operations and irreparable damage to

their relationships with their vendors, customers and advertisers.

24.     This Court should therefore approve the relief sought in this Motion

because: (1) the Debtors are unable to obtain financing on an unsecured, or junior secured, basis;

(2) the prepetition Lenders have consented to the continuation of the Amended Facilities; and (3)

approval of the continuation of these facilities is in the best interests of the Debtors' estates.

> **A.    Debtors' Seek Authority to Continue Selling Receivables Pursuant to Extended Securitization Facility**

25.    The Debtors seek to continue the Extended Securitization Facility to

ensure adequate liquidity and continuity in financing of their ongoing operations.  Continuation

of this well-established facility would instill confidence in the Debtors' employees, vendors,

customers and advertisers.  The unique opportunity to extend the existing facility promotes

stability during the chapter 11 process and facilitates the Debtors' ability to operate normally and

without undue disruption.  Further, the Extended Securitization Facility is the most favorable

financing option available to the Debtors to meet their needs for short-term liquidity during these

chapter 11 cases.

26.    The Debtors therefore seek authority to continue the Extended

Securitization Facility and to pay fees required by the Amended and Restated Financing

Agreements pursuant to section 363(b) of the Bankruptcy Code, which permits the Debtors to

use, sell or lease property of the estate outside the ordinary course of business, after notice and a

hearing.  11 U.S.C. § 363(b)(1).  Courts typically approve sales of Debtors' assets, including the

receivables sales as described herein, where there is a sound business purpose, adequate notice,

good faith negotiations, and a fair and reasonable purchase price.  See, e.g., Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2d Cir. 1983) (sale of assets

pursuant to section 363(b) is evaluated under the business judgment standard); In re Crowthers

McCall Pattern, Inc., 114 B.R. 877, 881-82 (Bankr. S.D.N.Y. 1990); In re New Era Resorts,

LLC, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999); In re Abbotts Dairies of Pa., Inc., 788 F.2d

143, 149-50 (3d Cir. 1986).

    **B.**    **Authorizing a Lien Under § 364(c)(2) of the Bankruptcy Code and Protecting Good Faith Purchasers Under § 364(e)**

    27.    The Bankruptcy Code permits post-petition credit under section 364(c)[3] of

the Bankruptcy Code if the court makes a finding, made after notice and a hearing, that the

debtors in possession are "unable to obtain unsecured credit allowable under section 503(b)(1) of

[the Bankruptcy Code] as an administrative expense." See In re Garland Corp., 6 B.R. 456, 461

n.11 (1st Cir. B.A.P. 1980) (secured credit under section 364(c)(2) is authorized, after notice and

a hearing, upon showing that unsecured credit cannot be obtained); In re Crouse Group, Inc., 71

B.R. 544, 549 (Bankr. E.D. Pa.), modified on other grounds, 75 B.R. 553 (1987) (debtor seeking

unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to

obtain unsecured credit pursuant to 364(b) of the Bankruptcy Code); In re Ames Dept. Stores,

Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable

effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

The Debtors previously described the difficult credit market conditions and their inability to

secure unsecured credit in the Bigelow Affidavit (Docket No. 3).  For these reasons, the Debtors

are unable to acquire additional financing to support their operations.

---

[3] Section 364(c) of the Bankruptcy Code provides that:
    (c) If the trustee [or debtor-in-possession] is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
        (1) with priority over any and all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;
        (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
        (3) secured by a junior lien on property of the estate that is subject to a lien.

28.     To show that the credit required is not obtainable on an unsecured basis, the debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by sections 364(c) or 364(d) of the Bankruptcy Code. Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id. at 1088; see also In re Ames Dept. Stores, Inc., 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders); In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

29.     The Debtors, together with their investment bankers and financial advisors, sought indications of interest in a subordinate DIP facility prior to the filing of these chapter 11 cases, but the financial institutions that were approached were unwilling to provide the Debtors with additional liquidity on an unsecured basis. The Debtors therefore believe that they have satisfied the requisite showing that credit was not available on an unsecured or subordinate basis and that the proposed continuation of the Amended Facilities is the best available financing under the circumstances. The efforts by the Debtors constitute a good faith effort and satisfy section 364(e) of the Bankruptcy Code. 11 U.S.C. § 364(e).

18

30.    The Debtors are entitled to financing under section 364(c) because the Debtors are unable to obtain unsecured credit under section 364(b), the financing is necessary to preserve the assets of the Debtors' estates, and the terms of the transaction are fair, reasonable, and adequate given the circumstances.  In re Ames Dept. Stores, Inc., 115 B.R. at 37-39.  The terms of the Amended Facilities are fair, reasonable, and in the best interests of the Debtors and their estates.  Likewise, the fees and charges required under the Amended Facilities are reasonable and appropriate under the circumstances and the result of good faith, arm's length negotiations.

