# EXHIBIT B

# TERM SHEET

## INDICATIVE TERMS AND CONDITIONS

**Tribune Company ("Parent", and together with its subsidiaries that are debtors in insolvency proceedings, the "Debtors")**

This Term Sheet is for discussion purposes only.

| | |
|---|---|
| Borrower: | Tribune Receivables, LLC ("Borrower"). |
| Originator(s)/Servicer(s): | Parent and its subsidiaries in the publishing and media business units which originate advertising receivables (the "Originators" or "Servicers", and together with the Borrower and the Parent, the "Tribune Parties"). Originator(s) will sell trade receivables directly to the Borrower via legal true-sale from time to time, such sales having been approved by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Additions or removals of Originators are permitted without consent of the Administrative Agent, provided that such additions or removals would not result in an increase or reduction of more than 15% of the aggregate receivables balance on an annual basis. |
| Back-up Servicer: | Hewlett Packard Company |
| Guarantors: | Each of the Debtors (the "Guarantors") shall guarantee (the "Guaranty") all obligations of the Borrower, the Originators and the Servicers in connection with the Asset-Backed DIP Facility (as defined below) on a superpriority post-petition basis, including without limitation Borrower's obligations under the Loan Agreement and under any indemnification and other obligations (the "Guaranteed Obligations"). |
| Sole Structuring Advisor, Sole Bookrunner and Sole Lead Arranger: | Barclays Capital, the investment banking division of Barclays Bank PLC ("Barclays Capital") |
| Administrative Agent: | Barclays Bank PLC ("Barclays") |
| Lenders: | The "Lenders" shall be composed of Barclays and a syndicate of banks, financial institutions and other entities selected by Barclays and which are reasonably acceptable to Parent. |
| Facility Types and Amounts: | A total receivables securitization facility of up to $225 million (the "Asset-Backed DIP Facility") which will consist of Class A Revolving Loans ("Revolving Loans") available in an aggregate amount up to [$75 million] and Class A Term Loans ("Term Loans") in an aggregate amount up to [$150 million]. |
| | The Revolving Loans and the Term Loans rank pari passu in payment priority and are collectively called "Loans". The Loans shall be issued pursuant to a Receivables Loan Agreement (the "Loan Agreement"). |
| Availability: | The aggregate outstanding amount of Loans will be limited to the lesser of (i) $225 million and (ii) the Borrowing Base as described below. Any Revolving Loans may be borrowed, repaid, and re-borrowed until the Facility Termination Date. Any Term Loans will be available in one drawing on the Closing Date. Any amounts repaid under the Term Loans may not be re-borrowed. |
| Use of Loans: | Proceeds of the Loans to be used to refinance the pre-existing receivables securitization facility, to fund general corporate and working capital requirements |

