# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 24, 2009 at 11:00 a.m. EST**<br>**Objection Deadline: April 17, 2009 at 4 p.m. EST** |

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO

The debtors and debtors in possession in the above-captioned cases (collectively,

the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), pursuant to section 1121(d) of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>"), Rule 9006 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9006-2 of the Local Rules of Bankruptcy Practice

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), for entry of an order extending the Debtors' exclusive periods to file a chapter 11 plan

or plans of reorganization through and including August 4, 2009 and to solicit acceptances of

such plan(s) through and including October 5, 2009. In support of this Motion, the Debtors

respectfully state as follows:

## JURISDICTION

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates

for the relief sought herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule

9006(b)(1) and Local Rule 9006-2.

## GENERAL BACKGROUND

2.       On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to

operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

3.       The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (Docket

No. 43).

4.       On December 18, 2008, the Office of the United States Trustee for the

District of Delaware (the "United States Trustee") appointed an official committee of unsecured

creditors (the "Committee"). No request has been made for the appointment of a trustee or

examiner.

5.      The Debtors have discussed the details of the relief requested herein with the Committee.  The Committee has no objection to this requested extension of exclusivity.

## **BACKGROUND OF THE DEBTORS**

6.      Based in Chicago, Illinois, Tribune Company ("Tribune") is America's largest employee-owned media and entertainment company and is the ultimate parent company of each of the Debtors.  Tribune directly or indirectly owns all (or virtually all) of the equity in 128 subsidiaries of which 110 are Debtors in these cases.  Tribune's operations are conducted through two primary business segments: (i) publishing and (ii) broadcasting and entertainment.

7.      The Debtors' publishing segment currently operates eight (8) major-market daily newspapers, distributes entertainment listings and syndicated content through its Tribune Media Services business unit.  The Debtors publish daily newspapers in two of the three largest metropolitan markets and are the nation's third largest newspaper publisher in terms of revenue and circulation.  In addition, the Debtors publish over 100 "niche" publications that target various geographic, ethnographic and demographic audiences.  The Debtors' publishing segment also manages the websites of the Debtors' daily newspapers, television stations, and other branded sites targeting specific communities of interest.  As of the Petition Date, the Debtors' publishing segment employed approximately 12,000 full-time equivalent employees in operations conducted in major markets across the United States.

8.      The Debtors' broadcasting and entertainment segment includes 23 television stations in 19 markets, including seven stations in the top 10 U.S. markets.  The Debtors also own and operate the cable "Superstation" WGN America, which is seen in approximately 71 million homes, and Chicago radio station WGN-AM.  The Debtors also manage the Chicago area's first and only 24-hour cable news channel, CLTV.  Through their

3

television stations and WGN America, the Debtors' broadcasting and entertainment segment reaches more than 80 percent of television households in the United States.  As of the Petition Date, the Debtors' broadcasting and entertainment segment employed approximately 2,600 full-time equivalent employees in operations conducted in major markets across the United States.

9.    For the quarterly period ended September 28, 2008, the consolidated financial statements of the Debtors and their non-Debtor affiliates reported approximately $7.6 billion in total assets and approximately $13.9 billion in total liabilities (excluding total shareholders' equity), which includes approximately $9.6 billion in senior and bridge loans and over $1.4 billion in bonds, notes and debentures.

## POST-PETITION DEVELOPMENTS

10.    The Debtors have been operating under the protection of chapter 11 for fewer than four months.  During this time, the Debtors have made significant progress in administering these cases.  They have, for example, (i) worked diligently to stabilize operations in a very difficult and uncertain economic environment as well as minimizing the disruption to their businesses as they transitioned to chapter 11, (ii) obtained significant "first day" and other relief, including the continuation or implementation of important employee benefit programs, (iii) prepared and filed schedules and statements of financial affairs for 111 Debtors, (iv) addressed cash management matters, (v) obtained debtor-in-possession financing, (vi) advanced negotiations toward a transaction for the disposition of the Chicago Cubs and related assets, (vii) undertaken an analysis of executory contracts and leases and obtained orders rejecting 54 real estate leases, and (viii) worked diligently on the development of a "go forward" business plan that will be necessary for the formulation of a plan of reorganization.

