2.    **AMOUNTS AND TERMS OF THE LOANS**

2.1    **The Loans**

    (a)    Restructuring of Class A Loans under Original Agreement.

        (i)    The parties hereto hereby agree that on the terms and subject to the conditions hereof, on the Closing Date, the Class A Loans (as defined in the Existing Facility) shall be restructured so that such Class A Loans shall consist of loans made on a revolving basis (the "**Revolving Loans**") and term loans (the "**Term Loans**"), each in the amount set forth on Schedule 1-A (*Restructuring of Class A Loans*). Further, immediately following such restructuring, Barclays shall assign the Revolving Loans and Term Loans and its Revolving Commitment and Term Commitment to the Lenders such that, after giving effect to the assignment, each Lender shall hold Revolving Loans and/or Term Loans in the amount set forth on Schedule 1-B (*Lenders, Commitments and Percentages*) and shall have the Commitments set forth on such Schedule 1-B (*Lenders, Commitments and Percentages*). Each of the Lenders hereby accepts such assignment and shall pay to Barclays the amount of the principal amount of Revolving Loans and Term Loans set forth opposite its name on Schedule 1-B on the Closing Date.

        (ii)    Upon the effectiveness of the restructure and assignment referred to in clause (i) above, the note issued to Barclays under the Existing Facility shall be deemed "Cancelled by Restatement."

    (b)    The Revolving Loans.

On the Closing Date, each Revolving Lender will have an outstanding Revolving Commitment in the amount set forth on Schedule 1-B (*Lenders, Commitments and Percentages*). On the terms and subject to the conditions hereof, from time to time after the Closing Date and prior to the Facility Termination Date, each Revolving Lender will make Revolving Loans to the Borrower in an amount equal to such Revolving Lender's Revolving Percentage of the amount of all Revolving Loans requested by the Borrower pursuant to Clause 2.2(a) (*Incremental Borrowing procedures*); provided that, after giving effect to such Revolving Loans (including those Loans made under the Existing Facility that continue to be the Revolving Loans pursuant to the assignment under Clause 2.1(a)(i) on the Closing Date):

        (i)    the aggregate outstanding principal amount of the Revolving Loans for any Revolving Lender shall not exceed its Revolving Commitment;

        (ii)    the aggregate outstanding principal amount of Revolving Loans for all Revolving Lenders shall not exceed the aggregate Revolving Loan Commitments; and

(iii)    the Percentage Factor shall not exceed the Maximum Percentage Factor.

All borrowings and repayments of Revolving Loans shall be effected so that each Revolving Lender will have a ratable share (according to its Revolving Percentage) of all Revolving Loans. Each borrowing of Revolving Loans hereunder (each, an "**Incremental Borrowing**") shall be in a minimum aggregate principal amount equal to $1,000,000. Unless agreed otherwise by the Borrower, the Servicer and the Revolving Lenders, no more than four Incremental Borrowings shall occur in any calendar month. Subject to the foregoing and to the limitations set forth herein, the Borrower may borrow, prepay and reborrow the Revolving Loans hereunder. In order to fulfill the condition in clause (iii) above, the Borrower may choose to allocate a portion of an Incremental Borrowing to a deposit to the Cash Reserve Account (such deposit, the "**Cash Reserve Account Amount**").

(c)    The Borrower may, from time to time on any Monthly Settlement Date, upon at least five (5) Business Days' prior written notice (or such shorter period as each Revolving Lender may agree) to the Administrative Agent, elect to reduce the Revolving Commitment; provided, that (i) such prior written notice should not be required in connection with a prepayment under Clause 2.5(b) hereof (*Payment and Prepayment of Loans*); and (ii) after giving effect to any such reduction and any principal payments on such date, the aggregate Principal Balance of the Revolving Loans does not exceed the Revolving Commitment. Any such reduction shall reduce each Revolving Commitment hereunder ratably in accordance with each Revolving Lender's respective Revolving Percentages.

(d)    The Term Loans.

On the Closing Date, pursuant to the restructuring and assignments described in Clause 2.1(a)(i), each Term Lender will have an outstanding Term Loan in the amount set forth on Schedule 1-B (*Lenders, Commitments and Percentages*). Any amounts repaid under the Term Loans may not be re-borrowed.

2.2    **Loan Procedures**

(a)    Incremental Borrowing Request.

(i)    The Borrower shall request an Incremental Borrowing hereunder by submitting (or causing the Servicer to submit on behalf of the Borrower) to the Administrative Agent a written notice, substantially in the form of Exhibit B (*Form of Incremental Borrowing Request*) (each, an "**Incremental Borrowing Request**") prior to 1:00 p.m. (New York time) on the Business Day prior to the date of the proposed Incremental Borrowing (each, a "**Incremental Borrowing Date**") or such other times agreed upon by the Borrower, the Servicer and the Revolving Lenders.

(ii)    Each Incremental Borrowing Request shall, among other things, (A) specify (v) the amount of the requested Incremental Borrowing, (w) the

Aggregate Principal Balance after giving effect to such Incremental Borrowing, (x) the desired Incremental Borrowing Date (which shall be a Business Day), (y) the desired Rate Type and (z) the desired Tranche Period and (B) certify that, after giving effect to the proposed Incremental Borrowing, the Percentage Factor will not exceed the Maximum Percentage Factor on such Incremental Borrowing Date. Each Incremental Borrowing Request shall be irrevocable and binding on the Borrower.

(iii)    The obligations of any Revolving Lender to make Revolving Loans hereunder are several from the obligations of any other Revolving Lenders. The failure of any Revolving Lender to make Revolving Loans hereunder shall not release the obligations of any other Revolving Lender to make Revolving Loans hereunder, but no Revolving Lender shall be responsible for the failure of any other Revolving Lender to make any Revolving Loan hereunder.

(iv)    Notwithstanding anything herein to the contrary, a Revolving Lender shall not be obligated to fund any Revolving Loan at any time on or after the Facility Termination Date, at any time a Facility Event exists or would exist after making such Revolving Loan, or if, after giving effect thereto, the aggregate outstanding principal balance of the Revolving Loans funded by such Revolving Lender hereunder would exceed an amount equal to such Revolving Lender's Revolving Commitment.

(b)    Disbursement of Funds.

On each Incremental Borrowing Date, each applicable Revolving Lender shall remit its share of the aggregate amount of the Revolving Loans requested by the Borrower to the account of the Administrative Agent specified therefor to such Revolving Lender by wire transfer of same day funds. Upon receipt of such funds, the Administrative Agent shall remit such funds as follows: (i) with respect to the Cash Reserve Account Amount, the applicable Revolving Percentage of the Cash Reserve Account Amount to the Cash Reserve Account, and (ii) with respect to the balance of the applicable Incremental Borrowing, to the account specified by the Borrower in the relevant Incremental Borrowing Request by wire transfer of same day funds. Unless a Revolving Lender notifies the Administrative Agent prior to the date on which it is scheduled to remit its share of a Revolving Loan to the Administrative Agent that it does not intend to make such Revolving Loan, the Administrative Agent may assume that such Revolving Lender's share of such Revolving Loan will be remitted to the Administrative Agent. The Administrative Agent may, but shall not be obligated to, make the amount of such Revolving Loan available to the Borrower in reliance upon such assumption. If a Revolving Lender has not in fact made such Revolving Loan to the Administrative Agent, such Revolving Lender or the Borrower shall, on demand by the Administrative Agent, repay to the Administrative Agent the amount so made available together with interest thereon in respect of each day

during the period commencing on the date such amount was so made available by the Administrative Agent until the date the Administrative Agent recovers such amount at a rate per annum equal to (i) in the case of payment by a Revolving Lender, the Federal Funds Effective Rate for such day or (ii) in the case of payment by the Borrower, the interest rate applicable to the relevant Revolving Loan.

(c)    Denomination of Loans.

Each Loan made by the Lenders hereunder shall be denominated in U.S. Dollars.

(d)    Use of Proceeds.

(i)    The Borrower shall use the proceeds of the Loans only to (a) pay the purchase price for Receivables, pursuant to and in accordance with the terms of the Receivables Purchase Agreement, (b) pay transaction fees, costs and expenses incurred in connection with the consummation of the transactions contemplated by the Transaction Documents, (c) to make the payments to Parent in respect of the Intercompany Note or, if the Intercompany Note has been paid in full and the Borrower's Net Worth is not less than Required Capital Amount, to make distributions or intercompany loans to Parent, (d) make deposits to the Cash Reserve Account as provided hereunder; provided, that, notwithstanding anything herein or in any other Transaction Document to the contrary, the Borrower shall not use all or any portion of the proceeds of any Loan to pay the purchase price for any Receivable (i) if the most recent Interim Report has not been delivered pursuant to and in accordance with Clause 2.3 (*Reporting requirements*) of the Servicing Agreement, or (ii) that was originated by an Originator with respect to which a Originator Termination Event has occurred and is continuing, (e) fund other general corporate and working capital requirements and (f) pay costs of the administration of the Chapter 11 Cases in a manner consistent with the requirements of the Bankruptcy Code.

(e)    Notes.

Any Lender may request that Loans made by it be evidenced by a promissory note (each such note, a "**Note**") in substantially the form attached hereto as Exhibit D-1 (*Form of Term Note*) or Exhibit D-2 (*Form of Revolving Note*), as applicable. In such event, the Borrower shall prepare, execute and deliver to such Lender a Note payable to the order of such Lender (or, if requested by such Lender, to such Lender and its registered assigns) and in a form approved by the Administrative Agent. Thereafter, the Loans evidenced by such Note and interest thereon shall at all times (including after any assignment pursuant to Clause 10.3 (*Assignability*) or 10.19 (*Replacement of Lenders*)) be represented by one or more Notes in such form payable to the order of the payee named therein and its registered assigns.

2.3     **Payments Generally.**

(a)     The Borrower shall immediately pay to the Administrative Agent when due, in accordance with the terms hereof, for the account of the relevant Lender (i) such fees as are set forth herein and in the Fee Letters (which fees shall be sufficient to pay all fees owing to the Administrative Agent and Lenders), (ii) all principal of and interest on the Loans, (or) all amounts payable as Deemed Collections, and (or) all other amounts required to be paid to the Administrative Agent or the Lenders hereunder, including without limitation under Clauses 2.11 (*Breakage Costs*), 2.14 (*Indemnity for Reserves and Expenses*), 2.15 (*Indemnity for Taxes*), 9 (*Indemnities*) and 10.4 (*Costs and Expenses*). If any Person fails to pay any such secured Transaction Party Obligations when due, such Person agrees to pay, on demand, interest at the Default Rate in respect thereof until paid. Notwithstanding the foregoing, no provision of this Agreement or the Fee Letters shall require the payment or permit the collection of any amounts hereunder in excess of the maximum permitted by applicable law. If at any time the Borrower receives any Collections or is deemed to receive any Collections, the Borrower shall immediately pay such Collections or Deemed Collections to the Servicer for application in accordance with the terms and conditions hereof and, at all times prior to such payment, such Collections or Deemed Collections shall be held in trust by the Borrower for the exclusive benefit of the Secured Parties.

(b)     On each Business Day that is prior to the Facility Termination Date and on which no Facility Event is continuing (each, a "**Repeat Advance Date**") after each of the conditions in Clause 3.3 (*Conditions Precedent to All Repeat Advances*) have been met, any Collections (including Deemed Collections) received by the Servicer and deposited in the Borrower Concentration Account shall be remitted to the Borrower to the extent (and only to the extent) that after giving effect to such Repeat Advances, the Aggregate Principal Balance shall be equal to such Aggregate Principal Balance immediately prior to the receipt of such Collections; provided, further, that no such Repeat Advances may be made if, after giving effect to such Repeat Advances, the Percentage Factor would exceed the Maximum Percentage Factor, as determined by reference to the most recent Interim Report.

(c)     On any Business Day other than a Repeat Advance Date until the Final Payout Date, the Servicer shall set aside in the Borrower Concentration Account and hold in trust, for the holder of each, all Collections received on such day. On any Business Day other than a Repeat Advance Date, until all Secured Obligations have been paid in full, the Servicer shall, upon one Business Day's prior notice to the Administrative Agent (or sooner if directed by the Administrative Agent) (i) remit to the Administrative Agent's account the amounts set aside pursuant to the preceding sentence, and (ii) apply such amounts in accordance with Clause 2.6 (*Application of Collections Prior to Facility Termination Date*).

(d)     No payment of any of the Secured Obligations shall be considered paid or applied hereunder to the extent that, at any time, all or any portion of such payment or

application is rescinded by application of law or judicial authority, or must otherwise be returned or refunded for any reason. The Borrower shall remain obligated for the amount of any payment or application so rescinded, returned or refunded, and shall promptly pay to the Administrative Agent (for application to the Person or Persons who suffered such rescission, return or refund) the full amount thereof, plus the interest at the Default Rate from the date of any such rescission, return or refunding.

2.4     **Interest and Fees**

(a)     On each Settlement Date for a Tranche, the Borrower shall pay (in immediately available funds) to the Administrative Agent for the account of the Lenders, all accrued and unpaid Interest with respect to such Tranche.

(b)     The Servicer shall be entitled to receive a fee (the "**Servicing Fee**") from the Borrower on the weighted average daily Outstanding Balance of the Pool Receivables, payable in arrears on each Servicing Fee Payment Date at a rate per annum equal to the Servicing Fee Percentage. Notwithstanding anything herein to the contrary, the Servicing Fee shall be payable only from Collections pursuant to, and subject to the priority of payments set forth in, Clauses 2.6 (*Application of Collections prior to Facility Termination Date*) and 2.7 (*Application of Collections after Facility Termination Date*). To the extent such Collections are not sufficient to pay the Servicing Fee in full, none of the Borrower, the Administrative Agent, and the Lenders or any other Secured Party shall have any liability for the deficiency.

(c)     On each Monthly Settlement Date, with respect to each Calculation Period the Borrower shall pay to each Revolving Lender, an irrevocable unused fee (an "**Unused Fee**") in an amount equal to the product of (A) the Unused Fee Percentage times (B) the excess, if any, of (i) the sum of the Revolving Commitment extended by such Revolving Lender, minus (ii) the daily average outstanding Principal Balance of Loans held by such Lender during such Fee Calculation Period times (C) (i) the actual number of days in such Fee Calculation Period divided by (iii) 360. The Borrower shall pay to the Administrative Agent, for its own account or the account of the Lenders, certain Fees in the amounts and on the dates set forth in the Fee Letters.

(d)     On or before the third Business Day immediately before the end of each Tranche Period, the Administrative Agent shall furnish the Borrower with an invoice setting forth the amount of the accrued and unpaid Interest and Fees for such Tranche Period with respect to the Tranches held by the Lender(s).

2.5     **Payment and Prepayment of Loans**

(a)     The Borrower shall repay the outstanding principal amount of each Loan on the Maturity Date. Prior thereto, the Borrower:

(i)     shall, immediately upon any acceleration of the Loans pursuant to Clause 7.3 (*Acceleration of maturity*), repay the amount of the Loans to the extent so accelerated;

(ii)     shall, if on any date the Percentage Factor exceeds the Maximum Percentage Factor, as determined by reference to the most recent Interim Report delivered under the Servicing Agreement, make a prepayment of the Revolving Loans, or if the Revolving Loans have been paid in full the Borrower (at its option) shall either make a prepayment of the Term Loans or make a deposit to the Cash Reserve Account, in each case on the day such Interim Report is delivered in an amount sufficient to cause the Percentage Factor to be less than or equal to the Maximum Percentage Factor, as determined by reference to such Interim Report (any such payment or provision of cash collateral being a "**Required Reduction**"), but only to the extent Collections are available for such purpose pursuant to Clause 2.6 (*Application of Collections prior to Facility Termination Date*) or 2.7 (*Application of Collections after Facility Termination Date*); it being understood and agreed that it shall not be a breach of contract by the Borrower if Collections are not available for such purpose, but a Trigger Event shall occur under Clause 7.1(f) (*Trigger Events*) if such prepayment is not made on the day such Interim Report is delivered, whether or not Collections are available for such purpose;

(iii)     from and after the Facility Termination Date, shall repay the Loans out of Collections available for such purpose pursuant to Clause 2.7 (*Application of Collections after Facility Termination Date*).

(b)     The Borrower may, at its option, prepay on any Business Day all or part of the outstanding Principal Balance of the Revolving Loans or the Term Loans, without premium or penalty upon prior written notice delivered by it to the Administrative Agent (which shall promptly advise each applicable Lender) not later than five Business Days prior to the date of such payment. Each such notice shall be in the form attached as Exhibit C (*Form of Prepayment Notice*) and shall (i) specify the aggregate amount of the prepayment to be made on the Loans and the Tranches to which such prepayment is to be applied and (ii) specify the Business Day on which the Borrower will make such prepayment. The Borrower may also, at its option, prepay the outstanding Principal Balance of Loans in full, without prior notice, if a Facility Event other than that described in Clause 7.2(b) (*Facility Termination Events*) hereof has occurred and is continuing and, concurrently with such prepayment, the Revolving Commitment is reduced to zero in accordance with Clause 2.1(b) (*The Loans*) without giving effect to the notice period required therein. Any prepayment of the outstanding Principal Balance of a Term Loan, including any prepayment pursuant to this Clause 2.6, shall reduce the Term Loan Commitment. Each such prepayment described in this Clause 2.5(b) shall be made ratably among the Revolving Lenders or Term Lenders, as applicable, based on the outstanding principal balance of the Revolving Loans or Term Loans held by each Revolving Lender or Term Lender, as applicable.

(c)     Each prepayment of the Loans (whether optional or mandatory) must be accompanied by a payment of all accrued and unpaid Interest on the amount prepaid and any amounts payable under Clause 2.11 (*Breakage Costs*) due hereunder in respect of such prepayment.

2.6     **Application of Collections Prior to Facility Termination Date**

(a)     On each Business Day prior to the Facility Termination Date, the Borrower shall (and shall cause the Servicer to) (i) cause all Collections and other amounts in respect of the Receivables received by any Transaction Party, other than directly into a Facility Account, to be deposited into a Facility Account no later than, if such amounts were received in physical form, the second Business Day immediately following the day on which such amounts were received and otherwise, no later than the first Business Day immediately following the day on which such amounts were received and (ii) the Borrower shall (and shall cause the Servicer to) cause all Collections and other amounts in respect of the Receivables deposited into any Collection Account to be deposited into a Borrower Concentration Account, in each case, no later than the first Business Day immediately following the day on which such amounts were deposited into such Collection Accounts or otherwise received.

(b)     On each Business Day prior to the Facility Termination Date, the Borrower shall (and shall cause the Servicer to) cause <u>first</u>, all Collections on deposit in the Borrower Concentration Accounts (including, if applicable, any investment earnings received with respect to funds on deposit in such Borrower Concentration Accounts) and <u>second</u> (to the extent any amounts described in clauses (i) through (iv) are due and remain unpaid), all funds on deposit in the Cash Reserve Account, to be applied in the following order of priority:

(i)     first, on a pro rata basis in no order of priority amongst themselves:

(A)     pay to the Administrative Agent for the benefit of the Lenders, an amount equal to the aggregate Interest and Fees then due and payable with respect to the Loans, if any (such amount to be allocated among the Lenders ratably in accordance with the proportion of such amounts owing to each such Person);

(B)     pay to the Administrative Agent any additional Fees then due and payable to the Administrative Agent; and

(C)     pay to the Administrative Agent (for the benefit of the Administrative Agent and the Secured Parties) an amount equal to any unreimbursed Transaction Party Obligations then due and payable to the Administrative Agent in respect of costs and expenses incurred in connection with the enforcement of any Transaction Document or the collection of any amounts due thereunder;

(ii)     second, to the extent of any Required Reduction, to the payment of Revolving Loans or, if the Revolving Loans have been paid in full, at the Borrower's option, either to the payment of the Term Loans or to fund the Cash Reserve Account;

(iii)     third, if any Transaction Party Obligations (other than any amount described in Clauses 2.6(b)(i) and (ii)) are then due and payable by the Borrower to any Secured Party, pay to each such Secured Party (ratably in accordance with the amounts owing to each) the Transaction Party Obligations so due and payable;

(iv)     fourth, on each Servicing Fee Payment Date, to the Servicer to pay Servicing Fees then due;

(v)     fifth, if the conditions precedent to Repeat Advances set forth in Clause 3.3 (*Condition Precedent to all Repeat Advances*) are satisfied, remit such remaining Collections to the Borrower

(vi)     sixth, if the conditions precedent set forth in Clause 3.3 (*Condition Precedent to all Repeat Advances*) are not satisfied, apply any remaining Collections to the repayment of the Revolving Loans or, if the Revolving Loans have been paid in full, at the Borrower's option, either to the payment of the Term Loans or to fund the Cash Reserve Account; provided that if a Trigger Event has not occurred and the amount on deposit in the Cash Reserve Account equals or exceeds the aggregate Principal Balance of the Term Loans, the remaining Collections shall be paid to the Borrower; and

(vii)     seventh, if the Final Payout Date has occurred or would result from such payment, pay to the Borrower any remaining Collections and funds on deposit in the Cash Reserve Account for application in accordance with Clause 2.6(e).

(c)     In the event any amount is paid to the Administrative Agent for the account of the Revolving Lenders or the Term Lenders pursuant to Clause 2.6(b)(ii), the amount of such payment shall be allocated among the applicable Lenders ratably in proportion to the Aggregate Principal Balance of the Revolving Loans or Term Loans, as applicable, held by each. On the Business Day on which the Administrative Agent receives such funds (or on the next Business Day, if such funds are received after 1:00 p.m., New York time), the Administrative Agent shall distribute to the related Lender its allocable share of such deposit for application to the repayment of the applicable Loans held by such Lender.

(d)     On each Servicing Fee Payment Date, the Borrower shall pay to the Servicer the accrued and unpaid Servicing Fee out of funds available for that purpose pursuant to Clause 2.6(b).

(e)     Any Collections remitted to the Borrower as a Repeat Advance pursuant to Clause 2.6(b)(v) and any Collections and funds on deposit in the Cash Reserve Account remitted to the Borrower pursuant to Clause 2.6(b)(vi) shall be applied by the Servicer, on behalf of the Borrower:

  (i)     first, if so requested by the Borrower (acting upon the instructions of the Servicer), to pay or prepay (or set aside for the payment or prepayment of) Loans in accordance with the terms hereof;

  (ii)    second, if so requested by the Borrower (acting upon the instructions of the Servicer), to pay or prepay (or set aside for the payment or prepayment of) other Transaction Party Obligations;

  (iii)   third, to pay the purchase price for Receivables pursuant to (and in accordance with) the Receivables Purchase Agreement (provided, that, notwithstanding anything herein or in any other Transaction Document to the contrary, the Borrower shall not use all or any portion of the proceeds of any Repeat Advances to pay the purchase price for any Receivable that was originated by an Originator with respect to which a Originator Termination Event has occurred and is continuing);

  (iv)    fourth, only if no Facility Event then exists or the Final Payout Date has occurred, to make payments of principal and interest in respect of the Intercompany Note payable under the Transaction Documents; and

  (v)     fifth, in such other manner as the Borrower (acting upon the instructions of the Servicer) may specify and that is permitted by the terms of the Transaction Documents; provided that if all or any portion of the Collections remitted to the Borrower pursuant to Clause 2.6(b)(v) and (vi) are not applied pursuant to this Clause 2.6(e), the Borrower shall (and shall cause the Servicer to) cause any such remaining Collections to be retained in one or more Borrower Concentration Accounts and shall apply such Collections on the next Business Day in accordance with this Clause 2.6 or Clause 2.7 (*Application of Collections after Facility Termination Date*), as applicable.

(f)     Unless otherwise agreed by the Originators in each case, to the extent affected thereby, the amount of Collections remitted to the Borrower pursuant to Clause 2.6(b)(v) and (vi) or Clause 2.7(b)(vii) (*Application of Collections after Facility Termination Date*), as the case may be, on any day shall be applied to the payment of amounts described in Clauses 2.6(e)(iii) and 2.6(e)(iv) or Clause 2.7(c)(i) (*Application of Collections after Facility Termination Date*), as applicable, on a pro rata basis according to the amounts owing to such Persons.

## 2.7    Application of Collections after Facility Termination Date

(a)     On the Facility Termination Date, and on each Business Day thereafter until the Final Payout Date, the Borrower shall (and shall cause the Servicer to) cause all

Collections in respect of the Receivables deposited into any Collection Account or otherwise received by any Transaction Party to be deposited into a Borrower Concentration Account, in each case, no later than the Business Day immediately following the day on which such amounts were deposited into such Collection Accounts or otherwise received.

(b)     On each Business Day to occur on or after the Facility Termination Date, the Borrower (or the Administrative Agent acting on behalf of the Borrower) shall cause all funds on deposit in the Borrower Concentration Accounts, including any investment earnings received with respect to such funds, (collectively, "**Borrower Account Funds**") and all funds on deposit in the Cash Reserve Account, to be distributed on such day in the following order of priority:

   (i)     first, to pay to the Administrative Agent an amount equal to any unreimbursed Transaction Party Obligations then due and payable to the Administrative Agent in respect of costs and expenses incurred in connection with the enforcement of any Transaction Document or the collection of any amounts due thereunder;

   (ii)     second, to pay to the Servicer the accrued and unpaid Servicing Fee;

   (iii)     third, to pay to the Lenders an amount equal to the aggregate accrued and unpaid Interest and Fees payable to each such Person with respect to the Loans (ratably in accordance with the proportion of such amounts owing to each such Person);

   (iv)     fourth, to pay to the Administrative Agent an amount equal to the aggregate accrued and unpaid Fees payable to the Administrative Agent;

   (v)     fifth, to pay to the Lenders an amount equal to the Aggregate Principal Balance of the Loans (ratably in accordance with the outstanding Principal Balance of the Loans held by each);

   (vi)     sixth, if any Transaction Party Obligations (other than any amount described in Clauses 2.7(b)(i) to (v) above are then due and payable to any Secured Party, to pay to each such Secured Party (ratably in accordance with the amounts owing to each) the Transaction Party Obligations so due and payable; and

   (vii)     seventh, after all Transaction Party Obligations are paid in full, pay to the Borrower any remaining Collections and funds on deposit in the Cash Reserve Account for application in accordance with Clause 2.7(c).

(c)     Any Collections and funds on deposit in the Cash Reserve Account remitted to the Borrower pursuant to Clause 2.7(b)(vii) shall be applied by the Servicer, on behalf of the Borrower (i) first, to make payments of principal and interest then due under the Intercompany Note and (ii) second, in such other manner as the

Borrower may specify and that is permitted by the terms of the Transaction Documents.

**2.8     Deemed Collections; Application of Payments**

(a)     Each of the parties hereto agrees that, with respect to a payment by an Obligor (i) if required by contract or applicable Law or clearly indicated by facts or circumstances (including by way of example an equivalence of a payment and the amount of a particular invoice) or if such Obligor designates that a payment be applied to a specific Receivable, such payment will be applied to such Receivable, and (ii) otherwise all Collections from an Obligor shall be applied to the oldest Receivables (whether or not such Receivables are Pool Receivables) of such Obligor.

(b)     If and to the extent the Administrative Agent or any Lender shall be required for any reason to pay over to an Obligor, any Transaction Party or any other Person (other than in accordance herewith) any amount received on its behalf hereunder, such amount shall be deemed not to have been so received but rather to have been retained by the Borrower and, accordingly, the Administrative Agent or such Lender, as the case may be, shall have a claim against the Borrower for such amount, payable when and to the extent that any distribution from or on behalf of such Obligor is made in respect thereof.

(c)     If on any day a Pool Receivable or any part thereof becomes a Diluted Receivable, the Borrower shall be deemed to have received on such day a Collection of such Pool Receivable in the amount of such Diluted Receivable or, if less, the part thereof that causes such Pool Receivable to become a Diluted Receivable.

(d)     If on any day it is determined that (i) any of the representations or warranties in Clause 4.1 (*Representations and Warranties of the Borrower*) was untrue in so far as it relates to a particular Pool Receivable or Pool Receivables or the nature of the Administrative Agent's interest in such Pool Receivable or Pool Receivables, in each case, at the time such representation or warranty was made with respect to such Pool Receivable or Pool Receivables, or (ii) that the Borrower has breached any covenant contained in Clause 5.1(w) (*Title*) in so far as it relates to a particular Pool Receivable or Pool Receivables, the Borrower shall, unless such breach shall have been otherwise waived or cured in a manner reasonably satisfactory to the Administrative Agent and the Required Lenders, be deemed to have received on such day a Collection of such Pool Receivable or Pool Receivables in an amount equal to the Unpaid Balance thereof.

(e)     Not later than the first Business Day after the Borrower is deemed pursuant to this Clause 2.8 to have received any Deemed Collection, the Borrower shall deposit in the Borrower Concentration Account, in same day funds, the amount of such Deemed Collection; provided that the amount so payable by the Borrower shall not exceed the amount (if any) required (after giving effect to any Deemed

Collection to be paid by any other Transaction Party on such day) in order to cause (i) the Percentage Factor to be less than or equal to the Maximum Percentage Factor (determined by reference to the most recent Portfolio Report delivered under the Servicing Agreement) and (ii) the Aggregate Principal Balance to be less than or equal to the Aggregate Commitment. Any such amount shall be applied as a Collection in accordance with Clauses 2.6 (*Application of Collections prior to Facility Termination Date*) or 2.7 (*Application of Collections after Facility Termination Date*), as applicable.

2.9   **Payments and Computations, Etc.**

(a)   All amounts to be paid by the Borrower or the Servicer to the Administrative Agent, any Lender or any other Secured Party shall be paid no later than 1:00 p.m. (New York time) on the day when due in immediately available funds (without counterclaim, setoff, deduction, defense, abatement, suspension or deferment) to the Administrative Agent (unless otherwise specified herein). All amounts to be deposited by the Borrower or the Servicer into any Facility Account, any Lender's Account or any other account shall be deposited in immediately available funds no later than 12:00 p.m. (New York time) on the date when due.

(b)   The Borrower shall (and shall cause the Servicer to), to the extent permitted by Law, pay interest on any amount not paid or deposited by it when due hereunder (after as well as before judgment), at an interest rate per annum equal to the Default Rate, payable on demand.

(c)   All computations of Interest, Fees, and other amounts hereunder shall be made on the basis of a year of 360 days for the actual number of days (including the first but excluding the date of payment) elapsed, except that (a) computations of interest and Interest for which the applicable interest rate is based upon the Base Rate shall be made on the basis of a year of 365 days (or 366, as applicable); and (b) in any case where the practice of the relevant interbank market differs, computations of interest and Interest shall be made in accordance with that market practice. Whenever any payment or deposit to be made hereunder shall be due on a day other than a Business Day, such payment or deposit shall be made on the next succeeding Business Day and such extension of time shall be included in the computation of such payment or deposit. Any computations by the Administrative Agent or, in the case of amounts other than Interest or Fees, the applicable Lender of amounts payable by the Borrower hereunder shall be binding upon the Borrower absent manifest error.

(d)   All payments required to be made hereunder to any Lender, any Indemnified Party or any other Secured Party shall be made by paying such amount to the Administrative Agent in accordance with this Clause 2.9. Upon receipt of funds, the Administrative Agent shall pay such funds to the related Person owed such funds in accordance with the records maintained by the Administrative Agent. If the Administrative Agent shall have paid to any Lender, any Indemnified Party or any other Secured Party any funds that (i) must be returned for any reason

(including any Event of Bankruptcy) or (ii) exceeds that which such Person was entitled to receive, such amount shall be promptly repaid to the Administrative Agent by such Person.

(e)     All payments to be made by the Servicer or the Borrower hereunder shall be made solely in U.S. Dollars.

## 2.10   Tranches

Each Loan shall be allocated to one or more Tranche Periods as set forth in the definition of such term with one or more Rate Types as selected by the Borrower. Any portion of a given Revolving Loan or Term Loan, as applicable, having one Tranche Period and one Rate Type is referred to herein as a "**Tranche**." The Borrower may either (a) divide any Tranche of Revolving Loans originating on such last day or having a Tranche Period ending on such last day into two or more Tranches having an aggregate Principal Balance equal to the Principal Balance of such divided Tranche or (b) combine any two or more Tranches of Revolving Loans originating on such last day or having Tranche Periods ending on such last day into a single Tranche having a Principal Balance equal to the aggregate of the Principal Balance of such Tranches.

## 2.11   Breakage Costs

(a)     The Borrower shall indemnify the Lenders and the Administrative Agent against any loss, cost or expense incurred by the Lenders or the Administrative Agent, either directly or indirectly, as a result of the failure of any Borrowing to be made for any reason on the date specified by the Borrower pursuant to, and in accordance with, Clause 2.2 (*Loan Procedures*), including any loss, cost, or expense incurred by the Administrative Agent or any Lender by reason of the liquidation or reemployment of funds acquired by the Lenders to fund such Borrowing (but excluding loss of profit).

(b)     The Borrower further agrees to pay all Liquidation Fees associated with a reduction of the Principal Balance of any Tranche at any time.

(c)     A certificate as to any loss, expense or Liquidation Fees payable pursuant to this Clause 2.11 submitted by any Lender, with a copy to the Administrative Agent, to the Borrower shall be conclusive in the absence of manifest error.

## 2.12   Illegality

Notwithstanding any other provision of this Agreement, if any Lender shall notify the Administrative Agent and Borrower that the introduction of or any change in or in the interpretation of any law or regulation occurring after the later of the Closing Date or the date a Lender shall become a Lender hereunder makes it unlawful, or any central bank or other governmental authority asserts that it is unlawful, for such Lender or its Eurodollar Lending Office to perform its obligations hereunder to make Eurodollar Tranches or to fund or maintain Eurodollar Tranches hereunder, (a) each Eurodollar Tranche held by such Lender under this Agreement will automatically, upon such demand, convert into a

Tranche accruing Interest based on the Base Rate (each, a "**Base Rate Tranche**") and (b) the obligation of such Lender to make Eurodollar Tranches or to convert Loans into Eurodollar Tranches shall be suspended until the Administrative Agent shall notify Borrower and the Lenders that the circumstances causing such suspension no longer exist; provided, however, that, before making any such demand, such Lender agrees to use commercially reasonable efforts (in its own judgment, consistent with its internal policy and legal and regulatory restrictions) to designate a different Eurodollar Lending Office if the making of such a designation to another existing Eurodollar Lending Office of such Lender would allow such Lender or its Eurodollar Lending Office to continue to perform its obligations to make Eurodollar Rate Loans or to continue to fund or maintain Eurodollar Tranches and would not, in the judgment of such Lender, be otherwise disadvantageous to such Lender.

2.13    **Inability to Determine Eurodollar Rate**

If prior to the commencement of any Tranche Period for a Eurodollar Tranche:

(a)    the Administrative Agent determines (which determination shall be conclusive absent manifest error) that adequate and reasonable means do not exist for ascertaining on a timely basis the Eurodollar Rate for such Tranche Period; or

(b)    the Required Lenders determine that the Eurodollar Rate for such Tranche Period will not adequately and fairly reflect the cost to such Lenders of making or maintaining the related Tranche for such Tranche Period;

then, the Administrative Agent or the Required Lenders, as applicable, shall give notice thereof to the Borrower and the Lenders by telephone or facsimile as promptly as practicable thereafter and, until the circumstances giving rise to such notice no longer exist (at which time the Administrative Agent or the Required Lenders, as applicable shall as promptly as practicable notify the Borrower, the Servicer and the Lenders of such change in circumstances) and any Eurodollar Tranche shall as of the last day of the Tranche Period applicable thereto be converted to or continued as a Base Rate Tranche.

2.14    **Indemnity for Reserves and Expenses**

(a)    If any Change in Law shall:

(i)    impose, modify or deem applicable any reserve, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by, any Indemnified Party (except any such reserve requirement reflected in the Eurodollar Rate);

(ii)    impose on any Indemnified Party (or on the U.S. market for certificates of deposit or the London interbank market) any other condition or expense affecting or with respect to this Agreement or any other Transaction Document or Eurodollar Tranches made or maintained by such Indemnified Party or the maintenance or financing of the Loans hereunder, directly or indirectly; or

(iii)    impose any other condition;

and the result of any of the foregoing is to increase the cost to an Indemnified Party of performing its obligations under a Transaction Document, or to reduce the rate of return on an Indemnified Party's capital as a consequence of its obligations under a Transaction Document, or to reduce the amount of any sum received or receivable by an Indemnified Party under a Transaction Document or to require any payment calculated by reference to the amount of interests or loans held or interest received by it, then on the Settlement Date immediately following notification thereof pursuant to Clause 2.14(d) the Borrower will pay to such Indemnified Party such additional amount or amounts as will compensate such Indemnified Party for such additional costs incurred or reduction suffered; provided that the Borrower's obligations under this Clause shall be limited to amounts accruing not more than 90 days prior to the invoice thereof by such Indemnified Party (such time period to be extended as necessary to take into account any retroactive application of a Change in Law giving rise to such obligations); provided further that each Indemnified Party claiming amounts under this Clause agrees to use commercially reasonable efforts (in its own judgment, consistent with its internal policy and regulatory restrictions) to designate a different lending office if it has such an office and making such a designation would avoid the need for, or reduce the amount of, such increased cost that may thereafter accrue and would not, in the reasonable judgment of such Indemnified Party, be otherwise disadvantageous to such Indemnified Party.

(b)    If any Indemnified Party determines that any Change in Law regarding capital requirements has or would have the effect of reducing the rate of return on such Indemnified Party's capital or on the capital of such Indemnified Party's holding company, if any, as a consequence of this Agreement or the Loans made or acquired by such Indemnified Party, to a level below that which such Indemnified Party or holding company could have achieved but for such Change in Law (taking into consideration such Indemnified Party's policies and the policies of such Indemnified Party's holding company with respect to capital adequacy), then on the Settlement Date immediately following notification thereof pursuant to Clause 2.14(d) the Borrower will pay to such Indemnified Party such additional amount or amounts as will compensate such Indemnified Party or such Indemnified Party's holding company for any such reduction suffered; provided that the Borrower's obligations under this Clause shall be limited to amounts accruing not more than 90 days prior to the invoice thereof by such Indemnified Party (such time period to be extended as necessary to take into account any retroactive application of a Change in Law giving rise to such obligations); provided further that each Indemnified Party claiming amounts under this Clause agrees to use commercially reasonable efforts (in its own judgment, consistent with its internal policy and regulatory restrictions) to designate a different lending office if it has such an office and making such a designation would avoid the need for, or reduce the amount of, such increased cost that may thereafter accrue and would not, in the reasonable judgment of such Indemnified Party, be otherwise disadvantageous to such Indemnified Party.

(c)    A certificate of an Indemnified Party setting forth the amount or amounts necessary to compensate such Indemnified Party or its holding company, as applicable, as specified in clause (a) or (b) of this Clause 2.14 shall be delivered to the Borrower and the Servicer and shall be conclusive absent manifest error.

(d)    Promptly after any Indemnified Party has determined that it will make a request for compensation pursuant to this Clause 2.14, such Indemnified Party shall notify the Borrower of such determination.

## 2.15   Indemnity for Taxes

(a)    Any and all payments by Borrower under this Agreement and each Note shall be made without setoff, counterclaim or other defense, and free and clear of, and without deduction or withholding for or on account of, any Taxes, except to the extent such Taxes are imposed by law. In the event that any Taxes are imposed and required by law to be deducted or withheld from any payment required to be made by Borrower to or on behalf of the Administrative Agent or any Lender hereunder then: (i) subject to clause (f) below, if such Taxes are Indemnified Taxes, the amount of such payment shall be increased as may be necessary such that such payment is made, after withholding or deduction for or on account of such Taxes, in an amount that is not less than the amount provided for herein; and (ii) Borrower shall withhold the full amount of such Taxes from such payment (as increased pursuant to clause (a)(i)) and shall pay such amount to the Official Body imposing such Taxes in accordance with applicable law.

(b)    In addition, Borrower shall pay any and all Other Taxes imposed to the relevant Official Body imposing such Other Taxes in accordance with applicable law.

(c)    As promptly as practicable after the payment of any Taxes or Other Taxes, Borrower shall furnish to the Administrative Agent a copy of an official receipt (or a certified copy thereof) evidencing the payment of such Taxes or Other Taxes. The Administrative Agent shall make copies thereof available to any Lender upon request therefor.

(d)    Subject to clause (f), Borrower shall indemnify the Administrative Agent and each Lender for any Indemnified Taxes and Other Taxes levied, imposed or assessed on (and whether or not paid directly by) the Administrative Agent or such Lender (and whether or not such Indemnified Taxes or Other Taxes are correctly or legally asserted by the relevant Official Body). Promptly upon having knowledge that any such Indemnified Taxes or Other Taxes have been levied, imposed or assessed, and promptly upon notice thereof by the Administrative Agent or any Lender, Borrower shall pay such Indemnified Taxes or Other Taxes directly to the relevant Official Body (provided, however, that neither the Administrative Agent nor any Lender shall be under any obligation to provide any such notice to Borrower). In addition, Borrower shall indemnify the Administrative Agent and each Lender for any incremental Indemnified Taxes and Other Taxes that may become payable by the Administrative Agent or any

Lender as a result of any failure of Borrower to pay any Taxes when due to the appropriate Official Body or to deliver to the Administrative Agent, pursuant to clause (c), documentation evidencing the payment of Taxes or Other Taxes. With respect to indemnification for Indemnified Taxes and Other Taxes actually paid by the Administrative Agent or any Lender or the indemnification provided in the immediately preceding sentence, such indemnification shall be made within 30 days after the date the Administrative Agent or such Lender, as the case may be, makes written demand therefor. Borrower acknowledges that any payment made to the Administrative Agent or any Lender or to any Official Body in respect of the indemnification obligations of Borrower provided in this clause shall constitute a payment in respect of which the provisions of clause (a) and this clause shall apply.

(e)     Each Foreign Lender, on or prior to the date on which such Foreign Lender becomes a Lender hereunder (and from time to time thereafter upon the request of Borrower or the Administrative Agent, but only for so long as such Foreign Lender is legally entitled to do so), shall deliver to Borrower and the Administrative Agent either: (i) two duly completed copies of either (x) Internal Revenue Service Form W-8BEN claiming eligibility of the Foreign Lender for benefits of an income tax treaty to which the United States is a party or (y) Internal Revenue Service Form W-8ECI, or in either case an applicable successor form; or (ii) in the case of a Foreign Lender that is not legally entitled to deliver either form listed in clause (e)(i), (x) a certificate of a duly authorized officer of such Foreign Lender to the effect that such Foreign Lender is not (A) a "bank" within the meaning of Section 881(c)(3)(A) of the IRC, (B) a "10 percent shareholder" of Borrower within the meaning of Section 881(c)(3)(B) of the IRC, or (C) a controlled foreign corporation receiving interest from a related Person within the meaning of Section 881(c)(3)(C) of the IRC (such certificate, an "**Exemption Certificate**") and (y) two duly completed copies of Internal Revenue Service Form W-8BEN or applicable successor form.

(f)     Borrower shall not be obligated to pay any additional amounts to any Lender pursuant to clause (a)(i), or to indemnify any Lender pursuant to clause (d), in respect of United States federal withholding taxes to the extent imposed as a result of (i) the failure of such Lender to deliver to Borrower the form or forms and/or an Exemption Certificate, as applicable to such Lender, pursuant to clause (e), (ii) such form or forms and/or Exemption Certificate not establishing a complete exemption from U.S. federal withholding tax or the information or certifications made therein by the Lender being untrue or inaccurate on the date delivered in any material respect, or (iii) the Lender designating a successor lending office at which it maintains its Loans which has the effect of causing such Lender to become obligated for tax payments in excess of those in effect immediately prior to such designation; provided, however, that Borrower shall be obligated to pay additional amounts to any such Lender pursuant to clause (a)(i), and to indemnify any such Lender pursuant to clause (d), in respect United States federal withholding taxes if (i) any such failure to deliver a form or forms or an Exemption Certificate or the failure of such form or forms or Exemption

Certificate to establish a complete exemption from U.S. federal withholding tax or inaccuracy or untruth contained therein resulted from a change in any applicable statute, treaty, regulation or other applicable law or any interpretation of any of the foregoing occurring after the date such Lender becomes a Lender hereunder, which change rendered such Lender no longer legally entitled to deliver such form or forms or Exemption Certificate or otherwise ineligible for a complete exemption from U.S. federal withholding tax, or rendered the information or certifications made in such form or forms or Exemption Certificate untrue or inaccurate in a material respect, (ii) the redesignation of the Lender's lending office was made at the request of Borrower or (iii) the obligation to pay any additional amounts to any such Lender pursuant to clause (a)(i) or to indemnify any such Lender pursuant to clause (d) is with respect to a Lender that becomes a Lender as a result of an assignment made at the request of Borrower.

2.16    **No Liability of Lenders to other Persons.**

In exercising any of its or their voting rights, rights to direct and consent or any other rights as a Lender under this Agreement, a Lender or Lenders shall not have any obligation or duty to any Person or to consider or take into account the interests of any Person and shall not be liable to any Person for any action taken by it or them or at its or their direction or any failure by it or them to act or to direct that an action be taken, without regard to whether such action or inaction benefits or adversely affects any other Lender, the Borrower, or any other Person, except for any liability to which such Lender may be subject to the extent the same results from such Lender's taking or directing an action, or failing to take or direct an action, in violation of the express terms of a Transaction Document.

2.17    **Cash Reserve Account.**

(a)    The Borrower, for the benefit of the Lenders, may establish and maintain in the name of the Administrative Agent, on behalf of the Lenders, a segregated trust account with an Eligible Account Bank bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Lenders (the "**Cash Reserve Account**"). The Cash Reserve Account shall be under the sole dominion and control of the Administrative Agent for the benefit of the Lenders. Except as expressly provided in this Agreement, the Borrower agrees that it shall have no right to any funds held in the Cash Reserve Account for any amount owed to it by the Administrative Agent or any Lender. If, at any time, the institution holding the Cash Reserve Account ceases to be an Eligible Account Bank or the Borrower determines in its discretion to move the Cash Reserve Account to a new Eligible Account Bank, the Borrower upon notice by the Administrative Agent shall promptly establish a new Cash Reserve Account with an Eligible Account Bank meeting the conditions specified above, transfer any cash or any investments to such new Cash Reserve Account and from the date such new Cash Reserve Account is established, it shall be the "Cash Reserve Account." Funds on deposit in the Cash Reserve Account shall be invested in Permitted Investments in accordance with Clause 2.8 of the Servicing Agreement (*Investments*) (i) prior to

a Facility Event, at the direction of the Servicer, and (ii) thereafter, at the direction of the Administrative Agent.

(b)     Funds will be deposited to the Cash Reserve Account in accordance with Clause 2.1(b) (*The Loans*).  The Borrower may also deposit funds to the Cash Reserve Account from its other funds at any time and pursuant to Clause 2.6(b).  On any Business Day, the Borrower may direct the Administrative Agent in writing to apply funds in the Cash Reserve Account to the prepayment of the Loans in accordance with, and subject to the terms of, Clause 2.5(b) (*Payment and Prepayment of the Loans*). On any Business Day on which a Trigger Event is continuing, the Administrative Agent shall apply funds in the Cash Reserve Account to the prepayment of the Loans.

(c)     In addition to the applications of funds from the Cash Reserve Account in accordance with Clauses 2.6(b) (*Application of Collections Prior to Facility Termination Date*) and 2.7(b) (*Application of Collections after Facility Termination Date*), the Borrower may request the Administrative Agent to withdraw, and the Administrative Agent shall withdraw and distribute to the Borrower on the first Deposit Adjustment Date following the Administrative Agent's receipt of such request, funds from the Cash Reserve Account on any Deposit Adjustment Date, if the following conditions have been met: (i) the Administrative Agent shall have received such request at least one Business Day prior to such Deposit Adjustment Date, (ii) the Interim Report required to be delivered on such date shall have been delivered to the Administrative Agent, (iii) the Administrative Agent shall have received such evidence as it may reasonably request from the related Facility Account Bank as to the available funds in the Cash Reserve Account, (iv) both before and after giving effect to such withdrawal, the Percentage Factor shall not exceed the Maximum Percentage Factor, and (v) at the time of such withdrawal, no Facility Event shall have occurred and be continuing.

(d)     Following at least three Business Days' written notice to the Administrative Agent, the Borrower may close the Cash Reserve Account on a Business Day; provided that (i) all applications of funds required under this Clause 2.17 on or prior to such Business Day have been completed, (ii) after giving effect to such application, no funds remain on deposit in the Cash Reserve Account, (iii) after giving effect to such application and closure of the Cash Reserve Account, the Percentage Factor shall not exceed the Maximum Percentage and (iv) no Facility Event shall have occurred and be continuing.

## 2.18     Defaulting Lender

Anything contained herein to the contrary notwithstanding, in the event that (x) any Lender, other than at the direction or request of any regulatory agency or authority, defaults (a "**Funds Defaulting Lender**") in its obligation to fund (a "**Funding Default**") any Revolving Loan under Clause 2.2 "**Defaulted Loan**") or (y) any Lender (or any holding company of any such Lender) is deemed insolvent or becomes the subject of an

insolvency, bankruptcy, dissolution, liquidation or reorganization proceeding, or if any Lender (or any holding company of any such Lender) or any substantial part of its property becomes the subject of an appointment of a receiver, intervenor or conservator, or a trustee or similar officer becomes the subject of a bankruptcy (a "**Lender Insolvency Default**") under the Bankruptcy Code or under any other applicable bankruptcy, insolvency or similar law now or hereafter in effect (such Lender, an "**Insolvency Defaulting Lender**" and, together with any Funds Defaulting Lenders, the "**Defaulting Lenders**" and each a "**Defaulting Lender**"), then during any Default Period with respect to such Defaulting Lender, such Defaulting Lender shall be deemed not to be a "Lender" for purposes of calculating the Required Lenders or the Supermajority Lenders (including the granting of any consents or waivers) with respect to any of the Transaction Documents.  Solely with respect to any Funds Defaulting Lender that is not an Insolvency Defaulting Lender,

(a)     to the extent permitted by applicable law, until such time as the Default Excess with respect to such Defaulting Lender shall have been reduced to zero, (i) any voluntary prepayment of the Revolving Loans shall, if the Borrower so directs at the time of making such voluntary prepayment, be applied to the Revolving Loans of other Lenders as if such Defaulting Lender had no Revolving Loans outstanding and (ii) any mandatory prepayment of the Revolving Loans shall, if the Borrower so directs at the time of making such mandatory prepayment, be applied to the Revolving Loans of other Lenders (but not to the Revolving Loans of such Defaulting Lender) as if such Defaulting Lender had funded all Defaulted Loans of such Defaulting Lender, it being understood and agreed that the Borrower shall be entitled to retain any portion of any mandatory prepayment of the Revolving Loans that is not paid to such Defaulting Lender solely as a result of the operation of the provisions of this clause (a);

(b)     such Defaulting Lender's Revolving Commitment and outstanding Revolving Loans and such Defaulting Lender's Revolving Percentage shall be excluded for purposes of calculating the Unused Fee (as defined in the applicable Fee Letter) payable to Lenders in respect of any day during any Default Period with respect to such Defaulting Lender, and such Defaulting Lender shall not be entitled to receive any Unused Fee pursuant to the Fee Letters with respect to such Defaulting Lender's Revolving Commitment in respect of any Default Period with respect to such Defaulting Lender; and

(c)     the total utilization of Revolving Commitments as at any date of determination shall be calculated as if such Defaulting Lender had funded all Defaulted Loans of such Defaulting Lender.

No Revolving Commitment of any Lender shall be increased or otherwise affected, and, except as otherwise expressly provided in this Clause 2.18, performance by the Borrower of its obligations hereunder and the other Transaction Documents shall not be excused or otherwise modified as a result of any Funding Default or Lender Insolvency Default or the operation of this Clause 2.18.  the Administrative Agent shall have no obligation to fund any Defaulting Lender's pro rata share of any Borrowing.  The rights and remedies

against a Defaulting Lender under this Clause 2.18 are in addition to other rights and remedies which the Borrower may have against such Defaulting Lender with respect to any Funding Default or Lender Insolvency Default and which the Administrative Agent or any Lender may have against such Defaulting Lender with respect to any Funding Default or Lender Insolvency Default.

3.    **CONDITIONS OF TERM BORROWING, INCREMENTAL BORROWINGS AND REPEAT ADVANCES**

3.1    **Conditions Precedent to Borrowings on the Closing Date**

The occurrence of the Closing Date, the effectiveness of the Commitments, the initial Incremental Borrowing and the Term Borrowing under this Agreement are each subject to the conditions precedent that:

(a)    all Fees required to be paid on or prior to the Closing Date in accordance with the Fee Letters and all fees and expenses described in Clause 10.4 (*Costs and Expenses*) prior to the Closing Date shall have been paid in full in accordance with the terms thereof;

(b)    consummation of the transactions contemplated herein shall have occurred or shall occur simultaneously with the initial purchase or acceptance of a contribution by the Borrower under the Receivables Purchase Agreement;

(c)    the Administrative Agent shall have received on or before the date of the initial Incremental Borrowing and the Term Borrowing all of the instruments, documents, agreements, certificates and opinions specified on Schedule 4 (*Condition Precedent Documents*), each (unless otherwise indicated) dated the Closing Date, in form and substance satisfactory to the Administrative Agent; and

(d)    all necessary Bankruptcy Court authorizations shall have been obtained, and all related court orders shall be in form and substance satisfactory to the Administrative Agent.

3.2    **Conditions Precedent to All Borrowings**

Each Borrowing (including the initial Incremental Borrowing and Term Borrowing) hereunder shall be subject to the further conditions precedent that on the date of such Borrowing the following statements shall be true (and acceptance of the proceeds of any such Borrowing shall be deemed a representation and warranty by the Borrower that such statements are then true by reference to the facts and circumstances existing on the date of such Borrowing):

(i)    In the case of Borrowing, the making of such Loan does not violate any provisions of Clause 2.1 (*The Loans*);

(ii)     In the case of an Incremental Borrowing, the Borrower has delivered an Incremental Borrowing Request, appropriately completed, within the time period required by Clause 2.2 (*Loan procedures*);

(iii)    The Servicer shall have delivered the Interim Report for the most recently ended Interim Period in a timely manner prior to the date of such Borrowing pursuant to and in accordance with Clause 2.3 (*Reporting requirements*) of the Servicing Agreement;

(iv)     The Facility Termination Date has not occurred and no event exists, or would result from such Borrowing, that constitutes a Servicer Default or a Facility Event;

(v)      The representations and warranties of each of the Transaction Parties in the Transaction Documents shall be true and correct as of the date of such Borrowing and after giving effect thereto, except to the extent such representation or warranty expressly relates to an earlier date;

(vi)     All Fees required to be paid on or prior to the date of such Borrowing in accordance with the Fee Letters and invoiced prior to such date shall have been paid in full in accordance with the Fee Letters, provided detailed invoices have been received by the Borrower and the Servicer;

(vii)    No Originator Termination Event has occurred and is continuing;

(viii)   The Borrower shall be in compliance with the Acts in all material respects; and

(ix)     After giving effect to such Borrowing and the use of the proceeds thereof in accordance with Clause 2.2(d) (*Use of proceeds*) the Percentage Factor does not exceed the Maximum Percentage Factor; and (B) the aggregate outstanding principal amount of the Loans for all Lenders does not exceed the Aggregate Commitment.

## 3.3    Conditions Precedent to All Repeat Advances

Each Repeat Advances hereunder shall be subject to the further conditions precedent that on the date of such Repeat Advances the following statements shall be true (and acceptance of the proceeds of any such Repeat Advances shall be deemed a representation and warranty by the Borrower that such statements are then true by reference to the facts and circumstances existing on the date of such Repeat Advances):

(i)      The Servicer shall have delivered the Interim Report for the most recently ended Interim Period in a timely manner prior to the date of such Repeat Advances pursuant to and in accordance with Clause 2.3 (*Reporting requirements*) of the Servicing Agreement;

(ii)    The Facility Termination Date has not occurred and no event exists, or would result from such Repeat Advances, that constitutes a Servicer Default or Facility Event;

(iii)    The representations and warranties of each of the Transaction Parties in the Transaction Documents (other than the representations and warranties in Clauses 4.1(q) (*Representations and Warranties of the Borrower*) hereof and Section 3.01(f) of the Receivables Purchase Agreement (*Representations and Warranties of each Originator*)) shall be true and correct as of the date of such Repeat Advances and after giving effect thereto, except to the extent such representation or warranty expressly relates to an earlier date;

(iv)    All Fees required to be paid on or prior to the date of such Repeat Advances in accordance with the Fee Letters and invoiced prior to such date shall have been paid in full in accordance with the Fee Letters, provided detailed invoices have been received by the Borrower and the Servicer;

(v)    No Originator Termination Event has occurred and is continuing;

(vi)    After giving effect to such Repeat Advances and the use of the proceeds thereof in accordance with Clause 2.2(d) (*Use of proceeds*) the Percentage Factor does not exceed the Maximum Percentage Factor; and (B) the aggregate outstanding principal amount of the Loans for all Lenders does not exceed the Aggregate Commitment.

4.    **REPRESENTATIONS AND WARRANTIES**

4.1    **Representations and Warranties of the Borrower**

The Borrower hereby represents and warrants to the Administrative Agent and the Lenders that, on the Closing Date and as of the date of each Incremental Borrowing and each Repeat Advances hereunder and (except with respect to subclauses (e), (i) and (q) below and the second sentence of subclause (g) below) as of each Reporting Date:

(a)    It (i) is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware, (ii) is duly qualified to do business in every other jurisdiction where the nature of its business requires it to be so qualified unless such failure to be so qualified would not reasonably be expected to have a Material Adverse Effect, (iii) has all organizational power and authority and all licenses, authorizations, consents, approvals and qualifications of and from all Official Bodies and other third parties required to perform its obligations under the Transaction Documents to which it is a party and to carry on its business in each jurisdiction in which its business is conducted.

(b)    The execution, delivery and performance by it of this Agreement and the other Transaction Documents to which it is a party, including the Borrower's use of the

proceeds of Loans (i) are within its organizational powers, (ii) have been duly authorized by all necessary organizational action, (iii) are in its interest and it will receive the benefit as a result of the transactions contemplated by this Agreement and the other Transaction Documents and the value of the consideration obtained by it under the transactions contemplated hereby and thereby is not less than the value of, and is fully and fairly equivalent to, the consideration which it provides, (iv) do not contravene or constitute a default under (A) its Organic Documents, (B) any applicable Law, (C) any contractual restriction binding on or affecting it or its property or (D) any order, writ, judgment, award, injunction or decree binding on or affecting it or its property, in each case unless such failure would not be reasonably expected to have a Material Adverse Effect and (v) do not result in or require the creation or imposition of any Adverse Claim upon or with respect to any of its properties, in each case unless such Adverse Claim would not be reasonably expected to have a Material Adverse Effect.  Each Transaction Document to which the Borrower is a party has been duly executed and delivered by the Borrower.

(c)     No authorization or approval or other action by, and no notice to or filing or registration with, any Official Body or official thereof or any third party (with the exception of the notifications and other actions referred to in Clause 6.2 (*Certain rights of the Administrative Agent*)) is required for the due execution, delivery and performance by it of this Agreement or any other Transaction Documents to which it is a party or any other document to be delivered by it hereunder or thereunder, except for the actions taken or referred to in Schedule 4 (*Condition precedent documents*) all of which have been (or on or before the Closing Date will have been) duly made or taken, as the case may be, and are in full force and effect.

(d)     Each of this Agreement and the other Transaction Documents to which it is a party constitutes the legal, valid and binding obligation of the Borrower enforceable against it in accordance with its terms, subject to any limitation on the enforceability thereof against the Borrower arising from the application of any applicable Insolvency Law or by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(e)     There are no actions, suits, investigations by an Official Body, litigation or proceedings at law or in equity or by or before any Official Body now pending or, to the actual knowledge of a Responsible Officer, threatened against or affecting the Borrower or any of its businesses, properties or revenues (i) which question the validity of this Agreement or any other Transaction Document or any of the transactions contemplated hereby or thereby (excluding any litigation or proceeding against any Obligor) or (ii) which individually or in the aggregate could be reasonably expected to have a Material Adverse Effect.  Borrower has complied in all respects with all applicable laws, rules, regulations, orders, writs, judgments, injunctions, decrees or awards to which it may be subject, in each case unless the failure to comply with the same would not reasonably be expected to have a Material Adverse Effect.  The Borrower is not in any respect in default or

violation of any order, judgment or decree of any Official Body, in each case unless the failure to comply with the same would not reasonably be expected to have a Material Adverse Effect.

(f)     No proceeds of any Borrowing hereunder will be used (i) for a purpose that violates, or would be inconsistent with, Regulation T, U or X promulgated by the Board of Governors of the Federal Reserve System from time to time or (ii) to acquire any security in any transaction which is subject to Section 13 or 14 of the Securities Exchange Act of 1934, as amended.

(g)     Each Receivable treated as or represented to be a Pool Receivable is owned by the Borrower, free and clear of any Adverse Claim (except as created pursuant to the Transaction Documents). The Eligible Receivables included in Net Eligible Receivables Balance and owed by an Official Body (other than the U.S. Federal Government) shall not exceed 2.0% of the Net Eligible Receivables Balance at any time. The Administrative Agent, for the benefit of the Secured Parties, has a valid and perfected first priority security interest, ranking ahead of any other encumbrance, security interest or pledge and the interest of any other creditor of any Transaction Party in each Pool Receivable and in the Related Security and Collections related thereto, the Facility Accounts and all other Collateral, in each case, free and clear of any Adverse Claim (except as created pursuant to the Transaction Documents). Except for the filings required under the Transaction Documents, no effective financing statement or other instrument similar in effect is filed in any recording office listing any Transaction Party as debtor, covering any Receivable, Related Security or other Collateral, or any interest therein or proceeds thereof.

(h)     (i) Each Portfolio Report and Supplemental Report is complete and accurate in all material respects as of its date, (ii) all other written information, data, exhibits, documents, books, records and reports furnished by or on behalf of the Borrower to any Secured Party in connection with this Agreement, any other Transaction Document or any transaction contemplated thereby are true and accurate in all material respects as of the date stated or certified and do not contain any material misstatement of fact or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading, and (iii) all annual and quarterly financial statements of Borrower which have been furnished by or on behalf of the Borrower (A) have been prepared in accordance with GAAP consistently applied and (B) fairly present in all material respects the financial condition of the Borrower as of the dates set forth therein and the results of any operations of the Borrower and, if applicable, its consolidated Subsidiaries for the periods ended on such dates, subject to year-end adjustments and the absence of footnotes in the case of unaudited statements.

(i)     It has (i) timely filed or caused to be filed all Tax returns required to be filed, except to the extent failure to file would not reasonably be expected to have a Material Adverse Effect, and (ii) paid or made adequate provision for the payment

of all Taxes, assessments and other governmental charges due and payable by it except to the extent such Taxes, assessments or other governmental charges are being contested in good faith by appropriate proceedings and the Borrower has set aside on its books adequate reserves in accordance with GAAP. The Borrower either (i) qualifies as a qualified subchapter S subsidiary within the meaning of IRC Section 1361 and 1362 or (ii) is a disregarded entity and not treated as an entity separate from the Parent for U.S. federal tax purposes.

(j)     (i)  The principal places of business and chief executive office of Borrower and the offices where it keeps all of its Records are located at the address(es) listed on Schedule 2 (*Address and Notice Information*) to this Agreement or such other locations of which the Administrative Agent has been notified in accordance with Clause 5.1(h) (*Further Assurances; Changes in Name or Jurisdiction of Organization, etc.*) in jurisdictions where all action required by such Clause 5.1(h) has been taken and completed. (ii) Borrower is a limited liability company organized under the laws of the State of Delaware and its Federal Employer Identification Number is 26-1949042.

(k)     (i) The names and addresses of all the Facility Account Banks together with the account numbers of the Facility Accounts and the post office box number and address of each Lock-Box at such Facility Account Banks are as specified in Schedule 5 (*Facility Accounts and Account Banks*), as such Schedule 5 (*Facility Accounts and Account Banks*) may be updated from time to time pursuant to Clause 5.1(g) (*Deposits to Borrower Accounts*). (ii) All Facility Accounts are subject to a valid and enforceable Security Document and the Administrative Agent, on behalf of the Secured Parties, has a valid and perfected security interest or pledge of the Facility Accounts, free and clear of any Adverse Claims except, as created pursuant to the Transaction Documents. Borrower has not granted any Person, other than the Administrative Agent as contemplated by the Transaction Documents, ownership, dominion or control of any Lock-Box or Facility Account or the right to the ownership, dominion or control of any such Lock-Box or Facility Account at a future time or upon the occurrence of a future event. All Obligors have been instructed to pay all amounts owed in respect of Receivables to a Collection Account (or the related Lockbox described in Schedule 5 (*Facility Accounts and Account Banks*). The Borrower will use commercially reasonably efforts to permit only Collections and other amounts payable in respect of Pool Receivables to be deposited into the Borrower Accounts. Each of the Facility Account Banks is an Eligible Account Bank.

(l)     Since its organization, the Borrower has not used any company name, tradename or doing-business-as name other than the name in which it has executed this Agreement.

(m)    The Borrower was organized on February 7, 2008 under the Laws of the State of Delaware and the Borrower did not engage in any business activities prior to such date. The Borrower has no Subsidiaries. Servicer owns, directly or indirectly, 100% of the issued and outstanding Equity Interests of Borrower, free and clear of

any Adverse Claim. Such Equity Interests are validly issued, fully paid and nonassessable, and there are no options, warrants or other rights to acquire securities of Borrower.

(n)    The Borrower is not required to be registered as an "investment company" as defined in the Investment Company Act of 1940.

(o)    The Borrower is able to pay its debts and liabilities, direct, subordinated, contingent or otherwise, as such debts and liabilities become absolute and matured. The Borrower has sufficient capital with which to conduct the business in which it is engaged. The Borrower does not intend to, and does not believe that it will, incur debts or liabilities beyond its ability to pay such debts and liabilities as they mature, taking into account the timing and amounts of cash to be received by it and the timing and amounts of cash to be payable on or in respect of its Indebtedness. The Borrower is not insolvent and does not expect to become insolvent as a result of its performance of its obligations under the Transaction Documents.

(p)    With respect to each Receivable treated as or represented to be a Pool Receivable, the Borrower received such Receivable as a contribution to its capital or purchased such Receivable from the Parent and Parent (if Parent was not the Originator of such Receivable) purchased such Receivable from a Sub-Originator, in accordance with the terms of the Receivables Purchase Agreement, and in the case of any such purchase, in exchange for payment (made by the Borrower to Parent and by Parent (if Parent was not the Originator of such Receivable) to such Sub-Originator in accordance with the provisions of the Receivables Purchase Agreement) of cash, an addition to the principal amount of the Intercompany Note, another form of deferred consideration permitted under the Receivables Purchase Agreement, or a combination thereof in an amount which constituted fair consideration. Each such purchase, acquisition or other transaction referred to above shall not have been made for or on account of an antecedent debt owed by Sub-Originator to Parent (if Parent was not the Originator of such Receivable) or by Parent to the Borrower, and no such sale, acquisition or other transaction is or may be voidable or subject to avoidance under any section of any applicable Insolvency Law or by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(q)    Each of the representations and warranties of the Borrower contained in the Transaction Documents (other than this Agreement) is complete and correct and the Borrower hereby makes each such representation and warranty to, and for the benefit of, the Administrative Agent and the Secured Parties as if the same were set forth in full herein.

(r)    Borrower has not made any change to the Credit and Collection Policy except as permitted by Clause 5.1(k) (*Nature of Business; Credit and Collection Policies*).

(s)     With respect to each Receivable transferred to Borrower under the Receivables Purchase Agreement, reasonably equivalent value has been given by Borrower to Parent, and by Parent to the Sub-Originator, in consideration therefor and such transfer was not made for or on account of an antecedent debt. No transfer by any Originator or by Parent of any Receivable under the Receivables Purchase Agreement is or may be voidable under any section of the Bankruptcy Reform Act of 1978 (11 U.S.C. §§ 101 et seq.), as amended. Each remittance of Collections to the Administrative Agent or the Lenders hereunder will have been (i) in payment of a debt incurred in the ordinary course of the Borrower's business or financial affairs and (ii) made in the ordinary course of the Borrower's business or financial affairs.

5.   **COVENANTS**

5.1  **Covenants of the Borrower**

Until the Final Payout Date:

(a)     Compliance with Laws, Etc.

The Borrower will comply in all material respects with all applicable Laws and preserve and maintain its organizational existence, rights, franchises, qualifications, and privileges.

(b)     Offices, Records and Books of Account

The Borrower will keep its records concerning the Pool Receivables at (i) the address of the Borrower specified in Clause 10.2 (*Notices, etc.*) as of the date of this Agreement or (ii) upon fifteen (15) days prior written notice to the Administrative Agent, at any other locations in jurisdictions where all actions necessary or requested by the Administrative Agent to protect and perfect its security interest in the Collateral have been taken and completed. The Borrower also will maintain and implement, or cause the Servicer to maintain and implement, administrative and operating procedures (including an ability to recreate records to the extent necessary evidencing Receivables, any Related Security with respect thereto and related Contracts in the event of the loss or destruction of the originals thereof), and keep and maintain all documents, books, records and other information necessary for the collection of all Receivables, Related Security with respect thereto, the Facility Accounts and the other Collateral (including records adequate to permit the daily identification of each Receivable and all Collections thereof and adjustments thereto). The Borrower shall give the Administrative Agent prompt notice of (i) any change in its administrative and operating procedures referred to in the previous sentence that would materially affect (A) data or calculations included in any Portfolio Report or used to determine the existence of a Facility Event, (B) financial tests, (C) revenue recognition or (D) otherwise relate to the Collateral, and (ii) any change of the Chief Financial Officer, Treasurer, Controller, Assistant Treasurer or

Assistant Controller of Tribune Company or the Chief Financial Officer of the Tribune Publishing Segment and the Chief Financial Officer of the Tribune Broadcasting Segment, and any allegation of criminal misconduct or fraud by any such Person involved in the origination or servicing of Receivables.

(c)    Sales, Liens, Etc.

The Borrower will not sell, assign (by operation of law or otherwise) or otherwise dispose of, or create or suffer to exist any Adverse Claim upon or with respect to, the Receivables, the Related Security, any Facility Account, any other Collateral or any other asset of the Borrower, or assign any right to receive income in respect thereof; or permit any Equity Interests of the Borrower to be subject to any Adverse Claim except for Adverse Claims created under the Transaction Documents.  Nothing in this Clause 5.1(c) shall prevent the Borrower from making Restricted Payments otherwise permitted under Clause 5.1(m).

(d)    Extension or Amendment of Pool Receivables and Contracts

Except as provided in Clause 2.2(c) (*Duties of the Servicer*) of the Servicing Agreement, the Borrower will not (i) extend, amend, waive or otherwise modify the terms of any Pool Receivable or any Related Security, or (ii) amend, waive or otherwise modify any term or condition of any Contract related thereto in a manner that could reasonably be expected to adversely affect the collectibility of the Pool Receivables or could otherwise reasonably be expected to have a Material Adverse Effect.

(e)    Changes to Senior Credit Agreement

The Borrower will provide drafts and executed copies of each amendment, modification or waiver of the Senior Credit Agreement (including without limitation any interest, fees or other pricing in connection therewith) to the Administrative Agent contemporaneously with the delivery thereof to the lenders under the Senior Credit Agreement; provided that each Lender hereunder shall have been deemed to receive such information, amendment or modification in its capacity as a Lender hereunder if it (or an Affiliate thereof) received such information, amendment or modification in its capacity as a lender under the Senior Credit Agreement.

(f)    Change in Payment Instructions to Obligors

The Borrower will not, and will not permit an Originator or a Servicer Party to, add or terminate any Facility Account from those listed in Schedule 5 (*Facility Accounts and Facility Account Banks*) or make, or permit an Originator or Servicer Party to make, any change in any instruction to Obligors regarding payments to be made in respect of the Receivables or payments to be made to any Facility Account unless (i) an Obligor is instructed to pay another existing Facility Account and the original Facility Account remains open for at least three (3) months following such instruction, or (ii) the Administrative Agent shall have

received at least ten (10) Business Days prior written notice of such addition, termination or change (including an updated Schedule 5 (*Facility Accounts and Facility Account Banks*)) and a fully executed Account Control Agreement with respect to each new Facility Account has been delivered to the Administrative Agent. Each Borrower Account and the Cash Reserve Account shall be maintained at all times in the name of the Borrower, except as otherwise agreed by the Administrative Agent. Each other Facility Account shall be maintained at all times in the name specified in Schedule 5 (*Facility Accounts and Facility Account Banks*).

(g)    Deposits to Borrower Accounts

If the Borrower shall receive any Collections directly, the Borrower shall (or will cause the Servicer to) promptly (and in any event within one Business Day) cause such Collections to be deposited into a Collection Account or a Borrower Concentration Account. The Borrower will use commercially reasonable efforts to (and will cause the Servicer Parties to use commercially reasonable efforts to) prevent funds which do not constitute Collections of Receivables from being deposited into any Borrower Account.

(h)    Further Assurances; Change in Name or Jurisdiction of Organization, Etc.

(i)    The Borrower agrees from time to time, at its expense, promptly to execute and deliver all further instruments and documents, and to take all further actions, that may be necessary, or that the Administrative Agent may reasonably request, to perfect, protect or more fully evidence the Administrative Agent's first priority perfected security interest in the Receivables, the Related Security, the Facility Accounts and the other Collateral, or to enable the Lenders or the Administrative Agent to exercise and enforce their respective rights and remedies under the Transaction Documents. Without limiting the foregoing, the Borrower will, upon the request of the Administrative Agent, execute and file such financing or continuation statements, or amendments thereto, and such other instruments and documents, that may be necessary, or that the Administrative Agent may request, to perfect, protect or evidence the Administrative Agent's security interest in the Receivables, the Related Security, the Facility Accounts and the other Collateral. The Borrower authorizes the Administrative Agent to file financing or continuation statements or similar instruments, and amendments thereto and assignments thereof, relating to the Receivables, the Related Security, the Facility Accounts and the other Collateral for the purpose of evidencing or protecting its first priority perfected security interest in connection therewith without the signature of the Borrower. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement where permitted by Law.

(ii)    The Borrower will at all times be organized under the laws of the State of Delaware and will not take any action to change its jurisdiction of organization.

(iii)    The Borrower will not change its name, identity, organizational structure, location, registered office, its principal place of management or tax identification number or make any other change which could render any financing statement or similar instrument filed in connection with any Transaction Document seriously misleading or otherwise ineffective under applicable Law, unless the Administrative Agent shall have received at least 30 days' advance written notice of such change prior to the effectiveness thereof and all action by the Borrower necessary or appropriate to perfect or maintain the perfection and priority of the Administrative Agent's security interest in the Receivables, the Related Security, the Facility Accounts and the other Collateral (including the filing of all financing statements or similar instruments and the taking of such other action as the Administrative Agent may request in connection with such change) shall have been duly taken.

(i)    Separateness

The Borrower acknowledges that the Lenders are entering into this Agreement in reliance on the Borrower's identity as separate from the other Transaction Parties, and shall take all reasonable steps, including, without limitation, all steps that the Administrative Agent may from time to time reasonably request, to maintain the Borrower's identity as a separate legal entity and to make it manifest to third parties that the Borrower is an entity with assets and liabilities distinct from those of the Transaction Parties and any Affiliates thereof and not just a division of a Transaction Party or any such Affiliate. Without limiting the generality of the foregoing and in addition to the other covenants set forth herein except as contemplated by the Transaction Documents:

(i)    The Borrower will pay its own liabilities out of its own funds. Without limiting the foregoing, the Borrower shall compensate all employees, consultants and agents directly, from Borrower's own funds, for services provided to Borrower by such employees, consultants and agents and, to the extent any employee, consultant or agent of Borrower is also an employee, consultant or agent of Tribune or any Affiliate thereof, allocate the compensation of such employee, consultant or agent between Borrower and Tribune or such Affiliate, as applicable, on a basis that reflects the services rendered to Borrower and Tribune or such Affiliate, as applicable.

(ii)    The Borrower will hold itself out and identify itself as a separate and distinct entity under its own name and not as a division or part of any other Person.

(iii)    The Borrower will promptly correct any misunderstanding of which it has knowledge regarding its separate existence and identity.

(iv)    The Borrower will prepare and maintain its own full and complete books, records and financial statements separate from any other Person. The Borrower's financial statements will comply with GAAP.

(v)    The Borrower will maintain at least one bank account in its own name.

(vi)    The Borrower will not assume or guarantee or become obligated for debts of any Person and no Person will assume or guarantee or become obligated for the debts of the Borrower, other than as provided in the Transaction Documents. The Borrower will not hold its credit out as being available to satisfy the obligations of any other Persons.

(vii)    The Borrower will not acquire obligations or securities of any Person except as otherwise expressly contemplated in the Transaction Documents. The Borrower will not make loans, advances or otherwise extend credit to any Person except as expressly contemplated by the Transaction Documents.

(viii)    Except to the extent provided in the Transaction Documents, the Borrower will not commingle any of its money or other assets with the money or assets of any other Person.

(ix)    Except as expressly contemplated in the Transaction Documents, the Borrower will engage in transactions and conduct all other business activities solely in its own name and through its own authorized officers and agents. The Borrower will present itself to the public as a separate company. Except to the extent provided in, or anticipated by, the Transaction Documents, no Person will be appointed agent of the Borrower.

(x)    The Borrower will duly observe, in a timely manner in all material respects, all obligations, including any filing and publication requirements, of a limited liability company organized under the laws of the State of Delaware.

(xi)    The Borrower shall clearly identify its offices (by signage or otherwise) as its offices and, if such office is located in the offices of Tribune, Borrower shall lease such office at a fair market rent.

(xii)    The Borrower shall have separate stationery, invoices and checks in its own name.

(xiii)    The Borrower shall conduct all transactions with the other Transaction Parties strictly on an arm's-length basis, allocate all overhead expenses (including, without limitation, telephone and other utility charges) for

items shared between Borrower and such Transaction Party on the basis of actual use to the extent practicable and, to the extent such allocation is not practicable, on a basis reasonably related to actual use.

(xiv)    The Borrower shall at all times have a Board of Directors consisting of three members, at least one member of which is an Independent Director.

(xv)    The Borrower shall maintain its organizational charter in conformity with this Agreement, such that it does not amend, restate, supplement or otherwise modify its Certificate of Formation or Limited Liability Company Agreement in any respect that would impair its ability to comply with the terms or provisions of any of the Transaction Documents.

(j)    Transaction Documents

(i)    Except as permitted under Clause 10.13 (*Limitation on the Addition and Termination of Sub-Originators*) or as otherwise expressly permitted by the Transaction Documents, the Borrower will not terminate, amend, waive or modify, suffer to exist or consent to any termination, amendment, waiver or modification of, any provision of any Transaction Document or grant any other consent or other indulgence under any Transaction Document, in each case, without the prior written consent of the Required Lenders and, with respect to any amendment that alters the rights or duties of the Administrative Agent, the Administrative Agent.

(ii)    The Borrower will perform all of its obligations under the Transaction Documents and will enforce the Transaction Documents in accordance with their respective terms. With respect to any Receivable purchased by Borrower from Parent, or by Parent from any other Originator, such sale shall be effected under, and in compliance with the terms of, the Receivables Purchase Agreement, including, without limitation, the terms relating to the amount and timing of payments to be made to Parent or to such other Originator in respect of the purchase price for such Receivable.

(k)    Nature of Business; Credit and Collection Policies

The Borrower will not engage in any business other than the purchase and financing of Receivables, Related Security and Collections originated by the Originators pursuant to and in accordance with terms of the Transaction Documents. The Borrower will not create or form any Subsidiary. The Borrower will not amend, modify, change or repeal any of its Organic Documents without the prior written consent of the Required Lenders, which consent shall not be unreasonably withheld, or in the case of any material amendment, without the prior written consent of the Supermajority Lenders. The Borrower will not make any change in the Credit and Collection Policies without the prior written consent of the Required Lenders, except in either case for any such change in a Credit and Collection Policy (i) that would not (A) impair the collectibility of the Pool

Receivables in any material respect, (B) otherwise have a Material Adverse Effect or (C) adversely affect in any material respect the interests or remedies of the Secured Parties or (ii) as required by applicable Law.  The Borrower will not have any employees.

(l)     Mergers, Etc.

The Borrower will not liquidate or dissolve or merge with or into or consolidate with or into, or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions), all or substantially all of its assets (whether now owned or hereafter acquired) to, or acquire all or substantially all of the assets or capital stock or other ownership interest of, or enter into any joint venture or partnership agreement with, any Person.

(m)     Distributions, Etc.

The Borrower will not (i) declare or make any dividend payment or other distribution of assets, properties, cash, rights, obligations or securities on account of any Equity Interests in the Borrower, or return any capital to its members as such, or purchase, retire, defease, redeem or otherwise acquire for value or make any payment in respect of any membership interest of the Borrower or any warrants, rights or options to acquire any membership interests of the Borrower, now or hereafter outstanding, (ii) prepay, purchase or redeem any Indebtedness (other than Indebtedness hereunder), (iii) lend or advance any funds, (iv) repay any loans or advances to, for or from any of its Affiliates (the amounts described in Clauses 5.1(m)(i) to (iv) being referred to as "**Restricted Payments**"); provided, however, that the Borrower may (x) purchase Receivables and any Related Security and Collections related thereto, and (y) pay amounts owing in respect of the Intercompany Note, and (z) provided that, after giving effect thereto, no Facility Event has occurred and is continuing and the Borrower's Net Worth is not less than the Required Capital Amount, make distributions to Parent, in each case in accordance with the terms and conditions of the Transaction Documents, including Clause 2.6 (*Application of Collections prior to Facility Termination Date*), Clause 2.7 (*Application of Collections after Facility Termination Date*) and Clause 3 (*Conditions of Term Borrowing, Incremental Borrowings and Repeat Advances*).

(n)     Indebtedness

The Borrower will not create, incur, guarantee, assume or suffer to exist any Indebtedness or other liabilities, whether direct or contingent, funded or unfunded, other than (i) as a result of the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business, (ii) the incurrence of obligations under this Agreement, (iii) the incurrence of other obligations pursuant to, and, as expressly set forth in, the Transaction Documents or (iv) the incurrence of operating expenses in the ordinary course of business.

(o)     Taxes

The Borrower will (i) file all Tax returns and reports required by Law to be filed by it, except to the extent failure to file would not reasonably be expected to have a Material Adverse Effect, and (ii) promptly pay all Taxes and governmental charges at any time owing by it except to the extent such Taxes or governmental charges are being contested in good faith by appropriate proceedings and the Borrower has set aside on its books adequate reserves in accordance with GAAP. The Borrower will pay when due any Taxes (other than Excluded Taxes) payable by the Borrower in connection with the Collateral.  The Borrower agrees to take all actions and to do all things necessary or appropriate to maintain its status as either (i) a qualified subchapter S subsidiary within the meaning of IRC Section 1361 and 1362 or (ii) a disregarded entity not treated as an entity separate from the Parent for U.S. federal tax purposes.

(p)     Enforcement

The Borrower on its behalf, and on behalf of the Secured Parties, shall (or shall cause the Servicer Parties to) promptly enforce all covenants and obligations in its favor of the other Transaction Parties under the Transaction Documents.  The Borrower will take all actions to perfect and enforce its rights and interests (and the rights and interests of the Administrative Agent and the Secured Parties as assigns of Borrower) under the Transaction Documents (excluding this Agreement, the Security Agreement and the Fee Letters) as the Administrative Agent or the Required Lenders may from time to time request, including making claims to which it may be entitled under any indemnity, reimbursement or similar provision contained in any such Transaction Document.  The Borrower shall also deliver consents, approvals, acknowledgements, directions, notices, waivers and take such further actions thereunder as may be directed by the Administrative Agent.

(q)     Collateral

The Borrower will cause all Collateral, including Borrower Accounts and the Cash Reserve Account, to be subject at all times to a first priority perfected security interest in favor of the Administrative Agent, (subject only to any Adverse Claims of any applicable Facility Account Banks at which a Borrower Account or the Cash Reserve Account is maintained (as set forth in the applicable Account Control Agreement).

(r)     Change in Accountants or Accounting Policies

The Borrower shall promptly notify the Administrative Agent of any change in its outside accountants or material change in its accounting policies that relate to the Receivables, that affect the reports required to be delivered hereunder or that could reasonably be expected to have a Material Adverse Effect.

(s)     Power of Attorney

The Borrower will not voluntarily revoke or attempt to revoke any power of attorney granted by it in connection with the transactions contemplated by the Transaction Documents.

(t)     Instruments

The Borrower shall not take any action to cause any Pool Receivable not evidenced by a negotiable instrument upon origination to become evidenced by a negotiable instrument, except in connection with the enforcement or collection of a Defaulted Receivable or otherwise in accordance with the Servicer's standard operating procedures.

(u)     Delivery of Financial Statements; Litigation; Other Information

The Borrower shall deliver to the Administrative Agent (i) within 90 days after the close of each of its fiscal years, a copy of its unaudited financial statements prepared in accordance with GAAP, including a balance sheet and the related consolidated statements of income, cash flows and changes in the membership interests of members, in each case setting forth figures for such fiscal year and the previous fiscal year, (ii) within two (2) Business Days of a Responsible Officer of the Borrower or the Servicer learning thereof, written notice to the Administrative Agent of any action, suit, investigation by an Official Body, litigation or proceedings at law or in equity or by or before an Official Body pending or threatened against or affecting the Borrower or any of its business, property or revenues, and (iii) promptly upon request, such other information as the Administrative Agent shall reasonably request with respect to the Transaction Parties or their assets.

(v)     Licenses, Etc.

The Borrower shall maintain in full force and effect all licenses, approvals, authorizations, consents, registrations and notifications which are at any time required in connection with the performance of its duties and obligations hereunder and under the other Transaction Documents, except where the absence of the same would not have a Material Adverse Effect.

(w)     Title

At all times on and after the Closing Date until the Final Payout Date (i) all actions to be taken in order to perfect and protect the interests of the Administrative Agent and the other Secured Parties in the Pool Receivables and the Related Security and Collections related thereto, the Borrower Accounts, the Cash Reserve Account and all other Collateral against any Adverse Claim  or the interest of any creditor of or purchaser from any Transaction Party will have been duly taken in each jurisdiction necessary for such purpose, (ii) all registrations, financing statements, notices, instruments and documents required to be recorded

or filed in order to perfect and protect interests of the Administrative Agent and the other Secured Parties in the Pool Receivables and the Related Security and Collections related thereto, the Borrower Accounts, the Cash Reserve Account and all other Collateral against any Adverse Claim or the interest of any creditor of, or purchaser from, any Transaction Party will have been duly executed, filed or served in or on the appropriate filing office, Official Body or other Person in each jurisdiction necessary for such purpose and (iii) all fees and Taxes, if any, payable in connection with such actions and filings shall have been paid in full when or before due.

(x)    Performance and Compliance with Contracts and Credit and Collection Policies

The Borrower will, at its expense, timely and fully comply with the Credit and Collection Policies except where failure to comply would not be reasonably expected to have a Material Adverse Effect.

(y)    No Surcharge

The Borrower shall not, and shall not permit any Affiliate to, assert any charges under Section 506(c) of the Bankruptcy Code against any Collateral securing the Loans.

(z)    No Superpriority Claims

The Borrower shall not, and shall not permit any Affiliate to, permit to exist any claims entitled to a superpriority under Section 364(c)(1) of the Bankruptcy Code, other than those of the Administrative Agent and the other Secured Parties, except for those claims that are junior in priority and subordinated in all respects to those of the Administrative Agent and the other Secured Parties.

5.2    **Inspections; Agreed Upon Procedures Audit**

Until the Final Payout Date, the Borrower will, and will cause each Servicer Party to during regular business hours as requested by the Administrative Agent upon (absent a Facility Event) reasonable prior notice, permit the Lenders acting as a group or their respective agents or representatives (including independent accountants or consultants) (a) to conduct periodic audits of, or to perform agreed upon procedures with respect to, the Receivables, the Related Security, the other Collateral and the related books and records, including the Contracts, and collections systems of the Borrower, or the applicable Servicer Party, as the case may be, (b) to examine and make copies of and abstracts from all documents, purchase orders, invoices, agreements, books, records and other information (including computer programs, tapes, discs, cards, data processing software, storage media and related property and rights) in the possession or under the control of the Borrower or the applicable Servicer Party, as the case may be, relating to Receivables, the Related Security and the other Collateral, including the Contracts (c) to visit the offices and properties of the Borrower or the applicable Servicer Party, as the case may be, for the purpose of examining such materials described in Clauses 5.2(a) and

(b), and to discuss matters relating to Receivables, the Related Security and the other Collateral or the Borrower's, or the applicable Servicer Parties' performance under the Transaction Documents or under the Contracts with any of the officers or employees of the Borrower, or the applicable Servicer Party, as the case may be, having knowledge of such matters.

It is understood and agreed that any of the actions to be taken by the Lenders pursuant to this Clause 5.2 shall be initiated by the Administrative Agent on behalf of the Lenders or by the Administrative Agent at the request of the Required Lenders and that any visit to the offices and properties of the Borrower or Servicer Party by the Lenders shall be conducted by the Lenders as a group and not by an individual Lender.  So long as no Trigger Event or Facility Termination Event has occurred and is continuing, no more than two such inspections shall be permitted in any calendar year at the request of the Lenders and neither the Borrower nor any of the Servicer Parties shall be responsible for the costs and expenses of any Lender (other than the costs and expenses of the Administrative Agent) incurred in connection therewith.

6.      **ADMINISTRATION AND COLLECTION OF RECEIVABLES**

6.1    **Designation of Servicer**

The servicing, administration and collection of the Pool Receivables shall be conducted by the Servicer so designated under the Servicing Agreement from time to time.

6.2    **Certain Rights of the Administrative Agent**

(a)      The Administrative Agent may (and if so directed by the Required Lenders, shall), at any time have each Borrower Account and the Cash Reserve Account transferred into the name of the Administrative Agent for the benefit of the Secured Parties.  The Administrative Agent may (and, if so directed by the Required Lenders, shall) assume exclusive control of the Borrower Accounts. The Administrative Agent may take such actions to effect such transfer or assumption as it may determine to be necessary or appropriate (including delivering the notices attached to the applicable Security Documents).  The Administrative Agent and the Lenders agree that the Administrative Agent will not effect such transfer or assumption with respect to any Facility Account other than the Cash Reserve Account unless a Facility Event has occurred.  The Administrative Agent shall have exclusive control with respect to the Cash Reserve Account at all times.

(b)      Following the occurrence and during the continuation of a Trigger Event, at the Administrative Agent's request (acting either on its own initiative or at the request of the Required Lenders) and at the Borrower's expense, the Borrower shall, or shall cause each Servicer Party to (and if any Servicer Party shall fail to do so within two Business Days, the Administrative Agent may, and shall at the direction of the Required Lenders) take any or all of the following actions:

(i)    The Borrower or such Servicer Party shall execute any power of attorney or other similar instrument and/or take any other action necessary to give effect to the notice and directions described in this Clause, including any action required (x) to convey or perfect the Borrower's title or the Administrative Agent's security interest in the Pool Receivables and Related Security, or (y) to be taken so that the obligations or other indebtedness of such Obligors in respect of any Pool Receivables and any Related Security with respect thereto may no longer be legally satisfied by payment to the applicable Originator or any of its Affiliates.

(ii)    The Borrower or such Servicer Party shall (A) assemble all of the Contracts, documents, instruments and other records (including computer tapes and disks) that evidence or relate to the Collateral, or that are otherwise necessary to collect the Collateral, and shall make the same available to the Administrative Agent at a place selected by the Administrative Agent or its designee, and (B) segregate all cash, checks and other instruments received by it from time to time constituting Collections of Collateral in a manner acceptable to the Administrative Agent and, promptly upon receipt, remit all such cash, checks and instruments, duly endorsed or with duly executed instruments of transfer, to the Administrative Agent or its designee.

(iii)    The Borrower or such Servicer Party shall (and without limiting any rights of the Administrative Agent granted elsewhere under the Transaction Documents) (A) notify each Obligor of Pool Receivables of the transfer, sale, trust, assignation and assignment of the Pool Receivables and the Related Security with respect thereto pursuant to the Transaction Documents and of the Borrower's ownership of, and the Administrative Agent's security interest in, the Pool Receivables and the Related Security with respect thereto, and (B) direct such Obligors that payments under any Pool Receivable or any Related Security with respect thereto be made directly to the Administrative Agent or its designee.

(c)    Following the occurrence and during the continuation of a Trigger Event, the Borrower authorizes the Administrative Agent to take any and all steps in the Borrower's name and on behalf of the Borrower that are necessary in the determination of the Administrative Agent, to collect amounts due under the Collateral, including (i) endorsing the Borrower's or any other Transaction Party's name on checks and other instruments representing Collections, and (ii) enforcing the Receivables and the Related Security and the Security Documents and other Transaction Documents, including to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in connection with therewith and to file any claims or take any action or institute any proceedings that the Administrative Agent (or such designee) may deem to be necessary for the collection thereof or to enforce compliance with the terms and conditions of, or to perform any obligations or

enforce any rights of the Borrower or any other Transaction Party in respect of, the Receivables and the Related Security and the other Transaction Documents.

6.3     **Performance of Obligations**

(a)     If the Servicer or the Borrower fails to perform any of its obligations under this Agreement or any other Transaction Document, taking into account any applicable grace periods and/or right to remedy breaches, the Administrative Agent may (but shall not be required to) itself perform, or cause performance of, such obligation; and the Administrative Agent's costs and expenses incurred in connection therewith shall be payable by the Servicer or the Borrower, as applicable.

(b)     The Borrower shall, and shall cause the Servicer to, perform their respective obligations, and exercise their respective rights, under the Contracts and the Transaction Documents to the same extent as if a security interest therein had not been granted to the Administrative Agent.  The exercise by the Administrative Agent on behalf of the Secured Parties of their rights under this Agreement shall not release the Servicer or the Borrower from any of their duties or obligations with respect to any Contracts or Transaction Documents.  None of the Administrative Agent or the Lenders shall have any obligation or liability with respect to any Transaction Documents or Contracts, nor shall any of them be obligated to perform the obligations of any Transaction Party under any Transaction Document or Contract.

(c)     The Administrative Agent's rights and powers under this Clause 6 and under the Servicing Agreement shall not subject the Administrative Agent to any liability if any action taken by it proves to be inadequate or invalid nor shall such powers confer any obligation whatsoever upon the Administrative Agent.

6.4     **Backup Servicing Agreement**

The Borrower and the Servicer shall not reject or otherwise terminate the Backup Servicing Agreement or replace the Backup Servicer without the prior written consent of the Required Lenders.

7.     **TRIGGER EVENTS AND TERMINATION EVENTS**

7.1     **Trigger Events**

If any of the following events (each, a "**Trigger Event**") shall occur and be continuing:

(a)     Any of the following shall occur:

(i)     any Transaction Party shall fail to make any payment of Interest or Fees required to be made by it hereunder or under any other Transaction Document when due hereunder or thereunder, or shall fail to deposit Collections (other than Deemed Collections) when such Collections are

required to be deposited by it under a Transaction Document and such failure shall continue for two (2) Business Days after the earlier of written notice to such Transaction Party or actual knowledge of a Responsible Officer of a Transaction Party;

(ii)     any Transaction Party shall fail to make any deposit of Deemed Collections required to be made by it hereunder or under any Transaction Document to which it is a party when due hereunder or thereunder, and such failure shall continue for two (2) Business Days after the earlier of written notice to such Transaction Party or a Responsible Officer of a Transaction Party having actual knowledge of such failure;

(iii)    the Borrower shall fail to make any payment of principal (including a Required Reduction) on any Loan when due or to make any required deposit to the Cash Reserve Account when due;

(iv)    any Transaction Party shall fail to make any other payment or deposit required to be made by it hereunder or under any other Transaction Document to which it is party when due hereunder or thereunder, and such failure shall continue for ten (10) calendar days after the earlier of written notice to such Transaction Party or a Responsible Officer of a Transaction Party having actual knowledge of such failure;

(v)     any Monthly Report or Supplemental Report shall not have been delivered within two (2) Business Days of the date when due; provided that if the failure to deliver such report results from a Force Majeure Event, the grace period in this clause shall be three (3) Business Days instead of two (2) Business Days;

(vi)    any Interim Report shall not have been delivered within one (1) Business Day of the date when due; provided that, if the failure to deliver such report results from a Force Majeure Event, the grace period in this clause shall be two (2) Business Days instead of one (1) Business Day;

(vii)   during any calendar month more than two Interim Reports shall not have been delivered when due other than by reason of a Force Majeure Event not to exceed two weeks in duration;

(viii)  any Guarantor shall fail to make any payment under the Guaranty when required thereunder; or

(ix)    any Transaction Party shall fail to make any payment under the Letter of Credit Agreement in an amount greater than $50,000 when due (without giving effect to any extensions or waivers granted thereunder) and such failure shall continue for three Business Days after such Transaction Party receives written notice thereof;

(b)     other than as addressed in Clauses 7.1(a) and 7.2(a), any Transaction Party shall fail to perform or observe any term, covenant or agreement contained in this Agreement or any other Transaction Document to which such Transaction Party is a party and, if such failure relates to a Specified Provision and is capable of being remedied, such Transaction Party shall have failed to remedy such failure within fifteen (15) Business Days after the earlier of such Transaction Party receiving written notice of such failure or a Responsible Officer of a Transaction Party having actual knowledge of such failure;

(c)     the Administrative Agent, on behalf of the Secured Parties, shall, for any reason, fail or cease to have a valid and perfected first priority charge, security interest or pledge in the Collateral prior to all other interests, or there shall exist any Adverse Claims on such Collateral (except as arising under the Transaction Documents) or the Administrative Agent shall, for any reason, fail or cease to have a valid and perfected first priority lien on the Guarantor Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Filing Date or other Permitted Adverse Claim and a junior, perfected security interest in and lien on the Guarantor Collateral which is subject to a Permitted Adverse Claim, including, without limitation, a validly perfected security interest or lien in existence as of the Filing Date, or a valid lien perfected (but not granted) after the Filing Date to the extent such perfection in respect of a pre-Filing Date claim is expressly permitted under the Bankruptcy Code and valid and enforceable rights of setoff held by depository institutions (and any Bankruptcy Court-ordered replacement liens therefor of the same extent and priority);

(d)     a Servicer Default or Facility Termination Event shall occur;

(e)     other than as permitted by Clause 10.13 (*Limitations on Addition and Termination of Originators*), (i) any Change of Control shall occur with respect to Tribune or (ii) the Parent shall cease to own (A) directly 100% of the Equity Interests of the Borrower or (B) directly or indirectly 100% of the Equity Interest of each Sub-Originator;

(f)     the Percentage Factor exceeds the Maximum Percentage Factor on any Business Day, and such circumstance remains unremedied on the related Interim Settlement Date;

(g)     as at the end of any Calculation Period, (i) the Three-Month Rolling Average Dilution Ratio-Broadcasting exceeds 3.0%, or (ii) the Three-Month Rolling Average Dilution Ratio – Publishing exceeds 7.0%;

(h)     (i) as at the end of the Calculation Period ended on March 29, 2009, August 30, 2009 or January 30, 2010, the Three-Month Rolling Average Default Ratio exceeds 9.0%, or (ii) as at the end of any other Calculation Period, the Three-Month Rolling Average Default Ratio exceeds 8.0%

(i)    (i) as at the end of the Calculation Period ended on March 29, 2009, August 30, 2009 or January 30, 2010, the Three-Month Rolling Average Delinquency Ratio exceeds 8.75%, or (ii) as at the end of any other Calculation Period, the Three-Month Rolling Average Delinquency Ratio exceeds 7.75%;

(j)    at the end of any Calculation Period, (i) the Three-Month Rolling Average DSO - Broadcasting is greater than 120, or (ii) the Three-Month Rolling Average DSO – Publishing is greater than 75;

(k)    any Transaction Party receives notice or becomes aware that a notice of lien has been filed against any Transaction Party under Section 430(k) of the IRC or Section 303(k) of ERISA for a failure to make a required installment or other payment to a plan to which Section 430(k) of the IRC or Section 303(k) of ERISA applies;

(l)    the failure by the Borrower to pay one or more final judgments requiring the Borrower to pay a sum or sums of money (whether or not such judgment may be stayed or further appealed), which judgments are not discharged or effectively waived or stayed (including by appeal provided that Borrower is not required to make any payment in respect of such judgment pending such appeal) for a period of fifteen (15) days, or any action shall be legally taken by a judgment creditor to levy upon assets or properties of the Borrower to enforce any such judgment; or

(m)    or any provision of a Transaction Document shall cease, for any reason, to be in full force and effect or to be the legally valid, binding and enforceable obligation of any Transaction Party thereto (including without limitation as a result of an Originator Termination Event but excluding a termination of (i) an Originator's obligations permitted by Clause 10.13 (*Limitations on Addition and Termination of Originators*) and (ii) the Letter of Credit Agreement in accordance with its terms), or any Transaction Party shall so assert in writing or any Transaction Party shall (except as expressly permitted by any Transaction Document) otherwise seek to terminate or disaffirm its material obligations under any such Transaction Document;

then, and in any such event, the Administrative Agent may, in its discretion, and shall, at the direction of the Required Lenders, declare the Facility Termination Date to have occurred upon notice to the Borrower (in which case the Facility Termination Date shall be deemed to have occurred).

7.2    **Facility Termination Events**

If any of the following events (each, a "**Facility Termination Event**") shall occur and be continuing:

(a)    any representation, warranty, certification or statement made by any Transaction Party in this Agreement or any other Transaction Document to which such Transaction Party is a party shall prove to have been incorrect in any material respect when made or deemed made; provided that if such breach relates to a

Specified Provision and is capable of being cured, such breach shall not constitute a Facility Termination Event unless it continues unremedied for five (5) Business Days after the earlier of a Transaction Party receiving written notice of such breach or a Responsible Officer of a Transaction Party having actual knowledge of such breach;

(b)   an Event of Bankruptcy shall occur with respect the Borrower; or

(c)   any holder of Post-Petition PDT Debt shall demand payment thereof, or any Post-Petition PDT Debt is paid, declared to be due or otherwise becomes due;

(d)   the Bankruptcy Court shall enter an order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, or appointing a trustee, receiver, manager or comparable person in any of the Chapter 11 Cases, or appointing a responsible officer or an examiner with enlarged powers relating to the operation of any Guarantor or its affiliates' business (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code Section 1106(b);

(e)   an order of the Bankruptcy Court shall be entered in any of the Chapter 11 Cases amending, supplementing or otherwise modifying any of the Financing Orders without the consent of the Required Lenders, or a Transaction Party shall apply for authority to do so; provided that no Facility Termination Event shall occur under this paragraph (e) to the extent that any such amendment, supplement or other modification is made in compliance with the Transaction Documents and is not adverse, in the reasonable judgment of the Administrative Agent, to the rights and interests of the Lenders under this Agreement and the other Transaction Documents;

(f)   any Filing Debtor shall support (in any such case by way of any motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of any Filing Debtor) any other Person's opposition of, any motion made in the Bankruptcy Court by the Administrative Agent seeking confirmation of the amount of such Lender's claim in respect of the obligations under the Transaction Documents or the validity and enforceability of the liens in favor of the Administrative Agent;

(g)   any Transaction Party shall seek to, or shall support (in any such case by way of motion or other pleading filed with the Bankruptcy Court or any other writing to another party-in-interest executed by or on behalf of any Transaction Party) any other Person's motion to, disallow in whole or in part any Lender's claim in respect of the obligations hereunder or to challenge the validity and enforceability of the liens in favor of the Administrative Agent;

(h)   the Final Financing Order or the Subsequent Financing Order shall cease to be in full force and effect (or shall have been vacated, stayed or reversed), without the consent of all Lenders;

(i)      any Guarantor shall make any payment on any Indebtedness of the Filing Debtors arising before the Filing Date, other than as permitted under the Financing Orders, as permitted hereunder, as permitted by order of the Bankruptcy Court in respect of claims that are (i) sought pursuant to the "first day" motions filed by the Filing Debtors and subsequently authorized by orders in the Chapter 11 Cases, (ii) payments on account of real estate leases that are assumed pursuant to Bankruptcy Court order and (iii) authorized in other orders in the Chapter 11 Cases in an aggregate amount for all such orders under this clause (iii) not to exceed $30,000,000;

(j)      any Transaction Party shall fail to comply with the terms of the Financing Orders;

(k)      the entry of an order (other than the Financing Orders) granting either (x) any other claim superpriority status or (y) an Adverse Claim equal or superior to that granted to the Administrative Agent for the benefit of the Administrative Agent and the Lenders, other than with respect to the Carve-Out, Permitted Adverse Claims on any Guarantor Collateral and, with respect to depository institutions holding valid and enforceable rights of setoff, any replacement liens therefor of the same extent and priority;

(l)      the entry of an order authorizing recovery by any Person from the Collateral for any costs of preservation or disposition thereof under Section 506(c) of the Bankruptcy Code in a *non de minimus* amount or (except as provided in the Financing Orders) authorizing the use of cash collateral (other than a de minimus amount of cash collateral and cash collateral securing a letter of credit permitted to be outstanding under Section 4.26 of the Receivables Purchase Agreement) without consent in writing by the Required Lenders;

(m)      the entry of one or more orders granting relief from the automatic stay so as to allow any third party to proceed against any interests of the Transaction Parties in assets, which have a value in excess of $25,000,000 in the aggregate;

(n)      the filing by any Transaction Party of any motion or proceeding which could reasonably be expected to result in material impairment of the Lenders' or Administrative Agent's rights under the Transaction Documents; or a final determination by the Bankruptcy Court (or any other court of competent jurisdiction) with respect to any motion or proceeding brought by any other party which results in any material impairment of the Lenders' or Administrative Agent's rights under the Transaction Documents; or

(o)      the Final Payout Date shall not have occurred on or prior to the earlier of (i) the Maturity Date, and (ii) the forty-fifth day after the occurrence of the Facility Termination Date:

then, and in any such event, the Administrative Agent may, in its discretion, and shall, at the direction of the Required Lenders, declare the Facility Termination Date to have occurred upon notice to the Borrower (in which case the Facility Termination Date shall

be deemed to have occurred); provided that automatically upon the occurrence of any event (without any requirement for the giving of notice) described in Clause 7.2(b), the Facility Termination Date shall occur. Upon any such declaration or upon such automatic termination, the Lenders and the Administrative Agent shall have, in addition to the rights and remedies which they may have under this Agreement, all other rights and remedies provided after default under applicable Law (including the UCC), which rights and remedies shall be cumulative.

7.3     **Acceleration of Maturity**

If a Facility Termination Event shall have occurred and be continuing, then and in every such case the Administrative Agent may, and if so directed by the Required Lenders shall, declare all of the Loans to be immediately due and payable by a notice in writing to the Borrower, and upon any such declaration the unpaid principal amount of the Loans, together with accrued and unpaid interest thereon, shall become immediately due and payable; provided that in the case of any event described in Clause 7.2(b), the Loans shall become immediately and automatically due and payable, without notice of any kind being given to the Borrower.

8.     **THE ADMINISTRATIVE AGENT**

8.1     **Authorization and Action**

(a)     Each Lender hereby irrevocably appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers under this Agreement and the other Transaction Documents as are delegated to the Administrative Agent by the terms hereof and the other Transaction Documents, together with such powers as are incidental thereto. Without limiting the foregoing, the Administrative Agent is empowered and authorized, on behalf of the Secured Parties, to hold and administer the Collateral for the benefit of the Secured Parties under the Security Documents and to enforce the obligations of the Guarantors under the Guaranty.

(b)     The Administrative Agent shall promptly deliver copies of any notice, report, financial statement, Budget or other document delivered to the Administrative Agent by any Transaction Party pursuant to the Transaction Documents promptly upon receipt thereof; provided such delivery may be accomplished by posting such notice, report, financial statement or other document to Intralinks and providing email notification of such posting; provided further, that, with respect to Daily Reports, the Administrative Agent shall be required only to deliver or post the Daily Reports delivered during any calendar week on the second Business Day of the following week; and provided finally, the Administrative Agent shall not be required to obtain and deliver or post copies of any SEC filing, but shall be only required to post notice of such SEC filing promptly following receipt of notice of such SEC filing from a Transaction Party.

(c)     The Administrative Agent shall not have any duties other than those expressly set forth in the Transaction Documents, and no implied obligations or liabilities shall be read into any Transaction Document, or otherwise exist, against the Administrative Agent.  The Administrative Agent does not assume, nor shall it be deemed to have assumed, any duty of care or obligation to, or relationship of trust or agency with, any Transaction Party, the Lenders or any other Secured Party, except as expressly set out in the Transaction Documents.  Notwithstanding any provision of this Agreement or any other Transaction Document, in no event shall the Administrative Agent ever be required to take any action which exposes the Administrative Agent to personal liability or which is contrary to any provision of any Transaction Document or applicable Law.  Without limiting the generality of the foregoing sentence, the use of the term "agent" in this Agreement with reference to the Administrative Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable Law.  Instead, such term is used merely as a matter of market custom, and is intended to create or reflect only an administrative relationship between independent contracting parties.

8.2    **Liability of Agent**

Neither the Administrative Agent nor any of its directors, officers, agents or employees shall be liable for any action taken or omitted to be taken by it or them as Administrative Agent under or in connection with the Transaction Documents (including the Administrative Agent's servicing, administering or collecting Receivables as Servicer pursuant to Clause 6 (*Administration and Collection of Receivables*)), in the absence of its or their own gross negligence or willful misconduct.  Without limiting the generality of the foregoing, the Administrative Agent:

(a)     may consult with legal counsel (including counsel for the Borrower or any Servicer Party), independent certified public accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts;

(b)     makes no warranty or representation to any Lender or other Secured Party (whether written or oral) and shall not be responsible to any Lender or other Secured Party for any statements, warranties or representations (whether written or oral) made in or in connection with this Agreement or any other Transaction Document;

(c)     shall not have any duty to ascertain or to inquire as to the performance or observance of any of the terms, covenants or conditions of this Agreement or any other Transaction Document on the part of any Transaction Party or to inspect the property (including the books and records) of any Transaction Party;

(d)     shall not be responsible to any Lender or other Secured Party for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of this Agreement or any other Transaction Document; and

(e)     shall incur no liability under or in respect of this Agreement or any other Transaction Document by acting upon any notice (including notice by telephone), consent, certificate or other instrument or writing (which may be by facsimile) believed by it in good faith to be genuine and signed or sent by the proper party or parties.

8.3     **Barclays and Affiliates**

The obligation of Barclays to fund Loans under this Agreement may be satisfied by Barclays or any of its Affiliates.  With respect to any Loan or interest therein owned by it, Barclays shall have the same rights and powers under this Agreement as any Lender and may exercise the same as though it were not the Administrative Agent.  Barclays and any of its Affiliates may generally engage in any kind of business with the Transaction Parties or any Obligor, any of their respective Affiliates and any Person who may do business with or own securities of the Transaction Parties or any Obligor or any of their respective Affiliates, all as if Barclays were not the Administrative Agent and without any duty to account therefor to the Lenders or other Secured Parties.

8.4     **Indemnification of Administrative Agent**

Whether or not the transactions contemplated hereby are consummated, each Lender severally agrees to indemnify the Administrative Agent (to the extent not reimbursed by the Transaction Parties), ratably based on the Commitment of such Lender (or, if the Commitments have terminated, ratably according to the respective Commitment of such Lender immediately prior to such termination), from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against the Administrative Agent, in any way relating to or arising out of this Agreement or any other Transaction Document or any action taken or omitted by the Administrative Agent, under this Agreement or any other Transaction Document, provided that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the Administrative Agent's gross negligence or willful misconduct; provided, however, that no action taken in accordance with the direction of the Required Lenders shall be deemed to constitute gross negligence or willful misconduct for purposes of this Clause 8.4.  Without limitation of the foregoing, each Lender shall reimburse the Administrative Agent upon demand for its ratable share of any costs or out-of-pocket expenses (including attorney's fees) incurred by the Administrative Agent in connection with the preparation, execution, delivery, administration, modification, amendment or enforcement (whether through negotiations, legal proceedings or otherwise) of, or legal advice in respect of rights or responsibilities under, this Agreement, any other Transaction Document, or any document contemplated by or referred to herein, to the extent that the Administrative Agent is not reimbursed for such

expenses by or on behalf of the Borrower. The undertaking in this Clause 8.4 shall survive payment on the Final Payout Date and the resignation or replacement of the Administrative Agent.

8.5   **Delegation of Duties**

The Administrative Agent may execute any of its duties through agents, employees or attorneys-in-fact and shall be entitled to advice of counsel concerning all matters pertaining to such duties. The Administrative Agent shall not be responsible for the negligence or misconduct of any agents or attorneys-in-fact selected by it with reasonable care.

8.6   **Action or Inaction by Administrative Agent**

The Administrative Agent shall in all cases be fully justified in failing or refusing to take action under any Transaction Document unless it shall first receive such advice or concurrence of the Lenders or the Required Lenders, as the case may be, and assurance of its indemnification by the Lenders, as it deems appropriate. The Administrative Agent shall in all cases be fully protected in acting, or in refraining from acting, under this Agreement or any other Transaction Document in accordance with a request or at the direction of the Required Lenders or all Lenders, as the case may be, and such request or direction and any action taken or failure to act pursuant thereto shall be binding upon all Lenders. Unless any action to be taken by the Administrative Agent under a Transaction Document (a) specifically requires the advice or concurrence of all the Lenders or (b) specifically provides that it be taken by the Administrative Agent alone or without any advice or concurrence of any Lender, then the Administrative Agent may (and shall, to the extent required hereunder) take action based upon the advice or concurrence of the Required Lenders.

8.7   **Notice of Facility Events; Action by Administrative Agent**

The Administrative Agent shall not be deemed to have knowledge or notice of the occurrence of any Facility Event or any other default or termination event under the Transaction Documents, as the case may be, unless the Administrative Agent has received notice from any Lender, any Servicer Party or the Borrower stating that a Facility Event has occurred hereunder or thereunder and describing such event or default. If the Administrative Agent receives such a notice, it shall promptly give notice thereof to each Lender. The Administrative Agent shall take such action concerning a Facility Event or any other matter hereunder as may be directed by the Required Lenders (subject to the other provisions of this Clause 8), but until the Administrative Agent receives such directions, the Administrative Agent may (but shall not be obligated to) take such action, or refrain from taking such action, as the Administrative Agent deems advisable and in the best interests of the Lenders.

8.8   **Non-Reliance on Administrative Agent and Other Parties**

Each Lender expressly acknowledges that neither the Administrative Agent nor any of its directors, officers, agents or employees has made any representations or warranties to it

and that no act by the Administrative Agent hereafter taken, including any review of the affairs of the Transaction Parties, shall be deemed to constitute any representation or warranty by the Administrative Agent. Each Lender represents and warrants to the Administrative Agent that, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, it has made and will continue to make its own appraisal of and investigation into the business, operations, property, prospects, financial and other conditions and creditworthiness of each Transaction Party and the Receivables and its own decision to enter into this Agreement and to take, or omit, action under any Transaction Document. Except for items expressly required to be delivered under any Transaction Document by the Administrative Agent to any Lender, the Administrative Agent shall not have any duty or responsibility to provide any Lender with any information concerning the Transaction Parties or any of their Affiliates that comes into the possession of the Administrative Agent or any of its directors, officers, agents, employees, attorneys-in-fact or Affiliates.

8.9     **Successor Administrative Agent**

The Administrative Agent may resign as Administrative Agent. Except as provided below, such resignation shall not become effective until a successor Administrative Agent is appointed by the Required Lenders (with the consent of the Servicer, such consent not to be unreasonably withheld or delayed) and has accepted such appointment. If no successor Administrative Agent shall have been appointed within 30 days after the departing Administrative Agent's giving of notice of resignation, the departing Administrative Agent may appoint a successor Administrative Agent, which successor Administrative Agent shall have short-term debt ratings of at least A-1 from S&P and P-1 from Moody's and shall be either a commercial bank having a combined capital and surplus of at least $250,000,000 or a Subsidiary of such an institution and shall be acceptable to the Servicer (such acceptance not to be unreasonably withheld or delayed). If no successor Administrative Agent shall have been appointed within 60 days after the departing Administrative Agent's giving of notice of resignation, the departing Administrative Agent may petition a court of competent jurisdiction to appoint a successor Administrative Agent, which successor Administrative Agent shall have short-term debt ratings of at least A-1 from S&P and P-1 from Moody's, and shall be either a commercial bank having a combined capital and surplus of at least $250,000,000 or a Subsidiary of such an institution. Upon such acceptance of its appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall succeed to and become vested with all the rights and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from any further duties and obligations under the Transaction Documents. After any retiring Administrative Agent's resignation hereunder, the provisions of Clause 2.6 (*Indemnities by Servicer*) of the Servicing Agreement and Clause 9 (*Indemnities*) and this Clause 8 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was the Administrative Agent.

8.10    **Consent to Agreed Upon Procedures**

Each Lender, by becoming a party to this Agreement, authorizes the Administrative Agent to execute on its behalf a letter agreement with respect to the limited engagement of, and consenting to the agreed upon procedures to be performed by, a firm of nationally recognized independent accountants or consultants acceptable to the Administrative Agent in connection with the transactions contemplated by the Transaction Documents.

9.    **INDEMNITIES**

Without limiting any other rights that the Administrative Agent, the Lenders or any of their respective officers, directors, agents, attorneys, advisors, representatives, employees, controlling Persons or Affiliates of any of the foregoing (each, an "**Indemnified Party**") may have hereunder, under any other Transaction Document or under applicable Law, the Borrower hereby agrees to indemnify and hold harmless each Indemnified Party from and against any and all damages, losses, claims, liabilities, deficiencies, costs, disbursements and expenses, joint or several, including interest, penalties, amounts paid in settlement and attorneys' fees and expenses (all of the foregoing being collectively referred to as "**Indemnified Amounts**") awarded against or incurred by any Indemnified Party (including in connection with or relating to any investigation by an Official Body, litigation or lawsuit (actual or threatened) or order, consent decree, judgment, claim or other action of whatever sort (including the preparation of any defense with respect thereto regardless of whether such Indemnified Person is a party thereto)), in each case, arising out of or in connection with this Agreement or any other Transaction Document or any transaction contemplated hereby or thereby, excluding, however (a) Indemnified Amounts to the extent that such Indemnified Amounts are finally judicially determined to have resulted from the bad faith, gross negligence, or willful misconduct of such Indemnified Party, (b) Taxes, (c) recourse (except as otherwise specifically provided in this Agreement or any other Transaction Document) for Pool Receivables that are not collected or not collectable on account of the insolvency, bankruptcy or financial inability to pay of the Obligors in respect of such Pool Receivables and (d) without prejudice to Clause 10.4, costs and expenses incurred by an Indemnified Party in connection with the (i) preparation, executions, delivery and administration of the Transaction Documents, amendments or modifications thereto or consents thereunder, (ii) any rating of the Loans not requested by the Administrative Agent with the consent of the Borrower, or (iii) absent a Trigger Event or Facility Termination Event, any audit or inspection.

Without limiting the generality of the foregoing indemnification, but subject to the exclusions set forth in clauses (a) and (b) above, the Borrower shall indemnify each Indemnified Party for Indemnified Amounts relating to or resulting from:

(i)    reliance on any representation or warranty made by any Transaction Party (or any officers of any such Person) under or in connection with this Agreement, any other Transaction Document or any other information or report delivered by any such Person pursuant hereto or thereto, which shall have been false or incorrect when made or deemed made;

(ii)    the failure by any Transaction Party to comply with any term, provision or covenant contained in a Transaction Document or any agreement executed in connection with a Transaction Document or with any applicable law, rule or regulation with respect to any Receivable or Contract related thereto, or the nonconformity of any Receivable or Contract included therein with any such applicable law, rule or regulation;

(iii)    any failure of a Transaction Party to perform its duties, covenants or other obligations in accordance with the provisions of this Agreement or any other Transaction Document;

(iv)    any libel, personal injury or damage suit, or other similar claim arising out of or in connection with any Contract or any Receivable;

(v)    any dispute, claim, offset or defense (other than discharge in bankruptcy of the Obligor) of the Obligor to the payment of any Receivable including, without limitation, (x) a defense based on such Receivable or the related Contract not being a legal, valid and binding obligation of such Obligor enforceable against it in accordance with its terms, (y) any defense or dispute relating to whether, as between an Advertising Agency and the related Advertising Agency Clients, which Person or Persons are obligated to make payment on a Receivable (whether before or after an Advertising Agency Client remits payment to the related Advertising Agency), and (z) or any other claim resulting from the sale of the services related to such Receivable or the furnishing or failure to furnish such services;

(vi)    the commingling of Collections of Receivables at any time with other funds;

(vii)    any investigation, litigation or proceeding related to or arising from this Agreement or any other Transaction Document, the transactions contemplated hereby, the use of the proceeds of a Loan, the ownership of the Loans or any other investigation, litigation or proceeding relating to a Transaction Party in which any Indemnified Party becomes involved as a result of any of the transactions contemplated hereby;

(viii)    any inability to litigate any claim against any Obligor in respect of any Receivable as a result of such Obligor being immune from civil and commercial law and suit on the grounds of sovereignty or otherwise from any legal action, suit or proceeding;

(ix)    any Facility Termination Event described in Clause 7.2(b) (*Facility Termination Events*);

(x)    any failure of the Borrower to acquire and maintain legal and equitable title to, and ownership of any Pool Receivable and the Related Security and Collections with respect thereto from the applicable Originator, free and clear of any Adverse Claim (other than as created hereunder); or any

failure of the Borrower or of Parent to give reasonably equivalent value to the applicable Originator under the Receivables Purchase Agreement in consideration of the transfer by Parent or such other Originator of any Receivable, or any attempt by any Person to void such transfer under statutory provisions or common law or equitable action;

(xi)   any failure to vest and maintain vested in the Administrative Agent, for the benefit of the Secured Parties, or to transfer to the Administrative Agent, for the benefit of the Secured Parties, a first priority perfected security interest in the Receivables, the Related Security, the Collections, the Facility Accounts and the other Collateral, free and clear of any Adverse Claim (except as created by the Transaction Documents);

(xii)   the failure to have filed, or any delay in filing, financing statements or other similar instruments or documents under the UCC of any applicable jurisdiction or other applicable laws with respect to any Receivable, the Related Security and Collections with respect thereto, and any proceeds thereof, whether at the time of any Borrowing or Repeat Advances or at any subsequent time;

(xiii)   the failure by a Transaction Party to be duly qualified to do business, to be in good standing or to have filed appropriate fictitious or assumed name registration documents in any jurisdiction where its ownership of property or the conduct of business requires such qualification;

(xiv)   the failure of a Transaction Party to pay when due any Taxes or charges imposed on such party.

(xv)   any action or omission by a Transaction Party which reduces or impairs the rights of the Administrative Agent or the Lenders with respect to any Receivable or the value of any such Receivable;

(xvi)   any attempt by any Person to void any Loan or any other transaction contemplated by the Transaction Documents under statutory provisions or common law or equitable action; and

(xvii)   the failure of any Receivable included in the calculation of the Net Receivables Balance at any time as an Eligible Receivable to be an Eligible Receivable at the time so included.

## 10.   MISCELLANEOUS

### 10.1   Amendments, Etc.

No failure on the part of the Lenders or the Administrative Agent to exercise, and no delay in exercising, any power, right or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any power, right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other power, right or

remedy. The rights and remedies herein provided shall be cumulative and non-exclusive of any rights and remedies provided by Law. No amendment or waiver of any provision of this Agreement or consent to any departure by any Transaction Party therefrom shall be effective unless in writing signed by the Required Lenders (and, in the case of any amendment, also signed by the Borrower and the Servicer) and three (3) Business Days' prior written notice thereof to each Rating Agency, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; provided that no amendment, waiver or consent shall, unless in writing and signed by each Lender (or, in the case of subclause 10.1(b) or (c), each Lender having its Fees reduced or delayed or its Commitment increased or extended):

(a) reduce the Principal Balance of, or Interest that is payable on, account of any Loan or Tranche or delay any scheduled date for payment thereof;

(b) reduce Fees payable by the Borrower to the Lenders or delay the dates on which such Fees are payable, or increase the Commitment or the type of Commitment of any Lender;

(c) extend the Maturity Date;

(d) except as provided in Clause 10.13 *(Limitation on the Addition and Termination of Sub-Originators)*, release more than five percent (5%) of the Collateral, or release any portion of the Collateral if a Facility Event has occurred and is continuing or would result therefrom;

(e) change any of the provisions of this Clause or the definition of "Required Lenders,"

(f) amend or waive any Trigger Event set forth in Clause 7.1(a), (c) and (k) *(Trigger Events)*;

(g) amend or waive any Facility Termination Event set forth in Clause 7.2(b) *(Facility Termination Events)*; or

(h) release the Borrower, the Servicer or Parent from all of its obligations under the Transaction Documents.

and provided, further, that no amendment, waiver or consent shall amend the definition of "Total Reserves," "Percentage Factor," "Loss and Dilution Reserve," "Yield and Servicing Fee Reserve," "Default Ratio," "Defaulted Receivable," "Delinquent Receivable," "Net Eligible Receivables Balance," "Stress Factor," or "Eligible Receivables," or increase the Maximum Percentage Factor or any Concentration Limit unless in writing and signed by the Supermajority Lenders if such amendment shall have the effect of increasing the permitted amount of Borrowings hereunder; and provided further that no amendment, waiver or consent shall amend or waive any Trigger Event set forth in Clause 7.1 (g), (h), (i) and (j) *(Trigger Events)* unless in writing and signed by the Supermajority Lenders; and provided further that no amendment, waiver or consent shall

alter the duties of the Administrative Agent without the consent of the Administrative Agent.

10.2    **Notices, Etc.**

All communications and notices provided for hereunder shall be provided in the manner described in Schedule 2 (*Address and Notice Information*).

10.3    **Assignability**

(a)    General

This Agreement and each Lender's rights and obligations hereunder shall be assignable by such Lender and its successors and permitted assigns to any Eligible Assignee subject to Clauses 10.3(b) and (c). Each assignor of a Loan or any interest therein shall notify the Administrative Agent and the Borrower of any such assignment. Each assignor of a Loan or any interest therein may, in connection with the assignment or participation, disclose to the assignee or participant any information relating to the Transaction Parties, including the Collateral, furnished to such assignor by or on behalf of any Transaction Party or by the Administrative Agent; provided that, prior to any such disclosure, the assignee or participant agrees to preserve the confidentiality of any confidential information relating to the Transaction Parties received by it from any of the foregoing entities in a manner consistent with Clause 10.6(b) (*Confidentiality*). Notwithstanding anything herein or in any other Transaction Document to the contrary, neither the Borrower nor any other Transaction Party shall be responsible for any costs or other expenses incurred in connection with any assignment or sale of a participation described in Clauses 10.3(b) and (e).

(b)    Assignment by Lenders

Each Lender may assign to any Eligible Assignee all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment and any Loans or interests therein owned by it); provided, however that:

(i)    each such assignment shall be of a constant, and not a varying, percentage of all rights and obligations under this Agreement;

(ii)    the amount being assigned pursuant to each such assignment (determined as of the date of the Assignment and Acceptance with respect to such assignment) shall in no event be less than the lesser of (A) $1,000,000) and (B) all of the assigning Lender's Commitment unless the transferee is a Lender or an Affiliate thereof or an Approved Fund with respect to a Term Lender;

(iii)    the parties to each such assignment shall execute and deliver to the Administrative Agent, for its acceptance and recording in the Register (as defined below), an Assignment and Acceptance, together with a

processing and recordation fee of $3,000.  The Borrower shall have no responsibility for such fee; and

(iv)    any such transfer must be approved in writing by the Borrower (such approval not to be unreasonably withheld or delayed) unless (A) the transferee is a Lender or an Affiliate thereof or, in the case of an assignment of a Term Loan, an Approved Fund with respect to a Lender, or (B) a Facility Event has occurred and is continuing.

Upon such execution, delivery, acceptance and recording from and after the effective date specified in such Assignment and Acceptance, (x) the assignee thereunder shall be a party to this Agreement and, to the extent that rights and obligations under this Agreement have been assigned to it pursuant to such Assignment and Acceptance, have the rights and obligations of a Lender thereunder, (y) such assignee shall not be entitled to indemnification pursuant to Clause 2.15(a) (*Indemnity for Taxes*) unless it complies with the requirements of Clause 2.15(d) and (z) the assigning Lender shall, to the extent that rights and obligations have been assigned by it pursuant to such Assignment and Acceptance, relinquish such rights and be released from such obligations under this Agreement (and, in the case of an Assignment and Acceptance covering all or the remaining portion of an assigning Lender's rights and obligations under this Agreement, such Lender shall cease to be a party hereto).  In addition, any Lender or any of its Affiliates may assign any of its rights (including rights to payment of Principal Balance and Interest under this Agreement to any Federal Reserve Bank without notice to or consent of any Transaction Party, any other Lender or the Administrative Agent; provided that such assignment shall not relieve such Lender of its obligations hereunder.

(c)    Register

At all times during which any Loan is outstanding, the Administrative Agent shall maintain at its address referred to in Clause 10.2 (*Notices, etc.*) (or such other address of the Administrative Agent notified by the Administrative Agent to the other parties hereto) a register as provided herein (the "**Register**").  All Loans and any interest therein, and any Assignments and Acceptances of any Loans and any interest therein delivered to and accepted by the Administrative Agent, shall be registered in the Register, and the Register shall serve as a record of ownership that identifies the owner of each Loan and any interest therein.  Notwithstanding any other provision of this Agreement, no transfer of any Loan or any interest therein shall be effective unless and until such transfer has been recorded in the Register.  The entries in the Register shall be conclusive and binding for all purposes, absent manifest error, and the Borrower, the Servicer, the Administrative Agent and the Lenders may treat each Person whose name is recorded in the Register as a Lender, under this Agreement for all purposes of this Agreement.  This Clause 10.3(c) shall be construed so that each Loan and any interest therein is maintained at all times in "registered form" within the meaning of clauses 163(f), 871(h) and 881(c) of the IRC, solely for the purposes of this

Clause 10.3, the Administrative Agent will act as an agent of the Borrower.  The Register shall be available for inspection by the Borrower or any Lender at any time and from time to time upon prior notice.

(d)     Procedure

Upon its receipt of an Assignment and Acceptance executed by an assigning Lender and an Eligible Assignee, the Administrative Agent shall, if such Assignment and Acceptance has been duly completed, (i) accept such Assignment and Acceptance, (ii) record the information contained therein in the Register and (iii) give prompt notice thereof to the Borrower.

(e)     Participations

Each Lender may sell participations to one or more banks or other entities that are Eligible Assignees on the date of such sale (each a "**Participant**") in or to all or a portion of its rights and obligations under this Agreement (including all or a portion of its interests in the Loans owned by it and its Commitment); provided, however, that:

(i)      such Lender's obligations under this Agreement shall remain unchanged;

(ii)     such Lender shall remain solely responsible to the other parties to this Agreement for the performance of such obligations; and

(iii)    the Administrative Agent, the other Lenders, the Borrower and the Servicer shall have the right to continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement.

Any agreement or instrument pursuant to which a Lender sells such a participation shall provide that the Participant shall not have any right to direct the enforcement of this Agreement or other Transaction Documents or to approve any amendment, modification or waiver of any provision of this Agreement or the other Transaction Documents; provided that such agreement or instrument may provide that such Lender will not, without the consent of the Participant, agree to any amendment, modification or waiver of a type that would require the consent of each Lender affected thereby pursuant to Clause 10.1 (*Amendments, etc.*).  No Participant shall be entitled to indemnification pursuant to Clause 2.15(a) (*Indemnity for Taxes*) unless it complies with the requirements of Clause 2.15(d).

(f)     Issuer and Servicer Assignment

Neither the Borrower nor the Servicer may assign any of its rights or obligations hereunder or any interest herein without the prior written consent of the Administrative Agent and the Lenders.

(g)     Notwithstanding anything herein to the contrary, no Loan or interest therein may be assigned to any Person (other than a Federal Reserve Bank) that is not a Qualified Purchaser.  Each Lender represents and warrants as of the date hereof (or, if later, as of the date it becomes a party to this Agreement) that it is a Qualified Purchaser.

## 10.4     Costs and Expenses

In addition to the rights of indemnification granted under Clause 9 (*Indemnities*) and its other obligations herein, the Borrower agrees to pay on demand all costs and expenses incurred by the Administrative Agent in connection with the preparation, execution, delivery and administration of this Agreement, the other Transaction Documents, including (a) the reasonable out-of-pocket fees and expenses of one counsel acting jointly for the Administrative Agent, Lenders and their respective Affiliates with respect thereto and with respect to advising the Administrative Agent, Lenders and their respective Affiliates as to their rights and remedies under this Agreement, (b) all rating agency fees relating to the rating of the Loans at the request of the Administrative Agent with the consent of the Borrowers, (c) all reasonable out-of-pocket fees and expenses of the Administrative Agent associated with any audits and other due diligence prior to or after the Closing Date, and (d) any amendments, waivers or consents under the Transaction Documents.  In addition, the Borrower agrees to pay on demand all costs and expenses (including reasonable out-of-pocket counsel fees and expenses), of each of the Administrative Agent, the Lenders and their respective Affiliates, incurred in connection with the enforcement of, or any dispute, work-out, litigation or preparation for litigation involving, this Agreement or any other Transaction Document.

## 10.5     Confidentiality

(a)     Subject to Clause 10.5(c), the Fee Letters (including any prior drafts thereof) and any other pricing information relating to the facility contemplated by the Transaction Documents (including such information set forth in any engagement letter, term sheet or proposal prior to the Closing Date) (collectively, "**Product Information**") are  confidential.  Each of the Borrower and the Servicer agrees:

(i)     to keep all Product Information confidential and to disclose Product Information only to those of its Affiliates and its and their respective officers, employees, agents, accountants, legal counsel and other representatives (collectively "**Representatives**") who have a need to know such Product Information for the purpose of assisting in the negotiation, completion and administration of the facility contemplated hereby (the "**Facility**");

(ii)    to use the Product Information only in connection with the Facility and not for any other purpose; and

(iii)   to cause its Representatives to comply with these provisions and to be responsible for any failure of any Representative to so comply.

The provisions of this Clause 10.5(a) shall not apply to Product Information that is or hereafter becomes (through a source other than the Borrower, the Servicer or any of their respective Affiliates or other Representatives) a matter of general public knowledge. The provisions of this Clause 10.5(a) shall not prohibit the Borrower or the Servicer from filing with any governmental or regulatory agency any information or other documents with respect to the Facility as may be required by applicable Law. Product Information may be disclosed (I) to the extent requested or required by any state, Federal or foreign authority or examiner regulating any Transaction Party, (II) to the extent required by applicable law, rule or regulation or by any subpoena or similar legal process, or in connection with the enforcement of the Transaction Documents, (III) in connection with any litigation or legal proceeding relating to or in connection with the Transaction Documents or the enforcement of rights hereunder or thereunder or to which the Borrower or the Servicer or any of its Affiliates may be a party or to the Bankruptcy Court or as the Bankruptcy Court otherwise directs, (IV) with the consent of the Administrative Agent, or (V) to any Rating Agency when required by such Rating Agency,

(b)     Each Lender and the Administrative Agent (each, a "**Lender Party**") agrees to maintain the confidentiality of the Company Information (as defined below), except that Company Information may be disclosed (i) to a Lender Party's affiliates, partners, directors, officers, employees and agents, including accountants, legal counsel and other advisors (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such Company Information and agree to keep such Company Information confidential), (ii) to the extent requested or required by any state, Federal or foreign authority or examiner regulating a Lender Party, (iii) to the extent required by applicable law, rule or regulation or by any subpoena or similar legal process, or in connection with the enforcement of the Transaction Documents, (iv) in connection with any litigation or legal proceeding relating to or in connection with the Transaction Documents or the enforcement of rights hereunder or thereunder or to which a Lender Party or any of its affiliates may be a party, (v) with the consent of the Borrower or Servicer, (vi) to any Rating Agency when required by such Rating Agency, (vii) to any assignee or prospective assignee of a Lender Party (it being understood that the Persons to whom such disclosure is made will be informed of the confidential nature of such Company Information and agree to keep such Company Information confidential in accordance with this Section), or (viii) to the extent such Company Information (1) becomes publicly available other than as a result of a breach of this Clause, (2) has been available to the Lender Parties for three years or more after the Facility Termination Date, or (3) becomes available to a Lender Party on a nonconfidential basis from a source other than the Servicer or any of the Servicer's subsidiaries, officers, directors, employees or advisors. For the purposes of this paragraph, "**Company Information**" means any information received by such Lender Party from the Servicer or any of the Servicer's subsidiaries, officers, directors, employees or advisors relating to the Transaction Parties or their businesses, other than any such information that is or becomes

available to a Lender Party on a nonconfidential basis other than through disclosure by a Transaction Party. Any person required to maintain the confidentiality of Company Information as provided in this paragraph shall be considered to have complied with its obligation to do so if such person has exercised the same degree of care to maintain the confidentiality of such Company Information as such person would accord to its own confidential information.

(c)     The provisions of Clause 10.5(c) shall not apply to information that is or hereafter becomes (through a source other than the applicable Lender or the Administrative Agent or any Lender Party associated with such party) a matter of general public knowledge. The provisions of this Clause 10.5(c) shall not prohibit any Lender or the Administrative Agent from filing with or making available to any governmental or regulatory agency any information or other documents with respect to the Facility as may be required by applicable Law or requested by such governmental or regulatory agency.

## 10.6  Further Assurances

From time to time as may be necessary, each of the Borrower and the Servicer shall (i) cooperate with each Rating Agency in connection with any review of the Transaction Documents which may be undertaken by such Rating Agency and (ii) provide each Rating Agency with such information or access to such information as they may reasonably request in connection with any future review of the ratings referred to above.

## 10.7  Execution in Counterparts

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or by electronic file in a format that is accessible by the recipient shall be effective as delivery of a manually executed counterpart of this Agreement.

## 10.8  Integration; Binding Effect; Survival of Termination; Severability

This Agreement and the other Transaction Documents executed by the parties hereto on the date hereof contain the final and complete integration of all prior expressions by the parties hereto with respect to the subject matter hereof and shall constitute the entire agreement among the parties hereto with respect to the subject matter hereof superseding all prior oral or written understandings. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns (including any trustee in bankruptcy). Any provisions of this Agreement which are prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. This

Agreement shall create and constitute the continuing obligations of the parties hereto in accordance with its terms and shall remain in full force and effect until the Final Payout Date; provided, however, that the provisions of Clauses 2.11 (*Breakage Costs*), 2.14 (*Indemnity for Reserves and Expenses*), 2.15 (*Indemnity for Taxes*), 9 (*Indemnities*), 10.4 (*Costs and Expenses*), 10.5 (*Confidentiality*), 10.10 (*Right of setoff*), 10.12 (*Limitation of liability*), 10.14 (*Waiver of jury trial*), 10.15 (*USA PATRIOT Act*) and 10.16 (*No proceeding; limited recourse*) shall survive any termination of this Agreement.  If any one or more of the provisions of this Agreement shall for any reason whatsoever be held invalid, then such provisions shall be deemed severable from the remaining provisions of this Agreement and shall in no way affect the validity or enforceability of such other provisions.

10.9   **GOVERNING LAW; SUBMISSION TO JURISDICTION; APPOINTMENT OF PROCESS AGENT**

(a)   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT GOVERNED BY THE BANKRUPTCY CODE.

(b)   EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN NEW YORK CITY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE TRANSACTION DOCUMENTS, AND EACH PARTY HERETO HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR, TO THE EXTENT PERMITTED BY LAW, IN SUCH FEDERAL COURT.

(c)   THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT THEY MAY EFFECTIVELY DO SO, THE DEFENSE OF INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING. THE PARTIES HERETO AGREE THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

(d)   EACH OF THE PARTIES HERETO CONSENTS TO THE SERVICE OF ANY AND ALL PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING OF COPIES OF SUCH PROCESS TO IT AT ITS ADDRESS SPECIFIED HEREIN.  NOTHING IN THIS CLAUSE 10.9(D) SHALL AFFECT THE RIGHT OF ANY PARTY TO SERVE LEGAL PROCESS IN ANY MANNER PERMITTED BY LAW.

(e)     THE SUBMISSION TO THE JURISDICTION OF THE COURTS REFERRED
        TO IN CLAUSE 10.9(B) SHALL NOT (AND SHALL NOT BE CONSTRUED
        SO AS TO) LIMIT THE RIGHT OF ANY PARTY TO TAKE PROCEEDINGS
        AGAINST ANY OTHER PARTY OR ANY OF ITS RESPECTIVE PROPERTY
        IN ANY OTHER COURT OF COMPETENT JURISDICTION NOR SHALL
        THE TAKING OF PROCEEDINGS IN ANY OTHER JURISDICTION
        PRECLUDE THE TAKING OF PROCEEDINGS IN ANY OTHER
        JURISDICTION, WHETHER CONCURRENTLY OR NOT.

## 10.10   Right of Setoff

Following the occurrence and during the continuation of a Facility Termination Event,
each Indemnified Party is hereby authorized (in addition to any other rights it may have)
at any time to setoff, appropriate and apply (without presentment, demand, protest or
other notice which are hereby expressly waived) any amounts and any other indebtedness
held or owing by such Indemnified Party to, or for the account of any Transaction Party
against the amount of the Transaction Party Obligations owing by such Transaction Party
to such Indemnified Party directly or as assignee of the Borrower.

## 10.11   Ratable Payments

If any Lender, whether by setoff or otherwise, has payment made to it with respect to any
Transaction Party Obligation in a greater proportion than that received by any other
Lender entitled to receive a ratable share of such Transaction Party Obligation, such
Lender agrees, promptly upon demand, to purchase for cash without recourse or warranty
a portion of such Transaction Party Obligation held by the other Lenders so that after
such purchase each Lender will hold its ratable proportion of such Transaction Party
Obligation; provided that if all or any portion of such excess amount is thereafter
recovered from such Lender, such purchase shall be rescinded and the purchase price
restored to the extent of such recovery, but without interest.

## 10.12   Limitation of Liability

No claim may be made by any Lender Party or its respective Affiliates, directors,
officers, employees, attorneys or agents (each a "**Default Party**") for any special,
indirect, consequential or punitive damages in respect of any claim for breach of contract
or any other theory of liability arising out of or related to the transactions contemplated
by this Agreement or any other Transaction Document, or any act, omission or event
occurring in connection herewith or therewith; and each party hereto hereby waives,
releases, and agrees not to sue upon any claim for any such damages, whether or not
accrued and whether or not known or suspected to exist in its favor.

## 10.13   Limitation on the Addition and Termination of Sub-Originators

The Borrower shall not consent to any request made to add a new Originator to the
Receivables Purchase Agreement or to terminate the right or obligation of any Originator
to continue selling or contributing its Receivables to the Parent or to the Borrower (as

applicable) thereunder, nor will any Sub-Originator which is the subject of such request be terminated under the Receivables Purchase Agreement, in each case unless:

(a)     the Administrative Agent will have received (i) fifteen (15) Business Days prior written notice of any such addition, which fifteen Business Day period shall commence only after the Administrative Agent shall have substantially received such information as it may request with respect to such addition, or (ii) ten (10) Business Days prior written notice of any such termination,

(b)     concurrently with the notice described in subclause (a) above, the Servicer provides the Administrative Agent with a certificate (signed by a Responsible Officer of the Servicer) which attaches a Monthly Report and Interim Report giving pro forma effect to any increase or reduction in the Net Eligible Receivables Balance resulting from the addition or termination of such Sub-Originator, as applicable, and any change in the Total Reserves as set forth in the next sentence, and which certifies that, after giving pro forma effect to such addition or termination and any prepayments of Loans on or prior to the date of such addition or termination, the Percentage Factor does not exceed the Maximum Percentage Factor,

(c)     no Facility Event (other than with respect to a Sub-Originator so terminated, if applicable) has occurred and is continuing (both before and after giving effect to such addition or termination),

(d)     with respect to the removal of an Originator, either (i) the aggregate amount of Pool Receivables originated by all Sub-Originators released pursuant to this Clause 10.13 in any Benchmark Year does not exceed 15% of the aggregate outstanding balance of all Pool Receivables held by the Borrower as of the start of such Benchmark Year (determined for each Sub-Originator as of the date of its removal), or (ii) Supermajority Lenders shall have consented thereto,

(e)     with respect to the addition of an Originator, either (i) the aggregate amount of Pool Receivables originated by all Sub-Originators added pursuant to this Clause 10.13 in any Benchmark Year does not exceed 15% of the aggregate outstanding balance of all Pool Receivables held by the Borrower as of the start of such Benchmark Year (determined for each Sub-Originator as of the date of its addition), or (ii) Supermajority Lenders shall have consented thereto.

(f)     in the case of an addition of an Originator, the applicable Sub-Originator shall have delivered such lien releases, UCC filings, certifications, opinions and other closing documents comparable to those delivered at closing with respect to the original Sub-Originators,

(g)     in the case of a removal of an Originator, such Sub-Originator (or substantially all of its assets) will be transferred to a Person that is not a Tribune Affiliate and either (i) all Pool Receivables originated by such Sub-Originator shall be

purchased by Tribune or its Affiliate concurrently with such release, or (ii) such Pool Receivables will be treated as ineligible for funding hereunder;

(h)     with respect to a removal, Section 1.09 of the Receivables Purchase Agreement (*Termination of Status as an Originator*) shall have been satisfied; and

(i)     with respect to an addition, Section 1.10 of the Receivables Purchase Agreement (*Addition of Sub-Originator*) shall have been satisfied.

10.14   **WAIVER OF JURY TRIAL**

EACH PARTY HERETO HEREBY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT.

10.15   **USA Patriot Act**

Each Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) and any similar Law in any relevant jurisdiction (the "**Acts**"), it is required to obtain, verify and record information that identifies the Transaction Parties, which information includes the name and address of each Transaction Party and other information that will allow such Lender to identify such Transaction Party in accordance with the Acts.

10.16   **No Proceeding; Limited Recourse**

(a)     Each of the parties hereto hereby agrees that (i) it will not institute against the Borrower any proceeding of the type referred to in the definition of Event of Bankruptcy until there shall have elapsed one year plus one day since the Final Payout Date and (ii) notwithstanding anything contained herein or in any other Transaction Document to the contrary, the obligations of the Borrower under the Transaction Documents are solely the obligations of the Borrower and shall be payable solely to the extent of funds which are received by the Borrower pursuant to the Transaction Documents and available for such payment in accordance with the terms of the Transaction Documents and shall be non-recourse other than with respect to such available funds and, without limiting Clause 10.17 (*Tax Treatment*), if ever and until such time as the Borrower has sufficient funds to pay such obligation shall not constitute a claim against the Borrower.

(b)     No recourse under any obligation, covenant or agreement of the Borrower contained in this Agreement or any other Transaction Document shall be had against any incorporator, stockholder, officer, director, member, manager, employee or agent of the Borrower by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute or otherwise; it being expressly agreed and understood that this Agreement and the other Transaction

Documents are solely an obligation of the Borrower, and that no personal liability whatever shall attach to or be incurred by any incorporator, stockholder, officer, director, member, manager, employee or agent of the Borrower or any of them under or by reason of any of the obligations, covenants or agreements of the Borrower contained in this Agreement or any other Transaction Document, or implied therefrom, and that any and all personal liability for breaches by the Borrower of any of such obligations, covenants or agreements, either at common law or at equity, or by statute, rule or regulation, of every such incorporator, stockholder, officer, director, member, manager, employee or agent is hereby expressly waived as a condition of and in consideration for the execution of this Agreement; provided that the foregoing shall not relieve any such Person from any liability it might otherwise have as a result of fraudulent actions taken or fraudulent omissions made by them.

## 10.17   Tax Treatment

Notwithstanding anything to the contrary in this Agreement or any other Transaction Document, for U.S. federal and applicable State and local income and franchise tax purposes, the parties hereto agree that (i) they intend that the transactions contemplated hereby evidence a loan secured by the Receivables, Related Security and Collections, and (ii) unless and until they are required by applicable Law or regulations to treat the transactions contemplated hereby inconsistent with such intention, they shall report the transactions contemplated hereby on all tax returns and otherwise for all U.S. federal and applicable State and local income tax purposes consistent with such intention.

## 10.18   Barclays Roles

Each of the Lenders acknowledges that Barclays acts, or may in the future act, (i) as administrative agent for any Transaction Party or Lender and (ii) to provide other services from time to time for any Transaction Party or Lender (collectively, the "**Barclays Roles**"). Without limiting the generality of this Clause, each Lender hereby acknowledges and consents to any and all Barclays Roles and agrees that in connection with any Barclays Role, Barclays may take, or refrain from taking, any action that it, in its discretion, deems appropriate.

## 10.19   Replacement of Lenders

(a)     If (A)  Borrower is required to pay any additional amount to any Lender or any Official Body for the account of any Lender pursuant to Clause 2.15 (*Indemnity for Taxes*), (B) any Lender gives notice pursuant to Clause 2.12 (*Illegality*) with respect to an occurrence or state of affairs not applicable to all Lenders, (C) any Lender shall fail to extend any Loan which it is required to make under the terms of this Agreement, (D)  any Lender becomes insolvent and its assets become subject to a receiver, liquidator, trustee, custodian or other Person having similar powers, or (E) in connection with any proposed amendment, modification, termination, waiver or consent with respect to any of the provisions hereof that requires the consent of all Lenders as contemplated by Clause 10.1, the consent of

the Required Lenders was obtained and the consent of all the Lenders shall have been obtained but the consent of one or more of such other Lenders (each a "**Non-Consenting Lender**") whose consent is required shall not have been obtained, then Borrower may, at its sole expense and effort, upon notice to such Lender and the Administrative Agent, require such Lender or any Non-Consenting Lender to assign and delegate, without recourse (in accordance with and subject to the restrictions contained in, and consents required by, Clause 10.3 (*Assignability*)), all of their interests, rights and obligations under this Agreement and their Loans, if any, to an Eligible Assignee or Eligible Assignees that shall assume such obligations (which assignees may be other Lenders, if such Lenders accept such assignment); provided that:

(i)     Borrower shall have paid to the Administrative Agent the assignment fee specified in Clause 10.3 (*Assignability*) or the Administrative Agent shall have waived receipt of such fee in writing;

(ii)    such replaced Lender shall have received payment of an amount equal to the outstanding principal of its Advances, accrued interest thereon, accrued fees and all other amounts payable to it hereunder and under its Note (including any amounts under Clauses 2.5(b)*(Payment and Prepayment of Loans)*, 2.11(*Breakage Costs*) and 2.15 (*Indemnity for Taxes*)) from the assignee (to the extent of such outstanding principal and accrued interest and fees) or Borrower (in the case of all other amounts);

(iii)   in the case of any such assignment resulting from a claim for compensation under payments required to be made pursuant to Clause 2.15 (*Indemnity for Taxes*), such assignment will result in a reduction in such compensation or payments thereafter;

(iv)    the assignee shall be an Eligible Assignee and shall agree to accept such assignment and to assume all obligations of such Lender hereunder in accordance with Clause 10.3 (*Assignability*);

(v)     any such replacement shall not be deemed to be a waiver of any rights that any party shall have against any other party;

(vi)    in the event such replaced Lender is a Non-Consenting Lender, each Replacement Lender shall consent, at the time of such assignment, to each matter in respect of which such replaced Lender was a Non-Consenting Lender; and

(vii)   such assignment does not conflict with applicable law.

Upon compliance with the provisions of this Clause 10.19, (I) the replacement Lender or Lenders shall each become a Lender hereunder and (II) the Lender so replaced shall cease to constitute a Lender hereunder provided, that such replaced Lender's rights to indemnification hereunder shall survive as to such replaced Lender.  Each Lender agrees that if the Borrower exercises its option hereunder to cause an assignment by such Lender

as provided in this Clause 10.19, such Lender shall, promptly after receipt of written notice of such election, execute and deliver all documentation necessary to effectuate such assignment in accordance with Clause 10.3. In the event that a Lender does not comply with the requirements of the immediately preceding sentence within two Business Days after receipt of such notice, each Lender hereby authorizes and directs the Administrative Agent to execute and deliver such documentation as may be required to give effect to an assignment in accordance with Clause 10.3 on behalf of such replaced Lender and any such documentation so executed by the Administrative Agent shall be effective for purposes of documenting an assignment pursuant to Clause 10.3. A Lender shall not be required to make any such assignment or delegation if, prior thereto, as a result of a waiver by such Lender or otherwise, the circumstances entitling Borrower to require such assignment and delegation cease to apply.

## 10.20   Original Agreement

The Borrower, the Servicer, Barclays as a Lenders, the Administrative Agent and Barclays, as funding agent, entered into the Original Agreement. The parties hereto desire to enter into this Agreement in order to amend and restate the Original Agreement in its entirety. Nothing herein shall be deemed to constitute a repayment of any indebtedness outstanding under the Original Agreement or to release any guaranty thereof or collateral securing such indebtedness or guaranty. Any reference to the Original Agreement in any other agreement or document shall be deemed to be a reference to this Agreement.

## 10.21   Syndication Agent; Documentation Agent

Anything in this Agreement to the contrary notwithstanding, neither the Syndication Agent nor the Documentation Agent listed on the cover page hereof shall have any powers, duties or responsibilities under this Agreement or any of the other Transaction Documents, except in its capacity, as applicable, as a Lender under this Agreement.