**ATTACHMENT 2**

**AMENDED AND RESTATED RECEIVABLES PURCHASE AGREEMENT**

**AMENDED AND RESTATED RECEIVABLES PURCHASE AGREEMENT**

Dated as of April 10, 2009

AMONG

TRIBUNE COMPANY,
as Parent and as Servicer

SUBSIDIARIES OF PARENT PARTY HERETO
as Sub-Originators

AND

TRIBUNE RECEIVABLES, LLC
as Buyer

# TABLE OF CONTENTS

Page

ARTICLE I      AMOUNTS AND TERMS ................................................ 2
   SECTION 1.01.      Purchase of Receivables ................................... 2
   SECTION 1.02.      Payment for the Purchase .............................. 3
   SECTION 1.03.      Deemed Collections ........................................ 5
   SECTION 1.04.      Payments and Computations, Etc ................. 6
   SECTION 1.05.      Records ........................................................... 6
   SECTION 1.06.      Rights of Buyer Under UCC ......................... 8
   SECTION 1.07.      No Repurchases .............................................. 8
   SECTION 1.08.      Certain Allocations ....................................... 8
   SECTION 1.09.      Termination of Status as an Originator ......... 8
   SECTION 1.10.      Addition of Sub-Originator ........................... 8
   SECTION 1.11.      Discharge ........................................................ 9

ARTICLE II      CONDITIONS OF PURCHASE ............................... 9
   SECTION 2.01.      Conditions Precedent to Purchases ............... 9

ARTICLE III      REPRESENTATIONS AND WARRANTIES ............ 9
   SECTION 3.01.      Representations and Warranties of Originators ........... 9
   SECTION 3.02.      Representations and Warranties of Buyer .................... 13

ARTICLE IV      COVENANTS .............................................................. 14
   SECTION 4.01.      Compliance with Laws, Etc .......................... 14
   SECTION 4.02.      Records and Procedures ................................. 14
   SECTION 4.03.      Notice of Interests in Receivables ................ 15
   SECTION 4.04.      Sales, Liens, Etc ............................................ 15
   SECTION 4.05.      Extension or Amendment of Receivables and Contracts ............. 15
   SECTION 4.06.      Change in Payment Instructions to Obligors ................ 15
   SECTION 4.07.      Deposits to Collection Accounts ................... 15
   SECTION 4.08.      Further Assurances; Change in Name or Jurisdiction of Organization, Etc ................ 16
   SECTION 4.09.      Separateness ................................................... 17
   SECTION 4.10.      Change in Credit and Collection Policies ..................... 18
   SECTION 4.11.      Qualifying Subsidiary .................................... 18
   SECTION 4.12.      Change in Accountants or Accounting Policies ............. 18
   SECTION 4.13.      Power of Attorney ......................................... 18
   SECTION 4.14.      Instruments .................................................... 18
   SECTION 4.15.      Treatment as Sales or Contribution ............... 18
   SECTION 4.16.      Organic Documents ....................................... 18
   SECTION 4.17.      Licenses, Etc ................................................. 18
   SECTION 4.18.      Title ................................................................ 18
   SECTION 4.19.      Performance and Compliance with Contracts and Credit and Collection Policies ................ 19
   SECTION 4.20.      Account Control Agreements .......................... 19
   SECTION 4.21.      Collection Capability ..................................... 19
   SECTION 4.22.      Servicing Changes ......................................... 19
   SECTION 4.23.      Amendments ................................................... 19
   SECTION 4.24.      Inspections; Agreed Upon Procedures ........... 19
   SECTION 4.25.      Reporting Requirements ................................. 20

# TABLE OF CONTENTS
(continued)

Page

SECTION 4.26.    Negative Covenants ................................................ 23
SECTION 4.27.    Use of Proceeds.................................................... 34
ARTICLE V       ADMINISTRATION AND COLLECTION ............................... 34
SECTION 5.01.    Designation of Servicer............................................ 34
SECTION 5.02.    Certain Rights of the Buyer ...................................... 35
SECTION 5.03.    Rights and Remedies.............................................. 36
ARTICLE VI      INDEMNIFICATION.................................................. 36
SECTION 6.01.    Indemnities by Originators ....................................... 36
ARTICLE VII     ORIGINATOR TERMINATION EVENTS; EFFECT OF
                TERMINATION DATE ................................................ 39
SECTION 7.01.    Originator Termination Events .................................... 39
SECTION 7.02.    Effect of Termination Date ....................................... 40
ARTICLE VIII    MISCELLANEOUS .................................................. 41
SECTION 8.01.    Waivers and Amendments ......................................... 41
SECTION 8.02.    Notices ........................................................... 41
SECTION 8.03.    Costs, Expenses and Taxes ....................................... 42
SECTION 8.04.    Confidentiality ................................................... 42
SECTION 8.05.    No Proceedings ................................................... 43
SECTION 8.06.    Third Party Beneficiary........................................... 43
SECTION 8.07.    Restriction on Payments; Setoff................................... 43
SECTION 8.08.    Execution in Counterparts......................................... 44
SECTION 8.09.    CHOICE OF LAW .................................................. 44
SECTION 8.10.    CONSENT TO JURISDICTION...................................... 44
SECTION 8.11.    WAIVER OF JURY TRIAL.......................................... 45
SECTION 8.12.    USA PATRIOT Act................................................. 45
SECTION 8.13.    Binding Effect; Assignability ..................................... 45
SECTION 8.14.    Integration; Survival of Termination; Severability.................. 45
SECTION 8.15.    Original Receivables Purchase Agreement........................... 46
Exhibit I       Definitions
Exhibit II      Places of Business; Jurisdiction of Organization;
                Organizational Numbers; Other Names
Exhibit III     Names of Collection Banks; Collection Accounts
Exhibit IV      Account Control Agreement Form
Exhibit V       Form of Intercompany Note
Exhibit VI      Form of Joinder Agreement

THIS AMENDED AND RESTATED RECEIVABLES PURCHASE AGREEMENT, dated as of April 10, 2009 is by and among Tribune Company, a Delaware corporation, as the parent (the "Parent") and as the Servicer (the "Servicer"), certain subsidiaries of the Parent parties hereto (each such subsidiary, or any other subsidiary that hereafter becomes party hereto under Section 1.10 hereof, a "Sub-Originator" and all such subsidiaries collectively, the "Sub-Originators") and Tribune Receivables, LLC, a Delaware limited liability company (the "Buyer").  The Parent and the Sub-Originators are hereinafter referred to as, individually, an "Originator" and collectively, the "Originators".  Unless otherwise defined herein, capitalized terms used in this Agreement shall have the meanings assigned to such terms in Exhibit I.

## PRELIMINARY STATEMENTS

The Parent, the Servicer, the Sub-Originators and the Buyer entered into a Receivables Purchase Agreement dated July 1, 2008 (as amended, the "Original Receivables Purchase Agreement").

The Parent, the Servicer, the Sub-Originators and the Borrower desire to enter into this Agreement in order to amend and restate the Original Receivables Purchase Agreement.

Each Originator now owns, and from time to time hereafter will own, Receivables.  Each Sub-Originator wishes to sell and assign to the Parent, and the Parent wishes to purchase from such Sub-Originator, all of such Sub-Originator's right, title and interest in and to such Receivables, together with the Related Security and Collections with respect thereto. The Parent wishes to sell and assign to the Buyer, and the Buyer wishes to purchase from the Parent, all of the Parent's right, title and interest in and to its Receivables (including the Receivables acquired by the Parent from the Sub-Originators), together with the Related Security and Collections with respect thereto.

The Originators and the Buyer intend the transactions contemplated hereby to be (a) true sales of the Receivables from each Sub-Originator to the Parent, providing the Parent with the full benefits of ownership of the Receivables, and none of the Sub-Originators and the Parent intends these transactions to be, or for any purpose to be characterized as, loans from the Parent to any Sub-Originator; and (b) true sales of the Receivables from the Parent to the Buyer, providing the Buyer with the full benefits of ownership of the Receivables, and neither the Parent nor the Buyer intends these transactions to be, or for any purpose to be characterized as, loans from the Buyer to the Parent.

To fund its acquisitions under this Agreement, the Buyer may from time to time request Loans from the Lenders on the terms and conditions established in the Receivables Loan Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is acknowledged, the parties hereto agree as follows:

ARTICLE I
AMOUNTS AND TERMS

SECTION 1.01. <u>Purchase of Receivables</u>.

(a)    Each Sub-Originator party to the Original Receivables Purchase Agreement sold, assigned, transferred and conveyed to the Parent such Sub-Originator's right, title and interest in and to all Receivables existing or arising from time to time prior to the date hereof together with all Related Security related thereto and all Collections and other proceeds thereof. Effective on the date hereof, in consideration for the Purchase Price with respect to each Sub-Originator and upon the terms and subject to the conditions set forth herein, such Sub-Originator does hereby sell, assign, transfer, set-over and otherwise convey to the Parent, and the Parent does hereby purchase from such Sub-Originator, all of such Sub-Originator's right, title and interest in and to all Receivables existing as of the close of business on the Business Day immediately prior to the date hereof (to the extent not already sold, assigned, transferred or conveyed pursuant to the Original Receivables Purchase Agreement) and all Receivables thereafter arising through and including the Termination Date for such Originator, together, in each case, with all Related Security relating thereto and all Collections and other proceeds thereof (the "<u>Receivables Property</u>"). In accordance with the preceding sentence, on the date hereof the Parent shall acquire all of each Sub-Originator's right, title and interest in and to all Receivables existing as of the close of business on the Business Day immediately prior to the date hereof and thereafter arising through and including the Termination Date for such Originator, together with all the related Receivables Property. In addition, each Sub-Originator hereby transfers to the Parent its interest in, and control of, if any, the Lock-Boxes and Collection Accounts.

(b)    The Parent sold, assigned, transferred and conveyed to the Buyer the Parent's right, title and interest in and to all Receivables existing or arising from time to time prior to the date hereof, including Receivables acquired by the Parent from each Sub-Originator, in each case together with all Related Security related thereto and all Collections and other proceeds thereof. Effective on the date hereof, in consideration for the Purchase Price with respect to the Parent and upon the terms and subject to the conditions set forth herein, the Parent does hereby sell, assign, transfer, set-over and otherwise convey to the Buyer, and the Buyer does hereby purchase from the Parent, all of the Parent's right, title and interest in and to all Receivables existing as of the close of business on the Business Day immediately prior to the date hereof (to the extent not already sold, assigned, transferred or conveyed pursuant to the Original Receivables Purchase Agreement) and all Receivables thereafter arising through and including the Termination Date for Parent, including, in each case, Receivables acquired by the Parent from each Sub-Originator and together with all the related Receivables Property. In accordance with the preceding sentence, on the date hereof the Buyer shall acquire all of the Parent's right, title and interest in and to all Receivables existing as of the close of business on the Business Day immediately prior to the date hereof and thereafter arising through and including the Termination Date for Parent, together with all the Receivables Property with respect to all of the foregoing. In addition, the Parent hereby transfers to the Buyer its interest in, and control of, if any, the Lock-Boxes and Collection Accounts.

(c)     It is the intention of the parties hereto that each Purchase of Receivables made hereunder or under the Original Receivables Purchase Agreement shall constitute a "sale of accounts" or "sale of payment intangibles" (as such terms are used in Article 9 of the UCC) and therefor this Agreement is intended to create a "security interest" (and shall constitute a "security agreement") within the meaning of Article 9 of the UCC. Such sale is absolute and irrevocable and provides the related Transferee with the full benefits of ownership of the Receivables. The sale of Receivables hereunder is made without recourse to the selling Originator; provided, however, that (i) each Originator shall be liable for all representations, warranties, covenants and indemnities made by such Originator pursuant to the terms of the Transaction Documents to which such Originator is a party, and (ii) such sale does not constitute and is not intended to result in an assumption by the related Transferee or any assignee thereof of any obligation of any Originator or any other Person arising in connection with the Receivables, the related Contracts and/or other Related Security or any other obligations of such Originator. In view of the intention of the parties hereto that each Purchase of Receivables made hereunder or under the Original Receivables Purchase Agreement shall constitute a sale of such Receivables rather than loans secured thereby, each Originator agrees that it has marked and will mark, on or prior to the date hereof and in accordance with Section 1.05 (*Records*), its master data processing records relating to the Receivables with a legend reasonably acceptable to the Buyer and the Administrative Agent, evidencing that the Buyer has purchased such Receivables, directly or indirectly through the Parent, as provided in this Agreement and to note in its financial statements that its Receivables have been sold to the Buyer. Upon the request of the Parent, the Buyer or Administrative Agent, each Originator will execute (if necessary) and file, and hereby authorizes the Parent, Buyer or the Administrative Agent to file, such financing or continuation statements, or amendments thereto or assignments thereof, and such other instruments or notices, as may be necessary or appropriate to perfect and maintain the perfection of the ownership interest of Parent and Buyer and the security interest of Buyer's assignee in the Receivables and the Receivables Property with respect thereto, or as the Buyer or its assignee may reasonably request.

(d)     Promptly upon the Buyer's receipt of a request from the Parent to do so, the Buyer shall give a written notice of the type described in the Receivables Loan Agreement and shall cause the Termination Date to occur with respect to an Originator at such time as the Parent shall specify in accordance with the Receivables Loan Agreement.

SECTION 1.02. Payment for the Purchase.

(a)     The Purchase Price for the Purchase of an Originator's Receivables in existence on the close of business on the Business Day immediately preceding the date hereof (the "Initial Cutoff Date") was paid pursuant to the Original Receivables Purchase Agreement in full by the applicable Transferee to such Originator in the following manner:

(i)     by delivery of immediately available funds, and in the case of payments by the Buyer to the Parent, to the extent of funds made available to the Buyer in connection with the Loans requested by the Buyer from the Lenders under the Receivables Loan Agreement, and

(ii)     solely in the case of Purchase Price payments owing from the Buyer to the Parent by delivery of the proceeds of a revolving loan from the Parent to the Buyer (a "Purchase Price Loan") in an amount not to exceed the lesser of (A) the remaining unpaid portion of such Purchase Price, and (B) the maximum Purchase Price Loan that could be borrowed without rendering Buyer's Net Worth less than the Required Capital Amount; and

(iii)     solely in the case of Purchase Price payments owing from the Buyer to Parent and to the extent of the remaining Purchase Price payments on or prior to the Termination Date, by the Parent making a capital contribution to Buyer.

The Purchase Price for each Receivable coming into existence after the Initial Cutoff Date shall be due and owing in full by a Transferee to its related selling Originator or its designee on the date each such Receivable came into existence (except that the Buyer may, with respect to any such Purchase Price, offset against such Purchase Price any amounts owed by the Parent to such Transferee hereunder and which have become due but remain unpaid) and shall be paid to Parent in the manner provided in the following paragraphs (b), (c) and (d).

(b)     With respect to any Receivables coming into existence after the date hereof and prior to the Termination Date for an Originator, on each Monthly Settlement Date, a Transferee shall pay the applicable Originator the Purchase Price therefor in accordance with Section 1.02 and in the following manner:

(i)     by delivery of immediately available funds, provided that in the case of payments by the Buyer to the Parent, such delivery shall be only to the extent of funds available to the Buyer from the Receivables Loan Agreement or other cash on hand;

(ii)     solely in the case of Purchase Price payments owing from the Buyer to the Parent, by delivery of the proceeds of a Purchase Price Loan, provided that the making of any such Purchase Price Loan shall be subject to the limitations set forth in Section 1.02(a)(ii); and

(iii)     solely in the case of Purchase Price payments owing from the Buyer to Parent and to the extent of the remaining Purchase Price payments, by the Parent making a capital contribution to Buyer (it being understood that the Parent has the right to declare the Facility Termination Date pursuant to clause (d) of the definition of such term if it decides in its sole discretion not to make further capital contributions hereunder).

Subject to the limitations set forth in Section 1.02(a), the Parent irrevocably agrees to advance each Purchase Price Loan requested by the Buyer on or prior to the Termination Date. The Purchase Price Loans shall be evidenced by, and shall be payable in accordance with the terms and provisions of the Intercompany Note and shall be payable solely from funds which the Buyer is not required under the Receivables Loan Agreement to set aside for the benefit of, or otherwise pay over to, the Lenders or the other Secured Parties. The Parent is hereby authorized by the Buyer to endorse on the schedule attached to the Intercompany Note an appropriate

notation evidencing the date and amount of each advance thereunder, as well as the date of each payment with respect thereto, provided that the failure to make such notation shall not affect any obligation of the Buyer thereunder.

(c)     From and after its Termination Date, no Originator shall be obligated to (but may, at its option) sell Receivables to its related Transferee.

(d)     Although the Purchase Price for each Receivable coming into existence after the date hereof shall be due and payable in full by each Transferee to the related Originator on the date such Receivable came into existence, settlement of the Purchase Price between Buyer and Parent shall be effected on a monthly basis on each Monthly Settlement Date with respect to all Receivables coming into existence during the same Calculation Period and based on the information contained in the Monthly Report delivered by the Servicer pursuant to Clause 2.3(a) (*Monthly Reports*) of the Servicing Agreement for the Calculation Period then most recently ended.  Although settlement shall be effected on Monthly Settlement Dates, increases or decreases in the amount owing under the Intercompany Note made pursuant to Section 1.02(b) shall be deemed to have occurred and shall be effective as of the last Business Day of the Calculation Period to which such settlement relates.

SECTION 1.03.  Deemed Collections.

(a)     If on any day a Receivable or any part thereof becomes a Diluted Receivable, each applicable Originator shall be deemed to have received on such day a Collection of such Receivable in the amount of such Diluted Receivable or part thereof or if less, the part thereof that causes such Receivable to become a Diluted Receivable.

(b)     If on any day it is determined that (i) any of the representations or warranties in Section 3.01(a) through (m) or (o) through (t) (*Representations and Warranties of Originators*) was untrue insofar as it relates to a particular Acquired Receivable or Acquired Receivables or the nature of the Buyer's (or Administrative Agent's) interest in such Acquired Receivable or Acquired Receivables, in each case, at the time of purchase or contribution of such Acquired Receivable or Acquired Receivables hereunder, (ii) the representation in Section 3.01(n) (*Eligible Receivables*) was untrue insofar as it relates to a particular Acquired Receivable or Acquired Receivables or the nature of the Buyer's (or Administrative Agent's) interest in such Acquired Receivable or Acquired Receivables, in each case, at the time such representation or warranty was made with respect to such Acquired Receivable or Acquired Receivables or (iii) an Originator has breached any covenant contained in Section 4.18 (*Title*) insofar as it relates to a particular Acquired Receivable or Acquired Receivables, the applicable Originator shall be deemed to have received on such day a Collection of such Acquired Receivable or Acquired Receivables in an amount equal to the Unpaid Balance thereof.  If on any day it is determined that any of the representations or warranties in Clause 3.1 of the Servicing Agreement (*Representations and Warranties of the Servicer*) was untrue insofar as it relates to a particular Pool Receivable or Pool Receivables at the time such representation or warranty was made with respect to such Pool Receivable or Pool Receivables, the Servicer shall, unless such breach has been otherwise waived, be deemed to have received on such day a Collection of such Pool Receivable or Pool Receivables in an amount equal to the Unpaid Balance thereof.

(c)    Subject to Section 1.03(d), and without duplication, not later than the first Business Day after any Originator or the Servicer is deemed pursuant to this Section to have received any Deemed Collection, such Originator or the Servicer, as applicable, shall deposit to a Collection Account, in same day funds, the amount of such Deemed Collection. Not later than the first Business Day after any Originator or the Servicer, as applicable, deposits to a Collection Account the amount of any Deemed Collection, pursuant to this Section 1.03, the Servicer shall transfer the amount of such Deemed Collection from the applicable Collection Account to the Borrower Concentration Account, in same day funds. Any such amount shall be applied as a Collection in accordance with Clauses 2.6 (*Application of Collections Prior to Facility Termination Date*) or 2.7 (*Application of Collections after Facility Termination Date*) of the Receivables Loan Agreement, as applicable.

(d)    Notwithstanding the foregoing, so long as (i) the Borrower does not need cash to satisfy obligations then due, (ii) no Trigger Event or an Originator Termination Event (regardless of whether such Originator Termination Event applies to a specific Originator or all of the Originators) has occurred and (iii) the Termination Date has not occurred, the Originators may make payments for such Deemed Collections by netting them against the Purchase Price payable to Parent from Buyer in accordance with Section 1.02 (*Payment for the Purchase*).

SECTION 1.04.  Payments and Computations, Etc.  (a) Subject to Section 1.02(d), all amounts to be paid or deposited by a Transferee hereunder shall be paid or deposited in accordance with the terms hereof on the day when due in immediately available funds to the account of the applicable Originator designated from time to time by such Originator or as otherwise directed by such Originator.  In the event that any payment owed by any Person hereunder becomes due on a day that is not a Business Day, then such payment shall be made on the next succeeding Business Day.  If any Person fails to pay any amount hereunder when due, such Person agrees to pay, on demand, interest (calculated at a rate per annum equal to the Default Rate) in respect thereof until paid in full; provided, however, that such interest shall not at any time exceed the maximum rate permitted by applicable law.  All computations of interest payable hereunder shall be made on the basis of a year of 360 days for the actual number of days (including the first but excluding the last day) elapsed and interest shall accrue from day to day.

(b)    Notwithstanding anything herein to the contrary, any payments or deposits to be made by the Buyer under this Agreement shall be made solely from funds available to the Buyer that are not otherwise required to be applied or set-aside for the payment of any obligations of the Buyer under the Receivables Loan Agreement or any other Transaction Document and shall be non-recourse other than with respect to such available funds and, without limiting Section 8.05 (*No proceedings*), if ever and until such time as the Buyer has sufficient funds to make such payment shall not constitute a claim against the Buyer.

SECTION 1.05.  Records.

(a)    In connection with the Purchases and contributions of Receivables and Receivables Property hereunder, each Sub-Originator has sold and hereby sells, assigns and otherwise transfers and conveys to Parent, and Parent hereby sells, assigns and otherwise transfers and conveys to the Buyer all of such Originator's right and title to and interest in all documents, purchase orders, invoices, agreements, books, records and other information relating

to the Receivables and Receivables Property with respect thereto, the applicable Contracts and the related Obligors whether now existing or hereafter arising (collectively, the "Records"), without the need for any further documentation in connection therewith. To the extent any Originator is prohibited by applicable Law from selling, assigning or otherwise transferring or conveying any Records, such Originator shall, upon the request of the Buyer or the Administrative Agent at any time an Originator Termination Event has occurred and is continuing, provide a copy of such Records to the Buyer or the Administrative Agent, as applicable.

        (b)      Each Originator shall, upon request of Parent, the Buyer or the Administrative Agent following a Trigger Event or Originator Termination Event, transfer to the Administrative Agent (or its designee), or license, or cause to be licensed, to the Administrative Agent (or its designee) an irrevocable, non-exclusive license to use, without royalty or payment of any kind, all computer tapes, software and programs, data processing software and storage media used by such Originator to account for the Receivables, to the extent necessary or desirable to permit Parent, the Buyer and the Administrative Agent to exercise their respective ownership and other interests acquired under or pursuant to this Agreement, and to administer or service the Receivables, whether such computer tapes, software and programs, data processing software and storage media are owned by such Originator or are owned by others and used by such Originator under license agreements with respect thereto. Any such license granted hereby shall be irrevocable. To the extent any such transfer or license would require the payment of any license fee or other amount, such Originator agrees to pay such fee or other amount out of its own funds promptly upon demand by the Administrative Agent.

        (c)      Each Originator shall cooperate with and assist the Servicer in the performance of its responsibilities as Servicer under the Servicing Agreement and under the other Transaction Documents, including providing access to and transferring to the Servicer all Records related to the Collateral and allowing the Servicer to use all licenses, hardware or software necessary or desirable to collect, service, obtain or store information regarding the Receivables.

        (d)      Prior to the occurrence of the Originator Payout Date with respect to an Originator, if such Originator ceases to be a Sub-Servicer (or, if applicable, Servicer), such Originator hereby agrees to download, prepare and distribute, promptly and effectively, all data relating to the Receivables in usable form as reasonably requested by the Buyer, Parent, Administrative Agent and/or the Servicer from time to time.

        (e)      Each Originator shall take such action reasonably requested from time to time by the Parent, the Buyer and/or any of the Buyer's assigns that may be necessary to ensure that the Parent, the Buyer and the Buyer's assigns have an enforceable ownership interest in the Records relating to the Receivables and Receivables Property purchased or otherwise acquired from such Originator hereunder.

        (f)      Upon the reasonable request of the Administrative Agent, each Originator shall cooperate, assist and otherwise take all necessary actions as may be required to ensure that all relevant personal data is transferred to the Administrative Agent in accordance with

applicable Law, including entering into further deeds or documents which may be required to comply with any such legislation or regulations relating to data protection.

SECTION 1.06. <u>Rights of Buyer Under UCC</u>. After any Originator Termination Event, the Buyer and the Administrative Agent shall have, in addition to the rights and remedies which they may have under this Agreement, all other rights and remedies against the applicable Originators provided to a purchaser of accounts and payment intangibles under the UCC and other applicable Law, which rights and remedies shall be cumulative.

SECTION 1.07. <u>No Repurchases</u>. Except to the extent expressly set forth herein, no Originator shall have any right or obligation under this Agreement, by implication or otherwise, to repurchase from the Parent or the Buyer any Acquired Receivables or any Receivables Property with respect thereto or to rescind or otherwise retroactively affect any Purchase or contribution of any Acquired Receivable or any Receivables Property with respect thereto after it is sold or contributed to the Parent or the Buyer hereunder.

SECTION 1.08. <u>Certain Allocations</u>. Each of the parties hereto agrees that with respect to a payment by an Obligor, (i) if application of such payment to a specific Receivable is required by contract or applicable Law or clearly indicated by facts or circumstances or if such Obligor designates that a payment be applied to a specific Receivable, such payment shall be applied to such Receivable, and (ii) otherwise, all Collections from an Obligor shall be applied to the oldest Receivables (whether or not such Receivables are Acquired Receivables) of such Obligor.

SECTION 1.09. <u>Termination of Status as an Originator</u>. Any Sub-Originator may, upon ten (10) Business Days prior written notice to the Parent, the Buyer and the Administrative Agent, irrevocably terminate its right and obligation to sell Receivables to Parent pursuant to this Agreement if the Buyer consents to such termination and the conditions to such consent set forth in <u>Clause 10.13</u> (*Limitations on the Addition and Termination of Originators*) of the Receivables Loan Agreement are satisfied, in which case the Termination Date shall occur as of the end of the Calculation Period in which such notice period expires with respect to such Sub-Originator on the date specified by such Originator; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, (i) <u>Section 7.02</u> (*Effect of Termination Date*) shall apply; and (ii) Parent may not terminate its right and obligation to sell or contribute Receivables hereunder unless the Termination Date shall have occurred with respect to all Sub-Originators.

SECTION 1.10. <u>Addition of Sub-Originator</u>. Subject to the terms and conditions hereof and of <u>Clause 10.13</u> (*Limitations on the Addition and Termination of Originators*) of the Receivables Loan Agreement, from time to time one or more direct or indirect Qualifying Subsidiaries of Parent may become additional Sub-Originators parties hereto. If any such Subsidiary wishes to become an Additional Originator, the Parent shall give 15 Business Days' prior written notice to the Administrative Agent. Such wholly-owned Subsidiary shall become an Additional Originator party hereto upon the later of (i) satisfaction of the terms and conditions set forth in such <u>Clause 10.13</u>, and (ii) the effective date of the Joinder Agreement pertaining to such Additional Originator (the "<u>Originator Addition Date</u>.")

SECTION 1.11.  Discharge.  Each Originator agrees that (i) its obligations under the Transaction Documents shall not be discharged by the entry of an order confirming a plan of reorganization under the Chapter 11 Cases (and such Originator, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (ii) any superpriority claim granted to the Administrative Agent and the Lenders pursuant to the Financing Orders and the security interest granted to the Administrative Agent pursuant to the Financing Orders and the Transaction Documents shall not be affected in any manner by the entry of an order confirming a plan of reorganization under the Chapter 11 Cases.

ARTICLE II
CONDITIONS OF PURCHASE

SECTION 2.01.  Conditions Precedent to Purchases.  The Parent's and the Buyer's respective obligations to pay the Purchase Price for the initial Purchase of Receivables from the Originators hereunder is subject to the conditions precedent that the Buyer shall have received on or before the date of such Purchase all of the instruments, documents, agreements, certificates and opinions specified in Schedule 4 (*Condition Precedent Documents*) to the Receivables Loan Agreement, each (unless otherwise indicated in Schedule 4 (*Condition Precedent Documents*) of the Receivables Loan Agreement) dated such date, in form and substance satisfactory to the Buyer and the Administrative Agent.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

SECTION 3.01.  Representations and Warranties of Originators.  Each Sub-Originator hereby represents and warrants with respect to itself as Originator, and the Parent hereby represents and warrants with respect to itself as Originator and with respect to each Sub-Originator, on the Effective Date applicable thereto, the date of each Purchase or contribution hereunder and (except with respect to subclause (e)) on each Reporting Date, for the benefit of Buyer and the Administrative Agent that:

(a)  Legal Existence and Power.  It (i) is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, (ii) is duly qualified to do business, and is in good standing, in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) has all corporate or other organizational power, authority and all licenses, authorizations, consents, approvals and qualifications of and from all Official Bodies and other third parties required to perform its obligations under the Transaction Documents to which it is a party and to carry on its business in each jurisdiction in which its business is conducted, in each case unless the failure to have the same would not be reasonably expected to have a Material Adverse Effect.

(b)  Power and Authority; Due Authorization Execution and Delivery; No Conflict.  The execution, delivery and performance by it of this Agreement and any other Transaction Document to which it is a party, including such Originator's sale of Receivables and Receivables Property related thereto hereunder and such Originator's use of the proceeds of Purchases (i) are within its organizational powers, (ii) have been duly authorized by all necessary organizational action, (iii) are in its interest and it will receive the organizational benefit as a

result of the transactions contemplated by this Agreement and the other Transaction Documents and the value of the consideration obtained by it under the Transaction Documents is not less than the value of the consideration which it provides under the Transaction Documents, (iv) do not contravene or constitute a default under (A) such Originator's Organic Documents, (B) any applicable Law, (C) any contractual restriction binding on or affecting it or its property or (D) any order, writ, judgment, award, injunction or decree binding on or affecting it or its property in each case unless such failure would not reasonably be expected to have a Material Adverse Effect and (v) do not result in or require the creation or imposition of any Adverse Claim upon or with respect to any Acquired Receivable, Receivables Property related thereto or any Collection Account in each case unless such Adverse Claim would not be reasonably expected to have a Material Adverse Effect. This Agreement and each other Transaction Document to which it is a party has been duly executed and delivered by it.

(c)    Governmental Authorization. No authorization or approval or other action by, and no notice to or filing or registration with, any Official Body or official thereof or any third party is required for the due execution, delivery and performance by it of this Agreement or any other Transaction Document to which it is a party or any other document to be delivered by it hereunder or thereunder, except for the filing or registration of UCC financing statements and other actions taken or referred to in Schedule 4 (*Conditions Precedent Documents*) to the Receivables Loan Agreement, all of which have been (or on or before the applicable Effective Date will have been) duly made or taken, as the case may be, and are in full force and effect. No transaction contemplated hereby or by any Transaction Document requires compliance with any bulk sales act or similar law to which it is subject.

(d)    Binding Effect. This Agreement and each of the other Transaction Documents to which it is a party constitutes its legal, valid and binding obligation enforceable against such Originator in accordance with its terms, subject to any limitation on the enforceability thereof against it arising from the application of any applicable Insolvency Law or by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(e)    Actions, Suits. Except as disclosed in reports filed with the Securities and Exchange Commission prior to the Closing Date, there are no actions, suits, investigations, litigation or proceedings at law or in equity or by or before any Official Body now pending or, to the actual knowledge of a Responsible Officer, threatened against or affecting it or its Subsidiaries or any of its or their business, revenues or other property (i) which question the validity of this Agreement or any other Transaction Document or any of the transactions contemplated hereby or thereby (excluding any litigation or proceeding against any Obligor) or (ii) which individually or in the aggregate could be reasonably expected to have a Material Adverse Effect, other than the Chapter 11 Cases. It has complied in all respects with all applicable laws, rules, regulations, orders, writs, judgments, injunctions, decrees or awards to which it may be subject, in each case unless the failure to comply with the same would not reasonably be expected to have a Material Adverse Effect. It is not in any respect in default or violation of any order, judgment or decree of any Official Body, in each case unless the failure to comply with the same would not reasonably be expected to have a Material Adverse Effect.

(f)    Use of Proceeds.  No proceeds of any Purchase will be used (i) for a purpose that violates, or would be inconsistent with, Regulation T, U or X promulgated by the Board of Governors of the Federal Reserve System from time to time or any order of the Bankruptcy Court or (ii) to acquire any security in any transaction which is subject to Section 13 or 14 of the Securities Exchange Act of 1934, as amended.

(g)    Good Title; Perfection.  Immediately prior to each Purchase or contribution of the Originator's right, title and interest to, in and under any Receivables from such Originator hereunder, such Originator was the owner of such Receivables and all Receivables Property with respect thereto, free and clear of any Adverse Claim (except as created pursuant to the Transaction Documents).  Upon each purchase or contribution of the Originator's right, title and interest to, in and under any Receivables, the applicable Transferee shall have acquired a valid and perfected first priority ownership interest ranking ahead of any other ownership interest, security interest and other interest of any creditor of such Originator in of such Receivables and in the Receivables Property with respect thereto and the proceeds of the foregoing, in each case free and clear of any Adverse Claim (except as created pursuant to the Transaction Documents).  No effective financing statement or other instrument similar in effect is filed in any recording office listing such Originator as debtor, covering any such Receivable, related Receivables Property or Collection Account, or any interest therein or proceeds thereof.

(h)    Accuracy of Information.  (i) Each Portfolio Report and Supplemental Report is complete and accurate in all material respects as of its date, (ii) all other written information, data, exhibits, documents, books, records and reports furnished by or on behalf of it to the Buyer or any Secured Party in connection with this Agreement, any other Transaction Document or any transaction contemplated hereby or thereby are true and accurate in all material respects as of the date stated or certified and do not contain any material misstatement of fact or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading, and (iii) all annual and quarterly financial statements which have been furnished by or on behalf of it fairly present in all material respects the financial condition of it as of the dates set forth therein and the results of any of its operations and, if applicable, its consolidated Subsidiaries for the periods ended on such dates, subject to year end adjustments and the absence of footnotes in the case of unaudited statements.

(i)    Jurisdiction of Organization, Places of Business and Locations of Records. (i) The jurisdiction of organization, the principal place of business and chief executive office, for the last five years, of such Originator are located as described on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*) or such other locations of which the Buyer and the Administrative Agent have been notified in accordance with Section 4.25 (*Reporting Requirements*) in jurisdictions where all action required by Section 4.25 (*Reporting Requirements*) has been taken and completed.  (ii) Such Originator's Federal Employer Identification Number and its organizational identification number, if any, is correctly set forth on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*).

(j)    Collections.  (i) The names and addresses of all the Facility Account Banks, together with the account numbers of the Facility Accounts maintained at such Facility Account Banks and the post office box numbers and address of each Lock-Box are as specified

in Schedule 5 (*Facility Accounts and Account Banks*) to the Receivables Loan Agreement (as the same may be updated from time to time pursuant to Section 4.08 (*Further Assurances; Change in Name or Jurisdiction of Organization*). Each Facility Account is subject to a valid and enforceable Account Control Agreement and the Administrative Agent, on behalf of the Secured Parties, has a valid and perfected security interest or pledge over each Borrower Account, free and clear of Adverse Claims other than those created by the Transaction Documents. The applicable Originator has the right to transfer ownership of such Facility Account hereunder. Such Originator has not granted any Person, other than the Buyer and the Administrative Agent as contemplated by the Transaction Documents, ownership, dominion or control of any Lock-Box or Facility Account or the right to take ownership, dominion or control of any such Lock-Box or Facility Account at a future time or upon the occurrence of a future event. All Obligors have been directed to make all payments to the Collection Accounts or the related lockbox described in Schedule 5 to the Receivables Loan Agreement. Except as provided in Section 4.07 (*Deposits to Collection Accounts*), such Originator will use commercially reasonable efforts to permit only Collections of Acquired Receivables to be deposited into the Collection Accounts. Each of the Facility Account Banks is an Eligible Account Bank.

(k)    Names. (i) During the preceding five years, such Originator has not used any corporate name other than the name in which it has executed this Agreement and the other names listed on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*); (ii) the exact legal name of each entity to which such Originator is the successor by merger or other operation of law (each a "Predecessor Entity") during the preceding five years is listed on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*); (iii) for each Predecessor Entity, the principal place of business and chief executive office for each for the last five years and the jurisdiction of organization of each are listed on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*); (iv) the exact legal name of each entity from which such Originator acquired assets in other than the ordinary course of business (each an "Asset Originator") during the preceding five years is listed on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*); and (v) for each Asset Originator, the principal place of business and chief executive office for each of the last five years and the jurisdiction of organization of each are listed on Exhibit II (*Places of Business; Jurisdiction of Organization; Organizational Numbers; Other Names*).

(l)    Ownership. The Parent owns, directly or indirectly, 100% of the equity interest of each Sub-Originator, free and clear of any Adverse Claim other than Adverse Claims created by the Guaranty Security Agreement. Such equity interest is validly issued, fully paid and nonassessable, and there are no options, warrants or other rights to acquire any equity interest in any Sub-Originator.

(m)    Not an Investment Company. It is not required to be registered as an "investment company" as defined in the Investment Company Act of 1940.

(n)    Eligible Receivables. Each Acquired Receivable included as an Eligible Receivable in any Portfolio Report was an Eligible Receivable as of the date of such Portfolio Report.

(o)    ERISA. It and its ERISA Affiliates are in compliance with the provisions of the Senior Credit Agreement relating to ERISA and/or Plans (including Section 4.01(t) thereof), as such provisions are in effect on the Closing Date, as modified by Approved Amendments. No Adverse Claim exists in favor of the Pension Benefit Guaranty Corporation on any of the Receivables and other Receivables Property.

(p)    Pari Passu. Its obligations under this Agreement and the other Transaction Documents to which it is a party rank at least *pari passu* with all of its unsecured unsubordinated Indebtedness.

(q)    Portfolio Reports. It or the Servicer has the capability to identify each Receivable sold hereunder or included in the Portfolio Reports.

(r)    Separateness. Except as provided in the Transaction Documents, it has not taken any action that would cause the Buyer to cease to be in compliance with Clause 5.1(i) (*Separateness*) of the Receivables Loan Agreement.

(s)    Payments to Originator. The Purchase Price paid for each Receivable and the related Receivables Property purchased hereunder constitutes fair consideration, reasonably equivalent value and fair market value. Each Purchase or contribution hereunder shall not have been made for or on account of an antecedent debt owed by such Originator to the applicable Transferee, and no such sale or contribution is or may be voidable or subject to avoidance under any clause of any Insolvency Law. The sales and, if applicable, contributions of Receivables by such Originator to the applicable Transferee pursuant to this Agreement, and all other transactions between such Originator and the applicable Transferee, have been and will be made in good faith and without intent to hinder, delay or defraud creditors of such Originator or any of its Affiliates.

(t)    No Adverse Selection. To the extent that Parent has identified which of its Subsidiaries will be Originators and other Subsidiaries originate receivables that would be Eligible Receivables but which have not been transferred to Buyer hereunder, Parent has not selected those Subsidiaries in any manner that materially adversely affects Buyer or the Secured Parties.

SECTION 3.02. Representations and Warranties of Buyer. The Buyer represents and warrants as follows on each Effective Date, by reference to the facts and circumstances existing on the Effective Date:

(a)    It (i) is a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction of the state of Delaware, and (ii) is duly qualified to do business in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) has all organizational power and all licenses, authorizations, consents and approvals of all Official Bodies required to carry on its business in each jurisdiction in which its business is now conducted, in each case unless the failure to have the same would not be reasonably expected to have a Material Adverse Effect.

(b)    The execution, delivery and performance by the Buyer of this Agreement and each other Transaction Document to which it is a party, including the Buyer's purchase or

acceptance of a contribution of Receivables and the other Receivables Property hereunder, (i) are within the Buyer's organizational powers, (ii) have been duly authorized by all necessary organizational action and (iii) do not contravene or constitute a default under (A) the Buyer's Organic Documents, (B) any Law applicable to the Buyer, (C) any contractual restriction binding on or affecting the Buyer or its property or (D) any order, writ, judgment, award, injunction or decree binding on or affecting the Buyer or its property and (iv) do not result in or require the creation or imposition of any Adverse Claim upon or with respect to any Acquired Receivable, Receivables Property or any Collection Account, in each case unless such failure would not reasonably be expected to have a Material Adverse Effect. Each of the Transaction Documents to which the Buyer is a party has been duly executed and delivered by the Buyer.

(c)     No authorization or approval or other action by, and no notice to or filing with, any Official Body is required for the due execution, delivery and performance by the Buyer of this Agreement or any other Transaction Document to which it is a party or any other document to be delivered by it thereunder, except for the filing of UCC financing statements and other actions referred to in Schedule 4 (*Conditions Precedent Documents*) to the Receivables Loan Agreement all of which have been (or on or before the applicable Effective Date will have been) duly made and are in full force and effect.

(d)     This Agreement and each other Transaction Document to which the Buyer is a party constitutes the legal, valid and binding obligation of the Buyer enforceable against the Buyer in accordance with its terms, subject to any limitation on the enforceability thereof against it arising from the application of any applicable Insolvency Law or by general principles of equity (regardless of whether enforcement is sought in a proceeding at equity or at law. Each remittance of Collections by the Originator to the Buyer hereunder will have been (i) in satisfaction of an obligation incurred by the Originator in the ordinary course of business or financial affairs of the Buyer and (ii) made in the ordinary course of business or financial affairs of the Buyer.

ARTICLE IV
COVENANTS

Until the applicable Originator Payout Date, (x) each Sub-Originator covenants and agrees on its own behalf and with respect to itself as Originator as set out in this Article IV, and (y) the Parent covenants and agrees with respect to itself as Originator and each Sub-Originator:

SECTION 4.01.  Compliance with Laws, Etc.  It will comply in all material respects with all applicable Laws and preserve and maintain its organizational existence, rights, franchises, qualifications and privileges, except where the failure to do so would not be reasonably expected to have a Material Adverse Effect.

SECTION 4.02.  Records and Procedures.  It will keep its records concerning the Receivables and Receivables Property at (a) the address of such Originator applicable for the purposes of Schedule 2 (*Address and Notice Information*) to the Receivables Loan Agreement on the applicable Effective Date or (ii) upon fifteen (15) days prior written notice to the Parent, the Buyer and the Administrative Agent, at any other locations in jurisdictions where all actions

necessary or requested by the Parent, the Buyer and the Administrative Agent to protect and perfect the Parent's, the Buyer's (and the Buyer's assigns') security interest in the Acquired Receivables and Receivables Property have been taken and completed. It also will maintain and implement administrative and operating procedures (including an ability to recreate records evidencing Receivables, the Receivables Property related thereto and related Contracts in the event of the loss or destruction of the originals thereof) and keep and maintain all documents, books, records and other information necessary or advisable for the collection of all Receivables and Receivables Property (including records adequate to permit the daily identification of each Receivable and all Collections thereof and adjustments thereto). It shall give the Parent, the Buyer and the Administrative Agent prompt notice of any change in its administrative and operating procedures referred to in the previous sentence that would materially affect (A) data or calculations included in any Portfolio Report or used to determine the existence of a Facility Event, (B) financial tests, (C) revenue recognition or (D) the Receivables.

SECTION 4.03.  Notice of Interests in Receivables.  The master computer file for the Originators' billing system shall disclose the Parent's ownership of, the Buyer's ownership of, and the Administrative Agent's security interest in, the Acquired Receivables.

SECTION 4.04.  Sales, Liens, Etc.  It will not sell, assign (by operation of law or otherwise) or otherwise dispose of, or create or suffer to exist any Adverse Claim upon or with respect to, any Acquired Receivables or Receivables Property or any Collection Account, or any of its rights, title and interest in, to and under any of them (including any right to receive income in respect thereof) or assign any right to receive income in respect thereof, except as otherwise expressly provided for in the Transaction Documents.

SECTION 4.05.  Extension or Amendment of Receivables and Contracts.  Except as provided in Clause 2.2(c) (*Duties of the Servicer*) of the Servicing Agreement, it will not (a) extend, amend, waive or otherwise modify the terms and conditions of any Acquired Receivable or Receivables Property, or (b) amend, modify or waive any term or condition of any Contract related thereto in a manner that could reasonably be expected to adversely affect the collectibility of any Pool Receivable or could reasonably be expected to have a Material Adverse Effect.

SECTION 4.06.  Change in Payment Instructions to Obligors.  It will not add or terminate any Collection Account from those listed in Schedule 5 (*Facility Accounts and Account Banks*) to the Receivables Loan Agreement, or make any change in the instructions to Obligors regarding payments to be made in respect of the Acquired Receivables or payments to be made to the Collection Accounts, unless the Buyer and the Administrative Agent shall have received at least ten (10) Business Days prior written notice of such addition, termination or change (including an updated Schedule 5 (*Facility Account and Account Banks*) to the Receivables Loan Agreement) and a fully executed Account Control Agreement with respect to each new Collection Account to which such Obligors have been instructed to make such payments has been delivered to the Buyer and the Administrative Agent. Each Collection Account shall be maintained at all times in the name of the Person specified in such Schedule 5.

SECTION 4.07.  Deposits to Collection Accounts.  It will instruct all Obligors to remit all payments in respect of the Receivables to a Collection Account, in each case, subject to a valid and enforceable Account Control Agreement. If any Originator shall receive any

Collections or other amount payable in respect of an Acquired Receivable directly, such Originator shall promptly (and in any event within one Business Day) deposit such Collections or other amount into a Collection Account. Each Originator shall use commercially reasonable efforts to prevent funds which do not constitute Collections from being deposited into a Collection Account. Each Originator shall, as soon as practicable following receipt and identification thereof, and in any event within one Business Day after receipt and identification thereof, request the Servicer or the Administrative Agent, as applicable, turn over or cause to be turned over to the applicable Person as may be entitled thereto any cash collections or other cash proceeds received in any Collection Account and not constituting Collections of Acquired Receivables, Related Security with respect thereto or any other Collateral.

SECTION 4.08.  Further Assurances; Change in Name or Jurisdiction of Organization, Etc.

(a)    It agrees from time to time, at its expense, promptly to execute and deliver all further instruments and documents, and to take all further actions, that may be necessary, or that the applicable Transferee or the Administrative Agent or any of its assigns may reasonably request, to confirm, perfect, protect or more fully evidence the applicable Transferee's ownership of (or the Administrative Agent's first priority perfected security interest in) the Acquired Receivables and Receivables Property related thereto and the Collection Accounts, or to enable the applicable Transferee or the Administrative Agent to exercise and enforce their respective rights and remedies under this Agreement and the other Transaction Documents. Without limiting the foregoing, such Originator will, upon the request of the applicable Transferee or the Administrative Agent, execute (if necessary) and file such financing or continuation statements, or amendments thereto, and such other instruments and documents that may be necessary or desirable, or that the Buyer or the Administrative Agent may request, to confirm, perfect, protect or evidence the applicable Transferee's ownership of, and the Administrative Agent's first priority perfected security interest in, the Acquired Receivables, the Receivables Property and the Collection Accounts. Such Originator authorizes the Parent, the Buyer, the Administrative Agent or any of their respective assigns to file financing or continuation statements or similar instruments, and amendments thereto and assignments thereof, relating to the Acquired Receivables, the Receivables Property related thereto and the Collection Accounts without the signature of such Originator. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement where permitted by Law.

(b)    It shall not, and will not take any action to, change its jurisdiction of organization unless the Buyer and the Administrative Agent shall have received at least 30 days advance written notice of such change and all action by such Originator necessary or appropriate to confirm, perfect, protect or maintain the perfection of the applicable Transferee's (and its assigns') interest in the Acquired Receivables, Receivables Property and the Collection Accounts (including, without limitation, the filing of all financing statements and the taking of such other action as the Parent, the Buyer and the Administrative Agent may reasonably request in connection with such change) shall have been duly taken.

(c)    It will not change its name, identity, legal structure, location or tax identification number or make any other change which could render any financing statement or similar instrument filed in connection with any Transaction Document seriously misleading or

otherwise ineffective under applicable Law, unless (i) the Buyer and the Administrative Agent shall have received at least 30 days advance written notice of such change prior to the effectiveness thereof and (ii) all action by such Originator necessary or appropriate to confirm, perfect, protect or maintain the perfection and priority of the applicable Transferee's (and its assigns') interest in the Acquired Receivables, Receivables Property related thereto and the Collection Accounts (including the filing of all financing statements and (iii) the taking of such other action as the Parent, the Buyer and the Administrative Agent may request in connection with such change) shall have been duly taken.

SECTION 4.09.  Separateness.  Except as provided in the Transaction Documents, it shall:

(a)    maintain corporate records and books of account separate from those of the Buyer;

(b)    ensure that the resolutions, agreements and other instruments underlying the transactions described in this Agreement shall be continuously maintained as official records;

(c)    maintain an arm's-length relationship with the Buyer and not hold itself out as being liable for any Indebtedness of the Buyer;

(d)    keep its assets and its liabilities wholly separate from those of the Buyer;

(e)    not mislead third parties by conducting or appearing to conduct business on behalf of Buyer or expressly or impliedly representing or suggesting that it is liable or responsible for any Indebtedness of the Buyer or that its assets are available to pay the creditors of the Buyer;

(f)    not hold the Buyer out to third parties as other than an entity with assets and liabilities distinct from it or any Affiliate or Subsidiary thereof;

(g)    not hold itself out to be responsible other than, in the case of Tribune, owning the membership interests of the Buyer, for any decisions or actions relating to the Buyer;

(h)    cause the Buyer to prepare separate financial statements;

(i)    take such other actions as are necessary on its part to ensure that all corporate procedures required by its and the Buyer's respective Organic Documents are duly and validly taken;

(j)    keep correct and complete records and books of account and minutes;

(k)    not act in any manner that could foreseeably mislead others with respect to the Buyer's separate identity;

(l)    at all times limit its transactions with the Buyer only to those expressly permitted hereunder, under any other Transaction Document and under the orders of the Bankruptcy Court; and

(m)    not take action that would cause the Borrower to cease to be in compliance with <u>Clause 5.1(i)</u> (*Separateness*) of the Receivables Loan Agreement.

SECTION 4.10.  <u>Change in Credit and Collection Policies</u>.  It will not make any change in the Credit and Collection Policies without the prior written consent of the Administrative Agent except, in either case, for any such change (i) that would not (A) impair the collectibility of the Acquired Receivable in any material respect, (B) otherwise have a Material Adverse Effect or (C) adversely affect in any material respect the interests or remedies of the Buyer (or its assignees), or (ii) as required by applicable Law.

SECTION 4.11.  <u>Qualifying Subsidiary</u>.  Each Sub-Originator shall, at all times prior to the Originator Termination Date for such Sub-Originator, be a direct or indirect Qualifying Subsidiary of the Parent.

SECTION 4.12.  <u>Change in Accountants or Accounting Policies</u>.  It shall promptly notify the Administrative Agent of any change in its outside accountants or material change in its accounting policies that relate to the Receivables, that affect the reports required to be delivered hereunder or that could reasonably be expected to have a Material Adverse Effect.

SECTION 4.13.  <u>Power of Attorney</u>.  It will not voluntarily revoke or attempt to revoke any power of attorney granted by it in connection with the transactions contemplated by the Transaction Documents.

SECTION 4.14.  <u>Instruments</u>.  It shall not take any action to cause any Receivable not evidenced by a negotiable instrument upon origination to become evidenced by a negotiable instrument, except in connection with the enforcement or collection of a Defaulted Receivable or otherwise in accordance with the Servicer's standard operating practices.

SECTION 4.15.  <u>Treatment as Sales or Contribution</u>.  Except to the extent otherwise required under GAAP, it shall not account for or treat (whether in financial statements or otherwise) the transactions contemplated by this Agreement in any manner other than as a sale or contribution, as applicable, and absolute conveyance of the Receivables and Receivables Property by such Originator to the Buyer (except that, in accordance with applicable tax principles, each Purchase may be ignored for Tax reporting purposes).

SECTION 4.16.  <u>Organic Documents</u>.  Unless otherwise required by applicable Law, it will not amend, modify, change or repeal any of its Organic Documents, unless such amendment, modification, change or repeal could not reasonably be expected to have a Material Adverse Effect.

SECTION 4.17.  <u>Licenses, Etc</u>.  It shall maintain in full force and effect all licenses, approvals, authorizations, consents, registrations and notifications which are at any time required in connection with the performance of its duties and obligations hereunder and under the other Transaction Documents to which it is a party, except where the absence of the same would not be reasonably likely to have a Material Adverse Effect.

SECTION 4.18.  <u>Title</u>.  At all times on and after the applicable Effective Date until the applicable Originator Payout Date, (a) it shall duly take all actions in each jurisdiction

necessary in order to protect the ownership interests of the Parent and the Buyer and the security interest of the Administrative Agent in the Acquired Receivables, the Receivables Property with respect thereto and the Collection Accounts against any Adverse Claim or the interest of any creditor of or purchaser from any Transaction Party and/or such Originator, (b) such Originator shall duly execute (if necessary), file or serve in or on the appropriate filing office, Official Body or other Person in each jurisdiction necessary all financing statements and other documents required to be recorded or filed in order to perfect and protect the ownership interests of the Parent and the Buyer and the security interest of the Administrative Agent in the Acquired Receivables, the Receivables Property with respect thereto and the Collection Accounts against any Adverse Claim or the interest of any creditor of, or purchaser from, any Transaction Party and/or such Originator, and (c) it shall pay in full all fees and Taxes, if any, in connection with such actions and filings when or before due.

SECTION 4.19. <u>Performance and Compliance with Contracts and Credit and Collection Policies</u>. It will, at its expense, timely and fully comply with the Credit and Collection Policies in all material respects.

SECTION 4.20. <u>Account Control Agreements</u>. Subject to Transition Exceptions, it will cause all Collection Accounts to be subject at all times to an Account Control Agreement duly executed by each of the parties thereto, and cause the Collection Accounts listed on such <u>Exhibit III</u> to be subject to an Account Control Agreement thereon, and a fully executed copy of such Account Control Agreement to be delivered to the Administrative Agent.

SECTION 4.21. <u>Collection Capability</u>. It will maintain the collection capability of its respective servicing platform as required to collect the Receivables and Receivables Property related thereto, including the ability to report on or otherwise identify the Unpaid Balance of any Receivable, the receipt of any Collections or other proceeds with respect to any Receivable or any other relevant information, in each case, on a Receivable by Receivable basis.

SECTION 4.22. <u>Servicing Changes</u>. It will not make any change to its administration, servicing or collection systems unless such change is permitted by the Credit and Collection Policies.

SECTION 4.23. <u>Amendments</u>. It will not make or suffer to exist any amendment or other modification to any Transaction Document to which it is a party except in accordance with the amendment provisions thereof and <u>Clause 5.1(j)</u> (*Transaction Documents*) of the Receivables Loan Agreement.

SECTION 4.24. <u>Inspections; Agreed Upon Procedures</u>. Until the applicable Originator Payout Date, during regular business hours as requested by the Buyer and/or the Lenders (acting as a group) upon (in the absence of a Facility Event) reasonable prior notice, it shall permit the Parent, the Buyer, the Administrative Agent and/or any Lender, or their respective agents or representatives (including the independent accountants or consultants of the Lenders) (a) to conduct periodic audits of, or to perform agreed upon procedures with respect to, Receivables and the Receivables Property and the related books and records, including the Contracts, and collections systems, (b) to examine and make copies of and abstracts from all documents, purchase orders, invoices, agreements, books, records and other information

(including computer programs, tapes, discs, punch cards, data processing software, storage media and related property and rights) in its possession or under the control relating to the Receivables and Receivables Property, including the Contracts, and (c) to visit its offices and properties for the purpose of examining such materials described in clause (a) and (b) above, and to discuss matters relating to the Receivables and Receivables Property or its performance hereunder and under the other Transaction Documents to which it is a party or under the Contracts with any of its officers or employees having knowledge of such matters.  It is understood and agreed that any of the actions to be taken by the Lenders pursuant to this Section 4.24 shall be initiated by the Administrative Agent on behalf of the Lenders or by the Administrative Agent at the request of the Required Lenders and that any visit to the offices and properties of the Originators by the Lenders shall be conducted by the Lenders as a group and not by an individual Lender.  So long as no Trigger Event or Facility Termination Event has occurred and is continuing, no more than two such inspections shall be permitted in any calendar year at the request of the Lenders and none of the Sub-originators, the Parent or the Buyer shall be responsible for the costs or expenses of any Lender (other than the costs and expenses of the Administrative Agent) incurred in connection therewith.

    SECTION 4.25.  Reporting Requirements.  The Parent, on behalf of itself and each other Originator, will:

    (a)    Financial Statements

Maintain, for itself and each of its Subsidiaries, a system of accounting established and administered in accordance with generally accepted accounting principles, and furnish to the Buyer and the Administrative Agent:

        (i)    as soon as available after the end of each fiscal year of Parent, a copy of the annual audit report for such fiscal year for Parent and its Subsidiaries, containing the consolidated balance sheet of Parent and its Subsidiaries as of the end of such fiscal year and consolidated statements of income and cash flow of Parent and its Subsidiaries for such fiscal year, in each case accompanied by an opinion as to such audit report by PricewaterhouseCoopers LLP or other independent public accountants of nationally recognized standing, certified by such accountants which may include a "going concern" or like qualification or exception and may include qualifications or exceptions as to the scope of such audit; provided that the Parent shall engage Ernst & Young or another third party valuation firm of recognized national standing no later than July 31, 2009 for the purpose of completing an impairment review of goodwill and other intangible assets of Parent and its Subsidiaries in connection with the delivery of such annual audit report for Parent's 2008 fiscal year; and

        (ii)    together with the financial statements required hereunder, a compliance certificate in substantially the form of Exhibit A-3 to the Servicing Agreement signed by Parent's Authorized Officer and dated the date of such annual financial statement or such quarterly financial statement, as the case may be.

Financial statements required to be delivered for the Parent pursuant to this Section 4.25 shall be deemed to have been delivered on the date on which Parent posts reports containing such

financial statements on its website on the Internet or at such other website identified by Parent in a notice to the Buyer and the Administrative Agent and that is accessible by the Lenders without charge; provided that Parent shall deliver paper copies of such information to any Lender promptly upon request of such Lender through the Administrative Agent and provided further that the Lenders shall be deemed to have received such financial statements on the date (x) the information regarding the website where such financial information can be found is posted at the website of the Administrative Agent (or, with respect to any Lender that is a party to the Senior Credit Agreement, the website of the "Agent" thereunder) identified from time to time by the Administrative Agent to the Lenders and Parent (or by the "Agent" under the Senior Credit Agreement to the "Lenders" thereunder, as applicable) and (y) such posting is promptly notified to the Lenders (or the "Lenders" under the Senior Credit Agreement, as applicable), it being understood that the Originators shall have satisfied the timing obligations imposed by this Section 4.25 as of the date such information is delivered to the Administrative Agent (or the "Agent" under the Senior Credit Agreement, as the case may be).

(b)    ERISA

Promptly after the occurrence thereof, furnish to the Administrative Agent written notice of the occurrence of any ERISA Event that, alone or together with any other ERISA Events that have occurred, could be reasonably expected to result in a material liability to a Transaction Party.

(c)    Change in Credit and Collection Policies

To the Administrative Agent, at least 30 days prior to any material change to any written Credit and Collection Policies, a written notice describing in detail any such change and providing a full and complete copy of such Credit and Collection Policies, and the effective date of change; provided, that, no change to the Credit and Collection Policies shall be made if it would cause a violation of Section 4.10 hereof or cause the Buyer to violate Clause 5.1(k) of the Receivables Loan Agreement (*Nature of Business; Credit and Collection Policy*).

(d)    Notice of Facility or Originator Events

As soon as possible and in any event within two (2) Business Days after a Responsible Officer of an Originator obtains knowledge of the occurrence of any Facility Event or Originator Event, furnish or cause to be furnished to the Administrative Agent and each Lender a written statement of a Responsible Officer of such Originator setting forth details of such Facility Event or Originator Event, and, if applicable, the action that such Originator or any of the Transaction Parties has taken and proposes to take with respect thereto.

(e)    Termination or Suspension of Receivables Purchase Agreement

As soon as possible and in any event within one (1) Business Day after the occurrence thereof, furnish or cause to be furnished to the Administrative Agent written notice that any Originator has stopped selling Receivables originated by such Originator to the Borrower pursuant to the Receivables Purchase Agreement or any other Originator Event has occurred thereunder.

(f)    <u>Notices Under Transaction Documents</u>

Concurrently with receipt thereof by such Originator, furnish or cause to be furnished to the Administrative Agent copies of all written notices received by such Originator from another Transaction Party Originator pursuant to any Transaction Document to the extent not previously provided to the Administrative Agent by another Transaction Party.

(g)    <u>Litigation; Material Adverse Effect</u>

Promptly (and in any event within two (2) Business Days) after the occurrence thereof, furnish or cause to be furnished to the Administrative Agent written notice of:

(i)    (A) the filing or commencement of, or any written threat or notice of intention of any Person to file or commence, any action, suit, litigation or proceeding, whether at law or in equity or by or before any Official Body against, or any investigation by any Official Body that may exist with respect to any Transaction Party, the Facility Accounts, the Transaction Documents or the transactions contemplated thereby in each case, which could reasonably be expected to have a Material Adverse Effect and (B) any material adverse development (including without limitation any judgment against a Transaction Party) that has occurred with respect to any such previously disclosed litigation, investigation or proceeding; and

(ii)    any other event or condition with respect to any Transaction Party that has had, or could reasonably be expected to have, a Material Adverse Effect.

(h)    <u>Defaults Under Other Agreements</u>

Furnish written notice to the Administrative Agent promptly upon the occurrence of an event of default under any other financing arrangement occurring after the Filing Date with respect to Material Indebtedness pursuant to which any Transaction Party is a debtor or an obligor.

(i)    <u>Chapter 11 Cases; Monthly Report</u>

Deliver to the Administrative Agent, promptly after the same is available, copies of all pleadings, motions, applications, judicial information, financial information, Budgets and any revisions thereof and information with respect thereto, and other documents filed by or on behalf of the Borrower or any Guarantor with the Bankruptcy Court in the Chapter 11 Cases, or distributed by or on behalf of the Borrower or any Guarantor to any official committee appointed in the Chapter 11 Cases or any lenders or agents with respect to any Indebtedness outstanding on the Filing Date and such other information as shall be reasonably requested by the Administrative Agent; *provided* that, if the court has waived the delivery of the Budget or monthly financial information, the Parent shall deliver an updated Budget no later than the 30th day of each month and monthly financial statements for Parent and its Subsidiaries with respect to each fiscal month (containing at least a consolidated statement of income for the period commencing at the end of the previous fiscal year and ending with the end of such month) no later than the 30th day after the end of the previous fiscal month.

(j)    Other Information

Furnish or cause to be furnished to the Administrative Agent and the Administrative Agent, promptly upon request, such other information respecting the Pool Receivables, the Related Security related thereto, the Facility Accounts, the Collateral or the condition or operations, financial or otherwise, of any Transaction Party as the Administrative Agent may from time to time reasonably request.

SECTION 4.26.  Negative Covenants.  For purposes of this Section 4.26,

(x)    the following terms shall have the meanings assigned thereto in the Senior Credit Agreement as in effect on the Filing Date, modified so that references therein to clauses of Section 5.02 of the Senior Credit Agreement are references to the corresponding clauses, if any, of this Section 4.26 and to the extent any such cross-references to clauses of Section 5.02 of the Senior Credit Agreement shall not have been restated in this Section 4.26, such cross-references shall be deemed to be inapplicable herein, and with such other modifications as indicated in the following:  "Asset Sale" (with the last sentence of the definition thereof containing the $10.0 million threshold deleted), "Board of Directors", "Capital Expenditure", "Cash Equivalent", "Casualty Event", "Closing Date", "Dividend", "ESOP Documentation", "Guaranteed Debt", "Hedging Obligation", "Immaterial Subsidiary", "Intellectual Property", "Intercompany Junior Subordinated Notes", "Lien", "Net Cash Proceeds", "Parent Acquisition Bridge Loan", "Parent Acquisition Bridge Loan Documents", "Parent High Yield Notes", "Parent High Yield Notes Documents", "Permitted Acquisition", "Permitted Lien", "PHONES", "Retained Amount" and "TMCT Real Property", and "Zell Investment Agreement", and

(y)    the following term shall have the following meaning:  "Companies" means the Originators and its Subsidiaries.

Without the consent of the Required Lenders, the Originators will not and will not cause or permit any Subsidiaries to:

(a)    Liens, Etc.  Create, permit or suffer to exist any Lien on or with respect to any of its properties, whether now owned or hereafter acquired, other than:

(i)    Permitted Liens;

(ii)    Liens securing Purchase Money Obligations incurred pursuant to Section 4.26(c)(v) upon or in any real property, equipment or any fixed or capital assets acquired or held by Parent or any Subsidiary in the ordinary course of business to secure the purchase price of such property, equipment or assets or to secure Indebtedness incurred solely for the purpose of financing the acquisition, construction or improvement of such property, equipment or assets, in each case created within 180 days of any such acquisition or the completion of such construction or improvement, or Liens existing on such property, equipment or assets at the time of its acquisition (other than any such Liens created in contemplation of such acquisition that were not incurred to finance the acquisition of such property), or Liens securing Capitalized Lease Obligations incurred

pursuant to Section 4.26(c)(v) or extensions, renewals or replacements of any of the foregoing for the same or a lesser amount, provided, however, that no such Lien shall extend to or cover any properties other than the property, equipment or assets being acquired constructed or improved, and no such extension, renewal or replacement shall extend to or cover any properties not theretofore subject to the Lien being extended, renewed or replaced;

(iii)    the Liens existing on the Filing Date;

(iv)    Liens on (x) property of a Person existing at the time such Person is merged into or consolidated with Parent or any Subsidiary of Parent or becomes a Subsidiary of Parent and (y) any property existing at the time of its acquisition thereof by Parent or any of its Subsidiaries; provided that such Liens were not created in contemplation of such merger, consolidation or acquisition and do not extend to any assets other than (A) those of the Person so merged into or consolidated with Parent or such Subsidiary or (B) such assets acquired by Parent or such Subsidiary or (C) improvements on or proceeds of the assets described in clause (A) or (B);

(v)    Liens in favor of the Administrative Agent under the Transaction Documents and the Financing Orders;

(vi)    the replacement, extension or renewal of any Lien permitted by Sections 4.26(a)(iii) or (a)(iv) above or this Section 4.26 (a)(vi); provided that such replacement, extension or renewal Lien (A) attaches only to the same property theretofore subject to such prior permitted Lien and any improvements on or proceeds of such property and any property covered by an after-acquired property clause in such Lien and (B) secures the same Indebtedness as was secured by such prior permitted Lien or a replacement, extension or renewal thereof that complies with Section 4.26(c)(vii);

(vii)    replacement Liens ordered by the Bankruptcy Court of the same extent and priority for valid and enforceable rights of setoff held by depository institutions;

(viii)    Liens on cash collateral securing letter of credit obligations permitted under Section 4.26(c)(xii), provided that cash collateral securing obligations in respect of letters of credit not issued under the Letter of Credit Agreement may not exceed 105% of the outstanding amount of such letters of credit;

(ix)    Liens securing Indebtedness permitted to be incurred under Section 4.26(c)(vii)(B); and

(x)    other Liens securing obligations in an aggregate amount not to exceed $15,000,000; provided such Liens are junior and subordinate in all respects to the Liens in favor of the Administrative Agent under the Transaction Documents and the Financing Orders.

(b)    Mergers, Dispositions, Etc.  Merge or consolidate with or into, or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions)

all or substantially all of the assets of Parent and its Subsidiaries taken as a whole (whether now owned or hereafter acquired) to, any Person, except that:

(i)     any Subsidiary of Parent may merge or consolidate with or into, or dispose of assets to any Guarantor, any Subsidiary of Parent that is a holding company with no stand-alone operations or income may merge or consolidate with or into or dispose of all or substantially all of such Subsidiary's assets to Parent, any Subsidiary of Parent may distribute to Parent any Equity Interests of such Subsidiary's Subsidiaries; provided that no Trigger Event exists or would result therefrom;

(ii)    any Subsidiary of Parent may merge into or consolidate with any other Person or permit any other Person to merge into or consolidate with it so long as, either (1) such Subsidiary shall be the survivor thereof, or (2) if the other Person shall be the survivor thereof, such other Person surviving such consolidation or merger shall be a U.S. organized entity and, if such other Person is merging with a Guarantor, such Person shall assume all the obligations of such Guarantor under the Transaction Documents; provided that no Trigger Event exists or would result therefrom;

(iii)   as part of any Asset Sale otherwise permitted by this Agreement, any Subsidiary of Parent may merge into or consolidate with any other Person or permit any other Person to merge into or consolidate with it; provided that no Trigger Event exists or would result therefrom;

(iv)    any Subsidiary of Parent may liquidate or dissolve if Parent determines in good faith that such liquidation or dissolution is in the best interest of Parent and is not materially disadvantageous to the Lenders; provided that no Trigger Event exists or would result therefrom; and

(v)     in the case of a merger or consolidation of a Subsidiary that is not an Originator with an Originator, the merger or consolidation of such non-Originator shall be treated as the addition of an Originator under Section 10.13(f) of the Receivables Loan Agreement and the requirements of such Section 10.13(f) shall have been satisfied.

(c)     Indebtedness.  Incur, create, assume or permit to exist, directly or indirectly, any Indebtedness, except:

(i)     Indebtedness owed to Parent or to a wholly owned Subsidiary of Parent permitted by Section 4.26(h)(vi);

(ii)    Indebtedness existing on the Filing Date;

(iii)   Indebtedness incurred under this Agreement or any other Transaction Document;

(iv)    Indebtedness of a Person existing at the time such Person is merged into or consolidated with Parent or a Subsidiary of Parent or becomes a Subsidiary of Parent in connection with a Permitted Acquisition; provided that such Indebtedness is not created in contemplation of such Permitted Acquisition;

(v)    Indebtedness in respect of Purchase Money Obligations, Capitalized Lease Obligations and other Indebtedness not otherwise permitted hereunder which, together with Indebtedness secured by Liens permitted under Section 4.26(a)(iv), does not exceed an aggregate principal amount of $20,000,000 at any time outstanding and any guarantee of Indebtedness in respect thereof;

(vi)    endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business;

(vii)    any indebtedness under clauses (b) and (d) of the definition of "Indebtedness" extending the maturity of, or refunding or refinancing, in whole or in part, any Indebtedness permitted by Sections 4.26(c)(ii), (iv) or (v) above (or this Section 4.26(vii); provided that (A) the principal amount of such indebtedness shall not be increased above the principal amount thereof outstanding immediately prior to such extension, refunding or refinancing, plus the amount of any accrued and unpaid interest and premiums required to be paid thereon and reasonable fees and expenses associated therewith, (B) no portion of such refinancing indebtedness matures prior to the maturity date of the Indebtedness being refinanced and (C) the direct and contingent obligors with respect to such Indebtedness are not changed;

(viii)    to the extent constituting Indebtedness, (A) obligations under performance bonds, surety bonds and letter of credit obligations to provide security for worker's compensation claims and (B) obligations in respect of bank overdrafts not more than five Business Days overdue, in each case, incurred in the ordinary course of business;

(ix)    to the extent constituting Indebtedness, indemnification obligations and other similar obligations of Parent and its Subsidiaries in favor of directors, officers, employees, consultants or agents of Parent or any of its Subsidiaries extended in the ordinary course of business;

(x)    Guaranteed Debt with respect to payment obligations of any wholly owned Subsidiary in respect of Indebtedness otherwise permitted under this Section 4.26(c); provided that on and after the Filing Date no Subsidiary shall guarantee Indebtedness of other Persons incurred prior to the Filing Date other than pursuant to the Transaction Documents;

(xi)    Indebtedness owing to insurance companies to finance insurance premiums incurred in the ordinary course of business;

(xii)    letters of credit in an aggregate amount, calculated to include letters of credit issued under the Letter of Credit Agreement, not to exceed $50,000,000, provided that obligations in respect of letters of credit not issued under the Letter of Credit Agreement may be secured by cash collateral in an amount not to exceed 105% of the outstanding amount of such letters of credit; and

(xiii)    Indebtedness incurred in connection with a Permitted Disposition to the extent agreed to by the Administrative Agent.

(d)    Payment Restrictions Affecting Subsidiaries.  Directly or indirectly, enter into or suffer to exist, any agreement or arrangement which by its terms limits the ability of any of its Subsidiaries (other than an Immaterial Subsidiary) to declare or pay dividends or other distributions in respect of its Equity Interests or repay or prepay any Indebtedness owed to, make loans or advances to, or otherwise transfer assets to or make investments in, the Company or any Subsidiary of the Company other than an Immaterial Subsidiary, except (i) restrictions, limitations, conditions and prohibitions under or imposed by any indenture, agreement, instrument or other contractual arrangement (A) imposed or binding upon Eagle New Media Investments, LLC, Eagle Publishing Investments, LLC or any Subsidiary established to insure risks of Parent and its Subsidiaries, including, without limitation, Multimedia Insurance Company, (B) in effect on the Closing Date (including this Agreement) and any similar indentures, agreements or instruments to the extent such restrictions, limitations, conditions and prohibitions are no more restrictive, taken as a whole, than those set forth in such existing indentures, agreements or instruments (including this Agreement) or (C) imposed on a Guarantor or a Subsidiary in connection with a Permitted Disposition so long as such limitations do not have a material adverse impact on the Collateral or materially and adversely affect such Guarantor's ability to satisfy the Obligations when due; (ii) any restrictions consisting of customary provisions contained in leases, licenses and joint ventures and other agreements; (iii) restrictions with respect to any Asset Sale permitted under Section 4.26(e) pending the close of the sale of such Asset Sale; (iv) any restriction or encumbrance on the transfer of any assets subject to the Liens permitted by Sections 4.26(a), 4.26(c) and 4.26(f); (v) prohibitions or conditions under applicable law, rule or regulation; (vi) any agreement or instrument in effect at the time a Person first became a Subsidiary of Parent or the date such agreement or instrument is otherwise assumed by Parent or any of its Subsidiaries, so long as such agreement or instrument was not entered into in contemplation of such Person becoming a Subsidiary of Parent or such assumption; (vii) this Agreement and the other Transaction Documents; (viii) customary provisions in Organizational Documents, asset sale and stock sale agreements and other similar agreements that restrict the transfer of ownership interests in any partnership, limited liability company or similar Person; (ix) restrictions on cash or other deposits or net worth imposed by suppliers or landlords or customers under contracts entered into in the ordinary course of business; (x) any instrument governing Indebtedness assumed in connection with any Permitted Acquisition or transaction permitted by Section 4.26(f), which encumbrance or restriction is not applicable to any Person, or the properties or assets of any Person, other than the Person or the properties or assets of the Person so acquired; (xi) in the case of any joint venture which is not a Guarantor in respect of any matters referred to above, restrictions in such Person's Organic Documents or pursuant to any joint venture agreement or stockholders agreements solely to the extent of the Equity Interests of or property held in the subject joint venture or other entity; (xii) any encumbrance or restriction imposed by any agreement or instrument imposing an encumbrance or restriction permitted under Section 4.26(m); or (xiii) restrictions imposed by applicable law.

(e)    Asset Sales.  Effect any Asset Sale, or agree to effect any Asset Sale, except that the following shall be permitted:

(i)    disposition of used, damaged, worn out, obsolete or surplus property by any Company in the ordinary course of business and the abandonment or other disposition of Intellectual Property, in each case as determined by Parent in its

reasonable judgment to be no longer economically practicable to maintain or useful in the conduct of the business of the Companies taken as a whole;

(ii)    (A) Dispositions as part of a Permitted Disposition and (B) arm's-length Asset Sales for consideration at least 90% of which is cash (other than Asset Sales and Dispositions pursuant to clause (A) or Section 4.26(e)(xv)); provided that (x) the aggregate fair market value of the assets sold in all Asset Sales and all Dispositions consummated pursuant to this clause (ii)(B) shall not exceed $50,000,000 and (y) any individual Asset Sale pursuant to this clause (ii)(B) of assets having a fair market value of $15,000,000 or more must be approved by the Bankruptcy Court;

(iii)    leases of real or personal property in the ordinary course of business;

(iv)    Asset Sales by any Subsidiary that is not a Guarantor;

(v)    Investments and other transactions in compliance with Section 4.26(b);

(vi)    Investments and other transactions in compliance with Section 4.26(h);

(vii)    dispositions of cash and Cash Equivalents and inventory and goods held for sale in the ordinary course of business;

(viii)    Asset Sales in the ordinary course of business where (x) property is exchanged for credit against the purchase price of similar replacement property or (y) the proceeds of such Asset Sale are promptly applied to the purchase price of such replacement property;

(ix)    Asset Sales to Parent or to a Subsidiary (including through the dissolution of any Subsidiary); provided that if the transferor of such property is a Guarantor or Parent and only to the extent that such property does not constitute cash or Cash Equivalents (i) the transferee thereof must either be Parent or a Guarantor or (ii) to the extent such transaction constitutes an Investment, such transaction is permitted under Section 4.26(h);

(x)    Liens not prohibited by Section 4.26(a) (including Permitted Liens existing on the Filing Date);

(xi)    dispositions of (x) accounts receivable in connection with the collection or compromise thereof or (y) accounts receivable, payment intangibles and related assets in connection with this Agreement;

(xii)    leases, subleases, assignments, licenses or sublicenses, in each case in the ordinary course of business and which do not materially interfere with the business of Parent and the Subsidiaries;

(xiii)    transfers of property subject to Casualty Events upon receipt of the Net Cash Proceeds of such Casualty Event;

(xiv)    to the extent allowable under Section 1013 of the Code (or any comparable or successor provision), any exchange of like property for use in the ordinary course of the business of the Companies taken as a whole; provided that (x) the aggregate fair market value of the assets exchanged in all like property exchanges consummated pursuant to this Section 4.26(e)(xiv) shall not exceed $150,000,000 and must be approved by the Bankruptcy Court, and (y) any individual like property exchanges pursuant to this Section 4.26(e)(xiv) of assets having a fair market value of $15,0000,000 or more must be approved by the Bankruptcy Court;

(xv)    arm's-length Asset Sales approved by the Bankruptcy Court for consideration at least 90% of which is cash to the extent that concurrently therewith (A) the principal amount of the Loans are repaid by an amount equal to the net cash proceeds thereof and there is a permanent reduction in the Commitments in the same amount or (B) the net cash proceeds thereof are held as cash collateral for the Secured Obligations in a segregated account of and under the sole control of the Administrative Agent in which the Administrative Agent has a first priority perfected security interest subject to no other Adverse Claim; and

(xvi)    Dividends permitted by Section 4.26(g).

Notwithstanding anything to the contrary, Originators are not permitted to sell, transfer or otherwise dispose of Receivables Property except pursuant to the Receivables Purchase Agreement.

(f)    Acquisitions.  Purchase or otherwise acquire (in one or a series of related transactions) all or a substantial part of the property and/or Equity Interests (whether tangible or intangible) of any Person (or agree to do any of the foregoing at any future time), except that the following shall be permitted:

(i)    Capital Expenditures by Parent and the Subsidiaries shall be permitted to the extent permitted by Section 4.26(i)(A);

(ii)    purchases and other acquisitions of inventory, materials, equipment and intangible property in the ordinary course of business;

(iii)    Investments in compliance with Section 4.26(h);

(iv)    leases of real or personal property in the ordinary course of business;

(v)    acquisitions of assets  a majority of which are operating assets, or all or substantially all of the equity of any Person that conducted on-going business operations (and not merely investments) immediately prior to and following such acquisition, provided that:

(A) any such Person becomes a Guarantor;

(B) such assets and such equity of such Person, as applicable, shall become subject to the Lien of the Administrative Agent under the Guaranty Security Agreement and the Financing Orders;

(C) the total consideration paid by the Companies for all acquisitions permitted under this clause shall not exceed the sum of (1) $75,000,000 and (2) the lesser of (x) the cumulative amount of net proceeds received in connection with Asset Sales pursuant to Section 4.26 (e)(ii)(B) since the Closing Date and (y) $25,000,000;

(D) such acquisition shall not cause Capped Expenditures to exceed the Capped Expenditure Limit; and

(E) any such acquisition of assets having a fair value (as determined by the Parent's Board of Directors) of $15,000,000 or more must be approved by the Bankruptcy Court;

(vi)     transactions permitted by Section 4.26(g); and

(vii)    Investments and other transactions in compliance with Section 4.26(b).

(g)     Dividends. Authorize, declare or pay, directly or indirectly, any Dividends with respect to any Company, except that the following shall be permitted:

(i)     Dividends by (A) any Company to Parent or any Guarantor that is a wholly owned Subsidiary of Parent, (B) any Company to its direct parent if such parent is a Guarantor and (C) any Subsidiary that is not a Guarantor to its direct parent;

(ii)     (A) payments by Parent (directly or indirectly) to or on behalf of ESOP in an amount sufficient to pay franchise taxes and other fees required to maintain the legal existence of ESOP and (B) payments by Parent to or on behalf of ESOP in an amount sufficient to pay out-of-pocket legal, accounting and filing costs and other expenses in the nature of overhead in the ordinary course of administration of the ESOP;

(iii)     Dividends to the ESOP in an amount not to exceed the ESOP Note Repayment Amounts as and when due and payable, so that the amount of such payment to the ESOP equals the amount of the concurrent payment by the ESOP to Parent; and

(iv)     Dispositions made as part of a Permitted Disposition.

(h)     Investment, Loan and Advances. Directly or indirectly, lend money or credit (by way of guarantee or otherwise) or make advances to any Person, or purchase or acquire any stock, bonds, notes, debentures or other obligations or securities of, or any other interest in, or make any capital contribution to, any other Person (all of the foregoing, collectively, "Investments"), except that the following shall be permitted:

(i)      Investments outstanding on the Filing Date;

(ii)     the Companies may (w) acquire and hold accounts receivable owing to any of them if created or acquired in the ordinary course of business and payable or dischargeable in accordance with customary terms, (x) invest in, acquire and hold cash and Cash Equivalents, (y) endorse negotiable instruments held for collection in the ordinary course of business or (z) make lease, utility and other similar deposits in the ordinary course of business;

(iii)    loans and advances to directors, employees and officers of Parent and the Subsidiaries for bona fide business purposes and to purchase Equity Interests of Parent, in an aggregate amount not to exceed $5,000,000 at any time outstanding; provided that no loans in violation of Section 402 of the Sarbanes-Oxley Act shall be permitted hereunder;

(iv)     Investments (i) by any Company in Parent or any Guarantor (including, without limitation, the Intercompany Junior Subordinated Notes), (ii) by any Company in any Person that, in connection with an Investment that is a Permitted Acquisition, becomes a Guarantor, (iii) by a Subsidiary that is not a Guarantor in any other Subsidiary that is not a Guarantor, and (iv) by any Company in any Subsidiary that is not a Guarantor provided that such Investment is made in the ordinary course of business and permitted by order of the Bankruptcy Court;

(v)      Investments in securities of trade creditors or customers in the ordinary course of business received upon foreclosure or pursuant to any plan of reorganization or liquidation or similar arrangement upon the bankruptcy or insolvency of such trade creditors or customers;

(vi)     Investments made by Parent or any Subsidiary as a result of consideration received in connection with an Asset Sale made in compliance with Section 4.26(e);

(vii)    Investments (including minority Investments and joint ventures) in Persons that do not constitute Subsidiaries, in each case valued at the fair market value (determined by Parent in good faith) of such Investment at the time each such Investment is made, in an aggregate amount pursuant to this clause (vii) not to exceed $50,000,000; provided that such Investment shall not cause Capped Expenditures to exceed the Capped Expenditure Limit; provided further that any such Investment having a fair value (as determined by the Parent's Board of Directors) of $15,000,000 or more must be approved by the Bankruptcy Court;

(viii)   acquisitions of all or a substantial part of the property and/or Equity Interests of any Person permitted under Section 4.26(f) (other than clause (iii) thereof);

(ix)     Investments arising under the Transaction Documents;

(x)    the creation or formation of new Subsidiaries so long as such new Subsidiary either (A) is a direct subsidiary of a Person that is not a Guarantor and the Investment in such Subsidiary was made by a Person that is not a Guarantor, or (B) concurrently with its creation or formation becomes a Guarantor under the Guaranty and a debtor granting a security interest to the Administrative Agent under the Guaranty Security Agreement pursuant to joinder documentation reasonably satisfactory to the Administrative Agent;

(xi)    Guaranteed Indebtedness otherwise permitted under Section 4.26(c) and Indebtedness permitted under Section 4.26(c)(i); and

(xii)    Investments in connection with a Permitted Disposition.

(i)    Limitation on Capital Expenditures.  Permit the aggregate amount of Capital Expenditures during the Measurement Period to exceed $110,000,000; provided that this limitation shall not apply to (i) expenditures of insurance proceeds to rebuild or replace any asset, (ii) leasehold improvement expenditures for which Parent or a Subsidiary is reimbursed by the lessor, sublessor or sublessee and (iii) expenditures of proceeds (including Net Cash Proceeds) of any asset sale permitted under Section 4.26(e); or permit any Capital Expenditure that would cause Capped Expenditures to exceed the Capped Expenditure Limit.

(j)    Prepayments of Other Indebtedness and Modifications of Certain Documents, etc.  Directly or indirectly:

(i)    make any payment on any Indebtedness of the Guarantors arising before the Filing Date, other than as permitted by order of the Bankruptcy Court in respect of claims that are (i) sought pursuant to the "first day" motions filed by the Filing Debtors and subsequently authorized by orders in the Chapter 11 Cases, (ii) payments on account of real estate leases that are assumed pursuant to Bankruptcy Court order and (iii) authorized in other orders in the Chapter 11 Cases in an aggregate amount for all such orders under this clause (iii) not to exceed $30,000,000; or

(ii)    amend or modify, or permit the amendment or modification of, any provision of any Transaction Document (as defined in the Senior Credit Agreement and including any Parent Acquisition Bridge Loan Documents, any Parent High Yield Notes Documents and the Zell Investment Agreement), the ESOP Documentation or the PHONES in any manner that is adverse in any material respect to the interests of the Administrative Agent or the Lenders; provided that Parent may amend the ESOP Documentation to the extent required by the Internal Revenue Service in order to obtain a favorable determination letter with respect to the ESOP or to comply with changes in applicable law.

(k)    Limitation on Issuance of Capital Stock.

(i)    With respect to Parent, issue any Equity Interest that is not common stock or warrants, options or other rights to acquire in each case Parent common stock.

(ii)     With respect to any Subsidiary, issue any Equity Interest (including by way of sales of treasury stock) or any options or warrants to purchase, or securities convertible into, any Equity Interest, except (v) for issuances made in connection with re-incorporating a Subsidiary in a different jurisdiction, issuances made in connection with mergers of Subsidiaries effected for purposes of relocating such Subsidiaries in a different jurisdiction or becoming a limited liability company and conversions of corporations into limited liability companies, in each case so long the owners of the Equity Interests remain the same immediately after such conversions; (w) issuances of Equity Interests as part of a Permitted Disposition; (x) for stock splits, stock dividends and additional issuances of Equity Interests which do not decrease the percentage ownership of any Subsidiaries in any class of the Equity Interest of such Subsidiary; (y) Subsidiaries of Parent formed after the Closing Date may issue Equity Interests to Parent or the Subsidiary of Parent which is to own such Equity Interests; and (z) Subsidiaries of Parent for and after the Closing Date may issue de minimis amounts of Equity Interests to comply with applicable local laws. All Equity Interests issued in accordance with this Section 4.26(k)(ii) by Tribune Finance, LLC or Tribune Broadcasting Holdco LLC shall be subject to the pledge pursuant to the Guaranty Security Agreement.

(l)     Business.  Parent and the Subsidiaries shall not engage in any business other than those businesses in which Parent and its Subsidiaries are engaged on the Filing Date or, in the good faith judgment of the Board of Directors, which are incidental or related thereto, reasonable extensions thereof or reasonably similar or complementary thereto.

(m)     No Further Negative Pledge.  Enter into any agreement, instrument, deed or lease which prohibits or limits the ability of any Guarantor to create, incur, assume or suffer to exist any Lien upon any of their respective properties or revenues, whether now owned or hereafter acquired, or which requires the grant of any security for an obligation if security is granted for another obligation, except the following: (i) this Agreement and the other Transaction Documents; (ii) covenants in documents creating Liens not prohibited by Section 4.26(a) prohibiting further Liens on the properties encumbered thereby; (iii) any other agreement that does not restrict in any manner (directly or indirectly) Liens created pursuant to the Transaction Documents on any Collateral or Guarantor Collateral and does not require the direct or indirect granting of any Lien securing any Indebtedness or other obligation by virtue of the granting of Liens on or pledge of property of any Guarantor to secure obligations under the Transaction Documents; (iv) any prohibition or limitation that (a) exists pursuant to applicable requirements of law, (b) consists of customary restrictions and conditions contained in any agreement relating to the sale of any property permitted under Section 4.26(e) pending the consummation of such sale, (c) restricts subletting or assignment of leasehold interests contained in any lease or sublease governing a leasehold interest of Parent or a Subsidiary, or (d) exists in any agreement in effect at the time such Subsidiary becomes a Subsidiary of Parent, so long as such agreement was not entered into in contemplation of such Person becoming a Subsidiary; (v) any prohibition or limitation in indentures and agreements existing on the Filing Date; (vi) restrictions on assignment contained in any contract entered into by any Company; provided that with respect to any contract entered into after the date hereof, such Company shall have used reasonable efforts to cause such contract to permit the creation of a security interest in favor of the Administrative Agent for the benefit of the Secured Parties; and (vii) limitations imposed in

connection with a Permitted Disposition, so long as such limitations do not extend beyond the asset subject to the Disposition and any Investments received as consideration for such Disposition.

(n)    ERISA. For plan years beginning after December 31, 2007, Parent shall not make, and shall cause its Subsidiaries not to make, any contributions (other than "elective contributions" within the meaning of Treas. Reg. § 1.401(k)-6) to the Tribune Company 401(k) Savings and Profit Sharing Plan; provided, that for the 2007 plan year, Parent shall be permitted to make contributions with respect to such year in 2008.

Notwithstanding anything in the foregoing to the contrary nothing in this Section 4.26 shall prohibit the Originators or any of their Subsidiaries from agreeing to (i) any transaction at any future time (whether prior to or subsequent to the Final Payout Date) to the extent the consummation of such transaction would not otherwise have been permitted as of the date of entering into such transaction and the obligation of the applicable Originators or Subsidiaries to consummate such transaction remains subject to the consent of the Required Lenders and (ii) any other transaction at any future time so long as such transaction shall be consummated subsequent to, or contemporaneously with, the Final Payout Date; it being understood that this paragraph shall not be deemed to be consent to by the Administrative Agent or the Lenders to any transaction not otherwise permitted under the Transaction Documents.

SECTION 4.27.  Use of Proceeds.  The Transaction Parties shall use the proceeds of the Loans and the proceeds of the sale of the Receivables under the Transaction Documents in a manner consistent with the requirements of the Bankruptcy Code; provided that no proceeds of any Loan shall be used directly or indirectly for the purpose, whether immediate, incidental or ultimate, of purchasing or carrying any Margin Stock.

ARTICLE V
ADMINISTRATION AND COLLECTION

SECTION 5.01.  Designation of Servicer.  (a) Consistent with the Buyer's ownership of the Acquired Receivables and Receivables Property related thereto, each Originator acknowledges and agrees that the servicing, administration and collection of the Acquired Receivables and Receivables Property related thereto shall be the responsibility and right of the Buyer and its assigns. The Buyer has advised the Originators that (a) the Buyer has granted and will grant a security interest in the Acquired Receivables, the Receivables Property related thereto and the Collection Account to the Administrative Agent, for the benefit of the Secured Parties under and pursuant to the Security Agreement and (b) the servicing, administration and collection of the Acquired Receivables and Receivables Property related thereto shall be conducted by the Persons designated as the Servicer pursuant to the Servicing Agreement from time to time. Pursuant to the Servicing Agreement (i) the Buyer has requested Tribune and Tribune has agreed that it will, act as the initial Servicer and (ii) Tribune has appointed each Originator to act as its Sub-Servicer with respect to the Acquired Receivables originated by such Originator and the Receivables Property related thereto and each Originator has accepted such appointment.

(b)    Prior to the date on which the Servicer must prepare and deliver any Portfolio Report or Supplemental Report or assist in the preparation of, or take such action as required with respect to, any Portfolio Report or Supplemental Report pursuant to the Servicing Agreement and the Receivables Loan Agreement, each Originator will make available to the Servicer all information necessary for the preparation of such Portfolio Report or Supplemental Report, including (i) information in their possession or control regarding all Purchases hereunder occurring during the period to be covered in such report and (ii) the aggregate original Unpaid Balance of the Receivables sold by such Originator during such period, the aggregate Purchase Price for such Receivables sold by such Originator and the components of payment as provided in Section 1.02 (*Payment for the Purchase*).

SECTION 5.02.    Certain Rights of the Buyer.  (a) Each Originator and the Buyer hereby agree that the Administrative Agent may (and if so directed by the Administrative Agent or the Required Lenders, shall) at any time following the occurrence and during the continuation of a Trigger Event or Originator Termination Event, assume exclusive control of the Facility Accounts, and, may take such actions to effect such transfer or assumption as it may determine to be necessary or appropriate (including delivering the notices attached to the Account Control Agreements).

(b)    Following the occurrence and during the continuance of a Trigger Event, at the Parent's, the Buyer's (acting either on its own initiative or at the request of the Administrative Agent or the Required Lenders) or the Administrative Agent's request and at the Originator's expense, each Originator shall (and if that Originator shall fail to do so within two Business Days, the Parent, the Buyer or the Administrative Agent may) take any or all of the following actions:

(i)    Such Originator shall execute any power of attorney or other similar instrument and/or take any other action necessary or desirable to give effect to the notification and directions described in this Section and such further acts necessary to convey or perfect the Parent's and the Buyer's title or the Administrative Agent's security interest in the Acquired Receivables and Receivables Property of that Originator;

(ii)    Such Originator shall (A) assemble all of the Contracts, documents, instruments and other Records (including computer tapes and disks) that evidence or relate to the Acquired Receivables of that Originator and any Receivables Property with respect thereto, or that are otherwise necessary or desirable to collect such Acquired Receivables and any Receivables Property with respect thereto, and shall make the same available to the Parent, the Buyer and the Administrative Agent at a place selected by the Administrative Agent or its designee and (B) segregate all cash, checks and other instruments received by it from time to time constituting Collections of such Acquired Receivables in a manner acceptable to the Administrative Agent and, promptly upon receipt, remit all such cash, checks and instruments, duly endorsed or with duly executed instruments of transfer, to the Administrative Agent or its designee; and

(iii)    At any time following a Trigger Event or Originator Event, such Originator shall (A) notify each Obligor of Acquired Receivables of that Originator of the sale, assignment, transfer and conveyance of the Acquired Receivables and Receivables

Property with respect thereto pursuant hereto and of the Parent's and the Buyer's ownership of, and the Administrative Agent's security interest in, the Acquired Receivables and Receivables Property with respect thereto, and (B) direct such Obligors that payments under any such Acquired Receivable or any Receivables Property with respect thereto be made directly to the Buyer or Administrative Agent or their designees.

(c)    Following the occurrence and during the continuation of a Trigger Event, each Originator hereby authorizes the Buyer and the Administrative Agent to take any and all steps in such Originator's name and on behalf of such Originator that are necessary or desirable, in the determination of the Buyer or the Administrative Agent, to collect amounts due under the Acquired Receivables and any Receivables Property with respect thereto, including (i) endorsing in such Originator's name and in favor of or otherwise to the order of the Buyer checks and other instruments representing Collections, (ii) enforcing the Acquired Receivables and any Receivables Property with respect thereto, including to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in connection with therewith and to file any claims or take any action or institute any proceedings that the Buyer or the Administrative Agent (or any designee) may deem to be necessary or desirable for the collection thereof or to enforce compliance with the terms and conditions of, or to perform any obligations or enforce any rights of such Originator in respect of, the Acquired Receivables and any Receivables Property with respect thereto and the other Transaction Documents.

SECTION 5.03.  Rights and Remedies.  (a) If any Originator fails to perform any of its obligations under this Agreement or any other Transaction Document to which it is a party, taking into account any applicable grace periods and/or right to remedy breaches, the Buyer shall, or the Administrative Agent may (but shall not be required to), itself perform, or cause performance of, such obligation; and the costs and expenses of the Parent, the Buyer and the Administrative Agent incurred in connection therewith shall be payable by such Originator.

(b)    Each Originator shall perform its obligations under the Contracts and in respect of the Receivables Property to the same extent as if they had not been sold to the applicable Transferee or its assigns and the exercise by the applicable Transferee or its assigns of its rights under or in connection with this Agreement shall not release any Originator from any of its duties or obligations with respect to any Contracts or in respect of the Receivables Property. The applicable Transferee or its assigns shall not have any obligation or liability with respect to any Receivable, Receivables Property or Contracts, nor shall it be obligated to perform the obligations of any Originator thereunder or in respect thereof.

(c)    Each Originator shall cooperate with the Servicer in collecting amounts due from Obligors in respect of the Acquired Receivables and the Receivables Property related thereto.

(d)    Each Originator acknowledges and agrees to the exercise of rights and remedies afforded to the Administrative Agent and the Lenders under the Transaction Documents in accordance with the terms thereof including without limitation the last paragraph of Clause 7.2 of the Receivables Loan Agreement (*Facility Termination Events*).