# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> TRIBUNE COMPANY, et al.,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 08-13141 (KJC) <br><br> Jointly Administered <br><br> Hearing Date: April 28, 2009 @ 10:00 a.m. (ET) <br> Objection Deadline: April 21 2009 @ 4:00 p.m. (ET) |

## MOTION FOR ORDER ALLOWING AND COMPELLING IMMEDIATE PAYMENT OF ADMINISTRATIVE CLAIM

Sony Pictures Television Inc. ("SPT"), through its counsel, hereby moves the United States Bankruptcy Court for the District of Delaware (the "Court"), pursuant to Sections 503(a), 503(b)(1) and 363(e) of Title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc.

"Bankruptcy Code"), for an order allowing SPT's administrative claim in the amount of $200,675.21 through April 30, 2009 against the estate of debtor KPLR, Inc. ("Debtor"), and compelling Debtor to make immediate payment thereof. In support of this Motion, SPT relies on the Declaration of Linda Bershad (the "Bershad Declaration") filed concurrently herewith. In further support of this Motion, SPT states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. Venue of these cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

3. SPT is a distributor and licensor of syndicated television series. Debtor is a television station serving the St. Louis, Missouri, area. Along with many of its affiliates, Debtor commenced a case under Chapter 11 of the Bankruptcy Code on December 8, 2008 with the Court.

4. Before the commencement of its bankruptcy case, Debtor and one of its predecessors in interest entered into executory contracts with SPT whereby SPT agreed to provide syndicated television shows to Debtor in exchange for fees and promotional consideration. More specifically, Debtor and its predecessors in interest entered into the following agreements:

    a. <u>King of Queens</u>. On or about June 22, 2002, Columbia TriStar Domestic Television, an affiliate of SPT ("Columbia TriStar"), entered into an agreement with

---

(0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

DM3\958171.2

Acme Television Holdings ("Acme") concerning the television series the "King of Queens" (the "King of Queens Agreement"). Under the King of Queens Agreement, Columbia TriStar licensed to Acme 221 weeks of the King of Queens television show commencing in September 2003. In exchange, among other things, Acme committed to pay Columbia TriStar a weekly license fee of $8,950.00. Thereafter, SPT succeeded to Columbia TriStar's interests in the King of Queens Agreement. SPT is informed and believes that on or about April 17, 2003, the KPLR station was purchased by Tribune Broadcasting and Debtor succeeded to Acme's interest in the King of Queens Agreement. In a letter dated August 12, 2004, SPT confirmed its acceptance as Debtor as the licensee under the King of Queens Agreement and confirmed the extension of the King of Queens Agreement through September 7, 2008 (the "Assignment and Extension Letter"). In a letter dated May 26, 2006, SPT confirmed its extension of the King of Queens Agreement through March 7, 2010 (the "Second Extension Letter"). In a letter dated February 2, 2007, SPT confirmed its extension of the King of Queens Agreement through December 3, 2010 (the "Third Extension Letter"). Complete and accurate copies of the King of Queens Agreement, the Assignment and Extension Letter, the Second Extension Letter, and the Third Extension Letter are attached to the Bershad Declaration as Exhibits 1 through 4 and incorporated herein by reference.

      b.    <u>The Three Stooges</u>. On or about June 5, 2007, SPT entered into an agreement with Debtor concerning the Three Stooges television series (the "Three Stooges Agreement"). Pursuant to the Three Stooges Agreement, SPT licensed to Debtor 130 episodes of the Three Stooges beginning on June 1, 2007. In exchange, among other things, Debtor committed to pay to SPT a license fee of $93.75 per episode. In a letter

dated January 16, 2008, SPT confirmed the extension of the Three Stooges Agreement through June 5, 2009 with an increased license fee of $200.00 per episode (or $1,083.33 per month) (the "Three Stooges Extension Letter"). Complete and accurate copies of the Three Stooges Agreement and the Three Stooges Extension Letter are attached to the Bershad Declaration as Exhibits 5 and 6 and incorporated herein by reference.

    c. <u>Judge Karen</u>. On or about December 10, 2007, SPT entered into an agreement with Debtor concerning a first-run, one-half hour syndicated television series entitled "Judge Karen" (the "Judge Karen Agreement"). By virtue of the Judge Karen Agreement, SPT licensed to Debtor 52 weeks of the Judge Karen show beginning in September 2008. In exchange, among other things, Debtor committed to pay to SPT a license fee of $500 per week. A complete and accurate copy of the Judge Karen Agreement is attached to the Bershad Declaration as Exhibit 7 and incorporated herein by reference.

5.    Debtor has paid none of the payments due for its post-petition use of the rights granted to it under the King of Queens Agreement, the Three Stooges Agreement, or the Judge Karen Agreement, as they have been amended and extended (collectively, the "Agreements") The following post-petition payments have been invoiced to Debtor under the Agreements but remain unpaid (the "Delinquent License Fees"):

| | | |
|---|---|---|
| King of Queens | 12/8/2008 | 30,025.80 |
| King of Queens | 1/1/2009 | 38,783.33 |
| King of Queens | 2/1/2009 | 38,783.33 |
| King of Queens | 3/1/2009 | 38,783.33 |
| King of Queens | 4/1/2009 | 38,783.33 |
| | | **185,159.12** |
| Judge Karen | 12/8/2008 | 1,677.42 |
| Judge Karen | 1/1/2009 | 2,166.66 |
| Judge Karen | 2/1/2009 | 2,166.66 |

| | | | |
|---|---|---|---|
| | Judge Karen | 3/1/2009 | 2,166.66 |
| | Judge Karen | 4/1/2009 | 2,166.66 |
| | | | **10,344.06** |
| | 3 Stooges | 12/8/2008 | 838.71 |
| | 3 Stooges | 1/1/2009 | 1,083.33 |
| | 3 Stooges | 2/1/2009 | 1,083.33 |
| | 3 Stooges | 3/1/2009 | 1,083.33 |
| | 3 Stooges | 4/1/2009 | 1,083.33 |
| **Total** | | | **5,172.03** |
| **Grand Total** | | | **200,675.21** |

6. SPT's efforts to collect the Delinquent License Fees without the intervention of the Court have not been successful.

7. SPT has contracts similar to the Agreements with many other television stations affiliated with Debtor, who are all also debtors under the Bankruptcy Code (the "Affiliates"). Although not all of the Affiliates are current with the post-petition license fees due to SPT, none of them have failed to pay the fees due for December and January as Debtor has.

## ARGUMENT

### A. The Delinquent License Fees Should Be Allowed As Administrative Expenses.

8. Since the commencement of the Bankruptcy Case, Debtor has continued to broadcast the King of Queens, the Three Stooges, and Judge Karen (collectively, the "Programs"). Debtor's continued broadcast of the Programs has provided tangible value to it, has allowed it to remain in business as a television station, and has helped it preserve its estate and protect its value for the benefit of all its creditors.

9. Section 503(b)(1) of the Bankruptcy Code provides that,"[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including (1)(A) the

actual, necessary costs and expenses of preserving the estate[.]" Since the Delinquent License Fees are administrative expenses within the definition of Section 503(b)(1) of the Bankruptcy Code, SPT is entitled to the allowance of an administrative expense claim and immediate payment thereof.

### B. The Court Should Order Debtor to Immediately Pay the Delinquent License Fees.

10. Upon allowance, SPT is entitled to immediate payment of the Delinquent License Fees. Section 503(a) of the Bankruptcy Code states that: "An entity may timely file a request for payment of an administrative expense[.]" As shown above, the Delinquent License Fees are expenses of administration of Debtor's bankruptcy estate and the Motion, brought in the fourth month of the Bankruptcy Case, is timely. Accordingly, not only should the Delinquent License Fees be allowed, they should be order immediately paid under Section 503(a) of Bankruptcy Code.

11. In addition, the Programs are assets of SPT being used by Debtor. Section 363(e) of the Bankruptcy Code provides, in relevant part, "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in the property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." As a practical matter, the only adequate protection Debtor can provide to SPT is to timely perform its post-petition obligations according to the terms of the Agreements, pending their assumption, rejection, or contractual expiration.

DM3\958171.2

**WHEREFORE,** SPT respectfully requests that the Court enter an order: (a) allowing the Delinquent License Fees as administrative expenses, (b) requiring Debtor to immediately pay the Delinquent License Fees, and (c) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
March 30, 2009

Respectfully submitted,

*/s/ Sommer L. Ross*
Michael R. Lastowski, Esquire (DE 4052)
Sommer L. Ross, Esquire (DE 3892)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone:   (302) 657-4900
Facsimile:   (302) 657-4901

BUCHALTER NEMER LLP
Pamela Kohlman Webster (CA No. 105937)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

*Attorneys for Sony Pictures Television Inc.*

DM3\958171.2