# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRIBUNE COMPANY, et al.,[1] | ) | Case No. 08-13141 (KJC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## DECLARATION OF LINDA BERSHAD IN SUPPORT OF MOTION FOR ORDER ALLOWING AND COMPELLING IMMEDIATE PAYMENT OF ADMINISTRATIVE CLAIM

I, Linda Bershad, do hereby declare as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2.      I am the Vice President for Credit and Customer Finance of Sony Pictures Television Inc. ("SPT"). As part of my duties at SPT, I have substantial responsibility for the collection of amounts due to SPT as a distributor and licensor of television programs, including amounts due to SPT from KPLR, Inc., a television station in the St. Louis Missouri area ("Debtor"). I am familiar with the agreements described below between SPT and Debtor, as well as the current status of the payments required under those agreements.

3.      The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of SPT's business at or near the time of the act, condition, or event to which they relate by persons employed by SPT who had a business duty to SPT to accurately and completely take, make and maintain such records and documents.

4.      I submit this Declaration in support of the Motion for Order Allowing and Compelling Payment of Administrative Claim (the "Motion"). I make this Declaration based on my own personal knowledge, except for those matters set forth on my information and belief. As to those matters, I believe that my information and my beliefs formed from that information are true, accurate and correct. If I were called upon to testify, I could and would testify competently with respect thereto.

5.      Debtor and its predecessor in interest entered into a series of contracts with SPT whereby SPT agreed to provide syndicated television shows to Debtor in exchange for fees and for promotional consideration. More specifically, Debtor and its predecessors in interest entered into the following agreements:

2

a.    <u>King of Queens</u>.  On or about June 22, 2002, Columbia TriStar Domestic Television, an affiliate of SPT ("Columbia TriStar") entered into an agreement with Acme Television Holdings ("Acme") concerning the television series the "King of Queens" (the "King of Queens Agreement").  Under the King of Queens Agreement, Columbia TriStar licensed to Acme 221 weeks of the King of Queens show commencing in September 2003.  In exchange, among other things, Acme committed to pay Columbia TriStar a weekly license fee of $8,950.00.  Thereafter, SPT succeeded to Columbia TriStar's interests in the King of Queens Agreement.  I am informed and believe that on or about April 17, 2003, the KPLR station was purchased by Tribune Broadcasting and Debtor succeeded to Acme's interest in the King of Queens Agreement.  In a letter dated August 12, 2004, SPT confirmed its acceptance as Debtor as the licensee under the King of Queens Agreement and confirmed the extension of the King of Queens Agreement through September 7, 2008 (the "Assignment and Extension Letter").  In a letter dated May 26, 2006, SPT confirmed its extension of the King of Queens Agreement through March 7, 2010 (the "Second Extension Letter").  In a letter dated February 2, 2007, SPT confirmed its extension of the King of Queens Agreement through December 3, 2010 (the "Third Extension Letter").  Complete and accurate copies of the King of Queens Agreement, the Assignment and Extension Letter, the Second Extension Letter, and the Third Extension Letter are attached to this Declaration as Exhibits 1 through 4 and incorporated herein by reference.

b.    <u>The Three Stooges</u>.  On or about June 5, 2007, SPT entered into an agreement with Debtor concerning the Three Stooges television show (the "Three Stooges Agreement").  Under the Three Stooges Agreement, SPT licensed to Debtor 130

episodes of the Three Stooges beginning on June 1, 2007. In exchange, among other things, Debtor committed to pay to SPT a license fee of $93.75 per episode. In a letter dated January 16, 2008, SPT confirmed the extension of the Three Stooges Agreement through June 5, 2009 with an increased license fee of $200.00 per episode (the "Three Stooges Extension Letter"). Complete and accurate copies of the Three Stooges Agreement and the Three Stooges Extension Letter are attached to this Declaration as Exhibits 5 and 6 and incorporated herein by reference.

      c.    <u>Judge Karen</u>. On or about December 10, 2007, SPT entered into an agreement with Debtor concerning a first-run, one-half hour syndicated television show entitled "Judge Karen" (the "Judge Karen Agreement"). Under the Judge Karen Agreement, SPT licensed to Debtor 52 weeks of the Judge Karen show beginning in September 2008. In exchange, among other things, Debtor committed to pay to SPT a license fee of $500 per week. A complete and accurate copy of the Judge Karen Agreement is attached to this Declaration as Exhibit 7 and incorporated herein by reference.

      6.    Debtor has paid none of the payments due for its post-petition use of the rights granted to it under the King of Queens Agreement, the Three Stooges Agreement, or the Judge Karen Agreement, as amended and extended (collectively, the "Agreements") The following post-petition payments have been invoiced to Debtor but remain unpaid (the "Delinquent License Fees"):

| | | |
|---|---|---|
| King of Queens | 12/8/2008 | 30,025.80 |
| King of Queens | 1/1/2009 | 38,783.33 |
| King of Queens | 2/1/2009 | 38,783.33 |
| King of Queens | 3/1/2009 | 38,783.33 |
| King of Queens | 4/1/2009 | 38,783.33 |
| | | 185,159.12 |

4

| | | | |
|---|---|---|---|
| Judge Karen | | 12/8/2008 | 1,677.42 |
| Judge Karen | | 1/1/2009 | 2,166.66 |
| Judge Karen | | 2/1/2009 | 2,166.66 |
| Judge Karen | | 3/1/2009 | 2,166.66 |
| Judge Karen | | 4/1/2009 | 2,166.66 |
| | | | 10,344.06 |
| | | | |
| 3 Stooges | | 12/8/2008 | 838.71 |
| 3 Stooges | | 1/1/2009 | 1,083.33 |
| 3 Stooges | | 2/1/2009 | 1,083.33 |
| 3 Stooges | | 3/1/2009 | 1,083.33 |
| 3 Stooges | | 4/1/2009 | 1,083.33 |
| Total | | | 5,172.03 |
| Grand Total | | | 200,675.21 |

7.      My efforts and those of my colleagues to collect the Delinquent License Fees have not been successful. For example, on March 17, 2009, I had an email exchange with a Joe Mora, who I am informed and believe is responsible for arranging for the payment of the Delinquent License Fees, and from whom I obtained information about payments due before the commencement of Debtor's bankruptcy case, wherein I asked whether he had any information about the post-petition payments. His response was: "No, I do not have any information on the post-petition payments at this time." More often, we receive no response at all.

8.      I am informed and believe that SPT's counsel has also inquired repeatedly of Debtor's counsel as to when the Delinquent License Fees would be paid, with no informative response.

9.      SPT has contracts similar to the Agreements with other television stations affiliated with Debtor and which are also debtors under the Bankruptcy Code (the "Affiliates"). Although not all of the Affiliates are current with the post-petition license fees due to SPT, none of them have failed to pay the fees due for December and January as Debtor has failed to do.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 30, 2009 at Culver City, California.

LINDA BERSHAD

# Exhibit 1



Mr. John Weiser
Executive Vice President
Columbia TriStar Domestic Television
10202 West Washington Boulevard
Culver City, CA 90232-3195

Dear John:

*ACME STATIONS "A"*
*SEE ATTACHMENT "A"*

We hereby make the following offer (the "Offer") on behalf of station _____ (call letters)
in _SEE ATTACHMENT_ (market) for your series THE KING OF QUEENS (the "Program").
          *"A"*



Underline{Availability Date:}

- Fall 2003

Underline{License Term/Telecasts}

- We will license two hundred twenty-one (221) weeks at seven (7) telecasts per week. ("Initial
  License Term"). The License Term may be extended for additional seasons, as set forth below
  ("Extended License Term").

<u>License Fee and Payment</u>     *SEE ATTACHMENT* 
                                              *"A"*

- The license fee will be $_____ *"A"* _____ PER WEEK for 221 weeks.

                              *NO*
- The license fee will include a ~~10%~~ down payment payable no later than 
  September 3, 2003 with the balance payable in 51 consecutive monthly
  installments commencing on the Availability Date.

H:\Internals\KingofQueens.OL.doc

The King of Queens
Offer Letter
Page 2

### Broadcast Obligation/Time Period Commitment



- Each Monday through Friday telecast of the Program (the "Daily Telecasts") will
  contain 7 minutes of commercial time, of which ~~we~~ ᴬᶜᴹᴱ will retain and sell 5½ minutes and
  ~~you~~ will retain and sell 1½ minutes within each telecast. In addition, you may insert in
  the episodes billboards and/or closed-captioned sponsor announcements.

cᴛᴅ ᴛᴠ



- Daily Telecasts: ~~We will broadcast a daily telecast Monday through Friday~~    𝘚𝘌𝘌 ᴀᴛᴛᴀᴄʜᴍᴇɴᴛ
  ~~commencing no earlier than 6:00 p.m. (Eastern & Pacific Time) or 5:00 p.m. (Central &~~    "𝘈"
  ~~Mountain Time) and ending no later than 8:00 p.m. (Eastern & Pacific Time) or~~
  ~~7:00 p.m. (Central & Mountain Time).~~

- Weekend Telecasts: Also, we will broadcast a total of two (2) additional telecasts of the
  Program on Saturday and/or Sunday between (𝘚𝘌𝘌 ᴀᴛᴛᴀᴄʜᴍᴇɴᴛ "𝘈")    We will retain
  and sell 3½ minutes of commercial time and you will retain and sell 3½ minutes of
  commercial time within each such telecast.

- 𝘚𝘌𝘊𝘖𝘕𝘋 𝘙𝘜𝘕𝘚 : 𝘚𝘌𝘌 ᴀᴛᴛᴀᴄʜᴍᴇɴᴛ "𝘈"

- We may not broadcast the Primary and/or Weekend Program opposite its network
  broadcast.

- We agree to broadcast each episode of the Program exactly as delivered to us including
  your commercial inventory. Any failure to broadcast your commercials will be
  considered a material breach of the agreement.

- We agree to notify you, prior to the commencement of the License Term, of the time
  period commitments ("Designated Time Period") that we elect to broadcast the Primary
  and the Weekend telecasts of the Program.

- It is the essence of the Agreement that we broadcast the Program in the Designated
  Time Period and in the manner indicated above except in the event of a valid
  preemption or prevention as set forth below. In the event we breach this obligation or
  any other obligation as set forth in the Agreement (which such obligations are special
  and unique) and notwithstanding the payment of any required license fees, you shall be
  entitled to equitable remedies (including, without limitations, injunctive relief) requiring
  us to broadcast the the Program in the Designated Time Period as indicated above.

H:/internals/KingofQueens OL.doc

The King of Queens
Offer Letter
Page 3

Promotion

- You will supply promotional and advertising materials and we agree, as a material provision of the Agreement, to promote the Program by giving it local advertising support including, without limitation, appropriate newspaper and TV Guide print promotion support. We agree to further provide, as a minimum, ~~1000 G.R.P.'s per week of on-air promotional support and~~ one (1) thirty-second (:30) spot in the half hour immediately preceding each telecast of the Program for each day during which episodes are scheduled for broadcast. 

Exclusivity

- Notwithstanding anything to the contrary contained in the Agreement, Distributor shall have the right to license the Episodes to a basic cable service for exhibition commencing with the fourth year of the License Term (157th week).

Preemption/Prevention

- Broadcast of any telecast may only be preempted for the presentation of a news event, a non-regularly scheduled program of national importance or a live sports event.

- Within seven (7) days of the originally scheduled broadcast which was preempted or prevented, we will make good by: (i) broadcasting such telecast (including your commercials) in a comparable or better time period or; (ii) including your commercial inventory contained in such telecast in regularly scheduled broadcasts of other telecasts of the Program during the seven (7) day period.

- Failure to make any preempted or prevented telecast shall be deemed to be a material default by us unless (a) we notify you in writing of such failure and of the reasons therefor either by internet on *CTDTV.com*, electronic mail (e-mail) at *preemption@CTDTV.com* or by facsimile to (310) 244-5359 on or before seven (7) business days prior to such preemption for a non-regularly scheduled program of national/local importance or a live sports event or on or before forty-eight (48) hours after a news event.

Delivery

- Delivery will be by satellite, ~~at no charge to Acme~~. → *Distributor will provide uplink* at no charge *and Licensee* ② *will be responsible for downlink. If Licensee misses uplink, then Distributor's standard policy regarding charges for tapes a refeed will apply.*

Licensing of Additional Production

- The Initial License Term will include all episodes of the Program produced up to and including the 2002/03 broadcast season.

H:\Internal\KingofQueens OL.doc

The King of Queens
Offer Letter
Page 4

- Should additional production of the Program occur, we will license all additional
  episodes produced under the following conditions:

- For each additional broadcast season, the License Term will be extended by 39
  weeks and we agree to broadcast the episodes of the Program, during the Extended
  License Term, in accordance with the terms and conditions set forth above. The weekly
  license fee for the Extended License Term will be at the rate of 100% of the weekly
  license fee for the Initial License Term and will be payable in equal, consecutive
  monthly installments beginning 30 days after the 51st invoice, with the number of such
  monthly installments to be equal to the number of months by which the License Term is
  extended.

The above Offer will be irrevocable for a period of thirty (30) days from the date you receive
this Offer, and may be accepted only by an executive officer of your company and written
notice from you.

We understand that you reserve the right to accept or reject this Offer for any reason whatsoever
and may, in addition to this Offer, require us to provide financial documents or other evidence
of creditworthiness in form and substance satisfactory to you. We agree to fax this Offer to the
office of John Weiser at (310) 244-1798.

When the terms of this Offer are accepted, it will constitute a valid and binding agreement. We
acknowledge that we will be asked to sign your long form license agreement, which shall
include your Standard Terms and Conditions, in the near future; however, until such time, this
Offer, when accepted by your executive officer, will constitute the entire agreement between us.

Sincerely,                                    AGREED AND ACCEPTED:

ACME                                          COLUMBIA TRISTAR DOMESTIC TELEVISION
Licensee                                      A unit of Sony Pictures Entertainment Inc.

By: _John Daur (V.P. Programming)_   By: _____
                                              Richard Frankie
Date: _6-21-02_                               Executive Vice President,
                                              Business Operations

                                              Date: _3/4/03_


— THE ABOVE INCLUDES ATTACHMENT "A" —

H:/license/s/KingofQueens OL.doc

Attachment A – As part of offer on behalf of ACME Communications, Inc. for the program series King of Queens.  Dated 6/21/02

## ACME MARKETS
## MON-FRI & SAT & SUN TIME PERIODS
## PRICE PER WEEK

St. Louis (KPLR) - Year 1 M/F 5p-7p or 9p-12M; Year 2 M/F 5p-7p or 9p-1a; Year 3 and beyond, M/F option 8a-2a, weekend Sat/Sun 11a-1a - $8,950 per week.

Portland (KWBP) - Year 1 M/F 5p-8p or 10p-1230a; Year 2 M/F 5-8p or 10p-1a; Year 3 and beyond, M/F option 9a-2a, weekend Sat/Sun 12N-12M - $6,900 per week.

Salt Lake City (KUWB) - Year 1 and 2 M/F 5p-7p or 9p-12a; Year 3 and beyond, option M/F 9a-1a, weekend Sat/Sun 12N-12M - $6,000 per week.

Albuquerque (KWBQ or KASY) - Year 1 and 2 M/F 5p-7p or 9p-12A; Year 3 and beyond M/F 1p-1a, weekend Sat/Sun 12N-12M - $3,800 per week

Dayton (WBDT) - Year 1 M/F 5p-8p or 10p-12a; Year 2 M/F 5p-8p or 10p-1a; Year 3 and beyond, option M/F 9a-2a, weekend Sat/Sun 12N-12M - $2,500 per week.

Knoxville (WBXX) - Entire Term M/F 10a-2a; weekend Sat/Sun 12N-12M - $1,600 per week.

Green Bay (WIWB) - Year 1 and 2 M/F 5p-7p or 9p-12a; Year 3 M/F 5p-7p or 9p-1a; Year 4 and beyond, option M/F 9a-2a; weekend Sat/Sun 12N-12M - $2,250 per week.

Ft. Myers (WTVK)- Year 1 and 2 M/F 5p-8p or 10p-12a; Year 3 M/F 5p-8p or 10p-1a; Year 4 and beyond, option M/F 9a-2a; weekend Sat/Sun 12N-12M - $3,100 per week.

Champaign (WBUI) - Year 1 M/F 5p-7p or 9p-12a; Year 2 M/F 5p-7p or 9p-1230a; Year 3 M/F 5p-7p or 9p-1a; Year 4 and beyond, option M/F 9a-2a; weekend Sat/Sun 12N-12M - $2,050 per week.

Madison (WHPN)(Call letter to change in near future to WUWB) - Year 1 and 2 M/F 5p-7p or 9p-12a; Year 3 and beyond, option M/F 9a-1a; weekend Sat/Sun 12N-12M - $1,600 per week.

## ADDITIONAL TERMS

No downpayment; no increase for extended term, promotion guarantee for minimum one (1) 30 second spot in 1/2 hour preceeding telecast.

## SECOND RUNS

ACME Communications, Inc. has option for the telecast of up to 520 additional plays within the first two years of the agreement.  ACME will retain 5.5 minutes and CTDTV shall retain 1.5 minutes of commercial time within each telecast.  There shall be no additional cash license fee if this option is elected.  Time period window for these optional telecasts to be M/F between 9a-2a inclusive.

CASH/BARTER
SERIES OFFER

2/12/03

ORIGINAL 

DATE: **6/21/02**

STATION: **KPLR-TV**

DUOPOLY: Yes _____    No _____

STATION 2: _____

SHOW: ***King of Queens***

__ Request to broadcast on Station 2

MARKET: St. Louis, MO

SALESPERSON: Kimi Serrano

YEAR: 1

PREPARED BY: Katina Uribe

TERM: 221 Weeks

Program Approved:  JW _____ RF _____

**MAILED**
1-6-03

CONTRACT
START DATE:   September 2003

BARTER (M-F)                          BARTER (Weekend)
SPLIT:   5.5  minutes (Station)      SPLIT:   3.5   minutes (Station)
          1.5  minutes (CTDT)                   3.5   minutes (CTDT)

Time Period: (Time Periods are inclusive)

First Daily Telecast:    Monday – Friday      5 pm to 7 pm    OR     9 pm to 12 am **YEAR 1**
                         Monday – Friday      5 pm to 7 pm    OR     9 pm to 1 am  **YEAR 2**
                         Monday – Friday      8 am to 2 am    **YEAR 3 & beyond**

Second Daily Telecast: Monday – Friday        9 am to  2 am  *(OPTIONAL FOR YEARS 1 & 2)*

First Weekend Telecast: Saturday/Sunday       11 am to 1 am

Second Weekend Telecast: Saturday/Sunday      11 am to 1 am

Other Provisions:    _____

_____

_____

_____

32327

King of Queens
Offer Form/Internal
Page 2


WEEKLY LICENSE FEE: $8,950_____        TOTAL LICENSE FEE: $1,977,950___

10% down payment:   N/A____

Fifty-one (51) consecutive monthly payments commencing September 2003:


    MONTHLY PAYMENT: 38,783.33         FINAL PAYMENT: $38,783.50_____


Other:        no down payment; no increase for extended term, promo guarantee for

              minimum one (1) 30-second spot in ½ hour preceding telecast._____


LICENSEE:     Acme Television Holdings_____

              4935 Lindell Blvd._____

              St. Louis, MO  63108_____

              Phone No.  (314) 367-7211          Fax No. (314) 454-6433_____


PERSON AND TITLE WITH WHOM NEGOTIATIONS WERE CONDUCTED: Bob Shaw, VP_____

| For Sales Operations Use Only | | | |
|---|---|---|---|
| Admin: | Contract # | Stn Info: | Promo: |

H: King of Queens.OH_2002.doc

# Exhibit 2



**SONY**
PICTURES
TELEVISION

10202 West Washington Boulevard
Culver City, California 90232-3195

Tel: 310 244 4000 Fax: 310 244 2270

August 12, 2004

Wendy Logsdon
Group Program Director
KPLR, Inc.,
    successor-in-interest to ACME Television Holdings, Inc.
6910 Network Place
Indianapolis, IN 46278

RE:    KING OF QUEENS
        Contract No. 32327
        St. Louis, MO

Dear Ms. Logsdon:

Sony Pictures Television Inc. ("Sony") hereby confirms its acceptance of Tribune as Licensee for this programming. As Sony has delivered the programming to Tribune since the contract start date on September 15, 2003, and Tribune has telecast that programming as delivered, it is Sony's position that Sony and Tribune have each ratified and confirmed the terms of the Agreement in all respects.

Please be advised that twenty-four (24) additional episodes of *King of Queens* will be available September 13, 2004 for telecast in accordance with the terms and conditions set forth in the above-referenced contract.

Your station will be paying for thirty-nine (39) additional weeks at $8,950.00 per week for a total of $349,050.00 to be paid in nine (9) installments of $38,783.33 commencing 30 days after the final invoice as identified in the Agreement for the Initial License Term.

The term of your contract has been extended by thirty-nine (39) weeks and will now terminate on September 7, 2008.

If you have any questions, please do not hesitate to contact us. Thank you for your cooperation.

Sincerely,

Rose Lee
Contract Coordinator
Syndication Contracts

Kimi Serrano
Steve Maddox
John Weiser

*a Sony Pictures Entertainment company*
*www.sonypicturestelevision.com*

# Exhibit 3



**SONY**
PICTURES
TELEVISION

10202 West Washington Boulevard
Culver City, California 90232-3195

Tel: 310 244 4000  Fax: 310 244 2270

May 26, 2006

Wendy Logsdon
Group Program Director
KPLR/KPLR, Inc.
c/o WXIN
6910 Network Place
Indianapolis, IN 46278

RE:    KING OF QUEENS
        Contract No. 32327
        St. Louis, MO

Dear Ms. Logsdon:

Please be advised that twenty-two (22) additional episodes of *King of Queens* will be available
September 11, 2006 for telecast in accordance with the terms and conditions set forth in the above-
referenced contract.

Your station will be paying for thirty-nine (39) additional weeks at $8,950.00 per week for a total of
$349,050.00 to be paid in nine (9) installments of $38,783.33 commencing 30 days after the final invoice
as identified in the Agreement for the Initial License Term.

The term of your contract has been extended by thirty-nine (39) weeks and will now terminate on
March 7, 2010.

If you have any questions, please do not hesitate to contact us.  Thank you for your cooperation.

Sincerely,

Troy Savoie
Contract Coordinator
Sales Administration

Cc:  Kimi Serrano, Steve Maddox

1

# Exhibit 4



**SONY**
**PICTURES**
**TELEVISION**

10202 West Washington Boulevard
Culver City, California 90232-3195

Tel: 310 244 4000  Fax: 310 244 2626

February 2, 2007

Wendy Logsdon
Group Program Director
KPLR/KPLR, Inc.
c/o WXIN
69 10 Network Place
Indianapolis, IN 46278

RE:    KING OF QUEENS
       Contract No. 32327
       St. Louis, MO

Dear Ms. Logsdon:

Please be advised that thirteen (13) additional episodes of *King of Queens* will be available September 10, 2007 for telecast in accordance with the terms and conditions set forth in the above-referenced contract.

Your station will be paying for thirty-nine (39) additional weeks at $8,950.00 per week for a total of $349,050.00 to be paid in nine (9) installments of $38,783.33 commencing 30 days after the final invoice as identified in the Agreement for the Initial License Term.

The term of your contract has been extended by thirty-nine (39) weeks and will now terminate on December 5, 2010.

If you have any questions, please do not hesitate to contact us. Thank you for your cooperation.

Sincerely,

Ananya Roy
Sales Administration

Cc: Steve Maddox

a Sony Pictures Entertainment company
www.sonypicturestelevision.com

# Exhibit 5

Sony Pictures Television

## Offer Form #18198

Created 6/5/2007 by Tresha Marshall

Close Windo

| | |
|---|---|
| Date | 6/5/2007 |
| Market & Primary Station | **St. Louis, MO, KPLR** |
| LMA Stations | N/A |
| Duopoly Stations | N/A |
| Other Stations | N/A |
| Station Group | Tribune Broadcasting |
| Licensee | KPLR, INC. |
| Deal Type | Cash |
| Library Product/Miscellaneous Feature | **THREE STOOGES/COLOR** |
| Sales Person | Phil Martzolf |
| Submitted By | Gustavo Chavez |
| Deal Negotiated With | Wendy Logsdon |
| Will Air On | |

Deal Notifications:

| Start Date | End Date | Features/ Episodes | Fees per Feature/ Episode | Total Lic. Fee | Down Payment | Installments | Last Monthly Payment | Starting | Monthly Payment |
|---|---|---|---|---|---|---|---|---|---|
| 6/1/2007 | 5/31/2008 | 130 | $93.75 | $12,187.50 | $0.00 | 0 | $0.00 | 6/1/2007 | $0.00 |

| | |
|---|---|
| Ratings Provisions | - |
| Licensee | KPLR, INC. |
| Other Provisions | Station pays shipping both ways |
| Signed Offer Letter Document | offerletter.tif |
| Approvals | Jeffrey Wolf(06/27/2007 04:06:42 PM.:""); |
| Status | Approved |
| Submitted By | Michelle Boudart |

Close Window

368 36



JUN-07-2007 11:54 From:                                    To:13103620410        P.1/3

JUN 05-2007 16:07 From:                    To:CLEARENGHOUSE   I R FAX P.2/4



**SONY**
**PICTURES**
TELEVISION

### TELEVISION STATION'S
### CASH
### SERIES OFFER

DATE: _6/5/07_

STATION: KPLR

MARKET: St. Louis

SALESPERSON: _Merkert_

PRODUCT NAME: _The Three Stooges- Color_

PREPARED BY: _Boudart_

Approved: JW ⟨signature⟩ RF ⟨signature⟩

NUMBER OF EPISODES: 130          NUMBER OF RUNS: 1

CONTRACT
START DATE: _6/1/07_          ENDING: _5/31/08_

Is contract start date an ON or BEFORE?    YES/NO

PRICE PER EPISODE: _$93.75_

TOTAL LICENSE FEE: _$12,187.50_

PAYMENTS:

    DOWN PAYMENT:    0

    NO. OF MONTHLY
    INSTALLMENTS:    _12_

    MONTHLY INSTALLMENTS: _$1,015. 69_   FINAL INSTALLMENT: _$1,016.37_

    PAYMENT START DATE:    _6/1/07_

    *Station pays shipping both ways

    Is payment start date an ON or BEFORE?    YES/NO

Cash Series Offer
Page 2

LICENSEE.    KPLR, Inc.

2250 Ball Drive

St. Louis, MO

Phone No. (314) 447-1111

PERSON AND TITLE WITH WHOM NEGOTIATIONS CONDUCTED: Wendy Logsdon

OTHER PROVISIONS: _____ _____ ____ ____

__ __ __ _  _____ _____  _____  _____

No additional telecasts of Episode(s) are permitted. If Licensee telecasts an Episode more than the number of times permitted by this Agreement, Licensee will he liable for any and all costs and damages resulting from such unauthorized telecasts, including, but not limited to, additional residual payments incurred by Distributor

Licensee shall supply Distributor with signed and dated usage reports listing dates and titles of each of the Picture(s) aired.* ~~These usage reports shall be mail to Distributor thirty (30) days following each calendar month of the term hereof as to the Episode(s) telecast during each calendar month.  In the event usage reports are not returned by Licensee on a timely basis, I.e., thirty (30) days following each calendar month of~~ the term hereof. Licensee will be in default of this license agreement. * upon request

Distributor shall deliver the Episodes to Licensee on videotape.  The Episodes shall be delivered no later than forty-eight (48) hours prior to the first broadcast of each Episode.  Distributor will determine method of shipment unless otherwise specified by Licensee, charges collect  Licensee shall return the Episodes to Distributor or Distributor's designee.  Shipment shall be according to Distributor's Instructions, charges prepaid.  Licensee agrees to pay shipping both ways.

Licensee will book from Distributor's tapes and dub to Licensee's own stock with a one-time-only free booking.  Licensee will retain said copies only for the limited purpose of effecting such telecasts during the term hereof.  Distributor shall retain title to all such retained copies.  At the expiration of the term of the license granted hereunder, for each Episode for which Licensee has custody of a retained copy, Licensee shall erase the tapes and furnish satisfactory proof of erasure to Distributor, upon request.

JUN-07-2007 11:54 From:                                    To:13103620410          P.3/3

JUN-05-2007 15:04 From:                                    To:1310563451CHE  P.4/4

Cash Series Offer
Page 3

Licensee understands that Distributor reserves the right, in its sole discretion, to accept or reject this offer for any reason whatsoever and may, in addition to this offer, require Licensee to provide financial documents or other evidence of creditworthiness in form and substance satisfactory to Distributor.

Licensee understands that the Program is licensed on a non-exclusive basis. In addition, Distributor shall have the right, upon thirty (30) days' prior notice, to terminate the Agreement and recapture the Program. In no event shall Distributor exercise said right for the purposes of relicensing the Program to another local broadcast station in the Market.

This offer is subject to approval by an executive officer of Sony Pictures Television Inc. ("Distributor"). When this offer is approved by Distributor, it shall then constitute the entire valid and binding agreement. Distributor shall be under no obligation to deliver the Program to licensee until such time as this offer is fully executed by Distributor.

AGREED AND ACCEPTED:

KPLR
STATION CALL LETTERS

By: _Lindsey Rogerson_

Title _Group Program Director_

Date: _6·6·07_

SONY PICTURES TELEVISION INC.
A unit of Sony Pictures Entertainment Inc.

By: _____
Richard Frankie
Executive Vice President,
Business Operations

Date: _11/20/07_

All Materials & Other Terms Confirmed 2007 AM]

Amendment to
LH 36636
(Dated 1/16/08)

```
Page: 1 Document Name: untitled

OVCH52A                           T I G R E S                        DATE: 03/17/09
DIV. KOTV                    CONTRACT HEADER INFORMATION               SCRN: CHDR
CMT. NO                                                                GOTO: DSEL
COMPANY:     5201 SONY PICTURES TELEVISION, INC.  CONTRACT NO:   03735200 TYPE: OC
TERRITORY:        U.S.A.                          CONTRACT DATE: 12 17 07 CYCLE 10
                                                  REBILL: N REBILL TYPE: _
CUSTOMER/STATION:                    STATUS: C CONFIRMED
SHORT NAME: KPLR           OR #: 04540 OR NAME: KPLR, INC.
MARKET:     ST. LOUIS, MO  RANK: 021     GROUP: TRIBUNE BROADCASTING

SERIES/FEATURE PACKAGE:    SALES GROUP: SYND       VENTANA ID:      86646
SHORT NAME: 3 STOOGES-COLOR #: S0655000 OR NAME: THREE STOOGES/COLOR
ADD EPS: N   MAX SEASON:      EPS INC%:        PRICE:
SINDEX: N FOREIGN LANG: N  RECAP CODE: N    OPTIONS: N    SATELLITE: N
REFERENCE: 03683600        SEND CONT: C    BILL TO: B
RESID MKT:                 POSTING COMPANY: 5201
   LICENSEE NAME               CITY          ST    ATTENTION
(B) ACME TELEVISION, LLC      ST. LOUIS      MO  SUE BURKE
(C) KPLR, INC.                INDIANAPOLIS   IN  WENDY LOGSDON, GRP  P
(M) KPLR-TV                   ST. LOUIS      MO  GWEN MOORE
(S) KPLR-TV                   ST. LOUIS      MO  GWEN MOORE
(T) KOPLAR COMMUNICATIONS,INC. ST. LOUIS     MO
PLEASE ENTER REQUIRED INFORMATION, PRESS ENTER TO VALIDATE...
PF2=PRV ADR PF3=NXT ADR PF4=START PF5=PRV CNT PF6=NXT CNT PF7=COMMENTS PF9=POST
```

Date: 3/17/2009 Time: 11:17:14 AM

Page: 1 Document Name: untitled

```
QVCM53A                        T I G R E S                    DATE: 03/17/09
 DIV. KOTV                    DEAL SELECTION                   SCRN: DSEL
                                                              GOTO: DHDR
STATION: KPLR            CONTRACT TYPE: OC NO: 03735200   START DATE: 06/01/08
MARKET:  ST. LOUIS, MO   PRODUCT GROUP: 3  STOOGES-COLOR  EXPIRATION: 06/05/10
```

| NO | ------DEAL------ TYPE | DATE | PRICE/PRODUCT | NO PROD | TOT LICENSE FEE | TERMS YRS | MOS | CUST ALLOC | IN- CMP |
|----|------|----------|--------------|------|------------|-----|-----|------|-----|
| 1 | ORIG | 12/17/07 | 93.75 | 130 | 12,187.50 | 2 | 0 | N | C |
| 2 | OR01 | 12/17/07 | 106.25 | 130 | 13,812.50 | 2 | 0 | N | C |

```
                    CONTRACT TOTALS:     260         26,000.00

DEAL SELECTION: ___ FUNCTION: C (A=ADD, C=CHANGE, D=DELETE)
COPY DEAL FROM: ___ TO: ___

PLEASE SELECT A DEAL NUMBER AND FUNCTION...
ENTER=VER/SEL  PF2=PREV  PF3=NEXT  PF8=GOTO  PF10="GOTO" SELECTIONS  PF9=POST
```

Date: 3/17/2009 Time: 11:17:23 AM

# Exhibit 6



**SONY**
PICTURES
TELEVISION

550 Madison Avenue
New York, New York 10022

Tel: 212 833 8000  Fax: 212 833 4150

January 16, 2008

Ms. Wendy Logsdon
Regional Program Director
KPLR/KPLR, Inc.
6910 Network Place
Indianapolis, IN  46278

RE: AMENDMENT:  KPLR / St. Louis, MO
　　　　THE THREE STOOGES (COLOR), Contract No. 36836

The above-referenced Agreement (the "Agreement"), between Sony Pictures Television Inc. ("Distributor") and KPLR, Inc. ("Licensee"), dated June 5, 2007, for "THE THREE STOOGES" ("the Program"), is hereby amended as follows:

　The Term of the Agreement is hereby extended, and the termination date of the Agreement shall now be June 5, 2010, or on the day following the last telecast authorized in the Agreement, whichever is earlier.

　During the Term of the Agreement, as extended herein, Licensee may broadcast two (2) additional telecasts of each of the one hundred and thirty (130) half-hour episodes of the Program.

　Licensee shall pay Distributor an additional License Fee of $200.00 per episode, for a total additional License Fee of $26,000.00, to be paid in twenty-four (24) consecutive monthly installments (23 installments of $1,083.33, with a final installment of $1,083.41), commencing on June 1, 2008.

Except as specifically modified herein, the Agreement is not otherwise modified in any respect, and the Agreement, as amended herein, is hereby ratified and confirmed in all respects.

KPLR, INC.

By: _Wendy Logsdon_

Title: _Group Program Director_

Date: _1-23-08_

SONY PICTURES TELEVISION INC.
A unit of Sony Pictures Entertainment Inc.

By: _____
　　Richard Frankie
　　Executive Vice President, Business Operations

Date: _2/21/08_

a Sony Pictures Entertainment company
www.sonypictures.com

# Exhibit 7



**SONY**
**PICTURES**
**TELEVISION**

TERMS AND CONDITIONS OF THE OFFER FROM

### TRIBUNE TELEVISION COMPANY
(COMPANY)
KPLR
(STATION)
St. Louis
(DESIGNATED MARKET AREA)

For the Distribution Broadcast Rights to the
Sony Pictures Television Inc. Series

### JUDGE KAREN
(2008/09)

The following sets forth the terms and conditions of an offer (the "Agreement") to **SONY PICTURES TELEVISION INC.** ("Distributor") from the above-named company ("Licensee") with regard to the licensing of Distributor's first-run, one-half (1/2) hour syndicated television series entitled **"JUDGE KAREN"** (the "Program") in the above-named market for the 2008/09 broadcast year.

This offer is subject to Distributor's release and distribution of the Program nationwide on a market-by-market basis, and further subject to those additional provisions as are contained in Distributor's standard series contract and Distributor's Standard Terms and Conditions, copies of which are available on request, which may be fully set forth in a long-form contract incorporating said Standard Terms and Conditions **[See I. of Rider A. attached].**

1.    Availability Date

      September, 2008

2.    License Term

      Distributor will license to Licensee fifty-two (52) weeks (the "License Term") of the Program (the "Episodes"). The Licensee shall be obligated to broadcast the Program on a Monday through Friday basis, two (2) Episodes per day, (i.e., ten [10] Episodes per week [the "Telecasts"]) solely over the primary broadcast signal of the facilities of station(s) KPLR. The channel designation(s) is (are) 11 and the network affiliation is (are) CWN.

**10202 WEST WASHINGTON BOUELVARD, CULVER CITY, CA 90232-3195**
**(310) 244-5013   FAX (310) 362-0410**

Judge Karen
Offer Form 2008-2009
Page 2

In the event that Episodes of the Program are not produced due to production, distribution or other problems, then neither Licensee nor Distributor shall have any further obligation with regard to Episodes not produced and distributed. Licensee acknowledges that Distributor shall have the right to license the Program to a national cable/satellite programming service. In addition, Licensee acknowledges that Distributor shall have the right to license the audio broadcasts of the Program. Licensee telecast rights shall be exclusive to linear free broadcast television only.

3.    Licence Fee and Payment

2008 – 2009

The license fee will be $ $500 per week for 52 weeks.

Payable in twelve (12) equal consecutive monthly installments per each broadcast year, with the first installment commencing on September 1, 2008.

4.    Time Period Commitment and Promotional Commitment:  52 Weeks (Time Periods are inclusive.)

| First Daily Telecast: | Monday - Friday | 8:00am to 6:00pm |
| Second Daily Telecast: | Monday - Friday | 8:00am to 6:00pm |

~~Distributor will supply promotional and advertising materials and Licensee agrees, as a material provision of the Agreement, to promote the Program by giving it local advertising support including, without limitation, appropriate newspaper and TV Guide print promotion support. Licensee agrees to further provide, as a minimum, 50 G.R.P.s per week of on-air promotional support and one (1) thirty-second (:30) spot in the half hour immediately preceding each Telecast of the Program for each day during which Episodes are scheduled for broadcast. Licensee agrees said on-air promotional support is a material provision of this Agreement.~~ **[See II. of Rider A. attached].**

Licensee shall be obligated to notify Distributor of the two (2) one-half (½) hour time periods (the "Designated Time Period") within the Time Period Commitment(s) set forth herein in which Licensee shall broadcast the Program at the commencement of the License Term. Licensee shall have the option to change the Designated Time Period within the Time Period Commitment(s) set forth herein. Licensee shall be obligated to give Distributor ~~forty-five (45) days' prior written~~ **[See III. of Rider A. attached]** notice before implementing said change. Notwithstanding the foregoing, Licensee shall not have the option to change the Designated Time Period during any of the four national Nielsen ratings periods (i.e., the exact weeks as determined by Nielsen Media Research for the November, February, May and July ratings periods).

It is of the essence of the Agreement that Licensee broadcasts the Program in the time periods indicated above except in the event of a valid preemption or prevention as set forth in Paragraph 6. In the event Licensee breaches this obligation or any other obligation as set forth in the Agreement (which Licensee agrees and acknowledges that such obligations are special and unique) and notwithstanding the payment of any required license fees, Distributor shall be entitled **[See IV. or Rider A. attached]** to equitable remedies (including, without limitations, injunctive relief) requiring Licensee to broadcast the Program within the Time Period Commitments indicated above.

Judge Karen
Offer Form 2008-2009
Page 3

5.    Licensee Broadcast Obligation

Each half-hour telecast of the Program will contain 7 minutes of commercial time, with 5 ½ minutes to be sold by Licensee and 1 ½ minutes to be retained and sold by Distributor. In addition, Distributor may insert billboards, fee spots and/or closed-captioned sponsor announcements. Commencing on the Availability Date and continuing through the License Term, Licensee agrees to broadcast and, subject only to Paragraph 12 of the Standard Terms and Conditions **[See V. of Rider A. attached]**, to make good any preempted or prevented Telecast in accordance with paragraph 5(b)(i) below. Licensee agrees that it shall not broadcast more than two (2) Telecasts of the Program per day during each week except in situations where Licensee broadcasts the Program pursuant to paragraph 5(b)(i) hereinbelow.

During each such week, Licensee shall broadcast each of the Episodes designated by Distributor for broadcast during such week on each of the particular broadcast days in the order designated by Distributor for each Episode during such week, it being understood that Distributor shall determine in its sole discretion the sequence of Episodes broadcast (including, without limitation, whether and in what order any Episode broadcast hereunder shall be rebroadcast and the number of times each Episode shall be so rebroadcast). Licensee shall broadcast each Episode exactly as delivered by Distributor and without deletion or change in such Episode or in the commercials furnished by Distributor, except that Licensee may add its commercial matter solely in the commercial positions provided by Distributor **[See VI. of Rider A. attached]**. Licensee agrees to provide TVData, or any other similar service designated by Distributor, with any and all information regarding Licensee's broadcast of the Episodes requested by such service. If Distributor so requests at any time, Licensee shall supply Distributor with a usage report for the portion of the License Term indicated by Distributor, confirming that each Episode (listed by episode number and episode title) and Distributor's commercials therein (listed by commercial i.d. number) were actually broadcast as required herein and the respective date(s) of such Telecast(s), certified as correct by an officer of Licensee. Licensee further agrees **[See VII. of Rider A. attached]** that within each commercial pod none of Licensee's commercials will be for products or services competitive with products or services of Distributor's commercials. Licensee agrees not to add any commercial time beyond the allotted time allowed herein.

While Distributor recognizes Licensee's responsibility as a broadcast licensee to schedule its programming and to determine the content of its programming and advertising matter, the Licensee Broadcast Obligation herein is of the essence of the Agreement and failure by Licensee to meet said Licensee Broadcast Obligation shall entitle Distributor to exercise its rights pursuant to Paragraph 14 of the Standard Terms and Conditions **[See VIII. of Rider A. attached]** and/or any other remedies in law or at equity, including without limitation, the issuance of an injunction mandating the broadcast of the Program in accordance with this Agreement.

6.    Preemption/Prevention

Broadcast of any Telecast may be preempted for the presentation of a news event or a non-regularly scheduled program of national/local importance or a live sports event. Failure to make good any preempted or prevented Telecast shall be deemed to be a material default by Licensee unless (a) Licensee shall notify Distributor in writing of such failure by internet at www.SonyPicturesTelevision.com, by electronic mail (e-mail) at preemption@spe.sony.com or by facsimile to (310) 244-5359 on or before seven (7) business days prior to such preemption for a non-regularly scheduled program of national/local importance or a live sports event or on or before forty-eight (48) hours after a news event and of the reasons therefor; and (b) within seven (7) days of the originally scheduled Telecast which was preempted or prevented ("Make Good Period"), Licensee shall make good such preempted or prevented Telecast (the "Make Good Broadcast") by: (i) broadcasting such preempted or prevented Telecast in its entirety (including Distributor's commercials) in a comparable or better time period or; (ii) including the commercial inventory of Distributor contained in such preempted or prevented Telecast in

Judge Karen
Offer Form 2008-2009
Page 4

regularly scheduled broadcast(s) of other Telecast(s) of the Program during the Make Good Period provided, however, that if Licensee shall fail to comply with the requirements of this sentence due to an event or events of force majeure, affecting Licensee or Distributor, the provisions of Paragraph 12 of the Standard Terms and Conditions [**See IX. of Rider A. attached**] shall apply.

7.    Delivery

Delivery shall be by such technological means as Distributor may determine with Licensee bearing the responsibility of receiving the signal. In the event Licensee does not receive the feed(s) provided by Distributor, then Licensee shall request additional delivery by Distributor, and Distributor shall provide either an additional feed or delivery by videocassette, at Distributor's election. In either event, the cost thereof shall be the responsibility of the Licensee.

8.    Additional Provisions

Distributor shall have the right to terminate the Agreement and recapture the Program to be re-licensed in Licensee's television market at any time during the License Term of the Agreement if either of the following events occur: i) Licensee should change its affiliation status; or ii) Licensee's broadcast channel designation should change, except for channel allocation associated with conversion to digital television. In consideration thereof, Distributor shall give Licensee prior written notice before exercising said right.

**\* option to renew for the 2009/2010 for +5% ($525) to be executed by November 30, 2008**

ADDITIONAL BROADCAST RIGHTS: See Riders B and C attached hereto.

Licensee understands that Distributor reserves the right, in its sole discretion, to accept or reject this offer for any reason whatsoever and may, in addition to this offer, require Licensee to provide financial documents or other evidence of creditworthiness in form and substance satisfactory to Distributor.

This offer is subject to acceptance by an executive officer of Distributor. When the terms of this offer are accepted, it shall constitute a valid and binding agreement. Distributor shall be under no obligation to deliver the Program to Licensee until such time as this offer is fully executed by Distributor.

AGREED AND ACCEPTED:

K P L R ᐧTV
STATION CALL LETTERS

SONY PICTURES TELEVISION INC.
A unit of Sony Pictures Entertainment Inc.

By: _Wendy Logsdon_

By: _____
Richard Frankie
Executive Vice President,
Business Operations

Title: _Group Program Director_

Date: _12-10-07_

Date: _2/4/08_

C:\TEMP\notes3C72B0\Judge Karen 2008-2009 Tribune Template.doc

Judge Karen
Offer Form 2008-2009
Page 5


## Rider A

This Rider A is attached to and made a part of that certain offer (the "Agreement"), between SONY PICTURES TELEVISION INC. ("Distributor") and TRIBUNE TELEVISION COMPANY. ("Licensee") in connection with the syndicated television series "Judge Karen" (the "Program"). Unless otherwise expressly defined hereunder, all capitalized terms used herein shall have the same definition as provided for within the Agreement.

I.       The aforementioned Standard Terms and Conditions shall be subject to good faith negotiations between Distributor and Licensee.

II.      The promotional provision is subject to good faith negotiations; however, at a minimum Distributor will supply promotional and advertising materials and Licensee agrees to use its best efforts promote the Program. Licensee agrees said promotional support is a material provision of the Agreement.

III.     a minimum of Fourteen (14) days', unless mutually agreed upon, prior notice via facsimile to (310) 244-5359.

IV.      seek

V.       and which are subject to good faith negotiations between Distributor and Licensee,

VI.      Notwithstanding the foregoing, Distributor agrees that the Episode(s) shall be subject to Licensee's broadcast standards and practices, which standards and practices shall be consistent with the broadcast standards of other television stations which are located in the community to which the Licensee is licensed by the FCC. If an Episode is determined to not be in conformance with such broadcast standards as described herein above, then the Station shall so notify Distributor. Distributor shall then have the right to edit the Episode(s) in order to make the Episode(s) conform with said broadcast standards and practices (which editing shall be completed in a timely manner) or to allow the Station to so edit the Episode(s); however, to the extent reasonably possible, the editing of the Episode(s) shall not affect the artistic or pictorial quality the Episode(s) nor shall it materially interfere with its continuity

VII.     to use its best efforts to ensure

VIII.    which are subject to good faith negotiations between Distributor and Licensee

IX.      , which are subject to good faith negotiations between Distributor and Licensee,

C:\TEMP\notes3C72B0\Judge Karen 2008-2009 Tribune Template.doc