## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., [1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## APPLICATION FOR AN ORDER AUTHORIZING
## DEBTORS TO RETAIN AND EMPLOY MERCER (US) INC.
## AS COMPENSATION CONSULTANT TO THE DEBTORS PURSUANT
## TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO JANUARY 12, 2009

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively the "Debtors") hereby apply to the Court for the entry of an

order authorizing them to retain and employ Mercer (US) Inc. ("Mercer") as compensation

consultant to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Debtors: (i)

submit the Declaration of John Dempsey, a principal of Mercer (the "Dempsey Declaration"),

which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully

represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the

appointment of a trustee or examiner.

3.      On December 18, 2008, the Office of the United States Trustee appointed

an official committee of unsecured creditors in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought

herein is section 327(a) of the Bankruptcy Code.

## RELIEF REQUESTED

5.      The Debtors desire to retain and employ Mercer as compensation consultant in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to January 12, 2009.  The circumstances of the nunc pro tunc nature of Mercer's retention are described at paragraphs 14-16, below.  The precise terms and scope of Mercer's services are set forth in an engagement letter entered into by the Debtors and Mercer dated as of March 3, 2009 (the "Engagement Letter"), a copy of which is attached to this Application as Exhibit B.  In summary, the Debtors anticipate that Mercer will analyze proposed management compensation payments and arrangements and assist and advise the Debtors, under the leadership of the compensation committee of Tribune Company's board of directors, in developing a management compensation program that aligns the interests of the Debtors, their key employees, and their creditors.  The Debtors now seek authority to employ Mercer in these cases on the terms and subject to the conditions described below and in the Engagement Letter.

6.      Mercer is a consulting firm focused on providing human resource consulting and related outsourcing and investment services.  Mercer routinely advises large corporate clients on all aspects of their businesses.  Of relevance to the Debtors' circumstances, Mercer has considerable experience providing compensation planning and advisory services to businesses in a chapter 11 environment.  Specifically, Mercer has been employed to perform compensation-related analysis and services in numerous cases under the Bankruptcy Code, including the chapter 11 cases of Nortel Networks, Inc., Adelphia Communications, Dana Corporation, Owens Corning, Kaiser Aluminum Corporation, Solutia, Oglebay Norton, Citation

Corp., Intermet Corp., Venture Industries, Alterra, EaglePicher, Allied Holdings, and many

others.. See Dempsey Declaration at ¶ 3.

> 7.    The Debtors anticipate that Mercer will render services to the Debtors as

needed throughout the course of these chapter 11 cases.  General descriptions of the types of

services that the Debtors anticipate that Mercer will render are set forth in the Engagement

Letter.  In particular, the Debtors anticipate that Mercer will perform, among others, the

following services:[2]

> > (a) Conducting an assessment and making recommendations to the Debtors concerning various current and/or proposed incentive or other compensation programs as requested, including without limitation the 2008 Management Incentive Plan (the "2008 MIP"), the 2009 Management Incentive Plan (the "2009 MIP") and other potential long term incentive plans;
> >
> > (b) Participating, when requested, in discussions between the Debtors, their creditors constituencies, and the United States Trustee, among other things, to explain the purposes and terms of applicable compensation programs and provide the results of Mercer's analysis of same; and
> >
> > (c) If requested, provide testimony regarding Mercer's findings, conclusions and recommendations, as applicable, including without limitation, at any deposition or hearing held in connection with the Debtors' restructuring, confirmation of a plan of reorganization, or in connection with proceedings to approve any particular compensation program(s) and payments during the pendency of the Debtors' chapter 11 cases.

> 8.    The Debtors' management has determined that the Debtors require the

above-listed services in order to operate their businesses effectively and create a compensation

plan that is both competitive and appropriate to the Debtors' circumstances.  As noted above,

---

[2] This summary is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

Mercer has substantial expertise in working with businesses in a chapter 11 environment, and is well qualified to perform these services and assist the Debtors in these chapter 11 cases.

9.    Mercer's services as compensation planning advisors do not duplicate those provided to the Debtors by any of the Debtors' other professionals, nor are they duplicative of any in-house services available to the Debtors.  The Debtors will monitor Mercer's services to ensure that all parties make every reasonable effort to avoid any duplication that might arise between the services provided by Mercer and the services provided by all other professionals employed by the Debtors.

10.    Pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, the Debtors are advised that Mercer intends to (a) seek compensation for the Engagement Letter on an hourly basis in accordance with its ordinary rates in effect on the date services are rendered; [3] and (b) charge on a monthly basis for its reasonable out-of-pocket expenses.  Mercer intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, as described below.

11.    Pursuant to the terms of the Engagement Letter, the Debtors have agreed to indemnify Mercer and their respective officers, directors, employees and Affiliates (as defined in the Engagement Letter) (collectively, the "Mercer Parties") from any Loss (as defined in the Engagement Letter) in connection with the Services, the Engagement Letter or the acts or

---

[3] John Dempsey, the principal who will be responsible for these matters, currently has an hourly billing rate of $750. He may be assisted by various Senior Associate, Associates and Analysts, whose current rates per hour range from $400 to $500; $200 to $400 and $150 to $250, respectively.  All of Mercer's rates are subject to periodic adjustments.

omissions of any third party (other than Mercer's subcontractors, if any), except to the extent it is finally determined to have directly resulted from the negligence, fraud, or bad faith conducted by any Mercer Party. The Debtors further agreed that in no event shall the Debtors or any of the Mercer Parties be liable in connection with the Engagement Letter or the Services for any loss of profit or incidental, consequential, special, indirect, punitive or similar damages.

12. Consistent with the prevailing standards for retention of professionals in chapter 11 cases in the Third Circuit, however, the Debtors request (and Mercer agrees) that the order approving Mercer's retention provide that notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Mercer's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order.

13. In addition, and again in recognition of the prevailing standards and requirements for the retention of professionals in chapter 11 cases, the Debtors request (and Mercer agrees) that notwithstanding any contrary provisions in the Engagement Letter, all of

Mercer's fees and expenses in these cases will be subject to approval of the Court upon proper application by Mercer in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee (the "U.S. Trustee"), the Interim Compensation Order and the Fee Examiner Order entered by the Bankruptcy Court in the Debtors' chapter 11 cases [Docket Nos. 225 and 546] and any other applicable requirements.

14.    Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Additionally, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries that set forth, among other things:  a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue.  However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause. The Debtors submit that the requirements of Local Rule 2016-2(d) should be tailored to the nature of Mercer's engagement and its compensation structure.

15.    Mercer has advised the Debtors that Mercer's billing system software is unable to record Mercer's professionals' time in tenths of an hour increments and respectively requested a waiver from having to maintain contemporaneous time descriptions in time periods of tenths of an hour.  The Debtors therefore request that, should this Court approve Mercer's retention, Mercer be authorized to report the time incurred by Mercer's professionals in quarter of an hour increments.  The Debtors submit that given the nature of the services to be provided by Mercer, such billing formats and associated time details will be sufficient for the Debtors and

other parties-in-interest to make an informed judgment regarding the nature and appropriateness of Mercer's services and fees.  Accordingly, to the extent necessary based on the foregoing, the Debtors respectfully request that the information requirements set forth in Local Rule 2016-2(d) are hereby modified and waived, to the extent necessary, with respect to Mercer's services.

## **LEGAL AUTHORITY**

16.    The Debtors seek to retain Mercer pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to January 12, 2009, the point at which Mercer began providing compensation-related services to the Debtors.  It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002).  In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time pressure to begin service without approval; (2) the amount of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties.  In re Arkansas Co., Inc., 798 F.2d at 650.

17.    In January 2009, after commencement of the Debtors' chapter 11 cases, the Debtors approached Mercer about performing compensation-related services.  Specifically, the Debtors engaged Mercer to assist in applying the 2008 MIP, and developing the 2009 MIP. The Debtors and Mercer promptly began negotiating the terms of Mercer's Engagement Letter, however, in advance of completing the Engagement Letter in March 2009, it was necessary for Mercer to begin performing certain services on a limited basis in order to ensure the Debtors

could develop the 2009 MIP and prepare all necessary filings with the Bankruptcy Court to seek approval of that program.  As Mercer's engagement progressed, it became evident that Mercer would be required to provide the creditors' committee and/or other parties-in-interest in the Debtors' cases with certain information, and possibly present evidence to the Bankruptcy Court in connection with the compensation programs, at which point the Debtors concluded that it would be necessary to file this Application.  Furthermore, although Mercer commenced its services in January 2009, the Debtors were not yet in a position to file this Application as the terms of the Engagement Letter had not yet been agreed upon.

18.    As a result of the Debtors' request that Mercer commence its services immediately upon the Debtors approach in January 2009, Mercer incurred approximately $36,673 in fees during January 2009 and approximately $81,300 in fees in February 2009, which is slightly in excess of the maximum threshold previously approved by the Bankruptcy Court for ordinary course professionals in the Debtors' chapter 11 cases.  The Debtors accordingly believe that these amounts and Mercer's future compensation do not prejudice innocent third parties.  The Debtors therefore request that the Court approve Mercer's retention on a nunc pro tunc basis in order to cover the period in which those fees were incurred, as well as subsequent periods.

19.    The Debtors have considered whether to retain Mercer as an ordinary course professional in these chapter 11 cases, rather than submitting this Application.  The Debtors anticipate that Mercer's fees may fall below the ordinary course professional threshold once the Debtors' compensation and benefit plans that will be presented to the Court have been instituted.  However, because Mercer's fees in January and February 2009 slightly exceeded the $50,000 per month maximum currently applicable to the Debtors' ordinary course professionals,

and that Mercer has worked approximately another 100,000 hours in March 2009, the Debtors

believe that it is appropriate to submit this Application rather than seek to expand the scope of

what the Debtors have requested under the ordinary course professionals order.  Furthermore, it

is arguable that Mercer is not a professional as contemplated by section 327(a) of the Bankruptcy

Code given the nature of the services being provided by Mercer in these chapter 11 cases;

however, out of an abundance of caution, the Debtors have submitted this Application.

    20.  Section 327(a) of the Bankruptcy Code provides in relevant part that a

debtor in possession, with the Court's approval, may employ professionals (such as attorneys or

accountants) "that do not hold or represent an interest adverse to the estate," and that are

"disinterested persons."  11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949

F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr.

D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an

interest adverse to the estate' and must be a 'disinterested person.').  A "disinterested person" is

defined as one who does not have an interest materially adverse to the interest of the estate, by

reason of any direct or indirect relationship with the debtor, or for any other reason.  See 11

U.S.C. § 101(14)(e).

    21.  To the best of the Debtors' knowledge, information and belief, other than

in connection with these cases, Mercer has no connection with the Debtors, their creditors, the

U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or

their respective attorneys or accountants, except as set forth below or in the Dempsey

Declaration.  In particular:

     (a)    Mercer is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

     (b)    Mercer has agreed to waive all claims to any prepetition amounts owed by the Debtors to Mercer, whether filed by Mercer as a proof of claim or otherwise.

     (c)    From time to time, Mercer has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters unrelated to these chapter 11 cases. As described below, however, Mercer has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters.

     22.    To check and clear potential conflicts of interest in these cases, Mercer performed a conflicts search on the Debtors and other significant parties-in-interest (collectively, the "Interested Parties").[4] The identities of the Interested Parties were provided to Mercer by the Debtors and are set forth on Schedule 1 to the Dempsey Declaration. Mercer's research of its relationships with the Interested Parties indicated that Mercer was formerly employed by certain of the Interested Parties (or their apparent affiliates, as the case may be) for whom Mercer provided financial advisory and other similar services unrelated to the Debtors' cases. A summary of such parties that Mercer was able to locate as of the date of this Application using its reasonable efforts are listed on Schedule 2 to the Dempsey Declaration.

---

[4] As of the date of this Application, Mercer has completed its conflicts search for those Interested Parties identified by the Debtors and the results of that conflicts search are described in the Dempsey Declaration. In the event that Mercer subsequently discovers that a conflict search has not been completed for any of the Interested Parties or any subsequently identified party-in-interest, Mercer will promptly complete a conflict search on such parties and file a supplemental declaration in the event that completion of the search results in any additional disclosures in connection with their retention by the Debtors in these cases.

23.    Despite the efforts described above to identify and disclose Mercer's connections with parties in interest in these cases, because the Debtors and their non-debtor affiliates consist of approximately 130 entities with thousands of creditors and other relationships, Mercer is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Mercer discovers additional information that requires disclosure, Mercer will file a supplemental disclosure with the Court as promptly as possible.

24.    To the best of the Debtors' knowledge, information and belief, and as described in the Dempsey Declaration, Mercer neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Mercer is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.  For all of the reasons previously stated, the Debtors submit that the employment of Mercer would be in the best interests of the Debtors and their respective estates.  The Debtors' knowledge, information and belief regarding Mercer's disinterestedness are based, and made in reliance, upon the Dempsey Declaration.

## NOTICE

25.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Creditors Committee; (iii) counsel to the Steering Committee for the  Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; and (v) all parties having requested notice pursuant to

Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

    26.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto: (i) authorizing the Debtors to retain and employ Mercer as compensation consultant in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms and conditions described herein and in the Engagement Letter (as modified by the additional terms and conditions described herein and in the proposed order approving this Application), nunc pro tunc to January 12, 2009; and (ii) granting such other and further relief as the Court may deem proper.

Dated:  April 10, 2009

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)


 /s/ Don Lienbentritt                                                
Don Lienbentritt
Executive Vice President and General Counsel