**EXHIBIT B**

# MERCER

MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

**John Dempsey**

10 South Wacker Drive, Suite 1700
Chicago, IL 60606
312 902 7745  Fax 312 902 7626
john.dempsey@mercer.com
www.mercer.com

March 3, 2009

Ms. Mary A. Wilderotter
Chairman, Compensation Committee
The Tribune Company
6th Floor
435 North Michigan Ave.
Chicago, IL 60611

**Subject:** Compensation Advisor

Dear Ms. Wilderotter:

This cover letter and the terms and conditions attached hereto ("Agreement") together set forth the project terms of Mercer (US) Inc.'s ("Mercer" or "we") engagement as an outside compensation advisor to Tribune Company ("Tribune" or "Client") under the leadership of its Compensation Committee ("Committee"). The objective of the project is for Mercer to analyze proposed compensation payments and arrangements and develop a compensation program that will align the interests of Tribune, its key employees, and its creditors and provide a total compensation package that is competitive and appropriate under the circumstances, including in connection with the pending chapter 11 cases of Tribune and certain of its affiliates before the United States Bankruptcy Court for the District of Delaware. Mercer has extensive experience working with organizations undergoing restructuring, both in an out of court context and in bankruptcy.

Mercer bills on an hourly basis. I will be the primary Principal who will be assigned to this matter and my hourly billing rate is $725. Depending on the character of the work to be performed, we will use the assistance of other consultants to complete benchmarking, analysis and modeling who will be billed at the following hourly rates:

| Level | Rates |
|---|---|
| Senior Associate | $400 to $500 |
| Associate | $200 to $400 |
| Analyst | $150 to $250 |

Consulting. Outsourcing. Investments.

# MERCER


MARSH   MERCER   KROLL
GUY CARPENTER   OLIVER WYMAN

Page 2
March 2, 2009
Ms. Mary A. Wilderotter
Chairman, Compensation Committee
The Tribune Company

Costs for administrative support are included in the professional rates above. Direct expenses are billed in addition at cost. Mercer normally bills monthly in arrears. Mercer is happy to provide more specific fee estimates upon request.

We trust that this is responsive to your request for information. The services provided under this Agreement are governed by the terms and conditions attached. If you have any questions about these terms and conditions, please do not hesitate to call me. Otherwise, please indicate Tribune's intent to be bound by this Agreement by signing where indicated at the conclusion of the Agreement.

Sincerely,


John Dempsey


c:\docume~1\bgold\locals~1\temp\9\metasave\bankruptcy - comp consultant agrmt (sa comments 2-20-09).doc

# John Dempsey Credentials

## *PRESENT RESPONSIBILITIES*

John is a Principal based in Mercer's Chicago office. He has had extensive experience advising organizations undergoing major financial transitions including bankruptcies, IPOs, LBOs, and acquisitions on compensation issues. John designs annual and multi-year incentive programs, retention programs, change in control arrangements, and employment agreements.

## *EXPERIENCE*

John's recent bankruptcy related clients include Adelphia Communications (Creditors' Committee), Dana, Owens Corning, Kaiser Aluminum, Solutia, Olgebay Norton, Citation, Intermet, Venture Industries, Alterra, EaglePicher, Allied Holdings, Mesaba Aviation, and FLAG Telecom. In addition, John has worked with numerous clients seeking to avoid bankruptcy. He has also worked on restructuring issues with ABN AMRO, US Foodservice, Nortel Networks, Barrick Gold, Manulife, CareMark Rx, Archipelago, and Sky Financial.

John published an article entitled *Bankruptcy Blues: Retaining Key Employees During a Financial Crisis*, with Michael Siebenhaar in Workspan February 2002 and an update *The New Challenge of Chapter 11* with Elizabeth Stephens in August 2008. He is frequently quoted on issues relating to retention in such publications as HR Magazine, Cox News, and Atlanta Journal Constitution. In addition, he has been quoted in the Dallas Morning News, the Chicago Tribune, and the Milwaukee Journal Sentinel.

He has presented at the National Meeting of the Conference Board, the National Association of Stock Plan Professionals, and the National Center for Employee Ownership.

John has testified as an expert in connection with a renewal of the KERP of Owens Corning on September 8, 2004, the approval of Citation Corporation's KERP on November 4, 2004, the approval of Intermet Corporation's KERP on December 22, 2004, the approval of Venture Industries' KERP on March 10, 2005, and the approval of Allied Holdings KERP on October 11, 2005.

In addition, John's testimony was preferred and accepted in connection with the approval of EaglePicher's KERP on August 9, 2005

## *EDUCATION*

John joined Mercer in 1985 following his graduation from Yale University and has worked out of the Firm's offices in Cleveland, Chicago and London. He was awarded an MBA in 1992 from The Ohio State University, where he earned academic and leadership honors.

## Services

Mercer will perform the executive remuneration services as the parties mutually agree from time to time ("Services") which we expect generally will include (but which also may include additional services as requested by Tribune from time to time that are confirmed by the parties in writing):

1. Conducting an assessment and making recommendations to Client concerning various current and/or proposed Tribune incentive or other compensation programs as requested, including without limitation the 2008 Management Incentive Plan and the 2009 Management Incentive Plan;

2. Participating when requested in discussions between Tribune and creditor constituencies, including without limitation by explaining the purposes and terms of applicable compensation programs and providing the results of Mercer's analysis of same; and

3. If requested, providing truthful testimony regarding Mercer's findings, conclusions and recommendations, as applicable, including without limitation at any deposition or hearing held in connection with Tribune's restructuring plan confirmation or in connection with proceedings to approve any particular compensation program(s) and payments thereunder.

## Terms and Conditions Governing Engagement

*Our performance of the Services shall be subject to the following terms:*

1. **Payment Terms:**

    A. We will perform the Services in consideration of Tribune's payment of our compensation. Our compensation for the Services, such as professional fees, commissions or other amounts payable to us ("Compensation") is described generally on page 1 of this Agreement, and may be defined further and/or modified as otherwise agreed in one or more writings signed by both parties. In addition to our Compensation, we will also bill monthly for our reasonable expenses. Tribune will be responsible for any sales, value added taxes or similar taxes related to the performance or receipt of the Services, including those taxes assessed by authorities subsequent to payment for the Services.

    B. Invoices are due and payable within thirty (30) days of the date of the invoice; subject, however, to applicable orders of and procedures established by the

    Bankruptcy Court. If any invoice is not timely paid, we may exercise our right to claim interest for late payment as permitted by applicable law. If any invoice remains unpaid for longer than ninety (90) days from the date of the invoice for a reason other than pending approval of the Bankruptcy Court, we may either suspend the provision of the Services until payment is received, or terminate this Agreement with immediate effect.

  C. If we become involved (whether or not as a party) in a dispute (including audits or investigations) between Tribune and a third party (including a governmental entity), or if we are asked to preserve records relating to the Services or this Agreement beyond the scope of Services described in this Agreement and no other agreement is reached on these additional services, Tribune agrees to pay us at our then current standard rates for all our time spent, and will reimburse us for all reasonable expenses incurred by us, in connection with such dispute or documentation preservation request. We will reimburse such payments in the event and to the extent such dispute is finally determined to have resulted primarily from our negligence, conduct in bad faith or fraud.

**2. Instructions; Provision of Information and Assistance:**

  A. Tribune and/or the Committee will provide all necessary and reasonably requested information, direction and cooperation to enable us to provide the Services, and any direction (whether verbal or written) shall be effective if received (whether verbally or in writing) from a person known to us or reasonably believed by us to be authorized to act on Tribune's behalf (provided that nothing in this Section 2A shall affect our role as an outside advisor and the assessments and recommendations that we provide to Tribune in connection with the Services). Tribune agrees that we shall use all information and data supplied by it or on its behalf without independently verifying the accuracy, completeness or timeliness of it. We will not be responsible for any delays or liability arising from missing, delayed, incomplete, inaccurate or outdated information and data, or if Tribune does not provide adequate access to its employees, agents or other representatives necessary for us to perform the Services. We will be entitled to charge Tribune (at pre-approved rates) in respect of any additional work carried out as a result.

**3. Confidential Information; Data:**

  A. Each of the parties is likely to disclose information ("Disclosing Party") to the other ("Receiving Party") from time to time in the course of the provision of the Services, which is marked or designated as confidential or proprietary at or prior to disclosure or which would appear to a reasonably prudent person to be confidential and/or proprietary in nature ("Confidential Information"). The Receiving Party will not

disclose such Confidential Information to any person other than in connection with the provision of the Services or as otherwise provided for in this Agreement. This restriction does not apply to information that (i) the Receiving Party must disclose by law or legal process, (ii) is either already in the public domain or enters the public domain through no fault of the Receiving Party, (iii) is available to the Receiving Party from a third party who, to the Receiving Party's knowledge, is not under any non-disclosure obligation to the Disclosing Party, or (iv) is independently developed by or for the Receiving Party without reference to any Confidential Information of the Disclosing Party. This provision is also subject to, and intended to be superseded by, any other written agreement the parties may enter into regarding the confidentiality of information in connection with the services to be provided pursuant to this engagement.

B. Notwithstanding subparagraph (a), Tribune agrees that we will be entitled to disclose information, including Confidential Information, relating to the Services or Tribune to regulators having jurisdiction over our business. Tribune also agrees that, notwithstanding any other provision in this Agreement, we may include the identities of those persons who are identified by Tribune and/or the Committee as contact persons for Tribune and information about the terms of this Agreement, the Services and the Compensation in our internal client management, financial and conflict checking databases.

C. Tribune hereby grants us a perpetual, non-exclusive, royalty-free license to copy, modify and use any information and data supplied by Tribune or on its behalf so that we may create analytical trend data (in anonymous form) and in order to improve the quality of our advice to all of our clients. We will not disclose any information in a manner which allows particular clients or individuals to be identified. Notwithstanding the foregoing, Tribune agrees that its name may appear in a list of participating organizations for reports containing such analytical trend data.

D. The parties' respective obligations under Section 3A. shall survive for a period of five (5) years from the date of termination of this Agreement or for such longer period as is required by law, except that any trade secrets disclosed to the Receiving Party shall be maintained in confidence in perpetuity or until such time as they are no longer reasonably considered to be trade secrets by the Disclosing Party.

E. We may retain Tribune's information in paper or imaged format and we may destroy paper copies if we retain digital images thereof.

4. **Personal Information:**

A. Each of the parties and our respective Affiliates (as defined below) will comply with our respective obligations arising from data protection and privacy laws in effect from

time to time to the extent applicable to this Agreement and the Services. This includes, without limitation, (i) the obligation, if any, of Tribune or its Affiliates, to obtain any required consent(s) in respect of the transfer of information to us by Tribune and/or the Committee or any third party relating to an identified or identifiable individual that is subject to applicable data protection, privacy or other similar laws ("Personal Information"), (ii) any obligation with respect to the creation or collection of additional Personal Information by us, and (iii) any obligation with respect to the use, disclosure and transfer by us of Personal Information as necessary to perform the Services or as expressly permitted under this Agreement. Subject to Section 3C., any use or processing by us of Personal Information supplied by or on Tribune's behalf in connection with the Services shall be done solely on Tribune's behalf. We shall handle such Personal Information in accordance with Tribune's and/or the Committee's reasonable instructions as may be provided from time to time or as reasonably necessary for the purpose of providing the Services and shall not handle such Personal Information in a manner inconsistent with the terms of this Agreement. We also confirm that we have taken appropriate technical and organizational measures intended to prevent the unauthorized or unlawful processing of Personal Information and the accidental loss or destruction of, or damage to, Personal Information. For purposes of this Agreement, "Affiliates" means, with respect to either party, any entity directly or indirectly controlling, controlled by or under common control with such party.

5. **Ownership and Use of Work; Intellectual Property:**

   A. All materials prepared by us specifically and exclusively for Tribune pursuant to this Agreement (the "Work") shall be owned exclusively by Tribune. Notwithstanding anything to the contrary set forth in this Agreement, we will retain all copyright, patent and other intellectual property rights in the methodologies, methods of analysis, ideas, concepts, know-how, models, tools, techniques, skills, knowledge and experience owned or possessed by us before the commencement of, or developed or acquired by us during or after, the performance of the Services, including without limitation, all systems, software, specifications, documentation and other materials created, owned or licensed and used by us or our Affiliates or subcontractors in the course of providing the Services (the "Intellectual Property"), and we shall not be restricted in any way with respect thereto. To the extent any Work incorporates any Intellectual Property; we hereby grant Tribune a non-exclusive, non-transferable right to use such Intellectual Property solely for purposes of utilizing the Work internally in accordance with the terms of this Agreement.

   B. Unless the other party provides prior written consent, neither party will use, in a manner other than as mutually contemplated by this Agreement, or disclose to any third party, other than its or their (as applicable) attorneys, accountants or financial

advisors with a need to know, any Work or Intellectual Property or other material supplied by the other party under this Agreement. Each party shall be responsible for, and the other party shall have no liability with respect to, modifications made by any other person to the Work, Intellectual Property or other work product provided to each party by the other. Each party will indemnify, defend and hold the other party and its Affiliates harmless in respect of any Loss (as defined in Section 7) incurred as a result of the other party's breach of this obligation or any modifications made by any other person to the Work, Intellectual Property or other work product provided to each party by the other. Mercer agrees that Tribune may disclose the material supplied by Mercer in connection with a court proceeding (including without limitation a Bankruptcy Court proceeding) in which Mercer is asked to provide written or oral testimony.

6. **Dispute Resolution:**

   A. Before commencing any action or proceeding with respect to any dispute between us arising out of or relating to this Agreement, the parties shall first attempt to settle the dispute through consultation and negotiation in good faith and in a spirit of mutual cooperation. If the dispute is not resolved within five (5) business days, either of the parties may elect to escalate the resolution of such dispute by submitting the dispute in writing to senior executives from each of the parties who will promptly meet and confer in an effort to resolve the dispute. Each party will identify such senior executive by notice to the other party, and each party may change its senior executive at any time thereafter by notice. Any mutually agreed decisions of the senior executives will be final and binding on both parties. In the event the senior executives are unable to resolve any dispute within thirty (30) days after submission to them, either party may then refer such dispute to mediation by a mutually acceptable mediator to be chosen by both parties within forty-five (45) days after written notice by either party demanding mediation. Neither party may unreasonably withhold, delay or condition consent to the selection of a mediator. All communications and discussions in furtherance of this paragraph shall be treated as confidential settlement negotiations that are not subject to disclosure to any third party. The costs of the mediator shall be shared equally, but each party shall pay its own attorney's fees.

   B. Any dispute that is not resolved within six (6) months of the date of the initial demand for mediation by one of the parties may then be submitted to a court of competent jurisdiction. To facilitate an expeditious and economical judicial resolution of such dispute, each party shall waive and not demand a trial by jury, and each party agrees not to include any employee, officer, director or trustee of the other as a party in any action, proceeding or counterclaim relating to such dispute. Nothing in this Section 6 will prevent either party from resorting to judicial proceedings at any time if interim

relief from a court is necessary to prevent serious and irreparable injury or damage to that party or to others. Except to the extent prohibited under applicable law, any claim, action or proceeding against a party or any of its Affiliates will be barred unless the other party initiates the dispute resolution procedures set forth in this Section 6 within one year of first discovering the act, error or omission that is the basis for such claim.

C. The foregoing provisions shall be subject in all respects to the jurisdiction of the Bankruptcy Court, any orders of the Bankruptcy Court, and the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court for the District of Delaware.

7. **Limitation of Liability:**

   A. Except to the extent a Loss (as defined below) sustained by Tribune is finally determined to have directly resulted from the negligence, fraud or bad faith conduct by us or any officer, director, or employee of ours or our Affiliates ("Mercer Party"), neither we nor any Mercer Party shall be liable to Tribune in connection with the Services, this Agreement or the acts or omissions of any third party (other than our subcontractors, if any).

   B. In no event (i) shall our liability and the liability of our Affiliates, in the aggregate, to Tribune, its Affiliates, its officers, directors or employees or those of its Affiliates and any third party (including any benefit plan, its fiduciaries or any plan sponsor) for any and all Losses arising in connection with or resulting from the Services provided under this Agreement, exceed the greater of one times our Compensation related to the Services giving rise to such Loss and $100,000 or (ii) shall either party or its Affiliates be liable in connection with this Agreement or the Services for any loss of profit or incidental, consequential, special, indirect, punitive or similar damages.

   Each of the parties acknowledges that the Compensation for the Services to be provided under this Agreement reflects the allocation of risk set forth in this Section 7.

   C. Nothing in this Section 7 limiting the liability of a party shall apply to (i) any liability that has been finally determined to have arisen from the conduct as a result of gross negligence, bad faith or fraud on the part of such party (provided that this exception shall apply solely to the limitations set forth in Section 7(B)(i) above) or (ii) the extent such limitation of liability is not permissible under applicable law, including laws that may hold parties liable for certain acts of good faith. For purposes of this Agreement, "Gross Negligence" means any act or failure to act which seriously and substantially deviates from a diligent course of action or which is in reckless disregard of or indifference to the harmful consequences.

D. For purposes of this Agreement "Loss" means damages, claims, liabilities, losses, awards, judgments, penalties, interest, costs and expenses, including reasonable attorneys' fees. For the avoidance of doubt, multiple claims arising out of or based upon the same act, error or omission, or series of continuous, interrelated or repeated acts, errors or omissions shall be considered a single Loss.

8. **Unforeseen Events:**

   A. Neither party shall be liable for delays or failures in performance of obligations under this Agreement, other than failure to make payments hereunder when due, resulting from events beyond its reasonable control, including without limitation "acts of God," fire, flood, riots, new laws which prevent the carrying out of the Services, the results of terrorist activity, failures of third party suppliers, and electronic and other power failures.

9. **Duration and Termination of this Agreement:**

   A. This Agreement will continue until terminated as provided in this Section. This Agreement may be terminated (i) by either party upon ten (10) days' prior written notice to the other party, (ii) by either party upon material breach by the other party, which breach is not cured within thirty (30) days after receipt of written notice thereof, or (iii) immediately by us for non-payment of invoices by Tribune as provided under Section 1. After the termination of this Agreement, Sections 3, 4, 5, 6, 7, 9 and 10 will survive in full force and effect. Any termination of this Agreement shall not relieve Tribune or its Affiliates of their obligations to pay for Services rendered and expenses incurred by us or our Affiliates up to and including the effective date of such termination, and such termination may require Tribune to pay termination fees to the extent the parties later agree to such fees in one or more writings signed by both parties. Notwithstanding the foregoing, to the extent that the parties agree that Mercer shall continue to provide Services after the effective date of termination of this Agreement, the terms and conditions of this Agreement shall survive until such Services are completed or the parties agree that the Services shall no longer be provided.

10. **Additional Terms:**

    A. *Service-Specific Terms* - The Service-Specific Terms set forth in Schedule A hereto shall pertain to the extent applicable to the Services.

    B. *Notices* - Any notice that is to be given by one party to the other under this Agreement will be given in writing and delivered to John Dempsey if to Mercer or Donald J. Liebentritt if to Client, or any other address specified by notice subsequently by one party to the other. A notice will be effective upon receipt.

C. **No Third Party Beneficiaries** - Neither this Agreement nor the provision of the Services is intended to confer any right or benefit on any third party.

D. **No Publicity** - Client agrees not to refer to us or attribute any information to us in the press, for advertising or promotional purposes, without our prior written consent. We acknowledge that it is likely that our work, including our work product, may be disclosed publicly in the course of proceedings in the Bankruptcy Court. We agree not to refer to Tribune or any of its Affiliates in the press or for promotional purposes without Tribune or its Affiliate's (if applicable) prior written consent, provided that we may include Tribune's name in our representative client listing and as provided in Section 3C.

E. **Waiver** - The failure by either party to insist upon strict performance of any provision of this Agreement shall in no way constitute a waiver of rights under this Agreement, at law or in equity.

F. **Warranties of Mercer** - Except as expressly set forth in this Agreement, we expressly disclaim any warranty, express or implied, including but not limited to any implied warranty of merchantability and fitness for a particular purpose.

G. **Entire Agreement, Amendment, Assignment, Subcontracting** - This Agreement (including the Services-Specific Terms as set forth in Schedule A, as applicable to certain Services and any schedules or exhibits attached hereunder) sets forth the entire agreement between the parties relating to its subject matter and supersedes and replaces any existing agreement or undertaking, both written and oral, between the parties relating thereto. Except with respect to a change in address for notices, this Agreement shall not be amended except by a written document executed by both of us. Neither of the parties may assign this Agreement without the prior written consent of the other, except that we may assign this Agreement to an Affiliate with reasonable prior written notice to Tribune. We may subcontract with any of our Affiliates upon reasonable prior written notice to Tribune, and we may subcontract with third parties with Tribune's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

H. **Governing Law and Jurisdiction** - This Agreement will be governed by, and interpreted in accordance with, the law of the State of Illinois, not including the conflicts of law provisions thereof, and will be subject to the exclusive jurisdiction of the Bankruptcy Court or, following the emergence of Tribune Company and its affiliates from their chapter 11 cases, courts located in the State of Illinois.

I. **Severability** - If any provision of this Agreement (or any portion thereof) is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall not be affected by such determination and shall remain binding upon the parties.

J. **Advice on Legal Matters** - We are not engaged in the practice of law and the Services provided hereunder, which may include commenting on legal issues or drafting documents which could constitute legal advice, do not constitute and are not a substitute for legal advice. Accordingly, we recommend that Tribune secure the advice of competent legal counsel with respect to any legal matters related to the Services or otherwise.

K. **Counterparts** - This Agreement may be executed and delivered (including by facsimile or a scanned PDF version) in one or more counterparts, each of which when executed shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

L. **Approval of the Bankruptcy Court** – This Agreement shall not take effect until it shall have been approved by the Bankruptcy Court. In the event of any conflict between the terms of this Agreement and the Bankruptcy Court's order approving same, the terms of the Bankruptcy Court's order shall control.

**THE PARTIES STATE THAT THEY HAVE READ AND UNDERSTAND THE ABOVE AND INTEND TO BE BOUND THERETO:**

**MERCER (US) INC.**

By:

Name: <u>John Dempsey</u>          Date:
    (Please Print)

Title: _____

**ACCEPTED AND AGREED**
**Tribune Company**
By:

Name: _____          Date:
    (Please Print)

Title: _____

## SCHEDULE A

### *SERVICES-SPECIFIC ADDITIONAL TERMS*

**THE FOLLOWING ADDITIONAL TERMS SHALL APPLY TO THE EXTENT APPLICABLE TO THE SERVICES PROVIDED:**

### *FOR EXECUTIVE REMUNERATION SERVICES:*

1. We have adopted Global Business Standards for executive remuneration assignments, a copy of which is attached hereto. To the extent that the scope of the executive remuneration Services provided by us encompass matters under the direct responsibility of Tribune's board of directors or a committee of the board of directors (including without limitation the Committee, if applicable), then any findings or recommendations can be attributed to us by Tribune only if a Mercer consultant attends the presentation of the recommendations to the board of directors or committee thereof and is available to respond to questions.

2. To the extent Tribune discloses any information in a governmental or regulatory filing about us relating to our provision of advice and counsel regarding the Services or executive remuneration matters, including in order to satisfy any legal requirements to disclose our identity, the particulars of the mandate for which we have been retained, or any other work that we performed for Tribune, Tribune agrees that our identification and any description of our mandate or our work for Tribune will be subject to our prior review and Tribune shall ensure that our reasonably requested modifications are made to such identification and/or description (to the extent permitted by applicable law).

3. Tribune will indemnify Mercer and its Affiliates and our and their directors, officers, stockholders and employees (collectively, "Indemnified Persons") from and against all Losses and to pay Mercer's standard rates for professional time spent (including for preparing, defending or giving testimony or furnishing documents) in connection with actual or threatened actions, proceedings or investigations by any party other than Tribune, whether or not Mercer is a party, relating to the Services or any matter relating to the Services. However, Tribune will not be liable under this indemnity to an Indemnified Person to the extent any Losses sustained by such Indemnified Person are finally determined to have resulted primarily from the negligence or conduct in bad faith of such Indemnified Person.

4. Mercer (and its Affiliates) may provide advice or other services or products to Tribune or to other clients in the same business sector as Tribune, which could potentially lead to a

conflict of interest; provided that nothing in this paragraph shall terminate, alter, limit or otherwise modify Mercer's obligations as set forth in Section 3 ("Confidential Information; Data") of this Agreement, and provided further that Mercer will not represent another client in a matter substantially and directly related to the services Mercer agrees to provide to Tribune as described in this Agreement where the interests of the other client are adverse to the interests of Tribune.

CH1 4540493