## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: May 5, 2009 at 4:00 p.m.**<br>**Hearing Date: TBD** |

## FIRST QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF DECEMBER 8, 2008 THROUGH FEBRUARY 28, 2009

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide<br>Professional Services to: | **Debtors** |
| Date of Retention: | **February 20, 2009 (nunc pro tunc to December 8, 2008)** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

| Period for Which Compensation and Reimbursement is Sought: | **December 8, 2008 through February 28, 2009** |
|---|---|
| Amount of compensation sought as actual, reasonable and necessary: | **$3,897,043.25** |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | **$165,360.71** |

This is a(n): _____ monthly     __X__ interim     _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee applications during this Interim Fee Period is approximately 200.50 hours and the corresponding compensation requested is approximately $53,990.50.

<u>Prior Interim Applications</u>

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| Date Filed | Period Covered | Fees | Expenses | Fees | Expenses |
| | | | | | |
| | | | | | |

46429/0001-5532041v1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: May 5, 2009 at 4:00 p.m.**<br>**Hearing Date: TBD** |

## FIRST QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF DECEMBER 8, 2008 THROUGH FEBRUARY 28, 2009

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

Court, pursuant to (i) 11 U.S.C. §§ 327, 331, and 503, (ii) Rule 2016 of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Bankruptcy Procedure ("Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Rules"), (iv) the Order Establishing Procedure for Interim Compensation and

Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§

105(a) and 331 (the "Interim Compensation Order"), as amended, and (v) the Order Appointing

Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of

Expenses for Professionals and Consideration of Fee Applications (the "Fee Examiner Order")

for approval of interim compensation and reimbursement of expenses for the quarterly period

from December 8, 2008 through February 28, 2009 (the "Interim Fee Period").  In support of the

Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  [Docket No. 43].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of

Delaware appointed an official committee of unsecured creditors (the "Committee").  No request

has been made for the appointment of a trustee or examiner.

5.    On March 19, 2009, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.  [Docket No. 546]

6.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code.

## BASIS FOR THE APPLICATION

7.    The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application set forth the following scope of services, which were performed during the Interim Fee Period:

(a)    to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)    to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c)    to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

3

(e)    to perform any and all other legal services for the Debtors in connection with both these chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)    to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, nunc pro tunc to the Petition Date, was approved by this Court by order dated February 20, 2009 (Docket No. 435).

8.    The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders"), provide all professionals retained in these cases pursuant to section 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the

"Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing to the Debtors that no objection or a partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whichever is applicable, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

9.      Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of December 8, 2008 through January 31, 2009 and February 1, 2009 through February 28, 2009, which Monthly Fee Applications are incorporated herein by reference.[2] Sidley has accordingly submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for this Interim Fee Period.

10.      In addition, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. This Application represents the first Quarterly Fee Application Request that Sidley has filed with the Court in

---

[2] The docket numbers of Sidley's Monthly Fee Applications for December 2008-January 2009 and February 2009 are 819 and 888, respectively.

connection with these chapter 11 cases, and it covers the period from December 8, 2008 through February 28, 2009, both dates inclusive.

## **RELIEF REQUESTED**

11.    By this Application, Sidley respectfully requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Interim Fee Period.

12.    The amount of fees sought for services rendered during the Interim Fee Period is $3,897,043.25, representing 7,279.40 hours in professional and paraprofessional time for such services, and reimbursement of actual, necessary expenses incurred by Sidley during the Interim Fee Period in connection with these services is requested in the amount of $165,360.71. Sidley seeks the interim allowance of such compensation, as well as this Court's authorization for payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.    The hourly rates charged by Sidley professionals and paraprofessionals during the Interim Fee Period covered by this Application are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases.  The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2009 and continuing until Sidley's next Firm-wide rate adjustment will be $925 per hour.  Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

6

14.      Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases. There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases. All professional and paraprofessional services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

## SERVICES RENDERED

15.      Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation, and transactional counsel to the Debtors in their ordinary course of business. The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.      A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of Attachment A to this Application, as required by Local Rule 2016-2. A detailed descriptions of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Interim Fee Period:

A.      **FCC Matters (20100): Hours: 813.00    Fees: $345,815.50**

17.      Tribune ranks among the top five television station owners in the country, with 23 television stations in 19 markets, including seven stations in the top-10 U.S. markets.

The Debtors also own and operate the cable "Superstation" WGN America, which is seen in approximately 71 million homes.  Since 1990, Sidley's Washington, DC office has represented the Debtors' broadcasting stations as primary communications regulatory counsel.  In this capacity, Sidley's professionals handle all aspects of regulatory compliance, including compliance with all FCC technical and operational rules and participation in FCC rule making proceedings.

18.     During the Interim Fee Period, Sidley's professionals have represented the Debtors' stations on transactional matters that require FCC approval, including seeking waivers of the newspaper/broadcasting cross-ownership rules; in preparing and filing periodic license renewal applications, which are due every 8 years, and license modification applications, which were required as a consequence of the bankruptcy filing, and in various complaints filed with the FCC.  Additionally, Sidley represents Tribune in appeals to the US Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

19.     In the last several months, Sidley's professionals have been heavily engaged in the ongoing transition from analog to digital television transmission (DTV).  Since 1996, Sidley has represented Tribune stations in the policy, technical, and operational issues at the FCC arising from this historic, unprecedented conversion.  The activity undertaken during this Interim Fee Period ranges from counseling the Debtors on the FCC's evolving rules and policies governing the build-out and operation of DTV stations, advocacy before the FCC to waive and/or modify these rules and policies to conform with operational realities, as well as advocacy urging the FCC to authorize the use of new technologies that can enhance the ability of broadcasters to deliver reliable DTV signals.  Since the Petition Date, Congress passed the DTV Delay Act that moved the DTV transition date from February 17 to June 12, 2009.  This change

has generated a significant increase in both FCC regulatory compliance filings (and related FCC

fees) and substantive legal work to ensure the stations' readiness for the DTV transition.

**B.      Fee Applications (30390): Hours: 200.50   Fees: $53,990.50**

20.      During the Interim Fee Period, Sidley's professionals and paraprofessional

have drafted and filed Sidley's first and second monthly statements and reviewed and complied

with the Court's orders relating to interim compensation procedures and the appointment of the

Fee Examiner.

**C.      Intellectual Property Issues (30400): Hours: 12.90   Fees: $7,197.50**

21.      During the Interim Fee Period, Sidley's professionals have examined and

analyzed various issues arising in connection with the Debtors' substantial interests in

intellectual property, including the effect of section 365 on the assumption of the Debtors'

trademark and copyright licenses to and from third parties, and the status of ongoing intellectual

property litigation matters.

**D.      Executory Contracts and Leases (30410): Hours: 311.10   Fees: $158,168.00**

22.      The Debtors in these cases are party to approximately 45,000 executory

contracts and unexpired leases.  During the Interim Fee Period, Sidley's professionals have

undertaken an analysis and review of a significant number of such contracts and assessed the

legal implications of assumption, assignment, or rejection under section 365 of the Bankruptcy

Code.  Since the Petition Date, Sidley's professionals have addressed numerous inquiries from

contract counterparties concerning the status of their contracts and leases.  These efforts continue

to require ongoing attention.

23.      As part of their review of unexpired leases, Sidley's professionals filed

motions and obtained orders rejecting 54 commercial real property leases, with a combined

estimated annual cost savings to the Debtors of approximately $2.8 million.  To maintain

flexibility and facilitate further restructuring, Sidley's professionals obtained an order granting their request for an extension of time, through and including July 6, 2009, to assume or reject the Debtors' remaining unexpired real estate leases.

**E.    Vendor Issues (30420): Hours: 269.80    Fees: $137,100.00**

24.    During the Interim Fee Period, Sidley's professionals have expended substantial efforts to address vendor issues in order to facilitate the Debtors' smooth transition into chapter 11.  For example, a significant number of vendors refused to continue performance absent confirmation that outstanding prepetition amounts would be paid.  Sidley's professionals spent a significant amount of time corresponding with vendors' counsel regarding either the obligation to perform under prepetition contracts (which had to be analyzed to determine their executory nature and scope of obligations) or the incentive to perform in light of continued postpetition performance by the Debtors.

25.    In addition, following the entry of the critical vendor and section 503(b)(9) orders of this Court, Sidley's professionals were contacted by a significant number of vendors and their counsel concerning status as a critical vendor and/or to pursue payment of amounts outstanding to them in connection with section 503(b)(9) goods.  Many of these communications were time consuming, not only due to volume, but also because they involved explaining to counsel the limited availability of critical vendor funds, the required procedures for payment of prepetition amounts outstanding to critical vendors and providers of section 503(b)(9) goods, and, in some cases, arranging and participating in calls with the Debtors, vendors, and counsel to resolve related issues and/or to encourage continued vendor performance.  Similarly, the Debtors required guidance in negotiating and, in certain instances, drafting critical vendor agreements and section 503(b)(9) agreements.

**F.**   **Use/Sale/Lease of Assets (30430): Hours: 376.60   Fees: $200,190.00**

      26.   During the Interim Fee Period, Sidley's professionals were engaged in negotiating and documenting a number of transactions for the use, purchase, sale, and lease of assets on behalf of the Debtors. For example, Sidley's professionals coordinated with the Debtors and the Debtors' outside real estate counsel with respect to the section 363 sale of certain "excess" property owned by the Debtors. Sidley's professionals also participated in the negotiation of various service agreements, marketing agreements, and programming agreements and, in certain instances, sought and obtained authority from the Bankruptcy Court for the Debtors' entry into such agreements. Sidley also continued its efforts to review and analyze potential transaction opportunities arising in connection with its ongoing representation of the Debtors in their ordinary course of business.

**G.**   **DIP Financing/Cash Collateral (30440): Hours: 407.40   Fees: $220,560.00**

      27.   During the Interim Fee Period, Sidley's professionals obtained Court approval for postpetition financing through the Debtors' existing receivables facility. This involved negotiating and documenting the Debtors' "first day" receivables securitization and letter of credit facilities with Barclays Bank PLC. After a final order approving the DIP facility was entered on January 15, 2009, Tribune, Barclays, and their legal professionals immediately commenced discussions to extend the facility's maturity date and to facilitate syndication to other lenders and ratings by Moody's and Standard & Poor's. Accordingly, the parties developed a term sheet for syndication purposes, which required considerable effort on the part of Sidley's professionals in the bankruptcy, corporate, securitization, banking, insurance, and financial services practice groups. Sidley's professionals also prepared a standby letter of credit under the "first day" letter of credit facility by working to amend the facility and establish the collateral account.

**H.    Insurance Matters (30450): Hours: 25.70    Fees: $18,016.50**

28.    During the Interim Fee Period, Sidley's professionals worked with the

Debtors and their outside insurance counsel to evaluate certain insurance coverage issues and the

impact of the chapter 11 filing on the Debtors' insurance and risk management procedures.

**I.    Committee-Related Matters (30460): Hours: 304.80    Fees: $225,035.00**

29.    Sidley's professionals have worked diligently since the Petition Date to

maintain a cooperative and responsive relationship with the Debtors' major creditor

constituencies, including the Committee and the steering committee comprised of the Debtors'

senior lenders (the "Steering Committee"). During the Interim Fee Period, Sidley's professionals

have prepared for and participated in the Committee formation meeting, conferred on pending

motions and case administration issues, established confidentiality protocols for the sharing of

information, and participated in numerous conference calls and meetings with the Committee,

Steering Committee, and their professionals. Sidley has established weekly conference calls

with the Committee and the Steering Committee in order to address case issues as they arise and

to apprise the Committee and the Steering Committee of the progress made in these chapter 11

cases. Throughout the Interim Fee Period, Sidley's professionals have responded to and

continue to respond to many requests for documentation and information from the professionals

for the Committee and the Steering Committee.

**J.    Litigated Matters (30470): Hours: 669.90    Fees: $387,453.00**

30.    During the Interim Fee Period, Sidley's professionals represented the

Debtors in a variety of litigated matters. The Debtors were involved in hundreds of active or

threatened lawsuits as of the Petition Date. Sidley represents the Debtors in defending against

multiple suits, and in such cases, Sidley's professionals obtained stays of proceedings in the

various venues and continued their efforts towards favorable resolution. In those cases handled

12

by outside litigation counsel, Sidley's professionals communicated with the Debtors' internal

legal department, outside counsel, opposing counsel, and claimants as to the effect of the

automatic stay on pending litigation and the bankruptcy claims process.

31.    As in most chapter 11 cases, the Debtors are faced with periodic requests

for relief from stay.  The Debtors have received six requests for relief from stay since the

commencement of these cases and Sidley's professionals devoted time to assess and respond to

the motions.

32.    In addition, Sidley's professionals spent considerable time preparing for

the filing of two adversary proceedings; the first on behalf of Tribune Company seeking

declaratory judgment and an injunction against the further prosecution of a federal district court

proceeding and the second on behalf of Tribune Media Services, Inc. seeking a declaratory

judgment and injunctive relief in connection with the ownership of the rights to the Dick Tracy

comic book character, an asset the Debtors believe may be of substantial value.  These adversary

proceedings required the efforts of Sidley's professionals and paraprofessionals in the

bankruptcy and litigation practice groups.

**K.    Travel Time (30480): Hours: 123.30    Fees: $46,651.25**

33.    During the Interim Fee Period, Sidley's professionals spent time traveling

to Wilmington, Delaware to attend the Debtors' first day hearing and subsequent omnibus

hearings, the Committee selection meeting, and the initial section 341 meeting.  In addition,

Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and

various creditor constituencies.  The hours reflect non-working travel time and the fees requested

in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**L.**    **Labor Issues (30490): Hours: 253.50    Fees: $143,683.00**

34.    Approximately 15% of the Debtors' employees are represented by unions.
During the Interim Fee Period, Sidley's professionals obtained Court authorization to preserve or
implement important employee related benefits for the Debtors' union employees, including the
payment of prepetition contributions to union pension plans and continued contributions post-
petition and continued severance arrangements in accordance with collective bargaining
agreements for union employees.

35.    Additionally, Sidley's professionals responded to numerous inquiries from
certain of the Debtors' unions and addressed a variety of legal issues arising from the filing of
these chapter 11 cases.  Throughout the Interim Fee Period, Sidley's professionals have provided
information regarding the Debtors' collective bargaining agreements to counsel for the
Committee and the Steering Committee at their request.

**M.**    **Plan and Disclosure Statement (30500): Hours: 132.70    Fees: $107,281.50**

36.    During the Interim Fee Period, Sidley's professionals began evaluating,
researching, and analyzing the various possible structures for the Debtors' plan of reorganization.
This process involved several meetings with the Debtors' management and the Committee and
Steering Committee.

**N.**    **Professional Retention (30510): Hours: 408.00    Fees: $228,228.50**

37.    The Debtors' large and diverse businesses require the employment and
retention of a variety of professionals to support these bankruptcy proceedings and to continue
managing the litigation, real estate, tax, accounting, and other needs of their business operations.
Altogether, Sidley's professionals assisted the Debtors with filing 10 applications for retention of

professionals under Bankruptcy Code sections 327(a) or 327(e)[3] as well as a motion to establish

ordinary course professional procedures for the retention of over 90 "ordinary course"

professionals. Substantial issues were raised by the Office of the United States Trustee as to all

10 professional retention applications, which required Sidley's professionals and each applicant

to expend significant efforts to reach a consensual resolution with the United States Trustee.

Orders have been entered granting the "ordinary course" professional motion and all retention

applications.

**O.    Tax Issues (30520): Hours: 211.80    Fees: $118,919.00**

   38. During the Interim Fee Period, Sidley's professionals reviewed and

analyzed a variety of tax issues on behalf of the Debtors, both arising from and in connection

with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax

matters in the ordinary course of the Debtors' business. For example, Sidley's professionals

attended to the consideration and analysis of the tax implications of proposed transactions,

handled appeals of tax assessments, and communicated with taxing authorities.

**P.    Claims Processing (30530): Hours: 64.20    Fees: $28,451.00**

   39. During the Interim Fee Period, Sidley's professionals began evaluating,

researching, and analyzing the treatment of various types of claims arising in the chapter 11

cases, covering the full spectrum of potential liabilities. Sidley's professionals also drafted the

Debtors' motion to establish a bar date for filing proofs of claims and approving the form and

manner of notice.

---

[3] These professionals are Sidley Austin LLP, Cole, Schotz, Meisel, Forman & Leonard, P.A., Alvarez &
Marsal North America, LLC, McDermott Will & Emery LLP, Jenner & Block LLP,
PricewaterhouseCoopers LLP, Paul, Hastings, Janofsky & Walker LLP, Reed Smith LLP, Daniel J.
Edelman, Inc. and Lazard Freres & Co. LLC.

**Q.**    **First Day Motions (30540): Hours: 565.20    Fees: $289,870.50**

40.    On the Petition Date, Sidley filed 111 chapter 11 petitions on behalf of the

Debtors and prepared and filed 13 "first day" motions seeking authorization for (i) the joint

administration of these chapter 11 cases; (ii) the approval of debtor-in-possession financing

through a receivables securitization facility; (iii) the payment of prepetition taxes and related

obligations; (iv) the payment of prepetition insurance premiums and related obligations; (v) the

continuation of prepetition customer programs; (vi) the payment of prepetition wages, salaries,

benefits and related obligations; (vii) the approval of cash management systems and related

relief; (viii) the approval of utility deposit procedures and provisions for adequate assurance in

respect of approximately 200 utilities; (ix) the payment of prepetition broker claims; (x) the

payment of prepetition claims of shippers and lien claimants; (xi) the extension of the deadline

for filing schedules; (xii) the payment of prepetition claims of critical vendors and section

503(b)(9) claimants; and (xiii) the retention of Epiq Bankruptcy Solutions, LLC as claims,

noticing and balloting agent.

41.    Sidley's professionals prepared for and participated in the first day hearing

on December 10, 2008 and in subsequent hearings relating to first day relief before this Court.

Final orders have been entered on all but the motion for approval of cash management systems,

for which an interim order has been entered. Throughout the Interim Fee Period, Sidley's

professionals have assisted the Debtors with implementing the first day orders and have

communicated with the Debtors' creditor constituencies to address their questions and inquiries

and to ensure compliance with all orders.

**R.**    **Business Operations (30550): Hours: 374.20    Fees: $223,034.00**

42.    During the Interim Fee Period, Sidley's professionals have worked

diligently with the Debtors to stabilize business operations as they transitioned to chapter 11 and

16

to develop a "go forward" business plan. In the days following the Petition Date, Sidley's professionals filed all required notices and disclosures with the Securities and Exchange Commission, responded to inquiries from numerous utility providers as to continued service and claims, and attended to the review and analysis of a number of the Debtors' significant operating contracts and agreements. Additionally, Sidley continued to represent the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business.

43.     Cash management matters consumed substantial time and effort by Sidley's professionals. Since entry of the interim cash management order, Sidley's professionals have worked with the Debtors, their depository banks, and the United States Trustee to ensure compliance with the terms of the order and to close and migrate accounts as appropriate. In addition, Sidley's professionals have requested several extensions of time to comply with the section 345 and United States Trustee Guidelines requirements for deposit insurance and continue to work toward a satisfactory solution given their needs, cash management practices, and the nature of the markets at this time.

**S.    Case Administration (30560): Hours: 348.50    Fees: $223,000.00**

44.     During the Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings, and maintaining a schedule of critical dates and deadlines. On a weekly basis, Sidley's professionals participate in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of each hearing. Additionally, Sidley's professionals have devoted substantial time working with the Debtors and their financial advisors to develop a protocol to comply with the reporting requirements imposed under newly enacted Bankruptcy Rule 2015.3 and have filed a motion seeking relief from this Court.

**T.    Creditor Communications (30570): Hours: 41.10    Fees: $29,115.00**

       45.    Since the Petition date and throughout the Interim Fee Period, Sidley's professionals have responded to numerous inquiries and communications from the Debtors' creditor constituencies. Sidley's professionals also prepared for and participated in the Debtors' 341 meeting.

**U.    Bankruptcy Schedules (30580): Hours: 232.00    Fees: $79,357.50**

       46.    The preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") has been a significant and time consuming undertaking for the Debtors and their professionals over the past several months, entailing the collection, review and categorization of thousands of documents and intensive coordination with all of the Debtors' various business units. During the Interim Fee Period, Sidley's professionals and paraprofessionals worked closely with the Debtors and their financial advisors to assist in the preparation of the Schedules and Statements.

**V.    Employee Issues (30590): Hours: 985.00    Fees: $527,874.00**

       47.    During the Interim Fee Period, Sidley's professionals reviewed existing and proposed employee benefit programs and addressed the treatment of current and former employees. These efforts resulted in the filing of several motions to continue or implement various types of employee benefits. To date, the Debtors have obtained Court authorization to preserve or implement important employee related benefits, including the following: (i) implementation of an employee retention plan related to certain broadcasting operations (Docket No. 206); (ii) payment of prepetition amounts exceeding the $10,950 cap to employee sales representatives (Docket No. 231); (iii) implementation of a new severance policy (Docket No. 340); (iv) payment of prepetition amounts under certain incentive programs (Docket No. 324);

and (v) continuation of medical benefits to employees terminated prior to implementation of the post-petition severance arrangement (Docket No. 474).

48.     In addition to those matters that resulted in the foregoing motions, the Debtors have (i) assembled information relating to the implementation of the 2008 management incentive plan and designed both short-term and long-term management incentive plans for the future (which have been subsequently shared with the Creditors Committee), (ii) responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, (iii) responded to information requests of various prior employees and assembled and analyzed information pertaining to many of these claims (which has been subsequently shared with the Creditors Committee), and (iv) dealt with various issues involving layoffs following the Court's approval of the new severance plan.

**W.     Asset Disposition (30600): Hours: 148.20    Fees: 98,052.00**

49.     During the Interim Fee Period, Sidley's professionals advised the Debtors in connection with the proposed disposition of the Chicago Cubs and related assets, which proposed disposition was reported on publicly during the period covered by this Application. See, e.g., "Ricketts Set to Buy Cubs, Wrigley for $900 Million," Chicago Tribune, Jan. 23, 2009. Sidley's professionals accordingly performed a range of tasks as requested by the Debtors' management relating to such disposition, as described further in the detail submitted as part of the Monthly Fee Applications.

## EXPENSES INCURRED

50.     Sidley has incurred expenses of $165,360.71 in connection with its services rendered to the Debtors during the Interim Fee Period. These expenses were incurred for items not included in Sidley's hourly rates, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted

legal research, travel-related expenses, overtime services, and in-house document production. Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in this case, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in this case.

51.    Sidley submits that all travel expenses incurred during the period covered by this Application were necessary and reasonable under the circumstances. In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

52.    A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of Attachment B hereto.

## REVIEW OF APPLICABLE LOCAL RULE

53.    The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## NOTICE

54.    Notice of this Application has been served upon the Notice Parties specified in the Fee Orders. In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

55.     Other than the applicable Monthly Fee Applications, no previous
application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $3,897,043.25 and reimbursement of expenses in the amount of $165,360.71, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: April 15, 2009

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kenneth P. Kansa
Jillian K. McClelland
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION