# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>**Objection Deadline: May 5, 2009 at 4:00 p.m. (ET)**<br>**Hearing Date: May 12, 2009 at 10:00 a.m. (ET)** |

## MOTION FOR AN ORDER AUTHORIZING THE DEBTORS (I) TO PAY SEVERANCE COMPENSATION TO EMPLOYEES TERMINATED PRIOR TO THE IMPLEMENTATION OF THE POSTPETITION SEVERANCE PLAN AND (II) TO REFUND CERTAIN BENEFITS FEES TO TERMINATED UNION EMPLOYEES

Tribune Company and most of its wholly-owned subsidiaries, each of which is a debtor and debtor-in-possession herein (each a "Debtor" and, collectively, the "Debtors"), hereby file this Motion (the "Motion") for entry of an order, in substantially the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b)(1) of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Washington Bureau Inc. (f/k/a Tribune Broadcasting News Network Inc.) (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code"), authorizing, but not directing, the Debtors (i) to pay the remaining balance of severance compensation to approximately 70 employees terminated prior to the Court approval of the postpetition severance policy; and (ii) to refund certain health benefit fees charged to three (3) union employees terminated prior to the petition date.

The facts and circumstances supporting this Motion are set forth in the Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company, in support of the Motion (the "Bigelow Affidavit"). A copy of the Bigelow Affidavit is attached hereto as Exhibit B. In further support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF THE CASE

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

3. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors Committee").

## JURISDICTION

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

I.  **Severance Payments**

5.      Prior to the Petition Date and in the ordinary course of business, the Debtors customarily provided employees that were terminated without cause (the "Terminated Employees") with severance payments (the "Severance Payments") equal to their base wages for specified periods of time that correlated with the number of years of employment (the "Severance Period").

6.      Terminated Employees typically received Severance Payments either through (i) a single, lump-sum Severance Payment (the "Lump-Sum Severance") or (ii) salary continuation in the form of regular biweekly paychecks for the duration of the Severance Period (the "Salary Continuation Severance"). For those Terminated Employees receiving Salary Continuation Severance, any remaining payments were suspended as of the Petition Date.

7.      On February 4, 2009, this Court authorized the establishment of a postpetition severance policy (the "Postpetition Severance Policy") (Docket No. 340). These severance benefits, however, only extend to employees terminated after the effective date of the Postpetition Severance Policy and do not affect the Severance Payments available to employees terminated prior to February 4, 2009.

8.      Sixty-six employees who were terminated prepetition have not received any payment for the remaining balance of their Severance Payments since the Petition Date. Of these Terminated Employees, six (6) employees were scheduled to receive Lump-Sum Severance, but payment was not processed prior to the Petition Date and, as such, these six (6) employees have not received any portion of their Severance Payments.

9. The Debtors are currently aware of an additional two (2) employees who were terminated after the Petition Date but prior to the implementation of the Postpetition Severance Policy. These two employees have not received any Severance Payments.

10. The approximate amount of Severance Payments outstanding to the aforementioned 68 Terminated Employees is $2,480,000.

11. The Creditors Committee has been provided with substantial information pertaining to the aforementioned 68 Terminated Employees, subject to the terms of its confidentiality agreement with the Debtors, and supports providing these Terminated Employees with the Severance Payments that have not yet been made.

12. In addition to the above-mentioned Terminated Employees, two (2) employees terminated prior to the Postpetition Severance Policy worked primarily outside the United States (the "Foreign Terminated Employees"). The Debtors have not yet fully ascertained the exact amount of Severance Payments due under the applicable laws of Italy and Germany. These Foreign Terminated Employees have received no Severance Payments.

13. The Debtors seek authority to make the outstanding Severance Payments owed to all aforementioned employees terminated prior to the implementation of the Postpetition Severance Policy. The aggregate amount necessary to do so is approximately $2,600,000.

## II. Spousal Surcharge Fees

14. Debtors are subject to a number of collective bargaining agreements with various labor unions. For certain employees, the Debtors had imposed a $75 monthly fee on spousal health benefits where the spouses had access to coverage from their own employers (the "Spousal Surcharge Fee"). Certain union employees alleged that these monthly fees violated the terms of their collective bargaining agreement and the dispute was submitted for arbitration.

4

15. On February 10, 2009, an arbitrator issued a decision (the "Arbitrator Decision") holding that the Spousal Surcharge Fees did violate the applicable collective bargaining agreement and ordered that all Spousal Surcharge Fees be discontinued and any such fees already paid be refunded. Refunds have been made for all active union employees,[2] but there are three (3) union employees who were terminated prepetition (the "Terminated Union Employees") and whose Spousal Surcharge Fee refunds have not been made.

16. The Debtors request authority to provide the Terminated Union Employees with refunds for Spousal Surcharge Fees charged for their prepetition benefits. The approximate total cost for doing so is $1,500.

## RELIEF REQUESTED

17. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing, but not directing, the Debtors (i) to pay the remaining balance of all Severance Payments to employees terminated prior to the implementation of the Postpetition Severance Policy and (ii) to refund the Spousal Surcharge Fees to Terminated Union Employees pursuant to the Arbitrator Decision.

18. The total expense for these benefits to Terminated Employees is approximately $2,601,500, with the Severance Payments costing approximately $2,600,000 and the refunds for the Spousal Surcharge Fees estimated to be $1,500.

## BASIS FOR RELIEF

19. The Debtors submit that there is considerable legal support for the relief requested herein, including: (i) payment of these benefits represents a sound exercise of the Debtors' business judgment under section 363(b)(1); (ii) the Court may exercise its equitable powers under section 105(a) and the "necessity of payment" doctrine; (iii) Terminated

---

[2] The total cost for refunding the Spousal Surcharge Fees to active union employees was approximately $12,300.

Employees could rightfully assert priority wage claims for a portion of their Severance Payments under section 507(a)(4); (iv) Terminated Union Employees could seek to recover the refunds for the Spousal Surcharge Fees under their collective bargaining agreement and section 1113; (v) payment of these benefits respects the settled expectations of Terminated Employees; and (vi) failure to pay these benefits could jeopardize the morale and confidence of active employees.

20.     First, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Before approving any motion under section 363(b)(1), "courts require the debtor to show that a sound business purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the court may permit such disposition under § 363(b)"). In evaluating whether sound business judgment exists, the Court "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153 (quoting Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)).

21.     Authorizing the Debtors to provide Severance Payments to the Terminated Employees and the refunds for Spousal Surcharge Fees is a sound exercise of business judgment, and is in the best interest of the Debtors, creditors and all parties in interest. The Debtors submit that the financial expense for this relief is outweighed by the benefits to the Debtors' reorganization efforts and employee relations. The support of the Creditors Committee for

paying the liquidated amount of the remaining Severance Payments to Terminated Employees further reinforces the Debtors' sound business judgment in seeking this relief.

22. Second, the relief sought herein is authorized pursuant to the Court's general equitable powers under Section 105(a), which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). Under the well-established "necessity of payment" doctrine, Courts have authorized payment of prepetition claims under section 105(a) where such payment is important for the continued operation of the Debtors' business during reorganization. See Matter of Lehigh and N.E. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999).

23. Third, a portion of the Severance Payments constitute priority claims and would need to be paid in full. Under section 507(a)(4) of the Bankruptcy Code, certain "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days prior to the Petition Date are accorded priority payment. Terminated Employees could assert a priority prepetition wage claim for that portion of their unpaid Severance Payments which accrued up to 180 days prepetition. 11 U.S.C. § 507(a)(4); In re Garden Ridge Corp., 2006 WL 521914 at *2 (Bankr. D. Del. 2006) (granting § 507(a)(4) priority status for severance payments where employees were terminated within the priority period). Although the actual amount of these priority claims is only a portion of the outstanding Severance Payments, agreeing on the quantification of this amount with the Terminated Employees represents a material administrative burden.

24. Fourth, refunding the Spousal Surcharge Fees to Terminated Union Employees may prevent a conflict with union representatives regarding the enforcement of the

Arbitrator Decision and the specific legal remedies for collective bargaining agreements under section 1113. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 82 (3d Cir. 1997); Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines), 122 F.3d 120, 137 (3d Cir. 1997). Granting the relief requested herein will foster positive relationships with these unions and may improve long-term labor relations.

25. Fifth, payment of these prepetition benefits respects the settled expectations of the Terminated Employees. Most, if not all, of these Terminated Employees relied on continued Severance Payments to ease the transition to alternate employment and to meet their daily living expenses. Those Terminated Employees who were receiving Salary Continuation Severance rather than the Lump-Sum Severance reasonably anticipated that their payments would continue for the entirety of their Severance Periods. Further, the six (6) Terminated Employees entitled to Lump-Sum Severance have been denied all severance compensation solely due to the intervening Petition Date. If the Debtors fail to honor the unpaid Severance Payments, not only will former employees face increased personal and financial hardship, but it may reflect poorly on the Debtors' treatment of its current employees and negatively impact upon the Debtors' reorganization efforts.

26. Sixth, failure to honor the Debtors' obligations to the Terminated Employees will also jeopardize the morale and confidence of active employees. In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (allowing debtors to pay prepetition wages "in order to...retain its currently working employees and maintain positive employee morale"). Employee support for the Debtors' reorganization is crucial and successful reorganization depends upon a stable work force. The reduction of the Debtors' workforce in combination with the current economic climate has already created anxiety about job security. Providing

Terminated Employees with their outstanding Severance Payments may alleviate the concerns of current employees about their own financial well-being and may also help retain key employees who would otherwise seek new employment.

27. The Debtors submit that the relief requested herein for the Terminated Employees is important to their ability to effectively reorganize and to maintain morale and loyalty among active employees. The anticipated financial cost of these benefits is more than offset by the positive gains in employee morale, retention, union relations, and public perception.

## NOTICE

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Creditors Committee; (vi) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing facility; and (viii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

29. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully seek entry of an order, in substantially the form of the order attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors to pay the remaining balance of all Severance Payments for employees terminated prior to the implementation of the Postpetition Severance Policy; (ii) authorizing, but not directing, the Debtors to refund any Spousal Surcharge Fees to Terminated Union Employees; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
      April 22, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kevin T. Lantry
Sarah Adamczyk
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION