# EXHIBIT B

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

### AFFIDAVIT OF CHANDLER BIGELOW III, SENIOR VICE PRESIDENT AND CHIEF FINANCIAL OFFICER OF TRIBUNE COMPANY, IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS (I) TO PAY SEVERANCE COMPENSATION TO EMPLOYEES TERMINATED PRIOR TO THE IMPLEMENTATION OF THE POSTPETITION SEVERANCE PLAN AND (II) TO REFUND CERTAIN BENEFITS FEES TO TERMINATED UNION EMPLOYEES

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss: |
| COUNTY OF COOK | ) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CHANDLER BIGELOW III, being duly sworn, deposes and states:

1. I am a Senior Vice President and the Chief Financial Officer of Tribune Company, a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). Tribune Company is the direct or indirect parent company of the other Debtors herein. I am generally familiar with the Debtors' day-to-day operations, business affairs, and books and records.

2. I submit this affidavit (the "Affidavit") in support of the Debtors' Motion for an order authorizing the Debtors (i) to pay remaining severance compensation to certain terminated employees, and (ii) to refund benefits fees to terminated union employees that were imposed in violation of the collective bargaining agreement. (the "Motion"). I am familiar with the contents of the Motion. Except as otherwise indicated, all facts set forth in this Affidavit are based on my personal knowledge, on information supplied to me by other members of the Debtors' management teams and/or professionals retained by the Debtors, on information learned from my review of relevant documents, or on my opinion based upon my experience and knowledge of the Debtors' operations. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Affidavit on behalf of the Debtors.

3. Prior to the Petition Date and in the ordinary course of business, the Debtors customarily provided employees that were terminated without cause (the "Terminated Employees") with severance payments (the "Severance Payments") equal to their base wages for specified periods of time that correlated with the number of years of employment (the "Severance Period").

2

4. Sixty-six employees who were terminated prepetition have not received payment for the remaining balance of their Severance Payments since the Petition Date. Of these Terminated Employees, six (6) employees were scheduled to receive Lump-Sum Severance, but payment was not processed prior to the Petition Date and, as such, these six (6) employees have not received any portion of their Severance Payments.

5. There are an additional two (2) employees who were terminated after the Petition Date but prior to the implementation of the Postpetition Severance Policy. These two employees have not received any Severance Payments.

6. The approximate amount of Severance Payments outstanding to the aforementioned 68 Terminated Employees is $2,480,000.

7. In addition to the above-mentioned Terminated Employees, two (2) employees terminated prior to the Postpetition Severance Policy worked primarily outside the United States (the "Foreign Terminated Employees"). The Debtors have not yet fully ascertained the exact amount of Severance Payments due under the applicable laws of Italy and Germany. These Foreign Terminated Employees have received no Severance Payments.

8. Debtors are subject to a number of collective bargaining agreements with various labor unions. For certain employees, the Debtors had imposed a $75 monthly fee on spousal health benefits where the spouses had access to coverage from their own employers (the "Spousal Surcharge Fee"). Union employees alleged that these monthly fees violated the terms of their collective bargaining agreements and the dispute was submitted for arbitration.

9. On February 10, 2009, an arbitrator issued a decision (the "Arbitrator Decision") holding that the Spousal Surcharge Fee did violate the collective bargaining agreements and ordered that all Spousal Surcharge Fees be discontinued and any such fees already paid be refunded. Refunds have been made for all active union employees, but there are three (3) union employees who were terminated prepetition (the "Terminated Union Employees") and whose Spousal Surcharge Fee refunds have not been approved.

10. Despite their employment termination, these three (3) Terminated Union Employees may have ongoing relationships with the labor union and/or active union employees. I believe that maintaining a positive relationship with these labor unions by seeking this relief should provide considerably greater long-term benefits than the small short-term expense of refunding the Spousal Surcharge Fees.

11. The aggregate cost of providing the remaining Severance Payments and refunding the Spousal Surcharge Fees will be approximately $2,601,500, with the aggregate amount for Severance Payments costing approximately $2,600,000 and the refunds for the Spousal Surcharge Fees estimated to be $1,500.

12. I believe that it would be in the best interests of the Debtors, creditors, and all parties in interest for the Debtors (i) to pay the remaining balance of all Severance Payments to employees terminated prior to the implementation of the Postpetition Severance Policy, and (ii) to refund the Spousal Surcharge Fees to the Terminated Union Employees under the terms of the Arbitrator Decision.

13. I believe that payment of the Severance Payments and the Spousal Surcharge Fees would improve the Debtors' relationships and standing with both former and

4

current employees, have a positive effect on the Debtors' relationships with its labor unions, and will help boost the morale and confidence of active employees. The anticipated financial cost of these benefits is more than offset by the positive gains in employee morale, retention, union relations, and public perception.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: 4-22-09

_____
Chandler Bigelow III
Senior Vice President & Chief Financial Officer
Tribune Company

Sworn to and subscribed before me this
22 day of April, 2009.

_____
Notary Public

OFFICIAL SEAL
SUSAN A KELLY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/10/12

5

LA1 1531358