# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 883** |
| | **Hearing Date: April 30, 2009 at 2:30 p.m.** |

## DEBTORS' OBJECTION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY WITH RESPECT TO E. MICHAEL GUTMAN, M.D., MIKE GUTMAN, M.D. (MPAC ), P.A. AND GUTMAN PAIN/ACCIDENT CENTER, INC.

Tribune Company and most of its wholly owned subsidiaries, each of which is a

debtor and debtor in possession (each a "Debtor" and collectively, the "Debtors"), hereby file

this objection (the "Objection") to the Motion for Relief From Automatic Stay with Respect to E.

Michael Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center (collectively,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Gutman") filed April 9, 2009 [Docket No. 883] (the "Motion").  In support of this Objection,

the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      There are simply no circumstances under which the litigation of Gutman's

case (the "Action") may proceed in the tort system without forcing the Debtors to expend a

significant amount of estate resources.  Instead, Gutman's case, which is one of at least 45

prepetition media-related cases pending against the Debtors,[2] exposes the Debtors to not only a

$1 million insurance deductible obligation related to any judgment or settlement amount, but also

to significant additional defense costs.  As with the other prepetition media-related cases pending

against the Debtors, these defense costs are not counted against the deductible under the Debtors'

insurance policies.  As a result, even though Gutman has agreed not to pursue any insurance

deductible at this time,[3] granting Gutman relief from the automatic stay to continue the Action in

the tort system would, at a minimum, force the Debtors to incur substantial defense costs.

2.      As of the Petition Date, with discovery still in process, the Debtors had

expended approximately $1,264,184 in connection with defense of the Action.  The Debtors

anticipate that if the underlying discovery were to resume and the Action was permitted to

ultimately proceed to the end of trial, the Debtors could be exposed to additional defense costs

ranging as high as approximately $2 million.  Moreover, if the Action were to proceed to

judgment and Gutman was awarded something less than the Debtors' $1 million deductible

obligation, he would not be entitled to receive anything from the Debtors' insurers as requested

in the Motion.

---

[2] The media-related cases primarily involve claims based on defamation, slander and libel.
[3] See Motion at ¶ 18 ("Through this Motion, [Gutman] agrees to limit his recovery against the Debtor to the extent of available insurance proceeds.  Any portion of [Gutman's] judgment not covered by insurance would constitute an unsecured claim against the Debtor's estate.").

3.      In an effort to avoid this costly result, and to prevent the Debtors from incurring similar costs in connection with other prepetition litigation claims (including approximately 50 additional prepetition personal injury claims and 15 additional employment-related claims), the Debtors and Official Committee of Unsecured Creditors (the "Creditors Committee") are currently continuing their efforts to formulate global alternative dispute resolution procedures for resolving prepetition litigation claims, including Gutman's prepetition claim.  The Debtors and Creditors Committee have made substantial progress in the development of these procedures and anticipate that once finalized, these procedures will efficiently resolve prepetition litigation claims in a manner that, among other things, will enable the Debtors and the prepetition litigation claimants to avoid substantial litigation costs.  Granting Gutman relief from the automatic stay at this juncture would contravene the Debtors' efforts to globally implement these resolution procedures and could potentially encourage other prepetition litigation claimants to seek relief independently of the uniform procedures that the Debtors and Creditors Committee are currently formulating.

## ARGUMENT

4.      The automatic stay imposed by section 362(a) of title 11 of the United States Code (the "Bankruptcy Code") prevents "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case under [the Bankruptcy Code.]"  Section 362(d) of the Bankruptcy Code directs a bankruptcy court to grant relief from the automatic stay imposed by section

362(a) of the Bankruptcy Code only where the moving party can demonstrate "cause." [4]

Accordingly, Gutman bears the prima facie burden of establishing cause. See, e.g., In re RNI

Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006). In making such a showing of "cause,"

Gutman must demonstrate "that the balance of hardships from not obtaining relief tips

*significantly* in [his] favor." In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del.

2006) (quoting Atl. Marine, Inc. v. Am. Classic Voyages Co. (In re Am. ClassicVoyages Co.),

298 B.R. 222, 225 (D. Del. 2003) (emphasis added, internal quotation marks omitted).

       5.     In determining whether Gutman has demonstrated sufficient cause to lift

the automatic stay, the Court should consider (i) whether allowing the litigation to continue in

another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii)

whether maintaining the stay will cause any hardship to Gutman and whether this hardship is

greater than the resulting hardship to the Debtors; and (iii) the probability of Gutman prevailing

on the merits of the Action. See, e.g., In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D.

Del. 1992). As discussed in greater detail below, the Motion fails to meet each of these factors

and, consequently, fails to establish that cause exists to lift the automatic stay.

      A.      **<u>Significant Prejudice to the Debtors Will Result if the Stay is Lifted</u>**

       6.     The Debtors submit that they would incur significant prejudice if the relief

requested in the Motion is granted. As mentioned above, because the Debtors are paying all

defense costs associated with the Action, if the Action is permitted to proceed in the tort system,

---

[4] Specifically, section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —

> > 1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

the Debtors' will be required to expend substantial estate resources. When considered with the fact that the Debtors' insurance coverage applicable to the Action requires a $1 million deductible per occurrence, continuation of the Action would significantly prejudice the Debtors' estates.

       7.    Further, as previously disclosed, the Debtors are also subject to a significant number of other prepetition litigation cases, including at least (i) 45 prepetition media-related cases, the majority of which expose the Debtors to a $1 million per occurrence deductible obligation related to any judgment or settlement amount and all of which expose the Debtors to significant additional defense costs (which do not count against the deductible obligation), (ii) 50 prepetition personal injury cases, all but one of which is subject to a $1 million deductible obligation, and (iii) 15 employment-related cases, none of which are covered by insurance.[5] Should this Court grant the relief requested in the Motion, other prepetition litigation plaintiffs would be encouraged to seek identical relief, exposing the Debtors to the risk of additional substantial defense costs and/or deductible obligations. A flood of such requests would undermine the purpose of chapter 11 proceedings, which are designed to both provide the Debtors with a breathing spell and to more efficiently liquidate claims through a claims allowance process. See, e.g., Bormann v. Raymark Indus. Inc., 946 F. 2d 1031, 1036 (3d Cir. 1991) (noting that the automatic stay is designed to provide debtors with a breathing spell).

       8.    As mentioned above, the Debtors and Creditors Committee have made substantial progress toward development of global alternative dispute resolution procedures to liquidate disputed prepetition litigation claims in a manner that would save administrative costs for both the Debtors and the claimants. In light of these efforts, the two (2) motions previously

---

[5] See Objection to the Motion of Allen Francisco for Relief from Stay Under Section 362 of the Bankruptcy Code [Docket No. 465, filed March 3, 2009].

filed in these chapter 11 cases by claimants seeking relief from the automatic stay to pursue

prepetition litigation have been resolved in a manner that is in accordance with the pending

claims resolution procedures.[6]  Specifically, both of these claimants have agreed to either

postpone resolution of their motions pending finalization of such procedures or to adjourn

resolution of their motions pending completion of mediation proceedings and without enforcing

any insurance deductible obligations against the Debtors.[7]  Unlike these two (2) claimants,

through the Motion, Gutman seeks to proceed in a manner that, due to the substantial defense

costs that would have to be incurred by the Debtors' estates, is inconsistent with the pending

global alternative dispute resolution procedures.  As a result, granting the relief requested in the

Motion would undermine the Debtors' efforts to implement such procedures.

**B.**  **The Debtors' Interests in Maintaining the Automatic Stay Outweigh Gutman's Interests in Liquidating His Claim at This Time.**

9.      The Debtors' interests in maintaining the protections of the automatic stay

far outweigh Gutman's interests in liquidating his claim at this time.  As set forth above, before

Gutman can access any insurance coverage in excess of the Debtors' $1 million deductible

obligation, the Debtors would, at a minimum, be exposed to up to approximately $2 million in

---

[6] See Motion of Allen Francisco ("Francisco") for Relief from Stay Under Section 362 of the Bankruptcy Code (the "Francisco Motion) [Docket No. 438, filed Feb. 20, 2009] and Motion for Relief from Stay filed by Andrew and Jennifer Faggio (collectively, the "Faggios") [Docket No. 476, filed March 5, 2009] (the "Faggio Motion"). In addition to the Francisco and Faggio Motions, a motion was filed by another personal injury claimant, Jon Van Senus ("Van Senus"). However, this additional motion did not seek to continue prepetition litigation. Instead, the motion filed by Van Senus sought to enforce a settlement agreement reached in connection with prepetition litigation. See Motion of Jon Van Senus By and Through His Guardian Ad Litem, Neala Olson, for Relief From the Automatic Stay to Pursue Payment Pursuant to Settlement Agreement [Docket No. 490, filed March 7, 2009]. Consistent with the global resolution procedures being formulated by the Debtors, Van Senus agreed not to enforce any deductible obligation against the Debtors at this time. See Order Modifying the Automatic Stay Authorizing Jon Van Senus, By and Through His Guardian Ad Litem, Neala Olson, to Receive Payments Pursuant to Settlement Agreement [Docket No. 807, filed March 25, 2009].

[7] Francisco has agreed to continue the Francisco Motion until the omnibus hearing currently scheduled May 28, 2009. Similarly, the Faggios have agreed to proceed at this time solely with respect to mediation of their prepetition litigation and to completely subtract the Debtors' deductible obligation from any judgment received through such mediation. See Order Approving Stipulation Modifying the Automatic Stay to Permit Andrew and Jennifer Faggio to Continue Mediation With Respect to a Personal Injury Action Against Debtor The Hartford Courant Company [Docket No. 881, filed April 9, 2009].

defense costs and, to avoid the risk of breaching the insurance coverage, would also be subject to a $1 million deductible. Given the potential costs to be borne by the estate and the present status of the Action, which, as of the Petition Date was still in the discovery phase, the Debtors submit that both Gutman and the Debtors will be in a better position to determine the amount of resources to expend in pursuing the Action once the Debtors and Creditors Committee have formulated claims resolution procedures and the Debtors are close to confirming a plan of reorganization that indicates the estimated distribution on account of general unsecured claims. However, under the present circumstances, there is simply no compelling reason to lift the automatic stay.

10. Further, as mentioned above, the Debtors are subject to over one-hundred prepetition litigation cases, each of which, if permitted to go forward in the tort system, would potentially require the Debtors to expend substantial defense costs and/or deductible obligations. Because granting the relief requested in the Motion could create a domino effect with respect to such cases, any interest that Gutman has in proceeding in the tort system at this time is far outweighed by the potential costs that would be incurred by the Debtors and their estates if other prepetition litigation claimants were to seek similar relief from the automatic stay. Accordingly, Gutman has failed to establish that the prejudice, if any, to Gutman outweighs the prejudice to the Debtors.

**C.    Gutman has Failed to Demonstrate a Likelihood of Success on the Merits of the Action**

11. Gutman has not demonstrated that he will ultimately prevail in the Action. As an initial matter, substantial discovery remained outstanding in connection with the Action as of the commencement of these chapter 11 cases. For example, the Debtors anticipate conducting depositions of numerous additional witnesses, including approximately four (4) experts and

potentially fifteen (15) or more individuals. Given the substantial amount of remaining

discovery, Gutman cannot demonstrate any reasonable likelihood of success on the merits of the

Action at this time.

12.    Further, as of the Petition Date, the Debtors had filed only one (1) non-

substantive summary judgment motion. That motion was granted in part and denied in part on a

technical pleading point.[8]  However, the Debtors have several substantive motions for summary

judgment that have not yet been filed due to the commencement of these chapter 11 cases. The

Debtors believe that, based on the underlying facts of the Action, these summary judgment

motions should be granted. Specifically, at its core, the Action is based on Gutman's allegation

that the newspaper published articles linking him to pain medication that contributed to the death

of eleven (11) patients. Because the articles refer to a well-known citizen about a matter of

public concern, Gutman must satisfy the substantial constitutional burdens of demonstrating by

clear and convincing evidence that the article was false and that the newspaper knew it was false

when it was published.[9] New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Philadelphia

Newspapers Inc. v. Hepps, 475 U.S. 767 (1986). For various reasons, the Debtors believe that

Gutman simply cannot meet these burdens, particularly where the case law demonstrates that

summary judgment is favored in media cases like the Action because of the chilling effect that

such cases present with respect to First Amendment freedom of speech rights. Steward v. Sun-

Sentinel Co., 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (stating that "[w]here the facts are not in

dispute in defamation cases . . . pretrial dispositions are 'especially appropriate' because of the

---

[8] Specifically, the summary judgment motion filed by the Debtors sought to dismiss Count I (Defamation) and Count II (False Light Invasion of Privacy) of the Action on account of insufficient notice pursuant to Fla. Stat. Section 770. The Debtors' summary judgment motion was granted with respect to Count II of the Action.
[9] The Debtors anticipate advancing several substantive summary judgment arguments based on, among other things, the accuracy of the facts published in the articles and/or the "substantial truth" defense applicable to such facts. See, e.g., Smith v. Cuban Am. Nat'l Found., 731 So. 2d 702 (Fla. 3d DCA 1999).

chilling effect these cases have on freedom of speech").  The Debtors' substantive summary judgment arguments, none of which have yet been the basis of a motion for summary judgment of the Action, further demonstrate that Gutman cannot presently establish that he has sufficient probability of succeeding on the merits if he is allowed to continue the Action at that time.

## **CONCLUSION**

13.     Gutman has failed to demonstrate "cause" for lifting the automatic stay. The Debtors will clearly suffer prejudice if the Action is permitted to continue in the tort system at this stage of their chapter 11 proceedings, particularly in light of the substantial defense costs that would undoubtedly have to be borne by the Debtors' estates.  Moreover, granting the relief requested in the Motion will, in all likelihood, lead to a flood of similar requests by other prepetition litigation claimants prior to finalization and implementation of the global claims resolution procedures the Debtors and Creditors Committee are currently in the process of formulating.  For these reasons, the Motion should be denied.

Dated:  Wilmington, Delaware
April 23, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kerriann S. Mills
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION