**EXHIBIT B**

**BLACK LINED PROPOSED FINAL ORDER**

<u>IN THE</u> UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | <u>Related to Docket Nos. 10, 56, 74</u> |

<u>FINAL</u> ORDER (I) APPROVING
CASH
MANAGEMENT SYSTEMS, (II) AUTHORIZING
USE OF PREPETITION BANK ACCOUNTS AND BUSINESS
FORMS, <u>AND</u> (III) ~~WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b)~~
~~ON AN INTERIM BASIS, AND (IV)~~ GRANTING
~~ADMINISTRATIVE~~<u>SUPERPRIORITY</u> EXPENSE
STATUS
TO POSTPETITION INTERCOMPANY TRANSACTIONS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune <u>Washington Bureau Inc. (f/k/a Tribune</u> Broadcasting News Network, Inc.) (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Upon the Motion[2] of the above-captioned Debtors for entry of an order (i) authorizing and approving the Debtors' continued use of their existing cash management system, (ii) authorizing the Debtors to continue using prepetition bank accounts and business forms, and (iii) ~~waiving the requirements of section 345(b) on an interim basis; and (iv) granting administrative~~granting superpriority expense status to postpetition intercompany claims between and among the Debtors and between and among the Debtors and their non-Debtor affiliates; and upon consideration of the Motion and all pleadings related thereto, including the Bigelow Affidavit; and the Court finding that (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and (c) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and the Court finding that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby:

ORDERED, that the Motion is granted as modified herein; and it is further

ORDERED, that the Debtors are authorized, in the reasonable exercise of their business judgment, to (i) designate, maintain and continue to use, with the same account numbers, all of their bank accounts in existence on the Petition Date, including, without limitation, those bank accounts identified in Exhibit C to the Motion, (ii) use, in their present form, checks and other documents related to their bank accounts, and (iii) treat such accounts for all purposes as accounts of the Debtors as debtors in possession; and it is further

ORDERED, that the Cash Management Banks are hereby authorized to continue to service and administer all such accounts as accounts of the relevant Debtor as debtor- in-possession without interruption and in the usual and ordinary course, and to receive, process,

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, said ~~account~~accounts after the Petition Date by the holders or makers thereof, as the case may be, ~~unless~~insofar as the Debtors have good funds standing to their credit with such Cash Management Bank; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored by any bank only if specifically authorized by order of this Court; and it is further

ORDERED, that except for those checks that may be honored and paid to comply with any order(s) of this Court authorizing payment of certain prepetition claims, no checks or drafts issued on the bank accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid; and it is further

ORDERED, that notwithstanding any other provision of this Order, no Cash Management Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of a good faith error made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order; and it is further

ORDERED, that the Cash Management Banks are (a) authorized to accept and honor all representations from the Debtors as to which checks or other items drawn on any account that is the subject of this Order should be honored or dishonored consistent with any order(s) of this Court, whether the checks or other items are dated prior to, on, or subsequent to the Petition Date, and whether or not the Cash Management Bank believes the payment is or is not authorized by an order(s) of the Court, (b) have no duty to inquire as to whether such payments are authorized by any order(s) of this Court and (c) have no liability to any party on account of following the Debtors' instructions in accordance with this Order; and it is further

ORDERED, that nothing contained herein shall prevent the Debtors from opening any new bank accounts or closing any bank accounts as they may deem necessary and appropriate; and it is further

ORDERED, that the Cash Management Banks are authorized to honor the Debtors' requests to close any bank accounts and/or to open or close any additional bank accounts; provided, however, that the Debtors shall notify the Office of the United States Trustee and ~~any statutory committee of unsecured creditors~~the Creditors' Committee (as defined below) of any such requests; and it is further

ORDERED, that any and all accounts opened by the Debtors on or after the Petition Date at any Cash Management Bank shall, for the purposes of this Order, be deemed a Prepetition Bank Account (as if it has been opened prior to the Petition Date and listed on Exhibit C to the Motion), and any and all Cash Management Banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order; and it is further

ORDERED, that to the extent that the Debtors incur charges or liability for any overdraft with respect to any of their bank accounts or related services in accordance with any agreements governing such accounts or services, such charges or overdraft liability are hereby granted administrative priority status pursuant to section 364(a) of the Bankruptcy Code; and it is further

ORDERED, that nothing contained ~~here~~herein shall prevent the Cash Management Banks from modifying or terminating any bank accounts or related services in accordance with ~~agreement~~any agreements governing such accounts or services; and it is further

ORDERED, that each Debtor is authorized to continue to use and re-order its existing business and correspondence forms ~~and checks~~ without alteration and without

designation "Debtor- in- Possession" imprinted upon them; provided, however, that the Debtors shall replace their existing check stock with new checks identifying their status as debtors in possession as existing check forms are depleted; provided, further, however, that with respect to checks that the Debtors print themselves, the Debtors shall ~~begin printing~~print these checks with a "Debtor in Possession" designation ~~within five (5) business days of the date this Order is entered~~; and it is further

ORDERED, that the Debtors are authorized to make disbursements from ~~the~~their bank accounts other than by check, to the extent consistent with the Debtors' existing cash management practices; and it is further

ORDERED, that effective nunc pro tunc to the Petition Date, the Cash Management Banks shall be and hereby are authorized to receive, process, honor and pay any and all prepetition checks and electronic transfers authorized for payment by the Court and any and all post-petition checks and electronic transfers; and it is further

~~ORDERED, that for banks at which the Debtors hold accounts that are party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall within 15 days of the date of entry of this Order (a) contact each bank, (b) provide each of the Debtors' employer identification numbers and (c) identify each of their accounts held at such banks as being held by a debtor in possession in a bankruptcy case; and it is further~~

~~ORDERED, that for banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good faith efforts to cause the bank to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within 45 days of the date of this Order; and it is further~~
~~ORDERED, that the Debtors are otherwise authorized to deposit funds in accordance with their established deposit practices in effect as of the commencement of these cases and, to~~

the extent such deposit practices are not consistent with the requirements of section 345(b) of the Bankruptcy Code or of the U.S. Trustee Operating Guidelines for Chapter 11 Cases, such requirements are waived for forty-five (45) days, on an interim basis only, without prejudice to the Debtors' right to seek a further interim waiver; and it is further

ORDERED, that except as otherwise provided herein, as protection for each Debtor and Consolidated Non-Debtor,[3] when any such Debtor or Consolidated Non-Debtor conducts intercompany transactions involving cash, accounts receivables, accounts payables or other transactions in the ordinary course of business following the Petition Date (collectively, the "Intercompany Transactions") that give rise to an intercompany receivable of such Debtor or Consolidated Non-Debtor (the "Protected Entity") and an intercompany payable of a Debtor (the "Beneficiary Debtor"), in each case as recorded by journal entries or other notes of the Protected Entity and the Beneficiary Debtor, the Protected Entity shall have an allowed claim against the Beneficiary Debtor equal to the net amount of the Intercompany Transactions between the Protected Entity and the Beneficiary Debtor arising after the Petition Date, under sections 364(c) and 507(b) of the Bankruptcy Code, having priority, except as otherwise provided herein, over any and all administrative expenses of the Beneficiary Debtor, whether heretofore or hereafter incurred, of the kind specified in section 105, 326, 365(d)(3), 365(d)(10), 503(a), 503(b), 507(a), 507(b), 546(c), 1113 or 1114 of the Bankruptcy Code, which claim shall bear interest at 7.5% per annum accruing and compounding monthly from and after the date such claim arises until repayment in full thereof (collectively, the "Junior Reimbursement Claim").[4]  In regard to the Junior Reimbursement Claim, the following shall apply:

---

[3] Consolidated Non-Debtor defined as a direct or indirect wholly-owned subsidiary of Tribune Company that has not filed a petition for relief under chapter 11 of the Bankruptcy Code.

[4] Interest to be calculated on Junior Reimbursement Claims at the beginning of each fiscal month and charged during that fiscal month.

(a)    all Junior Reimbursement Claims shall be junior, subject and subordinate only to (1) the Carve-Out (as defined in the final financing order dated as of January 15, 2009 (the January 15, 2009 order, together with any other orders heretofore or hereafter entered that provide for extended, amended, replacement or supplemental post-Petition Date financing for the Debtors entitled to super-priority status pursuant to Section 364(c) of the Bankruptcy Code, the "Final Financing Order")), (2) the super-priority claims and liens granted to the RLA Agent (as defined in the Final Financing Order) pursuant to the Final Financing Order and the Amended Agreements (as defined in the Final Financing Order) or any other post-Petition Date facility that is granted super-priority status pursuant to Section 364(c) of the Bankruptcy Code, and (3) any other claims and liens against such Beneficiary Debtor that are expressly senior to, or carved out from, the claims and liens of the RLA Agent;

(b)    Junior Reimbursement Claims shall not be subject to recoupment or set off on account of any debt arising prior to the Petition Date; and

(c)    the Debtors shall keep a detailed accounting of all post-Petition Date Intercompany Transactions and reflecting all Junior Reimbursement Claims (including interest thereon).  The Debtors shall provide reasonable detail and summary information regarding Intercompany Transactions of the Debtors on a confidential basis to the agents for the senior and bridge credit facilities, the Creditors' Committee (as defined in the Final Financing Order), and the Office of the United States Trustee; and it is further

ORDERED, that except as otherwise provided in an order of the Court, the Debtors are authorized to continue utilizing their Cash Management Systems ~~to manage their cash, to pay intercompany payables, if any, to extend intercompany credit, if necessary,~~ and to continue conducting, except as otherwise set forth herein, all ~~other~~ Intercompany Transactions

7

between and among the Debtors and between and among the Debtors and their non-Debtor affiliates in a manner consistent with the Debtors' prepetition practices; and it is further provided that (a) Tribune Finance Service Center, Inc. and Tribune Publishing Co. (together the "Disbursing Agents"), each acting as disbursing agent with respect to advances from accounts of Tribune Company to or on behalf of various Debtors and Consolidated Non-Debtors (such advances, the "Post-Petition Affiliate Advances"), shall keep accurate books and records of all Post-Petition Affiliate Advances and (b) Tribune Company shall (i) net and offset any amounts owing by Tribune Company to any such Debtor or Consolidated Non-Debtor in respect of Intercompany Transactions made by such Debtor or Consolidated Non-Debtor to Tribune Company since the Petition Date against the amounts owed by such Debtor or Consolidated Non-Debtor to Tribune Company in respect of Post-Petition Affiliate Advances and (ii) reflect such net intercompany balances (including, without limitation, Junior Reimbursement Claims) in any financial statements that are produced for any Debtor or Consolidated Non-Debtor; provided, however, that nothing herein shall preclude the Debtors from producing reports to the agents for the senior and bridge credit facilities, the Creditors' Committee, or the Office of the United States Trustee reflecting non-netted intercompany balances.  In addition, net intercompany balances payable to a Debtor by a Consolidated Non-Debtor, arising after December 7, 2008, shall bear interest at 7.5% per annum accruing and compounded monthly from and after the date such balance arises until repayment thereof; and it is further

ORDERED, that intercompany claims created subsequent to the Petition Date through Intercompany Transactions generated between and among the Debtors and between and among the Debtors and their non-Debtor affiliates are hereby granted administrative priority status pursuant to 11 U.S.C. § 507(a)(2); and it is further

ORDERED, that nothing in this Order shall prejudice the rights of any party (a) with respect to any claim seeking substantive consolidation or with respect to any defenses thereto and (b) to bring any issues to the attention of the Court, including – but not limited to – the failure of a party to comply with the terms of this Order; and it is further

ORDERED, that the Debtors are authorized to maintain their existing foreign bank accounts according to an aggregate deposit "cap" dollar-equivalent amount of $300,000 and that such accounts are deemed to be in compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Operating Guidelines for Chapter 11 Cases; provided that the Debtors agree not to open new foreign bank accounts; and it is further

ORDERED, that the Debtors shall continue to maintain detailed records in the ordinary course of business reflecting transfers of cash, if any, including ~~intercompany transfers~~Intercompany Transactions, so as to permit all such transactions to be readily ascertained; and it is further

ORDERED, that the Debtors shall provide to the ~~statutory committee of unsecured creditors~~Creditors' Committee, the agents for the Debtors' senior and bridge prepetition credit facilities, and the Office of the United States Trustee reasonable and timely access to information sufficient to enable such parties to monitor payments made, obligations satisfied and other actions taken with respect to Intercompany Claims and Intercompany Transactions pursuant to this Order; and it is further

~~ORDERED, the relief granted herein with respect to Intercompany Claims and Intercompany Transactions between and among the Debtors and non-Debtor affiliates shall be without prejudice to any party in interest's right to challenge the treatment of Intercompany Claims and Intercompany Transactions between and among such entities at a later date; and it is further~~

ORDERED, that to the extent a bank has a valid and enforceable right of setoff or lien in cash present in a Debtor's account at such bank at the moment of the filing of the petition commencing the chapter 11 case of such Debtor (the "Petition Date Cash"), and to the extent such cash is thereafter used by such Debtor subject to further agreement between the Debtor and the Cash Management Bank, such bank is hereby granted (i) a replacement lien in the Debtors' cash, and such replacement lien shall be of the same extent and priority as such bank's interest, as of the filing of the petition commencing the chapter 11 case of such Debtor, in the Petition Date Cash subsequently used by the Debtors; and (ii) an administrative expense claim to the extent of any diminution of Petition Date Cash after the petition commencing the case is filed; and it is further

ORDERED, that the Debtors are authorized to provide cash collateral (i) to secure the reimbursement obligations in connection with letters of credit issued at the request of any of the Debtors on and after the Petition Date, and (ii) to secure other obligations of the Debtors incurred after the Petition Date, and, to the extent provided in any written agreements entered into after the Petition Date between a Debtor and the issuer of such letters of credit or such person to whom such post Petition Date obligation is owed, such issuers and such persons shall be entitled to (a) valid and enforceable senior first priority rights of setoff and liens in the cash collateral provided by a Debtor to such issuers and such persons, and (b) to enforce their rights and interests in respect of such cash collateral without regard to the provisions of the automatic stay; and it is further

ORDERED, that any requested relief relating to section 345(b) of the Bankruptcy Code and U.S. Trustee Operating Guidelines for Chapter 11 Cases not otherwise provided for in this Order is hereby adjourned until the hearing scheduled for May 28, 2009 at 1:00 p.m. (ET); and it is further

ORDERED, that the relief requested herein is granted on a final basis, except for superpriority status for Junior Reimbursement Claims arising out of Intercompany Transactions, which is granted on a final basis unless an objection is filed within ten (10) days of entry of this

Order, such objection will be heard before this Court at the hearing scheduled for May 12, 2009 at 10:00 p.m. (ET); and it is further

ORDERED, that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: Wilmington, Delaware

~~_____, 2008~~
_____ April _____, 2009

_____
THE HONORABLE KEVIN J. CAREY
        CHIEF UNITED STATES BANKRUPTCY
JUDGE