IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: May 19, 2009 @ 4:00 p.m.**<br>**Hearing Date: N/A** |

## THIRD MONTHLY APPLICATION OF ALIXPARTNERS, LLP, FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

| | |
|---|---|
| Name of Applicant: | AlixPartners, LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | *Nunc Pro Tunc* to December 19, 2008 |
| Period for which compensation and reimbursement are sought: | March 1, 2009 through March 31, 2009 |
| Amount of monthly fees to be approved as actual, reasonable and necessary: | $412,954.25 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Amount of monthly expenses sought
as actual, reasonable and necessary:          $3,978.64

This is a   __X__ monthly   ____ interim   ____ final application

Prior Applications:

| Date Filed | Docket No. | Period Covered | Total Fees Requested | Total Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 03/02/09 | 460 | 12/19/08 - 1/31/09 | $ 649,960.75 | $ 11,579.82 | $ 519,968.60 | $ 11,579.82 |
| 03/30/09 | 828 | 2/1/09 - 2/28/09 | $ 411,917.75 | $ 12,482.08 | $ 329,534.20 | $ 12,482.08 |

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Objection Deadline: May 19, 2009 @ 4:00 p.m.<br>Hearing Date: N/A |

### THIRD MONTHLY APPLICATION OF ALIXPARTNERS, LLP, FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

AlixPartners, LLP ("AlixPartners"), financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Third Monthly Application of AlixPartners, LLP, financial advisor to the Official Committee of Unsecured Creditors, for Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. §§ 330 and 331 (the "Application") for services performed during the period commencing March 1, 2009 through and including March

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

31, 2009 (the "Application Period"). In support thereof, AlixPartners respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008, (the "Petition Date"), the Debtors commenced these bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

3. On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed the Committee, and on December 19, 2008, the Committee selected AlixPartners to serve as its financial advisor.

4. On February 20, 2009, this Court entered an order authorizing the employment and retention of AlixPartners as financial advisor to the Committee *nunc pro tunc* to December 19, 2008.

5. On March 19, 2009, the Court entered an order appointing Stuart Maue as fee examiner for these chapter 11 cases *nunc pro tunc* to February 20, 2009.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

7. The statutory bases for relief requested herein are Bankruptcy Code Sections 105(a), 330 and 331.

2

## TERMS AND CONDITIONS OF COMPENSATION OF ALIXPARTNERS

8.  Subject to Court approval, AlixPartners seeks payment for compensation on an hourly basis, plus reimbursement of actual, necessary expenses incurred by AlixPartners during the Application Period. The rates charged by AlixPartners in these cases do not differ from the rates charged to AlixPartners' non-bankruptcy clients.

9.  A summary of the hours spent, the names of each professional rendering services to the Committee during the Application Period, the regular customary billing rates and the total value of time incurred by each of the AlixPartners professionals rendering services to the Committee is attached hereto as Exhibit "A." A copy of the computer generated time entries reflecting the time recorded for these services, organized in project billing categories in accordance with the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines"), is attached hereto as Exhibit "B." A statement of expenses incurred by AlixPartners during the Application Period is attached hereto as Exhibit "C." All time entries and requested expenses are in compliance with Local Rule 2016-2.[2]

10. On January 15, 2009, this Court entered the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Administrative Order"). Pursuant to the Administrative Order, AlixPartners and other professionals retained in these cases are authorized to file and to serve upon the Debtors and the parties identified in the Administrative Order monthly fee applications (each a "Monthly Fee Application") of their fees and expenses. After the expiration of a twenty (20) day objection period, the Debtors are authorized to promptly pay

---

[2] AlixPartners has also attempted to ensure that this Application complies with the Guidelines. To the extent that the Guidelines conflict with local rules, in particular, Local Rule 2016-2, AlixPartners has chosen to comply with such local rule. AlixPartners will supplement this Application with additional detail or information upon request.

3

eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Fee Application, unless an objection has been lodged against specific fees and/or expenses, or the Court orders otherwise.

11. In accordance with the Administrative Order, AlixPartners has filed and served upon the Debtors and other parties identified in the Administrative Order this Application with respect to fees and expenses incurred during the Application Period; to wit, fees in the amount of $412,954.25 and expenses in the amount of $3,978.64.

12. All services and costs for which compensation is requested by AlixPartners in this Application were reasonable and necessary and were performed for and on behalf of the Committee during the Application Period.

## CASE STATUS

13. To the best of AlixPartners' knowledge, the Debtors' monthly operating reports contain up-to-date information regarding the amount of cash on hand or on deposit in the Debtors' estates, the Debtors' operating profits or losses, and the amount of unencumbered funds in the Debtors' estates.

14. To the best of AlixPartners' knowledge, the Debtors have paid to the United States Trustee their initial quarterly fees and have filed their monthly operating report for the period of February 2, 2009 through March 1, 2009.

## NARRATIVE SUMMARY OF SERVICES RENDERED ON A PROJECT SUMMARY BASIS

15. All of the professional services that AlixPartners rendered to the Committee during the Application Period are set forth in detail in Exhibit "B," segregated according to project billing categories pursuant to the Guidelines. A brief description of certain services deserving specific mention are highlighted below, by project category:

       **(A)**    <u>**Business Analysis**</u>**: (Total Hours: 25.7; Total Fees: $14,209.00)**

    16.    Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed the Debtors' business units, operations, management and strategic initiatives. In addition, AlixPartners reviewed and analyzed developments and news of industry peers and prepared industry comparable analysis with the Debtors. Such services were important in this early stage of the bankruptcy proceedings, as AlixPartners will require a good understanding of the Debtors' business in order to properly perform its services on behalf of the Committee.

       **(B)**    <u>**Cash Management**</u>**: (Total Hours: 60.7; Total Fees: $33,280.00)**

    17.    Among other services provided in this category during the Application Period, AlixPartners monitored and analyzed the Debtors' cash flow results and forecasts and reviewed cash management matters including intercompany accounts. AlixPartners also engaged in ongoing discussions with Committee counsel and with the Debtors and their advisors with respect to reporting of intercompany activities between Debtor entities and non-Debtor entities.

       **(C)**    <u>**Financing**</u>**: (Total Hours: 25.3; Total Fees: $13,535.00)**

    18.    Among other services provided in this category during the Application Period, AlixPartners participated in discussions with Debtors' management regarding potential extension of the Securitization Facility or replacement of the facility at maturity in April 2009. AlixPartners reviewed the proposed terms of the amended Securitization Facility and has reviewed and analyzed the Debtors' monthly reports in regard to the financing.

       **(D)**    <u>**Current Financials**</u>**: (Total Hours: 191.9; Total Fees: $100,663.50)**

    19.    Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed the Debtors' historical and current financial statements,

operating statistics and management operating reports. AlixPartners prepared weekly presentations to the Committee on cash flow and operating performance. In addition, AlixPartners reviewed and analyzed the Debtors' monthly operating reports for periods January 2009, February 2009, and relevant historical periods and prepared reports to the Committee on the Debtors' financial results. AlixPartners also reviewed and analyzed the weekly cash flow reports provided by the Debtors comparing actual performance to forecast, by week, for a thirteen week period and discussed variances with Debtors' advisors. AlixPartners summarized weekly cash flow changes resulting in ending cash balances for both Debtors and Non-Debtors and provided periodic reporting to the Committee.

      (E)    **Prospective Financials**: **(Total Hours: 238.0; Total Fees: $126,781.00)**

    20.    Among other services provided in this category during the Application Period, AlixPartners commenced its review and analysis of the Debtors' initial 2009 Operating Plan by business unit and the underlying assumptions and provided initial reporting to the Committee with respect to the Operating Plan. AlixPartners reviewed and analyzed the Debtors' forecasted performance as reflected in the thirteen week cash flow forecast and weekly revenue flash reports. AlixPartners has also participated in discussions and presentations with Debtors' management regarding the business outlook, strategic initiatives and business planning process for 2009.

      (F)    **Vendor Issues**: **(Total Hours: 10.4; Total Fees: $5,542.00)**

    21.    Among other services provided in this category during the Application Period, AlixPartners continued to track amounts paid to all critical vendors and 503(b)(9) claims and compared such amounts paid to first day order dollar limits. In addition, AlixPartners reviewed

and analyzed all pre-notification of certain payments exceeding $250,000 as part of the monitoring program established in the prior period.

(G) **Employee Issues:** (Total Hours: 85.7; Total Fees: $45,259.00)

22. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed various motions related to the continuation of medical benefits for employees terminated prior to the approval of the post-petition severance plan. In addition, AlixPartners commenced its review and analysis of the Debtors' proposed 2008 management incentive plan ("MIP") payments, 2008 pre-petition severance payments, and 2009 MIP and key employee incentive plan ("KEIP"). AlixPartners also participated in various discussions with the Debtors and Debtors' advisors regarding the MIPs and KEIP.

(H) **Plan of Reorganization:** (Total Hours: 1.0; Total Fees: $790.00)

23. Among other services provided in this category during the Application Period, AlixPartners discussed various ESOP and tax issues related to potential plan of reorganization with Committee counsel.

(I) **Executory Contracts:** (Total Hours: 12.6; Total Fees: $6,579.00)

24. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed various Debtors' motions for the rejection of certain executory contracts, including real estate lease rejections.

(J) **Asset Sales:** (Total Hours: 5.5; Total Fees: $2,986.00)

25. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed potential sale of assets and business units. AlixPartners also reviewed tax issues relating to the Debtors' Employee Stock Ownership Plan and S-Corporation status.

  (K) **Avoidance Actions:** **(Total Hours: 30.3; Total Fees: $16,293.50)**

  26. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed potential avoidance actions, including those relating to the Debtors' leveraged ESOP transaction.

  (L) **UCC Meetings:** **(Total Hours: 20.2; Total Fees: $12,862.50)**

  27. Among other services provided in this category during the Application Period, AlixPartners participated in regular and special meetings of the Unsecured Creditors' Committee and with the Committee's professionals. These meetings have included both in-person and telephonic meetings.

  (M) **Billing and Retention:** **(Total Hours: 16.0; Total Fees: $8,462.00)**

  28. Among other services provided in this category during the Application Period, AlixPartners prepared and filed its first and second monthly fee application and exhibits.

  (N) **Non-Working Travel:** **(Total Hours: 45.3; Total Fees: $24,703.50, before 50% adjustment)**

  29. During the Application Period, AlixPartners incurred non-working travel time necessary to attend meetings in Chicago and New York. Non-working travel fees requested are at 50% of AlixPartners' normal hourly rates.

  (O) **Planning, Supervision and Review:** **(Total Hours: 21.6; Total Fees: $13,360.00)**

  30. Among other services provided in this category during the Application Period, AlixPartners engaged in various activities related to the efficient performance of its services, including requests for due diligence documentation and coordination of activities with other professionals in the case in order to avoid duplication of effort. Additionally, AlixPartners coordinated and planned various on site due diligence visits to Debtors' publishing and

broadcasting business units with Debtors' advisors and other professionals as part of the 2009 Operating Plan review and due diligence process.

## COMPENSATION REQUESTED

31. AlixPartners expended 790.2 hours during the Application Period in furtherance of its efforts on behalf of the Committee. AlixPartners requests allowance of compensation in the amount of $412,954.25 for services rendered during the Application Period. Pursuant to the Administrative Order, AlixPartners requests payment of 80% of the total fees requested, or $330,363.40. None of the requested fees detailed herein have been paid.

## REIMBURSEMENT OF EXPENSES

32. During the Application Period, AlixPartners incurred certain necessary expenses in rendering services to the Committee as set forth in Exhibit "C." AlixPartners seeks reimbursement only for the actual expenses charged by third-party service providers. AlixPartners seeks reimbursement for computer assisted research, which is the actual cost of such charges.

33. AlixPartners seeks reimbursement for its reasonable, necessary and actual expenses incurred during the Application Period for the total amount of $3,978.64.

## LEGAL STANDARD

34. Bankruptcy Code Section 330(a)(1) allows the payment of:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional

9

and the cost of comparable services in non-bankruptcy contexts. See <u>Zolfo Cooper & Co. v. Sunbeam-Oster Co.</u>, 50 F.3d 253, 258 (3d Cir. 1995); <u>In re Busy Beaver Building Ctr., Inc.</u>, 19 F.3d 833, 849 (3d Cir. 1994). Thus, the "baseline rule is for firms to receive their customary rates." <u>Zolfo Cooper</u>, 50 F.3d at 259.

35. In accordance with its practices in both bankruptcy and non-bankruptcy matters, AlixPartners has calculated its compensation requested in this Application by applying its standard hourly rates to the number of hours worked. AlixPartners' calculation is based upon hourly rates that are well within the range of rates that are charged by comparable firms in similar bankruptcy cases. Accordingly, AlixPartners' rates should be determined to be reasonable under Bankruptcy Code Section 330.

36. AlixPartners' fees during the Application Period are also reasonable under the prevailing legal standard and should be allowed. The amount of these fees is not unusual given the complexity and size of the Debtors' Chapter 11 cases. AlixPartners' fees are commensurate with fees that other financial advisors of comparable experience and expertise have charged and been awarded in similar Chapter 11 cases. Accordingly, AlixPartners' fees are reasonable pursuant to Bankruptcy Code Section 330.

37. Bankruptcy Code Section 330(a)(1)(B) permits reimbursement for actual, necessary expenses. AlixPartners' expenses incurred during the Application Period are set forth in this Application and constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. AlixPartners has properly requested reimbursement of only actual, necessary and appropriate expenses.

38. Except as permitted by Rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or understanding exists between AlixPartners and/or any third person for the

10

sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Committee.

39. Pursuant to the standards set forth in Bankruptcy Code Sections 330 and 331, AlixPartners submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

40. The time records annexed to this Application constitute only a general statement of the services rendered and time expended without description of the pressure and constraints under which AlixPartners actually rendered these services. The considerable challenges of these cases have been attended to and managed by AlixPartners at all levels, promptly, expertly and often to the exclusion of other matters in AlixPartners' office. AlixPartners submits, therefore, that its fees and expenses were actually, necessary, reasonable and justified, and should be allowed in full.

## NOTICE AND NO PRIOR APPLICATION

41. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Application has been given to: (a) the Debtors; (b) counsel to the Debtors; (c) the United States Trustee; and (d) all parties required to be given notice in the Administrative Order. In light of the nature of the relief requested herein, AlixPartners submits that no further or other notice is required.

42. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, AlixPartners respectfully requests that the Court: (i) grant the Application; and (ii) grant such other and further relief as is just and proper.

Dated: April 29, 2009
      Wilmington, Delaware

**ALIXPARTNERS, LLP**

_____
Alan D. Holtz
9 West 57th Street, Suite 3420
New York, NY 10019
Telephone: (212) 490-2500
Facsimile: (212) 490-1344

*Financial Advisor to the Official Committee
of Unsecured Creditors*