## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Proposed Hearing Date: May 12, 2009 at 10:00 a.m. EDT**<br>**Proposed Objection Deadline: May 7, 2009 at 4 p.m. EDT** |

## MOTION OF DEBTOR TRIBUNE BROADCASTING COMPANY FOR AN ORDER AUTHORIZING ENTRY INTO POSTPETITION STATION AFFILIATION AND RELATED AGREEMENTS WITH THE CW NETWORK, LLC

Tribune Broadcasting Company, one of the above-captioned debtors and debtors

in possession ("Tribune Broadcasting" or the "Debtor" and collectively, the "Debtors"), by and

through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order

pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy

Code") authorizing Tribune Broadcasting and twelve (12) of its wholly-owned Debtor

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

subsidiaries (the "Station Affiliates") to enter into certain station affiliation and related agreements (collectively, the "New Agreements")[2] with The CW Network, LLC ("the CW").[3] Tribune Broadcasting, the Station Affiliates, and the CW intend to enter into the New Agreements substantially in the form attached hereto as Exhibit A.[4] In support of this Motion, Tribune Broadcasting respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1.     On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.     The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). The Committee has been apprised of the relief requested herein.

---

[2] The New Agreements are comprised of (i) the new station affiliation agreements; (ii) the additional terms letter agreements governing certain aspects of the station affiliation agreements, including compensation; and (iii) the side letter agreement between Tribune Broadcasting and the CW concerning media promotion obligations in certain markets in which the Station Affiliates operate. Nothing contained in this Motion is intended to alter any provision of the New Agreements. In the event of a discrepancy between the description of such New Agreements in this Motion and their actual terms as reflected in the exhibits, the terms of such New Agreements shall control.

[3] Solely as a procedural precaution, the CW has requested that the Debtors seek, in the alternative, authorization to implement the terms of the New Agreements through the assumption under 11 U.S.C. § 365(a) of the Prepetition Affiliation Agreements (as defined herein), as amended by the terms in the New Agreements. Accordingly, solely in the event that a determination is made that assumption is the more appropriate vehicle to implement the requested relief, the Debtors seek such relief in the alternative. See paragraphs 19-20.

[4] The New Agreements attached as Exhibit A have been redacted to protect confidential, commercial or competitively sensitive information. A joint motion to file the New Agreements under seal is being filed contemporaneously with this Motion.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

6.      Tribune Company ("Tribune"), a debtor in the above-captioned case, is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment.

7.      Tribune's broadcasting and entertainment segment includes 24 television stations, WGN America, WGN-AM, and the Chicago Cubs baseball team.[5] Through its television stations and WGN America, Tribune's broadcasting and entertainment segment reaches more than 80% of television households in the United States.

8.      The CW is a major television network, whose programming is broadcast on television stations throughout the United States, including thirteen (13) television stations owned by the Station Affiliates.[6] Prior to the Petition Date, Tribune Broadcasting, the Station Affiliates, and the CW entered into various affiliation and similar agreements (the "Prepetition

---

[5] The broadcasting and entertainment segment includes the subsidiaries that own the Chicago Cubs baseball operations and an equity interest in regional sports network Comcast SportsNet Chicago, LLC, which are not Debtors in these cases.

[6] These subsidiaries, their stations, and the television markets served are as follows: WPIX, Inc. (WPIX, New York, NY); KTLA Inc. (KTLA, Los Angeles, CA); WGN Continental Broadcasting Company (WGN-TV, Chicago, IL); Tribune Television Company (KDAF, Dallas, TX); WDCW Broadcasting, Inc. (WDCW, Washington, DC); KIAH Inc. (KIAH, Houston, TX); Channel 39, Inc. (WSFL-TV, Miami, FL); KWGN Inc. (KWGN-TV, Denver, CO); KPLR Inc. (KPLR, St. Louis, MO); Tribune Broadcast Holdings, Inc. (KRCW, Portland, OR and WTTV, Indianapolis, IN); WTXX Inc. (WTXX, Hartford, CT); and Tribune Television New Orleans, Inc. (WNOL-TV, New Orleans, LA). KSWB Inc. (KSWB, San Diego, CA) changed its affiliation to the Fox Broadcasting Company on August 1, 2008, but remains party to an affiliation agreement with CW. The parties have consensually agreed to terminate this affiliation agreement effective June 2009 and therefore KSWB Inc. is not a party to the relief requested herein.

Affiliation Agreements"), which, inter alia, enable the Station Affiliates to broadcast 30 hours per week of network programming from the CW. The Station Affiliates comprise the only outlets for CW programming in the largest television markets in the country, including New York, Los Angeles and Chicago, as well as other smaller but important television markets. Approximately one-third of the CW's total prime time audience watches CW exclusively on the Station Affiliates' stations. The CW currently provides most of the prime time programming provided to the Station Affiliates.

9.    Generally, the Prepetition Affiliation Agreements set forth the terms pursuant to which the CW provides network programming for broadcast by each Station Affiliate on an exclusive basis within the television market served. In connection with such programming, the CW also provides the Station Affiliates with station identification, on-air promotional announcements, and the ability to insert local commercial advertisements into the network programming. In turn, each Station Affiliate agrees to broadcast such programming, promotional announcements, and the network commercial advertisements included within the programming during the time frames specified in the Prepetition Affiliation Agreements.

10.    Over the past several months, Tribune Broadcasting, the Station Affiliates, and the CW have engaged in discussions regarding the return of certain programming time slots to the Station Affiliates that are currently reserved for the CW network programming. The Station Affiliates would then be solely responsible for programming these time slots and would control all related commercial advertising inventory. In order to implement this reallocation, Tribune Broadcasting and the Station Affiliates have determined that it is in their best interests to consensually terminate the Prepetition Affiliation Agreements and simultaneously enter into the New Agreements. The terms of the New Agreements provide for the aforementioned return of

certain programming time slots back to the Station Affiliates, commencing in the 2009-2010, 2010-2011, or 2011-2012 broadcast seasons. Greater control over programming time slots will give the Station Affiliates the flexibility to air alternate programming and, in connection therewith, to retain more commercial advertising inventory to sell to advertisers, the key source of revenue for the Stations Affiliates. Accordingly, the proposed reallocation of the programming time slots in the New Agreements is anticipated to provide enhanced economic benefits to the Station Affiliates in the form of increased advertising revenue, relative to the existing Prepetition Affiliation Agreements.

11.    Tribune Broadcasting and the Station Affiliates desire to enter into the New Agreements at this juncture in order to secure the economic benefits of these additional programming time slots for the 2009-2010 broadcast season. The CW must commit to license programming worth hundreds of millions of dollars by early May 2009, in order to acquire first-run television programming for its 2009-2010 television season. However, the CW cannot finalize its program schedule without a binding agreement that the Station Affiliates will continue to broadcast the CW programming. The majority of the CW's revenue comes from advertising commitments contracted during the annual "Advertising Upfront". This annual event begins with an "Upfront Presentation" which takes place in May of each year. At the Upfront Presentation, the CW unveils its network programming for the following television season (which runs from September through August) and advertisers make commitments to purchase advertising on those programs from the CW. The Station Affiliates also invite many of their key advertisers to the Upfront Presentation to showcase the programming that they can advertise on the Station Affiliates' in the Fall. This year, the CW's Upfront Presentation takes place on May 21, 2009.

12.     In order to have its network program schedule for the 2009-2010 season in place by the date of the Upfront Presentation, the CW must commit to the acquisition of programming several weeks prior to the Upfront Presentation.  Therefore, time is of the essence for each of the parties to enter into the New Agreements and begin preparations for this Fall's broadcast season.

### RELIEF REQUESTED

13.     Tribune Broadcasting and the Station Affiliates, in the exercise of their business judgment, have determined that it is in their best interests and in the best interests of their estates and creditors, to obtain the enhanced economic benefits they believe will be provided by the New Agreements.  Accordingly, Tribune Broadcasting and the Station Affiliates request that the Court authorize entry into the New Agreements upon termination of the Prepetition Affiliation Agreements.  Alternatively, and at the request of the CW, solely in the even of a determination that the appropriate vehicle for the requested relief is through the amendment and assumption of the Prepetition Affiliation Agreements, Tribune Broadcasting and the Station Affiliates request that the Court authorize the Debtors to assume the Prepetition Affiliation Agreements, as amended by the new terms reflected in the New Agreements, pursuant to section 365(a) of the Bankruptcy Code.[7]

14.     Based on their existing Prepetition Affiliation Agreements with the CW and their experience with similar station affiliation agreements and the television broadcasting industry generally, Tribune Broadcasting and the Station Affiliates believe the entry into the New Agreements is likely within their ordinary course of business.  Notwithstanding the

---

[7] The form of the Prepetition Affiliation Agreements is substantially similar to the form of the New Agreements, but for the new terms contained in paragraphs 2 of the new station affiliation agreements and the specific retention by the parties of such remedies in the event of a breach as they have in law and equity.  There are no material changes to the new additional terms letter agreements.  Accordingly, the Prepetition Affiliation Agreements, as amended, are substantially in the form reflected on the attached Exhibit A.

foregoing out of an abundance of caution, Tribune Broadcasting and the Station Affiliates seek Court authorization to enter into the New Agreements.

## BASIS FOR RELIEF

15.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.[8]

16.     In this Circuit, courts have repeatedly approved the use of a debtor's assets outside of the ordinary course of business if the debtor can propose a sound business justification. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363).

17.     A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d

---

[8] Contemporaneously with the filing of this Motion, Tribune Broadcasting and the CW have jointly filed a motion requesting entry of an order shortening the notice periods for this Motion and for their joint motion to file the New Agreements under seal.

858, 872 (Del. 1985)).  In other words, the business judgment rule essentially shields the debtor's

management from judicial second-guessing and mandates that a court approve a debtor's

business decision unless the decision is a product of bad faith or gross abuse of discretion.  See

In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville

Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct").

      18.    There are substantial business justifications for granting the relief

requested herein.  The affiliate/network relationship between the Station Affiliates and the CW is

very important and valuable to the Debtors.  Most of the prime time programming for the Station

Affiliates is delivered by the CW Television Network.  The New Agreements are the product of

arms-length, good-faith negotiations between the parties that commenced several months prior to

the Petition Date.  After extensively evaluating the terms of the New Agreements, Tribune

Broadcasting believes that the terms are fair and reasonable, consistent with industry practice,

and economically favorable to Tribune Broadcasting and the Station Affiliates.  The New

Agreements will provide the Station Affiliates with more control over programming that leads

into higher revenue time periods (e.g., local news on Sundays and 5 p.m. time slots on

weekdays).  In addition, the Station Affiliates will retain more (if not all) of the commercial

advertising inventory contained in the time slots reverted back to them from the CW.  Moreover,

control over the programming time slots translates into control over the advertising that is sold

during those time slots.  In addition to the tangible benefits to the Debtors, the reallocation of

programming time slots in the New Agreements will enable the CW to concentrate its attention

and resources on developing first-run original programming for Monday-Friday prime-time that will draw audiences to the network, and in turn to the Station Affiliates.

19.    In the alternative, and as requested by the CW, in order to implement the terms in the New Agreements on an expedited basis, Tribune Broadcasting and the Station Affiliates are prepared, if necessary, to amend their Prepetition Affiliation Agreements consistent with the terms in the New Agreements and assume such amended Prepetition Affiliation Agreements (which will be in substantially the same form as the New Agreements) pursuant to section 365 of the Bankruptcy Code.  It is well established in the Third Circuit, as in other jurisdictions, that decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the Debtor.  Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 40 (3d Cir. 1989). See also NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("In determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test.  Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered.") (internal citations omitted); In re Orion Pictures Corp., 4 F.3d 1095, 1099 (2d Cir. 1993), cert. dismissed 511 U.S. 1026 (1994).  The standard for reviewing a debtor's decision to assume an executory contract is the same as the standard for authorizing a debtor to enter into a contract other than in the ordinary course of its business.  Both are proper if done in the reasonable exercise of the debtor's business judgment. In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ionosphere Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989) ("[T]he business judgment rule is the standard to be applied under either scenario.").  There are no prepetition amounts owing by any of the Debtors to the CW with respect to the Prepetition Affiliation Agreements

and thus no "cure" amounts are implicated.  Accordingly, assumption of the Prepetition

Affiliation Agreements, as amended by the terms reflected in the New Agreements, would be a

reasonable exercise of the Debtors' business judgment.

## NOTICE

20.    Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the

United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v)

counsel for the Committee; (vi) counsel to the Steering Committee for the Debtors' prepetition

loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing

facility; (viii) counsel to the CW; and (ix) all parties having requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Tribune Broadcasting

submits no other or further notice is necessary.

## NO PRIOR REQUEST

21.    Tribune Broadcasting has not previously sought the relief requested herein

from this or any other Court.

WHEREFORE, Tribune Broadcasting respectfully requests that the Court enter an order, in substantially the form attached hereto as Exhibit B, (i) authorizing Tribune Broadcasting and the Station Affiliates to enter into the New Agreements or, alternatively, to assume the Prepetition Affiliation Agreements as amended by the New Agreements; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      April 29, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Janet E. Henderson
Kerriann S. Mills
Jillian K. McClelland
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION