# EXHIBIT A

## *STATION AFFILIATION AND RELATED AGREEMENTS*

(i)     Form of the station affiliation agreements;

(ii)    Form of additional terms letter agreements [FILED UNDER SEAL]; and

(iii)   Side letter agreement [REDACTED; UNREDACTED COPY FILED UNDER SEAL].

STATION AFFILIATION AGREEMENT

Dated as of May __, 2009


[LICENSEE ENTITY]
[ADDRESS]
[CITY, STATE ZIP]


Attention:  _____, VP/General Manager


The following shall comprise the agreement between The CW NETWORK, LLC ("Network," "we," or "us"), and [LICENSEE ENTITY] ("Affiliate" or "you") for the affiliation of your analog television station XXXX and your digital television station XXXX-DT (collectively, "Station") with Network for carriage of Network programming.    The Federal Communications Commission ("FCC") has issued a broadcast license ("License") to you to operate Station in [CITY OF LICENSE, STATE], the community in which Station is licensed by the FCC.    Station is within the [MARKET NAME]   Designated Market Area ("DMA"), as defined by Nielsen Media Research, Inc. ("Nielsen").  All references in this Agreement to "Network Program(s)" and "Network Programming" and any variations thereof shall mean the programming made available by Network under this Agreement.

1.    <u>Network Programming</u>:

      (a)   Network will make Network Programs available to Affiliate, for free over-the-air broadcast by Station in the DMA and retransmission by satellite carriers and cable television systems during the term of this Agreement, subject to the restrictions on retransmission rights set forth in paragraph 14. Network hereby grants to Affiliate the exclusive license to have Station broadcast the Network Programming in the DMA only as scheduled by Network over free over-the-air television over the facilities of Station. Subject to paragraph 2 below, Network shall have the sole discretion to select, schedule, substitute and/or withdraw Network Programming or any portion(s) thereof.   Network shall also have the right to authorize any television broadcasting station, regardless of the community in which it is licensed by the FCC, to broadcast any presentation of a subject we deem to be of immediate national significance including, but not limited to, a Presidential address. Except as provided herein, during the term of this Agreement, Affiliate shall be the sole affiliate of Network for exhibition on free over-the-air television of Network Programming in the DMA, to the maximum extent permitted by FCC rules. Network reserves all other rights which Network may have in the

[XXXX/City]
Tribune Broadcasting Company
Page 1

Network Programs that are not expressly licensed to Affiliate hereunder; provided that rights held by Network, if any, in all non-broadcast television media will be frozen, subject to the following:

Affiliate may exercise any non-broadcast television rights within the DMA that are authorized by at least two of the four other national broadcast networks (ABC, CBS, Fox and NBC) for their affiliates (including owned & operated stations) within the DMA; provided, that such rights shall be limited to the type of programming (entertainment, news or sports) in which the rights are being exercised by the two other networks' affiliates. Network may exercise any non-broadcast television rights within the DMA that are exercised by at least two of the four other national broadcast networks (ABC, CBS, Fox and NBC) for the networks' programming within the DMA; provided, that such rights shall be limited to the type of programming (entertainment, news or sports) in which the rights are being exercised by the two other networks.

(b) Network and Affiliate acknowledge that Affiliate expects to cease analog broadcasts during the term of this Agreement pursuant to a national transition to digital broadcasting, and that thereafter Station will broadcast only a digital signal. All rights and obligations of Affiliate and Network set forth in this Agreement with regard to Station (including, without limitation, program carriage, promotion, and commercial announcements) shall apply to Station's digital signal, and to its analog signal for as long as Station continues analog broadcasts. Affiliate will be obligated to broadcast in the HDTV format on Station's digital signal all Network Programming provided to Affiliate in the HDTV format. Affiliate is not obligated to provide Network with more than one digital channel in the DMA.

2. Program Carriage:

(a) We agree to make Network Programming available for broadcast by Station in accordance with the broadcast schedule set forth in subparagraph 2(c) below, throughout the term of this Agreement, subject to the provisions of subparagraph 2(i) below.

(b) Subject to the exceptions set forth in subparagraph 2(e) and the right of preemption set forth in subparagraph 2(f), Affiliate shall broadcast Network Programs over the facilities of Station on the dates and at the times scheduled by Network, in accordance with the broadcast schedule set forth in subparagraph 2(c) below. Affiliate shall broadcast Network Programs in their entirety, including but not limited to Network commercial announcements, Network identifications, program promotional material, and credit announcements contained in such programs, without interruption or deletion or addition of

any kind, except for the commercial announcements that Affiliate is allowed to add pursuant to Paragraph 5. Notwithstanding the foregoing, you may substitute other Network promotional announcements in lieu of program promotional material that is inaccurate as it pertains to Station's schedule. No commercial announcement, promotional announcement or public service announcement will be broadcast by Station during any interval within a Network Program, which interval is designated by Network as being for the sole purpose of making a station identification announcement. Affiliate agrees to broadcast Network Programming, Network commercial announcements and Network promotional announcements over the facilities of Station without time compression or alteration; provided, that it shall not be a breach of this provision for Affiliate to provide on-screen informational messages such as Emergency Alert Service messages, weather warnings, news bulletins and "AMBER Alerts," and to insert Station logos, voiceovers and date/time information in "tags" to Network Promos (as defined in subparagraph 4(a) below).

(c)    The Scheduled Program Times of Network Programming, which will remain unchanged throughout the Term of this Agreement, subject to the provisions of subparagraph 2(i) below, are set forth as follows (the specified times apply for the Eastern and Pacific Time Zones; the Mountain and Central Time Zones are one hour earlier for Prime Time and Easy View programming only):

Prime Time:          Sunday:           7:00 p.m. - 10:00 p.m. Conditioned on the ability of Network to obtain waivers of the notice requirements applicable to the Network's cessation of providing Network Programming for the corresponding program hours contained in third-party affiliation agreements, at the beginning of the 2009-2010 Contract Year (i.e. fall, 2009) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the Prime Time Sunday time period. Network shall diligently undertake commercially reasonable efforts in good faith to obtain such waivers; and shall consult with Tribune Broadcasting Company on behalf of Affiliate in connection therewith from time to time. Network in good faith and using commercially reasonable efforts shall promptly notify Affiliate and Tribune Broadcasting Company of the return to Affiliate of this time period, sufficiently in advance of the effective date thereof; provided that Affiliate and Tribune Broadcasting Company shall give Network notice of any

limitations on Affiliate's ability to effectuate at the beginning of the 2009-2010 Contract Year the return to Affiliate of this time period. The parties acknowledge that Network in good faith and using commercially reasonable efforts may not be able to effectuate the return of the time period at the beginning of the 2009-2010 Contract Year. In such event, at the beginning of the 2010-2011 Contract Year (i.e. fall, 2010) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the Prime Time Sunday time period.

Monday - Friday: 8:00 p.m. - 10:00 p.m.

Easy View:    Sunday:        5:00 p.m. - 7:00 p.m. Conditioned on the ability of Network to obtain waivers of the notice requirements applicable to the Network's cessation of providing Network Programming for the corresponding program hours contained in third-party affiliation agreements, at the beginning of the 2009-2010 Contract Year (i.e. fall, 2009) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the Easy View time period. Network shall diligently undertake commercially reasonable efforts in good faith to obtain such waivers; and shall consult with Tribune Broadcasting Company on behalf of Affiliate in connection therewith from time to time. Network in good faith and using commercially reasonable efforts shall promptly notify Affiliate and Tribune Broadcasting Company of the return to Affiliate of this time period, sufficiently in advance of the effective date thereof; provided that Affiliate and Tribune Broadcasting Company shall give Network notice of any limitations on Affiliate's ability to effectuate at the beginning of the 2009-2010 Contract Year the return to Affiliate of this time period. The parties acknowledge that Network in good faith and using commercially reasonable efforts may not be able to effectuate the return of the time period at the beginning of the 2009-

2010 Contract Year. In such event, at the beginning of the 2010-2011 Contract Year (i.e. fall, 2010) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the Easy View time period.

[KTLA ONLY: Beginning in April,2009 and thereafter until the return to Affiliate of the Easy View time period, Affiliate may broadcast the Easy View time period in pattern and otherwise as provided by Network beginning at 4:30 p.m. to permit broadcast of a local news program, beginning at 6:30 p.m.]

| | |
|---|---|
| Children's: | Saturday: 7:00 a.m. – 12:00 noon. However, if Affiliate believes that the Children's programming block should run on Sunday instead of Saturday, Network will discuss with Affiliate such a move of the programming block from Saturday to Sunday, and will consider granting such a move, in good faith, after taking into account the business interests of Network. |
| Afternoon: | Monday through Friday: 3:00 p.m. – 5:00 p.m., for presentation of General Entertainment Programming. Conditioned on the ability of Network to obtain waivers of the notice requirements applicable to the Network's cessation of providing Network Programming for the corresponding program hours contained in third-party affiliation agreements, at the beginning of the 2010-2011 Contract Year (i.e. fall, 2010) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the time period between 4:00 p.m. and 5:00 p.m.. Network shall diligently undertake commercially reasonable efforts in good faith to obtain such waivers; and shall consult with Tribune Broadcasting Company on behalf of Affiliate in connection therewith from time to time. Network in good faith and using commercially reasonable efforts shall promptly notify Affiliate and Tribune Broadcasting Company of the return to Affiliate of this time period, sufficiently in advance of the effective date thereof; provided that Affiliate and Tribune Broadcasting Company shall give Network notice of any |

limitations on Affiliate's ability to effectuate at the beginning of the 2010-2011 Contract Year the return to Affiliate of this time period. The parties acknowledge that Network in good faith and using commercially reasonable efforts may not be able to effectuate the return of the time period at the beginning of the 2010-2011 Contract Year. In such event, at the beginning of the 2011-2012 Contract Year (i.e. fall, 2011) and thereafter throughout the Term, Network will stop making Network Programming available for broadcast by Affiliate during the Afternoon General Entertainment Programming time period between 4:00 p.m. and 5:00 p.m.

"General Entertainment Programming" means episodes of (i) any first-run series, (ii) any syndicated series, or (iii) any primetime series produced for initial broadcast on ABC, NBC, CBS, FOX, WB, UPN or Network that has at least eighty-seven episodes available to be licensed, except that the minimum number of available primetime series episodes to meet the terms of the definition will be waived with respect to the series "What I Like About You." General Entertainment Programming will not be licensed to any third party for exhibition in the DMA via broadcast or basic cable television between 2 p.m. and 5 p.m., Monday through Friday; provided, that the series "What I Like About You," "ER" and "Reba" will not be subject to the restriction on basic cable exhibition.

Prior to the beginning of each Contract Year following the reduction in General Entertainment Programming as set forth above, Network will in good faith consult with Affiliate and Tribune Broadcasting Company and give reasonable consideration to Affiliate's and Tribune Broadcasting Company's views with regard to Network's selection of General Entertainment Programming.

In the event that Network in its sole and complete discretion determines that it will lease the time period between 3:00 p.m. and 4:00 p.m. to a program supplier in return for a cash payment, Tribune Broadcasting Company will have the right to match the terms of the program supplier's offer to lease the time period from Network, before the Network can conclude the agreement. Network will provide Tribune Broadcasting Company with written notice of any such offer it is prepared to accept, which notification will describe the terms and conditions of the offer. Tribune

Broadcasting Company will have thirty (30) days after receiving the notice to match the terms of the offer. The matching terms must include an undertaking by Tribune to provide General Entertainment Programming to all Network affiliates in fulfillment of all the obligations of Network without any change in the terms of the Network agreements with those affiliates. This matching right will not apply either to the a barter agreement or the license of programs from a program supplier in return for a license fee payable by Network to the program supplier.

(d)    Network, as of the date on which television stations are required to surrender their analog signals (the "digital conversion date") (as mandated by statute or FCC regulation), and employing all commercially reasonable efforts to implement the provisions of this sentence before the digital conversion date, shall deliver all Network Programming, other than Children's programming, to Affiliate in the HDTV format. All Prime Time Network Programming will consist of original and repeat episodes of first-run series, first-run special programs, theatrical feature films and occasional programs or series initially produced for other networks, except that: (i) up to three hours of regularly scheduled Prime Time Network Programming per broadcast week may consist of repeat broadcasts of episodes of Network series broadcast in another Prime Time time period during the same week or theatrical feature films (collectively, "Replays"), provided that after Network ceases broadcasting regularly scheduled professional wrestling programming, up to two hours (which may be exceeded on occasion for films on Sundays that run over two hours) of theatrical feature films will not thereafter be considered "Replays"; (ii) up to one hour of regularly scheduled Prime Time Network Programming per broadcast week may be episodes of a Prime Time Network series from a prior broadcast season ("Beginnings episodes"), provided that if one hour of Beginnings episodes is broadcast in any week, then not more than two hours of Replays will be broadcast in that week; and (iii) if, pursuant to clause (B) of subparagraph 2(i) below, Network ceases providing the three hours of Sunday Prime Time Network Programming, then the three hours of Replays referenced in clause (i) above will thereafter be deemed to read "two hours" and the two hours of Replays referenced in clause (ii) above will thereafter be deemed to read "one hour"; if, pursuant to clause (B) of subparagraph 2(i) below, Network ceases providing the two hours of Friday Prime Time Network Programming, then the three hours of Replays referenced in clause (i) above will thereafter be deemed to read "two and one-half hours," and the two hours of Replays referenced in clause (ii) above will thereafter be deemed to read "one and one-half hours." Easy View Network Programming will consist of Replays or episodes of current Prime Time Network series from the current broadcast season, except that not more than one hour of Easy View

Network Programming shall consist of Replays or other episodes of a series in its first season as a Network series.

(e)  You confirm that as of the date of this Agreement you have no commitments, except those listed in Schedule 1 hereto, which would impede Station's broadcasting all Network Programming made available during the term of this Agreement. If any Network Programming is not broadcast by you because of any such commitment expressly described in Schedule 1 (but excluding non-sports extensions by exercise of options by Affiliate [but not by the programming licensor] or otherwise), then such programming shall be broadcast in a time period upon which you and we shall mutually agree and which shall be of a quality and rating value comparable to that of the Scheduled Program Times. These programs will not be considered preempted for purposes of subparagraph 2(f). Notwithstanding the foregoing, (i) Affiliate may not make more than 15 "Prime Time Preemptions" of Network Programming in any Contract Year pursuant to its commitments described in Schedule 1 or any extension or renewal thereof, or any other such commitment entered into by Affiliate with Network's consent (as used in this subparagraph 2(e), a "Prime Time Preemption" is defined as a 2 hour or 3 hour block of Prime Time Network Programming not run in pattern, with a preemption of one hour of Network Programming counting as 50% of one Prime Time Preemption); and (ii) Affiliate may not make more than that number of preemptions of Network Programming, other than Prime Time Network Programming, in any Contract Year pursuant to its commitments described in Schedule 1 or any extension or renewal thereof, or any other such commitment entered into by Affiliate with Network's consent, which will be negotiated in good faith between Affiliate and Network, based on Station's past practice, no later than 30 days after the date on which Network commences broadcasting on a regularly scheduled basis.

(f)  Notwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall be construed to prevent or hinder Affiliate from (i) rejecting or refusing any Network Program or commercial announcement which Affiliate reasonably believes to be unsatisfactory or unsuitable or contrary to the public interest or (ii) substituting a program which, in Affiliate's opinion, is of greater local or national importance. In such an event, you shall provide us with advance written notice of any such rejection, refusal or substitution, no later than 14 days prior to the air date of such programming, except where the nature of the substitute program makes such notice impracticable (e.g., coverage of breaking news or other unscheduled events) or the programming has not been made available to you by such date, in which cases you agree to give us as much advance notice as the circumstances permit. Such notice shall include a statement of the reasons you believe that the

rejected Network Programming or commercial announcement is unsatisfactory or unsuitable or contrary to the public interest, and/or that a substituted program is of greater local or national importance.

To the extent that you substitute another program for a Network Program as permitted under subparagraph 2(f)(ii), then you will broadcast such omitted program and the commercial announcements contained therein (or any replacement programming provided by Network and the commercial announcements contained therein) during a time period upon which you and we shall promptly and mutually agree and which shall be of quality and rating value comparable to that of the preempted program's Scheduled Program Time. In the event that the parties do not promptly agree upon such a time period after reasonable consultation in good faith and after taking into account the practical alternatives under the circumstances, then, without limiting any other rights of Network under this Agreement or otherwise, we shall have the right to license the broadcast rights to the applicable omitted programming (or replacement programming) to another television station located in the DMA.

Except as provided in Paragraph 2(e), above, in addition, if three or more episodes of a program series are preempted by you as permitted hereunder in any thirteen-week period, for any reasons other than force majeure as provided in Paragraph 6, we shall have the right, upon 60 days prior written notice, to terminate your right to broadcast that program series and to withdraw all future episodes of that series. Such thirteen-week periods shall be measured consecutively from the first broadcast date of the program series in question. If we subsequently place such a series on another station in the DMA, we reserve the right not to offer you the broadcast rights to that series for subsequent broadcast seasons.

In addition to all other remedies, to the extent one or more episodes of a program series is preempted by you in violation of (i.e., other than as permitted under) this Paragraph 2, we shall have the right, upon 30 days prior written notice, to terminate your right to broadcast the remainder of the program series and withdraw all future episodes of that series from you.

Affiliate reserves the right to refuse to broadcast any commercial or promotional announcement that promotes or advertises programming telecast by a network (including a cable or satellite network) other than Network ("Other Network"), unless the announcement (A) does not specify the broadcast time or date of the Other Network's program (the announcement may specify the day of the week of the broadcast), and (B) the program series promoted in the

announcement is not under license to Affiliate for broadcast on the Station.

(g)  Except as provided in subparagraphs 2(c) and 2(d) above, nothing in this Agreement shall be construed to prevent or hinder Network from (i) substituting one or more Network Programs for previously scheduled Network programs, in which event Network will make the substituted programs available to Station pursuant to the provisions of Paragraph 1 and Paragraph 3; or (ii) canceling one or more Network Programs. Further, except as provided in this paragraph 2, nothing in this Agreement shall be construed to obligate Network to provide a minimum or specific number of Network Programs.

(h)  Affiliate shall maintain substantially the same quality and coverage of Station's analog (for as long as Station continues analog broadcasts) and digital broadcast signals as at the inception of the term of this Agreement. If at any time Station's signal does not meet this standard, Affiliate shall use commercially reasonable efforts to restore the quality of its signal as quickly as possible. So long as Station is pursuing such remedial efforts, or if Affiliate is unable to restore its signal quality for any period due to a force majeure event, Affiliate shall not be deemed in breach of this Agreement.

(i)  Once Network ceases providing Network Programming for any time period as contemplated in this paragraph 2, Network may not thereafter resume providing Network Programming for the time period without Affiliate's consent.

3.  Delivery:  Network agrees to make the Network Programming available to Affiliate by satellite transmission in not more than two feeds, East Coast and West Coast. Network shall incur no costs regarding the satellite downlink and broadcast by Station; Affiliate shall incur no up-link costs with regard to the delivery of the Network programming.  Network agrees to provide closed captioning for all Network Programming that is not exempt from captioning requirements under FCC rules.

4.  Promotion:

(a)  We will provide you with on-air promotional announcements ("Network Promos") for Network Programming, which Network Promos are intended for broadcast during Station's broadcast of non-Network programming.  You agree to provide an on-air promotional schedule consistent with our recommendations, and consistent with Affiliate's reasonable business judgment. You shall maintain complete and accurate records of all Network Promos that are broadcast.  Upon request by Network for those records, you shall provide copies of all such records to Network within two weeks of such request.

(b)  You shall budget Station's advertising availabilities in such a manner as to enable Station to broadcast additional

Network Promos during periods in which Station is deemed a "Subperformer." Station shall be deemed to be a "Subperformer" from the time its "sweeps rating" is below the average prime time rating for all Network-affiliated broadcast stations until such time as Station's sweeps rating is no longer below the average prime time rating for all Network-affiliated broadcast stations. The Station's sweeps rating means the Station's average Nielsen rating for the most recently completed sweeps period for adults 18-49 for all Prime Time hours programmed by Network. For such time as Station remains a Subperformer, Station shall: (i) broadcast, during each one-half hour of all periods of each day that Station is broadcasting non-Network programming, at least one (1) 30-second Promo (or Promos aggregating 30 seconds, to the extent we so elect) for Station's local, syndicated or Network programming; and (ii) broadcast during all periods when Station is broadcasting non-Network programming Network Promos for not less than:

Prime Time Hours Programmed by Network

    10 or 11 hours -   40% of 100%
    12 or more hours - 45% of 100%

(the "Applicable Percentage") of the total, aggregate gross ratings points ("GRPs") for all the promotional announcements broadcast by Station ("Aggregate Promotional GRPs") within the periods in which non-Network programming is being broadcast. The specific Network Promos broadcast by Station and the number of broadcasts of each Network Promo may be specified by Network and the broadcast of the Network Promos shall be made so that the Aggregate Promotional GRPs allocated to Network Promos are distributed fairly and reasonably across the periods when non-Network programming is being broadcast. For such time as Station's sweeps rating ranks Station within the bottom 50% (ranked highest to lowest) of those Network-affiliated broadcast stations that are Subperformers, then the Applicable Percentage for Station shall be not less than 55% of 100% of the Aggregate Promotional GRPs. The Network Promos broadcast during each half-hour of non-Network programming, as required by this subparagraph 4(b), may be counted toward Station's Applicable Percentage. Station shall continue to air Network Promos under this schedule until Station is no longer a Subperformer, as defined above.

(c)    In addition to providing Network Promos, we shall make available for your use, at reasonable cost, such other promotional and sales materials as we and you may mutually consider appropriate. You shall not delete any copyright, trademark, logo or other notice, or any credit included in any such materials relating to Network, and you shall not exhibit, display, distribute or otherwise use any trademark, logo or other material or item delivered pursuant to this

Paragraph 4 or otherwise, except as instructed by us at the time.

(d)   Station shall identify itself as a Network affiliate, both on and off-the-air.

5.   Commercial Announcements:

(a)   With respect to Network programming, the parties to this Agreement shall be entitled to insert the following number of commercial announcements (Station's allotment includes station breaks but excludes 5-second prime time station identification breaks at the beginning of each hour):

   (1)   Prime Time (as defined in subparagraph 2(c)): For each hour (pro-rated for half-hour programs):

        You shall have the right to insert six 30-second commercial announcements. Network shall have the right to insert at least eighteen 30-second commercial announcements.

   (2)   Easy View (as defined in subparagraph 2(c)): For each hour (pro-rated for half-hour programs):

        You shall have the right to insert eight 30-second commercial announcements. Network shall have the right to insert at least eighteen 30-second commercial announcements.

   (3)   Children's:

        Weekend half-hour:

        You shall have the right to insert one 30-second commercial announcement (or other material constituting "commercial matter" under the FCC's regulations). Subject to FCC limits, Network shall have the right to insert at least nine 30-second commercial announcements (or other material constituting "commercial matter" under the FCC's regulations) and one 15-second commercial.

   (4)   Afternoon General Entertainment Programming (as defined in subparagraph 2(c)): For each hour (pro-rated for half-hour programs):

        You shall have the right to insert eight 30-second commercial announcements. Network shall have the right to insert twenty 30-second announcements.

(b)   If, because of the imposition of any law or regulation, the amount of commercial advertising, commercial matter or other

non-program time included in Network Programming is reduced for any reason (including but not limited to the adoption or modification of statutes or regulations or any other governmental action), then we shall be entitled to reduce the number of commercial announcements available to you to the extent necessary to provide Network and Affiliate with the same proportionate amount of commercial time (inclusive of station breaks with respect to Affiliate) that each party is entitled to under this Agreement.

(c)     Your broadcast over Station of the commercial announcements included by us in Network Programming is of the essence to this Agreement, and nothing contained in this Agreement (other than in subparagraph 2(f)) shall limit our rights or remedies relating to your failure to so broadcast said commercial announcements. You shall maintain complete and accurate records of all commercial announcements broadcast as provided herein. Within two weeks following each request by us therefor, you will submit copies of all such records to Network.

(d)     Under subparagraph 17(c) below, Network has the right to place and use equipment for the distribution of Network Programming at Station's premises. Affiliate agrees that Network may, pursuant to such provision, place servers capable of inserting regionalized commercial announcements in Network Programming, provided: (i) spot insertion is used to regionalize copy for Network announcements that are broadcast nationwide; (ii) regionalized copy may be inserted for up to five regions, as shown on a map that Network has provided to Tribune Broadcasting Company ("Tribune"), the composition of which will not change from year to year or from one advertising sale to another; (iii) up to three additional regions may be added to the map, subject to Tribune's consent, which will not be unreasonably withheld; and (iv) Network will not use its ability to insert regionalized commercial copy in a manner that undermines the fundamental economics of the network/affiliate relationship, *i.e.*, which impairs an affiliate's exclusive right to sell local spot advertising to national advertisers.

6.  <u>Force Majeure</u>:  Network shall not be liable for failure to make available any programming or any portion(s) thereof, and Affiliate shall not be liable for failure to broadcast any such programming or any portion(s) thereof, by reason of any act of God, equipment failure, action or claims by any third person, labor dispute, law, governmental regulation or order, or other cause beyond either party's reasonable control ("force majeure event"). If due to any force majeure event, we substantially fail to make available all of the programming to be delivered to Affiliate under the terms of this Agreement, or you substantially fail to broadcast such programming as scheduled by Network for four consecutive weeks, or for six weeks in the aggregate during any 12-month period, then the "non-failing" party may terminate this Agreement upon thirty (30) days prior written notice to the

"failing" party so long as such notice is given at any time prior to the "non-failing" party's receipt of actual notice that the force majeure event(s) has ended; provided further, however, that notwithstanding the above provisions, you shall not have any right to so terminate this Agreement, upon a force majeure event or otherwise, if we: (i) fail to make available a minimum or specific number of Network programs; (ii) substitute one or more Network programs for previously scheduled Network programs; or (iii) cancel one or more Network programs.

7.  Assignment or Transfer of Affiliate Agreement and/or Station License: This Agreement shall not be assigned by either party without the prior written consent of the other except as follows:

(1)  either party shall have the right to assign its rights and obligations hereunder without consent to a wholly-owned subsidiary or an entity under common control (or, in the case of Network, to an entity wholly owned by Warner Bros. Entertainment Inc. or CBS Corporation), provided such subsidiary or entity undertakes in writing to assume all of the assignor's rights and obligations hereunder (specifically including the payment of all sums owed or payable to Network by Affiliate under this or any other agreement) following the assignment;

(2)  Network shall have the right to assign its rights and obligations hereunder without consent in connection with the sale of the Network (whether through a merger, a sale of a controlling equity interest in the Network or a sale of all or substantially all of the assets of Network) only if the acquiring party undertakes in writing to assume, or the Network (which term includes, if applicable, a successor to the Network) retains, all of Network's rights and obligations hereunder following the assignment, and

(3)  Affiliate shall have the right to assign its rights and obligations hereunder without consent in connection with the assignment or transfer of Station's FCC license only if the assignee or transferee undertakes in writing to assume all of Affiliate's rights and obligations hereunder (specifically including the payment of all sums owed or payable to Network by Affiliate under this or any other agreement) following the assignment.

(4)  In any instance of an assignment of Station's FCC license, Affiliate will assign to the assignee its rights and obligations hereunder (specifically including the payment of all sums owed or payable to Network by Affiliate under this or any other agreement) following the assignment.  In any instance of a sale of the Network (whether through a merger, a sale of a controlling equity interest in the Network or a sale of all or substantially all of the assets of Network), Network (which term includes, if applicable, a successor to the Network) will either retain or assign to the acquiring party its rights and obligations hereunder.

Any purported assignment in violation of this paragraph 7 shall be null and void, shall not be enforceable, and shall not relieve the purported assignor of all its obligations hereunder. The assignor shall notify the other party promptly following the consummation of any assignment for which consent is not required under this paragraph.

8.   <u>Unauthorized Copying</u>:  You shall not, and shall not cause or authorize others to record, copy or duplicate any programming or other material we furnish pursuant to this Agreement, in whole or in part, and you shall take all reasonable precautions to prevent any such recording, copying or duplication. Notwithstanding the foregoing, if Station is located in the Mountain Time Zone you may pre-record Network programming for later broadcast at the times scheduled by us. You shall erase all such pre-recorded programming promptly after its scheduled broadcast. Notwithstanding the above provisions, Affiliate may make a non-broadcast quality recording of Station's entire broadcast day for archival, file and reference purposes and uses only, which copy shall be kept in Affiliate's possession at all times.

9.   <u>Term</u>:

   (a)   The term of this Agreement shall commence on May 1, 2009and shall continue until August 31, 2016.

   (b)   Each "Contract Year" hereunder shall be an annual period during the term of this Agreement beginning September 1.

   (c)   Network shall, within its sole discretion and without liability, have the right to terminate this Agreement so long as we provide eight months' prior written notice to you and are ceasing operation as a network.

   (d)   Notwithstanding anything to the contrary contained in this Agreement, upon the termination or expiration of the term of this Agreement, all of your rights to broadcast or otherwise use any Network program or any trademark, logo or other material or item hereunder shall immediately cease and neither you nor Station shall have any further rights whatsoever with respect to any such program, trademark, logo, material or item.

10.  <u>Applicable Law</u>:  The obligations of you and Network under this Agreement are subject to all applicable federal, state, and local laws, rules and regulations (including, but not limited to, the Communications Act of 1934, as amended, and the rules, regulations and policies of the FCC) and this Agreement and all matters or issues collateral thereto shall be governed by the laws of the State of California without regard to California's conflict of law rules. The California State Courts and the U.S. District Courts located in California shall have jurisdiction over the interpretation of this Agreement or with regard to any

dispute arising under this Agreement. The venue for any such action concerning this Agreement shall be in the County of Los Angeles, California.

11. Deleted.

12. <u>Change in Operations</u>: At any time during the term if Station is off the air, or operating at less than fifty percent (50%) of its licensed power, for a period of 12 hours or longer, Station must immediately notify Network. Network may terminate this agreement upon thirty (30) days prior written notice in the event that, for reasons other than a force majeure event, Station is off the air for a period exceeding seven (7) consecutive days or is operating at less than fifty percent (50%) of its full licensed power for a period exceeding seven (7) consecutive days.

13. <u>Warranties and Indemnities</u>:

    (a)    Network agrees to indemnify, defend and hold Affiliate harmless against and from all claims, damages, liabilities, costs and expenses arising out of the use by Station under this Agreement of any Network Program or other material furnished by Network under this Agreement, provided that Affiliate promptly notifies Network of any claim or litigation to which this indemnity shall apply, and provided further that Affiliate cooperates fully with Network in the defense or settlement of such claim or litigation. This indemnity shall apply, without being limited, to any inquiry or claim that any Network Programming violated applicable FCC laws, rules or regulations. Affiliate agrees to indemnify, defend and hold Network harmless against and from all claims, damages, liabilities, costs and expenses with respect to Affiliate's operation of the Station or any material furnished, added or deleted to or from Network Programming by Affiliate. This indemnity shall not apply to litigation expenses, including attorneys' fees, that the indemnified party elects to incur on its own behalf. Except as otherwise provided in this Agreement, neither Affiliate nor Network shall have any rights against the other for claims by third persons, or for the failure to operate facilities or to furnish Network programs if such failure is the result of a force majeure event as defined in Paragraph 6. Furthermore, notwithstanding any other provisions of this Agreement, Affiliate shall not have any rights against Network for claims by third parties or Affiliate arising out of any actions or omissions of Network permitted under subparagraph 2(g).

    (b)    You agree to maintain for Station such licenses, including performing rights licenses as now are or hereafter may be in general use by television broadcasting stations and are necessary for you to broadcast the television programs which we furnish to you hereunder. We will clear all music in the repertory of SESAC, ASCAP and BMI used in our programs. You shall obtain and pay all costs associated with any

performing rights licenses necessary to broadcast such music. You will be responsible for all music license requirements (and all other permissions) for any commercial or other material inserted by you within or adjacent to Network programs in accordance with this Agreement.

(c) You warrant that the License is in good standing and you agree to comply with all relevant statutes and FCC rules and requirements so as to maintain the License in good standing. In the event the License is revoked or not renewed because you are found to have materially violated any laws or FCC rules or requirements (after the exhaustion of all appeals so long as Station retains the License during the pendency of such appeal), then we shall have the right to terminate this Agreement upon 30 days prior written notice.

(d) Each party hereto warrants that all information delivered by it to the other in connection with this Agreement shall be true and correct in all material respects.

(e) Each party hereto warrants to the other that execution of this Agreement and performance of its obligations will not violate or result in a default under (i) any material agreement or instrument to which it is a party or (ii) any statute, ordinance, governmental rule or regulation in any material respect, or order, judgment, injunction, decree or ruling of any court or administrative agency applicable to it, which default would materially interfere with the performance of its obligations hereunder.

(f) Each party hereto warrants that it is not a party to any legal action or other proceeding before any court or administrative agency which could prohibit the performance its obligations under this Agreement.

14. <u>Retransmission Consent</u>: If any law, governmental regulation or other action permits you to elect to require any cable television system or other multichannel video program distributor ("MVPD") to obtain your consent to such system's or distributor's retransmission of Station's broadcast of either Station's signal as a whole or any Network programming included therein, then Affiliate agrees to consult in good faith with Network regarding such election.

15. <u>Network Non-Duplication Protection:</u> During the term of this Agreement, Affiliate shall, by the terms of this contract, be entitled to invoke the protection against duplication of programming imported under the Statutory Copyright License in analog and/or digital format, as provided by Sections 76.92 through 76.95 and Sections 76.120 through 76.130 of the FCC's rules, with respect to the presentation of any Network Program by a cable system or a satellite carrier during the period commencing one day before and ending fourteen (14) days after receipt of such Network Program by Station. The geographic zone of network non-duplication protection shall be the lesser of

[XXXX/City]
Tribune Broadcasting Company
Page 17

Station's DMA or the maximum geographic zone permitted under Sections 76.92 or 76.122 of the FCC's rules. Network non-duplication protection shall extend only to Network Programs that Station is carrying in accordance with the terms of this Agreement and such protection shall be subject to the terms and provisions of subparagraph 2(f). You are under no obligation to exercise in whole or in part the network non-duplication rights granted herein.

16. <u>Notices and Reports</u>:

    (a)    In addition to any other reports or forms requested herein, you will provide to us in writing, in the manner reasonably requested by Network, such reports covering Network Programs broadcast by Station as we may request from time to time. To the extent we provide you forms for such purpose, you shall provide such reports on these forms.

    (b)    All notices, reports or forms required or permitted hereunder to be in writing shall be deemed given when personally delivered (including, without limitation, by overnight courier or other messenger or upon confirmed receipt of facsimile copy) or on the date of mailing postage prepaid, addressed as specified below, or addressed to such other address as such party may hereafter specify in a written notice. Notice to Affiliate shall be to the address set forth for Affiliate on page 1 of this Agreement. Additionally, notice will be sent to Tribune Broadcasting Company, 435 North Michigan Avenue, Chicago, IL 60611, Attn: President. Notice to Network shall be to: The CW Network, LLC, 3300 West Olive Avenue, Burbank California 91505, Attention: General Counsel.

17. <u>Miscellaneous</u>:

    (a)    Nothing contained in this Agreement shall create any partnership, association, joint venture, fiduciary or agency relationship between the parties hereto.

    (b)    Nothing contained in this Agreement nor the conduct of any officer, director, agent or employee of either Network or Affiliate shall be deemed to create or to constitute ownership by Network, in whole or in part, of Affiliate, Station or the License or in any way constitute a derogation of the rights, duties and responsibilities imposed upon Affiliate. Nothing in this Agreement shall be deemed to delegate to Network, directly or indirectly, any right to control the operations of Station.

    (c)    You shall at all times permit us, in connection with Network Programming, without charge, to place on, maintain and use at Station's premises, at our expense, such equipment as Network shall reasonably require for the distribution of Network Programming. Station shall operate such equipment

for us, to the extent we reasonably request, and no fee shall be charged by Station therefor.

(d)     No waiver of any failure of any condition or of the breach of any obligation hereunder shall be deemed to be a waiver of any preceding or succeeding failure of the same or any other condition, or a waiver of any preceding or succeeding breach of the same or any other obligation.

(e)     Each and all of the rights and remedies of Network and Affiliate under this Agreement shall be cumulative, and the exercise of one or more of said rights or remedies shall not preclude the exercise of any other right or remedy under this Agreement, at law or in equity. Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party hereto be entitled to recover any lost profits or consequential damages because of a breach or failure by the other party, and except as expressly provided in this Agreement to the contrary, neither Network nor Affiliate shall have any right against the other with respect to claims by any third person or other third entity.

(f)     Paragraph headings are included in this Agreement for convenience only and shall not be used to interpret this Agreement or any of the provisions hereof, nor shall they be given any legal or other effect.

(g)     As of the date hereof, this Agreement, including all Exhibits attached hereto, constitutes the entire understanding between Network and Affiliate concerning the subject matter hereof and shall not be amended, modified, changed, renewed, extended or discharged except by an instrument in writing signed by the parties or as otherwise expressly provided herein. No inducement, representations or warranties except as specifically set forth herein have been made by either party to this Agreement to the other.  This Agreement replaces any and all prior and contemporaneous agreements, whether oral or written, pertaining to the subject matter hereof.

(h)     This Agreement may be executed in counterparts, with the Agreement being effective when each party hereto has executed a copy and delivered that copy to the other party hereto.


        IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first written above.


[LICENSEE]                              THE CW NETWORK, LLC
("Affiliate")                           ("Network")


By: _____       By: _____


[XXXX/City]
Tribune Broadcasting Company
Page 19

Title: _____          Title: _____

Date:_____          Date:_____

SCHEDULE 1
Affiliate's Programming Commitments


[TO BE PROVIDED BY AFFILIATE]

By express mail and electronic mail

April    , 2009

Mr. Ed Wilson
President
Tribune Broadcasting Company
435 N. Michigan Avenue, Suite 1800
Chicago, Illinois 60611

Re: New Agreements terms and conditions

Dear Mr. Wilson:

Reference is made to the Agreement of January 23, 2006 among Warner Bros. Entertainment, Inc., CBS Studios, Inc., and Tribune Broadcasting Company ("Tribune") ("XYZ Agreement").

In accordance with The XYZ Agreement (with particular reference to Exhibits A and B thereof), The CW Network, LLC ("The CW") entered into that certain letter agreement dated August 16, 2006, ("Letter Agreement") with Tribune Broadcasting Company ("Tribune"), as well as the station affiliation agreements ("SAAs") and additional terms letters ("Additional Terms Letters") dated as of August 16, 2006 between Network and WGN Continental Broadcasting Company (for stations WGN-TV and WGN-DT), Tribune Television Company (for stations KDAF-TV and KDAF-DT), KWGN, Inc. (for stations KWGN-TV and KWGN-DT), Channel 39, Inc. (for stations WSFL-TV and WSFL-DT), WTXX, Inc. (for stations WTXX-TV and WTXX-DT), KHCW, Inc. (now KIAH, Inc.) (for stations KIAH-TV and KIAH-DT), Tribune Broadcast Holdings, Inc. (for stations WTTV-TV and WTTV-DT and KRCW-TV and KRCW-DT), KTLA, Inc. (for stations KTLA-TV and KTLA-DT), Tribune Television New Orleans, Inc. (for stations WNOL-TV and WNOL-DT), WPIX, Inc. (for stations WPIX-TV and WPIX-DT), KPLR, Inc. (for stations KPLR-TV and KPLR-DT), KSWB, Inc. (for stations KSWB-TV and KSWB-DT) and WDCW Broadcasting, Inc. (for stations WDCW-TV and WDCW-DT). These companies will collectively be referred to hereunder as the "Affiliates." Collectively, the Letter Agreement, the SAAs, and the Additional Terms Letters will be referred to herein as the "Agreement."

In connection with the transactions contemplated by that certain letter agreement dated April 27, 2009, between Tribune and The CW, including, without limitation the termination of the SAAs and entering into new affiliation agreements Tribune and The CW agree as follows:

1)   <u>New Agreements</u>:  Tribune will cause each of the Affiliates except for KSWB, Inc., to enter into a station affiliation agreement and confidential additional term letter ("New Agreement"), which New Agreements will be effective as of May 1, 2009, in the form set forth as Exhibit "A" attached hereto without any modification or further negotiation of the terms thereof, except to reflect the individual initial compensation amounts set forth in Exhibit "B", attached hereto, and except with respect to KTLA, which may broadcast the Easy View time period beginning at 4:30 p.m. to permit broadcast of a local news program, beginning at 6:30 p.m.

Notwithstanding anything to the contrary contained therein, Tribune and each of the Affiliates shall have the right to assign its rights and obligations under such New Agreements without first obtaining The CW's consent, to a wholly-owned subsidiary or an entity under common ownership or control, in connection with the emergence of Tribune and/or the respective Affiliate(s), from Chapter 11 bankruptcy, provided such entity undertakes in writing to assume all of the assignor's rights and obligations under such New Agreement (specifically including the payment of all sums owed or payable to Network by Affiliate thereunder) following the assignment.

KSWB, Inc.: There shall be no New Agreement with respect to KSWB, Inc.

Tribune warrants and represents that it has received all required approvals from Local TV Holdings, LLC, with regard to termination of the Agreements and the entering into the New Agreements for Stations in the St. Louis and Denver markets, on the terms agreed in connection with these transactions.

[REDACTED]

2)    [REDACTED]

3)    Remedies:

Each party acknowledges that, by entering into the New Agreements and agreeing to changes in material terms of the SAAs, it is providing significant consideration to the other party. Further, the parties acknowledge that the obligations of The CW to provide programming and the obligations of Tribune and the Affiliates to broadcast all CW Programming on the primary analog/digital channel operated by each Affiliate are special, unique, and material terms of the New Agreements. Accordingly, the parties agree that, notwithstanding paragraph 17(e) of the New Agreements, in the event that either party materially breaches the New Agreements with respect to these material terms, where such breach remains uncured after written notice and reasonable opportunity to cure, then the non-breaching party shall be entitled to seek all damages available to it at law or in equity, including without limitation compensatory and consequential damages, recissionary, restitutionary, and/or equitable relief.

4)    [REDACTED]

It is so agreed:

TRIBUNE BROADCASTING COMPANY,
A wholly-owned subsidiary of Tribune Company,
As debtor and debtor-in-possession in bankruptcy
case #08-13141, on behalf of its wholly-owned
subsidiaries as set forth herein


By:_____

Its:_____

Date:_____


THE CW NETWORK, LLC


By:_____

Its:_____

Date:_____

EXHIBIT B

[REDACTED]