# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-_____ |
| Debtors. | (Joint Administration Requested) |

**AFFIDAVIT OF CHANDLER BIGELOW III, SENIOR VICE PRESIDENT
AND CHIEF FINANCIAL OFFICER OF TRIBUNE
COMPANY IN SUPPORT OF FIRST DAY MOTIONS**

STATE OF ILLINOIS    )
                     ) ss:
COUNTY OF COOK       )

CHANDLER BIGELOW III, being duly sworn, deposes and states:

1.  I am a Senior Vice President and the Chief Financial Officer of Tribune Company, a corporation organized under the laws of Delaware and one of the above-captioned

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

advertising revenue generation is entirely dependent upon the existing relationships that the Sales Representatives maintain. In many situations, these advertisers work exclusively through the Sales Representatives.

154. The Sales Representatives are compensated primarily on a commission basis,[22] and are generally paid only after payment for a generated advertisement is received by the Debtors. Because the Sales Representatives are paid in arrears, as of the Petition Date, the Debtors owed amounts to certain Sales Representatives on account of prepetition services.

155. As described above, the Brokers are a key component of the Debtors' promotion, sale, solicitation and confirmation of orders from advertisers and subscribers. Authorizing, but not requiring, the Debtors to perform their prepetition obligations owed to the Brokers is necessary to maintain the Debtors' business relationships with the Brokers and, in turn, the advertisers and subscribers serviced by the Brokers. Because of the importance of the Brokers to the Debtors' overall industry presence and operations, the Debtors believe, and I agree, that paying such prepetition claims to the Brokers is integral to the Debtors' business going forward and their ability to maintain their enterprise value and to serve their advertisers and subscribers.

**(8)** **Motion of the Debtors for an Order Authorizing Them to (i) Pay Installments Under Prepetition Insurance Premium Finance Arrangement, (ii) Continue Prepetition Insurance Programs, and (iii) Pay All Prepetition Obligations in Respect Thereof ("Insurance Motion")**

156. In connection with the day-to-day operations of their businesses, the Debtors maintain various insurance programs (the "Insurance Programs") and related insurance policies (as set forth on a non-exhaustive list attached to the Insurance Motion as Exhibit A, the

---

[22] It is my understanding that certain Sales Representatives receive different compensation structures which may include, among other things, a fixed salary component or bonuses.

"Insurance Policies") through several different insurance providers (the "Insurance Providers").[23] The Debtors operate a large and sophisticated business and have numerous Insurance Policies covering a variety of matters such as general liability, media liability, directors' and officers' liability, fiduciary liability, property, travel, and aviation, among others.

157.   The Debtors are required to pay premiums under the Insurance Programs based on a fixed amount established and billed by each Insurance Provider. The aggregate annual premiums under Insurance Programs, excluding the Financed Premium Policy are approximately $10.2 million. Depending on the particular Insurance Policy, premiums are either (i) paid in monthly installments or (ii) pre-paid at a policy's inception or renewal.

158.   Nearly all premiums under the Debtors' Insurance Policies are paid at the policy's inception, and hence were paid in full prior to the Petition Date. Those Insurance Policies under which premiums are paid in monthly installments were paid in full prior to the Petition Date. I have been advised that, according to the Debtors' records, the Debtors have satisfied any other financial obligations under those Insurance Policies. Out of an abundance of caution, however, in order to prevent any disruption of the Debtors' Insurance Policies and any attendant harm to the Debtors' businesses that such disruption would cause, the Debtors seek authorization, but not the direction, to make any prepetition premium payments as necessary and to perform any other prepetition obligations that may be necessary to maintain the Insurance Policies.

---

[23] One of the Insurance Providers, Multimedia Insurance Company, is a Vermont corporation and a wholly-owned direct subsidiary of Debtor Tribune Company. Multimedia Insurance Company did not commence a chapter 11 case on the Petition Date.

I believe that the commencement of these Chapter 11 Cases is in the best interests of the Debtors' stakeholders and other parties-in-interest. As they did during the prepetition period, the Debtors, with the assistance of their professionals, will continue to maintain and enhance the going concern value of the companies while pursuing their reorganization strategy.

_____
Chandler Bigelow III
Senior Vice President & Chief Financial Officer
Tribune Company

Sworn to and subscribed before me this
8th day of December, 2008.

_____
Notary Public

```
"OFFICIAL SEAL"
Margaret M. Weimer
Notary Public, State of Illinois
My Commission Expires Feb. 1, 2009
```