# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br>**Objection Deadline: May 19, 2009 at 4:00 pm**<br>**Hearing Date: May 26, 2009 at 1:00 pm**<br><br>Re: Docket No. 807 |

## SECOND MOTION OF JON VAN SENUS, BY AND THROUGH HIS *GUARDIAN AD LITEM*, NEALA OLSON, FOR RELIEF FROM THE AUTOMATIC STAY TO RECEIVE PAYMENT PURSUANT TO SETTLEMENT AGREEMENT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company 8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo. Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo. Inc. (2663); Internet Foreclosure Service, Inc, (6550); JuliusAir Company, LLC (9479); Julius Air Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc, (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276) Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Conrant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Jon Van Senus ("Van Senus"), by and through his *guardian ad litem*, Neala Olson, (the "Movant") by and through his undersigned counsel hereby submits, pursuant to Section 362(d)(1) and (2) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* ("the Bankruptcy Code"), and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Second Motion for Relief from the Automatic Stay to Receive Payment Pursuant to Settlement Agreement (the "Motion"). In support of the Motion, the Movant states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in the Motion include Section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001.

## II. BACKGROUND[2]

4. On or about March 7, 2007, a Los Angeles Times delivery truck struck Jon Van Senus while riding his bicycle in Newport Beach, California. The driver of the delivery truck was an employee and/or agent of the Los Angeles Times Communications, LLC (the "Los Angeles Times"), one of the above-captioned debtors. Rather than stopping and rendering emergency aid to Van Senus, the Los Angeles Times' employee and/or agent raced away from the scene and left Van Senus to die in the bushes on the side of the road. The Los Angeles Times employee and/or agent was later caught and convicted of felony hit and run.

---

[2] Van Senus incorporates as if fully restated herein in full any facts filed in the above captioned bankruptcy case in the First Motion.

5. Van Senus, who is currently 45 years old, suffered a severe, traumatic and permanent brain injury due to the accident. He has the mental capacity of a six year old and lacks the ability to care for himself. Because of this injury, he will require lifetime medical care and full-time supervision. He is unable to attend to his own safety and day-to-day medical needs.

6. Movant filed a civil complaint (the "Complaint") against the Los Angeles Times in the Superior Court of California for Orange County on April 5, 2007 (the "Litigation")[3]. A true and correct copy of the Complaint is attached hereto as Exhibit A.

7. On or about October 7, 2008, the Movant reached a settlement of the Litigation with the Los Angeles Times upon conclusion of two days of mediation (the "Settlement Agreement"). Pursuant to the Settlement Agreement, the commercial liability insurers for the above-captioned debtors (collectively, the "Debtors"), Zurich American Insurance Company ("Zurich") and St. Paul Fire and Marine Insurance Company ("St. Paul," and together with Zurich, the "Insurers"), are obligated to pay the Movant the total sum of $6 million (the "Settlement Funds"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B. The Settlement Agreement provides a full and complete release for the Los Angeles Times by the Movant.

8. On December 8, 2008 (the "Petition Date"), subsequent to reaching the Settlement Agreement, the Debtors filed voluntary petitions for relief under Chapter 11 of the

---

[3] The Litigation also named, Tai Vo, a distributor of the Los Angeles Times newspaper, and Thomas Ngo, an employee of the Los Angeles Times, as defendants. Movant reached a settlement with these other two defendants, which obligates Progressive Insurance Company and 21st Century Insurance Company, the defendants' respective insurers, to pay Movant a total sum of $1,050,000. Movant submits that the terms of the settlement with these defendants are not germane to the relief requested by this Motion.

Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

9. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases.

10. An Official Committee of Unsecured Creditors was appointed on December 30, 2008.

11. On or about January 28, 2009, Judge Randall Sherman of the Orange County Superior Court approved the terms of the Settlement Agreement. A true and correct copy of the order approving the Settlement Agreement is attached hereto as Exhibit C (the "Settlement Order").

12. The Settlement Agreement does not require that any payments be made directly from the Debtors' estate and no further action is required on behalf of the Debtors to effectuate the terms of the Settlement Agreement.

13. The Debtors had in effect at the time of the accident an automobile liability policy with Zurich (the "Zurich Insurance Policy") and an umbrella liability policy with St. Paul (the "St. Paul Insurance Policy") (collectively, the "Insurance Policies"). The Zurich Insurance Policy and St. Paul Insurance Policy will provide the Settlement Funds.

14. The Zurich Insurance Policy provides $3 million in coverage for any one accident or loss, with a $1 million deductible. The Zurich Insurance Policy will pay the first $3 million of the Settlement Funds.

15. The Zurich Insurance Policy's liability coverage insuring agreement states, in part:

4

> We will pay all sums an "insured" legally must pay as damages
> because of "bodily injury" or "property damage" to which this
> insurance applies, caused by an "accident" and resulting
> from the ownership or use of a covered "auto."

See Exhibit D.

16.   The Zurich Insurance Policy has a Deductible Endorsement, which provides, in part:

> You will reimburse us for deductible amounts that we pay on
> your behalf.

See Exhibit D.

17.   The St. Paul Insurance Policy has limits of $25 million in coverage. The St. Paul Insurance Policy pays the second $3 million of the Settlement Funds.

18.   Both Insurance Policies provide that the bankruptcy or insolvency of the insured does not relieve any obligations of the Insurers to satisfy outstanding claims. For example, Section IVB1 of the Zurich Insurance Policy specifically provides, under General Conditions: Bankruptcy, as follows:

> Bankruptcy or insolvency of the "insured" or the
> "insured's" estate will not relieve us of any obligations
> under this Coverage Form.

19.   Likewise, the St. Paul Insurance Policy sets forth, under Section VII, C, entitled Bankruptcy or Insolvency, as follows:

> The Insured's bankruptcy, insolvency or inability to pay,
> when the bankruptcy, insolvency or inability to pay of any
> issuer of Scheduled Underlying Insurance will not relieve
> us of our obligations under this policy.

True and correct copies of the relevant portions of the Insurance Policies are attached hereto as Exhibit D.

20. The Movant filed the Motion of Jon Van Senus, by and through his *Guardian Ad Litem*, Neala Olson, for Relief from the Automatic Stay to Receive Payment Pursuant to Settlement Agreement (the "First Motion") on March 7, 2009 (Docket No. 490).

21. In response to the First Motion, the Debtors filed a Preliminary Objection and Reservation of Rights to the First Motion (the "Debtors' Objection") on March 18, 2009 (Docket No. 541). Zurich also filed an Objection to the First Motion (the "Zurich Objection") on March 18, 2009 (Docket No. 538). St. Paul raised an informal objection and engaged in extensive discussions with counsel to Van Senus. The Movant filed a Reply to the Debtors' Objection and the Zurich Objection on March 21, 2009 (Docket No. 562). The Debtors, the Committee, and the Insurers entered into negotiations in an attempt to resolve the issues with the First Motion.

22. On March 25, 2009, the Bankruptcy Court granted the First Motion and entered an order approving the payment of $5.4 million (the "Order") (Docket No. 807), a copy of the Order is attached hereto as <u>Exhibit E</u>. The Order directs Zurich and St. Paul to pay $2.4 and $3 million, respectively. <u>See</u> ¶3 of the Order. The Order also allows Van Senus to file a motion to set a hearing date to determine payment of the remaining $600,000. St. Paul has paid its obligation of $3 million pursuant to the Order. Zurich has also paid its obligation of $2.4 million pursuant to the Order.

23. The Debtors stated in their Objection to the First Motion that there are multiple unliquidated personal injury cases pending against the Debtors. Counsel for the Debtors acknowledged that the relief sought here was and is easily differentiated when compared to other personal injury cases involving the Debtors. On March 25, 2009, at a hearing before the Court, Counsel for the Debtors stated that the "prepetition settlement . . . is fully liquidated, and . . . two of the Debtors' insurers have agreed to pay certain amounts to settle the underlying claim."

Transcript of Omnibus Hearing at 7, attached hereto as <u>Exhibit H</u> in relevant part. Counsel for the Committee agreed, stating: "this is a…significantly different lift stay motion than the others that were filed." <u>Id</u>. at 10.

24. The Debtors' Objection states that "[T]he Debtors and the Committee are currently in the process of formulating global procedures for handling prepetition personal injury claims, including Van Senus' prepetition claim." Debtors' Objection at 2. Further, according to the Debtors' Objection, the Debtors "anticipate that, once finalized, these procedures will enable the Debtors to efficiently resolve such claims in a manner that is consistent with the terms of the Debtors' insurance policies." <u>Id</u>. The Debtors' Objection indicates that the Debtors "have not yet completed their analysis of these procedures" and that the Debtors need more time to "develop and implement [these] global claims resolution procedures." <u>Id</u>.

25. Over thirty days have passed since the hearing. The First Motion was filed on March 7, 2009, sixty-two days ago. Negotiations, as referenced above, took place prior to the March 25, 2009 hearing. Neither the Debtors, the Insurers, nor the Committee have approached the Movant regarding the $600,000 still owed by Zurich to Van Senus since the March 25, 2009 hearing. Therefore, the Movant was obligated to file this Motion to move the process forward and receive relief from the automatic stay in order to collect payment of the remaining $600,000.

26. Neala Olson is not only Van Senus' *guardian ad litem*, but also Van Senus' mother and conservator. As such, Ms. Olson oversees the payment of Van Senus' room and board at a cost of $12,000 per month, additional routine medical costs of approximately $1,000 per month, and personal expenses of approximately $1,200 per month. <u>See</u> paragraph 3 of the Affidavit of Neala Olson attached hereto as <u>Exhibit F</u>. Van Senus currently receives a monthly income from annuities in the amount of $10,420. <u>See Id</u>. at ¶4. The resulting monthly shortfall

of approximately $4,000 is depleting the very assets that are supposed to provide for Van Senus' care for the rest of his life.

27. Van Senus was evaluated at St. Jude Medical Center in Fullerton, California, on March 8, 2007, the day after his accident. The Medical Director of Rehabilitation Services at St. Jude Medical Center, Dr. Sharon K. Kawai, saw Van Senus in a follow up on April 16, 2008. See paragraph 5 of the Affidavit of Dr. Sharon K. Kawai, attached hereto as Exhibit G. Dr. Kawai prepared a Life Care Plan ("Care Plan") for Van Senus in July of 2008. See Id. at ¶6. The Care Plan illustrates the projected costs of the care of Van Senus, See Id. Exhibit A. The total care for Van Senus is projected to cost $11,304,328.05 over his lifetime; the projected annual cost is $376,810.94. See Id. at ¶8.

28. These astronomical numbers only reflect necessary and medical expenses and clearly demonstrate that the total Settlement Funds are not enough to provide for Van Senus' care. Van Senus can ill afford to be deprived further of the $600,000 that is outstanding and owed to him, especially as the insurer's main constituency in the case have gone on record to distinguish Van Senus' claim from all other pending personal injury claims. Even without any contact or consultation with the Debtors, the Committee, or the insurers, counsel to Van Senus has come to the conclusion that Van Senus' claim simply will not be affected by the prospective procedures, if and when they are developed. As this is a liquidated claim which is due directly from Zurich and not the Debtors, any contemplated procedures are simply inapplicable. All that remains is for Zurich to complete payment of its obligation under the Settlement Agreement. A procedure to liquidate claims and establish a funding mechanism to pay such claims does not apply to the Van Senus claim which is liquidated and to which Zurich has previously agreed to fund.

### III. RELIEF REQUESTED

29. By this Motion, the Movant seeks entry of an order granting the Movant stay relief and immediate authorization to receive the remaining $600,000 of the Settlement Funds (the "Uncontested Proceeds") pursuant to the Settlement Agreement and Order approving same.

30. Van Senus expressly reserves all rights with respect to payment of the remaining Uncontested Proceeds and nothing in the First Motion or Order shall be construed as a waiver of any and all rights with respect thereto.

### IV. BASIS FOR RELIEF REQUESTED

31. Section 362(d) of the Bankruptcy Code provides for relief from stay as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
>     (A) the debtor does not have an equity in such property; and
>
>     (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

**A. Balancing of the Hardships Constitutes Cause to Lift the Stay.**

32. Cause exists to lift the automatic stay to allow Movant access to the remaining Uncontested Proceeds. "Cause" is "a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Vankell*, 311 B.R. 205, 215 (Bankr. E.D. Tenn. 2004); *In re Indian River Estates, Inc.*, 293 B.R. 429, 433

9

(Bankr. N.D. Ohio 2003) ("As used in § 362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations."); *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

33. In order to establish cause for relief under §362(d)(1) of the Bankruptcy Code, "the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *See Atl. Marine, Inc v. Am. Classic Voyages, Co. (In re American Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); *In re RNI WindDown Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006).

34. In considering whether to lift the automatic stay with respect to the personal injury claimants, Delaware Bankruptcy Courts have considered the three criteria established by *In re Rexene*:

> 1. Whether there will be great prejudice to the estate or the debtor in continuing the civil suit;
>
> 2. Whether the hardship to the creditor outweighs the hardship to the debtor in maintaining the stay;
>
> 3. The probability that the creditor will prevail on the merits.

*Rexene*, 141 B.R. at 576.

**1. Van Senus is Prejudiced by Further Delay in Payment of the Settlement and the Debtors are Not Affected by Modifying the Stay**

35. In accordance with *Rexene* factors, cause exists for granting relief from stay because Van Senus is greatly prejudiced by delay in receiving an already liquidated settlement whereas the Debtors' estate will not be prejudiced by allowing payment of the Uncontested

Proceeds from the Insurance Policies, and the Settlement Agreement conclusively establishes the merits of the Litigation.

36. Further, no prejudice will result to the Debtors' estates in lifting the automatic stay. All claims are fully resolved and liquidated pursuant to the Settlement Agreement. There is no further action required of the Debtors' estates to defend the Litigation. All that remains is for Van Senus to be paid the remaining Uncontested Proceeds from Zurich. The Movant seeks payment from Zurich, not the Debtors' estates.

**2. The Hardship to Van Senus Outweighs Any Hardship to the Debtors in Modifying the Stay**

37. Additionally, the hardship to Van Senus outweighs any hardship to the Debtors in modifying the stay. The Movant has been injured so severely that he must be cared for twenty-four hours a day for the rest of his life. Although the majority of the settlement amount has been paid, the Movant is still owed $600,000. Van Senus is obviously unable to pursue this matter on his own and must continue to expend money on legal representation, as well as losing any interest that he could be earning while this matter is being resolved. As noted above, Van Senus currently faces a $4,000 per month shortfall between annuity income and expenses. This gap exists without taking into account any additional expenses should Van Senus' condition deteriorate. The $600,000 Zurich owes is necessary to bridge the gap and payment by Zurich poses no hardship at all to the Debtors.

38. The Debtors will no doubt contend that because of the deductible endorsement to the policy, that the Debtors' estates are prejudiced and ultimately responsible for the $600,000. This position misses the point. The relief being sought through this motion should not be denied because it will result in an unsecured claim being filed against the estate by Zurich in the amount of $600,000. Van Senus is seeking recovery against Zurich, not the Debtors' estate. Neither

under the governing state law cited herein or the federal bankruptcy cases that have addressed this issue in this Motion should the fact that Zurich may have an unsecured claim against the Debtors' shield Zurich from its proper obligations and liability under the policy to Mr. Van Senus. Therefore, the proceeds of the policy are not property of the estates and granting the Motion has no effect on the Debtors' estates. The Bankruptcy Code allows a debtor to reduce a party's claim so that the claimant takes a pro rata share from the estate, but it does not mandate extinguishing the liability.

39. Most importantly, the payment Zurich owes to Movant under the Zurich Insurance Policy is not even property of the Debtors' estate. In *In re Edgeworth*, 993 F.2d 51 (5th Cir. 1993), the court stated:

> Examples of insurance policies whose proceeds are property of the estate include casualty, collision, life, and fire insurance policies in which the debtor is a beneficiary.... But under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract.
> Although Dr. Edgeworth's liability policy was part of the Chapter 7 estate, the proceeds of that policy were not. Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives. Moreover, no secondary impact has been alleged upon Edgeworth's estate, which might have occurred if, for instance, the policy limit was insufficient to cover appellants' claims or competing claims to proceeds.

*Edgeworth*, at 56.

40. Debtors do not have a claim to the $600,000 owed by Zurich to Movant under the Zurich Insurance Policy, and the $600,000 cannot be made available for distribution to other creditors. No secondary impact can be alleged upon the Debtors' estate, since Debtors' obligations and the limits of the Zurich Insurance Policy with respect to other claims are not

12

affected by payment to Movant since the $1 million deductible and $3 million limits apply to each claim.

**3. The Zurich Policy and Case Law Show Zurich is Responsible for the Payment, so the Probability that Van Senus will Prevail is High**

**a. The Plain Meaning of the Zurich Policy Shows that Zurich Owes the $600,000 Directly to Van Senus**

41.     The terms and conditions of the Zurich Insurance Policy require payment of the remaining $600,000.

42.     The Zurich Insurance Policy contains a Deductible Endorsement which states in pertinent part:

> You will reimburse us for deductible amounts that we pay on your behalf....You agree to reimburse us for each "accident" or each "loss" up to the Deductible Amount shown in the Schedule above.

See Exhibit D.

43.     The Zurich Insurance Policy in section IVB1 specifically provides, under General Conditions: Bankruptcy, as follows:

> Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

See Exhibit D.

**b. Statutory Authority, Caselaw, and Public Policy Supports that Zurich Owes the $600,000 Directly to Van Senus**

44.     Courts have uniformly held that deductible provisions of insurance policies require insurers to pay settlements and/or indemnification directly to the injured party and then obtain any reimbursement of any deductible amounts paid from the policyholder.

45. Zurich is well aware that the inability of the insured to reimburse the insurer for the deductible because of bankruptcy does not excuse the insurer from paying any claims under the policy because Zurich has been involved in prior bankruptcy cases involving the same issue. *See In re International Fibercom Inc.*, 311 B.R. 862 (Ariz. 2004), aff'd by *Zurich American Ins. Co. v. International Fibercom, Inc. (In re International Fibercom, Inc.)*, 503 F.3d 933 (9th Cir. 2007). In fact, in *In re International Fibercom Inc.*, 311 B.R. 862 (Ariz. 2004), Zurich did not even dispute its obligation to pay claims despite the insured's failure to reimburse the deductible:

> Debtor further asserts, and Zurich does not dispute, that the Debtor's failure to reimburse Zurich for the deductible amounts would not excuse Zurich from paying further workers compensation claims that were incurred, because the policy itself contained a provision required by Arizona law and similar state statutes: "Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs."

*International Fibercom*, at 865-866.

46. Illinois, the state listed as the mailing address for the named insured on the Zurich Insurance Policy, has a statute similar to the Arizona statute at issue in *International Fibercom*. Illinois Insurance Code, Chapter 215, § 5/388, requires that no liability or indemnity insurance policy may be issued "unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injuries sustained or death resulting therefrom or loss occasioned during the term of such policy."

47. The public policy implemented by Illinois Insurance Code, Chapter 215, § 5/388 is that injured parties shall be compensated regardless of whether or not a bankrupt debtor fulfills it payment obligations under the policy. *In re Vanderveer Estates Holding, LLC*, 328 B.R. 18, 24-25 (E.D.N.Y. 1995)

48. Similarly, in *In re: HNRC Dissolution Co. and Zurich American Ins. Co v. Lexington Coal Co, LLC*, 371 B.R. 210 (N.D. Kentucky, 2007), the court found that: "Under Zurich's Insurance Program, the insured was not obligated to pay the deductible in full upon the occurrence of the claim, but rather Zurich would advance money to pay losses and expenses and the insured would not pay until billed." See Id. at 214. Similarly, the language of the deductible endorsement, as set forth above, requires the Debtors to reimburse deductible amounts paid by Zurich and does not require the Debtors to pay any deductible amount directly to any claimant.

49. Thus, the Movant is not seeking any payment from the Debtors' estates, and is merely seeking the Court to lift the automatic stay to allow Zurich to pay on behalf of the Debtors the remaining $600,000 owed.

50. Even if the terms of the Zurich Insurance Policy did not explicitly state that Zurich is responsible for payment of the deductible amount, Zurich would be responsible under California law for payment of the deductible amount under the Zurich Insurance Policy despite the Debtors' bankruptcy, because the Zurich Insurance Policy provides a type of insurance required by California law, i.e., automobile liability insurance, just like the policies issued by Zurich in the cases cited above provided legally mandated workers' compensation insurance.

51. Like almost all states, the State of California has a financial responsibility law, i.e., compulsory auto liability insurance law. See California Vehicle Code sections 16050-16057 It would be contrary to the public policy of California to allow Zurich to issue a policy that an insured could use as proof of financial responsibility that essentially provides no coverage for a claim under $1 million, or the first $1 million of a claim, if the insured goes bankrupt. For example, *New Hampshire Insurance Company v. Ridout*, 68 Cal.App.4th 495, (1998) involved a deductible clause very similar to the deductible endorsement in the Zurich policy in the present

case. In *Ridout*, the deductible language of the policy provided: "We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, he shall promptly reimburse us for such part of the deductible amount as has been paid by us." Id. at 501. The *Ridout* Court expressly confirmed the process of the insurer's payment of the full settlement amounts pursuant to the deductible language and thereby allowed a claim of reimbursement of the settlement amounts paid. Id. at 501-505. This black letter law is absolutely consistent with the terms of the Zurich insurance policy at issue here, which specifically imposes the obligation upon Zurich to pay settlements or judgments up to the policy limits and then seek reimbursement from the insured of such amounts at a later time.

52.　　In fact, letting Zurich file an unsecured claim against the Debtors' estate in the amount of $600,000 as quickly as possible may be for the best. In *In re Bock Laundry Machine Co.*, 37 B.R. 564 (N.D.Ohio 1984), the court granted relief from the automatic stay to allow a personal injury action to proceed against the debtor, even though it might result in the debtor being liable for the amount of the deductible. The court noted:

> The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of a debtor's assets. *Matter of Holtkamp*, supra. A lifting of the stay to allow a plaintiff-creditor to determine liability will not affect the estate. It will only allow the Movants to establish the amount of a claim which already has been made against the estate. In this respect, a relief from the stay will not violate the purpose for which it was imposed.
> It is also important to point out that in the event the Movants are successful in obtaining a judgment, the Debtor-In-Possession will only be liable for the deductable portion of that judgment. This limitation is of significance in that the Debtor-In-Possession may estimate, as they have done in their disclosure statement, the Movant's claim as equal to the deductable limits. By doing so the Debtor-In-Possession will be able to incorporate into the Plan of

>Reorganization an amount which, in all likelihood, will be the maximum amount of their actual liability.

*Bock*, at 567.

## V. CONCLUSION

53. In short, because the Debtors are not required to expend any time or resources toward the Litigation and are not responsible for payment of the Uncontested Proceeds to the Movant, lifting the stay to allow payment of the Uncontested Proceeds is incapable of prejudicing the Debtors' interests.

54. Therefore, upon a balancing of the relative hardships, it is evident that that Movant will be forced to endure significantly more injurious hardship than the Debtors if the relief from stay is not granted.

55. Finally, there is no debate as to the probability that Movant will prevail on the merits of the Litigation. While the Settlement Agreement does not establish the Debtor's liability with respect to the Litigation, it clearly demonstrates that Movant possesses a meritorious claim against the Debtors. Therefore, all of the Rexene factors weigh in favor of lifting the stay to allow the Movant access to the Uncontested Proceeds.

## VI. NOTICE

56. Notice of this Motion is being provided to: (I) the Debtors; (II) Counsel to the Debtors; (III) the United States Trustee for the District of Delaware; (IV) Counsel to the Official Committee of Unsecured Creditors; (V) Counsel to Zurich Insurance; and (VI) Counsel to Travelers Insurance and (VII) all parties required to receive service under Federal Rule of Bankruptcy Procedure 2002(i) and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

## VII. NO PRIOR REQUESTS

57. The Movant has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Movant requests that this Court (i) enter an order in the form attached to this Motion granting the Movant relief from the automatic stay to permit the Movant to receive payment of the Uncontested Proceeds and (ii) for such other and further relief as the Court deems just and proper.

Dated: May 8, 2009
Wilmington, Delaware

**ELLIOTT GREENLEAF**

_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Elliott Greenleaf
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 656-3714
Email: rxza@elliottgreenleaf.com
Email: nrl@elliottgreenleaf.com

and

CALLAHAN & BLAINE
Edward Susolik, Esquire
Sarah C. Serpa
3 Hutton Drive, Ninth Floor
Santa Ana, CA 92707
(714) 241-4444

*Counsel to Jon Van Senus, by and through his guardian ad litem, Neala Olson*