IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket No. 1119**<br>**Hearing Date: May 28, 2009 at 1:00 p.m. EDT** |

## DEBTORS' OBJECTION TO THE MOTION OF SCHUR PACKAGING SYSTEMS, INC. FOR RELIEF FROM THE AUTOMATIC STAY

Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the Motion of Schur Packaging Systems, Inc. ("Schur") for Relief from the Automatic Stay to Permit Continuation of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Pending Litigation filed April 30, 2009 [Docket No. 1119] (the "Motion"). In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors object to the Motion for three reasons. First, if Schur's sole concern is the expiration of a statute of limitations for filing its third party complaint and counterclaims in the underlying lawsuit that Schur seeks to continue (the "Lawsuit"), the relief requested is unnecessary. The automatic stay does not appear to bar Schur's third party practice against any of the non-debtor parties to the Lawsuit and section 108(c) of the Bankruptcy Code tolls the applicable statute of limitations as to Schur's proposed counterclaim against the Debtors. Second, the Debtors understand that the Lawsuit has been placed on a special bankruptcy docket by the state trial court in Cook County, Illinois and is not presently being advanced by the plaintiff, rendering it difficult to understand why Schur, a co-defendant, is seeking to advance the Lawsuit. Finally, even if those issues could be overcome by Schur—and Schur makes no argument why they can—the relief sought in the Motion should not be granted because Schur is not harmed by the maintenance of the stay (indeed, it is benefited), while the Debtors would be forced to incur substantial defense and other costs if the stay were lifted, as is the case with other, similar motions to lift the stay to which the Debtors have previously objected.[2] Each of these points is discussed in turn below.

## ARGUMENT

2.      The automatic stay imposed by section 362(a) prevents "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that

---

[2] See, e.g., Debtors' Objection to the Motion of Allen Francisco for Relief From Stay Under Section 362 of the Bankruptcy Code (the "Francisco Objection") [Docket No. 465] and Debtors' Objection to the Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A., and Gutman Pain/Accident Center, Inc. (the "Gutman Objection") [Docket No. 1079]

was . . . commenced before the commencement of the case under [the Bankruptcy Code]." Section 362(d) of the Bankruptcy Code directs a bankruptcy court to grant relief from the automatic stay imposed by section 362(a) only where the moving party can demonstrate "cause".[3] Accordingly, Schur bears the prima facie burden of establishing cause. See, e.g., In re RNI Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006).

3. In determining whether Schur has demonstrated sufficient cause to lift the automatic stay, the Court should consider (i) whether allowing the litigation to continue in another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii) whether maintaining the stay will cause any hardship to Schur and whether this hardship is greater than the resulting hardship to the Debtors; and (iii) the probability of Schur prevailing on the merits of the Lawsuit. See, e.g., In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992). As discussed in greater detail below, Schur fails to meet each of these factors and, consequently, fails to establish that cause exists to lift the automatic stay.

**B.    Significant Prejudice to the Debtors Will Result if the Stay is Lifted**

4. The Debtors would be significantly prejudiced if the relief requested in the Motion is granted. As described in detail in the Debtors' prior objections to motions for relief from the automatic stay to continue litigation, the Debtors are subject to a significant number of prepetition litigation cases,[4] including at least 50 prepetition personal injury cases, all but one of

---

[3] Specifically, section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —

  1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

[4] Details of the Debtors' prepetition litigation and the applicable insurance coverage are set forth in the Affidavit of Don Liebentritt, Executive Vice President and General Counsel of Tribune Company, in support of the Francisco Objection (the "Liebentritt Affidavit") [Docket No. 465] and the Affidavit of Jack Rodden, Vice President

3

which expose the Debtors to a $1 million per occurrence deductible obligation.[5] The Lawsuit is a prepetition personal injury case in which Schur is a co-defendant with certain of the Debtors. Under the terms of the general liability insurance policy applicable to the Lawsuit, the insurer is not required to provide any coverage until the Debtors have incurred $1 million in loss, which deductible amount does not include the Debtors' defense costs. Thus, Schur cannot access any of the Debtors' insurance proceeds without causing significant defense and other costs to be borne by the Debtors' estates.[6] Therefore, the argument made by Schur's Motion—that lifting the automatic stay to permit it to file and assert a counterclaim against the Debtors to the extent of insurance is without prejudice to the Debtors or to the claims of other creditors—is simply not supported by the facts.

5.    Rather, if the Lawsuit were permitted to continue, the Debtors would be required to expend substantial estate resources in the near term to continue their defense. If the Debtors failed to do so, the insurers would likely claim a breach of the Debtors' obligations under the insurance policy, thus leaving no insurance coverage for Schur (or the underlying plaintiff) to claim against.[7] Alternatively, if the insurers stepped in to defend the Lawsuit, it would result in a contribution claim against the Debtors for the costs of defense, in addition to any loss incurred up to the $1 million deductible. It is impossible to permit Schur to continue to pursue the Lawsuit without either jeopardizing the insurance coverage or requiring the Debtors

---

and Treasurer of Tribune Company, in support of the Gutman Objection (the "Rodden Affidavit") [Docket No. 1084]. The facts set forth in the Liebentritt Affidavit and Rodden Affidavit are incorporated herein by reference.

[5]    The insurance coverage applicable to one of the at least 50 other prepetition personal injury cases has a $500,000 deductible per occurrence.

[6]    The Debtors' defense costs are not insured by the Debtors general liability insurance policy unless and until the Debtors incur $1 million in "loss" under the policy (i.e., in judgment or settlement). The Debtors may have the right to additional insurance coverage with respect to defending the Lawsuit; however, such coverage is contested.

[7]    No statements contained in this Objection should be construed as an admission by the Debtors' with respect to any insurers' rights and obligations under applicable insurance policies, or as a waiver of the Debtors' rights and defenses with respect to such policies.

to directly or indirectly pay the defense costs. Each of these alternatives would result in substantial costs and claims against the Debtors' estates.

6. Further, and also as discussed in the Francisco Objection and Gutman Objection, should this Court grant the relief requested in the Motion, it could create a domino effect with respect to at least 50 other prepetition personal injury cases pending against the Debtors, all but one of which is subject to a $1 million deductible obligation. This domino effect could also extend to (i) at least 45 prepetition media-related cases, each of which expose the Debtors to not only a $1 million dollar deductible obligation, but also to significant additional defense costs and (ii) at least 15 employment–related cases, none of which are covered by insurance. In fact, a number of the plaintiffs in the personal injury and media-related cases have already threatened to seek relief from the automatic stay. Permitting such a domino effect to occur would both require expending estate resources and undermine the purpose of chapter 11 proceedings, which are designed to provide the Debtors with a breathing spell and to liquidate claims more efficiently through a claims allowance process. See, e.g., Bormann v. Raymark Indus. Inc., 946 F. 2d 1031, 1036 (3d Cir. 1991) (noting that the automatic stay is designed to provide debtors with a breathing spell).

### C. No Prejudice Will Result to Schur if the Stay is Maintained and the Balance of Hardship Favors the Debtors

7. The Debtors' interests in maintaining the protections of the automatic stay far outweigh Schur's interests in obtaining relief as put to this Court in the Motion. Schur argues that as a result of the Debtors commencing these chapter 11 cases, it has been precluded from filing its counterclaims and third party complaint, including a counterclaim for contribution and/or indemnity against the Debtors. (See Mot. at ¶¶ 5-7.) As to the counterclaim and third party complaint proposed to be filed against unrelated non-debtor parties to the Lawsuit, the

automatic stay simply does not apply. While the scope of the automatic stay is broad, its "clear language … stays actions only against a debtor…. As a consequence, '[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors and or others with a similar legal or factual nexus to the … debtor.'" McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509-10 (3d Cir. 1997) (quoting Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991) (citing Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194, 1196 (6th Cir. 1983)). Thus, the general rule is that a lawsuit brought initially against multiple defendants, including the debtor, may still proceed against the non-debtor co-defendants after the debtor files bankruptcy. This is true of counterclaims and third party claims, as noted by the Third Circuit in Maritime Electric:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

Maritime Elec. Co., 959 F.2d at 1204-05. Although the automatic stay may be extended to third parties in certain circumstances, none of those circumstances is present in the instant matter, nor does Schur contend otherwise. Therefore, to the extent Schur's counterclaims and third party complaint are not asserted against any of the Debtors, the automatic stay does not operate to bar their filing in advance of the statute of limitations deadline.

8.   As to the counterclaim for contribution and/or indemnity that Schur proposes to file against one or more of the Debtors, that action is clearly stayed. However, the protections afforded to the Debtors by the automatic stay will not preclude Schur from filing its

6

counterclaim once the stay is lifted, pursuant to section 108(c) of the Bankruptcy Code.[8] The relevant statute of limitations for third party practice under applicable Illinois law had not expired as of the Petition Date and is therefore tolled while the automatic stay is in effect. Illinois case law is abundantly clear that statutory stay provisions toll statutory limitations periods. See Garbe Iron Works, Inc. v. Priester, 457 N.E.2d 422 (Ill. 1983) (holding that while the state court proceeding was stayed by defendant's bankruptcy pursuant to § 362(a), the limitation period was tolled by § 108(c)); see also Giannini v. Kumho Tire U.S.A., Inc., 898 N.E.2d 1095, 1099 (Ill. App. Ct. 2008) (holding that limitations period for filing contribution complaint under 735 ILCS 5/13-204(b) was tolled while the case was stayed for appeal).

        9.      Moreover, there is no compelling reason to continue the Lawsuit at this time. Following the Petition Date, the Lawsuit was placed on the bankruptcy "special stay calendar" in the Circuit Court of Cook County, Illinois, by order dated January 6, 2009 (the "Stay Order"). A copy of the Stay Order is attached hereto as Exhibit A. As provided by the Stay Order and customary practice in the Illinois Circuit Court, removal of a case from the stay calendar—e.g., to continue the case against a non-debtor party—must be made by motion. The plaintiff has not made any such request to continue the Lawsuit and it is baffling why Schur, a co-defendant, would want to force the Lawsuit forward when it is currently benefiting from the stay. Nor has the plaintiff filed a proof of claim against any of the Debtors in these chapter 11

---

[8]     Section 108(c) provides, in pertinent part, that:

    [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of –
    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
    (2) 30 days after notice of the termination or expiration of the stay under section 362 ... of this title ... with respect to such claim.

11 U.S.C. § 108(c).

cases. It would be a waste of estate resources to require the Debtors to defend against a contingent counterclaim for contribution and/or indemnity at a time when the underlying liability is speculative. Both Schur and the Debtors will be in a better position to determine the amount of resources to expend in defending the Lawsuit once (i) it becomes known whether the plaintiff in the Lawsuit will pursue the claim; and (ii) the Debtors have formulated and filed a plan of reorganization that indicates the estimated distribution on account of general unsecured claims.

10. Schur has failed to establish that the prejudice, if any, to Schur outweighs the prejudice to the Debtors. Under the present circumstances, there is simply no compelling reason to lift the automatic stay.

### D. Schur Has Failed to Demonstrate a Likelihood of Success on the Merits of the Lawsuit

11. Schur has failed to establish cause for lifting the automatic stay under the standards discussed above. As a result, the Debtors submit that the Court need not consider the probability of success on the merits of the Lawsuit. However, any analysis of this factor indicates that Schur has not even attempted to demonstrate that this test is met. In order to satisfy this third requirement, Schur would have needed, at a minimum, to submit evidence showing that it would be likely to win a judgment substantially in excess of the Debtors' $1 million deductible obligation, thereby showing that it could obtain significant relief from the insurance coverage. The Debtors believe, based on their familiarity with the Lawsuit, that Schur could not make such a showing. Accordingly, Schur has provided no basis for this Court to conclude that it has any probability of succeeding in obtaining any value from insurance if it were allowed to continue with the Lawsuit at this time.

## CONCLUSION

12.     Schur has failed to demonstrate "cause" exists for lifting the automatic stay. The Debtors will clearly suffer prejudice if the Lawsuit is permitted to proceed at this stage in their cases, while Schur will suffer no such prejudice and in fact benefits from the stay remaining in place. For these reasons, the Motion should be denied.

Dated:  Wilmington, Delaware
        May 21, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION