# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 10, 2009 at 11:00 a.m. EDT**<br>**Objection Deadline: June 3, 2009 at 4 p.m. EDT** |

## MOTION OF DEBTORS TRIBUNE BROADCASTING COMPANY, WGN CONTINENTAL BROADCASTING COMPANY, CHICAGOLAND TELEVISION NEWS, INC., TRIBUNE ENTERTAINMENT COMPANY, ET AL. FOR AN ORDER AUTHORIZING (I) THE ASSUMPTION OF CERTAIN AMENDED RATINGS SERVICES AGREEMENTS AND ANCILLARY AGREEMENTS WITH THE NIELSEN COMPANY (US), LLC AND (II) THE WAIVER AND RELEASE OF CERTAIN CLAIMS PURSUANT TO A SETTLEMENT AND RELEASE AGREEMENT

Debtors Tribune Broadcasting Company ("Tribune Broadcasting"), WGN

Continental Broadcasting Company ("WGN"), ChicagoLand Television News, Inc. ("CLTV"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Tribune Entertainment Company ("Tribune Entertainment"), and certain Broadcast Subsidiaries, as defined herein[2] (collectively, together with Tribune Broadcasting, WGN, CLTV, and Tribune Entertainment, the "Tribune Parties"), debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion") for entry of an order (i) authorizing and approving the entry into the Global Amendment and assumption of certain television ratings services agreements and ancillary agreements, as amended thereby, between Tribune Broadcasting, WGN, and CLTV and Nielsen Media Research, Inc., n/k/a The Nielsen Company (US), LLC[3] ("Nielsen") pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (ii) authorizing the Tribune Parties to execute a mutual waiver and release, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of various claims, as more fully described herein. In further support of the Motion, the Tribune Parties respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[2] The Broadcast Subsidiaries, all of which operate network-affiliated television stations that are the subject of certain of the Nielsen Agreements, as defined herein, are: Tribune Television Company, Tribune Television Holdings, Inc., Tribune Television Northwest, Inc., Tribune Television New Orleans, Inc., Channel 39, Inc., Channel 40, Inc., KIAH Inc., KPLR, Inc., KSWB, Inc., KTLA Inc., KWGN Inc., WDCW Broadcasting, Inc., WPIX, Inc., and WTXX Inc. The Broadcast Subsidiaries are included as Tribune Parties in the Motion to effectuate the mutual releases described herein.

[3] Nielsen Media Research, Inc. was merged into The Nielsen Company (US) LLC in 2008, as were certain other Nielsen companies. This Motion concerns only the Nielsen Agreements, as defined herein, all of which derive from the business previously operated by Nielsen Media Research Inc. and the TEC Agreements, as defined herein, and expressly does not concern or affect any other agreements by and between the Tribune Parties and The Nielsen Company (US) LLC.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner. The Committee has been apprised of the relief requested herein.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 365(a), 363(b), and 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6.      Tribune Company ("Tribune"), a debtor in the above-captioned case, is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment. Tribune's broadcasting and entertainment division, including the Broadcast Subsidiaries, own and operate 23 network-affiliated television stations, "superstation" WGN America, and Chicago cable news station CLTV (collectively, the "Tribune Stations"), which together reach more than 80% of television households in the United States.

3

7.    Nielsen is a prominent marketing and media information company, best known for its television ratings services that are an industry norm in broadcasting. Nielsen generates its ratings data primarily through electronic television "set meters", which capture audience behavior data from approximately 25,000 participating households daily. Set meters allow Nielsen to track a program's audience, measuring how long viewers spend with a program and how often they return. Nielsen has introduced enhanced "People Meters" in the top-21 local television markets, which capture information about not only what is being viewed, but exactly which members of the household are watching. In addition, during ratings "sweeps", Nielsen solicits participants to record and report their television viewing habits in paper diaries. Nielsen collects and processes approximately two million such viewer diaries each year. Nielsen also has a diary-only service in certain local television markets.

8.    Nielsen processes the raw ratings data into local and national samples and then analyzes the data using its proprietary methodology to allow television stations, broadcast and cable networks, and advertisers to compare audiences across different programming and to plan and transact the purchase and sale of television advertising. For example, the Nielsen Station Index ("NSI") provides the set meter, People Meter, and viewer diary data on a local basis in a television station's designated market area ("DMA"). Nielsen's National Homevideo Index ("NHI") provides a similar ratings service on a national and local basis to cable television stations. Certain ancillary software agreements provide access to Nielsen databases containing relevant audience measurement and research data.

9.    Tribune Broadcasting, WGN, and CLTV are each parties to certain prepetition rating services agreements and certain prepetition and postpetition ancillary agreements with Nielsen, which, inter alia, enable each of the Tribune Stations to access Nielsen

4

ratings and to analyze audience share rankings (collectively, the "Nielsen Agreements").[4]

Specifically, the Nielsen Agreements are comprised of: (i) an NSI Service Agreement and a group of ancillary software license agreements entered into by Tribune Broadcasting on behalf of itself and certain of the Tribune Stations; (ii) an NHI National Service Agreement and ancillary software license agreements entered into by Tribune Broadcasting and WGN on behalf of themselves and superstation WGN America; and (iii) an NHI Local Service Agreement and ancillary software license agreements entered into by Chicago cable station CLTV.[5]   Six of the ancillary agreements which are included in the Nielsen Agreements constitute unexpired, prepetition agreements (the "Unexpired Prepetition Ancillary Agreements") for which assumption is sought, as amended, pursuant to this Motion.   Certain of the ancillary agreements which the parties wish to amend and which are included in the Nielsen Agreements, however, were entered into postpetition (the "Postpetition Ancillary Agreements"), in the ordinary course of the Debtors' business.   The Postpetition Ancillary Agreements replaced certain prepetition ancillary agreements that expired under their own terms after the Petition Date (the "Expired Prepetition Ancillary Agreements").   Each of the Unexpired Prepetition Ancillary Agreements

---

[4] As the term is used in this Motion, the Nielsen Agreements do not include the TEC Agreements, defined herein.

[5] The ancillary software agreements provide access to Nielsen databases containing relevant audience measurement and research data.   Redacted copies of the Global Amendment, the NSI Service Agreement, NHI National Service Agreement, NHI Local Service Agreement, and a form of ancillary agreement are attached hereto as Exhibit A. (Copies of all of the redacted ancillary agreements are available for review upon request to the Debtors.)   The Nielsen Agreements attached as Exhibit A have been redacted to protect confidential, commercial or competitively sensitive information, including sensitive rate information and customized terms unique to the Nielsen/Tribune Parties' contractual relationship.   A joint motion to file the unredacted Nielsen Agreements under seal is being filed contemporaneously with this Motion.   Unredacted versions of all of the Nielsen Agreements, including the ancillary agreements, and the Global Amendment will be made available to the U.S. Trustee's office, the Committee, and the senior lender steering committee subject to confidentiality constraints, including as described in the joint motion to file under seal.

Nothing contained in this Motion is intended to alter any provision of the agreements attached as exhibits hereto.   In the event of a discrepancy between the description of such agreements in this Motion and their actual terms as reflected in the exhibits, the terms of such agreements shall control.

and the Postpetition Ancillary Agreements will enjoy the benefits conferred by the Global

Amendment, as defined herein.

10.     Over the past several months, Tribune Broadcasting, WGN, CLTV, and

Nielsen have engaged in discussions regarding their ongoing business relationships, including

these bankruptcy proceedings and the impact of declines in advertising revenues and data

sampling concerns in certain DMA markets.  As a result of these discussions, the parties have

agreed to adjust the rates Nielsen charges for its ratings services for all of the Tribune Stations as

part of a global amendment to the Nielsen Agreements (the "Global Amendment").  The Global

Amendment also includes a provision pertaining to a possible increase in sample sizes in certain

local DMA markets.  Although subject to Nielsen's discretion, if implemented, the increase in

sample sizes could also be beneficial to the Tribune Parties.  Finally, the Global Amendment

extends the terms of all Nielsen Agreements until December 31, 2011 and shall be retroactively

effective as of April 1, 2009 (the "Effective Date").  In order to effectuate these terms and to

secure the enhanced economic benefits of the amended Nielsen Agreements for their estates,

Tribune Broadcasting, WGN, and CLTV have determined both to amend their Postpetition

Ancillary Agreements in the ordinary course of business and to assume the prepetition Nielsen

Agreements (including the Unexpired Prepetition Ancillary Agreements), in each case as

amended by the Global Amendment.

11.     In conjunction with the foregoing, the Tribune Parties and Nielsen have

agreed to the compromise and waiver of certain claims, as described in the settlement and release

agreement attached hereto as Exhibit B (the "Settlement and Release Agreement").  Specifically,

Nielsen has agreed to release (i) all claims against the Tribune Parties arising under the Nielsen

Agreements or the Expired Prepetition Ancillary Agreements prior to the Petition Date or on or

6

after the Petition Date but prior to the Effective Date, but excluding any payments owing to

Nielsen for postpetition services thereunder;[6] and (ii) all claims, whether arising prepetition or

postpetition against the Tribune Parties in connection with Tribune Entertainment's agreements

with Nielsen (the "TEC Agreements"), including any claims in connection with the prepetition or

postpetition termination of the TEC Agreements.[7] The Tribune Parties, on behalf of themselves

and the Tribune Stations, have agreed to release all claims against Nielsen arising under the

Nielsen Agreements or the Expired Prepetition Ancillary Agreements prior to the Petition Date

or on or after the Petition Date but prior to the Effective Date, and specifically including all

claims under the avoidance powers codified in chapter 5 of the Bankruptcy Code for payments

made to Nielsen under the Nielsen Agreements, the Expired Prepetition Ancillary Agreements,

or TEC Agreements (the "Avoidance Claims"), but excluding any credits owing to the Tribune

Parties and arising postpetition for guaranteed sample characteristics and tolerance, as specified

in the Nielsen Agreements.[8] In order to effectuate these settlement terms, the Tribune Parties

have determined that it is in their best interest to obtain authorization to enter into the Settlement

and Release Agreement pursuant to Rule 9019.

## **RELIEF REQUESTED**

12.     By this Motion, Tribune Broadcasting, WGN, and CLTV seek entry of an

order authorizing and approving the Global Amendment and the assumption of the prepetition

Nielsen Agreements, as amended thereby, pursuant to section 365(a) of the Bankruptcy Code.

Tribune Broadcasting, WGN, and CLTV respectfully request that the Court authorize them to

---

[6] Included in these released claims are prepetition amounts owed to Nielsen which Nielsen believes total in excess of $2,788,000.

[7] Tribune Entertainment ceased operations prior to the Petition Date. The parties have agreed to the termination of the existing TEC Agreements, and Nielsen has agreed to release all claims, whether arising prepetition or postpetition, in connection with the TEC Agreements and the termination thereof.

[8] The Debtors' records reflect payments made to Nielsen in the 90 days prior to bankruptcy totaling $3,837,706.85.

seek assumption of the multiple executory contracts that comprise the prepetition Nielsen

Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).

13.     Additionally, the Tribune Parties seek this Court's authorization pursuant

to Rule 9019 to enter into the Settlement and Release Agreement.

## BASIS FOR RELIEF

### A.     Assumption of the Amended Nielsen Agreements

14.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject an executory contract or an unexpired lease." 11

U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d

1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a

contract pursuant to procedures set forth in section 365(a)).  A debtor's assumption or rejection

of an executory contract is subject to review under the business judgment standard.  In re ANC

Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an

executory contract or unexpired lease. . . the debtor must establish that the decision is one made

in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126

(Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business

judgment test").

15.     Under the business judgment test, a debtor is required to proffer a reason

as to why, in its business judgment, assumption or rejection of the executory contract or

unexpired lease at issue benefits the debtor's estate and then articulate the bases of that

determination.  See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir.

1989).  Application of the business judgment standard thus dictates "that a court should approve

a debtor's business decision unless the decision is the product of bad faith or gross abuse of

discretion."  See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond

8

Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986);

Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment

standard requires deference to debtor's management absent showing of bad faith, fraud, or gross

overreaching).

      16.    Tribune Broadcasting, WGN, and CLTV believe, in their business

judgment, that the assumption of the amended prepetition Nielsen Agreements is in the best

interests of their estates and creditors.  As noted above, Nielsen's ratings are used as currency for

advertising transactions in the television industry; therefore, ensuring continued access to the

ratings data and analysis provided for under the Nielsen Agreements is important to the ongoing

business operations of each of the Tribune Stations.  Tribune Broadcasting, WGN, and CLTV

have negotiated terms in the Global Amendment that will confer additional economic benefits to

each of the Tribune Stations through adjusted rates and by creating the potential for increased

sampling sizes in the local DMA markets.  Moreover, the Global Amendment will be

retroactively effective as of April 1, 2009, providing additional economic benefits to the Tribune

Parties.  Finally, significant economic benefit is conferred upon the Tribune Parties through the

elimination of any "cure" payment as a result of the parties' proposed waiver and release of

claims.[9]  Accordingly, Tribune Broadcasting, WGN, CLTV, and Tribune Entertainment

respectfully submit that the assumption of the amended prepetition Nielsen Agreements is

supported by sound business judgment and is in the best interests of their estates and creditors.

      17.    Section 365(b)(1) of the Bankruptcy Code provides that the trustee or

debtor in possession may only assume an executory contract after demonstrating that the estate is

able to meet the debtor's obligations – by promptly curing any existing defaults and providing

---

[9] The mutual releases provided herein, including the resulting elimination of any "cure" obligation is not intended to and will not relieve the Tribune Parties and Nielsen from their respective performance obligations from and after the Effective Date under any of the Nielsen Agreements as amended.

9

adequate assurance of future performance under such contract.  See, e.g., Metropolitan Airports

Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir.

1993).  As discussed in greater detail below, the parties have negotiated the Settlement and

Release Agreement to effect the waiver and release of certain substantial claims held by Nielsen.

Furthermore, the Debtors have obtained postpetition financing and maintain sufficient liquidity

to perform all of their postpetition obligations under the assumed Nielsen Agreements.  Tribune

Broadcasting, WGN, and CLTV respectfully submit that they have met all of the requirements

for the assumption of the amended Nielsen Agreements.

        18.      Finally, Tribune Broadcasting, WGN, and CLTV respectfully request that

the Court authorize them to seek assumption of the multiple executory contracts included in the

Nielsen Agreements, as amended, in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).

Bankruptcy Rule 6006(e) limits the ability of a debtor to "seek authority to assume or assign

multiple executory contracts or unexpired leases in one motion unless (1) all executory contracts

or unexpired leases to be assumed or assigned are between the same parties or are to be assigned

to the same assignee; (2) the trustee [or debtor in possession] seeks to assume, but not assign to

more than one assignee, unexpired leases of real property; or (3) the court otherwise authorizes

the motion to be filed."  Fed. R. Bankr. P. 6006(e).  Nine separate agreements, as amended, will

be assumed pursuant to this Motion.  Each of these agreements is between a Debtor and Nielsen,

and each has as its subject matter the television ratings services provided by Nielsen to the

Tribune Stations.  Therefore, Tribune Broadcasting, WGN, and CLTV respectfully submit that

the interests of judicial economy are best served by seeking the relief requested herein in this one

Motion.  Tribune Broadcasting, WGN, and CLTV have complied in all respects with the

46429/0001-5659143v1

provisions in Rule 6006(f), pertaining to omnibus motions to assume multiple executory

contracts.

**B.      Approval of the Settlement and Release Agreement**

19.      By this Motion, the Tribune Parties also seek entry of an order to authorize

the Settlement and Release Agreement for the mutual waiver and release of claims pursuant to

Bankruptcy Rule 9019, which grants the Court authority to approve compromises and

settlements of claims and controversies after notice and a hearing.  Bankruptcy Rule 9019

provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the
> court may approve a compromise or settlement.  Notice
> shall be given to creditors, the United States trustee, the
> debtor, and indenture trustees as provided in Rule 2002 and
> to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).  The Third Circuit Court of Appeals has stated that section 363 of the

Bankruptcy Code is the substantive provision requiring a hearing and court approval of

settlements, while Bankruptcy Rule 9019 established the procedure by which such approval may

be secured.  See Myers v. Martin (In re Martin), 91 F.3d 389, 395 n.2 (3d Cir. 1996)

(distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule

9019).

20.      Courts in this district have emphasized that "to minimize litigation and

expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'"

In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting Louise's,

Inc., 211 B.R. 798, 801 (D. Del. 1997); see also In re Martin, 91 F.3d at 393 (quoting 9 Collier

on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr.

M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and … much of

litigation in bankruptcy estates results in settlements").  In determining whether to approve a

11

settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third

Circuit has stated that a bankruptcy court is required to "assess and balance the value of the

claim that is being compromised against the value to the estate of the acceptance of the

compromise proposal." In re Martin, 91 F.3d. at 393.  In making this determination, a court

should consider four criteria: "(1) the probability of success in the litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay…; and (4) the paramount interest of the creditors." Id. (referencing

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414,

424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998)

(listing the Anderson factors as controlling whether a settlement should be approved).  The

ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate.

See In re Louise's, 211 B.R. at 801.

     21.     In conjunction with the proposed early assumption of the prepetition

Nielsen Agreements, as amended, and the simultaneous amendment of the Postpetition Ancillary

Agreements, the parties desire to resolve the issues arising out of the existing Nielsen

Agreements as well as certain other disputed matters by entering into the attached Settlement and

Release Agreement.  The Tribune Parties believe that the terms and conditions of the Settlement

and Release Agreement, as well as the Global Amendment to the Nielsen Agreements, are fair

and reasonable and in the best interests of their estates and creditors.  The Settlement and

Release Agreement and the Global Amendment are the products of arm's-length negotiations

between the Tribune Parties and Nielsen.  Nielsen has agreed to waive the assertion of

substantial claims against the estates.  While the Tribune Parties are also waiving claims for the

avoidance and recovery of substantial prepetition payments made to Nielsen, the Tribune Parties

believe that the relinquishment of such claims is justified, taking into account the benefits arising under the Global Amendment and the benefit of Nielsen's release of sizable prepetition claims and the costs, inherent uncertainties, and risks associated with any litigation by the Debtors to recover these prepetition payments.[10]

## NOTICE

22.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing facility; (viii) counsel to Nielsen; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

23.    The Debtors have not previously sought the relief requested herein from this or any other Court.

---

[10] For example, the Tribune Parties anticipate that Nielsen would raise any number of defenses, including that the payments were made in the ordinary course of business, in the event that the Tribune Parties commenced litigation to avoid and recover such payments as preferences.

WHEREFORE, the Tribune Parties respectfully request that the Court enter an order, in substantially the form attached hereto as <u>Exhibit C</u>, (i) authorizing and approving the entry into the Global Amendment and the assumption of the prepetition Nielsen Agreements, as amended thereby, by Tribune Broadcasting, WGN, and CLTV, on behalf of themselves and the Tribune Stations effective as of April 1, 2009; (ii) authorizing the mutual waiver and release of claims by the Tribune Parties and Nielsen under the Settlement and Release Agreement, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      May 21, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Jillian K. McClelland
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

     -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _Kate Stickles_____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-5659143v1