**EXHIBIT A**

**PATER DECLARATION**



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket No. 1161** |

## DECLARATION OF STEPHANIE PATER IN SUPPORT OF MOTION OF DEBTOR TRIBUNE COMPANY FOR AN ORDER PURSUANT TO SECTIONS 105(A), 363(B) AND 363(F) OF THE BANKRUPTCY CODE AUTHORIZING (I) ENTRY INTO A DIRECT LEASE WITH MOSBY, INC. OF CERTAIN REAL PROPERTY LOCATED IN MARYLAND HEIGHTS, MISSOURI AND (II) THE SALE OF THE PROPERTY TO SUMMIT WESTLINE INVESTORS, LLC

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) ss: |
| COUNTY OF COOK | ) |

STEPHANIE PATER, hereby states:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CH1 4706659v.1

DKT. NO. 1256
DT. FILED 5/28/09

1.  I am Director, Real Estate of Tribune Company ("<u>Tribune</u>"), a corporation organized under the laws of Delaware and one of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"). Tribune is the direct or indirect parent of the other Debtors herein. I am generally familiar with the Debtors' real property and needs and operations and I make this Declaration (the "<u>Declaration</u>") on behalf of the Debtors.

2.  I submit this Declaration in support of the motion of Tribune for an order pursuant to sections 105(a), 363(b), and 363(f) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") authorizing (i) entry into a direct lease with Mosby, Inc. of certain real property located in Maryland Heights, Missouri (the "<u>Westline Property</u>"); and (ii) the sale of the Westline property to Summit Westline Investors, LLC (the "<u>Motion</u>")[2]. Unless otherwise stated in this Declaration, I have personal knowledge of the facts as set forth herein. The hearing on the Motion is scheduled for May 28, 2009 (the "<u>Sale Hearing</u>"). If called to testify at the Sale Hearing, I would state that:

3.  The Westline Property is an office complex with three one-story buildings and one two-story building on a parcel of real estate covering approximately 10.29 acres. The Westline Property is located in an area that features similar office complexes, industrial buildings, and hotel properties. Historically, the Westline Property was leased by The Times Mirror Company from its affiliate, TMCT, LLC, and then subleased to a third-party tenant. The current tenant, Mosby, Inc. ("<u>Mosby</u>") has subleased the Westline Property since 1997 pursuant to a sublease agreement that expires in August 2009.

4.  In June 2000, Tribune completed the acquisition of The Times Mirror Company and its seven daily newspapers, including the <u>Los Angeles Times</u>, the <u>Baltimore Sun</u>,

and the Hartford Courant. As part of this transaction, Tribune obtained a purchase option on a portfolio of eight properties that were owned by TMCT, LLC, including the Westline Property, the headquarters for the Los Angeles Times, and the headquarters and printing facilities for the Baltimore Sun and the Hartford Courant. In April 2008, Tribune exercised its purchase option and acquired the portfolio of former TMCT, LLC properties. Neither Tribune nor any of the other Debtors have conducted any of their own business operations on the Westline Property, nor do any of the Debtors anticipate having any need to use the Westline Property directly in the future.

### Marketing of the Westline Property

5. In light of those facts, Tribune began marketing the Westline Property in February 2008, even before exercising its purchase option, in anticipation of a sale as soon as practicable thereafter. Tribune listed the Westline Property with two prominent commercial real estate brokers, Gateway Commercial and Cushman & Wakefield (the "Brokers"). The Brokers actively and aggressively marketed the Westline Property for over a year, sending marketing materials to nearly fifty potential purchasers and conducting fifteen property tours. Tribune has actively marketed the property in a year that has been marked by unprecedented turmoil in the real estate and financial markets. During this time period, the Brokers actively reached out to reputable developers, brokers, and potential end users of the Westline Property and toured the property with fifteen potentially interested parties. Despite these efforts, Tribune only received three offers from prospective buyers, including that of Summit Westline Investors, LLC (the "Purchaser"). The first offer was received in April 2008 and was for $6.375 million, a second

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

offer was received in August 2008 for $8 million but later withdrawn for lack of financing; and an offer of $8.1 million was received from the Purchaser in September 2008.

6. The Westline Property has remained on the market during the negotiations with the Purchaser, and Tribune has not received any further offers or expressions of interest. Tribune is informed by its Brokers that the longer the Westline Property stays on the market, the more likely the selling price will decline as new properties become available. Based on this advice, I do not believe that further marketing efforts for public sale are likely to result in higher and better offers for the Westline Property.

### The Proposed Sale

7. Tribune and the Purchaser have negotiated and executed a Sale Agreement, which sets forth the material terms of the parties' agreement for the sale of the Westline Property to the Purchaser. The Sale Agreement provides that the Purchaser will purchase the Westline Property for $6,050,000, paid in full in cash at closing, subject to prorations and adjustments as provided for in the Sale Agreement.[3] The difference between the Purchaser's initial offer and the final purchase price is attributable to the lost rental income stream of approximately $250,000 per month due to the delay of the original closing scheduled for December 2008, which has now been extended through early June (the "Closing Date"). Additionally, during the Purchaser's due diligence study period (the "Study Period"), the Purchaser raised certain concerns as to the condition and title of the Westline Property and

---

[3] The purchase price is subject to a real estate tax credit in the amount of $102,500, representing a proportionate share of the real estate taxes for the Westline Property for calendar year 2009. If the Purchaser collects from Mosby its proportionate share of the real estate taxes for the period of January 1, 2009 though August 7, 2009, then the Purchaser will refund that portion of the tax credit to Tribune. (Third Amendment to Purchase and Sale Agreement at ¶ 10.)

requested that an adjustment be made to the purchase price.[4] Following that request, Tribune evaluated the Purchaser's concerns and Tribune and the Purchaser began negotiations with respect to the proposed adjustments. Those negotiations resulted in the three amendments to the Purchase and Sale Agreement.

8. In return for the adjustment to the original purchase price, Tribune requested, and the Purchaser agreed, to increase the amount of the earnest money deposit by $50,000, in addition to the $250,000 that has already been deposited into escrow pursuant to the Sale Agreement. (Sale Agreement at ¶ 1.5; Third Amendment to Purchase and Sale Agreement at ¶ 3.) Within three (3) days of the expiration of the Study Period, the Purchaser shall deposit such additional earnest money into the escrow account to be applied to the purchase price on the Closing Date. The Sale Agreement contemplates that the Closing Date will occur on or between May 29, 2009 and June 5, 2009, subject to the provisions permitting further extension contained in the Sale Agreement. (Third Amendment to Purchase and Sale Agreement at ¶ 9.) If the Closing Date is delayed until August 10, the day after the existing sublease agreement expires, then the purchase price will be reduced according to the calculations set forth in the Sale Agreement. (Sale Agreement at ¶ 3.4.)

9. The parties' respective obligations under the Sale Agreement are conditioned upon Tribune's entry into a direct lease with Mosby (the "Direct Lease"). (Third Amendment to Purchase and Sale Agreement at ¶ 7.) The Direct Lease is the product of good

---

[4] The Sale Agreement provides that the Purchaser shall have a fifty-eight day Study Period from March 11, 2009, the Effective Date of the Sale Agreement, to inspect the Westline Property and conduct a review of all pertinent documents. (See Sale Agreement at ¶ 3.1; Second Amendment to Purchase and Sale Agreement at ¶ 2.) Accordingly, the Study Period will terminate on May 8, 2009, the date of the filing of this Motion. (Second Amendment to Purchase and Sale Agreement at ¶ 2.) The parties respectfully reserve their rights to make further modifications to the Sale Agreement and the Direct Lease based upon the results of the Purchaser's Study Period, which modifications may be made in writing without further approval from this Court either before or after this

faith, arms' length negotiations among the parties. Mosby is not affiliated with Tribune or any of the Debtors. The terms of the Direct Lease are substantially similar to the terms of the existing sublease and do not create any additional obligations for Tribune's bankruptcy estate. Currently, Tribune is the successor to The Times Mirror Company on both the lease and sublease of the Westline Property. When Tribune exercised its purchase option on the Westline Property, it also succeeded to TMCT, LLC's master lease, becoming lessor, lessee, and sublessor at once. To eliminate this convoluted structure and facilitate the sale of the Westline Property to the Purchaser, Tribune submits, and I agree, that it is in Tribune's best interests to terminate the existing sublease agreement and enter into a new Direct Lease with Mosby, to be assumed by the Purchaser upon the Closing Date.[5]

10. The Sale Agreement is the product of good faith, arms' length negotiations among the parties. The Purchaser is not affiliated with Tribune or any of the Debtors. As discussed above, the consideration to be paid by the Purchaser is fair and reasonable under the circumstances. For these reasons, Tribune submits, and I agree, that, in the exercise of its business judgment, it is beneficial to Tribune's estates to sell the Westline Property to the Purchaser subject to the Direct Lease with Mosby.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: May 27, 2009

_____
STEPHANIE PATER

---

Court's approval of the sale transaction contemplated herein, provided that such modifications are not material either individually or in the aggregate.

[5] Tribune and Mosby are parties to a Lease Clarification Agreement, dated December 11, 2007, which provides that "At the option of Tribune and upon five (5) days advance written notice from Tribune to Mosby, Mosby agrees to enter into a direct lease with the then-current owner of the Premises ... Upon the execution of the Direct Lease between the owner of the Premises and Mosby, the Sublease shall terminate and Mosby and Tribune shall have no further liability to the other under the Sublease except with respect to liabilities that specifically survive the termination of the Sublease." (Lease Clarification Agreement at ¶ 4.)

**Miscellaneous:**

08-13141-KJC Tribune Company
Type: bk                    Chapter: 11 v              Office: 1 (Delaware)
Assets: y                   Judge: KJC
Case Flag: PlnDue, DsclsDue, MEGA, LEAD, CLMSAGNT, Sealed Doc(s)

**U.S. Bankruptcy Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from J. Kate Stickles entered on 5/28/2009 at 10:07 AM EDT and filed on 5/28/2009
**Case Name:**        Tribune Company
**Case Number:**      08-13141-KJC
**Document Number:** 1256

**Docket Text:**
Declaration in Support *(Declaration of Stephanie Pater in Support of Motion of Debtor Tribune Company for an Order Pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code Authorizing (I) Entry into a Direct Lease with Mosby, Inc. of Certain Real Property Located in Maryland Heights, Missouri and (II) the Sale of the Property to Summit Westline Investors, LLC)* (related document(s)[1161]) Filed by Tribune Company. (Stickles, J.)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** \\Cs-de-01\efilings\TRIBUNE COMPANY\Westline Declaration - S. Pater (DI 1161) \Declaration of S. Pater (DI 1161).PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=5/28/2009] [FileNumber=7273322-0]
[818b6b40083104b9b5fd6358268e0d24a679f295f0be7982a5080164cf16f3f0bd7e
41e050561c475027338c3c2c93792bc7ad9567205a39fe2f0a3138676b2f]]

**08-13141-KJC Notice will be electronically mailed to:**

Frank A. Anderson on behalf of Creditor Pension Benefit Guaranty Corporation
anderson.frank@pbgc.gov, efile@pbgc.gov

Thomas V. Askounis on behalf of Creditor Banc of America Leasing & Capital, LLC
taskounis@askounisdarcy.com

John M. August on behalf of Creditor Canon U.S.A., Inc.
jaugust@herrick.com, courtnotices@herrick.com

Zachary J. Bancroft on behalf of Creditor Orlando Magic Ltd
zachary.bancroft@lowndes-law.com

Ian Connor Bifferato on behalf of Defendant Corie Brown
cbifferato@bifferato.com, dfeinberg@lewisfeinberg.com