IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                      : Chapter 11
                                            :
TRIBUNE COMPANY, et al.,                    : Case No. 08-13141 (KJC)
                                            :
                                            : Jointly Administered
      Debtors.                              :
------------------------------------------------------------ x

## SUPPLEMENTAL AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

STATE OF ILLINOIS    )
COUNTY OF COOK       )

Jeff Olin, first being duly sworn, deposes and says:

1. I am a Partner with the firm of Grant Thornton LLP (the "Firm"), which has offices throughout the United States, including an office located at 175 W. Jackson Boulevard, 20th Floor, Chicago, Illinois 60604, employed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the ordinary course of their businesses.

2. This supplemental affidavit is submitted pursuant to Sections 105(a), 327, 328 and 330 of the United States Bankruptcy Code (the "Bankruptcy Code"), in compliance with the Order Pursuant to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code authorizing the Debtors to retain, employ and compensate certain professionals utilized by the Debtors in the ordinary course of business during the pendency of these chapter 11 cases (the "OCP Order").

3. On or about March 30, 2009 the Debtor filed with this Court my Affidavit of Ordinary Course Professional seeking to employ the Firm (the "Original Affidavit"). Accompanying my Original Affidavit as Exhibit "C" was our engagement letter. The provisions of my Original Affidavit are incorporated herein by this reference as if set forth at length and

supplemented by this Supplemental Affidavit. A true and correct copy of the Original Affidavit and engagement agreement are attached hereto as Exhibit "1" and incorporated herein by this reference.

4. The Debtors have requested that the Firm render additional professional services beyond those included in the Original Affidavit and engagement letter, including, but not limited to annual tax services for Debtors' foreign correspondents. The Standard Grant Thornton LLP Engagement Terms for International Services (the "Engagement Letter") is outlined in the Engagement Letter, Exhibit "2" hereto and incorporated herein by this reference.

5. The Firm has read the proposed OCP Order and understands the limitations on compensation allowed to be paid without a court order.

6. In addition to the Original Affidavit, the Firm intends to apply for compensation for professional services rendered herein, in accordance with the OCP Order, with such application to request compensation for services as follows: (i) the hourly rates set forth in the Original Affidavit, plus reimbursement of actual and necessary expenses and other charges incurred by the Firm, as outlined in the Original Affidavit, Exhibit "1" hereto; and, (ii) its services provided in the Engagement Letter. The Firm understands that, pursuant to the OCP Professionals Order, services rendered to the Debtors resulting in fees of more than the amounts per month permitted to be paid to the Firm under the OCP Professionals Order will require entry of an order of the Court authorizing such higher amount.

7. The hourly rates for the Engagement Letter are subject to periodic adjustments to reflect changes in the economy and other conditions. The hourly rates are the Firm's standard hourly rates for work of this nature. The rates are set at a level designed to fairly compensate the Firm for the work of its members, associates and/or employees, and to cover fixed and routine

overhead expenses. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the Debtors' case. The expenses charged to clients include, among other things, travel costs, telecommunications, express mail, messenger service, photocopying costs, document processing, temporary employment of additional staff, overtime meals, and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

8. The Firm shall continue its representation consistent with the OCP Order and the Engagement Letter, except as set forth above and modified below:

A. For services rendered during the period beginning with the Petition Date and ending with the date of closure of these chapter 11 cases or the termination of Grant Thornton's employment (whichever occurs first): (i) the limitation of liability provisions found at paragraph 2(a) of the Engagement Letter are deleted from the Engagement Letter and are of no further force and effect; (ii) the limitation on the period to file claims found at paragraph 2(c) of the Engagement Letter is deleted from the Engagement Letter and is of no further force and effect; (iii) the agreement not to sue and release of claims found at the last sentence of paragraph 12 of the Engagement Letter are deleted from the Engagement Letter and are of no further force and effect; and, (iv) the provision requiring the Debtors to refrain from hiring Grant Thornton professionals found at paragraph 15 of the Engagement Letter is deleted from the Engagement Letter and is of no further force and effect.

B. The indemnification provisions contained in paragraph 2(b) of the Engagement Letter are hereby made subject to the following clarifications:

(a) Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, Grant Thornton, in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Grant Thornton's performance of the services described in the Engagement Letter;

(b) Grant Thornton shall not be entitled to indemnification, contribution, or reimbursement for services other than the tax services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(c) Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify Grant Thornton, or provide contribution or reimbursement to Grant Thornton, for any claim or expense that it is either (i) judicially determined (the determination having become final) to have arisen from Grant Thornton's gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors prove the material breach of Grant Thornton's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Grant Thornton should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(d) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Grant Thornton believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Letter, including without limitation the advancement of defense costs, Grant Thornton must file an application before this Court, and the Debtors may not pay any such amounts to Grant Thornton before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by Grant Thornton for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Grant Thornton.

9. Except as provided in the OCP Order, no representations or promises have been received by the Firm nor by any members, partner, counsel, associate, or employee thereof as to compensation in connection with these Chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code. The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with the Chapter 11 cases.

10. The Debtors owe GT the sum of $13,960.00 for professional services rendered prior to the Petition Date. Upon approval of this Application, GT agrees to waive this claim to collect fees, but such waiver shall not operate as a waiver of any defenses, rights or claims that GT may have in defense of preference or malpractice actions against it. In the 90 days prior to the Petition Date, GT received retainers and payments totaling $16,285 in the aggregate for services performed for the Debtors. GT has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date in the following manner: $465 was

received for June 24, 2008 – July 22, 2008 services and expenses. $3,335 was received for August 20, 2008 – September 24, 2008 services and expenses. $12,485 was received for September 25, 2008 – October 27, 2008 services and expenses.

11.     GT has not completed its analysis of the potential preference exposure regarding these prepetition payments, but believes it has complete defenses to any such claims.

12.     After our review of the list of interested parties, GT revealed nothing that would result in having an adverse interest to the Debtors (or their chapter 11 cases) other than as disclosed in the Exhibit B to the Grant Thornton Affidavit.

To the best of my knowledge and belief, I declare that the foregoing is true and correct.

By: _____
Name:   Jeff Olin
Title:    Partner

Sworn to and subscribed
before me on this 29th
day of May, 2009.

_____
Notary Public
My Commission Expires: 02/06/12

OFFICIAL SEAL
CRYSTAL J DAVIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/06/12