**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>**Objection Deadline: June 18, 2009 at 4:00 p.m.**<br>**Hearing Date: June 25, 2009 at 10:00 a.m.** |

**APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY ERNST AND YOUNG LLP TO PROVIDE (I) VALUATION AND BUSINESS MODELING SERVICES AND (II) MARKET SURVEY SERVICES TO THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO MAY 31, 2009**

Tribune Company ("Tribune"), on behalf of itself and its affiliates that have commenced the above-captioned chapter 11 cases (collectively, and as identified in footnote 1 below, the "Debtors") hereby applies to the Court for the entry of an order authorizing them to retain and employ Ernst & Young ("E&Y") to provide (i) valuation and business modeling

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

services, and (ii) market survey services to the Debtors, pursuant to section 327(a) of the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), nunc pro tunc to May 31, 2009. In support of this Application, the Debtors (i) submit the Affidavit of Matthew Howley, a partner of E&Y (the "Howley Affidavit"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in these cases. On December 18, 2008, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in these chapter 11 cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code.

## RELIEF REQUESTED

5. The Debtors desire to retain and employ E&Y to provide certain valuation and business modeling services (the "Valuation and Business Modeling Services"), and market survey services (the "Market Survey Services," collectively with the Valuation and Business Modeling Services, the "Services") to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to May 31, 2009.

6. The Services are to be performed pursuant to the terms and conditions set forth in the valuation and business modeling services agreement (the "Valuation Services Agreement") and related Statement of Work for Goodwill Impairment Testing (the "SOW"), both dated May 15, 2009, and the WPIX, Inc., and KTLA, Inc., market survey services agreements (the "Market Services Agreements") dated May 20, 2009, between the Debtors and E&Y (collectively, the "Engagement Letters,"[2] which are attached to the Howley Affidavit as Exhibits A1 (Valuation Services Agreement and related SOW) and A2 (Market Services Agreements)).

7. Specifically, the Valuation Services Agreement and the SOW provide that E&Y will provide certain valuation services to assist the Company in testing for the impairment of goodwill and other indefinite lived intangible assets recorded in Tribune's consolidated financial statements (the "Assets") in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 142 ("SFAS 142"), and to test for the recoverability of certain long-lived assets of the Company in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 144 ("SFAS 144"). E&Y will provide the Debtors with certain market survey services, including providing broadcasting

[2] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Engagement Letter.

marketing analyses according to the terms of the Market Services Agreements. A summary of the Services that may be provided is as follows:[3]

**Valuation Services:**

Pursuant to the Valuation Services Agreement, E&Y has agreed to provide certain valuation and business modeling services described in the Statement of Work for Goodwill Impairment Testing, included as part of Exhibit A1, including the following:

- Interviews with Tribune Company management concerning the nature and operations of the Newspapers, Television Stations ("Television"), Tribune Media Services and Cable reporting units (the "Reporting Units").
- Consideration of any business plans, future performance estimates or budget for the Reporting Units.
- Analysis of applicable economic, industry, and competitive environments, including relevant historical and future estimated trends.
- Valuation analysis of the Reporting Units giving consideration to appropriate approaches to value, including: (i) Income Approach, (ii) Market Approach, and (iii) Cost Approach.
- Valuation analysis of each indefinite lived Masthead that resides within the Newspaper's Reporting Unit.
- Review of the Tribune Company valuation analysis of various FCC Licenses that reside within the Television Reporting Unit.
- Additional discussions with Tribune Company management regarding certain intangible assets of the subject Reporting Units.
- Valuation analysis of certain intangible assets of the subject Reporting Units giving consideration to appropriate

[3] This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

approaches to value, including: (i) Income Approach, (ii) Market Approach, and (iii) Cost Approach.

- Valuation analysis of certain identified intangible assets, including: (i) Subscriber Relationships, (ii) Advertiser Relationships, (iii) Commercial Printing and Distribution Agreements, (iv) Network Affiliation Agreements, and (v) Assembled Workforce (as part of Goodwill).

- Valuation analysis of personal property assets owned by the Reporting Units.

- Valuation analysis of real property assets owned by the Reporting Units.

- Preparation of a narrative report summarizing the methodologies employed in our analysis, the assumptions on which our analysis was based, and our recommendations of fair value.

**Market Services:**

- Pursuant to the KTLA Market Services Agreement, and as more fully set forth therein, E&Y has agreed to provide KTLA, Inc. ("KTLA"), with information regarding the Los Angeles broadcasting market, including, the size of the market, and KTLA's ranking within the market based on information provided by KTLA and other market participants. Submissions from market participants are not audited by E&Y, nor does E&Y attempt to verify the data in any way.

- Pursuant to the WPIX Market Services Agreement, and as more fully set forth therein, E&Y has agreed to provide WPIX, Inc. ("WPIX"), with information regarding the New York broadcasting market, including, the size of the market, and WPIX's ranking within the market based on information provided by WPIX and other market participants. Submissions from market participants are not audited by E&Y LLP, nor does E&Y attempt to verify the data in any way.

8. E&Y has previously been identified by the Debtors as an ordinary course professional in these cases for purposes of performing the Market Survey Services. See Supplemental List of Ordinary Course Professional filed with this Court on March 19, 2009 [Docket No. 544] (the "Supplemental OCP List").[4] Given that the Debtors are now seeking to retain E&Y to perform the Valuation and Business Modeling Services, and to avoid any doubt as to the status of E&Y's services in these cases, the Debtors hereby seek this Court's authority to have the Market Survey Services and related expenses which were provided by E&Y from the Petition Date through May 31, 2009 in these cases to be authorized under the Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business [Docket No. 227] (the "OCP Order") and to compensate E&Y for such Market Survey Services accordingly. The Debtors further seek the authority of this Court to deem the Howley Affidavit a properly filed affidavit under the OCP Order with regard to the Market Surveying Services through May 31, 2009.

9. For E&Y's performance of the Marketing Survey Services going forward, the Debtors further request that the order approving this Application also authorize E&Y to perform and be compensated for the Market Survey Services consistent with the terms of the Market Services Agreements under section 327(a) of the Bankruptcy Code.

10. The Debtors anticipate that E&Y will perform the Market Survey Services on a going forward basis and that the projected quarterly fees in connection with such services will be approximately $4,275. The Debtors presently anticipate that E&Y will perform the Valuation and Business Modeling Services over an approximately three-month period. The

4 Due to a clerical error, the services performed by E&Y were described on the Supplemental OCP List as "Outside Auditors for Foreign Correspondents" rather than the Market Survey Services. The Debtors and E&Y have verified that the Market Survey Services were the only postpetition services being provided by E&Y prior to the filing of this Application.

Debtors project that E&Y's fees in connection with the Valuation and Business Modeling Services will be approximately $150,000 per month. The projected amounts of E&Y's fees as described in this paragraph is provided solely as an estimate and is not intended to be construed as a cap on E&Y's fees, nor are the Debtors requesting a cap on E&Y's fees. Moreover, the projected amounts of E&Y's fees and the timeframes described in this paragraph are subject to change depending upon unforeseen events or delays in connection with this engagement, and E&Y has not agreed to these projected amounts or timeframes given the possibility of such unforeseen events or delays.

11. Notwithstanding any language or provisions in the Market Services Agreements relating to limitations of liability or indemnification, specifically, sections IV and V of Exhibit A to the Market Services Agreements, E&Y has agreed to strike sections IV and V of Exhibit A to the Market Services Agreements. The form of proposed order submitted with this Application provides that such provisions shall be of no force and effect.

**E&Y'S EXPERIENCE AND QUALIFICATIONS**

12. The Debtors' management has determined that the Debtors require the above-listed services in order to meet the requirements of SFAS 142 and SFAS 144 for fiscal year 2008. E&Y has a wealth of knowledge and experience in providing independent valuation and actuarial advising services in accordance with SFAS 142 and SFAS 144 and has provided the Company with similar valuation services in the past. E&Y is similarly experienced in providing market surveying services to companies similar to the Debtors. E&Y also has experience in providing independent valuation and actuarial advising services in restructurings and reorganizations and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Based

on that experience, as well as the Debtors' evaluations of E&Y, the Debtors believe that E&Y is well qualified to perform the Services.

13. The Services do not duplicate those provided to the Debtors by any of the Debtors' other professionals. The Debtors will monitor E&Y's services to ensure that all parties make every reasonable effort to avoid any duplication that might arise between the services provided by E&Y and the services provided by any other professionals employed by the Debtors.

14. Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letters, E&Y intends to charge the Debtors for the Services rendered in these Chapter 11 cases based upon the fee provisions and hourly rates set forth in the Engagement Letters.[5] When applicable, E&Y's hourly rates are revised periodically in the ordinary course of E&Y's business. E&Y shall advise the Debtors of its new rates once they are established if a rate change is effective during the course of the engagement. In addition to the hourly rates, as set forth in the Engagement Letters, the Debtors shall reimburse E&Y for its direct expenses incurred in connection with E&Y's performance of the Services which shall include reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, telephone, facsimile, overnight mail, messenger services and other expenses specifically relating to the applicable Services.

15. The Debtors or E&Y may terminate the Engagement Letters at any time, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or liquidation of the Debtors' assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise. Upon any such termination of the Engagement Letters, the Debtors will remain obligated to pay all accrued fees and expenses as of the effective date of

---

[5] E&Y's hourly rates as represented in the SOW are: Executive Director/Principal/Partner, $525; Senior Manager, $475; Manager $375; Senior $275; and Staff $175.

such termination. All of E&Y's fees and expenses in these cases (except for the Market Survey Services performed through May 31, 2009, which fees and expenses shall compensated in accordance with the OCP Order) will be subject to approval of the Court upon proper application by E&Y in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee (the "U.S. Trustee"), any applicable fee and expenses guidelines and/or orders of the Court, and any other applicable requirements or guidelines governing interim and final fee applications in the Debtors chapter 11 cases.

16. E&Y's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters. A summary of the terms and conditions are provided in the Howley Affidavit and incorporated herein by reference.[6]

## LEGAL AUTHORITY

17. The Debtors seek to retain E&Y pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

---

6 To the extent that the Howley Affidavit and the Engagement Letters are inconsistent the terms of the Engagement Letters shall control.

18. To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, E&Y has no connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or in the Howley Affidavit. In particular:

(a) E&Y is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

(b) While the Debtors owe E&Y approximately $2,656.52 for services rendered prior to the Petition Date, E&Y has agreed to waive its right to such prepetition fees upon approval of this Application.

(c) From time to time, E&Y has provided services, and likely will continue to provide services, to certain parties in interest in these chapter 11 cases in matters unrelated to the Debtors' chapter 11 cases. As described in the Howley Affidavit, E&Y has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any parties in interest listed in the Howley Affidavit.

19. To the best of the Debtors' knowledge, information and belief, based upon its review of the Howley Affidavit, E&Y neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that E&Y is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

20. For all of the reasons previously stated, the Debtors submit that the employment of E&Y would be in the best interests of the Debtors and their respective estates.

The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Howley Affidavit.

**NOTICE**

21. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; and (v) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

22. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto (i) authorizing the Debtors to retain and employ E&Y to provide (a) valuation and business modeling services, and (b) market survey services to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms and conditions described herein and in the Engagement Letters, and (ii) granting such other and further relief as the Court may deem proper.

Dated: June 5, 2009

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)

Brian Litman
Vice President/Corporate Controller