# EXHIBIT A

*Affidavit of Matthew Howley*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, et al.,[1] | ) | Case No. 08-13141 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### AFFIDAVIT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(A) IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP IN CONNECTION WITH VALUATION AND BUSINESS MODELING, AND MARKET SURVEY SERVICES FOR THE DEBTORS AND DEBTORS IN POSSESSION NUNC PRO TUNC TO MAY 31, 2009

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), Matthew Howley, being duly sworn, deposes and says:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (1355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLO (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); I lean & Crown Advertising, Inc. (9808); 14omeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIALI Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc, (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMI S 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc, (1629); Tribune Direct Marketing, Inc.. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. ( 1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); VuluMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1.      I am a principal of Ernst & Young LLP ("E&Y LLP"). I provide this Affidavit on behalf of E&Y LLP in support of the Application (the "Application") of Tribune Company and its above-captioned debtor affiliates (collectively, the "Debtors") to retain E&Y LLP to provide valuation and business modeling services, and market survey services, *nunc pro tunc* to May 31, 2009, pursuant to the terms and conditions set forth in the valuation and business modeling services agreement (the "Valuation Services Agreement") and related Statement of Work for Goodwill Impairment Testing (the "SOW"), and the WPIX, Inc., and KTLA, Inc., market survey services agreements (the "Market Services Agreements") between the Debtors and E&Y LLP (collectively, the "Engagement Letters," attached hereto as Exhibits A1 (Valuation Services Agreement and related SOW) and A2 (Market Services Agreements). Unless otherwise defined, all capitalized terms used herein shall have the meanings given to them in the Application.

2.      The facts set forth in my affidavit are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other employees of E&Y LLP under my supervision and direction. The procedures pursuant to which E&Y LLP determined whether there were any connections between E&Y LLP and interested parties in these cases is described below. The results of that investigation are set forth herein and in Exhibit B appended hereto.

3.      As set forth in further detail in the Engagement Letters, E&Y LLP has agreed to provide certain valuation and business modeling services, and market survey services (the "Services") to the Debtors in connection with these Chapter 11 cases upon approval of the Court, a summary description of which Services is set forth below and fully described in the Engagement Letters:[2]

---

[2] To the extent that this Affidavit and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

**Valuation Services:**

Pursuant to the Valuation Services Agreement, E&Y LLP has agreed to provide certain valuation and business modeling services described in the Statement of Work for Goodwill Impairment Testing, included as part of Exhibit A1, including the following:

- Interviews with Tribune Company management concerning the nature and operations of the Newspapers, Television Stations ("Television"), Tribune Media Services and Cable reporting units (the "Reporting Units").

- Consideration of any business plans, future performance estimates or budget for the Reporting Units.

- Analysis of applicable economic, industry, and competitive environments, including relevant historical and future estimated trends.

- Valuation analysis of the Reporting Units giving consideration to appropriate approaches to value, including: (i) Income Approach, (ii) Market Approach, and (iii) Cost Approach.

- Valuation analysis of each indefinite lived Masthead that resides within the Newspaper's Reporting Unit.

- Review of the Tribune Company valuation analysis of various FCC Licenses that reside within the Television Reporting Unit.

- Additional discussions with Tribune Company management regarding certain intangible assets of the subject Reporting Units.

- Valuation analysis of certain intangible assets of the subject Reporting Units giving consideration to appropriate approaches to value, including: (i) Income Approach, (ii) Market Approach, and (iii) Cost Approach.

- Valuation analysis of certain identified intangible assets, including: (i) Subscriber Relationships, (ii) Advertiser Relationships, (iii) Commercial Printing and Distribution Agreements, (iv) Network Affiliation Agreements, and (v) Assembled Workforce (as part of Goodwill).

- Valuation analysis of personal property assets owned by the Reporting Units.

- Valuation analysis of real property assets owned by the Reporting Units.

- Preparation of a narrative report summarizing the methodologies employed in our analysis, the assumptions on which our analysis was based, and our recommendations of fair value.

**Market Services:**

Pursuant to the KTLA Market Services Agreement, and as more fully set forth therein, E&Y LLP has agreed to provide KTLA, Inc. ("KTLA"), with information regarding the Los Angeles broadcasting market, including, the size of the market, and KTLA's ranking within the market based on information provided by KTLA and other market participants. Submissions from market participants are not audited by E&Y LLP, nor does E&Y LLP attempt to verify the data in any way.

Pursuant to the WPIX Market Services Agreement, and as more fully set forth therein, E&Y LLP has agreed to provide WPIX, Inc. ("WPIX"), with information regarding the New York broadcasting market, including, the size of the market, and WPIX's ranking within the market based on information provided by WPIX and other market participants. Submissions from market participants are not audited by E&Y LLP, nor does E&Y LLP attempt to verify the data in any way.

4.    Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letters, E&Y LLP intends to charge the Debtors for the Services rendered in these Chapter 11 cases based upon the fee provisions and hourly rates set forth in the Engagement Letters.  When applicable, E&Y LLP's hourly rates are revised periodically in the ordinary course of E&Y LLP's business. We shall advise the Debtors of our new rates once they are established if a rate change is effective during the course of this engagement.  In addition to the hourly rates set forth in the annexed Engagement Letters, the Debtors shall reimburse E&Y LLP for any direct expenses incurred in connection with E&Y LLP's retention in these cases and the performance of the Services set forth in the Engagement Letters.  E&Y LLP's direct expenses

shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses specifically related to this engagement.

5.    The Debtors or E&Y LLP may terminate the Engagement Letters at any time, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or liquidation of the Debtors' assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. Upon any such termination of the Engagement Letters, the Debtors will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.

6.    Copies of the Engagement Letters are submitted with this Affidavit for approval. E&Y LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters. Included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Client or its subsidiaries or of Ernst & Young) shall be brought in the Bankruptcy Court or the applicable District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures

> set forth in the Exhibit B to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Client, Ernst & Young and any all successors and assigns thereof.

7.    The Valuation Services Agreement annexed hereto as part of Exhibit A1 also includes language substantially similar to the following:

> In addition, if the Company requests E&Y, or if E&Y is required by government regulation, subpoena or other legal process, to produce documents or personnel as witnesses with respect to the Services or this Agreement, the Company shall, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y at its standard billing rates for its professional time and expenses, as well as reasonable attorneys' fees and expenses, incurred in responding to such requests.

8.    The Valuation Services Agreement also includes limitation of liability language substantially similar to the following:

> A. E&Y shall be solely responsible for the performance of the Services and all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or in part, by E&Y, any affiliate of E&Y, any other E&Y Entity, or any subcontractor or personnel of any E&Y Entity. The Company, its affiliates, and any other person or entity for or in respect of which any of the Services are provided shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, principals, agents, representatives, or employees of E&Y or any other E&Y Entity (or of their respective successors or permitted assigns) or any of the assets of any thereof with respect to the Services or otherwise under this Agreement.

> B. The Company shall bring any claim relating to the Services or otherwise under this Agreement within one year after the date on which the Company became aware, or ought reasonably to have become aware, of the facts giving rise to any alleged liability of E&Y and, in any event, no later than two years after (i) the completion of the Services or (ii) the earlier termination of this Agreement for any reason.

9.    In addition, the Market Services Agreements annexed hereto as Exhibit A2 include limitation of liability language substantially similar to the following:

A. E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their respective affiliates (collectively, the "EY Entities," and any of them, an "EY Entity"), or any subcontractor or personnel of any EY Entity. The Company and its affiliates shall have no recourse, and shall bring no claim, against any EY Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any EY Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

B. The aggregate liability of E&Y and its subcontractors to the Company, its affiliates, any other person or entity for or in respect of which any of the Services are provided, and their respective successors and permitted assigns, in connection with the performance of the Services or otherwise under this Agreement, shall be limited to the fees actually paid to E&Y for the Services with respect to which the liability is alleged to have arisen, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise; provided, however, that this limitation shall not apply to the extent prohibited by applicable law or regulation (including, for these purposes, the rules and interpretations of the AICPA and the U.S. Securities and Exchange Commission) provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of a party's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

C. E&Y will not be liable to the Company (or to any affiliate thereof or any other person or entity for or in respect of which any of the Services are provided), for any consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill) in connection with the performance of the Services or otherwise under this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if E&Y is advised of the likelihood of such damages; provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

D. The Company shall bring any claim relating to the Services or this Agreement within one year after the date on which the Company became aware, or ought reasonably to have become aware, of the facts giving rise to any alleged liability of E&Y and, in any event, no later than two years after (1) the completion of the Services or (2) the earlier termination of this Agreement for any reason.

10.     Finally, the Market Services Agreements include Indemnification language substantially similar to the following:

> To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless the EY Entities and their respective assignees, subcontractors, members, shareholders, directors, officers, managers, partners, employees, agents and consultants (collectively, "Indemnitees"), from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of the disclosure of any Report or any portion, abstract or summary thereof (other than any contents of the Report relating to any tax advice, including the tax treatment and tax structure of any transaction) by, through or at the request of the Company or the use or reliance on any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by any of the Indemnitees in connection with any Claims provided, however, that the foregoing indemnity shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

11.     In connection with E&Y LLP's proposed retention by the Debtors, E&Y LLP has requested and obtained from counsel to the Debtors or the record in these cases, the names of the following entities:

(a)     Debtors;
(b)     Debtors' Attorneys (general counsel and special bankruptcy counsel);
(c)     Debtor's Other Professionals retained in connection with the chapter 11 proceeding;
(d)     Debtors' Affiliates;

(e)   Debtors' Affiliates Attorneys;

(f)   Debtors' Affiliates Other Professionals retained in connection with the Chapter 11 proceedings;

(g)   Debtors' Officers;

(h)   Debtors' Officers Attorneys retained in connection with the Chapter 11 proceeding

(i)   Debtors' Officers Other Business Affiliations

(j)   Debtors' Directors

(k)   Debtors' Directors' Attorneys retained in connection with the Chapter 11 proceeding;

(l)   Debtors' Directors' Other Business Affiliations

(m)   Debtors' Major Shareholders (5% or more);

(n)   Debtors' Major Shareholders' Attorneys retained in connection with the Chapter 11 proceeding;

(o)   All Secured Lenders, including DIP lenders;

(p)   All Secured Lenders' Attorneys retained in connection with the Chapter 11 proceeding;

(q)   All Substantial Unsecured Bondholders or Lenders;

(r)   All Substantial Unsecured Bondholders' or Lenders' Attorneys retained in connection with the Chapter 11 proceeding;

(s)   All Indenture Trustees;

(t)   All Indenture Trustees' Attorneys retained in connection with the Chapter 11 proceeding;

(u)   Official Statutory Committees Members (All Committees);

(v)   Official Statutory Committees' Attorneys (for each Official Committee)

(w)   Official Statutory Committees' Other Professionals retained by each Official  Committee;

(x)   Official Statutory Committee Members' Attorneys retained in connection with the Chapter 11 proceeding;

(y)   Thirty Largest Unsecured Creditors (as of the date of filing);

(z)   Thirty Largest Unsecured Creditors' Attorneys retained in connection with the Chapter 11 proceeding;

(aa)   Parties to the Debtors' Significant Executory Contracts and Leases;

(ab)   Parties to the Debtors' Significant Executory Contracts and Leases Attorneys retained in connection with the Chapter 11 proceeding;

(ac)   Other Significant Parties-in-Interest including parties in material litigation against the Debtors; and/or parties to potential significant transactions with the Debtors; and

(ad)   Other Significant Parties-in-Interest's Attorneys retained in connection with the Chapter 11 proceeding.

The identities of these interested parties are set forth on Exhibit B to this Affidavit.

12.    E&Y LLP has not received from counsel to the Debtors, or does not know of, any

persons or entities that would fall into categories d, e, f, h, k, l, n, o, p, t, x, z, and ab set forth

above. As to those persons or entities identified in the remaining categories set forth above, E&Y LLP searched or caused to be searched certain databases to determine whether E&Y LLP has provided in the recent past or is currently providing services to the parties-in-interest listed in Exhibit B attached hereto. To the extent that E&Y LLP's research of relationships with parties-in-interest in these cases indicated that E&Y LLP has in the recent past, or currently has, a client relationship with such parties-in-interest in matters unrelated to these chapter 11 cases, E&Y LLP has so indicated in the attached Exhibit B to the Affidavit.

13.    E&Y LLP may perform services for its clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status. The disclosures set forth herein do not include specific identification of such services. If such clients of E&Y LLP are potential parties in interest in these cases, Exhibit B hereto indicates that they are also clients of E&Y LLP. Should additional significant relationships with parties-in-interest become known to E&Y LLP, a supplemental affidavit will be filed by E&Y LLP with the Court.

14.    The Ernst & Young global network encompasses independent professional services practices conducted by separate legal entities throughout the world. Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The member firms of EYGL have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

15.    On November 30, 2004, Ernst & Young U.S. LLP (an affiliate of E&Y LLP) transferred all of its equity ownership in Ernst & Young Corporate Finance LLC ("EYCF") to Giuliani Partners LLC (the "Transaction"). As a result, EYCF became a subsidiary of Giuliani

Partners LLC ("GP") and changed its name to Giuliani Capital Advisors LLC ("GCA"). As a consequence of the Transaction, Ernst & Young U.S. LLP no longer has any direct or indirect ownership interest in EYCF, nor in GCA. Given the absence of an ownership relationship, E&Y LLP believes that it is not necessary, in performing connections checks for work performed by E&Y LLP on and after December 1, 2004, to review connections that either EYCF or GCA may have or have had, nor to search either of those entities' databases for like information, and E&Y LLP has in fact not undertaken such research.

16.     As part of its practice, E&Y LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties in interest in these cases. E&Y LLP will have no relationship with any such entity, attorney or financial advisor that would be materially adverse to the Debtors. The following professionals whom E&Y LLP believes to be closely associated with the Debtors' chapter 11 cases have provided in the past and/or are currently providing services to E&Y LLP: Sidley Austin LLP, Reed Smith LLP, Jenner & Block LLP, Morgan, Lewis & Bockius LLP, McDermott Will & Emery LLP, Paul Hastings Janofsky & Walker LLP, Seyfarth Shaw LLP, Alvarez & Marsal North America LLC, Deloitte & Touche LLP, EPIQ Bankruptcy Solutions, LLC, Navigant Consulting, PricewaterhouseCoopers LLP, Davis Polk & Wardwell, AlixPartners LLP, Chadbourne & Park LLP, and FTI Consulting.

17.     E&Y LLP is currently a party or participant in certain litigation matters involving parties-in-interest in these cases. Case information and the parties-in-interest involved in these matters are provided in Exhibit C to this Affidavit.

18.     E&Y LLP has thousands of professional employees. It is possible that certain employees of E&Y LLP may have business associations with parties in interest in these cases or

hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.

19.      To the best of my knowledge, information and belief, formed after reasonable inquiry, none of the services rendered by E&Y LLP to the entities set forth in Exhibit B hereto have been in connection with the Debtors or these chapter 11 cases.  E&Y LLP believes that these relationships will not impair E&Y LLP's ability to objectively perform professional services on behalf of the Debtors.  E&Y LLP will not accept any engagement that would require E&Y LLP to represent an interest materially adverse to the Debtors.

20.      To the best of my knowledge, information and belief, neither the undersigned nor the E&Y LLP professionals expected to assist the Debtors in these matters are connected to the Judge, U.S. Trustee or Assistant U.S. Trustee assigned to this matter.

21.      Despite the efforts described above to identify and disclose connections with parties-in-interest in these cases, because the Debtors are a large enterprise with numerous creditors and other relationships, E&Y LLP is unable to state with certainty that every client representation or other connection of E&Y LLP with parties-in-interest in these cases has been disclosed herein.  If E&Y LLP discovers additional information that requires disclosure, E&Y LLP will file supplemental disclosures with the Court.

22.      Barclays Bank PLC, Citibank, N.A., JP Morgan Chase Bank, N.A., Royal Bank of Scotland, Wells Fargo Bank, N.A., Wachovia Bank N.A., New York Life Insurance Company, Metropolitan Life Insurance Company, and Prudential Insurance Company of America which are parties-in-interest in these cases, are lenders to or participate in financing arrangements with E&Y LLP.

23.     Fidelity & Deposit Company of Maryland is a surety bond provider on behalf of E&Y LLP.

24.     E&Y LLP has in the past and currently provides tax services to an entity, not a party-in-interest in these cases, in which one of the Debtors' directors has an equity interest and may have a controlling interest.

25.     To the best of my knowledge, information and belief formed after reasonable inquiry, E&Y LLP does not hold nor represent any interest materially adverse to the Debtors in the matters for which E&Y LLP is proposed to be retained.  The proposed employment of E&Y LLP is not prohibited by or improper under Bankruptcy Rule 5002.  Accordingly, I believe that E&Y LLP is eligible for retention by the Debtors under Title 11 of the United States Code (the "Bankruptcy Code").

26.     To the best of my knowledge, information and belief formed after reasonable inquiry, and as set forth herein, E&Y LLP is a "disinterested person" as that term is defined in section 101(14) of title 11 of the Bankruptcy Code in that E&Y LLP:

> (a) is not a creditor, equity security holder or an insider of the Debtors;

> (b) is not an was not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtors; and

> (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

27.    The foregoing representation is based on our understanding that as a prepetition services provider to for the Debtors, E&Y LLP was not an "employee" of the Debtors as that term is used in the Bankruptcy Code.

28.    To the best of my knowledge, information and belief, prior to the date that the Debtors commenced the above-captioned cases (the "Petition Date"), E&Y LLP performed certain professional services for the Debtors, including valuation and business modeling services, and market survey services.  At the Debtors' request following the Petition Date and prior to Court approval of E&Y LLP's engagement in these cases, E&Y LLP has provided and may continue to provide in its sole discretion certain market survey services to a group of television stations which include two of the Debtors (KTLA and WPIX).  At the Debtors' request following the Petition Date and prior to Court approval of E&Y LLP's engagement in these cases, E&Y LLP may also provide in its sole discretion, certain of the other Services described in the Engagement Letters.  Thus, E&Y LLP requests that its retention pursuant to the Engagement Letters be authorized *nunc pro tunc* to May 31, 2009.

29.    Following the Petition Date, E&Y LLP provided and was paid $1,143.48 for the postpetition market survey services described above.  Upon approval of E&Y LLP's retention in these cases, E&Y LLP will credit to the Debtors such $1,143.48 towards E&Y LLP postpetition services in these cases, which credit will be applied, subject to Court approval.

30.    Prior to and following the Petition Date, E&Y LLP has performed for the Debtors or their affiliates the services described in paragraphs 26 and 27 above.  As of May 28, 2009, E&Y LLP was owed $6,931.52 by the Debtors in respect of services provided by E&Y LLP ($2,656.52 for prepetition services, and $4,275.00 for postpetition services).  Upon approval of

E&Y LLP's retention in these cases, E&Y LLP shall waive its right to receive any fees incurred on the Debtors' behalf prior to the Petition Date.

31.     Except as otherwise set forth herein, E&Y LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person.

[Remainder of page intentionally left blank.]

32.    E&Y LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

Matthew Howley

Dated: June ⧸, 2009

Sworn to and subscribed before me this ⧸st day of June, 2009.

Notary Public

My Commission Expires: June 8, 2010

OFFICIAL SEAL
WILMA M. BLAGAICH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-8-2010

# EXHIBIT A1 --
## Valuation Services Agreement and SOW



Ernst & Young LLP
233 South Wacker Drive
Chicago, Illinois
60606

Tel: (312) 879-2000
www.ey.com

May 15, 2009

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention: Mr Brian Litman - Vice President and Controller

Dear Mr. Brian Litman:

Thank you for choosing Ernst & Young LLP ("we" or "E&Y") to perform valuation and business modeling services requested by Tribune Company (the "Client" or "Company"). This letter, together with the attached Exhibits and all Statements of Work issued hereunder, constitutes the agreement ("Agreement") between the Client and E&Y, for the provision of valuation and business modeling services subsequent to the Company filing a petition under Chapter 11 of the United States Bankruptcy Code ("Chapter 11") on December 8, 2008 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

We have agreed to provide such services contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement.

This Agreement is effective as of May 15, 2009.

**Scope of Services**

Subject to the provisions of this Agreement, including the Dispute Resolution Procedures, which are set forth in Exhibit B hereto, we will provide to the Client the valuation and business modeling services (the "Services"), which may be modified from time to time by our mutual written agreement and approval by the Bankruptcy Court.

For each project, the Client and E&Y shall enter into a Statement of Work that describes the specific Services to be performed for a project and the applicable fees for such project, subject to the approval of the Bankruptcy Court. The Statement of Work will be executed by the parties, will be subject to the terms and conditions of this Agreement and will be deemed incorporated herein and shall be contingent upon the Bankruptcy Court approving E&Y's retention in accordance with the terms and conditions that are set forth in this Agreement and the applicable Statement of Work. To the extent that a Statement of Work conflicts with the terms provided herein, the separate Statement of Work will be governed by its own terms, contingent upon the Bankruptcy Court's approval.



Tribune Company                                                                    May 15, 2009
Attn: Mr. Brian Litman                                                             Page 2

The Services are advisory in nature. E&Y will perform the Services in accordance with applicable standards established by the American Institute of Certified Public Accountants ("AICPA"). The Services may also be subject to the requirements of the Principles of Appraisal Practice and Code of Ethics of and the Business Valuation Standards of the American Society of Appraisers ("ASA"); the Code of Professional Ethics of the Appraisal Institute; the Code of Ethics and Standards of Professional Conduct of the CFA Institute; and the Uniform Standards of Professional Appraisal Practice ("USPAP") as set forth by the Appraisal Standards Board ("ASB") of the Appraisal Foundation, and we intend to conform to these requirements when applicable.

The Services and the information, records, data, advice or recommendations contained in any reports, models ("Model" or "Models", as hereinafter defined in this Agreement or any future Statement of Work), materials, presentations or other communications, written or otherwise, in draft or final form, provided by E&Y (our "Report" or collectively, "Reports") are intended solely for the information and use of the Company's management. The Company may not rely on any draft Report or Tax Report. Except where compelled by legal process (of which the Company shall promptly inform E&Y and tender to E&Y, if E&Y so elects, the defense), the Company shall not disclose, orally or in writing, any Reports or any portion, abstract or summary thereof, or make any reference to E&Y in connection therewith, directly or indirectly, to any third party (excluding the Company's legal advisors who need to know the contents of the Reports in order to evaluate a subject transaction for the Company and who have agreed to be bound by the terms and conditions of this Agreement relating to the restrictions on use and distribution) without obtaining (a) the prior written consent of E&Y and (b) an executed letter substantially in the form of Exhibit C from such party. To the extent the Company is permitted to disclose any written Report as set forth herein, it shall disclose such Report only in the original, complete and unaltered form provided by E&Y, with all restrictive legends and other agreements intact. Under no circumstance will the Company include our firm name, or our Reports, in whole or in part, in any public filing or disclosure document, or allow E&Y to be described (directly or indirectly) or deemed to be an expert in or as a result of any of its filings.

All Reports to the extent they relate to tax matters, including tax advice, tax opinions, tax returns, communications and tax materials ("Tax Reports") are provided solely for the Company's information and internal use and may not be relied upon by anyone else (other than tax authorities who may rely on the information provided to them) for any purpose without E&Y's prior written consent. Notwithstanding any confidentiality obligations or other restrictions on disclosure contained in this Agreement, the Company (and its officers, directors, employees, agents and advisors) may disclose to any person or entity, without limitation, Tax Reports. If the Company discloses any Tax Reports to a third party (including an affiliate of the Company), the Company shall inform the third party that it cannot rely on any thereof for any purpose without E&Y's prior written consent.

We agree to provide such services contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions set forth in this Agreement.

**ERNST & YOUNG**

Tribune Company                                                                    May 15, 2009
Attn:  Mr. Brian Litman                                                            Page 3

**Fees and Expenses**

Fees for the Services shall be set forth in the Statement of Work pertaining to such Services.  Unless
specified otherwise in the applicable Statement of Work, fees for the Services will be billed based on
hours spent at agreed-upon hourly billing rates set forth in the applicable Statement of Work.

The Company shall reimburse E&Y for its direct expenses incurred in connection with the performance
of the Services which shall include reasonable and customary out-of-pocket expenses for items such as
travel, meals, accommodations, telephone, facsimile, overnight mail, messenger services and other
expenses specifically relating to the applicable Services. In addition, if the Company requests E&Y, or if
E&Y is required by government regulation, subpoena or other legal process, to produce documents or
personnel as witnesses with respect to the Services or this Agreement, the Company shall, so long as
E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y at its standard
billing rates for its professional time and expenses, as well as reasonable attorneys' fees and expenses,
incurred in responding to such requests.  E&Y may receive rebates in connection with certain purchases,
which are used to reduce charges that E&Y would otherwise pass on to its clients.

We will submit an itemized and detailed billing statement and we will request payment of our fees in
accordance with the United States Bankruptcy Code ("Bankruptcy Code"), the Federal Rules of
Bankruptcy Procedure ("Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for
the District of Delaware ("Local Rules") and any relevant administrative orders.  E&Y will submit its
invoices as the work progresses and payment of them will be made in accordance with the Bankruptcy
Code, the Bankruptcy Rules, the Local Rules and relevant orders of the Bankruptcy Court.

The Company shall also pay all applicable taxes, including VAT, incurred in connections with the
delivery of the Services or the Reports (except for taxes imposed on E&Y's income).

E&Y acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and
approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the
Bankruptcy Court approving the retention of E&Y and the U.S. Trustee Guidelines, (ii) any applicable fee
and expense guidelines and/or orders of the Bankruptcy Court and (iii) any other applicable requirements
or guidelines governing interim and final fee applications in the Company's Chapter 11 proceedings,
including in the U.S. Trustee Guidelines.

**Other Matters**

Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this
Agreement or the services provided hereunder (including any such matter involving any parent,
subsidiary, affiliate, successor in interest or agent of the Company or its subsidiaries or of E&Y) shall be
brought in the Bankruptcy Court or the applicable district court if such district court withdraws the
reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the
jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have
jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action
or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive

**≣Ⅱ ERNST & YOUNG**

Tribune Company                                                                May 15, 2009
Attn:  Mr. Brian Litman                                                        Page 4

trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the district court
upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or
controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to
submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in
accordance with the dispute resolution procedures set forth in Exhibit B to this Agreement. Judgment on
any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding
upon the Company, E&Y and any and all successors and assigns thereof.

This Agreement, including all Exhibits hereto and any Statements of Work executed hereunder,
constitutes the entire agreement between the parties with respect to the subject matter hereof and
supersedes all agreements and understandings between the parties with respect to the subject matter
hereof made prior to the date hereof. There are no representations, warranties, understandings or
agreements relating to the subject matter hereof which are not fully expressed in this Agreement. No
amendment, modification, waiver or discharge of this Agreement shall be valid unless in writing and
signed by an authorized representative of the party against whom such amendment, modification, waiver
or discharge is sought to be enforced, and, where required, Bankruptcy Court approval. Except as
expressly provided herein, this Agreement does not modify the terms or provisions of any engagement
letter or agreement for other professional services executed prior to the date of Company filing a Chapter
11 petition in the Bankruptcy Court.

By agreement to the provision of the Services, E&Y is not providing a guarantee to the Client that E&Y's
performance of those services pursuant to the terms and conditions set forth in the Agreement will
guarantee the Client's successful reorganization under Chapter 11.

The Company acknowledges that E&Y, its affiliates and other E&Y Entities may render professional
services to other clients in the Company's industry, including in connection with a proposed transaction
involving a target. The Company agrees that any such E&Y parties may render the Services, as well as
services to other such parties, as long as (a) no member of E&Y's Services team is part of any team
serving the other parties in connection with a transaction involving a target, and (b) the E&Y Services
team does not disclose to any other such team any confidential information relating to the Company in
either case (except as required by applicable law, regulation or professional obligation) without the
Company's prior written consent.

Where U.S. Securities and Exchange Commission audit independence restrictions apply to the
relationship between the Company and any E&Y Entity, the Company hereby represents and warrants to
E&Y, on and as of the date of this Agreement and on and as of the date of any Statement of Work
hereunder, that neither the Company nor any of its affiliates has agreed, orally or in writing, with any
other service provider to limit in any way the Company's ability to disclose to any person or entity the tax
treatment or tax structure of any transaction that is the subject of the Services. Any such agreement with
other service providers could impair the independence of any E&Y Entity providing services that require
independence. If the Company enters into such an agreement with any other service provider, E&Y shall
have no liability or responsibility whatsoever to the Company in respect of the impact that such an
agreement would have on any services (including the Services) by an E&Y Entity for the Company
otherwise.

**ᴈIJ ERNST & YOUNG**

Tribune Company                                                                    May 15, 2009
Attn: Mr. Brian Litman                                                                    Page 5

E&Y, in its sole professional judgment, reserves the right to refuse to perform any procedure or take any action that could be construed as making management decisions or performing management functions for the Company, including determining account codings and approving journal entries. E&Y will not perform management functions or make management decisions on behalf of the Company, although E&Y may otherwise provide advice and recommendations to assist management of the Company in performing its functions and making decisions.

The Company shall, among other responsibilities with respect to the Services, (i) make all management decisions and perform all management functions, including determining account codings and approving all proposed journal entries in connection with any Tax Services; (ii) assign a competent employee to oversee the Services and evaluate their adequacy and results; (iii) accept responsibility for the implementation of the results or recommendations contained in the Reports or otherwise in connection with the Services; and (iv) establish and maintain internal controls over related Company processes.

The performance of the Services and the parties' obligations in connection therewith are subject to the additional terms and conditions set forth in Exhibit A.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to the agreements made, and fully to be performed, therein by residents thereof.

* * * * * * * * *

 ERNST&YOUNG

Tribune Company                                                      May 15, 2009
Attn: Mr. Brian Litman                                                     Page 6

E&Y appreciates the opportunity to be of assistance to the Company.  If this Agreement accurately
reflects the terms on which the Company has agreed to engage E&Y, please sign the enclosed copy on
behalf of the Company and return it, to Matthew Howley at the address on the first page of this letter.  We
look forward to working with you on this engagement.

Very truly yours,

*Ernst & Young LLP*

Agreed and accepted:

Tribune Company

_____
Signature

BRIAN LITMAN
_____
Name (please print or type)

VICE PRESIDENT & CONTROLLER
_____
Title


**ERNST & YOUNG**

Tribune Company
Attn:  Mr. Brian Litman

**Exhibits and Attachments:**

| | |
|---|---|
| **Exhibit A:** | **Terms and Conditions** |
| **Exhibit B:** | **Dispute Resolution Procedures** |
| **Exhibit C:** | **Form of Access Letter** |

**EXHIBIT A**
**Terms and Conditions**

I.    Independent Contractor; Certain Services.

A.    E&Y will provide the Services to the Company as an independent contractor. Nothing contained in this Agreement shall create an employment or principal-agent relationship or joint venture between E&Y and the Company. Neither party shall have the right, power or authority to obligate or bind the other in any manner whatsoever. From time to time, non-CPA personnel and contractors to E&Y or other E&Y Entities may participate in the performance of the Services.

B.    E&Y will not, in connection with the performance of the Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit either the Company or potential buyers to engage in any transaction, or (iii) act as a negotiator of a transaction. E&Y will not render any opinion as to the fairness or advisability of any transaction.

C.    E&Y will not render an attestation or assurance report or opinion under this Agreement, nor will the Services constitute (i) an audit, review or examination of financial statements in accordance with generally accepted auditing standards, (ii) an examination of prospective financial statements in accordance with standards established by the AICPA or (iii) a review to detect fraud or illegal acts. The Services will not include preparation of Reports or Tax Report addressing the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act, nor will the Services include any procedures to test compliance with the laws or regulations of any jurisdiction. None of the Services or any Reports will constitute any legal opinion or advice.

II.    Unexpected Events.

If changes to the scope or timing of any Services are required because of a change in applicable law or professional requirements, or events beyond a party's responsible control (any of which, a "Change"), but not involving its fault or negligence, the parties agree to adjust the fees for, or the timing of, the Services appropriately and, if necessary, the Company will obtain Audit Committee and Bankruptcy Court approval of such adjustments. Each party shall be excused from default or delay in the performance of its obligations under this Agreement (other than payment obligations) to the extent caused by a Change.

III.    Information.

E&Y will assume no responsibility for, and will make no representation or warranty with respect to, the accuracy or completeness of information provided by or on behalf of the Company or a target. The Reports and Tax Report shall be based solely upon such data and information furnished by or on behalf of the Company or a target, on which E&Y may rely, notwithstanding any agreement to the contrary between the Company and a target. E&Y will not evaluate, nor will it have any responsibility to verify independently, the sufficiency of such data and information for the Company's purposes and E&Y makes no representation or warranty with respect to the sufficiency for the Company's purposes of any procedures performed by E&Y as part of the Services.

IV.    Limitations.

A.    E&Y shall be solely responsible for the performance of the Services and all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or in part, by E&Y, any affiliate of E&Y, any other E&Y Entity, or any subcontractor or personnel of any E&Y Entity. The Company, its affiliates, and any other person or entity for or in respect of which any of the Services are provided shall have no recourse, and

shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, principals, agents, representatives, or employees of E&Y or any other E&Y Entity (or of their respective successors or permitted assigns) or any of the assets of any thereof with respect to the Services or otherwise under this Agreement.

B.    The Company shall bring any claim relating to the Services or otherwise under this Agreement within one year after the date on which the Company became aware, or ought reasonably to have become aware, of the facts giving rise to any alleged liability of E&Y and, in any event, no later than two years after (i) the completion of the Services or (ii) the earlier termination of this Agreement for any reason.

V.    Technical Elements; Engagement Tools; Working Papers.

A.    To perform the Services, E&Y may use certain data, modules, components, designs, utilities, subsets, objects, program listings, tools, models, methodologies, programs, systems, analysis frameworks, leading practices, and specifications developed or used by E&Y or its licensors, or to which E&Y otherwise has rights, including enhancements and improvements developed in the course of performing the Services (collectively, "Technical Elements"). The Company shall have no rights in or to the Technical Elements, except with respect to Technical Elements owned by E&Y solely to the extent necessary to use the Reports as permitted by this Agreement. E&Y retains all right to use its knowledge, experience and know-how, including the Technical Elements, in providing services to other clients.

B.    To perform the Services, E&Y may (and may, subject to additional terms and conditions, including license agreements, permit authorized representatives of the Company to) utilize, certain software and collaborative tools, including PM Toolkit, QuickPlace®, or Ernst & Young eRoom (collectively, the "Engagement Tools"). The Company shall not, and shall not permit third parties to, copy or modify any Engagement Tools, nor shall it decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Engagement Tools.

THE ENGAGEMENT TOOLS ARE PROVIDED "AS IS," AND NONE OF E&Y OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY ENGAGEMENT TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY ENGAGEMENT TOOL OR TITLE THERETO, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, NON-INFRINGEMENT, OR ANY WARRANTY THAT THE OPERATION OF ANY ENGAGEMENT TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY HARDWARE OR SOFTWARE USED BY THE COMPANY. E&Y MAKES NO COMMITMENT TO SUPPORT, MAINTAIN OR UPGRADE ANY ENGAGEMENT TOOL. THE COMPANY ASSUMES SOLE RESPONSIBILITY FOR THE USE OF, AND RESULTS OBTAINED FROM, ANY ENGAGEMENT TOOL.

C.    Any use of Engagement Tools by or on behalf of the Company is not a substitute for any documentation or system of records created or maintained pursuant to law, including, without limitation, Internal Revenue Code Section 6001. The Company shall be solely responsible for maintaining separate copies of any documentation it inputs into any Engagement Tool.

D.    E&Y shall own all working papers prepared by it to document, in accordance with E&Y policy and professional requirements, performance of the Services. E&Y may retain, in confidence, copies of all Reports and Tax Report and other documents prepared by it.

VI.    Confidentiality.

A.    Except as otherwise provided in this Agreement, without the prior written consent of the other party, neither party shall disclose Confidential Information (as defined below) of the other received in connection with the performance of the Services. The recipient shall use the same degree of care that it uses to protect its own

confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the disclosing party. Neither party shall have any obligations under this Section VI(A) with respect to any information that (i) is, at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the recipient in violation of this Agreement, (ii) is subsequently learned from a third party that, to the knowledge of the recipient, is not under an obligation of confidentiality to the disclosing party, (iii) was known to the recipient at the time of disclosure, as can be demonstrated by contemporaneous written evidence, (iv) is generated independently by the recipient without reference to the Confidential Information of the disclosing party, as can be demonstrated by contemporaneous written evidence, or (v) is disclosed pursuant to applicable law, subpoena, other legal process or professional requirements, or in connection with the enforcement of the recipient's rights under this Agreement.

B.    For purposes of this Agreement, Confidential Information shall mean proprietary information relating to the business, operations, methodologies, technologies, personnel, vendors, financial condition or procedures of a party that is not generally known to the public and that, under all of the circumstances, ought reasonably to be treated as confidential and/or proprietary.

C.    To the extent that information obtained from the Company is protected health information pursuant to the Health Insurance Portability and Accountability Act (as amended from time to time, "HIPAA"), this Agreement shall be deemed to incorporate all terms that HIPAA requires to be included in a business associate contract relating to such information.

D.    Notwithstanding anything contained herein to the contrary, E&Y may disclose the Company's Confidential Information, including tax return information, to E&Y Entities for the purpose of rendering the Services and any other services heretofore or hereafter requested by the Company. Personnel working under E&Y's supervision are required to observe its policies concerning confidential client information, and E&Y employs security systems designed to protect against unauthorized access and use of confidential information.

E.    Notwithstanding anything contained herein to the contrary, E&Y may transmit information to the Company or its representatives by e-mail, or over the Internet, and any breach of confidentiality that occurs thereby shall not constitute a breach of E&Y's obligations under Section VI of this Agreement.

F.    The Company will not, and will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to E&Y directly or indirectly, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable or (ii) periodic reporting obligations under the Securities Laws. The Company will not contend that any provisions of the Securities Laws could invalidate any provision of this Agreement.

G.    E&Y may collect, use, transfer, store or otherwise process (collectively, "process") information obtained from the Company or in connection with the Services that pertains to specific individuals and can be linked to such individuals ("personal information"). E&Y's processing of personal information may occur in various jurisdictions in which E&Y and the E&Y Entities operate (which may be viewed by visiting www.ey.com) and is subject to the legal requirements of such jurisdictions. The Company warrants that it has processed the personal information it provides to E&Y in accordance with applicable legal requirements. E&Y warrants that it will process such information in accordance with applicable legal and professional requirements, including, where applicable, the European Union Safe Harbor program of the U.S. Department of Commerce, in which E&Y is a current participant. E&Y will also require any service provider that processes personal information on behalf of E&Y to adhere to such requirements.

VII.    Termination

This Agreement may be terminated at any time by the Company or EY, but in any event this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. The provisions of this Agreement relating

to use and distribution of Reports, "Fees and Expenses" and "Other Matters" and Section IV of this Exhibit A will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization under Chapter 11 of Title 11 of the United States Code, liquidation of the Company's assets under Chapter 7 of Title 11 of the United States Code, or otherwise.

VIII.    Payment.

The Company's obligation to pay E&Y's fees and expenses is not contingent upon the results of the Services or the consummation of any transaction.  If E&Y is required by government regulation, subpoena, or other legal process to produce documents or personnel as witnesses with respect to the Services or this Agreement, the Company shall, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as reasonable attorneys' fees and expenses, including the allocable cost of in-house counsel, incurred in responding to such requests.

IX.    Non-Solicitation of Personnel.

The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y, provided, that the Company shall not breach its obligation hereunder by generally advertising available positions or hiring E&Y personnel who either respond to such advertisements or who come to the Company on their own initiative without direct or indirect encouragement from the Company.

X.    Use of Names.

Except as expressly permitted by this Agreement, neither party shall use publicly the other party's name, trademark, service mark or logo in connection with the Services or any of the Reports without the prior written consent of such other party.  Notwithstanding anything contained herein to the contrary, after this Agreement has terminated for any reason, E&Y may disclose to present or prospective clients, or otherwise in its marketing materials, that it has performed the Services for the Company, and may use the Company's name and trademark solely for that purpose, in accordance with applicable professional obligations.  E&Y may use the Company's name, trademark, service mark and logo as reasonably necessary to perform the Services and in correspondence, including proposals, from E&Y to the Company.

XI.    Miscellaneous.

A.    This Agreement constitutes the entire agreement between the Company and E&Y, and merges all prior and contemporaneous communications, with respect to the Services and the other matters contemplated by this Agreement.  This Agreement may not be modified except in a writing signed by both parties and approved by the Bankruptcy Court, if required.  If any portion of this Agreement is held to be void, invalid or otherwise unenforceable, in whole or part, the other provisions shall remain in full force and effect.  This Agreement may be executed in counterparts, any one of which need not contain the signature of more than one party, but all of which, together, shall comprise one and the same agreement.

B.    None of a party's rights, obligations or claims under or with respect to the Services or this Agreement may be assigned, in whole or in part, by such party without the prior written consent of the other party, provided, that, subject to Bankruptcy Court approval, E&Y may assign any of its rights or obligations under this Agreement to, and may perform the Services together with, an affiliate of E&Y or any other E&Y Entity.  The provisions of this Agreement shall operate for the benefit of, and may be enforced by, any assignee or subcontractor that is providing any of the Services as permitted hereby.

C.      The Company represents and warrants to E&Y that the execution, delivery and performance of this Agreement have been duly authorized by all requisite corporate or other applicable entity action and the person signing this Agreement is expressly authorized to execute it on behalf of, and to bind, the Company.

XII.    Tax Services.

E&Y has no obligation to keep the Company apprised of any legal developments, including tax law developments, relating to the Services after they have been completed. The Company is responsible for all decisions on all tax accounting matters and procedures, internal controls and the calculation of its tax provision and the effective tax rate.

XIII.   Real Estate Services.

A.      All Reports will be based on facts as E&Y knows them, estimates, assumptions and other information developed from E&Y's research of the market, knowledge of the industry and meetings with the Company or its advisors during which E&Y is provided with certain information. The sources of information and basis of the estimates and assumptions will be stated in the Report. All direct and indirect information supplied by the Company, its agents and assigns concerning the engagement and the underlying properties will be assumed to be true, accurate and complete. Information identified as supplied or prepared by others will be believed to be reliable; however, E&Y will perform no procedures to evaluate the reliability or completeness of the information obtained.

B.      Any financial analyses to be contained in the Reports are not forecasts or projections as these terms are defined by the American Institute of Certified Public Accountants. Rather, they are used in the sense contemplated by the Uniform Standards of Professional Appraisal Practice ("USPAP"). As used in any analysis in this engagement and any Report that follows, terms such as "project," "projections," or "forecast" relate to broad and generally perceived expectations of future events or market conditions. All such estimates and assumptions are inherently subject to uncertainty and variation depending on the unfolding of future events, which cannot be accurately foreseen.

C.      E&Y's estimates will be based on general economic conditions as they exist on the date of the analysis and recommendation and will not include an estimate of the potential of any sudden or sharp rise or decline in general economic conditions. Events or transactions that may occur subsequent to the effective date of any Report will not be considered. Consequently, E&Y does not represent these estimates as results that will be achieved. Actual results achieved may vary materially from those presented. E&Y will not be responsible for updating or revising this Report for the effects of such subsequent events.

D.      No architectural or engineering study, soil or subsoil study, property survey, or environmental investigation will be made and no liability is assumed in connection with such matters. The scope of the Services will not include property appraisal in accordance with USPAP.

E.      The Reports may be subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

XIV.    Modeling Services.

A.      E&Y will not carry out any inquiry into, or review of, the underlying software within which the Model operates (e.g., Microsoft Excel). Accordingly, E&Y shall have no responsibility for the consequences of any inherent defect in any third party software programs.

B.      In the course of performing the Services, computer files (including versions of the Model) will be transferred between E&Y and the Client and it is the responsibility of all parties to protect themselves from the effects of viruses or similar problems that may be transmitted within those files. No responsibility is accepted by any party in respect of loss or damage arising from viruses contained in computer files issued by them to other

parties. E&Y is not responsible for performing tests to determine whether versions of the Model submitted for its review contain viruses or similar problems. E&Y accepts no responsibility to third parties for loss or damage arising from computer viruses or similar problems that may exist in computer files (including versions of the Model), which the Client may transfer to third parties.

C.    Circular logic is present in a spreadsheet when the inputs to a calculation depend directly on the results of that same calculation. In general, when a model employs circular logic, it is not possible to mathematically demonstrate the underlying calculation has a unique solution. This leads to uncertainty or instability in a Model's results. For this reason, E&Y strongly recommends that clients do not require the use of circular logic in the construction of a model. In those cases where the client does require E&Y to incorporate circular logic in the construction of a model, E&Y accepts no responsibility for any uncertainty or errors in model calculations and/or outputs that may arise as a result.

D.    A sensitivity is a variation to a model to assess possible outcomes when variables, which cannot be estimated with a reasonable degree of certainty, take alternative values. Where E&Y is required to review sensitivity cases, E&Y will be unable to commence its detailed review of these versions of the Model until the base case model has been finalized (that is, E&Y's review of the base case is complete, all amendments arising from E&Y's review findings have been processed and the Data Sheet is in its final form). Accordingly, the time available for E&Y's review of sensitivities and the effectiveness of that review may be affected by the timing, nature and extent of amendments to the base case model and Data Sheet.

E.    In some circumstances, a sensitivity is a variation to represent an alternative business option (for example, an alternative financing structure), rather than to assess the potential effects of uncertain estimates. This type of sensitivity may be referred to as a "scenario". E&Y's testing of sensitivities focuses on a comparison of each sensitivity to the base case and may be less effective in respect of scenario-type sensitivities, where there are significant differences to the base case.

**EXHIBIT B**
**Dispute Resolution Procedures**

**Mediation**

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any E&Y audit client. The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute.

The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed. Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

**Arbitration**

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control. The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director or substantial equity owner of any E&Y audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction. Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards. The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**EXHIBIT C**
**Form of Access Letter**

**[Letterhead of E&Y]**

**[Date]**

**[Addressee (e.g., lender or other third party seeking access to E&Y Report)]**

**Dear [Addressee]:**

Tribune Company (the "Client") has informed Ernst & Young LLP ("E&Y") that it wishes to disclose to **[party seeking access]** (the "Recipient") E&Y's **[report and date]** and supporting schedules and analyses dated _____ (the "Report(s)"), relating to valuation services provided by E&Y to Client. E&Y has not placed any limitations on the Client's ability to disclose any contents of the Report relating to the tax aspects or structure of the proposed transaction.

E&Y performed advisory services only for the Client. The services were not undertaken on behalf of, or to serve the needs of, the Recipient or any other third party. E&Y did not audit the subject company's financial statements, nor did it perform any procedures with respect to the subject company's financial information or otherwise for or relating to any period subsequent to the date(s) of the Report(s).

E&Y prepared the Report(s) solely for the Client. The Report(s) **address[es]** only the issues identified by the Client, and **[is/are]** based solely on information obtained by the procedures specified for E&Y by the Client or otherwise provided by or on behalf of the Client. The Report(s) **[is/are]** subject to many limitations and **[do/does]** not provide any form of assurance with respect to any of the information discussed or referred to therein. The Recipient understands and accepts the scope and limitations of the Report(s).

Except (1) where compelled by legal process (of which the Recipient will immediately notify E&Y and tender to E&Y, if it so elects, the defense thereof), (2) with respect to any contents of the Report relating to the tax treatment and tax structure of the proposed transaction (including any facts that may be relevant to understanding the proposed tax treatment of the proposed transaction), or (3) with E&Y's prior written consent, the Recipient will not circulate, quote, disclose or distribute any of the Report(s) or any information contained therein, or any summary or abstract thereof, or make any reference thereto, to anyone other than the Recipient's directors, officers, employees or legal advisors and who, in each case, need to know its contents in order to evaluate the proposed transaction for the Recipient, who have agreed to be bound by the terms and conditions of this agreement to the same extent as Recipient.

The Recipient further agrees that it will not, and will not permit others to, quote or refer to the Report, any portion, summary or abstract thereof, or to E&Y, in any document filed or distributed in connection with a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable. The Recipient will not contend that any provisions of Securities Laws could invalidate any provision of this agreement.

In further consideration of E&Y allowing the Recipient access to the Report(s) and the information contained therein, the Recipient agrees that:

1.    It does not acquire any rights against E&Y, and E&Y does not assume any duties or obligations to the Recipient or otherwise, as a result of, such access.

2.    It will not rely on the Report(s) and will make no claim that it has done so.

3.    It will make no claim against E&Y, its partners, employees or affiliates, or other members of the global Ernst & Young network (collectively, the "E&Y Parties") that relates in any way to the Report(s), any information contained therein, or the Recipient's access to the Report(s).

4.    To the fullest extent permitted by applicable law, it will indemnify, defend and hold harmless the E&Y Parties from and against any claim or expense, including reasonable attorneys' fees, suffered or incurred by any E&Y Party relating to any breach by the Recipient of any of its representations or agreements contained herein or the use or disclosure of the Report(s) or any portion thereof by anyone who received it directly or indirectly from or at the request of the Recipient.

Please confirm your agreement with the foregoing by signing and dating a copy of this letter and returning it to Matthew Howley.

Very truly yours,

Ernst & Young LLP


Accepted by:

**[Addressee]**


_____          _____
Signature                                                  Date


_____          _____
Name (please print or type)                        Title



Ernst & Young LLP
233 South Wacker Drive
Chicago, Illinois
60606

Tel: (312) 879–2000
www.ey.com

May 15, 2009

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention: Mr. Brian Litman - Vice President and Controller

**Statement of Work -**
**Goodwill Impairment Testing**

This Statement of Work ("SOW") is governed by and subject to the terms and conditions of our engagement letter (the "Agreement") dated May 15, 2009 between Tribune Company (the "Company") and Ernst & Young LLP ("E&Y" or "we"), which was executed in connection with the Company filing a Chapter 11 petition on December 8, 2008 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and describes certain services that E&Y will perform for the Company during the Company's Chapter 11 bankruptcy. Unless modified by this SOW, the terms and conditions of the Agreement continue to apply. Capitalized terms used, but not defined, in this SOW have the meanings set forth in the Agreement. This SOW shall be effective as of May 15, 2009.

**Engagement Team**

Matthew Howley (Principal) will lead the E&Y team in providing the Services (as defined below). If this individual ceases to provide services to the Company pursuant to the Agreement, E&Y will so advise the Company and, if that person is replaced, provide the Company with the name of that professional's replacement. Other staff and subject matter specialists and/or experts, not identified herein, may be utilized as required to conduct our work in an efficient manner.

**Objective and Purpose**

We understand that the Company has goodwill and certain indefinite lived intangible assets recorded in its financial statements (collectively, the "Assets"). As a result, the Company is required to periodically test the Assets for impairment in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 142 ("SFAS 142"), "Goodwill and Other Intangible Assets". We further understand that the company is required to test for recoverability of certain long-lived assets in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 144 ("SFAS 144"), "Accounting for Impairment or Disposal of Long-Lived Assets"         .

According to SFAS 142 and SFAS 144, the standard of value to be used for testing of impairment is fair value. According to the definition presented in SFAS 142 and SFAS 144, fair value is defined as:

> *The amount at which an asset (or liability) could be bought (or incurred) or sold (or settled) in a current transaction between willing parties, that is, other than in a forced or liquidation sale.*

**⊒ıﬀ ERNST & YOUNG**

Mr. Brian Litman - Vice President and Controller
Tribune Company

May 15, 2009
Page 2 of 6

### SFAS 142

SFAS 142 requires goodwill to be tested for impairment at the reporting unit level at least annually using a two-step impairment test. Step 1 of the test is a screen used to identify whether or not a goodwill impairment may exist. In Step 1, an entity compares the fair value of a reporting unit with its carrying amount. If a reporting unit's carrying amount exceeds its fair value, a goodwill impairment may exist. Step 2 of the test must then be performed to measure the amount of impairment, if any. In Step 2, an entity compares the implied fair value of goodwill with its carrying amount. An impairment loss is measured by the excess of the carrying amount of goodwill over its implied fair value. The implied fair value of goodwill should be determined in the same manner that goodwill is measured in a business combination under Statement of Financial Accounting Standards No. 141 ("SFAS 141"). That is, an entity must allocate the fair value of a reporting unit to the assets and liabilities of that unit (including any unrecognized intangible assets) as if the reporting unit had been acquired in a business combination and the fair value of the reporting unit was the price paid to acquire the reporting unit.

Accordingly, the purpose of our analysis under SFAS 142 is to assist Company management with its "Step 1" and "Step 2" impairment testing procedures for the following reporting units (the "Reporting Units") as of November 30, 2008 (the "Date of Valuation"):

- Newspapers
- Television Stations ("Television")
- Tribune Media Services
- Cable

In addition, we will assist Company management with its impairment testing of indefinite lived Mastheads residing in the Newspapers Reporting Unit, and a review of the Tribune Company valuation of various Federal Communications Commission ("FCC") Licenses residing in the Television Reporting Unit.

### SFAS 144

SFAS 144 requires a long-lived asset (or asset groups) to be tested for recoverability whenever events or changes in circumstances indicate that its carrying amount may not be recoverable.

According to SFAS 144, "an impairment loss shall be recognized only if the carrying amount of a long-lived asset (asset group) is not recoverable and exceeds its fair value". Testing for recoverability requires a comparison between the carrying amount of the long-lived asset (asset group) and the undiscounted cash flows expected to result from the use and eventual disposition of the asset (asset group). Once it is determined that the carrying value is not recoverable, an impairment loss is measured as the amount by which the carrying value amount of the long-lived asset (asset group) exceeds its fair value.

Accordingly, the purpose of our analysis under SFAS 144 is to assist Company management with its application of the recoverability test and its determination of fair value for the long-lived assets which fail this test as of the Date of Valuation.

**Ξⴘ ERNST & YOUNG**

Mr. Brian Litman - Vice President and Controller
Tribune Company

May 15, 2009
Page 3 of 6

**Scope of Services**

E&Y will perform the following Services, subject to Bankruptcy Court approval of our retention in accordance with the terms and conditions that are set forth in the Agreement (inclusive of this SOW):

*SFAS 142 – Step 1*

- Interviews with Company management concerning the nature and operations of the Reporting Units;
- Consideration of any business plans, future performance estimates or budget for the Reporting Units;
- Analysis of applicable economic, industry, and competitive environments, including relevant historical and future estimated trends;
- Valuation analysis of the Reporting Units giving consideration to appropriate approaches to value;
    - Income Approach;
    - Market Approach; and
    - Cost Approach
- Valuation analysis of each indefinite lived Masthead that resides within the Newspapers Reporting Unit;
- Review of the Tribune Company valuation analysis of various FCC Licenses that reside within the Television Reporting Unit; and
- Preparation of a narrative report summarizing the methodologies employed in our analysis, the assumptions on which our analysis was based, and our recommendations of fair value.

*SFAS 142 - Step 2*

- Additional discussions with Company management regarding certain intangible assets of the subject Reporting Units;
- Valuation analysis of certain intangible assets of the subject Reporting Units giving consideration to appropriate approaches to value;
    - Income Approach;
    - Market Approach; and
    - Cost Approach
- Valuation analysis of certain identified intangible assets, including:
    - ✓ Subscriber Relationships
    - ✓ Advertiser Relationships
    - ✓ Commercial Printing and Distribution Agreements
    - ✓ Network Affiliation Agreements
    - ✓ Assembled Workforce (as part of Goodwill);
- Valuation analysis of personal property assets owned by the Reporting Units;
- Valuation analysis of real property assets owned by the Reporting Units and;
- Preparation of a narrative report summarizing the methodologies employed in our analysis, the assumptions on which our analysis was based, and our recommendations of fair value.

**☰ ERNST & YOUNG**

Mr. Brian Litman - Vice President and Controller                      May 15, 2009
Tribune Company                                                       Page 4 of 6

*SFAS 144*

- Perform an analysis of the asset groups to determine the cash flow measurement period;
- Valuation analysis of the applicable long-lived assets that fail the recoverability test; and
- Preparation of a narrative report summarizing the methodologies employed in our analysis, the assumptions on which our analysis was based, and our recommendations of fair value.

The Services may be modified from time to time by our mutual written agreement and approval by the Bankruptcy Court.

**Out-Of-Scope Services**

Any activities not described as Services, as indicated above under Scope of Services, are not covered by the fees stated herein. These services will be considered outside the scope of this SOW and are the responsibility of Company to perform on a timely basis unless otherwise agreed by the parties in writing.

For engagements involving a contemplated transaction, or a transaction in process, should the Company fail to close the transaction, E&Y will bill the Company for the time expended by our professionals at the hourly rates set forth in the applicable Statement of Work and for the expenses that were incurred up to the time that E&Y is asked to terminate the Services.

**Presentation of Results**

Our analysis and recommendations will be documented in a narrative report (the "Report") discussing our methodologies and recommendations and that will include supporting exhibits. The recommendations expressed in our Report will be based on methods and techniques that E&Y considers appropriate under the circumstances.

We will provide the Company with five (5) copies of the final Report. The Services anticipate that we will receive the Company's editorial comments within ten (10) days following receipt of the draft. Any subsequent changes in the Report beyond those required to address the initial comments or any additional copies of the Report are outside the scope of the Services.

The Services may include advice or recommendations, but all decisions in connection with the implementation of any thereof shall be the responsibility of, and made by, the Company. Additionally, the Company agrees that it shall not construe or rely on E&Y's analysis as a fairness opinion or investment advice, and will not use, or permit it to be used as the sole basis to set a transaction price. E&Y assumes no responsibility to any buyer or seller to negotiate a purchase or sale at the value set forth in the Report.

The Report will include a Statement of Limiting Conditions ("SLC"), a draft of which is attached to this Statement of Work as Attachment 1. If, during our engagement, we determine that changes to the SLC will be required, we will notify the Company of those changes.

 **ERNST & YOUNG**

Mr. Brian Litman - Vice President and Controller
Tribune Company

May 15, 2009
Page 5 of 6

**Information and Timing**

The Company will provide to E&Y, or cause to be provided to E&Y, in a timely manner, all information necessary, in E&Y's opinion, for E&Y to perform the Services.  Subject to the Company's providing us with all necessary information, E&Y will deliver preliminary oral indications of value no later than three weeks following receipt of all necessary information.  We anticipate forwarding our draft Report to the Company no later than two weeks thereafter.

**Professional Fees**

The Company shall pay E&Y's fees for the Services, which fees are subject to Bankruptcy Court approval and based on the actual time of E&Y professionals expended in performing the Services. The actual time required will depend upon the extent and nature of available information, modifications to the scope of our engagement and other developments that may occur as work progresses.  The Company shall also pay all applicable taxes incurred in connection with the delivery of the Services or any Reports (except for taxes imposed on E&Y's income).  The rates, by level of tax professional, are as follows:

| Title | Rate Per Hour |
|---|---|
| Executive Director/Principal/Partner | $525 |
| Senior Manager | $475 |
| Manager | $375 |
| Senior | $275 |
| Staff | $175 |

The Company shall also pay E&Y's expenses and reimbursements in accordance with the terms of the Agreement.  We will submit an itemized and detailed billing statement and we will request payment of our fees in accordance with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware and any relevant administrative orders.

Any fee estimates for the Services under this SOW assume that the Company will timely provide, or cause to be provided, to E&Y all appropriate information and assistance, and that the scope and complexity of such Services are consistent with our prior discussions, as well as the description thereof above.  If, during the term of this SOW, E&Y determines that any additional work is necessary, whether at the Company's request or because the complexity of the project increases, E&Y will promptly contact the Company to discuss any adjustments to the scope of work or E&Y's fees and obtain Bankruptcy Court approval before proceeding.

\*    \*    \*    \*    \*    \*    \*

 **ERNST & YOUNG**

Mr. Brian Litman - Vice President and Controller                            May 15, 2009
Tribune Company                                                            Page 6 of 6

E&Y appreciates the opportunity to be of assistance to the Company. If this Statement of Work
accurately reflects the terms on which the Company has agreed to engage E&Y, please sign the enclosed
copy on behalf of the Company and return it, to Matthew Howley at the address on the first page of this
letter. We look forward to working with you on this engagement.

                                        Very truly yours,

                                        Ernst & Young LLP

Agreed and accepted:

Tribune Company


_____              _____
Signature                                     Date    5-21-09

_____              _____
Name (please print or type)                   Title    VICE PRESIDENT & CONTROLLER
         BRIAN LITMAN

**ATTACHMENT 1**
**Statement of Limiting Conditions**

1.    Nothing has come to our attention to cause us to believe that the facts and data set forth in this Report are not correct.

2.    Provision of valuation recommendations and considerations of the issues described herein are areas of regular valuation practice for which we believe that we have, and hold ourselves out to the public as having, substantial knowledge and experience. The services provided are limited to such knowledge and experience and do not represent audit, advisory or tax-related services that may otherwise be provided by Ernst & Young LLP. Notwithstanding this limitation, the advice contained herein was not intended or written by E&Y to be used, and cannot be used, by the recipient or any other taxpayer for the purposes of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax laws.

3.    No investigation of the title to the subject company and subject assets has been made, and the owner's claim to the subject company and subject assets is assumed to be valid. To the extent that Ernst & Young LLP's services include any analysis of assets, properties or business interests, Ernst & Young LLP assumes no responsibility for matters of legal description or title, and Ernst & Young LLP shall be entitled to make the following assumptions: (i) title is good and marketable, (ii) there exist no liens or encumbrances, (iii) there is full compliance with all applicable Federal, state, local and national regulations and laws (including, without limitation, usage, environmental, zoning and similar laws and/or regulations), and (iv) all required licenses, certificates of occupancy, consents, or legislative or administrative authority from any Federal, state, local, or national government, private entity or organization have been or can be obtained or renewed for any use on which Ernst & Young LLP services are to be based.

4.    This Report has been prepared solely for the purpose stated, and may not be used for any other purpose. Neither this Report nor any portions hereof may be copied or disseminated through advertising, public relations, news, sales, Securities and Exchange Commission disclosure documents or any other public (or private) media without the express prior written approval of Ernst & Young LLP.

When a tax-related Valuation Report is prepared, the following shall apply:

Notwithstanding anything contained herein to the contrary, the Company and its officers, directors, employees, representatives, agents and advisers may freely disclose to any and all persons (without limitation) any tax advice, including the tax treatment and tax structure of any transaction, provided to the Company by Ernst & Young LLP, together with all facts that may be relevant to understanding the proposed tax treatment of any transaction and any materials provided by Ernst & Young LLP related to such tax treatment and tax structure. In any event, because all such tax advice is provided solely for the benefit of the Company, the Company shall inform those to whom it discloses such information that they may not rely upon such tax advice for any purpose without the prior written consent of Ernst & Young LLP.

5.    The recommendations of fair value contained herein are not intended to represent the values of the subject assets at any time other than the effective date that is specifically stated in this Report.

Changes in market conditions could result in recommendations of value substantially different than those presented at the stated effective date. We assume no responsibility for changes in market conditions or for the inability of the owner to locate a purchaser of the subject assets at the values stated herein.

6.  No responsibility is assumed for information furnished by others, including management, and such information is believed to be reliable.

7.  In the course of our analysis, we were provided with written information, oral information, and/or data in electronic form, related to the structure, operation, and financial performance of the subject company and subject assets. We have relied upon this information in our analyses and in the preparation of this Report and have not independently verified its accuracy or completeness.

8.  Certain historical financial data used in our valuation were derived from audited and/or unaudited financial statements and are the responsibility of management. The financial statements may include disclosures required by generally accepted accounting principles. We have not independently verified the accuracy or completeness of this data provided and do not express an opinion or offer any form of assurance regarding its accuracy or completeness.

9.  The estimates of cash flow data included herein are solely for use in the valuation analysis and are not intended for use as forecasts or projections of future operations. We have not performed an examination or compilation, nor have we performed an agreed-upon procedures engagement with regard to the accompanying cash flow data in accordance with standards prescribed by the American Institute of Certified Public Accountants, and, accordingly, do not express an opinion or offer any form of assurance on the accompanying cash flow data or their underlying assumptions. Furthermore, there will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material.

10. We assume no responsibility for any financial and tax reporting judgments, which are appropriately those of management. It is our understanding that management accepts responsibility for any financial statement and tax reporting issues with respect to the assets covered by our analysis, and for the ultimate use of our Report.

11. Ernst & Young LLP is not required to furnish additional work or services, or to give testimony, or be in attendance in court with reference to the assets, properties, or business interest in question or to update any Report, recommendation, analysis, conclusion or other document relating to its services for any events or circumstances unless arrangements acceptable to Ernst & Young LLP have been separately agreed with the Company and approved by the Bankruptcy Court.

12. An analysis of the recording quality or the physical deterioration, if any, of the underlying sound recording elements has not been undertaken as part of the analysis. The valuation specialist is not qualified to detect such deterioration or ascertain the impact associated with such deterioration. In addition, the existence, if any, of masters or submaster duplicates, except as specifically stated in the Report, has not been verified as part of this assignment. It is recommended that appropriate experts be retained to investigate and determine the quality and existence of physical elements and the effect, if any, on value that might result from physical deterioration or missing elements.

13. An analysis of the quality or the physical deterioration, if any, of the underlying film elements has not been undertaken as part of the analysis. The valuation specialist is not qualified to detect such deterioration or ascertain the impact associated with such deterioration. In addition, the existence, if any, of interpositives and internegatives, except as specifically stated in the Report, has not been verified as part of this assignment. It is recommended that appropriate experts be retained to investigate and determine the quality and existence of film elements and the effect, if any, on value that might result from physical deterioration or missing elements.

14. We have not made any determination of what constitutes a violation under fraud and abuse laws and regulations. The Company should consult with its legal counsel for that determination.

15. With respect to our analysis, our work did not include an analysis of the potential impact of any unexpected sharp rise or decline in local or general financial market or economic conditions or technological changes.

16. Disclosure of the contents of this Report is governed by the Bylaws and Regulations of the Appraisal Institute and the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation. Possession of this Report or a copy thereof, or any part thereof, does not carry with it the right of publication, nor may it be used by anyone but the party for whom it has been prepared without the prior written consent and approval of Ernst & Young LLP.

17. The Americans with Disabilities Act ("ADA") became effective January 26, 1992. We have not made a compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative effect upon the value of the property. Since we have no direct evidence relating to this issue, we did not consider possible noncompliance with the requirements of the ADA in estimating the value of the property.

18. We have not performed an audit, review or compilation in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA") on any historical or prospective financial information, which may be included in the accompanying Report. Accordingly, we do not express any opinion or any other form of assurance on such information.

19. Ernst & Young LLP shall not assume any responsibility for identifying structural conditions of property. No analysis will be made of the subsurface or the hazardous waste conditions, if any. Our services shall not take into consideration the possibility of the existence of toxic substances, hazardous or contaminated conditions, or underground storage tanks, nor the costs associated with remediating such substances or conditions. Ernst & Young LLP is not qualified to detect, and shall not be responsible for detecting, such substance or conditions.

# EXHIBIT A2 --
## Market Services Agreements

May 20, 2009

Ms. Cathy Davis
WPIX, Inc.
220 East 42nd Street
New York, NY 10017

Dear Ms. Davis,

This agreement, together with the attached Exhibits (collectively, this "Agreement"), sets forth the terms and conditions on which Ernst & Young LLP ("E&Y") will perform certain market survey services as described below (collectively, the "Services") for WPIX, Inc. (the "Company") subsequent to the Company filing a petition under chapter 11 of the United States Bankruptcy Code ("Chapter 11") on or about December 8, 2008 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

We have agreed to provide such services to Company as a survey participant contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement and such services may be modified from time to time by our mutual written agreement and with approval of the Bankruptcy Court.

This Agreement is effective as of the date of Company's filing of a Chapter 11 petition in the Bankruptcy Court.

**An Overview of the Survey Process**
The purpose of the market survey is to provide participants with information regarding the New York broadcasting market, including, the size of the market, major changes in the market, each participant's share of the market, and each participant's ranking within the market. Reports are provided to survey participants each reporting period based on data submitted to us by participants.

It should be noted that each participant's data submission to us is kept confidential in compliance with the terms of this Agreement, and reports that are provided to participants are based only on consolidated summary information. In addition, the submissions from participants are not audited by E&Y, nor do we attempt to verify the data in any way.

EY makes periodic investments in systems and processes, which enhance the quality and efficiency of consolidating data submissions from the survey participants and providing reports to them. These systems and processes are used exclusively for the market surveys and are the property of EY.

**The Responsibilities of Survey Participants**

The primary responsibility of survey participants is to submit market survey data that is accurate, on the requested timetable, and is consistent with the definitions of the types of revenue to be included in the survey. The definitions, report formats and stations to be included in the survey are the sole responsibility of the survey participants as a group.

**The Responsibilities of EY**

Our responsibility is to maintain the confidentiality of the data submitted by survey participants in compliance with the terms of this Agreement, and to produce reports that accurately reflect the consolidated survey submissions. While we have an obligation to maintain confidentiality of the data, we are not responsible for information that is disclosed either though error or collaborations of the stations in or out of the survey.

The Services and the information, records, data, advice or recommendations contained in any reports, materials, presentations or other communications, written or otherwise, in draft or final form, provided by E&Y (collectively, "Reports") are intended solely for the information and use of the Company's management. The Company may not rely on any verbal Reports (that are not confirmed by E&Y in writing) or draft written Reports. Except where compelled by legal process (of which the Company shall promptly inform E&Y so that E&Y may seek appropriate protection) the Company may not disclose, orally or in writing, any Report or any portion, abstract or summary thereof, or make any reference to E&Y in connection therewith, to any third party without obtaining (a) the prior written consent of E&Y. To the extent the Company is permitted to disclose any written Report as set forth herein, it shall disclose such Report only in the original, complete and unaltered form provided by E&Y, with all restrictive legends and other agreements intact. Management of the Company is responsible for determining whether Reports satisfy legal, regulatory, or contractual requirements applicable to the Company. Company acknowledges and agrees that the Company has the ultimate responsibility for all management decisions relating to the Services.

**Fees and Expenses**

The Company shall pay E&Y's fees for the Services which is an annual fee of $9,600. That fee includes both time and expenses, therefore no additional charges will be added to that amount. The Company shall also pay all applicable taxes incurred in connection with the delivery of the Services (except for taxes imposed on E&Y's income).

We will request payment of our fees and expenses in accordance with the United States Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules") and any relevant administrative orders. E&Y will submit its invoices quarterly and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

We will submit an itemized and detailed billing statement and we will request payment of our fees in accordance with the United States Bankruptcy Code, the Bankruptcy Rules and the Local Rules and any relevant orders of the Bankruptcy Court.

E&Y acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code and any order of the Bankruptcy Court approving the retention of E&Y, (ii) any applicable fee and expense guidelines and/or orders of the Bankruptcy Court and (iii) any other applicable requirements or guidelines governing interim and final fee applications in the Company's Chapter 11 proceedings, including the U.S. Trustee Guidelines.

**Other Matters**

Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or its subsidiaries or of E&Y) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit B to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, E&Y and any all successors and assigns thereof.

This Agreement, including the Exhibits hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all agreements and understandings between the parties with respect to the subject matter hereof made prior to the date hereof. There are no representations, warranties, understandings or agreements relating to the subject matter hereof which are not fully expressed in this Agreement. No amendment, modification, waiver or discharge of this Agreement shall be valid unless in writing and signed by an authorized representative of the party against whom such amendment, modification, waiver or discharge is sought to be enforced, and, where required, approved by the Bankruptcy Court. Except as expressly provided herein, this Agreement does not modify the terms or provisions of any engagement letter or agreement for other professional services executed prior to the date of Company's filing of a Chapter 11 petition in the Bankruptcy Court.

≡Ⅱ *ERNST & YOUNG*                           ⅢⅠ Ernst & Young LLP

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, as if it were made and fully performed in New York by New York residents.

By agreement to the provision of the Services, E&Y is not providing a guarantee to the Company that E&Y's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee the Company's successful reorganization under Chapter 11.

The Company represents and warrants to EY that (a) the Company's execution and delivery of this Agreement has been authorized by all requisite corporate or other applicable entity action and (b) the person signing this Agreement is expressly authorized to execute it on behalf of, and to bind, the Company.

The performance of the Services and the parties' obligations in connection therewith are subject to the additional terms and conditions set forth in Exhibit A.

E&Y appreciates the opportunity to be of assistance to the Company. If this Agreement accurately reflects the terms on which the Company has agreed to engage E&Y, please sign a copy of this letter in the space below on behalf of the Company and return it to Fred Kuntzman at the address provided above.

Yours very truly,

Ernst & Young LLP

Agreed and accepted:

WPIX, Inc.
By
Ms. Cathy Davis

**EXHIBIT A**
TERMS & CONDITIONS

I.    Independent Contractor; Certain Services.

    A.  E&Y will provide the Services to the Company as an independent contractor. Nothing contained in this Agreement shall create an employment or principal-agent relationship or joint venture between E&Y and the Company.  Neither party shall have the right, power or authority to obligate or bind the other in any manner whatsoever. From time to time, and depending on the circumstances, non-CPA personnel, including non-CPA owners of firms affiliated with E&Y, may participate in the performance of the Services.

    B.  E&Y will not render an attestation or assurance report or opinion under this Agreement, nor will the Services or the Reports constitute (1) an audit, review or examination of financial statements in accordance with generally accepted auditing standards, (2) an examination of prospective financial statements in accordance with standards established by the AICPA or (3) a review to detect fraud or illegal acts.  The Services will not include preparation of Reports relating to nor will any of the Reports address the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act.

II.    Changes and Delays.  A party shall be excused from default or delay in the performance of its obligations under this Agreement (other than the Company's payment obligations) to the extent caused by changes required by then applicable law, regulation or professional requirements, schedule delays or other events beyond E&Y's reasonable control, but without its fault or negligence.

III.    Information.  The Company will timely provide, or cause to be provided timely, to E&Y all data, information and resources reasonably required by E&Y to perform the Services.  All data and information provided to E&Y by the Company or on its behalf shall be true, correct and complete in all material respects and will not omit any material fact necessary to make any other data or information provided to E&Y not false or misleading.  The Reports shall be based solely upon such data and information furnished by or on behalf of the Company, on which E&Y may rely, and E&Y will not evaluate, nor will it have any responsibility to verify independently, the accuracy or completeness thereof or the sufficiency of such data and information for the Company's purposes.

IV.    Limitation of Liability.

A.  E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their

respective affiliates (collectively, the "EY Entities," and any of them, an "EY Entity"), or any subcontractor or personnel of any EY Entity. The Company and its affiliates shall have no recourse, and shall bring no claim, against any EY Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any EY Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

B.   The aggregate liability of E&Y and its subcontractors to the Company, its affiliates, any other person or entity for or in respect of which any of the Services are provided, and their respective successors and permitted assigns, in connection with the performance of the Services or otherwise under this Agreement, shall be limited to the fees actually paid to E&Y for the Services with respect to which the liability is alleged to have arisen, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise; provided, however, that this limitation shall not apply to the extent prohibited by applicable law or regulation (including, for these purposes, the rules and interpretations of the AICPA and the U.S. Securities and Exchange Commission) provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of a party's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

C.   E&Y will not be liable to the Company (or to any affiliate thereof or any other person or entity for or in respect of which any of the Services are provided), for any consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill) in connection with the performance of the Services or otherwise under this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if E&Y is advised of the likelihood of such damages; provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

D.   The Company shall bring any claim relating to the Services or this Agreement within one year after the date on which the Company became aware, or ought reasonably to have become aware, of the facts giving rise to any alleged liability of E&Y and, in any event, no later than two years after (1) the completion of the Services or (2) the earlier termination of this Agreement for any reason.

V.    Indemnity. To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless the EY Entities and their respective assignees, subcontractors, members, shareholders, directors, officers, managers, partners, employees, agents and consultants (collectively, "Indemnitees"), from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of the disclosure of any Report or any portion, abstract or summary thereof (other than any contents of the Report relating to any tax advice,

including the tax treatment and tax structure of any transaction) by, through or at the request of the Company or the use or reliance on any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by any of the Indemnitees in connection with any Claims provided, however, that the foregoing indemnity shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any)..

VI.    Technical Elements; Working Papers.

A.  In performing the Services, E&Y may use certain data, modules, components, designs, utilities, subsets, objects, program listings, tools, models, methodologies, programs, systems, analysis frameworks, leading practices, and specifications developed or used by E&Y or its licensors, or to which E&Y otherwise has rights, including enhancements and improvements developed in the course of performing the Services (collectively, "Technical Elements").  The Company shall have no rights in or to the Technical Elements, except with respect to Technical Elements owned by E&Y solely to the extent necessary for the Company to use the Reports as permitted by this Agreement. E&Y retains all right to use its knowledge, experience and know-how, including the Technical Elements, in providing services to other clients.

B.  E&Y shall own all working papers prepared by it to document, in accordance with professional obligations, performance of the Services, and it may retain, in confidence, copies of Reports and other documents prepared by it.

VII.   Confidentiality.

A.  Except as otherwise provided in this Agreement, without the prior written consent of the other party, neither party shall disclose Confidential Information (as defined below) of the other received in connection with the performance of the Services. The recipient shall use the same degree of care that it uses to protect its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the disclosing party.  Neither party shall have any obligation under this Section VII (A) with respect to any information that (1) is, at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the recipient in violation of this Agreement, (2) is subsequently learned from a third party that, to the knowledge of the recipient, is not under an obligation of confidentiality to the disclosing party, (3) was known to the recipient at the time of disclosure, as can be demonstrated by contemporaneous written evidence, (4) is generated independently by the recipient without reference to the Confidential Information of the disclosing party, as can be demonstrated by contemporaneous written evidence, or (5) is disclosed pursuant to applicable law, regulation, subpoena, other legal process or professional requirements, or in connection with the enforcement of the

recipient's rights under this Agreement. Notwithstanding anything contained herein to the contrary, E&Y may disclose the Company's Confidential Information, including tax return information, to EY Entities for the purpose of rendering the Services and any other services heretofore or hereafter requested by the Company.

B. For purposes of this Section VII, Confidential Information shall mean (1) this Agreement, (2) its contents, and (3) proprietary information relating to the business, operations, methodologies, technologies, personnel, customers, vendors, financial condition or procedures of a party, including, without limitation, the contents of this Agreement, that is not generally known to the public and that, under all of the circumstances, ought reasonably to be treated as confidential and/or proprietary.

C. Notwithstanding anything contained herein to the contrary, E&Y may transmit information to the Company or its representatives by e-mail, over the Internet. Until the Company specifically instructs E&Y in writing not to transmit information in such manner, any breach of confidentiality that occurs thereby shall not be deemed a breach of E&Y's obligations under this Section VII.

D. Notwithstanding anything contained herein to the contrary or in any other agreement between E&Y and the Company to the contrary, the Company and its officers, directors, employees, representatives, agents and advisors may freely disclose to any and all persons (without limitation) any tax advice, including the tax treatment and tax structure of any transaction, provided to the Company by E&Y, together with all facts that may be relevant to understanding the proposed tax treatment of any transaction and any materials provided by E&Y related to such tax treatment and tax structure. In any event, because all such advice is provided solely for the benefit of the Company, the Company shall inform those to whom it discloses such information that they may not rely upon such advice for any purpose without E&Y's prior written consent.

E. The Company will not, and will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to E&Y, in any document filed or distributed in connection with (1) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable or (2) periodic reporting obligations under Securities Laws. The Company will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

VIII.   Term; Termination; Survival. This Agreement will commence on the date hereof and shall terminate upon the earlier of three years or upon issuance of a revised engagement letter, unless earlier terminated as set forth below. This Agreement may be terminated at any time by the Company or E&Y, but in any event this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. The provisions of this Agreement relating to use and distribution of Reports, "Fees and Expenses" and "Other Matters" and Sections IV and V of this Exhibit A will remain operative and in full force and effect regardless of any termination or

expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization under Chapter 11 of Title 11 of the United States Code, liquidation of the Company's assets under Chapter 7 of Title 11 of the United States Code, or otherwise. The Company shall pay for work-in-progress, completed Services and expenses incurred by E&Y through the effective date of any termination.

IX.    Payment.    The Company's obligation to pay E&Y's fees and expenses is not contingent upon the results of the Services.    If E&Y is required by government regulation, subpoena, or other legal process to produce documents or personnel as witnesses with respect to the Services or this Agreement, the Company shall, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as reasonable attorneys' fees and expenses, including the allocable cost of in-house counsel, incurred in responding to such requests.

X.    Non-Solicitation of Personnel.    The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y; provided that the Company shall not breach its obligation hereunder by generally advertising available positions or hiring E&Y personnel who either respond to such advertisements or come to the Company on their own initiative without direct or indirect encouragement from the Company.

XI.    Use of Names.    Except as expressly permitted by this Agreement, neither party shall use publicly the other party's name, trademark, service mark or logo in connection with the Services or any of the Reports without the prior written consent of such other party.    Notwithstanding anything contained herein to the contrary, after this Agreement has terminated for any reason, E&Y may disclose to present or prospective clients, or otherwise in its marketing materials, that it has performed the Services for the Company, and may use the Company's name and trademark solely for that purpose, in accordance with applicable professional obligations.    E&Y may use the Company's name, trademark, service mark and logo as reasonably necessary to perform the Services and in correspondence, including proposals, from E&Y to the Company.

XII.    Miscellaneous.

A.    This Agreement constitutes the entire agreement between the Company and E&Y, and merges all prior and contemporaneous communications, with respect to the Services and the other matters contemplated by this Agreement.    This Agreement may not be modified except in a writing signed by both parties and approved by the Bankruptcy Court, if required.    If any provision of this Agreement is held to be void, invalid or otherwise unenforceable, in whole or part, the other provisions shall remain in full force and effect.    This Agreement may be executed in counterparts, any one of which need not contain the signature of more than one party, but all of which, together, shall comprise one and the same agreement.

B.  None of a party's rights, obligations or claims under or with respect to this Agreement or the Services may be assigned, in whole or in part, by such party without the prior written consent of the other party, provided, that, subject to Bankruptcy Court approval, EY may assign any of its rights or obligations under this Agreement to, and may perform the Services together with, an affiliate of E&Y or any other EY Entity. The provisions of this Agreement shall operate for the benefit of, and may be enforced by, any assignee or subcontractor that is providing any of the Services as permitted hereby.

C.  In the event of any conflict, ambiguity or inconsistency between this Exhibit A and any other provision of this Agreement, the terms and conditions of this Exhibit A shall govern.

**EXHIBIT B**
Dispute Resolution Procedures

*Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any E&Y audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

*Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any E&Y audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

May 20, 2009

Mr. Michael Weiner
KTLA, Inc.
5800 Sunset Blvd.
Los Angeles, CA 90028

Dear Mr. Weiner,

This agreement, together with the attached Exhibits (collectively, this "Agreement"), sets forth the terms and conditions on which Ernst & Young LLP ("E&Y") will perform certain market survey services as described below (collectively, the "Services") for KTLA, Inc. (the "Company") subsequent to the Company filing a petition under chapter 11 of the United States Bankruptcy Code ("Chapter 11") on or about December 8, 2008 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

We have agreed to provide such services to Company as a survey participant contingent upon the Bankruptcy Court's approval of our retention in accordance with the terms and conditions that are set forth in this Agreement and such services may be modified from time to time by our mutual written agreement and with approval of the Bankruptcy Court.

This Agreement is effective as of the date of Company's filing of a Chapter 11 petition in the Bankruptcy Court.

**An Overview of the Survey Process**
The purpose of the market survey is to provide participants with information regarding the Los Angeles broadcasting market, including, the size of the market, major changes in the market, each participant's share of the market, and each participant's ranking within the market. Reports are provided to survey participants each reporting period based on data submitted to us by participants.

It should be noted that each participant's data submission to us is kept confidential in compliance with the terms of this Agreement, and reports that are provided to participants are based only on consolidated summary information. In addition, the submissions from participants are not audited by E&Y, nor do we attempt to verify the data in any way.

EY makes periodic investments in systems and processes, which enhance the quality and efficiency of consolidating data submissions from the survey participants and providing reports to them. These systems and processes are used exclusively for the market surveys and are the property of EY.

**The Responsibilities of Survey Participants**

The primary responsibility of survey participants is to submit market survey data that is accurate, on the requested timetable, and is consistent with the definitions of the types of revenue to be included in the survey. The definitions, report formats and stations to be included in the survey are the sole responsibility of the survey participants as a group.

**The Responsibilities of EY**

Our responsibility is to maintain the confidentiality of the data submitted by survey participants in compliance with the terms of this Agreement, and to produce reports that accurately reflect the consolidated survey submissions. While we have an obligation to maintain confidentiality of the data, we are not responsible for information that is disclosed either though error or collaborations of the stations in or out of the survey.

The Services and the information, records, data, advice or recommendations contained in any reports, materials, presentations or other communications, written or otherwise, in draft or final form, provided by E&Y (collectively, "Reports") are intended solely for the information and use of the Company's management. The Company may not rely on any verbal Reports (that are not confirmed by E&Y in writing) or draft written Reports. Except where compelled by legal process (of which the Company shall promptly inform E&Y so that E&Y may seek appropriate protection) the Company may not disclose, orally or in writing, any Report or any portion, abstract or summary thereof, or make any reference to E&Y in connection therewith, to any third party without obtaining (a) the prior written consent of E&Y. To the extent the Company is permitted to disclose any written Report as set forth herein, it shall disclose such Report only in the original, complete and unaltered form provided by E&Y, with all restrictive legends and other agreements intact. Management of the Company is responsible for determining whether Reports satisfy legal, regulatory, or contractual requirements applicable to the Company. Company acknowledges and agrees that the Company has the ultimate responsibility for all management decisions relating to the Services.

**Fees and Expenses**

The Company shall pay E&Y's fees for the Services which is an annual fee of $7,500. That fee includes both time and expenses, therefore no additional charges will be added to that amount. The Company shall also pay all applicable taxes incurred in connection with the delivery of the Services (except for taxes imposed on E&Y's income).

We will request payment of our fees and expenses in accordance with the United States Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules") and any relevant administrative orders. E&Y will submit its invoices quarterly and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

We will submit an itemized and detailed billing statement and we will request payment of our fees in accordance with the United States Bankruptcy Code, the Bankruptcy Rules and the Local Rules and any relevant orders of the Bankruptcy Court.

E&Y acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code and any order of the Bankruptcy Court approving the retention of E&Y, (ii) any applicable fee and expense guidelines and/or orders of the Bankruptcy Court and (iii) any other applicable requirements or guidelines governing interim and final fee applications in the Company's Chapter 11 proceedings, including the U.S. Trustee Guidelines.

**Other Matters**

Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or its subsidiaries or of E&Y) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit B to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, E&Y and any all successors and assigns thereof.

This Agreement, including the Exhibits hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all agreements and understandings between the parties with respect to the subject matter hereof made prior to the date hereof. There are no representations, warranties, understandings or agreements relating to the subject matter hereof which are not fully expressed in this Agreement. No amendment, modification, waiver or discharge of this Agreement shall be valid unless in writing and signed by an authorized representative of the party against whom such amendment, modification, waiver or discharge is sought to be enforced, and, where required, approved by the Bankruptcy Court. Except as expressly provided herein, this Agreement does not modify the terms or provisions of any engagement letter or agreement for other professional services executed prior to the date of Company's filing of a Chapter 11 petition in the Bankruptcy Court.

**≡** ERNST & YOUNG

■ Ernst & Young LLP

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, as if it were made and fully performed in New York by New York residents.

By agreement to the provision of the Services, E&Y is not providing a guarantee to the Company that E&Y's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee the Company's successful reorganization under Chapter 11.

The Company represents and warrants to EY that (a) the Company's execution and delivery of this Agreement has been authorized by all requisite corporate or other applicable entity action and (b) the person signing this Agreement is expressly authorized to execute it on behalf of, and to bind, the Company.

The performance of the Services and the parties' obligations in connection therewith are subject to the additional terms and conditions set forth in Exhibit A.

E&Y appreciates the opportunity to be of assistance to the Company. If this Agreement accurately reflects the terms on which the Company has agreed to engage E&Y, please sign a copy of this letter in the space below on behalf of the Company and return it to Fred Kuntzman at the address provided above.

Yours very truly,

*Ernst + Young LLP*

Agreed and accepted:

KTLA, Inc.
By _____
    Mr. Michael Weiner

**EXHIBIT A**
TERMS & CONDITIONS

I.    Independent Contractor; Certain Services.

A.  E&Y will provide the Services to the Company as an independent contractor. Nothing contained in this Agreement shall create an employment or principal-agent relationship or joint venture between E&Y and the Company.  Neither party shall have the right, power or authority to obligate or bind the other in any manner whatsoever. From time to time, and depending on the circumstances, non-CPA personnel, including non-CPA owners of firms affiliated with E&Y, may participate in the performance of the Services.

B.  E&Y will not render an attestation or assurance report or opinion under this Agreement, nor will the Services or the Reports constitute (1) an audit, review or examination of financial statements in accordance with generally accepted auditing standards, (2) an examination of prospective financial statements in accordance with standards established by the AICPA or (3) a review to detect fraud or illegal acts.  The Services will not include preparation of Reports relating to nor will any of the Reports address the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act.

II.    Changes and Delays.  A party shall be excused from default or delay in the performance of its obligations under this Agreement (other than the Company's payment obligations) to the extent caused by changes required by then applicable law, regulation or professional requirements, schedule delays or other events beyond E&Y's reasonable control, but without its fault or negligence.

III.    Information.  The Company will timely provide, or cause to be provided timely, to E&Y all data, information and resources reasonably required by E&Y to perform the Services.  All data and information provided to E&Y by the Company or on its behalf shall be true, correct and complete in all material respects and will not omit any material fact necessary to make any other data or information provided to E&Y not false or misleading.  The Reports shall be based solely upon such data and information furnished by or on behalf of the Company, on which E&Y may rely, and E&Y will not evaluate, nor will it have any responsibility to verify independently, the accuracy or completeness thereof or the sufficiency of such data and information for the Company's purposes.

IV.    Limitation of Liability.

A. E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their

respective affiliates (collectively, the "EY Entities," and any of them, an "EY Entity"), or any subcontractor or personnel of any EY Entity. The Company and its affiliates shall have no recourse, and shall bring no claim, against any EY Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any EY Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

B.  The aggregate liability of E&Y and its subcontractors to the Company, its affiliates, any other person or entity for or in respect of which any of the Services are provided, and their respective successors and permitted assigns, in connection with the performance of the Services or otherwise under this Agreement, shall be limited to the fees actually paid to E&Y for the Services with respect to which the liability is alleged to have arisen, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise; provided, however, that this limitation shall not apply to the extent prohibited by applicable law or regulation (including, for these purposes, the rules and interpretations of the AICPA and the U.S. Securities and Exchange Commission) provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of a party's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

C.  E&Y will not be liable to the Company (or to any affiliate thereof or any other person or entity for or in respect of which any of the Services are provided), for any consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill) in connection with the performance of the Services or otherwise under this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if E&Y is advised of the likelihood of such damages; provided, however, that the foregoing limitation shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any).

D.  The Company shall bring any claim relating to the Services or this Agreement within one year after the date on which the Company became aware, or ought reasonably to have become aware, of the facts giving rise to any alleged liability of E&Y and, in any event, no later than two years after (1) the completion of the Services or (2) the earlier termination of this Agreement for any reason.

V.    Indemnity. To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless the EY Entities and their respective assignees, subcontractors, members, shareholders, directors, officers, managers, partners, employees, agents and consultants (collectively, "Indemnitees"), from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of the disclosure of any Report or any portion, abstract or summary thereof (other than any contents of the Report relating to any tax advice,

including the tax treatment and tax structure of any transaction) by, through or at the request of the Company or the use or reliance on any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by any of the Indemnitees in connection with any Claims provided, however, that the foregoing indemnity shall not apply to the extent the liability is finally determined to be the result of E&Y's bad faith, gross negligence, willful misconduct, self-dealing or breach of fiduciary duty (if any)..

VI.     Technical Elements; Working Papers.

        A. In performing the Services, E&Y may use certain data, modules, components, designs, utilities, subsets, objects, program listings, tools, models, methodologies, programs, systems, analysis frameworks, leading practices, and specifications developed or used by E&Y or its licensors, or to which E&Y otherwise has rights, including enhancements and improvements developed in the course of performing the Services (collectively, "Technical Elements"). The Company shall have no rights in or to the Technical Elements, except with respect to Technical Elements owned by E&Y solely to the extent necessary for the Company to use the Reports as permitted by this Agreement. E&Y retains all right to use its knowledge, experience and know-how, including the Technical Elements, in providing services to other clients.

        B. E&Y shall own all working papers prepared by it to document, in accordance with professional obligations, performance of the Services, and it may retain, in confidence, copies of Reports and other documents prepared by it.

VII.    Confidentiality.

        A. Except as otherwise provided in this Agreement, without the prior written consent of the other party, neither party shall disclose Confidential Information (as defined below) of the other received in connection with the performance of the Services. The recipient shall use the same degree of care that it uses to protect its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the disclosing party. Neither party shall have any obligation under this Section VII (A) with respect to any information that (1) is, at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the recipient in violation of this Agreement, (2) is subsequently learned from a third party that, to the knowledge of the recipient, is not under an obligation of confidentiality to the disclosing party, (3) was known to the recipient at the time of disclosure, as can be demonstrated by contemporaneous written evidence, (4) is generated independently by the recipient without reference to the Confidential Information of the disclosing party, as can be demonstrated by contemporaneous written evidence, or (5) is disclosed pursuant to applicable law, regulation, subpoena, other legal process or professional requirements, or in connection with the enforcement of the

recipient's rights under this Agreement. Notwithstanding anything contained herein to the contrary, E&Y may disclose the Company's Confidential Information, including tax return information, to EY Entities for the purpose of rendering the Services and any other services heretofore or hereafter requested by the Company.

B.  For purposes of this Section VII, Confidential Information shall mean (1) this Agreement, (2) its contents, and (3) proprietary information relating to the business, operations, methodologies, technologies, personnel, customers, vendors, financial condition or procedures of a party, including, without limitation, the contents of this Agreement, that is not generally known to the public and that, under all of the circumstances, ought reasonably to be treated as confidential and/or proprietary.

C.  Notwithstanding anything contained herein to the contrary, E&Y may transmit information to the Company or its representatives by e-mail, over the Internet. Until the Company specifically instructs E&Y in writing not to transmit information in such manner, any breach of confidentiality that occurs thereby shall not be deemed a breach of E&Y's obligations under this Section VII.

D.  Notwithstanding anything contained herein to the contrary or in any other agreement between E&Y and the Company to the contrary, the Company and its officers, directors, employees, representatives, agents and advisors may freely disclose to any and all persons (without limitation) any tax advice, including the tax treatment and tax structure of any transaction, provided to the Company by E&Y, together with all facts that may be relevant to understanding the proposed tax treatment of any transaction and any materials provided by E&Y related to such tax treatment and tax structure. In any event, because all such advice is provided solely for the benefit of the Company, the Company shall inform those to whom it discloses such information that they may not rely upon such advice for any purpose without E&Y's prior written consent.

E.  The Company will not, and will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to E&Y, in any document filed or distributed in connection with (1) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable or (2) periodic reporting obligations under Securities Laws. The Company will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

VIII.  Term; Termination; Survival. This Agreement will commence on the date hereof and shall terminate upon the earlier of three years or upon issuance of a revised engagement letter, unless earlier terminated as set forth below. This Agreement may be terminated at any time by the Company or E&Y, but in any event this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. The provisions of this Agreement relating to use and distribution of Reports, "Fees and Expenses" and "Other Matters" and Sections IV and V of this Exhibit A will remain operative and in full force and effect regardless of any termination or

expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization under Chapter 11 of Title 11 of the United States Code, liquidation of the Company's assets under Chapter 7 of Title 11 of the United States Code, or otherwise. The Company shall pay for work-in-progress, completed Services and expenses incurred by E&Y through the effective date of any termination.

IX.     Payment.  The Company's obligation to pay E&Y's fees and expenses is not contingent upon the results of the Services.  If E&Y is required by government regulation, subpoena, or other legal process to produce documents or personnel as witnesses with respect to the Services or this Agreement, the Company shall, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as reasonable attorneys' fees and expenses, including the allocable cost of in-house counsel, incurred in responding to such requests.

X.      Non-Solicitation of Personnel.  The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y; provided that the Company shall not breach its obligation hereunder by generally advertising available positions or hiring E&Y personnel who either respond to such advertisements or come to the Company on their own initiative without direct or indirect encouragement from the Company.

XI.     Use of Names.  Except as expressly permitted by this Agreement, neither party shall use publicly the other party's name, trademark, service mark or logo in connection with the Services or any of the Reports without the prior written consent of such other party.  Notwithstanding anything contained herein to the contrary, after this Agreement has terminated for any reason, E&Y may disclose to present or prospective clients, or otherwise in its marketing materials, that it has performed the Services for the Company, and may use the Company's name and trademark solely for that purpose, in accordance with applicable professional obligations. E&Y may use the Company's name, trademark, service mark and logo as reasonably necessary to perform the Services and in correspondence, including proposals, from E&Y to the Company.

XII.    Miscellaneous.

        A.  This Agreement constitutes the entire agreement between the Company and E&Y, and merges all prior and contemporaneous communications, with respect to the Services and the other matters contemplated by this Agreement.  This Agreement may not be modified except in a writing signed by both parties and approved by the Bankruptcy Court, if required.  If any provision of this Agreement is held to be void, invalid or otherwise unenforceable, in whole or part, the other provisions shall remain in full force and effect. This Agreement may be executed in counterparts, any one of which need not contain the signature of more than one party, but all of which, together, shall comprise one and the same agreement.

B.  None of a party's rights, obligations or claims under or with respect to this Agreement or the Services may be assigned, in whole or in part, by such party without the prior written consent of the other party, provided, that, subject to Bankruptcy Court approval, EY may assign any of its rights or obligations under this Agreement to, and may perform the Services together with, an affiliate of E&Y or any other EY Entity.  The provisions of this Agreement shall operate for the benefit of, and may be enforced by, any assignee or subcontractor that is providing any of the Services as permitted hereby.

C.  In the event of any conflict, ambiguity or inconsistency between this Exhibit A and any other provision of this Agreement, the terms and conditions of this Exhibit A shall govern.

**EXHIBIT B**
Dispute Resolution Procedures

*Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any E&Y audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

*Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any E&Y audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

# EXHIBIT B--
## Connections Check Matrix

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtor | 435 Production Company | | x | x |
| Debtor | 5800 Sunset Productions Inc. | | x | x |
| Debtor | Baltimore Newspaper Network, Inc. | | x | x |
| Debtor | California Community News Corporation | | x | x |
| Debtor | Candle Holdings Corporation | | x | x |
| Debtor | Channel 20, Inc. | | x | x |
| Debtor | Channel 39, Inc. | | x | x |
| Debtor | Channel 40, Inc. | | x | x |
| Debtor | Chicago Avenue Construction Company | | x | x |
| Debtor | Chicago River Production Company | | x | x |
| Debtor | Chicago Tribune Company | | x | x |
| Debtor | Chicago Tribune Newspapers, Inc. | | x | x |
| Debtor | Chicago Tribune Press Service, Inc. | | x | x |
| Debtor | ChicagoLand Microwave Licensee, Inc. | | x | x |
| Debtor | Chicagoland Publishing Company | | x | x |
| Debtor | Chicagoland Television News, Inc. | | x | x |
| Debtor | Courant Specialty Products, Inc. | | x | x |
| Debtor | Direct Mail Associates, Inc. | | x | x |
| Debtor | Distribution Systems of America, Inc. | | x | x |
| Debtor | Eagle New Media Investments, LLC | | x | x |
| Debtor | Eagle Publishing Investments, LLC | | x | x |
| Debtor | forsalebyowner.com Corp. | | x | x |
| Debtor | Forsalebyowner.com Referral Services, LLC | | x | x |
| Debtor | Fortify Holdings Corporation | | x | x |
| Debtor | Forum Publishing Group, Inc. | | x | x |
| Debtor | Gold Coast Publications, Inc. . | | x | x |
| Debtor | GreenCo, Inc. | | x | x |
| Debtor | Heart & Crown Advertising, Inc. | | x | x |
| Debtor | Homeowners Realty, Inc. | | x | x |
| Debtor | Homestead Publishing Co. | | x | x |
| Debtor | Hoy Publications, LLC | | x | x |
| Debtor | Hoy, LLC | | x | x |
| Debtor | InsertCo, Inc. | | x | x |
| Debtor | Internet Foreclosure Service, Inc. | | x | x |
| Debtor | Juliusair Company II, LLC | | x | x |
| Debtor | Juliusair Company, LLC | | x | x |
| Debtor | KIAH, Inc. | | x | x |
| Debtor | KPLR, Inc. | | x | x |
| Debtor | KSWB Inc. | | x | x |
| Debtor | KTLA Inc. | | x | x |
| Debtor | KWGN Inc. | | x | x |
| Debtor | Los Angeles Times Communications LLC | | x | x |
| Debtor | Los Angeles Times International, Ltd. | | x | x |
| Debtor | Los Angeles Times Newspapers, Inc. | | x | x |
| Debtor | Magic T Music Publishing Company | | x | x |
| Debtor | NBBF, LLC | | x | x |
| Debtor | Neocomm, Inc. | | x | x |
| Debtor | New Mass. Media, Inc. | | x | x |
| Debtor | New River Center Maintenance Association, Inc. | | x | x |
| Debtor | Newscom Services, Inc. | | x | x |
| Debtor | Newspaper Readers Agency, Inc. | | x | x |
| Debtor | North Michigan Production Company | | x | x |
| Debtor | North Orange Avenue Properties, Inc. | | x | x |
| Debtor | Oak Brook Productions, Inc. | | x | x |
| Debtor | Orlando Sentinel Communications Company | | x | x |
| Debtor | Patuxent Publishing Company | | x | x |
| Debtor | Publishers Forest Products Co. of Washington | | x | x |
| Debtor | Sentinel Communications News Ventures, Inc. | | x | x |
| Debtor | Shepards, Inc. | | x | x |
| Debtor | Signs of Distinction, Inc. | | x | x |
| Debtor | Southern Connecticut Newspapers, Inc. | | x | x |
| Debtor | Star Community Publishing Group, LLC | | x | x |
| Debtor | Sternweb, Inc. | | x | x |
| Debtor | Sun-Sentinel Company | | x | x |
| Debtor | The Baltimore Sun Company | | x | x |
| Debtor | The Daily Press, Inc. | | x | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtor | The Hartford Courant Company | | x | x |
| Debtor | The Morning Call, Inc. | | x | x |
| Debtor | The Other Company LLC | | x | x |
| Debtor | Times Mirror Land and Timber Company | | x | x |
| Debtor | Times Mirror Payroll Processing Company, Inc. | | x | x |
| Debtor | Times Mirror Services Company, Inc. | | x | x |
| Debtor | TMLH 2, Inc. | | x | x |
| Debtor | TMLS I, Inc. | | x | x |
| Debtor | TMS Entertainment Guides, Inc. | | x | x |
| Debtor | Tower Distribution Company | | x | x |
| Debtor | Towering T Music Publishing Company | | x | x |
| Debtor | Tribune Broadcast Holdings, Inc. | | x | x |
| Debtor | Tribune Broadcasting Company | | x | x |
| Debtor | Tribune Broadcasting Holdco, LLC | | x | x |
| Debtor | Tribune Broadcasting News Network, Inc. | | x | x |
| Debtor | Tribune California Properties, Inc. | | x | x |
| Debtor | Tribune Company | | x | x |
| Debtor | Tribune Direct Marketing, Inc. | | x | x |
| Debtor | Tribune Entertainment Company | | x | x |
| Debtor | Tribune Entertainment Production Company | | x | x |
| Debtor | Tribune Finance Service Center, Inc. | | x | x |
| Debtor | Tribune Finance, LLC | | x | x |
| Debtor | Tribune License, Inc. | | x | x |
| Debtor | Tribune Los Angeles, Inc. | | x | x |
| Debtor | Tribune Manhattan Newspaper Holdings, Inc. | | x | x |
| Debtor | Tribune Media Net, Inc. | | x | x |
| Debtor | Tribune Media Services, Inc. | | x | x |
| Debtor | Tribune Network Holdings Company | | x | x |
| Debtor | Tribune New York Newspaper Holdings, LLC | | x | x |
| Debtor | Tribune NM, Inc. | | x | x |
| Debtor | Tribune Publishing Company | | x | x |
| Debtor | Tribune Television Company | | x | x |
| Debtor | Tribune Television Holdings, Inc. | | x | x |
| Debtor | Tribune Television New Orleans, Inc. | | x | x |
| Debtor | Tribune Television Northwest, Inc. | | x | x |
| Debtor | ValuMall, Inc. | | x | x |
| Debtor | Virginia Community Shoppers, LLC | | x | x |
| Debtor | Virginia Gazette Companies, LLC | | x | x |
| Debtor | WATL, LLC | | x | x |
| Debtor | WCWN LLC | | x | x |
| Debtor | WDCW Broadcasting, Inc. | | x | x |
| Debtor | WGN Continental Broadcasting Company | | x | x |
| Debtor | WLVI Inc. | | x | x |
| Debtor | WPIX, Inc. | | x | x |
| Debtor | WTXX Inc. | | x | x |
| Debtors Attorneys | Cole, Scholz, Meisel, Forman & Leonard, P.A. | | x | |
| Debtors Attorneys | Edelman | x | | |
| Debtors Attorneys | Jenner & Block LLP | | | x |
| Debtors Attorneys | Jones Day | | | x |
| Debtors Attorneys | McDermott Will & Emery LLP | | x | |
| Debtors Attorneys | Morgan, Lewis & Bockius LLP | x | | |
| Debtors Attorneys | Nixon Peabody LLP | x | | |
| Debtors Attorneys | Paul Hastings Janofsky & Walker LLP | x | | x |
| Debtors Attorneys | Reed Smith LLP | | x | x |
| Debtors Attorneys | Seyfarth Shaw LLP | x | | |
| Debtors Attorneys | Sidley Austin LLP | | x | x |
| Debtors Other Professionals | Alvarez & Marsal North America LLC | | x | |
| Debtors Other Professionals | Deloitte & Touche LLP | | x | |
| Debtors Other Professionals | EPIQ Bankruptcy Solutions, LLC | x | | |
| Debtors Other Professionals | Lazard Freres & Co. | | x | x |
| Debtors Other Professionals | Navigant Consulting | | | x |
| Debtors Other Professionals | PricewaterhouseCoopers LLP | x | | |
| Debtors Officers | Alexa A. Bazanos | x | | |
| Debtors Officers | Alice T. Iskra | x | | |
| Debtors Officers | Andrea M. Pudliner | x | | |
| Debtors Officers | Andy Friedman | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Officers | Ann B. Wilson | x | | |
| Debtors Officers | Anne S. Kelly | x | | |
| Debtors Officers | Ardith Hilliard | x | | |
| Debtors Officers | Avido Khahaifa | x | | |
| Debtors Officers | Becky Brubaker | x | | |
| Debtors Officers | Bert Ortiz | x | | |
| Debtors Officers | Betsy D. Holden | x | | |
| Debtors Officers | Betty Ellen Berlamino | x | | |
| Debtors Officers | Bonnie B. Hunter | x | | |
| Debtors Officers | Bradley Good | x | | |
| Debtors Officers | Brian F. Litman | x | | |
| Debtors Officers | Brian L. Greenspun | x | | |
| Debtors Officers | Cam Trinh | x | | |
| Debtors Officers | Carolyn S. Hudspeth | x | | |
| Debtors Officers | Catherine A. Davis | x | | |
| Debtors Officers | Chandler Bigelow III | x | | |
| Debtors Officers | Chandler Bigelow III | x | | |
| Debtors Officers | Charles J. Sennet | x | | |
| Debtors Officers | Charles Ray | x | | |
| Debtors Officers | Charlotte H. Hall | x | | |
| Debtors Officers | Chris Avetisian | x | | |
| Debtors Officers | Chris Hochschild | x | | |
| Debtors Officers | Chris L. Fricke | x | | |
| Debtors Officers | Christopher C. Morrill | x | | |
| Debtors Officers | Christopher Manis | x | | |
| Debtors Officers | Clifford L. Teutsch | x | | |
| Debtors Officers | Cynthia Baker | x | | |
| Debtors Officers | Dan Mitrovich | x | | |
| Debtors Officers | Dana C. Hayes, Jr. | x | | |
| Debtors Officers | Daniel G. Kazan | x | | |
| Debtors Officers | Daniel G. Kazan | x | | |
| Debtors Officers | Daniel O'Sullivan | x | | |
| Debtors Officers | David A. Bennett | x | | |
| Debtors Officers | David A. Bucknor | x | | |
| Debtors Officers | David D. Williams | x | | |
| Debtors Officers | David P. Eldersveld | x | | |
| Debtors Officers | David P. Eldersveld | x | | |
| Debtors Officers | David R. Mayersky | x | | |
| Debtors Officers | Dawn M. Girocco | x | | |
| Debtors Officers | Denise Carlisle | x | | |
| Debtors Officers | Dennis G. O'Brien | x | | |
| Debtors Officers | Digby A. Solomon | x | | |
| Debtors Officers | Dinesh Shah | x | | |
| Debtors Officers | Don W. Meek | x | | |
| Debtors Officers | Donald J. Liebentritt | x | | |
| Debtors Officers | Donald J. Liebentritt | x | | |
| Debtors Officers | Doug Thomas | x | | |
| Debtors Officers | Earl R. Maucker | x | | |
| Debtors Officers | Ed Wilson | x | | |
| Debtors Officers | Ed Wolf | x | | |
| Debtors Officers | Eddy W. Hartenstein | x | | |
| Debtors Officers | Eric Laimins | x | | |
| Debtors Officers | Eric Meyrowitz | x | | |
| Debtors Officers | Ernie C. Gates | x | | |
| Debtors Officers | Feil M. Wong | x | | |
| Debtors Officers | Frank Wood | x | | |
| Debtors Officers | Gary Weitman | x | | |
| Debtors Officers | Gerald A. Spector | x | | |
| Debtors Officers | Gerould W. Kern | x | | |
| Debtors Officers | Gina Mazzaferri | x | | |
| Debtors Officers | Glenn G. Kranzley | x | | |
| Debtors Officers | Greg Healy | x | | |
| Debtors Officers | Gwen P. Murkami | x | | |
| Debtors Officers | Hank J. Hundemer | x | | |
| Debtors Officers | Harry A. Amsden | x | | |
| Debtors Officers | Henry M. Segal | x | | |
| Debtors Officers | Howard Greenberg | x | | |
| Debtors Officers | Jack D. Klunder | x | | |
| Debtors Officers | Jack Rodden | x | | |
| Debtors Officers | Jack Whisler | x | | |
| Debtors Officers | James Feher | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Officers | Jane E. Healy | x | | |
| Debtors Officers | Janice Jacobs | x | | |
| Debtors Officers | Jay Fehnel | x | | |
| Debtors Officers | Jeff Dorsey | x | | |
| Debtors Officers | Jeff Kapugi | x | | |
| Debtors Officers | JEFFREY CHANDLER | x | | |
| Debtors Officers | Jeffrey S. Berg | x | | |
| Debtors Officers | Jeffrey S. Levine | x | | |
| Debtors Officers | Jennifer DeKarz | x | | |
| Debtors Officers | Jerome P. Martin | x | | |
| Debtors Officers | Jerry L. Kersting | x | | |
| Debtors Officers | John D. Worthington, IV | x | | |
| Debtors Officers | John D'Orlando | x | | |
| Debtors Officers | John E. Zelenka | x | | |
| Debtors Officers | John F. Poelking | x | | |
| Debtors Officers | John Manzi | x | | |
| Debtors Officers | John P. Trainor | x | | |
| Debtors Officers | John R. Hendricks | x | | |
| Debtors Officers | John S. Moczulski | x | | |
| Debtors Officers | John S. Zabetakis | x | | |
| Debtors Officers | John T. O'Loughlin | x | | |
| Debtors Officers | Joseph A. Young | x | | |
| Debtors Officers | Judith Berman | x | | |
| Debtors Officers | Judy Juds | x | | |
| Debtors Officers | Juliana Jaoudi | x | | |
| Debtors Officers | Julie D. Anderson | x | | |
| Debtors Officers | Julie K. Xanders | x | | |
| Debtors Officers | Justo Rey | x | | |
| Debtors Officers | Kamran Izadapanah | x | | |
| Debtors Officers | Karen H. Flax | x | | |
| Debtors Officers | Karlene W. Goller | x | | |
| Debtors Officers | Kathy K. Thomson | x | | |
| Debtors Officers | Kelly F. Benson | x | | |
| Debtors Officers | Kevin C. Boyd | x | | |
| Debtors Officers | Kevin J. Connor | x | | |
| Debtors Officers | Kim A. McCleary LaFrance | x | | |
| Debtors Officers | Kim Johnson | x | | |
| Debtors Officers | Larry Delia | x | | |
| Debtors Officers | Laura L. Tarvainen | x | | |
| Debtors Officers | Laurence J. Sotsky | x | | |
| Debtors Officers | Lee Abrams | x | | |
| Debtors Officers | Lee Jones | x | | |
| Debtors Officers | Linda Hastings | x | | |
| Debtors Officers | Linda Schaible | x | | |
| Debtors Officers | Lou Tazioli | x | | |
| Debtors Officers | Lynne A. Segall | x | | |
| Debtors Officers | Lynne Adamson | x | | |
| Debtors Officers | Maggie Wilderotter | x | | |
| Debtors Officers | Marc Chase | x | | |
| Debtors Officers | Mark Shapiro | x | | |
| Debtors Officers | Marty Wilke | x | | |
| Debtors Officers | Micahel C. Foux | x | | |
| Debtors Officers | Michael D. Asher | x | | |
| Debtors Officers | Michael E. Weiner | x | | |
| Debtors Officers | Michael G. Bourgon | x | | |
| Debtors Officers | Michael Gart | x | | |
| Debtors Officers | Mike O'Connor | x | | |
| Debtors Officers | Myrna Ramirez | x | | |
| Debtors Officers | Nancy A. Meyer | x | | |
| Debtors Officers | Naomi B. Sachs | x | | |
| Debtors Officers | Owen Youngman | x | | |
| Debtors Officers | Pamela S. Pearson | x | | |
| Debtors Officers | Patricia A. Kolb | x | | |
| Debtors Officers | Patricia M. Carroll | x | | |
| Debtors Officers | Patrick M. Shanahan | x | | |
| Debtors Officers | Patrick Scott McKibben | x | | |
| Debtors Officers | Patti Cazeaux | x | | |
| Debtors Officers | Paul Mitnick | x | | |
| Debtors Officers | Peter D. Filice | x | | |
| Debtors Officers | Phil Doherty | x | | |
| Debtors Officers | Phil Waterman | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Officers | Randy Michaels | x | | |
| Debtors Officers | Randy Michaels | x | | |
| Debtors Officers | Ray Daley | x | | |
| Debtors Officers | Raymond J. Schonbak | x | | |
| Debtors Officers | Rich Gamble | x | | |
| Debtors Officers | Richard D. Molchany | x | | |
| Debtors Officers | Richard E. Inouye | x | | |
| Debtors Officers | Richard J. Graziano | x | | |
| Debtors Officers | Richard S. Feeney | x | | |
| Debtors Officers | Roaldo W. Moran | x | | |
| Debtors Officers | Rob T. Patton | x | | |
| Debtors Officers | Robert Christie | x | | |
| Debtors Officers | Robert Delo | x | | |
| Debtors Officers | Robert E. Bellack | x | | |
| Debtors Officers | Robert Gremillion | x | | |
| Debtors Officers | Robert R. Rounce | x | | |
| Debtors Officers | Robert S. Ramsey | x | | |
| Debtors Officers | Robertson Barrett | x | | |
| Debtors Officers | Robin Mulvaney | x | | |
| Debtors Officers | Robyn L. Motley | x | | |
| Debtors Officers | Roger A. Bare | x | | |
| Debtors Officers | ROGER GOODAN | x | | |
| Debtors Officers | Roger Williams | x | | |
| Debtors Officers | Russ Newton | x | | |
| Debtors Officers | Russ Stanton | x | | |
| Debtors Officers | Russell Gilbert | x | | |
| Debtors Officers | Sam DeFroscia | x | | |
| Debtors Officers | Samuel Zell | x | | |
| Debtors Officers | Scott G. Pompe | x | | |
| Debtors Officers | Scott Sullivan | x | | |
| Debtors Officers | Sean D. Compton | x | | |
| Debtors Officers | Sharon A. Silverman | x | | |
| Debtors Officers | Shaun M. Sheehan | x | | |
| Debtors Officers | Sheau-Ming Ross | x | | |
| Debtors Officers | Stephen D. Carver | x | | |
| Debtors Officers | Stephen G. Seidl | x | | |
| Debtors Officers | Stephen M. Budihas | x | | |
| Debtors Officers | Steve Bentz | x | | |
| Debtors Officers | Steve Charlier | x | | |
| Debtors Officers | Steve Farber | x | | |
| Debtors Officers | Steve Gable | x | | |
| Debtors Officers | Steve Tipple | x | | |
| Debtors Officers | Susan M. Mitchell | x | | |
| Debtors Officers | Theodore J. Biedron | x | | |
| Debtors Officers | Thomas E. Langmyer | x | | |
| Debtors Officers | Thomas F. Brown | x | | |
| Debtors Officers | Thomas G. Caputo | x | | |
| Debtors Officers | Thomas J. Anischik | x | | |
| Debtors Officers | Thomas S. Finke | x | | |
| Debtors Officers | Tim Dukes | x | | |
| Debtors Officers | Timothy F. Windsor | x | | |
| Debtors Officers | Timothy Franklin | x | | |
| Debtors Officers | Timothy J. Thomas | x | | |
| Debtors Officers | Timothy Koller | x | | |
| Debtors Officers | Timothy R. Kennedy | x | | |
| Debtors Officers | Timothy Ryan | x | | |
| Debtors Officers | Tom Davidson | x | | |
| Debtors Officers | Tom Nork | x | | |
| Debtors Officers | Tony Hunter | x | | |
| Debtors Officers | Travis B. Fuller | x | | |
| Debtors Officers | Vince Giannini | x | | |
| Debtors Officers | Vincent Casanova | x | | |
| Debtors Officers | Walter Mahoney | x | | |
| Debtors Officers | William A. Osborn | x | | |
| Debtors Officers | William C. O'Donovan | x | | |
| Debtors Officers | William C. Pate | x | | |
| Debtors Officers | William C. Trimarco | x | | |
| Debtors Officers | WILLIAM STINEHART, JR. | x | | |
| Debtors Officers Other Business Affiliations | Equity Group Investments LLC | x | | |
| Debtors Directors | Alexa A. Bazanos | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Directors | Alice T. Iskra | x | | |
| Debtors Directors | Andrea M. Pudliner | x | | |
| Debtors Directors | Andy Friedman | x | | |
| Debtors Directors | Ann B. Wilson | x | | |
| Debtors Directors | Anne S. Kelly | x | | |
| Debtors Directors | Ardith Hilliard | x | | |
| Debtors Directors | Avido Khahalfa | x | | |
| Debtors Directors | Becky Brubaker | x | | |
| Debtors Directors | Bert Ortiz | x | | |
| Debtors Directors | Betsy D. Holden | x | | |
| Debtors Directors | Betty Ellen Berlamino | x | | |
| Debtors Directors | Bonnie B. Hunter | x | | |
| Debtors Directors | Bradley Good | x | | |
| Debtors Directors | Brian F. Litman | x | | |
| Debtors Directors | Brian L. Greenspun | x | | |
| Debtors Directors | Cam Trinh | x | | |
| Debtors Directors | Carolyn S. Hudspeth | x | | |
| Debtors Directors | Catherine A. Davis | x | | |
| Debtors Directors | Chandler Bigelow III | x | | |
| Debtors Directors | Chandler Bigelow III | x | | |
| Debtors Directors | Charles J. Sennet | x | | |
| Debtors Directors | Charles Ray | x | | |
| Debtors Directors | Charlotte H. Hall | x | | |
| Debtors Directors | Chris Avetisian | x | | |
| Debtors Directors | Chris Hochschild | x | | |
| Debtors Directors | Chris L. Fricke | x | | |
| Debtors Directors | Christopher C. Morrill | x | | |
| Debtors Directors | Christopher Manis | x | | |
| Debtors Directors | Clifford L. Teuisch | x | | |
| Debtors Directors | Cynthia Baker | x | | |
| Debtors Directors | Dan Mitrovich | x | | |
| Debtors Directors | Dana C. Hayes, Jr. | x | | |
| Debtors Directors | Daniel G. Kazan | x | | |
| Debtors Directors | Daniel G. Kazan | x | | |
| Debtors Directors | Daniel O'Sullivan | x | | |
| Debtors Directors | David A. Bennett | x | | |
| Debtors Directors | David A. Bucknor | x | | |
| Debtors Directors | David D. Williams | x | | |
| Debtors Directors | David P. Eldersveld | x | | |
| Debtors Directors | David P. Eldersveld | x | | |
| Debtors Directors | David R. Mayersky | x | | |
| Debtors Directors | Dawn M. Girocco | x | | |
| Debtors Directors | Denise Carlisle | x | | |
| Debtors Directors | Dennis G. O'Brien | x | | |
| Debtors Directors | Digby A. Solomon | x | | |
| Debtors Directors | Dinesh Shah | x | | |
| Debtors Directors | Don W. Meek | x | | |
| Debtors Directors | Donald J. Liebentritt | x | | |
| Debtors Directors | Donald J. Liebentritt | x | | |
| Debtors Directors | Doug Thomas | x | | |
| Debtors Directors | Earl R. Maucker | x | | |
| Debtors Directors | Ed Wilson | | x | |
| Debtors Directors | Ed Wolf | x | | |
| Debtors Directors | Eddy W. Hartenstein | x | | |
| Debtors Directors | Eric Lalmins | x | | |
| Debtors Directors | Eric Meyrowitz | x | | |
| Debtors Directors | Ernie C. Gates | x | | |
| Debtors Directors | Feli M. Wong | x | | |
| Debtors Directors | Frank Wood | x | | |
| Debtors Directors | Gary Weitman | x | | |
| Debtors Directors | Gerald A. Spector | x | | |
| Debtors Directors | Gerould W. Kern | x | | |
| Debtors Directors | Gina Mazzaferri | x | | |
| Debtors Directors | Glenn G. Kranzley | x | | |
| Debtors Directors | Greg Healy | x | | |
| Debtors Directors | Gwen P. Murkami | x | | |
| Debtors Directors | Hank J. Hundemer | x | | |
| Debtors Directors | Harry A. Amsden | x | | |
| Debtors Directors | Henry M. Segal | x | | |
| Debtors Directors | Howard Greenberg | x | | |
| Debtors Directors | Jack D. Klunder | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Directors | Jack Rodden | x | | |
| Debtors Directors | Jack Whisler | x | | |
| Debtors Directors | James Feher | x | | |
| Debtors Directors | Jane E. Healy | x | | |
| Debtors Directors | Janice Jacobs | x | | |
| Debtors Directors | Jay Fehnel | x | | |
| Debtors Directors | Jeff Dorsey | x | | |
| Debtors Directors | Jeff Kapugi | x | | |
| Debtors Directors | JEFFREY CHANDLER | x | | |
| Debtors Directors | Jeffrey S. Berg | x | | |
| Debtors Directors | Jeffrey S. Levine | x | | |
| Debtors Directors | Jennifer DeKarz | x | | |
| Debtors Directors | Jerome P. Martin | x | | |
| Debtors Directors | Jerry L. Kersting | x | | |
| Debtors Directors | John D. Worthington, IV | x | | |
| Debtors Directors | John D'Orlando | x | | |
| Debtors Directors | John E. Zelenka | x | | |
| Debtors Directors | John F. Poelking | x | | |
| Debtors Directors | John Manzi | x | | |
| Debtors Directors | John P. Trainor | x | | |
| Debtors Directors | John R. Hendricks | x | | |
| Debtors Directors | John S. Moczulski | x | | |
| Debtors Directors | John S. Zabetakis | x | | |
| Debtors Directors | John T. O'Loughlin | x | | |
| Debtors Directors | Joseph A. Young | x | | |
| Debtors Directors | Judith Berman | x | | |
| Debtors Directors | Judy Juds | x | | |
| Debtors Directors | Juliana Jaoudi | x | | |
| Debtors Directors | Julie D. Anderson | x | | |
| Debtors Directors | Julie K. Xanders | x | | |
| Debtors Directors | Justo Rey | x | | |
| Debtors Directors | Kamran Izadapanah | x | | |
| Debtors Directors | Karen H. Flax | x | | |
| Debtors Directors | Karlene W. Goller | x | | |
| Debtors Directors | Kathy K. Thomson | x | | |
| Debtors Directors | Kelly F. Benson | x | | |
| Debtors Directors | Kevin C. Boyd | x | | |
| Debtors Directors | Kevin J. Connor | x | | |
| Debtors Directors | Kim A. McCleary LaFrance | x | | |
| Debtors Directors | Kim Johnson | x | | |
| Debtors Directors | Larry Della | x | | |
| Debtors Directors | Laura L. Tarvainen | x | | |
| Debtors Directors | Laurence J. Sofsky | x | | |
| Debtors Directors | Lee Abrams | x | | |
| Debtors Directors | Lee Jones | x | | |
| Debtors Directors | Linda Hastings | x | | |
| Debtors Directors | Linda Schaible | x | | |
| Debtors Directors | Lou Tazioli | x | | |
| Debtors Directors | Lynne A. Segall | x | | |
| Debtors Directors | Lynne Adamson | x | | |
| Debtors Directors | Maggie Wilderotter | x | | |
| Debtors Directors | Marc Chase | x | | |
| Debtors Directors | Mark Shapiro | x | | |
| Debtors Directors | Marty Wilke | x | | |
| Debtors Directors | Micahel C. Foux | x | | |
| Debtors Directors | Michael D. Asher | x | | |
| Debtors Directors | Michael E. Weiner | x | | |
| Debtors Directors | Michael G. Bourgon | x | | |
| Debtors Directors | Michael Gart | x | | |
| Debtors Directors | Mike O'Connor | x | | |
| Debtors Directors | Myrne Ramirez | x | | |
| Debtors Directors | Nancy A. Meyer | x | | |
| Debtors Directors | Naomi B. Sachs | x | | |
| Debtors Directors | Owen Youngman | x | | |
| Debtors Directors | Pamela S. Pearson | x | | |
| Debtors Directors | Patricia A. Kolb | x | | |
| Debtors Directors | Patricia M. Carroll | x | | |
| Debtors Directors | Patrick M. Shanahan | x | | |
| Debtors Directors | Patrick Scott McKibben | x | | |
| Debtors Directors | Patti Cazeaux | x | | |
| Debtors Directors | Paul Mitnick | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Directors | Peter D. Filice | x | | |
| Debtors Directors | Phil Doherty | x | | |
| Debtors Directors | Phil Waterman | x | | |
| Debtors Directors | Randy Michaels | x | | |
| Debtors Directors | Randy Michaels | x | | |
| Debtors Directors | Ray Daley | x | | |
| Debtors Directors | Raymond J. Schonbak | x | | |
| Debtors Directors | Rich Gamble | x | | |
| Debtors Directors | Richard D. Molchany | x | | |
| Debtors Directors | Richard E. Inouye | x | | |
| Debtors Directors | Richard J. Graziano | x | | |
| Debtors Directors | Richard S. Feeney | x | | |
| Debtors Directors | Roaldo W. Moran | x | | |
| Debtors Directors | Rob T. Patton | x | | |
| Debtors Directors | Robert Christie | x | | |
| Debtors Directors | Robert Delo | x | | |
| Debtors Directors | Robert E. Bellack | x | | |
| Debtors Directors | Robert Gremillion | x | | |
| Debtors Directors | Robert R. Rounce | x | | |
| Debtors Directors | Robert S. Ramsey | x | | |
| Debtors Directors | Robertson Barrett | x | | |
| Debtors Directors | Robin Mulvaney | x | | |
| Debtors Directors | Robyn L. Motley | x | | |
| Debtors Directors | Roger A. Bare | x | | |
| Debtors Directors | ROGER GOODAN | x | | |
| Debtors Directors | Roger Williams | x | | |
| Debtors Directors | Russ Newton | x | | |
| Debtors Directors | Russ Stanton | x | | |
| Debtors Directors | Russell Gilbert | x | | |
| Debtors Directors | Sam DeFroscia | x | | |
| Debtors Directors | Samuel Zell | x | | |
| Debtors Directors | Scott G. Pompe | x | | |
| Debtors Directors | Scott Sullivan | x | | |
| Debtors Directors | Sean D. Compton | x | | |
| Debtors Directors | Sharon A. Silverman | x | | |
| Debtors Directors | Shaun M. Sheehan | x | | |
| Debtors Directors | Sheau-Ming Ross | x | | |
| Debtors Directors | Stephen D. Carver | x | | |
| Debtors Directors | Stephen G. Seidl | x | | |
| Debtors Directors | Stephen M. Budihas | x | | |
| Debtors Directors | Steve Bentz | x | | |
| Debtors Directors | Steve Charlier | x | | |
| Debtors Directors | Steve Farber | x | | |
| Debtors Directors | Steve Gable | x | | |
| Debtors Directors | Steve Tippie | x | | |
| Debtors Directors | Susan M. Mitchell | x | | |
| Debtors Directors | Theodore J. Biedron | x | | |
| Debtors Directors | Thomas E. Langmyer | x | | |
| Debtors Directors | Thomas F. Brown | x | | |
| Debtors Directors | Thomas G. Caputo | x | | |
| Debtors Directors | Thomas J. Anischik | x | | |
| Debtors Directors | Thomas S. Finke | x | | |
| Debtors Directors | Tim Dukes | x | | |
| Debtors Directors | Timothy F. Windsor | x | | |
| Debtors Directors | Timothy Franklin | x | | |
| Debtors Directors | Timothy J. Thomas | x | | |
| Debtors Directors | Timothy Koller | x | | |
| Debtors Directors | Timothy R. Kennedy | x | | |
| Debtors Directors | Timothy Ryan | x | | |
| Debtors Directors | Tom Davidson | | x | |
| Debtors Directors | Tom Nork | x | | |
| Debtors Directors | Tony Hunter | x | | |
| Debtors Directors | Travis B. Fuller | x | | |
| Debtors Directors | Vince Giannini | x | | |
| Debtors Directors | Vincent Casanova | x | | |
| Debtors Directors | Walter Mahoney | x | | |
| Debtors Directors | William A. Osborn | x | | |
| Debtors Directors | William C. O'Donovan | x | | |
| Debtors Directors | William C. Pate | x | | |
| Debtors Directors | William C. Trimarco | x | | |
| Debtors Directors | WILLIAM STINEHART, JR. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Debtors Major Shareholders | Tribune Employee Stock Ownership Plan | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | 1798 Relative Value Master Fund Ltd. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | 40/88 Advisors Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | ABN AMRO Holding NV | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | ABP Investments US Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Aegon USA Investment Management | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | AIG Global Investment Corp. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Airlie Opportunity Capital Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Aladdin Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Alcentra Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Allstate Investment Management Company | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Amida Capital Management II, LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Anchorage Capital Group LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Angelo Gordon & Co LP | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Ares Management LP | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Avenue Advisors LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Babson Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Banc Investment Group LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Bank of America N.A. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Barclays Bank plc | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Basso Capital Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Bear Stearns & Co., Inc | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Bear Stearns Asset Management | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Blackstone Debt Advisors LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | BLT 39 LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Blue Mountain Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Briscoe Capital Management | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Callidus Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Canadian Imperial Bank of Commerce | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Canaras Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Canyon Capital Advisors LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Capitalsource Finance LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Carlyle Investment Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Carval Investors LLC | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Chicago Fundamental Investment Partners LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Chimney Rock Value Fund, L.P. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Churchull Pacific Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | CIT Group Incorporated | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Citicorp North America Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Citigroup Financial Products Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Claren Road Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Clinton Group Inc. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Columbus Nova Credit Investments Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Contrarian Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Credit Suisse Asset Management | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Credit Suisse Group AG | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Cypresstree Investment Management Co Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Davidson Kempner Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | DC Funding Partners LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Deerfield Capital Management LLC | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Delaware Management Business Trust | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Deutsche Bank AG | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Deutsche Investment Management Americas Inc. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | DiMaio Ahmad Capital LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Drake Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Dry Brook Credit Opportunities Master Fund Ltd. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Duquesne Capital Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Eaton Vance Mgmt | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | EBF & Associates LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Elliott Management Corporation | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Epic Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Farallon Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Feingold OKeeffe Capital LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Fidelity Investment/Fidelity Mutual Fund Comp | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Fidelity Investments | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | FIG LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Firstlight Financial Corp. | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Four Corners Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Franklin Advisers Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Franklin Mutual Advisers LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Franklin Templeton Inv Mgmt Ltd | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Fraser Sullivan Investment Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | GE Asset Management Inc. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | General Electric Capital Corporation | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | GM Pension Plan | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Goldentree Asset Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Goldman Sachs Asset Management LP | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Goldman Sachs Group Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Greywolf Capital Management LP | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Gruss Asset Management Limited Partnership | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | GSO Capital Partners LP | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Guggenheim Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Gulf Stream Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Halcyon Structured Asset Management LP | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harbert Management Corporation | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harbourmaster CLO 10 B V | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harbourmaster CLO 7 BV | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harbourmaster CLO 9 B V | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harbourmaster Pro Rata CLO 2 B V | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Harch Capital Management | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Hartford Investment Management Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Highland Capital Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Hillmark Capital Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | IKB Capital Corporation | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | ING Investment Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Invesco Inst NA Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | JD Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Jefferson Pilot Financial Insurance Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | John Hancock A/C 62 JH High Yield Fund (99140) | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | John Hancock Financial Services Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | JP Morgan BK Branch - 0802 | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | JP Morgan Chase Bank, N.A. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Kingsland Capital Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | KKR Financial Corporation | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Knighthead Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Latigo Partners LP | | | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Lehman Brothers Commercial Bank | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Lehman Brothers Holdings Inc. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Levine Leichtman Capital Partners Inc. | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Littlejohn & Company | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Loews Corporation | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Loomis Sayles & Company LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Lufkin Advisors LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Lyon Capital Management | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Marathon Asset Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Massachusetts Financial Services Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | McDonnell Investment Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Meritage Fund Limited | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Merrill Lynch & Co. Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Metropolitan Life Insurance Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Metropolitan West Asset Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | MJX Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Moore Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Morgan Stanley | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Morgan Stanley Investment Co Niston BV | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Morgan Stanley Investment Management Garda BV | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Morgan Stanley Investment Management Inc. as AgtINCAS AGT | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Morgan Stanley Investment Management Mezzano B V | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Mountain Capital Advisors | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | MSD Capital LP | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | National City Corporation | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Neuberger Berman LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | New York Life Insurance Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | New York Life Investment Management | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Newstart Factors Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Nicholas-Applegate Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Nomura Corporate Research & Asset Management Inc. | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Nomura Corporate Research & Asset Mgmt | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Normandy Hill Capital LP | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Oak Hill Advisors LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Oaktree Capital Management LP | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Octagon Credit Investors LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Onex Credit Partners LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Oppenheimer Funds Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Orchid Investments, LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Ore Hill Part LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | OZ Management LP | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Pacific Investment Management Company | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Paloma Partners Management Co Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Pangaea Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Par IV Capital Management LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Patriarch Partners LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Pentwater Capital Management L P | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Perry Corporation | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Phoenix Investment Counsel | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Pioneer Investment Management Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Plainfield Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | PPM America Incorporated | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Primus Asset Management Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Princeton Advisory Group Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Prudential Investment Management Inc | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Putnam Advisory Co LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Putnam Investment Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Quadrangle Group LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | R3 Capital Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Rabobank Intl | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Raven Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Renaissance Reinsurance Limited | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Riversource Investments LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Royal Bank of Scotland plc | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Sandell Asset Management Corporation | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Sandelman Partners LP | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Sankaty Advisors Bain Capital | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Satellite Asset Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Scotia Capital Inc. | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Security Management Company | | | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | SEIX Investment Advisors Incorporation | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Seneca Capital Management | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Serengeti Asset Management Limited Partnership | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Silver Point Capital LP FSG | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Silvermine Capital Management LLC | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Smithwood Partners LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Societe Generale | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Stichting Pensioenfonds ABP Portfolio 1211 | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Stone Harbor Investment Partners LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Stone Tower Debt Advisors LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Strategic Value Partners LLC | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Sumitomo Mitsui Banking Corporation | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Sunrise Partners Limited Partnership | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Swiss Reinsurance Company Ltd. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Symphony Asset Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | T2 Advisers LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Taconic Capital Advisors LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Tall Tree Investment Management LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Talon Asset Management Inc. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | TCW Asset Management Co. | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | The Norinchukin Bank | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Trimaran Advr LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Trusco-Ridgeworth Funds High Income Fund | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Trusco-Ridgeworth Funds Strategic Income Fund | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | UBS AG | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | UBS OConnor LLC | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Van Kampen Asset Management | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Varde Partners Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Venor Capital Management LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Viking Global Performance LLC | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | W R Huff Asset Management | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Wachovia Bank National Association | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Wells Capital Management Incorporated | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Wells Fargo Foothill Inc. | | x | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | West Gate Horizons Advisors LLC | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|:---:|:---:|:---:|
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Western Asset Management | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | WestLB AG | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Whitehorse Capital Partners LP | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Wilmington Trust Company Delaware | | x | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | York Capital Management | | | x |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Z Capital Senior Debt Fund L P | x | | |
| All Substantial Unsecured Bondholders or Lenders (Unsecured Lenders) | Zohar II 2005-1 Ltd. | x | | |
| All Substantial Unsecured Bondholders or Lenders Attorneys | Davis Polk & Wardwell | | x | |
| All Indenture Trustees | Deutsche Bank National Trust Company | | | x |
| All Indenture Trustees | Wilmington Trust Co | | x | |
| Official Statutory Committees members | Deutsche Bank Trust Company Americas | | | x |
| Official Statutory Committees members | JPMorgan Chase Bank N.A. | | | x |
| Official Statutory Committees members | Merrill Lynch Capital Corporation | | x | x |
| Official Statutory Committees members | Pension Benefit Guarantee Corporation | x | | |
| Official Statutory Committees members | Warner Bros. Television | | | x |
| Official Statutory Committees members | Washington-Baltimore Newspaper Guild Local 32035 | x | | |
| Official Statutory Committees members | William Niese | x | | |
| Official Statutory Committees Attorneys | Chadbourne & Park LLP | | x | x |
| Official Statutory Committees Attorneys | Landis Rath & Cobb LLP | x | | |
| Official Statutory Committees Other Professionals | AlixPartners LLP | | | x |
| Official Statutory Committees Other Professionals | Moelis & Company LLC | | | x |
| Thirty Largest Unsecured Creditors | Abitibi Consolidated | | x | |
| Thirty Largest Unsecured Creditors | Barclays Capital | x | | |
| Thirty Largest Unsecured Creditors | Bowater Inc | | x | x |
| Thirty Largest Unsecured Creditors | Buena Vista Entertainment Inc. | x | | |
| Thirty Largest Unsecured Creditors | Deutsche Bank National Trust Company | | | x |
| Thirty Largest Unsecured Creditors | Horst Bergman | | | x |
| Thirty Largest Unsecured Creditors | J.P. Morgan Chase Bank, N.A. | | | x |
| Thirty Largest Unsecured Creditors | Mark Willes | x | | |
| Thirty Largest Unsecured Creditors | Merrill Lynch Capital Corporation | | x | x |
| Thirty Largest Unsecured Creditors | NBC Universal Domestic Television | x | | |
| Thirty Largest Unsecured Creditors | Nielsen Media Research | | | x |
| Thirty Largest Unsecured Creditors | Paramount Pictures Corporation | | | x |
| Thirty Largest Unsecured Creditors | Raymond Jansen Jr. | x | | |
| Thirty Largest Unsecured Creditors | Robert Erburu | x | | |
| Thirty Largest Unsecured Creditors | Sony Pictures Television | | | x |
| Thirty Largest Unsecured Creditors | SP Newsprint Company | | x | x |
| Thirty Largest Unsecured Creditors | Tower DC, LLC | x | | |
| Thirty Largest Unsecured Creditors | Tower EH, LLC | x | | |
| Thirty Largest Unsecured Creditors | Tower JK, LLC | x | | |
| Thirty Largest Unsecured Creditors | Tower MS, LLC | x | | |
| Thirty Largest Unsecured Creditors | Tower PT, LLC | x | | |
| Thirty Largest Unsecured Creditors | Twentieth Television | x | | |
| Thirty Largest Unsecured Creditors | Warner Brothers Television | | | x |
| Other Significant Parties-in-Interest | Summit Westline Investors, LLC | x | | |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Banc Of America Securities Llc | x | | |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Bank Of America, N.A. | x | | |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Barclays Bank Plc | x | | |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Citicorp North America, Inc. | | x | x |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Citigroup Global Markets, Inc. | | x | x |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Jpmorgan Chase Bank, N.A. | | | x |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Jpmorgan Securities, Inc. | | | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Merrill Lynch Capital Corporation | | x | x |
| Other Significant Parties-in-Interest (Agents Under Credit Agreements) | Merrill, Lynch, Pierce, Fenner & Smith, Inc. | x | | |
| Other Significant Parties-in-Interest (Counterparties To Hedging Agreements) | Barclays Capital | x | | |
| Other Significant Parties-in-Interest (Counterparties To Recent Significant Asset Dispositions) | Freedom Communications, Inc. | | x | |
| Other Significant Parties-in-Interest (Counterparties To Recent Significant Asset Dispositions) | Gannett Co., Inc. | | x | x |
| Other Significant Parties-in-Interest (Counterparties To Recent Significant Asset Dispositions) | Hearst Corporation | x | | |
| Other Significant Parties-in-Interest (Counterparties To Recent Significant Asset Dispositions) | Sunbeam Television Corporation | x | | |
| Other Significant Parties-in-Interest (Counterparties To Recent Significant Asset Dispositions) | Target Media Partners | x | | |
| Other Significant Parties-in-Interest (Entities Involved In Leveraged Esop Transactions) | Egi-Trb, L.L.C. | x | | |
| Other Significant Parties-in-Interest (Entities Involved In Leveraged Esop Transactions) | Goldman Sachs & Co | | x | x |
| Other Significant Parties-in-Interest (Entities Involved In Leveraged Esop Transactions) | Sam Investment Trust | x | | |
| Other Significant Parties-in-Interest (Entities Involved In Leveraged Esop Transactions) | Tesop Corporation | x | | |
| Other Significant Parties-in-Interest (Entities Involved In Leveraged Esop Transactions) | Tribune Employee Stock Ownership Plan | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | California Independent Postal Systems | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Careerbuilder, Llc | | | x |
| Other Significant Parties-in-Interest (Equity Method Investments) | Classified Ventures, Llc | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Comcast Sportsnet Chicago | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Consumer Networks | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Legacy.Com | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Metromix, Llc | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Shoplocal, Llc | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Television Food Network, G.P. | x | | |
| Other Significant Parties-in-Interest (Equity Method Investments) | Topix, Llc | x | | |
| Other Significant Parties-in-Interest (ESOP Trustee) | GreatBanc Trust Company | x | | |
| Other Significant Parties-in-Interest (Joint Venture Partners) | Gannett Co., Inc. | | x | x |
| Other Significant Parties-in-Interest (Joint Venture Partners) | Medianews Group, Inc. | | | x |
| Other Significant Parties-in-Interest (Joint Venture Partners) | Microsoft Corporation | | x | x |
| Other Significant Parties-in-Interest (Joint Venture Partners) | The Mcclatchy Co., Inc. | x | | |
| Other Significant Parties-in-Interest (Major Holders Of Phones) | Camden Partners | | | x |
| Other Significant Parties-in-Interest (Major Holders Of Phones) | Citadel Investment Group | | | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Major Holders Of Phones) | Sandeiman | x | | |
| Other Significant Parties-in-Interest (Major Holders Of Phones) | Suttonbrook | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Aaron Wider | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Abner Boy Shepard Holy Ghost | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Albert E. Brooke | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Allen Francisco | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Andrea Dworkin | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Andrew Faggio | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Andy Martin | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Angel T. Haldeman | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Anthony Conte | | x | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | AP&J | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | AR Sandri Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Arco Gas Station | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Artini-Zak Corporation, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Barbara Roessner | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Beneficial Innovations, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Bijan Kohanzad | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Bill McNair | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Body Solutions of Manhattan | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Bonnie Cronin | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Bruce Mickelson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Cbs Broadcasting Inc. | | | x |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Cbs Radio Inc. | | | x |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Charlemagne Louis-Charles | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Charles Evans | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | City of New Haven | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | College Point Restaurant, Corp. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Corie Brown | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Crab House of Douglaston, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Curtis Wallace | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Dan Neil | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Danial Mazurkewicz | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Daniel Kohanof | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | David Kissi | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Derrick Bell | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Donald Sylvester | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Douglas M. Guetzloe | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Dylan Frederick Baibon Glorioso | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | East Coast Preferred Properties, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | East Coast Realtors, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Eastern Financial Florida Credit Union | | x | x |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Edd Arnett | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Edgar Wilburn Jr. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Edward Arnett Johnson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Edward Roeder | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Electronic Imaging Systems of America, Inc. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| | | | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Elite Staffing Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | ET Week Publication, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Felicidad Balbon | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | First United Bank; Illinois Banking Corporate | | x | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gallagher's Ii | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gary Grant | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gary Libow | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gary W. Garcia | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | George Liberman Enterprises, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | George Spanos | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gerald Breimon | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gerald Posner | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Geraldine A. Feichtel | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gerard E. Schultz | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Grace M. Moreo | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Greenberg & Stein, LLP | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Gutman Pain/Accident Center Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Henry Weinstein | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Herschel Collins | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Hillard J. Quint | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | HTFC Corporation | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Hustedt Chevrolet, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Hy-Ko Products Company | x | | |

| Category | PiiL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Isaiah Shannon | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jack Nelson | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | Jacqueline Espinal | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | James Allen | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | James Gleick | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jay Feidman | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jay R. Serkin | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | Jayne Clement | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jennifer Faggio | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jesse Jackson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jessy Thomas | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jill Hueckei | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jo Anne Lawson | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | John Gailant | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | John William Smithers, Sr. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Jon Robert Van Sensus | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | Joseph DeSoia | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Joseph Mauro | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Joyce Johnson | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | Julie Ficht | x | | |
| Other Significant Parties-in-interest (Parties To Significant Litigation With The Debtors) | Keiffer J. Mitchell, Sr | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Kevin Ealy | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Kevin Grams | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Letty Cottin Pogrebin | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Lisa M. Leger | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Loretta Grant | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Louis Muscari | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Luqman H Mohammed | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Lynn Brenner | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Mamie Hector | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Marie Winn | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Marion Milton | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Mary Ann Sherman | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Medically Speaking LLC | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Michael Castleman, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Michael Cordts | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Michael E. Gutman | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Michael W. Owens | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Mike Gutman MD | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Miriam Raftery | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Myron Levin | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Neala Olson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Norton Giffis | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | P/K Associates, inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Pamela Peyck | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Parallel Productions, inc. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Park Avenue Aesthetic Surgery, PC | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Parren J. Mitchell | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Paul Newer | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Paula McDonald | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Pearl Evans | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Penelope Henderson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | R. L. Wilson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Rachel De Maso | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Realty Executives | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Reed Simpson | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Richard Shannon | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Robert E. Treuhaft and Jessica L. Treuhaft Trust | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Robert Lacey | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Robin Vaughan | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Ron Bon Pub, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Ronald Hayman | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Scott A. Russo | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Sean Serrao | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Shirley Ann Smithers | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Simone Ano Conigliaro | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Southern Connecticut Newspapers, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Spectron Site Group | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Tac Catering, Inc. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| | | | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Taki House, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | The Authors Guild, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | The Bikini Network.com | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | The National Writers Union | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Thomas L. Knight | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Tom Dunkel | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | TV Guide Online, LLC | | x | x |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Tweeter Home Entertainment Group | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | TWTR, Inc. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | U.S. Bank National Association | | | x |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Victor Cruz | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Victoria Vogel | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | VW Sterling Corporation | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Walter Roche, Jr. | x | | |
| Other Significant Parties-in-Interest (Parties To Significant Litigation With The Debtors) | Warren Beatty | x | | |
| Other Significant Parties-in-Interest Attorneys and other Professionals retained in connection with | FTI Consulting | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases (Leases) | Mosby, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | 1920 Colorado, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | 20 Church Street, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | 220 News Building LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | 220 News LLC c/o The Witkoff Group LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | 9090 Enterprises | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | BBL Tribune, Inc. | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | BKM 3128 Redhill Associates LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Boca Warehousing, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Braver and Sauer Investments | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Canyon Corporate Centre, Ltd. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Carson Dominguez Properties, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Catellus Development Corporation | | x | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Davis Partners LLC | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Duke Realty Limited Partnership | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Duke York Road, LLC c/o Duke Realty Corp. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Forest Lawn Cemetery Association | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Galleria Operating Co., LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | IAC Aviation LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Isadore Samuel Socransky & Socransky Family Trust | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | J. Ahzaraba Investors LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | JKS-CMFV, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | L&L Holding Company, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | L&L Realty LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | L/B Via Colinas LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Lauderdale River, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | LIT Finance L.P. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Luc and Shirley Matilla | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Majestic Realty Co. and Yorba Linda Sub, LLC | | | x |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | N&S Butters | x | | |

| Category | PIIL | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | North Hills Industrial Park, Inc. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Northlake Property, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Penzance 2121 Wisconsin Ave., LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Realty Associates Fund VIII LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Richard and Grace Dickman | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | RR Crane Investment Corporation | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Santa Monica HSR L.P. c/o The Beacon Companies | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Symbiont, L.P. | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | The Cracchiolo Group, LP | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | The J. David Gladstone Institutes | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | The Richlar Partnership | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Trio Associates | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Viola Industries | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Vornado 330 West 34th Street LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Wells Fargo Bank, N.A. | | x | x |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Woodies Holding, LLC | x | | |
| Parties to the Debtors Significant Executory Contracts and Leases (Significant Landlords Of The Debt | Zellwin Farms Company | x | | |

# EXHIBIT C--
## LITIGATION MATTERS INVOLVING PARTIES IN INTEREST AND E&Y LLP

# EXHIBIT C--
## Litigation Matters Involving Parties in Interest and E&Y LLP

1.  ABN AMRO Inc.: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895).

2.  AIG Annuity Insurance Company, AIG Life Insurance Company, AIG Strategic Bond Fund, American International Group Retirement Plan, and AIG US High Yield Bond Fund are plaintiffs against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

3.  Bank of America: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 1:08-cv-3086); is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 07 MDL No. 1902); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049).

4.  Bear Stearns & Co. is a co-defendant with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895).

5.  Citigroup, and Citigroup Global Markets Inc.: are a co-defendants with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895); are a co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); and are a co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-3161).

6.  Credit Suisse: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 1:08-cv-3086); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 07 MDL No. 1902).

7.  Credit Suisse Syndicated Loan Fund, and Credit Suisse High Yield Fund are plaintiffs against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

8.  Deloitte & Touche is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the United States Virgin Islands (Case No. 1:08-cv-00107).

9.  Deutsche Bank AG and Deutsche Bank Securities, Inc.: are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 07 MDL No. 1902); are co-defendants with, among others, E&Y LLP in a litigation pending in the District Court of Harris County, Texas 113th Judicial District (Case No. 2004-14400); and are plaintiffs with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 1:08-cv-3086).

10.  General Motors Asset Management is a plaintiff against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

11.  Goldman Sachs is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the District of New Jersey (08-Civ-920-JAP-JJH).

12.  ING Investment Management LLC, and ING Financial Holdings Corporation are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049).

13.  JPMorgan Securities Inc., JP Morgan Chase and Co., J.P. Morgan Chase Bank, N.A, and JP Morgan Chase & Company f/k/a Chase Manhattan Bank & Trust Company: are co-defendants with, among others, E&Y LLP in a litigation pending in the Supreme Court of the State of New York, County of New York (Case No. 04114728); are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 1:08-cv-3086); are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the District of New Jersey (Case No. 08-Civ-920-JAP-JJH); are co-defendants with, among others, E&Y LLP in a litigation pending in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana (Case No. 654-939); are co-defendants with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895); and are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049).

14.  Lehman Brothers First Trust Income Opportunity Fund Inc., Lehman Brothers Alpha Funds PLC for Lehman Brothers U.S. High Yield Fund, Lehman Brothers High Yield Bond Fund LLC, Neuberger Berman Advisers Management Trust for Lehman Brothers High Income Bond Fund, Lehman Brothers Income Funds for Lehman Brothers High Income Bond Fund, and Lehman Brothers Income Funds for Lehman Brothers Strategic Income Fund are plaintiffs against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

15.  Merrill Lynch Pierce, Fenner & Smith Inc.: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Eastern District of Virginia (Case No. 1:06-cv-00077); is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-3161).

16.  Morgan Stanley: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Eastern District of Virginia (Case No. 1:06-cv-00077); is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); is a co-defendant with, among others, E&Y LLP in a litigation pending in the Appellate Court of Illinois, First Judicial District in appeal from a litigation pending in the Circuit Court of Cook County, Illinois (Case No. 02 CH 16854); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-3161).

17.  Neuberger Berman, LLC is a plaintiff against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

18.  New York Life Insurance and Annuity Corporation, New York Life Insurance Company, New York Life Insurance Company High Yield Separate Account, and New York Life Investment Management are plaintiffs against E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414).

19.  Oppenheimer Acquisition Corporation, and Oppenheimer Funds, Inc. are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 08-CV-11359).

20.  Oppenheimer Acquisition Corporation is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 08-CV-11141).

21. Pioneer Investment Management USA, Inc. is a co-defendant with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895).

22. PricewaterhouseCoopers LLP: is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 1:08-cv-3086); is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 07 MDL No. 1902); is a co-defendant with, among others, E&Y LLP in a litigation pending in the State of New Mexico, County of Santa Fe, First Judicial District Court (Case No. D-101-CV-2008-01895); and is a co-defendant with, among others, E&Y LLP in a litigation pending in the United States District Court for the Eastern District of Washington (Case No. CV-04-025-FVS).

23. Sidley Austin LLP is a co-defendant with, among others, E&Y LLP in a litigation pending in the District Court of Harris County, Texas 113th Judicial District (Case No. 2004-14400).

24. Wachovia Securities, Wachovia Capital Markets, and Wachovia Corporation.: are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:08-cv-1414); are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Eastern District of Virginia (Case No. 1:06-cv-00077); are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court for the Southern District of New York (Case No. 09-Civ-01049); and are co-defendants with, among others, E&Y LLP in a litigation pending in the United States District Court Southern District of New York (Case No. 09-3161).