IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

STATE OF [ _California_ ]  )
                                              :   ss.:
COUNTY OF [ _Los Angeles_ ]  )

[AFFIANT], being duly sworn, deposes and says:

1.    I am a [~~position~~ _Partner_] of [the firm] (the "Firm"), which maintains offices at

[Address].

_Downey, Smith & Fier_
_4010 Watson Plaza Dr._
_Suite 190_
_Lakewood, CA 90712_

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2.      This Affidavit is submitted in connection with an Order of the United
States Bankruptcy Court for the District of Delaware, entered on or about _I_|_IS_, 2009,
authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and
collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary
course of business during the pendency of these chapter 11 cases.

3.      The Firm has represented and advised the Debtors as [ *tax consultants* ] with
respect to certain aspects of the Debtors' business operations. The Debtors have requested, and
the Firm has agreed, to continue to provide such services to the Debtors on a postpetition basis
during the course of these chapter 11 cases.

4.      The Firm's current customary rates, subject to change from time to time
are *contingency fee*. In the normal course of its business, the Firm revises its billing rates on
*January* of each year and requests that, effective *Jan* of each year, the aforementioned rates
be revised to the regular hourly rates which will be in effect at that time.

5.      In the ordinary course of its business, the Firm maintains a database for
purposes of performing "conflicts checks." The Firm's database contains information regarding
the Company's present and past representations. Pursuant to Federal Rule of Bankruptcy
Procedure 2014(a), I obtained a list of the entities identified in Rule 2014(a) from counsel to the
Debtors for purposes of searching the aforementioned database and determining the
connection(s) which the Firm has with such entities. The Firm's search of the database identified
the following connections:

**[Disclose Connections Here]**

6.      Neither I nor [any principal, partner, director, officer, etc.] of, or
professional employed by, the Firm has agreed to share or will share any portion of the

compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm, as permitted by 11 U.S.C. §504(b).

7.    I understand that any compensation paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

8.    Neither I nor [any principal, partner, director, officer, etc.] of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed. If the Firm is not an law firm, the Firm does not hold an interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

9.    The Debtors owe the Firm $ [ 5,828.17 ] for prepetition services. The Firm [is/is not] waiving any and all claims that it has against the Debtors, including the amount referenced in the prior sentence.

10.    The Firm currently holds a retainer from the Debtors in the approximate amount of $ 0 . The Firm will apply the outstanding retainer balance as fees and expenses become due pursuant to this Court's order authorizing the employment of "ordinary course" professionals.

11.    As of the Petition Date, the Firm [was/was not] party to a services agreement with the Debtors. **[A copy of such agreement, together with any agreement(s) that the Firm and the Debtors intend to govern their relationship after the Petition Date, is attached as Exhibit 1 to this Affidavit]**.

12.    The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of

3

its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ____6|3____, 2009

_____
Affiant

Sworn to and subscribed before me
this _3rd_ day of _June_ 2009 by Lyle A. Downey
proved to me on the basis of satisfactory evidence
to be the person who
appeared before me

_____
Notary Public

SHIN O. KIM
Commission # 1745078
Notary Public - California
Los Angeles County
My Comm. Expires Jun 11, 2011
NNA1

4

# AMENDMENT NO. 2 TO CONSULTING AGREEMENT

THIS AMENDMENT NO. 2 TO CONSULTING AGREEMENT ("Amendment") is entered into this 28th day of August, 2008 by and between DS & Associates, LLC ("DSF") and Los Angeles Times Communications LLC ("LA Times").

## WITNESSETH

WHEREAS, DSF and LA Times entered into that certain Consulting Agreement dated April 28, 2004 pursuant to which DSF agreed to provide and LA Times agreed to accept certain expert tax consulting services (the "Agreement"); and

WHEREAS, the parties desire to amend the Agreement as indicated below.

NOW THEREFORE, in consideration of the premises and mutual covenants herein set forth, the parties hereby agree as follows:

1.    The first sentence of Paragraph 1 of the Agreement is hereby amended by deleting "Exhibit A" and inserting in lieu thereof the phrase "Exhibits A, B, C and D."

2.    Paragraph 2 of the Agreement is hereby amended by deleting the phrase "is set forth in Exhibit A" and inserting in lieu thereof "with respect to the Services described in Exhibit A, B, C or D is set forth in Exhibit A, B, C or D, respectively."

3.    Paragraph 3 of the Agreement is hereby amended by deleting the phrase "are set forth in Exhibit A" and inserting in lieu thereof the phrase "set forth in Exhibit A, B or C are set forth in Exhibit A, B, C or D, respectively. For the avoidance of doubt, the parties agree that, as to any fees that are calculated based on a percentage of Value received by LA Times under this Agreement, such calculation shall be after the deduction of any third party costs and expenses incurred by LA Times in pursuit of such Value."

4.    A new Exhibit D shall be added to the Agreement as set forth in Attachment C to this Amendment.

5.    For the avoidance of doubt the parties agree that Exhibit D shall supersede Exhibit C as stated in Exhibit D.

6.    Except as expressly provided in this Amendment, all other terms and conditions of the Agreement shall remain in full force and effect.

Sales tax amend 07

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, execute this Amendment as of the day and year set forth above.

LOS ANGELES TIMES
COMMUNICATIONS LLC

By: _Gerard DeDroscia_____

Name: _GERARD DE FROSCIA_____

Title: _CONTROLLER_____

Date: _9/5/08_____

DS & ASSOCIATES, LLC

By: _____

Name: _SCOTT SMITH_____

Date: _8/28/2008_____

## Attachment C

## TAX CONSULTING AGREEMENT

## EXHIBIT D

### SCOPE

This exhibit supersedes EXHIBIT C as the facts and circumstances regarding the tax benefit of the transportation deduction have changed. The services will cover the LA Times sales, use, excise, and local taxes for the period proceeding the current audit. The services will cover period 4/01/06, to 6/30/08. DSF will review LA Times' records and perform consulting services to bring forward the benefits of previously identified transportation deduction adjustments, including documentation and recovery of the tax refunds and/or credits.

### REVIEW PROCESS

DSF will provide services in four integrated steps and shall provide LA Times updates on status throughout the review. The steps are documented as follows:

### Step I –*Quantification*

DSF will perform an initial analysis of LA Times' transportation deduction and tax payments to quantify refunds and/or credits. During this step, DSF may review tax filings and source documents, apply DSF's library of tax strategies, and perform technical research. DSF will prepare a report and preliminary audit schedules quantifying the net benefit. LA Times will review the preliminary audit schedules and approve each area of benefit. Upon approval by LA Times, DSF will proceed to Step II to document the benefit areas.

### Step II – *Documentation*

DSF will retrieve, duplicate and organize source documents to support the Step I benefit identified above.

### Step III – *Final Analysis and Quantification*

DSF will utilize the supporting documentation to prepare audit worthy schedules and binders for the Step I credits. DSF will provide LA Times with a detailed analysis of the net tax benefit substantiated by supporting source documents. Upon approval by LA Times, the tax benefits will be incorporated into amended quarterly sales & use tax returns. As part of this step, we will develop prospective reporting procedures so the prospective sales & use tax return process can be modified to adjust for the understated transportation deduction. Also, we will work with the Board of Equalization's audit staff to obtain approval of the adjustment methodology and amend the tax returns.

### Step IV – *Audit Assistance*

With regards the Step III tax benefits and resulting amended tax returns, credits and/or refunds, and at the discretion of LA Times, DSF will represent LA Times before the SBE throughout the recovery process or assist LA Times in such representation.   DSF's representation/assistance will include Information Document Request ("IDR") research and response.  In addition, DSF's recovery efforts will include documentation, reports and audit schedules as required.  Upon completion of the SBE audit, DSF will review the SBE's final audit schedule and prepare an analysis of the net benefit, consisting of the tax refunds and/or credits, (including penalties and interest reductions) accepted by the SBE.  No action will be taken that exposes LA Times to potential additional tax without a full briefing the LA Times management of the potential risk.

### FEES

DSF's fee will be twenty percent (20%) of the tax refunds and/or credits, (including penalties and interest reductions) ("VALUE") received by LA Times under this agreement.  DSF expects tax benefit of the increased transportation to result in tax refunds and the VALUE will be recognized upon receipt of refund checks.  Should part of the tax benefit be used to offset an unforeseen tax liability then VALUE would be recognized at that time.  The period covered under this agreement is not currently under SBE audit and may or may not be audited by the SBE in the future. Therefore, 50% of DSF's fees will be due upon receipt of VALUE and 50% of the fees will be due at the earliest of; the expiration of the statute of limitations for the period covered under this agreement or the completion of an SBE audit (if applicable) of the period.  No fees will be due if LA Times does not recognize and/or receive VALUE.

### TERM

This Agreement remains in effect until Steps I, II, III and IV are completed and approved by LA Times and fees are paid to DSF.  Either party may terminate the Agreement by sending written notice.  If LA Times terminates this Agreement after DSF has completed Step I, II or III, DSF's fee as defined above continues to apply.   If DSF terminates this agreement, our obligation will be limited to returning all original books and records.

## AMENDMENT NO. 1 TO CONSULTING AGREEMENT

THIS AMENDMENT NO. 1 TO CONSULTING AGREEMENT ("Amendment") is entered into this 25 day of June , 2007 by and between DS & Associates, LLC ("DSF") and Los Angeles Times Communications LLC ("LA Times").

## WITNESSETH

WHEREAS, DSF and LA Times entered into that certain Consulting Agreement dated April 28, 2004 pursuant to which DSF agreed to provide and LA Times agreed to accept certain expert tax consulting services (the "Agreement"); and

WHEREAS, the parties desire to amend the Agreement as indicated below.

NOW THEREFORE, in consideration of the premises and mutual covenants herein set forth, the parties hereby agree as follows:

1.      The first sentence of Paragraph 1 of the Agreement is hereby amended by deleting "Exhibit A" and inserting in lieu thereof the phrase "Exhibits A, B and C."

2.      Paragraph 2 of the Agreement is hereby amended by deleting the phrase "is set forth in Exhibit A" and inserting in lieu thereof "with respect to the Services described in Exhibit A, B or C is set forth in Exhibit A, B or C, respectively."

3.      Paragraph 3 of the Agreement is hereby amended by deleting the phrase "are set forth in Exhibit A" and inserting in lieu thereof the phrase "set forth in Exhibit A, B or C are set forth in Exhibit A, B or C, respectively. For the avoidance of doubt, the parties agree that, as to any fees that are calculated based on a percentage of Value received by LA Times under this Agreement, such calculation shall be after the deduction of any third party costs and expenses incurred by LA Times in pursuit of such Value."

4.      A new Exhibit B shall be added to the Agreement as set forth in Attachment A to this Amendment.

5.      A new Exhibit C shall be added to the Agreement as set forth in Attachment B to this Amendment.

6.      Except as expressly provided in this Amendment, all other terms and conditions of the Agreement shall remain in full force and effect.

Sales tax amend 07

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, execute this Amendment as of the day and year set forth above.

LOS ANGELES TIMES
COMMUNICATIONS LLC

By: _____

Name: _____Robert Bellack_____

Title: _____SVP /CFO_____

Date: _____7/6/07_____

DS & ASSOCIATES, LLC

By: _____

Name: _____Scott Smith_____

Date: _____6-25-07_____

<u>Attachment A</u>

## TAX CONSULTING AGREEMENT

## EXHIBIT B

### SCOPE

The Services will cover the LA Times sales, use, excise, and local taxes for the period of the current audit, 4/01/03 to 3/31/06. DSF will review LA Times' records and perform consulting services to identify, document and recover tax refunds and/or credits for the audit period 4/01/03 to 3/31/06.

### REVIEW PROCESS

DSF will provide services in four integrated steps and shall provide LA Times updates on status throughout the review. The steps are documented as follows:

### Step I – *Evaluation and Quantification*

DSF will perform an initial analysis of LA Times' purchases and tax payments to identify refunds and/or credits. During this step, DSF may conduct interviews (with client approval), review tax filings and source documents, apply DSF's library of tax strategies, and perform technical research. DSF will prepare a report and preliminary audit schedules quantifying the net benefit. LA Times will review the preliminary audit schedules and approve each area of benefit. Upon approval by LA Times, DSF will proceed to Step II to document the benefit areas.

### Step II – *Documentation*

DSF will retrieve, duplicate and organize source documents to support the Step I benefit identified above. With LA Times approval DSF may contact vendors to obtain source documents or additional contract information.

### Step III – *Final Analysis and Quantification*

DSF will utilize the supporting documentation to prepare audit worthy schedules and binders. DSF will compare invoices to electronic data to confirm and/or correct critical information such as delivery location and state and local tax payments. DSF will provide LA Times with a detailed analysis of the net tax benefit substantiated by supporting source documents. Upon written approval by LA Times, the tax benefits will be incorporated into the current audit and/or DSF will prepare appropriate refund claims at which time this step will be considered complete.

### Step IV – *Audit Assistance*

With regards the Step III credits and/or refunds, and at the discretion of LA Times, DSF will represent LA Times before the SBE or appropriate tax authority throughout the recovery process or assist LA Times in such representation.   DSF's representation/assistance will include Information Document Request ("IDR") research and response.  In addition DSF's recovery efforts will include documentation, reports and audit schedules as required.  Upon completion of the SBE audit, DSF will review the SBE's final audit schedule and reports and prepare an analysis of the net benefit, consisting of the tax refunds and/or credits, (including penalties and interest reductions) accepted by the SBE.  No action will be taken that exposes LA Times to potential additional tax without a full briefing of risk to LA Times management.

## FEES

DSF's fee will be twenty percent (20%) of the tax refunds and/or credits, (including penalties and interest reductions) ("VALUE") received by LA Times under this agreement.  All fees are due upon receipt of VALUE.  No fees will be due if LA Times does not recognize and/or receive VALUE.

## TERM

This Agreement remains in effect until Steps I, II, III and IV are completed and approved by LA Times and fees are paid to DSF.  Either party may terminate the Agreement by sending written notice.  If LA Times terminates this Agreement after DSF has completed Step I, II and III, DSF's fee as defined above continues to apply.   If DSF terminates this agreement, our obligation will be limited to returning all original books and records.

Sales tax amend 07

## Attachment B

## TAX CONSULTING AGREEMENT

### EXHIBIT C

### SCOPE

The Services will cover the LA Times sales, use, excise, and local taxes for the period beyond the current audit including April 1, 2006 though September 30, 2007 or the implementation date of the new billing system (known as Discus), whichever is the latter. In addition, DSF will perform consulting services to assisting the LA Times with the implementation of the transportation exclusion in the Discus system (receivables and delivery cost portion).

### REVIEW PROCESS

DSF will provide services in four integrated steps and shall provide LA Times updates on status throughout the review. The steps are documented as follows:

### Step I – *Evaluation and Quantification*

DSF will perform an initial analysis of LA Times' purchases and tax payments to identify refunds and/or credits. During this step, DSF may conduct interviews (with client approval), review tax filings and source documents, apply DSF's library of tax strategies, and perform technical research. DSF will prepare a report and preliminary audit schedules quantifying the net benefit. LA Times will review the preliminary audit schedules and approve each area of benefit. Upon approval by LA Times, DSF will proceed to Step II.

### Step II – *Documentation*

DSF will retrieve, duplicate and organize source documents to support the Step I benefit identified above. With LA Times approval DSF may contact vendors to obtain source documents or additional contract information.

### Step III – *Final Analysis and Quantification*

DSF will utilize the supporting documentation to prepare audit worthy schedules and binders. DSF will compare invoices to electronic data to confirm and/or correct critical information such as delivery location and state and local tax payments. DSF will provide LA Times with a detailed analysis of the net tax benefit substantiated by supporting source documents. Upon written approval by LA Times, the tax benefits will be incorporated into the current audit and/or DSF will prepare appropriate refund claims at which time this step will be considered complete.

## Step IV – *Audit Assistance*

With regards the Step III credits and/or refunds, and at the discretion of LA Times, DSF will represent LA Times before the SBE or appropriate tax authority throughout the recovery process or assist LA Times in such representation. DSF's representation/assistance will include Information Document Request ("IDR") research and response. In addition DSF's recovery efforts will include documentation, reports and audit schedules as required. Upon completion of the SBE audit, DSF will review the SBE's final audit schedule and reports and prepare an analysis of the net benefit, consisting of the tax refunds and/or credits, (including penalties and interest reductions) accepted by the SBE. No action will be taken that exposes LA Times to potential additional tax without a full briefing of risk to LA Times management.

## DISCUS CONSULTING SERVICES

DSF will perform services to assist LA Times in the implementation of the receivables and delivery cost portion of the new "Discus" billing system. DSF will use its knowledge and experiences to assist LA Times comply with the SBE rules and regulations regarding the sales tax excludable portion of its gross receipts know as "Delivery Cost".

## FEES

DSF's fee will be twenty percent (20%) of the tax refunds and/or credits, (including penalties and interest reductions) ("VALUE") received by LA Times under this agreement. All fees are due upon receipt of VALUE. No fees will be due if LA Times does not recognize and/or receive VALUE. DSF fees for the Discus consulting services will be on an hourly basis for the professionals assigned to this engagement. Our billing rates are as follows:

| | |
|---|---|
| Partner | 225 |
| Senior Manager | 195 |
| Manager | 175 |
| Staff | 100 |

## TERM

This Agreement remains in effect until Steps I, II, III and IV are completed and approved by LA Times and fees are paid to DSF. Either party may terminate the Agreement by sending written notice. If LA Times terminates this Agreement after DSF has completed Step I, II and III, DSF's fee as defined above continues to apply. If DSF terminates this agreement, our obligation will be limited to returning all original books and records.

# CONSULTING AGREEMENT

This Consulting Agreement dated as of ___4/28/4___ , ("Agreement") is entered into and between Los Angeles Times Communications LLC, a Delaware limited liability company ("LA Times"), and DS & Associates, LLC, a California limited liability company d/b/a Downey, Smith & Fier ("DSF").

Whereas, LA Times requires the Services (as defined below) of an expert tax consultant and

Whereas, DSF is an expert in the relevant field and desires to render such Services to LA Times.

Now, therefore, LA Times and DSF agree as follows:

1. **Services**. DSF shall provide and direct the necessary qualified personnel to perform the services described in Exhibit A (the "Services"). DSF shall provide such Services pursuant to the terms of this Agreement and with the degree of skill and judgment normally exercised by recognized professional firms performing services of a similar nature and to the reasonable satisfaction of LA Times.

2. **Term**. The term of this Agreement is set forth in Exhibit A.

3. **Fees**. The fees payable to DSF with respect to the Services are set forth in Exhibit A.

4. **Rights in Results of Services**. The results of the Services shall be the exclusive property of LA Times, and all documents (including without limitation, all writings, computer or machine readable date, and all copies or reproduction thereof) which describe or relate to the Services or the results thereof, including without limitation all notes, data, reports or other information received or generated in the performance of this Agreement, shall be the exclusive property of LA Times and shall be delivered to LA Times upon request.

5. **Confidentiality**. DSF shall maintain as confidential and not disclose to others, including individuals, corporations or governmental agencies, either before or after the termination of this Agreement, (a) the existence or terms of this Agreement or the fact that DSF is or was performing the Services or (b) any data, documents, reports or other information provided to DSF by LA Times, its subsidiaries, or any employee, agent or consultant of each or any data, document, report or other information created or produced by DSF during its performance hereunder, except as expressly authorized in writing by LA Times. DSF's obligation of confidentiality shall not apply to disclosures compelled by law, an order of a court of competent jurisdiction or a subpoena, in which event DSF shall immediately notify LA Times of the circumstances requiring such disclosure and refrain from such disclosure for the maximum period of time allowed by law so that LA Times may procure a protective order or take other actions to protect the confidentiality of the information.

6. **Other Agreements**. DSF warrants that it is not a party to any other existing or previous agreement that would prevent DSF from entering into this Agreement. During the term of this Agreement DSF will not, without the prior written consent of LA Times, perform services for any person, firm or corporation if such services could lead to a conflict with DSF's obligations under this Agreement.

7. **Assignment**. Neither this Agreement nor any of the rights or obligations hereunder may be assigned or otherwise transferred by DSF, nor shall the benefits of this Agreement inure to the benefit of any trustee in bankruptcy, receiver or creditor of DSF, whether by operation of law or otherwise, without the prior written consent of LA Times. Any attempt to assign or transfer this Agreement or any rights hereunder without such consent shall be null and void and of no force or effect.

8. **No Agency and Independent Contractor**. DSF is and shall perform the Services as an independent contractor, and shall not be deemed an agent, employee or legal representative of LA Times or any of its subsidiaries. DSF has no authority to assume or create any commitment or obligation on behalf of or to bind LA Times or any of its subsidiaries in any respect whatsoever.

9. **No Waiver**. No waiver by either party of any default by the other party in the performance of any portion of this Agreement shall operate as or be construed as a waiver of any future default, whether like or different in character.

10. **Severability**. If any portion of this Agreement, or application thereof to any person or circumstances, shall to any extent be invalid, the remainder of this Agreement, and the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11. **Attorney's Fees**. Should it be necessary for either party to initiate legal proceedings to enforce any term or condition of the Agreement, the prevailing party shall be entitled to all costs and expenses, including reasonable attorney's fees, incurred in such proceedings.

12. **Expense**. Except as otherwise provided in this Agreement, all fees, costs and expenses incurred in connection with this Agreement and any transactions contemplated hereby shall be paid by the party incurring such fees, costs or expenses.

13. **Notices.** All notices or other written communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent prepaid telecopy or sent, postage prepaid by registered, certified or express mail, or reputable overnight courier service and shall be deemed made when so delivered by hand or telecopied or, if mailed, 3 days after mailing (one business day in the case of express mail or overnight courier service), as follows:

      (a) If to LA Times to:
      Los Angeles Times Communications LLC

> Steve Casey
> 202 West First Street
> Los Angeles, CA 90012
>
> (b) If to DSF
>     DS & Associates
>     Scott Smith, Partner
>     19401 S. Vermont Ave.,
>     Suite D100
>     Torrance, CA 90502

14. **Counterparts**. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party.

15. **Governing Law**. The validity, performance and construction of this Agreement shall be governed and interpreted in accordance with the laws of the State of California applicable to contracts made and performed therein.

16. **Entire Agreement**. This Agreement contains the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supercedes all previous communications, negotiations and agreements, whether oral or written, between the parties with respect to such subject matter, and no addition to or modifications of this Agreement or waiver of any provisions of this Agreement shall be binding on either party unless made in writing and executed by DSF and LA Times.

In witness hereof, the parties have each executed or caused to be executed this Agreement on as of the date first written above.

Los Angeles Times Communications LLC
By: _____
Name: GARY STRONG
Title: CONTROLLER

DS & Associates, LLC
By: _____
Name: Scott Smith
Title: Partner

3



## DOWNEY·SMITH·FIER
### STATE & LOCAL TAX

## TAX CONSULTING AGREEMENT

## EXHIBIT A

## SCOPE

The Services will cover the LA Times sales, use, excise, and local taxes for the period of the current audit, 6/12/00 to 3/31/03. DSF will review LA Times' records and perform consulting services to identify, document and recover tax refunds and/or credits for the audit period 6/12/00 to 3/31/03.

## REVIEW PROCESS

DSF will provide services in four integrated steps and shall provide LA Times updates on status throughout the review. The steps are documented as follows:

### Step I – *Evaluation and Quantification*

DSF will perform an initial analysis of LA Times' purchases and tax payments to identify refunds and/or credits. During this step, DSF may conduct interviews (with client approval), review tax filings and source documents, apply DSF's library of tax strategies, and perform technical research. DSF will prepare a report and preliminary audit schedules quantifying the net benefit. LA Times will review the preliminary audit schedules and approve each area of benefit. Upon approval by LA Times, DSF will proceed to Step II to document the benefit areas.

### Step II – *Documentation*

DSF will retrieve, duplicate and organize source documents to support the Step I benefit identified above. With LA Times approval DSF may contact vendors to obtain source documents or additional contract information.

### Step III – *Final Analysis and Quantification*

DSF will utilize the supporting documentation to prepare audit worthy schedules and binders. DSF will compare invoices to electronic data to confirm and/or correct critical information such as delivery location and state and local tax payments. DSF will provide LA Times with a detailed analysis of the net tax benefit substantiated by supporting source documents. Upon written approval by LA Times, the tax benefits will be incorporated into the current audit and/or DSF will prepare appropriate refund claims at which time this step will be considered complete.

19401 S. Vermont Ave., Suite D100, Torrance, CA 90502

Downey, Smith & Associates
Tax Consulting Services Agreement Exhibit A
Page 2

### Step IV – *Audit Assistance*

With regards the Step III credits and/or refunds, and at the discretion of LA Times, DSF will represent LA Times before the SBE or appropriate tax authority throughout the recovery process or assist LA Times in such representation. DSF's representation/assistance will include Information Document Request ("IDR") research and response. In addition DSF's recovery efforts will include documentation, reports and audit schedules as required. Upon completion of the SBE audit, DSF will review the SBE's final audit schedule and reports and prepare an analysis of the net benefit, consisting of the tax refunds and/or credits, (including penalties and interest reductions) accepted by the SBE. No action will be taken that exposes LA Times to potential additional tax without a full briefing of risk to LA Times management.

### FEES

DSF's fee will be twenty percent (20%) of the tax refunds and/or credits, (including penalties and interest reductions) ("VALUE") received by LA Times under this agreement. All fees are due upon receipt of VALUE. No fees will be due if LA Times does not recognize and/or receive VALUE.

### TERM

This Agreement remains in effect until Steps I, II, III and IV are completed and approved by LA Times and fees are paid to DSF. Either party may terminate the Agreement by sending written notice. If LA Times terminates this Agreement after DSF has completed Step I, II and III, DSF's fee as defined above continues to apply. If DSF terminates this agreement, our obligation will be limited to returning all original books and records.