IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - -x
                    :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, et al., | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | **Hrg Date: June 25, 2009 at 10:00 am ET** |
| | : | **Obj. Due: June 18, 2009 at 4:00 pm ET** |

- - - - - - - - - - - - - - - - - - - - - - - - - -x

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER BANKRUPTCY CODE SECTION 362(d)(1) TO ALLOW WARREN BEATTY TO PROCEED WITH LITIGATION IN CALIFORNIA DISTRICT COURT

Warren Beatty ("Mr. Beatty") hereby moves (the "Motion") for entry of

an order, pursuant to section 362(d)(1) of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rule 4001-1 of the Local Rules for the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order

lifting the automatic stay to allow Mr. Beatty to proceed with the California Action (as

defined herein). In support of this Motion, Mr. Beatty respectfully represents:

#### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C.

§§ 157 and 1334. Venue of these cases (but not the Bankruptcy Action (as defined

below)) in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are

Bankruptcy Code section 362(d)(1), Bankruptcy Rule 4001 and Local Rule 4001-1.

1

## BACKGROUND

**A.    The Dick Tracy Rights.**

3.    Prior to August 28, 1985, the Tribune Media Services, Inc. (the "Tribune") was the owner of certain copyright and other rights in the cartoon character Dick Tracy and in various works embodying that character.  <u>See</u> California Complaint[1] ¶ 6.

4.    On or about August 28, 1985, the Tribune granted to Mr. Beatty certain motion picture, television and other rights in and to the Dick Tracy character (the "Dick Tracy Rights") pursuant to a written agreement (the "Agreement").  <u>Id.</u> ¶ 7.  Except under the limited circumstances discussed below, Mr. Beatty was entitled to retain the Dick Tracy Rights "in perpetuity".  <u>See</u> Agreement[2] § 7(a).

5.    Under section 2 of the Agreement, Mr. Beatty was required to enter into financing and distribution agreements associated with the production of a feature picture based on the Dick Tracy Rights and commence principal photography thereon.  Agreement § 2(a)-(d).  If Mr. Beatty satisfied the requirements of section 2, then Mr. Beatty was entitled to use or not use the Dick Tracy Rights for the next five years without risk that such rights would revert to the Tribune.  <u>See id.</u> § 9.  If, however, at the conclusion of such five year period, "photography ha[d] not been commenced on either another theatrical motion picture or television series or special, [the Tribune] may give

---

[1]    "California Complaint" means the Complaint for Declaratory Relief and Demand for Jury Trial filed on November 20, 2008 in the United States District Court for the Central District of California.  The California Complaint is attached hereto as Exhibit A.

[2]    A copy of the Agreement is attached hereto as Exhibit B.

Mr. Beatty [written] notice of its intention to effect a reversion of "the Dick Tracy

Rights] . . . ." Id.

      6.      Upon the Tribune providing Mr. Beatty with notice, Mr. Beatty

would then have two years from the date of receipt of such notice to commence

"[principal] photography . . . on either another theatrical motion picture or a television

series or special . . . ." Id. So long as Mr. Beatty commenced principal photography on

such a new motion picture or television series or special within such two-year period, Mr.

Beatty would continue to retain the Dick Tracy Rights for an additional five years

without risk of reversion. See id. However, in the event principal photography had not

commenced, the "Tribune, by further written notice to Mr. Beatty, may effect such

reversion." Id.

      7.      The Agreement provided no other basis under which the Dick

Tracy Rights could revert to the Tribune. See, generally, Agreement.

## B.     The DICK TRACY Movie.

      8.      The Tribune concedes that Mr. Beatty had complied with section 2

of the Agreement by completing a theatrical motion picture entitled "DICK TRACY"

(the "Movie") based on the Dick Tracy Rights. See Bankruptcy Complaint[3] ¶ 13. After

the Movie was produced, Mr. Beatty retained the Dick Tracy Rights uninterrupted until

2005. See California Complaint ¶ 9.

---

[3]    "Bankruptcy Complaint" means the compliant filed on March 19, 2009 in this Court commencing
Adversary Proceeding No. 09-50486 (the "Bankruptcy Action"). The Bankruptcy Complaint is
attached hereto as Exhibit C.

C.      **The Alleged 2005 Notice And The Initial California Litigation.**

9.      In 2005, the Tribune asserted that it had taken the necessary steps for the Dick Tracy Rights to revert to it. California Complaint ¶ 9. Mr. Beatty disputed the Tribune's contention and, thus, in May 2005, commenced a declaratory judgment action against the Tribune (and other parties) by filing a complaint (the "First California Complaint") in the California Superior Court – Los Angeles County. See Warren Beatty v. Tribune Media Services Inc., 05-cv-03938-DDP-SS (C.D. Ca. 2005) (D.I. 1, which states that the action was originally commenced in the California Superior Court – Los Angeles County) (hereinafter cited as "Beatty I").[4] On May 31, 2005, the Tribune filed a Notice of Removal whereby the state court action was removed to the United States District Court for the Central of California (the "California District Court") and docketed as case number 05-cv-03938 (the "First California Action"). See id. It is undisputed that the First California Action concerned whether the Tribune had provided the requisite notice necessary to effectuate a reversion of the Dick Tracy Rights under the Agreement. The Tribune's Ans. Brief at 7;[5] see California Complaint ¶ 10.

10.     District Judge Pregerson and Magistrate Judge Segal were assigned to the First California Action. See, generally, Beatty I, 05-cv-03938 (D.I. 1). The action was contested for over a year. Compare, Beatty I, 05-cv-03938 (D.I. 1), with, id. (D.I. 68). After the completion of significant discovery, the Tribune moved for, among other things, summary judgment. See id. (D.I. 49). That motion was denied and, in early

---

[4]    A copy of the entire docket report for Beatty I is attached hereto as Exhibit D.

[5]    "Ans. Brief" means "Tribune Media Services' Answering Brief in Opposition to Defendant's Motion to Dismiss" filed in the Bankruptcy Action (Adv. Pro. D.I. 11). Relevant pages of the Ans. Brief are attached hereto as Exhibit E.

November 2006, the Tribune withdrew the notices that purported to effectuate the

reversion.  See California Complaint ¶ 11.  As a result, the parties agreed to dismiss the

First California Action.  Beatty I, 05-cv-03938 (D.I. 68).  Critically, at no point in the

First California Action did the Tribune challenge venue in the California District Court.

See Beatty I, 05-cv-03938.

**D.     The November Reversion Notice And Commencement Of The DICK
        TRACY Television Special.**

        11.     On November 17, 2006, shortly after the First California

Complaint was dismissed, the Tribune sent written notice to Mr. Beatty of its intent to

effect a reversion of the Dick Tracy Rights if principal photography of a motion picture,

television series or television special did not commence within two years (the "November

17, 2006 Notice")[6].  California Complaint ¶ 11.  A copy of the November 17, 2006

Notice is annexed hereto as Exhibit C.  Mr. Beatty received the November 17, 2006

Notice on November 20, 2006.  California  Complaint ¶ 12.  Consequently, under section

9 of the Agreement, Mr. Beatty had until November 20, 2008 -- two years from the date

of receipt of the November 17, 2006 Notice -- to commence "principal photography" on

a "theatrical movie or television series or special" or lose the Dick Tracey Rights. See id.

        12.     On November 8, 2008, Mr. Beatty commenced principal

photography on a Dick Tracy television special (the "Television Special").  Id.[7]  The

Television Special is expected to air in July 2009.

---

[6]  A copy of the November 17, 2006 Notice  is attached hereto as Exhibit F.

[7]  Although the Tribune contends otherwise, see Bankruptcy Complaint ¶ 21, Mr. Beatty contends that
the Tribune did not timely deny this allegation in the California Action and, thus, is deemed admitted.
See infra at note 10.

**E.     The California Action.**

13.     On November 18, 2008, the Tribune again purported to effect a

reversion of the Dick Tracy Rights by mailing a certified letter to Mr. Beatty.  California

Complaint ¶ 14; Bankruptcy Complaint ¶¶ 22, 24.  Believing the Tribune's purported

reversion to be completely specious, on November 20, 2008, Mr. Beatty filed the

California Complaint in the California District Court (the "California Action").  See

California Complaint ¶ 1.  The Tribune's answer was due on or about December 15, 2008,

but no answer or otherwise responsive pleading has yet been filed in the California

Action.  See Warren Beatty v. Tribune Media Services, Inc., 08-cv-07662-DDP-SS (C.D.

Ca. 2008) (D.I. 1, which noted a twenty day response deadline from the date of service)

(hereinafter cited as "Beatty II");[8] Proof of Service[9] (noting that the Tribune was served

with the California Complaint on November 25, 2008).

14.     Additionally, on November 21, 2008, Mr. Beatty filed a Notice Of

Related Case And Request To Assign Matter To The Honorable Dean Pregerson in the

California District Court (the "Request") under Rule 83-1.3.1 of the Local Rules for the

United States District Court – Central District of California (the "CA Local Rules").  See

Beatty II, 08-cv-07662 (D.I. 4); see also CA Local Rule 83-1.3.1 (providing that "[a]t the

time a civil action is filed, or as soon as known thereafter, the attorney shall file and serve

on all parties who have appeared a Notice of Related Case(s) . . .").  Pursuant to CA

Local Rule 83-1.3.2, the Tribune had the right to object to the Request within five days of

service.  CA Local Rule 83-1.3.2 (providing that "[a]ny party opposing a related case

---

[8]     A copy of the entire docket report for Beatty II is attached hereto as Exhibit G.

[9]     "Proof of Service" refers to the "Proof of Service Summon & Complaint" filed in Beatty II and
attached hereto as Exhibit H.

transfer may, within five (5) days of the service of a notice of Related Case(s) on that

party, or first appearance, file and serve a short counter-statement setting forth the

reasons the action does not qualify for related case transfer.").  Despite being served with

the Request on November 25, 2008, the Tribune did not object.  See Beatty II, 08-cv-

07662; Proof of Service.  Consequently, on December 18, 2008, the Request was granted,

and the California Action was assigned to and is presently pending before Judge

Pregerson -- the same Judge that presided over the First California Action for over a year.

See id. (D.I. 4 and 7).

**F.      The Tribune's Bankruptcy And The Bankruptcy Action.**

        15.     On December 8, 2008, the Tribune (and various affiliates) filed

voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of title 11, United

States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court").  The Tribune is a Delaware corporation

but has its principal place of business in Chicago, Illinois.  See California Complaint ¶ 2;

Bankruptcy Complaint ¶ 2.  As a result of the Tribune's bankruptcy, the California

Action was stayed under Bankruptcy Code section 362(a).  See 11 U.S.C. § 362(a).

        16.     Notwithstanding the existence of the California Action filed

several months prior, on March 19, 2009, the Tribune commenced the Bankruptcy Action

in this Court.  On May 8, 2009, Mr. Beatty, the defendant in the Bankruptcy Action, filed

his Motion To Dismiss Complaint Under Rule 12(b) For Improper Venue And Lack Of

Personal Jurisdiction (the "Motion to Dismiss").  That Motion to Dismiss is presently

pending before this Court.

**RELIEF REQUESTED**

17.     As set forth in the Motion to Dismiss, Mr. Beatty contends that the

Bankruptcy Action was not properly brought in this Court and that this Court may not

properly exercise personal jurisdiction over him.  Without waiving those arguments or

submitting to personal jurisdiction in Delaware, and in part based upon those positions,

Mr. Beatty requests entry of an order under Bankruptcy Code section 362(d)(1),

Bankruptcy Rule 4001, and Local Rule 4001-1 granting relief from the automatic stay to

enable Mr. Beatty to proceed with the California Action.

**BASIS FOR RELIEF**

18.     As is evident from a review of the Bankruptcy Complaint and the

California Complaint, the parties to the two actions seek the same declaratory relief -- a

declaration as to whether or not the Dick Tracy Rights reverted to the Tribune pursuant to

the terms of the Agreement.  <u>Compare</u> California Complaint ¶ 16 ("A judicial declaration

as to this dispute is necessary at this time in order for the parties to know their respective

rights in and to the Dick Tracy property.") <u>with</u> Bankruptcy Complaint ¶ 33 ("A

declaration as to the rights of the parties in and to the Dick Tracy Property is needed

promptly.").  Therefore, the Tribune has demonstrated that it is prepared to litigate its

dispute with Mr. Beatty and no longer requires the "breathing spell" afforded by the

automatic stay applicable pursuant to Bankruptcy Code section 362.

19.     Furthermore, as demonstrated below and in the pending Motion to

Dismiss, the California District Court is the proper and most appropriate forum to resolve

the parties' competing claims to the Dick Tracy Rights.  Specifically, the California

District Court has already gained familiarity with the factual and legal basis for the

dispute through the First California Action, having already determined that the California

Action is a related proceeding to the First California Action.  See, supra at ¶ 14.

Moreover, the majority of relevant witnesses and documents are already located in

California, the events relevant to the dispute took place in California, and the Agreement

was negotiated in California and is governed by California law.  See, infra at ¶ 29.

20.    Accordingly, Mr. Beatty respectfully requests that this Court

modify the automatic stay for cause under Bankruptcy Code section 362(d)(1) to permit

the California Action to proceed in the California District Court.

## APPLICABLE AUTHORITY

21.    Bankruptcy Code section 362(d)(1) provides that, "[o]n request of

a party in interest and after notice and a hearing, the Court shall grant relief from the stay

provided under subsection (a) of this section, such as by terminating, annulling,

modifying or conditioning such stay – (1) for cause . . . ."  11 U.S.C. § 362(d).

22.    "Cause" is not defined by section 362(d)(1).  See In re The SCO

Group, Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).  Courts in the Third Circuit have

stated that "cause is a flexible concept" often involving a "fact intensive, case-by-case

balancing test." Id. (citing Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir.

1997)).  Courts have further noted that section 362(d)(1) is intended to be applicable to

situations in which parties seek to go forward with proceedings in a another tribunal.  Id.

23.    Indeed, the legislative history states that "[i]t will often be more

appropriate to permit proceedings to continue in their place of origin, when no great

prejudice to the bankruptcy estate would result, in order to leave the parties to their

chosen forum and to relieve the bankruptcy court from any duties that may be handled

9

elsewhere." H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977); see also id. at 343-44

(finding that cause may be established by a single factor such as "a desire to permit an

action to proceed. . . in another forum").

24.    In order to determine whether allowing litigation to proceed in its

original forum is appropriate, courts in this district generally apply a three-prong

balancing test. SCO Group, 395 B.R. at 857.  In particular, courts consider "(1) the

prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships

facing the parties; and (3) the probable success on the merits if the stay is lifted."

American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),

152 B.R. 420, 424 (D. Del. 1993)(citing Izzarelli v. Rexene (In re Rexene Prods Co.),

141 B.R. 574, 576 (Bankr. D. Del. 1992)).  Here, all three factors strongly support

modifying the stay in favor of permitting Mr. Beatty to proceed on the California Action.

**I.    THE TRIBUNE WILL NOT SUFFER ANY PREJUDICE IF THE AUTOMATIC STAY IS LIFTED.**

25.    The primary purpose of the automatic stay is to provide a debtor

with a "breathing spell". See, e.g., Pardo v. Pacificare of Texas, Inc. (In re APF Co.),

264 B.R. 344, 358 (Bankr. D. Del. 2001)("The automatic stay . . . gives the debtor a

breathing spell from his creditors." (citing Univ. Med. Ctr. v. Sullivan (In re Univ. Med.

Ctr.), 973 F.2d 1065, 1074 (3d Cir. 1992)).  Here, the Tribune has already determined

that it needs no breathing spell, having commenced the Bankruptcy Action seeking the

exact same type of relief (a declaration) sought by Mr. Beatty in the California Action,

only requesting the opposite result. Compare California Complaint, p. 4 at ¶ 1 (seeking a

judicial declaration that, due to his commencement of principal photography on the

Television Special, the Dick Tracy Rights remain with Mr. Beatty) with Bankruptcy

Complaint, Prayer for Relief at ¶ A.1 (seeking a judicial declaration that the Dick Tracy

Rights have reverted to the Tribune). Consequently, the Tribune may not properly argue

that it will suffer any legally cognizable or other prejudice if the California Action

proceeds. Instead, the Tribune's only argument is that its blatant attempt at improper

forum shopping was denied.

26.    Specifically, the Tribune has asserted that it "requires a judicial

determination of the estate's rights in the [Dick Tracy Rights] in order to remove [Mr.

Beatty's] interference therewith and thereby and give Debtor's estate the ability to

monetize this substantial asset." Bankruptcy Complaint ¶ 29. Thus, the Tribune cannot

properly contend that permitting the California Action to proceed will not assist, rather

than distract from, their reorganization efforts. See SCO Group, 395 B.R. at 859 (finding

that, given the need to resolve the issue, lifting the stay to allow the litigation to continue

will "assist the Debtors, not burden them"); Rexene, 141 B.R. at 577 (noting that the

dispute will need to be resolved prior to confirmation).

27.    Nor will the Tribune be prejudiced by permitting the action to

proceed in California. Importantly, the Tribune litigated the First California Action in

California without ever making a motion to transfer venue to another jurisdiction. See,

generally, Beatty I, 05-cv-03938. Indeed, the Tribune actually removed the First

California Action to the California District Court, where the California Action is now

pending. Id. (D.I. 1). Moreover, the California Action seeks only declaratory, and not

monetary, relief. See California Complaint, p. 4 at ¶ 1. Thus, any contention that

California is an inconvenient forum or interferes with claims administration, would ring

hollow. See Continental, 152 B.R. at 426 (lifting the automatic stay where "American is not attempting to obtain payment from Continental to the detriment of other creditors").

28.     More importantly, perhaps, the Tribune did not contest that the California Action was related to the First California Action that was litigated for over a year. See, generally, Beatty II, 08-cv-07662. Thus, proceeding in the California Action permits the California District Court, the court that is most familiar with the underlying Agreement and the parties, to address a legal dispute with which it is already familiar, and thereby furthers judicial economy. See Rexene, 144 B.R. at 577 ("Judicial economy dictates a prompt resolution in a single forum with the same judge who was originally assigned to the case.").

29.     And finally, the Tribune served Mr. Beatty in California and cannot reasonably dispute that he and most, if not all, of the witnesses, as well as any documents or other evidence relating to whether or not Mr. Beatty commenced "principal photography" are located or occurred in California.  Therefore, the burdens of litigating the contractual dispute in California are far less on both the Tribune and Mr. Beatty, if the California Action is permitted to proceed.  See Rexene, 141 B.R. at 577 (noting the logistical burden associated with litigating in Delaware, where the attorneys, witnesses, documents and parties are located in Texas).

30.     Consequently, the only "prejudice" that the Tribune would arguably suffer is the prejudice that it cannot litigate in its chosen forum, the Delaware Bankruptcy Court.  That prejudice, however, is actually suffered by Mr. Beatty, as the Tribune's Bankruptcy Action is nothing more than improper forum shopping and, thus, not a legally cognizable harm. See, supra ¶ 35.

31.    "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstance of his action or where forum shopping alone motivated the choice." Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 178 F.Supp.2d 459, 470 (S.D.N.Y. 2002). The indisputable facts are that: (i) the Tribune commenced the Bankruptcy Action nearly four months after Mr. Beatty filed the California Action; (ii) the underlying dispute in both the Bankruptcy Action and the California Action is whether or not Mr. Beatty commenced "principal photography" with respect to a movie, television show or television special on or before the deadline established by the November 17, 2006 Notice, at the latest; (iii) the California District Court previously heard the First California Action in which the Tribune similarly contended that the Dick Tracey Rights had reverted to it, but ultimately dismissed its contention without prejudice; (iv) at no time has the Tribune contended that venue in California is either improper or inconvenient; (v) Mr. Beatty resides in California, the Agreement was negotiated in California, the underlying contractual dispute is governed by California law, and most of the witnesses, relevant documents and other evidence are located in California; (vi) the Tribune's principal place of business is in Chicago, Illinois; and (vii) the only connection with Delaware is that the Tribune is a Delaware corporation that filed its bankruptcy case in Delaware, but otherwise has no employees, operations, or business in Delaware. See, supra ¶¶ 3-16, 18, 29.

32.    Thus, the Tribune is not prejudiced in any legally cognizable or other way, if the automatic stay is lifted. Lifting the automatic stay, however, will permit Mr. Beatty and the Tribune to timely resolve the underlying contractual dispute regarding the commencement of "principal photography" and the reversion of the Dick Tracey

Rights.  Moreover, permitting Mr. Beatty to proceed in the California Action will honor

the first plaintiff's (Mr. Beatty) choice of forum, and further the principles of judicial

economy and comity by allowing a sister federal court already familiar with the parties,

the Agreement and the underlying contract to resolve the present contractual dispute.

## II.    THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF LIFTING THE AUTOMATIC STAY.

33.    Given that the Tribune will suffer no legally cognizable or other

harm or prejudice if the stay is lifted, the balance of hardship heavily weighs in favor of

Mr. Beatty.

34.    First, Mr. Beatty requires timely clarification of his rights to the

Dick Tracy Rights.  See California Complaint ¶ 16 ("A judicial declaration as to this

dispute is necessary at this time in order for the parties to know their respective rights in

and to the Dick Tracy property.").  Indeed, as noted above, Mr. Beatty has prepared a

television special that is presently scheduled to be aired in July of this year.  See, supra ¶

12.

35.    Second, as set forth more fully in Mr. Beatty's briefs in support of

his Motion to Dismiss, Mr. Beatty will be prejudiced if his choice of forum is disregarded.

See, Bankruptcy Action (D.I.s 8 and 13).  Indeed, numerous courts have recognized a

plaintiff's choice of forum should, under most circumstances, be honored.  See Jumara v.

State Farm Insurance Co., 55 F.3d 873, 880 (3d Cir. 1995)(noting that "courts normally

defer to a plaintiff's choice of forum"); Waste Distillation Tech., Inc. v. Pan Am. Res.,

Inc., 775 F.Supp. 759, 764 (D.Del. 1991)("[I]f the plaintiff's choice of forum relates to its

legitimate, rational concerns then the plaintiff's choice of forum is . . . accorded

substantial weight.").  Mr. Beatty chose to bring the California Action in the California

14

District Court and, thus, absent overriding circumstances. Mr. Beatty's chosen forum should be honored. See, e.g., Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration and that choice . . . should not be lightly disturbed." (citation and internal quotations omitted)); Nihon Tsushin Kabushiki Kaisha v. Davidson, 595 F.Supp.2d 363, 371 (D. Del. 2009)(noting that a plaintiff's choice of forum is entitled to substantial deference).

36.    Thus, in light of the need by both parties for a definitive resolution as to whom the Dick Tracy Rights belong, the hardship to Mr. Beatty (and, for that matter, to the Tribune) of not lifting the stay considerably outweighs the hardship to the Tribune of doing so.

## III.    MR. BEATTY'S PROBABILITY OF SUCCESS ON THE MERITS SUPPORTS LIFTING THE AUTOMATIC STAY.

37.    Finally, the third factor to be considered in determining whether to lift the stay is whether the party seeking relief from the stay has some probability of success on the merits. This Court has previously noted that "the required showing is very slight." Rexene, 141 B.R. at 578; see also SCO Group 395 B.R. at 859 ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case.").

38.    Here, the Court need only review the docket in the First California Action and the allegations in the California Complaint to determine that Mr. Beatty has more than a reasonable probability of succeeding on the merits of the California Action.

39.    Specifically, as the docket from the First California Action makes clear, this is not the first time that the Tribune has sought to obtain the Dick Tracy Rights

based upon its contractual rights.  As set forth above, the Tribune took similar steps in 2005.  See, supra ¶¶ 9-10.  Mr. Beatty contested the Tribune's contention then, through the First California Action, and after a year litigating the matter, the Tribune agreed to withdraw any purported reversion letters, see November 17, 2006 Notice (withdrawing previous purported notices), and agreed to dismiss the First California Action.  See Beatty I, 05-cv-03938 (D.I. 68) (dismissing First California Action).

40.    More importantly, Mr. Beatty has alleged that he commenced principal photography on a Dick Tracey television special on or about November 8, 2008.  See California Complaint ¶ 13.[10]  As the Tribune concedes, however, the mere commencement of principal photography by Mr. Beatty on a television special is all that is required under the Agreement to maintain Mr. Beatty's interest in the Dick Tracy Rights.  See Agreement § 9; Bankruptcy Complaint ¶ 16.

41.    Nor has, or could, the Tribune contend otherwise.  Nothing in the Agreement required Mr. Beatty to obtain the Tribune's consent to such a special.  Nor did anything in the Agreement require Mr. Beatty to provide the Tribune with any notice regarding his commencement of principal photography on such a special, or information regarding the type or timing of such a special.  For that matter, the Agreement did not even require Mr. Beatty to provide the Tribune with any proof that such principal photography had commenced, should that fact be questioned by the Tribune.  See, generally, Agreement.

---

[10]    Arguably, the Tribune was required to answer the California Complaint on or before 60 days following the commencement of its chapter 11 case, see 11 U.S.C. § 108(b), and by failing to do so, the factual allegations in the California Complaint are now deemed admitted.  See Fed. R. Civ. P. 8.

42.    Therefore, based on the facts alleged in the California Complaint, which Mr. Batty contends are deemed admitted, see supra at 16, fn. 10, a review of the express terms of the Agreement, and the Tribune's allegations (and its inability under Bankruptcy Rule 9011 to make certain allegations) in the Bankruptcy Complaint, this Court should conclude that Mr. Beatty has a reasonable prospect of succeeding on the merits in the California Action.  Thus, Mr. Beatty submits that there is ample justification or cause for lifting the stay to allow the California Action to proceed.

## IV.    POLICY CONSIDERATIONS ALSO SUPPORT LIFTING THE AUTOMATIC STAY.

43.    Lifting the stay to permit the California Action to proceed is further supported by considering the general policies underlying the automatic stay.  See Continental 152 B.R. at 426 (noting that, in determining whether to lift the stay for cause, "courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant"); SCO Group, 395 B.R. at 857 (noting that this Court has "considered general policies underlying the automatic stay when deciding whether to lift the stay.").

44.    Several policy considerations support lifting the stay — in particular the specialized knowledge that the California District Court has developed in presiding over the First California Action, the interests of judicial economy, and the expeditious and economical resolution of litigation.  See SCO Group, 395 B.R. at 859-60 (finding that policies "of particular importance to the Court are the specialized knowledge that the District Court has developed in presiding over the Lawsuit for four years, the interests of judicial economy and the expeditious and economical resolution of litigation. . .").

45.     Moreover, as noted above, Mr. Beatty is not seeking to obtain payment from the Tribune, but rather to clarify the rights of both parties. See Continental, 152 B.R. at 426 (noting that purpose of automatic stay was not implicated because movant was not attempting to obtain payment from debtor to the detriment of other creditors).  Finally, clarification of the parties' positions with respect to the Dick Tracy Rights will not interfere with, and indeed will further, the "orderly liquidation or rehabilitation" of the Tribune.  See Borman v. Raymark Ind., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991)(citing as one of the purposes of the automatic stay "to avoid interference with the orderly liquidation or rehabilitation of the debtor").

46.     Accordingly, cause exists to lift the automatic stay to allow the parties to proceed with the California Action.

## NOTICE

47.     Notice of this Motion has been provided to all parties entitled to notice pursuant to Del. Bankr. L.R. 2002-1(b).  Mr. Beatty submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, Mr. Beatty respectfully requests that the Court enter an

Order granting the relief requested in the Motion and such other and further relief as may

be just and proper.

Dated:    June 9, 2009
          Wilmington, Delaware


              SKADDEN, ARPS, SLATE, MEAGHER &
                 FLOM LLP


              /s/ Gregg M. Galardi
              Gregg M. Galardi (DE Bar No. 2991)
              Ian S. Fredericks (DE Bar No. 4626)
              One Rodney Square
              P.O. Box 636
              Wilmington, Delaware 19899-0636
              (302) 651-3000
              Gregg.Galardi@skadden.com
              Ian.Fredericks@skadden.com

              Counsel for Movant, Warren Beatty