# EXHIBIT B

TRIBUNE MEDIA SERVICES, INC.
720 North Orange Avenue
Orlando, Florida 32801

August 26, 1985

Mr. Warren Beatty
c/o Bertram Fields, Esq.
Greenberg, Glusker, Fields,
  Claman & Machtinger
1900 Avenue of the Stars
Suite 2000
Los Angeles, California 90067

Re: "Dick Tracy"

Dear Mr. Beatty:

This letter shall constitute our preliminary agreement regarding the grant of certain rights with respect to the "Dick Tracy" property:

1. Rights to be Granted

Tribune Media Services, Inc. ("TMS") will grant motion picture, television, and customary related rights in its property, "Dick Tracy," including but not limited to all past, present or future characters and story material (the "property"), to Mr. Beatty.

2. Term

(a) Mr. Beatty will attempt to enter into an agreement (or agreements) for the financing and distribution of a feature picture based on the property (the "picture") on terms satisfactory to him. Mr. Beatty will either write, co-write, or supervise the writing of any new screenplay or revisions of the old screenplay, which he deems necessary to effect such an agreement.

(b) If Mr. Beatty does not enter into such an agreement within one year beginning August 1, 1985 and expiring

EXHIBIT A

Mr. Warren Beatty
August 28, 1985
Page 2

July 31, 1986, then all rights in the property shall revert to TMS.

(c) Mr. Beatty will have an option to renew said one year period for an additional six months if he has been unable to complete such a financing/distribution contract within the initial one year period.

(d) If a financing/distribution agreement is entered into within the time specified in 2(b) or (c), but principal photography of the picture is not commenced within one year from signing of the financing/distribution agreement, then all such rights shall nevertheless revert to TMS, provided that Mr. Beatty will have an option to renew said one year period for the start of principal photography for an additional year upon advance payment of the sum provided for under 3(a)(2) below.

3. Payments to TMS

If the rights do not revert to TMS, the following shall apply with reference to the picture:

(a) TMS shall be paid $500,000 as a "rights fee," payable as follows:

(1) $125,000 on signing the financing/distribution agreement;

(2) $125,000 on start of principal photography; and

(3) $250,000 deferment; the term "deferment" as used herein is defined as an amount payable, pari passu with other such deferments, when actual break-even is reached (as customarily defined in the U.S. motion picture business, i.e., the point at which gross receipts less distribution fees and costs equal production costs plus interest) from the first gross receipts after such break-even, less only distribution costs and fees incurred thereafter, and before payment of any share of net profits to any net profit participant.

(b) The foregoing payments shall be non-refundable.

(c) In addition to the payments specified under 3(a) above, TMS shall receive a sum equal to 6% of 100% of the net profits of the picture. In determining net profits of the

Mr. Warren Beatty
August 28, 1985
Page 3

picture, the maximum amount of deferments deducted from net profits shall be $500,000.

4. **Payments to TMS - Sequels and Remakes**

TMS shall receive one-half of the foregoing on all sequels or remakes.

5. **Series Television**

(a) TMS shall receive $2,000 per half hour program, and $3,500 per program if the program is longer than a half hour, which payment shall cover the first two uses thereof as defined in the then-current WGA Television Film Freelance Basic Agreement. Within ten days following the first telecast of the third use of any program, Mr. Beatty shall pay to TMS an additional amount equal to 50% of the above amounts, and within ten days following the first telecast of each of the fifth and seventh uses an amount equal to 25% of the amount specified above.

(b) TMS' profit participation in series television programs shall be the same as for motion pictures.

6. **Television Specials**

(a) TMS shall receive $15,000 per half hour, $25,000 for each hour, and $50,000 or the network rights allowance, whichever is greater, for each show running one hour or more. Such payment shall cover the first use thereof as defined in the then-current WGA Television Film Freelance Basic Agreement. Within ten days following the first telecast of each other use of any special, Mr. Beatty shall pay to TMS an additional amount equal to 50% of the foregoing amount.

(b) TMS' profit participation in television specials shall be the same as for motion pictures.

7. **Retained Rights**

(a) TMS will retain all rights in and to the property not specifically granted to Mr. Beatty, including, without limitation, animation, comic strip, publishing (other than publishing of materials advertising or exploiting any motion picture or television series or special based on the property), merchandising, radio, cartoon syndication, and live stage rights. Except as otherwise specified herein and subject to rights of reversion, all rights granted are in perpetuity.

Mr. Warren Beatty
August 26, 1985
Page 4

    (b) TMS warrants that it has the sole and exclusive right to enter into this agreement, and agrees to extend to Mr. Beatty the same representations and warranties that Chester Gould extended to Art Linson Productions, Inc., in their agreement dated October 20, 1977, subject to the listing of previous uses of the property in an updated copyright report to be furnished by Brylawski and Cleary and subject to a listing of rights granted by TMS, Gould and his representatives since October 20, 1977.

8. **Merchandising**

    (a) Mr. Beatty will receive 20% of the domestic gross merchandising revenue and 27-1/2% of the foreign gross merchandising revenue after deducting any fee paid to a foreign licensing agent not affiliated with TMS. Mr. Beatty's share of such merchandising revenue will be paid to him no less frequently than quarterly, together with a written report on the amounts and sources of such revenues.

    (b) "Gross merchandising revenue" as used herein includes the gross payments and other consideration, without deduction of any sort, from manufacturers and other licenses, for or in respect of the right to use (other than in the exhibition of the picture) the "Dick Tracy" characters (whether in cartoon form, photographed or otherwise) and/or "Dick Tracy" story-lines, and/or items or objects of any sort used by or associated with such characters (as portrayed in the picture or otherwise), including but not limited to such use in, on or as books, magazines, games, toys, radios, watches, puzzles, posters, clothing, souvenirs and items and objects of every sort whatsoever.

    (c) Comic strip revenues are specifically excluded from merchandising revenue.

    (d) TMS may use Mr. Beatty's name and his likeness portraying Dick Tracy in the picture, in merchandising connected with the picture, provided that: (1) such likeness is clearly identifiable as the character "Dick Tracy," rather than simply Mr. Beatty, as himself, (2) the likeness, the objects upon which it is to be used, and the manner of its use are expressly approved in writing by Mr. Beatty (such approval not to be unreasonably withheld), and (3) no license of such rights will extend beyond two years without Mr. Beatty's express written consent.

Mr. Warren Beatty
August 28, 1985
Page 5

        (e)  If TMS intends to license Mr. Beatty's said likeness, TMS will first give Mr. Beatty written notice, setting out the nature and term of that license, enclosing also a sample of the intended merchandise or object, the likeness to be used, and the manner in which said likeness would be used. If Mr. Beatty does not notify TMS of his disapproval of such license within 30 days after his receipt of such written notice and enclosures, he shall be deemed to have approved the same.

        (f)  Notices to TMS shall be given at its address listed above. Notices to Mr. Beatty shall be given to him c/o Traubner & Flynn, Business Management, 1849 Sawtelle Boulevard, Suite 500, Los Angeles, California 90025, with a copy to Bertram Fields, Esq., at his address shown above. Except as expressly provided to the contrary, such notices shall be effective on mailing to such addresses by certified or registered mail.

    9.   Reversion

        In the event that, within five years after the initial domestic release of the picture, or any subsequent theatrical picture or television series or special, photography has not commenced on either another theatrical motion picture or television series or special, TMS may give Mr. Beatty notice of its intention to effect a reversion of all rights granted hereunder, provided that Mr. Beatty will continue to have such non-exclusive rights in the property as may be necessary to permit the continued exploitation in and by any and all media of any motion picture or television series or special produced pursuant to rights granted herein or of rights therein or connected therewith. If within two years after receipt of said notice, such principal photography has not commenced, then TMS, by a further written notice to Mr. Beatty, may effect such a reversion.

    10.   Characters

        Mr. Beatty recognizes that in creating future cartoons for newspaper or magazine publication in comic strip format, TMS must be free to utilize the characters previously utilized and appearing in the property and any other material and descriptions and incidents relating thereto without fear of claims of infringement from any person participating in the production of a motion picture, television series or special. Accordingly, neither Mr. Beatty nor any writer or other person participating in the preparation of material for, or production of, a motion picture, television series or special pursuant to

Mr. Warren Beatty
August 28, 1985
Page 6

rights granted hereunder, shall make, or have any right to make, any claim against TMS or anyone claiming rights through TMS based upon an allegation that such person, in preparing any future cartoon for newspaper or magazine publication, has infringed upon, or made use of, any material created in the course of preparation for, or production of, a motion picture, television series or special pursuant to rights granted in this Agreement. Mr. Beatty agrees to incorporate the provisions of this Paragraph 10 in any agreement entered into between him and any writer, producer, director or other person whose services will include the creation of legally protectible literary property. Notwithstanding the foregoing, this Paragraph 10 shall not give TMS rights in any new character created for motion picture or television production or the right to use the storyline of any such production, and this paragraph shall be subject to the requirements of the WGA Minimum Basic Agreement from time to time in force. Should the WGA Minimum Basic Agreement require some payment or contribution to or for the benefits of any writer and/or the WGA by reason of the use of such writer's work by TMS in a newspaper or magazine, TMS will pay and hold Mr. Beatty harmless from that payment or contribution.

This letter agreement shall constitute our agreement until a more detailed contract is prepared and executed by both parties.

Very truly yours,

TRIBUNE MEDIA SERVICES, Inc.

By: /s/ Robert S. Reed
ROBERT S. REED, President

ACCEPTED AND AGREED:

/s/ Warren Beatty
WARREN BEATTY