# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

STATE OF CALIFORNIA    )
                       : ss.:
COUNTY OF LOS ANGELES  )

Scott B. Zolke, being duly sworn, deposes and says:

1. I am a Partner of Loeb & Loeb LLP (the "Firm"), which maintains offices at 10100 Santa Monica Boulevard, Suite 200, Los Angeles, California 90067.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

LA1872115.1
213369-10005

2

2. This Affidavit is submitted in connection with an Order of the United States Bankruptcy Court for the District of Delaware, entered on or about January 15, 2009, authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary course of business during the pendency of these chapter 11 cases.

3. The Firm has represented and advised the Debtors as it relates to television programming and licensing, and other intellectual property initiatives with respect to certain aspects of the Debtors' business operations. The Debtors have requested, and the Firm has agreed, to continue to provide such services to the Debtors on a postpetition basis during the course of these chapter 11 cases.

4. The Firm's current customary hourly rates, subject to change from time to time are $550 - $950 for partners; $375 - $900 for of counsel; $350 - $950 for senior counsel; $275 - $550 for associates; and $75 - $400 for para-professionals. In the normal course of its business, the Firm revises its billing rates on January 1 of each year and requests that, effective January 1 of each year, the aforementioned rates be revised to the regular hourly rates which will be in effect at that time.

5. In the ordinary course of its business, the Firm maintains a database for purposes of performing "conflicts checks." The Firm's database contains information regarding the Company's present and past representations. Pursuant to Federal Rule of Bankruptcy Procedure 2014(a), I obtained a list of the entities identified in Rule 2014(a) from counsel to the Debtors for purposes of searching the aforementioned database and determining the connection(s) which the Firm has with such entities. The Firm's search of the database identified the following connections:

LA1872115.1
213369-10005

      (a)      Tribune Broadcasting Company

      (b)      Tribune Media Services, Inc.

6. Neither I nor any partner of, or professional employed by, the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm, as permitted by 11 U.S.C. §504(b).

7. I understand that any compensation paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

8. Neither I nor [any principal, partner, director, officer, etc.] of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed. If the Firm is not an law firm, the Firm does not hold an interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

9. The Debtors owe the Firm $87,335.00 for prepetition services. The Firm is not waiving any and all claims that it has against the Debtors, including the amount referenced in the prior sentence.

10. The Firm currently holds a retainer from the Debtors in the approximate amount of $-0-. The Firm will apply the outstanding retainer balance as fees and expenses become due pursuant to this Court's order authorizing the employment of "ordinary course" professionals.

11. As of the Petition Date, the Firm was party to a services agreement with the Debtors. A copy of such agreement, together with any agreement(s) that the Firm and the

3

Debtors intend to govern their relationship after the Petition Date, is attached as <u>Exhibit 1</u> to this Affidavit.

    12.    The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on   6 | 8  , 2009

_____
Affiant

Sworn to and subscribed before me
this _8th_ day of _June_ 2009

_____
Notary Public

> DONNA WOLFE
> Commission # 1743097
> Notary Public - California
> Los Angeles County
> My Comm. Expires May 28, 2011

**LOEB & LOEB**

MARY INNIS
for Loeb & Loeb LLP

321 North Clark Street
Suite 2300
Chicago, IL 60610-4746

Direct 312.464.3133
Main 312.464.3100
Fax 312.803.2120
minnis@loeb.com

*Revised Feb. 16, 2007 -BF*

Via E-mail

January 31, 2007

Beth Fulkerson, Esq.
Tribune Company
435 North Michigan Avenue
Suite 600
Chicago, Illinois 60611-4001

Dear Beth:

I am extremely pleased that you have chosen our firm to represent the company. This letter will ~~are~~ serve to outline the terms and conditions of that representation. ~~If you have any questions concerning any of the information provided in this letter, I will welcome your call.~~ *To the extent that this letter and the Guidelines conflict, the Guidelines control.*

**1. Scope of Services.**

Our initial responsibilities on your behalf will be intellectual property, privacy and advertising, marketing, and promotions counseling*, in combination with Tribune Company's Retention Guidelines)*. Thereafter, we will perform such further legal services for you as you and we may agree upon from time to time. All further legal services will be governed by the terms of this letter.

We also view it as an important part of our relationship to explore with you alternative ways of obtaining a satisfactory result for you. These alternatives may include exploring settlement opportunities, and sometimes involve consideration of alternative dispute resolution ("ADR") procedures. These procedures, which can be less expensive than full scale litigation include, without limitation, arbitration and mediation. We will discuss these procedures further with you if any of the ADR techniques appear to be appropriate in this matter. Of course, if you have any questions as to the immediate advisability of using any of these ADR procedures, we would be happy to discuss them with you at your request.

**2. Fees.**

Our fees for services are based upon a number of factors, including the complexity and novelty of the services which we have been engaged to perform, the degree of responsibility that we have undertaken and a variety of other factors. However, the primary measure for our fees will be the actual time expended performing legal services multiplied by the hourly rates in effect for the lawyers, law clerks and legal assistants performing those services. My present hourly rate is $550 per hour and I will be primarily responsible for the representation. With your approval, other attorneys, paralegals, and personnel may also be involved in our representation from time to time. Our firm may change the hourly rates for its personnel as needed.

It is the policy of our firm that, to the extent consistent with our professional responsibilities, we will perform no further legal services for you if you become more than ~~sixty~~ *120* days delinquent in the payment of our bills, unless that delinquency is cured.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations



Beth Fulkerson, Esq.
January 31, 2007
Page 2

3. **Expenses Incurred and Other Charges.**

In addition to our fees, we will expect you to reimburse us for all expenses incurred on your behalf, including long distance telephone calls, travel costs, air freight, commercial messengers, computer research terminal time and printing costs, secretarial and word processing overtime when dictated by your needs and the like; we will expect you to pay us for all photocopying (currently 15¢ per page) and telecopying (currently 50¢ per page) done by us with respect to your matter(s); and if we are asked to incur any such expenses on your behalf in excess of $2,000 in any one instance, we will ordinarily ask you to prepay those expenses. In addition, we will ordinarily expect you to pay directly the fees and expenses of any third parties, such as consultants, appraisers, expert witnesses and court reporters, engaged with respect to your matter(s), where such fees and expenses exceed $2,000 in any one instance. In the event that, before or after our representation concludes, we are served with a subpoena or request for production of documents or testimony by any third party, you agree to pay for all of our reasonable fees and costs incurred in responding to such demand.

*[handwritten margin notes: "Mark this up", "See retention ggln", "No mark ups."]*

4. **Billing Practices.**

We will send an invoice, monthly, detailing all of the fees, costs and expenses incurred during the previous month. These invoices will give you sufficient detail to enable you to determine who performed the services on your behalf, the amount of time expended in performing those services, the nature of the expenses incurred, ~~and any additional or premium billing which we may charge as a result of any of the special~~ or unusual factors previously described which are ~~factored into our billing practices.~~ Initially, the amount of these invoices will be debited against your retainer. After your retainer has been exhausted, we will expect payment upon receipt.

*[handwritten: "and"]*

5. **Exclusion of Insurance Services.**

The scope of our services does not include an evaluation of your insurance coverage. We recommend that you review your insurance coverages to determine whether any of the losses or expenses (including our legal fees) which you have incurred or may in the future incur with respect to this matter may be reimbursable by your insurance. You may wish to consult with your own risk management employees or with your special insurance coverage counsel as to potential insurance coverage. In the event you are not able to consult with such risk management employees or special insurance coverage counsel, we will review your insurance policies if you wish us to do so.

6. **Termination of Representation.**

The attorney-client relationship is one of mutual trust and confidence, and you are, of course, free to terminate our relationship at any time. If you do so, we will be pleased to reimburse you immediately for any unexpended portion of your retainer. We will also be free to terminate the relationship at any time, and should that unlikely event occur, we will do so in a manner which complies with applicable law, court rules and the Rules of Professional Conduct of the State Bar of Illinois. These rules permit us to withdraw if, among other reasons, your conduct renders it unreasonably difficult for us to carry out the representation effectively, you fail to pay the fees or costs of third parties engaged with respect to a matter or you fail to pay our fees and costs in accordance with this Agreement.



Beth Fulkerson, Esq.
January 31, 2007
Page 3

### 7. IRS Circular 230 Legend on Correspondence.

As you may know, the Treasury Department has issued new rules that dictate how we must communicate with our clients when we render written federal tax advice. Basically, the rules require either the issuance of a written communication that meets the requirements of a formal opinion or the placement of a legend on any written communication stating that it cannot be relied on for the purpose of avoiding a federal tax penalty. Accordingly, unless we expressly agree to give advice that you can rely on to avoid the imposition of a federal tax penalty, all correspondence, memoranda and other writings (including e-mails) relating to any federal tax advice that you receive from us will contain a non-reliance legend, such as:

> Circular 230 Disclosure: To assure compliance with Treasury Department rules governing tax practice, we inform you that any advice contained herein (including in any attachment) (1) was not written and is not intended to be used, and cannot be used, for the purpose of avoiding any federal tax penalty that may be imposed on the taxpayer, and (2) may not be used in connection with promoting, marketing or recommending to another person any transaction or matter addressed herein.

Additional legends may be included in particular circumstances.

### 8. File Retention Policy.

We will retain your files for six years following the conclusion of your matters. If you do not request the return of your files in writing before the end of that six-year period, upon the expiration of the period we will have no further obligation to retain the files and may in our discretion destroy the files without further notice to you. If you wish us to retain your files beyond six years, we may charge you for the cost of continued storage.

### 9. Arbitration and Costs.

We look forward to a long and mutually productive relationship with you. However, if you become dissatisfied for any reason with the fees charged or the services we have performed, we encourage you to bring that to our attention immediately. It is our belief that most such problems can be resolved by good faith discussions between the parties. Nevertheless, it is always possible that some dispute may arise which cannot be resolved by discussions between us. We believe that such disputes can be resolved more expeditiously and with less expense to all concerned by binding arbitration than by court proceedings.

Arbitration is a process by which both parties to a dispute agree to submit the matter to an arbitrator and to abide by the arbitrator's decision. In arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to appellate review. Rules of evidence and procedure are often less formal and rigid than in a court trial. Arbitration usually results in a decision much more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides are usually substantially less. Of course, you are encouraged to discuss the advisability of arbitration with other counsel or any of your other advisors and to ask any questions which you may have.



Beth Fulkerson, Esq.
January 31, 2007
Page 4

By executing this letter you agree that if any dispute between you and the firm arises out of this Agreement, our relationship with you or our performance of any current or future legal services, whether those services are the subject of this particular engagement letter or otherwise, that dispute will be resolved solely by binding arbitration in Chicago, Illinois, before a retired Illinois superior court judge under the auspices and the commercial arbitration rules of the American Arbitration Association. The disputes subject to binding arbitration will include, without limitation, disputes regarding attorneys' fees or costs and those alleging negligence, malpractice, breach of fiduciary duty, fraud or any claim based upon a statute, as well as any dispute as to the arbitrability of any such claims. The arbitrator's award will be final and binding, and judgment thereon may be entered in any court of competent jurisdiction. Arbitration will be the sole means of resolving any such disputes, and both parties waive their rights to resolve disputes by jury trial or other court proceedings.

The prevailing party in any such arbitration or litigation will be entitled to recover all attorneys' fees (including, in the event we are the prevailing party, the value of the time of all attorneys in our firm who perform legal services in any such arbitration or litigation, computed at their normal billing rates), all experts' fees and expenses and all costs (whether or not such costs are recoverable pursuant to the Illinois Code of Civil Procedure) which may be incurred in connection with either obtaining or collecting any judgment and/or arbitration award, in addition to any other relief to which that party may be entitled.

10. **Governing Law.**

This agreement and its enforcement shall be governed by the laws of the State of Illinois.

11. **Conflict of Interest.**    *See retention*
                                   *guidelines*

You agree that we may represent, now and in the future, other persons and entities. In particular, you agree that while we are representing you in active, pending matters, we may represent other clients in any matters adverse to you (or any of your affiliates), whether in transactions, litigations, arbitrations or otherwise, provided that the matters (a) are not substantially related to active matters we are working on for you, (b) do not involve situations where we have obtained confidential information from you that is material to the new matter(s) and (c) we obtain a conflict waiver from you. Additionally, if our representation of you is terminated, we may thereafter represent other clients with interests adverse to yours (even in litigation), provided that the representation does not involve confidential information we have obtained from you that is material to those matters. By executing this letter you are agreeing to waive any conflict of interest that arises in such situations.

If you ever have any concerns about our work, please feel free to contact John Frankenheimer, our Co-Chairman, or Lance Jurich, the Co-Managing Partner of our Litigation Section.

If you agree with the foregoing, please sign the enclosed copy of this letter, and return it to me together with your retainer check.

*No trans. waiver per Guidelines*



Beth Fulkerson, Esq.
January 31, 2007
Page 5

I am looking forward to working with you. Thank you again for choosing Loeb & Loeb LLP.

Sincerely,

Mary Innis
for Loeb & Loeb LLP

MI:ms
66666666666
CH32324.1

The undersigned has read and understood this agreement and acknowledges that this agreement is subject to binding arbitration as provided above. The foregoing accurately sets forth all the terms of your engagement and is approved and accepted as of __February 5, 2007__.

**TRIBUNE COMPANY**

By: _Beth Fulk_____

Its: _Senior Counsel, IP & Interactive_

# TRIBUNE COMPANY RETENTION POLICY

Tribune Company and counsel must work together to obtain efficiently delivered quality legal services. To that end, by accepting an assignment your firm agrees to the following Tribune Retention Policy:

I. **Retention of Counsel**

Tribune's Law Department is responsible for strategic and substantive decisions regarding the course of each matter, as well the selection of the appropriate outside attorney to handle each aspect of each matter. To improve our ability to make such judgments and to coordinate the work of in-house and outside counsel, an in-house attorney is assigned as the Managing Attorney for each matter. It is your responsibility to keep the Managing Attorney regularly apprised of all developments in each matter. The Managing Attorney should be copied on all communications and correspondence relating to the matter. Tribune expects you to provide the Managing Attorney ample time to review and suggest revisions in substantive pleadings, agreements or other case-related documents. Periodic litigation updates, generally monthly, for all pending litigation matters must also be provided to the Managing Attorney.

II. **Staffing**

The number of attorneys and legal assistants assigned to a matter must be approved by the Managing Attorney before work on the matter may begin. Generally, Tribune expects each matter to be staffed by one partner, and if necessary, one associate.

Tribune also expects that assigned attorneys will remain on the matter to conclusion unless authorized by Tribune.

Tribune will be provided the hourly billing rates for individual attorneys and legal assistants assigned to Tribune matters. Should the firm elect to change its rates during the pendency of any Tribune matter, the firm must notify Tribune in writing at least 30 days before the date the new rate is to take effect.

Assigned staff must perform tasks appropriate to their experience and billing rates. Generally, Tribune will not pay for:

- Routine tasks performed by attorneys, such as summarizing depositions or organizing trial exhibits, that are more appropriately assigned to a legal assistant.

- Staffing inefficiencies caused by the unavailability of personnel including expenses related to familiarizing a replacement attorney or legal assistant with an existing matter.

- More than one attendee at any deposition, hearing or other proceeding unless preapproved by Tribune Managing Attorney.

- Non-attorney/non-paralegal staff, such as library staff or computer technicians.

- Secretarial time, or for services of word processors, proofreaders, records clerks, facsimile operators or similar firm employees. In extraordinary circumstances, the Managing Attorney may approve the reimbursement of overtime payments to such employees. When overtime payments are approved, you agree to make every effort to keep such overtime charges to a minimum.

- Summer associate or intern time.

- Administrative activities, such as preparing invoices, annual auditor responses or discussing billing, budgets or other related reports.

- Any other charges that are part of the normal overhead of operating an office, including office supplies, staff meals and transportation. Charges for docket clerks or court runs by firm personnel are also considered normal overhead.

- Travel time should not be billed unless the attorney actively is engaged in and working on Tribune matters while traveling and such travel has been approved in advance.

III. Budget

Unless otherwise directed by the Managing Attorney, a budget is to be prepared for each matter and submitted to the Managing Attorney for approval before work on the matter begins. The Managing Attorney may request a separate budget for any segment of any matter. If the matter assigned is a litigation matter, the responsible attorney should provide an itemized list of tasks and their related costs at the outset of the representation. The list should include a discovery plan which details the costs for depositions, motions, document production, expert discovery and other trial preparation. Tribune recognizes that budgets for matters may change with changed circumstances. However, any changes in the projected budget should be discussed as soon as possible with the Managing Attorney. Where legal bills are in excess of 10% over the budget provided by the responsible attorney, Tribune reserves the right not to pay the excess fees unless the Managing Attorney was notified in writing of the anticipated increases over the budgeted amount and the Managing Attorney agreed to the revised budget.

IV. Billing Procedures

Unless otherwise agreed in writing, bills and budget statements should be submitted monthly, and each bill shall cover work performed in the preceding calendar month.

Tribune expects to receive monthly bills by the fifteenth (15th) day of the month. Tribune retains the right to obtain additional information regarding any bill.

V.     **Billing Format**

Billing statements should provide the Managing Attorney with a clear understanding of the work performed on Tribune's behalf, by whom the work was performed, and the cost and duration of each work segment. Where work is performed on more than one matter in any month, each matter should be separately detailed in the monthly bill.

Each bill shall contain the following information:

- the name of the Tribune entity (e.g., Tribune Media Services, Los Angeles Times, Newsday, Sun-Sentinel, Daily Press, Greenwich Time, The Baltimore Sun, The Orlando Sentinel, The Hartford Courant, The Morning Call, The Advocate) for which the services were performed;

- a file number or brief identifier of the matter to which the services relate;

- the billing period involved;

- a detailed description of each task performed in single-activity time entries, including the date it was performed, who performed it, their rate, the time expended and the charges for each task;

- a summary showing the rate, total hours/charges, and rank (e.g., partner, associate, legal assistant) of each staff member billing;

- a description of any reimbursable expenses or disbursements made on behalf of Tribune during the statement period;

- billing in .10 hour increments;

- a detailed description of all work including, but not limited to:

    - the name and affiliation of any other person with whom the attorney or legal assistant meets, confers or otherwise interacts with and the subject matter of any such meeting, telephone call or other action;

    - the identity of any deponents and the subject of the deposition;

    - the specific subject matter of any research performed;

    - the specific motion, brief or agreement worked on and the precise nature of the work performed; and

3

-- the identity of any materials/documents reviewed.

Generic descriptions, such as "drafted brief," "worked on agreement," "telephone call," "conference," "reviewed documents," "research," or "work on project or case" are not acceptable for billing purposes.

Each monthly bill shall also be accompanied by a statement that includes the budget for the matter. The bill should identify fees and expenses to date as compared to the budget. The partner responsible for each matter should sign all billing statements, representing to Tribune that he or she has reviewed the statements and that they are in accord with all provisions and instructions of this policy.

VI.   <u>Expenses</u>

Tribune will pay actual costs for expenses. Copies of actual invoices for any single expense over $1,000 must be included with the bill. All bills should contain a summary of charges for each expense totaled by category.

Tribune will only reimburse:

- reasonable expenses for computerized legal research such as Lexis and Westlaw, not to exceed actual cost;

- local and long-distance calls on an actual-cost basis;

- photocopying at actual cost, not to exceed .10 per page;

- reasonable travel expenses including coach or economy airfares, car rental and meals;

- reasonable hotel expenses not to exceed $175 per night unless travel is to a major urban center where standard hotel rates regularly exceed that amount;

- actual charges billed for messenger deliveries, including overnight and express, that are incurred in the interest of dispatch and reliability.

Tribune will not pay for:

- local transportation charges;

- cellular telephone charges;

- travel time for attorneys or legal assistants unless they are performing work for Tribune and the Managing Attorney has approved the compensation in advance;

4

# TRIBUNE COMPANY RETENTION POLICY

VII. <u>Conflicts of Interest</u>

Tribune is concerned about potential conflicts of interest. Your attorneys should review proposed assignments for any conflicts of interest regarding any Tribune entity before accepting any matter, and should promptly notify the Managing Attorney of any actual or potential conflicts. Tribune also expects you to establish a conflict identification system that will allow you to notify our senior counsel in advance if your firm is considering representing a client in any of the following types of matters:

- Opposing a public records request under any Freedom of Information Act or similar statute;

- Seeking to deny the public or any journalist or media organization (not limited to Tribune or any of its subsidiaries) access to any meeting, proceeding or information, other than routine motions for discovery protective orders that do not involve the sealing of judicial records in court files;

- Subpoenaing any journalist or media organization for testimony, documents or information;

- ~~Representing a client pursuing a defamation~~ **As a Defense Counsel Section member of the Media Law Resource Center, Loeb & Loeb LLP has confirmed that it does not represent plaintiffs in libel** or invasion of privacy ~~claim~~**litigation** against ~~any journalist or media organization;~~
- ~~Representing any client in any other action against any media organization~~**media defendants and/or journalists**.

Tribune acknowledges that the above matters may not necessarily present a conflict under traditional canons of ethics. Because of the special history of Tribune Company and our commitment to the protection of First Amendment freedoms, however, we believe that advance notice and open communication about these types of legal matters will be in the best interest of maintaining a long-term and rewarding relationship between us.

*[handwritten: David - D. Mirell worked this out w/Tribune GR]*

Feb-16-07   04:16pm   From-                                                            T-233   P.011/012   F-390

- out-of-town entertainment expenses;
- in-town or in-office working meals.

Fees and expenses relating to the use of independent contractors such as expert witnesses, investigators, court reporters or independent paralegals must be approved in advance by the Managing Attorney. Extraordinary expenses, such as computerization of litigation documents, must also be approved in advance by the Managing Attorney. All such fees and expenses should be billed on an actual-cost basis and should be billed in a format identical or substantially similar to the main billing statement.

VII.   Conflicts of Interest

Tribune is concerned about potential conflicts of interest. Your attorneys should review proposed assignments for any conflicts of interest regarding any Tribune entity before accepting any matter, and should promptly notify the Managing Attorney of any actual or potential conflicts. Tribune also expects you to establish a conflict identification system that will allow you to notify our senior counsel in advance if your firm is considering representing a client in any of the following types of matters:

- Opposing a public records request under any Freedom of Information Act or similar statute;

- Seeking to deny the public or any journalist or media organization (not limited to Tribune or any of its subsidiaries) access to any meeting, proceeding or information, other than routine motions for discovery protective orders that do not involve the sealing of judicial records in court files;

- Subpoenaing any journalist or media organization for testimony, documents or information;

- As a Defense Counsel Section member of the Media Law Resource Center, Loeb & Loeb LLP has confirmed that it does not represent plaintiffs in libel or invasion of privacy litigation against media defendants and/or journalists.

Tribune acknowledges that the above matters may not necessarily present a conflict under traditional canons of ethics. Because of the special history of Tribune Company and our commitment to the protection of First Amendment freedoms, however, we believe that advance notice and open communication about these types of legal matters will be in the best interest of maintaining a long-term and rewarding relationship between us.

VIII.   General

All Tribune matters must be treated confidentially in all respects. Tribune reserves the right to require additional information regarding your invoices and/or that you reorganize the information currently requested. By way of example, Tribune may require that you

supply your invoices electronically. By representing Tribune, you agree to comply with such requests, and to do so at your own expense.

Please review this policy and let us know if you have any questions or comments regarding your representation of Tribune. We look forward to working with you.

6