IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Related to Docket Nos. 1233, 1275 and 1307 |
| | Hearing Date: June 25, 2009 at 10:00 a.m. EDT |

## DEBTORS' OBJECTION TO THE AMENDED MOTION OF JAYNE CLEMENT FOR RELIEF FROM THE AUTOMATIC STAY

Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the Amended Motion of Jayne Clement ("Clement") for Relief from the Automatic Stay filed on June 8, 2009 [Docket No. 1307, amending Docket No. 1233] (the "Motion"), to permit Clement to proceed with an

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-5742857v1

CH1 4709290v.4

individual wrongful termination lawsuit (the "Individual Suit") and a putative class action lawsuit (the "Putative Class Suit", and together with the Individual Suit, the "Lawsuits") in the Superior Court of California, County of Los Angeles. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Motion should be denied because if the stay is lifted to permit either of the underlying Lawsuits to continue, the Debtors will be forced to incur substantial defense and other costs, which are not covered by insurance and which will thus deplete the estate assets available to other unsecured creditors. Moreover, proceeding with either of the Lawsuits at this time would divert estate resources and management attention from the reorganization and would likely open the floodgates to additional requests for relief from the stay to continue prepetition litigation. Clement has failed to establish that maintenance of the automatic stay affects her more than any other unsecured creditor who is prevented by the automatic stay from proceeding with a claim or that there is any likelihood of success on the merits of either of the Lawsuits. By contrast, the Debtors believe they have strong defenses to each of the causes of action raised in the Lawsuits, but that, in any event, Clement's claims are best resolved as part of the Debtors' claims resolution process. Each of these considerations weighs strongly against granting Clement's Motion, as discussed in detail below.

## ARGUMENT

2. The automatic stay imposed by section 362(a) prevents "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the case under [the Bankruptcy Code]." The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in

2

defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir. 1982).

        3.      Section 362(d) of the Bankruptcy Code provides that a bankruptcy court may grant relief from the automatic stay imposed by section 362(a) where the moving party demonstrates "cause".[2] Generally, the party seeking relief from the automatic stay has the initial burden to establish its prima facie case in support of relief, which can then be rebutted by the party opposing such relief. See, e.g., In re RNI Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006); Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 577 (Bankr. D. Del. 1992). In determining whether a litigation claimant has demonstrated sufficient cause to lift the automatic stay, courts in this District routinely consider (i) whether allowing the litigation to continue in another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii) whether maintaining the stay will cause any hardship to the claimant and whether this hardship is greater than the resulting hardship to the Debtors; and (iii) the probability of the claimant prevailing on the merits of the lawsuit. See, e.g., Rexene, 141 B.R. at 576; In re The SCO Group, Inc., 395 B.R. 852, 857 (Bankr. D. Del. 2007). Not one of the considerations weighing in favor of stay relief in Rexene or SCO Group is present here.

---

[2] Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —

        1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

B. **Significant Prejudice to the Debtors Will Result if the Stay is Lifted to Permit Either of the Lawsuits to Continue**

4. If the stay is lifted and the Lawsuits were permitted to continue, the Debtors would be required to expend substantial estate resources on defense costs in the near term. The Lawsuits at issue in the Motion represent two of at least 15 prepetition employment-related cases against the Debtors, which have no applicable insurance coverage. The circumstances of the Lawsuits are in direct contrast to those in Rexene, where discovery was "nearly complete" and the district court had already certified the class and denied the debtor-defendant's motion for summary judgment prior to the bankruptcy filing, 141 B.R. at 577, and in SCO Group, where the parties were on the eve of trial as of the bankruptcy filing and the district court had made substantial findings on the parties' cross motions for summary judgment, 395 B.R. at 855-57. Here, only preliminary discovery has occurred and no class has been certified in the Putative Class Suit, only preliminary discovery and depositions have occurred in the Individual Suit, and there have been no rulings on dispositive motions in either the Putative Class Suit or the Individual Suit. Therefore, the argument made by Clement's Motion—that lifting the automatic stay to permit her to continue the Lawsuits against the Debtors is without prejudice to the Debtors—is simply not supported by the facts.

5. The Debtors' concerns regarding estate preservation, as expressed in their prior objections to motions for relief from the stay,[3] are heightened in this instance where pretrial proceedings in each of the Lawsuits have been exceedingly litigious even in their earliest stages. The Debtors have already incurred substantial defense costs responding to Clement's

---

[3] See, e.g., Debtors' Objection to the Motion of Allen Francisco for Relief From Stay Under Section 362 of the Bankruptcy Code (the "Francisco Objection") [Docket No. 465]; Debtors' Objection to the Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A., and Gutman Pain/Accident Center, Inc. (the "Gutman Objection") [Docket No. 1079]; and Debtors' Objection to the Motion of Schur Packaging Systems, Inc. for Relief from the Automatic Stay (the "Schur Objection") [Docket No. 1220].

blunderbuss discovery requests in the Putative Class Suit, including a demand that the Debtors disclose the names and personal contact information of certain current and former employees of the Debtors who, by definition, cannot be members of the putative class. The Debtors have numerous defenses to class certification and to the substantive claims in the Putative Class Suit. In the Individual Suit, the Debtors have a pending motion for summary judgment requesting dismissal of Clement's wrongful termination, defamation, labor code violation, and breach of implied-in-fact contract claims on the basis that each such claim fails as a matter of law.[4] The Debtors anticipate that this dispositive motion will be contested and that additional discovery would be pursued by Clement in advance of that opposition. In light of the pending disputes over discovery and class certification in the Putative Class Suit, the Debtors' many defenses to Clement's claims in each of the Lawsuits, and the history of unabated opposition from Clement, the Debtors anticipate that trial preparation in each of the Lawsuits will be contentious, protracted, and expensive.

6. Further, and also as discussed in the Francisco objection, Gutman Objection, and Schur Objection, the Debtors are subject to a significant number of prepetition litigation cases. Should this Court grant the relief requested in the Motion, it would likely create a domino effect with respect to (i) at least 50 other prepetition personal injury cases pending against the Debtors, all but one of which are subject to a $1 million deductible obligation;[5] (ii) at least 45 prepetition media-related cases, all of which expose the Debtors to not only a $1 million

---

[4] Although not disclosed in the Motion, in June 2008, the Debtors successfully obtained Clement's withdrawal of her first cause of action in the Individual Suit, for wrongful termination on the basis of age discrimination. (See Excerpt from Depo. of Jayne Clement at 130:15-131:2, attached hereto as Exhibit A.) Notwithstanding this withdrawal, the Motion contains several references to alleged age discrimination, which the Debtors deny.

[5] The insurance coverage applicable to one of the at least 50 other prepetition personal injury cases has a $500,000 deductible per occurrence. The Debtors' defense costs are not insured by the Debtors general liability insurance policy unless and until the Debtors incur $1 million in "loss" under the policy (i.e., in judgment or settlement).

5

dollar deductible obligation, but also to significant additional defense costs;[6] and (iii) at least 15 employment–related cases, none of which are covered by insurance. In fact, a number of the plaintiffs in the personal injury and media-related cases have already threatened to seek relief from the automatic stay and would only be encouraged to do so if the stay is lifted in this instance.

       7.      The Debtors are at an important stage in their reorganization. Lifting the stay to allow continuation of the Lawsuits and other prepetition litigation claims at this time would require expending estate resources and diverting management attention from their reorganization efforts, undermining the purpose of chapter 11 proceedings, which are designed to provide the Debtors with a breathing spell and to liquidate claims efficiently through a claims allowance process. See, e.g., Bormann v. Raymark Indus. Inc., 946 F. 2d 1031, 1036 (3d Cir. 1991) (noting that the automatic stay is designed to provide debtors with a breathing spell). Contrary to the circumstances in SCO Group, where the court found that "the Debtors simply cannot file a confirmable plan of reorganization until they know what liability they will have" to the claimant, 395 B.R. at 859, because the underlying litigation concerned issues "essential in the administration of the bankruptcy case," id. at 854, no such essential issues are implicated by the garden variety employment claims raised in the Lawsuits.[7] To proceed with the Lawsuits at this time would only impede the Debtors' reorganization efforts.

---

[6] Details of the Debtors' prepetition litigation and the applicable insurance coverage are set forth in the Affidavit of Don Liebentritt, Executive Vice President and General Counsel of Tribune Company, in support of the Francisco Objection (the "Liebentritt Affidavit") [Docket No. 465] and the Affidavit of Jack Rodden, Vice President and Treasurer of Tribune Company, in support of the Gutman Objection (the "Rodden Affidavit") [Docket No. 1084]. The facts set forth in the Liebentritt Affidavit and Rodden Affidavit are incorporated herein by reference.

[7] In ¶ 38 of the Motion, Clement asserts that the "Debtors are prejudiced by the fact that such claims remain unliquidated and without a firm number, Debtors are unable to include such claims in any viable reorganizational plan." Yet in ¶ 35, Clement asserts that her "damages are specific and limited by law." The contradiction is never explained. As described herein, the Debtors believe that Clement's claims would best be resolved through a consensual claims resolution process, but in any event, such claims could be estimated or resolved in conjunction with a proposed plan at a future date.

### C. The Balance of Hardship Favors the Debtors and Maintaining the Automatic Stay

8. The Debtors' interests in maintaining the protections of the automatic stay far outweigh Clement's interests in obtaining relief therefrom. The only hardship alleged by Clement is that she is an individual with limited resources to support the litigation (Mot. at ¶ 45) and that her claims are affected with the passage of time (Mot. at ¶ 46). The facts of the Lawsuits do not support these assertions, and neither of these circumstances, even if they were true, elevates Clement's claims above those of any other creditor of the Debtors.

9. First, Clement's trial counsel in the Putative Class Suit is offered as class counsel on a contingency fee basis and the Debtors believe that Clement's trial counsel in the Individual Suit—the same attorney representing her in the Putative Class Suit—has likewise been retained on a contingency fee basis; therefore, any cost associated with the maintenance of the automatic stay is not borne by Clement. See SCO Group, 395 B.R. at 858 n. 6 (noting that the expense of trial would not unduly burden the debtor plaintiffs where trial counsel was retained on a contingency fee basis). Meanwhile, it is impossible to permit Clement to continue to pursue the Lawsuits without forcing the Debtors to directly pay the defense costs out of pocket, resulting in a diminished recovery for the claims of other, similarly situated creditors.

10. Second, the Debtors submit that the likelihood of evidence spoliation, broadly asserted by Clement, is practically nonexistent in either of the Lawsuits. The resolution of Clement's claims in the Putative Class Suit is not witness-intensive and, at core, involves only questions of law: whether, under Clement's employment and compensation agreements and applicable state law, she was entitled to receive certain sales commissions following her resignation. As to the Individual Suit, the Debtors do not anticipate any issues with respect to preservation of testimony or spoliation of documentary evidence. Each of the parties has taken

7

multiple depositions, thereby preserving testimony for the record, and there are no extraordinary or pressing circumstances that would impede further depositions or documentary discovery due to the passage of time or location of witnesses.

11. Both Clement and the Debtors will be in a better position to determine the amount of resources to expend in pursuing the Lawsuits once the Debtors have formulated and filed a plan of reorganization that indicates the estimated distribution on account of general unsecured claims. At that time, Clement's claims could be estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise liquidated. The Debtors and the Creditors' Committee are continuing their efforts to develop global alternative dispute resolution procedures for resolving prepetition litigation claims, which would enable the Debtors and prepetition litigation claimants to avoid substantial litigation costs. Granting Clement relief from the automatic stay at this juncture would contravene the Debtors' efforts to implement these claims resolution procedures and could potentially encourage other prepetition litigation claimants to seek relief independently of the uniform procedures that the Debtors and the Creditors' Committee are currently developing.

### D. Clement Has Failed to Demonstrate a Likelihood of Success on the Merits of the Lawsuits

12. Clement has failed to establish cause for lifting the automatic stay under the standards discussed above. As a result, the Debtors submit that the Court need not consider the probability of success on the merits of either of the Lawsuits. Should it nonetheless do so, however, it is apparent that Clement cannot make such a showing.

13. With respect to the Individual Suit, Clement has already withdrawn her age discrimination claim against the Debtors and all that remains is a garden variety employment termination case. Nothing in the Motion suggests a reason why each of the remaining causes of

action would not fail as a matter of law or that Clement has any probability of succeeding on the merits of the Individual Suit. The Debtors believe the evidence will show that Clement's working conditions were in no way unbearable and that her resignation was voluntary and in no way forced upon her.[8]

14. The Debtors have asserted numerous affirmative defenses to the Putative Class Suit that support a strong defense to Clement's claims and to class certification.[9] In addition, recent authority from the California Court of Appeal lends additional support to the Debtors' contention that Clement was not entitled to commissions following her resignation from Debtor Tribune Media Net, Inc., as she claims in the Putative Class Suit. Specifically, the court in Nein v. HostPro, Inc. held that the plaintiff was precluded by the plain language of his employment contract from collecting commissions after his termination. See 2009 Cal. App. Lexis 892 at * 29-31 (Cal. Ct. App. June 3, 2009). Clement was working under a similarly definitive contract precluding post-termination commissions. As such, Clement has provided no basis for this Court to conclude that she (or a putative class) has any probability of succeeding in state court if she were allowed to continue the Putative Class Suit at this time.

---

[8] Clement contends that she was forced to resign because defendant Donna Stokley ("Stokely"), her supervisor, created "intolerable" working conditions in retaliation for Clement's request for a raise one and a half years prior to her resignation. No reasonable person, however, would consider Clement's working conditions to be so objectively unbearable that she had no choice but to resign. The conditions about which Clement complains consist of: (1) her subjective perception that Stokley failed to "go to bat" for her; (2) the implementation of a rule that Clement contact Stokley with any concerns instead of other employees higher up in the chain-of-command; (3) one alleged rebuke of Clement for harassing other sales representatives about their pay levels; and (4) a requirement that her travel plans and expenses be approved in advance. Importantly, Clement continued to work for over a year and a half after the majority of these incidents occurred.

[9] In their answers to Clement's original complaint and first amended complaint in the Putative Class Suit, the Debtors raised numerous affirmative defenses, including that Clement failed to state facts sufficient to constitute claims upon which relief can be granted, that certain of the claims and causes of action were time-barred, that Clement failed to establish an employment relationship with certain of the Debtor defendants, that the doctrines of waiver, estoppel, laches, and unclean hands applied to the claims, and that the claims failed as a matter of law. Such defenses also apply to Clement's second amended complaint, filed on December 15, 2008, after the Petition Date, and which the Debtors have not yet answered.

## CONCLUSION

15. Clement has failed to demonstrate that "cause" exists for lifting the automatic stay. The Debtors will suffer great prejudice if the Lawsuits are permitted to proceed at this stage in the chapter 11 cases, while Clement will suffer no greater hardship than any other creditor with a pending claim. Under the present circumstances, there is simply no compelling reason to lift the automatic stay. For these reasons, the Motion should be denied.

Dated: Wilmington, Delaware
June 18, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION