**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 1325** |
| | **Hearing Date: June 25, 2009 at 10:00 a.m. EDT** |

**DEBTOR TRIBUNE MEDIA SERVICES, INC.'S OBJECTION TO**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Tribune Media Services, Inc., a debtor and debtor in possession in the above-captioned chapter 11 cases ("TMS" or the "Debtor"), hereby files this objection (the "Objection") to Defendant Warren Beatty's motion for relief from the automatic stay under Bankruptcy Code section 362(d)(1), filed on June 9, 2009 [Docket No. 1325] (the "Motion"). In support of the Objection, TMS respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Dick Tracy movie and television rights clearly implicates property of the Debtor's estate. Debtor's adversary proceeding, Adv. Pro. No. 09-50486 (KJC) (Bankr. D. Del. Mar. 19, 2009) (the "Adversary Proceeding"), seeks a declaration that the Debtor is currently entitled to the use and enjoyment of this valuable property interest, free of interference from Mr. Beatty. Mr. Beatty's 2008 California action against Debtor, the subject of this Motion, raises a similar dispute, seeking a declaration that Mr. Beatty controls these valuable Tracy rights (the "California Action"). As this Court can fully and efficiently resolve this equitable dispute over the Tracy rights, there is no basis to lift the stay on Mr. Beatty's California Action. To rule otherwise would force Debtor to engage in litigation over the Tracy rights on two fronts, wasting resources of both the parties and the courts, to the substantial prejudice of the Debtor.

2. Mr. Beatty's Motion essentially ignores the ongoing Adversary Proceeding, and reargues points from his previously-filed motion to dismiss, which Debtor already has refuted. Because Mr. Beatty tacitly ignores the effect of the Adversary Proceeding, his arguments about the traditional factors considered in a motion to lift the automatic stay are irrelevant as well as wrong. Importantly, Mr. Beatty's California Action has made no progress, having been stayed within three-weeks of its filing. Nor have the narrow issues raised in the current dispute ever been presented to, or considered by, the California court. Mr. Beatty's 2005 California lawsuit focused on whether the notice of reversion was appropriate and effective, which is not in dispute here. This 2005 lawsuit did not raise the central factual issue now in dispute: whether Mr. Beatty has "commenced principal photography" on a qualifying Dick Tracy television special within the two year window required by TMS's November 16, 2006 reversion notice. The Adversary Proceeding seeks fundamentally equitable relief – a determination as to the Debtor's right to the use and enjoyment of a valuable estate asset – and is a matter within this Court's "core" jurisdiction. Accordingly, this Court is the appropriate forum to resolve this dispute.

3. Mr. Beatty's claim of prejudice in having to proceed in Delaware lacks any evidentiary support and is belied by Mr. Beatty's active and ongoing litigation efforts to date. Significantly, pretrial processes – such as discovery and a motion for summary judgment – will be essentially the same for Mr. Beatty regardless of the forum. In the unlikely event that a trial is necessary to resolve the dispute, Mr. Beatty provides no evidence that he would unable to fully and fairly present his case before this Court.

4. Mr. Beatty similarly offers no evidence to show any likelihood of success in this matter as required in a motion for relief from stay under section 362(d) of the Bankruptcy

Code. Instead, he baldly asserts having timely commenced principal photography on a qualifying Dick Tracy television special, but offers no affidavit, document, or other evidentiary support for such assertions. Mr. Beatty cannot use his alleged creation of a Tracy special as a sword to justify lifting the automatic stay, while at the same time shielding any evidence of these allegations from review by Debtor or this Court. If such evidence exists, now is the time to come forward with it. Mr. Beatty has failed to do so.[1]

5. Finally, even if the Court were ultimately to grant Mr. Beatty's motion to dismiss for improper venue (which Debtor strongly opposes), that would not justify lifting the automatic stay. Mr. Beatty argues in his motion to dismiss that Debtor was obliged to seek transfer of his California Action to this Court rather than instituting the Adversary Proceeding. If dismissal is granted on this ground, therefore, Debtor should be allowed to pursue such a transfer of the California Action. Mr. Beatty has offered no reason why Debtor should not be allowed this opportunity, which he contends is the only mechanism for bringing this dispute over property of the estate before this Court. Only if the California court were to deny such transfer would Mr. Beatty's current motion to lift the stay become ripe for review by this Court

6. For these reasons, and those that follow, Debtor respectfully requests that this Court deny Mr. Beatty's Motion.

## LEGAL STANDARD

7. The party seeking relief from the automatic stay must establish a prima facie case showing cause that justifies such relief, which can be rebutted by the opposing party. *See, e.g., In re RNI Wind Down*, 348 B.R. 286, 299 (Bankr. D. Del. 2006). Such a prima facie

---

[1] In this regard, Mr. Beatty claims that the allegations of his 2008 complaint should be "deemed admitted" because Debtor has not answered, claiming that such an answer was due, despite the automatic stay. (Motion, ¶ 40 n.10; ¶ 42.) This contention is frivolous. *See infra*, ¶ 33.

case must be supported by evidence, not allegations. *Id.* In evaluating whether a claimant has demonstrated sufficient cause to lift the stay, courts routinely consider (i) the prejudice to the Debtor or its estate; (ii) the balance of hardships to the relevant parties; and (iii) the probability of the claimant prevailing on the merits. *See In re The SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del 2007). "'The most important factor to consider when addressing whether to lift the stay'" is the effect on the administration of the chapter 11 cases. *See In re W.R. Grace & Co.*, 2007 WL 1129170, at *2 (Bankr. D. Del. 2007) (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); *In re Towner Petroleum Co.*, 48 B.R. 182, 191 (Bankr. W.D. Okla. 1985) ("Even slight interference with administration may be sufficient to deny [a motion for relief from stay]...").

## BACKGROUND[2]

8. On November 17, 2006, TMS served written notice of its intent to effect a reversion of all rights granted to Mr. Beatty in the Dick Tracy Agreement (the "2006 Reversion Notice"). (Complaint, ¶ 16, Adv. Pro. No. 09-50486 (KJC) (Bankr. D. Del. Mar. 19, 2009) [Adv. Docket No. 1] (the "TMS Compl.") The 2006 Reversion Notice notified Mr. Beatty that, unless he commenced principal photography on another "theatrical motion picture or television series or special" under the Dick Tracy Agreement within two years, all rights granted to him under that Agreement would revert back to TMS. (TMS Compl., ¶ 16.) Mr. Beatty does not dispute these facts. (Motion, ¶ 11.)

9. On November 14, 2008, Mr. Beatty's counsel emailed a letter to TMS, asserting that Mr. Beatty "will be commencing" principal photography on a "Dick Tracy

---

[2] Much of the background section to Mr. Beatty's Motion includes allegations that are both unsupported and irrelevant to his current Motion, and thus Debtor does not respond herein to each such claim. Debtor, however, denies each allegation that is inconsistent with, or unsupported by, the Complaint filed in the Adversary Proceeding.

television special," but offered no evidence that any qualifying project had in fact been commenced under the Dick Tracy Agreement. (TMS Compl., ¶¶ 20, 25.) On November 18, 2008, TMS notified Mr. Beatty that all rights previously granted under the Dick Tracy Agreement had automatically reverted to TMS. (TMS Compl., ¶ 22.) Despite TMS's letter request and subsequent discovery, Mr. Beatty has not produced *any* evidence that he in fact commenced principal photography on a Dick Tracy "television special" or "theatrical motion picture" or "television series" within the meaning of the Dick Tracy Agreement and within the time period required by the 2006 Reversion Notice. (TMS Compl., ¶¶ 22, 24.)

10. Mr. Beatty filed a declaratory judgment complaint in the Central District of California on November 20, 2008 (the "California Complaint"). This lawsuit sought a declaration that Mr. Beatty's alleged "commencement of principal photography of a Dick Tracy television special ... precludes Tribune from providing written notice purporting to effect a reversion of the Tracy Rights." (TMS Compl. Exh. A, at 4.) The California Complaint does not challenge the 2006 Reversion Notice.

11. On December 8, 2008, TMS (along with its parent Tribune Company and 109 additional affiliated Debtors) filed, in this Court, voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or "Code"). (TMS Compl., ¶ 2.)

12. On March 19, 2009, Debtor instituted the Adversary Proceeding against Mr. Beatty to establish that it had current and unfettered rights to the motion picture and television rights at issue in the 1985 Dick Tracy Agreement with Mr. Beatty. (TMS Compl., ¶ 1.) The Adversary Proceeding asserted a claim to determine the scope of property of the estate, under 11 U.S.C. § 541, and a claim to enjoin Mr. Beatty from interfering with rights to the Tracy

property or exercising any control over that property pursuant to 11 U.S.C. §§ 362(a) and 105. *Id.*

13. On May 8, 2009, Mr. Beatty moved to dismiss the Adversary Proceeding, arguing (i) that the Court lacked personal jurisdiction over him, and (ii) that venue was improper because Debtor allegedly was obliged under the "first-filed" doctrine to seek transfer of his stayed California lawsuit to this Court rather than institute the Adversary Proceeding. (Beatty Dismissal Brief, Adv. Pro. No. 09-50486 (KJC), at 23-24 (Bankr. D. Del. May 8, 2009) [Adv. Docket No. 8] (the "Dismissal Brief").)

## ARGUMENT

### A. There Is No Basis To Lift The Automatic Stay In Light Of Debtor's Pending Adversary Proceeding Before This Court.

14. No reasonable basis exists to lift the automatic stay and allow litigation to proceed on Debtor's Dick Tracy rights before both this Court and before a court in California. *See In re Enron Corp.*, 306 B.R. 465, 477 (Bankr. S.D. N.Y. 2004) (denying motion to lift stay where "similar issues" raised in bankruptcy proceeding and allowing the action to proceed "would be inconsistent with the administrative needs of the bankruptcy case"). The Debtor would be substantially prejudiced in having to litigate the dispute over the Dick Tracy film and television rights on two separate fronts. Moreover, lifting the stay while the Adversary Proceeding advances in tandem before this Court would waste judicial resources and raise the risk of inconsistent judgments. Finally, Mr. Beatty can fully and fairly litigate the claims from his California Action in this Adversary Proceeding, which eliminates the rationale for lifting the stay of the California Action. *See Williams v. Aloisi*, 271 B.R. 676, 682 (M.D. Fla. 2002) (denying motion to lift the stay where bankruptcy court "could make a determination on the merits of ... claim for equitable relief").

15.  Similarly, Mr. Beatty's motion to lift the stay cannot be used as a stalking horse for a request that this Court abstain from the exercise of its jurisdiction over this Adversary Proceeding in favor of Mr. Beatty's California Action. Mr. Beatty has advised this Court that he has not moved for abstention under 11 U.S.C. § 1334(c). (Beatty Dismissal Reply, Adv. Pro. No. 09-50496 (KJC), at 1-2 (Bankr. D. Del. June 2, 2009) [Adv. Docket No. 13] (the "Dismissal Reply".) However, as Debtor has shown in its Answering Brief to Mr. Beatty's Motion to Dismiss, Adv. Proc. No. 09-50486 (KJC) (Bankr. D. Del. May 26, 2009) [Adv. Docket No. 11] (the "TMS Answer"), the relevant factors considered in a section 1334(c) abstention motion strongly weigh in favor of this Court exercising its jurisdiction over this Adversary Proceeding. (TMS Answer, at 14-25.) Indeed, Mr. Beatty's failure to seek abstention – while employing a "serial filing" strategy to obtain the same relief – suggests that he is all too aware of the weakness in any such abstention argument.

16.  As detailed below, Mr. Beatty arguments in support of his Motion all fail, both because they ignore Debtor's Adversary Proceeding and because they are factually and legally wrong.

### 1. The California Action Has Made No Progress And The California Court Is Wholly Unfamiliar With The Parties' Current Dispute.

17.  Mr. Beatty asserts that the Central District of California should be the preferred forum in part because the district court allegedly is already familiar with the issues presented in the current dispute over Dick Tracy movie and television rights. (Motion, ¶ 44.) This is wrong for at least two reasons. First, Mr. Beatty's 2008 lawsuit has made no progress. Second, Mr. Beatty's previous 2005 lawsuit before the same California district court raised none of the issues raised by the current dispute. This Court is a more efficient and appropriate venue

for resolution of the parties' dispute than the Central District of California, given that the dispute undisputedly involves property of the estate.

18.    Mr. Beatty's November 20, 2008 lawsuit against TMS made no progress before it was automatically stayed upon Debtor's bankruptcy filing on December 8, 2008. In light of the automatic stay, there has been no responsive pleading, discovery of any kind, or hearings before the district court. (Motion Exh. G.) Consequently, the district court in California has had no opportunity to review or evaluate the issues and claims raised by the current dispute over the Dick Tracy movie and television rights. This is not a case, therefore, where there has been so much pre-petition progress in another similar lawsuit that it could overcome the interest of consolidating actions before a single bankruptcy court. *Cf. In re HQ Global Holdings, Inc.*, 293 B.R. 839, 846 (Bankr. D. Del. 2003) (finding that "[w]hat is relevant is the status of the other [related] action," not whether it was filed first or second); *In re Colarusso*, 382 F.3d 51, 57 (1st Cir. 2004) (recognizing, in context of section 1334(c)(1), "there is little damage to judicial economy from interference with a state suit that had been pending for a mere two weeks"); *Shubert v. Roche Holding AG*, 157 F.Supp.2d 542, 547 (E.D. Pa. 2001) (recognizing, in remand context, that "comity is not a factor of great import" where the "suit has not spent a considerable length of time in the state court").

19.    Recognizing the lack of any progress in his 2008 lawsuit, Mr. Beatty contends that his prior 2005 lawsuit against TMS raised the same issues and that the California district court thereby became familiar with the relevant fact and legal issues. (Motion, ¶ 44.) But the two lawsuits raise none of the same fact or legal issues.

20.    The 2005 lawsuit raised issues concerning whether TMS had provided proper and effective notice of reversion under the Dick Tracy Agreement. *See Beatty v. Tribune*

*Media Services, Inc.*, 2005 WL 6132339, at *2 (C.D. Cal. Aug. 10, 2005) (describing complaint). Yet Mr. Beatty *does not challenge* TMS's November 2006 reversion notice; there is no current dispute over the nature, timing, or effectiveness of TMS's notice of reversion under paragraph 9 of the Dick Tracy Agreement. (Motion, ¶ 11.) Instead, the central issue here, as Mr. Beatty admits, is whether Mr. Beatty commenced "principle photography" on a "television special" or "theatrical motion picture" or "television series," "within two years after receipt" of the 2006 Reversion Notice. (Motion, ¶ 11.) Not one of these referenced contract terms was raised in Mr. Beatty's 2005 lawsuit. *See generally Beatty*, 2005 WL 6132339. The California district court thus has never received any briefing or argument on these issues nor given any consideration to them.

21.     Mr. Beatty also incorrectly contends that, because TMS has not challenged his related case notice in his 2008 California Action (filed under Local Rule 83-1.3.1 (C.D. Cal.)), that the Debtor has somehow waived its right to now contend that the 2005 and 2008 lawsuits are unrelated. (Motion, ¶ 28.) TMS had no obligation to respond to the related case notice before Mr. Beatty's 2008 lawsuit was automatically stayed pursuant to section 362 of the Code. Under the local rules for the Central District of California, a party has at least until its "first appearance" to object to a related case notice. *See* Local Rule 83-1.3.2 (C.D. Cal.) TMS had not filed an appearance in the California lawsuit before the automatic stay was imposed on December 8, 2008. (Motion Exh. G.) During the period the stay is in place, TMS is under no obligation to file any response to the California Action, including a response to Mr. Beatty's "related case" filing. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1992). Accordingly, there cannot have been any waiver of Debtor's right to contest the related case notice should the stay ever be lifted. Moreover, under settled Third

Circuit law, the California court's post-stay "related case" order, made before any response by Debtor was required, was "void *ab initio*" and is due no deference. *See Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1992).

22.     Indeed, given that the "related case" order entered in the California Action is void under *Maritime Electric*, there is no reason to assume – as Mr. Beatty does – that the California Action would proceed before the same district court judge if the automatic stay were lifted. Under that circumstance, Debtor would be free to challenge the related case notice.

23.     Finally, this Court – not the California court – is uniquely situated to handle this Adversary Proceeding in light of the nature of the parties' dispute. Mr. Beatty has admitted that Debtor at a minimum holds a reversionary interest in the Dick Tracy rights that is property of the estate. (Dismissal Reply, at 13.) Such a dispute over the scope of the Debtor's interest in the Dick Tracy Property – involving admitted estate property – is within the Court's core jurisdiction. *See In re New Century Holdings, Inc.*, 387 B.R. 95, 105 (Bankr. D. Del. 2008). This Court, as the home court for the bankruptcy proceedings, is the appropriate venue to resolve this dispute. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 295 (Bankr. D. Del. 2006) (holding that bankruptcy court has priority over other courts when it comes to disputes involving property of the estate); *In re Reliance Group Holdings*, 273 B.R. 374, 406-07 (Bankr. D. Del. 2002) (recognizing "presumption" that home bankruptcy court should handle core proceedings). The California court has no special attributes or experience that would allow it to resolve this dispute more efficiently or effectively than this Court.

   **2.    Mr. Beatty Will Suffer No Significant Prejudice By Proceeding Before This Court In The Adversary Proceeding.**

24.     Contrary to Mr. Beatty's assertions, he will suffer no significant or unfair prejudice by proceeding before this Court. First, there is no evidence, only bare assertions, that

there are more witnesses with information relevant to this case located in California. (Motion, ¶ 29.) Mr. Beatty has made no Rule 26 disclosures and has to date refused to produce any evidence regarding any television special that he alleges might satisfy the requirements of the Dick Tracy Agreement. In the absence of any evidentiary support, Mr. Beatty's allegations are due no weight. *See In re RNI Wind Down*, 348 B.R. at 299 (denying motion to lift the automatic stay where "movant did not submit any evidence in support").

25. Second, even if Mr. Beatty could show that a greater number of persons with discoverable information are located in California than elsewhere, that fact introduces no significant prejudice for Mr. Beatty. Under the federal rules, depositions will take place in the district of the witness's residence absent an agreement by counsel to hold the deposition elsewhere. Fed. R. Civ. P. 45(a)(2)(B). Discovery processes, and any accompanying burdens, will be unaffected by whether the dispute proceeds in California or in Delaware. *See Argus Mgmt. Group v. Rodman (In re CVEO Corp.)*, 2004 WL 3656821, at *6 (Bankr. D. Del. 2004).

26. The court's analysis in *Argus Management Group* is instructive. There, like here, the defendants asserted that California was a more convenient forum and that they would be prejudiced by being required to proceed in Delaware. *Id.*, at *5. The court rejected that claim, recognizing that "document production and depositions can be conducted wherever relevant documents and witnesses are located. *Id.*, at *6. Therefore, pre-trial preparations will be no more costly or burdensome to the Defendants than if the case were litigated in California." *Id.*; *see also Windt v. Qwest Communications Int'l, Inc.*, 529 F.3d 183, 194 (3d Cir. 2008) (recognizing that the "expenses and complexity" of discovery will be the same regardless of where the litigation proceeds). Significantly, there is every reason to believe that this dispute can be resolved at the summary judgment stage in that it involves construction of a written contract.

27. Nor has Mr. Beatty established any basis for claiming prejudice even if the case proceeds beyond pretrial proceedings. Again, *Argus Management Group* is on point. There the court rejected bare assertions of prejudice, and recognized that "the Defendants [had] failed to identify any documents or third-party witnesses indispensable to their case that cannot be produced for trial or compelled to testify because this Court lacks subpoena power in California." 2004 WL 3656821, at *6. Mr. Beatty similarly has failed to produce *any* evidence of witnesses or documents critical to his case that could not be presented in Delaware. *See In re RNI Wind Down*, 348 B.R. at 299 (movant required to submit evidence sufficient to establish prima facie case showing cause to lift the automatic stay).

28. Notably, the Dick Tracy Agreement does not include either a forum selection clause or a clause dictating that California law would govern any disputes arising under the Agreement (rather than, for example, Florida law, where TMS was headquartered at the time the agreement was reached).[3] If a California forum was of significant importance to Mr. Beatty, a preference for such a forum could have been expressed in the Dick Tracy Agreement.

29. Finally, Mr. Beatty has not even attempted a showing that he lacks the means to effectively litigate this matter in Delaware. Instead, he has shown the opposite, hiring a well-known national law firm to act as his Delaware counsel and actively litigating before this Court.

### 3. Mr. Beatty Has Shown No Likelihood Of Success, Despite Controlling The Relevant Evidence.

30. Mr. Beatty baldly asserts he has a probability of success on the merits but does not submit a shred of evidence to support his claim. (Motion, ¶¶ 37-42.) Mr. Beatty's

---

[3] Like Mr. Beatty's assertions about witnesses, Mr. Beatty provides no evidentiary or legal support for his claim that California law applies to this dispute. These claims are thus entitled to no weight.

failure to offer any evidentiary support cannot be excused, and his bare assertions to having complied with the requirements of TMS's 2006 reversion notice are entitled to no weight.

31. For Debtor's part, there is no dispute that TMS sent, and Mr. Beatty received, written notice of TMS's intent to effect a reversion of all rights granted to Mr. Beatty in the Dick Tracy Agreement, dated November 17, 2006. (Motion, ¶ 11). There also is no dispute that, pursuant to that Notice of Reversion and paragraph 9 of the Dick Tracy Agreement, Mr. Beatty had two years within which to commence "principal photography" on a qualifying "motion picture," "television series," or "television special;" absent that, the relevant Dick Tracy motion picture and television rights reverted back to TMS. *Id.*

32. In response, Mr. Beatty offers nothing but a letter from counsel that simply asserts, with no evidentiary support, that Mr. Beatty "commenced principal photography on a Dick Tracy television special on or about November 8, 2008. (*Id.*, at ¶ 40.) To date, Mr. Beatty has declined to produce any proof in support, despite letter requests from his contracting partner, TMS, and written discovery in the current Adversary Proceeding. Mr. Beatty's unsupported assertions are entitled to no weight. *In re RNI Wind Down*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) (movant obliged to submit evidence supporting lift stay motion).

33. In this regard, Mr. Beatty makes the frivolous claim that the allegations of his complaint in the California Action should be "deemed admitted" because Debtor has not answered, claiming that such an answer was due, despite the automatic stay, within 60 days of the bankruptcy petition. (Motion, ¶ 40 n.10; ¶ 42.) For his sole support, Mr. Beatty points to 11 U.S.C. § 108(b). But "section 108(b) does not apply to time periods in actions against the debtor;" instead, "[s]uch actions are stayed by section 362 ... and may proceed only when the stay ... terminates." *Collier on Bankruptcy*, ¶ 108.03. That is precisely the ruling of the

bankruptcy court in *In re Total Containment, Inc.*, which quickly rejected a claim that section 108(b) had any application to litigation against a debtor stayed by section 362. *Miller v. Dutil (In re Total Containment, Inc.)*, 2008 WL 250216, at *8 (Bankr. E.D. Pa. Jan. 28, 2008). Instead, cases against a debtor, like Mr. Beatty's California Action, are governed by section 108(c), which provides that, for any time period that has not expired by the time of the bankruptcy petition, "such period does not expire" until at least "30 days after notice of the termination or expiration of the stay under section 362." *See Total Containment, Inc.*, 2008 WL 250216 at *8. There is no dispute here that TMS's deadline to answer the November 20, 2008 complaint had not passed by the time of the December 8, 2008 bankruptcy period. By operation of sections 108(c) and 362, therefore, no answer or other responsive pleading is yet due in the California Action, and Mr. Beatty's argument to the contrary is specious on its face.

### 4. Debtor's Filing Of The Adversary Proceeding Before This Court Was Not Forum Shopping.

34. Remarkably, despite the fact that this Court is the home jurisdiction for Debtor's (and its affiliates') bankruptcy proceedings and that it exercises exclusive jurisdiction over property of the estate, Mr. Beatty nonetheless contends that Debtor's Adversary Proceeding is an exercise in forum shopping. (Motion, ¶¶ 30-31). Yet Mr. Beatty himself has admitted, as he must, that the Dick Tracy rights implicate property of the estate. (Dismissal Reply, at 13.) Such property of the estate is within this Court's exclusive jurisdiction. 11 U.S.C. § 1334(e). Moreover, as Debtor has previously shown, the dispute in this Adversary Proceeding over the scope of the Debtor's interest in the Dick Tracy Property – involving admitted estate property – is within the Court's core jurisdiction. *See In re New Century Holdings, Inc.*, 387 B.R. 95, 105 (Bankr. D. Del. 2008); *Reliance Group Holdings*, 273 B.R. at 404.

35.     Under such circumstances, Debtor's initiation of an Adversary Proceeding before this Court to determine its current and exclusive entitlement to the use of all the Dick Tracy rights can by no stretch be deemed forum shopping. Instead, this proceeding is fully consistent with the bankruptcy law's purpose of consolidating claims involving the Debtor's property before the bankruptcy court.

36.     On the other hand, rather than offer TMS any evidence of his alleged commencement of principal photography on a qualifying Dick Tracy project, Mr. Beatty filed his California declaratory judgment action just two days after TMS notified him of the reversion of the Dick Tracy rights. This type of pre-emptive strike is a form of forum shopping. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983) ("anticipatory suits are disfavored because they are aspects of forum-shopping"); *E.E.O.C. v. University of Pa.*, 850 F.2d 969, 976-77 (3d Cir. 1988) (same); *Dorman v. Pontiac Coil, Inc.*, 2006 WL 2927307, at *3 (E.D. Pa. Oct. 10, 2006) (same).

**B.      Even If Mr. Beatty's Motion To Dismiss Is Granted, Debtor Should Be Allowed To Seek Transfer Of The California Action, And The Motion To Lift The Stay Should Be Denied.**

37.     As there is no basis to lift the automatic stay while Debtor's Adversary Proceeding is pending before this Court, Mr. Beatty's Motion becomes ripe for consideration only if this Court were to grant Mr. Beatty's Motion to Dismiss. Even if Mr. Beatty's Motion to Dismiss were granted,[4] that would *not* justify lifting the automatic stay.

38.     The only basis given for Mr. Beatty's improper venue claim is that Debtor, instead of instituting this Adversary Proceeding, should have moved to transfer his California

---

[4]     Mr. Beatty's second ground for dismissal – lack of personal jurisdiction – has already been shown to be completely wrong under the overwhelming and uncontradicted case law in this district. (TMS Answer, at 27-33.) We therefore do not separately address this alleged ground for dismissal in this Objection.

Action to this Court. (Dismissal Brief at 23-26.) If dismissal is granted on this ground, therefore, Debtor should be allowed to pursue such a transfer of the California Action. Mr. Beatty has offered no reason why Debtor should not be allowed this opportunity; in fact he has argued that this is the only means for Debtor to bring this dispute over property of the estate before this Court. At bottom, even if this Court were to grant dismissal on grounds of improper venue, the automatic stay should remain in place except insofar as is necessary to allow the parties to litigate, and the California court to dispose of, the issue of transfer of that proceeding to this Court.

39.     Contrary to Mr. Beatty's assertions (Motion, ¶ 25), the Debtor, by instituting the Adversary Proceeding, has not indicated its willingness to relinquish the benefits of the automatic stay and to submit itself generally to litigation concerning the Tracy rights in federal court in Los Angeles. There are significant efficiencies gained by consolidating an equitable dispute over the Dick Tracy rights before this Court that would be lost if Debtor were instead forced to litigate this dispute in Los Angeles. As noted, at the heart of the Adversary Proceeding is a property interest admittedly held by the estate, one that is potentially of great value. Matters of this kind, involving competing claims to valuable estate property, are central to bankruptcy case administration, a fact reflected by the Unsecured Creditors Committee's stated intention to file a joinder to the Debtor's Objection to Mr. Beatty's Motion.[5] Mr. Beatty's claim that lifting the stay will not prejudice the Debtor ignores the very benefit of the stay in the first place: to consolidate claims regarding property of the estate before a single bankruptcy court, rather than allowing piecemeal, uncoordinated proceedings in far flung jurisdictions. *See, e.g., Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d Cir. 1991)

---

[5]   The Unsecured Creditors Committee represented to the Debtor on or about June 18, 2009, that it would be joining the Debtor's Objection.

("Consolidating all pre-petition claims against the debtor in one collective proceeding before a bankruptcy court is the essence of bankruptcy."); *Cedarbrook Plaza, Inc. v. Gottfried*, Case No. 97-1560, 1997 WL 330390, at *6 (E.D.Pa. June 6, 1997); *In re Colonial Realty Co.,* 980 F.2d 125, 133 (2d Cir. 1992).

40.    Finally, because the Debtor has the right to file a motion to transfer the California Action to this Court, it is premature to consider whether the stay should remain in place in the event that a California court were ultimately to deny Debtor's motion to transfer. Such a determination would depend on the status of the bankruptcy proceeding at the time of any such order, the status of the parties' discovery in the underlying action, and other factors that currently are impossible to predict. This Court should not engage in such a predictive exercise, and instead should deny Mr. Beatty's Motion.

## **CONCLUSION**

For these reasons, Debtor respectfully requests that this Court deny Mr. Beatty's Motion.

Dated: Wilmington, Delaware
June 18, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Michael Doss
Gregory V. Demo
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION