## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, <u>et</u> <u>al</u>., | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x      **Ref. Docket Nos. 1325 & 1587**

## WARREN BEATTY'S REPLY TO TRIBUNE MEDIA SERVICES, INC.'S OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER BANKRUPTCY CODE SECTION 362(d)(1) TO ALLOW WARREN BEATTY TO PROCEED WITH LITIGATION IN CALIFORNIA DISTRICT COURT

Warren Beatty ("Mr. Beatty") hereby files this reply (this "Reply") to the

Debtor Tribune Media Services, Inc.'s Objection to Motion for Relief from the

Automatic Stay (the "Objection") in support of Mr. Beatty's Motion for Relief from the

Automatic Stay Under Bankruptcy Code Section 362(d)(1) to Allow Warren Beatty to

Proceed with Litigation in California District Court (the "Lift Stay Motion").[1]   In support

of the Lift Stay Motion and this Reply, Mr. Beatty submits the Declaration of Warrant

Beatty (the "Declaration")[2] annexed as Exhibit A and further respectfully states as

follows:

---

[1]    Each capitalized term not otherwise defined herein shall have the meaning ascribed to such term in the Lift Stay Motion.

[2]    Mr. Beatty submitted the Declaration in reliance on the Court's statements made during the status conference on June 10, 2009 (the "Status Conference").  Specifically, this Court stated that "[the Court] wouldn't want to do [order discovery], and won't do [so] in such a way that . . . that it's the Court here giving to itself jurisdiction which it does not have."  Transcript of Status Conference at 12, ll. 22-23. Thus, by submitting the Declaration, Mr. Beatty is in no way submitting to this Court's jurisdiction or subpoena powers.

## REPLY

1.       As set forth in the Lift Stay Motion, Mr. Beatty requests entry of

an order under Bankruptcy Code section 362(d)(1), Bankruptcy Rule 4001, and Local

Rule 4001-1 granting relief from the automatic stay to enable Mr. Beatty to proceed with

the California Action.  In response, the Tribune presents two primary objections.

2.       First, the Tribune first contends that Mr. Beatty has not satisfied

the applicable standard.  <u>See</u> Objection ¶ 14.  As demonstrated below, there is ample

cause to lift the stay and the Tribune presented no reasonable basis for denying Mr.

Beatty's request, but simply continues to attempt to distract this Court with red herrings.[3]

3.       The Tribune additionally requests that, if this Court were inclined

to lift the automatic stay, the Tribune should be permitted to seek to transfer venue first.

---

[3]    For example, the Tribune states that "Mr. Beatty's motion to lift the say cannot be used as a stalking
horse request that this Court abstain from the exercise of its jurisdiction over this Adversary
Proceeding in favor of Mr. Beatty's California Action."  Objection ¶ 15.  The Tribune further that Mr.
Beatty's failure to seek abstention "suggests he is all too aware of any weakness in any such abstention
argument."  <u>Id.</u>  Mr. Beatty is at a loss to explain why the Tribune continues to raise the abstention
issue.  <u>See</u> Tribune Media Services' Answering Brief in Opposition to Defendant's Motion to Dismiss
(Adv. Pro. D.I. 11) at 15-25 (discussing abstention for almost 10 pages although abstention was not
raised in the opening brief in support of Mr. Beatty's motion to dismiss).

As Mr. Beatty plainly stated in his Rely Brief in Support of Motion to Dismiss Complaint under
Rule 12(b) for Improper Venue and Lack of Personal Jurisdiction ("Dismissal Reply Brief"), he has
not yet filed a motion requesting abstention.  <u>See</u> Dismissal Reply Brief at note 2.  Mr. Beatty has
chosen to allow this Court to resolve the motions before it in this matter before pursuing a motion to
abstain, and he is well within his rights to do so.  <u>See, e.g.</u>, <u>In re Diloreto</u>, 2008 WL 141922 at *6
(Bankr. E.D. Pa. Jan. 11, 2008) ("A motion for abstention . . . is not a Rule 12 motion for the purposes
of the Rule's waiver provisions."); <u>Cont'l Cas. Co. v. Marsh</u>, 2002 U.S. Dist. LEXIS 24534 (N.D. Ill.
Dec. 18, 2002); <u>c.f.</u>, <u>In re USA Floral Products, Inc.</u>, 2005 WL 3657096 at *1 (D. Del. July 1, 2005)
(specifically noting that "it would have been imprudent to file [a motion to withdraw the reference]
until the Bankruptcy Court denied [movants'] motion to dismiss").  Indeed, Mr. Beatty maintains that
an abstention motion is premature given his challenges of improper venue and the Court exercising
personal jurisdiction over him.

Thus, the Lift Stay Motion is in no way a "stalking horse" request for abstention.  Nor does it
reflect Mr. Beatty's opinion of his likelihood of success on such a motion.  To the contrary, Mr. Beatty
believes that if this Court determines that venue is proper and this Court has jurisdiction over Mr.
Beatty there is an exceptionally strong basis for abstention.

Objection ¶¶ 37-40.  Leaving aside the Tribune's acknowledgment of the appropriate

procedure that, if followed, could have avoided wasting this Court's time and any delay

associated with resolving the parties' dispute, Mr. Beatty has no objection to moving the

California District Court to transfer venue to this Court so long as the automatic stay

modified to enable Mr. Beatty to respond.

## I.    THE AUTOMATIC STAY SHOULD BE LIFTED TO ENABLE MR. BEATTY TO PROCEED WITH THE CALIFORNIA ACTION NOTWITHSTANDING THE BANKRUPTCY ACTION.

4.    As set forth in the Lift Stay Motion, the automatic stay should be

lifted because Mr. Beatty has satisfied each of the factors set forth in American Airlines,

Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D.

Del. 1993) (citing Izzarelli v. Rexene (In re Rexene Prods. Co.), 141 B.R. 574, 576

(Bankr. D. Del. 1992)).   Specifically, the Tribune would not suffer any legally

cognizable prejudice if the stay were lifted.  More importantly, Mr. Beatty would suffer

significant prejudice by being required to litigate the dispute in this Court, and Mr. Beatty

has a likelihood of success on the merits.

### A.    The Tribune Will Not Suffer Prejudice If The Automatic Stay Is Lifted.

5.    Mr. Beatty contends that the Tribune will not suffer any legally

cognizable prejudice if the Lift Stay Motion is granted.  In response, the Tribune argues

that, if the automatic stay is lifted, it "will be substantially prejudiced in having to litigate

the dispute . . . on two separate fronts."  Objection ¶ 14.  Any such harm is not legally

cognizable, as the hardship was self imposed.  See, e.g., Cowles v. Cowles (In re Cowles),

343 B.R. 18, 21 (Bankr. D. Conn. 2006) (refusing to exercise its discretion to grant an

extension of time where any prejudice to the plaintiff arises from its own actions); First

Nat'l Bank of Westminster v. Rarick (In re Rarick), 132 B.R. 47, 51-52 (D. Colo. 1991)(not taking account of prejudice where prejudice was of party's own making); Credit Alliance Corp. v. Concord Coal Corp. (In re Concord Coal Corp.), 81 B.R. 863, 868 (S.D.W. Va. 1988) (finding that, where a party attempted to claim prejudice resulting from its own actions, it was essentially "asking, with unclean hands, that equity by done"). Consequently, Tribune's claim of prejudice is without merit and should be rejected.

6.        More importantly, any such harm may be entirely avoided. Specifically, if the stay is lifted, the Tribune would only be required to litigate the underlying contractual dispute in the California District Court. At the conclusion of that litigation, the California District Court will either grant or deny Mr. Beatty's request for a declaration that the Dick Tracy Rights did not revert to the Tribune. Any such declaration will, therefore, moot the relief sought in Bankruptcy Action with respect to whether the Dick Tracy Rights are property of the estate, and thus, whether the automatic stay applies. Consequently, there is simply no need to proceed in this forum if the Lift Stay Motion is granted.

7.        Accordingly, the Tribune will suffer no prejudice if Mr. Beatty is permitted to proceed in the California District Court, and thus, this factor favors Mr. Beatty.

**B.        Mr. Beatty Will Be Prejudiced If The Automatic Stay Is Not Lifted And Thus The Balance Of Hardships Favors Lifting The Stay.**

8.        As set forth in the Lift Stay Motion, Mr. Beatty contends the second factor is satisfied because he has been and will continue to be significantly prejudiced if the stay is not lifted. In response, the Tribune contends that Mr. Beatty

4

would not be prejudiced because first, he has not shown that more witnesses or documents are in California and, second, Mr. Beatty can fully litigate the dispute in the Bankruptcy Court regardless.  The Tribune is wrong on both counts.

9.      First, as demonstrated by the Tribune's own Initial Disclosures, two of the three witnesses the Tribune identified are located in California, and the other witness is located in Illinois.[4]  No witness (or any other evidence for that matter) is located in Delaware.

10.     Second, as demonstrated by the Declaration, all of the potential witnesses identified by Mr. Beatty as having information regarding the Dick Tracy Rights and the critical issue of when Mr. Beatty commenced "principal photography" on a television special are residents of, or employed in, California.  In that regard, Mr. Beatty has identified almost forty people having information regarding principal photography, each of whom lives in or is employed in California.  Declaration ¶¶ 5-15.  These witnesses include actors, producers and other site and crew personnel involved in filming of the Television Special, which began on November 8, 2008, as well as certain of Mr. Beatty's, Walt Disney Studios' and Turner Classic Movies' representatives.  Id.

11.     Third, most of the documents and other evidence relevant to the contractual dispute are located in California.  Specifically, Walt Disney Studios, the location of principal photography of the Television Special, is located in Burbank, California.  Id. at ¶ 6.  In addition, Mr. Beatty operates his business in Los Angeles, California.  Id. at ¶ 5.  Production of the Television Special took place at Imagineering

---

[4]      "Initial Disclosures" means "Plaintiff/Debtor Tribune Media Services, Inc.'s Rule 26(a)(1) Initial Disclosures," a copy of which is annexed as Exhibit B.

Stages in Burbank, California.  Id. at ¶ 9.  Turner Classic Movies, which intended to air the Television Special in July 2009, is likewise located in California.  Id. at ¶ 12.  Finally, the Custodian of Records of Disney is employed in Los Angeles, California.  Id. at 15. Accordingly, the relevant documents at each of the foregoing businesses are likewise located in California.  All other documents, on information and belief, are located in Illinois.

12.    Thus, as Mr. Beatty has repeatedly asserted, and as the Declaration plainly shows, substantially all of the relevant witnesses, documents, and other evidence are located in California.

13.    Moreover, while Mr. Beatty may be able to litigate the dispute in this Court, it does not follow that he would not be prejudiced by doing so.  First, as set forth in the Motion to Dismiss, Mr. Beatty contends that this Court lacks personal jurisdiction over him.  Consequently, proceeding in the Bankruptcy Action, even on a limited basis, is prejudicial because Mr. Beatty is outside this Court's subpoena power. See also Fed. R. Bankr. P. 9016 (incorporating Federal Rule of Civil Procedures 45(b)(2), which limits the court's subpoena power to a 100-mile radius from the courthouse). Furthermore, even assuming this Court could exercise personal jurisdiction over Mr. Beatty, the Tribune implicitly concedes, Mr. Beatty's California witnesses would be beyond the subpoena power of this Court.   See Objection ¶ 27.  Thus, although it is true that Mr. Beatty could present the testimony of such witnesses by deposition, the Tribune is wrong to contend that this does not prejudice Mr. Beatty.   See Brown ex rel. FoxMeyer Drug Co. v. Smith Drug Co., 1999 WL 709992 at *6 (D. Del. 1999)[5] (noting

---

[5]    Attached hereto as Exhibit C.

that "although Defendants could present the deposition testimony of these witnesses at trial, the Supreme Court has noted that 'to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants.'" (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511 (1947))).  Indeed, for this reason, courts in this district have found that transfer of venue is appropriate where witnesses are beyond the subpoena power of the transferor court.  See OCB Restaurant Co. v. Vlahakis (In re Buffets Holdings, Inc.), 397 B.R. 725, 729 (Bankr. D. Del. 2008) (noting lack of subpoena power as factor favoring transfer); The Liquidating Trust of U.S. Wireless Corp. v. Haskell & White, LLP (In re U.S. Wireless Corp.), 2004 WL 1146098 (Bankr. D. Del. 2004)[6] (noting that the key witnesses were California residents who could be forced to appear in a California court but would be beyond subpoena jurisdiction of a Delaware court such that transfer was appropriate).[7]

        14.    Nor is the Tribune's reliance on Argus Management Group v. Rodman (In re CVEO Corp.), 2004 WL 3656821 (Bankr. D. Del. 2004) in response to this argument properly placed.  Indeed, the case supports granting the Lift Stay Motion. The Argus case presents a significantly different fact pattern.  Specifically, the bankruptcy court in Argus accepted the position that the inability to subpoena witnesses or documents for trial favors a transfer of venue.  See id. at *6.  The Court concluded, however, that the defendant did not present evidence that a necessary witness was beyond this Court's subpoena power.  See id.  Here, however, the vast majority of non-party

---

[6]    Attached hereto as Exhibit D.

[7]    In the event this Court denies the Lift Stay Motion, Mr. Beatty will seek to have the Bankruptcy Action transferred to the California District Court.

witnesses identified by the parties are beyond this Court's subpoena powers. Consequently, the Argus decision actually favors Mr. Beatty's prejudice argument.

15.    The Tribune also points to Mr. Beatty's retention of "a well-known national law firm to act as his Delaware counsel" as evidence that Mr. Beatty will not be prejudiced by litigating in this Court.  Objection ¶ 12.  To the contrary, Mr. Beatty has been materially prejudiced by being required to hire a second law firm, at significant cost. Mr. Beatty had previously retained the firm of Greenberg, Glusker, Fields, Claman & Matchinger LLP, located in Los Angeles, California, which firm was familiar with the facts and circumstances surrounding the dispute as well as with Mr. Beatty and Mr. Beatty's business.  As a result of the Tribune's filing of the Bankruptcy Action in Delaware, Mr. Beatty has been forced to retain a second firm, previously unfamiliar with the matter, for an additional cost.

16.    The Tribune seemingly suggests that, by actively litigating before this Court, Mr. Beatty has shown that he can effectively litigate this matter in Delaware. The Tribune cannot seriously contend that, because Mr. Beatty is actively protecting his rights, he is thereby waiving those rights.  Mr. Beatty's motions before this Court have been procedural in nature and Mr. Beatty has gone to great lengths to ensure that such litigation does not prejudice his position that venue is improper and that this Court does not have personal jurisdiction over him.

17.    Finally, this Court cannot ignore the fact that Mr. Beatty's interest in proceeding in his chosen forum, the California District Court, is substantial.  Indeed, numerous courts have recognized that a plaintiff's choice of forum should, under most circumstances, be honored.  See Jumara v. State Farm Insurance Co., 55 F.3d 873, 880

(3d Cir. 1995)(noting that "courts normally defer to a plaintiff's choice of forum"); Waste

Distillation Tech., Inc. v. Pan Am. Res., Inc., 775 F.Supp. 759, 764 (D.Del. 1991)("[I]f

the plaintiff's choice of forum relates to its legitimate, rational concerns then the

plaintiff's choice of forum is . . . accorded substantial weight.").  Mr. Beatty chose to

bring the California Action in the California District Court and, thus, absent overriding

circumstances. Mr. Beatty's chosen forum should be honored.  See, e.g., Shutte v. Armco

Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice

of a proper forum is a paramount consideration and that choice . . . should not be lightly

disturbed." (citation and internal quotations omitted)); Nihon Tsushin Kabushiki Kaisha v.

Davidson, 595 F.Supp.2d 363, 371 (D. Del. 2009)(noting that a plaintiff's choice of

forum is entitled to substantial deference).  Mr. Beatty's loss of the right to litigate in his

first-chosen forum is, accordingly, highly prejudicial.

      18.     Thus, while Mr. Beatty may have an ability to litigate the

underlying contractual dispute in Delaware, doing so significantly prejudices his legal

rights and economic interests.  Given that the Tribune will experience no legally

cognizable prejudice, as set forth above and in the Lift Stay Motion, the balance of

hardships clearly favors lifting the stay.

     **C.**     **Mr. Beatty Has Demonstrated Probable Success On The Merits If The Stay Is Lifted.**

      19.     The third factor in a determination of whether to lift the stay is the

moving party's likelihood of success on the merits.  Although "the required showing is

very slight,"  Rexene, 141 B.R. at 578, the Tribune asserts that Mr. Beatty has failed to

show a likelihood of success on the merits.  In response, Mr. Beatty submits that the Lift

Stay Motion and his pending California Complaint satisfy that standard.[8]  Furthermore,

the facts set forth in the Declaration plainly establish that Mr. Beatty will likely succeed

on the merits.

      20.      Under the Agreement, to preserve the Dick Tracy Rights, Mr.

Beatty was simply required to commence principal photography on a television special

within two years after receipt of a notice from the Tribune.  Agreement § 9.  As stated in

the Declaration, principal photography on the Television Special began on November 8,

2008 and concluded on November 12, 2008.  Declaration ¶ 6.  As such, all photography,

not just "principal photography" was completed prior to the alleged November 20, 2008

reversion deadline.  Accordingly, Mr. Beatty has clearly established a likelihood of

success on the merits sufficient to support lifting the automatic stay.

      21.      Moreover, in the Declaration, Mr. Beatty has identified the

existence of multiple actors and other production and filming personnel who were present

---

[8]    First, Mr. Beatty contends that the allegations in the California Complaint have been deemed admitted by the Tribune's failure to answer within 60 days, as provided by Bankruptcy Code section 108(b).  In response, the Tribune asserts that section 108(b) is inapplicable and that, instead, section 108(c) applies, such that the Tribune has until 30 days after termination or expiration of the automatic stay.  Objection ¶ 33 (citing Miller v. Dutil (In re Total Containment, Inc.), 2008 WL 250216, at *8 (Bankr. E.D. Pa. Jan. 28, 2008)).  This interpretation, however, is directly contradicted by the express statutory language of section 108(b) and the legislative intent underlying section 108.  See 11 U.S.C. § 108(b) (stating that "if applicable non-bankruptcy law. . . fixes a period within which the debtor . . . may file any pleading. . ., and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be before the later of – . . . 60 days after the order for relief" (emphasis added)); see also Senate Report 95-898, S. Rep. No. 989, 95th Cong., 2nd Sess. 1978 (stating that "[s]ubsections (a) and (b) . . . permit the trustee, when he steps into the shoes of the debtor, an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights. . . . Subsection (c) extends the statute of limitations for creditors. Consequently, if a creditor is stayed from commencing or continuing an action against the debtor because of the bankruptcy case, then the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated . . ." (emphasis added)).  Therefore, because the Tribune did not respond in accordance with the time period prescribed by section 108(b), the allegations in the California Complaint are deemed admitted.  Fed. R. Civ. P. 8(b)(6).

Alternatively, this Court should construe the factual allegations in the California Complaint in the light most favorable to Mr. Beatty, as the plaintiff in the California Action.

at or involved in the commencement and completion of principal photography on November 8, 2008, and November 12, 2008, and would testify thereto.  Id. at ¶¶ 6-8.

22.    In summary, each of the three factors supports a finding that cause exists to lift the automatic stay to allow Mr. Beatty to proceed with the California Action.

### D.    Mr. Beatty Has Not Engaged In Forum Shopping.

23.    Next, the Tribune continues to attempt to distract this Court from its unquestionable attempt at forum shopping by contending that Mr. Beatty is forum shopping.  Objection ¶ 35-36.  This position flies in the face of the following undisputed facts:  (1) the California Action was the first filed lawsuit; (2) the California Action sought a declaration of Mr. Beatty's rights after they were contested by the Tribune; (3) the Bankruptcy Action is, for all intents and purposes, identical to the already pending California Action, and (3) other than the Tribune's bankruptcy filing, the litigation has no connection to this Court or the State of Delaware.  Therefore, the charge against Mr. Beatty is meritless.

### II.    MR. BEATTY HAS NO OBJECTION TO THE TRIBUNE MOVING IN THE CALIFORNIA DISTRICT COURT TO TRANSFER VENUE SO LONG AS THE STAY IS MODIFIED TO ENABLE MR. BEATTY TO RESPOND.

24.    Lastly, the Tribune asserts that in the event the Motion to Dismiss is granted, the stay should nonetheless not be lifted; rather, the Tribune should be granted the opportunity to move in the California District Court to transfer venue to the Bankruptcy Court.  Objection ¶ 38.  Mr. Beatty has no objection to the Tribune moving to transfer venue in the California District Court.  However, in the event the Tribune makes such a request, the automatic stay should be modified to enable the parties to litigate the issues in the California Court.  Tribune concedes as much.  See id.

11

## CONCLUSION

WHEREFORE, Mr. Beatty respectfully requests that the Court overrule the Objection and enter an Order granting the relief requested in the Lift Stay Motion and such other and further relief as may be just and proper.

Dated:    June 22, 2009
            Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER &
            FLOM LLP


*/s/ Gregg M. Galardi*
Gregg M. Galardi (DE Bar No. 2991)
Ian S. Fredericks (DE Bar No. 4626)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
Gregg.Galardi@skadden.com
Ian.Fredericks@skadden.com

Counsel for the Movant, Warren Beatty

583827-Wilmington Server 1A - MSW