# EXHIBIT C

Not Reported in F.Supp.2d     Page 1
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

United States District Court, D. Delaware.
Bart A. BROWN, Jr., as Chapter 7 Trustee for Foxmeyer Drug Company, Plaintiff,
v.
C.D. SMITH DRUG COMPANY, William D. Bonds, Robert C. Farley, Anthony P. Denicola, Kenneth A. Trant, John C. Thompson, and Richard Meehan, Defendants.
**No. Civ.A. 98-494-SLR.**

Aug. 18, 1999.

Norman L. Pernick, Mark Minuti, and Scott J. Jensen, of Saul, Ewing, Remick & Saul LLP, Wilmington, Delaware, Daniel B. Goldman, Mark W. Smith, and Joseph E. Gehring, Jr., of Kasowitz, Benson, Torres & Friedman LLP, New York, New York, for Plaintiff, of counsel.

Alan J. Stone, and David J. Teklits, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Floyd R. Finch, Jr., Peter T. Niosi, and George A. Hanson, of Blackwell, Sanders, Peper, Martin LLP, Kansas City, Missouri, for Defendants, of counsel.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

*1 Currently before the court are a motion to dismiss and a motion for transfer of venue filed by defendants C.D. Smith Drug Company ("CDS") and its corporate directors William D. Bonds, Robert C. Farley, Anthony P. DeNicola, Kenneth A. Trant, John C. Thompson, and Richard Meehan. These motions arise out of a suit filed in this court by plaintiff Bart A. Brown, Jr., the Chapter 7 Trustee of FoxMeyer Drug Company ("FoxMeyer"). Plaintiff's complaint asserts several Missouri state law claims against defendants, none of whom are residents of Delaware. Defendants seek dismissal for lack of personal jurisdiction or, in the alternative, a transfer of venue to the Western District of Missouri. Because the court has personal jurisdiction over defendants by virtue of Bankruptcy Rule ("BR") 7004(d), the court shall deny defendants' motion to dismiss; however, because the convenience of the parties and the interests of justice favor transfer, the court shall grant defendants' motion to transfer venue to the Western District of Missouri.

II. BACKGROUND

This suit has its genesis in FoxMeyer's August 27, 1997 filing for Chapter 11 reorganization in the District of Delaware. At the time of its filing, FoxMeyer was organized under the laws of Delaware, but had its principal place of business in Carrollton, Texas. Shortly after filing for reorganization, the bankruptcy court ordered FoxMeyer's Chapter 11 case converted to a Chapter 7 liquidation proceeding. The bankruptcy court then appointed plaintiff as Chapter 7 Trustee.

Thereafter, plaintiff filed the present suit alleging unfair competition, breach of fiduciary duty, and other Missouri state law causes of action against defendants. Plaintiff seeks $50 million in damages arising out of defendant William D. Bonds' organization of a mass "defection" of FoxMeyer's sales representatives to CDS-FoxMeyer's chief competitor in the wholesale pharmaceutical business. According to the complaint, Bonds was a ranking executive in FoxMeyer's Kansas City regional sales office. During late 1993 to early 1994, Bonds allegedly became dissatisfied with FoxMeyer and began surreptitious employment negotiations with defendant Meehan, a CDS corporate director. It is alleged that Bonds met with defendants and offered to organize a mass defection of FoxMeyer's Kansas City sales staff to CDS in return for valuable consideration and other benefits. Defendants allegedly

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 3 of 8

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

agreed to conspire with and assist Bonds in his efforts. According to plaintiff, Bonds also agreed to assist CDS in acquiring FoxMeyer's credit manager, who possessed valuable and confidential information about the credit worthiness and payment histories of FoxMeyer's customers. (D.I.1, ¶¶ 23-24)

During this time, FoxMeyer was formulating a secret strategic reorganization plan designed to improve FoxMeyer's competitive edge in the pharmaceutical wholesaling market. Plaintiff claims that Bonds helped draft the reorganization plan for FoxMeyer's Kansas City regional office and that he understood that the premature or inaccurate disclosure of the plan to FoxMeyer's sales staff, or to competitors, would irreparably injure FoxMeyer. Bonds allegedly agreed to keep the plan secret pending its formal authorized announcement by FoxMeyer in early 1994.

**\*2** In violation of his fiduciary duties, Bonds allegedly disclosed portions of the reorganization plan to FoxMeyer sales representatives and to defendants. According to plaintiff, he misled FoxMeyer sales representatives about the plan's effects on their sales territories and salaries in an effort to foment ill-will against FoxMeyer and thus encourage a mass defection of sales staff to CDS. (D.I.1, ¶¶ 19-20) Plaintiff asserts that Bonds also gave CDS other FoxMeyer proprietary information including the gross sales figures of FoxMeyer's Kansas City division and the compensation levels of FoxMeyer sales representatives-the latter allegedly designed to assist CDS in formulating job offers for these representatives. (D.I.1, ¶ 29)

On or about January 28, 1994, Bonds (while still employed at FoxMeyer) and several of defendants met with numerous FoxMeyer sales representatives and solicited each to join CDS and to take with them their sales volume, customer contacts, and proprietary information. Defendant Farley allegedly prepared the employment agreements offered to the FoxMeyer sales representatives using confidential FoxMeyer information procured by Bonds. On or about February 7, 1994, Bonds and substantially all of FoxMeyer's Kansas City sales department resigned with no prior notice and joined CDS in accordance with the alleged conspiracy plotted by Bonds and the other defendants. Shortly thereafter, several of FoxMeyer's longstanding customers transferred their business to CDS. Plaintiff claims that the actions of Bonds and the other defendants unlawfully stripped FoxMeyer of its vital resources and prevented it from competing in the marketplace, servicing its remaining clients, or marketing for new business.

Before filing for bankruptcy, FoxMeyer sued defendants in the Circuit Court of Jackson County, Missouri. That complaint alleged the same facts and sought the same relief as the complaint at bar. Following FoxMeyers' bankruptcy filing, the Missouri Circuit Court dismissed the action without prejudice. Plaintiff later re-filed the action in this court as a proceeding "related to" the FoxMeyer bankruptcy.

III. DISCUSSION

A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The court first must determine whether it has personal jurisdiction [FN1] over the defendants, even though none of defendants are citizens of Delaware and none of the alleged wrongs occurred in Delaware. Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. *See Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).* In the absence of consent to suit in the forum (and none was given in the present case), there must be some authorization for service of summons on the defendant. In the present case, plaintiff served defendants pursuant to Bankruptcy Rule ("BR") 7004(d). Rule 7004(d) permits nationwide service of process in adversary proceedings. [FN2] At issue is whether the nationwide service of summons authorized by BR 7004(d) provides a constitutional basis for personal jurisdiction over

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 4 of 8

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

defendants who were not served in Delaware and who claim to have had no contacts with Delaware.

> FN1. The court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1334(b), which provides district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This action unquestionably is "related to" the FoxMeyer bankruptcy proceeding because plaintiff's suit "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984), overruled on other grounds by Things Remembered, Inc. v.. Petrarca, 516 U.S. 124, 134-35 (1995). As an action "related to" the FoxMeyer bankruptcy, the Federal Rules of Bankruptcy control, among other things, service of process. See Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1237-38 (3d Cir.1994).

> FN2. BR 7004(d) states that, "[t]he summons and complaint and all other process except a subpoena may be served anywhere in the United States."

**\*3** Defendants argue that personal jurisdiction founded on BR 7004(d) is unconstitutional because they lack "minimum contacts" with the State of Delaware and because answering suit in Delaware would be onerous and unfair. While defendants concede that BR 7004(d) provides for nationwide service of process, they argue that service of process and personal jurisdiction are two distinct concepts. The latter, defendants suggest, does not follow necessarily from the former; instead, defendants assert that a court has personal jurisdiction over out-of-state defendants only where that jurisdiction comports with notions of substantial justice and fair play. In essence, defendants urge the court to adopt a fairness test akin to that articulated by the Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. In those cases, the Supreme Court adopted a two-part test to assess the constitutionality of *in personam* jurisdiction over out-of-state defendants haled into federal court pursuant to a state long-arm statute.[FN3] The two-part test asks whether the defendants have minimum contacts with the forum state and whether exercising jurisdiction over defendants would comport with notions of substantial justice and fair play. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Shaffer v. Heitner, 433 U.S. 186, 207 (1977); International Shoe, 326 U.S. at 316.

> FN3. Where subject matter jurisdiction is founded on diversity or on a federal statute that does not provide for national service of process, Fed.R.Civ.P. 4(e) incorporates the forum state's long-arm statute as means for obtaining personal jurisdiction over the defendants.

That test, though, applies only to jurisdictional issues arising under the 14th Amendment. Because the present case is "related to" a bankruptcy proceeding and because service of process was effected pursuant to a federal rule having the force of federal law,[FN4] it is the Fifth, not the Fourteenth, Amendment that is at issue. The Supreme Court has not addressed whether the Due Process Clause of the Fifth Amendment also requires personal jurisdiction over out-of-state defendants to comport with notions of fairness and substantial justice;[FN5] however, the majority of lower federal courts to have considered the issue have concluded that out-of-state defendants need only have minimum contacts with the United States in order to satisfy Fifth Amendment due process. In reaching this conclusion, courts have reasoned that the fairness requirement imposed by the Fifth Amendment relates only to whether the sovereign has the power to exercise jurisdiction, not to the fairness of suit in a particular forum provided by the sovereign. See, e.g., In re Federal Fountain, Inc., 165 F.3d 600, 601-02 (8th Cir.1999) (explaining that, because BR 7004(d)

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 5 of 8

Not Reported in F.Supp.2d                                                                                     Page 4
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

provides for national service of process, fairness of suit in a particular state is not at issue; due process is satisfied where defendant has sufficient contacts with the United States); *Hogue v. Milodon Eng'g, Inc.,* 736 F.2d 989, 991 (4th Cir.1984) (finding that Virginia bankruptcy court had personal jurisdiction over California defendant under former BR 704 and that defendant must look to federal venue requirement for relief from onerous litigation); *In re Outlet Department Stores, Inc.,* 82 B.R. 694, 699 (Bankr.S.D.N.Y.1988) (holding that where out-of-state defendant was properly served under BR 7004(d), minimum contacts test for personal jurisdiction does not apply; Fifth Amendment requires only that service be reasonably calculated to inform defendant of pendency of proceedings); *In re Trim-Lean Meat Prods., Inc.,* 11 B.R. 1010, 1011-13 (Bankr.D.Del.1981) (finding that personal jurisdiction founded on former BR 704 required only minimum contacts with the United States).

> FN4. The Federal Rules of Bankruptcy Procedure have the force of law. *See* 1 *Collier on Bankruptcy* § 1.04, at 1-55 (15th ed. rev.1999). As such, BR 7004(d) has the same force and effect as other nationwide service of process provisions provided by federal statute. *See, e.g.,* The Securities Act of 1934, 15 U.S.C. § 78aa; ERISA, 29 U.S.C. § 1132(e)(2); The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(d).
>
> FN5. *See Omni Capital,* 484 U.S. at 102 n. 5; *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113 n.* (1987) (explaining that, "[w]e have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of national contacts, rather than on the contacts between the defendant and the State in which the federal court sits.").

**\*4** The Second Circuit reached such a conclusion in a case involving service of out-of-state defendants under the nationwide service of process provision of the Securities Act of 1934.[FN6] *See Mariash v. Morrill,* 496 F.2d 1138 (2d Cir.1974). Writing for the court, Judge Kaufman explained that the Massachusetts defendants need not have had minimum contacts with the State of New York to justify personal jurisdiction over them because "[i]t is not the State of New York but the United States 'which would exercise its jurisdiction over [the defendants] .... [a]nd plainly, where, as here, the defendants reside within the United States, the 'minimal' contacts,' required to justify the federal government's exercise of power over them, are present." *Id.* at 1143 (footnotes and citations omitted). Similarly, in an ERISA suit brought in Texas against a Michigan insurer, the Fifth Circuit explained that

> FN6. 15 U.S.C. § 78aa ("process ... may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found").

when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States.

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 826 (5th Cir.1996) (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994)); *see also ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626-27 (4th Cir.1997) (finding *inpersonam* jurisdiction where service effected on out-of-state defendants under nationwide service of process provision provided by civil RICO statute).

Defendants insist, however, that these courts have focused erroneously on the sovereign's power to provide for jurisdiction, instead of on the fairness of suit in a particular forum.[FN7] Citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 6 of 8

Not Reported in F.Supp.2d                                                                                                                      Page 5
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

*de Guinee,* 456 U.S. 694 (1982), defendants argue that the Supreme Court has shifted its focus from a sovereign's power to exercise personal jurisdiction to whether the exercise of personal jurisdiction infringes upon an individual's liberty interest. Specifically, defendants point to a single passage in that opinion where Justice White, writing for the Court, remarked that:

> FN7. At least two circuit court panels have expressed similar reservations. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 943-48 (8th Cir.1997) (applying 14th Amendment personal jurisdiction analysis to national service of process case); *Bellaire,* 97 F.3d at 826 (explaining, in dicta, the panel's reluctance in following *Busch* and its belief that jurisdiction premised on national service of process must satisfy the two-part test articulated by the Supreme Court); *Busch,* 11 F .3d at 1259 (Garza, J., dissenting) (arguing that courts should focus on "an individual's liberty interest in avoiding the burdens of litigating in a distant or inconvenient forum").*See also* Jeffrey T. Ferriell, *The Perils of Nationwide Service of Process in a Bankruptcy Context,* 48 Wash. & Lee L.Rev. 1199 (1991) (advocating that state boundaries be used to establish limitations on a federal court's personal jurisdiction in bankruptcy cases); *but see* Jay Tidmarsh & Roger H. Trangsrud, *Complex Litigation and The Adversary System* 706 (1998) (noting that district courts sitting in bankruptcy need not worry about territorial limits on personal jurisdiction).

The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.

*Id.* at 702-03.Defendants assert that this passage reveals a new commitment by the Court to protect defendants from "unfair" assertions of personal jurisdiction in distant and inconvenient fora. This is a dubious claim. First, read in context, the above quoted passage characterizes personal jurisdiction as a matter of individual liberty merely to distinguish it as a right "waivable" by defendant's conduct. Second, defendants' characterization of the Court's commitment to "fairness" as the touchstone of personal jurisdiction is questionable in light of the Court's more recent decision in *Burnham v. Superior Court,* 495 U.S. 604 (1990). There, the court upheld personal jurisdiction over an out-of-state defendant based solely on the defendant's physical presence in the forum at the time of service.FN8Writing for the court, Justice Scalia reasoned that "the short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.' " *Id.* at 619.Thus, the Supreme Court still attaches great significance to a sovereign's power to exercise personal jurisdiction over those within its territory.

> FN8. Burnham, a New Jersey resident, was on vacation in California when served with a California court summons and a petition for divorce.

*5 Here, the relevant sovereign is the United States, and Congress unquestionably has the power to enact laws which provide for national service of process. Where it has not done so, the court normally must rely on Fed.R.Civ.P. 4(e)'s incorporation of the relevant state's long-arm statute to acquire personal jurisdiction. Only then do a defendant's contacts with the forum state and considerations of fairness and convenience to out-of-state defendants become significant to the court's jurisdictional analysis. This is sensible because in such cases the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 7 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Page 6

court "borrows" the forum state's jurisdictional statute to assert personal jurisdiction over residents of another state-thereby implicating state sovereignty issues. The Supreme Court's two-step test keeps a state's jurisdictional powers in check by limiting the reach of that state's long-arm statute to those defendants who have purposefully maintained contacts with that jurisdiction. The test also protects a defendant's freedom from answering suit in a forum solely as a result of random or attenuated contacts with that forum. *See Burger King,* 471 U.S. at 475.

In the present case, however, the relevant forum is the nation as a whole, and Congress has provided a jurisdictional mechanism in the form of national service of process. The sovereignty of individual states is not implicated, and personal jurisdiction over those defendants who have availed themselves of the United States can hardly constitute a due process violation. Thus, the court need only satisfy itself that defendants have minimum contacts with the United States. Because defendants have such contacts, the court concludes that it has personal jurisdiction over them. Accordingly, defendants' motion to dismiss is denied. Whether or not Delaware is a convenient location for suit is a matter best left to a motion for transfer of venue. It is to this motion that the court now turns.

B. Defendants' Motion to Transfer

Defendants move the court to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the Western District of Missouri. Section 1404(a) provides:

For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Because courts accord plaintiff's choice of forum substantial weight, defendants have the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). In reviewing a motion to transfer venue, courts must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). Courts have considered "many variants of the public and private interests protected by the language of § 1404(a)." *Id.* The private interests considered by courts have included

**\*6** plaintiff's forum preference as manifested by the original choice ... the defendant's preference ... whether the claim arose elsewhere ... the convenience of the parties as indicated by their relative physical and financial condition ... the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora ... and the location of the books and records ... [where] the files could not be produced in the alternative forum....

*Id.* The public interests considered by courts have included

the enforceability of the judgment ... practical considerations that could make the trial easy, expeditious, or inexpensive ... the relative administrative difficulty in the two fora resulting from court congestion ... the local interest in deciding local controversies at home ... the familiarity of the trial judge with the applicable state law in diversity cases....

*Id.* Most of these factors weigh in favor of transfer to the Western District of Missouri.

As an initial matter, the court notes that this action could be brought in the Western District of Missouri under that court's diversity jurisdiction. There is more than $75,000 in controversy and complete diversity exists between the parties.[FN9] Although plaintiff's decision to bring suit in Delaware carries great weight, plaintiff's choice of venue is not, in light of all the circumstances, convenient to the parties and witnesses or in the interests of justice.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Case 08-13141-BLS    Doc 1598-3    Filed 06/22/09    Page 8 of 8

Page 7

FN9. Plaintiff is incorporated under Delaware law and has its principal place of business in Texas while defendants appear to be citizens either of Kansas or Missouri.

The inconvenience to defendants of litigating in Delaware is of chief concern to the court. None of defendants reside in or near Delaware. In fact, most live near Kansas City, Missouri. Moreover, defendants are the corporate officers of CDS. Although technological advances have reduced the burden of having to litigate in a distant forum, *see Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D.Del.1993), forcing individual defendants, as well as the corporate defendant's essential employees, to travel hundreds of miles to testify when there is a local alternative weighs heavily in favor of transfer. Moreover, defendants have produced several affidavits of third-party witnesses who have indicated that they will not travel to Delaware to testify. (D.I.31, Ex. B) Some of these witnesses have personal knowledge of FoxMeyer's drug wholesaling practices and, presumably, will testify as to why they did business with CDS rather than FoxMeyer. Unlike the Western District of Missouri, this court has no power to compel the presence of these witnesses. Although defendants could present the deposition testimony of these witnesses at trial, the Supreme Court has noted that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947); *see also Sunds Defibrator, Inc. v. Durametal Corp.,* No. CIV.A. 96-483-MMS, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997) (noting the importance of hearing live testimony). Finally, trial in Delaware would require the shipment of voluminous materials from Missouri to Delaware. Although the court has noted in other cases that transportation of documents does not alone justify transfer, *see Brinn v. McCracken Fin. Servs., Inc.,* No. Civ. A. 95-542-SLR, 1996 WL 79377, at *6-7 (D.Del. Feb. 20, 1996), in the present case this burden is simply one more factor in favor of transfer.

**\*7** Also supporting transfer is the tenuous relationship of this case to the District of Delaware. The only connection to this court is FoxMeyer's decision to file for bankruptcy in Delaware, thus giving the district court subject matter jurisdiction over "related" proceedings. *See* 28 U.S.C. § 1334(a). None of the allegedly unlawful acts giving rise to plaintiff's complaints occurred in Delaware. Moreover, the complaint lacks any federal questions and rests entirely on Missouri common law. While the court has both the jurisdiction and the competence to address these Missouri causes of action, it nonetheless feels that a member of the Missouri bar ought to decide issues affecting the development of Missouri common law.

In sum, the only factor weighing against transfer is plaintiff's choice of venue while, on the other hand, there are several compelling reasons to transfer this matter to the Western District of Missouri. As such, the court finds that defendants have met their burden of showing that the convenience of the parties and the interests of justice merit transfer. The court, therefore, shall grant plaintiff's motion to transfer.

IV. CONCLUSION

For the aforementioned reasons, the court shall deny defendant's motion to dismiss and grant its motion to transfer venue to the Western District of Missouri. An appropriate order shall issue.

D.Del.,1999.
Brown ex rel. FoxMeyer Drug Co. v. C.D. Smith Drug Co.
Not Reported in F.Supp.2d, 1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.