IN THE UNITED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 08-13141 (KJC) |
| | ) | |
| **TRIBUNE COMPANY, et al.,** | ) | **(Jointly Administered)** |
| | ) | |
| Debtors. | ) | |
| | ) | |

**JOINT PRETRIAL MEMORANDUM CONCERNING THE
MOTION FOR RELIEF FROM AUTOMATIC STAY (DOCKET NO. 883)**

Donna Gerhart Gutman, Personal Representative of the Estate of Decedent E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. (the "Movant") and Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor-in-possession (the "Debtors"), by and through their undersigned counsel, hereby submit this Joint Pretrial Memorandum and in support hereof, state as follows:

A)    **Background**

1)    On April 9, 2009, Movant filed a Motion for Relief from the Automatic Stay (the "Motion").  Pursuant to the Motion, Movant requests this Court modify the automatic stay to allow the civil action captioned <u>E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. a/k/a and/or d/b/a Back Pain Institute of Orlando v. Orlando Sentinel Communications Company, Tribune Company of Chicago a/k/a Tribune Company, Tribune Publishing Company, Sentinel Communications News Ventures, Inc.</u>, (the "Civil Action") to proceed to trial, and granting such other and further relief as this Court may deem just and proper.

2) On April 23, 2009, Debtors filed Debtors' Objection to the Motion for Relief from the Automatic Stay With Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. (the "Objection").

3) The parties conducted a status conference before this Court on April 30, 2009 at 2:30 p.m. During the April 30th status conference, the Court scheduled an evidentiary hearing on the Motion for June 30, 2009, beginning at 1:30 p.m. Pursuant to the Court's instruction, Movant and the Debtors (the "Parties") submit this Joint Pretrial Memorandum.

B) **Basis of Jurisdiction**

1) The Parties stipulate that this Court has jurisdiction over the Motion and the Objection pursuant to 28 U.S.C. § 157 and 1334. Further, this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2) Movant contends that the Court does not have jurisdiction to hear Movant's underlying Civil Action as the Civil Action is based, in part, on personal injuries sustained by E. Michael Gutman, M.D. (the "Decedent"). Movant further contends that the Civil Action, if it were to proceed in this bankruptcy proceeding, should do so before the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 157(b)(5).

C) **Statement of Uncontested Facts**

1) Decedent died on April 28, 2009. Decedent was a physician licensed to practice medicine in the State of Florida and resided in Orange County, Florida. Decedent was the director of Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc., a/k/a and/or d/b/a Back Pain Institute of Orlando, both Florida corporations.

2) On April 30, 2006, Decedent filed his Second Amended Complaint for Relief against Defendants Orlando Sentinel Communications Company, the Tribune Company of

Chicago, a/k/a Tribune Company, Tribune Publishing Company, Sentinel Communications News Ventures, Inc., Rena Stutzman, Individually and Fred Schulte, Individually, in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "State Court").

3) The Debtors commenced the above-captioned bankruptcy proceeding on December 8, 2008 (the "Petition Date").

4) Decedent's Second Amended Complaint alleges that the Debtors' published false, misleading and defamatory statements that damaged the personal and professional reputation of Decedent and his businesses. Decedent's Second Amended Complaint further alleges that the Debtors caused the Decedent to suffer mental and emotional distress, humiliation, embarrassment and mental anguish resulting from Debtors' publication of articles concerning the Decedent. The Second Amended Complaint contained two counts, but the Court dismissed <u>sua sponte</u> the second count, a false light invasion of privacy claim, in recognition of a recent Florida Supreme Court opinion holding that the common law of Florida does not recognize that cause of action.

5) As of the Petition Date, the Civil Action was scheduled to go to trial on June 1, 2009, in the State Court.

6) As of the Petition Date, the Debtors had expended approximately $1,264,184.00 in connection with the defense of the Civil Action. Likewise, Movant has expended $150,000.00 as a retainer to Movant's counsel in the Civil Action. In addition to the costs advanced to Movant's attorneys, Movant has incurred $128,817.47 in costs advanced by Movant's Florida counsel. Movant's counsel in the Civil Action is working on a contingency fee basis; accordingly, Movant has no obligation to reimburse Movant's Florida counsel for any costs advanced if Movant does not prevail in the Civil Action. Deposition of Donna Gutman ("D.

3

Gutman Dep."), p. 54, ll 1-9; p. 65, ll 14 -25.    Furthermore, the Movant's affiant has no knowledge of the amounts paid in this litigation. D. Gutman Depo. at pp. 52 - 54, ll 12- 24.

7)    The Debtors are subject to a significant number of prepetition litigation cases, including at least (i) 45 prepetition media-related cases,[1] the majority of which expose the Debtors to a $1 million per occurrence deductible obligation related to any judgment or settlement amount and all of which expose the Debtors to significant additional defense costs (which do not count against the deductible obligation), (ii) 50 prepetition personal injury cases, all but one of which is subject to a $1 million deductible obligation, and (iii) 15 employment-related cases, none of which are covered by insurance.  The Civil Action is one of the 45 prepetition media-related cases pending against the Debtors.   The Civil Action exposes the Debtors to not only a $1 million insurance deductible obligation related to any judgment or settlement amount, but also to significant additional defense costs.  As with the other prepetition media-related cases pending against the Debtors, these defense costs are not counted against the deductible under the Debtors' insurance policies.

D)    **Statement of Facts which are in Dispute**

**(Movant's Statement of Facts)**

1)    The Debtors published articles in the Sentinel newspaper claiming that Decedent, along with other doctors, was under investigation for over-prescribing OxyContin, which allegedly lead to the death of several Florida residents.

2)    On November 30, 2003, the Sentinel published false statements regarding the Decedent that included the following:

- Many Die as Doctors Exploit Medicaid
- Overprescribing By Small Group Fuels Black Market

---

[1] The media-related cases primarily involve claims based on defamation, slander and libel.

4

- A small group of Florida doctors is drugging the poor at taxpayer's expense.

- The doctors are exploiting the Medicaid system by prescribing hundreds of millions of dollars worth of dangerous drugs that are feeding a booming black market and adding to a torrent of fatal over-doses.

- Even as the state faces a budget crisis in which Medicaid costs figure prominently, abuse of the health-care system for the poor by doctors – and by willing pharmacists and patients – has gone largely unpunished, according to an eight month investigation by South Florida Sun-Sentinel.

- A separate investigation by the Orlando Sentinel found that at least 11 people in Central Florida died in the past three years on prescriptions linked to Orlando psychiatrist and pain specialist E. Michael Gutman.

- Ten of those who died were patients of Dr. E. Michael Gutman and all had taken drugs he prescribed for the treatment of pain or mental disorders, according to medical examiner's reports.

3) Aside from the economic harm, Debtors' publication of false, misleading and defamatory statements about the Decedent caused the Decedent to suffer considerable emotional harm that manifested itself in several different ways. In particular, Debtors' actions directly harmed the Decedent's professional reputation, which in turn caused Decedent to experience severe anguish, depression and sadness.

4) Prior to Debtors' publication of the defamatory articles, the Decedent was highly regarded in the professional community. Decedent's professional esteem was reflected in the client referrals he received from attorneys and doctors throughout the State of Florida. Decedent previously served as Chair of the Florida Psychiatric Group and was regularly called upon to serve as a forensic expert witness in criminal trials. After Debtors published various articles, Decedent's professional reputation suffered considerable damage.

5) The damage to Decedent's professional reputation was evident in the immediate lack of client referrals Decedent received following Debtors' publication. After Debtors ran their

5

articles about the Decedent, clients immediately began cancelling appointments. Over time, attorneys who had previously referred clients to the Decedent stopped providing referrals, or calling on Decedent as an expert witness, due to concern that the negative media received by the Decedent might compromise the attorney's case.

6) After Debtors published their articles regarding Decedent, Decedent's patients began advising him that their primary care physicians were encouraging them to change pain specialists. In response to this information, Decedent advised Movant at various times that he was "ruined," "finished" or "washed up."

7) The anguish and emotional harm sustained by the Decedent due to the Debtors' wrongdoing was so great that Decedent eventually stopped going out for social occasions. Decedent ultimately decided that it was important that he correct the wrong committed by the Debtors. Decedent did this by retaining Florida counsel and commencing the Florida Action.

8) Decedent worked for several years in the preparation and pursuit of the Florida Action. Although the events in the Florida Action made Decedent very distressed, he continually worked with his attorneys to pursue the Florida Action to trial. Decedent viewed the trial scheduled in the Florida Action as an opportunity to redeem his professional reputation.

9) It is not practical, but instead would be highly prejudicial, if the Florida Action were tried in Delaware. The majority of Decedent's witnesses in the Florida Action, including Decedent's family, referral sources, colleagues and co-workers, reside in Florida.

10) Were the Florida Action permitted to proceed to trial, there is a very high likelihood that Decedent's estate will prevail against the Debtors. Debtors made the above statements about the Decedent with knowledge that such statements were false. In February and August of 2004, the Debtors, through the Sentinel, published correction articles wherein they

6

acknowledged they had mischaracterized the abuse and death rate related to OxyContin. However, Debtors never published any corrective statements regarding the Decedent.

**(Debtors' Statement of Facts)**

1)   The Sentinel's articles were truthful.  At the time the articles were published, Decedent and his businesses were among Florida's highest-volume prescribers of highly addictive drugs.  Nearly a dozen people died after taking drugs that the Decedent prescribed. After the article was published, additional deaths were discovered.  The Sentinel's articles recounting these facts were truthful and, therefore, are not actionable.  In her recent deposition, the Movant's affiant, Ms. Gutman, testified that she had no personal knowledge of the underlying facts in this matter.  She has no evidence to demonstrate falsity.  D. Gutman Depo. at pp. 30-31, ll. 16-4; pp. 33-34, ll. 16-23.  She was not involved in patient care. D. Gutman Depo. at pp. 9-10, ll. 24 – 13; pp. 14-15, ll. 8 -3; p 34 ll. 9-22.; p. 41-43, ll 11 -23. She was not involved in the financial management of the business. D. Gutman Depo. at pp. 12-13; ll. 6 – 15.  Indeed, the only evidence that Ms. Gutman can provide concerning the underlying facts of this case is her unstinting belief that the Decedent was a good man who was not capable of mismanaging his patients.  She is without any knowledge relating to any of the statements contended to be false in the defamation action.  D. Gutman Depo. at pp. 29 - 43, ll 18-22.

2)   The Sentinel's articles also are privileged, in that the Sentinel's articles track statements in public records, such as autopsy reports, law enforcement investigative files and statements from official sources.  Statements that fairly and accurately reflect the content of public records and official sources are privileged and, therefore, are not actionable (regardless of their supposed falsity).  Consequently, and because the Sentinel fairly and accurately reported information in public records, Debtors will prevail in this action – and would even if the

7

statements at issue were false (which is denied).  Movant's affiant has no knowledge of any underlying materials reviewed by the reporters and cannot discuss with any certainty what public records and official sources were the basis of the reporting.  D. Gutman Depo. at p. 60 - 61, ll. 15- 12;  pp. 62 - 63, ll 5 – 18.

       3)     Debtors also will prevail in this action because Movant faces the heavy burden of proving by clear and convincing evidence that the Sentinel published the articles with actual malice.  Decedent was a well-known psychiatrist, prominent in the Orlando medical community, and an expert witness in hundreds of criminal court cases.  He was unquestionably a public figure.  Consequently, to prevail in this action, Movants will have to prove that the Sentinel published one or more substantially false factual statements concerning the Decedent, and that the Sentinel did so with actual malice – i.e., with knowledge that the articles were false or, at a minimum, with a high degree of awareness that the statements were probably false.  The Sentinel's reporters have been deposed, and their testimony confirms that they believed their articles were truthful.  Consequently, Movant will be unable to meet the burden of proving actual malice.  Indeed, Ms. Gutman had no evidence related to the state of mind of the reporters or editors.  D. Gutman Depo. pp. 60-61, ll. 6 -12; pp. 62 – 63, ll. 5-18.

       4)     Movant's claims also will fail because Decedent did not provide pre-suit notice as Florida law requires.  A defamation plaintiff who intends to sue a media defendant in Florida must first serve a written notice of "the specific article or broadcast and the statements therein which he or she alleges to be false and defamatory." § 770.01, Fla. Stat.  In this case, Decedent served a notice quoting entire passages from the articles at issue, but Decedent never identified specific false and defamatory statements.  The trial court already determined that this notice was defective. Such notice is a jurisdictional condition precedent to bringing a defamation action

8

against a media entity. Because Decedent and his businesses failed to provide such notice, Movant's claims are barred by the Florida notice statute. Any attempt to provide notice at this time would fail, because the applicable statute of limitations expired years ago. Therefore, even if the statements at issue were false, published with actual malice, and not privileged, Movant's claims are barred by Florida's pre-suit notice statute.

5) The Sentinel's corrections concerning a different series of stories by other reporters are of no help to Movant. As noted above, the articles Decedent challenged were truthful. That statements concerning others were corrected is irrelevant, except perhaps insofar as the publication of those corrections demonstrates that, when errors occur, the Sentinel corrects them. The lack of any substantive corrections to the articles in this case, therefore, is evidence of their truth – not falsity.

6) Substantial work, including discovery, remains to be completed in this action. At a minimum the Debtors intend to take the following, additional depositions including but not limited to Dr. McClave (plaintiff's expert, on the changed damages opinion based on Dr. Gutman's death before the expiration of the damages modeled developed by Dr. McClave); Donna Gutman (on her personal knowledge of the liability and damages issues); three medical examiners (on the cause of death of the deaths that is the subject of the instant newspaper articles); Dr. Mountain (Dr. Gutman's former partner); the remainder of Dr. Gutman's local pain management expert; and one or more of the prescribing pharmacists. In addition, the Debtors have not yet disclosed and designated their economics damages expert (who cannot perform his analysis until we have completed the deposition of Dr. McClave and received his revised damages report); neither have the Debtors designated our journalism standards expert. The Debtors estimate that it will take at least six months to complete the above discovery.

WM1A 927689v1 06/19/09
WM1A 928175v3 06/25/09

7) The Debtors estimate that this action cannot be tried before 2010. In addition to the parties' need to complete fact and expert discovery, substantial legal issues remain unaddressed, which the trial court will need to adjudicate before trial, including but not limited to motions for summary judgment on: (a) substantial truth (the requirement that the plaintiff show that the subject writings were materially false); (b) actual malice (the requirement that the plaintiff show defendants intentionally and knowingly lied); (c) the fair reporting privilege (the requirement that the plaintiff overcome defendants' right to rely on governmental documents, findings and writings); and (d) dismissal of corporate defendants against whom no proof or actionable claim has (or can be) made.

8) The parties have also not completed the court-required mediation process, a prerequisite to trial of this action in Florida. Mediation in a complex case with so many unaddressed legal issues such as this is typically scheduled after the trial court has ruled on dispositive motions.

9). The Debtors estimate that this action cannot be tried before early to mid-2010. Given the significant legal issues and the damages claimed by Dr. Gutman, the disappointed party will be highly likely to exercise the appellate review to which every Florida litigant is entitled. Based on my substantial experience in the Fifth District Court of Appeal, I estimate an additional twelve – eighteen months for completion of the intermediary appellate process. Beyond that, the Florida Supreme Court might well accept discretionary review of any First Amendment issues that presented themselves, in light of the Court's recent defamation rulings (including the ruling that rendered one of Dr. Gutman's two claims invalid under Florida law), which would add another twelve to eighteen months. Thus, final disposition of this action is unlikely to occur until 2011 – 2013.

E)      **Damages or other Relief**

1)      Movant asks this Court to enter an Order, in the form attached to Movant's Motion, modifying or lifting the automatic stay so the Civil Action may proceed to trial and judgment against the Debtors. Movant seeks such other and further relief that this Court may deem just and appropriate.

F)      **Legal Issues Presented**

1)      Whether cause exists to lift the automatic stay in this bankruptcy proceeding pursuant to 11 U.S.C. § 362(d)(1) based on the totality of the circumstances surrounding the Civil Action. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997).

2)      Whether Movant has met its initial burden of producing evidence sufficient to establish a prima facie case of entitlement to relief. In re RNI Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006).

3)      In determining whether to grant relief from the automatic stay for "cause," the parties respectfully submit that this Court should apply a three-prong balancing test:

> (1)     "Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit."
>
> (2)     "Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor"; and
>
> (3)     "The probability of the creditor prevailing on the merits." Even a "slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."

In re: SCO Group, Inc., 395 B.R. 852, 857-58 & 859 (Bankr. D. Del. 2007) (citing Izzarelli v. Rexene (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

11

4)  In addition, the Court may consider the following general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay.  These policies are: (1) whether this Court has jurisdiction to hear the underlying claims arising from the Civil Action. 28 U.S.C. § 157(b)(2)(G); (2) whether granting Movant relief from stay would provide a complete resolution of the issues presented in the Civil Action; (3) whether granting Movant relief from the automatic stay would interfere with Debtors' bankruptcy proceeding; (4) whether the interest of judicial economy and the expeditious and economical resolution of litigation weigh in favor of granting Movant relief from the automatic stay; (5) whether the parties are ready for trial in the Civil Action; (6) whether the impact the stay has on the Movant justifies the relief requested in the Motion.  SCO Group, 395 B.R. at 857 (citing In re Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1287 (2d Cir. 1990)).

G) **Witnesses**

1)  Movant intends to present her proffer in support of the motion at the hearing. Movant will be available at the hearing for cross-examination by the Debtors.  Movant reserves the right to present live testimony at the hearing in support of the Motion.

2)  Movant intends to present excerpts at the hearing of the video recording from the Decedent's deposition in the Civil Action.

H) **List of all Exhibits**

1)  Affidavit of Donna Gerhart Gutman, Personal Representative of the Estate of Decedent E. Michael Gutman, M.D. in Support of Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. (Docket No. 1342).

2)	Affidavit of Jack Roden, Vice President and Treasurer of Tribune Company, in support of Debtors' Objection to the Motion for Relief from the Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. (Docket No. 1084).

3)	Deposition transcript of E. Michael Gutman, M.D. dated August 21, 2007.

4)	Articles published by Debtors regarding the Decedent.

5)	Affidavit of Mayanne Downs.

6)	Obituary of Decedent.

7)	Affidavit of Mauel Socias

8)	Plaintiff's Second Amended Complaint.

9)	Correspondence from Mrs. Gutman's accountants dated June 23, 2009.

10)	Correspondence from the Decedent dated April 28, 2009.

11)	Deposition transcript of Plaintiff's expert, Dr. Gail Baker McCarty, dated August 12, 2008.

12)	Deposition transcript of Plaintiff's expert, Dr. James T. McClave, dated September 18, 2008.

13)	Deposition transcript of Donna Gutman, dated June 17, 2009.

14)	Affidavit of Chandler Bigelow, III, Senior Vice President and Chief Financial Officer of Tribune Company in Support of First Day Motions (pp. 1-14 only).

I)	**A List of Each Discovery Item**

1)	Deposition transcript of E. Michael Gutman, M.D. dated August 21, 2007.

p. 44, ln. 20-24

p. 46, ln. 14-18

WM1A 927689v1 06/19/09
WM1A 928175v3 06/25/09

      p. 47, ln. 10-19

      p. 58, ln. 17-21

      p. 112, ln. 17-24

2)     Deposition transcript of Plaintiff's expert, Dr. Gail Baker McCarty, dated August 12, 2008.

      p. 33, ln. 9-23

      p. 39, ln. 5-11

      p. 56, ln. 4-16

3)     Deposition transcript of Plaintiff's expert, Dr. James T. McClave, dated September 18, 2008.

      p. 84, ln. 25 – p. 85, ln. 5

4)     Deposition transcript of Donna Gutman, dated June 17, 2009

      J)    **An Estimate of the Length of Trial**

1)     The parties do not expect this matter to exceed two (2) hours.

**FOX ROTHSCHILD LLP**

<u>L. Jason Cornell, Esquire</u>
L. Jason Cornell, Esquire (No. 3821)
919 North Market Street, Suite 1300
Wilmington, DE 19899-2323
302/654-7444; 302/656-8920 (fax)

*Attorneys for Movant*

**SIDLEY AUSTIN LLP**
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kerriann S. Mills
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

    -and-

**COLE, SCHOTZ, MEISEL, FORMAN**
  **& LEONARD, P.A.**

<u>Patrick J. Reilly, Esquire</u>
Norman L. Pernick, Esquire (No. 2290)
Kate J. Stickles, Esquire (No. 2917)
Patrick J. Reilly, Esquire (No. 4451)
1000 North West Street, Suite 1200
Wilmington, DE 19801
302/295-4829; 302/652-3117 (fax)

*Attorneys for Debtors and*
  *Debtors in Possession*

Dated: June 25, 2009

WM1A 927689v1 06/19/09
WM1A 928175v3 06/25/09