## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 883**<br>**Hearing Date: June 30, 2009 at 1:30 p.m.** |

## DEBTORS' TRIAL BRIEF IN SUPPORT OF OBJECTION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY WITH RESPECT TO E. MICHAEL GUTMAN, M.D., MIKE GUTMAN, M.D. (MPAC ), P.A. AND GUTMAN PAIN/ACCIDENT CENTER, INC.

Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor in possession (each a "Debtor" and collectively, the "Debtors"), hereby file this trial brief in support of their objection (the "Objection") [Docket No. 1079] to the Motion for Relief From Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(MPAC), P.A. and Gutman Pain/Accident Center (collectively, "Gutman" or "Movant") [Docket No. 883] (the "Motion").   For the reasons set forth below and in the Debtors' Objection, the Court should deny the Motion.

## ARGUMENT

1.      The facts have changed markedly since Gutman filed his Motion on April 9, 2009.  Gutman died on April 28, 2009, and his widow, Donna Gerhart Gutman, was appointed as the personal representative of his estate.[2]  The parties thereafter agreed that the Gutman estate would identify the witness(es) that would support Movant's continued pursuit of the Motion, and that the Debtors would be provided an opportunity to depose Movant's witnesses.  Movant's identified Ms. Gutman as their principal affiant.  Although her affidavit purports to be based on personal knowledge, at her deposition in Orlando, Florida on June 17, 2009, Ms. Gutman testified that she had no personal knowledge of the underlying facts in the Florida defamation case (the "Civil Action").

2.      Because Movant has not proffered the testimony of any competent witness, Movant has failed establish a prima facie case that "cause" exists for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.  See, e.g., In re RNI Wind Down, 348 B.R. 286, 299 (Bankr. D. Del. 2006).   Even assuming that Movant, in her capacity as estate representative, has met her initial burden of demonstrating "cause," the record before this Court establishes that relief from the stay is unwarranted.  Id.  The Debtors' deposition of Ms. Gutman conclusively demonstrates that Gutman's death seriously diminishes Movant's chances of prevailing in the Civil Action and further tilts the balance of hardships in the Debtors' favor.

---

[2] See Affidavit of Donna Gerhart Gutman, Personal Representative of Gutman E. Michael Gutman, M.D. in Support of Motion for Relief From Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center ("Donna Gutman Aff.") [Docket No. 1342], ¶ 1.

A.      **Legal Standard – _Rexene_ Factors Favor Debtors**

3.      The parties are in agreement on the applicable legal standard.  See Joint

Pretrial Memorandum Concerning the Motion for Relief from Automatic Stay ("Joint Pretrial

Memo") at 11-12.  In determining whether Movant has demonstrated sufficient "cause" to lift the

automatic stay, the Court should consider (i) whether allowing the litigation to continue in

another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii)

whether maintaining the stay will cause any hardship to Gutman and whether this hardship is

greater than the resulting hardship to the Debtors; and (iii) the probability of Gutman prevailing

on the merits of the Civil Action.  Id. (citing In re Rexene Prods. Co., 141 B.R. 574, 576 (Bankr.

D. Del. 1992)).   The Motion fails to meet each of these factors and, consequently, fails to

establish that cause exists to lift the automatic stay.

B.      **Significant Prejudice to the Debtors Will Result if the Stay is Lifted**

4.      The Motion does not involve a state court case that was on the eve of trial

when the Debtors' chapter 11 cases were filed.  Indeed, it is undisputed that fact and expert

discovery in the Civil Action is far from complete, that key dispositive motions have yet to be

filed, that the trial in the Civil Action would not occur until early to mid-2010 (assuming the stay

is lifted), and that the ultimate disposition of the Civil Action may be several years away.  See

Affidavit of Mayanne Downs at ¶¶ 5-7.  It is also undisputed that if the Civil Action proceeds in

the tort system, the Debtors will be forced to expend a significant amount of estate resources.

The Civil Action exposes the Debtors to not only a $1 million insurance deductible obligation

related to any judgment or settlement amount, but also to significant additional defense costs.

Joint Pretrial Memo at 3-4.  As with the 45 other prepetition media-related cases pending against

the Debtors,[3] these defense costs are not counted against the deductible under the Debtors' insurance policies. Id. As a result, even though Gutman has agreed not to pursue any recoveries against the Debtors' estates arising from the insurance deductible at this time, granting Movant relief from the automatic stay to continue the Civil Action in the tort system would, at a minimum, force the Debtors to incur substantial defense costs.

5.      As of the Petition Date, with discovery still in process, the Debtors had expended approximately $1,264,184 in connection with defense of the Civil Action. Id. The Debtors anticipate that if the underlying discovery were to resume and the Civil Action was permitted to ultimately proceed to the end of trial, the Debtors could be exposed to additional defense costs ranging as high as approximately $2 million. Id. Moreover, this cost would be imposed on the Debtors with no guarantee of any benefit to Gutman; if the Civil Action were to proceed to judgment and Gutman was awarded something less than the Debtors' $1 million deductible obligation, he would not be entitled to receive anything from the Debtors' insurers as requested in the Motion.

C.      **The Debtors' Interests in Maintaining the Automatic Stay Outweigh Gutman's Interests in Liquidating His Claim at This Time.**

6.      Movant cannot demonstrate "that the balance of hardships from not obtaining relief tips *significantly* in [her] favor." RNI Wind Down, 348 B.R. at 299 (quoting Atl. Marine, Inc. v. Am. Classic Voyages Co. (In re Am. ClassicVoyages Co.), 298 B.R. 222, 225 (D. Del. 2003) (emphasis added, internal quotation marks omitted). Gutman died on April 28, 2009,

---

[3] It is undisputed that the majority of these 45 media-related cases (which primarily involve claims based on defamation, slander and libel) expose the Debtors to a $1 million per occurrence deductible obligation related to any judgment or settlement amount and all of which expose the Debtors to significant additional defense costs (which do not count against the deductible obligation). In addition, as set forth in the Debtors' Objection and the Joint Pretrial Memo, there are 50 prepetition personal injury cases, all but one of which is subject to a $1 million deductible obligation, and 15 employment-related cases, none of which are covered by insurance. Should this Court grant the relief requested in the Motion, other prepetition litigation plaintiffs would be encouraged to seek identical relief, exposing the Debtors to the risk of additional substantial defense costs and/or deductible obligations.

and, accordingly, no longer has an interest in "clearing his name" so as to more gainfully pursue his medical practice. The Debtors' interests in maintaining the protections of the automatic stay far outweigh the Gutman estate's interests in liquidating its claim at this time. Given the potential costs to be borne by the estate and the present status of the Civil Action, which, as of the Petition Date was still in the discovery phase, the Debtors submit that both Movant and the Debtors will be in a better position to determine the amount of resources to expend in pursuing the Civil Action once the Debtors and Creditors Committee have formulated claims resolution procedures[4] and the Debtors are closer to confirming a plan of reorganization that indicates the estimated distribution on account of general unsecured claims.

7.    Further, as mentioned above, the Debtors are subject to over one-hundred prepetition litigation cases, each of which, if permitted to go forward in the tort system, would potentially require the Debtors to expend substantial defense costs and/or deductible obligations. Because granting the relief requested in the Motion could create a domino effect with respect to such cases, any interest that Gutman has in proceeding in the tort system at this time is far outweighed by the potential costs that would be incurred by the Debtors and their estates if other prepetition litigation claimants were to seek similar relief from the automatic stay. Accordingly, Gutman has failed to establish that the prejudice, if any, to Gutman outweighs the prejudice to the Debtors.

---

[4]  As addressed more fully in the Debtors' Objection, the Debtors and the Creditors Committee are currently continuing their efforts to formulate global alternative dispute resolution procedures for resolving prepetition litigation claims, including Gutman's prepetition claim. Granting Movant relief from the automatic stay at this juncture would contravene the Debtors' efforts to globally implement these resolution procedures and could potentially encourage other prepetition litigation claimants to seek relief independently of the uniform procedures that the Debtors and Creditors Committee are currently formulating.

D.      **Gutman Has Failed to Demonstrate a Likelihood of Success on the Merits of the Civil Action**

8.      Even before Gutman's death, Gutman was incapable of demonstrating any reasonable likelihood of success on the merits of the Civil Action, given the substantial discovery that remains outstanding in connection with the Civil Action and the significant legal hurdles he still had to overcome to get to trial.  For example, the Debtors anticipate conducting depositions of numerous additional witnesses, including approximately four (4) experts and potentially fifteen (15) or more individuals.  Moreover, as discussed below, the Debtors' substantive summary judgment arguments, none of which have yet been the basis of a motion for summary judgment of the Civil Action, further demonstrate that Movant cannot presently establish that he has sufficient probability of succeeding on the merits if he is allowed to continue the Civil Action at this time.

9.      Movant will surely rely on In re: SCO Group, Inc., 395 B.R. 852, 859 (Bankr. D. Del. 2007), for the proposition that even a "slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."  If ever there was an *in*appropriate case, it is this one.  Gutman's recent death reduces Movant's probability of success to near zero, if Movant's submissions to this Court reflect her best efforts.  Movant has submitted (i) the affidavit of Ms. Gutman, Gutman's widow and estate representative, (ii) the affidavit of Manuel Socias, Gutman's Florida trial counsel, and (iii) snippets of deposition testimony of Gutman, who was deposed for 8 days.  Ms. Gutman testified at her recent deposition that she had no personal knowledge of the underlying facts in this matter.  And Mr. Socias only purports to testify with personal knowledge about the procedural history of the Civil Action.  Finally, the quixotic designations of Gutman's deposition testimony establish nothing more than a flavor of Gutman's rambling testimonial style (explaining the length of the

deposition). Indeed, some designations are incomplete and contain answers without questions. What these designations do not establish is the falsity of the articles at issue: Gutman was never able to point to any factual inaccuracy in the articles about him.

          10.     Even a cursory examination of the Civil Action reveals the significant hurdles that Movant has as a matter of law. Specifically, at its core, the Civil Action is based on Gutman's allegation that the newspaper published articles linking him to pain medication that contributed to the death of eleven (11) patients. Because the articles refer to a well-known citizen about a matter of public concern, Gutman must satisfy the substantial constitutional burdens of demonstrating by clear and convincing evidence that the article was false and that the newspaper knew it was false when it was published.[5] New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Philadelphia Newspapers Inc. v. Hepps, 475 U.S. 767 (1986). Gutman simply cannot meet these burdens. The Sentinel's reporters have been deposed, and their testimony confirms that they believed their articles were truthful. Consequently, Movant will be unable to meet the burden of proving actual malice. Indeed, Ms. Gutman had no evidence related to the state of mind of the reporters or editors. D. Gutman Depo. pp. 60-61, ll. 6-12; pp. 62 – 63, ll. 5-18.[6] In addition, the case law demonstrates that summary judgment is favored in media cases like the Civil Action because of the chilling effect that such cases present with respect to First Amendment freedom of speech rights. Steward v. Sun-Sentinel Co., 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (stating that "[w]here the facts are not in dispute in defamation cases . . . pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech").

---

[5] Gutman was a well-known psychiatrist, prominent in the Orlando medical community, and an expert witness in hundreds of criminal court cases. He was unquestionably a public figure. Even in his self-written obituary Gutman recognizes his public figure status. See Obituary of Gutman, attached hereto as Exhibit A.

[6] Designations of Ms. Gutman's deposition testimony are attached hereto as Exhibit B.

11. The Sentinel's articles were truthful. At the time the articles were published, Gutman and his businesses were among Florida's highest-volume prescribers of highly addictive drugs. Nearly a dozen people died after taking drugs that the Gutman prescribed. After the article was published, additional deaths were discovered. The Sentinel's articles recounting these facts were truthful and, therefore, are not actionable.[7] In her recent deposition, the Movant's affiant, Ms. Gutman, testified that she had no personal knowledge of the underlying facts in this matter. She has no evidence to demonstrate falsity. D. Gutman Depo. at pp. 30-31, ll. 16-4; pp. 33-34, ll. 16-23. She was not involved in patient care. D. Gutman Depo. at pp. 9-10, ll. 24 – 13; pp. 14-15, ll. 8-3; p 34 ll. 9-22.; p. 41-43, ll. 11 -23. She was not involved in the financial management of the business. D. Gutman Depo. at pp. 12-13; ll. 6 – 15. Indeed, the only evidence that Ms. Gutman can provide concerning the underlying facts of this case is her unstinting belief that Gutman was a good man who was not capable of mismanaging his patients. She is without any knowledge relating to any of the statements contended to be false in the defamation action. D. Gutman Depo. at pp. 29 - 43, ll. 18-22.

12. The Sentinel's articles also are privileged, in that the Sentinel's articles track statements in public records, such as autopsy reports, law enforcement investigative files and statements from official sources. Statements that fairly and accurately reflect the content of public records and official sources are privileged and, therefore, are not actionable (regardless of their supposed falsity). Consequently, and because the Sentinel fairly and accurately reported information in public records, Debtors will prevail in this action – and would even if the statements at issue were false (which is denied). Ms. Gutman has no knowledge of any underlying materials reviewed by the reporters and cannot discuss with any certainty what public

---

[7] The Debtors anticipate advancing several substantive summary judgment arguments based on, among other things, the accuracy of the facts published in the articles and/or the "substantial truth" defense applicable to such facts. See, e.g., Smith v. Cuban Am. Nat'l Found., 731 So. 2d 702 (Fla. 3d DCA 1999).

records and official sources were the basis of the reporting.  D. Gutman Depo. at p. 60 - 61, ll. 15- 12;  pp. 62 - 63, ll. 5 – 18.

13.    Movant's claims also will fail because Gutman did not provide pre-suit notice as Florida law requires.  A defamation plaintiff who intends to sue a media defendant in Florida must first serve a written notice of "the specific article or broadcast and the statements therein which he or she alleges to be false and defamatory."  § 770.01, Fla. Stat.  In this case, Gutman served a notice quoting entire passages from the articles at issue, but Gutman never identified specific false and defamatory statements.  The trial court already determined that this notice was defective.[8]  Such notice is a jurisdictional condition precedent to bringing a defamation action against a media entity.  Because Gutman and his businesses failed to provide such notice, Movant's claims are barred by the Florida notice statute.  Any attempt to provide notice at this time would fail, because the applicable statute of limitations expired years ago. Therefore, even if the statements at issue were false, published with actual malice, and not privileged, Movant's claims are barred by Florida's pre-suit notice statute.

14.    Finally, the Sentinel's corrections concerning a different series of stories by other reporters are of no help to Movant.  As noted above, the articles Gutman challenged were truthful.  That statements concerning others that were corrected is irrelevant, except perhaps insofar as the publication of those corrections demonstrates that, when errors occur, the Sentinel corrects them.  The lack of any substantive corrections to the articles in this case, therefore, is evidence of their truth – not falsity.

---

[8] Specifically, the summary judgment motion filed by the Debtors sought to dismiss Count I (Defamation) and Count II (False Light Invasion of Privacy) of the Civil Action on account of insufficient notice pursuant to Fla. Stat. Section 770.  The Debtors' summary judgment motion was granted with respect to Count II of the Action.

## CONCLUSION

15.     For the foregoing reasons, Gutman has failed to demonstrate "cause" for lifting the automatic stay.  The Debtors will clearly suffer prejudice if the Civil Action is permitted to continue in the tort system at this stage of their chapter 11 proceedings, particularly in light of the substantial defense costs that would undoubtedly have to be borne by the Debtors' estates.  Moreover, granting the relief requested in the Motion will, in all likelihood, lead to a flood of similar requests by other prepetition litigation claimants prior to finalization and implementation of the global claims resolution procedures the Debtors and Creditors Committee are currently in the process of formulating.  For these reasons, the Motion should be denied.

Dated:  Wilmington, Delaware
       June 26, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kerriann S. Mills
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

DC1 1452475v.1