IN THE UNITED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 08-13141 (KJC) |
| | ) | |
| TRIBUNE COMPANY, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

AFFIDAVIT OF DONNA GERHART GUTMAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF DECEDENT E. MICHAEL GUTMAN, M.D. IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY WITH RESPECT TO E. MICHAEL GUTMAN, M.D., MIKE GUTMAN, M.D. (MPAC), P.A. AND GUTMAN PAIN/ACCIDENT CENTER, INC.

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) |
| ORANGE COUNTY | ) |

DONNA GERHART GUTMAN, being duly sworn, deposes and states,

1. I am the surviving spouse of E. Michael Gutman, M.D. (the "Decedent"). On May 18, 2009, I was appointed the personal representative of the Decedent by the Honorable Lawrence R. Kirkwood, Circuit Judge in the Circuit Court for Orange County, Florida. I submit this Affidavit in my capacity as personal representative and Plaintiff in the Florida Action (defined below).

2. Prior to the Decedent's death, he served as a physician licensed to practice medicine in Orange County, Florida. Further, Decedent was the director of Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc., a/k/a/ and or d/b/a BACK PAIN INSTITUTE OF ORLANDO, both Florida corporations.

3. I submit this affidavit (the "Affidavit") in support of the Motion (the "Motion") for Relief from Automatic Stay With Respect to Plaintiff Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc. a/k/a and/or d/b/a Back Pain Institute of Orlando (collectively "Gutman"). I am familiar with the contents of the Motion. Except as otherwise indicated, all facts set forth in this Affidavit are based on my personal knowledge and/or information supplied to me by my employees, agents or other professionals. If I were called on to testify, I could and would testify competently to the facts set forth herein.

4. On April 30, 2006, the Second Amended Complaint for relief against Defendants Orlando Sentinel Communications Company, the Tribune Company of Chicago a/k/a Tribune Company, Tribune Publishing Company, Sentinel Communications News Ventures, Inc., Rene Stutzman, individually, and Fred Schulte, individually (the "Florida Defendants") was filed in the Circuit Court of the Ninth Judicial Circuit In and For Orange County Florida (the "Florida Action").

5. The debtors, Tribune Company et al. (the "Debtors"), commenced the above-captioned bankruptcy proceeding on December 22, 2008 (the "Petition Date").

6. The Defendants in the Florida Action, Tribune Company of Chicago a/k/a Tribune Company and Tribune Publishing Company, are both foreign businesses authorized to do business in the State of Florida. The Debtors own and operate Orlando Sentinel Communications Company (the "Sentinel").

7. The Florida Defendants, including the Debtors, published false, misleading and defamatory statements which damaged Decedent's personal and professional reputation, which has significantly affected the profitability of both Mike Gutman, M.D. (MPAC), P.A. and Gutman Pain/Accident Center, Inc., a/k/a/ and or d/b/a BACK PAIN INSTITUTE OF ORLANDO.

8. The Debtors published a series of articles in the Sentinel newspaper claiming that Decedent, along with other doctors, was under investigation for over-prescribing OxyContin, which allegedly lead to the death of several Florida residents.

9. On November 30, 2003, the Sentinel published false statements regarding the Decedent that included the following:

- Many Die as Doctors Exploit Medicaid
- Overprescribing By Small Group Fuels Black Market
- A small group of Florida doctors is drugging the poor at taxpayer's expense.
- The doctors are exploiting the Medicaid system by prescribing hundreds of millions of dollars worth of dangerous drugs that are feeding a booming black market and adding to a torrent of fatal over-doses.
- Even as the state faces a budget crisis in which Medicaid costs figure prominently, abuse of the health-care system for the poor by doctors – and by willing pharmacists and patients – has gone largely unpunished, according to an eight month investigation by South Florida Sun-Sentinel.
- A separate investigation by the Orlando Sentinel found that at least 11 people in Central Florida died in the past three years on prescriptions linked to Orlando psychiatrist and pain specialist E. Michael Gutman.
- Ten of those who died were patients of Dr. E. Michael Gutman and all

3

had taken drugs he prescribed for the treatment of pain or mental disorders, according to medical examiner's reports.

10. As of the Petition Date, trial in the Florida Action was set to go forward on June 1, 2009 in the Circuit Court of the Ninth Judicial Circuit In and for Orange County, Florida. Further, Decedent paid $150,000 of the $278,000 in legal expense arising from the Florida Action. As personal representative of Decedent's estate, I have assumed responsibility for the remainder of Decedent's legal expenses, including the fees associated with this Motion.

11. Aside from the economic harm, Debtors' publication of false, misleading and defamatory statements about the Decedent caused the Decedent to suffer considerable emotional harm that manifested itself in several different ways. In particular, Debtors' actions directly harmed the Decedent's professional reputation, which in turn caused Decedent to experience severe anguish, depression and sadness.

12. Prior to the defamatory articles published by the Debtors, the Decedent was highly regarded in the professional community. Decedent's professional esteem was reflected in the client referrals he received from attorneys and doctors throughout the State of Florida. Decedent previously served as Chair of the Florida Psychiatric Group and was regularly called upon to serve as a forensic expert witness in criminal trials. After Debtors published various articles, Decedent's professional reputation suffered considerable damage.

13. The damage to Decedent's professional reputation was evident in the immediate lack of client referrals Decedent received following Debtors' publication. After Debtors ran their articles about the Decedent, clients immediately began cancelling appointments. Over time,

attorneys who had previously referred clients to the Decedent stopped providing referrals, or calling on Decedent as an expert witness, due to concern that the negative media received by the Decedent might compromise the attorney's case.

14. After Debtors published their articles regarding Decedent, Decedent's patients began advising him that their primary care physicians were encouraging them to change pain specialists. In response to this information, Decedent advised me at various times that he was "ruined," "finished" or "washed up."

15. The anguish and emotional harm sustained by the Decedent due to the Debtors' wrongdoing was so great that Decedent eventually stopped going out for social occasions. Decedent ultimately decided that it was important that he correct the wrong committed by the Debtors. Decedent did this by retaining Florida counsel and commencing the Florida Action.

16. Decedent worked for several years in the preparation and pursuit of the Florida Action. Although the events in the Florida Action made Decedent very distressed, he continually worked with his attorneys to pursue the Florida Action to trial. Decedent viewed the trial scheduled in the Florida Action as an opportunity to redeem his professional reputation.

17. It is not practical, but instead would be highly prejudicial, if the Florida Action were tried in Delaware. The majority of Decedent's witnesses in the Florida Action, including Decedent's family, referral sources, colleagues and co-workers, reside in Florida.

18. The delay in the Florida Action caused by Debtors' commencement of this bankruptcy proceeding caused Decedent considerable anguish. As representative of the Decedent, I request the Court allow the Florida Action to proceed to trial immediately. Doing so will allow

Decedent's family to end an extremely trying ordeal that has lasted for several years and will ultimately cost hundreds of thousands of dollars.

19. Were the Florida Action permitted to proceed to trial, there is a very high likelihood that Decedent's estate will prevail against the Debtors. Debtors made the above statements about the Decedent with knowledge that such statements were false. In February and August of 2004, the Debtors, through the Sentinel, published correction articles wherein they acknowledged they had mischaracterized the abuse and death rate related to OxyContin. However, Debtors never published any corrective statements regarding the Decedent.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: 6-9-09                    *Donna Gerhart Gutman*
                                 Donna Gerhart Gutman

STATE OF FLORIDA            §
                            §
ORANGE COUNTY               §

SUBSCRIBED TO AND SWORN TO BEFORE ME this 9th day of June, 2009.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                 *Marion K. Stehle*
                                 Notary Public

[SEAL]
MARION K. STEHLE
MY COMMISSION # DD 490959
EXPIRES: November 15, 2009
Bonded Thru Notary Public Underwriters

7