IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2005-CA-4071

E. MICHAEL GUTMAN, M.D., MIKE
GUTMAN, M.D.(MPAC), P.A.
and GUTMAN PAIN/ACCIDENT CENTER,
INC., a/k/a and or d/b/a BACK PAIN
INSTITUTE OF ORLANDO,

JURY TRIAL DEMAND

　　　　Plaintiffs,

v.

ORLANDO SENTINEL
COMMUNICATIONS COMPANY,
TRIBUNE COMPANY OF CHICAGO a/k/a
TRIBUNE COMPANY,
TRIBUNE PUBLISHING COMPANY,
SENTINEL COMMUNICATIONS NEWS
VENTURES, INC.,
RENE STUTZMAN, individually, and
FRED SCHULTE, individually,

　　　　Defendants.
_____/

## SECOND AMENDED COMPLAINT

　　　　Plaintiffs, E. MICHAEL GUTMAN, M.D., MIKE GUTMAN, M.D. (MPAC), P.A. and

GUTMAN PAIN/ACCIDENT CENTER, INC. a/k/a and or d/b/a BACK PAIN INSTITUTE OF

ORLANDO, sue Defendants, ORLANDO SENTINEL COMMUNICATIONS COMPANY,

TRIBUNE COMPANY OF CHICAGO a/k/a TRIBUNE COMPANY, TRIBUNE PUBLISHING

COMPANY, SENTINEL COMMUNICATIONS NEWS VENTURES, INC., RENE STUTZMAN,

individually, and FRED SCHULTE, individually, and allege:

## GENERAL ALLEGATIONS

1.　　　This is an action for damages that exceed $15,000.00.

1

2.      At all times material, Plaintiff, E. MICHAEL GUTMAN, M.D. (hereinafter "GUTMAN"), was a licensed physician to practice medicine in the State of Florida residing in Orange County, Florida.

3.      At all times material, Plaintiff, MIKE GUTMAN, M.D. (MPAC), P.A. (hereinafter "Gutman's PA"), was a Florida corporation authorized to do business in the State of Florida, with its principal place of business at 711 West Colonial Drive, Orlando, Orange County, Florida. At all relevant times, Dr. Gutman was the Director of Gutman's PA.

4.      At all times material, Plaintiff, GUTMAN PAIN/ACCIDENT CENTER, INC., a/k/a and or d/b/a BACK PAIN INSTITUTE OF ORLANDO (hereinafter "Dr. Gutman's Pain Center"), was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Orange County, Florida. At all times material, Dr. Gutman was the Director of Dr. Gutman's Pain Center.

5.      At all times material, Defendant, ORLANDO SENTINEL COMMUNICATIONS COMPANY, was a foreign corporation authorized to do business in the State of Florida, with its principal place of business at 633 N. Orange Avenue, Orlando, Orange County, Florida. Defendant owns and operates a daily newspaper of general circulation known as the *Orlando Sentinel*, which is published at 633 N. Orange Avenue, Orlando, Orange County, Florida and circulates through a list of subscribers and by means of direct sales throughout the City of Orlando, Florida, and the United States and by broadcast over the internet throughout the world. The average daily circulation of defendant's newspaper is approximately three hundred and twenty five thousand, nine hundred and nine one (325,991).

2

6. At all times material, Defendant, TRIBUNE COMPANY OF CHICAGO a/k/a TRIBUNE COMPANY, was a foreign corporation authorized to do business in the State of Florida with a principal place of business at 435 N. Michigan Avenue, Chicago, Cook County, Illinois. Defendant owns and operates Orlando Sentinel Communications Company.

7. At all times material, Defendant, TRIBUNE PUBLISHING COMPANY, was a foreign corporation authorized to do business in the State of Florida with a principal place of business at 435 N. Michigan Avenue, Chicago, Cook County, Illinois. Defendant owns and operates Orlando Sentinel Communications Company.

8. At all times material, Defendant, SENTINEL COMMUNICATIONS NEWS VENTURES, INC., was a foreign corporation authorized to do business in the State of Florida, with its principal place of business at 633 N. Orange Avenue, Orlando, Orange County, Florida. Defendant owns and operates Orlando Sentinel Communications Company.

9. At all times material, Defendant, RENE STUTZMAN, was a resident of Orange County, Florida. Ms. Stutzman was employed as a writer for the Orlando Sentinel and authored a certain article described below.

10. At all times material, Defendant, FRED SCHULTE, was a resident of Broward County, Florida. Mr. Schulte was employed as a writer for the Sun-Sentinel and authored a certain article described below.

11. Venue is proper in Orlando, Orange County, Florida.

## FACTUAL BACKGROUND

12. In and around 2003, the *Orlando Sentinel* knew prescription drug abuse was a hot topic and could be used as bait to catch the attention of the public and lead to increased paper sales.

3

As a result, from 2003 through 2004, *Orlando Sentinel* and its sister company, *Sun-Sentinel* of Ft. Lauderdale, published several series of articles on the alleged abuse of oxycodone, the active ingredient in OxyContin and other prescription painkillers. In those articles, the *Orlando Sentinel* portrayed itself to the public as providing reliable investigative news reporting. Instead of providing accurate facts, however, the *Orlando Sentinel* published false, misleading and defamatory statements that hurt a lot of people. In particular, *Orlando Sentinel's* false, misleading and defamatory statements damaged the personal and professional reputation of GUTMAN and his businesses, Gutman's P.A. and Dr. Gutman's Pain Center.

13.    Concerned with increasing its subscription base and its profitability, the *Orlando Sentinel* slanted critical facts and published false data regarding the statistical deaths caused solely by OxyContin without reasonable care whether the defamatory material was true or false.

14.    For an example, in October 2003, the *Orlando Sentinel* published a series of articles featuring David Rokisky, an ex police officer, who had been allegedly made an "accidental addict" of OxyContin by a doctor. The *Orlando Sentinel* characterized Mr. Rokisky as a model citizen and a victim of a doctor. However, the *Orlando Sentinel* failed to report that Mr. Rokisky was previously convicted on drug charges in New Mexico.

15.    Also, in those series of articles, the *Orlando Sentinel* cited Florida Department of Law Enforcement reports that oxycodone caused 573 overdose deaths in 2001 and 2002. In fact, only about one-quarter of those deaths were caused solely by oxycodone.

16.    In the editorial article "Orlando failed pain-drug test," which focused on just how far off the mark the *Orlando Sentinel's* reporting was, author and *Orlando Sentinel's* Public Editor, Manning Pynn, stated, "[w]hen the *Sentinel* devotes space on its front page, along with multiple

4

pages inside, to a single topic for five consecutive days, it makes a profound statement not only about the worth of the subject but also about the newspaper's confidence in the information it is presenting." Furthermore, Pynn concluded his editorial stating there "is no excuse for the *Sentinel's* inaccurate reporting."

17.    The series of articles on David Rokisky created the backdrop for another series of articles that focused on doctors allegedly over-prescribing OxyContin. In particular, on November 30, 2003, the *Orlando Sentinel*, published two news articles titled: 1) MANY DIE WHILE DOCTORS EXPLOIT MEDICAID - OVERPRESCRIBING BY SMALL GROUP FUELS BLACK MARKET (attached as Exhibit "1") and; 2) 11 DIE FROM PILLS LOCAL DOCTOR PRESCRIBED - CENTRAL FLORIDA'S DR. E. MICHAEL GUTMAN IS UNDER INVESTIGATION BY THREE STATE ENTITIES (attached as Exhibit "2"), which contained statements concerning GUTMAN and his businesses, Gutman's P.A. and Dr. Gutman's Pain Center. These articles also were published in simultaneous, subsequent, and continuing internet transmissions.

18.    In and around February 2004, well over a year from the first published article on OxyContin, the *Orlando Sentinel* published a correction article acknowledging the inexcusable flaws in the way it characterized the abuse of OxyContin.

19.    In and around August 2004, the *Orlando Sentinel* published another correction article again acknowledging the inexcusable flaws in the way it characterized the abuse of OxyContin; specifically, the overstatement of death related to OxyContin. However, neither of the *Orlando Sentinel's* correction letters attempted to retract any statements published about GUTMAN, Gutman's P.A. and Dr. Gutman's Pain Center.

20.    All conditions to the filing of this action have occurred or have been waived.

## COUNT I -
### E. MICHAEL GUTMAN, M.D., MIKE GUTMAN, M.D.(MPAC), P.A.
### and GUTMAN PAIN/ACCIDENT CENTER, INC., a/k/a and or d/b/a BACK PAIN INSTITUTE
### OF ORLANDO 'S DEFAMATION CLAIM

Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 20 above.

21.    Up until November 30, 2003, Plaintiffs, GUTMAN, Gutman's PA and Dr. Gutman's

Pain Center, enjoyed an excellent reputation.

22.    On November 30, 2003, the Defendants, without reasonable care whether the

defamatory material was true or false, published in its newspaper, the *Orlando Sentinel*, an article

under the caption "Many Die While Doctors Exploit Medicaid - Overprescribing by Small Group

Fuels Black Market" (attached as Exhibit "1") which reported the following false and defamatory

statements concerning GUTMAN, Gutman's P.A. and Dr. Gutman's Pain Center:

Many Die As Doctors Exploit Medicaid.

Overprescribing By Small Group Fuels Black Market.

A small group of Florida doctors is drugging the poor at tax payer's expense.

The doctors are exploiting the Medicaid system by prescribing hundreds of millions of
dollars worth of dangerous drugs that are feeding a booming black market and adding to a
torrent of fatal over-doses.

Even as the state faces a budget crisis in which Medicaid cost figure prominently, abuse
of the health-care system for the poor by doctors - and by willing pharmacists and patients
- has gone largely unpunished, according to an eight month investigation by South Florida
Sun-Sentinel.

Regulators, for the most part, have failed to curb wild excesses in billing as pain-relief
patches, sleeping pills, tranquilizers and other highly abused drugs have been prescribed
during the past three years, frequently in staggering doses.

"This is crime in plain sight," said David Moye, director of economic crime and health-care fraud for the Florida Attorney General's Office.

A separate investigation by the Orlando Sentinel found that at least 11 people in Central Florida died in the past three years on prescription linked to Orlando psychiatrist and pain specialist E. Michael Gutman.

Nobody keeps track of doctors who are drugging the poor.

This article was republished in simultaneous, subsequent, and continuing internet transmissions.

23.    On November 30, 2003, the defendants, without reasonable care whether the defamatory material was true or false, published in its newspaper, the *Orlando Sentinel*, an article under the caption "11 Die from Pills Local Doctor Prescribed - Central Florida's Dr. E. Michael Gutman Is under Investigation by Three State Entities" (attached as Exhibit "2") which reported the following false and defamatory statements concerning GUTMAN, Gutman's P.A. and Dr. Gutman's Pain Center:

11 Die from Doctor's Prescriptions

Central Florida's Dr. Michael Gutman is under investigation by three state entities.

At least 11 - people - including two young brothers from Winter Springs - overdosed and died from drugs prescribed by one of the most prominent psychiatrists in Central Florida, according to the Orlando Sentinel examination of more than three years of medical records.

Ten of those who died were patients of Dr. E. Michael Gutman and all had taken drugs he had prescribed for the treatment of pain or mental disorders, according to medical examiner's records.

Gutman, a licensed psychiatrist who also operates two Orlando-area pain-management clinics, is under investigation by the Florida Department of Law Enforcement, the Florida Attorney General's Office and the Florida Board of Medicine, which licenses doctors.

However, state records show that a few months after Medicaid fraud investigators with the Attorney General's Office began their inquiry in 2001, Gutman surrendered his Medicaid certificate, meaning he would no longer accept payments from the government

program that provides medical care to the needy.

Indeed, at least eight of the people who died under Gutman's care had a history of drug abuse or addiction, according to police and medical-examiners records.

Among his patients were Brenda Adair and her older son, Jerry, 15. They were being treated by Gutman for a variety of pain and emotional disorders when, on July 5, 2002, Adair's younger son, Terry 10, died after taking several of their pills.

One week later, the older boy overdosed and died from a combination of his own and his mother's medicine.

Pharmacy records show Gutman had prescribed six medicines for the older boy and six for his mother.

The boys' uncle, Stephen Sweat of Oviedo, defends his sister and says Gutman should be held responsible.

"For me, that's the one to blame," he said.

Nine of the 11 overdose deaths linked to Gutman involved pain medicine, including morphine, methadone and oxycodone.

The victims also included people who overdosed on a combination of drugs, including those used to treat mental disorders, such as anti-anxiety drug alprazolam, more commonly known as Xanax.

Diane McIntire, 50, of Orlando, a former hotel maid, died May 24, 2003, of methadone poisoning, according to the Orange-Osceola Medical Examiner's office.

Gutman had McIntire on several medicines and was treating her for a variety of emotional and physical problems. including a degenerative back disorder.

The day before she died, Gutman told her to increase the amount of the methadone she took, from six to nine pills a day, according to McIntire's medical records.

Although McIntire was not a known drug abuser, Gutman had patients who were and some became dependent on the medicine he gave them, according to medical-examiner records.

Manual Angel Ruiz, 45, a baker disabled by a back injury, died Sept. 30, 2001, of an overdose of oxycodone, a pain medicine prescribed by Gutman.

8

According to case notes from the Orange-Osceola County medical examiner, Ruiz had become addicted to pain medication while under Gutman's care, and the doctor had just put him through a detoxification program in a local hospital.

The day Ruiz got out of the hospital, he was given more. He overdosed that night and died.

This article was republished in simultaneous, subsequent, and continuing internet transmissions.

24.    The above referenced defamatory statements constitute defamation *per se* because on their face they ascribe to GUTMAN, Gutman's P.A. and Dr. Gutman's Pain Center illegal conduct, unethical conduct, and conduct and characteristics incompatible with the proper exercise of their lawful business and they were intended to convey such meaning and were so understood by Defendants' readers. The statements alternatively constitute defamation *pro quod* because as explained by additional facts, the statements ascribe to GUTMAN, Gutman's P.A. and Dr. Gutman's Pain Center illegal conduct, unethical conduct and, conduct and characteristics incompatible with the proper exercise of their lawful business, and they were intended to convey such meaning and were so understood by Defendants' readers.

25.    The Defendants published the defamatory statements with knowledge of their falsity or reckless disregard thereof, and with ill will and the intent of injuring Plaintiffs.

26.    A direct and proximate result, of the published defamatory statements plaintiffs' professional and business reputation has been greatly injured. Plaintiffs have lost patients, employment opportunities, and have been deprived of profits that would have otherwise been obtainable.

27.    As a direct and proximate result of the published defamatory statements, Plaintiffs have suffered general damages. GUTMAN personally also has and continues to suffer embarrassment, humiliation, emotional distress, and mental anguish.

9

28.     On January 26, 2005, Plaintiffs served on defendants, Orlando Sentinel Communications Company, Tribune Company of Chicago a/k/a Tribune Company, Tribune Publishing Company, and reporters, Rene Stutzman and Fred Schulte, a written notice pursuant to Section 770.01 of the Florida Statutes, specifying the statements that were false and defamatory and demanding correction and retraction of the above-described articles. However, Defendants have failed and refused to publish a correction and retraction as of the date of the filing of the original complaint.

29.     On May 11, 2005, Plaintiffs filed a complaint against Defendants Orlando Sentinel Communications Company, Tribune Company of Chicago a/k/a Tribune Company, Tribune Publishing Company, and reporters Rene Stutzman and Fred Schulte, individually.

30.     On May 16, 2005, Plaintiffs served Defendant, Sentinel Communications News Ventures, Inc., a written notice pursuant to Section 770.01 of the Florida Statutes, specifying the statements that were false and defamatory and demanding correction and retraction of the above described articles. However, Defendant has failed and refused to publish a correction and retraction as of the date of the filing of this second amended complaint.

31.     On June 6, 2005, Plaintiffs filed an amended complaint against Defendants Orlando Sentinel Communications Company, Tribune Company of Chicago a/k/a Tribune Company, Tribune Publishing Company, Sentinel Communications News Ventures, Inc., and reporters Rene Stutzman and Fred Schulte, individually.

WHEREFORE, Plaintiffs request judgment for general and specific damages according to proof, for cost of suit, and for such other and further relief as may be just, including punitive damages for all statements that constitute defamation per se. Plaintiffs further request leave of court

10

to amend this pleading to add a claim for punitive damages to this prayer for relief.

**COUNT II**
E. MICHAEL GUTMAN, M.D.'S FALSE LIGHT INVASION OF PRIVACY CLAIM

Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 20 above.

32.     Each of the November 30, 2003 newspaper articles attached as Exhibit "1" and
Exhibit "2," as well as the simultaneous, subsequent, and continuing internet transmissions of those
articles, manipulated and juxtaposed statements, captions and quotes such that each article, and both
articles considered together, portrayed GUTMAN in a false light that:

a.     Dr. Gutman is one of the Florida doctors who caused needless deaths by
exploiting Medicaid and overprescribing to the point of fueling a black
market;

b.     Dr. Gutman is drugging the poor and exploiting the Medicaid system;

c.     Dr. Gutman abused the healthcare system for the poor;

d.     Dr. Gutman is  involved in "wild excesses in billing"

e.     Dr. Gutman was dishonest and engaged in illegal activities, including
physically endangering others to succeed in his profession;

f.     Dr. Gutman maliciously exploited Medicaid by over-prescribing
unreasonably dangerous drugs to his patients for money;

g.     Dr. Gutman had a greater incidence of drug overdoses than reasonably
would be expected in the nature of his practice;

h.     Dr. Gutman is a substandard physician that endangers his patients and has
needlessly caused the death of at least 11 patients; and

i.     Dr. Gutman is dishonest, greedy, dangerous and unethical.

33.     The Defendants published the above newspaper articles with knowledge or reckless
disregard of the false light in which GUTMAN was cast and with ill will and the intent to injure
GUTMAN.

11

34.    The aforementioned false light is offensive to a reasonable person.

35.    As a direct and proximate result of the false light in which GUTMAN was portrayed in the above news articles, GUTMAN has suffered damage to his reputation.  Furthermore, as a direct and proximate result of said false light, GUTMAN has lost income, patients, business opportunity, profits, and also has suffered mental and emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, GUTMAN request judgment against Defendants for general and specific damages according to proof, for cost of suit, prejudgment interest, and for such other and further relief as may be just.  GUTMAN further request leave of court to amend this pleading to add a claim for punitive damages to this prayer for relief.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues.

Dated this ___30___ day of April, 2006.

Manuel Socias
Fla. Bar No. 344028
GARY, WILLIAMS,
PARENTI, FINNEY,
LEWIS, McMANUS, WATSON &
SPERANDO, P. L.
111 North Orange Avenue, Suite 775
Orlando, Florida 32801
Ph: (407) 649-7171
Fax: (407) 649-7755
Willie E. Gary
Fla. Bar No. 187843
Charles Emmanuel
Fla. Bar No. 0913391

GARY, WILLIAMS, PARENTI, FINNEY,
LEWIS, McMANUS, WATSON &
SPERANDO, P. L.
221 E. Osceola Street
Stuart, Florida 34994
Ph: (772) 283-8260
Fax: (772) 463-4319
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document has been sent via U.S. First
Class Mail to: **Gregg D. Thomas, James B. Lake,** and **Rachel E. Fugate,** THOMAS & LoCICERO,
100 W. Kennedy Blvd., Suite 500, Tampa, Florida 33602, this _30_ th day of April 2006.

MANUEL SOCIAS

13