# EXHIBIT A

## Agreement

## DOLPHIN STADIUM
## EVENT AGREEMENT

Event: South Florida Parenting Magazine Holiday Show    User: Forum Publishing Group, Inc

Address: c/o South Florida Parenting Magazine; 6501 Nob Hill Road, Tamarac, FL 33321

Contact: Sandy Betlach    Phone No.: 954-747-3056    E-mail Address: sbetlach@sfparenting.com

**THIS EVENT AGREEMENT** ("Agreement") is entered into by and between South Florida Stadium LLC, a Florida limited liability company, d/b/a Dolphin Stadium ("Operator"), and the above-named user ("User"). In consideration of the respective covenants set forth herein, Operator and User agree as follows:

A. **Grant of License.** Subject to the basic terms set forth in paragraph B below and the terms and conditions attached hereto, Operator hereby grants to User the license to use the Premises (as herein defined) located at Dolphins Stadium in Miami-Dade County, Florida (the "Stadium") to conduct the above-referenced event (the "Event").

B. **Basic Terms.** The following basic terms shall apply to this Agreement:

1. Premises (describe): Grand Plaza; Gate G Foyer; Field South Sideline; Gate G E/W Club Level, Batting Cage (Exhibit A Map to be provided)
   100 Level Concourse (weather hold)

2. Term: Load-In Date/ Start Time: December 4, 2008; 9:00 am
   Event Date/Time: December 6-7, 2008; 10:00 am 6:00 pm
   Load-Out Date/End Time: December 7, 2008; 9:00 pm

3. Use Fee (plus applicable sales tax): $22,250.00. In addition to the Use Fee, User shall be responsible for the Event Expenses set forth on Exhibit B

4. Security Deposit: $10,000.00

5. Additional Terms or Fees: Walk-thru with SFP vendors and SFP staff will be conducted on Dec. 1, 2008, time to be mutually agreed upon. Post event walk-thru will be conducted on Dec. 7, 2008 to assess issues or damages incurred during event

6. The parties anticipate that, in connection with the Event, User shall enter a catering agreement with the Stadium's exclusive concessionaire, Boston Culinary Group.

7. User shall be required to purchase or possess comprehensive liability insurance coverage as described in Section 3(d).

C. **Terms and Conditions.** The terms and conditions attached hereto are incorporated by reference herein as if fully set forth herein. User has read and agrees to be bound by the terms and conditions attached hereto.

**IN WITNESS WHEREOF,** User and Operator have executed this Agreement as of the dates set forth below.

| FORUM PUBLISHING GROUP, INC | SOUTH FLORIDA STADIUM CORPORATION |
|---|---|
| c/o South Florida Parenting Magazine | a Florida limited liability company d/b/a |
| 6501 Nob Hill Road, Tamarac, FL 33321 | Dolphins Stadium |
| By: [signature] | By: Pamela Ritchie |
| Name: Ryan L Motley | Name: Pamela L. Ritchie |
| Title: CFO | Title: Sr. Dir, Event Sales & Mktg |
| Date: 10/2/08 | Date: 10.10.08 |

1

## TERMS AND CONDITIONS

1.  **Premises.** Pursuant to the license granted hereunder, User may use only that portion of the Stadium described in Paragraph B.1 above (the "Premises") that is necessary for the presentation of the Event. User's use of the Premises is limited to preparation for and conduct of the Event. User acknowledges that other tenants or users are entitled to use other portions of the Stadium premises during the Term (as herein defined).

2.  **Term.** The term of User's use of the Premises hereunder (the "Term") shall commence and end on the date and at the times set forth in Paragraph B.2 above (the "Start Time" and "End Time", respectively). The Event shall be conducted by User and the Premises shall be open to User's patrons, guests and invitees only on the date and at the times set forth in Paragraph B.2 above (the "Event Date").

3.  **Fees; Deposits.**

    (a) **Use Fee.** As consideration for User's use of the Premises and the reservation of the Premises for User's use, User shall pay to Operator, exclusive of Event Expenses (as herein defined), a non-refundable use fee equal to the sum set forth in Paragraph B.3 above, plus applicable Florida sales/use tax (the "Use Fee"), fifty percent (50%) of which is required upon execution of this Agreement, with the remaining balance being due and payable to Operator in full seven (7) business days prior to the commencement of the Term.

    (b) **Holdover Fee.** In the event User, the User Parties or any property brought onto the Premises by User and/or the User Properties occupies the Premises beyond the expiration of the Term, User shall pay to Operator, in addition to any other amounts payable hereunder, an additional fee (the "Holdover Fee"), which shall be equal to the Use Fee hereunder.

    (c) **Security Deposit.** Upon the execution of this Agreement, User shall pay to Operator, in addition to the Use Fee and any Event Expenses, a security deposit in the amount set forth in Paragraph B.4 above (the "Security Deposit") as security for User's payment and other obligations hereunder. Operator shall deduct from the Security Deposit any amounts payable by User hereunder, including but not limited to any Event Expenses and Restoration Expenses (as herein defined), prior to the return of any Security Deposit balance. No interest shall accrue on the Security Deposit.

    (d) **Insurance.** User, at its sole expense, shall obtain and keep in full force and effect during the Term, the following types and amounts of insurance with an insurance carrier or carriers rated A:X or better, according to A.M. Best Company Rating Guide, duly registered with the Secretary of State and authorized to conduct business in the State of Florida: (i) Commercial general liability insurance (occurrence insurance) including, without limitation, personal injury, property damage and contractual liability (applicable to the indemnity provisions of this Agreement), with minimum limits of one Million Dollars ($1,000,000) each occurrence and Two Million Dollars ($2,000,000) aggregate; (ii) Workers' compensation insurance, including employer's liability, complying with the statutory requirements of the State of Florida; and (iii) Auto liability insurance for any owned, hired and non-owned vehicles with a minimum limit of One Million Dollars ($1,000,000) each accident. User shall cause all insurance policies required hereunder to: (a) name Operator and the other Indemnified Parties as additional insured (except with respect to the Workers' compensation insurance policy); (b) provide that no material change, cancellation or termination of such policies shall be effective until at least thirty (30) days after receipt of written notice thereof by Operator; (c) include a waiver of subrogation rights in favor of Operator and the other Indemnified Parties; (d) be primary to all other coverage Operator and the other Indemnified Parties may have; and (e) not require that Operator or the other Indemnified Parties pay or be liable for any premiums or deductibles with respect to such insurance. At least thirty (30) days prior to commencement

2

of the Term, User shall furnish Operator with a certificate of insurance evidencing the insurance coverage required hereunder.

(e) Indemnification. User shall indemnify and hold harmless Operator, Miami Dolphins, Ltd., a Florida limited partnership, Florida Marlins Baseball Club, L.L.C., a Delaware limited liability company, the University of Miami, the Orange Bowl Committee, Inc. a Florida corporation and each of their respective affiliates, officials, officers, directors, partners, members, managers, shareholders, agents, contractors and employees (collectively, "Indemnified Parties") from and against any and all loss, expense (including reasonable attorneys' fees) or liability of any kind arising from or in any way related to: (a) the use of the Premises or any part thereof hereunder by User or any of such User's patrons, guests, invitees or any person admitted to the Stadium by User or by Operator at User's direction (collectively, "User Parties"), including, without limitation, the presentation of or preparation for the Event; (b) the promotion or advertisement of the Event; or (c) the breach by User of any term, condition, covenant, representation or warranty contained in this Agreement. Notwithstanding the foregoing, User shall have no obligation to indemnify or hold harmless an Indemnified Party from any claim that arises from or relates to the negligence or misconduct of Operator or to the extent that such claim arises from Operator's breach of any representation, warranty or covenant in this Agreement that is applicable to Operator.

4. Operator Approval; Installation; Restoration.

(a) Operator Approval. The conduct of the Event shall be conditioned upon Operator's satisfaction that User has taken all appropriate actions and precautions to guarantee the safety of Event patrons and performers and others attending or involved in the Event.

(b) Installation/Construction. User, at its sole expense, shall provide and, subject to the reasonable safety and other requirements of Operator, install any necessary stages, booths, platforms, tents, tracks, courses or apparatus, and shall provide spectator stands, barriers, fences, cones, medical personnel and other items or personnel necessary to ensure the safety of all persons and property. User assumes sole and complete responsibility for all construction, improvements and/or installation on the Premises in connection with the Event. User shall submit to Operator, for its prior written approval, specific plans detailing the nature of all construction activity, improvements and/or installation on the Premises. User, at its expense, shall ensure that such plans and any consequential construction, improvement or installation shall comply with all applicable federal and local laws, ordinances and regulations. User, at its sole expense, shall secure any and all permits, licenses and approvals necessary for any construction, improvements and/or installation on the Premises hereunder. User shall not commence any construction, improvements or installation on the Premises until it has first presented to Operator evidence that it has obtained all such permits, licenses and approvals. User shall maintain all improvements in good order and repair during the Term. Any and all costs associated with operations, management, preparation of plans, construction, improvement, installation, repair and/or replacement shall be the sole responsibility of User. User shall not permit any lien or encumbrance to be established that affects the Premises and User shall promptly remove any such lien or encumbrance.

5. Event Expenses.

(a) Event Expenses. In addition to the Use Fee, User shall reimburse Operator for all costs actually incurred by Operator or other fees or charges due hereunder for accommodations, Restoration Expenses (as herein defined) or any other services or facilities furnished by Operator to User in connection with the Event, or other costs incurred by Operator on User's behalf hereunder (collectively, "Event Expenses").

(b) <u>Event Staffing</u>. All staffing personnel for the Event shall be provided by Operator. The estimated cost of any such staff provided by Operator ("Event Staffing") shall be an Event Expense and such cost shall be paid by User to Operator in accordance with Section 5(d) below. User acknowledges and agrees that it may not provide or supply security or any other staffing personnel for the Event. Operator has final determination of Event Staffing levels as required to ensure the safety and efficient operation of Premises.

(c) <u>Restoration Expenses</u>. User shall pay to Operator, as part of the Event Expenses, the cost of any repair or restoration of the Stadium or Premises or any equipment or other personal property located in or about the Stadium or Premises necessitated by any damage, loss or theft incident to the use of the Premises by User or the other User Parties (collectively, "Restoration Expenses").

(d) <u>Releases from Performers</u>. User shall cause each Event performer or participant to execute and deliver to Operator a general release in the form attached hereto as <u>Exhibit C</u>. User shall deliver all such executed releases to Operator prior to the conclusion of the Term

(e) <u>Payment</u>. No later than seven (7) business days prior to the commencement of the Term, User shall pay to Operator the estimated Event Expenses as set forth on <u>Exhibit B</u>, as determined by Operator's reasonable estimate of such Event Expenses. Any amount by which the actual Event Expenses exceed the estimated Event Expenses pre-paid by User shall be deducted from the Security Deposit. Any Event Expenses not pre-paid by User or not set off against the Security Deposit by Operator hereunder shall be paid by User, without any set-off, abatement or deduction, within ten (10) business days after presentation of an invoice by Operator.

6. <u>Advertising</u>. User may not use the names, logos or trademarks of the Stadium, Operator or any of the other Indemnified Parties without the prior written approval of Operator. Advertising in or about the Premises by User is prohibited. User shall not display, post or erect any decorations, signs, placards, banners, advertisements or posters in or about the Premises without Operator's consent.

7. <u>Parking and Concessions</u>.

(a) <u>Parking</u>. User shall be afforded a reasonable number of parking spaces as determined by Operator on or about the Stadium premises in areas designated by Operator for parking by the User Parties. In the event that any parking personnel are required, Operator parking personnel are to be used on an exclusive basis. User may not charge persons for parking on the Stadium premises or contract with any third party to provide parking personnel or parking services. Parking fees for event shall not exceed $10.00 per car. All parking fees are retained by Operator.

(b) <u>Concessions</u>. User acknowledges that Operator has granted the exclusive right to operate and conduct the consumable and non-consumable concession operations at the Stadium to Boston Concessions or to successor concessionaires. It is contemplated that User shall enter a separate catering contract with Boston Culinary Group for food and beverage to be served during the Event. Concessionaire will provide a "Kids Meal" during event.

(c) <u>Event Merchandise</u>. South Florida Parenting shall have the exclusive right to sell non-consumable novelty items related to the Event and retain 100% of the proceeds. Operator requests the right to operate two (2) Miami Dolphins Team Retail Trailers in the parking lot and Team Retail Stores on the premises, during the Event Term, selling Miami Dolphins and Dolphin Stadium merchandise. Operator would retain 100% of the revenues from said retail locations.

8. **User's Property; Safety.** No User property or equipment will be permitted onto the Stadium or the Premises without Operator's consent. All property caused or permitted to be placed on the Premises or in the Stadium by User or any of the other User Parties shall be at their sole risk, and Operator shall have no liability arising there from. User and all other User Parties shall abide by all Stadium rules and regulations. Authorized employees, agents and contractors of Operator shall have free access to all parts of the Premises at all times. Operator may order evacuation of the Premises or cause to be removed there from any persons or property as Operator deems necessary to secure the safety and welfare of persons or property.

9. **Compliance with Laws.** User agrees to use and occupy the Premises, and conduct the Event and its activities hereunder, in compliance with all federal, state and local laws, ordinances and regulations, including, but not limited to the obtaining of any necessary permits and compliance with the Americans with Disabilities Act (ADA), and User shall cause all of the other User Parties to comply therewith.

10. **Force Majeure.** If Operator shall be delayed or hindered in or prevented from the performance required hereunder by reason of an Event of force majeure or other cause of similar nature not the fault of Operator, Operator shall be excused from performance for the period of time equivalent to such delay or hindrance in or prevention from performance and shall not be liable to User for any damages, loss or liability caused thereby. User may request the Event to be rescheduled to an acceptable alternate Event Date based on availability of premises.

11. **Conflict with Dolphins or Other Major Events.** User acknowledges that this Agreement shall solely serve as an indication of interest to use the Premises for the Event. However, this Agreement shall not bind Operator or create any right or privilege for User to use the Premises until the date that is ninety (90) days prior to the Event Date set forth in Section B.2. above (the "Effective Date"). Until the Effective Date, Operator may terminate this Agreement, upon return of the Security Deposit and all collected Use Fees to User, or may relocate the Event to a reasonably acceptable alternate Premises, or may offer an alternate Event Date in the event that the Miami Dolphins, the University of Miami, the Florida Marlins or any future tenant, licensee or user of the Stadium has a scheduled game, concert or event that conflicts with the Event Date, the Start Time or End Time.

12. **Default.** If User shall fail to perform or observe any term, covenant, condition or agreement to be performed or observed by User hereunder, Operator may: (a) terminate this Agreement and any or all of User's rights hereunder; (b) retain the Use Fee and Security Deposit as liquidated damages; and/or (c) remove any and all persons or property from the Premises and/or store or dispose of any property of User or the other User Parties on the Premises as a set-off against monies owed by User to Operator hereunder, all at User's expense. Each remedy provided by this Section shall be cumulative to any other rights or remedies.

13. **No Refund upon Termination.** User acknowledges that Operator has reserved the Premises for use by User during the Term and, consequently, Operator is precluded from licensing the Premises to other users or scheduling other events to be held at the Premises during such period, except as described in Section 11 above. Accordingly, the parties acknowledge and agree that, in the event (a) Operator terminates this Agreement pursuant to Section 12 above or (b) User terminates this Agreement or fails or refuses to use, or cancels its use of, or as a result of an Event of Force Majeure is prevented from using, the Premises, then User nevertheless shall be fully liable for, and not entitled to a refund of, the Use Fee, in addition to any Event Expenses payable by User or other costs incurred by Operator in connection with this Agreement.

14. **Assignment.** User shall not assign this Agreement or any right or obligation herein, nor grant any license with respect to the Stadium or any part thereof.

15. <u>Legal Proceedings</u>. The prevailing party in any action arising under this Agreement shall be entitled to recover its reasonable attorneys' fees and expenses, including through all appeals. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Florida. All legal proceedings arising under this Agreement shall be conducted in the courts situated in Broward County, Florida, which courts shall have exclusive venue and jurisdiction.

16. <u>Notices</u>. Any notice required hereunder shall be in writing and given by (a) hand-delivery by messenger or courier service (including overnight mail service), or (b) certified mail (postage prepaid), return receipt requested, addressed as follows: If to Operator, to South Florida Stadium LLC, 2269 N.W. 199th Street, Miami, Florida 33056, Attn: President; and if to User, to the contact person for User set forth on the first page of this Agreement at the address set forth therein. Notice shall be deemed delivered on the date of delivery.

17. <u>Miscellaneous</u>. (a) Waiver of one or more terms or conditions of this Agreement by either party shall not be deemed a modification or waiver of any other provisions of this Agreement. (b) This Agreement may only be altered or amended by an instrument in writing properly executed by both parties. (c) This Agreement embodies the entire agreement of the parties hereto and no representation, inducements or agreements, oral or otherwise, between the parties not contained and embodied herein shall be of any force and effect. (d) The parties acknowledge that Operator makes no representation or warranty regarding the physical condition of the Premises or its fitness for any particular use or purpose. (e) All matters not expressly herein provided for shall be in the discretion of Operator and all rights not expressly granted to User are reserved to Operator. (f) User is not permitted to sell or distribute any merchandise or other items to any User Parties.

Group Name: South Florida Parenting
Group Code: 060046
Event Date: Dec. 4-7, 2008

Exhibit B
Dolphin Stadium
Event Expense Estimate
10/10/08

2/3/2009
P. Ritchie
SFP Client FINAL REVISED Actuals 1.22.09

|  | Notes | Qty | Days | Hours | Total | Price |
|---|---|---|---|---|---|---|
| **A. USE FEE** | | | | | | |
| Location | A | | | | | |
| Use Fee - Event Day | | 1 | 2 | 8 | 2 | $ 20,000 |
| Use Fee - Set-Up Day(s) | B | 1 | 1 | 10 | 1 | 2,250 |
| Use Fee - Breakdown Day(s) | B | - | - | - | - | - |
| Total Use Fee | | - | - | - | - | 22,250 |
| FL State Tax (7%) | | - | - | - | - | 1,558 |
| Total Use Fee + FL State Tax | | - | - | - | - | 23,808 |

Use Fee Rate Card (per day)

| | |
|---|---|
| Gate G Grand Plaza: | $ 2,500 |
| Gate G Foyer: | 750 |
| Gate G 200 Level: | 6,000 |
| Field Sideline: | 7,500 |
| Marlins Batting Cage: | 1,500 |
| TOTAL: | 18,250 |
| SFP Discount (per day): | 8,250 |
| SFP Use Fee (per day): | $10,000 |

|  | Notes | Qty | Days | Hours | Total | Price |
|---|---|---|---|---|---|---|
| **B. EVENT EXPENSES** | | | | | | |
| Event Staffing | | | | | | |
| Housekeeping: Pre-Event Prep | | - | - | - | - | - |
| Housekeeping: Event | | 12 | 2 | 7 | 168 | 2,352 |
| Housekeeping: Post Event | | 10 | 1 | 8 | 80 | 1,120 |
| Facilities: Systems Engineer | | 2 | 2 | 7 | 28 | 980 |
| Facilities: Event Coordinating | | 1 | 4 | 10 | 40 | 1,960 |
| Facilities: Event Set-Up / Breakdown | | 5 | 3 | 8 | 120 | 3,000 |
| Operations: Guest Services | | 14 | 2 | 8 | 224 | 4,256 |
| Operations: Event Receptionist | | 1 | 2 | 8 | 16 | 288 |
| Operations: A/V Engineer | | 1 | 2 | 8 | 16 | 448 |
| Grounds Crew | | 1 | 2 | 9 | 18 | 540 |
| Ticket Office Staff | | 4 | 2 | 6 | 49 | 1,470 |
| **Total Event Staffing** | | | | | | 16,414 |
| | | | | | | |
| Materials | | | | | | |
| Tables 8' | | 100 | - | - | 100 | 1,000 |
| Table Skirting | | 120 | - | - | 120 | 2,400 |
| Chairs - White Oyster | | 300 | - | - | 300 | 375 |
| Risers - 4x4 mobile folding | | 2 | - | - | 2 | 60 |
| **Total Materials** | | - | - | - | - | 3,835 |
| | | | | | | |
| Equipment | | | | | | |
| White Picket Fence (PVC) | | 40 | 1 | - | 40 | 400 |
| Fencing - Temporary (footers) | | 1,000 | 1 | - | 1,000 | 3,500 |
| **Total Equipment** | | | | | | 3,900 |
| | | | | | | |
| Outside Services | | | | | | |
| CSC Event Staff | | 14 | 2 | 8 | 224 | 4,480 |
| CSC Supervisor | | 2 | 2 | 8 | 32 | 800 |
| Overnight Security | | 1 | 1 | 10 | 10 | 250 |
| Utilities | | 1 | 2 | 8 | 16 | 2,400 |
| Jr. Training Camp | C | 1 | 2 | - | 2 | 3,000 |
| MD Inflatables - Labor | D | 3 | 2 | - | 6 | 600 |
| Miami Dade Police | | 4 | 2 | 8 | 64 | 2,880 |
| Miami Dade Fire Rescue | | 2 | 2 | 7 | 28 | 1,260 |
| Trash Removal (All Service) | | 2 | 2 | 1 | 4 | 232 |
| **Total Outside Services** | | | | | | 15,902 |
| | | | | | | |
| Total Reimbursable Expenses | | | | | | 40,051 |
| Total Use Fee and Reimbursable Expenses | | | | | | $ 63,859 |

Notes:

A. Event Locations: Grand Plaza; Gate G Foyer; Field South Sideline; Gate G E/W Club Level, Batting Cage

Number of Guests: 6,000 - 10,000 per day

Event Hours: 11:00 am - 6:00 pm daily

B. Rental rate for set up days

C. Jr. Training Camp event conducted by Miami Dolphins staff

D. Labor to operate Miami Dolphins inflatable equipment. Equipment is being provided by the Miami Dolphins at no charge

## EXHIBIT C

## FORM OF GENERAL RELEASE

I understand and acknowledge that I am signing and delivering this release as a condition to and in consideration of my participation (or the participation of my child(ren)/ward(s) ("Child") named below) in one or more activities (collectively, "Activities") during the event known as "_____" (the "Event") which is being conducted at Dolphins Stadium (the "Location") on the following date(s):_____.

I hereby represent and certify that: (a) I am at least 18 years of age, (b) I am (or Child is) physically fit and of sound mind and body, (c) I have full right and legal authority to execute and deliver this release, for myself and, if signing on behalf of Child, for Child, (d) I know of no health or other reason that would create an unreasonable risk of danger for myself or Child to participate in the Activities, (e) if signing on behalf of Child, I am the true parent, legal guardian or responsible adult for Child and (f) I am (or Child is) not an employee or agent of any of the Released Parties (as herein defined), and therefore I am (or Child is) not covered by any workers' compensation insurance or by any insurance of any type that may have been obtained by any of the Released Parties. I understand and acknowledge that, among other risks, there may be risks of injury to my (or Child's) person, including death, and property while participating in these Activities.

Therefore, for good and valuable consideration, receipt of which I acknowledge, I fully and forever remise, release and discharge South Florida Stadium Corporation, a Florida corporation, d/b/a Dolphins Stadium, Florida Marlins Baseball Club, L.L.C., a Delaware limited liability company, Miami Dolphins, Ltd., a Florida limited partnership, and their respective affiliates, partners, members, shareholders, officers, directors, employees, agents, contractors, successors, and assigns (hereinafter individually and collectively referred to as "Released Parties"), from any and all liability or claims of any nature and of every kind whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including, without limitation, liability from the negligence of any of the Released Parties, that I (or Child) may have now or in the future, or that any person claiming through me (or Child) may have or claim to have now or in the future, including, without limitation, any of my (or Child's) legal representatives, heirs or assigns, in connection with or resulting from participation in any of the Activities, and that I (or Child) agree to fully assume the risk and responsibility for any such liability or claims, and accordingly I (or Child) hereby knowingly, willingly and voluntarily waive any right I (or Child) ever had, now have or hereafter may have to sue any of the Released Parties for any claims arising from or relating to the Activities or my (or Child's) participation therein.

UNDER PENALTIES OF PERJURY, I HEREBY DECLARE THAT I AM 18 YEARS OF AGE OR OLDER. I HAVE CAREFULLY READ THIS INSTRUMENT AND UNDERSTAND ITS TERMS, INCLUDING THE RELEASE OF LIABILITY OF THE PARTIES NAMED HEREIN. I HAVE EXECUTED AND DELIVERED THIS INSTRUMENT VOLUNTARILY, KNOWINGLY AND WILLINGLY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS.

Signed as of the date first written above, by:

Signature: _Robyn Motley_

Name (Print): _Robyn L. Motley_

I hereby consent as Child's true parent or legal guardian for the following named Child to participate in the Activities:

_____