# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: July 16, 2009 at 3:30 p.m. EDT<br>Objection Deadline: July 9, 2009 at 4 p.m. EDT |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 365 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING THE DEBTORS TO ASSUME CERTAIN SYNDICATED PROGRAM AGREEMENTS WITH CBS AND TO COMPROMISE CLAIMS

Debtors Tribune Broadcasting Company, Tribune Broadcast Holdings, Inc., WGN Continental Broadcasting Company, Tribune Television Company, Tribune Television Holdings, Inc., Tribune Television Northwest, Inc., Tribune Television New Orleans, Inc., Channel 39, Inc., Channel 40, Inc., KPLR, Inc., KSWB, Inc., KTLA Inc., KWGN Inc., WPIX, Inc., WTXX

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Inc., and Tower Distribution Company (collectively, the "Tribune Parties") hereby move this Court (the "Motion") for entry of an order, pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the assumption of certain syndicated program agreements entered into by the Tribune Parties and King World Productions, Inc., CBS Studios Inc., and/or CBS Television Distribution, a division of both King World Productions, Inc. and CBS Studios Inc. (collectively, "CBS") and the compromise, waiver, and release of certain claims, as more fully described herein. In further support of the Motion, the Tribune Parties respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner. The Committee has been apprised of the relief requested herein.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 365(a), 363(b), and 105(a) of the Bankruptcy Code and Rules 6006(e)(3) and 9019 of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6. Tribune Company ("Tribune"), a debtor in the above-captioned case, is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business divisions: (i) publishing and (ii) broadcasting and entertainment. Tribune's broadcasting and entertainment division, which includes all of the Tribune Parties, owns and operates 23 network-affiliated television stations, "superstation" WGN America, and Chicago cable news station CLTV, which together reach more than 80% of television households in the United States.

7. CBS is a mass media company with operations in virtually every field of media and entertainment. CBS Television Distribution is a leader in domestic television syndication, currently producing or distributing 11 first-run series. CBS licenses the right to air the programs that it produces and/or distributes, on a first-run basis (i.e., programs originally produced and distributed nationally on an individual market-by-market basis) or off-network basis (i.e., programs originally produced and distributed nationally via a major broadcast network, and "re-run"), by entering into syndicated program agreements with television stations throughout the United States.

8. The Tribune Parties program their television stations and "superstation" WGN America with a variety of local news, sports, and general entertainment programming, much of which is obtained from third-party program suppliers. Most Tribune television stations originate and produce their own local news programs and some local sports programming; other

3

sports programming is licensed directly from professional sports leagues, local franchise team owners, and/or their respective agents or representatives. For example, some Tribune television stations may air a single pre-season National Football League ("NFL") game featuring the local NFL-franchise team, while another Tribune television station in a different market may air dozens of regular-season Major League Baseball ("MLB") games. General entertainment programming comprises the bulk of a television station's daily broadcast schedule, and such programming has two primary sources: (i) network programming that is provided to the station by a broadcast network (e.g., CBS, ABC, NBC, the CW, FOX and MNTV) and generally airs on a uniform schedule on all network-affiliated stations nationwide, and (ii) syndicated programming that is licensed to the station from third-party program suppliers, or "syndicators," for broadcast solely within a local designated market area ("DMA"), during negotiated time periods, or "windows."

9. The Tribune Parties are each parties to various prepetition syndicated program agreements with CBS for general entertainment programming, including television series and feature films. Pursuant to this Motion, the Tribune Parties seek to assume forty-one (41) of these agreements, a list of which is attached hereto as Exhibit A (collectively, the "CBS Agreements").[2] The CBS Agreements allow the Tribune Parties to broadcast specific syndicated

---

[2] Redacted copies of the following CBS Agreements are attached hereto as Exhibit B as representative samples of the CBS Agreements: (i) agreement between WGN Continental Broadcasting Company and King World Productions, Inc. for *Rachel Ray*; (ii) agreement between Tribune Television Company and CBS Studios Inc. for *The Andy Griffith Show*; (iii) agreement between Tribune Television Company and CBS Studios Inc. for multiple series; (iv) agreement between Tribune Television Company and WTXX Inc. and CBS Studios Inc. for *Everybody Hates Chris*; and (v) agreement between Tower Distribution Company and CBS Studios Inc. for Christmas feature films.

The CBS Agreements attached as Exhibit B have been redacted to protect pricing information that the Tribune Parties and CBS consider confidential and commercially or competitively sensitive information. A joint motion to file the unredacted sample CBS Agreements under seal is being filed contemporaneously with this Motion. Unredacted versions of all of the CBS Agreements will be made available to the Office of the United States Trustee, the Committee, and the senior lender steering committee subject to confidentiality constraints, including as described in the joint motion to file under seal.

46429/0001-5776732v1

television programs and feature films provided by CBS, in time periods that allow the corresponding Tribune television station to schedule programming to maximize audience retention from program to program and to otherwise manage their broadcast schedules to greatest advantage. The Tribune Parties have the right to sell and insert commercial advertisements within the licensed programming window and to retain all the proceeds derived therefrom, an important source of revenue to the Tribune Parties.[3]

10. Over the past several months, the Tribune Parties and CBS have engaged in discussions regarding their ongoing business relationship. As a result of these discussions, the Tribune Parties have agreed to assume the CBS Agreements effective upon the Court's authorization of the relief requested herein (the "Assumption Effective Date").[4] In consideration for the Tribune Parties' early assumption of the CBS Agreements, CBS has agreed to waive and release fifty percent (50%) of its prepetition claims against the Tribune Parties owing under the CBS Agreements, which the Tribune Parties would otherwise be required to "cure" as a condition of the assumption of the CBS Agreements. The Tribune Parties and CBS agree that the total prepetition amount owing under the CBS Agreements is $2,380,000.

---

Nothing contained in this Motion is intended to alter any provision of the CBS Agreements. In the event of a discrepancy between the description of such Agreements in this Motion and their actual terms, the terms of such Agreements shall control.

[3] The financial terms of syndicated program agreements, including the CBS Agreements, are generally one of three varieties: programming in exchange for a cash license fee, programming in exchange for a share of the available advertising inventory, or programming in exchange for a cash license fee plus a share of the available advertising inventory. The second variety is known as a "barter" arrangement and the latter as "cash plus barter", where the syndicator and television station licensee each sell, place, and retain all revenues derived from their respective sale of advertising in program episodes.

[4] In the ordinary course of their businesses, certain of the Tribune Parties and CBS are mutually terminating certain prepetition syndicated program agreements and/or entering into postpetition syndicated program agreements for various television programs. These agreements and any claims arising therefrom are not affected by this Motion.

5

46429/0001-5776732v1

**RELIEF REQUESTED**

11.     By this Motion, the Tribune Parties seek entry of an order authorizing and approving the assumption of the CBS Agreements pursuant to section 365(a) of the Bankruptcy Code as of the Assumption Effective Date and fixing the cost to cure defaults under the CBS Agreements at $1,190,000; i.e. one-half of the prepetition amounts owed to CBS under the CBS Agreements (the "Cure Amount"), and approving, pursuant to Bankruptcy Rule 9019, the compromise and settlement of CBS' prepetition claims under the CBS Agreements in the amount of the Cure Amount, with the remainder of such prepetition claims under the CBS Agreements being waived and relinquished. The Tribune Parties also respectfully request that the Court authorize them to seek assumption of the multiple executory contracts that comprise the CBS Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).

**BASIS FOR RELIEF**

**A.      Assumption of the CBS Agreements**

12.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)). A debtor's assumption or rejection of an executory contract is subject to review under the business judgment standard. In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test").

6

13. Under the business judgment test, a debtor is required to proffer a reason as to why, in its business judgment, assumption or rejection of the executory contract or unexpired lease at issue benefits the debtor's estate and then articulate the bases of that determination. See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). Application of the business judgment standard thus dictates "that a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion." See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986); Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching).

14. The Tribune Parties believe, in their business judgment, that the assumption of the CBS Agreements is in the best interests of their estates and creditors. Syndicated program agreements, like the CBS Agreements, are an integral component of the Debtors' broadcast business. Syndicated programming comprises approximately 92 broadcast hours of "general entertainment programming" per week for the average Tribune television station and 125 broadcast hours per week for "superstation" WGN America (which does not broadcast network programming), subject to variation depending on the number of hours of live sporting events broadcast by the stations and WGN America. In addition, the strength and popularity of the Tribune Parties' complement of syndicated programs has a direct impact on viewership, which in turn serves as the basis for setting the rates which can be charged to advertisers. Maintaining the syndicated license rights to the television programs and feature films provided to the Tribune Parties under the CBS Agreements is thus important to the ongoing

business operations of the Tribune Parties. Syndicated programming agreements are typically negotiated and entered into one to three years in advance of the programs' available air dates. As such, suitable substitute programming would not likely be readily available if the Tribune Parties were to lose the benefit of the CBS Agreements.

15. Further, the rates charged by the Tribune Parties for placement of commercial advertising in the syndicated programming are based on the audience ratings achieved. Ratings for a particular program are enhanced by quality adjacent programming; program schedules are meticulously orchestrated to maximize audience retention, yielding greater ratings and increased advertising revenue opportunities. Significant economic benefit thus is conferred upon the Tribune Parties through the advertising revenue generated by quality programming, such as the programming licensed by the CBS Agreements. Conversely, any loss of such programming would interrupt the program schedule and likely negatively impact ratings and revenue to the Tribune Parties. The Tribune Parties therefore respectfully submit that the assumption of the CBS Agreements is supported by sound business judgment and is in the best interests of their estates and creditors.[5]

16. Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations – by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993). As noted, the parties have agreed to a reduced Cure Amount that will alleviate some of the economic burden to the Tribune Parties in assuming the CBS Agreements. Further, the

---

[5] The Tribune Parties are also receiving the economic benefit of the reduced Cure Amount. The reduction of the Cure Amount is not, however, intended to and will not relieve the Tribune Parties and CBS from their respective performance obligations from and after the Assumption Effective Date under any of the assumed CBS Agreements.

8

Debtors have postpetition financing in place and maintain sufficient liquidity for the performance of postpetition contractual obligations. The Tribune Parties respectfully submit that they have met all of the requirements for the assumption of the CBS Agreements.

17.     Finally, the Tribune Parties respectfully request that the Court authorize them to seek assumption of the multiple executory contracts that comprise the CBS Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3). Bankruptcy Rule 6006(e) limits the ability of a debtor to "seek authority to assume or assign multiple executory contracts or unexpired leases in one motion unless (1) all executory contracts or unexpired leases to be assumed or assigned are between the same parties or are to be assigned to the same assignee; (2) the trustee [or debtor in possession] seeks to assume, but not assign to more than one assignee, unexpired leases of real property; or (3) the court otherwise authorizes the motion to be filed." Fed. R. Bankr. P. 6006(e). Forty-one (41) separate agreements will be assumed pursuant to this Motion. Each of the CBS Agreements is between a Tribune Party and King World Productions, Inc., CBS Studios Inc., and/or CBS Television Distribution, and each has as its subject matter the licensing of syndicated television and feature film programming provided by CBS to the Tribune Parties' television stations. Therefore, the Tribune Parties respectfully submit that the interests of judicial economy are best served by seeking the relief requested herein in this one Motion. The Tribune Parties have complied in all respects with the provisions in Rule 6006(f), pertaining to omnibus motions to assume multiple executory contracts.

**B.    Compromise, Waiver, and Release of Claims Pursuant to Bankruptcy Rule 9019**

18.     By this Motion, the Tribune Parties also seek, pursuant to Bankruptcy Rule 9019, the entry of an order authorizing the compromise and settlement of the prepetition claims relating to the CBS Agreements in the amount of the Cure Amount, as a result of which

fifty percent (50%) of CBS' prepetition claims against the Tribune Parties relating to the CBS Agreements shall be waived and released. Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The Third Circuit Court of Appeals has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See Myers v. Martin (In re Martin), 91 F.3d 389, 395 n.2 (3d Cir. 1996) (distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

19. Courts in this district have emphasized that "to minimize litigation and expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'" In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997); see also In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and ... much of litigation in bankruptcy estates results in settlements"). In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d. at 393. In making this determination, a court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense,

10

inconvenience and delay…; and (4) the paramount interest of the creditors." Id. (referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, 222 B.R. at 249 (listing the Anderson factors as controlling whether a settlement should be approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, 211 B.R. at 801.

20. In conjunction with the proposed early assumption of the CBS Agreements, the parties have agreed to a reduced Cure Amount in the amount of $1,190,000 and the waiver by CBS of any other amounts owing under the CBS Agreements. This compromise is the products of arm's-length negotiations between the Tribune Parties and CBS and will result in the savings to the Tribune Parties of $1,190,000. Accordingly, the Tribune Parties believe that this compromise is in the best interests of their estates and creditors.

## NOTICE

21. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing facility; (viii) counsel to CBS; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

22. The Debtors have not previously sought the relief requested herein from this or any other Court.

11

WHEREFORE, the Tribune Parties respectfully request that the Court enter an order, in substantially the form attached hereto as <u>Exhibit C</u>, authorizing and approving the assumption of the CBS Agreements effective as of the date of the entry of the order, authorizing the Cure Amount of $1,190,000 and the waiver and release by CBS of any other amounts owing under the CBS Agreements, and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
      June 26, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP  
James F. Conlan  
Bryan Krakauer  
Janet E. Henderson  
Jillian K. McClelland  
One South Dearborn Street  
Chicago, IL 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, DE 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND  
DEBTORS IN POSSESSION

46429/0001-5776732v1