# **EXHIBIT B**

## *Sample CBS Agreements*

(i) Agreement between WGN Continental Broadcasting Company and King World Productions, Inc. for the broadcast of *Rachel Ray* by station WGN-TV (Chicago);

(ii) Agreement between Tribune Television Company and CBS Studios Inc. (successor in interest to Paramount Pictures Corp.) for the broadcast of *The Andy Griffith Show* by station WPMT (Harrisburg);

(iii) Agreement between Tribune Television Company and CBS Studios Inc. for the broadcast of multiple series by station WXIN (Indianapolis);

(iv) Agreement between Tribune Television Company and WTXX Inc. and CBS Studios Inc. for the broadcast of *Everybody Hates Chris* by stations WTIC and WTXX (Hartford); and

(v) Agreement between Tower Distribution Company and CBS Studios Inc. for the broadcast of Christmas feature films by "superstation" WGN America

KKS-04192/05064/0606
✓

Wendy Logsdon
Group Program Director
Telephone (317) 715-2777
Fax (317) 715-2698


**TRIBUNE**
BROADCASTING

Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278
E-Mail: wlogsdon@tribune.com

October 17, 2008

Jonathan Bingaman
CBS Television Distribution
455 N. Cityfront Plaza
Suite 2910
Chicago, IL  60611

**Subject: Rachael Ray (09/12)**

Dear Jonathan:

This confirms our agreement for RACHAEL RAY as follows:

Stations/Markets:   WGN-TV/Chicago

Market License - may be scheduled on any station owned or programmed by Tribune Broadcasting

Term:   156 Weeks, September 14, 2009 – September 16, 2012 (the 09/10 season will consist of 53 weeks)

Episodes:   260 hour episodes per year (36 weeks of originals per year)

Runs:   Five (5) runs per week mandatory

Time Period:   M-F/9A-12P CT (will not air against Oprah)

Barter Split:   10.5 minutes Station/3.5 minutes CTD per telecast

Barter:   Station will not be responsible for removing or inserting different barter spots than those received from the satellite feed or program tape.

Delivery:   Via satellite at no additional charge (must be closed captioned)

License Fee:   2009/2010 season: ▮▮▮▮▮
2010/2011 season: ▮▮▮▮▮▮▮▮▮▮
2011/2012 season: ▮▮▮▮▮

License fee is payable in thirty-six (36) consecutive monthly installments beginning September 1, 2009.

Exclusivity:   Syndex applies. CTD shall not license the Series in the English language to another free television station whose signal originates within 35 miles of Chicago.

Page 2
10/17/2008

<u>Preemptions:</u>    If the program is preempted, Station will make its best efforts to reschedule the episode and run the program with the barter intact. If this is not possible, Station will spin the barter spots within seven days in another episode.

<u>Other:</u>    The program is licensed to Station for broadcast on its current over the air analog channel, as well as the digital channel allocated by the Federal Communications Commission. A "simulcast" or same-day "multicast" over both channels will be considered only one telecast for contractual purposes (to the extent not prohibited by Guild agreements).

I believe this accurately reflects our agreement for RACHAEL RAY (09/12). Please indicate your acceptance by signing and returning a copy of this letter.

Sincerely,

Wendy Logsdon
Group Program Director

Accepted and Agreed To:

_____
For CBS Television Distribution

# EXHIBIT B

## *Sample CBS Agreements*

(i) Agreement between WGN Continental Broadcasting Company and King World Productions, Inc. for the broadcast of *Rachel Ray* by station WGN-TV (Chicago);

(ii) Agreement between Tribune Television Company and CBS Studios Inc. (successor in interest to Paramount Pictures Corp.) for the broadcast of *The Andy Griffith Show* by station WPMT (Harrisburg);

(iii) Agreement between Tribune Television Company and CBS Studios Inc. for the broadcast of multiple series by station WXIN (Indianapolis);

(iv) Agreement between Tribune Television Company and WTXX Inc. and CBS Studios Inc. for the broadcast of *Everybody Hates Chris* by stations WTIC and WTXX (Hartford); and

(v) Agreement between Tower Distribution Company and CBS Studios Inc. for the broadcast of Christmas feature films by "superstation" WGN America

*KKS-04192/05064/0606*



**BROADCASTING**

Wendy Logsdon
Group Program Director
Telephone (317) 715-2777
Fax (317) 715-2698

Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278
E-Mail: wlogsdon@tribune.com

October 17, 2008

Jonathan Bingaman
CBS Television Distribution
455 N. Cityfront Plaza
Suite 2910
Chicago, IL  60611

**Subject:  Rachael Ray (09/12)**

Dear Jonathan:

This confirms our agreement for RACHAEL RAY as follows:

ING WORK
ONTRACT DE
OCT 2 8 2008
RECEIVE

Stations/Markets:   WGN-TV/Chicago

Market License - may be scheduled on any station owned or programmed by Tribune Broadcasting

Term:   156 Weeks, September 14, 2009 – September 16, 2012 (the 09/10 season will consist of 53 weeks)

Episodes:   260 hour episodes per year (36 weeks of originals per year)

Runs:   Five (5) runs per week mandatory

Time Period:   M-F/9A-12P CT (will not air against Oprah)

Barter Split:   10.5 minutes Station/3.5 minutes CTD per telecast

Barter:   Station will not be responsible for removing or inserting different barter spots than those received from the satellite feed or program tape.

Delivery:   Via satellite at no additional charge (must be closed captioned)

License Fee:   2009/2010 season: ▮▮▮▮▮▮
2010/2011 season: ▮▮▮▮▮▮
2011/2012 season: ▮▮▮▮▮▮

License fee is payable in thirty-six (36) consecutive monthly installments beginning September 1, 2009.

Exclusivity:   Syndex applies.  CTD shall not license the Series in the English language to another free television station whose signal originates within 35 miles of Chicago.

Preemptions:    If the program is preempted, Station will make its best efforts to reschedule the episode and run the program with the barter intact. If this is not possible, Station will spin the barter spots within seven days in another episode.

Other:    The program is licensed to Station for broadcast on its current over the air analog channel, as well as the digital channel allocated by the Federal Communications Commission. A "simulcast" or same-day "multicast" over both channels will be considered only one telecast for contractual purposes (to the extent not prohibited by Guild agreements).

I believe this accurately reflects our agreement for RACHAEL RAY (09/12). Please indicate your acceptance by signing and returning a copy of this letter.

Sincerely,

Wendy Logsdon
Group Program Director

Accepted and Agreed To:

_____

For CBS Television Distribution



**JOSEPH M. DISALVO**
PRESIDENT, DOMESTIC TELEVISION SALES

**CBS TELEVISION DISTRIBUTION**
1700 BROADWAY, 33RD FLOOR
NEW YORK, NY 10019-5905

(212) 541-0267
(212) 975-4144 FAX
joe.disalvo@cbs.com

October 29, 2008

Ms. Wendy Logsdon
Group Program Director
Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN  46278

RE:    <u>"RACHAEL RAY" – 2009/2010 through 2011/2012 Seasons</u>
            WGN-TV, Chicago

Dear Wendy:

This shall confirm the acceptance by CBS Television Distribution, a division of King World Productions, Inc. ("CTD") of WGN Continental Broadcasting's ("Licensee") offer, on behalf of WGN-TV ("Licensed Station"), to license the series "RACHAEL RAY" (the "Series") for the 2009/2010, 2010/2011 and 2011/2012 seasons, in accordance with the terms set forth in your letter to Jonathan Bingaman dated October 17, 2008, with the following clarification(s):

1.      If Licensee acquires a duopoly station or enters into a joint sales agreement, shared services agreement or other FCC-approved form of joint control, with another station(s) in the Chicago market, then Licensee may broadcast the Series on such secondary station(s), provided that Licensee takes no more than one (1) run in the market.

2.    a.    For the 2009/2010 season, the Series shall consist of thirty six (36) weeks of original programs and no more than seventeen (17) weeks of repeat programs.

           b.    For each of the 2010/2011 and 2011/2012 seasons, the Series shall consist of thirty six (36) weeks of original programs and no more than sixteen (16) weeks of repeat programs.

           c.    For the 2009/2010, 2010/2011 and 2011/2012 seasons, each week shall be comprised of five (5) one-hour programs licensed for broadcast on a Monday through Friday basis (the "Program(s)").

3.      The License Term shall be one hundred four (157) weeks, consisting of the fifty-three (53) week period commencing September 14, 2009 (the "2009/2011 Season"), the fifty-two (52) week period commencing September 20, 2010 (the "2010/2011 Season") and the fifty-two (52) week period commencing September 19, 2011 (the "2011/2012 Season").  The 2011/2012 Season shall expire on September 14, 2012.

4.      Broadcast of the Programs shall be regularly scheduled Monday through Friday between 9:00AM – 12:00PM Central Time.

Ms. Wendy Logsdon
WGN-TV
"Rachael Ray" 2009/2010 - 2011/2012 Seasons
October 29, 2008
Page 2

5.  Notwithstanding any provision of this Agreement to the contrary, Licensed Station shall not have the right, at any time, to schedule the Series during any portion of the time period during which the licensee of "The Oprah Winfrey Show" within the Licensed Station's market is then regularly scheduling "The Oprah Winfrey Show;" provided, however, that if the Licensed Station has begun to broadcast the Series in a regularly scheduled time period and, subsequent to the commencement of such broadcasts such licensee of "The Oprah Winfrey Show" changes its regularly scheduled time period of such program so as to overlap with the Licensed Station's regularly scheduled broadcast of the Series, then the Licensed Station shall not be required to change its regularly scheduled time period of the Series.

6.  a.  The License Fee for the 2009/2010 Season shall be ███████per week for a total 2009/2010 Season License Fee equal to█████████.

    b.  The License Fee for the 2010/2011 Season shall be ████per week for a total 2010/2011 Season License Fee equal to██████.

    c.  The License Fee for the 2011/2012 Season shall be ██████per week for a total 2011/2012 Season License Fee equal to███████.

7.  Each Program will be delivered to the Licensed Station formatted for fourteen (14) minutes of commercial time. CTD shall have three and one-half (3½) minutes of commercial time to sell to national advertisers, and Licensee shall have ten and one-half (10½) minutes to sell to advertisers.

8.  CTD will be responsible for the timely delivery of the Series to the Licensed Station. Licensee shall not be required to pay any satellite/tape delivery charges for the Series. CTD shall, in its sole discretion, determine the identity and sequence of the Programs that the Licensed Station shall broadcast.

9.  Licensee shall, by the terms of this Agreement, be entitled to invoke the protection against duplication of programming imported under compulsory copyright license, as provided in Sections 76.101-110 of the FCC's rules, as in effect on the date of this Agreement. Licensee may invoke such protection against programming imported on the analog, as well as any digital, signal of any television station.

10.  CTD shall not license the same Program(s) licensed hereunder in the English language for public exhibition to: (a) any other free over-the air television station whose signal originates within thirty-five (35) miles from the Licensed Station's reference point, as determined pursuant to Rules 76.5(f) and 76.53 of the FCC as of the date hereof (the "specified zone") or (b) any other free over-the-air television station licensed by the FCC to operate in the Licensed Station's designed community or a hyphenated community (as determined pursuant to Rule 76.51 of the FCC as of the date hereof) of which the Licensed Station's designed community is a part.

Ms. Wendy Logsdon
WGN-TV
"Rachael Ray" 2009/2010 - 2011/2012 Seasons
October 29, 2008
Page 3

11.    In the event that a Program(s) of the Series is preempted, the Licensed Station may, in its sole discretion, either (i) make good the preempted Program(s) (with the CTD commercial announcements) during the same broadcast week either within the contracted time period window or during another mutually agreed upon time period, or (ii) telecast CTD commercial announcements from the preempted Program(s) in another Program(s) of the same Series during the same broadcast week.

12.    If CTD ceases distribution of the Series in national free over-the-air syndication for any reason whatsoever, CTD shall have the right to terminate the Agreement upon written notice to Licensee. In the event of such termination, neither Licensee nor CTD shall have any further obligations with regard to the Series after the effective date of such termination, except that Licensee shall pay CTD for Programs delivered through such date.

If the foregoing clarifications do not accurately reflect your agreement with CTD, please notify the undersigned within seven (7) days from the date of this letter.

This letter together with your offer shall constitute a firm and binding agreement between Licensee and CTD with respect to the program licensed hereunder. Thank you for the deal and your continuing support of CTD programming. We wish you much success with the Series.

Sincerely yours,

CBS Television Distribution, a division of
King World Productions, Inc.

Joseph M. DiSalvo
President
Domestic Television Sales

JMD:CJS
WGNrrs.doc

cc:    Patsy Bundy, CBS Television Distribution, New Jersey
        Jonathan Bingaman, CBS Television Distribution, Chicago
        Carol J. Strond, CBS Television Distribution, New York

 

Television Distribution Division

5555 Melrose Avenue
Hollywood CA 90038-3197
323-956-8652
Fax 323-862-3937
kim_fitzgerald@paramount.com

Kimberly J. Fitzgerald
Senior Vice President
Business Affairs & Legal
Domestic Television

December 12, 2005

<u>Via Fax and First Class Mail</u>

Wendy Logsdon
Group Program Director
Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN  46278

RE:      Tribune Offer for **THE ANDY GRIFFITH SHOW** (Agmt #85447)

Dear Ms. Logsdon:

This letter will acknowledge Paramount Pictures Corporation, Domestic Television Division's ("Paramount") acceptance of your offer on behalf of WPMT-TV, a Tribune Broadcasting ("Licensee") station, to license the above-referenced series (the "Series") for broadcast via the television facilities of WPMT-TV ("WPMT" or the "Licensed Station") in Harrisburg-Lancaster-Lebanon-York, Pennsylvania, as set forth in your letter to Mr. Paul Magder dated November 18, 2005 (the "Offer Letter"), with the following clarifications (together with the Offer Letter, the "Agreement"):

1.  This Agreement shall be subject to Paramount's release and continuing distribution of the Series nationwide in syndication and, further, shall be subject to the Paramount/Tribune Standard Terms and Conditions, which are incorporated herein by reference.

2.  With respect to the "Licensee" paragraph of the Offer Letter, Licensee's right to broadcast the episodes (the "Episode(s)") over the facilities of the Licensed Station's duopoly or associated television station pursuant to a local marketing agreement within the Harrisburg-Lancaster-Lebanon-York DMA shall be subject to the following provision:

    "A. During the Term, Licensee shall have the right, to the extent it is lawful to do so and does not violate any rules or regulations of any state or federal agency and, further, does not violate any other agreements to which Paramount is or may become a party to, to broadcast the Episode(s) via the main transmission tower/device of the Licensed Station's duopoly or associated television station; provided, that any such broadcasts shall be made pursuant to Licensee's broadcast rights in and to said Episode(s) licensed for broadcast over the facilities of the Licensed Station pursuant to the Agreement. This provision shall remain in effect only as long as such station is a duopoly or an associated television station of the Licensed Station.



B.  Each broadcast of any of the Episode(s) over the facilities of one or more of the Licensed Station and/or its duopoly and/or associated television station (collectively, the 'Stations') shall be cumulative and shall be counted against the total number of telecasts licensed under the Agreement.  Licensee shall have the sole responsibility of accurately tracking the number of telecasts exhibited collectively by the Stations, and shall report said usage as provided for in the Agreement.  Licensee shall be liable for any and all costs or damages arising from any additional telecasts taken in excess of the number of telecasts licensed under the Agreement.

C.  Licensee shall indemnify and hold Paramount forever harmless from and against any and all claims, damages, liabilities, losses, costs, and expenses, including reasonable attorney's fees, arising from the broadcast of any materials in connection with the Episode over the facilities of a duopoly or an associated television station hereunder. other than the content of the Episode as delivered by Paramount.

D.  Licensee specifically agrees that any such duopoly and/or associated television station shall abide by all of the terms and conditions specified in the Agreement.  By broadcasting the Episode, each such duopoly and/or associated television station shall be deemed to have accepted the terms and conditions set forth in the Agreement.

E.  Licensee acknowledges that transmission of the Episode via the facilities of a duopoly and/or an associated television station shall not be a violation of the exclusivity provisions of the Agreement.

F.  It is acknowledged and agreed that this provision is non-precedential and shall not be cited as precedential or binding by either party in any subsequent negotiations."

In the event the signal emanating from the Licensed Station's duopoly or associated television station originates in a separate market having its own Designated Market Area (DMA) as defined by Nielsen Media Research, Paramount shall have the right at any time, but not the obligation, to rescind Licensee's right to broadcast via such duopoly and/or associated television station.

By virtue of granting Licensee this right to broadcast via such duopoly and/or associated television station, such right does not transfer to a third party, or alleviate, any of the obligations of the Licensee and the Licensed Station.  Further, in no event shall such duopoly and/or associated television station be deemed to be the Licensed Station under the Agreement.

3.  The "License Fee" paragraph of the Offer Letter shall be modified by inserting in the place and stead of "September 2006" the following: "September 1, 2006."

4.  The first sentence of the "Delivery" paragraph of the Offer Letter is not a term of the Agreement and shall be deemed deleted hereby.  Beta SP videotapes may be booked by the Licensed Station at no charge and dubbed to the Licensed Station's tape.

5.  The third and fourth sentences of the "Delivery" paragraph of the Offer Letter are not terms of the Agreement and shall be deemed deleted hereby.  Paramount shall use its best efforts to deliver the Episodes with closed captioning.

6.  The "Exclusivity" paragraph of the Offer Letter is not a term of the Agreement and shall be deemed deleted hereby.  The following shall be inserted in lieu thereof:  "The Episodes shall not be licensed in English to any other free over-the-air broadcast television station located within the Harrisburg DMA during the License Term.  All other rights are expressly reserved by Paramount, including the right to license the Series to national basic cable television services and superstations."

7.  The "Renewal" paragraph is not a term of the Agreement and shall be deemed deleted hereby.

 

8.  With respect to the "Other" paragraph of the Offer Letter, the Licensed Station may broadcast the Episodes via its analog channel or primary digital channel or may simulcast or same-day multicast the Episodes via its analog channel and primary digital channel. Each analog or digital broadcast shall count towards the total number of exhibitions licensed under this Agreement provided, however, a "simulcast" or same-day "multicast" of an Episode over the Licensed Station's analog channel and primary digital channel shall count as one (1) exhibition to the extent permitted by the applicable Guild agreements. In the event that a "simulcast" or same-day "multicast" of an Episode(s) by Licensee obligates Paramount to pay additional residuals, Licensee shall pay, promptly upon receipt of invoice, its proportionate share of such residuals. Paramount shall have the right to revoke the digital broadcast rights granted to Licensee in this provision at its sole discretion.

9.  If Paramount does not or ceases to distribute the Series in syndication at any time for any reason whatsoever, Paramount shall have the right to terminate the Agreement upon written notice to Licensee. In the event of such termination, neither Licensee nor Paramount shall have any further obligations with regard to the Series from the date such termination becomes effective.

10. Licensee acknowledges that the licensing of the Series specified in this Agreement has been separately negotiated and severally agreed upon; that the price set forth herein represents fair value for the Series; and that Paramount did not directly or indirectly condition the granting of the license of the Series upon Licensee agreeing to license any other series or feature package(s).

11. This letter, together with your offer as set forth in the Offer Letter, shall constitute a firm and binding agreement. For your immediate reference, enclosed please find copies of the Offer Letter and Standard Terms and Conditions.

If the foregoing clarifications do not accurately reflect your understanding of the agreements with Paramount, please notify the undersigned within fifteen (15) days from the date of this letter.

Very truly yours,

Kimberly J. Fitzgerald

Enclosures

cc:     Paul Magder
        Suzanne Lee (via Fax)

NOV-18-2005 FRI 11:37 AM     FAX NO.     P. 02

Wendy Logsdon
Group Program Director
Tribune Television
317/715-2777


**TRIBUNE**
BROADCASTING

6910 Network Place
Indianapolis, Indiana 46278
fax: 317/715-2698
wlogsdon@tribune.com

November 18, 2005

Paul Magder
Paramount Domestic Television
455 N. Cityfront Plaza
Suite 3030
Chicago, IL 60611

**Subject: ANDY GRIFFITH**

Dear Paul:

This confirms our revised (confirmed start date) agreement for ANDY GRIFFITH as follows:

| | |
|---|---|
| Licensee: | This agreement will cover WPMT-TV or any other television station in the Harrisburg-Lancaster-Lebanon-York market for which Tribune Television Company or Tribune Broadcasting Company has the right to acquire programming or consult on programming acquisitions. Any station other than WPMT-TV to which the programs are made available will be governed by all terms and conditions of the agreement for WPMT-TV, and any runs taken by the other station will count against the runs permitted under this agreement. |
| Term: | 1/16/06– 12/31/09 |
| Episodes: | 249 half-hour episodes |
| Runs: | 1040 aggregate plays, not to exceed 5 plays per episode |
| License Fee: | ▉ per run (▉ total). License fee is payable in 24 consecutive monthly installments commencing in September 2006. |
| Delivery: | Via satellite or BetaSP at no additional charge to station.   Station agrees to pay shipping both ways. |
| | Paramount will supply each episode closed captioned for the hearing impaired for the entire term of the contract.  All cost and fees associated with the captioning of such episodes will be the sole responsibility of Paramount. |
| Exclusivity: | The program will not be licensed in any language to any other television station in the Harrisburg-Lancaster-Lebanon-York market during this license term. |
| Renewal: | WPMT-TV will have first right of refusal for additional terms. |
| Other: | The program is licensed to WPMT-TV for broadcast on its current over the air analog channel, as well as the digital channel allocated by the Federal Communications Commission.  A "simulcast" or same-day "multicast" over both channels will be considered only one telecast for contractual purposes (to the extent not prohibited by Guild agreements). |

I believe this accurately reflects our agreement for ANDY GRIFFITH. Please indicate your acceptance by signing and returning a copy of this letter.

Sincerely,

*Wendy Logsdon*

Wendy Logsdon
Group Program Director

Accepted and Agreed To:

_____
Paramount Domestic Television



**KIMBERLY J. FITZGERALD**
SENIOR VICE PRESIDENT
BUSINESS AFFAIRS AND LEGAL

**CBS TELEVISION DISTRIBUTION**
2401 COLORADO AVENUE, SUITE 110
SANTA MONICA, CA 90404-3585

(310) 264-3495
(310) 264-3517 FAX
kim.fitzgerald@cbs.com

January 14, 2009

Via Fax and First Class Mail

Ms. Wendy Logsdon
Group Program Director
Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278

> RE:    Tribune Offer for BEVERLY HILLBILLIES (Agmt #102281); THE BRADY BUNCH (Agmt #102282); FAMILY AFFAIR (Agmt #102283); FAMILY TIES (Agmt #102284); THE LUCY SHOW (Agmt #102285); and PETTICOAT JUNCTION (Agmt #102286)

Dear Ms. Logsdon:

This letter will acknowledge the acceptance of CBS Television Distribution, a division of CBS Studios Inc. ("CTD"), of your offer on behalf of WXIN-TV, a Tribune Broadcasting ("Licensee") station, to license each of the above-referenced series (individually and collectively, the "Series") for broadcast via the television facilities of WXIN-TV, Channel 59, ("WXIN" or the "Licensed Station") in Indianapolis DMA, as set forth in your letter to Mr. Jonathan Bingaman dated November 25, 2008 (the "Offer Letter"), with the following clarifications (together with the Offer Letter, the "Agreement"):

1.    The Agreement shall be subject to CTD's release and continuing distribution of the Series nationwide in syndication and, further, shall be subject to all provisions contained in mutually agreeable standard terms and conditions pursuant to good faith negotiations (the "CTD/Tribune Standard Terms and Conditions"), which, when finalized, shall be deemed are incorporated herein by this reference. Further, the Agreement shall incorporate additional terms and conditions that are customary in the industry in agreements of this type until such time as CTD and Licensee mutually agree upon the CTD/Tribune Standard Terms and Conditions.

2.    With respect to the "Stations/Markets" paragraph of the Offer Letter, Licensee's right to broadcast the episodes (the "Episode(s)") over the facilities of the Licensed Station's co-own television station WTTV-TV Channel 4 ("WTTV") within the Indianapolis DMA shall be subject to the following:

> A.    Licensee shall have the right, to the extent it is lawful to do so and does not violate any rules or regulations of any state or federal agency and, further, does not violate any other agreements to which CTD is or may become a party to, to broadcast the Episode(s) via the main transmission tower/device of WTTV; provided, that any such broadcasts shall be made pursuant to Licensee's broadcast rights in and to said Episode(s) licensed for broadcast over the facilities of the Licensed Station pursuant to the Agreement. This provision shall remain in effect only as long as WTTV is a co-owned television station of the Licensed Station.

B.    Each broadcast of any of the Episode(s) over the facilities of either WTTV or the Licensed Station (together, the "Stations") shall be cumulative and shall be counted against the total number of telecasts licensed under the Agreement. Licensee shall be responsible for accurately tracking the number of telecasts exhibited collectively by the Stations, and shall report any overage of usage as provided for in the Agreement. Licensee shall be liable for any and all costs or damages arising from any additional telecasts taken in excess of the number of telecasts licensed under the Agreement.

C.    Licensee specifically agrees that WTTV shall abide by all of the terms and conditions specified in the Agreement. By broadcasting the Episode(s), WTTV shall be deemed to have accepted the terms and conditions set forth in the Agreement.

D.    Licensee shall indemnify and hold CTD forever harmless from and against any and all claims, damages, liabilities, losses, costs, and expenses, including reasonable attorney's fees, arising from the broadcast of any materials in connection with the Episode(s) over the facilities of WTTV, other than the content of the Episode(s) themselves.

E.    Licensee acknowledges that transmission of the Episode(s) via the facilities of WTTV shall not be a violation of the exclusivity provision of the Agreement.

It is acknowledged and agreed that this provision is non-precedential and shall not be cited as precedential or binding by either party in any subsequent negotiations.

In the event the signal emanating from WTTV originates in a separate market having its own Designated Market Area (DMA) as defined by Nielsen Media Research, CTD shall have the right at any time, but not the obligation, to rescind Licensee's right to broadcast via WTTV.

By virtue of granting Licensee this right to broadcast via WTTV, such right does not transfer to a third party, or alleviate, any of the obligations of the Licensee and the Licensed Station. Further, in no event shall WTTV be deemed to be the Licensed Station by virtue of this grant.

3.    The "Exclusivity" paragraph of the Offer Letter is not a term of the Agreement and shall be deemed deleted hereby. Rather, the Episode(s) shall not be licensed in English to another free over-the-air broadcast television station located within 35 miles of the Licensed Station's reference point, as determined pursuant to Rules 76.5(f) and 76.53 of the FCC as of the date hereof. CTD reserves the right to license the Series to national basic cable television services and superstations. In addition, Licensee acknowledges that the broadcasts of the Episode(s) originating outside of its exclusive territory may be received by television sets and/or receivers located within such exclusive territory and agrees that such reception shall not constitute a breach of the Agreement by CTD. Licensee agrees that no exclusivity is granted hereunder with respect to the retransmission by cable or satellite systems of distant broadcast signals originating outside of the Licensed Station's area of exclusivity (as described hereinabove) whether pursuant to a compulsory license or otherwise.

4.    With respect to the "Other Terms" paragraph of the Offer Letter, the Licensed Station shall broadcast the Episode(s) via its analog channel or may simulcast the Episode(s) via its analog channel and primary digital channel; provided, however, a "simulcast" of an Episode(s) over the Licensed Station's analog channel and primary digital channel shall count as one (1) exhibition to the extent permitted by the applicable Guild agreements. In the event that a "simulcast" of an Episode(s) by Licensee obligates CTD to pay additional residuals, Licensee shall pay, promptly upon receipt of invoice, its proportionate share of such residuals. The Licensed Station shall not "multi-cast" the Episode(s). CTD shall have the right to revoke the digital broadcast rights granted to Licensee in this provision at its sole discretion.

5.    If CTD ceases distribution of the Series in syndication for any reason whatsoever, CTD shall have the right to terminate the Agreement upon written notice to Licensee. In the event of such termination, neither Licensee nor CTD shall have any further obligations with regard to the Series after the effective date of such termination, except that Licensee shall pay CTD for Episode(s) delivered through such date.

6.    Licensee acknowledges that the licensing of the Series specified in this Agreement has been separately negotiated and severally agreed upon; that the price set forth herein represents fair value for the Series; and that CTD did not directly or indirectly condition the granting of the license of the Series upon Licensee agreeing to license any other series or other programming.

7.    This letter, together with your offer as set forth in the Offer Letter, shall constitute a firm and binding agreement. For your immediate reference, enclosed please find a copy of the Offer Letter.

If the foregoing clarifications do not accurately reflect your understanding of the agreements with CTD, please notify the undersigned within fifteen (15) days from the date of this letter.

Sincerely,

Kimberly J. Fitzgerald

cc:    J. Bingaman



Wendy Logsdon
Group Program Director
Telephone (317) 715-2777
Fax (317) 715-2698



**TRIBUNE**
BROADCASTING

Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278
E-Mail: wlogsdon@tribune.com

November 25, 2008

Jonathan Bingaman
CBS Television Distribution
455 N. Cityfront Plaza
Suite 2910
Chicago, IL 60611

Subject: **Christmas-Themed Sitcoms**

Dear Jonathan:

This confirms our agreement for CHRISTMAS-THEMED SITCOMS as follows:

| | |
|---|---|
| Stations/Markets: | WXIN-WTTV/Indianapolis |
| Term: | 12/20/08-12/25/08 |
| Episodes: | Beverly Hillbillies #13 – "Home for Christmas"<br>Beverly Hillbillies #50– "Christmas at the Clampetts"<br>Beverly Hillbillies #6615 – "The Christmas Present"<br>Beverly Hillbillies #6814 – "Christmas in Hooterville"<br>Petticoat Junction #6614 – "The Santa Clause Special"<br>Lucy Show #13 – "Together for Christmas"<br>Lucy Show #100 – "Lucy, the Choirmaster"<br>Family Affair #87 – "Christmas Came a Little Early"<br>Brady Bunch #15 – "The Voice of Christmas"<br>Family Ties #14 – "A Christmas Story"<br>Family Ties #37 – "A Keaton Christmas Carol"<br>Family Ties #141 – "Miracle in Columbus" |
| Runs: | 2 Runs per episode (24 total runs) |
| License Fee: | ▬▬▬▬▬▬▬▬ License fee is payable in 1 installment due December 1, 2008 |
| Delivery: | Book and dub. Station to pay shipping both ways. No booking fee. |
| Exclusivity: | The program will not be licensed in any language to any other television station in the Indianapolis market during this license term. |
| Other: | The program is licensed to WXIN-WTTV for broadcast on its current over the air analog channel, as well as the digital channel allocated by the Federal Communications Commission. A "simulcast" or same-day "multicast" over both channels will be considered only one telecast for contractual purposes (to the extent not prohibited by Guild agreements). |

I believe this accurately reflects our agreement for CHRISTMAS-THEMED SITCOMS. Please indicate your acceptance by signing and returning a copy of this letter.

Sincerely,

*Wendy Logsdon*

Wendy Logsdon
Group Program Director

Accepted and Agreed To:

_____
CBS Television Distribution

 

**KIMBERLY J. FITZGERALD**
SENIOR VICE PRESIDENT
BUSINESS AFFAIRS AND LEGAL

**CBS TELEVISION DISTRIBUTION**
2401 COLORADO AVENUE, SUITE 110
SANTA MONICA, CA 90404-3585

(310) 264-3495
(310) 264-3517 FAX
kim.fitzgerald@cbs.com

October 27, 2008

<u>Via Fax and First Class Mail</u>

Ms. Wendy Logsdon
Group Program Director
Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278

    RE:    Tribune Offer for **EVERYBODY HATES CHRIS** (Agmt #101759)

Dear Ms. Logsdon:

This letter will acknowledge the acceptance of CBS Television Distribution, a division of CBS Studios Inc. ("CTD"), of your offer on behalf of WTIC-TV, a Tribune Broadcasting ("Licensee") station, to license the above-referenced series (the "Series") for broadcast via the television facilities of WTIC-TV Channel 61 ("WTIC" or the "Licensed Station") in the Hartford and New Haven DMA, as set forth in your letter to Mr. Paul Magder dated March 17, 2008 (the "Offer Letter"), with the following clarifications (together with the Offer Letter, the "Agreement"):

1.    The Agreement shall be subject to CTD's release and continuing distribution of the Series nationwide in syndication and, further, shall be subject to all provisions contained in mutually agreeable standard terms and conditions pursuant to good faith negotiations (the "CTD/Tribune Standard Terms and Conditions"), which, when finalized, shall be deemed are incorporated herein by this reference. Further, the Agreement shall incorporate additional terms and conditions that are customary in the industry in agreements of this type until such time as CTD and Licensee mutually agree upon the CTD/Tribune Standard Terms and Conditions.

2.    With respect to the "Station/Market" paragraph of the Offer Letter, Licensee's right to broadcast the programs (the "Program(s)") over the facilities of the Licensed Station's co-owned television station WTXX-TV Channel 20 ("WTXX") within the Hartford and New Haven DMA shall be subject to the following:

    A.    Licensee shall have the right, to the extent it is lawful to do so and does not violate any rules or regulations of any state or federal agency and, further, does not violate any other agreements to which CTD is or may become a party to, to broadcast the Programs via the main transmission tower/device of WTXX; provided, that any such broadcasts shall be made pursuant to Licensee's broadcast rights in and to said Programs licensed for broadcast over the facilities of the Licensed Station pursuant to the Agreement. This provision shall remain in effect only as long as WTXX is a co-owned television station of the Licensed Station.

B.    Each broadcast of any of the Programs over the facilities of either WTXX or the Licensed Station (together, the "Stations") shall be cumulative and shall be counted against the total number of telecasts licensed under the Agreement. Licensee shall have the sole responsibility of accurately tracking the number of telecasts exhibited collectively by the Stations, and shall report said usage as provided for in the Agreement. Licensee shall be liable for any and all costs or damages arising from any additional telecasts taken in excess of the number of telecasts licensed under the Agreement.

C.    Licensee specifically agrees that WTXX shall abide by all of the terms and conditions specified in the Agreement. By broadcasting the Program, WTXX shall be deemed to have accepted the terms and conditions set forth in the Agreement.

D.    Licensee shall indemnify and hold CTD forever harmless from and against any and all claims, damages, liabilities, losses, costs, and expenses, including reasonable attorney's fees, arising from the broadcast of any materials in connection with the Program over the facilities of WTXX, other than the content of the Program themselves.

E.    Licensee acknowledges that transmission of the Programs via the facilities of WTXX shall not be a violation of the exclusivity provision of the Agreement.

It is acknowledged and agreed that this provision is non-precedential and shall not be cited as precedential or binding by either party in any subsequent negotiations.

In the event the signal emanating from WTXX originates in a separate market having its own Designated Market Area (DMA) as defined by Nielsen Media Research, CTD shall have the right at any time, but not the obligation, to rescind Licensee's right to broadcast via WTXX.

By virtue of granting Licensee this right to broadcast via WTXX, such right does not transfer to a third party, or alleviate, any of the obligations of the Licensee and the Licensed Station. Further, in no event shall WTXX be deemed to be the Licensed Station by virtue of this grant.

3.    The "Runs" paragraph of the Offer Letter shall be modified in its entirety by inserting in the place and stead the following: "Five (5) mandatory telecasts per week and five (5) optional telecasts per week (Monday through Friday), plus two (2) optional telecasts during the weekend (Saturday or Sunday)."

4.    The "Time Periods" paragraph of the Offer Letter shall be modified in its entirety by inserting in its place and stead the following: "All telecasts shall be broadcast between 6:00 AM and 6:00 AM, inclusive. Notwithstanding the foregoing, however, no broadcast by Licensee shall be scheduled opposite the network broadcast, if any, of the Series during the License Term. License may not change the regularly schedule broadcast time of the Series outside of the parameters set forth in this Agreement without the prior written consent of CTD."

5.    The second sentence of the "Barter" paragraph of the Offer Letter is not a part of the Agreement and shall be deemed deleted hereby.

6.    The "Delivery" paragraph of the Offer Letter is not a term of the Agreement and shall be deemed deleted hereby. Rather, CTD shall be responsible for the timely delivery of the Series. CTD, in its sole discretion, will determine the identity and sequence of episodes and commercial placement. Licensee shall not be required to pay a fee in consideration of such regular delivery service. Further, CTD certifies that the Series (excluding the commercial time retained by CTD) will be delivered to Licensee with closed captions that comply with the rules of the Federal Communications Commission.

7.    The "Exclusivity" paragraph of the Offer Letter is not a term of the Agreement and shall be deemed deleted hereby. Rather, the Programs shall not be licensed in English to another free over-the-air broadcast television station located within 35 miles of the Licensed Station's reference point, as determined pursuant to Rules 76.5(f) and 76.53 of the FCC as of the date hereof. CTD reserves the right to license the Series to national basic cable television services and superstations. In addition, Licensee acknowledges that the broadcasts of the Programs originating outside of its exclusive territory may be received by television sets and/or receivers located within such exclusive territory and agrees that such reception shall not constitute a breach of the Agreement by CTD. Licensee agrees that no exclusivity is granted hereunder with respect to the retransmission by cable or satellite systems of distant broadcast signals originating outside of the Licensed Station's area of exclusivity (as described hereinabove) whether pursuant to a compulsory license or otherwise. Further, Licensee shall, by the terms of this Agreement, be entitled to invoke the protection against duplication of programming on the analog, as well as any digital, signal of any television station that is imported under Compulsory Copyright License, as provided in Sections 76.101-110 of the FCC's rules, as in effect on the date of this Agreement, provided that Licensee shall not have the right to invoke such protection against Superstation WGN.

8.    With respect to the "Other Terms" paragraph of the Offer Letter, the Licensed Station shall broadcast the Programs via its primary channel or may simulcast the Programs via such digital channel and its other digital channel(s); provided, however, that a "simulcast" of a Program over the Licensed Station's primary channel and such other digital channel(s) shall count as one (1) exhibition to the extent permitted by the applicable Guild agreements. In the event that a "simulcast" of a Program(s) by Licensee obligates CTD to pay additional residuals, Licensee shall pay, promptly upon receipt of invoice, its proportionate share of such residuals. The Licensed Station shall not "multi-cast" the Program(s). CTD shall have the right to revoke such digital broadcast rights granted to Licensee in this provision at its sole discretion.

9.    If CTD ceases distribution of the Series in syndication for any reason whatsoever, CTD shall have the right to terminate the Agreement upon written notice to Licensee. In the event of such termination, neither Licensee nor CTD shall have any further obligations with regard to the Series after the effective date of such termination, except that Licensee shall pay CTD for Programs delivered through such date.

10.   Licensee acknowledges that the licensing of the Series specified in this Agreement has been separately negotiated and severally agreed upon; that the price set forth herein represents fair value for the Series; and that CTD did not directly or indirectly condition the granting of the license of the Series upon Licensee agreeing to license any other series or other programming.

11.   This letter, together with your offer as set forth in the Offer Letter, shall constitute a firm and binding agreement. For your immediate reference, enclosed please find a copy of the Offer Letter.

If the foregoing clarifications do not accurately reflect your understanding of the agreements with CTD, please notify the undersigned within fifteen (15) days from the date of this letter.

Sincerely,

Kimberly J. Fitzgerald

cc:    P. Magder



Wendy Logsdon
Group Program Director
Telephone (317) 715-2777
Fax (317) 715-2698

# TRIBUNE
## BROADCASTING

Tribune Broadcasting Company
6910 Network Place
Indianapolis, IN 46278
E-Mail: wlogsdon@tribune.com

March 17, 2008

Paul Magder
CBS Television Distribution
455 N. Cityfront Plaza
Suite 2910
Chicago, IL 60611

Dear Paul:

This confirms our agreement for **EVERYBODY HATES CHRIS** as follows:

**Station/Market:** WTIC-TV and WTXX-TV/Hartford-New Haven

**Term:** 156 Weeks, 9/21/09-9/16/12

**Runs:** Five (5) hours per week mandatory. Station will have the option to run an additional five (5) episodes on a strip basis and/or the option to run two (2) additional weekend telecasts.

**Time Period:** ROS (will not air opposite the network broadcast)

**Barter:** 5 minutes local/2 minutes national per telecast. Station will not be responsible for removing or inserting different barter spots than those received from the satellite feed.

**Delivery:** Via satellite (or other timely means) at no additional charge (must be closed captioned)

**Exclusivity:** Syndex applies. The program will not be licensed to any other television station, basic or pay television service serving viewers in the Hartford-New Haven market (including cable television, DBS, MMDS, SMATV and open video services) during this license term. Distributor will not license the program in any language to any station serving the Hartford-New Haven DMA. CTD shall have the right to license for basic cable and/or Superstation WGN exhibition.

**Other Terms:** The program is licensed to stations for broadcast on its current over the air analog channel, as well as the digital channel allocated by the Federal Communications Commission. A "simulcast" or same-day "multi-cast" over both channels will be considered only one telecast for contractual purposes (to the extent not prohibited by Guild agreements).

I believe this accurately reflects our agreement for **EVERYBODY HATES CHRIS**. Please indicate your acceptance by signing below and returning a copy of this letter.

Sincerely,

*Wendy Logsdon*

Wendy Logsdon
Group Program Director

Accepted and Agreed To:

_____
For CBS Television Distribution



CBS *Paramount*
T E L E V I S I O N

**KIMBERLY J. FITZGERALD**
SENIOR VICE PRESIDENT
BUSINESS AFFAIRS & LEGAL

**CBS PARAMOUNT DOMESTIC TELEVISION**
5555 MELROSE AVENUE
HOLLYWOOD, CA 90038-3197

(323) 956-8652
FAX (323) 862-3937
kim.fitzgerald@cbsparamount.com



August 8, 2007

<u>Via Fax and First Class Mail</u>

Mr. Ken Reiner
Director of Programming
WGN Television
2501 West Bradley Place
Chicago, Illinois 60618

RE:    Tribune Offers for **A DIVA'S CHRISTMAS CAROL, FINDING JOHN CHRISTMAS, WHEN ANGELS COME TO TOWN** and **THE WOOL CAP** (Agmt #88114)

Dear Mr. Reiner:

This letter will acknowledge the acceptance of CBS Paramount Domestic Television, a division of CBS Studios Inc. ("CTD") of your offers on behalf of Tribune Broadcasting ("Licensee") to license the above-referenced motion pictures (each a "Motion Picture" and, collectively, the "Motion Pictures") for broadcast only via the superstation facilities of WGN Television ("WGN" or the "Licensed Station") in Chicago, Illinois, as set forth in your email to Ms. Deborah Bradley dated June 20, 2007 (the "Offer Letter"), with the following clarifications (together with the respective portions of the Offer Letter, the "Agreement"):

1.    The Agreement shall be subject to CTD's release and continuing distribution of the Motion Pictures nationwide in syndication and, further, shall be subject to all provisions contained in mutually agreeable standard terms and conditions pursuant to good faith negotiations (the "CTD/Tribune Standard Terms and Conditions"), which, when finalized, shall be deemed incorporated herein by this reference. Further, the Agreement shall incorporate additional terms and conditions that are customary in the industry in agreements of this type until such time as CTD and Licensee mutually agree upon the CTD/Tribune Standard Terms and Conditions.

2.    If CTD ceases entirely to distribute any of the Motion Pictures in national syndication, CTD shall have the right to terminate the Agreement; CTD shall endeavor to provide thirty (30) days written notice of same to Licensee. In the event of such termination, neither Licensee nor CTD shall have any further obligations with regard to such Motion Picture from the date such termination becomes effective.

3.    A schedule setting forth the (i) Start Date, (ii) End Date, (iii) Total License Fee and (iv) Number of Runs for each of the Motion Pictures is attached hereto as <u>Exhibit A</u> and shall be deemed incorporated into the Agreement.

4.    The Total License Fee for the Motion Pictures of ████████ as set forth in <u>Exhibit A</u>, shall be payable by Licensee to CTD in twenty-five (25) equal monthly installments of ████████ commencing on November 1, 2008. ✓

5.    Licensee acknowledges that the licensing of each Motion Picture specified in the Agreement has been separately negotiated and severally agreed upon; that the price set forth herein represents fair value for each such Motion Picture; and that CTD did not directly or indirectly condition the granting of the license of any Motion Pictures upon Licensee agreeing to license any other program, motion picture or feature package(s).

6.  Please be advised that the Motion Pictures are currently encoded for closed captioned viewing.

7.  Licensee may request a high definition print of any of the Motion Pictures (an "HD Print") for broadcast pursuant to terms of the Agreement by notifying CTD in writing of such request.  If, at the time of such request, an HD Print is available and providing same would not cause CTD to violate the terms of any other agreement to which it is a party, then CTD will provide such HD Print to Licensee.

8.  During the term of this Agreement, CTD reserves the right to license the Motion Pictures to free television stations, national basic cable services, or superstations

9.  CTD reserves all other rights beyond the limited license granted in the Agreement.

This letter, together with your offers as set forth in the Offer Letter, shall constitute a firm and binding agreement.  For your immediate reference, enclosed please find a copy of the Offer Letter.

If the foregoing clarifications do not accurately reflect your understanding of the agreement with CTD, please notify the undersigned within fifteen (15) days from the date of this letter.

Very truly yours,

Kimberly M. Fitzgerald

Enclosures

cc:    S. Lee (via Fax)
       D. Bradley



## Kowal, Jerry

| Subject: | Christmas Movies - WGN Superstation |
|---|---|

----- Original Message -----
From: Reiner, Ken <KReiner@tribune.com>
To: Reiner, Ken <KReiner@tribune.com>; Bradley, Deborah K
Sent: Thu Jun 28 09:44:47 2007
Subject: RE: Christmas Movies - WGN

Deb,

Here are the agreed terms for the following titles as I understand it...please confirm.

Ken

| Diva's Xmas Carol | 11/1/10-12/31/10 ✓✓ | ▬▬▬ ✓ |
| ʼan Who Saved Christmas<br>11/1/09 - 12/31/09<br>11/1/10-12/31/10 | 12/16/08-1/2/09<br>▬▬ | ▬▬ |
| Secret of Giving<br>11/1/10-12/31/10 | 11/1/09-12/31/09<br>▬▬ | ▬▬ |
| Wool Cap<br>10/1/09-3/31/10 ✓✓ | 10/1/08-3/31/09 ✓✓<br>▬▬ ✓✓ | ▬▬ ✓✓ |
| Finding John Christmas | 11/1/08- 12/31/08 ✓✓ | ▬▬ ✓✓ |
| When Angels Come to Town | 11/1/08-12/31/08 ✓✓ | ▬▬ ✓✓ |

All titles will be non-exclusive (Superstation WGN), 4 runs per window, except for Wool Cap 5 runs per window...closed captioned and avail in HD (if produced or made available in basic cable, pay or broadcast).

▬▬▬▬▬▬▬ 25 equal installments effective 11/08

**Exhibit A**

| Motion Picture | Start Date | End Date | Total License Fee | Number of Runs |
|---|---|---|---|---|
| A DIVA'S CHRISTMAS CAROL | 11/1/2010 | 12/31/2010 | ███████ | 4 |
| FINDING JOHN CHRISTMAS | 11/1/2008 | 12/31/2008 | ███████ | 4 |
| WHEN ANGELS COME TO TOWN | 11/1/2008 | 12/31/2008 | ███████ | 4 |
| THE WOOL CAP | 10/1/2008 | 3/31/2009 | ███████ | 5 |
| THE WOOL CAP | 10/1/2009 | 3/31/2010 | ███████ | 5 |
| **Total License Fee** | | | ███████ | |

bcc:    J. Kowal
            M. Baker
            T. Williams
            A. Lynch
            P. Molnar
            B. Ramsey
            R. Ragland
            J. Tobin
            D. Theodosopoulos