## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TRIBUNE COMPANY, et al., | ) | Case No. 08-13141 (KJC) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date: July 16, 2009 at 3:30 p.m.** |
|  | ) | **Objection Deadline: July 9, 2009 at 4:00 p.m.** |

## MOTION OF PPF OFF TWO PARK AVENUE OWNER, LLC FOR AN ORDER COMPELLING DEBTORS TO TIMELY PERFORM UNDER REAL PROPERTY LEASE BY PAYING: (I) JULY RENT; (II) SHORTFALL IN JANUARY THROUGH JUNE RENT DUE TO IMPROPER SETOFFS; (III) SEMIANNUAL REAL ESTATE TAXES DUE JUNE 1, 2009; AND (IV) ATTORNEY'S FEES AND INTEREST INCURRED DUE TO DEBTORS' POST-PETITION LEASE DEFAULTS

PPF OFF Two Park Avenue Owner, LLC ("Landlord"), by and through its undersigned

attorneys, hereby moves for entry of an order, pursuant to sections 105, 363, and 365 of title 11

of the United States Code (the "Bankruptcy Code"), compelling Tribune Company ("Tenant"),

one of the debtors and debtors in possession in the above-captioned cases (each a "Debtor", and

collectively, the "Debtors")[1] to timely perform its obligations under Landlord's Lease (as

---

[1] The Debtors in these chapter 11 cases, along with the lust four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434): Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Moldings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Henry & Crown Advertising, Inc. (9808): Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications. LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb. Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227): Times Mirror Services Company, inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719): TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties. Inc. (1629);

defined below) by paying (i) July rent; (ii) the shortfall in January through June rent due to improper setoff; (iii) semiannual real estate taxes due June 1, 2009; and (iv) attorney's fees and interest incurred due to Debtors' post-petition Lease defaults, and respectfully represents as follows:

<u>PRELIMINARY STATEMENT</u>

1.       Tenant has failed to pay July 2009 rent even though the effective date of Tenant's rejection of the Lease has not yet occurred due to Tenant's continued occupancy of Landlord's premises.  Further, Tenant has underpaid its rent for January through June 2009 by asserting setoffs that were improper because they utilized Landlord's cash collateral and the relevant obligations lacked mutuality.  Additionally, Tenant failed to pay semiannual real estate taxes due June 1, 2009.  Accordingly, Tenant should be required to timely perform its Lease obligations by curing all these post-petition defaults and by paying the related attorney's fees and interest due to Landlord under the Lease.

<u>JURISDICTION AND VENUE</u>

2.       This Court has jurisdiction over the matters raised in this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core matter pursuant to 28 U.S.C. § 157(b)(2).  Venue of this matter in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code.

---

Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035): Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847): Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630): Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); VatuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025): Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300): WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

<u>FACTS</u>

The Chapter 11 Cases

3.       On December 8, 2008 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Lease

4.       Landlord owns certain non-residential real property located in New York, New York (the "<u>Premises</u>").  Pursuant to a lease agreement, dated as of September 30, 2002, as amended by the First Amendment of Lease, dated as of January 24, 2003, and the Second Amendment of Lease, dated as of June 7, 2004, (collectively, the "<u>Lease</u>"), Tenant leased the Premises from Landlord.  A copy of the Lease, without Schedules and Exhibits, is annexed hereto as <u>Exhibit A</u>.

5.       Pursuant to a motion of the Debtors, dated June 5, 2009 [Docket No. 1302], on June 25, 2009, this Court entered an Amended Order Authorizing Debtors' Fourth Omnibus Motion to Reject Certain Leases of Nonresidential Real Property [Docket No. 1629] (the "<u>Rejection Order</u>").  The Rejection Order provides that "the effective date of the rejection of [the Lease] and those certain Subleases related to property located at [the Premises] shall be <u>the later of</u> (i) June 30, 2009, or (ii) the date the Debtors vacate such premises."  (Emphasis added). Neither the Rejection Order nor any other Order of this Court authorizes the Debtors to abandon property in the Premises.

#11187785 v1

Tenant's Improper Setoffs

6.    Prior to the Petition Date, pursuant to Section 2 of the Letter Agreement, dated

September 24, 2001 (the "Letter Agreement"), between Two Park Company (predecessor-in-

interest to Landlord) and Tenant, Tenant took monthly setoffs of $61,564.92[2] (the "Setoffs")

against Rent owed by Tenant under the Lease:

> It is agreed that the aforesaid payments owed by Landlord to
> Tribune shall be offset by Tribune against the monthly installments
> of fixed rent and additional rent otherwise owed by Tribune to
> Landlord under the [Lease].

Letter Agreement § 2.  A copy of the Letter Agreement is annexed hereto as Exhibit B.

7.    Under the Lease, Tenant agreed to pay rent "without any set-off, offset, abatement

or reduction whatsoever except as otherwise provided herein and in Section 2 of the Letter

Agreement."  Lease § 1.1.  Further, the Lease provides that notwithstanding the parties' entry

into the Lease, "the terms and provisions of the Letter Agreement, except for [sections

inapplicable here], shall remain in full force and effect."  Lease § 37.10.

8.    Post-petition, Tenant continued to credit the Setoff amount to monthly Rent

payments, notwithstanding Landlord's protestations that no post-petition setoffs were

permissible.

9.    Among other things, by letter, dated April 23, 2009, Landlord requested Tenant to

pay Landlord for prior Setoffs improperly taken post-petition and to discontinue the Setoffs.  A

copy of Landlord's letter is annexed hereto as Exhibit C.

10.    Tenant has failed to pay Landlord any of the amounts improperly setoff and

continued to take the Setoffs.  Consequently, Tenant's aggregate post-petition Rent deficiency is

---

[2]    The monthly amount varied.  The $61,564.02 per month was for the period applicable here.

$369,389.52 for January - June 2009[3] (the "Rent Deficiency").  In the hope that the Lease would

be assumed and, therefore, the Rent Deficiency would become moot, Landlord deferred seeking

relief in this Court pending Tenant's assumption or rejection of the Lease.

Failure to Pay July Rent

11.     The Debtors (and their sublessees) have not vacated the Premises.  Among other

things, Tenant left hundreds of large items at the Premises, including, without limitation,

cubicles, desks, chairs, conference tables, refrigerators, vending machines, file cabinets, and air

conditioners.  A more complete, but still not comprehensive, list of Tenant's possessions

remaining on the Premises as of 5 p.m. on June 30, 2009 is annexed hereto as Exhibit D.

Additionally, Tenant's subtenants remain at the Premises.

12.     Under section 1.1 of the Lease, basic rent ("Rent") is required to be paid in

advance on the first day of each calendar month.  Despite their continued occupation of the

Premises, the Debtors have not yet paid $406,185.72 of Rent due July 1, 2009.

Tenant's Additional Lease Defaults

13.     Pursuant to section 27.2(b) of the Lease, Tenant was required to make a

semiannual payment of real estate taxes of $292,140.57.  Tenant failed to make that payment.[4]

14.     Sections 18.1 and 18.2 of the Lease provide for Tenant to have additional post-

petition obligations for Landlord's post-petition attorneys' fees and costs related as well as

interest due to Tenant's post-petition breaches of the Lease.

---

[3]     $61,564.92 x 6 months (1/2009 - 6/2009) = $369,389.52.

[4]     Additional amounts will be due under the Lease for the post-petition period for true-ups for operating
expenses and the actual (as opposed to estimated) real estate taxes.  Landlord reserves all rights as to those
amounts.

#11187785 v1

THE MOTION

I.      TENANT HAS FAILED TO TIMELY PERFORM
        ITS POST-PETITION LEASE OBLIGATIONS

A.      Tenant Is Required To Timely Perform Its Post-Petition
        Obligations Under The Lease Pursuant To Section 365(d)(3)

        15.     Pursuant to section 365(d)(3), pending rejection or assumption, a debtor-in-

possession is statutorily obligated to timely perform all post-petition obligations under an

unexpired lease of real property.  See 11 U.S.C. § 365(d)(3).  Section 365(d)(3) provides, in

pertinent part:

> [t]he [debtor-in-possession] shall timely perform all the obligations
> of the debtor . . . arising from and after the [petition date] under
> any unexpired lease of nonresidential real property, until such lease
> is assumed or rejected, notwithstanding section 503(b)(1) of [the
> Bankruptcy Code].

11 U.S.C. § 365(d)(3).  Those obligations include payment of post-petition rent as it becomes

due.

        16.     Section 365(d)(3) was enacted to protect real property lessors during the period

between the petition date and the date the debtor assumes or rejects a lease.  See, e.g., In re

Garden Ridge Corp., 323 B.R. at 140–41 (citing CenterPoint Props. v. Montgomery Ward

Holding Corp. (In re Montgomery Ward Holding Corp.), 268 F.3d 205, 211 (3d Cir. 2001)).  The

legislative history of section 365(d)(3) reflects Congress' intent to afford lessors extra protection

vis-à-vis other unsecured creditors:

> A second and related problem [arises when] the trustee has stopped
> making payments due under the lease.  These payments include
> rent due the landlord and common area charges which are paid by
> all the tenants according to the amount of space they lease.  In this
> situation, the landlord is forced to provide current services — the
> use of its property, utilities, security, and other services — without
> current payment.  No other creditor is put in this position.

- 6 -

H.R. Conf. Rep. No. 98-882 (1984), reprinted in 1984 U.S.C.C.A.N. 576, 599 (statement of Sen. Hatch).

B.    Tenant Failed To Timely Pay July Rent

17.    July rent due under the Lease on July 1, 2009 has not been paid even though the Lease has not been rejected.  With respect to the Lease, the Rejection Order provides that the effective date of Tenant's rejection of the Lease is "the later of (i) June 30, 2009, or (ii) the date the Debtors vacate such premises."  The Debtors have not vacated the Premises because they still contain the Debtors' fixtures, furniture, and equipment and because Tenant's subtenants remain in the Premises.  Nothing in the Rejection Order nor any other order of the Court permits Tenant to abandon personal property in the Premises.  Thus, until Tenant removes its property from the Premises, the Debtors have not "vacated" the Premises and the Lease remains unrejected.[5]

18.    Accordingly, Tenant should be compelled to immediately pay Rent of $406,185.72 due July 1, 2009 under the Lease pursuant to section 365(d)(3).  See, e.g., In re Potts & Co., Inc., 137 B.R. 13, 17 (E.D. Pa. 1992) (stating that the Third Circuit would apply the

---

[5]    Even if Tenant somehow effectively rejected the Lease as of June 30, 2009, Tenant still is obligated to pay for the period Tenant holds over in the Premises as an administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code.  To establish its entitlement to an administrative expense claim, Landlord need only establish that the Tenant is using the Premises.  In re Garden Ridge Corp., 323 B.R. 136, 142 (Bankr. D. Del. 2005) (stating that "the claimant need only show that the property was actually used by the debtor in the ordinary course of business").  Here, the Tenant's personal property remains in the Premises and no Court order permitted Tenant to abandon its personal property in the Premises.  Therefore, Tenant continues to use the Premises as a holdover tenant and Landlord is entitled to an administrative expense claim based on the contract rent for the Premises.  See In re DVI, Inc., 308 B.R. 703, 707-08 (Bankr. D. Del. 2004). ("There is a presumption that the lease rate is the fair market value unless there is evidence to the contrary" (quoting In re ZB Company, Inc., 302 B.R. 316, 319 (Bankr. D. Del. 2003))).  Accordingly, even if the Lease has been rejected, Tenant should be compelled to immediately pay to Landlord, as an administrative expense under section 503(b)(1)(A), an amount equal to the pro-rated rent for the period Tenant holds over in the Premises.

#11187785 v1

objective approach to determining fair market value so that contract rent controls regardless of how a debtor uses the property).[6]

C.    **Tenant Underpaid Rent For January**
      <u>Through June 2009 Due To Improper Setoffs</u>

      <u>Improper Use of Cash Collateral</u>

19.    Section 363(a) provides that "cash collateral" means "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate ha[s] an interest. . . ." 11 U.S.C. § 363(a).  The amounts due to Tenant from Landlord under the Letter Agreement may constitute Landlord's cash collateral.

20.    Pursuant to section 363(c)(ii), a debtor-in-possession "may not use, sell, or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use." 11 U.S.C. § 363(c)(ii).  Landlord has not consented to Tenant's post-petition use of the cash collateral and Tenant has not even requested, let alone obtained, this Court's authority to use such cash collateral.  Nor has Tenant provided adequate protection of the Landlord's interest in its cash collateral, as required by section 363(e).

21.    By analogy, a debtor/tenant could not unilaterally utilize a landlord's security deposit to satisfy the debtor/tenant's post-petition rent obligations.  Unless the lease is assumed,

---

[6]    <u>See</u> <u>Thompson v. ISG Leasing Co. (In re Thompson)</u>, 788 F.2d 560, 563 (9th Cir. 1986) (holding that reasonable value of a property is not determined by "[a]ctual value or benefit conferred on the debtor…[but by] the fair and reasonable value of the lease upon the open market…."); <u>In re Patient Education Media</u>, 221 B.R. 97, 104 (Bankr. S.D.N.Y. 1998) ("[u]nder section 503(b)(1)(A), the nondebtor is entitled to recover the reasonable value of the use and occupation of his property [which] involves an objective measurement rather than a subjective determination of what the property is worth to the debtor").

#11187785 v1

that security deposit collateralizes the landlord's prepetition and potential rejection damage claims and the debtor-in-possession who is a tenant has an independent statutory obligation to pay post-petition rent.  Similarly, here Tenant may not use Landlord's cash collateral, in the form of Landlord's independent payment obligation to Tenant, to satisfy Tenant's post-petition rent obligations,  Hence, Tenant is required to pay to Landlord $369,389.52, representing the aggregate amount of Tenant's improper post-petition setoffs.[7]

Lack of Mutuality

22.     An obligation that arises prepetition may not be setoff against a post-petition obligation because the debtor is a separate legal entity from the debtor-in-possession and mutuality between the prepetition and post-petition debts is destroyed upon the filing of a petition for bankruptcy.  See Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.), 270 F.3d 280, 290 (6th Cir. 2001) ("The debtor-in-possession is considered to be a separate legal entity from the debtor himself. Since the debtor-in-possession and debtor are separate legal persons, there is no mutuality between a creditor's pre-petition claim against a debtor and debtor-in-possession's post-petition claim against a creditor."); In re Women First Healthcare, Inc., 345 B.R. 131, 134-35 (Bankr. D. Del. 2006) ("[T]o exercise the right of setoff, there must be mutuality between the parties, that is the estate must seek to set off a debt it owes to the creditor against a debt the creditor owes to the estate") (citations omitted).  Thus, because "mutuality between the debts [was] lacking," a post-petition debt owed by the United States to a bankruptcy trustee (due to an avoided transfer) could not be setoff against a prepetition tax debt owed by the debtor to the United States.  United States v. Roth, 164 F.2d 575, 578 (2d Cir. 1948).

---

[7]     Landlord understands that it then will owe Tenant the $369,389.52.  Nonetheless, Landlord will be able to set that prepetition obligation off against Landlord's prepetition Lease rejection claim.

#11187785 v1

23.     Here, Tenant's <u>post</u>-petition rent obligation as a debtor-in-possession under section 365(d)(3) may not be setoff against Landlord's prepetition payment obligation to Tenant under the Letter Agreement because there is no mutuality between the debts.  Accordingly, Tenant's post-petition setoffs were improper and Tenant must immediately pay to Landlord the entire $369,389.52 Rent Deficiency.

D.     Tenant Failed to Pay Semiannual
       <u>Real Estate Taxes Due June 1, 2009</u>

24.     Pursuant to section 27.2(b) of the Lease, Tenant was required to make a semiannual payment of real estate taxes of $292,140.57.  Tenant failed to make that payment

25.     Under Third Circuit law, a debtor-in-possession's obligation to pay post-petition rent and taxes under a lease are based on the date such payments are due under the lease.  <u>See</u> <u>In re Montgomery Ward Holding Corp.</u>, 268 F.3d 205, 211 (3rd Cir. 2001).  Thus, the fact that a portion of the taxes may relate to a prepetition or post-rejection period is irrelevant.  <u>See</u> <u>In re Koenig Sporting Goods, Inc.</u>, 203 F.3d 986, 989 (6th Cir. 2000).

II.     LANDLORD IS ENTITLED TO ATTORNEY'S FEES
        AND INTEREST BASED ON TENANT'S POST-PETITION
        <u>FAILURE TO TIMELY PERFORM UNDER THE LEASE__</u>

26.     Pursuant to section 365(d)(3), to the extent provided for in the Lease, Landlord is entitled to recover as an administrative expense Landlord's reasonable costs and expenses incurred in connection with Tenant 's failure to timely perform under the Lease.  <u>See</u>, <u>e.g.</u>, <u>In re Exch. Resources, Inc.</u>, 214 B.R. 366, 369–70 (Bankr. D. Minn. 1997) (ordering the debtor to promptly reimburse landlord for attorney's fees); <u>In re MS Freight Distrib., Inc.</u>, 172 B.R. 976, 978–79 (Bankr. W.D. Wash. 1994) (holding section 365(d)(3) mandates lessor be paid interest, late fees, and legal fees); <u>In re Pacific Sea Farms, Inc.</u>, 134 B.R. 11, 15–16 (Bankr. D. Haw.

- 10 -

1991) (granting payment of reasonable attorney's fees); In re Revco D.S., Inc., 109 B.R. 264, 272–273 (Bankr. N.D. Ohio 1989) (awarding attorney's fees).  See also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co., 127 S. Ct. 1199, 1207–08 (2007) (holding that an unsecured creditor could recover attorney's fees authorized by a pre-petition contract and incurred in post-petition litigation).

27.     Here, the Lease expressly requires payment of Landlord's reasonable costs and expenses, including attorney's fees, incurred in the enforcement of Landlord's rights under the Lease.  See Lease § 18.1.  Landlord has had to incur and will continue to incur attorney's fees and costs in connection with Tenant's post-petition Lease defaults.

28.     Additionally, the Lease expressly provides for the payment of interest if Tenant fails to pay any amount when due under the Lease:

> If Tenant shall fail to pay any installment of [Rent] when due, Tenant shall pay to Landlord, in addition to such installment of [Rent], as a late charge and as additional rent, a sum equal to the Applicable Rate (as defined in the Lease) on the amount unpaid, computed from the date such payment was due to and including the date of payment.

Lease § 18.2

29.     Accordingly, and particularly as Tenant was given, but rejected, the opportunity to comply with its Rent Deficiency obligations without forcing Landlord to file this motion, Tenant should be required to pay Landlord's related post-petition attorney's fees, and costs as well as interest on unpaid post-petition rent in accordance with the Lease.

<u>CONCLUSION</u>

WHEREFORE Landlord respectfully requests: (a) entry of an order substantially in the

form annexed hereto as <u>Exhibit E</u>; and (b) such other and further relief for Landlord as this Court

deems appropriate.

Dated: June 30, 2009                     Respectfully submitted,
Wilmington, Delaware


**PEPPER HAMILTON LLP**


 /s/ Leigh-Anne M. Raport
David B. Stratton (DE No. 960)
Leigh-Anne M. Raport (DE No. 5055)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail:  strattond@pepperlaw.com
         raportl@pepperlaw.com


and

**WILLKIE FARR & GALLAGHER LLP**
Alan J. Lipkin, Esq.
Jeremy E. Crystal, Esq.
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel for PPF OFF Two Park Avenue
Owner, LLC*