## FIRST AMENDMENT OF LEASE

THIS FIRST AMENDMENT OF LEASE (this "Amendment"), dated as of January 24th 2003, by and between TWO PARK COMPANY, A New York Partnership, having an office c/o Vornado Office Management LLC, 888 Seventh Avenue, New York, New York 10019 ("Landlord") and TRIBUNE COMPANY, a Delaware corporation, having an office at 435 North Michigan Avenue, Chicago, Illinois 60611 ("Tenant").

### RECITALS:

WHEREAS, Landlord, as landlord, and Tenant, as tenant, entered into that certain Restated Agreement of Lease, dated as of September 30, 2002 (the "Lease") with respect to that certain premises which is more particularly described in the Lease (the "Premises") located at the building known by the street address of Two Park Avenue, New York, New York (the "Building");

WHEREAS, Tenant, as sublandlord, and Times Mirror Magazines, Inc. (the predecessor-in-interest of Time4 Media, Inc. ("Subtenant"), a New York corporation), as subtenant, entered into that certain Sublease, dated as of October 6, 2000, as amended from time to time, (the "Sublease") with respect to that certain premises which is more particularly described in the Sublease (the "Subleased Premises") located at the Building.

WHEREAS, Subtenant has requested permission under the Sublease and the Lease to or have Time Warner Telecom Company, its telecommunications service provider (the "Provider") place the Equipment (as hereinafter defined) in the location in the Building set forth on Exhibit "A" attached hereto for the benefit of the Subleased Premises.

WHEREAS, Tenant has requested Landlord's permission to allow Subtenant to install and maintain or to have the Provider install and maintain the Equipment in the location in the Building as set forth on Exhibit "A" attached hereto; and

WHEREAS, Landlord and Tenant desire to amend and modify the Lease upon the terms and conditions hereinafter set forth.

### AGREEMENT:

1.    Defined Terms.    All capitalized terms used herein shall have the meanings ascribed to them in the Lease, unless otherwise defined herein.

2.    License Agreement. Tenant shall have the right to (i) sublicense the rights granted in this Amendment to Subtenant (and no other Person) and (ii) permit Subtenant to further sublicense the rights granted in this Amendment to the Provider (and to no other Person), subject to Subtenant consenting and agreeing to comply with the terms and conditions of this Amendment by signing the last page hereof. Except as set forth in this Section 2, neither Tenant, Subtenant nor the Provider shall have any right to assign, sublicense or otherwise transfer the rights granted under this Amendment without Landlord's prior written consent (which may be withheld in Landlord's sole discretion). Upon the expiration or earlier termination of the sublicense granted

4698/75979-010 NYLIB1/1573534 v6

by Tenant to Subtenant or by Subtenant to the Provider, Subtenant or Subtenant and the Provider, as the case may be, shall have no further rights with respect to the rights granted by Landlord hereunder. In no event shall any sublicense granted to Subtenant or the Provider create any right, title or interest of Subtenant or the Provider in the Premises or the Building. Notwithstanding anything to the contrary contained herein, if a New Time4 Lease is entered into, then pursuant to Section 12.6(G) of the Lease, in addition to the conditions set forth in Section 12.6(G) of the Lease, the Lease shall automatically be amended so as to terminate this Amendment, and all the provisions hereof shall be a part of the New Time4 Lease.

3.    Equipment. During the term of the Lease, Tenant shall have the non-exclusive right to (or cause Subtenant to) install, maintain, repair, replace and operate a four (4) inch fiber optic cable within an existing conduit in the Building's existing point of entry and within an innerduct (a "New Innerduct") to be installed by Tenant, Subtenant or the Provider in the locations in the Building described on Exhibit "A" attached hereto, connecting such point of entry to the telecommunications room located on the ninth (9th) and tenth (10th) floors of the Building (such fiber optic cable and such innerduct being referred to as, the "Equipment") to provide telecommunications services to the Subleased Premises necessary or reasonably desirable to Subtenant in connection with the operation of Subtenant's normal business in the Subleased Premises, subject to the terms of the Lease, as modified by this Amendment. The Equipment shall be installed in a location reasonably designated by Landlord. Unless Landlord approves plans for the Equipment prior to or simultaneously with the execution of this Amendment, Landlord shall have no obligation to reserve space for Tenant for the Equipment and Tenant shall only have the right to install the Equipment if Landlord determines at the time that Tenant submits plans and specifications for the Equipment to Landlord that such space is available (considering any such space Landlord is reserving for other or future tenants or for the use of Landlord of the Building).

4.    Construction and Installation. Prior to the installation of the Equipment: (a) Tenant shall or shall cause Subtenant to coordinate with Landlord as to which of the feasible locations and the type of Equipment and manner of installation are conceptually acceptable to Landlord prior to the preparation of plans and specifications for Landlord's review and approval and (b) Tenant or Subtenant shall submit detailed plans and specifications for the Equipment and all work to be performed by or for Tenant or Subtenant to Landlord for review and approval, which approval shall be at the sole discretion of Landlord. Tenant shall pay all out-of-pocket costs and expenses incurred by Landlord in reviewing, approving, and supervising the installation of the Equipment including, without limitation, architects' and engineers' fees and expenses, and attorneys' fees for Landlord's review and drafting of this Amendment and any other matters related to this Amendment and/or the Equipment. Tenant shall install or shall cause the installation of the Equipment in such manner that the Equipment is not visible from the street or any common areas of the Building. The installation of the Equipment shall be performed in accordance with the provisions of the Lease including, without limitation, Article 3 thereof. Tenant shall be solely responsible for the cost of installation, operation, maintenance and repair of the Equipment and Tenant shall keep the Equipment (or shall cause the Equipment to be kept) in good condition and make all necessary or appropriate repairs and replacements thereto, subject to the appropriate provisions of the Lease. Tenant shall repair, at its expense, any and all damage caused by Tenant and/or Provider or Tenant's and/or Provider's employees, agents, contractors or subcontractors to

4698/75979-010 NYLIB1/1573534 v6

the Building, including, without limitation, equipment within and serving the Building. Notwithstanding the foregoing, Landlord shall perform, at Tenant's sole cost and expense, any such repairs which would affect the Building Systems or which would be visible from the exterior of the Building or from any interior common area of the Building. If, within five (5) Business Days following notice to Tenant, Tenant fails to commence to repair or replace any such matter or any damage to the Building which is Tenant's obligation to perform, or fails to diligently pursue timely completion of such repair and replacement, Landlord may, at its option, cause all required maintenance, repairs or replacements to be made. Tenant shall promptly pay, as Rental, to Landlord within thirty (30) days after written demand by Landlord all actual costs incurred in connection therewith. If Tenant shall fail to pay such costs within such thirty (30) day period, then Tenant shall pay to Landlord, in addition to such costs, a late charge pursuant to the provisions of Section 18.2 of the Lease.

5.    Compliance with Law. Tenant shall install and operate (or cause the installation and operation of) the Equipment in accordance with all applicable Requirements. In addition, Tenant shall (or shall cause Subtenant to) be responsible for obtaining any permits and licenses required to install and operate the Equipment. The rights granted hereunder to Tenant shall be utilized by Tenant in a manner which will not unreasonably disturb the occupancy of the other tenants or occupants of the Building or Landlord's or any other tenant's or occupant's business operations. The provisions of this Paragraph 5 supplement the provisions of the Lease, all of which shall also apply to any such installation.

6.    Interference. Tenant agrees that the Equipment shall be of a type and frequency which will not cause interference to any other party or any equipment of any other party including, without limitation, Landlord, any other tenants, licensees or occupants of the Building, or any equipment utilized in the Building. In the event that the Equipment causes or is believed to cause any such interference, upon receipt of written notice from Landlord to Tenant (with a copy to the subtenant under the Sublease, provided that Tenant shall have provided Landlord with proper contact information for such subtenant's operations manager at the Subleased Premises) of such interference, Tenant will take all steps necessary to correct and eliminate the interference. If the interference is not eliminated within one (1) Business Day then, upon request from Landlord, Tenant shall (or shall cause Subtenant to) shut down the Equipment pending resolution of the interference.

7.    Use of Equipment. The Equipment shall only be utilized by Tenant and only to provide services fo the Subleased Premises in connection with the normal business operations of Tenant or the subtenant under the Sublease in the Subleased Premises as expressly permitted under the Lease and as conducted on the date hereof. The Equipment shall not be utilized for any other purpose or to provide any services to any other tenants of or space in the Building or in any other property. Tenant acknowledges that Landlord shall in no way be liable for any failure of the Equipment or an interruption or failure of telecommunications services to the Premises. Neither Tenant nor Provider may market or provide services utilizing the Equipment to other tenants of the Building or of any other property. Upon the expiration or earlier termination of the Lease, Tenant shall remove (or cause to be removed) all of the Equipment and repair (or caused to be repaired) all damage caused thereby and otherwise restore the Building to the condition existing prior to the installation.

4698/75979-010 NYLIB1/1573534 v6

8.    Relocation. Within ninety (90) days after request from Landlord, Tenant shall relocate, at Tenant's sole cost and expense, any New Innerduct to a location reasonably designated by Landlord; provided, however, that if Landlord has previously caused any New Innerduct to be relocated at Tenant's sole cost and expense pursuant to this Paragraph 8, then any further relocation of such New Innerduct shall be performed by Landlord at Landlord's sole cost and expense following not less than thirty (30) days notice to Tenant..

9.    Electricity. Tenant shall provide, at the expense of Tenant, any electric power required to allow Tenant to utilize the Equipment.

10.    Access. Access to the Equipment and any other non-public portions of the Building shall only be granted to persons properly identified and shall only occur between 8:00 a.m. and 6:00 p.m. on Business Days, except in the event of an emergency in which event Landlord shall endeavor to grant access on reasonable prior notice to the property manager for the limited purpose of preventing damage to persons and property and restoring services which have been interrupted. Except in case of emergency, Tenant shall give Landlord at least two (2) Business Days' prior written notice of any access Tenant shall require to the Equipment or any of the Building's electrical, mechanical or telecommunications risers, closets, conduits, rooms or other horizontal or vertical spaces in the Building (if required to access the Equipment). Tenant shall reimburse Landlord for all reasonable costs incurred by Landlord in connection with any access granted to Tenant outside of normal business hours. Tenant shall comply with all security procedures established by Landlord or by any riser manager employed by Landlord. Tenant shall furnish to Landlord, within two (2) Business Days after request, a written report detailing all repairs and other work performed by Tenant during any emergency or other visit. Tenant shall permit a representative of Landlord to accompany Tenant in accessing the Equipment, at all times.

11.    Indemnity and Insurance. Supplementing the provisions of the Lease: (a) Tenant agrees to indemnify, protect, defend and hold Landlord, and its partners, officers, directors, employees and agents harmless from and against any and all damages, costs, claims, loss, liabilities, costs and expenses (including reasonable attorneys' fees) arising by reason of any occurrence attributable to or arising out of the operation of the Equipment or the installation, maintenance, upgrade, operation or removal of any of the Equipment, and any default under this Amendment, any act or omission at the Building by Tenant, Subtenant, Provider or the employees, contractors or agents of Tenant, Subtenant or Provider attributable to or arising out of the operation of the Equipment or the installation, maintenance, upgrade, operation or renewal of any of the Equipment or any claim for a fee or commission by any broker or any other party in connection with this Amendment and (b) Tenant shall cause (or shall cause Subtenant to cause) Provider, at its sole cost and expense to carry commercial general liability insurance insuring against claims, demands or actions for bodily injury, death, personal injury, and loss or damage to property arising out of or in connection with: (i) use of the Equipment; (ii) the condition of the Equipment; (iii) Tenant's and/or Provider's operations in, and maintenance and use of the Equipment; and (iv) Tenant's contractual liability assumed under this Agreement, which policy shall be in all other respects reasonably satisfactory to Landlord. The amount of such insurance for bodily injury and property damage liability shall not be less than a combined single limit of One Million and 00/100 Dollars ($1,000,000.00) for each occurrence and a Ten Million and

00/100 Dollars ($10,000,000.00) aggregate limit. Tenant shall (or shall cause Subtenant to) promptly deliver to Landlord evidence of such insurance.

12.    Authorization.    Tenant represents and warrants to Landlord that its execution and delivery of this Amendment has been duly authorized and that the person executing this Amendment on behalf of Tenant has been duly authorized to do so, and that no other action or approval is required with respect to this transaction.

13.    Full Force and Effect of Lease.  Except as modified by this Agreement, the Lease and all covenants, agreements, terms and conditions thereof shall remain in full force and effect and are hereby in all respects ratified and confirmed.

14.    Entire Agreement.  The Lease, as amended by this Amendment, constitutes the entire .understanding between the parties hereto with respect to the Premises and may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Landlord and Tenant have caused this Amendment to be executed as of the day and year first above written.

LANDLORD:

TWO PARK COMPANY

By:  M/H Two Park Associates L.P., general partner

    By: Vornado M/H L.L.C., general partner

        By:  Vornado Realty L.P., managing member

            By:  Vornado Realty Trust, general partner

                By: _____
                   Joseph Macnow
                   Executive Vice President –
                   Finance and Administration and
                   Chief Financial Officer

TENANT:

TRIBUNE COMPANY

By: _____
    Name: Kenneth E. Mescher
    Title: Real Estate Director

THE TERMS OF THIS AMENDMENT ARE HEREBY CONSENTED AND AGREED TO:

TIME4 MEDIA, INC.


By: _____
   Name:
   Title:

IN WITNESS WHEREOF, Landlord and Tenant have caused this Amendment to be executed as of the day and year first above written.

LANDLORD:

TWO PARK COMPANY

By: M/H Two Park Associates L.P., general partner

   By: Vornado M/H L.L.C., general partner

      By: Vornado Realty L.P., managing member

         By: Vornado Realty Trust, general partner

By: _____
    Joseph Macnow
    Executive Vice President –
    Finance and Administration and
    Chief Financial Officer

TENANT:

TRIBUNE COMPANY

By: _____
    Name:
    Title:

THE TERMS OF THIS AMENDMENT ARE HEREBY CONSENTED AND AGREED TO:

TIME4 MEDIA, INC.

By: _____
    Name: Victor M. Sauerhoff
    Title: SVP, Finance & Operations

4698/75979-010 NYLIB1/1573534 v6

EXHIBIT "A"

[Attached]

4698/75979-010  NYLIB1/1573534 v6



# TIME WARNER
## T E L E C O M

TIME MEDIA
SONET RING FIBER

2 PARK AVENUE
NEW YORK, NEW YORK

ISSUED FOR REVIEW — 11/06/02

### DRAWING LIST

| | |
|---|---|
| CS | COVER SHEET |
| E-101 | ELECTRICAL SPECIFICATIONS |
| E-201 | BASEMENT PLAN |
| E-202 | PART PLANS, RISER DIAGRAM AND DETAILS |
| E-203 | 9TH FLOOR PLAN |



DESIGN CONSULTANT:

**CB BREEN ASSOCIATES, P.C.**

25 VAN ZANT STREET
SUITE 7D
NORWALK, CT 06855

TEL 203-866-1471
FAX 203-866-1472

Copyright © 2002 CB BREEN ASSOCIATES, P.C.

*APPROVED & ACCEPTED*

VORNADO OFFICE MANAGEMENT LLC
TWO PENN PLAZA

BY: _Pat Greene_

TITLE: _Building Manager_

DATE: _1/17/03_





APPROVED & ACCEPTED

VORNADO OFFICE MANAGEMENT LLC
TWO PENN PLAZA

BY: _Pat Huere_

TITLE: _Building Manager_

DATE: _1/17/03_

TIME WARNER
TELECOM

SONET RING FIBER CONDUIT
2 PARK AVENUE
NEW YORK, NEW YORK



APPROVED & ACCEPTED

VORNADO OFFICE MANAGEMENT LLC
TWO PENN PLAZA

BY: _Pat Greene_

TITLE: _Building Manager_

DATE: _1/17/03_

SONET RING FIBER CONDUIT
2 PARK AVENUE
NEW YORK, NEW YORK



APPROVED & ACCEPTED

VORNADO OFFICE MANAGEMENT LLC
TWO PENN PLAZA

BY: _Pat Greene_

TITLE: _Building Manager_

DATE: _1/17/02_

SONET RING FIBER CONDUIT
2 PARK AVENUE
NEW YORK, NEW YORK