UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
                              .
IN RE:                        .      Chapter 11
                              .
Tribune Company, et al.,      .
                              .
          Debtor(s).          .      Bankruptcy #08-13141 (KJC)
.............................................................
```

Wilmington, DE
June 25, 2009
10:00 a.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

**APPEARANCES:**

For The Debtor(s):              Janet Henderson, Esq.
                                Sidley Austin, LLP
                                One South Dearborn St.
                                Chicago, IL 60603

                                Michael Doss, Esq.
                                Sidley Austin, LLP
                                One South Dearborn St.
                                Chicago, IL 60603

                                J. Kate Stickles, Esq.
                                Cole Schotz Meisel Forman
                                & Leonard, P.A.
                                500 Delaware Ave.-Ste. 1410
                                Wilmington, DE 19801

For The Official Committee:     Adam Landis, Esq.
Of Unsecured Creditors          Landis Rath & Cobb, LLP
                                919 Market St.-Ste. 1800
                                Wilmington, DE 19801

                                Jason Porter, Esq.

|  | Chadbourne & Parke, LLP<br>30 Rockefeller Plaza<br>New York, NY 10112 |
|---|---|
| For Warren Beatty: | Gregg Galardi, Esq.<br>Skadden Arps Slate Meagher<br>& Flom, LLP<br>One Rodney Square<br>Wilmington, DE 19899 |
|  | Ian Fredericks, Esq.<br>Skadden Arps Slate Meagher<br>& Flom, LLP<br>One Rodney Square<br>Wilmington, DE 19899 |
| For Neil Plaintiffs: | Tom Driscoll, Esq.<br>Bifferato, LLP<br>800 North King St.<br>Wilmington, DE 19801 |
| For Jayne Clement: | Glenn Brown, Esq.<br>Real World Law, P.C.<br>6774 Market St.<br>Upper Darby, PA 19082 |
| For the U.S. Trustee: | Joseph McMahon, Esq.<br>Office of the United States<br>Trustee<br>844 King St. Ste. 2207<br>Lockbox 35<br>Wilmington, DE 19801 |

(Via Telephone)

| For The Debtors: | Ken Kansa, Esq.<br>Sidley Austin, LLP<br>One South Dearborn St.<br>Chicago, IL 60603 |
|---|---|
|  | Candice Kline, Esq.<br>Sidley Austin, LLP<br>One South Dearborn St.<br>Chicago, IL 60603 |

Bryan Krakauer, Esq.
Sidley Austin, LLP
One South Dearborn St.
Chicago, IL 60603

Jill McClelland, Esq.
Sidley Austin, LLP
One South Dearborn St.
Chicago, IL 60603
David Bradford, Esq.
Jenner & Block, LLP
330 N. Wabash Ave. #40
Chicago, IL 60611

Douglas A. Sondgeroth, Esq.
Jenner & Block, LLP
330 N. Wabash Ave. #40
Chicago, IL 60611

For Davis, Polk & Wardell:        Damian Schaible, Esq.
                                  Davis Polk & Wardell, LLP
                                  450 Lexington Ave.
                                  New York, NY 10017

For Kramer, Levin, Naftalis:      Jennifer Sharret, Esq.
& Frankel                         Kramer Levin Naftalis
                                  & Frankel, LLP
                                  1177 Avenue of the Americas
                                  New York, NY 10063

For Jayne Clement:                Carney R. Shegerian, Esq.
                                  Shegarian & Associates, Inc.
                                  225 Arizona Ave.-Ste. 400
                                  Santa Monica, CA 90401

Audio Operator:                   Al Lugano

Transcribing Firm:                Writer's Cramp, Inc.
                                  6 Norton Rd.
                                  Monmouth Jct., NJ 08852
                                  732-329-0191

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          THE CLERK:  All rise.  Please be seated.

2          THE COURT:  Good morning, everyone.

3          ALL:  Good morning, Your Honor.

4          MS. STICKLES:  Good morning, Your Honor.  Kate

5   Stickles on behalf of the Debtors, Tribune Company, et al.

6   Also present on behalf of the Debtors this morning are Janet

7   Henderson and Michael Doss from Sidley Austin.  Late yesterday

8   afternoon, Your Honor, the Debtors filed a Second Amended

9   Agenda with the Court.  The agenda reflects that with regard to

10  Agenda Item 1, that matter is withdrawn and is not going

11  forward.  The Court entered orders with respect to Agenda Items

12  2, 3 and 4.  Your Honor, with regard to Agenda Item 3, the

13  Motion to Reject Certain Leases, subsequent to that -- the

14  entry of that order, we filed a Certification of Counsel,

15  together with an Amended Order.  We apologize for any

16  inconvenience to the Court, and thank you for your

17  consideration.

18          THE COURT:  I signed that order this morning.

19          MS. STICKLES:  Thank you very much, Your Honor.  As to

20  Agenda Item 5, the Ernst and Young Retention Application, the

21  parties intend to submit a Revised Form of Order under

22  Certification of Counsel.  Agenda Item 6, the Francisco Lift

23  Stay Motion is adjourned to the July 28th hearing.  Agenda Item

24  7, Your Honor, is Jayne Clement's motion to lift the stay.  Mr.

25  Brown is present to address the Court on behalf of the Movant,

1  and Ms. Henderson will address the Court on behalf of the

2  Debtors.

3          THE COURT:  Very well.

4          MR. BROWN:  Good morning, Your Honor, I'm Glenn Brown,

5  Real World Law, on behalf of Jayne Clement.  Jayne Clement, in

6  this matter, has two -- an individual action and a class action

7  pending in Los Angeles County, and we believe it'd be

8  appropriate for this Court to lift the stay in respect to both

9  actions.  Ms. Clement's position in the class action is not

10 dissimilar to the SCO case that this Court relies on in

11 considering lift stay motions, because the class action is for

12 wages that members of the class would have earned, or should

13 have earned and were not paid by the Debtor, at the termination

14 of their employment.  These claims, if approved by the Court,

15 would become priority claims, and as such, they would be

16 necessary to be liquidated in number to have a confirmable plan

17 in this matter.  Because these claims are not yet liquidated,

18 that would adversely impact the ability for the Debtor to

19 propose a plan that would be confirmable as to priority claims.

20      This litigation, I'll start in reverse order, in terms of

21 chances of success.  Well, the Debtor has already filed a

22 Motion for Judgment on the pleadings in this matter, and

23 they're -- in a ruling in September 30th of 2008, California

24 Court denied that motion.  So there is at least a slight chance

25 of success on the merits.  In addition, although the Debtor

1  mentioned in the claim, they said that we had engaged in

2  blunder busts discovery activity.  Well, when we look at the

3  September 30 order of the Court in California, they granted Ms.

4  Clement's motion in regards to almost all of the discovery

5  items, only -- denying only one, but approving the others.  And

6  I'd like to put that order on the record as Exhibit A for the

7  party.  Additionally, in terms -- Debtor has said that this

8  will consume a lot of resources.  Well, by their own response

9  to this motion, they've made it clear that this order is based

10 on California law, and would be decided, basically, as a matter

11 of law.  As such, significant additional attorney resources

12 would not be involved in allowing this to go forward, so the

13 Debtor would not be prejudiced by that, and because the matter

14 would be decided it's a matter of law, and that it's been

15 pending for a while, it would not require significant

16 management input on behalf of the Debtor, so would not

17 interfere with the reorganization plan of the Debtor at this

18 time, to allow that matter to go forward.

19      In the individual case, Ms. Clement has a wrongful

20 discharge and yet would be more in line as an unsecured

21 Creditor, unlike the class action.  But as the Debtor has

22 acknowledged, most -- the discovery is largely complete, and

23 the Debtor has stated they have a pending Motion for Summary

24 Judgment in this matter.  So this matter is well along the way.

25 The Debtor has categorized it as a garden variety employment

1  case, where, clearly, a garden variety employment case would

2  not require significant top management involvement in a routine

3  matter, and, clearly, the individual is -- my client, Ms.

4  Clement, is more prejudiced by delay of adjudication of this

5  matter and -- than the Debtor who's an ongoing business and

6  intends to be an ongoing business in this matter.

7              THE COURT:  Thank you.

8              MR. BROWN:  And, in support of that, I'm going to

9  submit exhibits of the complaints in California for the record,

10 and the order of September 30th.

11             THE COURT:  All right, have you marked them?

12             MR. BROWN:  Excuse me?

13             THE COURT:  Have you marked them?

14             MR. BROWN:  I will mark them.

15             THE COURT:  Okay.

16       (Pause in proceedings)

17             THE COURT:  All right, have you supplied copies to

18 opposing counsel?

19             MR. BROWN:  I shall.

20       (Pause in proceedings)

21             THE COURT:  Once counsel have had a chance to review

22 the documents, let me know whether there's any objection to

23 their admission.

24             MS. HENDERSON:  No objection, Your Honor.

25             THE COURT:  All right, they're admitted without

8

1  objection.

2          MS. HENDERSON:   Good morning, Your Honor, Janet

3  Henderson, Sidley Austin, on behalf of the Debtors.   As initial

4  proposition, Your Honor, we would submit that the motion can be

5  denied on the basis that the Plaintiff has not met -- the

6  Movant in this case has not met its prima facie burden of

7  establishing any of the elements for cause for relief from stay

8  in this matter.   There's been no evidence proffered of any sort

9  and, indeed, all we've seen is, really, what we have been

10  handed this morning, which, from a quick review, appears to be

11  a docket entry by the Court addressing certain discovery

12  disputes, and granting certain discovery which the Tribune

13  parties had opposed.   This is, by the way, in the Clement-1

14  action, the individual action.   That portion of this order is

15  on appeal, or I should say, more accurately, a writ has been

16  taken by the Tribune entities to the Appeals Court in

17  California, disputing this portion of the order.   The Order

18  also grants, in part, Tribune's motions to strike portions of

19  the complaint, and deals with certain other issues involving

20  statute of limitations, where Defendant's motion is denied.   So

21  it deals with a host of things, but it hardly goes to the

22  merits of any of the myriad claims that are brought in the

23  Clement-1 action.   Indeed, Your Honor, we believe that if your

24  -- if the Court were to consider the three factors that are

25  commonly looked at in Courts in this jurisdiction for

1  establishing cause, which are the issues of prejudice to the

2  Debtors in the first instance, by lifting the stay, balance of

3  the hardships, maintaining the stay, and, finally, to the

4  extent appropriate, or relevant, I think, is a fair reading of

5  the case, is looking to the likelihood of success on the

6  merits.  In both of these actions, the facts are that there is

7  currently no pending trial date, no pending discovery cut-off,

8  there has been no pretrial order entered in either action, no

9  final pretrial conference.  It is true that in the Clement-1

10  action, the individual action, the Tribune parties had filed a

11  Motion for Summary Judgment.  The bankruptcy intervened, no

12  responsive pleading has yet been filed, and, indeed, it is our

13  understanding that no discovery has been taken in the Clement-1

14  action by the Plaintiffs, save for one third party deposition.

15  I believe there's been document discovery, I don't want to

16  overstate that, but no depositions taken save for one third

17  party deposition.  And indeed, even the principal antagonist,

18  referenced in the Movant's papers with the Tribune, has not

19  been deposed to date.  Moreover, were the stay to be lifted and

20  these matters allowed to go forward beyond the additional

21  discovery that we presume that the Clement Plaintiff would have

22  to conduct, and I should add here, Your Honor, that it is our

23  understanding that virtually no discovery has occurred in

24  Clement-2, the punitive class action case.  Indeed, in that

25  case, class certification has not been decided.  I don't

1 believe there have been any dispositive motions addressed,

2 certainly no detailed findings of any kind made.  So that case

3 is certainly at a very, still, rather, nascent state.

4 Consequently, Your Honor, we think it clear that were the stay

5 to be lifted at this juncture, much would still have to occur

6 in both actions.  With respect to Clement-1, the Tribune would

7 -- may very well opt to provide expert testimony.  There will

8 be additional discovery that will be required.  As noted, the

9 Plaintiff has conducted virtually no depositions, I believe

10 only one third party deposition.  There is still significant

11 pretrial work to be done, and as there are no trial dates

12 pending as a result of the bankruptcy, trial dates would have

13 to be established and calendared again in what is, we are

14 advised, one of the busier dockets in the country, in the

15 Superior Court of California, and this could take months.  So

16 trial dates are indeterminate at this juncture.  So we think

17 that, in terms of the status of these proceedings, we should

18 say, at the outset, we don't think they come anywhere near to

19 approaching the Rexene or SCO factors that would be required to

20 be established in order to have the stay lifted.

21        In terms of prejudice to the Debtors, Your Honor, as we've

22 noted in other lift stay actions, there is clearly serious

23 prejudice to the estate to the extent that the estate is forced

24 to litigate prepetition claims in various far flung tribunals,

25 and incur costs in so doing, rather than obtaining the -- one

1  of the primary benefits of the automatic stay, which is the

2  ability, in the bankruptcy case, to consolidate and coordinate

3  claims resolution proceedings in the Bankruptcy Court.  In this

4  case, as in the other 13, or so, prepetition employment cases

5  that are pending around the country, there is no insurance.  So

6  dollar one is a -- represents exposure to the Debtors' estates.

7  By contrast, it is our understanding that the same counsel in

8  California, that represents the Plaintiff in the first action,

9  Clement-1, also represents the Plaintiff in Clement-2.  It is

10 further our understanding that the first action is being

11 handled on a contingency base.  We surmise that the second

12 action is being handled on a contingency base, and though --

13 and therefore the prejudice, in terms of the incurrence of cost

14 by the Plaintiff, is simply absent in this matter.  So as -- in

15 addition, Your Honor, to the prejudice from the incurrence of

16 expense costs on these matters before the Court today, there

17 are, as we've noted in the past, in the Gutman lift stay

18 action, in the Francisco lift stay action, and in the

19 declarations by general counsel of Tribune, Mr. Leventrit, and

20 by the treasurer, Mr. Rodden, there are significant outstanding

21 actions in respect of media related matters and personal injury

22 actions in addition to these employment actions that, if they

23 were allowed to go forward, would expose the estate to up to a

24 million dollars in many instances, in most instances, in

25 certain of these matters, to insurance deductible caps which

1   represent a dollar for dollar exposure to the Debtor up to $1

2   million.  So the additional harm, other than the discrete harm

3   imposed by lifting the stay with respect to these cases, is

4   magnified, Your Honor, by the very real possibility, if not

5   likelihood, that other Plaintiffs and other pending actions

6   with prepetition claims will come forward, seek to lift the

7   stay, and cause a virtual stampede of potential lift stay

8   motions in order to litigate prepetition claims in various fora

9   around the country, which would be -- which would impose a

10  sizeable burden on the Debtors' estate, and an unmanageable one

11  at that.

12       I think, Your Honor, if you look at a balancing of the

13  prejudice that we've just described to the Debtor, against the

14  -- any prejudice that could be suffered by the Plaintiffs here,

15  which is the second part of the Rexene or SEO test, it's

16  evident, as we've described, that there really isn't any

17  prejudice, and to the extent there is any nominal prejudice,

18  it's vastly outweighed by the potential prejudice to the

19  Debtors' estates in these cases.  As noted, counsel is -- for

20  the Plaintiffs is working pursuant to a contingency fee

21  arrangement, as we understand it.  These cases are nowhere near

22  ready for trial.  And, in addition to that, the Tribune

23  companies have already incurred, I believe, in the neighborhood

24  of $286,000 in prepetition costs and expenses on these cases.

25  We can only expect that, were the stay to be lifted, those

1    costs would continue, and given the litigious nature of even

2    the pretrial motion practice and discovery disputes that have

3    already arisen in this case, we can only imagine that those

4    costs would continue at an accelerated clip.

5         Finally, Your Honor, we have spoken to you in the past

6    about our ongoing discussions with the Creditors' Committee in

7    connection with an alternative dispute resolution process.

8              THE COURT:  I was going to ask about that.  Where do

9    you stand?

10             MS. HENDERSON:  We have continued to discuss the

11   contours of an ADR process with the Creditor Committee.  We are

12   now doing so in context of our first analysis of the claims

13   that have been filed since the bar date of June 12.  We are

14   just in the process now of going through and reviewing those

15   claims in order to get a better handle on the magnitude and the

16   impact and the types of claims that we have, and the impact

17   that they might have on these estates, and would -- and are

18   continuing to work closely with the Committee in context of

19   that analysis to determine what kind of claims resolution

20   process, what kind of ADR process, would be most appropriate in

21   connection with that.  Mr. Landtree, of our office, I think, is

22   primarily involved in that, but I know that this is an ongoing

23   effort, precisely because we do have over 6,000 claims, I

24   believe, filed in these cases, and over 100 of them are

25   litigation claims.  So these -- the magnitude is such that a

1  process -- I should say, a claims resolution process that

2  allows us to efficiently and effectively deal with these claims

3  is foremost on our priority list, and we would expect to know,

4  and certainly in the coming few months, how this is going to

5  shake out, and how we're going to deal with it.

6          THE COURT:  Well, the case is approaching a six-month

7  stay.  I wouldn't say that you've yet reached the extended stay

8  zone, but -- and the Debtor, I think, reasonably should expect,

9  as would potential lift stay movants, that earlier on the

10 likelihood of receiving relief is fairly limited.  I don't know

11 whether I've granted any relief in any of the lift stay motions

12 in this case yet, but we are getting to the time where, even if

13 it's pre-confirmation, the Debtor is going to have to make some

14 decisions about how it's going to deal with these things, if it

15 was just to continue to deflect the granting of relief.  I will

16 say, with respect to employment discrimination type claims,

17 they typically get tried elsewhere, if they get that far,

18 whether it's, you know, in a District Court here, assuming that

19 there is that right, without deciding, or in another forum, you

20 know, somewhere else.  I don't know what the Debtor intends

21 with respect to this particular action, although it strikes me

22 it's something that could very well end up being addressed

23 here, either in an ADR program, or as part of the claims

24 objection process, and, again, not deciding which necessarily

25 is appropriate.  Frankly, I see nothing compelling, here, which

1  would warrant the granting of relief.  I tend to agree with the

2  Debtor that, when I look at the <u>Rexene</u> factors, including the

3  likelihood of success, which I typically don't look at as a

4  very high threshold, none of the factors, at least based on the

5  record that's been made today, militate in favor of granting

6  the relief.  But I do want to put the Debtor on notice that it

7  is time that a program's going to have to be developed to

8  address these, even if it is pre-confirmation.  So I will deny

9  the motion for those reasons, but without prejudice, that, you

10  know, if the Debtor doesn't move along with some alacrity with

11  respect to developing such a program, it may be this movant may

12  come back to seek the relief at some future time.  All right,

13  but I --

14          MS. HENDERSON:  Very well, Your Honor.

15          THE COURT:  But I didn't mean to cut off the

16  Committee, but it did file a joinder, so --

17          MR. LANDIS:  Thank you, Your Honor.

18          THE COURT:  Yes.

19          MR. LANDIS:  I wanted to state for the record the

20  Committee's joinder, and Ms. Henderson really covered all the

21  bases that I would've covered, and that's why it was a joinder,

22  I suppose.  I'd add, maybe, to the record just one thing.  Your

23  Honor did ask about the ADR program and Ms. Henderson spoke

24  about the conversations with Mr. Landtree that have been

25  ongoing.  The claims bar date was, in fact, integral to knowing

1  the contours and the shape of any eventual ADR program.  Once

2  you see the claims, you can design something, I think, that

3  reflects the types of claims that you have.  Those

4  conversations are ongoing.  The Committee has had, and I think

5  has stated on the record, previously, its great interest in

6  instituting an ADR program for just this reason.  We don't want

7  to see a flood of lift stay litigation.  We appreciate that the

8  case has been in bankruptcy for, you know, almost six months.

9  This particular Lift Stay Motion, however, was filed in May, so

10  it's -- it hasn't had a long trip in bankruptcy, and, to the

11  extent this was going to be an evidentiary hearing in

12  connection with the Lift Stay Motion, we would agree that

13  nothing in the record really supported findings under the

14  Rexene factors.

15            THE COURT:  All right.

16            MR. LANDIS:  Thank you, Your Honor.

17            THE COURT:  Now, let me ask counsel to confer and

18  submit a Form of Order that reflects the ruling, and I'm

19  referring to the reasoning having been given by the Court on

20  the record today.

21            MS. HENDERSON:  We will.  Thank you, Your Honor.

22            THE COURT:  All right, thank you.

23            MR. BROWN:  Thank you, Your Honor.

24            MS. STICKLES:  Your Honor, Agenda Item 8 was the

25  Debtor's Motion to Assume Certain Leases and Nonresidential

1   Real Property.  A Certification of Counsel was filed with the

2   Court yesterday with respect to that motion.

3          THE COURT:  I've signed that order.

4          MS. STICKLES:  Thank you, Your Honor.  Agenda Items 9

5   and 10 are Mr. Beatty's motion.  Mr. Doss and Mr. Galardi are

6   here to address the Court.

7          THE COURT:  All right.

8          MS. STICKLES:  And Mr. Fredericks, my apologies.

9          MR. GALARDI:  Good morning, Your Honor.  For Mr.

10  Beatty, Gregg Galardi of Skadden Arps.  Your Honor, Your Honor

11  has two motions which I know Your Honor has already addressed

12  on a telephonic conference to some extent.  Our two motions

13  are, first, the motion to lift the automatic stay with respect

14  to the pending California action.  Your Honor had a telephone

15  conference and then, at the end of that conference, said it was

16  our motion and we could decide how to proceed on that.  I'll

17  take that up.  The --

18         THE COURT:  But I think I pretty much telegraphed --

19         MR. GALARDI:  You did telegraph it --

20         THE COURT:  -- how it was going to turn out.

21         MR. GALARDI:  -- and so -- and I think we've

22  telegraphed that it would probably be, at best, a preliminary

23  hearing, which is how we see it today.

24         THE COURT:  Yes, I mean, the oral argument on the

25  other motions is now scheduled for July 16th, and, frankly, my

1  initial inclination was simply to carry the Lift Stay Motion to

2  that day and time for Final Hearing, you know, pending the

3  outcome of the other matters.  And that's not a promise that

4  I'll decide it from the bench.

5           MR. GALARDI:  Understood, and I think the date is July

6  29th, Your Honor, as both counsel --

7           MS. HENDERSON:  28th.

8           MR. GALARDI:  -- and we and they --

9           THE COURT:  Oh.

10          MR. GALARDI:  -- looked at it at the same time.

11          MS. HENDERSON:  28th.

12          THE COURT:  Okay.

13          MS. HENDERSON:  28th.

14          MR. GALARDI:  It's -- excuse me?

15          UNIDENTIFIED SPEAKER:  It's July 28th.

16          MR. GALARDI:  28th, I'm sorry.

17          THE COURT:  July 28th, all right.  My mistake, sorry

18  about that.

19          MR. GALARDI:  July 28th.  And, Your Honor, we

20  understood that we think we've satisfied the grounds that Your

21  Honor just laid out in the other matter, but we understand that

22  Your Honor will -- this would be a preliminary hearing.  And it

23  does fit into what we've also, and Your Honor has already

24  indicated where your leanings were on this, but I would like to

25  try to convince Your Honor otherwise, and to provide an avenue

1   as we did in the papers.

2       Your Honor, we have moved to stay discovery in the

3   underlying Adversary Proceeding.  As -- the basis for that was

4   one, our concerns with proceeding with discovery, although

5   counsel for the Debtor has stated a number of times, "Well,

6   discovery's gonna have to go forward someplace," and we don't

7   disagree.  Although, I think we have a very unique fact and,

8   Your Honor, why we are concerned about discovery and why,

9   although we did confer with counsel, we can't agree to

10  discovery in the Adversary Proceeding, is one fundamental

11  issue, Your Honor, and Your Honor's mentioned, we take a very

12  principled approach on personal jurisdiction with respect to

13  Mr. Beatty.  We therefore think that any discovery order

14  essentially presupposes that this Court has personal

15  jurisdiction with respect to Mr. Beatty, because it would be

16  issuing an order to produce or not to produce documents.  So we

17  can't agree to the discovery in that context, unless Your Honor

18  rules against us, and we understand that there are a number of

19  cases in this Bankruptcy Court and other, that say that the

20  nation-wide service of process does, in fact, invoke personal

21  jurisdiction.  We happen to disagree, and if Your Honor is

22  inclined to rule on that issue, we're inclined to seek a

23  interlocutory appeal to the 3rd Circuit on that issue, because

24  it's just something that an Appellate Court is going to have to

25  eventually rule on.

1      Leaving that aside, Your Honor, we clearly acknowledge

2  that we made a motion to lift stay, and, Your Honor, though we

3  think it is in character different, and this is, I think, where

4  we disagree and could not reach an agreement with the Debtors'

5  counsel, on a Motion to Lift Stay, as Your Honor is well aware,

6  there are three factors.  There's the prejudice factor; we

7  think we've addressed that.  There's the balance of the harm,

8  and then there is that likelihood of success on the merits.

9  Your Honor, I think you just said, and I think the case law

10  supports, that it is not a particularly high threshold, and,

11  indeed, it is a summary proceeding, but that probably does

12  permit some limited discovery with respect to that matter, and

13  we don't deny that.  We have, in fact, submitted an affidavit

14  with respect to that.  We have suggested to the Debtor, and I

15  think the Debtors' proposed order goes broader than that, is

16  given that it is a summary proceeding, and since it is our

17  burden to carry the lift stay, we would be prepared to have

18  discovery, for example, Mr. Beatty's affidavit.  They can take

19  a deposition on that affidavit.  That seems within the scope.

20  Where we have a concern is if we're going to produce documents

21  to this Court as evidence for why the stay should be lifted,

22  they should get those documents.  But we don't think we opened

23  the gates to any and all documents and litigate the merits of

24  the Adversary Proceeding in the context of the automatic stay.

25  So our view of discovery, with respect to the automatic stay,

1   goes to those documents that we think we need to submit to

2   carry our burden come -- I guess it's July 28th, on the lift

3   stay, and not with respect to the underlying merits of the

4   Adversary Proceeding.  Now, clearly, those overlap, but we want

5   it to be clear that we may have a disagreement as to the

6   breadth of that discovery, given a summary proceeding, and we

7   have proposed an order that, I think, tried to contemplate what

8   Your Honor said, is if we're gonna go forward in discovery on

9   the automatic stay, that it would not prejudice us on our

10  arguments for Motion to Dismiss on the personal jurisdiction

11  issues, and yet permit them to have a full and fair hearing on

12  the 28th with respect to the automatic stay, and that would mean

13  summary discovery with respect to those documents and, perhaps

14  -- and Mr. Beatty, with respect to his Declaration that we

15  intend to rely on, in the context of the lift stay.  So if Your

16  Honor is inclined not to stay discovery, we would say stay

17  discovery in the underlying adversary proceeding, permit

18  discovery in the context of the automatic stay, and that

19  discovery should be tailored to the automatic stay, namely as a

20  summary proceeding, so as to be completed and be prepped for

21  the hearing on June 28th.  Those are our two motions, Your

22  Honor.  I don't know if you had any questions for me.

23           THE COURT:  I do not.

24           MR. GALARDI:  Thank you, Your Honor.

25           THE COURT:  Thank you.

 1            MR. DOSS:  Good morning, Your Honor, Mike Doss on

 2   behalf of Debtor Tribune Media Services, and I'll address both

 3   matters that Mr. Galardi has raised today, in light of the fact

 4   that he agrees that -- I believe I understood him to say he

 5   agrees with Your Honor's preliminary determination that the

 6   motion to lift the automatic stay is not right for this Court's

 7   final determination today, and that this is a preliminary

 8   hearing on that matter.  In --

 9            THE COURT:  Well, I think he's acknowledged it's a

10   preliminary hearing anyway.

11            MR. DOSS:  Fair enough, Your Honor.  On that, on the

12   motion to lift the automatic stay, under the local rules, under

13   4001, we believe it is appropriate for Your Honor, at this

14   juncture, to enter an order that relates to discovery on the

15   automatic stay motion, and with that in mind, we have prepared

16   a proposed order for the Court's consideration, which we have,

17   earlier today, provided to Mr. Galardi.  If I may, Your Honor,

18   may I approach the Court with a copy?

19            THE COURT:  Yes, you may.

20       (Mr. Doss approaches bench)

21            THE COURT:  Thank you.

22            MR. DOSS:  Your Honor, as you can see from this

23   proposed order on discovery on the Motion for Relief from the

24   automatic stay, we have -- I believe we've identified what

25   would be targeted in focused discovery that relates to matters

1  raised in Mr. Beatty's Declaration in support of that stay, by

2  requesting all documents in his custody or control relating to

3  the Dick Tracy television special that he details in some --

4  with some elaboration in his declaration, and as well, we would

5  request an order directing that Mr. Beatty, as well as his

6  business manager, who he identifies in his declaration as

7  having been involved in the work associated with the alleged

8  Dick Tracy special, to be -- submit themselves for deposition,

9  after we have received the documents at a mutually agreeable

10 time and place.  We believe that this is a measured and

11 appropriate level of discovery on the lift stay motion, and we

12 would ask that such an order be entered to avoid what we would

13 otherwise anticipate to be a series of disputes with Mr.

14 Galardi and his client over what they owe us in the context of

15 the lift stay motion.  I believe in our -- my discussions with

16 Mr. Galardi, that we have different visions about what

17 documents should be produced, what should not be produced, and

18 rather than leave us to -- Mr. Galardi and his client to pick

19 and choose those documents that they believe relevant to the

20 lift stay motion, we believe it's appropriate simply to ask for

21 all documents in its custody and control.  That is a simple

22 matter of collecting those materials and producing them, and we

23 think it's fair and appropriate.  If this order is entered on

24 the discovery in the lift stay, we believe there's a third way

25 available on the other motion, the motion for stay of

1    discovery, and I will propose the following:  We have, as Your

2    Honor knows, already proposed a stipulation to Mr. Beatty's

3    counsel that we thought would meet his concerns that discovery

4    in the Adversary Proceeding would undermine his case on the

5    pending Motion to Dismiss.  And we -- Mr. Galardi did not agree

6    that that stipulation was sufficient.  We are -- we've agreed

7    to disagree on that.  But we do believe that, if the discovery

8    that's provided in the lift -- proposed lift stay order, is

9    allowed, then Tribune would not need to pursue direct discovery

10   against Mr. Beatty for documents and interrogatories in the

11   Adversary Proceeding, pending Your Honor's hearing on the 28th.

12   We believe that there'll be substantial progress that could be

13   made on overlapping issues through discovery in the lift stay,

14   and we could suspend our efforts to pursue discovery against

15   Mr. Beatty himself.  We do not agree, however, that that

16   proposal requires any order that stays discovery.  There is

17   nothing before Your Honor, no Motion to Compel, no, otherwise,

18   any motion that requires Your Honor to direct Mr. Beatty to

19   take any action.  So we do not believe it's appropriate, at

20   this stage, to enter an order staying discovery that currently

21   is not obliging Mr. Beatty to take any action.  We recognize

22   that at your prior hearing, Your Honor -- excuse me, the

23   hearing on June 10th, you made the point, I believe, if I recall

24   it correctly, that Tribune was not precluded from issuing

25   discovery, but that, in light of the Motion to Stay, you did

1  not expect that you would hold Mr. Beatty to the time periods

2  that would otherwise apply.  And we can --

3          THE COURT:  That's what I said.

4          MR. DOSS:  And we understand that that could continue

5  to be in place, that as to Mr. Beatty himself, the time periods

6  would not apply, pending the July 28th hearing.  I would want to

7  have one clear exception so that there's no misunderstanding.

8  We do believe that third party discovery in the Adversary

9  Proceeding is appropriate and can proceed, and that would

10  entail, for example, perhaps subpoenas on third parties

11  identified in the recent Declaration from Mr. Beatty.  We do

12  not see how such third party discovery would, in any way,

13  implicate Mr. Beatty's personal jurisdiction challenge, and

14  would, in any way, require Mr. Beatty to take any action

15  whatsoever.  So we do view that that would be productive and

16  helpful to proceed with discovery on third parties, which is

17  another reason why we would oppose a general stay of discovery

18  in the Adversary Proceeding.

19      And to close, Your Honor, since I know we've been before

20  Your Honor on this matter before and you, I'm sure, have heard

21  this many times, but we have now made it absolutely clear that

22  the dispute over the Tracy rights is going to proceed in some

23  forum, and we also agree that those rights are valuable and

24  important.  And as the joinder by the unsecured Creditors'

25  Committee shows, we believe that the delay of the resolution of

1  that issue, the rights to the Tracy movie and television

2  rights, injures the Debtor as well as the Creditors in this

3  proceeding, and we should continue to -- or attempt to move the

4  ball forward during the pendency of the Motion to Dismiss,

5  recognizing that this matter needs to be resolved at some point

6  by some Court.  Unless you have further questions or wish

7  elaboration on our points, I will leave it at that.

8          THE COURT:  I'm looking, also, at the order that was

9  submitted on behalf of the Defendant here in connection with

10 the Motion to Stay Discovery.  And it seems to me that a

11 blending of the order that you just handed up and that one

12 would be appropriate, and by that, it offers specifically the

13 protection that the Defendant here is seeking in terms of

14 eliminating prejudice to his position about this Court's

15 jurisdiction, also provides that the discovery can be used in

16 either action, but also, again, does limit it to the lift stay.

17 I'm not prepared, at this point, to enter an order staying all

18 other discovery, but to kind of stay in the mode that I

19 described at the last discussion of this topic, it seems to me,

20 on the surface, based upon the Declaration that was submitted,

21 that the order that the Debtor suggests here, with respect to

22 the Lift Stay Motion, is also appropriate.  So that blending of

23 the two, it seems to me, at least for the moment, would be the

24 appropriate resolution of these two motions, but let me hear

25 from Mr. Galardi.

```
 1          MR. GALARDI:  I'll let Mr. Landis go first, Your
 2   Honor.
 3          THE COURT:  Okay, I'm sorry.
 4          MR. LANDIS:  Thank you, Your Honor, I'm --
 5          THE COURT:  It's nothing personal, Mr. Landis.
 6          MR. LANDIS:  Yeah, I didn't expect that it was.
 7   Again, Your Honor, Adam Landis for the Creditors' Committee.
 8   And an entree was given to me to stand up and support the
 9   Debtor in its efforts to move this forward.  I haven't seen the
10   orders, but we -- the Committee is well aware of the issues and
11   think, probably, if blending does make sense, the concern is
12   obvious.  We'd like to see this move forward.  They are
13   important rights.  But more than that, one thing is also clear,
14   that there's tremendous amounts of overlap between the
15   discovery on the Motion to Lift the Stay, and the discovery in
16   the Adversary Proceeding, particularly as you get to even what
17   Your Honor acknowledges is a low threshold with respect to
18   success on the merits.  Certainly there's going to have to be
19   some showing, and to the extent that that showing would
20   normally be subject to discovery in the Adversary Proceeding,
21   because that's where the meat is being -- proposed to be tried,
22   it's appropriate to develop it in the context of a Lift Stay
23   Motion where one of the factors will be success on the merits.
24   So, understanding that there is an issue as to personal
25   jurisdiction that I think the parties should be able to work
```

1  out and reserve, we'd like to see the discovery move forward to

2  the fullest extent possible, so the parties don't have to go

3  over the ground yet again in a second, third, or some other

4  jurisdiction or procedural posture.

5          THE COURT:  Understood, thank you.

6          MR. LANDIS:  Thank you, Your Honor.

7          MR. GALARDI:  Your Honor, although I think you've

8  given a preliminary ruling, I'll say it is preliminary, let me

9  address what I think are the concerns with the first paragraph.

10  Your Honor, again, we think this goes far broader than any lift

11  stay would be, because it is any and all documents related to

12  the television special.  And, again, the issue on the lift stay

13  will be whether we can carry our burden on a preliminary matter

14  to simply show the principal photography on a television

15  special goes, and this allows the gates to be opened on that

16  discovery in its fullest form, not in what I will call the

17  context of a Motion to Lift Stay.

18          THE COURT:  Well, but there's a dispute about what the

19  state of affairs is, and I -- while I agree with you that, as a

20  general proposition, lift stay matters are, indeed, summary

21  proceeding, sometimes it's necessary to have a fuller

22  evidentiary presentation in the face of a dispute, and the

23  dispute here is clear.  The Debtor is saying that your client

24  is not moving forward as required.  Your client is responding I

25  certainly am and, in the Declaration, details some of that.  So

1  I -- you know, at what point do I cut off discovery?  Now, what

2  actually may be admitted or used in the Evidentiary Hearing is

3  a separate matter and, as you know, discovery is almost always

4  much broader than that which is eventually presented to the

5  Court.

6          MR. GALARDI:  And I understand that, Your Honor.

7  Again, though I think this will be the back door, I understand

8  Your Honor can't cut it off right now.  There will still be

9  objections.  It says any and all documents related to a

10  television special.  That is far broader than what -- no matter

11  how broad the discovery is, the threshold is a lower threshold.

12  You will not be deciding, at least I can't imagine you will be

13  deciding, whether we've carried the burden or not carried the

14  burden in the litigation.  The issue is whether, based on the

15  evidence, only one of the factors is whether we have a

16  likelihood to success, that's a litigation -- that is a

17  position one with respect to a statutory provision, 108B, 108C.

18  It is also the complaint that's been answered.  It's also the

19  state of that litigation.  It is only one factor.  I understand

20  Your Honor's decision not to cut off the discovery now.  I just

21  want to -- I want you to understand that we think it is far

22  broader than what is required for an automatic stay litigation.

23          THE COURT:  I understand.  And I guess the other

24  thought I have is, I'd like to tell the parties what I'm

25  focusing on.  I don't want to get caught up in the trees

1  without -- and lose sight of the forest.  From the Court's

2  vantage point, I want to first decide, really, the jurisdiction

3  issue.  And then I want to decide, given a previously filed

4  piece of litigation, what generally is the appropriate thing to

5  do.  And then, based upon the individual circumstances of this

6  case, what's the appropriate thing to do.  And the lift stay,

7  in my mind, is a tag-along.  It's -- the relief that will

8  follow, will either involve a denial of the lift stay, or a

9  granting of it in some form.  But it's going to turn, I think,

10  frankly, on the other issues that the parties have already

11  raised, at least as a preliminary matter.  It's tied together,

12  and tactically, I guess I'll say both to the Movant and to the

13  Respondents here, I don't see this as a device to shortcut the

14  other process that's already been put in place.  And, by the

15  way, that's not a criticism of anybody.  But to put it in its

16  proper procedural place, this is going to follow decisions on

17  the others, from my standpoint.

18        MR. GALARDI:  And we've understood that since the

19  first time we mentioned this.  Your Honor, second, with respect

20  to -- and with no disrespect to counsel, we've had issues with

21  the transcript and what's been said on the transcript, so we do

22  think an order is important, staying discovery, with the

23  limitations, in the underlying Adversary Proceeding.  More

24  importantly, Your Honor, to -- for counsel to suggest that

25  third party discovery can go forward without prejudice to Mr.

1  Beatty's rights, is -- I think it's disingenuous, to say the
2  least.  We would have to defend -- go to -- not defend,
3  participate and go through that discovery.  I don't see that as
4  at all necessary to the lift stay.  So though you may say in an
5  order we're preserving personal jurisdiction and you can say
6  it's third party discovery, we do think the order has to be
7  broader to the third party discovery, because, to the extent
8  we're lifting the stay here, or to the extent we're allowing
9  discovery, it really goes simply to whether Mr. Beatty, even if
10  he has to produce any and all documents in his custody and
11  control, as they've suggested, it doesn't go to the third party
12  discovery, and we would ask that stay to be granted with
13  respect to discovery.  Again, Your Honor has not just a
14  personal jurisdiction issue, you have an improper venue issue
15  which, whether you want to say that goes to subject matter
16  jurisdiction or just jurisdiction in general, third -- Article
17  Three issues that have come up, to start the third party
18  discovery, at this point, seems premature as well.  So we would
19  ask for the broader stay to be all stay of all discovery in
20  that underlying litigation, discovery in the lift stay to the
21  extent Your Honor grants their first paragraph, but then we
22  would ask you to adopt our second and third paragraphs with
23  respect to the limitations, its use, and that, really,
24  discovery in the underlying Adversary Proceeding is, in fact,
25  stayed, but subject to the rights to parties to use it in

1  wherever the litigation goes forward, subject to Your Honor

2  ruling after the June 28th date.

3          THE COURT:  Well, so that I'm clear, let me ask this:

4  Would you consider the deposition of Jeff Bacon, third party

5  discovery?

6          MR. GALARDI:  Actually, Your Honor, I do believe that

7  is third party discovery.  It is of a third party non-

8  witnessing non-party in California.

9          THE COURT:  See, and --

10          MR. GALARDI:  Mr. Beatty's Declaration, I think, can

11  address it, and that's the sort of thing that I'd like to

12  address now before we have to come back to Your Honor on

13  discovery disputes.  We've identified witnesses.  Mr. Beatty

14  can say who it is.  We'd provide the documents.  They will have

15  the documents.  And, according to Your Honor, with respect to

16  their language, they will have any and all documents in his

17  custody and control.  His affidavit mentions licenses, permits,

18  skilled approvals and insurance.  Those are documents that I'm

19  presuming are put in play because of the Declaration, and I'm

20  referring to paragraph 5.  So if we're using those and that's

21  part of it, and that goes to, did we commence Principal

22  Photography on a television special?  I think that's

23  appropriate.  With respect to making us produce a non-party

24  witness in a lift stay, if they want to seek third party

25  discovery in an automatic stay, then they should do pursuant to

1   the rules.  If they want to do so -- they can't do it, in our

2   view, under the Adversary Proceeding, 'cause we do think that

3   should be stayed.  So they should not be able to short change

4   the rules through this order.

5          THE COURT:  Well, I suppose, from the Court's

6   standpoint, if I were to permit the deposition of Mr. Bacon, it

7   seems to me the order would provide that they'd be free to seek

8   it and leave him to whatever rights he might or might not have

9   --

10          MR. GALARDI:  And that --

11          THE COURT:  -- in connection with that.

12          MR. GALARDI:  That I have no objection to.  I can't --

13   I don't want to be ordered to produce a third party witness in

14   this.

15          THE COURT:  I normally wouldn't.  I normally wouldn't.

16          MR. GALARDI:  And, Your Honor, with respect to third

17   party discovery on the underling Adversary Proceeding, as we've

18   detailed, there is no reason to rush that, and as I said, we do

19   think Mr. Beatty's rights would be prejudiced, and it's the

20   same thing as proceeding on the litigation, and we think that's

21   - conceding there's personal jurisdiction, that the venue is

22   proper.  And though it may be expedient, Your Honor, it doesn't

23   overcome the jurisdictional issues that we've raised, and it is

24   unfair to Mr. Beatty to require him to participate in that.

25   Had they wanted that discovery, they could have lifted the

1  stay.  This is, as Your Honor has read by both sides, forum

2  shopping, we believe, on their part as the second filed action.

3  So we would ask you to stay all discovery, other than the

4  discovery in the context of the lift stay.  If Your Honor is

5  inclined to say any and all documents, we understand Your

6  Honor's ruling.  We don't agree with it.  To the extent it's

7  Mr. Beatty as a party, we understand it, and we would ask for

8  the protections that we've put in our proposed order with

9  respect to its use in the subsequent proceedings.

10            THE COURT:  All right, thank you.

11            MR. GALARDI:  Thank you.

12            THE COURT:  Briefly.

13            MR. DOSS:  If I could add, or respond to one point,

14  which is on the third party discovery, and the reason we do not

15  believe a general stay of discovery should be entered, Mr.

16  Beatty would have no obligation to undertake any efforts in

17  responding to subpoenas duces tecum on third parties for

18  documents.  In fact, the subpoenas would be issued by the

19  Courts local to them, and we believe that's --

20            THE COURT:  Look, I understand how the process works,

21  but the point that the Defendant is making here is that,

22  inevitably, in order to protect his interests, he would need to

23  be drawn into the process and participate.  And I -- there's

24  some merit to that argument.  All right, listen, given where

25  the parties are, I'm not going to ask them to fashion an order.

1   I will fashion my own.  My inclination is, as I said, to blend

2   the two.  I want to think a little bit about -- I will permit

3   the Debtor to move forward with -- I'll allow them to move --

4   to take discovery of Mr. Bacon, his deposition, specifically.

5   I won't order it, but I'll -- he'll be free to do it.  I want

6   to think a minute about what I want to do with the other --

7   with third party discovery, and my decision will be reflected

8   in the order, and one order will address both of the motions

9   that are here.

10          MR. GALARDI:  Thank you, Your Honor.  And, again, I

11  know it's said in the transcript, the federal -- the counsel

12  has made the view that there is no pending motion to compel

13  discovery.  Written requests under the discovery rules would be

14  due 30 days after service.  I know Your Honor said in the

15  record, "I'm not going to enforce that," but I don't want to --

16  I assume your order will address the fact that we do not have

17  to respond with a written response, waive privilege in all of

18  those issues, in that timeframe.  That's another reason why did

19  think it's important to get an order.  I think that date runs,

20  probably --

21          MR. DOSS:  July 2nd, I believe.

22          MR. GALARDI:  July 2nd, so there is some urgency to

23  making clear that, you know, at least those periods are stayed

24  so that we don't have to file a written response to discovery

25  request in that time period.

1          THE COURT:  I guess except with respect to discovery

2   in connection with the lift stay.

3          MR. GALARDI:  Thank you, Your Honor.

4          THE COURT:  All right, yes, I think that's

5   appropriate.  Okay, any other questions?

6          MR. DOSS:  No, thank you, Your Honor.

7          THE COURT:  All right.

8          MR. DOSS:  Thank you for your time.

9          UNIDENTIFIED SPEAKER:  Thank you.

10         MS. STICKLES:  Your Honor, the final item today is

11  Item 11, the pretrial conference, with respect to the Adversary

12  Complaint, Tribune Company vs. Neil.  Counsel for Tribune,

13  David Bradford, I believe is on the phone, as well as --

14         MR. BRADFORD:  Yes, Your Honor.

15         MS. STICKLES:  -- counsel for Neil.

16         THE COURT:  All right.

17         MR. BRADFORD:  Good morning, Your Honor.

18         THE COURT:  Good morning.

19         MR. BRADFORD:  Your Honor, the status of this matter

20  is that we had filed a declaratory action seeking a preliminary

21  injunction, seeking forms of stay relief with respect to the

22  Neil class action, now pending in Federal District Court in

23  Chicago, against mostly all of the former directors and current

24  directors of the Tribune Employee Benefit Committee, among

25  others.  At one point, the Tribune itself was a party to the

1   case.  At this point, pursuant to agreement between the parties

2   before Your Honor, Tribune has been dropped from the Chicago

3   case as a Defendant.  We have agreed to a briefing schedule on

4   a motion to dismiss the case in Chicago.  That briefing should

5   conclude toward the beginning part of August, and Judge

6   Palmeyer has agreed at that time to take the Motion to Dismiss

7   under submission.  It was our view that if that Motion to

8   Dismiss is granted, the case before Your Honor would become

9   moot.  If the motion was not granted, we would evaluate what

10  relief, if any, remains available in the Chicago action,

11  whether, under those circumstances, we believed it appropriate

12  or not, to proceed with a -- the pending declaratory judgment

13  action.  We would advise Your Honor at that time, and make a

14  determination of whether to continue to seek relief through the

15  declaratory action, or to dismiss that action.  So we would

16  respectfully ask, subject, obviously, to Your Honor's

17  determinations and any concerns and questions, to have this

18  matter set again for status sometime in or about late

19  September, at which point we'd be hopeful we could advise the

20  Court of the resolution of the Chicago matter, the Motion to

21  Dismiss the Chicago matter, that is, and the parties'

22  respective positions with respect to the continuation of the

23  matter before Your Honor.

24          THE COURT:  All right.

25          MR. DRISCOLL:  Good morning, Your Honor, Tom Driscoll

1  from Bifferato, LLC, on behalf of the Neil Plaintiffs.  Counsel

2  for the Debtors has accurately depicted the status of this

3  action enough.  The only thing that I would add, it's along the

4  lines of a reservation of rights for my clients, to the extent

5  that the Debtors' 12B(6) motion is not granted in Chicago and

6  the matter goes forward, and they seek to come back here before

7  Your Honor, with anything in the Declaratory Judgment action,

8  we, obviously, would like to reserve all our rights to respond

9  accordingly in that action.

10         THE COURT:  All right.

11         MR. BRADFORD:  And we agree with that.  That's the

12  spirit of our agreement, Your Honor.

13         THE COURT:  All right, how about status for September

14  29th at 1:30?

15         MR. BRADFORD:  Very good.

16         MR. DRISCOLL:  That is fine, Your Honor.

17         THE COURT:  Okay, and we can do that again by

18  telephone if there's nothing substantive to address.  Okay,

19  anything further --

20         MR. BRADFORD:  Thank you, Your Honor.

21         THE COURT:  -- on that matter?

22         MR. BRADFORD:  No, Your Honor.  I would just indicate

23  that if we have an indication from Judge Palmeyer that she's

24  ruled the following week subsequent to the September 29th

25  status, we may come back and ask to have that status date moved

39

1  back a week or two, just so we have the benefit of that

2  decision.  But I think that's an appropriate date and, I'm

3  optimistic, we should have the ruling by then.

4          THE COURT:  All right, thank you.

5          MR. DRISCOLL:  Thank you, Your Honor.

6          THE COURT:  Anything further for today?

7          MR. BRADFORD:  No, Your Honor.

8          MS. STICKLES:  No, Your Honor.  Thank you very much

9  for your time.

10         THE COURT:  All right, thank you all.

11         MR. BRADFORD:  Thank you, Your Honor.

12         THE COURT:  That concludes this hearing.  Court will

13 stand in recess.

14         ALL:  Thank you, Your Honor.

15     (Court adjourned)

16

17                     CERTIFICATION
18 I certify that the foregoing is a correct transcript from the
19 electronic sound recording of the proceedings in the above-
20 entitled matter.
21
22 *Lewis Parham*                          6/29/09
23 _____        _____
24 Signature of Transcriber              Date