# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: July 28, 2009 at 1:00 p.m. EDT**<br>**Objection Deadline: July 21, 2009 at 4:00 p.m. EDT** |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 365 AND 363 AUTHORIZING DEBTOR TRIBUNE MEDIA SERVICES, INC. TO ASSUME CERTAIN PREPETITION LOCAL ADVERTISING SALES AGREEMENTS AND TO ASSIGN PREPETITION AND POSTPETITION LOCAL ADVERTISING SALES AGREEMENTS TO ADVANTAGE NEWSPAPER CONSULTANTS INC.

Debtor Tribune Media Services, Inc. ("TMS") hereby moves this Court (the

"Motion") for entry of an order, pursuant to sections 365 and 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Rules"), authorizing the assumption of certain prepetition local advertising sales agreements entered into by TMS and various third party newspapers and the assignment of prepetition and postpetition local advertising sales agreements to Advantage Newspaper Consultants Inc. ("Advantage"), in accordance with the terms of that certain Contract Assignment and Revenue Share Agreement (the "Assignment Agreement") between TMS and Advantage, a copy of which is attached hereto as Exhibit A. In further support of the Motion, TMS respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 365(a), 365(f), and 363(b) of the Bankruptcy Code and Rules 6006(e)(1) and (e)(3) of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6. Tribune Company ("Tribune"), a debtor in the above-captioned cases, is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business divisions: (i) publishing and (ii) broadcasting and entertainment. TMS, a subsidiary of Tribune and part of the publishing division, syndicates entertainment listings and content, and provides industry-leading databases of television, movie, and celebrity information to thousands of companies that in turn serve millions of entertainment consumers through print, broadcast, and interactive media. TMS also syndicates news and features, such as advice columns, political commentary, cartoons, and puzzles.

7. In addition to these core business functions, TMS offers advertising sales support and marketing services to local newspapers—generally in smaller markets—directed at selling local advertisements in the newspapers' television listings pages and weekly TV-listings books. TMS is party to numerous prepetition and postpetition[2] local advertising sales agreements with such newspapers (collectively, the "LAS Agreements"), which, inter alia, provide that TMS's dedicated sales representatives will coordinate with the newspapers' sales staff and apply their knowledge of local publishing markets to identify potential advertisers and to conduct sales presentations. In this way, TMS assists the local newspapers that subscribe to its entertainment listings data to convert existing entertainment content into advertising revenue. The LAS Agreements follow standard terms: TMS's sales representatives undertake an "ad sales effort" to sell one year of advertisements for a specified number of inches in the newspapers'

---

[2] Certain of the LAS Agreements to which TMS is a party were entered into postpetition (the "Postpetition LAS Agreements"), in the ordinary course of TMS's business pursuant to 11 U.S.C. § 363(c)(1).

TV-listings books on behalf of the local newspaper customer, in return for a weekly fee or a percentage of revenue. The fees paid by the local newspaper customers to TMS under the LAS Agreements generally range between $225 and $750 per week over the course of the one-year contract term.

8. Newspaper advertising sales across the industry have been affected by recent economic trends, and this is particularly true of the local advertising sales business, given the client base of small newspapers, its dependence on small, local retail advertisers, and a trend of newspaper expense-reduction measures focused on TV-listings books. In light of these trends, TMS has been exploring financial alternatives for this business. To that end, over the past several months, TMS has engaged in discussions with Advantage, a leading newspaper consultancy, to enter into agreements that involve the assignment of TMS's local ad sales contracts in exchange for favorable financial considerations. Advantage operates a sales representation business in local newspaper markets and offers a comprehensive TV-listings book local ad sales program similar to that of TMS. As a result of these discussions, TMS and Advantage negotiated and executed the Assignment Agreement.[3] Pursuant to the Assignment Agreement, TMS will assign all of the LAS Agreements to Advantage, with Advantage assuming all operational responsibilities under the LAS Agreements. TMS believes that this transaction is the best financial alternative to maximize operating cash flow for its local ad sales business.

9. Entry into the Assignment Agreement will allow TMS to focus on its core business of generating and distributing entertainment listings data and syndicating news and

---

[3] In addition to the Assignment Agreement, TMS and Advantage negotiated and executed a Sales Representation Agreement, in TMS's ordinary course of business, pursuant to 11 U.S.C. § 363(c)(1). Under the Sales Representation Agreement, Advantage will exclusively represent TMS's listings data to Advantage's newspaper market customers, which TMS anticipates could be worth an incremental $52,000 of operating cash flow in its core entertainment listings data business over the next three years.

4

features content. The Assignment Agreement will enable TMS to maximize operating cash flow from the local ad sales business by eliminating operating costs associated with the business, while still allowing TMS to retain a portion of the revenue earned under the LAS Agreements. Specifically, over the next three years, TMS will retain 15% of the gross revenue derived from the LAS Agreements as well as subsequent local ad sales agreements Advantage enters into with former TMS customers, which TMS estimates will result in average operating cash flow of approximately $151,000 per year or $453,000 in the aggregate. In addition, Advantage will pay TMS a one-time sales commission of 12% of first-year revenues for approximately 14 markets in which TMS has agreements to conduct local ad sales efforts, but has not yet completed those sales efforts. TMS estimates these commissions will generate operating cash flow of approximately $34,000 in 2009. Lastly, entry into the Assignment Agreement creates a valuable new strategic partner for TMS's core data business.

10.    In order to consummate the Assignment Agreement, TMS must first assume fifty-four (54) of its prepetition local advertising sales agreements, a list of which is attached hereto as <u>Exhibit B</u> (the "<u>Prepetition LAS Agreements</u>"). Upon assumption of the Prepetition LAS Agreements, TMS will begin assigning all of the LAS Agreements, comprising the fifty-four (54) assumed Prepetition LAS Agreements and thirteen (13) Postpetition LAS Agreements, to Advantage.[4] TMS will assign the LAS Agreements at predetermined dates over the next several months as set forth in Exhibit A to the Assignment Agreement. A list of all of the LAS Agreements to be assigned to Advantage is attached to this Motion as <u>Exhibit C</u>.

---

[4] Nothing contained in this Motion is intended to alter any provision of the Assignment Agreement or the LAS Agreements. In the event of a discrepancy between the description of such Agreements in this Motion and their actual terms, the terms of such Agreements shall control.

5

## RELIEF REQUESTED

11. By this Motion, TMS seeks entry of an order authorizing and approving the assumption of the Prepetition LAS Agreements pursuant to section 365(a) of the Bankruptcy Code and the assignment of all LAS Agreements to Advantage pursuant to sections 365(f) and 363(b) of the Bankruptcy Code and in accordance with the terms of the Assignment Agreement. TMS also respectfully requests that the Court authorize it to assume the multiple Prepetition LAS Agreements and assign the multiple LAS Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(1) and (e)(3).

## BASIS FOR RELIEF

12. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)). Section 365(f) of the Bankruptcy Code provides that a debtor may assign an executory contract or unexpired lease if such contract or lease is assumed in accordance with the provisions of section 365 and provides adequate assurance of future performance by the assignee. 11 U.S.C. § 365(f)(2).

13. The standard for reviewing a debtor's decision to enter into a transaction other than in the ordinary course of its business is the same as the standard for authorizing a debtor to assume and assign an executory contract. Both are proper if done in the reasonable exercise of the debtor's business judgment. See, e.g., In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ionosphere Clubs, Inc., 100 B.R. 670, 673

(Bankr. S.D.N.Y. 1989) ("[T]he business judgment rule is the standard to be applied under either scenario."). See also In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test"); In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease . . . the debtor must establish that the decision is one made in its sound business judgment.").

        14.    Under the business judgment test, the debtor is required to proffer a reason as to why, in its business judgment, the proposed action at issue benefits the debtor's estate and then articulate the basis for that determination. See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Lionel Corp., 722 F.2d at 1071 (noting that the debtor bears the burden of establishing that a valid business purpose exists for use of estate property in a manner outside the ordinary course of business). Once the debtor articulates a valid business justification for the proposed action, it is presumed that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). In other words, the application of the business judgment standard essentially shields the debtor's management from judicial second-guessing and mandates that "a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion." Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985); Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching); In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003);

In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

15. Based on the size and scope of the transaction, TMS believes the entry into the Assignment Agreement would be within its ordinary course of business. However, given that the assumption and assignment of the Prepetition LAS Agreements already requires Bankruptcy Court approval pursuant to section 365 of the Bankruptcy Code, out of an abundance of caution, TMS seeks Court approval herein for the assignment of the Postpetition LAS Agreements pursuant to section 363(b) of the Bankruptcy Code and in accordance with the terms of the Assignment Agreement.

16. TMS believes, in its business judgment, that the assumption of the Prepetition LAS Agreements and the assignment of all LAS Agreements to Advantage are in the best interests of its estate and creditors. As noted above, the Assignment Agreement is the product of arms' length negotiations with Advantage, designed to maximize operating cash flow for TMS's local ad sales business over the remainder of the LAS Agreements' terms. Entry into the Assignment Agreement will allow TMS to focus on its core entertainment data and syndication business while reducing operating expenses through the elimination of costs associated with servicing the LAS Agreements. Specifically, over the next three years, TMS is projected to realize average operating cash flow of approximately $151,000 per year or $453,000 in the aggregate as a result of the transaction described herein. In addition, Advantage is expected to pay estimated commissions of approximately $34,000 in 2009. Lastly, entry into the Assignment Agreement creates a valuable new strategic partner for TMS's core data business.

TMS has apprised both the Committee and the steering committee for the Debtors' prepetition loan facilities of the relief requested herein.

17.     TMS has met all of the requirements for the assumption of the Prepetition LAS Agreements. Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations – by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993). The Prepetition LAS Agreements are agreements under which TMS receives weekly fees from the local newspaper counterparties, and thus there are no amounts owing by TMS under any of the Prepetition LAS Agreements. TMS is aware of no other non-monetary defaults under any of the Prepetition LAS Agreements. The LAS Agreements contain no restriction on assignment by TMS to third parties. Accordingly, section 365(f)(1) is not implicated by the relief requested in this Motion and, in addition, none of the Prepetition LAS Agreements are executory contracts of the type described in section 365(c) of the Bankruptcy Code.

18.     TMS is familiar with Advantage's reputation as an industry leader in newspaper consulting and in providing local ad sales support to newspapers. Founded in 1996, Advantage's primary business is local ad sales for TV-listings books; Advantage's sales staff is located throughout the country, currently serving over 240 daily newspapers in 48 states. Advantage's clients include several prominent newspaper companies, including CNHI, Gannett, Freedom, Lee Enterprises, Media News Group, Morris Communications, Horizon Publications, Media General, Inc., and Stephens Media Group. TMS believes that Advantage has the staff, resources, and familiarity with local markets to provide continuing service under the LAS

Agreements. Accordingly, TMS believes that the counterparties to the LAS Agreements are adequately assured of Advantage's ability to perform its obligations under the LAS Agreements.

19. TMS also respectfully requests that the Court authorize it to assume the multiple Prepetition LAS Agreements and assign the multiple LAS Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(1) and (3). Bankruptcy Rule 6006(e) limits the ability of a debtor to "seek authority to assume or assign multiple executory contracts or unexpired leases in one motion unless (1) all executory contracts or unexpired leases to be assumed or assigned are between the same parties or are to be assigned to the same assignee; (2) the trustee [or debtor in possession] seeks to assume, but not assign to more than one assignee, unexpired leases of real property; or (3) the court otherwise authorizes the motion to be filed." Fed. R. Bankr. P. 6006(e).

20. Fifty-four (54) prepetition agreements will be assumed and sixty-seven (67) prepetition and postpetition agreements will be assigned pursuant to this Motion. Each of the LAS Agreements will be assigned to Advantage and each has as its subject matter the advertising sales support and marketing services provided by TMS to local newspapers. Therefore, the interests of judicial economy are best served by seeking the relief requested herein in this one Motion. TMS has complied in all respects with the provisions in Rule 6006(f), pertaining to omnibus motions to assume and assign multiple executory contracts.

## NOTICE

21. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) Advantage; (vi) all counterparties to the LAS Agreements; and

(vii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

22. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, TMS respectfully requests that the Court enter an order authorizing and approving assumption of the Prepetition LAS Agreements and the assignment of all LAS Agreements to Advantage, pursuant to sections 365(a) and (f) and 363(b) of the Bankruptcy Code and in accordance with the terms of the Assignment Agreement, and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
July 8, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION