# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 1670, 1678 and 1680**<br>**Hearing Date: July 16, 2009 at 3:30 p.m. EDT** |

## DEBTORS' OBJECTION TO THE MOTION OF PPF OFF TWO PARK AVENUE OWNER, LLC FOR AN ORDER COMPELLING PAYMENTS

Tribune Company ("Tribune") and most of its wholly owned subsidiaries, each of

which is a debtor and debtor in possession in the above-captioned chapter 11 cases (each a

"Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the

motion of PPF OFF Two Park Avenue Owner, LLC (the "Landlord"), for an order compelling

Debtors to make certain payments, filed on June 30, 2009 [Docket No. 1670] (the "Motion") as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

supplemented on July 2, 2009 [Docket No. 1680] (the "Supplement").[2] In support of this

Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Motion should be denied because each of the Landlord's arguments

fails as a matter of law.  Specifically, the Landlord's demand for July rent fails because Tribune

validly rejected the Lease as of June 30, 2009, and under prevailing case law, the Debtors cannot

be charged an additional $406,185.72 in monthly rent for space they cannot access based on

either the continued presence of subtenants in the space or the fact that the space was not left

"broom clean."  In addition, Landlord's demand effectively to increase Tribune's rent by

$61,000 per month during the postpetition, pre-rejection period does not succeed because

Tribune is entitled to setoff amounts owed to it by Landlord under both the plain terms of the

Lease and section 558 of the Bankruptcy Code.  Landlord's demand for payment of real estate

taxes fails because such taxes only became due and payable after the Lease was already rejected,

while Landlord's demands for attorney's fees and costs should be denied because the Debtors

have acted solely in accordance with the terms of the relevant documents and applicable law.

The Debtors address each of Landlord's arguments in turn.

## FACTS

2.      The Debtors believe there is no dispute between the parties as to the

relevant facts.  On September 24, 2001, Tribune and Two Park Company, the predecessor to the

Landlord, entered into a letter agreement (the "Letter Agreement") to settle a dispute between the

parties concerning a sublease respecting certain space that had been leased to Tribune.  Of

relevance to the instant dispute, the Letter Agreement provided that the subleased space would

---

[2] To the extent that the Motion seeks to recover money from the Debtors, the Landlord must commence an adversary proceeding rather than proceed by motion.  See Fed. Rules Bankr. P. 7001(1).  Notwithstanding this, the Debtors address the substance of the Landlord's arguments in this Objection.

be severed from the main lease between the parties, and that thereafter the sublease income would be divided between Tribune and Landlord's predecessor. Pursuant to Section 2 of the Letter Agreement, Landlord's predecessor was to be paid the entire sublease income directly from the subtenant, and then Tribune would offset its allocable percentage of that sublease income against the monthly rent owed by Tribune under the lease. See Letter Agreement § 2 ("[i]t is agreed that the aforesaid payments owed by Landlord to Tribune *shall be offset by Tribune* against the monthly installments of fixed rent and additional rent otherwise owed by Tribune to Landlord…"). The Letter Agreement also specifically contemplated that this arrangement would be continued under a subsequent lease between the parties. See id.

3.       Tribune and the Landlord subsequently entered into that certain Restated Agreement of Lease, dated September 30, 2002, as amended by that certain First Amendment of Lease dated January 24, 2003, and that certain Second Amendment of Lease, dated June 7, 2004 (collectively, the "Lease"). The Lease expressly permits Tribune to continue the offset described in Section 2 of the Letter Agreement on an ongoing basis. Specifically, section 1.1 of the Lease provides in part, that "Tenant agrees to pay [the rent]…on the first (1st) day of each calendar month during the Term commencing on the Commencement Date…without any set-off, offset, abatement or deduction whatsoever *except as otherwise provided herein and in Section 2 of the Letter Agreement.*" (emphasis added). As Landlord notes in the Motion, the Lease provided that the Letter Agreement remained in full force and effect. See Motion at ¶ 7 (quoting Lease at § 37.10).

4.       On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On June 5, 2009, this Court entered an Amended Order Authorizing Debtors' Fourth Omnibus Motion to Reject

Certain Leases of Nonresidential Real Property [Docket No. 1629] (the "Rejection Order").  The

Rejection Order authorized the rejection of several leases, including the Lease.  The Rejection

Order expressly provided that the Lease was rejected as of "the later of (i) June 30, 2009, or (ii)

the date the Debtors vacate such premises."  See Rejection Order at 2.

## ARGUMENT

**A.**   **Tribune is Not Obligated to Pay July Rent**

> **i.   Tribune's Abandonment of Property Does Not Constitute a Failure to Surrender Possession of the Premises**

5.       Tribune vacated the Premises on June 29, 2009 and rejected the Lease

effective as of June 30, 2009.  See Hackett Declaration at ¶ 3; Rejection Order at 2.

Accordingly, Tribune is not obligated to pay the July Rent.  Notwithstanding the plain language

of the Rejection Order, the Landlord contends that Tribune has not vacated the Premises because

Tribune allegedly left certain fixtures and other items, such as cubicles, desks, chairs and tables,

at the Premises.  See Motion at ¶ 11.

6.       The Landlord's position is unsupported in the case law.  Courts have made

clear that a debtor's failure to remove abandoned personal property on leased premises does not

amount to a failure to surrender possession that would preclude rejection even where the lease

contains clean-up obligations.  See, e.g., In re Ames Dept. Stores, Inc., 306 B.R. 43 (Bankr.

S.D.N.Y. 2004) (authorizing rejection even though the debtor left behind abandoned personal

property and was in default of clean-up obligations); In re National Refractories & Minerals

Corp, 297 B.R. 614 (Bankr. N.D. Cal. 2003) (same); see also In re Unidigital, 262 B.R. 283

(Bankr. D. Del. 2001) (permitting the debtor's abandonment of a printing press in leased

premises and confirming rejection).

7.      Most analogous to the situation at hand is <u>Ames</u>, in which the court was asked to decide, <u>inter alia</u>, whether the debtor was required to remove property that it had abandoned (principally shelving, racks, bins and other trade fixtures), in order to (a) consider the premises surrendered to the landlord and (b) as a pre-condition to rejection.  In coming to the decision that the debtor was not required to remove the property from the premises, the court reasoned that "it would frustrate the entire purpose of rejection, if in order to reject and thereby be relived of a burdensome executory contract, the debtor were required, as a condition to doing so, to comply with one of the very aspects of the agreement that is burdensome." <u>Ames</u>, 306 B.R. at 52.  The court similarly rejected the landlord's argument that the debtors' abandonment of personal property amounted to a failure to surrender possession which would preclude rejection stating that (a) "[s]ection 365 does not, by its terms, require the surrender of occupancy before or as a condition to reject," and (b) there was no holdover tenancy because it was without dispute that the debtor had "abandoned the property in question," and "was not seeking to store property in which it had a continuing interest." <u>Id.</u> at 53.

8.      Exactly the same situation is presented here.  Tribune has no intention to retain, store or otherwise use any property that has been left on the Premises.  <u>See</u> Hackett Declaration at ¶ 5.  Therefore, while Tribune does not concede that the abandonment of the Property is not in compliance with the terms of the Lease, even if Tribune has not fully complied with the provisions of the Lease regarding the vacation of the Premises, Tribune vacated the Premises and rejected the Lease on June 30, 2009.[3]

9.      Furthermore, Tribune requested, but was denied, access to the Premises by the building's management on June 30, 2009, apparently due to the fact that Tribune's security

---

[3] Even if this Court's order had not made the rejection effective as of June 30, 2009 – which it did – the Lease would have been rejected by operation of law on July 6, 2009 – 210 days after the Petition Date.  <u>See</u> 11 U.S.C. § 365(d)(4).

system had already been dismantled. Though Tribune submits that the Premises were properly vacated as of the time of such request, the denial of access to the Premises by the Landlord's building management prior to the expiration of the time in which the Debtors were ordered to vacate the Premises made it impossible to remove any items from the Premises. See Hackett Declaration at ¶ 4. None of Tribune's personnel have entered the Premises or utilized the Premises in any way subsequent to June 29, 2009. See id at ¶ 3.

10.     The Landlord further argues that "[e]ven if [Tribune] somehow effectively rejected the Lease as of June 30, 2009, [Tribune] still is obligated to pay for the period [Tribune] holds over the Premises as an administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code." See Motion at ¶ 17, n.5. This argument fails for several reasons. First, as stated above, Tribune has validly rejected the Lease and is no longer using the Premises.

11.     Second, the cases cited by the Landlord are either supportive of Tribune's position or inapposite to the current facts. The Landlord cites In re Garden Ridge Corp., 323 B.R. 136 (Bankr. D. Del. 2005) for the proposition that "to establish its entitlement to an administrative expense claim, Landlord need only establish that [Tribune] is using the Premises." See Motion at ¶ 17, n.5. Unlike the current facts, however, the debtor in Garden Ridge had not yet rejected the lease in question and was continuing to use the premises in its ordinary course of business. See Garden Ridge, 323 B.R. at 136.[4]

---

[4] The Landlord also cites In re DVI, Inc., 308 B.R. 703 (Bankr. D. Del. 2004) presumably for the principle that Tribune continues to use the Premises as a holdover tenant. See Motion at ¶ 17, n. 5. However, the parenthetical to the citation suggests that the Landlord was citing DVI, Inc. for the principle that "[t]here is a presumption that the lease rate is the fair market value unless there is evidence to the contrary." Id. If the Landlord intended the citation to support the former principle, the facts of DVI, Inc. are easily distinguishable from the facts of this case as the debtor in DVI, Inc. used the premises to store personal property, retained the keys to the premises, periodically showed the property to potential buyers, and eventually sold the property – all of which conferred a benefit upon the estate. In re DVI, Inc., 308 B.R. at 706, 708. Here, Tribune has surrendered possession of the Premises to the Landlord and any property left in the Premises.

12.     The Garden Ridge court applied the standard test for determining whether

a creditor is entitled to an administrative expense claim under section 503(b)(1)(A): there must

be (1) "a post-petition transaction between the creditor and the debtor; and (2) the estate must

receive a benefit from the transaction." Garden Ridge, 323 B.R. at 142.  Here, any postpetition

transaction between the Landlord and Tribune ended with the rejection of the Lease.  See Ames

306 B.R. at 56-57.  Even more clearly, Tribune is unquestionably no longer using the Premises

and, accordingly, the Premises confer no benefit on the Debtors' estates.  The Landlord cannot

be entitled to an administrative expense claim on these facts.

13.     Furthermore, on facts similar to those here, it is well established that costs

incurred for removing abandoned property are claims associated with the rejection of the lease

and are deemed to be prepetition claims.  See In re Unidigital, 262 B.R. 283 (Bankr. D. Del.

2001) (denying landlord's request for administrative expense status for costs incurred for clean-

up); Ames, 306 B.R. 43 (finding that landlord's costs for cleanup of premises after rejection do

not warrant administrative expense status under section 503(b)(1)(A) or 365(d)(3));  National

Refractories, 297 B.R. 614 (same).  This was specifically addressed in Ames as well as by a

court in this circuit in Unidigital, with both courts concluding that "all claims associated with the

rejection of [a] lease are deemed prepetition claims" and that "the cost of cleaning the landlord's

premises does not benefit the estate." Unidigital, 262 B.R. at 288-89; Ames, 306 B.R. at 55-56.

Even where the cost of removing the abandoned property is costly and onerous, courts have

stated that the landlord is not entitled to an administrative expense claim for such costs.  No case

can be clearer on this point than this Court's decision in Unidigital, where Judge Walrath found

that the debtors abandonment of a printing press that required the landlord to employ a licensed

plumber, drain chemicals, and ultimately remove the printing press through the windows by a

crane, did not confer a benefit on the estate and therefore did not warrant an administrative

expense claim by the landlord.  See Unidigital, 262 B.R. at 289

### ii.   Possession by Subtenants Does Not Constitute a Failure of the Debtor to Surrender Possession of the Premises

14.     Citing no law, the Landlord next argues that the Debtors are still in

possession of the Premises because the Tribune's former subtenants are still occupying the

Premises.  While it is true that "when a lease is deemed rejected pursuant to § 365(d)(4), any

subleases under the primary lease must also be deemed rejected since the sublessee's rights in

the property extinguish with those of the sublessor," a debtor has no obligation to evict a

subtenant in order for the premises to be considered vacated.  See Chaltos Systems, Inc. v.

Kaplan, 147 B.R. 96, 100 (D. Del. 1992), aff'd 998 F.2d 1005 (3d Cir. 1993) (finding that the

debtor properly surrendered property when it notified landlord of order deeming primary lease

rejected, without need to dispossess subtenant); see also In re Kmart Corp., 290 B.R. 601, 607

(N.D. Ill. 2002)  (finding that the occupancy of a debtor's subtenants of a rejected property did

not make the bankruptcy estate liable for holdover rent).  Furthermore, "[f]ollowing rejection of

the Lease, [a debtor] ha[s] no statutory, contractual or possessory rights in the [p]roperty and,

therefore [a debtor] ha[s] no basis for an eviction action against [the subtenant]." Chaltos

Systems, 147 B.R. at 100.   Once a lease and sublease have been rejected, any dispute between

the landlord and the subtenant no longer involves the debtor's estate and therefore the landlord

must proceed directly against the subtenant.  See id. (holding that the landlord should have

proceeded directly against the subtenant instead of the debtor); In re Dial-A-Tire, 78 B.R. 13, 16

(W.D.N.Y 1987) (holding that once the lease and sublease have been deemed rejected, the

bankruptcy estate "has no meaningful interest in the disposition of the [p]remises" and the

resolution between landlord and subtenant "involves purely state law questions having no necessary relation to the bankruptcy proceeding").

**B.**      **The Debtors Do Not Owe Real Estate Taxes**

15.      In its Motion the Landlord argues that Tribune is required to make a semiannual payment of real estate taxes in the amount of $292,140.57 (the "Real Estate Taxes"). However, the obligation to pay the Real Estate Taxes arose post-rejection and therefore is properly the obligation of the Landlord and not Tribune. The Landlord is not entitled to *any* type of claim on the Real Estate Taxes let alone an immediate payment as an administrative claim. As conceded by the Landlord in the Supplement, pursuant to section 27.2(B) of the Lease, the Real Estate Taxes did not become due until July 1, 2009. See Supplement at ¶¶ 1-2. Under the Third Circuit's "billing date" approach to section 363(d)(3) a debtor is not liable for payment obligations under a lease until such time as the legally enforceable duty to perform occurs. See In re Montgomery Ward Holding Corp., 268 F.3d 205 (3d Cir. 2001) (holding that "an obligation arises under a lease for the purposes of § 365(d)(3) when the legally enforceable duty to perform arises under the lease"); see also In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir. 2000) (stating that "if the debtor had rejected the lease effective November 30, 1997, rather than December 2, it would not have been obligated to pay rent for December under 11 U.S.C. §365(d)(3)"); In re R.H. Macy & Co., 152 B.R. 869 (Bankr. S.D.N.Y. 1993), aff'd, 1994 WL 482948 at *13. This approach follows the clear and unambiguous construction of section 365(d)(3) requiring a debtor to timely pay obligations under a lease that have arisen postpetition but pre-rejection. See Montgomery Ward, 268 F.3d at 211-12 (concluding that section 365(d)(3) is unambiguous and requiring the payment of amounts that were due under the lease which "arose post-order and prior to rejection."); Urban Retail Props. v. Lowes Cineplex Entmt. Corp., 2002 WL 535479 (S.D.N.Y. Apr. 9. 2002) (finding that the term "arising" means obligations

which actually come due during the period between the filing of the petition and the date of

assumption or rejection); In re Garden Ridge Corp., 323 B.R. at 140 (stating that section

365(d)(3) "was enacted to require trustees to perform the debtor's obligations under the terms of

a lease *pending the assumption or rejection of the lease*." (emphasis added)).

      16.    In the present case, it is clear that Tribune has no obligation to pay the

Real Estate Taxes as the obligation to pay such amounts arose subsequent to the rejection of the

lease on June 30, 2009 and therefore do not fall within the scope of section 363(d)(3) of the

Bankruptcy Code.

### C.    The Amounts Owed By the Landlord Are Not Cash Collateral

      17.    The Landlord next asserts that the amounts owed by Landlord to Tribune

under the Letter Agreement, which have been setoff by Tribune against the monthly rent under

the Lease pursuant to the parties' express contractual arrangements, are cash collateral for a

possible setoff against its rejection damages claim against the Debtors. This argument similarly

falters because the cash at issue here is not the Landlord's cash - it is Tribune's cash. The

Landlord's contractual entitlement to rent under the Lease is expressly subject to Tribune's setoff

rights under section 1.1 of the Lease and section 2 of the Letter Agreement. There is no

circumstance under the Lease where the Landlord is entitled to receive monthly rent without

taking into account Tribune's right to setoff the amounts accruing under section 2 of the Letter

Agreement. What Landlord is attempting to do is to (i) take cash belonging to Tribune in 100-

cent dollars, (ii) hold that cash for its own benefit, and (iii) use that cash - which, again, belongs

to Tribune - to offset against its claim for damages stemming from rejection of the Lease, which

would effectively return the cash to Tribune in whatever percentage Tribune pays to holders of

unsecured claims under its chapter 11 plan. Landlord would then keep the difference. Nothing

in the Bankruptcy Code, bankruptcy policy, or logic compels or even permits this result.

18.    The Landlord's argument also cannot be correct because if it were, every party to a prepetition contract with a debtor would be entitled to withhold monies payable to a debtor under that contract on the theory that such monies are "cash collateral" for a setoff right against its potential rejection damages claim.  There is nothing in the case law that suggests this argument could be true, and the argument is at odds with the most fundamental elements of bankruptcy policy, which encourages funds coming into a debtor's estate in order to facilitate the reorganization of the business.  The Landlord's argument also stands in opposition to the black-letter bankruptcy law that an executory contract is enforceable by, but not against, the debtor. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 532 (1984); In re University Medical Center, 973 F.2d 1065, 1075 (3rd Cir. 1992).  If the Landlord's argument were accepted, no debtor could ever compel payment of amounts owed to it under such an executory contract where monies might be owed to the debtor.  This is not the law, and Landlord's position should be rejected.[5]

### D.    Tribune has a Right to Setoff Under Section 558 of the Bankruptcy Code

19.    The Landlord next contends that Tribune was not able to continue the prepetition contractual setoff arrangement because of an alleged lack of mutuality; that is, in Landlord's view, "[a]n obligation that arises prepetition may not be setoff against a post-petition obligation because the debtor is a separate legal entity from the debtor-in-possession and mutuality between the prepetition and postpetition debts is destroyed upon the filing of a petition for bankruptcy."  Motion at ¶ 22.

---

[5] Should the Court find that the amounts in question are cash collateral in which the Landlord has an interest, the Debtors submit that the requirement of section 363(c)(ii)(A) of the Bankruptcy Code has been met as the Landlord has consented, in writing, as evidenced by the express contemplation for the setoff under the Letter Agreement and the Lease, to the use of such 'cash collateral.'  See Letter Agreement at § 2 of the Letter Agreement; Lease at § 1.1.

20.     The Landlord appears to assume that its obligation to pay the Debtors the Debtors' share of the profits from the Sublease is a prepetition obligation rather than what it actually is - an ongoing postpetition monthly obligation.  The Landlord's obligation to pay this amount is no more a prepetition obligation than is a debtor's contractual obligation to pay monthly installment amounts that come due postpetition.

21.     Even if the Court finds that the Landlord's obligations are prepetition obligations, section 558 of the Bankruptcy Code applies to preserve Tribune's right of setoff. That section provides in relevant part that "the estate shall have the benefit of any defense available to the debtor against any entity other than the estate..." 11 U.S.C. § 558.  As Collier's makes clear, the purpose of this statute is to defeat unjust or improper claims against the estate. See 5 Collier on Bankruptcy ¶558.01 (15th ed. 2009).

22.     Numerous cases, including several in this District and Circuit, have applied section 558 to permit debtors to effect setoffs of prepetition amounts owed by a non-debtor to a debtor against postpetition amounts owed by the debtor to a non-debtor.  See, e.g., In re PSA, Inc., 277 B.R. 51 (Bankr. D. Del. 2001); In re Papercraft Corp., 127 B.R. 346, 349 (Bankr. W.D. Pa. 1991) (permitting debtor to setoff its prepetition payment of taxes against its postpetition rental obligation where debts were mutual and neither debtor's nor lessor's position would be improved); In re Women First Healthcare, Inc., 345 B.R. 131, 134 (Bankr. D. Del. 2006) (allowing debtor to setoff prepetition claims against postpetition obligations); In re Westchester Structures, Inc., 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) (finding that under section 558 of the Bankruptcy Code, the debtor does not have to establish that the debts between the parties are both prepetition in order to be permitted to setoff); In re Standard Furniture Co., 3. B.R. 527, 531 (Bankr. S.D. Cal. 1980) (trustee was entitled to offset postpetition rent with a

prepetition security deposit previously given lessor by debtor's assignors); In re M.W. Ettinger Transfer Co., 1988 WL 129334 (Bankr. D. Minn. 1988) (allowing debtor to offset prepetition prepaid rent against postpetition rental obligations).

23.     The most prominent of these is PSA, in which the Court was faced with a situation materially identical to that at issue here - a creditor sought to compel payment of postpetition amounts allegedly owed to it, the debtor objected on the grounds that it was entitled to setoff a prepetition receivable owed to it under section 558 of the Bankruptcy Code and under applicable state law, and the creditor asserted that the prepetition versus postpetition nature of the debts caused a failure of mutuality.  The Court agreed with the debtor, holding that "section 558 preserves any right of setoff the debtors may have under state law, including the right to setoff debtor's prepetition claims against administrative expense claims." See PSA, 277 B.R. at 53 (citing In re Papercraft Corp., 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) and M.W. Ettinger, 1988 WL 129334 at *4 (Bankr. D. Minn. 1988)).  The Bankruptcy Court further concluded that in a section 558 context, "the court must examine the transaction as though the bankruptcy had not been filed" and that section 558 "eliminates the prepetition/postpetition distinction and, in essence, obliterates the requirement that mutual debts must both be prepetition obligations in a section 558 context." PSA, 277 B.R. at 53 (citing Papercraft, 127 B.R. at 350).  To eliminate all doubt, the PSA court further stated that "the prepetition/postpetition distinctions are irrelevant under section 558."[6] PSA, 277 B.R. at 54.

---

[6] The Court has reaffirmed the logic of PSA and Papercraft in a case relied upon by Landlord.  See In re Women First Healthcare, Inc., 345 B.R. 131, 134 (Bankr. D. Del. 2006).  Although Landlord relies on Women First for the unremarkable proposition that mutuality is a necessary element of setoff, on the same page as the language quoted by Landlord, Judge Walrath explains in detail the difference between section 553 setoffs by a creditor (in which prepetition and postpetition obligations may not be setoff against one another) and section 558 setoffs by a debtor (in which they may be).  See id. (citing PSA and Papercraft) ("Courts have concluded that a debtor may setoff pre-petition claims against post-petition obligations it owes.").

13

24.    <u>PSA</u> and <u>Papercraft</u>, among other cases, are directly on point and dispositive of this issue.[7]  When the Bankruptcy Court examines Landlord's claims as if Tribune's chapter 11 case had never been filed, it is clear that Tribune is entitled as a matter of contract and common law to take the setoffs it has taken all along as part of the parties' express contractual arrangements.  It is only now that Landlord attempts to manipulate the Debtors' chapter 11 filings to its benefit - and the Debtors' harm - by advancing an argument rejected many times by this Court and others.  This Court should not countenance that effort, and should instead hold that Tribune, by complying with the express terms of the relevant contracts and the prepetition course of dealing between the parties, has properly effected a setoff under section 558.

**E.       <u>The Landlord is not Entitled to Attorney's Fees or Interest</u>**

25.    Landlord is not properly entitled to attorney's fees and costs.  Tribune did not accede to the Landlord's demands to pay excess rent or the Real Estate Taxes and effectively cede Tribune's rights of setoff because Tribune was, for the reasons set forth herein, following the express provisions of the Letter Agreement, the Lease and the mandates of applicable law. The Landlord, by contrast, is acting against the express terms of all three, and should not be rewarded with fees, costs, or interest for doing so.

**<u>CONCLUSION</u>**

26.    For all of the foregoing reasons, the Motion should be denied in all respects.

---

[7] <u>See, e.g.</u>, <u>In re White</u>, 260 B.R. 870 (B.A.P. 8th Cir. 2001) (holding that while section 553 of the Bankruptcy Code addresses a creditor's right of setoff, a debtor's right of setoff is governed by section 558 and state law); <u>In re ABC-NACO, Inc.</u>, 294 B.R. 832 (Bankr. N.D. Ill. 2003) (restrictions on rights of setoff in the Bankruptcy Code are irrelevant when setoff claim is being asserted by debtor, not creditor); <u>In re R. Bastyr & Assocs., Inc.</u>, 81 B.R. 978 (Bankr. D. Minn. 1988).

Dated:  Wilmington, Delaware          Respectfully submitted,
        July 9, 2009

                                      SIDLEY AUSTIN LLP
                                      James F. Conlan
                                      Bryan Krakauer
                                      Kenneth P. Kansa
                                      Bridget J. Hauserman
                                      One South Dearborn Street
                                      Chicago, IL  60603
                                      Telephone:  (312) 853-7000
                                      Facsimile:  (312) 853-7036

                                              -and-

                                      COLE, SCHOTZ, MEISEL,
                                      FORMAN & LEONARD, P.A.

                                      By: _____
                                      Norman L. Pernick (No. 2290)
                                      J. Kate Stickles (No. 2917)
                                      500 Delaware Avenue, Suite 1410
                                      Wilmington, DE  19801
                                      Telephone:  (302) 652-3131
                                      Facsimile:  (302) 652-3117

                                      ATTORNEYS FOR DEBTORS
                                      AND DEBTORS IN POSSESSION