**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) Related to Docket Nos. 1670, 1678, 1680 and 1700<br>) Hearing Date: July 16, 2009 at 3:30 p.m. |

REPLY OF PPF OFF TWO PARK AVENUE OWNER, LLC TO DEBTORS'
OBJECTION TO MOTION OF PPF OFF TWO PARK AVENUE OWNER,
LLC FOR AN ORDER COMPELLING LEASE PAYMENTS

PPF OFF Two Park Avenue Owner, LLC ("Landlord"), by and through its attorneys, as and for its reply to the Debtors' Objection (the "Objection" or "Obj.") to the motion (the "Motion")[1] of Landlord for an order compelling Tenant, as one of the Debtors, to timely perform its obligations under Landlord's Lease by paying (i) rent and semiannual real estate taxes due July 1, 2009; (ii) the shortfall in January through June 2009 monthly rent due to Tenant's improper setoffs; (iii) other unpaid post-petition amounts due under the Lease for the period through June 30, 2009; and (iv) attorney's fees and interest incurred due to Tenant's post-petition Lease defaults, respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors' Objection is based on mischaracterizations of the arguments in Landlord's Motion and misstatements of the holdings of the cases cited by the Debtors.

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

- 2 -

2.    Contrary to the Debtors' argument, Landlord's Motion to compel Lease payments due July 1, 2009, is neither based on requiring Tenant to pay the costs of cleaning up the leased premises (the "Premises") nor based on Tenant's liability as a holdover tenant. Instead, Landlord's Motion is based on the mandate of section 365(d)(3) that Tenant timely perform its Lease obligations until the Lease has been rejected. Further, Tenant: (a) ignores that the Rejection Order negotiated by Tenant expressly conditions rejection of the Lease on Tenant vacating the Premises; (b) concedes substantial personal property of Tenant remains in the Premises; and (c) never sought, let alone obtained, an order authorizing abandonment of its property as required under section 554. Thus, Tenant has not vacated the Premises and, therefore, did not reject the Lease on June 30. Consequently, Tenant must timely perform its obligations under the Lease to pay rent and taxes due July 1.

3.    Tenant also mischaracterizes Landlord's position that Tenant improperly setoff Landlord's pre-petition settlement payment obligations to satisfy Tenant's monthly post-petition rent obligations due January through June 2009. In effect, Landlord is not alleging Tenant lost its pre-petition setoff right. Rather, Landlord's Motion merely states that Tenant's exercise of its setoff right is limited under applicable law by section 363, which protects Landlord's cash collateral, and by the requirement for mutuality before a setoff right may be exercised to prejudice Landlord. To avoid prejudice to Landlord, Tenant only may setoff Landlord's pre-petition settlement payment obligation against Tenant's pre-petition liability for rent and rejection damages under the Lease. Further, Tenant only may do so after obtaining Court authorization.

Otherwise, Tenant would be free to exhaust Landlord's cash collateral securing its pre-petition claims and thereby prejudice Landlord.

4. Accordingly, the Motion should be granted in all respects.

## REPLY

I. **TENANT IS OBLIGATED TO TIMELY PERFORM ITS LEASE PAYMENT OBLIGATIONS DUE JULY 1, 2009**

   A. **As Tenant Did Not Abandon Its Property Stored At Landlord's Premises And, Therefore, Continues To Occupy The Premises, Tenant Had Not Rejected The Lease As Of July 1, 2009**

5. Tenant <u>concedes</u> that hundreds of large items of its personal property, including cubicles, desks, chairs, conference tables, refrigerators, vending machines, file cabinets, and air conditioners, remain at Landlord's Premises. <u>See</u> Obj. ¶ 5. Further, by its silence, Tenant <u>concedes</u> it neither requested nor obtained an order of this Court authorizing Tenant to abandon only such property in accordance with section 554 of the Bankruptcy Code. Rather, Tenant merely presumes it abandoned that property without providing any basis for that presumption. <u>See, e.g.</u>, Obj. ¶¶ 6, 8.

6. Yet, abandonment under section 554 requires a Court order issued "[a]fter notice and a hearing". 11 U.S.C. § 554(a). <u>See</u> <u>Catalano v. C.I.R</u>, 279 F.3d 682, 686 (9th Cir. 2002) ("[a]bandonment requires formal notice and a hearing") (citation omitted); <u>In re Zimmerman</u>, 2008 WL 1925123 *3 (D. Ariz. 2008) (absent "evidence that the required notice and hearing occurred[,] [t]he subject property therefore remained part of the bankruptcy estate.") (citations omitted). Certainly, Tenant did not retroactively abandon its property on June 30, 2009, simply because on July 9, 2009, Tenant filed a Declaration stating Tenant "has no intention to retain, store or otherwise use any property that has been left on the Premises." Obj. ¶ 8.

11240053_1

- 3 -

7.  Additionally, the Debtors <u>concede</u> that the Rejection Order, which Tenant negotiated with Landlord, expressly conditions Tenant's rejection of the Lease and related subleases on Tenant <u>vacating</u> the Premises.[2] <u>See</u> Obj. ¶ 4. Tenant has not vacated the Premises as Tenant's substantial personal property remains there. <u>See</u> <u>In re Cornwall Paper Mills Company</u>, 169 B.R. 844, 849-50 (Bankr. D. N.J. 1994) ("Cornwall did not remove the filing cabinets and office equipment until September of 1992 and even then, it left behind a significant amount of furniture, office equipment and personal items which were not sold until November of 1993. A review of these facts do [sic] not unequivocally manifest that Cornwall intended to vacate the Premises in October of 1991. In light of the foregoing, the Court rejects Cornwall's assertion that there was a surrender."). Moreover, Landlord has not accepted any such surrender. <u>See</u> <u>id.</u> at 850; Toro Declaration ¶ 5.

8.  Consequently, the cases the Debtors cite are irrelevant here because each involves a debtor that <u>abandoned its property after obtaining court authorization</u> and a landlord who concedes the applicable <u>lease already had been rejected</u>. <u>See</u> Obj. ¶ 6. For example, in <u>In re Ames Department Stores, Inc.</u>, 306 B.R. 43 (Bankr. S.D.N.Y. 2004), the debtor/tenant specifically sought and obtained authority to "abandon" its property. <u>Id.</u> at 49. Further, in <u>Ames</u> the only "abandoned personal property on the premises [was] (principally shelving, racks, bins and similar trade

---

[2]  Tenant argues that at a minimum, the Lease was automatically rejected on July 6, 2009, 210 days after Tenant's petition date, under section 365(d)(4). Yet, section 365(d)(4) provides for an extension of a debtor/tenant's time to assume or reject with the Landlord's consent. <u>See</u> 11 U.S.C. § 365(d)(4)(B). That is exactly what occurred here as Landlord and Tenant agreed on the language of the Rejection Order conditioning rejection on Tenant vacating the Premises. Regardless, as Tenant concedes, any alleged automatic rejection on July 6 would not excuse Tenant's obligation to pay rent and tax obligations due under the Lease on July 1, 2009. <u>See</u> Obj. ¶ 15.

- 5 -

fixtures)" and the landlord conceded "the only personal property left on the Premises would have little or no value". Id. at 49-50. Neither such fact is true here, as no abandonment has been authorized and Landlord has made no concession on the value of Tenant's property, most of which is not fixtures, but other personal property. Thus, unlike here, the issue in Ames was whether notwithstanding the debtor/tenant's court authorized abandonment of property of inconsequential value (and without any court order conditioning lease rejection on the debtor vacating the leased premises), the debtor could surrender possession of the leased premises and reject the lease without removing its former property. See id. at 50-51.

9. Additionally, Ames noted that section 365(d)(3) requires a debtor/tenant to timely perform post-petition lease obligations "until such lease is assumed or rejected." Id. at 51 (emphasis in original) (quoting 11 U.S.C. § 365(d)(3)). Further, Ames found "the estate must comply with post-petition obligations under section 365(d)(3) irrespective of the corresponding benefit to the estate". Id. at 52. Thus, Ames merely held that a tenant/debtor's "abandonment of its personal property [did not] amount to a failure to surrender possession . . . that . . . would preclude rejection [because] Section 365 does not by its terms, require the surrender of occupancy before or as a condition to rejection . . . ." Id.

10. In contrast, here Tenant never abandoned its personal property. Further, unlike the landlord in Ames, Landlord's Motion does not assert Tenant's vacating the premises was a condition to rejection under section 365, but rather that Tenant's vacating the premises was a condition to rejection under the Rejection Order negotiated by the parties to settle Landlord's informal objection. See Ames, 306 B.R. at

11240053_1

81 (Court enforces negotiated terms of order on rent payment because "[t]he public interest in settlements - apart from the private needs and concerns of litigants - requires each settling party to be bound to the obligations it undertakes."). Hence, Landlord's Motion is premised on Tenant's continued occupancy of the Premises, not -- as in Ames -- on Tenant's failure to leave the Premises broom clean in accordance with the Lease.

11. Also inapposite is another case cited by the Debtors, In re Nat'l Refractories & Minerals Corp., 291 B.R. 614 (Bankr. N.D. Cal. 2003). Contrary to the Debtors' mischaracterization, National Refractories does not authorize "rejection even though the debtor left behind abandoned property and was in default of clean-up obligations". Obj. ¶ 16. Instead, in National Refractories the landlord conceded the tenant had rejected the lease and the issue was whether the landlord had a post-rejection claim based on the debtor/tenant's alleged holdover status and failure to repair and clean-up the leased premises. See 297 B.R. at 616. In contrast, here Landlord's Motion is based on Tenant's continued pre-rejection occupancy.

12. Correspondingly, contrary to the Debtors' description, In re Unidigital, Inc., 262 B.R. 283 (Bankr. D. Del. 2001), merely held that a debtor/tenant could abandon property at leased premises and that the landlord's damage claim for clean-up and removal was a pre-petition rejection claim. See id. at 288. In no sense, however, does Unidigital stand for the proposition that a debtor/tenant who failed to abandon its property at and continued to occupy the leased premises effectively had rejected the lease.[3]

---

[3] The Debtors also mischaracterize Landlord's position regarding Tenant's subtenants. See Obj. 14. Landlord does not assert Tenant remains in the Premises merely because its subtenants remain there after Tenant's rejection of the Lease. Instead, Landlord simply notes that Tenant's rejection of both the Lease and related subleases was conditioned on Tenant having vacated the Premises.

11240053_1

- 6 -

13. Also unavailing is the Debtors' misleading argument regarding Tenant's alleged lack of access to the Premises. See Obj. ¶ 9. First, Tenant never was denied access and certainly never complained about any such denial before now. See Toro Declaration ¶ 7. Second, Tenant's suggestion the denial of access was "apparently due to the fact that Tenant's security system had already been dismantled" is disingenuous as Landlord had nothing to do with the dismantling of the system, if it even was dismantled. Obj. ¶ 9. See Toro Declaration ¶ 6. Equally disingenuous is Tenant's suggestion that a denial of access "made it impossible to remove any items from the Premises", Obj. ¶ 9, as Tenant admits it only "requested access to the Premises" on June 30, 2009, "in response to Landlord's filing of the Motion" and the Motion was not filed until 7:08 p.m. on June 30, 2009. It was Tenant's choice to continue to store substantial personal property at the Premises and not to seek abandonment of such property. Thus, Tenant may not belatedly fabricate excuses for its own failures.

14. Accordingly, Landlord's Motion is not premised on charging Tenant with the costs of removing its abandoned property or on asserting a claim based on Tenant's post-rejection holdover status. Rather, Landlord's Motion is premised on Tenant's continued occupancy of the Premises, which occupancy precluded rejection of the Lease under the Rejection Order. Tenant might have avoided that burden by obtaining Court authorization to abandon its property or by removing that property, but Tenant failed to do so. As Tenant agreed to condition rejection of the Lease on Tenant having vacated the Premises, Tenant now must comply with section 365(d)(3) regarding timely payment of post-petition rent and taxes due July 1, 2009.

B.     <u>Tenant Owes Monthly Rent And Real Estate Taxes Due July 1, 2009</u>

15.     Tenant concedes it is liable for the monthly rent and semiannual real estate tax payment due under the Lease on July 1, 2009 if the Lease had not been rejected by that date. <u>See</u> Obj. ¶ 15. As demonstrated above, Tenant did not reject the Lease by July 1. Hence, Tenant must pay that rent and those taxes under section 365(d)(3).

## II. TENANT WAS NOT ENTITLED TO "SETOFF" AMOUNTS DUE FROM LANDLORD TO SATISFY PORTIONS OF MONTHLY RENT FOR JANUARY THROUGH JUNE 2009

A.     <u>Tenant's "Setoffs" Improperly Sought To Utilize Landlord's Cash Collateral</u>

16.     Without reference either to the language of section 363 of the Bankruptcy Code governing use of cash collateral or to a single case, the Debtors cavalierly assert the settlement payments Landlord owed to Tenant under the Letter Agreement are not cash collateral. In making that argument, the Debtors incorrectly state the money due cannot be cash collateral because "the cash at issue here is not the Landlord's cash - it is [Tenant's] cash." Obj. ¶ 17. Yet, in their Objection the Debtors concede that under the Letter Agreement, the former subtenant's payments at issue were to be paid <u>to</u> the Landlord:

> Pursuant to Section 2 of the Letter Agreement, Landlord's predecessor was to be paid the entire sublease income directly from the subtenant and then [Tenant] would offset its allocable percentage of that sublease income against the monthly rent owed by [Tenant] under the lease.

Obj. ¶ 2. Indeed, the Letter Agreement describes the settlement payments to be offset as "payments owed by Landlord to [Tenant]". Letter Agreement § 2. Hence, the Debtors are simply wrong in characterizing the disputed funds as "[Tenant's] cash". Instead, the

disputed funds are cash held by Landlord in which Tenant (a Debtor) asserts an interest, the precise definition of cash collateral under section 363(a).[4]

17. The Debtors then argue Landlord "cannot be correct [on the setoff issue] because if it were, every party to a prepetition contract with a debtor would be entitled to withhold monies payable to a debtor under that contract on the theory that such monies are 'cash collateral'. . . ." Obj. ¶ 18. Yet, to the extent the non-debtor counterparty is entitled to adequate protection for prepetition amounts it owes to a debtor, those cash collateral interests must be protected from a debtor offsetting the funds without providing adequate protection. Otherwise, just as the Debtors seek to circumvent the cash collateral statute here, every debtor could take advantage of the situation to first exhaust the nondebtor counterparty's cash collateral through setoffs against post-petition liabilities and then reject the contract, leaving the counterparty without its pre-petition collateral or any adequate protection.[5]

B. Section 558 Is Of No Assistance To Tenant

18. Contrary to the Debtors' assertion, there can be no question that Landlord's obligation under the prepetition Letter Agreement to make settlement payments to Tenant equal to a percentage of what Landlord receives from the former

---

[4] Also incorrect is the Debtors' statement that "[t]here is no circumstance under the Lease where the Landlord is entitled to receive monthly rent without taking into account [Tenant's] right to setoff the amounts accruing under section 2 of the Letter Agreement." Obj. ¶ 17. First, Tenant only could access the payments if the former subtenant (whose sublease is the subject of the Letter Agreement) actually paid rent to Landlord, not just because such rent accrued. Second, the Letter Agreement does not specify against which of Tenant's Lease obligations the settlement payments were to be offset.

[5] The Debtors make the nonsensical argument that Landlord consented to Tenant's use of cash collateral through the setoff language in the Letter Agreement. See Obj. n. 5. Certainly, however, such consent cannot be implied from a prepetition agreement that does not reference bankruptcy or cash collateral.

subtenant is not a mutual obligation with Tenant's <u>post</u>-petition obligation under section 363(d)(3) to timely perform under the Lease. <u>See</u> Obj. ¶¶ 19-20.

19.  Also, the Debtors misstate the import of section 558 of the Bankruptcy Code on the mutuality issue. <u>See</u> Obj. ¶¶ 21-24. Section 558 does preserve an offset <u>defense</u> for a trustee so that a debtor's setoff right is not forfeited. Further, in limited circumstances (i.e., if there would be no prejudice to the nondebtor counterparty), section 558 may permit a setoff defense despite the pre-petition/post-petition barrier. Nonetheless, here Tenant seeks to use the offset offensively, <u>not</u> <u>defensively</u>. Additionally, Landlord does not seek to invalidate the offset defense, but rather to limit its application to Landlord's <u>pre</u>-petition claim.

20.  That result is consistent with the cases the Debtors cite because the only two cited cases that actually override the pre-petition/post-petition barrier expressly require that in such circumstances the nondebtor party may not be prejudiced by the offset. <u>See</u> <u>In re PSA, Inc.</u>, 277 B.R. 51, 54 (Bankr. D. Del. 2002) ("neither party will be harmed if the Debtors' postpetition debt and prepetition receivable are setoff."); <u>In re Papercraft Corp.</u>, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) (same). Yet, here Landlord would be prejudiced because its setoff right would be diminished when Landlord's cash collateral was involuntarily used to satisfy a 100 cent post-petition administrative claim rather than a pre-petition claim worth pennies on the dollar. Notably, in <u>none</u> of the cases cited by Tenant did the setoff at issue harm the creditor by transferring its setoff right from a pre-petition claim worth cents on the dollar to a 100 cent post-petition claim.[6]

---

[6] <u>See</u> <u>In re Women First Healthcare</u>, 345 B.R. 131, 134 (Bankr. D. Del. 2006) (contrary to the Debtors' assertion, this case did not involve a pre- and post-petition claim setoff because "both debts are pre-petition."); <u>In re Westchester Structures, Inc.</u>, 181 B.R. 730, 740-41 (Bankr. S.D.N.Y. 1995) ("The parties in the instant action acknowledge that the debts owed between them are pre-petition . . . ."); <u>In re Standard</u>

21. Additionally, PSA rationalized overriding the prepetition/post-petition distinction because "the Court did not wish to force Debtors to sue [the creditor] in a separate action on its prepetition receivable claim." 277 B.R. at 54 (citation omitted). Yet, here, as in any case in which a landlord has a pre-petition claim that far exceeds the amount of the tenant's setoff right, Tenant need not pursue a separate action because the offset will be taken as part of the pre-petition claims resolution process.

### III.  LANDLORD IS DUE ADDITIONAL POST-PETITION AMOUNTS FOR THE PERIOD THROUGH JUNE 30, 2009

22. Landlord has an additional unpaid administrative claim of not less than $84,947.79 for post-petition sundry charges billed to date such as electricity, cleaning, sales tax, work orders, etc. Tenant has failed to pay that amount despite having been invoiced by Landlord. In addition, an estimated $33,214.00 will be due for electricity pursuant to the lease for the period between 5/27/09 and 6/30/09, as well as possible adjustments to the monthly operating expense escalations through any future lease rejection, once final 2009 costs are quantified, based on customary practice and the Lease.

### IV.  TENANT IS OBLIGATED TO PAY LANDLORD'S ATTORNEY'S FEES AND INTEREST

23. Tenant concedes it is liable for the Landlord's attorney's fees and interest incurred due to the Tenant's post-petition Lease defaults if Landlord was entitled to payments requested in Landlord's Motion. See Obj. ¶ 25. As demonstrated above, Tenant is required to make such payments. Further, there is no dispute Tenant owes additional post-petition amounts to Landlord based on "true-up" calculations. Hence,

---

Furniture Co., 3 B.R. 527, 531 (Bankr. S.D. Cal. 1980) (Landlord "has not shown how he was damaged" so application of security deposit to post-petition rent claim does not prejudice landlord).

11240053_1

- 11 -

pursuant to the express terms of the Lease, Tenant also is obligated to pay Landlord's attorney's fees incurred and interest accrued due to the Tenant's post-petition Lease defaults.

## CONCLUSION

WHEREFORE, Landlord respectfully requests that this Court enter an Order: (A) granting the Motion; and (B) granting Landlord such other and further relief as the Court deems just and proper.

Dated: July 14, 2009
       Wilmington, DE

                              Respectfully submitted,

                              **PEPPER HAMILTON LLP**

                              By: /s/ Leigh-Anne M. Raport
                              David B. Stratton (No. 960)
                              Leigh-Anne M. Raport (No. 5055)
                              Hercules Plaza, Suite 5100
                              1313 Market Street
                              P.O. Box 1709
                              Wilmington, DE 19899-1709
                              Telephone: (302) 777-6500
                              Facsimile: (302) 421-8390

                              and

                              **WILLKIE FARR & GALLAGHER LLP**
                              Alan J. Lipkin, Esq.
                              Jeremy E. Crystal, Esq.
                              787 Seventh Avenue
                              New York, New York 10019
                              Telephone: (212) 728-8000
                              Facsimile: (212) 728-8111

                              Co-Counsel for PPF OFF Two Park Avenue
                              Owner, LLC