# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: August 5, 2009 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 1098, 1273 and 1631** |

## SECOND QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF MARCH 1, 2009 THROUGH MAY 31, 2009

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide<br>Professional Services to: | **Debtors** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Date of Retention:                              **February 20, 2009 (<u>nunc pro tunc</u> to December 8, 2008)**

Period for Which Compensation
and Reimbursement is Sought:                    **March 1, 2009 through May 31, 2009**

Amount of compensation sought as actual,        **$4,209,274.75**
reasonable and necessary:

Amount of Expense Reimbursement sought as        **$105,524.36**
actual, reasonable and necessary

This is a(n):  _____ monthly     __X__ interim     _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee applications during this Second Interim Fee Period is approximately 561.70 hours and the corresponding compensation requested is approximately $171,622.50.

<u>Prior Interim Applications</u>

| Date Filed | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 4/15/09 | 12/8/08 – 2/28/09 | $3,897,043.25 | $165,360.71 | | |

LA1 1583335v.2

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: August 5, 2009 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 1098, 1273 and 1631** |

## SECOND QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF MARCH 1, 2009 THROUGH MAY 31, 2009

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the

"Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the

Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of

Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim

Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and

Establishing Related Procedures for Compensation and Reimbursement of Expenses for

Professionals and Consideration of Fee Applications (the "Fee Examiner Order") for approval of

interim compensation and reimbursement of expenses for the second quarterly period from

March 1, 2009 through May 31, 2009 (the "Second Interim Fee Period").  In support of the

Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

No. 43].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee or examiner.

4.      On December 18, 2008, the United States Trustee for the District of

Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On March 19, 2009, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.  [Docket No. 546]

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application sets forth the following scope of services, which were performed during the Second Interim Fee Period:

(a)      to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)      to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c)      to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

(e)    to perform any and all other legal services for the Debtors in connection with both these chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)    to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, nunc pro tunc to the Petition Date, was approved by this Court by order dated February 20, 2009 (Docket No. 435).

8.    The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders"), provide all professionals retained in these cases pursuant to section 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services

rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing to the Debtors that no objection or a partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whichever is applicable, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100 percent of the expenses not subject to an objection.

9.    Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of March 2009, April 2009 and May 2009, which Monthly Fee Applications are incorporated herein by reference.[2] Sidley has accordingly submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for this Second Interim Fee Period.

10.    In addition, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. This Application

---

[2] The docket numbers of Sidley's Monthly Fee Applications for March 2009, April 2009 and May 2009 are 1098, 1273 and 1631, respectively.

represents the second Quarterly Fee Application Request that Sidley has filed with the Court in connection with these chapter 11 cases, and it covers the period from March 1, 2009 through May 31, 2009, both dates inclusive.

## RELIEF REQUESTED

11.     By this Application, Sidley respectfully requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Second Interim Fee Period.

12.     The amount of fees sought for services rendered during the Second Interim Fee Period is $4,209,274.75, representing 7,814.80 hours in professional and paraprofessional time for such services, and reimbursement of actual, necessary expenses incurred by Sidley during the Second Interim Fee Period in connection with these services is requested in the amount of $105,524.36.  Sidley seeks the interim allowance of such compensation, as well as this Court's authorization for payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.     The hourly rates charged by Sidley professionals and paraprofessionals during the Second Interim Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases.  The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2009 and continuing until Sidley's next Firm-wide rate adjustment will be $925 per hour.  Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

14.    Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases. There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases. All professional and paraprofessional services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

## SERVICES RENDERED

15.    Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation, and transactional counsel to the Debtors in their ordinary course of business. The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.    A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of Attachment A to this Application, as required by Local Rule 2016-2. A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Second Interim Fee Period:

**A.    FCC Matters (20100): Hours: 546.20   Fees: $224,783.00**

17.    During the Second Interim Fee Period, Sidley's professionals continued to represent the Debtors' broadcast and cable television stations as primary communications

regulatory counsel.  In this capacity, Sidley's professionals handle all aspects of regulatory

compliance, including transactional matters that require FCC approval; seeking waivers of the

newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal

applications and license modification applications, and responding to various complaints filed

with the FCC.  Additionally, Sidley represents Tribune in appeals to the US Courts of Appeals

from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.    In the last several months, Sidley's professionals have been heavily

engaged in the ongoing transition from analog to digital television transmission (DTV).  Since

1996, Sidley has represented Tribune stations in the policy, technical, and operational issues at

the FCC arising from this historic, unprecedented conversion.  The activity undertaken during

this Second Interim Fee Period ranges from counseling the Debtors on the FCC's evolving rules

and policies governing the build-out and operation of DTV stations, advocacy before the FCC to

waive and/or modify these rules and policies to conform with operational realities, as well as

advocacy urging the FCC to authorize the use of new technologies that can enhance the ability of

broadcasters to deliver reliable DTV signals.  Since the Petition Date, Congress passed the DTV

Delay Act that moved the DTV transition date from February 17 to June 12, 2009.  This change

has generated a significant increase in both FCC regulatory compliance filings (and related FCC

fees) and substantive legal work to ensure the stations' readiness for the DTV transition.

**B.**    **Fee Applications (30390): Hours:  561.70   Fees: $171,622.50**

19.    During the Second Interim Fee Period, Sidley's professionals and

paraprofessionals drafted and filed Sidley's third, fourth, and fifth monthly statements and

reviewed and complied with the Court's Fee Orders.  In addition, Sidley prepared and filed its

first Quarterly Fee Application Request.

C.    **Executory Contracts and Leases (30410): Hours:  275.70    Fees: $143,884.00**

20.    The Debtors in these cases are party to approximately 45,000 executory contracts and unexpired leases.  During the Second Interim Fee Period, Sidley's professionals continued their analysis and review of such contracts and assessed the legal implications of assumption, assignment, or rejection under section 365 of the Bankruptcy Code.  Sidley's professionals have assisted the Debtors with obtaining court approval to assume certain executory contracts on terms favorable to the Debtors, such as the ratings services agreements between The Nielsen Company and each of the Debtors that operates broadcast and cable television stations.  Sidley's professionals have also continued to address numerous inquiries from contract counterparties concerning the status of their contracts and leases.

21.    During the Second Interim Fee Period, Sidley's professionals filed and obtained an order granting the Third Omnibus Motion to reject commercial real property leases, which covered 17 such leases with a combined estimated annual cost savings to the Debtors of approximately $2.2 million.  To maintain flexibility and facilitate further restructuring, Sidley's professionals obtained an order granting their request for an extension of time, through and including July 6, 2009, to assume or reject the Debtors' remaining unexpired real estate leases. In addition, Sidley's professionals began preparation of the Debtors' Fourth Omnibus Motion to reject commercial real property leases and a motion to assume certain real property leases, which were each filed on June 5, 2009.

D.    **Vendor Issues (30420): Hours:  222.00    Fees: $121,264.50**

22.    During the Second Interim Fee Period, Sidley's professionals continued to expend substantial efforts to address vendor issues in these chapter 11 cases. For example, a significant number of vendors have threatened to discontinue performance absent confirmation that outstanding prepetition amounts would be paid.  Sidley's professionals spent a significant

amount of time corresponding with vendors' counsel regarding either the their obligation to perform under prepetition contracts (which had to be analyzed to determine their executory nature and scope of obligations) or their incentive to perform in light of continued postpetition performance by the Debtors.

23.     In addition, Sidley's professionals continued to engage with a significant number of vendors and their counsel concerning their status as a critical vendor and/or to pursue payment of amounts outstanding to them in connection with section 503(b)(9) goods.  Many of these communications were time consuming, not only due to volume, but also because they involved explaining to counsel the limited availability of critical vendor funds, the required procedures for payment of prepetition amounts outstanding to critical vendors and providers of section 503(b)(9) goods, and, in some cases, arranging and participating in calls with the Debtors, vendors, and counsel to resolve related issues and/or to encourage continued vendor performance.

**E.      Use/Sale/Lease of Assets (30430): Hours:  135.80  Fees: $78,763.00**

24.     During the Second Interim Fee Period, Sidley's professionals were engaged in negotiating and documenting a number of transactions for the use, sale, and lease of assets on behalf of the Debtors.  For example, Sidley's professionals coordinated with the Debtors and the Debtors' outside real estate counsel with respect to the sale of certain "excess" property owned by the Debtors in St. Louis, Missouri.  Sidley's professionals obtained an order approving a section 363 sale of the property on May 28, 2009.

25.     Sidley's professionals also participated in the negotiation of various service agreements, marketing agreements, licensing agreements, and programming agreements and, in certain instances, sought and obtained authority from the Bankruptcy Court for the Debtors' entry into such agreements.  For example, Sidley's professionals assisted Debtor

Tribune Broadcasting and twelve (12) of its wholly-owned Debtor subsidiaries that operate television stations affiliated with the CW Network to obtain court approval to enter into postpetition network affiliation agreements. Under the terms of these agreements, the Debtors secured additional programming time slots for the 2009-2010 broadcast season and the broadcast rights to certain CW television programming. Sidley also continued its efforts to review and analyze potential transaction opportunities arising in connection with its ongoing representation of the Debtors in their ordinary course of business.

**F.    DIP Financing/Cash Collateral (30440): Hours: 656.30 Fees: $342,169.50**

        26.    During the Second Interim Fee Period, Sidley's professionals continued to work with the Debtors, Barclays, and Barclays' legal professionals to negotiate and finalize an amended securitized DIP facility, to extend the Debtors' postpetition facility's maturity date to April, 2010 and to facilitate syndication to other lenders and ratings by Moody's and Standard & Poor's. The Debtors' amended DIP facility consists of a $75 million revolving line of credit and a $150 million term loan on substantially the same terms as the interim facility and the prepetition facility, secured by a first priority lien on all of the Debtors' unencumbered assets. In addition, Sidley's professionals and the Debtors negotiated amendments to the postpetition letter of credit agreement, providing for a $50 million cash collateralized letter of credit facility, extended through April, 2010. The preparation and closing of the amended DIP facility and amended letter of credit facility required considerable effort on the part of Sidley's professionals in the bankruptcy, corporate, securitization, banking, insurance, and financial services practice groups. The order approving the amended DIP facility and amended letter of credit facility was entered on April 7, 2009.

**G.**     **Insurance Matters (30450): Hours: 32.40   Fees: $19,495.50**

27.     During the Second Interim Fee Period, Sidley's professionals worked with the Debtors and their outside insurance counsel to evaluate certain insurance coverage issues and the impact of the chapter 11 filing on the Debtors' insurance and risk management procedures and to address various bankruptcy-related issues and questions raised by the Debtors' insurers.

**H.**     **Committee-Related Matters (30460): Hours:  263.40  Fees: $185,241.00**

28.     Sidley's professionals continue to work diligently to maintain a cooperative and responsive relationship with the Debtors' major creditor constituencies, including the Committee and the steering committee comprised of the Debtors' senior lenders (the "Steering Committee").  During the Second Interim Fee Period, Sidley's professionals have conferred on pending motions and case administration issues and participated in numerous conference calls and meetings with the Committee, Steering Committee, and their professionals. During this Second Interim Fee Period, Sidley participated in separate, regularly scheduled weekly conference calls with the professionals of the Committee and the Steering Committee in order to address case issues as they arose and to apprise the Committee and the Steering Committee of the progress being made in these chapter 11 cases.

29.     Sidley's professionals have expended a substantial amount of time throughout the Second Interim Fee Period responding to requests for documentation and information from the Committee and the Steering Committee and their professionals.

**I.**     **Litigated Matters (30470): Hours:  780.00  Fees: $426,899.50**

30.     During the Second Interim Fee Period, Sidley's professionals represented the Debtors in a variety of litigated and contested matters.  The Debtors were involved in over a hundred active or threatened lawsuits as of the Petition Date, all of which have been stayed pending these chapter 11 cases.  Sidley's professionals continued their efforts in advising the

Debtors' internal legal department, outside counsel, opposing counsel, and claimants as to the effect of the automatic stay on pending litigation and the bankruptcy claims process.

31.     As in most chapter 11 cases, the Debtors are faced with periodic requests for relief from stay. The Debtors have received ten requests for relief from stay since the commencement of these cases, six of which were filed during the Second Interim Fee Period. Sidley's professionals devoted time to assess and respond to each of the motions.

32.     In addition, Sidley's professionals spent considerable time preparing and filing two adversary proceedings. The first adversary proceeding, on behalf of Tribune Company, seeks declaratory judgment and an injunction against the further prosecution of a federal district court class action proceeding against Tribune and substantially all of its directors and senior officers. The second adversary proceeding, on behalf of Tribune Media Services, Inc., seeks a declaratory judgment and injunctive relief in connection with the ownership of the rights to the Dick Tracy comic book character, an asset the Debtors believe may be of substantial value. The parties have participated in pretrial conferences in each of these matters and the adversary proceedings are ongoing. Each of these adversary proceedings required the efforts of Sidley's professionals and paraprofessionals in the bankruptcy and litigation practice groups.

**J.**     **Travel Time (30480): Hours: 67.70   Fees: $26,776.25**

33.     During the Second Interim Fee Period, Sidley's professionals spent time traveling to Wilmington, Delaware to attend the Debtors' omnibus hearings. In addition, Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and various creditor constituencies. The hours reflect non-working travel time and the fees requested in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**K.**     **Labor Issues (30490): Hours: 138.70  Fees: $82,666.00**

34.     Approximately 15% of the Debtors' employees are represented by unions. During the Second Interim Fee Period, Sidley's professionals continued to analyze and address a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors' collective bargaining agreements, multiemployer pension plans, and obligations thereunder.  Throughout the Second Interim Fee Period, Sidley's professionals have provided information regarding the Debtors' collective bargaining agreements to counsel for the Committee and the Steering Committee at their request.  In addition, Sidley's professionals have worked with the Debtors to respond to various bankruptcy-related issues and questions raised by some of the Debtors' labor unions.

**L.**     **Plan and Disclosure Statement (30500): Hours: 1,140.40  Fees: $687,883.00**

35.     During the Second Interim Fee Period, Sidley's professionals continued to evaluate, research, and analyze the various possible structures for the Debtors' plan of reorganization.  This process involved several meetings with the Debtors' management, and ongoing communications with professionals for the Committee and Steering Committee.  In addition, Sidley's professionals in the bankruptcy, corporate, tax, and FCC regulatory practice groups collaborated on researching and analyzing a variety of legal issues raised by the plan.  In connection with the development of the plan of reorganization, Sidley's professionals began preparation of the disclosure statement, including the review and analysis of relevant materials, and preparation of term sheets reflecting possible plan structures.

36.     On March 27, 2009, Sidley's professionals filed a motion requesting an extension of the Debtors' exclusive period within which to file a chapter 11 plan and solicit acceptances thereto (the "Exclusivity Motion").  In the Exclusivity Motion, the Debtors requested an extension of the exclusivity period through and including August 4, 2009, and the

16

extension of the exclusive right to solicit acceptance of such plan through and including October 5, 2009. By order entered April 23, 2009, the Court granted the relief requested in the Exclusivity Motion.

**M.**   **Professional Retention (30510): Hours: 204.30 Fees: $102,573.50**

37.   The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing the litigation, real estate, tax, accounting, and other needs of their business operations. During the Second Interim Fee Period, Sidley's professionals assisted the Debtors with filing an application for the retention of Mercer (US) Inc. as compensation consultant under Bankruptcy Code sections 327(a) and a supplemental application to expand the scope of the retention of Jenner & Block LLP as special counsel to the Debtors. Sidley's professionals and many of the applicants continued to expend significant efforts to resolve issues raised by the Office of the United States Trustee as to each of the professional retention applications filed in the case, including a formal objection to the retention of Lazard. Sidley's professionals assisted applicants in filing supplemental disclosures where necessary, and in each instance were able to reach a consensual resolution with the United States Trustee.

38.   In addition, Sidley's professionals filed supplemental lists of ordinary course professionals ("OCP") and coordinated with the Debtors' legal department and financial advisors to develop and file monthly and quarterly reports of proposed payments to OCP. Sidley's professionals responded to numerous inquiries from the Committee with respect to such OCP reports.

**N.**   **Tax Issues (30520): Hours: 136.70 Fees: $97,614.00**

39.   During the Second Interim Fee Period, Sidley's professionals reviewed and analyzed a variety of tax issues on behalf of the Debtors, both arising from and in connection

with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in the ordinary course of the Debtors' business. For example, Sidley's professionals attended to the consideration and analysis of the tax implications of proposed transactions, handled appeals of tax assessments, and communicated with taxing authorities.

**O.    Claims Processing (30530): Hours:  251.10  Fees: $142,873.50**

40.    During the Second Interim Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases, covering the full spectrum of potential liabilities. Sidley's professionals also drafted and filed the Debtors' motion to establish a bar date for filing proofs of claims and approving the form and manner of notice. By order entered March 25, 2009, the Bankruptcy Court set June 12, 2009 as the bar date for filing proofs of claim in the Debtors' chapter 11 cases. The Debtors received and reviewed two requests for an extension of the bar date, from the Internal Revenue Service and the Federal Communications Commission, and reached a consensual resolution with each of the agencies in connection therewith.

**P.    Business Operations (30550): Hours:  353.50  Fees: $185,945.50**

41.    During the Second Interim Fee Period, Sidley's professionals have continued to work diligently with the Debtors to stabilize business operations and to implement the Debtors' "go forward" business plan. Additionally, Sidley continued to represent the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business.

42.    Cash management matters continued to consume substantial time and effort by Sidley's professionals. Since entry of the interim cash management order, Sidley's professionals have worked with the Debtors, their depository banks, and the United States Trustee to ensure compliance with the terms of the order and to close and migrate accounts as appropriate. The Debtors' proposed final cash management order was extensively reviewed with

18

the Committee, Steering Committee, and the office of the United States Trustee, mostly with regard to intercompany transactions.  On April 30, 2009, the Court approved the Debtors' final cash management order.  Upon the United States Trustee's request, the Debtors excluded from the final order section 345 relief regarding the Debtors' investment accounts and cash collateral account pursuant to the letter of credit facility and agreed to section 345 relief on foreign accounts up to a "capped" amount.  Sidley's professionals continue to discuss section 345 relief as to the investment and cash collateral accounts with the United States Trustee.

**Q.**      **Case Administration (30560): Hours:  346.90  Fees: $164,725.00**

43.      During the Second Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings, and maintaining a schedule of critical dates and deadlines.   On a weekly basis during this Second Interim Period, Sidley's professionals participated in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of each hearing.

44.      Additionally, Sidley's professionals have filed two additional supplements to the Debtors' 2015.3 Extension Motion, requesting additional time to comply with the reporting requirements imposed under newly enacted Bankruptcy Rule 2015.3.  The hearing on the 2015.3 Extension Motion has been continued at the request of the United States Trustee and Sidley's professionals have been engaged in ongoing discussions regarding the 2015.3 Reports with the United States Trustee.

**R.**      **Creditor Communications (30570): Hours:  49.20  Fees: $27,764.00**

45.      Throughout the Second Interim Fee Period, Sidley's professionals have responded to numerous inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies.

S.      **Bankruptcy Schedules (30580): Hours: 217.80 Fees: $124,778.50**

46.     On March 23, 2009, the Debtors filed their schedules of assets and
liabilities and statements of financial affairs (the "Schedules and Statements") with respect to
each of the Debtors. The Schedules and Statements were amended on April 13, 2009. The
preparation of the Schedules and Statements and the amendment thereto has been a significant
and time consuming undertaking for the Debtors and their professionals during the Second
Interim Fee Period, entailing the collection, review and categorization of thousands of documents
and intensive coordination with all of the Debtors' various business units.

T.      **Employee Issues (30590): Hours: 964.40 Fees: $552,184.50**

47.     During the Second Interim Fee Period, Sidley's professionals in the
bankruptcy and employee benefits practice groups devoted substantial time reviewing existing
and proposed employee benefit programs and addressing the treatment of current and former
employees. Specifically, the Sidley's professionals prepared and obtained approval of a motion
to allow the Debtors to provide medical benefits to employees terminated prior to the
implementation of the postpetition severance arrangement (the "Medical Benefits Motion") on
March 5, 2009. Sidley's professionals prepared and filed a second motion requesting the
authority to continue the Debtors' medical benefits until the earlier of (i) the April 24 or (ii) the
end of the applicable severance periods (the "Second Medical Benefits Motion"), which was
approved on April 7, 2009. Finally, Sidley's professionals prepared and filed a motion to
authorize the Debtors to provide any remaining medical benefits to employees terminated prior
to the postpetition severance plan (the "Final Medical Benefits Motion"), which was granted on
April 24, 2009.

48.     Sidley's professionals worked in cooperation with the Debtors and Mercer
(U.S.), Inc. ("Mercer"), an independent compensation consultant, to formulate and present to the

Court a motion for the authority to make certain payments under the 2008 MIP and to comply with certain other local bonus obligations (the "MIP Motion"). The payments requested under the MIP Motion totaled approximately $12.243 million, covering approximately 670 participants. The MIP Motion also sought authority to pay approximately $1.1 million in the aggregate under certain local bonus programs maintained by the Debtors. Sidley's professionals also filed a motion requesting the authority to pay severance to certain employees not covered under the initial severance motion. The aggregate amount requested under the Second Severance Motion was $2.6 million. The Office of the United States Trustee objected to the MIP Motion and the Second Severance Motion. Sidley's professionals coordinated with the Debtors and with Mercer to respond to these objections and prepared and presented testimony to the Court in support of the MIP Motion and the Second Severance Motion. The Court granted the relief requested in the MIP Motion, and granted the relief requested as to two employees and denied all other relief requested in the Second Severance Motion.

49.     In addition to the foregoing motions, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, responded to numerous information requests of current and former employees, assembled and analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**U.    Asset Disposition (30600): Hours:  470.60  Fees: $289,368.50**

50.     During the Second Interim Fee Period, Sidley's professionals continued to advise the Debtors in connection with the proposed disposition of the Chicago Cubs and related assets. Sidley's professionals accordingly performed a range of tasks as requested by the Debtors' management relating to such disposition and regularly communicated with the professionals of the Committee and the Steering Committee on the status of these efforts.

## EXPENSES INCURRED

51.     Sidley has incurred expenses of $105,524.36 in connection with its services rendered to the Debtors during the Second Interim Fee Period.  These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, and in-house document production.  Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in this case, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in this case.

52.     Sidley submits that all travel expenses incurred during the period covered by this Application were necessary and reasonable under the circumstances.  In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

53.     A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of Attachment B hereto.

## REVIEW OF APPLICABLE LOCAL RULE

54.     The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## NOTICE

55.    Notice of this Application has been served upon the Notice Parties specified in the Fee Orders.  In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

56.    Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $4,209,274.75 and reimbursement of expenses in the amount of $105,524.36, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this second Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: July 16, 2009

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Janet E. Henderson
Kenneth P. Kansa
Jillian K. McClelland
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION

24