**EXHIBIT 1**

**DECLARATION OF STEPHEN TIPPIE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
In re:                                                         :   Chapter 11
                                                               :
TRIBUNE COMPANY, et al.,                                       :   Case No. 08-13141 (KJC)
                                                               :
           Debtors.                                            :   Jointly Administered
                                                               :   Related to Docket No. 1598
---------------------------------------------------------------x

### DECLARATION OF STEPHEN TIPPIE

I, Stephen Tippie, hereby state and declare as follows:

**A.   INTRODUCTION.**

1.  I am Vice President of Licensing and New Market Development at Tribune Media Services, Inc. ("TMS"), and have held this position since 2004. I submit this Declaration in support of TMS's Objection to Motion for Relief from Stay, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) [Docket No. 1598] (the "Objection"). I have personal knowledge of the facts stated in this declaration, based both upon my knowledge and participation in the day to day affairs of the business while at TMS as well as my familiarity with business records of TMS that relate to my areas of responsibility.

2.  TMS is the owner of the copyright and other rights in the "Dick Tracy" property (the "Dick Tracy Property"). In my work as Vice President of Licensing and New Market Development, I am responsible for efforts by TMS to exploit and monetize this Dick Tracy Property in every way possible, including through feature films, television series, merchandising, video games, and publishing.

3.  My efforts to exploit and monetize the Dick Tracy Property have been stymied by the dispute over the Dick Tracy movie and television rights with Warren Beatty in at

least two different, but related, ways. First, TMS holds an undisputed property interest in Dick Tracy comic strip merchandising, including of video games, and the value of these rights is tied to the movie and television rights that are currently in dispute. The value of TMS's existing merchandising rights has been significantly undermined by the fact that there has been no Dick Tracy motion picture or televisions series since the 1990 Dick Tracy film.

4. Second, the disputed movie and television rights are themselves capable of producing an income stream to TMS. Despite entertainment industry interest in the Dick Tracy movie and television rights, Mr. Beatty's ongoing assertion of control over these rights has blocked my efforts to monetize these rights for the benefit of TMS.

**B. BACKGROUND.**

5. In August 1985, TMS and Warren Beatty entered into an agreement (the "Dick Tracy Agreement") whereby TMS "grant[ed] motion picture, television, and customary related rights" in the Dick Tracy Property to Mr. Beatty." A true and correct copy of the Dick Tracy Agreement is attached hereto as Exhibit A.

6. I am familiar with the fact that, in or about 1990, Mr. Beatty and Walt Disney Pictures released a motion picture entitled "Dick Tracy" under the Dick Tracy Agreement. Based on published reports on gross box office receipts, with which I am familiar in my work at TMS, this 1990 Dick Tracy motion picture earned approximately $162 million in gross box office receipts worldwide, ranking it as the ninth highest grossing film in the United States that year and the twelfth highest grossing film worldwide. *See* http://www.boxofficemojo.com/movies/?id=dicktracy.htm

7. Since this 1990 Dick Tracy motion picture, Mr. Beatty has not commenced or completed another theatrical motion picture or television series under the Dick Tracy Agreement.

8. On November 17, 2006, TMS served written notice pursuant to paragraph 9 of the Dick Tracy Agreement, of its intent to effect a reversion of all rights granted to Mr. Beatty in the Dick Tracy Agreement (the "2006 Reversion Notice"). A true and correct copy of this 2006 Reversion Notice is attached hereto as Exhibit B. In this 2006 Reversion Notice, TMS notified Mr. Beatty that, unless he commenced principal photography on another theatrical motion picture or television series or special under the Dick Tracy Agreement within two years, all rights granted to him under that Agreement would revert back to TMS

9. On November 18, 2008, TMS notified Mr. Beatty by letter that all rights in the Dick Tracy Property previously granted to Mr. Beatty had automatically reverted to TMS by operation of paragraph 9 of the Dick Tracy Agreement and TMS's 2006 Reversion Notice. A true and correct copy of this November 18, 2008 letter is attached hereto as Exhibit C.

### C. THE VALUE OF THE DICK TRACY PROPERTY TO TMS.

10. The value to TMS of the Dick Tracy Property has a number of different but related components. The most significant components are (i) revenues arising from exploitation of the Dick Tracy movie and television rights through the production of feature length motion pictures and series television; and (ii) revenues arising from merchandising of Dick Tracy products, including video games. Each component can potentially provide a substantial stream of income to TMS.

11. TMS currently owns the merchandising rights to the Dick Tracy comic strip character. Based on my work experience, the value of such merchandising rights would be significantly improved by the release of a Dick Tracy feature length motion picture or television series. Indeed, for certain projects, earnings from merchandising rights can rival the earnings from box office receipts, especially with films involving comic book characters. *See, e.g.*, NY

Times, Apr. 6, 2009, Pixar's Art Leaves Profit Watchers Edgy, http://www.nytimes.com/2009/04/06/business/media/06pixar.html.

12. Included in the merchandising rights, TMS owns the right to exploit the use of the Dick Tracy comic book character in video games. As with other merchandise, the value of a Dick Tracy video game would be greatly improved by the release of a Dick Tracy feature length motion picture or television series.

13. Relatedly, the value of TMS's existing and uncontested Dick Tracy merchandising rights has been undermined by the fact that there has been no Dick Tracy feature film or television series produced under the Dick Tracy agreement for almost twenty years. In my experience, such a motion picture or television series tie-in is of great importance to the development of value in our existing Tracy merchandising rights, including with regard to video games. My efforts to monetize these merchandising rights have been hampered by the fact that there has been no recent production of a Dick Tracy feature film or television series.

D. **THE ONGOING DISPUTE OVER CONTROL STYMIES THE MONETIZATION OF THE DICK TRACY MOVIE AND TELEVISION RIGHTS.**

14. The Dick Tracy movie and television rights are capable of producing substantial revenue streams for TMS. In my work at TMS, for example, I am familiar with the recent success of motion pictures based on other comic book characters. *See* http://www.boxofficemojo.com/genres/chart/?id=comicbookadaptation.htm. TMS's ability to monetize this valuable asset has been blocked by the ongoing dispute with Mr. Beatty over control of these rights.

15. In my experience, there has been significant interest in the film and television industry in the Dick Tracy rights. Despite entertainment industry interest in the Dick Tracy rights, it is my experience that financing for a Dick Tracy motion picture or other

4

significant project is very difficult to obtain so long as Mr. Beatty continues to challenge TMS's control over these rights.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on July 21, 2009

Stephen Tippie

# EXHIBIT A

TRIBUNE MEDIA SERVICES, INC.
720 North Orange Avenue
Orlando, Florida 32801

August 26, 1985

Mr. Warren Beatty
c/o Bertram Fields, Esq.
Greenberg, Glusker, Fields,
  Claman & Machtinger
1900 Avenue of the Stars
Suite 2000
Los Angeles, California 90067

Re: "Dick Tracy"

Dear Mr. Beatty:

This letter shall constitute our preliminary agreement regarding the grant of certain rights with respect to the "Dick Tracy" property:

1. Rights to be Granted

Tribune Media Services, Inc. ("TMS") will grant motion picture, television, and customary related rights in its property, "Dick Tracy," including but not limited to all past, present or future characters and story material (the "property"), to Mr. Beatty.

2. Term

(a) Mr. Beatty will attempt to enter into an agreement (or agreements) for the financing and distribution of a feature picture based on the property (the "picture") on terms satisfactory to him. Mr. Beatty will either write, co-write, or supervise the writing of any new screenplay or revisions of the old screenplay, which he deems necessary to effect such an agreement.

(b) If Mr. Beatty does not enter into such an agreement within one year beginning August 1, 1985 and expiring

EXHIBIT A

Mr. Warren Beatty
August 28, 1985
Page 2

July 31, 1986, then all rights in the property shall revert to TMS.

(c) Mr. Beatty will have an option to renew said one year period for an additional six months if he has been unable to complete such a financing/distribution contract within the initial one year period.

(d) If a financing/distribution agreement is entered into within the time specified in 2(b) or (c), but principal photography of the picture is not commenced within one year from signing of the financing/distribution agreement, then all such rights shall nevertheless revert to TMS, provided that Mr. Beatty will have an option to renew said one year period for the start of principal photography for an additional year upon advance payment of the sum provided for under 3(a)(2) below.

3. Payments to TMS

If the rights do not revert to TMS, the following shall apply with reference to the picture:

(a) TMS shall be paid $500,000 as a "rights fee," payable as follows:

(1) $125,000 on signing the financing/distribution agreement;

(2) $125,000 on start of principal photography; and

(3) $250,000 deferment; the term "deferment" as used herein is defined as an amount payable, pari passu with other such deferments, when actual break-even is reached (as customarily defined in the U.S. motion picture business, i.e., the point at which gross receipts less distribution fees and costs equal production costs plus interest) from the first gross receipts after such break-even, less only distribution costs and fees incurred thereafter, and before payment of any share of net profits to any net profit participant.

(b) The foregoing payments shall be non-refundable.

(c) In addition to the payments specified under 3(a) above, TMS shall receive a sum equal to 6% of 100% of the net profits of the picture. In determining net profits of the

Mr. Warren Beatty
August 28, 1985
Page 3

picture, the maximum amount of deferments deducted from net profits shall be $500,000.

4. Payments to TMS - Sequels and Remakes

TMS shall receive one-half of the foregoing on all sequels or remakes.

5. Series Television

(a) TMS shall receive $2,000 per half hour program, and $3,500 per program if the program is longer than a half hour, which payment shall cover the first two uses thereof as defined in the then-current WGA Television Film Freelance Basic Agreement. Within ten days following the first telecast of the third use of any program, Mr. Beatty shall pay to TMS an additional amount equal to 50% of the above amounts, and within ten days following the first telecast of each of the fifth and seventh uses an amount equal to 25% of the amount specified above.

(b) TMS' profit participation in series television programs shall be the same as for motion pictures.

6. Television Specials

(a) TMS shall receive $15,000 per half hour, $25,000 for each hour, and $50,000 or the network rights allowance, whichever is greater, for each show running one hour or more. Such payment shall cover the first use thereof as defined in the then-current WGA Television Film Freelance Basic Agreement. Within ten days following the first telecast of each other use of any special, Mr. Beatty shall pay to TMS an additional amount equal to 50% of the foregoing amount.

(b) TMS' profit participation in television specials shall be the same as for motion pictures.

7. Retained Rights

(a) TMS will retain all rights in and to the property not specifically granted to Mr. Beatty, including, without limitation, animation, comic strip, publishing (other than publishing of materials advertising or exploiting any motion picture or television series or special based on the property), merchandising, radio, cartoon syndication, and live stage rights. Except as otherwise specified herein and subject to rights of reversion, all rights granted are in perpetuity.

Mr. Warren Beatty
August 26, 1985
Page 4

    (b) TMS warrants that it has the sole and exclusive right to enter into this agreement, and agrees to extend to Mr. Beatty the same representations and warranties that Chester Gould extended to Art Linson Productions, Inc., in their agreement dated October 20, 1977, subject to the listing of previous uses of the property in an updated copyright report to be furnished by Brylawski and Cleary and subject to a listing of rights granted by TMS, Gould and his representatives since October 20, 1977.

8. **Merchandising**

    (a) Mr. Beatty will receive 20% of the domestic gross merchandising revenue and 27-1/2% of the foreign gross merchandising revenue after deducting any fee paid to a foreign licensing agent not affiliated with TMS. Mr. Beatty's share of such merchandising revenue will be paid to him no less frequently than quarterly, together with a written report on the amounts and sources of such revenues.

    (b) "Gross merchandising revenue" as used herein includes the gross payments and other consideration, without deduction of any sort, from manufacturers and other licensees, for or in respect of the right to use (other than in the exhibition of the picture) the "Dick Tracy" characters (whether in cartoon form, photographed or otherwise) and/or "Dick Tracy" story-lines, and/or items or objects of any sort used by or associated with such characters (as portrayed in the picture or otherwise), including but not limited to such use in, on or as books, magazines, games, toys, radios, watches, puzzles, posters, clothing, souvenirs and items and objects of every sort whatsoever.

    (c) Comic strip revenues are specifically excluded from merchandising revenue.

    (d) TMS may use Mr. Beatty's name and his likeness portraying Dick Tracy in the picture, in merchandising connected with the picture, provided that: (1) such likeness is clearly identifiable as the character "Dick Tracy," rather than simply Mr. Beatty, as himself, (2) the likeness, the objects upon which it is to be used, and the manner of its use are expressly approved in writing by Mr. Beatty (such approval not to be unreasonably withheld), and (3) no license of such rights will extend beyond two years without Mr. Beatty's express written consent.

Mr. Warren Beatty
August 28, 1985
Page 5

(e) If TMS intends to license Mr. Beatty's said likeness, TMS will first give Mr. Beatty written notice, setting out the nature and term of that license, enclosing also a sample of the intended merchandise or object, the likeness to be used, and the manner in which said likeness would be used. If Mr. Beatty does not notify TMS of his disapproval of such license within 30 days after his receipt of such written notice and enclosures, he shall be deemed to have approved the same.

(f) Notices to TMS shall be given at its address listed above. Notices to Mr. Beatty shall be given to him c/o Traubner & Flynn, Business Management, 1849 Sawtelle Boulevard, Suite 500, Los Angeles, California 90025, with a copy to Bertram Fields, Esq., at his address shown above. Except as expressly provided to the contrary, such notices shall be effective on mailing to such addresses by certified or registered mail.

9. Reversion

In the event that, within five years after the initial domestic release of the picture, or any subsequent theatrical picture or television series or special, photography has not commenced on either another theatrical motion picture or television series or special, TMS may give Mr. Beatty notice of its intention to effect a reversion of all rights granted hereunder, provided that Mr. Beatty will continue to have such non-exclusive rights in the property as may be necessary to permit the continued exploitation in and by any and all media of any motion picture or television series or special produced pursuant to rights granted herein or of rights therein or connected therewith. If within two years after receipt of said notice, such principal photography has not commenced, then TMS, by a further written notice to Mr. Beatty, may effect such a reversion.

10. Characters

Mr. Beatty recognizes that in creating future cartoons for newspaper or magazine publication in comic strip format, TMS must be free to utilize the characters previously utilized and appearing in the property and any other material and descriptions and incidents relating thereto without fear of claims of infringement from any person participating in the production of a motion picture, television series or special. Accordingly, neither Mr. Beatty nor any writer or other person participating in the preparation of material for, or production of, a motion picture, television series or special pursuant to

Mr. Warren Beatty
August 28, 1985
Page 6

rights granted hereunder, shall make, or have any right to make, any claim against TMS or anyone claiming rights through TMS based upon an allegation that such person, in preparing any future cartoon for newspaper or magazine publication, has infringed upon, or made use of, any material created in the course of preparation for, or production of, a motion picture, television series or special pursuant to rights granted in this Agreement. Mr. Beatty agrees to incorporate the provisions of this Paragraph 10 in any agreement entered into between him and any writer, producer, director or other person whose services will include the creation of legally protectible literary property. Notwithstanding the foregoing, this Paragraph 10 shall not give TMS rights in any new character created for motion picture or television production or the right to use the storyline of any such production, and this paragraph shall be subject to the requirements of the WGA Minimum Basic Agreement from time to time in force. Should the WGA Minimum Basic Agreement require some payment or contribution to or for the benefits of any writer and/or the WGA by reason of the use of such writer's work by TMS in a newspaper or magazine, TMS will pay and hold Mr. Beatty harmless from that payment or contribution.

This letter agreement shall constitute our agreement until a more detailed contract is prepared and executed by both parties.

Very truly yours,

TRIBUNE MEDIA SERVICES, Inc.

By: /s/ Robert S. Reed
ROBERT S. REED, President

ACCEPTED AND AGREED:

/s/ Warren Beatty
WARREN BEATTY

# EXHIBIT B

B. A. Fulkerson
Senior Counsel/Intellectual Property & Interactive
312/222-4653



Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611-4066
fax: 312/222-4206
e-mail: bfulkerson@tribune.com

November 17, 2006

**Via Certified Mail Signature Required
and DHL Express**

Mr. Warren Beatty
c/o Traubner & Flynn
Business Management
1849 Sawtelle Boulevard, Suite 500
Los Angeles, CA 90025

Mr. Steven Bardwil
Walt Disney Pictures
500 South Buena Vista Street
Burbank, CA 91521

Mr. Warren Beatty
c/o Bertram Fields, Esq.
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars
21st Floor
Los Angeles, CA 90067

Re:   **Notice Regarding Tribune Media Services' Intention to Revert Rights**

Dear Messrs. Beatty and Bardwil:

As you know, Paragraph 9 of the August 28, 1995 agreement between Tribune Media Services ("TMS") and Mr. Beatty (the "Dick Tracy Agreement") provides that "[i]n the event that, within five years after the initial domestic release of the picture, or any subsequent theatrical picture or television series or special, photography has not commenced on either another theatrical motion picture or television series or special, TMS may give Mr. Beatty notice of its intention to effect a reversion of all rights granted hereunder..."

This letter shall serve as notice that TMS intends to effect a reversion of all rights granted to Mr. Beatty pursuant to the Dick Tracy Agreement and the amendment thereto dated May 15, 1988. Unless, as required by Paragraph 9 of the Dick Tracy Agreement, you commence principal photography on "another theatrical motion picture or television series or special" within two years after receipt of this notice, TMS will provide you with another written notice, at which time all rights in the Dick Tracy Property will revert to TMS.

This letter shall not be construed as an admission by TMS of any kind. It is TMS's position that the notices previously served on Walt Disney Pictures by it met the reversion requirements of the Dick Tracy Agreement. However, TMS hereby withdraws those previous notices and gives notice to you that you have two years from your receipt of this notice to commence principal photography on another theatrical motion picture or

Mr. Warren Beatty
Mr. Steven Bardwil
November 17, 2006
Page 2 of 2

television series or special and TMS will not interfere with your exercise of the rights in the Dick Tracy Property consistent with the Dick Tracy Agreement, as amended.

In the event the Court grants TMS's motion for leave to amend its pleading in *Warren Beatty v. Tribune Media Services, Inc*, Case No. CV05-3938 DDP (SSx), TMS will voluntarily dismiss its claim for a declaratory judgment. Finally, this letter should not be construed as a waiver of any rights or defenses TMS may have in that action or any other matter.

Very truly yours,

*Beth Fulkerson*

Beth Fulkerson

cc: Bertram Fields, Esq.
Jacob Yellin, Esq.

# EXHIBIT C





**David D. Williams**
President and Chief Executive Officer
312.222.8658
ddwilliams@tribune.com

November 18, 2008

**Via Certified Mail Signature Required
and DHL Express**

Mr. Warren Beatty
c/o Traubner & Flynn
Business Management
1849 Sawtelle Boulevard, Suite 500
Los Angeles, California 90025

Mr. Warren Beatty
c/o Bertram Fields, Esq.
Law Offices of Greenberg Glusker
Fields Claman & Machtinger LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Re: Notice Regarding Tribune Media Services' Reversion of Rights

Dear Mr. Beatty:

On November 17, 2006, Beth Fulkerson served notice of Tribune Media Service's intent to effect a reversion of all rights licensed to you in the August 28, 1985, agreement between Tribune Media Services ("TMS") and you (the "Dick Tracy Agreement").

Under Paragraph 9 of the Dick Tracy Agreement, if you do not commence principal photography within two years of such notice, TMS can effect reversion by further written notice to you.

We have received no notice that you commenced principal photography on a Dick Tracy motion picture, television series or television special by November 17, 2008.

By this further written notice to you, all rights licensed to you under the Dick Tracy Agreement hereby automatically revert to TMS.

Sincerely,

David D. Williams

Corporate Headquarters • 435 N. Michigan Avenue • Suite 1500 • Chicago, IL 60611 • 312.222.4444