# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: August 11, 2009 at 10:00 a.m. EDT**
**Objection Deadline: August 4, 2009 at 4:00 p.m. EDT**

## MOTION OF DEBTORS TRIBUNE COMPANY AND CHICAGO TRIBUNE COMPANY FOR AN ORDER AUTHORIZING THE DEBTORS TO (I) ASSUME THE METROMIX LLC LIMITED LIABILITY COMPANY AGREEMENT, AS AMENDED, PURSUANT TO 11 U.S.C. § 365; (II) COMPROMISE AND RELEASE CLAIMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; AND (III) ENTER INTO NEW AGREEMENTS PURSUANT TO 11 U.S.C. § 363(B)

Debtors Tribune Company ("Tribune") and the Chicago Tribune Company

("CTC") (collectively, the "Debtor Tribune Parties") hereby move this Court (the "Motion") for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

entry of an order, pursuant to sections 365(a) and 363(b) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing the assumption of the Metromix LLC Limited Liability

Company Agreement, as amended; the compromise and release of certain claims; and the entry

into certain new agreements, all in connection with a proposed restructuring of the relationship

between the Tribune Debtor Parties and the Metromix joint venture.  In support of the Motion,

the Debtor Tribune Parties state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.        On December 8, 2008 (the "Petition Date"), each of the above-

captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.

2.        The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

3.        The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

4.        On December 18, 2008, the United States Trustee for the District of

Delaware appointed an official committee of unsecured creditors (the "Committee").  No request

has been made for the appointment of a trustee or examiner.  The Committee has been apprised

of the relief requested herein.

5.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are sections 365(a) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND OF THE MOTION

6.        Tribune, a debtor in the above-captioned case, is America's largest

employee-owned media company and is the ultimate parent company of each of the Debtors.

Tribune operates businesses in publishing, interactive media, and broadcasting.  These operations

are conducted through two business divisions: (i) publishing and (ii) broadcasting and

entertainment.

7.        In the late 1990s, CTC launched the website Metromix.com

("Metromix"), an entertainment guide that provides users with information on Chicago

restaurants, bars, events, music, movies, style, and television.  Over the years, Metromix has

been a popular local entertainment site in Chicago, generating revenue for the Tribune Parties

through advertisements on the site.

8.        In October 2007, Tribune, CTC and Tribune Interactive, Inc. ("TI", and

together with the Debtor Tribune Parties, the "Tribune Parties"), and Gannett Satellite

Information Network, a Delaware corporation ("Gannett"), entered into the Metromix LLC

Limited Liability Company Agreement (the "LLC Operating Agreement"), thereby launching

Metromix LLC.  Metromix LLC, which is owned 50% by Gannett and 50% by the Tribune

Parties, was created in an attempt to replicate the success of Metromix in Chicago across

multiple markets.  The joint venturers' goal was to create a national network of local

entertainment sites that could serve as an attractive advertising medium for large, national

advertisers.  After Metromix LLC's formation, the joint venture launched local Metromix sites in

each of the Tribune and Gannett newspaper markets, as well as certain television markets.

9.      In conjunction with the formation of Metromix LLC, the Tribune Parties contributed certain assets to the joint venture, including trademarks, other intellectual property, and cash.  Gannett contributed cash to the joint venture.  Tribune and TI also entered into a Services Agreement with Metromix LLC to provide the joint venture with various administrative services, such as payroll, accounts payable and information technology, on an interim basis (the "Services Agreement").  The Services Agreement expired on December 31, 2008.

10.      Also in connection with the formation of the joint venture, Tribune and Gannett each entered into an affiliate agreement with Metromix LLC (individually an "Affiliate Agreement," and collectively the "Affiliate Agreements").  The Affiliate Agreements govern the relationship between each Metromix website in the Gannett and Tribune markets and Metromix LLC, including items such as the relative rights and responsibilities for designing, maintaining and hosting the websites, providing relevant entertainment content, and conducting advertising sales efforts.  In regard to advertising sales, the Affiliate Agreements contain provisions governing the allocation of certain advertising inventory on each Metromix website between the local affiliate and the central joint venture, including which party has the ability to sell such inventory and the relevant revenue split that occurs when such inventory is sold.

11.      The LLC Operating Agreement contains provisions regarding the organization, voting and governance of the joint venture, including provisions relating to capital contributions.  The LLC Operating Agreement requires each member to make cash capital contributions above and beyond those made at the joint venture's inception, as requested by the Chief Executive Officer of Metromix LLC.  As of the date of this Motion, the Tribune Parties' remaining obligations under this mandatory capital contribution requirement were approximately

46429/0001-5874894v1

$6.5 million (the "Tribune Additional Capital Amount"), of which $1.8 million has already been requested by the Chief Executive Officer of Metromix LLC but has not yet been contributed by the Tribune Parties.

12.      Over the past several months, the Tribune Parties and Gannett have engaged in discussions regarding restructuring the relationship between the Tribune Parties and Metromix LLC, which would, among other things, (i) relieve the Tribune Parties from any obligation to fund the Tribune Additional Capital Amount, (ii) allow the Tribune Parties to continue to use the Metromix name in their existing newspaper markets without the rules, restrictions and obligations contained in the current Affiliate Agreements, (iii) preserve the joint venture as a platform for national advertisers, and (iv) resolve the outstanding payment obligations of Metromix LLC to the Tribune Parties under the Services Agreement. As a result of these discussions, the Tribune Parties and Gannett have agreed to a series of transactions to effectuate a restructuring of the relationship between the Tribune Parties and Metromix LLC. As described below, the Tribune Parties and Gannett have agreed to amend the LLC Operating Agreement and the Debtor Tribune Parties have agreed to assume the LLC Operating Agreement, as amended, effective upon the later to occur of the parties' execution of the agreements attached as Exhibit A through Exhibit E and the Court's authorization of the relief requested in this Motion (the "Effective Date"), and the Tribune Parties and Gannett have agreed to terminate the Tribune Affiliate Agreement and to enter into four additional agreements.

13.      The Tribune Parties and Gannett have agreed to amend the LLC Operating Agreement by entering into Amendment No. 1 to Metromix LLC Limited Liability Company Agreement (the "Amendment"), attached, together with the LLC Operating Agreement, as Exhibit A. Most significantly, the Amendment removes the concept of mandatory

46429/0001-5874894v1

contributions from the LLC Operating Agreement so that the Tribune Parties are permitted, but are not required, to make any additional capital contributions to the joint venture if Metromix LLC determines that additional capital is required.

14.     The Tribune Parties and Gannett have also agreed to enter into four new agreements: the Settlement Agreement, attached as <u>Exhibit B</u>; the Agreement, attached as <u>Exhibit C</u>; the Transition Services Agreement, attached as <u>Exhibit D</u>; and the Trademark Assignment, attached as <u>Exhibit E</u> (collectively, the "<u>New Agreements</u>").

15.     These New Agreements may be summarized as follows.  The Agreement provides, among other things, an overview of the transactions occurring under the restructuring, terminates the Tribune Affiliate Agreement, and prohibits Metromix LLC from affiliating with any other parties or using the Metromix name in any of Tribune's current newspaper markets.  The Settlement Agreement resolves disputes between certain Tribune Parties and Metromix LLC regarding amounts Metromix LLC owes under the Services Agreement.  The Transition Services Agreement provides for some mutual assistance between the Tribune Parties and Metromix LLC in separating some of the technologies they currently use and in migrating the Tribune Parties to their own website platforms.  The Trademark Assignment provides for the assignment by Metromix LLC back to Tribune of the Metromix trademarks in Tribune's current newspaper markets.

<b><u>RELIEF REQUESTED</u></b>

16.     By this Motion, the Debtor Tribune Parties seek entry of an order (a) authorizing them to assume the LLC Operating Agreement, as amended, pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date; (b) approving, pursuant to Bankruptcy Rule 9019, the compromise, settlement and release of certain claims relating to the Services

46429/0001-5874894v1

Agreement; and (c) approving their entry into the New Agreements.  The Debtor Tribune Parties

believe that the entry into the New Agreements is within the ordinary course of their business

operations; however, as the New Agreements are part of a larger restructuring which includes

transactions for which Bankruptcy Court approval is required (i.e. the assumption of the

Operating Agreement and the compromise and release of claims), out of an abundance of caution

they are included within the requested relief.

**BASIS FOR RELIEF**

I.      **Assumption of the Amended LLC Operating Agreement**

17.        Section 365(a) of the Bankruptcy Code provides that a debtor, "subject

to the court's approval, may assume or reject an executory contract or an unexpired lease."  11

U.S.C. § 365(a); *see University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d

1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a

contract pursuant to procedures set forth in section 365(a)).  A debtor's assumption or rejection

of an executory contract is subject to review under the business judgment standard.  *In re ANC*

*Rental Corp.*, 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("[T]o assume and assign an executory

contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound

business judgment."); *see In re Federal-Mogul Global Inc.*, 293 B.R. 124, 126 (Bankr. D. Del.

2003) ("motions to reject executory contracts are evaluated under the business judgment test").

18.        Under the business judgment standard, a debtor is required to provide a

reason that, in its business judgment, assuming or rejecting a particular executory contract or

unexpired lease benefits the debtor's estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist.*

*Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989).  In addition, the debtor must articulate the bases for its

determination.  *Id.*  Once the debtor has met its burden, "a court should approve a debtor's

business decision unless the decision is the product of bad faith or gross abuse of discretion."

7

*See Federal-Mogul*, 293 B.R. at 126; *see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986); *Enterra Corp. v. SGS Assocs.*, 600 F. Supp. 678, 684-85 (E.D.Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching).

19.       Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. *See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.),* 6 F.3d 492, 496 (7th Cir. 1993).

20.       In the Debtor Tribune Parties' business judgment, the assumption of the LLC Operating Agreement, as amended, is in the best interests of their estates and creditors. Assuming the amended LLC Operating Agreement will allow the Tribune Parties to eliminate the obligation to contribute cash to the joint venture at a time when the Debtors may reasonably desire to invest or deploy their capital elsewhere, while still enabling the Debtors to maintain an equity interest in the joint venture.  Assumption of the LLC Operating Agreement also goes hand in hand with the execution of the New Agreements, which are beneficial for a number of reasons. Among other things, the Trademark Assignment, coupled with the termination of Tribune's Affiliate Agreements, will enable the Tribune Parties to continue to operate their existing local entertainment sites under the Metromix brand without the sales and other restrictions, responsibilities, and obligations under which they previously had to operate.  The Settlement Agreement will cause the payment of amounts owing to Tribune that otherwise may have

8

remained unpaid for an unknown period of time. Lastly, the assumption of the amended LLC

Operating Agreement will not require the payment of cure amounts for outstanding capital call

obligations, which are deemed credited and satisfied under the Settlement Agreement. The

Debtors, including the Tribune Parties, have post-petition financing in place and maintain

sufficient liquidity to perform their post-petition contractual obligations under the amended LLC

Operating Agreement. In light of the foregoing, the assumption of the amended LLC Operating

Agreement benefits the Debtors' estate and is therefore a valid exercise of the Debtor Tribune

Parties' business judgment.

## II.    Compromise, Waiver, and Release of Claims Pursuant to Bankruptcy Rule 9019

21.    By this Motion, the Debtor Tribune Parties also seek, pursuant to

Bankruptcy Rule 9019, the Court's authorization for a settlement of amounts owed by Metromix

LLC to certain Tribune Parties under the Services Agreement and of amounts owed by the

Tribune Parties to Metromix LLC under the LLC Operating Agreement, as well as a complete

mutual release of any other claims between the Tribune Parties and Metromix LLC under the

Services Agreement. These compromises and releases are embodied in the Amendment,

attached as Exhibit A, and the Settlement Agreement, attached as Exhibit B.

22.    Bankruptcy Rule 9019 provides the Court with the power to authorize

the release the Tribune Parties and Metromix LLC have proposed. Rule 9019 provides: "On

motion by the trustee and after notice and a hearing, the court may approve a compromise or

settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture

trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R.

Bankr. P. 9019(a). Section 363 of the Bankruptcy Code is a substantive provision requiring a

hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure

by which such approval may be secured. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395

46429/0001-5874894v1

n.2 (3d Cir. 1996) (distinguishing the substance of section 363 from the procedural effect of

Bankruptcy Rule 9019).

      23.      Courts in this district have emphasized that "to minimize litigation and

expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'"

*In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting *Louise's,

Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *see also In re Martin*, 91 F.3d at 393 (quoting 9 *Collier

on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr.

M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and … much of

litigation in bankruptcy estates results in settlements"). In determining whether to approve a

settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a

bankruptcy court is required to "assess and balance the value of the claim that is being

compromised against the value to the estate of the acceptance of the compromise proposal." *In

re Martin*, 91 F.3d. at 393. In making this determination, a court should consider four criteria:

"(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the

complexity of the litigation involved, and the expense, inconvenience and delay…; and (4) the

paramount interest of the creditors." *Id.* (citing *Protective Comm. for Indep. Stockholders of

TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *see also In re Marvel Entm't

Group*, 222 B.R. at 249 (finding analysis of the *Anderson* factors determines whether a

settlement should be approved). The ultimate inquiry is whether the compromise is fair,

reasonable, and in the interest of the estate. *See In re Louise's*, 211 B.R. at 801.

      24.      The Tribune Parties' and Metromix LLC's settlement and mutual

release in connection with the Services Agreement is a fair and reasonable compromise that is in

the best interests of the estate, and represents the product of arm's-length negotiations between

46429/0001-5874894v1

the parties. The Settlement Agreement is integral to the overall restructuring of the Metromix

LLC relationship and provides significant benefit to the estate, not only by facilitating favorable

new business arrangements for the Tribune Parties pursuant to the Metromix restructuring, but

also by relieving the Tribune Parties of significant present and future monetary obligations,

generating immediate cash consideration to the estate without the uncertainty and cost of

litigation, and putting to rest the possibility of future claims by the parties under a now-expired

agreement. As a result, the value to the estate from the compromise is substantial. Accordingly,

the Tribune Parties believe this compromise is in the best interests of their estates and creditors.

**III.    Entry into New Agreements**

        25.      As noted, the Debtor Tribune Parties do not believe their entry into the

New Agreements, standing alone, would implicate Bankruptcy Code section 363(b), as they

believe entering such agreements would be within the ordinary course of their business.

Because, however, the New Agreements are part of the larger restructuring of the Metromix

relationships, which include elements that require court authorization, out of an abundance of

caution, the Debtor Tribune Parties seek authorization under section 363(b) to enter into the New

Agreements.

        26.      Section 363 of the Bankruptcy Code provides that a debtor, "after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1) (2009). Section 105(a) of the Bankruptcy Code

further provides that "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title." 11 U.S.C. § 105 (2009).

        27.      Courts in the Third Circuit have approved the use of a debtor's assets

outside of the ordinary course of business when the debtor proposes a sound business

justification for the use of assets. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395

(3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *see also In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (same); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363).

28.      A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner outside the ordinary course of business. *See Lionel Corp.*, 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed action, the court will presume the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule essentially shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or gross abuse of discretion. *See In re Global Crossing*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29.      There are substantial business justifications for authorizing the Debtor Tribune Parties to enter into the New Agreements with Metromix LLC. The New Agreements are part of a beneficial restructuring of the relationship between the Tribune Parties and the Metromix joint venture and represent the product of arms-length, good-faith negotiations between the parties. After extensively evaluating the terms of the New Agreements, the Tribune

46429/0001-5874894v1

Parties believe the terms are fair and reasonable, consistent with industry practice, and economically favorable to the Tribune Parties.  The New Agreements will allow the Tribune Parties to retain the aspects of the Metromix Chicago site that have, historically, been financially rewarding, while relieving them of various unfavorable financial requirements and operating restrictions.

30.       For the foregoing reasons, the Debtor Tribune Parties, seek authorization under Bankruptcy Code section 363(b) to enter into the New Agreements.

## <u>NOTICE</u>

31.       Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the Steering Committee for the Debtors' pre-petition loan facilities; (vii) counsel to the administrative agent for the Debtors' post-petition financing facility; (viii) counsel to Gannett; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Tribune Parties submit no other or further notice is necessary.

## <u>NO PRIOR REQUEST</u>

32.       The Debtors have not previously sought the relief requested herein from this or any other Court.

46429/0001-5874894v1

WHEREFORE, the Tribune Parties respectfully request that the Court enter an order, in substantially the form attached hereto as <u>Exhibit F</u>, (i) authorizing upon the occurrence of the Effective Date, (a) the Debtor Tribune Parties' assumption of the amended LLC Operating Agreement pursuant to Bankruptcy Code section 365(a); (b) the parties' settlement, waiver and mutual release of claims as set forth in the Settlement Agreement, pursuant to Bankruptcy Rule 9019; and (c) the Tribune Parties' entry into the New Agreements pursuant to Bankruptcy Code section 363(b); and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       July 22, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Alison R. Leff
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-5874894v1