# EXHIBIT C

# Agreement

## AGREEMENT

This **AGREEMENT** (this "Agreement") is entered into as of this 22nd day of July 2009 (the "Effective Date") by and among Tribune Company, a Delaware corporation ("Tribune"), Tribune Interactive, Inc., a Delaware corporation ("Tribune Interactive") and Metromix LLC, a Delaware limited liability company ("Metromix").

## WITNESSETH:

**WHEREAS,** Tribune and Metromix have entered into a certain Affiliate Agreement dated as of October 29, 2007 (the "Metromix Affiliate Agreement"), and Tribune and Metromix desire to terminate the Metromix Affiliate Agreement; and

**WHEREAS,** after termination of the Metromix Affiliate Agreement, Tribune and/or its subsidiaries (collectively, the "Tribune Parties") will operate or have operated on their behalf local entertainment Web sites without any obligations to Metromix;

**WHEREAS,** Tribune and Metromix desire to have certain terms and conditions govern the parties interactions in certain markets where a Tribune Party currently owns a daily newspaper, as described in Schedule A attached hereto and incorporated by reference herein (collectively, the "Tribune Newspaper Markets");

**WHEREAS,** in light of the termination of the Metromix Affiliate Agreement, Tribune and Metromix have, simultaneously with the execution of this Agreement, entered into a Transition Services Agreement as of even date herewith;

**WHEREAS**, Metromix has also assigned to Tribune, pursuant to a certain Trademark Assignment of even date herewith (the "Trademark Assignment") the Marks (as defined in the Trademark Assignment) in the Tribune Newspaper Markets;

**WHEREAS,** Tribune and certain of its affiliates and Gannett Satellite Information Network, Inc. are parties to the Metromix LLC Agreement dated as of October 29, 2007, as amended by Amendment No. 1 to the Metromix LLC Agreement, which is being entered into simultaneously with the execution of this Agreement (the "LLC Agreement");

**WHEREAS,** Tribune, Tribune Interactive and Metromix were parties to a Services Agreement dated as of October 27, 2007 (the "Services Agreement") and, in order to settle all outstanding claims under the Services Agreement, have, simultaneously with the execution of this Agreement, entered into a Settlement Agreement of even date herewith; and

**WHEREAS,** Tribune, Tribune Interactive and Metromix desire to enter into this Agreement upon the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein contained as well as the execution of the other agreements entered into simultaneously with the execution of this Agreement, the receipt and sufficiency of which are hereby acknowledged, the

parties hereto agree as follows:

1. **Termination of the Metromix Affiliate Agreement**. Metromix and Tribune agree that the Metromix Affiliate Agreement is terminated as of the Effective Date and that any and all obligations of Tribune and Metromix under such Metromix Affiliate Agreement (including, without limitation, any branding, content, sales, or promotion guidelines relating to Tribune's use of the Marks in the Tribune Newspaper Markets or Tribune's operation of its businesses) are likewise terminated. Accordingly, among other things, once Tribune transitions away from Metromix's current technology platform, as between Metromix and Tribune, Tribune shall control all advertising inventory and ad trafficking on the Tribune Parties' local entertainment Web sites. For purposes of this Agreement, the term "Marks" shall have the same definition as in the Trademark Assignment.

2. **Exclusivity in Tribune Newspaper Markets**. Metromix agrees not to (i) affiliate with, or enter into any agreement licensing the Marks and/or Metromix brand or business to, any Person or (ii) otherwise use or permit or allow third parties to use the Marks, in each case, in the Tribune Newspaper Markets without Tribune's express, written consent. "Person" shall mean any corporation, general partnership, limited partnership, limited liability partnership, limited liability company, joint venture, trust, business trust, governmental agency, cooperative, association, individuals or other entity, and their heirs, executors, administrations, legal representatives, successors, assigns of such persons, as the context may require.

3. **License to National Content and/or Applications Upon Mutually Negotiated Terms**. The Tribune Parties shall have the right, but not the obligation, to access and use Metromix's national content on the Tribune Parties' local entertainment Web sites pursuant to a non-exclusive license, evidenced by an agreement in a form to be mutually agreed upon between Metromix and Tribune, providing the Tribune Parties with the right to use, copy, distribute, publicly perform, and display Metromix's national content on the Tribune Parties' local entertainment Web sites at a mutually agreed upon fee, revenue share, or other arrangement, including a mutually agreed upon form of credit or attribution to Metromix in connection with such use. In addition, the Tribune Parties shall have the right, but not the obligation, to access and use Metromix's calendar widget and/or the Metromix iPhone application for the Tribune Parties' local entertainment Web sites associated with the Tribune Newspaper Markets for a mutually agreed upon fee, revenue share, or other arrangement. Any such arrangement shall include Tribune paying Metromix for any additional development work Metromix must do in order to permit Tribune to access and use the Metromix calendar widget and/or Metromix iPhone application after Tribune transitions away from Metromix's current technology platform. Metromix and Tribune each agree to negotiate with the other party in good faith to arrive at reasonable, mutually agreed upon license terms, fees, revenue shares, or other arrangements in connection with this Section 3. In conjunction with any mutually agreed upon arrangement pursuant to this Section 3, the parties will agree upon a mechanism to deliver the national content to the Tribune Parties and enable the Tribune Parties to access and use Metromix's calendar widget and/or the Metromix iPhone application, as applicable.

4. **No Tarnishment of the Marks**. Each of Tribune (on behalf of itself, the Tribune Parties, and any successors or assigns of the Marks) and Metromix (on behalf of itself and its affiliates) agree not to use the Marks in a manner that tarnishes or materially harms or disparages

the Marks; provided, however, that this Section 4 shall not preclude truthful disclosure or testimony as may be required by a court of law, by any governmental agency having supervisory authority over the business of the Tribune or Metromix or by any administrative or legislative body (including a committee thereof) with apparent jurisdiction to order Tribune or Metromix to make such disclosure or provide such testimony.

5. **Metromix's Obligations Concerning the Domain Name**. (a) Metromix hereby agrees that it may only sell, assign, or transfer the Metromix.com domain name (the "Domain Name") to a Person that (i) acquires or otherwise succeeds to all of the Metromix business and (ii) agrees to assume Metromix's obligations under this Agreement (including Tribune's exclusive rights to register and use domain names that include or incorporate the Marks in the Tribune Newspaper Markets as described in Section 5(b)).

(b) Either party may register and use domain names that include or incorporate the Marks, or any portion of the Marks into the domain name. Notwithstanding the foregoing, Tribune (on behalf of itself and the Tribune Parties) agrees not to register or use, and/or to authorize third parties to register or use, domain names that contain only the Mark(s) (e.g., metromix.net), unless the top-level domain name (i) contains a geographic location or market that is or related to a Tribune Newspaper Market (e.g., metromix.chicago) or (ii) is relevant to a Tribune Newspaper Market or Tribune newspaper or business. Tribune (on behalf of itself and the Tribune Parties) further agrees that it only will register or use, and/or authorize third parties to register or use, domain names that contain the Marks if the domain name also contains a geographic location or market that is a Tribune Newspaper Market (e.g., metromixchicago.com) or term that is relevant to a Tribune Newspaper Market or Tribune newspaper or business. In the event that Metromix registers, controls or licenses any domain names that contain the Marks and the name of a geographic location or market that is a Tribune Newspaper Market or is contained within any Tribune Newspaper Market, Metromix promptly will transfer and/or assign such domain names to Tribune for its exclusive use in accordance with the terms of this Agreement. Metromix agrees to execute and deliver all such documents and instruments and do all acts and things that Tribune may reasonably require to effectively carry out or better evidence or perfect the transfers and assignments described in the previous sentence of this Section 5(b). Likewise, except at permitted under this Section 5(b), in the event that Tribune (or any of the Tribune Parties) registers, controls or licenses any domain names that contain only the Mark(s) or contain the Mark(s) and the name of any geographic location or market outside the Tribune Newspaper Markets (such markets being herein referred to as the "Metromix Markets") or any geographic location or market contained within any Metromix Market, Tribune promptly will transfer and/or assign such domain names to Metromix for its exclusive use in accordance with the terms of this Agreement. Tribune agrees to execute and deliver all such documents and instruments and do all acts and things that Metromix may reasonably require to effectively carry out or better evidence or perfect the transfers and assignments described in the previous sentence of this Section 5.

(c) Metromix will (i) continue to maintain any sub-domains of the Domain Name that exist as of the Effective Date and that relate or correspond to a Tribune Newspaper Market (e.g., chicago.metromix.com) in the authoritative name server and (ii) configure each such sub-domain to resolve to an IP address determined by Tribune, in its sole and exclusive discretion ("Tribune-Determined Sites"); provided that, in each case, Metromix shall be obligated to do the foregoing

with regard to each sub-domain only for so long as Tribune uses one of the Marks at such Tribune-Determined Site.

(d) With regard to each Tribune Newspaper Market, Metromix will hyperlink from the landing page of the Metromix Website, which as of the Effective Date is located at the Domain Name and lists all Metromix Markets and certain Tribune Newspaper Markets (the "Landing Page"), to Tribune-Determined Sites for so long as Tribune uses one of the Marks at such Tribune-Determined Site. With regard to each Tribune Newspaper Market, Metromix will list such Tribune Newspaper Market on the Landing Page and shall not discriminate against Tribune Newspaper Markets in ranking or ordering hyperlinks for so long as Tribune, in its sole and exclusive discretion, uses at least one Mark on the Tribune-Determined Site. For so long as Metromix operates the Landing Page using "cookies" or other tracking technology on such page, Metromix will (i) continue to "cookie" or employ such other tracking technology for all users that visit the Landing Page and that then choose a Tribune Newspaper Market in connection with their visit(s) to the Landing Page and (ii) when such users enter the Domain Name into their internet browser, redirect such users directly to an IP address as determined by Tribune, in its sole and exclusive discretion, and contained in the "cookie" or tracking information for such user.

(e) If Metromix dissolves, ceases doing business, or ceases to use or operate the Domain Name ("Ceases Operations"), then Tribune and any other Members of Metromix pursuant to the LLC Agreement shall have the right to continue to use the Domain Name (and any sub-domains or derivations thereof) in their respective markets, and the parties will take any and all such actions as are necessary to effectuate such continued use. The parties acknowledge and agree that the rights of such other Members of Metromix to continue to use the Domain Name (and any sub-domains or derivations thereof) in their respective markets in the event Metromix Ceases Operations shall, at a minimum, be equivalent to the rights of Tribune to continue to use the Domain Name (and any sub-domains or derivations thereof) in the Tribune Newspaper Markets in accordance with the terms of this Section 5.

6. **quadrantONE Advertising Inventory**. Pursuant to that certain Affiliate Agreement (the "Affiliate Agreement"), dated as of February 12, 2009, by and between Tribune and quadrantONE LLC, a Delaware limited liability company ("quadrantONE"), Metromix will continue to supply quadrantONE with ten percent (10%) of the total advertising inventory of the Tribune Websites on which Tribune continues to use the Marks until such time as Tribune no longer remains on Metromix's technology platform. Following such transition from Metromix's technology platform, pursuant to the Affiliate Agreement, Tribune will supply quadrantONE with ten percent (10%) of the total advertising inventory of the Tribune Websites on which Tribune continues to use the Marks and quadrantONE shall make payment directly to Tribune of the portion of the revenue share attributable to such advertising inventory supplied by Tribune.

7. **ExtroVert License**. Notwithstanding any contrary provision of the License Agreement, entered into as of October 24, 2007 (the "ExtroVert License"), by and between Metromix and Tribune Interactive, Metromix and Tribune Interactive each acknowledge and agree that, after the ExtroVert Transfer Date (as defined in the Transition Services Agreement of even date herewith between Tribune and Metromix) (a) Tribune Interactive will have no

obligation to provide Metromix with Tribune Enhancements (as such term is defined in the ExtroVert License) and the license grant contained in Section 2(a)(ii) of the ExtroVert License shall only apply to Tribune Enhancements created prior to the ExtroVert Transfer Date and (b) Metromix will have no obligation to provide Tribune Interactive with Company Enhancements (as such term is defined in the ExtroVert License) and the license grant contained in Section 2(b)(i) of the ExtroVert License shall only apply to Company Enhancements created prior to the ExtroVert Transfer Date.

8. **Bankruptcy Court Approval**. Notwithstanding any provision of this Agreement to the contrary, this Agreement and each party's obligations hereunder are conditioned upon and strictly subject to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approving, by a final order, Debtors' (as defined below) motions to (a) assume pursuant to Section 365 of the Bankruptcy Code the LLC Agreement, and (b) approve pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 (i) the Settlement Agreement, of even date herewith, by and among Metromix, Gannett Satellite Information Network, Inc., Tribune and Tribune Interactive, (ii) the Transition Services Agreement, of even date herewith, by and between Tribune and Metromix, (iii) the Trademark Assignment, and (iv) this Agreement. In the event the Bankruptcy Court does not approve such motions by a final order, this Agreement shall forthwith become null and void and there shall be no liability or obligation hereunder on the part of any party hereto. For purposes of this Agreement, "Debtors" shall mean Tribune and each of its affiliated entities whose voluntary petitions for relief under the Bankruptcy Code were consolidated with that of Tribune for administrative purposes.

9. **Confidentiality**. Each party agrees that it shall keep confidential the terms of this Agreement and all data and information obtained from the other party or its representatives in connection with this Agreement in the same manner that such party keeps its own such data and information confidential, except for information in the public domain and except as disclosure thereof may be required by applicable law; provided, that each party may disclose the terms of this Agreement to its financial advisors, attorneys, accountants, consultants and other representatives who reasonably require access to such information and Tribune, in connection with its bankruptcy proceedings, may disclose the terms of this Agreement to creditors of Tribune or its affiliates (and the respective representatives of such creditors) who are subject to agreements requiring such party to maintain the confidentiality of such information.

10. **Governing Law**. This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware (without giving effect to any conflicts of laws principles thereof or of any other State).

11. **Use of the Marks in Each Party's Respective Markets**. (a) Metromix will not use, or authorize any third party to use, the Marks in any Tribune Newspaper Markets without Tribune's express, written consent. Metromix shall be free to use, or authorize or license the use of, the Marks in any geographic area or markets outside the Tribune Newspaper Markets at any time.

(b) Tribune will not use, or authorize or convey to any third party the right to use, the Marks in any markets or geographic regions other than the Tribune Newspaper Markets without

5

Metromix's express, written consent. Tribune shall be free to use, or authorize or license the use of, the Marks in any Tribune Newspaper Markets at any time.

(c) Subject to Tribune's rights in the Marks in its Tribune Newspaper Markets, Tribune agrees not to institute any cancellation or opposition proceedings against Metromix's current registration and/or application for the Marks or against any application(s) for the Marks filed by Metromix for its Metromix Markets and/or any registrations that may mature from such applications and agrees not to contest the validity or enforceability of any such registration(s) and/or application(s) for the Marks in the Metromix Markets. Subject to Metromix's rights in the Marks in its Metromix Markets, Metromix agrees not to institute any cancellation or opposition proceedings against any application(s) for the Marks filed by Tribune for its Tribune Newspaper Markets and/or any registrations that may mature from such applications and agrees not to contest the validity or enforceability of any such application(s) and/or registration(s) for the Marks in the Tribune Newspaper Markets.

(d) Notwithstanding anything to the contrary contained in this Section 11, each party may use the Marks on the Internet or in connection with any other form of similar interactive technology that can be accessed from locations outside their respective markets (*e.g.*, mobile platforms); provided that each party's use of the Marks in accordance with this Section 11(d) is directed primarily at one or more of its respective markets and/or at visitors or potential visitors to one or more of its respective markets. In addition, either party may use the Marks in any regional or national advertisements for their respective goods and services provided that such advertisements are directed primarily at one or more of their respective markets, and/or at visitors or potential visitors to one or more of their respective markets, even if such advertisements have distribution outside such markets.

(e) Tribune agrees to provide Metromix with written notice of any assignment by Tribune to a third party of any of Tribune's rights, title, and/or interest in and to the Marks.

12. **Infringement or Dilution by Third Parties**. (a) In the event that an infringement or dilution of the Marks by a third party in a Tribune Newspaper Market becomes known to Metromix, it shall promptly notify Tribune in writing. If Tribune receives such notice from Metromix or, on its own, becomes aware of an infringement or dilution of the Marks by a third party in a Tribune Newspaper Market, Tribune or one of the Tribune Parties will have the exclusive right, but not the obligation, to make demands on any such infringing party that it cease and desist its infringing activity, and, if deemed necessary and appropriate by Tribune, in its sole discretion, to sue for the particular infringement or dilution, at its own cost and expense, and to recover and retain any and all damages from such lawsuit. Metromix will cooperate with Tribune in the prosecution of any such action.

(b) In the event that an infringement or dilution of the Marks by a third party in a Metromix Market becomes known to Tribune, it shall promptly notify Metromix in writing. If Metromix receives such notice from Tribune or, on its own, becomes aware of an infringement or dilution of the Marks by a third party in a Metromix Market, Metromix shall have the exclusive right, but not the obligation, to make demands on any such infringing party that it cease and desist its infringing activity, and, if deemed necessary and appropriate by Metromix, in its sole discretion, sue for such infringement or dilution, at its own cost and expense, and to

recover and retain any and all damages from such lawsuit. Tribune will cooperate with Metromix in the prosecution of any such action.

(c) Notwithstanding anything to the contrary contained in this Section 12, if the parties mutually agree to jointly bring the suit together against a third party for infringement or dilution of the Marks in a Tribune Newspaper Market and/or a Metromix Market, Metromix and Tribune will split equally and each be responsible for fifty percent (50%) of all reasonable costs and expenses of the suit and will split equally and each will receive fifty percent (50%) of any and all damage awards in such a suit.

13. **Miscellaneous**.

(a) This Agreement shall be binding upon and inure to the benefit of each party hereto, its legal successors and permitted assigns, including, without limitation, successors by merger, reorganization, or consolidation, provided, however, that neither Tribune nor Metromix shall have the right to assign this Agreement without the consent of the other party.

(b) This Agreement contains the entire agreement and understanding of the parties hereto with respect to the subject matter hereof. It may not be amended, modified or supplemented, and none of its provisions may be waived, except by an agreement in writing signed by the parties hereto.

(c) If any term, condition or provision of this Agreement shall be declared, to any extent, invalid or unenforceable, the remainder of the Agreement, other than the term, condition or provision held invalid or unenforceable, shall not be affected thereby and shall be considered in full force and effect and shall be valid and be enforced to the fullest extent permitted by law.

(d) This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile or other electronic transmission.

**[Remainder of page intentionally left blank]**

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

**METROMIX LLC**

By: _____
Name:
Title:


**TRIBUNE COMPANY**

By: _____
Name:
Title:


**TRIBUNE INTERACTIVE, INC.**

By: _____
Name:
Title:

8

## **SCHEDULE A**

1. Los Angeles-Long Beach-Santa Ana, CA Metropolitan Statistical Area

2. Chicago, IL Designated Market Area

3. Orlando-Kissimmee, FL Metropolitan Statistical Area

4. Baltimore, MD, Designated Market Area

5. Broward and Palm Beach Counties, FL

6. Hartford and New Haven Designated Market Area

7. Virginia Beach-Norfolk-Newport News, VA-NC Metropolitan Statistical Area

8. Allentown-Bethlehem-Easton, PA-NJ Metropolitan Statistical Area