# EXHIBIT D

# Transition Services Agreement

46429/0001-5874894v1

## TRANSITION SERVICES AGREEMENT

This **TRANSITION SERVICES AGREEMENT** (this "Agreement") is entered into as of this 22nd day of July 2009 (the "Effective Date") by and between Tribune Company, a Delaware corporation ("Tribune"), and Metromix LLC , a Delaware limited liability company ("Metromix").

## W I T N E S S E T H:

**WHEREAS**, Tribune and Metromix have entered into a certain Affiliate Agreement dated as of October 29, 2007 (the "Metromix Affiliate Agreement"), and by an agreement between the parties of even date herewith Tribune and Metromix have terminated such Metromix Affiliate Agreement;

**WHEREAS,** in light of the termination of the Metromix Affiliate Agreement, Tribune and Metromix have agreed to enter into this Agreement in order to facilitate a full and proper transition by Tribune to its and its subsidiaries' own platforms for their local entertainment Web sites;

**WHEREAS**, Metromix is willing to provide cooperation, assistance, and transition services, upon the terms and subject to the conditions set forth herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants herein contained, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Metromix Transition Services Engagement**. (a) Tribune hereby engages Metromix as an independent contractor (and, for the avoidance of doubt, not as an agent of Tribune) to provide Tribune and its subsidiaries (the "Tribune Parties") the following transition services (collectively, the "Metromix Services" and each, individually, a "Metromix Service") during the Services Period (as defined below) upon the terms and subject to the conditions set forth herein:

    (i) Upon delivery of notice by Tribune during the Services Period, Metromix will cooperate with and assist the Tribune Parties in migrating any and all necessary or reasonably desirable applications and data to Tribune's and/or the Tribune Parties' technology platforms for their local entertainment content and entertainment listings, including without limitation, migration of data hosting, ad serving, data feeds, Web services, and mobile applications, on a mutually agreed upon timetable during the Services Period. To the extent that applications that Metromix migrates or provides assistance in migrating contain integration points with third-party software or systems, Tribune may be required to contract or enter into relationships directly with such third parties;

    (ii) Upon delivery of notice by Tribune, Metromix will retrieve and provide the Tribune Parties with all Tribune Data (as defined below) on the mutually agreed upon timetable referenced in Section 1(a)(i);

  (iii) Within 15 days after the Effective Date (such date, the "ExtroVert Transfer Date"), Metromix will provide the Tribune Parties with a copy of the entire ExtroVert software platform (including any and all source code and object code) as it exists on the ExtroVert Transfer Date, which shall include all Company Enhancements (as such term is defined in that certain License Agreement entered into by Tribune Interactive, Inc. and Metromix as of October 24, 2007 (the "License Agreement")) in existence as of the ExtroVert Transfer Date; and

  (iv) Until the transition of the Tribune Parties to another technology platform pursuant to Section 1(a)(i) has been completed, Metromix will allow the Tribune Parties to remain on Metromix's current technology platform and continue to use such platform as Tribune was allowed pursuant to the Metromix Affiliate Agreement during the Services Period.

Metromix acknowledges and agrees that Tribune owns and has the right to use in perpetuity without royalty obligation all data provided by Tribune or its affiliates or subsidiaries to Metromix, all listings associated with Tribune Newspaper Markets, all user-generated content associated with listings in Tribune Newspaper Markets, and all user data, including registered user information, for all Tribune Newspaper Markets (collectively, "Tribune Data"). The terms of the previous sentence in this Section 1(a) shall survive indefinitely.

 (b) Metromix shall perform the Metromix Services in a timely and workmanlike manner, substantially consistent with Metromix's prior practice with respect to its business and/or the Metromix Services and, to the extent applicable, as it had under the Metromix Affiliate Agreement.

 2. **Tribune Transition Services Engagement**. (a) Metromix hereby engages Tribune as an independent contractor (and, for the avoidance of doubt, not as an agent of Metromix) to provide to Metromix the following transition services (collectively, the "Tribune Services" and each, individually, a "Tribune Service") during the Services Period (as defined below) upon the terms and subject to the conditions set forth herein:

  (i) Tribune will cooperate with and assist Metromix in transitioning, subject to applicable third-party licensing restrictions, any Associated Press feeds processed as of the Effective Date through Tribune's systems to Metromix's systems on a mutually agreed upon timetable during the Services Period; and

  (ii) Tribune will cooperate with and assist Metromix in transferring management of the Metromix.com domain name (the "Domain Name") to Metromix, including resolving any outstanding issues with Melbourne IT, the current DNS registrar vendor for the Domain Name, necessary to complete such transfer, prior to Tribune transitioning to another technology platform.

 (b) Tribune shall perform the Tribune Services in a timely and workmanlike manner, substantially consistent with Tribune's prior practice with respect to the Tribune Services.

2

3.  **Services Period**. The provision of each of the Metromix Services and Tribune Services shall commence on the Effective Date and shall terminate on December 31, 2009 (the "Services Period"); provided, however, that Tribune may cancel any particular Metromix Service and Metromix may cancel any particular Tribune Service upon at least 60 days' prior written notice to the other party, at which time its obligation to pay or reimburse the other party for any Costs (as defined in Section 4) for such cancelled Services shall cease (except that the canceling party shall pay and reimburse the other party for all of such Costs due and payable as provided herein through the effective date of cancellation). Notwithstanding the foregoing, this Agreement may be terminated by either party by delivery of written notice to the other party in the event of a breach of any material obligation under this Agreement by the other party and the failure of such other party to cure such breach within 30 days after receipt of written notice of such breach from the non-breaching party.

4.  **Costs; Payments**. (a) Each party shall provide, respectively, the Tribune Services and the Metromix Services at Cost. "Cost" shall mean the actual and verifiable out-of-pocket costs incurred by such party without any mark-up or profit margin and specifically excluding any internally allocated costs and taxes. The parties agree to use commercially reasonable efforts to notify the other party prior to incurring any such Costs.

   (b) Within 20 days after the end of each calendar month, each party shall submit an invoice to the other party for any Costs incurred during such month. All undisputed amounts contained in any such invoices shall be paid within 45 days of receipt by the party to which reimbursement is requested.

5.  **Bankruptcy Court Approval**. Notwithstanding any provision of this Agreement to the contrary, this Agreement and each party's obligations hereunder are conditioned upon and strictly subject to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approving, by a final order, Debtors' (as defined below) motions to (a) assume pursuant to Section 365 of the Bankruptcy Code the Metromix Limited Liability Company Agreement, dated as of October 29, 2007 (the "Operating Agreement"), as amended by Amendment No. 1 to the Operating Agreement, of even date herewith, and (b) approve pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 (i) this Agreement, (ii) the Settlement Agreement, of even date herewith, by and among Metromix, Gannett Satellite Information Network, Inc., Tribune and Tribune Interactive, Inc., (iii) the Trademark Assignment, of even date herewith, by and between Metromix and Tribune, and (iv) the Agreement, of even date herewith, by and among Tribune, Tribune Interactive, Inc. and Metromix. In the event the Bankruptcy Court does not approve such motions by a final order, this Agreement shall forthwith become null and void and there shall be no liability or obligation hereunder on the part of any party hereto. For purposes of this Agreement, "Debtors" shall mean Tribune and each of its affiliated entities whose voluntary petitions for relief under the Bankruptcy Code were consolidated with that of Tribune for administrative purposes.

6.  **Cooperation**. The parties agree to cooperate with each other in connection with the provision of the Tribune Services and the Metromix Services hereunder, and each party agrees to use reasonable efforts in good faith to cooperate with the other party in all matters relating to the provision and receipt of such Tribune Services and Metromix Services.

7.  **Confidentiality**. Each party agrees that it, its employees, agents and

3

representatives shall keep confidential all data and information obtained from the other party or its representatives in connection with this Agreement in the same manner that such party keeps its own such data and information confidential, except for information in the public domain and except as disclosure thereof may be required by applicable law. The terms of this Section 6 shall survive indefinitely.

8. **Limitation of Liability; Indemnification**. Metromix shall provide the Metromix Services in good faith in accordance with Section 1(b) of this Agreement. In no event, however, shall Metromix be liable to Tribune for any loss, damage, claim, liability or expenses of any kind caused directly or indirectly by any action taken in providing the Metromix Services hereunder, except in the case of Metromix's gross negligence or willful misconduct, in which case Metromix will indemnify and hold Tribune and its subsidiaries and affiliates harmless from and against any loss, cost, liability or expense (including, without limitation, reasonable attorneys' fees and costs) resulting from such gross negligence or willful misconduct; provided, further, that under no circumstances shall Metromix have any liability to Tribune for any indirect, consequential, punitive or other similar damages with respect to the provision of Metromix Services hereunder. Tribune shall provide the Tribune Services in good faith in accordance with Section 2(b) of this Agreement. In no event, however, shall Tribune be liable to Metromix for any loss, damage, claim, liability or expenses of any kind caused directly or indirectly by any action taken in providing the Tribune Services hereunder, except in the case of Tribune's gross negligence or willful misconduct, in which case Tribune will indemnify and hold Metromix and its subsidiaries and affiliates harmless from and against any loss, cost, liability or expense (including, without limitation, reasonable attorneys' fees and costs) resulting from such gross negligence or willful misconduct; provided, further, that under no circumstances shall Tribune have any liability to Metromix for any indirect, consequential, punitive or other similar damages with respect to the provision of Tribune Services hereunder.

9. **Notices**. All notices, requests, instructions, consents and other communications to be given pursuant to this Agreement shall be in writing and shall be deemed received (i) on the same day if delivered in person, by same-day courier or by telegraph, telex or facsimile transmission, (ii) on the next day if delivered by overnight mail or courier, or (iii) on the date indicated on the return receipt, or if there is no such receipt, on the third calendar day (excluding Sundays) if delivered by certified or registered mail, postage prepaid, to the party for whom intended to the following addresses:

If to Tribune:

Tribune Company
435 N. Michigan Avenue
Chicago, Illinois 60611
Attn: Dan Kazan, Senior Vice President/Development

with a copy to:

Tribune Company
Office of General Counsel
435 N. Michigan Avenue
Chicago, Illinois 60611
Fax: 312-222-3290

>If to Metromix:
>
>Metromix LLC
>225 N. Michigan Avenue
>Suite 1600
>Chicago, Illinois 60601
>Attn: Kara Walsh, Chief Executive Officer

Each party may by written notice given to the other in accordance with this Agreement change the address to which notices to such party are to be delivered.

    10.    **Governing Law**. This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware (without giving effect to any conflicts of laws principles thereof or of any other State).

    11.    **Miscellaneous**.

    (a)    This Agreement shall be binding upon and inure to the benefit of each party hereto, its legal successors and permitted assigns, including, without limitation, successors by merger, reorganization, or consolidation, <u>provided</u>, <u>however</u>, that neither Tribune nor Metromix shall have the right to assign this Agreement without the consent of the other party.

    (b)    This Agreement contains the entire agreement and understanding of the parties hereto with respect to the subject matter hereof. It may not be amended, modified or supplemented, and none of its provisions may be waived, except by an agreement in writing signed by the parties hereto.

    (c)    If any term, condition or provision of this Agreement shall be declared, to any extent, invalid or unenforceable, the remainder of the Agreement, other than the term, condition or provision held invalid or unenforceable, shall not be affected thereby and shall be considered in full force and effect and shall be valid and be enforced to the fullest extent permitted by law.

    (d)    The headings set forth in this Agreement are used solely for convenience of reference and shall not control or affect the meaning or interpretation of any of the provisions.

    (e)    This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile or other electronic transmission.

    (f)    Each party agrees to execute such agreements and other documents and to take such further actions as the other party may reasonably request in order to carry out the provisions of this Agreement in accordance herewith.

    (g)    Either party shall not be liable for any interruption of its provision of the Tribune Services or Metromix Services, as applicable, or any delay or failure to perform under this Agreement, that is attributable to acts of God, acts of a nation, state or public enemy, or any other acts or events that are beyond that party's reasonable control (collectively, "<u>Force Majeure</u>

5

Events"), provided, however, that the party notifies the other party as promptly as reasonably practicable upon learning of the occurrence of any such interruption, delay or failure resulting from a Force Majeure Event and, upon the cessation thereof, that party will resume, or cause to be resumed, the provision of Tribune Services or Metromix Services, as applicable, or its obligations hereunder with the least practicable delay.

**[Remainder of page intentionally left blank]**

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the Effective Date.

### METROMIX LLC

By: _____
Name:
Title:

### TRIBUNE COMPANY

By: _____
Name:
Title:

*[Signature Page to Transition Services Agreement]*