# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 1334 & 1754**<br>**Hearing Date: July 28, 2009 at 1:00 p.m. (ET)** |

### REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO OBJECTION OF ROBERT R. MCCORMICK FOUNDATION AND CANTIGNY FOUNDATION TO COMMITTEE'S MOTION FOR AN ORDER AUTHORIZING THE EXAMINATION OF ROBERT R. MCCORMICK FOUNDATION AND THE CANTIGNY FOUNDATION AND THE PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this reply ("Reply") to the Objection (the "Objection") submitted by the Robert R. McCormick Foundation (the "McCormick Foundation") and the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Cantigny Foundation ("Cantigny," together with the McCormick Foundation, the "Foundations")
to the Committee's Motion for an Order Authorizing the Examination of the Foundations and the
Production of Documents Pursuant to Bankruptcy Rule 2004 (the "Motion").[2]

## PRELIMINARY STATEMENT

The Bankruptcy Code expressly authorizes the Committee to investigate the acts,
conduct, liabilities and financial condition of the Debtors.  In the exercise of that authority, the
Committee has instructed its professionals to examine the series of transactions during calendar
year 2007 (the "Leveraged ESOP Transactions") pursuant to which the Tribune Company
became privately held, to ascertain whether those transactions give rise to one or more causes of
action that might be prosecuted by the Debtors' estates.  Of particular (but not sole) interest is
whether the Leveraged ESOP Transactions are vulnerable to avoidance as fraudulent transfers.

In furtherance of the Committee's mandate, and consistent with local practice, the
Committee's professionals have met and conferred with counsel for the various parties involved
in the Leveraged ESOP Transactions for the purpose of obtaining documentation relevant to the
Committee's examination.  As of this date, the Foundations are the only parties to the Leveraged
ESOP Transactions that have refused to cooperate with the Committee's request for production
of relevant documents.

The Foundations were active and outspoken participants in the discussions and
negotiations that ultimately resulted in the Leveraged ESOP Transactions, transactions that
translated in payments in excess of $1 billion to the Foundations.  By way of example, on
January 20, 2007, the Foundations sent a letter to the special committee of the Company's Board
of Directors overseeing the exploration of restructuring alternatives in which the Foundations
expressed their preference that the Company continue as a public company unless a transaction

---

[2] Capitalized terms not otherwise defined herein shall assume the meanings ascribed to them in the Motion.

for the whole Company at a substantial premium with minimal closing risk could be obtained. Further, on February 2, 2007 and also on March 1, 2007, the Foundations sent follow-up letters to the special committee expressing the Foundations' preference for a recapitalization and spin-off plan and raising concerns about the timing and execution risk of the proposed Leveraged ESOP Transactions.[3]

Given the Foundations' intense interest in the ultimate form of any deal involving the Company, as demonstrated by their repeated attempts to influence the special committee of the Board of Directors, the Committee believes that the Foundations must necessarily have documents that are relevant to the Committee's investigation of the Leveraged ESOP Transactions and related analysis of whether any causes of action may be implicated, whether against the Foundations or against any other party.

Furthermore, it is within this Court's discretion to order the Foundations to cooperate with the Committee's requested examinations pursuant to Rule 2004, and the Committee has demonstrated in its Motion that good cause exists to do so. The Committee's focused discovery was undertaken to elicit, among other things, all facts relevant to the Company's financial condition after giving effect to the consummation of the Leveraged ESOP Transactions. The ultimate goal of the discovery and the investigation is to inform the Committee of the merits of various avoidance and other actions that may have profound significance to the Debtors' restructuring efforts and the relationships of creditors *inter se.* The Committee's discovery therefore seeks the expeditious resolution of the Debtors' cases and is not interposed to harass the Foundations. Further, the Committee does not have the luxury of time, as suggested, to defer discovery of the Foundations.

---

[3] Information regarding the Foundations' involvement is based on the Company's Tender Offer Statement filed with the United States Security Exchange Commission on April 25, 2007.

None of the Foundations' arguments in opposition to the production sought justifies this Court's exercise of discretion against such production.  While the Foundations assert that they do not have any relevant documents that cannot be obtained from other sources, this suggestion -- that the Foundations did not create any internal records in connection with their analysis of the various proposed restructuring plans -- strains notions of common sense.  Other arguments raised by the Foundations in their Objection are red herrings.  For example, whether the Committee has already identified particular claims or sought standing to prosecute those claims at this time is immaterial.  Similarly, the Foundations' mere assertion of an affirmative defense to a particular cause of action (among many possible causes of action) is not relevant to whether the Motion should be granted.  Finally, any burden to the Foundations in connection with their compliance with the requested examinations is outweighed by the substantial benefits to the Committee and, by extension, the estates.

## ARGUMENT

**I.      The Committee Has Demonstrated Good Cause to Examine the Foundations.**

1.      Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") provides that "[o]n motion of any party in interest, the court may order the examination of any entity." FED. R. BANKR. PROC. 2004(a).  Rule 2004 sets forth that permitting the examination is at the discretion of the court.  See FED. R. BANKR. PROC. 2004(a) ("the court *may* order the examination...") (emphasis added).  Some courts have read a "good cause" standard into the statute.  The Third Circuit has not done so, and this Court is bound only by the express language of Rule 2004.

2.      Nevertheless, even if a "good cause" standard is layered onto the language of Rule 2004, the Committee has amply demonstrated that the requested Rule 2004 relief is

warranted.  The Committee's investigation of the Leveraged ESOP Transactions is designed to ascertain the merits of various causes of action that may be pursued for the benefit of the Debtors' estates and their creditors.  That assessment of merits cannot be made in the absence of an understanding of all relevant facts, and those facts cannot be developed fully without examination of the various parties to the Leveraged ESOP Transactions.

3.    The Foundations collectively owned approximately 13% of the outstanding common equity of the Company prior to the consummation of the Leveraged ESOP Transactions.  The Foundations were paid more than $1 billion for their shares.  Accordingly, the Foundations were major participants in, and beneficiaries of, the Leveraged ESOP Transactions. If examination of the Foundations is denied, the Committee may be prevented from discovering relevant information that is available only from the Foundations.  These facts more than amply demonstrate that the Committee has good cause in seeking discovery from the Foundations.

## II.    Seeking Information Regarding *Potential* Causes of Action is One of the Key Purposes of Rule 2004.

4.    One of the primary purposes of a Rule 2004 examination is as a pre-litigation device.  See In re Table Talk, Inc., 51 B.R. 143, 145-46 (Bankr. D. Mass. 1985). Notwithstanding their protestations to the contrary, the Foundations are not exempt from the Committee's investigation in advance of the commencement of litigation.   A Rule 2004 examination is meant to allow a broad investigation into the affairs and assets of the estate, including potential claims, and "[a]ny third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation."  In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citing Air Line Pilots Assoc., Int'l v. American Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 432 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994)); see also In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa.

1990).

5.        When faced with very similar requests, courts have held that requested Rule

2004 examinations are warranted.  See In re Mirant Corp., 326 B.R. 354 (Bankr. N.D. Tex.

2005) (holding that creditors' committee investigating relationship between Chapter 11 debtor-

corporation and corporate parent from which it was spun off, was entitled to order requiring

entities to expeditiously produce pertinent documents); In re Recoton Corp., 307 B.R. at 756

(holding that the creditors' committee's Rule 2004 motion for examination of the debtors' former

officers and directors was "*prima facie* consistent with [Rule 2004's] above-stated purposes of

allowing the Committee to obtain information necessary to determine whether claims beneficial

to the estate exist and whether to pursue such claims").

### III.       The Committee Does Not Need to Prove it has a Claim Before Seeking Examinations Under Rule 2004.

6.        Relief under Rule 2004 is not predicated on a demonstration that the movant

has a viable cause of action.  To suggest that one moving under Rule 2004 must assert a claim

before requesting any related examination under Rule 2004 ignores the many cases that reiterate

that Rule 2004 is meant to help identify property of the estate, including *potential* causes of

action.  See, e.g., In re Handy Andy Home Imp. Centers, Inc., 199 B.R. 376, 380 (Bankr. N.D.

Ill. 1996) (Rule 2004 is substantially a prelitigation device for assessing whether grounds exist to

commence action); In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)

(Rule 2004 "is properly used as a pre-litigation device to determine whether there are grounds to

bring an action..."); In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (Rule 2004

examinations are "typically implemented in the pre-litigation stage of a bankruptcy case").

IV.     **The Committee Does Not Need to Demonstrate Present Capacity
to Commence an Action Before Seeking Examinations Under Rule 2004.**

7.      The Committee is authorized by the express language of Rule 2004 and the
Bankruptcy Code to request examinations of the Foundations now.  Rule 2004 states that "any
party in interest" may move for examination under Rule 2004(a).  Bankruptcy Code section
1109(b) states that a party in interest includes a creditors' committee.[4]  The Foundations'
argument that the Committee must first demonstrate standing with respect to claims as a
condition to seeking examinations regarding those claims finds no support in the language of
Rule 2004, the Bankruptcy Code or elsewhere.

8.      The Foundations also disregard the fact that the Committee is investigating
the Leveraged ESOP Transactions in connection with the Committee's statutory duties to
investigate the acts, conduct, assets, liabilities and financial condition of the Debtors.  See ¶ 4 of
the Motion (noting the Committee's duties under Bankruptcy Code section 1103(c)).  In seeking
to maximize recovery to creditors, creditors' committees routinely seek examinations pursuant to
Rule 2004, and courts routinely grant such relief.  See, e.g., In re Mirant Corp., 326 B.R. 354; In
re Recoton Corp., 307 B.R. 751; In re Refco Inc., Case No. 05-60006 (Drain, R.) (Bankr.
S.D.N.Y. Dec. 5, 2005); In re Montgomery Ward, LLC, Case No. 00-4667 (Lyons, R.) (Bankr.
D. Del. July 26, 2001).

V.      **The Assertion of a Potential Affirmative Defense Does Not
Provide Immunity from Examination Pursuant to Rule 2004.**

9.      The Foundations assert that Rule 2004 discovery is inappropriate because the
Foundations have a complete legal defense to any fraudulent conveyance action pursuant to

---

[4]     See also S. REP. NO. 95-989, 95th Cong., 2nd Sess. 116 (1978), *reprinted in* 1978 U.S. CODE CONG. & AD.
NEWS 5787, 5902 ("section 1109(b) provides, *in unqualified terms*, that any creditor, equity security holder, or
an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an
attorney, or by a committee. It is derived from section 206 of chapter X (11 U.S.C. 606).") (emphasis added).

Bankruptcy Code section 546(e), the safe harbor provision which exempts from avoidance any settlement payments made by the Debtors within the avoidance period.

10.    The fact that the Foundations may have a defense to a particular claim is not relevant to the issues before the Court today for several reasons.  First, an alleged defense to one claim is not a defense to all claims that might ultimately be brought against the Foundations. Second, the facts as developed through examination of the Foundations may demonstrate that the defense is not available to the Foundations.   Third, assuming the Foundations have valid defenses against any and all claims that may be asserted against them, the Foundations may nevertheless have information that is germane to the merits of claims that may be brought against other parties.  Fourth, there is nothing in the language of Rule 2004 that would exempt a party from examination solely on the basis of that party's mere assertion of an affirmative defense.

11.    Accordingly, the Foundations' "safe harbor" discussion is appropriate only in any later lawsuit that may be brought against them.

## VI.    The Minimal Burden to the Foundations in Connection with a Rule 2004 Examination is Significantly Outweighed by the Benefits to the Committee

12.    The Foundations' attempt to persuade the Court that it would be too burdensome for them to comply with the requested Rule 2004 examination because (i) they do not have any documents that cannot be obtained from other sources, and (ii) the Committee is seeking information it could get, and is getting, from the Debtors and Zell is not persuasive for many reasons.

13.    First, the Foundations assert they have no documents other than documents that are identical to those included in the public record or held by the Debtors.  Even if one were to believe that the Foundations did not create any proprietary documents regarding the Leveraged ESOP Transactions (which is a stretch), it is much easier to believe that the

Foundations' copies of these documents bear notations made by Foundation representatives thereby making them distinct and no longer identical to those that the Committee may obtain from the Debtors or Zell. These notations could very well contain useful information for the Committee in completing its investigation of the Leveraged ESOP Transactions. Moreover, the Foundations' production of records, even if they are just duplicates, is warranted to show whether the Foundations indeed have records regarding the Leveraged ESOP Transactions. The fact that they have kept certain records may be helpful to the Committee, depending on what those records are.

14.     Second, the Foundations assert that the Committee should not be entitled to examine them simply because there are other parties who were also party to the Leveraged ESOP Transactions that the Committee could examine instead. They argue it would be extremely burdensome to compel them to review their files and electronic data when the Debtors and Zell can review their files.

15.     The fact that an unrelated party is also subject to Rule 2004 examination regarding the same transaction does not immunize a party from examination, nor does it justify the conclusion that the complaining party's documents are not relevant and potentially useful. To suggest that a Rule 2004 movant should only be limited to seeking information from just one or two parties involved in complex transactions under investigation due to the fact that there is overlap in the documents is reading a limitation or requirement into the express language of Rule 2004 that is not there. Reading such limitation into Rule 2004 would greatly hamper parties' ability to investigate the debtors' financial condition and is contrary to the "fishing expedition" nature of Rule 2004. Further, the Committee does not have time to do staged discovery. The Debtors and the Committee share a common interest in accelerating the resolution of these cases.

The Foundations' refusal to cooperate with the Committee's request for production of documents is not conducive to the achievement of that goal.

16.     The Foundations are sophisticated entities[5] that can respond to the document requests attached to the Committee's Motion.  The information requested by the Committee is tailored to the Leveraged ESOP Transactions and covers a relatively short, finite period of time; the Committee is not seeking open-ended discovery covering many issues.  If the Foundations have questions or concerns regarding the scope of the requested examination, they can be addressed.  Those concerns, however, do not justify insulating completely the Foundations from any review of their participation in the Leveraged ESOP Transactions.

17.     Lastly, the Foundations assert that the Committee failed to abide by Local Rule 2004-1 in conferring with the Foundations prior to moving the Court to compel discovery in the form of depositions.  The Committee did attempt to confer with the Foundations regarding the requested document production.  Counsel for the Foundations acknowledged the Committee's efforts but asserted that, under the circumstances, it would be more appropriate for the Committee to file a motion seeking a Rule 2004 examination.  See Exhibits B and C to the Motion.  Given this response, the Committee felt it would be unproductive to attempt to confer with the Foundations again on the issue of depositions.  Instead, the Committee believes it more efficient to seek this Court's ruling on the production of documents and depositions at the same time to allow the parties to move forward expeditiously with discovery.

---

[5]     The Foundations appear to seek some sympathy from the Court due to the fact that they are charities which serve their communities. The Committee commends the Foundations for their good works but would like to highlight, respectfully, the fact that the Foundations received more than one billion dollars in connection with the Leveraged ESOP Transactions.

WHEREFORE, the Committee respectfully requests that the Court grant the Motion and the relief requested therein.

Dated: July 23, 2009
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Howard Seife
N. Theodore Zink, Jr.
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

_Counsel to the Official Committee of Unsecured Creditors_