# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Hearing Date: August 11, 2009 at 10:00 a.m. ET**<br>**Objection Deadline: August 4, 2009 at 4:00 p.m. ET** |

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Washington Bureau Inc. (f/k/a Tribune Broadcasting News Network, Inc.) (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN

Rules"), for entry of an order further extending the Debtors' exclusive periods to file a chapter

11 plan or plans of reorganization through and including <u>November 30, 2009</u> and to solicit

acceptances of such plan(s) through and including <u>March 15, 2010</u>. In support of this Motion,

the Debtors respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates

for the relief sought herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule

9006(b)(1) and Local Rule 9006-2.

## GENERAL BACKGROUND

2.      On December 8, 2008 (the "<u>Petition Date</u>"), the Debtors each filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to

operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

3.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.      On December 18, 2008, the Office of the United States Trustee for the

District of Delaware (the "<u>United States Trustee</u>") appointed an official committee of unsecured

creditors (the "<u>Committee</u>"). No request has been made for the appointment of a trustee or

examiner.

---

Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters
and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-5884537v1

5.      On April 23, 2009, this Court entered an order pursuant to 11 U.S.C. §

1121(d) Extending Debtors' Exclusive Periods Within Which to File a Chapter 11 Plan and

Soliciting Acceptances Thereto and thereby extended the Debtors' exclusive periods to file a

chapter 11 plan to August 4, 2009 and to solicit acceptances to October 5, 2009 (the "First

Exclusivity Extension Order") (Docket No. 1075).[2]

## BACKGROUND OF THE DEBTORS

6.      As set forth in the First Exclusivity Extension Motion, Tribune Company

("Tribune") is America's largest employee-owned media and entertainment company and is the

ultimate parent company of each of the Debtors.  Tribune directly or indirectly owns all (or

virtually all) of the equity in 128 subsidiaries of which 110 are Debtors in these cases.  Tribune's

operations are conducted through two primary business segments: (i) publishing and (ii)

broadcasting and entertainment.  The publishing segment currently operates eight major-market

daily newspapers, among other businesses, and the Debtors are the nation's third largest

newspaper publisher in terms of revenue and circulation.  As of the Petition Date, the Debtors'

publishing segment employed approximately 12,000 full-time equivalent employees in

operations conducted in major markets across the United States.  The broadcasting and

entertainment segment includes 23 television stations in 19 markets, including seven stations in

the top 10 U.S. markets and the cable "Superstation" WGN America, and the segment businesses

collectively reach more than 80% of television households in the United States.  As of the

Petition Date, the Debtors' broadcasting and entertainment segment employed approximately

2,600 full-time equivalent employees in operations conducted in major markets across the United

States.

---

[2]  See Debtors' Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within
Which to File a Chapter 11 Plan and Solicit Acceptances Thereto (the "First Exclusivity Extension Motion")
(Docket No. 822).

46429/0001-5884537v1

## POST-PETITION DEVELOPMENTS

7.     The Debtors have been operating under the protection of chapter 11 for just seven months.  During this time, they have made significant progress in administering these cases and productively utilizing their exclusivity periods.  In addition to the myriad matters addressed in their First Exclusivity Extension Motion,[3] the Debtors have continued to drive these cases toward resolution, both in matters of case administration and discussions with their major creditor constituencies.  The following is a non-exclusive summary of developments since the entry of the First Exclusivity Extension Order.

### A.     Bar Date Order and Claims Reconciliation Process

8.     On March 26, 2009, the Court entered an order establishing a general bar date of June 12, 2009 (Docket No. 813).  Thereafter, the Debtors and their professionals have responded to numerous proof of claim inquiries and requests from various creditors.  To date, over 6,000 claims asserting approximately $606 billion in the aggregate have been filed in these cases.  The Debtors and their professionals have assembled specialized teams to review and reconcile the various categories of claims.  Based upon a preliminary analysis conducted by these teams, it appears that a significant amount of the asserted claims may represent duplicate or otherwise redundant claims, and the preliminary claims reconciliation analysis suggests (although the process is still ongoing) that the filed claims that are likely to be allowed may not vary substantially from the Debtors' scheduled aggregate liabilities of approximately $13.7 billion.  The establishment of the bar date and undertaking of the claims reconciliation process

---

[3]  The Debtors achieved significant progress in the first four months of their cases as described in the First Exclusivity Extension Motion, including, among other activities: (1) obtaining significant "first day" and "second day" relief, including the continuation of important employee benefit programs; (2) filing schedules and statements of financial affairs for 111 Debtors; (3) addressing cash management and debtor-in-possession financing matters; (4) advancing negotiations toward a transaction for the disposition of the Chicago Cubs and related assets; (5) undertaking an analysis of executory contracts and leases and obtaining lease rejection and assumption orders; and (6) working diligently on a "go forward" business plan to support the formulation of a plan of reorganization.

are critical milestones to the Debtors' development of their plan of reorganization (the "Plan"), and to the formulation of appropriate claims resolution procedures, which may well be informed by the structure and content of the proposed Plan. To that end, the Debtors' professionals are engaged in ongoing discussions with the Committees' professionals concerning matters related to claims resolution as well as a proposed Plan (see below ¶¶ 12-13).

### B.    Executory Contracts and Unexpired Leases

9.    Executory Contracts. The Debtors are party to approximately 45,000 executory contracts and unexpired leases. The Debtors and their advisors have continued their analysis and review of these executory contracts and leases, which constitute a material component of the Plan development process. When appropriate, the Debtors have obtained court approval to assume executory contracts to support their operations, and their review and analysis in this regard continues. Additionally, the Debtors have devoted substantial efforts to identifying opportunities for renegotiation of existing business relationships. Capitalizing on these opportunities has resulted in the Debtors' formulation of economically favorable agreements, often with significant cost savings, which are an important part of the business plan for the reorganized Debtors.

10.    Unexpired Real Estate Leases. The Debtors were granted an extension through and including July 6, 2009 to assume or reject their remaining unexpired real estate leases. Through March 23, 2009, the Debtors were granted orders pursuant to three omnibus motions to reject over 70 leases for an annual cost savings of approximately $6.1 million. On June 25, 2009, the Debtors were authorized to assume 224 unexpired nonresidential leases and pay cure amounts up to approximately $377,000 (Docket No. 1628) and, after resolving objections, the Debtors were granted their fourth omnibus rejection order regarding 30 additional leases for annual cost savings of approximately $9.9 million, before offset for any replacement

5

space (Docket No. 1629).  Resolution of assumption or rejection of the leases was an intended

precursor to the Debtors' Plan.

### C.    The Cubs Transaction

11.    Since the commencement of these chapter 11 cases, the Debtors have

continued to pursue a potential transaction involving the Chicago Cubs, a Major League Baseball

franchise that is owned and operated by one of Tribune's non-Debtor affiliates, Chicago National

League Ball Club, LLC ("Cubs LLC"), and Cubs LLC's subsidiaries and related interests.  That

transaction, if successfully concluded, will allow the majority of the value of the Chicago

Cubs—one of the most valuable single assets of Tribune and its affiliates—to be monetized,

generating substantial cash proceeds, and having a material impact on the structure of any Plan.

Substantial progress has been made over the past several months toward reaching agreement on a

definitive transaction.  The negotiations relating to that transaction require significant

expenditures of time by Tribune's senior management and outside professionals.

### D.    Progress Toward Formulation of Plan

12.    The Debtors have conducted extensive operational, financial and legal

analyses necessary to the formulation of a confirmable Plan.  Coupled with these efforts, the

Debtors have had extensive discussions with both the Committee and their senior lender steering

committee (the "Steering Committee") concerning the framework for a consensual Plan and

believe that progress has been made.  The Debtors have also worked continuously over the last

several months to provide the Committee with requested information (producing thousands of

pages of documents), in order to allow the Committee to complete its due diligence of the

Debtors and their principal prepetition transactions.  The Debtors will continue to work diligently

with the Committee and Steering Committee to advance the Plan negotiation process and hope

6

they will be able to reach a consensus in the near term with all or most of their major creditor constituencies.

E.    **Creditor Relations**

13.    The Debtors strive to maintain a cooperative and responsive relationship with their creditor constituencies, including the Committee and the Steering Committee. Throughout these cases, the Debtors have responded cooperatively to many requests for documentation and information from the professionals for the Committee and the Steering Committee, including formal and informal discovery requests related to certain pre-petition transactions.[4] The Debtors and their professionals have provided to the Committee and the Steering Committee massive amounts of data and analyses involving sizing the Debtors' current and potential liabilities, including pension liabilities, tax liabilities and intercompany claims. The Debtors have also provided to these major creditor constituencies substantial financial information to assist the Debtors and the committees in their negotiation of a plan of reorganization. Although their business plan was largely established during the period prior to the First Exclusivity Extension Order, the Debtors have spent large portions of time during the intervening period hosting many site visits for Committee members and their professionals and explaining their business plan to them in order that they may better understand the Debtors' proposed business model and basis for valuation of their businesses. In addition, the Debtors attempt to inform and obtain feedback from the Committee and Steering Committee on all matters of significance in these cases, and, through their legal and financial advisors, maintain regular communications, including frequent meetings and telephone conferences.

---

[4] Pursuant to these discovery requests, the Debtors sought and received protections against Waiver of the Attorney-Client Privilege and Work Product Doctrine Pursuant to Fed. R. Evid. 502(d).

7

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that (i) the period in which the Debtors have the exclusive right to file a chapter 11 plan be extended through and including November 30, 2009; and (ii) the period in which the Debtors have the exclusive right to solicit acceptance of such plan be extended through and including March 15, 2010.  The Debtors further request that such an extension be without prejudice to their rights to seek additional extensions of the Exclusive Periods (as defined herein).  As noted above, this is the Debtors' second request for an extension of their Exclusive Periods.

## BASIS FOR RELIEF

15.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan of reorganization (the "Exclusive Filing Period").  Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods").  The Debtors' current Exclusive Filing Period will expire on August 4, 2009,[5] and the Debtors' current Exclusive Solicitation Period will expire on October 5, 2009. Section 1121(d) permits the Court to extend the Exclusive Periods for "cause."

---

[5] Pursuant to Rule 9006-2 of the Local Rules, the Debtors' Exclusive Filing Period shall be automatically extended until the Court acts on this Motion.  Del. Bankr. LR 9006-2.

A.    **Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods "For Cause"**

16.    The objective of a chapter 11 reorganization case is the negotiation, formulation, development, confirmation and consummation of a confirmable plan of reorganization, and it is the intention of the Debtors to achieve that objective.  The Exclusive Periods under section 1121(d) are intended to afford a debtor a full and fair opportunity to formulate and propose such a plan of reorganization and to solicit acceptances thereof without the deterioration and disruption to its operations that could result from the filing of competing plans of reorganization by non-debtor parties.  In circumstances where the initial 120 and 180-day Exclusive Periods prove to be an unrealistic time frame within which a debtor may otherwise be forced to file a plan of reorganization, section 1121(d) of the Bankruptcy Code allows the Bankruptcy Court to extend the debtor's Exclusive Periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
>     (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

17.    It is well established that the decision to extend the Debtors' Exclusive Periods is committed to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of a particular case.  See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); 203 N. LaSalle Street P'ship v. Bank of Am., N.A., 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); In re Mid-State

Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr.

W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for the purpose of an

extension of the Exclusive Periods, courts have looked to the legislative history of section

1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409

(E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Courts

have found that Congress did not intend that the 120- and 180-day periods be a hard and fast

rule. See Amko Plastics, Inc., 197 B.R. at 77 (noting that Congress intended courts to have

flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R.

294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility"). Rather,

Congress intended that the Exclusive Periods be of an adequate length, given the circumstances,

for a debtor to formulate, negotiate and draft a viable plan without the disruption to the business

that would occur with the filing of competing plans of reorganization. See Geriatrics Nursing

Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to

negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to

satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a

business."). Further, Congress recognized that often a 120-day exclusivity period will not afford

a debtor sufficient time to formulate and negotiate a plan:

> [t]he court is given the power, though, to increase . . . the 120-day period
> depending on the circumstances of the case. [T]he bill allows the
> flexibility for individual cases that is not available today. For example, if
> an unusually large company were to seek reorganization under chapter 11,
> the Court would probably need to extend the time in order to allow the
> debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

　　　　18.　　When determining whether cause exists for an extension of the Exclusive

Periods, courts rely on a variety of factors, each of which may provide sufficient grounds for

extending the periods.  Factors considered by the courts in making such a determination include:
(a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and
prepare adequate information; (c) the existence of good faith progress toward reorganization; (d)
whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated
reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in
negotiating with creditors; (g) the length of time the case has been pending; (h) whether the
debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies
exist.  See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc. (In re Burns & Roe Enters., Inc.),
2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging
Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487
(Bankr. D. Conn. 2007); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y.
2006); In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re
Dow Corning Corp., 208 B.R. 661, 665-66 (Bankr. E.D. Mich. 1997); In re Express One Int'l
Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. Ltd. P'ship, 147
B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R.
448, 451-54 (Bankr. W.D. Tex. 1987).  All such factors relevant to these cases support the relief
requested.

### B.   Cause Exists for a Further Extension of the Exclusive Periods in These Cases

19.   The Size and Complexity of the Case.  With 111 Debtors operating in a
national media and publishing marketplace, and the numerous complex and time consuming
issues present in these cases, the current Exclusive Periods did not provide an adequate
opportunity to file and solicit a confirmable Plan.  As stated above, the Debtors have made a
good faith effort to work closely with their major creditor constituencies toward the goal of a

11

consensual Plan; but, the Debtors require additional time to conclude these efforts.  The Debtors have devoted and continue to devote considerable time to responding to various requests for data and analyses necessary to facilitate meaningful discussions with their major creditor constituencies and vital to the development of a consensual Plan.

20.    Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for an extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan.  See H.R. No. 95-595, at 231-232,406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement."); see also In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").  The size and complexity of the Debtors' cases clearly militate in favor of a further extension of the Exclusive Periods.

21.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information.  The Debtors have not been dilatory in these cases.  Rather, the Debtors have worked expeditiously to address critical issues and move these cases forward.  The Debtors have devoted substantial time and resources to the development of a long-term business plan necessary for the formulation of a Plan and for substantive negotiations with their major creditor constituencies.  Additionally, with the claims bar date having just recently passed, the Debtors' claims reconciliation process, involving some 6,000 filed claims, is actively underway.  This process provides an important stepping stone to the development of a Plan.  The requested

46429/0001-5884537v1

extension will assist the Debtors' continued development of a Plan and allow the plan process to proceed in an orderly manner.

22.     The Existence of Good Faith Progress Toward Reorganization.  The Debtors have made material progress in these chapter 11 cases, and have done so while working cooperatively with their major creditor constituencies.  In the months following the First Exclusivity Extension Motion, the Debtors have continued to manage their businesses during an extraordinarily difficult economic period while addressing matters arising from the bankruptcy process from adversary proceedings to reporting protocols.  The Debtors have regularly interacted with their primary creditor constituencies and have commenced detailed discussions on a Plan.  The Debtors are thus not seeking this further extension to delay administration of the chapter 11 cases or to exert pressure on their creditors.  To the contrary, this request is intended to maintain a framework conducive to an orderly, efficient and cost-effective restructuring process.

23.     The Debtors Are Paying Their Debts as They Come Due.  Courts considering whether to extend a debtor's exclusivity periods may also assess whether the debtor is paying its debts when they come due.  See In re McLean Indus., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  The Debtors have sufficient liquidity to pay, and are paying, their undisputed post-petition obligations as they come due, and continue to manage their businesses effectively and are preserving the value of their assets for the benefit of their creditors.  As of May 24, 2009, the Debtors had approximately $700 million in available cash balances and the Debtors believe they will have sufficient cash to fund these chapter 11 cases.

24.     <u>The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan and Are Making Progress in Negotiating with Creditors</u>.  As noted, the Debtors have sufficient liquidity to sustain their operations as a going concern through their cash on hand together with their post-petition securitization facility.  Having devoted substantial efforts to developing their business plan, the Debtors are now in ongoing and continuing discussions with their major creditor constituencies on a framework for a confirmable Plan, and believe that progress has been made toward that objective.  The Debtors are optimistic that these cooperative relationships will continue and result in a consensual Plan in the near term.

25.     <u>The Short Tenure of These Cases</u>.  The Debtors' cases have been pending for seven months, but as discussed above, the Debtors have accomplished a substantial amount in this relatively short period of time.  It is not uncommon for a further extension of the Exclusive Periods to be requested in such large and complex cases.  In light of the short duration of these cases, the challenges faced by the Debtors and the progress made to date, the Debtors submit that a further extension of the Exclusive Periods is warranted.

26.     <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Cases</u>.  Termination of the Debtors' Exclusive Periods would adversely impact the Debtors' business operations and progress in these cases.  If this Court were to deny the Debtors' request for a further extension of the Exclusive Periods, any party in interest would be free to propose a plan of reorganization for each of the 111 Debtors.  Such a ruling would be destabilizing, potentially fostering a chaotic environment at the very time the Debtors are focusing their efforts on the successful reorganization of their businesses.  Moreover, the Debtors have devoted substantial time and resources to the development of a viable business plan that has formed the basis for an ongoing, productive dialogue with their primary creditor constituencies.  Progress has been made toward the goal of a consensual Plan and the Debtors believe that this

14

goal is within reach.  By prematurely terminating the Debtors' Exclusive Periods, the Debtors

would be denied a fair opportunity to formulate and negotiate such a confirmable Plan.

Terminating exclusivity at this critical juncture would thus not advance the rehabilitative

objectives of the chapter 11 process, but would instead thwart those objectives.  Denying the

relief requested herein could critically impair the Debtors' ability to successfully reorganize with

no benefit to the Debtors' estates, creditors, equity interest holders, vendors, customers or other

stakeholders.

       27.     The relief requested in this Motion has been granted to other debtors in

this jurisdiction in other chapter 11 cases.  See In re Buffets Holdings, Inc., Case No. 08-10141

(MFW) (Bankr. D. Del. June 6, 2008); In re New Century TRS Holding, Inc., Case No. 07-

10416 (KJC) (Bankr. D. Del. Jan. 23, 2008); In re Am. Home Mortgage Holdings, Inc., Case No.

07-11047 (CSS) (Bankr. D. Del. Dec. 19, 2007); In re FLYi, Inc., Case No. 05-20011 (MFW)

(Bankr. D. Del. March 16, 2006); In re Meridian Auto. Sys. Composites Operations, Inc., Case

No. 05-11168 (MFW) (Bankr. D. Del. Aug. 11, 2005).

       28.     The Debtors respectfully submit that, under all the relevant facts and

circumstances, the requested further extension of the Exclusive Periods will not prejudice the

legitimate interests of any creditor, and will afford the parties the opportunity to pursue to

fruition the beneficial objectives of a confirmable Plan.

       29.     Based upon the foregoing, the Debtors submit that cause exists in these

bankruptcy proceedings to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of

the Bankruptcy Code.  Specifically, the Debtors respectfully request that the Exclusive Filing

Period be extended, through and including November 30, 2009, and that the Exclusive

Solicitation Period be extended through and including March 15, 2010.

## NOTICE

30.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the administrative agents for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for Debtors' postpetition loan facility; (viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.


[Remainder of page intentionally left blank]

46429/0001-5884537v1

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of the proposed order attached hereto as <u>Exhibit A</u> (i) extending the Exclusive Filing Period through and including November 30, 2009, (ii) extending the Exclusive Solicitation Period through and including March 15, 2010 and (iii) granting such other relief as is just and proper.

Dated:    Wilmington, Delaware          Respectfully submitted,
          July 24, 2009

                                        SIDLEY AUSTIN LLP
                                        James F. Conlan
                                        Bryan Krakauer
                                        Janet E. Henderson
                                        Candice L. Kline
                                        One South Dearborn Street
                                        Chicago, IL  60603
                                        Telephone:  (312) 853-7000
                                        Facsimile:  (312) 853-7036

                                                -and-

                                        COLE, SCHOTZ, MEISEL,
                                        FORMAN & LEONARD, P.A.

                                        By:  _____
                                        Norman L. Pernick (No. 2290)
                                        J. Kate Stickles (No. 2917)
                                        Patrick J. Reilley (No. 4451)
                                        500 Delaware Avenue, Suite 1410
                                        Wilmington, DE  19801
                                        Telephone:  (302) 652-3131
                                        Facsimile:  (302) 652-3117

                                        ATTORNEYS FOR DEBTORS
                                        AND DEBTORS IN POSSESSION