# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>Objection Deadline: August 4, 2009 at 4:00 p.m. (ET)<br>Hearing Date: August 11, 2009 at 10:00 a.m. (ET) |

## APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY DELOITTE & TOUCHE LLP TO PROVIDE CERTAIN FINANCIAL, ACCOUNTING, AND ADVISORY SERVICES TO THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, NUNC PRO TUNC TO JUNE 26, 2009

Tribune Company ("Tribune"), on behalf of itself and its affiliates that have commenced the above-captioned chapter 11 cases (collectively, and as identified in footnote 1 below, the "Debtors") hereby applies to the Court for the entry of an order authorizing them to retain and employ Deloitte & Touche LLP ("Deloitte & Touche") to provide certain financial,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

accounting, and advisory services in connection with these chapter 11 cases (specifically, certain services relating to the preparation of pro forma financial statements and other related accounting and advisory matters) to the Debtors, pursuant to section 327(a) of the Bankruptcy Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), nunc pro tunc to June 26, 2009. In support of this Application, the Debtors (i) submit the Declaration of Peter Leadstrom of Deloitte & Touche (the "Leadstrom Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in these cases. On December 18, 2008, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in these chapter 11 cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code.

## **RELIEF REQUESTED**

5. The Debtors desire to retain and employ Deloitte & Touche to perform certain financial, accounting, and advisory services to the Debtors in connection with these chapter 11 cases, which services relate specifically to assisting and advising the Debtors' in-house personnel in preparing pro forma financial statements for the Debtors in connection with the Debtors' preparation of a plan of reorganization (the "Services"), pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to June 26, 2009.[2] The Services are to be performed pursuant to the terms and conditions set forth in the engagement letter dated June 19, 2009, by and between Tribune and Deloitte & Touche (the "Engagement Letter"),[3] a copy of which is attached hereto as Exhibit B.

6. Specifically, the Engagement Letter provides that the Services to be performed by Deloitte & Touche will include the preparation of required financial statements and pro forma financial information in connection with the Debtors' plan of reorganization, when and as needed.

7. During the term of Deloitte & Touche's retention, the Debtors may request that Deloitte & Touche perform additional services that are not encompassed by the Engagement Letter. Deloitte & Touche may perform such additional services upon receipt of a separate signed engagement letter with terms and conditions that are acceptable to the Debtors and Deloitte & Touche. In the event that any such supplemental engagement letters are entered into,

---

[2] Deloitte Tax LLP, an affiliate of Deloitte & Touche, has previously been identified by the Debtors as an ordinary course professional in these cases for purposes of performing certain tax-related consulting services, pursuant to the order previously entered in these cases for the retention and employment of ordinary course professionals (the "OCP Order") [Docket No. 544]. Deloitte Tax LLP has not yet filed an affidavit in connection with the OCP Order, but an appropriate affidavit is expected to be filed shortly. The ordinary course professional services performed by Deloitte Tax LLP are separate and independent of the Services for which the Debtors seek authorization to employ Deloitte & Touche through this Application.

[3] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Engagement Letter.

the Debtors will promptly file a supplemental application and declaration with the Bankruptcy Court.

8. The Debtors presently project that the total professional fees for the Services will be between $250,000 and $450,000. The professional fees will vary based on the following factors: (1) the timing of Tribune's and its affiliates' progress towards emergence from their chapter 11 cases and the need to update pro forma financial information for additional interim periods based on the passage of time; (2) whether adjustments to the pro forma financial statements are required; (3) the composition and the timing of finalization of Tribune's plan of reorganization; and (4) other factors that may change the scope or timing of the Services. Accordingly, monthly professional fees are expected to be between $40,000 and $100,000 for the Services, and will vary based on the timing of Deloitte & Touche's procedures and the factors listed above.

9. The projected amounts of Deloitte & Touche's fees as described in the above paragraph are provided solely as an estimate and are not intended to be construed as a cap on Deloitte & Touche's fees, nor are the Debtors requesting a cap on Deloitte & Touche's fees. Moreover, the projected amounts of Deloitte & Touche's fees and the timeframes described in this paragraph are subject to change depending upon unforeseen events or delays in connection with the Debtors' engagement of Deloitte & Touche and the Debtors' plan of reorganization.

## DELOITTE & TOUCHE'S EXPERIENCE AND QUALIFICATIONS

10. Deloitte & Touche is a leading accounting services firm. Deloitte & Touche routinely advises large corporate clients on various aspects of their businesses. Of relevance to the Debtors' circumstances, Deloitte & Touche has considerable experience

providing financial, accounting and advisory services to businesses in a chapter 11 environment, and has been employed in numerous cases under the Bankruptcy Code.

11.    The Debtors' management has determined that the Debtors require the above-listed services to obtain general advice regarding the preparation of financial statements in connection with the Debtors' chapter 11 cases and the development of the Debtors' plan of reorganization. The Debtors understand that Deloitte & Touche has substantial experience in providing services similar to the Services to be provided to the Debtors in large and complex chapter 11 cases. Based on that experience, as well as the Debtors' evaluations of Deloitte & Touche, the Debtors believe that Deloitte & Touche is well qualified to perform the Services.

12.    The Services do not duplicate those provided to the Debtors by any of the Debtors' other professionals, including the Debtors' existing outside accountants and auditors. The Debtors seek to retain Deloitte & Touche for the discrete purpose of advising and assisting the Debtors' existing in-house personnel with respect to preparing pro forma financial statements. The Debtors will monitor Deloitte & Touche's services to ensure that all parties make every reasonable effort to avoid any duplication that might arise between the services provided by Deloitte & Touche and the services provided by any other professionals employed by the Debtors.

13.    Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letter, Deloitte & Touche intends to charge the Debtors for the Services rendered in these chapter 11 cases based upon the fee provisions and hourly rates set forth in the Engagement Letter.[4] Such rates recognize the experience and special skills of the applicable

---

[4] Deloitte & Touche's hourly rates as represented in the Engagement Letter are: Principal/Partner, $550; Senior Manager, $475; Manager $425; Senior $350; and Associate $275.

personnel as well as the complexity of the Services.[5] In addition to the professional fees, Deloitte & Touche will also bill for expenses, such as postage, photocopying, telephone, travel, transportation, lodging, and meals. Deloitte & Touche will invoice the Debtors following the end of each month for professional fees accrued and expenses incurred in performing the Services.

14. The Debtors have advised Deloitte & Touche, and Deloitte & Touche understands, that it shall be required to apply to the Bankruptcy Court for allowance of its fees and reimbursement of its expenses. The Debtors have further advised Deloitte & Touche, and Deloitte & Touche understands, that payment of such fees and reimbursement of expenses shall be made in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware and applicable orders of this Court.

15. The Debtors have agreed to indemnify and hold harmless Deloitte & Touche and their respective personnel from any claims, liabilities or expenses relating to the Services and the Engagement Letter, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith, or intentional misconduct of Deloitte & Touche. The Debtors further agreed that no affiliate or related entity of Deloitte & Touche, or such entity's personnel shall have any liability under the Engagement Letter to the Debtors or

---

[5] While the Engagement Letter states that Deloitte & Touche's affiliates may provide services as subcontractors to Deloitte & Touche under the Engagement Letter, the use of such subcontractors is not envisioned in connection with the Services. Deloitte & Touche has recently completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing businesses. That reorganization was intended to align the organizational structure more closely with the manner in which business is conducted. The businesses are now being conducted by entities affiliated with Deloitte & Touche, including Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, and Deloitte Consulting. Accordingly, some services incidental to the tasks to the Services may be performed by personnel now employed by or associated with such entities or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and expenses with respect to such services, if any, will be included in the fees of Deloitte & Touche. See Leadstrom Declaration at ¶ 21.

any other person and the Debtors will not bring any action against any such affiliated or related entity or such entity's personnel in connection with the engagement. The Debtors agreed that affiliated and related entities of Deloitte & Touche are intended third-party beneficiaries of the terms of the Engagement Letter, including, without limitation, the limitation on liability and indemnification provision of paragraph 6 of Appendix A to the Engagement Letter, and the agreements and undertakings of Tribune contained in the Engagement Letter.

16. Consistent with the prevailing standards for retention of professionals in chapter 11 cases in the Third Circuit, however, the Debtors request (and Deloitte & Touche has agreed) that the order approving Deloitte & Touche's retention provide that notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Deloitte & Touche's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order.

17. Consistent with the past practice respecting potential retention applications before this Court, Deloitte & Touche has agreed to strike paragraph 9 from Appendix A to the

Engagement Letter, which paragraph addresses certain limitations on actions against Deloitte & Touche, in its entirety. The form of proposed order approving this Application provides that that provision will be of no force and effect.

18. Deloitte & Touche's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letter.[6]

## LEGAL AUTHORITY

19. The Debtors seek to retain Deloitte & Touche pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

20. To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, Deloitte & Touche has no connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or in the Leadstrom Declaration. In particular:

---

[6] To the extent that the Application and the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

(a) Deloitte & Touche is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

(b) Deloitte Consulting, an affiliate of Deloitte & Touche, provided prepetition services to the Debtors. Deloitte Consulting did not receive any amounts in the ninety days prior to December 12, 2008 (the "Petition Date"). As of the Petition Date, approximately $34,000 was owed by the Debtors to Deloitte Consulting in respect of services provided prior to such date.

(c) Deloitte & Touche and Deloitte Tax LLP, an affiliate of Deloitte & Touche, also provided services to the Debtors prior to the Petition Date. Neither of these entities was owed any amounts by the Debtors as of the Petition Date in respect of services provided prior to such date. Deloitte & Touche received approximately $750,000 in from the Debtors in the ninety (90) days prior to the Petition Date.

(d) From time to time, Deloitte & Touche has provided services, and likely will continue to provide services, to certain parties in interest in these chapter 11 cases in matters <u>unrelated</u> to the Debtors' chapter 11 cases. As described in the Leadstrom Declaration, Deloitte & Touche has undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any parties in interest listed in the Leadstrom Declaration.

21. To the best of the Debtors' knowledge, information and belief, based upon its review of the Leadstrom Declaration, Deloitte & Touche neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Deloitte & Touche is a "disinterested

46429/0001-5885031v1

person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

22. For all of the reasons previously stated, the Debtors submit that the employment of Deloitte & Touche would be in the best interests of the Debtors and their respective estates. The Debtors' knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Leadstrom Declaration.

## NOTICE

23. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) Deloitte & Touche; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

24. The Debtors have not previously sought the relief requested herein from this or any other Court.

46429/0001-5885031v1

Case 08-13141-BLS    Doc 1823    Filed 07/24/09    Page 11 of 11

-12-

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto (i) authorizing the Debtors to retain and employ Deloitte & Touche to provide the financial, accounting and advisory services, to the Debtors in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, nunc pro tunc to June 26, 2009, on the terms and conditions described herein and in the Engagement Letter, and (ii) granting such other and further relief as the Court may deem proper.

Dated: July 24, 2009

TRIBUNE COMPANY
(for itself and on behalf of each Debtor)

_____
Brian Litman
Vice President/Corporate Controller

-12-