# **EXHIBIT B**

46429/0001-5885031v1

# Deloitte.

Deloitte & Touche LLP
111 S. Wacker Drive
Chicago, IL 60606-4301
USA

Tel: +1 312 486 1000
Fax: +1 312 486 1486
www.deloitte.com

June 19, 2009

Mr. Brian Litman
Controller
Tribune Company
435 N. Michigan Avenue
Chicago, Illinois 60611

Dear Mr. Litman:

This letter confirms the engagement of Deloitte & Touche LLP ("Deloitte & Touche" or "we" or "us") by Tribune Company and its subsidiaries (the "Company") to perform certain services in connection with the reorganization of the Company. Deloitte & Touche will perform this engagement subject to the terms and conditions set forth herein and in the accompanying Appendix A.

## Scope of Services

The services to be provided by Deloitte & Touche pursuant to this engagement letter are to be performed under the Company's direction and are expected to comprise assistance to Company management in its preparation of required financial statements and pro forma financial information and other related accounting and advisory matters in connection with the Company's preparation of a plan of reorganization. These Services have been established based on discussions with you, and the sufficiency of the Services for purposes of meeting the financial reporting requirements is solely the responsibility of the Company, as discussed below. In addition, these Services may be changed or modified by mutual agreement between the Company and Deloitte & Touche if, for example, the Company's proposed reorganization changes or unforeseen circumstances arise. Deloitte & Touche will promptly discuss any such circumstances with the Company and, likewise, the Company agrees to promptly notify Deloitte & Touche if modifications to the procedures are requested.

Deloitte & Touche will not issue any report or other written deliverable in connection with this engagement. The work product under this engagement will consist of providing verbal comments and observations, as well as the preparation of initial drafts of financial statements, pro forma financial information, regulatory filings and internal Company guidance relating to the subject matter of this engagement, and the provision of comments relating to the Company's redrafts of any such initial drafts and to other existing internal Company guidance relating to the subject matter hereof. In those cases where Deloitte & Touche personnel prepare initial drafts of guidance materials for review and consideration by the Company's management, management will be solely responsible to review and make all decisions with respect to potential modifications and ultimate approval and acceptance.

## Acknowledgments and Agreements

The Company specifically acknowledges and agrees to the following:

- All management decisions and final conclusions reached in connection with this engagement will be the responsibility of the Company. Deloitte & Touche will not perform any management functions, make management decisions, or perform in a capacity equivalent to that of an employee of the Company.

Member of
Deloitte Touche Tohmatsu

Mr. Brian Litman
June 19, 2009
Page 2

- The Company will identify an appropriate individual to serve as the project manager, including overseeing the Services. The Company will be solely responsible for all decisions regarding its compliance with accounting principles generally accepted in the United States ("U.S. GAAP") and the rules and regulations of the SEC.

- The Company has informed its independent auditor, PricewaterhouseCoopers LLP, of the nature of the Services. Deloitte & Touche has no responsibility for any disagreements between the Company and PricewaterhouseCoopers LLP, the Company's independent auditor, or any successor independent auditor, related to the Company's accounting or disclosure conclusions, whether or not such conclusions of the Company are related to the Services.

- The Company will be solely responsible for all decisions regarding the accounting treatment of any item or transaction and acknowledges that the Services do not include the recording of any amounts in the Company's books or records. All amounts derived from the performance of the Services will be reviewed and approved by, and will be the responsibility of, the Company's management.

- The Services will be performed in accordance with the Statement on Standards for Consulting Services issued by the American Institute of Certified Public Accountants (the "AICPA"). However, the performance of the Services does not constitute an engagement to provide audit, compilation, review, or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board and, therefore, Deloitte & Touche will not express an opinion or any other form of assurance with respect to any matters including, without limitation, compliance with U.S. GAAP and SEC rules and regulations.

- Management's purpose for engaging Deloitte & Touche to perform this work is due to the need to supplement management's own technical accounting resources in performing accounting analysis and to obtain guidance and insight to assist management in making its own determination as to appropriate application of accounting principles and not to obtain an opinion from Deloitte & Touche as to such application.

- The Company will not seek Deloitte & Touche's opinion, and Deloitte & Touche will not provide any such opinion, on the application of accounting principles in connection with this engagement. Furthermore, management agrees that it will not represent to any third parties that it has obtained such opinion from Deloitte & Touche. If such opinion is requested under the requirements of Statements of Auditing Standards No. 50, *Reports on the Application of Accounting Principles*, and No. 97, *Amendment to Statement on Auditing Standards No. 50, "Reports on the Application of Accounting Principles,"* any such services requested of Deloitte & Touche would be subject to a determination by Deloitte & Touche as to whether such services can be rendered, additional client acceptance procedures, and a separate signed engagement letter with terms and conditions that are acceptable to Deloitte & Touche and the Company. Deloitte & Touche is under no obligation to perform such an engagement, if requested.

- The nature, scope, and design of the Services are solely the responsibility of the Company. Deloitte & Touche will make no representation nor provide any assurance with respect to the adequacy of the Services for the Company's purposes. Furthermore, Deloitte & Touche has no responsibility to advise the Company of other procedures that might be performed.

Mr. Brian Litman
June 19, 2009
Page 3

- The responsibility of Deloitte & Touche for purposes of this engagement letter is limited to performing the Services specified above or otherwise agreed to in writing, subject to the limitations contained herein. This engagement cannot be relied on to disclose internal control weaknesses, errors, or fraud should they exist. Deloitte & Touche has no responsibility for updating the Services performed or for performing any additional services, except as agreed to in writing with the Company.

- The Company will be solely responsible for the design and operation of effective internal controls and for complying with all applicable laws and regulations. In the performance of the Services, Deloitte & Touche will not perform any evaluation of internal controls and procedures for financial reporting upon which the Company's management can base its assertion in connection with the Sarbanes-Oxley Act of 2002 or related rules or regulations. In addition, Deloitte & Touche will not be providing any legal advice or conducting a legal review of any of the Company's documents, records, or policies.

- The Company will be solely responsible for providing accurate and complete information requested by Deloitte & Touche. Deloitte & Touche has no responsibility for the accuracy or completeness of the information provided by or on behalf of the Company, even if Deloitte & Touche had reason to know or should have known of such inaccuracy or incompleteness.

- Any materials prepared by Deloitte & Touche and provided to the Company hereunder will not be used by or circulated, quoted, disclosed, or distributed to, nor will reference to such materials or Deloitte & Touche's engagement hereunder be made to, anyone who is not a member of management or of the board of directors of the Company or the Company's external auditors without Deloitte & Touche's prior written consent.

### Use of Software

Deloitte & Touche will utilize software that is currently owned by or licensed to Deloitte & Touche in connection with the performance of its Services. If the Company would like us to use other software, such software is to be acquired by and licensed to the Company, with Deloitte & Touche having rights to use such software on the Company's behalf for use in connection with the performance of its Services to the Company. With respect to software that is owned by or licensed to Deloitte & Touche, if the Company's personnel will access or use such software, the Company agrees to become a licensee in accordance with terms to be mutually agreed upon by the parties hereto.

### Engagement Team

The primary members of our project team will include:

Pete Leadstrom, Partner
Sean Conroy, Senior Manager

This project team may call on additional resources within Deloitte & Touche to assist them as necessary.

Mr. Brian Litman
June 19, 2009
Page 4

**Fees**

Deloitte & Touche's fees are based on the time our professional personnel devote to the project at the following hourly rates:

| Level | Rate |
|---|---|
| Partner/Principal | $ 550 |
| Senior Manager | 475 |
| Manager | 425 |
| Senior | 350 |
| Associate | 275 |

Such rates recognize the experience and special skills of the applicable personnel as well as the complexity of the Services. These fees shall also apply to professional personnel of Deloitte & Touche's affiliates in the United States, which may provide Services as subcontractors to Deloitte & Touche hereunder. Additionally, should this engagement involve professional personnel of member firms of Deloitte Touche Tohmatsu and their respective affiliates outside the United States (collectively, "DTT Member Firms"), which DTT Member Firms may provide Services hereunder as subcontractors to Deloitte & Touche, a discount consistent with the discount included in the hourly rates above will be provided on the standard rates of such DTT Member Firms. We will inform the Company of such standard rates before involvement of professional personnel of any such DTT Member Firms commences. Such rates recognize the experience and special skills of the applicable personnel as well as the complexity of the Services. In addition to the professional fees, we will also bill for our expenses, such as postage, photocopying, telephone, travel, transportation, lodging, and meals.

Deloitte & Touche will invoice the Company following the end of each month for professional fees accrued and engagement-related expenses incurred during that period in performing the Services on this engagement.

Deloitte & Touche understands that it shall be required to apply to the Bankruptcy Court for allowance of its fees and reimbursement of its expenses. Deloitte & Touche further understands that payment of such fees and reimbursement of expenses shall be made in accordance with the applicable provisions of the United States Bankruptcy Code, 11 U.S.C. 101 et seq., the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and applicable orders of the Bankruptcy Court.

All invoices due shall be paid by the Company upon receipt subject to applicable Bankruptcy Court orders, rules or procedures.

Mr. Brian Litman
June 19, 2009
Page 5

**Other Matters**

Deloitte & Touche may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte & Touche believes that a third party may object, in the form of an objection or otherwise, to Deloitte Touche's retention by the Company on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of Deloitte & Touche by the Company is not entered by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to Deloitte & Touche in its sole discretion, or (c) the application of the Company seeking such order is denied by the Bankruptcy Court. In any such event, the Company hereby agrees to withdraw or amend, promptly upon Deloitte & Touche's request, any application filed or to be filed with the Bankruptcy Court to retain Deloitte & Touche's services. For purposes of this engagement letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

**Other Services**

During the term of this engagement, the Company may request that Deloitte & Touche perform additional services that are not encompassed by this engagement letter. Deloitte & Touche may perform such additional services upon receipt of a separate signed engagement letter with terms and conditions that are acceptable to the Company and Deloitte & Touche.

This engagement letter and the General Business Terms, attached in Appendix A hereto and made a part hereof, constitute the entire agreement between the Company and Deloitte & Touche with respect to this engagement and supersede all other oral and written representations, understandings, or agreements relating to this engagement and may not be amended except by mutual written agreement of the Company and Deloitte & Touche.

\* \* \* \* \* \*

Mr. Brian Litman
June 19, 2009
Page 6

If the above terms are acceptable to you and the services outlined are in accordance with your understanding, please sign the copy of this letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Accepted and agreed to by
Tribune Company, on behalf of itself and its subsidiaries:

By: *Brian Litman*

Title: VICE PRESIDENT & CONTROLLER

Date: 7-09-09

**APPENDIX A**

**GENERAL BUSINESS TERMS**
**Client: Tribune Company**

1.  <u>Services.</u> It is understood and agreed that the services (the "Services") provided by Deloitte & Touche (as defined in paragraph 2) under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean Tribune Company and its subsidiaries. Tribune Company represents and warrants that it has the power and authority to execute this agreement on behalf of, and to bind, itself and its subsidiaries.

2.  <u>Payment of Invoices.</u> Subject to applicable Bankruptcy Court orders, rules or procedures, Deloitte & Touche's invoices are due upon presentation. Subject to applicable Bankruptcy Court orders, rules or procedures, invoices upon which payment is not received within thirty (30) days of the invoice date shall accrue a late charge of the lesser of (a) 1-1/2% per month or (b) the highest rate allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its rights or remedies, Deloitte & Touche shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte & Touche's income taxes or tax imposed by employment withholding, and other than taxes imposed on Deloitte & Touche's property.

3.  <u>Term.</u> Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services. This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination, provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Deloitte & Touche may terminate this engagement upon written notice to the Client if it determines that (a) a governmental, regulatory, or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board, or the Securities and Exchange Commission), or an entity having the force of law, has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte & Touche's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules; or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte & Touche's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte & Touche under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4.  <u>Deliverables.</u>

    a)  Deloitte & Touche has created, acquired, or otherwise has rights in, and may, in connection with the performance of the Services, employ, provide, modify, create, acquire, or otherwise obtain rights in, works of authorship, materials, information, and other intellectual property (collectively, the "Deloitte & Touche Technology").

    b)  Except as provided below, upon full and final payment to Deloitte & Touche hereunder, the tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") shall become the property of the Client. To the extent that any Deloitte & Touche Technology is contained in any of the Deliverables, Deloitte & Touche hereby grants the Client, upon full and final payment to Deloitte & Touche hereunder, a royalty-free, fully paid-up, worldwide, nonexclusive license to use such Deloitte & Touche Technology in connection with the Deliverables.

c) To the extent that Deloitte & Touche utilizes any of its property (including, without limitation, the Deloitte & Touche Technology or any hardware or software of Deloitte & Touche) in connection with the performance of the Services, such property shall remain the property of Deloitte & Touche and, except for the license expressly granted in the preceding paragraph, the Client shall acquire no right or interest in such property. Notwithstanding anything herein to the contrary, the parties acknowledge and agree that (1) Deloitte & Touche shall own all right, title, and interest, including, without limitation, all rights under all copyright, patent, and other intellectual property laws, in and to the Deloitte & Touche Technology and (2) Deloitte & Touche may employ, modify, disclose, and otherwise exploit the Deloitte & Touche Technology (including, without limitation, providing services or creating programming or materials for other clients). Deloitte & Touche does not agree to any terms that may be construed as precluding or limiting in any way its right to (1) provide consulting or other services of any kind or nature whatsoever to any person or entity as Deloitte & Touche in its sole discretion deems appropriate or (2) develop for itself, or for others, materials that are competitive with or similar to those produced as a result of the Services, irrespective of their similarity to the Deliverables.

d) To the extent any Deloitte & Touche Technology provided to the Client hereunder is a product (to the extent it constitutes merchandise within the meaning of section 471 of the Internal Revenue Code), such Deloitte & Touche Technology is licensed to the Client by Deloitte & Touche as agent for Deloitte & Touche Products Company LLC on the terms and conditions herein. The assignment and license grant in this paragraph 4 do not apply to any works of authorship, materials, information, or other intellectual property (including any modifications or enhancements thereto or derivative works based thereon) that is subject to a separate license agreement between the Client and a third party, including without limitation, Deloitte & Touche Products Company LLC.

5. **Limitation on Warranties.** THIS IS A SERVICES ENGAGEMENT. DELOITTE & TOUCHE WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE. DELOITTE & TOUCHE DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

6. **Limitation on Damages and Indemnification.**

   a) The Client shall indemnify and hold harmless Deloitte & Touche, its subcontractors, and their respective personnel from any claims, liabilities or expenses relating to this engagement, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith, or intentional misconduct of Deloitte & Touche or its subcontractors.

7. **Client Responsibilities.** The Client shall cooperate with Deloitte & Touche in the performance by Deloitte & Touche of the Services, including, without limitation, providing Deloitte & Touche with reasonable facilities and timely access to data, information, and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte & Touche for purposes of the performance by Deloitte & Touche of the Services. The Client acknowledges and agrees that Deloitte & Touche's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services. Deloitte & Touche shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things (a) making all management decisions and performing all management functions, (b) designating a competent management member to oversee the Services, (c) evaluating the adequacy and results of the Services, (d) accepting responsibility for the results of the Services, and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8. **Force Majeure.** Neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10. **Independent Contractor.** Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte & Touche in respect of the services to be provided by Deloitte & Touche under this engagement. It is understood and agreed that Deloitte & Touche is an independent contractor and that Deloitte & Touche is not, and will not be considered to be, an agent, partner, or representative of the Client.

11. **Confidentiality and Internal Use.**

    a) The Client agrees that all Services and Deliverables shall be solely for the Client's Informational purposes and internal use, and are not intended to be, and should not be, used by any person or entity other than the Client. Except as otherwise specifically provided in the Engagement Letter, the Client further agrees that such Services and Deliverables shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such Services or Deliverables be made to, any person or entity other than the Client and other contractors of the Client to whom the Client may disclose the Deliverables solely for the purpose of such contractors providing services to the Client relating to the subject matter of this engagement, provided that the Client shall ensure that such contractors do not further circulate, quote, disclose, or distribute such Deliverables, or make reference to such Deliverables, to any person or entity other than the Client. Notwithstanding the foregoing, the Client shall not be prohibited from creating its own materials based on the content of such Services and Deliverables and using and disclosing such Client-created materials for external purposes, provided that the Client does not, expressly or by implication, in any manner whatsoever, attribute such materials to Deloitte & Touche or otherwise refer to or identify Deloitte & Touche in connection with such materials.

    b) To the extent that, in connection with this engagement, either party (each, the "receiving party") comes into possession of any trade secrets or other proprietary or confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent. The disclosing party hereby consents to the receiving party disclosing such information (1) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11(b); (2) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (3) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure in breach hereof, (ii) becomes available to the receiving party on a nonconfidential basis from a source other than the disclosing party that the receiving party believes is not prohibited from disclosing such information to the receiving party by obligation to the disclosing party, (iii) is known by the receiving party prior to its receipt from the disclosing party without any obligation of confidentiality with respect thereto, or (iv) is developed by the receiving party independently of any disclosures made by the disclosing party to the receiving party of such information. In satisfying its obligations under this paragraph 11(b), each party shall maintain the other's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Nothing in this paragraph 11(b) shall alter the Client's obligations under paragraph 11(a). Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte & Touche, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte & Touche may use and disclose such experience, skills, knowledge, and ideas.

c) Notwithstanding anything to the contrary in these terms or in those of the Engagement Letter, the provisions of paragraph 11(a) regarding confidentiality and use will not apply to "confidential transactions" or "reportable transactions" (as described in Rule 3501(c)(i) of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111, and related Internal Revenue Service guidance) (collectively referred to as "Subject Tax Planning Advice") under the Engagement Letter. Nothing in this paragraph 11 shall be construed as limiting or restricting disclosure of the Subject Tax Planning Advice or any tax feature thereof for purposes of Rule 3501(c)(i) of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111, and related Internal Revenue Service guidance. The Services and Deliverables provided in connection with this engagement shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte & Touche and any person or party other than the Client ("third party"). Neither the Services nor any Deliverables provided in connection with this engagement are intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte & Touche, no third party is entitled to rely in any manner or for any purpose on the advice, opinions, reports, or other Services or Deliverables provided by Deloitte & Touche. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte & Touche and its personnel from all third-party claims, liabilities, costs, and expenses.

12. <u>Survival and Interpretation.</u> All paragraphs herein relating to payment of invoices, deliverables, limitation on warranties, limitation on damages and indemnification, limitation on actions, confidentiality and internal use, survival and interpretation, assignment, waiver of jury trial, nonsolicitation and governing law shall survive the expiration or termination of this engagement. For purposes of these terms, "Deloitte & Touche" shall mean Deloitte & Touche LLP and, for purposes of paragraph 6, shall also mean Deloitte & Touche Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte & Touche, whether or not acting as a subcontractor, or such entity's personnel shall have any liability hereunder to the Client or any other person and the Client will not bring any action against any such affiliated or related entity or such entity's personnel in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte & Touche are intended third-party beneficiaries of these terms, including, without limitation, the limitation on liability and indemnification provisions of paragraph 6, and the agreements and undertakings of the Client contained in the Engagement Letter. Any affiliated or related entity of Deloitte & Touche may in its own right enforce such terms, agreements, and undertakings. The provisions of paragraphs 6, 9, 11(c), 12, 14, and 17 hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.

13. <u>Assignment and Subcontracting.</u> Except as provided below, neither party may assign, transfer, or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte & Touche assigning or subcontracting any of Deloitte & Touche's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity that acquires all or a substantial part of the assets or business of Deloitte & Touche. Services performed hereunder by Deloitte & Touche's subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte & Touche's personnel, unless otherwise agreed.

14. <u>Waiver of Jury Trial.</u> THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.

15. <u>Nonsolicitation.</u> During the term of this engagement and for a period of one (1) year thereafter, each party agrees that its personnel (in their capacity as such) who had direct and substantive contact in the course of this engagement with personnel of the other party shall not, without the other party's consent, directly or indirectly employ, solicit, engage, or retain the services of such personnel of the other party. In the event a party breaches this provision, the breaching party shall be liable to the aggrieved party for an amount equal to thirty percent (30%) of the annual base compensation of the relevant personnel in his or her new position. Although such payment shall be the aggrieved party's exclusive means of monetary recovery from the breaching party for breach of this provision, the aggrieved party shall be entitled to seek injunctive or other equitable relief. This provision shall not restrict the right of either party to solicit or recruit generally in the media.

16. <u>Entire Agreement, Amendment, and Notices.</u> These terms, and the Engagement Letter, including exhibits, constitute the entire agreement between the parties with respect to this engagement; supersede all other oral and written representations, understandings, or agreements relating to this engagement; and may not be amended except by written agreement signed by the parties. In the event of any conflict, ambiguity, or inconsistency between these terms and the Engagement Letter, these terms shall govern and control. All notices hereunder shall be (a) in writing, (b) delivered to the representatives of the parties at the addresses first set forth above, unless changed by either party by notice to the other party, and (c) effective upon receipt.

17. <u>Governing Law and Severability.</u> These terms, the Engagement Letter, including exhibits, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof) except to the extent governed by the bankruptcy laws of the United States. If any provision of these terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.