IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>Hearing Date: September 4, 2009 at 10:00 a.m.<br>Objection Deadline: August 25, 2009 at 4:00 p.m. |

### FIFTH OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO REJECT CERTAIN LEASES OF NONRESIDENTIAL REAL PROPERTY AND RELATED EXECUTORY CONTRACT PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby move this Court (the "Motion") pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order authorizing the Debtors to (i) reject that certain unexpired lease of nonresidential real

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

property for the first floor of the building located at 2000 York Road, Oak Brook, Illinois 60521 (the "Oak Brook Premises") dated as of July 1, 1992, (ii) reject that certain unexpired lease of nonresidential real property for the premises commonly known as 57-11 49th Place, New York, New York (the "InsertCo Premises," together with the Oak Brook Premises, the "Premises") dated as of April 24, 2003 (the "InsertCo Lease," together with the Oak Brook Lease, the "Leases"), (iii) reject that certain Lease and Utility Structure Agreement, and any amendments or modifications thereto (the "Utility Agreement") by and between InsertCo, Inc. ("InsertCo"), a debtor in these chapter 11 cases, and Shuttle Printing, Inc. ("Shuttle") as of August 31, 2009 (the "Rejection Date"),[2] and (iv) abandon any unsold trade fixtures or personal property at the Premises.  In support of this Motion, the Debtors: (i) submit the Declaration of Stephanie Pater, Director, Real Estate of Tribune Company (the "Pater Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference; and (ii) respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

---

[2] The Debtors are requesting an effective date for rejection of the Leases of August 31, 2009 rather than the date of entry of the Order authorizing the rejection so as to provide sufficient time to vacate all premises that are not currently vacant and which are subject to rejection.

46429/0001-5913444v1

3. On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 365 of the Bankruptcy Code.

## RELIEF REQUESTED

5. The Debtors respectfully request that the Court enter an order approving (i) the rejection of the Leases as of August 31, 2009, (ii) the rejection of the Utility Agreement, and (iii) the Debtors' abandonment of any unsold trade fixtures or personal property at the Premises as of the Rejection Date. Specifically, and as described in more detail below and on the exhibit hereto, the Leases and the Utility Agreement relate to certain studio, office and operational spaces which are no longer needed by the Debtors and will have been vacated by the Debtors no later than August 31, 2009. Copies of the Leases and the Utility Agreement have not been filed with this Motion, but are available at the offices of Debtors' counsel for inspection during normal business hours upon reasonable request.

6. The Bankruptcy Code provides that "the trustee [or debtor(s)-in-possession], subject to the court's approval, may ... reject any ... executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts utilize the business judgment standard to determine whether to approve the rejection of a contract or lease. Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989); In re G. Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("In determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test. Generally, absent a

3

showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered."). Under the business judgment test, the debtor in possession need demonstrate only that the assumption or rejection of the unexpired lease or executory contract will benefit the estate. See id. ("Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citing inter alia, In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), aff'd sub nom, N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 104 S.Ct. 1188 (1984)). In particular, rejection of an executory contract or unexpired lease is appropriate where such rejection would benefit the estate. See In re Stable Mews Assocs., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

7.  Rejection of the Leases and Utility Agreement is a proper exercise of the Debtors' business judgment in this instance. As described more fully in the Pater Declaration, the real property spaces that are the subject of the Leases are no longer needed by the Debtors and will be vacated by the Debtors no later than August 31, 2009. See Pater Declaration at ¶ 3.

8.  Following the Petition Date, in an effort to streamline the Debtors' businesses and reduce inefficiencies, the Debtors began a process of examining their operations in order to determine ways in which they could increase performance, produce synergies and revenue and create substantial cost savings. As part of this process, the Debtors began a labor-intensive and detailed analysis of their real property leases in order to determine which operations could be consolidated for these purposes. Through this process, the Debtors have eliminated their need for certain of the leases. Since the Petition Date, the Debtors have obtained five orders from the court authorizing the rejection of over 70 real estate leases and the assumption of 224 real estate leases.[3]

---

[3] See Order Authorizing Debtors First Omnibus Motion to Reject Certain Leases of Nonresidential Real Property [Docket No. 226]; Order Authorizing Debtors Second Omnibus Motion to Reject Certain Leases

9. Although the period in which the Debtors could elect to assume or reject the Leases absent the landlords' consent expired on July 6, 2009, each of the Landlords under the Leases has consented to extend the period in which the Debtors may elect to assume or reject the relevant Lease, as expressly permitted by section 365(d)(4)(b)(ii) of the Bankruptcy Code. Specifically, on April 30, 2009, Duke York Road, LLC, ("Duke") the landlord under the Oak Brook Lease and Chicago Tribune Company ("Chicago Tribune"), a debtor in these chapter 11 cases, entered into an Agreement Relating to Lease through which Duke agreed, inter alia, to extend the time for Tribune to assume or reject the Oak Brook Lease pursuant to section 365 of the Bankruptcy Code until August 31, 2009. Additionally, on June 5, 2009, the Court entered an order approving the stipulation between InsertCo and 57-11 49th Place LLC ( "57-11 49th Place," collectively with Duke, the "Landlords"), the successor landlord under the InsertCo Lease, to extend the time in which InsertCo may assume or reject the InsertCo Lease to September 30, 2009. In connection with the InsertCo Lease and the Utility Agreement, on August 6, 2009, InsertCo and Shuttle entered into a First Amendment to Lease and Utility Restructure Agreement (the "Utility Agreement Amendment") in which, inter alia, (i) the parties agreed to modify their relative percentage occupancy of the InsertCo Premises, and (ii) Shuttle acknowledged that InsertCo would be seeking Bankruptcy Court approval to reject the Lease and Utility Agreement with an effective date of such rejection to be no later than August 31, 2009.

10. The Landlords and Shuttle are aware of the relevant Debtors' intent to reject the Leases and Utility Agreement.

---

of Nonresidential Real Property [Docket No. 430]; Order Authorizing Debtors Third Omnibus Motion to Reject Certain Leases of Nonresidential Real Property [Docket No. 791]; Order Authorizing Debtors Fourth Omnibus Motion to Reject Certain Leases of Nonresidential Real Property [Docket No. 1629];Order Authorizing Debtors to (I) Assume Certain Unexpired Leases of Nonresidential Real Property and (II) Set Cure Amounts With Respect Thereto [Docket No. 1628].

46429/0001-5913444v1

11. Rejection of the Leases is within the business judgment of the Debtors and will afford a clear financial benefit to the estates of the applicable Debtors. Through the Debtors' streamlining of their businesses and consolidation of certain operations, the Debtors have determined that the Premises that are subject to the Leases are not of any current or plausible future use to the Debtors. The Oak Brook Premises were previously used by CLTV, one of the Debtors' television stations. The Debtors have since moved CLTV's operations to certain of the Debtors' other studio and office spaces, and as a result the Oak Brook Premises are surplus to the Debtors' business operations. See id. at ¶ 5.

12. The InsertCo Premises were previously used by InsertCo in connection with its business. Due to certain contractual obligations, InsertCo was required to continue its operations until the end of July 2009. Upon completion of such obligations, InsertCo began the process of winding down its business. Given the fact that InsertCo will no longer be operating, it is no longer in need of the InsertCo Premises. See id. at ¶ 6. Pursuant to the InsertCo Lease, Shuttle, as a co-tenant at the InsertCo Premises, will be liable for all obligations under the InsertCo Lease as soon as InsertCo has vacated the InsertCo Premises, which will be no later than August 31, 2009. Therefore, there would be few or no rejection damages relating to the rejection of the InsertCo Lease should this Motion be granted, as an existing co-tenant would be responsible for the entirety of the InsertCo Premises under the InsertCo Lease.

13. The Debtors project that rejection of the Leases and Utility Agreement will save the Debtors approximately $1.8 million in annual rent obligations and other expenses. See id. at ¶ 7. Furthermore, the Debtors do not believe that there was any value in attempting to assign their rights under the Leases or otherwise market the properties for sublease. Given the co-tenancy structure of the InsertCo Lease and the fact that the co-tenant under the InsertCo

46429/0001-5913444v1

Lease will assume responsibility for the entirety of the InsertCo Lease, including the InsertCo Premises, upon InsertCo's vacating of the InsertCo Premises, marketing the InsertCo Lease served little purpose. In addition, based on the Debtors' knowledge of the applicable real estate markets, the Debtors do not believe there is any value in assuming and assigning the Oak Brook Lease. See id. For these reasons, the Debtors, in the exercise of their business judgment, believe it is beneficial to their estates to reject the Leases and the Utility Agreement relating to the InsertCo Lease.

14. By this Motion, the Debtors also request the authority to abandon any unsold trade fixtures or personal property (the "Property") at the Premises. The Property is no longer of any use to the Debtors and may, in certain instances, be of use to the Landlords. See id. at ¶ 8. Furthermore, Duke is aware of and has agreed to the Debtors' abandonment of certain property at the Oak Brook Premises. See id.

15. While the Debtors do not concede that the abandonment of the Property is not in compliance with the terms of the Leases, even if the Debtors have not fully complied with the provisions of the Leases regarding the vacation of the Premises, the Debtors are still entitled to reject the Leases. Courts have made clear that a debtor need not comply with lease terms related to the vacation of a leased premise, including those related to clean-up and repair, in order to effectively reject a lease. See In re Ames Dept. Stores, Inc., 306 B.R. 43 (Bankr. S.D. N.Y. 2004) (authorizing rejection even though the debtor left behind abandoned personal property and was in default of clean-up obligations); In re National Refractories & Minerals Corp, 297 B.R. 614 (Bankr. N.D. Cal. 2003) (same); see also In re Unidigital, 262 B.R. 283 (Bankr. D. Del. 2001) (denying landlord's request for administrative expense status for cost incurred in the removal of abandoned equipment on previously leased premises when the lease


was rejected months earlier). Courts have also made clear that a debtor's failure to remove abandoned personal property on lease premises does not prevent effective rejection. <u>Ames Dept. Stores</u>, 306 B.R. 43; <u>National Refractories</u>, 297 B.R. 614; <u>Unidigital</u>, 262 B.R. 283. In the interest of returning control of the Premises to the Landlords as soon as possible, the Debtors believe that it is in the best interest of all parties to abandon the Property.

16. Pursuant to the Order of this court entered on March 26, 2009, Establishing Bar Dates for Filing Proofs of Claim [Docket No. 813], should the Court grant this Motion, the Landlords are required to file a proof of claim for rejection damages, if any, by sending such proof of claim to Tribune Company Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC; 757 Third Avenue, Third Floor, New York, NY 10017, so that it is received on or before thirty (30) days after entry of the order authorizing the rejection of the Leases or forever be barred from asserting such claim.

## NOTICE

17. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) the administrative agents for the Debtors' prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to the Landlords; (vi) counsel to Shuttle; and (vii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

18. Other than prior requests to reject certain real property leases, the Debtors have not previously sought the relief requested herein from this or any other Court.

46429/0001-5913444v1

WHEREFORE, the Debtors respectfully request that the Court enter an Order, (i) approving the rejection of the Leases and Utility Agreement, (ii) authorizing the Debtors' abandonment of any unsold trade fixtures or personal property at the Premises, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
August 7, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Bridget J. Hauserman
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-5913444v1