UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Hearing date: August 11, 2009 @ 10:00 a.m.<br>Objection deadline: August 10, 2009 @11:00 a.m.<br>Re: D.I. Nos. 1800, 1801, 1889 & 1900 |

### OBJECTION OF WASHINGTON-BALTIMORE NEWSPAPER GUILD TO THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR A PROTECTIVE ORDER WITH REGARD TO DISCOVERY PROPOUNDED BY THE WASHINGTON-BALTIMORE NEWSPAPER GUILD

Washington-Baltimore Newspaper Guild ("WBNG"), by and through the undersigned counsel, hereby submits this objection (the "Objection") to the Motion of the Debtors and Debtors in Possession for a Protective Order With Regard to Discovery Propounded by The Washington-Baltimore Newspaper Guild (the "Motion for Protective Order"). In support hereof, WBNG respectfully states as follows:

### PRELIMINARY STATEMENT

1.     After waiting until the latter half of 2009, the Debtors have proposed their management incentive program ("MIP") wherein they seek to spend up to $69.9 million of estate funds on 2008 and 2009 incentive payments to executives. The Debtors seek Court approval of the MIP on twenty-day notice, filing crucial information under seal, and – importantly here – without providing meaningful discovery sufficient for creditors and parties in interest to determine (1) the factual basis giving rise to the bonuses proposed pursuant to the MIP, (2) the factual basis to evaluate the Debtors' exercise of business judgment, and (3) the merits of such a program. WBNG seeks due process and its discovery directed to the Debtors seeks information

relevant to the Debtors' proposed MIP, which information is necessary to provide WBNG and other parties in interest a level playing field to analyze the MIP, and present a meaningful response to the Court.

## **BACKGROUND**

2. On August, 4, 2009, WNBG filed its objection to the (1) Motion of the Debtors for an Order Authorizing the Debtors to Implement a 2009 Management Incentive Plan and to Pay Earned 2008 Management Incentive Plan Awards to Certain Executives (the "MIP Motion") and (2) the Motion of the Debtors to File Under Seal an Exhibit to Motion of the Debtors for an Order Authorizing the Debtors to Implement a 2009 Management Incentive Plan and to Pay Earned 2008 Management Incentive Plan Awards to Certain Executives (the "Seal Motion").

3. The Debtors filed the MIP Motion on July 22, 2009. Within a week of receiving the MIP Motion, WBNG contacted Debtors' counsel seeking factual information from the Debtors necessary to evaluate the MIP, and if relief sought therein reflects the proper exercise of the Debtors' business judgment. WBNG sought quickly to obtain relevant information from the Debtors through informal discovery so it could evaluate the reasonableness of the MIP based on all relevant facts. WBNG sent the Debtors two letter requests and had several teleconferences with the Debtors; the Debtors would not agree to the extent and manner of the discovery responses sought byWBNG. A main point of contention was the Debtors' requirement that WBNG accept discovery responses subject to a confidentiality agreement, discussed *infra*, thereby limiting its ability to share important, relevant information with its constituents and other similarly situated parties-in-interest.

4. Contemporaneous with the filing of its objection to the MIP Motion, WBNG served the Debtors with its First Set of Interrogatories and Requests for Production (the

"Discovery Requests"). The Discovery Requests seek limited information that will permit the WNBG to fully explore the Debtors' business judgment in formulating the MIP Motion.

5. During the late hours of August 5, 2009, the Debtors filed their Motion for Protective Order. The Motion for Protective Order incorrectly asserts that WBNG only filed its objection to the MIP Motion to delay consideration of the MIP, as an effort to leverage the Debtors in future collective bargaining negotiations, to burden the Debtors with voluminous and irrelevant discovery requests, and to embarrass the Debtors.

## WBNG IS ENTITLED TO THE REQUESTED DISCOVERY

6. The Debtors incorrectly characterize WBNG's discovery requests as an eleventh hour attempt to delay the hearing on the MIP Motion. This is contention is without merit. To the contrary, WBNG has nothing to gain by delaying the hearing on the MIP Motion; WBNG wants the opportunity to conduct a meaningful review of the facts giving rise to the MIP, including the Debtors' exercise of judgment. This is a significant expense for any debtor. WBNG believes discovery is warranted. The Debtors claim that time is of the essence as the 2009 performance period covered by the MIP is well underway. However, the Debtors waited until August 2009 to present the MIP for approval. Continuing a hearing on the MIP Motion to allow WBNG to fully evaluate the Debtors' discovery responses will not prejudice the Debtors in any way. To the contrary, WBNG submits that full disclosure and transparency is necessary before the Court may evaluate a plan disbursing up to $69.9 million in cash.

7. The Debtors also incorrectly characterize WBNG's discovery requests as seeking a leverage tool for future collective bargaining negotiations. This argument, while certainly illustrative of the effect of the MIP on the Debtors' operations, has no merit. Labor negotiations

3

are nearly two years away; the information WBNG seeks is relevant to only to the present, the Debtors' judgment, and 2009 operating expectations.

8. Despite the Debtors' characterization of WBNG's discovery requests as voluminous and irrelevant, the discovery requests is very focused and limited to the issue before the Court: the reasonableness of the MIP and the Debtors' business judgment. The disputed discovery requests are specific to the factual basis for the MIP and evaluating the reasonableness of the proposed bonuses. The MIP is based on targets for Planned Operating Cash Flow,[1] Stretch Operating Cash Flow, and Maximum Operating Cash Flow. WBNG has reason to believe the Debtors set goals for both Planned Operating Cash Flow and Stretch Operating Cash Flow that are unreasonably low, such that achieving them is all but guaranteed. For that reason, the MIP provides no actual "incentive." Further, WBNG notes that, as stated by the Debtors, the current operating cash flow goals are calculated in such a way that excludes reorganization costs and "non-operating items and special items," items neither defined nor given a value in their pleadings. Although the Mercer report[2] compares the Debtors' incentives to peers as a percentage of revenue, it does not show the incentives as a percentage of cash flow. Despite requests to do so, the Debtors have not provided the WBNG with any information concerning previous goals and operating cash flow numbers. Without publicly disclosing more about how these are calculated, the Debtors cannot seek to establish the reasonableness of the goals. WBNG is entitled to discovery on this topic to evaluate the reasonableness of the bonus payouts.

9. The Debtors' representation that they offered WBNG all of the information requested subject to a "professional-eyes only" confidentiality agreement ignores the fact that entering into such an agreement would prevent WBNG's professionals from conferring with

---

[1] Capitalized terms not defined herein are ascribed the definition given in the MIP Motion.
[2] Filed under seal as Exhibit D to the MIP Motion and provided in redacted form to WBNG.

4

their client and similarly situated parties in interest regarding the objection to the MIP Motion. Such limits severely hamper these parties' ability to evaluate the reasonableness of the MIP and to determine how to proceed in response.

10. Likewise, the Debtors spend much of their Motion for Protective Order harping on WBNG's status as a committee member, and having access to some of the information sought through the now-requested discovery. However, as the Debtors are well aware, as a committee member, WBNG is bound by confidentiality restrictions that prevent the public disclosure of that information. Those same confidentiality restrictions prevent WBNG from using such information in its opposition to the MIP Motion. As with the other unions, WBNG has a right, as an interested party, independent from its role as a committee member, to inquire into the factual basis for the MIP and challenge its reasonableness and the business judgment of the Debtors; it cannot do this adequately or meaningfully without the aid of discovery.

11. While the MIP discloses differing categories of bonus levels, it only discloses an average potential bonus amount for employees in that category. As set forth in the WNBG's objection to the MIP, the MIP does not identify specific bonuses. The proposed distribution of the bonuses among various employees within a certain category is unknown, and has not been proved by the Debtors to be reasonable. Even if this Court were to hold that the proposed average bonus payouts were reasonable, the Debtors have not demonstrated that the bonuses will be distributed equitably among employees in each classification. It is possible that the bonuses will be paid disproportionately and will not achieve the stated motivation purpose for those employees receiving below average bonuses.

## THE DEBTORS' DISCOVERY RESPONSES SHOULD NOT BE SUBJECT TO A CONFIDENTIALITY REQUIREMENT

12. The Debtors' Motion for Protective Order requests, in the alternative, that the Debtors be allowed to produce discovery responses subject to a confidentiality requirement. Such a requirement would not allow WBNG to share any of the information it obtained and would require any filings incorporating the discovery responses to be filed under seal. WBNG objects to this request for relief.

13. The discovery sought by WBNG does not constitute confidential commercial information within the meaning of Section 107(b) and Bankruptcy Rule 9018. The Debtors argue that the propounded discovery requests confidential and individualized information regarding the proposed bonus payouts of certain of the recipients. The Debtors maintain that if specific bonus amounts are disclosed, competitors in the Debtors' industry may use such information in an attempt to recruit and hire key management employees away from the Debtors. Moreover, the Debtors state that the disclosure of the recipients' names may lead to resentment among certain employees of the Debtors when the employees view each recipient's income. Finally, the Debtors state that dissemination of the Debtors' operating plan and performance goals would likely prejudice the Debtors' interests by giving competitors insight into operational planning and performance expectations.

14. There is a strong, compelling presumption of open access to judicial records and proceedings in civil matters. *See In re Northstar Energy, Inc.*, 315 B.R. 425, 428 (Bankr.E.D.Tex.2004) (stating "[Section] 107(a)'s directive for open access flows from the nature of the bankruptcy process-which is heavily dependent upon creditor participation, and which requires full financial disclosure of debtor's affairs."); *In re Muma Servs., Inc.*, 279 B.R. 478, 484 (Bankr.D.Del.2002) (noting section 107(a)'s prescription for public accessibility in

6

bankruptcy cases); *In re Epic Assocs. V*, 54 B.R. 445, 447 (Bankr.E.D.Va.1985) (concluding that "[s]ection 107(a) creates a presumption in favor of public access to court records filed in bankruptcy cases").

15. Section 107(a) is "a codification of the common law general right to inspect judicial records and documents." *In re Nunn*, 49 B.R. 963, 964 (Bankr.E.D.Va.1985) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). *See also In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2d Cir.1994) (stating that the "policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences [C]ongress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings").

16. Section 107(a) creates a presumption that papers filed in bankruptcy court are public records. *Muma Servs.*, 279 B.R. at 484. Congress has, however, provided a few limited exceptions to this general rule. *See* 11 U.S.C. § 107(b) & (c). Specifically, the Code provides that: "… (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may- (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b).

17. The Court should not protect information from disclosure by an entity as being "commercial information" unless disclosure of the information can "reasonably be expected to cause the entity commercial injury." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (internal quotations omitted). The information sought must be "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that

7

entity's competitors." *Id.* at 75-76 (internal quotations omitted). The possibility that disclosure will result in negative publicity or embarrassment to a company is not a ground for sealing records under section 107(b). *Muma Servs.*, 279 B.R. at 484. Here, aside from the bare allegations contained in the Motion for Protective Order, the Debtors have not provided any factual evidence that the information requested through discovery is protected or, if disclosed, would cause an unfair advantage in favor of their competitors.

18.  In *Sun-Times Media Group, Inc.*, the Court would not seal certain financial information related to the debtors' business when presented with a situation similar to the case at bar. *See* Transcript of Proceedings at 47-48, *In re Sun-Times Media Group, Inc.*, C.A. No. 09-11092 (CSS) (June 10, 2009), attached as Exhibit "A". There, in connection with a sales incentive program, the debtors sought to have sale milestones, trigger events, and the trigger results sealed. The court held that neither the Court nor the litigants "can properly try the merits of the case without knowing and being able to discuss openly the very issues that the debtor seeks to keep confidential..." *Id.* at 48. There were parties who had a right to know what was going on in the case who would be harmed by the granting of a seal motion. *Id.* Likewise, in the present case, the Debtors have not shown that disclosing the requested discovery would be sufficiently damaging to overcome the public interest of open judicial proceedings. WBNG, its constituents, other unions, and creditors have a right to know what is going on in this case and will be denied that right if the Debtors do not disclose the requested information.

19.  Likewise, The Debtors cite *In re Georgetown Steel* in support of finding the employees' names and bonuses are confidential commercial information within the scope of Section 107(b). However, in *Georgetown Steel*, one of the major considerations for the court was the "possibility of serious repercussions" to the employees whose information was

8

disclosed. *In re Georgetown Steel*, 306 B.R. 542, 547 (D.S.C. 2004). These repercussions were to the safety of the employees, not business repercussions. *Id.* The court was presented with uncontradicted evidence that the employees were subjected to violence and acts of retaliation because of the bankruptcy filing. *Id.* at 547-548. The threat of demonstrated physical harm to the employees weighed heavily in the court's analysis and, ultimately, the court found the information confidential. *Id.* This is not the case here because there has been no evidence of any potential harm to the employees. *Georgetown Steel* must be distinguished and does not control the disclosure of employee compensation in this case.

20. Accordingly, the Debtors have not met the burden imposed by Section 107(b) and FRBP 9018 and the Court should deny the request in Debtors' Motion for Protective Order to produce any discovery responses subject to a confidentiality agreement.

## CONCLUSION

WHEREFORE, the Washington-Baltimore Newspaper Guild requests that this Court issue an order denying the Motion for Protective Order or granting other and further relief consistent with this objection.

Dated: August 10, 2009  
Wilmington, DE

CROSS & SIMON, LLC

By: _____  
Michael J. Joyce (No. 4563)  
Ryan M. Ernst (No. 4788)  
913 North Market Street, 11th Floor  
P.O. Box 1380  
Wilmington, Delaware 19899-1380  
(302) 777-4200 (Telephone)  
(302) 777-4224 (Facsimile)  
mjoyce@crosslaw.com

-and-

Robert E. Paul, Esquire
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Avenue NW, Suite 712
Washington, D.C. 20036-5420
(202) 857-5000 (Telephone)
(202) 223-8417 (Facsimile)

*Counsel to Washington-Baltimore
Newspaper Guild*