IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Objections Due: August 28, 2009 at 4:00 p.m.<br>Hearing Date: September 4, 2009 at 10:00 a.m. |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL., PURSUANT TO 11 U.S.C. §§ 328 AND 1103 AND FED. R. BANKR. P. 2014, FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ZUCKERMAN SPAEDER LLP AS SPECIAL COUNSEL NUNC PRO TUNC TO AUGUST 6, 2009

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the above-captioned chapter 11 cases of Tribune Company, et al. (collectively, the "Debtors") hereby submits this application (the "Application"), pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing the employment and retention of Zuckerman Spaeder LLP ("Zuckerman") as special

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

counsel in connection with the Debtors' chapter 11 cases, <u>nunc</u> <u>pro</u> <u>tunc</u> to August 6, 2009. In support of this Application, the Creditors' Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Application are sections 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

2. On December 18, 2008, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee appointed the Creditors' Committee. The Creditors' Committee currently consists of nine members.[2]

3. On January 16, 2009, the Creditors' Committee filed the Application of the Official Committee of Unsecured Creditors of Tribune Company, <u>et</u> <u>al</u>. for an Order Authorizing the Employment and Retention of Chadbourne & Parke LLP as Co-Counsel and the Affidavit of David M. LeMay in support of the retention of Chadbourne & Parke LLP (together, the "<u>Chadbourne Retention Application</u>") [D.E. # 243] seeking this Court's approval to retain and employ Chadbourne & Parke LLP ("<u>Chadbourne</u>") as co-counsel to the Creditors' Committee.

---

[2] The Creditors' Committee is comprised of the following entities: JPMorgan Chase Bank, N.A.; Merrill Lynch Capital Corporation; Buena Vista Television; Deutsche Bank Trust Company Americas, as Indenture Trustee; Warner Bros. Television; Mr. William Niese; Pension Benefit Guaranty Corporation; Washington-Baltimore Newspaper Guild, Local 32035; and Wilmington Trust Company, as Successor Indenture Trustee.

4. On January 16, 2009, the Creditors' Committee filed the Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors and the Affidavit of Adam G. Landis in Support of Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors (together, the "Landis Retention Application") [D.E. #242] seeking this Court's approval to retain and employ Landis Rath & Cobb LLP ("Landis") as co-counsel to the Creditors' Committee.

5. On February 16, 2009, Chadbourne filed the First Supplemental Affidavit of David M. LeMay in Connection with the Retention and Employment of Chadbourne & Parke LLP as Counsel to the Official Committee of Unsecured Creditors, dated February 16, 2009 [D.E. # 395] (the "Supplemental Affidavit").

6. On February 20, 2009, this Court approved the Chadbourne Retention Application on a final basis by its entry of the Order Authorizing the Employment and Retention of Chadbourne & Parke LLP as Co-Counsel to the Official Committee of Unsecured Creditors of Tribune Company, et al., effective as of December 18, 2008 [D.E. # 429].

7. On February 20, 2009, this Court approved the Landis Retention Application on a final basis by its entry of the Order Granting Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors, effective as of December 18, 2008 [D.E. #428].

8. From the inception of these cases, it has been apparent to all parties that a major issue in connection with any proposed plan of reorganization for the Debtors is the investigation and resolution of certain potential claims and causes of action in favor of the

Debtors' estates arising from the series of transactions during calendar year 2007 pursuant to which the Debtors became privately held (the "Leveraged ESOP Transactions"). JPMorgan Chase Bank, N.A. ("JPMC") and Merrill Lynch Capital Corporation ("MLCC") are members of the Creditors' Committee. They or their corporate affiliates were also participants in the financing of the Leveraged ESOP Transactions. In the spring of 2009, the members of the Creditors' Committee, other than JPMC and MLCC, who have at all times recused themselves from any participation in the Committee's review of the Leveraged ESOP Transactions because of their conflicting interests (such unconflicted members, the "Independent Members"), instructed the Creditors' Committee's professionals to investigate the Leveraged ESOP Transactions to ascertain whether those transactions might give rise to one or more causes of action that might be prosecuted on behalf of the Debtors' estates.

9. At the time of its retention and again upon receiving the Creditors' Committee's instruction to conduct the preliminary investigation (and as specifically disclosed in detail in the Supplemental Affidavit), Chadbourne advised the Creditors' Committee that, while it would be able to investigate and conduct settlement negotiations with the lenders in the Leveraged ESOP Transactions and would be able if necessary to pursue litigation against many of the participants in the Leveraged ESOP Transactions, Chadbourne would be unable because of conflicts to bring claims against certain of such lenders or to investigate or bring certain claims against certain financial advisors who participated in the Leveraged ESOP Transactions.

10. After consultation with its counsel, the Creditors' Committee, acting through the Independent Members, determined that good cause exists to retain special counsel to assist in the further investigation of the Leveraged ESOP Transactions, and in negotiations with the respective lenders and the Debtors looking toward a consensual resolution of any

claims if such a resolution can be achieved on terms that are satisfactory to the Committee, and in the event that negotiations do not produce an outcome satisfactory to the Committee, to be able to bring any such causes of action against the lenders as may be deemed appropriate by the Creditors' Committee to the extent the Committee may be authorized by subsequent order of the Court to bring such causes of action.

11. On August 6, 2009, the Creditors' Committee selected Zuckerman to serve as special counsel to the Creditors' Committee.

### RELIEF REQUESTED

12. By this Application, the Creditors' Committee seeks to employ and retain Zuckerman as its special counsel, pursuant to sections 328(a) and 1103 of the Bankruptcy Code, effective as of August 6, 2009.

### BASIS FOR RELIEF

13. The Creditors' Committee respectfully submits that it is necessary and appropriate for it to employ and retain Zuckerman to provide, among other things, the following services:

(a) assist the Creditors' Committee in the analysis of the potential causes of action described above;

(b) participate in negotiations with the lenders and the Debtors;

(c) if necessary, prosecute such causes of action as described above to the extent, by subsequent motion, the Committee may be authorized to bring such causes of action; and

(d) perform such other legal services in connection with the above services as may be required or are otherwise deemed to be in the interests of the Creditors' Committee in accordance with the Creditors' Committee's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

14. The Creditors' Committee believes that Zuckerman possesses extensive knowledge and expertise in the areas of law relevant to these chapter 11 cases, and that Zuckerman is well qualified to represent the Creditors' Committee as special counsel in these chapter 11 cases. In selecting special counsel, the Creditors' Committee sought attorneys with considerable experience representing plaintiffs in complex commercial litigation. Zuckerman has such experience. For instance, Zuckerman has represented litigation trusts in complex cases arising out of the chapter 11 cases of KB Toys, Spiegel and Metromedia Fiber Network.

15. Pursuant to 11 U.S.C. § 1103(b), an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with this case. To the best of the Creditors' Committee's knowledge, the partners, counsel and associates of Zuckerman do not hold or represent any interest adverse to the estates, as set forth in the Declaration of Thomas G. Macauley (the "Macauley Declaration"), attached as Exhibit A hereto.

16. As set forth in the Macauley Declaration, Zuckerman has conducted an extensive search of its conflict database and has made other extensive internal inquiries with respect to the Debtors and a voluminous list of parties in interest and potential parties in interest in these chapter 11 cases. The scope of that search and of those inquiries is set out on Exhibit 1 to the Macauley Declaration, while the results are set forth on Exhibit 2 to the Macauley Declaration. Based on the Macauley Declaration, Zuckerman does not represent or hold any interest adverse to the Debtors, their estates, creditors, or equity security holders in the matters on which Zuckerman is to be engaged.

17. The Creditors' Committee believes that the employment and retention of Zuckerman as special counsel is necessary for the Creditors' Committee to fulfill its obligations

to the Debtors' unsecured creditor constituency and in the best interests of the Debtors' estates and their creditors. Chadbourne and Zuckerman have discussed each firm's respective roles and are committed to making every effort to minimize the incurrence of duplicative fees and expenses.

18.     The Creditors' Committee requests that all fees and related costs and expenses incurred by the Creditors' Committee on account of services rendered by Zuckerman be paid as administrative expenses pursuant to sections 330(a), 331 and 503(b) of the Bankruptcy Code. Subject to the Bankruptcy Court's approval, and subject to any such further orders as the Court may enter relating to Zuckerman's fee structure (e.g., a possible contingent or other alternative fee arrangement in the event that litigation is initiated), Zuckerman will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered, subject to section 330 of the Bankruptcy Code. The current hourly rates charged by Zuckerman for professionals and paraprofessionals employed in its offices are:

| Billing Category | Range |
| --- | --- |
| Partners and Counsel | $475-$825 |
| Associates | $300-$500 |
| Staff Attorneys | $255-$355 |
| Paraprofessionals | $155-$275 |

19.     The hourly rates set forth above are subject to periodic adjustments, subject to approval of the client, typically in January of each year, to reflect economic and other conditions. Zuckerman will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services provided to the Creditors' Committee.

20. In addition to the hourly rates set forth above, Zuckerman customarily charges its clients for all costs and expenses incurred in connection with a client's case. These charges include, among other things, long-distance telephone and telecopier charges, mail and express mail charges, special or hand delivery charges, filing fees, photocopying charges, travel expenses, expenses for "working meals," computerized research, and transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime. Zuckerman will seek reimbursement for such expenses pursuant to, among other things, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, any applicable guidelines established by the Bankruptcy Court or the U.S. Trustee, and any orders of the Bankruptcy Court.

21. Zuckerman has received no promises regarding compensation in these Chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the Macauley Declaration. Further, Zuckerman has no agreement with any nonaffiliated entity to share any compensation earned in these chapter 11 cases.

WHEREFORE, the Creditors' Committee respectfully requests that the Bankruptcy Court (i) enter an order, substantially in the form annexed hereto as Exhibit "B", authorizing the Creditors' Committee to employ and retain Zuckerman as its special counsel, nunc pro tunc to August 6, 2009, in these chapter 11 cases on the terms and conditions set forth herein, and (ii) grant such other and further relief as may be just and proper.

Dated: August 12, 2009

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF TRIBUNE
COMPANY, ET AL.

Warner Bros. Television, solely in its capacity as Co-Chair of the Creditors' Committee and not in its individual capacity.

By: _____
Wayne M. Smith
Vice President, Senior Litigation & Chief Patent Counsel