# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: September 4, 2009 at 10:00 a.m. EDT**<br>**Objection Deadline: August 28, 2009 at 4:00 p.m. EDT** |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO AND PERFORMANCE OF OBLIGATIONS UNDER SETTLEMENT AGREEMENT BETWEEN CERTAIN DEBTORS AND FRANCHISE TAX BOARD OF THE STATE OF CALIFORNIA

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion") seeking entry of an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Rules") authorizing certain of the Debtors (identified more specifically below) to enter into and perform their obligations under that certain settlement agreement between the relevant Debtors and Franchise Tax Board of the State of California ("FTB"), a copy of which is attached hereto as Exhibit A (the "Settlement Agreement"). Pursuant to the Settlement Agreement, three (3) of the Debtors seek authority to compromise a $833,540 claim for franchise tax refunds for the 2000 and 2001 tax years that the Debtors asserted are owed to them by the State of California. As part of that compromise, the relevant Debtors will receive $707,538 in tax refunds and credits, plus applicable interest. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

6. The Settlement Agreement resolves disputes between certain of the Debtors, on the one hand, and the State of California, on the other hand, concerning franchise tax refunds that the relevant Debtors assert they are owed for tax years 2000 and 2001. As relevant background, Tribune Company ("Tribune") and its subsidiaries KTLA, Inc. ("KTLA") and California Community News Corporation ("California Community", and with Tribune and KTLA, the "Debtor Taxpayers") each are debtors in the above-captioned chapter 11 cases. The Debtor Taxpayers are members of a unitary group for the purposes of filing a State of California combined unitary franchise (income) tax return. The California combined unitary tax return requires a member of the unitary group to be a "key" or "lead" filer for the unitary group, and KTLA was the lead filer for taxable years ending 12/31/2000 and 12/31/2001.

7. The California franchise tax appeals process, in which the Debtor Taxpayers participated for the relevant tax years prior to the Petition Date with respect to the claims being resolved by the Settlement Agreement, begins with a taxpayer filing amended franchise tax returns or refund claims. The amended returns are then processed by FTB. An auditor will review the amended returns and make adjustments, if any. FTB auditors will provide the taxpayers with audit work papers and issue a Notice of Action on Cancellation, Credit or Refund (the "Notice"). If the taxpayer decides to protest the Notice, the taxpayer must appeal to the State Board of Equalization, where the taxpayer can litigate the merits of its claims. Upon filing such an appeal, the taxpayer may request that the matter be transferred to the FTB's Settlement Bureau ("Settlement Bureau"), where the taxpayer can attempt to reach a consensual

3

resolution of its claims. If the matter is unsuccessfully litigated before the State Board of Equalization, a taxpayer may seek a *de novo* review of the franchise tax claims in a California state court. In this case, the Debtor Taxpayers requested a transfer of the appeal to the Settlement Bureau before attempting to litigate the claims before the State Board of Equalization. The Settlement Agreement is the result of the negotiations before the Settlement Bureau.

8. The matters addressed by the Settlement Agreement commenced on or about October 15, 2005, when KTLA filed a claim with FTB for a franchise tax refund resulting from the use of credits in the amount of $1,406,707 for the taxable year ending 12/31/2000 (the "2000 Claim"). In addition, on or about December 27, 2005, KTLA filed a claim with the FTB for a franchise tax refund resulting from the use of credits in the amount of $1,131,830 for the taxable year ending 12/31/2001 (the "2001 Claim", and with the 2000 Claim, the "Claims").

9. Following an initial review, FTB denied the Debtor Taxpayers' Claims for the franchise tax refunds and credits and disallowed an additional $177,575 of franchise tax credits, for an aggregate amount of $2,716,112 in denied franchise tax refunds and credits. In January 2007, the Debtor Taxpayers and the California Settlement Bureau reached a resolution allowing $795,687 of the disallowed credits, leaving $1,920,425 of the Claims in dispute.

10. On or about June 20, 2007, FTB issued KTLA Notices of Action on Cancellation, Credit or Refund partially denying the Claims (the "KTLA Notices"). In the KTLA Notices, FTB notified the Debtor Taxpayers that the California auditor had allowed $1,086,885 but disallowed $833,540 of the Claims. On June 25, 2007, the California Comptroller's Office issued a refund check to Tribune in the amount of $1,935,566, consisting of (i) the allowed $1,086,855 portion of the Claims, (ii) $522,356 relating to favorable federal audit adjustments for the 2000 and 2001 tax years, and (iii) $326,325 in interest for the 2000 and 2001

4

tax years. KTLA appealed the KTLA Notices to the extent the Claims were denied (i.e., with respect to the remaining $833,540), and the appeal resulted in the current dispute between the Debtor Taxpayers and FTB with respect to such amount. As a result of the Debtors' prepetition efforts in pursuing the California franchise tax refunds, $1,882,572 out of the initial $2,716,112 disallowed franchise tax refunds and credits had been resolved in favor of the Debtor Taxpayers prior to the Petition Date, with only the $833,540 remaining in dispute.

11.     From June 2007 until the Petition Date, and for nearly two months after the Petition Date, the Debtor Taxpayers continued to negotiate with FTB concerning the remaining amount of the Claims. During that period, the Debtor Taxpayers provided the FTB with additional documentation to substantiate their entitlement to the Claims and attempted to reach a consensual resolution of the Claims.

12.     As a result of those negotiations and the Debtor Taxpayers' provision of documentation to FTB, on or about February 3, 2009, FTB and the Debtor Taxpayers entered into the Settlement Agreement to effect a final and complete settlement of the remaining portion of the Debtor Taxpayers' Claims. The Settlement Agreement allows the Debtor Taxpayers $707,538 of the $833,540 remaining portion of the Claims, as well as interest on the settlement amount. The $707,538 provided for in the Settlement Agreement consists in part of a refund for the taxable years ending 12/31/2000 and 12/31/2001 in the amount of $310,700 (plus interest through December 31, 2008 in the amount of $100,820.55, for a total refund of $411,520.55) (the "Refund"). The other part of the $707,538 consists of a tax credit in the amount of $397,838 to carryover to later tax years (the "Credits"). The Debtor Taxpayers believe that the Settlement Agreement provides for the recovery of the entire amount of franchise tax refunds and credits

5

they are entitled to under California law, and do not believe they would be able to obtain additional refunds or credits with further litigation.

### RELIEF REQUESTED

13. By this Motion, the Debtors respectfully request that the Court enter an order authorizing the Debtor Taxpayers to enter into and perform all of their obligations under the Settlement Agreement. Pursuant to the Settlement Agreement, FTB and the Debtor Taxpayers agree that the Debtor Taxpayers are entitled to the Refund and the Credits. The Settlement Agreement provides that FTB will hold the Refund on account as a franchise tax deposit while FTB completes its pending audits related to the Debtor Taxpayers' liability for taxable years 2002 through 2007. FTB will not pay the Refund unless and until FTB determines that it is not entitled to assert set-off or recoupment rights related to the Refund as a result of the audits. During this time, interest shall continue to accrue on the Refund until the Refund is paid.

14. Pursuant to the Settlement Agreement, FTB and the Debtor Taxpayers will execute a stipulation dismissing the Debtor Taxpayers' appeal concerning the Claims. The Refund, Credits and settlement of the Debtor Taxpayers' liability for the taxable years ending 12/31/2000 and 12/31/2001 are final and conclusive with respect to all tax, penalties, interest or other additions to or refunds of the Debtor Taxpayers' California franchise tax liability for the taxable years ending 12/31/2000 and 12/31/2001, except for four exceptions set forth in the Settlement Agreement.[2]

---

[2] The Settlement Agreement is a final and complete resolution of the Debtor Taxpayers' California tax liabilities for the 2000 and 2001 tax years, except for the following minor exceptions: (i) further adjustments made to the Debtor Taxpayers' California tax liability, which were not at issue in the Settlement Agreement, due to any final federal determinations, as defined in California Revenue and Taxation Code section 18622, affecting the Debtor Taxpayers' California tax liability for the 2000 and 2001 tax years; (ii) further adjustments made to Debtor Taxpayers' California tax liability, any associated interest, and/or penalties provided for under California Revenue and Taxation Code section 19164, 19774 or 19777 that relate to any abusive tax avoidance transactions, as defined in California Revenue and Taxation Code section 19753(c); (iii) any penalty provided for in California Revenue and Taxation Code section 19772 for a failure to disclose a listed transaction or other reportable transaction; and (iv) any amounts

## BASIS FOR RELIEF REQUESTED

15. Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The Third Circuit Court of Appeals has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See In re Martin, 91 F.3d 389, 395 n. 2 (3d Cir. 1996) (distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

16. In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. In making this determination, a court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay…; and (4) the paramount interest of the creditors." Id. (referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc., 221 B.R. 798, 801 (D. Del. 1997).

---

already due and payable by the Debtor Taxpayers as of the date of the Taxpayers' execution of the Settlement Agreement.

17. The terms of the Settlement Agreement are fair and reasonable and in the best interests of the Debtors' estates. The Settlement Agreement is the product of arm's-length negotiations between the Debtor Taxpayers and FTB that took place over a more than 18-month period. During the course of the negotiations, both the Debtor Taxpayers and FTB exchanged views as to the merits of their respective positions in the appeal of the Notices denying the Claims and information in support of those views. As a result of these negotiations, the Debtor Taxpayers concluded that a portion of the Claims were either not supported by original invoices or did not qualify for a franchise tax credit under California law, and therefore determined the Settlement Agreement providing for the Refund and the Credits is a fair and reasonable resolution of the dispute. The Debtor Taxpayers believe that the Settlement Agreement provides for a recovery of the entire amount of the Claims that could be supported under California tax statutes and regulations.

18. Furthermore, the dispute between the Debtor Taxpayers and the FTB has been on-going since 2005 and, absent the resolution afforded by the Settlement Agreement, FTB and the Debtor Taxpayers either would be forced to continue to litigate the merits of the Claims or the Debtor Taxpayers would be forced to accept the outcome set forth in the Notices partially denying the Claims. The next step in the franchise tax appeals process involves litigating the merits of the claims before the State Board of Equalization, an administrative body, followed by pursuing the claims in a California state court. Litigating the Claims would involve a process that would be costly, time-consuming, and disruptive to the Debtors, while providing an uncertain outcome unlikely to yield an additional recovery, as the Debtor Taxpayers believe the Settlement Agreement provides for all of the franchise tax refunds and credits to which the Debtor Taxpayers are entitled for the relevant taxable years. In order to secure the benefits of the

proposed settlement while avoiding the cost and uncertainty of litigation, the Debtors seek approval of the Settlement Agreement. If the Court does not approve the Settlement Agreement, the Debtor Taxpayers will lose the $707,538 in Refunds and Credits and the $101,820 in already-accrued interest (for a total of $809,358 to date), plus interest to accrue in the future, they will obtain through the settlement. The Debtor Taxpayers assessed the merits of each parties' position, the risks, the likelihood of recovery, and the costs of continuing to litigate the Claims and determined that the settlement described in the Settlement Agreement is fair and reasonable.

19. With the favorable settlement and resolution of part of the Claims prior to the Petition Date, the Settlement Agreement results in the Debtor Taxpayers receiving 95.4% of the amount sought in their original franchise tax refund and credit claims filed in 2005. Furthermore, the Debtor Taxpayers believe that the settlement allows the Debtor Taxpayers to obtain franchise tax refunds and credits to the full extent permitted under California tax statutes and regulations. For the reasons set forth above, the Settlement Agreement is in the best interests of the Debtors and their estates and therefore should be approved.

## NOTICE

20. Notice of this Motion has been provided to: (i) counsel for FTB; (ii) the Office of the United States Trustee; (iii) counsel for the Committee; (iv) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (v) counsel to the administrative agent for the Debtors' postpetition financing facility; and (vi) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## **NO PRIOR REQUEST**

21. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order authorizing the Debtor Taxpayers to enter into and perform their obligations under the Settlement Agreement and granting such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>August 14, 2009 | Respectfully submitted,<br><br>SIDLEY AUSTIN LLP<br>James F. Conlan<br>Bryan Krakauer<br>Kenneth P. Kansa<br>Allison E. Ross<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>-and-<br><br>COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br><br>By: _____<br>Norman L. Pernick (No. 2290)<br>J. Kate Stickles (No. 2917)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117<br><br>ATTORNEYS FOR DEBTORS AND<br>DEBTORS IN POSSESSION |