# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: Sept. 4, 2009 at 10:00 a.m. EDT<br>Objection Deadline: Aug. 28, 2009 at 4 p.m. EDT |

## MOTION OF DEBTOR TRIBUNE COMPANY FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW PAYMENT AND ADVANCEMENT UNDER FIDUCIARY LIABILITY INSURANCE POLICIES IN CONNECTION WITH ERISA LITIGATION DEFENSE

Tribune Company, one of the above-captioned debtors and debtors in possession ("Tribune" or the "Debtor" and collectively, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order pursuant to sections 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code") granting relief from the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

automatic stay, to the extent it applies, to allow payment and advancement by its third party primary and excess fiduciary liability insurance providers (the "Insurance Providers") of covered defense costs and fees incurred by certain of its present and former directors, officers, and employees relating to the Tribune Employee Stock Ownership Plan ("ESOP") in defending against that certain class action lawsuit pending in the United States District Court for the Northern District of Illinois styled as, <u>Dan Neil, Corrie Brown, Henry Weinstein, Walter Roche, Jr., Myron Levin and Julie Makinen, individuals, on behalf of themselves and on behalf of all others similarly situated v. Samuel Zell, GreatBanc Trust Company, EGI-TRB, LLC et al.</u>, No. 08-cv-06833 (RJP) (as amended, the "Neil Lawsuit"). In support of this Motion, Tribune respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). The Committee has been apprised of the relief requested herein.

2

46429/0001-5928094V1

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a) and 362(d) of the Bankruptcy Code and Rule 4001(a)(3) of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

6. Tribune is America's largest employee-owned media company and is the ultimate parent company of each of the Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. Tribune is a Delaware corporation.

A. **The Neil Lawsuit**

7. Twenty-three present and former directors, officers, and employees of Tribune (collectively, the "Individual Defendants"), together with the Tribune Company Employee Benefits Committee, Greatbanc Trust Company ("Greatbanc") as trustee of the ESOP, and EGI-TRB, LLC, are named defendants in the Neil Lawsuit.[2] The named plaintiffs are current and former employees of the Los Angeles Times, who claim to represent a putative class comprised of similarly situated ESOP participants (the named plaintiffs and the class, collectively, are the "Neil Plaintiffs"), and who seek compensatory and punitive damages and injunctive relief for alleged breach of fiduciary duties under the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132(a)(2), (3) ("ERISA") as a result of actions or inactions that occurred prior to the date Tribune's present chapter 11 case was commenced.

---

[2] The particulars of the Neil Lawsuit are set forth in detail in Tribune's Adversary Complaint for Declaratory Judgment and Injunctive Relief, (the "Neil Adversary Complaint") currently pending before this Court. See Tribune Company v. Neil (In re Tribune Company), No. 09-AP-50445 (Bankr. D. Del. filed Mar. 13, 2009) (the "Neil Adversary Proceeding"). Although originally named as a defendant in the Neil Lawsuit, Tribune was not named as a defendant in the Neil Plaintiffs' Second Amended Complaint.

3

8.     The Debtors filed the Neil Adversary Complaint in this Bankruptcy Court on March 13, 2009, seeking injunctive relief staying the Neil Lawsuit from continuing to be pursued while these bankruptcy cases were pending. The injunctive relief was contested by the Neil Plaintiffs. On May 20, 2009, the Debtors withdrew their Preliminary Injunction Motion in the Neil Adversary Proceeding without prejudice (Adv. Docket No. 19). At a status conference held on June 25, 2009, counsel for the Debtors advised this Court of the parties' agreement that the Neil Lawsuit would go forward at this time solely with respect to briefing and decision on a motion to dismiss for failure to state a claim upon which relief could be granted (the "Motion to Dismiss").

9.     In connection with defending against the Neil Lawsuit, the Individual Defendants have incurred and continue to incur significant defense costs and fees. Tribune itself has not paid any of the defense costs and fees related to the Neil Lawsuit since Tribune filed its presently pending chapter 11 petition. Accordingly, the Individual Defendants are seeking payment and/or advancement of defense costs by the Insurance Providers pursuant to the Policies, including the costs relating to the Motion to Dismiss, as described below.

**B.     The Fiduciary Liability Insurance Policies**

10.    In connection with its indemnification obligations to its directors, officers, employees, and agents relating to the ESOP,[3] Tribune purchased a primary fiduciary liability

---

[3] Delaware General Corporation Law § 145 allows a company to indemnify any person sued as a director, officer, employee, or agent of the company "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." Pursuant to its Amended and Restated Certificate of Incorporation, Tribune has indemnified its directors and officers to the "fullest extent permitted by applicable law" in connection with any actual or threatened action, suit, or proceeding against them based on their service as a director or officer of Tribune. Additionally, Tribune has indemnified its employees or agents who are involved in any actual or threatened action, suit, or proceeding against them based on their service to the company. This right of indemnification extends to all indemnified parties who are sued based on, among other things, "service with respect to employee benefit plans, against all liability and loss suffered and expenses (including attorney's fees) reasonably incurred."

policy from Illinois National Insurance Company, a member of Chartis[4] (the "2007 Fiduciary Policy") for Claims[5] with respect to acts occurring or allegedly occurring in the period prior to December 20, 2007.[6] The 2007 Fiduciary Policy, subject to its terms, conditions, limitations, and exclusions, provides $10,000,000 of insurance coverage to the "Insureds," which includes Tribune, its employee benefits plans (including the ESOP), and their respective past, present, and future directors, officers, employees, fiduciaries, administrators, or trustees for a "Loss" (i.e., defense costs, expenses, settlements, and judgments) arising during the policy period from "Wrongful Acts" they allegedly committed in connection with the employee benefit plans. The beneficiaries of such Policies thus include each of the Individual Defendants and Greatbanc, in its capacity as trustee of the ESOP, who were served in the Neil Lawsuit based on their alleged conduct related to Tribune's ESOP.

11. The 2007 Fiduciary Policy is followed by excess fiduciary liability insurance policies (the "Excess Policies" and together with the 2007 Fiduciary Policy, the "Policies") totaling $40,000,000 in the aggregate, for a total fiduciary liability insurance coverage amount of $50,000,000.[7] Each of the terms described herein relating to the 2007 Fiduciary Policy also apply to the Excess Policies.

---

[4] Formerly known as American International Underwriters ("AIU"), successor-in-interest to American International Group, Inc.

[5] Capitalized terms not defined herein shall have the meanings ascribed to them in the respective Policy.

[6] The 2007 Fiduciary Policy, subject to its terms, conditions, limitations, and exclusions, applies to Claims made through December 20, 2013 with respect to acts occurring or allegedly occurring before December 20, 2007. Tribune purchased a policy from Illinois National Insurance Company (Chartis) (the "2008 Fiduciary Policy"), which applies, subject to its terms, conditions, limitations, and exclusions, to Claims made during the period December 20, 2007 through December 20, 2008 (and subsequently extended to December 20, 2009) with respect to acts occurring or allegedly occurring on or after December 20, 2007. The 2008 Fiduciary Policy is also followed by excess coverage policies.

[7] The Excess Policies that follow the 2007 Fiduciary Policy are provided by the following Insurance Providers, in the following amounts: Federal Insurance Company (Chubb), $10,000,000; AXIS Insurance Company, $10,000,000; U.S. Specialty Insurance Company, $10,000,000; and St. Paul Mercury Insurance Company (Travelers), $10,000,000.

46429/0001-5928094V1

12. The 2007 Fiduciary Policy contains a self-insured retention clause; Chartis asserts that the retention amount applicable to the defense costs and expenses arising from the Neil Lawsuit is $5,000,000. (Endorsement 7 to 2007 Fiduciary Policy at ¶¶ 1-2 ($5,000,000 retention.)) Notwithstanding the retention clause, the 2007 Fiduciary Policy provides that "in the event a Sponsor Organization refuses to pay an applicable retention due to Financial Insolvency, then the Insurer shall commence advancing Loss incurred by a Natural Person Insured within the Retention ... provided that the Insurer shall be entitled to recover the amount of Loss advanced within the Retention from the Sponsor Organization." (Endorsement 8 to 2007 Fiduciary Policy at ¶ D.1.) Pursuant to the 2007 Fiduciary Policy Chartis has its own right of recovery against Tribune and is also contractually subrogated to the Individual Defendants' right of recovery against Tribune, if any, of the amounts within the retention that are paid by Chartis. (Endorsement 8 to 2007 Fiduciary Policy at ¶ D.2.b.i.)

13. The claims made against the Individual Defendants in the Neil Lawsuit have been tendered to Chartis, and Chartis has agreed to pay, within the retention, previously incurred covered defense costs and fees and to advance defense costs and fees to the Individual Defendants under the 2007 Fiduciary Policy for the defense of the Neil Lawsuit, including the costs relating to the Motion to Dismiss, subject to a reservation of rights and subject to Tribune's seeking the entry of an order that provides that if the automatic stay provided for in section 362(a) of the Bankruptcy Code applies to such payments, the automatic stay is modified to allow such payments and advancements to be made. Depending on the result of the Motion to Dismiss, further defense costs and fees may or may not thereafter be incurred by the Individual Defendants.

## **RELIEF REQUESTED**

14. The purpose of this Motion is to remove any impediments to the ability of Tribune's Insurance Providers to immediately commence payment of the outstanding and ongoing defense costs and fees that the Individual Defendants are incurring as defendants in connection with the Neil Lawsuit. Tribune seeks the entry of an order modifying the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by its Insurance Providers of defense costs that are, or will become, owing to the Individual Defendants under the Policies. In the event and to the extent that the Insurance Providers consent to the advancement and/or payment of covered defense costs incurred by Greatbanc, Tribune requests that the relief requested herein be extended to Greatbanc without further order of this Court. Tribune further requests that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

15. In this present Motion, Tribune is not requesting a determination of any of the Insurance Providers' obligation to pay any particular expense or claim of the Individual Defendants. Nothing in this Motion is intended to modify or alter the rights and obligations provided for under the terms and conditions of the Policies, and all parties to the Policies retain and reserve all rights and defenses that they would otherwise have under the Policies. Rather, Tribune seeks only the entry of an order modifying the automatic stay, to the extent it applies, to allow the Insurance Providers to fulfill their obligations, whatever they may be, to pay claims and expenses of the Individual Defendants under the terms of the Policies, in connection with defending against the Neil Lawsuit.

## BASIS FOR RELIEF

**C.    The Proceeds of the Policies are Not Estate Property**

16.    Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. 11 U.S.C. § 362(a)(3). It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code. See MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89 (2d Cir 1988). However, courts have distinguished between ownership of a policy and ownership of the proceeds of a policy. While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive liability insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate. See, e.g., In re La. World Exposition, Inc., 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); In re Adelphia Commc'ns Corp., 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); In re World Health Alternatives, Inc., 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); In re Allied Digital Techs., Corp., 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); In re First Cent. Fin. Corp., 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may

give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

17. In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." Allied Digital, 306 B.R. at 509. See also In re CyberMedica, Inc., 280 B.R. 12, 16 (Bankr. D. Mass. 2002); In re Jones, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law"). Here, the applicable Policies contain an unambiguous "Order of Payments" endorsement that expressly subordinates the rights of Tribune to the proceeds payable under the Policies to the rights of the Individual Defendants. Specifically, the 2007 Fiduciary Policy provides that when competing claims for coverage are made, "the Insurer shall in all events":

> (a) first, pay Loss for which coverage is provided under this policy for any Natural Person Insured under this policy;
>
> (b) then, only after payment of Loss has been made pursuant to paragraph (a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, shall payment for any covered Plan be made for such other Loss for which coverage is provided under this policy; and
>
> (c) then, only after payment of Loss has been made pursuant to (a) and (b) above … shall payment for the Sponsor Organization be made for such other Loss for which coverage is provided under this policy.

(See Endorsement 8 to 2007 Fiduciary Policy at ¶ I.1.) Thus, the 2007 Fiduciary Policy, by virtue of the Order of Payments endorsement, provides for the immediate payment of the Individual Defendants' defense costs and expenses ahead of any payment that may be made to other defendant insureds or to Tribune, such that the interest of Tribune, if any, in the proceeds of the 2007 Fiduciary Policy is contractually subordinated to the interests of the Individual Defendants in those proceeds and may never mature.

18.  Priority of payment endorsements are enforceable contractual provisions and should be upheld for the benefit of the Individual Defendants as intended. See In re Enron Corp., No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable contractual right). In addition, the likelihood that Tribune may require coverage under the Policies is speculative. As the court explained in In re Laminate Kingdom LLC:

> [T]he Court believes the depletion of proceeds to pay the Costs of Defense Incurred by the officers and directors does not diminish the protection afforded the estate's assets under the terms of the Policy. The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used first to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the [officer's and director's costs of defense]. Then, only after such payments are made, and only if proceeds remain after payment of such Costs of Defense, will the Trustee or the estate be paid any proceeds. Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the Costs of Defense are paid.

No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

19.  Similarly, Tribune purchased the Policies with the primary purpose of providing insurance coverage to its directors, officers, employees, and agents in connection with the ESOP, including the Individual Defendants. See In re First Cent. Fin. Corp., 238 B.R. at 16 ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). Tribune's speculative right to any residual proceeds, which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of Tribune's estate.

46429/0001-5928094V1

D.  **Cause Exists to Modify the Automatic Stay, to the Extent That it Applies, to Allow Payment of Defense Costs Under the Policies**

20.  Even if the proceeds from the Policies are determined to be property of the estate, "cause" exists under section 362(d)(l) of the Bankruptcy Code to modify the automatic stay to allow the payment of covered defense costs under the Policies. It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers. See Allied Digital, 306 B.R. at 513.

21.  Confirming the Insurance Providers' ability to pay the Individual Defendants' defense costs and fees is in the best interests of Tribune's estate and creditors because, inter alia, it will ensure their ability to continue to vigorously defend against the Neil Lawsuit and to avoid the possible collateral estoppel effect on Tribune that could result if the Individual Defendants' inability to defend themselves were to give rise to judgments and findings that impacted direct claims against Tribune. In connection with the Neil Lawsuit, the Individual Defendants have and will continue to incur significant defense costs, which, if unsatisfied, may potentially be asserted by some or all of the Individual Defendants against Tribune's estate. Moreover, to the extent the Individual Defendants suffer adverse judgments that are not paid from the proceeds of the Policies due to the enforcement of the automatic stay, the Individual Defendants may seek to assert indemnification claims against Tribune's estate for such amounts.

22.  Consequently, if the requested relief is granted, it would relieve the Tribune's estate of the potentially significant burden of indemnity claims that may otherwise be asserted by the Individual Defendants in the absence of such relief. Additionally, unless this Court were to provide the Debtors with the ability to pay the retention amount of the defense costs on a current basis, it is necessary that the Court grant the relief requested herein to facilitate

11

the funding of defense costs by the Insurance Providers so that the Neil Lawsuit can be properly defended. The requested relief will also alleviate the Debtors' concern, if the Court were not to otherwise permit the Debtors' to pay these defense costs, that the Individual Defendants presently employed by or serving as directors and officers of Tribune remain focused on the critical task of Tribune's operations and reorganization proceedings and not be diverted by trying to otherwise fund defense costs on a current basis.

23. Furthermore, as discussed above, the interests of the Tribune's estate, if any, in the proceeds of the Policies is expressly subordinate to the interest of the Individual Defendant insureds. Specifically, the Policies provide that Tribune has a right to the insurance proceeds only after the insured individuals are fully reimbursed for any loss, including defense costs. Thus, granting the relief requested by this Motion is unlikely to have any adverse effect on Tribune's estates and creditors.

24. Accordingly, Tribune respectfully submits that there are no legal impediments to the direct payment or advancement by the Insurance Providers under the Policies to the Individual Defendants for their costs of defense in connection with the Neil Lawsuit. Alternatively, if this Court finds that Tribune has some interest in the proceeds of the Policies, Tribune submits that any such interest is speculative and in any event cannot be determined until the Individual Defendants' losses have been quantified. Advancing the Individual Defendants' defense costs pursuant to the Policies is necessary to minimize those losses. Accordingly, cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Insurance Providers to immediately commence payment and advancement of outstanding and ongoing defense costs incurred by the Individual Defendants.

46429/0001-5928094V1

25. Similar relief has been granted in this and other districts. See <u>In re Washington Mutual, Inc.</u>, No. 08-12229 (MFW) (Bankr. D. Del. Dec. 16, 2008) [Docket No. 445]; <u>In re Lehman Bros. Holdings Inc.</u>, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Mar. 25, 2009) [Docket No. 3220]; <u>In re Enron Corp.</u>, No. 01-16034 (AJG) (Bankr. S.D.N.Y. May 17, 2002) [Docket No. 3792].

## **NOTICE**

26. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel for the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel for the administrative agent for the Debtors' postpetition financing facility; (viii) counsel for the Insurance Providers; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Tribune submits no other or further notice is necessary.

## **NO PRIOR REQUEST**

27. Tribune has not previously sought the relief requested herein from this or any other Court.

46429/0001-5928094V1

WHEREFORE, Tribune respectfully requests that the Court enter an order, in substantially the form attached hereto, (i) granting relief from the automatic stay to permit its primary and excess fiduciary liability insurance providers to pay and/or advance defense costs and fees in connection with the Neil Lawsuit; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
August 17, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Janet E. Henderson
Jillian K. McClelland
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-5928094V1