EXHIBIT 1

## DUFF & PHELPS LLC

## CONFLICT CHECK RESULTS

Duff & Phelps has active engagements with the following entities (or a related entity):

ABN AMRO Holding NV
AIG Global Investment Corp.
Alix Partners
Angelo Gordon & Co. LP
Anheuser Busch
Ares Management LP
AT&T
Bank of America, N.A.
Blackstone Debt Advisors LP
Cablevision
Callidus Capital Management LLC
Canyon Capital Advisors LLP
Citadel Investment Group LLC
Citigroup entities
Columbus Nova Credit Investments
Comcast
CP Chrysler Factory
Credit Suisse entities
Davis Polk & Wardwell
Deloitte & Touche LLP
Deutsche Bank, N.A.; Deutsche Investment Management Americas Inc.
Disney
Eaton Vance Mgmt
Edward Angell Palmer & Dodge LLP
Elliott Management Corporation
Fidelity entities
Gannett Co. Inc.
GE entities
General Mills
Glaxo Smith Kline Beecham
GM entities
Goldman Sachs entities
GreatBanc Trust Company
GSO Capital Partners LP
Guggenheim Management LLC
Hearst Corporation
Honda entities (Latham & Watkins engagement)
ING Investment Management LP
Johnson & Johnson
Jones Day

KKR Financial Corporation
Kraft General Foods
Latigo Partners LP
Lehman Bros entities
Lowe's
McDermott Will & Emery LLP
McDonald's (Estate of B. Johnson engagement)
McDonnell Investment Management LLC
MediaNews Group Inc.
Merrill Lynch & Co. (GreatBanc engagement)
Microsoft Corporation
Moore Capital Management LLC
Morgan Lewis & Bockius LLP
Morgan Stanley entities
News Corp
Nixon Peabody LLP
Oak Hill Advisors LP
Oaktree Capital Management LP
Pepsi
Pfizer
Plainfield Asset Management Inc.
Proctor & Gamble
Qwest Communications
Rabobank Int'l
Sandell Asset Management Corp
Seneca Capital Management
Sidley & Austin
Sprint/Nextel
St. Paul Fire & Marine Insurance Co. (Travelers)
Symphony Asset Management LLC
T2 Advisors LLC
T-Mobile entities
Toyota entities
U.S. Bank N.A.
UBS entities
Verizon Wireless
Warner Bros Television
Wells Fargo entities
White Castle
Wilmington Trust Company
York Capital Management
Zurich American Insurance Co.

Duff and Phelps has recent (within the last 6 years) or current client relationships with the following entities (or a related entity):

20th Century Fox
ABN AMRO Holding NV
Aegon USA Investment Management
AIG Global Investment Corp.
Allstate Investment Management Co.
American Express Co.
Angelo Gordon & Co. LP
Anheuser Busch
Arby's Restaurants Ltd.
Ares Management LP
AT&T
Bank of America, N.A.
Bank of New York
Barclays Capital; Barclays Bank Plc
Bear Stearns entities
Blackstone Debt Advisors LP
Cablevision
Canyon Capital Advisors LLP
Carlyle Investment Management LLC
CBS entities
Chadbourne & Parke LLP
Chubb Atlantic Indemnity Ltd.
Circuit City
Citadel Investment Group LLC
Citibank N.A.
Citicorp North America Inc.
Citigroup entities
Columbus Nova Credit Investments
Comcast
Countrywide Financial
CP Chrysler Factory
CP Chrysler Factory; CP JeepEagle Dealer Association
Credit Suisse entities
Davis Polk & Wardwell
Delaware Management Business Trust
Dell (Chavez Ruiz engagement)
Deloitte & Touche LLP
Deutsche Bank, N.A.; Deutsche Investment Management Americas Inc.
Disney
Drake Capital Management LLC (Cadbury Schweppes engagement)
Eaton Vance Mgmt

3

Edward Angell Palmer & Dodge LLP
Elliott Management Corporation
Equity Group Investments LLC
Fidelity entities
Ford entities
FTI Consulting
Gannett Co. Inc.
GE entities
General Mills
Glaxo Smith Kline Beecham
GM entities
Goldman Sachs entities
GreatBanc Trust Company
GSO Capital Partners LP
Guggenheim Management LLC
Hearst Corporation
Highland Capital Management LP
Honda entities
Hyundai Dealer Association
ING Investment Management LP
Invesco Inst. NA Inc.
Jenner & Block LLP
Johnson & Johnson
Jones Day
JP Morgan Chase Bank N.A.
Kentucky Fried Chicken
KKR Financial Corporation
KPLR, Inc
Kraft General Foods
Latigo Partners LP
Lehman Bros entities
Littlejohn & Company
Mayer Brown LLP
McDermott Will & Emery LLP
McDonald's
McDonnell Investment Management LLC
Merrill Lynch & Co.
Metropolitan Life Insurance Company
Microsoft Corporation
Morgan Lewis & Bockius LLP
Morgan Stanley entities
MSD Capital LP
National City Corp.
Navigant Consulting
NBC Universal Domestic Television
News Corp

Nielsen Media Research
Nissan entities
Nixon Peabody LLP
Nomura Corporate Research & Asset
Normandy Hill Capital LP
Oak Hill Advisors LP
Oaktree Capital Management LP
Ore Hill Part LLC
Paramount Pictures Corporation
Paul Hastings Jonafsky & Walker LLP
Pension Benefit Guaranty Corporation
Pepsi
Pfizer
Pioneer Investment Management Inc.
Pizza Hut (Spirit Finance engagement)
Plainfield Asset Management Inc.
PricewaterhouseCoopers LLP
Proctor & Gamble
Prudential Investment Management Inc.
Qwest Communications
Reed Smith LLP
Royal Bank of Scotland plc
Sandell Asset Management Corp
Sandelman Partners, LP
Seneca Capital Management
Sidley & Austin
Silver Point Capital LP
Societe Generale
Sony entities
Sprint/Nextel
St. Paul Fire & Marine Insurance Co. (Travelers)
Stone Tower Debt Advisors LLC
Sumitomo Mitsul Banking Corp
Swiss Reinsurance Company Ltd.
T2 Advisors LLC
Taco Bell
TCW Asset Management Co.
The Norinchulkin Bank
The Witkoff Group LLC
T-Mobile entities
Toyota entities
Tribune Company
Trimaran Advr LLC
TW Time Warner
Tweeter Home Entertainment Group
U.S. Bank N.A.

UBS entities
Verizon Wireless
Viacom
Vivendi Universal
Volkswagen Factory
W R Huff Asset Management
Wachovia Bank NA
Warner Bros Television
Washington Mutual
Wells Fargo entities
White Castle
Wilmington Trust Company
Zurich American Insurance Co.

EXHIBIT 2

F

DUFF & PHELPS, LLC • 311 SOUTH WACKER DRIVE, SUITE 4200 • CHICAGO, IL 60606 • TEL 312-697-4600 • FAX 312-697-0112

ELYSE S. BLUTH, CFA
*Managing Director*
TEL 312-697-4675
FAX 312-697-0112
elyse.bluth@duffandphelps.com

# DUFF&PHELPS

July 8, 2009

GreatBanc Trust Company,
 As Trustee of the Tribune Company
 Employee Stock Ownership Plan
801 Warrenville Road
Suite 800
Lisle, IL 60532

Dear Trustee:

This letter confirms the basis of engagement (the "Agreement") between and among Duff & Phelps, LLC ("D&P"), GreatBanc Trust Company, as Trustee ("Trustee") of the Tribune Company Employee Stock Ownership Plan ("ESOP"), and Tribune Company (the "Company") for financial advisory services as set forth below.

D&P was previously engaged as independent financial advisor to the Trustee and provided certain opinions, dated April 1, 2007, related to the ESOP's purchase of approximately 8.9 million shares of newly issued common stock of the Company for $250 million and execution of the Agreement and Plan of Merger by and among the ESOP, Tesop Corporation, and the Company. D&P also determined the fair market value of the Company's common stock as of December 31, 2007 for ESOP compliance purposes.

The terms of the Agreement are:

1. D&P is engaged as independent financial advisor to the Trustee to determine the per share fair market value of the common stock of the Company owned by the ESOP. This valuation is to be used solely for (i) ESOP participant and plan accounting and redemptions, and (ii) participant accounting, communications, and redemptions of units issued pursuant to the 2007 Management Equity Incentive Plan. The valuation is as of December 31, 2008.

2. D&P is solely responsible to the Trustee.

3. D&P agrees to provide a written opinion (the "Opinion") and supporting analysis to the Trustee as to the per share fair market value of the common stock. The Opinion will include descriptions of the principal materials reviewed by D&P, the assumptions and qualifications upon which D&P has relied, and such other matters as D&P in its sole discretion deems appropriate.

www.duffandphelps.com

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 2

4. The Trustee and the Company acknowledge and agree that D&P is not and shall not be construed as a fiduciary of the Company or the ESOP and the Company acknowledges and agrees that D&P shall have no duties or liabilities to the equity holders or creditors of the Company or any other person by virtue of this Agreement or the engagement hereunder, all of which are hereby expressly waived. The Company and the Trustee further acknowledge and agree that the Opinion does not constitute investment advice.

5. The Company agrees to furnish, or use its best efforts to cause to be furnished, to D&P all reasonably requested data and information concerning the Company and all other such data, material, and information as D&P shall reasonably request. The Company warrants and represents that all information provided or otherwise made available to D&P by or on behalf of the Company will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections provided by the Company to D&P will have been prepared in good faith and be based upon assumptions that, in light of the circumstances under which they are made, are reasonable. In rendering its services hereunder, D&P will not independently verify the accuracy or completeness of any provided information, data, advice, opinions or representations, whether obtained from public or private sources. D&P also will not independently evaluate, appraise or physically inspect any of the Company's specific assets or liabilities (contingent or otherwise). D&P further will not independently investigate any legal matters involving the Company. D&P assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company or any other information provided or otherwise made available to D&P regarding the Company or the ESOP transaction. The Trustee acknowledges and agrees that in rendering its services hereunder D&P will be using and relying on the information provided by and on behalf of the Company without independent verification thereof by D&P. D&P assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company.

Industry information and other economic, investment and financial data used as background for our analysis and review will be obtained from publicly available industry and investment sources, without independently verifying the accuracy thereof.

6. D&P agrees to maintain the confidentiality of all information relating to the Company that it receives during the course of its engagement and to disclose such information only as contemplated herein, authorized by the Trustee, or required by law. D&P will use any non-public or proprietary information provided by the Company ("Confidential Information") solely in the course of this engagement and in a manner which D&P believes in good faith is consistent with the Company's interests or is required by law. To allow D&P

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 3

to comply with this obligation, all Confidential Information whose sensitivity and confidentiality is not obvious must be marked "confidential."

7. The Company agrees to pay D&P a fee of $300,000 for services rendered herein, payable as follows: a $50,000.00 retainer upon execution of this Agreement (but no later than July 15, 2009) and $50,000 per month, payable each month, beginning August 1, 2009, and ending on December 1, 2009 (plus out-of-pocket expenses), on the same schedule each month as ordinary course professionals retained by the Company. . Should the Company emerge from its bankruptcy proceedings with any portion of the fee and out-of-pocket expenses unpaid, whether or not billed, such balances will be immediately due. The Company shall be responsible for all fees due under this engagement.

In the event that the responsibilities of D&P, as required to complete the engagement described herein, are expanded significantly beyond the scope contemplated by this Agreement due to unanticipated circumstances which arise subsequent to the date of this Agreement, and which are outside the control of the parties to this Agreement, the Company and D&P agree that they will re-negotiate, in good faith, the fees provided herein.

In addition to professional fees, the Company agrees to promptly reimburse D&P, from time to time upon request, for its reasonable out-of-pocket expenses (including travel, meals, lodging, telephone, document reproduction, telecopying, computer charges, and database access fees) and, to the extent agreed in writing in advance by the Company, for reasonable fees and expenses of counsel, consultants, and advisers retained by D&P, in each case incurred in connection with the Engagement. Those expenses that D&P is unable to identify and assign to a particular engagement in a reasonably practicable manner may be charged to an assignment based upon the project fees due D&P.

8. Any party may terminate this Agreement at any time upon written notice, without liability or continuing obligation, except as set forth in the remainder of this paragraph. Neither the termination nor completion of this engagement shall affect: (i) any compensation payable to D&P up to the date of termination or completion; (ii) the reimbursement of expenses incurred by D&P up to the date of termination or completion; (iii) the indemnification provisions set forth in the Indemnification and Contribution Agreement attached hereto; (iv) the provisions relating to successors and assigns in paragraph 8 hereof; and (v) the confidentiality provisions set forth herein. If this engagement is terminated prior to completion, D&P will be entitled to receive fees equal to time charges based on time incurred at its standard hourly rates, plus reasonable out-of-pocket expenses. However, if this Agreement is terminated by the Trustee or the Company and D&P has substantially completed its analysis, D&P shall be entitled to the total fees provided for herein. No portion of the fee payable hereunder is contingent upon the conclusions reached in the Opinion or analysis.

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 4

9. The Trustee and the Company agree that, without prior consent of D&P, which consent shall not be unreasonably withheld, they will not permit any summary of or excerpt from the Opinion or any written materials prepared by D&P and provided to the Trustee and the Company in support of the Opinion to be given to anyone who is not a party to this Agreement. Nothing in the foregoing sentence shall be construed to prevent disclosure of the Opinion to any governmental agency with authority to oversee the ESOP, or disclosure pursuant to subpoena, court or regulatory order, or other judicial decree. Such Opinion and written materials shall be used only for the purposes described in the Agreement. No public reference to the Opinion or this Agreement may be made by D&P without the express written consent of the Company and the Trustee, which shall not be unreasonably withheld; provided, however, that after delivery of the written Opinion by D&P, D&P shall not be required to obtain such consent with respect to advertisements in financial and other newspapers or D&P marketing materials that describe the services provided by D&P to the Company.

10. The Agreement shall inure to the benefit of the respective successors and permitted assigns of the parties hereto and of the indemnified parties hereunder and their respective successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement. This Agreement may not be modified or amended except in writing signed by the parties hereto. D&P shall not assign this Agreement without the prior written consent of the Trustee; provided, however, D&P shall not be required to obtain such consent for assignments to any successor to all or a substantial portion of the business of D&P.

11. In connection with D&P's performance under this Agreement, the Company agrees to extend the terms of the Indemnification and Contribution Agreement attached hereto for all services provided under this Agreement. In the event of a termination of this Agreement, the Indemnification and Contribution Agreement shall remain in full force for all services provided by D&P under the Agreement.

12. If D&P is required to render other services not directly incidental to the delivery of the Opinion and supporting analysis, including services relating to administrative investigations or judicial proceedings relating to the ESOP, the Company agrees to compensate D&P, in addition to the other fees provided for herein, on an hourly basis at the rates of D&P then in effect, plus reasonable out-of-pocket expenses, unless otherwise negotiated.

GreatBanc Trust Company,
    As Trustee of the Tribune Company
    Employee Stock Ownership Plan
July 8, 2009
Page 5

If the foregoing terms are acceptable to you, we request that you arrange to have this letter fully executed and returned to us.

Sincerely,

Duff & Phelps, LLC

By: _____
    Elyse Bluth
    Managing Director

**AGREED TO AND ACCEPTED:**

GreatBanc Trust Company, as Trustee of the Tribune Company Employee Stock Ownership Plan

By: _D. Montrano_    Date: _July 8, 2009_
Title: _Sr. Vice President_

Tribune Company

By: _____    Date: _July 8, 2009_
Title: _SVP/CFO_

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 6

SCHEDULE A

## INDEMNIFICATION PROVISIONS

A.    *Indemnification*. To the fullest extent lawful, the Company will promptly, upon demand, indemnify and hold harmless Duff & Phelps, LLC and their affiliates (collectively, "D&P"), and each director, officer, employee, agent, member, and controlling person of D&P (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including, without limitation, expenses, fees, and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise), and liabilities (joint or several) (collectively, "Losses"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding, or dispute, including securityholder actions (whether or not D&P or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to D&P or any other person by the Company, or used by the Company in connection with the undertaking contemplated by the engagement letter, or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of D&P's engagement, role, activities, or the performance or non-performance of professional services on the Company's behalf. The Company will not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence that are judicially determined to have resulted primarily from the fraud, willful misconduct or gross negligence of any Indemnified Person seeking indemnification hereunder; but pending any such judicial determination, the indemnification and reimbursement obligations of the Company hereunder shall continue to apply. The Company also agrees that neither D&P nor any Indemnified Person shall have any liability to the Company, its owners, parents, creditors, or securityholders for or in connection with its engagement, except such liability for Losses incurred by the Company that are judicially determined to have resulted primarily and directly from D&P's fraud, willful misconduct or gross negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non-appealable judgment on the merits.

B.    *Proceedings*. D&P will immediately notify the Company if it learns that any investigation, lawsuit, administrative proceeding, or self-regulatory organization proceeding has been instituted based, directly or indirectly, on the transactions or activities that were the subject of D&P's engagement under the Agreement, although failure to do so will not relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit material rights and defenses. Should any lawsuit,

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 7

administrative proceeding, or self-regulatory organization proceeding (collectively, a "Proceeding") be formally instituted against D&P or any Indemnified Person based, directly or indirectly, on D&P's engagement under the Agreement, the Company will be entitled to participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to D&P, so long as the Company continues to pay all costs and expenses of the defense and preparation for such Proceeding. Even if the Company assumes the defense of a Proceeding, each Indemnified Person will have the right to participate in such Proceeding and to retain its own counsel at such Indemnified Person's own expense. Furthermore, each Indemnified Person shall have the right to employ its own counsel in any Proceeding and to require the Company to pay all reasonable fees and expenses of such counsel as they are incurred if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are materially different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Person), (2) the Company shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Person in a timely manner, or (3) the Company shall have authorized the employment of such counsel in connection with the defense of the Proceeding.

C.    Contribution. If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the fraud, gross negligence or willful misconduct of any such Indemnified Person) or insufficient to hold such Indemnified Person harmless, then the Company and D&P will contribute to the Losses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed undertaking by the Company on the one hand and the Indemnified Person on the other, in connection with D&P's engagement referred to above (whether or not the undertaking contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed undertaking by the Company on the one hand and the Indemnified Person on the other, but also the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. It is hereby agreed that the relative benefit to the Company on the one hand and D&P on the other, with respect to D&P's engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Company or its stockholders, as the case may be pursuant to the undertaking, for which D&P is engaged to render financial advisory services bears to (2) the fee paid or proposed to be paid to D&P in connection with such engagement (excluding reimbursable expenses).

D.    Settlement of Claims. The Company will not, without the prior written consent of D&P, which consent will not be unreasonably withheld, settle or compromise or consent to the entry of

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 8

any judgment in any pending or threatened Claim or Proceeding in respect of which indemnification could be sought hereunder (whether or not D&P or any Indemnified Person is an actual party to such Claim or Proceeding) unless such settlement, compromise, or consent includes provisions holding harmless and unconditionally releasing D&P and each other Indemnified Person hereunder from all liability related to or arising out of such Claim or Proceeding, including claims for contribution. The Company shall not be liable for any settlement of any Claim effected by D&P without its written consent (which consent shall not be unreasonably withheld).

E.    Miscellaneous. The obligations of D&P are solely corporate obligations. No director, officer, employee, agent, shareholder, or controlling person of D&P shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement. The Company's indemnity, reimbursement, and contribution obligations provided for herein are solely corporate obligations and shall: (1) be in addition to any liability that the Company otherwise may have to D&P and any rights that D&P or any Indemnified Person may have at common law or otherwise; (2) survive the completion or termination of professional services rendered by D&P under the Agreement; (3) apply to any activities prior to this date and any amendment, modification, or future addition to D&P's engagement; and (4) inure to the benefit of the heirs, personal representatives, successors, and assigns of D&P and each other Indemnified Person.

If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

The Company hereby consents to personal jurisdiction and service and venue in any court in which any Claim and Proceeding that is subject to the terms provided for herein is brought against D&P or any other Indemnified Person. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF D&P'S ENGAGEMENT, ANY UNDERTAKING OR CONDUCT IN CONNECTION THEREWITH, OR THIS AGREEMENT.

GreatBanc Trust Company,
   As Trustee of the Tribune Company
   Employee Stock Ownership Plan
July 8, 2009
Page 9

**AGREED TO AND ACCEPTED:**

Duff & Phelps, LLC

By: *[signature]*
Elyse Bluth
Managing Director

Tribune Company

By: *[signature]*     Date: July 8, 2009
Title: SVP / CFO