**EXHIBIT I**

## TRANSITION SERVICES AGREEMENT

This **TRANSITION SERVICES AGREEMENT**, dated as of _____, 2009 (this "Agreement"), is by and between Chicago Baseball Holdings, LLC, a Delaware limited liability company ("Newco"), and Tribune Company, a Delaware corporation ("Tribune"). Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such terms in the Formation Agreement (as such term is defined below).

## WITNESSETH:

WHEREAS, this Agreement is being executed and delivered pursuant to that certain Formation Agreement, dated as of August 21, 2009 (the "Formation Agreement"), by and among Ricketts Acquisition LLC, a Delaware limited liability company ("Bidder"), RAC Education Trust OSA, LLC, a Delaware limited liability company, Tribune, Tribune Sports Network Holdings, LLC, a Delaware limited liability company, Chicago National League Ball Club, LLC, a Delaware limited liability company, Wrigley Field Premium Ticket Services, LLC, a Delaware limited liability company, Diana-Quentin, LLC, a Delaware limited liability company, and Chicago Cubs Dominican Baseball Operations, LLC, a Delaware limited liability company;

WHEREAS, as a condition to the closing of the transactions contemplated by the Formation Agreement, Newco and Tribune have agreed to enter into this Agreement in order to facilitate the transfer and transition to Newco of the operation of the Cubs Business and to compensate the parties for their provision of the transition services specified herein; and

WHEREAS, Tribune is willing to provide such transition services, and Newco is willing to receive such transition services, upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

1.    **Services Engagement**.

    (a)    Newco hereby engages Tribune as an independent contractor (and, for the avoidance of doubt, not as an agent of Newco) to provide to Newco, in connection with the Cubs Business, the transition services described as "Tribune Services" on Schedule A to this Agreement (collectively, the "Services" and each, individually, a "Service") during the Services Period (as defined below), upon the terms and subject to the conditions set forth herein. Tribune shall provide no services other than as set forth on Schedule A, unless otherwise agreed in writing by the parties; provided, however, that upon Newco's request, Newco and Tribune shall negotiate in good faith during the 30-day period following Closing to amend Schedule A to require Tribune to perform additional services for Newco pursuant to this Agreement for a Services Period (as defined below) of no longer than 90 days following Closing, provided that such additional services were provided to the Cubs Business by a Tribune Party or a Subsidiary of Tribune prior to the Closing Date and are reasonably necessary or appropriate for Newco to operate the Cubs Business in a manner similar to or compatible with the Tribune Parties'

businesses, policies and practices pertaining to the Cubs Business prior to the Closing Date. Nothing in this Agreement shall be construed to create or constitute a partnership or joint venture between the parties, or any other relationship between the parties not expressly provided for herein.

(b)     Tribune hereby warrants that, subject to the terms and conditions of this Agreement, it shall, consistent with its efforts prior to the Closing Date and in good faith: (i) perform the Services (or cause the Services to be performed) in substantially the same manner in which the Services were performed by Tribune in the ordinary course of the Cubs Business prior to the Closing Date; (ii) perform the Services (or cause the Services to be performed) in accordance with all applicable laws and orders; and (iii) provide (or cause to be provided) the information and data supplied to Newco in connection with the Services in a manner consistent with prior practice. If any Services do not conform to the foregoing warranty (collectively, the "Limited Warranty"), then Newco shall provide Tribune with notice of such non-conformity and Tribune shall thereafter have ten (10) Business Days to cure such non-conformity. If such non-conformity is not cured within such 10-Business-Day period, then, subject to Section 11(g), as Newco's sole and exclusive remedy for such breach, at Newco's option, Tribune shall either (A) perform such Services again, in conformance with the Limited Warranty and at no additional cost or expense to Newco, or (B) deduct the Fees of the nonconforming Services from the amount payable by Newco pursuant to Section 3; provided, however, that in no event will any amount be payable by Tribune to Newco pursuant to this Section 1(b).

(c)     Newco shall use the Services for the same purposes and in substantially the same manner as the Cubs Business used the Services prior to the Closing Date.

(d)     Upon Tribune's reasonable request, Newco shall provide to Tribune any and all information, including, without limitation, all instructions, written data, technical and/or financial information, as is reasonably required and requested by Tribune for the performance of the Services by Tribune under this Agreement; it being understood that if any delay in Tribune's performance of any Services is caused by Newco's failure to provide such instructions, data or information in a timely manner, or at all, Tribune shall (i) be excused from its failure to perform such Services until such time as such instructions, data or information are provided by Newco to Tribune and (ii) not incur any liability as a result of such delay.

(e)     Tribune may, subject to the Limited Warranty: (i) cause one or more of its Affiliates to provide the Services on Tribune's behalf, which Affiliate(s) may thereupon exercise all of Tribune's rights and satisfy all of Tribune's obligations hereunder with respect to the applicable Service(s), but only if such Affiliate(s) is/are also performing similar services for Tribune's other business units; and/or (ii) directly or through one or more of its Affiliates, hire or engage one or more subcontractors or other third parties with the requisite experience and expertise with respect to the Service(s) for which Tribune engages such Person(s) (each, a "Subcontractor") to perform any or all of the Service(s) except for the Accounts

Receivable Function, as described in Item 2 of Schedule A (the "A/R Services"), but only if such Subcontractor is also performing similar services for one or more of Tribune's other business units and the Third Party Services Costs for such Subcontractor to provide such Service(s) to Newco are calculated on the same basis and using the same pricing methodology as the Third Party Services Costs for such Subcontractor to provide such Service(s) to Tribune's other business units (or on a basis and with a pricing methodology that are more favorable to Newco); provided, however, that with respect to clauses (i) and (ii), if Tribune delegates any portion of its provision of the Services to one or more of its Affiliates or one or more Subcontractors: (x) Tribune will remain ultimately responsible for ensuring that all obligations under this Agreement, including all obligations with respect to the nature, quality and standards of care set forth in Section 1(b), are satisfied with respect to any Service provided by any such Affiliate or Subcontractor; and (y) amounts that are required to be and are actually paid by Tribune or any of its Affiliates to any such Subcontractor will be considered Third Party Services Costs (as defined in Section 3(b)) of Tribune for purposes of Sections 2 and 3 hereunder.

(f)     In providing the Services, neither Tribune nor its Affiliates shall be obligated to (i) maintain the employment of any specific employee, (ii) purchase, lease or license any additional equipment or software (except to the extent necessary to provide the Services in accordance with the Limited Warranty), or (iii) pay any additional costs beyond those typically incurred by Tribune or its Affiliates in undertaking activities similar to the Services while operating the Cubs Business prior to the Closing Date. For the avoidance of doubt, Newco shall reimburse Tribune for any Costs (x) related to the conversion from one format to another of data for Newco or any alternate supplier or services similar to the Services or (y) necessary to integrate Newco's systems for purposes of receiving the Services.

(g)     Tribune will have no obligation to upgrade, enhance or otherwise modify any Services or any computer hardware, software or network environment currently used by Tribune or its Affiliates or Newco (except to the extent necessary to provide the Services in accordance with the Limited Warranty). Notwithstanding the foregoing, if Tribune or any of its Affiliates completes any upgrade, enhancement, repair, improvement or other modification to any computer hardware, software or network environment currently used by Tribune or its Affiliates to provide the Services (each, a "Modification"), then Tribune or such Affiliate shall thereafter be permitted to use such Modification to provide the Services hereunder.

(h)     Except with respect to those items of equipment and other Cubs Contributed Assets contributed by Tribune or any other Tribune Party to Newco pursuant to the Formation Agreement, all procedures, methods, systems, strategies, tools, equipment, facilities and other resources used by Tribune and any of its Affiliates in connection with the provision of Services hereunder will remain the property of Tribune and its Affiliates and, except as otherwise provided in this Agreement,

will at all times be under the sole direction and control of Tribune and its Affiliates.

2.  **Services Period**. The provision of each of the Services shall commence on the Closing Date and shall terminate on the date or on that number of days after the Closing Date, as applicable, set forth with respect to each such Service on <u>Schedule A</u> (the "Services Period"); provided, however, that Newco may cancel any particular Service upon at least 30 days' prior written notice to Tribune. If Newco cancels any Service prior to the end of its original Services Period, then: (a) Newco shall pay and reimburse Tribune for (i) all Costs incurred by Tribune or its Affiliates prior to the effective date of the cancellation, (ii) all other Costs that Tribune or its Affiliates committed to pay prior to receipt of the cancellation notice (even if payable thereafter) and (iii) any termination or similar fees incurred by Tribune or its Affiliates and payable to a Person other than Tribune or one of its Affiliates as a result of cancelling such Service prior to the end of the scheduled Services Period; and (b) for the avoidance of doubt, Tribune acknowledges that, upon and after the effective date of such cancellation, (i) any funds received by Tribune or any Affiliate of Tribune in connection with such cancelled Service that are the property of Newco or are otherwise payable to Newco or Newco's designee(s) pursuant to this Agreement shall be held in trust for the benefit of Newco; (ii) upon receipt of such funds, Tribune shall promptly pay (or, if applicable, shall promptly cause such Affiliate to pay) such funds to Newco (or to any Person designated by Newco in writing) in any reasonable manner specified by Newco in writing; and (iii) such payment to Newco (or to another Person designated by Newco) shall be treated as payment of an allowed (on a final, and not provisional or interim, basis) administrative priority claim pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, without further order of the Bankruptcy Court, and shall be included, and deemed approved, in any budget otherwise subject to approval by the Bankruptcy Court or by any other party in interest.

3.  **Compensation for Services; Reimbursements**.

    (a)     Other than with respect to Human Resource Services, as described in Item 5 of Schedule A ("<u>HR Services</u>"), Tribune shall provide the Services to Newco at Cost. For HR Services, Tribune shall provide such Services to Newco for a fixed monthly charge as described in Item 4 of Schedule A (the "<u>HR Service Fees</u>") plus reimbursement for any Third Party Services Costs incurred in connection with the provision of the HR Services.

    (b)     "<u>Cost</u>" or "<u>Costs</u>" shall mean the actual and verifiable out-of-pocket costs (including, without limitation, any Third Party Services Costs) incurred by Tribune and its Affiliates in connection with provision of the Services, without mark-up, plus a reasonable allocation for overhead (including, without limitation, as applicable, salary, wages, benefits, taxes and other expenses attributable thereto), consistent with the past practice of Tribune, in connection with the provision of such Services.

    (c)     "<u>Fees</u>" shall mean Costs and HR Service Fees, collectively.

(d)     "Third Party Services Costs" shall mean any and all fees (including license fees), upcharges, surcharges, additional costs and other expenses actually incurred by Tribune and its Affiliates and payable to Persons other than Tribune or one of its Affiliates as a result of Tribune or any of its Affiliates providing the Services hereunder. "Third Party Services Costs" shall include (i) any amounts that are required to be and are actually paid by Tribune or any of its Affiliates to any licensors of Software or any third party providers of any service that is used in connection with the provision of any of the Services hereunder as a result of the provision of such Service to Newco, and (ii) any amounts that are required to be and are actually paid to any such licensors or third party service providers to obtain the consent of such licensors or third party service providers to the provision to Newco of any of the Services hereunder; provided, that Tribune shall consult with Newco prior to incurring the amounts described in clause (ii) above. Notwithstanding anything to the contrary in this Agreement, Newco shall only pay the portion of Third Party Services Costs directly attributable to, or reasonably allocated to, the provision of the Services hereunder, and not for any portion of the Third Party Services Costs attributable to the provision of services to Tribune's own businesses. Tribune and its Affiliates shall use commercially reasonable efforts to only incur Third Party Services Costs that are consistent with those that were incurred by the Tribune Parties prior to the Closing.

(e)     Notwithstanding any other provision of this Agreement, and except as otherwise set forth in this Section 3(e), the aggregate amount of Third Party Services Costs paid or payable by Newco pursuant to this Agreement (other than (i) amounts that are required to be paid to existing licensors or other existing third party service providers as a result of the provision of any of the Services hereunder that are consistent with past practice, (ii) any amounts that are required to be paid to any such existing licensors and other third party service providers to obtain their consent to the provision to Newco of any of the Services hereunder and (iii) all Third Party Service costs required to be paid by Newco upon termination pursuant to Section 2) shall be no greater than $200,000 (the "Third Party Services Costs Cap"). Tribune shall not incur or invoice to Newco any amount of Third Party Services Costs beyond the Third Party Services Costs Cap, and Newco shall not be liable for any such excess Third Party Services Costs, without Newco's written consent; provided, however, that if the Third Party Services Costs Cap has been reached and Newco does not consent to the incurrence, invoicing or payment of any particular excess Third Party Services Costs incurred or proposed to be incurred in connection with a Service, then Tribune may immediately cancel the provision of such Service without penalty.

(f)     Within twenty (20) calendar days after the first day of each of Tribune's fiscal periods (which shall be either 4 or 5 week periods consistent with prior practice) (each, a "Fiscal Period") during the term of this Agreement (and the first month following the expiration or termination of this Agreement), Tribune will submit invoices to Newco which set forth the Services performed for Newco in accordance with this Agreement in the immediately preceding Fiscal Period and the payments due in connection therewith. Each invoice will specify the Costs,

HR Service Fees and Third Party Services Costs for each of the Services provided during the relevant time period. Upon request by Newco, Tribune will provide reasonable detail and documentation to support the amounts payable pursuant to such invoice. The Fees for each invoice shall be due and payable hereunder within 30 days of Newco's receipt of such invoice, subject to Newco's receipt of any information reasonably requested by Newco from Tribune in writing within ten (10) days of receipt of the relevant invoice to substantiate the amounts reflected on such invoice. If Newco fails to pay the full amount due after the relevant payment date, Tribune shall provide written notice to Newco of such failure, at which time Newco will have five (5) Business Days to pay the amount due. If, after such five (5) Business Day period, Newco still has not paid the amount due, such failure shall be considered a material breach of this Agreement and Tribune may, without liability, suspend its obligations hereunder to provide any and all of the Services to Newco until such time as such invoices have been paid in full. In addition, Tribune may terminate this Agreement at any time upon written notice to Newco in the event of any material breach of this Agreement by Newco. Such termination shall become effective 15 days from the date of Newco's receipt of such notice unless all unpaid fees or expenses set forth in Tribune's notice to Newco have been paid in full within such 15-day period.

4.    **Cooperation**. The parties agree to cooperate with each other in connection with the provision of the Services hereunder, and each party agrees to use commercially reasonable efforts in good faith to cooperate with the other party in all matters relating to the provision and receipt of such Services.

5.    **Confidentiality**. Each party agrees that it and its employees, agents and representatives shall keep confidential all data and information obtained from the other party or its representatives in connection with this Agreement ("Confidential Information") in the same manner that such party keeps its own such data and information confidential, but in no event less than a reasonable degree of care. Neither party shall, directly or indirectly, (i) use any Confidential Information of the other party for any purpose, (ii) keep or make copies of any documents, records or property of any nature whatsoever containing any Confidential Information of the other party, or (iii) assist any third party in engaging in any of the foregoing, except (w) in the case of clauses (i) through (iii), to the extent necessary to comply with the express terms of this Agreement; (x) in the case of clause (ii), to the extent necessary to comply with established document retention policies; (y) in the case of clauses (i) through (iii), as required by law; or (z) in the case of clauses (i) through (iii), as explicitly approved in advance in writing by the other party. The terms of this Section 5 shall survive for a period of two (2) years following the expiration or termination of this Agreement, except with regard to any Confidential Information of a party that constitutes a trade secret under applicable law, for which the terms of this Section 5 shall continue for so long as such information constitutes a trade secret under applicable law. Notwithstanding the foregoing, the parties shall have no obligation under this Section 5 with respect to any information that: (A) is or becomes publicly known through publication, inspection of a product, or otherwise, and through no negligence or other wrongful act of the party receiving such information; (B) is received by the receiving party from a third party without similar restriction and without breach of this

Agreement or any other Transaction Document; or (C) is independently developed by the receiving party without referring to the Confidential Information of the disclosing party. Either party may disclose the other party's Confidential Information to the extent required to be disclosed under applicable law or judicial process, provided that the party proposing to disclose the other party's Confidential Information (I) to the extent permitted by law, shall promptly notify the other party to allow such other party a reasonable opportunity to oppose such process and (II) shall promptly notify the Person requesting such disclosure of the obligations set forth in this Section 5. Nothing in this Agreement shall reduce either party's obligation to comply with all applicable laws and orders. Furthermore, each party and its subsidiaries shall be permitted to retain and use Confidential Information to the extent such party and its subsidiaries are permitted to retain and use Confidential Information pursuant to Section 4.5 of the Formation Agreement.

6.   **Limitation of Liability; Disclaimer; Indemnification.** In no event shall either party be liable to the other party, or to any other person or entity, for any loss, damage, claim, liability or expenses of any kind caused directly or indirectly by any action taken or not taken in providing or receiving, as applicable, the Services hereunder, except in the case of such party's gross negligence or willful misconduct. However, the first sentence of this Section 6 shall have no effect on Newco's obligation to pay all amounts due to Tribune pursuant to this Agreement. Under no circumstances shall either party have any liability to the other party or any other person or entity for any indirect, incidental, consequential (including loss of revenues or profits), exemplary, punitive or other similar damages with respect to the provision of Services hereunder. EXCEPT FOR THE LIMITED WARRANTY, TRIBUNE SPECIFICALLY DISCLAIMS ALL WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, ARISING OUT OF OR RELATED TO THIS AGREEMENT. Notwithstanding the foregoing, in no event will Tribune's aggregate liability to Newco and its Affiliates under this Agreement exceed the aggregate amount of all Fees paid or payable to Tribune under this Agreement; provided, however, that, notwithstanding the foregoing terms of this Section 6, Tribune shall reimburse Newco for the full amount of any funds or other assets of Newco held by Tribune or any of its Affiliates pursuant to this Agreement, including any of Newco's funds held in the Tribune Payment Accounts or the Cubs A/R Accounts, that have been (a) lost, seized, misdirected or misappropriated as a result of the negligence of Tribune or any of its Affiliates in connection with their provision of the Services hereunder or (b) seized or otherwise taken by creditors of Tribune or its Affiliates. Such reimbursement shall be treated as payment of an allowed (on a final, and not provisional or interim, basis) administrative priority claim pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, without further order of the Bankruptcy Court, and shall be included, and deemed approved, in any budget otherwise subject to approval by the Bankruptcy Court or by any other party in interest. In the event any funds of Newco held in the Tribune Payment Accounts or the Cubs A/R Accounts are lost, seized, misdirected or misappropriated by the bank administering such account, upon written request of Newco, Tribune agrees to, at Newco's cost and expense (including reasonable attorney's fees), use reasonable measures to enforce Tribune's rights to remedy such loss, seizure, misdirection or misappropriation, including, without limitation, filing a lawsuit against such bank. Newco will indemnify and hold Tribune and its Affiliates harmless from and

against any loss, cost, liability or expense (including, without limitation, reasonable attorneys' fees and costs) in connection with any third party claims arising out of the Services provided by Tribune hereunder, except to the extent that such loss, cost, liability or expense has arisen out of the gross negligence or willful misconduct of Tribune that is the subject of the third party claim. All claims pursuant to this Agreement shall be made in accordance with the procedures set forth in Section 8.3 of the Formation Agreement.

7.  **Bank Accounts**.

    (a)    In connection with Tribune's provision of the Services described on Schedule A, Tribune will continue to maintain, and permit Newco to deposit funds in, the general deposit account ("General Account") used by Tribune to fund its accounts payable account ("Accounts Payable Account") and payroll account ("Payroll Account", and with the General Account and Accounts Payable Account, collectively, the "Tribune Payment Accounts"). For the avoidance of doubt: (i) Newco acknowledges that the funds deposited in the Tribune Payment Accounts on behalf of the Cubs Business are not, and will not be, segregated from funds used for the business of other Tribune business units; and (ii) Tribune acknowledges that, except for the Retained Cubs Accounts Receivable, no funds deposited in the General Account or the Tribune Payment Accounts relating to or in connection with the Cubs Business shall be the property of any Tribune Party, nor shall such funds be the property of any bankruptcy estate in the Bankruptcy Case or any Additional Bankruptcy Case.

    (b)    During the one hundred eighty (180) day period following Closing, Tribune will continue to collect accounts receivable of the Cubs Business (other than the amounts payable by Comcast pursuant to Section 7(c) below) in bank account nos. 8188900532 (Chicago Cubs – Lockbox) and 8188005836 (Wrigley Field Premium Ticket Services) maintained by Tribune for the collection of accounts receivable of the Cubs Business (such accounts, or any successor accounts thereto, the "Cubs A/R Accounts"). Following the Closing, no accounts receivable of other Tribune business will be deposited in the Cubs A/R Accounts, other than the Retained Cubs Accounts Receivable. All funds received by Tribune or any of the Newco Subs from the obligor of any Retained Cubs Accounts Receivable will be allocated to the Retained Cubs Accounts Receivable until such receivables are fully paid, and Tribune may immediately remove such funds from the Cubs A/R Accounts. For each day that funds are received in the Cubs A/R Accounts (each a "Payment Date"), Tribune shall, within three (3) Business Days of such Payment Date, (i) determine (in accordance with the preceding sentence) the amount of such funds that represent collections of Retained Cubs Accounts Receivable within the receipts for such Payment Date and cause such amounts to be removed from the Cubs A/R Accounts, and (ii) wire the remainder of the receipts for such Payment Date to an account designated by Newco. With respect to the Cubs A/R Accounts, Tribune will provide to Newco the same "view only" online access as is provided to Tribune by Bank of America (or any successor depository institution) to review account information on the Bank of America website (or the website of such successor depository institution)

and shall otherwise if such online access is not available, provide copies of all other account reports delivered by such depository institution to Tribune within two (2) Business Days of receipt by Tribune of such reports. Upon the first to occur of (x) the establishment of a Newco or Newco Sub account for collection of accounts receivable or (y) the expiration of the 180-day period following the Closing, if Newco requests, Tribune and Newco shall send a joint notice to all obligors of the Cubs Business directing such obligors to remit all funds (which shall include funds related to Retained Cubs Current Assets) to the applicable Newco Subs; provided, however, that notwithstanding the delivery of such joint notice, the A/R Services shall continue to be provided until the formal termination or expiration of such Service pursuant to Section 2.

(c)    (i)    Upon the Closing, Newco and Tribune will execute and deliver a joint notice of Closing and payment direction letter (the "Joint Notice") to Comcast SportsNet Chicago, LLC ("Comcast") directing Comcast to pay, from and after the Closing Date (beginning promptly, and in no event later than thirty (30) days, after the Closing), any amounts that, prior to Closing, would have been paid to Tribune or to another entity at the direction of Tribune pursuant to the Amended and Restated Rights Agreement (the "Rights Agreement") between Comcast and WGN Continental Broadcasting Company ("WGN") directly to Newco instead (as successor by assignment from WGN) by depositing such amounts directly into a bank account identified by Newco in the Joint Notice pursuant to payment instructions set forth in the Joint Notice. Tribune shall have no obligation under this Section 7(c)(i) other than to execute and deliver the Joint Notice to Comcast.

        (ii)    In the event that, notwithstanding the terms of Section 7(c)(i) and delivery of the Joint Notice, Tribune or any Affiliate of Tribune receives any amounts paid to Tribune or any Affiliate of Tribune by Comcast pursuant to the Rights Agreement, Tribune or such Affiliate will collect and hold such amount for the benefit of Newco. For the avoidance of doubt, (i) Newco acknowledges that such funds paid by Comcast to Tribune are not, and will not be, segregated from funds used for the business of other Tribune business units; and (ii) Tribune acknowledges that no such funds paid by Comcast to Tribune shall be the property of any Tribune Party, nor shall such funds be the property of any bankruptcy estate in the Bankruptcy Case or any Additional Bankruptcy Case. Tribune shall, within three (3) Business Days of receipt from Comcast, wire such amount to an account designated by Newco.

(d)    Tribune agrees that it shall fulfill all of its obligations under this Agreement (and subject to Sections 3(e) and 3(f), that it shall cause, to the extent possible, each Affiliate of Tribune to fulfill any obligations of Tribune under this Agreement delegated to such Affiliate), including its obligations under this Section 7, in accordance with the terms and conditions of this Agreement notwithstanding the

provisions of any other agreement to which Tribune or such Affiliate is a party or any order to which Tribune or such Affiliate is subject.

8.   **Notices**. Any notice, demand, request or consent permitted or required to be delivered hereunder shall be delivered in accordance with Section 10.5 (Notices) of the Formation Agreement.

9.   **Governing Law**. This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the State of Delaware (without giving effect to any conflicts of laws principles thereof or of any other State).

10.   **Waiver of Jury Trial**. EACH PARTY HERETO, FOR ITSELF AND ITS AFFILIATES, HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ALL RIGHT TO TRIAL BY JURY IN ANY ACTION (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT. WITHOUT LIMITING THE FOREGOING, EACH PARTY HERETO, FOR ITSELF AND ITS AFFILIATES, FURTHER AGREES THAT ITS RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION 10 AS TO ANY ACTION THAT SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF.

11.   **Miscellaneous**.

(a)   This Agreement shall be binding upon and inure to the benefit of each party hereto, its legal successors and permitted assigns, including, without limitation, successors by merger or consolidation, provided, however, except as provided in Section 1(e), neither Tribune nor Newco shall have the right to assign this Agreement without the consent of the other party, and any attempted assignment without such consent shall automatically be null and void.

(b)   This Agreement (together with the Formation Agreement and the Schedule hereto) contains the entire agreement and understanding of the parties hereto with respect to the subject matter hereof. This Agreement may not be amended, modified or supplemented, and none of its provisions may be waived, except by an agreement in writing signed by the parties hereto.

(c)   Any provision hereof that is held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction shall be ineffective only to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining provisions hereof; provided, however, that the parties will attempt in good faith to reform this Agreement in a manner consistent with the intent of any such ineffective provision for the purpose of carrying out such intent.

(d)   The headings set forth in this Agreement are used solely for convenience of reference and shall not control or affect the meaning or interpretation of any of the provisions.

(e)    This Agreement may be signed in any number of counterparts, each of which shall be deemed an original and all of which, taken together, shall constitute one and the same agreement. Copies of executed counterparts transmitted by telecopy, telefax or other electronic transmission service shall be considered original executed counterparts for purposes of this Section 11(e), provided that receipt of copies of such counterparts is confirmed.

(f)    Each party agrees to execute such agreements and other documents and to take such further actions as the other party may reasonably request in order to carry out the provisions of this Agreement in accordance herewith.

(g)    Tribune shall not be liable for any interruption of its provision of Services, or any delay or failure to perform under this Agreement, that is attributable to acts of God, acts of a nation, state or public enemy, or any other acts or events that are beyond Tribune's reasonable control (each, a "Force Majeure Event," provided, however, that any delay or failure to perform under this Agreement resulting from the insolvency or bankruptcy of Tribune or any of its Affiliates, including any lawful action taken by a bankruptcy court or the creditors of Tribune or any of its Affiliates, shall not be deemed a "Force Majeure Event"). Tribune will (i) notify Newco as promptly as reasonably practicable upon learning of the occurrence of any interruption, delay or failure resulting from a Force Majeure Event, (ii) use commercially reasonable efforts to remove the cause of such interruption, delay or failure as soon as practicable, and (iii) upon the cessation of such interruption, delay or failure, resume, or cause to be resumed, the provision of Services hereunder as soon as practicable. If Tribune does not resume, or cause to be resumed, the provision of Services hereunder within fifteen (15) days after the first occurrence of a Force Majeure Event, as Newco's sole remedy at law or in equity, Newco may terminate or temporarily suspend this Agreement without penalty or liability (other than any fees owing for Services rendered prior to such termination or suspension), and Tribune will have no liability or further obligation with respect to such Services during the period of such suspension or following termination of this Agreement.

[Signatures on following page]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first above written.

**TRIBUNE COMPANY**

By: _____
Name: _____
Title: _____



**CHICAGO BASEBALL HOLDINGS, LLC**

By: _____
Name: _____
Title: _____

CHI99 5155875-1.022182.0010

# Schedule A

# Tribune Services

## 1.   Payroll Services

Services Period:  Until December 31, 2009, or such earlier date as may be elected by Newco (the "Payroll Services Period").

During the Services Period, Tribune will (a) perform customary payroll processing activities for Newco using Tribune's corporate payroll software and Newco will be required to enter all data required to process the payroll for Newco, and (b) continue to deduct, on behalf of Newco, from payroll all taxes for the employees of Newco (including any such employees hired during the Services Period as directed by Newco).

For each pay period during the Services Period, on the earlier of (i) at least three (3) Business Days prior to the date on which the payment for such pay period is to be made or (ii) 5:00 p.m. on the Business Day immediately preceding the date on which Tribune is required to fund payment for such pay period, Newco will provide to Tribune a copy of the payroll report for such pay period, which shall serve as Newco's written instruction to Tribune to process payroll in accordance with such payroll report.  For each pay period during the Services Period, Newco will deposit into the General Account by 5:00 p.m. on the Business Day immediately preceding the date on which Tribune is required to fund payroll for such pay period the funds necessary to make the payroll payments and expense reimbursements for such pay period (including, but not limited to, base pay, bonuses, commissions, tax withholding, payroll taxes, employees' medical, dental and life insurance contributions and 401(k) plan contributions).  Tribune shall have no obligation to process payroll unless such funds are deposited into the General Account prior to 5:00 p.m. on the Business Day immediately preceding the date on which Tribune is required to fund payroll, provided that upon deposit of such funds and notice thereof to Tribune, Tribune shall be obligated to process payroll on the third Business Day following such deposit and notice.

No later than the Closing Date, Newco will provide Tribune with a federal employee identification number and power-of-attorney (in form and substance mutually agreeable to Newco and Tribune) for the purpose of paying and remitting such taxes for employees of Newco or its subsidiaries.

To the extent any detailed payroll reports are prepared by Tribune as of the Closing Date, Tribune will continue to provide such payroll reports to Newco during the Services Period.

Services to include, but not limited to:

       a.   Payroll processing (processing of special pays, incentives, commissions, entries, etc., gross to net processing, printing of paychecks)

       b.   Post payroll processing (prepare funding information for net payroll, taxes, etc., distribution of paychecks, post for employees on ePay, run and distribute payroll reports)

       c.   Payroll taxes (maintain ADP tax filing service, provide information to ADP necessary to resolve tax issues)

## 2.   Accounting, Accounts Payable and General Ledger Functions

Services Period:  one hundred eighty (180) days from Closing Date

Tribune will provide accounts payable, general ledger and financial statement computer processing functions during the Services Period for Newco.

Newco will approve the payment of all accounts payable of Newco (including, without limitation, reimbursement for amounts paid by Newco out of Newco's petty cash funds) prior to submission for payment by Tribune. Any invoices that Tribune accounts payable receives to process during the Services Period from Newco will be considered approved. The Tribune Finance Service Center will not check for new or additional authorizations other than those already on file for Tribune. Thereafter, immediately following notification to Newco (via system generated, daily check registers available in the Cypress report distribution system) that any such accounts payable are ready for mailing, Newco will deposit into the General Account the funds needed to pay such approved accounts payable at least two (2) Business Days prior to the scheduled payment date. Tribune shall have no obligation to process such payments unless such funds are deposited into the General Account at least two (2) Business Days prior to the scheduled payment date, provided that upon deposit of such payments, Tribune shall be obligated to process such payments within two (2) Business Days thereafter.

To the extent that Tribune prepares such reports as of the Closing Date, promptly after the end of each Fiscal Period during the Services Period, Tribune will send to Newco a summary of the payables paid by Tribune for the previous period, and within ten (10) Business Days after each period-end will provide to Newco in electronic format the general ledger, accounts payable, trial balance and fixed asset additions and deletions; provided, however, that Newco shall provide to Tribune all journal entries, accruals and other information required to provide such reports for the period-end financial closing within seven (7) Business Days of period-end.

Tribune will confirm that all checks written during the Services Period to pay accounts payable have cleared the Accounts Payable Account. In the event that (i) any such checks have not cleared the Accounts Payable Account by the earlier of ninety (90) days after being written or ninety (90) days after the end of the Services Period or (ii) any such checks are returned to Tribune or Newco uncashed, Tribune will promptly cancel such checks and notify Newco and refund to Newco the face amount thereof.

Provided that Newco has provided all information in Newco's possession necessary to do so with respect to the portion of fiscal year 2009 following the Closing Date, Tribune will prepare, process and mail all the 2009 1099's related to Newco on a timely basis.

During the Services Period, Tribune will maintain all computer interfaces with the general ledger in existence on the Closing Date.

**3.   Accounting:  Accounts Receivable Function**

Services Period:  one hundred eighty (180) days from Closing Date

Tribune will provide accounts receivable services as described in Sections 7(b) and 7(c).

**4.   Corporate Cash Management**

Services Period:  one hundred eighty (180) days from Closing Date

Tribune will process payment via wire transfer for the following payments on behalf of Newco:  (i) MLB revenue sharing payments, (ii) Superstation payments, (iii) Player signing bonuses, (iv) Playoff refunds, (v) foreign wires to Dominican operations accounts, (vi) payments necessary to be wired for obligations relating to the Cubs Business (e.g., concerts) and (viii) payments necessary to be wired for MLB purposes (e.g., playoff refunds). All funds for which Tribune will process payment shall be deposited by Newco into the General Account at least one (1) Business Day prior to the scheduled time of payment; otherwise, Tribune shall have no obligation to process such payments until funds are deposited into the General Account.

**5.   Human Resources**

Services Period:  The Payroll Services Period, provided that Newco provides Tribune with at least 30 days prior written notice before terminating its participation with respect to particular benefit plans or categories of benefits plans (as described in Annex I), provided, however, that after the expiration of the Payroll Services Period, Tribune

shall continue to process claims incurred but not reported during the Payroll Services Period until all such claims have been fully processed.

HR Service Fees: The HR Service Fees shall be as set forth on the attached Annex I-A.

During the Services Period, Tribune will administer the Benefits Plans that are both (i) listed on <u>Annex I</u> and (ii) elected by Newco upon at least 30 days written notice to Tribune prior to Closing. Such administration shall include, without limitation, the following: the HR service center with toll free benefits phone number, COBRA administration and coordination with third party vendors, management of outsourced defined contribution retirement plan administration, government reporting and compliance as it relates to benefits, systems support for Focal Point, performance appraisals and PAFs and access to maintenance of Brass Ring and related recruitment systems.

Notwithstanding the foregoing, Newco shall adopt the Tribune Savings Plan for the benefit of its employees, with such modifications to contribution amounts as may be requested by Newco.

## 6. Information Services

Services Period: one hundred eighty (180) days from Closing Date

During the Services Period, Tribune will continue to provide the following information services to Newco as set forth in the following list:

      a.   E-mail services

      b.   Data center

      c.   Servers

      d.   Networks

      e.   Help desk

## 7. Travel Programs

Services Period: The Payroll Services Period

During the Services Period, Tribune will continue to allow employees of the Cubs Business access to the Extensity travel and entertainment systems, as well as the Orbitz online travel booking systems.

## Annex I

## Tribune Plans

During the Services Period, Newco and the Newco Subs may elect, upon 30 days prior written notice to Tribune, to become adopting employers of the following Benefit Plans maintained by Tribune:

1.      Tribune Company Reimbursement Accounts;

2.      Tribune Company Benefit Program (including Tribune Company Medical Plan, Tribune Company Dental Plan, Tribune Company Vision Plan, but excluding basic life insurance, supplemental life insurance, spouse/domestic partner life insurance, dependent life insurance and voluntary accidental death and dismemberment insurance);

3.      Tribune Short-Term Disability Policy;

4.      Employee Assistance Programs;

5.      Commuter reimbursement benefit;

6.      Group legal benefits program;

7.      Long-Term Care Insurance; and

8.      Tribune Company 401(k) Savings Plan

**Annex I-A**
**Tribune Plans**

HR Service Fees and Employee Cost

| | Monthly Company Cost (HR Service Fees) | Monthly Employee Cost |
|---|---|---|
| Medical (per employee) Employee Only Employee Plus One Family | $311.25 $581.00 $871.50 | $103.75 $249.00 $373.50 |
| Dental (per employee) Employee Only Employee Plus One Family | $12.32 $32.25 $56.89 | $21.91 $34.93 $56.89 |
| Vision (per employee) Employee Only Employee Plus One Family | | $6.08 $10.74 $17.60 |
| HR Service Center (fixed) | $3,600 | |
| Reimbursement Accounts; Short-Term Disability; Employee Assistance Program; Commuter Reimbursement | $4,200 (plus payroll for short-term disability) | |
| Group Legal (per employee) | | $23.65 |
| Long-Term Care Insurance | | insurance company rate |
| Tribune Company Savings Plan | company contribution (to be determined by Newco) | |