**EXHIBIT K-1**

# GUARANTY OF COLLECTION

THIS GUARANTY OF COLLECTION is made as of _____, 2009 (this "Agreement") by Tribune Company, a Delaware corporation (the "Guarantor"), to and for the benefit of JPMorgan Chase Bank, N.A., as Administrative Agent (the "Agent"), each of the Lenders (as such term is defined in the Credit Agreement (as defined below)), and any of their respective successors and assigns (collectively, the "Senior Lenders") with respect to the obligations of Chicago Baseball Holdings, LLC, a Delaware limited liability company (the "Borrower"), in respect of the Loans (as hereinafter defined), and is acknowledged by the Agent, as representative acting on behalf of the Senior Lenders.

## R E C I T A L S:

WHEREAS, the Guarantor indirectly owns a membership interest in the Borrower through direct and indirect wholly-owned limited liability company subsidiaries of the Guarantor;

WHEREAS, pursuant to the Credit Agreement dated _____, 2009, by and among the Borrower, the Lenders party thereto and the Agent (the "Credit Agreement") and the other Loan Documents (as defined in the Credit Agreement), the Senior Lenders have agreed to provide to Borrower a senior secured revolving credit facility in an aggregate amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000) (the "Revolving Facility") and a senior secured term loan facility in an aggregate amount of FOUR HUNDRED TWENTY-FIVE MILLION DOLLARS ($425,000,000) (together with the Revolving Facility, the "Loans");

WHEREAS, the Senior Lenders are prepared to make the Loans to the Borrower on conditions that include, without limitation, the condition that the Guarantor enter into this Agreement;

WHEREAS, the Guarantor will directly benefit from the Loans being made to the Borrower; and

WHEREAS, on December 8, 2008, Guarantor commenced a chapter 11 case in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which has been assigned case number 08-13141 (KJC).

NOW, THEREFORE, as an inducement to the Senior Lenders to make the Loans to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees as follows:

1.     Guaranty.  Subject to the terms and conditions set forth in this Agreement, the Guarantor hereby irrevocably, unconditionally, absolutely and directly agrees to pay to the Agent (for the benefit of the Senior Lenders) the principal amount of, and any premium on, the Loans, together with interest thereon, in each case to the extent provided for in the Loan Documents, (the "Guaranteed Obligations"); provided, however, that the Guarantor shall have no obligation to make a payment hereunder with respect to any other costs, fees, expenses, penalties, charges or similar items payable by any Borrower Party (as defined below) in respect of the Loans or under the Loan Documents.

2.      <u>Guaranty of Collection and Not of Payment</u>. Notwithstanding any other provision of this Agreement, this Agreement is a guaranty of collection and not of payment, and the Guarantor shall not be obligated to make any payment hereunder until each of the following is true: (a) Borrower shall have failed to make a payment due to the Senior Lenders in respect of such Guaranteed Obligations and the Loans shall have been accelerated, (b) the Senior Lenders shall have exhausted all Lender Remedies (as defined below), and (c) the Senior Lenders shall have failed to collect the full amount of the Guaranteed Obligations. The term "Borrower Parties" shall mean the Borrower and any other person or entity (a "Person") that has guaranteed any payment referred to under clause (a) above under the Loan Documents (other than the Guarantor). The term "Lender Remedies" shall mean all rights and remedies at law and in equity that the Agent or the Senior Lenders may have against any Borrower Party, the Collateral (as such term is defined in the Loan Documents) or any other Person that has provided credit support in respect of the applicable Guaranteed Obligations, to collect, or obtain payment of, the Guaranteed Obligations, including, without limitation, foreclosure or similar proceedings, litigation and collection on all applicable insurance policies, and termination of all commitments to advance additional funds to the Borrower under the Loan Documents. For the avoidance of doubt, Lender Remedies shall not have been exhausted with respect to any Collateral unless and until either (i) such Collateral, whether or not acquired in foreclosure or similar proceedings, has been sold or disposed of for, or otherwise converted into, cash proceeds or (ii) with respect to any Collateral which has been foreclosed on by the Senior Lenders (or any Person acting on their behalf), the value thereof has been included in Section 3(a)(y)(ii) pursuant to the proviso to the last sentence of Section 4.

3.      <u>Cap</u>. Notwithstanding any other term or condition of this Agreement it is agreed that Guarantor's maximum liability under this Agreement shall not exceed the sum of (a) the difference between (x) $[450][1] million, minus (y) the sum of (i) any payments of principal (to the extent the principal so paid was not reborrowed under the Loan Documents or, if reborrowed, was expressly acknowledged by the Senior Lenders pursuant to the parenthetical under Section 5(a) as not being guaranteed hereunder) made by or on behalf of Borrower or any other Borrower Party to the Senior Lenders (or any one of them) in respect of the Loans, plus (ii) any amount of cash proceeds collected or otherwise realized (including by way of set off) by or on behalf of any Senior Lender, pursuant to, or in connection with, the Loan Documents or the Loans, including, but not limited to, any cash proceeds collected or realized from the exercise of any Lender Remedies (but excluding any cash payments of principal (to the extent such payment is already included in clause (i) above), premium or interest (it being understood that the paid premium or interest shall not be deemed to be unpaid for purposes of clause (b) below) received from the Borrower and any amount received as a reimbursement of expenses, indemnification payment or fees), plus (iii) the amount of principal or accrued and unpaid interest or accrued and unpaid premium otherwise owing by the Borrower Parties which is affirmatively discharged, forgiven or otherwise compromised by the Agent or the Senior Lenders, plus (b) any unpaid premium on, or unpaid interest accruing under the Loan Documents on, the amount described in clause (x) above.

4.      <u>Notice</u>. As a condition to the enforcement of this Agreement, the Guarantor shall have received written notice of any failure by Borrower to pay any Guaranteed

---

[1] Subject to determination regarding whether revolver is covered.

CH199 5152910-3.022182.0015

Obligations to the Senior Lenders. Except for the notice required under the preceding sentence, the Guarantor hereby waives notice of acceptance of this Agreement, demand of payment, presentment of this or any instrument, notice of dishonor, protest and notice of protest, or other action taken in reliance hereon and all other demands and notices of any description in connection with this Agreement. Subject to the last sentence of Section 2 and the proviso to this sentence, the Guarantor further waives and forgoes all defenses which may be available by virtue of any valuation, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets, and all suretyship defenses generally; provided that to the extent the Senior Lenders (or any Person acting on their behalf) foreclose upon all or a portion of the Collateral and do not consummate a sale or other transaction with respect thereto which has the result of such Collateral being sold or disposed of for, or otherwise converted into, cash proceeds within twenty-four (24) months of the date upon which such foreclosure results in the transfer of ownership of such Collateral to the Senior Lenders (unless the Senior Lenders (or any Person acting on their behalf, including Major League Baseball, the Office of the Commissioner of Major League Baseball or any of their respective affiliates) have commenced a process to sell or otherwise dispose of such Collateral, in which case, this proviso shall not apply for so long as the Senior Lenders (or any such Person) are continuing to diligently pursue such sale or disposition), the Guarantor shall be entitled to a valuation of such Collateral by an independent valuation expert mutually selected by the Guarantor and the Senior Lenders (with the value of such Collateral to be established on a fair market value basis, assuming an orderly sale, as of the date of such valuation) and such valuation shall be included in the amount referred to in Section 3(a)(y)(ii) above (it being understood that if such Collateral is thereafter sold or disposed of for, or otherwise converted into, cash proceeds in an amount greater than the amount of such valuation, only the difference between (x) the total amount of cash proceeds of such Collateral and (y) the amount of such valuation shall be incrementally included in Section 3(a)(y)(ii)).

    5.    Absolute Obligation. Subject to the provisions of Sections 1, 2, 3 and 4, the obligations of the Guarantor hereunder shall be absolute and unconditional and shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any setoff, counterclaim, deduction, diminution, abatement, suspension, reduction, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations. Without limiting the generality of the foregoing, subject to the provisions of Sections 1, 2, 3 and 4, the obligations of the Guarantor hereunder shall not be released, discharged, impaired or otherwise affected by any circumstance or condition whatsoever (whether or not the Borrower, any other Borrower Party, the Guarantor, the Agent or any Senior Lender has knowledge thereof) which may or might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor as a matter of law or equity (other than the indefeasible payment in full of all of the Guaranteed Obligations), including, without limitation:

    (a)    any amendment, modification, addition, deletion or supplement to or other change to any of the terms of the Loan Documents, or any assignment or transfer of any thereof, or any furnishing, acceptance, surrender, substitution, modification or release of any security for, or guaranty of, the Guaranteed Obligations; provided, however, without the prior written consent of the Guarantor, no amount of the Term Loan which has been

repaid may be reborrowed (unless the Senior Lenders acknowledge that such amount is not guaranteed by the Guarantor hereunder);

(b) any failure, omission or delay on the part of the Borrower or any other Borrower Party to comply with any term of any of the Loan Documents;

(c) any waiver of the payment, performance or observance of any of the obligations, conditions, covenants or agreements contained in the Loan Documents or any of them or any delay on the part of the Agent or the Senior Lenders to enforce, assert or exercise any right, power or remedy conferred on the Agent or the Senior Lenders in the Loan Documents;

(d) any extension of the time for payment of the principal of or premium (if any) or interest on any of the Guaranteed Obligations, or of the time for performance of any other obligations, covenants or agreements under or arising out of the Loan Documents or any of them, or the extension or the renewal thereof;

(e) to the extent permitted by applicable law, any voluntary or involuntary bankruptcy, insolvency, reorganization, moratorium, arrangement, adjustment, readjustment, composition, assignment for the benefit of creditors, receivership, conservatorship, custodianship, liquidation, marshaling of assets and liabilities or similar proceedings with respect to the Borrower, any other Borrower Party or the Guarantor or any other Person or any of their respective properties or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding (including, without limitation, any automatic stay incident to any such proceeding);

(f) any limitation, invalidity, irregularity or unenforceability, in whole or in part, limiting the liability or obligation of the Borrower or any other Borrower Party or any security therefor or guarantee thereof or the Agent's or the Senior Lenders' recourse to any such security or limiting the Agent's or the Senior Lenders' right to a deficiency judgment against the Borrower, any other Borrower Party, the Guarantor or any other Person; and

(g) any other act, omission, occurrence, circumstance, happening or event whatsoever, whether similar or dissimilar to the foregoing, whether foreseen or unforeseen, and any other circumstance which might otherwise constitute a legal or equitable defense, release or discharge (including the release or discharge of the liabilities of a guarantor or surety or which might otherwise limit recourse against the Borrower, any other Borrower Party, the Guarantor or any other Person, whether or not the Borrower, any other Borrower Party, the Guarantor, the Agent or any Senior Lender shall have notice or knowledge of the foregoing).

6. <u>Subrogation</u>. To the extent that the Guarantor shall have made any payments under this Agreement, the Guarantor shall be subrogated to, and shall acquire, all rights of the Senior Lenders against the Borrower Parties and the Collateral with respect to such payments, including without limitation, (a) all rights of subrogation, reimbursement, exoneration, contribution or indemnification, and (b) all rights to participate in any claim or remedy of any

4

Senior Lender or any trustee on behalf of any Senior Lender against any Borrower Party or the Collateral, in each case, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from the Borrower Parties, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right; provided, however, that (1) the Guarantor hereby acknowledges that, in connection with exercising any such rights against the Borrower Parties and the Collateral, such rights are subject to the MLB Rules and Regulations (as such term is defined in each applicable Loan Document) to the same extent as the rights of the Senior Lenders are subject to the MLB Rules and Regulations under the Loan Documents and (2) the Guarantor shall not exercise any right of subrogation, contribution, indemnity or reimbursement or any other rights it may have now or hereafter have, and any and all rights of recourse to any Borrower Party or any of its assets with respect to any payment it makes under this Agreement until (x) all of the Obligations (as defined in the Credit Agreement) (other than contingent indemnification obligations not yet asserted by the Person entitled thereto) shall have been indefeasibly paid, performed or discharged in full in cash, and (y) no Person has any further right to obtain any loans, advances or other extensions of credit under any of the Loan Documents. If any amount is paid to the Guarantor in violation of the foregoing limitation, then such amount shall be held in trust for the benefit of the Senior Lenders and shall forthwith be paid to the Agent (for the benefit of the Senior Lenders) to reduce the amount of the Guaranteed Obligations, whether matured or unmatured. Notwithstanding any other provision of this Agreement or applicable law, the Guarantor shall not have, with respect to any payments made by the Guarantor under this Agreement, any right of subrogation, contribution, indemnity, reimbursement or other right whatsoever, whether by contract at law, in equity or otherwise, against, and shall have no recourse whatsoever to, any Borrower Party other than (A) subsidiaries of the Borrower that are disregarded as entities separate from the Borrower for Federal tax purposes pursuant to Treasury Regulations Section 301.7701-3, (B) subsidiaries of the Borrower that are not treated as related to the members of the Borrower pursuant to Treasury Regulations Section 1-752-4(b), (C) subsidiaries of the Borrower that are treated as related to the members of the Borrower pursuant to Treasury Regulations Section 1-752-4(b) solely by reason of Borrower's ownership of an interest in such subsidiaries, (D) Ricketts Acquisition LLC ("Ricketts NewCo"), with respect to the membership interest in Borrower owned by Ricketts Newco (and only with respect to such membership interest and not in any other capacity or with respect to any other asset) and then only if such membership interest constitutes Collateral, and (E) the Borrower; provided, that in each case in clauses (A)-(E), (x) nothing in this sentence shall provide the Guarantor with greater rights or recourse with respect to any Person described in clauses (A)-(E) than the Guarantor would otherwise have under applicable law, and (y) all such rights and recourse shall subject in all respects to the other provisions of this Section 6. For the avoidance of doubt, but subject to the terms of the Subordination Agreement (as defined below), this Agreement shall not limit the ability of the Guarantor or its subsidiaries to ask for, sue, demand, receive and retain payments and other consideration from the Borrower or any other Borrower Party in respect of obligations of such Persons to the Guarantor and/or its subsidiaries which do not arise under this Agreement.

7. **Continuity of Guaranteed Obligations; Bankruptcy or Insolvency.** If all or any part of any payment applied to any Guaranteed Obligation is or must be recovered, rescinded or returned to the Borrower, the Guarantor or any other Person (other than the Senior Lenders) for any reason whatsoever (including, without limitation, bankruptcy or insolvency of any party),

5

such Guaranteed Obligation shall be deemed to have continued in existence and this Agreement shall continue in effect as to such Guaranteed Obligation, all as though such payment had not been made. For the avoidance of doubt, the bankruptcy, insolvency, or dissolution of, or the commencement of any case or proceeding under any bankruptcy, insolvency, or similar law in respect of, the Borrower or any other Borrower Party shall not require the Guarantor to make any payment under this Agreement until all of the conditions in Section 2 and Section 4 have been satisfied (including, without limitation, the exhaustion of all Lender Remedies).

8. <u>Payments by Guarantor</u>. All obligations of the Guarantor pursuant to this Agreement shall be treated allowed (on a final, and not provisional or interim, basis) administrative priority claims pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, without further order of the Bankruptcy Court, and shall be included, and deemed approved, in any budget otherwise subject to approval by the Bankruptcy Court or by any other party in interest, and shall not be subject to disallowance, subordination or estimation and shall not be discharged, subordinated or otherwise affected by any Plan of Reorganization (as defined in the Formation Agreement).[2]

9. <u>No Waiver</u>. No delay or omission on the part of the Agent or any Senior Lender in exercising any rights hereunder shall operate as a waiver of such rights or any other rights, and no waiver of any right on any one occasion shall result in a waiver of such right on any future occasion or of any other rights; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

10. <u>Representations and Warranties</u>. The Guarantor represents and warrants that (a) it is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, (b) the execution, delivery and performance by the Guarantor of this Agreement, and the consummation of the transactions contemplated hereby, are within its corporate powers and have been duly authorized by all necessary corporate action; (c) this Agreement has been duly executed and delivered by the Guarantor, and constitutes the Guarantor's legal, valid and binding obligation enforceable in accordance with its terms; (d) the making and performance of this Agreement does not and will not violate the provisions of any applicable law, regulation or order, and does not and will not result in the breach of, or constitute a default or require any consent under, any material agreement, instrument, or document to which it is a party or by which it or any of its property may be bound or affected; (e) all consents, approvals, licenses and authorizations of, and filings and registrations with, any governmental authority or regulatory body or other third party (including, without limitation, the Bankruptcy Court) have been obtained or made and are in full force and effect; and (f) by virtue of the Guarantor's relationship with the Borrower, the execution, delivery and performance of this Agreement is for the direct benefit of the Guarantor and the Guarantor has received adequate consideration for this Agreement.

11. <u>Enforcement Expenses</u>. The Guarantor hereby agrees to pay all out-of-pocket costs and expenses of the Agent and each Senior Lender in connection with the enforcement of this Agreement (including, without limitation, the reasonable fees and disbursements of counsel employed by the Agent or any of the Senior Lenders); <u>provided</u> that no

---

[2] Subject to bankruptcy review by all parties.

payment shall be due and owing under this Section 11 during the pendancy of any good faith dispute between the Guarantor and the Agent or the Senior Lenders regarding the enforcement of this Agreement against the Guarantor and such payment shall be due only if (A) Guarantor agrees to make such payment or (B) a court of competent jurisdiction has determined pursuant to a final non-appealable order that this Agreement may be enforced against the Guarantor.

12. <u>Tax Matters</u>. The Guarantor hereby acknowledges and agrees that none of the Agent, any of the Senior Lenders, any other Secured Party (as defined in the Credit Agreement), or any party affiliated with or related to any of them makes any representation or warranty regarding the Federal, state or local income tax consequences of (i) this Agreement, (ii) the formation of the Borrower or (iii) the payment of the Estimated Special Distribution Amount or Final Special Distribution Amount (as such terms are defined in the Tax Matters Agreement referred to in the Credit Agreement).

13. <u>Fraudulent Conveyance</u>. Notwithstanding any provision of this Agreement to the contrary, it is intended that this Agreement, the Guarantor's guarantee of the Guaranteed Obligations hereunder and any liens and security interests securing the Guarantor's obligations under this Agreement, not constitute a Fraudulent Conveyance (as defined below). Consequently, Guarantor agrees that if this Agreement, the Guarantor's guarantee of the Guaranteed Obligations hereunder or any liens or security interests securing the Guarantor's obligations under this Agreement, would, but for the application of this sentence, constitute a Fraudulent Conveyance, this Agreement, such guarantee and each such lien and security interest shall be valid and enforceable only to the maximum extent that would not cause this Agreement, such guarantee or such lien or security interest to constitute a Fraudulent Conveyance, and this Agreement shall automatically be deemed to have been amended accordingly at all relevant times. For purposes of this Section 13, the term "<u>Fraudulent Conveyance</u>" means a fraudulent conveyance under Section 548 of the Bankruptcy Code (as defined in the Credit Agreement) or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time. Notwithstanding the foregoing, the obligations of the Guarantor under the Subordinated Guaranty of Collection, dated as of _____, 2009, by the Guarantor to and for the benefit of _____, as Subordinated Creditor Agent, each of the Lenders (as defined in the Subscription Agreements referred to therein) and their respective successors and assigns, shall be disregarded for purposes of determining whether a Fraudulent Conveyance has occurred for purposes of this Section 13.

14. <u>Exculpation of Senior Lenders</u>. The Guarantor acknowledges and agrees, on behalf of itself and each of its Affiliates, that none of J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Citibank, N.A., Banc of America Securities LLC, Bank of America, N.A., any of the other Senior Lenders, any of their respective Affiliates, successors or assigns, or any officer, director, partner, trustee, equity holder, agent, employee, attorney, attorney-in-fact, advisor or controlling Person of any of the foregoing (collectively, the "Senior Lender Parties") shall have any duty (including any fiduciary duty or any other express or implied duty), liability, obligation or responsibility whatsoever to the Guarantor or any of its Affiliates arising from, in connection with or relating to (i) the Loans and other extensions of credit contemplated by the Credit Agreement and the other Loan Documents (the "Senior Debt Financing"), (ii) the Commitment Letter dated July 10, 2009, as amended and restated as of August ___, 2009,

7

among the Borrower, Ricketts Newco, The Joe and Marlene Ricketts Grandchildren's Trust, JPMorgan Chase Bank, N.A., Citibank, N.A., Bank of America, N.A. and the other parties thereto (the "Senior Debt Commitment Letter"), or (iii) any of the transactions contemplated by this Agreement, the Senior Debt Commitment Letter, the Credit Agreement or any of the other Loan Documents (collectively, the "Senior Debt Documents") or any agreement, instrument certificate or instrument referred to in the Commitment Letter or the Senior Debt Documents, including, without limitation, any actual or alleged breach, misrepresentation or failure to perform any of their respective duties or obligations (including, but not limited to, any failure to fund or otherwise extend credit) under the Senior Debt Commitment Letter, any Senior Debt Document or any agreement, certificate or instrument related thereto (clauses (i)-(iii), collectively, the "Financing Matters"). No Senior Lender Party shall be liable to the Guarantor or any of its Affiliates for any action taken or not taken by such Senior Lender Party in connection with any of the Financing Matters; <u>provided</u>, that, for the avoidance of doubt, the foregoing sentence shall not, in and of itself, operate as a waiver of defenses by the Guarantor to enforcement of this Agreement. The Guarantor hereby waives, releases and forever discharges each of the Senior Lender Parties from any and all actions, causes of action, suits, debts, losses, costs, controversies, damages, liabilities, judgments, claims and demands whatsoever, in law or equity or otherwise, whether known or unknown (collectively, "Claims") directly or indirectly arising out of or relating to any of the Financing Matters, that the Guarantor or any of its Affiliates ever had, now has or hereafter can, shall or may have against any of the Senior Lender Parties, except to the extent arising as a result of (x) a demand for payment hereunder prior to the conditions in Section 2 and Section 4 being satisfied or (y) any act of gross negligence or willful misconduct committed by such Person at any time following the date hereof as determined by a court of competent jurisdiction pursuant to a final non-appealable order. Furthermore, the Guarantor covenants not to sue any Senior Lender Party in connection with or assert, and agrees to cause its Affiliates not to sue any Senior Lender Party in connection with or assert, any Claims which they or any other party now or may hereafter have in connection with any Financing Matter, except to the extent arising as a result of (x) a demand for payment hereunder prior to the conditions in Section 2 and Section 4 being satisfied or (y) any act of gross negligence or willful misconduct committed by such Person at any time following the date hereof as determined by a court of competent jurisdiction pursuant to a final non-appealable order. Each of the Senior Lender Parties shall be an intended third party beneficiary of this Section 14 and may enforce the terms of this Section 14 as if such Senior Lender Party were a direct party to this Agreement, and this Section 14 may not be amended, supplemented, waived or otherwise modified without the prior written consent of each of JPMorgan Chase Bank, N.A., Citibank, N.A. and Bank of America, N.A.

    15.    <u>Miscellaneous</u>.

    (a)    This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely in New York.

    (b)    The Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any New York State court or federal court of the United States of America sitting in New York City and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or

for recognition or enforcement of any judgment, and the Agent hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined exclusively in any such New York State court or, to the extent permitted by law, in such federal court. The Guarantor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that any party (other than the Guarantor) may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction. The Guarantor irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any New York State or federal court. The Guarantor hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)     This Agreement shall inure to the benefit of and be binding upon the Guarantor and its successors and assigns and the Agent, the Senior Lenders and their respective successors and assigns.

(d)     This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, between the parties related thereto, other than the Subordination Agreement dated as of the date hereof, by and among the Borrower, Ricketts Newco, certain other parties thereto, the Guarantor, certain of its subsidiaries and the Agent (the "Subordination Agreement"). The parties hereto acknowledge and agree that, notwithstanding anything to the contrary in this Agreement, any and all rights and remedies that the Guarantor may have under this Agreement against any Borrower Party or any of their assets, and any obligations that any Borrower Party may have hereunder to the Guarantor, shall be subject to the terms of the Subordination Agreement.

(e)     Each reference herein to the Guarantor shall be deemed to include the successors and assigns of the Guarantor, all of whom shall be bound by the provisions of this Agreement; provided, however, that the Guarantor shall not, without obtaining the prior written consent of the Senior Lenders (which consent may be withheld or conditioned in the Senior Lenders' sole discretion), assign or transfer this Agreement or the Guarantor's obligations and liabilities under this Agreement, in whole or in part, to any other Person (and any attempted assignment or transfer by Guarantor without such prior written consent shall be null and void). Upon the written request of the Senior Lenders, the Guarantor shall assign this Agreement to any Person who acquires all or substantially all of the assets of Guarantor; provided, that the Senior Lenders shall have no duty or obligation to make such request. Each reference herein to the Senior Lenders shall be deemed to include the successors and assigns of the Senior Lenders under the Credit Agreement; it being understood that this Agreement shall not be for the benefit of, or be assigned to, any refinancing or refunding source with respect to the Guaranteed Obligations (it being acknowledged that an amendment, restatement, waiver or other modification of the terms of the Credit Agreement or other Loan Documents shall not constitute a refinancing or refunding for purposes of this provision) without the prior

9

written consent of the Guarantor, <u>provided</u>, that in no event shall the foregoing prevent or restrict any Senior Lender from making an assignment, selling a participation in, pledging or granting a security interest in or otherwise transferring all or any portion of its interests in the Loans (and its corresponding interest in the guarantee provided for hereunder) under the applicable provisions of Section 9.04(b)-(g) of the Credit Agreement (as in effect on the date hereof, except to the extent the Guarantor consents to any subsequent amendment or other modification to such provisions) or impair any Senior Lender's rights under this Agreement as a result of any such assignment, participation, pledge, security interest or transfer made in accordance with such provisions.

(f)     This Agreement is for the benefit only of the Agent and the Senior Lenders, shall be enforceable by them alone, is not intended to confer upon any third party any rights or remedies hereunder, and shall not be construed as for the benefit of any third party; <u>provided</u>, <u>however</u>, that (i) the Agent shall be permitted, in its sole discretion, to pay or to direct the Guarantor to pay any and all amounts payable pursuant to this Agreement to any Senior Lender or any third party, and (ii) each of the Senior Lender Parties may enforce the provisions of Section 14 of this Agreement.

(g)     EACH PARTY HERETO, FOR ITSELF AND ITS AFFILIATES, HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ALL RIGHT TO TRIAL BY JURY IN ANY ACTION (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THE ACTIONS OF THE PARTIES HERETO OR THEIR RESPECTIVE AFFILIATES PURSUANT TO THIS AGREEMENT IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF AND THEREOF. THE PARTIES AGREE THAT ANY SUCH ACTION OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT.

16.     <u>Miscellaneous</u>.

(a)     This Agreement may not be modified or amended except by an instrument or instruments in writing signed by each of the parties hereto and, with respect to any amendment or modification of Section 14, each of JPMorgan Chase Bank, N.A., Citibank, N.A. and Bank of America, N.A.

(b)     All notices and other communications hereunder will be in writing and given by certified or registered mail, return receipt requested, nationally recognized overnight delivery service, such as Federal Express or facsimile (or like transmission) with confirmation of transmission by the transmitting equipment or personal delivery

against receipt to the party to whim it is given, in each case, at such party's address or facsimile number set forth below or such other address or facsimile number as such party may hereafter specify by notice to the other parties hereto given in accordance herewith. Any such notice or other communication shall be deemed to have been given as of the date so personally delivered or transmitted by facsimile or like transmission (with confirmation of receipt), on the next business day when sent by overnight delivery services or five days after the date so mailed if by certified or registered mail:

If to the Guarantor:    Tribune Company
    435 North Michigan Avenue
    Chicago, Illinois
    Attention: General Counsel
    Fax No.: (312) 222-4206

    with a copy to:

    McDermott Will & Emery LLP
    600 13th Street, N.W.
    Washington, D.C. 20005
    Attention: Blake D. Rubin and
        Andrea M. Whiteway
    Fax No: (202) 756-8087

If to the Agent:    JPMorgan Chase Bank, N.A., as Agent
    [Remainder To Be Completed]

(c)    If any term or provision of this Agreement, or the application thereof to any Person or circumstance, shall to any extent be held invalid or unenforceable in any jurisdiction, then (i) as to such jurisdiction, the remainder of this Agreement, or the application of such term or provision to Persons or circumstances other than those as to which such term or provision is held invalid or unenforceable in such jurisdiction, shall not be affected thereby, (ii) the court making such determination shall have the power to reduce the scope, duration, area or applicability of such provision, to delete specific words or phrases, or to replace any invalid or unenforceable provision with a provision that is valid and enforceable and comes closest to expressing the intention of the invalid or unenforceable provision, and (iii) each remaining term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by applicable law. Any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(d)    This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and will become effective upon the later to occur of (i) when one or more counterparts have been signed by a party and delivered to the other parties, and (ii) when Guarantor's entry into this Agreement is approved by the Bankruptcy Court. Copies of executed counterparts transmitted by telecopy, telefax or other electronic transmission service shall be considered original

11

executed counterparts for purposes of this Section 16(d), provided that receipt of copies of such counterparts is confirmed.

*[The next page is the signature page]*

IN WITNESS WHEREOF, the Guarantor has executed this Agreement as of the date first above written.

**TRIBUNE COMPANY**

By:_____
Name:
Title:


Acknowledged and Agreed as of the date first written above:

**JPMORGAN CHASE BANK, N.A.,** as Agent

By:_____
Name:
Title:


**CHICAGO BASEBALL HOLDINGS, LLC**

By:_____
Name:
Title: