**EXHIBIT S**

## INDEMNITY ESCROW AGREEMENT

THIS INDEMNITY ESCROW AGREEMENT (this "**Escrow Agreement**"), dated as of _____, 2009, is by and among Tribune Sports Network Holdings, LLC, a Delaware limited liability company ("**Tribune Sports**"), Chicago National League Ball Club, LLC, a Delaware limited liability company (which after the Closing will change its name to _____, LLC) ("**Cubs LLC**"), Wrigley Field Premium Ticket Services, LLC, a Delaware limited liability company (which after the Closing will change its name to _____, LLC) ("**Premium Tickets LLC**"), Diana-Quentin, LLC, a Delaware limited liability company (which after the Closing will change its name to _____, LLC) ("**DQ LLC**"), Chicago Cubs Dominican Baseball Operations, LLC, a Delaware limited liability company (which after the Closing will change its name to _____, LLC) ("**Dominican LLC**," and together with Tribune Sports, Cubs LLC, Premium Tickets LLC and DQ LLC, the "**Cubs Entities**"), Chicago Baseball Holdings, LLC, a Delaware limited liability company ("**Newco**"), and JPMorgan Chase Bank, N.A., as escrow agent (the "**Escrow Agent**"). The Cubs Entities and Newco are sometimes referred to collectively herein as the "**Parties**."

WHEREAS, Tribune Company, a Delaware corporation ("**Tribune**"), Ricketts Acquisition LLC, a Delaware limited liability company ("**Bidder**"), the Cubs Entities, Newco and certain other parties thereto have entered into the Formation Agreement dated as of _____ _____, 2009 (together with all amendments, supplements, or modifications through the date hereof, the "**Formation Agreement**");

WHEREAS, the Formation Agreement contains certain indemnification provisions for the benefit of Newco and the Newco Subs;

WHEREAS, the Formation Agreement provides that Fifteen Million Dollars ($15,000,000) (the "**Initial Escrow Amount**") of the amount that would otherwise be distributed to the Cubs Entities by Newco at the Closing will be delivered at the Closing to the Escrow Agent to be held in an escrow account #_____ (the "**Escrow Account**");

WHEREAS, Tribune, Bidder, the Cubs Entities, certain other parties and the Escrow Agent (in its capacity as escrow agent thereunder, the "**Closing Escrow Agent**") have entered into the Closing Escrow Agreement dated as of _____, 2009; and

WHEREAS, the Parties desire to enter into this Escrow Agreement to implement the foregoing and to set forth the terms and conditions under which the Escrow Agent shall hold and disburse the Escrow Amount (as defined below).

NOW, THEREFORE, the parties agree as follows:

1.    <u>Terms</u>. Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Formation Agreement.

2.    <u>Escrow Agent</u>. The Parties designate and appoint the Escrow Agent to serve in accordance with the terms, conditions and provisions of this Escrow Agreement, and the

Escrow Agent agrees to act as such, upon the terms, conditions and provisions of this Escrow Agreement.

3.    <u>Deposit of the Initial Escrow Amount</u>.  At the Closing, upon the receipt of the Initial Escrow Amount, the Escrow Agent shall deposit such Initial Escrow Amount into the Escrow Account, which shall be held and disbursed by the Escrow Agent in accordance with the terms of this Escrow Agreement.  The amount in the Escrow Account at any time, including any Escrow Earnings (as defined below), shall be referred to as the "**Escrow Amount**."  The initial Escrow Amount at Closing shall be the Initial Escrow Amount.

4.    <u>Investment of Escrow Amount</u>.

(a)    Pending disbursement of the Escrow Amount, the Escrow Agent will invest the Escrow Amount in the investments set forth on <u>Schedule 1</u> attached hereto. Alternative written investment instructions, if any, shall specify the type and identity of the investments to be purchased and/or sold and as shall be acceptable to the Escrow Agent.  The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity.  The Escrow Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder including without limitation charging an agency fee in connection with each transaction.  The Parties recognize and agree that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Account or the purchase, sale, retention or other disposition of any investment described herein. The Escrow Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Parties to give the Escrow Agent instructions to invest or reinvest the Escrow Amount.  The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.

(b)    The Escrow Agent shall provide Cubs LLC and Newco with monthly statements regarding transactions with respect to the Escrow Amount and the aggregate amount of the income, interest and realized gains earned on the Escrow Amount (collectively, the "**Escrow Earnings**") during such period.

5.    <u>Payments from Escrow</u>.

(a)    At any time, Cubs LLC and Newco may jointly deliver to the Escrow Agent a certificate in substantially the form of <u>Exhibit A</u> attached to this Escrow Agreement (a "**Joint Release Certificate**") instructing the Escrow Agent to disburse all or a portion of the Escrow Amount.  Within one (1) Business Day after the date on which it receives a Joint Release Certificate, the Escrow Agent shall disburse to Newco, specified Newco Subs or Bidder, on the one hand, or the

Cubs Entities, on the other hand, as applicable, the portion of the Escrow Amount in the Escrow Account set forth in such Joint Release Certificate.

(b)     At any time prior to _____, 2010[1] (the "**Release Date**"), and subject to the terms and conditions of the Formation Agreement, Newco may deliver to the Escrow Agent and Cubs LLC a certificate in substantially the form of <u>Exhibit B</u> attached to this Escrow Agreement ("**Newco Release Certificate**") requesting that the Escrow Agent disburse to Newco, specified Newco Subs or Bidder all or a portion of the then-remaining amount of the Escrow Amount in satisfaction of any pending indemnification claim asserted by Newco (whether on behalf of itself, specified Newco Subs or Bidder) pursuant to Article VIII of the Formation Agreement or any amounts owed to Newco pursuant to Section 1.5(d) of the Formation Agreement (in any event, a "**Claim**"). Each Newco Release Certificate shall be required to describe, in reasonable detail, the basis for the Claim and the amount of the requested disbursement (the "**Requested Amount**"). If, by 5:00 pm CST on the fifteenth (15th) Business Day after the date on which the Newco Release Certificate is delivered pursuant to <u>Section 14</u> to Cubs LLC, Newco and the Escrow Agent have not received notification from Cubs LLC stating that all or a portion of the amount claimed by Newco in its notice is not due to be paid to Newco, the applicable Newco Sub(s) or Bidder (the "**Release Dispute Notice**"), then the Escrow Agent on the 16th Business Day shall disburse to Newco, the applicable Newco Sub(s) or Bidder, as applicable, the Requested Amount. If the Escrow Agent receives a Release Dispute Notice no later than 5:00 pm CST on the fifteenth (15th)-Business Day period, then (i) the Escrow Agent shall disburse to Newco, the applicable Newco Sub(s) or Bidder, as applicable, the undisputed portion of the Requested Amount and (ii) <u>Section 6</u> shall apply with respect to the remaining portion of the Requested Amount (a "**Disputed Amount**").

(c)     Notwithstanding anything to the contrary contained herein, if, prior to or on the Release Date, Newco reasonably determines that the amount necessary to satisfy any Pending Claim (as defined below) is greater than the amount set forth in the last Newco Release Certificate relating to such Pending Claim, then Newco may from time to time deliver to the Escrow Agent and Cubs LLC an amended Newco Release Certificate reflecting such greater amount. In the event of such delivery, the Disputed Amount for such Pending Claim for all purposes hereunder shall be deemed to be the amount set forth in such amended Newco Release Certificate.

(d)     Within two (2) Business Days following the Release Date, the Escrow Agent shall disburse to the Cubs Entities, in accordance with the allocations set forth on <u>Schedule 2</u>, any amounts remaining in the Escrow Account which are not (i) Disputed Amounts, (ii) subject to a pending Joint Release Certificate or (iii) subject to a pending Newco Release Certificate, but subject in all respects to <u>Section 27</u>.

---

[1] The date that is twelve (12) months from the Escrow Closing Date

(e)      Following the Release Date, if a Disputed Amount is retained by the Escrow Agent pursuant to Section 5(d) and such Disputed Amount is subsequently resolved pursuant to Section 6, then (x) at the time of any disbursement to Newco, the applicable Newco Sub(s) or Bidder, as applicable, related to such Disputed Amount in accordance with the resolution pursuant to Section 6(b) or (y) within one (1) Business Day of such resolution if no disbursement to Newco, the Newco Subs or Bidder is required with respect to such Disputed Amount, the Escrow Agent shall disburse to the Cubs Entities, in accordance with the allocations set forth on Schedule 2, any amounts remaining in the Escrow Account which are not (i) Disputed Amounts, (ii) subject to a pending Joint Release Certificate or (iii) subject to a pending Newco Release Certificate, but subject in all respects to Section 27.

6.      Settlement of Disputes.

(a)      The Escrow Agent shall be under no duty to institute or defend any proceedings in the prosecution of any disputed claim and none of the costs and expenses of any such proceedings shall be borne by the Escrow Agent.

(b)      If the Escrow Agent receives a Release Dispute Notice, then the Escrow Agent shall retain the Disputed Amount with respect to the Claim set forth in such Newco Release Certificate (a "**Pending Claim**") until the earlier to occur of the following: (a) Cubs LLC and Newco jointly direct the disbursement of the Disputed Amount by delivering a Joint Release Certificate to the Escrow Agent or (b) the Escrow Agent receives a certified copy of a final judgment of an Applicable Court with respect to such Disputed Amount and (i) the time for commencing a direct appeal of right of such judgment has expired without any such appeal having been taken or (ii) if a timely direct appeal of right of such judgment has been taken, the appellate court of competent jurisdiction has entered its judgment and issued its mandate to such Applicable Court affirming such Applicable Court's judgment and no further direct appeal of right exists (a "**Judgment**").  The Escrow Agent shall deliver a copy of any Judgment so received to Cubs LLC or Newco, as applicable.  Upon receipt of a Joint Release Certificate, or not earlier than five (5) Business Days nor later than ten (10) Business Days after receipt of such certified copy of a Judgment, the Escrow Agent shall disburse the Disputed Amount as required by such Joint Release Certificate or Judgment, as the case may be.  Any Judgment referred to above shall be accompanied by a legal opinion of counsel for the presenting party satisfactory to the Escrow Agent to the effect that said Judgment is a final judgment and (i) the time for commencing a direct appeal of right of such judgment has expired without any such appeal having been taken or (ii) if a timely direct appeal of right of such judgment has been taken, such appellate court has entered its judgment and issued its mandate to such Applicable Court affirming such Applicable Court's judgment and no further direct appeal of right exists.

7.  <u>Termination</u>.  This Escrow Agreement shall terminate upon the disbursement by the Escrow Agent of all of the amounts in the Escrow Account pursuant to this Escrow Agreement or the joint written instructions of the Parties.

8.  <u>Responsibilities of the Escrow Agent</u>.  The Escrow Agent shall have no duties or responsibilities except those expressly set forth in this Escrow Agreement and no other duties shall be implied.  The Escrow Agent shall have no responsibility for the validity of any agreements referred to in this Escrow Agreement, or for the performance of any such agreements by any Party or for interpretation of any of the provisions of any such agreements.  The liability of the Escrow Agent shall be limited solely to willful misconduct or gross negligence on its part or the part of its agents, employees or representatives only to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's willful misconduct or gross negligence caused any loss to either Party.  The Escrow Agent shall have no responsibility as to the validity, collectability or value of any property held by it in escrow pursuant to this Escrow Agreement.  The Escrow Agent may rely on any notice, instruction, certificate, statement, request, consent, confirmation, agreement or other instrument which it believes in good faith to be genuine and to have been signed or presented by a proper person or persons without inquiry and without substantiating evidence of any kind.  In the event that the Escrow Agent shall be uncertain as to its duties or rights or shall receive instructions from any of the undersigned with respect to any property held by it in escrow pursuant to this Escrow Agreement which, in the opinion of the Escrow Agent, are in conflict with any of the provisions of this Escrow Agreement, the Escrow Agent shall refrain from taking any action until it shall be directed otherwise in writing by the Parties or by an order of a court of competent jurisdiction.  The Parties agree to pursue any redress or recourse in connection with any dispute (other than a dispute relating to the performance of the Escrow Agent's obligations hereunder) without making the Escrow Agent a party to the same.  The Escrow Agent shall be deemed to have no notice of, or duties with respect to, any agreement or agreements other than this Escrow Agreement or except as otherwise provided herein.  This Escrow Agreement sets forth the entire agreement between the Parties and the Escrow Agent as escrow agent.  Notwithstanding any provision to the contrary contained in any other agreement between any of the Parties, the Escrow Agent shall have no interest in the property held by it in escrow pursuant to this Escrow Agreement except as provided in this Escrow Agreement and shall not be deemed to be a joint venturer of any Party.  In the event that any of the terms and provisions of any other agreement between the Parties conflict or are inconsistent with any of the terms and provisions of this Escrow Agreement, the terms and provisions of this Escrow Agreement shall govern and control in all respects.

9.  <u>Amendment</u>.  The Escrow Agent and the other Parties shall not be bound by any waiver, modification or amendment of this Escrow Agreement unless such waiver, modification or amendment is in writing and signed by the Parties and a copy is provided to the Escrow Agent and, if the duties of the Escrow Agent hereunder are affected in any way, unless such modification or amendment is in writing and also signed by the Escrow Agent.

10.   <u>Resignation</u>.  The Escrow Agent shall have the right, in its discretion, to resign as escrow agent at any time, by giving at least 30 days' prior written notice of such resignation to each of Cubs LLC and Newco.  In such event, Cubs LLC and Newco together shall promptly select a bank (i) with capital, surplus and undivided profits of not less than $500,000,000 and, (ii) in the event that any case under Chapter 11 of Title 11 of the United States Code is then pending for any of the Cubs Entities, having a Uniform Depository Agreement with the United States Trustee for Region 3, which bank shall then be appointed as successor Escrow Agent, and the Cubs Entities and Newco shall enter into an agreement with such bank in substantially the form of this Escrow Agreement.  Resignation by the Escrow Agent shall relieve the Escrow Agent of any responsibility or duty thereafter arising hereunder, but shall not relieve the Escrow Agent of responsibility to account to the Cubs Entities and Newco for funds received by the Escrow Agent prior to the effective date of such resignation.  If a substitute for the Escrow Agent is not selected within such 30-day period, Escrow Agent's sole responsibility shall be to hold the Escrow Amount (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of <u>Sections 12</u>, <u>16</u> and <u>21</u> hereunder.

11.   <u>Representations and Warranties of the Parties and the Escrow Agent</u>.

(a)   Each of the Parties represents and warrants to the Escrow Agent and the other Party as follows: (a) the execution and delivery of this Escrow Agreement and the consummation of the transactions contemplated hereby have been duly authorized by such Party and no other or further act or proceeding on the part of such Party is necessary to authorize this Escrow Agreement or the consummation of the transactions contemplated hereby, (b) this Escrow Agreement has been duly executed and delivered by such Party, (c) assuming the due execution and delivery by the Escrow Agent and each other Party hereto, this Escrow Agreement constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, and (d) neither the execution and delivery of this Escrow Agreement by such Party, nor the consummation by such Party of the transactions contemplated hereby, will violate any applicable statute, law (including common law), ordinance, rule or regulation or any order, writ, injunction, judgment, plan or decree of any government, court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality or other body, whether federal, state, municipal, county, local, foreign, supranational or other.

(b)   The Escrow Agent represents and warrants to the Parties as follows: (a) the execution and delivery of this Escrow Agreement and the consummation of the transactions contemplated hereby have been duly authorized by the Escrow Agent and no other or further act or proceeding on the part of the Escrow Agent is necessary to authorize this Escrow Agreement or the consummation of the transactions contemplated hereby, (b) this Escrow Agreement has been duly executed and delivered by the Escrow Agent, (c) assuming the due execution and

delivery by the Parties, this Escrow Agreement constitutes a valid and binding obligation of the Escrow Agent, enforceable against the Escrow Agent in accordance with its terms, and (d) to the knowledge of the officer signing this Escrow Agreement, without further investigation, neither the execution and delivery of this Escrow Agreement by the Escrow Agent, nor the consummation by the Escrow Agent of the transactions contemplated hereby, will violate any applicable statute, law (including common law), ordinance, rule or regulation or any order, writ, injunction, judgment, plan or decree of any government, court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality or other body, whether federal, state, municipal, county, local, foreign, supranational or other.

12. <u>Fees.</u>   Newco agrees to (a) pay the Escrow Agent for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule 4 attached hereto, and (b) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the performance of this Escrow Agreement, except for any expenses, disbursements or advances covered by the provisions of <u>Sections 16</u>, <u>17</u> or <u>21</u> hereof. If such amounts are unpaid, in whole or in part within 90 days of the issuance of the invoice, the Escrow Agent shall be entitled to deduct such amounts from the Escrow Account.  If sufficient income and/or principal funds are unavailable as compensation, the Escrow Agent may withhold disbursement of the Escrow Account until such compensation is paid.

13. <u>Payments.</u>  At any time the Escrow Agent is required to disburse any amounts held by it under any of the provisions of this Escrow Agreement to the Cubs Entities or Newco, such disbursement shall be effected by wire transfer pursuant to standing wire instructions provided by such Party as set forth on <u>Exhibit C</u> and in accordance with <u>Section 23(b)</u> hereunder.

14. <u>Notices.</u>  All notices and other communications hereunder will be in writing and given by (a) certified or registered mail, return receipt requested, (b) nationally recognized overnight delivery service, such as Federal Express, (c) facsimile (or like transmission) with confirmation of transmission by the transmitting equipment or (d) personal delivery against receipt to the Escrow Agent or the Party to whom it is given, in each case, at the Escrow Agent's or such Party's address or facsimile number set forth below or such other address or facsimile number as the Escrow Agent or such Party may hereafter specify by notice to the other parties hereto given in accordance herewith.  Any such notice or other communication shall be deemed to have been given and delivered upon actual receipt (or refusal of receipt).

If to the Escrow Agent:

      JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Laura L. Ramsey
      Facsimile:  (312) 954-0430

      JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Kevin Binninger
      Facsimile:  (312) 954-0430

      JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Kristina Matejic
      Facsimile:  (312) 954-0430

      JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Sonny Lui
      Facsimile:  (312) 954-0430

JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Rory Nowakowski
      Facsimile:  (312) 954-0430

      and

JPMorgan Chase Bank, N.A., as Escrow Agent
      420 W. Van Buren, Mail Code: IL1-0113
      Chicago, Illinois 60606
      Attention:  Susie Moy
      Facsimile:  (312) 954-0430

If to Newco:

      Ricketts Acquisition LLC
      c/o Incapital LLC
      200 South Wacker, Suite 3700
      Chicago, Illinois 60606

Attention:  Thomas Ricketts
Facsimile:  (312) 379-3701

with copies to (which shall not constitute notice):

Hugo Enterprises LLC
1395 South Platte River Drive
Denver, Colorado 80223
Attention:  Alfred P. Levitt
Facsimile:  (303) 200-7086

and

Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Attention:  Mary K. Braza and Patrick G. Quick
Facsimile:  (414) 297-4900

If to any Cubs Entity:

Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611
Attention:  General Counsel
Facsimile:  (312) 222-4206

with copies to (which shall not constitute notice)

McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
Attention:  Blake D. Rubin
Facsimile:  (202) 756-8087

McDermott Will & Emery LLP
227 West Monroe Street, Suite 4700
Chicago, Illinois 60606
Attention:  Brooks B. Gruemmer and Ryan D. Harris
Facsimile:  (312) 984-7700

Any Party and the Escrow Agent may change the address and/or facsimile number to
which notices, requests, demands, claims, and other communications are to be delivered
by giving each other Party notice in the manner set forth in this Section 14.  "Business
Day" shall mean any day other than a Saturday, Sunday or any other day on which the
Escrow Agent located at the notice address set forth above is authorized or required by
law or executive order to remain closed.

15.  <u>Captions</u>.  The Section captions used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Escrow Agreement.

16.  <u>Indemnification of Escrow Agent</u>.  The Cubs Entities and Newco, jointly and severally, agree to hold the Escrow Agent harmless, to defend and to indemnify the Escrow Agent and its affiliates and their respective successors, assigns, directors, officers, managers, attorneys, accountants, experts, agents and employees (each an "**Indemnitee**") against any loss, liability, claim or demand, damage, penalty, judgment, settlement, action, suit, proceeding, litigation, investigation, costs or expenses (including reasonable fees and expenses of the Escrow Agent's legal counsel) (each a "**Loss**") arising out of or in connection with (a) the performance of the Escrow Agent's obligations in accordance with the provisions of this Escrow Agreement, including, without limitation, tax reporting or withholding obligations under or in connection with this Escrow Agreement or the enforcement of any of the Escrow Agent's rights or remedies under or in connection with this Escrow Agreement, except to the extent that such Loss is finally adjudicated by a court of competent jurisdiction to have been caused by the gross negligence or willful misconduct of the Escrow Agent, or (b) the Escrow Agent following any joint instructions, or other joint direction from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms thereof. Solely as between each other, the Cubs Entities, on the one hand, and Newco, on the other hand, shall each bear fifty percent (50%) of any Loss in connection with such indemnification.  To the extent amounts are set off or otherwise deducted from the Escrow Account by the Escrow Agent, the Cubs Entities, on the one hand, or Newco, on the other hand, shall reimburse each other as appropriate depending on whether the amounts set off or deducted were ultimately determined to be for the account of the Cubs Entities, on the one hand, or Newco, on the other hand.  The Parties hereby grant the Escrow Agent a lien on, right of set-off against and security interest in, the Escrow Amount for the payment of any claim for indemnification, fees, expenses and amounts due hereunder, which lien and security interest shall be deemed automatically released from amounts disbursed hereunder, which amounts, for the avoidance of doubt, shall then be free and clear of any such lien or security interest. The obligations, including, without limitation, the indemnity obligations, in this <u>Section 16</u> shall survive termination of this Escrow Agreement and the resignation, replacement or removal of the Escrow Agent.

17.  <u>Disagreements</u>.  If any disagreement or dispute arises between the Parties concerning the interpretation of this Escrow Agreement, or about the rights and obligations or the propriety of any action contemplated by the Escrow Agent under this Escrow Agreement, then the Escrow Agent may, if such disagreement continues for 60 days or more, file an action of interpleader in the Applicable Court and deposit all (or, if less, the disputed portion) of the Escrow Account with such court.  The reasonable fees and costs of the Escrow Agent attendant to such interpleader action shall be paid equally by the Cubs Entities, on the one hand, and Newco, on the other hand.

18.  <u>Right to Withhold Escrow Amount</u>.  The Escrow Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Escrow Amount for its own account or for the account of an Indemnitee, as applicable, any amount due to the Escrow Agent or to such Indemnitee under this Escrow Agreement,

including, without limitation, Sections 10, 12, 16 and 21 hereof; provided, to the extent the Escrow Agent withdraws an amount in excess of the amount due to the Escrow Agent or to such Indemnitee, the Escrow Agent shall promptly return such funds to the Escrow Account.

19.    Assignment.  This Escrow Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Cubs Entities and Newco and their respective successors and assigns.  Neither this Escrow Agreement nor any rights, benefits or obligations set forth herein may be assigned by the Cubs Entities or Newco without the prior written consent of Cubs LLC and Newco, provided, however, that notwithstanding the foregoing, (i) Newco may assign its rights under this Escrow Agreement without the consent of the Cubs LLC for collateral security purposes to any lenders providing financing to Newco or any Newco Sub and (ii) each Cubs Entity may assign its rights and obligations under this Escrow Agreement without the consent of Newco to any wholly owned Subsidiary of Tribune to which such Cubs Entity's rights and obligations under the Formation Agreement are validly assigned in accordance with the terms of the Formation Agreement.  No assignment of the interests of any of the Parties shall be binding on the Escrow Agent unless and until notice of such assignment shall be filed with and accepted by the Escrow Agent.  Any purported assignment in violation of this Escrow Agreement shall be null and void ab initio.

20.    No Special or Consequential Damages.  IN NO EVENT SHALL THE ESCROW AGENT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, INDIRECT OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY KIND WHATSOEVER (INCLUDING BUT NOT LIMITED TO LOST PROFITS AND DIMINUTION IN VALUE), EVEN IF THE ESCROW AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

21.    Litigation; Agents.  If the Escrow Agent becomes involved in litigation on account of this Escrow Agreement, then the Escrow Agent shall (a) have the right to retain counsel, (b) have a first lien on the amounts then in the Escrow Account for any and all reasonable costs, attorneys' fees, charges, disbursements, and expenses in connection with such litigation ("**Litigation Costs**"), and (c) be entitled to reimburse itself therefor out of the Escrow Account.  If the Escrow Agent shall be unable to reimburse itself from the Escrow Account, then the Cubs Entities and Newco agree jointly and severally to pay to the Escrow Agent on demand such Litigation Costs; provided, however, that the Cubs Entities, on the one hand, and Newco, on the other hand, shall each be responsible for fifty percent (50%) of such Litigation Costs.  To the extent amounts are set off or otherwise deducted from the Escrow Account by the Escrow Agent, the Cubs Entities, on the one hand, or Newco, on the other hand, shall reimburse each other as appropriate depending on whether the amounts set off or deducted were ultimately determined to be for the account of the Cubs Entities, on the one hand, or Newco, on the other hand. Notwithstanding the foregoing, if any such litigation is filed in respect of the gross negligence or willful misconduct of the Escrow Agent, and it is finally adjudicated by a court of competent jurisdiction there shall have been gross negligence or willful misconduct on the part of the Escrow Agent, the Escrow Agent will promptly reimburse

any Litigation Costs which have either been reimbursed to the Escrow Agent from the Escrow Account or paid to Escrow Agent by Newco or the Cubs Entities.

22.  <u>Successor to Escrow Agent</u>.  Any banking association or corporation into which the Escrow Agent may be merged or converted or with which the Escrow Agent may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Escrow Agent shall be a party, or any banking association or corporation to which all or substantially all of the escrow business of the Escrow Agent shall be transferred, shall succeed to all the Escrow Agent's rights, obligations and immunities hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

23.  <u>Security Procedures</u>.

(a)    In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule 3</u> hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on <u>Schedule 3</u>.  The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent.  If for any reason the Escrow Agent is unable to contact any of the persons designated on <u>Schedule 3</u> attached hereto, it is understood and agreed by the Parties that the Escrow Agent's sole responsibility will be to retain such Escrow Amount and release it only upon the confirmation of the required telephone call-back procedures described in this <u>Section 23</u>.  The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by either Party to identify (i) the beneficiary, (ii) the beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Parties acknowledge that these security procedures are commercially reasonable.

(b)    Additionally, pursuant to <u>Section 14</u> of this Escrow Agreement, the Parties acknowledge that repetitive funds transfer instructions have been given to the Escrow Agent for various specified beneficiaries where only the date of the requested transfer, the amount of funds to be transferred, and/or the description of the payment shall change within the repetitive instructions ("**Standing Settlement Instructions**"). Such Standing Settlement Instructions are set forth in <u>Exhibit C</u>.  Escrow Agent may rely solely upon such Standing Settlement Instructions and all identifying information set forth therein for such specified beneficiaries.  Escrow Agent and Parties agree that such Standing Settlement Instructions shall be effective as the funds transfer instructions of such specified

beneficiaries, without requiring a verifying callback, whether or not authorized, if such Standing Settlement Instructions are consistent with previously authenticated Standing Settlement Instructions for such specified beneficiaries. The Parties acknowledge that such Standing Settlement Instructions are a security procedure and are commercially reasonable.

24.    Court Orders. In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court of competent jurisdiction, or any order, judgment or decree shall be made or entered by any order of a court of competent jurisdiction affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree being subsequently reversed, modified, annulled, set aside or vacated.

25.    Governing Law. This Escrow Agreement, and any disputes arising hereunder or controversies related hereto, shall be governed by and construed in accordance with the laws of the State of Delaware that apply to contracts made and performed entirely within such state without regard to any choice or conflict of Law provision or rule (whether of the State of Delaware or any other jurisdiction) to the extent they would result in the application of the Laws of another jurisdiction.

26.    Force Majeure. The Escrow Agent shall not be liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

27.    Exclusive Jurisdiction. Any Action with respect to this Escrow Agreement and any matter arising out of or in connection with this Escrow Agreement shall be brought exclusively in and determined by (i) the Bankruptcy Court if the Bankruptcy Case is pending or (ii) the state or federal courts sitting in the State of Delaware if the Bankruptcy Case is not pending (in either case, the "**Applicable Court**"). The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising out of or relating to this Escrow Agreement.

28.    Action in Interpleader. The Parties expressly agree that the Escrow Agent has the absolute right at the Escrow Agent's election to file an action in the Applicable Court in interpleader requiring the Parties (other than the Escrow Agent) to answer and litigate their several claims and rights among themselves and the Escrow Agent is hereby authorized to deposit with the clerk of the Applicable Court all of the Escrow Amount that is held pursuant to this Escrow Agreement. In the event such an action is filed, the Parties jointly and severally agree to pay all of the Escrow Agent's charges, costs, expenses and reasonable attorney's fees.

29.    Counterparts.    This Escrow Agreement may be executed (including by facsimile transmission) with counterpart signature pages or in two or more counterparts, all of which taken together shall constitute one instrument.

30.    Account Opening Information/Taxpayer Identification Numbers; Tax Reporting.

(a)    To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. When an account is opened, we will ask for information that will allow us to identify relevant parties.

(b)    Taxpayer Identification Numbers ("TINs").  The Cubs Entities and Newco have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. The Cubs Entities and Newco each represent that its correct TIN assigned by the IRS, or any other taxing authority, is set forth in the delivered forms.

(c)    Tax Reporting.  The Cubs Entities and Newco further represent to the Escrow Agent that the transaction memorialized in the Formation Agreement does not: (i) constitute an installment sale requiring any tax reporting or withholding of imputed interest or original issue discount to the IRS or other taxing authority; and (ii) that no portion of the principal amount of the Initial Escrow Amount represents any portion of the purchase price for shares of stock under the Formation Agreement.

In addition, all interest or other income earned under the Escrow Agreement shall be allocated to the Cubs Entities in accordance with the allocation set forth in Schedule 2, and reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Account by the Cubs Entities whether or not said income has been distributed during such year. Any other tax returns required to be filed will be prepared and filed by the Cubs Entities and/or Newco with the IRS and any other taxing authority as required by law, including but not limited to any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). The Cubs Entities and Newco acknowledge and agree that Escrow Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to the Initial Escrow Amount or any income earned by the Initial Escrow Amount. The Cubs Entities and Newco further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Account shall be paid by the Cubs Entities. In the absence of written direction from the Cubs Entities and Newco, all proceeds of the Initial Escrow Amount shall be retained in the Escrow Account and reinvested from time to time by the Escrow Agent as provided in this Agreement. Escrow Agent shall withhold any taxes on the income earned on the investment of any sums held in the Escrow Account to the extent such

withholding is required by applicable law, and shall remit such taxes to the appropriate taxing authorities.

\* \* \* \* \* \*

CHIC_4410562.1

IN WITNESS WHEREOF, the undersigned have duly caused this Escrow Agreement to be executed as of the date first written above.

**JPMORGAN CHASE BANK, N.A., as Escrow Agent**

By: _____

Name: _____

Its: _____


**CHICAGO BASEBALL HOLDINGS, LLC**

By: _____

Name:

Its:

**CHICAGO NATIONAL LEAGUE BALL CLUB, LLC**

By: _____
Name:
Its:


**WRIGLEY FIELD PREMIUM TICKET SERVICES, LLC**

By: _____
Name:
Its:


**DIANA-QUENTIN, LLC**

By: _____
Name:
Its:


**CHICAGO CUBS DOMINICAN BASEBALL OPERATIONS, LLC**

By: _____
Name:
Its:


**TRIBUNE SPORTS NETWORK HOLDINGS, LLC**

By: _____
Name:
Its:

## EXHIBIT A

### JOINT RELEASE CERTIFICATE

TO:       _____

               _____

               _____

               Attention:_____

               Facsimile:_____

This certificate is issued pursuant to that certain Indemnity Escrow Agreement, dated _____ _____, 2009, by and among Chicago National League Ball Club, LLC, Chicago Baseball Holdings LLC, [_____], as the Escrow Agent, and the other Parties signatory thereto.  Capitalized terms herein shall have the meaning ascribed to them in said Escrow Agreement.

[The parties to this certificate are now jointly instructing the Escrow Agent to pay an amount equal to $_____ out of the Escrow Amount to _____.]

Each of the undersigned hereby represents and warrants that it has been authorized to execute this certificate.  This certificate may be signed in counterparts.

CHICAGO NATIONAL LEAGUE        CHICAGO BASEBALL HOLDINGS, LLC
BALL CLUB, LLC

By: _____     By: _____
Name:_____     Name:_____
Title:_____     Title:_____

## EXHIBIT B

### NEWCO RELEASE CERTIFICATE

TO:     _____
        _____
        _____
        Attention:_____
        Facsimile:_____

        Tribune Company
        435 North Michigan Avenue
        Chicago, Illinois 60611
        Attention:  General Counsel
        Facsimile:  (312) 222-4206

        This certificate is issued pursuant to <u>Section 5(b)</u> of that certain Indemnity Escrow Agreement, dated _____ ____, 2009, by and among Chicago National League Ball Club, LLC, Chicago Baseball Holdings, LLC, [_____], as the Escrow Agent, and the other Parties signatory thereto.  Capitalized terms herein shall have the meaning ascribed to them in said Escrow Agreement.

        Subject to the terms of the Escrow Agreement, Newco is notifying the Escrow Agent and Cubs LLC of this Claim under the Formation Agreement for $_____ out of the Escrow Amount to be paid to _____ (the "**Claim**").

        [Newco to describe in reasonable detail the events giving rise to the Claim, including, if applicable, specifying the relevant detail required by Article VIII of the Formation Agreement.]

                                CHICAGO BASEBALL HOLDINGS, LLC

                                By: _____
                                Name:_____
                                Title:_____

# EXHIBIT C

## WIRE INSTRUCTIONS

Newco or Newco Subs:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

_____

Cubs LLC:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

_____

DQ LLC:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

_____

Dominican LLC:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

Bidder:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

_____

Tribune Sports:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

_____

Premium Tickets LLC:

_____
_____
ABA # _____
Acct. # _____
Acct. Name: _____

## SCHEDULE 1

### APPROVED INVESTMENTS

During the term of this Escrow Agreement, the Escrow Amount shall be invested in a JPMorgan Chase Bank, N.A. money market deposit account ("**MMDA**"), or a successor or similar investment offered by the Escrow Agent, unless otherwise instructed in writing by the Parties and as shall be acceptable to the Escrow Agent. The rate of return on an MMDA varies from time to time based upon market conditions.

# SCHEDULE 2

## CUBS ENTITIES' ALLOCATIONS

| Cubs Entity | Allocation | Tax Identification Number |
|---|---|---|
| Cubs LLC | | |
| DQ LLC | | |
| Dominican LLC | | |
| Tribune Sports | | |
| Premium Tickets LLC | | |
| Total | 100% | |

## SCHEDULE 3

**Telephone Number(s) and authorized signature(s) for**

**Person(s) Designated to give Funds Transfer Instructions**

If to Cubs Entities:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

If to Newco:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

**Telephone Number(s) for Call-Backs and**

**Person(s) Designated to Confirm Funds Transfer Instructions**

If to Cubs Entities:

| <u>Name</u> | <u>Telephone Number</u> |
|---|---|
| 1. _____ | _____ |
| 2. _____ | _____ |
| 3. _____ | _____ |

If to Newco:

| Name | Telephone Number |
|------|------------------|
| . _____ | _____ |
| 2. _____ | _____ |
| 3. _____ | _____ |

Telephone call backs may be made to both Parties if joint instructions are required pursuant to the agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer.



## Schedule 4
### Escrow Agent's Compensation:

**New Account Acceptance Fee** . . . . . . . . . . . . . . . . . . **$500**
One-time fee payable upon Account Opening

A New Account Acceptance Fee will be charged for the Bank's review of the Escrow Agreement along with any related account documentation.

**Annual Administrative Fee** . . . . . . . . . . . . . . . . . . . . **$3,000**
Payable upon Account Opening and in Advance
of each year of service as Escrow Agent

The Annual Administrative Fee will cover the Bank's standard Escrow services including, but not limited to, account setup, safekeeping of assets, investment of funds, collection of income and other receipts, preparation of statements comprising account activity and asset listing, and distribution of assets in accordance with the specific terms of the Escrow Agreement. These fees cover a full year, or any part thereof, and thus are not prorated in the year of termination. The account will be invoiced in the month in which the account is opened and annually thereafter. Payment of the invoice is due 30 days following receipt.

*Out-of-Pocket Expenses:*

Any reasonable out-of-pocket expenses including attorney's fees will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at cost.

*Modification of Fees:*

Circumstances may arise necessitating a change in the foregoing fee schedule. The Bank will maintain the fees at a level that is fair and reasonable in relation to the responsibilities assumed and the duties performed.

*Disclosure & Assumptions:*

- The fees quoted in this schedule assume that the escrow deposit will be continuously invested in the JPMorgan Chase Bank Money Market Account.
- Disbursements, receipts, investments or tax reporting exceeding 25 items per year may be treated as extraordinary services thereby incurring additional charges.
- U.S. law permits the parties to make up to six (6) pre-authorized withdrawals from an MMDA per calendar month or statement cycle or similar period. If the MMDA can be accessed by checks, drafts, bills of exchange, notes and other financial instruments ("**Items**"), then no more than three (3) of these six (6) transfers may be made by an Item. The Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from an MMDA. The Escrow Agent does not presently exercise this right.