**EXHIBIT T**

## CLOSING ESCROW AGREEMENT

THIS CLOSING ESCROW AGREEMENT (this "**Closing Escrow Agreement**"), dated as of [_____], 2009, is by and among Chicago Baseball Holdings, LLC, a Delaware limited liability company ("**Newco**"), Ricketts Acquisition LLC, a Delaware limited liability company ("**Bidder**"), Tribune Company, a Delaware corporation ("**Tribune**"), Tribune Sports Network Holdings, LLC, a Delaware limited liability company ("**Tribune Sports**"), Chicago National League Ball Club, LLC, a Delaware limited liability company ("**Cubs LLC**"), Wrigley Field Premium Ticket Services, LLC, a Delaware limited liability company ("**Premium Tickets LLC**"), Diana-Quentin, LLC, a Delaware limited liability company ("**DQ LLC**"), Chicago Cubs Dominican Baseball Operations, LLC, a Delaware limited liability company ("**Dominican LLC**," and together with Tribune Sports, Cubs LLC, Premium Tickets LLC and DQ LLC, the "**Cubs Entities**," and the Cubs Entities together with Tribune are collectively referred to herein as the "**Tribune Parties**"), Chicago Baseball Holdings, LLC, a Delaware limited liability company, as agent (the "**Subordinated Lender Agent**") for RAC Education Trust Finance, LLC, a Delaware limited liability company, and each other Person providing Subordinated Debt Financing in accordance with the Formation Agreement (as defined below) (each, a "**Subordinated Lender**"), JPMorgan Chase Bank, N.A., as collateral agent for the Bank Lenders (as defined below) (in such capacity, the "**Senior Bank Lender Agent**"), MMR Investors LLC, a Delaware limited liability company (the "**Family Lender**"), and JPMorgan Chase Bank, N.A., as escrow agent (in such capacity, the "**Closing Agent**"). Newco, Bidder, the Tribune Parties, the Subordinated Lender Agent, the Senior Bank Lender Agent, the Family Lender and the Closing Agent are sometimes referred to collectively herein as the "**Parties**."

WHEREAS, Bidder, the Tribune Parties and RAC Education Trust OSA, LLC ("**Ricketts Lender**") have entered into the Formation Agreement, dated as of August 21, 2009 (together with all amendments, supplements, or modifications, the "**Formation Agreement**");

WHEREAS, Article I of the Formation Agreement contemplates that Bidder, the Tribune Parties, the Senior Lenders and the Subordinated Lenders, on the Escrow Closing Date, shall (i) deliver, or cause to be delivered, to the Closing Agent the Closing Senior Debt Documents, the Closing Subordinated Debt Documents, the Tribune Escrow Documents, the Bidder Escrow Documents (other than any Real Estate Escrow Documents) (the "**Closing Bidder Escrow Documents**") and the Newco Escrow Documents (other than any Real Estate Escrow Documents) (the "**Closing Escrow Newco Sale Documents**"), and (ii) as applicable, deposit an amount of cash equal to $_____[1] (the "**Equity Financing**") and an amount of cash equal to $_____[2] (the "**Subordinated Debt Financing**"), in all cases, to be held by the Closing Agent for delivery and distribution (as applicable) in accordance with the terms of this Closing Escrow Agreement;

WHEREAS, Article I of the Formation Agreement contemplates that the Senior Lenders, on the Escrow Closing Date, shall deliver, or cause to be delivered, to the Senior Bank Lender

---

[1] Amount to be determined as set forth in subpart (i) of the definition of Equity Financing in the Formation Agreement.
[2] Amount to be determined as set forth in the definition of Subordinated Debt Financing in the Formation Agreement.

Agent an amount of cash equal to $[425],000,000[3] (the "**Senior Bank Debt Financing**") to be held by the Senior Bank Lender Agent in trust for such Senior Lenders for delivery to the Closing Agent upon the satisfaction of certain conditions in accordance with the Bank Credit Agreement.

WHEREAS, Section 2.01 of the Credit Agreement dated as of the date hereof among Newco and the Lenders party thereto (the "**Bank Lenders**") and the Senior Bank Lender Agreement (the "**Bank Credit Agreement**") contemplates that the Bank Lenders shall deliver to the Senior Bank Lender Agent an aggregate amount of cash equal to $[425],000,000 (the "**Senior Bank Debt Financing**"), to be held in trust by the Senior Bank Lender Agent for the benefit of the Bank Lenders as provided therein and to be released to the Closing Agent in accordance with the terms thereof (the "**Senior Bank Debt Financing Release**");

WHEREAS, the Equity Commitment Letter contemplates that, in addition to the funding of the Equity Financing to Newco, Bidder, on the Escrow Closing Date, shall deposit an amount of cash equal to $35,000,000 (the "**Ricketts Lender Equity Financing**") to be held by the Closing Agent for distribution in accordance with the terms of this Closing Escrow Agreement;

WHEREAS, the Subordinated Debt Commitment Letter contemplates that, in addition to the funding of some or all of the Subordinated Debt Financing, on the Escrow Closing Date, Family Lender shall deposit an amount of cash equal to $20,000,000 (the "**GuarantyCo Financing**") to be held by the Closing Agent for distribution in accordance with this Closing Escrow Agreement; and

WHEREAS, the Parties desire to enter into this Closing Escrow Agreement to set forth the terms and conditions with respect to the documents and funds held by the Closing Agent.

NOW, THEREFORE, the Parties agree as follows:

1.    <u>Terms</u>.  Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Formation Agreement as in effect on the date hereof.

2.    <u>Closing Agent</u>.  The Parties hereby designate and appoint the Closing Agent to serve in such capacity in accordance with the terms, conditions and provisions of this Closing Escrow Agreement, and the Closing Agent agrees to act as such, upon, and subject to, the terms, conditions and provisions of this Closing Escrow Agreement.

3.    <u>Bidder Escrow Deliveries</u>.  Bidder has delivered, or caused to be delivered, to the Closing Agent (i) an amount of cash equal to the Equity Financing by wire transfer of immediately available funds, (ii) original counterparts of each of the Closing Bidder Escrow Documents (each of which is identified on <u>Schedule 4</u> hereto) and the Closing Escrow Newco Sale Documents (each of which is identified on <u>Schedule 5</u> hereto) duly executed but undated where applicable in accordance with Section 1.4 of the Formation

---

[3] Amount to be equal to the amount of Senior Debt Financing, other than the amount of the Revolver, as determined in accordance with the Formation Agreement.

- 2 -

Agreement (collectively, the "**Bidder Transaction Escrow Documents**"), and (iii) an amount of cash equal to the Ricketts Lender Equity Financing by wire transfer of immediately available funds. By its execution of this Closing Escrow Agreement on the Escrow Closing Date, Tribune confirms and acknowledges that the Bidder Transaction Escrow Documents, as delivered by Bidder, comply with Section 1.4 of the Formation Agreement, that it has reviewed the Bidder Transaction Escrow Documents and that the delivery of such items constitutes the delivery of all items required to be delivered to the Closing Agent pursuant to Section 1.4(c) and Section 1.4(f) of the Formation Agreement by Bidder, Newco or any Newco Sub.

4.      Tribune Parties' Escrow Deliveries. The Tribune Parties have delivered, or caused to be delivered, to the Closing Agent original counterparts of each of the Tribune Escrow Documents (each of which is identified on Schedule 6 hereto), duly executed but undated where applicable in accordance with Section 1.4 of the Formation Agreement. By its execution of this Closing Escrow Agreement on the Escrow Closing Date, Bidder confirms and acknowledges that the Tribune Escrow Documents, as delivered by the Tribune Parties, comply with Section 1.4 of the Formation Agreement, that it has reviewed the Tribune Escrow Documents and that the delivery of such items constitutes the delivery of all items required to be delivered pursuant to Section 1.4(a) of the Formation Agreement, respectively, by the Tribune Parties thereunder.

5.      Other Deliveries.

(a)     Subordinated Debt Financing Deliveries. The Subordinated Lenders have delivered to the Closing Agent (i) an amount of cash equal to the Subordinated Debt Financing by wire transfer of immediately available funds and (ii) the Closing Subordinated Debt Documents (each of which is identified on Schedule 7 hereto), duly executed but undated by each Subordinated Lender. By its execution of this Closing Escrow Agreement on the Escrow Closing Date, the Closing Subordinated Lender Agent confirms and acknowledges that the Subordinated Debt Documents constitute all remaining agreements, certificates and other documents necessary to consummate the Subordinated Debt Financing.

(b)     Senior Debt Financing Deliveries. The Senior Lenders have delivered to the Closing Agent the Closing Senior Debt Documents (which are identified on Schedule 8 hereto), each duly executed but undated by each Senior Lender party thereto. By its execution of this Closing Escrow Agreement on the Escrow Closing Date, the Senior Bank Lender Agent confirms and acknowledges that the Closing Senior Debt Documents constitute all remaining agreements, certificates and other documents necessary to consummate the Senior Debt Financing.

(c)     Family Lender Financing Deliveries. The Family Lender has delivered to the Closing Agent the GuarantyCo Financing by wire transfer of immediately available funds.

6.      Exclusions from Escrow. For the avoidance of doubt, and notwithstanding anything to the contrary in this Closing Escrow Agreement, the Formation Agreement or any other

- 3 -

**Error! Unknown document property name.**

agreement, instrument, certificate or document, the Parties acknowledge, agree and confirm that:

(a)    other than upon the Senior Bank Debt Financing Release, no portion of the Senior Bank Debt Financing is being held in escrow pursuant to this Closing Escrow Agreement and none of the Senior Bank Lender Agent, any Bank Lender nor any other Secured Party (as defined in the Bank Credit Agreement) has any obligation under this Closing Escrow Agreement to deliver or otherwise make available any portion of the Senior Bank Debt Financing;

(b)    none of the Senior Bank Lender Agent, any Bank Lender nor any other Secured Party shall have any obligation whatsoever to fund, deliver or otherwise make available any portion of the Senior Bank Debt Financing unless and until (i) all of the conditions set forth in Sections 4.01 and 4.02 of the Bank Credit Agreement have been satisfied or waived in accordance with the Bank Credit Agreement (and, in such event, such obligation shall be owed solely and exclusively to Newco and not to any other Party or any other person or entity), and (ii) the full amount of the Equity Financing, the Ricketts Lender Equity Financing, the GuarantyCo Financing and the Subordinated Debt Financing has been received by the Closing Agent (or the other applicable Party specified in <u>Section 10</u> below) in accordance with the terms of <u>Section 10</u>; and

(c)    each of the Bank Credit Agreement, _____ and _____ (collectively, the "**Excluded Bank Documents**") has previously been executed and delivered by each party thereto and has become effective in accordance with its terms and is not being held in escrow, whether pursuant to this Closing Escrow Agreement or otherwise.

7.    <u>Preliminary Statement</u>. On or prior to the third Business Day prior to the Closing Date, the Tribune Parties shall deliver, or cause to be delivered, to Bidder and the Closing Agent a copy of the Preliminary Statement, which shall identify the calculation by the Tribune Parties of the Estimated Special Distribution Amount, the allocation of the Estimated Special Distribution Amount among the Cubs Entities, and the other items required to be included therein under Section 1.5(a) of the Formation Agreement. The Preliminary Statement and amounts contained therein shall form the basis of the calculation of the Estimated Special Distribution Amount to be disbursed in accordance with <u>Section 10</u> below.

8.    <u>Expenses</u>. No less than two Business Days prior to Closing, (i) Tribune shall deliver to Bidder and the Closing Agent, pursuant to Section 4.21(b) of the Formation Agreement, the Cubs Expense Notice and (ii) Bidder shall deliver to Tribune and the Closing Agent, pursuant to Section 4.21(a) of the Formation Agreement, the Final Transaction Expense Notice. If the Specified Amount based on the Final Transaction Expense Notice exceeds the Specified Amount based on the Transaction Expense Notice (such excess, the "**Excess Amount**"), then Bidder shall deliver immediately available funds in the amount of the Excess Amount to the Closing Agent at least one Business Day prior to Closing. If the Specified Amount based on the Final Transaction Expense Notice is less than the

- 4 -

**Error! Unknown document property name.**

Specified Amount based on the Transaction Expense Notice (such difference, the "**Difference**"), then the Tribune Parties and Bidder shall jointly instruct the Closing Agent in writing to release funds in the amount of the Difference to Bidder at Closing.

9.      Investment of Escrow Funds.

(a)      The amount of cash with respect to each of the Equity Financing, the Subordinated Debt Financing, the GuarantyCo Financing and the Ricketts Lender Equity Financing deposited with the Closing Agent (collectively, the "**Escrow Funds**") shall be deposited in and maintained at all times in separate segregated accounts with respect to each depositor of such funds in accordance with Schedule 2 attached hereto (the "**Escrow Accounts**"). The Closing Agent shall invest the Escrow Funds in the investments set forth on Schedule 1 attached hereto.

(b)      The Closing Agent shall report to Bidder, Tribune, Newco, the Subordinated Lenders and Family Lender, on an annual basis or upon any written request therefor, the aggregate amount of the income, interest and realized gains attributable to funds in the Escrow Accounts (collectively, the "**Escrow Earnings**") on which Taxes are then due and payable (such Taxes, the "**Escrow Taxes**"). Bidder, with respect to the Equity Financing funds and Ricketts Lender Equity Financing funds deposited into Escrow Accounts, Family Lender, with respect to the GuarantyCo Financing deposited into an Escrow Account, and the Subordinated Lenders, with respect to the funds deposited into all other Escrow Accounts, shall report as income to such Party the amount of such Escrow Earnings attributable to the applicable Escrow Account to the appropriate taxing authorities and shall pay the Escrow Taxes. All Escrow Earnings on each of the Escrow Accounts shall be treated by the Closing Agent for income tax purposes as earned by Bidder, with respect to the Escrow Accounts into which the Equity Financing funds and Ricketts Lender Equity Financing funds were deposited; Family Lender with respect to the Escrow Account into which the GuarantyCo Financing was deposited; or the Subordinated Lenders, with respect to all other Escrow Accounts. The tax identification numbers of Bidder, Family Lender and the Subordinated Lenders for this purpose are set forth on Schedule 2. Escrow Earnings shall be added to the applicable Escrow Account (but shall otherwise be attributed and distributed in accordance with Section 10 hereof). The Closing Agent shall provide Bidder, Tribune, Newco, the Subordinated Lenders and the Family Lender with monthly statements regarding transactions with respect to the Escrow Funds.

(c)      (i) The Escrow Earnings on the Escrow Accounts into which the Equity Financing funds and Ricketts Lender Equity Financing funds are deposited shall be allocated to Bidder, (ii) the Escrow Earnings on the Escrow Account into which the GuarantyCo Financing funds are deposited shall be allocated to Family Lender and (iii) the Escrow Earnings on all other Escrow Accounts shall be allocated to the Subordinated Lenders.

- 5 -

10.    <u>Disbursement of Closing Escrow Documents and Escrow Funds</u>.

    (a)    Immediately upon receipt by the Closing Agent of a joint certificate (the "**Closing Confirmation Certificate**"), in the form of <u>Exhibit C</u> attached hereto, as duly executed by an authorized officer of each of Bidder and Tribune certifying that the conditions to Closing set forth in Section 7.4 of the Formation Agreement have been satisfied or waived, and setting forth the Specified Amount and the Estimated Special Distribution Amount, but without the need for any further action or notice by any Party, the Closing shall automatically be deemed to have occurred and the following actions shall occur immediately in the following order in accordance with the Formation Agreement:

        (i)    The Closing Agent shall date each Cubs Bill of Contribution as of the date the Closing Agent received the Closing Confirmation Certificate (the "**Closing Date**") and release and deliver such documents to Newco;

        (ii)    The Closing Agent shall date each Cubs Assumption Agreement as of the Closing Date and release and deliver such documents to Tribune and Newco;

        (iii)    The Closing Agent, on behalf of Bidder, shall deliver the Specified Amount to Newco and such amount shall be treated as a capital contribution to Newco by Bidder; provided that Newco hereby authorizes the Closing Agent to retain such Specified Amount in the Escrow Account on behalf of Newco pending release as set forth in <u>clause (xvi)</u> below;

        (iv)    The Closing Agent shall date the Newco LLC Agreement as of the Closing Date and release and deliver the Newco LLC Agreement to the Tribune Member and Bidder;

        (v)    The Closing Agent shall disburse the Escrow Earnings in accordance with the allocations provided for in <u>Section 9(c)</u>;

        (vi)    The Closing Agent shall date each undated Bidder Transaction Escrow Document, the Closing Subordinated Debt Documents, the Closing Senior Debt Documents and the Tribune Guarantees as of the Closing Date and release and deliver such documents to the Senior Bank Lender Agent, the Subordinated Lender Agent, Bidder and Newco;

        (vii)    In the event that (A) the Senior Bank Lender Agent delivers the Senior Bank Debt Financing to the Closing Agent pursuant to Section 2.04(a) of the Bank Credit Agreement (it being acknowledged that the Senior Bank Lender Agent shall have no obligation to deliver such amount unless and until all of the conditions set forth in Sections 4.01 and 4.02 of the Bank Credit Agreement have been satisfied or waived and, in such event, such obligation shall be owed solely and exclusively to Newco and not to any other Party or any other person or entity);

- 6 -

(viii)    The Closing Agent shall, on behalf of Newco, distribute the Estimated Special Distribution Amount less $15,000,000 (the "**Indemnity Escrow Initial Amount**") to the Cubs Entities as set forth on the Preliminary Statement, which amount, to the extent of the availability of such funds, shall be disbursed (1) first, out of the Senior Debt Financing (other than the Revolver), (2) second, out of the Subordinated Debt Financing and (3) third, out of the Equity Financing;

(ix)    The Closing Agent shall, on behalf of Newco, transfer the Indemnity Escrow Initial Amount to the Indemnity Escrow Account, (1) first, out of the Subordinated Debt Financing, to the extent of funds remaining after the distribution contemplated by clause (viii)(2) above and (2) second, out of the Equity Financing;

(x)    The Closing Agent shall, on behalf of all parties, date all undated Closing Escrow Documents as of the Closing Date;

(xi)    The Closing Agent shall (A) on behalf of Bidder, release and deliver all remaining Closing Bidder Escrow Documents to Tribune Parties, (B) on behalf of Tribune Parties, release and deliver all remaining Tribune Escrow Documents to Bidder, and (C) on behalf of Newco, release and deliver all Closing Escrow Newco Sale Documents to Bidder;

(xii)    The Closing Agent shall, on behalf of Newco or Newco Subs, disburse funds to pay the amount of the Cubs Expenses in accordance with the Cubs Expense Notice, which amount, to the extent of the availability of such funds, shall be disbursed out of the funds remaining after the disbursements in clauses (viii) and (ix) above;

(xiii)    The Closing Agent shall, on behalf of Newco or Newco Subs, pay the Covered Transaction Expenses in accordance with the Final Transaction Expense Notice, which amount, to the extent of the availability of such funds, shall be disbursed out of the funds remaining after the disbursements in clauses (viii) and (ix) above;

(xiv)    The Closing Agent shall, on behalf of Family Lender, distribute the full amount of the GuarantyCo Financing to the Blocked Account as set forth in the Tax Matters Agreement by wire transfer of immediately available funds to the following account [_____];

(xv)    The Closing Agent shall, on behalf of Bidder, distribute the full amount of the Ricketts Lender Equity Financing to Ricketts Lender; and

(xvi)    The Closing Agent shall disburse any remaining Escrow Funds to Newco.

(b)    Upon any termination of the Formation Agreement, authorized officers of each of Bidder and Tribune shall promptly execute a joint notice of such termination (the

CHIC_4410550.2
**Error! Unknown document property name.**

"**Joint Notice**") and deliver the Joint Notice to the Closing Agent. Upon the Closing Agent's receipt of the Joint Notice (or, in the absence of such notice, a written, final nonappealable order of a court of competent jurisdiction that includes a specific finding that the Formation Agreement has been terminated), all Closing Escrow Documents shall be deemed void and of no further force and effect and shall be returned to the depositing Party and the Escrow Funds shall be disbursed as follows: (1) the funds in the segregated Escrow Accounts with respect to the Subordinated Debt Financing shall be disbursed to the respective Subordinated Lenders, (2) the funds in the segregated Escrow Accounts with respect to the Equity Financing and Ricketts Lender Equity Financing shall be disbursed to Bidder, (3) if, notwithstanding Section 6(b), there are any funds in the segregated Escrow Accounts with respect to the Senior Debt Financing shall be disbursed to the respective Senior Lenders and (4) the funds in the segregated Escrow Accounts with respect to the GuarantyCo Financing, such funds shall be disbursed to the Family Lender. The Subordinated Lender Agent, on behalf of the Subordinated Lenders, acknowledges and agrees that any Escrow Earnings disbursed to the Subordinated Lenders shall be offset against any interest and fees owing by Bidder or Newco in respect of the Subordinated Debt Financing.

11.    Responsibilities of the Closing Agent. The Closing Agent shall have no duties or responsibilities except those expressly set forth in this Closing Escrow Agreement and no other duties shall be implied. The Closing Agent shall have no responsibility for the validity of any agreements referred to in this Closing Escrow Agreement, or for the performance of any such agreements by any person or entity or for interpretation of any of the provisions of any such agreements. The liability of the Closing Agent shall be limited solely to willful misconduct or gross negligence on its part or the part of its agents, employees or representatives only to the extent that a final and nonappealable adjudication of a court of competent jurisdiction determines that the Closing Agent's willful misconduct or gross negligence caused any loss to any Party. The Closing Agent shall have no responsibility as to the validity, collectability or value of any property held by it in escrow pursuant to this Closing Escrow Agreement. The Closing Agent may rely on any notice, instruction, certificate, statement, request, consent, confirmation, agreement or other instrument which it believes in good faith to be genuine and to have been signed or presented by a proper person or persons without inquiry and without substantiating evidence of any kind. In the event that the Closing Agent shall be uncertain as to its duties or rights or shall receive instructions from any of the undersigned with respect to any property held by it in escrow pursuant to this Closing Escrow Agreement which, in the opinion of the Closing Agent, are in conflict with any of the provisions of this Closing Escrow Agreement, the Closing Agent may refrain from taking any action until it shall be directed otherwise in writing, duly executed by authorized officers of each of Bidder and Tribune or by an order of a court of competent jurisdiction. The Parties agree to pursue any redress or recourse in connection with any dispute (other than a dispute relating to the performance of the Closing Agent's obligations hereunder) without making the Closing Agent a party to the same. The Closing Agent shall be deemed to have no notice of, or duties with respect to, any agreement or agreements other than this Closing Escrow Agreement. This Closing

- 8 -

Escrow Agreement sets forth the entire agreement between the Parties (other than the Closing Agent) and the Closing Agent in its capacity as Closing Agent.  Notwithstanding any provision to the contrary contained in any other agreement between any of the Parties, the Closing Agent shall have no interest in the property held by it in escrow pursuant to this Closing Escrow Agreement except as provided in this Closing Escrow Agreement and shall not be deemed to be a joint venturer of any Party.  In the event that any of the terms and provisions of any other agreement between the Parties conflict or are inconsistent with any of the terms and provisions of this Closing Escrow Agreement, the terms and provisions of this Closing Escrow Agreement shall govern and control in all respects; provided, that in no event shall the Bank Credit Agreement or any other Loan Document (as defined in the Bank Credit Agreement) be construed to be modified or superseded by this Closing Escrow Agreement.

12.     <u>Amendment</u>.  The Closing Agent and the other Parties shall not be bound by any waiver, modification or amendment of this Closing Escrow Agreement unless such waiver, modification or amendment is in writing and signed by each Party hereto.

13.     <u>Resignation</u>.  The Closing Agent shall have the right, in its discretion, to resign as Closing Agent at any time, by giving at least 30 days' prior written notice of such resignation to each of Bidder and Tribune.  In such event, Tribune and Bidder together shall promptly select a bank (i) with capital, surplus and undivided profits of not less than $500,000,000 and (ii) in the event that any case under Chapter 11 of Title 11 of the United States Code is then pending for any of the Cubs Entities, having a Uniform Depository Agreement with the United States Trustee for Region 3, which bank shall then be appointed as successor Closing Agent, and each Party (other than the Closing Agent) shall enter into an agreement with such bank in substantially the form of this Closing Escrow Agreement.  Resignation by the Closing Agent shall relieve the Closing Agent of any responsibility or duty thereafter arising hereunder, but shall not relieve the Closing Agent of responsibility to account to the Tribune Parties, Bidder, Newco, the Newco Subs or any other Parties for funds received by the Closing Agent prior to the effective date of such resignation.  If a substitute for the Closing Agent is not selected within such 30-day period, the Closing Agent shall be entitled to petition any court of competent jurisdiction for the appointment of a substitute or, in the alternative, it may, in its sole discretion, (a) transfer and deliver the Closing Escrow Documents, Escrow Funds and Escrow Earnings (if any) to or upon the order of such court or (b) keep the Closing Escrow Documents, Escrow Funds and Escrow Earnings (if any) until it receives joint written notice from the Tribune and Bidder of a substitute appointment.  The Closing Agent shall be discharged from all further duties upon transfer and delivery of the Closing Escrow Documents and Escrow Funds to such substitute Closing Agent and the acceptance by such substitute Closing Agent of its duties or upon the order of any court of competent jurisdiction.

14.     <u>Representations and Warranties of the Parties</u>.  Each of the Parties (other than the Closing Agent) represents and warrants to the Closing Agent and the Closing Agent represents and warrants to each of the other Parties as follows: (a)  the execution and delivery of this Closing Escrow Agreement and the consummation of the transactions contemplated

CHIC_4410550.2
**Error! Unknown document property name.**

hereby have been duly authorized by such Party and no other or further act or proceeding on the part of such Party is necessary to authorize this Closing Escrow Agreement or the consummation of the transactions contemplated hereby, (b) this Closing Escrow Agreement has been duly executed and delivered by such Party, (c) assuming the due execution and delivery by each other Party hereto, this Closing Escrow Agreement constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, and (d) neither the execution and delivery of this Closing Escrow Agreement by such Party, nor the consummation by such Party of the transactions contemplated hereby, will violate any applicable statute, law (including common law), ordinance, rule or regulation or any order, writ, injunction, judgment, plan or decree of any government, court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality or other body, whether federal, state, municipal, county, local, foreign, supranational or other.

15. <u>Fees</u>. The Closing Agent shall be entitled to a fee for its services hereunder in the amount of $[•] due and payable upon execution of this Closing Escrow Agreement. The Closing Agent shall also be entitled to an account service fee in the amount of $[__]    per year or part thereof for its services hereunder for each year thereafter. The Closing Agent shall be entitled to reimbursement for its reasonable out-of-pocket costs and expenses (including, without limitation, reasonable fees and expenses of the Closing Agent's legal counsel and other agents) in connection with its performance of services under this Closing Escrow Agreement. Such compensation, fees, costs and expenses (other than the fees, compensation, costs and expenses covered by the provisions of Section 19, 20 and 24 hereof) shall be paid by Newco, but if such amounts are unpaid the Closing Agent shall be entitled to deduct such amounts from the Escrow Funds. If sufficient income and/or principal funds are unavailable to pay such compensation fees, costs or expenses, the Closing Agent may withhold disbursement of the Escrow Funds or Closing Escrow Documents until such compensation is paid.

16. <u>Payments</u>. At any time the Closing Agent is required to disburse any amounts held by it under any of the provisions of this Closing Escrow Agreement to the Tribune Parties, Bidder, Newco, any Person listed on <u>Exhibit A</u> or any other Party, such disbursement shall be effected by wire transfer of immediately available funds pursuant to wire instructions provided by such Party as set forth on <u>Exhibit A</u>.

17. <u>Notices</u>. All notices and other communications hereunder will be in writing and given by (a) certified or registered mail, return receipt requested, (b) nationally recognized overnight delivery service, such as Federal Express or (c) facsimile (or like transmission) with confirmation of transmission by the transmitting equipment, in each case, at such Party's address or facsimile number set forth below for such Party or such other address or facsimile number as such party may hereafter specify by notice to the other parties hereto given in accordance herewith. Any such notice or other communication shall be deemed to have been given and delivered upon actual receipt (or refusal of receipt).

<u>If to the Closing Agent:</u>

CHIC_4410550.2
**Error! Unknown document property name.**

JPMorgan Chase Bank, N.A., as Closing Agent
420 W. Van Buren, Mail Code: IL1-0113
Chicago, Illinois 60606
Attention:  Rory Nowakowski
Facsimile:(312)954-0430

with a copy to (which shall not constitute notice):

Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Attention: Jon H. Oram
Facsimile: (212) 969-2900

<u>If to the Senior Bank Lender Agent</u>:

JPMorgan Chase Bank, N.A., as Senior Bank Lender Agent
_____
_____
Attention:_____
Facsimile:_____

with a copy to (which shall not constitute notice):

Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Attention: Jon H. Oram
Facsimile: (212) 969-2900

<u>If to Subordinated Lender Agent</u>

_____
_____
_____
Attention:_____
Facsimile:_____

<u>If to Bidder, Newco, any Newco Sub, Family Lender or Ricketts Lender</u>:

Ricketts Acquisition LLC
c/o Incapital LLC
200 South Wacker, Suite 3700
Chicago, Illinois 60606

- 11 -

Attention:  Thomas Ricketts
Facsimile:  (312) 379-3701

with copies to (which shall not constitute notice):

Hugo Enterprises LLC
1395 South Platte River Drive
Denver, Colorado 80223
Attention:  Alfred P. Levitt
Facsimile:  (303) 200-7086

and

Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Attention:  Mary K. Braza and Patrick G. Quick
Facsimile:  (414) 297-4900

If to any Tribune Party:

Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611
Attention:  General Counsel
Facsimile:  (312) 222-4206

with copies to (which shall not constitute notice)

McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005
Attention:  Blake D. Rubin
Facsimile:  (202) 756-8087

and

McDermott Will & Emery LLP
227 West Monroe Street, Suite 4700
Chicago, Illinois 60606
Attention:  Brooks B. Gruemmer and Ryan D. Harris
Facsimile:  (312) 984-7700

Any Party may change the address and/or facsimile number to which notices, requests, demands, claims, and other communications are to be delivered by giving each other Party notice in the manner set forth in this Section 16.

- 12 -

**Error! Unknown document property name.**

18.   <u>Captions</u>.  The Section captions used herein are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Closing Escrow Agreement.

19.   <u>Indemnification</u>.

(a)   <u>Indemnification of Closing Agent</u>.  The Tribune Parties and Bidder, jointly and severally, agree to hold the Closing Agent harmless, to defend and to indemnify the Closing Agent and its affiliates and their respective successors, assigns, directors, officers, managers, attorneys, accountants, experts, agents and employees (collectively, "**Closing Agent Indemnitees**") against any loss, liability, claim or demand, damage, penalty, judgment, settlement, action, suit, proceeding, litigation, investigation, costs or expenses (including reasonable fees and expenses of the Closing Agent's legal counsel) (each a "**Closing Agent Loss**") arising out of or in connection with (a) the performance of the Closing Agent's obligations in accordance with the provisions of this Closing Escrow Agreement, including, without limitation, tax reporting or withholding obligations under or in connection with this Closing Escrow Agreement or the enforcement of any of the Closing Agent's rights or remedies under or in connection with this Closing Escrow Agreement, except to the extent that such Closing Agent Loss is finally adjudicated by a court of competent jurisdiction to have been caused by the willful misconduct or gross negligence of the Closing Agent or (b) the Closing Agent following any joint instructions, or other joint direction from the Parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms thereof.  The foregoing indemnities in this <u>Section 19(a)</u> shall survive termination of this Closing Escrow Agreement and the resignation, replacement or removal of the Closing Agent.   Solely as between each other, the Tribune Parties, on the one hand, and Bidder, on the other hand, shall each bear fifty percent (50%) of any Closing Agent Loss in connection with such indemnification.  To the extent amounts are set off or otherwise deducted from the Escrow Accounts by the Closing Agent, Bidder, on the one hand, or the Tribune Parties, on the other hand, shall reimburse each other as appropriate depending on whether the amounts set off or deducted were ultimately determined to be for the account of the Tribune Parties, on the one hand, or Bidder, on the other hand.  The Parties hereby grant the Closing Agent a lien on, right of set-off against and security interest in, the Escrow Funds for the payment of any claim for indemnification, fees, expenses and amounts due hereunder, which lien and security interest shall be deemed automatically released from amounts disbursed hereunder, which amounts, for the avoidance of doubt, shall then be free and clear of any such lien or security interest.  The obligations contained in this <u>Section 19(a)</u> shall survive termination of this Closing Escrow Agreement and the resignation, replacement or removal of the Closing Agent.

(b)   <u>Indemnification of Senior Bank Lender Agent</u>.  Newco and Bidder, jointly and severally, agree to hold the Senior Bank Lender Agent harmless, to defend and to indemnify the Senior Bank Lender Agent and its affiliates and their respective successors, assigns, directors, officers, managers, attorneys, accountants, experts,

- 13 -

agents and employees (collectively, "**Senior Bank Party Indemnitees**" and, together with the "Closing Agent Indemnitees", the "**Indemnitees**") against any loss, liability, claim or demand, damage, penalty, judgment, settlement, action, suit, proceeding, litigation, investigation, costs or expenses (including reasonable fees and expenses of the Senior Bank Lender Agent's legal counsel) (each a "**Senior Bank Party Loss**") arising out of or in connection with the performance of the Senior Bank Lender Agent's obligations in accordance with the provisions of this Closing Escrow Agreement or any of the Closing Escrow Documents, including, without limitation, the enforcement of any of the Senior Bank Lender Agent's rights or remedies under or in connection with this Closing Escrow Agreement, except to the extent that such Senior Bank Party Loss is finally adjudicated by a court of competent jurisdiction to have been caused by the willful misconduct or gross negligence of the Senior Bank Lender Agent. The foregoing indemnities in this <u>Section 19(b)</u> shall survive termination of this Closing Escrow Agreement.

20.  <u>Disagreements</u>.  If any disagreement or dispute arises between or among any of the Parties concerning the interpretation of this Closing Escrow Agreement, or the rights and obligations or the propriety of any action or omission contemplated by the Closing Agent under this Closing Escrow Agreement, then the Closing Agent may file an action of interpleader in the Applicable Court and deposit all (or, if less, the disputed portion) of the Escrow Funds with the Applicable Court. The Tribune Parties and Bidder, jointly and severally, agree to pay for the reasonable charges, costs, expenses and reasonable attorneys' fees of the Closing Agent attendant to such interpleader action.  Solely as between each other, the Tribune Parties, on the one hand, and Bidder, on the other hand, shall each bear fifty percent (50%) of any charges, costs, expenses and reasonable attorneys' fees in connection with such interpleader action.

21.  <u>Right to Withhold Escrow Funds</u>.  The Closing Agent is expressly authorized and directed, but shall not be obligated, to charge against and withdraw from the Escrow Funds for its own account or for the account of an Closing Agent Indemnitee, as applicable, any amount due to the Closing Agent or to any Closing Agent Indemnitee under this Closing Escrow Agreement, including, without limitation, Sections 12, 14, 19 and 23; <u>provided</u>, however, that to the extent the Closing Agent withdraws an amount in excess of the amount due to the Closing Agent or to such Indemnitee, the Closing Agent shall promptly return such funds to the applicable Escrow Account

22.  <u>Assignment; Third Party Beneficiaries</u>.  This Closing Escrow Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Neither this Closing Escrow Agreement nor any rights, benefits or obligations set forth herein may be assigned by any of the Parties without the prior written consent of the Bidder and Tribune; provided, however, that notwithstanding the foregoing, Bidder may assign its rights under this Closing Escrow Agreement without the consent of the Tribune for collateral security purposes to any lenders providing financing to Newco or any Newco Sub and (ii) each Tribune Party may assign its rights and obligations under this Closing Escrow Agreement, without the

- 14 -

consent of any other Party, to any wholly owned Subsidiary of Tribune to which such Tribune Party's rights and obligations under the Formation Agreement are validly assigned in accordance with the terms of the Formation Agreement. No assignment of the interests of any of the Parties shall be binding on the Closing Agent unless and until notice of such assignment shall be filed with and acknowledged by the Closing Agent. Any purported assignment in violation of this Escrow Agreement shall be null and void *ab initio*. This Agreement is not intended to confer upon any Person not a party hereto (or any of their successors and permitted assigns), including any of their Affiliates or any creditors of any Tribune Party or any of their Affiliates, any rights or remedies hereunder, except that (x) each of the Indemnitees shall be an intended third party beneficiary of its rights under <u>Section 19</u> and any related or ancillary provisions of this Closing Escrow Agreement and (y) each of the Senior Lender Parties (including, without limitation, the Senior Bank Lender Agent and each of the Bank Lenders) shall be an intended third party beneficiary of its rights under <u>Section 28</u> and any related or ancillary provisions of this Closing Escrow Agreement, in each case, as if and to the same extent as though such Persons described in the foregoing clauses (x) and (y) were direct parties hereto.

23.    <u>No Special or Consequential Damages</u>.    IN NO EVENT SHALL THE CLOSING AGENT BE LIABLE, DIRECTLY OR INDIRECTLY, FOR ANY SPECIAL, INCIDENTAL, PUNITIVE, INDIRECT OR CONSEQUENTIAL LOSSES OR DAMAGES OF ANY KIND WHATSOEVER (INCLUDING BUT NOT LIMITED TO LOST PROFITS AND DIMINUTION IN VALUE), EVEN IF THE CLOSING AGENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSSES OR DAMAGES AND REGARDLESS OF THE FORM OF ACTION.

24.    <u>Litigation; Agents</u>.    If the Closing Agent becomes involved in litigation on account of this Closing Escrow Agreement, then the Closing Agent shall (a) have the right to retain counsel, (b) have a first lien on the Escrow Funds for any and all reasonable costs, attorneys' fees, charges, disbursements, and expenses in connection with such litigation, and (c) be entitled to reimburse itself therefor out of the Escrow Funds. If the Closing Agent shall be unable to reimburse itself from the Escrow Funds, the Tribune Parties, Newco and Bidder agree, jointly and severally, to pay to the Closing Agent on demand its reasonable charges, counsel and attorneys' fees, disbursements, and expenses in connection with such litigation; provided, however, that as between each other, the Tribune Parties, on the one hand, and Bidder, on the other hand, shall each be responsible for fifty percent (50%) of such charges, fees, disbursements, and expenses. The Closing Agent shall have the right to perform any of its duties hereunder through agents, attorneys, custodians or nominees.

25.    <u>Successor to Closing Agent</u>.    Any banking association or corporation into which the Closing Agent may be merged or converted or with which the Closing Agent may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Closing Agent shall be a party, or any banking association or corporation to which all or substantially all of the corporate trust business of the Closing Agent shall be transferred, shall succeed to all the Closing Agent's rights, obligations and immunities hereunder without the execution or filing of any paper or any further act on the part of

- 15 -

any of the parties hereto, including the Closing Agent's rights of indemnification pursuant to Section 19(a), anything herein to the contrary notwithstanding.

26.    <u>Security Procedures</u>.  In the event funds transfer instructions are given (other than in writing at the time of execution of this Closing Escrow Agreement), whether in writing, by facsimile or otherwise, the Closing Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule 3</u> hereto, and the Closing Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. Each funds transfer instruction shall be executed by an authorized signatory, a list of such authorized signatories is set forth on <u>Schedule 3</u>. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Closing Agent. The Closing Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by any of the Parties to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Closing Agent may apply any of the Escrowed Funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Parties acknowledge that these security procedures are commercially reasonable.

27.    <u>Court Orders</u>.  In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court of competent jurisdiction, or any order, judgment or decree shall be made or entered by any order of a court of competent jurisdiction affecting the property deposited under this Closing Escrow Agreement, the Closing Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Closing Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree being subsequently reversed, modified, annulled, set aside or vacated.

28.    <u>Exculpation of Senior Lender Parties</u>.  Each Tribune Party acknowledges and agrees, on behalf of itself and each of its Affiliates, that none of the Senior Lender Parties (including, without limitation, the Senior Bank Lender Agent and each of the Bank Lenders, but excluding, for the avoidance of doubt, JPMorgan Chase Bank, N.A., solely in its capacity as the Closing Agent hereunder and solely in respect of any material breach by the Closing Agent of its obligations hereunder) shall have any duty (including any fiduciary duty or any other express or implied duty), liability, obligation or responsibility whatsoever to any Tribune Party or any of their Affiliates arising from, in connection with or relating to (i) the Senior Debt Financing, (ii) the Senior Debt Commitment Letter, (iii) this Closing Escrow Agreement or (iv) any of the transactions contemplated by this Agreement, the Senior Debt Commitment Letter, this Closing Escrow Agreement, any of the Senior Debt Documents, including any actual or alleged

- 16 -

breach, misrepresentation or failure to perform any of their respective duties or obligations (including any failure to fund or otherwise extend credit) under the Senior Debt Commitment Letter or any Senior Debt Document (clauses (i)-(iv), collectively, the "**Financing Matters**"). No Senior Lender Party shall be liable to any Tribune Party or any of their respective Affiliates for any action taken or not taken by such Senior Lender Party in connection with any of the Financing Matters. Each Tribune Party hereby waives, releases and forever discharges each of the Senior Lender Parties from any and all Claims whatsoever, in law or equity, whether known or unknown, directly or indirectly arising out of or relating to any of the Financing Matters, that any of the Tribune Parties or their Affiliates ever had, now has or hereafter can, shall or may have against any of Senior Lender Parties. Furthermore, the Tribune Parties jointly and severally covenant not to sue any Senior Lender Party in connection with or assert, and agree to cause their respective Affiliates not to sue any Senior Lender Party in connection with or assert, any Claims which they or any other party now or may hereafter have in connection with any Financing Matter. Each of the Senior Lender Parties shall be an intended third party beneficiary of this <u>Section 28</u> and may enforce the terms of this <u>Section 28</u> as if such Senior Lender Party were a direct party to this Agreement.

29.   <u>Governing Law</u>. This Closing Escrow Agreement, and any disputes arising hereunder or controversies related hereto, shall be governed by and construed in accordance with the laws of the State of Delaware that apply to contracts made and performed entirely within such state without regard to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) to the extent they would result in the application of the Laws of another jurisdiction.

30.   <u>Force Majeure</u>. The Closing Agent shall not be liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Closing Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

31.   <u>Submission to Jurisdiction; Waivers</u>. Any Action with respect to this Closing Escrow Agreement and any matter arising out of or in connection with this Closing Escrow Agreement shall be brought exclusively in and determined by (i) the Bankruptcy Court if the Bankruptcy Case is pending or (ii) the state or federal courts sitting in the State of Delaware if the Bankruptcy Case is not pending (in either case, the "**Applicable Court**"). The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising out of or relating to this Closing Escrow Agreement. Each such Party agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

32.   <u>Counterparts</u>. This Closing Escrow Agreement may be executed (including by facsimile transmission) with counterpart signature pages or in two or more counterparts, all of which taken together shall constitute one instrument.

- 17 -

IN WITNESS WHEREOF, the undersigned have duly caused this Closing Escrow Agreement to be executed as of the date first written above.

**JPMORGAN CHASE BANK, N.A., solely in its capacity as Closing Agent**

By: _____

Name:

Its:

**JPMORGAN CHASE BANK, N.A., solely in its capacity as Senior Bank Lender Agent**

By: _____

Name:

Its:

**CHICAGO BASEBALL HOLDINGS, LLC, as Subordinated Lender Agent**

By: Ricketts Acquisition, LLC, its sole member,

By: Joe and Marlene Ricketts Grandchildren's Trust, its sole member,

By: _____

Name:  David K. Larson

Title:   Trustee

**CHICAGO BASEBALL HOLDINGS, LLC**

By: Ricketts Acquisition, LLC, its sole member,

By: Joe and Marlene Ricketts Grandchildren's Trust, its sole member,

By: _____

Name:  David K. Larson

Title:   Trustee

**RICKETTS ACQUISITION, LLC**

By: Joe and Marlene Ricketts Grandchildren's Trust, its Sole Member

By: _____
Name:  David K. Larson
Its:  Trustee

## RAC EDUCATION TRUST FINANCE, LLC

By: _____
Name:
Its:

## MMR INVESTORS LLC

By: _____
Name:
Its:

## TRIBUNE COMPANY

By: _____
Name:
Its:

## CHICAGO NATIONAL LEAGUE BALL CLUB, LLC

By: _____
Name:
Its:

## WRIGLEY FIELD PREMIUM TICKET SERVICES, LLC

By: _____
Name:
Its:

## DIANA-QUENTIN, LLC

By: _____
Name:
Its:

**CHICAGO CUBS DOMINICAN
BASEBALL OPERATIONS, LLC**

By: _____
Name:
Its:


**TRIBUNE SPORTS NETWORK
HOLDINGS, LLC**

By: _____
Name:
Its:

# EXHIBIT A

**WIRE INSTRUCTIONS**

**Bidder:**

> _____
> _____
> ABA # _____
> Acct. # _____
> Acct. Name: _____

**Newco:**

> _____
> _____
> ABA # _____
> Acct. # _____
> Acct. Name: _____

**Subordinated Lender:**

> _____
> _____
> ABA # _____
> Acct. # _____

Acct. Name: _____

**Ricketts Lender:**

> _____
> _____
> ABA # _____
> Acct. # _____
> Acct. Name: _____

**Tribune:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

**Cubs LLC:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

**DQ LLC:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

**Dominican LLC:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

**Tribune Sports:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

**Premium Tickets LLC:**

_____

_____

ABA # _____

Acct. # _____

Acct. Name: _____

## SCHEDULE 1

### APPROVED INVESTMENTS

During the term of this Closing Escrow Agreement, the Escrow Funds shall be invested in a JPMorgan Chase Bank, N.A. money market deposit account ("MMDA"), or a successor or similar investment offered by the Closing Agent. The rate of return on an MMDA varies from time to time based upon market conditions. Written investment instructions, if any, shall specify the type and identity of the investments to be purchased and/or sold. The Closing Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity. The Closing Agent or any of its affiliates may receive compensation with respect to any investment directed hereunder, including, without limitation, charging an agency fee in connection with each transaction. The Parties recognize and agree that the Closing Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Escrow Accounts or the purchase, sale, retention or other disposition of any investment described herein. The Closing Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Closing Escrow Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Parties to give the Closing Agent instructions to invest or reinvest the Escrow Funds. The Closing Agent shall have the right to liquidate any investments held in order to provide funds necessary to make any required disbursement of funds under this Closing Escrow Agreement.

## SCHEDULE 2

### ESCROW FUNDS

| Funding Party | $ Amount | Taxpayer Identification Number |
|---|---|---|
| Subordinated Lender | | |
| Bidder | | |
| Family Lender | | |
| Total | | |

| | | |
|---|---|---|
| Newco | -- | |

**Error! Unknown document property name.**

**SCHEDULE 3**

<u>AUTHORIZED PERSONS</u>

<u>Tribune Parties</u>                                    <u>Signature</u>

    Nils Larsen                                    _____

    Chandler Bigelow                               _____

    Don Liebentritt                                _____

    David Eldersveld                               _____


<u>Bidder</u>

                                                      _____

                                                      _____

                                                      _____

                                                      _____

# SCHEDULE 4

<u>BIDDER ESCROW DOCUMENTS</u>

[To Be Inserted]

# SCHEDULE 5

## CLOSING ESCROW NEWCO SALE DOCUMENTS

[To Be Inserted]

.

**SCHEDULE 6**

<u>TRIBUNE ESCROW DOCUMENTS</u>

[To Be Inserted]

**Error! Unknown document property name.**

**SCHEDULE 7**

<u>CLOSING SUBORDINATED DEBT DOCUMENTS</u>

[To Be Inserted]

**Error! Unknown document property name.**

**SCHEDULE 8**

<u>CLOSING SENIOR DEBT DOCUMENTS</u>

[To Be Inserted]