ESOP Stock Account, after all allocations of Employer Contributions, Forfeitures, Dividends, and earnings have been made, the Administrator shall exchange any cash or other liquid assets held in the ESOP Cash Accounts of Participants who are actively employed by the Employers ("Active Participants") for the shares of Company Stock held in the Inactive Participant's ESOP Stock Account, at an exchange rate determined based on the contemporaneous appraised fair market value of Company Stock. Such exchange shall be made pro rata based on the Active Participants' ESOP Cash Account balances. In the event that there is not sufficient cash or other liquid assets in the Active Participants' ESOP Cash Accounts to exchange for all of the shares of Company Stock in the Inactive Participants' ESOP Stock Accounts, the exchange shall be pro rata based upon the Inactive Participants' ESOP Stock Accounts. The purpose of this exchange is to assure that the Accounts of Active Participants are invested in Company Stock, to the maximum extent possible within the assets available to the Trust, and to assure that the Accounts of Inactive Participants are invested in assets other than Company Stock, to the maximum extent possible within the assets available to the Trust.

**11.4    Timing of Distributions**

      Distribution of the balance of a Participant's Accounts shall be made as follows:

    (a)    **Distribution of Accounts**. Subject to the Participant consent requirements of paragraph (c) below, distribution of a Participant's Accounts balances shall commence as follows:

        (i)    **Distribution Upon Retirement, Disability or Death**. If a Participant retires, becomes disabled, or dies (as described in Sections 9.1(a), (b) or (c)) while in the employ of an Employer or a Related Company, distribution of the Partici-pant's Accounts will commence on or about the 180th day following the end of the Plan Year in which the Partici-pant's Settlement Date occurs.

        (ii)    **Distribution Upon Resignation or Dismissal**. If a Participant's Settlement Date occurs under Section 9.1(d), distribution of the Participant's Accounts will commence on or about the 180th day following the close of the Plan Year which is the earlier of (A) the fifth Plan Year following the Plan Year in which the Participant's Settlement Date has occurred or (B) the Plan Year in which the Participant attains age 65, unless in either case the Participant is reemployed by an Employer or a Related Company before such time. However, solely for purposes of the preceding sentence, a Participant's Accounts shall not be deemed to include Financed Shares until the close of the Plan Year in which the Acquisition Loan relating to such

30

Source: TRIBUNE CO, 8-K, April 05, 2007

Financed Shares has been repaid in full, or if earlier the Plan Year that ends on December 31, 2017 or the Plan Year in which the Participant attains age 65 (but not before the year following the year in which the Participant's Settlement Date occurs).

(b)     **Distributions to Beneficiary Upon Death**.  Notwithstanding the provisions of paragraph (a) above, distributions upon the death of a Participant shall be made in accordance with the requirements of paragraph (d) below.

(c)     **Participant Consent**.  Notwithstanding any other provision of this Section, if a Participant's vested Account balances total $1,000 or more at any time at or after his Settlement Date, no portion of his Accounts may be distributed to him before he attains Normal Retirement Age without his written consent.  Failure to provide such consent within 30 days following solicitation of such consent by the Administrator shall defer the Participant's right to receive a distribution until his attainment of Normal Retirement Age (or his death, if earlier).

(d)     **Required Commencement Date**.

(1)  Notwithstanding any contrary provision of the Plan, distribution of the Account balance of a Participant shall commence by April 1 of the calendar year next following the later of:  (i) the calendar year on which the Participant attains age 70½ or (ii) the calendar year in which the Participant's Settlement Date occurs (*"Required Commencement Date"*); provided, however, that the Required Commencement Date of a Participant who is a five-percent owner (as defined in Code Section 416) of an Employer or Related Company in the calendar year in which the Participant attains age 70½ shall be April 1 of the calendar year next following the calendar year which the Participant attains age 70½.

(2)  All distributions required under this subsection will be determined and made in accordance with the Treasury Regulations under Code Section 401(a)(9).

(3)  If the Participant dies before distributions begin, the Participant's entire interest will be distributed in accordance with the otherwise applicable provisions of the Plan; provided, however, that in no event will such entire interest be distributed to the Designated Beneficiary later than December 31 of the calendar year containing the fifth anniversary of the Participant's death, unless an election is made by the Designated Beneficiary involved to receive distributions in accordance with (A) or (B) below.  Any such election must be made no later than the earlier of September 30 of the calendar year in which distributions

31

Source: TRIBUNE CO, 8-K, April 05, 2007

would be required to begin under this Subsection (d)(3), or, if applicable, by September 30 of the calendar year which contains the 5th anniversary of the Participant's (or if applicable, Surviving Spouse's) death.

(A)    If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary, then distributions to the Surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(B)    If the Participant's Surviving Spouse is not the Participant's sole Designated Beneficiary, then distributions to the Designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(C)    If there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(D)    If the Participant's Surviving Spouse is the Participant's sole Designated Beneficiary and the Surviving Spouse dies after the Participant but before distributions to the Surviving Spouse begin, this Subsection (d)(3), other than Subsection (d)(3)(A), will apply as if the Surviving Spouse were the Participant.

For purposes of this Subsection and Subsections (d)(7), (d)(8), and (d)(9), unless Subsection (d)(3)(D) applies, distributions are considered to begin on the Participant's Required Beginning Date. If Subsection (d)(3)(D) applies, distributions are considered to begin on the date distributions are required to begin to the Surviving Spouse under Subsection (d)(3)(A).

(4) Unless the Participant's interest is distributed in a single sum on or before the Required Beginning Date, as of the First Distribution Calendar Year distributions will be made in accordance with the otherwise applicable Plan provisions, subject to the requirements of Subsection (d)(5) through Subsection (d)(9) of this Section.

(5) During the Participant's lifetime, the minimum amount that will be distributed for each Distribution Calendar Year is the lesser of:

32

Source: TRIBUNE CO, 8-K, April 05, 2007

      (A)     the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in § 1.401(a)(9)-9 of the Treasury Regulations, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or

      (B)     if the Participant's sole Designated Beneficiary for the distribution calendar year is the Participant's Spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in § 1.401(a)(9)-9 of the Treasury Regulations, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the Distribution Calendar Year.

(6)  Required minimum distributions will be determined under this Subsection beginning with the first Distribution Calendar Year and up to and including the Distribution Calendar Year that includes the Participant's date of death.

(7)  If the Participant dies on or after the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's Designated Beneficiary, determined as follows:

      (A)     The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

      (B)     If the Participant's surviving Spouse is the Participant's sole Designated Beneficiary, the remaining life expectancy of the surviving Spouse is calculated for each Distribution Calendar Year after the year of the Participant's death using the surviving Spouse's age as of the Spouse's birthday in that year. For Distribution Calendar Years after the year of the surviving Spouse's death, the remaining life expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one for each subsequent calendar year.

      (C)     If the Participant's surviving Spouse is not the Participant's sole Designated Beneficiary, the Designated Beneficiary's remaining life expectancy is calculated using the age of the Beneficiary

33

Source: TRIBUNE CO, 8-K, April 05, 2007

in the year following the year of the Participant's death, reduced by one for each subsequent year.

(8) If the Participant dies on or after the date distributions begin and there is no Designated Beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(9) If elected as provided under Subsection (d)(3), if the Participant dies before the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's Designated Beneficiary, determined as provided in Subsection (d)(8). If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death. If the Participant dies before the date distributions begin, the Participant's surviving Spouse is the Participant's sole Designated Beneficiary, and the surviving Spouse dies before distributions are required to begin to the surviving Spouse under Subsection (d)(3)(A), this Subsection (d)(9) will apply as if the surviving Spouse were the Participant.

(10)  The following definitions shall apply for purposes of this Subsection:

Designated Beneficiary: The individual who is designated as the Beneficiary under the Plan and is the Designated Beneficiary under Code Section 401(a)(9) and § 1.401(a)(9)-1, Q&A-4, of the Treasury Regulations.

Distribution Calendar Year: A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the First Distribution Calendar Year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the First Distribution Calendar Year is the

34

Source: TRIBUNE CO, 8-K, April 05, 2007

calendar year in which distributions are required to begin under Subsection (d)(3). The required minimum distribution for the Participant's First Distribution Calendar Year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other Distribution Calendar Years, including the required minimum distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that Distribution Calendar Year.

Life Expectancy: Life expectancy as computed by use of the Single Life Table in § 1.401(a)(9)-9 of the Treasury Regulations.

Participant's Account Balance: The account balance as of the last Valuation Date in the calendar year immediately preceding the Distribution Calendar Year (Valuation Calendar Year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the Valuation Calendar Year after the Valuation Date and decreased by distributions made in the Valuation Calendar Year after the Valuation Date. The account balance for the Valuation Calendar year includes any amounts rolled over or transferred to the Plan either in the Valuation Calendar Year or in the Distribution Calendar Year if distributed or transferred in the Valuation Calendar Year.

(11) A Participant who is not a 5 percent owner and who attains age 70-1/2 while still employed by an Employer or a Related Company may elect to receive a distribution commencing April 1 of the calendar year next following the calendar year in which he attains age 70-1/2, in installments as described in Subsection (d)(5).

(12) Distribution shall also commence not later than the 60th day following the close of the Plan Year in which the latest of the following occurs: (1) the Participant attains Normal Retirement Age; (2) the tenth anniversary of the date on which the Participant commenced participation under this Plan; or (3) the Participant terminates employment with all Employers.

**11.5    Direct Rollovers**

Certain individuals who are to receive distributions under the Plan may elect that such distributions be paid in the form of a direct rollover (as described in Section 401(a)(31) of the Code and the regulations thereunder) to the Trustee or custodian of a plan eligible to accept direct rollovers, subject to the following:

35

(a)     **Eligible Rollover Distribution**. A distribution may be paid in a direct rollover under this Section only if the distribution constitutes an Eligible Rollover Distribution. An *"Eligible Rollover Distribution"* means distribution under the Plan to an Eligible Distributee other than: (i) a distribution that is one of a series of sub-stantially equal payments made annually or more frequently either over the life (or life expectancy) of the Participant or the joint lives (or life expectancies) of the Participant and his Beneficiary or over a specified period of ten years or more, (ii) a distribution required under Section 11.4(d) to meet the minimum distribution requirements of Section 401(a)(9) of the Code, (iii) a hardship distribution, or (iv) a distribution excluded from the definition of an Eligible Rollover Distribution under applicable Treasury Regulations. Notwithstanding the immediately preceding sentence, an Eligible Rollover Distribution includes only those amounts that would be includible in the gross income of the Eligible Distributee if such amounts were not rolled over to another plan as provided under Section 402(c) of the Code.

(b)     **Eligible Distributee**. An *"Eligible Distributee"* is: (i) a Participant, (ii) a Participant's surviving Spouse who is entitled to receive payment of the Participant's Account balances after the Participant's death, or (iii) the Spouse or former spouse of a Participant who is an alternate payee under a qualified domestic relations order (as defined in Section 414(p) of the Code).

(c)     **Eligible Retirement Plan**. A direct rollover of an Eligible Rollover Distribution may be made to no more than one Eligible Retirement Plan. Except as otherwise provided below, an *"Eligible Retirement Plan"* is: (i) an individual retirement account described in Section 408(a) of the Code, (ii) an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract), (iii) an annuity plan described in Section 403(a) of the Code or an eligible plan under Section 457(b) of the Code, or (iv) a plan qualified under Section 401(a) of the Code that by its terms permits the acceptance of rollover contributions. With respect to the surviving Spouse of a deceased Participant who is entitled to receive a distribution of the Participant's Accounts, an *"Eligible Retirement Plan"* shall mean only an individual retirement account described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract).

(d)     **Minimum Amounts**. An Eligible Distributee may elect a direct rollover of all or a portion of an Eligible Rollover Distribution only if the total amount of the Eligible Rollover Distributions expected to be

36

received by the Eligible Distributee during the Plan Year is $200 or more (or such lesser amount as the Administrator may establish). An Eligible Distributee may elect payment of a portion of an Eligible Rollover Distribution as a direct rollover and may receive directly the remainder of such distribution, provided that the amount paid by direct rollover is at least $500 (or such lesser amount as the Administrator may establish).

(e)     **Elections.** An Eligible Distributee's election of a direct rollover pursuant to this Section must be in writing on a form designated by the Administrator and must be filed with the Administrator at such time and in such manner as the Administrator shall determine. The Administrator shall establish such rules and procedures as it deems necessary to provide for distributions by means of direct rollover.

(f)     **Automatic Rollovers.** Any distribution in excess of $1,000 shall be made by transferring the amount to be distributed to an individual retirement plan designated by the Administrator, unless the Participant or Beneficiary entitled to receive the distribution elects (1) to receive the distribution directly, or (2) to have the distribution paid directly to another Eligible Retirement Plan as described in this section.

## 11.6     Designation of Beneficiary

Each Participant may designate any person or persons (who may be designated concurrently, contingently or successively) to whom the Participant's benefits are to be paid if the Participant dies before the Participant receives all of his benefits. A beneficiary designation must be made on a form furnished by the Administrator for this purpose, and the Participant must sign such form. A beneficiary designation form will be effective only when the form is filed with the Administrator while the Participant is alive and will cancel all the Participant's beneficiary designation forms previously filed with the Administrator.

Notwithstanding the foregoing provisions of this Section and any beneficiary designation filed with the Administrator in accordance with this Section, if a Participant dies and has a surviving Spouse at the Participant's date of death, the Account balances described in the preceding sentence shall be payable in full to the Participant's surviving Spouse in accordance with this Section 11 (treating such surviving Spouse as the Participant's Beneficiary), unless prior to the Participant's death the following requirements were met:

(a)     The Participant elected that the Participant's benefits under the Plan be paid to a person other than the Participant's surviving Spouse;

(b)     The Participant's Spouse consented in writing to such election;

37

Source: TRIBUNE CO, 8-K, April 05, 2007

(c)     The Spouse's consent acknowledged the effect of such election and was witnessed by a notary public; and

(d)     Such election designates a beneficiary that may not be changed without further spousal consent, unless the Spouse executed a general written consent expressly permitting changes of the beneficiary without any requirement of further consent of the Spouse.

For purposes of the Plan, and subject to the provisions of any qualified domestic relations order (as defined in Section 414(p) of the Code), a Participant's "*Spouse*" means the person to whom the Participant is legally married at the earlier of the date of the Participant's death or the date payment of the Participant's benefits commenced and who is living at the date of the Participant's death.

If a deceased Participant failed to designate a Beneficiary as provided above, or if the Beneficiary dies before the Participant or before complete payment of the Participant's benefits, the Participant's benefits shall be distributed to the Participant's Spouse, or if there is none, to the legal representative or representatives of the estate of the last to die of the Participant and the Participant's Beneficiary.

The term "Beneficiary" as used in the Plan means the natural or legal person or persons designated by a Participant as the Participant's beneficiary under the last effective beneficiary designation form filed with the Administrator under this Section and to whom the Participant's benefits would be payable under this Section.

### 11.7    Missing Participants or Beneficiaries; Delays in Determining Benefits

Each Participant and each Beneficiary must file with the Administrator from time to time in writing his post office address and each change of post office address. If a Participant dies before the Participant receives all of the Participant's vested Account balances, the Participant's Beneficiary must file any change in his post office address with the Administrator. Any communication, statement or notice addressed to a Participant or Beneficiary at the last post office address filed with the Administrator, or if no address is filed with the Administrator then, in the case of a Participant, at the Participant's last post office address as shown on the Employers' records, will be binding on the Participant and the Participant's Beneficiary for all purposes of the Plan.

If the amount of a Participant's or beneficiary's distribution cannot be determined by the date on which a distribution is to commence, or if the Participant or Beneficiary cannot be located by such date, then distribution shall commence within 60 days following the date on which the amount of the distribution can be determined or after the date on which the Trustee locates the Participant or Beneficiary.

38

Source: TRIBUNE CO, 8-K, April 05, 2007

The Employers, the Trustee, and the Administrator shall not be required to search for or locate a Participant or Beneficiary. If the Administrator attempts to notify a Participant or Beneficiary that the Participant or Beneficiary is entitled to a payment and also attempts to notify the Participant or Beneficiary of the provisions of this Section, and the Participant or Beneficiary fails to claim his benefits or make his whereabouts known to the Administrator by the end of the third Plan Year following such attempted notifi-cation, the benefits of the Participant or Beneficiary shall be deemed a Forfeiture, and allocated among the Eligible Participants for such Plan Year in accordance with Section 4.1. If, after such a Forfeiture has occurred, such Participant or Beneficiary later claims his benefit, the amount so forfeited (but not any subsequent earnings thereon) shall be reinstated to the Participant's Account from the Employer Contributions and Forfeitures for the Plan Year in which such claim is made.

## 11.8    Facility of Payment

When a person entitled to benefits under the Plan is under legal disability, or, in the Administrator's opinion, is in any way incapacitated so as to be unable to manage the person's financial affairs, the Administrator may direct the Trustee to pay the benefits to such person's legal representative. Any payment made in accordance with the preceding sentence shall be a full and complete discharge of any liability for such payment under the Plan.

39

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 12

### Rights, Restrictions, and Options on Company Stock

**12.1    Right of First Refusal**

Subject to the provisions of the last sentence of this Section, shares of Company Stock while held by the Trust and when distributed to Participants shall be subject to a *"Right of First Refusal."* The Right of First Refusal shall provide that, prior to any subsequent transfer, the Trust, the Participant (or the Participant's Beneficiary) must first make a written offer of such Company Stock to the Trust (if applicable) and to the Company at the then fair market value of such Company Stock, as determined by an "independent appraiser" (as defined in Section 401(a)(28) of the Code). The Trust shall have the first priority to exercise the right to purchase the Company Stock, and then the Company shall have second priority to exercise the right.  A bona fide written offer from an independent prospective buyer shall be deemed to be the fair market value of such Company Stock for this purpose, unless the value per share, as determined by the independent appraiser as of the Accounting Date at the end of the immediately preceding Plan Year, is greater.  The Company and the Trust shall have a total of 14 days (from the date the offer is first received by the Company or the Trust) to exercise the Right of First Refusal on the same terms offered by the pro-spective buyer.  A Participant (or the Participant's Beneficiary) entitled to a distribution of Company Stock may be required to execute an appropriate stock transfer agreement (evidencing the Right of First Refusal) prior to receiving a certificate for Company Stock.  No Right of First Refusal shall be exercisable by reason of any of the following transfers:

(a)    The transfer upon disposition of any such shares by any legal representative, heir or legatee, but the shares shall remain subject to the Right of First Refusal;

(b)    The transfer by a Participant or a Participant's Beneficiary in accordance with the Put Option pursuant to Section 12.2; or

(c)    The transfer while Company Stock is listed on a national securities exchange registered under Section 6 of the Securities Exchange Act of 1934 or quoted on a system sponsored by a national securities association registered under Section 15A(b) of the Securities Exchange Act of 1934.

**12.2    Put Option**

The Company shall issue a *"Put Option"* to each Participant (or each Participant's Beneficiary) who receives a distribution of Company Stock if, at the time of such distribution, Company Stock is not then readily tradable on an established market, as defined in Section 409(h) of the Code and the regulations thereunder.  The Put Option shall permit the Participant (or the Participant's Beneficiary) to sell such Company Stock at its then fair

40

Source: TRIBUNE CO, 8-K, April 05, 2007

market value, as determined by the Trustee in accordance with the provisions of Section 7.8, to the Company at any time during the sixty-day period commencing on the date the Company Stock was distributed to the Participant (or the Participant's Beneficiary), and, if not exercised within that period, the Put Option will temporarily lapse. The Administrator, in its sole discretion, may extend the sixty-day period referred to in the immediately preceding sentence if such an extension is necessary in order for the Company Stock to be valued by an independent appraiser as of the applicable Accounting Date coincident with or immediately preceding the date the Company Stock was distributed to the recipient. As of the annual Accounting Date coincident with or immediately preceding the Plan Year in which such temporary lapse of the Put Option occurs, the independent appraiser shall determine the value of the Company Stock in accordance with the provisions of Section 7.8, and the Administrator shall notify each distributee who did not exercise the initial Put Option prior to its temporary lapse in the preceding Plan Year of the revised value of the Company Stock. The time during which the Put Option may be exercised shall recommence on the date such notice or revaluation is given and shall permanently terminate sixty days thereafter. The Trustee may be permitted by the Company to purchase Company Stock put to the Company under a Put Option. Payment for Company Stock sold pursuant to a Put Option shall be made, as determined in the discretion of the Administrator, in the following forms:

     (a)     If a Participant's ESOP Stock Account is distributed in a total distribution (that is, a distribution within one taxable year of the balance to the credit of the Participant's ESOP Stock Account), then payment for such Company Stock may be made with a promissory note that provides for substantially equal annual installments commencing within thirty days from the date of the exercise of the Put Option and over a period not exceeding five years, with interest payable at a reasonable rate (as determined by the Administrator) on any unpaid installment balance, with adequate security provided, and without penalty for any prepayment of such installments; or

     (b)     In a lump sum no later than thirty days after such Participant exercises the Put Option.

     If the Company's charter or by-laws restrict ownership of substantially all of the outstanding Company Stock to Employees and the Trust or if the Company has elected to be taxed as an "S corporation" under Code Section 1361, then shares of Company Stock distributed to or for the benefit of a Participant (or his Beneficiary) must be immediately sold to the Company in accordance with this Section and the Participant will not be entitled to the two 60-day put periods.

41

Source: TRIBUNE CO, 8-K, April 05, 2007

**12.3    Share Legend; Other Restrictions**

Shares of Company Stock held or distributed by the Trustee may include such legend restrictions on transferability as the Company may reasonably require in order to assure compliance with applicable Federal and state securities laws and the provisions of this Section 12.

Except as otherwise provided in this Section, no shares of Company Stock held or distributed by the Trustee may be subject to a put, call or other option, or buy-sell or similar arrangement.

**12.4    Nonterminable Rights**

The provisions of this Section 12 are nonterminable, and shall continue to be applicable to shares of Company Stock even if the Plan ceases to be an employee stock ownership plan within the meaning of Section 4975(e)(7) of the Code.

42

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 13

### Voting and Tendering of Company Stock

The voting of Company Stock held in the Trust, and if a tender offer is made for Company Stock, the tendering of such shares, shall be subject to the provisions of ERISA and the following provisions, to the extent such provisions are not inconsistent with ERISA:

(a)    **Allocated Shares**. For purposes of this Section, shares of Company Stock shall be deemed to be allocated and credited to a Participant's ESOP Stock Account in an amount to be determined based on the balance in such account on the Accounting Date coincident with or next preceding the record date of any vote or tender offer.

(b)    **Voting of Company Stock**. With respect to any corporate matter which involves the voting of Company Stock which is a registration-type class of securities, or which involves the voting of Company Stock which is not a registration type class of securities with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business, or such other transactions which may be prescribed by regulation, each Participant may be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts, but only to the extent required by Sections 401(a)(22) and 409(e) of the Code and the regulations thereunder. For purposes of the foregoing sentence, each Participant shall be a Named Fiduciary of the Plan as described in Section 402(a)(2) of ERISA. The Administrator shall have the sole responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock under this provision. If a Participant is entitled to so direct the Trustee, all allocated Company Stock as to which such instructions have been received (which may include an instruction to abstain) shall be voted by the Trustee in accordance with such instructions, provided that the Trustee may vote the shares as it determines is necessary to fulfill his fiduciary duties under ERISA. The Trustee shall vote in his discretion, subject to his fiduciary duties under ERISA: (1) any shares of Company Stock held in the Loan Suspense Account; (2) any allocated shares of Company Stock as to which no voting instructions have been received; and (3) all shares of Company Stock held in the Trust on any issue not subject to Participant voting direction under this paragraph.

(c)    **Tendering of Company Stock**. In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the

43

Source: TRIBUNE CO, 8-K, April 05, 2007

Trustee shall tender or sell the shares in its sole discretion, subject to the fiduciary duties under ERISA.

In carrying out its responsibilities under this Section, the Trustee may rely on information furnished to it by the Administrator, including the names and current addresses of Participants, the number of shares of Company Stock allocated to their Accounts, and the number of shares of Company Stock held by the Trustee that have not yet been allocated.

44

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 14

### General Provisions

**14.1    Interests Not Transferable**

The interests of Participants and their beneficiaries under the Plan are not in any way subject to their debts or other obligations and, except as may be required by the tax withholding provisions of the Code or any state's income tax act, may not be voluntarily or involuntarily sold, transferred, alienated or assigned.  Notwithstanding the foregoing, the Plan shall comply with any domestic relations order that, in accordance with procedures established by the Administrator, is determined to be a qualified domestic relations order (as defined in Section 414(p)(1)(A) of the Code), and shall comply with any judgment or settlement to the extent permitted by Code section 401(a)(13)(C).

**14.2    Absence of Guaranty**

The Administrator, the Employers, and the Trustee do not in any way guarantee the Trust from loss or depreciation. The liability of the Administrator or the Trustee to make any payment under the Plan will be limited to the assets held by the Trustee that are available for that purpose.

**14.3    Employment Rights**

The Plan does not constitute a contract of employment, and participation in the Plan will not give any Employee the right to be retained in the employ of an Employer, nor any right or claim to any benefit under the Plan, unless such right or claim has specifically accrued under the terms of the Plan.

**14.4    Litigation by Participants or Other Persons**

To the extent permitted by law, if a legal action against the Trustee, an Employer, or the Administrator by or on behalf of any person results adversely to that person, or if a legal action arises because of conflicting claims to a Participant's or Beneficiary's benefits, the cost to the Trustee, an Employer, or the Administrator of defending the action will be charged to the extent possible to the sums, if any, that were involved in the action or were payable to the Participant or Beneficiary concerned.

**14.5    Evidence**

Evidence required of anyone under the Plan may be by certificate, affidavit, document or other information that the person acting on it considers pertinent and reliable, and signed, made or presented by the proper party or parties.

45

Source: TRIBUNE CO, 8-K, April 05, 2007

**14.6    Waiver of Notice**

Any notice required under the Plan may be waived by the person entitled to such notice.

**14.7    Controlling Law**

To the extent not superseded by the laws of the United States, the laws of Illinois shall be controlling in all matters relating to the Plan.

**14.8    Statutory References**

Any reference in the Plan to the Code means the Internal Revenue Code of 1986, as amended (the "*Code*"). Any reference in the Plan to ERISA means the Employee Retirement Income Security Act of 1974, as amended ("*ERISA*"). Any reference in the Plan to a section of the Code or ERISA or to a section of any other Federal law, shall include any comparable section or sections of any future legislation that amends, supplements or supersedes that section.

**14.9    Severability**

In case any provisions of the Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provi-sions of the Plan, and the Plan shall be construed and enforced as if such illegal and invalid provisions had never been set forth in the Plan.

**14.10    Additional Employers**

With the consent of the Company, any Controlled Group Member may, by filing with the Company a written instrument to that effect, become an Employer hereunder by adopting the Plan and becoming a party to the Trust agreement.

**14.11    Action By Employers**

Any action authorized or required to be taken by the Company or an Employer under the Plan shall be by resolution of its board of directors, by resolution of a duly authorized committee of its board of directors, or by a person or persons authorized by resolution of its board of directors or such committee.

**14.12    Gender and Number**

Where the context admits, words in the masculine gender include the feminine and neuter genders, the plural includes the singular, and the singular includes the plural.

46

Source: TRIBUNE CO, 8-K, April 05, 2007

**14.13    Indemnification**

To the extent permitted by law, any member or former member of the Administrator, any person who was, is or becomes an officer or director of the Company, an Employer, or a Related Company or any Employee of an Employer to whom the Administrator or any Employer has delegated any portion of its responsibilities under the Plan, and all employees and agents thereof, shall be indemnified and saved harmless by the Employers (to the extent not indemnified or saved harmless under any liability insurance contract or other indemnification arrangement with respect to the Plan) from and against any and all liability to which the Administrator and such other persons may be subject by reason of any act done or omitted to be done in good faith with respect to the administration of the Plan and the Trust, including all expenses reasonably incurred in their defense in the event that the Employers failed to provide such defense after having been requested in writing to do so.

**14.14    Automated Systems**

The Administrator, in its discretion, may authorize Participants to make various requests for information, elections and other transactions under the Plan through the use of one or more of the following methods:  (a) written communications, (b) telephonic, automated voice response system, (c) computer network, or (d) any other method designated by the Administrator.

47

## SECTION 15

### Restrictions as to Reversion of Trust Assets to the Employers

The Employers shall have no right, title or interest in the assets of the Trust, except as may be provided in a pledge agreement entered into between an Employer and the Trustee in connection with an Acquisition Loan (a "*Pledge Agreement*"). No part of the assets of the Trust at any time will revert or will be repaid to the Employers, directly or indirectly, except as follows:

(a)    If the Internal Revenue Service initially determines that the Plan, as applied to an Employer, does not meet the requirements of a qualified plan under Section 401(a) of the Code, the assets of the Trust attributable to contributions made by the Employer under the Plan shall be returned to the Employer within one year of the date of denial of qualification of the Plan as applied to the Employer.

(b)    If a contribution or a portion of a contribution is made by an Employer as a result of a mistake of fact, such contribution or portion of a contribution shall not be considered to have been contributed to the Trust by the Employer and, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date the amount is paid to the Trust.

(c)    Each contribution made by an Employer is conditioned upon the deductibility of such contribution as an expense for Federal income tax purposes. If and to the extent the deduction for the contribution made by the Employer is disallowed, such contribution, or portion of such contribution, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date of disallowance of the deduction.

(d)    If there is a default on an Acquisition Loan, an Employer may exercise its rights under the Pledge Agreement with respect to the shares of Company Stock subject to the Pledge Agreement (including, but not limited to, the sale of pledged shares, the transfer of pledged shares to the Employer, and the registration of pledged shares in the Employer's name).

Contributions may be returned to an Employer pursuant to paragraph (a) above only if they are conditioned upon initial qualification of the Plan as applied to that Employer and an application for determination was made by the time prescribed by law for filing the Employer's Federal income tax return for the taxable year in which the Plan was adopted (or such later date as the Secretary of the Treasury may prescribe). In no event may the return of

48

Source: TRIBUNE CO, 8-K, April 05, 2007

a contribution pursuant to paragraph (b) or (c) above cause any Participant's Account balances to be less than the amount of such balances had the contribution not been made under the Plan.

49

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 16

### Amendment and Termination

**16.1    Amendment**

While the Company expects and intends to continue the Plan, the Company reserves the right to amend the Plan from time to time by action of the Board of Directors.  Notwithstanding the foregoing:

(a)    An amendment may not change the duties and liabilities of the Administrator or the Trustee without the consent of the Administrator or the Trustee, whichever is applicable;

(b)    An amendment shall not reduce the value of a Participant's nonforfeitable benefits accrued prior to the later of the adoption or the Effective Date of the amendment; and

(c)    Except as provided in Section 15, under no condition shall any amendment result in the return or repayment to the Employers of any part of the Trust or the income therefrom or result in the distribution of the Trust for the benefit of anyone other than Employees and former Employees of the Employers and any other persons entitled to benefits under the Plan.

The Administrator shall notify the Trustee of any amendment of the Plan within a reasonable period of time.

**16.2    Termination**

The Plan will terminate as to all Employers on any date specified by the Company.  The Plan will terminate as to an individual Employer on the date it is terminated by that Employer if thirty days' advance written notice of the termination is given to the Administrator, the Trustee and the other Employers.

**16.3    Nonforfeitability and Distribution on Termination**

On termination or partial termination of the Plan, the rights of all affected Participants to benefits accrued to the date of such termination, after all adjustments then required have been made, shall be nonforfeitable.  The Administrator shall specify the date of such termination or partial termination as a Special Accounting Date.  All appropriate provisions of the Plan will continue to apply until the account balances of all such Participants have been distributed under the Plan.

50

Source: TRIBUNE CO, 8-K, April 05, 2007

**16.4    Plan Merger, Consolidation, Etc.**

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant's benefits (if the Plan terminated immediately after such merger, consolidation or transfer) shall be equal to or greater than the benefits the Participant would have been entitled to receive if the Plan had terminated immediately before the merger, consolidation or transfer.

51

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 17

### Administration

**17.1    The Administrator**

The Plan is administered by an Administrator appointed by the Company, which shall consist of one or more individuals (who may but need not be Employees of the Employers) to conduct Plan administrative functions (the *"Administrator"*).

**17.2    The Administrator's General Powers, Rights, and Duties**

The Administrator shall have all the powers necessary and appropriate to discharge its duties under the Plan, which powers shall be exercised in the sole and absolute discretion of the Administrator, including, but not limited to, the following:

(a)    To construe and interpret the provisions of the Plan and to make factual determinations thereunder, including the power to determine the rights or eligibility under the Plan of Employees, Participants, or any other persons, and the amounts of their benefits (if any) under the Plan, and to remedy ambiguities, inconsistencies or omissions, and such determinations by the Administrator shall be binding on all parties. Benefits under this Plan will be paid only if the Admini-strator decides in its discretion that the applicant is entitled to them.

(b)    To adopt such rules of procedure and regulations as in its opinion may be necessary for the proper and efficient administration of the Plan and as are consistent with the Plan and Trust agreement.

(c)    To enforce the Plan in accordance with the terms of the Plan and the Trust and in accordance with the rules and regulations the Administrator has adopted.

(d)    To direct the Trustee as respects payments or distributions from the Trust in accordance with the provisions of the Plan.

(e)    To furnish the Employers with such information as may be required by them for tax or other purposes in connection with the Plan.

(f)    To employ agents, attorneys, accountants, actuaries or other persons (who also may be employed by the Employers) and to allocate or delegate to them such powers, rights and duties as the Administrator may consider necessary or advisable to properly carry out administration of the Plan, provided that such allocation or delegation

52

Source: TRIBUNE CO, 8-K, April 05, 2007

and the acceptance thereof by such agents, attorneys, accountants, actuaries or other persons, shall be in writing.

(g)    To appoint an investment manager as defined in section 3(38) of ERISA to manage (with power to acquire and dispose of) the assets of the Plan, which investment manager may or may not be a subsidiary of the Company, and to delegate to any such investment manager all of the powers, authorities and discretions granted to the Administrator hereunder or under the Trust agreement (including the power to delegate and the power, with prior notice to the Administrator, to appoint an investment manager), and to remove any investment manager; provided, however, that the power and authority to manage, acquire, or dispose of any asset of the Plan shall not be delegated except to an investment manager, and provided further that the acceptance by any investment manager of such appointment and delegation shall be in writing, and the Administrator shall give notice to the Trustee, in writing, of any appointment of, delegation to or removal of an investment manager.

(h)    <u>Special Exercise of Trustee Discretion</u>:  To authorize the Trustee to act without the direction of the Administrator with regard to any matter concerning the purchase, sale, or voting of Company Stock, including the financing and other matters incidental to such purchase or sale, upon the written consent of the Trustee to accept such responsibility, in which case the Administrator shall have no authority or responsibility whatsoever with regard to the matters so delegated to the Trustee.

**17.3    Interested Administrator Member**

If a member of the Administrator is also a Participant in the Plan, the Administrator member may not decide or determine any matter or question concerning distributions of any kind to be made to the Administrator member or the nature or mode of settlement of the Administrator member's benefits, unless such decision or determination could be made by the Administrator member under the Plan if the Administrator member were not serving on the Administrator.

**17.4    Administrator Expenses**

All costs, charges and expenses reasonably incurred by the Administrator will be paid by the Company to the extent not paid from the assets of the Trust.  No compensation will be paid to a member of the Administrator as such.

53

Source: TRIBUNE CO, 8-K, April 05, 2007

**17.5    Uniform Rules**

The Administrator shall administer the Plan on a reasonable and nondiscriminatory basis and shall apply uniform rules to all persons similarly situated.

**17.6    Information Required by the Administrator**

Each person entitled to benefits under the Plan shall furnish the Administrator with such documents, evidence, data or information as the Administrator considers necessary or desirable for the purpose of administering the Plan. The Employers shall furnish the Administrator with such data and information as the Administrator may deem necessary or desirable in order to administer the Plan. The records of the Employers as to an Employee's or a Participant's period of employment, Hour of Service, termination of employment and the reason therefore, leave of absence, reemployment and Compensation will be conclusive on all persons unless determined to the Administrator's satisfaction to be incorrect.

**17.7    Review of Benefit Determinations**

The Administrator will provide notice in writing to any Participant or Beneficiary whose claim for benefits under the Plan is denied, and the Administrator shall afford such Participant or Beneficiary a full and fair review of its decision if so requested.

**17.8    Administrator's Decision Final**

Subject to applicable law, any interpretation of the provisions of the Plan and any decisions on any matter within the discretion of the Administrator made by the Administrator in good faith shall be binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Administrator shall make such adjustment on account thereof as it considers equitable and practicable.

**17.9    Denial Procedure and Appeal Process**

A Participant with an unresolved question about benefits may request a formal review of the situation in writing from the Administrator within sixty days after receiving notification of his Plan benefits. A review decision will be made within sixty days after receipt of such request (one hundred twenty days in special circumstances) and the Participant will be informed of the decision within ninety days after receipt of such request (one hundred eighty days in special circumstances). However, if the Participant is not informed of the decision within the period described above, the Participant may request a further review by the Administrator as described below as if he or she had received notice of an adverse decision at the end of that period. The decision will be written in a manner setting forth the specific reasons for any denial of a benefit or benefit option, specific reference to pertinent Plan provisions on which such denial is based, a description of any additional material or information necessary for the Participant to perfect the claim and an explanation of why such material or information is necessary, and an explanation of the Plan's claim review procedure. The Participant may request a further review by the

54

Administrator of the decision denying the claim by filing with the Administrator within sixty days after such notice has been received a written request for such review, and may review pertinent documents, and submit issues and comments in writing, within the same sixty-day period. If such request is so filed, such review shall be made by the Administrator within sixty days after receipt of such request, unless special circumstances require an extension of time for processing in which case the review will be completed and decision rendered within one hundred twenty days. The Participant will be given written notice of the decision which will include specific reasons for the decision, and specific references to the pertinent Plan provisions on which the decision is based, and such decision by the Administrator shall be final and shall terminate the review process.

If a Participant claims disability benefits under the ESOP, within 45 days of receiving an application for such benefits, the Committee, or its authorized representative, will provide the Participant with a written notice of its decision. This 45-day period may be extended by 30 days if the Committee determines the extension is necessary because of circumstances outside the ESOP's control, and the Participant is notified before the end of the 45-day period. If before the end of the 30-day extension period, the Committee determines that additional time is necessary, the period may be extended for a second 30-day period, if the Participant is notified before the end of the first 30-day extension period and the notice specifies the circumstances requiring the extension and the date as of which the Plan expects to render a decision.

In the case of a denial of the Participant's application, the written notice will contain the following:

1.    The specific reasons for the denial, with reference to the ESOP provisions upon which the denial is based;

2.    A description of any additional information or material necessary for perfection of the application (together with an explanation why the material or information is necessary); and

3.    An explanation of the ESOP's claim review procedure and the time limits applicable to such procedure, including a statement of the Participant's right to bring a civil action (under Section 502 of ERISA) after an adverse benefit determination on appeal.

If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, the Committee either will provide the specific rule, guideline, protocol or other similar criterion or the Committee will provide a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

55

Source: TRIBUNE CO, 8-K, April 05, 2007

A Participant may appeal an adverse benefit determination relating to a claim for disability benefits under the ESOP or contest the amount of benefits payable, by filing an appeal in writing within sixty (60) days after the date of notice of the decision with respect to the application. If the claim was neither approved nor denied within the ninety day period provided above, then the appeal must be made within sixty (60) days after the expiration of the ninety (90) day period. The appeal will be given full and fair review by the Committee. The Participant may review all pertinent documents and submit issues and comments in writing in connection with the appeal.

Any review of an appeal of a denied claim that a Participant is disabled under the ESOP must meet the following standards: the review does not afford deference to the initial adverse benefit determination; the review is conducted by an appropriate named fiduciary who is neither the party who made the initial adverse benefit determination that is the subject of the appeal nor a subordinate of such party; the review provides that the appropriate named fiduciary consult with health care professionals with appropriate training and experience in the field of medicine involved in the medical judgment in deciding the appeal of an adverse benefit determination that is based in whole or in part on a medical judgement; and the review provides for the identification of the medical or vocational experts whose advice was obtained in connection with the Participant's adverse benefit determination, without regard to whether the advice was relied upon in making the determination.

The decision on appeal will be made promptly, and not later than 45 days after the receipt of a request for review, unless special circumstances require an extension of time for processing, in which case, the special circumstances and the date by which a decision is expected to be rendered shall be communicated to the Participant in writing. In no event will the extension exceed a period of 45 days from the end of the initial 45-day period.

The decision on review shall be in writing and shall include:

1.  The specific reasons for the denial, with reference to the ESOP provisions upon which the denial is based;

2.  A statement that the Participant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for disability benefits.

3.  A statement of the Participant's right to bring a civil action (under Section 502 of ERISA) after an adverse benefit determination on appeal.

If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, the Participant will either be provided the specific rule, guideline, protocol or other similar criterion or will be provided a statement that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse

56

Source: TRIBUNE CO, 8-K, April 05, 2007

determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

57

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 18

### Special Rules Applicable When Plan is Top-Heavy

**18.1    Purpose and Effect**

The purpose of this Section 18 is to comply with the requirements of Section 416 of the Code.  The provisions of this Section 18 are effective for each Plan Year beginning on or after the Effective Date in which the Plan is a *"Top-Heavy Plan"* within the meaning of Section 416(g) of the Code.

**18.2    Top-Heavy Plan**

In general, the Plan will be a Top-Heavy Plan for any Plan Year if, as of the *"Determination Date"* (that is, the last day of the preceding Plan Year), the sum of the amounts in paragraphs (a), (b) and (c) below for Key Employees exceeds sixty percent of the sum of such amounts for all Employees who are covered by this Plan or by a defined contribution plan or defined benefit plan that is aggregated with this Plan in accordance with Section 18.4:

(a)     The aggregate account balances of Participants under this Plan.

(b)     The aggregate account balances of Participants under any other defined contribution plan included under Section 18.4.

(c)     The present value of the cumulative accrued benefits of Participants calculated under any defined benefit plan included in Section 18.4.

In making the foregoing determination:  (i) a Participant's account balances or cumulative accrued benefits shall be increased by the aggregate distributions, if any, made with respect to the Participant during the 1-year period (except with respect to in-service distributions, for which a 5-year period shall apply) ending on the Determination Date, including distributions under a terminated plan that, if it had not been terminated, would have been required to be included in the aggregation group, (ii) the account balances or cumulative accrued benefits of a Participant who was previously a Key Employee, but who is no longer a Key Employee, shall be disregarded, (iii) the account balances or cumulative accrued benefits of a Beneficiary of a Participant shall be considered Accounts or accrued benefits of the Participant, (iv) the account balances or cumulative accrued benefits of a Participant who has not performed services for an Employer or a Related Company at any time during the 1-year period ending on the Determination Date shall be disregarded and (v) any rollover contribution (or similar transfer) from a plan maintained by a corporation other than an Employer under this Plan initiated by a Participant shall not be taken into account as part of the Participant's aggregate account balances under this Plan.

58

Source: TRIBUNE CO, 8-K, April 05, 2007

18.3    **Key Employee**

In general, a *"Key Employee"* is an Employee (or a former or deceased Employee) who, at any time during the Plan Year is or was:

(a)    an officer of the Employer having annual compensation greater than $130,000, as adjusted from time to time by the Internal Revenue Service; provided that, for purposes of this paragraph, no more than fifty Employees of the Employer (or, if lesser, the greater of three Employees or ten percent of the Employees) shall be treated as officers;

(b)    a five percent or greater owner of an Employer; or

(c)    a one percent or greater owner of an Employer having annual compensation from the Employer of more than $150,000 (as adjusted by the Internal Revenue Service).

For purposes of this Section, a Participant's compensation means the wages paid to a Participant within the meaning of Section 3401(a) of the Code and all other payments of compensation to the Participant by an Employer for which the Employer is required to furnish the Participant a written statement, as described in Treas. Reg. § 1.415-2(d)(11)(i), but _including_ for such Plan Year or Accounting Period all of a Participant's salary deferrals made during such time pursuant to an arrangement maintained by an Employer under Sections 125, 132(f) or 401(k) of the Code.

18.4    **Aggregated Plans**

Each other defined contribution plan and defined benefit plan maintained by an Employer that covers a Key Employee as a Participant or that is maintained by an Employer in order for a plan covering a Key Employee to satisfy Section 401(a)(4) or 410 of the Code, regardless of whether or not such plan has been terminated, shall be aggregated with this Plan in determining whether this Plan is top-heavy. In addition, any other defined contribution or defined benefit plan of an Employer may be included if all such plans that are included, when aggregated, will not discriminate in favor of officers, shareholders or Highly Compensated Employees and will satisfy all of the applicable requirements of Sections 401(a)(4) and 410 of the Code.

18.5    **Minimum Employer Contribution**

Subject to the following provisions of this Section and Section 18.6, for any Plan Year in which the Plan is a Top-Heavy Plan, the Employer contribution credited to each Participant who is not a Key Employee shall not be less than 3 percent of such Participant's total compensation from the Employers for that year. In no event, however, shall the total

59

Source: TRIBUNE CO, 8-K, April 05, 2007

Employer contribution credited in any year to a Participant who is not a Key Employee (expressed as a percentage of such Participant's total compensation from the Employers) be required to exceed the maximum total Employer contribution credited in that year to a Key Employee (expressed as a percentage of such Key Employee's total compensation from the Employers).  Contributions made by an Employer under the Plan pursuant to Participants' income deferral authorizations shall not be deemed Employer Contributions for purposes of this Section.  Employer matching contributions (as defined in Code Section 401(m)(4)(A)) shall be taken into account for purposes of this paragraph.  The amount of minimum Employer contribution otherwise required to be allocated to any Participant for any Plan Year under this Section shall be reduced by the amount of Employer Contributions allocated to him for a Plan Year ending with or within that Plan Year under any other tax-qualified defined contribution plan maintained by an Employer.

**18.6    Coordination of Benefits**

   For any Plan Year in which the Plan is top-heavy, in the case of a Participant who is a non-Key Employee and who is a Participant in a top-heavy tax-qualified defined benefit plan that is maintained by an Employer and that is subject to Section 416 of the Code, Section 18.6 shall not apply, and the minimum benefit to be provided to each such Participant in accordance with this Section 18 and Section 416(c) of the Code shall be the minimum annual retirement benefit to which he is entitled under such defined benefit plan in accordance with such Section 416(c), reduced by the amount of annual retirement benefit purchasable with his Plan Accounts (or portions thereof) attributable to Employer contributions under this Plan and any other tax-qualified defined contribution plan maintained by an Employer.

   IN WITNESS WHEREOF, the foregoing plan is adopted by the Company, this 1st day of April, 2007.

        TRIBUNE COMPANY

        /s/ Dennis J. FitzSimons
        By: Dennis J. FitzSimons
        Its: Chairman, President and Chief Executive Officer

60

Source: TRIBUNE CO, 8-K, April 05, 2007

EXHIBIT 1

**Tribune Employee Stock Ownership Plan**

List of Participating Employers as of January 1, 2007

| Co Code | Company Name |
|---------|--------------|
| 100 | Tribune Publishing Company |
| 101 | Chicago Tribune Company |
| 103 | Chicago Tribune Press Services |
| 104 | Newspapers Readers Agency, Inc |
| 105 | Tribune Direct |
| 106 | Chicagoland Publishing Company |
| 109 | Chicago Tribune Interactive |
| 121 | Tribune Media Net |
| 130 | Sun Sentinel |
| 131 | Gold Coast Publications |
| 132 | Sun Sentinel Development |
| 135 | Forum Publishing Group, Inc. |
| 136 | TI — SFLA |
| 140 | Sentinel Communications |
| 145 | TI — Orlando |
| 160 | The Daily Press |
| 162 | Virginia Gazette, LLC |
| 163 | TI - Hampton Roads |
| 170 | Tribune Media Services |
| 171 | Tribune Interactive |
| 172 | TMS — Glens Falls |
| 173 | TMS Europe |
| 174 | Tribune Media Serv-Glendale, WI |
| 178 | Tribune Media Svcs |
| 190 | Chicagoland TV |
| 191 | Oakbrook Productions |
| 200 | Tribune Broadcasting Company |
| 210 | WPIX-TV |
| 213 | KCPQ, Inc. |
| 215 | KHCW-TV |
| 217 | WXMI |
| 220 | KTLA-TV |
| 225 | KSWB-TV |

61

Source: TRIBUNE CO, 8-K, April 05, 2007

| | |
|---|---|
| 230 | WGN-TV |
| 231 | WGN Cable Sales |
| 232 | Tower Distribution Company |
| 241 | WTIC-TV |
| 242 | WXIN-TV |
| 243 | KDAF-TV |
| 244 | WPMT-TV |
| 245 | KTXL-TV |
| 246 | WSFL-TV |
| 250 | WGNO/WNOL |
| 252 | WDCW-TV |
| 255 | WPHL-TV |
| 265 | KWGN-TV |
| 270 | KPLR-TV |
| 275 | KRCW-TV |
| 285 | Tribune Broadcasting News Ntwk |
| 290 | WGN-AM Radio 720 |
| 310 | Tribune Entertainment Company |
| 311 | 5800 Sunset Productions |
| 500 | Tribune Company |
| 501 | Tribune Information Systems |
| 504 | Tribune Finance Service Center |
| 505 | Tribune Properties |
| 600 | Los Angeles Times Commun. LLC |
| 601 | Los Angeles Times Newspapers |
| 603 | Los Angeles Times Interactive |
| 605 | Recycler Classifieds |
| 609 | California Community News |
| 610 | The Hartford Courant |
| 611 | Tribune Interactive - Hartford |
| 613 | Valumail |
| 614 | New Mass Media |
| 620 | The Morning Call, Inc. |
| 621 | Morning Call Interactive |
| 623 | Tribune Direct (ABE) |
| 640 | The Baltimore Sun |
| 641 | Interactive |
| 642 | Patuxent Publishing Company |
| 643 | Homestead Publishing Co. |

62

Source: TRIBUNE CO, 8-K, April 05, 2007

| 660 | Newsday |
| 661 | Newsday.com |
| 662 | Newsday, Inc. |
| 663 | Star Community Publishing Grp |
| 664 | DSA Community Publishing |
| 669 | Tribune NY Newspaper Holdings |
| 670 | Hoy Publications LLC |
| 671 | Hoy L.A. |
| 672 | Hoy Chicago |
| 674 | Hoy-Central |
| 703 | Metromix Central |

63

Source: TRIBUNE CO, 8-K, April 05, 2007

Exhibit 10.15

[EXECUTION COPY]

## TRIBUNE EMPLOYEE STOCK OWNERSHIP TRUST

Source: TRIBUNE CO, 8-K, April 05, 2007

# TABLE OF CONTENTS

| | | PAGE |
|---|---|---|
| **SECTION 1** | | 1 |
| | Name | 1 |
| | | 1 |
| **SECTION 2** | | 1 |
| | MANAGEMENT AND CONTROL OF TRUST FUND ASSETS | 1 |
| 2.1 | The Trust Fund | 1 |
| 2.2 | Plan Administration | 2 |
| 2.3 | Exercise of Trustee's Duties | 2 |
| 2.4 | Investment in Company Stock | 3 |
| 2.5 | General Powers | 3 |
| 2.6 | Responsibility of Trustee | 6 |
| 2.7 | Compensation and Expenses | 6 |
| 2.8 | Continuation of Powers Upon Trust Termination | 7 |
| 2.9 | No Reversion to Company | 7 |
| | | 7 |
| **SECTION 3** | | 7 |
| | PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK | 7 |
| 3.1 | Purchase and Sale of Company Stock | 7 |
| 3.2 | Stock Dividends, Splits and Other Capital Reorganizations | 7 |
| 3.3 | Voting and Tender of Shares | 7 |
| 3.4 | Put Option | 7 |
| | | 8 |
| **SECTION 4** | | 8 |
| | ADDITIONAL EMPLOYERS | 8 |
| | | 9 |
| **SECTION 5** | | 9 |
| | Change of Trustee | 9 |
| 5.1 | Resignation | 9 |
| 5.2 | Removal of the Trustee | 9 |
| 5.3 | Duties of Resigning or Removed Trustee and of Successor Trustee | 9 |
| 5.4 | Filling Trustee Vacancy | 9 |
| | | 10 |
| **SECTION 6** | | 10 |
| | Amendment and Termination | 10 |
| 6.1 | Amendment | 10 |
| 6.2 | Termination | 10 |
| | | 10 |
| **SECTION 7** | | 10 |
| | MISCELLANEOUS | 10 |
| 7.1 | Disagreement as to Acts | 10 |

Source: TRIBUNE CO, 8-K, April 05, 2007

**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| 7.2 | Persons Dealing with Trustee | 11 |
| 7.3 | Benefits May Not Be Assigned or Alienated | 11 |
| 7.4 | Evidence | 11 |
| 7.5 | Waiver of Notice | 11 |
| 7.6 | Counterparts | 11 |
| 7.7 | Governing Laws and Severability | 11 |
| 7.8 | Successors, Etc. | 11 |
| 7.9 | Action | 11 |
| 7.10 | Conformance with Plan | 12 |
| 7.11 | Indemnification | 12 |
| 7.12 | Headings | 14 |
| 7.13 | Multiple Trustees | 14 |
| 7.14 | Integration | 14 |

ii

Source: TRIBUNE CO, 8-K, April 05, 2007

## TRIBUNE EMPLOYEE STOCK OWNERSHIP TRUST

THIS AGREEMENT, made this 1st day of April, 2007, effective as of the 7th day of February, 2007, by and between Tribune Company, a Delaware corporation, (the "Company"), and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust (the "Trust"), and its successor or successors and assigns (the "Trustee").

### WITNESSETH THAT:

WHEREAS, the Company has established an employee stock ownership plan (as described in Section 4975(e)(7) of the Internal Revenue Code of 1986, as it may be amended from time to time (the "Code")), which is known as the Tribune Employee Stock Ownership Plan (the "Plan"); and

WHEREAS, the Plan was established for the exclusive benefit of eligible employees of the Company and those of any Controlled Group Member (as defined in Section 4) which adopts the Plan and becomes a party to this Trust Agreement as provided in Section 4 (the Company and the Controlled Group Members that are parties hereto are sometimes referred to below collectively as the "Employers" and individually as an "Employer");

NOW THEREFORE, pursuant to the authority delegated to the undersigned officers of the Company by resolution of its Board of Directors (the "Board"), IT IS AGREED, by and between the parties hereto, that the trust provisions contained herein shall constitute the agreement between the Company and the Trustee in connection with the Plan; and

IT IS FURTHER AGREED, that the Trustee hereby accepts its appointment as such under this Trust Agreement, effective as of February 7, 2007.

IT IS FURTHER AGREED, by and between the parties hereto as follows:

### SECTION 1

#### Name

This Trust Agreement and Trust hereby evidenced shall be known as the "TRIBUNE EMPLOYEE STOCK OWNERSHIP TRUST."

### SECTION 2

#### MANAGEMENT AND CONTROL OF TRUST FUND ASSETS

**2.1    The Trust Fund**

The "Trust Fund" at any date means all property of every kind then held by the Trustee pursuant to this Trust Agreement. The Trustee may manage, administer and invest all contributions made by the several Employers under the Plan as one Trust Fund. If, for any

1

Source: TRIBUNE CO, 8-K, April 05, 2007

reason, it becomes necessary to determine the portion of the Trust Fund allocable to employees and former employees of any Employer as of any date, the Administrator (as defined in Section 2.2) shall specify such date as an accounting date, and after all adjustments required under the Plan as of that accounting date have been made, the portion of the Trust Fund attributable to such employees and former employees shall be determined and shall consist of an amount equal to the aggregate of the account balances of employees and former employees of that Employer plus an amount equal to any allocable contributions made by that Employer since the close of the immediately preceding Plan Year.

### 2.2    Plan Administration

The Plan shall be administered by a committee of one or more persons (the "Administrator"), the members of which shall be certified to the Trustee by the Company. The Administrator may authorize one or more individuals to sign all communications between the Administrator and Trustee and shall at all times keep the Trustee advised of the names of the members of the Administrator, the individuals authorized to sign on behalf of the Administrator, and provide specimen signatures thereof. With the Trustee's prior written consent, the Administrator may authorize the Trustee to act, without specific directions or other directions or instructions from the Administrator, on any matter or class of matters with respect to which directions or instructions from the Administrator are called for hereunder. The Trustee shall be fully protected in relying on any communication sent by any authorized person and shall not be required to verify the accuracy or validity of any signature unless the Trustee has reasonable grounds to doubt the authenticity of any signature. If the Trustee requests any directions hereunder with respect to a matter that is not within the Trustee's sole discretion and does not receive them, the Trustee shall act or refrain from acting, as it may determine, with no liability for such action or inaction. If at any time the person(s) serving as the Administrator and the person(s) serving as the Trustee are identical, then there shall be no need for written instructions from the Administrator to the Trustee, and all actions taken by the Trustee shall be deemed to have been properly authorized by the Administrator.

### 2.3    Exercise of Trustee's Duties

The Trustee shall discharge its duties hereunder solely in the interest of the Participants and their Beneficiaries, as such terms are described in the Plan, and:

(a)    for the exclusive purpose of:

(i)    providing benefits to Participants and Beneficiaries, and

(ii)    defraying reasonable expenses of administering the Plan;

(b)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(c)    in accordance with the documents and instruments governing the Plan unless, in the good faith judgment of the Trustee, the documents and instruments are not

2

Source: TRIBUNE CO, 8-K, April 05, 2007

consistent with the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

(d)     in a manner that does not constitute a non-exempt prohibited transaction under section 4975 of the Code or sections 406 or 407 of ERISA.

### 2.4    Investment in Company Stock

The primary purpose of the Plan is to acquire an ownership interest in the Company either from the Company or its shareholders and to provide deferred compensation benefits to Participants and Beneficiaries in the form of Company Stock. Accordingly, the Plan has been established to provide for investment primarily in shares of Company Stock. In furtherance of the purposes for which the Plan has been established and designed, the Trustee shall, in accordance with the terms of the Plan, ERISA and the Code (a) acquire shares of Company Stock with Trust Assets or with the proceeds of a loan, (b) hold unallocated shares of Company Stock which have been acquired with the proceeds of a loan in a suspense account for release and allocation to the accounts of Participants, (c) hold shares of Company Stock which have been otherwise purchased by the Trustee or which have been contributed by the Company and (d) distribute to Participants or their Beneficiaries under the terms of the Plan the value of shares of Company Stock and other assets which have been allocated to the Accounts of such Participants pursuant to the terms of the Plan. The Trustee is expressly authorized, in accordance with the terms of the Plan, to hold one hundred (100) percent of the Trust Assets in shares of Company Stock.

### 2.5    General Powers

Subject to the provisions of Sections 2.3, and 3, with respect to the Trust Fund, the Trustee shall have the following powers, rights and duties in addition to those provided elsewhere in this Trust Agreement or by law.

(a)     To receive and to hold all contributions paid to it under the Plan; provided, however, that the Trustee shall have no duty to require any contributions to be made to it, or to determine that the contributions received by it comply with the provisions of the Plan or with any resolution of the Board providing therefor.

(b)     To retain in cash (pending investment, reinvestment or the distribution of dividends) such reasonable amount as may be required for the proper administration of the Trust and to invest such cash as provided herein.

(c)     As directed by the Administrator, to make distributions from the Trust Fund to such persons or trusts, in such manner, at such times and in such forms as directed without inquiring as to whether a payee is entitled to the payment, or as to whether a payment is proper, and without liability for a payment made in good faith without actual notice or knowledge of the changed condition or status of the payee. If any payment of benefits directed to be made from the Trust Fund by the Trustee is not claimed, the Trustee shall notify the Administrator of that fact promptly. The Administrator shall make a diligent effort to ascertain the whereabouts of the payee or distributee of benefits returned unclaimed. The

3

Source: TRIBUNE CO, 8-K, April 05, 2007

Trustee shall dispose of such payments as the Administrator shall direct. The Trustee shall have no obligation to search for or ascertain the whereabouts of any payee or distributee of benefits from the Trust Fund.

(d)    To vote or exercise other rights with respect to any "Company Stock" (as defined in the Plan) in the Trust Fund at its discretion, except to the extent provided in the Plan, and to vote or exercise other rights with regard to any other stocks, bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney.

(e)    To contract or otherwise enter into transactions between the Trust and the Company or any Company shareholder or other person, for the purpose of acquiring, selling, or exchanging Company Stock and, to retain in the Trust Fund any Company Stock so acquired.

(f)    To compromise, contest, arbitrate, settle or abandon claims and demands by or against the Trust Fund.

(g)    To begin, maintain or defend any litigation necessary in connection with the investment, reinvestment and administration of the Trust.

(h)    To report to the Company as of the last day of each Plan Year (which shall be the same as the Trust's fiscal year), as of any "Accounting Date" as defined in the Plan (or as soon thereafter as practicable), or at such other times as may be required under the Plan, the then "Net Worth" of the Trust Fund, that is, the fair market value of all property held in the Trust Fund, reduced by any liabilities other than liabilities to Participants in the Plan and their Beneficiaries, as determined by the Trustee.

(i)    To furnish to the Company an annual written account or accounts for such other periods as may be required under the Plan, showing the Net Worth of the Trust Fund at the end of the period, all investments, receipts, disbursements and other transactions made by the Trustee during such period, and such other information as the Trustee may possess which the Administrator requires in order to comply with the reporting and disclosure requirements of ERISA. The Trustee shall keep accurate accounts of all investments, earnings thereon, and all accounts, books and records related to such investments shall be open to inspection by any person designated by the Company or the Administrator. All accounts of the Trustee shall be kept on an accrual basis. If, during the term of this Trust Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustee shall use such valuation methods for purposes of the accounts described by this subparagraph. If the Administrator determines that there is not a generally recognized market (as contemplated by Section 3(18)(A) of ERISA) for shares of Company Stock, all valuations of shares of Company Stock shall initially be made by an independent appraiser (as described in Section 401(a)(28)(C) of the Code) ("Independent Appraiser") retained by the Trustee, and reviewed and finalized by

4

the Trustee, in accordance with Section 3(18)(B) of ERISA. The Company may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within one hundred twenty (120) days from the date upon which the accounting was delivered to the Company. Upon the receipt of a written approval of the accounting, or upon the passage of the period of time within which objection may be filed without written objections having been delivered to the Trustee, such accounting shall be deemed to be approved, and the Trustee shall be released and discharged as to all items, matters and things set forth in such account, as fully as if such accounting had been settled and allowed by decree of a court of competent jurisdiction in an action or proceeding in which the Trustee, the Company and all persons having or claiming to have any interest in the Trust Fund or under the Plan were parties.

(j)     As directed by the Administrator, to pay any estate, inheritance, income or other tax, charge or assessment attributable to any benefit which it shall or may be required to pay out of such benefit; and to require before making any payment such release or other document from any taxing authority and such indemnity from the intended payee as the Trustee shall deem necessary for its protection.

(k)     To employ and to reasonably rely upon information and advice furnished by agents, attorneys, appraisers, accountants or other persons of its choice for such purposes as the Trustee considers necessary for the proper administration of the Trust.

(l)     To assume, until advised to the contrary, that the Trust evidenced by this Agreement is qualified under Section 401(a) of the Code and is entitled to tax-exempt status under Section 501(a) thereof.

(m)     To invest and reinvest the assets of the Trust Fund in personal property of any kind, including, but not limited to bonds, notes, debentures, mortgages, equipment trust certificates, investment trust certificates, guaranteed investment contracts, preferred or common stock, and registered investment companies.

(n)     To exercise any options, subscription rights and other privileges with respect to Trust assets.

(o)     To register ownership of any securities or other property held by it in its own name or in the name of a nominee, with or without the addition of words indicating that such securities are held in a fiduciary capacity, and may hold any securities in bearer form, but the books and records of the Trustee shall at all times reflect that all such investments are part of the Trust.

(p)     To borrow such sum or sums from time to time as the Trustee considers necessary or desirable and in the best interest of the Trust Fund, and for that purpose to mortgage or pledge any part of the Trust Fund.

5

Source: TRIBUNE CO, 8-K, April 05, 2007

(q)     To deposit securities with a clearing corporation as defined in Article 8 of the Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer which constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the transfer or pledge of securities held by the Trustee or by a clearing corporation. The Trustee shall at all times, however, maintain a separate and distinct record of the securities owned by the Trust.

(r)     To participate in and use the Federal Book-Entry Account System, a service provided by the Federal Reserve Bank for its member banks for deposit of Treasury securities.

(s)     To perform any and all other acts which are necessary or appropriate for the proper management, investment and distribution of the Trust Fund.

(t)     To form corporations or any other entities as it deems appropriate in its sole discretion.

(u)     To perform any and all other acts, in its sole discretion, which are necessary or appropriate for the Trust to participate in a transaction or series of transactions designed to increase the Trust's ownership of the Company.

## 2.6    Responsibility of Trustee

The Trustee shall not be responsible in any way for the adequacy of the Trust Fund to meet and discharge any or all liabilities under the Plan or for the proper application of distributions made or other action taken upon the direction of the Administrator. The powers, duties and responsibilities of the Trustee shall be limited to those set forth in this Trust Agreement, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional powers, duties or responsibilities on the Trustee.

## 2.7    Compensation and Expenses

The Trustee shall be entitled to reasonable compensation for services, as agreed to between the Company and the Trustee from time to time in writing and to reimbursement of all reasonable expenses incurred by it in the administration of the Trust. The Trustee is authorized to pay from the Trust Fund all expenses of administering the Plan and Trust, including its compensation, compensation to any agents employed by the Trustee and any accounting, legal and valuation expenses, to the extent they are not paid directly by the Employers. The Trustee shall be fully protected in making payments of administrative expenses pursuant to the written directions of the Administrator.

6

Source: TRIBUNE CO, 8-K, April 05, 2007

**2.8**   **Continuation of Powers Upon Trust Termination**

Notwithstanding anything to the contrary in this Agreement, upon termination of the Trust, the powers, rights and duties of the Trustee hereunder shall continue until all Trust Fund assets have been liquidated.

**2.9**   **No Reversion to Company**

No part of the corpus or income of the Trust Fund shall revert to any Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and other persons entitled to benefits under the Plan, except to the extent specifically provided in the Plan and permissible under the Code and ERISA.

**SECTION 3**

**PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK**

**3.1**   **Purchase and Sale of Company Stock**

The Trustee shall have complete discretion with regard to all purchases and sales of Company Stock by the Trust, without regard to any instructions from the Administrator. The Trustee is authorized to purchase or sell Company Stock from or to the Company or from or to any other person, and such stock may be outstanding, newly issued or treasury stock. All such purchases must be at a price not in excess of fair market value, as determined by the Trustee based on an independent appraisal when the Company Stock is not publicly traded. Pending investment of cash in Company Stock, such cash may be invested in savings accounts, certificates of deposit, high-grade short-term securities, common or preferred stocks, bonds, or other investments, or may be held in cash. Such investments may include any collective investment trust which provides for the pooling of assets of plans described in section 401(a) of the Code and exempt from tax under section 501(a) of the Code the terms of which are incorporated by reference.

**3.2**   **Stock Dividends, Splits and Other Capital Reorganizations**

Any Company Stock received by the Trustee as a stock split or dividend or as a result of a reorganization or other recapitalization of the Company shall be allocated as of each Accounting Date under the Plan in proportion to the Company Stock to which it is attributable.

**3.3**   **Voting and Tender of Shares**

The Trustee shall exercise all voting, tender, exchange and other rights with respect to Company Stock held in the Trust Fund at its discretion, except to the extent set forth in the Plan and otherwise consistent with its duties described in Section 2.3.

**3.4**   **Put Option**

If the distribution of any portion of a Participant's ESOP Stock Account as defined in the Plan is to be made in cash, or the Trustee expects to incur substantial Trust expenses which will

7

Source: TRIBUNE CO, 8-K, April 05, 2007

not be paid directly by the Employers, and the Trustee determines that the Trust Fund has insufficient cash to make anticipated distributions or pay Trust expenses, the Trust shall have a "put option" on Company Stock it holds to the Company for the purpose of making such anticipated distributions and paying such expenses; provided, however, that the Company shall not be obligated to make any payment under such put option if prohibited from doing so by law.  The implementation of such a put option shall be pursuant to one or more of the following arrangements as the Trustee shall determine.

(a)    The Trustee shall put Company Stock to the Company on an Accounting Date in an amount sufficient to provide an amount of cash estimated in good faith to be sufficient to make anticipated distributions from the Trust for payment of benefits or expenses until the next succeeding Accounting Date.

(b)    If permitted under applicable law, rulings and regulations, and not a prohibited transaction under section 4975(c) of the Code or sections 406 or 407 of ERISA, the Trustee, in its discretion, shall put Company Stock to the Company on a date other than an Accounting Date, and shall be paid therefor the fair market value of such Company Stock determined as of the next preceding Accounting Date.

(c)    The Trustee may cause a special valuation of the Company Stock to be made by an Independent Appraiser as of the date of the put option to the Company, or it may cause benefits to be distributed based on the value of a Participant's accounts as of the Accounting Date next preceding the date for which payment is requested.

(d)    The Trustee may exercise a put option to the Company and cause the fair market value of such Company Stock to be paid by the Company pursuant to any other arrangement agreed upon by the Trustee to the extent permitted by applicable law, rulings and regulations.

## SECTION 4

### ADDITIONAL EMPLOYERS

Any "Controlled Group Member" (as defined in the Plan) may become a party to this Trust Agreement by:

(a)    filing with the Company and the Trustee a certified copy of a resolution of its Board of Directors to that effect; and

(b)    filing with the Trustee a certified copy of a resolution of the Board of Directors of the Company consenting to such action.

8

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 5

### Change of Trustee

### 5.1    Resignation

The Trustee may resign at any time by giving thirty (30) days' advance written notice to the Company and the Administrator.

### 5.2    Removal of the Trustee

The Company may remove the Trustee by giving thirty (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship and subject to the Company's commitments regarding the term of trust services to be provided by the Trustee pursuant to the engagement letter between the Company and Trustee.

### 5.3    Duties of Resigning or Removed Trustee and of Successor Trustee

If the Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor Trustee(s), and may reserve such amount to provide for the payment of all fees and expenses, or taxes then or thereafter chargeable against the Trust Fund and properly payable out of the Trust Fund without violating applicable law, to the extent not previously paid by the Company. The Company shall be obligated to reimburse the Trust for any amount reserved by the Trustee. Within 120 days, the resigned or removed Trustee shall furnish to the Company and the successor Trustee(s) an account of its administration of the Trust from the date of its last account. Each successor Trustee shall succeed to the title to the Trust Fund vested in his predecessor without the signing or filing of any further instrument, but any resigning or removed Trustee shall execute all documents and do all acts necessary to vest such title or record in any successor Trustee. Each successor shall have all the powers, rights and duties conferred by this Trust Agreement as if originally named Trustee. No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee. With the approval of the Administrator, a successor Trustee may accept the account rendered and the property delivered to it by its predecessor Trustee as a full and complete discharge to the predecessor Trustee without incurring any liability or responsibility for so doing.

### 5.4    Filling Trustee Vacancy

The Company may fill a vacancy in the office of Trustee as soon as practicable by a writing filed with the person or entity appointed to fill the vacancy.

9

Source: TRIBUNE CO, 8-K, April 05, 2007

## SECTION 6

### Amendment and Termination

**6.1      Amendment**

While the Employers expect and intend to continue the Trust, the Company reserves the right to amend the Trust at any time pursuant to an action of the Company's Board of Directors, except that no amendment shall change the rights, duties, liabilities, and indemnification of the Trustee under this Trust Agreement without its prior written agreement, nor reduce a Participant's benefits to less than the amount such Participant would be entitled to receive if such Participant had resigned from the employ of the Employers on the date of the amendment.

**6.2      Termination**

The Trust may be terminated as to all Employees on any date specified by the Company.  The Trust will terminate as to any Employer on the first to occur of the following:

(a)      the date it is terminated by that Employer;

(b)      the date such Employer's contributions to the Trust are completely discontinued; or

(c)      the date such Employer is judicially declared bankrupt under Chapter 7 of the U.S. Bankruptcy Code.

The Trustee's powers upon termination as described above will continue until liquidation of the Trust Fund, or the portion thereof attributable to an Employer, as the case may be.  Upon termination of this Trust the Trustee shall first reserve such reasonable amounts as it may deem necessary to provide for the payment of any expenses or fees then or thereafter chargeable to the Trust Fund. Subject to such reserve, the balance of the Trust Fund shall be liquidated and distributed by the Trustee to or for the benefit of the Participants or their beneficiaries, as directed by the Administrator after compliance with applicable requirements of ERISA, as amended from time to time, or other applicable law, accompanied by a certification that the disposition is in accordance with the terms of the Plan and the Trustee need not question the propriety of such certification.  The Company shall have full responsibility to see that such distribution is proper and within the terms of the Plan and this Trust.

## SECTION 7

### MISCELLANEOUS

**7.1      Disagreement as to Acts**

If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have its account settled by a court of competent jurisdiction.

10

### 7.2    Persons Dealing with Trustee

No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee, or to determine whether or not the Trustee is acting pursuant to any authority granted to it under this Agreement or the Plan.

### 7.3    Benefits May Not Be Assigned or Alienated

Except to the extent expressly permitted by the Code or ERISA, the interests under the Plan and this Agreement of Participants and Beneficiaries are not subject to the claims of their creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered.

### 7.4    Evidence

Evidence required of anyone under this Agreement may be by certificate, affidavit, document or other instrument which the person acting in reliance thereon considers pertinent and reliable, and signed, made or presented by the proper party.

### 7.5    Waiver of Notice

Any notice required under this Agreement may be waived in writing by the person entitled thereto.

### 7.6    Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and no other counterparts need be produced.

### 7.7    Governing Laws and Severability

This Agreement shall be construed and administered according to the laws of Illinois to the extent that such laws are not preempted by the laws of the United States of America. If any provision of this Agreement is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Agreement, but shall be severable, and the Agreement shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

### 7.8    Successors, Etc.

This Agreement shall be binding on the Employers, and any successors thereto by virtue of any merger, sale, dissolution, consolidation or reorganization, on the Trustee and its successor and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

### 7.9    Action

Any action required or permitted to be taken by the Company under this Agreement shall be by resolution of its Board of Directors or by a person or persons authorized by resolution of its Board of Directors. The Trustee shall not recognize or take notice of any appointment of any

11

representative of the Company or Administrator unless and until the Company or the Administrator shall have notified the Trustee in writing of such appointment and the extent of such representative's authority. The Trustee may assume that such appointment and authority continue in effect until it receives written notice to the contrary from the Company or Administrator. Any action taken or omitted to be taken by the Trustee upon direction of any representative of the Company or Administrator in accordance with this Trust and within the scope of the representative's authority shall be as effective for all purposes hereof as if such action or nonaction had been authorized by the Company or Administrator.

### 7.10    Conformance with Plan

To the extent the provisions of the Plan and this Trust Agreement conflict, the provisions of this Trust Agreement shall govern.

### 7.11    Indemnification

(a)      Indemnification  Subject to the applicable provisions of ERISA, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification"). The Right of Indemnification provided for in this Section 7.11 shall extend to: (a) any action taken or not taken in good faith by any of the Indemnitees; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees. For purposes of this Agreement, the term "Indemnitees" shall mean the Trustee and its officers, directors, employees and agents.

(b)      Defense of Actions.

(i) Notice.  If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to Section 7.11 (a "Proceeding"), an Indemnitee shall notify the Company of the Proceeding in writing within 30 days of the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their Right of Indemnification obligations, except to the extent that the failure to so notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

12

Source: TRIBUNE CO, 8-K, April 05, 2007

(ii) Reimbursement of Expenses. The Indemnitors shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Indemnitors or the attorneys for the Indemnitors. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied:

the employment by the Indemnitees of their own counsel shall be authorized by the Company;

the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

(c)  Governmental Investigations. The provisions of this Section 7.11 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to the Trust. Investigations covered by this Section 7.11 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Indemnitors shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any investigation.

(d)  Limitation. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Indemnitors for any reason other than their gross negligence or willful misconduct, the Indemnitees shall nevertheless have a right of contribution against the Indemnitors, which shall accordingly reimburse the affected Indemnitees consistent with this Agreement, but taking into account the basis for the denial of full indemnification by the court.

13

### 7.12    Headings

The headings of Sections of this Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Agreement.

### 7.13    Multiple Trustees

In the event that more than one person shall serve as co-trustees hereunder, then the action of a majority of the co-trustees serving at any time shall be deemed to be the action of the Trustee.

### 7.14    Integration

Except for the Trustee Engagement Agreement by and between GreatBanc Trust Company and the Company, dated February 7, 2007, this Trust Agreement and the Plan contain the entire agreement and understanding of the Company, the Company and the Trustee with respect to the subject matter thereof and supersede all prior agreements and understandings related to such subject matter. This Agreement shall be binding upon the parties hereto and their successors and assigns.

IN WITNESS WHEREOF, the Company and Trustee have caused these presents to be signed and their seals to be hereunto affixed and attested by their duly authorized officers all as of the day and year first above written.

**TRIBUNE COMPANY**

By:        /s/ Dennis J. FitzSimons
Name:        Dennis J. FitzSimons
Title:        Chairman, President and Chief Executive Officer

**GREATBANC TRUST COMPANY,** not in its individual or corporate capacity but solely as Trustee of the Tribune Employee Stock Ownership Trust

By:        /s/ Marilyn H. Marchetti
Name:        Marilyn H. Marchetti
Title:        Senior Vice President

14

Created by 10KWizard    www.10KWizard.com

Source: TRIBUNE CO, 8-K, April 05, 2007