IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref. No. 1946 |

## CHADBOURNE & PARKE'S RESPONSE TO
## FINAL REPORT OF FEE EXAMINER

Chadbourne & Parke LLP ("Chadbourne"), co-counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"), hereby submits its response (the "Response") to the Fee Examiner's Final Report Regarding First Interim Application of Chadbourne & Parke LLP (the "Final Report") [Docket No. 1946]. In support hereof, Chadbourne respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the debtors in the above-referenced cases (the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2.      The Debtors' Chapter 11 cases were consolidated for procedural purposes only and are jointly administered under Case No. 08-13141. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

3.      On December 18, 2008, the United States Trustee appointed the Creditors' Committee pursuant to Bankruptcy Code Section 1102(a)(1). On February 20, 2009, this Court entered an order authorizing the employment and retention of Chadbourne as co-counsel to the Creditors' Committee.

4.      On March 19, 2009, the Court entered an order appointing Stuart Maue as the fee examiner in these cases (the "Fee Examiner").

5.      On April 15, 2009, Chadbourne filed its First Interim Application (the "First Interim Fee Application"). The First Interim Fee Application requested payment of all Chadbourne professional fees and expenses for the months of December 2008, January 2009 and February, 2009.

6.      Pursuant to the terms of the order appointing Stuart Maue, the Fee Examiner provided Chadbourne the Preliminary Review and Analysis of Fee Applications Submitted by Chadbourne (the "Preliminary Report"). The Preliminary Report outlined concerns of the Fee Examiner with respect to the fees requested in the First Interim Fee Application.

7.      After receiving the Preliminary Report, Chadbourne engaged in productive discussions (including the submission of a written response to the Preliminary Report) with the Fee Examiner. At the conclusion of these discussions, Chadbourne and the Fee Examiner were able to reach a consensual resolution on all but three issues raised in the Preliminary Report.

8.  On August 13, 2009, the Fee Examiner filed the Final Report.

## RESPONSE TO FINAL REPORT

9.  Chadbourne appreciates the Fee Examiner's constructive efforts in this case and, in particular, the opportunity the Fee Examiner has provided Chadbourne to respond to questions raised concerning Chadbourne's First Interim Fee Application. Chadbourne has sought to reach, and in most cases has reached, appropriate resolution of issues raised by the Fee Examiner. However, three issues were raised by the Fee Examiner that, although of relatively modest dollar amount are likely to be raised again in subsequent Chadbourne fee applications. Accordingly, Chadbourne files this Response to seek the Court's guidance with respect to these issues.

10. The outstanding issues with the Fee Examiner relate to the following: (1) legal activities conducted by Chadbourne's professionals that the Fee Examiner seeks to classify as administrative; (2) Chadbourne legal activities that the Fee Examiner seeks to have paid at a lower "clerical" rate; and (3) certain Chadbourne expenses related to "overtime" that the Fee Examiner asserts are not reimbursable. Each of these issues is addressed in detail below.

## Disputed Modifications

**(A)  Asserted "Administrative" Activities**

11. The Final Report identifies 9.30 hours of time (with associated fees of $3,663.50) relating to entries which the Fee Examiner classifies as administrative. The Fee Examiner states of these entries: "activities relating to the training and assignment of tasks to staff members ... should be considered a cost of doing business." These time entries fall within one of the two following categories: (i) legal assignment meetings and related follow-up; and (ii) paralegal work associated with updating the Intralinks website.

3

12. First, Chadbourne submits that in complex cases such as the Tribune bankruptcy, legal assignment meetings are required in order to accurately convey assignments and to discuss the complex legal issues involved, particularly so that time is not misspent on wrong assignments. Additionally, in order to provide clear, concise and accurate instructions regarding assignments, the drafting and distribution of assignment and action item lists is necessary. This is not training (it is instead assigning) and is typically charged and collected by Chadbourne and by other similar law firms doing non-bankruptcy work. Given the foregoing, Chadbourne submits that the 4.7 hours of attorney time identified in this category is inherently appropriate and should be allowed.

13. Second, the Fee Examiner has identified 4.6 hours of paralegal time related to work on the Intralinks website. Intralinks is a web-based tool that the Committee uses to obtain written updates and materials from the Committee's professionals. Each and every memorandum, agenda, relevant court document or other update for the Creditors' Committee is posted to Intralinks. Committee members are alerted to new postings as they become available and can "link" into that posting or access the system *via* the web. Because all documents can be found in one logically organized location, we believe the Intralinks system saves the Debtors' estates countless hours of professional time searching for documents and responding to Committee member requests related thereto.

14. To load documents to Intralinks, an individual must possess a thorough understanding of the Intralinks system. As with PACER, paralegals typically address the loading of documents and perform other Intralinks tasks. Often, because Committee member conflicts require that certain information be screened from specific Committee members, the paralegal establishes different distribution and access lists to ensure that documents cannot be accessed by

"conflicted" Committee members. In summary, updating Intralinks is not a ministerial job but requires training, discretion and case knowledge. For the foregoing reasons, we believe the identified 4.6 hours of paralegal time associated with Intralinks work is properly compensable and should be allowed by the Court.

**(B)    Asserted "Clerical" Activities.**

15.    The Final Report identifies 33.7 hours, with associated fees of $8,687.00, relating to activities performed by paraprofessionals or professionals that the Fee Examiner asserts are clerical in nature. Specifically, the Final Report suggests that calendaring case deadlines and performing certain Intralinks activities are clerical or secretarial tasks that should be billed at $80.00 per hour for a total fee of $5,991.00.

16.    Chadbourne submits that these tasks are not administrative in nature; instead, they require extensive training and the exercise of discretion and substantial knowledge. For example, the daily docket report (which requires access to PACER and an individual's ability to distinguish between important and unimportant docket entries), saves all of Chadbourne's bankruptcy lawyers working on this case the time of having to review PACER daily. Chadbourne's attorneys can quickly glance at the paralegal-created report that only lists potentially relevant papers (it does not include all documents) and access only those court papers of importance. This saves substantial attorney time (and cost) and is a very effective use of estate resources. The same holds true for the case calendar. Creating a docket calendar requires paralegal review of each court paper for changes in hearing dates; this is no small task in a big bankruptcy case (as the Court is no doubt aware). Finally, as set forth above, a paralegal's work on Committee Intralinks tasks is very similar to PACER activity, requires training and case knowledge and results in substantial net savings to the Debtors' estates. For the foregoing reasons, Chadbourne asserts that its use of a para-professional to perform these tasks is

appropriate and very cost effective and is therefore compensable at the regular hourly rates generally charged for such para-professionals' time. *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d. 833, 848-56 (3d Cir. 1994).

17.   Additionally, while the Fee Examiner states that it is the practice of Stuart Maue and other fee examiners to recommend that clerical activities be paid at the rate of $80.00 per hour, Chadbourne is not aware of any case in which its timekeepers (or others) have been compensated for such services at less than their customary hourly rates or, for that matter, a seemingly arbitrary hourly rate of $80.00. Chadbourne submits that it is appropriate, particularly in a complex case such as this one, for its timekeepers to bill their customary rates for functions that appropriately require para-professional efforts so long as those rates withstand the "comparable services" analysis prescribed by the Third Circuit in evaluating bankruptcy fees. *See In re Busy Beaver,* 19 F.3d at 853-54.

**(C)   Overhead Expenses -- Overtime Expenses.**

18.   The Fee Examiner characterizes $3,984.57 of Chadbourne's charges as "overhead" and "overtime" expenses. These expenses are comprised of: (i) weekend carfare totaling $1,963.03; (ii) late night and weekend meals totaling $788.82; and (iii) paralegal overtime totaling $1,232.72 (together, the "<u>Disputed Expenses</u>"). The Final Report suggests that Disputed Expenses should be "generally considered part of the firm's overhead."

(i)   *Carfare*. Chadbourne's billing policy only permits reimbursement for carfare in two circumstances: (a) when travel is required to attend meetings or (b) when, due to the exigencies of the case, Chadbourne personnel are required to stay late in the evening working and/or work over weekends on this matter. In all instances in the Tribune cases, the carfare costs identified satisfy the foregoing criteria, are the actual costs billed by Chadbourne's vendors, and do not include any profit to Chadbourne.

(ii) *Meals*. Chadbourne's billing policy only permits reimbursement for meals in two circumstances: (a) working meetings during mealtime or (b) when, due to the exigencies of the case, Chadbourne personnel are required to stay late in the evening working and/or work over weekends on this matter. The costs incurred are the actual costs billed by Chadbourne's vendors and do not include any profit to Chadbourne. In the Tribune bankruptcy case, the meals identified by the Fee Examiner satisfy these requirements.

(iii) *Paralegal Overtime*. With respect to paralegal overtime, both Mr. Bava and Ms. Chan were required to work past normal working hours to meet various deadlines and client needs. Mr. Bava's overtime was incurred on January 2, 2009 (an official firm holiday), soon after the Committee retained Chadbourne and during the busy holiday season. Ms. Chan's overtime was incurred February 3 and 4, 2009 and related to the review and distribution of important time sensitive Cubs' transaction documents. The inclusion of such charges is consistent with Chadbourne's normal billing practices.

19. Section II.E.7. of the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued January 30, 1996, which is cited by the Fee Examiner to support the proposition that the Disputed Expenses should not be paid, does not refer to any of the Disputed Expenses. Further, this Court's Local Rules state only that motions for compensation "shall contain an expense summary by category [including meals] for the entire period of the request." *See* Local Rule 2016-02(e)(1) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, as amended February 1, 2009.

20. Finally, Chadbourne is not aware of any cases in which these types of expenses were categorically excluded based on being classified as impermissible "overhead"

7

expenses. These expenses are of the type normally charged by law firms to their clients in both bankruptcy and non-bankruptcy matters and, therefore, are appropriately reimbursable in these bankruptcy cases. For the foregoing reason, Chadbourne asserts that the Disputed Expenses should be allowed.

## CONCLUSION

Chadbourne submits that the First Interim Fee Application should be approved, as modified in the Final Report but subject to the Court's ruling on the three categories of disputed billings set forth herein.

Dated: Wilmington, Delaware
       August 27, 2009

CHADBOURNE & PARKE LLP

/s/ Douglas E. Deutsch
Howard Seife
David M. LeMay
Douglas E. Deutsch
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Co-counsel to the
Official Committee of Unsecured Creditors