1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 08-13141-kjc

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


TRIBUNE COMPANY ET AL.,


      Debtors.


- - - - - - - - - - - - - - - - - - - -x


         United States Bankruptcy Court

         824 Market Street

         Wilmington, Delaware


         August 11, 2009

         10:03 AM


B E F O R E:

HON. KEVIN J. CAREY

U.S. BANKRUPTCY JUDGE

ECRO: AL LUGANO

2

1

2    HEARING re Motion of the Debtors for an order authorizing the

3    debtors to implement a 2009 management incentive plan and to

4    pay earned 2008 management incentive plan awards to certain

5    executives.

6

7    HEARING re Motion of the Debtors to file under seal an exhibit

8    to motion of the Debtors authorizing the debtors to implement a

9    2009 management incentive plan and to pay earned 2008

10   management incentive plan awards to certain executives.

11

12   HEARING re Motion of Debtors and Debtors-in-Possession for a

13   protective order with regard to discovery propounded by the

14   Washington Baltimore Newspaper Guild.

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Penina Wolicki

3

1    A P P E A R A N C E S :

2

3    JONATHAN LOTSOFF, ESQ.

4    KEVIN LANTRY, ESQ.

5    CANDICE KLINE, ESQ. (TELEPHONICALLY)

6    BRYAN KRAKAUER, ESQ. (TELEPHONICALLY)

7    SIDLEY AUSTIN

8    REPRESENTING:  THE DEBTORS

9

10   KATE STICKLES, ESQ.

11   COLE SCHOTZ

12   REPRESENTING:  THE DEBTORS

13

14   JOHN STROCK, ESQ.

15   WOMBLE CARLYLE

16   REPRESENTING:  GREAT BONE TRUST

17

18   DAVID LEMAY, ESQ.

19   CHADBOURNE & PARKE

20   REPRESENTING:  CREDITORS' COMMITTEE

21

22   ADAM LANDIS, ESQ.

23   LANDIS RATH & COBB

24   REPRESENTING:  CREDITORS' COMMITTEE

25

4

1

2    MICHAEL JOYCE, ESQ.

3    CROSS & SIMON

4    REPRESENTING:  WASHINGTON-BALT NEWSPAPER GUILD

5

6    JOSEPH J. MCMAHON, JR, ESQ.

7    UNITED STATES DEPARTMENT OF JUSTICE

8    OFFICE OF THE U.S. TRUSTEE

9

10   DAMIAN SCHAIBLE, ESQ. (TELEPHONICALLY)

11   DAVIS POLK & WARDWELL

12   REPRESENTING:  JPMORGAN CHASE BANK, N.A.

13

14   ALSO PRESENT:

15        CHANDLER BIGELOW, Tribune Company (TELEPHONICALLY)

16        PEG BRICKLEY, Dow Jones News Wires (TELEPHONICALLY)

17        DAVE ELDERSVELD, Tribune Company (TELEPHONICALLY)

18        DON LEIBENTRITT, Tribune Company (TELEPHONICALLY)

19        JENNIFER SHARRET, ESQ., Kramer Levin Naftalis & Frankel

20   LLP (TELEPHONICALLY)

21

22

23

24

25

5

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.  Be seated, please.

3          THE COURT:  Good morning, all.

4          MS. STICKLES:  Good morning, Your Honor.  Kate

5   Stickles from Cole Schotz on behalf of Tribune Company and its

6   affiliated debtors.  Also appearing on behalf of the debtors

7   this morning are Jonathan Lotsoff and Kevin Lantry from Sidley

8   Austin.  Your Honor previously admitted both of these attorneys

9   pro hac vice in this matter.

10          Yesterday afternoon the debtors filed an amended

11   agenda with the Court.  That agenda reflected that the Court

12   entered orders with respect to agenda items number 1 and 2.

13   This morning, orders were also docketed with respect to agenda

14   item number 3, the debtors' motion to extend the exclusive

15   periods; and agenda item number 4, the debtors' application to

16   retain Deloitte.  Thank you, Your Honor, for entering those

17   orders.

18          Mr. Lotsoff will address the Court with respect to

19   agenda items number 5, 6, and 7.  Those are the contested

20   matters relating to the debtors' motion to implement a 2009

21   management incentive plan.

22          THE COURT:  All right.

23          MR. LOTSOFF:  Good morning, Your Honor.  Jonathan

24   Lotsoff on behalf of the debtors.  As Ms. Stickles noted, we're

25   here on three contested motions this morning:  the debtors'

6

1    motion to implement a 2009 management incentive plan and to

2    make certain 2008 MIP awards to members of the top ten

3    executives of the debtors; secondly, a motion for a protective

4    order with respect to certain discovery propounded by the

5    Washington-Baltimore Guild; and third, the debtors' motion to

6    seal the Mercer report, which was filed in support of the

7    debtors' incentive plan motion.  Our overriding interest is to

8    move to the merits of the incentive plan motion.  And we're

9    prepared to address all three motions today, Your Honor,

10   subject, of course, to the Court's schedule and preferences.

11        Before we begin, my understanding is that the

12   committees would like to make short statements about the

13   incentive plan motion, that also, we think, would provide

14   important context for the discovery and the motion to seal

15   motions that are before the Court.

16        THE COURT:  All right.  I'll hear preliminary

17   statements.

18        MR. LOTSOFF:  Thank you, Your Honor.  And with that,

19   I'd like to introduce David LeMay, counsel for the creditors'

20   committee.

21        MR. LEMAY:  Good morning, Your Honor.  David LeMay

22   from Chabourne & Parke for the official committee of unsecured

23   creditors.  I hadn't realized I was actually going to be the

24   leadoff batter so quickly, but I'm happy to do it.

25        On the merits, Your Honor, of the motion that's before

7

1    you, a few things.  First, I want to make the observation that

2    one of the objecting parties to the motion, the Baltimore-

3    Washington Newspaper Guild, is a member of the creditors'

4    committee that I represent, and in fact, has been an

5    extraordinarily valuable and constructive member of that

6    committee throughout the committee's existence, and remains so

7    today.  They have brought a tremendous, tremendous, knowledge,

8    depth, industry perception, just so many attributes to the

9    committee.

10          This happens to be one of those occasions, and there

11   are occasions in every case, even in the most consensual case,

12   where people differ and where individualized interests differ.

13   But I thought that it would very important that I start off by

14   letting Your Honor know that even though the committee as a

15   committee takes a different position on the current motion,

16   namely the substantive motion to authorize the bonus plans,

17   takes a different position than the Baltimore-Washington Guild,

18   we very much appreciate the guild's service on the committee,

19   and we very much value that service, and we look forward to

20   continuing that relationship.

21          So, this is one, I think, where, as I say, people just

22   have a different view.  A few things that I thought I should

23   note for the Court, and I'm not going to dive deep into the

24   details at this point, I don't think now is the time.  I think

25   what I'm supposed to do --

1      THE COURT:  No, because we do have some preliminary

2  issues to get through, I think --

3      MR. LEMAY:  Right, exactly.

4      THE COURT:  -- before we get to the underlying

5  substantive motion.

6      MR. LEMAY:  Right.  So if I can, Your Honor, I'll give

7  you three minutes'-worth of how the committee sees it, just to

8  kind of help frame up the arguments.

9      THE COURT:  All right.

10     MR. LEMAY:  First, Your Honor, the committee does

11 support the motion.  You'll hear from the debtors, when the

12 time comes, a lot about the process, which involved at least

13 three rounds of negotiations.  The committee was a central

14 participant in those negotiations.  The committee's financial

15 advisor is AlixPartners, retained by order of this Court, and

16 Mr. Holtz of AlixPartners is actually in the courtroom today.

17 And we can be prepared to talk when the time comes about that

18 process.  But it was a long process; it was arduous; and it

19 involved a very deep dive into the company's 2009 business

20 plan.

21     The committee, after that long and pretty tough

22 negotiating process, is very satisfied that the targets in the

23 plans that are before you are anything but layups.  And indeed,

24 that was the very concern that the committee had.  The

25 committee certainly didn't want, its members did not want, to

9

1    be giving their own money away on essentially a "here take

2    this" basis.  It was critical to the committee that the targets

3    to be achieved be meaningful targets, that they be ones that

4    actually incentivize the management to do what it needed to do,

5    and that they be targets that be by no means assured.

6         The committee is satisfied that all of those

7    objectives have been met.  The committee is satisfied that the

8    current plan, which is quite different from the original

9    proposal that the debtors put in front of us, really does press

10   the right buttons, if you will, with the management, at the

11   various levels, to get them to do what is needed to be done

12   with this company.

13        One effect of that long negotiating process is a

14   peculiar timing effect that I think it's worth the Court

15   hearing about as a preliminary matter.  You may recall, Your

16   Honor, that we were before you on the 2008 bonus plan a few

17   months ago, and that 2008 plan was taken separately.  And

18   originally, actually, the debtors had sought to combine the

19   2008 bonus plan and the current 2009 plan into one package.

20   And really it was the committee who said no, we really don't

21   want you to do that.  2008 is an easier topic for us to deal

22   with.  We can deal with that more quickly.

23        And so, the committee requested that the debtors sever

24   the motions and put the 2008 motion in front of the Court,

25   because we knew we could react to that quickly.  And then we

10

1    said that AlixPartners and the committee are going to need to

2    do a very deep dive on the company's business plan for 2009,

3    because there's no way that we can get satisfied that these

4    targets make sense, until we know that the business plan on

5    which they're based is not a gimme.  The debtors agreed to

6    that.  They brought the 2008 motion in front of the Court.  The

7    Court approved it.  And so that all happened.

8         That created a window of time for the committee and

9    its professional advisors to do the very deep dive that we had

10   always anticipated.  That deep dive took a while.  One of the

11   results of that, and I think it's important that the Court have

12   it in mind, is that by the time we essentially finished our

13   deep dive, and by the time the negotiations with the debtors

14   were had, we were well into 2009.  There's no doubt about it.

15   We are well into 2009.

16        It may be said during the course of argument, Your

17   Honor, that this is kind of unfair, because 2009 is already, in

18   effect, in the bag.  We're already in August of 2009.  I think

19   it would be unfair to tax the debtors with that, because as I

20   say, their original plan was to put this plan in front of you

21   back in the spring.  We asked them not to because we wanted to

22   pull their business plan apart.  And Mr. Holtz and his

23   colleagues did pull their business plan apart.  They pulled it

24   apart pretty hard.  And they kicked an awful lot of tires.

25   That took some time.

11

1      And so I want to just ask the Court, in thinking about

2   the issue of timing, to understand that the reason that the

3   2009 plan is in front of you in the summer of 2009 instead of

4   the spring, was just that the creditors' committee really felt

5   that we needed that time to do the job.  We believe the job was

6   done.

7      Your Honor, I know, has time constraints, and so I

8   won't go line item by line item into the negotiations.  But I

9   would say for the Court and for the benefit of all the parties,

10  that most of the key drivers of this plan were negotiated and

11  were negotiated with what I would call substantial

12  improvements, ultimately yielding into the final plan.  By

13  improvements I mean things that made the targets harder to

14  achieve, things that made the goals be more goals, incentives

15  that were true incentives.

16      So that is the creditors' committee's perspective.

17  Again, Your Honor, we appreciate the very, very helpful service

18  of the Baltimore-Washington Newspaper Guild on the committee.

19  And notwithstanding our difference with them on this issue, we

20  continue to think of them as an invaluable member of the

21  committee.

22      THE COURT:  Thank you.

23      MR. LEMAY:  Thank you, Your Honor.

24      MR. LOTSOFF:  Your Honor, with the Court's permission,

25  my understanding is that Damian Schaible, counsel for the

12

1    secured committee of the -- steering committee of the debtors'

2    secured lenders, would like to make a short statement as well.

3             THE COURT:  Okay.

4             MR. SCHAIBLE:  Your Honor, apologies for appearing by

5    telephone today.  My name is Damian Schaible.  I'm with Davis,

6    Polk & Wardwell, and I am actually appearing on behalf of

7    JPMorgan Chase as agent for the debtors' prepetition senior

8    secured credit facility.

9             Your Honor, as I think I mentioned to you when we were

10   actually speaking about the 2008 bonuses a couple of months

11   ago, JPMorgan has put together a steering committee of senior

12   lenders, and we've been involved with the debtors on a number

13   of different matters in this case and a number of restructuring

14   issues.  And the senior lender steering committee, along with

15   JPMorgan's financial advisor, Blackstone, has spent a great

16   deal of time with the company, alongside the creditors'

17   committee, vetting and reviewing and helping to negotiate these

18   plans.

19            I would just echo and second what Mr. LeMay said, that

20   the targets are by no means assured, and we believe that the

21   targets are appropriately set to incentivize the right people

22   to maximize the value of the estates.  You know, I think Your

23   Honor can recognize that it's not every day that you have a

24   committee of senior lenders and the creditors' committee

25   together arm-in-arm in strong support of an employee incentive

1    plan.  I think the fact that you have that here is indicative

2    of the importance of this plan to the true stakeholders who are

3    potentially -- would reap the benefit of the maximization of

4    the value of the estate.

5         I don't want to take up any more time from Your Honor

6    at this time, but I just wanted to let you know that we

7    strongly support the motion as it ended up after a great deal

8    of negotiation and work.  And we would support the debtors'

9    request that Your Honor enter the order.

10        THE COURT:  Thank you.

11        MR. LOTSOFF:  Your Honor, with that, the Court

12   indicated that there were some preliminary matters to address.

13   We're obviously sensitive to the Court's preferences.  We're

14   prepared to go forward on any or all of these motions.

15        As you've heard this morning, one of our central

16   concerns is moving to the merits of the incentive plan motion,

17   given the late date, which has been, I believe, explained by

18   Mr. LeMay, and given the fact that our position is, and as you

19   heard this morning, these plans have been extensively vetted,

20   and we just don't believe, in the first instance, that there is

21   any need for the discovery that the union is seeking, given

22   that the committee, on which it's represented, has, as Mr.

23   LeMay said, done a deep dive over an extended period of time.

24        THE COURT:  Well, let me ask this.  And let's talk

25   about the debtors' motion for a protective order and the motion

14

1    to seal.  First of all, I see that a redacted version of the

2    Mercer report has been filed in any event.  But I take it that

3    doesn't answer the question for the newspaper guild, and I'll

4    hear from them in a moment.  But as to their role in the

5    committee, they say well, we're kind of handcuffed in that

6    capacity.  We do have restrictions and we're not free to

7    consult our client in the way that we should with the detailed

8    information that we need to.

9         Now, understanding the debtors' feeling -- well, put

10   it this way.  Understanding that the debtor has expressed in

11   its papers the position that well, that information is being

12   requested only to gain an advantage in future labor

13   negotiations, and it's unnecessary, address that a little bit.

14   Why shouldn't disclosure of the detail go beyond attorneys' or

15   professionals' eyes only?

16        MR. LOTSOFF:  Well, Your Honor, during our

17   negotiations or discussions with the guild, we had offered to

18   not only extend the protective order to the guild's

19   professionals, but also to the union committee member that

20   serves on the committee, so that they would have a

21   representative who sort of knows the unions and their

22   interests, who could assist the professionals in reviewing that

23   data.  But that's not our understanding of what the union is

24   asking for here.

25        THE COURT:  No, I know they're asking much more than

15

1    that.

2          MR. LOTSOFF:  Yes, well, we have significant concerns

3    about individualized compensation data, for example, for 700-

4    plus people, bonuses, salaries for several years, being

5    disclosed to actual union representatives, business members,

6    and then as the -- I believe their objection describes it --

7    other similarly situated parties-in-interest.

8          THE COURT:  Look, the request is too broad.  With

9    that, I agree.  I don't think that public disclosure of all the

10   detail is appropriate, nor do I think the union should be free

11   to share the information with those whom it deems to be

12   similarly situated.  But I'd like to press you a little bit on

13   why more than what you have suggested couldn't and shouldn't be

14   given under these circumstances.

15         MR. LOTSOFF:  Is Your Honor asking whether it should

16   be disseminated to a broader range of people?

17         THE COURT:  Well, I'll hear from the union to whom it

18   thinks, at the client level, this information should be

19   disseminated.

20         MR. LOTSOFF:  Yes.  I guess I'm a little bit

21   handicapped to answer that, Your Honor, because we, in the

22   course of our discussions with the guild -- and this is counsel

23   to counsel -- we made a proposal and we explained our

24   rationale, and that proposal was turned down.  So we really

25   didn't get into the details of other individuals, if any, whom

16

1    the union thought they would need to have review this

2    information, because it was basically rejected, the concept as

3    a whole, at the outset.

4         Based on what we know to date, we think that

5    disclosing the information to the professionals and to the

6    union's committee member would be sufficient.  Beyond that, I

7    guess I'd have to hear about specific individuals that the

8    union is speaking about before I could answer further.  But we

9    can tell you that we don't see any reason why this information

10   would have to be disseminated more broadly, and indeed, made

11   even broadly available to the business representatives of the

12   unions themselves.

13        I mean, one of the rationales that they have

14   articulated for seeking individualized compensation information

15   is that they want to determine on a person-by-person basis

16   whether these benefits have been disproportionately allocated.

17        THE COURT:  I'm not so sure that there isn't merit to

18   that contention.  Now, it may be, ultimately, the Court would

19   agree with what the debtors' business judgment is --

20        MR. LOTSOFF:  Right.

21        THE COURT:  -- and the collective judgment made by

22   other major constituents of the bankruptcy case, as they've

23   been articulated in the filings and in argument today, or in

24   preliminary statements today.  But those are two different

25   things.

1          MR. LOTSOFF:  Sure.  And I guess our position would be

2     that, again --

3          THE COURT:  Especially in light of the fact that,

4     look, one of the views expressed in the filing by the union was

5     look, there's a salary freeze on to which we're subject.  And

6     yet, managers and the top ten, as they're called, are proposed

7     to get bonuses.  Now, I'm aware of the view of the debtor, and

8     this is not uncommon in big companies especially, that total

9     compensation packages are never meant to be limited to salary.

10    There's always expected that there would be some bonus

11    component or components.  I understand this.

12         But under the circumstances, you can certainly

13    understand why this objector, anyway, asserts the view that it

14    ought to be able to drill down on what the debtor is proposing

15    here.

16         MR. LOTSOFF:  And I guess if the union desires to

17    drill down, our concern -- and if the Court is inclined to

18    allow them to drill down, our concern is that the group of

19    individuals who have access to this information be sufficiently

20    limited that we have sufficient confidentiality protections.

21    It's just our concern and, you know --

22         THE COURT:  I don't disagree with that proposition.

23    Let me hear from the union.

24         MR. LOTSOFF:  Thank you, Your Honor.

25         MR. JOYCE:  Good morning, Your Honor.  Mike Joyce for

18

1   the Washington-Baltimore Newspaper Guild.  Your Honor, with me

2   here in court today is Robert Paul, lead counsel for the guild.

3          MR. PAUL:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MR. JOYCE:  Your Honor, the debtors have framed our

6   objection to the motion to seal and again in the protective

7   order in response to our discovery -- they have attempted to

8   frame our discovery request as an attempt to harass, delay, use

9   this information in collective bargaining, and lots of other

10  terrible things.  Your Honor, it's --

11         THE COURT:  Well, even if all of that is true, there

12  may be a legitimate interest buried somewhere in there still.

13         MR. JOYCE:  And there is a legitimate interest, Your

14  Honor.  And that interest is simply to fully understand what

15  the debtors propose to do here with the MIP, understand the

16  data behind the MIP, and have a chance to challenge it on a

17  level playing field here in court.  And we, of course, can't do

18  that, without the underlying data.

19         It may be, Your Honor, as Your Honor pointed out, that

20  our discovery could be somewhat limited, perhaps narrowed, but

21  there are certainly very relevant requests contained in our

22  discovery that, frankly, are necessary for us to properly

23  challenge the debtors' motion or even to make a determination

24  if it needs to be challenged.

25         THE COURT:  Well, who at the client level, other than

19

1    the representative on the committee, would you propose to share

2    the more detailed information with?

3         MR. JOYCE:  Well, I think initially, Your Honor, union

4    leadership.  Perhaps union leadership of other unions,

5    similarly situated unions.  Perhaps other unions' professionals

6    that might be interested in knowing what's going on, knowing

7    the underlying data that supports or doesn't support the

8    debtors' motion.

9         THE COURT:  Well, I would be willing, under these

10   circumstances, to permit a very limited distribution at the

11   guild alone, not to be shared with others, and subject to

12   strict confidentiality arrangements, frankly, the violation of

13   which, the Court would be prepared to consider sanctions for.

14   Because the purpose of the disclosure would be, in the Court's

15   view, strictly for the proper presentation of your objection to

16   the proposed bonus plans and for no other purpose.  And I would

17   design an order -- I'd ask the parties to design an order for

18   my consideration -- which would provide that.

19        But, what frankly I'm inclined to do is to take a

20   break and let you talk a little bit about that, first, to see

21   if some arrangement can be reached, and if none, then I'll make

22   up my own mind based upon the parties' respective positions.

23   But I am inclined to grant some relief based upon your

24   position, but only in a very limited way, to effect the purpose

25   of aiding you in dealing with the motion that's before me.

20

1          MR. JOYCE:  Understood, Your Honor.

2          THE COURT:  Okay.  Anyone else wish to be heard

3    preliminarily?  All right.  Mr. Lotsoff, I'm inclined to take a

4    short break to permit such discussions to occur and then

5    proceed from there.

6          MR. LOTSOFF:  Your Honor, just -- and I appreciate

7    that.  Are we also going to address the motion to seal the

8    Mercer report, or does your ruling on these issues effectively

9    deal with that issue --

10          THE COURT:  I --

11          MR. LOTSOFF:  -- since the Mercer report encapsulates

12    a lot of the information?

13          THE COURT:  I was expecting that it would.

14          MR. LOTSOFF:  Okay.

15          THE COURT:  If that's not the case, somebody can tell

16    me.  It's already been, now, widely disseminated in redacted

17    form, and the redactions looked principled to me, I'll put it

18    that way.  So the answer is, yes, I'm hopeful both get wrapped

19    into the one.  But that's not meant to preclude any further

20    argument that the U.S. Trustee may want to make in connection

21    with that --

22          MR. LOTSOFF:  Thank you, Your Honor.

23          THE COURT:  -- if any.

24          THE COURT:  Okay.  We'll take a short break.

25          MR. LOTSOFF:  Thank you, Your Honor.

21

1          THE COURT:  Court will stand in recess.

2     (Recess from 10:27 a.m. to 10:53 a.m.)

3          THE CLERK:  All rise.  Please, be seated.

4          THE COURT:  Good morning, again.  Tell me where you

5     stand.

6          MR. LOTSOFF:  Your Honor, Jonathan Lotsoff on behalf

7     of the debtors.  We've spoken to counsel for the guild and I

8     think we have two areas of disagreement which we really think

9     should be at most one.  But we've offered to provide to the

10    guild basically everything that we provided to the official

11    committee, which we think is more than fair and reasonable.

12    You heard about the deep dive that the committee's financial

13    advisors did from Mr. LeMay.  And we don't see how it's

14    productive or necessary to produce anything beyond that.

15         I think you'll hear from Mr. Joyce, who wants to

16    receive the information or a list of the information, but then

17    compare it against their request and possibly request

18    additional information.  I mean, this is a wealth of

19    information that goes to the core of what they're asking for.

20    And our concern, as I articulated, is delaying an incentive

21    plan motion for 2009 where right now it's August 11th.  We need

22    to get to the merits.

23         And it's not that we're trying to restrict discovery

24    here.  We think that this offer is going to give them

25    everything that they could possibly want or need.  And it's our

22

1    view that that matter should be decided today, so that we don't

2    find out that we have lingering discovery disputes and requests

3    for further delay.

4        We understand that the guild will provide us with

5    specific names of those members of the guild leadership that

6    they believe need to see the protected information pursuant to

7    the protective order.  But I believe Mr. Joyce is also going

8    to -- I don't want to put words in his mouth but -- again,

9    press the point that discovery should also be extended to other

10   unions.  And the Court, as I understand it, already ruled on

11   that issue earlier this morning and stated that the discovery

12   would be restricted to the guild, which we think is

13   appropriate.

14       And so for the reasons that we discussed, we'd just

15   like to resolve that discovery issue today so that we all know

16   where we stand and can move forward and then get an early

17   hearing, subject, of course, to the Court's calendar, on the

18   substantive MIP motion.

19       THE COURT:  All right.  Let me first hear from the

20   guild in connection with the debtors' motion for protective

21   order, and then I'll hear from anyone else who wishes to be

22   heard in connection with the motion to seal.

23       MR. JOYCE:  Your Honor, Mike Joyce, for the record,

24   for the Washington-Baltimore Newspaper Guild.  Your Honor, I'll

25   be very brief.  Two quick points.  Your Honor, with respect to

1   having access to everything that the committee's professionals

2   had access to, we are happy to have that.  But we don't know

3   what that is, so we're being asked to agree to something, when

4   we essentially don't know what we're agreeing to.  This is not

5   an attempt to delay, Your Honor.  We can move very quickly --

6         THE COURT:  Well, your committee representative knows

7   what it is.  Doesn't he or she?

8         MR. JOYCE:  I don't believe they do, Your Honor.  I

9   believe only Alix knows what it is.

10         THE COURT:  Okay.

11         MR. JOYCE:  So we'd just like the opportunity to see

12   what the data is and see if there are narrow requests that may

13   be necessary in addition to that data.

14         I realize with respect to point two, Your Honor, I

15   realize Your Honor has already ruled on the sharing of

16   information with other unions.  I want only to point out, Your

17   Honor, that several other unions have joined our motion, two of

18   which, Cross & Simon has -- our firm has filed joinders on

19   behalf of.

20         THE COURT:  Well, they've joined on the motion to

21   seal.

22         MR. JOYCE:  They have joined in the objections to the

23   MIP, Your Honor.

24         THE COURT:  Have they -- oh, to the plan?

25         MR. JOYCE:  Yes.

24

1          THE COURT:  Understood.

2          MR. JOYCE:  So accordingly, Your Honor, we'd like to

3     share the information with those -- with the leadership of

4     those unions, a select group, subject to the appropriate

5     confidentiality order.

6          THE COURT:  All right.  Let me ask this.  How long

7     will it take you to get to the debtor names of guild

8     representatives who you think should be privy to the

9     information?

10         MR. JOYCE:  Forty-eight hours, Your Honor.

11         THE COURT:  Okay.  Let me ask the debtor how long it

12    would take to get to counsel in any way all of the information

13    that was provided to the committee.

14         MR. LOTSOFF:  Your Honor, we believe that we can get

15    the information out within seventy-two hours.  I guess I would

16    also question, just in the interest of time, why it should take

17    forty-eight hours to get a few names to us?

18         THE COURT:  You don't have to answer that right now.

19         Let me hear from anyone else who wishes to be heard in

20    connection with the motion to seal.

21         MR. MCMAHON:  Your Honor, good morning.  Joseph

22    McMahon for the acting United States Trustee.

23         A couple things, Your Honor.  First, with respect to

24    the discovery that's been discussed.  My understanding from

25    speaking with Mr. Lantry is that the debtors are willing to

25

give us a duplicate production of what's being provided to the

unions, subject to our standard arrangement with respect to the

handling of such information.  The debtors and I understand

what that is.  And I just want to make that statement for the

record.

      With respect to the motion to seal, Your Honor, I

think there's two points that we'd like to make.  First is with

respect to named executive officers.  We're dealing with a

debtor that is a public filing company, and consistent with

securities law, the debtors are required to report on a

quarterly and annual basis certain information regarding their

operations.  Some of that information will involve executive

compensation.

      I don't know whether the debtors are asserting that

the information with respect to their named executive officers

for SEC purposes should remain confidential or sealed.  The

Mercer redaction suggests that they do take that position.  But

I would like to hear from them on that point.

      The second point, Your Honor, is just a practical

concern with respect to the conduct of any contested matter on

the merits that may ensue.  My assumption and my understanding

would be that the debtors would intend to incorporate pieces of

data that are proposed to be filed under seal in connection

with the hearing.  We've been provided certain information with

the debtors.  We may wish to, I guess, use exhibits and

26

1    certainly, there's an intercept between some of the data that's

2    in the Mercer report and in some of the documents we've been

3    given.  And we're not at the merits yet.  But I don't know how

4    the Court would propose to address that issue.  But if we are

5    going to be getting to the seal motion today, I would just like

6    to have some understanding that if we do get to a merits

7    hearing, that to the extent that data that is redacted from the

8    Mercer report is framed in the question, it is uttered in

9    response by the witness, that we're not going to be at

10   loggerheads with whatever the Court rules.

11          In that light, Your Honor, and I don't know whether it

12   makes sense ultimately to table the seal motion to the

13   conclusion of the merits hearing, but it's a concern that we

14   have.

15          THE COURT:  All right.  Thank you.  Go ahead, if you'd

16   like to respond.

17          MR. LOTSOFF:  Thank you, Your Honor.  Just a couple of

18   quick points.  First, we are not a public filer.  So I think

19   that that point of Mr. McMahon's argument is not applicable

20   here.

21          And also, with respect to tabling the motion to seal,

22   I guess it's one thing to figure out how we would administer

23   testimony in light of the sealing of the Mercer report, but

24   it's just our understanding -- it would be our position that

25   based on the Court's ruling with respect to the confidentiality

1    of this compensation and financial information that we've been

2    dealing with on the protective order motion, it's really the

3    same type of information that was redacted from the Mercer

4    report.  And so that logically, it would warrant granting of

5    the motion to seal as well.  And then we could just resolve

6    that and know where we stand today.

7         THE COURT:  All right.  Thank you.

8         MR. LOTSOFF:  Thank you, Your Honor.

9         THE COURT:  Does anyone else wish to be heard in

10    connection with the motion to seal?  I note that in connection

11    with the motion to seal, there was the objection of the guild,

12    and as was previously referred to, joinders by the Newspaper

13    Guild of New York, Teamsters Local Union 355, neither of whom

14    have chosen to speak up in connection with the motion to seal.

15    The U.S. Trustee has had her say.  Bear with me for one moment.

16         To save a little time, does anyone -- can the debtor

17    give me the form of order that it wanted me to enter today in

18    connection with the motion to seal?

19         MR. LOTSOFF:  Yes, Your Honor.

20    (Pause)

21         MR. LOTSOFF:  May I approach?

22         THE COURT:  All right.  I'm willing to grant the

23    relief in part and permit the filing under seal.  It seems to

24    me the decretal paragraph that deals with responses or

25    objections to the incentive plan motion also be filed under

1  seal -- whatever's been filed already, has been filed -- if

2  you'd like to amend that to say "further responses or

3  objections", and I'll get to that in a moment, "may be filed

4  under seal if the contain or reflect confidential information

5  contained in the Mercer report."

6     The order should further provide that it's granted in

7  part because debtor has already filed, in connection with its

8  motion for protective order, a redacted version of the Mercer

9  report, which, as I said, I think contains principled

10  redactions, based upon my review of the full report.  And with

11  that, objections are overruled, subject to whatever ultimately

12  the Court enters on the motion for a protective order.  So it's

13  not intended to foreclose what issues are allowed under the

14  protective order.

15     Now, here's what I'd like to do with respect to that

16  motion.  I'd like the parties to see if they can exchange the

17  information and documents, respectively, no later than noon

18  Eastern Time on Thursday the 13th.  I will then hold a status

19  conference telephone call on the afternoon of the 14th, and

20  we'll talk about a time in a minute, on I guess finalizing the

21  relief to be awarded under the motion for a protective order.

22  Let's say we'll do it at 2 o'clock Eastern on Friday the 14th.

23     And then I will be largely unavailable for the two

24  weeks following that, so I would like to be in a position to

25  resolve the discovery differences on that day.  And then at

1    that time, we'll pick a further date for consideration of the

2    underlying motion to approve the incentive bonus plans.  Are

3    there any questions?

4         MR. JOYCE:  Your Honor, my co-counsel Robert Paul has

5    just informed me that -- and I appreciate Your Honor being very

6    accommodating today.  But that said, Your Honor, my co-counsel

7    has informed me that on Thursday the 13th his wife will be

8    undergoing a medical procedure and he will be unavailable all

9    day.  Your Honor, perhaps we could move that deadline to Friday

10   the 14th, the same day as the status conference?

11        THE COURT:  Well, okay.  Now, I'll ask the question

12   debtors' counsel asked.  Why would it take so long for you to

13   provide names?  That's what we're talking about here, right?

14        MR. JOYCE:  We are, Your Honor.  We are.  Perhaps we

15   could shorten that to twenty-four hours, Your Honor.

16        THE COURT:  Okay.

17        MR. JOYCE:  Thank you.

18        THE COURT:  Any other questions?

19        MR. LOTSOFF:  Your Honor, are you deferring your

20   ruling -- are you deferring until Friday your ruling as to who

21   gets this information?  Again, our position would be that it

22   should go only to the guild, and that's who we would understand

23   we would produce it to?

24        THE COURT:  That's -- I've made my decision on that.

25   It's going only to the guild.

1          MR. LOTSOFF:  Thank you, Your Honor.

2          THE COURT:  And we'll decide who within the guild

3     should have it specifically.

4          MR. LOTSOFF:  Thank you, Your Honor.

5          THE COURT:  All right.  Any other questions?  All

6     right.  Well, for the moment, then, we'll carry hearing on the

7     motion for a protective order to the conference telephone call

8     at 2 o'clock on the 14th.  I'd ask the parties to fashion a

9     form of order embodying my ruling on the motion to seal.

10         And the motion for approval of the incentive plans

11    will be carried without a date, subject to the Court picking a

12    date on the 14th.  And I will tell you now, it's going to be

13    sometime in September.

14         Is there anything further for today?

15         MR. LOTSOFF:  Not from our perspective, Your Honor.

16         MR. PAUL:  Your Honor, just -- and I apologize, since

17    this is born out of a personal matter.  If the Court's schedule

18    remains that -- we can get the names to the debtors by

19    tomorrow.  But if the production of the materials is to us on

20    the 13th, I'm not going to have any time on the 13th to even

21    look at it.  And if we're going to have a hearing on the 14th,

22    it's going to make it difficult for us to respond to whether or

23    not there are any remaining items that we need to press before

24    the Court.

25         THE COURT:  I understand your circumstances.  And all

31

1   I will say is, to the extent documents can be gotten as early

2   as tomorrow, I'll ask the debtor to do that on a rolling basis

3   if it can.  And then we'll address what we can on the 14th.

4         Meanwhile, I wish you the best of luck with your

5   situation.

6         MR. PAUL:  Thank you, Your Honor.  I appreciate it.

7         THE COURT:  You're welcome.  Anything further for

8   today?

9         MR. LOTSOFF:  No, Your Honor.

10        THE COURT:  All right.  Thank you all very much.  That

11  concludes this hearing.  Court will stand in recess.

12        (Proceedings concluded at 11:11 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

32

1

2                          I N D E X

3

4                              RULINGS

5                                    Page      Line

6    Motion of the Debtors to   27       22

7    file under seal an

8    exhibit to motion of the

9    Debtors authorizing the

10   debtors to implement a

11   2009 management

12   incentive plan granted

13   in part

14

15

16

17

18

19

20

21

22

23

24

25

33

1

2                          C E R T I F I C A T I O N

3

4       I, Penina Wolicki, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

8       Penina Wolicki

9

10      Veritext LLC

11      200 Old Country Road

12      Suite 580

13      Mineola, NY 11501

14

15      Date:   September 1, 2009

16

17

18

19

20

21

22

23

24

25