## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: Oct. 6, 2009 at 1:00 p.m. EDT**<br>**Objection Deadline: Sept. 29, 2009 at 4:00 p.m. EDT** |

### MOTION OF DEBTOR TRIBUNE NM, INC. FOR AN
### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE
### AUTHORIZING THE SALE OF CERTAIN REAL
### PROPERTY LOCATED IN HICKSVILLE, NEW YORK TO STEEL TRIBUNE, LLC

Tribune NM, Inc., one of the debtors and debtors in possession in the above-captioned chapter 11 cases ("TNM" or the "Debtor" and collectively, with its affiliates that have commenced these chapter 11 cases, the "Debtors"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order pursuant to section 363 of title 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

of the United States Code (the "Bankruptcy Code") authorizing TNM to sell a parcel of real property commonly known as 250 Miller Place, Hicksville, New York, (the "Hicksville Property") to Steel Tribune, LLC (the "Purchaser")[2] on the terms and conditions as set forth in that certain Purchase and Sale Agreement dated September 1, 2009 (the "Sale Agreement") attached hereto as Exhibit A, free and clear of all liens, claims and encumbrances.  In support of this Motion, the Debtors (i) submit the attached Declaration of Stephanie Pater, Director, Real Estate of Tribune Company, which is attached hereto as Exhibit B (the "Pater Declaration"), and (ii) respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee.

4.    On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").  The Committee has been apprised of the relief requested herein.

---

[2] Notwithstanding the name of the Purchaser, the Purchaser is not affiliated with, nor is it an insider of, any of the Debtors.  See Pater Declaration at ¶ 4.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND TO THE MOTION

6.      The Hicksville Property is a commercial property consisting of approximately 88,000 square feet over 5.24 acres, located 30 miles from Manhattan. Historically, the Hicksville property housed newspaper inserting equipment used in connection with *Newsday*, a Long Island, New York-based newspaper that was formerly owned indirectly by Tribune Company.  See Pater Declaration at ¶ 5.  TNM began marketing the Hicksville Property for sale in November 2006, and it has remained on the market continuously since that time.  In mid-2007, the inserting equipment was moved to another *Newsday* facility, leaving the Hicksville Property vacant.  Neither TNM nor any of the other Debtors have conducted business operations on the Hicksville Property in the past two years, nor do any of the Debtors anticipate having any need to use the Hicksville Property in the future.  See id. at ¶ 6.

7.      TNM initially attempted to market the Hicksville Property on its own. When those efforts failed to generate appropriate offers for the Hicksville Property, in an effort to invigorate the sale process, TNM re-listed the Hicksville Property with prominent commercial real estate broker Cushman & Wakefield (the "Broker") in April 2008.  The Broker has actively and aggressively marketed the Hicksville Property, including distributing approximately 1,000 pieces of direct mail advertising, 500 email brochures, and 500 print flyers to potential users and investors, and sending a "broker email blast" once every three weeks.  The Hicksville Property is

included in the Broker's exclusive listings, which are circulated monthly and posted on the

Broker's website and other commercial listing services' sites.  See id. at ¶ 7.

8.      To date, the Broker has conducted property tours and building inspections

with approximately 20 interested parties and supplied information by telephone or email to an

additional 40 interested parties.  As a result of these efforts, TNM received three offers from

prospective buyers, including that of the Purchaser.  The first offer was for $8,300,000 and was

received in August 2008, but later withdrawn due to lack of financing.  The second offer was for

$9,000,000 and was also received in August 2008.  That offer was also subsequently withdrawn

due to financing issues.  In the past year, the market for commercial real estate has continued to

decline and there have been no other offers from interested parties other than the Purchaser.  See

id. at ¶ 8.

9.      Accordingly, TNM and the Purchaser have negotiated and executed the

Sale Agreement, which sets forth the material terms of the parties' agreement for the sale of the

Hicksville Property to the Purchaser.  The Sale Agreement provides that the Purchaser will

purchase the Hicksville Property for $4,650,000 (the "Purchase Price"), subject to prorations and

adjustments as provided for in the Sale Agreement.[3]  Of the Purchase Price, $1,000,000 will be

due in cash from the Purchaser immediately upon the closing date for the sale of the Hicksville

Property (the "Closing Date") and the balance will be financed by TNM over a one-year term,

with a balloon payment due at maturity.  The Purchaser's obligation will be secured by a

mortgage on the Hicksville Property in favor of TNM.  See Sale Agreement at § 1.6.

10.     Within five days of the execution of the Sale Agreement, the Purchaser

will deposit $200,000 in earnest money that will be non-refundable following the expiration of

---

[3] Such prorations include the apportionment of real estate taxes, sewer rents and taxes, water rates and charges, vault
charges and taxes, business improvement district taxes and assessments and any other governmental taxes, charges
or assessments levied or assessed against the Hicksville Property.

4

the Purchaser's study period (the "Study Period"), except as otherwise provided in the Sale

Agreement.[4]  The Sale Agreement contemplates that the Closing Date will occur 30 days from

the expiration of the Study Period, subject to the provisions permitting further extension

contained in the Sale Agreement, but, in any event, no later than December 4, 2009.

      11.    During the Study Period, the Purchaser has the ability to terminate the

Sale Agreement.  See Sale Agreement at § 3.2.  The Purchaser also has the right to terminate the

Sale Agreement in the event that the Bankruptcy Court's order approving the sale of the

Hicksville Property pursuant to the Sale Agreement is not delivered to the Purchaser by

November 4, 2009.  See id. at§ 5.6.

## RELIEF REQUESTED

      12.    By this Motion, TNM respectfully seeks entry of an order authorizing it to

sell the Hicksville Property to the Purchaser on the terms set forth in the Sale Agreement free

and clear of all liens, claims and encumbrances, with any such liens, claims, and encumbrances

attaching to the proceeds of the sale in the order of their priority, with the same validity, force

and effect which they now have as against the Hicksville Property, subject to any claims and

defenses TNM may possess with respect thereto.  TNM further requests a waiver of the ten-day

stay provided for in Bankruptcy Rule 6004(h) in order to facilitate the closing of the sale of the

Hicksville Property as soon as practicable after the entry of the order.

---

[4] The parties reserve their rights to make further modifications to the Sale Agreement based upon the results of the Purchaser's Study Period, which modifications may be made in writing without further approval from this Court either before or after this Court's approval of the sale transaction contemplated herein, provided that such modifications are not material either individually or in the aggregate.

## BASIS FOR RELIEF REQUESTED

13.    Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

14.    Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363).

15.    Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

16.    Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. See, e.g., In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville

Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."). To impose more

exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and

undermining the "Bankruptcy Code's provisions for private control" of the estate's

administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir.

1986).

**A.    The Sale Should Be Approved as a Proper Exercise of TNM's Sound Business Judgment**

17.    There are substantial business justifications for selling the Hicksville

Property to the Purchaser on the terms set forth in the Sale Agreement.  The Hicksville Property

provides limited, if any, value to the Debtors' business operations.  TNM has ceased all business

operations at the Hicksville Property, and TNM does not anticipate utilizing the Hicksville

Property as part of its business operations going forward.  See Pater Declaration at ¶ 6.  The

proposed sale of the Hicksville Property also allows TNM to monetize an asset for which it has

no current or anticipated future use, for the benefit of all creditors and stakeholders.

18.    Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that "sales not

in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr.

P. 6004(f).  TNM respectfully submits that approval of the sale of the Hicksville Property as a

private sale is appropriate under the circumstances.  TNM has actively marketed the property in a

year that has been marked by unprecedented turmoil in the real estate and financial markets.

During this time period, the Broker actively reached out to reputable developers, brokers, and

potential end users of the Hicksville Property and toured the property with approximately 20

parties potentially interested in purchasing the Hicksville Property.  TNM received only two

other offers for the Hicksville Property, each of which did not materialize due to issues with their financing and were withdrawn long ago.  See Pater Declaration at ¶ 8.  The Hicksville Property has remained on the market during the negotiations with the Purchaser, and TNM has not received any further offers or expressions of interest.  TNM is informed by its Broker that the longer the Hicksville Property stays on the market, the more likely the selling price will decline as new properties become available.  See Pater Declaration at ¶ 9.  Thus, TNM believes that further marketing efforts for public sale are unlikely to result in higher and better offers for the Hicksville Property and, as a result, that the Court should order that no other or further marketing process for the Hicksville Property is required and that the sale of the Hicksville Property may proceed by private sale to the Purchaser.

19.    The Sale Agreement is the product of good faith, arms'-length negotiations among the parties.  The Purchaser is not affiliated with, nor is the Purchaser an insider of, TNM or any of the Debtors.  See id. at ¶ 4.  As discussed above, the consideration to be paid by the Purchaser is fair and reasonable under the circumstances.  Accordingly, TNM requests that this Court find that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code[5] and that the sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.[6]

---

[5] Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of an authorization under sections 363(b) or 363(c) of the Bankruptcy Code does not affect the validity of a disposition under that authorization to an entity that has acted in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the relevant transaction were stayed pending the appeal.  See 11 U.S.C. § 363(m).

[6] Section 363(n) of the Bankruptcy Code provides that

> [t]he trustee may avoid a sale under this section if the sale process
> was controlled by an agreement among the potential bidders at
> such sale, or may recover from a party to such agreement any

20.     The Sale Agreement and the Broker's Exclusive Listing Agreement (the
"Listing Agreement", a copy of which, as amended, is attached hereto as Exhibit C) provide that
once the closing of the sale occurs, the Broker will be compensated in an amount equal to five
percent (5%) of the sale proceeds (the "Commission"). See Listing Agreement at ¶ 5. TNM
submits that in light of the substantial marketing efforts carried out by the Broker during the past
several months, culminating in the successful sale of the Hicksville Property to the Purchaser,
payment of the Commission is reasonable and appropriate. The Listing Agreement also provides
that certain advertising costs shall be borne by TNM in connection with marketing the Hicksville
Property for sale. (Listing Agreement at ¶ 4.) Accordingly, TNM seeks this Court's
authorization to pay the Commission to the Broker, plus any documented expenses reasonably
incurred on TNM's behalf in connection with marketing the Hicksville Property, from the sale
proceeds upon closing.

21.     In light of the foregoing, TNM respectfully submits that selling the
Hicksville Property to the Purchaser on the terms set forth in the Sale Agreement is supported by
TNM's sound business judgment and is in the best interests of the Debtors' estates and creditors.

**B.     The Sale Should Be Approved Free and Clear of Liens, Claims and Encumbrances**

22.     Pursuant to section 363(f) of the Bankruptcy Code, the Court may
authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if

---

amount by which the value of the property sold exceeds the price
at which such sale was consummated and may recover any costs,
attorneys' fees, or expenses incurred in avoiding such sale or
recovering such amount. In addition to any recovery under the
preceding sentence, the court may grant judgment for punitive
damages in favor of the estate and against any such party that
entered into such an agreement in willful disregard of this
subsection.

11 U.S.C. § 363(n).

"(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests, (2) the entity holding the lien, claim, interest or encumbrance consents to the proposed sale, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (4) such interest is in bona fide dispute, or (5) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

23.    TNM seeks this Court's approval to sell the Hicksville Property to the Purchaser free and clear of all existing liens, claims, and encumbrances that are not expressly assumed by the Purchaser in the Sale Agreement. Upon closing, existing liens, claims and encumbrances (if any), will attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have against the Hicksville Property. Accordingly, TNM submits that the Hicksville Property may be sold free and clear of all liens, claims and encumbrances, including the interests of the Debtors' postpetition debtor in possession lenders, pursuant to section 363(f) of the Bankruptcy Code.

## NOTICE

24.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agents for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition loan facility; (v) counsel to the Purchaser; (vi) through their brokers, all other parties that submitted an offer to purchase the Hicksville Property; (vii) any parties that have asserted liens or claims on the Hicksville Property; and (viii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, TNM submits no other or further notice is necessary.

## NO PRIOR REQUEST

25.     TNM has not sought the relief requested herein from this or any other

Court.

WHEREFORE, TNM respectfully requests that the Court enter an order (i)

authorizing TNM to sell the Hicksville Property to the Purchaser pursuant to the Sale Agreement

and (ii) granting such other and further relief as the Court deems just and proper.


Dated:  Wilmington, Delaware              Respectfully submitted,
        September 4, 2009

                                          SIDLEY AUSTIN LLP
                                          James F. Conlan
                                          Bryan Krakauer
                                          Janet E. Henderson
                                          Kenneth P. Kansa
                                          Jillian K. McClelland
                                          One South Dearborn Street
                                          Chicago, IL  60603
                                          Telephone:  (312) 853-7000
                                          Facsimile:  (312) 853-7036

                                               -and-

                                          COLE, SCHOTZ, MEISEL,
                                          FORMAN & LEONARD, P.A.

                                          By: _____
                                          Norman L. Pernick (No. 2290)
                                          J. Kate Stickles (No. 2917)
                                          Patrick J. Reilley (No. 4451)
                                          500 Delaware Avenue, Suite 1410
                                          Wilmington, DE  19801
                                          Telephone:  (302) 652-3131
                                          Facsimile:  (302) 652-3117

                                          ATTORNEYS FOR DEBTORS AND
                                          DEBTORS IN POSSESSION