# **EXHIBIT B**

*Pater Declaration*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Related to Docket No. ___ |

## DECLARATION OF STEPHANIE PATER IN SUPPORT OF MOTION OF DEBTOR TRIBUNE NM, INC. FOR AN ORDER PURSUANT TO SECTION 363 OF THE \BANKRUPTCY CODE AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED IN HICKSVILLE, NEW YORK TO STEEL TRIBUNE, LLC

STEPHANIE PATER hereby states:

1. I am Director, Real Estate of Tribune Company ("Tribune"), a corporation organized under the laws of Delaware and one of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). Tribune is the direct parent of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Tribune NM, Inc. ("TNM") and the direct or indirect parent of each of the other Debtors. I am generally familiar with the Debtors' real property and needs and operations and I make this Declaration (the "Declaration") on behalf of the Debtors.

2. I submit this Declaration in support of the motion of TNM for an order pursuant to sections 105(a), 363(b), and 363(f) of title 11 of the United States Code (the "Bankruptcy Code") authorizing the sale of certain real property located in Hicksville, New York (the "Hicksville Property") to Steel Tribune, LLC (the "Motion").[2] Unless otherwise stated in this Declaration, I have personal knowledge of the facts as set forth herein. The hearing on the Motion is scheduled for October 6, 2009 (the "Sale Hearing"). If called to testify at the Sale Hearing, I could and would testify competently to the facts set forth herein.

3. The terms of the proposed sale of the Hicksville Property are set forth in that certain Purchase and Sale Agreement dated as of September 1, 2009 between TNM and Steel Tribune, LLC (the "Purchaser"). A true and correct copy of the Purchase and Sale Agreement is attached to the Motion as Exhibit A thereto.

4. The Purchaser is unaffiliated with any of the Debtors or their affiliates.

5. The Hicksville Property is a commercial property consisting of approximately 88,000 square feet over 5.24 acres, located 30 miles from Manhattan. Historically, the Hicksville property housed newspaper inserting equipment used in connection with *Newsday*, a Long Island, New York-based newspaper that was formerly owned indirectly by Tribune.

6. TNM began marketing the Hicksville Property for sale in November 2006, and it has remained on the market continuously since that time. In mid-2007, the inserting

2

equipment was moved to another *Newsday* facility, leaving the Hicksville Property vacant. Neither TNM nor any of the other Debtors have conducted business operations on the Hicksville Property in the past two years, nor do any of the Debtors anticipate having any need to use the Hicksville Property in the future.

7. TNM initially attempted to market the Hicksville Property on its own. When those efforts failed to generate appropriate offers for the Hicksville Property, in an effort to invigorate the sale process, TNM re-listed the Hicksville Property with prominent commercial real estate broker Cushman & Wakefield (the "Broker") in April 2008. The Broker has actively and aggressively marketed the Hicksville Property, including distributing approximately 1,000 pieces of direct mail advertising, 500 email brochures, and 500 print flyers to potential users and investors, and sending a "broker email blast" once every three weeks. The Hicksville Property is included in the Broker's exclusive listings, which are circulated monthly and posted on the Broker's website and other commercial listing services' sites.

8. To date, the Broker has conducted property tours and building inspections with approximately 20 interested parties and supplied information by telephone or email to an additional 40 interested parties. As a result of these efforts, TNM received three offers from prospective buyers, including that of the Purchaser. The first offer was for $8,300,000 and was received in August 2008, but later withdrawn due to lack of financing. The second offer was for $9,000,000 and was also received in August 2008. That offer was also subsequently withdrawn due to financing issues. In the past year, the market for commercial real estate has continued to decline and there have been no other offers from interested parties other than the Purchaser.

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

3

9.      Based on the financing failures relating to the prior offers, and my knowledge of the real estate affairs of Tribune and its affiliates, I do not believe that further marketing efforts for public sale are likely to result in higher and better offers for the Hicksville Property. Moreover, TNM has received advice from the Broker that the sale price for the Hicksville Property is likely to decline the longer the Hicksville Property remains on the market, as new properties become available.

10.     Accordingly, TNM and the Purchaser have negotiated and executed the Sale Agreement, which sets forth the material terms of the parties' agreement for the sale of the Hicksville Property to the Purchaser. The Sale Agreement provides that the Purchaser will purchase the Hicksville Property for $4,650,000 (the "Purchase Price"), subject to prorations and adjustments as provided for in the Sale Agreement.[3] Of the Purchase Price, $1,000,000 will be due in cash from the Purchaser immediately upon the closing date for the sale of the Hicksville Property (the "Closing Date") and the balance will be financed by TNM over a one-year term, with a balloon payment due at maturity. The Purchaser's obligation will be secured by a mortgage on the Hicksville Property in favor of TNM.

11.     Within five days of the execution of the Sale Agreement, the Purchaser will deposit $200,000 in earnest money that will be non-refundable following the expiration of the Purchaser's study period (the "Study Period"), except as otherwise provided in the Sale Agreement.[4] The Sale Agreement contemplates that the Closing Date will occur 30 days from

---

[3] Such prorations include the apportionment of real estate taxes, sewer rents and taxes, water rates and charges, vault charges and taxes, business improvement district taxes and assessments and any other governmental taxes, charges or assessments levied or assessed against the Hicksville Property.

[4] The parties reserve their rights to make further modifications to the Sale Agreement based upon the results of the Purchaser's Study Period, which modifications may be made in writing without further approval from this Court either before or after this Court's approval of the sale transaction contemplated herein, provided that such modifications are not material either individually or in the aggregate.

4

the expiration of the Study Period, subject to the provisions permitting further extension contained in the Sale Agreement, but, in any event, no later than December 4, 2009.

        12.    During the Study Period, the Purchaser has the ability to terminate the Sale Agreement. See Sale Agreement at § 3.2. The Purchaser also has the right to terminate the Sale Agreement in the event that the Bankruptcy Court's order approving the sale of the Hicksville Property pursuant to the Sale Agreement is not delivered to the Purchaser by November 4, 2009. See id. at § 5.6.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: Sept. 4, 2009

_____
STEPHANIE PATER