## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et al.</u>, | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 24, 2009 @ 10:00 a.m.**<br>**Objection Deadline: September 17, 2009 at 4:00 p.m.** |
| | **Ref. No. 2031, 2032, 2033 and 2038** |

## RESPONSE AND PARTIAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR LEAVE TO CONDUCT DISCOVERY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE OF TRIBUNE COMPANY, ITS AFFILIATES, AND CERTAIN THIRD PARTIES, OR <u>ALTERNATIVELY, FOR THE APPOINTMENT OF AN EXAMINER</u>

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), by and through its undersigned counsel, hereby submits this response and partial objection ("<u>Response</u>") to the Motion of Law Debenture Trust Company of New York ("<u>Law Debenture</u>") for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, its Affiliates, and Certain Third Parties, or Alternatively, for the Appointment of an Examiner (the "<u>Motion</u>") and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      Despite the Motion's overwrought and accusatory tone, the issues presented for judicial determination are straightforward: (i) should Law Debenture have access to documentary discovery materials from the Debtors and certain third parties; and (ii) should Law Debenture be given a roving commission to take depositions independent of -- and to the

detriment of -- the aggressive, thoughtful and coordinated investigation already being pursued by the Committee. The Committee does not oppose Law Debenture's access to the document discovery requested by the Committee, but it does object to Law Debenture's request to embark on a separate deposition program of its own.

2.     The Motion includes serious and significant misstatements of fact. These misstatements would seem to be made in furtherance of Law Debenture's overall goal of wresting control of the LBO-related claims away from the Committee and into its own hands for its own parochial purposes. Because Law Debenture's misstatements question the Committee's discharge of its fiduciary duties, the Committee also files this Response to correct Law Debenture's factual errors and to set the record straight.

## I. COMMITTEE'S RESPONSE AND PARTIAL OBJECTION ON DISCOVERY ISSUES

**A.**     *Document Discovery*

3.     The Committee does not object to Law Debenture's request for access to the hundreds of thousands of pages already produced or to be produced to the Committee pursuant to its ongoing and exhaustive investigation of Tribune's 2007 ESOP/LBO transaction (the "LBO"). The only reason Law Debenture does not already have that access is that it has been unable to conclude routine confidentiality agreements with the producing parties. Subject to the resolution of those issues by agreement or by the Court, that element of the relief sought by the Motion should not be controversial.

4.     Because Law Debenture's document requests are largely duplicative of those long ago made by the Committee, Law Debenture should (after confidentiality details are settled with the producing parties or by the Court) review the thousands of documents

{698.001-W0002937.}

(including e-mails) that the Committee has already obtained or is in the process of obtaining from the 33 producing parties from which the Committee has already sought discovery. If, after review of those documents, Law Debenture believes there are relevant documents not covered by the Committee's extensive document requests, Law Debenture can suggest to the Committee that it should seek additional production from those parties. Nevertheless, Law Debenture should not have the ability to seek additional written discovery on its own.

**B.**      *Deposition Requests*

5.      Although the text of the Motion does not highlight Law Debenture's desire to conduct its own separate depositions, the relief it requests specifically includes a judicial charter for a free-ranging deposition program independent of the efforts of the Committee. *See* Proposed Order Granting Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery of Tribune Company, its Affiliates, and Certain Third Parties. The Committee does not oppose the ability of Law Debenture's counsel to attend and participate on reasonable terms in any depositions that may be undertaken during the Committee's investigation. But the Committee does oppose Law Debenture's request to construct and conduct its own separate program of depositions. Giving Law Debenture the roving commission it seeks would not only be grossly inefficient and wasteful, but it would harm the creditors' best interests by undermining and subverting the Committee's investigation.

6.      Allowing Law Debenture to depose whomever it wants and when it wants would disrupt the Committee's program of first obtaining, reviewing and analyzing the relevant documents and then taking appropriate depositions. Because witnesses will have a legitimate interest in avoiding duplicative depositions, the documentary facts should first be gathered and distilled and then depositions should be taken as appropriate, with the Committee leading and

{698.001-W0002937.}

coordinating all such discovery efforts. The Committee would welcome the input of Law Debenture's counsel in developing a deposition program, but the Court should decline Law Debenture's request to supplant the Committee as the estate fiduciary directing the investigation and pursuit of LBO-related claims. The Committee requests that Law Debenture's request for authority to initiate its own separate deposition program be denied.

## II.  COMMITTEE'S RESPONSE TO LAW DEBENTURE'S FACTUAL MISSTATEMENTS

7.    Lurking visibly beneath the relatively simple discovery issues raised by the Motion is Law Debenture's agenda to wrest control of the pending LBO investigation and the pursuit of related claims from the Committee. Under straightforward chapter 11 principles, it is the Committee (and not Law Debenture) which owes a fiduciary duty to unsecured creditors and is charged with an investigation and pursuit where the Debtors are unable to proceed.[1] The reason for Law Debenture's desire to seize control of the LBO investigation is equally plain -- it wants to wrap its specific and parochial goals in the flag of the chapter 11 estates, but without any need to balance the diverse interests and expectations of various unsecured creditor interests, interests not identical to those of Law Debenture. It is precisely because the Committee, unlike Law Debenture, represents all unsecured creditor interests that the chapter 11 system grants it broad authority to pursue estate claims where, as here, the Debtors cannot.[2]

---

[1] See Maryland Nat'l Bank v. Busy Beaver Bldg. Ctrs. (In re Busy Beaver Bldg. Ctrs., Inc.), 127 B.R. 343, 345 (Bankr. W.D. Pa. 1991) ("The Committee has a statutory duty to investigate, inter alia, the acts, conduct, assets, liabilities, and financial condition of the Debtor."); see also Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 553 (3d Cir. 2003) ("'[N]early all courts considering the issue have permitted creditors' committees to bring actions in the name of the debtor in possession if the committee is able to establish' that a debtor is neglecting its fiduciary duty.").

[2] See Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1316 (1st Cir. 1993) ("[The committee] is purposely intended to represent the necessarily different interests and concerns of the creditors it represents . . . . There is simply no other entity established by the Code to guard those interests.") (citation omitted); Official Comm. of Unsecured Creditors of Apex Global Info. Servs. v. Qwest Commc'ns. Corp., 405 B.R. 234, 251-52 (E.D. Mich. 2009) ("A creditors' committee is the representative body for the entire

{698.001-W0002937.}

8.      Law Debenture may be an ideal voice for the specific bondholder interests it represents, but only the Committee, and not any narrow individual constituency, can legitimately speak as the representative voice of all unsecured creditors. That is why the Office of the United States Trustee is so careful to form chapter 11 committees in this and other cases that are broadly representative rather than parochial.

9.      The goal of Law Debenture's Motion is to seize control of the LBO claims for its own exploitation and benefit. The means to that end is a series of unsupported and untrue allegations about the Committee and its professionals. Those allegations and misstatements, although extraneous to the relief sought by the Motion, challenge the Committee's proper discharge of its duties.

10.     The Committee in this Response therefore also seeks to set the record straight with respect to four significant issues identified in the Motion: (1) the Creditors' Committee's membership and its conflict of interest procedures; (2) the Creditors' Committee's consideration of the issues raised by the LBO; (3) the Creditors' Committee's professionals; and (4) certain discovery issues.

A.      *Tribune's Unsecured Creditors' Committee*

11.     The Tribune Creditors' Committee was initially selected by the U.S. Trustee on December 18, 2008[3] and its composition was later amended to fill a vacancy. Although over $10 billion of the estimated $14 billion of Tribune's total unsecured debt was held by the

---

unsecured creditor constituency . . . . [and] is responsible for representing and protecting the interest of the unsecured creditors in the plan negotiation process and throughout the entire bankruptcy case.") (citations omitted).

[3] The Committee believes that no bondholder or bondholder representative (other than the two indenture trustees named below) sought a seat on the Creditors' Committee at the December 18, 2008 formation meeting. Both of the indenture trustees who sought Committee seats were appointed.

{698.001-W0002937.}

"Credit Agreement Lenders and/or Bridge Facility Lenders"[4] at the time of the bankruptcy filings, the Tribune Creditors' Committee is not composed solely, or even mostly, of such lenders. The Committee is instead -- as the result of a careful effort by the U.S. Trustee to achieve a balanced cross-section of unsecured creditor interests -- a very diverse group. These members as of the filing of the Motion were:

- JPMorgan Chase Bank, N.A., in its capacity as lender ("JPM");
- Merrill Lynch Capital Corporation,[5] in its capacity as lender ("Merrill");
- Deutsche Bank Trust Company Americas, as successor Indenture Trustee ("Deutsche");
- Wilmington Trust Company, as successor Indenture Trustee;
- Warner Brothers Television;
- Buena Vista Television;[6]
- William Niese;
- Pension Benefit Guaranty Corporation; and
- Washington-Baltimore Newspaper Guild, Local 32035.

*See* Second Amended Notice of Appointment of Committee of Unsecured Creditors (May 26, 2009) (Docket No. 1238).

12.    When the Committee was formed, Deutsche was the incumbent indenture trustee for all eight series of Tribune Company's unsecured and unsubordinated public bond debt pursuant to four separate indentures, and in that capacity acted as the representative of all eight series on the Creditors' Committee.    Subsequently, on information and belief, one bondholder (which held a controlling position in the debentures issued pursuant to at least one of those indentures) acted so that Deutsche was replaced by Law Debenture as the indenture

---

[4]  *See* Motion at ¶¶ 4, 10 and 20 for definitions.
[5]  Merrill resigned from the Committee on September 9, 2009.  The vacancy created by Merrill's resignation has not yet been filled.
[6]  Buena Vista Television replaced Vertis, Inc. when the latter entity resigned in April of 2009.  Both are trade creditors of the Debtors.

{698.001-W0002937.}

trustee for one of the indentures.[7] Accordingly, it is only as a result of the affirmative actions of that bondholder that the 6.61% Debentures due 2027 and the 7 1/4% Debentures due 2096 are not now directly represented on the Creditors' Committee.

13.    The Committee consisted of nine members prior to the recent resignation of Merrill.  But, consistent with the Committee's Bylaws, JPM and Merrill have at all times been entirely recused from any participation of any kind in the Committee's review or deliberations concerning any aspect of the LBO, and they have been carefully screened from access to any Committee professional analysis or other non-public information that relates to the LBO investigation.  Accordingly, the Committee's review of the LBO is entirely free of any taint of participation by interested members.[8]

14.    The remaining seven Committee members -- which include two trade creditors, one labor union, one retired executive, the Pension Benefit Guaranty Corporation, and two indenture trustees (one of which represents bondholders that are *pari passu* with the bonds Law Debenture represents) -- decide all LBO-related issues.  The Committee (excluding the conflicted members as noted above) is a representative cross-section of unsecured creditors and exercises its fiduciary duties to all unsecured creditors.

**B.**    *The Committee's Review of the LBO*

15.    The Committee interviewed counsel on December 18, 2008, the same day it was appointed.  From that day, the issues arising from the LBO have been at the forefront of the Committee's agenda.  Probing questions regarding the LBO and possible approaches to

---

[7]  The Motion recites that Law Debenture is the successor indenture trustee for the 6.61% Debentures due 2027 and the 7 1/4% Debentures due 2096, both issued pursuant to an Indenture dated March 19, 1996.
[8]  Both JPM and Merrill acknowledged their inability under the Committee's Bylaws to participate in Committee deliberations (or to see Committee work product) related to the LBO and cooperated in the screening and recusal process described above.

{698.001-W0002937.}

resolution of related claims were asked of Committee counsel candidates that day.    The Committee's efforts to examine the LBO have not wavered since.  From the earliest months of the case, the Committee has directed and pursued a detailed and exhaustive investigation and review of the LBO and the issues and possible claims arising from the LBO.

16.    While discussing specific and non-public details of the Committee's investigation would be inappropriate, the general scope and extent of the Committee's efforts can be documented.  The Committee initiated a comprehensive and extensive program of third-party discovery in March, 2009.  To date, the Committee -- through its counsel -- has obtained and reviewed over 35,000 documents containing over 775,000 pages from 33 different parties. Among others, the Committee's document requests have been directed to the Debtors, the Credit Agreement Lenders, the Bridge Facility Lenders, members of Tribune Company's Board of Directors (the "Directors"), certain financial advisors for the Debtors or the Directors, certain valuation experts retained by the Debtors or the Directors, the largest pre-LBO transaction shareholders, Sam Zell and certain related entities, the Tribune Employee Stock Ownership Plan, and certain other parties.  The discovery process continues.  The Committee has also been provided with and has reviewed an extensive legal analysis, prepared by counsel, of all possible potential causes of action arising from the LBO.   The Committee's financial advisors are undertaking a detailed solvency analysis.  Finally, because the time was ripe, the Committee retained Zuckerman Spaeder LLP ("Zuckerman") as special counsel in early August. *See* Order Granting Application of the Official Committee of Unsecured Creditors for Order Authorizing the Employment and Retention of Zuckerman Spaeder LLP as Special Counsel (dated September 3, 2009) (Docket No. 2088) (the "Zuckerman Retention Order").  The broad scope of Zuckerman's mandate as independent special counsel is reviewed in paragraphs 20-22

{698.001-W0002937.}

below.

### C.        *The Committee's Professionals*

17.    The Committee selected Chadbourne & Parke LLP ("Chadbourne") and Landis Rath & Cobb LLP ("Landis", together with Chadbourne, "Committee Counsel") on December 18, 2008, the day of the Committee's appointment.  Both law firms subsequently submitted applications for employment, *see* Docket Nos. 242 and 243, and, at the request of the U.S. Trustee, submitted supplemental affidavits.  *See* Docket Nos. 395 and 404.  The orders officially retaining both Committee Counsel were entered on February 20, 2009.  *See* Order Granting Application to Employ and Retain Chadbourne & Parke LLP as Co-Counsel to the Official Committee of Unsecured Creditors (Docket No.429); Order Granting Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors (Docket No. 428).

18.    All of the foregoing retention-related documents demonstrate that the Creditors' Committee Counsel made all required bankruptcy and ethical disclosures and confined its efforts -- through the use of co-counsel -- to those tasks where there could be no legitimate question about its motivations or loyalties.[9] These facts have not changed since the applications and related documents were filed by Committee Counsel and approved by the Court, nor should any of the related conclusions.  Importantly, however, as part of the

---

[9]  Chadbourne's representation of a bank group agented by Citigroup in an unrelated LBO fraudulent transfer action in the TOUSA bankruptcy case, hardly a secret in any event, was disclosed to the Committee during its first interview with Chadbourne and the fact that Citigroup is a substantial client which Chadbourne represents in various matters was disclosed in Chadbourne's retention papers.  Law firms are generally allowed to serve on opposite sides of legal issues and Law Debenture has not suggested why this case would be different.  A quick look at the court filings in *ABN AMRO N.V., et al. v. MBIA Inc. et al.* (N.Y. Supreme Court, Index No. 601475/09), a pending multi-billion dollar case alleging, among other things, both constructive and actual intent-based fraudulent conveyances in the recapitalization of an insurance company, will demonstrate the point. Chadbourne & Parke LLP represents one of the *plaintiffs* in that litigation; the *defendants* are represented by the Kasowitz Benson firm, Law Debenture's counsel on this Motion.

9

development of its LBO analysis, the Creditors' Committee took an additional action: the
Committee hired Zuckerman Spaeder LLP as special counsel.

19.    Zuckerman's retention followed an exhaustive search and selection process.
The Committee members were asked to submit potential candidate names.    From these
submissions, the Committee selected four law firms that were to be interviewed.    The special
counsel candidates were all highly capable and included some of the most recognized law firms
who serve as plaintiffs counsel in cases such as these.    Ultimately, from this list, the
Committee selected Zuckerman.    No objections by Law Debenture or any other party were
received to Zuckerman's retention, and the Court signed the Zuckerman Retention Order on
September 3, 2009.  The Zuckerman Retention Order is now a final Order.

20.    Pursuant to the that Order, Zuckerman's role is to:

(a) assist the Creditors' Committee in its analysis of the potential causes of
action [against the lenders related to the LBO];

(b) participate in negotiations with the lenders and the Debtors;

(c) if necessary prosecute such causes of action as described above to the
extent, by subsequent motion, the Committee may be authorized to bring such causes of
actions; and

(d) perform such other legal services in connection with the above services
as may be required or are otherwise are deemed to be in the interests of the Creditors'
Committee in accordance with the Creditors' Committee's powers and duties as set forth
in the Bankruptcy Code, Bankruptcy Rules and applicable law.

Application of the Official Committee of Unsecured Creditors of Tribune Company, *et al.*,
Pursuant to 11 U.S.C. § 328 and 1103 and Fed. R. Bankr.P. 2014, for an Order Authorizing the
Employment and Retention of Zuckerman Spaeder LLP as Special Counsel Nunc Pro Tunc to
August 6, 2009 at p. 13 (dated August 12, 2009) (Docket No. 1953), as adopted by the
Zuckerman Retention Order at p.2.

10

21.    Under the Zuckerman Retention Order, Zuckerman's mandate is not limited -- claims to the contrary notwithstanding -- but provides Zuckerman the broadest possible grant of authority necessary to do its job, mirroring the typical broad language used by courts in these instances.[10] To that end, Zuckerman has been given independent authority, unfettered access to all the discovery materials produced, a mandate to review all issues it believes necessary to fulfill its tasks, and has been directed by the Committee to prepare in the event commencement of litigation should be necessary.  At this point, any concerns of Law Debenture about the scope of Zuckerman's retention or its independence have been mooted.

22.    Additionally, Zuckerman has confirmed its independent mandate from the Committee, as set forth in the Declaration of Graeme W. Bush attached as Exhibit A hereto. The scope of Zuckerman's Retention Order and the facts set forth in Mr. Bush's Declaration demonstrate that Law Debenture's attacks on Zuckerman's independence and scope (*see* Motion pp. 6, 19-20 and 29) are as baseless as they are tendentious.

**D.    *Discovery Matters***

23.    Finally, the Committee addresses specific issues that are raised with heated rhetoric in the Motion but are based on seriously incorrect factual premises.

24.    **E-mail Production.**  Law Debenture asserts that the Committee should have already sought e-mails and other communications but has not done so.  *See* Motion at fn. 5 and related text.  The facts are otherwise.  Every single one of the Committee's document requests expressly calls for production of e-mail.  Indeed, Committee Counsel has received approximately 10,000 e-mails from eight different parties so far and expects that up to an

---

[10] Chadbourne and Landis, under the direction of the Committee, have worked with Zuckerman to ensure that all work is appropriately tasked and that there is no duplication of effort among the Committee's counsel.

{698.001-W0002937.}

additional 10,000 e-mails could be received in the next week or two. The Committee proceeded with e-mail discovery in a well-crafted and efficient manner: information from non-e-mail sources was first collected and was used to craft appropriate e-mail search terms and to identify appropriate e-mail custodians whose files needed to be searched. The Committee's production is evidence of careful diligence and a focus on getting things right, not a dereliction of the Committee's duties.

   25. **Restrictions on Use.** Although it is not clear that Law Debenture's counsel has even seen the confidentiality agreement between the Committee and JPM, Law Debenture terms the restrictions regarding "Highly Confidential" documents in that agreement "astonishing." *See* Motion p. 5. Law Debenture ignores the fact that the confidentiality agreement on its face fully preserves the Committee's right to seek any appropriate relief from the Court at any time regarding such "Highly Confidential" designations. The confidentiality agreement executed between counsel for the Committee and counsel for JPM specifically provides that if Committee counsel objects to the designation of any documents as "Highly Confidential – Attorneys' Eyes Only" or "Confidential," or seeks a waiver of such designations, it will first seek to resolve the dispute with counsel to JPM, and "if that effort is unsuccessful, may apply to the bankruptcy court for relief." Rather than delay document production from JPM by forcing the litigation of such issues at the outset and in a vacuum, the Committee rightly decided that it was better to get the discovery materials produced as quickly as possible, and to address such issues if and when the restrictions actually posed an issue. As a result of this commonsense and practical approach, the Committee has obtained quick access to thousands of pages of important documents rather than becoming mired in academic litigation over confidentiality terms.

{698.001-W0002937.}

### III.  LAW DEBENTURE'S ALTERNATIVE REQUEST FOR THE APPOINTMENT OF AN EXAMINER IS MOOT AND/OR PREMATURE

26.    The Motion seeks the appointment of an examiner as an alternative remedy if Law Debenture's requested discovery relief is not obtained.  Because the Committee does not object to Law Debenture's access to document discovery or its right to participate in depositions in coordination with the Committee's discovery program, the "alternative" request for appointment  of an examiner is premature and/or moot, and no purpose is served by briefing or arguing it now.  Should the Court determine to consider the request for an examiner, the Committee requests that the Court separately hear and schedule the matter pursuant to ordinary notice procedures and fix a separate objection deadline so that estate resources are not squandered on the briefing of a motion that will likely never need to be heard.

{698.001-W0002937.}

WHEREAS, for the reasons set forth herein, the Committee respectfully requests that the Court (a) resolve Law Debenture's document discovery requests in the manner outlined in Part I.A. of this Response, (b) deny Law Debenture's request to pursue a deposition program independent of the Committee's, (c) deny as premature or moot Law Debenture's "alternative" request for the appointment of an examiner, and (d) grant such other or further relief as the Court deems appropriate.

Dated: September 17, 2009
Wilmington, Delaware

Respectfully submitted,

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David LeMay
Douglas Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

14

{698.001-W0002937.}