IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------- x
                                :  Chapter 11
In Re:                          :  Case No. 08-13141 (KJC)
                                :  (Jointly Administered)
TRIBUNE COMPANY, et al.,        :
                                :  Re: Docket No. 2031
              Debtors.          :  **Hearing Date: Sept. 24, 2009 at 10:00 a.m.**
                                :  **(ET)**
                                :  **Objection Deadline: Sept. 17, 2009 at 4:00**
                                :  **p.m. (ET)**
------------------------------- x

# J.P. MORGAN CHASE BANK N.A.'S OBJECTION TO MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR LEAVE TO CONDUCT DISCOVERY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE OF TRIBUNE COMPANY, ITS AFFILIATES, AND CERTAIN THIRD PARTIES, OR ALTERNATIVELY, FOR THE APPOINTMENT OF AN EXAMINER [DKT. NO. 2031]

JPMorgan Chase Bank N.A. ("JPMC") hereby objects to the motion of Law Debenture Trust Company of New York ("Law Debenture"), for leave to conduct discovery (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 2004 and Delaware Bankruptcy Local Rule 2004-1 (the "Objection").[1] In support of its Objection, JPMC states as follows:

## INTRODUCTION

1.  Contrary to Law Debenture's assertion, this Motion is not motivated by a need for "reasonable access to information relating to the LBO." (Motion at 4). Were that the case, there would be no motion and we would not be before the Court. JPMC consistently and repeatedly has offered to provide Law Debenture with document

---

[1] Law Debenture also purports to invoke Section 343 of the Bankruptcy Code. (Motion at 2-3, ¶¶ 31, 33). On its face, however, Section 343 applies only to the Section 341(a) meeting of creditors. See 11 U.S.C. § 343.

discovery in this case by giving to it copies of all documents JPMC is producing to the Official Committee of Unsecured Creditors (the "UCC"). That offer was repeatedly rejected. Those rejections, coupled with (1) the UCC's ongoing and aggressive investigation of potential claims relating to the 2007 two-step transaction pursuant to which Tribune became privately held (the "LBO"); (2) Law Debenture's complete lack of standing to bring any claims relating to the LBO; and (3) the fact that no plan of reorganization has been filed, demonstrate that Law Debenture cannot establish the "good cause" requisite to Rule 2004 discovery. Law Debenture's Motion should therefore be denied.

## FACTS

**A.      The Ongoing UCC and Special Litigation Counsel Investigation**

2.      On December 8, 2008, Tribune Company ("Tribune") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The United States Trustee appointed the UCC on December 18, 2008.[2] On February 20, 2009, this Court approved the UCC's retention of Chadbourne & Parke LLP ("Chadbourne") and Landis Roth & Cobb LLP as counsel.[3]

---

[2] Until recently, the UCC was comprised of JPMC; Merrill Lynch Capital Corporation ("Merrill"); Buena Vista Television; Deutsche Bank, as Indenture Trustee; Warner Bros. Television; Mr. William Niese; Pension Benefit Guaranty Corporation; Washington-Baltimore Newspaper Guild, Local 32035; and Wilmington Trust, as Successor Indenture Trustee. Second Amended Notice of Appointment of Committee of Unsecured Creditors, dated May 26, 2009 (Docket No. 1238). Merrill resigned as of September 9, 2009.

[3] Order Granting Application to Employ and Retain Landis Rath & Cobb LLP as Co-Counsel to the Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to the Retention Date, Pursuant to Bankruptcy Code Section 1103(a), dated Feb. 20, 2009 (Docket No. 428); Order Granting Application to Employ and Retain Chadbourne & Parke LLP as Co-Counsel to the Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to the Retention Date, Pursuant to Bankruptcy Code Section 1103(a), dated Feb. 20, 2009 (Docket No. 429).

3. In the Spring of 2009, the UCC began an investigation into the LBO to determine whether that transaction might give rise to claims or causes of action in favor of the bankrupt estate (the "Investigation"). JPMC and Merrill, at all times have recused themselves from any participation in the UCC's review of the LBO, including the Investigation, because they or their corporate affiliates participated in the LBO financing.

4. On March 26, 2009, Chadbourne sent JPMC a request for production of documents relating to the LBO, which request was supplemented and further expanded on May 13, 2009 (the "UCC Request"). (Exs. A, B).

5. JPMC has been cooperating with the Investigation by voluntarily providing documents responsive to the UCC Request and began production on June 12, 2009, subject to a confidentiality agreement. As of September 17, 2009, JPMC has produced in electronic format over 240,000 pages of emails, hard-copy documents and electronic data and spreadsheets.

6. On August 12, 2009, the UCC moved for authority to retain Zuckerman Spaeder LLP ("Zuckerman") to serve as special counsel to the UCC (the "Special Litigation Counsel") to assist in the Investigation, and in the development of any related causes of action.[4] This Court authorized Zuckerman's retention on September 3, 2009.[5] Law Debenture did not object to the Zuckerman appointment.

---

[4] As noted in paragraph 3, supra, neither JPMC nor Merrill participated in the decision to retain a special litigation counsel nor in the selection of Zuckerman.

[5] Order Granting Application of the Official Committee of Unsecured Creditors for Order Authorizing the Employment and Retention of Zuckerman Spaeder LLP as Special Counsel, dated Sept. 3, 2009 (Docket No. 2088).

7.     JPMC is continuing to review hundreds of thousands of pages of documents and anticipates making several additional productions in the near future in connection with the ongoing Investigation. If the UCC seeks depositions in connection with its Investigation, JPMC anticipates that the parties will continue to cooperate in that process.

**B.     Law Debenture's Rule 2004 Request and this Motion**

8.     By letter dated July 27, 2009, Law Debenture sent JPMC a Rule 2004 document request seeking, in sum, all documents relating to the LBO (the "2004 Request"). (Ex. C). In all material respects, the substance of the 2004 Request is encompassed within the broader UCC Request.

9.     On August 4, August 19, and August 20, 2009, counsel for JPMC, Davis Polk & Wardwell LLP, and counsel for Law Debenture, Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz"), discussed the 2004 Request. Without waiving any rights or objections, JPMC made clear that, in the interest of avoiding costly and unnecessary litigation and in moving the bankruptcy proceedings along, it was prepared, subject to execution of an appropriate confidentiality agreement, to provide Law Debenture with copies of the documents produced to the UCC on essentially the same terms as they were provided to the UCC and in a manner that would not create any unnecessary duplication of effort, cost or burden. From the outset, JPMC encouraged Law Debenture to coordinate with the then newly-retained Special Litigation Counsel so that JPMC would not be forced to deal with multiple parties on multiple tracks, particularly given the fact that it has been and continues to be JPMC's position that Law Debenture is not entitled to *any* Rule 2004 discovery.

10. JPMC specifically told Law Debenture that in undertaking this voluntary procedure and by executing a confidentiality agreement, neither party was waiving any rights, including any right Law Debenture might have to bring a Rule 2004 motion or to seek leave from the Court for any reason at a later date. On August 25, 2009, after reviewing a proposed confidentiality agreement that would have provided Law Debenture with access to all materials produced to the UCC (the "Proposed Confidentiality Agreement"), Law Debenture demanded that JPMC recognize its "right" to challenge confidentiality designations JPMC made in connection with its production of documents to the UCC and to "use" the documents in "whatever pleadings and filings [Law Debenture] want[ed]" to make.

11. On August 26, 2009, Law Debenture filed its motion for leave to conduct discovery pursuant to Rule 2004 in order to obtain the very same materials that JPMC had offered to provide without involving the Court. With respect to JPMC, Law Debenture complained in its motion that JPMC's proposed confidentiality agreement would have been precluded Law Debenture from challenging confidentiality designations and from using documents in unspecified court filings.[6] (Motion at 5-6).

12. On September 11, JPMC reiterated its offer to provide to Law Debenture the discovery that has been and will be produced to the UCC. (Ex. F). Responding to the two concerns Law Debenture had raised, JPMC agreed that "1) that in the event [Law Debenture] wish[es] to use a document marked 'confidential' or 'highly confidential

---

[6] JPMC does not agree with this characterization, but accepts it for purposes of this response to the Motion. JPMC's view was that to avoid duplicative and multiple litigations with their attendant costs and burdens, Law Debenture should and could work through the UCC on these issues and that it would not waive any rights to seek discovery in the future.

attorneys eyes only' in a court filing in the Tribune bankruptcy cases (including adversary proceedings) and you do not disagree with that designation, you may use that document by filing it under seal; and 2) if you wish to use such a designated document in a Tribune bankruptcy case (or adversary proceeding) court filing and you do not agree with our designation, [JPMC] would agree to engage in a good faith discussion regarding that designation, following which, if we are unable to agree, you could file the document under seal and challenge the designation." (*Id.*) With this offer, JPMC addressed fully the objections that Law Debenture had claimed precluded it from accepting JPMC's earlier offer of the documents.[7]

13.  Law Debenture's contention that it seeks only "information from which to determine the best way to have the Court address the LBO-related claims," (Motion p. 5), is wholly belied by its actions. Over four weeks have passed since JPMC first delivered the Proposed Confidentiality Agreement, weeks that Law Debenture could have spent reviewing the requested documents. Although the parties are in the process of negotiating a resolution based on the terms offered by JPMC in its September 11 letter, a final resolution has not yet been reached.

14.  That Law Debenture failed to accept and did not start reviewing the documents a month ago strongly suggests that Law Debenture is not genuinely motivated by any need for information, but rather by an interest in manipulating or gaining some

---

[7] In addition, JPMC stated that "[i]n the event the Unsecured Creditors Committee takes depositions (and subject to their agreement), [JPMC] would agree to having a member of [the Kasowitz] Firm ask non-duplicative questions at the conclusion of the Committee Counsel's questioning."

unfair ability, through use of the press or otherwise,[8] to influence the UCC and the Investigation.[9] Law Debenture has not, and cannot, proffer any legitimate basis for its refusal of JPMC's reasonable offer of access to the information sought.

15.     Nevertheless, JPMC is still working to resolve this dispute. To date no final resolution has been reached but JPMC remains hopeful.

## ARGUMENT

### I. Law Debenture Is Not Entitled to Any Discovery Under Rule 2004 Because It Cannot Establish the Essential Requirement of Good Cause

16.     Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that, on motion of any party in interest, "the court *may* order the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added). Rule 2004 is "generally used for examination of the debtor regarding the debtor's assets and liabilities, not creditors," *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001), and is not a license "to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Cont'l Forge Co., Inc.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987) (quoting *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985)).

17.     Although the language of Rule 2004 is broad and has often been characterized as a fishing expedition, "the availability of Rule 2004 as a discovery tool is not unlimited." *In re Enron Corp.*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (quoting

---

[8] Less than an hour after the motion was filed at 10:06 p.m., the Wall Street Journal sent an email alert linking to a detailed article concerning Law Debenture's Rule 2004 motion. *See* WSJ Alert Email from WSJ.com Editors to Damian S. Schaible (Aug. 26, 2009, 22:58 ET) (Ex. E); *see also* Jeffrey McCracken et al., *Tribune Bondholders Fault Zell Takeover*, WALL ST. J., Aug. 27, 2009, at C3 (Ex. D).

[9] Law Debenture's motivations are further evidenced by its intemperate request for the appointment of a bankruptcy examiner in the event the Rule 2004 motion fails. JPMC takes no formal position with respect to the alternative request.

*In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274 (D. Colo. 1991)). In order to obtain discovery under Rule 2004, the requesting party must first demonstrate that it has "good cause." *In re Hammond*, 140 B.R. 197, 201 (Bankr. S.D. Ohio. 1992) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1336 (D.C. Cir. 1968)); *In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (quoting *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)). "Good cause" is a demanding standard requiring more than a showing of mere relevance. *See In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (noting that "relevance" alone is not sufficient). The discovery sought must be "necessary to establish the claim of the party seeking the examination" or the movant must show that the denial of a discovery request would cause "undue hardship or injustice." *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993); *In re Express One Int'l, Inc.*, 217 B.R. at 217.

18.     Law Debenture cannot satisfy the good cause requirement. The only arguments in support of "good cause" that can be gleaned from the Motion are: (1) Law Debenture's wholly speculative need to *use* documents in unspecified "filings and pleadings" in order to bring a claim against JPMC; and (2) its wholly speculative need to *use* documents in unspecified "filings and pleadings" to object to a bankruptcy plan.

19.     Since JPMC did not oppose Law Debenture's use of the documents in connection with Tribune bankruptcy case or any adversary proceeding within the Tribune bankruptcy case, it is not at all clear what Law Debenture is complaining about or what it means.

### A. Law Debenture Lacks Standing to Assert a Claim Against JPMC

20. Law Debenture's argument that it seeks to compel Rule 2004 discovery in order to conduct a "thorough investigation" of the LBO and to evaluate "what appear to be . . . actual and constructive fraudulent conveyance claims" against JPMC and others, fails the good cause test. (Motion ¶ 38.) Despite a lengthy discussion of the elements of a possible fraudulent conveyance claim (*see id.* ¶¶ 38-46), Law Debenture concedes that even if such a claim existed, Law Debenture has no authority to assert it.[10] (*See id.* ¶30, 38 n.42.)

21. Standing to bring a fraudulent conveyance claim on behalf of a bankrupt estate rests exclusively with the bankruptcy trustee or the debtor in possession. 11 U.S.C. §§ 544, 548; *see* Alan N. Resnick & Henry J. Somner, Collier Bankruptcy Manual § 548.06 (3d ed. rev. 2009) ("Collier") ("In almost all cases it is the trustee, or the debtor in possession, that will commence the fraudulent transfer adversary proceeding."); (Motion ¶ 30 (indicating that Law Debenture would need to "seek authority" to bring any claims).) Only after a trustee or debtor in possession unjustifiably refuses to enforce a colorable claim, and upon application, may a court grant a third-party permission to bring such a claim. *See Official Cmte. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 560-61 (3d Cir. 2003); Collier § 548.06 ("A prerequisite to the commencement of an avoidance action by a party other than the trustee or debtor in

---

[10] Law Debenture likewise lacks standing to assert claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or any other claims against JPMC and others on behalf of the bankrupt estate. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006) ("Upon the filing of a bankruptcy petition, . . . any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee.").

possession is prior permission from the court."). Law Debenture's Rule 2004 Request is particularly inappropriate where, as here, an active investigation into possible claims relating to the LBO already is being conducted by the UCC and the Special Litigation Counsel. *See, e.g., In re Enron Corp.*, 281 B.R. at 848 (considering ongoing investigation by creditor's committee as basis for denial of request by individual creditor).

### B. Discovery Relating to the Bankruptcy Plan Is Impermissibly Premature

22. Law Debenture also contends that Rule 2004 discovery is necessary so that it can object to an unknown bankruptcy plan. (*See* Motion pp. 4, 5 & ¶¶ 39, 47-48.) But, it is impossible to assess whether and to what extent discovery might be necessary to object to a plan that has not been presented. Quite simply, the Motion, in this respect, is premature, and Law Debenture is not entitled to Rule 2004 discovery based on nothing more than unfounded speculation.[11]

### C. In Any Event, Law Debenture Rejected Access to the Requested Documents

23. Following a series of meet-and-confer conversations, and in a good-faith attempt to avoid needless and costly litigation, JPMC agreed to provide Law Debenture with copies of the voluminous discovery provided to the UCC upon execution of an appropriate confidentiality agreement. JPMC's offer was designed to reasonably

---

[11] Similarly, were this Law Debenture's true motivation, the offer of the documents should have been sufficient. The fact that Law Debenture rejects the discovery materials suggest that Law Debenture is not motivated by a desire to have documents to enable it to participate in negotiation of a plan of reorganization.

10

accommodate Law Debenture's supposed "need" for information, while at the same time avoiding the unnecessary expense and burden of duplicative, multiple productions.

24.  Accordingly, Law Debenture does not come close to establishing "good cause" for the discovery requested, and the Motion should be denied.[12]

## CONCLUSION

25.  WHEREFORE, for all the foregoing reasons, JPMC requests that the Court deny the Motion and grant such other relief as may be warranted under the circumstances.

Dated: September 17, 2009
      Wilmington, Delaware

Respectfully submitted,

*/s/ Robert J. Stearn*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Katisha D. Fortune (No. 4857)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Karen E. Wagner
Sharon Katz
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10022
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A.*

---

[12] In the event the Court grants Law Debenture leave to serve Rule 2004 discovery requests, JPMC reserves the right to object to such requests.