# **EXHIBIT B**

# CHADBOURNE & PARKE LLP

Thomas J. Hall
direct tel (212) 408-5487
thall@chadbourne.com

30 Rockefeller Plaza, New York, NY 10112
tel (212) 408-5100  fax (212) 541-5369

May 13, 2009

Sharon Katz, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Re: Tribune Company, et al., No. 08-13141 (Bankr. D. Del.)

Dear Sharon:

Following-up on your telephone discussion with Howard Seife, I enclose an Amended Request for Production addressed to JPMorgan Chase Bank, N.A. I also enclose for your convenience a blackline which reflects the additional requests set forth in the Amended Request that were not set forth in our original Request. As discussed, in addition to being a lender in connection with the 2007 transactions, we understand JPMorgan Chase acted as a financial advisor to Sam Zell. As such, it is important that responsive documents from JPMorgan Chase's advisory business also be produced.

Please feel to call me should you have any questions regarding this matter.

Very truly yours,

Thomas J. Hall

Enclosures

VIA EMAIL and FIRST CLASS MAIL

cc: David M. LeMay, Esq.
    Howard Seife, Esq.
    N. Theodore Zink, Esq.

## AMENDED REQUEST FOR PRODUCTION
## IN CONNECTION WITH ANALYSIS OF THE MERGER

In accordance with the request made by the Official Committee of Unsecured Creditors of Tribune Company, et al., **JPMORGAN CHASE BANK, N.A.** (the "Producing Party") is to produce any and all documents and materials responsive to the requests below:

### INSTRUCTIONS

1. These document requests are intended to encompass each and every non-identical copy and draft of the documents requested, as well as all documents which are in the actual or constructive possession, custody or control of, or are available upon the request of the Producing Party, its present and former parents, subsidiaries, predecessors, members, affiliated entities, agents, representatives, officers, executives, partners, directors, investigators, consultants, researchers, contractors, employees, advisors, accountants and attorneys.

2. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure, these requests for production shall be deemed to be continuing in character so as to require further and supplemental production of documents if the Producing Party obtains further or additional documents or material responsive to any of these requests.

3. Each document request should be construed independently, and not in reference to any other document request for purposes of limitation.

4. In producing documents, all documents that are physically attached to each other shall be produced in that form. Documents are to be produced in their entirety without redaction. Documents that are segregated or separated from other documents, whether by inclusion and binders, files or sub-files, or by the use of dividers, tabs or any other method, shall

be produced in that form. Documents shall be produced in the manner and order in which they are maintained in the ordinary and usual course of business, or shall be organized and labeled to correspond to particular document requests while maintaining for each group of responsive documents the manner and order which they are maintained in the ordinary and usual course of business.

5.    If the Producing Party objects to any particular portion of any request herein, it is required to produce documents in response to all other portions of such request as to which there is no objection.

6.    As required by Rule 26(b)(5) of the Federal Rules of Civil Procedure, if the Producing Party asserts a claim of attorney-client privilege, work product doctrine or any other privilege or immunity with respect to any document request or portion thereof, the objection shall identify the nature of the privilege or immunity being claimed and describe the nature of the documents not produced or disclosed in a manner that will enable the Committee to assess the claim of privilege or immunity, including: (i) the type of document (e.g., letter, memorandum, report, etc.); (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author(s) or sender(s) of the document; (e) the addressee(s) of the document; and (f) each person who received a copy of the document.

7.    If any document or any portion thereof responsive to any request herein has been discarded or destroyed in whole or part, the Producing Party shall produce the following information: (i) the date the document was discarded or destroyed; (ii) the reason(s) the document was discarded or destroyed; (iii) the person(s) who discarded or destroyed the documents; and (iv) where the document was maintained prior to its destruction.

8.  Any document or materials requested herein that the Producing Party maintains in electronic form shall be produced in tagged image file format ("TIFF") or portable document format ("PDF") files with extracted full text for electronic documents, except that all spreadsheets, including but not limited to those created with Excel software, shall be produced in their native form. Additionally, metadata shall be provided with each electronic production.

9.  The Committee hereby reserves all rights to expand or supplement all requests for information and documents set forth herein.

## DEFINITIONS

1.  "You" or "your" means the Producing Party, its present and former parents, subsidiaries, predecessors, members, affiliated entities, agents, representatives, officers, executives, partners, directors, investigators, consultants, researchers, contractors, employees, advisors, accountants and attorneys, and other persons acting, or who have acted, on its behalf or who are under its control.

2.  "Person" means a natural person or any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and includes both the singular and the plural.

3.  "Document" means the original and any nonidentical copy of the original, of any recorded, written, printed, typed or other graphic material of any kind, variety, type, or character, wherever located, including by way of example but not limited to, the following: books, records, contracts, agreements, promissory notes, invoices, orders, loan agreements, bills, e-mails, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, handwritten notes, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, resumes, medical records, address books, appointment books, telephone logs,

worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, drawings, blueprints, photographs, negatives, and electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form.

    4.     "Communication" means transmittal of information by any means.

    5.     "Related to," "relate to," "relating to," "concerning" and "refer to" mean having any relationship with or connection to, being connected to, commenting on, responding to, containing, constituting, showing, memorializing, describing, analyzing, reflecting, pertaining to, compromising, identifying, discussing, evidencing, or otherwise establishing a reasonable, logical or causal connection.

    6.     "All," "each" and "any" shall be construed to mean all, each, every and any so as to be expansive as possible.

    7.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each document request all documents that might otherwise be construed to be outside of its scope.

8. "Including" means including but not limited to.

9. "Committee" means the Official Committee of Unsecured Creditors of Debtors.

10. "Credit Agreement" means the $8.028 billion senior secured credit agreement, dated as of May 17, 2007, by and among Tribune, as borrower, the financial institutions party thereto as lenders, JPMorgan Chase Bank, N.A., as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

11. "Debtors" means Tribune (defined below) and its affiliated debtors in these Chapter 11 cases, including the Guarantor Subsidiaries (defined below), and each of their present and former parents, subsidiaries, predecessors, members, affiliated entities, agents, representatives, officers, executives, partners, directors, investigators, consultants, researchers, contractors, employees, advisors, accountants and attorneys, and any other persons acting, or who have acted, on their behalf.

12. "Guarantor Subsidiaries" means any or all of the Tribune subsidiaries deemed material under the Credit Agreement, any and all predecessors or successors in interest thereof, and any and all of their officers, directors, employees, consultants, agents, representatives, executives, partners, investigators, consultants, researchers, contractors, advisors, accountants and attorneys, and any other persons acting, or who have acted, on their behalf.

13. "Initial Zell Note" means the unsecured subordinated exchangeable promissory note issued by Tribune, dated as of April 23, 2007, as amended, restated, supplemented or otherwise modified from time to time, in the original principal amount of $200 million, exchangeable at the option of Tribune, or automatically under certain circumstances,

into 5,882,353 shares of common stock issued pursuant to the Securities Purchase Agreement, dated as of April 1, 2007, by and among Tribune, EGI-TRB L.L.C., and Sam Zell, as guarantor.

14. "Interim Credit Agreement" means the $1.6 billion senior unsecured interim loan agreement, as of December 20, 2007, among Tribune, as borrower, the financial institutions party thereto as lenders, Merrill Lynch Capital Corporation, as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

15. "Merger" means the series of transactions that culminated with the merger of Tribune and Tesop Corporation, thereby causing Tribune to become a wholly owned subsidiary of the Tribune Employee Stock Ownership Plan.

16. "Petition Date" means December 8, 2008.

17. "Subsequent Zell Note" means the $225 million promissory note issued by Tribune, dated as of December 20, 2007, as amended, restated, supplemented or otherwise modified from time to time, purchased by EGI-TRB L.L.C. from Tribune.

18. "Tribune" means Tribune Company, any and all predecessors or successors in interest thereof, and any and all of its officers, directors, employees, consultants, agents, representatives, executives, partners, investigators, consultants, researchers, contractors, advisors, accountants and attorneys, and any other persons acting, or who have acted, on its behalf.

19. "Zell Notes" means the Initial Zell Note and the Subsequent Zell Note.

20. "Zell Shares" means the 1,470,588 shares of common stock purchased for $250 million on April 23, 2007.

6

21.     "Zell Warrant" means the 15-year warrant, dated as of December 20, 2007, as amended, restated, supplemented or otherwise modified from time to time, which together with the Subsequent Zell Note, entitled EGI-TRB L.L.C. to purchase 43,478,261 shares of Tribune's common stock.

22.     All capitalized terms used but not defined herein shall have the meaning ascribed to them in Affidavit of Chandler Bigelow III, sworn to December 8, 2008, that was filed in the Debtors' chapter 11 cases.

## REQUESTS

1.     All documents assessing, analyzing, addressing or investigating the solvency of the Debtors or the Guarantor Subsidiaries during the period January 1, 2007 through the Petition Date, including the adequacy of their capital with respect to their ongoing business or transactions (or any business or transactions in which they were about to engage) and their ability to pay its debts as they matured.

2.     All documents relating to the assets and liabilities of the Debtors or the Guarantor Subsidiaries during the period January 1, 2007 through the Petition Date, including all balance sheets, financial statements, listings of all cash accounts held by the Debtors or the Guarantor Subsidiaries and the monthly balances for each account, summary and detail supporting all tangible and intangible assets, detailed inter-company receivable and inter-company payable balances and activity, summary and detail supporting all liabilities of each of the Debtors and Guarantor Subsidiaries, including short-term and long-term liabilities, and other information detailing such assets and liabilities.

3.     All documents relating to the book value of the assets and liabilities of the Debtors or the Guarantor Subsidiaries and the calculations thereof, including as calculated under GAAP, during the period January 1, 2007 through the Petition Date.

NY4 - 212308.02

4. All consolidated and consolidating financial statements of the Debtors or the Guarantor Subsidiaries for the period January 1, 2007 through the Petition Date, including those provided by Debtors to any actual or potential lenders during discussions or negotiations relating to the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

5. All documents prepared in connection with the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including documents relating to financial projections, cash flows, income statements, balance sheets, borrowing bases or operating metrics and documents prepared for or presented to the Board of Directors of Tribune, any committee thereof, or any Debtor in connection with the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

6. All reports by investment banks, underwriters, financial advisors or other financial analysts in connection with the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes during the period January 1, 2007 through the Petition Date.

7. All documents concerning the actual or anticipated financial impact of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes on Tribune or any of its subsidiaries.

8. All documents relating to any fairness or solvency opinions or analyses of any of the Debtors, or of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, that you prepared, drafted, issued or contemplated, including:

    (a) all documents referenced therein;

    (b) all documents that you reviewed, considered or otherwise relied upon in connection therewith;

    (c) all work papers and analyses prepared in connection therewith;

(d) all valuation analyses, including all methodologies that you considered for Tribune as a consolidated enterprise or for any Tribune subsidiaries;

(e) all underlying support for any of your valuation analyses, including but not limited to:

　(i) calculations of the discount rates and support for inputs to the discount rates;

　(ii) details behind the comparable public company approach;

　(iii) details behind the market transaction approach; and

　(iv) details behind any cost approach;

(f) comparable companies considered, even if not ultimately relied upon;

(g) transactions considered, even if not ultimately relied upon;

(h) analyses of Tribune's ability to pay debts as they came due and supporting cash flow analyses;

(i) analyses of the Tribune's capital adequacy;

(j) tax analyses and research;

(k) dynamic or live copies of electronic models;

(l) notes or memoranda of meetings or discussions with Tribune management;

(m) notes or memoranda of meetings or discussions with Tribune advisors;

(n) notes or memoranda of meetings or discussions with Samuel Zell;

(o) notes or memoranda of meetings or discussions with advisors to Samuel Zell;

(p) any document index that you compiled;

(q) any internal memoranda related to your analyses;

(r) copies of third party market research or analysis that you gathered;

(s) projections, forecasts or budgets upon which you relied;

(t) your analyses of any projections, forecasts or budgets, including but not limited to sensitivity and variance analyses; and

(u) projections or extensions of projections that you developed or that were developed with your input.

9. All documents relating to presentations made in connection with the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including to the Tribune Board of Directors or any committees thereof, rating agencies, actual or proposed lenders, financial advisors, or the Tribune Employee Stock Ownership Plan or trustees thereof or advisors thereto.

10. All resumes, curriculums vitae or bios of your personnel involved in any analyses relating to any fairness or solvency opinion of any of the Debtors or of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

11. All documents relating to the time spent and expenses incurred by you in connection with any fairness or solvency opinion or analyses of any of the Debtors, or of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including but not limited to time records and billing statements.

12. All documents relating to any representation by any of the Debtors or the Guarantor Subsidiaries regarding their solvency or the solvency of any other Debtor or Guarantor Subsidiary during the period January 1, 2007 through the Petition Date, including all financial statements, balance sheets, financial projections, documents provided by the Debtors to actual or proposed lenders under the Credit Agreement, the Interim Credit Agreement or the Zell Notes, and other financial information or projections relating to such representations.

13. All documents relating to any solvency opinion or analysis of any of the

Debtors during the period January 1, 2007 through the Petition Date, including all financial statements, balance sheets, financial projections, and other financial information or projections relating to such solvency opinion or analysis, the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

14. All documents concerning and actual or proposed lender's review, analysis or consideration of the Credit Agreement and the Interim Credit Agreement and any actual or proposed transactions in connection therewith.

15. All documents concerning the review of or consideration by any credit committee in connection with the Credit Agreement and the Interim Credit Agreement and any actual or proposed transaction in connection therewith.

16. All documents concerning any syndications, loan participations, or sales efforts, solicitations or transactions in connection with the Credit Agreement and the Interim Credit Agreement and any actual or proposed transaction in connection therewith.

17. All documents concerning your consideration of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including but not limited to documents or information considered, notes, emails and memoranda.

18. All documents relating to offers or potential offers for the acquisition of any or all of the assets or liabilities of Debtors during the period January 1, 2007 through the Petition Date.

19. All documents relating to the estimation or projections of net and future cash flows of Debtors made during the period January 1, 2007 through the Petition Date.

20. All documents relating to the Debtors' market capitalization during the period January 1, 2007 through the Petition Date, including but not limited to stock prices and number

of outstanding shares.

21. All documents relating to business plans for any Debtor or Guarantor Subsidiary prepared or in effect during the period January 1, 2007 through the Petition Date.

22. All documents relating to information or analyses compiled or created by experts, advisors, consultants, analysts, investment or other bankers, or accountants hired to conduct due diligence or analyses in relation to any Debtor's financial condition during the period January 1, 2007 through the Petition Date.

23. All documents relating to attempts to obtain credit, loans, equity contributions or other financing as an alternative to the Credit Agreement, the Interim Credit Agreement or the Zell Notes during the period January 1, 2007 through the Petition Date.

24. All documents relating to the evaluation, calculation, analysis or estimation of the value to each of the Debtors of the availability of credit under the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

25. All documents relating to any and all risk analyses prepared in connection with the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

26. All documents relating to the evaluation, calculation, analysis or estimation of the actual or potential liability of each of the Debtors and the Subsidiary Guarantors as a result of the obligations incurred with respect to the Merger or under the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including any evaluation, calculation, analysis or estimation of the joint and several liability or contribution or indemnification rights of each of the Debtors and the Guarantor Subsidiaries.

27. All documents relating to loan agreements, expense sharing arrangements, service agreements, contribution agreements, indemnification agreements, or tax sharing

agreements between or among the Debtors, the Guarantor Subsidiaries, and any of their subsidiaries or affiliates prepared or in effect during any part of the period January 1, 2007 to the Petition Date.

28.   All opinion letters relating to the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

29.   All documents relating to any solvency opinions from Valuation Research Corporation to Tribune, including all documents referenced therein.

30.   All documents relating to any evaluation or analysis of the potential for the obligations incurred or consideration paid in connection with the Merger or under the Credit Agreement, the Interim Credit Agreement or the Zell Notes to be challenged or avoided as fraudulent conveyances under the Bankruptcy Code or state fraudulent conveyance law.

31.   All documents concerning any reasonably equivalent or other value realized, or contemplated to be realized, by any of the Debtors as a result of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes or any of the Debtors' obligations incurred in connection therewith.

32.   All documents relating to borrowings by or extensions of credit to the Debtors under the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including documents relating to the purpose of and intended and actual use of such borrowings or extensions of credit.

33.   All documents relating to the distribution among the Debtors of the proceeds of borrowings by or extensions of credit to any Debtor pursuant to the Credit Agreement, the Interim Credit Agreement or the Zell Notes, including documents relating to intercorporate contributions, transfers or loans of such proceeds or extensions of credit from the direct recipient

to other Debtors or cancellation or reduction of intercorporate debt owed between Debtors as the result of receipt of such proceeds or extensions of credit.

34. All documents reflecting interest or principal payments made under the Credit Agreement, the Interim Credit Agreement or the Zell Notes on or prior to the Petition Date, including documents showing by whom or on whose behalf such payments were made, when such payments were made, the amounts of such payments, the dates of such payments and under which agreements the payments were made.

35. All documents relating to the expenses or financial obligations of the Debtors and the Guarantor Subsidiaries during the period January 1, 2007 through the Petition Date, including detailed accounts payable sub-ledger files showing all originating expense entries and all cash disbursements, and all bank reconciliations for the various accounts from which accounts payable checks were issued.

36. All documents concerning any meetings of, or deliberations by, the boards of directors, or any committees thereof, of any of the Debtors or Guarantor Subsidiaries relating to the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

37. All documents, including notes and emails, concerning the analysis, review or consideration by any director of any Debtor or Guarantor Subsidiary, of the Merger, the Credit Agreement, the Interim Credit Agreement or the Zell Notes, or any of the transactions contemplated thereunder.

38. All documents concerning income tax returns filed with any government tax authority by or on behalf of the Debtors or the Guarantor Subsidiaries for all or any part of 2007 and 2008 as well as any amended returns for the same periods.

39. All documents relating to the sources of the funding for the Merger.

40. All documents relating to any financial valuation, appraisal, analysis, opinion, review, statement or projection of any of the Debtors or Guarantor Subsidiaries, including their solvency or insolvency.

41. All documents relating to any drawdowns under the Credit Agreement or the Interim Credit Agreement including the date and amount of such drawdowns.

42. All documents relating to any letters of credit issued under the Credit Agreement, including the date issued, the amount of credit extended, and the identity of the party to whom the letter of credit was issued and the identity of the party on whose behalf the letter of credit was issued.

43. All documents reflecting any or all of the flow of funds pursuant to the Credit Agreement, the Interim Credit Agreement or the Zell Notes.

44. All documents relating to the financial conditions of the Debtors and the Guarantor Subsidiaries during any or all of 2007 and 2008.