# **EXHIBIT C**

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

WRITER'S DIRECT DIAL NUMBER

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

July 27, 2009

**VIA ELECTRONIC MAIL AND OVERNIGHT MAIL**

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re:   *In re Tribune Company, et al.*, Case No. 08-13141 (KJC)

Dear Donald, James, and Damian:

    We are counsel to Law Debenture Trust Company of New York ("Law Debenture") in the above-captioned cases commenced by The Tribune Company ("Tribune") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors").

    Law Debenture is reviewing the 2007 leveraged buyout of Tribune (the "LBO"). In an effort to fully understand the LBO and related transactions, Law Debenture requests that J.P. Morgan Chase Bank, N.A. ("JPMC") produce the documents in the attached document requests without the need for judicial intervention.

    Please let us know your availability for a "meet and confer" call to be held on or before July 30, 2009 to discuss the document requests and whether JPMC will provide all responsive documents. Law Debenture intends to seek relief pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure if this matter is not resolved to its satisfaction.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

      We look forward to your prompt response.

                              Sincerely,

                              David S. Rosner

cc:    James Heaney

# FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
# (PRE-PETITION AGENTS)

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below.

"Tribune" means Tribune Company, a corporation organized under the laws of Delaware, any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

The term "document" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any writings, drawings, graphs, charts, photographs, phone records, electronic, recorded, digitally encoded, graphic, and/or other data compilations from which information can be obtained, translated if necessary, by the respondent through detection devices into reasonably usable form, or other information, including originals, translations and drafts thereof and all copies bearing notations and marks not found on the original. The term "document" includes, without limitation, affidavits, analyses, appointment books, appraisals, articles from publications, (whether in paper, database, electronic or other format(s)), calculations (whether in paper, database, electronic or other format(s)), books, books of account, statements, cables, calendars, charts, checks (cancelled or un-cancelled), check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, diskettes, drafts, estimates, evaluations, filings, financial statements, forms, invoices, journals, ledgers, letters, lists, memoranda, minutes, notations, notes, opinions, orders, pamphlets, papers, partners' and employees' personnel files, partners' and employees' review check lists, permanent files, pictures, press releases, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, reports, statements, statistical records, studies, summaries, tabulations, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets or things similar to any of the foregoing however denominated. The term "document" further includes email and electronic communication whether stored on a personal computer, network computer system, backup computer tape and/or disk, or by some other storage mechanism. The term "document" further means any document now or at any time in the possession, custody, or control of the entity to whom this document request is directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys). Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof, including, but not limited to, work product contracted by you from professional firms.

"Agents" means (a) JPMC, in its capacity as Administrative agent under the Credit Agreement and Syndication Agent under the Bridge Facility Agreement, (b) Merrill, in its

capacity as Administrative Agent under the Bridge Facility Agreement and Syndication Agent under the Credit Agreement, and (c) Citicorp North America, Inc., Bank of America, N.A. and Barclays Bank PLC, in their capacities as Co-Documentation Agents under the Credit Agreement and Bridge Facility Agreement.

"Bankruptcy Code" means 11 U.S.C. §§ 101-1520 (as amended).

"Bridge Facility" means the credit facility extended pursuant to the Bridge Facility Agreement.

"Bridge Facility Agreement" means the Interim Loan Agreement dated December 20, 2007 among Tribune and Merrill Lynch Capital Corporation as Administrative Agent, JPMorgan Chase Bank, N.A. as Syndication Agent, and Citicorp North America, Inc., Bank of America, N.A. and Barclays Bank PLC, as Co-Documentation Agents, as the same has been amended, modified or supplemented.

"Cantingy Foundation" means the Cantingy Foundation and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on its behalf.

"Chandler Trusts" means Chandler Trust No. 1, Chandler Trust No. 2 and any of their subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Concerning" means relating to, referring to, describing, evidencing or constituting.

"Credit Agreement" means the senior secured credit agreement dated May 17, 2007, with JPMorgan Chase Bank, N.A., as Administrative Agent, Merrill Lynch Capital Corporation, as Syndication Agent, and Citicorp North America, Inc., Bank of America, N.A. and Barclays Bank PLC as Co-Documentation Agents, as the same has been amended, modified or supplemented.

"Credit Facility" means any and all financial accommodations, loans, advances and extensions of credit made pursuant to the Credit Agreement.

"Former Credit Facility" means any and all financial accommodations, loans, advances and extensions of credit made pursuant to the five year credit agreement dated June 19, 2006 and the 364-day bridge credit agreement of the same date, either under the term facility, the revolving facility or the bridge facility.

"ESOP" means the Tribune Employee Stock Ownership Plan and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or

any other person acting on their behalf.

"Financial Advisors" mean Citigroup Global Markets, Inc. ("Citigroup") and Merrill Lynch, Pierce, Fenner & Smith Inc. ("MLPFS"), in their capacity as financial advisors to Tribune, Morgan Stanley & Co. Inc. ("Morgan Stanley"), in their capacity as financial advisors to the Special Committee of the Board of Directors of Tribune, and Valuation Research Corporation ("VRC"), in their capacity as financial advisors to the Board of Directors of Tribune.

"JPMC" means JPMorgan Chase Bank, N.A. and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Leveraged Buyout" means the transaction commencing on or about April 1, 2007 and concluding on or about December 20, 2007, among Tribune Company, the ESOP, the Zell Entity, and the SIT pursuant to which Tribune exchanged cash for its existing common stock and ESOP emerged as the largest shareholder of Tribune Company.

"Merrill" means Merrill Lynch Capital Corporation and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Merger Agreement" means the Agreement and Plan of Merger between Tribune, the Zell Entity, GreatBanc Trust Company, in its capacity as trustee for the ESOP, and Tesop Corporation.

"Motion" means the Motion of Law Debenture Partners, L.P. For Leave To Conduct Discovery Of Tribune Company And Its Affiliated Debtors And Debtors In Possession And Certain Third Parties Pursuant To 11 U.S.C. § 105(a) And 1109(b) And Federal Rule Of Bankruptcy Procedure 2004, dated March [ ], 2009.

"RRM Foundation" means the Robert R. McCormick Foundation and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Petition Date" means December 8, 2008.

"SIT" means the Sam Investment Trust, and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Shareholders" means ESOP, the Zell Entity, the Chandler Trusts, the RRM Foundation, and SIT, and any of their subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

"Subsidiary Guarantees" means the guarantees of Tribune's obligations under the Credit Agreement and the Bridge Facility Agreement extended by the Subsidiary Guarantors (as defined in the Motion), as the same have been amended, modified or supplemented.

"Zell Entity" means EGI-TRB, L.L.C., a Delaware limited liability company, and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on their behalf.

The word "identify" when used with respect to a person means the person's (a) full name; (b) present or last known address; (c) present or last known place of employment; and (d) job title.

The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

The documents covered by this request include all documents in your possession, custody or control. Unless otherwise specified, each request herein seeks all documents generated or received by you during the period from January 1, 2007 through and including the date of production.

Each request for the production of documents shall be deemed to be continuing in nature. If at any time additional documents come into your possession, custody or control or are brought to your attention, prompt supplementation of your response to these requests is required.

You shall produce all documents in the manner in which they are maintained in the usual course of your business or you shall organize and label the documents to correspond with the categories in this request. A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

If and to the extent documents are maintained in a database or other electronic format, you shall produce along with the document(s) software that will enable access to the electronic document(s) or database as you would access such electronic document(s) or database in the ordinary course of your business.

Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

Any document withheld from production based on a claim of privilege or any similar claim shall be identified by (1) the type of document, (2) the general subject matter of the document, (3) the date of the document, and (4) such other information as is sufficient to identify the document including the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other. The nature of each claim of privilege shall be set forth.

Documents attached to each other should not be separated.

Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by your attorneys or their agents, employees, representatives or investigators.

If you object to any part of any request, you shall state fully in writing the nature of the objection. Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request to which you are not objecting.

Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation.

The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

The word "through" means "through and including."

The term "including" means "including, without limitation."

## REQUESTS FOR PRODUCTION

### Request No. 1

All documents referring to, relating to, evidencing or constituting any oral or written communications, negotiations or meetings in respect to the Leveraged Buyout, including, without limitation, communications between and among any Agent, on the one hand, and Tribune, on the other and flow of funds, sources and uses memoranda, and bank account confirmations.

### Request No. 2

All documents supplied to the Agents in connection with the financing of the Leveraged Buyout, including without limitation, any due diligence requests, any documents used in the syndication of any loans, any documents used to solicit interest from lenders or shareholders and any revisions or drafts of any of the foregoing.

### Request No. 3

All documents referring to, relating to, evidencing or constituting any determinations, analysis, appraisals, opinions of value, opinions of solvency, fairness opinions or other similar statements concerning the value of Tribune prepared by or on behalf of Tribune or any Agent in connection with, prior to, or following the Leveraged Buyout.

### Request No. 4

All documents referring to, relating to, evidencing or constituting the payment of any fees, commissions, or other compensation to any Agent in connection with the Leveraged Buyout, including, without limitation, any broker fees, investment banker fees, arranger fees and/or underwriter fees.

### Request No. 5

All documents referring to, relating to, evidencing or constituting any internal analyses, summaries, forecasts, projections, reports or memoranda detailing the potential benefits of the Leveraged Buyout and/or risks or drawbacks of the Leveraged Buyout in the aggregate, on any group of entities, and/or any entity-by-entity basis, including, without limitation, any such documents presented to or otherwise utilized by Tribune's board of directors and/or officers in connection with their deliberations and approval of the Leveraged Buyout.

### Request No. 6

All documents referring to, relating to, evidencing or constituting any internal analyses, summaries, reports or memoranda regarding comparisons of pre-Leveraged Buyout forecasts, projections and/or budgets versus actual post-Leveraged Buyout performance of Tribune.

**Request No. 7**

All documents referring to, relating to, evidencing or constituting your internal credit analysis or any prior, current, actual or prospective loans to Tribune whether in connection with the Leveraged Buyout or otherwise, including, without limitation, your credit file, any credit proposals, any loan or credit committee proposals, term sheets, notes and minutes of meetings of any loan or credit committees or any other similar documents

**Request No. 8**

All documents referring to, relating to, evidencing or constituting the identity of any Agent or lender under the Credit Agreement or the Bridge Facility Agreement of Tribune, from the date of the Leveraged Buyout, as of the Petition Date and as of the date of this request.

**Request No. 9**

All documents referring to, relating to, evidencing or constituting any third-party statements, reports, presentations or memoranda, including, without limitation, industry consultants, valuation or market studies, relating to Leveraged Buyout or the financing thereof, regardless of whether such document was prepared by or on behalf of Tribune or any Agent.

**Request No. 10**

All documents referring to, relating to, evidencing or constituting the corporate structure and capital structure of Tribune before the Leveraged Buyout and as changed by the Leveraged Buyout, including, without limitation, illustrations and/or organizational charts.