# **EXHIBIT D**

GUESS WHO DOESN'T HAVE
A PLAN FOR RETIREMENT?

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format.          Order a reprint of this article now

# THE WALL STREET JOURNAL.
WSJ.com

AUGUST 27, 2009

## Tribune Bondholders Fault Zell Takeover

By JEFFREY MCCRACKEN, MIKE SPECTOR and SHIRA OVIDE

Disgruntled Tribune Co. bondholders have asked a U.S. bankruptcy judge to let them investigate Sam Zell's 2007 buyout of the newspaper-and-television chain in an effort to derail a plan that would hand the company over to its banks.

The filing, made late Wednesday, calls the $8.2 billion transaction a "fraudulent conveyance" that left Tribune insolvent from the onset of the 2007 deal. It accuses senior lenders led by J.P. Morgan Chase & Co. of completing a leveraged buyout they should have known would push the company into bankruptcy.


SAMUEL ZELL

"Fraudulent conveyance" is a legal term most often used in bankruptcy court, in which creditors allege a company has used assets in a way unfair to creditors. In the context of leveraged buyouts, creditors can argue a deal loaded up a company with too much debt, leaving it undercapitalized and unable to meet future obligations.

The filing will seek to slow or nullify an advancing plan for Tribune to exit from bankruptcy protection with J.P. Morgan, Bank of America Corp.'s Merrill Lynch and other banks owning nearly all of Tribune in return for the banks forgiving about $8 billion in debt.

Bondholders would likely receive only a sliver of new equity under the deal. The bondholders seeking to investigate Mr. Zell's buyout of Tribune represent more than 18% of the company's bond debt, according to the court filing. The bondholder's requested investigation centers around some $1.26 billion in notes issued between 1992 and 1997.

Bondholders have suggested the judge appoint an independent examiner to probe the deal if their request to conduct the investigation themselves is denied.

The move by Tribune's bondholders could become common in the months ahead, as many big leveraged buyouts struck during the credit boom collapse into bankruptcy. Looking for leverage in negotiations, creditors are trying to pin blame on company managements, as well as the financial institutions that funded the deals.

At the time of the buyout, Tribune was valued at $8.2 billion, excluding debt. Including Tribune's existing borrowings, the deal placed more than $12 billion of debt on the company, or about 10 times its annual cash flow.

"The LBO -- and the unsustainable debt burden it imposed on a business already in a secular decline -- undoubtedly caused the debtor's demise," the filing said. "The remedying of the LBO will most certainly dictate the economic outcome of these Chapter 11 cases."

An attorney for the banks on the Tribune deal didn't return a call seeking comment.

In a statement, Tribune said: "We have been working with all of our constituencies, including our noteholders, to address all of the issues inherent in a Plan of Reorganization for our company. Our goal is to develop and implement a plan that maximizes the value of the company for all parties in interest and treats all creditors fairly, and to do so as quickly as reasonably possible."

Such allegations can be difficult to prove, entangling opposing bankers and lawyers in a debate over what was a proper valuation at the time of the deal. "Insolvency is an easy concept to state but a difficult concept to prove," said Bill Welnhofer, managing director and head of restructuring at investment bank Robert W. Baird & Co. in Chicago.

The bondholders' filing seeks disclosure of emails, interviews and internal memos used by Tribune, its financial advisers and its lending banks. It requests information about what is known as a solvency opinion -- an independent evaluation of a company's ability to pay its debts following the assumption of debt.

Tribune was required to get two solvency opinions, one at the start of its buyout and a second several months later. Only the first one, obtained in May 2007, was made public. Tribune said the second solvency opinion declared the company solvent. The company has said it wasn't required under securities regulations to release the second solvency opinion. Both opinions came from Valuation Research Corp., a valuation firm, which didn't return a request for comment.

In the months between those opinions, Tribune's business was slipping. Its revenue fell 4.3% in the first quarter of 2007, just before Mr. Zell's deal was announced in April. The revenue slide accelerated to 12% in the fourth quarter of that year, which was a week shorter than the prior year's quarter.

The company had "every reason to believe the financial outlook of the business would allow it to support the debt that it took on," said one person involved in Tribune's bankruptcy. Mr. Zell expressed similar sentiments when Tribune filed for bankruptcy in December, saying revenue deteriorated far worse than he expected.

The person added: "They got a solvency opinion. Unfortunately, 'actuals' came in significantly less than projections. All facts at the time suggested the company could support the debt."

The filing was made by Law Debenture Trust Co. of New York, an indentured trustee for the bondholders. The identities of the holders aren't clear, but they are likely distressed-debt funds that buy bonds and bank debt of troubled companies.

**Write to** Jeffrey McCracken at jeff.mccracken@wsj.com, Mike Spector at mike.spector@wsj.com and Shira Ovide at shira.ovide@wsj.com

Printed in The Wall Street Journal, page C3

Copyright 2009 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com