# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to D.I. # 2031** |
| | **Hearing Date: September 24, 2009 at 10 am EST** |
| | **Objection Deadline: September 17, 2009 at 4 pm EST** |

## DEBTORS' RESPONSE TO MOTION OF LAW DEBENTURE COMPANY OF NEW YORK FOR LEAVE TO CONDUCT DISCOVERY PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE OF TRIBUNE COMPANY, ITS AFFILIATES AND CERTAIN THIRD PARTIES, OR ALTERNATIVELY, FOR THE APPOINTMENT OF AN EXAMINER

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby file this Response (the "Response") to the Motion of Law Debenture Company of New York ("Law Debenture") for Leave to Conduct Discovery pursuant to Rule

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, its Affiliates, and

Certain Third Parties, or Alternatively, for the Appointment of an Examiner (the "Motion").  In

response to the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors are a fiduciary to all parties in interest in these cases and

understand the desires of creditors to understand fully the facts and circumstances relating to

Tribune's pre-petition transactions.  Indeed, this is important so that all the major constituencies

have an intelligent basis upon which to assess the plan of reorganization eventually filed in these

chapter 11 cases.  But the Debtors are also cognizant these cases need to proceed in an orderly

manner to plan confirmation, and having multiple parties each conducting independent discovery

processes is not an efficient or even workable process.  Allowing any one constituency to control

the discovery process for its own narrow and self-interested goals would likely unreasonably

delay resolution of these cases, to the detriment of the Debtors' estates and other constituencies.

Moreover, the diversions and burdens of such discovery could damage the Debtors' business

operations and materially diminish the Debtors' enterprise value.

2.      The Debtors' desire is to conduct a reasoned and orderly process,

responsive to the concerns of all constituencies in these cases, with the goal of providing

pertinent information so that a consensual global resolution of these cases can be achieved and

the Debtors can expeditiously exit chapter 11.  The Debtors recognize the information to be

provided includes disclosure of facts and circumstances relating to the transactions during

calendar year 2007 pursuant to which the Debtors became privately held (the "Leveraged ESOP

Transactions").  The Debtors will use their best efforts to ensure that sufficient material pertinent

information is provided by October. The Debtors anticipate a plan of reorganization will soon follow.

3.      The Debtors have been working co-operatively for a number of months to provide the Official Unsecured Creditors' Committee (the "UCC") with access to documents relating to the Leveraged ESOP Transactions and other matters that may be relevant to formulating a plan of reorganization. The Debtors have also been successfully encouraging other parties in interest in these cases with relevant information to do the same, and significant progress has been made to date. The Debtors and their professionals have also been reviewing their own documents and documents produced by others to ensure the Debtors themselves are fully informed as to the pertinent facts.

4.      The issue before this Court in connection with the pending Motion is where Law Debenture appropriately fits in this process. Law Debenture represents a material constituency in these cases, but its claims and interests need to be kept in perspective. Law Debenture is indenture trustee for approximately 18% of the outstanding amount of the senior notes issued by Tribune. The remaining 82% of the senior notes are represented by a separate indenture trustee, Deutsche Bank, which is a UCC member. The senior notes as a group also represent less than 10% of the aggregate outstanding debt of the Debtors in these cases, with Law Debenture itself representing less than 1.2% of the aggregate debt.

5.      The Debtors have informed Law Debenture prior to their filing the instant motion that they favor Law Debenture being provided the ability to review information being provided to the UCC relating to the Leveraged ESOP Transactions.[2] This would allow Law

---

[2]      Much of the information is confidential for business reasons, and the Debtors would request that Law Debenture comply with the same confidentiality provisions as to which the UCC has agreed.

46429/0001-5996855v1

Debenture to make reasoned decisions in this case and to participate on an informed basis in the plan of reorganization process.

      6.      What the Debtors do object to, however, is any effort by Law Debenture to pursue a separate process for its own purposes by either creating a second track of discovery (with all of the attendant cost and expense) or appointing an examiner.  Law Debenture asserts that everyone involved in the ongoing investigation is disabled by reason of bias, but has not come forward with any specific evidence even suggesting that the Debtors or the UCC have conducted themselves as such or will act in any way other than properly and fully consistent with their fiduciary duties.  Speculation that there could be potential problems at some unidentified point in the future serves no productive purpose.  The fact is that the Debtors and others involved in the Leveraged ESOP Transactions have been moving forward responsibly to make available information necessary to evaluate these transactions, which is exactly what is called for in the circumstances.

      7.      The instant Motion is also misdirected.  Contrary to its claims, Law Debenture did not work with the Debtors once it reached what it asserts is impasse with the agent for the senior lenders.  Had it done so, the Debtors likely would have been able to help Law Debenture reach agreement over the terms of an acceptable protective order, thereby enabling Law Debenture to receive the materials that the parties are willing to provide.  Instead, Law Debenture filed a 58 page motion which does not ask the Court's assistance in setting the terms of an appropriate protective order but instead demands either entry of a Rule 2004 order or appointment of an examiner.  The motion should be denied.

46429/0001-5996855v1

**BACKGROUND**

8.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [D.I. #43].

10.      The Debtors are seeking to reach a global resolution of these cases, including resolving any and all claims that might exist arising out of the Leveraged ESOP Transactions.  To that end, the Debtors believe that it is important that an expeditious review of the material facts pertinent to all potential claims occurs.  The Debtors are also committed to working with all parties-in-interest in these cases, including the UCC, and each of the individual creditor constituencies, to achieve resolution.[3]

A.      The UCC's Investigation Into The Leveraged ESOP Transactions

11.      On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed the UCC, which until very recently consisted of nine members.

12.      The UCC membership include two indenture trustees (Deutsche Bank Trust Company Americas ("Deutsche Bank") and Wilmington Trust Company), who collectively

---

[3]      Law Debenture's motion contains what purports to be an extensive description of the Leveraged ESOP Transactions based on a combination of public materials and admitted speculation.  Especially in light of the ongoing UCC investigation, detailed response or rebuttal at this point is premature.  It suffices to note that simply presenting conjectural and selective out of context quotations does not establish fraudulent conveyance or any other claims.

represent creditors holding more than 88.5% of the debt outstanding at the petition date that was

issued prior to the Leveraged ESOP Transactions. The members also include at least four other

creditors who had no involvement or role in the Leveraged ESOP Transactions (Warner Brothers

Television, Buena Vista Television, Pension Benefit Guaranty Corporation and Washington-

Baltimore Newspaper Guild, Local 32035) as well as Mr. William Niese, a former Times Mirror

officer who worked for Tribune after Times Mirror was acquired by Tribune and whom is owed

non-qualified, supplemental retirement benefits. Mr. Niese is also informally acting in

coordination with other former Times Mirror officers and employees whom are owed non-

qualified supplemental retirement benefits and deferred compensation. JPMorgan Chase Bank,

N.A. ("JPMC") is also a member of the UCC. Merrill Lynch Capital Corporation ("MLCC")

was a member of the UCC until it recently resigned.

13.     On January 16, 2009, the UCC filed applications seeking approval to

retain and employ Chadbourne & Parke LLP ("Chadbourne") [D.I. #243] and Landis Rath &

Cobb LLP ("Landis") [D.I. #242] as co-counsel to the UCC.

14.     On February 20, 2009, this Court entered orders approving the retention of

both firms on a final basis [D.I. #428 and D.I. #429].

15.     In the spring of 2009, the members of the UCC other than JPMC and

MLCC (the "Independent Members") instructed the UCC's professionals to investigate the

Leveraged ESOP Transactions to ascertain whether those transactions might give rise to one or

more causes of action that might be prosecuted on behalf of the Debtors' estates. *See*

Application of the Official Committee of Unsecured Creditors of Tribune Company, et. al.,

Pursuant to 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014, for an Order Authorizing the

Employment And Retention of Zuckerman Spaeder LLP As Special Counsel Nunc Prop Tunc To

6

August 6, 2009 at 4 ("Special Counsel Motion") [D.I. #1953]. To the best of the Debtors'
knowledge, the UCC has not placed any limitations upon the scope of the ongoing investigation
into the Leveraged ESOP Transactions.

      16.    The Debtors have fully cooperated with the UCC's information requests,
and to date granted the UCC's professionals access to thousands of documents. The information
so far provided to the UCC by the Debtors includes, without limitation:

- Weekly, monthly, quarterly, and annual audited and unaudited financial statements
- Full deal documentation regarding the Leveraged ESOP Transactions and financings
- Presentations to the Tribune Board and Special Committee relating to the Leveraged ESOP Transactions and other proposed deals
- Minutes for Tribune Board meetings relating to the Leveraged ESOP Transactions and other matters
- Solvency opinions authored by VRC in connection with the Leveraged ESOP Transactions (including the Phase Two opinion (see Motion at p. 4 n. 5) as well as supporting documentation referred to in those opinions
- Duff & Phelps valuation reports
- Multiple Navigant valuation reports
- Documentation relating to draws, debt and interest payments, fees and funds flow under the financings
- Correspondence regarding other proposed deals
- D&O insurance documentation
- Federal tax returns

The Debtors also are in the process of reviewing a voluminous number other documents, which
they are presently producing on a rolling basis. That production is expected to continue into
October.

      17.    Starting in March of 2009, Chadbourne also sent document requests to
more than 30 entities and persons involved in the Leveraged ESOP Transactions. These persons
and entities have produced (and are in the process of producing) a wide range of documents
relating to the Leveraged ESOP Transactions.

18.     On August 13, 2009, the UCC filed its motion seeking approval to retain

Zuckerman Spaeder LLP ("Zuckerman") as special counsel to the UCC.  The UCC explained

that it wished to retain Zuckerman "to assist in the further investigation of the Leveraged ESOP

Transactions, and in negotiations with the respective lenders and the Debtors looking towards a

consensual resolution of any claims if such a resolution can be achieved on terms that are

satisfactory to the Committee, and in the event that negotiations do not produce an outcome

satisfactory to the Committee, to be able to bring any such causes of action against the lenders as

may be deemed appropriate by the Creditors' Committee" and authorized by the Court.  *See*

Special Counsel Motion at 4-5.

B.     Law Debenture

19.     On or about June 8, 2009, Law Debenture replaced Deutsche Bank as

trustee for one of the four series of senior unsecured debentures that were issued by Tribune.

The aggregate principal amount of senior notes represented by Law Debenture is approximately

$235 million.  As noted above, this $235 million represents about 18% of the approximately

$1.283 billion of senior unsecured notes.  The remaining 82% of the notes continue to be

represented by Deutsche Bank as Indenture Trustee.

20.     In late July, Law Debenture served a document request upon the Debtors.

After several discussions, the Debtors informed Law Debenture they had no objection to

providing Law Debenture with access to documents previously made available to the UCC,

subject to an appropriate confidentiality agreement or protective order.  The Debtors offered to

work out a confidentiality agreement with Law Debenture, but Law Debenture declined the offer

on the basis that it was in the process of negotiating the terms of a confidentiality agreement with

JPMC, and preferred to use the JPMC agreement as a model.  When these negotiations between

8

Law Debenture and JPMC were still ongoing after a period of time with no resolution, the Debtors contacted Law Debenture and offered again to assist in working out a confidentiality agreement acceptable to all parties.

21.    Law Debenture failed to accept or pursue this offer with the Debtors. Instead, Law Debenture filed the present motion for leave to take Rule 2004 discovery or, alternatively, for the appointment of an examiner.

## ARGUMENT

### A.    The Second Track of Discovery Requested By Law Debenture Is Unnecessary, Disruptive and Burdensome And Should Be Denied

22.    Bankruptcy Rule 2004 grants the Court the discretion to issue discovery orders upon "good cause shown and on terms" as the Court may impose. *See, e.g., In re Eagle-Pitcher Industries, Inc.,* 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994), *order amended,* 1994 WL 731628 (Bankr. S.D. Ohio 1994). The burden of showing "good cause" is on the party seeking to conduct an examination under Rule 2004. *See, e.g., In re Mattera,* 2007 WL 1813763 at *3 (Bankr. D. N.J. 2007). Moreover, in exercising its discretion, the Court is called upon to balance the competing interests involved, weighing the necessity for the information sought against the burden, expense, inconvenience and intrusion involved. *See, e.g., In re Countrywide Home Loans, Inc.,* 384 B.R. 373, 391-94 (Bankr. W.D. Pa. 2008), *appeal dismissed,* 2008 WL 2388285 (W.D. Pa. 2008); *In re Public Service Co. of New Hampshire,* 91 B.R. 198, 199 (Bankr. D. N.H. 1988); *In re Kreiss,* 46 B.R. 164, 165 (Bankr. E.D.N.Y. 1985). *See also In re Recoton Corp,* 307 B.R. 751, 755 (S.D.N.Y. 2004).

23.    Law Debenture has failed to carry its burden of showing good cause. As explained above, the UCC, on behalf of all unsecured creditors, including those related to Law

46429/0001-5996855v1

Debenture, is already conducting an investigation of the Leveraged ESOP Transactions. To that

end, the UCC has requested and received access to wide range of documents from Debtors and

others relating to the Leveraged ESOP Transactions.

24.    The UCC and its counsel are capable of conducting this ongoing

investigation. The UCC's membership includes two indenture trustees together representing the

majority of the presently outstanding debt issued prior to the Leveraged ESOP Transactions and

at least four other creditors who had no role or involvement in the Leveraged ESOP

Transactions. Further, the UCC 's counsel have obtained waivers from their existing clients

giving counsel full authority to review, investigate and negotiate potential claims arising out of

the Leveraged ESOP Transactions, and Law Debenture has come forward with no specific

evidence suggesting that counsel is not representing the UCC zealously in connection with these

matters. Moreover, to the extent Chadbourne or Landis are unable to prosecute any potential

litigation against certain lenders, the UCC has hired Zuckerman as special counsel to do so. Law

Debenture did not oppose the motion to hire Zuckerman and has made no showing that any of

these lawyers are unqualified or disabled from representing the UCC.

25.    Further, the Debtors do not propose that Law Debenture and its counsel be

excluded from the investigation. To the contrary, the Debtors and a number of other parties have

agreed to make the documents they have produced available to Law Debenture.[4] The Debtors

also have no objection to Law Debenture's participation in any depositions initiated by the UCC.

Finally, in the event that Law Debenture believes at the end of the day that the Debtors and the

UCC have not properly reviewed the pertinent information and addressed the relevant potential

---

[4]    Law Debenture admits that these documents constitute "most" of the documents it seeks through its own
requests. *See* Motion at 5.

claims, Law Debenture remains free to seek further authority from the Court at the appropriate time.

26.     Law Debenture's charge that the structure and timing of the ongoing investigative process is designed to steamroll an unfair settlement of claims relating to the Leveraged ESOP Transactions (Motion at p. 4) is unfounded.  The Debtors certainly desire to exit from chapter 11 expeditiously, but also fully recognize that thorough review of the Leveraged ESOP Transactions needs to be a part of that process.  To that end, the Debtors as well as a number of other parties are cooperating in a fulsome exchange of information to achieve that goal.  Law Debenture also has full recourse to the Court in the event that anything takes place which Law Debenture considers to be improper, and Law Debenture and others also will have a full opportunity to be heard with respect to any plan or reorganization that will be filed.

27.     In this context, Law Debenture's complaint that it needed to file the instant Motion because it did not like the terms in JPMC's proposed protective order relating to the ability to challenge confidentiality designations or to use documents in Court is not well taken.  *See* Motion at 5.  The appropriate way to handle this situation was not to file a motion demanding a redundant and burdensome second discovery track or the appointment of an examiner, but rather to request the Debtors' assistance in resolving disputes relating to the protective order and, if necessary, to file a motion seeking the Court's assistance in establishing the appropriate terms of the protective order.

28.     But most important, a second track of discovery as proposed by Law Debenture is not only unnecessary but also would be disruptive, burdensome and expensive.  Opening a second track of discovery at this time will only serve to distract the Debtors and other

11

participants in the ongoing efforts to provide relevant information and resolve these chapter 11 cases for all constituencies, not just the relative few represented by Law Debenture. In this respect, Law Debenture's motion makes clear that the document requests and deposition notices attached to its motion are just its opening salvo, with more to come. *See* Motion at p. 28, n. 49. In addition, allowing Law Debenture to open a second track of discovery will unduly multiply the already substantial costs being borne by the estate in connection with the review of pre-petition transactions.

29.    For all these reasons, the motion for a Rule 2004 examination should be denied. Indeed, it is well-recognized that, in circumstances such as those presented here, discovery should be denied. *See, e.g., In re Texaco, Inc.,* 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (limiting creditor's Rule 2004 examination request to discovery that was not duplicative of information previously provided to UCC or unreasonably burdensome to the Debtor); *In re Buick,* 174 B.R. 299, 305 (Bankr. D. Colo. 1994) (refusing to authorize creditor discovery in areas already part of a trustee's adversary proceeding or that are otherwise duplicative, redundant, onerous, unnecessarily costly or unreasonably intrusive); *In re Granite Partners, L.P.,* 213 B.R. 440, 453-54 (Bankr. S.D.N.Y. 1997) (refusing to burden estate with expense of discovery which duplicated Committee investigation).[5]

---

[5]    *See also In re Eagle-Pitcher Industries, Inc.,* 169 B.R. at 133-35 (discovery denied where, among other things, information available from other sources, benefit was far from clear and discovery sought was broad and would be costly and disruptive to debtors); *In re Duratech Industries, Inc.,* 241 B.R. 291, 296-98 (Bankr. E.D.N.Y. 1999), *aff'd,* 241 B.R. 283 (E.D.N.Y. 1999); (discovery denied where, among other things, necessary information was publicly available); *In re Wilcher,* 56 B.R. 428, 434-35 (Bankr. N.D. Ill. 1985) (discovery denied where necessity was minimal in light of legal effect of preclusion doctrines and the wide scope of the intended discovery was burdensome).

**B.     Law Debenture Has Not Shown That Appointment of an Examiner Is In The Best Interests of Creditors or Otherwise Appropriate**

30.     The Court should also deny Law Debenture's perfunctory request in the alternative for appointment of an examiner.  Bankruptcy Code Section 1104(c)(1) allows the Court to order the appointment of an examiner in the exercise of its discretion only where the party requesting appointment has carried its burden of showing that appointment is "in the interests of creditors, any equity security holders, and other interests of the estate."  11 U.S.C. § 1104(c)(1).  In examining this issue, the Court must determine that the moving party has shown the claimed benefits to the estate to outweigh the attendant burden and expense.  *See, e.g., In re Gilatech, Inc.*, 305 B.R. 832, 836 (Bankr. N.D. Ohio 2004); *In re Sletteland,* 260 B.R. 657, 671-72 (Bankr. S.D.N.Y. 2001), *In re Mechem Financial of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988); *In re Gilman Services, Inc.*, 46 B.R. 322, 327-28 (Bankr. D. Mass. 1985).

31.     Here, Law Debenture also has not carried its burden.  As explained above, the review of relevant information pertinent to the Leveraged ESOP Transactions is well underway.  The Committee and its professionals have incurred millions of dollars in expenses performing this review to date.  Law Debenture has been invited to participate in that process by reviewing the documents produced to date and by participating in any depositions noticed by the UCC.  In addition, although Law Debenture raises the specter that the investigation may be inadequate because of alleged bias, it has not come forward with any evidence of any specific issue or problem, and in any event has full access to this Court in the event that a specific problem does arise.  Under these circumstances, there has been no showing of any benefit that might outweigh the admitted burden and expense that would be imposed upon the estate by appointing an examiner to cover the same ground already being covered by the Committee at great cost to the estate.  *See, e.g., In re Adelphia Communications*, Case No. 02-41729 (Bankr.

13

S.D.N.Y. 2006)(J. Gerber), Tr. of Feb. 6, 2006 Hr'g at 7.61- 7.65 (declining to appoint an examiner because, among other reasons, the same result could be achieved in a more efficient and economic manner through an investigation conducted by the committees) (Exhibit A); *In re Bradlees Store, Inc.*, 209 B.R. 36, 39 (Bankr. S.D.N.Y. 1997)(declining to appoint examiner where such would be "duplicative, needless and wasteful"). *See also In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D. Tex. 1992)("a creditor cannot use the provision [for appointment of an examiner] to disrupt the proceedings"); *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Oct. 24, 2007)(J. Lifland), Tr. of Oct. 24, 2007 Hr'g at 73 (refusing to appoint examiner in part because the requesting party's "ill-timed motion smacks ... of litigation leverage ...") (Exhibit B).

32.    Law Debenture also has failed to show that an examiner should be appointed under Bankruptcy Code Section 1104(c)(2).[6] Although some courts have read Section 1104(c)(2) as mandating the automatic appointment of an examiner whenever the debtor's specified debts exceed the $5 million threshold, *see, e.g., In re Loral*, 2004 WL 2979785 (S.D.N.Y. 2004),  Law Debenture neglects to mention that courts in Delaware are among those that have rejected this reading and that interpret Section 1104(c)(2) as providing for appointment only where the moving party has shown that an examiner-conducted investigation would be "appropriate." *See, e.g., In re SA Telecommunications, Inc.*, Case No. 97-02395 (Bankr. D. Del. Mar. 27, 1998)(J. Walsh), Tr. of Mar. 27, 1998 Hr'g at 82 ("My view is that [1104](c)(2) is not mandatory") (Exhibit C); *See also In re Bradlees Store, Inc.*, 209 B.R. at 39; *In re Rutenberg*, 158 B.R. 230, 233 (Bankr. M.D. Fla. 1993); *In re GHR Companies, Inc.*, 43 B.R. 165, 176

---

[6]    Section 1104(c)(2) provides that "[i]f the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest...the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate ... if...the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. § 1104(c)(2).

46429/0001-5996855v1

(Bankr. D. Mass. 1984); *In re Shelter Resources Corp.*, 35 B.R. 304, 305 (Bankr. N.D. Ohio 1983).

     33.    Here, an examiner-conducted investigation would not be "appropriate" at this time for all the reasons listed in paragraph 31 above. *See In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Oct. 31, 2007)(J. Sontichi), Tr. of Oct. 31, 2007 Hr'g at 77 (denying motion to appoint examiner without prejudice despite monetary threshold being met because there would be nothing to gain from duplicating other investigatory efforts) (Exhibit D); *In re Shelter Resources Corp.*, 35 B.R. at 305 (duplicating efforts "is not in the spirit of economy of administration in the handling of bankruptcy estates").[7]

---

[7]    Law Debenture also neglects to point out that even those courts that consider appointment mandatory where the $5 million threshold is satisfied recognize that the Court has the discretion to direct the nature, extent and duration of the examiner's investigation so that it is limited to what is "appropriate" under the circumstances and no more. *Loral*, 2004 WL 2979785 at *5; *In re UAL Corporation*, 307 B.R. 80, 84 (Bank. N.D. Ill. 2004). Here, in light of the ongoing investigation of the UCC, the co-operation of the Debtors and others, the substantial progress made to date, the ability of Law Debenture to participate and the substantial burden and expense otherwise involved, it would be appropriate at this time to allow the UCC's investigation to proceed on its own (and, in the absence of any difficulties, to come to a conclusion) before deciding on the scope of the charter to be given to an examiner. *See, e.g., In re Asarco LLC*, Case No. 05-21207 (Bankr. S.D. Tex. 2008)(J. Smith), Order dated 3/4/08 (Exhibit E); *In re Acands, Inc.*, Case No. 02-12687 (D. Del. 2002)(J. Newsome), Tr. of Nov. 18, 2002 Hr'g at 131, Order dated 12/19/02 (Exhibit F). *See also In re Adelphia Communications*, Tr. of Feb. 6, 2006 Hr'g at 7.61 (Exhibit A); *In re Collins & Aikman Corp.*, 368 B.R. 623, 627 (Bankr. E.D. Mich. 2007).

46429/0001-5996855v1

WHEREFORE, the Debtors respectfully request that Law Debenture's Motion be denied.

Dated:    Wilmington, Delaware          Respectfully submitted,
          September  17, 2009

                                        SIDLEY AUSTIN LLP
                                        Bryan Krakauer
                                        James F. Conlan
                                        One South Dearborn Street
                                        Chicago, IL  60603
                                        Telephone:  (312) 853-7000
                                        Facsimile:  (312) 853-7036

                                              -and-

                                        COLE, SCHOTZ, MEISEL,
                                        FORMAN & LEONARD, P.A.

                                        By: _____
                                        Norman L. Pernick (No. 2290)
                                        J. Kate Stickles (No. 2917)
                                        Patrick J. Reilley (No. 4451)
                                        500 Delaware Avenue, Suite 1410
                                        Wilmington, DE  19801
                                        Telephone:  (302) 652-3131
                                        Facsimile:  (302) 652-3117

                                        ATTORNEYS FOR DEBTORS
                                        AND DEBTORS IN POSSESSION

46429/0001-5996855v1