## EXHIBIT A

1                  UNITED STATES BANKRUPTCY COURT
                   SOUTHERN DISTRICT OF NEW YORK
2

3
                                        .
4    IN RE:                             .   Case No. 02-41729
                                        .
5    ADELPHIA COMMUNICATIONS,           .   New York, New York
                                        .   Monday, February 6, 2006
6                      Debtors.         .   5:02 p.m.
     .  .  .  .  .  .  .  .  .  .  .  .  .
7
                              EXCERPT OF
8           TRANSCRIPT OF HEARING ON STIPULATION/MOTION
               BEFORE THE HONORABLE ROBERT E. GERBER
9                 UNITED STATES BANKRUPTCY JUDGE

10   APPEARANCES:    (On the Record)

11   For the Debtors:             Peter N. Wang, Esq.
                                  FOLEY & LARDNER, LLP
12                                90 Park Avenue
                                  New York, New York 10016
13                                (212) 682-7474

14   For the U.S. Trustee:        Elizabeth Austin, Esq.
                                  Assistant U.S. Attorney
15                                OFFICE OF THE U.S. TRUSTEE
                                  33 Whitehall Street
16                                New York, New York 10004
                                  (212) 510-0500
17
     (Appearances continued)
18
     Audio Operator:             Electronically Recorded
19                               by Court Personnel

20   Transcription Company:      Rand Transcript Service, Inc.
                                  311 Cheyenne Road
21                                Lafayette, New Jersey  07848
                                  (973) 383-6977
22
     Proceedings recorded by electronic sound recording,
23   transcript produced by transcription service.

24

25

```
 1   APPEARANCES:   (Continued)

 2

     For the Official Committee
 3   of Unsecured Creditors:      Daniel N. Zinman, Esq.
                                  KASOWITZ, BENSON, TORRES &
 4                                 FRIEDMAN, LLP
                                  1633 Broadway
 5                                New York, New York 10010
                                  (212) 506-1700
 6
     For the Official Committee
 7   of Equity Security-Holders:  Gregory A. Blue, Esq.
                                  MORGENSTERN, JACOBS & BLUE, LLC
 8                                885 Third Avenue
                                  New York, New York 10022
 9                                (212) 308-5858

10   For the Fee Committee:       James A. Beldner, Esq.
                                  KRONISH, LIEB, WEINER
11                                 & HELLMAN, LLP
                                  1114 Avenue of the Americas
12                                New York, New York 10036
                                  (212) 479-6000
13
     For Boies, Schiller
14    & Flexner, LLP:             Michael L. Cook, Esq.
                                  David M. Hillman, Esq.
15                                SCHULTE, ROTH & ZABEL, LLP
                                  919 Third Avenue
16                                New York, New York 10022
                                  (212) 756-2000
17

18

19

20

21

22

23

24

25
```

1  duration.  Section 1104(c) plainly states that the Court

2  shall examine -- appoint an examiner to conduct such an

3  investigation of the debtor as is appropriate.

4          The thrust -- oh.  To conduct such an investigation

5  of the debtor as is appropriate was put in internal quotes by

6  the Sixth Circuit.

7          The thrust of that quoted language was probably the

8  portion that reads "as is appropriate."  But note that the

9  Sixth Circuit didn't need then to say after investigation "of

10 the debtor."  It could just as easily have left them out for

11 the point that it was making, yet it did not leave those

12 words out of its quotation of the statute.

13          So whether you analyze the issue by saying that a

14 court had to prove the appointment of an examiner at all

15 unless it's to conduct an investigation of the debtor, or

16 alternatively, that the only permissible scope of the

17 mandatory appointment is investigation of the debtor, either

18 way the requested examination here is not mandatory or,

19 indeed, authorized here.  This determination, like the last

20 one, where I declined to appoint an examiner with the scope

21 of the proposed examination was to investigate into whether

22 the debtors were negotiating with a counter-party in good

23 faith, is without prejudice to a request for an examiner

24 under an investigation of appropriate scope.

25          Moreover, even if I had the discretion to order the

1  appointment of an examiner on a volitional basis, I would not

2  do so here.  The appointment of an examiner is sometimes very

3  useful for a bankruptcy case.  In other cases, it is not and

4  can cost the estate millions of dollars that would be better

5  spent on creditor recoveries.

6      In Refco every party with a financial stake in the

7  case opposed the appointment of an examiner, but the U.S.

8  Trustee in that region wanted one and on appeal the Sixth

9  Circuit ruled that the appointment of an examiner was

10  mandatory, notwithstanding the creditors' wishes.  The

11  examiner cost the estate about $2 million.

12      Here the amount budgeted for the examiner

13  appointment is $350,000, an amount which, while stated as a

14  cap, is an amount that I fear plainly will be reached, if not

15  also sought to be exceeded.  That $350,000, even if not

16  enlarged further, may exceed by tens of thousands or hundreds

17  of thousands of dollars the incremental amount, if any, that

18  use of Amici and Echelon cost the debtors' estates.

19      BSF has a pending fee application that will be

20  opposed by a number of parties in this case who could conduct

21  the necessary discovery at least as well as an examiner.

22  They probably could do it better and cheaper, as they know

23  this case very well.  They have an economic interest in

24  spending their time wisely.  They have a head start on

25  knowing what BSF was asked to do and did and what disclosures

1   it made and didn't make and have an understanding from three-

2   and-a-half years of experience what the dynamics of this case

3   are.  And at least some have indicated that they will wish to

4   actively participate in the investigation, whether or not an

5   examiner is appointed and it is fair to assume that they will

6   feel the same when it comes to opposing the BSF fee

7   application.

8          Also, do not believe that any of the debtors, the

9   creditors' committee, or the fee committee are conflicted in

10  a way that would necessitate the appointment of an examiner

11  to get out all of the true facts.  They have all of the

12  incentive they need to litigate vigorously against BSF and

13  BSF has all the incentive it needs to litigate vigorously to

14  clear its name.  That is what the adversary process is all

15  about.

16         We do not have a situation here, as in _Leslie Fay_,

17  where a party would be investigating itself.  If the debtors,

18  creditors' committee, and fee committee don't do the

19  necessary inquiry, I feel comfortable that BSF will.

20         At least here we've already had a contested fee

21  application before the Court.  It is not clear to me what

22  purpose the appointment of an examiner would accomplish,

23  other than taking depositions that the parties in this case

24  could take themselves and will want to sit in on anyway.

25  Examiners' views are not infrequently welcomed by courts, but

1   they are not a substitute for the decisions of courts,

2   especially on matters of law or on matters where parties

3   might have different views that would be the grist for a

4   judicial decision.

5           Federal Rule of Bankruptcy Procedure 9031, captioned

6   "Masters not Authorized," expressly provides that FRCP 53

7   does not apply in cases under the code and, hence, prohibits

8   the appointment by bankruptcy judges of special masters.

9   Legal decisions and factual findings on any disputed facts

10  would be the province of the Court and not an examiner.

11          If, as I would examine -- if, as I would expect, one

12  or more of the creditors' committee, the fee committee, the

13  debtors, the U.S. Trustee's office, or BSF wish to weigh in

14  on the allowability of BSF's fees, after we know all of the

15  facts, it's hard for me to envision a scenario under which I

16  would deny any of them the opportunity to do so.  And such

17  efforts on their part to engage in the rights that they

18  blatantly have in that regard would overlap with the

19  examiner's inquiry if it were to have been authorized in

20  material respects.

21          Frankly, folks, the history of examiners in this

22  district and elsewhere has made me wary of appointing them

23  when other means could skin the cat.  This case already has

24  enough fiduciaries.  It does not need to spend another

25  $350,000 to accomplish ends that already can be easily

1  addressed in what I believe to be a much more efficient and

2  economical manner.

3        As I have said in other contexts, litigation needs

4  and concerns cannot be swept under the rug, but they need to

5  be addressed in the most efficient and thoughtful way

6  possible.  For the foregoing reasons, approval of the

7  stipulation is denied and dealing with stipulation to the

8  motion for the appointment of an examiner to investigate the

9  subject matter stated therein, the motion is denied.

10        In the alternative, the creditors' committee and the

11  debtors request authority to investigate by means of Rule

12  2004 or through the discovery that's granted in connection

13  with any contested manner as BSF's spending fee application

14  plainly is.  That authority is granted to the extent it is

15  necessary.  All interested parties already have the right to

16  engage in any needed deposition or document discovery under

17  Bankruptcy Rules 9014 at Paragraph 8 in Footnote 2 of my Case

18  Management Order No. 3, entered back on July 26th, 2004.

19        BSF cross-motion for appointment of a mediator is

20  denied without prejudice.  It is premature to talk about the

21  resolution of the fee issues, the disclosure issues, or any

22  related issues until the parties in this case know all of the

23  facts and I know all of the facts.

24        I'm so ordering the record.  Any party who wants a

25  written order from which it can take an appeal and move for

# EXHIBIT B

1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  --------------------------------x

4      In the Matter of:

5                              Case No.
                               05-60200

6   CALPINE CORPORATION, et al.,

7                      Debtors.

8  --------------------------------x

9                      October 24, 2007

                       United States Custom House

   (EXCERPT)

10                     One Bowling Green

                       New York, New York 10004

11

12

13

            Hearing Pursuant to Kirkland and Ellis LLP

14

   Notice of Agenda of Matters Scheduled for Hearing.

15

16

17

18

   B E F O R E:

19

20          HON. BURTON R. LIFLAND,

21                      U.S. Bankruptcy Judge

22

23

24

25

2

1    A P P E A R A N C E S:

2

3

          KIRKLAND & ELLIS LLP

4

      Attorneys for the Debtors,

5                Calpine Corporation, et al.
                 200 East Randolph Drive

6                Chicago, Illinois 60601

7        BY:    DAVID R. SELIGMAN, ESQ.,
                ANDREW R. McGAAN, ESQ.

8

                HELENA C. HUANG, ESQ.,

9                   153 East 53rd Street
                    New York, New York 10022

10

                MARC KIESELSTEIN, ESQ.,

11               JEFFREY S. POWELL, ESQ.,
                 JAMES W. DRAUGHN, ESQ.,

12                  655 Fifteenth Street N.W.
                    Washington, D.C. 20005

13

                MARK McKANE, ESQ.

14           555 California Street
                    San Francisco, California 94104

15

16

17       CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

18           Conflicts Counsel for the Debtors
                 101 Park Avenue

19               New York, New York 10178

20       BY:    STEVEN J. REISMAN, ESQ.

21

22

23

24

25

3

1    A P P E A R A N C E S (Continued):

2

3

    AKIN GUMP STRAUSS HAUER & FELD LLP

4

        Attorneys for the Official Committee

5        of Unsecured Creditors

        590 Madison Avenue

6        New York, New York 10022

7    BY:    MICHAEL S. STAMER, ESQ.,

        PHILIP DUBLIN, ESQ.,

8        ABID QURESHI, ESQ.

9

10

    MORGENSTERN JACOBS & BLUE, LLC

11

        Conflicts Counsel for the Official

12        Committee of Unsecured Creditors

        885 Third Avenue

13        New York, New York 10022

14    BY:    GREGORY A. BLUE, ESQ.

15

16

    PAUL WEISS RIFKIND WHARTON & GARRISON LLP

17

    Attorneys for the Unofficial Committee

18        of Second Lien Debt Holders

        1285 Avenue of the Americas

19        New York, New York 10019

20    BY:    ELIZABETH R. McCOLM, ESQ.

21

22

23

24

25

4

1   A P P E A R A N C E S (Continued):

2

3

        FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

4

    Attorneys for the Equity Committee

5                One New York Plaza
             New York, New York 10004

6

        BY:    GARY L. KAPLAN, ESQ.,

7              MICHAEL DE LEEUM, ESQ.,
               SUSANNA GRAY, ESQ.

8

9

10      NIXON PEABODY LLP

11    Attorneys for Wilmington Trust Co. and
                Wilmington Trust FSB as CalGen First Lien

12              Debt Holders
             100 Summer Street

13           Boston, Massachusetts 02110

14      BY:    RICHARD C. PEDONE, ESQ.

15

16

        ELROD, PLLC

17

        Attorneys for Gas Transmission Northwest

18          and Portland Natural Gas Transmission
            System

19          500 North Akard
            Dallas, Texas 75201

20

        BY:    DAVID W. ELROD, ESQ.,

21             CRAIG TADLOCK, ESQ.

22

23

24

25

5

1    A P P E A R A N C E S  (Continued):
2
3
            ROPES & GRAY LLP
4
        Attorneys for HSBC Bank USA, as Trustee
5                   and Bank of New York as Administrative
                    Agent
6                   45 Rockefeller Plaza
        New York, New York 10111
7
            BY:    MARK R. SOMERSTEIN, ESQ.
8
9
10          WEIL, GOTSHAL & MANGES LLP
11              Attorneys for Manufacturers and Traders
                    Trust as Indentured Trustee for Third
12                  Priority Indenture
                    767 Fifth Avenue
13                  New York, New York 10153
14          BY:    MARTIN J. BIENENSTOCK, ESQ.,
                    JUDY G.Z. LIU, ESQ.
15
16
17          CADWALADER, WICKERSHAM & TAFT LLP
18              Attorneys for Rosetta Resources Operating
                    One World Financial Center
19      New York, New York 10281
20          BY:    JOHN H. BAE, ESQ.
21
22
23
24
25

6

1   A P P E A R A N C E S  (Continued):

2

3

        MAYER BROWN LLP

4

            Attorneys for Rosetta Resources Operating, L.P.

5           700 Louisiana Street

            Houston, Texas 77002

6

        BY:   CHARLES S. KELLEY, ESQ.

7

8

9       DIANA G. ADAMS Acting United States Trustee

        Region 2

10

    UNITED STATES DEPARTMENT OF JUSTICE

11          OFFICE OF THE UNITED STATES TRUSTEE

            33 Whitehall Street

12          New York, New York 10004

13      BY:   PAUL SCHWARTZBERG,

                            of Counsel

14

15

16

17

18

19

20

21

22

23

24

25

1 and is already in the midst of.  At this stage of these

2 cases, that request is simply too late to be of any real

3 value to any party.  Moreover, the appointment of an

4 examiner and the attendant delay and expense could

5 jeopardize all the Debtors' cases.  See In re Schepps Food

6 Stores, Inc., 148 B.R. 27, and 30 (relying on laches); in

7 re Bradlee Stores, Inc. 209 B.R. 36, 38 (Bankr. S.D.N.Y.

8 1997) (also relying on laches).  As noted by one

9 commentator, "the mandatory nature of [Section 1104(c)] was

10 not intended and should not be relied upon to permit

11 blatant interference with the Chapter 11 case or the plan

12 confirmation process...  Nor should the mandatory nature of

13 the provision be used to allow one group of creditors or

14 interest holders to obtain a protagonist supporting its

15 litigation position under the guise of investigation."

16 Colliers on Bankruptcy 1104.03[2][b]

17             M&T's ill-timed motion smacks more of

18 litigation leverage than the protection of the

19 unrepresented public as the statute intended.

20             Accordingly for all the reasons I just set

21 forth herein and in conjunction with the Committee Motion,

22 the Motion for an Examiner is denied.

23             It is so ordered.

24             MR. SELIGMAN:  Your Honor, the next matters

25 on the agenda, which I'll take collectively, matters

# **EXHIBIT C**

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


In the matter of              )
                              )
SA TELECOMMUNICATIONS, INC.,  )
et al.,                       ) Case Nos. 97-2395
                              ) through 97-2401(PJW)
              Debtors.        )


                         U.S. Bankruptcy Court
                         Sixth Floor
                         824 Market Street
                         Wilmington, Delaware


              EXCERPT OF TRANSCRIPT FROM

                    Friday, March 27, 1998
                    1:00 p.m.


BEFORE: HONORABLE PETER J. WALSH
        United States Bankruptcy Judge


                   WILCOX & FETZER
     1330 King Street - Wilmington Delaware  19801
                   (302) 655-0477



**W&F**
**WILCOX & FETZER LTD.**
Registered Professional Reporters

ORIGINAL          267

1    and time frame I just think would be a waste.

2              Finally, this is not the beginning of

3    this case, it's the end of the case.  And we're

4    looking at $44 million chasing a million and a half.

5    And I think it's time the parties realistically looked

6    at this nominal dividend that they are going to get

7    and reach an agreement that is going to settle it

8    without further debate about consolidation or

9    intercompany claims, because if we get to those issues

10   and we have hearings on the merits, the million and a

11   half is going to be spent in a matter of weeks.

12             In addition to the reasons I've already

13   given, in my view this is the wrong time and the wrong

14   case for the appointment of an examiner.  So I'll deny

15   that motion.

16             MR. ASTIN:  Your Honor, to clarify Your

17   Honor's ruling, is Your Honor ruling as to

18   1104(c)(2)?  You mentioned best interests of the

19   creditors under (c)(1).  Our request for relief was

20   pursuant to (c)(2), (c)(1) in the alternative.

21             THE COURT:  My view is that (c)(2) is

22   not mandatory and for the same reasons I've already

23   given I'll deny the relief to the extent it is

24   premised on (c)(2).

# **EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


| | | |
|---|---|---|
| IN RE: | . | Chapter 11 |
| | . | |
| AMERICAN HOME MORTGAGE | . | Case No. 07-11047(CSS) |
| HOLDINGS, INC., a Delaware | . | (Jointly Administered) |
| corporation, *et al.,* | . | |
| | . | Oct. 31, 2007 (10:09 a.m.) |
| Debtors. | . | (Wilmington) |

EXCERPT OF
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    doesn't take a ton of time.  So - and I'm sensitive to this

2    issue and I know the Office of the United States Trustee is

3    sensitive, and I understand their position in connection with

4    shall meaning shall, and I think that's true, but I think in

5    order for - I would draw a bit of a distinction between what

6    Judge Walsh and Judge Balick have appeared to rule which is

7    simply that it's a best interest test.  I don't think that's

8    correct.  The best interest is in ©)(1).  It's not in ©)(2).

9    I think the financial criteria are important, and obviously,

10   they're met in this case, but that's only one piece of the

11   puzzle, and the other piece of the puzzle is that there has

12   to be an investigation to perform that's appropriate.  I

13   think the cases cited in the Colliers treatise discuss that.

14   I think that's a more nuance approach than sort of saying it

15   is what it is, and if you cry "examiner" in a crowded case,

16   you get one.  In this case, reading the motion carefully, I

17   really didn't see a request for any investigation.  There was

18   a complaint about practices.  A 2004 request for information

19   about individual loan files that we've already discussed, but

20   no real articulation of what it was that the movants wanted

21   to be investigated by an examiner, and even if one were to

22   sort of assume, okay, they want someone to examine the

23   debtors' practices in connection with loan origination and

24   servicing that may be violations of state or federal law, I

25   don't think that at this time giving someone sort of carte

1    blanche to look into that issue will be appropriate.  Again,

2    the Committee is extremely involved in this case.  There are

3    ongoing investigations, possibly by other governmental

4    entities.  There's obviously a lot of issues going on in

5    Congress right now in connection with these types of

6    practices that allegedly the debtor participated in, so I'm

7    not - I don't think in this case there would be anything to

8    be gained by appointing an examiner and giving that examiner

9    a budget and saying, I'd like you to investigate the debtors'

10   loan origination and servicing policies in connection with

11   whether it may have violated state or federal law.  I think

12   that's asking for a $20 million report, and I'm not sure what

13   it would accomplish.  So, with regard to the temporal

14   requirement, again, I'm not - I understand there are those

15   cases.  I think it would be more appropriate to deny the

16   motion without prejudice than to sort of say, Okay, I'm

17   granting the motion, but I'm not at this point going to

18   appoint an examiner.  Again, I think that's just tantamount

19   to denying the motion.  So, I'm going to do that.  I'm going

20   to deny the motion without prejudice to be brought again if

21   new facts arise or if the status of the case changes.  And

22   just an aside, I mean, I don't know what this case ultimately

23   ends up with, whether we end up in with a liquidating plan,

24   whether we convert to 7.  I mean, I know - I'm sure there are

25   discussions that I'm very happy to not be participating in

**EXHIBIT E**

IN THE UNITED STATES BANKRUPTCY COURT
OF THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
03/04/2008

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| ASARCO  LLC, et al., | § | Chapter 11 |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## ORDER DIRECTING APPOINTMENT OF EXAMINER
## UNDER 11 U.S.C. §§ 1104(c) AND 1106

The Court has considered the Motion of ASARCO

Incorporated for an Order Appointing An Examiner and Granting

Certain Related Relief (the "Examiner Motion") (Docket No. 6681)

pursuant to 11 U.S.C. §§ 1104(c) and 1106, and it appearing to the

Court that adequate notice has been given; and the Court having

held a hearing on the Examiner Motion on February 8, 2008; and the

Court, for reasons stated on the record at the hearing held on

February 28, 2008, having determined that the legal and factual

bases set forth in the Examiner Motion establish that the

appointment of an examiner is mandatory; and the Court having

further determined that the Court has discretion as to the scope

of the duties of the examiner; and the Court having concluded that

no current matter in the case warrants the attention of an

examiner; it is hereby

ORDERED that the Examiner Motion is hereby granted; to

the extent set forth herein; and it is further

        **ORDERED** that an examiner (the "Examiner") shall be
appointed in accordance with 11 U.S.C. § 1104(c)(2); and it is
further

        **ORDERED** that the scope of investigation proposed in
the Examiner Motion is denied; and it is further

        **ORDERED** that the Examiner shall not have any current
duties; and it is further

        **ORDERED** that any party has the right to ask the Court
to assign specific duties to the Examiner at any time; and it is
further

        **ORDERED** that the Court shall retain jurisdiction over
any matters arising from or relating to the implementation or
interpretation of this Order.

        SO ORDERED this ____ day of _____, 2008.
                        4th              March

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

                                    2
                                   /\

March 4, 2008

**<u>EXHIBIT F</u>**



FILED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              :        Chapter 11
                                    :
ACandS, Inc,                        :
                                    :
        Debtor.                     :        Bankruptcy #02-12687 (RJN)

Wilmington, DE
November 18, 2002
10:05 a.m.
EXCERPT OF
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE RANDALL J. NEWSOME
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:                    Laura Davis Jones, Esq.
                               Pachulski, Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801

                               Alan J. Kornfeld, Esq.
                               Pachulski, Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801

                               Beth Levine, Esq.
                               Pachulski, Stang, Ziehl,
                               Young & Jones
                               919 North Market Street
                               Wilmington, DE 19801

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1   Indeed, the Committee represents all Unsecured Creditors in

2   this case.  The unsecured general trade debt is nominal, and

3   as the Court has noted no separate Committee has been

4   appointed.  To appoint an Examiner with the broad powers that

5   Traveler's seeks would be to reward Traveler's in a way that

6   neither the plain language of the Code or its intent require,

7   and allow Traveler's to use this statute to manipulate the

8   process to further its goal to delay if not defeat its own day

9   of reckoning.  Thank you.

10          MR. OSTRAGER:  Sixty seconds, Your Honor?

11          THE COURT:  No.  We'll stand in recess for a few

12   minutes.

13      (Recess)

14          THE CLERK:  All rise.

15          THE COURT:  All right.  I'm prepared to rule on the

16   matter before me.  This Chapter 11 case is before the Court

17   pursuant to a Motion to Appoint an Examiner filed by

18   Traveler's Casualty & Insurance Company pursuant to Section

19   1104(C) of the Bankruptcy Code.  That statute states in

20   pertinent part as follows.  "If the Court does not order the

21   appointment of a Trustee under this Section, then at any time

22   before the confirmation of a plan, and on request of a Party-

23   In-Interest or the United States Trustee, and after notice and

24   a hearing, the Court shall order the appointment of an

25   Examiner to conduct such an investigation of the Debtor as is

130

1   appropriate, including an investigation of any allegations of
2   fraud, dishonesty, et cetera and so forth."
3       The facts before the Court are as follows.  A number of
4   transactions have been discussed by way of testimony here
5   today that raise red flags under the avoiding powers of the
6   Trustee, Sections 544 through 550.  Those transactions,
7   however, have been investigated first by forensic accountant
8   hired by the pre-petition Committee in this case to
9   investigate IREX and presumably the SPI spin, as well as the
10  2001 sale to Lancaster Acquisition of ACandS, or the ACandS
11  assets.  The transactions have been investigated quite
12  obviously by Traveler's in quite extensive detail.  They've
13  taken depositions.  They've taken depositions in the course of
14  this proceeding as well.  The Traveler's now asks that another
15  investigation take place, even though they have said that the
16  evidence is irrefutable that certain transactions that
17  occurred were either fraudulent transfers and/or preferences.
18  An Examiner investigating these transactions would almost
19  certainly need the assistance of an attorney, and probably the
20  assistance of an accountant if not a financial advisor and an
21  accountant.  In the meantime, the Creditors' Committee in this
22  case has taken the quite clear position that they intend to
23  investigate these transactions as well, thus making
24  potentially four different investigations on the very same
25  sets of transactions.  This would appear to the Court to be

131

1  utter and complete waste of money as well as time, and

2  completely contrary to the best interest, as far as I can

3  tell, of the Creditor community as a whole who do not, other

4  than Traveler's, support this motion, as well as a waste of

5  the Debtor's meager assets.

6       The statute, as the In Re: Revco DSN case at 898 F. 2nd.

7  498, 6th Circuit (1990) does require where there is more than

8  $5,000,000 of debt the appointment of an Examiner.  To that

9  extent the motion is granted.  However, it is further ordered

10 that the Examiner appointed by the U.S. Trustee is not to

11 perform any task or take up any duty or in any way perform any

12 work without further order of the Court.  That order is to

13 ensure that the Committee is allowed to proceed with its

14 investigation; that the coverage action where the real stakes

15 in this case lie is permitted to proceed, and that those

16 matters be completed before putting yet another cop on the

17 beat in this case.  So if the U.S. Trustee can find someone to

18 accept the appointment under those circumstances, I will sign

19 an Order.  But only under those circumstances.  That does in

20 fact appoint an Examiner.  That's my disposition of this.

21 Anybody have any questions?

22      MR. PERCH:  Yes, Your Honor.

23      THE COURT:  Okay, Mr. Perch.

24      MR. PERCH:  Good afternoon, Your Honor.  Frank Perch

25 for the United States Trustee.  Your Honor, the U.S. Trustee

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

132

1  is required in the statute to appoint an Examiner if the Court

2  directs one to be appointed.  And we will, of course, consult

3  with all of the interested parties who wish to provide input

4  regarding the appointment of the Examiner, as the statute

5  requires.  I would like to inquire of the Court, because it

6  may be of assistance to the U.S. Trustee in this process,

7  whether with respect to the Court's ruling that the Examiner

8  is not permitted to perform any further duties until further

9  order of the Court, would the Court entertain a petition from

10  the Examiner who is appointed seeking leave to be authorized

11  to perform such tasks?  Or would the Court only hear from

12  other parties with respect to authorizing the Examiner to do

13  something?

14       THE COURT:  I would be most -- especially now, at

15  this point, I -- when I say they're not authorized to do

16  anything, I mean anything other than get appointed.  That's

17  all that this person is going to do.  It is as though they

18  were just like the old days of having a stand-by Chapter 11

19  Trustee under old XI.  This will be a stand-by Examiner who

20  will not begin to function until the Court orders him to.

21  There is not going to be one penny of fees that is spent by

22  this Examiner of any kind.  So does that answer your question?

23       MR. PERCH:  I understand the Court's position, Your

24  Honor.  Yes, thank you.

25       THE COURT:  And I don't anticipate that the Examiner

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

133

1   take an active role in this until such time as the passage of
2   time has occurred to allow an investigation by the Committee
3   to go forward, as well as Traveler's who frankly is
4   represented by this Creditors' Committee is free to pursue its
5   own investigation, as I think it's entitled to do under
6   applicable rules, and to cooperate with the Committee in their
7   investigation.  Until that has occurred, the Examiner may make
8   a motion to proceed, but it's not likely to be granted.
9         MR. PERCH:  Thank you, Your Honor.
10        THE COURT:  Now, is there anything further to come
11  before the Court today?
12        MS. JONES:  No, Sir, there is not.
13        THE COURT:  All right.  Let's see if I've forgotten
14  any housekeeping items of my own.  I probably have but they're
15  probably not very important either way.  We'll stand adjourned
16  today.
17     (Court adjourned)
18
19                 CERTIFICATION
    I certify that the foregoing is a correct transcript from the
20  electronic sound recording of the proceedings in the above-
    entitled matter.
21
22  _____      _11-26-02_
    Signature of Transcriber         Date
23
24
25

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------x
In re:                                    :   Chapter 11
                                          :
ACANDS, INC.,                             :   Case No. 02-12687 (RJN)
                                          :
              Debtor.                     :   Re: D. I. Nos. 73, 213 and 214
                                          :
-----------------------------------------x
```

## ORDER

Upon consideration of Travelers Casualty and Surety Company's motion for the appointment of an examiner, pursuant to 11 U.S.C. §§ 1104(c) and 105(a) (the "Motion), appropriate notice having been provided to parties in interest, and good cause appearing therefore, it is hereby

ORDERED that the Motion is granted in part only, for the reasons set forth on the record at the hearing on November 18, 2002; it is further

ORDERED that the United States Trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person to serve as examiner in this case; it is further

ORDERED that the examiner is not to perform any task or take up any duty or in any way perform any work or incur cost to the estate without further order of the Court.

SO ORDERED.

Dated: 12/19, 2002

Hon. Randall J. Newsome
United States Bankruptcy Judge

324639