IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, et al.,<br><br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 08 – 13141 (KJC)<br>Jointly Administered<br><br>Hearing Date:  September 24, 2009 at 10:00 a.m. (ET)<br>Objection Deadline:  September 17, 2009 at 4:00 p.m. (ET) |

**JOINDER OF CENTERBRIDGE CREDIT ADVISORS LLC  TO THE RELIEF
REQUESTED IN MOTION OF LAW DEBENTURE TRUST COMPANY OF
NEW YORK FOR LEAVE TO CONDUCT DISCOVERY PURSUANT
TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
OF TRIBUNE COMPANY, ITS AFFILIATES, AND CERTAIN THIRD
PARTIES, OR ALTERNATIVELY, FOR THE APPOINTMENT OF AN EXAMINER**

　　　　Centerbridge Credit Advisors LLC, on behalf of funds advised by itself and its affiliates (collectively, "CCA"), by and through its undersigned counsel, hereby joins (the "Joinder") in requesting the relief sought in the Motion of Law Debenture Trust Company of New York ("Law Debenture") for Leave To Conduct Discovery Pursuant To Rule 2004 of The Federal Rules of Bankruptcy Procedure of Tribune Company ("Tribune"), Its Affiliates, and Certain Third Parties, or Alternatively, For The Appointment of an Examiner (the "Motion").[1]  In support of this Joinder, CCA respectfully submits as follows:

　　　　1.　　By the Motion, Law Debenture seeks information from the Debtors, Merrill, JPMC and their respective advisors that is necessary for a comprehensive analysis and investigation to determine whether the 2007 leveraged buyout transaction (the "LBO") that saddled the Debtors with over $11 billion in new debt constituted a fraudulent transfer under applicable bankruptcy and nonbankrupty law –an analysis that remarkably has yet to be

completed by the Debtors or the Committee during the 9 months since the Petition Date. CCA, a holder of approximately 37% of Tribune's $1.26 billion in pre-LBO unsecured notes that became structurally subordinated to $11 billion debt as a result of the LBO, joins in the requested relief and seeks (i) copies of all information to be provided to Law Debenture under Bankruptcy Rule 2004 and (ii) the right to participate in all examinations to be undertaken in connection therewith.

2.  The LBO, which undoubtedly precipitated Tribune's financial demise, should be a (if not the) primary focus of these chapter 11 cases and investigating the LBO should have been one of the Committee's primary mandates since its formation. Indeed, official committees in other recently filed chapter 11 cases quickly comprehended the fact that the analysis of potential fraudulent conveyances (and the prosecution thereof) was paramount to the interests of *all* unsecured creditors and undertook such analysis in due haste. For example, when confronted with similar but more complicated circumstances, the unsecured creditors committee in the Lyondell Chemical Company ("Lyondell") chapter 11 cases reacted swiftly to investigate and obtain standing to pursue potential fraudulent conveyance claims arising from Lyondell's 2007 leverage buyout by Basell AF S.C.A. In Lyondell, the entire process from initial investigation to filing a lawsuit against numerous parties to avoid billions of dollars in obligations took less than seven months. *Official Committee of Unsecured Creditors, on behalf of [Lyondell Chemical Company, et al.] v. Citibank, N.A. London Brach, et al.*, Adv. Proc. No. 09-01375 (REG) (Bankr.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

S.D.N.Y.).[2]  However, for reasons set forth in greater detail in the Motion and below, it is simply unreasonable to assume/expect that the Committee is able to unilaterally and aggressively investigate the LBO in a fashion that is protective to *all* unsecured creditors.[3]

3.    For example, two of the primary lenders that funded the LBO are members of the Committee[4] (and one is a Committee co-chair).  Moreover, Committee's lead counsel has disabling conflicts that CCA believes makes it difficult at best for such counsel to be objective in its analysis of the LBO.  Additionally, one of the two of the Committee's financial advisors has acknowledged business conflicts which make their participation in the LBO investigation problematic.  Indeed, it took months of active lobbying by CCA and Law Debenture for the Committee to even retain unconflicted special counsel that will be devoted to investigating whether the LBO (and the underlying debt obligations) should be avoided.  While supportive of the retention of special counsel, CCA remains concerned about the Committee's ability to function effectively with respect to matters pertinent to the LBO based on the continued involvement of conflicted Committee professionals and members.

4.    CCA's concerns have been heightened by recent reports that the Debtors and the same lenders that are the subject of the LBO investigation (and potential fraudulent conveyance

---

[2] *See also ASARCO LLC v. Americas Mining Corp.*, 404 B.R. 150, 181-2 (S.D. Tex. 2009) (in April, 2009, court ruled in favor of ASARCO's bankruptcy estate in a multi-billion fraudulent conveyance lawsuit against Grupo Mexico); *In re Idearc Inc., et al.*, Adv. Pro. No. 09-03248 (BJH) (Bankr. N.D. Tex. Aug 5, 2009 (official creditors committee, in conjunction with indenture trustee, challenging the security interest of the banks vigorously pursuing all claims related to a spin off transaction); *In re Motors Liquidation Co., et al.*, Adv. Pro No. 09-00504 (REG) (Bankr. S.D.N.Y. July 31, 2009) (the official creditors committee filed a complaint to avoid, among other things, payment of $1.4 billion in term loans on the basis that the liens securing such loans had been released prior to the bankruptcy filing); *In re TOUSA Inc., et al.*, Adv. Pro. No. 08-1435 (Bankr. S.D. Fla July 14, 2008) (official creditors committee sued bank to avoid claims and liens as fraudulent conveyances). While there are numerous others cases where estate fiduciaries are actively pursuing claims, we are not aware of any case where claims anywhere near the magnitude of Tribune's LBO claims have not been actively and vigorously pursued.

[3] CCA has renewed its request to the Committee for its support to be added as an official member of the Committee.

[4] Merrill Lynch Capital Corporation, one of these two lenders, has apparently just resigned from the Committee.

litigation) have been engaged in negotiations over the terms of a plan of reorganization that would unimpair the subsidiary Debtors' creditors while providing Tribune's creditors (including its noteholders) with a nominal recovery that fails to realize on potential claims related to the LBO. Indeed, the Debtors have publicly stated a preference to emerge from chapter 11 by year-end, which can only be achieved if the Debtors propose a plan of reorganization in the very near term that is (i) premised on a settlement with the LBO lenders and (ii) structured in a manner to neuter the Committee (*i.e.*, provide full recovery to operating entity creditors that, together with LBO lenders, dominate the Committee). To highlight this point, one need look no further than paragraph 2 of the Debtors' Response to Motion of Law Debenture Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, Its Affiliates and Certain Third Parties, or Alternatively, for the Appointment of an Examiner dated September 17, 2009. Here the Debtors' state that they

> ". . . will use their best efforts to ensure that sufficient material pertinent information is provided by October. The Debtors anticipate a plan of reorganization will soon follow."

If the Debtors don't intend to give the Committee and Law Debenture the discovery requested until October to be immediately followed by a plan of reorganization, is it any wonder why CCA is anxious about the LBO investigation being swept under the rug?

5. Rule 2004 discovery by Law Debenture and CCA is necessary to ensure that those with economic interests related to the LBO investigation (Tribune creditors) are informed and, if appropriate, armed with the knowledge necessary to prosecute a fraudulent transfer action, on behalf of the Debtors' estates, or defeat an ill-devised chapter 11 plan premised on shielding the Debtors' prepetition lenders from liability. CCA is prepared to work constructively with Law Debenture and the Committee's conflicts counsel to streamline Rule 2004 discovery and examinations to limit disruption to the Debtors' operations and unnecessary costs to the estates.

The limited disruption and additional cost that may be incurred, however, will pale in comparison to (i) the injustice that may ensue if those with economic interests in the outcome of the LBO investigation do not have timely access to information and (ii) costs that may be incurred in connection with challenges to a plan of reorganization premised on a settlement with the LBO lenders that does not provide material recoveries to Tribune's creditors.

## CONCLUSION

For all of the foregoing reasons, CCA respectfully requests that the Court (a) grant the relief requested herein and in the Motion, and (b) grant CCA such other and further relief as the Court deems just, proper and equitable.

Dated:    New York, New York
          September 21, 2009

/s/ Daniel H. Golden
_____
Daniel H. Golden
Philip C. Dublin
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com
pdublin@akingump.com

*Counsel for Centerbridge Credit Advisors LLC*