**EXHIBIT B**

**BLACK LINED REVISED PROPOSED ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 365 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO (A) ENTER INTO AND PERFORM OBLIGATIONS UNDER FORMATION AGREEMENT AND ANCILLARY AGREEMENTS, (B) EFFECT PROPOSED BUSINESS COMBINATION RESPECTING CUBS-RELATED ASSETS, INTERESTS IN WRIGLEY FIELD, COMCAST SPORTS NET AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, INTERESTS AND ENCUMBRANCES, AND (C) ASSUME AND ASSIGN EXECUTORY CONTRACTS; (II) AUTHORIZING DEBTOR TRIBUNE COMPANY TO ENTER INTO GUARANTEES OF DEBT FINANCING, (III) AUTHORIZING DEBTORS WGN CONTINENTAL BROADCASTING COMPANY AND TRIBUNE COMPANY TO ENTER INTO AND PERFORM OBLIGATIONS UNDER RADIO AND TELEVISION BROADCAST AGREEMENTS, AND (IV) GRANTING RELATED RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

This matter coming before the Court on the motion (the "Tribune Transaction Approval Motion")[2] filed by the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Tribune Debtors") for an order pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (i) authorizing (a) Debtor Tribune Company ("Tribune"), one of the Tribune Debtors, to enter into and perform its obligations under that certain Formation Agreement dated as of August 21, 2009 (the "Formation Agreement") and authorizing each of the Tribune Debtors, where applicable, to enter into and perform its obligations under those agreements ancillary to the Formation Agreement that collectively effect the transactions described in the Tribune Transaction Approval Motion (as described in more detail in the Tribune Transaction Approval Motion, the "Ancillary Agreements"),[3] (b) each of the Tribune Debtors to effect the Proposed Business Combination (as defined in the Tribune Transaction Approval Motion), and (c) each of the Tribune Debtors to assume all Cubs Executory Contracts to which it is a party and assign those Cubs Executory Contracts to Chicago Baseball Holdings, LLC, a Delaware limited liability company ("Newco") or one of its subsidiaries as an element of the Proposed Business Combination; (ii) authorizing Tribune to enter into certain guarantees of specific debt financing facilities (the "Tribune Guarantees") to be entered into by Newco in connection with the transfer of the Cubs Business; (iii) authorizing Debtor WGN Continental Broadcasting Company ("WGN") to enter into and perform its obligations under certain restated broadcast rights agreements concerning radio and television broadcasts of Chicago Cubs baseball games, and Tribune to enter into and perform its obligations under the Superstation Extension; and (iv)

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Tribune Transaction Approval Motion or the Formation Agreement, as applicable.

[3] For the avoidance of doubt, the term Ancillary Agreements, as used in this Order, includes, without limitation, (i) the Tribune Debt Guarantees, (ii) the WGN Agreements, (iii) the Superstation Extension, (iv) the Newco LLC Agreement, (v) the Tax Matters Agreement, (vi) the Transition Services Agreement, (vii) the Closing Escrow Agreement, and (viii) the Indemnity Escrow Agreement.

granting related relief; and the Court having reviewed the Tribune Transaction Approval Motion

and this form of order, having entered into evidence and considered the exhibits, declarations and

testimony provided in connection with the Motion, and having heard and considered the

statements of counsel regarding the relief requested in the Tribune Transaction Approval Motion

at a hearing before the Court, which hearing was held on September 24, 2009 (the "Tribune

Transaction Approval Hearing"); and the Court having determined that (a) subject to the Cubs

Entities Reservation (as defined in paragraph 35, below), the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), (c) venue of this matter in this district is proper pursuant to 28 U.S.C. §§1408 and

1409, and (d) notice of the Tribune Transaction Approval Motion, the Tribune Transaction

Approval Hearing, and the Proposed Business Combination has been provided on the terms set

forth in that certain Order (I) Approving Form and Scope of Notice of Proposed Business

Combination Involving Cubs Business to Creditors and Parties-in-Interest of Tribune Debtors

and Cubs Entities, (II) Approving Process for Effecting Proposed Business Combination and

Setting Transaction Hearing and Related Deadlines, and (III) Approving Certain Investor

Protections dated ————,August 31, 2009 [D.I. ——2053] (the "Notice and Procedures

Approval Order") and in accordance with sections 102(1) and 363 of the Bankruptcy Code and

Bankruptcy Rules 2002, 6004 and 6006 and the Local Rules of the Court, and no other or further

notice of the Tribune Transaction Approval Motion or the relief sought thereby is required, and

the notice provided was in all ways good, proper, reasonable, timely, adequate and sufficient

notice under the circumstances with respect to all creditors and parties-in-interest in the Tribune

Debtors' chapter 11 cases; and any objections to the relief sought in the Tribune Transaction

Approval Motion having been withdrawn or heard and overruled;

3

NOW, THEREFORE, THE COURT FINDS AND DETERMINES AS FOLLOWS:

1.        A proper, reasonable, and sufficient opportunity to object or to be heard regarding the relief requested in the Tribune Transaction Approval Motion has been afforded to all interested persons and entities in the Tribune Debtors' chapter 11 cases, including, without limitation, (i) holders of any interests in any assets of the Cubs Business that are sought to be transferred by any of the Tribune Debtors by operation of the Formation Agreement and/or the Ancillary Agreements to Newco, and (ii) counterparties to any Cubs Executory Contracts sought to be assumed by any of the Tribune Debtors and assigned to Newco or any of the Newco Subs.

2.        The entry into the Proposed Business Combination and Formation Agreement and the Tribune Debt Guarantees by Tribune and performance of its obligations thereunder, the entry into any of the Ancillary Agreements by any of the Tribune Debtors and the performance of their obligations thereunder, and the entry into the WGN Agreements by WGN and the Superstation Extension by Tribune are reasonable and proper exercises of each of the applicable Tribune Debtor's respective business judgment.  Negotiation and preparation of the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, and the Superstation Extension were conducted and concluded at arm's-length and in good faith by all parties.

3.        The Tribune Debtors (i) had and have full corporate power and authority to execute the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension and all other documents contemplated thereby and the Proposed Business Combination has been duly and validly authorized by all necessary corporate action; (ii) have all of the corporate power and authority necessary to consummate the

Proposed Business Combination; (iii) have taken all corporate action necessary to authorize and approve the Proposed Business Combination and the consummation of the transactions contemplated thereby; and (iv) no consents or approvals, other than those expressly provided for in the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, and the Superstation Extension are required for the Tribune Debtors to consummate such transactions.

4.      The Bidder, Newco and the Newco Subs have at all times acted reasonably, properly and in good faith in connection with the process leading to and including the transactions contemplated by the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension, and under the Tribune Transaction Approval Motion and this Order.

5.      The marketing of the Cubs Business as described in the Notice and Procedures Approval Motion and the Tribune Transaction Approval Motion and in the exhibits, declarations and testimony submitted to the Court in connection therewith and in support thereof was reasonable and appropriate and the notice and publicity of the Proposed Business Combination given in connection with or existing prior to the filing of the Tribune Transaction Approval Motion was good and appropriate and accordingly provided sufficient notice to creditors and other interested parties in the Tribune Debtors' chapter 11 cases of the Proposed Business Combination in these particular circumstances.

6.      Based on the record established at the Tribune Transaction Approval Hearing, and taking into account all relevant factors, the Proposed Business Combination represents the best proposed transaction for the Cubs Business, and it is within the exercise of the Tribune Debtors' reasonable business judgment to enter into and perform their obligations under

the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN

Agreements, the Superstation Extension, and all related transactions.

    7.  Based on the record established at the Tribune Transaction Approval

Hearing, it is within the exercise of the Tribune Debtors' reasonable business judgment to cause

its subsidiary, Chicago National League Ball Club, LLC ("CNLBC") to commence a chapter 11

case ~~because, among other things, there is a reasonable likelihood that the Proposed Business~~

~~Combination, on the terms and the timing described in the Tribune Transaction Approval Motion~~

~~and related materials, will be approved by the Court~~.

    8.  ~~All necessary approvals for the~~The Proposed Business Combination ~~have~~

~~been provided by~~remains subject to Major League Baseball approvals.  The Official Committee

of Unsecured Creditors and the Steering Committee of Tribune's prepetition lenders have stated

their support for the Proposed Business Communication.

    9.  The Tribune Debtors have demonstrated that the relief requested in the

Tribune Transaction Approval Motion is in the best interests of the Tribune Debtors and their

respective estates, their Affiliates, and their creditors as a whole.

    THEREFORE, IT IS HEREBY ORDERED THAT:

    1.  The Tribune Transaction Approval Motion is granted ~~in all respects~~as

provided herein.

    2.  All objections to the Tribune Transaction Approval Motion not otherwise

withdrawn prior to entry of this Order are overruled and denied.  Any parties in the Tribune

Debtors' chapter 11 cases whose objections to the Tribune Transaction Approval Motion were

withdrawn prior to entry of this Order, or whose objections were filed prior to or heard at the

Tribune Transaction Approval Hearing and denied, are precluded by this Order from relitigating

such objections at any proceedings in CNLBC's chapter 11 case to the fullest extent permitted by applicable law.

3.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

4.    This Order shall be binding on the Tribune Debtors, their estates and Affiliates, and the Tribune Debtors' respective successors and assigns, including, but not limited to, any chapter 7 or chapter 11 trustee appointed in the Tribune Debtors' chapter 11 cases, and the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, and the Superstation Extension and the transactions and instruments and obligations of the Tribune Debtors contemplated thereby shall not be subject to rejection or avoidance by the Tribune Debtors and their estates and their respective successors and assigns, including, but not limited to, any chapter 7 or chapter 11 trustee appointed in the Tribune Debtors' chapter 11 cases, or any other person or entity and shall not be subject to subordination, estimation or disallowance (including under Section 502(e)(1)(B) of the Bankruptcy Code) and shall not be discharged or affected by any plan of reorganization confirmed in these proceedings.

5.    Tribune is authorized to enter into and perform any and all obligations under the Formation Agreement and, to the extent Tribune is a party thereto, each of the Ancillary Agreements (including, without limitation, the Newco LLC Agreement, Tax Matters Agreement, the Transition Services Agreement, the Closing Escrow Agreement, and the Indemnity Escrow Agreement).

6.    Tribune is authorized to execute, deliver and perform all of its obligations under the Tribune Debt Guarantees.  Upon execution and delivery of the Tribune Debt

Guarantees, the Tribune Debt Guarantees shall constitute valid and binding obligations of Tribune enforceable against Tribune in accordance with their terms.

7.       WGN and Tribune are authorized to enter into and perform all of their obligations under the WGN Agreements and the Superstation Extension, respectively.  The terms and conditions of the WGN Agreements and the Superstation Extension shall be, and are, enforceable and binding in all respects upon WGN and Tribune, respectively.

8.       Each of the Tribune Debtors is authorized to pledge any membership interest to be received by it in Newco as part of the Proposed Business Combination to the lenders providing the Senior Debt Financing to Newco as part of the security for the Senior Debt Financing and the Private Placement Notes, and each of the Tribune Debtors is further authorized to enter into and perform its obligations under any agreements or other documents reasonably necessary to give effect to that pledge.

9.       The Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension, and assumption by the Tribune Debtors and assignment to Newco (or, in the case of the Direct Cubs Contributed Assets, to Chicago Cubs National League Ball Club, LLC, a subsidiary of Newco (the "Cubs Newco Sub")) of those Cubs Executory Contracts to which any of the Tribune Debtors is a party and all other agreements entered into by the Tribune Debtors and Newco and the Newco Subs in connection with the Proposed Business Combination are valid and enforceable pursuant to their terms and applicable law.

10.      The Tribune Debtors are hereby authorized to effect the Proposed Business Combination and to contribute and transfer, and where applicable to cause any Affiliate to contribute and transfer, to Newco (or, in the case of the Direct Cubs Contributed Assets, to

Cubs Newco Sub) any and all assets owned or held by any of the Tribune Debtors constituting part of the Cubs Business, and such contributions and transfers shall be, and are, binding upon all parties in the Tribune Debtors' chapter 11 cases and enforceable in accordance with the terms of the Formation Agreement, the Ancillary Agreements, and this Order.  Each of the Tribune Debtors and each other person having duties or responsibilities under the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension, or this Order, and their respective directors, officers, agents, representatives, and attorneys, is authorized and empowered to (a) carry out all of the provisions of such agreements and this Order, (b) issue, execute, deliver, file and record, as appropriate, any of such agreements and any additional agreements relating thereto, (c) take any and all actions contemplated by such agreements or this Order, and (d) issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension and this Order, all without further application to, or order of, the Court or further action by their respective directors or stockholders, and with like effect as if such actions had been taken by unanimous action of the respective directors and stockholders of such entities.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Proposed Business Combination, the Formation Agreement, the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension and this Order.

11.     Following the completion of the transactions contemplated in the

Formation Agreement and the Ancillary Agreements (other than the Newco Sale), all right, title

and interest in and to the assets of the Cubs Business transferred by any of the Tribune Debtors

shall be immediately vested in Newco (or, in the case of the Direct Cubs Contributed Assets, to

Cubs Newco Sub) pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of

any and all liens (including, but not limited to, any and all "liens" as defined in section 101(37)

of the Bankruptcy Code, claims (including, without limitation, any and all "claims" as defined in

section 101(5) of the Bankruptcy Code), mortgages, deeds of trust, guarantees, security

agreements, security interests, pledges, options, easements, servitudes, rights-of-way,

encroachments, hypothecations, charges, obligations, rights, restrictions, interests (as such term

is used in section 363(f) of the Bankruptcy Code) and encumbrances in or with respect to any of

the assets of the Cubs Business transferred by any of the Tribune Debtors, whenever arising,

whether imposed by agreement, understanding, law, equity or otherwise; provided, however, that

Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in

the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub) pursuant to the Formation

Agreement and/or any of the Ancillary Agreements shall remain in and with such assets and

shall be enforceable against such assets.

12.     Following the completion of the Newco Sale provided for in the

Formation Agreement, all right, title and interest in and to the assets of the Cubs Business that

were previously transferred by any of the Tribune Debtors to Newco and are contemplated

thereafter to be sold by Newco to its subsidiaries (the "Newco Subs") shall be immediately

vested in the Newco Subs pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and

clear of any and all liens (including, but not limited to, any and all "liens" as defined in section

101(37) of the Bankruptcy Code), claims (including, without limitation, any and all "claims" as

defined in section 101(5) of the Bankruptcy Code, which include the rights, claims, causes of

action and choses in action described in paragraphs 16 and 17 of this Order), mortgages, deeds of

trust, guarantees, security agreements, security interests, pledges, options, easements, servitudes,

rights-of-way, encroachments, hypothecations, charges, obligations, rights, restrictions, interests

(as such term is used in section 363(f) of the Bankruptcy Code) and encumbrances in or with

respect to any of the assets of the Cubs Business transferred by Newco to any of the Newco

Subs, whenever arising, whether imposed by agreement, understanding, law, equity or otherwise;

provided, however, that Permitted Liens and other claims, rights, interests and encumbrances

assumed by Newco and thereafter assumed by the relevant Newco Sub(s) as contemplated by the

Formation Agreement and/or any of the Ancillary Agreements shall remain in and with such

assets and shall be enforceable against such assets; and provided further that, for the avoidance

of doubt, the liens granted by Newco in connection with the Senior Debt Financing shall

continue in full force and effect after the transfer of the assets of the Cubs Business sold by

Newco to its subsidiaries.

      13.     Without limiting any other provision of this Order, any and all entities that

assert, or may assert, a lien, claim, encumbrance, right or other interest of any kind in any of the

Cubs Contributed Assets contributed to Newco (and thereafter sold by Newco to any of the

Newco Subs as part of the Newco Sale) (or, in the case of the Direct Cubs Contributed Assets, to

Cubs Newco Sub) by any of the Tribune Debtors, or against any of the Tribune Debtors

respecting such Cubs Contributed Assets, and that were provided with notice of the Proposed

Business Combination as set forth in the Notice and Procedures Approval Order, and did not

timely file an objection to the Proposed Business Combination as provided for in the Notice and

Procedures Approval Order, are deemed to have consented to the Proposed Business

Combination and to the transfer of such Cubs Contributed Assets free and clear of any such lien,

claim, encumbrance, right or other interest.

              14.     Except as provided under the Formation Agreement and/or any of the

Ancillary Agreements (including, but not limited to, provision for Permitted Liens), (a) the

Bidder, Newco, Cubs Newco Subs and the Newco Subs shall not be liable for any liens, claims,

encumbrances, liabilities, or obligations of any kind against or of the Tribune Debtors or the

assets of the Cubs Business contributed by the Tribune Debtors, and Newco, Cubs Newco Sub,

and the Newco Subs shall have no successor or vicarious liabilities of any kind or character

whether with respect to the Tribune Debtors or the assets of the Cubs Business contributed by the

Tribune Debtors, known or unknown, now existing or hereafter arising, whether fixed or

contingent, whether at law or in equity, whether by payment, setoff or otherwise, directly or

indirectly; (b) the Bidder, Newco, Cubs Newco Sub and the Newco Subs shall not be deemed or

found to be successors of or to any of the Tribune Debtors for any purpose, including, but not

limited to any liens, claims, encumbrances, liabilities or obligations against or of the Tribune

Debtors or the assets of the Cubs Business transferred by any of the Tribune Debtors, and the

Bidder, Newco, Cubs Newco Sub and the Newco Subs shall have no liability, obligation or

responsibility as successors to any of the Tribune Debtors (whether as a result of federal or state

law or otherwise) as a result of the contribution, transfer or assignment of the assets of the Cubs

Business transferred by any of the Tribune Debtors or the entry into and consummation of the

Proposed Business Combination, and will be exempt from any bulk transfer laws in all

applicable jurisdictions; and (c) in no event shall the Bidder, Newco, Cubs Newco Sub or the

Newco Subs have any liability, obligation or responsibility for any liens, claims, encumbrances,

liabilities or obligations that are Cubs Excluded Liabilities.  No persons or entities (including, without limitation, creditors of the Tribune Debtors and parties-in-interest in the Tribune Debtors' chapter 11 cases) shall have the right, or shall be permitted to, bring or otherwise pursue any claim or cause of action against any of the Bidder, Newco, Cubs Newco Sub and/or the Newco Subs on account of (i) any theory of successor or vicarious liability based on the Proposed Business Combination and the individual transactions comprising same, or (ii) any Cubs Excluded Liabilities.

15.    This Order is and shall be effective as a determination that, upon the contribution of the assets of the Cubs Business by any of the Tribune Debtors to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub), all liens, claims, encumbrances, rights, and other interests (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (and, where applicable, Cubs Newco Sub) pursuant to the Formation Agreement and/or any of the Ancillary Agreements) existing as to such assets have been and hereby are terminated and declared to be unconditionally released, discharged and terminated, and such determination shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to such assets.  Each of the Tribune Debtors, the Bidder, Newco, and Cubs Newco Sub (where applicable) are authorized to take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by any of the other parties to implement and effectuate

the transactions contemplated in the Formation Agreement, the Ancillary Agreements, and this Order. All liens, claims, encumbrances, rights, and other interests of record as of the date of this Order (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco pursuant to the Formation Agreement and/or any of the Ancillary Agreements) shall be forthwith removed and stricken as against the assets of the Cubs Business transferred by any of the Tribune Debtors to Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub). All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, rights, interests and encumbrances (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in the case of liens, claims, rights, interests and encumbrances relating to the Direct Cubs Contributed Assets, Cubs Newco Sub) pursuant to the Formation Agreement and/or any of the Ancillary Agreements) against the assets of the Cubs Business transferred by any of the Tribune Debtors to Newco (or, as applicable, to Cubs Newco Sub) from their records, official and otherwise.

16.     Notwithstanding any provisions of the Formation Agreement to the contrary, and without limiting any provisions of paragraph 14, supra, the "Cubs Excluded Assets" defined in Exhibit A to the Formation Agreement shall include in clause (c) of such definition the Excluded Contracts and all rights and claims thereunder, and all rights, claims, causes of action and choses in action, whenever arising, against any Person other than the Bidder Parties, Newco or the Newco Subs (i) arising out of, in connection with or otherwise relating in any manner to the series of transactions (or any thereof) pursuant to which Tribune became privately held, which transactions ultimately resulted in the transfer of ownership of Tribune to the Tribune Employee Stock Ownership Plan, and/or any financing incurred in connection

therewith or related thereto (collectively, the "LBO Transactions"), including, without limitation, any claims seeking to avoid or invalidate any guarantees or other obligations incurred in connection therewith; or (ii) arising pursuant to Chapter 5 of the Bankruptcy Code with respect to all intercompany claims or obligations.

17.     Notwithstanding any provisions of the Formation Agreement to the contrary, and without limiting any provisions of paragraph 14, supra, the "Cubs Excluded Liabilities" defined on Exhibit A to the Formation Agreement shall include any obligation or liability arising out of, in connection with or otherwise relating in any manner to rights, claims, causes of action and choses in action arising out of, in connection with or otherwise relating in any manner to (i) the LBO Transactions, including, without limitation, any claims seeking to avoid or invalidate any guarantees or other obligations incurred in connection therewith; or (ii) intercompany claims or obligations, including, without limitation, any claims arising under Chapter 5 of the Bankruptcy Code.

18.     Any and all liens, claims, encumbrances and interests in or against the assets of the Cubs Business terminated and declared to be unconditionally released, discharged and terminated by this Order will attach to the net consideration to be received by the Tribune Debtors with the same rights and priorities as such liens, claims, encumbrances and interests enjoyed against the assets of the Cubs Business.

19.     16. Subject to the provisions of this Order, if any person or entity that has filed statements or other documents or agreements evidencing liens, claims, rights, interests or encumbrances (except for Permitted Liens and other claims, rights, interests and encumbrances assumed by Newco (or, in the case of liens, claims, rights, interests and encumbrances relating to Direct Cubs Contributed Assets, to by Cubs Newco Sub) pursuant to the Formation Agreement

and/or the Ancillary Agreements) on any of the assets of the Cubs Business transferred by any of

the Tribune Debtors does not deliver to the Tribune Debtors, the Cubs Entities, Newco and/or the

Newco Subs, prior to the Closing Date, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, releases of liens (except for Permitted

Liens) and easements, and any other documents necessary for the purpose of documenting the

release of all liens, claims, rights, interests and encumbrances that the person or entity has or

may assert with respect to any of the assets of the Cubs Business transferred by any of the

Tribune Debtors (except for Permitted Liens and other claims, rights, interests and encumbrances

assumed by Newco (or, in the case of liens, claims, rights and encumbrances relating to Direct

Cubs Contributed Assets, ~~to~~by Cubs Newco Sub) pursuant to the Formation Agreement and the

Ancillary Agreements), the Tribune Debtors, Newco, and Cubs Newco Sub are hereby

authorized to execute and file such statements, instruments, releases and other documents on

behalf of such persons or entity with respect to any of the assets of the Cubs Business

contributed as part of the Proposed Business Combination by any of the Tribune Debtors to

Newco (or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub), as may

thereafter be sold by Newco to any of the Newco Subs as part of the Newco Sale.

      20.      ~~17.~~ The Bidder, Newco and the Newco Subs have acted properly,

reasonably and in good faith in connection with the Proposed Business Combination, the

transactions contemplated by the Formation Agreement, the Ancillary Agreements, the Notice

and Procedures Approval Motion and Order, the Tribune Transaction Approval Motion and this

Order and, accordingly, pursuant to section 363(m) of the Bankruptcy Code, the validity of the

Proposed Business Combination, the Formation Agreement, the Ancillary Agreements and the

contribution of any and all assets of the Cubs Business by any of the Tribune Debtors to Newco

(or, in the case of Direct Cubs Contributed Assets, to Cubs Newco Sub), as well as the Newco

Sale, shall not be affected by the reversal or modification on appeal of the authorizations granted

under this Order pursuant to section 363(b) of the Bankruptcy Code.

21.    18. The Proposed Business Combination, the Formation Agreement and

the Ancillary Agreements have been negotiated, developed and proposed at arm's-length and in

good faith and, as such, none of the Tribune Debtors, nor any Trustee appointed in any of the

Tribune Debtors' chapter 11 cases, shall be entitled to avoid the Proposed Business Combination

or any agreement or transaction included therein or related thereto pursuant to section 363(n) of

the Bankruptcy Code, nor shall any of the Tribune Debtors be entitled to costs, fees, expenses, or

other damages under section 363(n) of the Bankruptcy Code.  None of the Bidder, Newco, Cubs

Newco Sub or any Newco Sub is an "insider" of any of the Tribune Debtors, as that term is

defined in Bankruptcy Code section 101(31).

22.    19. The consideration provided and to be provided in connection with the

Proposed Business Combination constitutes reasonably equivalent value and fair consideration

under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance

Act and under any other laws of the United States, any state, territory, possession or the District

of Columbia.

23.    20. The membership interests in Newco to be received by the Tribune

Debtors and the Cubs Entities under the Proposed Business Combination, as provided for in the

Formation Agreement, shall be allocated to those entities with reference to the value of the Cubs

Contributed Assets contributed by each of the Tribune Debtors and the Cubs Entities to Newco

(or, in the case of the Direct Cubs Contributed Assets, to Cubs Newco Sub).  Without affecting

the allocation of the value of the Cubs Contributed Assets (as defined in the Formation

Agreement) pursuant to Section 1.7 of the Formation Agreement, the Estimated Special

Distribution Amount and the Final Special Distribution Amount shall be ~~distributed to~~deposited

~~with~~ CNLBC, and such amounts shall be held by CNLBC in segregated accounts separate from

the integrated cash management system maintained by Tribune for itself and its affiliates,

pending the distribution of such amounts under (a) a confirmed and effective plan of

reorganization for Tribune, CNLBC, and their affiliates, or (b) further order of the Bankruptcy

Court.  Pending such distribution, all issues (and the rights of all parties) with respect to the

allocation of such amounts among the respective Tribune Debtors and Cubs Entities are fully

reserved.

        24.     ~~21.~~ The Tribune Debtors are hereby authorized, pursuant to section 365 of

the Bankruptcy Code, to assume any Cubs Executory Contracts to which any of the Tribune

Debtors are a party and assign such Cubs Executory Contracts to Newco (or, in the case of any

Cubs Executory Contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub).

Furthermore, as part of the Proposed Business Combination and the Newco Sale contemplated

by the Formation Agreement and the Ancillary Agreements, Newco is authorized to assign

further any Cubs Executory Contracts assigned to it to the applicable Newco Sub.  On the

Closing Date or as soon as practicable thereafter, Newco shall pay to the counterparties to the

Cubs Executory Contracts any cure amounts in respect of such Cubs Executory Contracts as

determined by the Bankruptcy Court in respect of any Cubs Executory Contract as to which an

objection has been timely filed by the counterparty thereto, which payment shall be in full and

final satisfaction of all obligations and as full compensation to the counterparty for any pecuniary

loss under any such Cubs Executory Contract pursuant to section 365(b)(1) of the Bankruptcy

Code; provided, however, that if there is a dispute concerning any proposed cure amount,

payment shall be made to the counterparty only after resolution of such dispute by agreement of the parties or, in the absence of any such agreement, by the Bankruptcy Court.

25.    ~~22.~~ The Cubs Executory Contracts to which any of the Tribune Debtors are a party will be assumed by the relevant Debtor and assigned to Newco (or, in the case of any Cubs Executory Contracts to which any of the Tribune Debtors are a party relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub), as may thereafter be assigned further by Newco to the applicable Newco Sub as part of the Newco Sale, and such Cubs Executory Contracts will remain valid and binding and in full force and effect in accordance with their terms for the benefit of Newco, Cubs Newco Sub or the applicable Newco Sub, notwithstanding any provision in such Cubs Executory Contracts (including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code), that prohibits, restricts or conditions such assignment or transfer, including, without limitation, all preferential rights or rights of first refusal of any kind or nature whatsoever, pursuant to section 365(f) of the Bankruptcy Code.

26.    ~~23.~~ The Tribune Debtors are authorized and directed to take any and all actions reasonably necessary or appropriate to consummate the proposed assumption and assignment of all Cubs Executory Contracts as to which any of the Tribune Debtors are a party to Newco (or, in the case of any Cubs Executory Contracts relating to the Direct Cubs Contributed Assets, to Cubs Newco Sub), and the further assignment by Newco of any such Cubs Executory Contracts to the Newco Subs, as specified in the Formation Agreement and/or any of the Ancillary Agreements.  Except for the obligation of Newco (or, where applicable, Cubs Newco Sub) to pay any cure amounts as set forth in the Formation Agreement and/or the Ancillary Agreements, Newco and Cubs Newco Sub shall have no obligation, responsibility or liability for any breaches or defaults under any Cubs Executory Contracts that occurred prior to the

assumption and assignment of any such contract.  Pursuant to section 365(k) of the Bankruptcy

Code, the Tribune Debtors are relieved of any liability for any breach of any Cubs Executory

Contracts to which any of the Tribune Debtors are a party that are assumed and assigned to

Newco or Cubs Newco Sub where such breach occurs after the assumption and assignment of

such contract to Newco or, where applicable, Cubs Newco Sub.

   27. ~~24.~~ In light of, <u>inter alia</u>, the contribution of the Specified Amount by the

Bidder to Newco and the obtaining of the Debt Financing (including the revolving credit facility

component thereof) and the Equity Financing by Newco, together with the transfer of the Cubs

Business to Newco and Cubs Newco Sub, and through the Newco Sale to the Newco Subs, the

counterparties to any Cubs Executory Contracts which are being assumed by any of the Tribune

Debtors and assigned to Newco (or, in the case of any Cubs Executory Contracts relating to the

Direct Cubs Contributed Assets, to Cubs Newco Sub), as may be further assigned by Newco to

any of the Newco Subs as a component of the Newco Sale, are hereby deemed and are

adequately assured of future performance within the meaning of section 365(f)(2)(B) of the

Bankruptcy Code.

   28. ~~25.~~ The terms and provisions of this Order shall be binding in all respects

upon the Tribune Debtors and their estates, creditors, parties-in-interest and all individuals or

entities holding or claiming any interests in any of the Tribune Debtors, including, without

limitation, any person or entity purporting to hold liens, claims or encumbrances, rights or other

interests in or against the assets that are the subject of the Proposed Business Combination that

are owned by any of the Tribune Debtors.

   29. ~~26.~~ In no event shall the Senior Lender Agent nor any lender providing

Senior Debt Financing to Newco be required to make any funds available to Newco or any other

person or entity, unless and until all Closing Conditions set forth in the Senior Debt Commitment

Letter or the Bank Credit Agreement, as applicable are satisfied or waived in accordance with the

terms of the Senior Debt Commitment Letter or the Bank Credit Agreement, as applicable.

30.    27. Nothing in this Order is intended to or shall be deemed to modify the

terms of the Formation Agreement, any of the Ancillary Agreements, the Tribune Debt

Guarantees, the WGN Agreements, or the Superstation Extension, except as expressly provided

herein.  Nothing contained in any chapter 11 plan confirmed in any of the Tribune Debtors'

bankruptcy cases or any order confirming any such plan or in any other order in these chapter 11

cases (including any order entered after any conversion of a chapter 11 case of any of the

Tribune Debtors to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or

derogate from, the provisions of the Formation Agreement, the Ancillary Agreements or this

Order.  To the extent specified in the Formation Agreement and the Ancillary Agreements, the

obligations of the Tribune Debtors respecting the Proposed Business Combination shall be

entitled to administrative expense priority pursuant to sections 503(b) and 507(a)(2) of the

Bankruptcy Code.

31.    28. The Formation Agreement, any of the Ancillary Agreements, the

Tribune Debt Guarantees, the WGN Agreements, and/or the Superstation Extension may be

modified, amended, or supplemented by the parties thereto, in a writing signed by such parties,

in accordance with the terms thereof without further order of the Court, provided that any such

modification, amendment, or supplement is not material, and provided further that notice of any

such modification with respect to any such documents to which any of the Tribune Debtors,

Newco and/or the Newco Subs is a party is provided to the U.S. Trustee, the Official Committee

of Unsecured Creditors, and the Steering Committee of Tribune's prepetition lenders.

Consummation of the Proposed Business Combination and the fulfillment by the Tribune Debtors of their obligations under the Formation Agreement and the Ancillary Agreements are not prohibited or limited by any prior order of this Court.

32.    29. Nothing in this Order shall impair the ability of any of the Cubs Entities that do not commence chapter 11 cases to enter into and perform their obligations under Proposed Business Combination (including, without limitation, pledging any interests in Newco that may be held by any such Cubs Entities as security for obligations under the Debt Financing being provided to Newco in connection with the Proposed Business Combination), the Formation Agreement, and/or the Ancillary Agreements, and no further authorization by the Court is necessary for any of those Cubs Entities to enter into any agreements or perform any and all of their obligations relating to the Proposed Business Combination, the Formation Agreement, and/or the Ancillary Agreements.  The Tribune Debtors have all necessary authorityare authorized to cause the Cubs Entities to enter into and perform their obligations under any agreements or other documents necessary to implement the Proposed Business Combination (including, without limitation, causing the Cubs Entities to pledge any interests in Newco that may be held by any such Cubs Entities as security for obligations under the Debt Financing being provided to Newco in connection with the Proposed Business Combination).

33.    30. In the event of any conflict or inconsistency between the terms of this Order and the terms of the Formation Agreement, any of the Ancillary Agreements, the Tribune Debt Guarantees, the WGN Agreements, the Superstation Extension, and/or any other agreements entered into in connection with implementation of the transactions described herein and in the Tribune Transaction Approval Motion, the terms of this Order shall govern and be controlling.

34.    ~~31.~~ The Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement and enforce the terms and provisions of this Order, the Formation Agreement and the Ancillary Agreements and any amendments thereto.

35.    This Order is without prejudice to any order entered in any chapter 11 proceeding(s) for CNLBC or any of the Cubs Entities related to the CNLBC Transaction Approval Hearing solely with respect to persons who are not parties in interest in the Tribune Debtors' chapter 11 cases (the provisions of this paragraph, the "Cubs Entities Reservation").

36.    Nothing in this Order or the TV Agreement shall affect the obligations of the parties under, or require or permit any television announcer for the Cubs to enter into an employment contract that is inconsistent with, the terms of the collective bargaining agreement to which WGN and the American Federation of Television and Radio Artists are parties, including, but not limited to, any obligation that may exist under such collective bargaining agreement to contribute to benefit trust funds under such collective bargaining agreement.

37.    ~~32.~~ This Order shall be effective immediately upon entry pursuant to Rule 7062 and 9014 of the Federal Rules of Bankruptcy Procedure.  The 10-day stays set forth in Bankruptcy Rules 6004(g) and 6006(d) are hereby waived to permit the transactions described herein to be closed prior to the expiration of such 10-day period.

Dated: _____, 2009
      Wilmington, Delaware    _____
                         The Honorable Kevin J. Carey
                         United States Bankruptcy Judge