IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Ref. Nos. 1024 and 2191<br><br>Response Deadline: October 7, 2009 |

### RESPONSE OF LANDIS RATH AND COBB LLP TO FEE EXAMINER'S FINAL REPORT REGARDING FIRST INTERIM FEE APPLICATION OF LANDIS RATH & COBB LLP

Landis Rath & Cobb LLP ("LRC"), co-counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases, hereby submits the Response of Landis Rath & Cobb LLP to Fee Examiner's Final Report Regarding First Interim Fee Application of Landis Rath & Cobb LLP (the "Response"). In support hereof, LRC respectfully represents as follows:

### BACKGROUND

1.  On December 8, 2008, (the "Petition Date"), the debtors in the above-captioned chapter 11 cases (the "Debtors") commenced these bankruptcy cases by each filing a voluntary

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

3. On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "UST") appointed the Committee. In addition, on December 18, 2008, the Committee met with and selected Chadbourne & Parke LLP ("Chadbourne") as its counsel and LRC as its co-counsel.

4. On February 20, 2009, the Court entered an order authorizing the employment and retention of LRC as co-counsel to the Committee *nunc pro tunc* to December 18, 2008.

5. On March 19, 2009, the Court entered an order appointing Stuart Maue as fee examiner for these chapter 11 cases *nunc pro tunc* to February 20, 2009 (the "Fee Examiner").

6. On April 15, 2009, LRC filed its First Interim Application (the "First Interim Fee Application") [Docket No. 1024] for allowance of compensation and reimbursement of expenses, pursuant to Bankruptcy Code sections 330 and 331, for legal services performed during the period commencing December 18, 2008 through and including February 28, 2009 (the "Application Period").

7. Pursuant to the terms of the order appointing Stuart Maue, the Fee Examiner provided LRC the Preliminary Review and Analysis of Fee Applications Submitted by Landis Rath & Cobb LLP (the "Preliminary Report"). The Preliminary Report outlined concerns of the Fee Examiner with respect to certain fees and expenses requested in the First Interim Fee Application.

8. After receiving the Preliminary Report, LRC engaged in productive discussions (including the submission of a written response to the Preliminary Report) with the Fee Examiner. At the conclusion of these discussions, LRC and the Fee Examiner were able to reach a consensual resolution on all but three issues raised in the Preliminary Report.

9. On September 22, 2009, the Fee Examiner filed the Fee Examiner's Final Report Regarding First Interim Fee Application of Landis Rath & Cobb LLP (the "Final Report") [Docket No. 2191].

## RESPONSE OF LRC TO THE FINAL REPORT

10. LRC appreciates the opportunity the Fee Examiner has provided LRC to respond to questions raised concerning the First Interim Fee Application. LRC has engaged in constructive discussions with the Fee Examiner that, as the Final Report indicates, addressed the overwhelming majority of the Fee Examiner's questions related to the First Interim Fee Application. However, three issues remain outstanding. Although of relatively modest dollar amount, these issues are likely to be raised again in subsequent fee applications submitted by LRC. Accordingly, LRC files this Response to seek the Court's guidance with respect to these issues.

11. The three outstanding issues relate to the Fee Examiner's recommendations with respect to legal tasks conducted and expenses incurred by LRC professionals identified in the Final Report as: (a) non-compensable administrative activities; (b) clerical activities compensable at a reduced billing rate; and (c) working meals ((a), (b) and (c) together, the "Disputed Expenses").

12. LRC respectfully disagrees with the Fee Examiner's recommendations and submits that the amounts billed in respect of the tasks identified in the first two categories should

be allowed because such tasks require the application of specialized training, substantial knowledge, and the exercise of substantial discretion and judgment. LRC further submits that the working meal objected to should be allowed because it satisfies LRC's billing policy with respect to working meals. For the reasons set forth in detail below, LRC submits that the Disputed Expenses were appropriately billed and should be allowed in full notwithstanding the recommendations of the Fee Examiner contained in the Final Report.

**(A)   Activities Identified in the Final Report as Administrative in Nature.**

13.   The Final Report provides that 9.70 hours of time, with associated fees of $2,202.50, have been identified by the Fee Examiner as administrative in nature. The Fee Examiner states of these entries: "activities relating to the training and assignment of tasks to staff members ... should be considered a cost of doing business." Pursuant to the Final Report, such time entries relate to legal tasks performed under one of the two following categories: (a) the preparation of a response, and the preparation of a supplemental affidavit in connection therewith, to certain concerns expressed by the UST regarding LRC's retention, and the performance of additional diligence related thereto; and (b) the review, revision and preparation of the structure of bills to satisfy requirements of the Guidelines, the Bankruptcy Code and the Local Rules, and the Fee Examiner.

14.   With respect to the time entries identified by the Fee Examiner as administrative in nature that include references to conflict checks, LRC was required to meet with and prepare a written response to the UST, as well as prepare a supplemental affidavit describing its connections with certain parties-in-interest in order to satisfy the UST's concerns about LRC's ability to investigate and potentially pursue causes of action against certain parties involved with the Debtors' leveraged buyout. LRC professionals performed additional diligence, and reviewed its connections with supplemental parties as part of this process. As a general

matter, LRC does not bill time related to the review of conflict checks in connection with its proposed retention in any case. However, in this case, after the Committee selected LRC as its co-counsel, the UST raised a number of questions and requested that LRC conduct additional diligence and provide additional information regarding LRC's ability to investigate complex issues related to the leveraged buyout. LRC submits that because such additional diligence and review was required, that accordingly, the associated fees ($95.00) were appropriately billed and included in the First Interim Fee Application.

15. With respect to the time entries related to the preparation of bills for fee applications, LRC submits that at the outset of chapter 11 cases as complex as these, significant work is required to structure and prepare bills in compliance with the format and requirements set forth in the Guidelines, the Bankruptcy Code and the Local Rules, and by the Fee Examiner. Accordingly, LRC submits that the time (9.3 hours) and amount ($2,107.50) associated with such work is compensable. LRC further submits that the level of work required to conform bills to case requirements has decreased and should continue to remain relatively consistent, depending, of course, on the level of activity in these chapter 11 cases.

**(B)  Activities Identified in the Final Report as Clerical in Nature.**

16. The Final Report provides that 14.40 hours, with associated fees of $2,790.50, have been identified by the Fee Examiner as clerical in nature. Specifically, the Final Report suggests that such tasks, including the following, do not "require legal acumen" to perform: (a) maintaining and organizing case files; (b) creating and maintaining service lists; (c) retrieving and analyzing documents filed in these cases in order to determine and calendar deadlines relevant to LRC, Chadbourne, the Debtors and professionals retained by the Committee; and (d) preparing, filing, serving and distributing affidavits and declarations related to the Committee's retention of LRC and other professionals. Although such activities are

identified in the Final Report as clerical and nonbillable in nature, the Fee Examiner cites no authority in support of its recommendation that the fees for such tasks be disallowed or billed at a clerical rate of $80.00 per hour.

17.   LRC submits that these tasks are not clerical in nature.  To the contrary, their performance requires the application of extensive, specialized training, substantial knowledge, and the exercise of discretion.  For example, tracking important deadlines and calendaring the same (which requires access to PACER and an individual's ability to distinguish between important and unimportant docket entries), saves LRC attorneys assigned to these cases the time of having to review PACER throughout the day, and thus reduces expenses to the Debtors' estates.  LRC's attorneys can quickly glance at the paralegal-created entries that list only relevant deadlines, saving substantial attorney time in an effective use of firm resources.  The same holds true for the critical dates calendar.  Creating a critical dates calendar requires LRC's paralegals to determine, from all of the documents filed in theses cases, which of these include information relating to hearing dates, objection deadlines, and any changes related thereto; this is no small task in a bankruptcy case as large and complex as this.  Finally, creating and maintaining service lists, filing various pleadings through CM/ECF, determining the proper service-parties and serving such pleadings upon the appropriate individuals, ordering and/or retrieving and coordinating the distribution of important documents, including hearing transcripts, pleadings, reports, orders, applications, etc., and regularly maintaining and organizing the voluminous files containing all of these items, requires professionals and paraprofessionals to apply extensive, specialized training and substantial knowledge and to exercise discretion in carrying out such responsibilities, none of which are merely clerical in nature.

18. LRC submits that such tasks are critical to ensure that due process is achieved – absent the above-referenced training, knowledge and discretion of the professionals and paraprofessionals performing this work, among other consequences, the Committee would run the risk of missing deadlines imposed by statute and applicable rules. LRC is aware of no case in which its timekeepers (or others) have been compensated for such services at an arbitrary hourly rate of $80.00. LRC further submits that it is appropriate, particularly in its role as Delaware counsel and co-counsel, for its timekeepers to bill at their customary rates for functions so critical to due process and the smooth functioning of these cases for the Committee.

19. For the foregoing reasons, LRC asserts that its use of paraprofessionals to perform these tasks is not only appropriate and very cost effective, but critical, and is therefore compensable at the regular hourly rates generally charged for such paraprofessional's time. See In re Busy Beaver Building Centers, Inc., 19 F.3d. 833, 848-56 (3d Cir. 1994). LRC submits that it is appropriate, particularly in complex cases such as these, for its timekeepers to bill their customary rates for functions that appropriately require paraprofessional efforts so long as those rates withstand the "comparable services" analysis prescribed by the Third Circuit in evaluating bankruptcy fees. Id. at 853-54.

(C)   **Working Meal for which the Fee Examiner Recommends a Reduction.**

20. The Final Report recommends that the request for reimbursement of expense charges be reduced by $16.50 for an employee meal charge. LRC's billing policy for working meals permits reimbursement in only two circumstances: (a) working meetings during mealtime; or (b) when, due to the exigencies of the case, LRC personnel are required to stay late in the evening working and/or work over weekends on this matter. The cost incurred is the actual cost billed by LRC's vendor, and does not include any profit to LRC. LRC submits that

the employee meal charge identified by the Fee Examiner in the Final Report satisfies these requirements as it was incurred on December 19, 2008, just after LRC was retained by the Committee, by one of LRC's paralegals who was required to work late into the evening assembling case materials for the attorneys assigned to the matter in advance of a presentation to the Committee the next day. Accordingly, LRC submits that such employee meal charge was appropriately billed and should be allowed in full.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, LRC respectfully requests the Court (i) approve the First Interim Fee Application in its entirety; and (ii) grant such other and further relief as is just and proper.

Dated: October 7, 2009
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Mona A. Parikh (No. 4901)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Co-Counsel to the Official
Committee of Unsecured Creditors*