# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF CRANE H. KENNEY, CHAIRMAN OF CHICAGO NATIONAL LEAGUE BALL CLUB, LLC, IN SUPPORT OF (I) NOTICE AND PROCEDURES APPROVAL MOTION, (II) TRIBUNE TRANSACTION APPROVAL MOTION, AND (III) CNLBC TRANSACTION APPROVAL MOTION

CRANE H. KENNEY declares as follows:

1.    I am the Chairman of the Chicago Cubs Major League Baseball franchise

(the "Cubs").  In my capacity as Chairman of the Cubs, I am generally familiar with the Cubs'

day-to-day operations, business affairs, and books and records.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2.    I submit this declaration (the "Kenney Declaration") in support of (a) the

Motion of Debtors and Debtors in Possession Pursuant to Section 105(a) of the Bankruptcy Code

and Fed. R. Bankr. P. 2002, 6004 and 9007 for an Order (I) Approving Form and Scope of

Notice of Proposed Business Combination Involving Cubs Business to Creditors and Parties-in-

Interest of Tribune Debtors and Cubs Entities, (II) Approving Transaction Process and Setting

Transaction Hearing and Related Deadlines, and (III) Approving Certain Investor Protections

(the "Notice and Procedures Approval Motion"), (b) the Motion for Orders Pursuant to 11 U.S.C.

§§ 105(a), 363 and 365 (I) Authorizing Tribune Debtors and CNLBC to (A) Enter Into and

Perform Obligations under Formation Agreement and Ancillary Agreements, (B) Contribute

Cubs-Related Assets, Interests in Wrigley Field, and Related Assets Free and Clear of All Liens,

Claims, Rights, Interests and Encumbrances, (C) Assume and Assign Executory Contracts; (II)

Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing; (III)

Authorizing Debtors WGN Continental Broadcasting Company and Tribune Company to Enter

Into and Perform Obligations Under Amended and Restated Broadcast Agreements; and (IV)

Granting Related Relief (the "Tribune Transaction Approval Motion"), and (c) the Motion for an

Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Chicago National League

Ball Club, LLC to (A) Enter Into and Perform Obligations Under Formation Agreement and

Ancillary Agreements, (B) Effect Proposed Business Combination Involving Cubs-Related

Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of All

Liens, Claims, Rights, Interests and Encumbrances, and (C) Assume and Assign Executory

Contracts; (II) Pledge Membership Interest in Chicago Baseball Holdings, LLC; and (III)

Granting Related Relief (the "CNLBC Transaction Approval Motion") (collectively, the

"Motions").

2

3.      This Declaration provides factual background and information concerning the effect of having Chicago National League Ball Club, LLC ("CNLBC") operate the Cubs Business (as defined in the Motions) in chapter 11 for more than a brief period before announcing approval of the Proposed Business Combination (as defined in the Motions) by the Bankruptcy Court. I have personal knowledge of the facts in this Declaration and, if called upon, would testify competently thereto.

4.      The Notice and Procedures Approval Motion requests that the Bankruptcy Court establish and approve a process by which notice of the Proposed Business Combination involving the business, assets and operations of the Chicago Cubs Major League Baseball franchise (collectively, the "Cubs Business"), together with various transactions and relief ancillary thereto, will be given to creditors and other parties-in-interest of the Tribune Debtors, and simultaneously, to creditors, executory contract counterparties, and other parties-in-interest of the five "Cubs Entities": (i) CNLBC; (ii) Tribune Sports Network Holdings, LLC; (iii) Wrigley Field Premium Ticket Services, LLC; (iv) Diana-Quentin, LLC; and (v) Chicago Cubs Dominican Baseball Operations, LLC. The Motion further requests that the Bankruptcy Court approve the transaction process involving the Cubs Business and approve certain investor protections in favor of Ricketts Acquisition LLC, the bidder for the Cubs Business (the "Bidder"). The Tribune Transaction Approval Motion and the CNLBC Transaction Approval Motion then each seek approval of the Bankruptcy Court for the Debtors and CNLBC to enter into and consummate their obligations under the Proposed Business Combination. The Motions anticipate that CNLBC will commence a chapter 11 case and file the CNLBC Transaction Approval Motion following the Bankruptcy Court's entering an order approving of Tribune Transaction Approval Motion.

3

5.      The Cubs are one of the most storied franchises in all of sports, and the Cubs have spent more than a century developing a near-iconic level of identity and loyalty within the Chicago area and among fans around the world.  That identity and loyalty are essential elements of the Cubs franchise and its value, and maintaining that identity is a critical element of any major business matter involving the Cubs, such as player personnel decisions and other transactions affecting the business as a whole.

6.      Preserving the Cubs' unique identity must also be a foremost consideration in the chapter 11 process involving the Cubs.  Any chapter 11 process for the Cubs lasting more than a very brief period (i.e., two or three business days) presents a material risk of causing lasting damage to many aspects of the Cubs Business and presents an overriding risk to the quality and uniqueness of the Cubs' identity.  Based on my experience with the Cubs Business as Chairman of the Cubs, and based further on my review of the various materials to be released publicly and/or filed with the Bankruptcy Court in connection with a chapter 11 filing for CNLBC, I believe that the Cubs Business will suffer lasting harm if operations while in chapter 11 are required for more than two or three business days until the Cubs can announce that the Proposed Business Combination has been consummated.

7.      In addition to the lasting harm to the Cubs' brand that would result from operating in chapter 11 for more than a few days, the Cubs would also suffer irreparable harm from a stay in chapter 11 for any appreciable period of time because many of the actions taken by a Major League Baseball franchise are difficult, if not impossible, to adapt to a chapter 11 environment.  For example, after the 2009 World Series concludes, the Cubs will be required to make numerous decisions relating to their baseball operations that are arguably outside the ordinary course of business, including tendering contracts to existing players, potential player

4

trades, free agent signings and potential prosecution of player salary arbitration cases. The process of competing for player talent in Major League Baseball is incomparably fierce, and by operating in chapter 11 the Cubs would face a severe competitive disadvantage in their ability to retain, acquire or trade for players, based on the perception that the transaction would require Bankruptcy Court approval or might be unwound at a later date. Other teams may refuse to engage in trades with the Cubs and players may simply refuse to play for a team in chapter 11 based on perceived risks, regardless of explanations.

8.      In a situation where multiple teams may be competing for a particular player's services, the uncertainty of chapter 11 could be determinative. Given that decisions concerning player staffing and similar matters are made at a particular time to influence matters beyond one baseball season, the competitive disadvantage in competing for players could have ramifications for the club for many years, potentially affecting the overall value of the franchise and effecting an irreparable harm thereon.

9.      In addition, a lengthy chapter 11 process would adversely affect necessary actions to be taken by CNLBC off the field as well.  CNLBC is already in the process of negotiating and attempting to finalize numerous sponsorship agreements for the 2010 Major League Baseball season (and in some cases beyond that season). Those sponsorship agreements account for a substantial portion of the team's annual revenue. Potential sponsors will doubtless be reluctant to direct their advertising spending towards an entity in chapter 11, regardless of the assurances that are provided about that process. This factor, however, will apply with exceptional force in connection with professional sports advertising, where potential sponsors will necessarily want to be associated with a perceived "winner," and any uncertainty about the

ability of a team to field a top-level product will have negative consequences on sponsorship efforts, with resulting financing consequences to the franchise.

10.     Based on the foregoing factors, I believe that having the Cubs franchise operate for more than a brief period in chapter 11 before announcing Bankruptcy Court approval for the Proposed Business Combination, presents a material risk of irreparable harm to the Cubs Business.  Accordingly, I believe that the structuring of the CNLBC chapter 11 filing as described in the Notice and Procedures Approval Motion, which contemplates that CNLBC will operate only for a few business days in chapter 11, is necessary to ameliorate this risk and preserve the value of the Cubs Business.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 24th day of August 2009 at Chicago, Illinois.

_____
Crane H. Kenney

CHI 4842951v.1