# **EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**DECLARATION OF CHANDLER BIGELOW III, SENIOR VICE PRESIDENT AND CHIEF FINANCIAL OFFICER OF TRIBUNE COMPANY, IN SUPPORT OF (I) NOTICE AND PROCEDURES APPROVAL MOTION, (II) TRIBUNE TRANSACTION APPROVAL MOTION, AND (III) CUBS LLC TRANSACTION APPROVAL MOTION**

CHANDLER BIGELOW III declares as follows:

1.    I am Senior Vice President and Chief Financial Officer of Tribune Company ("Tribune" or the "Company"), a corporation organized under the laws of Delaware and one of the  debtors and debtors in possession in the above-captioned chapter 11 cases

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6377); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

(collectively, the "Tribune Debtors").  Tribune is the direct or indirect parent company of the other Tribune Debtors herein.  In my capacity as Senior Vice President and Chief Financial Officer, I am generally familiar with the Company's day-to-day operations, business affairs, and books and records.

       2.    I submit this declaration (the "Bigelow Declaration") in support of (a) the Motion of Debtors and Debtors in Possession Pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2002, 6004 and 9007 for an Order (I) Approving Form and Scope of Notice of Proposed Business Combination Involving Cubs Business to Creditors and Parties-in-Interest of Tribune Debtors and Cubs Entities, (II) Approving Transaction Process and Setting Transaction Hearing and Related Deadlines, and (III) Approving Certain Investor Protections (the "Notice and Procedures Approval Motion"), (b) the Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Tribune Debtors and CNLBC to (A) Enter Into and Perform Obligations under Formation Agreement and Ancillary Agreements, (B) Contribute Cubs-Related Assets, Interests in Wrigley Field, and Related Assets Free and Clear of All Liens, Claims, Rights, Interests and Encumbrances, (C) Assume and Assign Executory Contracts; (II) Authorizing Debtor Tribune Company to Enter Into Guarantees of Debt Financing; (III) Authorizing Debtor WGN Continental Broadcasting Company to Enter Into and Perform Obligations Under Amended and Restated Broadcast Agreements; and (IV) Granting Related Relief (the "Tribune Transaction Approval Motion"), and (c) the Motion for an Order Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing Chicago National League Ball Club, LLC to (A) Enter Into and Perform Obligations Under Formation Agreement and Ancillary Agreements, (B) Effect Proposed Business Combination Involving Cubs-Related Assets, Interests in Wrigley Field, Comcast Sports Net and Related Assets Free and Clear of All Liens, Claims, Rights,

Interests and Encumbrances, and (C) Assume and Assign Executory Contracts; (II) Pledge Membership Interest in Chicago Baseball Holdings, LLC; and (III) Granting Related Relief (the "CNLBC Transaction Approval Motion") (collectively, the "Motions").

3.    This Declaration provides factual background and information concerning Tribune's decision to market the Cubs Business and ultimately to enter into the Proposed Business Combination (as such term is defined in the Motions). I have personal knowledge of the facts in this Declaration and, if called upon, would testify competently thereto.

4.    The Notice and Procedures Approval Motion requests that the Bankruptcy Court establish and approve a process by which notice of the Proposed Business Combination involving the business, assets and operations of the Chicago Cubs Major League Baseball franchise (collectively, the "Cubs Business"), together with various transactions and relief ancillary thereto, will be given to creditors and other parties-in-interest of the Tribune Debtors, and simultaneously, to creditors, executory contract counterparties, and other parties-in-interest of the five "Cubs Entities": (i) Chicago National League Ball Club, LLC ("Cubs LLC"); (ii) Tribune Sports Network Holdings, LLC; (iii) Wrigley Field Premium Ticket Services, LLC; (iv) Diana-Quentin, LLC; and (v) Chicago Cubs Dominican Baseball Operations, LLC. The Motion further requests that the Bankruptcy Court approve the transaction process involving the Cubs Business and approve certain investor protections in favor of Ricketts Acquisition LLC, the bidder for the Cubs Business (the "Bidder"). The Tribune Transaction Approval Motion and the Cubs LLC Transaction Approval Motion then each seek approval of the Bankruptcy Court for the Debtors and Cubs LLC to enter into and consummate their obligations under the Proposed Business Combination.

<u>Tribune's Decision to Market the Cubs Business</u>

5.    Tribune announced in April 2007, on the same day that it announced the completion of its strategic review process and the approval of a leveraged buyout transaction, that it intended to dispose of an interest in the Cubs Business.  The process involving the Cubs Business subsequent to that announcement that led to the Proposed Business Combination is detailed in the Martell Declaration, which I have reviewed and with which I am familiar. Tribune made the decision to enter into that process, and dispose of an interest in the Cubs Business, for several reasons.  It is for those same reasons that Tribune has elected to continue that process since the original announcement.

6.    First, and most significantly, disposing of the Cubs Business permits Tribune and its affiliates to re-focus their business efforts.  The core business of Tribune and its affiliates may be briefly described as the creation and distribution of news, entertainment, and other content through its publishing, broadcasting, and interactive businesses.  Although the Cubs Business is a very valuable asset of the Tribune group of companies, the Cubs Business is not a core business of the Tribune group of companies.

7.    Focusing on Tribune's core media businesses is a central element of the Company's current business plan.  As Tribune has sought to restructure its overall business, both before and after it and certain of its affiliates commenced their chapter 11 cases, it has attempted to re-allocate its resources to its core businesses and achieve efficiencies that go along with operating a core of complementary businesses.  Tribune has sought to effect this re-allocation by entering into transactions respecting its non-core businesses wherever achievable on terms that are in the best interests of the Tribune group of companies and the stakeholders therein (as evidenced in this situation through the support of the Creditors Committee and the Steering

4

Committee for the Proposed Business Combination). Entering into the Proposed Business Combination is consistent with, and is indeed a major step forward in, re-focusing the Tribune group of companies on its media businesses as part of Tribune's long-term business plan.

8.    The primary relationship between the Cubs Business and the rest of Tribune's businesses is largely related to the Cubs providing a source of radio and television programming for WGN. The Proposed Business Combination is attractive to Tribune because, among many other considerations, it preserves a substantial financial benefit for the Tribune group of companies by ensuring that radio and television broadcast relationships between the Cubs and WGN are maintained. Cubs baseball games are a critical component of WGN's radio and television programming, accounting for substantial portions of WGN's listeners and viewership.

9.    Under the broadcast agreements to be entered into as part of the Proposed Business Combination, WGN will continue to have radio and television broadcast rights for Cubs baseball games until October 31, 2022, subject to earlier termination under limited circumstances. These long-term media agreements ensure that essential elements of WGN's businesses and the financial benefits attending those elements are preserved in the long-term for the benefit of the Tribune Debtors' estates, preserving the key benefit of the Cubs relationship for the Tribune Debtors.

10.    Entering into the Proposed Business Combination also permits the Tribune group of companies to enhance the overall financial posture of the group because it provides the Tribune Debtors and CNLBC with substantial financial benefits not otherwise obtainable. Through the Proposed Business Combination, the Tribune group of companies will dispose of an interest in the Cubs Business and receive a cash distribution of approximately $740,000,000,

subject to certain adjustments. Professional sports franchises are businesses generally valued at present at high multiples of revenue, and Tribune believes – with the support of its major stakeholders – that it is an opportune time to lock in that value. In addition, with the acquisition of a controlling interest in the Cubs Business by the Bidder, Tribune will limit its financial obligations and responsibility for a business that is inherently capital intensive (for example, with respect to player contracts and stadium maintenance) and can be volatile depending upon a team's performance.

11.     In addition to the benefits to be received from monetizing an interest in the Cubs Business, Tribune and CNLBC will also be freed going forward from the need to commit significant new capital to the Cubs Business. In Tribune's view, maximizing the value of the Cubs Business in the future will likely require significant expenditures of new capital even beyond player contracts and stadium maintenance. Tribune believes that such capital can be better deployed in Tribune's core media businesses and in pursuing opportunities to enhance those businesses, in which Tribune may benefit from the efficiencies relating to its core businesses.

12.     In the judgment of Tribune's management and board of directors, following consultation with and with the support of the principal stakeholders in Tribune's chapter 11 cases, the Proposed Business Combination provides the Tribune group of companies with the ability to monetize a non-core business at an attractive value, generating cash proceeds that can be used in connection with the Debtors' reorganization and ongoing core businesses. The Proposed Business Combination permits the Tribune group of companies to achieve these benefits while preserving WGN's broadcast relationships with the Cubs, which will be extended for a significant period into the future. Based on these factors, Tribune's management and board

6

of directors, and the management and boards of the relevant affiliates of Tribune, believe that it is in the best interests of Tribune and its affiliates to consummate the Proposed Business Combination.

<u>Decision to Pursue the Proposed Business Combination with the Bidder</u>

13.    As described in the Notice and Procedures Approval Motion and in the Martell Declaration, when Tribune and CNLBC began their initial review of bids for the Cubs Business following submission of those bids in mid-July 2008, several principal factors were evaluated:

- the total value of the transaction;

- whether the bidder was interested in all or some part of the assets;

- the amount of equity to be contributed by the bidding group to the new entity to own the Cubs franchise;

- the likelihood that Major League Baseball would grant approval for a particular bid, based on the identity of the bidding group and the economic terms of the bid;

- any bidder-specific issues relating to the conditionality of their proposed transaction; and

- the willingness of the bidding group to work with the preferred transaction structure proposed by Tribune.

None of these factors was dispositive with respect to a particular bid.  Instead, the merits of each bid were evaluated with respect to all of the above factors viewed in their totality relative to the other bids.

14.    Thereafter, when the three "Phase II" bids for the Cubs Business were received in November 2008, Tribune evaluated those bids using the same criteria as employed for the prior evaluation, while also taking into account as principal factors (i) the net upfront after-tax cash component of the bid, (ii) the total present value of all forms of consideration for

the proposed transaction, (iii) the terms and value of ongoing radio and television broadcast relationships; (iv) the certainty that the transaction could be closed based on the likelihood for each bidder securing committed financing for the transaction, (v) the likelihood of Major League Baseball approval for the transaction, (vi) the markups of the transaction documents submitted by the bidders, and (vii) the tax benefits, if any, to be provided to Tribune and CNLBC in the event a particular bid was implemented. As with the prior evaluations, no single factor was viewed as dispositive; rather, each bid was evaluated in its totality relative to the other bids.

15.    Thereafter, the decision in January 2009 by the management of Tribune and CNLBC to pursue a transaction with the Bidder was based on the entirety of the Bidder's proposal, and was subject to finalization of the transaction documents, but the Bidder's proposal was selected for further pursuit because, among other things, (i) it offered the highest amount of cash proceeds of any of the final round of bids, (ii) the Bidder's ability to finance the transaction, including the equity component thereof, (iii) the Bidder's markups of the transaction documents suggested a high likelihood that the transaction would be able to close with a structure acceptable to Tribune, and (iv) the likelihood of Major League Baseball approval for the proposed transaction.

16.    In determining in August 2009 to enter into the Formation Agreement and the Ancillary Agreements, Tribune and CNLBC, with input from JPMSI and other advisers, considered several factors in evaluating the Bidder's offer and comparing that offer to other potential offers for the Cubs Business. These factors included, but were not limited to:

- the total value of the transaction to Tribune, as well as the amount of net after-tax cash proceeds to be received by Tribune as a result of the transaction;

- the value of the ongoing radio and television broadcast agreements to be provided to WGN as a result of the transaction;

8

- the certainty that the proposed transaction would be consummated, including the strength of the bidding parties' financing arrangements and the net worth of the bidding parties;

- the likelihood that the proposed owner or ownership group, and the proposed transactional documents and structure, would receive approval from Major League Baseball;

- the debt guarantees, if any, required to be provided by Tribune or its affiliates to a bidder; and

- tax considerations relating to the proposed transaction structure.

17.    Based on these principal factors, in the determination of Tribune and CNLBC's management and Tribune's board of directors, the Proposed Business Combination is the best overall transaction respecting the Cubs Business. Pursuant to the Proposed Business Combination, Tribune and CNLBC, as applicable, will receive the highest amount of net cash proceeds. The Bidder has obtained executed financing commitments for a proposed transaction involving the Cubs Business. The Bidder is also the party that has made the most progress towards obtaining approval of Major League Baseball for the proposed transaction.

18.    Furthermore, the structure of the Proposed Business Combination affords numerous tax and other financial benefits. An affiliate of the Bidder will provide $35 million in financial support on a subordinated basis for Newco under the Operating Support Agreement, providing assurance to Major League Baseball that the Proposed Business Combination will maintain the financial strength of the Cubs franchise, and further providing assurance that the Cubs Business will continue operations uninterrupted and that counterparties to contracts that are part of the Cubs Business will have any obligations under those contracts paid in the ordinary course. In addition, the provision of an indemnity by Bidder and certain of its affiliates in the event certain provisions of the Proposed Business Combination are breached (as described in the Tax Matters Agreement), which indemnity is secured up to $20 million by cash and cash

9

equivalents, provides certainty for Tribune and its affiliates. Beyond these points, the Proposed

Business Combination is acceptable to Tribune and CNLBC with respect to all other criteria for

the proposed transaction.

19.    Tribune and CNLBC also do not believe that there are any substantive

issues that would prevent the Bidder from receiving the necessary approvals from Major League

Baseball as an owner of the Chicago Cubs Major League Baseball franchise.

20.    Accordingly, based on all of these factors, Tribune determined that it was

in the best interests of it and its affiliates to enter into the Formation Agreement and the

Ancillary Agreements and to pursue Bankruptcy Court approval and consummation of the

Proposed Business Combination with the Bidder.

21.    In making its evaluation of bids for the Cubs Business at all stages through

the process, Tribune and CNLBC relied on, among other things, the views of their

representatives as developed during the bidding and negotiation process and on the information

and advice provided by their financial advisers (J.P. Morgan Securities Inc. ("JPMSI")), legal

advisers, and others.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of August 2009 at Chicago, Illinois.

_____
Chandler Bigelow III

CH1 4842840v 3