# **EXHIBIT 1**



January 15, 2003

**PRIVATE & CONFIDENTIAL**
Mr. Pat Shanahan
Tribune Company
435 North Michigan Ave.
Chicago, IL 60611

Dear Pat:

We are pleased that Tribune Company has retained KPMG LLP (KPMG) to provide a Tax Account Analysis Review Program (TAARP™) with respect to Tribune Company and its subsidiaries. This letter confirms the scope and related terms of your engagement of KPMG.

## Scope of Services

We will, with respect to all federal and state taxes (including, but not limited to, income, alternative minimum, excise, and employment-related taxes) for the taxable years covered by this engagement, and with respect to all payments, deposits, refunds and accounts, perform the following services:

1. Request and analyze all tax records;
2. Determine whether there are overcharges of interest and penalties;
3. Determine whether there are under-allowances of interest on refunds, credits or offsets;
4. Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties;
5. Apply global interest netting rules as appropriate;
6. Communicate the results of our findings, including preparation of submissions and communications necessary to initiate seeking corrections to the foregoing matters. In that regard, we will set forth in writing the basis for each requested correction; and
7. After obtaining your written concurrence, obtain a limited power of attorney regarding these matters to pursue administratively, on your behalf, with the Internal Revenue Service (IRS) or the appropriate agency, the corrections required with respect to items 2 through 5 above (as a refund or by means of credit, offset or abatement). Tribune may choose to pursue any or all of the corrections and/or adjustments identified with respect to items 2 through 5 above.

We will have no liability by reason of our failure to identify any correction and/or adjustment under items 2 through 5 above.



KPMG LLP KPMG LLP, a U.S. limited liability partnership, is



Mr. Pat Shanahan
Tribune Company
January 15, 2003
Page 2

### Scope of the Engagement

This engagement covers Tribune Company and subsidiaries for the taxable years ended December 31, 1994 through December 31, 1999 and The Times Mirror Inc. and subsidiaries for the taxable years beginning February 1, 1995 through December 31, 1999. Collectively, the above entities will be referred to in this document as "Tribune".

In addition to the federal tax years outlined above, we will review the states of California, Florida, Illinois, New York, New York City and Connecticut.

### Professional Fees

Our fee for the TAARP™ engagement is based on amounts recovered as the result of our review. For this engagement, our fee will be equal to 15 percent of any amount received of the first $3,000,000 and 10 percent of any amount received in excess of $3,000,000 received by Tribune as a refund, credited to its federal or state tax account, or credited against other liabilities, with a maximum fee of $500,000. Our fee is payable at such time that Tribune either receives a refund, a credit to its federal or state tax account, or a credit against other tax liabilities. Tribune will notify us immediately of all refunds or credits, offsets or abatements realized. Tribune's personnel will have discretion in determining whether any refund claim shall be filed or contested. If a claim for refund or a potential claim for refund is used by Tribune to settle or negotiate the resolution of another issue, Tribune agrees to pay KPMG the fee to which we would have been entitled had the claimed refund been received or credited. We will contact Tribune prior to any communication or filing with the IRS.

### Confidentiality

Except as may be required by law or court order, Tribune will not disclose to anyone, without KPMG's written authorization, the following:

1. The substance of any positions or ideas with respect to TAARP™ provided to Tribune by KPMG that are identified as confidential;

2. the content of any work product created with respect to TAARP™; or

3. the terms of this engagement letter.



Mr. Pat Shanahan
Tribune Company
January 15, 2003
Page 3

### Responsibilities

I will be responsible for the coordination of this engagement, including the handling of all claims for refund. Mark Ely, KPMG's National Director of IRS Practice, Procedure, and Tax Controversy will be an integral member of the engagement and will be responsible for the final review of all technical matters.

The attached Standard Terms and Conditions are made a part of this engagement letter. Please sign the enclosed copy of this letter to confirm our engagement and return it to us within 30 days. We look forward to working with you and your staff on this important initiative.

If you have any questions, please call me at (214) 840-2190.

Very truly yours,

KPMG LLP


David L. Veeder
Partner
National Director – TAARP™

Enclosure

cc: Mike Moukheiber – Tribune Company
    Ted Novak – Tribune Company
    Greg Meyer – KPMG Chicago
    Mark Ely – KPMG Washington National Tax
    Larry Brauneis – KPMG Chicago

**KPMG**

Mr. Pat Shanahan
Tribune Company
January 15, 2003
Page 4

## ACCEPTED:

**Tribune Company**

_____
Authorized Signature

_____
Title

1/29/03
_____
Date

# KPMG LLP
## Standard Terms and Conditions
## Tax Engagements

**1. Scope** KPMG shall be obligated only for services specified in the engagement letter to which these terms and conditions are attached. Should KPMG encounter issues or circumstances that are beyond the scope of this engagement, we will notify Client of such circumstances as they arise and will not incur additional expenses without Client's prior consent. Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

**2. Term** This engagement will come into full force and effect upon receipt by KPMG of the signed engagement letter. Unless terminated sooner in accordance with its terms, this engagement shall terminate on completion of KPMG's services hereunder. This engagement may be terminated by either party at any time by giving written notice to the other party.

If the engagement involves tax planning matters, the potential anticipated benefits of which are no longer possible to achieve because of legislative, regulatory, or other administrative change or judicial decision, or any combination thereof, Client's sole remedy against KPMG under this engagement is limited to a release of Client's obligation to KPMG of any fees not yet due as of the date of the enactment of the legislation, promulgation of the regulation or other administrative guidance, or date of judicial decision. If at any time during this engagement, Client decides for any other reason it is not in the best interest of Client to continue with the engagement, Client may notify KPMG to that effect. In the event of such notification, Client agrees to pay KPMG for time charges at standard hourly rates and expenses incurred to the date of notification to the extent the amount so computed exceeds payments previously made by Client for the engagement.

**3. Payment of Invoices** Client agrees, by accepting the terms of the engagement letter, to pay all invoices to KPMG within thirty (30) days of the invoice date or such other date as may be indicated in the engagement letter to which these Standard Terms and Conditions are attached. Without limiting its rights or remedies, KPMG shall have the right to halt or terminate entirely its services until payment is received on past due invoices.

**4. Cooperation** Client shall cooperate with KPMG in the performance by KPMG of its services hereunder, including, without limitation, providing KPMG with timely access to data, information and personnel of Client. Client shall be responsible for the performance of its employees and agents and for the accuracy and completeness of all data and information provided to KPMG for purposes of the performance by KPMG of its services.

**5. Reliance on Information/Authorities** KPMG will base its conclusions on the facts and assumptions that Client submits and will not independently verify this information. Inaccuracy or incompleteness of the information Client provides could have a material effect on KPMG's conclusions. In rendering its advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and ERISA as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations thereof. These authorities are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of KPMG's advice. KPMG will not update its advice for subsequent changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, unless Client separately engages KPMG to do so after such changes or modifications.

**6. Federal Confidential Communications Privilege** A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between KPMG personnel and Client regarding federal tax advice provided pursuant to this engagement. By retaining KPMG, Client agrees that KPMG is instructed to claim the privilege on Client's behalf, with respect to any applicable communications, up to and until such time as Client may waive any such privilege in writing. As disclosure of any such confidential communications to the Internal Revenue Service or other third party may cause any confidentiality privilege to be waived, Client should notify KPMG if the Internal Revenue Service or other third party requests information about any tax advice or tax advice documents provided by KPMG.

Privileged information may be used by an audit client in preparing its financial statements and, subsequently by KPMG, as its auditors, in auditing those financial statements. Professional standards require members of the audit team to discuss matters that may affect the audit with firm personnel responsible for nonaudit services, which includes tax services. The Internal Revenue Service may take the position that such use or communications results in waiver of the privilege. By executing this agreement, Client, if an audit client of KPMG, acknowledges this

Revised December 31, 2002

**KPMG LLP**
**Standard Terms and Conditions**
**Tax Engagements**

possibility and authorizes KPMG's use of such information in its audit work when required by applicable professional standards.

Client understands that KPMG makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication and agrees to hold KPMG harmless should the privilege be determined not to apply to particular communications. Client agrees to indemnify KPMG for any attorney's fees and other costs and expenses incurred by KPMG in defending the confidential privilege on Client's behalf.

### 7. Management Responsibility

KPMG will not, pursuant to this engagement, perform any management functions for Client nor make any management decisions. Client understands and agrees that pursuant to this engagement, Client's responsibilities include the following:
1. Designating a management level individual or individuals to be responsible for overseeing the services being provided;
2. Evaluating the adequacy of the services performed and any findings that result;
3. Making management decisions, including accepting responsibility for the results of the services; and
4. Establishing and maintaining internal controls, including monitoring ongoing activities.

To the extent that KPMG's relationship with Client requires auditor independence, KPMG shall not be required to, and shall not, undertake any task or function which KPMG in its sole judgment determines would impair its independence under the applicable auditor independence rules. Such rules are as defined or interpreted by the American Institute of Certified Public Accountants, the Securities and Exchange Commission, the Independence Standards Board, the state boards of accountancy, any other regulatory authority exercising competent jurisdiction over KPMG, and KPMG's professional practice policies, as the same may be amended from time to time.

### 8. Disclosure and Restriction on Use

If this engagement includes advice on the tax consequences of a transaction and the transaction reduces or defers the federal tax liability of a direct or indirect participant, Client (and each employee, representative, or other agent of Client) is expressly authorized to disclose the structure and tax aspects of the transaction to any and all persons, without limitation of any kind.

Written advice provided by KPMG to Client is for the information and use of Client only and may not be relied upon by any third party without the express written permission of KPMG.

### 9. Limitation of Liability and Indemnity

KPMG's maximum liability to Client arising for any reason relating to services rendered under this engagement shall be limited to the fees paid for these services. In the event of a claim by a third party relating to services under this engagement, Client will indemnify KPMG and its personnel from all such claims, liabilities, costs and expenses, except to the extent determined to have resulted from the intentional or deliberate misconduct of KPMG personnel.

### 10. Legal Counsel

Client should consult with and/or engage legal counsel for the purpose of advising on non-tax legal aspects of matters on which KPMG provides tax advice and drafting any legal documents and/or agreements that may be required in connection therewith. KPMG will provide Client's legal counsel with tax-related advice that is deemed necessary by Client's legal counsel to draft such documents and/or agreements. To the extent services of legal counsel or other professional service providers are required, Client is responsible for engaging and paying such service providers.

### 11. Independent Contractor

It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, partner or joint venturer of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

### 12. Entire Agreement

These terms and the engagement letter to which these terms are appended, including any Exhibits, constitute the entire agreement between KPMG and Client with respect to the subject engagement and supersede all other oral and written representation, understandings or agreements relating to the subject engagement.

### 13. Governing Law

These terms and the engagement letter to which these terms are appended shall be governed by and construed in accordance with the laws of the State of New York.

Revised December 31, 2002

**The TAARP Group, LLP**  
8333 Douglas Avenue  
Suite 1500  
Dallas, TX 75225

Austin, TX

Dallas, TX

Ogden, UT

March 6, 2009

Tampa, FL

Washington, DC

<u>**Private**</u>  
Mr. Pat Shanahan  
Tribune Company  
435 North Michigan Ave.  
Chicago, IL 60611

Dear Pat:

We are pleased Tribune Company. & Affiliated Companies (the "Company has retained The TAARP Group LLP (The TAARP Group) to provide a Tax Account Analysis Review Program (TAARP™) with respect to it, its acquired companies, and its subsidiaries for all open taxable years. This letter confirms the scope and related terms of your engagement of The TAARP Group.

**Services**

We will, with respect to all federal (and certain state) taxes (including, but not limited to, income, alternative minimum, excise and employment-related taxes) for the taxable years covered by this engagement, and with respect to all payments, deposits, refunds and accounts, perform the following services:

1. Request and analyze all tax records;
2. Determine whether there are overcharges of interest and penalties;
3. Determine whether there are under-allowances of interest on refunds, credits or offsets;
4. Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties;
5. Apply global interest netting rules as appropriate;
6. Communicate the results of our findings, including preparation of submissions and communications necessary to initiate seeking corrections to the foregoing matters. In that regard, we will set forth in writing the basis for each requested correction; and
7. After obtaining your written concurrence, obtain a limited power of attorney regarding these matters to pursue administratively, on your behalf, with the Internal Revenue Service (IRS) or the appropriate agency, the corrections required with respect to items 2 through 5 above (as a refund or by means of credit, offset or abatement). .

**The TAARP Group, LLP**

Page 2
Mr. Pat Shanahan
Tribune Company
March 6, 2009

It is understood and agreed that The TAARP Group's services (the "Engagement") may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Company. We will have no liability by reason of our failure to identify any correction and/or adjustment under items 2 through 5 above.

**Scope of Review**

The initial taxable periods under review will be for all open tax years.

**Professional Fees**

Our fee for the TAARP™ engagement is based on amounts recovered as the result of our review. For this engagement, our fee will be equal to 15 percent of the first $3 million received by the Company as a refund, credited to its federal or state tax account, or credited against other liabilities, and 10 percent of any amount in excess of $3 million. In no event will our fee for this engagement exceed $500,000.

Our fee is payable at such time that the Company either receives a refund, a credit to its federal or state tax account, or a credit against other tax liabilities. The Company agrees to pay properly submitted invoices within thirty (30) days of the invoice date. The Company will notify us immediately of all refunds or credits, offsets or abatements realized. If a claim for refund or a potential claim for refund is used by the Company to settle or negotiate the resolution of another issue, the Company agrees to pay The TAARP Group the fee to which we would have been entitled had the claimed refund been received or credited. We will contact the Company prior to any communication or filing with the IRS or the appropriate agency.

**Term**

Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination. In the event such notification occurs prior to any claims for refund being prepared and delivered to the Company, the Company agrees to pay The TAARP Group for time charges at standard hourly rates and expenses incurred to the date of termination. If claims for refund have been prepared and delivered to the Company prior to such notice,

**The TAARP Group, LLP**

Page 3
Mr. Pat Shanahan
Tribune Company
March 6, 2009

The TAARP Group will be entitled to its fee at the time the Company recovers such refund, uses such refund as a credit against other liabilities, or uses such refund to settle any dispute with the appropriate taxing authority..

**Limitation on Damages**

Neither the Company nor The TAARP Group shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to The TAARP Group for services rendered by The TAARP Group under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort or otherwise.

**Alternative Dispute Resolution**

Any dispute or claim arising out of or relating to the Engagement Letter between the parties, the services provided thereunder, or any other services provided by or on behalf of The TAARP Group or any of its subcontractors or agents to the Company or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Exhibit A, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction. Mediation, if selected, may take place at a location to be designated by the parties. Arbitration shall take place in Tampa, Florida. Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

We greatly appreciate the opportunity to submit our engagement letter to perform this review for the Company. If these terms meet with your approval, please sign one copy of this letter and return them to us in the envelope provided.

**The TAARP Group, LLP**

Page 4
Mr. Pat Shanahan
Tribune Company
March 6, 2009

If you have any questions, please call me at 972-661-2379.

Very truly yours,

The TAARP Group, LLP

David L. Veeder
*Partner*

cc:   Mark Ely – The TAARP Group, LLP

**The TAARP Group, LLP** 

Exhibit A

**Dispute Resolution Procedures**

The following procedures are the sole methodologies to be used to resolve any controversy or claim ("dispute"). If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

Any party may request mediation of a dispute by providing a written Request for Mediation to the other party or parties. The mediator, as well as the time and place of the mediation, shall be selected by agreement of the parties. Absent any other agreement to the contrary, the parties agree to proceed in mediation using the CPR Mediation Procedures (Effective April 1, 1998), with the exception of paragraph 2 which shall not apply to any mediation conducted pursuant to this agreement. As provided in the CPR Mediation Procedures, the mediation shall be conducted as specified by the mediator and as agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

*Arbitration*

Arbitration shall be used to settle the following disputes: (1) any dispute not resolved by mediation 90 days after the issuance by one of the parties of a written Request for Mediation (or, if the parties have agreed to enter or extend the mediation, for such longer period as the parties may agree) or (2) any dispute in which a party declares, more than 30 days after receipt of a written Request for Mediation, mediation to be inappropriate to resolve that dispute and initiates a Request for Arbitration. Once commenced, the arbitration will be conducted either (1) in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("CPR Arbitration Rules") as in effect on the date of the engagement letter or contract between the parties, or (2) in accordance with other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document and the CPR Arbitration Rules will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom may be designated by the parties using either the CPR Panels of Distinguished Neutrals or the Arbitration Rosters maintained by any JAMS Office in the United States. If the parties are unable to agree on the composition of the arbitration panel, the parties shall follow the screened selection process provided in Section B, Rules 5, 6, 7, and 8 of the CPR Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitration panel shall issue its final award in writing. The panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the CPR Arbitration Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.