# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Date: November 4, 2009 at 4:00 p.m.** |
| | **Hearing Date: TBD** |
| | **Related to Docket Nos. 1837, 2017 and 2262** |

## THIRD QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF JUNE 1, 2009 THROUGH AUGUST 31, 2009

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide Professional Services to: | **Debtors** |
| Date of Retention: | **February 20, 2009 (nunc pro tunc to December 8, 2008)** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Period for Which Compensation
and Reimbursement is Sought:                **June 1, 2009 through August 31, 2009**

Amount of compensation sought as actual,    **$4,513,018.00**
reasonable and necessary:

Amount of Expense Reimbursement sought as   **$99,429.34**
actual, reasonable and necessary

This is a(n):  _____ monthly      __X__ interim      _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee
applications, including time expended for review and response to fee auditor materials, during
this Third Interim Fee Period is approximately 406.10 hours and the corresponding
compensation requested is approximately $125,888.00.

### Prior Interim Applications

| Date Filed | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| 4/15/09 | 12/8/08 – 2/28/09 | $3,897,043.25 | $165,360.71 | | |
| 7/16/09 | 3/1/09-5/31/09 | $4,209,274.75 | $105,524.36 | | |

46429/0001-6057911V1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| | Jointly Administered |
| Debtors. | **Objection Date: November 4, 2009 at 4:00 p.m.** |
| | **Hearing Date:  TBD** |
| | **Related to Docket Nos. 1837, 2017 and 2262** |

### THIRD QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF JUNE 1, 2009 THROUGH AUGUST 31, 2009

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

3

"Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the

Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of

Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim

Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and

Establishing Related Procedures for Compensation and Reimbursement of Expenses for

Professionals and Consideration of Fee Applications (the "Fee Examiner Order") for approval of

interim compensation and reimbursement of expenses for the third quarterly period from June 1,

2009 through August 31, 2009 (the "Third Interim Fee Period").  In support of the Application,

Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain

of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code.  An additional Debtor, Chicago National League Ball Club, LLC, filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the Debtors

comprise 112 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On March 19, 2009, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.  [Docket No. 546]

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application sets forth the following scope of services, which were performed during the Third Interim Fee Period:

(a)      to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)      to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

46429/0001-6057911V1

(c)    to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

(e)    to perform any and all other legal services for the Debtors in connection with both these chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)    to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, <u>nunc pro tunc</u> to the Petition Date, was approved by this Court by order dated February 20, 2009 (Docket No. 435).

8.    The Interim Compensation Order and the Fee Examiner Order (together, the "<u>Fee Orders</u>"), provide all professionals retained in these cases pursuant to section 327, 328,

or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide

to the Fee Examiner monthly applications for interim allowance of compensation for services

rendered and reimbursement of expenses incurred, together with the time entries and itemized

expenses (the "Monthly Fee Application").  The notice parties specified in the Fee Orders (the

"Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to

such Monthly Fee Application (the "Objection Deadline").  Upon expiration of the Objection

Deadline, the applicable Case Professional must certify in writing to the Debtors that no

objection or a partial objection has been filed with the Court relative to that professional's

Monthly Fee Application, whichever is applicable, whereupon the Debtors are authorized to pay

such professional an amount equal to the lesser of (i) 80 percent of the fees and 100 percent of

the expenses requested in the Monthly Fee Application or (ii) 80 percent of the fees and 100

percent of the expenses not subject to an objection.

        9.     Pursuant to the procedures set forth in the Fee Orders, Sidley prepared,

filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee

Applications for the periods of June 2009, July 2009 and August 2009, which Monthly Fee

Applications are incorporated herein by reference.[2]  Sidley has accordingly submitted all of its

Monthly Fee Applications for the Debtors' chapter 11 cases for this Third Interim Fee Period.

        10.    In addition to the Monthly Fee Applications, beginning with the three-

month period ending February 28, 2009, and each three-month period thereafter, all Case

Professionals must file with the Court and serve on the Notice Parties interim applications for

allowance of compensation and reimbursement of expenses of the amounts sought in the

Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request").

---

[2] The docket numbers of Sidley's Monthly Fee Applications for June 2009, July 2009, and August 2009 are 1837, 2017, and 2262 respectively.

Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. This Application represents the third Quarterly Fee Application Request that Sidley has filed with the Court in connection with these chapter 11 cases, and it covers the period from June 1, 2009 through August 31, 2009, both dates inclusive.

<u>**RELIEF REQUESTED**</u>

11.    By this Application, Sidley respectfully requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Third Interim Fee Period.

12.    The amount of fees sought for services rendered during the Third Interim Fee Period is $4,513,018.00, representing 8,772.00 hours in professional and paraprofessional time for such services. Reimbursement of actual, necessary expenses incurred by Sidley during the Third Interim Fee Period in connection with these services is requested in the amount of $99,429.34. Sidley seeks the interim allowance of such compensation, as well as this Court's authorization for payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.    The hourly rates charged by Sidley professionals and paraprofessionals during the Third Interim Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases. The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2009 and continuing until Sidley's next Firm-wide rate adjustment will be $925 per hour. (<u>See</u> Supplemental Affidavit (Second) of James F. Conlan in

Support of Application for an Order Authorizing the Employment and Retention of Sidley

Austin LLP as Attorneys for the Debtors and Debtors in Possession at ¶ 3, Docket No. 424.)

Sidley believes these rates are comparable to those charged by the bankruptcy and other

professionals of other firms of comparable size, stature, and experience.

       14.     Sidley has received no payment and no promises for payment from any

source other than the Debtors for services rendered in these chapter 11 cases.  There is no

agreement between Sidley and any other party for the sharing of compensation to be received for

the services rendered by Sidley in these chapter 11 cases.  All professional and paraprofessional

services for which compensation is sought herein were rendered solely on behalf of the Debtors

in these cases.

## SERVICES RENDERED

       15.     Sidley has rendered substantial services to the Debtors in connection with

these chapter 11 cases during the period covered by this Application, both in its capacity as

general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation,

and transactional counsel to the Debtors in their ordinary course of business.  The services

performed by Sidley's professionals and paraprofessionals during the period covered by this

Application were necessary and have directly contributed to the effective administration of the

Debtors' chapter 11 cases.

       16.     A breakdown of the total hours expended by each professional on all

matters and a breakdown of amounts sought by each matter category covered herein are included

as a part of Attachment A to this Application, as required by Local Rule 2016-2.  A detailed

description of the services provided to the Debtors is incorporated by reference to the Monthly

Fee Applications previously filed by Sidley with the Court.  The following is a summary of the

activities performed by Sidley's professionals and paraprofessionals during the Third Interim Fee Period:

**A.    FCC Matters (20100): Hours:  433.00   Fees: $163,979.50**

17.    During the Third Interim Fee Period, Sidley's professionals continued to represent the Debtors' broadcast and cable television stations as communications regulatory counsel.  In this capacity, Sidley's professionals and paraprofessionals handle all aspects of regulatory compliance, including compliance with all technical and operational rules and regulations of the Federal Communications Commission ("FCC"); transactional matters that require FCC approval; seeking waivers of the newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal applications and license modification applications, and responding to various complaints filed with the FCC.  Additionally, Sidley represents Tribune in appeals to the U.S. Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.    Effective June 12, 2009, Congress mandated that all full power television stations cease broadcasting analog signals and begin broadcasting over-the-air signals in digital only ("DTV").  As noted in prior Applications, Sidley has long represented Tribune stations in the policy, technical, and operational issues arising from this historic, unprecedented conversion. Sidley continued to advise the Debtors on the FCC's evolving rules and policies governing the build-out and operation of DTV stations, to advocate before the FCC to waive and/or modify these rules and policies to conform with operational realities, as well as to urge the FCC on behalf of the Debtors to authorize the use of new technologies to enhance the ability of broadcasters to deliver reliable DTV signals.

19.    The DTV transition imposed substantial notification, licensing, and reporting requirements, as broadcast stations implemented the digital signal, updated their call-

10

signs, and terminated their analog signals.  Sidley's professionals and communications specialist

drafted and filed all applications, reports, notifications, and other materials that were required to

be filed with the FCC in connection with the Debtors' 23 television stations and cable

"Superstation" WGN America.

**B.      Fee Applications (30390): Hours:  406.10   Fees: $125,888.00**

20.      Sidley's professionals and paraprofessionals drafted and filed Sidley's

fifth, sixth, and seventh monthly statements and reviewed and complied with the Court's Fee

Orders.  In addition, Sidley prepared and filed its second Quarterly Fee Application Request to

this Court.  In mid-July, Sidley received and reviewed the Fee Examiner's preliminary report

concerning Sidley's first Quarterly Fee Application Request, totaling 472 pages.  Sidley's

professionals and paraprofessionals worked in cooperation with the Fee Examiner to prepare an

initial response that addressed the Fee Examiner's questions.

**C.      Executory Contracts and Leases (30410): Hours:  437.60    Fees: $237,528.00**

21.      The Debtors in these cases are party to approximately 45,000 executory

contracts and unexpired leases.  During the Third Interim Fee Period, Sidley's professionals

continued their analysis and review of such contracts and leases and assessed the legal

implications of assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

Sidley's professionals have also continued to address numerous inquiries from contract

counterparties concerning the status of their contracts and leases.

(a)      Executory Contracts

22.      Sidley's professionals have assisted the Debtors with obtaining court

approval to assume, or to assume and assign, certain executory contracts on terms favorable to

the Debtors, including: (i) the ratings services agreements between The Nielsen Company and

each of the Debtors that operates broadcast and cable television stations, on June 9; (ii) various

11

syndicated program agreements entered into with King World Productions, Inc., and CBS

Studios, Inc., and/or CBS Television Distribution and CBS Studios, Inc. (collectively, "CBS"),

on July 14; (iii) the local advertising sales agreements between Tribune Media Services and

certain local newspapers, which were subsequently assigned to Advantage Newspaper

Consultants, on July 24; and (iv) Tribune Company and Chicago Tribune Company's joint

venture interest in Metromix, LLC, on August 10.

      (b)    Unexpired Leases

     23.    During the Third Interim Fee Period, Sidley's professionals filed and

obtained orders granting the Debtors' Fourth and Fifth Omnibus Motions to reject commercial

real property leases in certain office, studio, operational, and distribution spaces which were no

longer needed by the Debtors. The Fourth Omnibus Motion requested the authority to reject

thirty (30) unexpired leases of nonresidential real property and three (3) related subleases. The

Court granted the relief requested in the Fourth Omnibus Motion by order signed June 24, 2009.

The Fifth Omnibus Motion requested the authority to reject two (2) leases and a related utility

contract. The Court granted the relief requested in the Fifth Omnibus Motion by order signed

September 2, 2009. The Fourth and Fifth Omnibus Motions represent a combined estimated

annual cost savings to the Debtors of approximately $11.7 million.

     24.    In addition, Sidley's professionals filed and obtained orders granting the

assumption of 225 commercial real property leases that the Debtors, in their business judgment,

determined were essential to their ongoing business operations. The relief requested in the Lease

Assumption Motion was granted by order signed June 25, 2009.

     25.    Finally, Sidley's professionals assisted the Debtors in resolving several

outstanding issues with the Debtors' landlord at a property located at 2 Park Avenue, New York,

New York. Although the Debtors had validly rejected the underlying lease in the Fourth

Omnibus Motion and had vacated the premises on June 29, the landlord moved the Bankruptcy

Court to compel the Debtors to pay July rent and other payments.  Sidley's professionals

reviewed and filed a response to this demand, and, as a protective measure, filed a separate

motion for the authority to abandon certain personal property at the premises, on shortened

notice.  On July 16, 2009, the Court held a hearing on the landlord's motion and supplement, the

Debtors' objection, and the landlord's reply.  Thereafter, Sidley's professionals worked with

counsel for the landlord to reach a resolution of the issues raised in the pleadings as well as a

global resolution of issues relating to the lease and the Debtors' occupancy of the premises.  An

order approving the abandonment of property was entered by the Bankruptcy Court on July 28,

2009 and an order approving the parties' stipulated resolution of the matter was entered by the

Bankruptcy Court on August 10, 2009.

### D.    Vendor Issues (30420): Hours:  82.30    Fees: $42,332.50

26.    Sidley's professionals continued to expend substantial efforts to address

vendor issues in these chapter 11 cases.  For example, Sidley's professionals continued to

address issues concerning postpetition vendor performance, which required Sidley's

professionals to review existing contracts between the Debtors and relevant vendors and, in some

cases, arrange and participate in calls with the Debtors' business personnel, vendors, and

vendor's counsel to promote continued vendor performance.

### E.    Use/Sale/Lease of Assets (30430): Hours:  12.7    Fees: $7,832.50

27.    Sidley's professionals remained engaged in negotiating and documenting

transactions for the use, sale, and lease of assets on behalf of the Debtors, both in connection

with these chapter 11 cases and with Sidley's ongoing representation of the Debtors in their

ordinary course of business.  For example, beginning in mid-August, Sidley's professionals

coordinated with the Debtors and the Debtors' outside real estate counsel with respect to the sale

13

46429/0001-6057911V1

of certain "excess" property owned by the Debtors in Hicksville, New York.  A section 363

motion for the sale of this property was filed on September 4, 2009.  Sidley's professionals also

reviewed and analyzed proposed programming contracts on behalf of certain of Tribune's

broadcast subsidiaries, in the ordinary course of the Debtors' business.

**F.      DIP Financing/Cash Collateral (30440): Hours:  6.70      Fees: $3,795.00**

28.      During the Third Interim Fee Period, Sidley's professionals engaged in the

review and analysis of the Debtors' postpetition financing facility and advised the Debtors'

senior management with respect to compliance with the facility's terms governing various

proposed business and financial transactions.  Sidley's professionals and paraprofessionals also

completed necessary post-closing activities in connection with the April amendments to the

Debtors' postpetition financing facility and letter of credit agreement, including preparing and

circulating transaction closing books to the Debtors' senior management, Barclays, and

Barclays' legal professionals.

**G.      Insurance Matters (30450): Hours:  52.80   Fees: $22,521.50**

29.      Sidley's professionals worked with the Debtors, their outside insurance

counsel, and various insurance providers to resolve certain insurance coverage issues and to

advise upon the impact of the chapter 11 filing on the Debtors' insurance and risk management

procedures.  Sidley's professionals also reviewed and addressed various legal issues arising in

connection with the Debtors' primary and excess liability policies covering certain prepetition

lawsuits pending against the Debtors, including the Neil, Faggio, and Gutman matters.

**H.      Committee-Related Matters (30460): Hours:  1,026.40  Fees: $430,995.50**

30.      Sidley's professionals continue to work diligently to maintain a

cooperative and responsive relationship with the Debtors' major creditor constituencies,

including the Committee and the steering committee comprised of the Debtors' senior lenders

46429/0001-6057911V1

(the "Steering Committee").  During the Third Interim Fee Period, Sidley's professionals

conferred on pending motions and case administration issues and participated in numerous

conference calls and meetings with the Committee, Steering Committee, and their professionals.

During this Third Interim Fee Period, Sidley participated in separate, regularly scheduled weekly

conference calls with the professionals of the Committee and the Steering Committee in order to

address case issues as they arose and to apprise the Committee and the Steering Committee of

the progress being made in these chapter 11 cases and with the development of the Debtors' plan

of reorganization and disclosure statement.

        31.     Sidley's team of professionals and paraprofessionals expended a

substantial amount of time throughout the Third Interim Fee Period responding to requests for

documents and information from the Committee and their professionals relating to the Debtors'

prepetition transactions, specifically the series of transactions that returned Tribune to private

ownership in 2007 (the "Leveraged ESOP Transactions").  In connection with the Committee's

formal document requests and pursuant to an agreement between the Debtors and the Committee

to cooperate with such requests, Sidley's professionals have collected and reviewed thousands of

pages documents for relevance and privilege, including corporate documents, financial records,

board of directors' minutes and resolutions, and electronic computer files from certain of the

Debtors' employees, for production to the Committee.  The collection, review, and analysis of

documents in connection with the Committee's requests are substantial undertakings, requiring a

team of professionals, paraprofessionals, litigation support specialists, and staff.  Sidley's

professionals have also received and reviewed documents produced by third party entities that

were responsive to document requests from the Committee and have assisted with coordinating

the document productions of third parties.  Throughout this process, Sidley's team has worked

46429/0001-6057911V1

closely with the Debtors' senior management to advise on the legal issues implicated by the Committee's document production requests.[3]

### I.    Litigated Matters (30470): Hours:  914.80  Fees: $530,878.50

32.    During the Third Interim Fee Period, Sidley's professionals represented the Debtors in a variety of litigated and contested matters.  The Debtors were involved in over a hundred active or threatened lawsuits as of the Petition Date, all of which have been stayed pending these chapter 11 cases.  Sidley's professionals continued their efforts in advising the Debtors' internal legal department, outside counsel, opposing counsel, and claimants as to the effect of the automatic stay on pending litigation and the bankruptcy claims process.

33.    As in most chapter 11 cases, the Debtors are faced with periodic requests for relief from stay.  The Debtors have received thirteen (13) requests for relief from stay since the commencement of these cases, five (5) of which were filed and/or resolved during the Third Interim Fee Period.  Of these, the three (3) motions for relief from stay filed by litigation claimants Gutman, Clement, and Beatty were contested and heard by the Court at the Debtors' omnibus hearings.  Sidley's professionals in the bankruptcy and litigation practice groups devoted time to assess and respond to each of the motions, and to prepare and present oral arguments to the Court with respect to the three contested motions.

34.    Sidley's professionals continued to advance the adversary proceeding to determine Tribune Media Services, Inc.'s rights with respect to the ownership of the rights to the Dick Tracy comic book character, an asset the Debtors believe may be of substantial value (the "Beatty Adversary," Adv. No. 09-50486).  As referenced above, Beatty filed a motion for relief from the automatic stay, seeking to continue the underlying prepetition litigation in California,

---

[3] In future monthly and quarterly fee application requests, such services will appear in the Litigated Matters category.

which motion was contested by Debtor Tribune Media Services Inc. A preliminary hearing was held on June 25, 2009 to hear the stay relief motion in conjunction with Beatty's motion to stay discovery in the adversary proceeding. Following oral arguments, the court directed Beatty to produce certain documents relating to the adversary proceeding and authorized the depositions of Beatty and his business manager. Additional oral argument on the stay relief motion was presented to the Court at a subsequent hearing on July 28, at which time the Court took the matter under advisement.

35.    With respect to the adversary proceeding seeking the stay of the ERISA class action suit pending in the United States District Court for the Northern District of Illinois (the "Neil Adversary"), counsel for the Debtors and counsel for the putative class advised the Court on June 25, 2009 of the parties' agreement that the underlying lawsuit would go forward solely with respect to briefing and decision on a motion to dismiss for failure to state a claim upon which relief could be granted. In conjunction therewith, Sidley's professionals and the Debtors' outside insurance coverage counsel negotiated the terms by which the Debtors' primary fiduciary liability insurance carrier would agree to advance the defense costs associated with the motion to dismiss to the Debtors' directors and officers named in the suit. Sidley's professionals prepared and filed the Debtors' motion to authorize the payment and advancement of insurance proceeds on August 17, and the motion was granted on September 2.

36.    On August 26, Sidley received, reviewed, and analyzed the Rule 2004 motion of Law Debenture Trust Company of New York ("Law Debenture"), which sought leave to conduct independent discovery relating to the Leveraged ESOP Transactions. Sidley's analysis and advice to the Debtors with respect to the Law Debenture motion intersected with the Committee's requests for production of documents relating to the Leveraged ESOP Transactions,

17

discussed *supra*, and the development of the Debtors' plans of reorganization, discussed *infra*

and thus required the participation and coordination of the Sidley professionals responsible for

handling each of these other matters.

**J.      Travel Time (30480): Hours:  171.30   Fees: $60,965.00**

37.      During the Third Interim Fee Period, Sidley's professionals spent time

traveling to Wilmington, Delaware to attend the Debtors' omnibus hearings.  In addition,

Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and

various creditor constituencies.  The hours reflect non-working travel time and the fees requested

in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**K.      Labor Issues (30490): Hours:  25.90   Fees: $11,320.50**

38.      Approximately 15% of the Debtors' employees are represented by labor

unions.  During the Third Interim Fee Period, Sidley's professionals continued to analyze and

address a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors'

collective bargaining agreements, multiemployer pension plans, and obligations thereunder.

39.      In addition, Sidley's professionals have continued to work with the

Debtors to respond to various bankruptcy-related issues and questions raised by some of the

Debtors' labor unions.  Specifically, one of the Debtors' labor unions filed formal objections to

the Debtors' proposed 2009 Management Incentive Plan and the payment of bonuses pursuant to

the 2008 Management Incentive Plan, discussed *infra*.  Sidley's attorneys reviewed and

researched the legal issues raised by the union's objections, prepared and filed responsive

pleadings, and participated in discovery propounded by the union.

**L.      Plan and Disclosure Statement (30500): Hours:  1,845.30   Fees: $1,072,107.00**

40.      During the Third Interim Fee Period, Sidley's professionals made

significant progress in the development of the Debtors' proposed joint plan of reorganization and

18

disclosure statement. Sidley's professionals met and conferred on a regular basis with the

Debtors' senior management to evaluate, analyze, and formulate the structure and terms of the

Debtors' plan. Sidley's professionals continued to prepare the Debtors' disclosure statement,

which entailed the review and analysis of materials relevant to the Debtors' past and present

business operations, significant prepetition liabilities, and events leading up to and since the

filing of these chapter 11 cases. Sidley's professionals also commenced the preparation of

solicitation materials in connection with balloting and voting on the plan.

      41.    This process involved substantial ongoing communications, meetings, and

negotiations with the professionals for the Committee and Steering Committee and other creditor

constituencies. During this period, detailed term sheets of the Plan were shared with the

Committee and Steering Committee, subject to appropriate confidentiality agreements.

Following a dialogue regarding the term sheet, a draft plan of reorganization was shared with

each of these Committees.

      42.    In addition, Sidley's professionals in the bankruptcy, corporate, tax,

litigation, and FCC regulatory practice groups collaborated on researching and analyzing a

variety of legal issues raised by the plan, confirmation, and eventual emergence. Specifically,

and in connection with the Committee's ongoing investigation of the Leveraged ESOP

Transactions and the discovery sought by other creditors relating thereto discussed *supra*,

Sidley's professionals undertook a substantial review and analysis of documents from the

company and third parties to evaluate the impact this complex transaction may have on the

Debtors' plan and the confirmation process.[4]

---

[4] In future monthly and quarterly fee application requests, such services will appear in the Litigated Matters category.

43.    In aid of the Debtors' ongoing efforts to develop its plan of reorganization, on June 24, 2009, Sidley's professionals filed a motion requesting a further extension of the Debtors' exclusive period within which to file a chapter 11 plan and solicit acceptances thereto (the "Second Exclusivity Motion").  In the Second Exclusivity Motion, the Debtors requested an extension of the exclusivity period through and including November 30, 2009, and the extension of the exclusive right to solicit acceptance of such plan through and including March 15, 2010. By order entered August 11, 2009, the Court granted the relief requested in the Second Exclusivity Motion.

**M.    Professional Retention (30510): Hours:  127.40  Fees: $59,975.50**

44.    The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing the litigation, real estate, tax, accounting, and other needs of their business operations. During the Third Interim Fee Period, Sidley's professionals assisted the Debtors with filing applications for the retention of Dow Lohnes, PLLC, as special counsel for certain FCC regulatory matters; Ernst & Young LLP, to provide valuation and business modeling services and market survey services; and Deloitte & Touche, LLP to provide certain financial, accounting and advisory services.  Sidley's professionals also continued to assist the Debtors' existing professionals in filing supplemental disclosures where necessary.

45.    In addition, Sidley's professionals prepared and filed five (5) supplements to the list of ordinary course professionals ("OCP") and coordinated with the Debtors' legal department and financial advisors to prepare and file monthly and quarterly reports of proposed payments to OCPs.  Sidley's professionals responded to numerous inquiries from the Committee with respect to such OCP reports.

46429/0001-6057911V1

**N.**    **Tax Issues (30520): Hours: 271.50  Fees: $158,243.50**

46.    During the Third Interim Fee Period, Sidley's professionals reviewed and analyzed a variety of tax issues on behalf of the Debtors, both arising from and in connection with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in the ordinary course of the Debtors' business.  For example, Sidley's professionals attended to the consideration and analysis of the tax implications of proposed transactions, handled appeals of tax assessments, and communicated with taxing authorities.

**O.**    **Claims Processing (30530): Hours: 230.10  Fees:  $116,967.50**

47.    During the Third Interim Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases, covering the full spectrum of potential liabilities.  June 12, 2009 was the bar date for filing proofs of claim, and by that date the Debtors had received nearly 6,000 claims.  Sidley's professionals assigned to handle claims-related matters established weekly conference calls with the financial advisors of Alvarez and Marsal in order to coordinate the processing of the proofs of claim filed in these cases, including evaluating the legal sufficiency of the claim and possible objections thereto.

48.    In the latter half of August, Sidley's professionals began the preparation of the Debtors' first, second, third, and fourth omnibus objections to claims, asserting non-substantive objections to 256 claims on various grounds.  These objections were filed on September 4, 2009, and sustained on October 2, 2009.  The total value of the claims expunged as a result of these efforts was $122,291,770.84.

**P.**    **Business Operations (30550): Hours: 920.00  Fees: $398,456.00**

49.    During the Third Interim Fee Period, Sidley's professionals have continued to work diligently with the Debtors to implement the Debtors' "go forward" business

21

plan. Additionally, Sidley continued to represent the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business.

      50.    On July 29, 2009, after extensive negotiations with the Office of the United States Trustee, the Debtors obtained a final order granting a permanent waiver of the section 345(b) requirements regarding the Debtors' investment accounts and cash collateral account pursuant to the letter of credit facility. Since such date, Sidley's professionals have assisted the Debtors in preparing monthly reports to the Office of the United States Trustee concerning the Debtors' Treasury money market funds.

**Q.**    **Case Administration (30560): Hours: 362.30 Fees: $176,151.50**

      51.    During the Third Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings to the Debtors, the Committee, the United States Trustee, and other interested parties, and maintaining a schedule of critical dates and deadlines. On a periodic basis during this Third Interim Period, Sidley's professionals participated in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of each hearing. Sidley's paraprofessionals are responsible for monitoring the docket for all filed pleadings and preparing and distributing a daily status report to Sidley professionals and the Debtors' management.

**R.**    **Creditor Communications (30570): Hours: 16.80 Fees: $9,175.00**

      52.    Throughout the Third Interim Fee Period, Sidley's professionals have responded to numerous inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies.

**S.**    **Bankruptcy Schedules (30580): Hours:  32.50  Fees: $18,892.50**

53.    On June 12, 2009, the Debtors filed their second amended schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") with respect to each of the Debtors.  The preparation of the Schedules and Statements and the amendment thereto has been a significant and time consuming undertaking for the Debtors and their professionals during the Second and Third Interim Fee Periods, entailing the collection, review and categorization of thousands of documents and intensive coordination with all of the Debtors' various business units.

**T.**    **Employee Issues (30590): Hours:  631.10  Fees: $390,684.50**

54.    During the Third Interim Fee Period, Sidley's professionals in the bankruptcy and employment & labor practice groups devoted substantial time reviewing existing and proposed employee incentive programs and assisting the Debtors with their proposed implementation going forward.  Specifically, Sidley's professionals worked in cooperation with the Debtors and Mercer (U.S.), Inc. ("Mercer"), an independent compensation consultant, to formulate and present to the Court a motion for the authority to implement a 2009 management incentive plan ("MIP") and to make payouts for earned 2008 MIP awards to certain of the Debtors' senior executives (collectively, the "2009 MIP Motion").

55.    The 2009 MIP Motion was filed on July 22, 2009.  The motion to approve the 2009 MIP was heavily contested by one of the Debtors' labor unions (whose objection was joined by several other unions).  This union argued, among other things, that the proposed 2009 incentive plan did not comply with Bankruptcy Code section 503(c), which in relevant part limits "retention payments" made to "insiders" and requires that payments outside the ordinary course be justified by the facts and circumstances.  The Debtors disputed the union's contentions.  The United States Trustee requested further factual support by the Debtors to support the

23

performance targets selected for the 2009 MIP and to justify the proposed bonus plan. Neither the union nor the United States Trustee objected to the proposed payouts of 2008 MIP awards.

56.    Sidley's professionals engaged in the review and analysis of the objections and responses that were filed to the 2009 MIP Motion and researched various legal and factual issues raised therein. Sidley's professionals prepared and filed numerous responsive pleadings in support of the relief requested, all of which required the substantial efforts of Sidley's professionals and paraprofessionals assigned to handle to matter. On or about August 5, 2009, Sidley's professionals filed a motion for protective order in response to the discovery propounded by the foregoing labor union. Following an expedited hearing on the issue on August 11, 2009, the Court granted the relief in part, providing that any documents produced by the Debtors in response to such discovery requests would be subject to conditions of professionals-eyes-only confidentiality.

57.    Thereafter, Sidley's professionals assisted the Debtors in responding to several rounds of union discovery requests in connection with the 2009 MIP Motion, including, without limitation, depositions of union and Debtor fact and expert witnesses as well as document discovery. The Debtors and the union also each filed a motion in limine to exclude the other party's proposed expert witness. Sidley's professionals assisted the Debtors in filing such motion and in preparing a response to the union's motion in limine. Sidley's professionals also assisted the Debtors in preparing, and in negotiating with the union and the United States Trustee, a joint pretrial memorandum pursuant to the Court's requirements. The 2009 MIP Motion and the parties' respective motions in limine were heard by the Court as contested matters on September 25, 2009. On September 30, the Court entered an order authorizing the

24

Debtors to pay the earned 2008 MIP awards to eligible executives. The Court has taken all matters relating to the 2009 MIP under advisement.

58.    In addition to the foregoing, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, responded to numerous information requests of current and former employees, assembled and analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**U.    Asset Disposition (30600): Hours:  765.40  Fees: $474,328.50**

59.    During the Third Interim Fee Period, Sidley's professionals continued to advise the Debtors in connection with the proposed disposition of the Chicago Cubs Major League Baseball franchise and related assets (the "Cubs Transaction"). On August 21, following successful negotiations with Ricketts Acquisition LLC ("Ricketts"), Tribune Company and certain of its non-debtor subsidiaries (the "Cubs Entities") entered into that certain Formation Agreement and related ancillary agreements with Ricketts, which set forth the material terms for the disposition of the Cubs-related business in a transaction valued at more than $700 million.

60.    Sidley's professionals expended a considerable amount of time and effort to advise the Debtors in connection with the structuring of a Bankruptcy Court approval process for the Cubs Transaction. On August 24, Sidley's professionals filed a motion with the Court to seek authority for Tribune Company to enter into the Cubs Transaction, which was approved by the Court on September 24, 2009. Simultaneously, Sidley's professionals engaged in significant work to prepare the entity that held most of the Cubs' assets, Chicago National League Ball Club, LLC, for its own chapter 11 filing, which occurred on October 12, 2009. Substantial work relating to the Bankruptcy Court approval process has continued into the months of September and October, 2009. Throughout the process, Sidley's professionals have apprised the

25

professionals for the Committee and the Steering Committee, and the Office of the United States Trustee on the status of this matter.

<div align="center">

**EXPENSES INCURRED**

</div>

61.    Sidley has incurred expenses of $99,429.34 in connection with its services rendered to the Debtors during the Third Interim Fee Period.  These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, and in-house document production.  Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in this case, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in this case.

62.    Sidley submits that all travel expenses incurred during the period covered by this Application were necessary and reasonable under the circumstances.  In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

63.    A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of Attachment B hereto.

<div align="center">

**REVIEW OF APPLICABLE LOCAL RULE**

</div>

64.    The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

<div align="center">

26

</div>

Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## NOTICE

65. Notice of this Application has been served upon the Notice Parties specified in the Fee Orders. In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

66. Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $4,513,018.00 and reimbursement of expenses in the amount of $99,429.34, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this third Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: October 15, 2009

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Janet E. Henderson
Kenneth P. Kansa
Jillian K. McClelland
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION