UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TRIBUNE COMPANY, et al., | ) Case No. 08-13141 (KJC) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Related to Docket Nos. 15, 60, 78, 191 |
| | )                            and 205 |

Hearing Date:
    November 17, 2009 at 11:00 a.m.
Objection Deadline:
    November 10, 2009 by 4:00 p.m.

**MOTION OF CENTERPOINT ENERGY SERVICES, INC. FOR ALLOWANCE AND PAYMENT OF § 503(b)(9) ADMINISTRATIVE EXPENSE CLAIM**

CenterPoint Energy Services, Inc. ("CES"), a creditor and party-in-interest in the Chapter 11 cases of the above-captioned debtors in possession (the "Debtors"), by its undersigned counsel, hereby files this *Motion Of CenterPoint Energy Services, Inc., For Allowance And Payment Of § 503(b)(9) Administrative Expense Claim* (the "Motion") and in support thereof respectfully sets forth the following:

## Facts

### Procedural Facts

1.  On December 8, 2008 (the "Petition Date"), Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are now pending with

SL1 955779v1/000000.00000

this Court.[1]  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. On December 18, 2008, The United States Trustee appointed an Official Committee of Unsecured Creditors in the Debtors' bankruptcy cases.

3. On January 13, 2009, the Court entered the *Order Granting The Debtors' Motion For An Order Authorizing, But Not Directing, The Debtors To Pay Certain Obligations Arising In Connection With Goods Received By The Debtors Within The Twenty Day Period Before The Petition Date* (the "Order").  Pursuant to the Order, the Court, *inter alia*, authorized, but not directed, the Debtors to pay, in their discretion and in the reasonable exercise of their business judgment, obligations arising under Section 503(b)(9) of the Bankruptcy Code as they become due from vendors that continue to supply post-petition goods to the Debtors on similar trade terms in effect prior to the Petition Date.

**BACKGROUND CONCERNING DEBTOR TRIBUNE COMPANY**

4. Prior to the Petition Date, Debtor Tribune Company purchased natural gas commodity from CES in the ordinary course of Debtor's business and pursuant to the terms and conditions set

---

[1] Pertinent to this Motion and included among the Debtors are the following entities: (a) Tribune Company, Case No. 08-13141; (b) Chicago Tribune Company, Case No. 08-13152; and (c) WGN Continental Broadcasting Company, Case No. 08-13252.

forth in the *Base Contract For Sale And Purchase Of Natural Gas*, dated August 7, 2006, executed by and between CES, as Seller, and Tribune Company, as Buyer (the "Tribune Base Contract"). Under Section 14.5 of the Tribune Base Contract, CES and Debtor Tribune Company expressly agreed that the terms and conditions of the Tribune Base Contract shall be construed and applied under the laws of the State of Minnesota.

5.  During the twenty (20) days preceding the Petition Date and pursuant to the Tribune Base Contract, Debtor Tribune Company received $39,979.24 worth of goods in the form of natural gas that Debtor Tribune Company purchased and that CES sold to Debtor Tribune Company in the ordinary course of business.

6.  As of the Petition Date, Debtor Tribune Company owed CES $93,012.48 for unpaid pre-petition natural gas commodity, $39,979.24 of which was received by the Debtor within 20 days of the Petition Date.

**BACKGROUND CONCERNING DEBTOR CHICAGO TRIBUNE COMPANY**

7.  Prior to the Petition Date, Debtor Chicago Tribune Company purchased natural gas commodity from CES in the ordinary course of Debtor's business and pursuant to the terms and conditions set forth in the *Base Contract For Sale And Purchase Of Natural Gas*, dated August 7, 2006, executed by and between CES, as Seller, and Chicago Tribune, as Buyer (the "Chicago Tribune Base Contract"). Under Section 14.5 of the Chicago Tribune Base Contract, CES and Debtor Chicago Tribune Company

expressly agreed that the terms and conditions of the Chicago Tribune Base Contract shall be construed and applied under the laws of the State of Minnesota.

8.   During the twenty (20) days preceding the Petition Date and pursuant to the Chicago Tribune Base Contract, Debtor Chicago Tribune Company received $13,843.87 worth of goods in the form of natural gas that Debtor Chicago Tribune Company purchased and that CES sold to Debtor Chicago Tribune Company in the ordinary course of business.

9.   As of the Petition Date, Debtor Chicago Tribune Company owed CES $34,888.11 for unpaid pre-petition natural gas commodity, $13,843.87 of which was received by the Debtor within 20 days of the Petition Date.

**BACKGROUND CONCERNING DEBTOR WGN CONTINENTAL BROADCASTING COMPANY**

10.  Prior to the Petition Date, Debtor WGN Continental Broadcasting Company purchased natural gas commodity from CES in the ordinary course of Debtor's business and pursuant to the terms and conditions set forth in the *Base Contract For Sale And Purchase Of Natural Gas*, dated August 7, 2006, executed by and between CES, as Seller, and WGN Continental Broadcasting Company, as Buyer (the "WGN Base Contract").[2] Under Section 14.5 of the WGN Base Contract, CES and Debtor WGN Continental Broadcasting

---

2   The Tribune Base Contract, the Chicago Tribune Base Contract and the WGN Base Contract are collectively referred to herein as the "Contracts."

Company expressly agreed that the terms and conditions of the WGN Base Contract shall be construed and applied under the laws of the State of Minnesota.

11. During the twenty (20) days preceding the Petition Date and pursuant to the WGN Base Contract, Debtor WGN Continental Broadcasting Company received $6,654.38 worth of goods in the form of natural gas that Debtor WGN Continental Broadcasting Company purchased and that CES sold to Debtor WGN Continental Broadcasting Company in the ordinary course of business.

12. As of the Petition Date, Debtor WGN Continental Broadcasting Company owed CES $16,458.46 for unpaid pre-petition natural gas commodity, $6,654.38 of which was received by the Debtor within 20 days of the Petition Date.

**RELIEF REQUESTED**

13. To date, Debtor Tribune Company, Debtor Chicago Tribune Company and WGN Continental Broadcasting Company have not paid CES for the natural gas commodity that each one of these Debtors purchased and received from CES under the Contracts during the twenty (20) days preceding the Petition Date (the "503(b)(9) Goods" and the "503(b)(9) Period", respectively).

14. Under the billing schedules of the Contracts, CES issues a bill to the Debtors on a monthly basis. Accordingly, Debtors' obligations for payment of the 503(b)(9) Goods to CES have long since become due.

15. Since the Petition Date, CES has continued to provide

each one of the Debtors with natural gas commodity in a manner consistent with the terms and conditions of the Contracts.

16. By this Motion, CES seeks entry of an order from the Court allowing CES's claims concerning the 503(b)(9) Goods as allowed administrative expenses in the Debtors' bankruptcy cases pursuant to Section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Administrative Expense"). Further and in accordance with the Order, CES seeks immediate payment of the 503(b)(9) Administrative Expense from the Debtors.[3]

## BASIS FOR RELIEF

17. Section 503(b)(9) of the Bankruptcy Code provides, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including –
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

18. For purposes of Section 503(b)(9), however, the term "goods" is not defined within the Bankruptcy Code.

19. Article 2 of the Uniform Commercial Code applies to the sales of goods. "Most states have a statute following Article

---

3   The 503(b)(9) Goods total in the aggregate $60,477.49 ($39,979.24 + $13,843.87 + $6,654.38 = $60,477.49). On April 29, 2009, CES timely filed a proof of claim that included, *inter alia*, copies of the invoices underlying the amounts owed by the Debtors for the 503(b)(9) Goods. Attached hereto as **Exhibit A** is a summary of those invoices that includes a detailed break-down of the amounts owed for the 503(b)(9) Goods. [Claim No. 2211].

SL1 955779v1/000000.00000

6

2's provision indicating that contracts for the sale of natural gas are goods." Koby Bailey, *Energy "Goods": Should Article 2 Of The Uniform Commercial Code Apply To Energy Sales In A Deregulated Environment?*, 37 J. MARSHALL L. REV. 281, 288-89 (2003). "Almost every other state has adopted an identical provision stating that a contract for the sale of minerals, including oil and gas to be severed from land, is a contract for the sale of goods under the UCC." *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 577 n.1 (Tex. 1996) (Phillips, C.J., concurring and dissenting) (referencing the forty-three states and the District of Columbia that had enacted statutes consistent with Article 2's definition that natural gas, once severed from the land, constitutes a "good"); *see also Aquila Southwest Pipeline, Inc., v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 234 (Tex.App.-San Antonio 2001) (holding that "[a] contract for the sale of oil or natural gas is a contract for the sale of goods under the UCC.").

20. As noted herein, CES and each one of the Debtors expressly agreed that the terms and conditions of the Contracts shall be construed and applied under the laws of the State of Minnesota. Accordingly, to determine whether natural gas commodity falls within the definition of "goods" for purposes of Section 503(b)(9), CES believes this Court should look to the Article 2 definitions of "goods" under the Uniform Commercial Code as adopted by the State of Minnesota.

21. The State of Minnesota has adopted, in pertinent part, the following two-part definition of "goods" under Article 2 of the Uniform Commercial Code and summarized as follows:

> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 336.2-107).
>
> (1) A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

*See e.g.* Minnesota Statutes Annotated § 336.2-105 & -107. Therefore, in accordance with Minnesota law and for purposes of Section 503(b)(9) of the Bankruptcy Code, the natural gas commodity sold by CES and purchased by Debtors pursuant to the Contracts constitute "goods". *See also In re Plastech Engineered Products, Inc.*, 397 B.R. 828 (Bankr. E.D. Mich. 2008) (the court did not question that natural gas constituted "goods" for purposes of the Uniform Commercial Code and Section 503(b)(9) of the Bankruptcy Code); *Gardiner v. Philadelphia Gas Works*, 413 Pa. 415, 420, 197 A.2d 612, 614 (Pa. 1964) (holding that it is undisputed that the supplying of gas to the consumer-plaintiff's

home on a month-to-month basis constitutes a contract for sale under Article 2); *Pioneer Hi-Bred Corn Co. of Illinois v. Northern Illinois Gas Co.*, 61 Ill.2d 6, 15-16, 329 N.E.2d 228, 233 (Ill. 1975) (Court held that implied warranties under the U.C.C. extend only to "goods" sold to the buyer and that what was sold was gas, not meters or equipment); *Kansas Mun. Gas Agency v. Vesta Energy Co., Inc.*, 483 F. Supp. 1401, 1407 (D. Kan. 1994) (holding that natural gas falls under the definition of "goods" provided under applicable U.C.C. statutes adopted by the State of Kansas); *Cf. In re Pilgrim's Pride Corporation*, Case No. 08-45664 (Lynn, J.)(Bankr. N.D.Tx. Sept. 16, 2009, Docket No. 3399)(adopting the definition of "goods" provided under Article 2 of the Model Uniform Commercial Code, wherein natural gas is expressly included, and as a result, holding that natural gas constitutes a "good" under Section 503(b)(9) of the Bankruptcy Code).

22.  As to the remaining elements of Section 503(b)(9), the Section 503(b)(9) Goods were: (a) ordered by the Debtors in the ordinary course of Debtors' business; (b) sold by CES to the Debtors in the ordinary course of their business; and, (c) received by the Debtors within the 503(b)(9) Period. Accordingly, pursuant to Section 503(b)(9) of the Bankruptcy Code, CES is entitled to an allowed administrative expense claim for the full value of the 503(b)(9) Goods delivered by CES to the Debtors during the 503(b)(9) Period.

**WHEREFORE**, and for the foregoing reasons, CES respectfully requests the entry of an Order:

A.  allowing a 503(b)(9) Administrative Expense on behalf of CES for the full value of the 503(b)(9) Goods in the aggregate amount of $60,477.49;

B.  requiring the Debtors to render immediate payment to CES for the full value of the 503(b)(9) Goods in the aggregate amount of $60,477.49; and,

C.  granting such other and further relief as the Court deems just and proper.

Dated:  October 22, 2009    STEVENS & LEE, P.C.

/s/ *John D. Demmy*
John D. Demmy (DE Bar No. 2802)
1105 North Market Street, 7th Floor
Wilmington, Delaware 19801
Phone: (302) 425-3308
Fax: (610) 371-8515
Email: jdd@stevenslee.com

and

Russell R. Johnson III, Esq.
John M. Merritt, Esq.
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Phone: (804) 749-8861

*Counsel For CenterPoint Energy Services, Inc.*

**CERTIFICATE OF SERVICE**

    John D. Demmy hereby certifies that on this day of October 22, 2009, in addition to the notice provided by the Court's CM/ECF system, that true and correct copies of the *Motion Of CenterPoint Energy Services, Inc., For Allowance Of § 503(b)(9) Administrative Expense Claim* was served on the following in the manner indicated below:

**Debtors Via Regular First-Class United States Mail**:
Tribune Company
435 N. Michigan Avenue
Chicago, IL  60611

**Counsel for Debtors via E-mail and Regular First-Class United States Mail:**
James F. Conlan, Esq.
Bryan Krakauer, Esq.
Sidley, Austin, Brown & Wood LLP
One S. Dearborn Street
Chicago, IL  60603
E-mail: jconlan@sidley.com; bkrakauer@sidley.com

Norman L. Pernick, Esq.
J. Kate Stickles, Esq.
Patrick J. Reilley, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
E-mail: bankruptcy@coleschotz.com; kstickles@coleschotz.com; preilley@coleschotz.com

**Counsel to the Official Committee of Unsecured Creditors via E-mail and Regular First-Class United States Mail**:
Adam G. Landis, Esq.
Kerri K Mumford, Esq.
Matthew B. McGuire, Esq.
Mona A. Parikh, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
E-mail: landis@lrclaw.com; mumford@lrclaw.com; mcguire@lrclaw.com; parikh@lrclaw.com

Cynthia E. Moh, Esq.
Edwards Angell Palmer & Dodge LLP
919 North Market Street, Suite 1500
Wilmington, DE  19801

SL1 955779v1/000000.00000

E-mail: cmoh@eapdlaw.com

**Counsel to the Agent for the Debtors' prepetition senior credit facility via E-mail and Regular First-Class United States Mail**:
Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
Wilmington, DE  19899
E-mail: collins@RLF.com; fortune@rlf.com

**The United States Trustee Via E-mail and Regular First-Class United States Mail:**
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
E-mail: USTPREGION03.WL.ECF@USDOJ.GOV

/s/ John D. Demmy
John D. Demmy