# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

REDACTED

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FREEDOM COMMUNICATIONS HOLDINGS, INC., et al.,[1] | : | Case No. 09-13046 (BLS) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Related Docket No. 39 |

Requested Hearing Date: October 14, 2009
10:00 a.m.

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR RECONSIDERATION OF INTERIM ORDER (I) AUTHORIZING USE OF PREPETITION LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING FINAL HEARING

The Official Committee of Unsecured Creditors (the "Committee") of Freedom

Communications Holdings, Inc. ("Freedom Holdings" or the "Company") and its affiliated

chapter 11 debtors (collectively, the "Debtors"), by and through its undersigned counsel,

respectfully submits this motion (the "Motion") pursuant to Rule 9024 of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identifications numbers, are: Freedom Communications Holdings, Inc (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, LLC (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, LLC (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, LLC (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, LLC (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, LLC (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, LLC (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, LLC (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604);  Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); Freedom Arizona Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico, LLC (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, LLC (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125).  The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates Rule 60(b) of the Federal

Rules of Civil Procedure (the "Federal Rules"), for reconsideration of the *Interim Order (I)*

*Authorizing Use of Prepetition Lenders' Cash Collateral, (II) Granting Adequate Protection,*

*and (III) Scheduling Final Hearing,* [Docket No. 39] (the "Interim Cash Collateral Order"). This

pleading is also submitted in further support of the Committee's objection (the "Objection") to

the entry of the final cash collateral order requested by the Cash Collateral Motion. In support of

this Motion and the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      It is not unusual for a secured creditor who extends DIP financing to its

borrower post-petition to receive commitment and other fees in connection with the financing. It

is out of the ordinary, however, and perhaps unprecedented for a secured creditor who consents

to the use of its cash collateral to receive any fees for giving such consent. Secured creditors

often receive adequate protection payments, sometimes in an amount equal to accruing interest

on the debt, and on rare occasions even receive payment of pre-petition interest if they are

oversecured, but we are not aware of any case in which the Court approved the payment of fees

to a secured creditor in the nature of a commitment fee as part of a consensual use of cash

collateral, especially an undersecured creditor.

2.      The payment of any material fees to a secured creditor in connection with

DIP financing or use of cash collateral must be disclosed to the Court in the approval motion.

Bankruptcy Rule 4001(b) and(c) require that a motion for approval of proposed cash collateral

use or DIP financing, respectively, must disclose all of the "material provisions" and "material

terms" of such cash collateral use or DIP financing. Similarly, Delaware Local Rule 4001-

2(a)(ii) requires that the motion provide a summary of "of the essential terms of the proposed use

**REDACTED**

of cash collateral and/or financing (*e.g.*, the maximum borrowing available on a final basis, the interim borrowing limit, borrowing conditions, interest rate, maturity, events of default, use of funds limitations and protections afforded under 11 U.S.C. §§ 363 and 364)."

       3.      The Committee respectfully submits that these Rules were violated in these cases, as the evidence at the hearing will show that substantial fees were paid to J.P. Morgan Chase Bank, N.A. ("JP Morgan"), the agent bank for the Prepetition Lender[2] syndicate, but were not disclosed to the Court. Indeed, the evidence uncovered by the Committee in pre-trial discovery conducted in connection with contesting the Cash Collateral Motion on a final basis revealed that in the week before the bankruptcy filing, the Debtors and JP Morgan entered into undisclosed agreements requiring the Debtors to pay JP Morgan immediately prepetition a total of █████████ in fees, consisting of (1) █████████ denominated as a "work fee," and (2) ██████████ denominated as an "arrangement fee."

       4.      These fees were in fact paid by the Debtors to JP Morgan, as the ███ █████ "work fee" was paid on August 28, 2009, and the ████████ "arrangement fee" was paid *on the Petition Date itself.* But at no time were these material payments disclosed to the Court, the United States Trustee, or any other party in interest. The evidence will further show that the ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ their nondisclosure in advance of the hearing on interim approval of the cash collateral arrangement.

**REDACTED**

5.    The Committee respectfully submits that under the circumstances of these cases, the Bankruptcy Rules and Local Rules as well as candor with the Court required the Debtors and JP Morgan to disclose the ▇▇▇▇so-called "work fee" paid to JP Morgan on August 28, 2009 and the ▇▇▇▇ so-called "arrangement fee" paid to JP Morgan on the Petition Date itself, presumably in the hours before the petition was filed.[3] As shown below, these facts and circumstances establish grounds for reconsideration of this Court's Interim Cash Collateral Order entered on September 2, 2009 under Rule 60(b)(2), (3) and (6), made applicable to this matter pursuant to Bankruptcy Rule 9024, on grounds of newly-discovered evidence, fraud, misrepresentation or the misconduct of an adverse party and other reasons justifying relief, including the violation of the Bankruptcy Rules and Local Rules.

6.    Based on the Debtors' failure to disclose all material terms of the use of cash collateral, specifically the payment of ▇▇▇▇▇ in fees to JP Morgan, and JP Morgan's complicity and encouragement in this material non-disclosure, by this Motion, the Committee hereby requests reconsideration and vacatur of the Interim Cash Collateral Order, including the revocation of the "good faith" finding made in that Order, pursuant to section 363(m), the disgorgement of all pre-petition interest, post-petition interest and fees paid to JP Morgan, as well as the nullification *nunc pro tunc* of any adequate protection liens granted under such Order. The Committee respectfully submits that no less a sanction is warranted to address the Debtors'

---

[3] As will be shown at the hearing, these self-serving labels do not mask the fact that these fees were essential and material terms of the cash collateral usage, which is expressly authorized by the Plan Support Agreement. ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇al. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇t ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇e ▇▇▇▇▇▇▇▇▇▇▇▇. Yet remarkably neither the Debtors nor JP Morgan thought it appropriate to disclose these payments.

and JP Morgan's deliberate lack of candor with the Court and parties in interest with regard to these undisclosed fee payments.

## JURISDICTION

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### A.    General Background

8.      On September 1, 2009 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

9.      Also on the Petition Date, the Debtors filed their *Motion (I) Authorizing Use of Prepetition Lenders' Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing* [Docket No. 14] (the "Cash Collateral Motion") and the *Declaration of Mark M. McEachen, Senior Vice President and Chief Financial Officer of Freedom Communications Holdings, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] ("McEachen Declaration").  Neither the Cash Collateral Motion nor the McEachen Declaration disclose the ███████ in payments on August 28, 2009 and the Petition Date, which are the subject of this Motion.

10.     On September 2, 2009, the Court entered the Interim Cash Collateral Order.  Among other things, that order authorized the Debtors to make payments to JP Morgan of accrued pre-petition interest and post-petition interest, as well as its professional fees.  The Interim Cash Collateral Order contained a finding in paragraph 6(c) that JP Morgan and the Prepetition Lenders acted in "good faith" and a determination in paragraph 17(c) that JP Morgan

**REDACTED**

and the Prepetition Lenders "shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Order with respect to all uses of Cash Collateral and Adequate Protection Obligations."[4]

### B.    The Pre-Petition Fee Payments Made to JP Morgan

11.    The Cash Collateral Motion states that Debtors' primary financial obligations are under the Credit Agreement dated as of May 18, 2004, among Freedom Holdings, Freedom Communications as borrower, JP Morgan, as administrative agent, and the Prepetition Lenders, and that as of the Petition Date, the indebtedness owing under the Credit Agreement was approximately $770.6 million.  The Debtors are on record in prior pleadings as contending that JP Morgan is undersecured.

12.    As will be shown at the hearing on the Cash Collateral Motion and this Motion, on April 29, 2009, the Debtors, JP Morgan and the Prepetition Lenders amended the Credit Agreement by entering into the Amendment No. 4, Waiver and Agreement (the "April 29 Amendment").  Under the April 29 Amendment, in exchange for fees, an interest rate increase, accelerated amortization payments, revolver repayment and permanent reduction, and entry into control agreements with respect to certain of the Debtors' accounts, JP Morgan and the Prepetition Lenders granted the Debtors a temporary waiver of the defaults through December 31, 2009, unless earlier terminated.  In connection with the April 29 Amendment, JP Morgan requested and was paid ███████████████████████████.

13.    Thereafter, in the months leading to the Petition Date, the Debtors, JP Morgan and a majority of the Prepetition Lender negotiated the Plan Support Agreement, the

---

[4] Upon learning that the fee payments had been made, by email dated October 9, 2009, the Committee advised JP Morgan and the Debtors of its intention to file a motion for reconsideration of the Interim Cash Collateral Order, and demanded that the Debtors make no further payments of principal, interest or fees to JP Morgan under the Interim Cash Collateral Order pending the adjudication of this Motion.

# REDACTED

Plan Term Sheet, and the proposed consensual cash collateral agreement annexed to the Plan

Support Agreement as exhibits.

14.     In or about mid-August of 2009, as the Debtors were preparing their

bankruptcy filings, JP Morgan requested the payment of ███████ in additional fees,

denominated as a █████ "work fee" and ███████ "arrangement fee."

15.     ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

16.     ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

17.     ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**REDACTED**



18.

(as required by Bankruptcy Rule 4001(b) and Delaware Local Rule 4001-2(a)(ii)).[5]  It is beyond question, given the timing of the payments and the surrounding circumstances, that JP Morgan required the payment of these fees to proceed with the case and the Plan Support Agreement, including the consensual cash collateral use as provided for in the Plan Support Agreement "arranged" by JP Morgan.  Accordingly, their disclosure was mandated under the Bankruptcy Rules and Local Rules.

---

[5] Undoubtedly, t███████ in payments will have to be disclosed in the Debtors' Statement of Financial Affairs, which requires disclosure of all payments made within 90 days of the Petition Date, ███████████████████ k a███████████████████ ot ██████████████████████████████████ Because of the materiality of the███████████████ payments, the Debtors could not wait until they file their schedules and statements (which are on extension until the end of October) because to do so would conceal the existence of the ███████ the payments until after final approval of the Cash Collateral Motion.  Viewed in this light, the Debtors' motion for extension of time to file their schedules and statements takes on a more troubling appearance than a mere ministerial motion.

**REDACTED**

19.    As contemplated by the ███████████, on August 28, 2009, the Debtors paid JP Morgan the ███████ "work fee" and on the Petition Date, September 1, 2009, the Debtors paid JP Morgan the ███████ "arrangement fee." As indicated above, these fee payments were not disclosed in the Cash Collateral Motion or the McEachen Declaration. Further, a review of the transcript of the first day hearings conducted by Judge Carey on September 2, 2009 reflects that the fee payments were not disclosed to the Court at the hearing. Nor does it appear that the Debtors advised the Office of the Unites Trustee of these payments in advance of the September 2, 2009 hearing on the Interim Cash Collateral Order.

### REQUESTED RELIEF

20.    Pursuant to Rule 60(b) of the Federal Rules, made applicable to this proceeding by Bankruptcy Rule 9024, the Committee respectfully requests that the Court (1) reconsider and vacate the Interim Cash Collateral Order, (2) order the disgorgement of any pre-petition interest, post-petition interest, professional fees or other payments made to JP Morgan pursuant to the Cash Collateral Motion, (3) nullify *nunc pro tunct* all adequate protection liens granted to JP Morgan and the Prepetition Lenders.  Separately, for the reasons set forth in the Objection and this Motion, the Committee respectfully requests that the Court decline to enter the proposed Final Cash Collateral Order and otherwise deny the relief requested in the Cash Collateral Motion.

21.    This Motion is being made on an expedited basis (as set forth in a motion to shorten time filed concurrently herewith) based on the following: (1) the Debtors failed to provide the Committee and other parties-in-interest with material information as required by Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii); (2) the Committee and other parties-in-interest did not have any opportunity to object to the Debtors' Cash Collateral Motion

with the benefit of having this information; and (3) a hearing on an expedited basis would allow

this Motion to be heard simultaneously with the upcoming hearing on approval of the Cash

Collateral Motion on a final basis scheduled for October 14, 2009.

## BASIS FOR RELIEF

**A.    Reconsideration and Vacatur of the Interim Cash Collateral Order is Appropriate**

22.    It is well established that bankruptcy courts, as courts of equity, have the

discretion to reconsider, vacate, or modify their prior orders.  Bankruptcy Rule 9024, which

incorporates Federal Rule 60(b), authorizes bankruptcy courts to vacate or modify prior orders

based on several grounds.  Rule 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party
> or a party's legal representative from a final judgment, order, or
> proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) *newly discovered evidence which by due diligence could not have been
> discovered in time to move for a new trial under Rule 59(b)*;
> (3) *fraud (whether heretofore denominated intrinsic or extrinsic),
> misrepresentation, or other misconduct of an adverse party*;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior
> judgment upon which it is based has been revered or other vacated, or it is
> no longer equitable that the judgment should have prospective application;
> or
> (6) any other reason justifying relief from the operation of the judgment.

(emphasis supplied).  The Third Circuit has emphasized that: "[t]t is well settled that a

bankruptcy court has the power to vacate or modify its orders, as long as it is equitable to do so."

*In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 265 (3d Cir. 1991) (citations omitted).

23.    Relief under Federal Rule 60(b) requires a showing of exceptional

circumstances and where, "absent such relief, an 'extreme' and 'unexpected hardship' will

# REDACTED

result." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977) (citations omitted).

"However, Bankruptcy Courts may exercise more liberally its power to vacate orders granted under Rule 60(b)(6) if it is necessary to 'accomplish justice' or to deal with 'unforeseen contingencies.'" *In re Durkalec*, 21 B.R. 618, 620 (Bankr. E. D. Pa. 1982). Here, vacatur of the Interim Cash Collateral Order pursuant to Bankruptcy Rule 9024 and Federal Rule 60(b), including disgorgement and nullification of the adequate protection liens granted to JP Morgan and the Prepetition Lenders, is necessary and appropriate to address the Debtors' and JP Morgan's violation of the Bankruptcy Rules and the Local Rules and their ongoing effort to conceal material payments made just before and on the Petition Date.

24.    Bankruptcy Rule 9024 "may be liberally construed to do substantial justice to allow parties to air meritorious claims in the absence of fault or prejudice." *In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999).

25.    On this Motion, the Committee has invoked the provisions of Federal Rule 60(b)(2), on the ground that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮s is "newly discovered evidence," as well as the provisions of Rule 60(b)(3), based on fraud, misrepresentation, or misconduct by an opposing party, and Rule 60(b)(6), which authorizes relief from orders based on "any other reason justifying relief from the operation of the judgment."

26.    To obtain relief under Rule 60(b)(2), the movant must demonstrate the existence of newly-discovered evidence that would have been relevant to the Court in considering whether or not to enter the order in question. "A party is entitled to new trial only if such evidence is (1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed

**REDACTED**

the outcome of the trial." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir. 1991) (citing *Stridiron v. Stridiron,* 698 F.2d 204, 208 (3d Cir. 1983)). Clearly, the fact of the payment███████████ in fees to JP Morgan is a material fact first discovered by the Committee after entry of the Interim Cash Collateral Order. The Committee respectfully submits that these covert payments were sufficiently large that if they were disclosed to the Court and the Office of the United States Trustee, their views of the propriety of the relief sought by the Cash Collateral Motion for the benefit of JP Morgan and the Prepetition Lenders may well have been affected.

27.     To obtain relief under Rule 60(b)(3) based on fraud or misrepresentation, the movant must demonstrate such misconduct by clear and convincing evidence, *Brown v. Pennsylvania R.R. Co.,* 282 F.2d 522 (3d Cir. 1960), as the Committee will do at the hearing on this Motion. Second, the movant "must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron,* 698 F.2d at 207. Courts have sustained Rule 60(b)(3) motions on grounds of misconduct in cases where the party's actions did not necessarily rise to the level of fraud and where the party's actions were related to filing a motion or obtaining an order. *See e.g., Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir. 1988) ("Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of [Rule 60(b)(3)]") (citing *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978)); *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir. 1995) ("Rule 60(b)(3) applies to both intentional and unintentional misrepresentations"); *In re Wayne Manor, Inc.,* 117 B.R. 12, 14 (D. Mass. 1990) (finding misconduct under Rule 60(b)(3) where plaintiff was guilty of "something approaching deceit" in concealing its knowledge, that it had well before its motion was filed, that the amount it was claiming was incorrect); *In re Duro Industries, Inc.,* 293 B.R. 271, 280 (B.A.P. 1st Cir.

2003) (vacating order under Rule 60(b)(3) where financing order was obtained under "if not false

pretenses, at least a misunderstanding as to the scope of the . . . marketing efforts to which [the

parties] had in effect committed themselves").

28.     Finally, Rule 60(b)(6) provides that relief may be granted for "any other

reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).  Rule

60(b)(6) does not particularize the factors that justify relief, but the Supreme Court has noted that

it provides courts with authority "adequate to enable them to vacate judgments whenever such

action is appropriate to accomplish justice." *Liljeberg v. Health Services Acquisition Corp.*, 486

U.S. 847, 864, 108 S. Ct. 2194, 2204 (1988) (quoting *Klapprott v. U.S.*, 335 U.S. 601, 614-15,

69 S. Ct. 384, 390 (1949)).  As an independent ground for reconsideration under Federal Rule

60(b)(6), the Committee asks that the Court reconsider the Interim Cash Collateral Order to

address the Debtors' and JP Morgan's violation of Bankruptcy Rule 4001(a) and Delaware Local

Rule 4001-2(a)(ii) based on the failure to disclose all of the material terms of the consensual cash

collateral arrangement.  Given the great importance of the matters in these chapter 11 cases that

are to be dictated by the terms and conditions of a cash collateral arrangement, Bankruptcy Rule

4001(b)(1)(B) and Local Rule 4001-2(a)(ii) mandate that parties in interest are entitled to full

disclosure of all material terms, cash payments, or other adequate protection that was or will be

provided to each entity with an interest in the cash collateral.

29.     Procedural rules such as Bankruptcy Rule 4001(b)(1)(B) and Local Rule

4001-2(a)(ii) are promulgated to protect the substantive rights of the parties.  Compliance with

these procedural requirements are important because they serve to protect the substantive rights

of the parties. *See In re Chanticleer Associates*, 592 F.2d 70 (2d Cir. 1979).  Here, parties in

interest and the Court were entitled to a full and fair opportunity to review the actual and

**REDACTED**

material terms behind the cash collateral arrangement, as well as all the other surrounding facts and circumstances, to ascertain whether the relief sought is in fact warranted, and otherwise to ensure that the Debtors fulfill their fiduciary duty to maximize the value of the estates for the benefit of all unsecured creditors. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990). Parties in interest and the Court were denied this opportunity here, as the Debtors failed to disclose any payments made to JP Morgan on the eve of the bankruptcy filing. The entry of the Interim Cash Collateral Order without such disclosure in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii) mandates the vacatur of the Interim Cash Collateral Order.

30.    For the foregoing reasons, the Committee respectfully submits that it has established grounds for reconsideration of the Interim Cash Collateral Order.

**B.    The Lenders Are Not Entitled to a "Good Faith" Finding**

31.    The Committee submits that JP Morgan and the Prepetition Lenders are not entitled to the protections of section 363(m), the finding in the Interim Cash Collateral Order notwithstanding, because ████████████, material facts were not disclosed to the Court or parties in interest. The absence of "good faith" on JP Morgan's part is manifest. JP Morgan extracted ██████ in fees on the eve of the bankruptcy filings and ███████ the D███████████████████████████████. T██████████████ f████████████████████████████t grave doubt on JP Morgan's *bona fides*, and is sufficient to negate any finding that it acted in good faith and is entitled to the protections of section 363(m) on this Motion.

## CONCLUSION

The Debtors have granted the Lenders wide ranging and unsupported relief in exchange for the interim use of cash collateral. Had the Debtors made all relevant disclosures in

**REDACTED**

connection with their Cash Collateral Motion, it is quite conceivable that the US. Trustee and the

Court would have considered the ▬▬▬▬ in payments in considering the requested relief, and

may have reached different conclusions. Accordingly, the Committee respectfully requests that

the Court (i) reconsider the Interim Cash Collateral Order, (ii) vacate the Order, (iii) order the

disgorgement of all payments to JP Morgan and the Prepetition Lenders made pursuant to the

Interim Cash Collateral Order, (iv) nullify all adequate protection liens granted thereunder, (v)

deny the Cash Collateral Motion on a final basis, and (vi) grant such other and further relief as

the Court deems just and proper.

Dated: October 12, 2009                PACHULSKI STANG ZIEHL & JONES LLP

                                       Robert J. Feinstein (NY Bar No. RF-2836)
                                       Bruce Grohsgal (DE Bar No. 3583)
                                       Alan J. Kornfeld (CA Bar No. 130063)
                                       Beth E. Levine (NY Bar No. BL-6715)
                                       919 N. Market Street, 17th Floor
                                       P.O. Box 8705
                                       Wilmington, DE  19899-8705 (Courier 19801)
                                       Telephone:  (302) 652-4100
                                       Facsimile:  (302) 652-4400
                                       Email: rfeinstein@pszjlaw.com
                                              bgrohsgal@pszjlaw.com
                                              akornfeld@pszjlaw.com
                                              blevine@pszjlaw.com

                                       [Proposed] Counsel to the Committee of Unsecured
                                       Creditors for Freedom Communications Holdings,
                                       Inc. et al.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | :   Chapter 11 |
| | : |
| FREEDOM COMMUNICATIONS HOLDINGS, | :   Case No. 09-13046 (BLS) |
| INC., et al., | : |
| | :   (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |
| | : |

## <u>CERTIFICATE OF SERVICE</u>

I, Bruce Grohsgal, hereby certify that on this 12th day of October, 2009, I caused a

true and correct copy of the following documents to be served upon the parties on the attached

service list in the manner indicated thereon:

> *Motion Of The Official Committee Of Unsecured Creditors For Reconsideration*
> *Of Interim Order (I) Authorizing Use Of Prepetition Lenders' Cash Collateral,*
> *(II) Granting Adequate Protection, And (III) Scheduling Final Hearing*

Bruce Grohsgal (Bar No. 3583)

Freedom Communications Holdings, Inc.
**2002 Service List**
Case No. 09-13046 (BLS)
Document No. 152965
07 – Hand Delivery
04 – Express Mail
27 – Overnight Delivery


(Counsel to Creditor Committee)
Laura Davis Jones, Esquire
Bruce Grohsgal, Esquire
Kathleen P. Makowski, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801

**Interoffice Pouch to New York**
(Counsel to Creditor Committee)
Robert Feinstein, Esquire
David A. Abadir, Esquire
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, NY 10017-2006

**Hand Delivery**
David Buchbinder, Esquire
Office of the United States Trustee
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801

**Hand Delivery**
(United States Attorney)
Ellen W. Slights, Esquire
United States Attorney's Office
District of Delaware
1007 N. Orange Street, Suite 700
Wilmington, DE 19801

**Hand Delivery**
(Counsel to Debtors)
Michael R. Nestor, Esquire
Kara Hammond Coyle, Esquire
Pilar G. Kraman, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West St., 17th Floor
Brandywine Building
Wilmington, DE 19801

**Hand Delivery**
(Counsel for Communication Workers of
America (CWA))
Susan E Kaufman, Esquire
Cooch & Taylor, P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801

**Hand Delivery**
(Counsel for JPMorgan Chase Bank, N.A.)
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

**Hand Delivery**
(Counsel for Gonzalez Plaintiffs)
Jeffrey M. Schlerf, Esquire
Seth A. Niederman, Esquire
Fox Rothschild LLP
919 North Market Street, Suite 1600
Wilmington, DE 19801

**Hand Delivery**
(Counsel for Central Ink Corporation)
Carl N. Kunz, III, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
PO Box 2306
Wilmington, DE 19899

**Express Mail**
Secretary of State
Division of Corporations
Franchise Tax
P.O. Box 7040
Dover, DE  19903

**Express Mail**
Secretary of Treasury
P.O. Box 7040
Dover, DE  19903

**Express Mail**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114-0326

**Express Mail**
(Clear Channel Outdoor)
Rosie Meeks
Corporate Bankruptcy Specialist
Clear Channel Outdoor
PO Box 591790
San Antonio, TX  78259

**Express Mail**
(Tennessee Attorney General's Office)
Laura L. McCloud, Esquire
Assistant AG
Office of the AG, Bankruptcy Div.
PO Box 20207
Nashville, TN  37202-2504

**Overnight Delivery**
(United States Attorney General)
Eric H. Holder, Jr., Esquire
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

**Overnight Delivery**
Secretary of Treasury
15th & Pennsylvania Avenue, N.W.
Washington, DC  20220

**Overnight Delivery**
Attn: Insolvency
Internal Revenue Service
1352 Marrows Road, 2nd Floor
Newark, DE  19711-5445

**Overnight Delivery**
Mark Schonfeld, Esquire
Regional Director
Securities & Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY  10281-1022

**Overnight Delivery**
Michael A. Berman, Esquire
Securities & Exchange Commission
Office of General Counsel-Bankruptcy
100 F Street, N.E.
Washington, DC  20549

**Overnight Delivery**
(Counsel for Pension Benefit Guaranty
Corporation)
Kelly R. Cusick, Esquire
Office of the Chief Counsel
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005

**Overnight Delivery**
(Counsel for the Secured Lender, JPMorgan
Chase Bank, N.A.)
Robert H. Trust, Esquire
Andrew R. Bonnes, Esquire
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019-7475

**Overnight Delivery**
(Counsel for Debtors)
Robert Klyman, Esquire
Michael Riela, Esquire
Latham & Watkins LLP
355 South Grand Avenue
Los Angeles CA 90071-1560

**Overnight Delivery**
(Counsel for Ector CAD)
David G. Aelvoet, Esquire
Linebarger Goggan Blair & Sampson LLP
711 Navarro, Suite 300
San Antonio, TX 78205

**Overnight Delivery**
(Counsel for Charleston Central Center
LLC)
William Novotny, Esquire
Mariscal, Weeks, McIntyre & Friedlander,
P.A.
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705

**Overnight Delivery**
(Counsel for Cameron, S. TX ISD,
Harlingen CISD, McAllen ISD, CITY
McAllen, CITY Harlingen, S TX)
Diane W. Sanders, Esquire
Linebarger Goggan Blair & Sampson, LLP
The Terrace II
2700 Via Fortuna Dr, Ste 400
P.O. Box 17428
Austin, TX 78760-7428

**Overnight Delivery**
(Counsel For Communication Workers of
America (CWA))
Joseph J. Vitale , Esquire
Cohen, Weiss and Simon LLP
330 West 42nd Street, 25th Floor
New York, NY 10036-6976

**Overnight Delivery**
(Counsel for Telerep, L.L.C.)
Gabrielle A. Rohwer, Esquire
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

**Overnight Delivery**
(Counsel for Impression Inks West)
S. Aaron Holland, Jr., Esquire
Broude, Smith & Jennings, P.C.
309 West 7th Street, Suite 1100
Fort Worth, TX 76102

**Overnight Delivery**
(Counsel for The Associated Press)
Timothy W. Walsh, Esquire
Camish L. Simmons, Esquire
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020-1104

**Overnight Delivery**
(tw telecom inc.)
Linda Boyle
tw telecom inc.
10475 Park Meadows Drive, #400
Littleton, CO 80124

**Overnight Delivery**
(Counsel for Abitibi Consolidated Sales
Corporation and Bowter America, Inc.)
Scott A. Golden, Esquire
Dena C. Kaufman, Esquire
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022

**Overnight Delivery**
(Counsel for Maricopa County)
Barbara Lee Caldwell, Esquire
Aiken Schenk Hawkins & Ricciardi P.C.
4742 North 24th Street, Suite 100
Phoenix, AZ 85016-4859

**Overnight Delivery**
(Counsel for Gonzalez Plaintiffs)
Craig H. Averch, Esquire
Roberto J. Kampfner, Esquire
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071

**Overnight Delivery**
(Counsel for Central Ink Corporation)
William J. Connelly, Esquire
Hinshaw & Culbertson
222 North LaSalle Street, Suite 30
Chicago, IL  60601

**Overnight Delivery**
(Counsel for Missouri Department of
Revenue)
Sheryl L. Moreau, Esquire
Special Assistant Attorney General
General Counsel's Office
301 W. High Street, Room 670
Jefferson City, MO  65105-0475

**Overnight Delivery**
(Counsel for Hidalgo County/Hidalgo
County Drainage District #1)
John T. Bank, Esquire
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P.
3301 Northland Drive, Suite 505
Austin, TX  78731

**Overnight Delivery**
(Counsel for Aon Consulting)
Brian W. Bisignani, Esquire
Post & Schell, P.C.
17 North 2nd Street, 12th Floor
Harrisburg, PA  17101-1601

**Overnight Delivery**
(Counsel for California Self-Insurers'
Security Fund)
Daniel R. Sovocool, Esquire
Louis J. Cisz, III, Esquire
Peter W. Hoefs, Esquire
Nixon Peabody LLP
One Embarcadero Center, 18th Floor
San Francisco, CA  94111-3600

**Overnight Delivery**
(Counsel for UCTS, Dept of Labor and
Industry, Commonwealth of PA)
Joseph W. Kots, Esquire
UC Tax Agen/Bankruptcy Rep.
Commonwealth of PA
Dept. of Labor & Industry
Reading Bankruptcy & Compliance Unit
625 Cherry Street – Room 203
Reading, PA  19602-1184

**Overnight Delivery**
(Counsel for PBGC)
Joel W. Ruderman, Esquire
Marc S. Pfeuffer, Esquire
Pension Benefit Guaranty Corporatioin
Office of the Chief Counsel
1200 K Street, N.W.
Washington, DC  20005-4026