## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| | : | (Jointly Administered) |
| **TRIBUNE COMPANY, _et. al_**[1] | : | |
| | : | Case No. 08-13141 (KJC) |
| Debtors | : | |

| | | |
|---|---|---|
| | : | |
| **TRIBUNE MEDIA SERVICES, INC.** | : | Adv. Pro. No. 09-50486 (KJC) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **WARREN BEATTY,** | : | |
| Defendant | : | |

## MEMORANDUM[2]

## BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

### BACKGROUND

On December 8, 2008, the Tribune Company and its affiliates (the "Debtors") filed

voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C.

§101 _et seq._).  Prior to the bankruptcy filing, on November 20, 2008, Warren Beatty ("Beatty")

filed a complaint in the United States District Court for the Central District of California (the

"2008 California Action") against one of the Debtors, Tribune Media Services, Inc. ("TMS"), for

declaratory judgment in a dispute between Beatty and TMS over certain motion picture,

---

[1]The chapter 11 case filed by Tribune Media Services, Inc. (Bky. Case No. 08-13236) is being jointly administered with the Tribune Company bankruptcy case and 109 additional affiliated debtors pursuant to the Order dated December 10, 2008 (main case docket no. 43)(collectively, the "Debtors" or "Tribune").

[2]This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and §157(a).  This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(A) and (G).

television, and other rights in the published comic strip series entitled "Dick Tracy" (the "Dick Tracy Rights"). The 2008 California Action was stayed by the bankruptcy filing pursuant to Bankruptcy Code §362(a).

(1)    The Adversary Proceeding

On March 19, 2009, TMS commenced an adversary proceeding in this court (Adv. No. 09-50486) (the "Adversary Proceeding") seeking a declaratory judgment that, among other things, the Dick Tracy Rights are property of the estate pursuant to Bankruptcy Code §541, and that Beatty is enjoined by the automatic stay of §362(a) from asserting any rights or claim to control the Dick Tracy Rights. On May 8, 2009, Beatty filed the "Defendant's Motion to Dismiss Complaint under Rule 12(b) for Improper Venue and Lack of Personal Jurisdiction" (the "Motion to Dismiss")(Adv. D.I. 7). Beatty argues for dismissal based on (i) lack of personal jurisdiction because there is no federal statute authorizing nationwide service of process in bankruptcy cases, and TMS failed to plead facts on which this Court could find that Beatty has minimum contacts with the State of Delaware as required by the Delaware long-arm statute and constitutional due process requirements, and (ii) improper venue because, at the time the adversary complaint was filed, there was a prior action pending in California and, pursuant to the "first-filed rule," this Court should defer to the 2008 California Action.

TMS filed an answer opposing Beatty's Motion to Dismiss (Adv. D.I. 11), arguing that this Court has personal jurisdiction over Beatty pursuant to Fed.R.Bankr.P. 7004 and that venue is proper pursuant to 28 U.S.C. §1409. TMS also argues that the first-filed rule does not apply to a bankruptcy-related adversary proceeding. Beatty filed a Reply Brief (Adv. D.I. 13) on June 2, 2009.

2

(2)     The Stay Motion

On June 9, 2008, Beatty filed a motion for relief from the automatic stay under

Bankruptcy Code §362(d)(1) to proceed with the 2008 California Action (Main Case D.I.

1325)(the "Stay Motion"). The Debtors filed an objection to the Stay Motion (Main Case D.I.

1587), which was joined by the Official Committee of Unsecured Creditors (Main Case D.I.

1588). Beatty filed a reply to the objection (Main Case D.I. 1598).

In the Stay Motion, Beatty argues that cause exists for lifting the stay to allow the

California District Court to determine the dispute over the Dick Tracy Rights because a similar

dispute was heard previously by that Court, and because litigating the issues in Delaware causes

a hardship for Beatty and his witnesses. The Debtors respond by arguing that this Court should

determine the core issue of whether the Dick Tracy Rights are property of the bankruptcy estate

and that Delaware is a more convenient forum for the Debtors since the bankruptcy case is

pending here.

On July 28, 2009, this Court heard oral argument in support of the parties' respective

positions on the Motion to Dismiss and the Stay Motion.[3] For the reasons set forth below, the

Motion to Dismiss will be denied and the Stay Motion will be granted.[4]

---

[3]At the conclusion of the oral argument, I ordered that the stay would remain in place pending a decision on the merits of the Stay Motion. (Tr. 7/28/09 at 75).

[4]Arguably, granting the Stay Motion to permit this dispute to move forward in the 2008 California Action may very well leave nothing to do in the Adversary Proceeding. I decided to proceed simultaneously with the Motion to Dismiss due to the need to address the challenges to the jurisdiction and venue of this Court raised in the Motion to Dismiss.

## FACTS[5]

TMS is the owner of certain copyright and other rights in the cartoon character Dick

Tracy and various works embodying that character.  On or about August 28, 1985, TMS and

Beatty entered into a written agreement in which TMS, among other things, granted the Dick

Tracy Rights to Beatty, in accordance with and subject to the terms of the agreement (the "Dick

Tracy Agreement").    Section 9 of the Dick Tracy Agreement also granted certain reversion rights

to TMS, as follows:

> In the event that, within five years after the initial domestic release of the
> picture, or any subsequent theatrical picture or television series or special,
> photography has not commenced on either another theatrical motion picture or
> television series or special, TMS may give Mr. Beatty notice of its intention to
> effect a reversion of all rights granted hereunder, provided that Mr. Beatty will
> continue to have such non-exclusive rights in the property as may be necessary to
> permit the continued exploitation in and by any and all media of any motion
> picture or television series or special produced pursuant to the rights granted
> herein or of rights therein or connected therewith.  If within two years after receipt
> of said notice, such principal photography has not commenced, then TMS, by a
> further written notice to Mr. Beatty, may effect such a reversion.

Dick Tracy Agreement, ¶9 (Beatty Ex. 2).  In 1990, a theatrical motion picture entitled "Dick

Tracy" was successfully completed by Beatty, and TMS received substantial monies under the

Dick Tracy Agreement arising from the production and distribution of the motion picture.

After TMS asserted that it had taken the necessary steps for reversion of the Dick Tracy

Rights, in May 2005, Beatty filed a declaratory judgment action against TMS in the California

Superior Court - - Los Angeles County, which was removed to the United States District Court

---

[5]Although the parties did not stipulate to agreed facts, neither side disputes the pertinent facts
necessary to resolve the Motion to Dismiss and the Stay Motion (the "Motions").  Both parties submitted
exhibit binders at oral argument on July 28, 2009, which were admitted without objection.  (Tr. 7/28/09
at 25, 43).  TMS's exhibits will be referred to herein as "TMS Ex. __" and Beatty's exhibits will be
referred to as "Beatty Ex. __."

for the Central District of California (the "California District Court") under case number 05-cv-03938 (the "2005 California Action"). The issue in the 2005 California Action was, *inter alia*, whether TMS provided the requisite notice necessary to effectuate a reversion of the Dick Tracy Rights under the Dick Tracy Agreement. (*See* TMS Ex. 1.E.). The action was contested for over a year. (Beatty Ex. 8). On November 30, 2006, the California District Court approved the parties' stipulation to dismiss the 2005 California Action. (*Id.*)

On November 17, 2006, TMS served written notice of its intent to effect a reversion of all rights granted to Beatty in the Dick Tracy Agreement, unless he commenced principal photography on another "theatrical motion picture or television series or special" within two years. (TMS Ex. 2.B.). Beatty alleges that he began principal photography on a Dick Tracy television special on November 8, 2008. He further alleges that the special was scheduled to air in July 2009.[6] (Stay Motion, ¶12). TMS received a letter, via email, dated November 14, 2008 from Beatty's counsel, asserting that Beatty "will be commencing" principal photography on a Dick Tracy television special. (Beatty Ex. 11, ¶20) However, TMS alleges that Beatty did not provide any evidence to TMS to show that a qualifying project had, in fact, begun. (TMS Objection, ¶9).

On November 18, 2008, TMS notified Beatty that all rights previously granted under the Dick Tracy Agreement had automatically reverted to TMS. (TMS Ex. 2.C.). On November 20, 2008, Beatty filed the 2008 California Action. On November 21, 2008, Beatty filed a Notice of Related Case and Request to Assign Matter to the Honorable Dean Pregerson in the California District Court (the "Request") under Rule 81-1.3.1 of the Local Rules for the California District

---

[6]Broadcast has been postponed until the parties' rights are determined. (Tr. 7/28/09 at 25).

Court. (Beatty Ex. 5). The Request was served upon TMS on November 25, 2008. (Beatty Ex.

6). Beatty argues that the Local Rules provided that TMS must object to the Request within five

days of service, and that TMS did not so object. Consequently, on December 18, 2008, the

Request was granted and the 2008 California Action was assigned to Judge Pregerson - - the

same Judge that presided over the 2005 California Action. (Stay Motion, ¶14).

TMS's answer to the complaint in the 2008 California Action was due on or about

December 15, 2008, but the Debtors' chapter 11 bankruptcy case was filed in Delaware on

December 8, 2008. On March 19, 2009, TMS commenced the Adversary Proceeding. On May

8, 2009, Beatty filed a motion to dismiss the Adversary Proceeding. On June 9, 2009, Beatty

filed the Stay Motion.

## DISCUSSION

1.    The Motion to Dismiss

According to Rule 12(b) of the Federal Rules of Civil Procedure, made applicable to

adversary proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure, the court

should dismiss an adversary proceeding if (1) the Court lacks personal jurisdiction over the

Defendant, or (2) venue is improper. *See* Fed.R.Civ.P. 12(b)(2) and (3). In reviewing motions to

dismiss, the court should "accept all factual allegations in the complaint as true and view them in

the light most favorable to the plaintiffs." *Accardi v. IT Litigation Trust (In re IT Group, Inc.),*

448 F.3d 661, 667 (3d Cir. 2006); *Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n.1

(3d Cir. 1992).

(a)    Personal Jurisdiction.

Beatty argues that the adversary complaint should be dismissed because the Court lacks

6

personal jurisdiction over him due to a lack of minimum contacts with this Court or the State of

Delaware, and because he has not consented to personal jurisdiction in this Court.   The Debtors

respond that this Court has personal jurisdiction over Beatty pursuant to Bankruptcy Rule 7004

and the "nationwide contacts" test.

Under Bankruptcy Rule 7004, "a court has personal jurisdiction over a defendant if three

requirements are met: (1) service of process has been made in accordance with Bankruptcy Rule

7004 or Civil Rule 4; (2) the court has subject matter jurisdiction under section 1334 of the

[Judicial] Code [28 U.S.C. §1334]; and (3) exercise of jurisdiction is consistent with the

Constitution and the laws of the United States." 10-7004 Collier On Bankruptcy 7004.07 Rule

7004(f) (15th ed. rev'd)(citing *Darrell v. Adkins (In re Tipton)*, 257 B.R. 865, 870

(Bankr.E.D.Tenn. 2000)).[7]

The Debtors argue that this Court has subject matter jurisdiction over the adversary

complaint which raises core issues, and, although Beatty disputes the designation of the issues as

"core," he does not question this Court's subject matter jurisdiction.   This proceeding is at least

"related to" to the bankruptcy case and, therefore, subject matter jurisdiction is proper pursuant to

28 U.S.C. §157(a) and §1334(b).   "The usual articulation of the test for determining whether a

civil proceeding is related to bankruptcy is whether the outcome of that proceeding could

conceivably have any effect of the estate being administered in bankruptcy...." *Pacor, Inc. v.*

---

[7]Fed.R.Bankr.P. 7004(f) provides:
> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the [Bankruptcy] Code or a civil proceeding arising under the [Bankruptcy] Code, or arising in or related to a case under the [Bankruptcy] Code.

*Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).[8]  Deciding which entity controls the Dick Tracy

Rights will affect the Tribune bankruptcy estate.

At issue here is whether the remaining two requirements of Bankruptcy Rule 7004(f) are

met. In discussing Bankruptcy Rule 7004, my colleague, Judge Walrath, wrote:

> Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure generally limited *in personum*
> jurisdiction of the federal courts over non-resident defendants to that which a court of
> general jurisdiction in the forum state would have.  However, this limitation does not
> apply where extra-territorial service of process is "authorized by a federal statute."
> Fed.R.Civ.P. 4 (k)(1)(C).  Bankruptcy Rule 7004(d), which allows nationwide service of
> process in bankruptcy cases, is just such a statute. *Nordberg v. Granfinanciera, S.A. (In re
> Chase & Sanborn Corp.)*, 835 F.2d 1341, 1344 (11ᵗʰ Cir.  1988) ("Bankruptcy Rule
> 7004(d) provides for nationwide service of process and thus is the statutory basis for
> personal jurisdiction in this case . . . ."), *rev'd on other grounds*, 492 U.S. 33, 109 S.Ct.
> 2782, 106 L.Ed. 2d 26 (1989).

*Charan Trading Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC)*, 399 B.R. 400, 406 (Bankr. D.

Del. 2009).

Beatty, however, argues that Bankruptcy Rule 7004(d) cannot authorize extra-territorial

service of process under Fed.R.Civ.P. 4(k)(1)(A) because it is not a *federal statute* that was

passed by both houses of Congress and signed by the President.  *See, e.g., United States v.*

*Vuitch*, 402 U.S. 62, 64-65 (1971) ("A piece of legislation . . . [is] a "statute" in the sense that it

was duly enacted into law by both Houses of Congress and was signed by the President."). The

Federal Rules of Bankruptcy Procedure are not statutes.  *Car Care Center of Crystal Lake Ltd. v.*

*Miller (In re Miller)*, 336 B.R. 408, 412 (Bankr.E.D.Wis. 2005) ("Bankruptcy statues are enacted

---

[8]While *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrar*, 516 U.S.
124, 134-35 (1995)(Stevens, J. concurring), the *Pacor* test for "related to" jurisdiction was discussed
favorably by the U.S. Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493,
1499, 131 L.Ed.2d 403 (1995), and in footnote 6 of *Celotex*, the Supreme Court noted that - - as of that
time - - eight other circuit courts had adopted the *Pacor* test with little or no variation.

by Congress, unlike bankruptcy rules which are promulgated by the U.S. Supreme Court and govern procedure in bankruptcy cases.") *See also* 28 U.S.C.§2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.")

Beatty further argues that the United States Supreme Court and the Third Circuit Court of Appeals have recognized that personal jurisdiction requires a *federal statute* authorizing nationwide service of process. *See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 106, 108 S.Ct. 404, 98 L.Ed. 2d 415 (1987)(refusing to infer an implied provision for nationwide service of process when not specifically authorized by the statute); *In re Max Daetwyler Corp.,* 762 F.2d 290, 300 (3d Cir. 1985)("In summary, we hold that in the absence of a governing federal statute providing for nation-wide service of process, in personam jurisdiction may not rest upon an alien defendant's aggregated contacts with the United States."). However, the foregoing decisions considered whether nationwide service was permitted in the absence of *any* statute, rule, regulation, or order. The *Omni Capital* Court was asked to find an "implied" provision for nationwide service of process, and the *Daetwyler* Court was asked to apply the "national contacts theory" in a case arising under federal patent law. The issue in those decisions did not directly address whether a rule, such as Bankruptcy Rule 7004(d), was sufficient to authorize nationwide service of process.

When considering personal jurisdiction in bankruptcy proceedings, courts view Bankruptcy Rule 7004's grant of nationwide service of process in light of the Constitutional requirement of fairness. *See In re Federal Fountain, Inc.,* 165 F.3d 600, 602 (11th Cir. 1999), *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.),* 124 F.3d 619, 630 (4th Cir. 1997),

9

*Diamond Mortgage Corp. Of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990).  A federal

court's exercise of *in personam* jurisdiction must be consistent with the Fifth Amendment Due

Process Clause, which imposes "a general fairness test incorporating *International Shoe's*

requirement that certain minimum contacts exist between the non-resident defendant and the

forum such that maintenance of the suit does not offend traditional notions of fair play and

substantial justice."  *Uni-Marts*, 399 B.R. at 406 (quoting *Daetwyler*, 762 F.2d at 293 (in turn,

citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95

(1945)).

 The "forum" in bankruptcy cases is "the United States in general, not the particular forum

state."  *Id.* (citing *Klingher v. Salci (In re Tandycrafts, Inc.)*, 317 B.R. 287, 289 (Bankr.D.Del.

2004)).  State minimum contacts are not dispositive; instead, the sufficiency of the defendant's

contacts with the United States are reviewed to determine the fairness of a court's exercise of

personal jurisdiction in a bankruptcy related proceeding.  *Federal Fountain*, 165 F.3d at 602,

*Celotex Corp.*, 124 F.3d at 630, *Diamond Mortgage*, 913 F.2d at 1244.  This reasoning has been

followed consistently by bankruptcy courts in this district.  *Uni-Marts*, 399 B.R. at 406-07 (the

Court applied a "national contacts" standard rather than a "Delaware contacts" standard in

determining whether the Court's exercise of personal jurisdiction over the defendant was proper),

*The MAS Litig. Trust v. Plastech Engineered Prod. (In re Meridian Auto. Sys.-Composite*

*Operations, Inc.)*, 2007 WL 4322527, *2 (Bankr.D.Del.  Dec. 5, 2007) (citing *Brown v. C.D.*

*Smith Drug Co.*, 1999 WL 709992, *3 (D.Del. Aug. 18, 1999))("Where service is made under

Rule 7004(d), the defendant 'need only have minimum contacts with the United States in order to

satisfy Fifth Amendment due process.'"), *In re Finova Capital Corp.*, 358 B.R. 113, 119

(Bankr.D.Del. 2006)("[S]ervice of process anywhere in the United States is sufficient to warrant the exercise of personal jurisdiction over a party to a case where a bankruptcy court has subject matter jurisdiction."). I discern no reason to depart from the reasoning of those cases.

Because there is no question that Beatty has sufficient contacts with the United States, the Motion to Dismiss for lack of personal jurisdiction will be denied.

      (b)    <u>Venue and the First-Filed Rule.</u>

Beatty also seeks dismissal of the complaint based upon improper venue. Fed.R.Civ.P. 7012(b)(3). However, '[a]s a general rule, venue is proper in the primary district for any civil litigation brought by or against the debtor or the estate, i.e., the bankruptcy court where the case is pending." *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr.D.Del. 1991). Venue is proper here. *See also* 28 U.S.C. §1409(a).[9]

Beatty argues that venue is improper because the 2008 California Action involves identical issues and TMS should have moved in the California District Court for a change of venue under 28 U.S.C. §1404, rather than file the present adversary proceeding. I am aware of no such requirement.[10] Beatty's argument is more appropriately considered as part of his argument for dismissal based on the "first-filed rule," rather than dismissal for improper venue.

The "first-filed rule" gives a court discretion "to enjoin the subsequent prosecution of

---

[9]28 U.S.C. §1409(a) provides:

(a)      Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case in pending.

None of the exceptions set forth in §1409(b) or (d) are applicable here.

[10]I could not and do not presume in any way to impinge upon the prerogatives of the California District Court to dispose, in its discretion, of any venue motion which may be filed in the 2008 California Action.

proceedings involving the same parties and the same issues already before another district court."

*E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971-72 (3d Cir. 1988)(citations omitted).

"The first-filed rule encourages sound judicial administration and promotes comity among

federal courts of equal rank." *Id.*[11] "Although exceptions to the rule are rare, courts have

consistently recognized that the first-filed rule 'is not a rigid or inflexible rule to be mechanically

applied.'" *Id.* at 976 (citations omitted).  The Third Circuit further explained:

> The letter and spirit of the first-filed rule, therefore, are grounded on equitable
> principles. . . . . [T]he rule's primary purpose is to avoid burdening the federal
> judiciary and to prevent the judicial embarrassment of conflicting judgments. Yet,
> fundamental fairness dictates the need for "fashioning a flexible response to the
> issue of concurrent jurisdiction."

*Id.* at 977 (citations omitted).

In *E.E.O.C.*, the Third Circuit held that a district court judge did not abuse his discretion

in deciding not to apply the first-filed rule and dismiss a second-filed suit, because the district

court determined that the University had filed the first suit in another jurisdiction in an attempt to

preempt the E.E.O.C.'s imminent subpoena enforcement action. *Id.* at 977.  "Because the first-

filed rule is based on principles of comity and equity, it should not apply when at least one of the

filing party's motives is to circumvent local law and preempt an imminent subpoena enforcement

action." *Id.* at 978.

In *Gilchrist v. General Elec. Capital Corp.,* 262 F.3d 295 (4th Cir. 2001), the Fourth

---

[11]Neither of the parties has asserted that the bankruptcy court and the district court are of "equal rank." To be precise, the bankruptcy court is a unit of the district court. 28 U.S.C. §151. By orders of referral, the bankruptcy court is authorized to exercise jurisdiction over bankruptcy matters. 28 U.S.C. §157(a). However, the Bankruptcy Code and related title 28 provisions give the bankruptcy court authority, under appropriate circumstances, to affect proceedings pending in other courts in which the debtor is a party. *See, e.g., Gilchrist v. General Electric Capital Corp.,* 262 F.3d 295 (4th Cir. 2001).

Circuit Court of Appeals recognized that both statutory jurisdictional grants and equitable

principles may require the first-filed rule to yield to the bankruptcy process. In *Gilchrist*, after a

textile manufacturer (Spartan International, Inc.) closed its doors for business, its major creditor

started a debt collection action in the District Court for South Carolina and obtained appointment

of a receiver to take custody of Spartan's assets, dispose of them, and pay the creditor. *Id.* at

297-98. A week later, over 50 creditors filed an involuntary bankruptcy petition against Spartan

in Southern District of Georgia. The receiver obtained a temporary restraining order from the

South Carolina District Court that enjoined the creditors from taking any action in furtherance of

the involuntary bankruptcy petition in Georgia. The Georgia creditors filed an appeal of the

temporary restraining order (and other orders holding them in contempt). The receiver and major

creditor argued that the first-filed rule applied to grant priority to the court which first takes

custody of the assets. The Fourth Circuit Court of Appeals disagreed, deciding:

> Our examination of the Bankruptcy Code reveals that Congress intended that the
> bankruptcy process be favored in circumstances such as these. Section 1334(e) of
> title 28 is unequivocal in its grant of exclusive jurisdiction [of all the property,
> wherever located, of the debtor as of the commencement of such case, and of
> property of the estate] to the bankruptcy court, and §362(a) imposes an automatic
> stay on all proceedings merely upon the filing of a bankruptcy petition. If we
> were to frustrate these express provisions to further a first-filed policy, we would
> have to deny bankruptcy jurisdiction to every bankruptcy court in which
> foreclosure proceedings had already commenced against the debtor's property, on
> the grounds that the *in rem* nature of the foreclosure proceeding precludes the
> bankruptcy court from taking custody of the *res*. Such a jurisdictional limitation
> on bankruptcy proceedings would severely limit the efficacy of bankruptcy. In the
> absence of express language suggesting that Congress intended for bankruptcy
> jurisdiction to be so limited, we believe it would frustrate Congressional intent to
> imply such a limitation based solely on consideration of a first-filed policy.

*Gilchrist*, 262 F.3d at 303-04.

In a case with facts similar to this one, the court in *Husco, Inc. v. Southern Bleacher Co.,*

*Inc. (In re Husco, Inc.)*, 268 B.R. 441 (Bankr.W.D.Pa. 2001) considered dismissal of the debtor's

adversary proceeding against Southern Bleacher Company alleging breach of contract claims,

which arose out of similar facts as those underlying Southern Bleacher Company's pre-petition

breach of contract and fraud action filed in Texas state court against the debtor. The *Husco*

Court declined to dismiss the adversary proceeding, noting that the primary purpose of the first-

filed rule "is to avoid burdening the federal judiciary and to prevent embarrassment arising from

conflicting judgments." *Id.* at 449. The Court determined that prosecution of the adversary

proceeding would cause "little or no burden on the federal judiciary," and was unlikely to result

in conflicting judgments, because the Texas lawsuit had been automatically stayed. *Id.*[12]

Although the 2008 California Action and this adversary proceeding involve virtually

identical issues, the first-filed rule does not warrant dismissal of this adversary proceeding.

(c)    Conclusion - Motion to Dismiss

For the reasons stated above, I conclude that this Court may exercise personal jurisdiction

over the Defendant and that venue is proper. The Defendant's Motion to Dismiss will be

denied.[13]    An appropriate order will be entered herewith.

2.    The Stay Motion

Bankruptcy Code §362(d)(1) provides that "[o]n request of a party in interest, and after

---

[12]This is not to say that the first-filed rule will never be applied in a bankruptcy-related context. *See Mosier v. Cargill Fin. Serv. Corp. (In re Mansfield Corp.)*, 339 B.R. 194 (Bankr.D.Minn. 2006) (The court applied the first-filed rule and dismissed an adversary proceeding when the debtor filed more than one adversary proceeding against the same defendant on identical causes of action in various jurisdictions in an attempt to gain the advantage of a longer statute of limitations).

[13]My conclusion that the Motion to Dismiss on the grounds of lack of personal jurisdiction, improper venue, and the first-filed rule does not address the separate, but related, issue of whether the dispute may be heard in the California District Court. That issue is addressed in the next section of this Memorandum regarding the Stay Motion.

notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of

this section, such as by terminating, annulling, modifying, or conditioning such stay - - (1) for

cause, . . . ."  11 U.S.C. §362(d)(1).  "Cause is a flexible concept and courts often conduct a fact

intensive, case-by-case balancing test, examining the totality of the circumstances to determine

whether sufficient cause exists to lift the stay."  *In re SCO Group, Inc.*, 395 B.R. 852, 856

(Bankr.D.Del. 2007)(citations omitted).  The *SCO Group* Court further noted:

> The legislative history to section 362(d)(1) emphasizes the section's
> applicability to proceedings in another tribunal.  "It will often be more appropriate
> to permit proceedings to continue in their place of origin, when no great prejudice
> to the bankruptcy estate would result, in order to leave the parties to their chosen
> forum and to relieve the bankruptcy court from duties that may be handled
> elsewhere."  H.R.Rep. No. 595, 95th Cong., 1[st] Sess., 341 (1977), U.S.Code &
> Admin. News 1978, pp. 5787, 5297.  Most courts follow this logic and apply an
> equitable balancing test to determine if cause exists to lift the stay to allow
> pending litigation to proceed or continue in another forum.

*Id.*

Bankruptcy Courts in this district generally rely upon a three-pronged balancing test to

determine whether "cause" exists for granting relief from the stay to continue litigation:

(1)  Whether any great prejudice to either the bankrupt estate or the debtor will result
     from continuation of the civil suit;

(2)  Whether the hardship to the non-bankrupt party by maintenance of the stay
     considerably outweighs the hardship to the debtor, and

(3)  Whether the creditor has a probability of prevailing on the merits.

*Izzarelli v. Rexene Products Co. (In re Rexene Products Co.)*, 141 B.R. 574, 576 (Bankr.D.Del.

1992)(citing *Int'l Business Machines v.  Fernstrom Storage & Van Co. (In re Fernstrom Storage

& Van Co.)*, 938 F.2d 731, 734-37 (7th Cir. 1991)).  *See also American Airlines, Inc. v.*

*Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D.Del. 1993)

(citing *Fernstrom*); *SCO Group*, 395 B.R. at 857(citing *Rexene*).

When considering a motion for relief from the automatic stay, Section 362(g) provides

that the parties' respective burdens of proof are as follows:

> (g)    In any hearing under subsection (d) or (e) of this section concerning relief
> from the stay of any act under subsection (a) of this section - -
>> (1)    the party requesting such relief has the burden of proof on the issue
>> of the debtor's equity in the property; and
>> (2)    the party opposing such relief has the burden of proof on all other
>> issues.

11 U.S.C. §362(g).  The *Rexene* Court explained:

> Generally, in the determination of "cause," section 362(g) is interpreted as placing an
> initial burden on the moving party to establish its prima facie case which must then be
> rebutted by the party opposing such relief.  To apply section 362(g)(2) otherwise to
> section 362(d)(1) would force the debtor to prove a negative, that no cause exists.

*Rexene*, 141 B.R. at 577 (citing *In re Stranahan Gear Co., Inc.*, 67 B.R. 834, 837 (Bankr.E.D.Pa.

1986)).

The first consideration is whether granting relief from the stay to proceed with the 2008

California Action would prejudice the Debtors or their estate.   The *Rexene* Court noted that the

purpose of the automatic stay is three-fold:

> to prevent certain creditors from gaining a preference for their claims against the
> debtor; to forestall the depletion of the debtor's assets due to legal costs in
> defending proceedings against it; and, in general, to avoid interference with the
> orderly liquidation or rehabilitation of the debtor.  *Borman v. Raymark Ind., Inc.*
> 946 F.2d 1031, 1036 (3d Cir. 1991)(*quoting St. Croix Condominium Owners v. St.
> Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)).

*Rexene*, 141 B.R. at 576.  The Debtors filed the Adversary Proceeding to obtain a determination

on the same issues raised in 2008 California Action.  TMS has indicated that resolving this

dispute would benefit its estate because "TMS's ability to monetize this valuable asset [the Dick

16

Tracy Rights] has been blocked by the ongoing dispute with Mr. Beatty over control of these rights." (TMS Ex. 2, ¶14). Thus, the Debtors do not need to avail themselves of the benefits provided by the stay, as discussed in *Rexene*, and would not suffer great prejudice if the stay were lifted and the action moved forward. A similar conclusion was reached by the court in *Save Power Limited v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 719 (Bankr.D.Del. 1996). In *Pursuit*, the debtor filed an adversary with allegations that were substantially identical to those in a pending state court action in Texas. The court decided:

> [The debtor] is obviously not concerned with the spectre of simultaneously pursuing its claims against the . . . defendants while proceeding with its reorganization. These factors are sufficient to conclude that no prejudice will result from the continuation of the Texas action.

*Pursuit,* 193 B.R. at 719.

The Debtors argue that they will suffer prejudice if they are required to litigate this dispute on two fronts (Delaware and California), and that the duplicate proceedings would be a waste of judicial resources.[14] The action will not be heard in both fora, and no such prejudice to the Debtors will occur.

Finally, the Debtors argue that the issue of whether the Dick Tracy Rights are property of the Debtors' estates should be heard by this Court, because it is within this Court's core jurisdiction. *See Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 105-06 (Bankr.D.Del. 2008). The Debtors frame the issue improperly. Whatever

---

[14]Subject to colloquy with the parties at the upcoming December 1, 2009 status hearing, it does not appear as if there now is any purpose for further activity in connection with the Adversary Proceeding.

17

the Debtors hold *is* property of the estate.  The question to be addressed is whether the Debtors

are entitled presently to use the Dick Tracy Rights (to the exclusion of Beatty) or whether they

hold the right to reclaim the Dick Tracy Rights in the future - - a reversionary interest.  At

bottom, this matter involves a contract interpretation dispute.  I do not perceive any prejudice to

the Debtors that would result from lifting the stay so that this dispute is resolved in the 2008

California Action.

      Second, I must balance whether the hardship to Beatty caused by maintaining the stay

outweighs the hardship to the Debtors caused by lifting the stay and allowing the 2008 California

Action to proceed.  The parties agree that the issue surrounding the current dispute over the Dick

Tracy Rights is whether Beatty commenced principal photography on a theatrical motion picture,

television series or special within two years of the TMS notice.  Beatty's Declaration states that

production of a Dick Tracy television special began on November 8, 2008 at Walt Disney

Studios located in Burbank, California. (Beatty Ex. 1, ¶6)  Beatty states that all of the witnesses

he would call to provide evidence on this issue are located in California.  (Beatty Ex. 1, ¶¶4 - 13,

15).  Because non-party witnesses are beyond the subpoena power of this Court, Beatty argues

that he could be prejudiced at trial.[15]

      The Debtors dispute Beatty's claim of hardship, arguing that he has hired a national law

firm to ably represent him in Delaware, and claiming that his active pursuit of the Stay Motion,

as well as the Motion to Dismiss, shows that it is not a hardship for him to appear in this Court.

---

[15]*See* Fed.R.Bankr.P. 9016 (incorporating Fed.R.Civ.P. 45(b)(2), which limits a court's subpoena power to within 100 miles of the courthouse).  *See also The Liquidating Trust of U.S. Wireless Corp. v. Haskell & White, LLP (In re U.S. Wireless Corp.)*, 2004 WL 1146098, *2 (Bankr.D.Del.  May 18, 2004) (Consideration that key witnesses were located in California, which was beyond the Delaware Court's subpoena power, was one factor in deciding to transfer venue under 28 U.S.C. §1412).

However, to conclude so would, in effect, penalize Beatty simply because he has appeared in this Court to protect his rights.

The Debtors also dispute Beatty's assertion that both parties would benefit from litigating this matter before the California District Court, because that Court is already familiar with the matter.  The Debtors argue that the issue in the 2005 California Action (whether TMS had given proper notice of its reversion rights) is entirely distinct from the issue in the current matter (whether Beatty timely commenced principal photography on a theatrical motion picture or television series or special, as required in the Dick Tracy Agreement).  (*See* TMS Ex. 1).  I agree that the 2005 California Action is not a significant factor in this analysis because the matter was dismissed by stipulation of the parties in November 2006.

Further, I disagree with Beatty's assertion that this matter should be heard by the California District Court because it is more familiar with issues related to the television and film industry and would be better able to decide whether Beatty has "commenced principal photography."  Bankruptcy courts routinely decide disputes involving a variety of subject matters and are often called upon to interpret and apply non-bankruptcy law, including contracts involved in specialized industries.  This argument is not a factor in my decision here.

The Debtors claim that they will suffer hardship if the matter is heard in California, instead of Delaware.  Although the Debtors principal place of business is Chicago, Illinois, they claim that the Delaware forum is more convenient for them because the Debtors are handling other bankruptcy matters in this jurisdiction.  However, the Debtors will have to travel whether the action is heard in Delaware or California, so it does not appear that choice of forum is materially different to the Debtor.  The Debtor is a national enterprise and has at least three major

19

debtor affiliates pending in this Court, but located in California (Los Angeles Times Communications, LLC (case no. 08-13185), Los Angeles Times International, Ltd. (case no. 08-13186), and Los Angeles Times Newspapers, Inc. (case no. 08-13187)).[16]  Many of the facts underlying this dispute occurred in California.  Although the Debtors' central management and business operations are not located in California or Delaware, the Debtors will not suffer hardship by litigating this matter in the California District Court.

The third part of the balancing test examines the movant's probability of success on the merits.  "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Continental Airlines*, 152 B.R. at 426.  *See also Rexene*, 141 B.R. at 578.  The Debtors argue that Beatty produced no evidence to support his allegation that he commenced principal photography on a television special.  However, Beatty introduced into evidence a Declaration detailing specific dates, potential witnesses, and other facts to support his position  (Beatty Ex. 1) and a copy of an agreement between Beatty and Turner Classic Movies, Inc., dated July 26, 2008, regarding production of a television special about Dick Tracy (Beatty Ex. 10).  This is sufficient, under the circumstances, to support a slight showing of the probability of success on the merits.

<u>Conclusion - Stay Motion</u>

For the reasons stated above, I conclude that the Debtors will not suffer prejudice if the 2008 California Action proceeds, because the Debtors have indicated a willingness, and indeed a preference, to resolve this issue promptly.  I also conclude that the Debtors will not suffer any material hardship in litigating the matter in California that outweighs the slight economic and

---

[16]The voluntary petitions for these debtors list a street address in Los Angeles, CA.

strategic hardship Beatty would suffer if the stay is not lifted and the matter is litigated in this Court. Finally, Beatty's exhibits provide a sufficient basis to find a slight showing of a probability of success on the merits. Accordingly, the Stay Motion will be granted. An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: November 9, 2009