# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: December 1, 2009 at 10:00 a.m. ET**<br>**Objection Deadline: November 23, 2009 at 4:00 p.m. ET** |

## MOTION OF DEBTOR TRIBUNE COMPANY
## FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF THE
## SERVICE AGREEMENT BETWEEN TRIBUNE COMPANY AND KENEXA
## BRASSRING, INC. PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

Debtor Tribune Company ("Tribune") respectfully moves this Court (the

"Motion") pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code")

for entry of an order authorizing Tribune to reject that certain Service Agreement dated as of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7399); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

January 5, 2002 between Tribune and Kenexa BrassRing, Inc. ("Kenexa BrassRing").  In support

of this Motion, Tribune submits the declaration of Michael Bourgon, Vice President of Human

Resources for Tribune, attached as Exhibit A, and states as follows:

### STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), each of the debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for

procedural purposes only.  An additional Debtor, Chicago National League Ball Club, LLC,

voluntarily commenced a chapter 11 case on October 12, 2009, and that case was procedurally

consolidated with the other Debtors' chapter 11 cases by an order of the Bankruptcy Court

entered October 14, 2009.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee.

3.      On December 18, 2008, the Office of the United States Trustee appointed an

official committee of unsecured creditors in these cases.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought herein is

section 365 of the Bankruptcy Code.

## BACKGROUND OF THE CONTRACT

5.      Tribune is America's largest employee-owned media company and is the ultimate parent company of each of the other Debtors.  Tribune operates businesses in publishing, interactive media, and broadcasting.  These operations are conducted through two business divisions: (i) publishing and (ii) broadcasting and entertainment.  Tribune has utilized Kenexa BrassRing's software to assist it in managing its hiring process, as the Debtors hire, on average, approximately 3,000 employees per year.  Among other services, Kenexa BrassRing's software provides resume processing and applicant tracking services.

6.      On January 5, 2002, Tribune and Hire Systems, a division of BrassRing Inc., entered into the Service Agreement, which was subsequently amended on January 1, 2003, June 1, 2005, and December 21, 2007 (collectively, as amended, the "Agreement").  The Agreement was signed by Tribune's former Director of Corporate Recruitment.[2]  The Debtors understand that Kenexa BrassRing is a successor-in-interest to BrassRing, Inc. for purposes of the Agreement.

7.      Under the Agreement, Kenexa BrassRing grants Tribune a nonexclusive, nontransferable license to access Kenexa BrassRing's web-based software.  By accessing the software, Tribune may, at its request, perform searches, displays, and downloads of hiring information.  The Agreement terminates December 31, 2010.  In the event of early termination, Tribune would be required to pay the full remaining fees under the Agreement.

8.      Over the past several months, Tribune has been evaluating the relative costs and benefits associated with the Agreement, as well as Tribune's ability to obtain similar software services from other providers.  As a result of this evaluation, Tribune has determined it

---

[2]  The Agreement contains a confidentiality provision that arguably prevents Tribune from disclosing its terms.  As a result, Tribune has not attached a copy of the Agreement to the Motion.

can obtain alternative software that offers more features and options better tailored to Tribune's

business, at a lower price, from another provider. Accordingly, as articulated in further detail

below, the Agreement is no longer beneficial or necessary to Tribune's business operations.

## RELIEF REQUESTED

9.     By this Motion, Tribune respectfully requests the Court enter an order, in

substantially the form of the Order filed concurrently herewith, authorizing and approving

Tribune's rejection of the Agreement effective December 1, 2009.[3]

## BASIS FOR RELIEF

10.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject an executory contract or an unexpired lease." 11

U.S.C. § 365(a); *see University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d

1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a

contract pursuant to procedures set forth in section 365(a)). A debtor's assumption or rejection

of an executory contract is subject to review under the business judgment standard. *See In re

ANC Rental Corp.*, 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("[T]o assume and assign an

executory contract or unexpired lease. . . the debtor must establish that the decision is one made

in its sound business judgment."); *In re Federal-Mogul Global Inc.*, 293 B.R. 124, 126 (D. Del.

2003) ("[M]otions to reject executory contracts are evaluated under the business judgment

test.").

11.     Under the business judgment standard, a debtor is required to provide a

reason that, in its business judgment, assuming or rejecting a particular executory contract or

unexpired lease benefits the debtor's estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist.*

---

[3] The Debtors do not waive any claims they may have against Kenexa BrassRing, Inc., whether or not related to the Agreement.

*Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989).  In addition, the debtor must articulate the bases for its

determination.  *Id.*  Once the debtor has met its burden, "a court should approve a debtor's

business decision unless the decision is the product of bad faith or gross abuse of discretion."

*See Federal-Mogul*, 293 B.R. at 126; *see also Lubrizol Enters., Inc. v. Richmond Metal*

*Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986); *Enterra*

*Corp. v. SGS Assocs.*, 600 F. Supp. 678, 684-85 (E.D.Pa. 1985) (business judgment standard

requires deference to debtor's management absent showing of bad faith, fraud, or gross

overreaching).

   12. Rejection of the Agreement is in the best interests of the Debtors' estates

and creditors.  Tribune has determined it can obtain software that is better suited to Tribune's

business and that will accomplish the tasks for which the Kenexa BrassRing software is currently

used from an alternative provider known as iCIMS.com, Inc. ("iCIMS").  The iCIMS system

includes functionality that is currently unavailable under the Agreement.  First, iCIMS provides

real-time candidate information uploads to PeopleSoft, Tribune's human resources database.

This functionality is not in place with the Kenexa BrassRing software and, as a result, Tribune is

required to manually key-in such information for each new hire.  Although Kenexa BrassRing is

capable of building real-time information uploads into Tribune's PeopleSoft system, it would

require a significant investment of internal resources and the cost for doing so would be

approximately $25,000 over and above the existing costs under the Agreement.  A second

functional advantage of iCIMS is that iCIMS is highly configurable.  As a result, managers and

recruiters have found iCIMS' system more intuitive and thus easier to use than the Kenexa

BrassRing software.  In addition, iCIMS' system, unlike the Kenexa BrassRing software,

provides PDA/smartphone access.  Standard and custom reports are also included in the iCIMS

build for Tribune, in contrast to the existing software, pursuant to which access is delayed 24 hours and pulling reports has been cited as difficult by some users. (Bourgon Decl. ¶¶ 4-6.)

13.    Transition to the new software, and the attendant rejection of the Agreement, also serves the best interests of Tribune's estate and creditors by facilitating company-wide participation in a single software system. Tribune's business units each pay for the Kenexa BrassRing software; however, Tribune did not mandate that the business units use the current software. Due to various issues associated with the existing system, including the lack of real-time candidate information uploads, many Tribune business units have declined to use the software in their recruitment processes. The business units provided input and participated in the evaluation of vendors and the selection of iCIMS as a replacement hiring and recruitment software provider. Because the iCIMS software is more economical, more functional, and better meets the business units' needs, the new system will be mandatory for all Tribune business units. Rejecting the Agreement will thus enable Tribune to require a new, uniform recruitment software system that more effectively serves its business operations. (Bourgon Decl. ¶ 7.)

14.    Rejection of the Agreement in favor of a new agreement with iCIMS would also be in the best interests of Tribune's estate and creditors because Tribune can obtain the iCIMS software at a lower cost. When all costs under the two agreements are taken into account, Tribune expects to realize direct cost savings under the new agreement of more than $100,000 per year.[4] Though Tribune would incur a one-time implementation expense under an agreement with iCIMS, such an agreement would not require charges for add-on services, as the existing Agreement now requires. Tribune's monetary savings by switching software providers

---

[4] The exact financial terms of Tribune's agreement with iCIMS are confidential and proprietary to iCIMS, and are therefore not disclosed in the Motion.

from Kenexa BrassRing to iCIMS would therefore amount to a significant sum. (Bourgon Decl. ¶ 8.)

15.     For the foregoing reasons, in Tribune's business judgment, rejection of the Agreement in favor of a new agreement with iCIMS will provide Tribune the opportunity to streamline, upgrade, and save money, and is therefore in the best interests of Tribune's estate and creditors.

16.     For the avoidance of doubt, the Debtors do not waive any claims they may have against Kenexa BrassRing, whether or not related to the Agreement.  Furthermore, Tribune's rejection of the Agreement is without prejudice to the Debtors' right to dispute any claims made with respect to such rejections and/or any administrative claims asserted in these chapter 11 cases.

## BAR DATE FOR KENEXA BRASSRING TO FILE CLAIMS

17.     Pursuant to the Bankruptcy Court's Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, entered March 26, 2009 (Docket No. 813), Kenexa BrassRing shall file a claim for rejection damages, if any, by sending such proof of claim to Tribune Company Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC; 757 Third Avenue, Third Floor, New York, NY 10017, so that it is received on or before thirty (30) days after entry of the Court's order approving the Motion, or be forever barred from asserting such a claim.

## NOTICE

18.     Notice of this Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agents for the post-petition lenders; (iv) counsel to the administrative agents for the prepetition lenders;

(v) counsel for the indenture trustees for the Debtors' prepetition notes; (vi) Kenexa BrassRing; and (vii) all parties entitled to receive notice in these Chapter 11 Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  In light of the nature of the relief requested, Tribune submits no further notice need be given.

## NO PRIOR REQUEST

19.    Tribune has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, Tribune respectfully requests that the Court enter an order, in substantially the form of the order filed concurrently herewith, (i) authorizing Tribune's rejection of the Agreement, (ii) rendering such rejection of the Agreement effective December 1, 2009; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      November 10, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Alison L. Triggs
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

46429/0001-6107515v1