IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: December 1, 2009 at 10:00 a.m. EST**<br>**Objection Deadline: November 23, 2009 at 4 p.m. EST** |

## MOTION OF DEBTOR TRIBUNE PUBLISHING COMPANY FOR AN ORDER AUTHORIZING ASSUMPTION OF AMENDED MASTER SERVICES AGREEMENT WITH HEWLETT-PACKARD COMPANY

Debtor Tribune Publishing Company ("Tribune Publishing"), one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby submits this motion (the "Motion") for entry of an order authorizing and approving the assumption of that certain Master Services Agreement, as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

amended, between Tribune Publishing and Hewlett-Packard Company ("HP"), pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), as more fully described herein. In support of this Motion, Tribune Publishing submits herewith the Declaration of Harry A. Amsden, Assistant Treasurer of Tribune Publishing (the "Amsden Declaration"), attached hereto as Exhibit A. In further support of the Motion, Tribune Publishing respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee. The Committee has been apprised of the relief requested herein.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

5.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 365(a) of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

6.    Tribune Company ("Tribune"), a debtor in the above-captioned cases, is America's largest employee-owned media company and is the ultimate parent company of each of the other Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business segments: (i) publishing and (ii) broadcasting and entertainment. Tribune Publishing provides the group office functions for the Debtors' publishing segment and oversees the operations of all subsidiaries that make up the publishing segment (collectively, the "Publishing Subsidiaries"). The Publishing Subsidiaries currently operate eight (8) major-market daily newspapers, including daily newspapers in two of the three largest metropolitan markets in the United States, and over 100 "niche" publications that target various geographic, ethnographic, and demographic audiences. The Publishing Subsidiaries also distribute entertainment listings and syndicated content and manage the websites of the Debtors' daily newspapers, television stations, and other branded sites targeting specific communities of interest.

7.    HP is among the world's largest IT companies, with operations that span printing, personal computing, software, services, and IT infrastructure. HP is a leading provider of business process outsourcing services, offering customized business solutions designed to streamline business processes. Among its many business process services, HP assists its customers with finance and administration, payroll, fulfillment and logistics, document processing, customer relationship management, and human resources services.

8. On July 26, 2007, Tribune Publishing entered into a Master Services Agreement with HP (the "MSA"), on behalf of itself and the Publishing Subsidiaries, respectively, covering specified finance and accounting services in the areas of credit, collections, cash applications, billing, post-sale customer service, and advertising contract administration for certain advertising customers of Tribune Publishing and the Publishing Subsidiaries. HP provides these services for Tribune Publishing and the Publishing Subsidiaries out of its service provider facilities in San Jose, Costa Rica and Chennai, India. Tribune Publishing entered into the MSA as part of an effort to standardize and centralize how it and each of the Publishing Subsidiaries services its advertisers along with achieving cost reductions through outsourcing those services.

9. The MSA provides details on the scope of the services, the costs to Tribune Publishing of those services, and service level performance metrics against which HP's performance is measured, among other terms. HP's work under the MSA generally covers Tribune Publishing's and the Publishing Subsidiaries' respective smaller advertisers. These advertisers, in the aggregate, represent about 30% of Tribune Publishing's and the Publishing Subsidiaries' advertising revenues, but about 70% of the actual advertising customers for the newspapers and interactive operations being serviced. Tribune Publishing's advertiser services were transitioned to HP during January through July of 2008. HP has been performing these services for Tribune Publishing and the Publishing Subsidiaries ever since.

10. In mid-2009, Tribune Publishing and HP engaged in discussions regarding modifying the existing MSA. Specifically, Tribune Publishing sought certain rate reductions on services being provided by HP and other modifications to the terms of the MSA. Discussions between Tribune Publishing and HP progressed during the summer and fall of 2009 and

culminated in the parties' agreement to amend the MSA to accomplish these objectives. The parties intend to execute the amendment to the MSA on or prior to December 1, 2009, with the terms of such amendment to become effective as of January 1, 2010 (the "Effective Date").[3] In order to effectuate the terms of the amendment and to secure the enhanced economic benefits of the amended MSA for its estate, Tribune Publishing has determined both to amend the MSA and to assume the MSA, as amended.

11. Through a reduction in the rates charged under the amended MSA, Tribune Publishing estimates that it will achieve cost savings of approximately $2.2 million, or 11%, in the amounts paid to HP over the remaining five years of the agreement. The parties have also agreed to modify the service-level performance metrics under the MSA, to incentivize better results with respect to HP's collection of advertising customer amounts payable to Tribune Publishing and the Publishing Subsidiaries, and to simplify the billing methodology used to calculate fees payable by Tribune Publishing to HP under the MSA, reducing Tribune Publishing's administration time and costs.

12. In conjunction with the assumption of the amended MSA, Tribune Publishing has agreed to accelerate payment on its outstanding liabilities for "transition services" under the MSA, to be paid in a lump sum payment of $2.16 million upon the Court's approval of the relief requested in this Motion. Currently, HP bills for such transition services each month on an amortized basis, spread over the term of the MSA. This accelerated lump sum payment

---

[3] The MSA, as amended, contains terms that HP considers confidential and commercially or competitively sensitive information. A joint motion to file the amended MSA under seal is being filed contemporaneously with this Motion. Tribune Publishing and HP will make the MSA available to professionals representing the Committee and the steering committee of Tribune's prepetition lenders (the "Steering Committee") subject to confidentiality constraints, including as described in the joint motion to file under seal, and will make the MSA available upon request to the Office of the United States Trustee.

The parties respectfully reserve their rights to make modifications to the amended MSA, which modifications may be made in writing without further approval from this Court either before or after this Court's approval of the assumption of the amended MSA, provided that such modifications are not material either individually or in the aggregate.

reflects a significant reduction in the amount that would otherwise have been paid to HP over the term of the MSA.[4] In consideration for the early assumption of the amended MSA and for the payments to be made by Tribune Publishing to HP in connection therewith, HP has agreed to waive and release any and all claims for sums due it may have against Tribune Publishing or any of the other Debtors arising prior to the Effective Date, including any and all claims for sums due arising prior to the Petition Date. HP has agreed on behalf of itself and its affiliates that all such amounts have been paid, and accordingly that HP will withdraw with prejudice that certain proof of claim filed by HP in Tribune Publishing's chapter 11 case on or about April 21, 2009 in the face amount of $2,574,000, which claim has been assigned claim number 1227 by the Court-appointed claims agent in these chapter 11 cases.

## RELIEF REQUESTED

13. By this Motion, Tribune Publishing seeks entry of an order authorizing and approving the assumption of the prepetition MSA, as amended, pursuant to section 365(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

14. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)). A debtor's assumption or rejection of an executory contract is subject to review under the business judgment standard. In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an

---

[4] The parties agree that Tribune Publishing's election to accelerate payment of its liabilities for "transition services" rendered by HP pursuant to the MSA at a reduced rate is a transaction within the ordinary course of its business dealings with HP pursuant to section 363(c)(1) of the Bankruptcy Code.

executory contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test").

15. Under the business judgment test, a debtor is required to proffer a reason why, in its business judgment, assumption or rejection of the executory contract or unexpired lease at issue benefits the debtor's estate and then articulate the bases of that determination. See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). Application of the business judgment standard thus dictates "that a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion." See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986); Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching).

16. Tribune Publishing believes, in its business judgment, that the MSA is important to the ongoing business operations of the Debtors' publishing segment and that assumption of the amended MSA by Tribune Publishing is in the best interests of its estate and creditors. As described above, Tribune Publishing has negotiated terms in the amended MSA that will confer a rate reduction of approximately $2.2 million, or 11%, in the amounts paid to HP over the remaining five years of the agreement. In addition, the modifications to the service-level performance metrics under the MSA will incentivize better results with respect to HP's collection of advertising customer amounts payable to Tribune Publishing and the Publishing Subsidiaries on a timely basis, and the simplification of the billing methodology used to calculate

fees payable by Tribune Publishing to HP will reduce administration time and costs under the MSA.

17. Moreover, in consideration for the proposed early assumption of the MSA, as amended, and for the accelerated lump sum payment of $2.16 million by Tribune Publishing in full satisfaction of its outstanding liabilities for "transition services" under the MSA, HP has agreed to waive and release any and all claims for sums due by Tribune Publishing or the other Debtors prior to the Effective Date, including claims arising prior to the Petition Date. As part of this waiver and release of claims, HP has agreed to voluntarily withdrawal its proof of claim number 1227, in the amount of $2,574,000.00 with prejudice. Accordingly, Tribune Publishing respectfully submits that the assumption of the amended MSA is supported by sound business judgment and is in the best interests of its estates and creditors.

18. Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations – by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993). HP and Tribune Publishing agree that there are no existing defaults in performance under the MSA, monetary or otherwise, that require cure. Furthermore, the Debtors have obtained postpetition financing and maintain sufficient liquidity to perform all of their postpetition obligations under the assumed amended MSA and HP agrees that it has been provided with adequate assurance of Tribune Publishing's future performance under the MSA. Accordingly, Tribune Publishing has met all of the requirements for the assumption of the amended MSA.

## NOTICE

19.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) counsel to HP; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

20.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, Tribune Publishing respectfully requests that the Court enter an order, in substantially the form attached hereto as <u>Exhibit B</u>, authorizing and approving the assumption of the MSA, as amended, effective as of January 1, 2010 and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
November 13, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: ____/s/____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION