# EXHIBIT A

## *Amsden Declaration*

'

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket No. ___** |

## DECLARATION OF HARRY A. AMSDEN IN SUPPORT OF MOTION OF DEBTOR TRIBUNE PUBLISHING COMPANY FOR AN ORDER AUTHORIZING ASSUMPTION OF AMENDED MASTER SERVICES AGREEMENT WITH HEWLETT-PACKARD COMPANY

I, Harry A. Amsden, hereby declare as follows:

1.      I am Assistant Treasurer of Tribune Publishing Company ("Tribune

Publishing"), a corporation organized under the laws of Delaware and one of the debtors and

debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

chapter 11 cases.  I am generally familiar with Tribune Publishing's operations and I am authorized to make this Declaration (the "Declaration") on its behalf in support of the motion of Tribune Publishing for an order pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code") authorizing and approving the assumption of that certain Master Services Agreement, as amended, between Tribune Publishing and Hewlett-Packard Company ("HP") (the "Motion").[2]  Unless otherwise stated in this Declaration, I have personal knowledge of the facts as set forth herein.  If called to testify at the hearing, I would state that:

2.      Tribune Publishing provides the group office functions for the Debtors' publishing business and oversees all publishing entities.  Currently, the Debtors' publishing segment operates eight (8) major-market daily newspapers, including daily newspapers in two of the three largest metropolitan markets in the United States, and over 100 "niche" publications that target various geographic, ethnographic, and demographic audiences.  The Debtors' publishing segment also distributes entertainment listings and syndicated content and manages the websites of the Debtors' daily newspapers, television stations, and other branded sites targeting specific communities of interest.

3.      On July 26, 2007, Tribune Publishing entered into a seven year Master Services Agreement with HP (the "MSA"), covering specified finance and accounting services in the areas of credit, collections, cash applications, billing, post-sale customer service, and advertising contract administration for certain of Tribune Publishing's advertising customers. HP provides these services for Tribune Publishing out of its service provider facilities in San Jose, Costa Rica and Chennai, India.  Tribune Publishing entered into the MSA as part of an

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

effort to standardize and centralize how it services its advertisers along with achieving cost reductions through outsourcing those services.

4.    The MSA provides details on the scope of the services, the costs to Tribune Publishing of those services, and service level performance metrics against which HP's performance is measured, among other terms.  HP's work under the MSA generally covers Tribune Publishing's smaller advertisers.  These advertisers, in the aggregate, represent about 30% of Tribune Publishing's advertising revenues, but about 70% of the actual advertising customers for the newspapers and interactive operations being serviced.  Tribune Publishing's advertiser services were transitioned to HP during January through July of 2008.  HP has been performing these services for Tribune Publishing ever since.

5.    In mid-2009, Tribune Publishing and HP engaged in discussions regarding modifying the existing MSA.  Specifically, Tribune Publishing sought certain rate reductions on services being provided by HP and other modifications to the terms of the MSA.  Discussions between Tribune Publishing and HP progressed during the summer and fall of 2009 and culminated in the parties' agreement to amend the MSA to accomplish these objectives.  The parties intend to execute the amended MSA on or prior to December 1, 2009, with the terms of such amendment to become effective as of January 1, 2010 (the "Effective Date").

6.    Tribune Publishing believes, and I agree, that the assumption of the amended MSA is in its best interests and in the best interests of its estate and creditors.  Through a reduction in the rates charged under the amended MSA, Tribune Publishing estimates that it will achieve cost savings of approximately $2.2 million, or 11%, in the amounts paid to HP over the remaining five years of the agreement.  The parties have also agreed to modify the terms of the service-level performance metrics under the MSA, to incentivize better HP's collection of

3

advertising customer amounts payable to Tribune Publishing, and to simplify the billing methodology to Tribune by HP under the MSA, reducing Tribune Publishing's administration time.

      7.     In conjunction with the assumption of the amended MSA, Tribune Publishing has agreed to accelerate payment on its outstanding liabilities for "transition services" under the MSA, to be paid in a lump sum payment of $2.16 million upon the Court's approval of the relief requested in the Motion. Currently, HP bills for such transition services each month on a pro rata basis, spread over the term of the MSA. This accelerated lump sum payment reflects a significant reduction in the amount that would otherwise have been paid to HP over the term of the MSA. In consideration for the early assumption of the amended MSA and for the payments to be made by Tribune Publishing to HP in connection therewith, HP has agreed to waive and release any and all claims for sums due it may have against Tribune Publishing or any of the other Debtors arising prior to the Effective Date, including any and all claims for sums due arising prior to the Petition Date. HP has agreed on behalf of itself and its Affiliates that all such amounts have been paid, and accordingly that HP will withdraw with prejudice that certain proof of claim filed by HP in Tribune Publishing's chapter 11 case on or about April 21, 2009 in the face amount of $2,574,000, which claim has been assigned claim number 1227 by the Court-appointed claims agent in these chapter 11 cases.

      8.     The amended MSA is the products of arm's-length negotiations between Tribune Publishing and HP and will result in cost savings to Tribune Publishing both in terms of the reduced rates payable to HP for business processing services, the reduction in liability for transition services costs that would otherwise have been payable over the term of the MSA, and the withdrawal of a sizable proof of claim against Tribune Publishing's estate. HP and Tribune

Publishing agree that there are no existing defaults in performance under the MSA, monetary or otherwise, that require cure, and HP further agrees that it has been provided with adequate assurance of Tribune Publishing's future performance under the MSA.  In light of the foregoing, Tribune Publishing respectfully submits, and I agree, that assuming the MSA is supported by its sound business judgment and is in the best interests of its estate and creditors.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: ___11/11___, 2009

HARRY A. AMSDEN