# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

**Hearing Date: December 1, 2009 at 10:00 a.m. ET**
**Objection Deadline: November 23, 2009 at 4:00 p.m. ET**

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Tribune Company ("Tribune") and its affiliated debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors"), hereby move this Court (the

"Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy

Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074);

Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order further

extending the Debtors' exclusive periods to file a chapter 11 plan or plans of reorganization

through and including March 31, 2010 and to solicit acceptances of such plan(s) through and

including May 31, 2010.[2]  In support of this Motion, Tribune and its affiliated Debtors[3]

respectfully state as follows:

## PROGRESS TOWARD A PLAN OF REORGANIZATION

1.      The Debtors have made substantial progress toward filing a plan of

reorganization (the "Plan") which will resolve these bankruptcy cases, and are continuing their

efforts to drive these cases toward resolution.  At this juncture, approximately twelve months

after the bankruptcy filing, most of the prerequisites to the filing of a Plan have been

accomplished.  As discussed in greater detail below: (1) the Debtors' businesses have been

stabilized and recoveries in these cases have been substantially enhanced by the management

team's success in achieving profitable operating results exceeding those of most of the Debtors'

---

WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2]  Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a Plan (the "Exclusive Filing Period").  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such Plan (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods").  The Debtors' initial Exclusive Filing Period was through April 6, 2009 and their initial Exclusive Solicitation Period was through June 5, 2009.  Prior to expiration of the initial Exclusive Filing Period, the Debtors filed their first motion to extend the Exclusive Periods on March 27, 2009 (the "First Exclusivity Extension Motion") (Docket No. 822).  The Court granted the Debtors' First Exclusivity Extension Motion and entered an order on April 23, 2009 extending the Debtors' Exclusive Filing Period to August 4, 2009 and Exclusive Solicitation Period to October 5, 2009 (Docket No. 1075).  On July 24, 2009, the Debtors filed their second motion to further extend their Exclusive Periods (the "Second Exclusivity Extension Motion") (Docket No. 1820), and on August 11, 2009, the Court entered an order extending the Debtors' Exclusive Filing Period to November 30, 2009 and Exclusive Solicitation Period to January 29, 2010 (the "Second Exclusivity Extension Order") (Docket No. 1936).

[3]  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in

newspaper and broadcasting industry peers; (2) a multi-year business plan and proposed post-effective date capital structure have been developed and shared with the Debtors' main creditor constituencies; (3) extensive operational, financial and legal analyses related to the Plan have been conducted and discussed with those same constituencies; and (4) substantial progress has been made in completing most of the "case administration" tasks required to bring these cases to resolution.

2.    Indeed, at this juncture the principal remaining task to be addressed is to bring the review of the Debtors' prepetition Leveraged ESOP Transactions to a prompt conclusion.[4] For their part, the Debtors and their professionals have expended considerable efforts in their own review and analysis of the Leveraged ESOP Transactions and related debt financings. This has included working with parties involved in the transactions, review of hundreds of thousands of pages of internal Tribune documents, review of tens of thousands of documents produced by third parties who participated in the transactions, extensive review of related public record documents and public commentary, and analysis of possible associated legal issues.

3.    Since Spring of 2009, over 30 entities and persons involved with the Leveraged ESOP Transactions have responded to numerous informal document production

---

this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b)(1) and Local Rule 9006-2.

[4] Tribune returned to private ownership in 2007 when its board of directors, based on the recommendation of a special committee of the board comprised entirely of independent directors, approved a series of transactions (collectively, the "Leveraged ESOP Transactions") with a newly formed Tribune employee stock ownership plan (the "ESOP"), EGI-TRB, LLC, a Delaware limited liability company wholly owned by Sam Investment Trust (a trust established for the benefit of Samuel Zell and his family), and Samuel Zell. These transactions ultimately resulted in the transfer of ownership of Tribune and its subsidiaries to the ESOP.

requests.[5] In addition, the Debtors have supported requests for access to this material from Law

Debenture Trust Company of New York, as successor trustee for the 6.61% debentures due 2027

and the 7 1/4% debentures due 2096 ("Law Debenture"), and Centerbridge Credit Advisors LLC

("Centerbridge"), which appears to hold a large amount of Tribune's public notes.[6]

4.        The point of the foregoing analysis and review by the Debtors and other

major constituencies is to have the facts and analysis sufficiently understood so they can be dealt

with, if and as appropriate, in a Plan which provides a fair and efficient resolution of these cases.

Substantial progress has been made toward that end and the Debtors and other major

constituencies are close to reaching the point where the major parties have sufficient knowledge

of the facts to engage in substantive discussions aimed at consensually resolving any issues that

are thought to exist.

5.        The Debtors intend to file a Plan within the time period of the extended

exclusivity period sought by this Motion. The Debtors' preferred solution in these cases is a

consensual agreement among major constituencies encompassed in a Plan. Alternatively, the

Debtors believe that the above described efforts will provide a framework that will position the

Debtors to propose a Plan that provides for resolution of any remaining issues in a fair manner.

In either event, it is the Debtors' goal to confirm a Plan that will avoid prolonged and expensive

litigation that would cause significant harm to the Debtors and their estates.

---

[5] The Debtors have filed concurrently with this Motion their request for the Court to schedule a status conference for the December 1, 2009 omnibus hearing date to address the progress of the review of the Leveraged ESOP Transactions and outstanding discovery requests.

[6] See Order Approving Stipulation as Between the Debtors, the Unsecured Creditors Committee, J.P. Morgan Chase Bank, N.A., Citigroup Global Markets, Inc., Merrill Lynch Capital Corporation, Merrill, Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., Valuation Research Corporation, Robert R. McCormick Foundation, Cantigny Foundation, and Law Debenture Trust Company of New York, Law Debentures' Motion for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or, Alternatively for the Appointment of an Examiner, which was entered by the Court on September 25, 2009 (the "Rule 2004 Motion") (Docket No. 2235).

## SIGNIFICANT ACHIEVEMENTS TO DATE

6.     The Debtors' efforts to date also show that these cases have been well conducted, that substantial progress has been made in providing the foundation for a Plan, and that the Debtors are best positioned to manage the Plan process.  The Debtors' achievements include the following:

7.     **Creditor Recoveries**.  Likely Plan recoveries in these cases have been substantially enhanced by the management team's success in achieving profitable operating results exceeding those of most of the Debtors' newspaper and broadcasting industry peers and stabilizing the Debtors' businesses in an extraordinarily difficult economy.  The Debtors' efforts to reposition and stabilize their businesses through cost saving and revenue enhancing strategies have resulted in projected operating cash flow of approximately $400 million in 2009, an amount nearly double their original operating plan.  The Debtors have also successfully consummated the disposition of an interest in the Chicago Cubs baseball team and related assets, resulting in the receipt of more than $700 million of cash.

8.     **Development of a Multi-year Business Plan**.  The Debtors have developed and shared with their main creditor constituencies their multi-year business plan and proposed post-effective date capital structure, and have achieved consensus that the Debtors' businesses remain viable.  The Debtors have spent considerable time and effort preparing their business plan, and have updated the business plan based upon their recent success in stabilizing and enhancing business operations.

9.     **Provision of Operational, Financial and Legal Analyses**.  The Debtors have provided the Official Committee of Unsecured Creditors (the "Official Committee") and the ad hoc senior lender steering committee (the "Steering Committee," and collectively the

"Committees") with extensive operational, financial and legal analyses related to the Plan, have reviewed specific Plan terms and provisions with the Committees, and have received, responded to, and where appropriate, incorporated the Committees' comments and suggestions. These exchanges have addressed tax, regulatory, governance, and other operational and legal issues, and provided the necessary economic, business and legal grounding for much of the Debtors' Plan. The Debtors have also provided much of this analysis to, and exchanged views with, certain individual stakeholders with substantial claims, including Centerbridge and Law Debenture.

10.    **Completion of Most Case Administration Tasks**. The Debtors have made substantial progress toward the completion of most of the "case administration" tasks required to bring these cases to resolution, including reconciling claims, analyzing executory contracts, and assuming or rejecting unexpired leases. As of the general bar date for filing proofs of claim,[7] over 6,000 proofs of claim were filed; in total, over 38,000 claims totaling approximately $606 billion in the aggregate have been scheduled or filed in these cases.[8] The Debtors and their professionals have reviewed these claims, recently completing reconciliation of approximately 90% of the more than 34,000 general trade claims, and are pursuing claim objections and a claims allowance procedures motion to ensure timely and appropriate recognition of claims. The Debtors are party to approximately 45,000 executory contracts and unexpired leases, and have analyzed and reviewed the material contracts and leases. Where appropriate, the Debtors have obtained Court approval to assume executory contracts and unexpired leases. Additionally, the Debtors identified opportunities for renegotiation of existing business relationships, resulting in the formulation of economically favorable agreements with

---

[7]  On March 26, 2009, the Court entered an order establishing a general bar date of June 12, 2009 (Docket No. 813).

significant cost savings.  The Debtors also obtained orders from the Court authorizing rejection of over 70 real estate leases and subleases for annual cost savings exceeding $15 million for properties no longer required for the Debtors' ongoing business operations.[9]  The Debtors expect that the process of evaluating and assuming or rejecting all remaining unexpired leases will be completed by the end of 2009.

11.    **Leveraged ESOP Transactions**.  The Debtors have worked with the Committees and other constituencies in reviewing the Leveraged ESOP Transactions.  In the Spring of 2009, the Official Committee issued informal document production and other information requests to the Debtors and more than 30 entities and persons involved in the Leveraged ESOP Transactions (the "Discovery Parties").[10]  Discovery conducted to date, both informally and pursuant to agreed orders, has resulted in the production of masses of documents from the Discovery Parties which have been reviewed by the Debtors, the Official Committee and other parties.  In addition, as explained above, the Debtors have conducted their own review of these matters and have encouraged all parties to cooperate in this process.

12.    The Debtors' goal in pursuing each of the initiatives described above is to timely file a Plan which allows the Debtors to emerge from chapter 11 without the destabilization and enormous expense attendant to warring creditor factions and protracted litigation, and thereby maximize the value of the distributions to creditors under the Plan.  The

---

[8]  The Debtors estimate that the total amount of allowed claims may not vary substantially from their scheduled aggregate liabilities of approximately $13.7 billion.

[9]  The Court approved the Debtors' five omnibus motions to reject certain leases of nonresidential real property and related executory contracts through orders entered on: January 15, 2009 (Docket No. 226); February 20, 2009 (Docket No. 430); March 24, 2009 (Docket No. 791); June 25, 2009 (Docket No. 1629); and September 2, 2009 (Docket No. 2073).

[10]  Additionally, on June 10, 2009 the Official Committee filed a motion pursuant to Bankruptcy Rule 2004 ("Committee 2004 Motion") seeking the production of documents from and examination of the Robert R. McCormick Tribune Foundation and the Cantigny Foundation, two former Tribune stockholders from whom shares

Debtors submit that maintaining their exclusivity so that these issues can be addressed comprehensively in the context of a single Plan to be filed by the Debtors is in the best interest of these estates and is the most likely path to provide for an expeditious, efficient and fair resolution of these cases.

## RELIEF REQUESTED

13.    Section 1121(d) permits this Court to extend the Exclusive Periods for "cause." By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that (i) the Exclusive Filing Period in which the Debtors have the exclusive right to file a chapter 11 Plan be extended through and including March 31, 2010;[11] and (ii) the Exclusive Solicitation Period in which the Debtors have the exclusive right to solicit acceptance of such Plan be extended through and including May 31, 2010. The Debtors further request that such an extension be without prejudice to their rights to seek additional extensions of the Exclusive Periods. This is the Debtors' third request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF

A.    **Section 1121(d) of the Bankruptcy Code Permits the Court
to Extend the Exclusive Periods "For Cause"**

14.    The objective of a chapter 11 reorganization case is the negotiation, formulation, development, confirmation and consummation of a plan of reorganization, and the Debtors intend to achieve that objective. The Exclusive Periods under section 1121(d) are intended to afford a debtor a full and fair opportunity to formulate and propose such a plan of reorganization and to solicit acceptances thereof without the deterioration and disruption to its operations that could result from the filing of competing plans of reorganization by non-debtor

---

were purchased by Tribune in connection with the Leveraged ESOP Transactions (Docket No. 1334). That Motion was resolved by Stipulation and Order entered on or about August 21, 2009 (Docket No. 1997).

parties.  In circumstances where the initial 120 and 180-day Exclusive Periods prove to be an

unrealistic time frame within which a debtor may otherwise be forced to file a plan of

reorganization, section 1121(d) of the Bankruptcy Code allows this Court to extend the Debtors'

Exclusive Periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

15.    It is well established that the decision to extend the Debtors' Exclusive

Periods is committed to the sound discretion of the Court and should be based upon the facts and

circumstances of a particular case.  See First Am. Bank of New York v. Southwest Gloves and

Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); 203 N. LaSalle Street P'ship v. Bank of

Am., N.A., 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); In re Mid-State Raceway,

Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005).  Although the Bankruptcy Code does not define

"cause" for the purpose of an extension of the Exclusive Periods, courts have looked to the

legislative history of section 1121(d) for guidance.  See In re Gibson & Cushman Dredging

Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr.

S.D. Ohio 1996).  Courts have found that Congress did not intend that the 120- and 180-day

periods be a hard and fast rule.  See Amko Plastics, Inc., 197 B.R. at 77 (noting that Congress

---

[11]  Pursuant to Rule 9006-2 of the Local Rules, the Debtors' Exclusive Filing Period shall be automatically extended

intended courts to have flexibility in dealing with extensions of exclusivity); <u>Gaines v. Perkins</u>
<u>(In re Perkins)</u>, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is
flexibility").  Rather, Congress intended that the Exclusive Periods be of an adequate length,
given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the
disruption to the business that would occur with the filing of competing plans of reorganization.
See <u>Geriatrics Nursing Home v. First Fidelity Bank, N.A.</u>, 187 B.R. 128, 133 (D.N.J. 1995)
("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to
allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus
ensure its survival as a business.").  Further, Congress recognized that often a 120-day
exclusivity period will not afford a debtor sufficient time to formulate and negotiate a plan:

> [t]he court is given the power, though, to increase . . . the 120-day period
> depending on the circumstances of the case.  [T]he bill allows the
> flexibility for individual cases that is not available today.  For example, if
> an unusually large company were to seek reorganization under chapter 11,
> the Court would probably need to extend the time in order to allow the
> debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted).

      16.     When determining whether cause exists for an extension of the Exclusive
Periods, courts rely on a variety of factors, each of which may provide sufficient grounds for
extending the periods.  Factors considered by the courts in making such a determination include:
(a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and
prepare adequate information; (c) the existence of good faith progress toward reorganization; (d)
whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated
reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in
negotiating with creditors; (g) the length of time the case has been pending; (h) whether the

---

until the Court acts on this Motion.  Del. Bankr. LR 9006-2.

debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc. (In re Burns & Roe Enters., Inc.), 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re R.G. Pharm., Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). All such factors relevant to these cases support the relief requested.

### B.    Cause Exists for a Further Extension of the Exclusive Periods in These Cases

17.    The Size and Complexity of the Case. These are large cases, involving 112 Debtors, billions of dollars of revenues and assets, and more than 14,000 employees. There are numerous complex informational needs that are being addressed in order to fashion a comprehensive and fair Plan. The current Exclusive Periods have not provided an adequate opportunity to file and solicit a confirmable Plan. The Debtors are making a good faith effort to work closely with their major creditor constituencies toward the goal of a consensual Plan, but require additional time to ultimately file and solicit such a Plan. The Debtors have proactively engaged in meaningful discussions with their major creditor constituencies, which discussions have included term sheets and drafts of the proposed Plan to facilitate the successful development of a consensual Plan. The Debtors have likewise both undertaken their own review and analysis of the Leveraged ESOP Transactions and cooperated with their creditors' review of these transactions. These efforts are expected to conclude with the filing of a Plan within the requested extended Exclusive Periods.

18.    Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for an extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan. See H.R. No. 95-595, at 231-232,406 (1978),

reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to

seek reorganization under chapter 11, the court would probably need to extend the time in order

to allow the debtor to reach an agreement."); see also In re Texaco, Inc., 76 B.R. 322, 326

(Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating

a plan of reorganization for a huge debtor with a complex financial structure are important

factors which generally constitute cause for extending the exclusivity periods.").

19.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate
Information.  The Debtors are continuing to work expeditiously to address critical issues and

make progress toward filing a Plan.  The Debtors have devoted substantial time and resources to

the development of the Plan, including ongoing substantive discussions with their major creditor

constituencies.  The requested extension will permit the Debtors to realize the benefits of these

efforts and file the Plan in the near future without the disruptive interference of competing plans

or litigation that could jeopardize the Debtors' timely emergence from chapter 11 protection.

20.    The Existence of Good Faith Progress Toward Reorganization.  The
Debtors have made material progress, as reviewed above, in these chapter 11 cases, and have

done so while working cooperatively with their major creditor constituencies.  The Debtors are

not seeking this further extension to delay administration of the chapter 11 cases or to exert

pressure on their creditors.  To the contrary, this request is intended to maintain a framework

conducive to an orderly, efficient and cost-effective restructuring process and the filing of a

consensual Plan.

21.    The Debtors Are Paying Their Debts as They Come Due.  Courts
considering whether to extend a debtor's exclusivity periods may also assess whether the debtor

is paying its debts when they come due.  See In re McLean Indus., 87 B.R. 830, 834 (Bankr.

S.D.N.Y. 1987).  The Debtors have sufficient liquidity to pay, and are paying, their undisputed

post-petition obligations as they come due, and continue to manage their businesses effectively

and are preserving the value of their assets for the benefit of their creditors.  As of September 27,

2009, the Debtors had approximately $758 million in available cash balances, which has been

subsequently enhanced by the receipt of more than $700 million in cash as well as the retention

of approximately $30 million of cash and receivables relating to the Cubs transactions.  In fact,

the Debtors' substantial cash balance has resulted in their announcement of their intent to repay

the outstanding balances of the revolving and term portions of their DIP financing facility.  The

Debtors clearly have sufficient cash to conduct their businesses and fund these chapter 11 cases.

22.    The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable

Plan and Are Making Progress in Negotiating with Creditors.  As stated above, the Debtors are

approaching the final stages of Plan discussions with their major creditor constituencies and

anticipate filing a Plan within the proposed Exclusive Periods.

23.    The Short Tenure of These Cases.  While the Debtors' cases have been

pending for nearly twelve months, the Debtors have accomplished a substantial amount in what

is a relatively short period of time given the size, complexity and certain unique attributes of

these cases.  It is not uncommon for a further extension of the Exclusive Periods to be requested

in such large and complex cases, and given the challenges faced by the Debtors and the progress

made to date, the Debtors submit that a further extension of the Exclusive Periods is warranted.

24.    Termination of the Debtors' Exclusive Periods Would Adversely Impact

These Cases.  Termination of the Debtors' Exclusive Periods would have a material adverse

impact upon the Debtors' business operations and progress in these cases.  If this Court were to

deny the Debtors' request for a further extension of the Exclusive Periods, any party in interest

13

would be free to propose a plan of reorganization for some or all of the 112 Debtors. Such a ruling would be destabilizing, potentially fostering a chaotic environment at the very time the Debtors and their major creditor constituencies are actively engaged in efforts to achieve a successful reorganization of the Debtors' businesses consensually.

25.    The relief requested in this Motion for a third extension of the Exclusive Periods has been granted to other debtors in this jurisdiction in other chapter 11 cases. See In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 4, 2009); In re New Century TRS Holding, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del. Jan. 23, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. July 18, 2008); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 25, 2006); In re Meridian Auto. Sys. Composites Operations, Inc., Case No. 05-11168 (MFW) (Bankr. D. Del. Apr. 11, 2006).

26.    The Debtors respectfully submit that, under all the relevant facts and circumstances, the requested further extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor, and will afford the parties the opportunity to pursue to fruition the beneficial objectives of a confirmable Plan.

27.    Based upon the foregoing, the Debtors submit that cause exists in these bankruptcy proceedings to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Specifically, the Debtors respectfully request that the Exclusive Filing Period be extended, through and including March 31, 2010, and that the Exclusive Solicitation Period be extended through and including May 31, 2010.

## NOTICE

28.     Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the

United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v)

counsel for the Official Committee; (vi) counsel to the Steering Committee; (vii) counsel to the

administrative agent for the Debtors' postpetition loan facility; (viii) the indenture trustees for

the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit

that no other or further notice is necessary.

[Remainder of page intentionally left blank]

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form of the proposed order attached hereto as Exhibit A (i) extending the Exclusive Filing Period through and including March 31, 2010, (ii) extending the Exclusive Solicitation Period through and including May 31, 2010 and (iii) granting such other relief as is just and proper.

Dated:    Wilmington, Delaware           Respectfully submitted,
          November 13, 2009

                                         SIDLEY AUSTIN LLP
                                         James F. Conlan
                                         Bryan Krakauer
                                         Janet E. Henderson
                                         Candice L. Kline
                                         One South Dearborn Street
                                         Chicago, IL  60603
                                         Telephone:  (312) 853-7000
                                         Facsimile:  (312) 853-7036

                                                 -and-

                                         COLE, SCHOTZ, MEISEL,
                                         FORMAN & LEONARD, P.A.

                                         By: _____
                                         Norman L. Pernick (No. 2290)
                                         J. Kate Stickles (No. 2917)
                                         Patrick J. Reilley (No. 4451)
                                         500 Delaware Avenue, Suite 1410
                                         Wilmington, DE  19801
                                         Telephone:  (302) 652-3131
                                         Facsimile:  (302) 652-3117

                                         ATTORNEYS FOR DEBTORS
                                         AND DEBTORS IN POSSESSION