IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------ x
In Re:

TRIBUNE COMPANY, et al.,

          Debtors.

------------------------------ x

: Chapter 11
: Case No. 08-13141 (KJC)
: (Jointly Administered)
:
: **Re: Docket No. 2407**
:
: Hearing Date: Dec. 1, 2009 at 10:00 a.m. (ET)
: Objection Deadline: Nov. 20, 2009 at 4:00 p.m.
: (ET)

## JPMORGAN CHASE BANK, N.A.'S OBJECTION TO "MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK TO TERMINATE DEBTOR AFFILIATES' UNDISCLOSED PAYMENT OF LBO LENDERS' FEES AND EXPENSES, FOR AN ACCOUNTING, AND FOR DISGORGEMENT OF PAST PAYMENTS" [DKT. NO. 2407]

JPMorgan Chase Bank, N.A. ("JPMorgan") respectfully submits this objection to the motion (the "Motion") of Law Debenture Trust Company of New York ("Law Debenture"), filed pursuant to Sections 105(a) and 363 of Title 11 of the United States Code, seeking the termination, accounting and disgorgement of certain payments (the "Payments") made by non-debtor subsidiaries (the "Non-Debtor Guarantors") of the debtor, Tribune Company ("Tribune").

### INTRODUCTION

1.    Law Debenture is a successor to Deutsche Bank Trust Company Americas ("Deutsche Bank") as indenture trustee for two of the eight issues of senior bonds of Tribune.[1] On information and belief, Deutsche Bank was replaced as indenture trustee

---

[1] The eight series of senior bonds consist of all bonds issued pursuant to the Indenture, dated March 1, 1992, between Tribune and Bank of New York as Trustee; the Indenture, dated January 30, 1995, between New TMC Inc. and First Interstate Bank of California as Trustee; the Indenture, dated March 19,

after commencement of the case by a single holder of bonds, Centerbridge Credit Advisors LLC ("Centerbridge"), who purchased a controlling position in the relevant series of bonds and directed the indenture trustee to resign in favor of Law Debenture.[2]

2. Law Debenture's motion has no basis in law or fact. The Payments are made by the Non-Debtor Guarantors pursuant to their independent obligations under a Guarantee Agreement dated as of June 4, 2007, and were fully disclosed to the Official Committee of Unsecured Creditors ("Creditors' Committee")[3] and the United States Trustee in advance of the payments being commenced. The Payments were not made with property of the Debtors' estates. Accordingly, Section 363 has no application, and Section 105 cannot extend the reach of Section 363 to these non-debtors.

## BACKGROUND

3. On May 17, 2007, Tribune entered into a senior secured credit agreement (the "Credit Agreement") with certain lenders ("Senior Lenders"), under which

---

1996, between The Times Mirror Company and Citibank, N.A., as Trustee; and the Indenture, dated January 1, 1997, between Tribune and Bank of Montreal Trust Company, as Trustee and the successors and assigns of the respective parties. Law Debenture is currently the indenture trustee for the two series of bonds issued pursuant to the March 19, 1996 Indenture.

[2] JPMorgan has no information regarding the prices at which Centerbridge purchased its bonds, but believes that such purchases were made well after the closing of the 2007 Leveraged ESOP Transaction with knowledge of the Company's capital structure and financial condition. On September 21, 2009, Centerbridge disclosed that it had increased its holdings to 37% of the entire class of senior bonds.

[3] The Creditors' Committee was appointed by the United States Trustee on December 18, 2008. The members included two indenture trustees, Deutsche Bank and Wilmington Trust Company, who continue to sit on the Committee. At the time, Deutsche Bank represented the series of 6.61% Debentures due September 15, 2027 and the series of 7.25% Debentures due November 15, 2096 now represented by Law Debenture as indenture trustee. JPMorgan is a member of the Creditors' Committee, but has at all times recused itself and its counsel from any participation in the Creditors' Committee's deliberations regarding the Non-Debtor Guarantor payments. JPMorgan has not sought payment for any legal fees incurred in its capacity as a member of the Creditors' Committee.

JPMorgan was appointed as administrative agent ("Agent"). The agreement provides in pertinent part that,

> Borrower further agrees to pay promptly following demand all reasonable and documented out-of-pocket costs and expenses of the Agent, the Lead Arrangers and the Lenders, if any (including, without limitation, reasonable and documented counsel fees and expenses), in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of this Agreement, the Notes and the other documents to be delivered hereunder, including, without limitation, reasonable and documented fees and expenses of counsel for the Agent and each Lender in connection with the enforcement of rights under this Section 8.04(a).

(Credit Agreement § 8.04(a).)

4. On June 4, 2007, certain of Tribune's subsidiaries (the "Guarantor Subsidiaries"), including the Non-Debtor Guarantors, entered into a Guarantee Agreement wherein each Guarantor Subsidiary individually and unconditionally guaranteed all of Tribune's obligations under the Credit Agreement. Each Guarantor Subsidiary is obligated under the Guarantee Agreement as a primary obligor and not merely as a surety.

5. On December 8, 2008, Tribune and certain of its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The following Non-Debtor Guarantors, however, did not file bankruptcy petitions: Chicago National League Ball Club, LLC; Tribune (FN) Cable Ventures, Inc.; Tribune Interactive, Inc.; Tribune National Marketing Company; and Tribune ND, Inc.[4]

---

[4] On October 12, 2009, Chicago National League Ball Club, LLC filed for reorganization and subsequently changed its name to Tribune CNLBC, LLC. Tribune ND, Inc. is the successor company to Newsday, Inc., a guarantor under the June 4, 2007 Guarantee Agreement.

3

RLF1 3507720v.1

6.  After the filing, the Agent and a steering committee of Senior Lenders sought reimbursement from the Non-Debtor Guarantors, directly pursuant to the Credit Agreement and the Guarantee Agreement, of the fees and expenses of their professional advisors that are reimbursable under the Credit Agreement. In February 2009, before commencement of the Payments, the Creditors' Committee and the United States Trustee were informed. (Motion ¶ 11). The Agent agreed to provide the Creditors' Committee with periodic summaries of the fees and expenses.

7.  In March 2009 the Non-Debtor Guarantors commenced making the Payments to honor their obligations under the Guarantee Agreement. The Creditors' Committee has been provided with quarterly updates of the costs and fees reimbursed by the Non-Debtor Guarantors. The United States Trustee has not objected to the Payments.

## ARGUMENT

### SECTION 363 HAS NO APPLICATION TO NON-DEBTORS

8.  The Payments by the Non-Debtor Guarantors do not constitute use of property of the estate subject to Section 363. (Motion ¶ 27.) Section 541 of the Code defines "property of the estate." The definition is broad, but the property must be property of the debtor. 11 U.S.C. § 541.

9.  The nature and extent of the debtor's legal or equitable interest in property is a question of applicable non-bankruptcy law. *Butner v. United States*, 440 U.S. 48, 54 (1979).

10. Under non-bankruptcy law, in Delaware and elsewhere, the assets of a subsidiary are not property of the parent. *Dole Food Co. v. Patrickson*, 538 U.S. 468,

474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. . . . A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary . . . ."). "It is an axiom of corporate law that '[t]he corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation.' . . . A parent company does not hold the assets of a subsidiary . . . ." *Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.)*, 351 B.R. 313, 321 & n.7 (Bankr. D. Del. 2006) (quoting *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87 (Del. 1959)) (applying Delaware law); *Bird v. Wilmington Soc'y of Fine Arts*, 43 A.2d 476, 483 (Del. 1945) ("The owner of the shares of stock in a company is not the owner of the corporation's property."); *Du Pont v. Du Pont*, 208 A.2d 509, 512 (Del. 1965) ("The shareholder has essential rights to share in the profits and in the distribution of assets on liquidation, but no specific interest in the corporate assets."); *Norte & Co. v. Manor Healthcare Corp.*, 1985 Del. Ch. LEXIS 526 (Del. Ch. Nov. 21, 1985) ("[T]he corporation is the legal owner of its property and the stockholders do not have any specific interest in the assets of the corporation.")

11.   Recognizing that the Motion is flawed on its face, Law Debenture asks this Court to extend the reach of Sections 363 and 541 to assets of non-debtors, by using the All Writs power of the Court under Section 105(a). But, "§ 105(a) does not give the court the power to create substantive rights that would otherwise be unavailable under the Code." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (internal quotation marks and citations omitted).

12. Moreover, Law Debenture essentially asks this Court to enjoin the Non-Debtor Subsidiaries from making payments pursuant to their contractual obligations, and to issue a mandatory injunction requiring the non-debtor recipients of the Payments to return them.

13. Any "request for relief under section 105 must meet traditional requirements for an injunction." 2 Collier on Bankruptcy ¶ 105.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see GAF Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 26 B.R. 405, 415 (Bankr. S.D.N.Y. 1983). Here, where injunctive relief is specifically sought, from several non-debtor parties, it is even more appropriate that the rules for injunctive relief be applied. Under those rules, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *see also* 2 Collier on Bankruptcy ¶ 105.03 n.1 (collecting cases applying this standard to preliminary injunctions under section 105).

14. Law Debenture has made no showing to support the issuance of injunctive relief. Indeed, its motion is based principally on rhetoric and innuendo.

15. Unable to argue either the law or the facts, Law Debenture is left to try to manufacture an air of impropriety between Tribune and the Agent through false allegations of "undisclosed" and "surreptitious" payments.[5]

---

[5] Law Debenture refers to a motion for reconsideration of an order regarding use of cash collateral brought by a creditors' committee in an unrelated bankruptcy seeking, *inter alia*, disgorgement of certain payments made to JPMorgan. (Motion ¶ 19 n.5.) Law Debenture fails to disclose that the court

16.  There is nothing surreptitious about the Payments. Both the Creditors' Committee and the United States Trustee were informed of the terms of the Payments, and the Agent and the Senior Lenders have accounted regularly to the Creditors' Committee regarding the Payments.

## CONCLUSION

17.  WHEREFORE, for all the foregoing reasons, JPMorgan requests that the Court deny Law Debenture's motion.

Dated: November 20, 2009
Wilmington, Delaware

Respectfully submitted,

*/s/ Robert J. Stearn*

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Karen E. Wagner
Sharon Katz
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A.*

---

specifically denied the request for reconsideration of its interim order based upon any alleged failure to disclose pre-petition fee payments. Transcript of Proceedings Before the Honorable Brendan L. Shannon at 209:4-210:5, *In re Freedom Commc'ns Holdings, Inc.*, No. 09-13046 (BLS) (Bankr. D. Del. Oct. 14, 2009).