UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE CORPORATION, et al., | ) | Case No. 08-13141 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date December 1, 2009 at 10:00 a.m. |
| | ) | Response Date: November 24, 2009 |
| | ) | Related Docket No. 2407 |

**JOINDER AND RESPONSE OF DEUTSCHE BANK TRUST COMPANY OF AMERICAS, INDENTURE TRUSTEE UNDER THE 1992 INDENTURE, THE 1996 INDENTURE AND THE 1997 INDENTURE IN THE RELIEF SOUGHT BY LAW DEBENTURE TRUST COMPANY OF NEW YORK IN ITS MOTION TO TERMINATE DEBTOR AFFILIATES' UNDISCLOSED PAYMENT OF LBO LENDERS' FEES AND EXPENSES, FOR AN ACCOUNTING, AND FOR DISGORGEMENT OF PAST PAYMENTS**

Deutsche Bank Trust Company Americas ("DBTCA" or the "Indenture Trustee"), successor trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture (as herein defined) hereby files this joinder and response(the "Joinder and Response") to the motion filed by Law Debenture Trust Company ("Law Debenture") to terminate Debtor Affiliates' Undisclosed Payment of LBO Lenders' Fees and Expenses For An Accounting And For Disgorgement of Past Payments (the "Motion") and files this response to the Objection of JP Morgan Chase Bank, N.A (the "Chase Objection"; Docket No. 2597). and the Tribune Debtors ("Tribune Objection"; Docket No. 2596). In support of this Joinder and Response, DBTCA respectfully represents as follows:

I.
BACKGROUND

A.   **The Noteholders' Claims**

1.   DBTCA presently serves as the Indenture Trustee under the following indentures issued by The Tribune Company ("Tribune"):

### i. The 1992 Indenture

2. DBTCA is the Indenture Trustee under that certain indenture dated as of March 1, 1992, as amended and supplemented (the "1992 Indenture"), by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee. DBTCA filed a proof of claim for claims under the 1992 Indenture in the amount of $120,500.00.

### ii. The 1995 Indenture

3. DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1995 Indenture"), by and between Tribune and First Interstate Bank of California, as the predecessor indenture trustee. Under the 1995 Indenture, two series of notes were issued: (i) 7.25% Debentures due March 1, 2013 ; and (ii) 7.50% Debentures due July 1, 2023. DBTCA filed a proof of claim for claims under the 1995 Indenture in the amount of $185,703,520.04.

**The 1997 Indenture**

4. DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1997 Indenture"), by and between Tribune and Bank of Montreal Trust Company. Under the 1997 Indenture, three series of notes were issued: (i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008. DBTCA filed a proof of claim for claims under the 1997 Indenture in the amount of $862,246,024.00.

5. The collective amount of claims under the three Indentures is approximately $1.050 billion.

B.  **The LBO Transaction**

6. As a result of the LBO,[1] Tribune was saddled with debt of approximately $11 billion.[2] Approximately $8.3 billion went to cash out shareholders. In connection with the LBO, the LBO Lenders required guarantees (the "Guarantees") from certain "material" subsidiaries (the "Guarantor Subsidiaries"). The Guarantees were all upstream.[3]

C.  **The Bankruptcy Cases**

7. On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have continued to operate their business and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

8. Not all of the Tribune entities filed for Chapter 11 relief. Specifically, four Tribune affiliates/subsidiaries did not file for bankruptcy protection: (i) Tribune Interactive, Inc.; (ii) Tribune National Marketing Company; (iii) Chicago National League Ball Club LLC; and (iv) Tribune (FN) Cable Ventures ("TCV"; collectively, the "Non-Debtor Guarantors").

9. On December 18, 2008, the United States Trustee for the District of Delaware appointed a committee of unsecured creditors (the "Committee"). The Committee consists of nine members, including JP Morgan Chase and DBTCA.

10. Shortly after the commencement of the Debtors chapter 11 cases, according to the Debtors "JP Morgan Chase, in its capacity as Agent under the Credit Agreement requested that

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in Law Debenture's Motion.
[2] For the sake of brevity, DBTCA hereby incorporates the factual recitation of Law Debenture set forth in its Motion.
[3] There is little doubt that these upstream guarantees lacked anything close to reasonably equivalent value. . See Mellon Bank, N.A. v. Metro Communications (In re Metro Communications),945 F.2d 635 (3d Cir. 1991) cert denied, 503 U.S. 937 (1992).

reimbursable fees and expenses under the Credit Agreement be paid by the non-debtor guarantors." Tribune Objection at ¶3. To date, JP Morgan and/or other LBO Lenders have sought the payment of fees and expenses by a number of professionals including FTI Consulting, Inc., The Blackstone Group, Kramer, Levin and Davis Polk & Wardwell (the "<u>Steering Group Professionals</u>"). According to the Debtors, TCV has received a total of $23.7 million in fees and expenses to be reimbursed by the Steering Group Professionals.[4] Tribune Objection at ¶10.

11. The Committee has retained special counsel for the purpose of, <u>inter alia</u>, investigating avoidance claims against the LBO Lenders. <u>See</u> Application of Creditors' Committee to retain Zuckerman Spaeder LLP [Docket No. 1953].[5]

## II.

## <u>JOINDER</u>

12. DBTCA joins in and supports the relief requested by Law Debenture in the Motion.[6]

13. While JP Morgan and the Debtors assert that the Unauthorized Payments were in fact disclosed to the Committee and the United States Trustee, there is not a <u>single</u> document that has been filed that either reflects the Debtors' agreement with the LBO Lenders or the amounts that have been paid to the Steering Group Professionals by TCV to date. This lack of disclosure alone raises issues about the integrity of the process.

---

[4] The amount of fees and expenses sought by the LBO Lenders is staggering. By way of comparison, through May 31, 2009, the fees and expenses of the Debtors' professionals were approximately $18.7 million (not including ordinary course professionals) and the fees and expenses of the Committee were $7.5 million.

[5] It is ironic that the unsecured LBO Lenders are being paid on a current basis at the very same time that the claims are being reviewed for a potential avoidance action.

[6] To deflect from the real issue before this Court (<u>i.e.</u> nondisclosure of these payments), JP Morgan and the Debtor both assert that, as a Committee member, DBTCA was aware of the Unauthorized Payments. While that statement is correct, it has nothing to do with the fact that the Debtors have never disclosed these payments in any 2015.3 Report or Monthly Operating Report to date.

ME1 9338582v.1

14.   Moreover, in its Objection, JP Morgan states that "JP Morgan has not sought payment for <u>any</u> legal fees incurred in its capacity as a member of the Creditors' Committee." See JP Morgan Objection at fn 3 (emphasis supplied). This statement raises a factual issue as to how JP Morgan (or Davis Polk) has sought to segregate its legal fees and expenses incurred in its capacity as a member of the Steering Group versus its fees and expenses incurred in its capacity as a member of the Committee. JP Morgan should explain exactly what processes it has employed to segregate these fees and expenses.

15.   DBTCA believes that an accounting is appropriate (especially given the lack of disclosure). Providing such an accounting should not be a difficult task because as noted by JP Morgan, "the Agent and the Senior Lenders have accounted regularly to the Creditors' Committee regarding the Payments." JP Morgan Objection at ¶16. An appropriate accounting should at a minimum provide: (i) invoices (along with the underlying narratives for time charges and amounts charged) and a summary of what the actions the professional accomplished during the relevant time period.

16.   In addition, Section 8.4 of the Credit Agreement states that "the Borrower agrees to pay promptly following demand **all reasonable** and documented out of pocket costs and expenses of the Agent, the Lead Arrangers and the Lenders" (emphasis supplied). The Debtors should explain what efforts they undertook to determine the reasonableness of the $23.7 million in invoices that have been remitted to TCV.

17.   Finally, the Debtors and JP Morgan protest considerably regarding whether the Unauthorized Payments were property of the estate. In response, DBTCA would simply note that it is very likely that TCV has few, if any, creditors. Every time TCV makes an Unauthorized Payment to one of the Steering Group Professionals, it diminishes the value of the Debtors' equity interest in TCV. The value of the Debtors' interest in TCV is clearly "property of the

ME1 9338582v.1

estate." The Court has the power to compel TCV's shareholders (the Debtors) to take appropriate action to compel the non-debtor to cease making the Unauthorized Payments.

## CONCLUSION

**WHEREFORE**, DBTCA respectfully requests that the Court grant the relief requested in the Motion of Law Debenture along with such other and further relief as is just and proper.

Dated: November 24, 2009  
Wilmington, DE

**McCARTER & ENGLISH LLP**

By: /s/ Katharine L. Mayer  
Katharine L. Mayer (DE# 3758)  
Renaissance Centre  
405 N. King Street, 8th Floor  
Wilmington, DE 19801  
(302) 984-6300  
(302) 984-6399 Facsimile  
(302) 984-2494 Direct Fax  
kmayer@mccarter.com

-and-

David J. Adler, Esq. (DA0048)  
245 Park Avenue  
27th Floor  
New York, New York 10167  
(212) 609-6800 - Telephone  
(212) 609-6921 - Facsimile

*Counsel for Deutsche Bank Trust Company Americas*

ME1 9338582v.1