IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: December 15, 2009 at 2:00 p.m. EST**<br>**Objection Deadline: December 8, 2009 at 4:00 p.m. EST** |

## MOTION OF DEBTOR CHICAGO TRIBUNE COMPANY FOR AN ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED IN COUNTRYSIDE, ILLINOIS

Chicago Tribune Company, one of the debtors and debtors in possession in the above-captioned chapter 11 cases ("CTC" or the "Debtor" and collectively, with its affiliates that have commenced these chapter 11 cases, the "Debtors") by and through its undersigned counsel, hereby moves this Court (the "Motion") for entry of an order pursuant to section 363 of title 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-6141124V1
CH1 4830722v.1

of the United States Code (the "Bankruptcy Code") authorizing CTC to sell a parcel of real property commonly known as 555 East Plainfield, Countryside, Illinois (the "Countryside Property") to Michael D. Gain and Jennifer R. Gain (collectively, the "Purchaser"), on the terms and conditions as set forth in that certain Purchase and Sale Agreement dated November 10, 2009 (the "Sale Agreement") attached hereto as Exhibit A free and clear of all liens, claims and encumbrances. The proposed purchase price for the Countryside Property is $695,000. In support of this Motion, CTC (i) submits the attached Declaration of Kelly Hackett, Manager, Real Estate of Tribune Company, which is attached hereto as Exhibit B (the "Hackett Declaration"), and (ii) respectfully states the following:

## STATUS OF THE CASE AND JURISDICTION

1.  On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Chicago National League Ball Club, LLC ("CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). [Docket Nos. 43, 2333].

3.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

46429/0001-6141124V1

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). The Committee has been apprised of the relief requested herein.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND TO THE MOTION

6. The Countryside Property is a commercial property consisting of approximately 15,215 square feet over 0.71 acres, located 16 miles from Chicago. Historically, the Countryside Property was used as a distribution center for the Chicago Tribune newspaper. However, in order to consolidate operations, reduce inefficiencies and increase cash flow through the sale of the Countryside Property, operations were moved from this site to a distribution center in Westmont, Illinois on May 31, 2009, leaving the property vacant. See Hackett Declaration at ¶ 3. CTC began marketing the Countryside Property for sale in March 2009, and it has remained on the market continuously since that time. Neither CTC nor any of the other Debtors have conducted business operations on the Countryside Property since May 2009, nor do any of the Debtors anticipate having any need to use the Countryside Property in the future. See id.

7. In order to market the Countryside Property effectively, CTC hired Cushman & Wakefield of Illinois, Inc. (the "Broker"). Since listing the property in March 2009, the Broker has actively and aggressively marketed the Countryside Property, including distributing approximately 1200 email brochures, posting the listing in commercial MLS

3

services, placing the listing in its monthly mailing to 512 industrial brokers in the Chicago metro area, conducting door-to-door canvassing of companies in the immediate Countryside vicinity and telephone canvassing for prospects in the Western Cook County, Illinois market. See id. at ¶ 4.

8. To date, the Broker has conducted property tours and building inspections with approximately seven (7) interested parties and supplied information by telephone or email to an additional eight (8) interested parties. As a result of these efforts, CTC received five (5) offers from prospective buyers, including that of the Purchaser. Of the five offers received, the offer submitted by the Purchaser was the highest dollar amount and, in CTC's judgment, constituted the best offer. The only other offer comparable in dollar amount (which was still for a smaller amount) was subsequently withdrawn when the offeror's attempt to obtain an adjacent parcel of land from a third party was unsuccessful. CTC and the Broker have assessed the offer from the Purchaser and have determined that it is not only the highest and best offer received but is also reflective of the Countryside Property's current market value. See id. at ¶ 5.

9. Accordingly, CTC and the Purchaser have negotiated and executed the Sale Agreement, which sets forth the material terms of the parties' agreement for the sale of the Countryside Property to the Purchaser. The Sale Agreement provides that the Purchaser will purchase the Countryside Property for $695,000.00 (the "Purchase Price"). Of the Purchase Price, $50,000.00 was deposited in an escrow account on November 16, 2009 as earnest money to be released to CTC and applied to the Purchase Price immediately upon the closing date for the sale of the Countryside Property (the "Closing Date") pursuant to the Sale Agreement and the Earnest Money Escrow Instructions between the parties dated November 12, 2009 (the "Escrow

4

Agreement"), attached hereto as <u>Exhibit C</u>.  The balance of the Purchase Price will be paid by the Purchaser on the Closing Date.  <u>See</u> Sale Agreement at § 12.

10. The Sale Agreement contemplates that the Closing Date will occur 45 days from the execution of the Sale Agreement, subject to the provisions permitting further extension of the Closing Date by 30 days pending an order of this Court approving the sale (the "<u>Outside Closing Date</u>").

11. The Purchaser has the ability to terminate the Sale Agreement for any reason in its sole discretion by delivering to CTC written notice of such termination prior to 5:00 p.m. (Chicago time) on or before the date that is thirty (30) days after the date of acceptance of the Sale Agreement.  <u>See</u> Sale Agreement at § 6.  The Purchaser also has the right to terminate the Sale Agreement in the event of a breach of the Sale Agreement by CTC or in the event that the Bankruptcy Court's order approving the sale of the Countryside Property pursuant to the Sale Agreement is not delivered to the Purchaser by the Outside Closing Date.  <u>See id.</u> at § 18.

## **RELIEF REQUESTED**

12. By this Motion, CTC respectfully seeks entry of an order authorizing it to sell the Countryside Property to the Purchaser on the terms set forth in the Sale Agreement and the Escrow Agreement, free and clear of all liens, claims and encumbrances, with any such liens, claims, and encumbrances attaching to the proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have as against the Countryside Property, subject to any claims and defenses CTC may possess with respect thereto.  CTC further requests a waiver of the ten-day stay provided for in Bankruptcy Rule 6004(h) in order to facilitate the closing of the sale of the Countryside Property as soon as practicable after the entry of the order.

## BASIS FOR RELIEF REQUESTED

13.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

14.     Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363).

15.     Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

16.     Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. See, e.g., In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville

6

Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). To impose more exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1986).

A. **The Sale Should Be Approved as a Proper Exercise of CTC's Sound Business Judgment**

17. There are substantial business justifications for selling the Countryside Property to the Purchaser on the terms set forth in the Sale Agreement. The Countryside Property provides limited, if any, value to the Debtors' business operations. CTC has ceased all business operations at the Countryside Property, and CTC does not anticipate utilizing the Countryside Property as part of its business operations going forward. See Hackett Declaration at ¶ 3. The proposed sale of the Countryside Property also allows CTC to monetize an asset for which it has no current or anticipated future use, for the benefit of all creditors and stakeholders.

18. Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that "sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f). CTC respectfully submits that approval of the sale of the Countryside Property as a private sale is appropriate under the circumstances. CTC has actively marketed the property for more than nine months during a time that has been marked by unprecedented turmoil in the real estate and financial markets. The Broker actively reached out to reputable developers, brokers, and potential end users of the Countryside Property and toured the property with approximately seven (7) parties potentially interested in purchasing the Countryside Property. CTC received

46429/0001-6141124V1

four other offers for the Countryside Property, each of which was below the Purchaser's offer. See Hackett Declaration at ¶ 5. The Countryside Property has remained on the market during the negotiations with the Purchaser, and CTC has not received any further offers or expressions of interest. Thus, CTC believes that further marketing efforts for public sale are unlikely to result in higher and better offers for the Countryside Property and, as a result, that the Court should order that no other or further marketing process for the Countryside Property is required and that the sale of the Countryside Property may proceed by private sale to the Purchaser.

19.     The Sale Agreement is the product of good faith, arms'-length negotiations among the parties. The Purchaser is not affiliated with, nor is the Purchaser an insider of, CTC or any of the other Debtors. See id. at ¶ 6. In addition, the proposed sale of the Countryside Property to the Purchaser has been arrived at only after months of open marketing of the property. As discussed above, the consideration to be paid by the Purchaser is fair and reasonable under the circumstances. Accordingly, CTC requests that this Court find that the Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code[2] and that the sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.[3]

---

[2] Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of an authorization under sections 363(b) or 363(c) of the Bankruptcy Code does not affect the validity of a disposition under that authorization to an entity that has acted in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the relevant transaction were stayed pending the appeal. See 11 U.S.C. § 363(m).

[3] Section 363(n) of the Bankruptcy Code provides that

> [t]he trustee may avoid a sale under this section if the sale process was controlled by an agreement among the potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

11 U.S.C. § 363(n).

20.     The Broker's Exclusive Listing Agreement (the "Listing Agreement", a copy of which is attached hereto as Exhibit D) provides that once the closing of the sale occurs, the Broker will be compensated in an amount equal to six percent (6%) of the sale proceeds (the "Commission"). See Listing Agreement, Schedule of Commissions. CTC submits that in light of the substantial marketing efforts carried out by the Broker during the past several months, culminating in the successful sale of the Countryside Property to the Purchaser, payment of the Commission is reasonable and appropriate. The Listing Agreement also provides that certain advertising costs shall be borne by CTC in connection with marketing the Countryside Property for sale. See Listing Agreement at ¶ 4. Accordingly, CTC seeks this Court's authorization to pay the Commission to the Broker, plus any documented expenses reasonably incurred on CTC's behalf in connection with marketing the Countryside Property, from the sale proceeds upon closing.

21.     In light of the foregoing, CTC respectfully submits that selling the Countryside Property to the Purchaser on the terms set forth in the Sale Agreement is supported by CTC's sound business judgment and is in the best interests of the Debtors' estates and creditors.

**B.    The Sale Should Be Approved Free and Clear of Liens, Claims and Encumbrances**

22.     Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims, interests and encumbrances if "(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests, (2) the entity holding the lien, claim, interest or encumbrance consents to the proposed sale, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (4) such interest is in bona fide dispute, or (5)

such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

23. CTC seeks this Court's approval to sell the Countryside Property to the Purchaser free and clear of all existing liens, claims, and encumbrances that are not expressly assumed by the Purchaser in the Sale Agreement. CTC is unaware of any secured claims with respect to the Countryside Property. Accordingly, a sale free and clear will not prejudice any of CTC's creditors. Furthermore, should CTC subsequently become aware of a lien or other secured interest on or in the Countryside Property, CTC believes that the Purchase Price will be in excess of the value of any such liens, thereby satisfying the conditions for a sale free and clear under section 363(f)(3). Upon closing, existing liens, claims and encumbrances (if any), will attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have against the Countryside Property. Accordingly, CTC submits that the Countryside Property may be sold free and clear of all liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code.

## NOTICE

24. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agents for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition loan facility; (v) counsel to the Purchaser; (vi) through their brokers, all other parties that submitted an offer to purchase the Countryside Property; and (vii) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, CTC submits no other or further notice is necessary.

46429/0001-6141124V1

## NO PRIOR REQUEST

25. CTC has not sought the relief requested herein from this or any other Court.

WHEREFORE, CTC respectfully requests that the Court enter an order (i) authorizing CTC to sell the Countryside Property to the Purchaser pursuant to the Sale Agreement and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
November 25, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Bridget J. Hauserman
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION