# **EXHIBIT B**

*Hackett Declaration*

46429/0001-6141124V1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| | Jointly Administered |
| Debtors. | |

DECLARATION OF KELLY HACKETT FOR AN
ORDER AUTHORIZING CHICAGO TRIBUNE COMPANY
TO SELL CERTAIN REAL PROPERTY LOCATED IN COUNTRYSIDE,
NEW YORK PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

KELLY HACKETT hereby states:

1. I am Manager, Real Estate of Tribune Company, a corporation organized under the laws of Delaware and one of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). Tribune Company is the direct or indirect parent of the other Debtors herein. I am generally familiar with the Debtors' real

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each

property needs and operations and I make this Declaration (the "Declaration") on behalf of the Debtors.

2. I submit this Declaration in support of the Motion of Chicago Tribune Company for Entry of an Order Authorizing Chicago Tribune Company to Sell Certain Real Property Located in Countryside, Illinois pursuant to section 363 of the Bankruptcy Code.

3. The Countryside Property is a commercial property consisting of approximately 15,215 square feet over 0.71 acres, located 16 miles from Chicago. Historically, the Countryside Property was used as a distribution center for the Chicago Tribune newspaper. However, in order to consolidate operations, reduce inefficiencies and increase cash flow through the sale of the Countryside Property, operations were moved from this site to a distribution center in Westmont, Illinois on May 31, 2009, leaving the property vacant. CTC began marketing the Countryside Property for sale in March 2009, and it has remained on the market continuously since that time. Neither CTC nor any of the other Debtors have conducted business operations on the Countryside Property since May 2009, nor do any of the Debtors anticipate having any need to use the Countryside Property in the future.

4. In order to market the Countryside Property effectively, CTC hired Cushman & Wakefield of Illinois, Inc. (the "Broker"). Since listing the property in March 2009, the Broker has actively and aggressively marketed the Countryside Property, including distributing approximately 1200 email brochures, posting the listing in commercial MLS services, placing the listing in its monthly mailing to 512 industrial brokers in the Chicago metro area, conducting door-to-door canvassing of companies in the immediate Countryside vicinity and telephone canvassing for prospects in the Western Cook County, Illinois market.

---

Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

-3-

5.  To date, the Broker has conducted property tours and building inspections with approximately seven (7) interested parties and supplied information by telephone or email to an additional eight (8) interested parties. As a result of these efforts, CTC received five (5) offers from prospective buyers, including that of the Purchaser. Of the five offers received, the offer submitted by the Purchaser was the highest offer in dollar amount and, in CTC's judgment, the best offer. The only other offer comparable in dollar amount (which was still for less than the Purchaser's offer) was subsequently withdrawn when the offeror's attempt to obtain an adjacent parcel of land from a third party was unsuccessful. CTC and the Broker have assessed the offer from the Purchaser and have determined that it is not only the highest and best offer received but is also reflective of the Countryside Property's current market value.

6.  Accordingly, CTC and the Purchaser have negotiated and executed the Sale Agreement, which sets forth the material terms of the parties' agreement for the sale of the Countryside Property to the Purchaser. The Sale Agreement provides that the Purchaser will purchase the Countryside Property for $695,000.00 (the "Purchase Price"). Of the Purchase Price, $50,000.00 was deposited in an escrow account on November 16, 2009 as earnest money to be released to CTC and applied to the Purchase Price upon immediately upon the closing date for the sale of the Countryside Property (the "Closing Date") pursuant to the Sale Agreement and the Earnest Money Escrow Instructions between the parties dated November 12, 2009 (the "Escrow Agreement"). The Purchaser is not affiliated with, nor is the Purchaser an insider of, CTC or any of the other Debtors.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: November 25, 2009

*[signature]*
KELLY HACKETT