# **EXHIBIT C**

*Escrow Agreement*

## EARNEST MONEY ESCROW INSTRUCTIONS – ESCROW #29055512

These Earnest Money Escrow Instructions ("**Instructions**") are entered into as of this 12th CHICAGO TRIBUNE COMPANY, an Illinois corporation ("**Seller**"), and **MICHAEL D. GAIN and JENNIFER R. GAIN**("**Purchaser**") and **CHICAGO TITLE INSURANCE COMPANY** ("**Escrowee**").

WHEREAS, Purchaser and Seller entered into a Sale Agreement dated November 12, 2009, (as amended from time to time, the "**Agreement**"), for the purchase and sale of the property located at 555 E. Plainfield Road, Countryside, Illinois  60525 (as defined in the Agreement); and

WHEREAS, the parties desire to enter into escrow instructions with Escrowee pursuant to which Purchaser shall deposit earnest money, as required under the Agreement (the "**Escrow**").

NOW, THEREFORE, in consideration of the mutual covenants contained in these Instructions, and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Deposit.**

    1.1. **Earnest Money**. Pursuant to the terms and provisions of the Agreement, Purchaser herewith deposits with Escrowee earnest money in the sum of Fifty Thousand and 00/100 Dollars ($50,000.00).  Such funds, excluding all interest earned thereon shall be referred to herein as "**Earnest Money.**"

    1.2. **Investment of Earnest Money.** At the request of Purchaser, and upon receipt of Purchaser's taxpayer identification number, Escrowee shall invest the Earnest Money in interest-bearing securities, bank deposits and/or so-called "money market funds" established and managed by nationally recognized firms, at the direction of Purchaser. All interest earned on the Earnest Money shall be paid to or applied for the benefit of Purchaser after deduction of Escrowee's investment fee.

2. **Application of Earnest Money at Closing and Upon Termination of Agreement**.

    2.1 **At Closing**. At Closing (as defined in the Agreement), the Earnest Money shall be delivered by Escrowee to Seller and credited against the payment of the Purchase Price.

    2.2 **Upon Termination of the Agreement.** Notwithstanding the foregoing, the Agreement provides certain circumstances in which Purchaser shall have the unilateral right to terminate the Agreement, pursuant to Section 5 thereof, on or before December 12, 2009, but for the purposes of these Instructions, the date shall be deemed to be December 14, 2009 (the "**Approval Date**"), by delivery of written notice to Seller and Escrowee (the "**Termination Notice**"). Upon Escrowee's receipt of a timely Termination Notice (provided Escrowee receives such Termination Notice on or before the Approval Date) Escrowee shall immediately and simultaneously (x) deliver a copy of the Termination Notice to Seller, in the manner provided in

**Section 5** below, and (y) disburse the full amount of the Earnest Money, together with any and all interest earned thereon, to Purchaser.

3. **Default**.

    **3.1** **Purchaser's Default.** In the event that Purchaser breaches or defaults under the obligations imposed on it under the Agreement, and Seller desires to obtain the Earnest Money from Escrowee (pursuant to the terms of the Agreement), Seller shall be required to present to Escrowee: Seller's notice of default (the "**Default Notice**"), executed by an authorized representative of Seller, alleging that Purchaser is in default under the Agreement and, therefore, Seller is entitled to the Earnest Money. Upon receipt of the Default Notice from Seller, Escrowee shall (i) deliver a copy of the Default Notice to Purchaser, in the manner as provided in **Section 5** below and (ii) if, within five (5) business days after the date on which the Default Notice is delivered to Purchaser (in accordance with **Section 5** below), Escrowee has not received from Purchaser a notice ("**Objection Notice**") objecting to Escrowee's compliance with the Default Notice, Escrowee shall deliver the Earnest Money, together with all interest earned thereon, to Seller.

    **3.2** **Seller's Default.** In the event that, after the Approval Date, Purchaser, pursuant to the terms of the Agreement, is entitled to and desires the return of the Earnest Money from Escrowee (pursuant to the terms of the Agreement), Purchaser shall be required to present to Escrowee: its own Default Notice executed by an authorized representative of Purchaser alleging to Seller and Escrowee that Seller is in default under the Agreement and, therefore, Purchaser is entitled to return of the Earnest Money proceeds. Upon receipt of the Default Notice from Purchaser, Escrowee shall (i) deliver a copy of the Default Notice to Seller as provided in **Section 5** below, and (ii) if, within five (5) business days after the date on which the Default Notice is deemed to be delivered to Seller (in accordance with **Section 5** below), Escrowee has not received from Seller an Objection Notice, objecting to Escrowee's compliance with the Default Notice, Escrowee shall deliver the Earnest Money, together with all interest earned thereon, to Purchaser.

    4. **Objection Notices.** If Escrowee receives an Objection Notice from either Seller or Purchaser within the time period set forth in **Section 3** above, then Escrowee shall refuse to comply with the Default Notice then in question ("**Objectionable Default Notice**") until Escrowee receives (a) joint written instructions executed by both Purchaser and Seller, or (b) a final non-appealable order with respect to the disposition of the Earnest Money from a federal or state court of competent jurisdiction ("**Court Order**"), in either of which events Escrowee shall then disburse the Earnest Money and all interest earned thereon, in accordance with such direction or Court Order, as the case may be. Notwithstanding the immediately preceding sentence, if the party that delivers the Objection Notice does not (i) commence litigation with respect to the Earnest Money by filing a complaint or action for a declaratory judgment in an appropriate court of competent jurisdiction ("**Litigation**"), and (ii) provide notice and a file-stamped copy of such complaint or action for declaratory judgment to Escrowee and the other party to these Instructions within sixty (60) days after delivery of the then-applicable Objection Notice, then Escrowee shall disburse the Earnest Money in accordance with the Objectionable Default Notice or, if the Objectionable Default Notice does not provide disbursement instructions, continue to hold the Earnest Money.

6.     **Escrowee Obligations.** The parties agree that, except as otherwise expressly provided in **Section 4** above, the actions of, and the relationship between, Purchaser and Seller shall be governed by the terms of the Agreement. In all events and under all circumstances (except as otherwise expressly provided in **Section 4** above), the ultimate rights and obligations of Seller and Purchaser shall be strictly governed and controlled by the terms and provisions of the Agreement, rather than these Instructions. In the event of any conflict between the terms and provisions of the Agreement and these Instructions, the terms and provisions of the Agreement shall control in all events and circumstances except as otherwise expressly provided in **Section 4** above. Notwithstanding the existence of the Agreement or any references herein to the Agreement, the parties agree that Escrowee (but not Seller and Purchaser) shall be governed solely by the terms and provisions of these Instructions. The parties furthermore agree that, except as otherwise specifically provided in **Section 4** above, Escrowee is hereby expressly authorized to regard, comply with, and obey any and all orders, judgments or decrees entered or issued by any court, and, in case Escrowee obeys and complies with any such order, judgment or decree of any court, it shall not be liable to either of the parties hereto or to any other person, firm or corporation by reason of such compliance.

7.     **Litigation**. In the event of litigation between the parties with respect to these Instructions, the performance of their respective obligations hereunder, or the effect of a termination under the Agreement or these Instructions, the losing party shall pay all costs and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, court costs and reasonable fees of counsel selected by the prevailing party. Notwithstanding any provision of the Agreement or these Instructions to the contrary, the obligations of the parties under this **Section 7** shall survive a termination of either or both of the Agreement and these Instructions.

8.     **Time of the Essence**. Time is of the essence of these Instructions. If any date herein set forth for the performance of any obligations by Seller, Escrowee or Purchaser or for the delivery of any instrument or notice as herein provided should be on a Saturday, Sunday or legal holiday, the compliance with such obligations or delivery shall be deemed acceptable on the next business day following such Saturday, Sunday or legal holiday.

9.     **Counterparts**. These Instructions may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

10.    **Billing Instructions.** The Escrow trust fee will be billed as follows: $300.00; ½ to each party, unless otherwise specified. However, if the final Deed and Money takes place at the offices of Escrow Trustee, the Escrow fee will be waived. The parties acknowledge that beginning after a period of one year from the date of these Instructions, Escrow Trustee will impose an administrative maintenance fee (quarterly, semi-annually, or annually) equivalent to the fee set forth on the Escrowee's then current rate schedule. This fee may be deducted from the outstanding escrow balance or billed ½ to Purchaser and ½ to Seller.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

**SELLER:**

**CHICAGO TRIBUNE COMPANY, an Illinois corporation**

By: *[signature: Phil A...]*

**PURCHASER:**

_____

_____

**AGREED AND ACCEPTED:**

**CHICAGO TITLE INSURANCE COMPANY**

By: _____
Name: _____
Its: _____