# EXHIBIT D

## *Exclusive Listing Agreement*

## EXCLUSIVE LISTING AGREEMENT
## SALE TRANSACTION

Tribune Company ("Owner") hereby appoints Cushman & Wakefield of Illinois, Inc. ("C&W") as its sole agent and grants to C&W the exclusive right to sell the real property located at 555 E. Plainfield, Countryside, IL ("Property").

1) **TERM:** The term of this Agreement begins on March 15, 2009 and will end at midnight on March 14, 2010; provided, however, either party may terminate this Agreement upon thirty (30) days prior written notice to the other party.

2) **C&W'S SERVICES:** C&W will enlist the efforts of its firm to secure a satisfactory purchaser(s) for the Properties, and if C&W deems it necessary, C&W will also solicit the cooperation of other licensed real estate brokers. Owner hereby acknowledges and agrees that C&W may cooperate with one of its Alliance Members and/or such other locally licensed brokers as C&W may select to perform services hereunder. As and to the extent requested by Owner, C&W will negotiate the terms of any sale on behalf of Owner and in Owner's interest.

3) **OWNER REFERRALS:** Owner will refer to C&W all inquiries and offerings received by Owner regarding the Properties.

4) **ADVERTISING:** Owner authorizes C&W to market the Properties. C&W, at its expense, will provide its standard flier/brochure. Any additional advertising and promotion will be done at Owner's expense pursuant to a program and budget agreed upon by Owner and C&W and may identify C&W as exclusive agent for the Properties.

5) **COMMISSION:** If, during the term hereof, Owner sells all or any interest in the Properties, Owner will pay to C&W a commission in accordance with the attached Schedule of Commissions. Within 15 days after the end of the term, C&W will provide to Owner a list of prospective purchaser(s) (i) to whom the Properties was submitted (by C&W, Owner or any third party in accordance with the terms of this Agreement) during the term and (ii) who have submitted a bona fide written proposal or with whom there has been bona fide negotiations, in each case, during the term. If a prospective purchaser, appearing on said list, enters into a purchase contract or option with Owner or one of its affiliates with respect to the Properties within 180 days after the end of the term, and the purchase thereafter closes in accordance with the terms of such purchase contract or option, Owner will pay a commission to C&W as provided above.

6) **OUTSIDE BROKERS:** If C&W recognizes an outside broker representing the purchaser in a transaction for which a commission is payable hereunder, C&W will request such broker to agree to accept an equitable portion (but not more than half) of the commission as its compensation. If such broker so agrees, Owner will pay to C&W the commission provided for herein, out of which C&W will pay to such broker its agreed share and retain the balance as C&W's compensation. If such broker does not so agree, then negotiations will be suspended until such agreement is obtained. C&W will not be liable for failure to obtain such agreement.

7) **PROPERTIES INFORMATION:** To the extent Owner learns of any toxic, contaminated or hazardous substances, or defective conditions at the Properties, Owner shall so inform C&W and Owner authorizes C&W to transmit such information to prospective purchasers. Owner has advised C&W that Owner intends that except as otherwise agreed in writing by Owner or as expressly required by law, the sale will be as is, where is and with all faults.

8) **OTHER CLIENTS:** Owner acknowledges that C&W may represent potential purchasers and consents to such dual representation.

9) **FEES AND EXPENSES:** If either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs so incurred. Any portion of a commission not paid to C&W when due will bear interest from the due date until paid at the legal rate of interest.

10) **AUTHORITY:** Owner represents that it is the owner of the Properties and/or has the full right, power and authority to execute this Agreement and to consummate a transaction as provided herein, and to perform Owner's obligations hereunder. The individuals signing this Agreement represent that they are authorized signatories.

11) **PROFESSIONAL ADVICE:** C&W recommends that Owner obtain legal, tax or other professional advice relating to this Agreement and the proposed sale of the Properties, as well as the condition and/or legality of the Properties, including, but not limited to, the Properties' improvements, equipment, soil, tenancies, title, environmental aspects and compliance with the Americans With Disabilities Act. C&W will have no obligation to investigate any such matters unless expressly otherwise agreed to in writing by Owner and C&W. Owner further agrees that in determining the financial soundness of any prospective purchaser, Owner will rely solely upon Owner's own investigation and evaluation, notwithstanding C&W's assistance in gathering any financial information.

12) **NON-DISCRIMINATION:** It is unlawful for either Owner or C&W to discriminate against any persons because of their race, color, religion, national origin, sex, disability or family status.

13) **SURVIVAL:** This Agreement is binding upon the parties hereto and their respective successors and assigns. The terms "Owner" and "Purchaser" include subsidiaries, controlled affiliates, successors, assigns and nominees. The term "outside broker" means a broker other than Jeffrey P. Samaras, Christopher R. Porter, and Alexander Wahlig

14) **PUBLICITY:** Owner hereby consents to C&W's publicizing its role in any transaction entered into, subject to Owner's prior approval of such publicity.

15) **COUNTERPARTS:** This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement.

16) **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Owner and C&W and supersedes all prior discussions as to the subject matter hereof. No modification of this Agreement will be effective unless made in writing and signed by both Owner and C&W. Owner acknowledges receipt of a copy of this Agreement and the Schedule of Commissions.

17) **BROKER REGULARITY AND STATUTORY PROVISIONS:** [Insert if applicable]


**TRIBUNE COMPANY**

By:

Name:    Stephanie Pater

Title:    Director, Real Estate

Address:    435 N. Michigan Avenue

Chicago, IL 60611

Date:    4/3/09


**CUSHMAN & WAKEFIELD OF ILLINOIS, INC.**

By:

Name:    Richard A. Cenkus
         Assistant General Counsel

Title:

Address:

Date:    4/7/09

## SCHEDULE OF COMMISSIONS

No Outside Broker:

5% of the total sales price.

With Outside Broker:    (where Purchaser is represented by an Outside Broker)

6% of the total sales price.

For purposes of the commission hereunder, the term Outside Broker shall include any brokers or salespersons of C&W other than the listing team.

**Time of Payment:**  The commission shall be paid in full at the time of the closing or transfer of title to the properties, except in the case of an installment purchase contract, in which case the commission shall be paid in full at the time of the first payment under the installment purchase contract between Owner and Purchaser.

**Computation of Sales Price:**  The commission shall be computed in accordance with the above rates based upon the total sales price, which shall include any mortgages, loans or other debt obligations of Owner which may be assumed by Purchaser or which Purchaser takes title "subject to," any purchase money loans or mortgages taken back by Owner and the sales price of any fixtures or other personal properties sold by separate agreement between Owner and Purchaser as part of the overall sales of the real properties.

**Purchase Option:**  If Owner grants a purchase option, C&W will be paid a commission at the above rate as and when amounts are paid for the option (and for extensions thereof).  Upon closing of the sale, C&W will be paid a commission at the above rate on the total sales price (excluding any amount paid for the option and applied to the sales price).