## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: December 15, 2009 at 10:00 a.m. ET** |
| | **Objection Deadline: December 8, 2009 at 4:00 p.m. ET** |
| | **Ref No. 2548** |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND FED. R. BANKR. P. 9019(a) APPROVING A SETTLEMENT AGREEMENT BETWEEN CERTAIN DEBTORS AND THE ESTATE OF E. MICHAEL GUTMAN, M.D.

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company (the "**Company**") and its various debtor-subsidiaries (collectively, the "**Debtors**") respectfully submits this Objection (the "**Objection**") to the Motion of the Debtors for an Order

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Pursuant to 11 U.S.C. §§ 105(a), 363(b) and Fed. R. Bankr. P. 9019(a) Approving a Settlement Agreement Between Certain Debtors and the Estate of E. Michael Gutman, M.D. (the "**Motion**"), Mike Gutman, M.D. (MPAC), Gutman Pain/Accident Center, Inc. a/k/a and/or d/b/a Back Pain Institute of Orlando, and their legal representatives (collectively, the "**Plaintiffs**"), and respectfully represents as follows:

## BACKGROUND

1.      On May 11, 2005, Plaintiffs commenced an action against certain Debtors and a newspaper published by one of the Debtors seeking damages in excess of $15 million for defamation and invasion of privacy. The newspaper, the Orlando Sentinel, had published an article alleging, among other things, that Plaintiff E. Michael Gutman, M.D. had prescribed pain and anxiety medication that was linked to the death of eleven patients. Dr. Gutman committed suicide on April 28, 2009, and his estate continued the suit, asserting additional financial damages as well as additional pain and suffering.

2.      On July 15, 2009, the Bankruptcy Court entered an Order Granting Relief from the Automatic Stay [Docket No. 1748], which allowed mediation to occur in Florida. On October 27, 2009, a settlement agreement (the "**Settlement Agreement**") was reached to completely resolve the dispute. The Committee was not made aware of the proposed settlement until it was a *fait accompli*.

3.      Under the Settlement Agreement, Debtors and Plaintiffs agreed, subject to the Court's approval of Debtors' present Motion, that the Debtors will pay $1 million and the Debtors' insurer will pay $850,000 (for a total of $1,850,000) to the Plaintiffs within 20 days of Bankruptcy Court approval. In exchange for the settlement payment, the Plaintiffs will execute a release applicable to the Debtors.

2

4.     On November 11, 2009, the Debtors filed the Motion.  The Debtors request that the Court enter an order that would (i) approve the Debtors' entry into Settlement Agreement, and (ii) authorize the Debtors' performance of all of their obligations under the Settlement Agreement.

## ARGUMENT

5.     The Committee has considered the relief requested in the Motion and believes such relief to be inappropriate for two reasons: (1) the Debtors' proposed immediate payment of a prepetition unsecured claim prior to confirmation of a plan of reorganization is wholly inconsistent with the Bankruptcy Code and general bankruptcy practice and fails to satisfy the requirements of the limited exceptions that might be available, such as the "Necessity of Payment" doctrine; and, in any event, (2) the Debtors have not met their burden under Bankruptcy Rule 9019 to prove that the proposed settlement is fair and reasonable.

**A.     Payment in Cash of a Prepetition Claim under the Proposed Settlement Improperly Impairs Creditors' Rights and Violates the "Necessity of Payment" Doctrine**

6.     The proposed settlement would require Debtors to pay a prepetition obligation using property of the Debtors' estate.  However, the Debtors fail to show a valid legal basis on which to do so.  In fact, the Debtors do not provide and the Committee cannot conceive of any compelling reason why the Plaintiffs' claim here should be treated differently from the over 38,000 other filed and scheduled claims in these bankruptcy cases.  Of course, every claimant would like to be paid now, including over twenty other media and libel claimants and over 220 other litigation claimants, many of whom will assuredly demand equal treatment if this settlement is approved.  However, that is not how bankruptcy works.  Claimants are paid on the effective date of a confirmed plan of reorganization.  The only exception that could possibly be applied here cannot be satisfied.

3

7.    The exception that would allow a claim to be paid pre-confirmation has been expounded by this Court and by the Third Circuit Court of Appeals on several occasions, and is known as the "Necessity of Payment" doctrine. The "Necessity of Payment" doctrine has been articulated by the Third Circuit as follows:

> [I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor] during reorganization, payment may be authorized even if it is made out of corpus. . . . [I]n order to justify payment under the "necessity of payment" rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy.

In re Lehigh & N.E.R. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit has therefore made clear that in the absence of an absolutely vital need for the immediate payment of a prepetition unsecured claim, the claimant should be paid at the end of the bankruptcy case along with all other unsecured creditors.

8.    Clearly, the type of "real and immediate threat" contemplated by the Third Circuit that would place Debtor's continued operation in "serious jeopardy" does not exist here. A payment that would satisfy the "Necessity of Payment" doctrine is one where "creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid." See In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972). This type of situation does not exist here. The Plaintiffs here are tort claimants in a libel suit. The disposition of the Plaintiffs' lawsuit will not affect the Debtors' business operations in any discernible way that could conceivably justify an immediate payment under the "Necessity of Payment" doctrine.

9.    A reasonable alternative to the relief requested in the Debtors' Motion has already been achieved in a separate matter addressed by this Court in these bankruptcy cases. See Order Approving Stipulation Modifying the Automatic Stay to Permit Andrew and Jennifer Faggio to

4

Continue Mediation With Respect to a Personal Injury Action (the "**Faggio Order**") [Docket No. 881] (attached hereto as Exhibit A). In the Faggio Order, the Debtors agreed to relief from the automatic stay where the plaintiffs agreed to waive the Debtors' insurance deductible requirement such that any settlement obtained in favor of the Faggios could not be enforced against property or assets belonging to any of the Debtors or their estates. If the Plaintiffs in this litigation agreed to a waiver of all claims against the estate, the "Necessity of Payment" doctrine would not need to be considered and the Committee would not need to object to the requested relief from the automatic stay. In other words, if a settlement agreement did not diminish the Debtors' estate, the Committee would find it more customary and acceptable.

**B.      Debtors Have Not Met Their Burden Under Bankruptcy Rule 9019
to Prove That the Proposed Settlement is Fair and Reasonable**

10.      Under Bankruptcy Rule 9019(a), a debtor must seek court approval of any settlement or compromise to which the debtor is a party. The purpose of Rule 9019(a) is to ensure that creditors and other interested parties have an opportunity to object where their interests may be adversely affected by a compromise or settlement between the debtor and one or more creditors. See In re Union Meeting Partners, 167 B.R. 757, 773 (Bankr. E.D. Pa. 1993).

11.      To protect creditors' interests, a court should not defer exclusively to the debtors' judgment as to whether a settlement is appropriate. Rather, "the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006). Furthermore, "the benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." See In re Energy Coop., 886 F.2d 921 (7th Cir. 1989); accord In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997). Such an evaluation requires the court to examine the "fairness, reasonableness and adequacy" of the proposed settlement

agreement. <u>See</u> <u>Fry's Metals, Inc.</u> v. <u>Gibbons</u> (<u>In re RFE Indus.</u>), 283 F.3d 159, 165 (3d Cir. 2002).

12.    With respect to making a determination on whether a proposed settlement is in the best interests of the estate, the Third Circuit has directed courts to consider four criteria: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors . . ." and a proper deference to their reasonable views. <u>See</u> <u>Will</u> v. <u>Northwestern Univ.</u> (<u>In re Nutraquest, Inc.</u>), 434 F.3d 639, 644 (3d Cir. 2006); <u>see</u> <u>also</u> <u>Drexel</u> v. <u>Loomis</u>, 35 F.2d 800, 806 (8th Cir. 1929).  It is the debtors' burden to prove that a proposed settlement is sufficiently fair, reasonable and adequate.  <u>See</u> <u>In re 110 Beaver St.</u> <u>P'ship</u>, 244 B.R. 185 (Bankr. D. Mass. 2000).

13.    Applying the relevant legal principles to the current situation leads to the conclusion that the Settlement Agreement does not represent a fair and reasonable deal from the perspective of the Debtors' estate.  As such, the Settlement Agreement should not be approved and the Debtors' Motion should not be granted.

14.    For a libel case that the Debtors acknowledge the Plaintiffs are unlikely to win, the Settlement Agreement is unduly generous.  The proposed settlement is essentially premised on the ground that the litigation costs will be too expensive.  However, the Debtors have failed to consider any options to minimize costs, such as conditioning stay relief on mandatory and binding arbitration.  In such a situation, the mandatory arbitration should reduce professional fees and permit the Plaintiffs an earlier opportunity to liquidate the amount of their claim.  This is an appropriate and fair *quid pro quo* and is often done with tort claimants.  Other options will

also be explored with the Debtors. In any event, payment of a substantial sum based on what litigation costs might be, without considering ways to minimize those costs, is not appropriate.

15.    Additionally, and importantly, considering the over twenty media and libel claims, 220 other litigation claims and approximately 38,000 other scheduled and filed claims that remain outstanding, the proposed Settlement Agreement would set dangerous precedent in these bankruptcy proceedings in at least two ways: (a) other claimants are likely to try to create scenarios where they purposely increase perceived litigation costs in order to force an early settlement and, as previously noted, (b) other claimants are likely to simply try to force payment of their prepetition claims before the conclusion of the bankruptcy cases. This is not how bankruptcy works and cannot be fair and reasonable to the Debtors' estate or to the other creditors in this case.

16.    The Committee reserves all rights to amend or supplement this Objection.

## CONCLUSION

17.    Based on the foregoing, the Committee believes the requested relief to be inappropriate. Accordingly, the Committee respectfully requests that the Court deny the Motion.


Dated: December 8, 2009          **LANDIS RATH & COBB LLP**
         Wilmington, Delaware

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and –

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile:  (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

8