IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |

## CERTIFICATION OF COUNSEL

I, Robert A. Schwinger, hereby state the following in support of the Motion of the Official Committee of Unsecured Creditors for an Order Requiring the Production By Date Certain of Email Documents from Merrill Lynch Capital Corporation Pursuant to Bankruptcy Rule 2004 (the "Motion")[2]:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2 All capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

NY3 - 499512.08

1. I am a member of the law firm of Chadbourne & Parke LLP, co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession.

2. I have conferred with counsel for Merrill Lynch Capital Corporation ("Merrill") to arrange a mutually agreeable search methodology and timetable for the production of email documents relating to the Leveraged ESOP Transactions and the Merger. However, even with all of the compromises the Committee has been willing to make, Merrill is still unwilling to complete its email production within a time frame that meets the needs of this bankruptcy case, thereby necessitating the Motion.

3. In connection with its investigation, counsel to the Committee has spoken with various parties involved and sent requests for information surrounding the Leveraged ESOP Transaction and the Merger to the Debtors and Zell, among others. With respect to Merrill, the Committee sent a detailed request for information on March 26, 2009 (the "March Request"), a true and correct copy of which is attached hereto as Exhibit "A." The March Request was generally limited to information that Merrill would have by virtue of its role as an agent and a lender under the Credit Agreement and Bridge Facility. After discussions with counsel for Merrill, the Committee sent an amended request on May 14, 2009 (the "May Request," together with the March Request, the "Requests for Information") that additionally covered information that Merrill would have in its capacity as the Company's outside financial advisor. A true and correct copy of the May Request is attached hereto as Exhibit "B." By letter dated June 26, 2009 (the "June 26 Letter"), a copy of which is attached hereto as Exhibit "C," counsel to Merrill acknowledged receipt of the May Request and enclosed various objections and responses to the Requests for Information.

4.      As set forth on the record at the status conference on December 1, 2009 (the "Status Conference"), the Committee has received and reviewed substantial document discovery from many parties on a consensual basis. However, Merrill's production has been delayed far more than that of virtually any other party in this matter, notwithstanding the fact that Merrill was among the earliest recipients of document requests from the Committee. After a relatively small initial production of material in mid-July 2009, the Committee received a first production of non-email documents from Merrill just before Labor Day weekend. At that time Merrill represented that its production of non-email documents was complete. Nearly three months later, however – on the day before Thanksgiving – Merrill advised the Committee that it was about to produce additional non-email documents. According to Merrill's counsel, these documents had not been produced previously due to a "technical glitch," but the volume of this late November production exceeded the entire volume of material that Merrill had produced to the Committee to date.

5.      The Committee has encountered even greater delay with respect to Merrill's production of email. At Merrill's urging, the Committee's counsel had agreed back in June 2009 to defer discussion of email search terms and custodians until Merrill's non-email document production was in hand and could be reviewed. The Committee never anticipated that Merrill would not make its first substantial non-email production until Labor Day. Approximately two weeks after Labor Day, after the Merrill non-email production then in hand had been reviewed, the Committee's counsel began negotiating email search terms and custodians with Merrill's counsel.

6.      The Committee's counsel proposed using with Merrill the same search terms and approach to identifying custodians that had been used with respect to JPMorgan. The

Committee had reached agreement on that search protocol with JPMorgan after minimal debate or negotiation among counsel. However, Merrill's counsel strongly resisted following this same approach, extending negotiations throughout most of October 2009. It was not until October 26, 2009 that a "without prejudice" agreement was reached between Merrill and the Committee regarding email search methodology, which included a radically truncated list of email custodians from what the Committee originally had sought from Merrill. In the approximately six weeks since then Merrill has not produced a single email.

7. In early November 2009, the Committee's counsel made several requests to Merrill's counsel for estimates of (a) when the first installment of the rolling production of Merrill's email was expected to arrive, and (b) the estimated amount of time the overall email production would take for completion. On November 10, 2009, Merrill's counsel advised in a telephone conversation with me that they were still in the process of "collecting, processing and filtering" email in accordance with the agreed-upon search terms and custodian list. I was told that this phase of work would be completed within two weeks (i.e., by November 24, the Tuesday before Thanksgiving) but perhaps earlier, and that at that point the material would be "sent out" for review. I was also told that Merrill would have a sense of the total volume, and could give us an updated report about timing.

8. Merrill never provided an update on the timing of its email production prior to the Status Conference. On Friday, November 20, 2009, and again on Monday, November 23, 2009, I had telephone conversations with Merrill's counsel advising of the mounting concern among various parties about the slow pace of Merrill's email production and the impact of the delay on other issues in the case. I explained that this was one of the issues that had prompted the Debtors to seek a discovery status conference on December 1, and that the

Committee and others were hoping to get firm commitments from Merrill regarding the start and completion of Merrill's rolling production of e-mail. Merrill's only response was to provide a cryptic email later on the evening of November 23, 2009 (a copy of which is attached hereto as Exhibit "D"), which stated "Merrill has collected the email data for the 12 custodians identified in the email discovery plan agreed to by Merrill and the Creditors' Committee. The size of the collection is 215 GB which is extremely large for 12 custodians over a two year period. Merrill is currently processing the data. The project is a high priority for Merrill which is adhering to the email discovery plan." No further information was provided prior to the December 1 Status Conference.

9. During the December 1, 2009 Status Conference, Merrill asserted that it would take approximately twelve weeks for it to complete production of email and related electronic documents, which production would begin on a rolling basis three and a half weeks from December 1, 2009. Merrill also expressed its concerns regarding the Committee's requested search terms and email custodians - both of which it had agreed to on October 26. Ultimately, the Committee agreed to continue discussions with Merrill regarding the timing and scope of the requested production. This Court instructed the Committee, if it proved necessary, to return on a shortened time frame and seek the relief now requested herein.

10. After the December 1, 2009 Status Conference, counsel for Merrill and the Committee had a further telephone conference on these issues on the evening of December 2, 2009. In that conversation, and again by email dated December 4, 2009 (a copy of which is attached hereto as Exhibit "E"), Merrill proposed a further limitation on the scope of its e-mail production, by which it would omit 12 of the search terms previously agreed to (and previously used with JPMorgan without incident) on a schedule consistent with Merrill's representations at

the Status Conference. Thereafter, by email dated December 7, 2009, Merrill offered to expedite its constricted email production only to the limited extent of offering a "target date" for completion of February 11, 2010. After careful consideration of Merrill's proposal, it is clear to the Committee that Merrill's proposed timing as outlined in the Status Conference simply does not work given that (i) substantive settlement negotiations regarding claims arising from the Merger are planned to commence sometime in the early part of January 2010 and (ii) the Debtors' exclusive period to propose a chapter 11 plan is currently set to expire on February 28, 2010. Merrill's counsel has been so advised.

11. In order for the Committee to adequately represent the interests of its constituencies in the substantive settlement negotiations and during the plan process it must be armed with the information it believes could be contained in Merrill's emails and related electronic communications. In short, the Committee can give up no further ground without sacrificing its responsibilities and accordingly, the Committee has no choice but to ask for this Court's assistance so that the email production is not delayed further by Merrill's approach to this matter.

12. Based on the foregoing, it is evident that any further conference with Merrill would be futile and that the Committee accordingly had no choice but to file the Motion.

Dated: December 8, 2009.

_____
Robert A. Schwinger