IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Requested Hearing Date:**<br>**December 15, 2009 at 10:00 a.m. EST**<br>**Proposed Objection Deadline:**<br>**December 11, 2009 at 4:00 p.m. EST** |

## DEBTORS' EXPEDITED MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO ESTABLISH A DOCUMENT DEPOSITORY AND DIRECTING THE COMMITTEE TO DELIVER CERTAIN DOCUMENTS TO THE DEPOSITORY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND (II) ESTABLISHING SETTLEMENT NEGOTIATION PROTECTIONS PURSUANT TO 11 U.S.C. § 105(A)

Tribune Company ("Tribune") and its affiliated debtors and debtors in possession in the above-captioned cases (each a "Debtor" and collectively, the "Debtors"), by and through

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

their undersigned counsel, hereby file this motion (the "Motion") for the entry of an order, on an expedited basis (i) authorizing the Debtors to establish and maintain a centralized document depository program (the "Depository"), to store and make available certain documents being produced to the Official Committee of Unsecured Creditors (the "Committee") in connection with the Committee's analysis of the Leveraged ESOP Transactions (the "Discovery Documents"), as described herein, and directing the Committee to deliver such Discovery Documents to the Depository, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (ii) establishing certain settlement negotiation protections pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"). In further support of the Motion, the Debtors respectfully state as follows:

### STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed the Committee. No request has been made for the appointment of a trustee.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

5.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 2004.

## BACKGROUND TO THE MOTION

6.    As this Court is aware, the series of transactions that returned Tribune to private ownership in 2007 (such transactions, collectively, the "Leveraged ESOP Transactions") have been the subject of ongoing review by the Debtors and the Committee, among others, to determine whether any claims exist in connection with the Leveraged ESOP Transactions and related debt obligations incurred as part of such transactions. Since the Spring of 2009, more than 45 individuals and entities involved with the Leveraged ESOP Transactions have been party to numerous informal document production requests from the Committee (the "Producing Parties"). Discovery conducted to date, both informally and pursuant to agreed orders, has resulted in the production of masses of Discovery Documents from the Producing Parties. The Committee has received the Discovery Documents produced to date from the Producing Parties, typically under confidentiality agreements negotiated between the Committee and the Producing Parties, which preclude the Committee from sharing the Discovery Documents with any other individual or entity. The Debtors have independently obtained access to most of the Discovery Documents, typically by negotiating their own confidentiality agreements with each Producing Party, but the Debtors need to ensure that they and certain other parties have the ability to review all the Discovery Documents.

7.    The Debtors have supported requests for access to these materials from Law Debenture Trust Company of New York, as successor trustee for the 6.61% debentures due 2027 and the 7 1/4% debentures due 2096 ("Law Debenture"), and Centerbridge Credit Advisors

LLC ("Centerbridge"), which appears to hold a large amount of Tribune's public notes.[3] Certain other parties have also requested access to the Discovery Documents, including JPMorgan Chase Bank, N.A., ("JPM") in its capacity as agent and lender under the Debtors' prepetition senior credit facility (the "Credit Agreement"), and certain lenders under the Credit Agreement that are represented by the law firm of Hennigan Bennett & Dorman, LLP and as identified in that firm's statement of representation pursuant to Bankruptcy Rule 2019, as such statement may be amended from time to time.[4]

8.  Negotiating access for the multiple Negotiating Parties[5] with more than 45 separate Producing Parties is unwieldy, inefficient, time-intensive, and of great practical difficulty, and has resulted in unequal access to the Discovery Documents, which has inhibited, and if allowed to continue, will inhibit, negotiations. The Debtors believe that meaningful settlement discussions with regard to the Leveraged ESOP Transactions and negotiations of a plan or plans of reorganization in these chapter 11 cases among the Debtors' key stakeholders will be greatly enhanced by providing the Negotiating Parties participating in such discussions with an equal opportunity to access the Discovery Documents produced to the Committee, and thus that granting the relief requested herein has material utility in these cases.

---

[3] See Order Approving Stipulation as Between the Debtors, the Unsecured Creditors Committee, J.P. Morgan Chase Bank, N.A., Citigroup Global Markets, Inc., Merrill Lynch Capital Corporation, Merrill, Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., Valuation Research Corporation, Robert R. McCormick Foundation, Cantigny Foundation, and Law Debenture Trust Company of New York, Law Debentures' Motion for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or, Alternatively for the Appointment of an Examiner, which was entered by the Court on September 25, 2009 [Docket No. 2235].

[4] See Joint Statement of Representation of More Than One Creditor by Hennigan Bennett & Dorman, LLP and Young Conaway Stargatt & Taylor, LLP , filed November 20, 2009 [Docket No. 2600].

[5] As used herein, "Negotiating Parties" shall mean such persons and their representatives and professionals who appear to be material to negotiations with regard to addressing the Leveraged ESOP Transactions and plan of reorganization, and who are designated by the Debtors from time to time, in consultation with the Initial Negotiating Parties (as defined below), and who agree to be Negotiating Parties. Together with the Debtors and the Committee, JPM, Silver Oak Capital, LLC, Bank of America N.A., Eaton Vance Management, Kohlberg Kravis Roberts & Co. (Fixed Income) LLC, Oaktree Value Opportunities Fund, L.P., Law Debenture, and Centerbridge (each on behalf of itself and its affiliates) are collectively, the "Initial Negotiating Parties".

9. The Debtors are determined to reach a consensual resolution of all matters relating to the Leveraged ESOP Transactions by bringing the Debtors' key stakeholders, including the Negotiating Parties, to the negotiating table. During this process, the Debtors anticipate that they, and the other Negotiating Parties, will likely share their own internal analyses of the Leveraged ESOP Transactions based upon their review of the Discovery Documents and applicable law, including their determinations as to whether any claims exist, the merits of any such claims, and applicable defenses to such claims.

10. The Debtors believe the Negotiating Parties will be discouraged and impeded from being as forthcoming as possible by the potential collateral consequences they perceive may exist as a result of having some of the Negotiating Parties disclosing any communications, materials, or statements shared during the course of their negotiation to other parties, either in these chapter 11 cases or in subsequent litigation, in the event such settlement negotiations are not completely successful. The Debtors have canvassed the Committee and certain other parties with respect to the establishment of certain settlement negotiation protections, and believe that the adoption of the settlement negotiation protections set forth herein will alleviate concerns that the Debtors and other Negotiating Parties may have with respect to candidly participating in the settlement discussions.

## RELIEF REQUESTED

11. By this Motion, the Debtors request the authority to establish the Depository, in consultation with the Committee, to ensure that the material parties to negotiations with regard to the Leveraged ESOP Transactions and plan negotiations, including the Initial Negotiating Parties, have an opportunity to access all Discovery Documents produced in connection with the Committee's analysis of the Leveraged ESOP Transactions, subject to the procedures and protocols set forth herein:

a. The Depository shall store all Discovery Documents produced to the Committee (either prior or subsequent to the entry of the order granting this Motion) by any Producing Party in connection with the Committee's analysis of the Leveraged ESOP Transactions. The Committee shall deliver such Discovery Documents (as may then exist) to the Debtors within three (3) business days of the entry of the order granting this Motion so that the Debtors may place such documents in the Depository. When the Committee receives additional Discovery Documents, it shall deliver such documents to the Debtors within (3) business days of receipt so the Debtors may place such documents in the Depository. The Committee shall identify the Producing Party with respect to each such document;

b. Upon entry of the order granting this Motion, the Initial Negotiating Parties shall have access to all of the Discovery Documents in the Depository, provided that each such entity signs the Acknowledgment attached to this Motion as <u>Exhibit A</u> (the "Acknowledgment"), and also subject to the provisions of the following subparagraph (c). Other entities that the Debtors may designate from time to time, in consultation with the Initial Negotiating Parties, shall have access to some or all of the Discovery Documents in the Depository upon signing the Acknowledgment.[6] For purposes of this Motion, said entity, upon signing the Acknowledgment, shall be referred to as a "Depository Designee";

c. As to the Initial Negotiating Parties, further written notice need not be provided to the Producing Parties for such Initial Negotiating Parties to have access to all of the Discovery Documents in the Depository. As regards to any additional Depository Designees, the Debtors shall provide written notice, which may be via e-mail, to the Committee and each of the Producing Parties of any such newly added Depository Designee. If any Producing Party fails to inform the Debtors of its objection to any newly added Depository Designee reviewing such Producing Party's Discovery Documents within three (3) days of its receipt of notice of such designation, then the newly added Depository Designee shall be able to review such Discovery Documents provided that it has signed the Acknowledgment. If any Producing Party timely objects to a newly added Depository Designee reviewing such Producing Party's Discovery Documents, then the Court shall resolve whether or not such newly added Depository Designee shall be able to review the documents of such Producing Party on expedited motion of any of the Debtors, the Committee, such newly added Depository Designee, or such Producing Party, and such newly added Depository Designee shall not have access to the Discovery Documents of such Producing Party unless such Producing Party consents or a court order allows such access;

---

[6] Such access shall be accomplished by providing such entity with copies of the Discovery Documents to which such entity has been granted access.

d.   The Committee (or a designated representative) shall provide periodic notification to the Debtors and each Depository Designee of the addition of Discovery Documents to the Depository, which notification shall include the identification of the Producing Party and any transmittal information provided by the Producing Party with respect to such added Discovery Documents;

e.   Any Depository Designee and its Designated Representatives (as that term is defined in the Acknowledgment) shall be permitted to exchange and/or discuss any and all of the Discovery Documents with any and all of the other Depository Designees and/or their respective Designated Representatives subject to the terms of the Acknowledgment;

f.   No Depository Designee or its Designated Representatives may use Discovery Documents or Depository Information stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only" or "Confidential" in a court filing in these chapter 11 cases unless such documents are filed under seal;

g.   Committee member Pension Benefit Guaranty Corporation ("PBGC"), as a governmental agency, may disclose documents designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential" and/or information contained therein: (i) to the Executive Branch of the United States, the PBGC and PBGC Board of Directors' officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities; (ii) in the context of a court proceeding relating to the termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors, the Committee, and the Producing Party, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this subsection (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and Producing Party. Any party authorized to receive access to the Discovery Documents from the Pension Benefit Guaranty Corporation pursuant to the Acknowledgment and the order granting this Motion shall be bound by the terms thereof; and

h.   Any party executing the Acknowledgment shall be bound by the terms thereof.

12.   The form of Acknowledgment attached hereto and to the proposed order as Exhibit A shall govern access to the Discovery Documents in the Depository by the Depository Designees and their respective Designated Representatives, to ensure that the Discovery Documents and any information contained therein or derived therefrom is maintained

7

as confidential, and is used by the Depository Designees solely in connection with the chapter 11 cases, including in adversary proceedings and contested matters brought therein. The Acknowledgment further provides for confidentiality restrictions for certain Discovery Documents stamped or otherwise designated as "Highly Confidential – Attorneys' Eyes Only", which the Producing Party believes constitute or contain non-public information that is competitively sensitive and/or proprietary to the Producing Party or its respective clients, or from which competitively sensitive and/or proprietary information belonging to the Producing Party or its respective clients could be derived, and certain Discovery Documents stamped or otherwise designated as "Confidential", which the Producing Party believes constitute or contain non-public information, including, without limitation, to the Producing Party or its respective clients. Among other restrictions, the Acknowledgment restricts disclosure of Discovery Documents stamped or otherwise designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" to Designated Representatives, as that term is defined in the Acknowledgment, and provides that such confidential or highly confidential documents may not be used in a court filing in these chapter 11 cases, including any adversary proceedings and contested matters brought therein, unless such documents are filed under seal.

13.     The specific terms of the Acknowledgement and the proposed order attached hereto are presently being reviewed by various parties, including the Initial Negotiating Parties, and the Debtors may submit modifications to either the Acknowledgement or the proposed order to this Court at the hearing on the Motion in response to further comments of the parties.

14.     Separately, the Debtors request an order providing that any and all communications, whether written or oral, occurring on or after December 7, 2009, between and

among the Negotiating Parties, or their representatives, relating to the claims, if any, among the Negotiating Parties, arising out of the Leveraged ESOP Transactions, whether (a) in connection with the discussion of any plan or plans of reorganization in these cases, or (b) in connection with a discussion among the Negotiating Parties regarding any legal or factual issues related to such plan or plans, or (c) in connection with any analysis or documents prepared by a Negotiating Party or their representatives after the Petition Date and shared on or after December 7, 2009, between and among the Negotiating Parties, which, at or prior to the time communicated or shared, is designated as a "Settlement Communication" (such communications and materials are referred to herein collectively as the "<u>Settlement Material</u>") be deemed confidential.

15. The Debtors further request an order providing that all Settlement Material shall be subject to the following restrictions: Unless the person who originates such Settlement Material otherwise agrees in writing, the Settlement Material (i) may not be used except in connection with such settlement discussions; (ii) may not be disclosed other than in such settlement discussions except as authorized by the Negotiating Party originating such Settlement Material; and (iii) may not be introduced at any trial or hearing or deposition. Without limitation, any and all Settlement Material shall be treated as constituting a compromise/settlement negotiation and shall also be subject to the protections of Federal Rule of Evidence 408 and any work product or other privilege pertaining to any communications or materials. Nothing herein is intended to, or shall modify the rights of any persons to object to the application of Federal Rule of Evidence 408 or any work product or other privilege pertaining to any communications and materials shared prior to December 7, 2009. The communication of any Settlement Material shall not result in the waiver of any work product, attorney client, or

other privilege with respect to the Settlement Material or any related subject matter. The provisions of this Paragraph shall be binding upon all persons and upon all parties-in-interest in connection with these cases, whether or not such person is a Negotiating Party.

## BASIS FOR RELIEF

### A. The Depository

16. The Debtors seek to establish and maintain the Depository and to obtain the Discovery Documents from the Committee for the purposes of storing all such Discovery Documents in the Depository. The Debtors are authorized to seek the Discovery Documents from the Committee pursuant to Bankruptcy Rule 2004, which provides, in relevant part that "[o]n motion of any party in interest, the court may order the examination of any entity" provided that such examination may "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge". Fed. R. Bankr. P. 2004.

17. There are substantial justifications for granting the relief requested herein. The Depository will provide a centralized, uniform system for the collection, maintenance, and distribution of the Discovery Documents, and will facilitate the settlement discussions concerning the consensual resolution of the Leveraged ESOP Transactions and plan or plans of reorganization in these chapter 11 cases. Providing the Depository Designees with access to Discovery Documents in the Depository, subject to the terms contained in the Acknowledgment, will substantially streamline this process and will avoid a costly, time-consuming, and difficult process of negotiating separate access agreements with each of the more than 30 Producing Parties and collecting and assembling such Discovery Documents from the Producing Parties on an individualized basis by all Negotiating Parties. Utilizing a central Depository, containing

10

documents already produced to the Committee and documents produced to the Committee in the future, will result in a huge savings of estate resources.

18. Moreover, the confidentiality of the Discovery Documents will be preserved by the terms of the Acknowledgment and the procedures for providing notice to the Producing Parties of the Depository Designees set forth in this Motion and the Acknowledgment. To the extent that the Producing Parties have any objection to their documents being reviewed, on a confidential basis, by the parties designated by the Debtors from time to time, in consultation with the Initial Negotiating Parties, to access the Discovery Documents, the Producing Parties have the ability to respond, voice such concerns, and object if necessary.

19. Finally, by establishing a single source for all documents relevant to the parties' investigation, review, and analysis of the Leveraged ESOP Transactions, governed by a single form of confidentiality and access agreement to provide the Debtors' key stakeholders with equal opportunity to access the Discovery Documents in the Depository, the Debtors hope to dramatically streamline the process of document collection and distribution, reduce the unnecessary duplication of efforts, and allow all parties to meet at the negotiating table to reach a consensual resolution of all matters relating to the Leveraged ESOP Transactions as efficiently as possible and without prolonged and expensive litigation that would cause significant harm to the Debtors and their estates.

B. **The Settlement Negotiations Protections**

20. The Debtors are determined to reach a consensual resolution of all matters relating to the Leveraged ESOP Transactions by bringing the Debtors' key stakeholders, including the Initial Negotiating Parties, to the negotiating table. The Debtors believe that it is critical that the Settlement Materials be protected in order to promote the candid discussions that

will be necessary for the parties to reach a settlement. Accordingly, pursuant to section 105(a) of the Bankruptcy Code and in the spirit of Federal Rule of Evidence 408, the Debtors respectfully request that all Settlement Materials be deemed confidential and (i) may not be used except in connection with such settlement discussions; (ii) may not be disclosed except as authorized by the Negotiating Party originating such Settlement Material; and (iii) may not be introduced at any trial or hearing or deposition for any purpose. Notwithstanding anything herein to the contrary, no Discovery Document deposited in the Depository and designated a "Settlement Communication" shall be found to be inadmissible at trial or deposition solely because it was designated as a "Settlement Communication".

21.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Federal Rule of Evidence 408 provides, as a general matter, that offers to compromise a claim are not receivable in evidence to prove liability for, invalidity of, or amount of a disputed claim, or for impeachment purposes through a prior inconsistent statement or contradiction. Fed. R. Evid. 408(a). The Rule clearly places settlement negotiations off limits where the validity of the claim is at issue. Lohman v. Duryea Borough, 574 F.3d 163, 167 (3d Cir. 2009). Furthermore, Federal Rule of Evidence 408 applies even if the settlement is between a party to the litigation or settlement negotiation and a non-party. See Branch v. Fidelity & Cas. Co., 783 F.2d 1289, 1294 (5th Cir. 1986) ("The spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent.")

22.     However, this broad exclusionary rule does not apply to the admission of offers to compromise for purposes other than to prove "liability", "invalidity", or "amount" of the disputed claim. See Fed R. Evid. 408(b) (exclusion not required if evidence is offered for

purposes not prohibited by subdivision (a)). See also Lohman, 574 F.3d 163 (allowing evidence of settlement discussions to determine award of counsel's fees); Coakley & Williams v. Structural Concrete Equip., 973 F.2d 349 (4th Cir. 1992) (evidence of settlement allowed where offered to prove a party's intent with respect to the scope of a release); Cates v. Morgan Portable Bldg. Corp., 708 F.2d 683 (7th Cir. 1985) (Rule 408 does not bar evidence of a settlement when offered to prove a breach of the settlement agreement).

23.     The Debtors respectfully submit that in order to ensure that all necessary parties participate in the discussions regarding the Leveraged ESOP Transactions and the plan or plans of reorganization in these chapter 11 cases in good faith and with full candor, it is necessary to bind all parties who receive any Settlement Material, whether directly or indirectly, from disclosing or using such Settlement Material to any party except in connection with such settlement discussions, or seeking to either discover such Settlement Material or to introduce such Settlement Material into evidence at any trial or hearing or deposition for any purpose proscribed by Federal Rule of Evidence 408 or for any collateral purpose.

## NOTICE

24.     Notice of this Motion has been provided to: (a) by email and first class mail to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to JPM; (iv) counsel to the administrative agent for the Debtors' postpetition loan facility; (v) counsel for the indenture trustees for the Debtors' prepetition notes; and (vi) counsel for any of the other Initial Negotiating Parties; and (b) by first class mail on (i) all Producing Parties known to the Debtors and/or their counsel; and (ii) all parties having requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that such notice constitutes due and sufficient notice of this Motion and that no other or further notice is necessary or required.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 9, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
James F. Conlan
Kevin T. Lantry
Scott P. Kramer
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION