# EXHIBIT A



**ZUCKERMAN SPAEDER** LLP

1800 M STREET, NW  SUITE 1000
WASHINGTON, DC 20036-5807
202.778.1800  202.822.8106 fax  www.zuckerman.com

Andrew N. Goldfarb
202-778-1822
agoldfarb@zuckerman.com

November 10, 2009

**VIA FEDERAL EXPRESS**

Lee R. Mitau
Executive Vice President and General Counsel
U.S. Bancorp
U.S. Bancorp Center
800 Nicollet Mall
Minneapolis, MN 55402

   Re: *In re Tribune Company, et al.,*
     <u>Chapter 11 Case No. 08-13141 (KJC) (Jointly Administered)</u>

Dear Mr. Mitau:

   We are special counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-referenced Chapter 11 cases pending in the U.S. Bankruptcy Court in Delaware.  The Committee is in the process of reviewing and analyzing the Leveraged ESOP Transactions that took place beginning in April 2007 and culminated with the consummation of the merger of Tribune Company and Tesop Corporation in December 2007, including the $8.028 billion senior secured Credit Agreement executed as part of the Merger.  In connection with that analysis, the Committee and its professionals have determined that they need information from U.S. Bancorp and affiliated entities and, in particular, the documents requested in the enclosed "Schedule of Information Requested in Connection with Analysis of the Merger."

   Please treat this letter as a request under Delaware Local Rule of Bankruptcy Procedure 2004 that we confer in an effort to reach an agreement on our requested production, before filing a request for production pursuant to Bankruptcy Rule 2004.

2420692.1

 **ZUCKERMAN SPAEDER** ʟʟᴘ

Lee R. Mitau
November 10, 2009
Page 2

Please provide me with some proposed times in the next week when a representative of or counsel to U.S. Bancorp is available to discuss the requests.

Sincerely,

Andrew N. Goldfarb

Enclosure

cc:     Robert A. Schwinger, Esq. (via email)
        Marc D. Ashley, Esq. (via email)
        Rebecca L. Butcher, Esq. (via email)

## SCHEDULE OF INFORMATION REQUESTED
## IN CONNECTION WITH ANALYSIS OF THE MERGER

In accordance with the request made by the Official Committee of Unsecured Creditors of Tribune Company, et al. ("Committee"), U.S. Bancorp ("U.S. Bank") is to produce any and all documents and material responsive to the requests below:

### INSTRUCTIONS

1.      If, in answering these document requests, U.S. Bank encounters any ambiguities when construing a document request, instruction, or definition, U.S. Bank's answer shall set forth the matter deemed ambiguous and the construction used in answering.

2.      Each document request shall be construed according to its terms and not with reference to any other request. Although some of the requests may overlap with others, no request should be read as limiting any other.

3.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration. Any redaction must be clearly visible on the redacted document.

4.      If any part of these document requests is deemed privileged or confidential or calls for the production of any privileged documents or materials and such privilege is asserted, U.S. Bank shall furnish to the Committee a privilege log in accordance with Rule 26(b)(5). The objection to production shall identify the nature of the privilege or immunity being claimed and describe the nature of the documents not produced or disclosed in a manner that will enable the

2420657.1

Committee to assess the claim of privilege or immunity, including: (i) the type of document (e.g., letter, memorandum, report, etc.); (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author(s) or sender(s) of the document; (v) the addressee(s) of the document; and (vi) each person who received a copy of the document.

5.    Where an objection is made to any request or sub-part thereof, U.S. Bank shall state with specificity all grounds for such objection.

6.    In producing documents, all documents that are physically attached to each other shall be produced in that form.  Documents that are segregated or separated from other documents, whether by inclusion and binders, files or sub-files, or by the use of dividers, tabs or any other method, shall be produced in that form.  Documents shall be produced in the manner and order in which they are maintained in the ordinary course of business, or shall be organized and labeled to correspond to particular document requests while maintaining for each group of responsive documents the manner and order which they are maintained in the ordinary course of business.

7.    All documents produced in response to these document requests shall be produced *in toto*, notwithstanding the fact that portions thereof may contain information not requested, shall include drafts and interim editions, as well as final editions, of a document, and shall include all editions or copies of a document which are not identical (whether due to handwritten notations, revisions or otherwise) to the original or other produced copy of a document.

8.    With respect to each document request, U.S. Bank shall identify and produce all documents (as defined above without limitation) which are known or which can be located or discovered by reasonably diligent effort, regardless of location, including, without limitation, all such documents requested to be produced which are in the files (whether personal, business or

2420657.1

any other files), possession, custody or control of your attorneys, officers, directors, agents, employees, accountants, consultants, representatives or any other persons directly or indirectly employed by or connected with you or your attorneys or anyone else subject to your control.

9.      If any document or any portion thereof responsive to any request herein has been discarded or destroyed in whole or in part, U.S. Bank shall produce the following information: (i) the date the document was discarded or destroyed; (ii) the reason(s) the document was discarded or destroyed; (iii) the person(s) who discarded or destroyed the documents; and (iv) where the document was maintained prior to its destruction.

10.     Any document or materials requested herein that the producing party maintains in electronic form shall be produced in tagged image file format ("TIFF") or portable document format ("PDF") files with extracted full text for electronic documents, except that all spreadsheets, including but not limited to those created with Excel software, shall be produced in their native form.  Additionally, metadata shall be provided with each electronic production.

11.     These document requests shall be deemed continuing so as to require further and supplemental production should you obtain additional documents falling within its scope between the time of initial production and the time of final resolution of this adversary proceeding.

12.     The Committee reserves all rights to expand or supplement all requests for information and documents set forth herein.

## DEFINITIONS

The following definitions, including grammatical variations, shall apply throughout these document requests.

3

1.     "Bankruptcy Code" refers to title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.*, as in effect on the Petition Date.

2.     "Bridge Loan" means and refers to the Unsecured Interim Loan Agreement, dated December 20, 2007, by and among Tribune as borrower, the financial institutions party thereto as lenders, Merrill Lynch Capital Corporation as administrative agent, and other agents party thereto.

3.     "Credit Agreement" means and refers to the $8.028 billion senior secured credit agreement, dated May 17, 2007, by and among Tribune as borrower, the financial institutions party thereto as lenders, JP Morgan Chase Bank, N.A., as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

4.     "Debtors" means and refers to Tribune (defined below) and its affiliated debtors in the Chapter 11 cases jointly administered as Case No. 08-13141, including the Guarantor Subsidiaries (defined below) and each of their present and former parents, subsidiaries, predecessors, members, affiliated entities, agents, representatives, officers, executives, partners, directors, employees, affiliates, associates, consultants, accountants, attorneys and/or anyone acting on their behalf, either individually or collectively.

5.     "Interim Credit Agreement" means and refers to the $1.6 billion senior unsecured interim loan agreement, as of December 20, 2007, among Tribune, as borrower, the financial institutions party thereto as lenders, Merrill Lynch Capital Corporation, as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

2420657.1

6.     "Merger" means and refers to the series of transactions that culminated with the merger of Tribune and Tesop Corporation, thereby causing Tribune to become a wholly owned subsidiary of the Tribune Employee Stock Ownership Plan.

7.     "Petition Date" means and refers to December 8, 2008.

8.     "Revolving Credit Facility" means and refers to the $750 million revolving credit portion of the Credit Agreement that included a letter of credit subfacility in an amount up to $250 million and a swing line facility in an amount up to $100 million.

9.     "Tribune" means and refers to Tribune Company, any and all predecessors or successors in interest thereof, and any and all of its officers, directors, employees, consultants, agents, representatives, executives, partners, investigators, consultants, researchers, contractors, advisors, accountants and attorneys.

10.     The term "communication" means any form whatsoever of correspondence, discussion, instruction, reports, and/or written or oral exchange, between two or more persons, and includes electronic communications and voice mail communications.

11.     The term "person" includes natural persons (including those employed by the Equity Committee), and any and all such person's principals, employees, agents, attorneys, consultants, and other representatives, and shall also include proprietorships, partnerships, firms, corporations, joint ventures, independent establishments, government agencies or corporations (federal or otherwise), any divisions or subsidiaries of any of the above, and any other group or combination acting as an entity, as well as any financial institution.

12.     The terms "reflect," "refer to," "related to" and "relating to" are defined so as to encompass each document that constitutes, concerns, directly or indirectly deals with, or is in any way pertinent to or connected with the given subject, including without limitation,

5

2420657.1

documents now or previously attached or appended, underlying, supporting, or used in the preparation of any document responsive to each request.

13.    The terms "you" and "your" refer to U.S. Bank and include its agents, representatives, employees, affiliates, associates, consultants, accountants, attorneys and/or anyone acting on their behalf, either individually or collectively.

14.    The term "document" shall mean and include all "documents and tangible things" to the very broadest extent included within the scope of the Federal Rule 34, including but not limited to, the originals and all drafts and copies, together with any annotations or highlighted copies containing all or part of the information requested, in the possession, custody or control of you, your attorneys, representatives, employees, agents or any other natural person or business or legal entity acting or purporting to act for or on your behalf, or their respective directors, officers, representatives, employees or agents, as the case may be. Also, the term "document" or "writing" means any medium whatsoever, including all electronic, recorded and digital media of any kind, upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written material, correspondence, electronic mail, note, file, book, pamphlet, printout, chart, record, report, periodical, letter, memorandum (including any memorandum or report of a meeting or conversation), invoice, bill, order form, receipt, financial statement, accounting entry, diary, draft, working paper, chart, paper, print, drawing, sketch, graph, index, list, and any written, recorded, transcribed, punched, taped, filmed, or graphic matter whatsoever, however produced or reproduced, which is in your possession, custody, or control or which was, but is no longer, in your possession, custody, or control. The term "document" or "writing" shall also include all

6

2420657.1

copies or drafts of documents by whatever means made, including specifically but not exclusively, those copies bearing commentary or notations not appearing on the original.

15.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all," "any" means "any and all," "including" means "including but not limited to," "and" and "or" encompass both "and" and "or," "and" and "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these requests all responses that might otherwise be construed to be outside its scope. The terms "each" and "any" as used herein also mean "every." Words in the masculine, feminine or neuter form shall include each of the other genders.

16.    All capitalized terms used but not defined herein shall have the meaning ascribed to them in Affidavit of Chandler Bigelow III, sworn to December 8, 2008, that was filed in the Debtors' chapter 11 cases.

## REQUESTS

1.    All documents and communications addressing, reflecting, discussing, or relating to the Credit Agreement, Interim Credit Agreement, Revolving Credit Facility, Bridge Loan or Merger for the period January 1, 2007 through the Petition Date.

2.    All documents and communications regarding or relating to the request that you participate in the Revolving Credit Facility, Interim Credit Agreement, Bridge Loan or Credit Agreement for the period January 1, 2007 through the Petition Date.

3.    All documents and communications assessing, analyzing, addressing or discussing your potential participation in the Revolving Credit Facility, Interim Credit Agreement, Bridge Loan or Credit Agreement including any documents reviewed or relied on in assessing your potential participation for the period January 1, 2007 through the Petition Date.

2420657.1

4.    All documents and communications provided to or received from Tribune, including its financial advisors, lenders, affiliates, agents or representatives, regarding the Credit Agreement, Interim Credit Agreement, Revolving Credit Facility, Bridge Loan or Merger for the period January 1, 2007 through the Petition Date.

5.    All documents and communications regarding or relating to your decision to decline participation in the Revolving Credit Facility, Interim Credit Agreement, Bridge Loan or Credit Agreement for the period January 1, 2007 through the Petition Date.

2420657.1