IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Related to Docket No. 2548<br>Hearing Date: December 15, 2009 at 10:00 a.m. |

**DECLARATION OF DAVID S. BRALOW IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND FED. R. BANKR. P. 9019(a) APPROVING A SETTLEMENT AGREEMENT BETWEEN CERTAIN DEBTORS AND THE ESTATE OF E. MICHAEL GUTMAN, M.D.**

I, DAVID S. BRALOW, declare as follows:

1. Between July 2004 and February 2009, I served as the Assistant General Counsel of Tribune Company, in which capacity I was responsible for providing and supervising

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

5110097

legal advice for various newspapers operated by Tribune Company and/or its subsidiaries, including *Orlando Sentinel*, *South Florida Sun-Sentinel*, *The (Baltimore) Sun*, *The Morning Call* and *Hartford Courant*. During this time, I was primarily responsible for the defense for lawsuits pending against such newspapers, especially matters involving media-related disputes, including Case No. 2005-CA-4071 pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "Florida Action"). In March 2009, I joined the law firm of Thomas, LoCicero & Bralow PL, where I currently serve as a Partner. In this capacity, I continue to provide very similar services to Tribune Company regarding lawsuits pending against newspapers operated by Tribune Company and/or its subsidiaries, including with respect to the Florida Action.

2. I submit this declaration (the "Declaration") in support of the Motion of the Debtors for an Order Pursuant to 11 U.S.C. §§ 105(a), 363(b) and Fed. R. Bankr. P. 9019(a) Approving a Settlement Agreement Between Certain Debtors and the Estate of E. Michael Gutman, M.D (the "Motion").[2] Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge or on information supplied to me by other professionals retained by the Debtors. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this Declaration on behalf of the Debtors.

3. The Florida Action was commenced on May 11, 2005 by the estate of E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), and Gutman Pain/Accident Center, Inc. a/k/a/ and/or d/b/a Back Pain Institute of Orlando (collectively, the "Plaintiffs"). Among other things, the Florida Action alleges that Orlando Sentinel Communications Company, Tribune Company, Tribune Publishing Company, and Sentinel Communications News Ventures, Inc.

---

[2] All capitalized terms used but not defined herein have the meanings assigned to such terms in the Motion.

2

(collectively, the "Defendants") are liable for articles written by reporters Rene Stutzman and Fred Schulte (the "Reporters") and published in the *Orlando Sentinel* that allegedly wrongfully identified Dr. Gutman, one of the Plaintiffs, as prescribing pain and anxiety medication that was linked to the death of eleven patients. As filed, the Florida Action contained one count for defamation and one count for a false light invasion of privacy claim; however, the false light of invasion privacy claim has since been dismissed.

4. The Plaintiffs sought damages in excess of $15,000,000.00 in connection with the Florida Action. The Debtors maintain insurance applicable to the Florida Action. However, the Debtors' insurance policy is subject to a $1 million per occurrence self-insured retention provision, with the Debtors being obligated to pay for all defenses costs, which payments do not erode the Debtors' retention obligation.

5. As of the Petition Date, the Plaintiffs and the Defendants had completed significant discovery with respect to the Florida Action including, but not limited to, depositions of fact witnesses such as reporters, editors, and Dr. Gutman. Depositions of medical and damages experts were initiated but not completed as of the Petition Date. The Debtors had expended approximately $1,264,184.00 in connection with defense of the Florida Action prior to the Petition Date. However, substantial discovery currently remains outstanding in the Florida Action including the potential deposition of numerous fact witnesses (particularly concerning the causes of the suicide of Dr. Gutman), medical experts, damages experts, and additional fact witnesses. In addition, there are potentially several pre-trial motions of both a substantive and non-substantive nature outstanding that would have to be resolved before trial could begin. If the Florida Action were to proceed to trial, I believe that the state judge in the Florida Action would likely set trial for some time in the next eight or ten months. Based on the estimates that I have

compiled as well as those received from the Debtors' other legal counsel involved in defending the Florida Action, I believe that the future costs of defending the Florida Action to a final jury verdict will range between $1.5 and $2 million.

6. That cost estimate was created without considering the fact that Dr. Gutman committed suicide on April 28, 2009. As a result of Dr. Gutman's death, Donna G. Gutman, Dr. Gutman's widow ("Mrs. Gutman"), threatens to assert additional financial damages against the Defendants, as well as additional pain and suffering. I believe that Mrs. Gutman's assertion of additional damage claims will result in a variety of new factual and legal issues requiring substantial discovery and additional briefing beyond what was originally contemplated in the Florida Action, thereby potentially increasing the costs associated with defense of the Florida Action.

7. Consistent with the Bankruptcy Court's direction at an evidentiary hearing held on June 30, 2009, the Debtors and the Plaintiffs agreed to engage in mediation in Central Florida with Rodney Max, an experienced mediator (the "Mediation"). I attended and participated in the Mediation on behalf of the Debtors. Under the supervision of the mediator, the Debtors and the Plaintiffs, along with the Debtors' insurer, were able to reach a resolution of the Florida Action, including a resolution of Mrs. Gutman's alleged claims associated with or arising from Dr. Gutman's suicide. On October 27, 2009, the Debtors and the Plaintiffs agreed, subject to approval of this Court, to the terms of a settlement agreement completely resolving their dispute (the "Settlement Agreement"). A description of the Settlement Agreement is provided in the Motion.

8. I believe the Settlement Agreement is the product of arm's-length negotiations between the Debtors, the Debtors' insurer, and the Plaintiffs. Absent the resolution

of the Florida Action afforded by the Settlement Agreement, I believe the Debtors and the Plaintiffs would likely be forced to litigate the merits of the Florida Action, thereby potentially exposing the Debtors to additional defense costs up to $2 million. Although I believe that a summary judgment motion is meritorious and should be successful, such dispositive motions are not easily obtained in the Florida state courts, especially when there are complex factual issues such as those inherent in the defamation claim at issue. Litigation regarding the truth or falsity of the alleged defamatory statements will require analysis of Dr. Gutman's treatment of eleven separate patients, which analysis would be akin to eleven separate malpractice cases. In addition, the Plaintiffs are represented by successful and adept counsel, there are fact issues to which a jury may give undue weight, and compounding the uncertainty is the extent to which Dr. Gutman's suicide might affect a jury. I believe that in this instance, the uncertainty of litigation could expose the Debtors to a substantial adverse judgment, of which the Debtors would be responsible for the first $1 million of the judgment under their applicable insurance coverage. Additionally, since the Florida Action involves high stakes litigation, even if the Debtors were to win at trial, the Florida Action will be appealed, resulting in additional costs to the Debtors.

9. I have read the Objection to Motion of the Debtors for an Order Pursuant to 11 U.S.C. Sections 105(a), 363(b) and Fed. R. Bankr. P. 9019(a) Approving a Settlement Agreement Between Certain Debtors and the Estate of E. Michael Gutman, M.D. filed by the Official Committee of Unsecured Creditors on December 8, 2008 (the "Objection") and believe there are several additional facts that this Court should be aware of. First, during the course of negotiations with the Plaintiffs, the Debtors initially offered to stipulate to relief from the automatic stay to mediate their dispute if the Plaintiffs agreed to subtract some or all of the Debtors' $1 million self-insured retention obligation from any settlement amount or judgment

5

obtained, much like the Debtors' accomplished in the Faggio matter mentioned in the Objection. The Plaintiffs declined this offer. Second, in leading up to the Mediation, the attorneys representing Mrs. Gutman insisted that Mediation would not be successful unless it involved immediate payment. Third, I believe that the reasonableness of the Debtors' portion of the settlement payment is objectively evidenced by the decision of the Debtors' insurer, who is liable for payment of any negative verdict in excess of $1 million, to pay $850,000.

10. I believe that the Florida Action exposes the Debtors to potential liability of $3 million or more. By the Settlement Agreement the Debtors incur out of pocket expenses that are half the estimated total defense cost expenses, and one-third the overall potential exposure. Accordingly, based on my involvement throughout the duration of the Florida Action, and my experience handling defamation lawsuits, I believe that entering into the Settlement Agreement is a prudent exercise of the Debtors' business judgment.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: December ___, 2009

David S. Bralow
Thomas, LoCicero & Bralow PL