IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | Chapter 11 |
|---|---|---|
| In re: | : | Case No. 08-13141 (KJC) |
| | : | (Jointly Administered) |
| TRIBUNE COMPANY, et al., | : | |
| | : | Hearing Date: December 15, 2009 at 10:00 a.m. |
| Debtors. | : | Objection Deadline: December 15, 2009 |
| | : | |
| | : | Re: Docket No. 2767 |

## OBJECTION OF MERRILL LYNCH CAPITAL CORPORATION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER REQUIRING THE PRODUCTION BY DATE CERTAIN OF EMAIL DOCUMENTS FROM MERRILL LYNCH CAPITAL CORPORATION PURSUANT TO BANKRUPTCY RULE 2004

Merrill Lynch Capital Corporation ("Merrill Lynch"), by its attorneys Kaye Scholer LLP and Potter Anderson and Corroon LLP, for its objection ("Objection") to the motion (the "Rule 2004 Motion"), dated December 8, 2009, of the Official Committee of Unsecured Creditors (the "Creditors' Committee") for an order requiring the production by a date certain of email documents from Merrill Lynch, respectfully states as follows:

### PRELIMINARY STATEMENT

As demonstrated below and in detail in the accompanying Declaration of Joseph M. Drayton, Merrill Lynch has worked cooperatively, diligently and on virtually a daily basis since it was first asked by the Creditors' Committee on September 18, 2009 to produce emails. Merrill Lynch understands the desire of the Creditors' Committee to obtain documents more quickly than Merrill Lynch can produce them as well as the magnitude of these chapter 11 cases and the significance of plan negotiations. Nevertheless, as Merrill Lynch's Vice President - Specialist - Systems and Data Security

(the "Enterprise Data Witness") will be available to testify at the hearing (the "Hearing") with respect to the Rule 2004 Motion, the schedule sought by the Rule 2004 Motion simply cannot be achieved as a practical matter.

Merrill Lynch's Enterprise Data Witness will be available to testify, among other things, that (1) Merrill Lynch has acted responsibly to expedite its email production processes, **which are well under way**; and (2) given the massive volume of email data generated by the Creditors' Committee's discovery demands, it will take Merrill Lynch until January 31, 2010 (three weeks more than the Creditors' Committee says it would like) to complete its production of responsive and non-privileged emails. This fact alone should have resolved the Rule 2004 Motion before the Court as the Creditors' Committee communicated to Merrill Lynch on December 4, 2009 that January 31, 2010 was an acceptable date for the completion of Merrill Lynch's email production.

While the Creditors' Committee would have this Court believe otherwise, it is the Creditors' Committee that must accept responsibility for any perceived delay regarding the completion of Merrill Lynch's email production. The facts before the Court will show the following:

1. The Creditors' Committee could have requested Merrill Lynch's email production in July 2009 (as the Creditors' Committee did with J.P. Morgan ("JPM")) instead of waiting until September 18, 2009.

2. Once the Creditors' Committee contacted Merrill Lynch in September, it should not have wasted time by taking an aggressive position that Merrill Lynch collect emails for **82 custodians**, over a **24-month period**, using **42 overly broad search terms** to identify a potentially responsive pool of emails.

3. The Creditors' Committee never compromised on its position regarding the number of custodians until October 26, 2009 -- after **Merrill Lynch agreed to extend the time period for its search by an additional seven months (to 31 months)**; even then, it resolutely clung to and dictated the

use of **40 overly broad search terms,** which substantially delayed Merrill Lynch and the Creditors' Committee from reaching agreement on an email discovery plan (the "EDP").

4. Whereas the EDP agreed upon by Merrill Lynch and the Creditors' Committee contemplated that there would be further negotiations concerning the 40 overly broad search terms if the data set generated as a result of such terms were massive (as it is), it now appears that the Creditors' Committee never intended to engage in any such good faith negotiations, preferring instead to dictate the search terms used regardless of any consequences or practical realities regarding the size of the data set produced.

5. The Creditors' Committee failed to communicate to Merrill Lynch any particular need for its emails until late in November 2009.

Merrill Lynch is doing everything that it feasibly can do to produce documents in a timely manner. Merrill Lynch respectfully submits that it should not be penalized for the Creditors' Committee's prior dilatory and uncompromising conduct with respect to Merrill Lynch.

The overly broad data set sought by the Creditors' Committee contains approximately 330,000 documents. The Proper Email Set contains about 50,000 fewer documents but still contains a staggering 280,000 documents that must be reviewed for responsiveness and privilege. In view of the overly broad search terms sought by the Creditors' Committee and the massive amount of documents contained in the Proper Email Set, Merrill Lynch respectfully submits and requests that it should be required to produce by January 31, 2010 responsive and non-privileged documents from the Proper Email Set only and not the additional 50,000 documents.

## FACTUAL BACKGROUND

At all times, Merrill Lynch has cooperated with the Creditors' Committee's investigation. The facts relevant to the Rule 2004 Motion are set forth at length in the accompanying Declaration of Joseph M. Drayton (the "Drayton Decl."), which is incorporated herein by reference. The Drayton Decl. details Merrill Lynch's good faith actions in promptly furnishing the Creditors' Committee with hard copy documents and non-email electronic documents (the "Non-Email Documents"). (Drayton Decl. at ¶¶ 8 to 9.)

As set forth more fully in the Drayton Decl., on June 15, 2009, Merrill Lynch and the Creditors' Committee decided to defer the production of responsive and non-privileged emails until after the Creditors' Committee reviewed Merrill Lynch's initial production of Non-Email Documents. (*Id.* at ¶ 5.) At that time, the Creditors' Committee planned to review Merrill Lynch's initial production of Non-Email Documents in order to become informed before engaging in a dialogue with Merrill Lynch about the selection of appropriate custodians and a narrow list of search terms for the subsequent email production. (*Id.* at ¶ 5.) It was intended that the parties would engage in good faith dialogue at a later date about appropriate search terms but the Creditors' Committee has steadfastly refused ever to engage in such a dialogue; instead, it has sought to dictate unilaterally an overly broad set of search terms. (*Id.* at ¶ 10.)

On September 18, 2009, the Creditors' Committee first requested Merrill Lynch's emails and demanded that it collect, process and review the emails of **82 custodians**, for a **24-month period**, using **42 overly broad search terms**. (*Id.* at ¶ 10.) During the next six weeks, Merrill Lynch engaged in extensive negotiations with the

Creditors' Committee, resulting in the October 26, 2009 EDP. (*Id.* at ¶ 29.) The EDP had two key components, both of which were important to Merrill Lynch: (1) it required Merrill Lynch to collect email data from **12 custodians**, for a **31-month period** (Merrill Lynch had consented to an **additional seven months**), using **40 overly broad search terms** (as the Creditors' Committee refused to a meaningful compromise on its search terms); and (2) if Merrill Lynch concluded, after applying the search terms to the email data, that the collection and searching efforts had retrieved an unreasonable number of documents to be reviewed for responsiveness and privilege, then Merrill Lynch would have the right to advise the Creditors' Committee of its determination and to negotiate with the Creditors' Committee about narrowing the 40 overly broad search terms. (*Id.* at ¶ 33.)

After reaching agreement on the EDP, Merrill Lynch immediately began to take steps to collect and process its email data for review by its outside discovery vendor. (*Id.* at ¶ 30-31.) These processes resulted in a **massive** quantity of documents -- *i.e.*, 330,000 potential email documents. (*Id.* at ¶ 32.)

Merrill Lynch informed the Court at the December 1 status conference that it was taking steps, as contemplated by the EDP, to determine whether the 330,000 emails for review could be reduced further by narrowing the 40 overly broad search terms. On December 2, 2009, Merrill Lynch ran additional filtering of the 330,000 emails by excluding 12 overly broad and generic terms from the search string. (*Id.* at ¶ 35.) This filtering reduced the pool of email for review to approximately 280,000 emails (the "Proper Email Set"). (*Id.* at ¶ 36-37.) As evidence of Merrill Lynch's good faith and cooperation, Merrill Lynch began, before it learned whether or not it could reach an

agreement with the Creditors' Committee about the Proper Email Set and the timing for production of same, (a) its processing of the Proper Email Set on December 4, 2009 and (b) its review for responsiveness and privilege on the morning of December 7, 2009. (*Id.* at ¶ 37.)

At the Hearing, Merrill Lynch's Enterprise Data Witness will be available to testify that Merrill Lynch has not only considered but also implemented a variety of methods for expediting production of responsive, non-privileged documents from the Proper Email Set. Merrill Lynch's Enterprise Date Witness will be available to testify that even after having considered and implemented such methods, Merrill Lynch **cannot** complete its production before January 31, 2010.

## THE RULE 2004 MOTION SHOULD BE DENIED

### I. Merrill Lynch Has Committed to a Firm and Reasonable Production Schedule

The facts before the Court will show that Merrill Lynch has consistently acted to expedite its email production processes, which are well under way. Merrill Lynch has engaged an experienced discovery vendor to assist it and is utilizing sophisticated and complex technologies to complete its email production. Given the enormous volume of email data generated by the Creditors' Committee's discovery demands, Merrill cannot complete its email production until January 31, 2010. Merrill Lynch has committed to a firm schedule for the production of responsive and non-privileged emails, assuring that Merrill Lynch's production of responsive, non-privileged emails from the Proper Email Set will be completed by January 31, 2010. (Drayton Decl. at ¶ 40.)

Merrill Lynch notes that the production schedule proposed by Merrill Lynch is actually one month shorter than the time it took JPM to produce email documents, measured from the time Merrill Lynch and JPM each reached agreement with the Creditors' Committee on its respective EDP. (See Drayton Decl. at ¶ 42.) In other words, it is not taking Merrill Lynch any longer to produce email documents in these cases than it took for JPM to produce emails in these cases given that the Creditors' Committee waited until September 18 to approach Merrill Lynch for its emails.

Merrill Lynch respectfully submits that the 50,000 emails associated with the 12 overly broad, generic search terms are unlikely to yield responsive information and should not be reviewed by Merrill Lynch in light of the burdens associated with such review and Merrill Lynch's commitment to review the 280,000 documents in the Proper Email Set on the schedule outline herein -- *e.g.*, by January 31, 2010.

## II. The Creditor's Committee Deserves the Blame for any Perceived Delays in the Timing of Merrill Lynch's Email Production

The Creditors' Committee has no one but itself to blame for the timing of Merrill Lynch's email production. After deferring Merrill Lynch's email discovery in June 2009, the Creditors' Committee failed to (i) approach Merrill Lynch for emails until September 18; (ii) reach an agreement on the EDP until October 26; and (iii) alert Merrill Lynch that its email production would have any impact on the Creditors' Committee work until November 2009. (Drayton Decl. at ¶ 18; Certification of Counsel by Robert A. Schwinger at ¶ 5-8.) At that point, Merrill Lynch could not miraculously produce emails as it needed at least three months to do so.

The Creditors' Committee could have started negotiations with Merrill on the EDP in July 2009. Contrary to the Creditors' Committee's assertion (at ¶¶ 11-12), it

7

had no legitimate reason to wait until September 18, 2009 to approach Merrill Lynch about email discovery. The Creditors' Committee had received documents from Merrill Lynch in July, and the Creditors' Committee could have engaged in discussions with Merrill Lynch about search terms back in July, rather than foisting upon Merrill Lynch in October the 40 search terms it had agreed upon with JPM back in July.

Moreover, the Creditors' Committee further delayed Merrill Lynch's collection of emails by proposing an unreasonable set of parameters (82 custodians and 42 overly broad search terms) for the email production and refusing to compromise in any meaningful way regarding its overly broad search terms. In fact, the Creditors' Committee only agreed to compromise on the number of custodians after Merrill Lynch had agreed to the Creditors' Committee's October 23, 2009 request to increase the two-year time period for Merrill Lynch's document search by an additional seven months.

Accordingly, Merrill Lynch has went to great lengths to produce responsive, non-privileged emails from the Proper Email Set in a timely fashion. In any event, Merrill Lynch should not be penalized with the imposition of a discovery schedule that is impossible for it to meet, particularly here, where the Creditors' Committee has created the circumstances that now make it impossible for Merrill Lynch to complete its production of responsive, non-privileged emails before January 31, 2010.

**WHEREFORE,** Merrill Lynch respectfully requests that this Court (i) deny the Rule 2004 Motion, (ii) order that Merrill Lynch produce responsive, non-privileged documents from the Proper Email Set only by January 31, 2010 and (iii) grant Merrill Lynch such other and further relief as is just and proper, including but not limited to, having the Creditors' Committee reimburse Merrill Lynch for a portion of its costs related to the production of the Proper Email Set.

Dated:   December 14, 2009
         Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

By: /s/ Laurie Selber Silverstein
Laurie Selber Silverstein (DE Bar 2396)
R. Stephen McNeill (DE Bar 5210)
P.O. Box 951
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19899
(302) 984-6000

- and -

KAYE SCHOLER LLP
Madlyn Gleich Primoff
Joseph M. Drayton
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Counsel for Merrill Lynch Capital Corporation*