# EXHIBIT H

| | | |
|---|---|---|
| **"Schwinger, Robert A."** <RSchwinger@chadbourne.c om> | To | "'Joseph Drayton'" <JDrayton@kayescholer.com> |
| | cc | "'mprimoff@kayescholer.com'" <mprimoff@kayescholer.com>; "Seife, Howard" |
| 10/15/2009 05:15 PM | bcc | <HSeife@chadbourne.com>; "Zink, N. Theodore" |
| Document is Retained | Subject | Tribune/MLCC -- E-mail status |

History:              🖅 This message has been replied to.

Dear Joe,

We have not heard any response regarding Merrill Lynch e-mail production or search methodology since my message to you on Monday.  If Merrill Lynch is unwilling to move this matter forward beyond the proposal as set forth in your October 2, 2009 e-mail, which we found unacceptable for the detailed reasons that we set forth in my October 5 and 12 e-mails to you, we believe that we will have no choice but to formally raise this matter with the Court next week for a judicial resolution.  If we are not at an impasse, and Merrill Lynch believes that there are still possibilities for moving the dialogue forward, you should identify those possibilities so that we can move ahead on them swiftly.  But at this point in the process, the Committee cannot simply let e-mail production from Merrill Lynch continue to remain in this longstanding limbo.

Accordingly, please let me know promptly where you see this matter going.  Thank you.

Best regards,

        R.  A.  S.

**Robert A. Schwinger**
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
**tel** 212-408-5364 | **fax** 646-710-5364
rschwinger@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/rschwinger.vcf

Please consider the environment before printing this email.

_____

**From:** Schwinger, Robert A.
**Sent:** Monday, October 12, 2009 11:44 AM
**To:** 'Joseph Drayton'
**Cc:** 'mprimoff@kayescholer.com'; Seife, Howard; Zink, N. Theodore; Vazquez, Francisco; Ashley, Marc D.; Nellos, Alexandra; Goldfarb, Andrew
**Subject:** RE: Tribune/MLCC -- E-mail search terms
Dear Joe,
Thank you for your response to our October 5, 2009 message. I hope that this e-mail can help move matters forward.
To date, we have had several telephone conversations and exchanged a number of extraordinarily detailed written communications regarding e-mail discovery issues. Given these circumstances, any suggestion that the parties have not been conferring on these issues seems unwarranted. Rather, I believe the difficulties we face concern the substance of that conferral.
Specifically, we continue to feel that to date we have not received substantive responses to the legitimate issues and concerns that on behalf of the Committee we have raised. For example, my October 5, 2009 message identified specific various reasons that gave us concern (or at least precluded us from having any comfort) regarding whether certain highly relevant e-mail would be captured (or at least reliably

captured) if the limited custodian list proposed by Merrill Lynch were to be used. The response we received contains nothing to address these concerns, nor to suggest any reason to believe that such material would not be appropriately subject to discovery by the Committee in its investigation. We performed and reported on actual empirical testing that we were able to conduct on other e-mail populations we had, concerning the theoretical premises upon which Merrill Lynch has suggested that we base the custodian list, and the results showed that those premises were unreliable. Again, the response we received contains nothing to address these concerns.

The suggestion that we are proceeding differently with Merrill Lynch than we did with JPMorgan is unfounded. To the contrary, we are proceeding in the exact same way. We have proposed the exact same list of e-mail terms that was agreed to with JPMorgan. Regarding e-mail custodians, we did the exact same thing with Merrill Lynch as we did with JPMorgan -- find a deal team list preparing by the responding party itself and use that list as the basis for identifying e-mail custodians. Notably, when we discovered that JPMorgan's original proposed list of e-mail custodians was missing certain names from deal team lists that had been compiled by JPMorgan, we brought that fact to JPMorgan's attention and asked that the missing names be included -- and JPMorgan agreed to do so that same afternoon. My October 5, 2009 message raised the point that we did not see any reason why the matrix of relevance/reasonableness/cost issues would be any different for Merrill Lynch than it was for JPMorgan. Here again, we have not received any substantive response to suggest that this is not correct.

All we really have seen to date is the rather conclusory recitation of buzzwords like "reasonableness" and "cost" devoid of any supporting specifics, as if merely saying these words somehow obligates the Committee to pare down the discovery it will obtain. We have seen no empirical information from Merrill Lynch regarding the costs associated with including or not including particular search terms or e-mail custodians. Nor have we been told of the results of any sampling or other empirical testing to determine the extent to which including or not including particular search terms or e-mail custodians affects whether truly responsive e-mail material is or is not being captured. Caselaw is quite clear that parties seeking to raise such issues bear the burden of supporting their positions through such empirical information. Since the Committee, as the requesting party, is not in possession of the relevant universe of data and cannot test it ourselves, that burden necessarily falls here on Merrill Lynch -- particularly since Merrill Lynch is the party resisting on supposed cost and reasonableness grounds an approach that its peer financial institution found unobjectionable.

As some of the leading recent cases in this area have stated:
"Selection of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology. The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented."
Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 260, 262 (D.Md. 2008) (Grimm, M.J.).
"Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics. Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread. This topic is clearly beyond the ken of a layman and requires that any such conclusion be based on evidence that, for example, meets the criteria of Rule 702 of the Federal Rules of Evidence."
United States v. O'Keefe, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) (Facciola, M.J.); see also, e.g., In re Seroquel Products Liability Litig., 244 F.R.D. 650, 662 (M.D. Fla. 2007) (Baker, M.J.) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process.... Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.").
"[W]hat is required is something other than a lawyer's guesses, without client input, and without any quality control testing to see if the search terms produce reasonably all the responsive ESI and limited 'false positives.'"
William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 136 n.3 (S.D.N.Y. March 19, 2009) (Peck, M.J.).
As I mentioned, the Committee obviously is not in a position to perform any such testing on our end. But we are not without an empirical benchmark to support the basic approach we propose. That same

approach was followed -- with very little fuss -- at a reasonably comparable financial institution, without creating any apparent issues of an unreasonably broad or unduly expensive search. This seems to us to be a fairly persuasive indication that there are not likely to be significant cost or overbreadth considerations that should preclude following the same approach at Merrill Lynch.

Finally, I do want to say a word about LR 7026-3. We are well familiar with LR 7026-3, though we note that other parties with whom we have addressed e-mail discovery issues in this matter have made a point of questioning its applicability outside the adversary proceeding context. But more to the point, the fact is that, per LR 2004-1, the Committee and Merrill Lynch came to consensus months ago on the scope of the Committee's requests for production, and Merrill Lynch has been producing non-email materials for some time on that basis. E-mail production, which we are getting to now, is not a new or separate request. Rather, we are simply discussing which mechanical steps in gathering responsive e-mail material for review would and would not be likely to result in a full production of e-mail material responsive to the requests already agreed upon. LR 7026-3 does not furnish a license to delay e-mail production indefinitely due to lack of advance agreement on those mechanical issues, particularly when no substantive support, but rather only conclusory assertions, are being offered as the basis of disagreement. The Committee is not obliged to consent to foregoing discovery of relevant responsive e-mail material as the price of getting timely e-mail production. Every other major party that, like Merrill Lynch, received document requests early on from the Committee is currently well under way with its e-mail production. The Committee's investigation may be a large and complicated matter, but other parties have faced up to their discovery responsibilities and the attendant costs without undue delay. We think it is more than time for Merrill Lynch to do the same.

Best regards,

R.  A.  S.

**Robert A. Schwinger**
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
**tel** 212-408-5364 | **fax** 646-710-5364
rschwinger@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/rschwinger.vcf

Please consider the environment before printing this email.

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of this e-mail and any printout thereof.

For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com