# EXHIBIT K

| | | |
|---|---|---|
| "Schwinger, Robert A." <RSchwinger@chadbourne.com> | To | "'Joseph Drayton'" <JDrayton@kayescholer.com> |
| | cc | "'mprimoff@kayescholer.com'" <mprimoff@kayescholer.com>; "Seife, Howard" <HSeife@chadbourne.com>; "Zink, N. Theodore" |
| 10/20/2009 07:12 PM | bcc | |
| Document is Retained | Subject | RE: Tribune/MLCC |

History: 🖃 This message has been replied to.

Dear Joe,

Thank you for your October 19 message regarding e-mail issues, which we think has helped move the process forward in a substantial and meaningful way. We are setting forth some questions, some requests for clarifications, and a few other notes and requests below that we hope you will consider. That being said, since you have indicated a willingness to proceed with both sides are reserving all their respective rights in this situation, we believe that upon addressing the following we can now proceed to get e-mail production by Merrill Lynch rolling, without prejudice to each side's ongoing evaluation of its respective concerns regarding the production, and subject to our ongoing consultation with each other about them.

    A. We are obviously very appreciative for your agreed expansion of the search term list. At this point, we are prepared to proceed on the basis of the search term list set forth in your October 19 message.

    B. With regard to e-mail custodians, we appreciate that Merrill added to the list of custodians Blair Faulstich, Greg Margolies and Adam Wood. With respect to the list more generally, there are some matters on which we would hope we could obtain some clarification:

        (1) There are two names on your list, Jim Janover and Don Wilson, that were not on the list of 80+ names that we came up with ourselves, apparently because their names they did not appear on the working group lists that we reviewed in coming up with our list. We also reviewed the Merrill Lynch non-e-mail production to date and saw their names on only a handful of documents.. Thus, given our limited frame of available information, it is difficult for us to understand the basis for the view expressed that including these names in the custodian list (particularly as opposed to various possible others) would advance the goal of maximizing the capture of responsive e-mail. We would appreciate if this could be explained or clarified.

        (2) Also in regard to e-mail capture, it is unclear to us why, depending on the particular functional area, your custodian list in some instances looks to the Managing Director level, or to the Vice President level to the exclusion of the Managing Director level -- and why in some area the list may additionally drill down to a Director or even Analyst level. Any clarifying information that you could provide to help explain these variations would be appreciated.

        (3) It was not clear to us what the basis might have been for structuring the custodian list around the premise that it should capped at no more than 12 names, whoever they might be. A focus on a particular number of custodians suggests that capping cost at a particular level was a predominant factor in that analysis, whereas from the Committee's standpoint the key concern is content-based, i.e., ensuring capture of the full range of non-duplicative responsive material. Any clarification you could provide as to how setting a cap at 12 names impacts that concern would be very much appreciated.
    C. Your message noted that Merrill does not have the ability to run searches on a custodian's e-mail without first restoring the e-mail, which we presume Merrill has not yet done. Thus, it appears that the basis for any decisions on a custodian list must at this stage be essentially anecdotal or based on hypotheses. That of course does not necessarily mean the decisions are either right or wrong, but only that we are confronted with a fair degree of uncertainty over such determinations. Given the uncertainty

here, we ask that Merrill consider adding to its list the additional names with apparent high e-mail traffic that we had noted in my October 5 message -- Mariela Figueroa, Caroline Kim, Stephen Paras, Todd Scolnick and David Tuvlin. Even including these names on the list would still represent an almost 80% reduction from the number of custodian names that we originally assembled by looking at working group lists and other documents. We think that strikes a very fair balance on which to get the e-mail production in motion. Moreover, if Merrill's hypothesis about how e-mail is copied within functional areas is correct, vendors' automated de-duplication software should eliminate vast amounts of such material before it ever even hits the attorney review stage, and thus should correspondingly decrease potential associated costs of adding those names.

    D. We should give some thought to what procedures could be implemented as a form of quality control to see whether the theory behind the particular custodian list that is used here holds up. E.g., will some statistically appropriate level of checking be done of the e-mail files of persons from our original proposed custodian list who are not now being included on the list, to see how well responsive documents in those persons' files are in fact being captured by the protocol?

    E. We have one additional point to raise, which is not limited to just the e-mail production context, but which does affect it. The Committee's requests to Merrill Lynch for the most part requested documents starting as of January 1, 2007. However, the material that has been produced to the Committee to date by various parties has now revealed that Merrill was active as early as the summer and fall of 2006 in performing various advisory work for the Debtors that may be relevant to the Committee's investigation. Accordingly, the Committee's counsel is now of the view that we should seek additional material from Merrill from the earlier time period of June 1, 2006 through the end of 2006. We understand that counsel for Law Debenture and Centerbridge strongly wish to obtain such material as well. We particularly wanted to raise this issue before e-mail production started, in case the architecture of Merrill's e-mail systems was such that it would represent a cost and effort savings to be able to sweep for this expanded date range of e-mail in one pass, rather than having to do a supplemental e-mail sweep later on for the June-December 2006 material. Whether including this time period would also require any corresponding adjustments of the e-mail custodian list is something we cannot ourselves judge, but we would appreciate any input you could provide on that point.

We look forward to hearing back from you on these issues, and hope that the e-mail production process will soon be in motion.

Best regards,

        R. A. S.

**Robert A. Schwinger**
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
**tel** 212-408-5364 | **fax** 646-710-5364
rschwinger@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/rschwinger.vcf

Please consider the environment before printing this email.

**From:** Joseph Drayton [mailto:JDrayton@kayescholer.com]
**Sent:** Monday, October 19, 2009 3:08 PM

**To:** Schwinger, Robert A.
**Cc:** Goldfarb, Andrew; Nellos, Alexandra; Vazquez, Francisco; Seife, Howard; Ashley, Marc D.; 'mprimoff@kayescholer.com'; Zink, N. Theodore
**Subject:** Tribune/MLCC

Robert,

As part of its current investigation, the Creditors' Committee continues to request that Merrill collect email data for 82 of its current and former employees. Based on Merrill's past experience with requests for email data and vendor estimates, Merrill believes that the cost of compliance with the Creditors' Committee request is likely to be in the range of $4 million to $16 million, may require the collection and processing of 4.8 terabytes of data and may yield a majority of data immaterial to the Creditors' Committee's present investigation. In light of the potentially exorbitant cost of the Creditors' Committee's request and the overly broad nature of its proposed custodian list, Merrill cannot agree to the request.

There is no applicable legal precedent that requires the production of every email of every conceivable custodian for a complex commercial deal of the magnitude of the Tribune transactions. Merrill relies on guidance from the District of Delaware, current e-discovery best practices, and actual practices used in comparable investigations. Consistent with such guidance and after careful reflection of the issues raised by both Merrill and the Creditors' Committee to date, Merrill has formulated a proposed email discovery plan for the collection, processing, searching and culling of data in order to produce emails responsive to the Creditors' Committee's amended request for production.

Merrill's proposal is set forth in the seven steps below:

(1) Merrill will identify those custodians whom it believes, based on the functions they performed in connection with the Tribune transactions, will capture the vast majority of emails responsive to the Creditors' Committee's amended requests. These custodians will collectively cover the following functions within Merrill at the time of the Tribune transactions: leveraged finance, rating agency review, loan syndication, capital commitments, Chicago investment banking, media investment banking, mergers and acquisitions, corporate credit, and loan portfolio management . Merrill proposes the following 12 custodians:

Todd Baker
Michael Costa
Henrik Dahlback
Blair Faulstich
John Harrison
Jim Janover
Todd Kaplan
Greg Margolies

Carl Mayer
Mike O'Grady
Don Wilson
Adam Wood

(2) If the Creditors' Committee would prefer to substitute a different custodian for any of the 12 custodians identified above, Merrill will agree to such substitution, provided that the Creditors' Committee acknowledges that Merrill has advised it that Merrill believes that the 12 custodians identified above are likely to capture most of the emails and most of the relevant emails.

** It should be noted that Merrill estimates that a typical custodian's email database may yield up to 60 GB of data for the time period of interest to the Creditors' Committee. Additionally, Merrill does not have the ability to run searches on a custodian's email without first restoring the email data. **

(3) Merrill will collect and process the email data associated with the 12 custodians identified via steps 1 and 2.

(4) Merrill will filter the email data based on the following search string:

Tribune; Trib; Trb
EGI; EGI-TRB; EGII; Equity Group Investments; Equity Office Properties
Zell
Sam Investment Trust
Chai Trust
ESOP; TESOP
Step 1; Step One; First Step
Step 2; Step Two; Second Step
Chandler
Grenesko
Osborn*
S-Corp*; S Corp*
Tranche X; Tranche B
VRC; Valuation Research
Duff & Phelps; D&P
Nils; Larsen
FitzSim*
Tower
McCormick
Cantigny
Foundation*
GreatBanc
Navigant
Murray Devine

(5) If Merrill concludes that the proposed search string yields an unduly burdensome amount of data to cull, review and produce, it will communicate its view to the Creditors' Committee and attempt to reach agreement on a less burdensome search string.

(6) After filtering the email data, Merrill will cull, review and produce non-privileged emails responsive to the Creditor's Committee's amended request for production.

(7) Merrill and the Creditors' Committee each reserve their respective rights relating to any issue concerning Merrill's email production.

Joseph M. Drayton
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-7177
(212) 836-6576 (fax)

                                                  \*    \*    \*    \*

```
IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with
Treasury Department regulations, we inform you that any U.S.
federal tax advice contained in this correspondence
(including any attachments) is not intended or written to be
used, and cannot be used for the purpose of (i) avoiding
penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.
```

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of this e-mail and any printout thereof.

For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com