# EXHIBIT L

| | | |
|---|---|---|
| **Joseph Drayton/NY/US/KSFHH** 10/23/2009 11:49 AM Document is Retained | To | "Schwinger, Robert A." <RSchwinger@chadbourne.com> |
| | cc | "Goldfarb, Andrew" <agoldfarb@zuckerman.com>; "Nellos, Alexandra" <ANellos@chadbourne.com>; "Vazquez, Francisco" <FVazquez@chadbourne.com>; "Seife, Howard" |
| | bcc | |
| | Subject | RE: Tribune/MLCC |

Dear Robert,

We are in receipt of your email of October 20.

Merrill is surprised by the Creditors' Committee's request to change to the start date of the agreed relevant time period for its amended request for production from January 1, 2007 to June 1, 2006. The Creditors' Committee has not provided Merrill with a plausible explanation as to why it could not have made this request in its amended request for production. The Creditors' Committee's investigation has been ongoing for 11 months, and the first set of document requests were delivered to Merrill over seven months ago. From its initial discussions with the Creditors' Committee, Merrill's position has always been that the relevant time period should end on December 20, 2007, the closing date of the Bridge Loan. Nonetheless, after several discussions between counsel, Merrill agreed, merely in the spirit of cooperation, to set the relevant time period from January 1, 2007 to December 8, 2008, the petition date for Tribune's bankruptcy filing.

Merrill understood that it had a firm agreement with the Creditors' Committee as to the relevant time period. In reliance on that agreement, Merrill completed its non-email production six weeks ago and objects to any further production of non-email documents as overly burdensome. With regard to email documents, the requested change will likely add to Merrill's burden due to a 25% increase in the volume of email collected and processed for the additional seven month period. Notwithstanding, in the spirit of cooperation and as a further accommodation to the Creditors' Committee in an effort to finalize the proposed email discovery plan, Merrill is amenable to collecting email data for the date range June 1, 2006 - December 8, 2008. This compromise is contingent upon reaching an agreement on the proposed email discovery plan.

With regard to the proposed email discovery plan, you <u>incorrectly</u> state that Merrill structured "the custodian list around the premise that it should be capped at no more than 12 names." To the contrary, from the outset of our discussions with your office, Merrill has made it clear that it would thoughtfully identify the appropriate custodians to provide the Creditors' Committee with the vast majority of emails responsive to its amended requests. Toward that end, Merrill made an independent assessment concerning the level and nature of the involvement of its employees in the Tribune transactions. This independent assessment led, for example, to the identification of Jim Janover and Don Wilson, who were not on the Creditors' Committee's list.

Merrill selected its set of custodians based on their role as a decision-maker and/or the intensity of their involvement in the Tribune transactions. For example, Merrill selected three persons in its Leveraged Finance Group because that group played a key role in the Tribune transactions.

To the extent that the Creditors' Committee has a different opinion on the selection of one or more custodians, it is free to substitute one or more employees for any of the 12 custodians. Additionally, to the extent that the Creditors' Committee has a preference that a custodian within a particular job function hold a certain title, it is free to substitute any custodian identified by Merrill for an employee with the desired title.

Merrill believes that the 12 custodians it has identified meet the Creditors' Committee's "goal of maximizing the capture of responsive e-mail." At the same time, the search and restoration of emails for these 12 custodians is plainly burdensome to Merrill. Given that the search and restoration of emails for the 12 custodians will maximize the capture of responsive email, it would be unduly burdensome for Merrill to do anything more. Merrill's position is simply that it will not collect and restore email data for more than number of custodians necessary for compliance with its obligations which, in this instance, is 12 custodians.

In its proposed email discovery plan, Merrill is clear that, based on its past experience, the use of the search string requested by the Creditors' Committee to filter the email of 12 custodians over a period of more than 30 months will likely result in an overly burdensome amount of email to cull, review and produce. The Creditors' Committee's proposed change to the relevant time period will increase the collection of email data by an additional 25% and will likely increase the costs associated with the production of email. As stated in its proposed email discovery plan, Merrill may conclude that the plan's search string yields an unduly burdensome amount of data to cull, review and produce. If so, Merrill will communicate its view to the Creditors' Committee and attempt to reach agreement on a less burdensome search string and/or a reduction in the number of custodians.

The reservation of rights by the Creditors' Committee and Merrill with respect to the proposed email discovery plan and process should protect each of our respective clients as we proceed with the plan and process going forward. Merrill is prepared to move forward with the proposed email discovery plan but awaits your approval and response to the matters addressed in this email.


Joseph M. Drayton
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-7177
(212) 836-6576 (fax)