# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: January 27, 2010 at 10:00 a.m. EST<br>Response Deadline: January 20, 2010 at 4:00 p.m. EST |

## DEBTORS' OBJECTION TO CLAIM NO. 5844 OF JOANNA CANZONERI MCCORMICK PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 5844 filed against Debtor Tribune Company by claimant JoAnna Canzoneri McCormick (the "McCormick Claim") on the basis

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

that the McCormick Claim is not an allowable claim because such claim (i) fails to set forth the factual and legal basis for any "right to payment" that could constitute prima facie evidence of the validity and amount of the alleged $50,000,000,000 claim and (ii) no legal or factual theory exists upon which relief could be granted under any applicable law.

This Objection is submitted pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the McCormick Claim in its entirety, as indicated in further detail below. In further support of the Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

## FACTUAL BACKGROUND OF THE DEBTORS' CLAIMS PROCESS

6.      On March 23, 2009, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [Docket Nos. 567-789], which were subsequently amended on April 13, 2009 [Docket Nos. 894-957] and on June 12, 2009 [Docket Nos. 1343-1453] (collectively, the "Schedules").[3]

7.      On March 26, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.[4] The Bar Date Order granted any claimants holding a claim affected by amendments to the Schedules and any claimants holding a claim relating to a Debtor's rejection of an executory contract or unexpired lease an additional 30 days from the applicable amendment or supplement to the Schedules or

---

[3] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009. [CNLBC Docket Nos. 8 and 9]

[4] No Bar Date has been set for the filing of Proofs of Claim against Tribune CNLBC, LLC.

effective date of rejection to file a proof of claim or amend a previously filed proof of claim in connection therewith.

8. Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the *Wall Street Journal*, *New York Times*, *Chicago Tribune*, and *Los Angeles Times* on May 12, 2009.

9. To date, approximately 6,333 Proofs of Claim have been filed in these chapter 11 cases. The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

## INFORMATION CONCERNING THE MCCORMICK CLAIM

10. The McCormick Claim was received and recorded on the Claims Register as Claim No. 5844 on June 16, 2009, four days after the Bar Date. The McCormick Claim is asserted against "Sam Zell" and "Tribune Company" in the "estimated" amount of $50,000,000,000, which makes it by far the single highest-value claim asserted in the Debtors' chapter 11 cases. A copy of the McCormick Claim is attached hereto as Exhibit A. Concurrently with the submission of the McCormick Claim, Ms. McCormick filed a letter to this Court dated June 8, 2009 relating to the McCormick Claim (the "McCormick Letter"), a copy of which is attached hereto as Exhibit B. [Docket No. 1575.]

11. The McCormick Claim is asserted to be based on "Heir/Beneficiary and Ownership (Owner)" and is asserted to be secured by real estate, motor vehicle, "personal property", and "intelligent property contract fraud." The asserted amount of the McCormick

4

46429/0001-6201513v1

Claim is unliquidated, but is estimated on its face at $50,000,000,000. See Exhibit A. While no supporting details were filed with the McCormick Claim, the McCormick Letter suggests that the claim is based upon "the new discovery of charges of murder of Robert Rutherford McCormick and a fraud [sic] Last Will and Testament along with assets, money, property from a will to a Foundation." See Exhibit B.

12. As best as the Debtors can discern, Ms. McCormick is attempting to articulate a theory by which she is entitled to a "100% ownership" interest in Tribune Company, based on conjecture that the charitable trusts established under the provisions in the last will and testament of Robert R. McCormick upon his death in 1955 were fraudulent in nature such that she, as a purported family member, is the heir and beneficiary of the McCormick legacy. The Debtors are unable to ascertain anything further about the McCormick Claim, or determine its basis with precision.[5]

13. By way of factual background, Robert R. McCormick, known as the "Colonel" after his rank in World War I, was owner, editor, and publisher of the *Chicago Tribune* newspaper from approximately 1910 until his death in 1955 at the age of 74. Under Mr. McCormick's will, certain charitable trusts were established to perpetuate his legacy in support of community involvement, human services, journalism, citizenship, and early childhood education. These trusts were subsequently recognized as charitable corporations under the General Not-For-Profit Corporation Act of Illinois, and became what are today the Robert R. McCormick Foundation and the Cantigny Foundation (hereinafter collectively referred to as the "Foundations"). The Foundations were funded by Mr. McCormick's estate, including his Tribune

---

[5] Given the limited information set forth in the McCormick Claim and the fact that it does not state any basis for a claim, the Debtors submit this Objection based on what the claim apparently intends to argue. The Debtors do not believe that any credible basis for the McCormick Claim exists; however, the Debtors reserve the right to supplement this Objection if necessary.

5

Company common stock. In 1985, upon the death of Mr. McCormick's wife, the Foundations received the balance of the family's Tribune Company stock from a trust created by Mr. McCormick for the benefit of his wife. The Foundations have been operating for more than fifty years, and are today among the nation's largest public charities.

14. Upon review of the McCormick Claim and the McCormick Letter, their own books and records, and the operative facts and law, the Debtors have determined that they have no liability whatsoever to Ms. McCormick, much less that Ms. McCormick is entitled to an allowed claim of $50 billion.

## RELIEF REQUESTED

15. By this Objection, the Debtors seek entry of an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and expunging the McCormick Claim in its entirety on the basis that the McCormick Claim (i) fails to set forth the factual and legal basis for any "right to payment" to constitute prima facie evidence of the validity and amount of this $50 billion claim and (ii) no legal or factual theory exists upon which relief could be granted under any applicable law. In addition to the foregoing, the McCormick Claim was filed on June 16, 2009 and should be barred as untimely.[6] The Debtors also seek an order directing the Claims Agent to expunge the McCormick Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## BASIS FOR OBJECTION

16. Under applicable law, a party asserting a claim against a debtor must initially allege sufficient facts to support its claim, and only if this standard of sufficiency is met

---

[6] The McCormick Claim fails, on its face, to present a valid claim for recovery in these chapter 11 cases. The Debtors raise the timeliness of the claim as an alternative and cumulative ground for disallowance under section 502(b)(9) to preserve all bases for their objection to this claim.

6

46429/0001-6201513v1

is the claim entitled to a presumption of validity. In re Allegheny Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992). See also Fed. R. Bankr. P. 3001(f).[7] Assuming that standard of sufficiency is met by the claimant, upon objection to the claim, the burden then shifts to the objecting party to produce evidence sufficient to negate the prima facie valid claim. Allegheny Int'l, 954 F.2d at 173-74. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden then reverts back to the claimant to prove by a preponderance of the evidence. Id. The burden of persuasion always rests with the claimant. Singh v. Mariner Post Acute Network, Inc. (In re Mariner Post Acute Network, Inc.), 155 Fed. Appx. 611, 612 (3d Cir. 2007) (citing Allegheny Int'l, 954 F.2d at 174).

### A. The McCormick Claim Fails to Meet the Prima Facie Burden as to the Validity or Amount of the Claim

17. At the outset, a "claim" for bankruptcy purposes means a "right to payment", whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. 11 U.S.C. § 101(5). When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—i.e., a document providing proof of a "right to payment"—against the debtor's estate. See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007).

18. In the McCormick Claim, Ms. McCormick asserts that she is entitled to the astonishing sum of $50 billion, yet the McCormick Claim neither articulates nor demonstrates any legitimate legal theory or principle on which any claim could be sustained, much less a claim of such magnitude. No documentation or other evidentiary support is attached to substantiate the

---

[7] Bankruptcy Rule 3001 provides guidance on the required form and content of proofs of claim, including a requirement that when a claim is based on a writing, the original or a duplicate of that writing must be filed with the proof of claim. Fed. R. Bankr. P. 3001(c). Additionally, if a claimant asserts a secured claim, the proof of claim must be accompanied by evidence of the security interest and its perfection. Fed. R. Bankr. P. 3001(d). As noted herein, these requirements have not been met by the McCormick Claim.

7

claim, and the McCormick Claim sets forth only Ms. McCormick's own speculation and conjecture. In short, even being mindful of the pro se nature of the McCormick Claim, the McCormick Claim does not provide sufficient information or supporting documentation to substantiate the McCormick Claim as required by Bankruptcy Rule 3001, and the Debtors submit that such deficiencies could not possibly be remedied.[8] The McCormick Claim fails to constitute prima facie evidence of the validity and amount of the claim, as contemplated by Bankruptcy Rule 3001(f), and accordingly should be disallowed.

**B.  No Legal or Factual Theory Exists Upon Which Relief Could be Granted to McCormick Under any Applicable Law**

19.  Even if the McCormick Claim's deficiency of proof and failure to articulate a legal theory under which the claim could be allowed were not fatal to the claim—and they are—the McCormick Claim also fails because no legal or factual theory plausibly exists upon which the claim sought by Ms. McCormick could be allowed. Section 502(a) of the Bankruptcy Code provides that proofs of claim are "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a). This objection is founded on section 502(b)(1) of the Bankruptcy Code, which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1)  such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1). Section 502(b)(1) recognizes the "basic federal rule" in bankruptcy, "that state law governs the substance of claims, Congress having generally left the determination of

---

[8] Additionally, the McCormick Claim was submitted as a secured claim, yet no basis for secured status is asserted or exists under sections 503, 506, and 507 of the Bankruptcy Code.

property rights in the assets of a bankrupt's estate to state law." <u>Travelers</u>, 549 U.S. at 450-51 (citing <u>Raleigh v. Illinois Dep't of Revenue</u>, 530 U.S. 15, 20 (2000)) (internal citations omitted).

20.   The Debtors believe that the McCormick Claim defies a rational explanation and is facially without merit. Even when given a generous interpretation in light of Ms. McCormick's status as a <u>pro se</u> claimant and when read together with the concurrently filed McCormick Letter, the McCormick Claim fails to state any basis for liability on the part of the Debtors that could give rise to an allowable claim in any amount, much less to support Ms. McCormick's claim that she is entitled to $50 billion. On its face, the McCormick claim asserts a claim based on "Heir/Beneficiary and Ownership (Owner)." This description, bolstered only by two-sentence allegation of murder and fraud involved in the transfer of McCormick family assets to the Foundations, 53 years prior to the Petition Date, cannot stand as a basis for allowing any recovery in these chapter 11 cases.

21.   It is apparent from the fact of the McCormick Claim that such claim could not survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), in the event Ms. McCormick asserted a basis to proceed in federal court, or a motion to dismiss because it is substantially insufficient in law under the Illinois Code of Civil Procedure, 735 ILCS 5/2-615 (West 2009), which likely governs the claim since the relevant activities surrounding the claim (including the death of Mr. McCormick and the establishment of the Foundations) occurred in Illinois. Ms. McCormick's cursory allegation "of the new discovery of charges of murder of Robert R. McCormick" and the conclusion that the "regular Blood heirs personally should have inherith [sic] this Estate" are entirely unsubstantiated. <u>See Marshall v. Burger King Corp.</u>, 856 N.E.2d 1048, 1053 (Ill. 2006) ("We have repeatedly stated … that Illinois is a fact-pleading jurisdiction. While the plaintiff if not

required to set forth evidence in the complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action, not simply conclusions.") (internal citations omitted). Moreover, the statute of limitations for contesting a will in the state of Illinois is 6 months, as compared to the more than 50 years at issue here. See 755 ILCS 5/8-1(a) ("Within 6 months after the admission to probate of a domestic will ... any interested person may file a petition in the proceeding for the administration of the testator's estate ... to contest the validity of the will...") and 755 ILCS 5/8-1(f) ("An action to set aside or contest the validity of a ... declaration of trust to which a legacy is provided by the settlor's will which is admitted to probate shall be commenced within and not after the time to contest the validity of a will as provided in subsection (a) of this Section...").

22.     Given that Ms. McCormick's unsubstantiated assertions of "murder" and "fraud" date back to circumstances occurring in 1955, the McCormick Claim, if asserted outside of bankruptcy, doubtless would be summarily dismissed as frivolous. See, e.g., Hass v. Rico Enter., 2004 U.S. Dist. LEXIS 11189 at * 17-18 (N.D. Ill. June 15, 2004) ("One standard for frivolousness is risibility - if you start laughing when repeating the argument, then it's frivolous. ... At some point, our solicitous treatment of pro se litigants must be trumped by our concern with the rights of Defendants to be free of scandalous, repetitive, and baseless claims that undoubtedly drain their financial and emotional resources.") (internal citations omitted).

23.     The significance to the Debtors and their creditors of having the McCormick Claim disallowed cannot be overstated. Not only has Ms. McCormick failed to establish that she is entitled to recover any amount from the Debtors' estates, but allowing a claim of this magnitude, vastly exceeding the Debtors' available assets, would undermine the Debtors'

entire chapter 11 reorganization process to the detriment of the Debtors' legitimate creditors and other parties-in-interest.

24.  Accordingly, for these cumulative reasons, the McCormick Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases. The Debtors object to the allowance of the McCormick Claim and request that it be disallowed in its entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the McCormick Claim from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

## NOTICE

25.  Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) JoAnna Canzoneri McCormick; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

26.  No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-6201513v1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the McCormick Claim; (ii) directing the Claims Agent to expunge the McCormick Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
      December 22, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-6201513v1