IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Related to Docket No. 227 |

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

STATE OF CALIFORNIA
                                       :   ss.:
COUNTY OF LOS ANGELES

    Jenny Kim, being duly sworn, deposes and says:

    1.    I am a member of the firm the California Credits Group LLC (the "Firm"), which maintains offices at 234 East Colorado Blvd., Pasadena, CA 91101.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2.  This Affidavit is submitted in connection with an Order of the United States Bankruptcy Court for the District of Delaware, entered on or about December 21, 2009, authorizing the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), to employ and compensate certain professionals in the ordinary course of business during the pendency of these chapter 11 cases. The Debtors wish to retain the Firm to continue providing the following ordinary-course services during their chapter 11 cases: The Firm will provide professional service regarding the availability of California Enterprise Zone hiring credits under California Revenue and Taxation Code Section 23622.7. Said services will include identifying and obtain certifications for qualified employees, gathering and organizing required support documents, and calculating the hiring credit for each tax period. This Declaration is submitted in compliance with the Order Under Bankruptcy Code Sections 105(a), 327, 330 and 331 Authorizing Debtors to Employ and Pay Professionals Utilized in the Ordinary Course of Business (the "Ordinary Course Professionals Order").

3.  Neither I, the Firm, nor any employee thereof, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors or stockholders, or any party in interest herein, except as set forth hereinafter:

4.  The Firm does not represent or hold any interest adverse to the Debtors or their estates with respect to the engagement for which we are to be retained.

5.  This Firm and certain of its members or employees may have in the past represented, currently represent, and may in the future represent entities that are claimants or equity security holders of the Debtors in matters totally unrelated to the Debtors' chapter 11 cases. None of those past or current representations are material. The Firm does not perform services for any such person or entities in connection with the Debtors' chapter 11 cases, or have

2

any relationship with any such person or entity, their attorneys, or accountants that would be adverse to the Debtors or their estates. The Firm intends to bill the Debtors for professional services rendered in connection with these chapter 11 cases, in accordance with the Ordinary Course Professionals Order, with such bill to include compensation for services based on the fees set forth below, plus reimbursement of actual and necessary expenses and other charges incurred by the Firm.

6. The Firm's fee will be an amount equal to twenty percent (20%) of any credits utilized and interest received as a result of credits utilized. Such fees are the Firm's standard rates for work of this nature. The fees are set at a level designed to fairly compensate the Firm for the work of its employees and to cover fixed and routine overhead expenses. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, third party fees related to the eligibility certification process, third party fees related to the documentation process and, in general, all identifiable expenses that would not have been incurred except for representation of a particular client. The Firm will charge the Debtors for these expenses in a manner and at fees consistent with charges made generally to the Firm's other clients.

7. No representations or promises have been received by the Firm nor employees as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these chapter 11 cases.

8. Neither I nor [any principal, partner, director, officer, etc.] of, or professional employed by, the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm, as permitted by 11 U.S.C. §504(b).

9. I understand that any compensation paid to the Firm is subject to disallowance and/or disgorgement under 11 U.S.C. § 328(c) and applicable law.

10. Neither I nor [any principal, partner, director, officer, etc.] of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which the Firm is to be employed. If the Firm is not an law firm, the Firm does not hold an interest adverse to the Debtors' estates and is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14).

11. As of the Petition Date, the Firm **was** party to a services agreement with the Debtors. **[A copy of such agreement is attached as <u>Exhibit 1</u> to this Affidavit]**.

12. The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    12/29/2009

4

/s/
Jenny Kim
Director

California Credits Group LLC
Address: 234 E Colorado Blvd Suite 700
Pasadena CA 91101
Telephone: 626-584-9800
Facsimile: 626 584-0808
Email: jkim@ccg.com

Notary Public

ALANNA PATLIAN
Commission # 1855268
Notary Public - California
Los Angeles County
My Comm. Expires Jun 22, 2013

5



**THE CALIFORNIA CREDITS GROUP | LLC**

Exhibit 1

April 8, 2005

Ms. Bernadette C. Abdow
Director, Tax
Tribune Company
435 North Michigan Ave.
Chicago, IL 60611

Dear Bernadette:

The California Credits Group, LLC ("CCG") is pleased to submit this proposal to Tribune Company ("the Company"), to provide professional services regarding the availability of hiring credits for the Company's California operations ("the Credits"). However, Los Angeles Revitalization Zone ("LARZ") Credits and Manufacturers Investment Credits ("MIC") shall be excluded from the scope of this agreement. The scope of this agreement will cover employees hired through December 31, 2004. The specific services and the related fee arrangements are described below.

### *Your Team*

CCG is a leading professional service provider with a primary focus on California Enterprise Zone credits. To our knowledge CCG is the largest California Enterprise Zone consulting firm in the country. With this focus and our extensive experience, CCG is uniquely positioned to serve Tribune. As the Director, I will be personally responsible for your project. I have over fourteen years experience serving Fortune 500 companies. Some of the clients that I currently serve include Bank of America, Office Depot, McKesson, ChevronTexaco, Morgan Stanley, Eastman Kodak, and Nestle.

### *Our Process*

The centerpiece of our process is our timeline. All of our projects are designed to be completed within six to eight weeks. Prior to the commencement of the project we will jointly develop our work plan timeline with the Company.

With the largest dedicated practice, not only are we able to commit greater resources than other providers, but the professionals we commit work exclusively in this specialized area. This allows us to dramatically shorten the project timeline, thereby minimizing the amount of Company resources expended on the project while simultaneously achieving superior results in the amount of credit we generate. These two factors allow us to clearly distinguish ourselves from other firms.

The first phase of work will take place where the Company's records are located and will focus on data gathering and review.

Upon completion of the first phase we will review the available documentation to make an initial determination of eligibility. Once complete, we will assemble the required documentation, prepare voucher screening requests, and submit our certification requests to the appropriate vouchering agency.

SOUTHERN CALIFORNIA OFFICE | 234 E. COLORADO BLVD. SUITE 705 ■ PASADENA, CALIFORNIA 91101 ■ TEL 626 584 9800 ■ FAX 626 584 0808
NORTHERN CALIFORNIA OFFICE | 726 COLLEGE AVENUE ■ SANTA ROSA, CALIFORNIA 95404 ■ TEL 707 526 6000 ■ FAX 707 526 2981

Page 2 of 5

Once an employee is determined qualified we will compute the allowed hiring credit and prepare our supporting workpapers.

Once the Company's refund claim is submitted, we will monitor its status until the claim is paid and be responsible for responding to any questions from the state regarding the claim.

### *Fees*

Our fee for the services described above will be an amount equal to twenty percent (20%) of any Credits resulting from this engagement. This includes any additional hiring credits subsequently generated and utilized by the Company on qualified employees identified during this engagement. This provision applies even if CCG is not otherwise engaged to provide services in the year in which Credits are subsequently generated. However, if CCG is not engaged to provide services in subsequent years, CCG shall continue to compute the Credit generated by employees identified by CCG during this engagement at its sole expense.

In the event CCG generates total Credit of more than $3mm through 2004 then the following changes to the preceding fee provision are applicable. CCG shall be due no fee with respect to the amount of such excess that does not exceed $4mm. CCG shall be due a fee of 10% with respect to such amounts in excess of $4mm. If these provisions are applicable they will be applied as credits are both utilized and billed. This may result in Credits being utilized in later years (e.g., 2004) being billed at a 20% rate in 2005 while credits utilized in earlier years (e.g., 2000) may be billed at a 10% rate in 2006 upon receipt of the refund.

For example, if CCG generated $5mm in credit through 2004, CCG's total fee due would be $700,000 and would be calculated as follows;

| Credit Generated | Rate | Fee |
|---|---|---|
| $3mm | 20% | $600,000 |
| $1mm | 0% | $0 |
| $1mm | 10% | $100,000 |
| $5mm |  | $700,000 |

Finally, if there is a change in the anticipated scope of the project, the Company agrees to enter into a good faith negotiation to adjust these fee provisions as appropriate.

For purposes of determining our fee, the Credits identified will not include the amount of any credits previously claimed by the Company, if any.

Our fee is due and payable upon the Company's realization of the benefit from the Credits. If the benefit is realized in the form of a refund of tax previously paid, our fee is due and payable upon the Company's receipt of the refund. However, the Company shall pay CCG $50,000 as a one-time advance against CCG's fee at the time that CCG provides the results of its work and related workpapers.

Page 3 of 5

Our fee with respect to any Credits utilized or deemed to be utilized on originally filed returns shall be due as follows;

2004 Tax Year – Due upon the filing of the original return.

Subsequent Tax Years – Due as utilized upon filing of the extension.

In some instances the amount of Credits we will generate will exceed the amount that can be utilized in a given year. In such instances the excess is carried forward to the following year. Credits carrying forward from the earliest year will be deemed to be utilized first. If upon examination or voluntary amendment, the Company is able to use the Credits as an off-set against other unrelated FTB proposed adjustments; our fee shall be due at the time of such off-set, if it has not been previously paid.

If any Credits are challenged by the FTB in an examination, we will, at our own expense, represent the Company through the examination and protest phase. If any Credits utilized on an originally filed return are ultimately disallowed after examination, our fee includes a refund provision. After you exhaust any and all legal alternatives that you deem appropriate, we will refund a pro-rated portion of the fee that resulted from the disallowed item or items.

### *Third Party Fees*

Should there be any fee charged by any state or city agency that is associated with the screening of voucher requests, the Company shall reimburse CCG for such costs. However, such reimbursement will not exceed $35 per employee screened unless CCG obtains prior approval from the Company. CCG will only submit employees for voucher screening that it anticipates will be approved. Similarly, any fees charged by third parties to obtain necessary documentation to support qualification shall be reimbursed; however, such reimbursement will not exceed $30 per employee unless CCG obtains prior approval from the Company.

Page 4 of 5

### *Other Matters*

This engagement letter, together with the General Business Terms attached hereto, constitute the entire agreement between the Company and CCG with respect to this engagement. They supersede all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement between the Company and CCG.

If you have any questions, please call me at (626) 584-1012.

Best regards,


John E. Simpson
Director




**Agreed and Accepted by:**

Name/Title  [signature] VP Tax

Date  4/25/05

Page 5 of 5

**General Business Terms**

i. **Services** – It is understood and agreed that CCG' services may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Company. In connection with its services hereunder, CCG shall be entitled to rely on all decisions and approvals of the Company made in writing by an authorized representative of the Company.

ii. **Payment of Fees** – Any amounts due under this agreement shall be paid within thirty (30) days of the date due. Without limiting its right or remedies, CCG shall have the right to halt or terminate its services entirely if payment is not received within thirty (30) days of the date due.

iii. **Term** – This engagement shall terminate on the completion of CCG services hereunder. In the event the Company does not allow CCG to complete the services contemplated under this agreement, CCG's fees will still be due with respect to any Credits that were the subject of this agreement and that are claimed by the Company for any year that would have been covered under this agreement.

iv. **Limitation on Damages** – The Company agrees that CCG and its personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this engagement for an aggregate amount in excess of the fees paid by the Company to CCG pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of CCG. In no event shall CCG or its personnel be liable for consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement. The provisions of this paragraph shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise. In circumstance where all or any portion of the provision of this paragraph are finally judicially determined to be unavailable, CCG' aggregate liability for any claims, liabilities, or expenses relating to this engagement shall not exceed an amount which is proportional to the relative fault that CCG conduct bears to all other conduct giving rise to such claims, liabilities, or expenses.

v. **Indemnification** – CCG shall indemnify and hold the Company and its parents, subsidiaries, affiliates, officers, directors, agents and employees harmless from any and all third party claims, demands, damages, expenses and other liabilities of whatever kind arising out of or in any way connected with CCG's engagement to provide services to the Company, including but not limited to any claim arising from CCG's misuse or improper disclosure of any proprietary or confidential information of the company, excluding only claims finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of the Company. However, such indemnification shall not apply to any claims, damages, expenses, or other liabilities made by or resulting from claims made by taxing authorities.

vi. **Independent Contractor** – It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is, nor shall be considered to be, an agent, distributor, partner, fiduciary or representative of the other. Neither party shall act or represent itself directly or by implication, in any such capacity in respect of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

vii. **Survival and Interpretation** – The agreements and undertakings of the Company and CCG contained in the engagement letter to which these terms are attached, together with the provisions of all Paragraphs hereof, (except for the "term" of the engagement) shall survive the expiration or termination of this engagement. For purposes of these General Business Terms, "CCG" shall mean The California Credits Group and all of their partners, principals, members, owners, directors, staff and agents; and in all cases any successor or assignee

viii. **Governing Law and Severability** – These terms, the engagement letter to which these terms are attached including exhibits, and all matters relating to this engagement (whether in contract, statute, tort (such as negligence), or otherwise), shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the choice of law principle thereof). If any provision of such terms or engagement letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

ix. **Confidentiality** – To the extent that, in connection with this engagement, CCG comes into possession of any proprietary or confidential information of the Company, including but not limited to information about employees of the Company contained in Company files made available to CCG, CCG will not disclose such information to any third party without the Company's written consent, except (a) as may be required by law, or (b) to the extent such information (i) shall have otherwise become publicly available other than by or through acts of CCG, (ii) becomes available to CCG on a nonconfidential basis from a source other than the Company provided that said source is not prohibited from disclosing such information to CCG by obligation to the Company, (iii) is known by CCG prior to its receipt from the Company without any obligation of confidentiality with respect thereto, or (iv) is developed by CCG independently of any disclosure made by the Company to CCG of such information.

x. **Scope** – Pursuant to this engagement, CCG will use its best efforts to identify any and all California Enterprise Zone hiring credits available to the Company.

 THE CALIFORNIA CREDITS GROUP : LLC

September 11, 2008

Mr. Patrick Shanahan
Vice President of Tax
Tribune Company
435 North Michigan Ave.
Chicago, IL 60611

Dear Pat:

The California Credits Group, LLC ("CCG") is pleased to submit to Tribune Company ("the Company"), this addendum to our engagement letter dated April 8, 2005 (copy enclosed) to provide professional services regarding the availability of Enterprise Zone Credits ("the Credits").

This addendum will extend the term of our engagement to include employees hired on or after January 1, 2005 through December 31, 2008.

With respect to these employees, should there be any fee charged by any state or city agency that is associated with the screening of voucher requests, the Company shall reimburse CCG for such costs. For clarification, CCG will only submit employees for voucher screening that it anticipates will be approved.

All other terms contained in our engagement letter dated April 8, 2005 will remain unchanged.

We appreciate this opportunity to continue to serve Tribune Company.

Best regards,

*John E. Simpson*

John E. Simpson
Director

SOUTHERN CALIFORNIA OFFICE : 234 E. COLORADO BLVD., SUITE 705 # PASADENA, CALIFORNIA 91101 # TEL 626 584 9800 # FAX 626 584 0808
NORTHERN CALIFORNIA OFFICE : 726 COLLEGE AVENUE # SANTA ROSA, CALIFORNIA 95404 # TEL 707 526 6000 # FAX 707 526 2981

Page 2 of 2

Agreed and Accepted by:

_____

Patrick M. Shanahan   VP Tax
Name/Title

9/11/08
Date