IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: January 27, 2010 at 10:00 a.m. ET**<br>**Objection Deadline: January 20, 2010 at 4 p.m. ET** |

## MOTION OF THE DEBTORS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) AND BANKRUPTCY RULE 9019 FOR AN ORDER AUTHORIZING THE COMPROMISE AND SETTLEMENT OF THE WORKING CAPITAL ACCOUNT AND RELATED AMOUNTS WITH HEARST DANBURY HOLDINGS, LLC ET AL.

Debtors Tribune Company ("Tribune"), Southern Connecticut Newspapers, Inc.

("SCNI") and Tribune License, Inc. ("Tribune License"), debtors and debtors in possession in

the above-captioned chapter 11 cases (the "Debtors"), hereby submit this motion (the "Motion")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

for entry of an order pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the final reconciliation and adjustment of working capital and related amounts, as set forth herein and in the stipulation, by and between the Debtors and Hearst Danbury Holdings, LLC, The Hearst Corporation and Hearst Soco Newspapers, LLC (collectively the "Buyer" and together with the Debtors, the "Parties") attached hereto as Exhibit B (the "Stipulation"). In support of this Motion, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[2] The Debtors' chapter 11 cases have been consolidated for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

3. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). The Committee has been apprised of the relief requested herein.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought

---

[2] Debtor Tribune CNLBC, LLC (formerly known as Chicago National League Ball Club, LLC) filed a voluntary chapter 11 petition on October 12, 2009.

herein are sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## BACKGROUND TO THE MOTION

5.  On November 1, 2007, Tribune, SCNI and Tribune License closed a sale of substantially all of the assets of SCNI on a going-concern basis to the Buyer for approximately $62.4 million pursuant to an Asset Purchase Agreement dated as of October 24, 2007 (the "APA").[3] Pursuant to the APA, the Buyer acquired good, marketable title in the Purchased Assets, including all accounts receivable generated by the Business. APA §§ 2.1(b), 3.14. The APA also included certain post-closing features addressed by this Motion, i.e.: a working capital adjustment provision, a severance benefit payment provision in respect of terminated employees, and a Transition Services Agreement (the "TSA"), whereby SCNI agreed to provide certain "back office" and administrative services to the Buyer for a period of time after the closing.

6.  The APA's post-closing working capital adjustment terms provided that within 90 days from the Closing Date, the Buyer was to deliver to Tribune its determination of the Working Capital Amount for the purpose of calculating the final purchase price adjustment. APA §§ 2.6-2.10. In February of 2008, the Buyer delivered such determination to Tribune, but Tribune did not agree with the Buyer's working capital calculation and purchase price adjustment. Over the ensuing months, the Parties worked to negotiate a tentative agreement on the working capital and purchase price adjustment, including offsets for amounts due to Tribune that had been "swept" by the Buyer post-closing and other amounts that the Buyer paid on behalf of Tribune for pre-closing expenses, but this agreement was not finalized pending the Buyer's verification of certain of the amounts therein.

---

[3] The APA and the TSA (as defined below) are available upon request from the Debtors. All capitalized terms not defined herein are defined in the APA.

7. In addition to the working capital and other adjustments described above, another post-closing reconciliation matter concerned the APA's employee severance benefit provision, which required the Buyer to reimburse Tribune for certain severance benefits and related costs paid with respect to certain employees of the business in excess of $1.4 million (the "Base Severance Cap"). During the post-closing period, Tribune paid severance benefits in excess of the Base Severance Cap, resulting in a total reimbursement obligation of the Buyer to Tribune of $465,813.81, including $70,921.62 in post-petition payments processed by Tribune on behalf of the Buyer and pursuant to the Buyer's reimbursement obligation.

8. Additionally, as noted, the Parties had entered into the TSA whereby SCNI agreed to provide certain post-closing services to be reimbursed by the Buyer, including cash management and administrative functions until such time as the Buyer fully established its own capabilities or until termination of the service period as specified in the TSA. The services performed by SCNI for the Buyer included payroll services, accounting, accounts payable and general ledger functions, cash management, benefit plans and programs, internet publication and website services and newspaper printing services. SCNI provided these transition services to the Buyer at cost. Based on the last transition services invoice dated as of August 2008, the Buyer owes $213,636.48 under the TSA.

9. Following intermittent discussions, in October of 2009, Tribune and the Buyer resumed efforts to finally reconcile and resolve all amounts owed by and among the Parties pursuant to the APA, including the working capital adjustment, purchase price adjustments, severance payments paid by Tribune in excess of the Base Severance Cap and outstanding amounts owed by the Buyer under the TSA. The Parties have now reconciled and resolved all post-closing adjustments as set forth in the letter agreement and worksheet attached

as Schedules 1 and 2 to the Stipulation. The result is that the Buyer owes a balance of $465,150.70.

10. The Debtors intend to recoup the balance owed from the Buyer by offsetting certain funds in the Debtors' possession that belong to the Buyer. Specifically, in accordance with the TSA, the Debtors have administered on behalf of the Buyer that certain SCNI lockbox depository account held at Bank of America, N.A. (account number ending in 1672), from November 2007 through to the present (the "Lockbox Account"). The Lockbox Account historically received and continues to receive advertising receipts that are the property of the Buyer under the terms of the APA, but which the Buyer has yet to transition to a lockbox account in its name. Accordingly, while this account is titled in the name of SCNI, the funds belong solely to the Buyer. The balance in the Lockbox Account is approximately $1.4 million.

11. The Parties have agreed that, upon bankruptcy court approval, the Debtors shall release to the Buyer its funds in the Lockbox Account net of the amounts due to the Debtors from the Buyer of $465,150.70.[4] Hence, the remaining balance of approximately $969,000 (the "Net Buyer Funds") shall be released to the Buyer, with the Debtors' offset against the Buyer's funds in the Lockbox Account and the release to the Buyer of the Net Buyer Funds constituting the full and final reconciliation and adjustment of post-closing amounts due between the Parties and the satisfaction of all remaining obligations of the Parties under the APA. The Debtors will thereafter promptly close the Lockbox Account following completion of the offset and release of the Net Buyer Funds.

---

[4] The account balance increases with new deposits on a regular basis from new advertising receipts and accordingly the amounts paid and remitted as of the Effective Date (as defined in the Stipulation) will slightly vary from the figures set forth herein.

46429/0001-6233310v1

## RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of an order approving the terms of the Stipulation pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, which permits the Court to approve a compromise or settlement.

## BASIS FOR RELIEF

13. The Debtors seek authority to enter into the Stipulation pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) grants bankruptcy courts broad authority to enforce the provisions of the Bankruptcy Code under equitable common law doctrines, providing, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Bankruptcy Rule 9019 provides, in relevant part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Third Circuit has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 provides the procedure by which such approval may be secured. See Myers v. Martin (In re Martin), 91 F.3d 389, 395 n.2 (3d Cir. 1996).

15. Courts in this district have emphasized that "to minimize litigation and expedite the administration of the bankruptcy estate 'compromises are favored in bankruptcy.'" In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (Bankr. D. Del. 1998) (quoting Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and ... much of litigation in bankruptcy estates results in settlements"). In determining whether to approve a

6

settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." In re Martin, 91 F.3d. at 393. In making this determination, a court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay...; and (4) the paramount interest of the creditors." Id. (referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, 211 B.R. at 801.

16. Approval of the Stipulation is in the best interests of the Debtors, their estates and creditors as it settles and resolves various adjustments required as part of the ordinary course, post-closing reconciliation and true-up activities of the Working Capital Account, purchase price adjustments and transition services arrangements that have been outstanding since the closing of the 2007 sale transaction involving SCNI. These post-sale reconciliation activities are customary to such sale transactions, and settlement at this time will permit the Debtors to immediately receive the amounts due under the APA and TSA and finally resolve this matter in an efficient manner for the benefit of the Debtors' ongoing businesses. Further, the release of the Buyer's funds in the Lockbox Account will permit the Debtors to close an account which they were administering for the benefit of the Buyer and which is not necessary to or operating for the

benefit of the estates. For these reasons, approval of the Stipulation and settlement is fair, reasonable and in the best interests of the Debtors' estates.

## NOTICE

17. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for the Debtors' postpetition financing facility; (viii) the Buyer; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

18. The Debtors have not previously sought the relief requested herein from this or any other Court.

[Remainder of page intentionally left blank]

WHEREFORE, the Debtors respectfully request that the Court enter the proposed order, in substantially the form attached hereto as <u>Exhibit A</u>, approving and authorizing the Stipulation, and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
January 6, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Candice L. Kline
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

9

46429/0001-6233310v1