# EXHIBIT B

# STIPULATION

46429/0001-6233310v1

## STIPULATION AUTHORIZING THE COMPROMISE AND SETTLEMENT OF THE WORKING CAPITAL ACCOUNT AND RELATED AMOUNTS WITH HEARST DANBURY HOLDINGS, LLC ET AL.

This stipulation (the "Stipulation") is entered into by and between debtors Tribune Company ("Tribune"), Southern Connecticut Newspapers, Inc. ("SCNI") and Tribune License, Inc. ("Tribune License" and together with Tribune and SCNI, the "Debtors"), and Hearst Danbury Holdings, LLC, The Hearst Corporation and Hearst Soco Newspapers, LLC (collectively the "Buyer" and together with the Debtors, the "Parties"), by and through their undersigned counsel.

## RECITALS

A. On November 1, 2007, Tribune, SCNI and Tribune License closed a sale of substantially all of the assets of SCNI on a going-concern basis to the Buyer for approximately $62.4 million pursuant to an Asset Purchase Agreement dated as of October 24, 2007 (the "APA").[1] Pursuant to the APA, the Buyer acquired good, marketable title in the Purchased Assets, including all accounts receivable generated by the Business.[2] APA §§ 2.1(b), 3.14. The APA also included certain post-closing features addressed by this Stipulation, i.e.: a working capital adjustment provision, a severance benefit payment provision in respect of terminated employees, and a Transition Services Agreement (the "TSA"), whereby SCNI agreed to provide certain "back office" and administrative services to the Buyer for a period of time after the closing.

---

[1] MediaNews Group, Inc. was a signatory to the APA, but solely with respect to certain sections, none having to do with working capital matters, severance benefit matters or the TSA (defined below), and accordingly, they have no rights and obligations with respect to these matters.
[2] All capitalized terms not defined herein are defined in the APA.

46429/0001-6233310v1

B.     The APA's post-closing working capital adjustment terms provided that within 90 days from the Closing Date, the Buyer was to deliver to Tribune its determination of the Working Capital Amount for the purpose of calculating the final purchase price adjustment. APA §§ 2.6-2.10. In February of 2008, the Buyer delivered its notice to Tribune, but Tribune did not agree with the Buyer's working capital calculation and purchase price adjustment. Over the ensuing months, the Parties worked to negotiate a tentative agreement on the working capital and purchase price adjustment, including offsets for amounts due to Tribune that had been "swept" by the Buyer post-closing and other amounts that the Buyer paid on behalf of Tribune for pre-closing expenses, but this agreement was not finalized pending the Buyer's verification of certain of the amounts therein.

C.     In addition to the working capital and other adjustments described above, another post-closing reconciliation matter concerned the APA's employee severance benefit provision, which required the Buyer to reimburse Tribune for certain severance benefits and related costs paid with respect to certain employees of the business in excess of $1.4 million (the "Base Severance Cap"). During the post-closing period, Tribune paid severance benefits in excess of the Base Severance Cap, resulting in a total reimbursement obligation of the Buyer to Tribune of $465,813.81, including $70,921.62 in post-petition payments processed by Tribune on behalf of the Buyer and pursuant to the Buyer's reimbursement obligation.

D.     Additionally, as noted, the Parties had entered into the TSA whereby SCNI agreed to provide certain post-closing services to be reimbursed by the Buyer, including cash management and administrative functions until such time as the Buyer fully established its own capabilities or until termination of the service period as specified in the TSA. The services performed by SCNI for the Buyer included payroll services, accounting, accounts payable and

general ledger functions, cash management, benefit plans and programs, internet publication and website services and newspaper printing services. SCNI provided these transition services to the Buyer at cost. Based on the last transition services invoice dated as of August 2008, the Buyer owes $213,636.48 under the TSA.

    E. Following intermittent discussions, in October of 2009, Tribune and the Buyer resumed efforts to finally reconcile and resolve the amounts owed by and among the Parties pursuant to the APA, including the working capital adjustment, purchase price adjustments and severance payments paid by Tribune in excess of the Base Severance Cap and outstanding amounts owed by the Buyer under the TSA. The Parties have now resolved and reconciled all post-closing adjustments as set forth in the letter agreement attached as <u>Schedule 1</u> hereto and have agreed to a final reconciliation of amounts owing between the Parties, as further summarized in the reconciliation worksheet attached as <u>Schedule 2</u>. The result is that the Buyer owes a balance of $465,150.70.

    F. The Debtors intend to recoup the balance owed from the Buyer by offsetting certain funds in the Debtors' possession that belong to the Buyer. Specifically, in accordance with the TSA, the Debtors administered on behalf of the Buyer that certain SCNI lockbox depository account held at Bank of America, N.A. (account number ending in 1672), since November 2007 to the present (the "<u>Lockbox Account</u>"). The Lockbox Account historically received and continues to receive advertising receipts that are the property of the Buyer under the terms of the APA, but which the Buyer has yet to transition to a lockbox account in its name. Accordingly, while this account is titled in the name of SCNI, the funds belong solely to the Buyer. The balance of the Lockbox Account is approximately $1.4 million.

G.     The Parties have agreed that, upon bankruptcy court approval, the Debtors shall release to the Buyer its funds in the Lockbox Account net of the amounts due to the Debtors of $465,150.70.[3] Hence, the remaining balance of approximately $969,000 (the "Net Buyer Funds") shall be released to the Buyer, with the Debtors' offset against the Buyer's funds in the Lockbox Account and the release to the Buyer of the Net Buyer Funds constituting the full and final reconciliation and adjustment of post-closing amounts due between the Parties and the satisfaction of all remaining obligations of the Parties under the APA. The Debtors will thereafter promptly close the Lockbox Account following completion of the offset and release of the Net Buyer Funds. For the avoidance of doubt, the Debtors will promptly pay to the Buyer the Net Buyer Funds deposited into the Lockbox Account prior to closing the account.

H.     NOW THEREFORE, for good and valuable consideration, including the promises and undertakings described herein, the Parties hereby stipulate and agree as follows:

## STIPULATION

1.     This Stipulation is subject to Court approval. At 12:01 a.m. (Eastern Time) on the first calendar day after an order of the Bankruptcy Court is entered approving this Stipulation, this Stipulation shall become effective (the "Effective Date") unless stayed pursuant to an order of a court of competent jurisdiction, in which case, this Stipulation shall be effective at 12:01 a.m. (Eastern Time) on the first calendar day after any such stay is dissolved or otherwise lifted.

2.     The automatic stay pursuant to Bankruptcy Code section 362 shall be modified on the Effective Date for the sole and limited purpose of permitting the Debtors to

---

[3] The account balance increases with new deposits on a regular basis from new advertising receipts and accordingly the amounts paid and remitted as of the Effective Date (as defined herein) will slightly vary from the figures set forth in this Stipulation.

4

46429/0001-6233310v1

immediately release the funds in the Lockbox Account. This Stipulation shall serve, as of the Effective Date, as such authorization and direction.

3. Within five business days of the Effective Date, the Debtors shall remit to the Buyer the Net Buyer Funds from the Lockbox Account, with the offset effected by the Debtors hereunder and the release of the Net Buyer Funds constituting full and final satisfaction of the Parties' obligations under the APA. Payment shall be made by check or wire transfer in accordance with payment instructions provided by the Buyer.

4. As set forth herein, the Debtors and the Buyer, and their respective heirs, executors, attorneys, administrators, successors and assigns do hereby release each other, and any and all of their successors and assigns, agents, employees, officers, directors, partners, affiliates, subsidiaries, parents, holding companies, and attorneys, of and from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, damages, judgments, orders and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, vested or contingent, which exist or may exist in the future, arising from or related to this Stipulation, and/or the APA and all agreements and post-closing reconciliations related thereto. Nothing herein shall be deemed a release of the Parties' obligations under the Stipulation.

5. Facsimile or other electronic copies of signatures on this Stipulation are acceptable, and a facsimile or other electronic copy of a signature on this Stipulation is deemed an original.

6. The individual signatories to this Stipulation represent that they are duly authorized to execute this Stipulation on behalf of the parties they represent.

7. This Stipulation may be executed in counterparts, each of which is deemed an original, but when taken together constitute one and the same document.

8. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation including, without limitation, for the purposes of interpreting, implementing and enforcing its terms and conditions.

[Remainder of page intentionally left blank]

Dated: January 6, 2010

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>James F. Conlan<br>Bryan Krakauer<br>Janet E. Henderson<br>Candice L. Kline<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036 | COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br><br>By: _____<br>Norman L. Pernick (No. 2290)<br>J. Kate Stickles (No. 2917)<br>Patrick J. Reilley (No. 4451)<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117<br><br>ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION |
| THE HEARST CORPORATION<br>300 W. 57th Street<br>New York, New York 10019<br>Attn: James M. Asher<br><br>By: _____<br>Name: James. M. Asher<br>Title: SVP, Chief Legal and Development Officer | HEARST DANBURY HOLDINGS, LLC<br>HEARST SOCO NEWSPAPERS, LLC<br>c/o The Hearst Corporation<br>300 W. 57th Street<br>New York, New York 10019<br>Attn: James M. Asher<br><br>By: _____<br>Name: James M. Asher<br>Title: Vice President<br><br><br>AUTHORIZED SIGNATORIES FOR THE BUYER |

# SCHEDULE 1

# LETTER AGREEMENT

Southern Connecticut Newspapers, Inc.
75 Tresser Boulevard
Stamford, Connecticut 06904
January 6, 2010

Hearst Soco Newspapers, LLC
c/o The Hearst Corporation
300 W. 57th Street
New York, NY 10019
Attn: James M. Asher

Ladies and Gentlemen:

 Reference is hereby made to that certain Asset Purchase Agreement (the "Purchase Agreement"), dated as of October 24, 2007, among Tribune Company, a Delaware corporation ("Tribune"), Southern Connecticut Newspapers, Inc., a Connecticut corporation ("Seller"), Tribune License Inc., a Delaware corporation ("Tribune License"), Hearst Danbury Holdings, LLC, a Delaware limited liability company ("HD"), The Hearst Corporation, a Delaware corporation ("Hearst Parent") and solely for purposes of Sections 5.3 and 6.2(k) and (l) thereof, MediaNews Group, Inc., a Delaware corporation ("MNG"). Capitalized terms used herein have the respective meanings set forth in the Purchase Agreement. Pursuant to Section 11.5 of the Purchase Agreement, HD assigned its rights and certain of its obligations to Hearst Soco Newspapers, LLC ("Buyer").

 The closing of the sale under the Purchase Agreement having occurred on November 1, 2007, the parties hereby confirm the following final reconciliation in respect thereof:

 1) The Working Capital Amount for all purposes of the Purchase Agreement, including for purposes of the determination of the Purchase Price adjustment pursuant to Section 2.8 thereof, is $1,087,504.81. Attached hereto as <u>Exhibit A</u> is the Closing Date Schedule. This shall be the final Closing Date Schedule referred to in Section 2.10(b) of the Purchase Agreement.

 2) At the Closing, the Estimated Working Capital Amount was $1,680,209, resulting in a Working Capital Deficiency of $119,791. Therefore, the Estimated Working Capital Amount exceeds the Working Capital Amount by $592,704.19. However, (i) Buyer owes Seller amounts equal to $1,073,512.29, which is comprised of (w) $394,062 in respect of certain of the Seller's cash deposits that were "swept" by Buyer from the Business following the Closing, (x) $213,636.48 in respect of amounts due to Tribune under the Transition Services Agreement, and (y) $465,813.81 in respect of severance costs paid by Tribune, which amount was the liability of Buyer, and (ii) Seller owes Buyer amounts equal to (x) $10,580.79 in respect of Tribune Interactive revenue billings and (y) $5,076.62 in respect of a payment made by Buyer to Clean Harbors, which amounts shall, in the case of clause (i), be netted against and, in the case of clause (ii), added to the amount by which the Estimated Working Capital Amount exceeds the Working Capital Amount.

1

3) The amount required to be paid by Buyer to Seller in full and final satisfaction of the obligations under Section 2.8 of the Purchase Agreement is $465,150.70. However, Tribune holds cash in a lock box account for Buyer, constituting the proceeds of Buyer's accounts receivable, in the amount of $1,433,720.43 as of November 30, 2009. The parties agree that, as a full and final true-up of all amounts owed between the parties hereto and their affiliates in respect of the reconciliation of working capital under the Purchase Agreement, payments due under the Transition Services Agreement and severance costs payable by Buyer, Seller shall net the $465,150.70 due to Seller against Buyer's cash in the lock box account and Seller shall release to Buyer, within five Business Days of the effective date of the stipulation as authorized and approved by the bankruptcy court, the entire remaining balance of Buyer's cash in such lock box account, which was in the amount of $968,569.73 as of November 30, 2009.

4) Seller represents and warrants that this letter and its obligations hereunder are all enforceable against it and its performance of them are consistent with the terms of its bankruptcy proceedings.

5) MNG acknowledges and agrees that the $465,150.70 payment to Seller shall be reconciled vis a vis Hearst Parent and MNG in accordance with the working capital adjustment pursuant to the Purchase Agreement.

***********

If the foregoing is agreeable to you, please so indicate by executing this letter in the appropriate location below, whereupon this letter will become a binding agreement among the parties hereto.

**TRIBUNE COMPANY**

By: _____
Name: David Kazan
Title: Authorized Officer

**SOUTHERN CONNECTICUT NEWSPAPERS, INC.**

By: _____
Name: David P. Eldersveld
Title: Authorized Officer

**TRIBUNE LICENSE, INC.**

By: _____
Name: David P. Eldersveld
Title: Authorized Officer

**THE HEARST CORPORATION**

By: _____
Name: _____
Title: _____

**HEARST SOCO NEWSPAPERS, LLC**

By: _____
Name: _____
Title: _____

If the foregoing is agreeable to you, please so indicate by executing this letter in the appropriate location below, whereupon this letter will become a binding agreement among the parties hereto.

**TRIBUNE COMPANY**

By: _____
Name:
Title:   Authorized Officer


**SOUTHERN CONNECTICUT NEWSPAPERS, INC.**

By: _____
Name:
Title:   Authorized Officer


**TRIBUNE LICENSE, INC.**

By: _____
Name:
Title:   Authorized Officer


**THE HEARST CORPORATION**

By:  /s/ _____
Name:  James M. Asher
Title:  SVP, Chief Legal and Development Officer

**HEARST SOCO NEWSPAPERS, LLC**

By:  /s/ _____
Name:  James M. Asher
Title:  Vice President

**HEARST DANBURY HOLDINGS LLC**

By: _____
Name: _____James M. Asher_____
Title: _____Vice President_____

**MEDIANEWS GROUP, INC.**
Solely with respect to Section 5 of this Agreement

By: _____
Name: _____
Title: _____

**HEARST DANBURY HOLDINGS LLC**

By: _____
Name: _____
Title: _____

**MEDIANEWS GROUP, INC.**
Solely with respect to Section 5 of this Agreement

By: _Ronald A Mayo_____
Name: _Ronald A Mayo_____
Title: _VP CFO_____

## Southern Connecticut Newspapers, Inc.
## Exhibit A: Closing Date Schedule

| | | |
|---|---|---:|
| Petty cash | $ | 851.15 |
| Advertising Accounts Receivable | | 3,573,417.82 |
| Circulation Accounts Receivable | | 108,945.82 |
| Other Accounts Receivable | | - |
| Reserve for Allowance | | (55,087.11) |
| Reserve Bad Debt Advertising | | (300,593.97) |
| Reserve Bad Debt Circulation | | (93,255.71) |
| Prepaid Expense | | 148,631.81 |
| Plate Inventory | | 24,377.95 |
| Newsprint Inventory | | 190,358.84 |
| Ink Inventory | | 21,482.87 |
| Other Inventory | | 2,005.50 |
| **Total Current Assets** | **$** | **3,621,134.97** |
| Accounts Payable System | $ | (316,599.45) |
| Accruals AP | | (437,274.21) |
| Barter Reserve | | (63,109.28) |
| Accrued Commission | | (34,167.48) |
| Prepaid Subscriptions | | (1,476,806.42) |
| Accrued Vacation | | (205,673.32) |
| **Total Current Liabilities** | **$** | **(2,533,630.16)** |
| Net Working Capital Amount | | 1,087,504.81 |
| Estimated Net Working Capital Amount | | (1,680,209.00) |
| Cash Sweep Owed to Seller | | 394,062.00 |
| Tribune Interactive Revenue Billings Owed to Buyer | | (10,580.79) |
| Clean Harbors Invoice Payment Owed to Buyer | | (5,076.62) |
| **Amount Owed by Seller** | **$** | **(214,299.60)** |

# SCHEDULE 2

# RECONCILIATION WORKSHEET

## Southern Connecticut Newspapers, Inc. (SCNI)
### Net Amount Due to Hearst Corporation

*Updated as of December 18, 2009*

| | |
|---|---:|
| Last transition services invoice (billed as of August 2008) | $ 213,636.48 |
| Severance paid in excess of accrual per APA[1] | 394,892.19 |
| Post bankruptcy severance paid November 2009 | 70,921.62 |
| (Total Severance Reimbursement $465,813.81) | |
| Less: | |
|    Working capital adjustment due to Hearst (see table A below) | (214,299.60) |
| Net amount due from Hearst | $ 465,150.70 |
| SCNI Lockbox account held by Tribune (balance as of 11.30.09) | $ 1,433,720.43 |
| Final balance to be paid to Hearst | $ 968,569.73 |

[1] Source is payroll registers from pay period ending 11/03/07 through pay period ending 11/29/08, noting that severance was estimated to be paid through April 2009. Severance payments subsequent to the bankruptcy filing date were paid in November 2009.

### Table A
### Southern Connecticut Newspapers, Inc.
### Working Capital Adjustments

| | |
|---|---:|
| Petty cash | $ 851.15 |
| Advertising Accounts Receivable | 3,573,417.82 |
| Circulation Accounts Receivable | 108,945.82 |
| Other Accounts Receivable | - |
| Reserve for Allowance | (55,087.11) |
| Reserve Bad Debt Advertising | (300,593.97) |
| Reserve Bad Debt Circulation | (93,255.71) |
| Prepaid Expense | 148,631.81 |
| Plate Inventory | 24,377.95 |
| Newsprint Inventory | 190,358.84 |
| Ink Inventory | 21,482.87 |
| Other Inventory | 2,005.50 |
| **Total Current Assets** | **$ 3,621,134.97** |
| Accounts Payable System | $ (316,599.45) |
| Accruals AP | (437,274.21) |
| Barter Reserve | (63,109.28) |
| Accrued Commission | (34,167.48) |

| | |
|---|---:|
| Prepaid Subscriptions | (1,476,806.42) |
| Accrued Vacation | (205,673.32) |
| **Total Current Liabilities** | **$ (2,533,630.16)** |
| Net Working Capital Amount | 1,087,504.81 |
| Estimated Net Working Capital Amount | (1,680,209.00) |
| Cash Sweep Owed to Seller | 394,062.00 |
| Tribune Interactive Revenue Billings Owed to Buyer | (10,580.79) |
| Clean Harbors Invoice Payment Owed to Buyer | (5,076.62) |
| **Amount Owed by Seller** | **$ (214,299.60)** |