# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: January 27, 2010 at 10:00 a.m. ET<br>Response Deadline: January 20, 2010 at 4:00 p.m. ET |

## MOTION OF DEBTORS FOR AN ORDER AUTHORIZING TRIBUNE COMPANY TO PURCHASE TAIL COVERAGE RESPECTING THE DEBTORS' EXISTING DIRECTORS AND OFFICERS AND FIDUCIARY LIABILITY INSURANCE POLICIES PURSUANT TO SECTION 363(B) OF THE BANKRUPTCY CODE

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order pursuant to section 363(b) of title 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-6233198v1

of the United States Code (the "Bankruptcy Code") authorizing Tribune Company ("Tribune") to purchase a six-year extended reporting period under the Debtors' existing directors and officers liability and fiduciary liability insurance policies ("Tail Coverage") for an aggregate premium of approximately $5.6 million, which could be exercised at any time over the next 12-month period. As described in further detail herein, chapter 11 debtors routinely purchase "tail" coverage in connection with a plan of reorganization, to extend existing "claims-made" insurance policies following the effective date of the plan, which typically terminates such coverage according to the policy terms. The Debtors have been offered the opportunity to purchase the Tail Coverage now, in advance and outside of the plan process, at a significant discount over what the Debtors would otherwise expect to pay to purchase separate tail coverage. Accordingly, the Debtors believe it is in the best interests of their estates and creditors to purchase the Tail Coverage and request this Court's authorization to do so. In further support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008 (the "Petition Date"), Tribune and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2.    The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). [Docket Nos. 43, 2333].

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 6004

## BACKGROUND TO THE MOTION

6. In connection with its indemnification obligations, Tribune maintains certain directors and officers liability and fiduciary liability insurance policies, principally for the benefit of the Debtors' directors, officers, employees, and agents who are or were involved or may be involved in the future in any threatened, pending, or completed action, suit, or proceeding, by reason of the fact that such persons are or were serving as a director, officer, employee, or agent of the Debtors, including service with respect to the Debtors' employee benefit plans (the "Policies").[3] The Policies include primary directors and officers liability coverage provided by Federal Insurance Company, a member of the Chubb Group, and primary

---

[3] Delaware General Corporation Law § 145 allows a company to indemnify any person sued as a director, officer, employee, or agent of the company "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." Pursuant to its Amended and Restated Certificate of Incorporation, Tribune has indemnified its directors and officers to the "fullest extent permitted by applicable law" in connection with any actual or threatened action, suit, or proceeding against them based on their service as a director or officer of Tribune. Additionally, Tribune has indemnified its employees or agents who are involved in any actual or threatened action, suit, or proceeding against them based on their service to the company. This right of indemnification extends to all indemnified parties who are sued based on, among other things, "service with respect to employee benefit plans, against all liability and loss suffered and expenses (including attorney's fees) reasonably incurred."

fiduciary liability coverage provided by Illinois National Insurance Company, a member of Chartis.[4] Each primary policy is followed by several tiers of excess coverage provided by various other insurance providers (together with Chubb and Chartis, the "Insurance Providers").

7. Tribune completed its review in mid-December for an extension of the existing Policies with the Insurance Providers, and, in its ordinary course of business, extended the coverage that has existed for the past two years for an additional year. The 12-month extension of the Policies is effective December 20, 2009, and provides coverage, under the terms, conditions, limitations, and exclusions of the Policies, for claims made on or prior to December 20, 2010 (as extended), with respect to acts occurring or allegedly occurring on or after December 20, 2007.[5] The cost of the 12-month extension was approximately $9.8 million.[6] In addition, the Insurance Providers agreed to offer the Debtors a six-year extended reporting period under the Policies that could be exercised at any time during the 12-month extension of the Policies, in accordance with Policies' terms. The cost of this additional Tail Coverage is approximately $5.6 million in the aggregate for the Policies, provided the Tail Coverage offer is accepted prior to the offer expiration date of February 3, 2010, and is paid in full upon acceptance.[7] In the event the Debtors exercise the Tail Coverage during the 12-month extension period, no further premiums will be payable to obtain the Tail Coverage.

8. The 12-month extension of the Policies also includes an additional 3-month extension option, available for election until December 20, 2010, which provides for the

---

[4] Formerly known as American International Underwriters, successor-in-interest to American International Group, Inc.

[5] The Debtors also have directors and officers and fiduciary liability insurance policies for claims made during the period August 31, 2007 until December 20, 2013 with respect to acts occurring or allegedly occurring on or prior to December 20, 2007. Such policies are not implicated by the relief requested in this Motion.

[6] The total cost for the 12-month extension of the existing Policies was $9,809,670.

[7] The Insurance Providers have quoted an aggregate premium of $5,574,636 for the Tail Coverage.

4

further extension of the Policies until March 20, 2011, in return for a pro-rata premium to be calculated based on the annual extension premium applicable to the existing Policies. If the additional 3-month extension is elected, the period to exercise Tail Coverage is also extended until March 20, 2011, without any additional premium beyond the cost of the 3-month extension of the overall Policies.

        9.      Directors and officers and fiduciary liability insurance coverage typically falls into the category of "claims-made" policies, which provide coverage only for claims that are made during the life of the policy, regardless of when the events giving rise to the claim occurred.[8] Generally, the purchase of tail coverage is required to continue the benefits of existing "claims-made" insurance coverage following a change-of-control transaction, such as confirmation of a plan of reorganization, which typically results in the termination of "claims-made" insurance policies under the policy terms. Chapter 11 debtors will typically purchase and bind tail coverage for a period of six years, in an amount and under terms consistent with the insurance coverage in place prior to the effective date of the plan, on or about the time that the debtor confirms its plan of reorganization. The Debtors' insurance broker, Marsh, Inc. ("Marsh") has advised the Debtors that purchasing separate tail coverage as part of the plan process typically costs between 1 and 2.5 times the total annual premium for the underlying insurance coverage. Thus, the Debtors will realize substantial savings by purchasing the Tail Coverage in advance, as part of the extension of the existing Policies, rather than waiting until plan confirmation to separately negotiate and purchase tail coverage. Marsh has further advised the Debtors that an increasing number of its clients requiring tail coverage during chapter 11 proceedings (estimated

---

[8] "Claims-made" policies and "occurrence-based" policies are fundamentally different. Claims-made policies provide coverage only where the underlying claim is first made during the policy period. Therefore, the focus under a claims-made policy is on the date of the first assertion of the claim, rather than the date of the injury or the damage alleged within that claim. See Hoeschst Celanese Corp. v. Certain Underwriters at Lloyd's, 656 A.2d 1094, 1095 (Del. 1995) citing St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 535 n.3 (1978).

at up to half in 2009) have opted to negotiate and purchase the coverage in advance at reduced rates, rather than waiting until plan confirmation to do so at full price.

10. The Debtors believe that it is more likely than not that a plan of reorganization will be confirmed in these chapter 11 proceedings during the next 15 months, necessitating the acquisition of tail coverage equivalent to what is being offered by the Insurance Providers, except that such coverage would normally cost between 1 and 2.5 times the total annual premiums, i.e. more than twice the cost being offered. The Debtors have determined that in the event a plan is not confirmed within the next 15 months, and if the existing insurers are not willing to provide a further extension of the Tail Coverage offer and the underlying insurance coverage under the Policies at reasonable rates, the Debtors will exercise the Tail Coverage so as not to lose the benefit of the approximate $5.6 million premium spent to obtain this Tail Coverage for their estates. Accordingly, the Debtors believe that it is prudent and in the best interests of their estates and creditors to purchase the Tail Coverage at this time.

11. Over the past several weeks, the Debtors have engaged in multiple conferences with counsel for the Committee to disclose the terms of the proposed Tail Coverage. Based upon these discussions, the Debtors understand that the Committee has no objection to the relief requested herein. The Debtors believe that Tribune's purchase of the Tail Coverage is within its ordinary course of business, to the extent it merely continues the Debtors' existing insurance coverage following the effective date of the Debtors' plan. However, since the purchase of tail coverage has historically been made towards the conclusion of the reorganization plan process and only more recently been made in advance, out of an abundance of caution, the Debtors request this Court's authorization to purchase the Tail Coverage. The Debtors have obtained a commitment from the Insurance Providers to leave open their offer of Tail Coverage at

reduced rates for a period of 45 days following December 20, 2009, so that the Debtors may obtain this Court's approval to purchase the Tail Coverage and pay the approximate $5.6 million premium within that time. The Insurance Providers' offer expires unless accepted by the Debtors prior to February 3, 2010.

## RELIEF REQUESTED

12. Accordingly, by this Motion, the Debtors seek entry of an order, pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004, authorizing Tribune to purchase the Tail Coverage and to pay the Insurance Providers an aggregate premium of approximately $5.6 million. The Debtors further request a waiver of the 14-day stay provided for in Bankruptcy Rule 6004(h) in order to permit Tribune to purchase, bind, and pay the premium for the Tail Coverage immediately upon the entry of this Court's order granting the relief requested herein.

## BASIS FOR RELIEF REQUESTED

13. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts generally apply the "business judgment" standard in determining whether to approve a proposed transaction under section 363 of the Bankruptcy Code. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to the debtor's judgment concerning the proposed use of estate property under section 363(b) when there is a legitimate business justification); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (same); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363).

14. Under the business judgment standard, the debtor has the initial burden of establishing that a valid business purpose exists for the use of estate property in a manner outside of the debtor's ordinary course of business. See Lionel Corp., 722 F.2d at 1071. Once the debtor articulates a valid business justification for the proposed transaction, courts will generally presume that the decision was made "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

15. Thus, after the debtor satisfies its initial burden of establishing a valid business justification, the business judgment rule shields the debtor's management from judicial second-guessing and mandates that a court approve a debtor's business decision unless the decision is a product of bad faith or constitutes a gross abuse of discretion. See, e.g., In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). To impose more exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1986).

16. After consulting with their insurance broker and counsel, the Debtors have determined that at some point during the pendency of these chapter 11 cases it will be necessary and prudent to purchase tail coverage for the benefit of their directors, officers, employees and agents. The Debtors' Policies are "claims-made" policies, which do not cover liability for

wrongful acts occurring during the policy period if the claim is made after the policy period expires. Thus, if the Debtors fail to obtain tail coverage for their existing policies, a coverage gap will result for claims that are asserted after the plan effective date for acts or omissions that took place during the life of the underlying Policies, which likely will terminate by their terms upon the effective date of the Debtors' plan. Disruption of their insurance coverage would expose the Debtors and their directors and officers, employees and agents to serious risks.

17. The Tail Coverage being offered to the Debtors by the Insurance Providers is the product of arms-length negotiations by the Debtors and the Insurance Providers and represents substantial cost savings over the premiums that are typically charged to chapter 11 debtors for the separate purchase of tail coverage on or about the time a plan of reorganization is confirmed. Given that the Debtors anticipate the need to purchase tail coverage in any event, and the Debtors' intention to capture the benefits of the Tail Coverage in the next 15 months, the Debtors respectfully submit that the purchase of the Tail Coverage is an exercise of their sound business judgment and should be approved.

## NOTICE

18. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' post petition financing facility; (v) counsel for the Insurance Providers; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

19. No previous or other application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004, (i) authorizing Tribune Company to purchase the Tail Coverage; and (ii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
      January 6, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION