# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: January 27, 2010 at 10:00 a.m. ET**<br>**Objection Deadline: January 20, 2010 at 4:00 p.m. ET** |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 365 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING THE DEBTORS TO ASSUME CERTAIN SYNDICATED PROGRAM AGREEMENTS WITH NBC UNIVERSAL AND TO COMPROMISE CLAIMS

Debtors Tribune Broadcasting Company, Tribune Broadcast Holdings, Inc., WGN

Continental Broadcasting Company, Tribune Television Company, Tribune Television Holdings,

Inc., Tribune Television Northwest, Inc., Tribune Television New Orleans, Inc., Channel 39,

Inc., Channel 40, Inc., KSWB, Inc., KTLA Inc., WPIX, Inc., KIAH Inc. (f/k/a KHCW Inc.),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

WTXX Inc., and WDCW Broadcasting, Inc. (collectively, the "Tribune Parties") hereby move

this Court (the "Motion") for entry of an order, pursuant to section 365 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), authorizing the assumption of certain amended syndicated

program agreements with Universal City Studios Productions LLLP, a subsidiary of NBC

Universal, Inc. (collectively, "NBCU") and the compromise, waiver, and release of certain

claims, as more fully described herein.  In further support of the Motion, the Tribune Parties

respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company

("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.  In all, the

Debtors comprise 112 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of

Delaware appointed an official committee of unsecured creditors (the "Committee").  No request

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

has been made for the appointment of a trustee.  The Committee has been apprised of the relief

requested herein.

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are sections 365(a), 363(b), and 105(a) of the Bankruptcy Code and Bankruptcy Rules

6006(e)(3) and 9019.

## BACKGROUND TO THE MOTION

6.     Tribune Company ("Tribune"), a Debtor in the above-captioned case, is

America's largest employee-owned media company and is the ultimate parent company of each

of the other Debtors.  Tribune operates businesses in publishing, interactive media, and

broadcasting.  These operations are conducted through two business divisions: (i) publishing and

(ii) broadcasting and entertainment.  Tribune's broadcasting and entertainment division owns and

operates 23 network-affiliated television stations, "superstation" WGN America, and Chicago

cable news station CLTV, which together reach more than 80% of television households in the

United States.  The Tribune Parties represent the entities that own and operate 21 of these

stations, which broadcast in 17 distinct designated market areas ("DMA").

7.     NBC Universal, Inc. is a mass media company with operations in virtually

every field of media and entertainment.  Its subsidiaries, Universal City Studios Productions

LLLP and NBC Universal Television Distribution, produce and/or distribute syndicated

programming to television stations for broadcast throughout the United States.  NBCU licenses

the right to air the programs that it produces and/or distributes, on a first-run basis (i.e., programs

originally produced and distributed nationally on an individual market-by-market basis) or off-

network basis (i.e., programs originally produced and distributed nationally via a major

broadcast or cable network, and subsequently "re-run"), through syndicated program agreements with television stations throughout the United States.

8.    The Tribune Parties program their television stations with a variety of local news, sports, and general entertainment programming, much of which is obtained from third-party program suppliers.  General entertainment programming comprises the bulk of a television station's daily broadcast schedule, and such programming has two primary sources: (i) network programming that is provided to the station by a broadcast network (e.g., NBC, CBS, ABC, the CW, FOX and MNTV) and generally airs on a uniform schedule on all network-affiliated stations nationwide, and (ii) syndicated programming that is licensed to the station from third-party program suppliers, or "syndicators," for broadcast solely within a local DMA, usually during negotiated time periods.

9.    The Tribune Parties, and other Debtors, have prepetition syndicated program agreements with NBCU for general entertainment programming, including the popular daytime talk shows *Maury*, *The Jerry Springer Show* ("*Jerry Springer*"), and *The Steve Wilkos Show* ("*Steve*") (collectively, the "NBC Agreements").  All three programs that are the subject of the NBC Agreements are original, first-run productions in the Tribune Parties' daytime programming.  Each program is an hour-long show aired Monday-Friday on nearly all of the Tribune Parties' television stations.  Many of the Tribune Parties' stations also air a second-run of one or more of the shows.  In all, *Maury*, *Jerry Springer*, and *Steve* together currently comprise 280 hours per week of programming for the Tribune Parties' stations.

10.    The NBC Agreements allow the Tribune Parties to broadcast *Maury*, *Jerry Springer*, and *Steve* in time periods that allow the corresponding Tribune television station to schedule programming to maximize audience retention from program to program and to

otherwise manage their broadcast schedules to greatest advantage. The Tribune Parties have the right to sell and insert commercial advertisements within the licensed programming and to retain all the proceeds derived therefrom, an important source of revenue to the Tribune Parties.

11.    Over the past year, the Tribune Parties and NBCU have engaged in discussions regarding the terms for the Tribune Parties' continued broadcast of *Maury*, *Jerry Springer*, and *Steve*. As a result of these discussions, the Tribune Parties have agreed to assume certain of the NBC Agreements for *Maury*, *Jerry Springer*, and *Steve* subject to amendments that will extend the agreements' terms beyond their scheduled termination in September 2010 through September 2012 and reduce the license fees paid to NBCU over the extended terms.[3] At this time, the Tribune Parties have agreed to assume forty (40) of the NBC Agreements, as amended in the manner described herein (the "NBC Agreements to be Assumed"). The remaining NBC Agreements are not subject to this Motion and are not being assumed or rejected at this time. For the NBC Agreements to be Assumed, the license fees for *Maury* and *Jerry Springer* will be reduced approximately 6% and 12%, respectively, effective with the September 2010 season and the license fee for *Steve* will be reduced approximately 36% effective with the September 2009 season. The aggregate savings to the Tribune Parties from these reductions will exceed $7 million over the life of the contract terms. A list of the NBC Agreements to be Assumed is attached hereto as Exhibit A.[4]

---

[3] The parties may also incorporate certain non-economic revisions to the terms of the NBC Agreements, which the Tribune Parties regard as largely non-material and/or clarifying in nature.

[4] The NBC Agreements are reflected either in correspondence setting forth the economic and other material terms of the parties or in a form agreement provided by NBCU which includes the economic and other material terms specific to the Tribune Parties and the relevant stations, which may not be evidenced by the parties' signatures. They nevertheless accurately reflect the material terms of the parties' contractual agreement, upon which their performance is based. Copies of these documents will be made available upon request to the Office of the United States Trustee, the Committee, and the senior lender steering committee subject to appropriate confidentiality constraints.

Nothing contained in this Motion is intended to alter any provision of the NBC Agreements. In the event of a

12.    In consideration for the Tribune Parties' assumption of the amended NBC

Agreements to be Assumed, NBCU has agreed to waive and release a portion of the amounts that

the Tribune Parties would otherwise be required to "cure" as a condition of the assumption of

those NBC Agreements to be Assumed.  The Tribune Parties and NBCU agree that the total

prepetition amount owing under the NBC Agreements to be Assumed is $4,933,086.[5]  Pursuant

to the parties' agreement, and in respect of the NBC Agreements to be Assumed, Tribune will

pay ninety percent (90%) of the prepetition amounts owing to NBCU for *Maury* and *Jerry*

*Springer* and eighty-five percent (85%) of the prepetition amounts owing to NBCU for *Steve*, for

a total of  $4,377,402 (the "Cure Amount").  The Tribune Parties will pay the Cure Amount

within ten (10) business days after the later to occur of the entry of the Order approving this

Motion and the parties' execution of the amendments (which may take the form of a "Deal

Memo", summarizing the material deal points, customary to the practice of the parties) to the

NBC Agreements to be Assumed.[6]

## RELIEF REQUESTED

13.    By this Motion, the Tribune Parties seek entry of an order authorizing and

approving (i) pursuant to section 365(a) of the Bankruptcy Code, the assumption of the NBC

Agreements to be Assumed, as amended, effective upon the Court's authorization of the relief

requested herein and the payment of the Cure Amount; and (ii) pursuant to Bankruptcy Rule

9019, the reduction of NBCU's aggregate prepetition claims under the NBC Agreements to be

Assumed to the amount of the Cure Amount, with the remainder of such prepetition claims under

---

discrepancy between the description of such Agreements in this Motion and their actual terms, the terms of such
Agreements shall control.

[5] Based upon proofs of claim filed by Universal City Studios Productions LLLP, as reconciled by the Debtors and
NBCU.

[6] To the extent, NBCU has prepetition claims on any of the NBC Agreements which are not subject to this Motion,
NBCU retains those claims.

the NBC Agreements to be Assumed being waived and relinquished.  The Tribune Parties also respectfully request that the Court authorize them to seek assumption of the multiple executory contracts set forth in Exhibit A that comprise the NBC Agreements to be Assumed in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).

## BASIS FOR RELIEF

### A.    Assumption of the NBC Agreements

14.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease."  11 U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)).  A debtor's assumption or rejection of an executory contract is subject to review under the business judgment standard.  In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test").

15.    Under the business judgment test, a debtor is required to proffer a reason as to why, in its business judgment, assumption or rejection of the executory contract or unexpired lease at issue benefits the debtor's estate and then articulate the bases of that determination.  See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).  Application of the business judgment standard thus dictates "that a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion."  See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond

Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986);

Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment

standard requires deference to debtor's management absent showing of bad faith, fraud, or gross

overreaching).

   16. The Tribune Parties believe, in their business judgment, that the

assumption of the NBC Agreements to be Assumed, as amended, is in the best interests of their

estates and creditors.  Syndicated first-run programming, like the programming covered by the

NBC Agreements to be Assumed, is an integral component of the Debtors' broadcast business.

As noted above, *Maury*, *Jerry Springer*, and *Steve* comprise an aggregate 280 hours per week of

programming across the Tribune Parties' stations and are an important element of the stations'

daytime program schedules.  The strength and popularity of the Tribune Parties' complement of

syndicated programs, including *Maury*, *Jerry Springer*, and *Steve*, has a direct impact on

viewership, which in turn serves as the basis for setting the rates which can be charged to

advertisers.  Maintaining the syndicated license rights to the television programs provided to the

Tribune Parties under the NBC Agreements to be Assumed is thus important to the ongoing

business operations of the Tribune Parties.  These programs are established, solidly performing,

revenue-generating programs for the Tribune Parties.  Due to the cost of original, first-run

programming and lead-time necessary to produce first-run series, comparable substitute

programming would not likely be available if the Tribune Parties were to lose the benefit of the

NBC Agreements to be Assumed.

   17. Further, the rates charged by the Tribune Parties for placement of

commercial advertising in their syndicated programming are based on the audience ratings

achieved.  Ratings for a particular program are enhanced by quality adjacent programming;

program schedules are meticulously orchestrated to maximize audience retention, yielding greater ratings and increased advertising revenue opportunities. Significant economic benefit thus is conferred upon the Tribune Parties through the advertising revenue generated by perennial audience favorites, such as *Maury* and *Jerry Springer*, and popular new shows such as *Steve*. Conversely, any loss of such programming would interrupt program schedules and likely negatively impact ratings and revenue to the Tribune Parties. The Tribune Parties are also receiving the economic benefit of the reduced Cure Amount and the reduced license fees paid to NBCU for the extended term of each of the amended NBC Agreements to be Assumed. The Tribune Parties therefore respectfully submit that the assumption of the NBC Agreements to be Assumed, as amended, is supported by sound business judgment and is in the best interests of their estates and creditors.

18.    Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations – by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993). As noted, the parties have agreed to a reduced Cure Amount that will alleviate some of the economic burden to the Tribune Parties in assuming the NBC Agreements to be Assumed. Further, the Debtors have postpetition financing in place and maintain sufficient liquidity for the performance of postpetition contractual obligations. The Tribune Parties respectfully submit that they have met all of the requirements for the assumption of the NBC Agreements to be Assumed.

19.    Finally, the Tribune Parties respectfully request that the Court authorize them to seek assumption of the multiple executory contracts that comprise the NBC Agreements

to be Assumed in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).  Bankruptcy Rule

6006(e) limits the ability of a debtor to "seek authority to assume or assign multiple executory

contracts or unexpired leases in one motion unless (1) all executory contracts or unexpired leases

to be assumed or assigned are between the same parties or are to be assigned to the same

assignee; (2) the trustee [or debtor in possession] seeks to assume, but not assign to more than

one assignee, unexpired leases of real property; or (3) the court otherwise authorizes the motion

to be filed."  Fed. R. Bankr. P. 6006(e).  Forty (40) separate agreements will be assumed

pursuant to this Motion.  Each of the NBC Agreements to be Assumed is between a Tribune

Party and Universal City Studios Productions LLLP, a subsidiary of NBC Universal, Inc., and

each has as its subject matter the licensing of the syndicated television programs *Maury*, *Jerry

Springer*, or *Steve*, which are provided by NBCU to the Tribune Parties' television stations on a

first-run basis.  Therefore, the Tribune Parties respectfully submit that the interests of judicial

economy are best served by seeking the relief requested herein in this one Motion.  The Tribune

Parties have complied in all respects with the provisions in Rule 6006(f), pertaining to omnibus

motions to assume multiple executory contracts.

**B.      Compromise, Waiver, and Release of Claims Pursuant to Bankruptcy Rule 9019**

        20.      By this Motion, the Tribune Parties also seek, pursuant to Bankruptcy

Rule 9019, the entry of an order authorizing the compromise and release of a portion of the

prepetition claims relating to the NBC Agreements to be Assumed, as reflected in the reduced

Cure Amount to be paid to NBCU upon assumption of the NBC Agreements to be Assumed.

Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the
> court may approve a compromise or settlement.  Notice
> shall be given to creditors, the United States trustee, the
> debtor, and indenture trustees as provided in Rule 2002 and
> to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).  The Third Circuit Court of Appeals has stated that section 363 of the

Bankruptcy Code is the substantive provision requiring a hearing and court approval of

settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may

be secured.  See Myers v. Martin (In re Martin), 91 F.3d 389, 395 n.2 (3d Cir. 1996)

(distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule

9019).

21.    In conjunction with the proposed assumption of the NBC Agreements to

be Assumed, the parties have agreed to a reduced Cure Amount of $4,377,402 and the waiver by

NBCU of any other amounts owing under the NBC Agreements to be Assumed.  As a result, ten

percent (10%) of the prepetition amounts owing to NBCU for *Maury* and *Jerry Springer* and

fifteen percent (15%) of the prepetition amounts owing to NBCU for *Steve* shall be waived and

released on the NBC Agreements to be Assumed.  This compromise by NBCU is the product of

arm's-length negotiations between the Tribune Parties and NBCU and will result in the savings

to the Tribune Parties of $555,684.  Accordingly, the Tribune Parties believe that this

compromise is in the best interests of their estates and creditors.

## NOTICE

22.    Notice of this Motion has been provided to:  (i) the Office of the United

States Trustee; (ii) counsel for the Committee; (iii) counsel to the steering committee for the

Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors'

postpetition financing facility; (v) counsel to NBCU; and (vi) all parties having requested notice

pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the

Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

23.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Tribune Parties respectfully request that the Court enter an order, in substantially the form attached hereto, authorizing and approving (i) the Tribune Parties' assumption of the NBC Agreements to be Assumed, as amended, effective as of the date of the entry of the order, and the payment of the Cure Amount; and (ii) the waiver and release by NBCU of any other amounts owing under the NBC Agreements to be Assumed; and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
         January 6, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION