## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Date: February 4, 2010 at 4:00 p.m.** |
| | **Hearing Date:  TBD** |
| | **Related to Docket Nos. 2443, 2660, and 2909** |

## FOURTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF SEPTEMBER 1, 2009 THROUGH NOVEMBER 30, 2009

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide Professional Services to: | **Debtors** |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Date of Retention:                          **February 20, 2009 (nunc pro tunc to December 8, 2008)**

Period for Which Compensation             **September 1, 2009 through November 30, 2009**
and Reimbursement is Sought:

Amount of compensation sought as actual,   **$5,292,782.75**
reasonable and necessary:

Amount of Expense Reimbursement sought as  **$221,808.01**
actual, reasonable and necessary

This is a(n): _____ monthly     ___X___ interim     _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee applications, including time expended for review and response to fee auditor materials, during this Fourth Interim Fee Period is approximately 404.50 hours and the corresponding compensation requested is approximately $110,919.50.

### Prior Interim Applications

| Quarter | Date Filed | Period Covered | Requested | | Approved | |
|---------|-----------|----------------|-----------|-----------|-----------|-----------|
|         |           |                | Fees | Expenses | Fees | Expenses |
| 1 | 4/15/09 | 12/8/08-2/28/09 | $3,897,043.25 | $165,360.71 | $3,886,289.75 | $158,441.67 |
| 2 | 7/16/09 | 3/1/09-5/31/09 | $4,209,274.75 | $105,524.36 | | |
| 3 | 10/15/09 | 6/1/09-8/31/09 | $4,513,018.00 | $99,429.34 | | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: February 4, 2010 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 2443, 2660, and 2909** |

## FOURTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF SEPTEMBER 1, 2009 THROUGH NOVEMBER 30, 2009

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications (the "Fee Examiner Order") for approval of interim compensation and reimbursement of expenses for the fourth quarterly period from September 1, 2009 through November 30, 2009 (the "Fourth Interim Fee Period").  In support of the Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC) ("Tribune CNLBC"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009.[2]  In all, the Debtors comprise 112 entities.

---

[2] All orders of the Court applicable to this Application have subsequently been extended to Tribune CNLBC.  (See Order Directing (I) Joint Administration of Chapter 11 Cases and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. be made applicable to the Chapter 11 Case of Chicago National League Ball Club, LLC (entered Oct. 14, 2009) (the "CNLBC Joint Administration Order") [Docket No. 2333].

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On March 19, 2009, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.  [Docket No. 546.]

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

**PROCEDURAL BACKGROUND FOR THE APPLICATION**

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application

sets forth the following scope of services, which were performed during the Fourth Interim Fee Period:

(a)    to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)    to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c)    to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)    to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

(e)    to perform any and all other legal services for the Debtors in connection with both these chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)    to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)    to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)    to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)    to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)    to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or

appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, nunc pro tunc to the Petition Date, was approved by this Court by order dated February 20, 2009 (Docket No. 435).

8.      The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders"), provide all professionals retained in these cases pursuant to section 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing to the Debtors that no objection or partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whichever is applicable, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an objection.

9.      Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of September 2009, October 2009 and November 2009, which

Monthly Fee Applications are incorporated herein by reference.[3] Sidley has accordingly submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for this Fourth Interim Fee Period.

10.    In addition to the Monthly Fee Applications, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local Rules. This Application represents the fourth Quarterly Fee Application Request that Sidley has filed with the Court in connection with these chapter 11 cases, and it covers the period from September 1, 2009 through November 30, 2009, both dates inclusive.

## RELIEF REQUESTED

11.    By this Application, Sidley respectfully requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy counsel to the Debtors during the Fourth Interim Fee Period.

12.    The amount of fees sought for services rendered during the Fourth Interim Fee Period is $5,292,782.75, representing 10,941.40 hours in professional and paraprofessional time for such services. Reimbursement of actual, necessary expenses incurred by Sidley during the Fourth Interim Fee Period in connection with these services is requested in the amount of

---

[3] The docket numbers of Sidley's Monthly Fee Applications for September 2009, October 2009, and November 2009 are 2443, 2660, and 2909, respectively.

$221.808.01.  Sidley seeks the interim allowance of such compensation, and this Court's authorization for payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.    The hourly rates charged by Sidley professionals and paraprofessionals during the Fourth Interim Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases.  The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2009 and continuing until Sidley's next Firm-wide rate adjustment will be $925 per hour.  (See Supplemental Affidavit (Second) of James F. Conlan in Support of Application for an Order Authorizing the Employment and Retention of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession at ¶ 3, Docket No. 424.) Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

14.    Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases.  There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases.  All professional and paraprofessional services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

## SERVICES RENDERED

15.    Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation,

and transactional counsel to the Debtors in their ordinary course of business. The services performed by Sidley's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.    A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of <u>Attachment A</u> to this Application, as required by Local Rule 2016-2. A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Fourth Interim Fee Period:

**A.    FCC Matters (20100):   Hours: 311.40   Fees: $122,519.50**

17.    During the Fourth Interim Fee Period, Sidley's professionals continued to represent the Debtors' broadcast and cable television stations as communications regulatory counsel. In this capacity, Sidley's professionals and paraprofessionals handle various matters on behalf of the Debtors relating to regulatory compliance, including compliance with all technical and operational rules and regulations of the Federal Communications Commission ("FCC"); transactional matters that require FCC approval; seeking waivers of the newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal applications and license modification applications, and responding to various complaints filed with the FCC. Additionally, Sidley represents Tribune in appeals to the U.S. Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.    Effective June 12, 2009, Congress mandated that all full power television stations cease broadcasting analog signals and begin broadcasting over-the-air signals in digital

only ("DTV").  As noted in prior Applications, Sidley has long represented Tribune stations in

the policy, technical, and operational issues arising from this historic conversion.  During the

Fourth Interim Fee Period, Sidley continued to advise the Debtors on the FCC's evolving rules

and policies governing the build-out and operation of DTV stations, to advocate before the FCC

to waive and/or modify these rules and policies to conform with operational realities, as well as

to urge the FCC on behalf of the Debtors to authorize the use of new technologies to enhance the

ability of broadcasters to deliver reliable DTV signals.

19.    The DTV transition imposed substantial notification, licensing, and

reporting requirements, as broadcast stations implemented the digital signal, updated their call-

signs, and terminated their analog signals.  Sidley's professionals and communications specialist

drafted and filed all applications, reports, notifications, and other materials that were required to

be filed with the FCC in connection with the Debtors' 23 television stations and cable

"Superstation" WGN America.

**B.    Fee Applications (30390):  Hours: 404.50   Fees: $110,919.50**

20.    This matter category encompasses all tasks relating to the preparation and

filing of Sidley's monthly and quarterly fee application requests to this Court.  In this Fourth

Interim Fee Period, Sidley's professionals and paraprofessionals drafted and filed Sidley's

eighth, ninth, and tenth monthly statements and reviewed and complied with the Court's Fee

Orders.  In addition, Sidley prepared and filed its third Quarterly Fee Application Request to this

Court.  Sidley's professionals and paraprofessionals also continued to work with the Fee

Examiner to address and resolve the Fee Examiner's questions concerning Sidley's first

Quarterly Fee Application Request.  In mid-November, Sidley received and reviewed the Fee

Examiner's final report and recommendations to the Court concerning the first Quarterly Fee

Application Request.  Sidley's first Quarterly Fee Application Request was subsequently
approved by this Court.

**C.    Executory Contracts and Leases (30410):   Hours: 163.30   Fees: $79,070.00**

21.    The Debtors in these cases are party to approximately 45,000 executory
contracts and unexpired leases.  During the Fourth Interim Fee Period, Sidley's professionals
continued their analysis and review of such contracts and leases and assessed the legal
implications of assumption, assignment, or rejection under section 365 of the Bankruptcy Code.
Sidley's professionals have also continued to address numerous inquiries from contract
counterparties concerning the status of their contracts and leases.

(a)    Executory Contracts

22.    Throughout these chapter 11 cases, Sidley's professionals have assisted
the Debtors with obtaining court approval to assume, or to assume and assign, certain executory
contracts on terms favorable to the Debtors.  During the Fourth Interim Fee Period, Sidley's
professionals prepared a motion to authorize the assumption of a Master Services Agreement, as
amended, between Tribune Publishing and Hewlett-Packard Company ("HP"), which Tribune
Publishing estimates will result in cost savings of approximately $2.2 million through an agreed-
upon reduction in the rates paid to HP over the remaining five years of the agreement.  This
motion was granted by order dated November 25, 2009.  [Docket No. 2656.]

23.    Sidley's professionals also assisted the Debtors with evaluating the costs
and benefits associated with Tribune's software services agreement with Kenexa BrassRing, Inc.
Following such evaluation, and after reviewing the relative services and rates offered by other
vendors in the marketplace, Sidley's professionals prepared and filed a motion on behalf of
Tribune to reject the Kenexa BrassRing agreement so that Tribune could procure an agreement

with an alternate vendor under more favorable terms.  This motion was granted by order dated November 25, 2009.  [Docket No. 2658.]

      (b)    <u>Unexpired Leases</u>

     24.    During the Fourth Interim Fee Period, Sidley's professionals prepared and filed a motion seeking the assumption by Los Angeles Times Communications LLC of a distribution center located in Anaheim, California.  Although the lessor consented generally to the assumption of the lease agreement, on November 20, 2009, the lessor filed a limited objection seeking additional clarification of the terms governing the assumption and cure amount.  Sidley's professionals engaged with counsel to the lessor to resolve these issues and the motion was granted by revised order dated December 14, 2009.  [Docket No. 2834.]  The Anaheim distribution center lease represents the last of the Debtors' unexpired leases to be assumed or rejected in these chapter 11 cases, in accordance with section 365(d)(4) of the Bankruptcy Code and this Court's Order Authorizing Debtors to (I) Assume Certain Unexpired Leases of Nonresidential Real Property, and (II) Set Cure Amounts with Respect Thereto [Docket No. 1628] which, <u>inter alia</u>, consensually extended the deadline to assume or reject certain of the Debtors' remaining non-residential real property leases through and including December 31, 2009.

**D.**    **<u>Vendor Issues (30420):  Hours: 66.10  Fees: $34,537.50</u>**

     25.    In this period, Sidley's professionals continued their efforts to address vendor issues in these chapter 11 cases.  For example, Sidley's professionals continued to address issues concerning postpetition vendor performance, which required Sidley's professionals to review existing contracts between the Debtors and relevant vendors and, in some cases, arrange and participate in calls with the Debtors' business personnel, vendors, and vendor's counsel to ensure or facilitate continued vendor performance.

**E.**    **Use/Sale/Lease of Assets (30430):   Hours: 34.00   Fees: $16,575.00**

26.    Sidley's professionals remained engaged in negotiating and documenting transactions for the use, sale, and lease of assets on behalf of the Debtors, both in connection with these chapter 11 cases and with Sidley's ongoing representation of the Debtors in their ordinary course of business.  For example, during the Fourth Interim Fee Period, Sidley's professionals coordinated with the Debtors and the Debtors' outside real estate counsel with respect to the sales of two parcels of "excess" property owned by the Debtors in Hicksville, New York and Countryside, Illinois.  A section 363 motion for the sale of the Hicksville property was filed on September 4 (Docket No. 2096) and was granted by order dated October 2 (Docket No. 2268); a section 363 motion for the sale of the Countryside property was filed on November 25 (Docket No. 2666) and was granted by order dated December 14 (Docket No. 2831).  Sidley's professionals also reviewed and analyzed certain proposed postpetiton contracts on behalf of certain of the Debtors, to determine whether such contracts were in the ordinary course of the Debtors' businesses.

**F.**    **DIP Financing/Cash Collateral (30440):    Hours: 31.10   Fees: $21,195.00**

27.    During the Fourth Interim Fee Period, Sidley's professionals prepared and documented further amendments to the Debtors' postpetition financing facility, in order to facilitate and partial pay-down of the indebtedness incurred thereunder.  Sidley's professionals also continued to advise the Debtors' senior management with respect to compliance with the facility's terms governing various proposed business and financial transactions.

**G.**    **Insurance Matters (30450): Hours: 10.60   Fees: $7,200.00**

28.    Sidley's professionals worked with the Debtors, their outside insurance counsel, and various insurance providers to resolve certain insurance coverage issues and to advise upon the impact of theses chapter cases on the Debtors' insurance and risk management

procedures. Sidley's professionals also reviewed and addressed various legal issues arising in connection with the Debtors' primary and excess liability policies covering certain prepetition lawsuits pending against the Debtors, including the Neil, Faggio, and Gutman matters.

**H.** **Committee-Related Matters (30460): Hours: 64.50    Fees: $54,466.50**

29.     Sidley's professionals continue to work diligently to maintain a cooperative and responsive relationship with the Debtors' major creditor constituencies, including the Committee and the steering committee comprised of the Debtors' senior lenders (the "Steering Committee"). Sidley's professionals conferred on pending motions and case administration issues and participated in numerous conference calls and meetings with the Committee, Steering Committee, and their professionals. During this Fourth Interim Fee Period, Sidley participated in regularly scheduled weekly conference calls with the professionals of the Committee in order to address case issues as they arose and to apprise the Committee of the progress being made in these chapter 11 cases and with the development of the Debtors' plan of reorganization and disclosure statement.

**I.** **Litigated Matters (30470): Hours: 5,892.70    Fees: $2,616,732.50**

30.     During the Fourth Interim Fee Period, Sidley's professionals represented the Debtors in a variety of litigated and contested matters. The Debtors were involved in over a hundred active or threatened lawsuits as of the Petition Date, all of which have been stayed pending these chapter 11 cases. Sidley's professionals continued their efforts in advising the Debtors' internal legal department, outside counsel, opposing counsel, and claimants as to the effect of the automatic stay on pending litigation and the bankruptcy claims process.

(a)     Leveraged ESOP Transactions

31.     At this juncture of the Debtors' chapter 11 cases, a major remaining task has been to address and resolve all outstanding issues relating to the series of transactions that

returned Tribune to private ownership in 2007 (the "Leveraged ESOP Transactions")—either

through settlement or, to the extent required, litigation—so that a consensual plan of

reorganization can go forward.  Toward this end, Sidley's professionals have expended

considerable efforts in the review and analysis of these transactions and certain debt financings,

including substantial document review and legal and factual analyses concerning any potential

fraudulent transfer or other liability implications of these transactions.

32.    At the same time, Sidley's professionals have also continued to cooperate

with the Committee, Law Debenture Trust Company of New York ("Law Debenture"),[4] and

other creditor constituencies with respect to their independent reviews of the Leveraged ESOP

Transactions.  To that end, Sidley's team of professionals and paraprofessionals have expended a

substantial amount of time throughout the Fourth Interim Fee Period responding to requests for

documents and information to the Committee and other major constituencies in these cases.

33.    In connection with the Committee's formal document requests and

pursuant to an agreement between the Debtors and the Committee to cooperate with such

requests, Sidley's professionals have collected and reviewed several hundreds of thousands of

pages of documents for relevance and privilege, including corporate documents, financial

records, board of directors' minutes and resolutions, and electronic computer files from certain

of the Debtors' employees, for production to the Committee.  The collection, review, and

analysis of such a volume of documents in connection with the Committee's requests are

substantial undertakings, requiring a team of professionals, paraprofessionals, litigation support

---

[4] As noted in Sidley's third Quarterly Fee Application Request, on August 26, Sidley received, reviewed, and analyzed the Rule 2004 motion of Law Debenture, which sought leave to conduct independent discovery relating to the Leveraged ESOP Transactions.  This motion was resolved by stipulated order entered by the Court on September 25, 2009, in which the Debtors and named third parties agreed, subject to appropriate confidentiality agreement, to provide Law Debenture with copies of documents produced (or to be produced) to the Committee and to allow Law Debenture to participate in certain depositions, if taken by the Committee in connection with its investigation.

specialists, and other staff. Sidley's professionals have also received and reviewed documents produced by third party entities that were responsive to document requests from the Committee and have assisted with coordinating the document productions of third parties. Throughout this process, Sidley's team has worked closely with the Debtors' senior management to advise on the legal issues implicated by the Committee's document production requests.

      (b)    <u>Stay Relief Motions</u>

      34.    As in most chapter 11 cases, the Debtors are faced with periodic requests for relief from the automatic stay. Specifically, the Debtors have received fifteen (15) requests for relief from stay since the commencement of these cases. Sidley's professionals in the bankruptcy and litigation practice groups have devoted time to assess and respond to each of the stay relief motions and to prepare filings to the Court with respect to the contested motions. Sidley's professionals continued their efforts during this period to resolve the pending motions for relief from stay filed by various claimants and three (3) such motions were resolved during this period by order and/or by consensual agreement of the parties: (i) the motion of Warren Beatty was granted by order dated November 10, 2009, allowing the underlying prepetition litigation to continue in California to judgment on the merits; (ii) the motion of Allen Francisco was resolved by stipulation filed under certification of counsel and approved by the Court on November 25, 2009, modifying the automatic stay to permit the parties to proceed with pretrial settlement conference to liquidate the underlying prepetition litigation claim; and (iii) with respect to the motion of Ariel Brignole, the parties reached a settlement in principle of the request to lift the stay, subject to documentation. Furthermore, Sidley's professionals researched, drafted, and filed a motion on November 11, pursuant to Bankruptcy Rule 9019, seeking to settle all claims underpinning Dr. Michael Gutman's motion for relief from the stay,

which has been opposed by the Committee and continued to January 28, 2010 for an evidentiary hearing.

      (c)      Adversary Proceedings

      35.      Sidley's professionals continued to advance the adversary proceeding to determine Tribune Media Services, Inc.'s rights with respect to the ownership of the rights to the Dick Tracy comic book character, an asset the Debtors believe may be of substantial value (the "Beatty Adversary," Adv. No. 09-50486). As noted above, the Court granted Beatty's motion for relief from the automatic stay, allowing the underlying prepetition litigation to continue in California to judgment on the merits. At the same time, the Court denied Beatty's motion to dismiss the Beatty Adversary and retained jurisdiction over any recovery sought by Beatty. Sidley's professionals reviewed and analyzed the Court's ruling and their options for resolving the Beatty Adversary going forward, in preparation for a status hearing on the matter on December 1, 2009.

**J.      Travel Time (30480):  Hours: 121.00   Fees: $39,117.75**

      36.      During the Fourth Interim Fee Period, Sidley's professionals spent time traveling to Wilmington, Delaware to attend the Debtors' omnibus hearings. In addition, Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and various creditor constituencies. The hours reflect non-working travel time and the fees requested in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**K.      Labor Issues (30490):  Hours: 91.50   Fees: $57,292.00**

      37.      Approximately 15% of the Debtors' employees are represented by labor unions. During the Fourth Interim Fee Period, Sidley's professionals continued to address and analyze a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors' collective bargaining agreements, multiemployer pension plans, and obligations thereunder.

38.     In addition, Sidley's professionals have continued to work with the Debtors to respond to various bankruptcy-related issues and questions raised by some of the Debtors' labor contracts.  Specifically, Sidley's professionals in the bankruptcy and employee benefits practice groups reviewed, researched, and analyzed the implications of the sale of substantially all of the assets of the Chicago Sun-Times newspaper business (in connection with its chapter 11 proceedings) on the multiemployer pension plan shared between the Chicago Sun-Times and the Chicago Tribune Company.

L.     **Plan and Disclosure Statement (30500):  Hours: 1,770.50   Fees: $1,055,761.50**

39.     For the past several months, Sidley's professionals have been engaged in discussions with the Debtors and their principal creditor constituencies concerning the structure and terms of a consensual plan of reorganization.  During the Fourth Interim Fee Period, Sidley's professionals made significant progress in the development of the Debtors' proposed plan and disclosure statement.  Sidley's professionals met and conferred on a regular basis with the Debtors' senior management to evaluate, analyze, and formulate the structure and terms of the Debtors' plan.  Sidley's professionals in the bankruptcy, corporate, tax, litigation, and FCC regulatory practice groups have continued to conduct the extensive operational, financial and legal analyses necessary to the development of collaborated on researching and analyzing a variety of legal issues raised by the plan, confirmation, and eventual emergence.  These analyses have formed the basis of detailed plan materials.  Sidley's professionals continued to prepare the disclosure statement to accompany the plan, which entailed the review and analysis of materials relevant to the Debtors' past and present business operations, significant prepetition liabilities, and events leading up to and since the filing of these chapter 11 cases.  Sidley's professionals also commenced the preparation of solicitation materials in connection with balloting and voting on the plan.

40.    This process has involved substantial ongoing communications, meetings, and negotiations between Sidley's professionals and the professionals for the Committee, the Steering Committee, and other creditor constituencies.  During this period, detailed term sheets and draft plans of reorganization were shared with the Committee and Steering Committee. Sidley's professionals have also developed and shared with the Debtors' main creditor constituencies the proposed post-effective date capital structure, and have achieved consensus among the Debtors' major constituencies that the Debtors' businesses remain viable with a clear path forward.

41.    In aid of the Debtors' ongoing efforts to develop their plan of reorganization, on November 13, 2009, Sidley's professionals filed a motion requesting a further extension of the Debtors' exclusive period within which to file a chapter 11 plan and solicit acceptances thereto (the "Third Exclusivity Motion").  The Third Exclusivity Motion was opposed by certain of the Debtors' creditor constituencies, which necessitated substantial efforts on the part of Sidley's professionals to review and respond to the objections that were filed by such creditors with the Court, and also to engage such creditors to pursue consensual resolution of their objections.  By order entered December 14, the Court granted the Debtors an extension of the exclusivity period through and including February 28, 2010, and the extension of the exclusive right to solicit acceptance of such plan through and including April 29, 2010.

**M.    Professional Retention (30510):   Hours: 46.50    Fees: $21,907.00**

42.    The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing the litigation, real estate, tax, accounting, and other needs of their business operations. During the Fourth Interim Fee Period, Sidley's professionals assisted the Debtors' existing professionals in filing supplemental disclosures to extend their retention applications to the

20

subsequently-filed chapter 11 case of Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club, LLC).

43.     In addition, Sidley's professionals prepared and filed an additional supplement to the list of the Debtors' ordinary course professionals ("OCP") and coordinated with the Debtors' legal department and financial advisors to prepare and file monthly and quarterly reports of proposed payments to OCPs.  In connection therewith, Sidley's professionals assisted one OCP in preparing and filing an application to the Court for allowance of its fees, in connection with the Court's order governing the retention and compensation of OCPs.

**N.     Tax Issues (30520):  Hours: 73.80    Fees: $44,266.50**

44.     During the Fourth Interim Fee Period, Sidley's professionals reviewed and analyzed a variety of tax issues on behalf of the Debtors, both arising from and in connection with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in the ordinary course of the Debtors' business.  For example, Sidley's professionals reviewed and analyzed tax-related claims and liabilities, considered the tax implications of proposed transactions, handled appeals of tax assessments, advised the Debtors with respect to potential settlements of tax claims, and communicated with taxing authorities.

**O.     Claims Processing (30530):  Hours: 162.70    Fees: $88,580.50**

45.     During the Fourth Interim Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases, covering the full spectrum of potential liabilities.  To date, over 6,333 proofs of claim have been filed in these chapter 11 cases.  Sidley's professionals assigned to handle claims-related matters established regular conference calls with the Debtors' financial advisors, Alvarez and Marsal, in order to coordinate the processing of the proofs of claim, including evaluating the legal sufficiency of the claims and possible objections thereto.

46.    In months prior to the Fourth Interim Fee Period, Sidley's professionals have filed and the Court has sustained four non-substantive omnibus claims objections to disallow and expunge approximately $122 million in duplicate or otherwise redundant claims, claims that fail to specify the Debtor against which the claim is asserted and amended and superseded claims.  During the Fourth Interim Fee Period, Sidley's professionals prepared and filed the Debtors' 5th through 11th omnibus objections, covering 550 claims for an approximate aggregate face amount of $1,317,655,550 in requested reductions.  Sidley's professionals also prepared and filed a motion to establish certain claims allowance procedures, which was granted on November 25, 2009, and which procedures are intended to substantially streamline the Debtors' claims resolution process going forward.

**P.    Business Operations (30550):   Hours: 201.30    Fees: $120,194.50**

47.    During the Fourth Interim Fee Period, the Debtors have continued to face an unprecedented adverse business environment due to the deteriorating economic climate and the unique pressures faced by their publishing and broadcasting businesses, including, among other challenges, significant pressure on advertising revenue.  Sidley continued to represent the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business to facilitate the Debtors' efforts to stabilize and reposition their businesses through cost saving and revenue enhancing strategies.

**Q.    Case Administration (30560):   Hours: 308.90    Fees: $169,470.00**

48.    During the Fourth Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings to the Debtors, the Committee, the United States Trustee, and other interested parties, and maintaining a schedule of critical dates and deadlines. On a periodic basis during this Fourth Interim Period, Sidley's professionals participated in

status calls with the Debtors' senior management and financial advisors to discuss pending

motions and issues and the outcome of each hearing.  In addition, Sidley's paraprofessionals are

responsible for monitoring the docket for all filed pleadings and preparing and distributing a

daily status report to the Debtors' senior management and Sidley professionals.

**R.**     **Creditor Communications (30570):   Hours: 12.60   Fees: $6,435.00**

49.     Throughout the Fourth Interim Fee Period, Sidley's professionals have

responded to numerous inquiries and communications from individual creditors as well as from

representatives of larger groups of the Debtors' creditor constituencies.

**S.**     **Bankruptcy Schedules (30580):   Hours: 9.10   Fees: $4,834.00**

50.     Sidley's professionals continue to work in cooperation with the Debtors

and their financial advisors at Alvarez and Marsal to analyze the Debtors' schedules of assets

and liabilities and statements of financial affairs, with the goal of ensuring accuracy and

completeness of all financial disclosures.

**T.**     **Employee Issues (30590):   Hours: 655.90   Fees: $332,296.00**

51.     During the Fourth Interim Fee Period, Sidley's professionals in the

bankruptcy and employment & labor practice groups remained substantially engaged in assisting

the Debtors with obtaining approval of their motions to implement the proposed 2009

management incentive plan ("MIP") and to make payouts for earned 2008 MIP awards to certain

of the Debtors' senior executives (collectively, the "2009 MIP Motion").  Specifically, Sidley's

professionals continued their review and analysis of the objections and responses that were filed

to the 2009 MIP Motion and researched various legal and factual issues raised therein.  Sidley's

professionals prepared and filed numerous responsive pleadings in support of the relief requested

in the 2009 MIP, all of which required the substantial efforts of Sidley's professionals and

paraprofessionals assigned to handle to matter.

52.     Sidley's professionals also assisted the Debtors in responding to several rounds of union discovery requests in connection with the 2009 MIP Motion, including, without limitation, depositions of union and Debtor fact and expert witnesses as well as document discovery.  The Debtors and the union also each filed a motion in limine to exclude the other party's proposed expert witness.  Sidley's professionals assisted the Debtors in filing such motion and in preparing a response to the union's motion in limine.  Sidley's professionals also assisted the Debtors in preparing, and in negotiating with the union and the United States Trustee, a joint pretrial memorandum pursuant to the Court's requirements.  The 2009 MIP Motion and the parties' respective motions in limine were heard by the Court as contested matters on September 25, 2009.  On September 30, the Court entered an order authorizing the Debtors to pay the earned 2008 MIP awards to eligible executives.  The Court has taken all matters relating to the 2009 MIP under advisement.

53.     In addition to the foregoing, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, responded to numerous information requests of current and former employees, assembled and analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**U.      Asset Disposition (30600):   Hours: 509.40    Fees: $289,412.50**

54.     During the Fourth Interim Fee Period, Sidley's professionals continued to advise the Debtors in connection with the disposition of the Chicago Cubs Major League Baseball franchise and related assets (the "Cubs Transaction").  Sidley's efforts on behalf of the Debtors to finalize and obtain approval of the Formation Agreement and disposition of the Chicago Cubs and related assets required significant consultation with the Debtors' major

creditor constituencies (with the Committee and Steering Committee fully supporting the Cubs

Transaction) and the Office of the United States Trustee.

55.    As noted in Sidley's third Quarterly Fee Application Request, on August

24, 2009, Sidley's professionals filed a motion seeking approval for Tribune's entry into the

Formation Agreement and to perform all transactions necessary to effect the contribution of the

Cubs' assets and business to "New Cubs LLC" (as defined therein).  On the same day, it was

announced that the principal entity holding the assets of the Cubs' business—Tribune CNLBC—

would commence a chapter 11 case of its own as a means of implementing the transactions.

Sidley's professionals prepared and presented to the Court a motion to approve procedures for

providing advanced notice of the Cubs Transaction to all creditor constituencies of Tribune

CNLBC and other procedures relating to the transactions.  The Court approved the notice and

procedures motion on August 31, 2009 and authorized Tribune and the other Debtors to perform

their obligations under the Formation Agreement on September 24, 2009.

56.    Sidley's professionals prepared the petition, supporting documents, and

first day pleadings in preparation for the chapter 11 filing of Tribune CNLBC, which took place

on October 12, 2009.  Meanwhile, Sidley's professionals worked in tandem with the Debtors'

financial advisors at Alvarez and Marsal, and the Debtors' claims and noticing agent, Epiq, to

ensure that all known or potential creditors of Tribune CNLBC had been provided notice of the

transaction.  By orders entered on October 14, 2009, the Court granted Tribune CNLBC's joint

administration motion and motion to approve the proposed contribution of the Chicago Cubs and

related assets to New Cubs LLC.  The transactions under the Formation Agreement and the

related agreements thereto closed on October 27, 2009.  Successful consummation of the

transactions relating to the Cubs assets and business has secured hundreds of millions of dollars in cash for the Debtors' estates and is a significant step forward in the Debtors' chapter 11 cases.

## EXPENSES INCURRED

57.    Sidley has incurred expenses of $221,808.01 in connection with its services rendered to the Debtors during the Fourth Interim Fee Period.  These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, and in-house document production.  Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in this case, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in this case.

58.    Computer research and information retrieval services are charged on a time, item and/or search-type basis which takes advantage of certain discounts that Sidley is able to negotiate with the relevant service providers because of the Firm's size and volume of usage. The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's costs.

59.    Sidley submits that all travel expenses incurred during the period covered by this Application were necessary and reasonable under the circumstances.  In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

60.     Sidley's normal billing practices, as set forth in the pleadings supporting its retention in these chapter 11 cases, include standard secretarial services as part of normal overhead.  For certain projects involving large and/or time-sensitive administrative and logistical requirements resulting from client needs, Sidley utilizes the services of third-party providers in the place of clerical personnel on staff during normal business hours and bills those services to the client at Sidley's cost for such services.  During the Fourth Interim Fee Period, Sidley charged a total of $1,079.85 relating to outside word processing and/or document binding/drilling services that were billed to the Debtors at cost; that is, no markup for such services is applied by Sidley.  In connection with Sidley's analysis of the Leveraged ESOP Transactions, and production of the several hundreds of thousands of pages of documents to the Committee in connection therewith, Sidley utilized the services of contract attorneys to review documents provided to Sidley for relevance and privilege. During the Fourth Interim Fee Period, Sidley charged a total of $34,594,05 relating to contract attorney services that were billed to the Debtors at cost.

61.     A detailed breakdown of Sidley's expenses incurred in rendering services to the Debtors during the period covered by this application is incorporated into this Application as part of <u>Attachment B</u> hereto.

<u>**REVIEW OF APPLICABLE LOCAL RULE**</u>

62.     The undersigned has reviewed the requirements of Local Rule of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this application substantially complies with Rule 2016-2.

## NOTICE

63.     Notice of this Application has been served upon the Notice Parties specified in the Fee Orders.  In accordance with the terms of the Fee Orders, Sidley respectfully submits that no other or further notice is required.

## NO PRIOR REQUEST

64.     Other than the applicable Monthly Fee Applications, no previous application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $5,292,782.75 and reimbursement of expenses in the amount of $221.808.01, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this fourth Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: January 15, 2010

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION