# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Requested Hearing Date: February 18, 2010 at 10:00 a.m. ET** |
| | **Requested Objection Deadline: February 11, 2010 at 4:00 p.m. ET** |

## MOTION OF THE DEBTORS
## FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a)
## AND FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT
## AGREEMENTS BETWEEN CERTAIN DEBTORS AND JENNIFER
## FAGGIO, AND BETWEEN CERTAIN DEBTORS AND THE CITY OF NEW HAVEN

Tribune Company and most of its wholly owned subsidiaries, each of which is a

debtor and debtor-in-possession (each a "Debtor" and collectively, the "Debtors"), hereby submit

this motion (the "Motion") seeking entry of an order pursuant to sections 105(a) of title 11 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

United States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") approving (i) that certain settlement agreement

by and between The Hartford Courant Company (the "Hartford Courant"), a Debtor, on the one

hand and Jennifer Faggio, both individually and as the Conservator of the Estate of Andrew

Faggio ("Faggio", and collectively with the Hartford Courant, the "Parties") on the other hand

(the "Faggio Settlement Agreement"), and (ii) that certain settlement agreement by and between

on the one hand the Hartford Courant and on the other hand the City of New Haven (the "City of

New Haven") (the "New Haven Settlement Agreement", and together with the Faggio Settlement

Agreement, the "Settlement Agreements").  In support of this Motion, the Debtors respectfully

represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors, including the

Hartford Courant, each filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code, with the exception of Debtor Tribune CNLBC, LLC (formerly known as Chicago National

League Ball Club, LLC), which filed a voluntary chapter 11 petition on October 12, 2009.  The

Debtors' chapter 11 cases have been consolidated for procedural purposes only by applicable

orders of the Bankruptcy Court.

2.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee.

3.      On December 18, 2008, the Office of the United States Trustee appointed

an official committee of unsecured creditors in these cases.

2

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## RELEVANT BACKGROUND

### A.      The State Court Action

5.      On or about December 29, 2004, Faggio commenced a personal injury action in the Superior Court of the Middlesex Judicial District at Middletown Connecticut entitled Jennifer Faggio, Conservator of Andrew Faggio and Jennifer Faggio vs. Leon Brown, et al., Docket No. X04 HHD CV 05-4034595 S (the "State Court Action"). On or about October 16, 2006, Faggio filed a Third Amended Complaint against Leon Brown and Hartford Courant alleging injuries on account of an incident occurring on or about January 31, 2003, involving the operation of a motor vehicle by an alleged employee of Hartford Courant. It is claimed in the State Court Action that, as a result of the incident, Mr. Faggio has been hospitalized in a minimally conscious state.

6.      At the time of the incident, Debtor Tribune Company, the ultimate parent company of Hartford Courant, maintained certain insurance policies applicable to Hartford Courant. The deductible obligation in connection with the aforementioned insurance coverage is $1 million (the "Deductible Amount"). As of the Petition Date, the Debtors had expended approximately $522,298.04 in relation to insurance deductible obligations under the insurance coverage applicable to the State Court Action, leaving a remaining insurance deductible of $477,701.96.

46429/0001-6289711v1

7.      The City of New Haven subsequently moved to intervene in the State
Court Action as an intervening plaintiff asserting a worker's compensation lien arising from
amounts it has expended as a result of the January 21, 2003 incident.

8.      On the Petition Date, the Parties were scheduled to participate in non-
binding mediation before the Honorable Robert Holzberg, Judge of the Superior Court,
Middletown, Connecticut.  The mediation and the State Court Action were automatically stayed
pursuant to section 362(a) of the Bankruptcy Code.

**B.      Stipulation to Modify the Automatic Stay**

9.      On March 5, 2009, Faggio filed a Motion For Relief From Stay [Docket
No. 476] (the "Stay Relief Motion") requesting relief from the automatic stay provided to
Hartford Courant pursuant to section 362 of the Bankruptcy Code.  In the Stay Relief Motion,
Faggio sought relief from the automatic stay to allow the State Court Action to proceed to final
judgment.

10.      Subsequent to the filing of the Stay Relief Motion, the Parties entered a
stipulation modifying the automatic stay (the "Stay Modification Stipulation") to permit Faggio
to (a) proceed with mediation of the State Court Action before the Honorable Robert Holzberg,
Judge of the Superior Court, Middletown, Connecticut and (b) recover any settlements obtained
thereby from applicable insurance proceeds.

11.      In the Stay Modification Stipulation, Faggio waived any right to recover
any of the Deductible Amount and agreed that the remaining deductible amount would be
subtracted from any settlement reached through the contemplated mediation.  However, Hartford
Courant was obligated to advance the costs of the mediation, up to the Deductible Amount.  The

4

Stay Modification Stipulation was approved by order of this Court on April 9, 2009 [Docket No. 881], a copy of which is attached hereto as <u>Exhibit A</u>.

C.  **Mediation and Related Settlement**

12.  The Parties participated in mediation with Judge Holzberg on October 19, 2009.  Under the supervision of Judge Holzberg, the Parties, along with the Debtors' insurers, were able to reach a resolution of the State Court Action.  On January 22, 2010, subject to, among other things, approval by this Court, the Debtors and Faggio agreed to the terms of the Faggio Settlement Agreement completely resolving their dispute.

13.  Additionally, on January 29, 2010, subject to, among other things, approval by this Court, the Debtors and the City of New Haven agreed to the terms of the New Haven Settlement Agreement completely resolving their dispute.

**THE FAGGIO SETTLEMENT AGREEMENT**

14.  On January 22, 2010, the Hartford Courant and Faggio entered into the Faggio Settlement Agreement.[2]  The Parties initially negotiated a settlement amount of $8,000,000.00.  Thereafter, and in accordance with the Stay Modification Stipulation, Faggio agreed to subtract the remaining deductible amount from the settlement amount.  As of the Parties' entry into the Faggio Settlement Agreement, the Debtors had expended additional money in mediation costs in relation to the insurance deductible obligations, leaving a remaining insurance deductible of $420,522.00.  Accordingly, pursuant to the Faggio Settlement Agreement, the Debtors' insurers will pay to Faggio the sum of $5,579,478.00 (the "<u>Faggio Settlement Amount</u>"), and the Debtors' insurers will pay to the City of New Haven the sum of

---

[2] Consistent with the confidentiality provisions of the Faggio Settlement Agreement, the Debtors have provided the Faggio Settlement Agreement to the Creditors Committee and the Steering Committee of the Lenders, subject to their respective confidentiality agreements, and will make it available to the United States Trustee upon request.

$2,000,000.00 in satisfaction of a worker's compensation lien held by the City of New Haven

(the "New Haven Settlement Amount"). The Faggio Settlement Amount and the New Haven

Settlement Amount are collectively referred to as the "Total Settlement Amount".

15.     Consistent with the terms of the Stay Modification Stipulation and the

order approving the Stay Modification Stipulation, Faggio has agreed that neither the Hartford

Courant nor any of the Debtors shall pay any portion of the Total Settlement Amount and no

portion of the Total Settlement Amount shall be enforced against any property or assets

belonging to the Hartford Courant or any other Debtor.

16.     A summary of certain additional salient terms of the Faggio Settlement

Agreement is as follows:[3]

> (i)  Payment of the Total Settlement Amount shall be subject to any necessary
> approval of the Bankruptcy Court, the Worker's Compensation Commission and
> the Connecticut Probate Court.
>
> (ii) Faggio shall irrevocably and unconditionally release the Hartford Courant, all
> of its present, former or future agents, representatives, employees, directors,
> officers, attorneys, subsidiaries, divisions, parent companies (including Tribune
> Company), assigns, affiliates, shareholders, predecessors, insurers (including, but
> not limited to, American Alternative Insurance Company), and successors (the
> "Releasees"), from and of any and all debts, obligations, losses, costs, attorneys'
> fees, promises, covenants, agreements, contracts, endorsements, bonds,
> controversies, suits, actions, causes of action, rights, liabilities, judgments,
> damages, expenses, claims, counterclaims, cross-claims, or demands, in law or
> equity, asserted or unasserted, express or implied, foreseen or unforeseen, real or
> imaginary, suspected or unsuspected, known or unknown, liquidated or non-
> liquidated, of any kind or nature or description whatsoever, arising through the
> date of the Settlement Agreement that Faggio ever had, presently have, may have,
> or claim or assert to have, or hereinafter has, may have, or claim or assert to have,
> against any of the Releasees, including, but not limited to, all claims and demands
> which are directly or indirectly the subject matter of, arise out of, incidental to,

---

[3] The terms set forth herein are intended only as a summary of the terms of the Settlement Agreement. The Motion shall not in any way supersede or alter the terms of the Settlement Agreement.

asserted in, could have been asserted in, are connected with or related in any way whatsoever to the subject matter of the State Court Action.

(iii) Upon payment of the Total Settlement Amount, the State Court Action will be withdrawn from the Superior Court docket.

(iv) The Faggio Settlement Agreement does not contain an admission of fault.

(v) The Faggio Settlement Agreement is subject to a confidentiality provision, under which the Faggio shall not disclose, or permit to be disclosed, any facts, allegations, or details of Faggio's claims.

(vi) Any disputes arising under the Faggio Settlement Agreement shall be resolved in the state courts of the State of Connecticut; provided, however, that Judge Holzberg shall retain jurisdiction for the purposes of overseeing and enforcing the confidentiality agreement contained in paragraph 11 of the Settlement Agreement.

## THE NEW HAVEN SETTLEMENT AGREEMENT

17.     On January 29, 2010, the Hartford Courant and the City of New Haven entered into the New Haven Settlement Agreement.[4]  A summary of the salient terms of the New Haven Settlement Agreement is as follows:[5]

(i)  Payment of the New Haven Settlement Amount shall be subject to any necessary approval of the Bankruptcy Court, approval of the Worker's Compensation Commission and the completion and execution of a full and final settlement agreement between the Debtors and Faggio.

(ii) Upon payment of the New Haven Settlement Amount, the City of New Haven irrevocably and unconditionally forever releases, remises, acquits and discharges the Releasees from and of any and all debts, obligations, losses, costs, attorneys' fees, promises, covenants, agreements, contracts, endorsements, bonds, controversies, suits, actions, causes of action, rights, liabilities, judgments, damages, expenses, claims, counterclaims, cross-claims, or demands, in law or equity, asserted or unasserted, express or implied, foreseen or unforeseen, real or imaginary, suspected or unsuspected, known or unknown, liquidated or non-liquidated, of any kind or nature or description whatsoever, arising through the date of the New Haven Settlement Agreement as executed by the intervening

---

[4] Consistent with the confidentiality provisions of the New Haven Settlement Agreement, the Debtors have provided the Settlement Agreement to the Creditors Committee and the Steering Committee of the Lenders, subject to their respective confidentiality agreements, and will make it available to the United States Trustee upon request.
[5] The terms set forth herein are intended only as a summary of the terms of the New Haven Settlement Agreement.  The Motion shall not in any way supersede or alter the terms of the New Haven Settlement Agreement.

46429/0001-6289711v1

plaintiff, that it ever had, presently has, may have, or claims or asserts to have, or hereinafter has, may have, or claims or asserts to have, against any of the Releasees, including, but not limited to, all claims and demands which are directly or indirectly the subject matter of, arise out of, incidental to, asserted in, could have been asserted in, are connected with or related in any way whatsoever to the subject matter of the lawsuit.

(iii) Payment of the New Haven Settlement Amount shall be full and final satisfaction of the Worker's Compensation lien alleged by the City of New Haven.

(iv) The New Haven Settlement Agreement does not contain an admission of fault.

(v) The New Haven Settlement Agreement is subject to a confidentiality provision, under which the City of New Haven shall not disclose, or permit to be disclosed, any facts, allegations, or details of Faggio's claims.

(vi) Any disputes arising under the New Haven Settlement Agreement shall be resolved in the state courts of the State of Connecticut.

## RELIEF REQUESTED

18.    The Debtors seek entry of an order pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, substantially in the form attached hereto as Exhibit B, (i) approving the Debtors' entry into the Settlement Agreements and (ii) authorizing the Debtors' performance of all of their obligations under the Settlement Agreements.  As set out more fully below, the Debtors believe that entering into the Settlement Agreements constitute a reasonable exercise of the Debtors' business judgment.

## BASIS FOR RELIEF REQUESTED

A.    **The Settlement Agreements**

19.    The Debtors seek authority to enter into the Settlement Agreements pursuant to sections 105(a) of the Bankruptcy Code, and Bankruptcy Rule 9019.  Section 105(a) grants bankruptcy courts broad authority to enforce the provisions of the Bankruptcy Code under

8

equitable common law doctrines, providing, in relevant part, that "[t]he court may issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the
> court may approve a compromise or settlement. Notice
> shall be given to creditors, the United States trustee, the
> debtor, and indenture trustees as provided in Rule 2002 and
> to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Approval of a settlement under Bankruptcy Rule 9019 is committed

to the discretion of the court. Key3Media Group, Inc. v. Pulver.com, Inc., (In re Key3Media

Group, Inc.), 336 B.R. 87, 92 (Bankr. D. Del. 2005).

    20. In determining whether to approve a settlement under Bankruptcy Rule

9019, the court must decide whether "the compromise is fair, reasonable, and in the best interest

of the estate." In re TSIC, Inc., 393 B.R. 71, 78 (Bankr. D. Del. 2008) (quoting In re Louise's,

Inc., 211 B.R. 798 (D.Del. 1997)). In considering the best interest of the estate, the Court must

"assess and balance the value of the claim that is being compromised against the value to the

estate of the acceptance of the compromise proposal." Myers v. Martin (In re Martin), 91 F.3d

389, 393 (3d Cir. 1996) (citing Protective Committee for Independent Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)). In

making this determination, a court should consider four criteria: "(1) the probability of success in

the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay…; and (4) the paramount interest of the creditors." Id.

(referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,

390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249

(D.Del. 1998) (listing the Anderson factors as controlling whether a settlement should be

46429/0001-6289711v1

approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc. 211 B.R. 798, 801 (D. Del. 1997).

21.     The Settlement Agreements are the product of arm's-length negotiations between and among the Debtors, the Debtors' insurers, Faggio, and the City of New Haven. The Debtors believe that the terms of the Settlement Agreements are fair and reasonable and that the Settlement Agreements meet the requirements for approval under 9019(a) as described in the In re Martin criteria.

Application of the Martin Factors

22.     The probability of success in the litigation. With regard to this first aspect of the In re Martin factors, "the Court's task … is to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." In re Exide Technologies, 303 B.R. 48, 68 (Bankr. D. Del. 2003) (quoting In re Neshaminy office Bldg. Assoc., 62 B.R. 798, 803 (E.D.Pa. 1986)). The Settlement Agreements allow the Debtors to eliminate the uncertainties of personal injury litigation. Resolution of the State Court Claim through litigation would, at a minimum, expose the Debtors to additional defense costs and, possibly, to a substantial money judgment. Personal injury litigation like the State Court Action is highly fact sensitive and, in this case, there is no dispute that Andrew Faggio has sustained life altering injuries as a result of the incident. Although it is impossible to determine the potential outcome of the State Court Action with certainty, the Debtors could potentially face substantial civil liability if the State Court Action were resolved through litigation. The Settlement Agreements eliminate the uncertainty of personal injury litigation, and prevent the incurrence of additional defense costs. Under the terms of the Faggio Settlement Agreement, Faggio grants a full and complete release of any and all claims against all Releasees and, similarly, under the

10

New Haven Settlement Agreement, the worker's compensation lien asserted by the City of New Haven is satisfied in full. Additionally, under the terms of the Stipulation Modification Agreement, Faggio agreed to deduct the Deductible Amount from the initial settlement amount of $8,000,000.00 agreed to by the Parties. Therefore, the Settlement Agreements represent no out of pocket costs to the Debtors while shielding the Debtors from future litigation expense. Accordingly, the Debtors believe that the first of the In re Martin factors weighs in favor of approving the Settlement Agreements.

23.     The likely difficulties in collection. The Settlement Agreements do not present any issues regarding collection. Therefore, the second of the In re Martin factors weighs neither in favor nor against approval of the Settlement Agreements.

24.     The complexity of the litigation involved, and the expense, inconvenience and delay. If the State Court Action were to go to trial, the litigation would be very expensive and time consuming. Personal injury litigation, such as the State Court Action, is inherently fact sensitive and capable of producing complex, expensive litigation. Resolution of Faggio's personal injury claims at trial would involve litigation of many disputed facts, and would require substantial involvement of both fact and expert witnesses. As of the Petition Date, the Debtors had already incurred approximately $522,298.04 in costs connected with defense of the State Court Action, and there is substantial pre-trial discovery outstanding, including the depositions of additional witnesses. The Settlement Agreements, on the other hand, avoid the complexity and uncertainty of litigation, represent a full and complete resolution of the State Court Action with no further potential liability to the Debtors, and do so at no out of pocket costs to the Debtors or the Debtors' estates. Accordingly, the Debtors believe that the third of the In re Martin factors weighs in favor of approving the Settlement Agreements.

11

25.    <u>The paramount interest of the creditors</u>.  The Debtors believe that the
Settlement Agreements represent a substantial cost savings to the Debtors by eliminating the
Debtors' potential liability, by eliminating the Debtors' potential out of pocket costs, and by
resolving an outstanding dispute that would otherwise require the allocation of Debtors'
resources.  Additionally, the Creditors' Committee supports granting of the relief requested in
this Motion, which support indicates that the Settlement Agreements are in the best interest of
the creditors.  Accordingly, the Debtors believe that the fourth of the <u>In re Martin</u> factors weighs
in favor of approving the Settlement Agreements.

26.    For the reasons articulated above, the Debtors believe that the Settlement
Agreements meet and exceed the <u>In re Martin</u> factors used to guide when a Court should approve
a settlement agreement and are in the best interest of the Debtors' estates and their creditors.

## NOTICE

27.    Notice of this Motion has been provided to:  (i) counsel for Faggio; (ii) the
Office of the United States Trustee; (iii) counsel for the Committee; (iv) counsel for the Steering
Committee for the Debtors' prepetition loan facilities; (v) counsel for the administrative agent
for the Debtors' postpetition financing facility; (vi) the Debtors' applicable insurers; (vii) the
City of New Haven and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002, in
accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the
Debtors submit that no other or further notice is necessary.

46429/0001-6289711v1

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto as Exhibit B, approving the Settlement Agreements, authorizing the Debtors to perform all of their obligations in connection therewith, and granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware
February 1, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kevin T. Lantry
Kerriann S. Mills
Geo. Tyler Coulson
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

46429/0001-6289711v1