IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY *et al.*,<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br>Jointly Administered<br><br>Ref. Docket No. 3279<br><br>Hearing Date: 2/18/10 at 10:00 a.m.<br>Objection Deadline: 2/11/10 at 4:00 p.m. |

**AURELIUS CAPITAL MANAGEMENT, LP'S OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF ORDER AUTHORIZING FILING OF EXHIBIT UNDER SEAL**

　　　　Aurelius Capital Management, LP ("ACM"), manager of funds that are beneficial owners of certain bonds issued by a Debtor in the above-captioned chapter 11 cases, hereby objects (the "Objection") to the Motion of the Official Committee of Unsecured Creditors ("Committee") for entry of an order authorizing the Committee to file under seal Exhibit A to its motion seeking derivative standing to commence, prosecute and settle certain claims and counterclaims of the Debtors' estates.  In support of this Objection, ACM respectfully represents as follows:

**Background**

　　　　1.　　On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

　　　　2.　　On December 18, 2008, The United States Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of *all* unsecured creditors in these chapter 11 cases.  On February 1, 2010, the Committee filed its (a) Motion for Entry of an Order Granting Leave, Standing, and Authority

to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates (the "Standing Motion") and (b) Motion for Entry of Order Authorizing Filing of Exhibit Under Seal (the "Motion to File Under Seal"). The objection deadline for both the Standing Motion and the Motion to File Under Seal is set for February 11, 2010 with a hearing on both motions scheduled for February 18, 2010.

3. The Standing Motion alleges that, despite a failed auction process and a declining publishing business, Tribune Company (the "Company") nevertheless approved a LBO transaction in 2007 in which the Debtors became obligated on a massive amount of debt and paid billions of dollars to shareholders to take the Company private. Standing Motion, ¶6.

4. In order to finance the LBO, the Debtors became obligated on over $10 billion in debt (the "LBO Debt") under a Senior Credit Facility and a Bridge Facility (the "Facilities"). Standing Motion, ¶7.

5. These allegations form the basis for the Committee's decision to file the Standing Motion seeking authority to assert objections to the Facilities and to pursue other relief in connection with the LBO and the Facilities.

6. Concurrently with the filing of the Standing Motion, the Committee filed the Motion to File Under Seal which seeks permission to file under seal a draft complaint (the "Complaint") against the Lead Banks (as defined in the Standing Motion) in connection with their participation in the LBO.

7. If true, the allegations against the Lead Banks, which are previewed but not fully explained in the Standing Motion, could result in the recovery of billions of dollars of the Debtors' assets and the avoidance of billions of dollars of claims against the Debtors. As such, the allegations in the Standing Motion, which are presumably more fully explained in the

2

Complaint, are potentially central to the recoveries of certain of the Debtors' creditors.

8. Creditors are entitled to have the ability to publicly follow these proceedings unless there is a valid reason for limiting information. The Committee has the burden to demonstrate that the Complaint should be filed under seal. The Motion to File Under Seal, however, does not even attempt to set forth the information that must be protected or any basis for filing it under seal. Without establishing a permitted basis for filing the Complaint under seal, the Complaint must be filed as a document in the public record and available for all parties use in evaluating the Standing Motion and following these proceedings generally. Adjudicating the Standing Motion with a sealed Complaint sets bad precedent, namely that important aspects of the litigation can be conducted behind closed doors. Allowing the creeping confidentiality will effectively preclude parties from participating in and/or monitoring a process that should be conducted in the public domain.

## ARGUMENT

9. Voluntary discovery has been ongoing in these cases for some time. As a matter of administrative convenience, it is customary for discovery materials to be delivered with the provisional understanding that the materials will be kept confidential since large number of pages are being delivered without regard to whether they will ultimately be used in litigation. However, rather than revisiting the alleged confidential nature of the information used in the Complaint and requiring the producing parties to establish a compelling justification for redacting portions of the Complaint, the Committee has chosen to file the entire Complaint under seal.

10. The Committee's Motion to File Under Seal does not even attempt to meet the standard required by Section 107 of the Bankruptcy Code in order to seal documents and

prevent public access to documents and information. The Committee's Motion to File Under Seal summarily states "[t]he Draft Complaint contains confidential information" and "the Draft Complaint contains quotations and paraphrases" from information that the producing parties have characterized as being confidential. Motion to File under Seal, ¶¶ 5, 9.

11. Unlike in the present case where the Committee is actively seeking to seal the Complaint, unsecured creditors committees most often advocate for transparency, including compliance with the standards set forth in Section 107.

12. In <u>Lyondell Chemical Company</u>, 09-10023 (REG-SDNY), it was the creditors' committee that filed a motion to designate the complaint as a public document when faced with a similar vague and broad provision in a generic confidentiality agreement [Docket No. 2038]. In <u>Lyondell</u>, the complaint was filed as a public record.

13. Here, as in <u>Lyondell</u>, creditors and other parties in interest cannot be prohibited from viewing and utilizing documents filed in the record simply because of an overbroad and inapplicable confidentiality agreement negotiated for use in another context. In fact, the Committee does not argue otherwise. The Committee does not set forth any specific facts establishing that it believes the information is protected. The Committee does not allege why it believes the entire Complaint should be protected. The Committee does not attempt to justify its request under the standard set by Section 107. The Committee's motion must be denied.

A. **<u>Court Records are Presumptively Public</u>**

14. Section 107 of the Bankruptcy Code, 11 U.S.C. § 107 ("<u>Section 107</u>"), compels public access to "a paper filed in a case under [chapter 11] and dockets of a bankruptcy court," except to the limited extent necessary to protect a party in interest from the disclosure of, (i) "a trade secret or confidential research, development, or commercial information," 11 U.S.C. §

107(b)(1), (ii) "scandalous or defamatory matter," 11 U.S.C. § 107(b)(2), or (iii) information that "would create undue risk of identity theft or other unlawful injury … ." 11 U.S.C. § 107(c). Section 107 sets forth the universe of information protected by a bankruptcy court in determining whether to seal records from public view. "Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the express exceptions in § 107(b) or (c), it must be open to public inspection." In re Food Mgmt. Group, LLC, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007).

15.    In compelling public disclosure of bankruptcy court filed documents, Section 107 embodies and codifies powerful public policy considerations favoring the transparency of judicial proceedings. See, e.g., Video Software Dealer's Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.) 21 F.3d 24, 26 (2d Cir. 1994) ("This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard the integrity, quality, and respect in our judicial system'…") (internal citation and quotation marks omitted). The broad societal interest in judicial transparency has been repeatedly identified as a critical consideration in determining when to ban public access to information in bankruptcy cases. See Food Mgmt., 359 B.R. at 553 ("The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved …"); Gitto v. Worchester Telegram & Gazette (In re Gitto Global Corp.), 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.") (quoting Fern v. United States Trustee (In re Crawford), 194 F.3d 954 968 (9th Cir. 1999)).

16.    The party seeking to restrict public access to filings with a bankruptcy court has

the heavy burden of demonstrating that the material sought to be maintained under seal falls within an exception to the rule in favor of public filings. See Food Mgmt., 359 B.R. at 561. Moreover, where, as here, papers are subject to a confidentiality agreement, a party who seeks to maintain such documents under seal is nonetheless required to "make particularized requests for redaction with compelling justifications for each request." See Dept of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 487 (S.D.N.Y. 1996).

17. The Committee has made no assertion regarding the commercial value or commercial sensitivity of material contained in documents designated by them or any of the parties to the agreements as confidential. As explained below, the vague and conclusory assertions in the Committee's Motion to File Under Seal does not satisfy the heavy burden to show that the matter sought to be maintained sealed from public disclosure in the proposed Complaint falls within any of the exceptions set forth in Section 107.

**B.    The Committee has not Established that any Information is Confidential and Protected by Section 107**

18. The purpose of the exception for confidential information provided for by Section 107(b)(1) is to protect business entities from disclosure of information "that could reasonably be expected to cause … [them] commercial injury." In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003). Consistent with this purpose, "commercial information" is information that would cause an "unfair advantage to competitors by providing them information as to the commercial operations …." See Orion Pictures., 21 F.3d at 277 (quoting Ad Hoc Protective Comm. for 10½% Debenture Holders v. Intel Corp., (In re Intel Corp.), 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)). The Committee simply alleges that "[t]he Draft Complaint contains confidential information" and that "the Draft Complaint contains quotations and paraphrases" from information that the producing parties have characterized as

6

confidential (Motion to File Under Seal, ¶¶ 5, 9). Nothing more. Even making assumptions, any commercial information contained in the Complaint is likely no longer current. Indeed, the allegations in the Complaint presumably focus on a transaction that occurred in 2007. Any information claimed sensitive is almost certainly outdated and, accordingly, does not fall within the protection provided by Section 107(b)(1).

C.   **There is no Indication that the Purported Confidential Information Referenced in the Complaint is Defamatory or Scandalous**

19.   The other potential exceptions covered by Section 107(b)(2) have no conceivable application to the proposed Complaint. The protections afforded by Section 107(b)(2) from the disclosure of "scandalous" or "defamatory" material have no possible application here as purported justifications for maintaining the proposed Complaint, or any portion of it, sealed. Scandalous matter is an allegation "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Food Mgmt., 359 B.R. at 558 n.16 (internal citation omitted). There is no indication that the Complaint contains any such allegation nor is there allegation of defamatory statement allegations in the proposed Complaint. To qualify for the Section 107(b)(2) exception, purportedly defamatory or scandalous matters must either be irrelevant or presented for an improper purpose. See id. at 557-59. Additionally, matter for which the protection of Section 107(b)(2) is sought on the grounds of being defamatory must be "clearly shown to be untrue without the need for discovery or a mini-trial." Id. at 556. The court "is not required to resolve questions of truthfulness on a motion to seal, where doing so would require discovery, additional hearings, or would otherwise be burdensome to the court." Id. at 562.

20.   It must be anticipated that the parties to a confidentiality agreement would strongly prefer that their communications and information remain undisclosed to the public and

7

interested parties, but a desire to avoid public review of such information, all of which directly bear on the issues and claims in the Complaint, is a wholly inadequate basis to seal the Complaint.  Indeed, to justify maintaining a bankruptcy court filing under seal, "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." Id. at 561 (internal citations omitted).  Likewise, "mere embarrassment or harm caused to the party is insufficient to grant protection under § 107(b)(2)." Id. (internal citation omitted).  Allegations of the Complaint derived from designated materials will likely be relevant to the relief, and would not be presented for any improper purpose.  If not, the Committee should identify the information and justify why they are making such allegations before they seek to seal them.  It is highly doubtful such allegations exist.

### D. The Complaint Should Not Be Sealed and Available to Parties to Analyze in Connection with the Standing Motion

21.  The right of public access to the Complaint could not be clearer.  Anything less than a full public disclosure of the Complaint would undermine the purpose and mandate of Section 107.  Without it, parties cannot properly evaluate the Standing Motion or other issues material to these cases.[1]  Such a denial of the right to public access would be especially problematic in light of the broad and diverse constituencies that may be impacted by the outcome of the adversary proceeding, and the important public interests implicated by the type of highly leveraged financial transactions and activities central to the Debtors' bankruptcy cases. Perhaps the Committee did not properly plead a basis for the relief under Section 107 because it also realizes that the standard cannot be met here and public access should not be denied.  Instead, the Committee should have filed a motion to designate the complaint as a

---

[1] Concurrently herewith, ACM has filed the Motion to Expedite; however, ACM is not suggesting that the hearing on the Standing Motion be delayed.

DEL 86,305,859v1 2-9-10

public document as done in the Lyondell case.

WHEREFORE, Aurelius Capital Management, LP respectfully requests that the Court issue an Order: (i) denying the Motion, and (ii) granting further relief as the Court deems just and proper.

Dated: February 9, 2010
Wilmington, Delaware

GREENBERG TRAURIG, LLP

*/s/ Scott D. Cousins*
Scott D. Cousins (DE Bar No. 3079)
Victoria W. Counihan (Bar No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 198-1
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: Cousinss@gtlaw.com
Counihanv@gtlaw.com

and

Nancy A. Mitchell
MetLife Building
200 Park Avenue
New York, New York 10281
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: Mitchelln@gtlaw.com

***Counsel to Aurelius Capital Management, LP***