**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In the matter of                )
                                )
SA TELECOMMUNICATIONS, INC.,    )
et al.,                         )  Case Nos. 97-2395
                                )  through 97-2401(PJW)
          Debtors.              )

                U.S. Bankruptcy Court
                Sixth Floor
                824 Market Street
                Wilmington, Delaware

                Friday, March 27, 1998
                1:00 p.m.

BEFORE: HONORABLE PETER J. WALSH
        United States Bankruptcy Judge

WILCOX & FETZER
1330 King Street - Wilmington Delaware  19801
(302) 655-0477



WILCOX & FETZER LTD.
Registered Professional Reporters
ORIGINAL

1 these debtors, then how do you know if you need more
2 than one. The answer is you don't. You put an
3 examiner in there, you get the information you need,
4 you get an independent report, versus three different
5 stacks of discovery, that you can work off of.
6        And even if Your Honor concludes that
7 you can only appoint an examiner in the case of SA
8 Tel, if you for some reason, take their representation
9 that this debt only relates to SA Tel, well, then,
10 wouldn't it be efficient to, since the same issues
11 relate to all the other estates, since the same issues
12 are going to relate to the proposal of the plan, to
13 let the examiner examine all of the books and records,
14 finances of those related entities?
15        THE COURT: Well, first of all, I'm
16 going to point out that this Court has for years
17 consistently viewed 1104(c)(2) as not being a
18 mandatory provision. So we're only talking about
19 whether it's in the interests of the creditors and any
20 equity holders and the interests of the estate to
21 appoint an examiner. I assume that nobody challenges
22 the proposition that there's no value for equity here,
23 so that interest is --
24        MR. ASTIN: I would ask Your Honor to



1  consider the Revco case. But if Your Honor knows the
2  court's position, I will acknowledge that there are
3  other cases out there that think "shall" doesn't mean
4  shall. The U.S. Trustee believes it does and I think
5  Revco and the Morganstern case is right on point.
6            THE COURT: My view doesn't turn on the
7  word "shall" and I've ruled a number of times to this
8  effect, Judge Balick has, and I think I'm not going to
9  change this Court's view of that section.
10           MR. ASTIN: So if you look at the best
11 interests of the creditors I will acknowledge that
12 everyone here today is going to argue that their
13 interests are best served by the stipulation. But, of
14 course -- the answer is of course. Not everybody in
15 this room represents all of the interests in this
16 case.
17           The Committee I think will acknowledge
18 that you can't -- the Court shouldn't consider the
19 vote of the Committee to be representative of the
20 large body of creditors out there because it's
21 lopsided. If it wasn't, then committee counsel long
22 ago and far away between November, when this case was
23 filed, and this hearing would have looked at the issue
24 of substantive consolidation. The bottom line is,

1  period and hopefully we will never have to address it
2  because the parties will have been able to work it
3  out. Thank you.
4           THE COURT: Anyone else?
5           MR. DeNATALE: Your Honor, I do have a
6  copy of the stipulation that was actually executed by
7  each of the parties and that I would hand up for the
8  Court to so order if the Court is so inclined.
9           THE COURT: Let me look at it. I
10 haven't ruled yet.
11          Interesting debate and I'm going to
12 approve the stipulation and deny the U.S. Trustee's
13 motion for the appointment of an examiner for the
14 following reasons:
15          First of all, Section 1104(c)(1)
16 authorizes the appointment of an examiner where it is
17 in the interest of the creditors, the equity holders,
18 or other interests of the estate. We're all agreed
19 that there's no equity interests here. And I don't
20 think there's really an interest of the estate in the
21 sense that this is a liquidation case. This company
22 is going nowhere, it's over. The only interests are
23 those of the creditors and in amount we have 90
24 percent of those people opposing the relief that the

1  trustee says they need. That doesn't make any sense
2  to me to appoint an examiner when the U.S. Trustee
3  says it's needed to protect the creditors when 90
4  percent in amount of those creditors say we don't want
5  this relief.
6      Secondly, particularly in light of the
7  comment that Mr. DeNatale just made regarding Jay
8  Alix's assessment of what it would cost to find out
9  what the intercompany claims are and whether the eggs
10 can be unscrambled so as to have to avoid substantive
11 consolidation, we have the U.S. Trustee in order to
12 achieve his result putting a 30 day and $40,000 cap on
13 the examiner's effort. I think if you buy it that
14 cheaply and permit that short a time, I think you're
15 going to get what you pay for and that is nothing that
16 would be of any value to the proceedings that we're
17 engaged in. I think it will be a waste of $40,000 and
18 an unnecessary delay in the proceedings.
19      Thirdly, based upon my experience with
20 examiners what you're going to do with an examiner is
21 produce a document which is only going to continue the
22 combat that the creditors have been engaged in for
23 some time, because as sure as we're all sitting here
24 whatever the examiner says one or more of these three

1  major creditors are going to disagree with it. And so
2  the examiner's report would simply serve as perhaps a
3  concise and concise statement of what the parties
4  will be litigating over and it's not going to solve
5  anything. I think an examiner's report is an
6  invitation to litigation and we already have that.
7        Fourth, I take a different approach from
8  the U.S. Trustee's position. He claims we need
9  someone independent who will look at the facts without
10 any bias and report accordingly. My view is the best
11 way to develop facts is in an adversary proceeding and
12 that's what we do all the time in this Court. And so
13 I think it's probably equally effective, if not more
14 effective, to have the fighting parties look at the
15 facts and take their positions, and if we're lucky it
16 will result in a settlement. If not, we will be back
17 here and pick up where we would leave off today.
18        So for those reasons I don't think that
19 appointing an examiner would be in the best interests
20 of these proceedings, certainly not in the best
21 interests of the creditors. And parties have observed
22 and it went without saying that this has been an
23 acrimonious four months since the case was filed. And
24 to pile on an examiner shackled by a limited budget

1  and time frame I just think would be a waste.
2          Finally, this is not the beginning of
3  this case, it's the end of the case.  And we're
4  looking at $44 million chasing a million and a half.
5  And I think it's time the parties realistically looked
6  at this nominal dividend that they are going to get
7  and reach an agreement that is going to settle it
8  without further debate about consolidation or
9  intercompany claims, because if we get to those issues
10 and we have hearings on the merits, the million and a
11 half is going to be spent in a matter of weeks.
12         In addition to the reasons I've already
13 given, in my view this is the wrong time and the wrong
14 case for the appointment of an examiner.  So I'll deny
15 that motion.
16         MR. ASTIN:  Your Honor, to clarify Your
17 Honor's ruling, is Your Honor ruling as to
18 1104(c)(2)?  You mentioned best interests of the
19 creditors under (c)(1).  Our request for relief was
20 pursuant to (c)(2), (c)(1) in the alternative.
21         THE COURT:  My view is that (c)(2) is
22 not mandatory and for the same reasons I've already
23 given I'll deny the relief to the extent it is
24 premised on (c)(2).

1   MR. ASTIN: Thank you, Your Honor.

2   MR. GWYNNE: With respect to the two
3   motions being continued, motion to appoint trustee and
4   the motion for reconsideration on consolidation of the
5   schedules, we are going to continue them to some time
6   after the settlement period which would end on May
7   11?

8   MR. DeNATALE: What we would ask is if
9   your chambers could give us a date, say, 40 days out
10  for a settlement conference with the Court, kind of
11  report back on the results of this process and maybe
12  we will carry those motions to that date -- until
13  after the settlement, 50 days out maybe for the
14  motions that Mr. Gwynne wants to adjourn over and
15  maybe 40 days out for settlement conference with Your
16  Honor, if that's possible.

17  May 11th is the end of the settlement
18  period I'm told.

19  THE COURT: So the first date you are
20  looking for is --

21  MR. DeNATALE: Would be a few days
22  before the 11th, if that's available.

23  THE COURT: How about 4:00 on the 7th?

24  MR. DeNATALE: That would be fine.

```
 1              THE COURT:  Now, there's a hearing at
 2  3:30, I don't know how long that's going to go, but we
 3  will put it on for 4:00 on the 7th and we will get to
 4  it when we do that day.
 5              MR. DeNATALE:  Then I think Mr. Gwynne
 6  needs a holding date for the other two motions that
 7  would be some time after the 11th.
 8              THE COURT:  I don't think I have
 9  anything until May 29th.
10              MR. DeNATALE:  That would be fine.
11              THE COURT:  In fact, there's an SA
12  Telecom pretrial on that date, 9:30.  I don't know
13  what that is.
14              MR. DeNATALE:  That's with Cap Rock.
15              THE COURT:  Let's put it on for 9:30,
16  then, your two continued matters.
17              MR. DeNATALE:  Thank you, Your Honor.
18              The only other item would be extension
19  of exclusivity.  I believe the order for that has been
20  submitted with the motion.  You should have that among
21  the papers.  Basically the debtors have asked to
22  extend the period to file a plan until June 17 and
23  exclusive period to solicit acceptances until August
24  16.  My understanding is there have been no objections
```

```
 1  filed to that.  We would ask the Court grant that.  To
 2  the extent the order is not before the Court, we will
 3  get a copy to you of a duplicate original.
 4              THE COURT:  I'll grant the motion.
 5  There's no debate about this issue given the context
 6  of the sale transaction.
 7              MR. DeNATALE:  Thank you, Your Honor.
 8              THE COURT:  Is there anything else?
 9              MR. DeNATALE:  No.
10              THE COURT:  We stand in recess.
11              (The proceedings concluded at 3:00 p.m.)
12                    - - - - -
```

## INDEX TO EXHIBITS

<u>U.S. TRUSTEE EXHIBIT NO.</u>                                    <u>PAGE</u>

   1-4                                                         73

```
 1
 2   State of Delaware    )
                          )
 3   County of New Castle )
 4
 5
 6                  C E R T I F I C A T E
 7
 8        I, Vincent Bailey, Registered
 9   Professional Reporter, do hereby certify that the
10   foregoing record, pages 2 to 87 inclusive, is a true
11   and accurate transcript of my stenographic notes taken
12   on Friday, March 27, 1998, in the above-captioned
13   matter.
14        IN WITNESS WHEREOF, I have hereunto set
15   my hand and seal this __9th__ day of April, 1998,
16   at Wilmington.
17
18
19
20                      _____
21                              Vincent Bailey
22
23
24
```



WILCOX & FETZER LTD.
Registered Professional Reporters