**EXHIBIT D**

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------x

      In the Matter

          of                  Case No. 04-11139

    PARMALAT USA CORP.,

               Debtors.

------------------------------x

                      May 19, 2004

                      United States Custom House

                      One Bowling Green

                      New York, New York 10004


      Omnibus Motion of Debtors for Order
Determining Utility Companies Adequately Assured of
Future Payments; Objection of Certain Utility
Companies to Omnibus Motion of Debtors; Joinder of
Consumers Energy Company to the Objection of
Certain Utility Companies to Omnibus Motion of
Debtors; Objection of Georgia Power Company to
Omnibus Motion of Debtors; Motion to Set Last Day
to File Proofs of Claim; Notice of Proposed
Order/Motion of Debtors for an Order Extending Time
to File Notices of Removal of Related Proceedings;
Application of the Official Committee of Unsecured
Creditors for an Order Extending Investigation
Period; Motion to Appoint an Examiner; Objection by
Debtor to the Appointment of an Examiner.



B E F O R E:


            HON. ROBERT D. DRAIN,

                  U.S. Bankruptcy Judge.

175

1                        PARMALAT USA CORP.

2      my last page and didn't answer the particular

3      point.   That's just wrong.

4                        THE COURT:   Okay.

5                        (Recess taken)

6                        THE COURT:   Please be seated.

7                        I have in front of me a motion by

8      Friendship Dairies, Inc. and Perry's Ice Cream

9      Company, Inc. for the appointment of an examiner.

10                        As originally phrased, the

11     examiner's proposed tasks would be first to

12     investigate Parmalat's worldwide collapse, that is

13     not only the reasons why these three debtors are in

14     Chapter 11, but the collapse and causes thereof of

15     their ultimate parent and intermediate parents

16     worldwide.   And then, as clarified somewhat today

17     more particularly, to investigate these three

18     debtors potential causes of action against any

19     affiliates' debtor or non debtor, particularly non

20     debtor, as well as against any officers, directors

21     or other third parties.

22                        Within that requested examination

23     was a request to confer upon an examiner authority

24     to protect the debtors books and records, and other

25     more trustee like authority, such as asserting

176

1                    PARMALAT USA CORP.

2       claims on behalf of the estates in the

3       extraordinary proceedings in Italy with regard to

4       what I refer to here as the S BA companies, or at a

5       minimum to look over the shoulder of the debtors'

6       counsel in the conduct of the prosecution of such

7       claims, and I have to assume also with authority to

8       come to the court if the examiner believes the

9       claims are not being prosecuted properly.

10                    The motion was opposed strenuously

11      by the debtors, as well as the unsecured creditors'

12      committee, as well as GE and Citicorp, the debtors'

13      secured creditors and postpetition lenders.  The

14      motion was couched under both Section 1104(c)(1) as

15      well as 1104(c)(2).  With regard to the basis for

16      relief under Section (c)(1), the movants, in

17      essence, allege that although they are not aware of

18      any misconduct by current officers or controlling

19      person of these debtors, the relationship between

20      these debtors and their ultimate parent obviously

21      was affected in some way by the fact that there

22      appears to have been an enormous fraud in the -- or

23      frauds in the dealings of the ultimate parent,

24      which, as a simple proposition the debtors don't

25      dispute, the fact that such frauds were announced

177

1                    PARMALAT USA CORP.

2       helped to push these debtors into bankruptcy as a

3       result of a crisis of confidence by customers and

4       suppliers and the like which the debtors have spent

5       much of their brief period in bankruptcy trying to

6       rectify and in large measure apparently have

7       rectified.  But there has been very little else

8       alleged besides the general fact that the parent,

9       the ultimate parent, the Italian parent of these

10      debtors has clearly be tainted by fraud, and that

11      books and records, perhaps with respect to these

12      debtors, definitely with respect to the parent

13      companies that were in the United States, appear to

14      have been destroyed or removed prepetition.

15                    The movants have given no budget or

16      estimation of the cost of such an examination.  The

17      U.S. Trustee, who is certainly well qualified to

18      give such an estimate since one of the U.S.

19      Trustee's main tasks is to review fee applications

20      in Chapter 11 cases, says that undisputedly the

21      cost would be enormous, and I tend to agree.  The

22      debtors and the creditors' committee state not only

23      would the cost been enormous, but also would be

24      largely, if not entirely redundant, because the

25      debtors are actively pursuing claims that they

178

1                    PARMALAT USA CORP.

2     believe they may have against the S.p.A.

3     affiliates, against other affiliates, as well as

4     third parties.  And the committee is first looking

5     over carefully the debtors' work and making sure,

6     as fiduciaries for all of the creditors, that the

7     debtors don't miss any meaningful deadline.

8                    And secondly, pursuing its own

9     investigation, having first conducted an initial

10    cost benefit analysis of how to pursue such

11    investigation or investigations most efficiently in

12    light of the size of the case, the resources

13    available, and the claims.  And by that I mean the

14    claim of the unsecured creditors which aggregate,

15    for all three debtors, approximately 40 million

16    dollars.

17                    Based on the fact that such an

18    appointment and such a task being assigned to an

19    examiner would be, in my view, far more costly than

20    any gain to be resulted to the estate, as well as

21    the fact that that the debtors appear to be

22    appropriately conducting their own investigations,

23    as well as the fact that the committee is not only

24    conducting its own investigation, but also closely

25    monitoring the work of the debtors' professionals,

179

```
 1                   PARMALAT USA CORP.
 2    I find that the movants have not established cause
 3    under Section 1104(c)(1) for the appointment of an
 4    examiner.  In fact, it's not even close.
 5                   The case authority for that
 6    proposition, as has been cited by Mr. Ticoll in
 7    oral argument as well as in all the papers,
 8    including the Southerland case in this district,
 9    but certainly is the case that the standard under
10    (c)(1) is high, and the showing by the movants has
11    been very low.
12                   That leaves the issue of whether the
13    appointment of an examiner is mandatory under
14    1104(c)(2).  Notwithstanding the fact that not only
15    has the burden of cause not be established under
16    (c)(1), but also because it does not appear that
17    the appointment of an examiner is appropriate, or
18    even appropriate.  I use the word appropriate,
19    because that word is used in the introductory
20    language in Section 1104(c) which states that the
21    court shall order the appointment of an examiner to
22    conduct such an investigation of the debtor as is
23    appropriate.  And then lays out Section (c)(1) and
24    (c)(2); (c)(2) stating that, "the court shall order
25    the appointment of an examiner to conduct such an
```

180

1                    PARMALAT USA CORP.

2          investigation of the debtor as is appropriate, if

3          the debtors fixed liquidated unsecured debts, other

4          than debts for goods, services or taxes, or to an

5          insider exceed five million dollars."

6                         No one disputes that Parmalat USA's

7          non insider, non trade debt exceeds five million

8          dollars.  So the real issue with regard to the

9          applicability of 1104(c)(2) is whether the five

10         million dollar hurdle is enough, or whether I also

11         have to find that the appointment is appropriate.

12         If I have to also find that the appointment is

13         appropriate, then it is quite clear to me that an

14         examiner would not be appointed, because I believe

15         that such an appointment is not appropriate.

16                        Mr. LeMay is correct that there are

17         a number of cases that put that type of gloss on

18         Section 1104(c)(2), although a number of them, in

19         particular the Bradlees case by Judge Lifland,

20         focused less on the purpose of the examination than

21         on the movant's purpose for requesting the

22         examination.  In Bradlees the examination was

23         requested on the eve of confirmation, and clearly

24         appeared to be a holdup tactic for negotiating

25         leverage by a creditor that had waited at least two

181

1                       PARMALAT USA CORP.

2       years to make the request.  I could also see a good

3       basis for denying a request under (c)(2) for other

4       potentially improper purposes, for example, if it

5       appears that the reason for the request was to

6       obtain discovery on the estate's nickle, or in this

7       case millions of dollars to be used in another

8       forum, i.e. free discovery, or for some other

9       negotiating leverage.

10                      Despite some remarks about the

11      movant's motivation here, however, it does not

12      appear to me that there really has been an improper

13      purpose underlying this request, although frankly

14      the way that it was raised, without apparently an

15      initial discussion with the committee or the

16      debtors, is troubling.  But it does not appear, for

17      example, that the movants have made this request

18      hoping that the debtors will treat their claim more

19      favorable or for some other ulterior purpose.  And

20      given the context of the debtors financial

21      troubles, again prompted by the reports of the

22      fraud at their ultimate parent level, one can

23      understand that some party, perhaps not as keyed

24      into the case as the professionals representing the

25      debtor or the committee, might seek such relief for

182

| | |
|---|---|
| 1 | PARMALAT USA CORP. |
| 2 | appropriately motivated reasons. |
| 3 | So, I think that, at least as far as |
| 4 | the applicability of the Bradlees case, as well as |
| 5 | some of the other cases, while they may be |
| 6 | applicable in other contexts, I don't think that's |
| 7 | the case here.  Which leaves us with a review of |
| 8 | the statute's plan language.  And I confess that I |
| 9 | find Mr. Ticoll's interpretation appealing, but |
| 10 | ultimately I also find it somewhat hard to accept, |
| 11 | that is that the word appropriate is an initial |
| 12 | hurdle and that it must then be followed by the |
| 13 | hurdles respectively under (c)(1) and (c)(2). |
| 14 | It seems to me that the rationale |
| 15 | laid out in the Revco case, 898 B.R. 498, as well |
| 16 | as the more recent UAL Corporation a case by Judge |
| 17 | Weidel from Chicago, 307 B.R. 80, as well as the |
| 18 | view of Collier, 7 Collier On Bankruptcy, paragraph |
| 19 | 1104 03 at 36 through 39, is more consistent with |
| 20 | the language of Section (c)(2) and 1104(c) |
| 21 | generally, which is that the word appropriate, in |
| 22 | the introduction to that section, is really aimed |
| 23 | at the scope of the examination as opposed to the |
| 24 | right to the appointment of an examiner in the |
| 25 | first place.  I can certainly see the logic of Mr. |

183

1                   PARMALAT USA CORP.

2    Ticoll's argument that one could reach a situation,

3    and this is close to it, where a court would be

4    mandated to appoint an examiner but find that it

5    would be inappropriate to have the examiner perform

6    any duties whatsoever.  But I do not believe that

7    the intention of Congress was to give courts the

8    initial discretion as to whether to appoint an

9    examiner or not when there was this much non trade,

10   non insider debt.

11                   I also recognize that the

12   legislative history refers to public security

13   holders, and that the debt here is not public debt,

14   but the statute itself doesn't refer to public

15   securities, it just refers to debt.  And it strikes

16   me that there may well be a number of cases where

17   the major players in a case believe that an

18   examiner is not worthwhile, not appropriate, and

19   yet smaller creditors may feel that they need

20   someone disinterested to take an independent look.

21   And that in drafting the statute, which admittedly

22   was in some respects an anachronism and/or a

23   compromise to move away from -- in the context of

24   the Code, generally moving away from the

25   supervision of Bankruptcy Act cases, this was a

184

1                   PARMALAT USA CORP.

2     anachronism or a compromise to have some holdover

3     from Act practices.  And consistent with Second

4     Circuit directed from Chateau Gay at 920 F 2'd 183,

5     the statutory scheme, as drafted, is coherent.

6     It's not absurd.  And I think that it would be

7     beyond my role to impose on it a logic that may be

8     supportable in a number of cases, but is

9     inconsistent with the plain language in the statute

10    and the legislative history as laid out by Judge

11    Weider in UAL and the Sixth Circuit in Revco.

12                   That still leaves the scope of the

13    examination, because clearly if the word

14    appropriate is not a hurdle, an initial hurdle

15    before Section(c)(1) and (c)(2) apply, it has to

16    mean something, in that something, as all the

17    authorities, including Revco, UAL and Collier agree

18    is that the court has the ability, basically the

19    unfettered discretion, to determine what is the

20    appropriate scope of an examiner's appointment.  As

21    Collier says, "the limitations and prescriptions

22    regarding the scope of the investigation are

23    subject only to the imagination of the bankruptcy

24    judge."  And further it says, "the court might

25    grant the request for an examiner, but so limit the

185

1                          PARMALAT USA CORP.

2        role assigned to the examiner, but substantial

3        interference with the Chapter 11 case will be

4        avoided."

5                          Here, where the committee very

6        clearly appears to me to be doing its job, which

7        includes literally the same tasks under 1103(c)(2),

8        as Congress requires an examiner to conduct under

9        1106(a)(3) as incorporated by 1106(d), the language

10       is exactly the same.  It seems to me that it's

11       particularly appropriate to have the examiner's

12       role and tasks be as limited as possible.  I'm also

13       motivated by the fact that it is clear to me that

14       at the level where an examiner should be appointed,

15       there is little to no money, and no money available

16       under the DIP order and cash collateral order to

17       conduct a investigation of claims.

18                          Consequently, I'm going to order the

19       appointment of an examiner for a very limited

20       purpose, with a very limited budget, a budget which

21       is, however, I think more than sufficient for the

22       examiner to adequately perform his or her duties.

23       I do not believe that the examiner should retain

24       counsel to perform those duties.  I believe, and

25       will order, that the appropriate role for an

186

1                    PARMALAT USA CORP.

2      examiner in the Parmalat USA case is to meet with

3      and consider the claim strategy, including the

4      process by which claims are being pursued on an

5      intercompany basis, and as well as against third

6      parties who might have a responsibility for actions

7      by the debtors' affiliates against the debtors that

8      are being pursued by the debtors' professionals,

9      primarily, and secondarily by the committees

10     professionals, not to consider whether those claims

11     are being appropriately pursued, but rather simply

12     to consider whether those claims are being pursued

13     in a disinterested fashion, since I believe that

14     the primary purpose for an examiner, as

15     contemplated by Congress, is that he or she be

16     disinterested, which is the one statutory

17     requirements for the actual appointment of an

18     examiner, once the court has ordered the

19     appointment of one.

20                    The budget for the examiner will be

21     five thousand dollars, and he or she should

22     complete the review, assuming reasonable

23     cooperation by the professionals for the debtor and

24     the committee, within two weeks or of his or her

25     appointment.  Section 1106(a)(4) contemplates a

187

```
 1                       PARMALAT USA CORP.

 2    report by an examiner.  I contemplate a very brief

 3    report, and I believe that report should be issued

 4    no later than a week after the examination is

 5    finished.

 6                    I would like the U.S. Trustee to

 7    appoint a person who has experience at a senior

 8    level in dealing with, in particular, issues

 9    regarding potential conflicts of interest and how

10    committees work and how debtors-in-possession work.

11    I'm not contemplating a litigator, or an

12    investigator so much as a disinterested bankruptcy

13    professional.

14                    I want to make it clear,

15    particularly given the history of these debtors and

16    their very commendable efforts to stabilize their

17    business, notwithstanding the adverse results of

18    the fraud revelations with regard to their parent,

19    that my appointment of an examiner for this purpose

20    is not based on any belief that I have that either

21    the debtors' professionals or the committee's

22    professionals are in fact anything but

23    disinterested.  I believe there's been no showing

24    that they have a conflict of interest.  I believe

25    there have been appropriate steps to protect
```

188

1                    PARMALAT USA CORP.

2    against conflicts of interest; however, if there is

3    to be any benefit here at all from the appointment

4    of an examiner, it seems to me that there could be

5    some from an independent look so that those out

6    there who may not be as sophisticated in the way

7    that large bankruptcies work, or even medium sized

8    bankruptcies work, could gain some comfort that a

9    disinterested person has looked at the situation

10   and is comfortable that the debtor-in-possession,

11   as monitored by the committee, is itself

12   disinterested in pursuing these types of claims.

13                    I also frankly hope, and this is why

14   I'm not issuing any sort of published decision,

15   that particularly in the context of these facts,

16   again where I believe that there's next to no cause

17   at all for the appointment of an examiner, that my

18   ruling will not create the desire to appeal based

19   on a strict statutory discretion.  It strikes me,

20   given the resources of these debtors, that the

21   debtors and the creditors money is far better spent

22   elsewhere than on an appeal of this issue.

23                    So, Mr. Ticoll, you can settle an

24   order on three days notice to the movants, the

25   committee, and the U.S. Trustee.

189

1                    PARMALAT USA CORP.

2                    MR. TICOLL:  Yes, your Honor.  Thank

3       you very much.

4                    MR. ZIPES:  Your Honor, could I just

5       ask for one or two points of clarification?  And

6       maybe the other parties heard it better than I did.

7       I believe you said that it would look into the

8       actions of the affiliates against the debtors.

9                    THE COURT:  No.

10                   MR. ZIPES:  And did your Honor mean

11      that the debtors --

12                   THE COURT:  No.  Let me be very

13      clear.  The examiner is supposed to consider

14      whether the debtors and their professionals and the

15      committee and its professionals are, in a

16      disinterested manner, pursuing claims that they

17      have against affiliates, including non debtor

18      affiliates and third parties who may also have been

19      involved in the actions of affiliates that might

20      have harmed the debtors.  So the focus is on a very

21      narrow issues, which is whether the debtors, their

22      professionals, the committee and their

23      professionals, are acting in a disinterested

24      manner.

25                   MR. ZIPES:  That's what I thought

190

```
 1                    PARMALAT USA CORP.

 2     you meant, but I heard it in opposite, your Honor.

 3     And the other issue, but the five thousand dollar

 4     budget, I would only -- it's loud and clear that

 5     this should be on a shoe string budget, but I'm not

 6     sure that it would be -- we can put the five

 7     thousand dollars in as a target, but I'm not sure

 8     that it would be there for an examiner or to limit

 9     to five thousand dollars without any right to

10     approach this court at least if the conditions

11     apply.

12                    THE COURT:  You know, I gave a fair

13     amount of thought to this.  It seems to me that the

14     five thousand dollar budget contemplates about ten

15     hours of work that are billable.  This hearing took

16     about five hours.  It strikes me that a capable

17     bankruptcy lawyer can spend five or six hours

18     sitting down with the debtors' professionals, Jay

19     Alix, and the committee's professionals, perhaps a

20     committee member, and make his or her mind up as to

21     whether these things are being pursued in a

22     disinterested fashion.  And then spend another

23     three hours or so writing a brief report.

24                    If in fact the examiner believes

25     they are not being pursued in a disinterested
```

191

1                    PARMALAT USA CORP.

2   manner or that there is a really good reason to

3   come back to me, they are certainly free to do

4   that.  But what I did not want to do is put the

5   burden on an examiner to cover more than I wanted

6   him to or her to, because once that burden is

7   placed on someone, well, you can put yourself in

8   that position, you are going to spend as much as

9   you have to spend, and more.  So that's -- I think

10  it's a fair amount.  I gave a fair amount of

11  thought to it.

12                 MR. ZIPES:  Thank you, your Honor.

13                 THE COURT:  Okay.

14

15

16

17

18

19

20

21

22

23

24

25

192

1

2                    C E R T I F I C A T E

3     STATE OF NEW YORK      }

                            }    ss.:

4     COUNTY OF WESTCHESTER  }

5                    I, Denise Nowak, a Shorthand

6          Reporter and Notary Public within and for

7          the State of New York, do hereby certify:

8                    That I reported the proceedings in

9          the within entitled matter, and that the

10         within transcript is a true record of such

11         proceedings.

12                   I further certify that I am not

13         related, by blood or marriage, to any of

14         the parties in this matter and that I am

15         in no way interested in the outcome of

16         this matter.

17                   IN WITNESS WHEREOF, I have

18         hereunto set my hand this _____ day of

19         _____, 2004.

20

21                        _____

                               DENISE NOWAK

22

23

24

25