# EXHIBIT A

```
                                                          1
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   ---------------------------------x
 4        In the Matter of:
 5                                    Case No.
                                      05-60200
 6     CALPINE CORPORATION, et al.,
 7                   Debtors.
 8   ---------------------------------x
 9                    October 24, 2007
                      United States Custom House
10                    One Bowling Green
                      New York, New York 10004
11
12
13
          Hearing Pursuant to Kirkland and Ellis LLP
14
     Notice of Agenda of Matters Scheduled for Hearing.
15
16
17
18
     B E F O R E:
19
20           HON. BURTON R. LIFLAND,
21                      U.S. Bankruptcy Judge
22
23
24
25
```

...

70

1    Most importantly, M&T and the other CalGen
2    Lenders, who are highly sophisticated parties have been
3    zealously represented in these cases by highly
4    sophisticated professional who have demonstrated that they
5    are more than capable of protecting their economic
6    interests and are fully participating in these cases as
7    evidenced by their recent objections to the Disclosure
8    Statement, requests for discovery regarding substantive
9    consolidation, appeal of the CalGen Order and the Chapter
10   11 trustee motion among others.
11           Lastly, given the strong interests of the
12   Debtors and all of their constituencies in bringing these
13   cases to a close without duplication of effort and
14   unnecessary expense, the request for an additional
15   committee at this late stage of the case is denied.
16           With respect to the request for an
17   examiner.  Section 1104(c)(2) of the Bankruptcy Code
18   mandates the appointment of an examiner upon the request of
19   a party in interest "at any time before confirmation of a
20   plan," if a trustee is not appointed and "the debtor's
21   fixed, liquidated, unsecured debts, other than debts for
22   goods, services, or taxes, or owing to an insider, exceed
23   five million dollars."  11 U.S.C. 1104(c)(2).  The
24   legislative history of 1104(c)(2) demonstrates Congress'
25   desire to protect stockholders of public companies through

71

1  the mechanism of an independent functionary.  See Loral
2  Stockholders Protective Committee against Loral Space and
3  Communications Ltd. (In re Loral Space and Communications,
4  Ltd.), 2004 Westlaw 2979785, at footnote 4 (S.D.N.Y. Dec.
5  23, 2004.)  [Here the CalGen subsidiaries are privately
6  owned.]
7           First, the parties dispute whether the
8  CalGen estates have the threshold amount requiring the
9  appointment of an examiner.  Additionally, the Debtors and
10 Creditors' Committee urge the Court to find that M&T has
11 waived its right to request the appointment of an examiner.
12 Alternatively, the Debtors assert that the examiner's
13 investigation should be delayed until after the
14 confirmation hearing.
15          M&T asserts that the dollar amount of
16 unsecured debt is met because the damages claim they were
17 awarded by this Court - claims that they are contending on
18 appeal are actually secured claims.  Other than M&T's
19 claims, the only CalGen estate that has unsecured claims
20 exceeding five million dollars is Columbia Energy, LLC,
21 however, those claims are related to the rejection of
22 service contracts and do not qualify under Section
23 1104(c)(2).  See GHR Companies, 43 B.R. at 176, (discussing
24 the types of debt to be applied in determining whether the
25 five million dollar threshold is met, i.e. unsecured

72

1   claims). Accordingly, it is far from clear to this Court
2   whether the CalGen unsecured debt meets the threshold
3   amount for mandatory appointment. Indeed it appears not.
4           However, even if the fixed, unsecured debt
5   threshold were met, M&T has waived its right to request an
6   examiner by waiting until now, almost two years after the
7   petition date, more than seven months after Calpine first
8   disclosed the possibility of substantive consolidation in
9   February, and less than two months before the confirmation
10  hearings. M&T has been active in these cases since
11  February, filing pleadings relating to discovery disputes,
12  the confirmation hearing schedule, an objection to the
13  refinancing motion and the disclosure statement motion,
14  joinder to a motion for appointment of a Chapter 11
15  trustee, and joinder to a motion for a stay pending appeal
16  of the order approving the disclosure statement. Yet M&T
17  waited until these late stages of the proceedings to
18  request an examiner basing its request on the same
19  complaints that M&T had to the disclosure statement. M&T's
20  contention that its motion is based on the "recent"
21  determination by this Court of the damages relating to the
22  CalGen Secured Debt is disingenuous as that determination
23  was made by this Court eight months ago. Practically
24  speaking, M&T seeks an examiner to perform the type of
25  discovery that M&T believes it needs to oppose confirmation

73

1  and is already in the midst of. At this stage of these
2  cases, that request is simply too late to be of any real
3  value to any party. Moreover, the appointment of an
4  examiner and the attendant delay and expense could
5  jeopardize all the Debtors' cases. See In re Schepps Food
6  Stores, Inc., 148 B.R. 27, and 30 (relying on laches); in
7  re Bradlee Stores, Inc. 209 B.R. 36, 38 (Bankr. S.D.N.Y.
8  1997) (also relying on laches). As noted by one
9  commentator, "the mandatory nature of [Section 1104(c)] was
10 not intended and should not be relied upon to permit
11 blatant interference with the Chapter 11 case or the plan
12 confirmation process... Nor should the mandatory nature of
13 the provision be used to allow one group of creditors or
14 interest holders to obtain a protagonist supporting its
15 litigation position under the guise of investigation."
16 Colliers on Bankruptcy 1104.03[2][b]
17         M&T's ill-timed motion smacks more of
18 litigation leverage than the protection of the
19 unrepresented public as the statute intended.
20         Accordingly for all the reasons I just set
21 forth herein and in conjunction with the Committee Motion,
22 the Motion for an Examiner is denied.
23         It is so ordered.
24         MR. SELIGMAN: Your Honor, the next matters
25 on the agenda, which I'll take collectively, matters

VERITEXT/NEW YORK REPORTING COMPANY
212-267-6868
516-608-2400