# **EXHIBIT B**

```
 1                  UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK
 2

 3

 4  IN RE:                          .
                                    .   Case No. 02-41729
 5  ADELPHIA COMMUNICATIONS,        .
                                    .   New York, New York
                                    .   Monday, February 6, 2006
 6                      Debtors.    .   5:02 p.m.
     . . . . . . . . . . . . . . .
 7

 8          TRANSCRIPT OF HEARING ON STIPULATION/MOTION
            BEFORE THE HONORABLE ROBERT E. GERBER
 9                UNITED STATES BANKRUPTCY JUDGE

10  APPEARANCES:   (On the Record)

11  For the Debtors:              Peter N. Wang, Esq.
                                  FOLEY & LARDNER, LLP
12                                90 Park Avenue
                                  New York, New York 10016
13                                (212) 682-7474

14  For the U.S. Trustee:         Elizabeth Austin, Esq.
                                  Assistant U.S. Attorney
15                                OFFICE OF THE U.S. TRUSTEE
                                  33 Whitehall Street
16                                New York, New York 10004
                                  (212) 510-0500
17
    (Appearances continued)
18
    Audio Operator:               Electronically Recorded
19                                by Court Personnel

20  Transcription Company:        Rand Transcript Service, Inc.
                                  311 Cheyenne Road
21                                Lafayette, New Jersey  07848
                                  (973) 383-6977
22
    Proceedings recorded by electronic sound recording,
23  transcript produced by transcription service.

24

25
```

Court Decision                                                    7.61

1  duration.  Section 1104(c) plainly states that the Court
2  shall examine -- appoint an examiner to conduct such an
3  investigation of the debtor as is appropriate.
4          The thrust -- oh.  To conduct such an investigation
5  of the debtor as is appropriate was put in internal quotes by
6  the Sixth Circuit.
7          The thrust of that quoted language was probably the
8  portion that reads "as is appropriate."  But note that the
9  Sixth Circuit didn't need then to say after investigation "of
10 the debtor."  It could just as easily have left them out for
11 the point that it was making, yet it did not leave those
12 words out of its quotation of the statute.
13         So whether you analyze the issue by saying that a
14 court had to prove the appointment of an examiner at all
15 unless it's to conduct an investigation of the debtor, or
16 alternatively, that the only permissible scope of the
17 mandatory appointment is investigation of the debtor, either
18 way the requested examination here is not mandatory or,
19 indeed, authorized here.  This determination, like the last
20 one, where I declined to appoint an examiner with the scope
21 of the proposed examination was to investigate into whether
22 the debtors were negotiating with a counter-party in good
23 faith, is without prejudice to a request for an examiner
24 under an investigation of appropriate scope.
25         Moreover, even if I had the discretion to order the

1 appointment of an examiner on a volitional basis, I would not
2 do so here. The appointment of an examiner is sometimes very
3 useful for a bankruptcy case. In other cases, it is not and
4 can cost the estate millions of dollars that would be better
5 spent on creditor recoveries.
6     In Refco every party with a financial stake in the
7 case opposed the appointment of an examiner, but the U.S.
8 Trustee in that region wanted one and on appeal the Sixth
9 Circuit ruled that the appointment of an examiner was
10 mandatory, notwithstanding the creditors' wishes. The
11 examiner cost the estate about $2 million.
12     Here the amount budgeted for the examiner
13 appointment is $350,000, an amount which, while stated as a
14 cap, is an amount that I fear plainly will be reached, if not
15 also sought to be exceeded. That $350,000, even if not
16 enlarged further, may exceed by tens of thousands or hundreds
17 of thousands of dollars the incremental amount, if any, that
18 use of Amici and Echelon cost the debtors' estates.
19     BSF has a pending fee application that will be
20 opposed by a number of parties in this case who could conduct
21 the necessary discovery at least as well as an examiner.
22 They probably could do it better and cheaper, as they know
23 this case very well. They have an economic interest in
24 spending their time wisely. They have a head start on
25 knowing what BSF was asked to do and did and what disclosures

1  it made and didn't make and have an understanding from three-
2  and-a-half years of experience what the dynamics of this case
3  are.  And at least some have indicated that they will wish to
4  actively participate in the investigation, whether or not an
5  examiner is appointed and it is fair to assume that they will
6  feel the same when it comes to opposing the BSF fee
7  application.
8         Also, do not believe that any of the debtors, the
9  creditors' committee, or the fee committee are conflicted in
10 a way that would necessitate the appointment of an examiner
11 to get out all of the true facts.  They have all of the
12 incentive they need to litigate vigorously against BSF and
13 BSF has all the incentive it needs to litigate vigorously to
14 clear its name.  That is what the adversary process is all
15 about.
16        We do not have a situation here, as in Leslie Fay,
17 where a party would be investigating itself.  If the debtors,
18 creditors' committee, and fee committee don't do the
19 necessary inquiry, I feel comfortable that BSF will.
20        At least here we've already had a contested fee
21 application before the Court.  It is not clear to me what
22 purpose the appointment of an examiner would accomplish,
23 other than taking depositions that the parties in this case
24 could take themselves and will want to sit in on anyway.
25 Examiners' views are not infrequently welcomed by courts, but

Court Decision                                              7.64

1   they are not a substitute for the decisions of courts,
2   especially on matters of law or on matters where parties
3   might have different views that would be the grist for a
4   judicial decision.
5          Federal Rule of Bankruptcy Procedure 9031, captioned
6   "Masters not Authorized," expressly provides that FRCP 53
7   does not apply in cases under the code and, hence, prohibits
8   the appointment by bankruptcy judges of special masters.
9   Legal decisions and factual findings on any disputed facts
10  would be the province of the Court and not an examiner.
11         If, as I would examine -- if, as I would expect, one
12  or more of the creditors' committee, the fee committee, the
13  debtors, the U.S. Trustee's office, or BSF wish to weigh in
14  on the allowability of BSF's fees, after we know all of the
15  facts, it's hard for me to envision a scenario under which I
16  would deny any of them the opportunity to do so. And such
17  efforts on their part to engage in the rights that they
18  blatantly have in that regard would overlap with the
19  examiner's inquiry if it were to have been authorized in
20  material respects.
21         Frankly, folks, the history of examiners in this
22  district and elsewhere has made me wary of appointing them
23  when other means could skin the cat. This case already has
24  enough fiduciaries. It does not need to spend another
25  $350,000 to accomplish ends that already can be easily

1  addressed in what I believe to be a much more efficient and
2  economical manner.
3        As I have said in other contexts, litigation needs
4  and concerns cannot be swept under the rug, but they need to
5  be addressed in the most efficient and thoughtful way
6  possible. For the foregoing reasons, approval of the
7  stipulation is denied and dealing with stipulation to the
8  motion for the appointment of an examiner to investigate the
9  subject matter stated therein, the motion is denied.
10       In the alternative, the creditors' committee and the
11 debtors request authority to investigate by means of Rule
12 2004 or through the discovery that's granted in connection
13 with any contested manner as BSF's spending fee application
14 plainly is. That authority is granted to the extent it is
15 necessary. All interested parties already have the right to
16 engage in any needed deposition or document discovery under
17 Bankruptcy Rules 9014 at Paragraph 8 in Footnote 2 of my Case
18 Management Order No. 3, entered back on July 26th, 2004.
19       BSF cross-motion for appointment of a mediator is
20 denied without prejudice. It is premature to talk about the
21 resolution of the fee issues, the disclosure issues, or any
22 related issues until the parties in this case know all of the
23 facts and I know all of the facts.
24       I'm so ordering the record. Any party who wants a
25 written order from which it can take an appeal and move for