IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| | ) Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) Re: Docket No. 3063 |
| | ) |
| | ) <u>Hearing date</u>: February 18, 2010, at 10:00 a.m. (Eastern) |
| | ) |
| | ) <u>Objection deadline</u>: February 11, 2010 |
| | ) |

## CREDIT AGREEMENT LENDERS' OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES

The Credit Agreement Lenders,[1] as holders of approximately $4.6 billion principal amount of indebtedness arising under the Tribune Company Senior Secured Credit Agreement, dated as of May 17, 2007 (as amended, the "Credit Agreement"), hereby *object* to the "Motion For Entry Of An Order Granting Leave, Standing And Authority To Commence, Prosecute And Settle Claims And Counterclaims Of The Debtors' Estates" (the "Motion") filed by the Official Committee of Unsecured Creditors (the "Committee").

## PRELIMINARY STATEMENT

The Motion begs two critical questions – why now and why the Committee?

As to the first, the Committee seeks authorization to initiate the bankruptcy equivalent of World War III – with the apparent objective of avoiding upwards of *$10 billion* of debt – without a single statement about why commencement of litigation at this critical juncture in the reorganization is necessary or appropriate. In fact, no exigency exists. No statute of limitations is about to expire. No court-ordered deadline for prosecution of claims is looming. Massive

---

[1] The Credit Agreement Lenders are the entities identified in the "Second Amended Joint Verified Statement Of Representation Of More Than One Creditor By Hennigan Bennett & Dorman LLP And Young, Conaway, Stargatt & Taylor, LLP" filed concurrently herewith.

777061.3

amounts of documents and information have been produced and discovery with respect to the alleged claims is active. Vigorous settlement negotiations are ongoing. There is not a single reason to unleash the hounds of litigation right now, with all of the irreversible attendant costs and consequences.

As to the second, the Committee intimates that, due to alleged "inherent conflicts of interest," the Debtors have no interest in maximizing the value of the estates and are breaching their fiduciary duties by failing to immediately pursue their so-called "Derivative Causes of Action." The Committee, however, offers not a shred of evidence in support of this insinuation, and the record to date clearly disproves it. The Debtors have not stipulated to the allowance and enforceability of the Credit Agreement debt or waived any of the claims that the Committee seeks to assert (as frequently occurs in connection with use of cash collateral or debtor in possession financing). The Debtors also have not refused to bring suit or otherwise stated that the causes of action have no value.

To the contrary, the Debtors (like the Committee) have spent thousands of hours and millions of dollars analyzing the factual and legal bases (or lack thereof) of the claims and causes of action touted by the Committee, and the Debtors actively have attempted to extract every penny of value (and then some) in heated and ongoing negotiations with the Credit Agreement Lenders and others. While the substance of those negotiations is confidential by necessity and by Court order, it is safe to say that the Debtors have been a fierce adversary. Perhaps this is why the Committee has not taken the elemental, and required, basic first step of demanding that the Debtors pursue the causes of action – it might not want to hear what the Debtors think of the claims, or it might be afraid that the Debtors themselves will decide to initiate suit.

The only conclusion to be drawn from the Committee's failure to address these two critical questions is that the Motion is a strictly tactical artifice, filed both in response to Wilmington Trust's pending motion for the appointment of an examiner and in an effort to maximize leverage in the ongoing settlement negotiations. This may be good tactics, but it is not

remotely sufficient for overturning the Debtors' business judgment in deciding not to initiate suit at this time.

In the seminal *Cybergenics* case, the Third Circuit recognized "the need to channel avoidance actions through the trustee [or debtor in possession], who acts as a gatekeeper and prevents independent avoidance actions by creditors that might prejudice the estate and rival creditors." *Official Committee of Cybergenics Corporation v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc). The Motion should be denied because the Committee has established no compelling reason for removing the Debtors – the only fiduciaries to the entire estate – as that gatekeeper at this time. Denial of the Motion will have the salutary effect of enabling the ongoing negotiations to run their course and will not prejudice any party in interest, as the Court will remain free to reconsider the question of standing at any later date.

## THE COMMITTEE HAS NOT SATISFIED ITS BURDEN OF ESTABLISHING THAT THE DEBTORS HAVE ABUSED THEIR DISCRETION OR BREACHED THEIR FIDUCIARY DUTIES

The Bankruptcy Code "vest[s] in the trustee (or the debtor-in-possession) both the power to bring an avoidance action and the duty to bring one if it would likely benefit the estate." *Cybergenics*, 330 F.3d at 568. "[T]he numerous provisions in the Bankruptcy Code establishing the debtor's authority to manage the estate and its legal claims . . . evince[] Congress's desire to leave administration of the chapter 11 estate solely in the hands of the debtor-in-possession." *In re Smart World Technologies, LLC*, 423 F.3d 166, 174 (2d Cir. 2005); *e.g., In re Adelphia Communications Corporation*, 371 B.R. 660, 670 (S.D.N.Y. 2007) [*Adelphia II*] (noting "the superior role the Code assigns to a debtor-in-possession to act as legal representative and fiduciary of the estate") (quotation omitted).

Thus, "[i]n making the debtor-in-possession accountable for the estate's legal claims, Congress vested the debtor with the responsibility to determine how best to handle those claims." *Smart World*, 423 F.3d at 175. Indeed, "the debtor's duty to wisely manage the estate's legal

claims is implicit in the debtor's role as the estate's only fiduciary." *Id.*; *accord, e.g.*, *In re Baltimore Emergency Services II, Corp.*, 432 F.3d 557, 562 (4th Cir. 2005) ("[D]erivative standing is the exception rather than the rule. If the former were to swallow the latter, creditors could usurp the central role that the trustee or debtor-in-possession plays as the representative of the estate. This state of affairs would be problematic, because the interests of a creditor or creditors' committee may not always align with those of the estate.").

As with other decisions regarding the interests of the bankruptcy estate, the debtor in possession's actions in respect of estate causes of action are assessed in the context of the business judgment rule. *Cybergenics*, 330 F.3d at 575 ("The concern that derivative suits might be 'value-dissipating' is adequately served by affording a debtor the deference normally accorded pursuant to the business judgment rule."). Accordingly, courts respect a debtor's decisions regarding whether or when to bring avoidance and other actions unless the debtor abuses its discretion or breaches its fiduciary duty to the bankruptcy estate:

> [T]he court approval process is intended to ferret out situations in which the debtor, in failing to file suit, has abused its discretion or otherwise acted in derogation of its fiduciary duties to the estate.

*In re National Forge Company*, 326 B.R. 532, 555 (W.D. Pa. 2005); *see, e.g.*, *In re Racing Services, Inc.*, 540 F.3d 892, 900 (8th Cir. 2008) ("the critical inquiry is whether the trustee (or debtor-in-possession) abused its discretion by *unjustifiably* refusing to pursue the creditor's proposed claims") (emphasis in original); *Cybergenics*, 330 F.3d at 575 (derivative standing only appropriate "[w]hen a debtor's action is beyond the scope of that deference"); *In re Gibson Group, Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995) (derivative standing only appropriate where "the inaction is an abuse of discretion ('unjustified') in light of the debtor-in-possession's duties in a Chapter 11 case").

A party, like the Committee, that challenges a debtor in possession's delay or refusal to bring an avoidance action bears a heavy burden:

> The real challenge for the creditor will be to persuade the bankruptcy court that the trustee unjustifiably refuses to bring its claims. To satisfy its burden, the creditor, at a minimum, must provide the bankruptcy court with *specific* reasons why it believes the trustee's refusal is unjustified. A creditor thus does not meet its burden with a naked assertion that "the trustee's refusal is unjustified." If presented with nothing more than this, the bankruptcy court may properly deny a creditor's motion without explanation. The creditor, *not the bankruptcy court*, has the onus of establishing the trustee unjustifiably refuses to bring the creditor's claim.

*Racing Services*, 540 F.3d at 900 (emphasis in original) (footnotes omitted); *see, e.g., Baltimore Emergency*, 432 F.3d at 561 (derivative standing "only under strict conditions"); *In re Prime Motor Inns, Inc.*, 135 B.R. 917, 919 (Bankr. S.D. Fla. 1992) (derivative standing only granted in "extraordinary circumstances"). The petitioning creditor (or committee) can only satisfy its burden with "competent evidence, for example, in the form of affidavits or through oral testimony at an evidentiary hearing." *Racing Services*, 540 F.3d at 900 n.8.

Here, the Committee has not come close to satisfying that heavy burden. In fact, **the Committee does not allege that the Debtors have breached their fiduciary duties or abused their discretion**, much less proffer competent evidence to that end. This is absolutely fatal to the requested relief.

The Committee asserts only that the Debtors are subject to a conflict of interest because "the Debtors themselves approved the LBO and will not want to pursue an action that attacks the LBO Debt." Motion at 10. But the facts belie this nebulous allegation – the Debtors have thoroughly investigated the purported claims and vigorously negotiated them with the Credit Agreement Lenders and others. There is no evidence whatsoever that the Debtors would not be ready, willing, and able to commence litigation if negotiations break down and they conclude that it would be in the best interests of the estates to pursue the claims. In fact, there are very good reasons for the Debtors to have concluded that it is not in the interests of the estates to begin litigation at this time.

For one thing, any such litigation would be massively expensive, as demonstrated by the $13 million in fees incurred by the Committee to date in simply "investigating" the claims. It is sensible to see if the claims can be resolved or limited before plunging down the litigation rabbit hole. For another thing, negotiations regarding the claims in fact are active and ongoing. The filing of a complaint at this time undoubtedly would disrupt, and perhaps terminate, those negotiations and squelch the prospect for a settlement that would be in the best interests of the estate.

Had the Committee taken the essential first step of making a formal demand on the Debtors to pursue the claims, the Debtors undoubtedly would have explained this and set forth the other reasons why they believe that the Committee's "shoot first, ask questions later" strategy is not in the best interests of the estate. This is the purpose of the "demand" requirement that the Committee so blithely ignored. *See, e.g., National Forge*, 326 B.R. at 544 ("The policy concerns underlying the general requirement of a formal demand are to ensure that the debtor is (i) informed of the committee's intent to assert the subject claims and (ii) afforded an opportunity to explain its reasons, if any, for declining to pursue the claims itself.").[2]

Indeed, the Motion is permeated with an air of entitlement, as if the Committee assumes that its formulaic recitation of various factors culled from different cases automatically equate to a grant of standing in these cases. A closer look at the cases cited by the Committee, however, reveals that each one had facts vastly different from those at issue here:

---

[2] The cases that the Committee cites in support of the proposition that it is "excused" from a making a demand of the Debtors are not close to analogous here. In *National Forge*, for example, "the Debtor waived all rights it had to contest the Bank's claims by express language in the Interim and Final DIP Orders," meaning that "the Debtor clearly could not have pressed the Adversary Proceeding against the Banks." *National Forge*, 326 B.R. at 545. Further "the Debtor (through its key employees) at all times fervently opposed the action." *Id.* at 544. Similarly, in *G-I Holdings*, the debtors had "taken positions in opposition to the proposed" claims that the committee sought to pursue and made it clear that they believed that the claims had no merit. *In re G-I Holdings, Inc.*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004). And, in *First Capital*, the claims that the committee sought to pursue were directly against the debtor's directors and officers, not against unaffiliated third party lenders as in this case. *In re First Capital Holdings Corp.*, 146 B.R. 7, 13 (Bankr. C.D. Cal. 1992).

- In *Cybergenics* (cited at page 5 of the Motion), for example, the debtor refused to file an action, "claiming that that the costs would likely outweigh the benefits, and it maintained this position even after the Committee volunteered to bear all litigation costs." *Cybergenics*, 330 F.3d at 558. On those facts, the court had no problem concluding that the debtor had "violated its fiduciary duty to maximize the estate's value." *Id.* at 568. That obviously is not this case.

- In *Valley Media* (cited at page 5 of the Motion), the debtor consented to the committee's prosecution of the action. *In re Valley Media, Inc.*, Case No. 01-11353, 2003 WL 21956410 (Bankr. D. Del. Aug. 14, 2003), *1. The Debtors have not consented to the Committee's standing at this time.

- In *Yes! Entertainment* (cited at page 6 of the Motion), "the statute of limitations was about to expire" and the chapter 11 trustee supported the grant of derivative standing. *In re Yes! Entertainment Corp.*, 316 B.R. 141, 145 (D. Del. 2004). There is no statute of limitations issue in this case, and the Debtors do not support a grant of derivative standing at this time.

- In *Fedders North America* (cited at page 6 of the Motion), the claims at issue were to "be extinguished in seven days" as a result of a previously-entered cash collateral order. *In re Fedders North America, Inc.*, Case No. 07-11176 (Bankr. D. Del. Mar. 24, 2008) (Motion, Ex. B, at 96). Judge Shannon held that "it is the prospect of forfeiture of those potential claims or causes of action that is a factor that weighs heavily in my decision today." *Id.* There is no prospect of forfeiture in this case.

- In *Adelphia* (cited at page 6 of the Motion), the debtors consented to the derivative grant of standing to the committee and served as "co-plaintiffs" with the committee. *In re Adelphia Communications Corp.*, 330 B.R. 364, 372 (Bankr. S.D.N.Y. 2005) [*Adelphia I*]. Further, the action was filed in order "to meet a deadline that had been imposed upon [the committee] under Adelphia's DIP financing." *Id.* at 369. There

is no deadline at issue here, and the Debtors have not consented to the Committee's standing at this time.

- In *iPCS* (cited at page 8 of the Motion), the debtors consented to a grant of derivative standing and "the Debtors, the Committee, and the Debtors' major secured creditor are all in fervent support of this [derivative] action." *In re iPCS, Inc.*, 297 B.R. 283, 298 (Bankr. N.D. Ga. 2003). That is not the case here.

- In *National Forge* (cited at page 8 of the Motion), "the Debtor waived all rights it had to contest the Bank's claims by express language in the Interim and DIP Orders" and "at all times fervently opposed the action." *National Forge*, 326 B.R. at 544-45. The Debtors here have not waived any rights.

This is the end of the inquiry. Unless and until the Committee alleges and proves that the Debtors have breached their fiduciary duties by unjustifiably refusing to initiate suit in respect of the so-called Derivative Causes of Action, the Committee is not entitled to pursue those claims under *Cybergenics* or any of the other cases that it cites.[3]

That said, a brief word about the Committee's "colorable claim" argument is in order. The Credit Agreement Lenders do not agree that "there is substantial evidence that the LBO Debt was fraudulent incurred and should be avoided" or that the Committee, in its draft complaint, raises any colorable claims whatsoever. In fact, as discovery proceeds and depositions are taken, the notion of a material recovery on those claims becomes more and more ludicrous with every passing day. The Committee's draft complaint is rife with allegations that are easily and readily refuted with documents and undisputed facts. The Court should expect that, if standing is granted and the complaint is filed, motions to dismiss will follow shortly thereafter, likely knocking out the lion's share, if not all, of the claims that the Committee now

---

[3] The Committee claims that it really does not need standing because it can object to the Credit Agreement claims in any event. Motion at 8. Not so. Courts readily reject efforts to adjudicate estate claims through back door claim objections. *See, e.g., Adelphia II*, 371 B.R. at 675; *Prime Motor*, 135 B.R. at 921 ("It is clear that the statutory language of § 547, which specifically vests standing to bring avoidance actions in a trustee, cannot be circumvented merely by asserting § 547 defensively" as an objection to claim.).

- 8 -

777061.3

wishes to pursue. If the Court wishes substantive briefing on the "colorability" standard, the Credit Agreement Lenders are happy to provided it under a rational schedule that provides a response time of more than ten days (the time provided for objection to the Committee's Motion), subject of course to the constraints of confidentiality that prompted the Committee to file its entire draft complaint under seal.

## IN ANY EVENT, IT IS INAPPROPRIATE TO GRANT THE COMMITTEE AUTHORITY TO "SETTLE" ESTATE CAUSES OF ACTION

The Committee asks that the Court grant it "leave, standing and authority to commence, prosecute and settle the Derivative Causes of Action . . . with the full rights and privileges and in the stead of the Debtors." Proposed Order on Motion, at 1. This request for authority to settle the claims is wildly inappropriate.

First and foremost, any grant of derivative standing to the Committee is and must be conditional:

> [A] bankruptcy court may exercise its equitable power to withdraw derivative standing if the court concludes that maintenance of the litigation being pursued by a committee no longer meets the test outlined above (*i.e.*, that allowing the litigation to continue would be detrimental to either the estate's best interest, or to the fair and efficient resolution of the bankruptcy proceeding).

*Adelphia II*, 371 B.R. at 667. In other words, even if permitted to bring the so-called Derivative Causes of Action on behalf of the estate, ownership of the claims cannot and would not vest in the Committee. *Id.* at 671 ("ability to control the additional claims never vested the Equity Committee with ownership of them").

Second, as recognized by the Second Circuit, Bankruptcy Rule 9019 "only authorizes the trustee, or debtor-in-possession, to bring a motion for settlement." *Smart World*, 423 F.3d at 174 (footnote omitted). Indeed, Rule 9019 is "consistent with the debtor-in-possession's role as legal representative of the bankruptcy estate," *id.*, regardless of whether a creditor or committee (with

777061.3

fiduciary duties only to its constituents and not to the entire estate) is authorized to pursue claims on behalf of the estate. *See id.* at 175 ("Rule 9019, which by its terms permits only the debtor-in-possession to move for settlement, is in complete harmony with the provisions of the Bankruptcy Code delineating the chapter 11 debtor's role.").

At the core, a "reservation by the Debtors of the ability to settle [the] cases protects the estates." *Adelphia I*, 330 B.R. at 382. Thus, even if the Court determines to grant standing to the Committee at this point, it should reserve to the Debtors the right to settle the claims pursuant to Rule 9019 as a safety valve for the protection of the estates by the only fiduciary charged with duties to the estates as a whole.

## CONCLUSION

For all of the foregoing reasons, the Credit Agreement Lenders respectfully request that the Court deny the Motion.

Dated: February 11, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

- and -

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
James O. Johnston
Joshua D. Morse
865 S. Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

*Counsel to the Credit Agreement Lenders*

777061.3