IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case Nos. 08-13141 (KJC), *et seq.*<br>(jointly administered)<br><br>**Objections due by: February 11, 2010**<br>**Hearing Date: February 18, 2010, 10:00 a.m.** |

**JOINDER OF TM RETIREES TO THE OBJECTION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTION OF WILMINGTON TRUST COMPANY FOR APPOINTMENT OF
AN EXAMINER PURSUANT TO SECTION 1104(C) OF THE BANKRUPTCY CODE**
*(relates to Docket No. 3062 & 3360)*

Teitelbaum & Baskin, LLP and Pinckney, Harris & Weidinger, LLC, as attorneys for

approximately 200 former employees (and beneficiaries of such former employees) (the "TM

Retirees")[1] of The Times Mirror Company ("Times Mirror"), who were receiving or entitled to

receive payments under certain qualified and non-qualified retirement plans of one or more of the

Debtors, for their statement in support of the objection (the "Objection") (Docket No. 3360) filed by

the Official Committee of Unsecured Creditors (the "OCC") to the Motion of Wilmington

Trust Company ("Wilmington Trust") for Appointment of an Examiner Pursuant to Section

1104(c) of the Bankruptcy Code (the "Motion"), respectfully state:

1.      The TM Retirees support the Objection and adopt the well pleaded legal and

factual arguments made in the Objection.  The TM Retirees file this pleading to remind the

parties involved in these cases, including institutional investors which are seeking a return on

their investments (many of which are for far less than par), and the professionals which, upon

---

[1] Among the TM Retirees supporting this response is William Niese, a member of the
OCC. Teitelbaum & Baskin also represents Mr. Niese in his role as a member of the OCC. This
pleading is filed on behalf of the TM Retirees, including Mr. Niese, in their capacity as creditors
and parties in interest and not in any manner as a representative of the OCC. The positions
taken herein do not necessarily reflect the position of the OCC, and the OCC has not been
consulted in connection with this pleading.

information and belief,  have already billed these estates approximately $62 million dollars for fees and expenses as of August 31, 2009 (not including amounts paid to the Senior Lenders by non-debtors), and continue to do so at approximately $7 million per month, that the lives of real people hang in the balance of these cases.

2.      Like Wilmington Trust, the TM Retirees have parochial concerns.  Wilmington Trust is concerned with maneuvering around contractual subordination provisions with the Senior Lenders to provide a return to speculators who participated in the overleveraging of the Debtors.  The TM Retirees, however, are concerned with paying medical bills, college tuitions and daily living expenses and replenishing retirement funds when retirement is already upon them.

3.      Unlike Wilmington Trust, the TM Retirees do not believe that the appointment of an examiner will accomplish anything other than incur millions of dollars in additional professional fees that could be used to fund distributions to creditors. It is incredible that, by the end of this year, even without an examiner, it is likely that at least **$160 Million** will be spent for professional fees, rather than for creditor distributions.

4.      The TM Retirees represent approximately 200 of the approximately 450 retirees, former employees and current employees of Tribune Company who are entitled to non –qualified benefits. Many of these people had given a lifetime of service to the Debtors and Times Mirror. The TM Retirees represent approximately $112 million of the estimated $125 million total retiree claims which arise from benefits claimed under four non-qualified plans assumed or provided by one or more of the Debtors, referred to as the Deferred Compensation Plan, the Excess Pension Plan, the Supplemental Executive Retirement Plan and the Supplemental 401(k) Plan (collectively, the "Plans"), as well as various individualized retirement agreements ("Supplemental Agreements").

5.      Unlike the institutions which are fighting over who will own the carcass of the Debtors upon exit from bankruptcy, retirees of the Debtors, including the TM Retirees are people, mostly of retirement age, who need a material distribution of cash to continue with their lives.  For years prior to the ill conceived and failed transactions leading to bankruptcy, these

retirees relied upon distributions from the Plans and Supplemental Agreements as a significant part of their retirement income.  Following the commencement of these cases over a year ago, the retirees were provided with less than one month's notice that the distributions from the Plans and Supplemental Agreements would be discontinued and that they would be treated as general unsecured creditors in these cases.  Many retirees in their so-called "golden years" have been forced to try to obtain jobs in this extremely harsh economic environment just to pay basic expenses.  For others it represents a significant percentage of their retirement nest egg and net worth. For all creditors, the decision to burden this icon of the publishing business with $13 Billion of debt has been material and devastating.

7.       The TM Retirees agree that there needs to be accountability for the devastation caused by the transactions which eviscerated the Debtors' financial health. The TM Retirees relied upon the management of Times Mirror, and thereafter Tribune, to act in a fiscally responsible manner in safeguarding their retirement. These individuals, unlike former executives of Tribune, did not have the same opportunity to accelerate pension distributions from certain Plans and Supplemental Agreements before Tribune was burdened with approximately $13 billion in debt.

8.       The TM Retirees believe that the OCC has been configured to evaluate the interests of all unsecured creditors and, up to this point in time, the OCC and its counsel have been diligently pursuing various parallel paths to try to achieve a resolution of these cases which is fair to all unsecured creditors, not just one constituency.  The TM Retirees believe that the Motion is nothing more than a litigation tactic by a disgruntled creditor.  Wilmington Trust knows that the appointment of an examiner will cost this estate months of valuable time and millions of valuable dollars.

9.       Putting it bluntly, Wilmington Trust has determined that it is so far under water that it has nothing to loose by threatening to burden the estates with millions of dollars of additional professional fees and is counting on the settlement value, as opposed to the merits, of the Motion to enhance its own position at the expense of creditors and the estate.

**WHEREFORE,** the TM Retirees respectfully request that the Motion be denied and that the Court grant such other and further relief as may be just and proper.

Dated: February 11, 2010                  Respectfully submitted,
       Wilmington, Delaware

                                  PINCKNEY, HARRIS & WEIDINGER, LLC


                                   **/s/ Adam Hiller**
                                  Adam Hiller (DE No. 4105)
                                  Donna Harris (DE No. 3740)
                                  1220 North Market Street, Suite 950
                                  Wilmington, Delaware 19801
                                  (302) 504-1497 telephone
                                  (302) 442-7046 facsimile

                                  -and-

                                  Jay Teitelbaum, Esquire
                                  Teitelbaum & Baskin, LLP
                                  Counselors at Law
                                  3 Barker Avenue, Third Floor
                                  White Plains, New York  10601
                                  (512) 474-1554 telephone
                                  (512) 474-1579 facsimile

                                  *Attorneys for the TM Retirees*