IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 08 – 13141 (KJC)<br>Jointly Administered<br><br>Hearing Date: February 18, 2010 at 10:00 a.m. (ET) |

**JOINDER OF CENTERBRIDGE CREDIT ADVISORS LLC TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES**

Centerbridge Credit Advisors LLC, on behalf of funds advised by itself and its affiliates (collectively, "CCA"), by and through its undersigned counsel, hereby joins (the "Joinder") in the Motion of the Official Committee of Unsecured Creditors (the "Committee") for entry of an order granting leave, standing and authority to commence, prosecute and settle claims and counterclaims of the Debtors' estates (the "Standing Motion").[1] In support of this Joinder, CCA respectfully submits as follows:[2]

## BACKGROUND

1. CCA is a holder of approximately 37% of the senior notes issued by debtor Tribune Company ("Tribune," and with its debtor subsidiaries, the "Debtors").

2. In 2007, the Debtors consummated a leveraged buyout transaction (the "LBO Transaction") that resulted in the Debtors incurring over $10 billion of debt (the "LBO Debt") that was made structurally senior to the Debtors' preexisting debt, including the debt held by CCA.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Standing Motion.
[2] The Committee granted CCA a one-day extension to file this joinder.

3.   On December 8, 2008 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases are being jointly administered and have been consolidated for procedural purposes only.

4.   On December 18, 2008, the United States Trustee for the District of Delaware, pursuant to Section 102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these chapter 11 cases.

5.   Prior to the bar date set by the Court for filing proofs of claim in these cases, the agents for the lenders of the LBO Debt (the "LBO Lenders") filed proofs of claim against the Debtors in connection with the LBO Transaction.

6.   The Committee began a comprehensive investigation of the LBO Transaction in March 2009, and retained special counsel ("Special Counsel") in August 2009 to examine potential claims relating to the LBO Debt. Standing Motion ¶ 9.

7.   On August 26, 2009, Law Debenture Trust Company of New York ("Law Debenture"), as successor trustee under that certain Indenture dated March 19, 1996 between Tribune and Citibank, N.A., for the 6.65% Debentures due 2027 and the 7 1/4 % Debentures due 2096, filed a motion (the "2004 Motion"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy, for leave to conduct discovery relating to the LBO Transaction or, in the alternative, for the appointment of an examiner. Law Debenture stated in the 2004 Motion that "the LBO and the obligations incurred in connection therewith are prima facie fraudulent transfers within the meaning of sections 544 and 548 of the Bankruptcy Code, applicable state law, and Third Circuit precedent." 2004 Motion p. 2 [*Docket No. 2031*]. Thus, Law Debenture sought to "examine the documents and witnesses pertinent to the LBO to examine the conduct of the

2

Debtors and LBO participants and to realize on related claims to protect their legitimate creditor interests." 2004 Motion p. 5.

8.  On September 21, 2009, CCA filed a joinder to the relief requested in Law Debenture's 2004 Motion (the "2004 Joinder"). CCA asserted that "Rule 2004 discovery by Law Debenture and CCA is necessary to ensure that those with economic interests related to the LBO investigation (Tribune creditors) are informed and, if appropriate, armed with the knowledge necessary to prosecute a fraudulent transfer action, on behalf of the Debtors' estates, or defeat an ill-devised chapter 11 plan premised on shielding the Debtors' prepetition lenders from liability." 2004 Joinder ¶ 5 [*Docket No. 2176*].

9.  On or about September 23, 2009, Law Debenture, the Committee, and certain key parties to the LBO Transaction entered into a stipulated order (the "Stipulated Order") resolving the 2004 Motion. In connection with the Stipulated Order, these parties to the LBO Transaction agreed to produce to CCA and Law Debenture documents produced to the Committee in connection with its investigation of the LBO Transaction, and Law Debenture and CCA were granted the right to participate in depositions conducted by the Committee in connection with the LBO Transaction. See Stipulated Order, Exh. A [*Docket No. 2217*].[3]

10.  On February 1, 2010, the Committee filed the Standing Motion, in which the Committee seeks leave, standing and authority on behalf of the Debtors' estates to commence, prosecute and settle claims and counterclaims arising out of or in connection with the LBO Transaction (the "Derivative Causes of Action"). Standing Motion p. 1 [*Docket No. 3281*].

---

[3] Subsequent to the entry of the 2004 Order, additional parties served with discovery by the Committee in connection with its investigation of the LBO Transaction agreed to provide copies of responsive information to Law Debenture and CCA. A document repository of produced information, to which Law Debenture and CCA have access, has since been established.

## CCA'S JOINDER

11. As set forth in the Standing Motion, Special Counsel has taken several oral examinations, and reviewed "massive amounts of information." Standing Motion ¶ 9. As a result, the Committee has concluded that there is "substantial evidence" that the LBO Debt was fraudulently incurred and should be avoided, that the claims asserted against the Debtors by the LBO Lenders should be equitably subordinated and disallowed, that certain payments made in connection with the LBO Debt should also be avoided, and that the Lead Banks are liable to the Debtors for breach of fiduciary duty damages. Id. at ¶ 10.

12. CCA's own review and analysis of the LBO Transaction, and that conducted by its fiduciary Law Debenture, have led it to concur with the Committee's analysis. Evidence shows that the LBO Transaction constituted a fraudulent conveyance that siphoned off billions of dollars of value that should be available to fund the recoveries of the Debtors' pre-LBO lenders. The Derivative Causes of Action are thus essential to the equitable and appropriate distribution of value to the Debtors' creditors.

13. The Debtors have shown no willingness or inclination to prosecute the Derivative Causes of Action, engaging instead in what have been thus far unsuccessful efforts to broker a settlement among the LBO Lenders and the Debtors' other creditors. The Debtors' position in this regard is unsurprising, given that Samuel Zell and several of the Debtors' officers and directors were intimately involved in the LBO Transaction, and could potentially be defendants or witnesses in the Derivative Causes of Action. Moreover, both the Debtors' bankruptcy counsel and their special litigation counsel are precluded from commencing the actions due to conflicts of interest.

14. The Derivative Causes of Action have the potential of recovering billions of dollars in fees, principal and interest payments, and expenses paid to the LBO Lenders, as well

as avoiding all of the outstanding LBO Debt. These potential benefits would have a profound impact on the recoveries to be distributed to the Debtors' remaining creditors, and therefore must be pursued aggressively, and not settled away simply to fulfill the Debtors' desire to exit chapter 11 and, presumably, to secure releases for its past and present officers and directors. Given the significant evidence supporting the Derivative Causes of Action, and the enormous potential benefit to the Debtors' estates of allowing the Committee to bring them, equity demands that the Standing Motion be granted.

*[Remainder of page left intentionally blank]*

## CONCLUSION

For the foregoing reasons, and those set forth in the Standing Motion, CCA respectfully requests: (i) the entry of an order, pursuant to 11 U.S.C. §§ 105, 1103, and 1109, granting leave, standing and authority to the Committee to commence, prosecute and settle the Derivative Causes of Action, and (ii) such other and further relief as the Court deems just, proper and equitable.[4]

Dated:    February 12, 2010                Respectfully Submitted,


By: /s/ Mark M. Billion
Laura Davis Jones
Mark M. Billion
Pachulski Stang Ziehl & Jones LLP
919 North Market Street
17th Floor
Wilmington, DE  19899-8705
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)
mbillion@pszjlaw.com

-and-

Daniel H. Golden
Philip C. Dublin
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com
pdublin@akingump.com

*Counsel for Centerbridge Credit Advisors LLC*

---

[4] CCA reserves all of its rights with respect to the Standing Motion, including the right to supplement this Joinder and to file a reply to any objection filed in opposition to the Standing Motion.