IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, et al.,<br><br>            Debtors. | ) Chapter 11<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) Jointly Administered<br>)<br>) Re: Docket No. 3286<br>)<br>) Hearing date: February 18, 2010, at 10:00 a.m. (ET)<br>) Objection deadline: February 15, 2010 at 4:00 p.m. (ET)<br>) (as extended by Debtors)<br>) |

### CREDIT AGREEMENT LENDERS' OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The Credit Agreement Lenders,[1] as holders of approximately $4.6 billion principal amount of indebtedness arising under the Tribune Company Senior Secured Credit Agreement, dated as of May 17, 2007 (as amended, the "Credit Agreement"), hereby *object* to the "Motion For Entry Of An Order Pursuant To 11 U.S.C. § 1121(d) Further Extending Debtors' Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof" (the "Motion") filed by Tribune Company ("Tribune") and its various debtor subsidiaries (the "Subsidiary Debtors" and, with Tribune, the "Debtors").

\*        \*        \*

More than three months ago, the Debtors filed their third request for an extension of plan exclusivity. The Debtors conceded then that "most of the prerequisites to the filing of a Plan have been accomplished," noting that they had completed "extensive operational, financial and legal analyses related to the Plan" and made "substantial progress" on "most of the 'case administration' tasks required to bring these cases to a conclusion.[2] However, the Debtors

---

[1] The Credit Agreement Lenders are the entities identified in the "Second Amended Joint Verified Statement Of Representation Of More Than One Creditor By Hennigan Bennett & Dorman LLP And Young, Conaway, Stargatt & Taylor, LLP" [docket # 3370].

[2] "Motion For An Order Pursuant To 11 U.S.C. § 1121(d) Further Extending Debtors' Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof" [docket # 2566] ¶ 1.

argued that a further extension of exclusivity was needed in order "to bring the review of the prepetition Leveraged ESOP Transactions to a prompt conclusion," warning that termination of exclusivity could result in "destabilization and enormous expense attendant to warring creditor factions and protracted litigation."[3]

The Credit Agreement Lenders objected, explaining that they were prepared to proceed with the filing of a standalone plan of reorganization for the Subsidiary Debtors that would pay in full all known third-party claims against the Subsidiary Debtors other than those arising under the Credit Agreement and the subordinated Bridge Loan facility.[4] Such a Subsidiary Debtor plan would achieve two fundamental objectives – it would enable Tribune's actual operating businesses to exit bankruptcy rapidly, removing the ongoing harm and business overhang occasioned by these ever-lengthening proceedings, and it would constrain disputes over the so-called Leveraged ESOP Transactions to the case of parent-entity Tribune, whose creditors (and whose creditors alone) are the only constituents agitating (in ever more frenzied terms) for the "protracted litigation" feared by the Debtors.

Ultimately, the Court granted the Debtors an extension of exclusivity, albeit a shorter one than the Debtors had requested, to enable settlement and plan negotiations to commence. The Court, however, observed that:

> There may come a time when that [a standalone subsidiary plan] may be appropriate. I will tell you, Mr. Bennett's presentation was very thoughtful and it's something I will have to think about perhaps more in the future.[5]

Further, the Court held that, if the Debtors later sought yet another exclusivity extension, the Court "will need an evidentiary record" to justify an additional extension.[6]

---

[3] Id. ¶¶ 2, 12.

[4] "Credit Agreement Lenders' Objection To Debtors' Motion For An Order Pursuant To 11 U.S.C. § 1121(d) Further Extending Debtors' Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof" [docket # 2617].

[5] Transcript of hearing held on December 1, 2009, at 70.

[6] Id. at 71.

By the Motion, the Debtors now seek that additional extension, all the way through the maximum statutory period that Congress has provided for plan exclusivity. The Debtors, however, provide absolutely no new justification or basis for that extension. Instead, the Debtors repeat the bromide that they "remain steadfast in their belief that a plan of reorganization proposed by the Debtors is the most appropriate, efficient and value maximizing manner in which to proceed."[7] The Debtors also posit, as they previously have done, that "if exclusivity is terminated, disputes among creditor factions competing for their respective positions will almost certainly become the central focus of these cases."[8] The Debtors warn that "[s]uch a turn of events would mire these cases in protracted and contested proceedings, and extend the Debtors' stay in chapter 11 at enormous expenses to the estates and material damage to business operations, by, among other things, prejudicing their ability to provide assurances to their future business partners, customers, employees and vendors."[9]

This is hardly the strong evidentiary showing that Court said it would require before granting a fourth exclusivity extension. Moreover, it is an unavoidable fact that "disputes among creditor factions" have "become the central focus of these cases." One need only read the vituperative pleadings filed by the indenture trustees for Tribune parent-level creditors (Law Debenture and Wilmington Trust) to grasp this essential truth. With their overblown rhetoric, those parent-level creditors have made it clear that they intend to pursue a litigate-at-all-costs strategy, regardless of the impact such a strategy might have on the businesses or the welfare of the bankruptcy estates as a whole.

Most fundamentally, the Debtors fail to confront the fact that a standalone Subsidiary Debtor plan is the only way to avoid the harm that the Debtors fear. A Subsidiary Debtor plan would allow the actual operating businesses to exit bankruptcy in the near future, thereby preserving jobs, removing the taint of litigation, and enabling the businesses to "provide

---

[7] Motion ¶ 2.
[8] *Id.* ¶ 3.
[9] *Id.*

assurances to their future business partners, customers, employees and vendors," all while providing trade vendors and other creditors of the operating companies the ability to receive distributions now rather than having to wait for resolution of the ill-fated litigation that certain parent-level creditors are anxious to bring.

The standalone Subsidiary Debtor plan also will confine the LBO-related litigation to the Tribune parent-level estate (where it belongs, given the clear solvency of the Subsidiary Debtors at the time of the Credit Agreement transactions), thus narrowing the issues, facilitating settlement, and possibly enabling the "surgical" issue-by-issue litigation that the Debtors suggest. In short, the way to prevent litigation from becoming the "central focus of these cases" as the Debtors fear is to allow the Credit Agreement Lenders to pursue a plan for the Subsidiary Debtors.[10]

As the Debtors note, active negotiations regarding a consensual plan of reorganization are ongoing, and the Credit Agreement Lenders remain hopeful that the Debtors will be in a position to file a plan or plans that have the support of the Credit Agreement Lenders before expiration of the current exclusivity period at the end of this month. If, however, the Debtors are unable to achieve that laudable objective, there is simply no reason whatsoever, and certainly no statutory cause, for extending the Debtors' exclusivity yet again to enable them to perpetuate their stranglehold over plan alternatives in these cases.

---

[10] At the hearing on the Debtors' prior exclusivity motion, the Debtors suggested that certain non-litigation obstacles might prevent the Subsidiary Debtors from confirming a standalone plan. In the ensuing months, both the Debtors and the Credit Agreement Lenders have devoted substantial time and effort to considering potential obstacles, and all have substantially diminished following careful analysis. The Credit Agreement Lenders believe that there are no unresolvable legal or business issues that would prevent the Subsidiary Debtors from exiting chapter 11 before the Tribune parent company does.

| | |
|---|---|
| Dated: February 15, 2010 | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ Robert S. Brady<br>_____<br>Robert S. Brady (No. 2847)<br>M. Blake Cleary (No. 3614)<br>The Brandywine Building – 17th Floor<br>1000 West Street, Post Office Box 391<br>Wilmington, Delaware 19899 0391<br>Telephone: (302) 571-6600<br>Telecopier: (302) 571-1253<br><br>- and -<br><br>HENNIGAN, BENNETT & DORMAN LLP<br>Bruce Bennett<br>James O. Johnston<br>Joshua D. Morse<br>865 S. Figueroa Street, Suite 2900<br>Los Angeles, California 90017<br>Telephone: (213) 694-1200<br>Telecopier: (213) 694-1234<br><br>*Counsel to the Credit Agreement Lenders* |