UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| TRIBUNE COMPANY, *et al.*,[1] | : | Case Number 08-13141 (KJC) |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**THE UNITED STATES TRUSTEE'S STATEMENT IN SUPPORT OF THE MOTION OF WILMINGTON TRUST COMPANY, AS SUCCESSOR INDENTURE TRUSTEE, FOR APPOINTMENT OF EXAMINER PURSUANT TO SECTION 1104(c) OF THE BANKRUPTCY CODE**
**(DOCKET ENTRY # 3062)**

In support of the motion of Wilmington Trust Company, as successor indenture trustee ("WTC"), for appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); new River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxnet Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Motion"), Roberta A. DeAngelis, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, submits:

## SUMMARY

For reasons different than those articulated by Wilmington Trust Company ("WTC") in the Motion, the U.S. Trustee agrees that this Court should direct the appointment of an examiner under section 1104(c) of the Bankruptcy Code. This Court is obligated to direct the appointment of an examiner under section 1104(c)(2) because the requisite debt threshold is satisfied. Moreover, compelling reasons exist for the appointment of an examiner in order to best advance the interests of the Debtors' estates, their creditors and equity security holders. Chief among those reasons is that the mechanics of the reorganization process will be served by an impartial review of potential claims stemming from the 2007 leveraged buyout (the "LBO"), as parties in interest will be aided in their negotiation of plan terms by the examiner's independent, expert report.

## INTRODUCTION

1. Under (i) an applicable order of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and (ii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Motion.

2. Under 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the United States trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States

trustee as a "watchdog").

**STATEMENT**

3. WTC avers that both the Official Committee of Unsecured Creditors (the "Committee") and its professionals labor under conflicts of interest which cloud the Committee's efforts to address issues surrounding the LBO. While the conflicts of interest identified by WTC, without more, do not disable either the Committee members or its professionals from carrying out their obligations to general unsecured creditors, the appointment of an independent examiner removes any cloud asserted to exist by WTC. The Committee is representative of the many types of unsecured creditor interests involved in these complex cases. Indeed, it is not uncommon for an official unsecured creditors committee to be comprised of appointees who are contractually or structurally subordinate to other committee members. It is also not uncommon for committee members to be potential targets of litigation by the estate(s). The U.S. Trustee assesses whether a committee member's status as a litigation target is properly addressed by the committee as a governance matter or, alternatively, requires the member's removal. Further, the LBO issues have been on the radar of many parties in interest involved in these cases since their inception and were considered by the office of the U.S. Trustee in its review of the professional employment applications submitted by the Committee.

4. The U.S. Trustee agrees with WTC that the appointment of an examiner is required and will aid the progress of these cases. Under Code section 1104(c), if the Court has not ordered the appointment of a chapter 11 trustee, this Court must direct the appointment of an examiner

> to conduct such an investigation of [the Debtors] as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of [the Debtors] of or by current or former

>    management of [the Debtors], if –
>
>    (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
>    (2) [the Debtors'] fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

5.  The "first day" declaration of Chandler Bigelow, the Debtors' Chief Financial Officer, describes the Debtors' capital structure as including funded unsecured debt in excess of the $5 million threshold of Code section 1104(c)(2). Accordingly, the appointment of an examiner under that section to investigate the affairs of the Debtors is mandatory. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500-01 (6th Cir. 1990) ("[Section 1104(c)(2)] plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million if the U.S. trustee requests one."); *In re Loral Space & Communications Ltd.,* No. 04 Civ. 8645RPP, 2004 WL 2979785, at *4, 5 (S.D.N.Y. Dec. 23, 2004) (reversing Bankruptcy Court's decision denying appointment of examiner where $5 million debt threshold under section 1104(c)(2) was met and parties seeking appointment had standing to do so); *In re UAL Corp.,* 307 B.R. 80, 83-86 (Bankr. N.D. Ill. 2004) ("best reading of the statute" is that appointment of an examiner is mandatory if the requirements of section 1104(c)(2) are satisfied); *see also In re Mechem Fin. of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988); *In re The Bible Speaks*, 74 B.R. 511, 514 (Bankr. D. Mass.1987); *In re 1243 20th Street, Inc.*, 6 B.R. 683, 685 n.3 (Bankr. D.C. 1980); *In re Lenihan*, 4 B.R. 209, 211 (Bankr. D.R.I. 1980).

6.	While this Court may have the discretion under Code section 1104(c)(2) to set reasonable limits upon an examination, the "as is appropriate" language in that statutory subsection does not confer discretion upon this Court to decide whether an examiner should be appointed as a threshold matter. *See Loral,* 2004 WL 2979785, at *5 ("[i]t is [the bankruptcy court's] duty to fashion the role of an examiner to avoid substantial interference with the ongoing bankruptcy proceedings."); *UAL Corp.*, 307 B.R. at 85 n.2  (construing the "as is appropriate" language in section 1104(c)(2) to vest discretion in the bankruptcy court nullifies its mandate).

7.	Further, this Court should direct the appointment of an examiner under section 1104(c)(1), as such appointment would be in the best interests of the Debtors' estates, their creditors and equity security holders. WTC's argument that the Committee is incapable of "independently" addressing potential LBO claims highlights certain limitations of official committees. "The case(s) do not need an examiner because an official committee of unsecured creditors is in place" is a common response to requests for the appointment of an examiner. However, the statutory text suggests that Congress intended for examiners and official committees to function in harmony. *See* CLIFFORD J. WHITE III AND WALTER W. THEUS, JR., *Chapter 11 Trustees and Examiners After BAPCPA*, 80 AM. BANKR. L.J. 289, 323 (2006) (noting that large cases requiring a mandatory examiner appointment under section 1104(c)(2) are also the most likely segment of chapter 11 cases to have active official  creditor committees). The Committee approaches potential LBO claims in the discharge of fiduciary obligations to a broad constituency. Accordingly, the Committee's privileged evaluation of potential LBO claims (and whether it will prosecute same) should be driven by a cold, cost-benefit analysis with an eye towards maximizing return.

8. An examiner has a different purpose than an official committee. The Motion and the responses thereto suggest that there is a substantial difference of opinion between and among the Debtors and the various constituencies represented by the Committee as to the viability of potential LBO claims. An examiner would provide this Court and parties in interest with an objective opinion regarding the merits of potential LBO claims. The examiner's work product – the independent, publicly-available report – will serve as a roadmap for any causes of action. The examiner's report may also serve as a catalyst for plan negotiations and, ultimately, the resolution of potential LBO claims by establishing an objective, reliable reference point for discussion among parties in interest. *See* WHITE AND THEUS, 80 AM. BANKR. L.J. at 323, 324.

9. There are other justifications for appointment of an examiner of these cases. If parties in interest "stand down" while an examiner reviews the potential LBO claims, the Debtors' estates may reduce professional costs substantially. Additionally, there is a great deal of value in having a "clear, unbiased narrative of why the company ended up in chapter 11." WHITE AND THEUS, 80 AM. BANKR. L.J. at 324. The LBO is a key part of the Debtors' story.

10. A number of parties in interest who responded to the Motion have cited, as grounds for denying the requested relief, the fact that these cases are in a late stage. To the contrary, the fact that these cases have been pending for some time should simplify an examiner's role and reduce the cost of the examination. The examiner will be able to review the documents assembled in the central depository before determining whether further discovery is appropriate.

11. In sum, appointment of an examiner will aid the efforts to foster consensus in connection with plan negotiations. Accordingly, the U.S. Trustee supports WTC's request for relief.

## **CONCLUSION**

WHEREFORE the U.S. Trustee requests that this Court issue an order granting the Motion.

       Respectfully submitted,

       **ROBERTA A. DeANGELIS**
       **ACTING UNITED STATES TRUSTEE**


       **BY:**  /s/ Joseph J. McMahon, Jr.
            Joseph J. McMahon, Jr., Esquire (# 4819)
            Trial Attorney
            United States Department of Justice
            Office of the United States Trustee
            J. Caleb Boggs Federal Building
            844 King Street, Room 2207, Lockbox 35
            Wilmington, DE  19801
            (302) 573-6491
            (302) 573-6497 (Fax)

Date:  February 16, 2010