# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>Hearing Date: March 23, 2010 at 1:00 p.m. (ET)<br>Obj. Deadline: March 16, 2010 at 4:00 p.m. (ET)<br>Related to Docket Nos. 1298 and 1783 |

## SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF ERNST AND YOUNG LLP TO INCLUDE CONTINUED PERFORMANCE OF VALUATION SERVICES RELATING TO FCC LICENSES PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107 *NUNC PRO TUNC* TO JANUARY 15, 2010

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby submit this Supplemental Application (the "Supplemental Application") for entry of an order, in substantially the form submitted

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC, n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

herewith, modifying the scope of the Debtors' already-authorized employment of Ernst and Young LLP ("E&Y"). E&Y is currently retained by the Debtors pursuant to section 327(a) of the title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to provide (i) valuation and business modeling services and (ii) market survey services. The terms of E&Y's existing retention by the Debtors are summarized in the Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst and Young LLP to provide (i) valuation and business modeling services, and (ii) market survey services to the Debtors, pursuant to section 327(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules, nunc pro tunc to May 31, 2009, which was filed on June 5, 2009 [Docket No. 1298] (the "Application") and subsequently approved by an order of this Court on July 21, 2009 [Docket No. 1783] (the "Original Retention Order"). The Application is hereby incorporated by reference.[2]

The limited purpose of this Supplemental Application is to modify the retention of E&Y to ensure that the scope of such retention encompasses valuation services for certain FCC licenses (the "FCC Licenses") held by the Debtors, which valuations are to be done as of November 30, 2009. Such services are a continuation of similar services previously performed by E&Y under the Application for 2008 valuation services; however, the Debtors anticipate that the 2009 valuation services will be more limited and less costly than those already authorized under the Application. In support of this Supplemental Application, the Debtors respectfully represent as follows:

---

[2] The Debtors also incorporate herein by reference the Affidavit of Matthew Howley in Support of the Application, which was filed on June 5, 2009 [Docket No. 1298].

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

## BACKGROUND TO THE SUPPLEMENTAL APPLICATION

6. Pursuant to the Original Retention Order, E&Y was authorized to provide certain valuation services to assist Tribune Company ("Tribune") in testing for the impairment of goodwill and other indefinite lived tangible assets recorded in Tribune's consolidated financial statements (the "Assets") in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 142 ("SFAS 142"), and to test for the recoverability of certain long-lived assets of the Company in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 144 ("SFAS 144") and to provide the Debtors with certain market survey services, including providing broadcasting marketing analyses according to the terms of the Market Services Agreements (as defined in the Application).

7. Tribune maintains certain FCC Licenses which are classified by Tribune as indefinite-lived assets. As part of the services encompassed within the original Application, and authorized pursuant to the Original Retention Order, E&Y was asked by the Debtors to determine the fair value of the FCC Licenses as of November 30, 2008. The purpose of this Supplemental Application is to modify E&Y's existing retention for the limited purpose of ensuring that E&Y is authorized to perform similar services with respect to the FCC Licenses for 2009. Specifically, E&Y will assist Tribune's management with its impairment testing, in accordance with SFAS 142, by determining the fair value of the FCC Licenses as of November 30, 2009.[4]

---

[4] To the extent that the summary of the proposed engagement described herein differs from the terms of the Statement of Work ("SOW") attached hereto as Exhibit A, the terms of the SOW shall control.

## **RELIEF REQUESTED**

8.      By this Supplemental Application, the Debtors seek authorization to employ and retain E&Y <u>nunc pro tunc</u> to January 15, 2010, to provide valuation and business modeling services in connection with the FCC Licenses as outlined in the Statement of Work attached hereto as <u>Exhibit A</u> (the "<u>SOW</u>") and in accordance with the engagement letter dated May 15, 2009 between Tribune and E&Y (the "<u>Agreement</u>") which was approved by this Court pursuant to the Original Retention Order (the "<u>FCC Services</u>"). Specifically, the Debtors seek to retain E&Y to perform the following services relating to the 2009 valuation, in accordance with the Agreement and as set forth in the SOW:

- Interviews with Tribune management concerning the nature of the FCC Licenses;

- Consideration of any business plans, future performance estimates or budgets relating to the FCC Licenses;

- Consideration of applicable economic, industry, and competitive environments, including relevant historical and future estimated trends;

- Valuation analysis of the FCC Licenses as of the Valuation Date giving consideration to appropriate approaches to value;

- Preparation of exhibits summarizing recommendations of a range of fair values.

Given that E&Y has already performed certain of the above services in connection with its retention under the original Application, the Debtors anticipate that E&Y will require less time, and incur less in fees and costs, to perform the 2009 valuation services than was required for the 2008 valuation services.

9. The Debtors believe that the FCC Services are encompassed within the matters for which the Court has already approved E&Y's retention by the Debtors in the original Application. However, out of an abundance of caution and in the interest of full disclosure, the Debtors submit this Supplemental Application to clarify the scope of E&Y's retention and ensure that no dispute exists that E&Y is authorized to perform the 2009 valuation services. See Application at ¶ 7. Modifying the scope of E&Y's representation to include the FCC Services is in the best interests of the Debtors' estates and creditors because E&Y is best positioned to perform the needed services efficiently and economically on behalf of the Debtors. E&Y is familiar with the FCC Licenses and has done nearly identical valuation-related work respecting the FCC Licenses on behalf of the Debtors for prior periods, making E&Y uniquely able to accomplish the requested services efficiently and cost-effectively.

10. The Debtors' engagement of E&Y with regard to the FCC Services is consistent with the measured scope of the Debtors' engagement of E&Y prior to the date hereof. The partners, managers and staff of E&Y, through E&Y's prior work for the Debtors, are very familiar with the Debtors, their financial statements and certain of their indefinite-lived intangibles. It is in the best interest of the estates and all creditors to retain E&Y to continue to perform the FCC Services, as the time and cost associated with engaging new consultants who are unfamiliar with the Debtors and their assets would be both costly and inefficient. The Debtors therefore request this Court's authorization to approve the expansion of E&Y's Application to include the FCC Services pursuant to the terms of the SOW, nunc pro tunc to January 15, 2010.

11. Subject to the Court's approval, E&Y will charge the Debtors for its performance of the FCC Services on the basis described in the SOW, in accordance with the

applicable orders of this Court concerning the compensation of professionals in the Debtors' chapter 11 cases. See Application at ¶¶ 14-15. The Debtors project that E&Y's fees in connection with the FCC Services will be approximately $20,000 in total. The projected amounts of E&Y's fees as described in this paragraph is provided solely as an estimate and is not intended to be construed as a cap on E&Y's fees, nor are the Debtors requesting a cap on E&Y's fees. Moreover, the projected amounts of E&Y's fees described in this paragraph are subject to change depending upon unforeseen events or delays in connection with this engagement, and E&Y has not agreed to these projected amounts or timeframes given the possibility of such unforeseen events or delays.

## LEGAL AUTHORITY

12.     The Debtors existing retention of E&Y, and the proposed modification of that retention described herein, are pursuant to section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

13. To the best of the Debtors' knowledge, information and belief, and based on E&Y's representations in the Howley Affidavit, E&Y is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for employment in these cases.

14. In the instant case, the retention of E&Y by the Debtors with respect to the FCC Services is in the best interests of the Debtors' estates, and satisfies all other standards for retention under sections 327(a) and 1107. The FCC Services are similar, if not identical, to services already within the scope of the types of services for which the E&Y is currently retained by the Debtors. The Debtors are submitting this Supplemental Application solely to ensure that E&Y can perform valuation-related services for the FCC Licenses as of 2009 in essentially the same fashion as it has already performed such services, pursuant to its existing retention, for 2008. This Supplemental Application should as a result be approved by the Court, and the Court should approve E&Y's performance of the FCC Services for the Debtors in connection with the FCC Licenses is permitted pursuant to the terms of the SOW.

## NOTICE

15. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to E&Y; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

16. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors' supplemental application and retention of E&Y to perform the FCC Services in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code <u>nunc</u> <u>pro</u> <u>tunc</u> to January 15, 2010, pursuant to the terms of the SOW, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: February ___, 2010

                                                TRIBUNE COMPANY
                                                (for itself and on behalf of each Debtor)

                                                _____
                                                Brian Litman
                                                Vice President/Corporate Controller