# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Hearing Date: March 23, 2010 at 1:00 p.m. EST<br>Objection Date: March 16, 2010 at 4:00 p.m. EST |

## APPLICATION OF CORPORATE TAX MANAGEMENT, INC. FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR SERVICES RENDERED AS TAX ADVISORS TO DEBTOR LOS ANGELES TIMES COMMUNICATIONS, LLC IN THE ORDINARY COURSE OF BUSINESS

Corporate Tax Management, Inc. ("CTMI"), state and local tax advisors for Los Angeles Times Communications, LLC ("Los Angeles Times"), one of the affiliated companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Debtors"), respectfully submits this application (the "Application") to this Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the Order Authorizing the Debtors to Retain, Employ, and Compensation Certain Professionals Utilized by the Debtors in the Ordinary Course of Business (the "OCP Order"), (v) the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim Compensation Order"), as amended, and (vi) the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Application (the "Fee Examiner Order") for (i) the allowance of fees in the aggregate amount of $118,475.00 for services rendered to the Los Angeles Times, consisting of (a) $104,775.00 relating to personal property tax recoveries approved by the Los Angeles County Assessment Appeals Board and (b) $13,700.00 for tax return preparation and filing for the tax year 2010, and (ii) the limited waiver of the procedures for the approval and payment of professional compensation and consideration of fee applications set forth in the Interim Compensation Order and the Fee Examiner Order with respect to this Application (as discussed at paragraph 16, infra). In support of the Application, CTMI respectfully states as follows:

## BACKGROUND OF THE CASES

1. On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter

5226553

11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

6. On December 26, 2008, the Debtors filed the Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code (the "OCP Motion"). [Docket No. 148.] In the OCP Motion, the

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

Debtors sought approval of this Court to employ and retain the Ordinary Course Professionals[3] to provide services to the Debtors as necessary for the day-to-day operations of the Debtors' businesses on terms substantially similar to those in effect prior to the Petition Date. Exhibit A to the OCP Motion contained a list of such Ordinary Course Professionals sought to be retained by the Debtors, including CTMI.[4] On January 15, 2009, this Court granted the OCP Order approving procedures for the employment, retention, and compensation of the Ordinary Course Professionals. [Docket No. 227.]

7. Retention and compensation of the Ordinary Course Professionals is subject to the terms and conditions described in the OCP Order, including a Monthly Cap on the fees permitted to be paid to such Ordinary Course Professionals, per month on average over a rolling three-month period. CTMI was retained by the Debtors to provide personal and secured property tax filings and audit support in the ordinary course of business, with a Monthly Cap of $15,000.00.

8. The OCP Order provides that in the event the fees incurred and invoiced by any Ordinary Course Professional exceed the applicable Monthly Cap, such Ordinary Course Professional shall be required to seek this Court's approval of all fees invoiced for that month in accordance with the procedures set forth in the Interim Compensation Order and the Fee Examiner Order.

9. The Debtors retained CTMI as an Ordinary Course Professional on the same terms as set forth in the parties' existing services agreements, as the same may be modified

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the OCP Motion and OCP Order.

[4] Exhibit A to the OCP Motion has been subsequently supplemented and amended by the Debtors to add additional Ordinary Course Professionals or to seek increases to the Monthly Cap applicable to existing Ordinary Course Professionals. [See Docket Nos. 544, 877, 1086, 1756, 1826, 1887, 2283 and 2412.]

from time to time, pursuant to which CTMI serves as agent to the Los Angeles Times in connection with all negotiations with tax authorities in Los Angeles County and Orange County, California, to achieve possible reductions and/or refunds in the Los Angeles Times' personal property taxes. Pursuant to the services agreement relating to the services which compensation is sought herein dated August 26, 2005, a copy of which is attached hereto at Attachment 1, CTMI agreed to represent the Los Angeles Times in connection with personal property tax audit support for tax years 2001-2004, at an hourly rate of $275 per hour. The Los Angeles Times and CTMI further agreed that the fees incurred by CTMI in connection with providing such audit support services would accrue and be payable only if and when the Los Angeles Times actually received a refund obtained for its benefit by CTMI.

        10.    In late July 2009, the Los Angeles County Assessment Appeals Board approved a property tax refund from Los Angeles County to the Los Angeles Times in a principal amount of approximately $2,326,000.00 for the 2001-2004 tax years, which refund was obtained as a result of the efforts of CTMI in providing audit support services to the Los Angeles Times (the "Refund"). Since December 2009, Los Angeles County has remitted approximately $1,175,000.00 of the Refund, plus interest earned thereon, for a total of approximately $2,204,000.00, to the Los Angeles Times.

        11.    CTMI has submitted two invoices for professional services rendered in connection with obtaining the Refund, in the aggregate amount of $104,775.00. Copies of these invoices and corresponding time detail are attached hereto as Attachment 2. The first invoice, dated January 28, 2010, seeks payment of $62,865.00. This invoice represents 60% of CTMI's total fee in connection with obtaining the Refund, proportionate to the percentage amount of the Refund actually received by the Los Angeles Times through that date, and is currently due and

payable. The second invoice, dated February 26, 2010, is for the balance of CTMI's fees in the amount of $41,910.00 and is payable in its entirety once the Los Angeles Times receives the balance of the Refund due from Los Angeles County.

12.     In addition to the fees incurred in connection with obtaining the Refund, subsequent to the Petition Date, the Los Angeles Times engaged CTMI to prepare and file its 2010 tax returns, for a flat fee of $13,700. A copy of the services agreement relating to 2010 services is attached hereto as Attachment 3. CTMI invoiced the Los Angeles Times for such services on February 9, 2010. A copy of the invoice is attached hereto as Attachment 4.

13.     Taken together, the professional fees of CTMI that were earned and invoiced to the Debtors for the months of January and February 2010 total $62,865.00 and $55,610.00, respectively, exceeding CTMI's applicable monthly cap of $15,000.00 on a rolling three-month basis. Accordingly, CTMI seeks this Court's allowance of such fees.

### RELIEF REQUESTED

14.     By this Application, CTMI seeks (i) the allowance of fees in the aggregate amount of $118,475.00 for services rendered to the Debtors in the months of January and February 2010, consisting of (a) $104,775.00 relating to personal property tax recoveries approved by the California Assessment Appeals Board and (b) a flat fee of $13,700.00 for tax return preparation and filing for the tax year 2010, and (ii) the limited waiver of the procedures for the approval and payment of professional compensation and consideration of fee applications set forth in the Interim Compensation Order and the Fee Examiner Order with respect to this Application. Additional information as required by Local Rule 2016-2(c), (d), and (e) relating to

the fees and expenses requested herein relating to the personal property tax recoveries are provided on Exhibits A and B attached to Attachment 2.[5]

## BASIS FOR RELIEF REQUESTED

15. CTMI specializes in providing state and local tax consulting services to corporate clients. Among the many services offered by the firm is property tax consulting, encompassing fair market valuations, audit defense, and compliance returns. The personal property audit service entails the analysis of the client's compliance returns, assets records, balance sheet, and tax payments made over the audit period. CTMI validates that only taxable personal property assets are returned for property taxation each year of the audit and that the assessor's office has properly valued the assets based on the California statutes, regulations, and current appraisal standards in effect during the audit period. In California, CTMI must resolve personal property audits through three separate agencies: (i) the Los Angeles County Assessor's Office; (ii) the Los Angeles County Auditor-Controller's Office; and (iii) the Los Angeles County Assessment Appeals Board. CTMI's Senior Property Tax Manager, R. Gary Sneed, has over 18 years experience in obtaining cash refunds from California taxing authorities. CTMI has provided the Los Angeles Times with California property tax services, including personal property compliance, real estate valuation, and audit support, over the past twelve years.

16. Beginning in October 2006, Gary Sneed and Mary Evans, professionals at CTMI, provided personal property tax audit support services to the Los Angeles Times in connection with Los Angeles County's audit of tax years 2001-2004. CTMI analyzed the Los Angeles Times' property tax returns, asset records, balance sheets, and audit findings for the

---

[5] Due to the volume of time records submitted in connection with this Application, Exhibit B attached to Attachment 2 has been filed with the Court and served only on the Office of the United States Trustee and counsel for the Committee. Copies of CTMI's time records are available from CTMI or the Debtors upon request.

period January 1, 2001 through January 1, 2004. As part of this process, CTMI engaged in a complete analysis of the methodology used by the Los Angeles County Assessor's Office to value the Los Angeles Times' printing press equipment. In Mr. Sneed's and Ms. Evans's professional judgment, the Assessor's Office had not used the appropriate valuation methodologies for such press equipment, in that the Assessor's Office was using over-stated inflation factors, too long of an asset life for depreciation, and was only accounting for physical depreciation, not operating obsolescence.[6] Following this review and analysis, CTMI prepared and filed schedules and supporting documentation with the Los Angeles County Auditor's Office and the Los Angeles County Assessor's Office in support of a claim for over-valuation of the Los Angeles Times' press equipment and over-taxation of such press equipment based on that valuation on behalf of the Los Angeles Times. CTMI provided documentation based on standard industry appraisal practice and California property tax statutes and regulations to support its professional opinion that the County's appraisal of the press equipment was overvalued by $210.6 million.

17. In March 2008, Los Angeles County completed its audit and CTMI met with Los Angeles Times and the Los Angeles County Assessor's Office to begin negotiation of refunds. Over the subsequent months, the parties negotiated and finalized an agreement leading to the above-described Refund of property taxes paid for the years 2001-2004, culminating with approval by the Los Angeles County Assessment Appeals Board in August 2009 of a joint

---

[6] In the personal property appraisal process, two of the key depreciation factors are: (i) economic obsolescence, being the loss in value of a property caused by factors external to the property (such as economics of the industry, availability of financing, loss of material and/or labor sources, passage of new legislation, changes in ordinances, increased cost of raw materials, labor, or utilities, reduced demand for the product, increased completion, inflation or high interest rates); and (ii) operating obsolescence, being a functional obsolescence that is caused by excess operating expenses, over and above those of the new, modern facility/equipment. Operating obsolescence is the present value of the future excess operating expenses. This type of depreciation is the hardest to prove and defend in the appraisal process.

recommendation from the Assessor's Office and CTMI for a Refund of approximately $2.7 million based on the over-valuation of the press equipment of $206.6 million (representing 96.2% of CTMI's valuation based on its research, analysis, and opinion of value). The Board approved the request without objection. Without the substantial efforts of CTMI expended over the course of three years to defend an audit covered two printing plants, multiple parcels, and four taxation years, the Los Angeles Times would not have the benefit of the approximately $2,300,000 Refund it currently enjoys. CTMI respectfully submits that the fees requested in connection with providing the audit services are reasonable and contributed substantial additional value to the Debtors' estates.

18. CTMI respectfully submits that good cause exists for this Court to waive the procedures for compensation and reimbursement of expenses for professionals and consideration of fee applications set forth in this Court's Interim Compensation Order and Fee Examiner Order. Specifically, CTMI requests a limited waiver from such procedures solely for the purpose of permitting the Debtors to pay CTMI the full amount of CTMI's fees that are currently due, and which may become due in the future (solely with respect to the fees for which allowance is sought herein), rather than requiring CTMI to seek approval of its fee on an interim basis subject to a 20% holdback and to seek the Court's allowance of such fees and expenses on a quarterly basis subject to the Fee Examiner's review and report.

19. CTMI has received no payment and no promises of payment from any source for services rendered in these chapter 11 cases. There is no agreement between CTMI and any other party for the sharing of compensation to be received for the services rendered by CTMI to the Debtors. All professional and paraprofessional services for which compensation is sought herein were rendered solely for or on behalf of the Debtors.

5226553

9

## REVIEW OF APPLICABLE LOCAL RULE

20. The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with the requirements of Local Rule 2016-2.

21. The undersigned further certifies that the Debtors have had an opportunity to review this Application before it was filed with the Court.

## NO PRIOR REQUEST

22. No previous application with respect to the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, CTMI respectfully requests the Court (i) to allow its fees in the aggregate amount of $118,475.00 pursuant to 11 U.S.C. §§ 327, 331, and 503, (ii) to waive the procedures for compensation and reimbursement of expenses for professionals and consideration of fee applications set forth in this Court's Interim Compensation Order and Fee Examiner Order with respect to this Application, and (iii) to grant such further relief as is just and proper.

Dated: March 2, 2010

Respectfully submitted,

*R. Gary Sneed* (signature)

By: R. Gary Sneed
CORPORATE TAX MANAGEMENT, INC.
9001 Airport Freeway, Suite 700
Fort Worth, TX 76180