# EXHIBIT 3

**Condensed Transcript**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

TRIBUNE COMPANY,
et al.,

Debtors.

~~~~~~~~~~~~~~~~~~~~~~

Chapter 11
Case No:
08-13141(KJC)
(Jointly Administered)

**DEPOSITION OF**

**JAMES HEANEY**

February 8, 2010
1:00 p.m.

1633 Broadway
New York, New York

Reported by: Joan Warnock, a Notary Public of State of New York

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com
~~~~~~~~~~~~~~~~~~~~~~

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
-------------------------------------X
In re:

TRIBUNE COMPANY, et al.,
Debtors.

Chapter 11
Case No: 08-13141(KJC)
(Jointly Administered)
-------------------------------------X

DEPOSITION OF JAMES HEANEY
New York, New York
Monday, February 8, 2010

Reported by:
JOAN WARNOCK
JOB NO. 306466

February 8, 2010
1:00 p.m.

Deposition of JAMES HEANEY, held at the offices of Kasowitz, Benson, Torres & Friedman, LLP, 1633 Broadway, New York, New York, pursuant to Notice, before Joan Warnock, a Notary Public of the State of New York.

A P P E A R A N C E S:

DAVIS POLK & WARDWELL, LLP
Attorneys for JPMorgan
450 Lexington Avenue
New York, New York 10017
BY: MICHAEL J. RUSSANO, ESQ.
MICHAEL E. McGOVERN, ESQ.

HENNIGAN BENNETT & DORMAN LLP
Attorneys for Credit Agreement Lenders
245 Park Avenue, Suite 3900
New York, New York 10167
BY: A BRENT TRUITT, ESQ.

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
Attorneys for Law Debenture
1633 Broadway
New York, New York 10019-6799
BY: DANIEL A. FLIMAN, ESQ.

A P P E A R A N C E S: (Cont'd.)

CHADBOURNE & PARKE, LLP
Attorneys for Creditors' Committee
30 Rockefeller Plaza
New York, New York 10112
BY: ALEXANDRA K. NELLOS, ESQ.

AKIN GUMP STRAUSS HAUER & FELD, LLP
Attorneys for Centerbridge Credit Advisers
One Bryant Park
New York, New York 10036
BY: DEBORAH NEWMAN, ESQ.

James Heaney February 8, 2010

5

J. Heaney

JAMES HEANEY, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

COURT REPORTER: Please state your full name and address for the record.

THE WITNESS: James Heaney, 18 Choate Court, Langhorne, Pennsylvania.

MR. RUSSANO: Why don't we just go around the room and everyone can introduce themselves.

My name is Michael Russano. I am from Davis Polk & Wardwell representing JPMorgan.

THE WITNESS: Okay.

MR. McGOVERN: I am Michael McGovern from Davis Polk & Wardwell representing JPMorgan.

MR. TRUITT: Brent Truitt of Hennigan Bennett & Dorman for the Credit Agreement Lenders.

MS. NELLOS: Alexandra Nellos from Chadbourne & Parke on behalf of the

6

J. Heaney

Unsecured Creditors Committee.

MR. FLIMAN: Daniel Fliman with Kasowitz, Benson, Torres & Friedman on behalf of Law Debenture.

EXAMINATION BY
MR. RUSSANO:

Q. Mr. Heaney, is it Mr. Heeney (phonetic) or Haney (phonetic)?

A. Heeney (phonetic).

Q. Have you been deposed before, Mr. Heaney?

A. No.

Q. I'm sure you've heard a little bit about how this works, but let me just go over a couple of things. I'm going to be asking you questions. You'll be answering them. Everything you say will be taken down by the court reporter.

A. Right.

Q. It's important for a clean record if you would allow me to finish my question before you begin your answer, and I'll do my very best to do the same. I'll let you finish your answer before I begin speaking

7

J. Heaney

again.

A. Okay.

Q. If I ask a question that you don't understand, please say so and I'll go ahead and ask another question.

A. Okay.

Q. If you need a break at any point, just go ahead and ask, and we'll take a break. The only thing I do ask is if there is a question pending, if you could go ahead and answer that question and then we'll proceed to take a break.

A. Okay.

Q. If you need to talk to your attorney at any point in time, same rule applies.

A. Okay.

Q. From time to time you'll hear some objections around the room. Unless your attorney instructs you not to answer a question, you should go ahead and provide an answer.

A. Um-hmm.

Q. Is there any reason why you won't

8

J. Heaney

be able to answer my questions fully and truthfully today?

A. No.

MR. RUSSANO: Let's just begin by marking as Exhibit 1 a document titled "JPMorgan Chase Bank's Notice of Deposition of Law Debenture Trust Company of New York.

(Exhibit Heaney 1, JPMorgan Chase Bank, N.A.'s, Notice of Deposition of Law Debenture Trust Company of New York, marked for identification, as of this date.)

Q. Mr. Heaney, have you ever seen this document before? And you can take your time looking at it to determine whether or not you can answer my question.

A. Yes.

Q. Do you understand this to be the Notice of Deposition pursuant to which you're testifying here today?

A. Yes.

Q. And you have gone through this document with your attorney?

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

J. Heaney
A. We've discussed it, yes.
Q. Did you review the topics of examination beginning on Page 5 of the document?
A. Yes.
Q. And do you understand that you are testifying here today as something we call a 30(b)(6) witness, which means you're testifying on behalf of Law Debenture?
A. Correct.
Q. Are there any of these topics that you are not prepared to testify to?
A. No.
Q. What did you do to prepare for today's deposition?
A. Studied some of the motion, some background material, discussed it with my counsel.
Q. When you say the motion, which motion are you referring to?
A. The motion to provide additional information with respect to -- to terminate the unauthorized payments.
Q. And you said you met with your

J. Heaney
counsel. Did you meet one time or more than one time?
A. One time.
Q. And who was present at that meeting?
A. Mr. Fliman.
Q. Anyone else?
THE WITNESS: Sorry. Your name?
Q. Fair enough. Anyone other than from Kasowitz Benson?
A. No.
Q. And how long did that meeting last?
A. Two and a half hours.
Q. Did you have any other conversations with anyone other than with your attorneys regarding today's deposition?
A. I spoke -- I had lunch last week with David Adler, who mentioned that he heard that I was going to be deposed, and the subject was -- the meeting was unrelated to this matter. It was just a -- they were doing -- his firm was doing a sales pitch for our firm, and myself and three other people from Law Debenture.

J. Heaney
Q. Which firm is Mr. Adler from?
A. McCarter & English.
Q. Did you speak with anyone from Centerbridge regarding this deposition?
A. No.
Q. Briefly, could you describe to me your educational background.
A. I have a BBA from Pace University.
Q. In what?
A. Accounting and marketing.
Q. What year?
A. '71.
Q. Is that your last degree?
A. Yes.
Q. Do you have any professional licenses?
A. No.
Q. What is your position at Law Debenture?
A. Managing director.
Q. And how long have you held that position?
A. One year.
Q. When did you join Law Debenture?

J. Heaney
A. It will be three years in June.
Q. And what position did you hold prior to managing director?
A. Vice president.
Q. What are your job responsibilities at Law Debenture currently?
A. Administering corporate trusts, which includes bankruptcies and, you know, non-bankrupt and non-troubled deals as well.
Q. Does your work only involve either companies or trusts in bankruptcy and distressed companies or trusts, or is it broader than that?
A. We do distressed and non-distressed. I mean we have a few Fortune 500 customers.
Q. When you were vice president, what were your job responsibilities to the extent they differed?
A. They did not differ.
Q. And you joined Law Debenture as a vice president?
A. Right.
Q. And prior to joining Law Debenture,

J. Heaney
where were you?
A. JPMorgan.
Q. From when to when?
A. Well, it was originally with the Chase Manhattan Bank, which was merged into Chemical Bank, which merged into JPMorgan, and, you know. I was there like 33 years all together.
Q. What departments did you work in, if you could briefly just take me through --
A. Just corporate trust.
Q. Corporate trust at JPMorgan?
A. Right.
Q. And what were your job responsibilities, generally, at your last position at JPMorgan?
A. Administering corporate trusts.
Q. Did you have any involvement in the restructuring group?
A. No.
Q. At any point in your time at JPMorgan did you work in the restructuring group or did you work on any bankruptcy restructurings?

J. Heaney
A. No.
Q. Was that your first job after receiving your accounting degree?
A. Yeah.
Q. Do you serve on any boards?
A. No.
Q. Do you serve on any creditors committees in bankruptcy?
A. Yes.
Q. Which ones?
A. Washington Mutual, Visteon, American Business Financial. Actually, we're not on the creditors committee on that. I'm sorry.
Q. Anything else?
A. American Home Mortgage.
Q. Anything else?
A. That's it.
Q. And do you serve as a representative of Law Debenture?
A. Yes.
Q. While at JPMorgan did you serve on any creditors committees?
A. No, we did not.

J. Heaney
Q. Does Law Debenture provide indenture trustee services?
A. Yes, it does.
Q. What does that entail?
A. From the inception it's reviewing, you know, draft documents before financings are done and actually delivering bonds to the underwriters at closing and administering the terms of the trust after that.
Q. Do you also provide, you meaning Law Debenture, successor --
A. Yes.
Q. -- indenture trustee services?
A. Um-hmm.
Q. Is that a separate group within the structure of Law Debenture?
A. No. It's handled by basically the same people.
Q. Are you officially a member of the indenture trustee group or department?
A. Yes.
Q. Are you the head of that group?
A. No, I'm not.
Q. Who is the head of that group?

J. Heaney
A. Robert Bice, B-i-c-e.
Q. And do you report to Mr. Bice?
A. I do.
Q. How many other people sort of at a parallel level to you report in to Mr. Bice?
A. Two.
Q. And then how many employees total in the indenture trustee, successor trustee group?
A. Five.
Q. Out of how many total employees?
A. Twelve.
Q. Can you describe to me the successor trustee services that you provide?
A. Um-hmm.
Q. Please do.
A. We are basically one of the few banks that are unconflicted since we don't lend or take deposits. We're in a position to assume trusteeships from banks that are, you know, otherwise involved with the debtor as a lender or underwriter or whatever.
Q. When you become a successor trustee, is there a process for obtaining

17

J. Heaney
information from the prior trustee?
A. As far as operational information, yes.
Q. Can you describe that process?
A. It's basically a transfer of the bondholder records from one bank to another.
Q. Is there any other due diligence that is performed when you take over as successor trustee from the prior indenture trustee?
A. We do Know-Your-Customer studies on the debtor, and I guess in the course of that, probably, you know, do some background information like from the newspapers and whatnot.
Q. Is it your practice to meet with the prior trustee?
A. No.
Q. Do you conduct any sort of interview, whether in person or over the telephone or otherwise, with the prior trustee for the purpose of gaining information?
A. Not generally.

18

J. Heaney
Q. You mentioned operational documents?
A. Um-hmm.
Q. Are there any other categories of documents that you would typically use as part of your general practice, typically review?
A. The indenture under which the bonds were issued. There's a Tripartite Agreement transferring the trusteeship from one bank to another.
Q. In the Tribune matter there was a Tripartite Agreement?
A. Correct.
Q. When Law Debenture serves as either an indenture trustee or a successor indenture trustee, is there a written procedure for keeping your constituent note holders informed of the ongoing bankruptcy proceedings or restructuring proceedings?
A. Periodically notices are sent depending on, you know, what information is available that can be disclosed to the bondholders at that point.

19

J. Heaney
Q. Is it your practice to regularly hold informational meetings or telephone calls?
A. No.
Q. Other than sending out periodic notices to your constituent group, anything else you do to keep them apprised?
A. No.
Q. Has Law Debenture ever worked with Centerbridge Credit Advisers before?
A. To my knowledge, no.
Q. I'll refer to them as Centerbridge going forward.
A. Okay.
Q. On the Tribune matter, do you have periodic conversations with anyone from Centerbridge?
A. No. I've never had a conversation with Centerbridge.
Q. Does anyone from Law Debenture have periodic conversations with anyone from Centerbridge?
A. To my knowledge, no.
Q. Who is on the, for lack of a better

20

J. Heaney
word, the Tribune matter at Law Debenture?
A. Just me.
Q. Does anyone assist you from time to time?
A. Not at this point.
MR. FLIMAN: Specifically on Tribune?
MR. RUSSANO: Specifically on Tribune.
Q. Has anyone ever assisted you on the Tribune matter?
A. I think when we did the tripartite, Bob Bice signed the tripartite on my behalf.
Q. Anything else?
A. That's it.
Q. Did you have any conversations with anyone from Centerbridge regarding the Tripartite Agreement?
A. No.
Q. Were you represented by counsel in connection with the Tripartite Agreement?
A. Yes.
Q. Who was your counsel for that?
A. David Rosner at Kasowitz.

James Heaney February 8, 2010

21

J. Heaney
Q. Did Mr. Rosner have any conversations with anyone from Centerbridge regarding the Tripartite Agreement?
A. I don't know.
Q. Do you know if Mr. Rosner has ever had any conversations with anyone from Centerbridge regarding Tribune?
A. I believe he has, yes.
Q. Do you know who he had conversations with?
A. No.
Q. Do you know the substance of those conversations?
MR. FLIMAN: Hold on a second. We've got a common defense interest here, so to the extent that he has any information about conversations that David Rosner had with Centerbridge, you can't get into that.
MR. RUSSANO: Is there a written agreement?
MR. FLIMAN: I believe there is.
MR. RUSSANO: Is that something we could follow up on?

22

J. Heaney
MR. FLIMAN: Yes.
MR. RUSSANO: Okay. So I assume you're directing him not to answer?
MR. FLIMAN: To the extent that you got information that would answer his question, I'm instructing you not to answer it.
THE WITNESS: Okay.
MR. RUSSANO: Let me mark as Heaney 2 an indenture dated March 19th, 1996. It's entitled "The Times Mirror Company to Citibank N.A., as Trustee."
(Exhibit Heaney 2, Indenture dated March 19th, 1996, entitled "The Times Mirror Company to Citibank N.A., as Trustee", marked for identification, as of this date.)
Q. Mr. Heaney, I'll represent to you that this is a copy of an indenture dated March 19, 1996, that is attached to an 8-K filing by the Times Mirror Company. I'm going to refer to this document in my questioning as the March indenture.
A. Okay.

23

J. Heaney
Q. Before we get to the specifics of this document, a few preliminary questions. Are you aware that Law Debenture is currently the indenture trustee for the March indenture?
A. Yes, I am.
Q. And that Law Debenture succeeded Deutsche Bank Trust Company of America as indenture trustee; is that right?
A. Yes.
Q. Are you aware that there were two series of notes issued pursuant to the March indenture?
A. Yes.
Q. Can we agree to call the first series the 6.61 percent notes and the second series the seven and a quarter percent notes?
A. Yes.
Q. And is Law Debenture, as indenture trustee, are you indenture trustee for both series of notes?
A. We are.
Q. When was Law Debenture first approached to serve as indenture trustee for

24

J. Heaney
the March indenture?
A. In May of 2009.
Q. And who approached Law Debenture?
A. Kasowitz.
Q. Do you know who approached Kasowitz?
A. I don't.
Q. And was that Mr. Rosner at Kasowitz that approached Law Debenture?
A. Yes, it was.
Q. And did he approach you?
A. He did.
Q. Did anyone else approach you regarding -- approach Law Debenture regarding the March indenture serving as indenture trustee?
A. No.
Q. Did you have any conversations with anyone at Law Debenture following those initial conversations with Mr. Rosner regarding serving as indenture trustee?
A. Yes.
Q. Who did you have conversations with?

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

J. Heaney
A. Robert Bice.
Q. Can you describe those conversations to me?
A. Basically told him what we were being offered and what KYC procedures I had followed, since he has to sign off on them. That was the extent.
Q. And what were you being offered?
A. We were told initially we were being offered the trusteeship, two trusteeships on both of those series of bonds, the 6.61's and the 7.25's.
Q. Anything else?
A. That's it.
Q. And you told him about KYC procedures?
A. Um-hmm.
Q. Can you describe that in a little more detail for me.
A. Yeah. It's Know Your Customer, and it's -- you check the Treasury Department's OFAC list, Office of Foreign Asset Controls. We also check for conflicts within Law Debenture, since we're part of a larger

J. Heaney
company that's located in London and also does trust work, make sure there's no conflicts.
Q. Who is your customer when you say "know your customer"?
A. It would be Tribune.
Q. When did you or when did Law Debenture agree to serve as indenture trustee?
A. Probably the third week in May.
Q. Other than doing the Know-Your-Customer procedures that you just described, is there anything else that needed to be done prior to Law Debenture serving as indenture trustee?
A. The Tripartite Agreement had to be completed.
Q. Anything else?
A. No. That's it.
Q. Did you ever discuss with anyone why Deutsche Bank was being replaced as indenture trustee?
A. No.
Q. Do you have an understanding of why

J. Heaney
Deutsche Bank was replaced as indenture trustee?
MR. FLIMAN: Object to the form. Go ahead and answer the question.
THE WITNESS: Okay.
A. I understood from counsel that bondholders were requesting Deutsche Bank to take some actions and Deutsche Bank was unwilling to do it.
Q. Do you know which bondholders?
A. No. We were not given a name at that point.
Q. Sitting here today do you know which bondholders?
A. Centerbridge was.
Q. And what actions were they being asked to take?
A. We were told that --
MR. FLIMAN: Hold on a second.
THE WITNESS: Okay.
MR. FLIMAN: I think we're delving into the point of common interest here. To the extent that you learned these things either from Centerbridge directly

J. Heaney
with participation with counsel or directly from counsel at Kasowitz, I instruct you not to answer his question.
THE WITNESS: Okay.
MR. RUSSANO: Including if he learned it from Centerbridge through business channels as opposed to through attorneys?
MR. FLIMAN: Well, I think he testified he had no conversations ever with Centerbridge. So the conversations would be through counsel, in which case I advise you or instruct you not to answer.
Q. The things that Centerbridge was asking to be done, asking Deutsche Bank to be done, those things, did you learn that through counsel?
A. Yes.
Q. And that's Mr. Rosner?
A. Yes.
Q. Did Mr. Rosner ever describe to you a conversation that he had with Centerbridge regarding what it was Centerbridge wanted

James Heaney February 8, 2010

29

J. Heaney
Deutsche Bank to do?
A. No.
MR. FLIMAN: Don't answer that question.
THE WITNESS: Sorry.
Q. Did you ever have any conversations with Deutsche Bank regarding the March indenture?
A. No.
Q. Did you ever have any conversation with Deutsche Bank regarding the Tribune bankruptcy?
A. No.
Q. Did you ever request information from Deutsche Bank regarding the Tribune bankruptcy?
A. No.
MR. FLIMAN: When you say the Tribune bankruptcy, you're referring to also the debt and the notes?
MR. RUSSANO: Yes.
A. We did have a conversation with them about the transfer of the trustee records. I mean the bondholder records.

30

J. Heaney
Q. You had a conversation with Deutsche Bank?
A. Right.
Q. Any other conversations with Deutsche Bank at all?
A. There's one other one about the fees they were charging.
Q. Fees charging?
A. There is an annual trustee's administration fee. We generally charge the same thing that the predecessor trustee was charging.
Q. Did you charge the same fee in this instance?
A. Yes.
Q. The fee charge, is that contingent upon any performance-based criteria?
A. It's an annual administration charge, so it would cover all the normal trustee's activities charges, or activities.
Q. Is it a flat fee or can it be --
A. Flat fee.
Q. Did you ever any conversations with any note holders other than Centerbridge?

31

J. Heaney
A. No.
MR. RUSSANO: Let's go ahead and mark as Heaney Exhibit 3 a document Bates stamped LD Fees 0000364 through 370, and this is the Tripartite Agreement.
(Exhibit Heaney 3, Document Bates stamped LD Fees 00000364 through 370, Tripartite Agreement, marked for identification, as of this date.)
Q. Do you recognize this document?
A. I do.
Q. Can you describe it for me?
A. It's the document that transfers the trusteeships for the 6.61 percent debentures and the seven and a quarter percent debentures from Deutsche Bank to Law Debenture.
Q. And who prepared this document?
A. Mr. Rosner.
Q. If you turn to the last page, the very last page, do you see where under the Law Debenture signature lines -- I think if you turn to the next page. Right.

32

J. Heaney
MR. FLIMAN: For the record, you're referring to the page that the Bates stamp ends in 370?
MR. RUSSANO: 370.
Q. Can you recognize that signature?
A. Yes, I can.
Q. Whose signature that?
A. It's Robert Bice.
Q. And he was senior vice president at the time --
A. He is.
Q. -- he signed this? He is. And if you turn to the first page, 364, is that your handwriting or Mr. Bice's handwriting or someone else's handwriting?
A. It's my handwriting.
Q. Were you involved in negotiating this document?
A. I was.
Q. And who were you negotiating with?
A. I was going through Mr. Rosner and he was negotiating with counsel to Deutsche Bank and somebody at the company.
Q. The company meaning Tribune?

ESQUIRE
an Alexander Gallo Company
Toll Free: 800.441.3376
Facsimile: 202.296.8652
Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

J. Heaney
A. Tribune.
Q. And you don't know who that someone was?
A. I don't.
Q. Do you know if it was a lawyer or a principal?
A. I don't know.
Q. And you said he was negotiating with counsel for Deutsche Bank. Was that McCarter?
A. Yes, I believe it was.
Q. Were there ever any meetings regarding this agreement between the three parties you just mentioned?
A. No.
Q. If I could just direct your attention to the fourth whereas clause on the page.
A. Okay.
Q. And it reads, "Whereas Section 610 of the indenture provides that the resigning trustee may resign at any time and be discharged of the trust created by the indenture by giving written notice thereof to

J. Heaney
the issuer and upon the acceptance of appointment by a successor trustee."
Do you see that?
A. Yes, I do.
Q. Is it your understanding that the resigning trustee referred to here is Deutsche Bank?
A. Yes.
Q. And that Deutsche Bank did, in fact, resign?
A. Yes.
Q. Pursuant to Section 610 of the indenture?
A. Yes.
Q. If you would turn to Heaney Exhibit I believe it's 2, the indenture itself. And if you'll turn to Section 610. I'll give you a page in a moment. It's Page 48 at the bottom. Do you see where it says, "Section 610, Resignation and Removal"?
A. Right.
Q. "Appointment of Successor"?
A. Um-hmm.
Q. If you read three paragraphs down,

J. Heaney
it says, "The trustee may be removed at any time with respect to the securities of any series by act of the holders of a majority in principal amount of the outstanding securities of such series delivered to the trustee and to the company."
A. Correct.
Q. Was Centerbridge a majority holder of the principal amount of the securities?
A. They were a majority holder of one of the series, according to the tripartite, 42 percent of both series.
Q. Do you know when Centerbridge first became a majority holder of the seven and a quarter series?
A. I do not.
Q. Do you know how they acquired the seven and a quarter notes, whether it be in the open market or through private transactions?
A. No, I do not know.
Q. Do you know if Centerbridge holds any series other than the two series represented in the March indenture?

J. Heaney
A. I don't know.
Q. Do you know anything at all about Centerbridge's holdings pursuant to the March indenture other than the fact that they hold notes?
A. No.
MS. RUSSANO: I would like to mark as Heaney Exhibit 4 a document Bates stamped LD Fees 00000309 through 311.
(Exhibit Heaney 4, Document Bates stamped LD Fees 00000309 through 311, marked for identification, as of this date.)
Q. Mr. Heaney, this is a document that was produced by your counsel as part of the discovery. If you could take a quick moment to review the document and let me know when you're finished. It's an email chain that begins chronologically on the last page of the document and then proceeds up.
If I could direct your attention to the email that begins on the first page of the document.
A. Okay.

37

J. Heaney
Q. 309. And it's from James Scantling at McCarter, McCarter being Deutsche Bank's counsel; correct?
A. Yes.
Q. And then it's to David Rosner, Mr. Rosner being your counsel; correct?
A. Correct.
Q. And I see that you are -- it appears that you're copied on this email, JamesHeaney@LawDeb.com.
A. Yes.
Q. As is Stan Burg from DeutscheBank.com. Do you see that?
A. Yes, I do.
Q. Did you ever have any conversations with Mr. Burg?
A. No, I did not.
Q. Did you ever have any conversations with Rodney Gaughan of Deutsche Bank?
A. Not on Tribune.
Q. And if you look at the text of the email, it confirms that Tribune will cooperate with Centerbridge to cause Law Debenture to succeed Deutsche Bank for the

38

J. Heaney
seven and a quarter debentures?
A. Correct.
Q. But not with respect to the 6.61 debentures? Do you see that?
A. I do.
Q. Ultimately, did Tribune cooperate regarding both series of notes?
A. Yes.
Q. Do you know how this apparent conflict was resolved?
A. I understand that the lawyers all got together and spoke to each other and it was worked out.
Q. Do you know anything more about how it was worked out?
A. No.
Q. All you know is that at some point someone came back to you and said, in sum and substance, Law Debenture is going to be indenture trustee for both?
A. Correct.
Q. If you look at the email directly below the one I just directed your attention to on 310, it's from Mr. Rosner to Mr. Adler.

39

J. Heaney
I believe you said before Mr. Adler is from McCarter; correct?
A. Correct.
Q. And Mr. Rosner writes, "I don't think we have a choice because we don't have a majority to direct under the other series, and Tribune is playing games."
Do you have an understanding what Mr. Rosner meant by "Tribune is playing games"?
A. I do not.
Q. Do you believe Tribune was playing games at this point in time?
MR. FLIMAN: Objection.
A. No, I don't.
Q. Did you discuss with anyone a plan by Centerbridge to acquire a majority of the 6.61 percent notes?
A. No.
Q. Do you know if Centerbridge ultimately did acquire a majority of the 6.61 percent notes?
A. I do not know.
Q. If you could turn back to the

40

J. Heaney
Tripartite Agreement. If you look at the very bottom of the first page, 364, that whereas clause, you'll see that the second line refers to the majority of the principal amount have submitted a request to issuer and successor trustee that the issuer appoint successor trustee as successor trustee.
A. Um-hmm.
Q. Do you see that?
A. Yes.
Q. Did Centerbridge ever make a submission to Law Debenture?
A. Not to us directly, no.
Q. Do you know if they made a request to you indirectly?
A. I don't know whether -- you know, I would presume they spoke to David Rosner.
Q. Have you ever seen anything in writing regarding a request by Centerbridge to have Law Debenture take over as successor trustee?
A. No, to my knowledge, I have not.
Q. Do you know if such a writing exists?

J. Heaney
A. I don't know.
Q. Do you know if such a writing was required?
A. Only if the predecessor trustee was not willing to resign and the company was refusing to appoint the -- appoint us.
Q. Are you speculating or do you know that?
A. I know that, yeah.
Q. Staying with the Tripartite Agreement for a moment, if you turn to Page 2 of the document, if you would take a moment and read Section 3-C of that document.
MR. FLIMAN: We're ready.
Q. Did Deutsche Bank make available to Law Debenture copies of all documents relating to the securities and trust and all information in the possession of its corporate trust department?
A. They delivered what we requested, which was basically just the indenture.
Q. And you didn't request any other information; correct?
A. No.

J. Heaney
Q. Did Deutsche Bank comply with your requests?
A. Yes.
Q. Did you ever make a request to Deutsche Bank that they refused to comply with?
A. No.
MR. FLIMAN: Relating to Tribune?
MR. RUSSANO: Relating to Tribune.
A. No.
Q. Are you aware that Deutsche Bank was and is a member of the Tribune Creditors Committee?
A. Yes, I am.
Q. When did you become aware of that fact?
A. We knew about it when we were approached about taking on the bonds.
Q. Are you aware that the creditors committee was informed of the payment of the agent's fees and expenses that are at issue in the motion?
A. Not at that time.
Q. When did you become aware of that?

J. Heaney
A. When I saw the draft of the motion that was being prepared.
Q. The motion being the motion brought by Law Debenture?
A. Right.
Q. Did you ever ask Deutsche Bank about any information, any relevant information it may have received as a member of the creditors committee?
A. No.
Q. Why not?
A. Well, I would presume there's probably a confidentiality agreement signed by Deutsche Bank that would have prohibited them from giving it to us, if we had asked for anything.
Q. But you didn't ask?
A. We did not.
Q. Do you know if there was a confidentiality agreement?
A. I don't.
Q. Do you know if that confidentiality agreement would have prevented Deutsche Bank from disclosing the payments?

J. Heaney
MR. FLIMAN: Objection.
A. No, I do not know.
Q. Did you monitor the docket in the Tribune bankruptcy as part of your responsibilities as indenture trustee?
A. Yes.
MR. RUSSANO: Let me mark as Heaney 5 a document Bates stamped LD Fees 00000371 through 376.
(Exhibit Heaney 5, Document Bates stamped LD FEES 00000371 through 376, marked for identification, as of this date.)
Q. If you would take a look at the caption at the top of this document. Do you recognize that caption as referring to the Tribune Bankruptcy in the District of Delaware?
A. Yes, I do.
Q. And in connection with reviewing the docket, have you seen this caption on other documents that are filed with the court?
A. I don't remember, actually.

J. Heaney
Q. Have you ever seen this document?
A. I have.
Q. And if you would take a look at Page 3 of the document, LD Fees 373, paragraph nine, if you could review that and let me know when you're finished.
A. Okay.
Q. Does that refresh your recollection that you were aware of the payments prior to Law Debenture's motion to disgorge the payments?
MR. FLIMAN: Objection to form.
A. It would.
Q. Having had your recollection refreshed, can you now tell me when you first became aware of the fee payments?
A. I would guess this would have been it, when this was being prepared.
Q. Having seen this document, which was publicly filed with the court, is that consistent with your understanding that this may have been subject to a confidentiality agreement?
A. I would presume not since it's a

J. Heaney
public document.
Q. When you saw this document, I assume you saw it shortly after it was filed? Is that accurate?
A. I saw it again this morning, but, you know, I presumably saw it, you know.
Q. Did you follow up with anyone regarding the payment of fees?
A. No.
Q. Why not?
A. I would have relied upon my counsel to do that.
Q. Did you bring this paragraph to the attention of your counsel?
A. I did not.
Q. To this day, have you ever had any conversations with anyone at Deutsche Bank regarding any information that they have learned as a member of the creditors committee regarding the March indenture?
A. No.
Q. What about any information that they have learned at all?
A. No. We've had no conversations

J. Heaney
with them.
MR. RUSSANO: Why don't we take a quick break.
MR. FLIMAN: Okay.
(Recess taken from 1:52 p.m. to 1:58 p.m.)
MR. RUSSANO: Mr. Heaney, let me mark as Heaney 6 a document Bates stamped TRBLD 000953.
(Exhibit Heaney 6, Document Bates stamped TRBLD 000953, marked for identification, as of this date.)
Q. And for the record, this is an email chain produced by your counsel to us. The top of the chain is from Mr. Krakauer at Sidley, debtors' counsel, to your counsel, Mr. Rosner.
MR. FLIMAN: I actually believe this was produced by the debtors, not by us.
MR. RUSSANO: Thank you for that.
MR. FLIMAN: Although another copy probably exists in the production from us.

J. Heaney
MR. RUSSANO: Probably.
Q. If you could look at the bottom, the lower email dated September 2nd, 2009, from Mr. Rosner to Mr. Krakauer where he writes, "Can you please confirm for me that the pre-petition lenders, JPM, ML, others? are current on interest and fees paid for by an entity not in BR," presumably bankruptcy, "and which entity it is. Thanks."
Do you see that?
A. I do.
Q. Do you know how Mr. Rosner first learned about the payment of interest and fees?
A. I do not.
Q. Between September 2nd and September 17th, which was the date of the Deutsche Bank joinder, is it fair to say that you had no conversations with your counsel regarding the payment of fees?
A. To my knowledge, no, I did not.
Q. Did you direct your counsel to prepare the motion for disgorgement of fees?

J. Heaney
MR. FLIMAN: Please don't discuss conversations you had with counsel.
MR. RUSSANO: Are you instructing him not to answer that question?
MR. FLIMAN: I'm instructing him not to answer that question, yes.
Q. Did you have any conversations with your counsel regarding the payment of fees prior to reviewing a draft of the motion?
A. No.
Q. Is that your typical practice, to have your counsel prepare motions and the first time you see the issue is in the actual motion paper?
MR. FLIMAN: Objection to form. You can answer, if you can.
A. It's -- I guess we go case by case. And I have confidence in Mr. Rosner and his ability to put these things together, and I do review the drafts and...
Q. But you never objected to the payment of fees prior to seeing the motion drafted by your counsel; correct?
A. No.

J. Heaney
Q. Did Mr. Rosner inform you of his September 2nd email exchange with Mr. Krakauer?
A. To my knowledge, no.
Q. Is the payment of fees something that you would expect counsel to inform you of?
A. If he needed my input, yes.
Q. Do you know why he didn't inform you in this case?
A. Well, I think he --
MR. FLIMAN: Objection to form.
A. He was showing me a draft before it was being filed, which is fine. I don't know that we had to discuss anything before the draft.
Q. When did you first see the draft?
A. I don't remember.
MR. FLIMAN: Please don't answer that question. Listen, I'm not going to let you get into the process of how we advise our clients and discuss with our clients before we file an objection. You know you can't go there.

J. Heaney
MR. RUSSANO: I take it you're instructing him not to answer?
MR. FLIMAN: Yes, I am instructing him not to answer that question.
Q. Directing your attention now to the top email, you'll see the second paragraph Mr. Krakauer writes, "Like all our other communications, I would request confidentiality, although I have no problem with your discussing this with the UCC, JPM, the SC," which I believe stands for steering committee, "the UST," which I believe stands for U.S. Trustee, "and Centerbridge subject to Centerbridge's CA," confidentiality agreement, "with the Tribune."
Do you see that?
A. Yes.
Q. Do you know if Mr. Rosner had any communications with the UCC regarding this issue?
A. I don't know.
Q. Do you know if Mr. Rosner had any communications with JPMorgan regarding this issue?

J. Heaney
A. I do not know.
Q. The steering committee?
A. I don't know.
Q. The U.S. Trustee?
A. I don't know.
Q. Centerbridge?
A. I don't know.
Q. Do you know when Centerbridge first obtained knowledge of the fee payments?
A. I don't know.
Q. Do you know if Centerbridge has acquired any notes after Law Debenture became an indenture trustee?
A. I don't know.
Q. Will Law Debenture receive any fees or payment that is contingent upon the granting or denial of the motion?
A. No.
Q. Did you ever learn from any source other than counsel what Centerbridge's motive was in replacing Deutsche Bank with Law Debenture?
A. No.
MR. RUSSANO: Let's go off the

J. Heaney

record for a couple minutes.

(Recess taken from 2:07 p.m. to 2:09 p.m.)

MR. RUSSANO: Mr. Heaney, I have no further questions. Thank you for your time.

THE WITNESS: Okay.

MR. RUSSANO: Anyone else?

MR. TRUITT: I have nothing.

(Time noted: 2:10 p.m.)

____________________
JAMES HEANEY

Subscribed and sworn to before me
this ___ day of __________, 2010.

__________________________________

C E R T I F I C A T E

STATE OF NEW YORK )
: ss.
COUNTY OF WESTCHESTER )

I, JOAN WARNOCK, a Notary Public within and for the State of New York, do hereby certify:

That JAMES HEANEY, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 9th day of February, 2010.

____________________
JOAN WARNOCK

------------------ I N D E X ----------------

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| J. Heaney | Mr. Russano | 6 |

------------ INFORMATION REQUESTS -----------

DIRECTIONS: 22, 28, 49, 51
RULINGS:
TO BE FURNISHED:
REQUESTS: 21
MOTIONS:

------------------- EXHIBITS ----------------

| HEANEY EXHIBIT | FOR ID. |
|---|---|
| EXHIBIT 1 JPMorgan Chase Bank, N.A.'s, Notice of Deposition of Law Debenture Trust Company of New York | 8 |
| EXHIBIT 2 Indenture dated March 19th, 1996, entitled "The Times Mirror Company to Citibank N.A., as Trustee" | 22 |
| EXHIBIT 3 Document Bates stamped LD Fees 00000364 through 370, Tripartite Agreement | 31 |
| EXHIBIT 4 Document Bates stamped LD Fees 00000309 through 311 | 36 |
| EXHIBIT 5 Document Bates stamped LD FEES 00000371 through 376 | 44 |
| EXHIBIT 6 Document Bates stamped TRBLD 000953 | 47 |

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

DEPOSITION ERRATA SHEET

Our Assignment No. 306466

Case Caption: Chapter 11 Case No: 08-13141(KJC)

In re: TRIBUNE COMPANY, et al.

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

______________________________

JAMES HEANEY

Subscribed and sworn to on the ______ day of ____________, 20___ before me,

______________________________________

Notary Public,

in and for the State of ____________________

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

SIGNATURE:______________________DATE:__________

JAMES HEANEY

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

Page No._____Line No._____Change to:______________

_____________________________________________

Reason for change:____________________________

SIGNATURE:______________________DATE:__________

JAMES HEANEY

ESQUIRE
an Alexander Gallo Company

WORD INDEX
HEANEY, JAMES

**A**

**ability** 49:20
**able** 8:2
**acceptance** 34:2
**accounting** 11:11 14:4
**accurate** 46:5 57:10
**acquire** 39:18,22
**acquired** 35:18 52:13
**act** 35:4
**action** 54:17
**actions** 27:9,17
**activities** 30:21,21
**actual** 49:14
**additional** 9:22
**address** 5:7
**Adler** 10:19 11:2 38:25 39:2
**Administered** 1:6
**administe...** 12:8 13:18 15:9
**administr...** 30:11,19
**advise** 28:14 50:23
**Advisers** 4:12 19:11
**agent's** 42:22
**agree** 23:16 26:9
**agreement** 3:12 5:23 18:10,14 20:19,22 21:4,22 26:17 31:7 31:10 33:14 40:2 41:12 43:14,21,24 45:24 51:16 56:15
**ahead** 7:5,9,11,22 27:5 31:3
**AKIN** 4:10
**al** 1:5 57:4
**Alexandra** 4:8 5:24
**allow** 6:22
**America** 23:9
**American** 14:13,17
**amount** 35:5,10 40:6
**and/or** 57:11
**annual** 30:10,19
**answer** 6:23,25 7:12 7:21,23 8:2 8:18 22:4,6 22:8 27:5 28:4,15 29:4 49:5,7 49:17 50:20 51:3,5
**answering** 6:17
**apparent** 38:10
**appears** 37:10
**applies** 7:17
**appoint** 40:7 41:7,7
**appointment** 34:3,23
**apprised** 19:8
**approach** 24:12,14,15
**approached** 23:25 24:4,6 24:10 42:19
**asked** 27:18 43:16
**asking** 6:16 28:17 28:17
**Asset** 25:23
**Assignment** 57:2
**assist** 20:4
**assisted** 20:11
**assume** 16:21 22:3 46:4
**attached** 22:21
**attention** 33:18 36:22 38:24 46:15 51:6
**attorney** 7:16,21 8:25
**attorneys** 3:5,12,18 4:5,11 10:17 28:9
**available** 18:24 41:16
**Avenue** 3:6,13
**aware** 23:4,12 42:12,16,20 42:25 45:10 45:17

**B**

**back** 38:19 39:25
**background** 9:18 11:8 17:14
**bank** 8:11 13:6,7 17:7 18:11 23:9 26:22 27:2,8,9 28:17 29:2 29:8,12,16 30:3,6 31:18 32:24 33:10 34:8 34:10 37:20 37:25 41:16 42:2,6,12 43:7,15,24 46:18 48:20 52:22 56:5
**bankruptcies** 12:9
**bankruptcy** 1:2 12:12 13:24 14:9 18:20 29:13 29:17,20 44:5,18 48:10
**banks** 16:19,21
**Bank's** 8:7 37:3
**basically** 15:18 16:18 17:6 25:5 41:22
**Bates** 31:5,8 32:3 36:9,11 44:9,11 47:9,11 56:13,17,20 56:23
**BBA** 11:9
**beginning** 9:4
**begins** 36:20,23
**behalf** 5:25 6:5 9:10 20:14
**believe** 21:9,23 33:12 34:17 39:2,13 47:19 51:12 51:13
**Bennett** 3:11 5:22
**Benson** 2:7 3:17 6:4 10:11
**best** 6:24
**better** 19:25
**Bice** 16:2,3,6 20:14 25:2 32:9
**Bice's** 32:15
**bit** 6:14
**blood** 54:17
**boards** 14:6
**Bob** 20:14
**bondholder** 17:7 29:25
**bondholders** 18:25 27:8 27:11,15
**bonds** 15:8 18:9 25:13 42:19

**bottom** 34:20 40:3 48:3
**BR** 48:9
**break** 7:8,10,13 47:4
**Brent** 3:15 5:21
**briefly** 11:7 13:11
**bring** 46:14
**broader** 12:14
**Broadway** 2:8 3:19
**brought** 43:4
**Bryant** 4:13
**Burg** 37:13,17
**business** 14:13 28:8
**B-i-c-e** 16:2

C

**C** 3:2 4:2 54:2 54:2
**CA** 51:15
**call** 9:8 23:16
**called** 5:2
**calls** 19:4
**caption** 44:16,17,22 57:3
**captioned** 57:8
**case** 1:5 28:13 49:18,18 50:11 57:3 57:3
**categories** 18:5
**cause** 37:24
**Centerbridge** 4:11 11:5 19:11,13,18 19:20,23 20:18 21:3 21:8,19 27:16,25 28:7,12,16 28:24,25 30:25 35:9 35:14,23 37:24 39:18 39:21 40:12 40:20 51:14 52:7,9,12
**Centerbri...** 36:4 51:15 52:21
**certify** 54:9,15
**Chadbourne** 4:4 5:25
**chain** 36:19 47:15 47:16
**change** 58:2,4,5,7,8 58:10,11,13 58:14,16,17 58:19,20,22 59:2,4,5,7 59:8,10,11 59:13,14,16 59:17,19,20 59:22
**changes** 57:11,14
**channels** 28:8
**Chapter** 1:4 57:3
**charge** 30:11,14,17 30:20
**charges** 30:21
**charging** 30:8,9,13
**Chase** 8:7,10 13:6 56:5
**check** 25:22,24
**Chemical** 13:7
**Choate** 5:9
**choice** 39:6
**chronolog...** 36:20
**Citibank** 22:13,16 56:11
**clause** 33:18 40:4
**clean** 6:21
**clients** 50:23,24
**closing** 15:9
**committee** 4:5 6:2 14:14 42:14 42:21 43:10 46:21 51:13 52:3
**committees** 14:9,24
**common** 21:16 27:23
**communica...** 51:9,20,24
**companies** 12:12,13
**company** 1:5 8:9,12 22:13,16,22 23:9 26:2 32:24,25 35:7 41:6 56:7,10 57:4
**completed** 26:18
**comply** 42:2,6
**conduct** 17:20
**confidence** 49:19
**confident...** 43:14,21,23 45:23 51:10 51:15
**confirm** 48:6
**confirms** 37:23
**conflict** 38:11
**conflicts** 25:24 26:4
**connection** 20:22 44:21
**consistent** 45:22
**constituent** 18:19 19:7
**contingent** 30:17 52:17
**Controls** 25:23
**Cont'd** 4:2
**conversation** 19:19 28:24 29:11,23 30:2
**conversat...** 10:16 19:17 19:22 20:17 21:3,7,11 21:14,18 24:19,21,24 25:4 28:11 28:12 29:7 30:5,24 37:16,19 46:18,25 48:21 49:3 49:8
**cooperate** 37:24 38:7
**copied** 37:10
**copies** 41:17
**copy** 22:20 47:23
**corporate** 12:8 13:12 13:13,18 41:20
**correct** 9:11 18:15 35:8 37:4,7 37:8 38:3 38:22 39:3 39:4 41:24 49:24
**corrections** 57:11
**counsel** 9:19 10:2 20:21,24 27:7 28:2,3 28:13,19 32:23 33:10 36:16 37:4 37:7 46:12 46:15 47:15 47:17,17 48:21,24 49:3,9,13 49:24 50:7 52:21
**COUNTY** 54:5
**couple** 6:16 53:2

ESQUIRE
an Alexander Gallo Company

**course** 17:13
**court** 1:2 5:6,9 6:19 44:24 45:21
**cover** 30:20
**created** 33:24
**Credit** 3:12 4:11 5:22 19:11
**creditors** 4:5 6:2 14:8 14:14,24 42:13,20 43:10 46:20
**criteria** 30:18
**current** 48:8
**currently** 12:7 23:4
**customer** 25:21 26:5,6
**customers** 12:17

D

**D** 55:2
**Daniel** 3:21 6:3
**date** 8:14 22:18 31:11 36:14 44:14 47:13 48:19 58:24 59:24
**dated** 22:11,14,20 48:4 56:9
**David** 10:19 20:25 21:19 37:6 40:18
**Davis** 3:4 5:15,19
**day** 46:17 53:19 54:21 57:18
**deals** 12:10
**Debenture** 3:18 6:5 8:8 8:12 9:10 10:25 11:20 11:25 12:7 12:22,25 14:21 15:2 15:12,17 18:16 19:10 19:21 20:2 23:4,8,20 23:24 24:4 24:10,15,20 25:25 26:9 26:15 31:19 31:24 37:25 38:20 40:13 40:21 41:17 43:5 52:13 52:16,23 56:6
**debentures** 31:17,18 38:2,5
**Debenture's** 45:11
**DEBORAH** 4:15
**debt** 29:21
**debtor** 16:22 17:13
**debtors** 1:7 47:17,20
**DECLARATION** 57:5
**declare** 57:6
**defense** 21:16
**degree** 11:14 14:4
**Delaware** 1:2 44:19
**delivered** 35:6 41:21
**delivering** 15:8
**delving** 27:22
**denial** 52:18
**department** 15:21 41:20
**departments** 13:10
**Department's** 25:22
**depending** 18:23
**deposed** 6:11 10:20
**deposition** 1:12 2:6 8:8 8:11,21 9:16 10:17 11:5 54:11 54:13 56:6 57:1,8,12 58:1 59:1
**deposits** 16:20
**describe** 11:7 16:14 17:5 25:3 25:19 28:23 31:14
**described** 26:14
**detail** 25:20
**determine** 8:17
**Deutsche** 23:9 26:22 27:2,8,9 28:17 29:2 29:8,12,16 30:3,6 31:18 32:23 33:10 34:8 34:10 37:3 37:20,25 41:16 42:2 42:6,12 43:7,15,24 46:18 48:20 52:22
**DeutscheB...** 37:14
**differ** 12:21
**differed** 12:20
**diligence** 17:8
**direct** 33:17 36:22 39:7 48:24
**directed** 38:24
**directing** 22:4 51:6
**DIRECTIONS** 55:7
**directly** 27:25 28:3 38:23 40:14
**director** 11:21 12:4
**discharged** 33:24
**disclosed** 18:24
**disclosing** 43:25
**discovery** 36:17
**discuss** 26:21 39:17 49:2 50:16 50:23
**discussed** 9:2,18
**discussing** 51:11
**disgorge** 45:11
**disgorgement** 48:25
**distressed** 12:13,15
**District** 1:2 44:18
**docket** 44:4,22
**document** 8:6,16,25 9:5 22:23 23:3 31:4,8 31:12,15,20 32:19 36:9 36:11,15,18 36:21,24 41:13,14 44:9,11,16 45:2,5,20 46:2,3 47:9 47:11 56:13 56:17,20,23
**documents** 15:7 18:3,6 41:17 44:23
**doing** 10:23,23 26:12
**Dorman** 3:11 5:22
**draft** 15:7 43:2 49:10 50:14 50:17,18
**drafted** 49:24
**drafts** 49:21
**due** 17:8
**duly** 5:3 54:12

E

**E**

James Heaney February 8, 2010

63

3:2,2,9 4:2 4:2 5:2,2,2 54:2,2 55:2
**educational** 11:8
**either** 12:11 18:16 27:25
**else's** 32:16
**email** 36:19,23 37:10,23 38:23 47:15 48:4 50:3 51:7
**employees** 16:8,12
**ends** 32:4
**English** 11:3
**entail** 15:5
**entire** 57:7
**entitled** 22:12,15 56:10
**entity** 48:9,10
**ERRATA** 57:1,13 58:1 59:1
**ESQ** 3:8,9,15,21 4:8,15
**et** 1:5 57:4
**examination** 6:6 9:4 55:3
**examined** 5:4
**exchange** 50:3
**Exhibit** 8:6,10 22:14 31:4,8 34:16 36:9 36:11 44:11 47:11 56:3 56:4,8,12 56:16,19,22
**EXHIBITS** 56:2
**exists** 40:25 47:24
**expect** 50:7
**expenses** 42:22
**extent** 12:19 21:17 22:5 25:8 27:24

**F**

**F** 54:2
**fact** 34:11 36:5 42:17
**fair** 10:10 48:20
**far** 17:3
**February** 1:14 2:3 54:21
**fee** 30:11,14,17 30:22,23 45:17 52:10
**fees** 30:8,9 31:5 31:9 36:10 36:12 42:22 44:10,12 45:5 46:9 48:8,16,22 48:25 49:9 49:23 50:6 52:16 56:13 56:17,20
**FELD** 4:10
**file** 50:24
**filed** 44:23 45:21 46:4 50:15
**filing** 22:22
**Financial** 14:13
**financings** 15:7
**fine** 50:15
**finish** 6:22,25
**finished** 36:19 45:7
**firm** 10:23,24 11:2
**first** 14:3 23:16 23:24 32:14 35:14 36:23 40:3 45:16 48:14 49:14 50:18 52:9
**Five** 16:11
**flat** 30:22,23
**Fliman** 3:21 6:3,3 10:7 20:7 21:15,23 22:2,5 27:4 27:20,22 28:10 29:4 29:19 32:2 39:15 41:15 42:9 44:2 45:13 47:5 47:19,23 49:2,6,16 50:13,20 51:4
**follow** 21:25 46:8
**followed** 25:7
**following** 24:20
**follows** 5:5
**Foreign** 25:23
**form** 27:4 45:13 49:16 50:13
**forth** 54:12
**Fortune** 12:16
**forward** 19:14
**fourth** 33:18
**Friedman** 2:8 3:17 6:4
**full** 5:7
**fully** 8:2
**FURNISHED** 55:9
**further** 53:6 54:15

**G**

**gaining** 17:23
**games** 39:8,11,14
**Gaughan** 37:20
**general** 18:7
**generally** 13:16 17:25 30:11
**give** 34:18
**given** 27:12 54:14
**giving** 33:25 43:16
**go** 5:11 6:15 7:5,9,11,22 27:5 31:3 49:18 50:25 52:25
**going** 6:16 10:20 19:14 22:23 32:22 38:20 50:21
**granting** 52:18
**group** 13:20,24 15:16,21,23 15:25 16:10 19:7
**guess** 17:13 45:18 49:18
**GUMP** 4:10

**H**

**H** 5:2
**half** 10:14
**hand** 54:21
**handled** 15:18
**handwriting** 32:15,15,16 32:17
**Haney** 6:9
**HAUER** 4:10
**head** 15:23,25
**Heaney** 1:12 2:6 5:1 5:8 6:1,8

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

6:12 7:1 8:1,10,15 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 22:11,14,19 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1,4,8 32:1 33:1 34:1,16 35:1 36:1,9 36:11,15 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1,9 44:11 45:1 46:1 47:1,8 47:9,11 48:1 49:1 50:1 51:1 52:1 53:1,5 53:16 54:10 55:4 56:3 57:17 58:25 59:25
**hear** 7:19
**heard** 6:14 10:19
**Heeney** 6:8,10
**held** 2:6 11:22
**Hennigan** 3:11 5:22
**hereinbefore** 54:11
**hereof** 57:13
**hereunto** 54:20
**hold** 12:3 19:3 21:15 27:20 36:5
**holder** 35:9,11,15
**holders** 18:19 30:25 35:4
**holdings** 36:4
**holds** 35:23
**Home** 14:17
**hours** 10:14

**I**

**ID** 56:3
**identific...** 8:13 22:17 31:11 36:13 44:13 47:13
**important** 6:21
**inception** 15:6
**includes** 12:9
**Including** 28:6
**indenture** 15:3,14,21 16:9 17:10 18:9,17,17 22:11,14,20 22:24 23:5 23:6,10,14 23:20,21,25 24:2,16,16 24:22 26:9 26:16,23 27:2 29:9 33:22,25 34:14,17 35:25 36:5 38:21 41:22 44:6 46:21 52:14 56:9
**indicated** 57:12
**indirectly** 40:16
**inform** 50:2,7,10
**information** 9:23 17:2,3 17:15,24 18:23 21:18 22:6 29:15 41:19,24 43:8,9 46:19,23 55:6
**informati...** 19:3
**informed** 18:20 42:21
**initial** 24:21
**initially** 25:10
**input** 50:9
**instance** 30:15
**instruct** 28:4,14
**instructing** 22:7 49:4,6 51:3,4
**instructs** 7:21
**interest** 21:16 27:23 48:8,15
**interested** 54:18
**interview** 17:21
**introduce** 5:13
**involve** 12:11
**involved** 16:22 32:18
**involvement** 13:19
**issue** 42:22 49:14 51:21,25
**issued** 18:10 23:13
**issuer** 34:2 40:6,7

**J**

**J** 3:8 5:1,2 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 55:4
**James** 1:12 2:6 5:8 37:2 53:16 54:10 57:17 58:25 59:25
**JamesHean...** 37:11
**Joan** 1:24 2:10 54:7,25
**job** 1:25 12:6,19 13:15 14:3
**join** 11:25
**joinder** 48:20
**joined** 12:22
**joining** 12:25
**Jointly** 1:6
**JPM** 48:7 51:11
**JPMorgan** 3:5 5:16,20 8:7,10 13:3 13:7,13,17 13:23 14:23 51:24 56:5
**June** 12:2

**K**

**K** 4:8
**Kasowitz** 2:7 3:17 6:4 10:11 20:25 24:5,7,9 28:3
**keep** 19:8
**keeping** 18:19
**knew** 42:18
**know** 12:9 13:8 15:7 16:22 17:14 18:23 21:5,6,10 21:13 24:6

25:21 26:6
27:11,14
33:3,6,8
35:14,18,22
35:23 36:2
36:3,18
38:10,15,18
39:21,24
40:15,17,17
40:24 41:2
41:3,8,10
43:20,23
44:3 45:7
46:7,7
48:14 50:10
50:15,25
51:19,22,23
52:2,4,6,8
52:9,11,12
52:15
**knowledge**
19:12,24
40:23 48:23
50:5 52:10
**Know-Your...**
17:12 26:13
**Krakauer**
47:16 48:5
50:4 51:8
**KYC**
25:6,16

**L**

**lack**
19:25
**Langhorne**
5:9
**larger**
25:25
**Law**
3:18 6:5 8:8
8:12 9:10
10:25 11:19
11:25 12:7
12:22,25
14:21 15:2
15:12,17
18:16 19:10
19:21 20:2
23:4,8,20
23:24 24:4
24:10,15,20
25:24 26:8
26:15 31:18
31:24 37:24
38:20 40:13
40:21 41:17
43:5 45:11
52:13,16,22
56:6
**lawyer**
33:6
**lawyers**
38:12
**LD**
31:5,9 36:10
36:12 44:9
44:12 45:5
56:13,17,20
**learn**
28:18 52:20
**learned**
27:24 28:7
46:20,24
48:15
**lend**
16:20
**lender**
16:23
**lenders**
3:12 5:23
48:7
**Let's**
8:5 31:3
52:25
**level**
16:6
**Lexington**
3:6
**licenses**
11:17
**line**
40:5 58:2,5
58:8,11,14
58:17,20
59:2,5,8,11
59:14,17,20
**lines**
31:24
**list**
25:23
**Listen**
50:21
**little**
6:14 25:19
**LLP**
2:8 3:4,11
3:17 4:4,10
**located**
26:2
**London**
26:2
**long**
10:13 11:22
**look**
37:22 38:23
40:2 44:15
45:4 48:3
**looking**
8:17
**lower**
48:4
**lunch**
10:18

**M**

**M**
5:2
**majority**
35:4,9,11,15
39:7,18,22
40:5
**managing**
11:21 12:4
**Manhattan**
13:6
**March**
22:11,15,21
22:24 23:5
23:13 24:2
24:16 29:8
35:25 36:4
46:21 56:9
**mark**
22:10 31:4
36:8 44:8
47:9
**marked**
8:13 22:17
31:10 36:13
44:13 47:12
**market**
35:20
**marketing**
11:11
**marking**
8:6
**marriage**
54:17
**material**
9:18
**matter**
10:22 18:13
19:16 20:2
20:12 54:19
57:8
**McCarter**
11:3 33:11
37:3,3 39:3
**McGOVERN**
3:9 5:18,19
**mean**
12:16 29:25
**meaning**
15:11 32:25
**means**
9:9
**meant**
39:10
**meet**
10:2 17:17
**meeting**
10:6,13,21
**meetings**
19:3 33:13
**member**
15:20 42:13
43:9 46:20
**mentioned**
10:19 18:2
33:15
**merged**
13:6,7
**met**
9:25
**Michael**
3:8,9 5:14
5:18
**minutes**
53:2
**Mirror**
22:12,16,22
56:10
**ML**
48:7
**moment**
34:19 36:17
41:12,13
**Monday**
1:14
**monitor**
44:4
**morning**
46:6
**Mortgage**
14:17
**motion**
9:17,20,21
9:22 42:23
43:2,4,4
45:11 48:25
49:10,15,23
52:18
**motions**
49:13 55:11
**motive**
52:21
**Mutual**
14:12

**N**

**N**
3:2 4:2 5:2
55:2
**name**
5:7,14 10:9
27:12

James Heaney February 8, 2010

66

**need**
7:8,15
**needed**
26:14 50:9
**negotiating**
32:18,21,23
33:9
**Nellos**
4:8 5:24,24
**never**
19:19 49:22
**New**
1:13,13 2:9
2:9,11 3:7
3:7,14,14
3:20,20 4:7
4:7,14,14
8:9,12 54:3
54:8 56:7
**NEWMAN**
4:15
**newspapers**
17:15
**nine**
45:6
**non-bankrupt**
12:10
**non-distr...**
12:16
**non-troubled**
12:10
**normal**
30:20
**Notary**
2:10 5:4
54:7 57:21
**note**
18:19 30:25
**noted**
53:11
**notes**
23:13,17,18
23:22 29:21
35:19 36:6
38:8 39:19
39:23 52:13
**notice**
2:9 8:7,11
8:21 33:25
56:5
**notices**
18:22 19:7
**N.A**
8:11 22:13
22:16 56:5
56:11

**O**

**oath**
57:15
**Object**
27:4
**objected**
49:22
**objection**
39:15 44:2
45:13 49:16
50:13,24
**objections**
7:20
**obtained**
52:10
**obtaining**
16:25
**OFAC**
25:23
**offer**
57:14
**offered**
25:6,9,11
**Office**
25:23
**offices**
2:7
**officially**
15:20
**Okay**
5:17 7:3,7
7:14,18
19:15 22:3
22:9,25
27:6,21
28:5 33:20
36:25 45:8
47:5 53:8
**ones**
14:11
**ongoing**
18:20
**open**
35:20
**operational**
17:3 18:2
**opposed**
28:8
**originally**
13:5
**outcome**
54:18
**outstanding**
35:5

**P**

**P**
3:2,2 4:2,2
**Pace**
11:9
**page**
9:4 31:22,23
31:25 32:3
32:14 33:19
34:19,19
36:20,23
40:3 41:12
45:5 55:3
58:2,5,8,11
58:14,17,20
59:2,5,8,11
59:14,17,20
**paid**
48:8
**paper**
49:15
**paragraph**
45:6 46:14
51:7
**paragraphs**
34:25
**parallel**
16:6
**Park**
3:13 4:13
**Parke**
4:4 5:25
**part**
18:7 25:25
36:16 44:5
**participa...**
28:2
**parties**
33:15 54:16
**payment**
42:21 46:9
48:15,22
49:9,23
50:6 52:17
**payments**
9:24 43:25
45:10,12,17
52:10
**penalty**
57:5,6
**pending**
7:11
**Pennsylvania**
5:10
**people**
10:24 15:19
16:5
**percent**
23:17,18
31:16,18
35:13 39:19
39:23
**performan...**
30:18
**performed**
17:9
**periodic**
19:6,17,22
**Periodically**
18:22
**perjury**
57:5,6
**person**
17:21
**phonetic**
6:9,9,10
**pitch**
10:23
**plan**
39:17
**playing**
39:8,10,13
**Plaza**
4:6
**please**
5:6 7:5
16:17 48:6
49:2 50:20
**point**
7:8,16 13:22
18:25 20:6
27:13,23
38:18 39:14
**Polk**
3:4 5:15,19
**position**
11:19,23
12:3 13:17
16:20
**possession**
41:19
**practice**
17:17 18:7
19:2 49:12
**predecessor**
30:12 41:5
**preliminary**
23:3
**prepare**
9:15 48:25
49:13
**prepared**
9:13 31:20
43:3 45:19
**present**
10:5
**president**
12:5,18,23
32:10
**presumably**
46:7 48:9
**presume**
40:18 43:13

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

45:25
**prevented**
43:24
**pre-petition**
48:7
**principal**
33:7 35:5,10
40:5
**prior**
12:4,25 17:2
17:10,18,22
26:15 45:10
49:10,23
**private**
35:20
**probably**
17:14 26:11
43:14 47:24
48:2
**problem**
51:10
**procedure**
18:18
**procedures**
25:6,17
26:13
**proceed**
7:13
**proceedings**
18:21,21
**proceeds**
36:21
**process**
16:25 17:5
50:22
**produced**
36:16 47:15
47:20
**production**
47:24
**professional**
11:16
**prohibited**
43:15
**provide**
7:22 9:22
15:2,11

16:15
**provides**
33:22
**public**
2:10 5:4
46:2 54:7
57:21
**publicly**
45:21
**purpose**
17:23
**pursuant**
2:9 8:21
23:13 34:13
36:4
**put**
49:20
**p.m**
2:4 47:6,7
53:3,4,11

Q

**quarter**
23:18 31:17
35:16,19
38:2
**question**
6:22 7:4,6
7:11,12,22
8:18 22:7
27:5 28:4
29:5 49:5,7
50:21 51:5
**questioning**
22:24
**questions**
6:17 8:2
23:3 53:6
**quick**
36:17 47:4

R

**R**
3:2 4:2 54:2
**read**
34:25 41:14
57:7,9
**reads**

33:21
**ready**
41:15
**reason**
7:25 58:4,7
58:10,13,16
58:19,22
59:4,7,10
59:13,16,19
59:22
**receive**
52:16
**received**
43:9
**receiving**
14:4
**Recess**
47:6 53:3
**recognize**
31:12 32:6
44:17
**recollection**
45:9,15
**record**
5:7 6:21
32:2 47:14
53:2 54:13
**records**
17:7 29:25
29:25
**refer**
19:13 22:23
**referred**
34:7
**referring**
9:21 29:20
32:3 44:17
**refers**
40:5
**refresh**
45:9
**refreshed**
45:16
**refused**
42:6
**refusing**
41:7

**regarding**
10:17 11:5
20:18 21:4
21:8 24:15
24:15,22
28:25 29:8
29:12,16
33:14 38:8
40:20 46:9
46:19,21
48:22 49:9
51:20,24
**regularly**
19:2
**related**
54:16
**relating**
41:18 42:9
42:10
**relevant**
43:8
**relied**
46:12
**remember**
44:25 50:19
**Removal**
34:21
**removed**
35:2
**replaced**
26:22 27:2
**replacing**
52:22
**report**
16:3,6
**Reported**
1:24
**reporter**
5:6 6:19
**represent**
22:19
**represent...**
14:21
**represented**
20:21 35:25
**representing**
5:15,20

**request**
29:15 40:6
40:15,20
41:23 42:5
51:9
**requested**
41:21
**requesting**
27:8
**requests**
42:3 55:6,10
**required**
41:4
**resign**
33:23 34:11
41:6
**Resignation**
34:21
**resigning**
33:22 34:7
**resolved**
38:11
**respect**
9:23 35:3
38:4
**responsib...**
12:6,19
13:16 44:6
**restructu...**
13:20,23
18:21
**restructu...**
13:25
**review**
9:3 18:8
36:18 45:6
49:21
**reviewing**
15:6 44:21
49:10
**right**
6:20 12:24
13:14 23:10
30:4 31:25
34:22 43:6
**Robert**
16:2 25:2

32:9
**Rockefeller** 4:6
**Rodney** 37:20
**room** 5:12 7:20
**Rosner** 20:25 21:2,6 21:19 24:9 24:21 28:21 28:23 31:21 32:22 37:6 37:7 38:25 39:5,10 40:18 47:18 48:5,14 49:19 50:2 51:19,23
**rule** 7:16
**RULINGS** 55:8
**Russano** 3:8 5:11,14 6:7 8:5 20:9 21:21 21:24 22:3 22:10 28:6 29:22 31:3 32:5 36:8 42:10 44:8 47:3,8,22 48:2 49:4 51:2 52:25 53:5,9 55:4

**S**

**s** 3:2 4:2 5:2 8:11 56:5
**sales** 10:23
**save** 57:10
**saw** 43:2 46:3,4 46:6,7
**says** 34:20 35:2
**SC** 51:12
**Scantling** 37:2
**second** 21:15 23:17 27:20 40:4 51:7
**Section** 33:21 34:13 34:18,21 41:14
**securities** 35:3,6,10 41:18
**see** 31:23 34:4 34:20 37:9 37:14 38:5 40:4,10 48:12 49:14 50:18 51:7 51:17
**seeing** 49:23
**seen** 8:15 40:19 44:22 45:2 45:20
**sending** 19:6
**senior** 32:10
**sent** 18:22
**separate** 15:16
**September** 48:4,18,19 50:3
**series** 23:13,17,18 23:22 25:12 35:4,6,12 35:13,16,24 35:24 38:8
39:7
**serve** 14:6,8,20,23 23:25 26:9
**serves** 18:16
**services** 15:3,14 16:15
**serving** 24:16,22 26:15
**set** 54:11,21
**seven** 23:18 31:17 35:15,19 38:2
**SHEET** 57:1,13 58:1 59:1
**shortly** 46:4
**showing** 50:14
**Sidley** 47:17
**sign** 25:7
**signature** 31:24 32:6,8 58:24 59:24
**signed** 20:14 32:13 43:14
**Sitting** 27:14
**somebody** 32:24
**sorry** 10:9 14:15 29:6
**sort** 16:5 17:20
**source** 52:20
**speak** 11:4
**speaking** 6:25
**Specifically** 20:7,9
**specifics** 23:2
**speculating** 41:8
**spoke** 10:18 38:13 40:18
**ss** 54:4
**stamp** 32:4
**stamped** 31:5,9 36:10 36:12 44:9 44:12 47:10 47:12 56:13 56:17,20,23
**Stan** 37:13
**stands** 51:12,13
**state** 2:11 5:6 54:3,8 57:22
**STATES** 1:2
**Staying** 41:11
**steering** 51:12 52:3
**STRAUSS** 4:10
**structure** 15:17
**Studied** 9:17
**studies** 17:12
**subject** 10:21 45:23 51:14
**submission** 40:13
**submitted** 40:6
**Subscribed** 53:18 57:18
**substance** 21:13 38:20
**succeed** 37:25
**succeeded** 23:8
**successor** 15:12 16:9 16:15,24 17:10 18:17 34:3,23 40:7,8,8,21
**Suite** 3:13
**sum** 38:19
**sure** 6:14 26:3
**sworn** 5:3 53:18 54:12 57:18

**T**

**T** 54:2,2
**take** 7:9,13 8:16 13:11 16:20 17:9 27:9 27:18 36:17 40:21 41:13 44:15 45:4 47:3 51:2
**taken** 6:18 47:6 53:3 57:8
**talk** 7:15
**telephone** 17:22 19:3
**tell**

45:16
**terminate**
9:23
**terms**
15:10
**testified**
5:5 28:11
**testify**
9:13
**testifying**
8:22 9:8,10
**testimony**
54:14
**text**
37:22
**Thank**
47:22 53:6
**Thanks**
48:11
**thereof**
33:25
**thing**
7:10 30:12
**things**
6:16 27:25 28:16,18 49:20
**think**
20:13 27:22 28:10 31:24 39:6 50:12
**third**
26:11
**three**
10:24 12:2 33:14 34:25
**time**
7:16,19,19 8:16 10:2,3 10:4 13:22 20:4,5 32:11 33:23 35:3 39:14 42:24 49:14 53:7,11
**Times**
22:12,15,22

56:10
**titled**
8:6
**today**
8:3,22 9:8 27:14
**today's**
9:16 10:17
**told**
25:5,10,16 27:19
**top**
44:16 47:16 51:7
**topics**
9:3,12
**Torres**
2:8 3:17 6:4
**total**
16:8,12
**transactions**
35:21
**transcript**
57:7
**transfer**
17:6 29:24
**transferring**
18:11
**transfers**
31:15
**TRBLD**
47:10,12 56:23
**Treasury**
25:22
**Tribune**
1:5 18:13 19:16 20:2 20:8,10,12 21:8 26:7 29:12,16,20 32:25 33:2 37:21,23 38:7 39:8 39:10,13 42:9,10,13 44:5,18 51:16 57:4

**tripartite**
18:10,14 20:13,14,19 20:22 21:4 26:17 31:6 31:10 35:12 40:2 41:11 56:14
**true**
54:13 57:10
**Truitt**
3:15 5:21,21 53:10
**trust**
8:8,12 13:12 13:13 15:10 23:9 26:3 33:24 41:18 41:20 56:7
**trustee**
15:3,14,21 16:9,9,15 16:25 17:2 17:10,11,18 17:23 18:17 18:18 22:13 22:17 23:5 23:10,21,21 23:25 24:17 24:22 26:10 26:16,23 27:3 29:24 30:12 33:23 34:3,7 35:2 35:7 38:21 40:7,8,8,22 41:5 44:6 51:14 52:5 52:14 56:11
**trusteeship**
18:11 25:11
**trusteeships**
16:21 25:12 31:16
**trustee's**
30:10,21
**trusts**
12:8,12,13

13:18
**truthfully**
8:3
**turn**
31:22,25 32:14 34:16 34:18 39:25 41:12
**Twelve**
16:13
**two**
10:14 16:7 23:12 25:11 35:24
**typical**
49:12
**typically**
18:6,7

**U**

**UCC**
51:11,20
**ultimately**
38:7 39:22
**Um-hmm**
7:24 15:15 16:16 18:4 25:18 34:24 40:9
**unauthorized**
9:24
**unconflicted**
16:19
**understand**
7:5 8:20 9:7 38:12
**understan...**
26:25 34:6 39:9 45:22 57:13
**understood**
27:7
**underwriter**
16:23
**underwriters**
15:9
**UNITED**

1:2
**University**
11:9
**unrelated**
10:21
**Unsecured**
6:2
**unwilling**
27:10
**use**
18:6
**UST**
51:13
**U.S**
51:14 52:5

**V**

**vice**
12:5,18,23 32:10
**Visteon**
14:12

**W**

**wanted**
28:25
**Wardwell**
3:4 5:15,19
**Warnock**
1:24 2:10 54:7,25
**Washington**
14:12
**way**
54:18
**week**
10:18 26:11
**WESTCHESTER**
54:5
**we'll**
7:9,12
**we're**
14:13 16:20 25:25 27:22 41:15
**We've**
9:2 21:16

James Heaney February 8, 2010

70

46:25
**whatnot**
17:16
**WHEREOF**
54:20
**willing**
41:6
**witness**
5:3,8,17 9:9 10:9 22:9 27:6,21 28:5 29:6 53:8 54:10 54:14,20 55:3
**word**
20:2
**work**
12:11 13:10 13:23,24 26:3
**worked**
19:10 38:14 38:16
**works**
6:15
**writes**
39:5 48:6 51:8
**writing**
40:20,24 41:3
**written**
18:18 21:21 33:25

**X**

**X**
1:3,8 55:2

**Y**

**Y**
5:2
**yeah**
14:5 25:21 41:10
**year**
11:12,24
**years**
12:2 13:8
**York**
1:13,13 2:9 2:9,11 3:7 3:7,14,14 3:20,20 4:7 4:7,14,14 8:9,12 54:3 54:8 56:7

**0**

**00000309**
36:10,12 56:18
**00000364**
31:9 56:14
**00000371**
44:10,12 56:21
**0000364**
31:5
**000953**
47:10,12 56:23
**08-13141(...**
1:5 57:3

**1**

**1**
8:6,10 56:4
**1:00**
2:4
**1:52**
47:6
**1:58**
47:7
**10017**
3:7
**10019-6799**
3:20
**10036**
4:14
**10112**
4:7
**10167**
3:14
**11**
1:4 57:3
**1633**
2:8 3:19
**17th**
48:19
**18**
5:9
**19**
22:21
**19th**
22:11,15 56:9
**1996**
22:12,15,21 56:9

**2**

**2**
22:11,14 34:17 41:12 56:8
**2nd**
48:4,18 50:3
**2:07**
53:3
**2:09**
53:4
**2:10**
53:11
**20**
57:19
**2009**
24:3 48:4
**2010**
1:14 2:3 53:19 54:22
**21**
55:10
**22**
55:7 56:8
**245**
3:13
**28**
55:7

**3**

**3**
31:4,8 45:5 56:12
**3-C**
41:14
**30**
4:6
**30(b)(6)**
9:9
**306466**
1:25 57:2
**309**
37:2
**31**
56:12
**310**
38:25
**311**
36:10,12 56:18
**33**
13:8
**36**
56:16
**364**
32:14 40:3
**370**
31:6,9 32:4 32:5 56:14
**373**
45:5
**376**
44:10,12 56:21
**3900**
3:13

**4**

**4**
36:9,11 56:16
**42**
35:13
**44**
56:19
**450**
3:6
**47**
56:22
**48**
34:19
**49**
55:7

**5**

**5**
9:4 44:9,11 56:19
**500**
12:17
**51**
55:7

**6**

**6**
47:9,11 55:4 56:22
**6.61**
23:17 31:16 38:4 39:19 39:23
**6.61's**
25:13
**610**
33:21 34:13 34:18,21

**7**

**7.25's**
25:13
**71**
11:13

**8**

**8**
1:14 2:3 56:4
**8-K**
22:21

**9**

**9th**
54:21

ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re: | |
| TRIBUNE COMPANY, et al., | Chapter 11<br>Case No. 08-13141 (KJC)<br>(Jointly Administered) |
| Debtors. | |

**JPMORGAN CHASE BANK, N.A.'S NOTICE OF DEPOSITION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK**

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7026, 7030 and 9014 and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26 and 30, JPMorgan Chase Bank, N.A., by and through its undersigned counsel, will take the deposition of Law Debenture Trust Company of New York ("Law Debenture") on January 7, 2010, at 10:00 a.m., at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, or on such other time and place as the parties shall agree or the Court may direct. The deposition(s) will be conducted under oath by an officer authorized to take such testimony, will be recorded by videotape and/or stenographic means, and will continue from day to day, excluding Sundays and holidays, until completed or adjourned. You are invited to attend and cross-examine.

Pursuant to Fed. R. Bankr. P. 9014 and 7030 and Fed. R. Civ. P. 30(b)(6), Law Debenture shall designate, in advance and in writing, one or more of its officers,

EXHIBIT

directors, managing agents or other persons who are most qualified to testify on its behalf as to the matters set forth in the attached Exhibit A.

Dated: December 9, 2009
Wilmington, Delaware

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Dennis Glazer
Karen E. Wagner
Sharon Katz
Michael Russano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A.*

**EXHIBIT A**

**DEFINITIONS**

1. The phrase "relating to" means concerning, referring to, describing, evidencing or constituting.

2. "Bankruptcy Cases" means the jointly-administered Chapter 11 bankruptcy cases styled In re Tribune Company, et al., Case No. 08-13141, pending in the United States Bankruptcy Court for the District of Delaware.

3. "Law Debenture" or "you" or "your" means Law Debenture Trust Company of New York and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on your behalf.

4. "Deutsche Bank" means Deutsche Bank Trust Company of Americas and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on its behalf.

5. "Centerbridge" means Centerbridge Credit Advisors LLC and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on its behalf.

6. "UCC" means the Official Committee of Unsecured Creditors appointed in connection with the Bankruptcy Cases.

7. "US Trustee" means the office of the United States Trustee or any representative, employee or agent thereof.

8. The term "Motion" means the motion dated October 23, 2009, filed by Law Debenture titled "Motion of Law Debenture Trust Company of New York to Terminate Debtor Affiliates' Undisclosed Payment of LBO Lenders' Fees and Expenses, For an Accounting, and for Disgorgement of Past Payments."

9. The term "Payment" or "Payments" means the payments at issue in the Motion.

**INSTRUCTIONS**

1. Whenever necessary to bring within the scope of these Topics of Examination that might otherwise be construed to be outside their scope, the use of a verb in any tense shall be construed as the use of that verb in all other tenses.

2. The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

3. The word "through" means "through and including."

4. The term "including" means "including, without limitation."

5. The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

6. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

7. Each paragraph of these Topics of Examination shall be construed independently and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting the scope of any request.

**TOPICS OF EXAMINATION**

1. The allegations contained in your Motion and any supporting papers, including but not limited to the factual basis for those allegations.

2. The documents produced by Law Debenture in response to JPMorgan Chase Bank, N.A.'s First Set of Document Requests to Law Debenture Trust Company of New York.

3. The replacement of Deutsche Bank by Law Debenture as Indenture Trustee for the Indenture, dated March 19, 1996, between The Time Mirror Company and Citibank, N.A., as Trustee, including the reasons for the replacement.

4. Information provided to Law Debenture as successor Indenture Trustee.

5. The Payments and/or any agreement regarding the Payments.

6. Law Debenture's knowledge and/or awareness of the Payments or any agreement regarding the Payments.

7. Law Debenture's decision to object or not to object to the Payments or any agreement regarding the Payments, including the reasons for that decision.

# TIMES MIRROR CO /NEW/

TIMES MIRROR SQUARE
220 WEST FIRST STREET
LOS ANGELES, CA 90053
213. 237.3700

## 8-K

**FORM 8-K**
**Filed on 03/19/1996 - Period: 03/13/1996**
File Number 001-13492

LIVEDGAR® Information Provided by Global Securities Information, Inc
800.669.1154
www.gsionline.com

================================================================================

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 8-K

CURRENT REPORT
PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): MARCH 13, 1996

THE TIMES MIRROR COMPANY
(EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

| DELAWARE (STATE OR OTHER JURISDICTION OF INCORPORATION) | 1-13492 (COMMISSION FILE NUMBER) | 95-4481525 (IRS EMPLOYER IDENTIFICATION NO.) |
|---|---|---|

| TIMES MIRROR SQUARE LOS ANGELES, CALIFORNIA (ADDRESS OF PRINCIPAL EXECUTIVE OFFICES) | 90053 (ZIP CODE) |
|---|---|

REGISTRANT'S TELEPHONE NUMBER, INCLUDING AREA CODE: (213) 237-3700

NONE
(FORMER NAME OR FORMER ADDRESS, IF CHANGED SINCE LAST REPORT)

================================================================================

ITEM 5. OTHER EVENTS.

On August 28, 1995, the Times Mirror Company (the "Company") filed a Registration Statement on Form S-3 (No. 33-62165), as amended by Amendment No. 1 filed on September 27, 1995, Amendment No. 2 filed on February 26, 1996, and Amendment No. 3 filed on February 27, 1996, relating to the registration under the Securities Act of 1933, as amended (the "Securities Act"), of up to an initial aggregate offering price of $200 million of debt securities, preferred stock, common stock and warrants of the Company, which Registration Statement was declared effective on February 28, 1996.

On March 13, 1996, the Company entered into an Underwriting Agreement (a copy of which is attached hereto as Exhibit 1.1) with Morgan Stanley & Co. Incorporated, as the representative of the several underwriters named in Schedule I thereto (together, the "Underwriters"), pursuant to which the Company agreed to issue and sell and the Underwriters agreed, severally and not jointly, subject to certain conditions, to purchase 1,305,000 of the Company's 4-1/4% Premium Equity Participating Securities due March 15, 2001 (the "PEPS") at an initial public offering price of $39.25 per PEPS (the "Public Offering Price") less underwriting discounts and commissions. The Company also granted the Underwriters an option to purchase up to 195,000 additional PEPS at the Public Offering Price, less underwriting discounts and commissions, to cover over-allotments, if any. Such option is exercisable for 30 days from March 13, 1996.

The issuance and sale of the PEPS were completed on March 19, 1996. The PEPS were issued pursuant to an Indenture dated as of March 19, 1996 between the Company and Citibank, N.A., as trustee (a copy of such Indenture is attached hereto as Exhibit 4.1).

In connection with the issuance of the PEPS under the Indenture, the Company will deliver an Officers' Certificate (a copy of such Officers' Certificate and annexes thereto is attached hereto as Exhibit 4.2) setting forth the terms of the PEPS and certifying the resolutions duly adopted by the Board of Directors of the Company at a meeting held on March 7, 1996, authorizing the issuance of the PEPS.

ITEM 7. FINANCIAL STATEMENTS, PRO FORMA FINANCIAL INFORMATION AND EXHIBITS.

(c) Exhibits.

The following exhibits are filed with this report on Form 8-K and as Exhibits to the Registration Statement:

| Exhibit No. | Description |
|---|---|
| 1.1 | Underwriting Agreement dated March 13, 1996 between the Company and Morgan Stanley & Co. Incorporated, as representative of the several underwriters named in Schedule I thereto. |
| 4.1 | Indenture dated as of March 19, 1996 between the Company and Citibank, N.A., as trustee. |
| 4.2 | Officers' Certificate dated as of March 19, 1996 establishing the terms of the PEPS and attaching the specimen certificate of PEPS and the specimen certificate of global PEPS. |
| 5 | Opinion of Gibson, Dunn & Crutcher regarding the legality of the securities being issued. |
| 8 | Opinion of Gibson, Dunn & Crutcher regarding certain tax matters. |
| 12 | Computation of Ratio of Earnings to Fixed Charges and Ratio of Earnings to Fixed Charges and Preferred Stock Dividends. |

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

THE TIMES MIRROR COMPANY

Date: March 19, 1996

By: /s/ O. Jean Williams

O. Jean Williams
Secretary and Associate General Counsel

EXHIBIT INDEX

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 1.1 | Underwriting Agreement dated March 13, 1996 between the Company and Morgan Stanley & Co. Incorporated, as representative of the several underwriters named in Schedule I thereto. |
| 4.1 | Indenture dated as of March 19, 1996 between the Company and Citibank, N.A., as trustee. |
| 4.2 | Officers' Certificate dated as of March 19, 1996 establishing the terms of the PEPS and attaching the specimen certificate of PEPS and the specimen certificate of global PEPS. |
| 5 | Opinion of Gibson, Dunn & Crutcher regarding the legality of the securities being issued. |
| 8 | Opinion of Gibson, Dunn & Crutcher regarding certain tax matters. |
| 12 | Computation of Ratio of Earnings to Fixed Charges and Ratio of Earnings to Fixed Charges and Preferred Stock Dividends. |

# TIMES MIRROR CO /NEW/

TIMES MIRROR SQUARE
220 WEST FIRST STREET
LOS ANGELES, CA 90053
213. 237.3700

# EX-4.1

**INDENTURE**
**8-K Filed on 03/19/1996 - Period: 03/13/1996**
File Number 001-13492

LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

EXHIBIT 4.1

---

THE TIMES MIRROR COMPANY

TO

CITIBANK, N.A., TRUSTEE

---

INDENTURE

DATED AS OF MARCH 19, 1996

---