51

Any corporation into which an Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which such Authenticating Agent shall be a party, or any corporation succeeding to the corporate agency or corporate trust business of an Authenticating Agent, shall continue to be an Authenticating Agent, provided such corporation shall be otherwise eligible under this Section, without the execution or filing of any paper or any further act on the part of the Trustee or the Authenticating Agent.

An Authenticating Agent may resign at any time by giving written notice thereof to the Trustee and to the Company. The Trustee may at any time terminate the agency of an Authenticating Agent by giving written notice thereof to such Authenticating Agent and to the Company. Upon receiving such a notice of resignation or upon such a termination, or in case at any time such Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section, the Trustee may appoint a successor Authenticating Agent that shall be acceptable to the Company and shall mail written notice of such appointment by first-class mail, postage prepaid, to all Holders of Securities of the series with respect to which such Authenticating Agent will serve, as their names and addresses appear in the Security Register. Any successor Authenticating Agent upon acceptance of its appointment hereunder shall become vested with all the rights, powers and duties of its predecessor hereunder, with like effect as if originally named as an Authenticating Agent. No successor Authenticating Agent shall be appointed unless eligible under the provisions of this Section.

The Company agrees to pay to each Authenticating Agent from time to time reasonable compensation for its services under this Section.

If an appointment with respect to one or more series is made pursuant to this Section, the Securities of such series may have endorsed thereon an alternative certificate of authentication in the following form:

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

As Trustee

By: _____
      As Authenticating Agent

By: _____
      Authorized Officer

ARTICLE SEVEN

HOLDERS' LISTS AND REPORTS BY TRUSTEE AND COMPANY

Section 701. Company to Furnish Trustee Names and Addresses of Holders.

52

The Company will furnish or cause to be furnished to the Trustee

(1) semi-annually, not later than April 1 and October 1 in each year, a list for each series of Registered Securities, in such form as the Trustee may reasonably require, of the names and addresses of the Holders of Registered Securities of such series as of the preceding March 15 or September 15, as the case may be, and

(2) at such other times as the Trustee may request in writing, within 30 days after the receipt by the Company of any such request, a list of similar form and content as of a date not more than 15 days prior to the time such list is furnished;

excluding from any such list names and addresses received by the Trustee in its capacity as Security Registrar.

Section 702. Preservation of Information; Communications to Registered Holders.

The Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of Registered Holders contained in the most recent list furnished to the Trustee as provided in Section 701 and the names and addresses of Registered Holders received by the Trustee in its capacity as Security Registrar.  The Trustee may destroy any list furnished to it as provided in Section 701 upon receipt of a new list so furnished.

The rights of the Registered Holders to communicate with other Holders with respect to their rights under this Indenture or under the Securities, and the corresponding rights and privileges of the Trustee, shall be as provided by the Trust Indenture Act.

Every Holder of Securities, by receiving and holding the same, agrees with the Company and the Trustee that neither the Company nor the Trustee nor any agent of either of them shall be held accountable by reason of any disclosure of information as to names and addresses of Holders made pursuant to the Trust Indenture Act.

Section 703. Reports by Trustee.

The Trustee shall transmit to Holders such reports concerning the Trustee and its actions under this Indenture as may be required pursuant to the Trust Indenture Act at the times and in the manner provided pursuant thereto. Reports so required to be transmitted at stated intervals of not more than 12 months shall be transmitted no later than March 1 in each calendar year, commencing in 1997.

A copy of each such report shall, at the time of such transmission to Holders, be filed by the Trustee with each stock exchange upon which any Securities are listed, with the Commission and with the Company.  The Company will notify the Trustee when any Securities are listed on any stock exchange.

Section 704. Reports by Company.

The Company shall:

(1) file with the Trustee, within 15 days after the Company is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) that the Company may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934; or, if the Company is not required to file

45

53
information, documents or reports pursuant to either of said Sections, then it shall file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports that may be required pursuant to Section 13 of the Securities Exchange Act of 1934 in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

(2) file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance by the Company with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(3) transmit by mail to all Holders, as their names and addresses appear in the Security Register, within 30 days after the filing thereof with the Trustee, such summaries of any information, documents and reports required to be filed by the Company pursuant to paragraphs (1) and (2) of this Section as may be required by rules and regulations prescribed from time to time by the Commission.

## ARTICLE EIGHT

### CONSOLIDATION, MERGER, CONVEYANCE, TRANSFER OR LEASE

Section 801. Company May Consolidate, Etc., Only on Certain Terms.

The Company shall not consolidate with or merge into any other Person or convey, transfer or lease its properties and assets substantially as an entirety to any Person, and the Company shall not permit any Person to consolidate with or merge into the Company or convey, transfer or lease its properties and assets substantially as an entirety to the Company, unless:

(1) in case the Company shall consolidate with or merge into another Person or convey, transfer or lease its properties and assets substantially as an entirety to any Person, the Person formed by such consolidation or into which the Company is merged or the Person that acquires by conveyance or transfer, or that leases, the properties and assets of the Company substantially as an entirety shall be a corporation, partnership or trust organized and validly existing under the laws of the United States of America, any state thereof or the District of Columbia and shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, in form reasonably satisfactory to the Trustee, the due and punctual payment of the principal of and any premium and interest on all the Securities and the performance or observance of every covenant of this Indenture on the part of the Company to be performed or observed and shall have provided for conversion rights in accordance with Section 1311;

(2) immediately after giving effect to such transaction and treating any indebtedness that becomes an obligation of the Company or any Subsidiary as a result of such transaction as having been incurred by the Company or such Subsidiary at the time of such transaction, no Event of Default, and no event that, after notice or lapse of time or both, would become an Event of Default, shall have happened and be continuing;

(3) if, as a result of any such consolidation or merger or such conveyance, transfer or lease, properties or assets of the Company would become subject to a mortgage, pledge, lien, security interest or other encumbrance that would not be permitted

46

54

by this Indenture, the Company or such successor Person, as the case may be, shall take such steps as shall be necessary effectively to secure the Securities equally and ratably with (or prior to) all indebtedness secured thereby; and

(4) the Company has delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger, conveyance, transfer or lease and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture comply with this Article and that all conditions precedent herein provided for relating to such transaction have been complied with.

Section 802. Successor Substituted.

Upon any consolidation of the Company with, or merger of the Company into, any other Person or any conveyance, transfer or lease of the properties and assets of the Company substantially as an entirety in accordance with Section 801, the successor Person formed by such consolidation or into which the Company is merged or to which such conveyance, transfer or lease is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein, and thereafter, except in the case of a lease, the predecessor Person shall be relieved of all obligations and covenants under this Indenture and the Securities.

ARTICLE NINE

SUPPLEMENTAL INDENTURES

Section 901. Supplemental Indentures Without Consent of Holders.

Without the consent of any Holders, the Company, when authorized by a Board Resolution, and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form reasonably satisfactory to the Trustee, for any of the following purposes:

(1) to evidence the succession of another Person to the Company and the assumption by any such successor of the covenants of the Company herein and in the Securities; or

(2) to cure any ambiguity or defect or correct any inconsistency; or

(3) to provide for uncertificated Securities in addition to certificated Securities; or

(4) to make any change that does not adversely affect the legal rights hereunder of any Holder; or

(5) to add to the covenants of the Company such further covenants, restrictions, conditions or provisions as the Company and the Trustee shall consider to be for the protection of the Holders, and to make the occurrence, or the occurrence and continuance, of a default in any such additional covenants, restrictions, conditions or provisions an Event of Default permitting the enforcement of all or any of the several remedies provided in this Indenture as herein set forth; provided that in respect of any such additional covenant, restriction, condition or provision, such supplemental indenture may provide for a particular period of grace after default (which period may be shorter or longer than that allowed in the case of other defaults) or may provide for an immediate

47

55

enforcement upon such an Event of Default or may limit the remedies available to the Trustee upon such a Event of Default or may limit the right of the Securityholders to waive such an Event of Default; or

(6) to surrender any right or power herein conferred upon the Company; or

(7) to modify, eliminate or add to the provisions of this Indenture to such extent as shall be necessary to effect the qualification of the Indenture under the Trust Indenture Act, or under any similar federal statute hereafter enacted; or

(8) before any Securities are issued, to make any other change in this Indenture not prohibited by the Trust Indenture Act.

Section 902. Supplemental Indentures with Consent of Holders.

With the consent of the Holders of not less than a majority in principal amount of the Outstanding Securities of each series affected by such supplemental indenture, by Act of said Holders delivered to the Company and the Trustee, the Company, when authorized by a Board Resolution, and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of modifying in any manner the rights of the Holders of Securities of such series and any related coupons under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Holder of each Outstanding Security affected thereby,

(1) change the Stated Maturity of the principal of, or any installment of principal of or interest on, any Security, or reduce the principal amount thereof or the rate of interest thereon or any premium payable upon the redemption thereof, or reduce the amount of the principal of an Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 502, or change the coin or currency in which any Security or any premium or interest thereon is payable or impair the right to institute suit for the enforcement of any such payment or delivery on or after the Stated Maturity thereof (or, in the case of redemption, on or after the Redemption Date), or

(2) reduce the percentage in principal amount of the Outstanding Securities of any series, the consent of whose Holders is required for any such supplemental indenture, or the consent of whose Holders is required for any waiver (of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences) provided for in this Indenture, or

(3) modify any of the provisions of this Section, Section 513 or Section 1008, except to increase any such percentage or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Security affected thereby, provided, however, that this clause shall not be deemed to require the consent of any Holder with respect to changes in the references to the "Trustee" and concomitant changes in this Section and Section 1008, or the deletion of this proviso, in accordance with the requirements of Sections 611 and 901(1), or

(4) adversely affect any applicable conversion right.

A supplemental indenture that changes or eliminates any covenant or other provision of this Indenture that has expressly been included solely for the benefit of one or more particular series of Securities, or that modifies the rights of the Holders of Securities of such

48

56

series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Securities of any other series.

It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Section 903. Execution of Supplemental Indentures.

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Section 601) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

Section 904. Effect of Supplemental Indentures.

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

Section 905. Conformity with Trust Indenture Act.

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act.

Section 906. Reference in Securities to Supplemental Indentures.

Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Company shall so determine, new Securities of any series so modified as to conform, in the opinion of the Trustee and the Company, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series.

ARTICLE TEN

COVENANTS

Section 1001. Payment of Principal Premium and Interest.

The Company covenants and agrees for the benefit of each series of Securities that it will duly and punctually pay the principal of and any premium and interest on the Securities of that series in accordance with the terms of the Securities and this Indenture. Unless otherwise specified as contemplated by Section 301 with respect to any series of Securities, any interest due on Bearer Securities on or before Maturity shall be payable only upon presentation and surrender of the several coupons for such interest installments as are evidenced thereby as they severally mature. At the Company's option, payments of principal or interest may be made by check or by

49

57

transfer to an account maintained by the payee subject, in the case of Bearer Securities, to the provisions of Section 1002.

Section 1002. Maintenance of Office or Agency.

The Company will maintain in each Place of Payment for any series of Securities an office or agency where Securities of that series may be presented or surrendered for payment, where Securities of that series may be surrendered for registration of transfer, exchange or conversion and where notices and demands to or upon the Company in respect of the Securities of that series and this Indenture may be served. If Securities of a series are issuable as Bearer Securities, the Company will maintain, subject to any laws and regulations applicable thereto, an office or agency in a Place of Payment for such series which is located outside the United States where Securities of such series and the related coupons may be presented and surrendered for payment; provided, however, that if the Securities of such series are listed on The International (London) Stock Exchange or any other stock exchange located outside the United States and said stock exchange shall so require, the Company may maintain a Paying Agent in London or any other required city located outside the United States, as the case may be, so long as the Securities of such series are listed on such exchange. The Company will give prompt written notice to the Trustee of the location, and any change in the location, of any such office or agency. If at any time the Company shall fail to maintain any such required office or agency in respect of any series of Securities or shall fail to furnish the Trustee with the address thereof, such presentations and surrenders of Securities of that series may be made and notices and demands may be made or served at the address of the Trustee, except that Bearer Securities of that series and the related coupons may be presented and surrendered for payment at the place specified for that purpose as contemplated by Section 301 or, if no such place is specified, at the corporate trust office of the Trustee in London and the Company hereby appoints the same as its agent to receive such respective presentations, surrenders, notices and demands.

No payment of principal or interest on Bearer Securities shall be made at any office or agency of the Company in the United States, by check mailed to any address in the United States, by transfer to an account located in the United States or upon presentation or surrender in the United States of a Bearer Security or coupon for payment, even if the payment would be credited to an account located outside of the United States; provided, however, that if the Securities of a series are denominated and payable in Dollars, payment of principal of and any interest on any such Bearer Security shall be made at the Office of the Company's paying agent in the Borough of Manhattan, the City of New York, if (but only if) payment in Dollars of the full amount of such principal, interest or additional amounts, as the case may be, at all offices or agencies outside the United States maintains for such purpose by the Company in accordance with its Indenture is illegal or effectively precluded by exchange controls or other similar restrictions. The Company will give prompt written notice to the Trustee of the location, and any change in the location, of such office or agency.

The Company may also from time to time designate one or more other offices or agencies where the Securities of one or more series may be presented or surrendered for any or all such purposes and may from time to time rescind such designations; provided, however, that no such designation or rescission shall in any manner relieve the Company of its obligation to maintain an office or agency in each Place of Payment for Securities of any series for such purposes. The Company will give prompt written notice to the Trustee of any such designation or rescission and of any change in the location of any such other office or agency.

Section 1003. Money for Securities Payments to Be Held in Trust.

If the Company shall at any time act as its own Paying Agent with respect to any series of Securities and any coupons appertaining thereto, it will, on or before each due date of

58

the principal of or any premium or interest on any of the Securities of that series, segregate and hold in trust for the benefit of the Persons entitled thereto a sum sufficient to pay the principal and any premium and interest so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided and will promptly notify the Trustee of its action or failure so to act.

Whenever the Company shall have one or more Paying Agents for any series of Securities and any coupons appertaining thereto, it will, prior to each due date of the principal of or any premium or interest on any Securities of that series, deposit with a Paying Agent a sum sufficient to pay such amount, such sum to be held as provided by the Trust Indenture Act, and (unless such Paying Agent is the Trustee) the Company will promptly notify the Trustee of its action or failure so to act.

The Company will cause each Paying Agent for any series of Securities other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent will (1) comply with the provisions of the Trust Indenture Act applicable to it as a Paying Agent and (2) during the continuance of any default by the Company (or any other obligor upon the Securities of that series) in the making of any payment in respect of the Securities of that series, and upon the written request of the Trustee, forthwith pay to the Trustee all sums held in trust by such Paying Agent for payment in respect of the Securities of that series.

The Company may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Company Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Company or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Company or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Any money deposited with the Trustee or any Paying Agent, or then held by the Company, in trust for the payment of the principal of or any premium or interest on any Security of any series and remaining unclaimed for two years after such principal, premium or interest has become due and payable shall be paid to the Company on Company Request, or (if then held by the Company) shall be paid to the Company upon Company Request and be discharged from such trust; and the Holder of such Security or coupon shall thereafter, as an unsecured general creditor, look only to the Company for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Company as trustee thereof, shall thereupon cease; provided, however, that the Trustee or such Paying Agent, before being required to make any such repayment, may at the expense of the Company cause to be published once, in a newspaper published in the English language, customarily published on each Business Day and of general circulation in the Borough of Manhattan, the City of New York, New York, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Company.

Section 1004. Statement by Officers as to Default.

The Company will deliver to the Trustee, within 120 days after the end of each fiscal year of the Company ending after the date hereof, an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Company is in default in the performance and observance of any of the terms, provisions and conditions of this Indenture (without regard to any period of grace or requirement of notice provided hereunder) and, if the Company shall be in default, specifying all such defaults and the nature and status thereof of which they may have knowledge.

51

59

Section 1005. Commission Reports.

The Company shall deliver to the Trustee, within 15 days after it files them with the Commission copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act.  The Company also shall comply with the other provisions of Trust Indenture Act Section 314(a).  The Company shall timely comply with its reporting and filing obligations under the applicable federal securities law.

If the Company is at any time not required to file annual or quarterly reports pursuant to Section 13 or 15(d) of the Exchange Act, the Company will file with the Trustee, within 15 days after the last date on which it would have been required to make such a filing with the Commission, and will upon request of a Holder mail to that Holder (as soon as practical after receipt of such request) at his or her address as it appears on the register of Securities kept by the Registrar, audited annual financial statements prepared in accordance with generally accepted accounting principles and unaudited quarterly financial statements.  Such financial statements shall be accompanied by a Management's Discussion and Analysis of Financial Condition and Results of Operations of the Company for the period reported upon in substantially the form required under the rules and regulations of the Commission, or any successor form of similar disclosure then required under the rules and regulations of the Commission.

Section 1006. Continued Existence.

Subject to Article 8, the Company will do or cause to be done all things necessary to preserve and keep in full force and effect its existence as a corporation and will refrain from taking any action that would cause its existence as a corporation to cease, including without limitation any action that would result in its liquidation, winding up or dissolution.

Section 1007. Taxes.

The Company shall pay prior to delinquency all taxes, assessments and governmental levies, except as contested in good faith and by appropriate proceedings or where the failure to do so would not have a material adverse effect on the Company and its subsidiaries, taken as a whole.

Section 1008. Waiver of Certain Covenants.

Unless otherwise specified as contemplated by Section 301, the Company may omit in any particular instance to comply with any term, provision or condition set forth in Sections 1001 to 1003 and 1005 to 10007, inclusive, with respect to the Securities of any series if before the time for such compliance the Holders of at least a majority in principal amount of the Outstanding Securities of such series shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such term, provision or condition, but no such waiver shall extend to or affect such term, provision or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Company and the duties of the Trustee in respect of any such term, provision or condition shall remain in full force and effect.

60

ARTICLE ELEVEN

REDEMPTION OF SECURITIES

Section 1101. Applicability of Article.

Securities of any series that are redeemable before their Stated Maturity shall be redeemable in accordance with their terms and (except as otherwise specified as contemplated by Section 301 for Securities of any series) in accordance with this Article.

Section 1102. Election to Redeem; Notice to Trustee.

The election of the Company to redeem any Securities shall be evidenced by a Board Resolution.  The Company shall, at least 60 days prior to the Redemption Date fixed by the Company (unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee of such Redemption Date, of the principal amount of Securities of such series to be redeemed and, if applicable, of the tenor of the Securities to be redeemed.  In the case of any redemption of Securities prior to the expiration of any restriction on such redemption provided in the terms of such Securities or elsewhere in this Indenture, the Company shall furnish the Trustee with an Officers' Certificate evidencing compliance with such restriction.

Section 1103. Selection by Trustee of Securities to Be Redeemed.

If less than all the Securities of any series are to be redeemed (unless all of the Securities of such series and of a specified tenor are to be redeemed), the particular Securities to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee, from the Outstanding Securities of such series not previously called for redemption, by such method as the Trustee shall deem fair and appropriate and that may provide for the selection for redemption of portions (equal to the minimum authorized denomination for Securities of that series or any integral multiple thereof) of the principal amount of Securities of such series of a denomination larger than the minimum authorized denomination for Securities of that series.  If less than all of the Securities of such series and of a specified tenor are to be redeemed, the particular Securities to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee, from the Outstanding Securities of such series and specified tenor not previously called for redemption in accordance with the preceding sentence.

The Trustee shall promptly notify the Company in writing of the Securities selected for redemption and, in the case of any Securities selected for partial redemption, the principal amount thereof to be redeemed.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to the redemption of Securities shall relate, in the case of any Securities redeemed or to be redeemed only in part, to the portion of the principal amount of such Securities that has been or is to be redeemed.

Section 1104. Notice of Redemption.

Notice of redemption shall be given by first-class mail, postage prepaid, mailed not less than 30 nor more than 60 days prior to the Redemption Date, to each Holder of Securities to be redeemed, at his or her address appearing in the Security Register.

All notices of redemption shall state:

(1) the Redemption Date,

53

61

(2) the Redemption Price,

(3) if less than all the Outstanding Securities of any series are to be redeemed, the identification (and, in the case of partial redemption of any Securities, the principal amounts) of the particular Securities to be redeemed,

(4) that on the Redemption Date the Redemption Price will become due and payable upon each such Security to be redeemed and, if applicable, that interest thereon will cease to accrue on and after said date,

(5) if the Security is convertible, the conversion price, the date on which the right to convert the principal of the Securities to be redeemed will terminate and the place or places where such Securities may be surrendered for conversion,

(6) the place or places where such Securities, together in the case of Bearer Securities with all coupons appertaining thereto, if any, maturing after the Redemption Date, are to be surrendered for payment of the Redemption Price,

(7) that the redemption is from a sinking fund, if such is the case, and

(8) the CUSIP numbers of the Securities to be redeemed.

Notice of redemption of Securities to be redeemed at the election of the Company shall be given by the Company or, at the Company's request, by the Trustee in the name and at the expense of the Company and shall be irrevocable.

Section 1105. Deposit of Redemption Price.

Prior to any Redemption Date, the Company shall deposit with the Trustee or with a Paying Agent (or, if the Company is acting as its own Paying Agent, segregate and hold in trust as provided in Section 1003) an amount of money sufficient to pay the Redemption Price of, and (except if the Redemption Date shall be an Interest Payment Date) accrued interest on, all the Securities that are to be redeemed on that date.

Section 1106. Securities Payable on Redemption Date.

Notice of redemption having been given as aforesaid, the Securities so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price therein specified, and from and after such date (unless the Company shall default in the payment of the Redemption Price and accrued interest) such Securities shall cease to bear interest and the coupons for such interest appertaining to any Bearer Securities so to be redeemed, except as otherwise provided herein, shall be void. Upon surrender of any such Security for redemption in accordance with said notice, together with all coupons, if any, appertaining thereto, maturing after the Redemption Date, such Security shall be paid by the Company at the Redemption Price, together with accrued interest to the Redemption Date; provided, however, that installments of interest on Bearer Securities whose Stated Maturity is on or prior to the Redemption Date shall be payable only at an office or agency located outside the United States (except as otherwise provided in Section 1002) and, unless otherwise specified as contemplated by Section 301, only upon presentation and surrender of coupons for such interest; and provided, further, that, unless otherwise specified as contemplated by Section 301, installments of interest whose Stated Maturity is on or prior to the Redemption Date shall be payable to the Holders of such Securities, or one or more Predecessor Securities, registered as such at the close of business on the relevant Record Dates according to their terms and the provisions of Section 307.

62

If any Bearer Security surrendered for redemption shall not be accompanied by all pertinent coupons maturing after the Redemption Date, such Security may be paid after deducting from the Redemption Price an amount equal to the face amount of all such missing coupons, or the surrender of such missing coupon or coupons may be waived by the Company and the Trustee if there may be furnished to them such security or indemnity as they may require to save each of them and any Paying Agent harmless.  If thereafter the Holder of such Security shall surrender to the Trustee or any Paying Agent any such missing coupon in respect of which a deduction shall have been made from the Redemption Price, such Holder shall be entitled to receive the amount so deducted; provided, however, that interest represented by coupons shall be payable only at an office or agency located outside the United States (except as otherwise provided in Section 1002) and, unless otherwise specified as contemplated by Section 301, only upon presentation and surrender of those coupons.

If any Security called for redemption shall not be so paid upon surrender thereof for redemption, the principal and any premium shall, until paid, bear interest from the Redemption Date at the rate prescribed therefor in the Security.

Section 1107. Securities Redeemed in Part.

Any Registered Security that is to be redeemed only in part shall be surrendered at a Place of Payment therefor (with, if the Company or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Company and the Trustee duly executed by, the Holder thereof or his or her attorney duly authorized in writing), and the Company shall execute, and the Trustee shall authenticate and deliver to the Holder of such Registered Security without service charge, a new Registered Security or Securities of the same series and of like tenor, of any authorized denomination as requested by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.

ARTICLE TWELVE

SINKING FUNDS

Section 1201. Applicability of Article.

The provisions of this Article shall be applicable to any sinking fund for the retirement of Securities of a series except as otherwise specified as contemplated by Section 301 for Securities of such series.

The minimum amount of any sinking fund payment provided for by the terms of Securities of any series is herein referred to as a "mandatory sinking fund payment," and any payment in excess of such minimum amount provided for by the terms of Securities of any series is herein referred to as an "optional sinking fund payment."  If provided for by the terms of Securities of any series, the cash amount of any sinking fund payment may be subject to reduction as provided in Section 1202.  Each sinking fund payment shall be applied to the redemption of Securities of any series as provided for by the terms of Securities of such series.

Section 1202. Satisfaction of Sinking Fund Payments with Securities.

The Company (1) may deliver Outstanding Securities of a series (other than any previously called for redemption), together in the case of Bearer Securities with all unmatured coupons appertaining thereto, and (2) may apply as a credit Securities of a series that have been redeemed either at the election of the Company pursuant to the terms of such Securities or

63

through the application of permitted optional sinking fund payments pursuant to the terms of such Securities, in each case in satisfaction of all or any part of any sinking fund payment with respect to the Securities of such series required to be made pursuant to the terms of such Securities as provided for by the terms of such series; provided that such Securities have not been previously so credited.  Such Securities shall be received and credited for such purpose by the Trustee at the Redemption Price specified in such Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly.

Section 1203. Redemption of Securities for Sinking Fund.

Not less than 60 days prior to each sinking fund payment date for any series of Securities, the Company shall deliver to the Trustee an Officers' Certificate specifying the amount of the next ensuing sinking fund payment for that series pursuant to the terms of that series, the portion thereof, if any, which is to be satisfied by payment of cash and the portion thereof, if any, which is to be satisfied by delivering and crediting Securities of that series pursuant to Section 1202 and will also deliver to the Trustee any Securities to be so delivered.  Not less than 30 days before each such sinking fund payment date the Trustee shall select the Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 1103 and cause notice of the redemption thereof to be given in the name of and at the expense of the Company in the manner provided in Section 1104.  Such notice having been duly given, the redemption of such Securities shall be made upon the terms and in the manner stated in Sections 1106 and 1107.

ARTICLE THIRTEEN

CONVERSION OF SECURITIES

Section 1301. Conversion Privilege and Conversion Price.

If pursuant to Section 301 any series of Securities is to be convertible, then, subject to and upon compliance with the provisions of this Article, at the option of the Holder thereof, any Security of such series or any portion of the principal amount thereof may be converted at the principal amount thereof, or of such portion thereof, into fully paid and nonassessable shares (calculated as to each conversion to the nearest 1/100 of a share) of Series A Common Stock of the Company, at the conversion price, determined as hereinafter provided, in effect at the time of conversion.  In case a Security or portion thereof is called for redemption or is repurchased, such conversion right in respect of the Security or portion so called shall expire at the close of business on the Redemption Date or the repurchase date, unless the Company defaults in making the payment due upon redemption or repurchase.

The price at which shares of Series A Common Stock shall be delivered upon conversion (herein called the "conversion price") shall be specified pursuant to Section 301.  The conversion price shall be reduced in certain instances as provided in paragraphs (1), (2), (3), (4), (5), (6), (7) and (9) of Section 1304 and shall be increased in certain instances as provided in paragraph (3) of Section 1304.

In case the Company shall, by dividend or otherwise, declare or make a distribution on its Series A Common Stock referred to in paragraph (4) or (5) of Section 1304, the Holder of each Security, upon the conversion right thereof pursuant to this Article subsequent to the close of business on the date fixed for the determination of stockholders entitled to receive such distribution and prior to the effectiveness of the conversion price adjustment in respect of such distribution pursuant to paragraph (4) or (5) of Section 1304, shall also be entitled to receive for each share of Series A Common Stock into which such Security is converted, the portion of the evidences of indebtedness, shares of capital stock, cash and assets so distributed applicable to

64

one share of Series A Common Stock, provided that, at the election of the Company (whose election shall be evidenced by a Board Resolution) with respect to all Holders so converting, the Company may, in lieu of distributing to such Holder any portion of such distribution not consisting of cash or securities of the Company, pay such Holder an amount in cash equal to the fair market value thereof (as determined by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution).  If any conversion of a Security described in the immediately preceding sentence occurs prior to the payment date for a distribution to holders of Series A Common Stock that the Holder of the Security so converted is entitled to receive in accordance with the immediately preceding sentence, the Company may elect (such election to be evidenced by a Board Resolution) to distribute to such Holder a due bill for the evidences of indebtedness, shares of capital stock, cash or assets to which such Holder is so entitled, provided that such due bill (i) meets any applicable requirements of the principal national securities exchange or other market on which the Series A Common Stock is then traded and (ii) requires payment or delivery of such evidences of indebtedness, shares of capital stock, cash or assets no later than the date of payment or delivery thereof to holders of Series A Common Stock receiving such distribution.

Section 1302. Exercise of Conversion Privilege.

    In order to exercise the conversion privilege, the Holder of any Security to be converted shall surrender such Security, duly endorsed or assigned to the Company or in blank in the case of Registered Securities, together in the case of Bearer Securities with all unmatured coupons and any unmatured coupons in default appertaining thereto, at any office or agency of the Company maintained for that purpose pursuant to Section 1002, accompanied by written notice to the Company at such office or agency that the Holder elects to convert such Security or, if less than the entire principal amount thereof is to be converted, the portion thereof to be converted.  Registered Securities surrendered for conversion during the period from the close of business on any Regular Record Date next preceding any Interest Payment Date to the opening of business on such Interest Payment Date shall (except in the case of Registered Securities or portions thereof that have been called for redemption, or are to be repurchased, on such Interest Payment Date or on a Redemption Date or a repurchase date within the period beginning on such Regular Record Date and ending on such Interest Payment Date) be accompanied by payment of an amount equal to the interest payable on such Interest Payment Date on the principal amount of Securities being surrendered for conversion (or, if such Registered Security was issued in exchange for a Bearer Security after the close on such Regular Record Date, by surrender of one or more coupons relating to such Interest Payment Date or by both payment in such funds and surrender of such coupon or coupons, in either case, in an amount equal to the interest payable on such Interest Payment Date on the principal amount of the Registered Security then being converted).  Except as provided in the preceding sentence and subject to the fifth paragraph of Section 307, no payment or adjustment shall be made upon any conversion on account of any interest accrued on the Securities surrendered for conversion or on account of any dividends on the Series A Common Stock issued upon conversion.

    Securities shall be deemed to have been converted immediately prior to the close of business on the day of surrender of such Securities for conversion in accordance with the foregoing provisions, and at such time the rights of the Holders of such Securities as Holders shall cease, and the person or persons entitled to receive the Series A Common Stock issuable upon conversion shall be treated for all purposes as the record holder or holders of such Series A Common Stock at such time.  As promptly as practicable on or after the conversion date, the Company shall issue and shall deliver at such office or agency a certificate or certificates for the number of full shares of Series A Common Stock issuable upon conversion, together with payment in lieu of any fraction of a share, as provided in Section 1303.

57

65

In the case of any Security that is converted in part only, upon such conversion the Company shall execute and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Company, a new Security or Securities of authorized denominations in aggregate principal amount equal to the unconverted portion of the principal amount of such Security, along with the coupons appertaining thereto.

Section 1303. Fractions of Shares.

No fractional shares of Series A Common Stock shall be issued upon conversion of Securities.  If more than one Security shall be surrendered for conversion at one time by the same Holder, the number of full shares that shall be issuable upon conversion thereof shall be computed on the basis of the aggregate principal amount of the Securities (or, in the case of Registered Securities, specified portions thereof) so surrendered.  Instead of any fractional share of Series A Common Stock that would otherwise be issuable upon conversion of any Security or securities (or, in the case of Registered Securities, specified portions thereof), the Company shall pay a cash adjustment in respect of such fraction in an amount equal to the same fraction of the Closing Price at the close of business on the date of conversion.

Section 1304. Adjustment of Conversion Price.

(1)  In case the Company shall pay or make a dividend or other distribution on its Series A Common Stock exclusively in Series A Common Stock or shall pay or make a dividend or other distribution on any other class of capital stock of the Company which dividend or distribution includes Series A Common Stock, the conversion price in effect at the opening of business on the day following the day fixed for the determination of stockholders entitled to receive such dividend or other distribution shall be reduced by multiplying such conversion price by a fraction of which the numerator shall be the number of shares of Series A Common Stock outstanding at the close of business on the date fixed for such determination and the denominator shall be the sum of such number of shares and the total number of shares constituting such dividend or other distribution, such reduction to become effective immediately after the opening of business on the day following the date fixed for such determination.  For the purposes of this paragraph (1), the number of shares of Series A Common Stock at any time outstanding shall not include shares held in the treasury of the Company but shall include shares issuable in respect of scrip certificates issued in lieu of fractions of shares of Series A Common Stock.  The Company shall not pay any dividend or make any distribution on shares of Series A Common Stock held in the treasury of the Company.

(2)  Subject to the last sentence of paragraph (7) of this Section, in case the Company shall pay or make a dividend or other distribution on its Series A Common Stock consisting exclusively of, or shall otherwise issue to all holders of its Series A Common Stock, rights or warrants entitling the holders thereof to subscribe for or purchase shares of Series A Common Stock at a price per share less than the current market price per share (determined as provided in paragraph (8) of this Section) of the Series A Common Stock on the date fixed for the determination of stockholders entitled to receive such rights or warrants, the conversion price in effect at the opening of business on the day following the date fixed for such determination shall be reduced by multiplying such conversion price by a fraction of which the numerator shall be the number of shares of Series A Common Stock outstanding at the close of business on the date fixed for such determination plus the number of shares of Series A Common Stock which the aggregate of the offering price of the total number of shares of Series A Common Stock so offered for subscription or purchase would purchase at such current market price and the denominator shall be the number of shares of Series A Common Stock outstanding at the close of business on the date fixed for such determination plus the number of shares of Series A Common Stock so offered for subscription or purchase, such reduction to become effective immediately after the opening of business on the day following the date fixed for such determination.  For the

58

66

purposes of this paragraph (2), the number of shares of Series A Common Stock
at any time outstanding shall not include shares held in the treasury of the
Company but shall include shares issuable in respect of scrip certificates
issued in lieu of fractions of shares of Series A Common Stock.  The Company
shall not issue any rights or warrants in respect of shares of Series A Common
Stock held in the treasury of the Company.

     (3)  In case outstanding shares of Series A Common Stock shall be
subdivided into a greater number of shares of Series A Common Stock, the
conversion price in effect at the opening of business on the day following the
day upon which such subdivision becomes effective shall be proportionately
reduced, and, conversely, in case outstanding shares of Series A Common Stock
shall each be combined into a smaller number of shares of Series A Common
Stock, the conversion price in effect at the opening of business on the day
following the day upon which such combination becomes effective shall be
proportionately increased, such reduction or increase, as the case may be, to
become effective immediately after the opening of business on the day following
the day upon which such subdivision or combination becomes effective.

     (4)  Subject to the last sentence of this paragraph (4), in case the
Company shall, by dividend or otherwise, distribute to all holders of its
Series A Common Stock evidences of its indebtedness, shares of any class of
capital stock, cash or assets (including securities, but excluding any rights
or warrants referred to in paragraph (2) of this Section, excluding any
dividend or distribution paid exclusively in cash and excluding any dividend or
distribution referred to in paragraph (1) of this Section), the conversion
price shall be reduced so that the same shall equal the price determined by
multiplying the conversion price in effect immediately prior to the
effectiveness of the conversion price reduction contemplated by this paragraph
(4) by a fraction of which the numerator shall be the current market price per
share (determined as provided in paragraph (8) of this Section) of the Series A
Common Stock on the date of such effectiveness less the fair market value (as
determined in good faith by the Board of Directors, whose determination shall
be conclusive and described in a Board Resolution), on the date of such
effectiveness, of the portion of the evidences of indebtedness, shares of
capital stock, cash and assets so distributed applicable to one share of Series
A Common Stock and the denominator shall be such current market price per share
of the Series A Common Stock, such reduction to become effective immediately
prior to the opening of business on the day following the later of (a) the date
fixed for the payment of such distribution and (b) the date 20 days after the
notice relating to such distribution is given pursuant to Section 1306(a) (such
later date of (a) and (b) being referred to as the "Reference Date").  If the
Board of Directors determines the fair market value of any distribution for
purposes of this paragraph (4) by reference to the actual or when issued
trading market for any securities comprising such distribution, it must in
doing so consider the prices in such market over the same period used in
computing the current market price per share pursuant to paragraph (8) of this
Section.  For purposes of this paragraph (4), any dividend or distribution that
includes shares of Series A Common Stock, rights or warrants to subscribe for
or purchase shares of Series A Common Stock or other securities convertible
into or exchangeable for shares of Series A Common Stock shall be deemed
instead to be (a) a dividend or distribution of the evidences of indebtedness,
cash, assets or shares of capital stock other than such shares of Series A
Common Stock, such rights or warrants or such other convertible or exchangeable
securities (making any conversion price reduction required by this paragraph
(4)), immediately followed by (b) in the case of such shares of Series A Common
Stock or such rights or warrants, a dividend or distribution thereof (making
any further conversion price reduction required by paragraph (1) or (2) of this
Section, except (i) the Reference Date of such dividend or distribution as
defined in this paragraph (4) shall be substituted for "the date fixed for the
determination of stockholders entitled to receive such distribution" and "the
date fixed for such determination" within the meaning of paragraphs (1) and (2)
of this Section and (ii) any shares of Series A Common Stock included in such
dividend or distribution shall not be deemed "outstanding at the close of
business on the date fixed for such determination" within the meaning of
paragraph (1) of this Section) or (c) in the case of such other convertible or
exchangeable securities, a dividend or

59

67

distribution of such number of shares of Series A Common Stock as would then be issuable upon the conversion or exchange thereof, whether or not the conversion or exchange of such securities is subject to any conditions (making any further conversion price reduction required by paragraph (1) of this Section, except (i) the Reference Date of such dividend or distribution as defined in this paragraph (4) shall be substituted as "the date fixed for the determination of stockholders entitled to receive such distribution" and "the date fixed for such determination" and (ii) the shares deemed to constitute such dividend or distribution shall not be deemed "outstanding at the close of business on the date fixed for such determination", each within the meaning of paragraph (1) of this Section).

(5) In case the Company shall, by dividend or otherwise, at any time distribute to all holders of its Series A Common Stock cash (excluding any cash that is distributed as part of a distribution referred to in paragraph (4) of this Section) in an aggregate amount that, together with (i) the aggregate amount of any other distributions to all holders of its Series A Common Stock made exclusively in cash within the 12 months preceding the date of payment of such distribution and in respect of which no conversion price adjustment pursuant to this paragraph (5) has been made and (ii) the aggregate of any cash plus the fair market value (as determined by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution) of consideration payable in respect of any tender offer by the Company or a Subsidiary for all or any portion of the Company's Series A Common Stock concluded within the 12 months preceding the date of payment of such distribution and in respect of which no conversion price adjustment pursuant to paragraph (6) of this Section has been made, exceeds 10% of the product of the current market price per share (determined as provided in paragraph (8) of this Section) of the Series A Common Stock on the date fixed for stockholders entitled to receive such distribution, times the number of shares of Series A Common Stock outstanding on such date, the conversion price shall be reduced so that the same shall equal the price determined by multiplying the conversion price in effect immediately prior to the effectiveness of the conversion price reduction contemplated by this paragraph (5) by a fraction of which the numerator shall be the current market price per share (determined as provided in paragraph (8) of this Section) of the Series A Common Stock on the date of such effectiveness less the amount of cash so distributed applicable to one share of Series A Common Stock and the denominator shall be such current market price per share of the Series A Common Stock, such reduction to become effective immediately prior to the opening of business on the later of (a) the day following the date fixed for the payment of such distribution and (b) the date 20 days after the notice relating to such distribution is given pursuant to Section 1306(a).

(6) In case a tender offer made by the Company or any Subsidiary for all or any portion of the Company's Series A Common Stock shall expire and such tender offer shall involve an aggregate consideration having a fair market value (as determined by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution) on the last time (the "Expiration Time") tenders may be made pursuant to such tender offer (as it may be amended) that, together with (i) the aggregate of the cash plus the fair market value (as determined by the Board of Directors, whose determination shall be conclusive and described in a Board Resolution), as of the expiration of such tender offer, of consideration payable in respect of any tender offer by the Company, or a Subsidiary for all or any portion of the Company's Series A Common Stock expiring within the 12 months preceding the expiration of such tender offer and in respect of which no conversion price adjustment pursuant to this paragraph (6) has been made and (ii) the aggregate amount of any distributions to all holders of the Company's Series A Common Stock made exclusively in cash within the 12 months preceding the expiration of such tender offer and in respect of which no conversion price adjustment pursuant to paragraph (5) of this Section has been made, exceeds 5% of the product of the current market price per share determined as provided in paragraph (8) of this Section) of the Series A Common Stock on the Expiration Time times the number of shares of Series A Common Stock outstanding (including any tendered shares) on the Expiration Time, the conversion price shall be reduced so that the

68

same shall equal the price determined by multiplying the conversion price in effect immediately prior to the Expiration Time by a fraction of which the numerator shall be (i) the product of the current market price per share (determined as provided in paragraph (8) of this Section) of the Series A Common Stock on the Expiration Time times the number of shares of Series A Common Stock outstanding (including any tendered shares) on the Expiration Time key minus (ii) the fair market value (determined as aforesaid) of the aggregate consideration payable to stockholders based on the acceptance (up to any maximum specified in the terms of the tender offer) of all shares validly tendered and not withdrawn as of the Expiration Time (the shares deemed so accepted, up to any such maximum, being referred to as the "Purchased Shares") and the denominator shall be the product of (i) such current market price per share on the Expiration Time times such number of outstanding shares on the Expiration Time less the number of Purchased Shares, such reduction to become effective immediately prior to the opening of business on the day following the Expiration Time.  No such adjustment shall be made in the event of any purchase pursuant to Rule 10b-18 under the Exchange Act.

(7) The reclassification of Series A Common Stock into securities including securities other than Series A Common Stock (other than any reclassification upon a consolidation or merger to which Section 1310 applies) shall be deemed to involve (a) a distribution of such securities other than Series A Common Stock to all holders of Series A Common Stock (and the effective date of such reclassification shall be deemed to be "the Reference Date" within the meaning of paragraph (4) of this Section), and (b) a subdivision or combination, as the case may be, of the number of shares of Series A Common Stock outstanding immediately prior to such reclassification into the number of shares of Series A Common Stock outstanding immediately thereafter (and the effective date of such reclassification shall be deemed to be "the day upon which such subdivision becomes effective", or "the day upon which such combination becomes effective", as the case may be, and "the day upon which such subdivision or combination becomes effective" within the meaning of paragraph (3) of this Section).  Rights or warrants issued by the Company to all holders of its Series A Common Stock entitling the holders thereof to subscribe for or purchase shares of Series A Common Stock, which rights or warrants (i) are deemed to be transferred with such shares of Series A Common Stock, (ii) are exercisable and (iii) are also issued in respect of future issuances of Series A Common Stock, in each case in clauses (i) through (iii) until the occurrence of a specified event or events ("Trigger Event"), shall for purposes of this Section 1304 not be deemed issued and the distribution thereof not be deemed made or paid until the occurrence of the earliest Trigger Event.

(8) For the purpose of any computation under this paragraph and paragraphs (2), (4) and (5) of this Section, the current market price per share of Series A Common Stock on any date shall be deemed to be the average of the Closing Prices for the five consecutive Trading Days selected by the Company commencing not more than 20 Trading Days before, and ending not later than, the date in question; provided, however, that (i) if the "ex" date for any event (other than the issuance or distribution requiring such computation) that requires an adjustment to the conversion price occurs on or after the 20th Trading Day prior to the day in quest ion and prior to the "ex" date for the issuance or distribution requiring such computation, the Closing Price for each Trading Day prior to the "ex" date for such other event shall be adjusted by multiplying such Closing Price by the same fraction by which the conversion price is so required to be adjusted as a result of such other event, (ii) if the "ex" date for any event (other than the issuance or distribution requiring such computation) that requires an adjustment to the conversion price occurs on or after the "ex" date for the issuance or distribution requiring such computation and on or prior to the day in question, the Closing Price for each Trading Day on and after the ex" date for such other event shall be adjusted by multiplying such Closing Price by the reciprocal of the fraction by which the conversion price is so required to be adjusted as a result of such other event and (iii) if the "ex" date for the issuance or distribution requiring such computation is on or prior to the day in question, after taking into account any adjustment required pursuant to clause (ii) of this proviso, the Closing Price for each Trading Day on or after such "ex" date shall be

69

adjusted by adding thereto the amount of any cash and the fair market value on the day in question (as determined by the Board of Directors in a manner consistent with any determination of such value for purposes of paragraph (4) or (5) of this Section, whose determination shall be conclusive and *described* in a Board Resolution) of the evidences of indebtedness, shares of capital stock or assets being distributed applicable to one share of Series A Common Stock as of the close of business on the day before such "ex" date.  For the purpose of any computation under Paragraph (6) of this Section, the current market price per share of Series A Common Stock on any date shall be deemed to be the average of the daily Closing Prices for the five consecutive Trading Days selected by the Company commencing on or after the latest (the "Commencement Date") of (i) the date 20 Trading Days before the date in question, (ii) the date of commencement of the tender offer requiring such computation and (iii) the date of the last amendment, if any, of such tender offer involving a change in the maximum number of shares for which tenders are sought or a change in the consideration offered, and ending not later than the Expiration Time of such tender offer; provided, however, that if the "ex" date for any such event (other than the tender offer requiring such computation) that requires an adjustment to the conversion price occurs on or after the Commencement Date and prior to the Expiration Time for the tender offer requiring such computation, the Closing Price for each Trading Day prior to the "ex" date for such other event shall be adjusted by multiplying such Closing Price by the same fraction by which the conversion price is so required to be adjusted as a result of such other event.  For purposes of this paragraph the term "ex' date", (i) when used with respect to any issuance or distribution, means the first date on which the Series A Common Stock trades regular way on the relevant exchange or in the relevant market from which the Closing price was obtained without the right to receive such issuance or distribution, (ii) when used with respect to any subdivision or combination of shares of Series A Common Stock, means the first date on which the Series A Common Stock trades regular way on such exchange or in such market after the time at which such subdivision or combination becomes effective and (iii) when used with respect to any tender offer means the first date on which the Series A Common Stock trades regular way on such exchange or in such market after the Expiration Time of such tender offer.

(9)  The Company may make such reductions in the conversion price, in addition to those required by this Section, as it considers to be advisable in order that any event treated for Federal income tax purposes as a dividend of stock or stock rights shall not be taxable to the recipients.

(10)  No adjustment in the conversion price shall be required unless such adjustment would required an increase or decrease of at least 1% in the conversion price; provided, however, that any adjustments which by reason of this paragraph (10) are not required to be made shall be carried forward and taken into account in any subsequent adjustment.

(11)  Notwithstanding any other provision of this Section 1304, no adjustment to the conversion price shall reduce the conversion price below the then par value per share of the Series A Common Stock, and any such purported adjustment shall instead reduce the conversion price to such par value.  The Company hereby covenants not to take any action that would or does result in any adjustment in the conversion price that, if made without giving effect to the previous sentence, would cause the conversion price to be less than the then par value per share of the Series A Common Stock.

Section 1305.  Notice of Adjustments of Conversion Price.

Whenever the conversion price is adjusted as herein provided and at such other times as the Trustee shall request:

(a)  the Company shall compute the adjusted conversion price in accordance with Section 1304 and shall prepare a certificate signed by the Treasurer of the Company

70

setting forth the adjusted conversion price and showing in reasonable detail the facts upon which such adjustment is based, and such certificate shall forthwith be delivered to the Trustee and filed at each office or agency maintained for the purpose of conversion of Securities pursuant to Section 1002; and

(b) the Company shall prepare a notice stating that the conversion price has been adjusted and setting forth the adjusted conversion price and shall cause such notice to be mailed to all Holders of Registered Securities at their last addresses as they shall appear in the Security Register.

Section 1306. Notice of Certain Corporate Action.

In case:

(a) the Company shall declare a dividend (or any other distribution) on its Series A Common Stock payable otherwise than in cash out of its retained earnings; or

(b) the Company shall authorize the granting to the holders of its Series A Common Stock generally of rights or warrants to subscribe for or purchase any shares of capital stock of any class or of any other rights; or

(c) of any reclassification of the Series A Common Stock of the Company (other than a subdivision or combination of its outstanding shares of Series A Common Stock), or of any consolidation or merger to which the Company is a party and for which approval of any stockholders of the Company is required, or of the sale or transfer of all or substantially all of the assets of the Company; or

(d) of the voluntary or involuntary dissolution, liquidation or winding up of the Company; or

(e) the Company or any Subsidiary shall commence a tender offer for all or a portion of the Company's outstanding shares of Series A Common Stock (or shall amend any such tender offer);

then the Company shall notify the Trustee and cause to be filed at each office or agency maintained for the purpose of conversion of securities pursuant to Section 1002, and shall cause to be mailed to all Holders of Registered Securities at their last addresses as they shall appear in the Security Register, at least 20 days (or 10 days in any case specified in clause (a) or (b) above) prior to the applicable record date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution, rights or warrants, or, if a record is not to be taken, the date as of which the holders of Series A Common Stock of record to be entitled to such dividend, distribution, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up is expected to become effective, and the date as of which it is expected that holders of Series A Common Stock of record shall be entitled to exchange their shares of Series A Common Stock for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up, or (z) the date on which such tender offer commenced, the date on which such tender offer is scheduled to expire unless extended, the consideration offered and the other material terms thereof (or the material terms of any amendment thereto).

63

71

Section 1307. Company to Reserve Series A Common Stock.

The Company shall at all times reserve and keep available, free from preemptive rights, out of its authorized but unissued Series A Common Stock, for the purpose of effecting the conversion of Securities, the full number of shares of Common Stock then issuable upon the conversion of all outstanding Securities.

Section 1308. Taxes on Conversions.

The Company will pay any and all taxes, other than any franchise or income taxes, that may be payable in respect of the issue or delivery of shares of Common stock on conversion of Securities pursuant hereto.  The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issue and delivery of shares of Series A Common Stock in a name other than that of the Holder of the Security or Securities to be converted, and no such issue or delivery shall be made unless and until the person requesting such issue has paid to the Company the amount of any such tax, or has established to the satisfaction of the Company that such tax has been paid.

Section 1309. Covenant as to Series A Common Stock.

The Company covenants that all shares of Series A Common Stock that may be issued upon conversion of Securities will upon issue be fully paid and nonassessable and, except as provided in Section 1308, the Company will pay all taxes, liens and charges with respect to the issue thereof.

Section 1310. Cancellation of Converted Securities.

All Securities delivered for conversion shall be delivered to the Trustee to be canceled by or at the direction of the Trustee, which shall dispose of the same as provided in Section 309.

Section 1311. Provisions in the Case of Consolidation, Merger or Sales
            of Assets.

In case of any consolidation of the Company with, or merger of the Company into, any other corporation, or in case of any merger of another corporation into the Company (other than a merger which does not result in any reclassification, conversion, exchange or cancellation of outstanding shares of Series A Common Stock of the Company), or in case of any sale or transfer of all or substantially all of the assets of the Company, the corporation formed by such consolidation or resulting from such merger or which acquires such assets, as the case may be, shall execute and deliver to the trustee a supplemental indenture providing that the Holder of each Security then outstanding shall have the right thereafter, during the period such Security shall be convertible as specified in Section 1301, to convert such Security only into the kind and amount of securities, cash and other property receivable upon such consolidation, merger, sale or transfer by a holder of the number of shares of Series A Common Stock of the Company into which such Security might have been converted immediately prior to such consolidation, merger, sale or transfer, assuming such holder of Series A Common Stock of the Company failed to exercise his or her rights of election, if any, as to the kind or amount of securities, cash and other property receivable upon such consolidation, merger, sale or transfer (provided that if the kind or amount of securities, cash and other property receivable upon such consolidation, merger, sale or transfer is not the same for each share of Series A Common Stock of the company in respect of which such rights of election shall not have been exercised ("non-electing share"), then for the purpose of this Section the kind and amount of securities, cash and other property receivable upon such consolidation, merger, sale or transfer by each non-electing share shall be deemed to be the kind and amount so receivable per share by a plurality of the non-electing shares).

64

72

Such supplemental indenture shall provide for adjustments which, for events subsequent to the effective date of such supplemental indenture, shall be as nearly equivalent as may be practicable to the adjustments provided for in this Article. The above provisions of this Section shall similarly apply to successive consolidations, mergers, sales or transfers.

Section 1312. Responsibility of Trustee.

The Trustee shall not at any time be under any duty or responsibility to any Holder of a Security to make or cause to be made any adjustment of the conversion price, or to determine whether any facts exist which may require any such adjustment, or with respect to the nature or extent of any such adjustment when made, or with respect to any method employed, or herein or in any supplemental indenture provided to be employed, in making the same. The Trustee shall not be accountable with respect to the validity or value (or the kind or amount) of any shares of Series A Common Stock or of any securities or property which may at any time be issued or delivered upon conversion of any Security, and the Trustee makes no representation with respect thereto. The Trustee shall not be responsible for any failure of the Company to issue, transfer or deliver any shares of Series A Common Stock or stock certificates or other securities or property upon surrender of any Security for the purpose of conversion or to comply with any of the covenants of the Company contained in this Article Thirteen.

ARTICLE FOURTEEN

DEFEASANCE AND COVENANT DEFEASANCE

Section 1401. Company's Option to Effect Defeasance or Covenant Defeasance.

The Company may elect, at its option by Board Resolution at any time, to have either Section 1402 or Section 1403 applied to the Outstanding Securities of any series designated pursuant to Section 301 as being defeasible pursuant to this Article Fourteen (hereinafter called a "Defeasible Series"), upon compliance with the conditions set forth below in this Article Fourteen.

Section 1402. Defeasance and Discharge.

Upon the Company's exercise of the option provided in Section 1401 to have this Section 1402 applied to the Outstanding Securities of any Defeasible Series, the Company shall be deemed to have been discharged from its obligations with respect to the Outstanding Securities of such series as provided in this Section on and after the date the conditions set forth in Section 1404 are satisfied (hereinafter called "Defeasance"). For this purpose, such Defeasance means that the Company shall be deemed to have paid and discharged the entire indebtedness represented by the Outstanding Securities of such series and any related coupons and to have satisfied all its other obligations under the Securities of such series, and this Indenture insofar as the Securities of such series are concerned (and the Trustee, at the expense of the Company, shall execute proper instruments acknowledging the same), subject to the following which shall survive until otherwise terminated or discharged hereunder: (1) the rights of Holders of Securities of such series to receive, solely from the trust fund described in Section 1404 and as more fully set forth in such Section, payments in respect of the principal of and any premium and interest on such Securities of such series when payments are due, (2) the Company's obligations with respect to the Securities of such series under Sections 304, 305, 306, 1002 and 1003 and with respect to the Trustee under Sections 607 and 1405, (3) the rights, powers, trusts, duties and immunities of the Trustee hereunder and (4) this Article Fourteen. Subject to compliance with this Article Fourteen, the Company may exercise its option provided in Section 1401 to have this Section 1402 applied to the Outstanding Securities of any Defeasible Series notwithstanding the prior

65

73

exercise of its option provided in Section 1401 to have Section 1403 applied to the Outstanding Securities of such series.

Section 1403. Covenant Defeasance.

Upon the Company's exercise of the option provided in Section 1401 to have this Section 1403 applied to the Outstanding Securities of any Defeasible Series, (1) the Company shall be released from its obligations under Sections 1005 through 1008, inclusive, and (2) the occurrence of any event specified in Sections 501(4) (with respect to any of Sections 1005 through 1008, inclusive) and 501(7) shall be deemed not to be or result in an Event of Default, in each case with respect to the Outstanding Securities of such series as provided in this Section on and after the date the conditions set forth in Section 1404 are satisfied (hereinafter called "Covenant Defeasance"). For this purpose, such Covenant Defeasance means that the Company may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such specified Section (to the extent so specified in the case of Section 501(4)), whether directly or indirectly by reason of any reference elsewhere herein to any such Section or by reason of any reference in any such Section to any other provision herein or in any other document, but the remainder of this Indenture and the Securities of such series shall be unaffected thereby.

Section 1404. Conditions to Defeasance or Covenant Defeasance.

The following shall be the conditions to application of either Section 1402 or Section 1403 to the Outstanding Securities of any Defeasible Series:

(1) The Company shall irrevocably have deposited or caused to be deposited with the Trustee (or another trustee that satisfies the requirements contemplated by Section 609 and agrees to comply with the provisions of this Article Fourteen applicable to it) as trust funds in trust for the purpose of making the following payments, specifically pledged as security for, and dedicated solely to, the benefit of the Holders of Outstanding Securities of such series, (A) money in an amount, or (B) U.S. Government Obligations that through the scheduled payment of principal and interest in respect thereof (without consideration of any reinvestment thereof) in accordance with their terms will provide, not later than one day before the due date of any payment, money in an amount, or (C) a combination thereof, in each case sufficient, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, to pay and discharge, and that shall be applied by the Trustee (or any such other qualifying trustee) to pay and discharge, the principal of and any premium and interest on the Securities of such series on the respective Stated Maturities, in accordance with the terms of this Indenture and the Securities of such series. As used herein, "U.S. Government Obligation" means (x) any security that is (i) a direct obligation of the United States of America for the payment of which the full faith and credit of the United States of America is pledged or (ii) an obligation of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case (i) or (ii), is not callable or redeemable at the option of the issuer thereof, and (y) any depositary receipt issued by a bank (as defined in Section 3(a)(2) of the Securities Act of 1933, as amended) as custodian with respect to any U.S. Government Obligation specified in Clause (x) and held by such custodian for the account of the holder of such depositary receipt, or with respect to any specific payment of principal of or interest on any such U.S. Government Obligation; provided, however, that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depositary receipt from any amount received by

66

74

the custodian in respect of the U.S. Government Obligation or the specific payment of principal or interest evidenced by such depositary receipt.

(2) In the case of an election under Section 1402, the Company shall have delivered to the Trustee an Opinion of Counsel stating that (A) the Company has received from, or there has been published by, the Internal Revenue Service a ruling or (B) since the date first set forth hereinabove, there has been a change in the applicable Federal income tax law, in either case (A) or (B) to the effect that, and based thereon such opinion shall confirm that, the Holders of the Outstanding Securities of such series will not recognize income, gain or loss for Federal income tax purposes as a result of the deposit, Defeasance and discharge to be effected with respect to the Securities of such series and will be subject to Federal income tax on the same amount, in the same manner and at the same times as would be the case if such deposit, Defeasance and discharge were not to occur.

(3) In the case of an election under Section 1403, the Company shall have delivered to the Trustee an Opinion of Counsel to the effect that the Holders of the Outstanding Securities of such series will not recognize income, gain or loss for Federal income tax purposes as a result of the deposit and Covenant Defeasance to be effected with respect to the Securities of such series and will be subject to Federal income tax on the same amount, in the same manner and at the same times as would be the case if such deposit and Covenant Defeasance were not to occur.

(4) The Company shall have delivered to the Trustee an Officer's Certificate to the effect that the Securities of such series, if then listed on any securities exchange, will not be delisted as a result of such deposit.

(5) No Event of Default or event that (after notice or lapse of time or both) would become an Event of Default shall have occurred and be continuing at the time of such deposit or, with regard to any Event of Default or any such event specified in Sections 501(6) and (7), at any time on or prior to the 90th day after the date of such deposit (it being understood that this condition shall not be deemed satisfied until after such 90th day).

(6) Such Defeasance or Covenant Defeasance shall not cause the Trustee to have a conflicting interest within the meaning of the Trust Indenture Act (assuming all Securities are in default within the meaning of such Act).

(7) Such Defeasance or Covenant Defeasance shall not result in a breach or violation of, or constitute a default under, any other agreement or instrument to which the Company is a party or by which it is bound.

(8) The Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent with respect to such Defeasance or Covenant Defeasance have been complied with.

(9) Such Defeasance or Covenant Defeasance shall not result in the trust arising from such deposit constituting an investment company within the meaning of the Investment Company Act of 1940, as amended, unless such trust shall be qualified under such Act or exempt from regulation thereunder.

Section 1405. Deposited Money and U.S. Government Obligations to be Held in Trust; Other Miscellaneous Provisions.

67

75

Subject to the provisions of the last paragraph of Section 1003, all money and U.S. Government Obligations (including the proceeds thereof) deposited with the Trustee or other qualifying trustee (solely for purposes of this Section and Section 1406, the Trustee and any such other trustee are referred to collectively as the "Trustee") pursuant to Section 1404 in respect of the Securities of any Defeasible Series shall be held in trust and applied by the Trustee, in accordance with the provisions of the Securities of such series and this Indenture, to the payment, either directly or through any such Paying Agent (including the Company acting as its own Paying Agent) as the Trustee may determine, to the Holders of Securities of such series, of all sums due and to become due thereon in respect of principal and any premium and interest, but money so held in trust need not be segregated from other funds except to the extent required by law.

The Company shall pay and indemnify the Trustee against any tax, fee or other charge imposed on or assessed against the U.S. Government Obligations deposited pursuant to Section 1404 or the principal and interest received in respect thereof other than any such tax, fee or other charge that by law is for the account of the Holders of Outstanding Securities.

Anything in this Article Fourteen to the contrary notwithstanding, the Trustee shall deliver or pay to the Company from time to time upon Company Request any money or U.S. Government Obligations held by it as provided in Section 1404 with respect to Securities of any Defeasible Series that, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof that would then be required to be deposited to effect an equivalent Defeasance or Covenant Defeasance with respect to the Securities of such series.

Section 1406. Reinstatement.

If the Trustee or the Paying Agent is unable to apply any money in accordance with this Article Fourteen with respect to the Securities of any series by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, then the Company's obligations under this Indenture and the Securities of such series shall be revived and reinstated as though no deposit had occurred pursuant to this Article Fourteen with respect to Securities of such series until such time as the Trustee or Paying Agent is permitted to apply all money held in trust pursuant to Section 1405 with respect to Securities of such series in accordance with this Article Fourteen; provided, however, that if the Company makes any payment of principal of or any premium or interest on any Security of such series following the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of Securities of such series to receive such payment from the money so held in trust.

ARTICLE FIFTEEN

MEETINGS OF HOLDERS OF SECURITIES

Section 1501. Purposes for Which Meetings May Be Called.

If Securities of a series are issuable in whole or in part as Bearer Securities, a meeting of Holders of Securities of such series may be called at any time and from time to time pursuant to this Article to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other Act provided by this Indenture to be made, given or taken by Holders of Securities of such series.

76

Section 1502. Call, Notice and Place of Meetings.

(a) The Trustee may at any time call a meeting of Holders of Securities of
any series issuable as Bearer Securities for any purpose specified in Section
1501, to be held at such time and at such place in the City of Los Angeles, or
the Borough of Manhattan, The City of New York, as the Trustee shall determine.
Notice of every meeting of Holders of Securities of any series, setting forth
the time and the place of such meeting and in general terms the action proposed
to be taken at such meeting, shall be given, in the manner provided in Section
106, not less than 21 nor more than 180 days prior to the date fixed for the
meeting.

(b) In case at any time the Company, pursuant to a Board Resolution, or
the Holders of at least 10% in principal amount of the Outstanding Securities
of any series shall have requested the Trustee to call a meeting of the Holders
of Securities of such series for any purpose specified in Section 1501, by
written request setting forth in reasonable detail the action proposed to be
taken at the meeting, and the Trustee shall not have made the first publication
of the notice of such meeting within 21 days after receipt of such request or
shall not thereafter proceed to cause the meeting to be held as provided
herein, then the Company or the Holders of Securities of such series in the
amount above specified, as the case may be, may determine the time and place in
the City of Los Angeles, or the Borough of Manhattan, The City of New York, for
such meeting and may call such meeting for such purposes by giving notice
thereof as provided in subsection (a) of this Section.

Section 1503. Persons Entitled to Vote at Meetings.

To be entitled to vote at any meeting of Holders of Securities of any
series, a Person shall be (1) a Holder of one or more Outstanding Securities of
such series, or (2) a Person appointed by an instrument in writing as proxy for
a Holder or Holders of one or more Outstanding Securities of such series by
such Holder or Holders.  The only Persons who shall be entitled to be present
or to speak at any meeting of Holders of Securities of any series shall be the
Persons entitled to vote at such meeting and their counsel, any representatives
of the Trustee and its counsel and any representatives of the Company and its
counsel.

Section 1504. Quorum; Action.

The Persons entitled to vote a majority in principal amount of the
Outstanding Securities of a series shall constitute a quorum for a meeting of
Holders of Securities of such series.  In the absence of a quorum within 30
minutes of the time appointed for any such meeting, the meeting shall, if
convened at the request of Holders of Securities of such series, be dissolved.
In the absence of a quorum in any other case the meeting may be adjourned for a
period of not less than 10 days as determined by the chairman of the meeting
prior to the adjournment of such adjourned meeting.  Notice of the reconvening
of any adjourned meeting shall be given as provided in Section 1502(a), except
that such notice need be given only once not less than five days prior to the
date on which the meeting is scheduled to be reconvened.  Notice of the
reconvening of an adjourned meeting shall state expressly the percentage, as
provided above, of the principal amount of the Outstanding Securities of such
series which shall constitute a quorum.

Except as limited by the provisos to Section 902, any resolution presented
to a meeting or adjourned meeting duly reconvened at which a quorum is present
as aforesaid may be adopted only by the affirmative vote of the Holders of a
majority in principal amount of the Outstanding Securities of that series;
provided, however, that, except as limited by the provisos to Section 902, any
resolution with respect to any request, demand, authorization, direction,
notice, consent, waiver or other Act which this Indenture expressly provides
may be made, given or taken by the Holders of a specified percentage, which is
less than a majority, in principal amount of the Outstanding Securities of a
series may be adopted at a meeting or an adjourned meeting duly

77

reconvened and at which a quorum is present as aforesaid by the affirmative vote or the Holders of such specified percentage in principal amount of the Outstanding Securities of that series.

Any resolution passed or decision taken at any meeting of Holders of Securities of any series duly held in accordance with this Section shall be binding on all the Holders of Securities of such series and the related coupons, whether or not present or represented at the meeting.

Section 1505.  Determination of Voting Rights; Conduct and Adjournment of
            Meetings.

(a) Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Holders of Securities of such series in regard to proof of the holding of Securities of such series and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.  Except as otherwise permitted or required by any such regulations, the holding of Securities shall be proved in the manner specified in Section 104 and the appointment of any proxy shall be proved in the manner specified in Section 104 or, in the case of Bearer Securities, by having the signature of the person executing the proxy witnessed or guaranteed by any trust company, bank or banker authorized by Section 104 to certify to the holding of Bearer Securities.  Such regulations may provide that written instruments appointing proxies, regular on their face, may be presumed valid and genuine without the proof specified in Section 104 or other proof.

(b) The Trustee shall, by an instrument in writing, appoint a temporary chairperson of the meeting, unless the meeting shall have been called by the Company or by Holders of Securities as provided in Section 1502(b), in which case the Company or the Holders of Securities of the series calling the meeting, as the case may be, shall in like manner appoint a temporary chairperson.  A permanent chairperson and a permanent secretary of the meeting shall be elected by vote of the Persons entitled to vote a majority in principal amount of the Outstanding Securities of such series represented at the meeting.

(c) At any meeting each Holder of a Security of such series or proxy shall be entitled to one vote for each $1,000 principal amount (or the equivalent in ECU, any other composite currency or a Foreign Currency) of Securities of such series held or represented by him; provided, however, that no vote shall be cast or counted at any meeting in respect of any Security challenged as not Outstanding and ruled by the chairperson of the meeting not to be Outstanding.  The chairperson of the meeting shall have no right to vote, except as a Holder of a Security of such series or proxy.

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

---

70

78

    IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, and their respective corporate seals to be hereunto affixed and attested, all as of the day and year first above written.

THE TIMES MIRROR COMPANY

By: /s/  Steven J. Schoch
--------------------------------

Attest:

/s/  O. Jean Williams
--------------------------------

CITIBANK, N.A.


By: /s/  Anja Dahlberg
--------------------------------

Attest:

/s/  Louis Piscatelli
--------------------------------

71

79

EXHIBIT A-1

[FORM OF CERTIFICATE OF BENEFICIAL OWNERSHIP BY A
NON-UNITED STATES PERSON OR BY CERTAIN OTHER PERSONS]

Certificate

THE TIMES MIRROR COMPANY

[INSERT TITLE OR SUFFICIENT DESCRIPTION OF
SECURITIES TO BE DELIVERED]

Reference is hereby made to the Indenture dated as of _____ (the
"Indenture") between The Times Mirror Company, a Delaware corporation, and
_____, as trustee (the "Trustee") covering the above-captioned
Securities.  This is to certify that as of the date hereof, _____
principal amount of Securities credited to you for our account (i) is owned by
persons that are not United States Persons, as defined below; (ii) is owned by
United States Persons that are (a) foreign branches of United States financial
institutions (as defined in U.S. Treasury Regulations Section
1.165-12(c)(i)(v)) ("financial institutions") purchasing for their own account
or for resale, or (b) United States Persons who acquired the Notes through
foreign branches of United States financial institutions on the date hereof
(and in either case (a) or (b), each such United States financial institution
encloses herewith a certificate in the form of Exhibit A-2 to the Indenture);
or (iii) is owned by United States or foreign financial institutions for
purposes of resale during the restricted period (as defined in U.S. Treasury
Regulations Section 1.153-5(c)(2)(i)(D)(7)), which United States or foreign
financial institutions described in clause (iii) above (whether or not also
described in clause (i) or (ii)) certify that they have not acquired the Notes
for purposes of resale directly or indirectly to a United States Person or to a
person within the United States or its possessions.

[INSERT IF CERTIFICATE DOES NOT RELATE TO AN INTEREST PAYMENT - WE
UNDERTAKE TO ADVISE YOU BY TESTED TELEX FOLLOWED BY WRITTEN CONFIRMATION IF THE
ABOVE STATEMENT AS TO BENEFICIAL OWNERSHIP IS NOT CORRECT ON THE DATE OF
DELIVERY OF THE ABOVE-CAPTIONED SECURITIES IN BEARER FORM AS TO ALL OF SUCH
SECURITIES WITH RESPECT TO SUCH OF SAID SECURITIES AS THEN APPEAR IN YOUR BOOKS
AS BEING HELD FOR ACCOUNT.]

We understand that this certificate is required in connection with United
States tax laws.  We irrevocably authorize you to produce this certificate or a
copy hereof to any interested party in any administrative or legal proceedings
with respect to the matters covered by this certificate.  "United States
Person" shall mean a citizen or resident of the United States of America
(including the District of Columbia), a corporation, partnership or other
entity created or organized in or under the laws of the United States or any
political subdivision thereof or an estate or trust that is subject to United
States Federal income taxation regardless of the source of its income.

[THIS CERTIFICATE EXCEPTS AND DOES NOT RELATE TO _____
PRINCIPAL AMOUNT OF SECURITIES CREDITED TO YOU FOR OUR ACCOUNT AND TO WHICH WE
ARE NOT NOW ABLE TO MAKE THE CERTIFICATION SET FORTH ABOVE.  WE UNDERSTAND
THAT DEFINITIVE

80

SECURITIES CANNOT BE DELIVERED AND INTEREST CANNOT BE PAID UNTIL WE ARE ABLE TO
SO CERTIFY WITH RESPECT TO SUCH PRINCIPAL AMOUNT OF SECURITIES.]*

Dated:_____

[TO BE DATED ON OR AFTER
_____ (THE
DATE DETERMINED AS PROVIDED
IN THE INDENTURE)]

                                    [NAME OF PERSON ENTITLED TO RECEIVE
                                    BEARER SECURITY]

                                    _____
                                        (Authorized Signatory)

                                    Name: _____

                                    Title: _____

_____
* Delete if inappropriate.

81

EXHIBIT A-2

[FORM OF CERTIFICATE OF STATUS AS A FOREIGN BRANCH OF A
UNITED STATES FINANCIAL INSTITUTION]

CERTIFICATE

THE TIMES MIRROR COMPANY

[INSERT TITLE OF SUFFICIENT DESCRIPTION OF
SECURITIES TO BE DELIVERED]

Reference is hereby made to the Indenture dated as of _____ , the ("Indenture"), between The Times Mirror Company and _____ , as Trustee, relating to the offering of the above-captioned Securities (the "Securities").  Unless herein defined, terms used herein have the same meaning as given to them in the Indenture.

The undersigned represents that it is a branch located outside the United States of a United States securities clearing organization, bank or other financial institution (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(v)) that holds customers' securities in the ordinary course of its trade or business and agrees, and authorizes you to advise the issuer or the issuer's agent, that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986 and the regulations thereunder and is not purchasing for resale directly or indirectly to a United States Person or to a person within the United States or its possessions.  We undertake to advise you by tested telex followed by written confirmation if the statement in the immediately preceding sentence is not correct on the date of delivery of the above-captioned Securities in bearer form.

We understand that this certificate is required in connection with the United States tax laws.  We irrevocably authorize you to produce this certificate or a copy hereof to any interested party in any administrative or legal proceedings with respect to the matters covered by this certificate.

Dated:_____

[TO BE DATED ON OR AFTER
_____(THE DATE DETERMINED
AS PROVIDED IN THE INDENTURE)]

[NAME OF PERSON ENTITLED TO RECEIVE
BEARER SECURITY]

_____
(Authorized Signatory)

Name:_____

Title:_____

82

EXHIBIT B

[FORM OF CERTIFICATE TO BE GIVEN BY EUROCLEAR
AND CEDEL S.A. IN CONNECTION WITH THE EXCHANGE OF
ALL OR A PORTION OF A TEMPORARY GLOBAL SECURITY OF TO OBTAIN
INTEREST PRIOR TO EXCHANGE]

CERTIFICATE

THE TIMES MIRROR COMPANY

[Insert title of Securities to be delivered]

We refer to that portion, _____, of the Global Security representing the above-captioned issue [which is herewith submitted to be exchanged for definitive Securities] [for which we are seeking to obtain payment of interest] (the "Submitted Portion").  This is to certify, pursuant to the Indenture dated _____ (the "Indenture") between The Times Mirror Company and _____, as Trustee (the "Trustee"), that we have received in writing, by tested telex or by electronic transmission from member organizations with respect to each of the persons appearing in our records as being entitled to a beneficial interest in the Submitted Portion a Certificate of Beneficial Ownership by a Non-United States Person or by Certain Other Person, [and, in some cases, a Certificate of Status as a Foreign Branch of a United States Financial Institution, authorizing us to inform the issuer or issuer's agent that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986 and the regulations thereunder] substantially in the form of Exhibit A-1 [and A-2] to the Indenture.

We hereby request that you deliver to the office of _____ in _____ definitive Bearer Securities in the denominations on the attached Schedule A.

We further certify that as of the date hereof we have not received any notification from any of the persons giving such certificates to the effect that the statements made by them with respect to any part of the Submitted Portion are no longer true and cannot be relied on as of the date hereof.

Dated: _____

                              [Morgan Guaranty Trust Company of New
                              York, Brussels Office, as operator of
                              the Euroclear System]
                              [Cedel S.A.]

                        By: _____

## TRIPARTITE AGREEMENT

**THIS INSTRUMENT OF RESIGNATION, APPOINTMENT AND ACCEPTANCE** (the "Agreement") dated as of June 8, 2009 (the "Effective Date"), is by and among, Tribune Company (formerly known as The Times Mirror Company), a corporation duly organized and existing under the laws of the State of Delaware (the "Issuer"), Law Debenture Trust Company of New York, a New York banking corporation ("Successor Trustee") and Deutsche Bank Trust Company Americas, a New York banking corporation ("Resigning Trustee"). Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Indenture (as defined below).

### RECITALS

**WHEREAS**, there are currently $84,960,000 aggregate principal amount of the Issuer's 6.61% Debentures due September 15, 2027, CUSIP No. 887364AF4 (the "6.61% Debentures") and $148,000,000 aggregate principal amount of the Issuer's 7-1/4% Debentures due November 15, 2096, CUSIP No. 887360AT2 (the "7-1/4% Debentures" and, together with the 6.61% Debentures, the "Securities") outstanding under an Indenture, dated as of March 19, 1996, between the Issuer and Resigning Trustee, as successor to Citibank, N.A., as supplemented by the First Supplemental Indenture, dated as of October 19, 1999 and the Second Supplemental Indenture, dated as of June 12, 2000 (collectively, the "Indenture");

**WHEREAS**, on December 8, 2008, the Issuer and certain of its subsidiaries filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which petitions are being jointly administered under the caption "In re Tribune Company, et. al." Case No. 08-13141 (the "Chapter 11 Filing");

**WHEREAS**, effective as of August 1, 2008, the Issuer appointed the Resigning Trustee as the Trustee, Paying Agent, and Security Registrar under the Indenture;

**WHEREAS**, Section 610 of the Indenture provides that the Resigning Trustee may resign at any time and be discharged of the trust created by the Indenture by giving written notice thereof to the Issuer and upon the acceptance of appointment by a successor trustee;

**WHEREAS**, the Resigning Trustee, pursuant to the provisions of Section 610 of the Indenture, has given such written notice to the Issuer on the 8th day of June, 2009, a copy of which is attached hereto as Exhibit A;

**WHEREAS**, Section 610 of the Indenture further provides that the Issuer shall promptly appoint a successor Trustee and Issuer desires to appoint Successor Trustee as Trustee, Paying Agent, and Security Registrar under the Indenture to succeed the Resigning Trustee in each of such capacities;

**WHEREAS**, holders of a majority in principal amount of the outstanding 7-1/4% Debentures and more than 42% in principal amount of the outstanding Securities have submitted a request to Issuer and Successor Trustee that the Issuer appoint Successor Trustee as successor

ME1 8508410v.4



Trustee, and Issuer and Successor Trustee have not received any request from any holder of the Securities requesting that the Issuer appoint any person other than Successor Trustee as successor Trustee; and

WHEREAS, the Successor Trustee is willing to accept the appointment as Trustee, Paying Agent, and Security Registrar under the Indenture.

NOW, THEREFORE, in consideration of the covenants herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    *Acceptance of Resignation of Resigning Trustee; Appointment of Successor Trustee.*  The Resigning Trustee hereby resigns as Trustee, Paying Agent, and Security Registrar under the Indenture. The Issuer accepts the resignation of the Resigning Trustee as Trustee, Paying Agent, and Security Registrar, and hereby appoints the Successor Trustee as Trustee, Paying Agent, and Security Registrar under the Indenture.

2.    *Issuer Representations and Warranties.*  The Issuer represents and warrants to the Successor Trustee that:

a.    It is duly organized and validly existing; and

b.    It has duly authorized the execution and delivery of this Agreement.

3.    *Resigning Trustee Representations and Warranties.*  The Resigning Trustee hereby represents and warrants to the Successor Trustee that:

a.    No covenant or condition contained in the Indenture has been waived by the Resigning Trustee or, to the knowledge of the Responsible Officers who are signing this document, by the Holders of the percentage in aggregate principal amount of Securities required by the Indenture to effect any such waiver;

b.    There is no action, suit or proceeding pending or, to the knowledge of the Responsible Officers who are signing this document, threatened against the Resigning Trustee before any court or governmental authority arising out of any action or omission by the Resigning Trustee as Trustee, Paying Agent, and Security Registrar under the Indenture;

c.    The Resigning Trustee has made, or promptly will make, available to the Successor Trustee originals or copies of all documents relating to the Securities and trust created by the Indenture and all information in the possession of its corporate trust department relating to the administration and status thereof and will furnish to the Successor Trustee any of such documents or information Successor Trustee may reasonably request; and

2

LD_FEES00000365

d.    The execution and delivery of this Agreement have been duly authorized by the Resigning Trustee, and this Agreement constitutes the Resigning Trustee's legal, valid, binding and enforceable obligation.

4.    *Successor Trustee Representation and Warranty.*  The Successor Trustee represents and warrants to the Resigning Trustee and the Issuer that it is eligible to serve as Trustee under Section 609 of the Indenture and the Trust Indenture Act of 1939, as amended.

5.    *Effectiveness; Acceptance by Successor Trustee.*  This Agreement and the resignation, appointment and acceptance effected hereby shall be effective as of the close of business on the Effective Date, upon the execution and delivery hereof by each of the parties hereto; *provided,* that the resignation of the Resigning Trustee as Paying Agent and the appointment of the Successor Trustee as Paying Agent under the Indenture shall be effective 10 days after the Effective Date.  Successor Trustee hereby accepts its appointment as successor Trustee (Trustee, Security Registrar and Paying Agent) under the Indenture and accepts the trust created thereby, and assumes all rights, powers and duties of the Trustee under the Indenture. The Successor Trustee will perform said rights, powers and duties upon the terms and conditions set forth in the Indenture.  Promptly after the execution and delivery of this Agreement, the Successor Trustee shall cause a notice, the form of which is annexed hereto as Exhibit B, to be sent to each Holder.  The Issuer hereby designates the Corporate Trust Office of the Successor Trustee as set forth in Exhibit B as the Corporate Trust Office under the Indenture.

6.    *Assignment etc. by Resigning Trustee.*  Effective on the Effective Date, the Resigning Trustee hereby confirms, assigns, transfers, delivers and conveys to the Successor Trustee, as Trustee under the Indenture, upon the trusts expressed in the Indenture, all rights, powers, trusts privileges, duties and obligations which the Resigning Trustee now holds under and by virtue of the Indenture and effective as of such date, does hereby pay over to the Successor Trustee any and all property and moneys held by the Resigning Trustee under and by virtue of the Indenture.

7.    *Additional Documentation.*  The Resigning Trustee, for the purposes of more fully and certainly vesting in and confirming to the Successor Trustee the rights, powers, trusts, privileges, duties and obligations hereby assigned, transferred, delivered and conveyed, agrees, upon reasonable request of the Successor Trustee, to execute, acknowledge and deliver such further instruments of conveyance and further assurance and to do such other things as may reasonably be required by the Successor Trustee.

8.    *Choice of Laws.*  This Agreement shall be governed by the laws of the State of New York.

9.    *Counterparts.*  This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all counterparts shall constitute but one Agreement.

10.   *Survival of Issuer's Obligations to Resigning Trustee.*  Notwithstanding the resignation of the Resigning Trustee as Trustee, Security Registrar and Paying Agent under the Indenture, the Issuer shall remain obligated under the Indenture to compensate, reimburse and

3

MEI 8508410v.4

LD_FEES00000366

indemnify the Resigning Trustee in connection with its capacities as Trustee, Security Registrar and Paying Agent for the period from August 1, 2008 through and including the Effective Date (except in the case of Paying Agent, which shall be 10 days after the Effective Date), as provided in the Indenture and subject to applicable law, including, without limitation, the provisions of Title 11 of the United States Code, and nothing contained in this Agreement shall in any way abrogate the obligations of the Issuer to the Resigning Trustee under the Indenture or any lien created in favor of the Resigning Trustee thereunder.

11. _Notices._ All notices, whether faxed or mailed, will be deemed received when sent pursuant to Section 105 of the Indenture to the following:

TO THE SUCCESSOR TRUSTEE:

    Law Debenture Trust Company of New York
    400 Madison Avenue
    New York, New York 10017
    Fax: (212) 750-1361
    Attention: James D. Heaney

TO THE RESIGNING TRUSTEE:

    Deutsche Bank Trust Company Americas
    60 Wall Street, 27th Floor
    Mailstop: NYC60-2720
    New York, NY 10005
    Fax: (732) 578-4635
    Attention: Trust and Securities Services, Re: Tribune Company

TO THE ISSUER:

    Tribune Company
    435 North Michigan Avenue
    Chicago, IL 60611
    Fax: (312) 222-4206
    Attention: General Counsel

[Signature page follows]

ME1 8508410v.4

LD_FEES00000367

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

TRIBUNE COMPANY, AS ISSUER

By _Hodde_

Its _VP / Treasurer_


DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS RESIGNING TRUSTEE


By_____

Its_____


By_____

Its_____


LAW DEBENTURE TRUST COMPANY OF NEW YORK,
AS SUCCESSOR TRUSTEE


By_____

Its_____

5

MEI 8508410v.4

LD_FEES00000368

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date set forth above.

**TRIBUNE COMPANY, AS ISSUER**

By_____

Its_____


**DEUTSCHE BANK TRUST COMPANY AMERICAS,**
**AS RESIGNING TRUSTEE**

By _Stanley Burg_____

Its _Vice President_____

By _Robt Eh_____

Its _Vice President_____


**LAW DEBENTURE TRUST COMPANY OF NEW YORK,**
**AS SUCCESSOR TRUSTEE**

By_____

Its_____

MEI 8508410v.4

5

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

**TRIBUNE COMPANY, AS ISSUER**

By_____

Its_____


**DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS RESIGNING TRUSTEE**

By_____

Its_____


By_____

Its_____


**LAW DEBENTURE TRUST COMPANY OF NEW YORK,
AS SUCCESSOR TRUSTEE**

By _____

Its _Senior  Vice  President_____

5

LD_FEES00000370

**Anitra R. Fletcher**

| | |
|---|---|
| From: | Nii-Amar Amamoo |
| Sent: | Monday, December 14, 2009 1:46 PM |
| To: | Anitra R. Lawrence |
| Subject: | FW: Tribune |

Nii-Amar Amamoo
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1933
Fax (212) 500-3598
NAmamoo@kasowitz.com

-----Original Message-----
From: Andrew K. Glenn
Sent: Monday, December 14, 2009 12:53 PM
To: Nii-Amar Amamoo
Subject: FW: Tribune

Andrew K. Glenn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1747
Fax (212) 835-5047
AGlenn@kasowitz.com

-----Original Message-----
From: Andrew K. Glenn
Sent: Friday, May 29, 2009 4:05 PM
To: David S. Rosner
Subject: Fw: Tribune



EXHIBIT

Heaney 4
2/8/10

----- Original Message -----
From: Scantling, James <jScantling@McCarter.com>
To: David S. Rosner
Cc: james.heaney@lawdeb.com <james.heaney@lawdeb.com>; Andrew K. Glenn; Michael D.
Rosenbloom; Stan Burg <stan.burg@db.com>; Rodney Gaughan <rodney.gaughan@db.com>; Adler,
David <dadler@mccarter.com>
Sent: Fri May 29 15:59:51 2009
Subject: RE: Tribune

I've spoken with Bryan Krakauer, who confirmed that Tribune will cooperate with
Centerbridge to cause Law Debenture to succeed DBTCA as trustee for the 7-1/4% Debentures

1

due 2096, but not with respect to the 6.61% Debentures due 2027. Since it is DBTCA's intention to resign under both series, Tribune will exercise its rights under the Indenture to appoint a different trustee to succeed DBTCA as trustee for the latter series. This situation will then require a supplemental indenture as per the Indenture. As I read the second paragraph of Section 611 of the Indenture, the supplemental indenture is intended to replace the tripartite agreement (which is the document referred to in the first paragraph of that section) in a case where there are multiple trustees. That section contains specific requirements for the contents of the supplemental indenture. Pursuant to Section 610, the resignation of DBTCA will not be effective until the supplemental indenture is entered into. Perhaps it would be advantageous for Messrs. Rosner and Krakauer and I to discuss this process.

    -----Original Message-----
    From: David S. Rosner [mailto:DRosner@kasowitz.com]
    Sent: Thursday, May 28, 2009 1:26 PM
    To: Adler, David
    Cc: james.heaney@lawdeb.com; Andrew K. Glenn; Michael D. Rosenbloom; Scantling,
James
    Subject: RE: Tribune


    I don't think we have a choice because we don't have a majority to direct under the other series and Tribune is playing games. I posited that to Krakauer the other day (seems like an eternity) and that's when he told me that DB would stay on for the other series. If DB has taken the decision to resign from the Indenture (both series), then I would like to see Tribune's position on appointing a second trustee for the other series and then call Krakauer. Can you give me a call this afternoon, 212-506-1726, when you have time.


    David S. Rosner
    Kasowitz, Benson, Torres & Friedman LLP
    1633 Broadway
    New York, New York 10019
    Tel. (212) 506-1726
    Fax (212) 835-5026
    DRosner@kasowitz.com


    -----Original Message-----

    From: Adler, David [mailto:DAdler@McCarter.com]
    Sent: Thursday, May 28, 2009 1:21 PM
    To: David S. Rosner
    Cc: james.heaney@lawdeb.com; Andrew K. Glenn; Michael D. Rosenbloom;
Scantling, James
    Subject: Re: Tribune


    David,

    I am out today and I am copying jim on this email. Do I understand that law debenture is comfortable just being trustee under one of the series? In other words, with DBTCA resigning under the indenture, and Tribune not agreeing to accept Law Debenture as Trustee for both issues under the 1996 indenture, there could be another trustee selected by Tribune. Is that acceptable to you and your client?


    ----- Original Message -----
    From: David S. Rosner <DRosner@kasowitz.com>

2

To: Adler, David
Cc: james.heaney@lawdeb.com <james.heaney@lawdeb.com>; Andrew K. Glenn
<AGlenn@kasowitz.com>; Michael D. Rosenbloom <MRosenbloom@kasowitz.com>
Sent: Thu May 28 12:44:56 2009
Subject: Tribune

David.

     I just left you a message.  We are very frustrated that we cannot effectuate
the ministerial task of substituting Law Debenture even on the one series as the Indenture
specifically allows and as has been directed.  Do you think that you and your client can
intervene here so that we may get this done.  There are a number of other matters I would
like to discuss with you, but I would have thought this gating item would be finished
awhile ago.

     David


     David S. Rosner
     Kasowitz, Benson, Torres & Friedman LLP
     1633 Broadway
     New York, New York 10019
     Tel. (212) 506-1726
     Fax (212) 835-5026
     DRosner@kasowitz.com



     This e-mail and any files transmitted with it are confidential and may be
subject to the attorney-client privilege. Use or disclosure of this e-mail or any such
files by anyone other than a designated addressee is unauthorized. If you are not an
intended recipient, please notify the sender by e-mail and delete this e-mail without
making a copy.




     This email message from the law firm of McCarter & English, LLP is for the
sole use of the intended recipient(s) and may contain confidential and privileged
information. Any unauthorized review, use, disclosure or distribution is prohibited. If
you are not the intended recipient, please contact the sender by reply email and destroy
all copies of the original message.


This email message from the law firm of McCarter & English, LLP is for the sole use of the
intended recipient(s) and may contain confidential and privileged information. Any
unauthorized review, use, disclosure or distribution is prohibited. If you are not the
intended recipient, please contact the sender by reply email and destroy all copies of the
original message.

LD_FEES00000311

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE CORPORATION, et al., | ) | Case No. 08-13141 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date September 24, 2009 @ 10:00 am |
| | ) | Response Date: September 17, 2009 |
| | ) | Ref No. 2031, 2032 and 2033 |

**JOINDER OF DEUTSCHE BANK TRUST COMPANY OF AMERICAS,
INDENTURE TRUSTEE UNDER THE 1992 INDENTURE, THE 1996 INDENTURE
AND THE 1997 INDENTURE TO THE MOTION OF LAW DEBENTURE TRUST
COMPANY OF NEW YORK FOR LEAVE TO CONDUCT DISCOVERY PURSUANT
TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE OF
TRIBUNE COMPANY, ITS AFFILIATES, AND CERTAIN THIRD PARTIES, OR
ALTERNATIVELY, FOR THE APPOINTMENT OF AN EXAMINER**

Deutsche Bank Trust Company Americas ("DBTCA" or the "Indenture Trustee"),

successor trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture (as herein

defined) hereby joins in the motion filed by Law Debenture Trust Company ("Law Debenture")

pursuant to sections 105(a), 343, 1109(b) , title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing and directing

creditor discovery relating to Tribune's leveraged buyout consummated in 2007, or alternatively,

the appointment of an Examiner (the "Motion"). In support of this joinder, DBTCA respectfully

represents as follows:

**I.**

**BACKGROUND**

A.    **The Noteholders' Claims**

1.    DBTCA presently serves as the Indenture Trustee under the following indentures

issued by The Tribune Company ("Tribune"):

ME1 9015225v.1



LD_FEES00000371

### i.    The 1992 Indenture

2.    DBTCA is the Indenture Trustee under that certain indenture dated as of March 1, 1992, as amended and supplemented (the "1992 Indenture"), by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee.  DBTCA filed a proof of claim for claims under the 1992 Indenture in the amount of $120,500.

### ii.    The 1995 Indenture

3.    DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1995 Indenture"), by and between Tribune  and First Interstate Bank of California, as the predecessor indenture trustee.  Under the 1995 Indenture, two series of notes were issued: (i) 7.25% Debentures due March 1, 2013 ; and (ii) 7.50% Debentures due July 1, 2023.  DBTCA filed a proof of claim for claims under the 1995 Indenture in the amount of $185,703,520.04.

### The 1997 Indenture

4.    DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1997 Indenture"), by and between Tribune  and Bank of Montreal Trust Company.  Under the 1997 Indenture, three series of notes were issued: (i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008.  DBTCA filed a proof of claim for claims under the 1997 Indenture in the amount of $862,246,024.00.

5.    The collective amount of claims under the three Indentures is approximately $1.050 billion.

### B.    The LBO Transaction

ME1 9015225v.1

LD_FEES00000372

6.    As noted in Law Debenture's motion, as a result of the LBO Transaction[1], Tribune was saddled with debt of approximately $11 billion.[2]  Approximately $8.3 billion went to cash out shareholders.  In connection with the LBO, the Credit Agreement Lenders required guarantees from certain "material" subsidiaries (the "Guarantor Subsidiaries").  These guarantees were all upstream.[3].

C.    **The Bankruptcy Cases**

7.    On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  Since that time, the Debtors have continued to operate their business and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

8.    Not all of the Tribune entities filed for Chapter 11 relief.  Specifically, four Guarantor Subsidiaries did not file for bankruptcy protection: (i) Tribune Interactive, Inc.; (ii) Tribune National Marketing Company; (iii) Chicago National League Ball Club LLC; and (iv) Tribune (FN) Cable Ventures (the "Non-Debtor Guarantors").

9.    Prior to the Petition Date, the Credit Agreement Lenders formed a steering committee (the "Steering Committee").  Since the Petition Date, the Steering Committee has retained a number of professionals including FTI Consulting, Inc., The Blackstone Group, Kramer, Levin and Davis Polk & Wardwell (the "Steering Group Professionals").  Upon information and belief, the Non-Debtor Guarantors pay the fees and expenses of the Steering

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in Law Debenture's Motion.
[2] For the sake of brevity, DBTCA hereby incorporates the factual recitation of Law Debenture set forth in paragraphs 1-18 of its Motion.
[3] There is little doubt that these upstream guarantees lacked anything close to reasonably equivalent value. . See Mellon Bank, N.A. v. Metro Communications (In re Metro Communications),945 F.2d 635 (3d Cir. 1991) cert denied, 503 U.S. 937 (1992).

MEI 9015225v.1

LD_FEES00000373

Group Professionals on a monthly basis. To date, upon information and belief, the fees paid to the Steering Group Professionals are believed to be in excess of $10 million.

       10.    On December 18, 2008, the United States Trustee for the District of Delaware appointed a committee of unsecured creditors (the "Committee"). The Committee consists of nine members, including JP Morgan Chase (who also is a member of the Steering Committee). DBTCA is a member of the Committee.

**II.**

**JOINDER**

       11.    DBTCA joins in and supports the relief requested by Law Debenture in the Motion. The bankruptcy process should encourage transparency . To that end, Law Debenture should be authorized to conduct and obtain the discovery it seeks. Moreover, while the avoidance claims may be vested in the estate, the issues on which Law Debenture seeks Rule 2004 discovery are intercreditor in nature (i.e. whether the claims against the Credit Agreement Lenders are avoidable). Resolution of the issues with the Credit Agreement Lenders may not impact the total value that will be distributed to the unsecured creditors, only the amounts to be distributed among the estates' various creditors. As such, the various constituencies which are likely to be most affected by the resolution of these issues should be permitted to be involved in or lead the process.

       12.    In addition, because the Steering Group is essentially being treated by the Debtors as an official committee (with the fees and expenses of its professionals being paid by the Non-Debtor Guarantors), DBTCA believes that it is appropriate for the United States Trustee to consider appointing an official committee of bondholders to counterbalance the Steering Group and the swarm of professionals who are representing its "parochial interests" in this case. See In

4

LD_FEES00000374

re Adelphia Communications Co., 336 B.R. 610, 620 (Bankr. S.D.N.Y. 2006), aff'd 342 B.R.

122 ("Where interdebtor issues exist and are material, they cannot, of course, be swept under the

rug. Even though consensual resolution is the normal (and preferred) practice, some means,

consistent with fairness, due process, and appropriate advocacy, must be formulated to resolve

them if those issues cannot be settled."). In this case, DBTCA believes that consistent with

fairness, an appropriate "means" should be the appointment of an official bondholders'

committee.

## CONCLUSION

WHEREFORE, DBTCA respectfully requests that the Court grant the relief requested in

the Motion of Law Debenture along with such other and further relief as is just and proper.

Dated: September 17, 2009                    **MCCARTER & ENGLISH LLP**
      Wilmington, DE

            By:   /s/ Katharine L. Mayer
                   Katharine L. Mayer (DE# 3758)
                   Renaissance Centre
                   405 N. King Street, 8th Floor
                   Wilmington, DE 19801
                   (302) 984-6300
                   (302) 984-6399 Facsimile
                   (302) 984-2494 Direct Fax
                   kmayer@mccarter.com

                   -And-

                   David J. Adler, Esq. (DA0048)
                   McCARTER & ENGLISH, LLP
                   245 Park Avenue
                   27th Floor
                   New York, New York  10167
                   (212) 609-6800 - Telephone
                   (212) 609-6921 - Facsimile

                   *Counsel for Deutsche Bank Trust Company*
                   *Americas.*

ME1 9015225v.1

LD_FEES00000375

## CERTIFICATE OF SERVICE

I, Katharine L. Mayer, hereby certify that on the 17th day of September, 2009, I caused a true and correct copy of the foregoing *Joinder of Deutsche Bank Trust Company Americas, successor trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture to the Motion of Law Debenture Trust Company pursuant to sections 105(a), 343, 1109(b) , title 11 of the United States Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing and Directing Creditor Discovery Relating to Tribune's Leveraged Buyout Consummated in 2007, or Alternatively, the Appointment of an Examiner* to be served upon the attached service list by U.S. Mail, postage pre-paid, or in the manner so indicated.

/s/ Katharine L. Mayer
Katharine L. Mayer (#3758)

**HAND DELIVERY**
Garvan F. MCDaniel
Bifferato Gentilotti LLC
800 N. King Street, Plaza Level
Wilmington, DE 19801

**HAND DELIVERY**
Mark D. Collins
Christopher M. Samis
Richards, Layton & Finger, P.A.
920 N. King Street
One Rodney Square
Wilmington, DE 19801

**HAND DELIVERY**
Adam G. Landis
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE 19801

**HAND DELIVERY**
Daniel K. Astin
Ciardi Ciardi & Astin
919 Market Street, 7th Floor
Wilmington, DE 19801

**HAND DELIVERY**
United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

David Rosner
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Howard Seife
David LeMay
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

Leonard S. Shifflett
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654

Karen E. Wagner
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10022

ME1 9015225v.1

LD_FEES00000376

| From: | Krakauer, Bryan <bkrakauer@sidley.com> |
|---|---|
| Sent: | Wednesday, September 2, 2009 2:31 PM (GMT) |
| To: | David S. Rosner <DRosner@kasowitz.com> |
| Subject: | RE: Tribune |

David:

No interest payments have been made to the pre-petition lenders since the Tribune entities filed chapter 11. Non-debtor guarantors have been paying fees of JPM and Steering Committee ("SC") professionals, after demand was made for such payments pursuant to the guarantees. The fee payments commenced only after prior disclosure to both the UCC and the UST, and the Debtors confirmed neither objected to the payments. The UCC engaged in rather prolonged negotiation with the SC regarding these payments prior to confirming they would not object. I don't know off hand which of the non-debtors have been remitting the payments — several have funds.

Like all our other communications, I would request confidentiality, although I have no problem with your discussing this with the UCC, JPM and the SC, the UST, and Centerbridge (subject to Centerbridge's CA with the Tribune).

Bryan

> **From:** David S. Rosner [mailto:DRosner@kasowitz.com]
> **Sent:** Wednesday, September 02, 2009 6:00 AM
> **To:** Krakauer, Bryan
> **Subject:** Tribune
>
> Hi Brian.
>
> Can you pls confirm for me that the pre-petition lenders (JPM, ML, others (?)) are current on interest and fees, paid for by an entity not in b/r and which entity it is?  Thanks.
>
> Best,
>
>
> David S. Rosner
> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Tel. (212) 506-1726
> Fax (212) 835-5026
> DRosner@kasowitz.com
>
> This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

------------------------------------------------------------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*****************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*****************************************************************



TRB_LD000953
CONFIDENTIAL