Schedule II

Steering Committee
Document comparison done by DeltaView on Tuesday, January 20, 2009 10:33:34 AM

**Input:**

| Document 1 | interwovenSite://LALDMS01/LA1/1374946/1 |
|---|---|
| Document 2 | interwovenSite://LALDMS01/LA1/1374946/5 |
| Rendering set | Standard |

**Legend:**

| Insertion |  |
|---|---|
| Deletion |  |
| Moved from |  |
| Moved to |  |
| Style change |  |
| Format change |  |
| Moved deletion |  |
| Inserted cell |  |
| Deleted cell |  |
| Moved cell |  |
| Split/Merged cell |  |
| Padding cell |  |

**Statistics:**

|  | Count |
|---|---|
| Insertions | 86 |
| Deletions | 77 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 171 |

TRB_LD000069
CONFIDENTIAL

**From:**  Larsen, Nils [nlarsen@tribune.com]
**Sent:**  Thursday, January 22, 2009 4:50 PM
**To:**  MIRIAM.KULNIS@chase.com
**Cc:**  Bigelow, Chandler; Nils Larsen
**Subject:**  RE: Forbearance Issues

Miriam:

I just heard from Moelis with regard to the UCC's decision to allow the process on the Cubs to move forward.  We understand you will send us a letter reserving rights and are interested in continued exchange of information.  I appreciate your confidence and support in this regard.  You have my commitment to work closely with the professionals and others through the process.

I understand the concern surrounding the inclusion of the Debtors.  We can discuss further in the morning.  The intent of our mark-up is not to proffer something the court and the UCC are likely to reject.  We are not being cute on the fee question.

Thanks for the heads-up and we will be prepared to address tomorrow morning.

Nils

**From:**  MIRIAM.KULNIS@chase.com [mailto:MIRIAM.KULNIS@chase.com]
**Sent:**  Thursday, January 22, 2009 4:42 PM
**To:**  Larsen, Nils
**Cc:**  Bigelow, Chandler; Nils Larsen
**Subject:**  RE: Forbearance Issues

well I can tell you that one of the big issues is the desire to make the Debtors parties to the agmt. I think the SC feels that it's best if only non-debtors are parties and it would be more likely to get approved by the court if the debtors were not a party. We are worried that if the debtors are parties the UCC may object to it and it would get denied. I will be frank (as I always am with you) that some are wondering if the company really wants the court to reject this so that the company has an excuse not to pay the fees. So that's a big heads up and you should think about that in advance of tomorrow's call.

Miriam T. Kulnis
Executive Director
JPMorgan Chase Bank
277 Park Avenue - 8th Floor
New York, NY 10172
Phone (212)622-4526
Fax (212) 622-4557

"Larsen, Nils" <nlarsen@tribune.com>

01/22/2009 05:02 PM

To <MIRIAM.KULNIS@chase.com>, "Nils Larsen" <nlarsen@egii.com>, "Bigelow, Chandler"
 <CBigelow@tribune.com>

cc

Subject RE: Time change

Miriam:

That was my understanding on time throughout.  We look forward to the

10/29/2009



EXHIBIT

Kulnis 6

2/5/10

discussion.

I believe that Bryan will be reaching out to DPW to ascertain a sense for the open items to help make the call more productive tomorrow if possible.

Nils

-----Original Message-----
From: MIRIAM.KULNIS@chase.com [mailto:MIRIAM.KULNIS@chase.com]
Sent: Thursday, January 22, 2009 11:49 AM
To: Nils Larsen; Bigelow, Chandler
Subject: Time change

Sorry w regard to my prior email we are requesting a call at 10:30 AM eastern.

----------------------------------------
This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use.
If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

10/29/2009

TRB_LD000074
CONFIDENTIAL

**From:** tribuneco.dpw-bounces@dpw.com on behalf of Smit, Daniel [daniel.smit@dpw.com]
**Sent:** Friday, January 30, 2009 12:08 PM
**To:** 'Krakauer, Bryan'
**Cc:** Grant, Jacqueline M.; Lantry,Kevin T.; 'Sharret,Jennifer'; Kolevzon,Peter S.;
'kevin.c.kelley@jpmorgan.com'; Mannal, Douglas; MIRIAM.KULNIS@chase.com; tribuneco.dpw;
Mayer,Thomas Moers; Kansa, Ken
**Subject:** Tribune Payment Letters

**Attachments:** Agent.Payment.Letter.doc; Steering.Lender.Payment.Letter.doc;
Payment.Blockage.Notice.doc
Bryan,

As discussed, we attach draft payment letters and a draft payment blockage notice for your review and
comments.  Please note that these remain subject to comments from JPM and other Steering Committee
members.

Further, obviously the entire process remains subject to discussions about this approach with the UCC.

Regards

Danie Smit
Davis Polk & Wardwell
450 Lexington Ave New York, NY 10017
Tel. (212) 450-4947 / Fax (212) 450-3947
e-mail: daniel.smit@dpw.com

 Agent.Payment.Letter.doc

 Payment.Blockage.Notice.doc

 Steering.Lender.Payment.Letter.doc



EXHIBIT
Kulnis 7
CD 2/5/10
PENGAD 800-631-6989

Confidential

JPM2_00000250

[JPM LETTERHEAD]

January [ ], 2009

Non-Debtor Guarantors listed on Schedule I hereto
435 North Michigan Avenue
Chicago, Illinois 60603

        Re:    Costs and Expenses of JPMorgan Chase Bank N.A., as Agent

Ladies and Gentlemen:

        Reference is hereby made to (i) the Credit Agreement, dated as of May 17, 2007, among Tribune Company (the "**Borrower**"), the lenders from time to time party thereto (the "**Lenders**"), the undersigned, as Administrative Agent (the "**Agent**"), and certain other parties thereto (as amended, restated, modified and/or supplemented from time to time, the "**Credit Agreement**") and (ii) the Guarantee Agreement, dated as of May 17, 2007 (the "**Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Agent, as Administrative Agent for the Lenders.

        As you are aware, the Agent has incurred and continues to incur out-of-pocket costs and expenses that are reimbursable pursuant to Section 8.04 of the Credit Agreement (including, without limitation, the fees and expenses of Davis Polk & Wardwell, special counsel to the Agent, Richards, Layton & Finger, P.A., Delaware counsel to the Agent, FTI Consulting, Inc., financial advisor to the Agent, and the Blackstone Group, investment banking advisor to the Agent), (such costs and expenses, collectively, the "**Costs and Expenses**"), which constitute Obligations under the Guarantee.

        Pursuant to our recent discussions, the Agent hereby requests that the non-debtor Subsidiaries of the Borrower party to the Guarantee and listed on Schedule I hereto pay to the Agent pursuant to the guarantee (i) the Agent's reasonable Costs and Expenses within 10 days after receipt of any invoice therefor and (ii) promptly upon receipt of this letter, $7.5 million for the purpose of advances by the Agent to cover any such Costs and Expenses not paid pursuant to clause (i) of this paragraph.

Very truly yours,

JPMORGAN CHASE BANK, N.A., as

Confidential                                                                                                    JPM2_00000251

Agent

By: _____
      Name:
      Title:

(NY) 27011/161/MISC09/Agent.Payment.Letter.doc            01/27/09 12:53 PM

Confidential

JPM2_00000252

**Schedule I**

Non-Debtor Guarantors

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

3

Confidential                                                                                                    JPM2_00000253

<u>**PAYMENT BLOCKAGE NOTICE**</u>

January [  ], 2009

Merrill Lynch Capital Corporation, as Agent
Agency Services
600 E. Las Colinas Blvd., Suite 1300
Irving, Texas 75039
Telecopy No. (972) 401-8555
Email: rachelsuiter@loan-agents.com

Ladies and Gentlemen:

We, as Administrative Agent (the "**Senior Secured Agent**") for the lenders (the "**Senior Secured Lenders**") from time to time party to the Credit Agreement, dated as of May 17, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "**Senior Secured Agreement**"), among Tribune Company, as Borrower (the "**Borrower**"), the Senior Secured Lenders, the undersigned, as the Senior Secured Agent, and certain other parties thereto refer to (i) the Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "**Bridge Agreement**"), among the Borrower, certain lenders (the "**Bridge Lenders**") from time to time party thereto, Merrill Lynch Capital Corporation, as Administrative Agent for the Bridge Lenders (the "**Bridge Agent**"), and certain other parties thereto and (ii) the Guarantee Agreement, dated as of December 20, 2007 (the "**Bridge Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Bridge Agent, as Administrative Agent for the Bridge Lenders. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Bridge Agreement and the Bridge Guarantee.

Pursuant to Section 3 of the Bridge Guarantee, we hereby notify you that a payment default has occurred under Section 6.01(a) of the Senior Secured Agreement (the "**Payment Default**").

This notice constitutes a Payment Blockage Notice for purposes of the Bridge Guarantee, and, as such, no Guarantor may make any payment or distribution of any kind or character with respect to any Guaranteed Obligations or the Advances under the Bridge Agreement or acquire any such Advances for cash or property or otherwise until the date on which the Payment Default under the Senior Secured Agreement is cured or waived.

Very truly yours,

Confidential                                                                                                    JPM2_00000254

JPMORGAN CHASE BANK, N.A., as
Agent

By:  _____
        Name:
        Title:


cc:    Cahill Gordon & Reindel LLP,
       80 Pine Street
       New York, New York 10005
       Telecopy No. (212) 269-5420
       Attention: Jonathan A. Schaffzin and William J. Miller
       Email: jschaffzin@cahill.com
              wmiller@cahill.com

cc:    Kaye Scholer LLP,
       425 Park Avenue
       New York, New York 10022
       Tel: (212) 836-8000
       Fax: (212) 836-8689
       Attention: Madlyn Primoff and Margot B. Schonholtz
       Email: mprimoff@kayescholer.com
              mschonholtz@kayescholer.com

(NY) 27011/161/MISC09/Payment.Blockage.Notice.doc       01/27/09 12:50 PM

Confidential                                                                                                    JPM2_00000255

January [ ], 2009

Non-Debtor Guarantors listed on Schedule I hereto
435 North Michigan Avenue
Chicago, Illinois 60603

Re:    Costs and Expenses of the Steering Lenders

Ladies and Gentlemen:

Reference is hereby made to (i) the Credit Agreement, dated as of May 17, 2007, among Tribune Company (the "**Borrower**"), the lenders from time to time party thereto, including the undersigned, (the "**Lenders**"), JPMorgan Chase Bank, N.A., as Administrative Agent (the "**Agent**"), and certain other parties thereto (as amended, restated, modified and/or supplemented from time to time, the "**Credit Agreement**") and (ii) the Guarantee Agreement, dated as of May 17, 2007 (the "**Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Agent, as Administrative Agent for the Lenders. Capitalized terms used not defined in this letter shall have the meanings ascribed to such terms in the Credit Agreement.

Due to the commencement of cases under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware by the Borrower and certain of its Subsidiaries, the Borrower and the Agent concluded it was appropriate to designate certain Lenders (such Lenders, the "**Steering Lenders**") representative of the composition of the Lender group as a whole to form a "steering committee". The Agent and the Steering Lenders are to act as a focal point for regular communications and negotiations among the Borrower, its related debtor Subsidiaries and the Lenders.

As you are aware, certain Lenders have incurred and continue to incur out-of-pocket costs and expenses that are reimbursable pursuant to Section 8.04 of the Credit Agreement, including, without limitation, (i) the fees and expenses of Kramer Levin Naftalis & Frankel LLP ("**KLNF**"), which has been engaged as counsel to both the Steering Lenders listed on Schedule II hereto and certain other Lenders listed on Schedule III hereto (collectively, the "**Ad Hoc Lenders**"), who collectively hold in excess of $[ ] of claims under the Credit Agreement, and (ii) out-of-pocket expenses of each of the Steering Lenders incurred in connection with their participation as a Steering Lender. All of the foregoing costs and expenses are referred to collectively as the "**Costs and Expenses**".

Pursuant to our recent discussions, the Steering Lenders hereby request that the non-debtor Subsidiaries of the Borrower party to the Guarantee and listed on Schedule I hereto pay to certain of the Lenders pursuant to the Guarantee (i) the Steering Lenders' and Ad Hoc Lenders' reasonable Costs and Expenses within 10 days after their receipt of any invoice therefor and (ii) promptly upon

Confidential

JPM2_00000256

receipt of this letter, $1 million for the purpose of advances by the Steering Lenders and Ad Hoc Lenders to cover any such Costs and Expenses of the Steering Lenders and Ad Hoc Lenders not paid pursuant to clause (i) of this paragraph.

Very truly yours,

[ANGELO GORDON]

By: _____
Name:
Title:


BANK OF AMERICA, N.A.

By: _____
Name:
Title:


[DAVIDSON KEMPNER]

By: _____
Name:
Title:


[EATON VANCE]

By: _____
Name:
Title:


[KKR]

By: _____
Name:
Title:


2

01/27/09 5:41 PM

Confidential

JPM2_00000257

[OAKTREE]

By: _____
      Name:
      Title:

3

01/27/09 5:41 PM

Confidential

JPM2_00000258

<u>Schedule I</u>

<u>Non-Debtor Guarantors</u>

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

4

01/27/09 5:41 PM

Confidential

JPM2_00000259

<u>Schedule **II**</u>

<u>Steering Lenders that have engaged Kramer Levin Naftalis & Frankel LLP as
counsel</u>

[Angelo Gordon]
[Davidson Kempner]
[KKR]
[Oaktree]

(NY) 27011/161/MISC09/Steering.Lender.Payment.Letter.doc   01/27/09 5:41 PM

Confidential   JPM2_00000260

**To:**    'miriam.kulnis@chase.com'[miriam.kulnis@chase.com]; Bernstein, Donald
S.[donald.bernstein@dpw.com]; 'Kevin.C.Kelley@chase.com'[Kevin.C.Kelley@chase.com]
**Subject:**    Re: Tribune
**Sent:**    Thur 2/5/2009 12:16:58 AM
**From:**    Schaible, Damian S.

---

Redacted

---

**From:** MIRIAM.KULNIS@chase.com
**To:** Schaible, Damian S.; Bernstein, Donald S.; Kevin.C.Kelley@chase.com
**Sent:** Wed Feb 04 19:13:07 2009
**Subject:** Fw: Tribune

---

Redacted

---

----- Original Message -----
**From:** "Jay Teitelbaum" [jteitelbaum@tblawllp.com]
**Sent:** 02/04/2009 04:04 PM EST
**To:** "Douglas E. Deutsch" <DDeutsch@chadbourne.com>
**Cc:** "William A. Niese" <niesesr@cox.net>; <jteitelbaum@tblawllp.com>; Miriam T. Kulnis
**Subject:** Tribune

Doug following up on our conversation and my conversation with Miriam. I understand that the
JPM as agent has a contractual claim to have its professional fees paid by the non-debtors. As
stated in my prior email and our conversation, I am concerned about how far the door gets
opened if this is permitted and that it appears to be somewhat insensitive to other Committee
members representing large groups who are footing their own bills. However, after our
discussions, I agree that this is not an issue to contest. JPM has explained that the payment of
these fees is important to its group and JPM's continued efforts to manage its group of over 120
members. I also agree that if the legal right exists, we do not need the sideshow of litigation over
the issue.

Thus, Mr. Niese will not object, based upon: JPM's agreement to provide you with additional
detail concerning the fees; the assumption that the current payment from non debtors is required
pursuant to the loan documents (subject of course to the ultimate determination as to the validity,
amount, extent and priority of claims); and the assumption that this is for JPM as Agent and does



**EXHIBIT**
Kulnis 8
PENGAD 800-631-6989
2/5/10

JPM2_00000057

not open the door for other Committee members.

With respect to the request by Clearbridge to have a seat on the Committee, Mr. Niese would object. There are already two bondholder representatives on the Committee (Wilmington and DB). Clearbridge did not seek its appointment at the formation meeting. We already have a diverse and substantial group that is trying to work together toward a common end.

Jay Teitelbaum, Esq.
Teitelbaum & Baskin, LLP
Counselors at Law
3 Barker Avenue
Third Floor
White Plains, New York 10601
Tel.: White Plains: (914) 437-7670
     N. Y. City:   (646) 233-3013
Fax. (914) 437-7672
jteitelbaum@tblawllp.com
www.tblawllp.com

Service of all papers to White Plains, New York. Fax and E-Mail Service Accepted

This electronic mail message contains information that (a) is or may be LEGALLY PRIVILEGED, CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the Addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact us immediately and take the steps necessary to delete the message completely from your computer system.  Thank you.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy

the material in its entirety, whether in electronic or hard copy format. Thank you.

Confidential

JPM2_00000059

| | |
|---|---|
| **From:** | Smit, Daniel |
| **Sent:** | Friday, February 06, 2009 12:26 PM |
| **To:** | 'Krakauer, Bryan' |
| **Cc:** | Bernstein, Donald S.; Eldersveld, David; Schaible, Damian S.; Lantry, Kevin T. |
| **Subject:** | RE: |

**Attachments:**    Blackstone Engagement Letter.doc



Blackstone
ngagement Letter.d..

Bryan,

I attach a copy of a drafty engagement letter for Blackstone.  Please let us know of any
comments on it.

Please note that this remains subject to comments from the other parties to it and the
rest of the Steering Committee, but that we wanted you to have it to look at in the mean
time.

Regards

Danie Smit
Davis Polk & Wardwell
450 Lexington Ave New York, NY 10017
Tel. (212) 450-4947 / Fax (212) 450-3947
e-mail: daniel.smit@dpw.com
> -----Original Message-----
> From: Krakauer, Bryan [mailto:bkrakauer@sidley.com]
> Sent: Thursday, February 05, 2009 4:16 PM
> To: Schaible, Damian S.
> Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> Subject: RE:
>
> Damian:
>
> The Tribune is ok with Blackstone having access to the data and attending
> meetings.
>
> We would want the UCC apprised of the Blackstone engagement terms prior to
> the engagement letter being executed.
>
> - Bryan
>
>
>
>
>
> -----Original Message-----
> From: Schaible, Damian S. [mailto:damian.schaible@dpw.com]
> Sent: Thursday, February 05, 2009 2:18 PM
> To: Krakauer, Bryan
> Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> Subject: RE:
>
> Bryan, Just to confirm, we are hoping to have Blackstone officially engaged by the
> time of next week's meeting, but in any event as we work toward it, Blackstone
> can have access to the conversations taking place among Moelis and FTI and the
> company on the Cubs transactions and receive from FTI the materials in

1



EXHIBIT

Kubis 9

2/5/10

Confidential

JPM2_00001272

> connection therewith, right?  Also, can we get Blackstone access to the Cubs sale
> data room?  (We will ask FTI to effectuate, but first wanted to confirm that it is
> okay).
>
> I understand from your exchanges with Don that the non-guarantors would
> countersign the Blackstone engagement letter.  We expect to have a proposed
> letter to you in the next couple of days.
>
> Best,
> Damian
>
> _____
>
> Damian S. Schaible
> Davis Polk & Wardwell
> 450 Lexington Avenue
> New York, New York 10017
> Phone: 212 450-4580
> Fax: 212 450-3580
> email: damian.schaible@dpw.com
> > -----Original Message-----
> > From: Krakauer, Bryan [mailto:bkrakauer@sidley.com]
> > Sent: Thursday, February 05, 2009 10:30 AM
> > To: Schaible, Damian S.
> > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > Subject: RE:
> >
> > Damian:
> >
> > A meeting with the Steering Committee next Thursday in NY at 9 am works. We
> > would have the Tribune, Sidley, David Kurtz from Lazard and also Blake Ruben
> from
> > MWE present.
> >
> > Bryan
> >
> >
> > -----Original Message-----
> > From: Schaible, Damian S. [mailto:damian.schaible@dpw.com]
> > Sent: Wednesday, February 04, 2009 2:45 PM
> > To: Krakauer, Bryan; Lantry, Kevin T.
> > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > Subject: RE:
> >
> > Great, I will get an email from them and effectuate.
> >
> > Where are we on setting up a company/advisors meeting with the Steering
> > Committee Sub-committee for sometime next week?
> >
> > Thanks,
> >
> > - Damian
> >
> > _____
> >
> > Damian S. Schaible
> > Davis Polk & Wardwell
> > 450 Lexington Avenue
> > New York, New York 10017
> > Phone: 212 450-4580
> > Fax: 212 450-3580
> > email: damian.schaible@dpw.com
> >
> > > -----Original Message-----
> > > From: Krakauer, Bryan [mailto:bkrakauer@sidley.com]

2

Confidential

```
> > > Sent: Wednesday, February 04, 2009 3:38 PM
> > > To: Schaible, Damian S.; Lantry, Kevin T.
> > > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > > Subject: RE:
> > >
> > > I thought your initial email suggested Blackstone would sign a CA with
> substantially
> > > the provisions of the CA we have been negotiating, and my email below was
> meant
> > to
> > > cover additional pts Blackstone would agree to because of their special
> circumstance.
> > > If you want to keep this simple, you can just have Blackstone agree "they will
> keep
> > > the information confidential" and then also agree to the points below.
> > >
> > >
> > > -----Original Message-----
> > > From: Schaible, Damian S. [mailto:damian.schaible@dpw.com]
> > > Sent: Wednesday, February 04, 2009 2:32 PM
> > > To: Krakauer, Bryan; Lantry, Kevin T.
> > > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > > Subject: RE:
> > >
> > > Bryan, I just tried you to discuss/understand.  What do you mean a
> "supplement to
> > the
> > > signed CA"?  They have not yet signed anything, although we are close to
> finalization
> > > of an engagement letter with them that of course contains the usual
> confidentiality
> > > provisions that you'd expect, and they -- like Davis Polk and Kramer Levin and
> > > Chadbourne and the other FAs on the UCC side -- are professionals and so
> are
> > > understood to maintain confidentiality as a professional matter.
> > >
> > > Is it ok, then, for me to get the email from them referenced below and then
> invite
> > > them to the meeting that is first thing tomorrow morning?
> > >
> > > Please advise.  Thanks,
> > > Damian
> > >
> > > _____
> > >
> > > Damian S. Schaible
> > > Davis Polk & Wardwell
> > > 450 Lexington Avenue
> > > New York, New York 10017
> > > Phone: 212 450-4580
> > > Fax: 212 450-3580
> > > email: damian.schaible@dpw.com
> > >
> > > > -----Original Message-----
> > > > From: Krakauer, Bryan [mailto:bkrakauer@sidley.com]
> > > > Sent: Wednesday, February 04, 2009 3:28 PM
> > > > To: Schaible, Damian S.; Lantry, Kevin T.
> > > > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > > > Subject: RE:
> > > >
> > > > An email should be ok to address the points below as a supplement to the
> signed
> > > CA.
> > > >
> > > >
```

3

Confidential

```
> > > > -----Original Message-----
> > > > From: Schaible, Damian S. [mailto:damian.schaible@dpw.com]
> > > > Sent: Wednesday, February 04, 2009 2:26 PM
> > > > To: Krakauer, Bryan; Lantry, Kevin T.
> > > > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > > > Subject: RE:
> > > >
> > > > Got it.  OK, I assume, for them to just send me and you an email to the
> effect of
> > the
> > > > below for purposes of tomorrow morning's meeting?
> > > >
> > > > Please confirm and we'll coordinate.  We'll also add point (ii) into the
> engagement
> > > > letter we are working with them (the other two points are either already there
> or
> > > moot
> > > > for that purpose).
> > > >
> > > > Best,
> > > > Damian
> > > >
> > > > _____
> > > >
> > > > Damian S. Schaible
> > > > Davis Polk & Wardwell
> > > > 450 Lexington Avenue
> > > > New York, New York 10017
> > > > Phone: 212 450-4580
> > > > Fax: 212 450-3580
> > > > email: damian.schaible@dpw.com
> > > >
> > > > > -----Original Message-----
> > > > > From: Krakauer, Bryan [mailto:bkrakauer@sidley.com]
> > > > > Sent: Wednesday, February 04, 2009 3:23 PM
> > > > > To: Schaible, Damian S.; Lantry, Kevin T.
> > > > > Cc: Bernstein, Donald S.; Smit, Daniel; Eldersveld, David
> > > > > Subject: RE:
> > > > >
> > > > > Damian:
> > > > > The Debtors are ok with Blackstone signing a confidentiality agreement
> and
> > > > reviewing
> > > > > the material provided: (i) Blackstone agrees it will use the material only in
> > > > connection
> > > > > with assistance to the Agent / Steering Committee related to the Tribune
> chapter
> > > 11
> > > > > cases, (ii) Blackstone will wall off Blackstone individuals whom are
> involved in
> > > > > Blackstone's own investments in newspapers and media; and (iii)
> Blackstone
> > > > agrees
> > > > > to promptly return the material, and not retain copies or notes, in the event
> it is
> > not
> > > > > retained by the Agent / Steering Committee.
> > > > > Bryan
> > > > >
> > > > > -----Original Message-----
> > > > > From: Schaible, Damian S. [mailto:damian.schaible@dpw.com]
> > > > > Sent: Wednesday, February 04, 2009 2:17 PM
> > > > > To: Krakauer, Bryan; Lantry, Kevin T.
> > > > > Cc: Bernstein, Donald S.; Smit, Daniel
> > > > > Subject:
```

4

Confidential

JPM2_00001275

```
> > > >
> > > > > Bryan and Kevin - Wanted to check in on permitting blackstone to join our
> tax
> > > > meeting
> > > > > tomorrow morning. Please confirm it's ok so we can invite them. If you
> want us
> > to
> > > > get
> > > > > an email from them agreeing to keep the info confi, we can do it. Please
> > confirm
> > > as
> > > > > soon as possible. Thanks.
> > > > > - Damian
> > > >
> > > >
> > > >
---------------------------------------------------------------------------------------
--
> --------
> > > > > IRS Circular 230 Disclosure: To comply with certain U.S. Treasury
> regulations,
> > > we
> > > > > inform you
> > > > > that, unless expressly stated otherwise, any U.S. federal tax advice
> contained in
> > > this
> > > > > communication, including attachments, was not intended or written to be
> used,
> > and
> > > > > cannot be
> > > > > used, by any taxpayer for the purpose of avoiding any penalties that may
> be
> > > > imposed
> > > > > on such
> > > > > taxpayer by the Internal Revenue Service. In addition, if any such tax
> advice is
> > > > used
> > > > > or referred
> > > > > to by other parties in promoting, marketing or recommending any
> partnership or
> > > > other
> > > > > entity,
> > > > > investment plan or arrangement, then (i) the advice should be construed
> as
> > > written
> > > > in
> > > > > connection
> > > > > with the promotion or marketing by others of the transaction(s) or matter(s)
> > > > addressed
> > > > > in this
> > > > > communication and (ii) the taxpayer should seek advice based on the
> > taxpayer's
> > > > particular
> > > > > circumstances from an independent tax advisor.
> > > >
> > > >
> >
> >
> > ****************************************************************************
> ****
> > > > > ********
> > > > > This e-mail is sent by a law firm and may contain information that is
> privileged
> > or
> > > > > confidential.
```
                                        5

```
> > > > > If you are not the intended recipient, please delete the e-mail and any
> > attachments
> > > > > and notify us
> > > > > immediately.
> > > > >
> > > >
> > >
> >
> ************************************************************************************
> ****
> > > > > ********
```

6

Confidential

JPM2_00001277

*** Slip Sheet ***

Document

February [ ], 2009

Donald S. Bernstein, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Dear Don:

This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Services L.P. ("Blackstone") and Davis Polk & Wardwell ("DPW") regarding the retention of Blackstone by DPW effective as of February [ ], 2009 (the "Effective Date") to provide financial advisory services in relation to DPW's representation of JPMorgan Chase Bank, N.A., as administrative agent (the "Agent"), under the Credit Agreement (the "Credit Facilities"), dated May 17, 2007, among Tribune Company (together with any affiliates and subsidiaries, the "Company"), the lenders party thereto from time to time (the "Lenders"), and the Agent.

Under this Agreement, Blackstone will provide financial advisory services in connection with the restructuring of the Company and will assist in analyzing, structuring, negotiating and effecting Restructuring Activities pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term Restructuring Activities shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, lease obligations, trade claims and general unsecured claims (collectively, the "Obligations"), capital stock or other equity securities or interests, (ii) any dispositions of entities or assets, and/or (iii) any consensual or adversarial foreclosure or other enforcement action, including, without limitation, any transfer or surrender of stock, assets or other collateral by the Company.

The financial advisory services to be rendered by Blackstone will include the following:

(a)    Assist in the evaluation of the Company's businesses and prospects;

(b)    Assist in the evaluation of the Company's long-term business plan and related financial projections;

Confidential                    JPM2_00001278

(c)    Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(d)    Review and analyze any proposed restructuring and / or recapitalization, including consideration offered to the Lenders;

(e)    Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(f)    Evaluate the Company's debt capacity and alternative capital structures;

(g)    Participate in negotiations among the Agent, Lenders, the Company and its advisors, other creditors, suppliers, lessors and other interested parties;

(h)    Value the Company, entities and assets and securities offered by the Company in connection with Restructuring Activities; and

(i)    Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any Restructuring Activities, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete its Restructuring Activities. Blackstone is retained under this Agreement solely to provide advice regarding Restructuring Activities, and is not being retained to provide "crisis management."

Blackstone shall commit the personnel and resources necessary and appropriate to perform the services set forth herein and to work with the Agent, the Lenders and their advisors. Blackstone agrees that Timothy Coleman and Flip Huffard will be actively involved in and devote significant time towards the engagement described herein.

All fees and expenses payable to Blackstone pursuant to this Agreement shall be payable by the Company in accordance with the provisions of Section 8.04 of the Credit Facilities; it being understood that neither DPW nor the Agent shall in any event be liable or responsible to Blackstone or any other party for any fees, expenses, obligations, liabilities or damages incurred or any other amounts that may from time to time become payable to us in connection with the Restructuring Activities, this Agreement or Attachment A. It is agreed that the Company will pay the following fees to Blackstone for its financial advisory services:

(i)    a monthly advisory fee (the "Monthly Fee") in the amount of $200,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable monthly in

Confidential

advance on the [ ]th day of each month.  Any Monthly Fee paid subsequent to the twelfth (12) Monthly Fee will be credited towards the Restructuring Fee;

(ii)     an additional fee (the "Restructuring Fee") equal to $5,500,000.   Except as otherwise provided herein, Restructuring Activities shall be deemed to have been completed upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of the Company's existing Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation, consummation and effectiveness of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring.  The Restructuring Fee will be earned and payable in immediately available funds upon the completion of the Restructuring Activities; and

(iii)    reimbursement of all reasonable documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (in the case of counsel and other third party advisors, except as provided in the attached Indemnification Agreement, not to exceed $50,000 without the Agent's prior written consent, which shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of DPW or the Agent, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.  DPW and the Agent are permitted, in their sole discretion, to engage other financial advisors with respect to the Restructuring Activities.

Blackstone recognizes and agrees to be bound by the provisions of that certain Confidentiality Agreement dated as of February [ ], 2009 among the Company, its subsidiaries, the Agent and certain Lenders.

The Agent will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information").  The Agent recognizes and confirms that Blackstone (a) will use and rely

primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment. Subject to Blackstone's compliance with all applicable laws and its internal document retention policies, within 30 days after written request by the Agent following the termination of this Agreement, Blackstone shall return or destroy, at the direction of the Agent, all Information received from the Agent during the course of its engagement and, in the case of destruction, Blackstone shall certify that all Information has been so destroyed.

In the event that the Information belonging to the Company, the Agent, or the Lenders is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's, the Agent's, or the Lenders' information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, regulation or legal process, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Agent's other professional advisors, or, if appropriate in the Agent's judgment, to the Lenders or in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Agent and Lenders in connection with this assignment shall be for the sole benefit of the Agent and such Lenders and shall not be relied upon by any other person.

DPW agrees that Blackstone will provide its financial advice exclusively to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders. The Agent and Lenders will also obtain the advice of their legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of Restructuring Activities. DPW further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders, and does not in such capacity act as a fiduciary for DPW, the Agent, Lenders or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to DPW, the Agent and, to the extent compatible with issues of legal privilege, Lenders.

In consideration of Blackstone's agreement to provide financial advisory services in connection with this Agreement and pursuant to the Credit Facilities, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees. A

Confidential                                                                                    JPM2_00001281

copy of Blackstone's standard form of indemnification agreement is attached to this Agreement as Attachment A.

In the event that, as a result of or in connection with Blackstone's engagement hereunder, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the obligations of the Company pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by DPW, the Agent or Blackstone; termination for cause by any party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the obligations of the Company under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that Restructuring Activities are completed at any time prior to the expiration of 18 months following the termination of this Agreement, provided, however, in the event that Blackstone is terminated for cause, Blackstone shall not be entitled to any Restructuring Fee. For the purpose of this paragraph, "cause" shall include gross negligence, willful misconduct, or bad faith by Blackstone.

DPW or the Agent do not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor are they prohibited parties according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not directly involved in providing advisory services in connection with this Agreement. Should the Information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in providing advisory services in connection with the Agreement, such representative shall be bound by the obligations set forth in this Agreement. Blackstone agrees, for the term of this engagement, not to knowingly undertake any other engagement that might cause a conflict of interest with this engagement without the consent of the Agent.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, and it will remain in full force and effect.   No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Agent also agrees that none of Blackstone or any of its partners (both general and limited), employees, affiliates, officers, directors and agents shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Agent or its owners, parents, affiliates, security holders or creditors for or in connection with his Agreement except for any such liability for losses, claims, damages or liabilities incurred by the Agent that is finally judicially determined by a court of competent jurisdiction to have primarily resulted from such party's gross negligence or willful misconduct.

Blackstone, DPW and the Agent hereby agree that any action or proceeding brought by Blackstone, DPW or the Agent based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.  Blackstone, DPW and the Agent irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings.  Blackstone, DPW and the Agent hereby irrevocably waive, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same.

Confidential                                                                                                           JPM2_00001283

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY SERVICES L.P.

By:_____

Name:    Paul P. Huffard
Title:     Senior Managing Director

Confidential                                                                    JPM2_00001284

Accepted and Agreed to as
of the date first written above:


DAVIS POLK & WARDWELL, AS COUNSEL TO THE AGENT


By:_____
    Name:    Donald S. Bernstein, Esq.
    Title:    Partner


JPMORGAN CHASE BANK, N.A., AS AGENT


By:_____
    Name:    Miriam T. Kulnis
    Title:    Executive Director


Acknowledged by:

TRIBUNE COMPANY


By:_____
    Name:    Chandler Bigelow III
    Title:    Chief Financial Officer

ATTACHMENT A

February [  ], 2009

Blackstone Advisory Services L.P.
345 Park Avenue
New York, NY  10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

    This letter ("this Agreement") will confirm that Davis Polk & Wardwell ("DPW"), as counsel to J.P. Morgan Chase Bank, N.A. in its capacity as agent ("JPM"), has engaged Blackstone Advisory Services L.P. ("you" or "Blackstone") to advise and assist in connection with the matters referred to in Blackstone's letter of agreement dated as of February [  ], 2009 (the "Engagement Letter").  In consideration of your agreement to act on DPW's behalf in connection with such matters, Tribune Company ("we" or "us") agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this Agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.  We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.

Confidential

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by you, on the one hand, and JPM and us, on the other hand, from the Engagement or (ii) if and only if the allocation provided by clause (i) above is for any reason not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you, JPM and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter.  For the purposes of this Agreement, the relative benefits to JPM and us, on the one hand, and you, on the other hand, of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by JPM and the Lenders in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

No party to this Agreement will, without the prior written consent of the other parties (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not we or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding.  In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights.  If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

Confidential                                                                                                   JPM2_00001287

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the reasonable fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding.  In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

Our foregoing reimbursement, indemnity and contribution obligations under this Agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any of our successors, assigns, heirs and personal representatives and such Indemnified Party.

The provisions of this Agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This Agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,
TRIBUNE COMPANY

By:_____

Name:  Chandler Bigelow III
Title:   Chief Financial Officer

Accepted and Agreed to as of the date first written above:
BLACKSTONE ADVISORY SERVICES L.P.

By: _____
      Name:    Paul P. Huffard
      Title:     Senior Managing Director

Confidential



From: CN=Miriam T. Kulnis/O=JPMCHASE
Date: 02/12/2009 06:09:35 PM
To: "Seife, Howard" <HSeife@chadbourne.com>
Subject: Re: Tribune

I am available till 8:45 (subject to a call I'm waiting for.,) Or tomorrow between 10-1.  Miriam T. Kulnis Executive Director/JPMorgan Chase Bank 277 Park Avenue - 8th Floor New York, NY 10172 Phone (212) 622-4528 Fax (212) 622-4557

"Seife, Howard" <HSeife@chadbourne.com>

02/12/2009 05:55 PM

To
miriam.kulnis@chase.com

cc
kevin.c.kelley@chase.com, damian.schaible@dpw.com

Subject
Tribune

Miriam-- I have been asked by the Committee to have a follow-up discussion with you regarding the fee reimbursement issue.  Please let me know when would be a good time to talk.  Thanks   Howard   Howard Seife Chadbourne & Parke LLP 30 Rockefeller Plaza, New York, NY 10112 tel 212-408-5361 | fax 646-710-5361 | hseife@chadbourne.com | http://www.chadbourne.com Care: http://www.chadbourne.com/care/hseife.xsf   ****************************This e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of the e-mail and any printout thereof. For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com

****************************This e-mail, you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail and/or any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of the e-mail and any printout thereof. For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com

| | |
|---|---|
| **From:** | Schaible, Damian S. |
| **Sent:** | Wednesday, February 18, 2009 7:24 PM |
| **To:** | 'Seife, Howard'; DLeMay@chadbourne.com; 'Deutsch, Douglas' |
| **Cc:** | Bernstein, Donald S. |
| **Subject:** | Tribune Fee Reimbursement |

Howard, David and Doug — We have spoken with JPM and would like to propose a compromise that I am hopeful you could take to the committee members by a poll and I would hope they would accept but that I hope will keep our group together and quieted. I would like to run it by you, and I am around tonight and I'll be around most of tomorrow morning, so please give a call or let me know when convenient for you to speak and I can call.

Thanks,
Damian

Damian S. Schaible
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Phone: 212 450-4580
Fax: 212 450-3580
email: damian.schaible@dpw.com



Confidential

JPM2_00000107

| From: | Schaible, Damian S. |
|---|---|
| Sent: | Tuesday, February 24, 2009 11:52 AM |
| To: | 'LeMay, David' |
| Cc: | MIRIAM.KULNIS@chase.com; Kevin.C.Kelley@chase.com; Bernstein, Donald S. |
| Subject: | Tribune: Revised Proposal Regarding Non-Debtors' Reimbursement of Blackstone's Fees |

David, As discussed, I wanted to send you bullet points regarding what we would propose by way of Blackstone's fee reimbursement by the non-debtor guarantors. All of this, of course, is subject (as is our previous offer to provide quarterly reports of fee amounts reimbursed) to and would be dependent on the Committee having no objection to the reimbursement by the non-debtors. We would agree to:

1) not use the retainer we will be paid to pay BS's back-end fee,
2) notify the Committee before demanding payment of any such back-end fee,
3) come back to report to the Committee about Blackstone's work/involvement in about 5 months to see if thinking has changed, and
4) reduce the retainer otherwise agreed with the company by $1 million to effectively cover that 5-month period, so that, solely for the time period during which certain committee members were not "certain" Blackstone was yet needed, it is being funded by what would have been the retainer provided to us).

Of course, in addition to all of this, there are the facts that:

1) We are not getting any agreement of the non-debtors to actually pay any future fees (including Blackstone's back-end fee) and
2) The committee of course retains its rights to object to things like the back-end fee on any grounds, including reasonableness.

Thanks David, I look forward to hearing the result of your calls today.

Best,
Damian

Damian S. Schaible
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Phone: 212 450-4580
Fax: 212 450-3580
email: damian.schaible@dpw.com



**From:**  Bernstein, Donald S.
**Sent:**  Friday, February 27, 2009 5:00 PM
**To:**  Schaible, Damian S.
**Subject:** RE: Tribune -- Senior Lenders' Reimbursement Request

Redacted

**From:** Schaible, Damian S.
**Sent:** Friday, February 27, 2009 4:57 PM
**To:** 'Deutsch, Douglas'; Bernstein, Donald S.
**Cc:** Seife, Howard; LeMay, David; MIRIAM.KULNIS@chase.com; Kevin.C.Kelley@chase.com; Dworkin, Meyer C.; Smit, Daniel
**Subject:** RE: Tribune -- Senior Lenders' Reimbursement Request

Doug, Thanks for your note. I can confirm the understanding below.

Best regards,
Damian

Damian S. Schaible
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Phone: 212 450-4580
Fax: 212 450-3580
email: damian.schaible@dpw.com

**From:** Deutsch, Douglas [mailto:DDeutsch@chadbourne.com]
**Sent:** Friday, February 27, 2009 4:35 PM
**To:** Bernstein, Donald S.; Schaible, Damian S.
**Cc:** Seife, Howard; LeMay, David
**Subject:** Tribune -- Senior Lenders' Reimbursement Request

Gentlemen:

Certain non-debtor affiliates of Tribune Company that are guarantors under a Senior Credit Facility (the "Non-Debtors") propose to reimburse JP Morgan, as Administrative Agent under the Senior Credit Facility (the "Agent"), and certain lenders under that facility that make up a steering committee for the rest of the lenders (the "Steering Committee") for certain expenses that the Agent and Steering Committee contend are reimbursable by the Non-Debtors under the guaranties. The Agent and the Steering Committee also seek a $ 7.5 million retainer (the "Retainer") to be funded by the Non-Debtors to ensure payment of these fees.

The Committee was not asked to support the foregoing proposal but only to confirm that it does not object to the payment of these fees. The Committee will not object, subject to the following conditions:

- General

  o  The Agent and the Steering Committee seek reimbursement of reasonable fees and expenses of only the following professionals of the Agent and/or certain members of the Steering

EXHIBIT

Kulnis 13
CO          2/5/10

PENGAD 800-631-6989

JPM2_00000148

Committee: (a) Davis Polk & Wardwell, (b) Richards, Layton & Finger; (c) FTI; (d) Blackstone; and (e) Kramer Levin Naftalis & Frankel.

- All fees of the above-noted professionals are to be paid on an hourly basis except Blackstone. Blackstone is to be paid a flat monthly fee of $200,000 (credited against the Restructuring Fee after one year) and a Restructuring Fee of $5.5 million.

- o The agreement of the Committee not to object to the Non-Debtors reimbursing the fees and expenses of Kramer Levin is subject to the continuing condition that Kramer Levin is the only lender professional being reimbursed by the Non-Debtors under the Senior Facility (as distinct from those professionals retained by the Agent).
  - o The Senior Lenders agree to provide quarterly summaries of all fees promptly following the expiration of each quarter (beginning with the four months ending 4/31/2009).
  - o The Agent and/or the Debtors will notify the U.S. Trustee of the Non-Debtors' intent to reimburse Senior Lenders' professional fees before any payment is made.

- Blackstone

  - o The Agent agrees that the Retainer will not be used to pay Blackstone's Restructuring Fee.
  - o The Agent will notify the Committee before requesting payment of any Restructuring Fee or other similar fee, and the Agent and the Steering Committee acknowledge and agree that the Committee has preserved any rights it might otherwise have to object to Blackstone's proposed Restructuring Fee on any basis, including reasonableness.
  - o The Agent agrees to report to and discuss with the Committee the scope of and the continuing need for Blackstone's work/involvement approximately five months from the date hereof.

- Reservation of Rights

  - o The Committee reserves any and all rights it might have to object to the reasonableness of any fees and expenses to be reimbursed by the Non-Debtors, and generally reserves all of its rights with respect to the foregoing except as specifically noted above.

Please confirm that the Committee's understanding of this matter is consistent with the Agent's understanding.

– Doug

**Douglas E. Deutsch** | Counsel
**Chadbourne & Parke LLP**
30 Rockefeller Plaza, New York, NY 10112
tel 212-408-5169 | fax 646-710-5169
ddeutsch@chadbourne.com | http://www.chadbourne.com
vCard: http://www.chadbourne.com/vcard/ddeutsch.vcf

Please consider the environment before printing this email.

---

************************************************************

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in

Confidential

error, please notify me by replying to this message and permanently delete the original and any copy of this e-mail and any printout thereof.

For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me by replying to this message and permanently delete the original and any copy of this e-mail and any printout thereof.

For additional information about Chadbourne & Parke LLP and Chadbourne & Parke, a multinational partnership, including a list of attorneys, please see our website at http://www.chadbourne.com