| | |
|---|---|
| **From:** | Smit, Daniel [daniel.smit@dpw.com] |
| **Sent:** | Saturday, January 10, 2009 10:00 AM |
| **To:** | Krakauer, Bryan; Lantry, Kevin T.; Henderson, Janet E.; Conlan, James F.; Boelter, Jessica C.K.; Kansa, Ken |
| **Cc:** | tribuneco.jpm; tribuneco.fti; tribuneco.dpw; tribuneco.sc |
| **Subject:** | Tribune Draft Forbearance Agreement |
| **Attachments:** | forbearance.agt.doc |

Sidley Team:

As discussed on Wednesday, I attach a draft Forbearance Agreement.

Please note that we are simultaneously sending the draft Agreement to the steering committee and Kramer Levin and, accordingly, it remains subject to comments received from them.

Regards

Danie Smit
Davis Polk & Wardwell
450 Lexington Ave New York, NY 10017
Tel. (212) 450-4947 / Fax (212) 450-3907
e-mail: daniel.smit@dpw.com

10/29/2009

Larsen
EXHIBIT NO. 9
2/1/10
P. CAMPBELL

TRB_LD000021
CONFIDENTIAL

TRB_LD000021

**DRAFT**

## FORBEARANCE AGREEMENT

**FORBEARANCE AGREEMENT** (this "Forbearance Agreement") dated as of January [ ], 2009, and effective as of the Forbearance Effective Date (as defined below), among the entities listed on Schedule I hereto (each such entity individually, a "Tribune Party" and, collectively, the "Tribune Parties"), the Participant Lenders and JPMorgan Chase Bank, N.A., as administrative agent under the Credit Agreement (in such capacity, the "Agent").

## WITNESSETH:

WHEREAS, Tribune Company (the "Borrower"), a Delaware corporation and a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding"), certain lenders (including the Participant Lenders), the Agent and certain other parties are parties to a Credit Agreement dated as of May 17, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "Credit Agreement");

WHEREAS, at the time of commencement of the Chapter 11 Proceeding, there were approximately 100 Lenders, and the Borrower and the Agent concluded it was necessary to designate certain lenders (the "Steering Lenders") to become focal points for regular communications and negotiations among the Borrower, its related debtors and the Lenders;

WHEREAS, the commencement of the Chapter 11 Proceeding is an Event of Default under the Credit Agreement;

WHEREAS, in connection with the Credit Agreement, the Tribune Parties and the Agent are party to a Guarantee Agreement dated as of June 4, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "Guarantee Agreement" and together with the Credit Agreement, the "Existing Agreements") under which, among other things, certain of the Tribune Parties have guaranteed all Guaranteed Obligations (as defined therein) including, without limitation, all Obligations of and performance by the Borrower of its covenants under the Credit Agreement;

WHEREAS, certain of the Tribune Parties are not debtors in the Chapter 11 Proceeding (the "Non-Debtor Tribune Parties"), and accordingly do not have the benefit of the automatic stay applicable therein and would be subject to the exercise of remedies under the Guarantee Agreement absent forbearance in respect of such remedies by the Lenders and the Agent; and

WHEREAS, to permit certain of the Non-Debtor Tribune Parties to explore possible strategic transactions and to facilitate the overall restructuring of the Tribune Parties, the Tribune Parties have requested that the Participant Lenders forbear from exercising certain rights and remedies under the Guarantee Agreement against the Non-Debtor Tribune Parties on the terms and conditions (including the limited duration) set forth herein, and the Participant Lenders are willing, upon such terms and conditions (including such limited duration), to forbear from their exercise of such rights and remedies to enable the non-debtor Tribune Parties to continue to explore such transactions and, in the interim, to enable the non-debtor Tribune Parties to continue to operate, all during the Forbearance Period (as defined herein);

TRB_LD000022
CONFIDENTIAL

TRB_LD000022

NOW, **THEREFORE**, the parties hereto hereby agree as follows:

1.    **Defined Terms; References**. (a) Unless otherwise specifically defined herein, each term used herein which is defined in any Existing Agreement has the meaning assigned to such term in such Existing Agreement.

(b) As used in this Forbearance Agreement, the following terms have the meanings specified below:

"Forbearance Default" means any of the following: (i) any Tribune Party shall breach or fail to comply with any covenant, condition or agreement contained in this Forbearance Agreement, or take any action or make any statement that evidences the intent of any such Tribune Party to breach or fail to comply with any such covenant, condition or agreement; (ii) any Non-Debtor Tribune Party shall enter into any agreement relating to a Material Disposition that has not been consented to in writing by the Required Lenders, (iii) the Borrower or any of its subsidiaries shall repay all or any portion of any material obligation incurred prior to commencement of the Chapter 11 Proceeding, other than operating expenses incurred in the ordinary course of business and other payments authorized by the Bankruptcy Court in the Chapter 11 Proceeding after notice and hearing without objection by the Agent or the Participant Lenders, and (iv) the making of a demand for payment against or the exercise of any remedy against any Non-Debtor Tribune Party or a Non-Debtor Tribune Party's assets by or on behalf of any holder of any debt for borrowed money.

"Forbearance Period" means, with respect to any Non-Debtor Tribune Party, the period from and including the Forbearance Effective Date to but excluding the earliest of:

(i) the date on which the Agent delivers to such Non-Debtor Tribune Party a written notice terminating the Forbearance Period with respect to such Tribune Party pursuant to Section 2(b) hereof;

(ii) the date that is ten (10) days following the delivery by the Agent to such Non-Debtor Tribune Party of a written notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party pursuant to Section 2(c) hereof;

(iii) the date on which any petition for relief under the Bankruptcy Code is filed by or against such Non-Debtor Tribune Party, whether or not there has been an order for relief; and

(iv) the first anniversary of the Forbearance Effective Date (the "Initial Scheduled Termination Date"), as such date may be extended from time to time by Participant Lenders constituting the Required Lenders (the Initial Scheduled Termination and any subsequent date to which the date referred to in this clause (iv) may be extended being called a "Scheduled Termination Date").

"Material Disposition" means (a) any conveyance, sale, lease, sublease, assignment, transfer or other disposition (including by way of merger or consolidation and including any Sale and Lease-Back Transaction and any Disposition) of any property (excluding sales of inventory and dispositions of cash and Cash Equivalents in each case, in the ordinary course of business),

2

TRB_LD000023
CONFIDENTIAL

TRB_LD000023

by any Non-Debtor Tribune Party or (b) any issuance or sale of any Equity Interests of any Non-Debtor Tribune Party (including any redemption of partnership, membership or other Equity Interests having the effect of reducing the interest of such Tribune Party in any other Person), in each case to any Person.

"Participant Lender" means (i) any Lender that executes this Forbearance Agreement and any of such Lender's successors and assigns that executes a Joinder to this Forbearance Agreement pursuant to Section 5 hereof and (ii) any Lender that executes a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit A (whether before or after the Forbearance Effective Date), *provided that* if a Lender notifies the Borrower and the Agent in writing prior to any Scheduled Termination Date that it intends to cease to be a Participant Lender as of such Scheduled Termination Date, such Lender shall cease to be a Participant Lender effective as of such Scheduled Termination Date.

2.    **Forbearance**. (a) Each Participant Lender agrees that, with respect to each Non-Debtor Tribune Party, until the expiration or termination of the Forbearance Period with respect to such Non-Debtor Tribune Party, the Participant Lenders will forbear, and each Participant Lender hereby instructs the Agent to forbear (in each case subject to the terms and conditions hereof) from (i) demanding payment of any amount due under the Guarantee Agreement from such Non-Debtor Tribune Party or (ii) taking, exercising, instructing, voting to instruct or requesting that the Agent take or exercise, and hereby instructs the Agent not to take or exercise, any remedies under the Existing Agreements (including, without limitation, pursuant to Section 7 of the Guarantee Agreement) or otherwise for collection against such Non-Debtor Tribune Party (including, without limitation, enforcement or collection actions, the exercise of rights of setoff or other remedies available for the collection of amounts due pursuant to applicable law).

(b)    Upon the occurrence and during the continuance of a Forbearance Default, the Agent (i) may or (ii) if requested in writing by the Required Lenders, shall deliver to any Non-Debtor Tribune Party a notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party.

(c)    At any time after June 30, 2009, the Agent (i) may or (ii) if requested in writing by the Required Lenders, shall deliver to any Non-Debtor Tribune Party a notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party.

(d)    Forthwith upon the expiration or termination of the Forbearance Period with respect to any Non-Debtor Tribune Party, the agreement of the Participant Lenders pursuant to Section 2(a) hereof to forbear from *inter alia* taking or exercising certain actions and remedies and instructing the Agent not to take or exercise certain actions and remedies, in each case with respect to such Non-Debtor Tribune Party, shall terminate without the requirement of any demand, presentment, protest or notice of any kind, all of which such Non-Debtor Tribune Party hereby waives. The Tribune Parties agrees that the Agent and each Participant Lender may at any time thereafter proceed to exercise against such Non-Debtor Tribune Party any and all of their respective rights and remedies under the Guarantee Agreement and/or applicable law, including, without limitation, their respective rights and remedies in connection with any or all defaults and Events of Default.

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000024
CONFIDENTIAL

TRB_LD000024

(e)      For the avoidance of doubt, nothing herein (i) limits the right of the Agent or the Lenders, including, without limitation, during the Forbearance Period, to take any action to preserve or exercise or enforce rights or remedies or (ii) constitutes a waiver of such rights or remedies, in either case against parties other than the Non-Debtor Tribune Parties ("Third Party Rights"). For purposes of the foregoing, the Tribune Parties acknowledge and agree that execution and delivery of this Forbearance Agreement shall constitute the making of any necessary demand or the giving of any necessary notice for purposes of preserving and/or permitting the exercise of any such Third Party Rights of the Agent and the Lenders.

(f)      Execution of this Forbearance Agreement constitutes an instruction by the Participant Lenders that the Agent act in accordance with its terms. Notwithstanding the foregoing (and without limitation of the rights of any Tribune Party to pursue all available remedies available to it under applicable law against a Participant Lender which may result from breach or non-performance by any Participant Lender of this Forbearance Agreement or any of such Participant Lender's obligations hereunder), the Agent shall have no liability to any party for taking any action at the request of the Required Lenders, even if such action is inconsistent with this Forbearance Agreement. Notwithstanding the foregoing, each Participant Lender hereby agrees not to take any action, including without limitation, instructing the Agent to take any action, inconsistent with or in breach of this Forbearance Agreement. The parties acknowledge and agree that any actions taken or not taken by the Agent in accordance with this Forbearance Agreement are at the request of and with the consent of the Required Lenders under the Credit Agreement, and the Agent may rely thereon for purposes of Article 7 of the Credit Agreement.

(g)      The Tribune Parties acknowledge and agree that the agreement of the Participant Lenders hereunder to forbear from, and to request the Agent to forbear from, exercising certain of their rights and remedies under the Guarantee Agreement shall not constitute a waiver of such rights and remedies, and that except as expressly provided herein, the Lenders expressly reserve all rights and remedies that the Agent and the Lenders now or may in the future have under the Guarantee Agreement and/or applicable law in connection with all defaults and Events of Default (including, without limitation, the right to obtain financial and other information regarding the Borrower and its subsidiaries and affiliates in connection with the Chapter 11 Proceeding, including through compulsory process).

3.      **Forbearance Covenants**.

(a) To the extent and at the times hereinafter set forth (and without waiving any other rights or remedies the Lenders or the Agent may have in respect thereof), each Non-Debtor Tribune Party hereby agrees, jointly and severally, to pay, promptly but in any case within five (5) days after receipt of demand therefor (and, in each case, whether incurred before, during or after the end of the Forbearance Period with respect to any Non-Debtor Tribune Party), (i) all reasonable fees, costs and expenses of (A) the Agent (including, without limitation, fees, costs and expenses owed from time to time under Section 8.04 of the Credit Agreement, which, for the avoidance of doubt, includes the reasonable fees, costs and expenses of Davis Polk & Wardwell, as special counsel to the Agent ("DPW"), Richards, Layton & Finger, P.A., as Delaware counsel to the Agent, FTI Consulting, Inc., as financial advisor to the Agent, and, if and when retained by the Agent, a firm providing investment banking advisory services to the Agent), (B) Kramer

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000025
CONFIDENTIAL

TRB_LD000025

Levin Naftalis & Frankel LLP ("KLNF"), as counsel to certain Lenders (the "Ad Hoc Lenders"), including certain of the Steering Lenders, and (C) special Delaware counsel, if any, retained by the Ad Hoc Lenders, and (ii) all reasonable out-of-pocket expenses of each of the Steering Lenders incurred in connection with their participation as a Steering Lender (e.g., expenses for travel, food and lodging). Without limiting the generality of the foregoing, on the Forbearance Effective Date, the Non-Debtor Tribune Parties shall pay (x) to the Agent $7.5 million (the "Agent Advance") and (y) to KLNF $1.0 million (the "KLNF Advance"), to be used as an advance that may be applied in satisfaction of the reasonable fees, costs and expenses of the Agent and KLNF to the extent that, notwithstanding the provisions of this Section 3(a), any such fees, costs and expenses are not paid when required in accordance herewith.

(b)    Each Tribune Party shall promptly give to the Agent notice in writing of the occurrence of any Forbearance Default, or the occurrence of any event or circumstance which with the passage of time or giving of notice or both would constitute a Forbearance Default.

(c)    The Tribune Parties shall provide the Agent and the Steering Lenders with (i) timely updates (and in any event not less frequently than on a biweekly basis) on the progress of negotiations in respect of all Material Dispositions and other material transactions [outside the ordinary course of business] contemplated by the Borrower or any of its subsidiaries (including, without limitation, any disposition or other material transaction directly or indirectly involving any interests in or assets of Chicago National League Ball Club, Inc. or Tribune (FN) Cable Ventures, Inc.) and (ii) not less than 10 days written notice prior to entering into any agreement relating to any such Material Disposition or other material transaction (including a summary of the material terms of such transaction and a copy of the most current draft of any agreement relating thereto).

(d)    The Tribune Parties shall cause the Borrower and its subsidiaries and affiliates to cooperate with and provide financial and other information to the Agent, the Steering Lenders and their respective agents and legal and financial professionals in a manner satisfactory to the Agent and the Steering Lenders in their reasonable judgment, including, without limitation, providing to the Agent and the Steering Lenders financial reports, forecasts, analyses and due diligence comparable to that which is provided to the official unsecured creditors committee in the Chapter 11 Proceeding (the "UCC"). In addition, the Tribune Parties shall, upon request, cause the Borrower and its subsidiaries and affiliates to provide to the Agent and the Steering Lenders all financial reports, forecasts and analyses provided from time to time to any debtor-in-possession lender in the Chapter 11 Proceeding, including, without limitation, Barclays Bank PLC ("Barclays"), as Lender, Funding Agent and Administrative Agent under the Receivables Loan Agreement, dated as of July 1, 2008, among the Borrower, Tribune Receivables, LLC and Barclays (as amended from time to time).

(e)    Upon the prior request of the Agent, the Steering Lenders or their respective agents and legal or financial professionals, the Tribune Parties shall cause the Borrower and its subsidiaries and affiliates to provide such parties with access to, and shall as promptly as practicable schedule meetings and conference calls with, management personnel, counsel and any financial advisors or restructuring consultants retained by the Borrower or any of its subsidiaries or affiliates.

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000026
CONFIDENTIAL

TRB_LD000026

(f)    Neither the Borrower nor any Guarantor shall directly or indirectly pay any Dividend.

(g)    All consideration received in connection with a Material Disposition shall be retained by the entity making such Material Disposition and none of such consideration shall be transferred to any other Person (including, without limitation, the Borrower or any of its subsidiaries or affiliates) without the prior written consent of the Agent and the Required Lenders.

(h)    The cash management system of the Borrower and its subsidiaries and affiliates shall be maintained in a manner reasonably satisfactory to the Agent and the Required Lenders.

(i)    Except as agreed by the Required Lenders, each of the Non-Debtor Tribune Parties shall comply with the provisions of Section 5.01(h) and Sections 5.02(a), (c), (f), (h) and (k) of the Credit Agreement (as if such Sections referred to such Non-Debtor Tribune Party instead of to the Borrower).

4.    **Conditions to Effectiveness**. This Forbearance Agreement shall become effective in accordance with its terms on the date (the "Forbearance Effective Date") on which each of the following shall have occurred and the Agent shall have received evidence reasonably satisfactory to it of such occurrence:

(i)    this Forbearance Agreement shall have been executed by each Tribune Party and Participant Lenders constituting the Required Lenders;

(ii)    the Agent shall have received payment in cash in full of (A) any fees, costs and expenses owing to the Agent under the Credit Agreement as of such Forbearance Effective Date and (B) the Agent Advance;

(iii)    KLNF shall have received payment in cash in full of (A) any fees, costs and expenses owing to KLNF under Section 3(a) hereof as of such Forbearance Effective Date and (B) the KLNF Advance;

(iv)    the Agent and the Steering Lenders shall have received all reports, forecasts, analyses or other due diligence required under Section 3(d) hereof as of the Forbearance Effective Date (including, without limitation, all financial reports, forecasts, analyses and due diligence provided to the UCC and Barclays as of the Forbearance Effective Date); and

(v)    the Agent shall have delivered to Merrill Lynch Capital Corporation, as Administrative Agent (the "Bridge Agent") under the Senior Unsecured Interim Loan Agreement dated as of December 20, 2007 among the Borrower, the lenders from time to time party thereto, the Bridge Agent and certain other parties thereto (as the same has been and may be further amended, modified or supplemented from time to time, the "Bridge Agreement"), a Payment Blockage Notice in connection with the Guarantee (as defined in the Bridge Agreement).

6

TRB_LD000027
CONFIDENTIAL

TRB_LD000027

5.     **Assignments.** Each Participant Lender hereby agrees, for so long as it is a Participant Lender, (a) not to assign or otherwise transfer, during the Forbearance Period, all or a portion of its rights and obligations under the Credit Agreement (including all or a portion of its Loans at the time owing to it) except to a Person who (i) is already a Participant Lender or (ii) contemporaneously with any such assignment or transfer, agrees to be bound as a Participant Lender by executing and delivering to the Agent a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit B and (b) prior to the effectiveness of any such assignment or other transfer, to provide the Agent with a certificate in the form attached hereto as Exhibit C certifying that the applicable assignee or transferee satisfies the conditions of this Section 5 and, in the case of an assignee or transferee that has executed a Joinder, attaching a copy of such executed Joinder to such certificate. Each Participant Lender agrees that, notwithstanding anything to the contrary in the Credit Agreement, (x) any purported assignment or transfer that fails to comply with this Section 5 shall be null and void and (y) the Agent shall be entitled to withhold its consent to, and shall not be required to give effect to, any purported assignment or transfer of a Participant Lender's Loans or other rights or obligations under the Loan Documents if the conditions set forth in this Section 5 are not satisfied.

6.     **Amendments.** Except as expressly provided herein, no modification, amendment or waiver of any provision of this Forbearance Agreement shall be effective unless the same shall be in writing and signed by the Tribune Parties, Participating Lenders constituting the Required Lenders and the Agent. On the Forbearance Effective Date, the Guarantee Agreement shall be deemed to be amended by this Forbearance Agreement to incorporate the terms hereof (including, without limitation, the Lenders' agreement to forebear pursuant to Section 2(a) hereof). For the avoidance of doubt, any other modification, amendment or waiver of any provision of the Guarantee Agreement (including, without limitation, as amended hereby) shall continue to be governed by the applicable provisions of the Guarantee Agreement.

7.     **No Waiver; Remedies.** No failure on the part of any Lender or the Agent to exercise, and no delay in exercising, any right hereunder or under the Guarantee Agreement or any Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

8.     **Miscellaneous.**

(a)     Except to the extent hereby amended, each Tribune Party hereby affirms that the Loan Documents shall continue in full force and effect and are legal, valid and enforceable in accordance with their respective terms (each of which is hereby ratified and affirmed in all respects) and that, without limitation of the foregoing, each such Tribune Party continues to guarantee the Guaranteed Obligations in accordance with the terms of the Guarantee Agreement.

(b)     No Person other than the parties hereto and any other Lender shall have any rights hereunder or be entitled to rely on this Forbearance Agreement, and all third-party beneficiary rights are hereby expressly disclaimed.

7

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000028
CONFIDENTIAL

TRB_LD000028

(c)    Each Tribune Party agrees that the Borrower's obligations set forth in Section 8.04 of the Credit Agreement and in Section 3(a) hereof shall extend to the preparation, execution and delivery of this Forbearance Agreement (including any amendments or modifications hereto, waivers hereunder and administration hereof), including the reasonable fees and disbursements of DPW and KLNF.

(d)    The parties hereto hereby agree that Section 7 of the Credit Agreement shall apply to this Forbearance Agreement and each other Loan Document and all actions taken or not taken by the Agent or any Participant Lender contemplated hereby.

(e)    Nothing in this Forbearance Agreement shall be deemed, asserted or construed to impair or prejudice the rights of the Agent and the Participant Lenders to (i) appear and be heard on any issue, or to object to any relief sought, in the Chapter 11 Proceeding or (ii) enforce the provisions of this Forbearance Agreement or to seek damages or equitable relief in connection with a breach or anticipated breach hereof.

(f)    The parties hereto hereby agree that Section 8.08 of the Credit Agreement shall apply to all Borrower Information provided to the Agent or any Participant Lender pursuant to this Forbearance Agreement.

(g)    All notices and other communications in respect of this Forbearance Agreement shall be delivered in the manner and to the addresses specified in Section 8.02 of the Credit Agreement; *provided* that all notices and communications to any Tribune Party shall be delivered, mailed or sent c/o Tribune Company to: 435 North Michigan Avenue, 6th Floor, Chicago, Illinois 60611, [Attention of General Counsel (Telecopy No. (312) 222-4206), with a copy to Sidley Austin LLP, at 1 South Dearborn Street, Chicago, Illinois 60603, Attention: Robert Lewis, Esq. (Telecopy No. (312) 853-7036; Email: rlewis@sidley.com)].

(h)    If any provision of this Forbearance Agreement shall be held to be invalid, illegal or unenforceable in any jurisdiction, such provision shall, solely as to such jurisdiction and such provision, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof.

(i)    Section headings used herein are for convenience only and are not to affect the construction of or be taken into consideration in interpreting this Forbearance Agreement.

(j)    This Forbearance Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. A facsimile or .pdf copy of a counterpart signature page shall serve as the functional equivalent of a manually executed copy for all purposes.

(k)    THIS FORBEARANCE AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

8

TRB_LD000029
CONFIDENTIAL

TRB_LD000029

(l)      EACH OF THE TRIBUNE PARTIES, THE AGENT AND EACH PARTICIPANT LENDER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS FORBEARANCE AGREEMENT.

*[SIGNATURE PAGES FOLLOW]*

9

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000030
CONFIDENTIAL

TRB_LD000030

**EACH OF THE ENTITIES LISTED
ON SCHEDULE I HERETO,**

By: _____
            Name:
            Title:

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000031
CONFIDENTIAL

TRB_LD000031

**NAME OF PARTICIPANT LENDER:**

By: _____
      Name:
      Title:

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000032
CONFIDENTIAL

TRB_LD000032

**Schedule I**

<u>Tribune Parties</u>

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000033
CONFIDENTIAL

TRB_LD000033

| From: | Eldersveld, David <DEldersveld@Tribune.com> |
| Sent: | Tuesday, January 20, 2009 5:39 PM |
| To: | NLarsen@egii.com; Bigelow, Chandler <CBigelow@tribune.com> |
| Subject: | Fw: Tribune |
| Attach: | Forbearance Agmt Original.DOC;Redline.rtf |

FYI - in case Bryan did not send to you directly.

---

**From:** Krakauer, Bryan
**To:** Mayer, Thomas Moers ; Schaible, Damian S. ; Bernstein, Donald S. ; Mannal, Douglas
**Cc:** Eldersveld, David; Liebentritt, Don; Lantry, Kevin T. ; David.Kurtz@lazard.com
**Sent:** Tue Jan 20 10:54:01 2009
**Subject:** Tribune

<<Forbearance Agmt Original.DOC>> <<Redline.rtf>>

As discussed last night, attached for your review are the Tribune's proposed modifications to the draft Forbearance Agreement.

Also, as I discussed with Damian yesterday, the Debtors will move the hearing date for the Cash Management Order to February 20, 2009, with an objection date for the Steering Committee of February 13, 2009, to give the Steering Committee time to analyze cash management information the Debtors are providing to FTI and to address possible modifications to the language of the order so as to avoid prejudice to parties due to the movement of cash.

- Bryan Krakauer

Bryan Krakauer
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Phone: 312-853-7515
E-Mail: bkrakauer@sidley.com

---

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

**********************************************************************************



Larsen
EXHIBIT NO. 10
2|1|10
P. CAMPBELL

TRB_LD000042
CONFIDENTIAL

TRB_LD000042

This e-mail is sent by a law firm and may contain information that is privileged or confid
If you are not the intended recipient, please delete the e-mail and any attachments and no
immediately.

*************************************************************************************************

TRB_LD000043
CONFIDENTIAL

TRB_LD000043

**DRAFT**
Debtor Comments { DATE \@ "M/d/yy" }

## FORBEARANCE AGREEMENT

**FORBEARANCE AGREEMENT** (this "Forbearance Agreement") dated as of January [ ], 2009, and effective as of the Forbearance Effective Date (as defined below), among the entities listed on Schedule I hereto (each such entity individually, a "Tribune Party" and, collectively, the "Tribune Parties"), the Participant Lenders and JPMorgan Chase Bank, N.A., as administrative agent under the Credit Agreement (in such capacity, the "Agent").

### W I T N E S S E T H :

WHEREAS, Tribune Company (the "Borrower"), a Delaware corporation, certain lenders (including the Participant Lenders), the Agent and certain other parties are parties to a Credit Agreement dated as of May 17, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "Credit Agreement");

WHEREAS, Borrower and most of its Subsidiaries are debtors and debtors-in-possession (collectively, the "Debtors") in a case pending under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");

WHEREAS, at the time of commencement of the Chapter 11 Proceeding, there were approximately 100 Lenders, and the Borrower and the Agent concluded it was necessary to designate certain lenders as identified in Schedule II hereto (the "Steering Lenders") to become focal points for regular communications and negotiations among the Borrower, its related debtors and the Lenders;

WHEREAS, the commencement of the Chapter 11 Proceeding is an Event of Default under the Credit Agreement;

WHEREAS, in connection with the Credit Agreement, the Tribune Parties and the Agent are party to a Guarantee Agreement dated as of June 4, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "Guarantee Agreement" and together with the Credit Agreement, the "Existing Agreements") under which, among other things, certain of the Tribune Parties have guaranteed all Guaranteed Obligations (as defined therein) including, without limitation, all Obligations of and performance by the Borrower of its covenants under the Credit Agreement;

WHEREAS, certain of the Tribune Parties are not debtors in the Chapter 11 Proceeding (the "Non-Debtor Tribune Parties"), and accordingly do not have the benefit of the automatic stay applicable therein and would be subject to the exercise of remedies under the Guarantee Agreement absent forbearance in respect of such remedies by the Lenders and the Agent; and

WHEREAS, to permit certain of the Non-Debtor Tribune Parties to explore possible strategic transactions and to facilitate the overall restructuring of the Tribune Parties, the Tribune Parties have requested that the Participant Lenders forbear from exercising certain rights and remedies under the Guarantee Agreement against the Non-Debtor Tribune Parties on the terms and conditions (including the limited duration) set forth herein, and the Participant Lenders are

TRB_LD000044
CONFIDENTIAL

TRB_LD000044

willing, upon such terms and conditions (including such limited duration), to forbear from their exercise of such rights and remedies to enable the Non-Debtor Tribune Parties to continue to explore such transactions and, in the interim, to enable the Non-Debtor Tribune Parties to continue to operate, all during the Forbearance Period (as defined herein);

NOW, THEREFORE, the parties hereto hereby agree as follows:

1.    **Defined Terms; References**.  (a)  Unless otherwise specifically defined herein, each term used herein which is defined in any Existing Agreement has the meaning assigned to such term in such Existing Agreement.

(b)  As used in this Forbearance Agreement, the following terms have the meanings specified below:

"Forbearance Default" means any of the following: (i) any Tribune Party shall breach or fail to comply with any covenant, condition or agreement contained in this Forbearance Agreement, or take any action or make any statement that evidences the intent of any such Tribune Party to breach or fail to comply with any such covenant, condition or agreement; (ii) any Non-Debtor Tribune Party shall consummate a Material Disposition that has not been consented to in writing by the Required Lenders or approved by the Bankruptcy Court; and (iii) the making of a demand for payment against or the exercise of any remedy against any Non-Debtor Tribune Party or a Non-Debtor Tribune Party's assets by or on behalf of any holder of any debt for borrowed money of an amount greater than $10 million.

"Forbearance Period" means, with respect to any Non-Debtor Tribune Party, the period from and including the Forbearance Effective Date to but excluding the earliest of:

(i)  the date on which the Agent delivers to such Non-Debtor Tribune Party a written notice terminating the Forbearance Period with respect to such Tribune Party pursuant to Section 2(b) hereof;

(ii)  the date that is five (5) days following the delivery by the Agent to such Non-Debtor Tribune Party of a written notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party pursuant to Section 2(c) hereof;

(iii)  the date on which any petition for relief under the Bankruptcy Code is filed by or against such Non-Debtor Tribune Party, whether or not there has been an order for relief;

(iv) the date that is ten (10) days following the delivery by the Borrower to the Agent of a written notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party pursuant to Section 2(d) hereof; and

(v)  the first anniversary of the Forbearance Effective Date (the "Initial Scheduled Termination Date"), as such date may be extended from time to time by Participant Lenders constituting the Required Lenders (the Initial Scheduled Termination and any subsequent date to which the date referred to in this clause (iv) may be extended being called a "Scheduled Termination Date").

2

TRB_LD000045
CONFIDENTIAL

TRB_LD000045

"Material Disposition" means (a) any conveyance, sale, lease, sublease, assignment, transfer or other disposition (including by way of merger or consolidation and including any Sale and Lease-Back Transaction and any Disposition) of any property (excluding sales of inventory and dispositions of cash and Cash Equivalents in each case, in the ordinary course of business), by any Non-Debtor Tribune Party or (b) any issuance or sale of any Equity Interests of any Non-Debtor Tribune Party (including any redemption of partnership, membership or other Equity Interests having the effect of reducing the interest of such Tribune Party in any other Person), in each case to any Person; provided, that notwithstanding anything herein to the contrary, Material Disposition shall not include (x) any conveyance, sale, lease, sublease, assignment, transfer or other disposition of property with an aggregate fair market value of less than $10 million, or (y) any disposition of obsolete equipment, inventory, or intellectual property.

"Participant Lender" means (i) any Lender that executes this Forbearance Agreement and any of such Lender's successors and assigns that executes a Joinder to this Forbearance Agreement pursuant to Section 5 hereof and (ii) any Lender that executes a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit A (whether before or after the Forbearance Effective Date), *provided that* if a Lender notifies the Borrower and the Agent in writing prior to any Scheduled Termination Date that it intends to cease to be a Participant Lender as of such Scheduled Termination Date, such Lender shall cease to be a Participant Lender effective as of such Scheduled Termination Date.

2.    Forbearance. (a)  Each Participant Lender agrees that, with respect to each Non-Debtor Tribune Party, until the expiration or termination of the Forbearance Period with respect to such Non-Debtor Tribune Party, the Participant Lenders will forbear, and each Participant Lender hereby instructs the Agent to forbear (in each case subject to the terms and conditions hereof) from (i) demanding payment of any amount due under the Guarantee Agreement from such Non-Debtor Tribune Party or (ii) taking, exercising, instructing, voting to instruct or requesting that the Agent take or exercise, and hereby instructs the Agent not to take or exercise, any remedies under the Existing Agreements (including, without limitation, pursuant to Section 7 of the Guarantee Agreement) or otherwise against such Non-Debtor Tribune Party (including, without limitation, enforcement or collection actions, the exercise of rights of setoff or other remedies available for the collection of amounts due pursuant to applicable law).

(b)    Upon the occurrence and during the continuance of a Forbearance Default, the Agent (i) may or (ii) if requested in writing by the Required Lenders, shall deliver to any Non-Debtor Tribune Party a notice immediately terminating the Forbearance Period with respect to such Non-Debtor Tribune Party.

(c)    At any time, upon five (5) days prior notice delivered to any Non-Debtor Tribune Party, the Agent (i) may or (ii) if requested in writing by the Required Lenders, terminate the Forbearance Period with respect to such Non-Debtor Tribune Party.

(d)    At any time, upon ten (10) days prior notice delivered to the Agent, the Borrower may terminate the Forbearance Period either (i) with respect to any Non-Debtor Tribune Party or (ii) with respect all the Non-Debtor Tribune Parties.

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000046
CONFIDENTIAL

TRB_LD000046

(e)    Forthwith upon the expiration or termination of the Forbearance Period with respect to any Non-Debtor Tribune Party, the agreement of the Participant Lenders pursuant to Section 2(a) hereof to forbear from *inter alia* taking or exercising certain actions and remedies and instructing the Agent not to take or exercise certain actions and remedies, in each case with respect to such Non-Debtor Tribune Party, shall terminate without the requirement of any demand, presentment, protest or notice of any kind (other than the notices required by this Forbearance Agreement), all of which such Non-Debtor Tribune Party hereby waives. The Tribune Parties agree that the Agent and, to the extent permitted by the Existing Agreements, each Participant Lender may at any time thereafter proceed to exercise against such Non-Debtor Tribune Party any and all of their respective rights and remedies under the Guarantee Agreement and/or applicable law, including, without limitation, their respective rights and remedies in connection with any or all defaults and Events of Default.

(f)    For the avoidance of doubt, nothing herein limits, or constitutes a waiver of, the rights of the Agent or the Lenders, including, without limitation, during the Forbearance Period, to take any action to preserve or exercise or enforce rights or remedies available under the Existing Agreements and applicable law against parties other than the Non-Debtor Tribune Parties ("Third Party Rights"), subject, in the case of the Debtors, to applicable bankruptcy law, including 11 U.S.C. §362.  For purposes of the foregoing, the Tribune Parties acknowledge and agree that upon the Forbearance Effective Date this Forbearance Agreement shall be deemed to constitute the making of any necessary demand or the giving of any necessary notice for purposes of preserving and/or permitting the exercise of any such Third Party Rights of the Agent and the Lenders.

(g)    Execution of this Forbearance Agreement constitutes an instruction by the Participant Lenders that the Agent act in accordance with its terms. Notwithstanding the foregoing (and without limitation of the rights of any Tribune Party to pursue all available remedies available to it under applicable law against a Participant Lender which may result from breach or non-performance by any Participant Lender of this Forbearance Agreement or any of such Participant Lender's obligations hereunder), the Agent shall have no liability to any party for taking any action at the request of the Required Lenders consistent with this Forbearance Agreement. Notwithstanding the foregoing, each Participant Lender hereby agrees not to take any action, including without limitation, instructing the Agent to take any action, inconsistent with or in breach of this Forbearance Agreement. The parties acknowledge and agree that any actions taken or not taken by the Agent in accordance with this Forbearance Agreement are at the request of and with the consent of the Required Lenders under the Credit Agreement, and the Agent may rely thereon for purposes of Article 7 of the Credit Agreement.

(h)    The Tribune Parties acknowledge and agree that the agreement of the Participant Lenders hereunder to forbear from, and to request the Agent to forbear from, exercising certain of their rights and remedies under the Guarantee Agreement shall not constitute a waiver of such rights and remedies, and that except as expressly provided herein, the Lenders expressly reserve all rights and remedies that the Agent and the Lenders now or may in the future have under the Guarantee Agreement and/or applicable law in connection with all defaults and Events of Default (including, without limitation, the right to obtain financial and other information regarding the Borrower and its Subsidiaries in connection with the Chapter 11 Proceeding, including through compulsory process).

4

(NY) 27011/161/MISC08/Forbearance.agt.doc

TRB_LD000047
CONFIDENTIAL

TRB_LD000047

3.    **Forbearance Covenants**.

Until the expiration or termination of the Forbearance Period with respect to all the Non-Debtor Tribune Parties:

(a) Without waiving any other rights or remedies the Lenders or the Agent may have, each Tribune Party hereby agrees, jointly and severally, to pay, (i) all reasonable fees, costs and expenses incurred prior to the end of the Forbearance Period with respect to any Tribune Party of: (A) the Agent (i.e. the reasonable fees, costs and expenses of Davis Polk & Wardwell, as special counsel to the Agent ("DPW"), Richards, Layton & Finger, P.A., as Delaware counsel to the Agent, FTI Consulting, Inc., as financial advisor to the Agent, and, if and when retained by the Agent, a firm providing investment banking advisory services to the Agent), (B) Kramer Levin Naftalis & Frankel LLP ("KLNF"), as counsel to certain Lenders (the "Ad Hoc Lenders"), including certain of the Steering Lenders, and (C) special Delaware counsel, if any, retained by the Ad Hoc Lenders, and (ii) all reasonable out-of-pocket expenses of each of the Steering Lenders incurred in connection with their participation as a Steering Lender prior to the end of the Forbearance Period with respect to any Tribune Party (i.e. reasonable expenses for travel, food and lodging) (the foregoing fees and expenses, shall hereinafter be referred to, collectively or individually, as "Fees and Costs"). The Tribune Parties shall pay the Fees and Costs promptly following the expiration of 10 days after invoices containing detailed documentation evidencing outstanding Fees and Costs have been provided to the Tribune Parties. Copies of such invoices shall also be provided to the United States Trustee.

(b)    Each Tribune Party shall promptly give to the Agent notice in writing of the occurrence of any Forbearance Default, or the occurrence of any event or circumstance which with the passage of time or giving of notice or both would constitute a Forbearance Default.

(c)    The Tribune Parties shall provide the Agent and the Steering Lenders with timely updates comparable to that which is provided to the UCC on the progress of negotiations in respect of all Material Dispositions and other material transactions outside the ordinary course of business contemplated by the Borrower or any of its Subsidiaries (including, without limitation, any disposition or other material transaction directly or indirectly involving any interests in or assets of Chicago National League Ball Club, Inc. or Tribune (FN) Cable Ventures, Inc.).

(d)    The Tribune Parties shall provide financial and other information to the Agent, the Steering Lenders and their respective agents and legal and financial professionals comparable to that which is provided to the UCC.

(e)    Upon the prior request of the Agent, the Steering Lenders or their respective agents and legal or financial professionals, the Tribune Parties shall provide such parties with reasonable access to, and shall as promptly as practicable schedule meetings and conference calls with, counsel and any financial advisors or restructuring consultants retained by the Debtors, and shall also provide the Agent and the Steering Lenders with access to the management personnel of the Debtors comparable to the access to such management personnel as is provided to the UCC.

5

TRB_LD000048
CONFIDENTIAL

TRB_LD000048

(g)     Except with the prior consent of the Required Lenders, approval of the Bankruptcy Court, or upon not less than 10 days prior written notice to the Agent, the Borrower nor any Guarantor shall directly or indirectly pay any cash dividend on account of an equity interest in the entity paying such cash dividend.

(h)     All consideration received in connection with a Material Disposition shall be retained by the entity making such Material Disposition and none of such consideration shall be transferred to any other Person (including, without limitation, the Borrower or any of its subsidiaries or affiliates) without the prior written consent of the Agent and the Required Lenders or approval of the Bankruptcy Court, except upon not less than 10 days prior written notice to the Agent.

(i)     The cash management system of the Borrower and its Subsidiaries shall be maintained in a manner consistent with the order of the Bankruptcy Court.

(j)     Except with the prior consent of the Required Lenders, approval of the Bankruptcy Court, or upon not less than 10 days prior written notice to the Agent, each of the Non-Debtor Tribune Parties shall comply with the provisions of Section 5.01(h) and Sections 5.02(a), (c), (f), (h) and (k) of the Credit Agreement (as if such Sections referred to such Non-Debtor Tribune Party instead of to the Borrower).

In addition to the foregoing, the Tribune Parties shall pay the reasonable Fees and Costs incurred prior to the termination of the Forbearance Period, to the extent unpaid as of the termination of the Forbearance Period, promptly following the expiration of 10 days after invoices containing detailed documentation evidencing such Fees and Costs have been provided to the Tribune Parties.

4.     **Conditions to Effectiveness**.  This Forbearance Agreement shall become effective in accordance with its terms on the date (the "Forbearance Effective Date") on which each of the following shall have occurred and the Agent shall have received evidence reasonably satisfactory to it of such occurrence:

(i)     this Forbearance Agreement shall have been executed by each Tribune Party and Participant Lenders constituting the Required Lenders;

(ii) the Bankruptcy Court has entered an order authorizing the Debtors to enter into and perform in accordance with this Forbearance Agreement.

5.     **Payment Blockage Notice**.  The Tribune Parties acknowledge that a payment default under the Credit Agreement has occurred and is continuing.  Either prior to or, in any event, no later than twenty four (24) hours after, this Forbearance Agreement becomes effective, the Agent shall deliver to the Merrill Lynch Capital Corporation, as Administrative Agent (the "Bridge Agent") under the Senior Unsecured Interim Loan Agreement dated as of December 20, 2007 among the Borrower, the lenders from time to time party thereto, the Bridge Agent, and certain other parties thereto (as the same has been and may be further amended, modified or supplemented from time to time, the "Bridge Agreement") a Payment Blockage Notice in connection with each of the outstanding Guarantees (as defined in the Bridge Agreement). Thereafter, the Agent shall not rescind such Payment Blockage Notice during the Forbearance

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000049
CONFIDENTIAL

TRB_LD000049

Period. The Required Lenders, by executing this agreement, hereby authorize the Agent to deliver such Payment Blockage Notice.

6.     **Assignments.** Each Participant Lender hereby agrees, for so long as it is a Participant Lender, (a) not to assign or otherwise transfer, during the Forbearance Period, all or a portion of its rights and obligations under the Credit Agreement (including all or a portion of its Loans at the time owing to it) except to a Person who (i) is already a Participant Lender or (ii) contemporaneously with any such assignment or transfer, agrees to be bound as a Participant Lender by executing and delivering to the Agent a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit B and (b) prior to the effectiveness of any such assignment or other transfer, to provide the Agent with a certificate in the form attached hereto as Exhibit C certifying that the applicable assignee or transferee satisfies the conditions of this Section 6 and, in the case of an assignee or transferee that has executed a Joinder, attaching a copy of such executed Joinder to such certificate. The Agent shall promptly inform the Tribune Parties of any of the foregoing assignments that occur during the Forbearance Period, and shall provide the Tribune Parties with copies of the aforementioned Joinder and certificate. Each Participant Lender agrees that, notwithstanding anything to the contrary in the Credit Agreement, (x) any purported assignment or transfer that fails to comply with this Section 6 shall be null and void and (y) the Agent shall be entitled to withhold its consent to, and shall not be required to give effect to, any purported assignment or transfer of a Participant Lender's Loans or other rights or obligations under the Loan Documents if the conditions set forth in this Section 6 are not satisfied.

7.     **Amendments.** Except as expressly provided herein, no modification, amendment or waiver of any provision of this Forbearance Agreement shall be effective unless the same shall be in writing and signed by the Tribune Parties, Participating Lenders constituting the Required Lenders and the Agent. On the Forbearance Effective Date, the Guarantee Agreement shall be deemed to be amended by this Forbearance Agreement to incorporate the terms hereof (including, without limitation, the Lenders' agreement to forebear pursuant to Section 2(a) hereof). For the avoidance of doubt, any other modification, amendment or waiver of any provision of the Guarantee Agreement (including, without limitation, as amended hereby) shall continue to be governed by the applicable provisions of the Guarantee Agreement.

8.     **No Waiver; Remedies.** No failure on the part of any Lender or the Agent to exercise, and no delay in exercising, any right hereunder or under the Guarantee Agreement or any Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

9.     **Confidentiality.** The parties hereto hereby agree that Section 8.08 of the Credit Agreement shall apply to all Borrower Information provided to the Agent or any Participant Lender pursuant to this Forbearance Agreement. In addition, the Agent and each Steering Lender agree to the following:

(a)     The Agent and each Steering Lender acknowledges that from time to time the Debtors may decide that it is in the Debtors' best interests not to share Borrower Information

(NY) 27011/161/MISC08/Forbearance.agt.doc

TRB_LD000050
CONFIDENTIAL

TRB_LD000050

directly with the Agent and the Steering Lenders and under such circumstances request that certain Borrower Information may be disclosed on a "professional eyes only" basis. In such event, the Agent and Steering Lenders agree that they shall direct their counsel or financial advisors to limit any disclosure of such Borrower Information as requested by the Debtors; provided, however, that no such designation or limitation will in any manner restrict or limit the right of the Agent or any Steering Lenders to seek and obtain any information (including, without limitation, any information so designated or so limited) in the manner contemplated by Section 9(d) of this Forbearance Agreement.

      (b)    In the event that the Agent or a Steering Lender (or one of their agents or professionals) is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, or any other process employed in connection with a judicial, investigatory or administrative proceeding) to disclose any Borrower Information, and subject in all cases to the second sentence of this Section 9(b), it is agreed that the party will give the Debtors notice of any such request or requirement within five (5) calendar days so that the Debtors may seek an appropriate protective order or other remedy to assure that the Borrower Information will be accorded confidential treatment  Nothing herein shall prevent disclosure of Borrower Information if such disclosure is permitted or required by an administrative or judicial order.

      (c)    Nothing in this Forbearance Agreement shall prevent or limit any right of the Agent or any Steering Lender to obtain reports, writings or other information, through subpoena, formal discovery or other process, even if such materials were previously released to the Agent or Steering Lender as confidential Borrower Information or were designated as "professional eyes only" or otherwise restricted by the Debtors pursuant to Section 8(a) above. With respect to any such discovery effort any of the Debtors may assert any objections to the production of such materials, even if such materials were previously released to the Agent or Steering Lenders as confidential Borrower Information.

      (d)    In the event that the Agent or a Steering Lender intends to offer into evidence or otherwise use confidential Borrower Information, then the Agent or such Steering Lender shall first seek an order providing that such information shall be filed under seal and shall give notice of such motion to the Debtors. If the Agent, a Steering Lender or the Debtors do not obtain an order authorizing such information to be filed under seal despite their commercial reasonable and good faith efforts, then using the confidential Borrower Information as proposed in the notice shall not constitute a breach of this Forbearance Agreement.

      (e)    The Tribune Parties will be entitled to specific performance, injunctive and other equitable relief as remedies for any breach of Section 9 of this Forbearance Agreement, in addition to all other remedies available to any of them at law.

    10.    **Miscellaneous.**

      (a)    Except to the extent hereby amended, each Non-Debtor Tribune Party hereby affirms that each such Non-Debtor Tribune Party continues to guarantee the Guaranteed Obligations in accordance with the terms of the Guarantee Agreement.

8

TRB_LD000051
CONFIDENTIAL

TRB_LD000051

(b)     No Person other than the parties hereto and any other Lender shall have any rights hereunder or be entitled to rely on this Forbearance Agreement, and all third-party beneficiary rights are hereby expressly disclaimed.

(c)     Each Tribune Party agrees that the Borrower's obligations to reimburse certain Fees and Costs contemplated by Section 8.04 of the Credit Agreement and in Section 3(a) hereof shall extend to the preparation, execution and delivery of this Forbearance Agreement (including any amendments or modifications hereto, waivers hereunder and administration hereof), including the reasonable fees and disbursements of DPW and KLNF.

(d)     The parties hereto hereby agree that Section 7 of the Credit Agreement (except for Section 7.05 with respect to the Debtors) shall apply to this Forbearance Agreement and all actions taken or not taken by the Agent or any Participant Lender contemplated hereby.

(e)     Nothing in this Forbearance Agreement shall be deemed, asserted or construed to impair or prejudice the rights of the Agent and the Participant Lenders to (i) appear and be heard on any issue, or to object to any relief sought, in the Chapter 11 Proceeding or (ii) enforce the provisions of this Forbearance Agreement or to seek damages or equitable relief in connection with a breach or anticipated breach hereof.

(f)     All notices and other communications in respect of this Forbearance Agreement shall be delivered in the manner and to the addresses specified in Section 8.02 of the Credit Agreement; *provided* that all notices and communications to any Tribune Party shall be delivered, mailed or sent c/o Tribune Company to: 435 North Michigan Avenue, 6th Floor, Chicago, Illinois 60611, [Attention of General Counsel (Telecopy No. (312) 222-4206), with a copy to Sidley Austin LLP, at 1 South Dearborn Street, Chicago, Illinois 60603, Attention: Robert Lewis, Esq. (Telecopy No. (312) 853-7036; Email: rlewis@sidley.com)].

(g)     If any provision of this Forbearance Agreement shall be held to be invalid, illegal or unenforceable in any jurisdiction, such provision shall, solely as to such jurisdiction and such provision, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof.

(h)     Section headings used herein are for convenience only and are not to affect the construction of or be taken into consideration in interpreting this Forbearance Agreement.

(i)     This Forbearance Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. A facsimile or .pdf copy of a counterpart signature page shall serve as the functional equivalent of a manually executed copy for all purposes.

(j)     THIS FORBEARANCE AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

{NY} 27011/161/MISC08/Forbearance.agt.doc

TRB_LD000052
CONFIDENTIAL

TRB_LD000052

(k)    EACH OF THE TRIBUNE PARTIES, THE AGENT AND EACH
PARTICIPANT LENDER HEREBY CONSENT TO THE JURISDICTION OF THE
BANKRUPTCY COURT FOR THE PURPOSE OF ADJUDICATING THEIR RESPECTIVE
RIGHTS WITH RESPECT TO THIS FORBEARANCE AGREEMENT AND ALSO HEREBY
IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION,
PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS
FORBEARANCE AGREEMENT.

[*SIGNATURE PAGES FOLLOW*]

(NY) 27011/161/MISC08/forbearance.agt.doc

TRB_LD000053
CONFIDENTIAL

TRB LD000053

**EACH OF THE ENTITIES LISTED
ON SCHEDULE I HERETO,**

By: _____

       Name:

       Title:

TRB_LD000054
CONFIDENTIAL

TRB LD000054

**NAME OF PARTICIPANT LENDER:**

By: _____

      Name:

      Title:

TRB_LD000055
CONFIDENTIAL

TRB LD000055

Schedule I

<u>Tribune Parties</u>

(NY) 27011/161/MISC08/forbearance.xgt.doc

TRB_LD000056
CONFIDENTIAL

TRB_LD000056

**Schedule II**

<u>Steering Committee</u>

14

LA1 1374946v.5
[NY] 27011/161/MISC08/forbearance.agt.doc

TRB_LD000057
CONFIDENTIAL

TRB_LD000057

| From: | Liebentritt, Don |
|---|---|
| Sent: | Sunday, January 25, 2009 8:40 PM (GMT) |
| To: | Larsen, Nils <nlarsen@tribune.com>; 'bkrakauer@sidley.com'; Bigelow, Chandler <CBigelow@tribune.com>; Eldersveld, David <DEldersveld@Tribune.com> |
| Subject: | Re: |

**Redacted**

------------------------------
Sent using BlackBerry

**From:** Larsen, Nils
**To:** 'bkrakauer@sidley.com' ; Bigelow, Chandler; Liebentritt, Don; Eldersveld, David
**Sent:** Sun Jan 25 13:11:21 2009
**Subject:** Fw:

**Redacted**

Nils

**From:** Gavin Baiera
**To:** NLarsen@egii.com
**Sent:** Sun Jan 25 11:14:20 2009
**Subject:**

Nils,

I tried to call your cell. I heard the counter proposal, which has the company simply make payments under the guarantee demands. There are clear benefits to this approach (no court approval/notice), but the downside is it leaves the senior lenders exposed if the payments stop or the non-debtors file. I am willing to push the group on this, but I don't want to negotiate the evergreen amount under this type of arrangement as it is our only protection. At the end of the day the 8.5mm gives us some downside protection, and is really our money eventually anyway. Also, the evergreen is not relevent if you don't ever expect to stop making payments. Which we have been assured is not a likely scenario since it would mean the company was at odds with the lenders. Please advise so I can go back to the group, and try to support this.

Regards,

Gavin

The information contained in this e-mail message is intended only for the
personal and confidential use of the recipient(s) named above. If you
have received this communication in error, please notify us immediately by
e-mail, and delete the original message.



TRB_LD002356
CONFIDENTIAL
TRB_LD002356

**From:**   Larsen, Nils [nlarsen@tribune.com]
**Sent:**   Thursday, January 22, 2009 4:50 PM
**To:**     MIRIAM.KULNIS@chase.com
**Cc:**     Bigelow, Chandler; Nils Larsen
**Subject:** RE: Forbearance Issues

Miriam:

I just heard from Moelis with regard to the UCC's decision to allow the process on the Cubs to move forward.  We understand you will send us a letter reserving rights and are interested in continued exchange of information.  I appreciate your confidence and support in this regard.  You have my commitment to work closely with the professionals and others through the process.

I understand the concern surrounding the inclusion of the Debtors.  We can discuss further in the morning.  The intent of our mark-up is not to proffer something the court and the UCC are likely to reject.  We are not being cute on the fee question.

Thanks for the heads-up and we will be prepared to address tomorrow morning.

Nils

**From:** MIRIAM.KULNIS@chase.com [mailto:MIRIAM.KULNIS@chase.com]
**Sent:** Thursday, January 22, 2009 4:42 PM
**To:** Larsen, Nils
**Cc:** Bigelow, Chandler; Nils Larsen
**Subject:** RE: Forbearance Issues

well I can tell you that one of the big issues is the desire to make the Debtors parties to the agmt. I think the SC feels that it's best if only non-debtors are parties and it would be more likely to get approved by the court if the debtors were not a party. We are worried that if the debtors are parties the UCC may object to it and it would get denied. I will be frank (as I always am with you) that some are wondering if the company really wants the court to reject this so that the company has an excuse not to pay the fees. So that's a big heads up and you should think about that in advance of tomorrow's call.

Miriam T. Kulnis
Executive Director
JPMorgan Chase Bank
277 Park Avenue - 8th Floor
New York, NY 10172
Phone (212)622-4526
Fax (212) 622-4557

"Larsen, Nils" <nlarsen@tribune.com>                    To <MIRIAM.KULNIS@chase.com>, "Nils Larsen" <nlarsen@egii.com>, "Bigelow, Chandler"
                                                            <CBigelow@tribune.com>
01/22/2009 05:02 PM                                     cc
                                                        Subject RE: Time change

Miriam:

That was my understanding on time throughout.  We look forward to the

10/29/2009



TRB_LD000073
CONFIDENTIAL

TRB_LD000073

discussion.

I believe that Bryan will be reaching out to DPW to ascertain a sense
for the open items to help make the call more productive tomorrow if
possible.

Nils

-----Original Message-----
From: MIRIAM.KULNIS@chase.com [mailto:MIRIAM.KULNIS@chase.com]
Sent: Thursday, January 22, 2009 11:49 AM
To: Nils Larsen; Bigelow, Chandler
Subject: Time change

Sorry w regard to my prior email we are requesting a call at 10:30 AM
eastern.

------------------------------------------

This transmission may contain information that is privileged,
confidential, legally privileged, and/or exempt from disclosure under
applicable law.  If you are not the intended recipient, you are hereby
notified that any disclosure, copying, distribution, or use of the
information contained herein (including any reliance
thereon) is STRICTLY PROHIBITED.  Although this transmission and any
attachments are believed to be free of any virus or other defect that
might affect any computer system into which it is received and opened,
it is the responsibility of the recipient to ensure that it is virus
free and no responsibility is accepted by JPMorgan Chase & Co., its
subsidiaries and affiliates, as applicable, for any loss or damage
arising in any way from its use.
If you received this transmission in error, please immediately contact
the sender and destroy the material in its entirety, whether in
electronic or hard copy format. Thank you.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED. Although this transmission and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by JPMorgan Chase & Co., its subsidiaries and affiliates, as applicable, for any loss or damage arising in any way from its use. If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format. Thank you.

10/29/2009

TRB_LD000074
CONFIDENTIAL

TRB_LD000074

**From:** tribuneco.dpw-bounces@dpw.com on behalf of Smit, Daniel [daniel.smit@dpw.com]
**Sent:** Friday, January 30, 2009 12:08 PM
**To:** 'Krakauer, Bryan'
**Cc:** Grant, Jacqueline M.; Lantry,Kevin T.; 'Sharret,Jennifer'; Kolevzon,Peter S.; 'kevin.c.kelley@jpmorgan.com'; Mannal, Douglas; MIRIAM.KULNIS@chase.com; tribuneco.dpw; Mayer,Thomas Moers; Kansa, Ken
**Subject:** Tribune Payment Letters

**Attachments:** Agent.Payment.Letter.doc; Steering.Lender.Payment.Letter.doc; Payment.Blockage.Notice.doc

Bryan,

As discussed, we attach draft payment letters and a draft payment blockage notice for your review and comments. Please note that these remain subject to comments from JPM and other Steering Committee members.

Further, obviously the entire process remains subject to discussions about this approach with the UCC.

Regards

Danie Smit
Davis Polk & Wardwell
450 Lexington Ave New York, NY 10017
Tel. (212) 450-4947 / Fax (212) 450-3947
e-mail: daniel.smit@dpw.com

 Agent.Payment.Letter.doc

 Payment.Blockage.Notice.doc

 Steering.Lender.Payment.Letter.doc



Larsen
EXHIBIT NO. 13
2/1/10
P. CAMPBELL

Confidential

JPM2_00000250

[JPM LETTERHEAD]

January [ ], 2009

Non-Debtor Guarantors listed on Schedule I hereto
435 North Michigan Avenue
Chicago, Illinois 60603

Re:    Costs and Expenses of JPMorgan Chase Bank N.A., as Agent

Ladies and Gentlemen:

Reference is hereby made to (i) the Credit Agreement, dated as of May 17, 2007, among Tribune Company (the "**Borrower**"), the lenders from time to time party thereto (the "**Lenders**"), the undersigned, as Administrative Agent (the "**Agent**"), and certain other parties thereto (as amended, restated, modified and/or supplemented from time to time, the "**Credit Agreement**") and (ii) the Guarantee Agreement, dated as of May 17, 2007 (the "**Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Agent, as Administrative Agent for the Lenders.

As you are aware, the Agent has incurred and continues to incur out-of-pocket costs and expenses that are reimbursable pursuant to Section 8.04 of the Credit Agreement (including, without limitation, the fees and expenses of Davis Polk & Wardwell, special counsel to the Agent, Richards, Layton & Finger, P.A., Delaware counsel to the Agent, FTI Consulting, Inc., financial advisor to the Agent, and the Blackstone Group, investment banking advisor to the Agent), (such costs and expenses, collectively, the "**Costs and Expenses**"), which constitute Obligations under the Guarantee.

Pursuant to our recent discussions, the Agent hereby requests that the non-debtor Subsidiaries of the Borrower party to the Guarantee and listed on Schedule I hereto pay to the Agent pursuant to the guarantee (i) the Agent's reasonable Costs and Expenses within 10 days after receipt of any invoice therefor and (ii) promptly upon receipt of this letter, $7.5 million for the purpose of advances by the Agent to cover any such Costs and Expenses not paid pursuant to clause (i) of this paragraph.

Very truly yours,

JPMORGAN CHASE BANK, N.A., as

Confidential

Agent

By: _____
      Name:
      Title:

2

Confidential

JPM2_00000252

<u>**Schedule I**</u>

<u>Non-Debtor Guarantors</u>

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

(NY) 27011/161/MISC09/Agent.Payment.Letter.doc                    01/27/09 12:53 PM

Confidential

JPM2_00000253

## PAYMENT BLOCKAGE NOTICE

January [  ], 2009

Merrill Lynch Capital Corporation, as Agent
Agency Services
600 E. Las Colinas Blvd., Suite 1300
Irving, Texas 75039
Telecopy No. (972) 401-8555
Email: rachelsuiter@loan-agents.com

Ladies and Gentlemen:

We, as Administrative Agent (the "**Senior Secured Agent**") for the lenders (the "**Senior Secured Lenders**") from time to time party to the Credit Agreement, dated as of May 17, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "**Senior Secured Agreement**"), among Tribune Company, as Borrower (the "**Borrower**"), the Senior Secured Lenders, the undersigned, as the Senior Secured Agent, and certain other parties thereto refer to (i) the Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "**Bridge Agreement**"), among the Borrower, certain lenders (the "**Bridge Lenders**") from time to time party thereto, Merrill Lynch Capital Corporation, as Administrative Agent for the Bridge Lenders (the "**Bridge Agent**"), and certain other parties thereto and (ii) the Guarantee Agreement, dated as of December 20, 2007 (the "**Bridge Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Bridge Agent, as Administrative Agent for the Bridge Lenders. Capitalized terms used but not defined in this notice shall have the meanings ascribed to such terms in the Bridge Agreement and the Bridge Guarantee.

Pursuant to Section 3 of the Bridge Guarantee, we hereby notify you that a payment default has occurred under Section 6.01(a) of the Senior Secured Agreement (the "**Payment Default**").

This notice constitutes a Payment Blockage Notice for purposes of the Bridge Guarantee, and, as such, no Guarantor may make any payment or distribution of any kind or character with respect to any Guaranteed Obligations or the Advances under the Bridge Agreement or acquire any such Advances for cash or property or otherwise until the date on which the Payment Default under the Senior Secured Agreement is cured or waived.

Very truly yours,

Confidential

JPM2_00000254

JPMORGAN CHASE BANK, N.A., as
Agent

By: _____
     Name:
     Title:


cc:    Cahill Gordon & Reindel LLP,
      80 Pine Street
      New York, New York 10005
      Telecopy No. (212) 269-5420
      Attention: Jonathan A. Schaffzin and William J. Miller
      Email: jschaffzin@cahill.com
            wmiller@cahill.com

cc:    Kaye Scholer LLP,
      425 Park Avenue
      New York, New York 10022
      Tel: (212) 836-8000
      Fax: (212) 836-8689
      Attention: Madlyn Primoff and Margot B. Schonholtz
      Email: mprimoff@kayescholer.com
            mschonholtz@kayescholer.com

2

Confidential                                                  JPM2_00000255

January [  ], 2009

Non-Debtor Guarantors listed on Schedule I hereto
435 North Michigan Avenue
Chicago, Illinois 60603

Re:    Costs and Expenses of the Steering Lenders

Ladies and Gentlemen:

Reference is hereby made to (i) the Credit Agreement, dated as of May 17, 2007, among Tribune Company (the "**Borrower**"), the lenders from time to time party thereto, including the undersigned, (the "**Lenders**"), JPMorgan Chase Bank, N.A., as Administrative Agent (the "**Agent**"), and certain other parties thereto (as amended, restated, modified and/or supplemented from time to time, the "**Credit Agreement**") and (ii) the Guarantee Agreement, dated as of May 17, 2007 (the "**Guarantee**"), among the Borrower, each of the subsidiaries of the Borrower listed on Annex I thereto and the Agent, as Administrative Agent for the Lenders. Capitalized terms used not defined in this letter shall have the meanings ascribed to such terms in the Credit Agreement.

Due to the commencement of cases under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware by the Borrower and certain of its Subsidiaries, the Borrower and the Agent concluded it was appropriate to designate certain Lenders (such Lenders, the "**Steering Lenders**") representative of the composition of the Lender group as a whole to form a "steering committee". The Agent and the Steering Lenders are to act as a focal point for regular communications and negotiations among the Borrower, its related debtor Subsidiaries and the Lenders.

As you are aware, certain Lenders have incurred and continue to incur out-of-pocket costs and expenses that are reimbursable pursuant to Section 8.04 of the Credit Agreement, including, without limitation, (i) the fees and expenses of Kramer Levin Naftalis & Frankel LLP ("**KLNF**"), which has been engaged as counsel to both the Steering Lenders listed on Schedule II hereto and certain other Lenders listed on Schedule III hereto (collectively, the "**Ad Hoc Lenders**"), who collectively hold in excess of $[ ] of claims under the Credit Agreement, and (ii) out-of-pocket expenses of each of the Steering Lenders incurred in connection with their participation as a Steering Lender. All of the foregoing costs and expenses are referred to collectively as the "**Costs and Expenses**".

Pursuant to our recent discussions, the Steering Lenders hereby request that the non-debtor Subsidiaries of the Borrower party to the Guarantee and listed on Schedule I hereto pay to certain of the Lenders pursuant to the Guarantee (i) the Steering Lenders' and Ad Hoc Lenders' reasonable Costs and Expenses within 10 days after their receipt of any invoice therefor and (ii) promptly upon

Confidential

JPM2_00000256

receipt of this letter, $1 million for the purpose of advances by the Steering Lenders and Ad Hoc Lenders to cover any such Costs and Expenses of the Steering Lenders and Ad Hoc Lenders not paid pursuant to clause (i) of this paragraph.

Very truly yours,

[ANGELO GORDON]

By: _____
    Name:
    Title:


BANK OF AMERICA, N.A.

By: _____
    Name:
    Title:


[DAVIDSON KEMPNER]

By: _____
    Name:
    Title:


[EATON VANCE]

By: _____
    Name:
    Title:


[KKR]

By: _____
    Name:
    Title:

(NY) 27011/161/MISC09/Steering.Lender.Payment.Letter.doc

01/27/09 5:41 PM

Confidential

JPM2_00000257

[OAKTREE]

By: _____
      Name:
      Title:

3

Confidential

JPM2_00000258

<u>**Schedule I**</u>

<u>Non-Debtor Guarantors</u>

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

4

Confidential                                                                                                           JPM2_00000259

<u>**Schedule II**</u>

<u>Steering Lenders that have engaged Kramer Levin Naftalis & Frankel LLP as counsel</u>

[Angelo Gordon]
[Davidson Kempner]
[KKR]
[Oaktree]

5

01/27/09 5:41 PM

Confidential

JPM2_00000260

**From:** Krakauer, Bryan <bkrakauer@sidley.com>
**Sent:** Wednesday, February 11, 2009 9:53 PM (GMT)
**To:** Larsen, Nils <nlarsen@tribune.com>; Eldersveld, David <DEldersveld@Tribune.com>; Bigelow, Chandler <CBigelow@tribune.com>; Liebentritt, Don <dliebentritt@Tribune.com>
**Subject:** FW: Tribune: Senior Credit Facility Reimbursement

████████████████████████████████████

**From:** Schaible, Damian S. [mailto:damian.schaible@dpw.com]
**Sent:** Wednesday, February 11, 2009 3:46 PM
**To:** Seife, Howard; 'LeMay, David'; 'Deutsch, Douglas'
**Cc:** Krakauer, Bryan; 'MIRIAM.KULNIS@chase.com'; Kevin.C.Kelley@chase.com; Bernstein, Donald S.; Dworkin, Meyer C.; Smit, Daniel
**Subject:** Tribune: Senior Credit Facility Reimbursement

Howard, David and Doug --

As discussed, I wanted to send you an email to confirm certain information that we had previously provided you regarding the payment of certain fees/expenses of the Agent and certain lenders under the Senior Credit Facility by non-debtor guarantors under that facility pursuant to the terms of the guaranty entered into by those entities and to provide more detail with respect to amounts.

The professionals for which we would submit invoices at this time would be Davis Polk (counsel to the Agent), Richards, Layton & Finger, P.A. (Delaware counsel to the Agent), FTI (financial advisor), Blackstone (investment banker) and Kramer Levin (counsel to certain Steering Committee members and a number of other lenders).

Each of the professionals above bills hourly, except Blackstone, which will bill $200,000 per month and a restructuring fee of $5,500,000 upon consummation of a plan of reorganization in the Tribune cases (with the monthly fees fully creditable against the restructuring fee after 12 months).  A retainer of $8.5 million in the aggregate will be paid for all professionals to cover fees/expenses that might later be unpaid.  By way of information, we estimate that the January fees for the hourly professionals will be approximately as follows: Davis Polk: $550,000  FTI: $300,000  Kramer Levin: $167,000 (we are collecting information for an estimate of Richards, Layton's fees for January and we will revert with that when we can).

As discussed, while the fees/expenses discussed herein are to be paid by non-debtor entities under existing guarantees that are independent obligations of non-debtors and not subject to the Chapter 11 proceedings, we would propose to provide the Creditors' Committee quarterly updates regarding the amount of fees and expenses paid by the non-debtors.

We look forward to discussing these issues with you further tomorrow.

Best regards,

Damian

---

Damian S. Schaible
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Phone: 212 450-4580
Fax: 212 450-3580
email: damian.schaible@dpw.com

------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties in promoting, marketing or recommending any partnership or other entity, investment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this



Larsen

EXHIBIT NO. 14

3/1/10

P. CAMPBELL

TRB_LD002148
CONFIDENTIAL

TRB_LD002148

communication and (ii) the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.

***************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

***************************************************************************

TRB_LD002149
CONFIDENTIAL

TRB_LD002149

**From:**     Larsen, Nils
**Sent:**     Saturday, February 14, 2009 6:21 AM (GMT)
**To:**     'mary.ellen.egbert@jpmorgan.com'
**Subject:**

Mary Ellen:

I hope this e-mail finds you well.

It has been a few weeks since we spoke but I thought I would touch base on a few items.  They are:

1. Given the fact that I have not heard anything further from JPM on the DIP that you are not interested in pursuing these conversations.  Counsel for the UCC asked about whether we had paid any work fee on this topic and the advisors for the UCC would like an update on our DIP thinking.  I just want to make certain our signals are not getting crossed before I answer these inquiries.
2. I think we have made good progress on the topic of covering the SC fees.  I understand that the SC and UCC are discussing this issue and we have indicated our comfort with the approach.  I am not certain where this stands but I believe it is close to being finalized.

While I am sure you are busy these days, I wanted to make sure you felt that good progress was being made.

Thanks.

Nils



TRB_LD000723
CONFIDENTIAL

TRB_LD000723