# EXHIBIT 6

## FORBEARANCE AGREEMENT

**FORBEARANCE AGREEMENT** (this "<u>Forbearance Agreement</u>") dated as of January [ ], 2009, and effective as of the Forbearance Effective Date (as defined below), among the entities listed on Schedule I hereto (each such entity individually, a "<u>Tribune Party</u>" and, collectively, the "<u>Tribune Parties</u>"), the Participant Lenders and JPMorgan Chase Bank, N.A., as administrative agent under the Credit Agreement (in such capacity, the "<u>Agent</u>").

### W I T N E S S E T H:

WHEREAS, Tribune Company (the "<u>Borrower</u>"), a Delaware corporation ~~and a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding")~~, certain lenders (including the Participant Lenders), the Agent and certain other parties are parties to a Credit Agreement dated as of May 17, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "<u>Credit Agreement</u>");

<u>WHEREAS, Borrower and most of its Subsidiaries are debtors and debtors-in-possession (collectively, the "Debtors") in a case pending under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding") in the Bankruptcy Court for the District of Delaware ("Bankruptcy Court");</u>

WHEREAS, at the time of commencement of the Chapter 11 Proceeding, there were approximately 100 Lenders, and the Borrower and the Agent concluded it was necessary to designate certain lenders <u>as identified in Schedule II hereto</u> (the "<u>Steering Lenders</u>") to become focal points for regular communications and negotiations among the Borrower, its related debtors and the Lenders;

WHEREAS, the commencement of the Chapter 11 Proceeding is an Event of Default under the Credit Agreement;

WHEREAS, in connection with the Credit Agreement, the Tribune Parties and the Agent are party to a Guarantee Agreement dated as of June 4, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "<u>Guarantee Agreement</u>" and together with the Credit Agreement, the "<u>Existing Agreements</u>") under which, among other things, certain of the Tribune Parties have guaranteed all Guaranteed Obligations (as defined therein) including, without limitation, all Obligations of and performance by the Borrower of its covenants under the Credit Agreement;

WHEREAS, certain of the Tribune Parties are not debtors in the Chapter 11 Proceeding (the "<u>Non-Debtor Tribune Parties</u>"), and accordingly do not have the benefit of the automatic stay applicable therein and would be subject to the exercise of remedies under the Guarantee Agreement absent forbearance in respect of such remedies by the Lenders and the Agent; and

WHEREAS, to permit certain of the Non-Debtor Tribune Parties to explore possible strategic transactions and to facilitate the overall restructuring of the Tribune Parties, the Tribune Parties have requested that the Participant Lenders forbear from exercising certain rights and remedies under the Guarantee Agreement against the Non-Debtor Tribune Parties on the terms

TRB_LD000058
CONFIDENTIAL

and conditions (including the limited duration) set forth herein, and the Participant Lenders are willing, upon such terms and conditions (including such limited duration), to forbear from their exercise of such rights and remedies to enable the ~~non-debtor~~Non-Debtor Tribune Parties to continue to explore such transactions and, in the interim, to enable the ~~non-debtor~~Non-Debtor Tribune Parties to continue to operate, all during the Forbearance Period (as defined herein);

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

1.  **Defined Terms; References**.  (a) Unless otherwise specifically defined herein, each term used herein which is defined in any Existing Agreement has the meaning assigned to such term in such Existing Agreement.

    (b) As used in this Forbearance Agreement, the following terms have the meanings specified below:

    "Forbearance Default" means any of the following: (i) any Tribune Party shall breach or fail to comply with any covenant, condition or agreement contained in this Forbearance Agreement, or take any action or make any statement that evidences the intent of any such Tribune Party to breach or fail to comply with any such covenant, condition or agreement; (ii) any Non-Debtor Tribune Party shall ~~enter into any agreement relating to~~consummate a Material Disposition that has not been consented to in writing by the Required Lenders,~~(iii) the Borrower or any of its subsidiaries shall repay all or any portion of any material obligation incurred prior to commencement of the Chapter 11 Proceeding, other than operating expenses incurred in the ordinary course of business and other payments authorized by the Bankruptcy Court in the Chapter 11 Proceeding after notice and hearing without objection by the Agent or the Participant Lenders, and (iv~~ or approved by the Bankruptcy Court; and (iii) the making of a demand for payment against or the exercise of any remedy against any Non-Debtor Tribune Party or a Non-Debtor Tribune Party's assets by or on behalf of any holder of any debt for borrowed money of an amount greater than $10 million.

    "Forbearance Period" means, with respect to any Non-Debtor Tribune Party, the period from and including the Forbearance Effective Date to but excluding the earliest of:

    (i) the date on which the Agent delivers to such Non-Debtor Tribune Party a written notice terminating the Forbearance Period with respect to such Tribune Party pursuant to Section 2(b) hereof;

    (ii) the date that is ~~ten~~five (~~10~~5) days following the delivery by the Agent to such Non-Debtor Tribune Party of a written notice terminating the Forbearance Period with respect to such Non-Debtor Tribune Party pursuant to Section 2(c) hereof;

    (iii) the date on which any petition for relief under the Bankruptcy Code is filed by or against such Non-Debtor Tribune Party, whether or not there has been an order for relief;

    (iv) the date that is ten (10) days following the delivery by the Borrower to the Agent of a written notice terminating the Forbearance Period with respect to such Non-

Debtor Tribune Party pursuant to Section 2(d) hereof; and

(~~iv~~v) the first anniversary of the Forbearance Effective Date (the "Initial Scheduled Termination Date"), as such date may be extended from time to time by Participant Lenders constituting the Required Lenders (the Initial Scheduled Termination and any subsequent date to which the date referred to in this clause (iv) may be extended being called a "Scheduled Termination Date").

"Material Disposition" means (a) any conveyance, sale, lease, sublease, assignment, transfer or other disposition (including by way of merger or consolidation and including any Sale and Lease-Back Transaction and any Disposition) of any property (excluding sales of inventory and dispositions of cash and Cash Equivalents in each case, in the ordinary course of business), by any Non-Debtor Tribune Party or (b) any issuance or sale of any Equity Interests of any Non-Debtor Tribune Party (including any redemption of partnership, membership or other Equity Interests having the effect of reducing the interest of such Tribune Party in any other Person), in each case to any Person; provided, that notwithstanding anything herein to the contrary, Material Disposition shall not include (x) any conveyance, sale, lease, sublease, assignment, transfer or other disposition of property with an aggregate fair market value of less than $10 million, or (y) any disposition of obsolete equipment, inventory, or intellectual property.

"Participant Lender" means (i) any Lender that executes this Forbearance Agreement and any of such Lender's successors and assigns that executes a Joinder to this Forbearance Agreement pursuant to Section 5 hereof and (ii) any Lender that executes a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit A (whether before or after the Forbearance Effective Date), *provided that* if a Lender notifies the Borrower and the Agent in writing prior to any Scheduled Termination Date that it intends to cease to be a Participant Lender as of such Scheduled Termination Date, such Lender shall cease to be a Participant Lender effective as of such Scheduled Termination Date.

2. **Forbearance**. (a) Each Participant Lender agrees that, with respect to each Non-Debtor Tribune Party, until the expiration or termination of the Forbearance Period with respect to such Non-Debtor Tribune Party, the Participant Lenders will forbear, and each Participant Lender hereby instructs the Agent to forbear (in each case subject to the terms and conditions hereof) from (i) demanding payment of any amount due under the Guarantee Agreement from such Non-Debtor Tribune Party or (ii) taking, exercising, instructing, voting to instruct or requesting that the Agent take or exercise, and hereby instructs the Agent not to take or exercise, any remedies under the Existing Agreements (including, without limitation, pursuant to Section 7 of the Guarantee Agreement) or otherwise ~~for collection~~ against such Non-Debtor Tribune Party (including, without limitation, enforcement or collection actions, the exercise of rights of setoff or other remedies available for the collection of amounts due pursuant to applicable law).

(b) Upon the occurrence and during the continuance of a Forbearance Default, the Agent (i) may or (ii) if requested in writing by the Required Lenders, shall deliver to any Non-Debtor Tribune Party a notice immediately terminating the Forbearance Period with respect to such Non-Debtor Tribune Party.

(c) At any time ~~after June 30, 2009,~~ upon five (5) days prior notice delivered to any Non-Debtor Tribune Party, the Agent (i) may or (ii) if requested in writing by the Required

Lenders, ~~shall deliver to any Non-Debtor Tribune Party a notice terminating~~terminate the Forbearance Period with respect to such Non-Debtor Tribune Party.

(d)     At any time, upon ten (10) days prior notice delivered to the Agent, the Borrower may terminate the Forbearance Period either (i) with respect to any Non-Debtor Tribune Party or (ii) with respect all the Non-Debtor Tribune Parties.

(e)     Forthwith upon the expiration or termination of the Forbearance Period with respect to any Non-Debtor Tribune Party, the agreement of the Participant Lenders pursuant to Section 2(a) hereof to forbear from *inter alia* taking or exercising certain actions and remedies and instructing the Agent not to take or exercise certain actions and remedies, in each case with respect to such Non-Debtor Tribune Party, shall terminate without the requirement of any demand, presentment, protest or notice of any kind (other than the notices required by this Forbearance Agreement), all of which such Non-Debtor Tribune Party hereby waives. The Tribune Parties ~~agrees~~agree that the Agent and, to the extent permitted by the Existing Agreements, each Participant Lender may at any time thereafter proceed to exercise against such Non-Debtor Tribune Party any and all of their respective rights and remedies under the Guarantee Agreement and/or applicable law, including, without limitation, their respective rights and remedies in connection with any or all defaults and Events of Default.

(~~e~~f)     For the avoidance of doubt, nothing herein ~~(i)~~ limits, or constitutes a waiver of, the ~~right~~rights of the Agent or the Lenders, including, without limitation, during the Forbearance Period, to take any action to preserve or exercise or enforce rights or remedies ~~or (ii) constitutes a waiver of such rights or remedies, in either case~~available under the Existing Agreements and applicable law against parties other than the Non-Debtor Tribune Parties ("Third Party Rights")~~-~~, subject, in the case of the Debtors, to applicable bankruptcy law, including 11 U.S.C. §362. For purposes of the foregoing, the Tribune Parties acknowledge and agree that ~~execution and delivery of~~upon the Forbearance Effective Date this Forbearance Agreement shall be deemed to constitute the making of any necessary demand or the giving of any necessary notice for purposes of preserving and/or permitting the exercise of any such Third Party Rights of the Agent and the Lenders.

(~~f~~g)     Execution of this Forbearance Agreement constitutes an instruction by the Participant Lenders that the Agent act in accordance with its terms. Notwithstanding the foregoing (and without limitation of the rights of any Tribune Party to pursue all available remedies available to it under applicable law against a Participant Lender which may result from breach or non-performance by any Participant Lender of this Forbearance Agreement or any of such Participant Lender's obligations hereunder), the Agent shall have no liability to any party for taking any action at the request of the Required Lenders~~, even if such action is inconsistent~~ consistent with this Forbearance Agreement. Notwithstanding the foregoing, each Participant Lender hereby agrees not to take any action, including without limitation, instructing the Agent to take any action, inconsistent with or in breach of this Forbearance Agreement. The parties acknowledge and agree that any actions taken or not taken by the Agent in accordance with this Forbearance Agreement are at the request of and with the consent of the Required Lenders under the Credit Agreement, and the Agent may rely thereon for purposes of Article 7 of the Credit Agreement.

CONFIDENTIAL

(gh)   The Tribune Parties acknowledge and agree that the agreement of the Participant Lenders hereunder to forbear from, and to request the Agent to forbear from, exercising certain of their rights and remedies under the Guarantee Agreement shall not constitute a waiver of such rights and remedies, and that except as expressly provided herein, the Lenders expressly reserve all rights and remedies that the Agent and the Lenders now or may in the future have under the Guarantee Agreement and/or applicable law in connection with all defaults and Events of Default (including, without limitation, the right to obtain financial and other information regarding the Borrower and its ~~subsidiaries and affiliates~~Subsidiaries in connection with the Chapter 11 Proceeding, including through compulsory process).

3.   **Forbearance Covenants.**

Until the expiration or termination of the Forbearance Period with respect to all the Non-Debtor Tribune Parties:

(a)   ~~To the extent and at the times hereinafter set forth (and without~~Without waiving any other rights or remedies the Lenders or the Agent may have ~~in respect thereof)~~, each ~~Non-Debtor~~ Tribune Party hereby agrees, jointly and severally, to pay, ~~promptly but in any case within five (5) days after receipt of demand therefor (and, in each case, whether incurred before, during or after~~ (i) all reasonable fees, costs and expenses incurred prior to the end of the Forbearance Period with respect to any ~~Non-Debtor Tribune Party), (i) all reasonable fees, costs and expenses of (A) the Agent (including, without limitation, fees, costs and expenses owed from time to time under Section 8.04 of the Credit Agreement, which, for the avoidance of doubt, includes~~Tribune Party of: (A) the Agent (i.e. the reasonable fees, costs and expenses of Davis Polk & Wardwell, as special counsel to the Agent ("DPW"), Richards, Layton & Finger, P.A., as Delaware counsel to the Agent, FTI Consulting, Inc., as financial advisor to the Agent, and, if and when retained by the Agent, a firm providing investment banking advisory services to the Agent), (B) Kramer Levin Naftalis & Frankel LLP ("KLNF"), as counsel to certain Lenders (the "Ad Hoc Lenders"), including certain of the Steering Lenders, and (C) special Delaware counsel, if any, retained by the Ad Hoc Lenders, and (ii) all reasonable out-of-pocket expenses of each of the Steering Lenders incurred in connection with their participation as a Steering Lender (~~e.g.,~~prior to the end of the Forbearance Period with respect to any Tribune Party (i.e. reasonable expenses for travel, food and lodging) ~~Without limiting the generality of the foregoing, on the Forbearance Effective Date, the Non-Debtor~~ (the foregoing fees and expenses, shall hereinafter be referred to, collectively or individually, as "Fees and Costs"). The Tribune Parties shall pay ~~(x) to the Agent $7.5 million (the "~~Agent Advance~~") and (y)~~ to KLNF $1.0 million (the "KLNF Advance")~~, to be used as an advance that may be applied in satisfaction of the reasonable fees, costs and expenses of the Agent and KLNF to the extent that, notwithstanding the provisions of this Section 3(a), any such fees, costs and expenses are not paid when required in accordance herewith~~ the Fees and Costs promptly following the expiration of 10 days after invoices containing detailed documentation evidencing outstanding Fees and Costs have been provided to the Tribune Parties. Copies of such invoices shall also be provided to the United States Trustee.

(b)   Each Tribune Party shall promptly give to the Agent notice in writing of the occurrence of any Forbearance Default, or the occurrence of any event or circumstance which with the passage of time or giving of notice or both would constitute a Forbearance Default.

(c)     The Tribune Parties shall provide the Agent and the Steering Lenders with ~~(i)~~ timely updates ~~(and in any event not less frequently than on a biweekly basis)~~comparable to that which is provided to the UCC on the progress of negotiations in respect of all Material Dispositions and other material transactions ~~[outside the ordinary course of business]~~ contemplated by the Borrower or any of its ~~subsidiaries~~Subsidiaries (including, without limitation, any disposition or other material transaction directly or indirectly involving any interests in or assets of Chicago National League Ball Club, Inc. or Tribune (FN) Cable Ventures, Inc.) ~~and (ii) not less than 10 days written notice prior to entering into any agreement relating to any such Material Disposition or other material transaction (including a summary of the material terms of such transaction and a copy of the most current draft of any agreement relating thereto)~~.

(d)     The Tribune Parties shall ~~cause the Borrower and its subsidiaries and affiliates to cooperate with and~~ provide financial and other information to the Agent, the Steering Lenders and their respective agents and legal and financial professionals ~~in a manner satisfactory to the Agent and the Steering Lenders in their reasonable judgment, including, without limitation, providing to the Agent and the Steering Lenders financial reports, forecasts, analyses and due diligence~~ comparable to that which is provided to the ~~official unsecured creditors committee in the Chapter 11 Proceeding (the "UCC")~~UCC. ~~In addition, the Tribune Parties shall, upon request, cause the Borrower and its subsidiaries and affiliates to provide to the Agent and the Steering Lenders all financial reports, forecasts and analyses provided from time to time to any debtor-in-possession lender in the Chapter 11 Proceeding, including, without limitation, Barclays Bank PLC ("Barclays"), as Lender, Funding Agent and Administrative Agent under the Receivables Loan Agreement, dated as of July 1, 2008, among the Borrower, Tribune Receivables, LLC and Barclays (as amended from time to time).~~

(e)     Upon the prior request of the Agent, the Steering Lenders or their respective agents and legal or financial professionals, the Tribune Parties shall ~~cause the Borrower and its subsidiaries and affiliates to~~ provide such parties with reasonable access to, and shall as promptly as practicable schedule meetings and conference calls with, ~~management personnel,~~ counsel and any financial advisors or restructuring consultants retained by the ~~Borrower or any of its subsidiaries or affiliates~~Debtors, and shall also provide the Agent and the Steering Lenders with access to the management personnel of the Debtors comparable to the access to such management personnel as is provided to the UCC.

(~~f~~)     ~~Neither~~g)     Except with the prior consent of the Required Lenders, approval of the Bankruptcy Court, or upon not less than 10 days prior written notice to the Agent, the Borrower nor any Guarantor shall directly or indirectly pay any ~~Dividend~~cash dividend on account of an equity interest in the entity paying such cash dividend.

(~~g~~h)     All consideration received in connection with a Material Disposition shall be retained by the entity making such Material Disposition and none of such consideration shall be transferred to any other Person (including, without limitation, the Borrower or any of its subsidiaries or affiliates) without the prior written consent of the Agent and the Required Lenders or approval of the Bankruptcy Court, except upon not less than 10 days prior written notice to the Agent.

(~~h~~i)     The cash management system of the Borrower and its ~~subsidiaries and~~

affiliatesSubsidiaries shall be maintained in a manner ~~reasonably satisfactory to the Agent and the Required Lenders~~consistent with the order of the Bankruptcy Court.

(i~~j~~)    Except ~~as agreed by~~with the prior consent of the Required Lenders, approval of the Bankruptcy Court, or upon not less than 10 days prior written notice to the Agent, each of the Non-Debtor Tribune Parties shall comply with the provisions of Section 5.01(h) and Sections 5.02(a), (c), (f), (h) and (k) of the Credit Agreement (as if such Sections referred to such Non-Debtor Tribune Party instead of to the Borrower).

In addition to the foregoing, the Tribune Parties shall pay the reasonable Fees and Costs incurred prior to the termination of the Forbearance Period, to the extent unpaid as of the termination of the Forbearance Period, promptly following the expiration of 10 days after invoices containing detailed documentation evidencing such Fees and Costs have been provided to the Tribune Parties.

4.    **Conditions to Effectiveness**.  This Forbearance Agreement shall become effective in accordance with its terms on the date (the "Forbearance Effective Date") on which each of the following shall have occurred and the Agent shall have received evidence reasonably satisfactory to it of such occurrence:

(i)    this Forbearance Agreement shall have been executed by each Tribune Party and Participant Lenders constituting the Required Lenders;

~~(ii)    the Agent shall have received payment in cash in full of (A) any fees, costs and expenses owing to the Agent under the Credit Agreement as of such Forbearance Effective Date and (B) the Agent Advance;~~

~~(iii)    KLNF shall have received payment in cash in full of (A) any fees, costs and expenses owing to KLNF under Section 3(a) hereof as of such Forbearance Effective Date and (B) the KLNF Advance;~~

~~(iv)    the Agent and the Steering Lenders shall have received all reports, forecasts, analyses or other due diligence required under Section 3(d) hereof as of the Forbearance Effective Date (including, without limitation, all financial reports, forecasts, analyses and due diligence provided to the UCC and Barclays as of the Forbearance Effective Date); and~~

(ii) the Bankruptcy Court has entered an order authorizing the Debtors to enter into and perform in accordance with this Forbearance Agreement.

5.    ~~(v)    the Agent shall have delivered to~~**Payment Blockage Notice**.  The Tribune Parties acknowledge that a payment default under the Credit Agreement has occurred and is continuing.  Either prior to or, in any event, no later than twenty four (24) hours after, this Forbearance Agreement becomes effective, the Agent shall deliver to the Merrill Lynch Capital Corporation, as Administrative Agent (the "Bridge Agent") under the Senior Unsecured Interim Loan Agreement dated as of December 20, 2007 among the Borrower, the lenders from time to time party thereto, the Bridge Agent, and certain other parties thereto (as the same has been and may be further amended, modified or supplemented from time to time, the "Bridge Agreement"),

TRB_LD000064
CONFIDENTIAL

a Payment Blockage Notice in connection with each of the ~~Guarantee~~outstanding Guarantees (as defined in the Bridge Agreement). Thereafter, the Agent shall not rescind such Payment Blockage Notice during the Forbearance Period. The Required Lenders, by executing this agreement, hereby authorize the Agent to deliver such Payment Blockage Notice.

6.     ~~5.~~ **Assignments.** Each Participant Lender hereby agrees, for so long as it is a Participant Lender, (a) not to assign or otherwise transfer, during the Forbearance Period, all or a portion of its rights and obligations under the Credit Agreement (including all or a portion of its Loans at the time owing to it) except to a Person who (i) is already a Participant Lender or (ii) contemporaneously with any such assignment or transfer, agrees to be bound as a Participant Lender by executing and delivering to the Agent a Joinder to this Forbearance Agreement in the form attached hereto as Exhibit B and (b) prior to the effectiveness of any such assignment or other transfer, to provide the Agent with a certificate in the form attached hereto as Exhibit C certifying that the applicable assignee or transferee satisfies the conditions of this Section ~~5~~6 and, in the case of an assignee or transferee that has executed a Joinder, attaching a copy of such executed Joinder to such certificate. The Agent shall promptly inform the Tribune Parties of any of the foregoing assignments that occur during the Forbearance Period, and shall provide the Tribune Parties with copies of the aforementioned Joinder and certificate. Each Participant Lender agrees that, notwithstanding anything to the contrary in the Credit Agreement, (x) any purported assignment or transfer that fails to comply with this Section ~~5~~6 shall be null and void and (y) the Agent shall be entitled to withhold its consent to, and shall not be required to give effect to, any purported assignment or transfer of a Participant Lender's Loans or other rights or obligations under the Loan Documents if the conditions set forth in this Section ~~5~~6 are not satisfied.

7.     ~~6.~~ **Amendments.** Except as expressly provided herein, no modification, amendment or waiver of any provision of this Forbearance Agreement shall be effective unless the same shall be in writing and signed by the Tribune Parties, Participating Lenders constituting the Required Lenders and the Agent. On the Forbearance Effective Date, the Guarantee Agreement shall be deemed to be amended by this Forbearance Agreement to incorporate the terms hereof (including, without limitation, the Lenders' agreement to forebear pursuant to Section 2(a) hereof). For the avoidance of doubt, any other modification, amendment or waiver of any provision of the Guarantee Agreement (including, without limitation, as amended hereby) shall continue to be governed by the applicable provisions of the Guarantee Agreement.

8.     ~~7.~~ **No Waiver; Remedies.** No failure on the part of any Lender or the Agent to exercise, and no delay in exercising, any right hereunder or under the Guarantee Agreement or any Loan Document shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

9.     **Confidentiality.** The parties hereto hereby agree that Section 8.08 of the Credit Agreement shall apply to all Borrower Information provided to the Agent or any Participant Lender pursuant to this Forbearance Agreement. In addition, the Agent and each Steering Lender agree to the following:

(a)     The Agent and each Steering Lender acknowledges that from time to time

the Debtors may decide that it is in the Debtors' best interests not to share Borrower Information directly with the Agent and the Steering Lenders and under such circumstances request that certain Borrower Information may be disclosed on a "professional eyes only" basis. In such event, the Agent and Steering Lenders agree that they shall direct their counsel or financial advisors to limit any disclosure of such Borrower Information as requested by the Debtors; provided, however, that no such designation or limitation will in any manner restrict or limit the right of the Agent or any Steering Lenders to seek and obtain any information (including, without limitation, any information so designated or so limited) in the manner contemplated by Section 9 (d) of this Forbearance Agreement.

(b) In the event that the Agent or a Steering Lender (or one of their agents or professionals) is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, or any other process employed in connection with a judicial, investigatory or administrative proceeding) to disclose any Borrower Information, and subject in all cases to the second sentence of this Section 9(b), it is agreed that the party will give the Debtors notice of any such request or requirement within five (5) calendar days so that the Debtors may seek an appropriate protective order or other remedy to assure that the Borrower Information will be accorded confidential treatment. Nothing herein shall prevent disclosure of Borrower Information if such disclosure is permitted or required by an administrative or judicial order.

(c) Nothing in this Forbearance Agreement shall prevent or limit any right of the Agent or any Steering Lender to obtain reports, writings or other information, through subpoena, formal discovery or other process, even if such materials were previously released to the Agent or Steering Lender as confidential Borrower Information or were designated as "professional eyes only" or otherwise restricted by the Debtors pursuant to Section 8(a) above. With respect to any such discovery effort any of the Debtors may assert any objections to the production of such materials, even if such materials were previously released to the Agent or Steering Lenders as confidential Borrower Information.

(d) In the event that the Agent or a Steering Lender intends to offer into evidence or otherwise use confidential Borrower Information, then the Agent or such Steering Lender shall first seek an order providing that such information shall be filed under seal and shall give notice of such motion to the Debtors. If the Agent, a Steering Lender or the Debtors do not obtain an order authorizing such information to be filed under seal despite their commercial reasonable and good faith efforts, then using the confidential Borrower Information as proposed in the notice shall not constitute a breach of this Forbearance Agreement.

(e) The Tribune Parties will be entitled to specific performance, injunctive and other equitable relief as remedies for any breach of Section 9 of this Forbearance Agreement, in addition to all other remedies available to any of them at law.

10. 8. **Miscellaneous.**

(a) Except to the extent hereby amended, each Non-Debtor Tribune Party hereby affirms that the Loan Documents shall continue in full force and effect and are legal, valid and enforceable in accordance with their respective terms (each of which is hereby ratified and affirmed in all respects) and that, without limitation of the foregoing, each such Non-Debtor

TRB_LD000066
CONFIDENTIAL

Tribune Party continues to guarantee the Guaranteed Obligations in accordance with the terms of the Guarantee Agreement.

(b) No Person other than the parties hereto and any other Lender shall have any rights hereunder or be entitled to rely on this Forbearance Agreement, and all third-party beneficiary rights are hereby expressly disclaimed.

(c) Each Tribune Party agrees that the Borrower's obligations ~~set forth in~~to reimburse certain Fees and Costs contemplated by Section 8.04 of the Credit Agreement and in Section 3(a) hereof shall extend to the preparation, execution and delivery of this Forbearance Agreement (including any amendments or modifications hereto, waivers hereunder and administration hereof), including the reasonable fees and disbursements of DPW and KLNF.

(d) The parties hereto hereby agree that Section 7 of the Credit Agreement (except for Section 7.05 with respect to the Debtors) shall apply to this Forbearance Agreement ~~and each other Loan Document~~ and all actions taken or not taken by the Agent or any Participant Lender contemplated hereby.

(e) Nothing in this Forbearance Agreement shall be deemed, asserted or construed to impair or prejudice the rights of the Agent and the Participant Lenders to (i) appear and be heard on any issue, or to object to any relief sought, in the Chapter 11 Proceeding or (ii) enforce the provisions of this Forbearance Agreement or to seek damages or equitable relief in connection with a breach or anticipated breach hereof.

~~(f) The parties hereto hereby agree that Section 8.08 of the Credit Agreement shall apply to all Borrower Information provided to the Agent or any Participant Lender pursuant to this Forbearance Agreement.~~

(f) ~~(g)~~ All notices and other communications in respect of this Forbearance Agreement shall be delivered in the manner and to the addresses specified in Section 8.02 of the Credit Agreement; *provided* that all notices and communications to any Tribune Party shall be delivered, mailed or sent c/o Tribune Company to: 435 North Michigan Avenue, 6th Floor, Chicago, Illinois 60611, [Attention of General Counsel (Telecopy No. (312) 222-4206), with a copy to Sidley Austin LLP, at 1 South Dearborn Street, Chicago, Illinois 60603, Attention: Robert Lewis, Esq. (Telecopy No. (312) 853-7036; Email: rlewis@sidley.com)].

(g) ~~(h)~~ If any provision of this Forbearance Agreement shall be held to be invalid, illegal or unenforceable in any jurisdiction, such provision shall, solely as to such jurisdiction and such provision, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof.

(h) ~~(i)~~ Section headings used herein are for convenience only and are not to affect the construction of or be taken into consideration in interpreting this Forbearance Agreement.

(i) ~~(j)~~ This Forbearance Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so

executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. A facsimile or .pdf copy of a counterpart signature page shall serve as the functional equivalent of a manually executed copy for all purposes.

(j) ~~(k)~~ THIS FORBEARANCE AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

(k) ~~(l)~~ EACH OF THE TRIBUNE PARTIES, THE AGENT AND EACH PARTICIPANT LENDER HEREBY CONSENT TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR THE PURPOSE OF ADJUDICATING THEIR RESPECTIVE RIGHTS WITH RESPECT TO THIS FORBEARANCE AGREEMENT AND ALSO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS FORBEARANCE AGREEMENT.

*[SIGNATURE PAGES FOLLOW]*

**EACH OF THE ENTITIES LISTED ON SCHEDULE I HERETO,**

By: _____
Name:
Title:

**NAME OF PARTICIPANT LENDER:**

By: _____
Name:
Title:

**Schedule I**

Tribune Parties

TRB_LD000068
CONFIDENTIAL

**Schedule II**

Steering Committee

Document comparison done by DeltaView on Tuesday, January 20, 2009 10:33:34 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://LALDMS01/LA1/1374946/1 |
| Document 2 | interwovenSite://LALDMS01/LA1/1374946/5 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 86 |
| Deletions | 77 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 171 |

TRB_LD000069
CONFIDENTIAL