EXHIBIT 7

**Condensed Transcript**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

TRIBUNE COMPANY,
et al.,

          Debtors.

~~~~~~~~~~~~~~~~~~~~~~

Chapter 11
Case No:
08-13141(KJC)
(Jointly Administered)

## DEPOSITION OF

## VIVEK MELWANI

February 9, 2010
2:05 p.m.

One Bryant Park
New York, New York

Reported by: Joan Warnock, a Notary Public of the State of New York



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

## 1

```
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
-------------------------------------X
In re:
                           Chapter 11
TRIBUNE COMPANY,           Case No:
et al.,                    08-13141(KJC)
                           (Jointly Administered)
         Debtors.
-------------------------------------X


         DEPOSITION OF VIVEK MELWANI
              New York, New York
          Tuesday, February 9, 2010




Reported by:
JOAN WARNOCK
JOB NO. 307444
```

## 2

```
              February 9, 2010
                 2:05 p.m.


      Deposition of VIVEK MELWANI, held
at the offices of Akin, Gump, Strauss,
Hauer & Feld, LLP, One Bryant Park,
New York, New York, pursuant to Notice,
before Joan Warnock, a Notary Public of
the State of New York.
```

## 3

A P P E A R A N C E S:

DAVIS POLK & WARDWELL, LLP
Attorneys for JPMorgan
    450 Lexington Avenue
    New York, New York  10017
BY:  MICHAEL J. RUSSANO, ESQ.
     ANDREW D. SCHLICHTER, ESQ.

HENNIGAN BENNETT & DORMAN LLP
Attorneys for Credit Agreement Lenders
    245 Park Avenue, Suite 3900
    New York, New York  10167
BY:  A. BRENT TRUITT, ESQ.

SIDLEY AUSTIN, LLP
Attorneys for Tribune
    One South Dearborn
    Chicago, Illinois  60603
BY:  SCOTT KRAMER, ESQ.
     (Via telephone)

## 4

A P P E A R A N C E S: (Cont'd.)

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
Attorneys for Law Debenture
    1633 Broadway
    New York, New York  10019-6799
BY:  DANIEL A. FLIMAN, ESQ.

CHADBOURNE & PARKE, LLP
Attorneys for Creditors' Committee
    30 Rockefeller Plaza
    New York, New York  10112
BY:  ALEXANDRA K. NELLOS, ESQ.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

---

**5**

1     V. Melwani
2     V I V E K   M E L W A N I, called as a
3     witness, having been duly sworn by
4     a Notary Public, was examined and
5     testified as follows:
6         COURT REPORTER:  Please state your
7     full name and address for the record.
8         THE WITNESS:  Vivek Melwani,
9     375 Park Avenue, New York, New York.
10        MR. RUSSANO:  Why don't we go
11    around the room and introduce ourselves.
12    Mr. Melwani, my name is Michael Russano.
13    I'm with the law firm of Davis Polk &
14    Wardwell, and I'm representing JPMorgan.
15        MR. SCHLICHTER:  Andy Schlichter.
16    I'm also with the law firm of Davis
17    Polk & Wardwell.
18        MR. TRUITT:  Brent Truitt of
19    Hennigan Bennett & Dorman representing
20    the Credit Agreement Lenders.
21        MR. FLIMAN:  Daniel Fliman with
22    Kasowitz Benson Torres & Friedman on
23    behalf of Law Debenture.
24        MS. NELLOS:  Alexandra Nellos from
25    Chadbourne & Parke on behalf of the

---

**6**

1     V. Melwani
2     Unsecured Creditors Committee.
3         MS. NEWMAN:  Deborah Newman from
4     Akin Gump Strauss Hauer & Feld on behalf
5     of Centerbridge and the witness.
6         MR. RUSSANO:  And I believe on the
7     phone is Scott Kramer from Sidley
8     representing --
9         MR. KRAMER:  Correct, on behalf of
10    Tribune.
11    EXAMINATION BY
12    MR. RUSSANO:
13        Q.  Have you ever been deposed before?
14        A.  I have not.
15        Q.  Let me give you a couple of the
16    ground rules and what you can expect over the
17    next hour or so.  Everything we say, my
18    questions, your answers, will be recorded by
19    the court reporter.  It's very important that
20    you answer me orally as opposed to verbal
21    shakes of the head.  It's also important for
22    a clean record that you allow me to finish my
23    question, and then I allow you to finish your
24    answer before we move on to the next question
25    or answer.  Is that all right?

---

**7**

1     V. Melwani
2         A.  Yes.
3         Q.  If you don't understand one of my
4     questions, please let me know, and I'll go
5     ahead and ask it a different way.  Okay?
6         A.  Yes.
7         Q.  If you need to take a break at some
8     point, please let me know or let your
9     attorney know, and we'll go ahead and take a
10    break.  The only thing I ask is if there is a
11    question pending, you go ahead and answer
12    that question before we break.  Is that all
13    right?
14        A.  Yes.
15        Q.  Same rule applies, if you need to
16    speak to your attorney for whatever reason,
17    just let me know and we'll do that.  Just if
18    there is a question pending, please go ahead
19    and answer first.  Okay?
20        A.  Yep.
21        Q.  From time to time you might hear
22    some objections around the room, including
23    from your attorney as well as from others.
24    You should go ahead and answer the question
25    unless your attorney instructs you not to

---

**8**

1     V. Melwani
2     answer.  Okay?
3         A.  Yes.
4         Q.  Is there any reason why you won't
5     be able to answer my questions fully and
6     truthfully today?
7         A.  No.
8         MR. RUSSANO:  So let's go ahead and
9     mark as Melwani Exhibit 1 a document
10    entitled "JPMorgan Chase Bank, N.A.'s,
11    Notice of Deposition of Centerbridge
12    Credit Advisers, LLC.
13        (Melwani Exhibit 1, JPMorgan Chase
14    Bank, N.A.'s, Notice of Deposition of
15    Centerbridge Credit Advisers, LLC,
16    marked for identification, as of this
17    date.)
18        Q.  Have you ever seen this document
19    before?  And you can take a moment to review
20    it.
21        A.  I think earlier today.
22        Q.  Do you understand that you are
23    testifying here today on behalf of
24    Centerbridge Credit Advisers?
25        A.  Yes.

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

| 9 | |
|---|---|

V. Melwani

1
2    Q.   And for the purposes of the
3 deposition, I'll refer to Centerbridge Credit
4 Advisers as Centerbridge.  Is that all right?
5    A.   Yes.
6    Q.   If you turn to Page 5 of the
7 document, continuing onto Page 6, the section
8 entitled "Topics of Examination."  Do you see
9 that?
10   A.   I do.
11   Q.   Have you reviewed those topics?
12   A.   Yes.
13   Q.   Are you prepared to testify as to
14 these topics?
15       MS. NEWMAN:  And I would just
16 interject here that we've posited
17 objections to some of these topics.  So
18 the witness will not be -- within
19 reason, the witness will not be
20 responding to topic number four.
21       MR. RUSSANO:  Topic number four.
22       MS. NEWMAN:  And, Michael, we can
23 talk about whether or not there's leeway
24 there, but for the most part, I think
25 that's off the table.

| 10 | |
|---|---|

V. Melwani

1
2       MR. RUSSANO:  Well, why don't we
3 proceed this way.  I'll go ahead and ask
4 the questions, and if you think that it
5 falls within four, we can discuss it
6 then.
7       MS. NEWMAN:  That's fine.
8    Q.   Putting aside for the moment number
9 four.
10   A.   Yes.
11   Q.   Are you prepared to testify as to
12 one through three and five through seven?
13   A.   Yes.
14   Q.   And as I just said to your
15 attorney, I may ask you questions, I will ask
16 you questions regarding four, and at that
17 point there may be some objections that your
18 attorney and I will work through.
19       What have you done to prepare for
20 today's deposition?
21   A.   Spoke with our counsel earlier
22 today.
23   Q.   Who is your counsel?
24   A.   Akin Gump, Deborah.
25   Q.   Anything else?

| 11 | |
|---|---|

V. Melwani

1
2    A.   Nope.
3    Q.   Did you review any documents?
4    A.   A few emails.
5    Q.   Were those selected for you by your
6 attorney?
7    A.   They were.
8    Q.   Did you independently review any
9 documents aside from documents shown to you
10 by your attorney?
11   A.   No.
12   Q.   How many times did you meet with
13 your attorney?
14   A.   Once.
15   Q.   Was that today?
16   A.   Yes.
17   Q.   Who was present?
18   A.   Deborah Newman.
19   Q.   Anyone else?
20   A.   Danny Golden.  But not really for
21 this.
22   Q.   Mr. Golden is also an attorney at
23 Akin Gump?
24   A.   He is.
25   Q.   And how long did that meeting last?

| 12 | |
|---|---|

V. Melwani

1
2    A.   Half an hour.
3    Q.   Did you discuss this deposition or
4 upcoming deposition with anyone other than
5 your attorneys?
6    A.   I mean internally I've discussed
7 what's happening.
8    Q.   Who did you discuss internally, who
9 did you have the conversation with?
10   A.   I mean in the morning meeting today
11 I said I'm getting deposed, so our entire
12 firm.
13   Q.   So meaning every employee of
14 Centerbridge?
15   A.   Every investment professional.
16   Q.   And how many people, how many
17 investment professionals are there at
18 Centerbridge?
19   A.   I don't know offhand.  25, 30.
20   Q.   And what did you say at that
21 meeting regarding this deposition?
22   A.   We were going through what we were
23 doing this week, and I said I'm getting
24 deposed.
25   Q.   Anything else?



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

---

13

```
1              V. Melwani
2     A.  That was it.
3     Q.  You didn't describe the topic of
4  the deposition?
5     A.  No.
6     Q.  Did anyone ask any questions about
7  the deposition to you?  Again, I'm speaking
8  about everyone but your attorneys.
9     A.  No.
10    Q.  Did you have any conversations with
11 anyone from Law Debenture regarding Law
12 Debenture's deposition?
13    A.  No.
14    Q.  Are you aware that Law Debenture
15 was deposed yesterday?
16    A.  I am.
17    Q.  Did you review that deposition
18 transcript?
19    A.  I did not.
20    Q.  Can you describe for me your
21 educational background?
22    A.  I have a bachelor's from Hofstra
23 University, and I have a law degree from
24 Hofstra University.
25    Q.  When did you graduate from law
```

14

```
1              V. Melwani
2  school?
3     A.  1995.
4     Q.  Do you hold any professional
5  licenses?
6     A.  Other than my law degree, no.
7     Q.  Can you describe for me your
8  employment history prior to joining
9  Centerbridge?
10    A.  I was an attorney at Fried Frank in
11 New York.
12    Q.  From when to when?
13    A.  1995 to 2007.
14    Q.  What was your area of practice?
15    A.  Bankruptcy.  It might have been
16 2008.  I'm not sure.  2007 or 2008.
17    Q.  Did you work on the Tribune
18 bankruptcy in any way while you were at Fried
19 Frank?
20    A.  I did not.
21    Q.  And what is your position at
22 Centerbridge?
23    A.  I am a managing director.
24    Q.  Were you hired as a managing
25 director, and is that the position you
```

15

```
1              V. Melwani
2  currently hold?
3     A.  Yes.
4     Q.  And you were hired in 2008?
5     A.  Yes.
6     Q.  You seem uncertain.
7     A.  Yes.  I should know this.
8     Q.  Is it either 2007 or 2008?
9     A.  I think it's 2008.
10    Q.  Can you describe for me your job
11 responsibilities?
12    A.  I help on the various -- I help on
13 various restructuring-related aspects of our
14 investments and also make certain investment
15 suggestions.
16    Q.  Do any of your responsibilities
17 involve the practice of law?
18    A.  No.
19    Q.  Do you work within a particular
20 group or practice area at Centerbridge?
21    A.  There is -- it's -- no.
22    Q.  Who do you report to?
23    A.  I guess the partners.  Mainly Jeff
24 Aaronson.
25    Q.  And he is referred to as a partner
```

16

```
1              V. Melwani
2  whereas you're a managing director.  Is
3  that --
4     A.  Yes.
5     Q.  -- the proper title?
6     A.  Yes.
7     Q.  Does anyone report to you?
8     A.  We have analysts and associates
9  that, uhh...
10    Q.  Also working on
11 restructuring-related issues?
12    A.  I mean we're working on various
13 aspects.  I wouldn't say that anyone works
14 specifically on restructuring-related issues
15 but work on the investments.
16    Q.  So when you describe your job
17 responsibilities as helping on
18 restructuring-related aspects, is that one
19 part of your job responsibilities?
20    A.  Yes.
21    Q.  What other parts are there?
22    A.  I think other parts are, you know,
23 helping on investments, making investment
24 suggestions.
25    Q.  Did you make investment suggestions
```



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com



17

1          V. Melwani
2    with respect to Tribune?
3        A.  I guess I'm not sure what your
4    question is.  Investment -- I mean I'm on the
5    team, so every day I make -- everyone on the
6    team takes views and positions, so I don't
7    know if you view that as an investment
8    suggestion, but we have a team.  There's a
9    lot of people that work on it, so.
10       Q.  When you say team, do you mean a
11   Tribune team?
12       A.  People who work on the investment
13   out of Tribune, yes.
14       Q.  Who else is on that team?
15       A.  Dave Trucano.
16       Q.  Can you spell that?
17       A.  Dave, David, Trucano,
18   T-r-u-c-a-n-o.  And David Yadagar,
19   Y-a-d-a-g-a-r.
20       Q.  Anyone else?
21       A.  Samir, S-a-m-i-r, Aura.  I'm not
22   sure how you spell his last name.  I think
23   it's A-u-r-a.
24       Q.  Anyone else?
25       A.  And Jeff Aaronson.

18

1          V. Melwani
2        Q.  Of the people you mentioned, is
3    anyone full-time on the Tribune team?
4          MS. NEWMAN:  Objection.
5        A.  I'm not sure what that means.
6        Q.  Do you spend -- let's take you.  Do
7    you spend all of your time working on --
8        A.  I do not.
9        Q.  -- Tribune-related issues?  Does
10   anyone on the Tribune team --
11       A.  No.
12       Q.  Does anyone on the Tribune team
13   spend all of their time on the
14   Tribune-related issues?  Is your answer still
15   no?
16       A.  It is.
17       Q.  When you refer to
18   restructuring-related aspects, focusing on
19   the work you do for Tribune, would you say
20   you work on restructuring-related aspects
21   regarding Tribune?
22       A.  I think everything is -- again, I'm
23   not sure I fully understand the question,
24   because everything is -- it's in bankruptcy,
25   right, so it's -- a lot of it's

19

1          V. Melwani
2    restructuring-related aspects, so I just --
3    with that -- yes, you know, I think
4    everything anyone does today on it is
5    restructuring related.
6        Q.  That's fair enough.  Could you then
7    describe for me in a little more detail,
8    aside from helping make investment decisions,
9    within the overall penumbra of
10   restructuring-related aspects what it is you
11   do as a member of the Tribune team?
12       A.  I mean I think to the extent we are
13   deciding -- we monitor what's going on in the
14   case.  I monitor what's going on in the case.
15   We have discussions with the creditors
16   committee, with Law Debenture.  I have
17   discussions with the creditors committee,
18   with Law Debenture, with their counsel.
19   Actually, more so with Law Debenture's
20   counsel.  I've talked to -- I talk to the
21   various parties in the case.
22       Q.  When you say you monitor the case,
23   does that include monitoring the case docket
24   and the court filings?
25       A.  No.  I mean when one of our

20

1          V. Melwani
2    attorneys say this was filed, they'll send it
3    to me and others in the team, and I read it,
4    obviously, but I don't actively monitor the
5    docket myself.
6        Q.  When you say "one of our
7    attorneys," are you referring to Akin Gump as
8    outside counsel, or are there any --
9        A.  Yes.
10       Q.  -- any in-house counsel?
11       A.  Akin Gump.
12       Q.  Remember to let me --
13       A.  Yes.
14       Q.  Are you a member of any bankruptcy
15   creditors committees?
16       A.  I am not.
17       Q.  Have you ever been?
18       A.  I'm sorry.  Do you mean in Tribune?
19       Q.  No.  In general.
20       A.  We're not --
21       Q.  I'm talking you personally.
22       A.  Oh, me personally, no.
23       Q.  On any of the matters--
24       A.  Official committees, just to
25   clarify.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

21

1          V. Melwani
2     Q.   Official, correct.
3     A.   Yes.
4     Q.   On any matters that you are
5  currently working on, is Centerbridge
6  represented on the official committee of
7  unsecured creditors?
8          MS. NEWMAN:  Objection.
9     A.   To my knowledge, no, but I can't
10 say that I know every single thing that we're
11 doing.
12    Q.   How frequently do you speak with
13 principals from Law Debenture?
14         MS. NEWMAN:  Objection.
15    A.   Very infrequently.
16    Q.   Have you ever spoken with a
17 principal, I'm talking non-lawyers --
18    A.   Yes.
19    Q.   -- from Law Debenture?  Who have
20 you spoken with?
21    A.   I think the person who is -- I
22 think it's the person -- I'm going to miss
23 his name, but I think it's Jim Healy.
24    Q.   Heaney?
25    A.   Heaney.

22

1          V. Melwani
2     Q.   How many times have you spoken with
3  Mr. Heaney?
4     A.   Not a lot.  I don't have an exact
5  number, but few.
6     Q.   Would you say less than ten times?
7     A.   I would.
8     Q.   Less than five times?
9     A.   Probably.
10    Q.   When was the last time you spoke to
11 him?
12    A.   Been months.
13    Q.   Have you ever spoken to Mr. Heaney
14 regarding the fee motion?
15    A.   I have not.
16    Q.   When I refer to the fee motion, I'm
17 referring to the motion that was brought by
18 Law Debenture and joined by Centerbridge.
19    A.   Um-hmm.  He has been on emails, but
20 I have not spoken to him orally.
21    Q.   You sent him emails?
22    A.   I have not.  I may have hit reply
23 all where he's copied on them, but.
24    Q.   Can you describe those emails?
25         MS. NEWMAN:  Objection.

23

1          V. Melwani
2     A.   No.  I mean I've seen his name on
3  emails, you know.
4     Q.   Are these emails regarding the fee
5  motion?
6     A.   I can't say for certain that he's
7  on emails regarding the fee motion, but he
8  has -- you know, I know his name is on
9  emails.
10    Q.   The entity that has been noticed is
11 Centerbridge Credit Advisers, LLC.  Is that
12 your formal employer in terms of the actual,
13 you know, in terms of the corporate structure
14 of Centerbridge?  Is that your employer, or
15 is it some other Centerbridge entity?
16    A.   I don't know.
17    Q.   Do you have an understanding of the
18 general structure of Centerbridge?
19    A.   Generally, yes.  I mean we have --
20 yes.
21    Q.   Is Centerbridge Credit Advisers the
22 parent?
23    A.   It is, I believe, a fund under
24 Centerbridge Capital Partners, but I can't
25 speak with certainty to that at this point.

24

1          V. Melwani
2     Q.   And your understanding is that
3  Centerbridge Capital Partners is the parent
4  entity?
5          MS. NEWMAN:  Objection.
6     A.   Yeah, I'm not sure.  I mean that's,
7  you know.
8     Q.   Do you know how many employees,
9  approximately, that Centerbridge Capital
10 Partners and any of its subsidiaries has?
11    A.   I mean it's a bit of a guess, but I
12 would say about a -- I don't is I guess the
13 accurate answer offhand.
14    Q.   Before when discussing your job
15 responsibilities, one of them was helping to
16 make investment decisions.  Which entity
17 makes the actual investments?
18    A.   We have different funds and
19 different feeder funds, and so I -- I don't
20 know.  I mean if you're asking for a specific
21 name of which entity invests, I think it's
22 different for different transactions.
23    Q.   With respect to the Tribune matter,
24 do you know which entity was responsible for
25 actually making the investments?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

| 25 | 27 |
|---|---|
| V. Melwani | V. Melwani |
| 1 | 1 |
| 2     A.  When you say entity, you mean which | 2  currently the indenture trustee for the March |
| 3  entity actually bought the debt? | 3  indenture? |
| 4     Q.  Correct. | 4     A.  I am. |
| 5     A.  I don't know what the name of the | 5     Q.  And that Law Debenture succeeded |
| 6  actual entity that it was. | 6  Deutsche Bank Trust Company of Americas as |
| 7     Q.  Could you describe for me generally | 7  the indenture trustee for the March |
| 8  what Centerbridge's investment strategy is? | 8  indenture? |
| 9        MS. NEWMAN:  Objection.  What's the | 9     A.  I am. |
| 10  relevance of that? | 10     Q.  Are you aware that there are two |
| 11        MR. RUSSANO:  Are you instructing | 11  series of notes issued pursuant to the March |
| 12  him -- we don't need to -- | 12  indenture? |
| 13        MS. NEWMAN:  We're here to talk | 13     A.  I am. |
| 14  about the bank fee motion. | 14     Q.  The 6.61 percent notes is one such |
| 15        MR. RUSSANO:  -- get any further on | 15  series? |
| 16  relevance. | 16        MS. NEWMAN:  Take your time. |
| 17        MS. NEWMAN:  I think we're getting | 17     A.  I mean I don't know that offhand, |
| 18  very far afield of the purpose of this | 18  but I presume you're right. |
| 19  deposition.  So, you know, I'm giving | 19     Q.  That's fine.  I'll represent that |
| 20  you some leeway, but what Centerbridge's | 20  there are two series, one being a |
| 21  investment strategy is -- I mean you can | 21  6.61 percent debenture due 2027, and another, |
| 22  answer it to the extent that you're not | 22  a seven-and-a-quarter-percent debenture, due |
| 23  going to disclose proprietary | 23  2096. |
| 24  information belonging to Centerbridge, | 24        Centerbridge has holdings in both |
| 25  but I think this line of questioning | 25  of those notes series; correct? |

| 26 | 28 |
|---|---|
| V. Melwani | V. Melwani |
| 1 | 1 |
| 2  should be very limited. | 2     A.  We do. |
| 3     A.  We invest in debt.  We invest in | 3     Q.  Does Centerbridge have holdings in |
| 4  debt, and we make private equity investments. | 4  other indentures? |
| 5     Q.  Okay.  We'll get back to that, and | 5     A.  We do. |
| 6  I think the relevance will become a little | 6     Q.  Does Centerbridge have a majority |
| 7  clearer. | 7  interest in any series of notes other than |
| 8        When did Centerbridge first acquire | 8  the two series represented by the March |
| 9  Tribune notes? | 9  indenture? |
| 10     A.  Probably in -- Tribune filed I | 10        MS. NEWMAN:  Are you talking about |
| 11  think in December of '07, so I think probably | 11  notes issued by Tribune. |
| 12  in early '08. | 12        MR. RUSSANO:  Tribune notes, yes. |
| 13        MR. RUSSANO:  Let me mark as | 13     A.  I don't know offhand. |
| 14  Exhibit 2 a document titled "Indenture" | 14     Q.  Is Centerbridge a majority holder |
| 15  dated March 19th, 1996. | 15  of both of the notes issued pursuant to the |
| 16        (Melwani Exhibit 2, Indenture dated | 16  March indenture? |
| 17  March 19th, 1996, marked for | 17     A.  I think we're a majority holder of |
| 18  identification, as of this date.) | 18  one series. |
| 19     Q.  Mr. Melwani, I'll represent this is | 19     Q.  Do you know which series? |
| 20  a copy of an indenture dated March 19, '96, | 20     A.  I don't.  I know I saw a reference |
| 21  that was attached to an 8-K filing by the | 21  to it earlier today in the Tripartite |
| 22  Times Mirror Company, and I'm going to refer | 22  Agreement, but I don't know offhand. |
| 23  to this as the March indenture. | 23        MS. NEWMAN:  Just answer the |
| 24     A.  Okay. | 24  question. |
| 25     Q.  Are you aware that Law Debenture is | 25        MR. RUSSANO:  Let's go ahead and |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

---

29

V. Melwani
1
2  introduce as Exhibit 3 a document Bates
3  stamped LD Fees 00000364 through 370.
4      (Melwani Exhibit 3, Document Bates
5  stamped LD Fees 00000364 through 370,
6  marked for identification, as of this
7  date.)
8  Q.  Do you recognize this document?
9  A.  I do.
10  Q.  Is this the Tripartite Agreement
11  that you were referring to a moment ago?
12  A.  It is.
13  Q.  If I direct your attention to the
14  bottom of the first page, the last whereas
15  clause where it says, "Holders of a majority
16  in principal amount of the outstanding
17  seven-and-a-quarter debentures."  Do you see
18  that?
19  A.  I do.
20  Q.  Does that refresh your recollection
21  that Centerbridge held a majority interest in
22  the seven and a quarter debentures?
23  A.  It does.
24  Q.  At what point in time did
25  Centerbridge acquire a majority interest in

---

30

V. Melwani
1
2  the seven and a quarter debentures?
3  A.  I don't know offhand.
4  Q.  Is it fair to say it was prior to
5  June 8th, 2009, the date of this agreement?
6  A.  It is.
7  Q.  Could you approximate for me how
8  many days, weeks, or months prior to this
9  agreement Centerbridge acquired a majority?
10  A.  No.
11  Q.  Prior to June 8th, 2009, the date
12  of this agreement, Deutsche Bank was the
13  indenture trustee; correct?
14  A.  Yes.
15  Q.  Are you aware that Deutsche Bank
16  was appointed to the Tribune Creditors
17  Committee?
18  A.  Yes.
19  Q.  At the time the creditors committee
20  was being formed, do you know if Centerbridge
21  attempted to join the committee?
22  A.  We did not.
23  Q.  How did Centerbridge acquire its
24  majority interest in the seven and a quarter
25  notes?

---

31

V. Melwani
1
2  MS. NEWMAN:  Objection.  I don't
3  even know what you're asking.  I mean I
4  don't think I'm going to let him answer.
5  But do you want to ask that in a more
6  specific way?
7  MR. RUSSANO:  Sure.
8  Q.  Did you acquire the notes on the
9  open market?
10  A.  I'm not sure what the open market
11  means, but we acquired them the way we --
12  from a broker dealer and the way we acquire
13  any debt.
14  Q.  Did you acquire any of the
15  seven-and-a-quarter notes through negotiated
16  counterparty agreements, private agreements?
17  A.  I don't know.
18  Q.  Do you have any reason to believe
19  that you did acquire the seven-and-a-quarter
20  notes through negotiated counterparty private
21  transactions?
22  A.  I guess I'm not sure --
23  MS. NEWMAN:  Objection.
24  A.  -- what that means, so I don't --
25  that's why I don't know.

---

32

V. Melwani
1
2  Q.  Did you enter into any agreements
3  with any entity to purchase their
4  seven-and-a-quarter-percent Tribune notes?
5  A.  I think -- whenever we buy
6  anything, there's always someone selling it
7  to us.  So presumably we're always entering
8  into an agreement with someone.  So I'm not
9  sure if that's what you're asking me, but
10  yes, someone sold them to us.
11  Q.  Are there written agreements
12  documenting those sales?
13  A.  I don't know.  I don't know if
14  they're trade confirms or -- I don't know.
15  Q.  Have you ever seen any written
16  agreements documenting the sales?
17  A.  I have not.
18  Q.  What percentage does Centerbridge
19  currently hold in the seven-and-a-quarter
20  notes?
21  A.  I don't know offhand.
22  Q.  Is it greater than 60 percent?
23  A.  I don't think so.  Oh, wait.  I'm
24  sorry.  I'm sorry.  On the seven and a
25  quarter.  I don't know offhand.

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

---

33

1          V. Melwani
2    Q.  Do you know what percentage of
3  notes, of the 6.61 percent notes that
4  Centerbridge currently holds?
5    A.  I don't have the percentages for
6  any of our holdings.  I wouldn't be able to
7  tell you offhand.
8    Q.  At what price did Centerbridge
9  acquire the seven-and-a-quarter notes?
10    MS. NEWMAN:  Objection.  Don't
11  answer that.
12    MR. RUSSANO:  What's the basis for
13  that?
14    MS. NEWMAN:  It's proprietary.
15  It's irrelevant.
16    MR. RUSSANO:  Which one?
17    MS. NEWMAN:  It's both of those.
18    MR. RUSSANO:  But the instruction
19  not to answer is based on --
20    MS. NEWMAN:  Both of those.
21    MR. RUSSANO:  -- relevance
22  or propriety?
23    MS. NEWMAN:  It's based on both of
24  those.  You had much fair warning that
25  we were not going to be answering

---

34

1          V. Melwani
2  questions like that.
3    MR. RUSSANO:  And you had fair
4  warning that I didn't agree.
5    MS. NEWMAN:  We objected.
6    MR. RUSSANO:  How is it proprietary
7  --
8    MS. NEWMAN:  He's not going to
9  answer those questions.  So if you want
10  to take -- you know, you can do whatever
11  you want, but he's not going to answer
12  those questions.
13    MR. RUSSANO:  Okay.  So you are
14  instructing him not to answer
15  questions --
16    MS. NEWMAN:  That's correct, I am.
17    Q.  And you are going to follow that
18  instruction?
19    A.  I think I am.
20    Q.  Was Centerbridge a holder of any
21  Tribune notes at the time the U.S. Trustee
22  was forming the creditors committee?
23    A.  I believe we were.
24    Q.  I'm sorry?
25    A.  I believe we were.

---

35

1          V. Melwani
2    Q.  Prior to June 8th, 2009, again, the
3  date of the Tripartite Agreement, did
4  Centerbridge have any conversations with
5  Deutsche Bank regarding the Tribune
6  bankruptcy?
7    A.  We did.
8    Q.  Did you receive regular updates
9  from Deutsche Bank?
10    A.  I wouldn't say regular, no.
11    Q.  What you would say?
12    A.  I would say when we called them,
13  they would talk to us.
14    Q.  And what were the topics of those
15  conversations?
16    A.  What was happening in the case,
17  telling them we were large holders.
18    Q.  Anything else?
19    A.  I think everything was probably
20  regarding those two things, what was going on
21  in the case and, you know, depending on what
22  was going on in the case, that's what we
23  would talk about at the time.
24    Q.  Who primarily would be the person
25  to speak with Deutsche Bank from

---

36

1          V. Melwani
2  Centerbridge?
3    A.  I think it was probably me.
4    Q.  Approximately how many different
5  conversations did you have with Deutsche Bank
6  regarding the Tribune bankruptcy?
7    MS. NEWMAN:  This is prior to the
8  execution of the Tripartite Agreement?
9    MR. RUSSANO:  This is prior to the
10  execution.
11    A.  I don't know.
12    Q.  Did you speak to them, speak
13  meaning either email, telephone, in person,
14  on a weekly basis?
15    A.  No.
16    Q.  Approximately how many times a
17  month would you estimate you spoke with them?
18    A.  A few times a month.  It may have
19  been with their counsel more than them.
20    Q.  Their counsel being?
21    A.  Adler, David Adler.
22    Q.  Did you ever request information
23  from Deutsche Bank regarding what was
24  happening in the Tribune bankruptcy?
25    MS. NEWMAN:  Objection.

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

---

37

V. Melwani
2  A.  I am sure as part of the
3  conversation we asked them.
4  Q.  Do you recall Deutsche Bank ever
5  refusing to provide information to
6  Centerbridge?
7  A.  I think only when there were
8  limitations as to what they could say.
9  Q.  Do you recall specifically those
10  instances when Centerbridge requested
11  information and Deutsche Bank was unable to
12  provide that information?
13  A.  I don't know if there was any
14  specific time as opposed to that always
15  being, you know, the overlay.  They were
16  committee members, and there were limitations
17  to what they could say.
18  Q.  So just so I'm clear, is it the
19  case that you had a general understanding
20  that they had certain limitations and
21  therefore didn't ask for information that
22  would be protected by those limitations?
23  A.  I had that understanding.  And
24  yeah, I tried to make sure I didn't ask, but.
25  Q.  Was there ever a time when you did

---

38

V. Melwani
2  ask for information and Deutsche Bank
3  informed you that they couldn't provide that
4  information because they had certain
5  limitations?
6  A.  Not that I recall.
7  Q.  Turning your attention back to the
8  Tripartite Agreement.
9  A.  Yes.
10  Q.  Exhibit 3.  Did you have any role
11  in drafting this agreement?
12  A.  I did not, but -- I did not.
13  Q.  Did you have any role in
14  negotiating the agreement?  You meaning
15  Centerbridge.
16  A.  I did not.  Our counsel did.
17  Q.  Counsel, again, meaning Akin Gump?
18  A.  At that point it was -- it may not
19  have been Akin at that point.  I think it was
20  Milbank.  And prior to that it was Quinn
21  Emanuel.
22  Q.  Are those the three outside
23  attorneys that have represented Centerbridge
24  with respect to the Tribune matter?
25  A.  I think so.

---

39

V. Melwani
2  Q.  Did you review drafts of the
3  Tripartite Agreement prior to it being
4  executed?
5  A.  I'm sure I did, but not that I
6  specifically recall.
7  Q.  Do you recall providing any
8  comments on the draft?
9  MS. NEWMAN:  Just to be clear, if
10  the comments were communicated to, you
11  know, parties outside of your counsel,
12  you can answer, but exclude from your
13  answer discussions that you had
14  regarding this agreement with your
15  counsel.
16  A.  They were all with my counsel.
17  Q.  If you could take another look at
18  the last whereas clause on the first page.
19  We reviewed the first part of the first
20  sentence.  Continuing on with that first
21  sentence where it says, "and more than
22  42 percent in principal amount of the
23  outstanding securities."  Do you see that?
24  A.  Yes.
25  Q.  This whereas clause is referring to

---

40

V. Melwani
2  Centerbridge; correct?
3  A.  Yes.
4  Q.  That 42 percent, to your knowledge,
5  that was an accurate percentage as of
6  June 8th, 2009; correct?
7  A.  I believe so.
8  Q.  Do you know what that percentage
9  would be today?
10  MS. NEWMAN:  Objection.  I think
11  that's been asked and answered.
12  A.  I don't.
13  Q.  It goes on and says, "have
14  submitted a request to issuer and successor
15  trustee that the issuer appoint successor
16  trustee."  Do you see that?
17  A.  I do.
18  Q.  Did Centerbridge submit a request
19  to Tribune to replace Deutsche Bank with Law
20  Debenture?
21  A.  We submitted a request.  I don't
22  know if it was to Tribune.
23  Q.  Was it a written request?
24  A.  I don't believe it was.
25  Q.  Was it over the phone, a phone

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

---

**41**

V. Melwani

1
2  conversation?
3      A.  I think it was.
4      Q.  Between who?
5      A.  Our counsel and the various
6  counsels, us and probably Deutsche Bank's
7  counsel.
8      Q.  And were you on that call?
9      A.  I don't know if there was one
10 specific call, but we were on calls about the
11 topic.
12     Q.  Why did Centerbridge submit this
13 request?
14     A.  We believed that Deutsche Bank
15 might have been conflicted or may have had
16 some issues because they were listed on the
17 bankruptcy filings as a large bank debt
18 holder.
19     Q.  Any other reason?
20     A.  I believe that was primarily our
21 reason.
22     Q.  That was primarily your reason.
23 Any other non-primary reason?
24     A.  Not that I recall.
25     Q.  Was there anything that

---

**42**

V. Melwani

1
2  Centerbridge was dissatisfied with regarding
3  Deutsche Bank's performance on the committee?
4      A.  Our concern at the time was that
5  the unsecured bonds may not be -- were not
6  adequately represented if they were
7  represented by someone who owned a lot of
8  bank debt.
9      Q.  Did that concern in Centerbridge's
10 opinion manifest itself in any of the
11 decisions that Deutsche Bank made on the
12 committee at the time this agreement was
13 executed into?
14     A.  I don't understand the question.
15     Q.  Well, you testified, I think, that
16 there was a general concern at Centerbridge
17 regarding whether or not Deutsche Bank had a
18 conflict; correct?
19     A.  Yes.
20     Q.  Aside from that general concern,
21 was there anything that Deutsche Bank did or
22 didn't do that Centerbridge was dissatisfied
23 with?
24     A.  We were somewhat dissatisfied with
25 the what we viewed at the time as a lack of

---

**43**

V. Melwani

1
2  -- lack of vigilance on -- a lack of, I'm not
3  sure what the right word is, but a lack of
4  the committee focusing on what we viewed as
5  some material issues.
6      Q.  Did you have an understanding at
7  that time what the committee was, in fact,
8  focusing on?
9      A.  I did not.
10     Q.  Did Centerbridge?
11     A.  No, not that I know of.
12     Q.  So, to your knowledge, you didn't
13 know what the committee was focusing on --
14     A.  Um-hmm.
15     Q.  -- and therefore didn't know what
16 they were not focusing on.  Is that accurate?
17     A.  You kind of lost me, but.
18         MS. NEWMAN:  Objection.
19     Q.  Your testimony, if I understand it,
20 was that there was dissatisfaction about what
21 the committee wasn't focusing on; correct?
22     A.  Yes.
23     Q.  And your testimony is also that
24 there was no understanding of what the
25 committee was focusing on; correct?

---

**44**

V. Melwani

1
2      A.  Correct.
3      Q.  All right.  We'll just leave it at
4  that.  Any other specific things that
5  Deutsche Bank did or didn't do as indenture
6  trustee for the March indenture that
7  Centerbridge was not satisfied with?
8      A.  Not that I recall.
9      Q.  Is it fair to say that in
10 submitting the request for Law Debenture to
11 succeed Deutsche Bank, that the motive behind
12 that was to attempt to focus the committee on
13 other areas?
14     A.  No.
15     Q.  What was the rationale behind
16 requesting that Law Debenture take over?
17         MS. NEWMAN:  Objection.  That's
18 been asked and answered.  You can answer
19 it again.
20     A.  We were concerned that -- I mean
21 it's what I said before.  We were concerned
22 that Deutsche Bank was a large bank holder.
23 They may have some limitations on being able
24 to act for the unsecured holders.
25     Q.  And when you said before that there

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

45

1          V. Melwani
2    was a concern that Deutsche Bank -- about
3    Deutsche Bank's failure to focus or lack of
4    focusing on certain issues --
5          A.  I don't believe that's what I said.
6          Q.  Correct.  Let me rephrase.  When
7    you testified before that there was a concern
8    about the committee not focusing on certain
9    issues, was it Centerbridge's desire in
10   having Law Debenture appointed to try to
11   focus the committee on those things that, in
12   Centerbridge's view, they weren't focusing
13   on?
14         A.  No.  It was to have a
15   representative of the unsecured bonds focus
16   on that issue, focus on those issues.
17         Q.  Centerbridge is still represented
18   by Deutsche Bank as indenture trustee with
19   respect to other series of Tribune notes;
20   correct?
21         A.  Yes.
22         Q.  Any dissatisfaction with Deutsche
23   Bank's performance with respect to those
24   other series of notes?
25         A.  No.  Not really.

46

1          V. Melwani
2          Q.  Has Centerbridge ever taken any
3    steps to have Deutsche Bank replaced as
4    indenture trustee with respect to the other
5    series of notes?
6          A.  No.  Let me just clarify that.  Not
7    since June 6th.  I mean when the original
8    discussions happened, I don't know if the
9    original discussions just talked about this
10   one series as opposed to talking about all of
11   the series.
12         Q.  Let me ask you a couple of
13   questions on that.  Do you know if there was
14   -- before we go there, Law Debenture is the
15   indenture trustee for both series under the
16   March indenture; correct?
17         A.  Yes.
18         Q.  Do you know if there was a
19   discussion about whether or not Law Debenture
20   would take over as indenture trustee with
21   respect to only one of the two series?
22         A.  I don't.
23         Q.  Do you recall any dispute over that
24   issue, whether or not Law Debenture would
25   take over with respect to only one of the

47

1          V. Melwani
2    series as opposed to both?
3          A.  I don't recall.
4          Q.  Has Centerbridge ever attempted to
5    join the creditors committee?
6          A.  We have.
7          Q.  How many times?
8          A.  Certainly once.  Maybe twice.  I'm
9    just not sure about the second one, whether
10   we actually ever did it.
11         Q.  Do you remember which counsel was
12   representing you at the time of the first
13   attempt?
14         A.  I believe it was Quinn, but I'm not
15   100 percent certain.
16         Q.  And was there subsequent discussion
17   after that first attempt to attempt again to
18   join the creditors committee?
19         MS. NEWMAN:  Outside of discussion
20   that you had with your counsel.
21         A.  Nothing outside discussion with
22   counsel.
23         MR. RUSSANO:  Well, I guess I don't
24   want to find out what those discussions
25   were, but I think he can answer whether

48

1          V. Melwani
2    or not they took place.  Do you agree?
3          MS. NEWMAN:  Sure.  You can answer
4    yes or no whether or not you had
5    conversations.  I think he just did
6    answer that way.  But you can give a yes
7    or no answer to that question.
8          A.  I believe we might -- I believe,
9    I'm not certain, that we did again discuss it
10   with counsel subsequently.
11         Q.  And was that also Quinn, or were
12   you represented by new counsel?
13         A.  I think it was -- it was either
14   Milbank or Akin at that point.
15         Q.  At the time that Centerbridge
16   attempted to join the creditors committee,
17   did you hold a majority interest in the
18   seven-and-a-quarter-percent notes?
19         A.  I am not certain.  I believe we
20   did, but I'm not certain.
21         Q.  Do you remember when that first
22   attempt was, approximately, what month?
23         A.  I don't.  Early in the year, March,
24   April time frame, I believe.  But, again, not
25   certain.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

49

V. Melwani

1
2  Q.  Was the decision to submit a
3  request to have Deutsche Bank replaced
4  motivated in whole or in part by
5  Centerbridge's inability to get appointed to
6  the creditors committee?
7      A.  I don't know.  I mean it's, you
8  know, a lot of things factored into that.
9  Did that factor in, I, you know, I can't say.
10 I don't know.
11     Q.  Who would know?
12     A.  I guess the answer is it's
13 possible.  I just don't know if it factored
14 in at some level.  It may have.
15     Q.  And I appreciate that, but who
16 actually would know, if anyone would?
17     A.  I would.
18     Q.  Do you know if Law Debenture
19 requested any information from Deutsche Bank
20 in connection with taking over as indenture
21 trustee?
22     A.  I don't.
23         MS. NEWMAN:  Michael, we've been
24 going for about an hour, so if we have a
25 breaking point, now is a good time.

50

V. Melwani

1
2          MR. RUSSANO:  That's fine.
3          (Recess taken from 2:59 p.m. to
4  3:04 p.m.)
5      Q.  Did Centerbridge submit a request
6  to have Law Debenture replace Deutsche Bank
7  for the purpose of obtaining influence or
8  control over Tribune's restructuring?
9          MS. NEWMAN:  Objection.
10     A.  No.  We did it for the reason I
11 stated earlier.
12         MR. RUSSANO:  Let me mark as
13 Exhibit 4 a one-page document.
14         (Melwani Exhibit 4, Document from
15 Centerbridge's 2007 web site, marked for
16 identification, as of this date.)
17     Q.  This is a document that we pulled
18 off of Centerbridge's 2007 web site.  Have
19 you ever seen this --
20     A.  I have not.
21     Q.  -- this document?
22     A.  I have not.
23     Q.  If you could just take a moment to
24 read the description.  Let me know when
25 you're finished.

51

V. Melwani

1
2      A.  I'm finished.
3      Q.  Have you ever seen that description
4  of Centerbridge's investment strategy before?
5      A.  I don't know if I've ever seen
6  these exact words, but --
7      Q.  I'm sorry.  Go ahead.
8      A.  I don't know if I've ever seen
9  these exact words ever.
10     Q.  Would you agree with the
11 description set forth in this paragraph that
12 it is Centerbridge's primary purpose to
13 obtain influence or control of the
14 restructuring of financially troubled
15 companies?
16     A.  I mean I don't know if I agree with
17 the word "primary purpose."  You know, it's
18 written here, but we -- but generally, yes.
19     Q.  Was anything different with respect
20 to what Centerbridge's purpose was, was
21 anything different with respect to the
22 Tribune bankruptcy?
23     A.  I don't understand the question.
24     Q.  Was anything different with respect
25 to the Tribune bankruptcy from what is

52

V. Melwani

1
2  generally the case that you just testified
3  to, that this document accurately reflects
4  Centerbridge's general investment strategy?
5          MS. NEWMAN:  Objection to form.
6      A.  Again, honestly, I'm just not sure
7  what I'm answering.
8      Q.  Would you agree that it's
9  Centerbridge's general investment strategy to
10 obtain influence over or control of the
11 restructuring of financially troubled
12 companies?
13         MS. NEWMAN:  I think he answered
14 that question.
15         MR. RUSSANO:  I think he answered
16 it yes, but I want to confirm.
17     A.  Yeah, I agree we like to have
18 influence in what we invest in.
19     Q.  Would you agree that with respect
20 to the Tribune transaction, that
21 Centerbridge's investment strategy was to
22 obtain influence over or control of the
23 restructuring of Tribune?
24     A.  I don't know -- no.
25     Q.  So you think that the Tribune



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                    February 9, 2010

---

53

V. Melwani

1
2  investment differed from what is generally
3  the investment strategy by Centerbridge?
4      MS. NEWMAN:  Objection to form.
5      A.   We like to have influence when we
6  think it's necessary.  We came to think in
7  Tribune it was necessary at some point.
8      Q.   At what point did you think it
9  became necessary to obtain influence?
10     A.   Well, initially when we became
11 concerned that, you know, Deutsche Bank may
12 have had a conflict of some sort, and so we
13 became a little more active at that point.
14     Q.   And that was around the time of the
15 Tripartite Agreement?
16     A.   Before that.
17     Q.   How many days, weeks, months before
18 that?
19     A.   A number of months before that we
20 started engaging with -- a number of months
21 before that.
22     Q.   Was the appointment of Law
23 Debenture part of the effort to obtain
24 greater influence over the Tribune
25 restructuring?

---

54

V. Melwani

1
2      A.   The appointment of Law Debenture
3  was to ensure that we had a representative
4  that was truly unconflicted.
5      Q.   And was that part of the effort to
6  obtain greater influence?
7      A.   It was -- it was to ensure that we
8  had a representative who was unconflicted.
9      Q.   Can you not answer my question yes
10 or no?
11     MS. NEWMAN:  I think he's answered
12 your question.  He's just not taking
13 your words.
14     A.   Yeah, I...
15     Q.   So are you saying you can't answer
16 my question with a yes or no?
17     MS. NEWMAN:  You don't have to
18 answer the question with a yes or no.
19 Just answer the question truthfully and
20 honestly.
21     A.   We wanted to ensure there was an
22 unconflicted representative, and yeah, I
23 guess in some ways that -- that we wanted --
24 yes.
25     Q.   Yes?

---

55

V. Melwani

1
2      A.   I think.  Tell me the question
3  again.
4      Q.   Okay.  Why don't we take this
5  fresh.
6      A.   Okay.
7      Q.   You testified earlier that there
8  came a time when Centerbridge decided it
9  needed to obtain greater influence over the
10 Tribune restructuring.  Is that fair?
11     A.   No.  There came a time where we
12 decided we needed to be more active.
13     Q.   Okay.  We'll let the record speak
14 for itself.
15     A.   Okay.
16     Q.   But I think you said something
17 differently.  What steps did you take to
18 become more active?
19     A.   We tried to join the creditors
20 committee.  We started interacting more with
21 the various parties in the case.  And we
22 started having discussions with Deutsche Bank
23 about what we perceived as a possible
24 limitation on their ability to fully act.
25     Q.   And is it fair to say that one of

---

56

V. Melwani

1
2  the steps you took was to have Law Debenture
3  replace Deutsche Bank?
4      A.   Yes.
5      Q.   What changed between the first time
6  Centerbridge purchased notes in Tribune and
7  the point at which there was a determination
8  that Centerbridge needed to take additional
9  steps with respect to its investment?
10     MS. NEWMAN:  Objection.
11     A.   Our concern that the committee was
12 not -- our concern that no one was focusing
13 on the larger issues in the case.
14     Q.   This is the same issue you
15 testified to earlier; correct?
16     A.   Which issue?
17     Q.   That you were concerned that no one
18 was focusing on the larger areas?
19     A.   Yes.
20     Q.   Do you think that by appointing Law
21 Debenture, Centerbridge has been able to
22 obtain greater influence over the Tribune
23 restructuring?
24     A.   I don't know if we have any
25 influence over the Tribune restructuring.

---



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

57

1           V. Melwani
2       Q.  You don't know; is that right?  Is
3   that what you said?
4       A.  Yeah.
5       Q.  When did Centerbridge first learn
6   of the fee reimbursements, the issue that is
7   described in the fee motion?
8       A.  I don't recall exactly, but I
9   believe it was in August at some point.
10      Q.  And how did you learn, how did
11  Centerbridge learn in August of the fee
12  payments?
13      A.  Again, I don't know whether it was
14  an issue that occurred to us as to how the
15  banks were getting paid when they were
16  unsecured or whether someone mentioned it to
17  us, but I believe in August at some point we
18  raised it with various people, and we came to
19  learn that it was being paid through a
20  non-debtor subsidiary.
21      Q.  And just, it might have been in
22  there, but just so I'm clear, is it that you
23  don't know exactly how it was brought to
24  Centerbridge's attention?
25      A.  I don't remember exactly whether we

58

1           V. Melwani
2   came up with the question or someone raised
3   -- someone raised it with us.
4       Q.  And do you know who, if it was the
5   fact that someone raised it, who would that
6   someone be?
7       A.  It could have been any of the
8   people we were talking to, which at that
9   point was, you know, the company, the
10  committee, our indenture trustee, some of the
11  banks.
12      Q.  After learning of the fee payments,
13  did you discuss those payments with anyone
14  from Deutsche Bank?
15      A.  I don't believe with anyone from
16  Deutsche Bank.
17      Q.  Did you discuss those payments with
18  anyone from Law Debenture?
19      A.  With Law Debenture's counsel.  And
20  I don't know if we discussed them directly
21  with Law Debenture.
22      Q.  Law Debenture's counsel meaning
23  Kasowitz Benson?
24      A.  Yes, sir.
25      Q.  Was that Mr. Rosner?

59

1           V. Melwani
2       A.  Mr. Rosner or Andrew Glenn.
3       Q.  What do you recall regarding those
4   conversations?
5           MS. NEWMAN:  I'm going to object to
6       that and instruct the witness not to
7       answer.  We have a common interest
8       agreement with Law Debenture and its
9       counsel, and that information is
10      privileged, those conversations are
11      privileged.
12          MR. RUSSANO:  Do you know if that's
13      a written agreement?
14          MS. NEWMAN:  I think there is a
15      written agreement.
16      Q.  Did you have any conversations with
17  Law Debenture regarding the fee payments
18  where other parties not from Law Debenture or
19  Centerbridge or Law Debenture's counsel or
20  Centerbridge's counsel were present?  Do you
21  understand the question?
22      A.  I do.  Not that I recall.
23      Q.  Did you have any conversation
24  regarding the fee payments with any parties
25  other than your counsel, Law Debenture, or

60

1           V. Melwani
2   Law Debenture's counsel?
3       A.  I don't recall.  I believe we
4   raised it with the creditors committee
5   counsel as well as potentially, I'm not
6   certain, the debtors' counsel.
7       Q.  Creditors committee counsel being
8   Chadbourne & Parke?
9       A.  Yes.
10      Q.  And debtors' counsel being Sidley
11  Austin?
12      A.  Yes.
13      Q.  Do you recall anything about the
14  substance of those conversations?
15      A.  We asked how could it be.
16      Q.  Did you learn at that time that the
17  creditors committee was informed of the
18  payments?
19      A.  I believe so.
20      Q.  And can you approximate when this
21  was, these conversations with the creditors
22  committee's counsel?
23      A.  Sometime after August.
24      Q.  Were those conversations in the
25  next week or two after first learning of the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

61

V. Melwani

1      V. Melwani
2    fee payments?
3      A.  It could have been later.  I don't
4    recall.
5      Q.  Those conversations with the
6    creditors committee, creditors committee's
7    counsel, was that the first time you learned
8    that the creditors committee had been
9    informed of the payments?  You meaning
10   Centerbridge.
11     A.  I don't recall when we learned
12   that.
13     Q.  Are you aware that -- is
14   Centerbridge aware that the creditors
15   committee made a decision not to object to
16   the fee payments in February 2009?
17     A.  I have subsequently learned that,
18   yes.
19     Q.  When did you learn that?
20     A.  Again, I don't recall when I
21   specifically learned it.  I remember reading
22   some emails, you know, out of this whole
23   discovery stuff that also indicated that.
24     Q.  When you say "this discovery
25   stuff," do you mean in connection with the

62

1      V. Melwani
2    fee motion that was brought by --
3      A.  Yeah, I don't remember where the
4    discovery -- in which discovery it was.
5      Q.  Did you learn in 2009 that the
6    creditors committee made a decision not to
7    object?
8      A.  I believe so.
9      Q.  Can you describe for me what
10   counsel for the creditors committee said to
11   Centerbridge when Centerbridge questioned the
12   fee payments?
13     A.  I don't recall what they said.
14     Q.  Was anyone from Centerbridge on
15   those phone calls or meetings?
16     A.  Yeah.  It would have been me, but,
17   again, this was -- I think it was raised with
18   Howard Seife, but I don't specifically
19   remember what his response was.
20     Q.  You said before that these
21   conversations may have been more than --
22   could possibly have been more than two weeks
23   after you first learned of the payments;
24   correct?
25     A.  Yes.

63

1      V. Melwani
2      Q.  Could they have been more than four
3    weeks after you learned of the payments?
4      A.  I'm guessing.  I don't remember
5    when we had these conversations after we
6    first learned.
7      Q.  And I understand you don't
8    specifically know.  Is it also the case that
9    you don't have a general recollection of when
10   you had these conversations?
11     A.  It is.
12     Q.  After Centerbridge learned that
13   these payments were being made, did
14   Centerbridge acquire additional Tribune
15   notes?
16     A.  We did not.
17     Q.  Did Centerbridge learn that the
18   U.S. Trustee had been informed of the
19   payments?
20     A.  I heard it from our counsel, so.
21         MS. NEWMAN:  Okay.
22     Q.  Aside from your counsel?
23     A.  No.
24         MR. RUSSANO:  Why don't we take a
25   minute.

64

1      V. Melwani
2         MS. NEWMAN:  Sure.
3         (Recess taken from 3:23 p.m. to
4    3:26 p.m.)
5      Q.  After Centerbridge first learned of
6    the fee payments, how soon after did you have
7    a conversation with Law Debenture regarding
8    the fee payments?
9      A.  Law Debenture's counsel, probably
10   fairly soon after.
11         MR. RUSSANO:  That is all I have.
12         THE WITNESS:  Okay.  Great.
13         (Continued on next page to include
14   jurat.)



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

65

1      V. Melwani
2      MR. RUSSANO:  Anyone else?
3      MR. FLIMAN:  No questions.
4      MS. NELLOS:  No.
5      MR. TRUITT:  No.
6      (Time noted: 3:27 p.m.)
7
8
9
10     _____
11         VIVEK MELWANI
12
13     Subscribed and sworn to before me
14     this ___ day of _____, 2010.
15
16     _____
17
18
19
20
21
22
23
24
25

67

1
2      ------------- I N D E X ---------------
3      WITNESS       EXAMINATION BY       PAGE
4      V. Melwani     Mr. Russano       6
5
6      ----------- INFORMATION REQUESTS -----------
7      DIRECTIONS:  31, 33, 34, 59
8      RULINGS:
9      TO BE FURNISHED:
10     REQUESTS:
11     MOTIONS:
12
13
14
15
16
17
18
19
20
21
22
23
24
25

66

1
2          C E R T I F I C A T E
3      STATE OF NEW YORK        )
4                             : ss.
5      COUNTY OF WESTCHESTER    )
6
7          I, JOAN WARNOCK, a Notary Public
8      within and for the State of New York, do
9      hereby certify:
10         That VIVEK MELWANI, the witness
11     whose deposition is hereinbefore set
12     forth, was duly sworn by me and that
13     such deposition is a true record of the
14     testimony given by the witness.
15         I further certify that I am not
16     related to any of the parties to this
17     action by blood or marriage, and that I
18     am in no way interested in the outcome
19     of this matter.
20         IN WITNESS WHEREOF, I have hereunto
21     set my hand this 10th day of February,
22     2010.
23
24     _____
25         JOAN WARNOCK

68

1         DEPOSITION ERRATA SHEET
2      ------------------ EXHIBITS ----------------
3      MELWANI EXHIBIT              FOR ID.
4      EXHIBIT 1          8
5      JPMorgan Chase Bank, N.A.'s, Notice
6      of Deposition of Centerbridge
7      Credit Advisers, LLC
8      EXHIBIT 2          26
9      Indenture dated March 19th, 1996
10     EXHIBIT 3          29
11     Document Bates stamped LD Fees
12     00000364 through 370
13     EXHIBIT 4          50
14     Document from Centerbridge's 2007
15     web site
16
17
18
19
20
21
22
23
24
25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                    February 9, 2010

69

1      DEPOSITION ERRATA SHEET
2   Our Assignment No.: 307444
3   Case Caption:  In Re Tribune, et al.
4
5      DECLARATION UNDER PENALTY OF PERJURY
6
7         I declare under penalty of perjury
8   that I have read the entire transcript of my
9   Deposition taken in the captioned matter or
10  the same has been read to me, and the same is
11  true and accurate, save and except for
12  changes and/or corrections, if any, as
13  indicated by me on the DEPOSITION ERRATA
14  SHEET hereof, with the understanding that I
15  offer these changes as if still under oath.
16  _____
17            Vivek Melwani
18  Subscribed and sworn to on the ____ day of
19  _____, 20 ____ before me.
20  _____
21  Notary Public,
22  in and for the State of
23  _____.
24
25

70

1      DEPOSITION ERRATA SHEET
2   Page No.____Line No.____Change to:_____
3   _____
4   Reason for change:_____
5   Page No.____Line No.____Change to:_____
6   _____
7   Reason for change:_____
8   Page No.____Line No.____Change to:_____
9   _____
10  Reason for change:_____
11  Page No.____Line No.____Change to:_____
12  _____
13  Reason for change:_____
14  Page No.____Line No.____Change to:_____
15  _____
16  Reason for change:_____
17  Page No.____Line No.____Change to:_____
18  _____
19  Reason for change:_____
20  Page No.____Line No.____Change to:_____
21  _____
22  Reason for change:_____
23
24  SIGNATURE:_____DATE:_____
25            Vivek Melwani

71

1      DEPOSITION ERRATA SHEET
2   Page No.____Line No.____Change to:_____
3   _____
4   Reason for change:_____
5   Page No.____Line No.____Change to:_____
6   _____
7   Reason for change:_____
8   Page No.____Line No.____Change to:_____
9   _____
10  Reason for change:_____
11  Page No.____Line No.____Change to:_____
12  _____
13  Reason for change:_____
14  Page No.____Line No.____Change to:_____
15  _____
16  Reason for change:_____
17  Page No.____Line No.____Change to:_____
18  _____
19  Reason for change:_____
20  Page No.____Line No.____Change to:_____
21  _____
22  Reason for change:_____
23
24  SIGNATURE:_____DATE:_____
25            Vivek Melwani



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

WORD INDEX
MELWANI, VIVEK

Vivek Melwani                                    February 9, 2010

72

| A | | | | |
|---|---|---|---|---|
| **Aaronson** | 25:18 | 69:12 | 10:8 11:9 | 3:6,13 5:9 |
| 15:24 17:25 | **ago** | **answer** | 19:8 42:20 | **aware** |
| **ability** | 29:11 | 6:20,24,25 | 63:22 | 13:14 26:25 |
| 55:24 | **agree** | 7:11,19,24 | **asked** | 27:10 30:15 |
| **able** | 34:4 48:2 | 8:2,5 18:14 | 37:3 40:11 | 61:13,14 |
| 8:5 33:6 | 51:10,16 | 24:13 25:22 | 44:18 60:15 | **A-u-r-a** |
| 44:23 56:21 | 52:8,17,19 | 28:23 31:4 | **asking** | 17:23 |
| **accurate** | **agreement** | 33:11,19 | 24:20 31:3 | |
| 24:13 40:5 | 3:12 5:20 | 34:9,11,14 | 32:9 | B |
| 43:16 69:11 | 28:22 29:10 | 39:12,13 | **aspects** | **bachelor's** |
| **accurately** | 30:5,9,12 | 44:18 47:25 | 15:13 16:13 | 13:22 |
| 52:3 | 32:8 35:3 | 48:3,6,7 | 16:18 18:18 | **back** |
| **acquire** | 36:8 38:8 | 49:12 54:9 | 18:20 19:2 | 26:5 38:7 |
| 26:8 29:25 | 38:11,14 | 54:15,18,19 | 19:10 | **background** |
| 30:23 31:8 | 39:3,14 | 59:7 | **Assignment** | 13:21 |
| 31:12,14,19 | 42:12 53:15 | **answered** | 69:2 | **bank** |
| 33:9 63:14 | 59:8,13,15 | 40:11 44:18 | **associates** | 8:10,14 |
| **acquired** | **agreements** | 52:13,15 | 16:8 | 25:14 27:6 |
| 30:9 31:11 | 31:16,16 | 54:11 | **attached** | 30:12,15 |
| **act** | 32:2,11,16 | **answering** | 26:21 | 35:5,9,23 |
| 44:24 55:24 | **ahead** | 33:25 52:7 | **attempt** | 36:5,23 |
| **action** | 7:5,9,11,18 | **answers** | 44:12 47:13 | 37:4,11 |
| 66:17 | 7:24 8:8 | 6:18 | 47:17,17 | 38:2 40:19 |
| **active** | 10:3 28:25 | **applies** | 48:22 | 41:14,17 |
| 53:13 55:12 | 51:7 | 7:15 | **attempted** | 42:8,11,17 |
| 55:18 | **Akin** | **appoint** | 30:21 47:4 | 42:21 44:5 |
| **actively** | 2:7 6:4 | 40:15 | 48:16 | 44:11,22,22 |
| 20:4 | 10:24 11:23 | **appointed** | **attention** | 45:2,18 |
| **actual** | 20:7,11 | 30:16 45:10 | 29:13 38:7 | 46:3 49:3 |
| 23:12 24:17 | 38:17,19 | 49:5 | 57:24 | 49:19 50:6 |
| 25:6 | 48:14 | **appointing** | **attorney** | 53:11 55:22 |
| **additional** | **al** | 56:20 | 7:9,16,23,25 | 56:3 58:14 |
| 56:8 63:14 | 1:5 69:3 | **appointment** | 10:15,18 | 58:16 68:5 |
| **address** | **Alexandra** | 53:22 54:2 | 11:6,10,13 | **bankruptcy** |
| 5:7 | 4:14 5:24 | **appreciate** | 11:22 14:10 | 1:2 14:15,18 |
| **adequately** | **allow** | 49:15 | **attorneys** | 18:24 20:14 |
| 42:6 | 6:22,23 | **approximate** | 3:5,12,18 | 35:6 36:6 |
| **Adler** | **Americas** | 30:7 60:20 | 4:5,11 12:5 | 36:24 41:17 |
| 36:21,21 | 27:6 | **approxima...** | 13:8 20:2,7 | 51:22,25 |
| **Administered** | **amount** | 24:9 36:4,16 | 38:23 | **banks** |
| 1:6 | 29:16 39:22 | 48:22 | **August** | 57:15 58:11 |
| **Advisers** | **analysts** | **April** | 57:9,11,17 | **Bank's** |
| 8:12,15,24 | 16:8 | 48:24 | 60:23 | 41:6 42:3 |
| 9:4 23:11 | **Andrew** | **area** | **Aura** | 45:3,23 |
| 23:21 68:7 | 3:9 59:2 | 14:14 15:20 | 17:21 | **based** |
| **afield** | **Andy** | **areas** | **Austin** | 33:19,23 |
| | 5:15 | 44:13 56:18 | 3:17 60:11 | **basis** |
| | **and/or** | **aside** | **Avenue** | 33:12 36:14 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                            February 9, 2010

73

| | | | | |
|---|---|---|---|---|
| **Bates** | 62:2 | 38:15,23 | 71:17,19,20 | 59:7 |
| 29:2,4 68:11 | **Bryant** | 40:2,18 | 71:22 | **communicated** |
| **behalf** | 2:8 | 41:12 42:2 | **changed** | 39:10 |
| 5:23,25 6:4 | **buy** | 42:16,22 | 56:5 | **companies** |
| 6:9 8:23 | 32:5 | 43:10 44:7 | **changes** | 51:15 52:12 |
| **believe** | | 45:17 46:2 | 69:12,15 | **company** |
| 6:6 23:23 | ——— C ——— | 47:4 48:15 | **Chapter** | 1:5 26:22 |
| 31:18 34:23 | **C** | 50:5 53:3 | 1:4 | 27:6 58:9 |
| 34:25 40:7 | 3:2 4:2 66:2 | 55:8 56:6,8 | **Chase** | **concern** |
| 40:24 41:20 | 66:2 | 56:21 57:5 | 8:10,13 68:5 | 42:4,9,16,20 |
| 45:5 47:14 | **call** | 57:11 59:19 | **Chicago** | 45:2,7 |
| 48:8,8,19 | 41:8,10 | 61:10,14 | 3:20 | 56:11,12 |
| 48:24 57:9 | **called** | 62:11,11,14 | **clarify** | **concerned** |
| 57:17 58:15 | 5:2 35:12 | 63:12,14,17 | 20:25 46:6 | 44:20,21 |
| 60:3,19 | **calls** | 64:5 68:6 | **clause** | 53:11 56:17 |
| 62:8 | 41:10 62:15 | **Centerbri...** | 29:15 39:18 | **confirm** |
| **believed** | **Capital** | 25:8,20 42:9 | 39:25 | 52:16 |
| 41:14 | 23:24 24:3,9 | 45:9,12 | **clean** | **confirms** |
| **belonging** | **Caption** | 49:5 50:15 | 6:22 | 32:14 |
| 25:24 | 69:3 | 50:18 51:4 | **clear** | **conflict** |
| **Bennett** | **captioned** | 51:12,20 | 37:18 39:9 | 42:18 53:12 |
| 3:11 5:19 | 69:9 | 52:4,9,21 | 57:22 | **conflicted** |
| **Benson** | **case** | 57:24 59:20 | **clearer** | 41:15 |
| 4:4 5:22 | 1:5 19:14,14 | 68:14 | 26:7 | **connection** |
| 58:23 | 19:21,22,23 | **certain** | **comments** | 49:20 61:25 |
| **bit** | 35:16,21,22 | 15:14 23:6 | 39:8,10 | **Continued** |
| 24:11 | 37:19 52:2 | 37:20 38:4 | **committee** | 64:13 |
| **blood** | 55:21 56:13 | 45:4,8 | 4:11 6:2 | **continuing** |
| 66:17 | 63:8 69:3 | 47:15 48:9 | 19:16,17 | 9:7 39:20 |
| **bonds** | **Centerbridge** | 48:19,20,25 | 21:6 30:17 | **control** |
| 42:5 45:15 | 6:5 8:11,15 | 60:6 | 30:19,21 | 50:8 51:13 |
| **bottom** | 8:24 9:3,4 | **Certainly** | 34:22 37:16 | 52:10,22 |
| 29:14 | 12:14,18 | 47:8 | 42:3,12 | **Cont'd** |
| **bought** | 14:9,22 | **certainty** | 43:4,7,13 | 4:2 |
| 25:3 | 15:20 21:5 | 23:25 | 43:21,25 | **conversation** |
| **break** | 22:18 23:11 | **certify** | 44:12 45:8 | 12:9 37:3 |
| 7:7,10,12 | 23:14,15,18 | 66:9,15 | 45:11 47:5 | 41:2 59:23 |
| **breaking** | 23:21,24 | **Chadbourne** | 47:18 48:16 | 64:7 |
| 49:25 | 24:3,9 | 4:10 5:25 | 49:6 55:20 | **conversat...** |
| **Brent** | 25:24 26:8 | 60:8 | 56:11 58:10 | 13:10 35:4 |
| 3:15 5:18 | 27:24 28:3 | **change** | 60:4,7,17 | 35:15 36:5 |
| **Broadway** | 28:6,14 | 70:2,4,5,7,8 | 61:6,8,15 | 48:5 59:4 |
| 4:6 | 29:21,25 | 70:10,11,13 | 62:6,10 | 59:10,16 |
| **broker** | 30:9,20,23 | 70:14,16,17 | **committees** | 60:14,21,24 |
| 31:12 | 32:18 33:4 | 70:19,20,22 | 20:15,24 | 61:5 62:21 |
| **brought** | 33:8 34:20 | 71:2,4,5,7 | **committee's** | 63:5,10 |
| 22:17 57:23 | 35:4 36:2 | 71:8,10,11 | 60:22 61:6 | **copied** |
| | 37:6,10 | 71:13,14,16 | **common** | |





Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani

February 9, 2010

74

| | | | | |
|---|---|---|---|---|
| 22:23 | 9:3 23:11 | 31:12 | **DECLARATION** | 42:3,11,17 |
| **copy** | 23:21 68:7 | **Dearborn** | 69:5 | 42:21 44:5 |
| 26:20 | **creditors** | 3:19 | **declare** | 44:11,22 |
| **corporate** | 4:11 6:2 | **debenture** | 69:7 | 45:2,3,18 |
| 23:13 | 19:15,17 | 4:5 5:23 | **degree** | 45:22 46:3 |
| **correct** | 20:15 21:7 | 13:11,14 | 13:23 14:6 | 49:3,19 |
| 6:9 21:2 | 30:16,19 | 19:16,18 | **DELAWARE** | 50:6 53:11 |
| 25:4 27:25 | 34:22 47:5 | 21:13,19 | 1:2 | 55:22 56:3 |
| 30:13 34:16 | 47:18 48:16 | 22:18 26:25 | **depending** | 58:14,16 |
| 40:2,6 | 49:6 55:19 | 27:5,21,22 | 35:21 | **differed** |
| 42:18 43:21 | 60:4,7,17 | 40:20 44:10 | **deposed** | 53:2 |
| 43:25 44:2 | 60:21 61:6 | 44:16 45:10 | 6:13 12:11 | **different** |
| 45:6,20 | 61:6,8,14 | 46:14,19,24 | 12:24 13:15 | 7:5 24:18,19 |
| 46:16 56:15 | 62:6,10 | 49:18 50:6 | **deposition** | 24:22,22 |
| 62:24 | **currently** | 53:23 54:2 | 1:12 2:6 | 36:4 51:19 |
| **corrections** | 15:2 21:5 | 56:2,21 | 8:11,14 9:3 | 51:21,24 |
| 69:12 | 27:2 32:19 | 58:18,21 | 10:20 12:3 | **differently** |
| **counsel** | 33:4 | 59:8,17,18 | 12:4,21 | 55:17 |
| 10:21,23 | | 59:25 64:7 | 13:4,7,12 | **direct** |
| 19:18,20 | **D** | **debentures** | 13:17 25:19 | 29:13 |
| 20:8,10 | D | 29:17,22 | 66:11,13 | **DIRECTIONS** |
| 36:19,20 | 3:9 67:2 | 30:2 | 68:1,6 69:1 | 67:7 |
| 38:16,17 | **Daniel** | **Debenture's** | 69:9,13 | **directly** |
| 39:11,15,16 | 4:8 5:21 | 13:12 19:19 | 70:1 71:1 | 58:20 |
| 41:5,7 | **Danny** | 58:19,22 | **describe** | **director** |
| 47:11,20,22 | 11:20 | 59:19 60:2 | 13:3,20 14:7 | 14:23,25 |
| 48:10,12 | **date** | 64:9 | 15:10 16:16 | 16:2 |
| 58:19,22 | 8:17 26:18 | **Deborah** | 19:7 22:24 | **disclose** |
| 59:9,19,20 | 29:7 30:5 | 6:3 10:24 | 25:7 62:9 | 25:23 |
| 59:25 60:2 | 30:11 35:3 | 11:18 | **described** | **discovery** |
| 60:5,6,7,10 | 50:16 70:24 | **debt** | 57:7 | 61:23,24 |
| 60:22 61:7 | 71:24 | 25:3 26:3,4 | **description** | 62:4,4 |
| 62:10 63:20 | **dated** | 31:13 41:17 | 50:24 51:3 | **discuss** |
| 63:22 64:9 | 26:15,16,20 | 42:8 | 51:11 | 10:5 12:3,8 |
| **counsels** | 68:9 | **debtors** | **desire** | 48:9 58:13 |
| 41:6 | **Dave** | 1:7 60:6,10 | 45:9 | 58:17 |
| **counterparty** | 17:15,17 | **December** | **detail** | **discussed** |
| 31:16,20 | **David** | 26:11 | 19:7 | 12:6 58:20 |
| **COUNTY** | 17:17,18 | **decided** | **determina...** | **discussing** |
| 66:5 | 36:21 | 55:8,12 | 56:7 | 24:14 |
| **couple** | **Davis** | **deciding** | **Deutsche** | **discussion** |
| 6:15 46:12 | 3:4 5:13,16 | 19:13 | 27:6 30:12 | 46:19 47:16 |
| **court** | **day** | **decision** | 30:15 35:5 | 47:19,21 |
| 1:2 5:6 6:19 | 17:5 65:14 | 49:2 61:15 | 35:9,25 | **discussions** |
| 19:24 | 66:21 69:18 | 62:6 | 36:5,23 | 19:15,17 |
| **Credit** | **days** | **decisions** | 37:4,11 | 39:13 46:8 |
| 3:12 5:20 | 30:8 53:17 | 19:8 24:16 | 38:2 40:19 | 46:9 47:24 |
| 8:12,15,24 | **dealer** | 42:11 | 41:6,14 | 55:22 |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani

February 9, 2010

75

dispute
46:23
dissatisf...
43:20 45:22
dissatisfied
42:2,22,24
DISTRICT
1:2
docket
19:23 20:5
document
8:9,18 9:7
26:14 29:2
29:4,8
50:13,14,17
50:21 52:3
68:11,14
documenting
32:12,16
documents
11:3,9,9
doing
12:23 21:11
Dorman
3:11 5:19
draft
39:8
drafting
38:11
drafts
39:2
due
27:21,22
duly
5:3 66:12

**E**

E
3:2,2 4:2,2
5:2,2 66:2
66:2 67:2
earlier
8:21 10:21
28:21 50:11
55:7 56:15
early
26:12 48:23

educational
13:21
effort
53:23 54:5
either
15:8 36:13
48:13
email
36:13
emails
11:4 22:19
22:21,24
23:3,4,7,9
61:22
Emanuel
38:21
employee
12:13
employees
24:8
employer
23:12,14
employment
14:8
engaging
53:20
ensure
54:3,7,21
enter
32:2
entering
32:7
entire
12:11 69:8
entitled
8:10 9:8
entity
23:10,15
24:4,16,21
24:24 25:2
25:3,6 32:3
equity
26:4
ERRATA
68:1 69:1,13
70:1 71:1
ESQ

3:8,9,15,21
4:8,14
estimate
36:17
et
1:5 69:3
exact
22:4 51:6,9
exactly
57:8,23,25
Examination
6:11 9:8
67:3
examined
5:4
exclude
39:12
executed
39:4 42:13
execution
36:8,10
Exhibit
8:9,13 26:14
26:16 29:2
29:4 38:10
50:13,14
68:3,4,8,10
68:13
EXHIBITS
68:2
expect
6:16
extent
19:12 25:22

**F**

F
66:2
fact
43:7 58:5
factor
49:9
factored
49:8,13
failure
45:3
fair

19:6 30:4
33:24 34:3
44:9 55:10
55:25
fairly
64:10
falls
10:5
far
25:18
February
1:14 2:3
61:16 66:21
fee
22:14,16
23:4,7
25:14 57:6
57:7,11
58:12 59:17
59:24 61:2
61:16 62:2
62:12 64:6
64:8
feeder
24:19
Fees
29:3,5 68:11
Feld
2:8 6:4
filed
20:2 26:10
filing
26:21
filings
19:24 41:17
financially
51:14 52:11
find
47:24
fine
10:7 27:19
50:2
finish
6:22,23
finished
50:25 51:2
firm

5:13,16
12:12
first
7:19 26:8
29:14 39:18
39:19,19,20
47:12,17
48:21 56:5
57:5 60:25
61:7 62:23
63:6 64:5
five
10:12 22:8
Fliman
4:8 5:21,21
65:3
focus
44:12 45:3
45:11,15,16
focusing
18:18 43:4,8
43:13,16,21
43:25 45:4
45:8,12
56:12,18
follow
34:17
follows
5:5
form
52:5 53:4
formal
23:12
formed
30:20
forming
34:22
forth
51:11 66:12
four
9:20,21 10:5
10:9,16
63:2
frame
48:24
Frank
14:10,19
frequently



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

| | | | | |
|---|---|---|---|---|
| 21:12 | 8:8 10:3 | 46:8 | **holders** | 61:23 69:13 |
| **fresh** | 28:25 46:14 | **happening** | 29:15 35:17 | **influence** |
| 55:5 | 51:7 | 12:7 35:16 | 44:24 | 50:7 51:13 |
| **Fried** | **goes** | 36:24 | **holdings** | 52:10,18,22 |
| 14:10,18 | 40:13 | **Hauer** | 27:24 28:3 | 53:5,9,24 |
| **Friedman** | **going** | 2:8 6:4 | 33:6 | 54:6 55:9 |
| 4:4 5:22 | 12:22 19:13 | **head** | **holds** | 56:22,25 |
| **full** | 19:14 21:22 | 6:21 | 33:4 | **information** |
| 5:7 | 25:23 26:22 | **Healy** | **honestly** | 25:24 36:22 |
| **fully** | 31:4 33:25 | 21:23 | 52:6 54:20 | 37:5,11,12 |
| 8:5 18:23 | 34:8,11,17 | **Heaney** | **hour** | 37:21 38:2 |
| 55:24 | 35:20,22 | 21:24,25 | 6:17 12:2 | 38:4 49:19 |
| **full-time** | 49:24 59:5 | 22:3,13 | 49:24 | 59:9 67:6 |
| 18:3 | **Golden** | **hear** | **Howard** | **informed** |
| **fund** | 11:20,22 | 7:21 | 62:18 | 38:3 60:17 |
| 23:12 | **good** | **heard** | | 61:9 63:18 |
| **funds** | 49:25 | 63:20 | **I** | **infrequently** |
| 24:18,19 | **graduate** | **held** | **ID** | 21:15 |
| **FURNISHED** | 13:25 | 2:6 29:21 | 68:3 | **initially** |
| 67:9 | **Great** | **help** | **identific...** | 53:10 |
| **further** | 64:12 | 15:12,12 | 8:16 26:18 | **instances** |
| 25:15 66:15 | **greater** | **helping** | 29:6 50:16 | 37:10 |
| | 32:22 53:24 | 16:17,23 | **Illinois** | **instruct** |
| **G** | 54:6 55:9 | 19:8 24:15 | 3:20 | 59:6 |
| **general** | 56:22 | **Hennigan** | **important** | **instructing** |
| 20:19 23:18 | **ground** | 3:11 5:19 | 6:19,21 | 25:11 34:14 |
| 37:19 42:16 | 6:16 | **hereinbefore** | **inability** | **instruction** |
| 42:20 52:4 | **group** | 66:11 | 49:5 | 33:18 34:18 |
| 52:9 63:9 | 15:20 | **hereof** | **include** | **instructs** |
| **generally** | **guess** | 69:14 | 19:23 64:13 | 7:25 |
| 23:19 25:7 | 15:23 17:3 | **hereunto** | **including** | **interacting** |
| 51:18 52:2 | 24:11,12 | 66:20 | 7:22 | 55:20 |
| 53:2 | 31:22 47:23 | **hired** | **indenture** | **interest** |
| **getting** | 49:12 54:23 | 14:24 15:4 | 26:14,16,20 | 28:7 29:21 |
| 12:11,23 | **guessing** | **history** | 26:23 27:2 | 29:25 30:24 |
| 25:17 57:15 | 63:4 | 14:8 | 27:3,7,8,12 | 48:17 59:7 |
| **give** | **Gump** | **hit** | 28:9,16 | **interested** |
| 6:15 48:6 | 2:7 6:4 | 22:22 | 30:13 44:5 | 66:18 |
| **given** | 10:24 11:23 | **Hofstra** | 44:6 45:18 | **interject** |
| 66:14 | 20:7,11 | 13:22,24 | 46:4,15,16 | 9:16 |
| **giving** | 38:17 | **hold** | 46:20 49:24 | **internally** |
| 25:19 | | 14:4 15:2 | 58:10 68:9 | 12:6,8 |
| **Glenn** | **H** | 32:19 48:17 | **indentures** | **introduce** |
| 59:2 | **Half** | **holder** | 28:4 | 5:11 29:2 |
| **go** | 12:2 | 28:14,17 | **independe...** | **invest** |
| 5:10 7:4,9 | **hand** | 34:20 41:18 | 11:8 | 26:3,3 52:18 |
| 7:11,18,24 | 66:21 | 44:22 | **indicated** | **investment** |
| | **happened** | | | |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

12:15,17
15:14 16:23
16:25 17:4
17:7,12
19:8 24:16
25:8,21
51:4 52:4,9
52:21 53:2
53:3 56:9
**investments**
15:14 16:15
16:23 24:17
24:25 26:4
**invests**
24:21
**involve**
15:17
**in-house**
20:10
**irrelevant**
33:15
**issue**
45:16 46:24
56:14,16
57:6,14
**issued**
27:11 28:11
28:15
**issuer**
40:14,15
**issues**
16:11,14
18:9,14
41:16 43:5
45:4,9,16
56:13

---
**J**

**J**
3:8
**Jeff**
15:23 17:25
**Jim**
21:23
**Joan**
1:24 2:10
66:7,25
**job**

1:25 15:10
16:16,19
24:14
**join**
30:21 47:5
47:18 48:16
55:19
**joined**
22:18
**joining**
14:8
**Jointly**
1:6
**JPMorgan**
3:5 5:14
8:10,13
68:5
**June**
30:5,11 35:2
40:6 46:7
**jurat**
64:14

---
**K**

**K**
4:14 5:2
**Kasowitz**
4:4 5:22
58:23
**kind**
43:17
**know**
7:4,8,9,17
12:19 15:7
16:22 17:7
19:3 21:10
23:3,8,8,13
23:16 24:7
24:8,20,24
25:5,19
27:17 28:13
28:19,20,22
30:3,20
31:3,17,25
32:13,13,14
32:21,25
33:2 34:10
35:21 36:11

37:13,15
39:11 40:8
40:22 41:9
43:11,13,15
46:8,13,18
49:7,8,9,10
49:11,13,16
49:18 50:24
51:5,8,16
51:17 52:24
53:11 56:24
57:2,13,23
58:4,9,20
59:12 61:22
63:8
**knowledge**
21:9 40:4
43:12
**Kramer**
3:21 6:7,9

---
**L**

**L**
5:2
**lack**
42:25 43:2,2
43:3 45:3
**large**
35:17 41:17
44:22
**larger**
56:13,18
**law**
4:5 5:13,16
5:23 13:11
13:11,14,23
13:25 14:6
15:17 19:16
19:18,19
21:13,19
22:18 26:25
27:5 40:19
44:10,16
45:10 46:14
46:19,24
49:18 50:6
53:22 54:2
56:2,20

58:18,19,21
58:22 59:8
59:17,18,19
59:25 60:2
64:7,9
**LD**
29:3,5 68:11
**learn**
57:5,10,11
57:19 60:16
61:19 62:5
63:17
**learned**
61:7,11,17
61:21 62:23
63:3,6,12
64:5
**learning**
58:12 60:25
**leave**
44:3
**leeway**
9:23 25:20
**Lenders**
3:12 5:20
**let's**
8:8 18:6
28:25
**level**
49:14
**Lexington**
3:6
**licenses**
14:5
**limitation**
55:24
**limitations**
37:8,16,20
37:22 38:5
44:23
**limited**
26:2
**line**
25:25 70:2,5
70:8,11,14
70:17,20
71:2,5,8,11
71:14,17,20

**listed**
41:16
**little**
19:7 26:6
53:13
**LLC**
8:12,15
23:11 68:7
**LLP**
2:8 3:4,11
3:17 4:4,10
**long**
11:25
**look**
39:17
**lost**
43:17
**lot**
17:9 18:25
22:4 42:7
49:8

---
**M**

**M**
5:2
**majority**
28:6,14,17
29:15,21,25
30:9,24
48:17
**making**
16:23 24:25
**managing**
14:23,24
16:2
**manifest**
42:10
**March**
26:15,17,20
26:23 27:2
27:7,11
28:8,16
44:6 46:16
48:23 68:9
**mark**
8:9 26:13
50:12



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                                February 9, 2010

78

**marked**
8:16 26:17
29:6 50:15
**market**
31:9,10
**marriage**
66:17
**material**
43:5
**matter**
24:23 38:24
66:19 69:9
**matters**
20:23 21:4
**mean**
12:6,10
16:12 17:4
17:10 19:12
19:25 20:18
23:2,19
24:6,11,20
25:2,21
27:17 31:3
44:20 46:7
49:7 51:16
61:25
**meaning**
12:13 36:13
38:14,17
58:22 61:9
**means**
18:5 31:11
31:24
**meet**
11:12
**meeting**
11:25 12:10
12:21
**meetings**
62:15
**Melwani**
1:12 2:6 5:1
5:8,12 6:1
7:1 8:1,9
8:13 9:1
10:1 11:1
12:1 13:1
14:1 15:1

16:1 17:1
18:1 19:1
20:1 21:1
22:1 23:1
24:1 25:1
26:1,16,19
27:1 28:1
29:1,4 30:1
31:1 32:1
33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
41:1 42:1
43:1 44:1
45:1 46:1
47:1 48:1
49:1 50:1
50:14 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1 61:1
62:1 63:1
64:1 65:1
65:11 66:10
67:4 68:3
69:17 70:25
71:25
**member**
19:11 20:14
**members**
37:16
**mentioned**
18:2 57:16
**Michael**
3:8 5:12
9:22 49:23
**Milbank**
38:20 48:14
**minute**
63:25
**Mirror**
26:22
**moment**
8:19 10:8
29:11 50:23

**monitor**
19:13,14,22
20:4
**monitoring**
19:23
**month**
36:17,18
48:22
**months**
22:12 30:8
53:17,19,20
**morning**
12:10
**motion**
22:14,16,17
23:5,7
25:14 57:7
62:2
**MOTIONS**
67:11
**motivated**
49:4
**motive**
44:11
**move**
6:24

**— N —**

**N**
3:2 4:2 5:2
67:2
**name**
5:7,12 17:22
21:23 23:2
23:8 24:21
25:5
**necessary**
53:6,7,9
**need**
7:7,15 25:12
**needed**
55:9,12 56:8
**negotiated**
31:15,20
**negotiating**
38:14
**Nellos**

4:14 5:24,24
65:4
**new**
1:13,13 2:9
2:9,11 3:7
3:7,14,14
4:7,7,13,13
5:9,9 14:11
48:12 66:3
66:8
**Newman**
6:3,3 9:15
9:22 10:7
11:18 18:4
21:8,14
22:25 24:5
25:9,13,17
27:16 28:10
28:23 31:2
31:23 33:10
33:14,17,20
33:23 34:5
34:8,16
36:7,25
39:9 40:10
43:18 44:17
47:19 48:3
49:23 50:9
52:5,13
53:4 54:11
54:17 56:10
59:5,14
63:21 64:2
**non-debtor**
57:20
**non-lawyers**
21:17
**non-primary**
41:23
**Nope**
11:2
**Notary**
2:10 5:4
66:7 69:21
**noted**
65:6
**notes**
26:9 27:11

27:14,25
28:7,11,12
28:15 30:25
31:8,15,20
32:4,20
33:3,3,9
34:21 45:19
45:24 46:5
48:18 56:6
63:15
**Notice**
2:9 8:11,14
68:5
**noticed**
23:10
**number**
9:20,21 10:8
22:5 53:19
53:20
**N.A**
8:10,14 68:5

**— O —**

**oath**
69:15
**object**
59:5 61:15
62:7
**objected**
34:5
**Objection**
18:4 21:8,14
22:25 24:5
25:9 31:2
31:23 33:10
36:25 40:10
43:18 44:17
50:9 52:5
53:4 56:10
**objections**
7:22 9:17
10:17
**obtain**
51:13 52:10
52:22 53:9
53:23 54:6
55:9 56:22
**obtaining**



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

50:7
**obviously**
20:4
**occurred**
57:14
**offer**
69:15
**offhand**
12:19 24:13
  27:17 28:13
  28:22 30:3
  32:21,25
  33:7
**offices**
2:7
**official**
20:24 21:2,6
**Oh**
20:22 32:23
**Okay**
7:5,19 8:2
  26:5,24
  34:13 55:4
  55:6,13,15
  63:21 64:12
**once**
11:14 47:8
**one-page**
50:13
**open**
31:9,10
**opinion**
42:10
**opposed**
6:20 37:14
  46:10 47:2
**orally**
6:20 22:20
**original**
46:7,9
**outcome**
66:18
**outside**
20:8 38:22
  39:11 47:19
  47:21
**outstanding**

29:16 39:23
**overall**
19:9
**overlay**
37:15
**owned**
42:7

---

**P**

**P**
3:2,2 4:2,2
**page**
9:6,7 29:14
  39:18 64:13
  67:3 70:2,5
  70:8,11,14
  70:17,20
  71:2,5,8,11
  71:14,17,20
**paid**
57:15,19
**paragraph**
51:11
**parent**
23:22 24:3
**Park**
2:8 3:13 5:9
**Parke**
4:10 5:25
  60:8
**part**
9:24 16:19
  37:2 39:19
  49:4 53:23
  54:5
**particular**
15:19
**parties**
19:21 39:11
  55:21 59:18
  59:24 66:16
**partner**
15:25
**partners**
15:23 23:24
  24:3,10
**parts**

16:21,22
**payments**
57:12 58:12
  58:13,17
  59:17,24
  60:18 61:2
  61:9,16
  62:12,23
  63:3,13,19
  64:6,8
**penalty**
69:5,7
**pending**
7:11,18
**penumbra**
19:9
**people**
12:16 17:9
  17:12 18:2
  57:18 58:8
**perceived**
55:23
**percent**
27:14,21
  32:22 33:3
  39:22 40:4
  47:15
**percentage**
32:18 33:2
  40:5,8
**percentages**
33:5
**performance**
42:3 45:23
**perjury**
69:5,7
**person**
21:21,22
  35:24 36:13
**personally**
20:21,22
**phone**
6:7 40:25,25
  62:15
**place**
48:2
**Plaza**
4:12

**please**
5:6 7:4,8,18
**point**
7:8 10:17
  23:25 29:24
  38:18,19
  48:14 49:25
  53:7,8,13
  56:7 57:9
  57:17 58:9
**Polk**
3:4 5:13,17
**posited**
9:16
**position**
14:21,25
**positions**
17:6
**possible**
49:13 55:23
**possibly**
62:22
**potentially**
60:5
**practice**
14:14 15:17
  15:20
**prepare**
10:19
**prepared**
9:13 10:11
**present**
11:17 59:20
**presumably**
32:7
**presume**
27:18
**price**
33:8
**primarily**
35:24 41:20
  41:22
**primary**
51:12,17
**principal**
21:17 29:16
  39:22

**principals**
21:13
**prior**
14:8 30:4,8
  30:11 35:2
  36:7,9
  38:20 39:3
**private**
26:4 31:16
  31:20
**privileged**
59:10,11
**probably**
22:9 26:10
  26:11 35:19
  36:3 41:6
  64:9
**proceed**
10:3
**professional**
12:15 14:4
**professio...**
12:17
**proper**
16:5
**proprietary**
25:23 33:14
  34:6
**propriety**
33:22
**protected**
37:22
**provide**
37:5,12 38:3
**providing**
39:7
**Public**
2:10 5:4
  66:7 69:21
**pulled**
50:17
**purchase**
32:3
**purchased**
56:6
**purpose**
25:18 50:7





Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                    February 9, 2010

80

51:12,17,20
**purposes**
9:2
**pursuant**
2:9 27:11
28:15
**Putting**
10:8
**p.m**
2:4 50:3,4
64:3,4 65:6

---

**Q**

**quarter**
29:22 30:2
30:24 32:25
**question**
6:23,24 7:11
7:12,18,24
17:4 18:23
28:24 42:14
48:7 51:23
52:14 54:9
54:12,16,18
54:19 55:2
58:2 59:21
**questioned**
62:11
**questioning**
25:25
**questions**
6:18 7:4 8:5
10:4,15,16
13:6 34:2,9
34:12,15
46:13 65:3
**Quinn**
38:20 47:14
48:11

---

**R**

**R**
3:2 4:2 66:2
**raised**
57:18 58:2,3
58:5 60:4
62:17
**rationale**

44:15
**read**
20:3 50:24
69:8,10
**reading**
61:21
**really**
11:20 45:25
**reason**
7:16 8:4
9:19 31:18
41:19,21,22
41:23 50:10
70:4,7,10
70:13,16,19
70:22 71:4
71:7,10,13
71:16,19,22
**recall**
37:4,9 38:6
39:6,7
41:24 44:8
46:23 47:3
57:8 59:3
59:22 60:3
60:13 61:4
61:11,20
62:13
**receive**
35:8
**Recess**
50:3 64:3
**recognize**
29:8
**recollection**
29:20 63:9
**record**
5:7 6:22
55:13 66:13
**recorded**
6:18
**refer**
9:3 18:17
22:16 26:22
**reference**
28:20
**referred**
15:25

**referring**
20:7 22:17
29:11 39:25
**reflects**
52:3
**refresh**
29:20
**refusing**
37:5
**regarding**
10:16 12:21
13:11 18:21
22:14 23:4
23:7 35:5
35:20 36:6
36:23 39:14
42:2,17
59:3,17,24
64:7
**regular**
35:8,10
**reimburse...**
57:6
**related**
19:5 66:16
**relevance**
25:10,16
26:6 33:21
**remember**
20:12 47:11
48:21 57:25
61:21 62:3
62:19 63:4
**rephrase**
45:6
**replace**
40:19 50:6
56:3
**replaced**
46:3 49:3
**reply**
22:22
**report**
15:22 16:7
**Reported**
1:24
**reporter**

5:6 6:19
**represent**
26:19 27:19
**represent...**
45:15 54:3,8
54:22
**represented**
21:6 28:8
38:23 42:6
42:7 45:17
48:12
**representing**
5:14,19 6:8
47:12
**request**
36:22 40:14
40:18,21,23
41:13 44:10
49:3 50:5
**requested**
37:10 49:19
**requesting**
44:16
**REQUESTS**
67:6,10
**respect**
17:2 24:23
38:24 45:19
45:23 46:4
46:21,25
51:19,21,24
52:19 56:9
**responding**
9:20
**response**
62:19
**responsib...**
15:11,16
16:17,19
24:15
**responsible**
24:24
**restructu...**
19:5 50:8
51:14 52:11
52:23 53:25
55:10 56:23
56:25

**restructu...**
15:13 16:11
16:14,18
18:18,20
19:2,10
**review**
8:19 11:3,8
13:17 39:2
**reviewed**
9:11 39:19
**right**
6:25 7:13
9:4 18:25
27:18 43:3
44:3 57:2
**Rockefeller**
4:12
**role**
38:10,13
**room**
5:11 7:22
**Rosner**
58:25 59:2
**rule**
7:15
**rules**
6:16
**RULINGS**
67:8
**Russano**
3:8 5:10,12
6:6,12 8:8
9:21 10:2
25:11,15
26:13 28:12
28:25 31:7
33:12,16,18
33:21 34:3
34:6,13
36:9 47:23
50:2,12
52:15 59:12
63:24 64:11
65:2 67:4

---

**S**

**s**
3:2 4:2 8:10

8:14 68:5
**sales**
32:12,16
**Samir**
17:21
**satisfied**
44:7
**save**
69:11
**saw**
28:20
**saying**
54:15
**says**
29:15 39:21
40:13
**Schlichter**
3:9 5:15,15
**school**
14:2
**Scott**
3:21 6:7
**second**
47:9
**section**
9:7
**securities**
39:23
**see**
9:8 29:17
39:23 40:16
**seen**
8:18 23:2
32:15 50:19
51:3,5,8
**Seife**
62:18
**selected**
11:5
**selling**
32:6
**send**
20:2
**sent**
22:21
**sentence**
39:20,21

**series**
27:11,15,20
27:25 28:7
28:8,18,19
45:19,24
46:5,10,11
46:15,21
47:2
**set**
51:11 66:11
66:21
**seven**
10:12 29:22
30:2,24
32:24
**seven-and...**
29:17 31:15
31:19 32:19
33:9
**seven-and...**
27:22 32:4
48:18
**shakes**
6:21
**SHEET**
68:1 69:1,14
70:1 71:1
**shown**
11:9
**Sidley**
3:17 6:7
60:10
**SIGNATURE**
70:24 71:24
**single**
21:10
**sir**
58:24
**site**
50:15,18
68:15
**sold**
32:10
**somewhat**
42:24
**soon**
64:6,10

**sorry**
20:18 32:24
32:24 34:24
51:7
**sort**
53:12
**South**
3:19
**speak**
7:16 21:12
23:25 35:25
36:12,12
55:13
**speaking**
13:7
**specific**
24:20 31:6
37:14 41:10
44:4
**specifically**
16:14 37:9
39:6 61:21
62:18 63:8
**spell**
17:16,22
**spend**
18:6,7,13
**spoke**
10:21 22:10
36:17
**spoken**
21:16,20
22:2,13,20
**ss**
66:4
**stamped**
29:3,5 68:11
**started**
53:20 55:20
55:22
**state**
2:11 5:6
66:3,8
69:22
**stated**
50:11
**STATES**

1:2
**steps**
46:3 55:17
56:2,9
**strategy**
25:8,21 51:4
52:4,9,21
53:3
**Strauss**
2:7 6:4
**structure**
23:13,18
**stuff**
61:23,25
**submit**
40:18 41:12
49:2 50:5
**submitted**
40:14,21
**submitting**
44:10
**Subscribed**
65:13 69:18
**subsequent**
47:16
**subsequently**
48:10 61:17
**subsidiaries**
24:10
**subsidiary**
57:20
**substance**
60:14
**succeed**
44:11
**succeeded**
27:5
**successor**
40:14,15
**suggestion**
17:8
**suggestions**
15:15 16:24
16:25
**Suite**
3:13
**sure**

14:16 17:3
17:22 18:5
18:23 24:6
31:7,10,22
32:9 37:2
37:24 39:5
43:3 47:9
48:3 52:6
64:2
**sworn**
5:3 65:13
66:12 69:18
**S-a-m-i-r**
17:21

_____

**T**

**T**
66:2,2
**table**
9:25
**take**
7:7,9 8:19
18:6 27:16
34:10 39:17
44:16 46:20
46:25 50:23
55:4,17
56:8 63:24
**taken**
46:2 50:3
64:3 69:9
**takes**
17:6
**talk**
9:23 19:20
25:13 35:13
35:23
**talked**
19:20 46:9
**talking**
20:21 21:17
28:10 46:10
58:8
**team**
17:5,6,8,10
17:11,14
18:3,10,12
19:11 20:3



Toll Free: 800.441.3376
Facsimile: 202.296.8652



Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                    February 9, 2010

82

telephone
3:22 36:13
tell
33:7 55:2
telling
35:17
ten
22:6
terms
23:12,13
testified
5:5 42:15
  45:7 52:2
  55:7 56:15
testify
9:13 10:11
testifying
8:23
testimony
43:19,23
  66:14
thing
7:10 21:10
things
35:20 44:4
  45:11 49:8
think
8:21 9:24
  10:4 15:9
  16:22 17:22
  18:22 19:3
  19:12 21:21
  21:22,23
  24:21 25:17
  25:25 26:6
  26:11,11
  28:17 31:4
  32:5,23
  34:19 35:19
  36:3 37:7
  38:19,25
  40:10 41:3
  42:15 47:25
  48:5,13
  52:13,15,25
  53:6,6,8
  54:11 55:2
  55:16 56:20

59:14 62:17
three
10:12 38:22
time
7:21,21 18:7
  18:13 22:10
  27:16 29:24
  30:19 34:21
  35:23 37:14
  37:25 42:4
  42:12,25
  43:7 47:12
  48:15,24
  49:25 53:14
  55:8,11
  56:5 60:16
  61:7 65:6
times
11:12 22:2,6
  22:8 26:22
  36:16,18
  47:7
title
16:5
titled
26:14
today
8:6,21,23
  10:22 11:15
  12:10 19:4
  28:21 40:9
today's
10:20
topic
9:20,21 13:3
  41:11
topics
9:8,11,14,17
  35:14
Torres
4:4 5:22
trade
32:14
transaction
52:20
transactions
24:22 31:21
transcript

13:18 69:8
Tribune
1:5 3:18
  6:10 14:17
  17:2,11,13
  18:3,10,12
  18:19,21
  19:11 20:18
  24:23 26:9
  26:10 28:11
  28:12 30:16
  32:4 34:21
  35:5 36:6
  36:24 38:24
  40:19,22
  45:19 51:22
  51:25 52:20
  52:23,25
  53:7,24
  55:10 56:6
  56:22,25
  63:14 69:3
Tribune's
50:8
Tribune-r...
18:9,14
tried
37:24 55:19
Tripartite
28:21 29:10
  35:3 36:8
  38:8 39:3
  53:15
troubled
51:14 52:11
Trucano
17:15,17
true
66:13 69:11
Truitt
3:15 5:18,18
  65:5
truly
54:4
Trust
27:6
trustee
27:2,7 30:13

34:21 40:15
40:16 44:6
45:18 46:4
46:15,20
49:21 58:10
63:18
truthfully
8:6 54:19
try
45:10
Tuesday
1:14
turn
9:6
Turning
38:7
twice
47:8
two
27:10,20
  28:8 35:20
  46:21 60:25
  62:22
T-r-u-c-a...
17:18

U
uhh
16:9
Um-hmm
22:19 43:14
unable
37:11
uncertain
15:6
unconflicted
54:4,8,22
understand
7:3 8:22
  18:23 42:14
  43:19 51:23
  59:21 63:7
understan...
23:17 24:2
  37:19,23
  43:6,24
  69:14

UNITED
1:2
University
13:23,24
unsecured
6:2 21:7
  42:5 44:24
  45:15 57:16
upcoming
12:4
updates
35:8
U.S
34:21 63:18

V
V
5:1,2,2 6:1
  7:1 8:1 9:1
  10:1 11:1
  12:1 13:1
  14:1 15:1
  16:1 17:1
  18:1 19:1
  20:1 21:1
  22:1 23:1
  24:1 25:1
  26:1 27:1
  28:1 29:1
  30:1 31:1
  32:1 33:1
  34:1 35:1
  36:1 37:1
  38:1 39:1
  40:1 41:1
  42:1 43:1
  44:1 45:1
  46:1 47:1
  48:1 49:1
  50:1 51:1
  52:1 53:1
  54:1 55:1
  56:1 57:1
  58:1 59:1
  60:1 61:1
  62:1 63:1
  64:1 65:1
  67:4



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

Vivek Melwani                                February 9, 2010

83

various
15:12,13
  16:12 19:21
  41:5 55:21
  57:18
verbal
6:20
view
17:7 45:12
viewed
42:25 43:4
views
17:6
vigilance
43:2
Vivek
1:12 2:6 5:8
  65:11 66:10
  69:17 70:25
  71:25

**W**

W
5:2
wait
32:23
want
31:5 34:9,11
  47:24 52:16
wanted
54:21,23
Wardwell
3:4 5:14,17
warning
33:24 34:4
Warnock
1:24 2:10
  66:7,25
wasn't
43:21
way
7:5 10:3
  14:18 31:6
  31:11,12
  48:6 66:18
ways
54:23

web
50:15,18
  68:15
week
12:23 60:25
weekly
36:14
weeks
30:8 53:17
  62:22 63:3
weren't
45:12
WESTCHESTER
66:5
we'll
7:9,17 26:5
  44:3 55:13
we're
16:12 20:20
  21:10 25:13
  25:17 28:17
  32:7
we've
9:16 49:23
WHEREOF
66:20
witness
5:3,8 6:5
  9:18,19
  59:6 64:12
  66:10,14,20
  67:3
word
43:3 51:17
words
51:6,9 54:13
work
10:18 14:17
  15:19 16:15
  17:9,12
  18:19,20
working
16:10,12
  18:7 21:5
works
16:13
wouldn't

16:13 33:6
  35:10
written
32:11,15
  40:23 51:18
  59:13,15

**X**

X
1:3,8 67:2

**Y**

Yadagar
17:18
yeah
24:6 37:24
  52:17 54:14
  54:22 57:4
  62:3,16
year
48:23
Yep
7:20
yesterday
13:15
York
1:13,13 2:9
  2:9,11 3:7
  3:7,14,14
  4:7,7,13,13
  5:9,9 14:11
  66:3,8
Y-a-d-a-g...
17:19

**0**

00000364
29:3,5 68:12
07
26:11
08
26:12
08-13141(...
1:5

**1**

1
8:9,13 68:4

10th
66:21
100
47:15
10017
3:7
10019-6799
4:7
10112
4:13
10167
3:14
11
1:4
1633
4:6
19
26:20
19th
26:15,17
  68:9
1995
14:3,13
1996
26:15,17
  68:9

**2**

2
26:14,16
  68:8
2:05
2:4
2:59
50:3
20
69:19
2007
14:13,16
  15:8 50:15
  50:18 68:14
2008
14:16,16
  15:4,8,9
2009
30:5,11 35:2
  40:6 61:16

62:5
2010
1:14 2:3
  65:14 66:22
2027
27:21
2096
27:23
245
3:13
25
12:19
26
68:8
29
68:10

**3**

3
29:2,4 38:10
  68:10
3:04
50:4
3:23
64:3
3:26
64:4
3:27
65:6
30
4:12 12:19
307444
1:25 69:2
31
67:7
33
67:7
34
67:7
370
29:3,5 68:12
375
5:9
3900
3:13

**4**



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com



Vivek Melwani                                    February 9, 2010

84

**4**
50:13,14
  68:13
**42**
39:22 40:4
**450**
3:6

---
                        **5**
---

**5**
9:6
**50**
68:13
**59**
67:7

---
                        **6**
---

**6**
9:7 67:4
**6th**
46:7
**6.61**
27:14,21
  33:3
**60**
32:22
**60603**
3:20

---
                        **8**
---

**8**
68:4
**8th**
30:5,11 35:2
  40:6
**8-K**
26:21

---
                        **9**
---

**9**
1:14 2:3
**96**
26:20



Toll Free: 800.441.3376
Facsimile: 202.296.8652

Suite 620
1020 19th Street, NW
Washington, DC 20036
www.esquiresolutions.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------x

In Re:
                :  Chapter 11
TRIBUNE COMPANY, et al.,    :  Case No. 08-13141 (KJC)
                :  (Jointly Administered)
         Debtors.

------------------------------x

### JPMORGAN CHASE BANK, N.A.'S NOTICE OF DEPOSITION OF
### CENTERBRIDGE CREDIT ADVISORS LLC

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7026, 7030 and 9014 and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26 and 30, JPMorgan Chase Bank, N.A., by and through its undersigned counsel, will take the deposition of Centerbridge Credit Advisors LLC ("Centerbridge") on January 8, 2010, at 10:00 a.m., at the offices of Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, or on such other time and place as the parties shall agree or the Court may direct. The deposition(s) will be conducted under oath by an officer authorized to take such testimony, will be recorded by videotape and/or stenographic means, and will continue from day to day, excluding Sundays and holidays, until completed or adjourned. You are invited to attend and cross-examine.

Pursuant to Fed. R. Bankr. P. 9014 and 7030 and Fed. R. Civ. P. 30(b)(6), Centerbridge shall designate, in advance and in writing, one or more of its officers,



directors, managing agents or other persons who are most qualified to testify on its behalf

as to the matters set forth in the attached Exhibit A.

Dated:  December 9, 2009
       Wilmington, Delaware

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Dennis Glazer
Karen E. Wagner
Sharon Katz
Michael Russano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A.*

2

## EXHIBIT A

## DEFINITIONS

1.     The phrase "relating to" means concerning, referring to, describing, evidencing or constituting.

2.     "Bankruptcy Cases" means the jointly-administered Chapter 11 bankruptcy cases styled In re Tribune Company, et al., Case No. 08-13141, pending in the United States Bankruptcy Court for the District of Delaware.

3.     "Centerbridge" or "you" or "your" means Centerbridge Credit Advisors LLC and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on your behalf.

4.     "Deutsche Bank" means Deutsche Bank Trust Company of Americas and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on its behalf.

5.     "Law Debenture" means Law Debenture Trust Company of New York and any of its subsidiaries (and any predecessors thereof), directors, officers, employees, affiliates (as defined in the Bankruptcy Code), representatives, advisors, agents, attorneys, associates, associations or any other person acting on its behalf.

6.     "UCC" means the Official Committee of Unsecured Creditors appointed in connection with the Bankruptcy Cases.

7.      "US Trustee" means the office of the United States Trustee or any representative, employee or agent thereof.

8.      The term "Motion" means the motion dated October 23, 2009, filed by Law Debenture titled "Motion of Law Debenture Trust Company of New York to Terminate Debtor Affiliates' Undisclosed Payment of LBO Lenders' Fees and Expenses, For an Accounting, and for Disgorgement of Past Payments."

9.      The term "Joinder" means the Centerbridge's joinder, dated November 24, 2009, to the Motion.

10.     The term "Payment" or "Payments" means the payments at issue in the Motion.

## INSTRUCTIONS

1.      Whenever necessary to bring within the scope of these Topics of Examination that might otherwise be construed to be outside their scope, the use of a verb in any tense shall be construed as the use of that verb in all other tenses.

2.      The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

3.      The word "through" means "through and including."

4.      The term "including" means "including, without limitation."

5.      The terms "all," "any," "each," and "every" shall each be construed as all, any, each and every to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

4

6.      The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request or Requests all information that might otherwise be construed to be outside of its scope.

7.      Each paragraph of these Topics of Examination shall be construed independently and no other paragraph or subparagraph shall be referred to or relied on for the purpose of limiting the scope of any request.

## TOPICS OF EXAMINATION

1.      The allegations contained in the Motion, your Joinder and any supporting papers, including but not limited to the factual basis for those allegations.

2.      The documents produced by Centerbridge in response to JPMorgan Chase Bank, N.A.'s First Set of Document Requests to Centerbridge Credit Advisors LLC.

3.      The replacement of Deutsche Bank by Law Debenture as Indenture Trustee for the Indenture, dated March 19, 1996, between The Time Mirror Company and Citibank, N.A., as Trustee, including the reasons for the replacement.

4.      Centerbridge's acquisition or purchase of notes issued pursuant to: (1) the Indenture, dated March 1, 1992, between Tribune and Bank of New York as Trustee; (2) the Indenture, dated January 30, 1995, between New TMC Inc. and First Interstate Bank of California as Trustee; (3) the Indenture, dated March 19, 1996, between The Time Mirror Company and Citibank, N.A., as Trustee; and (4) the Indenture, dated January 1, 1997, between Tribune and Bank of Montreal Trust Company, as Trustee and the successors and assigns of the respective parties, including the date of purchase or acquisition as well as the purchase price or acquisition price.

5

5.    The Payments and/or any agreement regarding the Payments.

6.    Centerbridge's knowledge and/or awareness of the Payments or any agreement regarding the Payments.

7.    Centerbridge's decision to object or not to object to the Payments or any agreement regarding the Payments, including the reasons for that decision.

6

# TIMES MIRROR CO /NEW/

TIMES MIRROR SQUARE
220 WEST FIRST STREET
LOS ANGELES, CA 90053
213. 237.3700

# 8-K

**FORM 8-K**
**Filed on 03/19/1996 – Period: 03/13/1996**
File Number 001–13492



**LIVEDGAR** Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

EXHIBIT

1

==============================================================================

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549


FORM 8-K

CURRENT REPORT
PURSUANT TO SECTION 13 OR 15(d) OF
THE SECURITIES EXCHANGE ACT OF 1934

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): MARCH 13, 1996


THE TIMES MIRROR COMPANY
(EXACT NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)


| DELAWARE | 1-13492 | 95-4481525 |
|---|---|---|
| (STATE OR OTHER JURISDICTION OF INCORPORATION) | (COMMISSION FILE NUMBER) | (IRS EMPLOYER IDENTIFICATION NO.) |


| TIMES MIRROR SQUARE | 90053 |
|---|---|
| LOS ANGELES, CALIFORNIA | (ZIP CODE) |
| (ADDRESS OF PRINCIPAL EXECUTIVE OFFICES) | |

REGISTRANT'S TELEPHONE NUMBER, INCLUDING AREA CODE: (213) 237-3700

NONE
(FORMER NAME OR FORMER ADDRESS, IF CHANGED SINCE LAST REPORT)


==============================================================================

2

ITEM 5.    OTHER EVENTS.

On August 28, 1995, the Times Mirror Company (the "Company") filed a
Registration Statement on Form S-3 (No. 33-62165), as amended by Amendment No.
1 filed on September 27, 1995, Amendment No. 2 filed on February 26, 1996, and
Amendment No. 3 filed on February 27, 1996, relating to the registration under
the Securities Act of 1933, as amended (the "Securities Act"), of up to an
initial aggregate offering price of $200 million of debt securities, preferred
stock, common stock and warrants of the Company, which Registration Statement
was declared effective on February 28, 1996.

On March 13, 1996, the Company entered into an Underwriting Agreement (a
copy of which is attached hereto as Exhibit 1.1) with Morgan Stanley & Co.
Incorporated, as the representative of the several underwriters named in
Schedule I thereto (together, the "Underwriters"), pursuant to which the
Company agreed to issue and sell and the Underwriters agreed, severally and not
jointly, subject to certain conditions, to purchase 1,305,000 of the Company's
4-1/4% Premium Equity Participating Securities due March 15, 2001 (the "PEPS")
at an initial public offering price of $39.25 per PEPS (the "Public Offering
Price") less underwriting discounts and commissions.  The Company also granted
the Underwriters an option to purchase up to 195,000 additional PEPS at the
Public Offering Price, less underwriting discounts and commissions, to cover
over-allotments, if any.  Such option is exercisable for 30 days from March 13,
1996.

The issuance and sale of the PEPS were completed on March 19, 1996.  The
PEPS were issued pursuant to an Indenture dated as of March 19, 1996 between
the Company and Citibank, N.A., as trustee (a copy of such Indenture is
attached hereto as Exhibit 4.1).

In connection with the issuance of the PEPS under the Indenture, the
Company will deliver an Officers' Certificate (a copy of such Officers'
Certificate and annexes thereto is attached hereto as Exhibit 4.2) setting
forth the terms of the PEPS and certifying the resolutions duly adopted by the
Board of Directors of the Company at a meeting held on March 7, 1996,
authorizing the issuance of the PEPS.

3

ITEM 7.    FINANCIAL STATEMENTS, PRO FORMA FINANCIAL INFORMATION AND EXHIBITS.

(c) Exhibits.

The following exhibits are filed with this report on Form 8-K and as Exhibits to the Registration Statement:

| Exhibit No. | Description |
|---|---|
| 1.1 | Underwriting Agreement dated March 13, 1996 between the Company and Morgan Stanley & Co. Incorporated, as representative of the several underwriters named in Schedule I thereto. |
| 4.1 | Indenture dated as of March 19, 1996 between the Company and Citibank, N.A., as trustee. |
| 4.2 | Officers' Certificate dated as of March 19, 1996 establishing the terms of the PEPS and attaching the specimen certificate of PEPS and the specimen certificate of global PEPS. |
| 5 | Opinion of Gibson, Dunn & Crutcher regarding the legality of the securities being issued. |
| 8 | Opinion of Gibson, Dunn & Crutcher regarding certain tax matters. |
| 12 | Computation of Ratio of Earnings to Fixed Charges and Ratio of Earnings to Fixed Charges and Preferred Stock Dividends. |