# EXHIBIT 9

**TAB 4**

Confidential

JPM_00173293

EXECUTION VERSION

GUARANTEE AGREEMENT dated as of December 20, 2007, among Tribune Company ("Borrower"), each of the subsidiaries of Borrower listed on Annex I hereto (each such subsidiary individually, a "Guarantor" and, collectively, the "Guarantors") and MERRILL LYNCH CAPITAL CORPORATION ("Merrill Lynch"), as administrative agent (the "Agent") for the Lenders (as defined below).

Reference is made to the Credit Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among Borrower, the lenders from time to time party thereto (the "Lenders"), the Agent and the other parties thereto. Capitalized terms used herein and not defined herein shall have the meanings assigned to such terms in the Credit Agreement.

The Lenders have agreed to make Advances to Borrower, pursuant to, and upon the terms and subject to the conditions specified in, the Credit Agreement. Each of the Guarantors acknowledges that it will derive substantial benefit from the making of the Advances by the Lenders. The obligations of the Lenders to make Advances are conditioned on, among other things, the execution and delivery by the Guarantors of a Guarantee Agreement in the form hereof. As consideration therefor and in order to induce the Lenders to make Advances, the Guarantors are willing to execute this Agreement.

Accordingly, the parties hereto agree as follows:

SECTION 1. Guarantee. Subject to Section 3 hereof, each Guarantor unconditionally guarantees, jointly with the other Guarantors and severally, as a primary obligor and not merely as a surety, all of (a) the Obligations and (b) the due and punctual performance of all covenants, agreements, obligations and liabilities of the Borrower and each Loan Party under or pursuant to the Credit Agreement and the other Loan Documents (all the monetary and other obligations described in the preceding clauses (a) and (b) being collectively called the "Guaranteed Obligations"). Each Guarantor further agrees that the Guaranteed Obligations may be extended or renewed, in whole or in part, without notice to or further assent from it, and that it will remain bound upon its guarantee notwithstanding any extension or renewal of any Guaranteed Obligation.

SECTION 2. Guaranteed Obligations Not Waived. Subject to Section 3 hereof, to the fullest extent permitted by applicable law, each Guarantor waives presentment to, demand of payment from and protest to Borrower of any of the Guaranteed Obligations, and also waives notice of acceptance of its guarantee and notice of protest for nonpayment. To the fullest extent permitted by applicable law, the obligations of each Guarantor hereunder shall not be affected by (a) the failure of the Agent or any other Lender to assert any claim or demand or to enforce or exercise any right or remedy against Borrower or any other Guarantor under the provisions of the Credit Agreement, any other Loan Document or otherwise, (b) any rescission, waiver, amendment or modification of, or any release from any of the terms or provisions of, this Agreement, any other Loan Document, any Guarantee or any other agreement, including with respect to any other Guarantor under this Agreement, (c) the failure to perfect any security interest in, or the release of, any of the security held by or on behalf of the Agent or any other Lender or (d) any other act or omission that may or might in any manner or to any extent vary

JPM_00173294

-2-

the risk of any Guarantor or otherwise operate as a discharge of any Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations).

SECTION 3.  Subordination.  The payment of all Guaranteed Obligations is subordinated in right of payment to the prior payment in full in cash or Cash Equivalents of all obligations guaranteed by the Guarantors with respect to the Senior Secured Credit Agreement (or any replacement agreement in accordance with the Credit Agreement).

The lenders under the Senior Secured Credit Agreement will be entitled to receive payment in full in cash or Cash Equivalents of all obligations due in respect of the Senior Secured Credit Agreement (including interest accruing after the commencement of any bankruptcy or other like proceeding at the rate specified in the Senior Secured Credit Agreement whether or not such interest is an allowed claim in any such proceeding) before the Lenders will be entitled to receive any payment or distribution of any kind or character with respect to any Guaranteed Obligations in the event of any distribution to creditors of any Guarantor (a) in a total or partial liquidation, dissolution or winding up of such Guarantor; (b) in a bankruptcy, reorganization, insolvency, receivership or similar proceeding relating to such Guarantor or its property; (c) in an assignment for the benefit of creditors; or (d) in any marshalling of such Guarantor's assets and liabilities.

No Guarantor may make any payment or distribution of any kind or character with respect to any Guaranteed Obligations or the Advances or acquire any Advances for cash or property or otherwise if (a) a payment default under the Senior Secured Credit Agreement occurs and is continuing; or (b) any other default occurs and is continuing under the Senior Secured Credit Agreement that permits lenders under the Senior Secured Credit Agreement to accelerate its maturity and the Agent receives a written notice of such default (a "Payment Blockage Notice") from the agent under the Senior Secured Credit Agreement.

Payments on and distributions with respect to any Guaranteed Obligations may and shall be resumed (a) in the case of a payment default, upon the date on which such default is cured or waived; and (b) in case of a nonpayment default, the earliest of (x) the date on which all nonpayment defaults are cured or waived (so long as no other event of default under the Senior Secured Credit Agreement exists), (y) 180 days after the date on which the applicable Payment Blockage Notice is received by the Agent or (z) the date on which the Agent receives notice from the agent under the Senior Secured Credit Agreement rescinding the Payment Blockage Notice, in each case unless the maturity of the Senior Secured Credit Agreement has been accelerated.

No new Payment Blockage Notice may be delivered or shall be effective unless and until 360 days have elapsed since the effectiveness of the immediately prior Payment Blockage Notice.

No nonpayment default that existed or was continuing on the date of delivery of any Payment Blockage Notice to the Agent shall be, or be made, the basis for a subsequent Payment Blockage Notice unless such default shall have been cured or waived for a period of not less than 90 consecutive days (it being acknowledged that any subsequent action, or any breach

Confidential

-3-

of any financial covenants for a period commencing after the date of delivery of such initial Payment Blockage Notice that in either case would give rise to a default pursuant to any provisions under which a default previously existed or was continuing shall constitute a new default for this purpose).

If there are amounts outstanding under the Senior Secured Credit Agreement, no Guarantor may pay its Guaranteed Obligations until five Business Days after the administrative agent under the Senior Secured Credit Agreement receives notice of such acceleration and, thereafter, may pay its Guaranteed Obligations only if the Credit Agreement and this Guarantee otherwise permits payment at that time.

If a distribution is made to Lenders that, due to this Section 3, should not have been made to them, such Lenders shall hold it in trust for the lenders under the Senior Secured Credit Agreement and pay it over to them as their interests may appear.

No right of any lender under the Senior Secured Credit Agreement to enforce the subordination of the obligations of a Guarantor under this Agreement shall be impaired by any act or failure to act by such Guarantor or by its failure to comply with this Agreement.

SECTION 4.  Guarantee of Payment.  Subject to Section 3 hereof, each Guarantor further agrees that its guarantee constitutes a guarantee of payment when due and not of collection, and waives any right to require that any resort be had by the Agent or any other Lender to any security held for payment of the Guaranteed Obligations or to any balance of any deposit account or credit on the books of the Agent or any other Lender in favor of Borrower or any other person.

SECTION 5.  No Discharge or Diminishment of Guarantee.  The obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Guaranteed Obligations), including any claim of waiver, release, surrender, alteration or compromise of any of the Guaranteed Obligations, and shall not be subject to any defense (other than a defense of payment) or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise.  Without limiting the generality of the foregoing, the obligations of each Guarantor hereunder shall not be discharged or impaired or otherwise affected by the failure of the Agent or any other Lender to assert any claim or demand or to enforce any remedy under the Credit Agreement, any other Loan Document or any other agreement, by any waiver or modification of any provision of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the Guaranteed Obligations, or by any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of each Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations).

SECTION 6.  Defenses of Borrower Waived.  To the fullest extent permitted by applicable law, each of the Guarantors waives any defense based on or arising out of any defense of Borrower (other than the defense of payment in full) or the unenforceability of the Guaranteed

-4-

Obligations or any part thereof from any cause, or the cessation from any cause of the liability of Borrower, other than the final and indefeasible payment in full in cash of the Guaranteed Obligations. The Agent and the other Lenders may, at their election if applicable, foreclose on any security held by one or more of them by one or more judicial or nonjudicial sales, accept an assignment of any such security in lieu of foreclosure, compromise or adjust any part of the Guaranteed Obligations, make any other accommodation with Borrower or any other guarantor or exercise any other right or remedy available to them against Borrower or any other guarantor, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Guaranteed Obligations have been fully, finally and indefeasibly paid in cash. Pursuant to applicable law, each of the Guarantors waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of such Guarantor against any Borrower or any other Guarantor or guarantor, as the case may be, or any security.

SECTION 7. <u>Agreement to Pay; Subordination of Obligations other than Senior Secured Credit Agreement.</u> Subject to <u>Section 3</u> hereof, in furtherance of the foregoing and not in limitation of any other right that the Agent or any other Lender has at law or in equity against any Guarantor by virtue hereof, upon the failure of Borrower or any other Loan Party to pay any Guaranteed Obligation when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, each Guarantor hereby promises to and upon written demand will promptly pay, or cause to be paid, to the Agent or such other Lender as designated thereby in cash the amount of such unpaid Guaranteed Obligations. Upon payment by any Guarantor of any sums to the Agent or any Lender as provided above, all rights of such Guarantor against Borrower arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all the Guaranteed Obligations. Subject to <u>Section 3</u> hereof, in addition, any indebtedness of Borrower now or hereafter held by any Guarantor is hereby subordinated in right of payment to the prior payment in full in cash of the Guaranteed Obligations, except to the extent payments, prepayments or redemptions of any such indebtedness are permitted under Section 5.02(j) of the Credit Agreement. Subject to <u>Section 3</u> hereof, if any amount shall erroneously be paid to any Guarantor on account of (i) such subrogation, contribution, reimbursement, indemnity or similar right or (ii) any such indebtedness of Borrower (other than any indebtedness permitted to be paid, repaid or redeemed pursuant to Section 5.02(j) of the Credit Agreement), such amount shall be held in trust for the benefit of the Lenders and shall forthwith be paid to the Agent to be credited against the payment of the Guaranteed Obligations, whether matured or unmatured, in accordance with the terms of the Loan Documents. Each Guarantor, for the benefit of the Agent and the Lenders, shall enter into an indemnity, subrogation and contribution agreement substantially in the form of <u>Exhibit 2</u> hereto.

SECTION 8. <u>Information.</u> Each of the Guarantors assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations and the nature, scope and extent of the risks that such Guarantor assumes and incurs hereunder, and

-5-

agrees that none of the Agent or the other Lenders will have any duty to advise any of the Guarantors of information known to it or any of them regarding such circumstances or risks.

SECTION 9.  Representations and Warranties.  Each of the Guarantors represents and warrants as to itself that all representations and warranties relating to it contained in the Credit Agreement are true and correct.

SECTION 10.  Termination.  The Guarantees made hereunder (a) shall terminate when all the Guaranteed Obligations (other than contingent obligations for unasserted claims) have been paid in full in cash and the Lenders have no further commitments to lend under the Credit Agreement and (b) shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Guaranteed Obligation is rescinded or must otherwise be restored by any Lender or any Guarantor upon the bankruptcy or reorganization of Borrower, any Guarantor or otherwise.  In connection with the foregoing, the Agent shall execute and deliver to such Guarantor or Guarantor's designee, at such Guarantor's expense, any documents or instruments which such Guarantor shall reasonably request from time to time to evidence such termination and release.

SECTION 11.  Binding Effect; Several Agreement; Assignments; Release. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the Guarantors that are contained in this Agreement shall bind and inure to the benefit of each party hereto and their respective successors and assigns.  This Agreement shall become effective as to any Guarantor when a counterpart hereof (or a Supplement referred to in Section 20) executed on behalf of such Guarantor shall have been delivered to the Agent, and a counterpart hereof (or a Supplement referred to in Section 20) shall have been executed on behalf of the Agent, and thereafter shall be binding upon such Guarantor and the Agent and their respective successors and assigns, and shall inure to the benefit of such Guarantor, the Agent and the other Lenders, and their respective successors and assigns, except that no Guarantor shall have the right to assign its rights or obligations hereunder or any interest herein (and any such attempted assignment shall be void).  If a Guarantor shall become an Immaterial Subsidiary or if all of the Equity Interests or all or substantially all of the assets of a Guarantor are sold, transferred or otherwise disposed of pursuant to a transaction permitted by Section 5.02(b) of the Credit Agreement or if a Guarantor is otherwise no longer required to be a "Guarantor" pursuant to the Credit Agreement or the Senior Secured Credit Agreement, in each case such Guarantor shall be released from its obligations under this Agreement without further action.  This Agreement shall be construed as a separate agreement with respect to each Guarantor and may be amended, modified, supplemented, waived or released with respect to any Guarantor without the approval of any other Guarantor and without affecting the obligations of any other Guarantor hereunder.

SECTION 12.  Waivers; Amendment.  (a)  No failure or delay of the Agent in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of

Confidential

JPM_00173298

-6-

any other right or power. The rights and remedies of the Agent hereunder and of the other Lenders under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provision of this Agreement or consent to any departure by any Guarantor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on any Guarantor in any case shall entitle such Guarantor to any other or further notice or demand in similar or other circumstances.

(b) Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to a written agreement entered into between the Guarantors with respect to which such waiver, amendment or modification relates and the Agent, with the prior written consent of the Required Lenders (except as otherwise provided in the Credit Agreement including Section 8.20 thereof).

SECTION 13. Governing Law. This agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 14. Notices. All communications and notices hereunder shall be in writing and given as provided in Section 8.02 of the Credit Agreement. All communications and notices hereunder to each Guarantor shall be given to it in care of Borrower at Borrower's address set forth in Section 8.02 of the Credit Agreement.

SECTION 15. Survival of Agreement; Severability. (a) All covenants, agreements, representations and warranties made by the Guarantors herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the Agent and the other Lenders and shall survive the making by the Lenders of the Advances regardless of any investigation made by the Lenders or on their behalf, and shall continue in full force and effect as long as the principal of or any accrued interest on any Guaranteed Obligation (other than contingent obligations for unasserted claims) is outstanding and unpaid and as long as the Commitments have not been terminated or have not expired.

(b) In the event any one or more of the provisions contained in this Agreement or in any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 16. Counterparts. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract (subject to Section 11), and shall become effective as provided in Section 11.

JPM_00173299

-7-

Delivery of an executed signature page to this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Agreement.

SECTION 17. Rules of Interpretation. The rules of interpretation specified in Sections 1.02 and 8.17 of the Credit Agreement shall be applicable to this Agreement.

SECTION 18. Jurisdiction; Consent to Service of Process. (a) Each Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that the Agent or any other Lender may otherwise have to bring any action or proceeding relating to this Agreement or the other Loan Documents against any Guarantor or its properties in the courts of any jurisdiction.

(b) Each Guarantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other Loan Documents in any New York State or Federal court. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

SECTION 19. Waiver of Jury Trial. Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Agreement or the other Loan Documents. Each party hereto (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement and the other Loan Documents, as applicable, by, among other things, the mutual waivers and certifications in this Section 19.

SECTION 20. Additional Guarantors. Pursuant to Section 5.01(l) of the Credit Agreement, each wholly owned Domestic Subsidiary of Borrower (to the extent such Subsidiary (i) is not an Immaterial Subsidiary after the Closing Date, a Subsidiary of a Foreign Subsidiary of Borrower or a Receivables Subsidiary or (ii) is not merged or consolidated with and into Borrower or any Guarantor in compliance with Section 5.02(b) on or prior to the 30th day after such Subsidiary shall become a Subsidiary) that was not in existence or not a wholly owned Domestic Subsidiary on the date of the Credit Agreement is required to enter into this Agreement as a Guarantor upon becoming a wholly owned Domestic Subsidiary. Upon execution and

-8-

delivery after the date hereof by the Agent and any such wholly owned Domestic Subsidiary of an instrument ("Supplement") in the form of Exhibit 1, such Subsidiary shall become a Guarantor hereunder with the same force and effect as if originally named as a Guarantor herein. The execution and delivery of any Supplement adding an additional Guarantor as a party to this Agreement shall not require the consent of any other Guarantor hereunder or of any Lender. Subject to Section 11, the rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor as a party to this Agreement.

SECTION 21.  Right of Setoff.  Upon (a) the occurrence and during the continuance of any Event of Default, (b) the making of the request or the granting of the consent specified by Section 6.01 of the Credit Agreement to authorize the Agent to declare the Advances due and payable pursuant to the provisions of Section 6.01 of the Credit Agreement and (c) subject to Section 3 hereof, each Lender is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by such Lender to or for the credit or the account of any Guarantor against any or all the obligations of such Guarantor now or hereafter existing under this Agreement and the other Loan Documents held by such Lender, whether or not such Lender shall have made any demand under this Agreement or any other Loan Document and although such obligations may be unmatured.  Each Lender agrees promptly to notify Guarantor after any such set-off and application; provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of each Lender under this Section 21 are in addition to other rights and remedies (including other rights of setoff) which such Lender may have.

JPM_00173301

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

EACH OF THE SUBSIDIARIES LISTED
ON SCHEDULE I HERETO,

By: _____

Name:

Title:

[Interim Loan Guarantee Agreement]

Confidential

MERRILL LYNCH CAPITAL CORPORATION,
as Agent,

By: _____

Name:
Title:

[Interim Guarantee Agreement]

Confidential

ANNEX I TO THE
GUARANTEE AGREEMENT

<u>Guarantor</u>

The Baltimore Sun Company
Chicago Tribune Company
The Daily Press, Inc.
The Hartford Courant Company
Orlando Sentinel Communications Company
The Morning Call, Inc.
Sun-Sentinel Company
Newsday, Inc.
Tribune Interactive, Inc.
Tribune Los Angeles, Inc.
Tribune Media Services, Inc.
Tribune Broadcasting Company
KIICW Inc.
KSWB Inc.
KPLR, Inc.
KTLA Inc.
KWGN Inc.
Tower Distribution Company
Tribune Broadcast Holdings, Inc.
Tribune Entertainment Company
Tribune Television Company
Channel 40, Inc.
Channel 39, Inc.
Tribune Television Holdings, Inc.
Tribune Television New Orleans, Inc.
Tribune Television Northwest, Inc.
WDCW Broadcasting, Inc.
WGN Continental Broadcasting Company
WPIX, Inc.
Tribune Finance, LLC
Homestead Publishing Company
Patuxent Publishing Company
Chicagoland Publishing Company
Tribune Direct Marketing, Inc.
Virginia Gazette Companies, LLC
Forum Publishing Group, Inc.
Courant Specialty Products, Inc.
New Mass Media, Inc.
TMLH2, Inc.
TMLS1, Inc.
Gold Coast Publications, Inc.

JPM_00173304

Distribution Systems of America, Inc.
Los Angeles Times Communications LLC
Tribune Manhattan Newspaper Holdings, Inc.
Tribune New York Newspaper Holdings, LLC
TMS Entertainment Guides, Inc.
Tribune Media Net, Inc.
Tribune National Marketing Company
Tribune Broadcasting Holdco, LLC
ChicagoLand Television News, Inc.
5800 Sunset Productions Inc.
Tribune (FN) Cable Ventures, Inc.
WTXX Inc.
Chicago National League Ball Club, Inc.
Tribune California Properties, Inc.
California Community News Corporation
Hoy Publications, LLC
Eagle New Media Investments, LLC
Stemweb, Inc.
ForSaleByOwner.com
Homeowners Realty, Inc.
Internet Foreclosure Service, Inc.
Newport Media, Inc.
Eagle Publishing Investments, LLC
Star Community Publishing Group, LLC

Confidential

EXHIBIT 1 TO THE
GUARANTEE AGREEMENT

SUPPLEMENT NO. [ ] dated as of [ ], to the Guarantee Agreement (the "Guarantee Agreement") dated as of December 20, 2007, among TRIBUNE COMPANY (the "Borrower"), each of the subsidiaries of Borrower listed on Annex I thereto (each such subsidiary individually, a "Guarantor" and, collectively, the "Guarantors") and MERRILL LYNCH CAPITAL CORPORATION ("Merrill Lynch"), as administrative agent (the "Agent") for the Lenders (as defined below).

A.  Reference is made to the Credit Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among Borrower, the lenders from time to time party thereto (the "Lenders"), the Agent and the other parties thereto.

B.  Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Guarantee Agreement and the Credit Agreement.

C.  The Guarantors have entered into the Guarantee Agreement in order to induce the Lenders to make Advances. Section 20 of the Guarantee Agreement provides that additional Subsidiaries (subject to the terms and conditions of Section 20) of Borrower may become Guarantors under the Guarantee Agreement by execution and delivery of an instrument in the form of this Supplement. The undersigned Subsidiary of Borrower (the "New Guarantor") is executing this Supplement to become a Guarantor under the Guarantee Agreement in order to induce the Lenders to make any Advances and as consideration for Advances previously made.

Accordingly, the Agent and the New Guarantor agree as follows:

SECTION 1.  In accordance with Section 20 of the Guarantee Agreement, the New Guarantor by its signature below becomes a Guarantor under the Guarantee Agreement with the same force and effect as if originally named therein as a Guarantor and the New Guarantor hereby (a) agrees to all the terms and provisions of the Guarantee Agreement applicable to it as a Guarantor thereunder and (b) represents and warrants that the representations and warranties made by it as a Guarantor thereunder are true and correct on and as of the date hereof. Each reference to a Guarantor in the Guarantee Agreement shall be deemed to include the New Guarantor. The Guarantee Agreement is hereby incorporated herein by reference.

SECTION 2.  The New Guarantor represents and warrants to the Agent and the other Lenders that this Supplement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

SECTION 3.  This Supplement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract.  This Supplement shall become effective when the Agent shall have received counterparts of this Supplement that, when taken together, bear the signatures of the New Guarantor and the Agent.  Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Supplement.

SECTION 4.  Except as expressly supplemented hereby, the Guarantee Agreement shall remain in full force and effect.

SECTION 5.  This supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6.  In case any one or more of the provisions contained in this Supplement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and in the Guarantee Agreement shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision hereof in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction).  The parties hereto shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 7.  All communications and notices hereunder shall be in writing and given as provided in Section 14 of the Guarantee Agreement.  All communications and notices hereunder to the New Guarantor shall be given to it in care of Borrower at Borrower's address set forth in Section 8.02 of the Credit Agreement.

SECTION 8.  The New Guarantor agrees to reimburse the Agent for its reasonable and documented out-of-pocket expenses in connection with this Supplement, including the reasonable and documented fees, disbursements and other charges of counsel for the Agent.

Confidential

3

IN WITNESS WHEREOF, the New Guarantor and the Agent have duly executed this Supplement to the Guarantee Agreement as of the day and year first above written.

[Name of New Guarantor], by

by

_____
Name:
Title:

MERRILL LYNCH CAPITAL CORPORATION, as Agent,

by

_____
Name:
Title:

JPM_00173308

EXHIBIT 2 TO THE GUARANTEE AGREEMENT

FORM OF

INDEMNITY, SUBROGATION and CONTRIBUTION
AGREEMENT dated as of December 20, 2007, among Tribune
Company, a Delaware corporation ("Borrower"), each of the sub-
sidiaries of the Borrower listed on Schedule I hereto (each such
subsidiary individually, a "Guarantor" and collectively, the "Guar-
antors") and MERRILL LYNCH CAPITAL CORPORATION
("Merrill Lynch"), as administrative agent (in such capacity, the
"Agent") for the Lenders (as defined below).

Reference is made to (a) the Credit Agreement dated as of December 20, 2007 (as
amended, amended and restated, supplemented or otherwise modified from time to time,
the "Credit Agreement"), among the Borrower, the lenders from time to time party
thereto (the "Lenders"), the Agent and the other agent bank party thereto and (b) the
Guarantee Agreement dated as of December 20, 2007 (as amended, amended and re-
stated, supplemented or otherwise modified from time to time, the "Guarantee Agree-
ment"), among the Guarantors and the Agent.  Capitalized terms used herein and not de-
fined herein shall have the meanings assigned to such terms in the Credit Agreement.

The Lenders have agreed to make Advances to the Borrower for the account of the
Borrower and the Subsidiaries, pursuant to, and upon the terms and subject to the condi-
tions specified in, the Credit Agreement.  Each of the Guarantors has agreed to guarantee,
among other things, all the obligations of the Borrower under the Credit Agreement
(upon the terms specified in the Guarantee Agreement).  The obligations of the Lenders
to make Advances are conditioned on, among other things, the execution and delivery by
the Borrower and the Guarantors of an agreement in the form hereof.

Accordingly, the parties hereto agree as follows:

SECTION 1.  Indemnity and Subrogation.  In addition to all such rights of
indemnity and subrogation as the Guarantors may have under applicable law (but subject
to Section 3), the Borrower agrees that (a) in the event a payment shall be made by any
Guarantor under, and to the extent required by, the Guarantee Agreement, the Borrower
shall indemnify such Guarantor for the full amount of such payment and such Guarantor
shall be subrogated to the rights of the person to whom such payment shall have been
made to the extent of such payment and (b) in the event any assets of any Guarantor shall
be sold to satisfy a claim of any Lender, the Borrower shall indemnify such Guarantor in
an amount equal to the greater of the book value or the fair market value of the assets so
sold.

SECTION 2.  Contribution and Subrogation.  Each Guarantor (a
"Contributing Guarantor") agrees (subject to Section 3) that, in the event a payment shall
be made by any other Guarantor under, and to the extent required by, the Guarantee
Agreement or assets of any other Guarantor shall be sold to satisfy a claim of any Lender
and such other Guarantor (the "Claiming Guarantor") shall not have been fully

JPM_00173309

indemnified by the Borrower as provided in Section 1, the Contributing Guarantor shall indemnify the Claiming Guarantor in an amount equal to the amount of such payment, in each case multiplied by a fraction of which the numerator shall be the net worth (computed by the Borrower and the Guarantors, as applicable, in their sole discretion) of the Contributing Guarantor on the date hereof (or, in the case of any Guarantor becoming a party hereto pursuant to Section 12, the date of the Supplement hereto executed and delivered by such Guarantor) and the denominator shall be the aggregate net worth (computed by the Borrower and the Guarantors, as applicable, in their sole discretion) of all the Guarantors on the date hereof (or, in the case of any Guarantor becoming a party hereto pursuant to Section 12, the date of the Supplement hereto executed and delivered by such Guarantor). Valuation of the net worth of the Contributing Guarantor (and all Guarantors) on a fair market value basis will be determined by application of appropriate valuation methodologies (income, market and/or cost approaches) in the sole discretion of the Borrower and the Guarantors, as applicable. Any Contributing Guarantor making any payment to a Claiming Guarantor pursuant to this Section 2 shall be subrogated to the rights of such Claiming Guarantor under Section 1 to the extent of such payment.

SECTION 3.  Subordination.  Notwithstanding any provision of this Agreement to the contrary, all rights of the Guarantors under Sections 1 and 2 and all other rights of indemnity, contribution or subrogation under applicable law or otherwise shall be fully subordinated to the indefeasible payment in full in cash of the Obligations. No failure on the part of the Borrower or any Guarantor to make the payments required by Sections 1 and 2 (or any other payments required under applicable law or otherwise) shall in any respect limit the obligations and liabilities of any Guarantor with respect to its obligations hereunder, and each Guarantor shall remain liable for the full amount of the obligations of such Guarantor hereunder.

SECTION 4.  Termination.  This Agreement shall survive and be in full force and effect so long as any Obligation is outstanding and has not been indefeasibly paid in full in cash or any of the Commitments under the Credit Agreement have not been terminated, and shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Obligation is rescinded or must otherwise be restored by any Lender or any Guarantor upon the bankruptcy or reorganization of the Borrower, any Guarantor or otherwise. In connection with the foregoing, the Agent shall execute and deliver to such Guarantor or Guarantor's designee, at such Guarantor's expense, any documents or instruments which such Guarantor shall reasonably request from time to time to evidence such termination and release.

SECTION 5.  Governing Law.  This agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6.  No Waiver; Amendment.  No failure on the part of the Agent or any Guarantor to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy by the Agent or any Guarantor preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided

by law.  None of the Agent and the Guarantors shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such parties.

Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to a written agreement entered into between the Borrower, the Guarantors and the Agent, with the prior written consent of the Required Lenders (except as otherwise provided in the Credit Agreement); provided that the Agent's and the Required Lenders' consent shall not be required for modifications which, if not made hereto, would result in material adverse tax consequences to either the Borrower or any Guarantor as a result of Borrower's making a Subchapter S Corporation election.

SECTION 7.  Notices.  All communications and notices hereunder shall be in writing and given as provided in the Guarantee Agreement and addressed as specified therein.

SECTION 8.  Binding Agreement; Assignments.  Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the parties that are contained in this Agreement shall bind and inure to the benefit of their respective successors and assigns.  Neither the Borrower nor any Guarantor may assign or transfer any of its rights or obligations hereunder (and any such attempted assignment or transfer shall be void) without the prior written consent of the Required Lenders.  Notwithstanding the foregoing, at the time any Guarantor is released from its obligations under the Guarantee Agreement in accordance with such Guarantee Agreement and the Credit Agreement, such Guarantor will cease to have any rights or obligations under this Agreement.

SECTION 9.  Survival of Agreement; Severability.  All covenants and agreements made by the Borrower and each Guarantor herein and in the certificates or other instruments prepared or delivered in connection with this Agreement or the other Loan Documents shall be considered to have been relied upon by the Agent, the other Lenders and each Guarantor and shall survive the making by the Lenders of the Advances, and shall continue in full force and effect as long as the principal of or any accrued interest on any Advances or any other fee or amount payable under the Credit Agreement or this Agreement or under any of the other Loan Documents is outstanding and unpaid and as long as the Commitments have not been terminated.

SECTION 10.  Severability.  In case any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, no party hereto shall be required to comply with such provision for so long as such provision is held to be invalid, illegal or unenforceable, but the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.  The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 11. Counterparts. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract (subject to Section 8), and shall become effective as provided in Section 8. Delivery of an executed signature page to this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Agreement.

SECTION 12. Rules of Interpretation. The rules of interpretation specified in Section 1.02 and 8.17 of the Credit Agreement shall be applicable to this Agreement.

SECTION 13. Additional Guarantors. Pursuant to Section 5.01(l) of the Credit Agreement, each wholly owned Domestic Subsidiary of Borrower (to the extent such Subsidiary (i) is not an Immaterial Subsidiary after the Closing Date, a Subsidiary of a Foreign Subsidiary of Borrower or a Receivables Subsidiary or (ii) is not merged or consolidated with and into Borrower or any Guarantor in compliance with Section 5.02(b) of the Credit Agreement on or prior to the 30th day after such Subsidiary shall become a Subsidiary) that was not in existence or not a wholly owned Domestic Subsidiary on the date of the Credit Agreement is required to enter into the Guarantee Agreement as a Guarantor upon becoming a wholly owned Domestic Subsidiary. Upon execution and delivery after the date hereof by the Agent and any such wholly owned Domestic Subsidiary of an instrument in the form of Exhibit 1 to the Guarantee Agreement, such Subsidiary shall become a Guarantor thereunder with the same force and effect as if originally named as a Guarantor therein. Section 7 of the Guarantee Agreement requires that any such Guarantor enter into this Agreement. Upon execution and delivery after the date hereof by the Agent and any such Guarantor of an instrument ("Supplement") in the form of Annex 1 hereto, such Guarantor shall become a party hereto as a Guarantor with the same force and effect as if originally named as a Guarantor herein. The execution and delivery of any Supplement adding an additional Guarantor as a party to this Agreement shall not require the consent of any other Guarantor under the Guarantee Agreement or hereunder or of any Lender. Subject to Section 8, the rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor as a party to this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first appearing above.

TRIBUNE COMPANY, as the Borrower,

by

_____

Name:
Title:

EACH OF THE SUBSIDIARIES LISTED ON SCHEDULE 1 HERETO, as a Guarantor,

by

_____

Name:
Title:

MERRILL LYNCH CAPITAL CORPORATION, as Agent,

by

_____

Name:
Title:

Confidential

Guarantors

The Baltimore Sun Company
Chicago Tribune Company
The Daily Press, Inc.
The Hartford Courant Company
Orlando Sentinel Communications Company
The Morning Call, Inc.
Sun-Sentinel Company
Newsday, Inc.
Tribune Interactive, Inc.
Tribune Los Angeles, Inc.
Tribune Media Services, Inc.
Tribune Broadcasting Company
KHCW Inc.
KSWB Inc.
KPLR, Inc.
KTLA Inc.
KWGN Inc.
Tower Distribution Company
Tribune Broadcast Holdings, Inc.
Tribune Entertainment Company
Tribune Television Company
Channel 40, Inc.
Channel 39, Inc.
Tribune Television Holdings, Inc.
Tribune Television New Orleans, Inc.
Tribune Television Northwest, Inc.
WDCW Broadcasting, Inc.
WGN Continental Broadcasting Company
WPIX, Inc.
Tribune Finance, LLC
Homestead Publishing Company
Patuxent Publishing Company
Chicagoland Publishing Company
Tribune Direct Marketing, Inc.
Virginia Gazette Companies, LLC
Forum Publishing Group, Inc.
Courant Specialty Products, Inc.
New Mass Media, Inc.
TMLH2, Inc.
TMLS1, Inc.
Gold Coast Publications, Inc.
Distribution Systems of America, Inc.

Los Angeles Times Communications LLC
Tribune Manhattan Newspaper Holdings, Inc.
Tribune New York Newspaper Holdings, LLC
TMS Entertainment Guides, Inc.
Tribune Media Net, Inc.
Tribune National Marketing Company
Tribune Broadcasting Holdco, LLC
ChicagoLand Television News, Inc.
5800 Sunset Productions Inc.
Tribune (FN) Cable Ventures, Inc.
WTXX Inc.
Chicago National League Ball Club, Inc.
Tribune California Properties, Inc.
California Community News Corporation
Hoy Publications, LLC
Eagle New Media Investments, LLC
Stemweb, Inc.
ForSaleByOwner.com
Homeowners Realty, Inc.
Internet Foreclosure Service, Inc.
Newport Media, Inc.
Eagle Publishing Investments, LLC
Star Community Publishing Group, LLC

                                                                                                    JPM_00173315

ANNEX 1 TO
THE INDEMNITY, SUBROGATION AND
CONTRIBUTION AGREEMENT

SUPPLEMENT NO. [   ] dated as of [                    ], to the
Indemnity, Subrogation and Contribution Agreement dated as of
December 20, 2007 (the "Indemnity, Subrogation and Contribution
Agreement"), among TRIBUNE COMPANY, a Delaware limited
liability company (the "Borrower"), each of the subsidiaries of the
Borrower listed on Schedule I thereto (each such subsidiary indi-
vidually, a "Guarantor" and, collectively, the "Guarantors") and
MERRILL LYNCH CAPITAL CORPORATION ("Merrill
Lynch"), as administrative agent (the "Agent") for the Lenders (as
defined below).

A.  Reference is made to (a) the Credit Agreement dated as of December 20, 2007 (as
amended, amended and restated, supplemented or otherwise modified from time to time,
the "Credit Agreement"), among the Borrower, the lenders from time to time party
thereto (the "Lenders"), the Agent and the other agent banks thereto and (b) the Guaran-
tee Agreement dated as of December 20, 2007 (as amended, amended and restated, sup-
plemented or otherwise modified from time to time, the "Guarantee Agreement"), among
the Guarantors and the Agent.

B.  Capitalized terms used herein and not otherwise defined herein shall have the
meanings assigned to such terms in the Indemnity, Subrogation and Contribution Agree-
ment and the Credit Agreement.

C.  The Borrower and the Guarantors have entered into the Indemnity, Subrogation and
Contribution Agreement in order to induce the Lenders to make Advances.  Pursuant to
Section 5.01(l) of the Credit Agreement, certain subsidiaries that were not in existence or
not such a subsidiary on the date of the Credit Agreement are required to enter into the
Guarantee Agreement as a Guarantor.  Section 12 of the Indemnity, Subrogation and
Contribution Agreement provides that additional Subsidiaries may become Guarantors
under the Indemnity, Subrogation and Contribution Agreement by execution and delivery
of an instrument in the form of this Supplement.  The undersigned Subsidiary (the "New
Guarantor") is executing this Supplement in accordance with the requirements of the
Credit Agreement to become a Guarantor under the Indemnity, Subrogation and Contri-
bution Agreement in order to induce the Lenders to make the Advances.

Accordingly, the Agent and the New Guarantor agree as follows:

SECTION 1.  In accordance with Section 12 of the Indemnity, Subroga-
tion and Contribution Agreement, the New Guarantor by its signature below becomes a
Guarantor under the Indemnity, Subrogation and Contribution Agreement with the same
force and effect as if originally named therein as a Guarantor and the New Guarantor
hereby agrees to all the terms and provisions of the Indemnity, Subrogation and Contribu-
tion Agreement applicable to it as a Guarantor thereunder.  Each reference to a Guarantor
in the Indemnity, Subrogation and Contribution Agreement shall be deemed to include

JPM_00173316

the New Guarantor. The Indemnity, Subrogation and Contribution Agreement is hereby incorporated herein by reference.

SECTION 2. The New Guarantor represents and warrants to the Agent and the Lenders that this Supplement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

SECTION 3. This Supplement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Supplement shall become effective when the Agent shall have received counterparts of this Supplement that, when taken together, bear the signatures of the New Guarantor and the Agent. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually signed counterpart of this Supplement.

SECTION 4. Except as expressly supplemented hereby, the Indemnity, Subrogation and Contribution Agreement shall remain in full force and effect.

SECTION 5. This Supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6. In case any one or more of the provisions contained in this Supplement should be held invalid, illegal or unenforceable in any respect, neither party hereto shall be required to comply with such provision for so long as such provision is held to be invalid, illegal or unenforceable, but the validity, legality and enforceability of the remaining provisions contained herein and in the Indemnity, Subrogation and Contribution Agreement shall not in any way be affected or impaired. The parties hereto shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 7. All communications and notices hereunder shall be in writing and given as provided in Section 7 of the Indemnity, Subrogation and Contribution Agreement.

SECTION 8. The New Guarantor agrees to reimburse the Agent for its reasonable out-of-pocket expenses in connection with this Supplement, including the reasonable fees, other charges and disbursements of counsel for the Agent.

Confidential

IN WITNESS WHEREOF, the New Guarantor and the Agent have duly executed this Supplement to the Indemnity, Subrogation and Contribution Agreement as of the day and year first above written.

[Name of New Guarantor],

by

_____

Name:

Title:


MERRILL LYNCH CAPITAL CORPORATION, as Agent,

by

_____

Name:

Title:

JPM_00173318

SCHEDULE I
TO SUPPLEMENT NO. [   ] TO THE INDEMNITY
SUBROGATION AND CONTRIBUTION AGREEMENT

Guarantors

Name                                    Address

                                    JPM_00173319