# EXHIBIT 16

| | |
|---|---|
| From: | Krakauer, Bryan |
| Sent: | Tuesday, February 17, 2009 12:41 PM |
| To: | 'Schaible, Damian S.' |
| Cc: | Eldersveld, David |
| Subject: | Blackstone Engagement Letter |
| Attachments: | Blackstone Engagement Letter (2).doc |


Blackstone
ngagement Letter (.

Damian:

The enclosed reflects the Company comments to the Blackstone engagement letter. Please call if you have any questions relating to the attached.

Please also note, as previously discussed, back-up detail will be required for each of the invoices submitted to the non-debtors for payment by the professionals retained by the Agent and the Steering Committee, so that the non-debtors will be able to confirm time and expense charges are reasonable and appropriate. In reviewing these invoices the non-debtors will endeavor to apply the same standards as are applicable to professionals generally in the Debtors' chapter 11 cases.

Bryan Krakauer

TRB_LD000170
CONFIDENTIAL

February [ ], 2009

Donald S. Bernstein, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Dear Don:

    This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Services L.P. ("Blackstone") and Davis Polk & Wardwell ("DPW") regarding the retention of Blackstone by DPW effective as of February 1, 2009 (the "Effective Date") to provide financial advisory services in relation to DPW's representation of JPMorgan Chase Bank, N.A., as administrative agent (the "Agent"), under the Credit Agreement (the "Credit Facilities"), dated May 17, 2007, among Tribune Company (together with any affiliates and subsidiaries, the "Company"), the lenders party thereto from time to time (the "Lenders"), and the Agent.

    Under this Agreement, Blackstone will provide financial advisory services in connection with the restructuring of the Company and will assist in analyzing, structuring, negotiating and effecting Restructuring Activities pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term Restructuring Activities shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, lease obligations, trade claims and general unsecured claims (collectively, the "Obligations"), capital stock or other equity securities or interests, (ii) any dispositions of entities or assets, and/or (iii) any consensual or adversarial foreclosure or other enforcement action, including, without limitation, any transfer or surrender of stock, assets or other collateral by the Company.

    The financial advisory services to be rendered by Blackstone will include the following:

(a)    Assist in the evaluation of the Company's businesses and prospects;

(b)    Assist in the evaluation of the Company's long-term business plan and related financial projections;

TRB_LD000171
CONFIDENTIAL

(c) Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(d) Review and analyze any proposed restructuring and / or recapitalization, including consideration offered to the Lenders;

(e) Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(f) Evaluate the Company's debt capacity and alternative capital structures;

(g) Participate in negotiations among the Agent, Lenders, the Company and its advisors, other creditors, suppliers, lessors and other interested parties;

(h) Value the Company, entities and assets and securities offered by the Company in connection with Restructuring Activities; and

(i) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any Restructuring Activities, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete its Restructuring Activities. Blackstone is retained under this Agreement solely to provide advice regarding Restructuring Activities, and is not being retained to provide "crisis management."

Blackstone shall commit the personnel and resources necessary and appropriate to perform the services set forth herein and to work with the Agent, the Lenders and their advisors. Blackstone agrees that Timothy Coleman and Flip Huffard will be actively involved in and devote significant time towards the engagement described herein.

All fees and expenses payable to Blackstone pursuant to this Agreement <u>are obligations of the Tribune Company</u> ~~shall be payable by the Company~~ in accordance with the provisions of Section 8.04 of the Credit Facilities <u>and presently payable by the Guarantors (as defined in the Credit Agreement) whom are not the subject of a case under Chapter 11 of Title 11 of the Bankruptcy Code (to the extent listed on Schedule I hereto, the "Non-Debtor Guarantors")</u>; it being understood, notwithstanding anything to the contrary herein, that none of DPW, the Agent or any Lenders shall in any event be liable or responsible to Blackstone or any other party for any fees, expenses, obligations, liabilities, indemnities or damages incurred or any other amounts that may from time to time become payable to us in connection with the Restructuring Activities or this Agreement. It is agreed that the following fees shall be payable to Blackstone for its financial advisory services pursuant to Section 8.04 of the Credit Facilities:

(i) a monthly advisory fee (the "Monthly Fee") in the amount of $200,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable monthly in advance on the 1st day of each month. Any Monthly Fee paid subsequent to the twelfth (12th) Monthly Fee will be credited towards the Restructuring Fee;

(ii) an additional fee (the "Restructuring Fee") equal to $5,500,000. Except as otherwise provided herein, Restructuring Activities shall be deemed to have been completed upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of the Company's existing Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation, consummation and effectiveness of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be earned and payable in immediately available funds upon the completion of the Restructuring Activities; and

(iii) reimbursement of all reasonable documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (in the case of counsel and other third party advisors, except as provided in the attached Indemnification Agreement, not to exceed $50,000 without the Agent's prior written consent, which shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of DPW or the Agent, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party. DPW and the Agent are permitted, in their sole discretion, to engage other financial advisors with respect to the Restructuring Activities.

Blackstone recognizes and agrees to be bound by the provisions of that certain Confidentiality Agreement dated as of February 9, 2009 among the Company, its subsidiaries, the Agent and certain Lenders. Blackstone further agrees that none of the information which it is required to keep confidential pursuant to the terms of such Confidentiality Agreement shall be

TRB_LD000173
CONFIDENTIAL

<u>disclosed to any person who directs or assists the management of investments by Blackstone or its affiliates in newspaper and media competitors of the Company.</u>

The Agent will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information"). The Agent recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment. Subject to Blackstone's compliance with all applicable laws and its internal document retention policies, within 30 days after written request by the Agent following the termination of this Agreement, Blackstone shall return or destroy, at the direction of the Agent, all Information received from the Agent during the course of its engagement and, in the case of destruction, Blackstone shall certify that all Information has been so destroyed.

In the event that the Information belonging to the Company, the Agent, or the Lenders is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's, the Agent's, or the Lenders' information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, regulation or legal process, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Agent's other professional advisors, or, if appropriate in the Agent's judgment, to the Lenders or in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Agent and Lenders in connection with this assignment shall be for the sole benefit of the Agent and such Lenders and shall not be relied upon by any other person.

DPW agrees that Blackstone will provide its financial advice exclusively to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders. The Agent and Lenders will also obtain the advice of their legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of Restructuring Activities. DPW further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders, and does not in such capacity act as a fiduciary for DPW, the Agent, Lenders or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement

pursuant to this Agreement shall be owed solely to DPW, the Agent and, to the extent compatible with issues of legal privilege, Lenders.

In consideration of Blackstone's agreement to provide financial advisory services in connection with this Agreement, Blackstone and its agents, representatives, members and employees shall be entitled to any and all rights of indemnification and exculpation provided to representatives or professionals of the Agent under the Credit Facilities. Blackstone shall have no liability (whether direct or indirect, in contract or tort or otherwise) to DPW, Agent or the Lenders or their owners, parents, affiliates, security holders or creditors for or in connection with this Agreement except for any such liability for losses, claims, damages or liabilities incurred by DPW or the Agent that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence and willful misconduct of Blackstone.

In the event that, as a result of or in connection with Blackstone's engagement hereunder, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, Blackstone will be entitled to seek reimbursement hereunder ~~by the Company~~ for the reasonable fees and expenses of its counsel incurred in responding to such a request. ~~Nothing in this paragraph shall affect in any way any obligations of the Company pursuant to the separate indemnification provisions hereof.~~

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by DPW, the Agent or Blackstone; termination for cause by any party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect any obligations of the Company under the indemnification provisions of the Credit Agreement~~thereof~~ or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that Restructuring Activities are completed at any time prior to the expiration of 18 months following the termination of this Agreement, provided, however, in the event that Blackstone is terminated for cause, Blackstone shall not be entitled to any Restructuring Fee. For the purpose of this paragraph, "cause" shall include gross negligence, willful misconduct, or bad faith by Blackstone.

Neither DPW nor the Agent appears on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor are they prohibited parties according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P.

and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not directly involved in providing advisory services in connection with this Agreement. Should the Information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in providing advisory services in connection with the Agreement, such representative shall be bound by the obligations set forth in this Agreement. Blackstone agrees, for the term of this engagement, not to knowingly undertake any other engagement that might cause a conflict of interest with this engagement without the consent of the Agent.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, and it will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Agent also agrees that none of Blackstone or any of its partners (both general and limited), employees, affiliates, officers, directors and agents shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Agent or its owners, parents, affiliates, security holders or creditors for or in connection with his Agreement except for any such liability for losses, claims, damages or liabilities incurred by the Agent that is finally judicially determined by a court of competent jurisdiction to have primarily resulted from such party's gross negligence or willful misconduct.

Blackstone, DPW and the Agent hereby agree that any action or proceeding brought by Blackstone, DPW or the Agent based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. Blackstone, DPW and the Agent irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings. Blackstone, DPW and the Agent hereby irrevocably waive, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same.

Page   7

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement.

Very truly yours,

BLACKSTONE ADVISORY SERVICES L.P.

By:_____

Name:  Paul P. Huffard
Title:  Senior Managing Director

TRB_LD000177
CONFIDENTIAL

Accepted and Agreed to as
of the date first written above:


DAVIS POLK & WARDWELL, AS COUNSEL TO THE AGENT



By:_____

    Name:    Donald S. Bernstein, Esq.
    Title:    Partner


JPMORGAN CHASE BANK, N.A., AS AGENT



By:_____

    Name:    Miriam T. Kulnis
    Title:    Executive Director


[Acknowledgment language to come from Company]The following Non-Debtor Guarantors hereby acknowledge that the Monthly Fee, the Restructuring Fee, the indemnity obligations benefiting Blackstone pursuant to the terms of the Credit Facilities, and, to the extent reasonable, the other fees and expenses to which Blackstone shall be entitled pursuant to the foregoing letter agreement constitute obligations owed by the Non-Debtor Guarantors to the Agent pursuant to the terms and provisions of the Guarantees:

NON-DEBTOR GUARANTORS LISTED ON SCHEDULE I HERETO



By:_____

    Name:
    Title:

**Schedule I**

Non-Debtor Guarantors

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

TRB_LD000179
CONFIDENTIAL