# EXHIBIT 18

| From: | Krakauer, Bryan |
|---|---|
| Sent: | Friday, February 27, 2009 2:48 PM |
| To: | Liebentritt, Don; Eldersveld, David; Bigelow, Chandler; Larsen, Nils |
| Cc: | Lantry, Kevin T. |
| Subject: | FW: Request for .PDF Copies of FTI, Blackstone Engagement Letters -- Tribune |
| Attachments: | FTI Engagement Letter for Tribune_DPW final.pdf; Blackstone Engagement Letter.doc |

**From:** Schaible, Damian S. [mailto:damian.schaible@dpw.com]
**Sent:** Friday, February 27, 2009 2:08 PM
**To:** 'McMahon, Joseph (USTP)'
**Cc:** MIRIAM.KULNIS@chase.com; Kevin.C.Kelley@chase.com; Bernstein, Donald S.; Dworkin, Meyer C.; Krakauer, Bryan
**Subject:** RE: Request for .PDF Copies of FTI, Blackstone Engagement Letters -- Tribune

Joe, Apologies for the delay in responding. As requested, attached please find the FTI and Blackstone engagement letters (on Blackstone, we are waiting for the execution version, but attached is the final version otherwise).

I understand that, among other things, Bryan communicated to you that JPM, as Agent, has had numerous discussions with the Creditors' Committee and its advisors on the fee request and the non-debtor guarantors' decision to make these payments, and in connection with that I wanted to make sure you knew that the Committee's ultimate non-objection included the Agent agreeing with the Committee not to seek payment of any success fee for Blackstone without first advising the Committee and the Committee has, of course, retained any rights to object to payment of any such fee. I also understand that Bryan may have communicated to you that neither any debtors nor the non-debtors of whom JPM and the Lender Steering Committee have made the request have agreed to anything with regard to future reimbursement of fees/expenses, including of course with respect to any success fee.

Lastly, on a different note, I wanted to make sure that you knew that Davis Polk has of course not included its time in connection with representing JPM as Creditors' Committee member in the fees/expenses sought hereby. That time is captured in a separate matter and is reflected in separate bills that have not been submitted to the Company for reimbursement.

If you have any questions or thoughts this afternoon, please feel free to call at your convenience. If anything comes up next week, please contact Don Bernstein (212-450-4092) or Meyer Dworkin (212-450-4382), as I will be out of the office on vacation.

Thank you and best regards,

Damian Schaible

---

Damian S. Schaible
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Phone: 212 450-4580
Fax: 212 450-3580
email: damian.schaible@dpw.com

**From:** McMahon, Joseph (USTP) [mailto:Joseph.McMahon@usdoj.gov]
**Sent:** Friday, February 27, 2009 10:34 AM
**To:** Schaible, Damian S.
**Subject:** Request for .PDF Copies of FTI, Blackstone Engagement Letters -- Tribune

10/28/2009

TRB_LD000227
CONFIDENTIAL

Damian:

We were briefed by counsel to the Debtors this morning regarding the request(s) submitted by JPMorgan, as agent and/or individual members of the Steering Committee to non-Debtors for payment of professional fees. As a follow-up to that discussion, we request that JPMorgan forward .PDF copies of the engagement agreements for the following professionals:  FTI and Blackstone.

Thanks in advance for your cooperation.

Joe

Joseph J. McMahon, Jr., Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(302) 573-6491
(302) 573-6492 (Direct)
(302) 573-6497 (Fax)
joseph.mcmahon@usdoj.gov

-------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred o by other parties in promoting, marketing or recommending any partnership or other entity, nvestment plan or arrangement, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

******************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential
If you are not the intended recipient, please delete the e-mail and any attachments and notify u
immediately.

******************************************************************************************

10/28/2009

TRB_LD000228
CONFIDENTIAL



Carlyn Taylor
FTI Consulting, Inc.
1001 17th Street, Suite 1100
Denver, CO 80202
Office 303 689 8858
Mobile 213 304 0112
Facsimile 303 689 8801
carlyn.taylor@fticonsulting.com

<u>PRIVILEGED AND CONFIDENTIAL</u>

November 20, 2008

Donald S. Bernstein, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

<b>Re: Tribune Company</b>

Dear Don:

**1.  Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by Davis Polk & Wardwell ("you" or "DPW"), to provide certain financial advisory and consulting services (as more fully described herein, the "Services") in relation to your representation of JPMorgan Chase Bank, N.A., in its capacity as administrative agent (the "Administrative Agent") under the Credit Agreement dated as of May 17, 2007, among Tribune Company (hereafter "Tribune" or the "Company"), the Administrative Agent, and the lenders party thereto (the "Lending Group" and such Agreement, as amended and in effect from time to time, together with related agreements and instruments, the "Credit Agreements"). We understand that we will be working with you in connection with your representation of your client in matters related to the Credit Agreements, and that the Services will be provided for DPW and the Administrative Agent, and not for the benefit of the Company, any of its principals or any other party. This letter of engagement and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided.

**2.  Scope of Our Services**

The Services, to be performed by FTI, shall include the following:

- Review and analysis of the Company's current and historical financial condition and performance;
- Review and evaluation of the Lending Group's collateral position or any additional collateral that may be offered to the Lender Group;
- Review and analysis of the Company's current liquidity and short-term liquidity forecast;
- Providing expert testimony for matters heard in connection with any legal proceedings in connection with the Company or the Credit Agreements (including proceedings in any bankruptcy case) as may be requested by you from time to time in connection herewith;

TRB_LD000229
CONFIDENTIAL

Donald S. Bernstein, Esq.
November 20, 2008
Page 2

- Review and analysis of the Company's longer term cash requirements and business plan including any projections related thereto;
- Review and determination of any unencumbered assets which could be pledged as additional collateral to the Lending Group;
- Review and analysis of tax issues to be considered in connection with any restructuring or reorganization which may be considered by the Lending Group;
- Assisting in the development of strategies and plans of action and negotiation of any waiver, restructuring, reorganization, or other matter or settlement affecting the Credit Agreements; and
- Performing any other services requested by you that are reasonably related to the foregoing description of services.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine, provided that the FTI personnel identified to the Administrative Agent as being available to work on the Engagement continue to be available for such purpose. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed among the Administrative Agent, you and us.

In order to provide the Services, it will be necessary for our personnel to have access to certain books, records and reports of the Company and to have discussions with its personnel. You acknowledge and agree that our ability to provide the Services contemplated hereunder may be impaired if we are not provided with the necessary access to the Company's management and other personnel and to its books, records, reports and other information.

We will provide you and the Administrative Agent with direct access to our employees involved in this Engagement, and, unless otherwise requested by you, shall provide copies of all written reports or analyses simultaneously to you and the Administrative Agent in connection with this Engagement.

We will perform the Services in a manner which we believe will permit the business operations of the Company to proceed in an orderly manner, subject to the requirements of the Engagement. However, our personnel will likely need to be on site to review data located at the offices of the Company and to discuss matters with its personnel.

## 3. Privileged and Confidential Work Product

Written reports, memoranda or status summaries that we prepare under this Engagement Contract will be maintained in accordance with our retention procedures and shall be prominently labeled "Privileged and Confidential—Prepared at the Request of Counsel." Except as may be required by law, regulation or valid judicial or administrative process, we will not disclose to anyone other than you and the Administrative Agent, without your permission, the content of any oral or written confidential communication received during the course of the Engagement or any information gained from the inspection or review of any records or documents provided by you, the Company or the Administrative Agent that are identified as confidential.

TRB_LD000230
CONFIDENTIAL

Donald S. Bernstein, Esq.
November 20, 2008
Page 3

## 4. Fees

Fees will be based upon the time spent providing the Services, multiplied by our standard hourly rates, summarized as follows:

|  | Per Hour |
|---|---|
| Senior Managing Directors | $650 - 715 |
| Directors/ Manager Directors | 475 - 620 |
| Associates/Consultants | 265 - 435 |
| Administrative/Paraprofessionals | 95 - 180 |

Hourly rates are generally revised periodically. We will notify you promptly of any such changes to our rates. We do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

Based on our initial understanding of the matter and our scope of work, our retainer in this matter has been sized at $500,000. The retainer, which is being paid by the Company, is typically held and applied to our final bill for the Services, with any excess amounts refunded to the Company. We reserve the right, however, to apply the retainer to our fees as the Engagement proceeds. The retainer is not intended to be an estimate for the total cost of the work to be performed.

In addition to the fees outlined above, FTI will bill the Administrative Agent for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to this engagement.

Unless directed by you to the contrary, we will submit invoices to the Administrative Agent on a regular basis, payable upon receipt, for our fees and expenses incurred in connection with the Engagement, with copies provided to the Company. It is our understanding that all invoices will be submitted to and paid by the Company within five days of submission. It is also our understanding, however, that the payment of our invoices will ultimately be the responsibility of the Administrative Agent and the Lender Group in the event that the Company fails or refuses to pay such invoices (or if any payments are made but are subsequently avoided or disgorged). We will repay the Administrative Agent for the benefit of the Lender Group to the extent the Company subsequently remits payments to us. FTI reserves the right to immediately stop work should the Administrative Agent fail to pay our outstanding fees and expenses within a reasonable period of time of being notified of the Company's failure to pay.

In no event shall DPW be liable or responsible to FTI or any other party for any fees, expenses, obligations, liabilities or damages incurred or any other amounts that may from time to time become payable to us in connection with the Engagement, this Engagement Contract or the annexed Standard Terms and Conditions.

In addition, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated at its regular hourly rates and reimbursed for reasonable out of pocket expenses with

Donald S. Bernstein, Esq.
November 20, 2008
Page 4

respect thereto (including counsel fees if DPW, the Administrative Agent and FTI agree that it is reasonably necessary for FTI to engage outside counsel).

## 5.  Terms and Conditions

The attached terms and conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether oral or written, regarding the Services.

## 6.  Conflicts of Interest

We have undertaken a limited review of our records to determine FTI's professional relationships with the Company and potentially interested parties.  From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world. We are regularly engaged by new clients, which may include one or more of the potentially interested parties.  We will not knowingly accept an engagement that conflicts with this Engagement without the Administrative Agent's prior written consent.

## 7.  Form of Reports

Any report or reports produced by FTI in connection with the Engagement shall be in such form as is mutually satisfactory to you, the Administrative Agent and FTI.

## 8.  Acknowledgement and Acceptance

Please acknowledge your acceptance of the terms of the Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

TRB_LD000232
CONFIDENTIAL

Donald S. Bernstein, Esq.
November 20, 2008
Page 5

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Carlyn Taylor at 303-689-8858 or 213-304-0112.

Yours faithfully,


FTI CONSULTING, INC.


By: _____
        Carlyn Taylor
        Senior Managing Director

Attachment — As stated

Confirmation of Terms of Engagement

**We agree to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.**


Davis, Polk & Wardwell, as counsel to the Administrative Agent


By: _____
        Donald S. Bernstein, Esq.
        Partner


Date:    _____


JPMorgan Chase Bank, N.A., the Administrative Agent


By: _____
        Miriam Kulnis
        Executive Director


Date:    _____

TRB_LD000233
CONFIDENTIAL

FTI CONSULTING, INC.

STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Davis Polk & Wardwell, dated as of November 20, 2008 (the "Engagement Letter"). The Engagement Letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract. Terms defined in the Engagement Contract shall have the same meanings as used herein.

## 1.  Reports and Advice

1.1  **Use and purpose of advice and reports** - Any advice given or report issued by us is provided solely for the use and benefit of you and the Administrative Agent or the Lending Group, and only in connection with the purpose in respect of which the Services are provided. Unless required by law, or as otherwise provided in Clause 4.3 of the Standard Terms and Conditions, you or the Administrative Agent shall not (a) provide any advice given or report issued by us to any third party (other than the Lending Group) without our prior consent (which we may condition on the execution of our standard form of release letter) or (b) refer to us or the Services without our prior consent. In no event, regardless of whether consent has been provided, shall (i) you or the Administrative Agent assume any responsibility to any third party, including to other members of the Lending Group, with respect to any advice or report that is disclosed or otherwise made available to such third party or (ii) we assume any responsibility to any third party (other than to the members of the Lending Group) with respect to any advice or report that is disclosed or otherwise made available to such third party.

## 2.  Information and Assistance

2.1  **No assurance on financial data** - While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or accounting review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide us during the course of the Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of the Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.2  **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants, or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

## 3.  Additional Services

3.1  **Responsibility for other parties** — Unless otherwise agreed by us, you and the Administrative Agent, the Administrative Agent and the Lending Group shall be solely responsible for the work and fees of any other party engaged by you or the Administrative Agent to provide services in connection with the Engagement regardless of whether such party was introduced to you or the Administrative Agent by us. Except as provided

TRB_LD000234
CONFIDENTIAL

in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your and the Administrative Agent's written authorization.

## 4. Confidentiality

4.1 **Restrictions on confidential information** — Subject to Clause 4.3 below, all parties (you and the Administrative Agent, on the one hand, and FTI, on the other hand) agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Under no circumstances, however, will you or the Administrative Agent be liable or otherwise responsible for any breach of the confidentiality provisions herein by any other member of the Lending Group. Except as provided below or as otherwise contemplated by the Engagement Contract, no
party to this Engagement Contract will disclose any other such entity's confidential information to any third party without such entity's consent. Confidential information shall not include information that:

    4.1.1    is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

    4.1.2    is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

    4.1.3    is or has been independently developed by the recipient.

4.2 **Disclosing confidential information** - Notwithstanding Clause 4.1 above, any party to this Engagement Contract will be entitled to disclose confidential information of the other to a third party to the extent that this is required by court order, legal process or regulatory rule or process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable advance notice is first given to the other party.

4.3 **Disclosing confidential information to the Lending Group** - Notwithstanding Clause 1.1 or 4.1 above, you and the Administrative Agent will be entitled to disclose FTI's advice and written reports to other members of the Lending Group, so long as such members are restricted from distributing such information outside the Lending Group without the prior written consent of the parties to this Engagement Contract. Further, upon execution of a non-reliance agreement satisfactory to FTI, prospective assignees may be provided written reports produced by FTI under this Engagement Contract.

4.4 **Internal quality reviews** — Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity for the purpose of conducting internal quality reviews, subject to the confidentiality restrictions in Clause 4.1.

4.5 **Citation of engagement** — Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.6 **Maintenance of workpapers** - Notwithstanding the above, we may keep one archival set of our working
papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our professional standards and internal policies.

TRB_LD000235
CONFIDENTIAL

## 5.  Termination

5.1  **Termination of Engagement with notice** — Any party to this Engagement Contract (you, the Administrative Agent or FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. **All** fees and expenses incurred by us through the date the termination notice is received will continue to be payable as provided in Clause 4 of the Engagement Letter.

5.2  **Continuation of terms -** The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement Letter, and Clauses 1.1, 4, 6 and 7 of the Standard Term and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6.  Liability Limitation and Waiver of Jury Trial

6.1  **Limitation of liability of FTI -** Except to the extent finally determined by a court of competent jurisdiction to have resulted from its own willful misconduct, gross negligence or fraudulent behavior, neither FTI, nor any of its subsidiaries, affiliates, officers, directors, principals, shareholders, agents, independent contractors or employees, shall be liable to you or the Administrative Agent as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, whether a claim be in tort, contract or otherwise:

6.1.1   For any amount in excess of the total professional fees paid to FTI by the Company and/or the Administrative Agent and Lending Group under the Engagement Contract; or

6.1.2   For any consequential, indirect, lost profit or similar damages relating to FTI's Services provided under this Engagement.

Without limiting the generality of the foregoing, it is intended by the parties that FTI will be entitled to the benefits of any and all liability limiting provisions of the Credit Agreements applicable to agents or professionals for the Administrative Agent.

6.2  **Limitation of liability of the Administrative Agent -** In no event shall the Administrative Agent be liable to FTI whether a claim be in tort, contract or otherwise for any consequential, indirect, lost profit or similar damages relating to FTI's Services provided under this Engagement Contract, except to the extent finally determined to have resulted from the gross negligence, willful misconduct or fraudulent behavior of the Administrative Agent relating to such Services.

6.3  **WAIVER OF JURY TRIAL** —TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE ADMINISTRATIVE AGENT AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

## 7.  Governing Law and Jurisdiction — The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

TRB_LD000236
CONFIDENTIAL

Donald S. Bernstein, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Dear Don:

This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Services L.P. ("Blackstone") and Davis Polk & Wardwell ("DPW") regarding the retention of Blackstone by DPW effective as of February 1, 2009 (the "Effective Date") to provide financial advisory services in relation to DPW's representation of JPMorgan Chase Bank, N.A., as administrative agent (the "Agent"), under the Credit Agreement (the "Credit Facilities"), dated May 17, 2007, among Tribune Company (together with any affiliates and subsidiaries, the "Company"), the lenders party thereto from time to time (the "Lenders"), and the Agent.

Under this Agreement, Blackstone will provide financial advisory services in connection with the restructuring of the Company and will assist in analyzing, structuring, negotiating and effecting Restructuring Activities pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term Restructuring Activities shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, lease obligations, trade claims and general unsecured claims (collectively, the "Obligations"), capital stock or other equity securities or interests, (ii) any dispositions of entities or assets, and/or (iii) any consensual or adversarial foreclosure or other enforcement action, including, without limitation, any transfer or surrender of stock, assets or other collateral by the Company.

The financial advisory services to be rendered by Blackstone will include the following:

(a)    Assist in the evaluation of the Company's businesses and prospects;

(b)    Assist in the evaluation of the Company's long-term business plan and related financial projections;

(c)    Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(d)    Review and analyze any proposed restructuring and / or recapitalization, including consideration offered to the Lenders;

(e)    Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(NY) 27011/161/ENGAGEMENT LETTERS/Blackstone Engagement Letter.doc

TRB_LD000237
CONFIDENTIAL

(f)    Evaluate the Company's debt capacity and alternative capital structures;

(g)    Participate in negotiations among the Agent, Lenders, the Company and its advisors, other creditors, suppliers, lessors and other interested parties;

(h)    Value the Company, entities and assets and securities offered by the Company in connection with Restructuring Activities; and

(i)    Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any Restructuring Activities, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete its Restructuring Activities. Blackstone is retained under this Agreement solely to provide advice regarding Restructuring Activities, and is not being retained to provide "crisis management."

Blackstone shall commit the personnel and resources necessary and appropriate to perform the services set forth herein and to work with the Agent, the Lenders and their advisors. Blackstone agrees that Timothy Coleman and Flip Huffard will be actively involved in and devote significant time towards the engagement described herein.

All fees and expenses payable to Blackstone pursuant to this Agreement shall be payable solely by the Tribune Company in accordance with the provisions of Section 8.04 of the Credit Facilities and/or by the Guarantors (as defined in the Credit Agreement) whom are not the subject of a case under Chapter 11 of Title 11 of the Bankruptcy Code (to the extent listed on Schedule I hereto, the "Non-Debtor Guarantors"); it being understood, notwithstanding anything to the contrary herein, that neither DPW nor the Agent shall in any event be liable or responsible to Blackstone or any other party for any fees, expenses, obligations, liabilities, indemnities or damages incurred or any other amounts that may from time to time become payable to us in connection with the Restructuring Activities or this Agreement. It is agreed that the following fees shall be payable to Blackstone for its financial advisory services pursuant to Section 8.04 of the Credit Facilities:

(i)    a monthly advisory fee (the "Monthly Fee") in the amount of $200,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable monthly in advance on the 1st day of each month. Any Monthly Fee paid subsequent to the twelfth (12th) Monthly Fee will be credited towards the Restructuring Fee;

TRB_LD000238
CONFIDENTIAL

(ii)    an additional fee (the "Restructuring Fee") equal to $5,500,000.  Except as otherwise provided herein, Restructuring Activities shall be deemed to have been completed upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of the Company's existing Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation, consummation and effectiveness of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring.  The Restructuring Fee will be earned and payable in immediately available funds upon the completion of the Restructuring Activities; and

(iii)   reimbursement of all reasonable documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (in the case of counsel and other third party advisors, except as provided in the attached Indemnification Agreement, not to exceed $50,000 without the Agent's prior written consent, which shall not be unreasonably withheld) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of DPW or the Agent, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.  DPW and the Agent are permitted, in their sole discretion, to engage other financial advisors with respect to the Restructuring Activities.

Blackstone recognizes and agrees to be bound by the provisions of that certain Confidentiality Agreement dated as of February 9, 2009 among the Company, its subsidiaries, the Agent and certain Lenders.

Blackstone agrees to be responsible for any breach of the terms hereof by any person to whom it discloses Information (as defined hereunder) and to take all reasonable measures to restrain any such persons from prohibited or unauthorized disclosure or use of the Information.  As used in this Agreement, the term "person" shall be broadly interpreted to include, without limitation, any company, partnership, group, limited liability company, trust, other entity or individual.

(NY) 27011/161/ENGAGEMENT LETTERS/Blackstone Engagement Letter.doc

TRB_LD000239
CONFIDENTIAL

Blackstone shall use the Information only for the purpose of providing financial advisory services pursuant to this Agreement.  No other rights or licenses to trademarks, inventions, copyrights, patents, or any other intellectual property are implied or granted under this Agreement or by the conveying or disclosure of the Information.  All Information, unless otherwise specified in writing, shall be and remain the property of the disclosing party.  The Information supplied to Blackstone shall not be reproduced in any form except as required to accomplish the intent of this Agreement.

The Agent will furnish or cause to be furnished to Blackstone such information as Blackstone reasonably believes to be necessary to its assignment (all such information so furnished being the "Information").  The Agent recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.  Subject to Blackstone's compliance with all applicable laws and its internal document retention policies (all retained copies to be held by Blackstone and kept confidential subject to the terms of this Agreement), within 30 days after written request by the Agent following the termination of this Agreement, Blackstone shall return or destroy, at the direction of the Agent, all Information received from the Agent during the course of its engagement and, in the case of destruction, Blackstone shall certify that all Information has been so destroyed.  Blackstone's return, destruction or retention of any Information will not affect any of its other obligations under this Agreement.

In the event that the Information belonging to the Company, the Agent, or the Lenders is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone shall exercise the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's, the Agent's, or the Lenders' Information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, regulation or legal process, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Agent's other professional advisors, or, if appropriate in the Agent's judgment, to the Lenders and their professional advisors or in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone.  All services, advice and information and reports provided by Blackstone to the Agent and Lenders in connection with this assignment shall be for the sole benefit of the Agent and such Lenders and shall not be relied upon by any other person.

TRB_LD000240
CONFIDENTIAL

DPW agrees that Blackstone will provide its financial advice exclusively to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders. The Agent and Lenders will also obtain the advice of their legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of Restructuring Activities. DPW further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to DPW for the benefit of the Agent and, to the extent compatible with issues of legal privilege, Lenders, and does not in such capacity act as a fiduciary for DPW, the Agent, Lenders or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to DPW, the Agent and, to the extent compatible with issues of legal privilege, Lenders.

In consideration of Blackstone's agreement to provide financial advisory services in connection with this Agreement, Blackstone and its agents, representatives, members and employees shall be entitled to any and all rights of indemnification and exculpation provided to representatives or professionals of the Agent under the Credit Facilities. Blackstone shall have no liability (whether direct or indirect, in contract or tort or otherwise) to DPW, Agent or the Lenders or their owners, parents, affiliates, security holders or creditors for or in connection with this Agreement except for any such liability for losses, claims, damages or liabilities incurred by DPW or the Agent that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence and willful misconduct of Blackstone.

In the event that, as a result of or in connection with Blackstone's engagement hereunder, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, Blackstone will be entitled to seek reimbursement hereunder for the reasonable fees and expenses of its counsel incurred in responding to such a request.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by DPW, the Agent or Blackstone; termination for cause by any party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of notice of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect any obligations of the Company under the indemnification provisions of the Credit Agreement or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that Restructuring Activities are completed at any time prior to the expiration of 18 months following the termination of this Agreement, provided, however, in the event that Blackstone is terminated for cause, Blackstone shall not be entitled to any Restructuring Fee. For the purpose of this paragraph, "cause" shall include gross negligence, fraud, willful misconduct, or bad faith by Blackstone.

TRB_LD000241
CONFIDENTIAL

Neither DPW nor the Agent appears on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor are they prohibited parties according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not directly involved in providing advisory services in connection with this Agreement. Should the Information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in providing advisory services in connection with the Agreement, such representative shall be bound by the obligations set forth in this Agreement. Blackstone represents that its provision of the advisory services hereunder does not conflict with any service it has performed or is performing for any past or present client and that Blackstone will not undertake to perform services for any other client in a manner that conflicts with the services it is providing in connection with this Agreement while this Agreement is in effect or for a one year period following its termination.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, and it will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Agent also agrees that none of Blackstone or any of its partners (both general and limited), employees, affiliates, officers, directors and agents shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Agent or its owners, parents, affiliates, security holders or creditors for or in connection with his Agreement except for any such liability for losses, claims, damages or liabilities incurred by the Agent that is finally judicially determined by a court of competent jurisdiction to have primarily resulted from such party's gross negligence, fraud, willful misconduct or bad faith.

Blackstone and the Agent hereby agree that any action or proceeding brought by Blackstone or the Agent based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York. Blackstone and the Agent irrevocably submit to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court

TRB_LD000242
CONFIDENTIAL

for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings.   Blackstone and the Agent hereby irrevocably waive, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agree not to plead or claim the same.

(NY) 27011/161/ENGAGEMENT LETTERS/Blackstone Engagement Letter.doc

TRB_LD000243
CONFIDENTIAL

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement.

Very truly yours,

BLACKSTONE ADVISORY SERVICES L.P.

By:_____

Name:    Paul P. Huffard
Title:    Senior Managing Director

TRB_LD000244
CONFIDENTIAL

Accepted and Agreed to as
of the date first written above:


DAVIS POLK & WARDWELL, AS COUNSEL TO THE AGENT



By:_____

      Name:     Donald S. Bernstein, Esq.
      Title:      Partner


JPMORGAN CHASE BANK, N.A., AS AGENT



By:_____

      Name:     Miriam T. Kulnis
      Title:      Executive Director

(NY) 27011/161/ENGAGEMENT LETTERS/Blackstone Engagement Letter.doc

TRB_LD000245
CONFIDENTIAL

**Schedule I**

<u>Non-Debtor Guarantors</u>

Chicago National League Ball Club, Inc.
Tribune (FN) Cable Ventures, Inc.
Tribune Interactive, Inc.
Tribune National Marketing Company
Tribune ND, Inc.

(NY) 27011/161/ENGAGEMENT LETTERS/Blackstone Engagement Letter.doc

TRB_LD000246
CONFIDENTIAL