# EXHIBIT A

**(LLC Membership Interest Purchase Agreement)**

**Execution Version**

## LLC MEMBERSHIP INTEREST PURCHASE AGREEMENT

**LLC MEMBERSHIP INTEREST PURCHASE AGREEMENT**, effective as of March 2, 2010 (the "**Effective Date**"), by and among Zetabid Holdings LLC, a Delaware limited liability company ("**Company**" or "**Buyer**" as applicable), its wholly owned subsidiary Zetabid Operations, Inc., a Cayman Islands corporation ("**Sub**"), Catalist Homes Inc., a Delaware corporation ("**CH**"), and Los Angeles Times Communications LLC, a Delaware limited liability company ("**Seller**", and, together with Buyer, Sub, and CH, the "**Parties**").

### RECITALS

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, Seller's total membership interests representing 66 ⅔% of the Company membership interests as described in the Company's Amended and Restated Operating Agreement (as amended, the "**Operating Agreement**"), on the terms and subject to the conditions set forth herein, including without limitation the release of Seller from any further obligations in connection with the business or operations of Buyer herein;

WHEREAS, Sub wishes to terminate all current agreements, as set forth on **Exhibit A** attached hereto and incorporated herein (collectively, the "**Services Agreements**"), with Seller upon the consummation of the transactions contemplated by the Sale and Purchase (as defined herein), and Seller also wishes to terminate the Services Agreements with Sub, each so desiring the termination of the Services Agreements in exchange for a mutual release of any further duties or obligations in connection therewith by the Sub and the Seller to each other;

WHEREAS, Buyer, Seller and CH have all agreed to grant to one another a license in their respective ownership interests in and to the Licensed Matter, as defined in that certain License Agreement, substantially in the form attached hereto as **Exhibit B** (the "**License Agreement**"); and

WHEREAS, Buyer shall retire the membership interests purchased from Seller, and the subsequent membership interests of CH shall be adjusted accordingly to reflect that CH's aggregate membership interests in Buyer represent 100% of the Company membership interests as described in the Operating Agreement immediately following the Sale and Purchase as contemplated herein.

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1. PURCHASE AND SALE OF MEMBERSHIP INTERESTS.**

    **1.1**   **Sale and Purchase**. At the Closing, Buyer shall purchase from Seller, and Seller shall sell and transfer to Buyer, the total amount of Seller's membership interests in Company representing 66 ⅔% of the outstanding Company membership interests immediately prior to

**Execution Version**

giving effect to consummation of this transaction (the "**Membership Interests**"), for an aggregate purchase price of $10.00 (ten dollars) (the "**Purchase Price**"), and the mutual releases set forth herein, and subject to the terms and conditions of this Agreement and on the basis of the representations, warranties, covenants and agreements contained herein (the "**Sale and Purchase**").

   **1.2** **Closing**. The Sale and Purchase shall take place on Effective Date on March 2, 2010, at noon, or such other date and time as agreed upon by the Parties (the "**Closing Date**"), at the offices of Buchalter Nemer, a Professional Corporation located at 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California (which time and place are designated as the "**Closing**"). The Sale and Purchase shall be subject to the Special Distribution, as defined and set forth in the joint unanimous written consent of the Board of Directors of the Sub and the Management Committee of the Company (together with applicable resolutions, the "**Consent**"). The purchase price and Special Distribution shall be paid by wire transfer to Seller's account as instructed in writing by Seller.

   **1.3** **Deliveries at Closing**. At the Closing, the Parties shall, respectively, make the following simultaneous deliveries:

    **a.** Seller shall deliver to Buyer:

     (i) this Agreement executed on its behalf by an authorized signatory,

     (ii) an assignment of the Membership Interests, duly executed on behalf of Seller,

     (iii) an executed resignation from the Management Committee of the Company and the Board of Directors of any affiliated subsidiaries of the Company,

     (iv) an executed resignation from certain persons affiliated with Seller who were providing services (as an officer, employee, consultant or otherwise) to the Company or any affiliated subsidiaries of the Company,

     (v) a cross receipt, duly executed on behalf of Seller, indicating receipt of the Purchase Price from Buyer,

     (vi) a copy of the original counterpart of the Consent duly executed by the LAT Representative (as such term is defined in the Operating Agreement) and the director of Sub duly appointed by Seller, with such originals to be presented immediately as commercially reasonable,

     (vii) an executed License Agreement in the form attached hereto as **Exhibit B**,

     (viii) an executed Termination of Note Agreement in the form attached hereto as **Exhibit C**,

     (ix) an executed Termination of Services Agreement in the form attached hereto as **Exhibit D**,

**Execution Version**

(x) an executed Assignment and Assumption Agreement related to that certain hosting agreement, between Seller and the parties thereto related to the Company's business, in substantially the form attached hereto as **Exhibit E**,

(xi) an executed assignment of the "zetabid.com" domain name, in substantially the form attached hereto as **Exhibit F**, and

(xii) an order pursuant to Section 363 of the Bankruptcy Code approving and permitting the Sale and Purchase ("**BK Order**").

b. Buyer shall deliver to Seller (i) this Agreement executed on its behalf by an authorized signatory, (ii) the Purchase Price, by wire transfer of immediately available funds to an account or accounts designated by Seller, (iii) a cross receipt, duly executed on behalf of Buyer, indicating receipt of the Membership Interests from Seller, (iv) and the corresponding signature pages for the agreements set forth in Sections 1.3(a)(viii) through (xi) above.

c. CH shall deliver to Seller a copy of the Consent duly executed by the CH Representative (as such term is defined in the Operating Agreement) and the director of Sub duly appointed by CH.

d. Buyer, Seller and CH shall deliver to one another duly executed counterparts of the License Agreement.

e. The Parties shall execute and deliver such other documents as are customary and reasonably necessary to consummate the transactions contemplated hereby, including resignations indicating that Seller shall resign as a Manager of the Parent and from the Board of the Sub, forever forfeiting any rights to reappoint or designate any replacements on behalf of Seller as of the Closing Date.

f. That certain Guarantee, dated May ___, 2009, executed by Seller in favor of JPMorgan Chase Bank, National Association, shall be terminated on such terms and conditions as are acceptable to Seller.

g. That certain Master Services Agreement, dated July ___, 2008, by and between Seller and 24-7 Intouch, shall be terminated on such terms and conditions as are acceptable to Seller.

**1.4   Closing Logistics**. The Company shall initiate the wire transfer payment of all sums due to Seller as Purchase Price and the Special Distribution as soon as possible on the Closing Date. Further the Parties hereto agree that (i) if the total amount of the Purchase Price and the Special Distribution is not received by Seller by March 31, 2010, the Seller may terminate this Agreement, and (ii) if the Order is not received prior to March 31, 2010, the Buyer may terminate this Agreement, and in each case, (x) the Agreement, and all related agreements, terminations and resignations, shall be of no further force and effect, (y) all resignations in

**Execution Version**

connection herewith shall be ineffective, and (z) all contracts between and among the parties would upon such termination remain in full force and effect.

2. **REPRESENTATIONS AND WARRANTIES OF SELLER.**

   Seller hereby represents and warrants as follows:

   2.1 **Organization and Qualification**. Seller is a Delaware limited liability company duly organized and validly existing under the laws of Delaware. Subject to bankruptcy court jurisdiction through the Order, Seller has all requisite power and authority to enter into the transaction contemplated hereby.

   2.2 **Authorization**. As of the Closing, all action on the part of Seller, its members, and managers necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations of Seller hereunder shall have been taken, and this Agreement, assuming due execution by the Parties hereto, will constitute valid and legally binding obligations of Seller, enforceable in accordance with their respective terms, subject to: (i) judicial principles limiting the availability of specific performance, injunctive relief, and other equitable remedies and (ii) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect generally relating to or affecting creditors' rights.

   2.3 **Membership Interests**. The Membership Interests, when sold and delivered in accordance with the terms of this Agreement for the consideration expressed herein, shall be free of restrictions on transfer directly or indirectly created by Seller other than restrictions on transfer under this Agreement, the Operating Agreement and under applicable state and federal securities laws.

   2.4 **Litigation**. Other than the bankruptcy proceeding indicated in the Order, there are no actions, suits, proceedings or investigations pending or, to the best of Seller's knowledge, threatened before any court, administrative agency or other governmental body against Seller which questions the validity of this Agreement or the right of Seller to enter into this Agreement, or to consummate the transactions contemplated hereby. Other than the Order, Seller is not a party or subject to, and none of its assets is bound by, the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality which would reasonably be expected to have a material adverse effect on the transactions contemplated hereby.

   2.5 **Title to Membership Interests**. Seller has good and marketable title to all of the Membership Interests owned by it, free and clear of all mortgages, liens and encumbrances of any kind other than restrictions and obligations as a member of the Buyer created under the Operating Agreement .

   2.6 **Brokers or Finders**. Seller has not agreed to incur, directly or indirectly, any liability for brokerage or finders' fees, agents' commissions or other similar charges in connection with this Agreement or any of the transactions contemplated hereby.

3. **REPRESENTATIONS AND WARRANTIES OF BUYER, CH AND SUB.**

   3.1 **Buyer**. Buyer hereby represents and warrants as follows:

**Execution Version**

a. **Organization and Qualification**. Buyer is a limited liability company duly organized and validly existing under the laws of Delaware. Buyer has all requisite power and authority to enter into the transaction contemplated hereby.

b. **Authorization**. As of the Closing, all action on the part of Buyer, its officers, and directors necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations of Buyer hereunder shall have been taken, and this Agreement, assuming due execution by the Parties hereto, will constitute valid and legally binding obligations of Buyer, enforceable in accordance with their respective terms, subject to: (i) judicial principles limiting the availability of specific performance, injunctive relief, and other equitable remedies and (ii) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect generally relating to or affecting creditors' rights.

c. **Litigation**. There are no actions, suits, proceedings or investigations pending or, to the best of Buyer's knowledge, threatened before any court, administrative agency or other governmental body against Buyer which questions the validity of this Agreement or the right of Buyer to enter into this Agreement, or to consummate the transactions contemplated hereby. Buyer is not a party or subject to, and none of its assets is bound by, the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality which would reasonably be expected to have a material adverse effect on the transactions contemplated hereby.

3.2 **CH**. CH hereby represents and warrants as follows:

a. **Organization and Qualification**. CH is a Delaware corporation duly organized and validly existing under the laws of Delaware. CH has all requisite power and authority to enter into the transaction contemplated hereby.

b. **Authorization**. As of the Closing, all action on the part of CH, its officers, and directors necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations of CH hereunder shall have been taken, and this Agreement, assuming due execution by the Parties hereto, will constitute valid and legally binding obligations of CH, enforceable in accordance with their respective terms, subject to: (i) judicial principles limiting the availability of specific performance, injunctive relief, and other equitable remedies and (ii) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect generally relating to or affecting creditors' rights.

**Execution Version**

  c. **Litigation**. There are no actions, suits, proceedings or investigations pending or, to the best of CH's knowledge, threatened before any court, administrative agency or other governmental body against CH which questions the validity of this Agreement or the right of CH to enter into this Agreement, or to consummate the transactions contemplated hereby. CH is not a party or subject to, and none of its assets is bound by, the provisions of any order, writ, injunction, judgment or decree of any court or government agency or instrumentality which would reasonably be expected to have a material adverse effect on the transactions contemplated hereby.

 3.3 **Sub**. Sub represents and warrants as follows:

  a. **Authorization**. As of the Closing, all action on the part of Sub, its officers, and directors necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations of Sub hereunder shall have been taken, and this Agreement, assuming due execution by the Parties hereto , will constitute valid and legally binding obligations of Sub, enforceable in accordance with their respective terms, subject to: (i) judicial principles limiting the availability of specific performance, injunctive relief, and other equitable remedies and (ii) bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect generally relating to or affecting creditors' rights.

## 4. RELEASES

 4.1 **General Release By Seller**. In consideration of the undertakings by the Parties set forth herein, except for the rights, duties and obligations as provided herein, Seller, including all of its agents, officers, directors, shareholders, attorneys, independent contractors, parent and/or subsidiaries and related corporations, its predecessors-in-interest, and each and all of their respective predecessors and successors, and each of them, does hereby absolutely, fully, and forever release, relinquish, relieve, waive, and discharge Buyer, the Company and the Sub, each of their agents, officers, directors, shareholders, attorneys, independent contractors, parent and/or subsidiaries and related corporations, their predecessors-in-interest and each and all of their respective predecessors and successors, and each of them, from any and all claims, demands, suits, liabilities, and causes of action including, but not limited to, claims arising out of the Operating Agreement, any monies owed or any services agreements by and among the Company or the Sub and any of its Members, or any other understanding or agreement which Seller (and/or any of the entities listed above) have or now have or may claim to have had or to have, whether currently existing or not, and whether known or unknown, and whether arising now or in the future, under or relating in any way to the business relationship of the Parties existing as of the time of the execution of this Agreement, whether existing at law or in equity. The Parties intend that the claims released be construed as broadly as possible.

**Execution Version**

  **4.2 General Release By Buyer and other Members of Buyer.** In consideration of the undertakings by the Parties set forth herein, except for the rights, duties and obligations as provided herein, the Buyer, including all of its agents, officers, directors, shareholders, members and subsidiaries and (including for the avoidance of doubt, CH and Sub), attorneys, independent contractors, parent and/or subsidiaries and related corporations, its predecessors-in-interest, and each and all of their respective predecessors and successors, and each of them, does hereby absolutely, fully, and forever release, relinquish, relieve, waive, and discharge Seller, its agents, officers, directors, shareholders, attorneys, independent contractors, parent and/or subsidiaries and related corporations, its predecessors-in-interest and each and all of their respective predecessors and successors, and each of them, from any and all claims, demands, suits, liabilities, and causes of action including, but not limited to, claims arising out of the Operating Agreement, any monies owed or any services agreements by and among the Company and/or the Sub (and any of their Members or stockholders), or any other understanding or agreement which the Company and/or the Sub (and/or any of the entities listed above) has or now has or may claim to have had or to have, whether currently existing or not, and whether known or unknown and whether arising now or in the future, under or relating in any way to the business relationship of the Parties existing as of the time of the execution of this Agreement, whether existing at law or in equity. The Parties intend that the claims released be construed as broadly as possible.

  **4.3 Waiver Of California Civil Code Section 1542.** The Parties to this Agreement hereby acknowledge that they may hereafter discover facts different from, or in addition to, those which they now claim or believe to be true with respect to the claims released herein, and agree that this Agreement shall be and remain effective in all respects notwithstanding the discovery of such different or additional facts. In furtherance of the release set forth in Section 4.1 and 4.2 above, the Parties hereby acknowledge that they are knowingly and voluntarily waiving their rights under Section 1542 of the California Civil Code, or any other similar federal or state statute or right, to the full extent that they may lawfully waive all such rights and benefits pertaining to the subject matter hereof, and that the consequence of such waiver has been explained to them by their counsel and/or advisors. The Parties acknowledge that they are familiar with the provisions of Section 1542 which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Notwithstanding the provisions of Section 1542, and for the purposes of implementing a full and complete release in accordance with the terms set forth in Sections 4.1 and 4.2 above, the Parties expressly acknowledge that their respective releases are intended to include in its scope all claims against the released Parties which the Parties do not know or suspect to exist in their favor at the time of execution of this Agreement, and that these releases contemplate the extinguishment of any such claim or claims. The Parties expressly waive any right to assert

hereafter that any claims were excluded from this Agreement through ignorance, oversight, error or otherwise.

**4.4  Termination of Agreements**. Notwithstanding any other provision of any agreement to the contrary, the Parties agree that Seller is hereby released and discharged from any further liability or obligation under any of the agreements among the Seller and any of the Parties related to the Buyer or its business, including without limitation the Operating Agreement, any Service Agreements, the demand notes issued by Seller or otherwise. In connection therewith, the Parties shall execute and deliver a Termination of Note Agreement and Termination of Services Agreement in the form attached hereto as **Exhibit C** and **Exhibit D**, respectively.

## 5. CONTINUING COVENANTS

**5.1  References to Seller**. Buyer and Sub shall remove all references to Seller or Seller's representatives (other than in historic press releases) on the Zetabid website, including sales and collateral marketing material, within a commercially reasonable period of time subsequent to the Closing, not to exceed 48 hours. Buyer and Sub shall not represent that Seller, after the Closing Date, remains an owner and/or is affiliated with Buyer or Sub.

**5.2  Taxes**. The Parties shall cooperate to complete all tax return filings for the periods (including, if required, any stub period through the Closing Date) in which Seller was a Member of Buyer. Buyer shall pay all estimated tax payments in a timely manner. In connection therewith, the Parties shall give reasonable access to each other with respect to the financial books and records of Company and Sub.

**5.3  True-Up**. Pursuant to the financial schedule provided to CH by LAT in advance of the Closing (the "**Schedule**") and attached hereto on Schedule 1, the Parties hereto hereby agree to an operational expense true up within 90 days of the Closing Date pursuant to such Schedule. The Company agrees to maintain and to make available to LAT upon reasonable request all applicable books and records in connection with operational expenses and taxes. The Company agrees to maintain sufficient reserves for the accrued and identified operating expenses and tax preparation fees indentified on the Schedule.

## 6. MISCELLANEOUS.

**6.1  Governing Law**. This Agreement shall be governed in all respects by the laws of the State of Delaware, without regard to any provisions thereof relating to conflicts of laws among different jurisdictions.

**6.2  Survival**. The representations and warranties made herein shall survive the Closing for a period of one year, whereupon they shall cease and be of no further force and effect.

**6.3  Successors and Assigns**. Except as otherwise provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the Parties hereto. This Agreement shall not be construed so as to confer

**Execution Version**

any right or benefit on any party not a party hereto, other than their respective successors, assigns, heirs, executors and administrators.

  **6.4** **Entire Agreement; Amendment**. This Agreement and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement among the Parties with regard to the subjects hereof and thereof and supersede all prior agreements and understandings relating thereto. Neither this Agreement nor any term hereof may be amended, waived, discharged or terminated other than by a written instrument signed by the Party against whom enforcement of any such amendment, waiver, discharge or termination is sought.

  **6.5** **Termination of Services Agreements as to Seller**. The Company, Sub and Seller hereby agree that the Services Agreements are hereby terminated with respect to all duties, obligations and rights thereunder with respect to Seller to Company or Sub, and vice versa.

  **6.6** **Notices**. All notices required or permitted to be given hereunder shall be in writing. Such notices shall be effective upon receipt or, regardless of whether received five (5) business days following deposit into the United States mail, registered or certified, return receipt requested, postage prepaid, addressed as follows:

| | |
|---|---|
| If to the Company/Sub/Buyer: | Zetabid Holdings LLC<br><br>2601 Pacific Coast Highway<br>3rd Floor<br>Hermosa Beach, CA 90254<br>Attn: Michael Davin |
| With a copy to: | Buchalter Nemer<br>1000 Wilshire Boulevard, Suite 1000<br>Los Angeles, CA 90017<br>Attn: Thomas E. Gaynor |
| If to Seller: | Los Angeles Times Communications LLC<br>202 West First Street<br>Los Angeles, CA 90012<br>Attn: Julie Xanders |
| If to CH: | Catalist Homes Inc.<br>2601 Pacific Coast Highway<br>3rd Floor<br>Hermosa Beach, CA 90254<br>Attn: Michael Davin |

**Execution Version**

or at such other place as any of the Parties above may designate in a written notice given in accordance herewith.

  **6.7** **Delays or Omissions**. No delay or omission to exercise any right, power or remedy accruing to any Party upon any breach or default of any other Party under this Agreement shall impair any such right, power or remedy of such first Party, nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any Party of any breach or default under this Agreement, or any waiver on the part of any Party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing or as provided in this Agreement.

  **6.8** **Counterparts**. This Agreement may be executed in any number of counterparts, each of which may be executed by only one Party, which shall be enforceable against the Parties actually executing such counterparts, and all of which together shall constitute one instrument.

  **6.9** **Severability; Enforcement**. In the event that any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without such provision; . The Parties hereto agree that irreparable damage for which money damages would not be an adequate remedy would occur in the event that any of the provision of this Agreement were not performed in accordance with its specific terms or was otherwise breached. It is accordingly agreed that, in addition to any other remedies a Party may have at law or equity, the Parties shall be entitled to seek an injunction of injunctions to prevent such breached of this Agreement and to enforce specifically the terms hereof.

  **6.10** **Non-Disparagement**. Each Party agrees that it will not make derogatory or disparaging remarks about any other Party hereto from and after the Effective Date of this Agreement.

**[Signatures Follow]**

<u>**Execution Version**</u>

  **IN WITNESS WHEREOF**, the Parties have executed this LLC Membership Interest Purchase Agreement as of the Effective Date first above written.

            **ZETABID HOLDINGS LLC,** as Company/Buyer

            By: _____

            Name:
            Title:


            **ZETABID OPERATIONS, INC.,** as Sub

            By: _____

            Name:
            Title:


            **LOS ANGELES TIMES COMMUNICATIONS LLC**

            By: _____

            Name:
            Title:


            **CATALIST HOMES, INC.**

            By: _____

            Name:
            Title: