# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Related to Docket Nos. 233, 878**<br>**Hearing Date: March 23, 2010 at 1:00 p.m. ET**<br>**Objection Deadline: March 16, 2010 at 4:00 p.m. ET** |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING DEBTORS TO AMEND THE LETTER OF CREDIT FACILITY PURSUANT TO SECTIONS 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) AND 365 OF THE BANKRUPTCY CODE AND GRANTING OTHER RELATED RELIEF

The above-captioned debtors and debtors in possession (each a "Debtor" and

collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order (the

"Order") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") authorizing Debtor Tribune Company and the other Debtors to enter into an Amendment

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a/ Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CHI 5230241v.4

No. 3 to Letter of Credit Agreement ("Amendment No. 3") which shall amend that certain Post-Petition Letter of Credit Agreement dated as of December 8, 2008 (as amended, supplemented or otherwise modified from time to time, and as amended pursuant to Amendment No. 1 to Letter of Credit Agreement dated as of March 6, 2009 and Amendment No. 2 to Letter of Credit Agreement dated as of April 6, 2009, and together with Amendment No. 3, the "Amended Letter of Credit Agreement") among Barclays, as administrative agent (in such capacity, the "LC Agent") and issuing bank (in such capacity, the "Issuing Bank") and, if applicable, a syndicate of other financial institutions (including Barclays, the "Lenders") and the Debtors; and granting other related relief.  In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On December 8, 2008, the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code"), except Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC, which filed on October 12, 2009 (each date, as applicable, the "Petition Date").  The Debtors' chapter 11 cases are jointly administered for procedural purposes only.

2.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On December 11, 2008, this Court entered its Interim Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and For Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter Into a Letter of Credit Facility,

(3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Interim Financing Order") (Docket No. 67).

    4.     On December 18, 2008, the United States Trustee appointed the official committee of unsecured creditors (the "Committee").

    5.     On January 15, 2009, this Court entered its Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter into a Letter of Credit Facility, (3) Modifying the Automatic Stay and (4) Granting Other Related Relief (the "Final Financing Order") (Docket No. 233).

    6.     On April 8, 2009, this Court entered its Order (A) Approving Amendments to Securitization Facility and Letter of Credit Facility and (B) Modifying the Final Order Pursuant to Sections 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (1) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (2) Authorizing the Debtors to Enter into a Letter of Credit Facility, (3) Modifying the Automatic Stay, and (4) Granting Other Related Relief (the "Second Financing Order") (Docket No. 878).

    7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief

sought herein are sections 105, 362(d), 363(b)(1), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of title 11 of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

8.      The Debtors' initial amended securitization facilities (the "Interim Facilities") as authorized by this Court by the Final Financing Order were 120-day facilities set to expire on or about April 10, 2009.  The Debtors and Barclays subsequently negotiated an extended securitization facility (the "Extended Securitization Facility"), that was syndicated by Barclays to other Lenders, and an amended letter of credit facility (the "Amended Letter of Credit Facility" together with the Extended Securitization Facility, the "Amended Facilities"), as documented by the Amended and Restated Financing Agreements and approved pursuant to the Second Financing Order.[2]  The Amended Facilities, among other things, (a) reduced the Aggregate Commitment from $300,000,000 to $225,000,000 (consisting of an Aggregate Revolving Loan Commitment in the amount of $75,000,000 and an Aggregate Term Commitment of $150,000,000) and (b) extended the Facility Termination Date to the earliest to occur of (1) April 10, 2010 or (2) the date that the Facility Termination Date is declared or automatically occurs pursuant to Clause 7.1 (Trigger Events) or Clause 7.2 (Facility Termination Events), among other events.

9.      On November 19, 2009, the Debtors repaid the then-current outstanding balance of the loans under the RLA of $170,000,000, of which $150,000,000 represented term loan borrowings and $20,000,000 represented the revolving line of credit borrowings.  Amounts repaid under the term loan were not available to be reborrowed, but the Debtors maintained the

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings assigned in any Financing Order referenced herein, the Amended and Restated Financing Agreements, the Amendment No. 3 to Letter of Credit Agreement and the Payout and Termination Agreement.

$75,000,000 revolving line of credit, subject to the conditions set forth in the Extended

Securitization Facility, including continued payment of a commitment fee on the unused portion

of the revolving line of credit. The Debtors during the course of these chapter 11 cases have

accrued an available cash balance of approximately $1.42 billion as reported in the January 31,

2010 monthly operating report for Debtor Tribune Company (Docket No. 3662). Given their

significant available cash on hand, the Debtors no longer require the remaining, unused Extended

Securitization Facility, and have terminated the securitization portion of the Amended Facilities.

        10.     On February 25, 2010, the Debtors provided written notice of termination

to the Administrative Agent that the borrower, Tribune Receivables, LLC, had elected to reduce

the Revolving Commitments under the RLA to zero effective on February 26, 2010, which

resulted in a Facility Termination Date of February 26, 2010 and a Final Payout Date of

March 1, 2010, at which time the Debtors paid the Administrative Agent $12,500 in remaining

fee obligations under such facility. The terms of the final payout and termination of the

Extended Securitization Facility are set forth in the Payout and Termination Agreement (the

"Termination Agreement") attached hereto as Exhibit B. The Debtors do not believe that

Bankruptcy Court approval is required for the Termination Agreement, which was executed

pursuant to the agreements previously approved under the Financing Orders.

        11.     The Termination Agreement specifically provides that in reference to the

Financing Orders, the interest of the Administrative Agent and Lenders in the Collateral (as

defined in the Guaranty Security Agreement) described in Section 2 of the Guaranty Security

Agreement and in the RLA Collateral (as defined in the Financing Orders) shall be released.

Further, the Guaranty shall remain in effect with respect to any Transaction Party Obligations

arising from a term or provision of the RLA that by its terms survives termination of that

agreement, notwithstanding the occurrence of the Final Payout Date; provided, however, that the

Debtors shall not be precluded from granting claims with priority equal or senior in priority to

the Guaranty and other Superpriority Claims (as defined in the Financing Orders) in connection

with any subsequent financing, lease, sale or similar transaction to the extent, upon notice and a

motion, such claims are approved by the Bankruptcy Court; it being understood that the

Administrative Agent and the Lenders reserve all rights with respect thereto.  The surviving

provisions relate to continuing indemnification and expense reimbursement obligations under the

Amended Facilities.

12.     Although the Debtors have terminated the Extended Securitization

Facility, they intend to further amend and extend the Amended Letter of Credit Facility

according to the terms provided for in Amendment No. 3 to Letter of Credit Agreement attached

hereto as Exhibit C and described below.  The Termination Agreement is not intended to modify

or release any lien or interests of the Administrative Agent and the Lenders in the LC Cash

Collateral (as defined in the Financing Orders), which shall continue in full force and effect.

## RELIEF REQUESTED

13.     By this Motion, the Debtors request authority to:

    a.  enter into Amendment No. 3 to Letter of Credit Agreement, which shall, among other things, reduce the Commitment Amount to $30,000,000;

    b.  extend the Termination Date to the earlier to occur of (a) April 9, 2011 or (b) such other date on which the Commitments terminate pursuant to Section 9 of the Amended Letter of Credit Agreement;

    c.  continue to perform their reimbursement and other obligations under, and provide the required LC Cash Collateral (as defined below) under, the Letter of Credit Agreement, in an amount at least equal to 105% of the aggregate amount of Letter of Credit Liabilities;

    d.  grant to the LC Agent, the Issuing Bank and the Lenders priority in payment with respect to the obligations of Debtor Tribune

Company and the other Debtors under the Amended Letter of Credit Agreement over any and all administrative expenses of the kind as specified in sections 503(b) and 507(b) of the Bankruptcy Code other than in respect of the Carve-Out;

e. continue the prior relief granted under the Final Financing Order and the Second Financing Order pertaining to the Amended Letter of Credit Facility;

f. seek other related relief described in the proposed Order; and

g. pursuant to Bankruptcy Rule 4001(c)(2), have this Motion heard at a final hearing and the final proposed Order entered thereto.

## I.   Request for Authority to Enter Into Amended Letter of Credit Facility and Related Rights Pursuant Thereto

14.   The Debtors seek access to the financing proposed to be provided by the Amended Letter of Credit Facility to permit Debtor Tribune Company to obtain standby letters of credit necessary in the ordinary course of its, and certain of its subsidiaries', businesses.  In the absence of the proposed continuation of the Amended Letter of Credit Facility as modified herein, serious harm to the Debtors and their estates could occur, which may include third parties and insurers declining to conduct business dealings with the Debtors.  The preservation, maintenance and enhancement of the going concern value of the Debtors are significant to the Debtors' successful reorganization.  This facility is important to the Debtors ability to maintain workers' compensation and other required insurance or other obligations in support of their normal business operations.

15.   The significant elements of the Amended Letter of Credit Facility remain largely unchanged under Amendment No. 3 to Letter of Credit Agreement, except for the revised Commitment Amount and Termination Date.  The major components of the Amended Letter of Credit Facility are summarized below.

a) Type of Facility:  An Amended Letter of Credit Facility in the amount of up to $30,000,000

b) <u>LC Agent</u>:  Barclays Bank PLC

c) <u>Lenders</u>:  Barclays and the other lenders from time to time party to the Letter of Credit Agreement

d) <u>Account Parties</u>:  Debtor Tribune Company and the Debtor Subsidiaries that are signatories to Amendment No. 3 to Letter of Credit Agreement

e) <u>Guarantors</u>:  The Debtor Subsidiaries that are signatories to Amendment No. 3 to Letter of Credit Agreement

f) <u>Commitment Amount</u>:  $30,000,000

g) <u>Interest Rate</u>:  A letter of credit fee in respect of each Letter of Credit of 3% per annum of the daily average undrawn face amount of such Letter of Credit, which remains unchanged.

h) <u>Collateral</u>:  The "LC Cash Collateral" (as that term is defined in the Final Financing Order), means the amounts deposited into the collateral account from time to time pursuant to Section 8.2.4 of the Amended Letter of Credit Agreement.  The applicable account party is obligated to cash collateralize each outstanding obligation in an amount at least equal to 105% of such obligation.

i) <u>Termination Date</u>:  The termination date means the earlier of (a) April 9, 2011 or (b) such other date on which the Commitments terminate pursuant to Section 9 of the Amended Letter of Credit Agreement.

j) <u>Tenor of Letters of Credit</u>:  Each letter of credit shall expire on a date no later than the first anniversary of the issuance date of such letter of credit (or, in the case of any renewal or extension thereof, no later than one year after such renewal or extension), and any letter of credit that provides for automatic extension or renewal shall provide that such extension or renewal may be terminated by notice from the Issuing Bank of not less than 60 days prior to the date of such renewal or extension.

k) <u>Security</u>:  The facility will be secured by a first priority, perfected, security interest in, and lien on, the LC Cash Collateral pursuant to section 364(d) of the Bankruptcy Code, with priority over (i) any other lien or security interest under section 364(d) of the Bankruptcy Code, (ii) any and all other liens and claims against the property of the Company or of the Debtor Subsidiaries or the Collateral existing on the Petition Date, and (iii) priority claims (including administrative expenses) alleging priority pursuant to section 503, section 506(c) or section 507 of the Bankruptcy Code, heretofore or hereafter arising or incurred in the chapter 11 cases or in any converted or superseding case or cases under any chapter of the Bankruptcy Code.

l)  Representations and Warranties:  Usual and customary for a facility of this type.

m)  Covenants:  Usual and customary for a facility of this type, including but not limited to:  (i) the furnishing of certain financial reports, notices of default, and chapter 11 filings to the LC Agent and (ii) a covenant not to permit to exist any claims entitled to a superpriority under section 364(c)(1) of the Bankruptcy Code, other than those of the LC Agent and the Lenders.

n)  Events of Default:  Usual and customary for a facility of this type, including but not limited to:  (i) non-payment of reimbursement obligations under the Letter of Credit Agreement, (ii) non-compliance with the provisions of the Letter of Credit Agreement, as amended, (iii) dismissal or conversion of the chapter 11 cases, (iv) the modification or failure to enter into effect of the financing orders, or the Debtors' failure to comply with the financing orders, (v) the contest or disallowance of any Lender's claim related to the Receivables or LC facilities, and (vi) other bankruptcy-related events as discussed in Section 9.1 of the Letter of Credit Agreement.  Cross-defaults with the terminated Amended Securitization Facility have been removed by Amendment No. 3 to Letter of Credit Agreement.

**Principal Order Terms**

16.    The principal terms set forth in the proposed Order:

a)  Authorize Debtor Tribune Company and the Debtor Subsidiaries to enter into Amendment No. 3 to Letter of Credit Agreement with Barclays;

b)  Authorize Debtor Tribune Company and the Debtor Subsidiaries to perform and do all acts that may be required in connection with the Amended Letter of Credit Agreement and the transactions contemplated thereby; and

c)  Except to the extent specifically modified in the Payout and Termination Agreement, the Final Financing Order and the Second Financing Order, and the documents and agreements approved pursuant thereto, as amended, amended and restated or otherwise modified, are hereby ratified and shall remain in full force and effect.

17.    Finally, Barclays, as the LC Agent, Issuing Bank and Lender, has determined that the relief requested in this Motion is acceptable to it.

## II.    Modification of the Automatic Stay

18.    As is customary in commercial transactions of this nature, Debtor Tribune Company is required (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay or reimburse the LC Agent, the Issuing Bank and the Lenders and their respective affiliates and agents, respectively, for the payment of certain fees and expenses pursuant to the Amended Letter of Credit Facility (the "Fees").  In addition, pursuant to the fee letter (the "Fee Letter"), Debtor Tribune Company has agreed (without the necessity of any further application being made to, or Order being obtained from, this Court) to pay the fees referred to in the Fee Letter in consideration of the LC Agent's services in structuring and negotiating the Amended Letter of Credit Agreement.

19.    Therefore, the automatic stay provisions of section 362 of the Bankruptcy Code should continue to be vacated and modified to the extent necessary to permit the LC Agent to exercise, upon the occurrence of any Event of Default (as defined in the Letter of Credit Agreement), all rights and remedies provided for in the Amended Letter of Credit Agreement, and to take any or all of the following actions pursuant to the Amended Letter of Credit Agreement without further order of or application to this Court: (a) cease to make any extensions of credit or loans or advances to the Debtors; (b) terminate the commitments and declare all obligations to be immediately due and payable; (c) set off and apply immediately any and all amounts in accounts maintained by the Debtors with the LC Agent against the obligations, and otherwise enforce rights against the LC Cash Collateral in the possession of the LC Agent for application towards the obligations; and (d) take any other actions or exercise any other rights or remedies permitted under the proposed Order, the Amended Letter of Credit Agreement or applicable law to effect the repayment and satisfaction of the Obligations; provided, that the LC

Agent shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the United States Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the LC Collateral (other than the rights described above to the extent they might be deemed remedies in respect of the LC Collateral) and other than with respect to freezing any deposit accounts or securities accounts; provided, further, that the Debtors shall have the right during such five (5) day period to seek continuation of the automatic stay solely on the basis that no Event of Default has occurred. Notwithstanding anything herein or in the Order to the contrary, no extensions of credit, LC Cash Collateral, or any portion of the Carve-Out may be used to object to, or contest, in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the letter of credit obligations, or to assert any claims or causes of action against the LC Agent, the Issuing Bank, the Lenders, or any agent of any of the foregoing.

## DISCLOSURE UNDER LOCAL RULE 4001-2

20.    The Debtors provided disclosures in accordance with Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") in the Debtors' Motion to Approve an Order (I) Authorizing the Debtors to Guarantee an Amended Securitization Facility and for Certain Debtors to Continue Selling Receivables and Related Rights Pursuant Thereto, (II) Authorizing the Debtors to Enter Into a Letter of Credit Facility, (III) Modifying the Automatic Stay and (IV) Granting Other Related Relief Pursuant to Sections 105,362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e) and 365 of the Bankruptcy Code (Docket No. 19).

## APPLICABLE AUTHORITIES

21.     The continuation of the Amended Letter of Credit Facility is vital to the success of the Debtors' reorganization efforts and is an appropriate vehicle for the Debtors to access standby letter of credit financing for their operations.  The preservation of the Debtors' businesses and ability to reorganize successfully depend upon the approval of this Motion. Absent this Court's approval of the relief sought herein, the Debtors face a substantial risk of severe disruption to their business operations by an inability to issue standby letters of credit.

22.     This Court should therefore approve the relief sought in this Motion because the Debtors are unable to obtain standby letter of credit financing on an unsecured basis and continuation of the Amended Letter of Credit Agreement is in the best interests of the Debtors' estates.

### A.      Authorizing a Lien under § 364(c)(2) of the Bankruptcy Code

23.     The Bankruptcy Code permits post-petition credit under section 364(c) of the Bankruptcy Code if the court makes a finding, made after notice and a hearing, that the debtors in possession are "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense."[3] See In re Garland Corp., 6 B.R. 456, 461 n.11 (1st Cir. B.A.P. 1980) (secured credit under section 364(c)(2) is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa.), modified on other grounds, 75 B.R. 553 (1987) (debtor seeking

---

[3] Section 364(c) of the Bankruptcy Code provides that:
    (c) If the trustee [or debtor-in-possession] is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
        (1) with priority over any and all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;
        (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
        (3) secured by a junior lien on property of the estate that is subject to a lien.

unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to 364(b) of the Bankruptcy Code); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code). The Debtors previously described the difficult credit market conditions and their inability to secure unsecured credit in the Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company in Support of First Day Motions (Docket No. 3). For these reasons, the Debtors are unable to acquire additional financing to support their operations, including alternative letter of credit financing arrangements.

24.    To show that the credit required is not obtainable on an unsecured basis, the debtor need only demonstrate "by a good faith effort that credit was not available" without the protections afforded to potential lenders by sections 364(c) or 364(d) of the Bankruptcy Code. Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id. at 1088; see also In re Ames Dept. Stores, Inc., 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders); In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R.

13

107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc., 99

B.R. 117, 120 n.4 (N.D. Ga. 1989).

25.    The Debtors, together with their investment bankers and financial

advisors, sought indications of interest in a subordinate DIP facility prior to the filing of these

chapter 11 cases, but the financial institutions that were approached were unwilling to provide

the Debtors with additional liquidity on an unsecured basis.  The Debtors therefore believe that

they have satisfied the requisite showing that credit was not available on an unsecured or

subordinate basis and that the proposed continuation of the Amended Letter of Credit Facility is

the best available standby letter of credit facility under the circumstances.  The efforts by the

Debtors constitute a good faith effort and satisfy section 364(c) of the Bankruptcy Code.

26.    The Debtors are entitled to financing under section 364(c) because the

Debtors are unable to obtain unsecured credit under section 364(b), the financing is necessary to

preserve the assets of the Debtors' estates, and the terms of the transaction are fair, reasonable,

and adequate given the circumstances.  In re Ames Dept. Stores, Inc., 115 B.R. at 37-39.  The

terms of the Amended Letter of Credit Agreement are fair, reasonable, and in the best interests of

the Debtors and their estates.  Likewise, the fees and charges required under the Amended Letter

of Credit Agreement are reasonable and appropriate under the circumstances and the result of

good faith, arm's length negotiations.

**B.    Adequate Protection and Other Related Relief**

27.    The Debtors and Barclays as LC Agent agreed to the following adequate

protection provisions as granted by the Final Financing Order and required by the Amended

Letter of Credit Agreement: (a) that the Debtors acknowledge that the Debtors, the LC Agent,

the Issuing Bank and the Lenders have negotiated the terms and conditions of the Amended

Letter of Credit Agreement and the proposed Order in good faith and at arms length, and (b) that

the Lenders are entitled, pursuant to Bankruptcy Code section 364(c)(1), to receive a superpriority administrative expense claim (the "Superpriority Claim") subordinate only to the postpetition lenders' superpriority administrative expense claims.  In addition, the Superpriority Claims are due immediately:  (a) if the Order is entered and then modified in any respect without the LC Agent's consent or (b) upon the effective date of any confirmed plan of reorganization in these cases.  Finally, as part of the adequate protection, the stipulations and admissions described above become binding on all parties in interest upon entry of the Order by this Court.

**III.    Authorization Is in the Best Interests of the Debtors' Estates**

28.    A denial of the Debtors' requested relief may cause immediate harm to the Debtors and their estates.  Absent access to the financing available by the Amended Letter of Credit Facility, the Debtors may experience difficulties in continuing their operations while also meeting their ongoing obligations to suppliers, vendors, employees, and other creditors.  If the Debtors are unable to fulfill their ongoing obligations, they will face operational constraints that would jeopardize their successful reorganizations and value of their estates.  In contrast, the Debtors' access to the Amended Letter of Credit Facility will ensure that the "going concern" value of the assets are preserved and substantially greater than the value of the assets if such funding were denied.

29.    Bankruptcy courts consistently defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.  See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment ... [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); cf. Group of Inst. Investors v. Chicago, Mil., St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions

regarding assumption or rejection of leases are left to the business judgment of the debtor); In re Simasko Prods. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court."). In fact, "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

30.     The Debtors submit for all these reasons that ample justification exists for the relief requested herein.

## NOTICE

31.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel for the Committee; (vi) counsel to the administrative agents for the Debtors' prepetition loan facilities; (vii) counsel to the administrative agent for Debtors' post-petition loan facility; (viii) the indenture trustees for the Debtors' prepetition notes; and (ix) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[Remainder of page intentionally left blank.]

WHEREFORE, the Debtors respectfully request this Court enter an Order, in substantially the form attached hereto as Exhibit A, authorizing Debtor Tribune Company and the other Debtors to enter into Amendment No. 3 to Letter of Credit Agreement among the Debtors, the LC Agent, the Issuing Bank and the Lenders, and granting other related relief described in the proposed Order and any further relief this Court may deem just and proper.

Dated:  Wilmington, Delaware          Respectfully submitted,
       March 2, 2010

                                 SIDLEY AUSTIN LLP
                                 Bryan Krakauer
                                 James F. Conlan
                                 Candice L. Kline
                                 One South Dearborn Street
                                 Chicago, Illinois  60603
                                 Telephone:  (312) 853-7000
                                 Facsimile:  (312) 853-7036

                                        -and-

                                 COLE, SCHOTZ, MEISEL,
                                 FORMAN & LEONARD, P.A.

                                 By: _____
                                 Norman L. Pernick (No. 2290)
                                 J. Kate Stickles (No. 2917)
                                 Patrick J. Reilley (No. 4451)
                                 500 Delaware Avenue, Suite 1410
                                 Wilmington, Delaware  19801
                                 Telephone:  (302) 652-3131
                                 Facsimile:  (302) 652-3117

                                 ATTORNEYS FOR DEBTORS AND
                                 DEBTORS IN POSSESSION