# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: March 23, 2010 at 11:00 a.m. ET**<br>**Objection Deadline: March 16, 2010 at 4:00 p.m. ET** |

## MOTION OF DEBTORS FOR AN ORDER AUTHORIZING ASSUMPTION OF SETTLEMENT AND COOPERATION AGREEMENT, JOINT PRIVILEGE AND COMMON INTEREST AGREEMENT, AND GUARANTEED COST PROGRAM AGREEMENT WITH MARSH USA, INC.

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion") for

entry of an order authorizing and approving the assumption of that certain Settlement and

Cooperation Agreement (the "Settlement Agreement"), Joint Privilege and Common Interest

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Agreement (the "Joint Privilege Agreement"), and Guaranteed Cost Program Agreement (the

"GCP Agreement", and collectively with the Settlement Agreement and the Joint Privilege

Agreement, the "Agreements") between Debtor Tribune Company ("Tribune") and Marsh USA,

Inc. ("Marsh" and, collectively with Tribune, the "Parties"), pursuant to section 365(a) of title 11

of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), as more fully

described herein.  In support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune and certain of its

subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter

11 of the Bankruptcy Code on October 12, 2009.  In all, 112 entities are Debtors in these chapter

11 cases.

2.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  [Docket

Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

§§ 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of

Delaware appointed an official committee of unsecured creditors (the "Committee").  No request

has been made for the appointment of a trustee.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought

herein is section 365(a) of the Bankruptcy Code.

## BACKGROUND

6.      Prepetition, in early 1998, Marsh assisted in arranging for the transfer of

certain formerly self-insured workers' compensation liabilities (the "Workers' Comp

Liabilities") of the Times Mirror Company ("Times Mirror") to the Reliance National Indemnity

Company ("Reliance") and Swiss Reinsurance America Corporation ("Swiss Re").  Marsh also

was involved in helping to place a guaranteed cost program (the "GCP") for certain of Times

Mirror's future workers' compensation liabilities.

7.      Reliance and Swiss Re performed their obligations related to the Workers'

Comp Liabilities and GCP until Reliance entered into liquidation proceedings, in or around

October 2001.  At that time, Reliance ceased all performance of its obligations related to the

Workers' Comp Liabilities and the GCP.  Swiss Re, which had been directly funding claims

related to the Workers' Comp Liabilities and GCP on behalf of Times Mirror, likewise ceased its

performance, on the asserted grounds that Tribune, as successor-in-interest to Times Mirror, was

not entitled to the direct performance and benefit of Swiss Re's obligations due to the fact that

Reliance entered into liquidation proceedings.

8.      On or about May 2, 2003, Tribune, as successor-in-interest to Times

Mirror, filed a complaint against Marsh in the Superior Court of the State of California for the

County of Los Angeles (Case No BC294960) (the "Lawsuit").  The Lawsuit included claims

against Marsh arising out of Marsh's involvement in arranging for the transfer of the Workers'

Comp Liabilities and Marsh's involvement in placing the GCP.  The complaint alleged, among

other things, that Marsh had acted negligently in failing to ensure that Times Mirror would have

direct access to Swiss Re's performance and obligations in the event Reliance became insolvent.

3

LA1 1671420

9.      Tribune and Marsh eventually agreed to a consensual resolution of the Lawsuit. The Agreements contain the terms of the overall settlement of the Lawsuit agreed to by Tribune and Marsh on or about August 15, 2005. Each Agreement is summarized below.[3]

A.    The Settlement Agreement

10.     The Settlement Agreement provides for a final resolution of all claims that Tribune or Marsh could have brought in the Lawsuit, except those claims covered by the GCP Agreement. Pursuant to the Settlement Agreement, Tribune agreed to take reasonable steps to seek recovery for the Workers' Comp Liabilities from available sources, including Swiss Re and Reliance-in-Liquidation (the "Recovery Actions").

11.     In return, Marsh agreed to pay for a portion of all fees and costs previously incurred by Tribune in pursuing the Recovery Actions and a portion of all future fees and costs incurred by Tribune in pursuing the Recovery Actions. In addition, to the extent that the funds obtained from the Recovery Actions were insufficient to satisfy the Workers' Comp Liabilities, Marsh agreed to pay a portion of such liabilities. Marsh's obligations to pay a portion of the Workers' Comp Liabilities are secondary to and net of any amounts recovered by Tribune in the Recovery Actions, and Marsh is entitled under the terms of the Settlement Agreement to recoup amounts it has paid to Tribune for Workers' Comp Liabilities to the extent amounts subsequently are recovered by Tribune in the Recovery Actions. Marsh's obligations under the Settlement Agreement are secured by an irrevocable letter of credit.

12.     Prior to the Petition Date, Tribune prosecuted the Recovery Action against Swiss Re to a successful conclusion. Currently, the only outstanding Recovery Action is against

---

[3] Each of the Agreements contains a confidentiality provision and the terms of each of the Agreements contain information that Marsh considers commercially sensitive. Nevertheless, Marsh has agreed to allow Tribune to make the Agreements available to the Committee, and the Steering Committee pursuant to the confidentiality agreements they have with the Debtors, which comply with the confidentiality restrictions contained in the Agreements, and to make the Agreements available to the Office of the United States Trustee.

4

Reliance in its liquidation proceedings. The Reliance Recovery Action is pending in Reliance's liquidation case before the Commonwealth Court of Pennsylvania (the "Commonwealth Court") (Case No. 269M.D.2001). Recently, the Commonwealth Court appointed a referee to make a substantive ruling on Tribune's claims against the Reliance estate.

13.    Since 2005, Marsh has made payments to Tribune, pursuant to the Settlement Agreement, for fee and cost reimbursements and reimbursements for claims arising from Workers' Comp Liabilities. The Marsh payments for Workers' Comp Liabilities are subject to possible recoupment by Marsh, if and to the extent Tribune obtains additional amounts from the Recovery Actions (including the pending Reliance Recovery Action).

14.    Currently, Marsh is withholding payment of in excess of $1,000,000 owed to Tribune under the Settlement Agreement, for claims reimbursements and fee and cost reimbursements. Marsh requested that Tribune move to assume the Agreements and indicated that the reimbursements required pursuant to the Settlement Agreement would be made upon assumption.

15.    In addition, Tribune believes it will receive in excess of $4,000,000 in additional payments from Marsh under the terms of the Settlement Agreement on account of future reimbursements for Workers' Comp Liabilities claims not satisfied by amounts obtained in the Recovery Actions, and future reimbursements for fees and costs incurred in pursing the Recovery Action against Reliance. Although the Workers' Comp Liabilities claims are based on a period of coverage that ended in 1998, these are "long tail" workers' compensation claims in which the claimants continue to incur losses and expenses for which Tribune, as successor-in-interest to Times Mirror, is liable.

B. The Joint Privilege Agreement

16.    On or about May 19, 2005, the Parties entered into the Joint Privilege

Agreement in order to facilitate the sharing of information related to the Recovery Actions and

other proceedings related to the Workers' Comp Liabilities.  In part, the Joint Privilege

Agreement exists to protect, to the maximum extent possible, any applicable privileges or

protections the Parties have with respect to any shared information.  The Joint Privilege

Agreement contains procedures that govern requests by third parties for common interest

information and procedures for withdrawal from the Joint Privilege Agreement by either of the

Parties.

C. The GCP Agreement

17.    As part of the overall settlement of the Lawsuit, the Parties agreed to a

standstill on claims related to the GCP.  Specifically, the GCP Agreement provides for the tolling

of any applicable period of limitations and the postponement of any deadline for the assertion of

claims or defenses arising out of or relating to the placement of the GCP.  Both Tribune and

Marsh retain the right to unilaterally terminate the GCP Agreement.  Pursuant to the GCP

Agreement, any GCP claims asserted subsequent to a termination are to be resolved by

confidential arbitration, with limited rights to discovery.

**RELIEF REQUESTED**

18.    By this Motion, the Debtors seek entry of an order authorizing and

approving the assumption of the Agreements pursuant to section 365(a) of the Bankruptcy Code.

**BASIS FOR RELIEF**

19.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject an executory contract or an unexpired lease."  11

U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d

6

1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)).  A debtor's assumption or rejection of an executory contract is subject to review under the business judgment standard.  In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test").

20.    Under the business judgment test, a debtor is required to proffer a reason why, in its business judgment, assumption or rejection of the executory contract or unexpired lease at issue benefits the debtor's estate and then articulate the bases of that determination.  See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989).  Application of the business judgment standard thus dictates "that a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion."  See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986); Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching).

21.    The Debtors believe, in their business judgment, that the Agreements embody a settlement of the Lawsuit that has proven to be cost effective and favorable for Tribune.  The assumption of the Agreements by Tribune is in the best interests of its estate and creditors.  As described above, Marsh reimburses Tribune for significant portions of the fees and costs associated with the Recovery Actions, and reimburses Tribune for significant portions of

the incurred Workers' Comp Liabilities themselves on a "net" basis relative to amounts paid by Swiss Re and/or Reliance as a result of prosecution of the Recovery Actions.

22.    Pursuant to the Agreements, Marsh has committed to continue reimbursement for future fees and costs and future Workers' Comp Liabilities.  If the Agreements are not assumed, Tribune would likely be forced to pay all of the fees and costs in its pursuit of the Recovery Action against Reliance.  In addition, Tribune would likely be forced to pay for all current and future Workers' Comp Liabilities without any significant hope of reimbursement or other recovery other than through the pending Reliance Recovery Action, which Reliance is vigorously defending and in which Reliance disclaims any and all obligations for the Workers' Comp Liabilities.  Therefore, the Debtors believe that assumption of the Agreements will provide them with significant benefits and will not result in any additional significant costs to the Debtors or their estates.

23.    Moreover, in consideration for the proposed assumption of the Agreements, Marsh has agreed to voluntarily withdraw its proof of claim, claim no. 4396, which was filed in an unliquidated amount.  Accordingly, and for all of the reasons described above, the Debtors respectfully submit that the assumption of Agreements is supported by sound business judgment and is in the best interests of their estates and creditors.

24.    Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations—by promptly curing any existing defaults and providing adequate assurance of future performance under such contract.  See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993).  The Debtors and Marsh agree that there are no existing defaults by the Debtors under the

8

Agreements that require cure.  Further, the Debtors maintain sufficient liquidity to perform all of their postpetition obligations under the Agreements.  Marsh agrees that it has been provided with adequate assurance of Tribune's future performance under the Agreements.  Accordingly, the Debtors have met all of the requirements for the assumption of the Agreements.

## NOTICE

25.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) counsel to Marsh; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

26.    The Debtors have not previously sought the relief requested herein from this or any other Court.

LA1 1671420

WHEREFORE, The Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as Exhibit A, authorizing and approving the assumption

of the Agreements, and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      March 5, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Kevin T. Lantry
Gabriel R. MacConaill
555 W. Fifth Street
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

    -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

LA1 1671420