UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

FEE EXAMINER'S FINAL REPORT
REGARDING APPLICATION OF SEYFARTH SHAW LLP FOR ALLOWANCE AND
PAYMENT OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES AS EMPLOYMENT LITIGATION COUNSEL TO THE DEBTORS
IN THE ORDINARY COURSE OF BUSINESS
FOR THE PERIOD OF OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009

Stuart Maue, fee examiner in this proceeding, submits this final report with respect to the Application of Seyfarth Shaw LLP ("Application"), for the period from October 1, 2009, through October 31, 2009, seeking approval of fees that total $99,580.00 and reimbursement of expenses that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; K.IAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call Inc (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

-1-
Seyfarth Final Report – Monthly Application for the Period: October 1, 2009 - October 31, 2009
Case No. 08-13141 (KJC)

total $1,516.15. Seyfarth Shaw LLP ("Seyfarth") is business and employment litigation counsel to the debtors and debtors in possession (collectively the "Debtors") in the ordinary course of business.

## Background

1. The Debtors utilized Seyfarth as litigation and employment litigation counsel in the ordinary course of business under the authority granted by an order dated January 15, 2009 [Docket No 227] ("OCP Order") approving the Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professional Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code [Docket No. 148] ("OCP Motion").

2. The Debtors are authorized to compensate and reimburse ordinary course professionals retained pursuant to the OCP Order without Court approval, provided that the fees incurred by such ordinary course professional do not exceed the professional's monthly cap. The OCP Order provides that the fees incurred by any ordinary course professional with a monthly cap of $50,000.00 shall not exceed such cap on average over any consecutive two-month period.

3. Seyfarth was initially retained as an ordinary course professional with a monthly cap of $35,000.00. The firm's monthly cap was subsequently amended and increased to $50,000.00. (See Docket No. 544).

4. The fees incurred and invoiced by Seyfarth during the month of October 2009 exceeded the $50,000.00 monthly cap. As the firm incurred $60,758.00 in fees in September 2009, Seyfarth exceeded the cap over the applicable two month period.

5. Pursuant to the OCP Order, in the event the fees incurred by an ordinary course professional exceed the monthly cap, the professional shall seek the Court's approval "of all fees invoiced for that month (including amounts below the cap) in accordance with sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules, and applicable order of this Court."

6.	Stuart Maue reviewed the Application, including each of the billing and expense entries, for compliance with 11 U.S.C. § 330, Rule 2016-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware, as amended February 1, 2009 ("Local Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued January 30, 1996 ("Guidelines"), and legal precedence established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, and the Third Circuit Court of Appeals.

7.	This report includes exhibits that detail and support the findings discussed below. Each time entry associated with a specific category, as well as a summary of the total hours and fees, are displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, the other tasks within the same entry are also displayed but not underlined.

8.	Stuart Maue's methodology for reviewing fees and expenses includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, Stuart Maue assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications. *See ACLU v. Barnes,* 168 F.3d 423, 429 (11th Cir. 1999). Courts have found this proportional method of analyzing block billing a reasonable solution to the problem created by timekeepers who resort to this practice. The alternative to using proportionalized time is to question the blocked entry in its entirety.

9.	Stuart Maue issued a preliminary report of our findings to Seyfarth, and in turn the firm submitted a written response and discussed the billing issues raised with Stuart Maue. After consideration of Seyfarth's written response and our direct communication with the firm, Stuart Maue prepared this final report to the Court.

### Discussion of Findings

### Reconciliation of Fees and Expenses

10. Stuart Maue recomputed the fees and expenses requested in the Application. The hours billed by each professional or paraprofessional were totaled and multiplied by that individual's hourly rate. The recomputation of fees revealed that the requested amount is $475.45 less than the computed amount. Most of this discrepancy is the result of task hours within one entry not equal to time billed for the entry as a whole. The discrepancy is displayed below:

| Invoice Number | Timekeeper Name | Entry Date | Rate | Hours Billed | Hours Computed | Fees Billed | Fees Computed | Hour Difference | Fee Difference |
|---|---|---|---|---|---|---|---|---|---|
| Undercharges | | | | | | | | | |
| 1657354 | Hix | 10/26/09 | $475.00 | 0.80 | 1.80 | $380.00 | $855.00 | (1.00) | ($475.00) |
| | | | | | | Total Undercharges | | (1.00) | ($475.00) |
| | | | | | | Net Total Discrepancy | | (1.00) | ($475.00) |

Stuart Maue notes that the firm applied a 10% discount to the fees in the Application.[2] The discount totals $11,065.85. Invoice number 1659003 also displayed a credit in the amount of $12.20 which was described as "Unallocated Cash."

The recomputation of expenses revealed no difference between the amount requested and the amount computed. The figures in this report and the accompanying exhibits reflect the fees and expenses computed by Stuart Maue.

### Review of Fees

11. **Firm Staffing.** The Guidelines in Section II.A.3 state that fee applications should identify the "names and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than under title 11." The Application provided the names, positions, and hourly rates of the Seyfarth timekeepers who billed to this matter. The matter was staffed with

---

[2] Stuart Maue will factor the discount applied by the firm into any recommendation for a fee reduction made in the final report to the Court.

13 professionals and paraprofessionals, consisting of 8 partners, 4 associates, and 1 paralegal. A summary of hours and fees billed by each timekeeper is displayed in Exhibit A.

The firm billed a total of 247.40 hours with associated fees of $111,133.50[3] before applying the 10% discount. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Partner | 80.30 | 32% | $47,487.00 | 43% |
| Associate | 167.00 | 68% | 63,619.00 | 57% |
| Paralegal | 0.10 | * | 27.50 | * |
| TOTAL | 247.40 | 100% | $111,133.50 | 100% |

* Less than 1%

The blended hourly rate for the Seyfarth professionals is $449.28 and the blended hourly rate for professionals and paraprofessionals is $449.21.

12. **Hourly Rate Increases.** Seyfarth did not increase the hourly rates of any timekeeper during the month of October, 2009.

13. **Transient Timekeepers.** The activities of timekeepers whose participation appears to be limited and sporadic become questionable if the value of their involvement and necessity of their contribution is unclear. Stuart Maue recognizes that some professionals have specialized knowledge or expertise and may be called upon to provide services to the case on a limited basis; however, it appears that some of the timekeepers had minimal involvement in the case and billed for activities that could have been performed by other timekeepers or timekeepers billing at a lower rate. Stuart Maue requested that Seyfarth provide additional information regarding the role of the professional timekeepers identified as potentially transient billers. The billing entries of the timekeepers, totaling 7.10 hours and $3,639.50 in associated fees, were displayed in Exhibit B to the preliminary report.

---

[3] This amount reflects the fees computed by Stuart Maue, and does not include the 10% discount applied by the firm.

-5-

In response, Seyfarth provided additional information regarding the timekeepers in question. Given the firm's explanation, Stuart Maue makes no recommendation for a fee reduction resulting from potentially transient billers. Exhibit B is omitted from this report.

14. **Complete and Detailed Task Descriptions.** Local Rule 2016-2 (d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable, and necessary." The rules further provide that fee applications shall include complete and detailed activity descriptions and that each activity description shall include the nature and subject matter of the activity. Section II.D.5 of the Guidelines states that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." With minimal exceptions, the Seyfarth billing narratives were sufficiently detailed.

15. **Block Billing.** The Guidelines provide that "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." (Section II.D.5). In three instances Seyfarth block billed activity descriptions into one billing entry with a single time increment. The block billed entries were displayed in Exhibit C to the preliminary report and total 5.10 hours with $3,309.50 in associated fees. The entries were identified to allow review by the firm so that corrective action may be taken to ensure that future fee applications do not include block billed entries. As Stuart Maue makes no recommendation for a fee reduction due to block billing, Exhibit C is omitted from this report.

16. **Conferences, Hearings, and Other Events.** Local Rule 2016-2 (d)(ix) provides that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role," and Section II.D.5 of the Guidelines states that "if more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." While it may be appropriate to have multiple

attendees at some conferences, hearings or other events, the attendance of multiple professionals should be justified. *See In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 856 (3rd Cir. 1994).

        a.    **Nonfirm Conferences, Hearings, and Events.** Stuart Maue did not identify any nonfirm conferences, hearings, or other events attended by multiple timekeepers.

        b.    **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. Stuart Maue did not identify any billing entries in the Application describing intraoffice conferences.

    17.    **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. Stuart Maue did not identify any entries describing administrative activities.

    18.    **Clerical Activities.** Clerical activities are tasks that do not require legal acumen and may be effectively performed by administrative assistants, secretaries, or support personnel. Stuart Maue did not identify any entries in the Application describing clerical activities.

    19.    **Travel.** Local Rule 2016-2 (d)(viii) provides that travel time "may be billed at no more than 50% of regular hourly rates." Stuart Maue identified no billing entries that describe travel activities.

    20.    **Seyfarth Retention/Compensation.** Stuart Maue identified no billing entries relating to the retention and application for compensation of Seyfarth.

### Review of Expenses

    21.    **Complete and Detailed Itemization of Expenses.** The Guidelines in Section II.E.3 provide that factors relevant to a determination that the expense is proper include "Whether applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (e.g., type of travel, type of fare, rate, destination), method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (e.g., long distance telephone, copy costs, messengers, computer research, airline

travel, etc.) and by the month incurred." Seyfarth provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

22. **Photocopies.** Local Rule 2016-2 (e)(iii) provides that copying charges shall not exceed $0.10 per page. The firm requested reimbursement of $893.80 for duplication charges and the Application did not state the per-page rate for photocopies. Stuart Maue requested that Seyfarth provide additional information regarding the per-page rate for the photocopy charges.

In response to the preliminary report, Seyfarth stated that while certain client matters were set up for $0.10 per page copying, others were not. The firm rectified the issue, and agreed to a voluntary expense reduction in the amount of $411.20 resulting from copy charges in excess of the Local Rules rate.

23. **Computer Assisted Legal Research.** Local Rule 2016-2 (e)(iii) states that computer assisted legal research charges "shall not be more than the actual cost." The firm billed $147.78 for computer-assisted legal research and the Application did not state that this research was billed at actual cost. Stuart Maue requested that Seyfarth provide additional information regarding the costs associated with the firm's computer assisted research and how the costs were determined.

In response to the preliminary report, Seyfarth provided, in writing, the firm's method of charging for online research. The document explained the discounts obtained by Seyfarth and how the benefits of such discounts were passed to the client in the entirety. Given the additional information provided by the firm, Stuart Maue makes no recommendation for an expense reduction resulting from computer assisted legal research.

24. **Facsimile.** Seyfarth requested reimbursement for facsimile charges totaling $24.56. The Application did not state the per-page rate. Local Rule 2016-2 (e)(iii) provides that outgoing facsimile transmission charges "shall not exceed $1.00 per page, with no charge for incoming

facsimiles." Stuart Maue requested that Seyfarth provide additional information regarding the facsimile charges and how the costs were determined.

In response to the preliminary report, Seyfarth confirmed that all future outgoing facsimile charges will be billed at $1.00 per page. The firm agreed to a voluntary expense reduction in the amount of $6.00 resulting from facsimile charges in excess of the rate established by the Local Rules.

### Conclusion

Stuart Maue submits this final report regarding the Application and the fees and expenses discussed above. Stuart Maue recommends the approval of fees in the amount of $99,580.00 and reimbursement of expenses in the amount of $1,098.95 ($1,516.15 minus $417.20) for the period from October 1, 2009, through October 31, 2009. A summary of our findings is attached as Appendix A.

Respectfully submitted,

**STUART MAUE**

By: /s/ John L. Decker

John L. Decker, Esq.
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:    (314) 291-3030
Facsimile:     (314) 291-6546
tribunebkr@smmj.com

**Fee Examiner**

## APPENDIX A

## SEYFARTH SHAW LLP

### SUMMARY OF FINDINGS

#### Ordinary Course of Business (October 1, 2009 through October 31, 2009)

**A.  Amounts Requested and Computed**

| | | |
|---|---|---|
| Fees Requested | $99,580.00 | |
| Expenses Requested | 1,516.15 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $101,096.15 |
| Fees Computed | $111,133.50 | |
| Expenses Computed | 1,516.15 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $112,649.65 |
| Discount/Credit | ($11,078.05) | |
| Discrepancy in Fees | (475.45) | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($11,553.50) |

**B.  Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---|---|---|
| Fees Requested | $99,580.00 | | |
| RECOMMENDED FEE ALLOWANCE | | | $99,580.00 |
| Expenses Requested | $1,516.15 | | |
| *Agreed Reduction for Photocopies* | | *($411.20)* | |
| *Agreed Reduction for Facsimile* | | *(6.00)* | |
| Subtotal | | ($417.20) | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 1,098.95 |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $100,678.95 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 10th day of March, 2010.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
1000 N. West Street, Suite 1200
Wilmington, DE  19801
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Jeremy P. Sherman, Esq.
Partner
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603-5577

_____
John L. Decker, Esq.

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
**Seyfarth Shaw LLP**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JDME | Meer, Jon D. | PARTNER | $570.00 | $570.00 | 51.50 | $29,355.00 |
| JPSH | Sherman, Jeremy P. | PARTNER | $685.00 | $685.00 | 15.00 | $10,275.00 |
| KEMI | Michaels, Kristin E. | PARTNER | $570.00 | $570.00 | 8.60 | $4,902.00 |
| TLHI | Hix, Timothy L. | PARTNER | $475.00 | $475.00 | 1.80 | $855.00 |
| GPAU | Pauling, Gerald | PARTNER | $560.00 | $560.00 | 1.50 | $840.00 |
| COLS | Olson, Camille | PARTNER | $680.00 | $680.00 | 0.80 | $544.00 |
| MDWH | Whitehead, Mitchel D. | PARTNER | $640.00 | $640.00 | 0.80 | $512.00 |
| EWBE | Bergmann, Edward W. | PARTNER | $680.00 | $680.00 | 0.30 | $204.00 |
| | No. of Billers for Position: 8 | Blended Rate for Position: | $591.37 | | 80.30 | $47,487.00 |
| | | | | % of Total: | 32.46% | 42.73% |
| DHYU | Hyun, Dennis | ASSOCIATE | $400.00 | $400.00 | 122.20 | $48,880.00 |
| SYAN | Yang, Simon | ASSOCIATE | $285.00 | $285.00 | 25.60 | $7,296.00 |
| NBRI | Riesco, Natascha B. | ASSOCIATE | $390.00 | $390.00 | 17.40 | $6,786.00 |
| BLSP | Spurlock, Brandon L. | ASSOCIATE | $365.00 | $365.00 | 1.80 | $657.00 |
| | No. of Billers for Position: 4 | Blended Rate for Position: | $380.95 | | 167.00 | $63,619.00 |
| | | | | % of Total: | 67.50% | 57.25% |
| MHAL | Halperin, Malerie | PARALEGAL | $275.00 | $275.00 | 0.10 | $27.50 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $275.00 | | 0.10 | $27.50 |
| | | | | % of Total: | 0.04% | 0.02% |
| | Total No. of Billers: 13 | Blended Rate for Report: | $449.21 | | 247.40 | $111,133.50 |