## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE TRIBUNE COMPANY, <u>et. al.</u>, | Case No. 08-13141 |
| Debtors. | *Jointly Administered* |

### MOTION OF MICROSOFT FOR ALLOWANCE OF
### ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(b)(1)(A)

Microsoft Corporation, a Washington corporation, and its wholly owned subsidiary, Microsoft Licensing, GP (collectively "Microsoft"), respectfully move for an order allowing an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A).

### JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §1409(a).

2.     The statutory predicates for the requested relief are 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).

### BACKGROUND

3.     On December 8, 2008, (the "Petition Date"), debtor Tribune Company and numerous affiliates (collectively the "Debtor") filed their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4839-9742-6437.01
031210/1332

4.    Microsoft provided licenses and Software Assurance for copyrighted Microsoft software and products used by Debtor after the Petition Date to operate its business and the Debtor has not paid for them.

5.    As explained below, Debtor owes Microsoft for licenses used and services provided after the Petition Date in the sum of $1,525,865.24, as of March 12, 2010, and $11,561.69 per day for every day thereafter ("Administrative Expense Claim").

## RELIEF REQUESTED

6.    Microsoft requests allowance of its Administrative Expense Claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code for amounts owed to it for licenses and services provided to Debtor post-petition.

## BASIS FOR RELIEF

7.    Pursuant to Section 503(b)(1)(A), "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . . ." Subsection (i) of Section 503(b)(1)(A) specifies that such actual, necessary costs and expenses of preserving the estate include "wages, salaries, and commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A).

8.    This Court has applied a two-prong test in determining whether a creditor has an administrative claim: "first, [the claimant] must show either that the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity). Second, it must show that the transaction resulted in a direct

4839-9742-6437.01
031210/1332

benefit to the debtor-in-possession." <u>In re Harnischfeger Indus.</u>, 293 B.R. 650, 659

(Bank. D. Del. 2003).

9.      Microsoft and debtor Tribune Company are parties to the following agreements

(collectively, the "License Agreement"):

| Agreement Name | Agreement Number |
|---|---|
| Business Agreement | U27604486 |
| Master Enterprise Agreement | 01E69849 |
| Enrollment Agreement | 9042101 |

10.     The License Agreement is the contractual vehicle by which Debtor obtained

licenses for certain Microsoft copyrighted software and products used on thousands of

computers across their enterprise.

11.     As set forth in the Enrollment Agreement, the three-year enrollment term of the

License Agreement runs from November 1, 2008 through October 31, 2011 (the

"Enrollment Term").

12.     During the Enrollment Term, Debtor received new licenses to certain software.

Debtors also receive Software Assurance, a subscription for software upgrades,

pertaining to software licensed through previous license enrollment terms.

13.     Under the License Agreement, an invoice was issued to the Debtor for its first

annual installment in the amount of $3,814,723.11 covering the license period of

November 1, 2008 through October 31, 2009.

14.     On February 26, 2009, the Debtor paid $3,447,992.98 against that first annual

installment owing under the License Agreements.  The Debtor failed to pay

approximately $400,000.00 of the first installment.

- 3 -

15.    The Debtor has yet to assume or reject the License Agreements, which are executory contracts under the Bankruptcy Code.  Yet, the Debtor continues to use the licensed software and related services, post petition, without paying for them.

16.    Attached as Exhibit A is itemized Invoice No. 9658682409 stating that $4,161,068.24 was due as of December 1, 2009, for the license period from November 2009 through October 2010.  This was the second annual installment due under Standard Enterprise Enrollment 9042101, which covers enterprise servers, license fees for software, and Software Assurance Debtor has used on computers throughout its enterprise to operate its business post-petition.

17.    Attached as Exhibit B is itemized Invoice No. 9658979734 in the amount of $1,928.37 became due on February 24, 2010, for the period from February 2010 to October 2011.

18.    Attached as Exhibit C is itemized Invoice No. 9659060177, in the amount of $115,689.04 due March 18, 2010, for the period from November 2009 to October 2011.

19.    The invoices attached as Exhibit B and Exhibit C cover additional products and services Debtor has used throughout its enterprise to operate its business post-petition.

20.    Each invoice covers post-petition itemized licensed products and Software Assurance used by the Debtor from the Petition Date through present.  Microsoft believes that the Debtor has used and benefited from the licensed products and Software Assurance throughout its Chapter 11 case and will continue to use and benefit from them going forward.

21.    The Third Circuit, in a non-bankruptcy context, has been quite protective of operating system and software copyrights.  In <u>Apple Computer, Inc., v. Franklin</u>

- 4 -

Computer Corp., 714 F.2d 1240 (3rd Cir. 1983), on allegations of copyright infringement the court noted that the "costs of developing computer programs is far greater than the cost of their duplication . . . the jeopardy to Apple's investment and competitive position caused by Franklin's wholesale copying of many of its key operating programs would satisfy the requirement of irreparable harm needed to support a preliminary injunction." Apple, 714 F.2d at 1254 (citing Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 620 (7th Cir.1982) cert. denied 459 U.S. 880, 103 S. Ct. 176 (1982); Custom Decor, Inc. v. Nautical Crafts Inc., 502 F. Supp. 154, 157 (E.D. Tenn. 1980); Herbert Rosenthal Jewelry Corp. v. Zale Corp., 323 F. Supp. 1234, 1238 (S.D.N.Y. 1971)). Put simply, using and copying software programs and operating systems in the absence of a license results in irreparable harm.

22.    As long as the Debtor is using or benefiting post-petition from use of Microsoft's copyrighted software and products, the Debtor is obligated to pay for the use if such use is an actual, necessary cost and expense of preserving the estate. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); In re Continental Airlines, Inc., 146 B.R. 520, 527 (Bankr. D. Del. 1992). The licensed software runs on Debtor's desktops, including software products, applications and servers, allowing Debtor's employees to communicate with one another. These licenses are actual and necessary costs of preserving the estate, and, therefore, the Debtor should pay Microsoft for its post-petition use of these licenses. Expenses that "inure to the benefit of the estate deserve payment ahead of other claimants." In re Continental Airlines, 146 B.R. 520, 526 (Bankr. D. Del. 1992).

- 5 -

## Administrative Expense for Products Itemized on Invoice A

23.    The per diem amount due for post-petition licensure of products and software and for Software Assurance under Invoice A is $11,400.19 (calculated from $4,161,068.24, the annual total value of products licensed from November 2009 through October 2010, divided by 365 days in a year).  Running from November 1, 2009, which is the start date of the second year of the three year installment, up through March 12, 2010, the administrative expense applicable to Invoice A is $1,504,825.08, subject to increase thereafter by the per diem rate of $11,400.19 for each day the Debtor continues to use Microsoft's software and products, until paid for in full.

## Administrative Expense for Products Itemized on Invoice B

24.    Invoice B itemizes additional products and/or services purchased on January 25, 2010, at a cost of $1,928.37 for the period of February 2010 through October 2011. The per diem value of products itemized on Invoice B is therefore $3.02 per diem from the first day of the coverage period ($1,928.37 divided by 638 days).  As of March 12, 2010, the administrative expense applicable to Invoice B is therefore $120.80 ($3.02 multiplied by 40 days), subject to increase thereafter by the per diem rate of $3.02 for each day the Debtor continues to use Microsoft's software and products, until paid for in full.

## Administrative Expense for Products Itemized on Invoice C

25.    Invoice C itemizes additional servers purchased on February 16, 2010, at a cost of $115,689.04 for the period of November 2009 through October 2011.  The per diem value of products itemized on Invoice C is therefore $158.48 per diem from the first day

- 6 -

of the coverage period ($115,389.04 divided by 730 days). As of March 12, 2010, the

administrative expense applicable to Invoice is therefore $20,919.36 ($158.48

multiplied by 132 days), subject to increase thereafter by the per diem rate of $158.48

for each day the Debtor continues to use Microsoft's software and products, until paid

for in full.

26.    Accordingly, the sum of the applicable administrative expenses accrued under

Invoice A, Invoice B, and Invoice C is $1,525,865.24, subject to increase thereafter by a

combined per diem rate of $11,561.69 for each day the Debtor continues to use

Microsoft's licensed servers, software and Software Assurance.

WHEREFORE, Microsoft requests entry of an Order:

(a) allowing an Administrative Expense Claim in the amount of $1,525,865.24 as

of March 12, 2010, subject to increase thereafter by $11,561.69 per diem until the

Debtor ceases using Microsoft software and Software Assurance, or until the licenses

have been paid in full; and

(b) directing the Debtor to pay the allowed administrative claim for the amount

owing up through the date of the order; and,

(c) granting such other and further relief as the Court deems just and proper.

Dated this 12th day of March, 2010.         RIDDELL WILLIAMS P.S.

By_____
    Maria Ann Milano, WSBA #29499
    Riddell Williams, P.S.
    1001 4th Avenue, Suite 4500
    Seattle, WA 98154
    Tel: (206) 624-3600
    Fax: (206) 389-1708
Attorneys for Microsoft Corporation and
Microsoft Licensing, GP

- 7 -

## CERTIFICATE OF SERVICE

Courtney Tracy, declares:

1.      I am an employee of Riddell Williams P.S. which represents Microsoft Corporation and Microsoft Licensing, GP.  I am a citizen of the United States, over the age of 18, and competent to make this Declaration.

2.      On March 12, 2010, caused to be served via First Class, U.S. Mail to the parties listed below and by Electronic Notification via CM/ECF upon all parties in this case:

**Bryan Krakauer**
Sidley, Austin, Brown & Wood LLP
One S. Dearborn Street
Chicago, IL 60603

**Carl D. Neff**
Ciardi Ciardi & Astin
919 N. Market Street
Suite 700
Wilmington, DE 19801

**J. Kate Stickles**
Cole, Schotz, Meisel, Forman & Leonard,
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

**James F. Conlan**
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

**Michael A. Henry**
Gross, McGinley, Labarre & Eaton, LLP
33 S. 7th Street
P. O. Box 4060
Allentown, PA 18105-4060

**Norman L. Pernick**
Cole, Schotz, Meisel, Forman & Leonard,
500 Delaware Avenue,Suite 1410
Wilmington, DE 19801

**Patrick Theodore Garvey**
Johnson & Bell, Ltd
33 W. Monroe, Suite 2700
Chicago, IL 60603

**Patrick J. Reilley**
Cole, Schotz, Meisel, Forman & Leonard,
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

**Landis Rath & Cobb LLP**
919 Market Street
Suite 1800
Wilmington, DE 19801

**Cynthia Moh Baldwin**
Edwards Angell Palmer & Dodge LLP
919 North Market Street
Suite 1500
Wilmington, DE 19801

4839-9742-6437.01
031210/1332

**Thomas G. Macauley**
Zuckerman and Spaeder LLP
919 Market Street
Suite 990
P.O. Box 1028
Wilmington, DE 19899

*U.S. Trustee*
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 12th day of March, 2010, at Seattle, Washington.

Courtney Tracy
Riddell Williams P.S.
1001 – 4th Avenue, Suite 4500
Seattle, WA  98154
Phone: (206) 624-3600
ctracy@riddellwilliams.com

4839-9742-6437.01
031210/1332