## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## MOTION OF THE DEBTORS FOR AN ORDER (I) DETERMINING THAT WILMINGTON TRUST COMPANY HAS VIOLATED AUTOMATIC STAY, (II) REQUIRING WILMINGTON TRUST COMPANY TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT, AND (III) HALTING ALL PROCEEDINGS WITH RESPECT TO THE COMPLAINT

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel,

hereby move this Court (the "Motion") for entry of an order (i) determining that Wilmington

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Trust Company ("Wilmington Trust") has violated the automatic stay, (ii) requiring Wilmington

Trust to show cause why it should not be held in contempt for knowingly violating the automatic

stay pursuant to section 362(a)(3) of title 11 of the United States Code (the "Bankruptcy Code"),

and (iii) halting all proceedings with respect to the Complaint (as defined below).  This Motion

arises out of Wilmington Trust's filing on March 3, 2010, without leave of Court, of its

Complaint for Equitable Subordination and Disallowance of Claims, Damages, and Constructive

Trust (Adv. Proc. No. 10-50732; D.I. 1) (the "Complaint").  In support of the Motion, the

Debtors respectfully state the following:

## PRELIMINARY STATEMENT

1.      The Complaint is an obvious and willful violation of the automatic stay by

purporting to assert causes of action belonging to the Debtors' estates.  Wilmington Trust's

action also flouts the Court's recent explicit directive that the parties should, for the time being,

be permitted to continue their efforts to negotiate a consensual plan of reorganization without the

distractions attendant to litigation, and is a transparent effort to thwart those negotiations.

Indeed, only a few weeks ago the Official Committee of Unsecured Creditors (the "UCC")

sought leave to file a complaint (in which Wilmington Trust sought to intervene and join as a co-

plaintiff),[2] and Wilmington Trust sought appointment of an examiner,[3] both based on factual

allegations and legal arguments virtually identical to those in the Complaint.  The Court declined

to grant any of the requested relief given the testimony of the Debtors' witness, David Kurtz,

about the Debtors' ongoing and substantial efforts to achieve a negotiated resolution of the

---

[2]  *See* Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing, and Authority to Prosecute Causes of Action on Behalf of the Debtors' Estates (D.I. 3279) (the "Standing Motion"); Wilmington Trust's Motion to File Under Seal Unredacted Response to Committee's Standing Motion and Cross-Motion to Intervene (D.I. 3364).

[3]  *See* Motion of Wilmington Trust for Appointment of Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (D.I. 3062) (the "Examiner Motion").

2

various potential claims and causes of action through a consensual plan. As the Court made abundantly clear, in light of this ongoing process, there would be "great advantage" to avoiding the "collateral chatter" created by the proposed litigation. (Tr. 22:11-18.) Further, the Debtors – responding to Wilmington Trust's assertion that it had been excluded from the settlement negotiations – reached out to Wilmington Trust and met with Wilmington Trust's representatives on March 2, 2010. Two days later – without any forewarning – Wilmington Trust reversed course and filed the Complaint. Wilmington Trust's actions can only be understood as a renewed effort to upend the negotiation process by means of litigation that plainly seeks to usurp causes of action belonging to the Debtors' estates. This Court should not countenance such gamesmanship.

2.      The Complaint makes wide-ranging allegations respecting the 2007 Leveraged ESOP Transactions involving Tribune Company ("Tribune") and the actions taken by certain of Tribune's lenders in connection therewith.[4] The Complaint then goes on to allege five purported causes of action, only two of which are principally relevant to this Motion: Count One purports to be a count for equitable subordination (Compl. ¶¶ 145-169), but is in fact nothing more than a thinly-veiled fraudulent conveyance claim. Count Two appears to assert – albeit indirectly and incompletely – that unspecified transfers received by the defendants prior to the petition date should be disallowed in the claims process on an "unclean hands" theory.[5] (Compl ¶¶ 172-73.) As discussed below, these causes of action are unmistakably property of Tribune's estate and, without Court approval, may only be asserted by Tribune as the applicable debtor in possession.

---

[4] Many of the purportedly factual allegations made by Wilmington Trust in the Complaint are based upon highly confidential materials that have been made available to Wilmington Trust at its request pursuant to a confidentiality agreement. Wilmington Trust filed a redacted version of the Complaint with the Bankruptcy Court on March 3, 2010, and contemporaneously filed a motion to file under seal an unredacted version of the Complaint. (D.I. 3683.)

[5] While it is apparent that Counts One and Two of the Complaint violate the automatic stay, the Debtors also object to Count Five of the Complaint, which purportedly seeks to impose a constructive trust over "obligations, notes, and

Indeed, this is clear from the Complaint, which alleges injury that affects unsecured creditors and equity holders generally, rather than any particularized injury to the PHONES (as defined below). Further, the fact that the UCC has sought, by its motion, authority to bring virtually identical claims only serves to confirm that Wilmington Trust's Complaint violates the automatic stay.

3.      Simply put, the Complaint is an attempt by Wilmington Trust knowingly to evade the requirements of Court approval for the purposes of disrupting the Debtors' efforts to arrive at a consensual plan and consume this Court's and the Debtors' resources on duplicative, unnecessary matters. The Court should find that Counts One and Two of the Complaint violate the automatic stay, and require Wilmington Trust to demonstrate why it should not be held in contempt of this Court.

## BACKGROUND

4.      On December 8, 2008 (the "Petition Date"), each of the Debtors (other than Tribune CNLBC, LLC)[6] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Upon such filing, the automatic stay set forth in section 362 of the Bankruptcy Code went into effect. *See* 3-362 *Collier on Bankruptcy* ¶ 362.02 (15th ed. rev'd 2010) ("The stay is effective automatically and immediately upon the filing of a bankruptcy petition . . . .").

5.      Wilmington Trust is the Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029 (the "PHONES"), which Tribune issued in April 1999. The PHONES are unsecured obligations of Tribune that are contractually subordinated to other indebtedness of Tribune whether or not that indebtedness is secured. Further, the PHONES are

---

guarantees from Tribune and its subsidiaries", as violating the stay to the extent that Count seeks to put control over property of the estate in the hands of any party other than the Debtors.

not guaranteed by any of Tribune's affiliates, nor do the holders of the PHONES have any claims against any of Tribune's affiliates. As of the Petition Date, there was approximately $759 million in face amount of the PHONES outstanding, with more than $400 million in face amount of the PHONES having been redeemed prior to the Petition Date.

6.    On March 4, 2010, Wilmington Trust filed the Complaint, naming as defendants JP Morgan Chase Bank, N.A., J.P. Morgan Securities Inc. (together, "JPMorgan"), Merrill Lynch Capital Corporation, Merrill, Lynch, Pierce, Fenner & Smith Inc. (together, "Merrill"), Citicorp North America, Inc., Citibank, N.A., Citigroup Global Markets, Inc. (together, "Citi"), Bank of America, N.A., Banc of America Securities, LLC (together, "B of A"), Barclays Bank PLC ("Barclays") and Morgan Stanley & Co. Inc. ("Morgan Stanley") (collectively, the "Defendants"). The Complaint alleges five causes of action, and seeks equitable subordination of all Defendants' claims and recovery of certain liens by Tribune's estate (Count One); disallowance of Defendants' claims against the Debtors (Count Two); breach of fiduciary duty against Citi (Count Three); aiding and abetting of that fiduciary breach against JP Morgan, Merrill Lynch, Barclays, and B of A (Count Four); and imposition of a constructive trust on unjust enrichment grounds (Count Five).[7] This Motion is addressed to the violations of the automatic stay presented by Counts One and Two of the Complaint.[8]

---

[6]  Chicago National League Ball Club, LLC n/k/a Tribune CNLBC, LLC filed its petition under chapter 11 on October 12, 2009 and is jointly administered with the other Debtors' chapter 11 cases by order entered on October 14, 2009.

[7]  The first four counts in the Complaint are listed under subheadings entitled "Count One," "Count Two," "Court Three," and "Count Four," respectively. The fifth count is listed under a subheading entitled "Count IV." For clarity, the Debtors will refer to the final count in the Complaint as "Count Five."

[8]  As noted above the remaining Counts sound in state law and are thus not part of this Court's core jurisdiction. *See supra* note 5.

**ARGUMENT**

**A.  Wilmington Trust's Claims for Equitable Subordination And Disallowance Are Actually a Claim of Fraudulent Transfer, Which is Property of the Estate.**

7.      Under section 510(c) of the Bankruptcy Code, "the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . ; or (2) order that any lien securing such a subordinated claim be transferred to the estate." 11 U.S.C. § 510(c) (2010).  Section 548 of the Bankruptcy Code provides, 11 U.S.C. § 548(a)(1),

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years of the filing of the petition, if the debtor voluntarily or involuntarily
> (A) made such transfers or incurred such obligations with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)
>   (I)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer;
>   (II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>   (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

8.      While it is labeled as a claim for "equitable subordination," Count One of the Complaint is unmistakably a fraudulent transfer claim under section 548(a).  Wilmington Trust alleges that less than two years prior to the Debtors' chapter 11 filing, the Debtors "transferred an interest of the Debtors in property to Defendants" (Compl. ¶¶ 154-55), tracking the requirement of section 548(a)(1), and then – using the precise language of section 548(a)(1)(A) -

- alleges the Defendants' conduct was "incurred, made or effectuated with the *actual intent to hinder, delay or defraud* the PHONES." (Compl. ¶ 146 (emphasis added).)

9.      Wilmington Trust also alleges that the Leveraged ESOP Transactions were constructive fraudulent transfers.  Count One states, using the language of section 548(a)(1)(B)(i), that the "Debtors *received less than a reasonably equivalent value*" in the Leveraged ESOP Transactions. (Compl. ¶ 147 (emphasis added); *see also* Compl. ¶ 151 ("The Debtors did not receive reasonably equivalent value in exchange for incurring the LBO Obligations").)  Wilmington Trust further alleges not just that one, but all four of the alternative criteria in section 548(a)(1)(B)(ii) are satisfied.  The Debtors are alleged to (i) have been "rendered insolvent" by the Leveraged ESOP Transactions (Compl. ¶ 147; *see also* Compl. ¶ 152 ("the Debtors were insolvent, or became insolvent as a result of incurring such LBO Obligations"); and (ii) as a result of the Leveraged ESOP Transactions, have been "engaged in a business or transaction or were about to engage in a business or transaction for which the property remaining with the Debtors was unreasonably small capital." (Compl. ¶ 147.) Additionally, Wilmington Trust asserts that "defendants were aware prior to the closing of [Step One] that the Debtors would be rendered insolvent by the LBO" (Compl. ¶ 153); and Wilmington Trust further alleges that certain of the Defendants were insiders of the Debtors before the closing, and during the negotiation, of the Leveraged ESOP Transactions.  (Compl. ¶ 166 (alleging certain Defendants "had access to insider information, and were in a position to and did exercise influence over Tribune's Board").)

10.      All of this precisely tracks the language of section 548 of the Bankruptcy Code. As such, it is beyond serious dispute that the cause of action alleged in Count One is property of the estate under section 541 of the Bankruptcy Code. *See Elway Co., LLP v. Miller (In re Elrod*

*Holdings Corp.)*, 392 B.R. 110, 114 (Bankr. D. Del. 2008) ("The estate is made up of, *inter alia*, all legal or equitable interests of the debtor in property as of the commencement of the case . . . includ[ing] causes of action existing at the time the bankruptcy action commences.") (internal quotation marks and citations omitted). As *Collier* makes clear, "[o]nly the trustee is expressly given the avoiding powers under section 548" of the Bankruptcy Code. 5-548 *Collier on Bankruptcy* ¶ 548.06[1].

11.     Count Two of the Complaint likewise violates the automatic stay by attempting to object to all the Defendants' claims (without identifying them) pursuant to section 502(a) of the Bankruptcy Code on the grounds that (i) Defendants received avoidable transfers of property that may be recovered by the Debtors' estates and (ii) Defendants have "unclean hands," from which Wilmington Trust concludes that Defendants' claims can be equitably disallowed. (Compl. ¶¶ 170-173.) While the particular bases for this Count are unspecified, its placement following the equitable subordination claim and its assertion that Defendants' conduct was "unclean" can only lead to only one conclusion: it too is a disguised fraudulent conveyance claim.

12.     The Court may, of course, "permit an official committee or even an individual creditor to bring a fraudulent transfer action." However, a "prerequisite to a party other than the trustee or debtor in possession commencing an avoidance action is prior permission from the court." *Id.* at ¶ 548.06[2]. Wilmington Trust has not sought such permission. This is likely because the UCC – of which Wilmington Trust is a member - already has pending before the Bankruptcy Court a complaint asserting fraudulent conveyance claims against many of the same parties, and hence Wilmington Trust's complaint would be redundant in whole or part. (Standing Motion, D.I. 3279.) *See Int'l Union v. Ludwig Honold Mfg. Co.*, 30 B.R. 790 (Bankr. E.D. Pa. 1983) (holding a general creditor lacked standing to seek equitable subordination of

another creditor's claim where the trustee filed a complaint requesting relief similar to that which the general creditor was later seeking).

13.     The law is clear, however, that Wilmington Trust cannot evade its obligations under the Bankruptcy Code by trying to transform a fraudulent transfer claim (that unquestionably belongs to the Debtors' estates) into a request for equitable subordination or disallowance. *See, e.g., United Jersey Bank v. Morgan Guar. Trust Co. of N.Y.*, 135 B.R. 917, 920 (Bankr. S.D. Fla. 1992) (granting secured creditor's motion to dismiss, for lack of standing, adversary proceeding brought by unsecured creditor asserting avoidance actions, and stating "it is clear that [the unsecured creditor] is attempting to avoid the 'standing' issue by disguising its . . . avoidance action as an objection to claims"); *Algonquin Power Income Fund v. Ridgewood Heights, Inc. (In re Franklin Indus. Complex, Inc.)*, No. 01-67459, 2007 WL 2509709, at *10 (Bankr. N.D.N.Y. Aug. 30 2007) (while "parties in interest objecting to claims under Code § 502 or subordination actions under Code § 510(c) are not required to obtain permission from the court before commencing the action . . . prior court approval *is* required for a creditor to assert an *avoidance action*) (emphasis in original; citation omitted).

14.     Further, even if the Court were to conclude that Wilmington Trust's equitable subordination and disallowance claims were not disguised fraudulent conveyance claims, that would not excuse its decision not to seek Court approval.  As explained below (*see infra* ¶¶ 16-19), the injury alleged  effects not only the PHONES but other creditors and equity holders and, as a consequence, constitutes property of the Debtors' estates.  Indeed, the fact that the Committee included a virtually identical equitable subordination claim in its proposed complaint and then sought the Court's permission to bring that claim only serves to confirm that this claim is property of the Debtors' estates.

15.     Under these circumstances, Wilmington Trust's efforts to seize a cause of action belonging to the estate for its own purposes clearly constitute a willful violation of the automatic stay. The Bankruptcy Code prevents creditors from taking "any act to obtain possession of property of the estate from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (2010). "A willful violation of the stay is punishable by contempt of court." 3-362 *Collier on Bankruptcy* ¶ 362.11[2]. Given Wilmington Trust's transparent attempt to assert for its own benefit causes of action belonging to Tribune's estate, and the fact that it has done so in a manner that was clearly designed to evade the requirements of Court authorization, the Court should find that Wilmington Trust has violated section 362(a)(3) of the Bankruptcy Code and require Wilmington Trust to demonstrate why it should not be found in contempt of the Court.[9]

**B.    Wilmington Trust Does Not and Cannot Assert a Particularized Injury.**

16.     That Wilmington Trust has violated the automatic stay is also clear from the fact that it has not alleged and cannot allege particularized injury to the holders of the PHONES. To the contrary, the Complaint makes clear on its face that the injury purportedly suffered by the holders of the PHONES, even if accepted at face value, is a general injury to unsecured creditors and equity holders.

17.     Courts in the Third Circuit and elsewhere have held that to assert a claim that is otherwise property of the estate (and thus the province of the trustee or debtor in possession), a creditor must allege a particularized harm. *See Elway*, 392 B.R. at 115 (holding "a secured creditor has standing to seek the equitable subordination of another secured creditor's claim to

---

[9] As Count One and Two of the Complaint were filed in violation of the automatic stay, those counts of the Complaint, at a minimum, are void as a matter of law under Third Circuit precedent. *See Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 261 (3d Cir. 2006) (actions that violate the automatic stay are void *ab initio*). The

the extent that it seeks relief for a particularized injury, which differs from the injury incurred by

all creditors"); *see also Official Comm. of Unsecured Creditors of AppliedTheory Corp. v.*

*Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82 (2d Cir. 2007) (holding creditors

must demonstrate particularized harm to have standing to seek equitable subordination of another

creditor's claim); *Bunch v. J.M. Capital Finance, Ltd. (In re Hoffinger Indus., Inc.)*, 327 B.R.

389 (Bankr. E.D. Ark. 2005) (same); *Variable-Parameter Fixture Dev. Corp. v. Comerica Bank-*

*Calif. (In re Morpheus Lights, Inc.)*, 228 B.R. 449 (Bankr. N.D. Calif. 1998) (same).

      18.    Wilmington Trust has not alleged a particularized harm to the PHONES. Rather,

the Complaint only alleges injury purportedly experienced by the creditors of the Debtors'

estates generally. The Leveraged ESOP Transactions allegedly "expanded the size of the first-

priority debt so that the PHONES *and other pre-LBO debt of Tribune* would not be repaid in the

likely event of the Debtors' subsequent failure and insolvency" (Compl. ¶ 148 (emphasis added))

and allegedly "elevated" the Defendants' debt by "making the LBO Notes [held by the

Defendants] structurally superior to *all other debt of Tribune, including that of the PHONES.*"

(Compl. ¶ 162 (emphasis added).) In addition, it is alleged that "Holdco and Finance were

created" and the "Circular Transaction was intended" "at least in part, to consolidate the priority

of the Notes [held by Defendants] over *all other debt of Tribune, including that of the*

*PHONES.*" (Compl. ¶¶ 163, 164 (emphasis added).) Likewise, it is asserted that "[b]y obtaining

the LBO Guarantees from [Tribune's subsidiary] Guarantors, the defendants were able to ensure

that the first losses from any bankruptcy would fall primarily on the holders of the PHONES *and*

*other Non-Bank Debt of Tribune.*" (Compl. ¶ 165 (emphasis added).) All of these purported

harms are clearly alleged to be common to the holders of "all other debt of Tribune," holders of

---

Debtors seek in the order approving this Motion an affirmance by the Bankruptcy Court that such Counts are, in
fact, a nullity.

all "pre-LBO debt of Tribune," and/or holders of all "other Non-Bank Debt of Tribune."

19.     By alleging an injury that affects Tribune's creditors generally, rather than a particularized harm, Wilmington Trust fails to meet the requirements for maintaining its claim of equitable subordination and fraudulent transfer.  *See Elway*, 392 B.R. at 116 (denying creditor standing because the creditor failed to allege "a particularized injury and has instead likened the injury it has suffered to that of all creditors"); *Morpheus Lights*, 228 B.R. at 449 (unsecured creditor could not bring equitable subordination claim where alleged harm affected all unsecured creditors).  Accordingly, even if Wilmington Trust's claims were properly a claim for equitable subordination and/or disallowance – and they are not – Wilmington Trust's filing of the Complaint would still constitute a violation of the automatic stay.

### C. Wilmington Trust's Stay Violation is Plainly Intended to Disrupt the Debtors' Reorganization Process to the Detriment of all Stakeholders

19.     Wilmington Trust's violations of the automatic stay are particularly egregious given their evident design to damage the Debtors' reorganization process in an attempt to confer parochial benefits on the holders of the PHONES.  Wilmington Trust is well aware that the UCC – of which Wilmington Trust is a member – has a currently-pending motion for standing to file a complaint alleging fraudulent conveyance claims arising out of the Leveraged ESOP Transactions.  (*See* Standing Motion, D.I. 3279, which the Court deferred consideration of at its February 18, 2010 hearing until the March omnibus hearing in the Debtors' cases.)  The conduct of which Wilmington Trust complains in the Complaint is also the subject of the Examiner Motion, which is likewise pending the Court's consideration.  The Complaint thus represents an attempt by Wilmington Trust to raise, once again, demands for relief that are already being considered by the Court.  As such, it will needlessly consume the Court's time and the estate's resources with a duplicative exploration of conduct that this Court is otherwise addressing.

20.    Wilmington Trust's violations of the stay are all the more offensive given its prior efforts to intervene in the UCC's proposed complaint and to seek an examiner, which matters the Court expressly considered and deferred at the February 18, 2010 hearing.  The Court told all parties, including Wilmington Trust's counsel, that there was more benefit at present in pursuing a negotiated consensual plan than in immediate, protracted litigation, noting:

> The parties here are all sophisticated, they're all well represented and they're able for the most part to shed the collateral chatter which occurs as the result of, you know, permission to pursue the filing of [a complaint], but I still think there's great advantage, at least, at this point in connection with the administration of the [chapter] 11 [cases] to avoid the initiation of, well, I'll say more collateral chatter with respect to this issue.

(Tr. 22:11-18.)  Further, at the hearing it was made clear that the Debtors were prepared to meet with and discuss a consensual plan with representatives of the PHONES.  (*See* Tr. 84:20-85:21.)

21.    Wilmington Trust's Complaint, filed 13 days after that hearing, flouts the Court's clear direction.  Consistent with its expressed willingness to meet with representatives of the PHONES, the Debtors, in the week following the hearing, proposed to Wilmington Trust's counsel that a meeting for that purpose be held.  An initial meeting with both counsel for Wilmington Trust and representatives of the PHONES was in fact held in early March. However, rather than allow that process to proceed, Wilmington Trust, without any forewarning, instead elected to file the Complaint in what can only be viewed as a blatant attempt to disrupt the negotiation process through a redundant adversary proceeding that attempts to hijack causes of action that clearly belong to the Debtors' estates.

22.    Allowing Wilmington Trust's Complaint to proceed would unquestionably do violence to the consensual plan formulation process.  The Debtors have previously opposed the UCC's efforts to seek standing to bring their proposed complaint, which is based on the same facts and contains many of the same allegations as Wilmington Trust's Complaint.  As the

13

Debtors explained in opposing the Standing Motion, allowing all or part of the UCC's complaint to proceed now, "while negotiations are underway and with a plan filing to occur in the near term … would undermine the substantial progress the Debtors have made thus far." (*See* Debtors' Response and Objection to the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing, and Authority to Prosecute Causes of Action on Behalf of the Debtors' Estates, D.I. 3371). For those same reasons, Wilmington Trust should not be permitted to disrupt formulation of the plan in similar fashion.

## OBJECTION TO ALL FURTHER PROCEEDINGS RESPECTING THE COMPLAINT

23.    Given Wilmington Trust's clear and intentional violation of the stay, and given further that its Complaint would not be proper even if Wilmington Trust had followed appropriate procedures, the Debtors object to any further proceedings involving the Complaint going forward and request that any such proceedings be halted. This includes, without limitation, Wilmington Trust's motion to file an unredacted version of the Complaint under seal. (D.I. 3683.)[10]

---

[10] For the avoidance of doubt, nothing in this Motion relieves Wilmington Trust from its contractual obligations to keep in confidence any confidential information provided to it pursuant to the applicable confidentiality agreement.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) finding

that Wilmington Trust willfully violated the automatic stay, (ii) requiring Wilmington Trust to

show cause why it should not be held in contempt of this court for violation of the automatic

stay; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      March 18, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Alison L. Triggs
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION