# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 08-13141 (KJC)<br>(Jointly Administered) |
| WILMINGTON TRUST COMPANY, as Successor Indenture Trustee for the Exchangeable Subordinated Debentures due 2029,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A., et al.<br><br>Defendants. | Adv. No. 10-50732 (KJC)<br><br>Hearing Date: April 13, 2010 at 10:00 AM<br>Re: Docket No. 3 |

## OBJECTION OF MERRILL LYNCH TO MOTION OF WILMINGTON TRUST COMPANY FOR ENTRY OF AN ORDER AUTHORIZING THE FILING OF AN UNREDACTED COMPLAINT

Merrill Lynch Capital Corporation and Merrill Lynch, Pierce, Fenner & Smith, Incorporated (collectively "Merrill Lynch"), by their attorneys Kaye Scholer LLP and Potter, Anderson and Corroon LLP, hereby objects (the "Objection") to the motion (the "Motion to File Under Seal"), dated March 4, 2010, of Wilmington Trust Company ("Wilmington Trust") for the entry of an order authorizing Wilmington Trust to file under seal its unredacted complaint (the "WT Complaint") against various parties, including but not limited to Merrill Lynch, and respectfully states as follows:

**PRELIMINARY STATEMENT**

In filing the redacted WT Complaint, Wilmington Trust has ***deliberately ignored*** this Court's decision of February 18, 2010 to defer litigation and related motions until the end of the Debtors' exclusive period for filing a plan of reorganization. The allegations set forth in the WT Complaint readily establish, however, that Wilmington Trust does not have the required particularized injury necessary to prosecute the claims of equitable subordination, disallowance and constructive trust/unjust enrichment contained in the WT Complaint. Indeed, Wilmington Trust merely pleads a general harm belonging to the Debtors' estates and all creditors of the Debtors. Wilmington Trust's filing of the WT Complaint, seeking relief on derivative claims, is a blatant violation of the automatic stay imposed by section 362(a)(3) of the Bankruptcy Code and renders the WT Complaint void *ab initio*. For this reason alone, the Court should deny the Motion to File Under Seal.

Alternatively, Merrill Lynch respectfully submits that the Court should stay the Motion to File Under Seal until it first resolves at least three pending motions (the "Pending Motions") concerning the same alleged facts and circumstances and the same purported claims as the WT Complaint -- namely, (1) Wilmington Trust's Motion to Appoint an Examiner, (2) the motion by the Official Committee of Unsecured Creditors (the "Creditors' Committee") for standing to prosecute certain claims and (3) Wilmington Trust's Cross-Motion to Intervene on the Creditors' Committee's complaint. The Pending Motions raise issues as to whether (i) an examiner should be appointed to investigate further the same allegations upon which the WT Complaint's claims of equitable subordination, disallowance and constructive trust/unjust enrichment are based;

(ii) the Creditors' Committee should be given standing to bring derivative claims; and (iii) Wilmington Trust should be permitted to intervene in any derivative actions initiated by the Creditors' Committee. As discussed more fully below, the Court also has before it two other motions, one by JP Morgan Chase Bank, N.A. ("JP Morgan") and one by the Debtors, which could mandate dismissal of the WT Complaint on independent grounds. Resolution of any of these motions could render the Motion to File Under Seal moot.

Merrill Lynch's position is that the WT Complaint is improper and should not have been filed for the reasons set forth above and below. Merrill Lynch hereby objects to Wilmington Trust filing an unredacted copy of the WT Complaint under seal because the WT Complaint (whether redacted or unredacted) should not have been filed at all and should not be permitted to go forward at this time.

## THE CHAPTER 11 CASES

On December 8, 2008, the Debtors filed petitions for relief under chapter 11 of the United States Bankruptcy Code with this Court. Following the commencement of the Debtors' chapter 11 cases, the United States Trustee appointed the Creditors' Committee, which presently comprises eight members, including Wilmington Trust in its capacity as an indenture trustee for approximately $1.2 billion of bonds known as the PHONES. The Creditors' Committee subsequently directed its advisors to pursue an investigation (the "Investigation") of the transactions relating to the 2007 acquisition (the "2007 Acquisition") of Tribune Company ("Tribune") and its affiliates by certain affiliates of Sam Zell.

On January 13, 2010, Wilmington Trust filed its motion for the appointment of an examiner pursuant to section 1104(c) of the Bankruptcy Code (the "Examiner Motion").

3

In the Examiner Motion, Wilmington Trust acknowledged that *"the Debtors' estates* hold very significant causes of action against multiple prospective defendants . . . arising from Tribune's 2007 leveraged buy-out . . . transaction." (Examiner Motion at p. 1, 2 (emphasis added).) As part of the relief sought, Wilmington Trust requested that the Court appoint an examiner "for the limited purpose of investigating the LBO and those claims arising therefrom that may be brought against the Debtors and others." (Id. at 4, 5.)

On February 1, 2010, the Creditors' Committee filed its motion (the "Standing Motion") for standing to commence litigation (the "Committee Litigation") against various potential parties, including but not limited to Merrill Lynch, and attached its proposed complaint (the "Committee Complaint"), in which it seeks, among other things, to recover pre-petition payments related to advisory services and financing provided to the Debtors. The Creditors' Committee acknowledged in the Standing Motion that the claims alleged in the Committee Complaint are derivative actions of the Debtors. (See Standing Motion at pp. 4, 8.)

In connection with its equitable subordination, disallowance and related claims, the Creditors' Committee alleges:[1]

- "LBO Debt was fraudulently incurred and should be avoided . . . ." (Standing Motion at 4);

- "[F]ees paid relating to the LBO and the Facilities, . . . principal and interest repaid on the LBO Debt prior to the Petition Date, and . . . payment at closing to satisfy preexisting debt" should be avoided and recovered. (id. at 4);

- "The Debtors were insolvent at the time of the LBO closing so that the obligations incurred under the Facilities, as well as payment of fees and repayments of

---

[1] The descriptions of the Creditors' Committee's derivative claims that it seeks standing to prosecute are contained in pleadings filed publicly by the Creditors' Committee and are *not* based on allegations in the Committee Complaint (which has been filed under seal).

4

principal and interest, should be avoided under constructive fraudulent and other theories." (id. at 7);

- "[T]he "Lead Banks"[] obtained the elevation in priority of the Company's existing debt to them (the "2006 Bank Debt") . . . ." (id. at 7);

- "[T]he LBO was intended to give control of the Company to Samuel Zell, current Chairman of the Board of Company, at the expense of the unsecured creditors." (Creditors' Committee's Reply in Support of Standing Motion at p. 3);

- "[T]he Debtors became insolvent in 2007 as a result of that massive LBO debt. . . ." (id. at 8); and

- "JPM knew there was a serious risk of bankruptcy before the first step of the LBO closed." (id. at 8); and

- "[T]he Company's financial performance throughout 2007, before the 2008 financial crisis, was far short of the projections on which the LBO was based." (Id. at 8.)

On February 11, 2010, Wilmington Trust file its cross-motion to intervene in the Committee Litigation (the "Cross-Motion to Intervene"). In the Cross-Motion to Intervene, Wilmington Trust unequivocally characterizes the claims in the Committee Complaint as *"estate causes of actions."* (Cross-Motion to Intervene at p. 19) (emphasis added). Notably, in the Cross-Motion to Intervene, Wilmington Trust did not attach its own proposed complaint but, instead, sought to intervene in the Committee Complaint which, as demonstrated below, alleges causes of action belonging to the Debtors' estates.

On February 18, 2010, the Court conducted a hearing (the "February Hearing") with respect to the Debtors' motion for an extension of its exclusive periods and ordered that the Debtors' plan filing exclusivity ends on March 31, 2010 and plan solicitation exclusivity ends on May 31, 2010. The Court adjourned the hearings with respect to the Examiner Motion and the Standing Motion until April 13, 2010, scheduled the Cross-Motion to Intervene for a status conference on April 13, and advised the parties that it

was doing so to provide the Debtors an opportunity to reach a consensual resolution on a plan of reorganization without the distraction of litigation.

Nonetheless, in complete disregard of the Court's rulings at the February Hearing, Wilmington Trust filed the WT Complaint on March 4, 2010, together with the Motion to File Under Seal. Each of the defendants (collectively referred to herein as the "financial institutions") named in the WT Complaint provided financing and/or advisory services in connection with the 2007 Acquisition.

The claims of equitable subordination, disallowance and constructive trust/unjust enrichment alleged in the WT Complaint (Counts One, Two and Five) unequivocally are based upon the same set of purported facts as the Creditors' Committee's equitable subordination, disallowance and related claims.

For example, Wilmington Trust asserts in Counts One, Two and Five of the WT Complaint:

- "The defendants engaged in a pattern of egregious misconduct to enrich themselves at the expense of the PHONES by causing the Debtors to enter into the LBO, to incur the obligations, and to provide liens and guarantees associated therewith, all of which were incurred, made or effectuated with actual intent to hinder, delay or defraud the PHONES." (WT Complaint at ¶ 146);

- "[I]n exchange for such obligations, lien and guarantees, the Debtors received less than reasonably equivalent value, were rendered insolvent, were engaged in a business or transaction, or were about to engage in a business or transaction for which the property remaining with the Debtors was unreasonably small capital, or intended to incur or reasonably believed it [sic] would incur debts beyond the Debtors' ability to pay as they become due." (id. at ¶ 147);

- "The defendants developed, and caused the Debtors to implement, the scheme that effectively elevated the priority of the 2006 Bank Debt and expanded the size of the first-priority debt." (id. at ¶ 148);

- "The Debtors did not receive reasonably equivalent value in exchange for incurring the LBO Obligations." (id. at ¶ 151);

6

- "At the time each of the LBO Obligations were [sic] incurred, . . . the Debtors were insolvent, or became insolvent as a result of incurring such LBO Obligations." (id. at ¶ 152);

- "The Debtors and the defendants knew that the Debtors were incurring debt as a result of the LBO beyond the Debtors' means to repay, given the declining newspaper business." (id. at ¶ 160);

- "There was no legitimate corporate purpose for the creation of Holdco and Finance. The sole purpose of their creation as new subsidiaries of Tribune was to become Guarantors that had no other debt. Holdco and Finance were created, at least in part, to consolidate the priority of the Notes over all other debt of Tribune, including that of the PHONES." (id. at ¶ 163);

- "The defendants received transfers, including cash liens and guarantees, which are avoidable under the Bankruptcy Code." (id. at ¶ 172); and

- "As a consequence of the wrongful and inequitable conduct of defendants [, they] were able to and did obtain property in the form of obligations, notes, and guarantees from Tribune and its various subsidiaries . . . ." (id. at ¶ 189.)

Because the Court has familiarity with the Committee Complaint, it can readily ascertain from the WT Complaint on file that claims 1, 2 and 5 of the WT Complaint rest upon the same set of purported facts and circumstances as the Committee Complaint.

On March 11, 2010, JPMorgan filed its motion for sanctions against Wilmington Trust based on the improper disclosure by Wilmington Trust of confidential information, in violation of this Court's Order (the "Depository Order") dated December 15, 2009, establishing a document depository to assist with the disclosure of information produced in connection with the Investigation (the "Sanctions Motion"). The Sanctions Motion seeks, among other things, the dismissal of the WT Complaint. On March 12, 2010, Merrill Lynch joined in the Sanctions Motion.

On or about March 18, 2010, the Debtors filed papers asserting that the filing of the redacted WT Complaint violated the automatic stay.

7

I.  **The Motion to File Under Seal Should Be Denied Because the WT Complaint Attempts to Assert Claims Belonging to the Debtors and Violates the Automatic Stay.**

Pursuant to 11 U.S.C. § 362, the automatic stay has been in place since the commencement of the Debtors' bankruptcy cases. This stay prevents creditors from, among other things, obtaining possession of property of the Debtors' estates or exercising control over property of the Debtors' estates. See 11 U.S.C. § 362(a)(3). The purpose of the automatic stay is to protect all creditors in a manner consistent with the bankruptcy goal of equal treatment and to preclude individual creditors from pursuit of individual remedies against a debtor's property. See, e.g., In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 637 (3d. Cir. 1998); H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340 (1977). Thus, once a debtor files for bankruptcy, the trustee or debtor-in-possession, as opposed to an individual creditor, is the proper party to commence claims that allegedly involve a generalized injury to all creditors of a bankruptcy estate. See In re Elrod Holdings Corp., 392 B.R. 110, 114-116 (Bankr. D. Del. 2008) (denying a motion to file a counterclaim for equitable subordination where the creditor failed to allege facts or circumstances identifying a particularized harm it suffered); see also In re PHP Healthcare Corp., 128 Fed. App'x 839, 845-846, 2005 WL 488785 (3d. Cir. 2005) (affirming Rule 12(b)(6) dismissal of a claim under a state statute governing stock redemptions where a creditor lacked standing because the claim was "general" in nature "belonging to all creditors"); Cedarbrook Plaza, Inc. v. Gottfried, No. Civ. A. 97-1560, 1997 WL 330390, at *9-11 (E.D. Pa. 1997) (granting a motion to dismiss an alter ego claim where the plaintiff averred general injury that was not specific to any particular creditor but, rather, to a debtor).

Wilmington Trust lacks standing to assert the claims of equitable subordination, disallowance and constructive trust/unjust enrichment in the WT Complaint because they are derivative claims of the Debtors, based on "generalized" harm to all creditors and not a particularized harm to the PHONES. See WT Complaint at ¶¶ 163-165 and 173. Specifically, with respect to its claims for equitable subordination, disallowance and constructive trust/unjust enrichment, Wilmington Trust describes its purported harm as (1) the "effective[] elevation [of] the 2006 Bank Debt from unsecured debt to first-priority debt at the Tribune level by making the LBO Notes structurally superior to *all other debt of Tribune*, including that of the PHONES" (see ¶ 162); (2) "transferees holding property *recoverable to the estates*," and their receipt of "other avoidable transfers, which . . . have not [been] paid or turned over . . . that harmed holders of the PHONES." (see ¶¶ 172-173); and (3) the financial institutions "obtain[ing] property in the form of obligations, notes, and guarantees *from Tribune and its various subsidiaries*, all to the detriment of the PHONES." See Id. at ¶¶ 189, 191. For each claim, the harm alleged by Wilmington Trust belongs to the Debtors and only impacts the holders of the PHONES to the extent that they are entitled to a recovery from the Tribune estate.

Accordingly, the WT Complaint violates the automatic stay. It is black letter law that claims filed in violation of the automatic stay are void *ab initio*. See Constitution Bank v. Tubbs, 68 F.3d 685, 692 (3d. Cir. 1995); In re Montgomery Ward, LLC, 292 B.R. 49, 57 (Bankr. D. Del. 2003). Hence, Wilmington Trust should not be permitted to file the WT Complaint under seal because it is void.

## II. The Motion to File Under Seal Is At Best Premature and Should Be Stayed Until the Pending Motions Are Resolved

The issues raised by the Motion to File Under Seal are not at all ripe for adjudication. As this Court made clear to the parties at the February Hearing, the litigation motors should not be turned on until the Debtors have had the full opportunity to try to reach a consensual plan of reorganization. That process is still ongoing; hence, the Motion to File Under Seal should be stayed until either consensus has been reached with respect to a plan or the Court terminates the Debtors' exclusivity period. At the very least, the Motion to File Under Seal should be stayed until the Court has had an opportunity to consider the various Pending Motions, the Sanctions Motion and the Debtors' stay violation papers because determination of any of these Pending Motions or filings could moot the Motion to File Under Seal.

First, in support of its pending Examiner Motion, which is scheduled to be heard at the April 13, 2010 hearing before this Court, Wilmington Trust asserts that "an examiner should investigate whether a claim of fraudulent transfer exists against the LBO Banks under section 548 of the Bankruptcy Code and applicable state law." (Examiner Motion at 32.) All of the claims alleged in the WT Complaint are plainly grounded in the very same purported facts and circumstances that Wilmington Trust demands this Court to appoint an examiner to investigate. Thus, the Motion to File Under Seal is premature.

Second, as demonstrated above, the Committee Complaint attached to the Standing Motion also alleges the same facts and circumstances that are the subject of the WT Complaint. Moreover, the Creditors' Committee expressly acknowledges in its Standing Motion that, to the extent such facts and circumstances give rise to claims, these claims are derivative, and Court approval is a prerequisite to filing such claims. The Standing Motion is also scheduled to be heard before this Court on April 13, 2010. Any

consideration of the Motion to File Under Seal should be deferred at least until after that hearing.

Third, in its own Cross-Motion to Intervene in the Committee Litigation, Wilmington Trust also expressly acknowledges that the claims are derivative. (Cross-Motion to Intervene at p. 19.) The Court has scheduled the Cross-Motion to Intervene for a status conference on April 13, 2010.

Thus, the WT Complaint, which purports to allege individual claims of Wilmington Trust, is woefully premature and should not be heard until, at the very least, the Court has determined whether (1) an examiner should be appointed, (ii) the Creditors' Committee should be given standing to bring derivative claims and (iii) Wilmington Trust, a member of the Creditors' Committee, should be permitted to intervene in the Committee Litigation.

Further, in the Sanctions Motion (to which Merrill Lynch has filed a Joinder), JPMorgan has moved for sanctions and other relief, including withdrawal of the WT Complaint, against Wilmington Trust for knowingly violating this Court's Depository Order. Here again, the Sanctions Motion may render the Motion to File Under Seal moot.

Finally, the Debtors have taken the position that the WT Complaint violates the automatic stay. Since the Debtors' papers may render the Motion to File Under Seal moot, Merrill Lynch respectfully submits that this is an additional reason to defer consideration of Wilmington Trust's Motion to File Under Seal.

Accordingly, because the resolution of numerous pending motions may moot or otherwise affect the resolution of the Motion to File Under Seal, the Court should stay any consideration of the Motion to File Under Seal.

**WHEREFORE,** Merrill Lynch respectfully requests that this Court deny the Motion to File Under Seal and grant Merrill Lynch such other and further relief as is just and proper.

Dated:  March 18, 2010
  Wilmington, Delaware

>                    POTTER ANDERSON & CORROON LLP
>
>                    By: /s/ R. Stephen McNeill
>                    Laurie Selber Silverstein (DE Bar 2396)
>                    R. Stephen McNeill (DE Bar 5210)
>                    P.O. Box 951
>                    1313 N. Market Street, 6th Floor
>                    Wilmington, Delaware  19899
>                    (302) 984-6000
>
>                         - and -
>
>                    KAYE SCHOLER LLP
>                    Madlyn Gleich Primoff
>                    Jane W. Parver
>                    Joseph M. Drayton
>                    425 Park Avenue
>                    New York, New York 10022
>                    (212) 836-8000
>
>                    *Counsel for Merrill Lynch Capital Corporation and Merrill Lynch, Pierce, Fenner & Smith, Incorporated*