# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 19, 2010 at 11:00 a.m. EDT** |
| | **Response Deadline: April 12, 2010 at 4:00 p.m. EDT** |

## DEBTORS' OBJECTION TO CLAIM NO. 3697 OF ROBERT HENKE PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim No. 3697 filed against Debtor The Baltimore Sun Company (the "Sun") by claimant Robert Henke (the "Henke Claim"), a copy of which is attached hereto as Exhibit A.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (9479); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

## INTRODUCTION

Upon review of the Henke Claim and the operative facts and law, the Debtors have determined that they have no liability whatsoever to Mr. Henke, much less that Mr. Henke is entitled to the $100,000,000.00 in damages he seeks. As far as the Debtors can discern, the Henke Claim is predicated on Mr. Henke's apparent belief that The Johns Hopkins University, at which he taught in the 1980s, somehow "pressured" the Sun to publish an allegedly defamatory article about him in 2007 to "protect" the University's "lengthy, intense, and well-shielded campaign" to drive him out of his profession as a scientist and inventor. The materials submitted with the Henke Claim offer no evidence to support this belief and every reason exists to compel the conclusion that this belief is not founded in fact.

The Henke Claim is not an allowable claim because such claim fails to meet the threshold requirements necessary to constitute <u>prima facie</u> evidence of the validity of the claim. The Henke Claim is unenforceable against the Debtors under applicable law both because the underlying lawsuit was filed after the expiration of the applicable statute of limitations and because Mr. Henke fails to state a claim for which relief can be granted. Even if this time bar could be overlooked—which it cannot— the Henke Claim does not and cannot set forth the necessary factual and legal predicates to support a claim for defamation. Moreover, the Henke Claim does not allege any particular harm or damages suffered as a result of the allegedly defamatory article that are attributable to the Debtors; rather, Mr. Henke describes a series of unfortunate events that occurred prior to the time the article was published that in no way implicate the Sun. The Henke Claim also provides no basis whatsoever for the calculation of the extraordinary sum of $100 million in damages sought thereby, except to state that his "request is driven by intangibles" and that his "well-being, prospects, and standing continue[s] to deteriorate."

2

This Objection is submitted pursuant to sections 502(b) and 558 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the Henke Claim in its entirety, as indicated in further detail below. In further support of the Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

46429/0001-6408154v1

sought herein are sections 502(b) and 558 of the Bankruptcy Code and Bankruptcy Rules 3001,

3003, and 3007.

### FACTUAL BACKGROUND OF THE DEBTORS' CLAIMS PROCESS

6.    On March 23, 2009, the Debtors filed their schedules of assets and

liabilities and statements of financial affairs [Docket Nos. 567-789], which were subsequently

amended on April 13, 2009 [Docket Nos. 894-957], June 12, 2009 [Docket Nos. 1343-1453], and

March 2, 2010 [Docket Nos. 3548-3599] (collectively, the "Schedules").[3]

7.    On March 26, 2009, the Court entered an order (the "Bar Date Order") (i)

establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final

date and time for all persons and entities holding or asserting a claim against the Debtors arising

on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11

cases and (ii) approving the form and manner of notice of the Bar Date.[4]  The Bar Date Order

granted any claimants holding a claim affected by amendments to the Schedules and any

claimants holding a claim relating to a Debtor's rejection of an executory contract or unexpired

lease an additional 30 days from the applicable amendment or supplement to the Schedules or

effective date of rejection to file a proof of claim or amend a previously filed proof of claim in

connection therewith.

8.    Written notice of the Bar Date was mailed to, among others, all known

creditors listed on the Schedules, as amended, and the Bar Date Order was served on all parties

who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date

Order.  In addition to mailing such actual notice, the Debtors also published notice of the Bar

---

[3] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009.  [CNLBC Docket Nos. 8 and 9]

[4] No Bar Date has been set for the filing of Proofs of Claim against Tribune CNLBC, LLC.

46429/0001-6408154v1

Date in the National Editions of the *Wall Street Journal*, *New York Times*, *Chicago Tribune*, and *Los Angeles Times* on May 12, 2009.

9.      To date, approximately 6,390 Proofs of Claim have been filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

## INFORMATION CONCERNING THE HENKE CLAIM

10.      The Henke Claim was received and recorded on the Claims Register as Claim No. 3697 on June 8, 2009.  The Henke Claim is asserted against the Sun in the amount of $100,000,000.00, which makes it by far the highest-value litigation-related claim presently asserted in the Debtors' chapter 11 cases.

11.      The underlying pro se Maryland state court action upon which the Henke Claim is based was filed on January 12, 2009, after the Petition Date. [5]  In the complaint (the "Complaint"), Mr. Henke contends, without elaboration, that an October 7, 2007 article published in the Baltimore Sun newspaper represents a "well-crafted defamatory fabrication", in that "both the prominent theme of the article and the compelling evidence for that theme were untrue."  The Complaint does not specify any statement in the article Mr. Henke believes was untrue.  A copy of the Complaint is attached hereto as Exhibit C, and is also substantially reproduced in the supporting documentation attached to the Henke Claim.  A copy of the article is attached as Exhibit D.  Mr. Henke also provided a summary of the claim as part of his supporting

---

[5] The case is styled Robert Henke v. The Baltimore Sun, et al., Case No. 24-C-09-000340.  According to the court docket, this action was commenced on January 12, 2009.  A copy of the docket is attached hereto as Exhibit B; it is also publicly available through http://casesearch.courts.state.md.us/inquiry/ (accept terms and conditions, search for "Henke, Robert," and the case underlying the Henke Claim is listed third).  Additionally, the Henke Claim contains an October 13, 2008, letter in which Mr. Henke acknowledges that his October 2008 submission to the Circuit Court of Baltimore County was rejected for, inter alia, failure to identify the parties against whom he intended to file suit and failure to provide proper payment.  The action remains pending in the Circuit Court for Baltimore City, subject to the automatic stay of section 362(a) of the Bankruptcy Code.  The Sun has not been served in this case, and it has not filed any answer or dispositive pleading.

46429/0001-6408154v1

documentation, in which he asserts that "much evidence suggests the defamation was the most recent expression of a decades-long and well-shielded campaign" he believes existed against him, and that "The Sun, I believe, defamed me to protect the campaign, in which it may have taken part." <u>Exhibit A</u> at 3 (page 2 of Summary). Mr. Henke does not articulate the exact nature of the "campaign" but only that it "grew from my tenure (1985-89) as a faculty member at The Johns Hopkins University" and was "committed" to driving him from his profession. Mr. Henke likewise fails to identify either in the summary of the claim or in the Complaint any "evidence" that the Sun was in any way linked to the "campaign" or in what way it was an "expression" of the campaign.

12.     As noted above, the Henke Claim offers no basis for the calculation of damages sought, and states only that his "request is driven by intangibles" and that "[t]he article has harmed my firm's and my well-being, prospects, and standing and, so [sic], those of my family and has obstructed our progress toward justice." <u>Exhibit C</u>, Complaint at 2. Mr. Henke then describes a series of events he alleges that he and his family suffered—before the article was published—as a result of the purported "campaign" against him by Johns Hopkins University and the scientific and academic community. <u>Id.</u> The Complaint concludes that the "Sun's article only intensified our plight... by obstructing progress towards a resolution of the matter." <u>Id.</u>

### <u>RELIEF REQUESTED</u>

13.     By this Objection, the Debtors seek entry of an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and expunging the Henke Claim in its entirety on the basis that the applicable statute of limitation expired prior to when the underlying lawsuit was brought and that the Henke Claim is facially without merit in that it fails state a claim for which relief can be granted. The Debtors also seek an order directing the Claims Agent to expunge the Henke Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

46429/0001-6408154v1

**APPLICABLE LAW**

14.     When a debtor declares bankruptcy, each of its creditors is entitled to file a

proof of claim—i.e., a document providing proof of a "right to payment"—against the debtor's

estate.  See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007);

11 U.S.C. § 101(5) (A "claim" for bankruptcy purposes means a "right to payment", whether or

not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured).  A party asserting a

claim against a debtor must initially allege sufficient facts to support its claim, and only if this

standard of sufficiency is met is the claim entitled to a presumption of validity.  In re Allegheny

Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992).  See also Fed. R. Bankr. P. 3001(f).

15.     This Objection is based on section 502(b)(1) of the Bankruptcy Code,

which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
> > (1)     such claim is unenforceable against the debtor and
> > property of the debtor, under any agreement or applicable
> > law for a reason other than because such claim is
> > contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."

Travelers, 549 U.S. at 450-51 (citing Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20

(2000)).  A claim against the bankruptcy estate, therefore, "will not be allowed in a bankruptcy

proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy."

In re Combustion Eng'g, Inc., 391 F.3d 190, 245 (3d Cir. 2004).  Pursuant to section 558 of the

Bankruptcy Code, "[t]he estate shall have the benefit of any defense available to the debtor as

7

against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C. § 558.

16.    Here, even being mindful of the pro se nature of the Henke Claim and making all reasonable inferences in favor of Mr. Henke, there is no actionable "right to payment" that could be asserted against the Sun by either the Henke Claim or the underlying Complaint. The applicable statute of limitation expired prior to the commencement of the action underlying the Henke Claim, which alone is a sufficient basis for summary dismissal. The Debtors' other defenses compel the same conclusion. Additionally, even if Mr. Henke had a viable claim for defamation, which he does not, the Henke Claim does not provide any comprehensible basis for the assertion that the Sun owes him $100,000,000.00 in damages for alleged defamation. The Henke Claim fails to meet the initial presumptive burden to show that Mr. Henke has an allowable claim in any amount, much less a claim of such magnitude.

17.    First, the lawsuit underlying the Henke Claim is time-barred. Maryland law provides a one-year statute of limitations for bringing an action for assault, libel, or slander. Md. Code Ann. § 5-105. The complained-of article was published on October 7, 2007. The action brought by Mr. Henke against the Sun was not commenced until January 12, 2009— months after the statute of limitations had run. See Exhibit B & n.5, supra.

18.    Second, it is apparent from the face of the Henke Claim that such claim could not survive a motion to dismiss for failure to state a claim upon which relief can be granted under Maryland law, which governs the claim since the relevant article was published in Maryland and the Complaint is pending in that state's courts.[6] In general, Maryland law specifies that a pleading "shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought." See Md. Rule 3-305. Whether to grant a

---

[6] Given the procedural posture in the underlying state court action, where no answer or dispositive pleading has yet been filed, this Court is easily as well-situated as the state court to make a determination that the claim must be dismissed on this basis.

motion to dismiss "depends solely on the adequacy of the plaintiff's complaint." Green v. H & R
Block, Inc., 355 Md. 488, 501 (1999). The court credits facts pleaded in the complaint and
reasonable inferences from those facts but not "conclusory charges that are not factual
allegations." Morris v. Osmose Wood Preserving, 340 Md. 519, 531 (1995). "[A]ny ambiguity
or uncertainty in the allegations bearing on whether the complaint states a cause of action must be
construed against the pleader." Sharrow v. State Farm Mutual, 306 Md. 754, 768 (1986).

   19.  In order to present a prima facie case of defamation under Maryland law, a
plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a
third person, (2) that the statement was false, (3) that the defendant was legally at fault in making
the statement, and (4) that the plaintiff thereby suffered harm. Offen v. Brenner, 402 Md. 191,
198 (2007). The Complaint underlying the Henke Claim does not meet one of these necessary
elements, much less all four. The Complaint fails to identify any specific statement in the article
that Mr. Henke asserts is either defamatory or not substantially correct. Bobo v. State, 346 Md.
706, 708 (1997) (plaintiff must plead facts with "sufficient specificity"); id. at 708-09 ("Bald
assertions and conclusory statements by the pleader will not suffice."); see also, e.g., Fornshill v.
Ruddy, 891 F. Supp. 1062, 1074 (D. Md. 1995) (because "the cost of defending a protracted
lawsuit threatens to chill First Amendment rights, courts must carefully scrutinize the pleadings"
in defamation actions), aff'd, 89 F.3d 828 (4th Cir. 1996). Additionally, the Complaint fails to
identify any facts that suggest the Sun was legally at fault (by either knowingly, recklessly, or
negligently making a false statement);[7] and does not identify any particular harm proximately
caused by the article or any statement therein. Id. In fact, it is clear from the face of the
Complaint that the "immeasurable harm" Mr. Henke alleges he has suffered, including financial

---

[7] The Complaint states that "[e]vidence suggests that the untruths and misrepresentations were reckless and
deliberate", but fails to identify any particular statement that was either defamatory or false, as required to support a
claim for defamation; rather, it merely states that "facts were created, facts were reshaped, and facts were omitted".
Exhibit B, Complaint at 1.

losses, strained family relationships, and professional "blacklisting," all occurred well before the article was even published (and, indeed, they were described therein). There is simply no proximate link between the Sun article and any loss suffered by Mr. Henke; rather, his circumstances (and any "deterioration" thereof) are entirely independent of the Sun article.[8]

20.    The Henke Claim also must be disallowed because Mr. Henke fails to set forth any factual assertions relating to particular damages he might have suffered as a result of the Sun article. To support a claim for damages for defamation under Maryland law, a plaintiff must also plead damages with particularity. Metromedia, 285 Md. at 172 ("[I]n Maryland a [defamation] pleading to be sufficient must show a basis for believing that the plaintiff has sustained actual injury … [and] must indicate more than extravagant and diffuse conclusions of the pleader."); see also Berman v. Karvounis, 308 Md. 259, 263 (1987) ("what we consider are allegations of fact and inferences deducible from them, not merely conclusory charges.").

21.    Mr. Henke's failure to identify any particular pecuniary or reputational harm arising from the article—as opposed to circumstances that existed long before the article was published—counsels against this Court allowing the $100,000,000 recovery requested in the Henke Claim. Indeed, to allow such a claim, unsupported by facts or the law, would greatly prejudice the Debtors' other creditors and parties in interest.

22.    Accordingly, for these cumulative reasons, the Henke Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases. The Debtors object to the allowance of the Henke Claim and request that it be disallowed in its entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the Henke Claim from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

---

[8] The Debtors reserve the rights to further brief these and any other issues relating to the legal sufficiency of the Complaint in support of this Objection should the Court so direct.

## NOTICE

23.     Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Robert Henke; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

24.     No previous application for the relief sought herein has been made to this Court or to any other court.

46429/0001-6408154v1

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Henke Claim; (ii) directing the Claims Agent to expunge the Henke Claim from the Claims Register; and (iii) granting such other and further as the Court deems just and proper.

Dated: Wilmington, Delaware
   March 19, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION