# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 3664** |

## DECLARATION OF ROBERT E. BELLACK IN SUPPORT OF MOTION OF DEBTOR LOS ANGELES TIMES COMMUNICATIONS LLC FOR AN ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AUTHORIZING SALE OF MEMBERSHIP INTEREST AND ENTRY INTO AND PERFORMANCE OF OBLIGATIONS UNDER LLC MEMBERSHIP INTEREST PURCHASE AGREEMENT

ROBERT E. BELLACK hereby states:

      1.    I am Executive Vice President, New Ventures for Los Angeles Times Communications LLC ("L.A. Times"),[2] a limited liability company organized under the laws of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Delaware and one of the above-captioned debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). I am generally familiar with the business operations of L.A. Times and I make this declaration (the "Declaration") on behalf of the Debtors.

2.   I submit this Declaration in support of the motion of L.A. Times for an order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") authorizing L.A. Times to (i) sell its 66.67% ownership interest in a joint venture known as Zetabid Holdings LLC (the "Zetabid Interest") on the terms set forth in that certain LLC Membership Interest Purchase Agreement (the "Purchase Agreement") dated March 2, 2010, free and clear of all liens, claims, and encumbrances, with any such liens, claims, and encumbrances attaching to the proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have as against the Zetabid Interest, subject to any claims and defenses L.A. Times may possess with respect thereto, and (ii) enter into and perform its obligations under the Purchase Agreement and related agreements (the "Motion").

3.   In June 2008, L.A. Times and two other companies created Zetabid Holdings LLC ("Zetabid") to expand access to the inventory of residential properties sold at auction and to open the market to domestic and international buyers. As of the Petition Date, Zetabid was owned and operated jointly by L.A. Times and Catalist Homes, a Los Angeles firm with extensive experience in foreclosure sales ("Catalist"). As of the date of the Motion, L.A. Times held a 66.67% ownership interest in Zetabid, and Catalist held the remaining 33.33% interest.

4.   Zetabid is a national consumer brand that consumers may use to purchase bank- and builder-owned properties at public auctions. Through its national network of print,

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

broadcast, and online partners, Zetabid reaches a wide consumer audience to spread awareness of auction inventory. As of the date of the Motion, and presently, the total assets of Zetabid are not substantial. L.A. Times currently manages Zetabid's marketing capabilities through the print and online editions of its publications. Catalist manages Zetabid's real estate capabilities, providing transaction expertise and a scalable technology to manage the disposition of hundreds of properties during a single auction event.

5. L.A. Times is unaware of any secured claims with respect to the Zetabid Interest.

### The Proposed Sale

6. L.A. Times and Catalist have negotiated the Purchase Agreement and related documents, which provide for the sale of L.A. Times's interest in Zetabid. Specifically, the transaction contemplates that, pursuant to the Purchase Agreement, Zetabid will purchase the total amount of L.A. Times's membership interest in Zetabid (66.67% of the total membership interest) for the aggregate purchase price of $10 (ten dollars). The Purchase Agreement also contemplates that L.A. Times and Zetabid will each grant certain mutual, customary releases. As additional consideration, the management committee and board of directors of Zetabid have entered into a Joint Written Consent, dated March 2, 2010, authorizing Zetabid to make a special distribution to L.A. Times in an amount equal to two-thirds the value of Zetabid's total assets, which distribution is expected to amount to approximately $200,000.

7. The Purchase Agreement further provides that, upon consummating the sale of L.A. Times's interest in Zetabid, the parties will terminate all current service agreements between Zetabid and L.A. Times related to L.A. Times's ownership of Zetabid. In exchange for

terminating the service agreements, the parties agreed to grant each other a mutual release of any further duties or obligations in connection with such agreements.

8.   Finally, under the Purchase Agreement, Zetabid agrees to license to L.A. Times certain Licensed Matter (which relates to certain customer data), as defined in that certain License Purchase Agreement, dated March 2, 2010, attached to the Purchase Agreement as Exhibit B.

9.   There are several business justifications for L.A. Times's decision to sell the Zetabid Interest on the terms set forth in the Purchase Agreement. First, the Zetabid Interest provides limited, if any, value to the Debtors' business operations. When L.A. Times initially established Zetabid with its joint venture partners in 2008, foreclosures were peaking and the business represented an attractive opportunity for L.A. Times in light of the housing downturn. After the joint venture was established, however, the United States government put into effect several policy changes that had substantial adverse impacts on Zetabid's business, including, among other restrictions, foreclosure moratoriums and loan modification requirements. While the housing market remains deeply troubled, the successful business models for foreclosure sales are unclear and subject to more, different, and rapidly evolving government intervention.

10.   Second, L.A. Times has incurred losses in connection with its ownership of Zetabid to date. Moreover, L.A. Times could be required to invest additional funds in Zetabid in connection with any continued ownership. Given the uncertainty of the impact of new and evolving policy on the housing and banking industries, L.A. Times believes continued ownership of Zetabid presents a higher risk of incurring further losses than L.A. Times's management believes is currently prudent to bear.

11.     Further, Zetabid's business is not a core element of L.A. Times's operations, which are primarily focused on media and entertainment. L.A. Times's management believes it would currently be able to invest resources elsewhere in the Company with better results than would likely be achieved by continued investment in Zetabid.

### Sale Negotiation Process

12.     L.A. Times believes there would be little or no interest on the part of third-parties in acquiring the Zetabid Interest on terms that are better than those afforded by the Purchase Agreement. Moreover, given the comparatively limited value of the Zetabid Interest, L.A. Times believes an auction process would result in substantial costs to L.A. Times with no likely corresponding benefit. Accordingly, L.A. Times believes sale of Zetabid Interest under the Purchase Agreement is appropriate, and an auction process for the Zetabid Interest should not be required.

13.     The Purchase Agreement is the product of good faith, arms' length negotiations among the parties. Catalist is not affiliated with, nor is it an insider of, L.A. Times or any other Debtor. The consideration Zetabid agreed to tender to L.A. Times in exchange for the Zetabid Interest is fair and reasonable under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 22, 2010

_____
ROBERT E. BELLACK