IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: April 19, 2010 at 11:00 a.m. EDT**<br>**Objection Deadline: April 12, 2010 at 4:00 p.m. EDT** |

## MOTION OF DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019(a) AUTHORIZING ENTRY INTO AND PERFORMANCE OF OBLIGATIONS UNDER SETTLEMENT AGREEMENT WITH STATE OF CONNECTICUT DEPARTMENT OF REVENUE SERVICES

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby submit this motion (the "Motion") seeking entry of an order pursuant to section 363 of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

"Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to enter into and perform their obligations under that certain settlement agreement between certain Debtors and the State of Connecticut, Department of Revenue Services ("Connecticut"), a copy of which is attached hereto as Exhibit A (the "Settlement Agreement"). Pursuant to the Settlement Agreement, the Debtors seek to settle the disputed prepetition liability of Debtors Tribune Television Company ("Tribune Television"), The Hartford Courant Company, and Southern Connecticut Newspapers, Inc. and their affiliates (collectively, the "Taxpayers") for Connecticut state income taxes for the periods from December 1996 through December 2002 and December 2003 through December 2007.[2] As a result of the proposed settlement, Connecticut would receive allowed prepetition claims in the aggregate amount of $12,180,000 against Tribune Television. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC[3], filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

---

[2] The Settlement Agreement has been signed by Tribune Television on behalf of Tribune Television and its affiliates, which the Debtors understand includes The Hartford Courant Company and Southern Connecticut Newspapers, Inc.

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Committee"). No request has been made for the appointment of a trustee.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## RELEVANT BACKGROUND

6.      The Settlement Agreement resolves disputes between the Debtors and Connecticut concerning corporation income taxes of the Taxpayers that Connecticut asserts the Taxpayers owe for tax years ended December 1996 through December 2002 and December 2003 through December 2007.

7.      Connecticut began an audit of the Taxpayers for corporate income taxes on August 24, 2004. This audit covered the tax years ended January 1, 1996 through December 31, 2002. Upon concluding the audit, Connecticut issued a billing notice on March 13, 2009 (the "2002 Notice") in the amount of $4,629,994.08, which was comprised of taxes in the amount of $2,624,772 and interest in the amount of $2,005,222.08. The Taxpayers timely protested the 2002 Notice on May 5, 2009.

8.      Connecticut began an additional audit of the Taxpayers for corporate income taxes on April 21, 2008. This audit covered the tax years 2003 through 2007. Upon

concluding the audit, Connecticut issued a billing notice on May 18, 2009 (the "2007 Notice"), in the amount of $22,588,385.58, which was comprised of taxes in the amount of $16,248,131 and interest in the amount of $6,340,254.58. The Taxpayers timely protested the 2007 Notice on July 13, 2009. (The 2002 Notice and the 2007 Notice will be referred to collectively as the "Notices").

9. The Taxpayers submitted a Protest and Request for Hearing to Connecticut in response to each of the Notices (each a "Protest" and together, the "Protests"). The Protests raised the following issues: (i) whether the Taxpayers were entitled to an interest expense deduction for interest paid on loans from related parties and (ii) whether Tribune Television was entitled to utilize net operating losses incurred in years prior to 2001.

10. Connecticut filed a proof of claim in Tribune Television's bankruptcy case on June 9, 2009 (the "Connecticut Proof of Claim"), which was assigned claim number 4148 by the Court-appointed claims agent. The Connecticut Proof of Claim listed two corporation tax claims based on the audits and related to the Notices. The first of those claims stated it related to the period of January 1, 1996 through December 31, 2002 and was asserted in the amount of $4,551,250.92 (the "2002 Claim"). The second audit-related claim stated it was for the period from December 1, 2005 through December 31, 2007, and was asserted in the amount of $21,775,979.03 (the "2007 Claim", and with the 2002 Claim, the "Connecticut Tax Claims"). Connecticut did not file proofs of claim relating to the 2002 Claim or the 2007 Claim in the other Taxpayers' chapter 11 cases. As stated above, the Taxpayers and the other Debtors have disputed the amount of the corporation tax liability asserted in the Connecticut Tax Claims and the Notices.

11. In an attempt to resolve the Connecticut Tax Claims consensually, the Taxpayers participated in an informal conference with the Department of Revenue Services Appellate Bureau (the "Appellate Bureau") in Hartford, Connecticut on August 11, 2009. Tribune Television submitted a written settlement offer to the Appellate Bureau on November 13, 2009. Connecticut and the Taxpayers then participated in a series of telephone discussions in order to reach a settlement and resolution of the Connecticut Tax Claims.

12. Following the negotiations, the Taxpayers and Connecticut reached an agreement in January 2010 regarding the amount of the corporation taxes the Taxpayers owe Connecticut for (i) the taxable period of December 1996 through December 2002 and (ii) the taxable period of December 2003 through December 2007. Specifically, pursuant to the Settlement Agreement, Connecticut and the Taxpayers agree that (i) for the taxable period December 1996 through December 2002, the Taxpayers owe corporation taxes in the amount of $177,980.00, plus $150,247.00 in interest for periods prior to the Petition Date, for a total corporation tax liability for such period of $328,227.00 and (ii) for the taxable period December 2003 through December 2007, the Taxpayers owe corporation taxes in the amount of $8,618,680.00, plus $3,233,093.00 in interest for periods prior to the Petition Date, for a total corporation tax liability for such period of $11,851,773.00. The Settlement Agreement provides that payment of such corporation tax liabilities will be provided for in Tribune Television's confirmed chapter 11 plan and that such payment will be in full and final satisfaction of any and all claims of Connecticut relating to liabilities of the Taxpayers for the payment of Connecticut corporation taxes in the Debtors' chapter 11 cases, including, but not limited to, the Connecticut Tax Claims. The Settlement Agreement does not resolve or otherwise affect any disputes or claims regarding taxes other than corporation taxes asserted by Connecticut, or any disputes or

claims regarding corporation taxes owed for periods other than December 1996 through December 2002 and December 2003 through December 2007, nor does the Settlement Agreement affect any defenses or counterclaims of any of the Debtors respecting any such tax liabilities.

### RELIEF REQUESTED

13. By this Motion, the Debtors respectfully request that the Court enter an order authorizing the Debtors to enter into and perform all of their obligations under the Settlement Agreement.[4] The Settlement Agreement settles the disputed claims asserted by Connecticut relating to the Taxpayers' corporation tax liabilities for the periods from December 1996 through December 2002 and December 2003 through December 2007. The settlement of the Taxpayers' corporation tax liabilities for the specified taxable periods is final and conclusive with respect to all corporation tax, penalties, and interest for such taxable periods, except for three limited exceptions set forth in the Settlement Agreement.[5] Pursuant to the terms of the Settlement Agreement, payment of the corporation tax liabilities specified in the Settlement Agreement will be provided for in Tribune Television's chapter 11 plan.

---

[4] Although the Settlement Agreement states that it is between Connecticut and Tribune Television and its affiliates, in an abundance of caution the Debtors are seeking an order authorizing all of the Debtors to enter into the Settlement Agreement and perform any obligations the Debtors may have thereunder.

[5] Specifically, the Settlement Agreement is a final and complete resolution of the Taxpayers' corporation income tax liabilities for the taxable periods of 12/96 through 12/02 and 12/03 through 12/07, except for the following exceptions: (i) the tax liability may be reopened in the event of fraud, malfeasance or misrepresentation of material fact by the Taxpayers; (ii) if the Taxpayers' income, profits or earnings have been adjusted or corrected by the Internal Revenue Service or an amended return has been filed with the Director of the Internal Revenue Service for the taxable periods specified in the Settlement Agreement, the Taxpayers may have a greater tax liability and be required to pay additional tax, including interest, or may be entitled to a refund for such period; and (iii) the specified taxable periods may be reopened if it is determined by Connecticut Revenue Services that the Taxpayers participated in an "abusive" tax shelter transaction designated by the Internal Revenue Service as a "listed transaction." See Exhibit A.

## BASIS FOR RELIEF REQUESTED

14. Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The Third Circuit has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See In re Martin, 91 F.3d 389, 395 n. 2 (3d Cir. 1996) (distinguishing the substance of section 363 from the procedural effect of Bankruptcy Rule 9019).

15. In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. In making this determination, a court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay…; and (4) the paramount interest of the creditors." Id. (referencing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (listing the Anderson factors as controlling whether a settlement should be approved). The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc., 221 B.R. 798, 801 (D. Del. 1997).

16. The terms of the Settlement Agreement are fair and reasonable and in the best interests of the Debtors' estates. The Settlement Agreement is the product of arm's-length

negotiations between the Taxpayers and Connecticut that took place over a six-month period in late 2009 and early 2010. During the course of the negotiations, both the Taxpayers and Connecticut exchanged views as to the merits of their respective positions regarding the disputed Connecticut Tax Claims, the Notices, and the Protests. As a result of these negotiations, Taxpayers concluded that the amounts of corporation taxes and interest set forth in the Settlement Agreement represent an accurate amount of corporation tax liabilities owed to Connecticut for the taxable periods of December 1996 through December 2002 and December 2003 through December 2007. As a result of the negotiations and Settlement Agreement, Connecticut's claim for corporation taxes for the period December 1996 through December 2002 has been reduced by more than 90% from the amount Connecticut asserted it was owed in the 2002 Claim, and Connecticut's claim for corporation taxes for the period December 2003 through December 2007 has been reduced by more than 40% from the amount Connecticut asserted it was owed in the 2007 Claim.

17. For the reasons set forth above, the Settlement Agreement is in the best interests of the Debtors and their estates and therefore should be approved.

## NOTICE

18. Notice of this Motion has been provided to (i) counsel for Connecticut; (ii) the Office of the United States Trustee; (iii) counsel for the Committee; (iv) counsel to the Steering Committee for the Debtors' prepetition loan facilities; (v) counsel to the administrative agent for the Debtors' postpetition financing facility; and (vi) all parties having requested notice in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

19. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to enter into and perform their obligations under the Settlement Agreement and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: Wilmington, Delaware  
       March 29, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP  
James F. Conlan  
Bryan Krakauer  
Kenneth P. Kansa  
Allison E. Ross  
One South Dearborn Street  
Chicago, IL 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, DE 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND  
DEBTORS IN POSSESSION