## EXHIBIT A

## SUPPLEMENTAL ENGAGEMENT LETTER

As of March 5, 2010

Tribune Company
435 North Michigan Ave.
Chicago, IL 60611

Attention:     Mr. Nils E. Larsen
               Executive Vice President / Chief Investment Officer

Dear Ladies and Gentlemen,

      This letter confirms the retention of Lazard Frères & Co. LLC ("Lazard") to act as investment banker to Tribune Company and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company" or "you") to assist you in evaluating, from a financial perspective, the opportunities presented in connection with the launch of The Cooking Channel cable network ("TCC") by the Television Food Network partnership ("TVFN"), of which Scripps Networks Interactive ("SNI") owns approximately 68.7% and is the managing partner, and the Company owns the remaining 31.3%. SNI has proposed contributing the majority of the assets and liabilities of the Fine Living Network, LLC ("FLN") to TVFN, and the business to which such assets and liabilities relate will, after such contribution, be re-branded and launched as TCC. This letter follows on the existing engagement agreement between Lazard and the Company dated as of December 2, 2008 (the "Existing Engagement Agreement") for services in connection with the restructuring of the Company and its affiliates, as modified by that certain Order Authorizing Debtors to Employ and Retain Lazard Frères & Co. LLC as Investment Banker and Financial Advisor Pursuant to 11 U.S.C. 327(a), 328(a), and 1107, *Nunc Pro Tunc* to the Petition Date entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 13, 2009 in the Company's chapter 11 case (docket no. 524) (the "Retention Order"). By signing this letter, we hereby accept our appointment as your investment banker under the terms hereof.

      We will act with respect to the foregoing for a period of one year from the date hereof, subject to the following conditions:

1.     We will assist you as necessary and requested to:

   (a) Analyze the business, operations and financial projections of TVFN;
   (b) Analyze the assets contemplated to be contributed to TVFN in connection with the launch of TCC;
   (c) Analyze the business, operations, and financial projections of TCC;
   (d) Assist the Company in its valuation analysis of TVFN, both prior to and after the contribution of the FLN assets and liabilities;
   (e) Analyze the potential financial impact on the Company of meeting its proportional capital requirement in TVFN and thus retaining its current 31.3% interest in TVFN or of abstaining from investing and suffering economic dilution;

    (f) Assist the Company in its negotiations with SNI relating to the launch of TCC;

    (g) Assist the Company in discussions with various creditor constituencies regarding the Company's analysis and recommendations; and

    (h) Assist the Company with any other reasonable requests related to the Company's evaluation and negotiations with respect to the transactions described above.

2. In connection with our engagement, you will furnish or cause to be furnished to us such current and historical financial information and other information regarding TVFN and the assets and liabilities contemplated to be contributed to TVFN in connection with the launch of TCC as we may reasonably request. You agree to keep us advised of all material developments affecting the business or financial position of TVFN and the assets and liabilities contemplated to be contributed to TVFN in connection with the launch of TCC of which you are aware. In performing our services hereunder, we shall be entitled to rely on all information furnished to us or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

3. In consideration of our services, you agree to pay us a fee of $750,000, payable upon the earlier of (i) the time when the Company invests in or contributes additional capital or other assets to TVFN; (ii) the time when the Board of Directors of the Company (or other relevant governing or decision-making body) has determined not to invest in or contribute additional capital or other assets to TVFN; (iii) September 30, 2010; and (iv) termination of this agreement by the Company.

4. Regardless of whether any transaction or this engagement is completed, you agree to reimburse us periodically, upon request, for all our reasonable and documented expenses incurred in connection with this engagement. Generally these expenses include travel costs, document production and other expenses of this type, and will also include the reasonable fees of outside counsel and other professional advisors. We estimate that such expenses incurred in connection with this engagement will not exceed $50,000 (the "Cap"). We will not incur any such expenses in excess of the Cap, without the prior written consent of the Company (which consent shall not be unreasonably withheld). For the avoidance of doubt, the Cap shall not affect any of the Company's obligations under the Existing Engagement Agreement or the Indemnification Letter (as defined below). . All payments to be made by you pursuant to this agreement shall be made promptly after receipt of invoice therefor.

5. No fee payable to any third party, by you or any other person or entity in connection with the subject matter of this engagement, shall reduce or otherwise affect any fee payable hereunder.

6. The Company agrees that it will use reasonable best efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of the Company's chapter 11 proceedings, it shall continue to perform its obligations under this agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court. The Company shall supply Lazard with a draft of the supplemental application and proposed order authorizing the modification of Lazard's existing retention to encompass the services described in this agreement sufficiently in advance of the filing of such supplemental application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this agreement unless Lazard's retention under the terms of this agreement is approved under section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court, which order is acceptable to Lazard. Lazard acknowledges that the Company's obligations pursuant to this agreement during the pendency of the Company's chapter 11 proceedings are subject to approval of this agreement by the Bankruptcy Court.

7. On December 2, 2008, the parties hereto entered into an indemnification letter (the "Indemnification Letter"), which, as modified by the Retention Order, remains in full force and effect and shall also apply to our engagement hereunder. The Indemnification Letter shall survive any termination or expiration of this agreement.

8. Our engagement hereunder may be terminated by you or us at any time without liability or continuing obligation to you or us, except that, following such termination or any expiration of this agreement, we shall remain entitled to any fees accrued pursuant to paragraph 3 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of reasonable and documented expenses incurred prior to such termination or expiration, as the case may be, as contemplated by paragraph 4 hereof.

9. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner, or other owner of the Company, any creditor, lender, or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of Tribune Company is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to Tribune Company's Board of Directors or management in the course of the Company's engagement of Lazard is solely for the purpose of assisting senior management or the Board of Directors of Tribune Company, as the case may be, in evaluating any transaction contemplated hereby and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any such transaction. Any advice, written or oral, rendered by Lazard may not be

disclosed publicly or made available to third parties without the prior written consent of Lazard (which shall not be unreasonably withheld); provided, however, that disclosure may be made without Lazard's consent to the Company's various creditor constituencies (who agree to maintain such financial advice confidential in all respects) who have a reasonable need to know such information in connection with negotiations with the Company regarding the transactions contemplated hereby and with the Office of the United States Trustee and the Bankruptcy Court, or as otherwise required by order of the Bankruptcy Court or by applicable law. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Board of Directors or any other person or entity.

10. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter.

11. In carrying out services hereunder, Lazard may, as it considers appropriate, draw upon the resources of and involve as agent other members of the Lazard Group and Lazard Capital Markets LLC and its affiliates. In this agreement, "Lazard Group" means Lazard Group LLC and its direct and indirect subsidiaries.

12. This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed by and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted, or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York or in the United States Bankruptcy Court for the District of Delaware, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that this choice of forum provision is or has become unreasonable. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this agreement.

13. This agreement, taken together with the Existing Engagement Agreement and the Indemnification Letter, as such agreements and letters have been or may be modified by applicable orders of the Bankruptcy Court, constitute the entire agreement between the Company and us with respect to the matters set forth herein and supersede all prior and contemporaneous discussions, agreements and understandings with respect to the matters covered herein and therein. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound

thereby. The terms of the Existing Engagement Agreement and the Indemnification Letter, as such agreement and letter have been and may be modified by applicable orders of the Bankruptcy Court, remain in full force and effect and are not modified by the parties' entry into this agreement.

If the foregoing correctly sets forth the understanding between us, please so indicate on the enclosed signed copy of this letter in the space provided therefor and return it to us, whereupon this letter shall constitute a binding agreement between us.

Very truly yours,

LAZARD FRÈRES & CO. LLC

By_____
John G. Chachas
Managing Director

AGREED TO AND ACCEPTED
as of the date first above written:

TRIBUNE COMPANY, on behalf of
itself and its controlled subsidiaries


By_____

    Mr. Nils E. Larsen
    Executive Vice President / Chief Investment Officer