IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| TRIBUNE COMPANY, et al. | ) | Case No. 08-13141 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date**: April 13, 2010 at 10:00 a.m. (Eastern) |
| | ) | |
| | ) | **Objection Deadline**: April 9, 2010 at 4:00 p.m. (Eastern) |
| | ) | |

**MOTION OF CREDIT AGREEMENT LENDERS FOR LEAVE
TO CONDUCT DISCOVERY PURSUANT TO BANKRUPTCY RULE
2004 OF CENTERBRIDGE PARTNERS, L.P., CENTERBRIDGE
CREDIT ADVISORS LLC, AND THEIR AFFILIATES**

Pursuant to sections 105(a) and 1109(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 2004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Credit Agreement Lenders[1] move (the "Motion") this Court for the entry of an order, in substantially the form of the proposed order attached hereto as Exhibit A, authorizing them to conduct discovery of Centerbridge Partners, L.P., Centerbridge Credit Advisors LLC, and their affiliates (collectively, "Centerbridge") relating to Tribune Company's stock purchases and the merger consummated in 2007 (the "Transactions"), including the consideration and proposal of alternatives to such transactions.[2] In support of their motion, the Credit Agreement Lenders submit the accompanying Declaration of James O. Johnston (the "Johnston Declaration"), a copy of which is attached hereto as Exhibit B, and respectfully represent as follows:

---

[1] The Credit Agreement Lenders are the entities identified in the "Third Amended Joint Verified Statement of Representation of More than One Creditor by Hennigan Bennett & Dorman LLP and Young Conaway Stargatt & Taylor, LLP" [D.I. 3927].

[2] In compliance with Local Rule 2004-1, a conference was held telephonically between counsel for the Credit Agreement Lenders and counsel for Centerbridge to see if an agreement could be reached to arrange for a mutually agreeable date, time, place and scope of production. No agreement could be reached. As required by Local Rule 2004-1, a certification of counsel to this effect is filed concurrently with this motion. See Johnston Declaration.

- 1 -

## Jurisdiction

1.     This Court has jurisdiction to hear the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 1109(b) of the Bankruptcy Code, along with Bankruptcy Rule 2004.

## Background

2.     Centerbridge asserts that it owns 37% of the senior notes issued by debtor Tribune Company ("Tribune" and together with its affiliated debtors and debtors in possession in the above-captioned cases, the "Debtors"),[3] a stake equating to a claim of approximately $475 million. The Debtors have stated that they believe that Centerbridge is "the largest of the public debt holders."[4]

3.     Centerbridge has attacked the propriety of the Transactions throughout these chapter 11 cases, most recently asserting that the Transactions "constituted a fraudulent conveyance that siphoned off billions of dollars of value that should be available to fund the recoveries of the Debtors' pre-LBO lenders."[5] Centerbridge also has been designated a "Negotiating Party" pursuant to this Court's *Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing*

---

[3]  *Joinder of Centerbridge Credit Advisors LLC to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates* ("Centerbridge Standing Joinder") [D.I. 3407] ¶ 1.

[4]  Hr'g Tr. 66–67, Dec. 21, 2009 (excerpt attached as Exhibit A to the Johnston Declaration).

[5]  Centerbridge Standing Joinder ¶ 12; *see also Joinder of Centerbridge Credit Advisors LLC to the Relief Requested in Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules Of Bankruptcy Procedure of Tribune Company, its Affiliates, and Certain Third Parties, or Alternatively, for the Appointment of an Examiner* ("Centerbridge Discovery Joinder") [D.I. 2176] ¶ 2 ("The LBO, which undoubtedly precipitated Tribune's financial demise, should be a (if not the) primary focus of these chapter 11 cases ....").

*Settlement Negotiation Protections Pursuant to 11 U.S.C. § 105(a)*[6] and was recently identified in testimony by David Kurtz, the Debtors' financial advisor, as a key participant in ongoing negotiations regarding the alleged fraudulent conveyance claims.[7]

4.   In their attacks on the Transactions, Centerbridge and its indenture trustee, Law Debenture Trust Company, have alleged that the transactions rendered Tribune and its guarantor subsidiaries insolvent and were consummated with an intent to hinder, delay and defraud creditors. Centerbridge, however, has neglected to note its own role in this story—a role that will likely confirm that its contentions (and those of its indenture trustee) are baseless. Specifically, public news coverage and documents produced by other parties have revealed that in early 2007 as Tribune was conducting an auction process with respect to a sale of the company, Centerbridge was working with Tribune's largest shareholders—the Chandler Trusts—to make a competing offer for the business.

5.   Among other things, in correspondence to Tribune in February 2007 [REDACTED]

6.   The Chandler proposal ultimately did not lead to a transaction, and Tribune decided instead to pursue the Transactions (after a fulsome auction process in which other interested bidders drove the Zell consortium to its higher, ultimately prevailing bid). Tellingly,

---

[6]   D.I. 2858.

[7]   Hr'g Tr. 66–72, Feb. 18, 2010 (excerpt attached as Exhibit B to the Johnston Declaration).

[8]   Johnston Declaration, Ex. C.

Centerbridge did not then cry foul or otherwise assert that the Transactions were fraudulent. To the contrary, immediately after public announcement of the Zell-proposed Transactions, ███

███████████████████████████████████

███████████████ :

███████████████████████
███████████████████████
███████████████████████

7.      In fact, a document produced by JPMorgan demonstrates that ███

███████████████████████████████████

███████████████████████████████████

███████████

8.      Given Centerbridge's about-face contention that the Transactions were fraudulent, it is appropriate that Centerbridge disclose how it formed its contemporaneous, but now apparently disowned, ████████████████████████ In particular, the Credit Agreement Lenders are entitled to discovery regarding how Centerbridge contemporaneously viewed the Transactions and how it viewed the assets of Tribune Company and its subsidiaries. The Credit Agreement Lenders expect that Centerbridge has in its possession its own contemporaneous analyses and related documents confirming the propriety of the very transactions it now challenges.

---

[9]  Johnston Declaration, Ex. D.

[10] *Id.*

[11] Johnston Declaration, Ex. E.

## Relief Requested and Basis Therefore

9.  Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). A Rule 2004 examination may be made of any entity with knowledge of the debtor's acts, property, liabilities, and financial affairs relating to the debtor's bankruptcy proceedings. *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990); *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). Emphasizing the broad purpose of Rule 2004, courts typically allow examination of third parties who had dealings with a debtor. *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

10. Rule 2004 is recognized as the "basic discovery device used [in] bankruptcy cases." *In re French*, 145 B.R. 991, 992 (Bankr. D.S.D. 1992). Rule 2004(b) provides that the scope of the examination may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). In addition, "the examination may also relate to [any] matter relevant to the case or to the formulation of a plan." *Id.* Further, Rule 2004 discovery is not limited to use by debtors and official committees. To the contrary, courts have repeatedly recognized that, as the Rule states, individual creditors and other parties in interest may obtain Rule 2004 discovery. *In re Lehman Bros. Inc.*, Case No. 08-01420 (JMP), 2008 Bankr. LEXIS 3543, at *7–11 (Bankr. S.D.N.Y. Nov. 26, 2008).

11. Here, Centerbridge already is on record supporting Rule 2004 discovery in respect of information "that is necessary for a comprehensive analysis and investigation to determine whether the 2007 leveraged buyout transaction . . . constituted a fraudulent transfer under

applicable bankruptcy and nonbankruptcy law."[12] The information sought by the Credit Agreement Lenders—regarding Centerbridge's contemporaneous views on Tribune's 2007 financial condition and the propriety of the Transactions—falls precisely within this category and the Credit Agreement Lenders are entitled to discovery on this topic.

12.  As already indicated by the limited information produced by other parties, Centerbridge's own files likely will demonstrate that nobody, not even Centerbridge, foresaw the economic hurricane that swamped the Debtors after consummation of the independent Transactions in April and December 2007. The Credit Agreement Lenders expect that Rule 2004 discovery will demonstrate that Centerbridge is now trying to take advantage of an unexpected cataclysm to challenge as fraudulent the transactions it previously lauded as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### Notice

13.  The Credit Agreement Lenders have provided notice of this Motion to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) Centerbridge; (iv) counsel to the Debtors; and (v) those parties who have requested notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. LR 2002-1(b).

14.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

---

[12] Centerbridge Discovery Joinder ¶ 1.

## Conclusion

For the reasons set forth above, the Credit Agreement Lenders respectfully request entry of an order authorizing and directing the production of documents by Centerbridge in substantially the form of the proposed order attached hereto as Exhibit A.[13]

Dated: April 2, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
Jaime N. Luton (No. 4936)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

- and -

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
James O. Johnston
Joshua D. Morse
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Telecopier: (213) 694-1234

*Counsel to the Credit Agreement Lenders*

---

[13] After reviewing the documents, the Credit Agreement Lenders will seek further leave from the Court if deposition discovery or discovery from other Centerbridge entities is necessary.