# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.<br><br>Debtors. | ) Chapter 11 Cases<br>)<br>) Case No. 08-13141 (KJC)<br>)<br>) (Jointly Administered)<br>)<br>) RE: Docket No. ____<br>) |

## ORDER GRANTING MOTION OF CREDIT AGREEMENT LENDERS FOR LEAVE TO CONDUCT DISCOVERY OF CENTERBRIDGE

Upon the motion (the "Motion") of the Credit Agreement Lenders,[1] pursuant to 11 U.S.C. §§ 105(a) and 1109(b) and Rule 2004 of the Federal Rules of Bankruptcy Procedure, for entry of an order authorizing and directing discovery from Centerbridge Partners, L.P., Centerbridge Credit Advisors LLC and their affiliates (collectively, "Centerbridge"); and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B); and upon consideration of the Motion; and due and proper notice of the Motion having been given,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. The Credit Agreement Lenders are permitted to serve on Centerbridge document requests that are substantially in the form attached as Exhibit A.

3. Centerbridge shall respond to such document requests not later than twenty (20) days after service.

4. The Credit Agreement Lenders are authorized to compel production in accordance with Rule 9016 of the Federal Rules of Bankruptcy Procedure.

5. This Order is without prejudice to further discovery requests, including requests for deposition discovery, from the Credit Agreement Lenders to Centerbridge and other persons or entities.

---

[1] Capitalized terms not defined in this Order have the meanings given to them in the Motion.

- 2 -

6.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: April __, 2010
       Wilmington, Delaware

                                                        _____
                                                        Kevin J. Carey
                                                        Chief United States Bankruptcy Judge

# **EXHIBIT A**

## CREDIT AGREEMENT LENDERS' DOCUMENT REQUEST
## UNDER RULE 2004 TO CENTERBRIDGE PARTNERS, L.P.,
## CENTERBRIDGE CREDIT ADVISORS LLC, AND THEIR AFFILIATES

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Credit Agreement Lenders request that Centerbridge Partners, L.P., Centerbridge Credit Advisors LLC, and their affiliates (collectively, "Centerbridge") produce documents listed in this request as soon as possible but no later than _____ day, _____, 2010, for examination by the Credit Agreement Lenders.

### DEFINITIONS

For the purposes of this discovery request, the following definitions shall apply:

A.  "All" and "each" shall be construed as "all and each."

B.  "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

C.  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

D.  "Communication" means any transfer of information, oral or written, be it in the form of facts, ideas, inquiries, opinions or otherwise, by any means, at any time or place, under any circumstances, and is not limited to transfers between persons, but includes other transfers, such as records and memoranda to the file.

E.  "Concerning" means referring to, describing, identifying, summarizing, documenting, recording, constituting, discussing or quantifying the matter in question.

F.  "Debtors" means Tribune Company, the other entities that are debtors in the bankruptcy cases jointly administered as Case No. 08-13141 (KJC), and their directors, officers, agents, employees, representatives, managing agents, accountants, attorneys, investigators or affiliates, and any agent, employee or representative of any of the foregoing.

G. "Document(s)" shall have the broadest possible meaning, and shall include all documents and electronically stored information in your possession, custody, or control. For illustration purposes only, and without limiting the foregoing definition, the term "document(s)" shall include any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any format (whether in paper, electronic, or other format(s)) and any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form. For example, "document(s)" include, without limitation, accounting records, affidavits, agreements, analyses, appointment books, appraisals, articles from publications, calculations, bills, books, books of account, statements, cables, calendars, charts, checks, check stubs, confirmations, contracts, correspondence, credit card receipts, desk calendars, desk pads, diaries, directives, diskettes, drafts, estimates, evaluations, faxes, files, filings, financial data, records, and statements, forms, invoices, journals, ledgers, letters, lists, memoranda (including internal memoranda), minutes, notations, notes, opinions, orders, pamphlets, papers, personnel records, permanent files, pictures, presentations, press releases, printouts, projections, prospectuses, publications, receipts, recordings of conferences, conversations or meetings, records, reports, statements, statistical records, studies, summaries, tabulations, tape recordings and/or transcripts of the same, telegrams, telephone records, telex messages, transcripts, understandings, videotapes, vouchers, work papers, copies of records and documents, and sheets or things or writings similar to any of the foregoing however denominated. The term "document(s)" further includes email, electronic communications, and electronic data of any nature whatsoever stored on any medium, including without limitation, on a personal computer, network computer system, backup computer tape and/or disk, or by some other storage mechanism. The term "document(s)" shall include all originals, summaries, drafts, and non-identical copies of the foregoing, including copies with marginal notations, notes, or interlineations.

H. "Person" means any natural person or any other cognizable entity, including (without limitation) any corporation, partnership, limited liability company, limited liability

partnership, joint venture, company, consortium, club, association, foundation, governmental agency or instrumentality, society or order.

  I.  "Related Parties" means any affiliate of the Debtors as such term is defined in Section 101(2) of the Bankruptcy Code and any of their directors, officers, agents, employees, representatives, managing agents, accountants, attorneys, investigators or affiliates, and any agent, employee or representative of any of the foregoing.

  J.  "Tribune" means Tribune Company.

  K.  "You" and "your" means Centerbridge Partners, L.P., Centerbridge Credit Advisors LLC, and their current or former directors, officers, agents, employees, representatives, managing agents, accountants, attorneys, investigators or affiliates, and any agent, employee or representative of any of the foregoing.

  L.  The masculine gender shall be deemed to include the feminine.

  M.  The past tense shall include the present tense and vice versa.

  N.  The use of the singular form of any word includes the plural and vice versa.

  O.  The term "including" means "including, without limitation."

## INSTRUCTIONS

  1.  In responding to this discovery request, you are requested to furnish all documents in your possession, custody or control. You are deemed to be in control of a document if you have the right to secure the document or a copy thereof from another person having actual possession thereof. You must produce all responsive documents in your possession, custody or control, regardless of whether they are possessed by (1) you, or (2) a person acting on your behalf, including, without limitation, your director, officer, agent, employee, representative, subsidiary, managing agent, affiliate, accountant, attorney or investigator, or (3) the agent, employee, representative of any of the foregoing. This request is deemed to be continuing, and if, after producing documents responsive to this request, you obtain or become aware of any further documents responsive to this request, you are required to

produce such further documents upon receipt or upon becoming aware of such further documents.

2.  If you cannot produce all documents responsive to this discovery request after exercising due diligence to secure them, so state and furnish documents to the extent possible, specifying your inability to furnish the remainder and stating whatever information you have concerning the unavailable documents. If your responses are qualified in any particular manner, set forth the details of such qualification.

3.  If you object to any part of this discovery request and refuse to furnish documents responsive to that part, state your objection(s) and furnish documents responsive to the remaining portion of the discovery request. If you object to the scope of this request and refuse to produce documents for that scope, state your objection and furnish documents responsive to the request for the scope that you contend is appropriate.

4.  Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to, or explain the documents which are called for by this discovery request.

5.  In the event that you assert the attorney-client privilege and/or the work product doctrine or any other privilege as to any document requested herein, then, as to each such assertion, provide a privilege log containing the following information:

   a. The document's date;
   b. Where the document was located (*e.g.*, in a given person's files);
   c. The name of the author(s);
   d. The name of the recipient(s);
   e. The nature and basis for the claim of privilege or other ground for withholding production; and
   f. The subject matter, title (if any), and any additional information necessary to describe the nature of the document, explain the claim of privilege, and

permit the Bankruptcy Court to reach a determination as to the propriety of your assertion.

6. If there are multiple identical copies of a document found in different divisions, departments, branches or offices, or in the files or possession of different natural persons, each such copy shall be produced in such fashion as to identify the division, department, branch, or officer where it is located, or the natural person in whose possession it was found. All non-identical copies of a document must also be produced.

7. Documents attached to each other should not be separated. Documents that are located in files, folders, binders and the like must be produced in a manner that enables the determination of which particular pages were contained in a given file, folder or binder. The labels of any files, folders or binders that contain responsive documents must also be copied.

8. The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical.

9. If two specific requests overlap, or if a document is responsive to more than one specific request, the document need only be produced once.

10. Documents should be produced with serialized document production numbers.

11. Documents that are stored in electronic form in the ordinary course of your business must be produced in that form. If hard copies of such documents also are maintained in the ordinary course of your business, copies of those must also be produced. Any non-identical hard copies of electronically-stored documents must be produced (*e.g.*, printouts with handwritten annotations, printouts of prior versions that have not been retained in electronic form, etc.). Documents that are stored in electronic form (*e.g.*, word processing, database and spreadsheet files, Microsoft outlook database ("dot pst") files, other electronic mail files, project management files, source-code files, etc.) should be produced in their original format as they are kept in the usual course of business, and should not be converted to another format, unless the data is stored in a proprietary file format. In that event, the file should be copied to an industry-standard file format (*e.g.*, Microsoft Excel for spreadsheet files, Microsoft Access or comma

separated value (CSV) for database files). If special procedures must be used to "translate" electronically-stored data into "reasonably usable [or non-proprietary] form," and you expect the Steering Group to cover the cost of such translation or data conversion, you must consult first with counsel for the Steering Group. For purposes of production, all electronically-stored documents should be copied onto electronic media (CD-ROMs or DVD-ROMs) that can be read using Microsoft Windows XP.

12.     If there are responsive emails that are kept in electronic form in the ordinary course of your business (*e.g.*, in a Microsoft Exchange Server or Outlook database, on network backup tapes, or on an individual user's workstation, personal computer or laptop computer), then those documents must be produced in electronic form, along with any hard copy printouts thereof. Your production of electronic emails must include all meta-data relating to any given email (*e.g.*, follow-up or importance flags set by the sender or recipient, the identity of individuals who were sent a "bcc" or blind carbon copy of the email, etc.) and any electronic attachments. Multiple copies of a single identical email may exist on your network server as a result of differences in meta-data associated with the email (*e.g.*, one copy kept in the sender's files, and other copies kept in the files of the recipients, or copies with different follow-flags set by various recipients of the email). Due to the differences in the meta-data, such documents must be viewed as distinct, even though the message text of the email itself is identical. All such non-identical copies must be produced in electronic form. An individual email message may be incorporated in subsequent messages that respond to or forward the original message. All such responses or forwarding emails (email "chains") must be viewed as distinct, non-identical documents and produced as such. Emails stored in Microsoft Outlook/Exchange Server should be produced in standard Microsoft personal folder files with dot-pst (".pst") filename extensions.

P.     If there are tape or voice recordings that are responsive to any request, then you must produce both the tape itself (or an accurate copy thereof) and any existing transcriptions thereof. Production of a transcription alone will not be considered sufficient.

## **DOCUMENTS REQUESTED**

1. All documents created on or before December 31, 2007 concerning any valuation or other financial analysis (by You, Evercore Partners, Wasserstein & Co., Goldman Sachs & Co., Rustic Canyon Partners, the Chandler Trust No. 1, the Chandler Trust No. 2, News Corp., Merrill Lynch & Co., Citigroup Global Markets or any other person) of Tribune, any equity interest in Tribune, any of its assets, any of its subsidiaries, any equity interest in any of its subsidiaries, any of its subsidiaries' assets, or any debt instrument issued by Tribune or by any of its subsidiaries.

2. All documents created on or before December 31, 2007 concerning any analysis, forecast or projection (by You, Evercore Partners, Wasserstein & Co., Goldman Sachs & Co., Rustic Canyon Partners, the Chandler Trust No. 1, the Chandler Trust No. 2, News Corp., Merrill Lynch & Co., Citigroup Global Markets or any other person) of the actual or potential financial or business performance of Tribune, any of its assets, any of its subsidiaries or any of its subsidiaries' assets.

3. All documents created on or before December 31, 2007 concerning any effort or offer by anyone to purchase Tribune, any of its assets, any of its subsidiaries or any of its subsidiaries' assets.

4. All communications in 2006 or 2007 concerning Tribune, any equity interest in Tribune, any of its assets, any of its subsidiaries, any of its subsidiaries' assets, or any debt instrument issued by Tribune or by any of its subsidiaries.

5. All communications in 2006 or 2007 concerning any possible transaction involving Tribune, any of its assets, any of its subsidiaries, any of its subsidiaries' assets, or any debt instrument or equity interest issued by Tribune or by any of its subsidiaries.

6. All documents from 2006 and 2007 concerning Tribune, any of its assets, any of its subsidiaries or any of its subsidiaries' assets.

7. All documents from 2006 and 2007 concerning any possible transaction involving Tribune, any of its assets, any of its subsidiaries or any of its subsidiaries' assets.

-8-

8. All documents from 2006 and 2007 concerning any financing of a possible transaction involving Tribune, any of its assets, any of its subsidiaries or any of its subsidiaries' assets.

9. The electronic document and any annotated hard copy of the document that was attached to Michael Costa's 9:41 a.m. April 9, 2007 email to Steven Price that is in the middle of the email chain attached as **Exhibit 1**.

10. All documents from 2006 and 2007 concerning the solicitation of any person or entity to lend any Debtor money, invest in any Debtor or enter into any financial transaction involving any Debtor—including, but not limited to, under any credit agreement.

11. All documents from 2006 and 2007 concerning communications between or among You and any other person (including, without limitation, Evercore Partners, Wasserstein & Co., Goldman Sachs & Co., Rustic Canyon Partners, the Chandler Trust No. 1, the Chandler Trust No. 2, News Corp., Merrill Lynch & Co., Citigroup Global Markets, the Debtors and any of the Related Parties) concerning Tribune, any equity interest in Tribune, any of its assets, any of its subsidiaries, any of its subsidiaries' assets, or any debt instrument issued by Tribune or by any of its subsidiaries.

# **EXHIBIT 1**

# **[REDACTED]**