SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X
| | |
|---|---|
| In re: | : |
| | : |
| **TRIBUNE COMPANY, et al.,** | : |
| | : |
| Debtors. | : |
| | : |
| | : |

| |
|---|
| **Chapter 11 Cases** |
| **Case No. 08-13141 (KJC)** |
| **(Jointly Administered)** |
| |
| **Hearing Date and Time:** |
| **April 13, 2010 at 10:00 am** |
| |
| **Related to Docket No. 3759** |

-------------------------------------------------X

## OBJECTION OF WILMINGTON
## TRUST COMPANY TO THE MOTION OF
## THE DEBTORS FOR AN ORDER (I) DETERMINING
## THAT WILMINGTON TRUST COMPANY HAS VIOLATED THE
## AUTOMATIC STAY, (II) REQUIRING WILMINGTON TRUST COMPANY TO
## SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT,
## AND (III) HALTING ALL PROCEEDINGS WITH RESPECT TO THE COMPLAINT

April 5, 2010

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
Raymond Lemisch, Esq. (No. 4204)
Jennifer R. Hoover, Esq. (No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: rlemisch@beneschlaw.com
Email: jhoover@beneschlaw.com

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
William M. Dolan III, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-2801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: wdolan@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as
Successor Indenture Trustee for the $1.2 Billion Exchangeable
Subordinated Debentures Due 2029, Generally Referred to as the PHONES*

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................2

FACTUAL BACKGROUND .........................................................................................5

ARGUMENT .................................................................................................................7

I.    As Indenture Trustee For Creditors With Requisite Injury, Wilmington
      Trust Has Independent Standing To Seek Equitable Subordination ................11

      A.    Individual Creditors Have Standing To
            Assert Individual Equitable Subordination Claims .............................11

      B.    Wilmington Trust Holds Claims For Equitable
            Subordination That Are Particular To Holders of the PHONES ..........16

            1.    The Amended Complaint Passes The
                  Supreme Court's Bennett Test For Standing ...........................16

            2.    The Amended Complaint Also Asserts Non-Bankruptcy
                  Causes of Action (Counts 3 and 4) For Which Equitable
                  Subordination Is Most Assuredly An Available Remedy .......21

      C.    The Fact That Other Pre-LBO Creditors Were
            Also Injured Does Not Mean That Holders Of
            The PHONES Have Not Incurred a Particularized Injury ...................22

      D.    The Existence Of An Estate Fraudulent Transfer Claim Based Upon
            The Same Nucleus of Operative Fact Does Not Deprive Wilmington
            Trust Of The Right To Bring Direct Equitable Subordination Claims ................22

      E.    Wilmington Trust Did Not Need Court Approval To File Its Complaint............24

II.   As A Party In Interest, Wilmington Trust Is Entitled To Seek
      Disallowance Of Claims Under Bankruptcy Code Section 502 .......................25

III.  The Court's February 18, 2010 Ruling Did Not Stay The Filing Of Adversary
      Proceedings, And The Filing Of The Complaint (And The Proposed
      Amended Complaint) Is Otherwise In Accordance With The Court's Rulings ..............28

IV.   By Filing Its Complaint With The Bankruptcy Court,
      Wilmington Trust Did Not Violate The Automatic Stay .................................32

CONCLUSION ............................................................................................................34

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

ABF Capital Management v. Kidder Peabody & Co., Inc.
(In re Granite Partners, L.P.)
210 B.R. 508 (Bankr. S.D.N.Y. 1997) ...................................................................21

Acands, Inc. v. Travelers Casualty & Surety Co.,
435 F.3d 252 (3d Cir. 2006) .................................................................................33

Algonquin Power Income Fund v. Ridgewood Heights Inc.
(In re Franklin Indus. Complex, Inc.),
2007 WL 2509709 (Bankr. N.D.N.Y. Aug. 30, 2007).................................11, 14, 15, 16, 27

Art Metal Works v. Abraham & Straus,
70 F.2d 641 (2d. Cir. 1934) ..................................................................................28

Art Metal Works v. Abraham & Straus,
293 U.S. 596 (1934) .............................................................................................28

Art Metal Works v. Abraham & Straus,
107 F.2d 944 (2d Cir. 1939) .................................................................................28

Art Metal Works v. Abraham & Straus,
308 U.S. 621 (1939).............................................................................................28

In re Associated Vintage Group Inc.,
283 B.R. 549 (B.A.P. 9th Cir. 2002).....................................................................27

Benjamin v. Diamond (In re Mobile Steel Co.),
563 F.2d 692 (5th Cir. 1977)................................................................................11

Bennett v. Spear,
520 U.S. 154 (1997) ........................................................................................16, 17

In re Best Prods Co., Inc.,
168 B.R. 35 (Bankr. S.D.N.Y. 1994) .....................................................................21

Bunch v. J.M. Capital Finance Ltd. (In re Hoffinger Indus. Inc.),
327 B.R. 389 (Bankr. E.D. Ark. 2005)..............................................12, 14, 15, 22

Civic Center Square, Inc. v. Ford (In re Roxford Foods, Inc.),
12 F.3d 875 (9th Cir. 1993) ..................................................................................32

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## TABLE OF AUTHORITIES, cont.

<u>**Cases**</u>                                                                    <u>**Page(s)**</u>

Clippard v. LWD, Inc. (In re LWD, Inc.),
    342 B.R. 514 (Bankr. W.D. Ky. 2006) ................................................................ 12

In re Conley,
    159 B.R. 323 (Bankr. D. Id. 1993) ........................................................ 12, 25, 27

In re Coram Health Care Corp.,
    315 B.R. 321 (Bankr. D. Del. 2004) ................................................................... 7

Cosoff v. Rodman (In re W.T. Grant Co.),
    699 F.2d 599 (2d Cir. 1983) ............................................................................ 21

Cox Com Inc. v. Chafee,
    536 F.3d 101 (1st Cir. 2008) ............................................................................ 17

Elway Co., LLP v. Miller (In re Elrod Holdings Corp.),
    392 B.R. 110 (Bankr. D. Del. 2008) ...................................... 3, 11, 13, 22, 25

Elway Co., LLP v. Miller (In re Elrod Holdings Corp.),
    421 B.R. 700 (Bankr. D. Del. 2010) ................................................................ 25

Food Lion Inc. v. S.L. Nusbaum Ins. Agency, Inc.,
    202 F.3d 223 (4th Cir. 2000) ........................................................................... 28

Int'l Union v. Ludwig Honold Mfg. Co. (In re Ludwig Honold Mfg. Co.),
    30 B.R. 790 (Bankr. E.D. Pa. 1983) ............................................................... 33

In re J.S. II, L.L.C.,
    389 B.R. 570 (Bankr. N.D. Ill. 2008) ......................................................... 12, 32

Matter of Rimstat Ltd.,
    98 F.3d 956 (7th Cir. 1996) ............................................................................. 32

NBD Park Ridge Bank v. SRJ Enters. Inc. (In re SRJ Enters. Inc.),
    151 B.R. 189 (Bankr. N.D. Ill. 1993) .............................................................. 12

In re New Valley Corp,
    181 F.3d 517 (3d. Cir 1999) ............................................................................ 28

In re New Valley Corp,
    528 U.S. 1138 (2000) ...................................................................................... 28

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## TABLE OF AUTHORITIES, cont.

**Cases**                                                                                      **Page(s)**

Official Committee ex rel. Cybergenics Corp. v. Chinery,
    330 F.3d 548 (3d Cir. 2003) ..................................................................................... 16

Official Committee of Unsecured Creditors of AppliedTheory Corp. v.
    Halifax Funding, L.P. (In re AppliedTheory Corp.), 493 F.3d 82 (2d Cir. 2007)............ 16, 27

Paolella & Sons Inc. v. MNC Commercial Corp.,
    85 B.R. 965 (Bankr. E.D. Pa. 1988).........................................................12, 23, 24, 30

Paolella & Sons Inc. v. MNC Commercial Corp.,
    161 B.R. 107 (E.D. Pa. 1993) ........................................................................... 12, 23

Paolella & Sons Inc. v. MNC Commercial Corp.,
    37 F.3d 1487 (3d Cir. 1994) ................................................................................ 12

Post Confirmation Trust of Fleming Cos., Inc. v. Target Corp. (In re Fleming Cos.),
    323 B.R. 144 (Bankr. D. Del. 2005) ...................................................................... 6

PW Enterprises, Inc. v. North Dakota (In re Racing Services, Inc.),
    363 B.R. 911, 914, 916-17 (8th Cir. BAP 2007) ...................................................... 25, 26, 27

PW Enterprises, Inc. v. North Dakota (In re Racing Services, Inc.),
    540 F.3d 892 (8th Cir. 2008) ............................................................................... 25, 26

PW Enterprises, Inc. v. North Dakota (In re Racing Services, Inc.),
    2008 WL 4831479 (Bankr. D.N.D. Nov. 5, 2008) .................................................... 25, 26

In re Red Dot Scenic, Inc.,
    313 B.R. 181 (Bankr. S.D.N.Y. 2004) ................................................................... 29

Schubert v. Lucent Tech. (In re Winstar Communications, Inc.),
    554 F.3d 382 (3d Cir. 2009) ................................................................................ 11

United Jersey Bank v. Morgan Guaranty Trust Co. (In re Prime Motor Inns, Inc.),
    135 B.R. 917 (Bankr. S.D. Fla 1992)..................................................................... 29, 33

Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),
    973 F.3d 1065 (3d Cir. 1992) .............................................................................. 33

Variable-Parameter Fixture Dev. Corp. v. Comerica Bank-Calif.
    (In re Morpheus Lights, Inc.), 228 B.R. 449 (Bankr. N.D. Cal 1998)................................... 33

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## <u>TABLE OF AUTHORITIES, cont.</u>

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

In re Vitreous Steel Prods. Co.,
    911 F.2d 1223 (7th Cir. 1990) ...................................................................3, 11, 12-13, 14, 25

**<u>Statutes</u>**

11 U.S.C. § 362(a)(3)...............................................................................................................32

11 U.S.C. §502 ............................................................................................................ 28, 29, 30

11 U.S.C. § 510(c) ............................................................................................................ passem

11 U.S.C. §1109(b)...................................................................................................................28

H.R. Rep. No. 95-595, at 340-42 (1977)....................................................................................32

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X
| | |
|---|---|
| In re: | : |
| | : |
| TRIBUNE COMPANY, et al., | : |
| | : |
| Debtors. | : |
| | : |
| | : |
-------------------------------------------------X

Chapter 11 Cases
Case No. 08-13141 (KJC)
(Jointly Administered)

Hearing Date and Time:
April 13, 2010 at 10:00 am

Related to Docket No. 3759

## OBJECTION OF WILMINGTON
## TRUST COMPANY TO THE MOTION OF
## THE DEBTORS FOR AN ORDER (I) DETERMINING
## THAT WILMINGTON TRUST COMPANY HAS VIOLATED THE
## AUTOMATIC STAY, (II) REQUIRING WILMINGTON TRUST COMPANY TO
## SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT,
## AND (III) HALTING ALL PROCEEDINGS WITH RESPECT TO THE COMPLAINT

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the

Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2

billion (generally referred to as the "PHONES") issued in April 1999 by Debtor Tribune

Company ("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the

"Company"),[1] by and through its undersigned counsel, hereby submits this Objection to the

*Motion of the Debtors for an Order (I) Determining that Wilmington Trust Company Has*

*Violated the Automatic Stay, (II) Requiring Wilmington Trust Company to Show Cause Why It*

*Should Not Be Held in Contempt of Court, and (III) Halting All Proceedings With Respect to the*

*Complaint and the Proposed Amended Complaint*, dated March 18, 2010 [Docket No. 3759] (the

"Motion"). In opposition to the Motion, Wilmington Trust respectfully states as follows:

---

[1]     The Debtors in these Chapter 11 Cases are referenced in Exhibit A to *Wilmington Trust's
Complaint For Equitable Subordination And Disallowance Of Claims, Damages, And
Constructive Trust*, filed on March 4, 2010 [Adv. Case No. 10-50732; Adv. Docket Entry
No. 1.] (referred to herein as the "Complaint").

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## PRELIMINARY STATEMENT

1.    For 16 months, the Debtors -- controlled by Sam Zell, perhaps the Number 1 target for litigation -- have pursued virtually every angle, artifice and stratagem to shield this Court and the public-at-large from the evidence of wrongful conduct that pervaded the Debtors' pre-petition leveraged-buyout (the "LBO").    They have labored mightily to hide a virtual mountain of startling evidence proving that (i) management, and the lenders structuring and facilitating the LBO (collectively, the "LBO Banks")[2], knew full well that the LBO was completely inappropriate for this Company, (ii) left it crushingly insolvent, (iii) wrongfully placed the burden of the LBO first and foremost on the shoulders of holders of the PHONES, and (iv) each member of senior management and the LBO Banks were paid unjustifiably large amounts of money to turn a blind-eye towards and/or otherwise enable such a remarkably ill-conceived transaction.    The time for revelation is long past, and the day of reckoning is rapidly approaching.

2.    The Motion is but another attempt to keep the tiger in a paper bag.    But, it is weak and confused advocacy, almost entirely lacking in legal and factual support.    Indeed, stripped of rhetoric and misapplied legal citations, the Motion is really predicated only on the same desperate plea heard at the February 18, 2010 hearing: if the Court only will help the Debtors stall litigation (and also deny Wilmington Trust's request for a formal examination) for a little more time, a "global" settlement might be achieved.    This argument is wrong both as a matter of fact and law.    As a matter of fact, Wilmington Trust today remains uninvited to any "global" settlement discussions, notwithstanding the Motion's reference to management's begrudging,

---

[2]    As used herein, "LBO Banks" refers to the defendants named in the Complaint and the Proposed Amended Complaint.  All other capitalized terms not defined herein have the meaning given to them in the Complaint and the Proposed Amended Complaint.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

perfunctory, and entirely talismanic "settlement conference" with Wilmington Trust on March 2, 2010. The argument also is wrong as a matter of law: Bankruptcy Judges are not referees; they adjudicate questions of fact and law, they do not manufacture settlements. Thus, it is inconsistent with legal principle for the Debtors to ask this Court to artificially construct leverage benefitting only certain "friendly" creditors (and thereby sheltering the Debtors' owner and management from liability) to the detriment of other creditors harmed by their misconduct.

3.    Contrary to the Debtors' protestations, Wilmington Trust has not exerted any control over estate causes of action. It asserts in the Complaint only direct, personal causes of action, requesting relief that is entirely inter-creditor in nature (equitable subordination, disallowance of claims, constructive trust, and damages), redressing wrongs that the LBO Banks purposefully imposed upon holders of the PHONES. As a creditor with more than sufficient well-plead injury, Wilmington Trust has appropriate legal standing and authority to pursue such remedies and did not violate the automatic stay by doing so. See, e.g., In re Vitrous Steel Prods. Co., 911 F.2d 1223, 1231 (7th Cir. 1990) (individual creditor has standing to seek equitable subordination of another creditor's claims); Elway Co., LLP v. Miller (In re Elrod Holdings Corp.), 392 B.R. 110, 115 (Bankr. D. Del. 2008) (Shannon, J.) ("a secured creditor has standing to seek the equitable subordination of another secured creditor's claim to the extent that it seeks relief for a particularized injury, which differs from the injury incurred by all creditors").

4.    It is true that the Counts in Wilmington Trust's Complaint are premised on the same nucleus of operative fact as separate estate fraudulent transfer and other derivative claims. But that is of no legal import. Neither the Debtors nor the Official Committee of Unsecured Creditors (the "Committee") have exclusive ownership, sole possession or control over the facts of the Debtors' failed LBO. The estates' right to assert claims for equitable subordination, or

3

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

avoidance, or other remedies, based upon the same facts, does not bar Wilmington Trust's right to prosecute its own direct, personal claims.

5.     Furthermore, nothing in Bankruptcy Code Section 362 prohibits Wilmington Trust from asserting such direct, personal causes of action; thus, nothing in Section 362 prohibited Wilmington Trust's filing of the Complaint and the Proposed Amended Complaint (defined herein in Paragraph 9). Here, too, the law is quite settled, as evidence by the Debtors' complete failure to cite any legal authority holding otherwise. Indeed, the filing of the Complaint and the Proposed Amended Complaint with the Bankruptcy Court, asserting Counts specifically contemplated by the Bankruptcy Code, is entirely consistent with Section 362 because it ensures an orderly and centralized disposition of the claims before the Bankruptcy Court.

6.     Finally, not a word spoken or Order issued by the Court during the February 18th hearing on Wilmington Trust's *Motion to Appoint Examiner* [Docket No. 3062] (the "Examiner Motion") and the Committee's *Motion for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates* [Docket No. 3281] (the "Committee's Standing Motion") enjoined or otherwise prohibited Wilmington Trust from commencing prosecution of the direct claims asserted in the Complaint and the Proposed Amended Complaint. The Court then was asked by the Debtors to consider a 30-day extension of their plan-filing exclusivity period (granted) and to adjourn consideration of the Examiner Motion and the Committee's Standing Motion until the April 13 hearing (also granted). No injunction was requested, no injunction was issued, and the Motion inappropriately recasts the Court's procedural rulings as a grant of substantive benefits for Tribune's management and the LBO Banks. This tactic should not be countenanced. Here, again, it bears

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

repeating that it is the Debtors' job to forge settlements, not misinterpret Court rulings as a means to artificially create leverage benefiting certain "friendly" creditors (and thereby help shelter Mr. Zell and management) to the detriment of those creditors harmed by the wrongful pre-petition conduct.

7.    For all of the foregoing reasons, as discussed more fully herein, the relief requested in the Motion should be denied with prejudice.

## FACTUAL BACKGROUND

8.    Since the specific allegations and causes of action asserted in the Complaint form the direct underlying basis for the relief requested in the Motion, the Complaint is incorporated into this Section by reference, as if fully repeated here.  Since filing the Complaint, important additional evidence has come into Wilmington Trust's possession, including, in particular, ██

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████  Wilmington Trust has prepared a proposed amended complaint (the "Proposed Amended Complaint") attached hereto as Exhibit A (also incorporated by reference, as if fully repeated herein), adding new facts and otherwise addressing the pleading

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

"particularity" arguments raised in the Motion.[3]    Appreciating that the Complaint and the

Proposed Amended Complaint are lengthy and detailed documents, certain facts are briefly

discussed below.

9.    The Complaint and the Proposed Amended Complaint seek, among other things:

(i) equitable subordination to the claims of the PHONES of all claims of Defendants arising from

the LBO (Count One); (ii) disallowance of all claims of Defendants until the claims of the

PHONES are paid in full (Count Two); (iii) damages from and/or equitable subordination of

claims asserted by Citibank, N.A. ("Citibank") for breaches of its fiduciary duty as the Indenture

Trustee to the PHONES during the LBO (Count Three); (iv) damages from and/or equitable

subordination of claims asserted by the other Defendants for aiding and abetting Citibank's

breaches of fiduciary duty (Count Four); and (v) the imposition of a constructive trust over any

---

[3]    Bankruptcy Rule 7015 permits a party to amend its pleading once as a matter of course
before being served with a responsive pleading.  As the Defendants have obtained an
extension of time to plead or otherwise respond to the Complaint and the Proposed
Amended Complaint, Wilmington Trust may amend its Complaint as of right.  Post
Confirmation Trust of Fleming Cos., Inc. v. Target Corp. (In re Fleming Cos.), 323 B.R.
144, 147 n.3 (Bankr. D. Del. 2005) ("[u]nder Rule 15(a) of the Federal Rules of Civil
Procedure a party may amend its pleading 'once as a matter of course at any time before
a responsive pleading is served . . .'" and "[r]ule 15 of the Federal Rules of Civil
Procedure is made applicable to adversary proceedings by Rule 7015 of the Federal Rules
of Bankruptcy Procedure") (emphasis omitted).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

estate distributions to the Defendants until the claims of the PHONES are paid in full (Count

Five).[4]

10.    As described in the Complaint and the Proposed Amended Complaint, the

PHONES were the "particular target and victims" of a scheme involving Tribune's management,

certain of Tribune's major shareholders, Mr. Zell, and certain of the LBO Banks, including

Defendants JPMorgan, Citigroup and Merrill Lynch (as defined in the Complaint and the

Proposed Amended Complaint).    The LBO was structured and implemented in a manner that

Defendants knew would render Tribune insolvent and drive it into bankruptcy, all to the specific

detriment of the PHONES.  Complaint ¶ 3; Proposed Amended Complaint ¶ 3.

11.    Prior to the LBO, at any reasonable enterprise value, Tribune was more than able

to support its existing senior bank debt of $2.8 billion, senior unsecured notes of $1.3 billion, and

the PHONES debt of $1.2 billion.  Of Tribune's total pre-existing debt just prior to the LBO,

$4.1 billion was senior in priority to the PHONES, and the PHONES were "in the money,"

notwithstanding contractual subordination provisions in the PHONES indenture.  Complaint ¶ 4;

Proposed Amended Complaint ¶ 4.

12.    The LBO fundamentally changed Tribune's capital structure in order to:  (a) meet

the demands of major shareholders of Tribune that they be cashed out; and (b) transfer control of

Tribune to Mr. Zell.  To accomplish these purposes, Tribune bought out all of its existing

---

[4]      The Debtors' Motion only challenges Wilmington Trust's equitable subordination and
disallowance claims asserted in Counts 1 and 2 - it does not challenge the other Counts in
the Complaint and the Proposed Amended Complaint, including requests for equitable
subordination in Counts 3 and 4, or the imposition of a constructive trust over estate
distributions otherwise deliverable to the Defendants in Count 5.  Thus, even if the
Debtors did assert a basis for the relief requested (they do not), the order would not
inhibit prosecution of the other Counts.  And, of course, all such claims will require
resolution before any plan of reorganization can be confirmed.  See, e.g., In re Coram
Health Care Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004).  On this basis alone, the
Motion was poorly conceived and the relief requested not appropriate.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

shareholders, increased its total debt to over $13 billion (almost tripling its prior debt load) to finance the LBO ("LBO Debt" or "LBO Loans"), and caused most of its subsidiaries (the "Guarantors")[5] to guarantee the LBO debt. Prior to the LBO, Tribune's ratio of indebtedness to EBITDA was 4.8:1. After the LBO, it skyrocketed to 11.8:1. The obligations assumed in connection with the LBO rendered Tribune and the Guarantors insolvent at all relevant times and caused the amount of debt senior to the PHONES to increase from $4.1 billion to $11.3 billion. The LBO was a single integrated transaction that was completed in two steps: "Step One," which closed in June 2007, and "Step Two" which completed the LBO in December 2007. Less than one year after the completion of the two-step LBO, unable to carry the massive burden of the LBO Debt, Tribune and most of the Guarantors filed for relief under the Bankruptcy Code on December 8, 2008. Complaint ¶ 5; Proposed Amended Complaint ¶ 5.

13.    The Lead Banks structured the LBO knowing that it would add a tremendous amount of debt to Tribune and render it insolvent, ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████

---

[5]    The Guarantors are those subsidiaries of Tribune listed on Exhibit B to the Complaint and the Proposed Amended Complaint.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER



Complaint ¶ 7; Proposed Amended Complaint ¶ 8 (Emphasis added).

14.     The Complaint and the Proposed Amended Complaint lay out, in great detail, the actions of the LBO Banks to target the PHONES Debt ████████████ to proceed with the LBO even though they foresaw that the heavy debt burden the LBO imposed on Tribune would lead to its inevitable bankruptcy.  The Complaint and the Proposed Amended Complaint also lays out, in great detail, the particularized injury suffered by the PHONES as a result of the ill conceived LBO.  See, e.g., Complaint ¶¶ 3 -9, 25, 27, 37-39, 41, 44, 47, 56-64, 72-73, 76, 78, 81-82, 89-90, 92, 95, 97-104, 107-111, 113, 116-117, 120, 122, 136, 146, 148, 162-165, 168-169, 173, 178-181, 185, 187, 189 and 191; Proposed Amended Complaint ¶¶ 3-10, 24-28, 34, 36, 47, 52, 54, 56, 69-77, 85-86, 89, 91, 94-99, 113-114, 116, 119, 121-129, 132-136, 138, 145, 147, 161, 172, 174, 188-191, 198-199, 215, 217, and 219-220.

15.     Moreover, and particularly relevant to the Debtors continued efforts to delay litigation (or formal examination), the Court should be aware that Tribune's directors and officers profited handsomely by their participation in the LBO.  Proposed Amended Complaint ¶¶ 7, 97-103. For example, Dennis J. FitzSimons, then Tribune's President and Chief Executive Officer, sold 498,299 shares of Tribune stock during the LBO, from which he received approximately $17 million in cash proceeds; Donald Grenesko, Tribune's Senior Vice President of Finance and Administration at the time, sold 242,188 shares of Tribune stock during the LBO for which he received approximately $8 million in cash proceeds; Crane Kenney, Tribune's

9

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

Senior Vice President, General Counsel and Secretary at the time, sold 51,669 shares of Tribune stock during the LBO for which he received approximately $1.75 million in cash proceeds; R. Mark Mallory, Tribune's Vice President and Controller at the time, sold 108,234 shares of Tribune stock during the LBO for which he received approximately $3.7 million in cash proceeds; Betsy Holden, a director on the Special Committee, sold 8,661 shares of Tribune stock during the LBO for which she received approximately $294,000 in cash proceeds; and Enrique Hernandez, a director on the Special Committee, sold 11,330 shares of Tribune stock during the LBO for which he received approximately $385,000 in cash proceeds.

16. ████████████████████████████

17. ████████████████████████████

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

18.     For such remuneration, Mr. Zell and the Defendants enticed the Board and senior

management to turn a blind-eye to the ill-conceived transaction, and Mr. Zell thus walked away

with the Company.

## ARGUMENT

I.     **AS INDENTURE TRUSTEE FOR CREDITORS
       WITH REQUISITE INJURY, WILMINGTON TRUST HAS
       INDEPENDENT STANDING TO SEEK EQUITABLE SUBORDINATION.**

19.     The elements of an equitable subordination claim under Bankruptcy Code 510(c)

are now well-settled: "(1) the claimant [creditor] must have engaged in some type of inequitable

misconduct ...; (2) the misconduct must have resulted in injury to the creditors of the bankrupt or

conferred an unfair advantage on the claimant ...; and (3) equitable subordination of the claim

must not be inconsistent with the provisions of the Bankruptcy Act." See Benjamin v Diamond

In re Mobile Steel Co., 563 F.2d 692, 700 (5th Cir. 1977).  The Mobile Steel elements for

equitable subordination have been adopted by the Third Circuit.  See Schubert v. Lucent Tech.

(In re Winstar Communications, Inc.), 554 F.3d 382, 412-13 (3d Cir. 2009) (adopting Mobile

Steel and affirming equitable subordination of one creditors' claim to another creditors' claims

based on fraudulent conduct).

### A.     **Individual Creditors Have Standing to
           Assert Individual Equitable Subordination Claims.**

20.     Neither Section 510(c), nor any other provision of the Bankruptcy Code, specify

the identity of those parties-in-interest who may assert equitable subordination claims.  The

courts, however, have repeatedly recognized the right of individual creditors to assert direct

equitable subordination claims, including courts in the Third Circuit.  See, e.g., Vitreous Steel,

911 F.2d at 1231; Elway, 392 B.R. at 114-115; Algonquin Power Income Fund v. Ridgewood

Heights Inc., (In re Franklin Indus. Complex Inc.), 2007 WL. 25097909 at *7-10 (Bankr.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

N.D.N.Y. August 30, 2007); Bunch v. J.M. Capital Finance Ltd., (In re Hoffinger Indus. Inc.), 327 B.R. 389, 414 (Bankr. E.D. Ark 2005); In re Conley, 159 B.R. 323, 325 (Bankr. D. Id. 1993); Paolella & Sons Inc. v. MNC Commercial Corp., 85 B.R. 965 (Bankr. E.D. Pa. 1988), aff'd in part, rev'd in part on other grounds, 161 B.R. 107 (E.D. Pa. 1993), aff'd, 37 F.3d 1487 (3d Cir. 1994).

21.    Certain courts -- including the Seventh Circuit Court of Appeals -- have held that an individual creditor may bring a direct claim under Section 510(c) where the suing creditor has been only generally harmed by the inequitable conduct. See, e.g., Vitreous Steel, 911 F.2d at 1231; In re J.S.II. LLC, 389 B.R. 570, 580-81 (Bankr. N.D. Ill. 2008); Conley, 159 B.R. at 325; NBD Park Ridge Bank v. SRJ Enters. Inc. (In re SRJ Enters. Inc.), 151 B.R. 189, 196-97 (Bankr. N.D. Ill. 1993); see also Clippard v LWD, Inc. (In re LWD, Inc.), 342 B.R. 514, 520 (Bankr. W.D. Ky. 2006) ("Equitable subordination claims are not property of the bankruptcy estates but rather may be brought by individual creditors on their own behalf to achieve fair distribution of estate assets.")

22.    As the Seventh Circuit recognized in Vitreous Steel, equitable subordination claims, by their very nature, affect various creditors in different ways, and therefore may be brought by an individual aggrieved creditor. There, the Seventh Circuit reversed dismissal of an individual creditor's equitable subordination claim, holding that individual creditors may sue for equitable subordination, even if the wrongful conduct harmed the debtor and all creditors generally. The Seventh Circuit stated:

> However, [the individual creditor] does have standing to seek equitable subordination of the Bank's claim in bankruptcy under § 510(c). Equitable subordination is not a benefit to all unsecured creditors equally, at least where the creditor whose claim is objected to is at least partially unsecured; it is a detriment to the creditor whose debt is subordinated. Thus, when a party seeks

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

> equitable subordination, it is not acting in the interests of all the
> unsecured creditors. While the Trustee may find that it is in the
> best interests of the estate to seek equitable subordination,
> individual creditors have an interest in subordination separate and
> apart from the interests of the estate as a whole. The individual
> creditor should have an opportunity to pursue its separate interest.

911 F.2d at 1231. (Emphasis added).

23.    Other Courts have reaffirmed this standing rule, although in contexts in which

more particularized harm was at issue. See, e.g., Elway, 392 B.R. at 114-15. In Elway, Judge

Shannon ruled that, where an individual creditor suffers a unique injury, that individual creditor

has standing to assert a direct claim for equitable subordination, even if other creditors also have

been injured and the estate holds its own Section 510(c) claim. Id. at 114-115. Judge Shannon

reasoned:

> The Court can envision circumstances in which a trustee has little
> interest in an equitable subordination dispute between two secured
> creditors. It would make little sense to preclude an injured party
> from pursuing unique relief in the hope that a disinterested party
> would zealously pursue it for them.

Id. (Emphasis added). Accordingly, the Court there held:

> An injured secured creditor should be permitted to pursue its
> separate interest apart from the trustee. Accordingly, the Court
> holds that a secured creditor has standing to seek the equitable
> subordination of another secured creditor's claim to the extent that
> it seeks relief for a particularized injury, which differs from the
> injury incurred by all creditors.

Id. at 115 (emphasis added).

24.    Two additional cases relied upon by the Debtors demonstrate that there is no

bright line difference between the general-harm/particularized-harm approaches for equitable

subordination standing, and that the Complaint and the Proposed Amended Complaint here

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

satisfy either approach. See In re Hoffinger Indus., Inc., 327 B.R. at 414 (Motion ¶17); In re

Franklin Indus. Complex, Inc. 2007 WL 2509709 at *7-10 (Motion ¶13).

25.      In Hoffinger, the court reaffirmed the principle recognized in Vitreous Steel:  that

not all creditors benefit from an equitable subordination claim brought by one creditor.  There,

the court held that a creditor who is targeted by other creditors to its economic detriment can

bring an equitable subordination claim, even if there also is a similar equitable subordination

claim that is "property of the estate."  The court stated:

> However, this Court recognizes that there will always be at least
> one or more other creditors the alleged generalized harm has not
> harmed, and the cure will not benefit; specifically, the creditor(s)
> against whom the action is brought.  In this case it is Arrowhead,
> an unsecured creditor, and JM Capital, a secured creditor.  Because
> of this, the Court questions whether there can ever be a "general"
> equitable subordination claim that only belongs to the trustee or
> debtor-in-possession. The specific wording of § 510(c) recognizes
> this in the "all or part of another allowed claim" language.  It
> would be absurd to permit the estate alone to seek to recover
> priorities among specific creditors on all or part of their debt; that
> concept alone defines particularized harm to specific creditors.
> This is perhaps especially so in this instance where the debtor, for
> now obvious reasons, has shown no interest in contesting JM
> Capital's proof of claim.  Bunch has a particularized injury and
> may share that injury with other creditors of this estate, but she
> does not share it with all creditors of this estate.  It is simply not
> logical to suggest that if many are harmed, then no more than one
> of the harmed may pursue the action.  Certainly the debtor could
> have brought an equitable subordination suit, and as such, its claim
> is property of the estate. However, the claims of other parties
> belong to them and are not property of the estate.

Id. at 413-14 (emphasis added).

26.      Similarly, in Franklin Indus., the defendants moved to dismiss an individual

creditor's equitable subordination claim on the grounds that the creditor lacked standing because

it was attempting to sue in a representative capacity without first seeking court authority to do so.

2007 WL 2509709 at *3.  The Franklin Indus. court relied on Vitrous Steel to find that one

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

creditor had standing to bring an equitable subordination claim against another creditor. The court stated that it "views the distinction between a creditor commencing an equitable subordination adversary proceeding for 'its own benefit' as significantly less than a bright line demarcation." Id. at *9.

27.    The Franklin Indus. court relied on Hoffinger to find that, even when the estate also has an equitable subordination claim, a creditor still may assert its own direct 510(c) claim for equitable subordination. The court stated:

> The *Hoffinger Industries* decision goes even further along these lines, and sheds some interesting light on the purportedly clear difference between a claim for equitable subordination brought 'for [the creditor's] own benefit' and one brought and one brought 'in the interest of the other creditors.'
>
> * * *
>
> What the *Hoffinger Industries* court recognized, however, is that . . . 'It would be absurd to permit the estate alone to seek to reorder priorities among specific creditors on all or part of their debt . . . It is simply not logical to suggest that if many are harmed, then no more than one of the harmed may pursue the action.'
>
> * * *
>
> Not only does *Hoffinger Industries* court undermine the amorphous general/particular dichotomy regarding equitable subordination claims, but it highlights the need to abandon such rigid distinctions in cases where, as in the instant case, an insider relationship makes the Debtors reluctant or unable to pursue the subject equitable subordination claim.

Id. at *9 (emphasis added).

28.    As in Franklin Indus., the Debtors here are "reluctant or unable to pursue the subject equitable subordination claim." In large part, that is because the LBO was the brainchild of Mr. Zell, was replete with obviously questionable business decisions, and involved outrageous sums of money being delivered to Board members and senior management. Under the circumstances, the Debtors simply cannot be entrusted to bring equitable subordination claims in

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

which Mr. Zell, his management team, and many of the Directors would be targets. See Official Committee ex rel. Cybergenics Corp. v Chinery, 330 F.3d 548, 573 (3d Cir. 2003) ("One suspects that if [a debtor's] managers can devise an opportunity to avoid bringing a claim that would amount to reputational self-immolation, they will seize it."). In cases, such as this, rigid distinctions between estate and creditor claims serve no useful purposes and, in fact, counter a fair Chapter 11 adjudication. [6]

### B.    Wilmington Trust Holds Claims for Equitable Subordination That Are Particular to Holders of the PHONES.

#### 1.    The Amended Complaint Passes the Supreme Court's Bennett Test for Standing.

29.    Regardless of whether the Court reads the applicable standing precedent to impose on Wilmington Trust a pleadings requirement of only generalized injury or more "particularized" injury, there can be little doubt that the Amended Complaint satisfies either test.

30.    Respecting "particularized injury," the United States Supreme Court defined the concept in Bennett v. Spear, 520 U.S. 154, 167-68 (1997). There, the Court focused on whether a single user of water, derived from a common-pool available to a wide population, has a sufficiently "particularized injury" for standing to sue when the defendant's actions caused a general reduction in the amount of water available to the entire user population. The complained reduction in water arose in the context of a government agency seeking to maintain "minimum

---

[6]    The Debtors misleadingly cite Official Committee of Unsecured Creditors of AppliedTheory Corp. v. Halifax Funding, L.P. (In re AppliedTheory Corp.), 493 F.3d 82 (2d Cir. 2007), (Motion ¶17) for the proposition that a "creditor must demonstrate particularized harm to have standing . . . ." But AppliedTheory only addresses creditors committees, not individual creditors, a distinction made clear by Franklin Indus. The Franklin Indus. Court stated, at *11: "The Court of Appeals [in AppliedTheory] clearly attaches significant importance to the fact that the Committee is not itself a creditor. In fact, . . . an individual creditor, as opposed to a creditors' committee, does have a right to assert a claim against another creditor, and that it may well have sustained an injury for which a direct claim may be available." (emphasis added).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

water levels" on certain lakes. The plaintiffs, users of water from those lakes, objected to the proposed minimum water levels. Id. at 159. In finding that the plaintiffs had plead a sufficiently particularized injury to confer standing, the Supreme Court held that a change in the amount of water available as a whole would affect the amount of water available to each single user. Id. at 168-69. Specifically, the Supreme Court stated, "[g]iven petitioners' allegation that the amount of available water will be reduced and that they will be adversely affected thereby, it is easy to presume specific facts under which petitioners will be injured - for example, the Bureau's distribution of the reduction pro rata among its customers." Id. at 169; see also Cox Com Inc. v. Chafee, 536 F.3d 101, 107 (1st Cir. 2008) (to establish "particularized injury," a party "need not establish a particular damaging injury; they need only show that they were directly affected by the conduct complained of, and therefore have a personal stake in the suit.") (citation omitted).

31.     The "common-pool" scenario at issue in Bennett figuratively but perfectly reflects the "common-pool problem" at issue in virtually every Chapter 11 case and, thus, the Supreme Court's holding is directly on point. See also Hoffinger, 327 B.R. at 414 ("Many of the debtor's actions, alone and in concert with JM Capital, appear to be directed specifically at Bunch in an effort to minimize her distribution. The code permits her to address this harm, and she has done so.").

32.     Here, Wilmington Trust has undeniably met the Bennett particularized injury test for standing. As summarized below, and as detailed in the Complaint and the Proposed Amended Complaint, the PHONES' particularized injury arises from the combined effect of their preexisting position in the Debtors' capital structure prior to the LBO; the manner in which the LBO was structured; the massively increased debt burden imposed upon the Debtors by the LBO; the Debtors' and the LBO Banks' recognition of the likelihood of insolvency caused by

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

the LBO Debt; the specific intent of the Debtors, their management, and the Lead Banks to have

the PHONES bear the unassumed risk of the Debtors' insolvency; the unique harm suffered by

the PHONES as a result; and the singular efficacy of the equitable subordination remedy for the

PHONES in these circumstances.

33.    Particularly relevant allegations include the following:

- The position of the PHONES in the Debtors' capital structure prior to the LBO made the PHONES uniquely susceptible to injury because the PHONES are contractually subordinated to all other funded indebtedness. Complaint ¶ 27; Proposed Amended Complaint ¶ 34.

- Prior to the LBO, Tribune was able to support its existing senior bank debt of $2.8 billion, senior unsecured notes of $1.3 billion, and the PHONES debt of $1.2 billion. Of Tribune's total pre-LBO debt, approximately $4.1 billion was senior in priority to the PHONES. Complaint ¶ 4; Proposed Amended Complaint ¶ 4.

- The LBO drastically changed the Debtors' capital structure and the PHONES' position in it. Following the LBO, the amount of debt senior to the PHONES increased by $7.2 billion to $11.3 billion. Complaint ¶ 5; Proposed Amended Complaint ¶ 5.

- The LBO was structed to ensure the primacy of the LBO Debt by structurally subordinating the non-LBO debt that was senior to the PHONES, and by maintaining the contractual subordination of the PHONES. Complaint ¶ 116; Proposed Amended Complaint ¶ 141.

- The Debtors and Lead Banks created two new subsidiaries, Tribune Broadcasting HoldCo LLC and Tribune Finance LLC. The LBO was funded by increasing Tribune's debt to over $13 billion. Prior to the LBO, Tribune's ratio of indebtedness to EBITDA was 4:8:1. After the LBO, it skyrocketed to 11:8:1. Complaint ¶ 5; Proposed Amended Complaint ¶ 5.

- The Lead Banks imposed the foregoing debt burden upon Tribune knowing that the Company was in a clearly deteriorating industry and that the debt burden would very likely lead to Tribune's insolvency. Complaint ¶¶ 56-77, 78-82; Proposed Amended Complaint ¶¶ 69-90, 91-94.

- Notwithstanding their knowledge that the massive debt burden imposed by the LBO would likely lead to the Debtors' insolvency, the Lead Banks nevertheless plunged ahead ███████████████

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

████████████████████████████████████████████
█████████ Complaint ¶¶ 83-115; Proposed Amended Complaint, at ¶¶ 106-140.

34.    Specifically, documents produced by Tribune and the Lead Banks make clear that they ████████████████████████████████████████ knowingly and wrongfully sought to protect the LBO Banks' interests in the inevitable bankruptcy at the expense of the PHONES. Those documents, establishing the Defendants' wrongful <u>mens</u> <u>rea</u>, include:

- ████████████████████████████████████████
  ████████████████████████████████████████
  ██████████ Proposed Amended Complaint ¶ 105 (emphasis added);

- ████████████████████████████████████████
  ████████████████████████████████████ Proposed Amended Complaint ¶ 127 (emphasis added);

- ████████████████████████████████████ Proposed Amended Complaint ¶ 127 (emphasis added);

- ████████████████████████████████████████
  ████████████████████████████████████████
  ██████████ Complaint ¶ 109; Proposed Amended Complaint ¶ 109 (emphasis added);

- ████████████████████████████████████ Complaint ¶ 110; Proposed Amended Complaint ¶¶ 41, 135.

- ████████████████████████████████████████

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

██████████████████████████████████ Complaint ¶ 89; Proposed Amended Complaint 113.

35.    ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████

Complaint ¶ 7; Proposed Amended Complaint ¶ 48.  (Emphasis added).

36.    The Lead Banks recognized that in the inevitable bankruptcy of Tribune they faced a risk of equitable subordination.  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ (emphasis added) Complaint ¶ 92; Proposed Amended Complaint ¶¶ 91, 116.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

> **2.      The Amended Complaint Also Asserts Non-Bankruptcy**
> **Causes of Action (Counts 3 and 4) for Which Equitable**
> **Subordination Is Most Assuredly an Available Remedy.**

37.      In fact, the Complaint and the Proposed Amended Complaint include allegations and Counts that would surpass an even more exacting "particularized injury" pleading requirement. Wilmington Trust has also plead non-bankruptcy, business tort causes of action against each of the Defendants (Counts 3 and 4), and asks this Court to impose equitable subordination as a remedy for such claims. Specifically, those Counts sound in breach of fiduciary duty (against Citibank for helping to orchestrate the LBO while, at the same time, serving as the Indenture Trustee for the PHONES) and aiding and abetting such duty breaches (against the other Defendants).

38.      It is well beyond dispute that a creditor has standing to seek equitable subordination as a remedy for its non-bankruptcy, business tort causes of action. See, e.g., ABF Capital Management v. Kidder Peabody & Co., Inc. (In re Granite Partners, L.P.), 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997)(creditors have standing to seek equitable subordination in the bankruptcy court as a remedy for an independent, non-bankruptcy cause of action pending before the district court, once the district court adjudicates the lawsuit to judgment). And, that legal conclusion is not altered one iota by the fact that the PHONES purport to be contractually subordinated to the Defendants' claims. In re Best Prods. Co., Inc., 168 B.R. 35, 69-70 (Bankr. S.D.N.Y. 1994) (citing Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 609 (2nd Cir. 1983) (contractual subordination may be disregarded when a creditor has engaged in inequitable conduct that has harmed the otherwise contractually subordinated creditor).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

**C.   The Fact That Other Pre-LBO Creditors**
**Were Also Injured Does Not Mean That Holders of**
**The PHONES Have Not Incurred a Particularized Injury.**

39.    The Court should not countenance the Debtors' attempt to obfuscate the

PHONES' specific injury through selective citation of those paragraphs of the Complaint and the

Proposed Amended Complaint that allege harm not only to the PHONES but other pre-LBO

creditors as well.[7] See Motion ¶¶ 11-12, 18-19. In so doing, the Debtors conspicuously ignore

the myriad of allegations in the Complaint and the Proposed Amended Complaint that lay out in

detail the PHONES unique injury. See Complaint ¶¶ 3-9, 25, 27, 37-39, 41, 44, 47, 56-64, 72-

73, 76, 78, 81-82, 89-90, 92, 95, 97-104, 107-111, 113, 116-117, 120, 122, 136, 146, 148, 162-

165, 168-169, 173, 178-181, 185, 187, 189 and 191; Proposed Amended Complaint ¶¶ 3-10, 34,

36, 47, 52, 54, 69-77, 85-86, 89, 91, 94, 113-114, 116, 119, 121-129, 132-136, 138, 145, 147,

161, 172, 174, 188-191, 198-199, 215, 217, and 219-220.

40.    Moreover, the precedent cited by the Debtors contradicts their own argument.

See e.g., Elway, 392 B.R. at 115 (creditor has standing to seek the equitable subordination of

another creditor's claim "to the extent that it seeks relief for a particularized injury, which differs

from the injury incurred by all creditors"); Hoffinger, 372 B.R. at 414, ("Bunch has a

particularized injury and may share that injury with other creditors . . . ".)

---

[7]     The Complaint and the Proposed Amended Complaint never alleges that the LBO harmed
"all" creditors. Instead, the Debtors (Motion ¶¶ 18-19) intentionally conflate the
allegations that the conduct of the Defendants harmed the PHONES and other pre-LBO
creditors (Complaint ¶¶ 148, 163-165; Proposed Amended Complaint ¶¶ 174, 189-191)
with the allegations that the LBO Bank debt is "structurally superior to all other debt of
Tribune, including that of the PHONES." Complaint ¶ 162; Proposed Amended
Complaint ¶ 188. Obviously, the harm caused by the LBO to certain pre-LBO creditors
is a far different concept than the capital structure of the Debtors, and the Debtors'
attempt to confuse the two should not be countenanced.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

41.    The PHONES are indeed a unique class within the Debtors' capital structure. The holders of the PHONES debt are the only contractually subordinated pre-LBO debt. The other pre-LBO debt holders have varying security and/or guarantees that the PHONES do not. Moreover, ███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████, establishes that the harm to the PHONES was distinctly different from the injury suffered by other pre-LBO creditors. See Complaint ¶¶ 7, 89, 90, 92, 109-111; Proposed Amended Complaint ¶¶ 8, 113-114, 134-136.

42.    Further, that Wilmington Trust's allegations of inequitable conduct and equitable subordination may also give rise to claims by other creditors is not determinative; different parties can simultaneously pursue their claims if they have requisite standing. Indeed, an individual creditor retains standing to bring its own direct Section 510(c) claim even when a trustee (or a debtor) subsequently asserts a Section 510(c) claim on behalf of the estate to remedy an injury suffered by all creditors. See, e.g., Paolella, 85 B.R. at 973-4.[8]

43.    In Paolella, plaintiff creditors brought an adversary proceeding against other creditors seeking to equitably subordinate the defendants' claims. Id. at 967-69. The trustee in Paolella subsequently brought a claim for equitable subordination seeking to equitably subordinate the claim of the same creditors for the benefit of all creditors. Defendants challenged the plaintiffs' right to assert an equitable subordination claim given that the trustee asserted the estate's claims based on the same wrongful conduct. In holding that the plaintiff

---

[8]    In Paolella, the District Court, 116 B.R. 107 (E.D. Pa. 1993) reversed the Bankruptcy Court's finding that the specified conduct was sufficiently inequitable to support an equitable subordination claim, but did not disturb the ruling that the plaintiffs had standing to assert the claim.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

creditors could continue to pursue their own direct equitable subordination claim, the <u>Paolella</u>

court stated:

> Although both the trustee and the plaintiff based their claims upon
> § 510(c), the relief sought by each complaint is quite different. The
> trustee seeks to subordinate the MNC claim to all unsecured claims
> contending that all creditors have been harmed by MNC; plaintiff
> seeks to elevate their claims above that of MNC with MNC's claim
> remaining ahead of other unsecured claims. <u>If the plaintiffs prevail,
> only they would benefit from the subordination, which would
> explain the trustee's lack of interest in bringing such a suit.</u> If the
> trustee prevails, all unsecured creditors, including but not limited
> to plaintiffs, would benefit, but plaintiffs would benefit to a lesser
> degree because they would be forced to share the estate equally
> with other creditors.

<u>Id</u>. at 973. (emphasis added). The Court continued:

> Defendants have sought dismissal of plaintiffs' proceedings only
> for lack of subject matter jurisdiction...defendants have not
> referred to any decision which limits the relief provided by
> § 510(c) to only the trustee...decisions have permitted the relief
> sought by plaintiffs-i.e. a creditor's claim is subordinated only to
> that of a particular creditor. ... <u>[no authority] gives the trustee the
> power to divest a creditor of a remedy provided by the bankruptcy
> code which is unique to that creditor.</u>

<u>Id</u>. at 973 (internal citations omitted) (emphasis added).

44.    As in <u>Paolella</u>, the Debtors here have cited no authority, and there is none, to

divest Wilmington Trust of a remedy provided by the Bankruptcy Code which is unique to the

PHONES.

**D.    The Existence of an Estate Fraudulent Transfer
Claim Based Upon The Same Nucleus of Operative
Fact Does Not Deprive Wilmington Trust of the
<u>Right to Bring Direct Equitable Subordination Claims.</u>**

45.    In a failed feat of alchemy, the Debtors unsuccessfully seek to convert the

PHONES' equitable subordination claim into a fraudulent conveyance claim on the grounds that

the claims are based, in part, on the same nucleus of operative fact. Motion ¶¶ 7-15. An

24

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

equitable subordination claim is a separate and distinct claim under Bankruptcy Code Section 510(c), and can be pursued even when there is a simultaneous estate fraudulent conveyance claim.[9] This principle was recognized by the Seventh Circuit in <u>Vitreous Steel</u>. There, the Seventh Circuit held that an individual creditor had standing to pursue its direct claim for equitable subordination even though a trustee was simultaneously prosecuting estate avoidance claims for preferential transfer and fraudulent conveyance, *and* prosecuting a claim for equitable subordination pursuant to Section 510(c). 911 F.2d at 1231, 1235-37.

46.      Similarly, in <u>Conley</u>, the court declined to grant an individual creditor derivative standing to pursue estate fraudulent transfer and preference avoidance actions. 159 B.R. 323. Nevertheless, on the same operative facts, the court held that the creditor was entitled to proceed with its own direct claim for equitable subordination, without seeking court permission.

47.      <u>PW Enterprises, Inc. v. North Dakota (In re Racing Services, Inc.)</u>, 363 B.R. 911, 914, 916-17 (B.A.P. 8th Cir. 2007), <u>rev'd on other grounds</u>, 540 F.3d 892 (8th Cir. 2008), <u>remanded to</u> 2008 WL 4831479 (Bankr. D.N.D. Nov. 5, 2008), likewise is instructive on this issue. There, the Bankruptcy Appellate Panel concluded that a creditor's failure to seek court permission prior to filing avoidance claims deprived that creditor of derivative standing. However, the court also concluded that the individual creditor's claims for disallowance and equitable subordination pursuant to Bankruptcy Code Sections 502 and 510(c) did not require prior court approval and therefore could advance. 363 B.R. at 917. The Eighth Circuit reversed

---

[9]      Indeed, the standards for fraudulent conveyance and equitable subordination are different as a matter of law. This was illustrated in a recent decision by Judge Shannon in <u>Elway</u> rejecting fraudulent conveyance claims on the merits while allowing the equitable subordination claim, based on the same nucleus of facts, to survive. <u>See</u> In re Elrod Hold. Corp., 421 B.R. 700 (Bankr. D. Del. 2010) (BLS) (allegations of a scheme to loot the Debtor of assets can support an equitable subordination claim even if the movant cannot allege sufficient facts to satisfy Sections 544 and 548 or state fraudulent conveyance law).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

in part, 540 F.3d at 904-05, concluding that the creditor could obtain retroactive derivative standing to prosecute its avoidance and recovery actions, and, on remand, the bankruptcy court granted such standing. 2008 WL 4831479 at *3. In the end, the creditor was able to prosecute avoidance actions together with its claims for equitable subordination and objection to claims. Notably, had the bankruptcy court not granted derivative standing on remand (an option not foreclosed by the appellate panel's decision), nothing in any of the Racing Services opinions would have prevented the creditor from proceeding solely with its disallowance and equitable subordination claims as originally directed by the panel, just because the same operative facts also supported avoidance claims.

48. Here, Wilmington Trust has standing to plead a claim for equitable subordination that is separate and distinct from any estate avoidance or other claim arising from the same nucleus of fact. The same overlapping conduct may ultimately support several causes of action by the estates or by creditors. The multiplicity of claims merely demonstrates the pervasive effect of the Defendants' inequitable conduct; it does not transform or conflate Wilmington Trust's distinct claim for equitable subordination into one that can only be brought by the Debtors or derivatively. And nothing the Debtors have cited holds otherwise.

E.   **Wilmington Trust Did Not Need
Court Approval To File Its Complaint.**

49. The Debtors further argue that Wilmington Trust should have sought, but did not seek, permission from the Court before filing its Complaint, because it is a member of the Committee. (Motion ¶12). But, Wilmington Trust did not bring its equitable subordination claim as a member of the Committee, or on behalf of the Committee. It brought its action as Successor Indenture Trustee for the PHONES, asserting claims that are personal to Wilmington Trust, as Indenture Trustee for the PHONES. In fact, cases cited by the Debtors make clear that

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

an individual creditor, such as Wilmington Trust, has the right to assert its direct claims for equitable subordination without seeking prior Court approval. See Franklin Indus., 2007 WL 2509709 at *10, *13, *16 (individual creditor can maintain direct claim for equitable subordination without prior court approval) (Motion ¶ 13); AppliedTheory, 493 F.3d at 86-87 (distinguishing the need of a statutory committee, which cannot show injury distinct from the estate's to seek permission to bring an equitable subordination claim, from that of an individual creditor who can demonstrate a unique interest and is not required to seek court permission to bring equitable subordination claims); see also Racing Services, 363 B.R. at 917 ("[t]he Plaintiff's motion for authority to prosecute the Complaint and the Proposed Amended Complaint was unnecessary as to the counts objecting to the claim and seeking its subordination"); Conley, 159 B.R. at 325 ("Unlike avoidance actions brought by a creditor, there does not appear to be any requirement for court approval prior to the bringing of an equitable subordination claim") (citation omitted).

## II.  AS A PARTY IN INTEREST, WILMINGTON TRUST IS ENTITLED TO SEEK DISALLOWANCE OF CLAIMS UNDER BANKRUPTCY CODE SECTION 502.

50.    In addition to its clear standing to seek equitable subordination, Wilmington Trust also has standing to invoke the right bestowed on all parties-in-interest to object to a claim of another creditor, and did not violate the automatic stay by doing so.  Bankruptcy Code Section 502(a) states that "[a] claim or interest is deemed allowed, unless a party in interest … objects." A "party in interest" expressly includes "any indenture trustee." See 11 U.S.C. 1109(b). Thus, Section 502(a) affords Wilmington Trust, as Successor Indenture Trustee, standing to object to the LBO Banks claims. See In re Associated Vintage Group Inc., 283 B.R. 549, 560 n. 8 (B.A.P.

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

9th Cir. 2002) ("[u]nsecured creditors have standing to object to claims where a successful objection would increase the fund available for unsecured creditors.").

51.    Wilmington Trust's claims objection is based on a host of wrongful conduct by the LBO Banks.  For example, Wilmington Trust invokes the equitable principle of "unclean hands" as one ground to disallow the claims of the LBO Banks.  Complaint ¶ 173; Proposed Amended Complaint ¶ 203.  Contrary to the Debtors' argument that the alleged "unclean" behavior must be "a disguised fraudulent conveyance" claim (Motion ¶ 11), unclean hands may result from any objectionable conduct related to the claims to which the objection is directed.  See In re New Valley Corp, 181 F.3d 517, 523 (3d Cir 1999) (in the Third Circuit, the doctrine of unclean hands bars recovery when the fraudulent conduct is directly related to the relief sought by a party in litigation), cert. denied, 528 U.S. 1138 (2000); Food Lion Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 228 (4th Cir. 2000) ("[u]nclean hands bars a party from receiving equitable relief because of that party's own inequitable conduct.")

52.    Moreover, the doctrine of unclean hands has inherent application in any judicial process and may be invoked by any party without any specific showing of standing.  See e.g., Art Metal Works Inc. v. Abraham & Straus Inc., 70 F.2d 641, 646 (2d Cir. 1934) (L. Hand, J., dissenting), cert. denied, 293 U.S. 596 (1934), dissent adopted as opinion of the court on rehearing, 107 F.2d 944 (2d Cir. 1939) (per curiam), cert. denied, 308 U.S. 621 (1939).

53.    Here, the same operative facts that support the application of the unclean hands doctrine also support Wilmington Trust's equitable subordination claims under Section 510(c).  Those same operative facts form the basis for Wilmington Trusts' objections to the LBO Banks' claims under Section 502.  See Racing Services, 363 B.R. at 917 (creditor can proceed under both Sections 502(a) and 510(c)).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

54.    Once Wilmington Trust proves the inequitable conduct described in the Complaint and the Proposed Amended Complaint, and receives a favorable judicial determination, Section 502(d) will automatically bar any distribution to the LBO Banks. Section 502(d) is automatic and broad: "… the court *shall disallow* any claim of any entity from which property is *recoverable* under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer *avoidable* under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724 (a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title …" (emphasis added).

55.    Congress' intent in this section is clear:  to forbid inequitable results by blocking the recovery of individuals who have committed wrongdoing.  The language is broad, covering transfers that are *avoidable*; there is no requirement that a transfer actually be *avoided*.  See In re Red Dot Scenic, Inc., 313 B.R. 181, 186 (Bankr. S.D.N.Y. 2004) (noting that Section 502(d) only requires the allegation of an avoidable transfer from claim disallowance, not the entry of a judgment).

56.    The Debtors attempt to avoid the clear scope of Section 502 through misplaced reliance upon United Jersey Bank v. Morgan Guaranty Trust Co. (In re Prime Motor Inns, Inc.), 135 B.R. 917 (Bankr. S.D. Fla 1992).  Motion at ¶13.  In doing so, the Debtors urge an interpretation of Section 502(d) that contravenes Congressional intent, equity and due process. Prime Motor, however, did not involve a creditor's rights to object as a party in interest under Section 502(a), as Wilmington Trust does here.  Instead, the creditor in Prime Motor sought relief under Section 502(d) only, not Section 510(c), and failed to show that the claims objected to were created by inequitable conduct.  Id. at 920.  Here, Wilmington Trust will carry its burden

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

demonstrating inequitable conduct, equitable subordination, and unclean hands before Section

502(d) is automatically applied by the Court.  Surely, Congress could not have intended that

Section 502(d) would act to strip an injured creditor of its common law and statutory rights under

other sections of the Bankruptcy Code.[10]  Section 502(d) is plainly written to punish wrongdoers,

not to compound injuries to creditors by protecting wrongdoers, and any contrary interpretation

must be rejected.

III.    **THE COURT'S FEBRUARY 18, 2010 RULING
DID NOT STAY THE FILING OF ADVERSARY
PROCEEDINGS, AND THE FILING OF THE COMPLAINT
(AND THE PROPOSED AMENDED COMPLAINT) IS
OTHERWISE IN ACCORDANCE WITH THE COURT'S RULINGS.**

57.    Debtors' argument that Wilmington Trust violated the Court's directive in filing

the PHONES Complaint is simply inaccurate: there was no such directive.  The transcript portion

quoted in the Debtors' Motion is taken out of context from a colloquy between this Court and

counsel for the Committee concerning the Committee's Standing Motion, not any motion by

Wilmington Trust.  As shown above, Wilmington Trust did not need to seek Court approval to

file its direct claim for equitable subordination under 510(c).

58.    Similarly, Debtors' argument that the PHONES Complaint seeks "relief that [is]

already being considered by this Court" is wrong.  Motion ¶ 19.  The Committee's proposed

complaint, although based on many of the same operative facts, seeks relief for all creditors, but

the Court has not yet granted the Committee's Standing Motion and may decline to do.  The

relief sought in the Complaint seeks relief only applicable to Wilmington Trust's direct claims as

---

[10]    Wilmington Trust also does not forfeit its right to object to a claim under Section 502(a)
simply because the inequitable conduct at issue may also give rise to an estate avoidance
action under other sections of the Bankruptcy Code.  Cf. Paolella, 85 B.R. at 973-4 (a
creditor's right under the Bankruptcy Code to prosecute its individual claim is not
divested by the trustee bringing claims on behalf of the estate).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

Successor Indenture Trustee for the PHONES, and not another's claim. And that relief is not requested by Wilmington Trust's Examiner Motion.

59.    Nor can there be any valid suggestion that the filing of the Complaint and the Proposed Amended Complaint is an end-run around the Court. When asked, counsel for Wilmington Trust made clear its intention to file an equitable subordination complaint. In discussing concerns at the February 18, 2010 hearing that the Creditors' Committee was not aggressively pursuing valuable claims of the estate (see generally, Examiner Motion), counsel for Wilmington Trust stated that litigation could not be avoided absent a settlement with Wilmington Trust:

> We'll fight that litigation whether it be in an 1123 context of a plan or 9019 settlement or an attempted settlement of our equitable subordination complaints. You can only capture the tiger in a paper bag for so long.

February 18, 2010 Hearing Transcript, at 24:21-24 (emphasis added).

60.    Although counsel mentioned "equitable subordination complaints," the Debtors did not seek to stay the filing of any such complaint. And, if the Court wanted to stay Wilmington Trust from pursuing an equitable subordination complaint, it could have done so, but did not.

61.    The Debtors can hardly suggest with a straight face that the Complaint and the Proposed Amended Complaint will upset settlement negotiations with the PHONES. While the contents of the "settlement conference" that Debtors reference in their Motion are confidential, it is sufficient to say that no meaningful dialogue emanated from that meeting, and Wilmington Trust determined, almost immediately thereafter, that filing the Complaint was necessary to protect holders of the PHONES. The Debtors and LBO Banks may have the right to leave the PHONES out of meaningful settlement discussions. But, the PHONES also have the right to

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

pursue appropriate legal recourse before the Court. Wilmington Trust again respectfully submits (as it did in the Examiner Motion) that the best way to ensure the possibility of a meaningful settlement dialogue - and thus, a more efficient and cost-effective resolution of the case -- is not to extend any further the preceding 16-months of non-action in these cases. Rather, the best way to move forward is to permit the holders of unique claims (the PHONES) to assert those claims, compel the Debtors and the LBO Banks to work towards settling them, or have them adjudicated in an open and fair way.

## IV.   BY FILING ITS COMPLAINT WITH THE BANKRUPTCY COURT, WILMINGTON TRUST DID NOT VIOLATE THE AUTOMATIC STAY.

62.   Wilmington Trust has standing to bring its direct claims for equitable subordination; thus, the automatic stay is not implicated at all. See, e.g., In re J.S. II, L.L.C., 389 B.R. 570 (Bankr. N.D. Ill. 2008) (because creditor had standing to assert its individual equitable subordination claim, it did not violate the automatic stay by prosecuting its claim).

63.   Even if the Court were to rule that Wilmington Trust somehow asserted estate causes of action in the Complaint and Proposed Amended Complaint, the automatic stay is not necessarily implicated. Civic Center Square, Inc. v. Ford (In re Roxford Foods, Inc.), 12 F.3d 875, 878 (9th Cir. 1993) (". . . the automatic stay [is] inapplicable to a suit commended in the same court where the bankruptcy was pending."). This makes sense: the purpose of the automatic stay is to prevent a chaotic and uncontrolled scramble for a debtor's assets in a variety of uncoordinated proceedings in different courts. See Matter of Rimsat Ltd., 98 F.3d 956, 961 (7th Cir. 1996). Indeed, the purpose of the very Subsection relied upon by the Debtors to support of its Motion, Section 362(a)(3), is to "prevent dismemberment of the estate" and to ensure that the bankruptcy proceeds in an "orderly fashion." H.R. Rep. No. 95-595, at 340-2 (1977).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

64.     Not surprisingly, not one case cited by Debtors' supports their assertion that a creditor filing an individual equitable subordination complaint violates the automatic stay if it is found not to have standing. Instead, in all of the cases cited by Debtors where a creditor was found not to have standing, the courts have denied the creditor authorization to prosecute the claims or simply dismissed the complaint. See, e.g., Prime Motor, 135 B.R. at 917 (Bankr. S.D. Fla. 1992) (court dismissed creditor's adversary complaint because it lacked standing to pursue estate action); Int'l Union v. Ludwig Honold Mfg. Co. (In re Ludwig Honold Mfg. Co.), 30 B.R. 790 (Bankr. E.D. Pa. 1983) (same); Variable-Parameter Fixture Dev. Corp. v. Comerica Bank-Calif. (In re Morpheus Lights, Inc.), 228 B.R. 449 (Bankr. N.D. Cal 1998) (same).[11]

65.     Here, the remedy for lack of standing is dismissal of the two Counts at issue in the Motion, not a finding of a stay violation. Of course, since Wilmington Trust unquestionably has standing to pursue the equitable subordination and disallowance claims asserted in the Complaint and the Proposed Amended Complaint, the issue is moot.[12]

---

[11]     In a footnote (Motion ¶ 15), the Debtors cite to Acands, Inc. v. Travelers Casualty & Surety Co., 435 F.3d 252, 261 (3d Cir. 2006), which held that an arbitration panel's decision and award -- made subsequent to the parties arguments, but after the debtor filed for bankruptcy -- was void *ab initio* because it was entered in violation of the automatic stay. Because the resolution of that case focused solely on the timing of the panel's decision and award, and not on the actions of any party, the conclusion that the stay was violated has no relevance to the issues here.

[12]     Further, under Third Circuit precedent, Wilmington Trust's actions -- made on the basis of persuasive legal authority -- did not constitute a "willful" violation of the automatic stay even if the stay was violated, which it was not. See, e.g., Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.3d 1065, 1088 (3d Cir. 1992) (holding that if a party asserted a cause of action believing it did not violate the automatic stay and "had persuasive legal authority which supported [their] position" that party did not willfully violate the stay).

SUBMITTED UNDER SEAL
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

## CONCLUSION

**WHEREFORE,** For the foregoing reasons, Wilmington Trust respectfully requests the Court to deny with prejudice all relief requested in Motion; and (ii) provide Wilmington Trust such other and further relief as is just and proper..

Dated: April 5, 2010

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**

By:       */s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esq. (Del. Bar No. 4204)
Jennifer R. Hoover, Esq. (Del. Bar No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone:  (302) 442-7010
Facsimile: (302) 442-7012
Email: rlemisch@beneschlaw.com
Email: jhoover@beneschlaw.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
William M. Dolan III, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone  (212) 209-4800
Facsimile:  (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: wdolan@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as
Successor Indenture Trustee for the $1.2 Billion
Exchangeable Subordinated Debentures Due 2029,
Generally Referred to as the PHONES*

8250324

34