# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |

**Hearing Date: April 13, 2010 at 10:00 a.m. (ET)**
**Objections Due:  April 5, 2010 at 4:00 p.m. (ET)**
**(Extended for Committee to April 7, 2010)**

**Ref. Nos. 3715, 3724 & 3759**

## STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN CONNECTION WITH (A) MOTION OF JPMORGAN CHASE BANK, N.A. FOR SANCTIONS AGAINST WILMINGTON TRUST COMPANY FOR IMPROPER DISCLOSURE OF CONFIDENTIAL INFORMATION IN VIOLATION OF COURT ORDER, AND (B) MOTION OF THE DEBTORS FOR AN ORDER (I) DETERMINING THAT WILMINGTON TRUST COMPANY HAS VIOLATED AUTOMATIC STAY, (II) REQUIRING WILMINGTON TRUST COMPANY TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT, AND (III) HALTING ALL PROCEEDINGS WITH RESPECT TO THE COMPLAINT

The Official Committee of Unsecured Creditors (the "Committee") of Tribune

Company (the "Company") and its various debtor-subsidiaries (collectively, the "Debtors"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

{698.001-W0007014.}

respectfully submits this Statement of the Official Committee of Unsecured Creditors in Connection with (a) Motion of JPMorgan Chase Bank, N.A. for Sanctions against Wilmington Trust Company for Improper Disclosure of Confidential Information in Violation of Court Order, and (b) Motion of the Debtors for an Order (I) Determining that Wilmington Trust Company Has Violated Automatic Stay, (II) Requiring Wilmington Trust Company to Show Cause Why It Should Not Be Held in Contempt of Court, and (III) Halting All Proceedings with Respect to the Complaint, and respectfully represents as follows:

## **PRELIMINARY STATEMENT**

On February 1, 2010, the Committee sought leave and standing to file a complaint (the "Committee's Complaint")[2] to assert and prosecute various claims and counterclaims of the Debtors' estates.    Wilmington Trust, after having previously filed a motion seeking the appointment of an examiner, filed a cross-motion to intervene in the Committee's standing motion.  The hearings to consider the Committee's standing motion and Wilmington Trust's examiner and intervention motions were scheduled for February 18, 2010.

During the February 18 hearings, this Court deferred ruling on the Committee's standing motion and Wilmington Trust's examiner and intervention motions and granted the Debtors an additional thirty day extension of exclusivity to enable the parties to continue negotiations towards a consensual resolution of all matters without the "collateral chatter" of the proposed litigation.   (Tr. 22:11-18).   Despite the Court's efforts to ensure a full and fair opportunity for the parties to negotiate a consensual plan undistracted by pending litigation,

---

[2] The Committee's Complaint was filed under seal in compliance with this Court's Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Negotiation Protections Pursuant to 11 U.S.C. § 105(a) (the "Depository Order").

{698.001-W0007014.}

Wilmington Trust's counsel filed the complaint thereby provoking the type of collateral distraction that this Court had so painstakingly sought to avoid.

Not only has Wilmington Trust attempted to disrupt the negotiations for its own advantage in blatant disregard of this Court's efforts to curtail collateral distraction, Wilmington Trust's counsel has compounded the damage by its intentional and/or reckless disregard of protected information. Like JP Morgan, the Committee finds Wilmington Trust's counsel's protestations of ignorance and innocence lacking in credibility and sincerity. The Committee can only conclude that Wilmington Trust's counsel's reckless indifference to the disclosure of sensitive and protected information was motivated by a desire to scuttle the negotiations and improve Wilmington Trust's negotiating leverage.

In addition, Counts I and II of Wilmington Trust's complaint assert fraudulent transfer claims that rightfully belong to the Debtors' estates, notwithstanding Wilmington Trust's counsel's feeble efforts to denominate them as equitable subordination and disallowance claims. Accordingly, Wilmington Trust, by attempting to assert control over estate property, has violated the automatic stay, and subjected itself to contempt citation. Further, Wilmington Trust has improperly sought in its final count to appropriate for its sole benefit estate property and distributions that belong to all creditors represented by the Committee.

The Committee concurs with the arguments made by JP Morgan and the Debtors in their respective motions and supports the requests for sanctions and the entry of an order finding that Wilmington Trust has violated the automatic stay. Those arguments include, among others, that (a) counts I and II of Wilmington Trust's complaint are avoidance actions masquerading as equitable subordination and disallowance counts; (b) Wilmington Trust, by asserting such

avoidance causes of action, has violated the automatic stay; (c) even if counts I and II of Wilmington Trust's complaint are construed as seeking equitable subordination, Wilmington Trust does not have standing to seek such relief because it cannot allege harm that is particular to it; (d) Wilmington Trust's alleged "redactions" were performed, at best, with reckless disregard for the possible disclosure of protected information; and (e) Wilmington Trust's filing is a transparent attempt to sabotage the plan and settlement negotiations that this Court has so painstakingly sought to foster.[3]

Wilmington Trust's actions, through its counsel, have disadvantaged the Committee and its constituency. This conduct, including (a) the attempted usurpation of estate remedies, (b) counsel's breach of Committee confidentiality; and (c) counsel's misappropriation of Committee work product, warrants the relief sought by JP Morgan and the Debtors.

### THE MISCONDUCT OF WILMINGTON TRUST AND ITS COUNSEL JUSTIFIES THE RELIEF REQUESTED

Wilmington Trust, as a member of the Committee, owes certain duties to the Committee, individual Committee members, and all creditors whose interests are represented by the Committee. By filing its adversary proceeding complaint, Wilmington Trust breached its duties in at least three ways. First, Wilmington Trust seeks to assert, for itself, remedies that belong to all creditors. Second, Wilmington Trust's counsel has publicly disclosed confidential Committee information by filing a complaint that in large part copies the Committee's Complaint, a complaint that was intentionally filed under seal. Third, Wilmington Trust's

---

[3] In response to the Debtors' motion, Wilmington Trust filed an objection and a "proposed amended complaint." Because it is the Committee's intention through this pleading to inform the Court as to the Committee's perspectives on Wilmington Trust's conduct, the Committee refrains herein from refuting Wilmington Trust's arguments in its objection. Suffice it to say that the Committee's Statement is in no way rendered less relevant in the face of Wilmington Trust's objection and proposed amended complaint.

{698.001-W0007014.}

counsel has misappropriated the Committee's work product to advance Wilmington Trust's parochial interests.

### 1. Wilmington Trust's Complaint Seeks Improperly to Secure for Wilmington Trust that which Must Inure to the Benefit of All Creditors.

In its final count,[4] Wilmington Trust seeks the imposition of a constructive trust "on all estate distributions for the benefit of holders of the PHONES until the PHONES are paid in full." (emphasis added).[5] This request can only be interpreted as an unprecedented and inappropriate attempt by Wilmington Trust to hijack the reorganization process for its singular benefit.

Leaving aside for the moment the automatic stay implications of Wilmington Trust's gambit to divert estate assets and distributions for its sole benefit, Wilmington Trust has breached its duties through the commencement and threatened prosecution of litigation that would have a substantial negative impact on distributions to creditors. See, e.g., In re FAS Mart Convenience Stores, Inc., 265 B.R. 427 (Bankr. E.D. Va. 2001).

In FAS Mart, the creditors' committee filed a motion to strike the U.S. Trustee's appointment of an additional creditor to the committee. The additional member was at the time of its appointment to the committee adverse to the debtor and committee on several matters and was pursuing litigation in the case that, if successful, would have had a "substantial negative impact on the prospects of a distribution to unsecured creditors." Id. at 433.

---

[4] Wilmington Trust's fifth and final count follows count four and is incorrectly labeled "Count IV."

[5] In its proposed amended complaint, Wilmington Trust has limited its request for a constructive trust to "the claims, rights, or other legal interests of the defendants in and to Tribune and/or any of its subsidiaries or property." (emphasis added). Wilmington Trust, however, continues to insist that such a constructive trust be imposed for its sole exclusive benefit -- to the exclusion of all other creditors.

The FAS Mart court, after observing that members of creditors' committees owe fiduciary duties of undivided loyalty and impartial service to all creditors represented by the committee, distinguished between disagreements over strategic objectives on the one hand, and more significant and pervasive conflicts that disable a creditor from suitable execution of its fiduciaries duties. In the latter case, the court believed that the creditor has an impermissible conflict such that its removal from the committee was warranted. Because the newly appointed committee member was seeking to establish its secured status and that effort might significantly undercut the committee's efforts on behalf of all creditors, the FAS Mart court granted the committee's motion to strike the appointment.

Wilmington Trust, in seeking the imposition of a constructive trust for its sole benefit, is seeking relief that would negatively impact the rights of all other creditors of these estates. Wilmington Trust's efforts clearly run afoul of its duties as a member of the Creditors' Committee and further justifies the relief sought by JP Morgan and the Debtors.

### 2. *Wilmington Trust Breached its Duty to the Committee and its Members by Publicly Disclosing Significant Portions of the Committee's Complaint that was Filed under Seal by the Committee.*

The Committee does not question Wilmington Trust's right to vigorously and zealously protect and preserve the rights of its constituency. Indeed, the Committee's Bylaws provide that committee members may exercise or seek to enforce or protect their respective rights as an individual creditor or other party in interest in the Debtors' cases. This right is, however, expressly made subject to "confidentiality and related issues."

{698.001-W0007014.}

The Committee's Bylaws further provide, in pertinent part, as follows:

> Each Member of the Committee is aware of the fiduciary duty that it has to unsecured creditors of the Debtors and agrees that it will act in accordance with such duty in dealing with confidential information.

* * *

> Confidential information shall mean all matters discussed at Committee meetings . . . any information or material (whether written, electronic or oral) distributed to a Member or its representatives by or through the Committee . . . in each instance, that is not generally available to the public.[6]

Wilmington Trust's counsel obtained the Committee's Complaint by virtue of Wilmington Trust's position on the Committee. The Committee's Complaint was filed under seal with this Court and was not available to the public. The content of the Committee's Complaint is "confidential information" within the meaning of that term in the Committee's Bylaws. Accordingly, Wilmington Trust and its counsel were bound by the Committee's Bylaws not to reveal to anyone outside the Committee the contents of the Committee's Complaint.

The redacted version of Wilmington Trust's complaint that was filed publicly with this Court reveals substantial and material portions of the Committee's Complaint, in direct violation of Wilmington Trust's duty of confidentiality as provided in the Bylaws. Wilmington Trust's counsel's willful violation is also a breach of duty to the Committee and its members.

### 3. Wilmington Trust, by Filing a Complaint that is a Mirror Image of the Committee's Complaint, Has Improperly Misappropriated Committee Work Product for Its Own Parochial Purposes.

Wilmington Trust breached its obligations to other Committee members, as well as to the unsecured creditor class as a whole, by misappropriating confidential Committee work

---

[6] Bylaws of Official Committee of Unsecured Creditors of Tribune Company, et al., Case No. 08-13141 (KJC); Article VII, Sections A and B. Exceptions to the definition of "confidential information" are not germane to the issues addressed in this Statement and are not discussed here.

7

{698.001-W0007014.}

product and applying the fruits of the Committee's labor to seek essentially the same relief in direct competition with the Committee. The Bankruptcy Code imposes "a fiduciary duty on the part of members of a creditor's committee, such as the present Committee, toward their constituent members." Westmoreland Human Opportunities v. Walsh, 246 F.3d 233, 256 (3d Cir. 2001) (citing In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)).

As a member of the Committee, Wilmington Trust and its counsel have been privy to the most confidential and privileged attorney-client communications and attorney work product relevant to the Committee's examination of the Leveraged ESOP Transaction. Wilmington Trust's counsel has attended virtually every Committee meeting at which the Committee's counsel and other professionals have discussed highly confidential and privileged documents, relevant facts, possible causes of action, the various targets of estate and third-party actions, potential defenses, counterarguments, strategic considerations, possible recoveries and other confidential and privileged information relevant to the Committee's efforts to secure the best possible outcome for its constituency. Wilmington Trust's counsel has had access to all of the Committee's written reports, presentations, summaries, notes and recommendations of counsel and the Committee's other professionals relating to the Leveraged ESOP Transaction.

Despite the Third Circuit's absolute prohibition against a creditor using its position on the Committee to further its own interest at the expense of other Committee members, Wilmington Trust's counsel has now launched Wilmington Trust on its own litigation path -- fortified with the Committee's substantial work product -- in direct competition with the Committee. And Wilmington Trust's counsel did so without the courtesy of full and frank discussion or advance notice to the Committee or its professionals.

{698.001-W0007014.}

Perhaps the best evidence of Wilmington Trust's counsel's improper usurpation of the Committee's work product for its own benefit is counsel's shameless copying almost *verbatim* of entire sections of the Committee's Complaint. The Committee's Complaint has 162 numbered paragraphs and approximately 11,800 words. Ninety one paragraphs (about 8,000 words) from the Committee's Complaint were copied virtually *verbatim* into Wilmington Trust's complaint.

There are four sections of the Committee's Complaint that Wilmington Trust did not "borrow." Excluding those 38 paragraphs, 91 of 124 paragraphs (and approximately 8,000 of 10,500 words) were copied directly from the Committee's Complaint and pasted into Wilmington Trust's complaint. Wilmington Trust's counsel cannot seriously contend that the complaint reflects its independent work product. Attached hereto as Exhibit "A" is a computer generated "redline" copy of two non-contiguous pages of both complaints that exemplifies how closely Wilmington Trust's complaint mirrors the Committee's Complaint.

Wilmington Trust and its counsel only had access to the Committee's Complaint by virtue of Wilmington Trust's seat on the Committee. Rather than expend the time and energy to draft its own complaint, counsel merely copied the Committee's effort. By virtue of Wilmington Trust's position on the Committee, its counsel was able to copy-and-paste Wilmington Trust into the courthouse. In doing so, Wilmington Trust's counsel demonstrated blatant disregard for the strategy of "negotiation before litigation" suggested by this Court as the best method for maximizing value for the unsecured creditor class as a whole. See Westmoreland Human Opportunities 246 F.3d at 256 ("A committee member violates its fiduciary duty by pursuing a course of action that furthers its self-interest to the potential detriment of fellow committee members.").

{698.001-W0007014.}

Although members of the Committee are required to "act with undivided loyalty for the benefit of all of the unsecured creditors," Wilmington Trust has demonstrated an inability to distinguish between its interests as a subordinated creditor and its obligations as a member of the Committee.  In re ABC Automotive Products Corp., 210 B.R. 437, 441 (Bankr. E.D. Pa. 1997) (citing Pension Benefit Guaranty Corporation v. Pincus, Verlin, Hahn, Reich & Goldstein Professional Corporation, 42 B.R. 960, 963 (E.D. Pa. 1984)).  Wilmington Trust has breached its duties by tacitly permitting its counsel to abuse the resources of the Committee to advance Wilmington Trust's narrow and parochial interests at the expense of the unsecured creditor class as a whole.  See In re Haskell-Dawes, Inc. 188 B.R. 515 (Bankr. E.D. Pa. 1995) (citing In re Map International, Inc. 105 B.R. 5, 6 (Bankr. E.D. Pa. 1989) (holding that creditors' committee members are prohibited "from using their position to advance their own individual interests")).

[REMAINDER OF PAGE INTENTIONALLY BLANK]

{698.001-W0007014.}

## CONCLUSION

The Committee submits that the relief requested by JP Morgan and the Debtors is just and warranted by Wilmington Trust's (a) intentional and/or reckless disclosure of information protected from disclosure pursuant to the terms of the Depository Order; (b) willful violation of the automatic stay by attempting to assert causes of action belonging to the Debtors' estates; and (c) breaches of duties to the Committee and the creditors it represents. Accordingly, this Court should grant the relief requested by JP Morgan and the Debtors.

Dated: April 7, 2010
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Rebecca L. Butcher (No. 3816)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
N. Theodore Zink, Jr.
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Official Committee*
*of Unsecured Creditors*

{698.001-W0007014.}