**Exhibit A**

SUBMITTED UNDER SEAL ~~DRAFT – February 1, 2010~~
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

~~75.~~**135.** At the same time, the Guarantors executed a separate guarantee of the $1.6 billion Bridge Facility (the "**Step Two Guarantee**"), subordinate to the Step One Guarantee, by which the Guarantors jointly and severally unconditionally guaranteed repayment of the Bridge Facility. ~~Through the execution of~~**By executing** the Step Two Guarantee, the Guarantors increased their obligation to $11.733 billion. **As of December 20, 2007,** the amount of indebtedness guaranteed by the Step Two Guarantee far exceeded the net worth ~~as of December 20, 2007 of the Company and~~ ~~of~~**of Tribune,** each individual Guarantor, and of all Guarantors collectively.

~~76.~~**136.**  Furthermore, in connection with and at the same time as the Guarantors executed the Step Two Guarantee, the Guarantors executed two Indemnity, Subrogation and Contribution Agreements (the "**Subordination Agreements**"), one for Step One and one for Step Two.  The Subordination Agreement respecting the Step One Financing was executed by the Guarantors six months after the Step One Financing transaction as an attachment to the ~~Increased~~ Joinders executed by certain lenders and ~~the Company~~**Tribune** for the funding of the Incremental Facility.  It had the effect of subordinating indemnity, subrogation, and/or contribution claims from a Guarantor and ~~the Company~~**Tribune** or between or among Guarantors to the claims of the Step One Lenders. The Subordination Agreement respecting the Step Two Financing was executed by the Guarantors at the time of the Step Two Financing and subordinated to the Bridge Facility all of the Guarantors' rights to assert indemnity, subrogation, and/or contribution claims such Guarantors then had or thereafter acquired against ~~the Company~~**Tribune** or other Guarantors.  The effect of the Subordination Agreements was to divert additional value in the Guarantors away from ~~the~~**PHONES and other** Non-Bank ~~Lenders~~**Debt** in the event of non-payment by ~~the Company~~**Tribune** of the debt incurred in the Step One or Step Two Financings and thereby to reduce the equity value of the Guarantors available to ~~the Company or to its~~**Tribune or the PHONES and other** Non-Bank ~~Lenders.~~**Debt.**

SUBMITTED UNDER SEAL ~~DRAFT—February 1, 2010~~
CONTAINS MATERIAL SUBJECT TO CONFIDENTIALITY ORDER

~~88.~~ **149.** **To this end,** pursuant to the Merger Agreement executed April 1, 2007, the First Step Credit Agreement executed on May 17, 2007, and the Second Step Credit Agreement executed on December 20, 2007 (collectively, the ~~"~~"LBO Agreements"~~"~~), ~~the Company~~<ins>Tribune</ins> executed certain promissory notes in an aggregate amount exceeding $11.7 billion in connection with the financing for the LBO (~~"~~<ins>the "LBO Notes")</ins>.

~~89.~~ **150.** Pursuant to the LBO Agreements, the Guarantors executed the unconditional Step One Guarantee and Step Two Guarantee~~, respectively,~~ (together, the "LBO Guarantees") in favor of the LBO Lenders. By the LBO Guarantees, the Guarantors purported to guarantee jointly and severally the full and complete payment of the obligations incurred by ~~the Company~~<ins>Tribune</ins> in the LBO Loans. The LBO Notes and LBO Guarantees together are referred to as the "LBO Obligations."

~~90.~~ **151.** The Debtors did not receive reasonably equivalent value in exchange for incurring the LBO Obligations. Most of the money advanced in connection with the LBO Loans was applied to purchase outstanding shares of ~~the Company~~<ins>Tribune</ins>'s stock from shareholders pursuant to the tender offer ~~which~~<ins>that</ins> closed on June 4, 2007 and the Merger that closed on December 20, 2007. **<ins>Through their active participation described herein, the defendants aided and abetted such fraudulent transfers.</ins>**

~~91.~~ **152.** At the time each of the LBO Obligations were incurred, taking into consideration the **<ins>integrated</ins>** LBO as a whole, ~~the Company~~<ins>Tribune</ins>'s obligations under the Merger Agreement and otherwise to complete the LBO, reasonable projections of the performance of ~~the Company~~<ins>Tribune</ins>'s businesses<ins>,</ins> and the fair value of its assets and liabilities, the Debtors were insolvent, or became insolvent as a result of incurring such LBO Obligations~~, within the meaning of 11 U.S.C. § 101(32)(A).~~<ins>.</ins>