IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket No. 3759** |

### REPLY OF DEBTORS IN SUPPORT OF MOTION FOR AN ORDER (I) DETERMINING THAT WILMINGTON TRUST COMPANY HAS VIOLATED AUTOMATIC STAY, (II) REQUIRING WILMINGTON TRUST COMPANY TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT, AND (III) HALTING ALL PROCEEDINGS WITH RESPECT TO THE COMPLAINT

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "Debtor" and, collectively, the "Debtors"), by and through their undersigned counsel,

hereby submit this reply in support of their motion for entry of an order (i) determining that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (1745); KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Media Net, Inc. (7279); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Wilmington Trust Company ("Wilmington Trust") has violated the automatic stay, (ii) requiring

Wilmington Trust to show cause why it should not be held in contempt for knowingly violating

the automatic stay pursuant to section 362(a)(3) of title 11 of the United States Code (the

"Bankruptcy Code"), and (iii) halting all proceedings with respect to the Complaint (as defined

below) (the "Motion"). In further support of the Motion, the Debtors respectfully state the

following:

## PRELIMINARY STATEMENT

1.      Wilmington Trust's objection to the Motion (the "Objection") confirms that the

Motion should be granted. Rather than attempt to demonstrate why its Complaint for Equitable

Subordination and Disallowance of Claims, Damages, and Constructive Trust (the "Complaint")

should not be dismissed, the Objection abandons the Complaint altogether and offers a new one

(the "Amended Complaint"). The Amended Complaint adds new defendants and new

allegations, as well as new requests for relief. Even casual scrutiny, however, reveals that the

Amended Complaint suffers from the same fundamental flaws as the original one, as well as

new, additional deficiencies.

2.      Specifically, the Amended Complaint violates the automatic stay for the same

reasons as the original Complaint. The Amended Complaint still fails credibly to allege any

particularized harm to the holders of the PHONES,[2] and instead continues to assert a generalized

harm to Tribune's estate. Causes of action seeking redress for that generalized harm are the

property of Tribune's estate. Accordingly, Wilmington Trust has no standing to pursue such

claims without court authorization and, by doing so, is attempting to exercise control over estate

property in plain violation of section 362(a)(3) of the Bankruptcy Code. Wilmington Trust

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Complaint
and/or the Motion.

compounds this violation by attempting to have a constructive trust placed over "all estate distributions ...until the PHONES are paid in full."  As the Creditors Committee points out in its Statement on the Motion, this request constitutes not only a breach of Wilmington Trust's fiduciary duties as a member of the Creditors Committee but also "an unprecedented and inappropriate attempt by Wilmington Trust to hijack the reorganization process for its singular benefit."[3]  (Creditors Committee Statement 5.)

3.      The Amended Complaint is fatally flawed in other respects.  In its attempt to identify the required particularized injury, Wilmington Trust points to Counts III and IV of the Amended Complaint.  However, all that these counts show is that the PHONES have an adequate remedy at law and accordingly are not entitled as a matter of law to pursue equitable remedies such as equitable subordination or equitable disallowance in this Court.  The Amended Complaint also makes the nonsensical request that the Court grant equitable subordination and equitable disallowance as to several defendants who do not appear to have filed any claims in these bankruptcy proceedings.

4.      At bottom, and of principal importance here, the Objection and Amended Complaint represent an impermissible diversionary attempt by Wilmington Trust to create a collateral sideshow in order to stall and frustrate the Debtors' reorganization process, divert the parties' resources, and attempt to squeeze out a recovery beyond that which the PHONES' contractually-subordinated status permits.  To the extent that Wilmington Trust asserts legitimate issues respecting the PHONES' recovery from Tribune's estate, those issues can and should be

---

[3] *See* Statement in Connection with (A) Motion of JPMorgan Chase Bank, N.A. for Sanctions Against Wilmington Trust Company for Improper Disclosure of Confidential Information in Violation of Court Order, and (B) Motion of the Debtors for an Order (I) Determining That Wilmington Trust Company Has Violated Automatic Stay, (II) Requiring Wilmington Trust Company to Show Cause Why It Should Not be Held In Contempt of Court, and (III) Halting All Proceedings With Respect to the Complaint, filed on April 7, 2010 [D.I. 3968] (the "Creditors Committee Statement").

raised in the context of an objection to confirmation of the Debtors' plan of reorganization, and not through the Amended Complaint or other collateral litigation.

## ARGUMENT

### A. The Objection and Amended Complaint Make Clear that Wilmington Trust's Issues are Properly Addressed in the Context of Plan Confirmation

5.     Since the filing of the Motion, the Debtors have advised the Court that a proposed settlement resolving the Debtors' chapter 11 cases has been reached by certain significant holders of senior loans (J.P. Morgan and Angelo Gordon) and senior notes (Centerbridge Partners), as well as an indenture trustee for certain series of the senior notes, and is supported by the Debtors and the Official Committee of Unsecured Creditors. (*See* Notice of Supplemental Filing in Support of Debtors' Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending Debtors' Exclusive Period Within Which to File a Chapter 11 Plan dated April 8, 2010 [D.I. 3970].)  Put simply, the breathing spell for negotiations that the Debtors sought at the February 18 hearing in this Court worked.  A comprehensive proposed settlement endorsed by the Debtors and several major constituencies – including the largest holder of Tribune's pre-LBO senior note debt – has now occurred.

6.     The Objection makes clear that Wilmington Trust seeks to extract a settlement for the PHONES, backed by the threat of protracted litigation if its terms are not met.."  (*See* Objection ¶¶ 31, 7 n.4 ("litigation [can]not be avoided absent a settlement with Wilmington Trust" and "all ... claims [in the Amended Complaint] will require resolution before any plan of reorganization can be confirmed.").)  In other words, as far as Wilmington Trust is concerned, the Debtors must remain in chapter 11, regardless of the wishes of the Debtors and other major constituencies, unless and until Wilmington Trust's dissatisfaction with the treatment afforded the PHONES in the Debtors' proposed plan of reorganization is resolved.

4

7.    This tactical maneuvering is a misuse of the judicial process.  It also is

unnecessary to afford Wilmington Trust a means of being heard, since it already has such a

forum.  If Wilmington Trust has legitimate issues respecting the treatment afforded the

PHONES, the appropriate course is not to file repetitive litigation based on causes of action

belonging to the estate, but to raise the issues at the confirmation hearing on the proposed plan.

8.    The decision in *Prime Motor* is particularly instructive here.  *See Prime*

*Motor Inns, Inc. v. Morgan Guar. Trust Co. of N.Y. (In re Prime Motor Inns, Inc.)*, 135 B.R. 917,

920 (Bankr. S.D. Fla. 1992).  In that case, Prime Motor Inns, Inc. and its debtor affiliates (the

"Prime Debtors") had been involved in a large and complex loan transaction involving thirteen

lender banks (the "Bank Group") and an agent bank (Morgan Guaranty).  The Prime Debtors

analyzed the transaction and potential claims arising from that transaction, and negotiated a

settlement of those claims with the Bank Group, certain senior unsecured creditors and the

creditors committee as part of a consensual plan of reorganization.  Dissatisfied that its letter of

credit claim was not classified in the same way as the other Bank Group letter of credit claims, a

member of the Bank Group, United Jersey Bank ("UJB"), as an individual creditor, filed an

adversary proceeding which purported to object to the claims of a member of the Bank Group

(First Fidelity) and of agent bank Morgan Guaranty.  UJB's complaint requested that the court

determine that the security interests forming the basis for the claims of Morgan Guaranty and

First Fidelity were preferential transfers voidable under section 547 of the Bankruptcy Code and

issue an order disallowing the claims of Morgan Guaranty and First Fidelity until the alleged

preferences were disgorged.

9.    First Fidelity and Morgan Guaranty moved to dismiss the complaint, and the

Court granted the motion.  In so ruling, the Court held that an individual creditor could not

prosecute an estate cause of action and seek avoidance and disallowance of claims under the

guise of making an objection. The Court reasoned as follows:

> Morgan Guaranty and First Fidelity, as well as the Prime Debtors, have asserted before
> the Court that UJB seeks here to enhance its negotiating leverage in reclassifying its own
> letter of credit claim under the Amended Joint Plan, rather than altruistically seeking to
> avoid preferences that would inure to the benefit of all creditors. While there is an
> opportunity to confirm a consensual plan of reorganization that compromises the Claims
> as part of the overall settlement with the Bank Group, these estates will not benefit from
> litigating the classification of UJB's claim in the guise of an objection to the allowance of
> the Claims.
>
> ******
>
> It is apparent that UJB is attempting to mask as an objection to the Claims filed by
> Morgan Guaranty and First Fidelity, its real purpose, that is, an objection to the Prime
> Debtors' Plan and its dissatisfaction with the Prime Debtors' treatment of certain of its
> claims. To grant individual creditors and shareholders the right to prosecute avoidance
> actions or to bootstrap objections to classification and confirmation as objections to
> claims, would unfairly enable individual creditors to pursue their own parochial and
> insular interests, to the detriment of other creditors.
>
> *****
>
> [N]othing …precludes UJB from objecting to the Amended Joint Plan and the
> compromise of the Bank Group's claim therein.

*Id.* at 920, 921 n.6.

      7.     The logic of *Prime Motor* applies with equal force here. A single creditor

(Wilmington Trust) is attempting to enhance its negotiating leverage by filing litigation based

upon causes of action misappropriated from the Debtors' estates.[4] As in *Prime Motor*,

Wilmington Trust can raise any legitimate objection it has to the plan or reorganization in the

confirmation process, and its Amended Complaint, which is already void given Wilmington

Trust's violation of the stay in filing it, should not proceed.

---

[4] As explained in the Creditors Committee Statement, Wilmington Trust's misappropriation involved not only
pleading causes of action properly belonging to the Debtors' estates but also filing a draft complaint prepared by the
Creditors Committee as its own without the knowledge or approval of the Creditors Committee. (*See* Creditors
Committee Statement 8-9.)

**B. Wilmington Trust Has No Standing to Assert Its Equitable Subordination (or Equitable Disallowance) Claims Because Wilmington Trust has Suffered No Particularized Individual Injury and, In Any Event, Has An Adequate Remedy at Law**

10.     As the Debtors explained in the Motion, the cause of action alleged in Count One of the original Complaint is nothing more than a barely-disguised fraudulent transfer claim under section 548 of the Bankruptcy Code that is property of Tribune's estate under section 541 of the Bankruptcy Code. (*See* Motion ¶¶ 7-15.) Wilmington Trust cannot seriously dispute this point, nor does it argue that Count One of the Amended Complaint is substantively different than that of the original Complaint. Instead, Wilmington Trust asserts a wide range of arguments, none of which has merit.

11.     Wilmington Trust's first line of defense is to deny that it has any obligation to show a particularized injury. Relying on cases from other courts, Wilmington Trust asserts that any individual creditor has standing to bring an equitable subordination claim "where the suing creditor has only been generally harmed by the inequitable conduct." (Objection ¶ 21.) This runs contrary to – among many other cases – Judge Shannon's decision in *Elrod*, in which a secured creditor's attempt to bring an equitable subordination claim against another secured creditor was dismissed by the Court precisely because the secured creditor seeking to bring the claim had failed to allege any particularized injury. *See In re Elrod Holdings Corp.*, 392 B.R. 110, 116 (Bankr. D. Del. 2008); *see also In re AppliedTheory Corp.*, 493 F.3d 82 (2d Cir. 2007) (holding creditor must demonstrate particularized harm to have standing to seek equitable subordination of another's claim); *In re Morpheus Lights, Inc.*, 228 B.R. 449 (Bankr. N.D. Cal. 1998) (same).

12.     Here, the evidence demonstrates that any harm to the PHONES was not unique or particularized to the PHONES, but general and shared by all other creditors wronged

by the alleged misconduct of the defendants.  In fact, the Amended Complaint makes clear that

the injury claimed by the PHONES is the same generalized injury allegedly inflicted on all the

pre-LBO Debt (all emphases added):

- "Neither Tribune, **its creditors**, nor the Guarantors benefitted from incurring the LBO Debt." (Amended Complaint ¶ 6.)

- The LBO was designed to cash out existing shareholders "at top-dollar **at the expense of** Tribune and **the Pre-LBO creditors**, including particularly the PHONES, as the debt incurred to fund the cash out rendered Tribune insolvent . . . . " (Amended Complaint ¶ 64.)

- "While Step One and Step Two of the LBO were being implemented, the Lead Banks knew, at all relevant times, that there was an extremely high risk that Tribune would have to file for bankruptcy as a result of the LBO Debt.  Thus, the only way the Lead Banks were willing to arrange and finance the LBO was if **they could effectively subordinate the Non-Bank Debt and maintain the contractual subordination of the PHONES to the LBO Debt.**"  (Amended Complaint ¶ 141.)

- "The defendants developed, and caused the Debtors to implement, the scheme ... **so that the PHONES and other pre-LBO debt of Tribune would not be repaid in full in the likely event of the Debtors' subsequent failure and insolvency.**" (Amended Complaint ¶ 174.)

- "The Lead Banks also took other steps that were intended to make it more difficult **for the holders of the PHONES and other Non-Bank Debt to share equitably with the new LBO debt in the event of a bankruptcy.**" (Amended Complaint ¶ 145.)

13.      In addition, the Creditors Committee Statement entirely undermines

Wilmington Trust's assertions that the Complaint and the Amended Complaint reflect only

unique, particularized causes of action belonging to the PHONES.  As the Creditors Committee

shows therein, the Complaint was copied – in large measure verbatim – from the Creditors

Committee's proposed complaint seeking to bring actions on behalf of Tribune's creditors

generally. (*See* Creditors Committee Statement 8-9 and Ex. A.)

14.      As its second line of defense, Wilmington Trust contends that the

PHONES were the "particular target and victim" of the LBO Lenders' actions.  This argument,

however, rests on nothing other than the fact that the PHONES were and are at the bottom of Tribune's debt structure. But that was true both before and after the LBO – nothing regarding the LBO transaction altered the PHONES contractually-subordinated position vis-á-vis Tribune's existing pre-LBO debt. Wilmington Trust cites no authority for the proposition that the most junior, out-of-the-money creditor in a bankruptcy automatically suffers a unique and particularized injury and, that proposition makes no sense on its face. Indeed, under that construct, nearly every chapter 11 proceeding would have some creditor with a "unique and particularized injury" who could bring an equitable subordination claim, transforming a relatively uncommon claim or remedy into one with much wider availability than the law ever intended.[5]

15.    Further, such an approach could wreak havoc on the bankruptcy process. If every creditor affected by a prepetition action has the ability to bring equitable subordination actions at will, without leave of court, solely for the purpose of pursuing its parochial interest, aggrieved creditors in deeply subordinated positions – such as the PHONES – can be expected to commence equitable subordination actions early and often as a means of extracting "stick-up" value to which the Bankruptcy Code's priority scheme does not entitle them. This Court commented upon such behavior only last week, noting that "in vigorously disputed cases, '[j]unior creditors invoke expensive and time-consuming procedures merely to extract a payout exceeding their entitlements.'" *In re Spansion, Inc.,* slip. op. at 11 n.16 (Bankr. D. Del. Apr. 1, 2010) (KJC) (quoting Douglas G. Baird & Donald S. Bernstein, *Absolute Priority, Valuation Uncertainty, and the Reorganization Bargain,* 115 Yale L.J. 1930, 1932 (2006)).

---

[5] *Cf. The Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.),* 307 B.R. 767, 773 (D. Del. 2004) (affirming bankruptcy court's dismissal of complaint seeking equitable subordination and accepting bankruptcy court's recognition that "equitable subordination is an extraordinary remedy which is applied sparingly.") (citation omitted).

16.     Recognizing that Counts I and II of the Amended Complaint do not allege a unique and particularized injury, Wilmington Trust points to Counts III and IV of the Amended Complaint as its third line of defense, claiming that the injury alleged therein is unique and particularized as to the PHONES.  However, as explained in greater detail below (*see infra* ¶¶ 20-21), Counts III and IV do not help Wilmington Trust's case.  Rather, those Counts simply illustrate that Wilmington Trust has an adequate remedy at law and that equitable remedies such as equitable subordination and equitable disallowance are unavailable as a matter of law.

17.     Wilmington Trust's fourth line of defense relies on the Supreme Court's opinion in *Bennett v. Spear*, 520 U.S. 154 (1997), which discusses standing in the environmental context; specifically, standing under certain provisions of the Endangered Species Act of 1973 (the "ESA") as it applied to a dispute over water levels in Oregon's Klamath Basin, in which the Court concluded that a reduction in water levels available to the petitioners conferred Article III standing on them to bring suit under the ESA.

18.     Wilmington Trust's strained analogy does not hold water.  The issue before this Court is not the existence of constitutional standing, but whether Wilmington Trust should be permitted to assert for its own benefit causes of action that the Bankruptcy Code makes explicit are property of the Debtors' estates.  Here, the Bankruptcy Code provides that a single party (the trustee or debtor in possession) has control over the property (*i.e.*, the causes of action in question), and that other creditors may exercise control over that property only with permission of the Bankruptcy Court.  The appropriate analogy, therefore, would be if the allocation of water in the Klamath Basin were governed by a comprehensive statutory scheme vesting control in a single party and permitting others seeking to exercise rights to that water to

do so only by permission of a court.  Wilmington Trust's reliance on *Bennett v. Spear* is misplaced.

19.    For all of the foregoing reasons, Counts One, Two, and Five usurp causes of action belonging to the Debtors' estates and hence violate the automatic stay.

### C.  Counts Three and Four of the Complaint Should Not be Independently Sustained in the Bankruptcy Court

20.    Wilmington Trust contends in its Objection that its admittedly "non-bankruptcy causes of action" in Counts III and IV must be heard in the Bankruptcy Court even if the other counts of its Amended Complaint are not because, in its view, equitable subordination is "most assuredly" an available remedy for Count III and Count IV.  (*See* Objection ¶ 17.)  This argument, however, is fatally flawed.

21.    The only defendant against whom Count III is asserted is Citibank, N.A., who, according to the Debtors' publicly-available claims register, has not asserted a claim in the Debtors' chapter 11 cases, so there is nothing to be equitably subordinated.[6]  More importantly, the damage claims asserted in Counts III and IV make clear that Wilmington Trust has an adequate remedy at law and thus will not be entitled to equitable relief under any circumstances.

22.    In addition, the facts and law underlying Counts III and  IV turn fundamentally on the narrow question of whether Citibank breached its fiduciary duty as indenture trustee for the PHONES given the language of the indenture, a matter which has little if anything to do with the Debtors or their estates.  It would be a gross misallocation of the resources of the parties and the Court to hold this bankruptcy hostage to the resolution of this collateral claim.  *See In re Granite Partners, L.P.*, 210 B.R. 508, 515 n.7 (Bankr. S.D.N.Y. 1997)

---

[6] The same problem exists with respect to a number of defendants named in Count IV— they have not filed any claims in the Debtors' chapter 11 cases, and so there again is nothing to be equitably subordinated.

(courts have the power to dismiss claims for equitable subordination where resolution of the claims would "plunge the court into the time-consuming adjudication of purely private disputes between nondebtor parties having nothing to do with their claims in the bankruptcy case").

**CONCLUSION**

23.     The facts demonstrate that Wilmington Trust seeks to usurp causes of action belonging to the Debtors' estates and convert those causes of action for its own benefit. Such an action facially violates the automatic stay. The improper nature of Wilmington Trust's actions is compounded by the fact that Wilmington Trust has evidently filed the Complaint and the Amended Complaint as part of a larger effort to undermine the Debtors' reorganization process in hopes that its litigiousness will force a settlement. This cannot be permitted.

24.     The proper vehicle for Wilmington Trust to raise any legitimate issues it has with the *treatment* of the PHONES under the proposed plan of reorganization is the confirmation process, and not the initiation of collateral litigation based on causes of action belonging to the Debtors' estates or on individual claims which have little or no relationship to the Debtors' estates. For these reasons, the Court should require Wilmington Trust to demonstrate why it should not be held in contempt of this Court and either confirm that the Complaint (and the Amended Complaint) is void *ab initio* or, at a minimum, halt all proceedings respecting the Complaint until after the conclusion of the Debtors' chapter 11 plan has become effective.[7]

---

[7] The Objection and the Amended Complaint, even in their redacted form, are laden with accusations that are inflammatory, baseless, and redundant of many of Wilmington Trust's other filings in this matter. Space does not permit a full written refutation of each assertion, and the fact that the Debtors have not submitted a written response to each and every one of Wilmington Trust's blunderbuss allegations is not acquiescence in them.

12

Dated: Wilmington, Delaware
      April 9, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Alison L. Triggs
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

    -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION