IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case Nos. 08-13141 (KJC), *et seq.*<br>(jointly administered)<br><br>**Hearing Date: April 13, 2010, 10:00 a.m.** |

**STATEMENT OF TM RETIREES
IN SUPPORT OF SETTLEMENT AND COMPROMISES SET
<u>FORTH IN THE DEBTORS' PROPOSED PLAN OF REORGANIZATION</u>**
*(relates to Docket Nos. 3902 & 3970)*

Teitelbaum & Baskin, LLP and Pinckney, Harris & Weidinger, LLC, as attorneys for approximately 200 former employees (and beneficiaries of such former employees) (the "TM Retirees")[1] of The Times Mirror Company ("Times Mirror"), who were receiving or entitled to receive payments under certain qualified and non-qualified retirement plans of one or more of the Debtors, for their statement in support of the compromises and settlements to be embodied in the Debtors' the Plan of Reorganization filed with this Court on April 12, 2010 (the "Plan"), and as generally set forth in the Settlement Term Sheet filed with this Court on April 8, 2010 (the "Term Sheet") (Docket No. 3970), respectfully state:

1.      The TM Retirees are 194 former employees and current employees of Tribune Company who are entitled to non –qualified retirement and severance benefits with filed claims

---

[1] Among the TM Retirees supporting this statement is William Niese, a member of the OCC. Teitelbaum & Baskin also represents Mr. Niese in his role as a member of the OCC. This pleading is filed on behalf of the TM Retirees, including Mr. Niese, in their capacity as creditors and parties in interest and not in any manner as a representative of the OCC. The positions taken herein do not necessarily reflect the position of the OCC, and the OCC has not been consulted in connection with this pleading.

in the aggregate amount of approximately $112.4 million.[2]  Many of these people had given a lifetime of service to one or more of the Debtors and the Debtors' predecessor, Times Mirror. The TM Retirees claims in these cases arise from benefits claimed under four non-qualified plans assumed or provided by one or more of the Debtors, referred to as the Deferred Compensation Plan, the Excess Pension Plan, the Supplemental Executive Retirement Plan and the Supplemental 401(k) Plan (collectively, the "Plans"), as well as various individualized retirement agreements ("Supplemental Agreements").

2.    The various parties in this case are ably represented by counsel who, over the past 17 months, have presented a myriad of issues to this Court. The TM Retirees have limited their appearances before this Court. We have expressed our concerns over the expenditure of our retirement funds to pay over $7 million a month in legal fees as the lives of retirees hang in the balance.

3.    The Plan, which includes many settlements and compromises, represents the culmination of an incredible effort by, among others, the principals and professionals of the Debtors, the Bank Lenders, the Senior Note Holders, the Creditors' Committee and the TM Retirees. These settlements and compromises, which are expected to be approved as part of the Plan (and as generally described in the Term Sheet) should provide the foundation for a prompt and hopefully consensual exit from bankruptcy.  Moreover, as set forth below, the TM Retirees

---

[2] 180 of the 194 TM Retirees have claims against the Tribune Company, which were filed in the aggregate amount of approximately $107.6 million, comprised of approximately $85.1 million for various SERP and other excess benefit pension plans and approximately $22.5 million in connection with deferred compensation plans. In addition, 14 TM Retirees filed claims against one or more of the Debtors' operating entities in the aggregate amount of approximately $5.1 million, comprised of approximately $4.8 million for various SERP and other excess benefit pension plans and $314,000 in connection with deferred compensation plans.

overwhelmingly support the Plan for the treatment of their claims (and the claims of similarly situated retirees who are classified with the TM Retirees).

4.      From the outset of these cases, the TM Retirees have been engaged in on again, off again, discussions with the Debtors, the Lenders and the Creditors' Committee concerning the treatment of their claims.  The TM Retirees have consistently emphasized that they were relying upon their retirement benefits until literally the day of the commencement of these cases to pay bills and fund their retirements.  These people have now been without their benefits for the life of this case.  For some it has impacted their ability to pay medical expenses, college tuitions and even basic living expenses.  For all, the sudden loss of these benefits has had a significant economic and emotional impact.

5.      On Friday, April 9, an agreement was reached as to the essential terms for the treatment of the TM Retiree claims against the Tribune Company and the various operating entity Debtors. This agreement also serves as the basis for the treatment of all similarly situated claims in a plan.  The compromise provides in general that

> a.      the approximately $112.4 million in claims of the TM Retirees against the Debtors shall be allowed in the aggregate amount of  approximately $103 million[3]; and
>
> b.      such claims shall be paid in cash in the fixed amount of 35.18% of allowed claims against Tribune and 100%[4] of allowed claims against an operating Debtor.

6.      By agreeing upon this $103 million claim amount for the TM Retirees, the parties have been able to formulate a mechanism to calculate the remaining retiree claims which will be

---

[3] There remain certain outstanding factual issues relating to a limited number of TM Retiree claims related to discrepancies between the Debtors' records and the individual records which relate to approximately 30 TM Retirees and approximately $1.2 million in claims.  The Debtors and the TM Retirees are working to reconcile these discrepancies.

[4] The TM Retirees understand that there is a cap of $150 million with respect to the claims of unsecured creditors at the operating Debtors and that in the unlikely event that claims exceed this amount there may need to be a pro rata sharing at less than 100%.

treated similarly in the Plan (the "TM Retiree Settlement"). The components and derivation of

the $103 million (subject to certain factual adjustments) TM Retiree claim amount and the

distribution of such amounts to individual TM Retirees will be more fully described in a

Bankruptcy Rule 9019 motion to be filed with a settlement agreement for which the parties will

seek approval as part of the Plan.

7.    The Steering Committee of the TM Retirees worked throughout the weekend to

inform all of the TM Retirees of the developments and to seek their approval of the TM Retiree

Settlement and the treatment of their claims in a plan. Despite the fact that the TM Retirees are

dispersed throughout the country and not all of them could be reached on such short notice, as of

the filing of this pleading:

> **A.**    **185 TM Retirees, representing $111,339,716 of the $112.4 million in claims filed in these cases, have affirmatively expressed their support for the Plan and the TM Settlement as integral to the Plan;**
>
> **B.**    **9 TM Retirees, with filed claims in the amount of $1,038,239, have not yet responded;**
>
> **C.**    **There were 0 negative responses.**

8.    In addition, 9 retirees with claims scheduled by the Debtors in the amount of

$579,987 who are not clients of Teitelbaum & Baskin and not TM Retirees learned of the TM

Retiree Settlement and that such treatment would be afforded their claims under a plan. These

non-TM Retirees have advised us that they support the treatment of the TM Retiree claims as

part of a compromise and settlement to be filed with the Court and ultimately approved as part of

the Plan.[5]

---

[5] The TM Retirees have not yet had the opportunity to carefully review the Plan.  As such, the
TM Retirees reserve their right to address issues in the Plan which may require clarification or
which may not be consistent with the terms of the TM Retiree Settlement.

9.      It is clear that the TM Retirees overwhelmingly support the Settlement and they have authorized counsel to so advise the Court.

10.      The TM Retirees expect the formal terms of the TM Retiree Settlement to be set forth in a settlement stipulation to be filed with the Court as part of the Plan. The TM Retirees expect that the settlement documents and the Plan will implement the TM Retiree Settlement as set forth herein and urge all constituencies to stop the litigation sideshow which is costing these estates millions of dollars every month and direct all attention toward obtaining confirmation of the Plan.

WHEREFORE, the TM Retirees respectfully submit their support for the TM Retiree Settlement and the Plan which will implement the Settlement and respectfully request that the Court take all appropriate steps to deny the requests by various constituencies to pursue litigation which will interfere with and delay the process of obtaining confirmation of the Plan.

Dated: April 12, 2010          Respectfully submitted,
          Wilmington, Delaware

          PINCKNEY, HARRIS & WEIDINGER, LLC


          **/s/ Adam Hiller**
          Adam Hiller (DE No. 4105)
          Donna Harris (DE No. 3740)
          1220 North Market Street, Suite 950
          Wilmington, Delaware 19801
          (302) 504-1497 telephone
          (302) 442-7046 facsimile

          -and-

Jay Teitelbaum, Esquire
Teitelbaum & Baskin, LLP
Counselors at Law
3 Barker Avenue, Third Floor
White Plains, New York  10601
(512) 474-1554 telephone
(512) 474-1579 facsimile

*Attorneys for the TM Retirees*