IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref. Nos. 1736, 2360, 3878, and 3882 |
| | Response Deadline: April 13, 2010 |

### RESPONSE OF LANDIS RATH AND COBB LLP TO FEE EXAMINER'S FINAL REPORTS REGARDING THE SECOND AND THIRD INTERIM FEE APPLICATIONS OF LANDIS RATH & COBB LLP

Landis Rath & Cobb LLP ("LRC"), co-counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases, hereby submits the Response of Landis Rath & Cobb LLP to Fee Examiner's Final Reports Regarding the Second and Third Interim Fee Applications of Landis Rath & Cobb LLP (the "Response"). In support hereof, LRC respectfully represents as follows:

### BACKGROUND

1. On December 8, 2008, (the "Petition Date"), the debtors in the above-captioned chapter 11 cases (the "Debtors") commenced these bankruptcy cases by each filing a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, Inc. (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

3. On December 18, 2008, the Office of the United States Trustee for the District of Delaware appointed the Committee. In addition, on December 18, 2008, the Committee met with and selected Chadbourne & Parke LLP ("Chadbourne") as its counsel and LRC as its co-counsel.

4. On February 20, 2009, the Court entered an order authorizing the employment and retention of LRC as co-counsel to the Committee *nunc pro tunc* to December 18, 2008.

5. On March 19, 2009, the Court entered an order appointing Stuart Maue as fee examiner for these chapter 11 cases *nunc pro tunc* to February 20, 2009 (the "Fee Examiner").

6. On July 15, 2009, LRC filed the Second Interim Fee Application of Landis Rath & Cobb LLP (the "Second Interim Fee Application") [Docket No. 1736] for allowance of compensation and reimbursement of expenses, pursuant to sections 330 and 331 of the Bankruptcy Code, for legal services performed during the period commencing March 1, 2009 through and including May 31, 2009.

7. On October 15, 2009, LRC filed the Third Interim Fee Application of Landis Rath & Cobb LLP (the "Third Interim Fee Application") [Docket No. 2360] for allowance of compensation and reimbursement of expenses, pursuant to sections 330 and 331 of

the Bankruptcy Code, for legal services performed during the period commencing June 1, 2009 through and including August 31, 2009.

8. Pursuant to the terms of the order appointing Stuart Maue, the Fee Examiner provided LRC with the Preliminary Review and Analysis of Fee Applications Submitted by Landis Rath & Cobb LLP (the "Preliminary Report"). The Preliminary Report outlined concerns of the Fee Examiner with respect to certain fees and expenses requested in the Second and Third Interim Fee Applications.

9. After receiving the Preliminary Report, LRC engaged in productive discussions (including the submission of written responses to the Preliminary Report) with the Fee Examiner. At the conclusion of these discussions, LRC and the Fee Examiner were able to reach a consensual resolution on all but two issues raised in the Preliminary Report.

10. On March 29, 2010, the Fee Examiner filed both the Fee Examiner's Final Report Regarding Second Interim Fee Application of Landis Rath & Cobb LLP (the "Second Final Report") [Docket No. 3878] and the Fee Examiner's Final Report Regarding Third Interim Fee Application of Landis Rath & Cobb LLP [Docket No. 3882] (the "Third Final Report" and together with the Second Final Report as the "Final Reports").

### RESPONSE OF LRC TO THE FINAL REPORTS

11. LRC appreciates the opportunity the Fee Examiner has provided LRC to respond to questions raised concerning the Second and Third Interim Fee Applications. LRC has engaged in constructive discussions with the Fee Examiner that, as the Final Reports indicate, addressed the majority of the Fee Examiner's questions related to the Second and Third Interim Fee Applications. However, two issues raised by the Fee Examiner remain outstanding. Although of relatively modest dollar amount, these issues are likely to be raised again in

subsequent fee applications submitted by LRC. Accordingly, LRC files this Response to seek the Court's guidance with respect to these issues.

12. The two outstanding issues relate to the Fee Examiner's recommendations with respect to work performed and expenses incurred by LRC professionals identified in the Final Reports as: (a) clerical activities compensable at a reduced billing rate and (b) working meals ((a) and (b) together, as the "Disputed Fees & Expenses").

13. LRC respectfully disagrees with the Fee Examiner's recommendations with respect to the Disputed Fees & Expenses and submits that the amounts billed in respect of the tasks identified in the clerical activities category should be allowed because such tasks require the application of specialized training, substantial knowledge, and the exercise of substantial discretion and judgment. LRC further submits that the working meal objected to should be allowed because it satisfies LRC's billing policy with respect to working meals.

14. For the reasons set forth in detail below, LRC submits that the Disputed Fees & Expenses were appropriately billed and should be allowed in full notwithstanding the recommendations of the Fee Examiner contained in the Final Reports.

**(A)    Activities Identified in the Final Reports as Clerical in Nature.**

15. In the Second Final Report, the Fee Examiner identifies 13.72 hours, with associated fees of $2,369.33 as "clerical" in nature. Additionally, the Third Final Report identifies 21.80 hours, with associated fees of $4,326.00, as "clerical" in nature. Specifically, the Final Reports suggest that such tasks, including the following, do not "require legal acumen" to perform: (a) maintaining and organizing case files; (b) creating and maintaining service lists; (c) retrieving and analyzing documents filed in these cases in order to determine and calendar deadlines relevant to LRC, Chadbourne, the Debtors and professionals retained by the Committee; and (d) preparing, filing, serving and distributing affidavits and declarations related

to the Committee's retention of LRC and other professionals. In the Final Reports the Fee Examiner recommends that the fees for such tasks be disallowed or billed at a "clerical rate" of $80.00 per hour. Notwithstanding the Fee Examiner's assertion that "[i]n this Court, there has been a practice of recommending that clerical activities be paid at the rate of $80.00 per hour", LRC is aware of no case in which its timekeepers (or others) have been compensated for such services at an arbitrary hourly rate of $80.00.

16. LRC submits that these tasks are not clerical in nature. To the contrary, their performance requires the application of extensive, specialized training, substantial knowledge, and the exercise of discretion. For example, tracking important deadlines and calendaring the same (which requires access to PACER and an individual's ability to distinguish between important and unimportant docket entries), saves LRC attorneys assigned to these cases the time of having to review PACER throughout the day, and thus reduces expenses to the Debtors' estates. LRC's attorneys can quickly glance at the paralegal-created entries that list only relevant deadlines, saving substantial attorney time in an effective use of firm resources. The same holds true for the critical dates calendar. Creating a critical dates calendar requires LRC's paralegals to determine, from all of the documents filed in these cases, which of them include information relating to hearing dates, objection deadlines, and any changes related thereto; this is no small task in a bankruptcy case as large and complex as this. Finally, creating and maintaining service lists, filing various pleadings through CM/ECF, determining the proper service-parties and serving such pleadings upon the appropriate individuals, ordering and/or retrieving and coordinating the distribution of important documents, including hearing transcripts, pleadings, reports, orders, applications, etc., and regularly maintaining and organizing the voluminous files containing all of these items, requires professionals and

paraprofessionals to apply extensive, specialized training and substantial knowledge and to exercise discretion in carrying out such responsibilities, none of which are merely clerical in nature.

17. LRC submits that such tasks are critical to ensure that due process is achieved – absent the above-referenced training, knowledge and discretion of the professionals and paraprofessionals performing this work, among other consequences, the Committee would run the risk of missing deadlines imposed by statute and applicable rules. As stated above, despite the Fee Examiner's assertion, LRC is aware of no case in which its timekeepers (or others) have been compensated for such services at an arbitrary hourly rate of $80.00. LRC further submits that it is appropriate, particularly in its role as Delaware counsel and co-counsel, for its timekeepers to bill at their customary rates for functions so critical to due process and the smooth functioning of these cases for the Committee.

18. For the foregoing reasons, LRC asserts that its use of paraprofessionals to perform these tasks is not only appropriate and very cost effective, but critical, and is therefore compensable at the regular hourly rates generally charged for such paraprofessional's time. See In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d. 833, 848-56 (3d Cir. 1994). LRC submits that it is appropriate, particularly in complex cases such as these, for its timekeepers to bill their customary rates for functions that appropriately require paraprofessional efforts so long as those rates withstand the "comparable services" analysis prescribed by the Third Circuit in evaluating bankruptcy fees. Id. at 853-54.

(C) **Working Meal for which the Fee Examiner Recommends a Reduction.**

19. The Second Final Report recommends that the request for reimbursement of expense charges be reduced by $32.00 for a working luncheon that was attended by one LRC

attorney and two Chadbourne attorneys. LRC's billing policy for working meals permits reimbursement in only two circumstances: (a) working meetings during mealtime; or (b) when, due to the exigencies of the case, LRC personnel are required to stay late in the evening working and/or work over weekends on this matter. The cost incurred is the actual cost billed by LRC's vendor, and does not include any profit to LRC. LRC submits that the meal charge identified by the Fee Examiner in the Second Final Report satisfies these requirements as it was incurred on February 3, 2009. The meal in question was a working meal provided at the conclusion of the February 3, 2009 omnibus hearing and was attended by one attorney from LRC and two attorneys from Chadbourne all of whom used the time to discuss matters relevant to these cases. Accordingly, LRC submits that such working meal charge was appropriately billed and should be allowed in full.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, LRC respectfully requests the Court (i) approve the Second and Third Interim Fee Applications in their entirety; and (ii) grant such other and further relief as is just and proper.

Dated: April 13, 2010
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

*Co-Counsel to the Official
Committee of Unsecured Creditors*