## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Date: May 5, 2010 at 4:00 p.m.** |
| | **Hearing Date:  TBD** |
| | **Related to Docket Nos. 3458, 3701, and 3904** |

## FIFTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF DECEMBER 1, 2009 THROUGH FEBRUARY 28, 2010

| | |
|---|---|
| Name of Applicant: | **Sidley Austin LLP** |
| Authorized to Provide Professional Services to: | **Debtors** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Date of Retention:                              **February 20, 2009 (nunc pro tunc to December 8, 2008)**

Period for Which Compensation          **December 1, 2009 through February 28, 2010**
and Reimbursement is Sought:

Amount of compensation sought as actual,    **$5,426,757.50**
reasonable and necessary:

Amount of Expense Reimbursement sought as    **$205,852.05**
actual, reasonable and necessary

This is a(n): _____ monthly ___X___ interim _____ final application

The total time expended for fee application preparation for the monthly and quarterly fee applications, including time expended for review and response to fee auditor materials, during the Fifth Interim Fee Period is approximately 281.10 hours and the corresponding compensation requested is approximately $79,073.50.

### Prior Interim Applications

| Quarter | Date Filed | Period Covered | Requested | | Approved | |
|---------|-----------|----------------|-----------|----------|----------|----------|
| | | | Fees | Expenses | Fees | Expenses |
| 1 | 4/15/09 | 12/8/08-2/28/09 | $3,897,043.25 | $165,360.71 | $3,886,289.75 | $158,441.67 |
| 2 | 7/16/09 | 3/1/09-5/31/09 | $4,209,274.75 | $105,524.36 | | |
| 3 | 10/15/09 | 6/1/09-8/31/09 | $4,513,018.00 | $99,429.34 | | |
| 4 | 4/15/10 | 12/1/09-2/28/10 | $5,426,757.50 | $205,852.05 | | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Objection Date: May 5, 2010 at 4:00 p.m.**<br>**Hearing Date: TBD**<br>**Related to Docket Nos. 3458, 3701, and 3904** |

## FIFTH QUARTERLY FEE APPLICATION OF SIDLEY AUSTIN LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF DECEMBER 1, 2009 THROUGH FEBRUARY 28, 2010

Sidley Austin LLP ("Sidley"), attorneys for Tribune Company and the affiliated

companies that filed voluntary petitions for relief in the above-captioned chapter 11 cases

(collectively, the "Debtors"), respectfully submits this application (the "Application") to this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the

"Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the

Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of

Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim

Compensation Order"), as amended, and (v) the Order Appointing Fee Examiner and

Establishing Related Procedures for Compensation and Reimbursement of Expenses for

Professionals and Consideration of Fee Applications (the "Fee Examiner Order") for approval of

interim compensation and reimbursement of expenses for the fifth quarterly period from

December 1, 2009 through February 28, 2010 (the "Fifth Interim Fee Period").  In support of the

Application, Sidley respectfully states as follows:

## FACTUAL BACKGROUND OF THE CASES

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain

of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code.  An additional Debtor, Tribune CNLBC, LLC (f/k/a Chicago National League Ball Club,

LLC) ("Tribune CNLBC"), filed a voluntary petition for relief under chapter 11 of the

Bankruptcy Code on October 12, 2009.[2]  On March 22, 2010, this Court entered an order

dismissing the chapter 11 petition of New River Center Maintenance Association, Inc.  In all, the

Debtors comprise 111 entities.

---

[2] All orders of the Court applicable to this Application have subsequently been extended to Tribune CNLBC.  (See Order Directing (I) Joint Administration of Chapter 11 Cases and (II) that Certain Orders and Other Pleadings Entered or Filed in the Chapter 11 Cases of Tribune Company, et al. be made applicable to the Chapter 11 Case of Chicago National League Ball Club, LLC (entered Oct. 14, 2009) (the "CNLBC Joint Administration Order") [Docket No. 2333].

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee.

4.      On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee").

5.      On March 19, 2009, the Court appointed Stuart Maue as fee examiner (the "Fee Examiner") to act as special consultant to the Court for professional fee and expense analysis and review, effective nunc pro tunc to February 20, 2009.  [Docket No. 546.]

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

7.      The Debtors sought approval of this Court to retain Sidley as general reorganization and bankruptcy counsel, pursuant to 11 U.S.C. §§ 327(a) and 1107, by application filed on December 26, 2008.  As set forth in the application seeking such approval, Sidley's services to the Debtors encompass a wide range of legal services, focused upon restructuring and insolvency issues but also encompassing certain general corporate, litigation, tax, media law and regulatory, employee-related, and real estate matters.  In particular, Sidley's retention application

3

sets forth the following scope of services, which were performed during the Fifth Interim Fee
Period:

(a)     to provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business;

(b)     to take all necessary action on behalf of the Debtors to protect and preserve the Debtors' estates, including prosecuting actions on behalf of the Debtors, negotiating any and all litigation in which the Debtors are involved, and objecting to claims filed against the Debtors' estates;

(c)     to prepare on behalf of the Debtors all necessary motions, answers, orders, reports, and other legal papers in connection with the administration of the Debtors' estates;

(d)     to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;

(e)     to perform any and all other legal services for the Debtors in connection with both these chapter 11 cases and with the formulation and implementation of the Debtors' plan of reorganization;

(f)     to advise and assist the Debtors regarding all aspects of the plan confirmation process, including, but not limited to, negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan;

(g)     to provide legal advice and representation with respect to various obligations of the Debtors and their managers and officers;

(h)     to provide legal advice and perform legal services with respect to matters involving the negotiation of the terms of and the issuance of corporate securities, matters related to corporate governance, and the interpretation, application, or amendment of the Debtors' organizational documents, including their limited liability company agreements, material contracts, and matters involving the fiduciary duties of the Debtors and their officers and managers;

(i)     to provide legal advice and perform legal services with respect to litigation, tax (state and federal income tax and local property tax assessment matters) and other general non-bankruptcy legal issues for the Debtors to the extent requested by the Debtors; and

(j)     to render such other services as may be in the best interests of the Debtors in connection with any of the foregoing and all other necessary or

appropriate legal services in connection with these chapter 11 cases, as agreed upon by Sidley and the Debtors.

Sidley's retention, <u>nunc pro tunc</u> to the Petition Date, was approved by this Court by order dated February 20, 2009 (Docket No. 435).

8.      The Interim Compensation Order and the Fee Examiner Order (together, the "<u>Fee Orders</u>") provide that all professionals retained in these cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code (the "<u>Case Professionals</u>") must file with the Court and provide to the Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "<u>Monthly Fee Application</u>"). The notice parties specified in the Fee Orders (the "<u>Notice Parties</u>") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "<u>Objection Deadline</u>"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing that no objection or partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an objection.

9.      Pursuant to the procedures set forth in the Fee Orders, Sidley prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of December 2009, January 2010 and February 2010, which Monthly Fee Applications are incorporated herein by reference.[3] Sidley has accordingly

---

[3] The docket numbers of Sidley's Monthly Fee Applications for December 2009, January 2010, and February 2010 are 3458, 3701, and 3904, respectively.

submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for the Fifth

Interim Fee Period.

10.     In addition to the Monthly Fee Applications, beginning with the three-

month period ending February 28, 2009, and each three-month period thereafter, all Case

Professionals must file with the Court and serve on the Notice Parties interim applications for

allowance of compensation and reimbursement of expenses of the amounts sought in the

Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request").

Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications

that are the subject of the request and any other information requested by the Court or required

by the Local Rules.  This Application represents the fifth Quarterly Fee Application Request that

Sidley has filed with the Court in connection with these chapter 11 cases, and it covers the period

from December 1, 2009 through February 28, 2010, both dates inclusive.

## RELIEF REQUESTED

11.     By this Application, Sidley respectfully requests that the Court approve

the interim allowance and award of compensation for professional services rendered and

reimbursement of actual and necessary expenses incurred by Sidley as general bankruptcy

counsel to the Debtors during the Fifth Interim Fee Period.

12.     The amount of fees sought for services rendered during the Fifth Interim

Fee Period is $5,426,757.50, representing 9,853.60 hours in professional and paraprofessional

time for such services.  Reimbursement of actual, necessary expenses incurred by Sidley during

the Fifth Interim Fee Period in connection with these services is requested in the amount of

$205,852.05.  Sidley seeks the interim allowance of such compensation, and this Court's

authorization for payment of such amounts by the Debtors to Sidley, less any amounts previously

paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

13.    The hourly rates charged by Sidley professionals and paraprofessionals during the Fifth Interim Fee Period are no greater than the customary hourly rates for such individuals both inside and outside of bankruptcy cases.  The highest billing rate that will be charged by any Sidley attorney for services rendered under Sidley's current billing rates that became effective on January 1, 2010 and continuing until Sidley's next Firm-wide rate adjustment will be $950 per hour.  (See Supplemental Affidavit (Second) of James F. Conlan in Support of Application for an Order Authorizing the Employment and Retention of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession at ¶ 3, Docket No. 424.) Sidley believes these rates are comparable to those charged by the bankruptcy and other professionals of other firms of comparable size, stature, and experience.

14.    Sidley has received no payment and no promises for payment from any source other than the Debtors for services rendered in these chapter 11 cases.  There is no agreement between Sidley and any other party for the sharing of compensation to be received for the services rendered by Sidley in these chapter 11 cases.  All professional and paraprofessional services for which compensation is sought herein were rendered solely on behalf of the Debtors in these cases.

## SERVICES RENDERED

15.    Sidley has rendered substantial services to the Debtors in connection with these chapter 11 cases during the period covered by this Application, both in its capacity as general bankruptcy counsel to the Debtors and continuing in its capacity as corporate, litigation, and transactional counsel to the Debtors in their ordinary course of business.  The services performed by Sidley's professionals and paraprofessionals during the period covered by this

7

Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

16.     A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as a part of <u>Attachment A</u> to this Application, as required by Local Rule 2016-2. A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed by Sidley with the Court. The following is a summary of the activities performed by Sidley's professionals and paraprofessionals during the Fifth Interim Fee Period:

**A.     FCC Matters (20100):   Hours: 245.90  Fees: $88,431.00**

17.     During the Fifth Interim Fee Period, Sidley's professionals continued to represent the Debtors' broadcast and cable television stations as communications regulatory counsel. In this capacity, Sidley's professionals and paraprofessionals handle various matters on behalf of the Debtors relating to regulatory compliance, including compliance with all technical and operational rules and regulations of the Federal Communications Commission ("FCC"); transactional matters that require FCC approval; seeking waivers of the newspaper/broadcasting cross-ownership rules; preparing and filing periodic license renewal applications and license modification applications, and responding to various complaints filed with the FCC. Additionally, Sidley represents Tribune in appeals to the U.S. Courts of Appeals from orders in transfer cases, license renewals, FCC complaints, and rulemaking decisions.

18.     As noted in prior Applications, Sidley has long represented Tribune stations in the policy, technical, and operational issues arising from the conversion to digital television ("DTV"). During the Fifth Interim Fee Period, Sidley continued to advise the Debtors on the FCC's evolving rules and policies governing the build-out and operation of DTV stations,

to advocate before the FCC to waive and/or modify these rules and policies to conform with operational realities, as well as to urge the FCC on behalf of the Debtors to authorize the use of new technologies to enhance the ability of broadcasters to deliver reliable DTV signals.

19.    During the Fifth Interim Fee Period, Sidley's professionals and communications specialist drafted and filed all applications, reports, notifications, and other materials that were required to be filed with the FCC in connection with the Debtors' 23 television stations, cable "Superstation" WGN America, and WGN Radio.

**B.    Fee Applications (30390):   Hours: 281.10  Fees: $79,073.50**

20.    This matter category encompasses all tasks relating to the preparation and filing of Sidley's monthly and quarterly fee application requests to this Court.  In this Fifth Interim Fee Period, Sidley's professionals and paraprofessionals drafted and filed Sidley's eleventh, twelfth, and thirteenth Monthly Fee Applications and reviewed and complied with the Court's Fee Orders.  In addition, Sidley prepared and filed its Fourth Quarterly Fee Application Request to this Court.  In late February, Sidley's professionals and paraprofessionals also received the Fee Examiner's preliminary report concerning Sidley's Second Quarterly Fee Application Request and began the preparation of Sidley's response to the Fee Examiner's questions and comments.

**C.    Executory Contracts and Leases (30410):   Hours: 86.70  Fees: $47,354.00**

21.    The Debtors in these cases are party to approximately 45,000 executory contracts and unexpired leases.  During the Fifth Interim Fee Period, Sidley's professionals continued to assist the Debtors with obtaining court approval to assume, or to assume and assign, certain executory contracts under section 365 of the Bankruptcy Code on terms favorable to the Debtors.

(a)    <u>Executory Contracts</u>

22.    Specifically, Sidley's professionals prepared and filed a motion to authorize the assumption of certain syndicated programming agreements with NBC Universal for the broadcast of the popular daytime talk shows *Maury*, *The Jerry Springer Show*, and *The Steve Wilkos Show*, subject to amendments that would extend the agreements' terms and reduce the license fees paid to NBC Universal over the extended term. The aggregate savings to the Debtors from these reductions will exceed $7 million over the life of the agreements.. In addition, Sidley's professionals worked with the Debtors' management and counsel for NBC Universal to negotiate the waiver and release of a portion of the amounts that the Debtors would otherwise have been required to pay to "cure" prepetition defaults as a condition of the assumption of the programming agreements. The order authorizing the assumption of the NBC Universal programming agreements was entered on January 25, 2010. [Docket No. 3191.]

23.    In addition, Sidley's professionals, working with Tribune's insurance counsel, prepared and filed a motion to authorize the assumption of certain agreements with Marsh USA, Inc. ("Marsh") related to the settlement of a state court action that Tribune brought against Marsh prior to the Petition Date. The settlement, contained in the agreements, includes commitments from Marsh to reimburse Tribune for fees and expenses incurred in Tribune's ongoing efforts to recover amounts from the Reliance National Indemnity Company, which is in liquidation. The settlement also includes Marsh's commitment to reimburse Tribune for certain workers' compensation liabilities. Upon assumption, Marsh has agreed to pay approximately $1 million in amounts due under the agreements. Moreover, Tribune believes that it will receive in excess of $4 million in additional payments from Marsh under the terms of the agreements on account of future reimbursements. In connection with the assumption of these agreements, Sidley professionals were able to obtain the withdrawal of Marsh's proof of claim (number 4396)

in negotiations with Marsh. The order authorizing the assumption of the Marsh settlement agreements was entered on March 23, 2010. [Docket No. 3825.] Sidley's professionals have also continued to address numerous inquiries from contract counterparties concerning the status of their contracts.

(b)     Unexpired Leases

24.     As discussed in Sidley's prior Application, Sidley's professionals responded to the limited objection of the lessor of a distribution center located in Anaheim, California operated by Los Angeles Times Communications LLC, which the Debtors sought to assume. Although the lessor consented generally to the assumption of the lease agreement, on November 20, 2009, the lessor filed a limited objection seeking additional clarification of the terms governing the assumption and cure amount. Sidley's professionals engaged with counsel to the lessor to resolve these issues and the motion was granted by revised order dated December 14, 2009. [Docket No. 2834.] The Anaheim distribution center lease represents the last of the Debtors' unexpired leases to be assumed or rejected in these chapter 11 cases, in accordance with section 365(d)(4) of the Bankruptcy Code and this Court's Order Authorizing Debtors to (I) Assume Certain Unexpired Leases of Nonresidential Real Property, and (II) Set Cure Amounts with Respect Thereto [Docket No. 1628] which, inter alia, consensually extended the deadline to assume or reject certain of the Debtors' remaining non-residential real property leases through and including December 31, 2009.

D.     **Vendor Issues (30420):  Hours: 21.60  Fees: $11,410.00**

25.     In this period, Sidley's professionals continued to address issues concerning postpetition vendor performance, which required Sidley's professionals to review existing contracts between the Debtors and relevant vendors and, in some cases, arrange and

participate in calls with the Debtors' business personnel, financial advisors at Alvarez and

Marsal, vendors, and/or vendor's counsel to ensure or facilitate continued vendor performance.

**E.**     <u>**Use/Sale/Lease of Assets (30430):   Hours: 69.50   Fees: $41,400.00**</u>

      26.     Sidley's professionals remained engaged in negotiating and documenting

transactions for the use, sale, and lease of assets on behalf of the Debtors, both in connection

with these chapter 11 cases and with Sidley's ongoing representation of the Debtors in their

ordinary course of business.  For example, during the Fifth Interim Fee Period, Sidley's

professionals prepared and filed a motion with the Court to approve a compromise and

stipulation, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Federal Rule of

Bankruptcy Procedure 9019, between Debtors Tribune Company, Southern Connecticut

Newspapers, Inc. ("<u>SCNI</u>"), and Tribune License, Inc. and Hearst Danbury Holdings, LLC

("<u>Hearst</u>").  The compromise related to the final reconciliation and adjustment of working capital

and other post-closing amounts with respect to the 2007 sale of substantially all of the assets of

SCNI on a going-concern basis to a buyer affiliated with Hearst.  The relief requested in the

motion was granted by order dated January 25, 2010.  [Docket No. 3189.]

      27.     Sidley also worked with the Debtors' in-house counsel and management at

Los Angeles Times Communications, LLC to prepare a motion authorizing the sale of its 66.67%

membership interest in the joint venture known as Zetabid to Catalist Homes, following which

sale Catalist Homes would become the sole member of Zetabid, and to enter into and perform

obligations under the purchase and sale agreement.  The motion was granted by order entered on

March 23, 2010.  [Docket No. 3843.]  Sidley's professionals also reviewed and analyzed certain

proposed postpetition contracts on behalf of certain of the Debtors, to determine whether such

contracts were in the ordinary course of the Debtors' businesses.

**F.**    **DIP Financing/Cash Collateral (30440):  Hours:  59.80  Fees: $39,210.00**

28.    During the Fifth Interim Fee Period, Sidley's professionals continued to

negotiate and prepare the documentation necessary to facilitate the termination of the Debtors'

postpetition securitized receivables facility and to enter into an amended letter of credit facility.

Specifically, Sidley's professionals in the Bankruptcy and Banking practice groups coordinated

in preparing the underlying substantive documentation to effect the termination of the securitized

receivables facility and the entry into an amended letter of credit facility in the amount of

$30,000,000 provided by Barclays as postpetition agent and issuing bank.  In connection

therewith, Sidley's professionals researched and prepared motions to obtain the Court's

authorization to enter into the amended letter of credit facility and the filing of the agent's fee

letter under seal.  The Sidley professionals that participated in the consummation and Court

approval of these financing transactions did so consistent with their roles in the initial debtor-in-

possession financing transactions and subsequent amendments thereto since the outset of these

chapter 11 cases.  Each of these motions were filed on March 2, 2010 (Docket Nos. 3666 and

3667, respectively) and were approved by the Court on March 22, 2010 (Docket Nos. 3808 and

3798, respectively). Sidley's professionals also continued to advise the Debtors' senior

management with respect to compliance with the facility's terms governing various proposed

business and financial transactions.

**G.**    **Insurance Matters (30450):  Hours: 44.90  Fees: $27,840.00**

29.    During the Fifth Interim Fee Period, the Debtors' existing insurance

carriers presented an offer to the Debtors' senior management to provide a six-year extended

reporting period under the Debtors' existing directors' and officers' liability and fiduciary

liability insurance policies (the "Tail Coverage").  Sidley's professionals assisted the Debtors'

senior management in analyzing and negotiating the terms of this offer to purchase Tail

Coverage and engaged in a series of substantive discussions with the Debtors' prepetition lenders

and the Committee relating to the cost and scope of such coverage.  In connection therewith,

Sidley's professionals researched, prepared, and filed a motion to approve the purchase of Tail

Coverage on January 6, 2010 (Docket No. 3025), which motion was approved by the Court on

January 25, 2010 (Docket No. 3190).

       30.     In addition, Sidley's professionals continued to work with the Debtors,

their outside insurance counsel, and various insurance providers to resolve certain insurance

coverage issues, including the renewal of insurance policies, and to advise upon the impact of

these chapter 11 cases on the Debtors' insurance and risk management procedures.  Sidley's

professionals also reviewed and addressed various legal issues arising in connection with the

Debtors' primary and excess liability policies covering certain prepetition lawsuits pending

against the Debtors.

**H.**     **<u>Committee-Related Matters (30460):   Hours: 20.70  Fees: $17,328.00</u>**

       31.     Sidley's professionals continued during the Fifth Interim Fee Period to

work diligently to maintain a cooperative and responsive relationship with the Debtors' major

creditor constituencies, including the Committee and the steering committee comprised of the

Debtors' senior lenders (the "<u>Steering Committee</u>").  Sidley's professionals conferred on pending

motions and case administration issues and participated in numerous conference calls and

meetings with the Committee, Steering Committee, and their professionals.  During this Fifth

Interim Fee Period, Sidley participated in regularly scheduled weekly conference calls with the

professionals of the Committee in order to address case issues as they arose and to apprise the

Committee of the progress being made in these chapter 11 cases and with the development of the

Debtors' plan of reorganization and disclosure statement.

**I.    Litigated Matters (30470):   Hours: 4,385.70   Fees: $2,249,990.50**

32.    During the Fifth Interim Fee Period, Sidley's professionals represented the

Debtors in a variety of litigated and contested matters, discussed in detail below.  Of these

matters, the most significant in terms of time and effort expended by Sidley's professionals and

paraprofessionals relates to the review and analysis of the series of transactions that returned

Tribune to private ownership in 2007 (the "Leveraged ESOP Transactions"). The resolution of

potential claims arising out of the Leveraged ESOP Transactions—whether through settlement

or, to the extent required, litigation—has emerged as a pivotal issue in these chapter 11 cases,

requiring substantial attention from Sidley, the Debtors' senior management, the Committee, the

Steering Committee, and other key creditor constituencies.

(a)    Leveraged ESOP Transactions

(i) *The Document Depository and Discovery Activities*

33.    Since the spring of 2009, more than 45 individuals and entities involved

with the Leveraged ESOP Transactions have been party to numerous informal document

production requests from the Committee (collectively, the "Producing Parties").  Sidley and the

Debtors have supported requests for access to these materials from Law Debenture Trust

Company of New York ("Law Debenture"), Centerbridge Credit Advisors LLC

("Centerbridge"), JPMorgan Chase Bank, N.A., ("JPMorgan"), and other creditor constituencies

with respect to their independent reviews of the Leveraged ESOP Transactions.  In order to

facilitate a consensual resolution of all matters relating to the Leveraged ESOP Transactions with

the Debtors' creditor constituencies, Sidley's professionals negotiated procedures by which all

discovery materials produced by the Producing Parties would be delivered to a centralized

document depository (the "Document Depository") to be maintained by the Debtors, subject to a

global confidentiality agreement (the "Acknowledgment"), and to adopt certain settlement

negotiation protections to encourage the parties' candid participation in settlement discussions. Sidley's professionals prepared a motion for the approval of these procedures (the "Document Depository Motion") and a motion to expedite the hearing thereon, each of which was filed on December 9, 2009 (Docket Nos. 2781 and 2782, respectively). The Court approved the Document Depository Motion, as modified to resolve certain limited objections, on December 15, 2009 (Docket No. 2858) (the "Depository Order").

34.    Following the creation of the Document Depository, Sidley's team of professionals and paraprofessionals have received documents submitted by the Producing Parties that were responsive to discovery requests and have produced such documents to the parties authorized to receive the discovery materials maintained in the Document Depository (the "Depository Designees"). In addition, Sidley's professionals and paraprofessionals have coordinated (as is required by the Depository Order) the claw-back and replacement of inadvertently produced documents. Sidley's paraprofessionals also resolved issues related to the Producing Parties' document productions and difficulties Depository Designees had loading the document productions for review. Sidley's professionals have also received numerous requests by the Debtors' creditor constituencies to become Depository Designees, and have prepared the notices required by the Depository Order. Sidley's professionals have also received the signed Acknowledgements from all approved Depository Designees and have brokered and responded to disputes among the Depository Designees regarding the use of confidential documents that are subject to the Acknowledgement in pleadings and court proceedings.

(ii) *Document Review and Production Activities*

35.    Sidley also represents Tribune Company in its capacity as a Producing Party in connection with the production of documents relating to the Leveraged ESOP Transactions. Sidley's professionals have collected and reviewed several hundreds of thousands

of pages of the Debtors' documents for relevance and privilege, including corporate documents, financial records, board of directors' minutes and resolutions, and electronic computer files from certain of the Debtors' employees, for inclusion in the Document Depository and production to the Depository Designees. Upon completing their review of Debtors' documents, Sidley's professionals also prepared the List of Documents Withheld as Privileged. In addition to reviewing Debtors' documents for responsiveness and privilege, Sidley's professionals, at the request of counsel for Merrill Lynch and Citigroup, reviewed certain of Merrill Lynch's and Citigroup's responsive documents to determine whether those documents contained privileged information.

36.    The collection, review, and analysis of such a volume of documents in connection with the discovery are substantial undertakings, requiring a team of professionals, paraprofessionals, litigation support specialists, and other personnel. Much of the production and review of documents has been accomplished by means of an electronic discovery database system maintained by Sidley's litigation support specialists. Sidley's litigation support specialists received and processed the raw data and physical documents provided by the Debtors into the database so that they can be reviewed by attorneys. Sidley's professionals reviewed the documents, prepared privilege logs, and prepared approved documents for production. Throughout this process, Sidley's team has worked closely with the Debtors' senior management to advise on the legal issues implicated by the document production.

(iii) *Substantive Analysis of the Leveraged ESOP Transactions*

37.    As discussed in Sidley's prior Quarterly Fee Application Requests, Sidley's professionals independently obtained access to most of the discovery documents contained in the Document Depository to conduct their own review and analysis of the Leveraged ESOP Transactions on behalf of the Debtors. During the Fifth Interim Fee Period,

Sidley's professionals continued their review of these documents and reviewed additional documents produced by the Producing Parties. In all, Sidley estimates that the equivalent of 3.2 million pages of documents produced by the Producing Parties are currently stored in the Document Depository. Sidley's litigation support specialists processed these documents into databases for review by Sidley's professionals and from time to time assisted Sidley professionals with extracting certain of these documents from such databases for further review or for substantive analysis of the Leveraged ESOP Transactions and potential claims relating thereto.

38.    During the Fifth Interim Fee Period, a significant number of Sidley's professionals and paraprofessionals from the firm's Bankruptcy and Litigation practice groups expended considerable efforts in connection with the substantive review and analysis of documents produced by the Debtors and the other Producing Parties to evaluate the impact that the Debtors' Leveraged ESOP Transactions may have on the Debtors' plan and the confirmation process. Overall, this review has demanded hundreds of hours of professional time and effort, necessitating substantial staffing by Sidley's professionals to address this matter. Based on the substantive document review, Sidley's professionals were able to develop comprehensive legal and factual analyses concerning any potential fraudulent transfer or other liability implications of these transactions. In turn, this analysis was essential to the negotiation of a proposed settlement of all potential causes of action arising from the Leveraged ESOP Transactions that forms the basis of the Debtors' proposed plan of reorganization (which, was filed with this Court on April 12, 2010).

(b)    Stay Relief Motions

39.    The Debtors were involved in over one hundred active or threatened lawsuits as of the Petition Date, all of which have been stayed as a result of the commencement

18

of these chapter 11 cases.  As in most chapter 11 cases, the Debtors are faced with periodic

requests for relief from the automatic stay.  Specifically, the Debtors have received fifteen (15)

requests for relief from stay since the commencement of these cases.  During the Fifth Interim

Fee Period, Sidley's professionals in the bankruptcy and litigation practice groups continued to

devote time to assess and respond to the stay relief motions and to prepare filings to the Court

with respect to contested motions.

      40.     Specifically, Sidley's professionals prepared and filed initial and

supplemental stipulations permitting the modification of the automatic stay as it related to the

prepetition litigation actions of Allen Francisco and Simone and Victor Conigliaro.  The Court

entered an order approving the Francisco stipulation on January 27, 2010 (Docket No. 3237) and

the Conigliaro stipulation on March 22, 2010 (Docket No. 3800).  Sidley's professionals also

resolved the pending motion for relief from stay filed by Ariel Brignole by agreement between

the Brignoles and the Debtors' insurance providers.  In addition, Sidley's professionals assisted

the Debtors in negotiating and obtaining this Court's approval of a settlement agreement relating

to the prepetition litigation claims of Andrew and Jennifer Faggio.  Sidley's professionals

prepared and filed the motion to approve the Faggio settlement on February 1, 2010 (Docket No.

2381), which was approved by the Court on February 16, 2010 (Docket No. 3424).

      41.     Finally, Sidley's professionals continued to advance the motion pursuant

to Bankruptcy Rule 9019, seeking to settle all claims underpinning Dr. Michael Gutman's

motion for relief from the stay, which was opposed by the Committee.  Sidley's professionals in

the Bankruptcy and Litigation practice groups worked together with Mr. David Bralow, outside

counsel to the Debtors, to analyze and respond to the Committee's objection.  Sidley's

professionals filed the Declaration of Mr. Bralow in support of the motion on December 14,

2009 and engaged in extensive preparation for the evidentiary hearing scheduled for January 28, 2010. Following the hearing, the Court entered an order granting the Debtors' motion and approving the settlement (Docket No. 3298).

(c)     Adversary Proceedings

42.     During the Fifth Interim Fee Period, Sidley's professionals and counsel for Warren Beatty negotiated and reached an agreement to stay the adversary proceeding to determine Tribune Media Services, Inc.'s rights with respect to the ownership of the rights to the Dick Tracy comic book character (the "Beatty Adversary," Adv. No. 09-50486), to avoid duplicative proceedings while Mr. Beatty and Tribune Media Services, Inc. are allowed to continue and proceed with the underlying prepetition action in California to judgment on the merits.

**J.      Travel Time (30480):   Hours: 142.30  Fees: $53,566.50**

43.     During the Fifth Interim Fee Period, Sidley's professionals spent time traveling to Wilmington, Delaware to attend the Debtors' omnibus hearings. In addition, Sidley's professionals traveled to a variety of locations to attend meetings with the Debtors and various creditor constituencies. The hours reflect non-working travel time and the fees requested in this matter category have been reduced by 50% in accordance with Local Rule 2016-2(d)(viii).

**K.      Labor Issues (30490):   Hours: 89.50  Fees: $64,444.50**

44.     Approximately 15% of the Debtors' employees are represented by labor unions. During the Fifth Interim Fee Period, Sidley's professionals continued to address and analyze a variety of legal issues concerning the impact of these chapter 11 cases on the Debtors' collective bargaining agreements, multiemployer pension plans, and obligations thereunder.

45.     In addition, Sidley's professionals have continued to work with the Debtors to respond to various bankruptcy-related issues and questions raised by some of the

Debtors' labor contracts. Specifically, Sidley's professionals in the bankruptcy and employee benefits practice groups reviewed, researched, and analyzed the implications of the sale of substantially all of the assets of the Chicago Sun-Times newspaper business (in connection with its chapter 11 proceedings) on the multiemployer pension plan shared between the Chicago Sun-Times and the Chicago Tribune Company.

**L.      Plan and Disclosure Statement (30500):  Hours: 2,764.30  Fees: $1,812,279.00**

46.      At the Debtors' December 1, 2009 omnibus hearing, Sidley's professionals described for the Court their view of a plan of reorganization characterized by a de-leveraged Tribune and a framework for the settlement of all claims arising from the Leveraged ESOP Transactions. As of that time, Sidley's professionals, together with the Debtors' management and other constituencies, had largely developed the organization, mechanics, and infrastructure of such a plan, with the remaining issue centered on the allocation of distributable value between competing creditor groups. Negotiations on this central issue, informed by the parties' review of the Leveraged ESOP Transaction, continued to be active and ongoing throughout the Fifth Interim Fee Period. On April 12, 2010, Sidley's professionals, acting on behalf of the Debtors, filed a proposed disclosure statement and plan of reorganization that embodied the substantive terms of a Plan Settlement Agreement that was reached with several of the Debtors' key creditor constituencies, including the Committee, Centerbridge, Law Debenture, and JPMorgan and certain other parties.

47.      During the Fifth Interim Fee Period, Sidley's professionals continued to engage in substantial ongoing communications, meetings, and negotiations on behalf of the Debtors with the professionals for the Committee, the Steering Committee, prepetition lenders, noteholders, and other creditor constituencies to formulate the terms of a consensual plan. Sidley's professionals, acting on behalf of the Debtors, have continued to advocate that a

21

settlement plan is in the best interests of the Debtors, their estates, creditors and other parties in interest to avoid the costs of protracted litigation and to maximize the going concern value of the Debtors' businesses.

48.     In furtherance of the formulation of the plan of reorganization during the Fifth Interim Fee Period, Sidley's professionals met and conferred on a regular basis with the Debtors' senior management to analyze and discuss a variety of legal issues raised by the plan, confirmation, and eventual emergence. Sidley's professionals in the bankruptcy, corporate, tax, litigation, and FCC regulatory practice groups have continued to conduct the extensive operational, financial, and legal analyses necessary to the development of the plan, as it evolved based on such negotiations.

49.     In addition, Sidley's professionals continued to prepare the disclosure statement to accompany the plan, which entailed the review and analysis of materials relevant to the Debtors' past and present business operations, significant prepetition liabilities, and events leading up to and since the filing of these chapter 11 cases. Sidley's professionals also continued the preparation of solicitation materials in connection with balloting and voting on the plan.

50.     In aid of the Debtors' ongoing efforts to negotiate a plan of reorganization, on February 1, 2010, Sidley's professionals filed a motion requesting a further extension of the Debtors' exclusive period within which to file a chapter 11 plan and solicit acceptances thereto (the "Fourth Exclusivity Motion") (Docket No. 3286). The Fourth Exclusivity Motion was opposed by certain of the Debtors' creditor constituencies, which necessitated substantial efforts on the part of Sidley's professionals to review and respond to the objections that were filed by such creditors with the Court, and also to engage such creditors to pursue consensual resolution of their objections. Following a full evidentiary hearing on the

Fourth Exclusivity Motion, the Court granted the Debtors' request for an extension, through March 31, 2010 (Docket No. 3533). A subsequent extension of the Debtors' exclusive period to prepare and file a chapter 11 plan was approved by the Bankruptcy Court on April 13, 2010, which extended that exclusive period through that date.

**M.**    **Professional Retention (30510):   Hours: 66.70  Fees: $34,390.00**

51.    The Debtors' large and diverse businesses require the employment and retention of a variety of professionals to support these bankruptcy proceedings and to continue managing the litigation, real estate, tax, accounting, and other needs of their business operations. During the Fifth Interim Fee Period, Sidley's professionals assisted the Debtors with the conversion of the then-retention of an ordinary course professional of the Debtors, Seyfarth Shaw LLP ("Seyfarth") to retention as special litigation counsel for certain employment-related matters under section 327(e) of the Bankruptcy Code. The Seyfarth retention application was approved by the Court on January 25, 2010 (Docket No. 3192). Sidley's professionals also prepared and filed supplemental applications to modify the scope of the existing retentions of Ernst & Young and Lazard Frères in connection with additional services to be provided to the Debtors.

52.    In addition, Sidley's professionals prepared and filed additional supplements to the list of the Debtors' ordinary course professionals ("OCP") and coordinated with the Debtors' legal department and financial advisors to prepare and file monthly and quarterly reports of proposed payments to OCPs. In connection therewith, Sidley's professionals assisted two OCPs in preparing and filing applications with the Court for allowance of their fees, in connection with the Court's order governing the retention and compensation of OCPs.

**N.**     **Tax Issues (30520):  Hours: 149.40  Fees: $87,261.00**

53.     During the Fifth Interim Fee Period, Sidley's professionals reviewed and analyzed a variety of tax issues on behalf of the Debtors, both arising from and in connection with these chapter 11 cases and in connection with Sidley's representation of the Debtors in tax matters in the ordinary course of the Debtors' business.  For example, Sidley's professionals reviewed and analyzed tax-related claims and liabilities, considered the tax implications of proposed transactions, handled appeals of tax assessments, advised the Debtors with respect to potential settlements of tax claims, and communicated with taxing authorities.  In addition, Sidley's professionals in the Tax and Bankruptcy practice groups worked with the Debtors' senior management and outside tax professionals to negotiate and document the settlement of tax-related claims filed by the states of Connecticut and California.  Motions seeking approval of these settlements were filed with the Bankruptcy Court on March 29, 2010 (Docket Nos. 3887 and 3888).

**O.**     **Claims Processing (30530):  Hours: 210.40  Fees: $112,942.50**

54.     During the Fifth Interim Fee Period, Sidley's professionals continued evaluating, researching, and analyzing the treatment of various types of claims arising in the Debtors' chapter 11 cases, covering the full spectrum of potential liabilities.  To date, over 6,390 proofs of claim have been filed in these chapter 11 cases.  Sidley's professionals assigned to handle claims-related matters participated in regular conference calls with the Debtors' financial advisors, Alvarez and Marsal, in order to coordinate the processing of the proofs of claim, evaluating the legal sufficiency of the claims, and preparing objections thereto.

55.     During the Fifth Interim Fee Period, Sidley's professionals, working together with the Debtors' management, business personnel, and Alvarez and Marsal, prepared and filed the Debtors' 12th through 18th omnibus objections to claims as well as a stand-alone

objection to a $50 billion claim asserted in the Debtors' chapter 11 cases, which was by far the largest single proof of claim filed in the Debtors' cases. In addition, during the Fifth Interim Fee Period, the Bankruptcy Court entered orders sustaining the Debtors' 7th through 13th omnibus objections that had previously been filed by Sidley on behalf of the Debtors, subject to the continuance of objections to certain claims of creditors who filed responses to the 10th omnibus objection. In addition, Sidley's professionals assisted the Debtors with the implementation of the claims settlement procedures that were approved by this Court in the prior interim period.

**P.      Business Operations (30550):   Hours: 453.20  Fees: $239,859.50**

56.     During the Fifth Interim Fee Period, Sidley continued to represent the Debtors in corporate and transactional matters in the ordinary course of the Debtors' business to facilitate the Debtors' efforts to stabilize and reposition their businesses through cost saving and revenue enhancing strategies. Sidley's professionals in the Corporate practice group also reviewed and analyzed various corporate structure issues and reporting requirements necessary to effectuate the Debtors' emergence from chapter 11.

**Q.      Case Administration (30560):   Hours: 420.10  Fees: $221,216.00**

57.     During the Fifth Interim Fee Period, Sidley's professionals have engaged in various general case administration tasks, including scheduling and participating in hearings, reviewing and reporting on docketed filings to the Debtors, the Committee, the United States Trustee, and other interested parties, and maintaining a schedule of critical dates and deadlines. On a periodic basis during this Fifth Interim Fee Period, Sidley's professionals participated in status calls with the Debtors' senior management and financial advisors to discuss pending motions and issues and the outcome of each hearing. In addition, Sidley's paraprofessionals are responsible for monitoring the docket for all filed pleadings and preparing and distributing a daily status report to the Debtors' senior management and Sidley professionals.

**R.    Creditor Communications (30570):  Hours: 48.70  Fees: $28,363.00**

58.    Throughout the Fifth Interim Fee Period, Sidley's professionals have responded to numerous inquiries and communications from individual creditors as well as from representatives of larger groups of the Debtors' creditor constituencies regarding the status of these chapter 11 cases.

**S.    Bankruptcy Schedules (30580):  Hours: 86.80  Fees: $50,283.00**

59.    Sidley's professionals continue to work in cooperation with the Debtors and their financial advisors at Alvarez and Marsal to analyze the Debtors' schedules of assets and liabilities and statements of financial affairs, with the goal of ensuring accuracy and completeness of all financial disclosures.  In connection therewith, Sidley's professionals contributed in the preparation of amended schedules of assets and liabilities of Debtor Tribune CNLBC, LLC, which amended schedules were filed with the Bankruptcy Court on December 9, 2009 [Docket No. 2779].  Sidley's professionals also reviewed and prepared the third amended schedules and statements of the Debtors, which were filed on March 3, 2010 [Docket Nos. 3548-3599].

**T.    Employee Issues (30590):  Hours: 203.80  Fees: $118,848.00**

60.    During the Fifth Interim Fee Period, Sidley's professionals in the Bankruptcy and Employment practice groups remained substantially engaged in assisting the Debtors with obtaining approval of their motions to implement the proposed 2009 management incentive plan ("MIP"), consisting of an annual MIP, a transition MIP (the "TMIP"), and a key operators bonus (the "KOB") (the "2009 MIP Motion"), which the Court had taken under advisement after a contested evidentiary hearing.  Given that the 2009 performance period was completed during the Fifth Interim Fee Period, on January 20, 2010 Sidley's professionals prepared and filed a proposed order under certification of counsel requesting that the Court

26

bifurcate its decision and separately rule on the annual MIP component of the plan. That request was granted on January 21, 2010 (Docket No. 3159) and at the Debtors' January 27 omnibus hearing, the Court approved the annual MIP component of the plan and continued to take under advisement the Debtors' request to implement the remaining two components, the TMIP and KOB.

61.    In addition to the foregoing, Sidley's professionals responded to inquiries and analyzed various issues involving the Debtors' tax-qualified pension plans, responded to numerous information requests of current and former employees, assembled and analyzed employee-related claims, and handled various other issues in connection with the Debtors' employees.

**U.    Asset Disposition (30600): Hours: 2.50  Fees: $1,267.50**

62.    During the Fifth Interim Fee Period, Sidley's professionals completed various post-closing activities relating to the disposition of the Chicago Cubs Major League Baseball franchise and related assets.

### EXPENSES INCURRED

63.    Sidley has incurred expenses of $205,852.05 in connection with its services rendered to the Debtors during the Fifth Interim Fee Period. These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer-assisted legal research, travel-related expenses, overtime services, and in-house document production. Sidley submits that all such expenses are necessary and actual expenses for the performance of its services in these cases, and further submits that many of such expenses were necessitated by the time constraints under which Sidley's professionals and staff have operated in this case.

64.    Computer research and information retrieval services are charged on a time, item and/or search-type basis which takes advantage of certain discounts that Sidley is able to negotiate with the relevant service providers because of the Firm's size and volume of usage. The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's costs.

65.    Sidley submits that all travel expenses incurred during the period covered by this Application were necessary and reasonable under the circumstances.  In particular, Sidley submits that, to the best of its knowledge, all air travel utilized by Debtors' personnel during the period covered by this Application was at the prevailing coach-class rate for such travel less any corporate discounts received by Sidley, in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.

66.    Sidley's normal billing practices, as set forth in the pleadings supporting its retention in these chapter 11 cases, include standard secretarial services as part of normal overhead.  For certain projects involving large and/or time-sensitive administrative and logistical requirements resulting from client needs, Sidley utilizes the services of third-party providers in the place of clerical personnel on staff during normal business hours and bills those services to the client at Sidley's cost for such services.  During the Fifth Interim Fee Period, Sidley charged a total of $546.89 relating to outside word processing and/or document binding/drilling services that were billed to the Debtors at cost; that is, no markup for such services is applied by Sidley.

67.    In connection with Sidley's maintenance of the Document Depository, in which the equivalent of approximately 3.2 million pages of documents relating to the Leveraged ESOP Transactions are electronically stored, Sidley utilized the services of an outside vendor to process electronic data files for production upon request to the Depository Designees.  During

28

the Fifth Interim Fee Period, Sidley charged a total of $1,790.00 relating to such outside

document processing services (under the expense category "Professional Services/Specialists")

that were billed to the Debtors at cost.  A detailed breakdown of Sidley's expenses incurred in

rendering services to the Debtors during the period covered by this application is incorporated

into this Application as part of Attachment B hereto.

## REVIEW OF APPLICABLE LOCAL RULE

68.    The undersigned has reviewed the requirements of Local Rule of

Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of

Delaware 2016-2 and certifies to the best of his information, knowledge and belief that this

application substantially complies with Rule 2016-2.

## NOTICE

69.    Notice of this Application has been served upon the Notice Parties

specified in the Fee Orders.  In accordance with the terms of the Fee Orders, Sidley respectfully

submits that no other or further notice is required.

## NO PRIOR REQUEST

70.    Other than the applicable Monthly Fee Applications, no previous

application respecting the relief requested herein has been made to this or any other Court.

WHEREFORE, after appropriate notice and hearing, Sidley Austin LLP respectfully requests the Court (i) to approve, pursuant to 11 U.S.C. §§ 327, 331, and 503, interim compensation in the amount of $5,426,757.50 and reimbursement of expenses in the amount of $205,852.05, (ii) to authorize the payment of such amounts by the Debtors to Sidley, less any amounts previously paid to Sidley pursuant to the Monthly Fee Applications for the period covered by this fifth Quarterly Fee Application Request and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order, and (iii) to grant such further relief as is just and proper.

Dated: April 15, 2010

Respectfully submitted,

James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

ATTORNEYS FOR DEBTORS AND DEBTORS
IN POSSESSION