# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Hearing Date: TBD<br>Objection Deadline: May 12, 2010 at 4:00 p.m. |

## FIRST QUARTERLY FEE APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS EMPLOYMENT LITIGATION COUNSEL TO THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS FOR THE PERIOD OF OCTOBER 1, 2009 THROUGH NOVEMBER 30, 2009

Name of Applicant:   **Seyfarth Shaw LLP**

Authorized to Provide   **Debtors**
Professional Services in the Ordinary Course
of Business to:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

8940429v.1

2

| | |
|---|---|
| Date of Ordinary Course Professional Retention: | **January 15, 2009** |
| Period for Which Compensation and Reimbursement is Sought: | **October 1, 2009 through November 30, 2009** |
| Amount of compensation sought as actual, reasonable and necessary: | $174,768.55 |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | $  6,971.75 |

This is a(n):  ____ monthly    __X__ interim    ____ final application

Prior Interim Fee Applications

None.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: TBD<br>Objection Deadline: May 12, 2010 |

## FIRST QUARTERLY FEE APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS EMPLOYMENT LITIGATION COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR THE PERIOD OF OCTOBER 1, 2009 THROUGH NOVEMBER 30, 2009

Seyfarth Shaw LLP ("Seyfarth"), employment litigation counsel for the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

8940429v.1

the "Debtors"), respectfully submits this application (the "Application") to this Court, pursuant to (i) sections 327, 331, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (iv) the Order Authorizing the Debtors to Retain, Employ, and Compensation Certain Professionals Utilized by the Debtors in the Ordinary Course of Business (the "OCP Order"), (v) the Order Establishing Procedure for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Interim Compensation Order"), as amended; and (vi) the Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Application (the "Fee Examiner Order") for the allowance and payment of fees in the amount of $174,768.55 and reimbursement of expenses in the amount of $6,971.75. In support of the Application, Seyfarth respectfully states as follows:

## BACKGROUND OF THE CASES

1. On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 112 entities.

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "<u>Committee</u>").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327, 331, and 503 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Rule 2016-2 of the Local Rules.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

6. On December 26, 2008, the Debtors filed the Motion for an Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code (the "<u>OCP Motion</u>"). [Docket No. 148]. In the OCP Motion, the Debtors sought approval of this Court to employ and retain the Ordinary Course Professionals[3] to provide services to the Debtors as necessary for the day-to-day operations of the Debtors' businesses on terms substantially similar to those in effect prior to the Petition Date. Exhibit A to the OCP Motion

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the OCP Motion and OCP Order.

contained a list of Ordinary Course Professionals sought to be retained by the Debtors, including Seyfarth.[4] On January 15, 2009, this Court granted the OCP Order approving procedures for the employment, retention, and compensation of the Ordinary Course Professionals. [Docket No. 227.]

7. Retention and compensation of the Ordinary Course Professionals is subject to the terms and conditions described in the OCP Order, including a Monthly Cap on the fees permitted to be paid to such Ordinary Course Professionals, per month on average over a rolling three-month period. Seyfarth was retained by the Debtors as business litigation and employment litigation counsel to the Debtors, in their ordinary course of business, with a Monthly Cap of $50,000.[5] The OCP Order provides that the fees incurred by any Ordinary Course Professional with a Monthly Cap of $50,000 shall not exceed such Monthly Cap per month on average over any consecutive two-month period. [See OCP Order at 2.]

8. The OCP Order provides that in the event the fees incurred and invoiced by any Ordinary Course Professional exceed the applicable Monthly Cap, such Ordinary Course Professional shall be required to seek this Court's approval of all fees invoiced for that month (including amounts below the cap) in accordance with sections 330 and 331 of the Bankruptcy Code, all applicable Bankruptcy Rules and Local Rules, and the procedures set forth in the Interim Compensation Order and the Fee Examiner Order.

9. In October 2009, Seyfarth exceeded the Monthly Cap. Accordingly, on November 25, 2009, Seyfarth filed its Monthly Application for Allowance and Payment of

---

[4] Exhibit A to the OCP Motion has been subsequently supplemented by the Debtors to add additional Ordinary Course Professionals or to seek increases to the Monthly Cap applicable to existing Ordinary Course Professionals. [See Docket Nos. 544, 877, 1086, 1756, 1826, 1887, 2283 and 2412.]

[5] Seyfarth was initially retained as an Ordinary Course Professional with a Monthly Cap of $35,000, which was subsequently increased to $50,000. [Docket No. 544]

4

8940429v.1

Compensation for Services Rendered and Reimbursement of Expenses as Employment Litigation Counsel to the Debtors in the Ordinary Course of Business for the Period October 1, 2009 through October 31, 2009 (the "First Monthly Fee Application"). [Docket No. 2667].

10.  In November 2009, Seyfarth again exceeded the Monthly Cap. Accordingly, on January 25, 2009, Seyfarth filed its Monthly Application for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses as Employment Litigation Counsel to the Debtors in the Ordinary Course of Business for the Period November 1, 2009 through November 30, 2009 (the "Second Monthly Fee Application"). [Docket No. 3195].

11.  In December 2009, it became apparent that Seyfarth was likely to continue to exceed the existing monthly cap on an ongoing basis. Accordingly, the Debtors determined it would be necessary for Seyfarth to be retained as special counsel for certain employment litigation matters. Thus on January 8, 2010, the Debtors filed an Application to Retain Seyfarth Shaw LLP as Special Counsel for Certain Employment Litigation Matters. [Docket No. 3046].

12.  On January 25, 2010, this Court entered the Order Authorizing Debtors and Debtors in Possession to Employ and Retain Seyfarth Shaw LLP as Special Counsel for Certain Employment Litigation Matters Pursuant to 11 U.S.C. §§327(e) and 1107, *nunc pro tunc*, to December 1, 1009 (the "Retention Order"). [Docket No. 3192].

13.  Seyfarth's September invoice is not included in this quarterly fee application, as the September fees were approved and duly paid under the ordinary course retention and pursuant to the OCP Order.

## PROCEDURAL BACKGROUND FOR THE APPLICATION

14.  The Interim Compensation Order and the Fee Examiner Order (together, the "Fee Orders"), provide all professionals retained in these cases pursuant to section 327, 328, or 1103 of the Bankruptcy Code (the "Case Professionals") must file with the Court and provide to the

5

8940429v.1

Fee Examiner monthly applications for interim allowance of compensation for services rendered and reimbursement of expenses incurred, together with the time entries and itemized expenses (the "Monthly Fee Application"). The notice parties specified in the Fee Orders (the "Notice Parties") have twenty (20) days after service of a Monthly Fee Application to object to such Monthly Fee Application (the "Objection Deadline"). Upon expiration of the Objection Deadline, the applicable Case Professional must certify in writing the Debtors that no objection or partial objection has been filed with the Court relative to that professional's Monthly Fee Application, whichever is applicable, whereupon the Debtors are authorized to pay such professional an amount equal to the lesser of (i) 80% of the fees and 100% of the expenses requested in the Monthly Fee Application or (ii) 80% of the fees and 100% of the expenses not subject to an objection.

15.    Pursuant to the procedures set forth in the Fee Orders, Seyfarth prepared, filed with the Court, and served upon the Notice Parties and the Fee Examiner Monthly Fee Applications for the periods of October 2009 and November 2009, which Monthly Fee Applications are incorporated herein by reference. Accordingly, Seyfarth submitted all of its Monthly Fee Applications for the Debtors' chapter 11 cases for this First Interim Fee Period.

16.    In addition to the Monthly Fee Applications, beginning with the three-month period ending February 28, 2009, and each three-month period thereafter, all Case Professionals must file with the Court and serve on the Notice Parties interim applications for allowance of compensation and reimbursement of expenses of the amounts sought in the Monthly Fee Applications filed during such period (a "Quarterly Fee Application Request"). Quarterly Fee Application Requests must include a summary of the Monthly Fee Applications that are the subject of the request and any other information requested by the Court or required by the Local

Rules. This Application represents the first Quarterly Fee Application Request that Seyfarth has filed with the Court in connection with these chapter 11 cases, and it covers the period from October 1, 2009 through November 30, 2009 (the "First Interim Fee Period"), both dates inclusive.

### RELIEF REQUESTED

17. By this Application, Seyfarth Shaw LLP requests that the Court approve the interim allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by Seyfarth as special employment litigation counsel to the Debtors during the First Interim Fee Period.

18. The amount of fees sought for services during the First Interim Fee Period is $174,768.55, representing 425.70 hours in professional and paraprofessional time for such services. Reimbursement of actual, necessary expenses incurred by Seyfarth during the First Interim Fee Period in connection with these services is requested in the amount of $12,061.41. Seyfarth seeks the interim allowance of such compensation, and this Court's authorization for payment of such amounts by the Debtors to Seyfarth, less any amounts previously paid to Seyfarth pursuant to the Monthly Fee Applications for the period covered by this Application and the procedures set forth in the Fee Orders.

19. Seyfarth has received no payment and no promises of payment from any source for services rendered in these chapter 11 cases. There is no agreement between Seyfarth and any other party for the sharing of compensation to be received for the services rendered by Seyfarth to the Debtors. All professional and paraprofessional services for which compensation is sought herein were rendered solely for or on behalf of the Debtors.

7

## **SERVICES RENDERED**

20. Seyfarth serves the Debtors as primary outside employment litigation counsel. Seyfarth customarily performs employment and labor relations counsel to Debtors in various litigation and adverse matters.

21. Seyfarth has rendered services to the Debtors in connection with these Chapter 11 cases during the First Interim Fee Period, in its capacity as ordinary course employment litigation counsel. The services performed by Seyfarth's professionals and paraprofessionals during the period covered by this Application were necessary and have directly contributed to the effective administration of the Debtors' chapter 11 cases.

22. Seyfarth inadvertently omitted the following invoices from the First Monthly Fee Application: (a) invoice number 1657868 in the amount of 102.60; and (b) invoice number 1657873 in the amount of $863.10, both of which are attached hereto as Exhibit A. Invoice numbers 1657868 and 1657873 were submitted to the Debtors for review and authorized for payment under ordinary course retention.

23. Additionally, Seyfarth inadvertently omitted invoice number 1670510 in the amount of $1,242.00, attached hereto as part of Exhibit A, from the Second Monthly Fee Application. Invoice number 1670510 was submitted to the Debtors for review and authorized for payment under ordinary course retention.

24. A breakdown of the total hours expended by each professional on all matters and a breakdown of amounts sought by each matter category covered herein are included as part of Exhibit B to this Application, as required by Local Rule 2016-2. A detailed description of the services provided to the Debtors is incorporated by reference to the Monthly Fee Applications previously filed with the Court. The following is a summary of the activities performed by

8

Seyfarth's professionals and paraprofessionals during the First Interim Fee Period, organized by project category:

### A. Chicago Tribune - General (57634-01)

Fees: $8,384.50          Total Hours: 12.80

25. During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

### B. Chicago Tribune - Work Schedule Grievance (57634-04)

Fees: $57.00          Total Hours: .10

26. During the Application Period, Seyfarth attorneys expended time responding to correspondence relating to grievance/arbitration.

### C. Chicago Tribune - JoAnn Parker v. (57634-06)

Fees: $8,016.00          Total Hours: 19.90

27. During the Application Period, Seyfarth attorneys expended time in connection with case preparation relating to the litigation.

### D. Los Angeles Times - General Matters (33175-1)

Fees: $380.00          Total Hours: .80

28. During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

### E. Los Angeles Times - Clement, Jayne (33175-20)

Fees: $522.00          Total Hours: 1.20

29. During the Application Period, Seyfarth attorneys expended time in connection with the dismissal of the action Jayne Clement v. Los Angeles Times, et al.

**F.    Los Angeles Times - Country Club (17832-34)**

Fees: $544.00          Total Hours: .80

30.    During the Application Period, Seyfarth attorneys expended time relating to circulation matters.

**G.    Baltimore Sun - Labor-General (12575-01)**

Fees: $5,390.00          Total Hours: 9.30

31.    During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

**H.    Baltimore Sun - General Labor (12575-28)**

Fees: $5,279.00          Total Hours: 9.10

32.    During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

**I.    Baltimore Sun - Pay for Performance (12575-296)**

Fees: $8,083.00          Total Hours: 11.80

33.    During the Application Period, Seyfarth attorneys expended time preparing for and representing the Debtor in an arbitration hearing.

**J.    Baltimore Sun - Columnist Reporting Assignments (12575-297)**

Fees: $3,675.00          Total Hours: 6.60

34.    During the Application Period, Seyfarth attorneys expended time preparing for a pending arbitration case.

**K.    Tribune - Labor-General (11089-1)**

Fees: $862.50          Total Hours: 1.50

35. During the Application Period, Seyfarth attorneys expended time relating to employee relations advice.

**L.   Chris Neuman v. Ira Goldstone; KTLA, Inc. (66929-2)**

Fees: $146,032.00          Total Hours: 338.60

36. During the Application Period, Seyfarth attorneys expended time in connection with case investigation and case preparation.

**M.   Tribune - Corporate Labor Relations (36377-01)**

Fees: $2,849.00          Total Hours: 5.00

37. During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

**N.   Tribune - Corporate Independent Contractor Matters (36078-02)**

Fees: $816.00          Total Hours: 1.20

38. During the Application Period, Seyfarth attorneys expended time relating to labor relations advice.

**O.   Chicago Tribune - Michael Cordts v. (10512-90)**

Fees: $1,242.00          Total Hours: 2.70

39. During the Application Period, Seyfarth professionals expended time relating to a case status hearing.

## EXPENSES INCURRED

40. Seyfarth inadvertently omitted disbursement invoice number 16757875 in the amount of $259.11 from the First Monthly Fee Application. Invoice number 1657875, attached

11

8940429v.1

hereto as part of <u>Exhibit A</u>, was submitted to the Debtors for review and was authorized for payment under ordinary course retention.

41. Seyfarth has incurred expenses of $6,971.75 in connection with its services rendered to the Debtors during the First Interim Fee Period. These expenses represent actual out-of-pocket costs for items incurred exclusively for the direct benefit of the Debtors, including, but not limited to, duplicating charges, document delivery and messenger services, telephone and facsimile charges, computer- assisted legal research, travel-related expenses, deposition transcripts, Court fees and filing fees. Seyfarth submits that all such expenses are necessary and actual expenses for the performance of its services in these cases.

42. Computer research is charged on a time, item and/or search-type basis which takes advantage of certain discounts that Seyfarth is able to negotiate with its service providers due to the Firm's size and volume of usage. The Firm's charges for computerized legal research such as Westlaw or Lexis are based on a rate that recovers no more than the Firm's actual costs.

43. Seyfarth submits that during the First Interim Fee Period, duplicating costs were not consistently charged at .10 cents per page. In response to the Fee Examiner's preliminary inquiry regarding duplicating charges in the First Monthly Fee Application, Seyfarth submits that the total charge for copies should be reduced from $893.80 to $482.60. In response to the Fee Examiner's preliminary inquiry regarding duplicating charges in the Second Monthly Fee Application, Seyfarth submits that the total charge for copies should be reduced from $822.35 to $411.05.

44. Seyfarth submits that during the First Interim Fee Period, facsimile costs were not consistently charged at $1.00 per page for outgoing facsimiles. In response to the Fee

8940429v.1

Examiner's preliminary inquiry regarding facsimile charges, Seyfarth submits that the total charge for outgoing facsimiles in the First Monthly Fee Application should be reduced from $24.56 to $18.56. In response to the Fee Examiner's preliminary inquiry regarding facsimile charges, Seyfarth submits that the total charge for outgoing facsimiles in the Second Monthly Fee Application should be reduced from $3.75 to $1.75.

45.     Pursuant to the Fee Examiner's Final Report in connection with the First Monthly Fee Application, filed with the Court on March 10, 2010 [Docket No. 3705], Seyfarth agrees to a voluntary duplicating expense reduction of $411.20 and a voluntary facsimile expense reduction of $6.00.

46.     The Fee Examiner's Final Report in connection with the Second Monthly Fee Application has not yet been filed with the Court. However, Seyfarth agrees to a voluntary duplicating expense reduction of $411.30 and a voluntary facsimile expense reduction of $2.00.

### REVIEW OF APPLICABLE LOCAL RULE

47.     The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with the requirements of Local Rule 2016-2. The undersigned further certifies that the Debtors have had an opportunity to review this Application before it was filed with the Court.

### NOTICE

48.     Notice of this Application has been served upon the Notice Parties specified in the Fee Orders. In accordance with the terms of the Fee Orders, Seyfarth respectfully submits that no further notice is required.

### NO PRIOR REQUEST

49.     No previous application with respect to the relief requested herein has been made to this or any other Court.

13

8940429v.1

WHEREFORE, after appropriate notice and hearing, Seyfarth Shaw LLP respectfully requests the Court (i) to allow fees in the amount of $174,768.55 and reimbursement of expenses in the amount of $6,971.75 pursuant to 11 U.S.C. §§ 327, 331, and 503, and the procedures for compensation and reimbursement of expenses for professionals and consideration of fee applications set forth in this Court's Interim Compensation Order and Fee Examiner Order, and (ii) to grant such further relief as is just and proper.

Dated: April 22, 2010

                                          Respectfully submitted,

                                          /s/ Jeremy P. Sherman
                                          Jeremy P. Sherman
                                          SEYFARTH SHAW LLP
                                          131 S. Dearborn Street, Suite 2400
                                          Chicago, Illinois 60603-5577
                                          Telephone: 312-460-5901
                                          Facsimile: 312-460-7901