# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: May 18, 2010 at 1:00 p.m. ET** |
| | **Objection Deadline: May 11, 2010 at 4:00 p.m. ET** |

## MOTION OF DEBTOR TRIBUNE COMPANY FOR ENTRY OF AN ORDER AUTHORIZING REJECTION OF THE MASTER AGREEMENT BETWEEN TRIBUNE COMPANY AND DUN & BRADSTREET, INC. PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE

Debtor Tribune Company ("Tribune") respectfully moves this Court (the

"Motion") pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code")

for entry of an order authorizing Tribune to reject that certain master agreement dated as of

January 28, 2004 (the "Master Agreement") and related preferred pricing plan dated January 1,

2006 (as amended, modified, or supplemented, the "Preferred Pricing Plan," and together with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the Master Agreement, the "Agreement") between Tribune and Dun & Bradstreet ("D&B").

In support of this Motion, Tribune submits the declaration of Harry Amsden, Senior Vice

President of Financial Operations for Tribune (the "Amsden Declaration"), attached as Exhibit

A, and states as follows:

## STATUS OF THE CASE AND JURISDICTION

1.       On December 8, 2008 (the "Petition Date"), each of the debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On December 10, 2008,

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for

procedural purposes only.  An additional Debtor, Chicago National League Ball Club, LLC

(n/k/a Tribune CNLBC, LLC), voluntarily commenced a chapter 11 case on October 12, 2009,

and that case was procedurally consolidated with the other Debtors' chapter 11 cases by an order

of the Bankruptcy Court entered October 14, 2009.

2.       The Debtors have continued in possession of their respective properties

and have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee.

3.       On December 18, 2008, the Office of the United States Trustee appointed an

official committee of unsecured creditors in these cases.

4.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought herein is

section 365 of the Bankruptcy Code.

## BACKGROUND CONCERNING THE AGREEMENT

5.    D&B is a provider of business information, including information concerning a company's trade experience, historical finances, sales volume, trends, employee headcount, and prediction model scores. Tribune utilizes D&B's software to monitor commercial information and business records to evaluate current and potential advertising customers for creditworthiness. On January 28, 2004, Tribune and D&B entered into the Master Agreement, which granted Tribune a non-exclusive, non-transferable license to use certain information and software provided by D&B. Under the Master Agreement, Tribune was required to pay for D&B's services at an annual rate on an installment plan for unlimited contractual usage.

6.    On January 1, 2006, Tribune and D&B entered into the Preferred Pricing Plan for an initial three (3) year term. Under the Preferred Pricing Plan, Tribune purchased an unlimited data plan for itself and certain of its subsidiaries for access to D&B's services. The Preferred Pricing Plan included the right to cancel the contract if notice of intent to terminate were properly served on D&B at least thirty (30) days prior to the end of the three (3) year term. However, if Tribune did not serve notice of its intent to terminate, the Preferred Pricing Plan would automatically renew for an additional three (3) years. Tribune did not serve notice on D&B that it intended to terminate the Agreement in the thirty (30) days prior the end of the first three (3) year term, i.e., by December 2, 2008 (six (6) days prior to the Petition Date), and accordingly the Agreement renewed January 1, 2009, for an additional three (3) year term.[2]

_____

[2] A contract that renews postpetition is a prepetition executory contract so long as the renewal is automatic under the prepetition contract and does not require action by either party to the contract to renew. *See In re Smith Corona Corp.*, *SCM*, 210 B.R. 243, 247 (Bankr. D. Del. 1997) (concluding that a prepetition contract that automatically renewed, absent affirmative action by a party to terminate the contract, was executory); *see also In re Teligent Inc.*, 324 B.R. 479 (S.D.N.Y. 2005) (finding that a contract that does not terminate upon its own terms but that continues unless canceled is an executory contract even if the opportunity to cancel arose postpetition); *In re Country Club Estates at Aventura Maintenance Ass'n, Inc.*, 227 B.R. 565, 568 (Bankr. S.D. Fla. 1998) ("[A] contract which is

46429/0001-6494063v1

7.      Under the terms of the Preferred Pricing Plan, Tribune is required to pay one-hundred and twelve percent (112%) of the preceding year's price term for each additional year under the renewed Preferred Pricing Plan.[3] Tribune paid all amounts outstanding under the 2009 term in a timely manner.

8.      Over the past several months, Tribune has been evaluating the relative costs and benefits associated with the Agreement, as well as Tribune's ability to obtain similar services from other providers. As a result of this evaluation, Tribune has determined it can obtain alternative services that offer similar features and options, at a much lower price, from another provider. Accordingly, as articulated in further detail below, the Agreement is no longer beneficial or necessary to Tribune's or its subsidiaries' business operations.

## RELIEF REQUESTED

9.      By this Motion, the Debtors respectfully request that the Court enter an order, in substantially the form of the Order filed concurrently herewith, authorizing and approving Tribune's rejection of the Agreement, on the grounds that the Agreement is no longer beneficial or necessary to Tribune's business operations, effective as of the date the Order is entered.[4]

## BASIS FOR RELIEF

10.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11

---

renewed pursuant to an automatic renewal provision is merely a continuation of the original contract. The result may be different if a contract is renewed with new or modified terms.").

[3] Certain provisions of the Agreement and the agreement between Equifax (as defined below) and Tribune, including the pricing terms thereof, reflect information that may be confidential, proprietary, or commercially or competitively sensitive to either or both parties. As a result, the exact terms of the Agreement and the agreement with Equifax have not been disclosed in this Motion.

[4] The Debtors do not waive any claims they may have against D&B whether or not related to the Agreement.

46429/0001-6494063v1

U.S.C. § 365(a); *see University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d

1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a

contract pursuant to procedures set forth in section 365(a)).  A debtor's assumption or rejection

of an executory contract is subject to review under the business judgment standard.  *See In re*

*ANC Rental Corp.*, 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("[T]o assume and assign an

executory contract or unexpired lease. . . the debtor must establish that the decision is one made

in its sound business judgment."); *In re Federal-Mogul Global Inc.*, 293 B.R. 124, 126 (D. Del.

2003) ("[M]otions to reject executory contracts are evaluated under the business judgment

test.").

11.     Under the business judgment standard, a debtor is required to provide a

reason that, in its business judgment, assuming or rejecting a particular executory contract or

unexpired lease benefits the debtor's estate.  *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist.*

*Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989).  In addition, the debtor must articulate the bases for its

determination. *Id.*  Once the debtor has met its burden, "a court should approve a debtor's

business decision unless the decision is the product of bad faith or gross abuse of discretion."

*See Federal-Mogul*, 293 B.R. at 126; *see also Lubrizol Enters., Inc. v. Richmond Metal*

*Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986); *Enterra*

*Corp. v. SGS Assocs.*, 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard

requires deference to debtor's management absent showing of bad faith, fraud, or gross

overreaching).

12.     Rejection of the Agreement is in the best interests of the Debtors' estates

and creditors.  Tribune has determined it can obtain services that are equally suited to Tribune's

business and that will accomplish the tasks for which D&B's services are currently used from an

46429/0001-6494063v1

alternative provider, Equifax Inc. ("Equifax"). (Amsden Decl. ¶3.) Equifax is able to provide

the necessary services for use in the Debtors' businesses, and any transition from D&B's

products and services to those provided by Equifax will not disrupt Tribune's business. *Id.* Most

importantly, the services offered by Equifax, while similar in quality to D&B's, are being offered

at a significantly lower price than the amounts charged under the Agreement. In addition to the

immediate cost savings, the annual increase under the Equifax agreement is three percent (3%),

which is substantially less than the annual increase of twelve percent (12%) in the contract price

in the Agreement. *Id.* Finally, the Equifax agreement's pricing allows Tribune to pay only for

those services actually used, which, based on Tribune's estimated need for services, will

substantially decrease the amount Tribune will spend when compared to the all-inclusive, flat fee

structure imposed by the Agreement. *Id.* When all costs under the two (2) agreements are taken

into account, Tribune expects to realize significant cost savings under the new agreement. As

such, in Tribune's business judgment, rejection of the Agreement in favor of a new agreement

with Equifax will provide Tribune the opportunity to save a significant amount of money, and is

therefore in the best interests of Tribune's estate and creditors.

13.    For the avoidance of doubt, the Debtors do not waive any claims they may

have against D&B, whether or not related to the Agreement. Furthermore, Tribune's rejection of

the Agreement is without prejudice to the Debtors' right to dispute any claims made with respect

to such rejection and/or any administrative claims asserted in these chapter 11 cases.

## BAR DATE FOR D&B TO FILE CLAIMS

14.    Pursuant to the Bankruptcy Court's Order Establishing Bar Dates for

Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, entered March

26, 2009 (Docket No. 813), D&B shall file a claim for rejection damages, if any, by sending such

6

proof of claim to Tribune Company Claims Processing Center, c/o Epiq Bankruptcy Solutions, LLC; 757 Third Avenue, Third Floor, New York, NY 10017, so that it is received on or before thirty (30) days after entry of the Court's order approving the Motion, or be forever barred from asserting such a claim.

## NOTICE

15.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the administrative agents for Tribune's prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition loan facility; (v) D&B; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

16.    Tribune has not previously sought the relief requested herein from this or any other Court.

WHEREFORE, Tribune respectfully requests that the Court enter an order, in substantially the form of the order filed concurrently herewith, (i) authorizing Tribune's rejection of the Agreement on the terms described herein and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       April 29, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Gregory V. Demo
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

46429/0001-6494063v1