## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>**Hearing Date: May 20, 2010 at 10:00 a.m. ET**<br>**Obj. Deadline: May 13, 2010 at 4:00 p.m. ET**<br>**Related to Docket No. 4009** |

## MOTION OF THE DEBTORS FOR AN ORDER (I) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES; (II) ESTABLISHING DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF JOINT PLAN OF REORGANIZATION; AND (V) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>")[2] hereby move this Court (the "<u>Motion</u>")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

pursuant to sections 105, 1125, 1126 and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3003, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (i) establishing procedures for the solicitation and tabulation of votes to accept or reject the Joint Plan of Reorganization for Tribune Company and its Subsidiaries[3] (as may be amended or supplemented from time to time, the "Plan"), including (a) fixing the voting record date for purposes of determining which Holders of Claims against the Debtors are entitled to vote on the Plan, (b) approving solicitation materials and procedures for distribution of the Plan, Disclosure Statement and related materials, (c) approving forms of notice to Holders of those Claims and Interests that are not entitled to vote to accept or reject the Plan; and (d) approving the forms of Ballot and Master Ballot and establishing procedures for voting on the Plan; (ii) establishing a deadline for return of the Media Ownership Certifications (as described in ¶ 50 below); (iii) scheduling the hearing to consider confirmation of the Plan; (iv) establishing notice and objection procedures in respect of confirmation of the Plan; and (v) granting related relief, all as more fully set forth below.  In support of this Motion, the Debtors respectfully represent as follows:

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.
[3] The Plan is also a prepackaged plan of reorganization for any Guarantor Non-Debtors that commence chapter 11 cases after the date the Plan and Disclosure Statement are filed with the Bankruptcy Court but before the date the Plan is confirmed (the "Prepackaged Plan"), and accordingly contains provisions regarding the classification and treatment of Claims against and Interests in any such Guarantor Non-Debtors.  Unless otherwise provided herein, all references to the Plan in this Motion are also references to any Prepackaged Plan(s).

## STATUS OF CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), the Debtors, with one exception, each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, 111 entities are currently Debtors in these chapter 11 cases.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) (the "Chapter 11 Cases"). [Docket Nos. 43 and 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5.      On March 23, 2009, the Debtors filed their schedules and statements of financial affairs (the "Schedules"). [Docket Nos. 567-789]. The Debtors amended their Schedules on April 13, 2009 [Docket Nos. 894-957], on June 12, 2009 [Docket Nos. 1343-1453], and on March 2, 2010 [Docket Nos. 3548-3599]. Tribune CNLBC filed its Schedules on October 12, 2009 [Case No. 09-13496; Docket Nos. 8-9] and filed amended Schedules on December 9, 2009. [Docket No. 2779].

6.      On March 26, 2009, the Court entered its Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date

Order"), establishing June 12, 2009 at 4:00 p.m. (Eastern Time) as the final date for timely filing

proofs of claim against the Debtors, except Debtor Tribune CNLBC, LLC.  [Docket No. 813].

       7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief

sought herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules

2002, 3003, 3017, 3018, and 3020, and Local Rule 3017-1.

## THE PLAN'S CLASSIFICATION AND VOTING SCHEME

       8.     The Debtors filed the Plan and Disclosure Statement on April 12, 2010.

[Docket No. 4008].  Consistent with section 1125 of the Bankruptcy Code, the Plan provides for

a straightforward voting scheme for the Holders of Claims against and Interests in the Debtors.

Specifically, for Tribune Company, the ultimate parent of the other Debtors, the Plan provides

that the Holders of Claims in three (3) Impaired Classes of Claims will be entitled to vote on the

Plan:  Loan Claims (Class 1C), Senior Noteholder Claims (Class 1D), and Other Parent Claims

(Class 1E).[4]  For Non-Guarantor Debtors, the Holders of General Unsecured Claims (Classes 2E

through 49E) will be entitled to vote on the Plan, and for Guarantor Debtors, the Holders of

Claims in two (2) Impaired Classes of Claims at each Debtor will be entitled to vote on the Plan:

Loan Guaranty Claims (Classes 50C through 111C) and General Unsecured Claims (Classes 50E

through 111E).  In addition, if any Guarantor Non-Debtors commence chapter 11 cases, and

hence propose a Prepackaged Plan, only Holders of Loan Guaranty Claims against such

---

[4] Holders of Other Parent Claims whose Claims are in excess of $1,000 will have the option, through an election on their Ballot, to reduce their Claim in amount to $1,000 and have such Claim treated as a Convenience Claim within Class 1F.

Guarantor Non-Debtor(s) shall be entitled to vote on the Plan.[5]  Votes cast by Holders of Loan Guaranty Claims in Classes 50C through 111C will also be counted as votes cast on the Prepackaged Plan of any Guarantor Non-Debtors that may become Debtors.   All Classes of Claims in this paragraph are referred to herein collectively as the "Voting Classes."

9.        Holders of Claims against and Interests in the Debtors in all other Classes are not entitled to vote on the Plan.  With respect to Tribune Company, Priority Non-Tax Claims (Class 1A), Other Secured Claims (Class 1B), and Convenience Claims (Class 1F) are Unimpaired by the Plan, and hence, the Holders of those Claims are conclusively deemed to accept the Plan without voting.  Holders of EGI-TRB LLC Notes Claims (Class 1I), PHONES Notes Claims (Class 1J), Securities Litigation Claims (Class 1L) and Tribune Interests (Class 1M) will neither receive nor retain any property under the Plan on account of such Claims and Interests, and hence are conclusively deemed to reject the Plan without voting as provided in section 1126(f) of the Bankruptcy Code.

10.        At the Filed Subsidiary Debtors, Priority Non-Tax Claims (Classes 2A through 111A), Other Secured Claims (Classes 2B through 111B), and Interests in Filed Subsidiary Debtors (Classes 2M through 111M) are Unimpaired under the Plan, and hence, the Holders of those Claims and Interests are conclusively deemed to accept the Plan without voting. Holders of Securities Litigation Claims (Classes 2L through 111L) will neither receive nor retain any property under the Plan on account of such Claims, and hence are conclusively deemed to reject the Plan without voting.

11.        If any Guarantor Non-Debtors commence chapter 11 cases, Holders of Claims and Interests in all Classes at such Guarantor Non-Debtor(s), other than Loan Guaranty

---

[5] Holders of Loan Claims in Class 1C and Loan Guaranty Claims in Classes 50C through 111C will receive only one Class C Ballot on which to vote their Claims.  Such votes will be counted as votes to accept or reject the Plan in Class 1C and Classes 50C through 111C.

Claims and Securities Litigation Claims, are Unimpaired and are conclusively deemed to accept the Plan without voting. Holders of Securities Litigation Claims against any Guarantor Non-Debtor will not receive or retain any property under the Plan on account of such Claims, and hence are conclusively deemed to reject the Plan without voting.

12.    All Classes of Claims and Interests that are conclusively deemed to accept the Plan without voting thereon are referred to in this Motion collectively as the "Unimpaired Classes." All Classes of Claims and Interests that are conclusively deemed to reject the Plan without voting thereon are referred to in this Motion collectively as the "Deemed Rejecting Classes." The Unimpaired Classes and the Deemed Rejecting Classes are referred to in this Motion together as the "Non-Voting Classes." [6]

### RELIEF REQUESTED

13.    By this Motion, the Debtors respectfully request entry of an order, in the form submitted with this Motion (the "Solicitation Order"): (i) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the voting record date for purposes of determining which Holders of Claims in the Voting Classes that have not been disallowed for voting purposes ("Voting Claims") are entitled to vote on the Plan and which Holders of Claims and Interests are entitled to receive Non-Voting Packages (as defined below), (b) approving solicitation materials and procedures for distribution of the Plan, the Disclosure Statement and related materials, (c) approving forms of notice to Holders of Claims and Interests in Non-Voting Classes; and (d) approving the forms of Ballot and Master Ballot and establishing procedures for voting on the Plan for Holders of Voting Claims; (ii) establishing

---

[6] The discussion in paragraphs 8-12 does not cover Intercompany Claims, which are Claims against any Debtor held by another Debtor or an affiliate of the Debtors. Such Claims are Impaired under the Plan; however, because the Holders of any such Claims are proponents of the Plan or affiliates thereof, they are deemed to accept the Plan without voting. See Plan at § 4.3.

a deadline for return of the Media Ownership Certifications provided for in section 5.4.2 of the Plan; (iii) scheduling the confirmation hearing; (iv) establishing notice and objection procedures in respect of confirmation of the Plan; and (v) granting related relief, all as more fully set forth below.

14.    In addition to the relief requested by this Motion, the Debtors request that the Disclosure Statement be approved as containing adequate information.  Consistent with Local Rule 3017-1(a), the Debtors have not filed a separate motion seeking approval of the Disclosure Statement.  However, section 1125 of the Bankruptcy Code requires the court to approve a written disclosure statement prior to allowing a plan proponent to solicit votes on a plan of reorganization.  The form of proposed order approving this Motion also contains provisions approving the Disclosure Statement.  At the hearing to approve the Disclosure Statement (the "Disclosure Statement Hearing"), the Debtors will demonstrate, among other things, that the Disclosure Statement contains "adequate information" as that phrase is defined in Section 1125(a)(1) of the Bankruptcy Code and should therefore be approved.

15.    For ease of reference, the key dates requested in this Motion are summarized below:

| Milestone | Date |
|---|---|
| Voting Record Date | May 17, 2010 |
| Mailing of Solicitation Packages Completed | June 1, 2010 |
| Deadline to File 3018 Motions | June 21, 2010 |
| Deadline to Return Media Ownership Certifications | July 1, 2010 |
| Hearing on 3018 Motions, if any | July 13, 2010 |
| Deadline to Publish Confirmation Notice | July 16, 2010 |
| Confirmation Objection Deadline | July 30, 2010 |
| Voting Deadline | July 30, 2010 |
| Deadline to File Responses to Confirmation Objections, proposed Findings of Fact and Conclusions of Law, Memoranda and Declarations in Support of Confirmation | August 11, 2010 |
| Confirmation Hearing | August 16, 2010 |

## I.  PROPOSED SOLICITATION AND NOTICE PROCEDURES

### A.  Fixing a Voting Record Date

16.    For the purpose of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.  See Fed. R. Bankr. P. 3018(a).[7]

17.    The parties from which votes to accept or reject the Plan are to be solicited include, inter alia, holders of Tribune's prepetition Senior Notes, which are publicly traded and hence have a changing ownership.  In addition, other unsecured claims against the Debtors are routinely traded.  In order to provide the Debtors with sufficient time to obtain the necessary records to identify the Holders of all Claims in advance of the date the order approving this Motion may be entered, the Debtors propose that the Court establish **May 17, 2010**, which is three (3) business days prior to the hearing on this Motion and the Disclosure Statement, as the record date (the "Record Date") for purposes of determining which Holders of Claims are entitled to vote to accept or reject the Plan, and, in addition, the Holders of Claims and Interests that are entitled to receive Solicitation Packages or Non-Voting Packages (as each term is defined below).

---

[7] Bankruptcy Rule 3018(a) provides in relevant part that "an equity security holder or creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the equity security holder or creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing."

B. **Approving Solicitation Packages and Non-Voting Packages and Procedures for Distribution Thereof to Voting and Non-Voting Classes**

    i.      <u>Solicitation Packages</u>

    18.    The materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization are set forth in Bankruptcy Rule 3017(d), which provides that:

> Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (i)    the plan or a court-approved summary of the plan;
>
> (ii)    the disclosure statement approved by the court;
>
> (iii)    notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (iv)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

    19.    In accordance with the requirements of Bankruptcy Rule 3017(d), after the Court has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, the Debtors propose to distribute, or cause to be

distributed, to Holders of Voting Claims by first-class mail, solicitation packages (the

"Solicitation Packages") containing copies of:

> a. a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto;[8]
>
> b. the Solicitation Order, excluding exhibits annexed thereto;
>
> c. the Confirmation Hearing Notice (as defined below);
>
> d. a Ballot[9] (as defined below), together with a pre-paid return envelope; and
>
> e. any other supplemental materials as the Debtors may file with the Court.

20.    In addition, to the extent that the following parties have not otherwise

received a Solicitation Package, the Debtors will distribute (a) a CD-ROM containing the

Disclosure Statement, together with the Plan and other exhibits annexed thereto, (b) the

Solicitation Order, excluding exhibits annexed thereto, and (c) the Confirmation Hearing Notice

to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the

Loan Agents for Tribune Company's pre-petition loan facilities; (iv) counsel to the

administrative agent for the Debtors' post-petition financing facility; and (v) all parties having

requested notice pursuant to Bankruptcy Rule 2002.  Service of the Disclosure Statement and

---

[8] The Disclosure Statement and Plan, including exhibits, are likely to be in excess of 500 pages. Accordingly, to reduce administrative costs associated with printing and mailing such large documents, the Debtors propose to serve the Disclosure Statement and Plan (including exhibits) via CD-ROM to the extent practicable. This procedure has been approved in numerous other large chapter 11 cases. See, e.g., In re Merisant Worldwide, Inc., Case No. 09-10059 (PJW) (Bankr. D. Del. Oct. 23, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Dec. 16, 2008); In re Sea Containers Ltd., Case No. 06-11156 (KJC) (Bankr. D. Del. Sept. 22, 2008); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Sept. 26, 2007); In re Delta Air Lines, Inc., Case No. 05-17923 (CGM) (Bankr. S.D.N.Y. Feb. 7, 2007); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Nov. 23, 2005); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Mar. 13, 2002). However, any party receiving the CD-ROM may request hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, without charge, from the Voting Agent (as defined below). The Debtors also reserve the right to include hard copies of the Plan, the Disclosure Statement, and exhibits thereto as may be necessary to effect timely distribution of the Solicitation Packages.

[9] Consistent with securities industry practices in bankruptcy solicitations, the Debtors will not distribute Solicitation Packages directly to Holders of Class 1D Senior Noteholder Claims.  Instead, Solicitation Packages will be distributed to Voting Nominees (as defined below), who will then in turn distribute Solicitation Packages to the beneficial Holders of Class 1D Senior Noteholder Claims.  In accordance with customary practice, the Master Ballots will be distributed to Voting Nominees after the initial distribution of Solicitation Packages to such Voting Nominees.

related materials on such parties fulfills the Debtors' obligations under Bankruptcy Rules

2002(b) and 3017(d).  If a Claim has been temporarily disallowed for voting purposes pursuant

to an order of the Court, the holder of such Claim shall not be entitled to receive a Solicitation

Package.

   21. With respect to any transferred Voting Claim, the Debtors propose that the

transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such

transferred Claim, but only to the extent that the relevant transfer or assignment is properly noted

on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of

business on the Record Date.  In the event a Claim is transferred after the transferor has

completed a Ballot, the transferee of such Claim shall be bound by any vote (and the

consequences thereof) and, if applicable, any election(s) made on the Ballot by the Holder as of

the Record Date of such transferred Claim.

   **ii.**  **Notices to Holders of Unimpaired Claims and Interests and
Unclassified Claims**

   22. As explained above, certain Classes of Claims and Interests are designated

under the Plan as Unimpaired, and therefore, Holders of such Claims and Interests are

conclusively presumed to accept the Plan.  See 11 U.S.C. § 1126(f).  Sending a full Solicitation

Package to such Holders–who are not entitled to vote to accept or reject the Plan–would impose

unnecessary costs on the Debtors, while providing no benefit to the Holders of the relevant

Claims and Interests.  Accordingly, the Debtors propose to mail, or cause to be mailed, to each

Holder of a Claim or Interest in the Unimpaired Classes at the appropriate address, as required

by Bankruptcy Rule 2002(g), a Non-Voting Package consisting of: (a) the Confirmation Hearing

Notice, (b) the Solicitation Order, excluding exhibits annexed thereto, and (c) a notice of

unimpaired class, non-voting status, substantially in the form attached to this Motion as Exhibit

C (the "Unimpaired Class Notice"). Holders of Unclassified Claims will receive the same Non-Voting Package as Holders of Claims and Interests in the Unimpaired Classes.

### iii.    Notices to Deemed Rejecting Classes

23.    Holders of Claims and Interests in the Deemed Rejecting Classes shall neither receive nor retain any property on account of their Claims or Interests and, thus, are conclusively presumed to have rejected the Plan without voting. 11 U.S.C. § 1126(g). As with Claims and Interests in the Unimpaired Classes, the Debtors submit that sending full Solicitation Packages to such Holders imposes an unnecessary cost to the Debtors given such Holders' non-voting status. As a result, the Debtors propose to mail, or cause to be mailed, to each Holder in the Deemed Rejecting Classes at the appropriate address, as required by Bankruptcy Rule 2002(g), a Non-Voting Package consisting of: (i) the Confirmation Hearing Notice, (ii) the Solicitation Order, excluding exhibits annexed thereto, and (iii) a notice of impaired, non-voting status, substantially in the form annexed to this Motion as Exhibit D (the "Rejecting Class Notice" and together with the Unimpaired Class Notice, the "Non-Voting Notices").[10]

24.    The Confirmation Hearing Notice, which will be sent to Holders of Claims and Interests in the Unimpaired Classes and the Deemed Rejecting Classes, also advises any party wishing to obtain a copy of either or both of the Disclosure Statement and the Plan free of charge that they may do so by accessing the documents on the Internet at http://chapter11.epiqsystems.com/tribune or by contacting the Voting Agent by first-class mail, overnight mail, or telephone (with contact details for each method provided in the Confirmation Hearing Notice).

---

[10] Consistent with securities industry practices in bankruptcy solicitations, the Debtors will not distribute Rejecting Class Notices directly to Holders of Class 1J PHONES Notes Claims. Instead, Rejecting Class Notices will be distributed to record holders of such Claims, including, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees, who will then in turn distribute Rejecting Class Notices to the beneficial Holders of Class 1J PHONES Notes Claims.

iv.    **Notices to Holders of Customer Program Claims**

25.    The Debtors' books and records show that approximately 325,000 persons or entities are owed prepetition subscription or advertising credits, or other, similarly-based refunds, with the overwhelming majority of such credits and refunds being *de minimis* in amount (i.e., less than $25 per party).  These credits and refunds are principally for unused subscription balances, classified advertising, and similar items.  The total amount of such credits and refunds is approximately $6.0 million.  The Debtors have authority, though not the obligation, to pay such amounts pursuant to the Customer Programs Order[11] and have attempted to make payments to many of these parties both before the Petition Date and, pursuant to the authority granted to the Debtors in the Customer Programs Order, since the Petition Date.  In all or virtually all cases, however, the person or entity to which the credit or refund is owed has not responded to the Debtors' efforts, often because the person or entity has moved or ceased to do business.

26.    The Debtors submit that sending roughly 325,000 Solicitation Packages to persons and entities that have not responded for over a year (and, in many cases, longer) to extensive efforts to reach out to them and pay whatever Claims they may have would be a costly and futile action that would ultimately harm the Debtors' creditors and estates as a whole.  The costs of preparing and mailing Solicitation Packages to all such parties would consume a large portion of the aggregate face amount of credits and refunds owed to such parties, according to the Debtors' estimates.  Based on that fact, the Debtors propose to provide such parties solely with direct mailed notice of the Plan and the Confirmation Hearing, substantially in the form attached hereto as Exhibit G (the "Credit/Refund Notice").  Such notice will provide recipients with the location, date and time of the Confirmation Hearing, and will further advise recipients

---

[11] The Customer Programs Order is the Order Authorizing, But Not Requiring, the Debtors to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue Prepetition Customer Programs and Practices in the Ordinary Course of Business, which was signed by the Bankruptcy Court on December 10, 2008 [Docket No. 50].

that the Debtors' books and records show that they may have an unused subscription or

advertiser credit with one of the Debtors.  The Credit/Refund Notice will further state that the

recipient may receive a Solicitation Package and a Ballot on which they may vote their Claim;

provided, however, that such request must be made in writing to the Voting Agent on or prior to

**July 14, 2010 at 4:00 p.m. (prevailing Eastern time)**.  The Debtors will also retain their rights

to satisfy–and thereby eliminate–any such Claims pursuant to the authority granted to the

Debtors under the Customer Programs Order, in which case the Holder of any such Claim would

not be entitled to vote on the Plan.

v.    <u>Non-Delivery of Solicitation Packages to Holders of Intercompany Claims</u>

27.    Holders of Intercompany Claims are either Debtors (and hence proponents

of the Plan) or affiliates of the Debtors.  The Debtors propose that they not be required to

distribute Solicitation Packages or Non-Voting Packages to Holders of Intercompany Claims, as

sending Solicitation Packages or Non-Voting Packages to such Holders imposes an unnecessary

expense on the Debtors.  As a result, the Debtors do not intend to distribute solicitation materials

to Holders of Intercompany Claims, and request that the order approving this Motion approve the

non-distribution of Solicitation Packages to such Holders.

vi.    <u>Non-Delivery of Solicitation Materials to Undeliverable Addresses</u>

28.    The Debtors distributed notice of the hearing to approve the Disclosure

Statement to various Holders of Claims and/or Interests that have been returned as undeliverable

by the United States Postal Service (the "Undeliverable Notices").  The Debtors believe that it

would be costly and wasteful to distribute Solicitation Packages or Non-Voting Notices or any

other materials or notices (including any updates, supplements, amendments or modifications

thereto) to those persons or entities listed at such addresses and request that the order approving

this Motion relieve them from the need to do so unless the Debtors have been or are provided with an accurate address in writing from any such entity prior to the distribution of the solicitation materials.

### C. Approving Form of Ballots and Master Ballot and Establishing Procedures for Voting on the Plan

#### i. Approving Form of Ballots and Master Ballot and Distribution Thereof and Related Issues

29. Bankruptcy Rule 3017(d) requires debtors to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors accordingly propose to distribute to Holders of Voting Claims an appropriate ballot (and instructions attached thereto) (the "Ballots") substantially in the forms annexed to this Motion as Exhibit A. The forms of the Ballots are based on Official Form No. 14 but have been modified to address the particular aspects of these Chapter 11 Cases and to include certain additional information that the Debtors believe to be relevant and necessary for each Class of Claims entitled to vote to accept or reject the Plan.[12] The appropriate Ballots, along with return envelopes addressed to the Voting Agent or Voting Nominee, as applicable, will be distributed to Holders of Voting Claims in the Voting Classes, which are:[13]

| Class | Description |
|---|---|
| 1C | Loan Claims against Tribune |
| 1D | Senior Noteholder Claims against Tribune |
| 1E | Other Parent Claims against Tribune |
| 50C-111C | Loan Guaranty Claims against Guarantor Debtors |
| 2E-111E | General Unsecured Claims against Filed Subsidiary Debtors |

---

[12] Each Holder of a Claim (a) that has voted to accept the Plan or is deemed to have accepted the Plan, (b) that has not voted to accept the Plan but has received a Ballot and has not opted out of the releases in section 11.2.2 of the Plan, or (c) who otherwise agrees to provide the releases set forth in section 11.2.2 of the Plan will be deemed to have granted the releases described in such section. If a Holder of a Claim meeting those criteria elects not to grant the releases contained in section 11.2.2 of the Plan, the Holder (a) shall not receive the benefit of the releases set forth in section 11.2 of the Plan (if otherwise entitled) and (b) notwithstanding section 11.2.6 of the Plan, shall not be released from any claim, right, or cause of action under chapter 5 of the Bankruptcy Code.

[13] The Debtors reserve the right to amend the Plan to, among other things, make revisions to the Voting Classes and, if necessary, solicit votes from the Holders of Claims in additional Classes as well.

30.    Claims and Interests in all other Classes under the Plan are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and conclusively presumed to reject the Plan, as described in ¶¶ 9-10, above.  Accordingly, Holders of Claims and Interests in such Classes will not receive Ballots.

ii.    **Special Provisions Concerning Voting of Senior Noteholder Claims**

31.    With respect to the Ballots that will be sent to Holders of Senior Noteholder Claims, the Debtors propose to deliver Ballots and Master Ballots to record holders of such Claims, including, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees (collectively, the "Voting Nominees").  The Debtors will provide each Voting Nominee with reasonably sufficient numbers of Solicitation Packages, including sufficient beneficial ballots (the "Beneficial Ballots"), to distribute to the beneficial owners of the Senior Noteholder Claims for whom such Voting Nominee acts (collectively, the "Beneficial Owners").  Upon written request with supporting documentation, the Debtors will reimburse each Voting Nominee's reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

32.    The Debtors propose that each Voting Nominee be required to forward a Solicitation Package to each Beneficial Owner for voting and include a return envelope addressed to the Voting Nominee so that the Beneficial Owner may return the completed Beneficial Ballot to the Voting Nominee by such deadline as may be established by the Voting Nominee.  Each Voting Nominee then will summarize the individual votes of its respective Beneficial Owners from their Beneficial Ballots on the appropriate master ballot (the "Master Ballot"), substantially in the form annexed to this Motion as Exhibit B, and return the Master Ballot to the Voting Agent so that it is received prior to the Voting Deadline.  The Debtors

propose that the Voting Nominees be required to retain Beneficial Ballots for inspection for a period of at least one (1) year following the Voting Deadline.  The Debtors believe these procedures are customary for the voting of securities in large chapter 11 cases, adequately recognize the complex structure of the securities industry, enable the Debtors and Voting Nominees to transmit materials to the Holders of the Senior Notes in a timely and cost-effective manner, and afford Beneficial Owners of the Senior Notes a fair and reasonable opportunity to vote to accept or reject the Plan.

### iii.    Establishing Voting Deadline for Receipt of Ballots

33.    Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or interests may vote to accept or reject a plan.  Fed. R. Bankr. P. 3017(c).  To commence the solicitation process, the Debtors will use their reasonable best efforts to mail all solicitation materials no later than seven (7) business days after entry of the Solicitation Order, so that mailing of the Solicitation Packages will be complete by June 1, 2010.

34.    The Debtors respectfully request that the Court establish **July 30, 2010 at 4:00 p.m. (prevailing Eastern Time)** as the deadline by which all Ballots and Master Ballots must be properly executed, completed, delivered to, and received by the Voting Agent (the "Voting Deadline").  Ballots and Master Ballots must be returned to the Voting Agent by first-class mail postage prepaid, by personal delivery, or by overnight courier.  The proposed Voting Deadline is 71 days after the scheduled hearing date on this Motion and 59 days after the proposed date for concluding the mailing of the notices and Solicitation Packages.  Such solicitation period provides the Holders of Voting Claims with a more-than adequate period to make an informed decision to accept or reject the Plan and return their Ballots in a timely fashion.

### D. Approval of Procedures for Vote Tabulation

#### i. Continuation of Epiq Bankruptcy Solutions, LLC, as Voting Agent

35.    Pursuant to an order of this Court entered on December 10, 2008, the

Debtors retained Epiq Bankruptcy Solutions, LLC ("Epiq") as the Debtors' claims, noticing, and

balloting agent.[14] The Debtors have confirmed with Epiq that Epiq will perform all services

relating to the solicitation process as described herein.

#### ii. Ballot Tabulation

36.    The Debtors propose, solely for purposes of voting to accept or reject the

Plan, and not for any other purposes, and without prejudice to the rights of the Debtors in any

other context, that each Holder of a Voting Claim be entitled to vote the amount of such Claim as

set forth in the Debtors' filed Schedules (as may be amended from time to time) unless such

Holder has timely filed a proof of claim, in which event such Holder would be entitled to vote

the amount of such Claim as set forth in such proof of claim, subject to the following provisions,

which are set forth in the form of proposed order approving this Motion:

      a.   if a Claim is deemed "Allowed" pursuant to an agreement with the Debtors or an order of this Court or the Plan, such Claim shall be allowed for voting purposes in the "Allowed" amount set forth in this Court's order or the Plan, as applicable;

      b.   if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;

      c.   if no proof of claim has been timely filed and the Claim has not been disallowed, then the vote amount shall be the non-contingent, liquidated, and undisputed amount as set forth in the Schedules;

---

[14] See Order Authorizing the Debtors and Debtors in Possession to Retain and Employ Epiq Bankruptcy Solutions, LLC as Claims, Noticing, and Balloting Agent Pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(f) as of the Petition Date.  [Docket No. 44].

d. if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is not (i) the subject of a pending objection, (ii) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), (iii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), or (iv) deemed disputed under the Plan, the vote amount is the liquidated amount as set forth on the proof of claim;[15]

e. if a proof of claim has been timely filed and the Claim has not been disallowed, and the Claim is (i) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), (ii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), or (iii) deemed disputed under the Plan, such claim shall be temporarily allowed for voting purposes only, and not for any other purposes and without prejudice to the rights of the Debtors in any other context, at $1.00;

f. if (i) a proof of claim has been filed and is the subject of a pending objection, or (ii) if the Debtors have amended or supplemented the Schedules to (a) eliminate a Claim or (b) to change the nature or characterization of a Claim but the thirty (30) day period specified in the Bar Date Order for the relevant Holder of such Claim to file a proof of claim in response to such amendment has not yet passed, then such Claim shall be disallowed for voting purposes, except to the extent and in the manner as may be set forth in the relevant objection, amendment or supplement;

g. to the extent that a Holder of Claims has filed or purchased duplicative claims that are classified under the Plan in the same Class, such Holder shall be provided with a single Solicitation Package and a single Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to the allowance of such duplicate Claims;

---

[15] For the avoidance of doubt, if a proof of claim has been filed in a liquidated amount but also purports to include other, unliquidated amounts, the vote amount shall be solely the liquidated, non-disputed amount set forth on the proof of claim.

h.  where a Holder of Claims has asserted its Claims against no
particular Debtor, or against all Debtors without filing separate
proofs of claim against each Debtor as required by the Bar
Date Order, and the Debtors are not able to determine which
Debtor such Claims should properly be asserted against after
the exercise of reasonable diligence, such Holder shall not be
entitled to a vote on account of such Claims; and

i.  Claims, whether scheduled or filed, for $0.00 will be
disallowed for voting purposes.

37.    The Debtors further propose that if any Holder of a Claim wishes to have

its Claim allowed for purposes of voting to accept or reject the Plan in a manner that is

inconsistent with the amount or classification set forth on the Ballot it received or if any party

that did not receive a Ballot wishes to have its Claim temporarily allowed for voting purposes

only, such Holder must serve on the Debtors and file with the Bankruptcy Court, on or before

**June 21, 2010**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing

such Claim for purposes of voting (the "3018 Motion").  Any such 3018 Motion must set forth,

with particularity, the amount and classification in which such Holder believes its Claim should

be allowed for voting purposes and the evidence in support of its belief.  In respect of any

timely-filed 3018 Motion, the Ballot in question shall be counted (a) in the amount established

by the Bankruptcy Court in an order entered on or before the Voting Deadline, or (b) if such an

order has not been entered by the Voting Deadline and unless the Debtors and the party have

come to an agreement as to the relief requested in the 3018 Motion, in an amount equal to (i) the

liquidated, non-contingent, and non-disputed amount of such Claim as set forth in the Schedules;

(ii) if a proof of claim has been timely filed in respect of such Claim, the liquidated, non-

contingent, and non-disputed amount set forth in such proof of claim; or (iii) if neither (i) nor (ii)

applies, such party shall not have a Ballot counted at all.

38.    The Debtors propose that the Court establish **July 13, 2010** (which is a previously scheduled omnibus hearing date in these cases) as the date for a hearing to consider any and all 3018 Motions.

39.    The Debtors further request that whenever a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots, respectively, voting the same Claim(s) before the Voting Deadline, the last dated and valid Ballot or Master Ballot received before the Voting Deadline be deemed to reflect the voter's intent and supersede any prior Ballots or Master Ballots. If a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots received by the Voting Agent on the same day, but which are voted inconsistently, the Debtors request that, unless a supplemental Master Ballot respecting such Claims is subsequently filed, such Ballots or Master Ballots not be counted.

40.    The Debtors request that a Holder of Voting Claims in more than one Voting Class under the Plan be required to execute a separate Ballot for its Claims in each such Class, and in the case of the Senior Notes, each Beneficial Owner must execute a separate Ballot for each block of securities that it holds through any Voting Nominee and must return each such Ballot to the appropriate Voting Nominee.

41.    The Debtors further request that each Holder of Loan Claims and Loan Guaranty Claims be entitled to cast a single Ballot with respect to such Claims, with each vote to be counted as a vote to accept or reject the Plan in Class 1C and each of Classes 50C through 111C and a vote to accept or reject the Prepackaged Plan of any Guarantor Non-Debtor that becomes a Debtor. The Debtors also request that each vote to accept the Plan in Class 1C and each of Classes 50C through 111C be counted as (i) an acceptance of the compromise and settlement set forth in the Plan, including, without limitation, section 11.2.5 of the Plan, by and

among the Guarantor Non-Debtors, on the one hand, and the Holders of Loan Guaranty Claims, on the other hand (the "Guarantor Non-Debtor Compromise and Release") and (ii) a grant of authority to the Loan Agents to enter into any and all agreements and take any and all actions that such Loan Agents deem necessary or appropriate to effectuate the Guarantor Non-Debtor Compromise and Release and all other terms of the Plan.

42.    The following types of Ballots will <u>not</u> be counted in determining whether the Plan has been accepted or rejected:

a.    any Ballot or Master Ballot that is otherwise properly completed, executed and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both acceptance and rejection of the Plan;

b.    any Ballot or Master Ballot received after the Voting Deadline in the Debtors' sole discretion;

c.    any Ballot or Master Ballot containing a vote that the Bankruptcy Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.    any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.    any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

f.    any Ballot or Master Ballot without a signature or an original signature; and

g.    any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

43.    In addition, the Debtors propose that the following voting procedures and standard assumptions be used in tabulating the Ballots, subject to any contrary order(s) of the Bankruptcy Court:

a.    The method of delivery of Ballots to be sent to the Voting Agent is at the election and risk of each creditor, but such delivery will be deemed made

only when the original, executed Ballot is actually received by the Voting Agent.

b.    The Debtors, in their sole discretion, may waive any defect in any Ballot or Master Ballot at any time, including failure to file such Ballot or Master Ballot in a timely manner, either before or after the close of voting, and without notice; provided, however, that the Debtors or the Voting Agent shall maintain a record of any waivers granted under this subsection. Unless the Ballot or Master Ballot being furnished is submitted on or prior to the Voting Deadline, the Debtors may, in their sole discretion, reject any defective or late-filed Ballot or Master Ballot as invalid and, therefore, decline to utilize it in connection with confirmation of the Plan.

c.    After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

d.    Any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

e.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any of them incur any liabilities for failure to provide such notification. Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

### iii.    Master Ballot Tabulation

44.    With respect to the tabulation of Master Ballots and Beneficial Ballots for Senior Noteholder Claims cast by Voting Nominees and Beneficial Owners, respectively, the Debtors propose that the principal amount held by Voting Nominees and Beneficial Owners on the Record Date, as evidenced by the record and depository listings, shall be used as the amount to tabulate acceptance or rejection of the Plan (although any principal amounts may be adjusted by Epiq to account for prepetition interest).  The Debtors further propose that the following additional rules apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners:

a.    Votes cast by Beneficial Owners through a Voting Nominee will be compared to the positions held by such Beneficial Owners in the applicable tranche of Senior Notes as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of such Senior Notes held by such Voting Nominee.

b.    To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the Voting Nominees.

c.    To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable tranche of Senior Notes.

d.    Where a Beneficial Owner holds its Senior Notes through more than one Voting Nominee, it must execute a separate Beneficial Ballot for each block of Senior Notes. However, such Beneficial Owner must vote all of its Senior Noteholder Claims in the same manner, to either accept or reject the Plan. Accordingly, if such Beneficial Owner returns more than one Beneficial Ballot to more than one Voting Nominee voting different Senior Noteholder Claims and the Beneficial Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

45.    The procedures for the voting of Claims on the Plan proposed herein are substantially identical to the procedures approved by this Court in numerous other recent chapter 11 cases. See, e.g., In re Smurfit-Stone Container Corp., 09-10235 (BLS) (Bankr. D. Del. Jan. 29, 2010); In re Spansion Inc., 09-10690 (KJC) (Bankr. D. Del. Dec. 14, 2009); In re Merisant Worldwide, Inc., Case No. 09-10059 (PJW) (Bankr. D. Del. Oct. 23, 2009); In re R.H. Donnelley Corporation, Case No. 09-11833 (KG) (Bankr. D. Del. Oct. 21, 2009); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. Jan. 26, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Dec. 16, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 30, 2008); In re Goody's Family Clothing, Inc., Case No. 08-11133 (CSS) (Bankr. D. Del. Aug. 25, 2008); In re Sea Containers Ltd., Case No.

06-11156 (KJC) (Bankr. D. Del. Sept. 22, 2008). Such procedures provide for a fair and equitable voting process and should be approved.

46.    Furthermore, the Debtors propose that Epiq be required to file the results of its tabulation of votes to accept or reject the Plan no later than **August 6, 2010**.

## II. ESTABLISHING DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS

47.    As described in the Disclosure Statement, certain of the Debtors' business operations are subject to regulation by the Federal Communications Commission (the "FCC"). Specifically, certain of the Debtors own and operate various television stations and a radio station. Television and radio stations may not operate in the United States without the authorization of the FCC, and FCC approval is required for the issuance, renewal, transfer and assignment of station operating licenses. The FCC also regulates the multiple and cross-ownership of television and radio broadcast stations as well as the cross-ownership of broadcast stations and newspapers in the same market. The Plan provides that obtaining the requisite approvals and waivers from the FCC is a condition precedent to the Effective Date.

48.    For the Debtors to continue the operation of their broadcast stations post-emergence, they will be required to file applications with the FCC (the "FCC Applications") to obtain prior approval from the FCC for the assignment of the FCC licenses from the Debtors as "debtors in possession" to the Reorganized Debtors (the "FCC Approval"). As part of the FCC Applications, the Debtors will be required to demonstrate compliance with a number of the FCC's rules and policies, including its broadcast multiple and cross-ownership rules and the foreign ownership limitations set forth in Section 310(b) of the Communications Act of 1934, 47 U.S.C. § 151 et seq., as amended (the "Communications Act").

49.    In processing the FCC Applications, the FCC will consider, among other things, whether the prospective licensees and those considered to be "parties" to the applications possess the legal, character, and other qualifications necessary to hold an interest in a broadcast station. The FCC Applications require the Debtors to include information about Reorganized Tribune and the "parties" to the applications – including certain of the proposed stockholders of Reorganized Tribune – sufficient for the FCC to grant its consent to the transactions contemplated by the Plan. Prospective stockholders of Reorganized Tribune, including those under common ownership or control, that would hold or control five percent (5%) or more of the New Class A Common Stock will be "parties" to the FCC Applications and will be required to report certain information to the Debtors for FCC regulatory purposes.

50.    Consistent with section 5.4.2 of the Plan, the Debtors request, for the purpose of ensuring that the FCC Applications contain the information required by the FCC for all potential "parties," that any Holder of a Claim or Claims that (i) is anticipated to receive New Common Stock under the Plan (i.e., Holders of Loan Claims/Loan Guaranty Claims and Noteholder Claims), (ii) believes that the amount of its Claims (or Claims that it intends to acquire prior to the Effective Date of the Plan) may entitle it to receive (for any reason, including, but not limited to, as a result of the distribution by the Debtors of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of Loan Claims/Loan Guaranty Claims or Senior Noteholder Claims, as contemplated in section 5.4.2 of the Plan) five percent (5%) or more of the New Class A Common Stock under the Plan (a "Potential 5% Holder"), and (iii) wishes to remain eligible to receive 5% or more of the New Class A Common Stock, be required to contact the Debtors and execute and submit to the Debtors a Media Ownership Certification on or prior to **July 1, 2010** (the "Certification

Deadline"). In general, the information provided in the Media Ownership Certifications will enable the Debtors to determine whether the prospective "parties" to the FCC Applications (i) have the requisite "character" qualifications (principally, the absence of adverse or unresolved character qualifications issues with the FCC and the absence of adverse final judgments in matters such as felonies, fraud on governmental agencies, media-related antitrust, employment discrimination, and denial of federal benefits for drug abuse), and (ii) do not hold media interests that, together with their prospective interest in Reorganized Tribune, would create an unlawful media combination under the FCC's rules. Information from the Media Ownership Certifications may be used in the preparation and submission of an amendment to the FCC Applications to enable the FCC to consider the qualifications of any Potential 5% Holder.

51.    The Debtors request that, in the event a Potential 5% Holder does not submit an executed Media Ownership Certification by the Certification Deadline, and/or is not made a "party" to the FCC Applications, in accordance with section 5.4.2 of the Plan, such Potential 5% Holder may, in the event it otherwise would be entitled under the Plan to receive more than five percent (5%) of the New Class A Common Stock, receive as many shares of New Class B Common Stock in lieu of New Class A Common Stock to the extent Reorganized Tribune deems necessary to ensure compliance with the Communications Act or the FCC rules and/or to avoid a substantial delay in obtaining the FCC Approval.

52.    Consistent with section 5.4.2 of the Plan, the Debtors further request that, in the event the Plan is confirmed, Reorganized Tribune be authorized to issue shares of New Class B Common Stock in lieu of shares of New Class A Common Stock to any Potential 5% Holders if Reorganized Tribune determines, based on the relevant Holder's Media Ownership Certification (or failure to provide the Media Ownership Certification or otherwise comply with

applicable provisions of the Plan), that such Holder may have other media interests that could

impair the ability of Reorganized Tribune to comply with the Communications Act or the FCC's

rules if such Holder were issued the shares of New Class A Common Stock that it otherwise

would be eligible to receive pursuant to the Plan.

53.     The number of Potential 5% Holders is necessarily limited, and the

Debtors are already in communication with several of such Holders to ensure that they timely

submit Media Ownership Certifications, in a process that is coordinated with the administrative

agent for the Senior Loan Agreement.  Given the limited potential universe of Potential 5%

Holders, the Debtors do not intend to distribute Media Ownership Certifications with the

Solicitation Packages.  The Confirmation Hearing Notice, however, will advise all Claim

Holders that are eligible to receive New Common Stock in Reorganized Tribune to contact the

Debtors in the event they believe they are or may be a Potential 5% Holder, and of the prospect

that Potential 5% Holders who do not obtain and complete a Media Ownership Certification by

the Certification Deadline (and thus are not made "parties" to the FCC Applications) may in

certain circumstances receive New Class B Common Stock in lieu of New Class A Common

Stock.  Following contact from a Potential 5% Holder, the Debtors will work with such Holder to

evaluate whether such Holder should be a party to the FCC Applications and, if warranted,

provide such Holder with a Media Ownership Certification.

## III. ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF THE PLAN

### A.  Scheduling the Confirmation Hearing

54.     Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall
fix a time within which the holders of claims and interests may
accept or reject the plan and may fix a date for the hearing on
confirmation.

Fed. R. Bankr. P. 3017(c).  In accordance with Bankruptcy Rule 3017(c) and in light of the

Debtors' proposed solicitation schedule outlined herein, the Debtors propose that **August 16,**

**2010 at 10:00 a.m. (prevailing Eastern Time)** be fixed by the Court as the date to consider

confirmation of the Plan (the "Confirmation Hearing").[16]  Such date will provide the Debtors

sufficient time to solicit votes on the Plan in accordance with the schedule described herein and

to notify the required parties of the Confirmation Hearing date.  The Debtors also request that the

Court order that the Confirmation Hearing may be continued from time to time without further

notice to creditors or other parties in interest.

### B. Establishing Procedures for Notice of the Confirmation Hearing

55.     Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28)

days notice to all creditors, indenture trustees and equity security holders of the time fixed for

filing objections to confirmation of a plan of reorganization and the hearing to consider

confirmation of a plan of reorganization.  In accordance with the Bankruptcy Rules, the Debtors

propose to provide all known creditors, parties filing a notice of appearance in these cases,

governmental units having an interest in these cases, indenture trustees and equity interest

holders, each as of the Record Date, with a copy of the notice of the confirmation hearing (the

"Confirmation Hearing Notice"), substantially in the form annexed to this Motion as Exhibit E.

Such notice will be sent contemporaneously with the Solicitation Packages and Non-Voting

Packages.

56.     Furthermore, the Debtors seek permission, pursuant to Bankruptcy Rule

2002(l), which permits the Court to "order notice by publication if it finds that notice by mail is

impracticable or that it is desirable to supplement notice," to supplement the foregoing notice

---

[16] At a hearing on April 19, 2010, the Court advised that the Confirmation Hearing is scheduled to commence on
August 16, 2010 and continue through August 20, 2010.  Unofficial Hr'g Tr. p. 16-17 (April 19, 2010).

procedures by publishing notice of the Debtors' Confirmation Hearing (the "Publication Notice"), substantially in the form annexed to this Motion as Exhibit F, once each in the national editions of The Wall Street Journal, The New York Times, the Los Angeles Times, and the Chicago Tribune not less than twenty (20) days before the Objection Deadline. In light of the size of these Chapter 11 Cases, the Debtors believe that the Publication Notice provides adequate notice of the Objection Deadline and the Confirmation Hearing to persons who will not otherwise receive notice by mail, and the Debtors request that the Court order that the scope and form of Publication Notice are adequate for such purpose.

**C. Establishing Procedures for Filing Objections to Confirmation of the Plan**

57.   Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed plan of reorganization must be filed with the Bankruptcy Court and served on the debtor, the trustee, any committee appointed under the Bankruptcy Code, and on any other entity designated by the Bankruptcy Court, within a time specified by the Bankruptcy Court. Fed. R. Bankr. P. 3020(b).

58.   The Debtors request that **July 30, 2010 at 4:00 p.m. (prevailing Eastern Time)** be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "Objection Deadline"). The Debtors request that the Court direct that objections to confirmation of the Plan, if any, (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before the Objection Deadline by the following parties:

Co-Counsel for the Debtors and Debtors in Possession

| | |
|---|---|
| Sidley Austin LLP | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, Illinois 60603 | Wilmington, DE 19801 |
| Fax (312) 853-7036 | Fax (302) 652-3117 |
| Attn: Jessica C.K. Boelter | Attn: Norman L. Pernick |

-and-

The Office of the United States Trustee

J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box 35
Wilmington, DE 19801
Fax (302) 573-6497
Attn: Joseph McMahon

-and-

Co-Counsel to the Official Committee of Unsecured Creditors

| | |
|---|---|
| Chadbourne & Parke, LLP | Landis, Rath & Cobb, LLP |
| 30 Rockefeller Plaza | 919 Market Street, Suite 1800 |
| New York, NY 10112 | Wilmington, DE 19801 |
| Fax (212) 408-5100 | Fax (302) 467-4400 |
| Attn: Douglas A. Deutsch | Attn: Adam G. Landis |

59.     The Debtors further propose that they, and any party supporting confirmation of the Plan, be afforded an opportunity to file a response to any objections to confirmation of the Plan by no later than **August 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**.  At that time, the Debtors will also file their proposed findings of fact and conclusions of law as well as their memorandum of law in support of confirmation of the Plan.

## NO PRIOR REQUEST

60.     The Debtors have not previously sought the relief requested herein from this Court or any other court.

## NOTICE

61.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the Loan Agents for Tribune

Company's pre-petition loan facilities; (iv) counsel to the administrative agent for the Debtors'

post-petition financing facility; and (v) all parties having requested notice pursuant to

Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit

that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an order

granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      April 29, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kenneth P. Kansa
D'Lisia E. Bergeron
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-0199
Facsimile:  (312) 853-7036

      -and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION