1        IN THE UNITED STATES BANKRUPTCY COURT

2              FOR THE DISTRICT OF DELAWARE

3   IN RE:                        :
                                  : Chapter 11
4   TRIBUNE COMPANY, et al.,      :
                                  : Case No. 08-13141 (KJC)
5                                 :
        Debtors.                  : Jointly Administered
6   . . . . . . . . . . . . . . . . Related to Docket Number 4086

7                      Wilmington, Delaware
                         April 19, 2010
8                         11:01 a.m.

9                   TRANSCRIPT OF HEARING
            BEFORE THE HONORABLE KEVIN J. CAREY
10              UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Debtors:          Norman L. Pernick, Esquire
                              Cole, Schotz, Meisel, Forman &
13                            Leonard, P.A.

14                            James F. Conlan, Esquire
                              Sidley, Austin, LLP
15
    For the Creditors         Adam G. Landis, Esquire
16  Committee:                Landis, Rath & Cobb, LLP

17  For the Committee:        Graeme W. Bush, Esquire
                              James Sottile, Esquire
18                            Zuckerman, Spaeder, LLP

19                            Howard Seife, Esquire
                              Chadbourne & Parke, LLP
20
    For Aurelius Capital:     T. Max Riffin, Esquire
21                            Greenberg, Traurig, LLP

22  For Law Debenture:        Garvan F. McDaniel, Esquire
                              Bifferaqto, Gentilotti, LLC
23
    For Various Retiree       Adam Hiller, Esquire
24  Claimants:                Pinckney, Harris & Weidinger, LLC

25

2

| | | |
|---|---|---|
| 1 | For JP Morgan: | Donald S. Bernstein, Esquire |
| | | Dennis Glazer, Esquire |
| 2 | | Davis, Polk & Wardwell |
| 3 | | Mark Collins, Esquire |
| | | Richards, Layton & Finger, P.A. |
| 4 | | |
| | For Merrill Lynch: | Laurie Silverstein, Esquire |
| 5 | | Potter, Anderson & Carroon, LLP |
| 6 | | |
| 7 | For Wilmington Trust: | Raymond H. Lemisch, Esquire |
| | | Jennifer R. Hoover, Esquire |
| | | Benesch, Friedlander, Coplan & |
| 8 | | Aronoff, LLP |
| 9 | | Robert J. Stark, Esquire |
| | | Martin S. Siegel, Esquire |
| 10 | | William M. Dolan, III, Esquire |
| | | Jared A. Ellias, Esquire |
| 11 | | Kate S. Bromberg, Esquire |
| | | Brown, Rudnick, LLP |
| 12 | | |
| | For United States | William Harrington, Esquire |
| 13 | Trustee: | Office of the United States Trustee |
| 14 | VIA TELEPHONE: | |
| 15 | For the Debtors: | James Bendernagel, Esquire |
| | | Jillian Ludwig, Esquire |
| 16 | | Bryan Krakauer, Esquire |
| | | Candice Kline, Esquire |
| 17 | | Ken Kansa, Esquire |
| | | Sidley, Austin, LLP |
| 18 | | |
| | | Donald Liebentritt, Esquire |
| 19 | | Gary Weitman, Esquire |
| | | Chandler Bigelow, Esquire |
| 20 | | Dave Eldersveld, Esquire |
| | | Tribune Company |
| 21 | | |
| | For Merrill Lynch | Jane Parver, Esquire |
| 22 | Capital Corporation: | Madlyn G. Primoff, Esquire |
| | | Joseph Drayton, Esquire |
| 23 | | Kaye, Scholer, LLP |
| 24 | For Dennis Prieto: | Dennis Prieto |
| | | Aurelius Capital Management |
| 25 | | |

|    |    |    |
|----|----|----|
| 1  | For Creditor, AOL: | Tiffany S. Cobb, Esquire |
|    |    | Vorys, Sater, Seymour & Pease, LLP |
| 2  |    |    |
|    | For Bank of America: | Evan Jones, Esquire |
| 3  |    | Daniel Cantor, Esquire |
|    |    | O'Melveny & Myers, LLP |
| 4  |    |    |
|    |    | Esther Chung |
| 5  |    | Bank of America |
| 6  | For Oaktree Capital | James O. Johnston, Esquire |
|    | Management: | Hennigan, Bennett & Dorman, LLP |
| 7  |    |    |
|    | For JP Morgan Chase: | Kevin C. Kelley, Esquire |
| 8  |    | JP Morgan Chase Bank, N.A. |
| 9  |    | Drew G. Sloan, Esquire |
|    |    | Robert Stearn, Jr, Esquire |
| 10 |    | Richards, Layton & Finger, P.A. |
| 11 | For Law Debenture | Sharon Korpus, Esquire |
|    | Trust Company of the | Kasowitz, Benson, Torres & Friedman |
| 12 | Americas: |    |
| 13 | For SuttonBrook Capital | Carol L. Bale, Trader |
|    | Management, LP: | SuttonBrook Capital Management, LP |
| 14 |    |    |
|    | For the Official | David LeMay, Esquire |
| 15 | Committee of Unsecured | Marc Roitman, Esquire |
|    | Creditors: | Douglas Drayton, Esquire |
| 16 |    | Chadbourne & Parke, LLP |
| 17 | For Citi Group: | Lauren Shumejda, Esquire |
|    |    | Andrew Gordon, Esquire |
| 18 |    | Paul, Weiss, Rifkind, Wharton |
| 19 | For Center Bridge | Daniel H. Golden, Esquire |
|    | Credit Advisers: | Akin, Gump, Strauss, Hauer & Feld |
| 20 |    |    |
|    | For Ad Hoc Lenders | Katherine Cruz, Esquire |
| 21 | Counsel: | Kramer, Levin, Naftalis & Frankel, |
|    |    | LLP |
| 22 |    |    |
|    | For Perry Capital: | James Freeman |
| 23 |    | Perry Capital |
| 24 | For Arrowgrass Capital: | Simon West |
|    |    | Arrowgrass Capital Services, UK |
| 25 |    |    |

4

```
1    For Creditor Group        Scott Greissman, Esquire
     of Bridge Facility        White & Case, LLP
2    Lenders:

3    For Matthew A. Zloto:     Matthew A. Zloto
                               Matthew A. Zloto, in propria persona
4
     Court Recorder:           Al Lugano
5
     Transcription Service:    Perfect Pages Transcription, Inc.
6                              18 Tuckerton Road
                               Shamong, NJ 08088
7                              www.perfecttranscripts.com
                               (609) 654-8880
8

9    Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

1      (Call to order of the Court.)

2            THE COURT:  Good morning.

3            MR. PERNICK:  Good morning, Your Honor.  Your Honor,

4      Norman Pernick on behalf of the Debtors.  I thought I'd just

5      run through the Agenda since today's an omnibus hearing day.

6      We only have one matter going forward for a status conference,

7      but just to make sure that we're clear with the Court --

8            THE COURT:  Very well.

9            MR. PERNICK:  -- item number 1, the Francisco Motion

10     for Relief, that's continued to June 16th, our hearing.  Item

11     number 2, the ninth omnibus objection, that is continued to

12     May 18th.  Item number 3, the tenth omnibus objection, that's

13     continued to May 18th with respect to GE Capital Fleet

14     Services, Karolyn Walker and Robby Wells.  Item number 4, the

15     revisions to the Lazard retention, that's continued to May 18.

16     Item number 5, the objection to the Robert Henke claim, is

17     continued to May 18.  Item number 6, the nineteenth omnibus

18     objection with respect to Zenith Media, Cicso Systems Capital

19     Corporation and Third Screen Media only, that's continued to

20     May 18th.  And item number 13, the Wilmington Trust versus JP

21     Morgan adversary, the pretrial conference is adjourned to an

22     open date.

23         Your Honor was kind enough to enter orders on item

24     numbers 6, 7, 8, 9, 10 and 11 this morning, so that just

25     leaves us with the status conference on the Examiner Motion

6

1 and Mr. Conlan is present in the courtroom to handle that,

2 Your Honor.

3          THE COURT:  Very well.

4          MR. CONLAN:  Good morning, Your Honor.  Jim Conlan

5 on behalf of the Debtor.

6     Your Honor, we met with Mr. Stark and his clients, as we

7 said we would, to discuss what we said we would discuss that,

8 number 1, whether we could bring the phones into the

9 settlement and the scope of an examiner.  We did not reach

10 resolution.  We are, however, consenting to the appointment of

11 an examiner and we're still discussing scope and cost.  The

12 U.S. Trustee circulated a Form of Order appointing an examiner

13 this weekend and they're comments flying back and forth, so

14 what we'd like to do, if Your Honor will allow us, is to break

15 for half an hour or so and to put everybody in a room with the

16 U.S. Trustee to see if we can either finalize that Order or,

17 at least, narrow what we will come back ask and your

18 assistance on.

19          THE COURT:  Is everyone on board with that process?

20          MR. SIEFE:  Howard Siefe for the Committee.  Yes, we

21 are on board.

22          MR. STARK:  Good morning, Your Honor.  Robert Stark,

23 Wilmington Trust is on board.

24          THE COURT:  Very well.

25          MR. BERNSTEIN:  Good morning, Your Honor.  Don

7

1   Bernstein for JP Morgan.  We're on board as well.

2         THE COURT:  Okay.  Shall we reconvene then at 11:35?

3         MR. CONLAN:  Yes, Sir.

4         THE COURT:  All right.  Sorry, Mr. Stark, we don't

5   have sandwiches.

6         MR. JOHNSTON:  Your Honor, this is Jim Johnston from

7   Hennigan, Bennett & Dorman, appearing telephonically on behalf

8   of the Credit Agreement Lenders.

9         THE COURT:  Yes.

10        MR. JOHNSTON:  We had circulated comments to the

11  proposed Order over the weekend as well and would just ask

12  that the parties include us by telephone in their

13  conversations.

14        MR. CONLAN:  We will.  We have the dial in.

15        THE COURT:  Very well.

16        MR. JOHNSTON:  Thank you.

17        THE COURT:  Okay.  We'll stand in recess.

18        MR. CONLAN:  Very good.  Thank you.

19     (Recess from 11:04 a.m. to 12:03 p.m.)

20        THE COURT:  Good afternoon.

21        MR. CONLAN:  Good morning, Your Honor.  Jim Conlan

22  on behalf of the Debtor, rather good afternoon, it's 5 after

23  12, I apologize for running over.  It's like the Staples

24  commercial, that was easy.

25     We have some conceptual comments that we're all, believe

8

1  it or not, appear to be in agreement on, and one, which

2  relates to timing, which requires that we engage with you,

3  Your Honor, with respect to your calendar for a confirmation

4  hearing because the examiner's report and discussions about

5  that relate to it.  But if I may, putting the timing issue

6  aside for a minute, what I'd like to do is just walk through

7  conceptually the changes to the U.S. Trustee's Draft Order, or

8  rather have the U.S. Trustee walk through them with us, and

9  you need a copy, don't you?

10       THE COURT:  It probably would help.

11       MR. CONLAN:  All right.  May I approach?

12       THE COURT:  Certainly.

13    (Counsel approaches.)

14       THE COURT:  Thank you.

15       MR. CONLAN:  And I'm sure we'll get a few of these

16  wrong and others will comment and it will be a better product

17  as a result of it.

18       Instead of it being an Order it will be an agreed Order.

19  There is some conforming changes on the second page, for

20  example, taking out one, the Motion is granted and going to

21  because it's an agreed Order, the U.S. Trustee has directed to

22  appoint.  We'll circulate, again, Your Honor, an Order

23  everyone has signed off on in advance.  Now, becoming more --

24  Bill?

25       MR. HARRINGTON:  Yeah, Your Honor, I think this is

1  our part going to paragraph 3, which is the scope.  There was

2  some commentary, Your Honor, that with respect to the breadth

3  of the scope and as we talked about last week at the hearing,

4  it is our intent that, you know, there are 3 million documents

5  that are already available in the centralized depository and

6  that there are probably 3 roadmaps for any examiner appointed

7  in this case, there's the Complaint filed by the Committee,

8  the Complaint filed by Wilmington Trust and the settlement

9  that becomes part of the plan that will be sent out for

10  solicitation in this case.  It is our intent that the examiner

11  would use all of those, you know, currently available sources

12  and not, you know, reinvent the wheel.  And with respect to

13  that, Your Honor, it's our intent that any examiner appointed

14  would follow along that track with the roadmap and use the

15  documents that are already available given, sort of, the time

16  and, you know, where we are with respect to confirmation.

17          MR. CONLAN:  And with that gloss on the record, I

18  believe everybody that was in that room and on the phone was

19  okay with that, that is okay with paragraph 3.

20          MR. BERNSTEIN:  Your Honor, if I may?  Don Bernstein

21  on behalf of JP Morgan.

22      I just wanted it to be clear to the Court and on the

23  record that we did have some issues initially with scope and

24  that our agreement to this scope, which we have agreed to, is

25  expressly predicated.  I've identified this issue to all the

10

1  parties.  It's expressly predicated on not disturbing the time

2  line for confirmation of a plan because, you know, we don't

3  want to see the examiner reinvent the wheel when all of the

4  effort that's been put in by the parties has already been put

5  in.  The Committee's done an investigation, tens of millions

6  of dollars have been spent on producing documents, evaluating

7  documents, and we are all here to give the examiner the input

8  the examiner needs from all the different perspectives.  So it

9  really is important to us to try and maintain the time line.

10            THE COURT:  Well, and as I indicated from the bench

11  when the hearing was held, I forget what the date is, but I

12  was of the view and I still am that there's sufficient time

13  for such an investigation to be concluded, again, based upon

14  the fact that there has been so much information gathering so

15  far.

16            MR. BERNSTEIN:  Thank you, Your Honor.

17            THE COURT:  All right.  Now, let me just, as I

18  glance over the paragraph 3, I know this was -- there were two

19  transactions that were or are to be the target of these

20  claims.  Is the reference to the 2007 LBO sufficient to pull

21  them both in?

22            MR. CONLAN:  I believe it is, Your Honor.

23            THE COURT:  And everyone understands that?

24            MR. CONLAN:  I'll call on Mr. Bendernagel if he

25  disagrees, but I believe it is.

1          MR. BENDERNAGEL:  Oh, it's sufficient, Your Honor.

2          MR. STARK:  Your Honor, may I be heard?

3          THE COURT:  Yes.

4          MR. STARK:  It's Robert Stark from Brown, Rudnick,

5     on behalf of Wilmington Trust.

6       The LBO, as we understand it and has been articulated in

7     the papers, was a two-stage transaction, and I believe that's

8     what Your Honor was referring to.

9          THE COURT:  That's what I'm referring to.

10          MR. STARK:  Okay.  So I wanted to be sure because

11     there were transactions before the leverage buyout, both

12     steps, but I think both steps within the confines of the LBO

13     is what we're all understanding it to be.

14          THE COURT:  Okay.  Thank you.

15          MR. CONLAN:  We're on the same page.

16          THE COURT:  Good.

17          MR. CONLAN:  So that takes us to paragraph 4.  And

18     with respect to paragraph 4, we're going to add back in some

19     of the parties that had been taken out in terms of who the

20     examiner will confer with.  And so we're going to add back in

21     -- frankly, we're going to add back in everybody, JP Morgan,

22     the Credit Agreement Lenders, Center Bridge and Law Debenture,

23     and I think we're going to define them as the parties, but

24     that's more detail than you need.  I'll just use that term a

25     little bit later again.  And then at the end of that same

1   sentence, they'll be some language, and it will appear again

2   later as well that the Parties, capital P, shall reasonably

3   cooperate with the examiner.  And Bill, I think -- excuse me,

4   Mr. Harrington, that takes us through 4, I think, to 5.

5           THE COURT:  Okay.

6           MR. CONLAN:  The change with respect to 5 is the

7   date on which or how much time before the work plan is

8   proposed, and rather than ten, the parties agreed to seven.

9           THE COURT:  Okay.  So --

10          MR. HARRINGTON:  Probably the one tricky aspect of

11  that, Your Honor, will be, you know, scheduling a status

12  conference based on Your Honor's calendar and given that we

13  haven't appointed an examiner yet, we don't have the clock

14  running, so --

15          THE COURT:  Well, I'll tell you for the near term

16  what my calendar looks like, and I will tell you I have a

17  hearing on April 28th at 10 o'clock, after that I intend to

18  leave for the Third Circuit Judicial Conference, another

19  program after that, and then I have vacation and another

20  program as part of that, so I won't be returning to the office

21  until May 10th.  I do have an afternoon -- well, let's see, I

22  do have an afternoon hearing scheduled on May 10th, but, you

23  know, I could schedule you as early as the, you know, the

24  morning of May 10th if I have to because it doesn't sound to

25  me, based on your timing, as if you will see me before then.

1          MR. HARRINGTON:  That seems correct, Your Honor.

2          MR. CONLAN:  Can we make April 28th work?  What I'm

3    -- all I'm sensitive to, and we can come back to this, is when

4    we're going to have a confirmation hearing and when the report

5    would be due is --

6          THE COURT:  Well, it's going to be in August

7    sometime --

8          MR. CONLAN:  Right.

9          THE COURT:   -- based on my schedule.

10         MR. CONLAN:  Okay.

11         MR. BENDERNAGEL:  I thought the Order makes it

12   fairly clear, Your Honor, though, that the work can start

13   before that status conference.

14         UNIDENTIFIED SPEAKER: It does.  It does.

15         MR. BENDERNAGEL:  So it seems to me that getting the

16   budget and the work plan right, taking a little bit more time

17   makes more sense than trying to rush something through and get

18   it cued up by the 28th, which I don't think is going to happen

19   since we don't have a person, so it sounds like the 10th has

20   got to be the day.  But if it's understood that the work can

21   get started, that doesn't seem to be a pacing item.

22         UNIDENTIFIED SPEAKER:  I actually think that works,

23   Your Honor, because that would get the work plan and budget

24   out within seven days and that will give the parties, you

25   know, seven days to look at it before the 10th, so --

14

1          THE COURT:  Okay.  So you want to say 11 o'clock on

2     May 10th for the status?

3          UNIDENTIFIED SPEAKER:  I think that works, Your

4     Honor.

5          THE COURT:  All right.

6          MR. STARK:  Your Honor, we just want to, for the

7     record, say that we're in agreement with Mr. Bendernagel about

8     getting the work started before that hearing if necessary and

9     we hope the other parties are -- I would hope that if anybody

10    objects to that, they would say it now because if we're going

11    to meet this time schedule, the examiner is going to need to

12    get started.

13         THE COURT:  Well, the real issue is, and I always

14    hate to issue such a challenge or say anything that might be

15    viewed as a challenge, but I mean, how much burn can occur,

16    you know, between --

17         UNIDENTIFIED SPEAKER:  Right, that's the point.

18    It's not going to be that material.

19         THE COURT:  Yes.

20         UNIDENTIFIED SPEAKER:  And it's better to get

21    started.

22         THE COURT:  Yes, I agree.  Okay.

23         MR. CONLAN:  There will also be some language at the

24    end of 5, which you've already essentially referred to, which

25    is at the very end, and an opportunity for any party to be

1    heard on the Application on the appropriateness of the budget.

2    There are various parties that once we get to the place where

3    you're going to approve the work plan and budget having seen

4    it, obviously, and work already having started essentially

5    that people want the ability to be able to say, hey, wait a

6    second, that's too much or too little.

7            UNIDENTIFIED SPEAKER:  Yeah.

8            MR. BERNSTEIN:  Your Honor, Don Bernstein again.

9    This was another one of our points, which is that we had

10   indicated initially that we wanted a cap in this Order and the

11   U.S. Trustee felt that it was appropriate to see the budget

12   first, but we did want, if the budget was excessive, to be

13   able to come back to the Court and have the opportunity to be

14   heard on that.

15           THE COURT:  Understood.

16           MR. HARRINGTON:  Which, Your Honor, we thought was

17   the whole point of the status conference, so --

18           MR. CONLAN:  So --

19           THE COURT:  Well, let's put it this way.  My

20   experience with this is limited, but it's limited to what was

21   a very large case at the time, so on which -- let me put it

22   this way, on which questions about the expenditure for the

23   cost of the examiner's investigation was raised routinely

24   throughout the examination period.  Not that the result made

25   anybody happy, but I understand.

1      MR. CONLAN:  So May 10th would be the day when people

2  can comment on the appropriateness of the budget.

3      With respect to paragraph 6, and this is the one that

4  folds into the confirmation schedule.  As Your Honor knows, we

5  have a Disclosure Statement hearing set for May 20th.  We'll

6  also be bringing on a Motion to Approve Notice and Voting

7  Procedures, and we will have teed up by that time and for that

8  hearing a Motion to Extend Back-End Exclusivity to the -- so

9  that it tracks the Solicitation Order.  And we're toying

10  around with the date for voting, the voting deadline as well

11  as plan objections, and that moves, in part, off of the

12  confirmation date that we have and --

13      THE COURT:  Would you like to talk about that now

14  then?

15      MR. CONLAN:  I would.

16      THE COURT:  All right.  I know that you had

17  requested the last two weeks in August, but I am -- in July,

18  but I'm out pretty much, well, I'll say all but a couple days

19  the last two weeks in July, so I'm looking toward August.  But

20  let me first ask, how much time would you like me to set aside

21  for the hearing?  Are we still -- well, I guess, as of now

22  we're still in a non-consensual plan situation.  I don't know

23  what evidence or objections, I mean, I can guess with some,

24  but timing wise, have the parties talked about that?

25      MR. CONLAN:  A little bit.  My own view on it is,

1  unless global peace breaks out that it's more like five or ten

2  days.

3        MR. STARK:  Your Honor, may I be heard?

4     (No verbal response.)

5        MR. STARK:  I told everybody else, and I think I may

6  have told Your Honor, that we intend to litigate the case on

7  all of these issues, so it will be a lengthy trial, five, ten

8  days, probably closer to ten, but all of the evidence will

9  come in.

10        THE COURT:  Well --

11        MR. CONLAN:  Yeah, those days do not have to be

12  consecutive.  Of course, it would be nice, but they don't have

13  to be.

14        THE COURT:  Well, I'd like to try to get them as

15  close together as possible, it helps me.  It's a marathon for

16  everybody concerned, but I find that when I hear it all at

17  once, it's just better for me.

18     (Pause in proceedings.)

19        THE COURT:  Okay.  The only thing I have scheduled

20  now during the week of August 16th is an omnibus hearing in

21  this on Tuesday, so I would be willing to set that entire week

22  aside, 16, 17, 18, 19 and 20.  How does that strike the

23  parties?

24        MR. CONLAN:  Okay.

25        THE COURT:  I'm not inclined to go beyond that at

1  this point.

2      MR. CONLAN:  So with that, one of the questions that

3  was raised up by Mr. Stark as well on this point was when the

4  report should be due.  There is a view that it shouldn't be

5  more -- it shouldn't take more than six weeks from the start.

6  There's also a view that -- sorry.

7      MR. STARK:  I mean, given that date, I would think

8  if we put July 12th, that works.

9      MR. CONLAN:  July 12th was the date in the Order, and

10  depending on how the voting plan objection deadline comes out,

11  you know, we also talked about whether or not it ought to be

12  before or after the voting deadline.

13      THE COURT:  After I would think.

14      MR. CONLAN:  After?

15      THE COURT:  Well, especially given --

16      MR. JOHNSTON:  Your Honor, may I be heard on that

17  point?  This is Jim Johnston from Hennigan, Bennett.

18      THE COURT:  Go ahead.

19      MR. JOHNSTON:  We had thought and discussed this

20  with the group that it made a lot of sense to have the report

21  be due before the voting deadline.  It doesn't have to be a

22  great deal before, you know, seven days or so, so the people

23  when they're casting their ballots could actually make an

24  informed decision on -- based on what the examiner has to say.

25  And it seems like with the time table laid out here that that

1   is a feasible option under the circumstances.

2           THE COURT:  I thought that's what I just said.

3           MR. JOHNSTON:  Oh, I'm sorry.  I misunderstood you.

4           THE COURT:  Okay.

5           MR. JOHNSTON:  I thought you were saying the report

6   would be due after the voting deadline came and went.

7           THE COURT:  No, that was not my thought.

8           MR. JOHNSTON:  I apologize.

9           THE COURT:  If I expressed it in a confusing manner,

10  I apologize.  Okay.  Well, with confirmation, you know, in

11  mid-August, you have some room there.  I mean, working

12  backwards, put it this way, typically the voting deadline,

13  time for objecting, all those things would fall typically

14  sometime in August in any event.  I don't really -- I don't

15  have a specific view about that, but I'm open to any

16  suggestion the parties have, but I don't know, it seems to me

17  that if you did have the voting deadline sometime, you know,

18  beginning in August --

19          MR. CONLAN:  Yeah, two weeks before the hearing

20  starts is --

21          THE COURT:  Yes, that's fine.

22          MR. CONLAN:  -- usually fair.

23          THE COURT:  Yes.

24          MR. CONLAN:  So with that, I think, it's -- well,

25  the U.S. Trustee has proposed July 12th as you can see in that

20

1  Order.  Does anybody else wish to be heard?

2      (No verbal response.)

3      THE COURT:  Now, of course, that's subject to once

4  the examiner gets in and gets his or her feet wet, we'll have

5  May 10th to talk about it and --

6      MR. BERNSTEIN:  Your Honor, I just want to -- Don

7  Bernstein again.  I just want to make the point that, you

8  know, we are in a -- the confirmation hearing is going to

9  commence a little bit later than we had initially expected,

10  which is fine.  We shouldn't -- and the examiner will,

11  therefore, have more time.  What I'm concerned about is that

12  the examiner for whatever reason, shortly before the

13  confirmation hearing, suddenly comes back and asks for more

14  time and what we were hoping was to set a little bit earlier

15  deadline, so that we would be sure he would be done before the

16  confirmation hearing.  Now, since you've moved out the date

17  for the confirmation hearing, I think we're okay with the

18  deadline as just suggested, but we need to be cognizant of the

19  fact that the examiner needs to be finished by then.

20      THE COURT:  Well, look, as I'm sure you must know,

21  we'll fix dates, but information comes to light, people make

22  requests and object to the requests, so I mean, there's no way

23  -- I know what you would like to do is to lock the process in

24  for good now, and we'll set dates.  But you know that's not

25  how it always goes.

1        MR. BERNSTEIN:  Your Honor, no, we do know that.

2        THE COURT:  Okay.

3        MR. BERNSTEIN:  But the flip side of that corollary

4   or the corollary to that is work tends to expand to fill the

5   time you set aside for it and so -- especially when the hours

6   are being paid for, and we just want to make sure that we

7   don't run into that problem.

8        THE COURT:  Well, with anybody let's say.

9        MR. BERNSTEIN:  Correct.

10       THE COURT:  Including the examiner.  Okay.

11       MR. BERNSTEIN:  And we agree, Your Honor.

12       MR. CONLAN:  Okay.  I think we have it, the report

13   on the 12th and just for context, they'll be a supplement, the

14   plan supplement date will be thereafter and well in advance of

15   the August 1st likely date for voting and plan objections,

16   which is about two weeks, a little better than two weeks, in

17   advance of the start of the confirmation hearing.

18       THE COURT:  Yes.  I'm not -- let me put it this way.

19   This is not to foreclose anyone who wishes to be heard in

20   connection with the Voting Procedures Motion when that's filed

21   and heard.

22       MR. CONLAN:  Correct.

23       THE COURT:  Okay.

24       MR. CONLAN:  Remarkably, I don't think I have

25   anything on page 6.

1       THE COURT:  Well, let me before we run over

2   paragraph 7, let me just tell you this, I don't -- it sets it

3   up, it looks, and I haven't looked at the rest of the Order

4   yet, but is there a provision that says specifically that the

5   examiner's report is to be filed under seal?

6       MR. CONLAN:  Well, you should answer that.

7       MR. HARRINGTON:  Not specifically, Your Honor.

8       THE COURT:  Okay.

9       MR. HARRINGTON:  But there is a provision that

10  indicates that the examiner will be subject to, you know, all

11  applicable orders of this Court currently, which includes the

12  confidentiality provisions in connection with the centralized

13  depository, so it would be our intent that the examiner will

14  cross that bridge with a motion prior to the filing of his

15  report, Your Honor.

16      THE COURT:  Okay.  And that's why I'm looking at

17  paragraph 7, that's the, I think, the applicable paragraph

18  there, and maybe there are others further on.  Ultimately it

19  strikes me that this is a report that must be made public at

20  some point and, you know, the parties have to understand that

21  now.

22     The other thing you might do is -- not to insert a new

23  issue, but to take a look at the, I think, it was a relatively

24  short opinion I issued in New Century about the examiner's

25  exit.  There was a lot of discussion about the materials that

23

1    had been collected and how they should be disposed of and who

2    should be subject to what discovery and at what costs were not

3    to the estate.  I'm not saying that you need to include such

4    provisions, but you might be mindful of them.  I say that

5    because some of them had a bearing on what should be

6    confidential and what shouldn't be, but ultimately, I think,

7    in that case the parties consented to the report being made

8    public.  There were objections, but it was, I think, largely

9    as a result of my saying it was ultimately going to be made

10   public.  Now, that's not to foreclose anyone from making

11   appropriate arguments at the appropriate time, but that's my

12   overall view.  It's a matter, it seems to me, of great public

13   interest.

14        Okay.  Anything else?  Highlight --

15             MR. CONLAN:  Yeah, well --

16             THE COURT:  -- it for me.

17             MR. CONLAN:  Nothing much.  I mean, nothing on 6 and

18   then on page 7, there was some language in paragraph 12 where

19   we're going to adjust a little of the language to make clear

20   that the Order that's been entered that relates to

21   confidentiality of the documents in the document repository

22   will affect the examiner as well.

23             MR. HARRINGTON:  There is some concern, Your Honor.

24   The Committee has placed all of their documents in the

25   document repository.  The language was slightly ambiguous as

1   to whether or not there were any documents that were outside

2   of the repository, that's been cleaned up.  And then, I think,

3   we also were adding here that same, the parties shall

4   reasonably cooperate with the examiner.

5          MR. CONLAN:  But those are basically conforming

6   changes to what you've already heard, what Mr. Harrington said

7   and I agree with.

8          THE COURT:  Okay.

9          MR. CONLAN:  So with that, it would be an agreed

10  Order.  We will circulate a draft certainly today, and make

11  sure everyone agrees on the language and submit it under

12  Certification.

13         THE COURT:  Okay.  And if it turns out some

14  agreement arises, reach out to me by conference telephone and

15  we'll try to resolved it that way.

16         MR. CONLAN:  Your Honor, I think we don't need to be

17  up on Thursday in --

18         THE COURT:  Okay.

19         MR. CONLAN:  -- light of having concluded on this.

20  I'm sorry.

21         MR. JOHNSTON:  Your Honor, this is Jim Johnston

22  again.  We --

23         MR. CONLAN:  Oh, yeah, I'm sorry.

24         MR JOHNSTON:  -- have a matter that's still

25  scheduled for Thursday, it's the continuation of our 2004

1  Motion with respect to Center Bridge.  We have our meet and

2  confer later this afternoon and I'm hopeful we get things

3  resolved, but I don't think we can cancel that hearing yet.

4          MR. CONLAN:  Pardon me, Your Honor, that's correct.

5  That was outside, frankly, of the Examiner Order issue and --

6          MR. BERNSTEIN:  And there's one other issue that Mr.

7  Stark wants to raise as well.

8          THE COURT:  Okay.  Well, to the extent there's a,

9  again, disagreement about the provision, you know, I'll

10  consider it at the Thursday hearing or in lieu of that a

11  conference call if everything else happens to fall through.

12  Okay.

13          MR. STARK:  There was one other issue that was

14  raised by JP Morgan in their last round markup of the Consent

15  Order and that was they wanted a provision to be added, which

16  is not in the provision now that we've been working on, that

17  stays our equitable subordination Complaint.  And what I said

18  to JP Morgan's counsel, and I'm prepared to put it on the

19  record, here's how we respond to that and if it's

20  insufficient, I'm sure Mr. Bernstein will create some colloquy

21  and we'll talk it further through.

22      We're prepared to litigate that Complaint right now.  We

23  think it's fully briefed on whether or not we violated the

24  automatic stay or whether or not as we contend that are direct

25  equitable subordination in other counts that we've asserted.

1   The parties would like the examiner to investigate that as

2   well, be within the ambit of everything that he's

3   investigating and that's okay with us, but there's three

4   things that emanate out of that.

5       First is, we're prepared to go forward on that basis of

6   -- along the dual track.  This is the litigation track, the

7   examination track is separately.  If you want to take this out

8   and put it on hold pending resolution of the examination, so

9   be it, but that's not at our request.  In other words, there's

10  a risk being assumed by the Debtors here.  If we're right that

11  we have direct causes of action that have been asserted in

12  that Complaint that are not property of the estate and cannot,

13  as we see the law, be settled by their plan, absent our

14  consent for a full adjudication, that's the risk that the

15  Debtors take on with the banks consent and that may be a

16  fundamental confirmation objection, and we're prepared to

17  litigate today and resolve that issue in advance.  But since

18  timing and calendering is very important to them, that risk --

19  the assumption of the risk falls squarely on them not on us.

20      The second is that, and I think the Order is pretty clear

21  on this, but let's clarify it for the record and make sure

22  it's pretty clear, that it's only that litigation being

23  stayed.  If we want to object to the Disclosure Statement, if

24  we want to object to confirmation, if we want to file further

25  2004's, any other normal and other motion practice, we still

1   have the right.

2         THE COURT:  I don't think there's any question about

3   that.

4         MR. STARK:  And then, finally, Your Honor, there

5   will be discovery that will be moving forward.  If it makes

6   everybody comfortable, we'll call it discovery in the context

7   of our confirmation issues and not under that adversary

8   proceeding, but since it's all the same common nucleus of

9   operative fact, we'll be discovering the same stuff and it

10  should not be raised as a relevancy objection or any other

11  sort of objection to the context of the ability to produce

12  discovery to us and the notion that the things that we're

13  asking for as otherwise issues that were raised in the

14  Complaint as opposed to confirmation because in our minds it's

15  all one and the same.  And I believe we've got agreement on

16  that point.

17        MR. BERNSTEIN:  Your Honor, Don Bernstein, for JP

18  Morgan.  We're not trying to preclude any legitimate discovery

19  in connection with the Disclosure Statement, confirmation,

20  what have you, we're not trying to preclude issues that are

21  relevant to the confirmation and that's what we agreed with

22  Mr. Stark.  We do understand, however, that Mr. Stark is

23  agreeing that we do not have to answer the Complaint, that all

24  activity associated with the Complaint is suspended, so that

25  we can get on with the examiner and also get on, frankly, with

1   Disclosure Statement and confirmation.

2        THE COURT:  All right.  That raises an issue in my

3   mind that I'm assuming maybe it's a little bit early, but if

4   the parties haven't, I would like them to talk about a

5   confirmation discovery schedule and see if they can arrive at

6   an agreed protocol for that.

7        UNIDENTIFIED SPEAKER:  We'll get right on that, Your

8   Honor.

9        THE COURT:  Okay.

10        UNIDENTIFIED SPEAKER:  Thank you.

11        MR. CONLAN:  I think that's it.

12        THE COURT:  Okay.  Now, let me just make -- I don't

13   know -- let me say it this way.  Nobody should feel compelled

14   to bring an objection to the Disclosure Statement to give me a

15   preview of what's coming at confirmation.  I promise you, I

16   will pick it up quickly enough as confirmation approaches.  I

17   think, maybe I've done it more than once, but I think it's

18   only once have I ever denied approval of a Disclosure

19   Statement because the plan has been held to be patently

20   unconfirmable.  Now, I don't know whether someone has asserted

21   that here or not, but my hope would be that we can end up with

22   an approved Disclosure Statement on the day of the disclosure

23   hearing.  From my standpoint, it's almost always just a matter

24   of, you know, how we say on objection and in a case like this,

25   on a party the answer usually is, just put it in and the

29

1    Debtors are free to disagree with it.  And I know the parties

2    all know that, but I just wanted to reinforce that notion.

3         Okay.  Any questions about that?

4              MR. CONLAN:  No, Your Honor.

5              THE COURT:  All right.  Listen, I understand that

6    the issue with the examiner involves a lot of sensitivities

7    and a lot of money in terms of the underlying issues, so I

8    very much appreciate how the parties here have worked together

9    to come up with an agreed Order.  I know that -- well, I thank

10   you.  That concludes this hearing.  Court will stand in

11   recess.

12             MR. CONLAN:  Thank you, Your Honor.

13        (Court adjourned at 12:35 p.m.)

14                          CERTIFICATE

15        I certify that the foregoing is a correct transcript

16   from the electronic sound recording of the proceedings in the

17   above-entitled matter.

18

19    _/s/April J. Foga_____        April 20, 2010
20   April J. Foga, CET, CCR, CRCR

21

22

23

24

25