### C.    The Receivables Sales Contemplated by the Amended and Restated Securitization Agreements Constitute True Sales

31.    The Debtors and the RLA Agent for the Extended Securitization Facility intend the sales of Receivables to be true sales, free and clear of all liens, claims or other interests within the meaning of section 363(f) of the Bankruptcy Code.  Further, section 363(f) of the Bankruptcy Code specifically allows a debtor to sell property subject to a lien free and clear of such a lien if that lien attaches to the net proceeds of the same, subject to any claims and defenses the debtor may possess with respect thereto.  Based upon the foregoing, the sale of Receivables free and clear of liens, claims or other interests should remain approved under section 363(f) of the Bankruptcy Code.

32.    In addition, the ARRPA expressly contemplates that each receivables sale is a "true sale" and sets forth, "The Originators and the Buyer intend the transactions contemplated hereby to be (a) true sales of the Receivables from each Sub-Originator to the Parent, providing the Parent with the full benefits of ownership of the Receivables, and none of the Sub-Originators and the Parent intends these transactions to be, or for any purpose to be

19

characterized as, loans from the Parent to any Sub-Originator; and (b) true sales of the

Receivables from the Parent to the Buyer, providing the Buyer with the full benefits of

ownership of the Receivables, and neither the Parent nor the Buyer intends these transactions to

be, or for any purpose to be characterized as, loans from the Buyer to the Parent."

33.     Courts will not re-characterize a sale of receivables as a secured loan

where the parties' intent is clear. Kassuba v. Realty Income Trust (In re Kassuba), 562 F.2d 511,

514 (7th Cir. 1977). Further, once the parties to a transaction establish that a true sale was

intended, any party challenging that transaction must prove, by clear and convincing evidence,

that the transaction is in fact a disguised loan. Chicoine v. OMNE Partners (In re Chicoine), 67

B.R. 793 (Bankr. D.N.H. 1986). Further, Tribune Receivables, LLC has no credit recourse under

the Extended Securitization Facility. See Major's Furniture Mart, Inc. v. Castle Credit Corp.,

Inc., 602 F.2d 538, 544 (3d Cir. 1979) (noting that credit recourse is a sign of a secured loan

instead of a true sale).

34.     The Debtors, the Buyer, the RLA Agent and the Lenders intend the

transfers of Receivables under the ARRPA to the Buyer to be true sales. If notwithstanding such

intention, the transfers of the Receivables are deemed not to be sales, the Buyer would have a

security interest in the ARRPA Assets. Therefore, the Debtors request this Court to authorize the

grant of a security interest, as provided for in the ARRPA, with respect to any Receivables

transferred post-petition pursuant to section 364(c)(2) of the Bankruptcy Code.

**D.     Buyers are Entitled to Adequate Protection and Other Related Relief**

35.     The Debtors and Barclays as RLA Agent agreed to the following adequate

protection provisions as granted by the Final Financing Order and required by the Amended and

Restated Financing Amendments to protect the Lenders' Commitments: (a) that the Debtors

acknowledge: (i) the transfer of the Receivables from the Originators to the Buyers are true sales, (ii) the Receivables, Collections and the proceeds of the foregoing are not property of the estate and are free and clear of all interests other than the RLA Agent's, and (iii) that the Debtors, Tribune Receivables, the RLA Agent, the LC Agent, the Issuing Bank and the Lenders have negotiated the terms and conditions of the Amended and Restated Financing Agreements and the proposed Order in good faith and at arms length, (b) the Debtors will not: (i) seek to substantively consolidate Tribune Receivables with the Debtors, or (ii) file a bankruptcy petition for Tribune Receivables, and (c) the Lenders are entitled, pursuant to Bankruptcy Code section 364(c)(1), to receive a superpriority administrative expense claim (the "Superpriority Claim") subordinate only to the postpetition lenders' superpriority administrative expense claims, equal to the amounts advanced to the Debtors postpetition under the Program to protect against diminution of the resources available to satisfy the Lenders' claims against Tribune Receivables. In addition, the Superpriority Claims are due immediately if: (a) the Order is entered and then modified in any respect without the RLA Agent's consent or (b) the effective date of any confirmed plan of reorganization in these cases. Finally, as part of the adequate protection, the stipulations and admissions described in subparagraph (a) above become binding on all parties in interest upon entry of the Order by this Court.

III.    **Approval of the Amended Facilities Is in the Best Interests of the Debtors' Estates**

36.    A denial of the Debtors' requested relief may cause immediate and irreparable harm to the Debtors and their estates. Absent access to the financing available by the Amended Facilities, the Debtors may experience difficulties in continuing their operations while also meeting their ongoing obligations to suppliers, vendors, employees, and other creditors. If the Debtors are unable to pay their ongoing obligations, they will face operational constraints

21

that would jeopardize their successful reorganizations and value of their estates.  In contrast, the

Debtors' access to the Amended Facilities will ensure that the "going concern" value of the

assets are preserved and substantially greater than the value of the assets if such funding were

denied.

37.    Bankruptcy courts consistently defer to a debtor's business judgment on

most business decisions, including the decision to borrow money, unless such decision is

arbitrary and capricious.  See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del.

1994) (noting that an interim loan, receivables facility and asset-based facility were approved

because they "reflect[ed] sound and prudent business judgment ... [were] reasonable under the

circumstances and in the best interest of [the debtor] and its creditors"); cf. Group of Inst.

Investors v. Chicago, Mil., St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions

regarding assumption or rejection of leases are left to the business judgment of the debtor); In re

Simasko Prods. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to

the board room and not to this Court.").  In fact, "[m]ore exacting scrutiny [of the debtor's

business decisions] would slow the administration of the debtor's estate and increase its cost,

interfere with the Bankruptcy Code's provision for private control of administration of the estate,

and threaten the court's ability to control a case impartially."  Richmond Leasing Co. v. Capital

Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

38.    Given the widespread usage of such receivables purchase financing

programs and the essential role of such programs in improving liquidity, courts frequently permit

debtors in possession to continue operating such facilities and have granted relief similar to that

requested in this Motion in other chapter 11 cases.  See, e.g., In re DJK Residential LLC, Case

No. 08-10375 (Bankr. S.D.N.Y. Feb. 5, 2008); In re J.L. French Automotive Castings, Inc., Case

22

No. 06-10119 (Bankr. D. Del. Mar. 3, 2006); In re Blue Bonnet Logistics Corp., Case No. 03-

12413 (Bankr. W.D. Tex. June 2, 2003); In re Checkmate Staffing, Inc., Case No. 03-19318

(Bankr. C.D. Cal. Dec. 30, 2003); In re Access Med. Staffing and Servs., Case No. 02-46731

(Bankr. N.D. Cal. Dec. 31, 2002).

   39. The Debtors submit for all these reasons that ample justification exists for

the relief requested herein.

**NOTICE**

   40. Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the

United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v)

counsel for the Committee; (vi) counsel to the administrative agents for the Debtors' prepetition

loan facilities; (vii) counsel to the administrative agent for Debtors' post-petition loan facility;

(viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having

requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested

herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request this Court enter an Order, in substantially the form attached hereto as Exhibit A, (A) modifying the Final Financing Order and (B) authorizing Debtor Tribune Company and the other Originators to: (i) to enter into (a) the ARRLA, among Tribune Company, Tribune Receivables or the Buyer and Barclays, the RLA Agent, and other financial institutions from time to time party thereto as Lenders, (b) the ARRPA, among Tribune Receivables, Tribune Company and the other Originators, and (c) the ARSA, among Tribune Receivables, Tribune Company and the other Originators which, among other things: (x) reduces the Aggregate Commitment from $300,000,000 to up to $225,000,000 (consisting of an Aggregate Revolving Loan Commitment (as defined in the ARRLA) in the amount of [up to $75,000,000] and an Aggregate Term Commitment (as defined in the ARRLA) of [up to $150,000,000]), and (y) extends the Maturity Date of the Loans to the earliest to occur of (1) the 45th day after the commencement of scheduled amortization (which scheduled amortization will commence on April 10, 2010), (2) the effective date of a chapter 11 plan of reorganization for Tribune Company, (3) the date on which a sale of all or substantially all of the assets of the Debtors is consummated under section 363 of the Bankruptcy Code and (4) the date on which maturity of the Loans is accelerated pursuant to the terms of the ARRLA, (ii) authorizing Tribune Company and the other Debtors to guarantee certain of the obligations of Tribune Receivables under the Amended and Restated Securitization Agreements, and execute the ARG in favor of the RLA Agent in connection therewith and to secure their obligations under the ARG and the Amended and Restated Securitization Agreements pursuant to the ARGSA; (iii) authorizing Tribune Company and the other Debtors to enter into an Amendment No. 2 to Letter of Credit Agreement among the Debtors, the LC Agent, the Issuing Bank and the Lenders;

and (iv) granting other related relief described in the proposed Order and any further relief this

Court may deem just and proper.


Dated:  Wilmington, Delaware
        March 20, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Janet E. Henderson
Candice L. Kline
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

    -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _Kate Stickles_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, Delaware  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-5434862v1