March 20, 2009

|  |  |
|---|---|
| | and to pay costs of administration of the Chapter 11 cases in a manner consistent with the requirements of the Bankruptcy Code. |
| Maturity: | The Loans will mature on the date (the "Maturity Date") which is the earliest of (i) 45 days after the commencement of scheduled amortization (which scheduled amortization will commence on April 10, 2010) (the "Scheduled Termination Date"), (ii) the effective date of a Chapter 11 plan of reorganization for the Parent, (iii) the date on which a sale of all or substantially all of the assets of the Guarantors is consummated under Section 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and (iv) the date on which maturity of the Loans is accelerated pursuant to the Loan Agreement as a result of a Facility Termination Event. |
| | At the Maturity Date or (if earlier and absent a waiver) upon the occurrence of a Facility Termination Event or Trigger Event (each as defined below), the "Facility Termination Date" will occur and the Asset-Backed DIP Facility shall enter amortization. No new receivables shall be purchased after the Facility Termination Date and all collections shall reduce the principal balance of the Loans to zero in accordance with the priority of payments set forth below under Application of Payments. |
| Borrowing Base: | Maximum aggregate amount of Loans outstanding cannot exceed a borrowing base (the "Borrowing Base"), calculated as a dynamic percentage against Net Eligible Receivables. Haircuts for reserves shall include (i) loss reserve, (ii) dilution reserve, and (iii) yield/fee reserve. |
| | The advance rate is dynamic and will change with pool composition (concentrations and performance). |
| | If at any time the aggregate outstanding principal amount of the Loans exceeds the Borrowing Base, the Borrower shall be required to immediately repay the Revolving Loans or (if the Revolving Loans have been paid in full) the Borrower (at its option) may either prepay the Term Loans or cash collateralize the Loans in an amount equal to such excess (any such payment or provision of cash collateral being a "Required Reduction"). All such cash collateral shall be held in a segregated account, subject to a first priority perfected lien in favor of the Administrative Agent (the "Reserve Account"). |
| | "Net Eligible Receivables" means the aggregate outstanding amount of all Receivables, other than Ineligible Receivables. Attached as Exhibit A is a list of ineligible receivables ("Ineligible Receivables"). |
| Collateral / Claim: | Full repayment of principal and interest on the Loans and all other obligations of the Borrower in connection with the Asset-Backed DIP Facility (the "Secured Obligations") will be secured by a first priority lien on all assets of the Borrower (the "Borrower Collateral"), including Ineligible Receivables, free of other liens, claims and encumbrances. |
| | As security for the Guaranteed Obligations, the Debtors shall grant to the Administrative Agent on behalf of the Lenders valid and perfected security interests in, and liens on, all present and after-acquired property of all of the Debtors in the United States of any nature whatsoever (together with all proceeds and products of any or all of the foregoing, the "Debtor Collateral", and together with the Borrower Collateral, the "Collateral"), provided that avoidance actions under Chapter 5 of the Bankruptcy Code ("Avoidance Actions") and the proceeds thereof shall not be Debtor Collateral (except that if any amount is paid under the |

Carve-Out (as defined below), the Debtor Collateral shall include the proceeds of Avoidance Actions to the extent of the amount of any such payment under the Carve-Out):

- pursuant to Bankruptcy Code § 364(c)(2), a first priority, perfected lien upon all of the Debtors' right, title and interest in, to and under all Debtor Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the bankruptcy filing date;

- pursuant to Bankruptcy Code § 364(c)(3), a junior, perfected lien upon all of the Debtors' right, title and interest in, to and under all Debtor Collateral, subject to any validly perfected and enforceable security interest or lien in existence as of the bankruptcy filing date, valid and enforceable rights of setoff held by depository institutions (and any court-ordered replacement liens therefor of the same extent and priority), valid liens perfected (but not granted) after the bankruptcy filing date (to the extent such perfection in respect of a pre-filing date claim is expressly permitted under the Bankruptcy Code), and Permitted Liens (to be defined in the Loan Agreement);

provided that the Debtor Collateral shall not include (i) any property to the extent the grant of a security interest therein is prohibited by law or requires the consent of a governmental authority, (ii) with respect to a first tier foreign subsidiary, the excess over 65% of the equity interests in such subsidiary and (iii) the equity in any subsidiary of a first tier foreign subsidiary; provided further that the Debtor Collateral shall nevertheless include cash proceeds arising from the disposition of the property described in (i) through (iii) above; and

Pursuant to Bankruptcy Code § 364(c)(1), the Asset-Backed DIP Facility shall constitute claims (the "Superpriority Claims") having superpriority over any and all administrative expenses of any kind, subject to the Carve-Out (as defined below).

The Administrative Agent shall be permitted to enforce the Superpriority Claims in respect of the obligations of the Parent and the other Originators owing to the Borrower under the Asset-Backed DIP Facility, as assignee of the Borrower.

Carve-Out: The liens and the Superpriority Claim of the Lenders shall be subject to an agreed upon amount for a carve-out for the following items: (i) all fees and expenses in an aggregate amount to be determined incurred by professionals of the Debtors and the official committee of unsecured creditors appointed in the Chapter 11 Cases following delivery of a notice (a "Carve-Out Notice") to the Debtors by the Administrative Agent of the occurrence of a Facility Termination Event under the Asset-Backed DIP Facility, (ii) professional fees and disbursements incurred prior to the delivery of the Carve-Out Notice ("Prior Expenses") and (iii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court (collectively, the "Carve-Out"); provided, however, that the Carve-Out shall not include professional fees and disbursements incurred in connection with asserting any claims or causes of action against the Administrative Agent or the Lenders and/or challenging or raising any defense to any obligations under the Transaction Documents. A Carve-Out Notice is delivered by the Administrative Agent following the occurrence of a Facility Termination Event.

As long as no Facility Termination Event shall have occurred and be continuing and no Carve-Out Notice shall have been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses, to the extent permitted by the Bankruptcy Court payable under sections 330 and 331 of the Bankruptcy Code, as the same may be payable, and the amount so paid shall not reduce the

|   |   |
|---|---|
|   | Carve-Out, provided that upon delivery of a Carve-Out Notice, the foregoing permission shall be limited to an amount equal to Prior Expenses *plus* the Carve-Out. |
|   | The provisions set forth in this section and in the previous section (entitled "Collateral / Claim") have been established by interim and final orders of the Bankruptcy Court relating to the Existing Facility described below and shall be confirmed by subsequent court orders relating to the modifications to the Existing Facility contemplated hereby (collectively, the "Financing Orders"). |
| Interest Rates: | At the Borrower's option, at either the Eurodollar Base Rate plus [6.0]% (for interest periods of 1, 3 or 6 months, at the option of the Borrower), or the Alternate Base Rate plus [5.0]%, each per annum on the daily outstanding balance. |
|   | The Eurodollar Base Rate shall be subject to an interest rate floor of 3.0%. The Alternate Base Rate shall be subject to a floor of 4.0%. |
|   | After the occurrence of a Facility Termination Event, interest on all Loans and all other outstanding amounts will bear interest at a rate equal to 2.00% per annum plus the otherwise applicable rate. |
| Commitment Fees: | Commitment fees equal to 1.5% per annum times the daily average unused portion of the Lenders' commitments to make Revolving Loans shall accrue from the effective date of the Transaction Documents and shall be computed on the basis of a 360-day year and payable monthly in arrears and upon the maturity or termination of the Asset-Backed DIP Facility. |
| Cash Management: | The cash management system of the Borrower shall be maintained substantially as in existence prior to the filing date as modified by interim and final cash management motions and shall provide for daily calculation of the Borrowing Base, reports as to collections and new receivables originations ("Interim Reports") and "sweeps" of the collections received by Originators into concentration accounts ("Borrower Accounts") maintained at Bank of America and JP Morgan (each, in respect of Borrower Accounts maintained with it, the "Borrower Bank") held in Borrower's name and subject to account control agreements which allow the Administrative Agent to issue a notice to the Borrower Bank upon the occurrence of a Trigger Event or an event that but for notice or lapse of time would constitute a Trigger Event (a "Stop Notice"). |
|   | Borrower Accounts may be swept into an account of Parent on a daily basis so long as no Stop Notice has been issued by the Administrative Agent. |
| Prepayments: | Voluntary: Prepayments of the Loans may be made at any time without premium or penalty (other than breakage costs to the extent applicable). |
|   | Mandatory: Borrower shall prepay the Loans (i) as and to the extent required pursuant to the cash "sweep" mechanic described under "Application of Payments" below and (ii) if on any day the aggregate outstanding principal amount of Loans exceeds the Borrowing Base, in which case collections must be applied to fund the Required Reduction. Mandatory prepayment of the Loans may be made at any time without premium of penalty (other than breakage costs to the extent applicable). |
| Application of Payments: | On each business day prior to the Facility Termination Date (whether due to a Trigger Event, Facility Termination Event, scheduled maturity or otherwise) the Borrower shall cause all amounts on deposit in the Reserve Account and all |

March 20, 2009

collections to be applied in the following order of priority:

(1) on a pro rata basis in no order of priority amongst themselves, (A) to the payment of interest and fees then due and payable to Lenders with respect to Loans, (B) to the payment of any additional fees then due and payable to the Administrative Agent and (C) to the payment of costs and expenses incurred by the Administrative Agent in connection with the enforcement of any Transaction Document;

(2) to the extent of any Required Reduction, to the payment of Revolving Loans or, if the Revolving Loans have been paid in full, at the Borrower's option, either to prepay the Term Loans or to fund the Reserve Account;

(3) on each servicing fee payment date, to the Servicer to pay servicing fees then due;

(4) if the conditions precedent to additional Loans are satisfied, remit such remaining Collections to the Borrower;

(5) if the conditions precedent to additional Loans have not been satisfied to the repayment of the Revolving Loans or, if the Revolving Loans have been paid in full, at the Borrower's option, either to the payment of the Term Loans or to fund the Reserve Account;

(6) if the final payout date has occurred or would result from such payment, to the Borrower any remaining Collections and amounts on deposit in the Reserve Account.

On each business day to occur on or after the Facility Termination Date, the Borrower shall cause all amounts on deposit in the Reserve Account and all collections to be distributed on such day in the following order of priority:

(1) to the payment of costs and expenses incurred by the Administrative Agent in connection with the enforcement of any Transaction Document or the collection of any amounts due thereunder;

(2) to the payment of servicing fees;

(3) to the payment of the aggregate accrued and unpaid interest and fees then due to Lenders with respect to the Loans;

(4) to the payment of accrued and unpaid fees payable to the Administrative Agent;

(5) to pay the Lenders an amount equal to the aggregate principal balance of the Loans;

(6) to the payment of all remaining obligations then due and payable to the Secured Parties under the Transaction Documents; and

(7) after all obligations owing to the secured parties under the Transaction Documents are paid in full, pay to the Borrower any remaining collections.

| | |
|---|---|
| Representations and Warranties: | Customary and appropriate representations and warranties for receivables securitization and debtor in possession financings and consistent with the terms of the Receivables Loan Agreement dated as of July 1, 2008, as amended, and all related documents (collectively, the "Existing Facility", as described in the Final Order approving the Existing Facility, entered by the Bankruptcy Court on January 15, 2009 (the "Final Order"), including representations and warranties that all necessary court authorizations are in full force and effect and shall not have been vacated, stayed, reversed, modified or amended. |
| Covenants: | Customary and appropriate affirmative and negative covenants for receivables securitization and debtor in possession financings and consistent with the terms of the Existing Facility, including without limitation, (i) negative covenants (subject to certain basket amounts) against incurrence of debt, dividends, liens, asset dispositions, mergers, acquisitions, investments, loans and advances, capital expenditures, prepayment of other obligations and (ii) customary reporting requirements. |
| Trigger Events: | "Trigger Events" shall have the effect of causing the revolving period to terminate and full turbo of cash flow from receivables to be paid pursuant to the priority of payments until the Loans are repaid in full and shall include the following events, subject to applicable grace periods, exceptions and materiality qualifications to be set forth in the Loan Agreement and include, without limitation: |

- failure by any Tribune Party to pay interest or any fees or to make a deposit of amounts due on account of dilution when due under any Transaction Document and, in any case, such failure shall continue for two business days after the earlier of written notice or actual knowledge by a responsible officer of the applicable Tribune Party (each, a "Responsible Officer");

- failure by any Tribune Party to make any payment of principal (including a Required Reduction) on any Loan when due or to make any required deposit to the Reserve Account when due;

- failure by any Tribune Party to pay any other amounts or make any other deposit when due under any Transaction Document and such failure shall continue for ten days after the earlier of written notice or actual knowledge by a Responsible Officer;

- failure of Servicers to provide any Interim Report within one Business Day of the date when due; provided that, if the failure results from a force majeure event, the grace period shall be two Business Days instead of one Business Day;

- failure of Servicers to provide during any calendar month more than two Interim Reports when due other than by reason of a force majeure event not to exceed two weeks in duration;

- breach of covenant or other obligation under the Transaction Documents by a Tribune Party and, if such failure is capable of being remedied, such Tribune Party shall have failed to remedy such failure within 15 business days after the earlier of written notice or actual knowledge by a Responsible Officer;

- failure to maintain perfection and priority of liens on the Collateral, free of all liens other than Permitted Liens (to be defined in Loan Agreement);

- the occurrence of a Servicer Default (as defined in the Transaction Documents)

March 20, 2009

    or Facility Termination Event;

- change of control of Parent or (except as permitted by the Transaction Documents);

- the three-month rolling average dilution ratio[1] exceeds (i) for the publishing division, 7% of the net receivables allocable to that business or (ii) for the broadcast division, 3% of the net receivables allocable to that business;

- (1) as at the end of the fiscal month ended on March 29, 2009, August 30, 2009 or January 30, 2010, the three-month rolling average default ratio[2] (calculated on the aggregate receivables across both the publishing and broadcast divisions) exceeds 9% of the net receivables or, (2) as at the end of any other fiscal month, the three-month rolling average default ratio exceeds 8.0% of the net receivables;

- (1) as at the end of the fiscal month ended on March 29, 2009, August 30, 2009 or January 30, 2010, the three-month rolling average delinquency ratio[3] (calculated on the aggregate receivables across both the publishing and broadcast divisions) exceeds 8.75% of the net receivables, or (2) as at the end of any other fiscal month, the three-month rolling average delinquency ratio exceeds 7.75% of the net receivables;

---

[1] "Dilution ratio" means the ratio (expressed as a percentage) computed for any fiscal month by dividing (a) the aggregate amount of publishing or broadcast Receivables, as applicable, which became Diluted Receivables during that fiscal month, by (b) the aggregate amount of all sales which gave rise to publishing or broadcast Receivables, as applicable, that were generated during the fourth preceding fiscal month, in the case of broadcast Receivables, or during the second preceding fiscal month, in the case of publishing Receivables.

"Diluted Receivable" means any Receivable or part thereof which is either (a) reduced, cancelled or adjusted as a result of (i) any defective services or any failure of the applicable Originator to provide any services or otherwise to perform under any related Contract, (ii) any change in the terms of, or cancellation of, a Receivable or any rebate, administrative fee, discount, credit memo, refund, non-cash payment (other than payments by check), chargeback, allowance or any billing or other adjustment by the relevant Originator (except any such change made in settlement of such Receivable in accordance with the Credit and Collection Policies resulting from the financial inability of the Obligor to pay such Receivable), or (iii) any setoff or offset in respect of a claim by the relevant Obligor against the relevant Originator or against the Borrower, or (b) subject to any specific counterclaim or defense whatsoever against the relevant Originator or with respect to the actions of the relevant Originator or against the Borrower (except the discharge in a proceeding under applicable Insolvency Law of the Obligor thereof).

[2] "Default ratio" means the ratio for any fiscal month by dividing (a) the sum (without duplication) of the aggregate Outstanding Balance of all Receivables which were 121-150 days past their invoice date as at the end of such fiscal month plus the aggregate Outstanding Balance of all Receivables which became Defaulted Receivables during such fiscal month by (b) the aggregate amount of sales giving rise to Receivables that were generated during the fourth month immediately preceding the fiscal month for which the default ratio is being calculated.

[3] "Delinquency ratio" means the ratio (expressed as a percentage) for any fiscal month by dividing:

(a)     the aggregate Outstanding Balance of all Receivables which were 91 days (but less than 121 days) past their invoice date as of the end of such fiscal month by

(b)     the difference of (i) the aggregate Outstanding Balance of billed Receivables as of the last day of such fiscal month, plus (ii) the lesser of (A) the aggregate Outstanding Balance of unbilled Receivables or (B) 50% of the aggregate Net Eligible Receivables Balance at such time, minus (iii) unapplied cash as of the last day of such fiscal month.

- the three-month rolling average days sales outstanding ratio exceeds (i) 75 days for the publishing division or (ii) 120 days for the broadcast division;

- failure to pay any final judgment, which judgment is not discharged, waived or stayed for a period of fifteen days, or any action shall be legally taken by a judgment creditor to levy upon assets or properties of the Borrower to enforce any such judgment; and

any Transaction Document shall cease to be effective or shall be contested by any Tribune Party.

Facility Termination Events: "Facility Termination Events" shall give the Lenders the right to accelerate the Loans, replace Servicers and foreclose on Collateral and include the following events, subject to applicable grace periods, exceptions and materiality qualifications to be set forth in the Loan Agreement. Facility Termination Events include, without limitation:

- breach of representation or warranty under the Transaction Documents or by a Tribune Party provided that if such breach is capable of being cured, such breach shall not constitute a Facility Termination Event unless it continues unremedied for five business days after the earlier of written notice or actual knowledge by a Responsible Officer;

- insolvency of the Borrower;

- a court shall enter an order (i) dismissing the Chapter 11 case of any Guarantor (a "Chapter 11 Case"), (ii) converting any Chapter 11 Case to a Chapter 7 case, (iii) appointing a trustee or comparable person in such Chapter 11 Case, (iv) appointing a responsible officer or examiner with enlarged powers relating to the operation of the business of the Guarantors or their affiliates or (v) appointing a receiver, interim receiver or receiver and manager in a Chapter 11 Case;

- a court shall enter an order amending, supplementing, staying, vacating or otherwise modifying a Financing Order without the consent of the Administrative Agent, or a Tribune Party shall apply for authority to do so, or a Financing Order shall cease to be in full force and effect; provided that no Facility Termination Event shall occur to the extent that any such amendment, supplement or other modification is made in compliance with the Transaction Documents and is not adverse, in the reasonable judgment of the Administrative Agent, to the rights and interests of the Lenders;

- a Tribune Party shall seek to, or support any other person's motion or pleading to, (i) disallow the claims of any Lender or the liens held by the Administrative Agent or (ii) oppose a motion by a Lender or the Administrative Agent to confirm its claims or liens;

- any Guarantor shall make any payment on any Indebtedness of the Filing Debtors arising before the petition date, other than as permitted by order of the Bankruptcy Court in respect of claims that are (i) sought pursuant to the "first day" motions filed by the Filing Debtors and subsequently authorized by orders in the Chapter 11 Cases, (ii) payments on account of real estate leases that are assumed pursuant to Bankruptcy Court order and (iii) authorized in other orders in the Chapter 11 Cases in an aggregate amount for all such orders under this clause (iii) not to exceed $30,000,000;

- any Tribune Party shall fail to comply with the Financing Orders;

- the entry of an order granting (i) any other claim superpriority (or equivalent) status or (ii) a lien equal or superior to that of the Administrative Agent (other than the Carve-Out and Permitted Liens);

- the entry of an order authorizing recovery from the Collateral for any cost of preservation or disposition thereof, under Section 506(c) of the Bankruptcy Code or otherwise, other than as may be provided in the Financing Orders, or certain de minimus amounts or with the consent of the Administrative Agent;

- the entry of one or more orders granting relief from the automatic stay allowing any third party to proceed against assets of the Tribune Parties which have value in excess of $25,000,000 in the aggregate;

- the filing of a motion, pleading or proceeding by a Tribune Party which could reasonably be expected to result in a material impairment of the rights or interests of the Administrative Agent or any Lender; or a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment;

- the Secured Obligations shall not have been paid in full by the earlier of the Maturity Date and the 45th day after the Facility Termination Date.

| | |
|---|---|
| <u>Conditions Precedent to Initial Borrowings:</u> | Conditions precedent that are usual and customary for the Existing Facility and other facilities of this type (including, without limitation, no violation or conflicts, governmental, board and third party approvals, absence of material litigation and compliance with Margin Regulations and the USA Patriot Act), and such additional conditions precedent for the initial borrowing as the Administrative Agent shall deem appropriate in the context of the proposed transaction. Without limiting the foregoing, the following condition shall apply: (i) definitive documentation evidencing the Asset-Backed DIP Facility (including, without limitation, the Loan Agreement, the Guaranty and any collateral documentation) shall be in form and substance consistent with the terms of the Existing Facility (the "Transaction Documents") and (ii) all necessary Bankruptcy Court authorizations shall have been obtained, and all related court orders shall be in form and substance satisfactory to the Administrative Agent. |
| <u>Conditions to All Borrowings:</u> | In addition to the conditions precedent to funding of the Asset-Backed DIP Facility set forth above, the conditions to all borrowings will include requirements relating to prior written notice of borrowing, the availability of Loans under the Borrowing Base, the accuracy of representations and warranties, the absence of any Trigger Event, potential Trigger Event, Facility Termination Event or potential Facility Termination Event, and the full force and effectiveness of the Financing Orders, and will otherwise be customary and appropriate consistent with the terms of the Existing Facility. |
| <u>Assignments:</u> | The Lenders may assign all, or in an amount of not less than $1.0 million, any part of, their respective shares of the Asset-Backed DIP Facility to their affiliates or one or more banks, financial institutions or other entities that are eligible assignees (to be described in the Transaction Documents) which (other than in the case of assignments made by or to Barclays) are acceptable to the Administrative Agent and (prior to the occurrence of a matured or unmatured Trigger Event) the Borrower, such consent not to be unreasonably withheld or delayed. Upon such |

| | |
|---|---|
| | assignment, such affiliate, bank, financial institution or entity will become a Lender for all purposes under the Transaction Documents; provided that assignments made to affiliates and other Lenders will not be subject to the above described consent or minimum amount requirements. |
| Waivers/Amendments: | Amendments and waivers will require the approval of Lenders holding in the aggregate more than 50% of the Loans and commitments under the Asset-Backed DIP Facility (the "Required Lenders"); provided that (i) the consent of each adversely affected Lender will be required with respect to, among other things, increases in the commitment of such Lender, reductions of principal, interest or fees or delays in the scheduled payment date therefor, releases of the Borrower or the Parent of their respective obligations or (except in connection with permitted dispositions) release of more than 5% of the Collateral; and (ii) the consent of all Lenders shall be required to effect any amendment with respect to interest rates on, or maturity of the Loans or, the definition of Required Lenders.<br><br>In addition, the consent of Lenders holding 66 2/3% of the aggregate amount of the Loans and commitments shall be required to make certain amendments and waivers, including changes to any definitions affecting Borrowing Base eligibility criteria that have the effect of increasing availability. |
| Remedies: | Customary and appropriate consistent with the terms of the Existing Facility. |
| Miscellaneous: | Customary and appropriate indemnification, breakage, tax, reserve requirement, and waiver and amendment provisions consistent with the terms of the Existing Facility. |
| Governing Law and Jurisdiction: | New York, except to the extent governed by the U.S. Bankruptcy Code. |
| Counsel to Arranger and Administrative Agent: | Mayer Brown LLP. |

March 20, 2009

## EXHIBIT A – INELIGIBLE RECEIVABLES

1. Receivables which are more than 91 days past invoice date.

2. Receivables (i) which are 121 days or more past invoice date, (ii) owed by a customer that is bankrupt, (iii) which have been identified by the applicable Originator as uncollectible in accordance with the applicable credit and collection policy or (iv) otherwise written-off by an Originator in accordance with its credit and collection policies (collectively, "Defaulted Receivables").

3. Receivables owed by a customer that previously owed amounts charged off as uncollectible or for which more than 35% of its receivables are Defaulted Receivables.

4. Receivables with payment terms in excess of 30 days of original invoice, subject to exceptions permitted under the Servicer's credit and collection policies provided no such modification would cause a receivable that would otherwise be a Defaulted Receivable to become eligible.

5. U.S. federal government receivables.

6. Excess concentrations (generally determined based on the rating of the largest customers).

7. Receivables as to which the related customers have disputed their obligation to pay.

8. Receivables that do not arise under an Eligible Contract.

"Eligible Contract" is a contract that, among other things, (i) complies with the applicable Originator's credit and collection policy, (ii) does not allow the obligor to defer or extend the payment of an invoiced amount, (iii) does not provide for the forgiveness or reduction of the amount required to be paid other than amounts for which the Tribune Parties maintain adequate reserves in accordance with GAAP and which amounts are included in the Contra Balance for such obligor, and (iv) is a legal, valid and binding obligation, enforceable in accordance with its terms, except as enforcement may be limited by insolvency law.

"Contra Balance" means the aggregate amount of funds or services owed by an Originator to the obligor on a Receivable for viewership guaranties, damages for breach of a broadcast rights arrangement or other agreement, rebates, fees, discounts, chargebacks, or other adjustments, excluding adjustments arising from the financial inability of such obligor to pay such Receivable.

Although Ineligible Receivables will not generate borrowing capacity under the Borrowing Base, all receivables originated by the Originators (eligible and ineligible) will be required to be sold to the Borrower.