11.    The following is a non-exclusive summary of certain of the Debtors' activities since the Petition Date.

### A.    First Day Motions and Related Relief

12.    The Debtors filed 13 "first day" motions in these chapter 11 cases seeking authorization for: (i) the joint administration of these chapter 11 cases; (ii) the approval of debtor-in-possession financing through a receivables securitization facility; (iii) the payment of prepetition taxes and related obligations; (iv) the payment of prepetition insurance premiums and related obligations; (v) the continuation of prepetition customer programs; (vi) the payment of prepetition wages, salaries, benefits and related obligations; (vii) the approval of cash management systems and related relief; (viii) the approval of utility deposit procedures and provisions for adequate assurance in respect of approximately 200 utilities; (ix) the payment of prepetition broker claims; (x) the payment of prepetition claims of shippers and lien claimants; (xi) the extension of the deadline for filing schedules; (xii) the payment of prepetition claims of critical vendors and 503(b)(9) claimants; and (xiii) the retention of Epiq Bankruptcy Solutions, LLC as claims, noticing and balloting agent.  Final orders have been entered on all but the motion for approval of cash management systems (the "Cash Management Motion"), for which a final order has not yet been entered as the Debtors continue to work diligently with their major creditor constituencies to address their questions and inquiries.  The hearing on the Cash Management Motion is now scheduled for April 9, 2009.  Additionally, the Debtors filed a motion on March 20, 2009 to extend their debtor-in-possession financing facility (Docket No. 559), which is also scheduled to be heard on April 9, 2009.

**B.    Second Day Motions and Related Relief**

13.    The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing their litigation, real estate, tax and other needs of their business operations. Altogether, the Debtors filed 10 applications for retention of professionals under Bankruptcy Code sections 327(a) or 327(e)[2] as well as a motion to establish ordinary course professional procedures for the retention of over 90 "ordinary course" professionals.  Orders have been entered granting the "ordinary course" professional motion and all retention applications.

**C.    Cash Management Motion, Section 345 Compliance and Rule 2015.3 Motion**

14.    The Debtors received interim approval of their Cash Management Motion on December 10, 2009.  Since then, the Debtors have been in ongoing discussions with their creditor constituencies and the United States Trustee concerning the terms of a proposed final cash management order.  These discussions have included questions respecting the cash management systems and the appropriate means for compliance with Bankruptcy Code section 345 and the United States Trustee Operating Guidelines for Chapter 11 Cases (the "Guidelines"). Additionally, the Debtors and their professionals have devoted substantial time developing a workable protocol to comply with the non-Debtor reporting requirements imposed under newly enacted Bankruptcy Rule 2015.3.

15.    Compliance issues arising under the investment guidelines imposed by Bankruptcy Code section 345 have also required significant time and attention of the Debtors. The Debtors invest cash assets in various money market funds that do not meet the strict

---

[2] These professionals are Sidley Austin LLP, Cole, Schotz, Meisel, Forman & Leonard, P.A., Alvarez & Marsal North America, LLC, McDermott Will & Emery LLP, Jenner & Block LLP, PricewaterhouseCoopers LLP, Paul, Hastings, Janofsky & Walker LLP, Reed Smith LLP, Daniel J. Edelman, Inc. and Lazard Freres & Co. LLC.

requirements of section 345 and the Guidelines.  The Debtors have provided regular updates to

the United States Trustee and discussed these compliance issues with their major creditor

constituencies.  The Debtors have requested several extensions of time to comply with the

section 345 and Guidelines requirements and are still working toward a satisfactory solution

given their needs, cash management practices and the nature of the markets at this time.

16.     Additionally, since entry of the interim cash management order, the

Debtors and their legal professionals have worked with the Debtors' depository banks and the

United States Trustee to ensure that each bank has completed a Uniform Depository Agreement

(the "UDA") with the United States Trustee, and the Debtors have closed and migrated accounts

from non-UDA banks to UDA banks as appropriate.  The Debtors have also closed certain

foreign accounts, but have retained five essential foreign accounts using "capped" deposit

amounts to satisfy compliance concerns.

17.     The Debtors are also required to comply with new Bankruptcy Rule

2015.3, which became effective on December 1, 2008.  Rule 2015.3 requires additional financial

reporting for non-Debtor entities in which the Debtors hold a "controlling or substantial" interest.

The Debtors wholly own 18 non-Debtor entities and hold non-majority equity interests in eight

non-Debtor entities.  In light of Rule 2015.3's very recent enactment, there is scant interpretive

guidance or precedent respecting its application.  Rule 2015.3's literal reporting requirements

present challenges to the Debtors in terms of, among other things, achieving workable reporting

mechanics.  On January 12, 2009, the Debtors filed a motion seeking additional time to file their

initial Rule 2015.3 reports or to seek a modification of such reporting requirements, and on

February 10, 2009 and March 23, 2009, the Debtors filed supplements to the motion

(collectively, the "2015.3 Motion").  With the consent of the United States Trustee, the hearing

on the 2015.3 Motion has been adjourned several times, as it has been continued in tandem with the Cash Management Motion.

18.    These cash management matters have consumed and continue to consume substantial time and effort by the Debtors and their professionals.  The Debtors believe that material progress has been made on these issues and are hopeful that the entry of appropriate orders will occur in the near term.

### D.    Schedules and Statements of Financial Affairs; Bar Date

19.    The preparation of schedules and statements of financial affairs for 111 Debtors has been a significant and time consuming undertaking for the Debtors and their advisors over the past several months, entailing the collection, review and categorization of thousands of documents and intensive coordination with all of the Debtors' various business units.  On March 23, 2009, the Debtors filed their schedules and statements of financial affairs, consistent with the Court's prior order extending the deadline for such filing.

20.    On March 6, 2009, the Debtors filed their motion to establish a bar date for filing proofs of claims and approving the form and manner of notice thereof (Docket No. 489).  An order establishing a general bar date of June 12, 2009 was entered on March 25, 2009.

### E.    Employee Retention, Benefits and Union Relations

21.    The Debtors employ approximately 13,900 full-time and 2,400 part-time employees.  Approximately 15% of the Debtors' employees are represented by unions.  Over the past several months, the Debtors and their advisors reviewed existing and proposed employee benefit programs and worked with their creditor constituencies to address concerns raised regarding treatment of current and former employees.  These efforts resulted in the filing of several motions to continue or implement various types of employee benefits.  To date, the

Debtors have obtained Court authorization to preserve or implement important employee related benefits, including the following: (i) implementation of an employee retention plan related to certain broadcasting operations (Docket No. 206); (ii) payment of prepetition contributions to union pension plans and continued contributions post-petition (Docket No. 207); (iii) payment of prepetition amounts exceeding the $10,950 cap to employee sales representatives (Docket No. 231); (iv) implementation of a new severance policy for non-union employees and continued severance arrangements in accordance with collective bargaining agreements for union employees (Docket No. 340); (v) payment of prepetition amounts under certain incentive programs (Docket No. 324); and (vi) continuation of medical benefits to employees terminated prior to implementation of the post-petition severance arrangement (Docket No. 474).

### F.    **The Cubs Transaction**

22.    Since the commencement of these chapter 11 cases, the Debtors, and specifically, Tribune, have continued to pursue a potential transaction involving the Chicago National League Ball Club, LLC (i.e. the Chicago Cubs) and related entities that, if successfully concluded, will allow the Debtors to monetize a portion of these valuable assets.  The ongoing efforts to bring this transaction to closure require the expenditure of significant time by Tribune management.

### G.    **Contracts and Unexpired Leases**

23.    Executory Contracts.  The Debtors and their advisors are currently engaged in the analysis and review of thousands of executory contracts and leases.  Analysis of these contracts is ongoing and is an integral component of the development of the Debtors' plan of reorganization.  In addition, since the filing of these cases, the Debtors have addressed numerous inquiries from contract counterparties concerning the status of their contracts and

leases. These efforts continue to require ongoing attention from the Debtors' management team and advisors.

24.    <u>Unexpired Real Estate Leases</u>. On January 15, 2009, the Debtors obtained an order granting their first omnibus motion to reject leases, which authorized the rejection of leases for vacant office, distribution or warehouse space, resulting in an annual cost savings to the Debtors in excess of approximately $3.3 million (Docket No. 226).  Since that time, the Debtors have obtained orders permitting their second and third omnibus motions to reject leases on February 20, 2009 and March 23, 2009, respectively, resulting in the rejection of an additional 20 leases with a combined estimated annual cost savings to the Debtors of approximately $ 2.8 million.  To maintain flexibility and facilitate further restructuring, the Debtors obtained an order granting their request for an extension of time, through and including July 6, 2009, to assume or reject their remaining unexpired real estate leases.  Resolution of assumption or rejection of the leases is also an integral component of the Debtors' plan of reorganization.

**H.**    **Formulation of Business Plan**

25.    The Debtors have undertaken the extensive operational and financial analyses necessary to the formulation of a "go forward" business plan.  The business plan will provide the foundation for plan-related negotiations with the Debtors' major creditor constituencies anticipated to occur during the extended exclusivity period.

I.    **Creditor Relations**

26.    The Debtors have worked diligently to maintain a cooperative and responsive relationship with their major creditor constituencies, including the Committee and the steering committee comprised of the Debtors' senior lenders (the "Steering Committee"). Throughout these cases, the Debtors have responded to and continue to respond to many requests for documentation and information from the professionals for the Committee and the Steering Committee, and the Debtors maintain a virtual data room with numerous documents uploaded for access pursuant to appropriate requests.

27.    Further, the Debtors and their advisors regularly communicate with their major creditor constituencies and advisors.  In addition, since the Petition Date, the Debtors have participated in several meetings with their creditor constituencies, and have on three separate occasions hosted meetings among representatives of these constituencies.

## RELIEF REQUESTED

28.    By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that (i) the period in which the Debtors have the exclusive right to file a chapter 11 plan be extended through and including August 4, 2009; and (ii) the period in which the Debtors have the exclusive right to solicit acceptance of such plan be extended through and including October 5, 2009.  This is the Debtors' first request for an extension of their Exclusive Periods (as defined below).  The Debtors further request that such an order be without prejudice to their rights to seek additional extensions of the Exclusive Periods.

**BASIS FOR RELIEF**

29.     Section 1121(b) of the Bankruptcy Code provides for an initial period of

120 days after the commencement of a chapter 11 case during which a debtor has the exclusive

right to file a plan of reorganization (the "Exclusive Filing Period").  Section 1121(c)(3) of the

Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, it has

an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance

of such plan (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period,

the "Exclusive Periods").  The Debtors' initial Exclusive Filing Period will expire on April 6,

2009,[3] and the Debtors' initial Exclusive Solicitation Period will expire on June 5, 2009.  Section

1121(d) permits the Court to extend the Exclusive Periods for "cause."

A.     **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend
the Exclusive Periods "For Cause"**

30.     The objective of a chapter 11 reorganization case is the negotiation,

formulation, development, confirmation and consummation of a confirmable plan of

reorganization, and it is the intention of the Debtors to achieve that objective.  The exclusivity

periods under section 1121(d) are intended to afford a debtor a full and fair opportunity to

formulate and propose such a plan of reorganization and to solicit acceptances thereof without

the deterioration and disruption to its operations that could result from the filing of competing

plans of reorganization by non-debtor parties.  In circumstances where the initial 120 and 180-

day Exclusive Periods prove to be an unrealistic time frame within which a debtor may otherwise

be forced to file a plan of reorganization, section 1121(d) of the Bankruptcy Code allows the

Bankruptcy Court to extend the debtor's exclusive periods for "cause":

---

[3] Pursuant to Rule 9006-2 of the Local Rules, the Debtors Exclusive Filing Period shall be automatically extended
until the Court acts on this Motion.  Del. Bankr. LR 9006-2.

(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

(2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

(B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

31.    It is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of a particular case. See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); 203 N. LaSalle Street P'ship v. Bank of Am., N.A., 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for the purpose of an extension of the Exclusive Periods, courts have looked to the legislative history of section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Courts have found that Congress did not intend that the 120- and 180-day periods be a hard and fast rule. See Amko Plastics, Inc., 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility"). Rather, Congress intended that the debtor's exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruption

to the business that would occur with the filing of competing plans of reorganization.  See

Geriatrics Nursing Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995) ("The

opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the

debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure

its survival as a business.").  Further, Congress recognized that often a 120-day exclusivity

period will not afford a debtor sufficient time to formulate and negotiate a plan:

> [t]he court is given the power, though, to increase . . . the 120-day period
> depending on the circumstances of the case.  [T]he bill allows the
> flexibility for individual cases that is not available today.  For example, if
> an unusually large company were to seek reorganization under chapter 11,
> the Court would probably need to extend the time in order to allow the
> debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

      32.     When determining whether cause exists for an extension of a debtor's

exclusivity periods, courts rely on a variety of factors, each of which may provide sufficient

grounds for extending the periods.  Factors considered by the courts in making such a

determination include:  (a) the size and complexity of the case; (b) the necessity of sufficient

time to negotiate and prepare adequate information; (c) the existence of good faith progress

toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether

the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor

has made progress in negotiating with creditors; (g) the length of time the case has been pending;

(h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved

contingencies exist.  See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc., 2005 U.S. Dist.

LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging Corp., 101 B.R. 405,

409-10 (E.D.N.Y. 1989); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007);

In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Central Jersey

Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Dow Corning Corp., 208

B.R. 661, 665-66 (Bankr. E.D. Mich. 1997); In re Express One Int'l Inc., 194 B.R. 98, 100

(Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 420 (Bankr.

W.D. Mich. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr.

W.D. Tex. 1987). All such factors relevant to these cases support the relief requested.

### B.    Cause Exists for an Extension of the Exclusive Periods in These Cases

33.    The Size and Complexity of the Case. With 111 Debtors operating in a

national media and publishing marketplace, there should be no question that the Debtors' cases

qualify as "large and complex" by any measure. Indeed, the size and complexity of the Debtors'

cases is reflected in much of what has transpired in these proceedings to date. As noted, the

Debtors have focused substantial time and effort to stabilize operations in a very difficult and

uncertain economic environment while also ensuring as smooth a transition as possible to

chapter 11. The Debtors have also devoted substantial resources toward compiling and

completing schedules and statements of financial affairs for 111 Debtors, which were just filed

on March 23, 2009. The Debtors continue to address with the United States Trustee and other

parties in interest the terms of an acceptable cash management order applicable to the 129 Debtor

and non-Debtor entities and to finalize protocols for investment guidelines under Bankruptcy

Code section 345 and for non-Debtor reporting requirements under the new Bankruptcy Rule

2015.3. Finally, with approximately 14,600 full-time equivalent employees as of the Petition

Date, the Debtors have focused significant attention to employee related issues and have, to date,

obtained the entry of no fewer than six orders continuing or implementing employee benefit

programs.

34.    Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan. See H.R. No. 95-595, at 231-232,406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); see also In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The size and complexity of the Debtors' cases clearly militate in favor of an extension of the Exclusive Periods.

35.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information. The Debtors have not been dilatory in these cases. Rather, the Debtors have worked expeditiously to address critical issues and move these cases forward. The Debtors are now engaged in the process of developing the long-term business plan necessary for the formulation of a plan of reorganization. Once the business plan is finalized, the Debtors will be in a position to commence substantive negotiations with their major creditor constituencies respecting a chapter 11 plan.

36.    The Existence of Good Faith Progress Toward Reorganization. The Debtors have made a great deal of progress in these chapter 11 cases, and have done so while working cooperatively with their major creditor constituencies. In the months following the Petition Date (and as discussed in detail above), the Debtors have managed their businesses in very difficult economic times while also attending to the heightened requirements of the

bankruptcy process. They have endeavored, through regular interaction with their primary

creditor constituencies, to establish and maintain a cooperative working relationship. The

Debtors are thus not seeking this extension to delay administration of the chapter 11 cases or to

exert pressure on their creditors. To the contrary, this request is intended to maintain a

framework conducive to an orderly, efficient and cost-effective restructuring process.

37.    The Debtors Are Paying Their Debts as They Come Due. Courts

considering whether to extend a debtor's exclusivity periods may also assess whether the debtor

is paying its debts when they come due. See In re McLean Indus., 87 B.R. 830, 834 (Bankr.

S.D.N.Y. 1987). As of the Petition Date, the Debtors had approximately $325 million in cash on

deposit. Together with funds provided by the debtor-in-possession financing facility, the

Debtors have sufficient liquidity to pay, and are paying, their undisputed post-petition

obligations as they come due. The Debtors continue to manage their businesses effectively and

are preserving the value of their assets for the benefit of their creditors. As of February 1, 2009,

the Debtors had $753 million in cash on deposit and the Debtors believe they will have sufficient

cash to fund these chapter 11 cases.

38.    The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable

Plan. As noted, the Debtors have sufficient liquidity to sustain their operations as a going

concern through their cash on hand together with their post-petition securitization facility. The

Debtors are currently developing their "go forward" business plan and anticipate that they will

soon be in a position to commence negotiations concerning a plan of reorganization.

39.    The Debtors Are Making Progress in Negotiating with Creditors. As

discussed above, the Debtors regularly consult with their creditor constituencies and have

worked hard to establish cooperative and productive relationships with them. The Debtors have

no reason to believe that this cooperative framework will not continue as they commence negotiations toward a confirmable plan.

40.    <u>The Short Tenure of These Cases</u>.  The Debtors' cases have been pending for fewer than four months, but as discussed above, the Debtors have accomplished a substantial amount in this relatively short period.  It is not uncommon for an extension of the Exclusive Periods to be requested at this early stage in such large and complex cases.  In light of the short duration of these cases, the challenges faced by the Debtors and the progress made to date, the Debtors submit that an extension of the Exclusive Periods is warranted.

41.    <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Cases</u>.  Termination of the Debtors' Exclusive Periods would adversely impact the Debtors' business operations and progress in these cases.  If this Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party in interest would be free to propose a plan of reorganization for each of the 111 Debtors.  Such a ruling would be destabilizing, potentially fostering a chaotic environment at the very time the Debtors are focusing their efforts on the successful reorganization of their businesses.  By prematurely terminating the Debtors' Exclusive Periods, the Debtors would be denied a fair opportunity to formulate and negotiate a confirmable plan of reorganization.  Such a result would not advance the rehabilitative objectives of the chapter 11 process, but would instead thwart those objectives.  Denying the relief requested herein could critically impair the Debtors ability to successfully reorganize with no benefit to the Debtors' estates, creditors, equity interest holders, vendors, customers or other stakeholders.

42.    The Debtors note that this is the first request for an extension of the Exclusive Periods and that the relief requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. See In re Linens Holdings Co., Case No. 08-10832 (CSS) (Bankr. D. Del. Sept. 19, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. June 6, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Dec. 19, 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. May 15, 2006); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. March 16, 2006); In re Meridian Automotive Systems Composites Operations, Inc., Case No. 05-11168 (MFW) (Bankr. D. Del. Aug. 11, 2005); In re The Glass Group, Inc., Case No. 05-10532 (PJW) (Bankr. D. Del. July 20, 2005).

43.    The Debtors respectfully submit that, under all the relevant facts and circumstances, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor, and will afford the parties the opportunity to pursue to fruition the beneficial objectives of a confirmable plan of reorganization.

44.    Based upon the foregoing, the Debtors submit that cause exists in these bankruptcy proceedings to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.  Specifically, the Debtors respectfully request that the Exclusive Filing Period be extended, through and including August 4, 2009, and that the Exclusive Solicitation Period be extended through and including October 5, 2009.

## NOTICE

45.      Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the administrative agents for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for Debtors' postpetition loan facility; (viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

46.      The Debtors have not previously sought the relief requested herein from this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of an order substantially in the

form of the proposed order attached hereto as <u>Exhibit A</u> (i) extending the Exclusive Filing Period

through and including August 4, 2009, (ii) extending the Exclusive Solicitation Period through

and including October 5, 2009 and (iii) granting such other relief as is just and proper.

Dated:    Wilmington, Delaware
          March 27, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Candice L. Kline
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
1000 N. West Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION