# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>Hearing Date: May 18, 2010 at 1:00 p.m. (ET)<br>Objection Deadline: May 11, 2010 at 4:00 p.m. (ET) |

## SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF PRICEWATERHOUSECOOPERS LLP TO INCLUDE CERTAIN ADVISORY SERVICES IN CONNECTION WITH THE APPLICATION OF FRESH START ACCOUNTING PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO FEBRUARY 8, 2010

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby submit this Supplemental Application (the "Supplemental Application") for entry of an order, in substantially the form submitted herewith, modifying the scope of Tribune Company's ("Tribune") already-authorized

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

employment of PricewaterhouseCoopers LLP ("PwC"), nunc pro tunc to February 8, 2010. PwC is currently retained by Tribune pursuant to sections 327(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") as compensation and tax advisors and independent auditors to the Debtors in connection with these chapter 11 cases. The terms of PwC's existing retention by Tribune are summarized in the Debtors' Application for an Order Authorizing Debtors to Employ and Retain PricewaterhouseCoopers LLP as Compensation and Tax Advisors and Independent Auditors to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to the Petition Date, which was filed on December 26, 2008 [Docket No. 143] (the "Application") and subsequently approved by an order of this Court on March 3, 2009 [Docket No. 470] (the "Original Retention Order"). The Application is hereby incorporated by reference.[2]

The limited purpose of this Supplemental Application is to modify the existing retention of PwC to encompass certain transaction advisory services related to the application of fresh start accounting and plan of reorganization adjustments upon the Debtors' emergence from bankruptcy (collectively, the "Fresh Start Accounting Services"). The Fresh Start Accounting Services provided by PwC are described in that certain supplemental engagement letter, dated as of February 8, 2010, by and between PwC and the Debtors (the "Supplemental Engagement Letter"), in the form attached hereto as Exhibit A. Such services are necessary to the Debtors' successful emergence from chapter 11 but are not covered by PwC's existing engagement

---

[2] The Debtors also incorporate herein by reference the Declaration of William T. England in Support of the Application, which was filed concurrently with the Application on December 26, 2008 [Docket No. 143], as supplemented by the Supplemental Declaration of William T. England filed on March 2, 2009 [Docket No. 461], the Second Supplemental Declaration of William T. England filed on April 10, 2009 [Docket No. 892], the Third Supplemental Declaration of William T. England filed on July 2, 2009 [Docket No. 1681], and the Fourth Supplemental Declaration of William T. England filed on February 5, 2010 [Docket No. 3318] (collectively, the "PwC Declarations").

2

letters,[3] as the same may be amended from time to time (collectively, the "Existing Engagement Letters"), each as modified by the Original Retention Order. Accordingly, the Debtors submit this Supplemental Application to encompass the Fresh Start Accounting Services and obtain Court approval for the Supplemental Engagement Letter. In support of this Supplemental Application, the Debtors rely on the Fifth Supplemental Declaration of William T. England, which is attached hereto as Exhibit B (the "Fifth Supplemental England Declaration"). In further support of this Supplemental Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[4] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[3] As described in the Application, the Debtors and PwC are parties to (i) that certain engagement letter dated December 1, 2008 covering general compensation advisory services (the "Compensation Engagement Letter"), (ii) two separate engagement letters, both dated May 1, 2008, covering the integrated audit of the financial statements of Tribune Company, Tribune Broadcasting Holdco, LLC and Tribune Finance, LLC (the "Audit Engagement Letters"), (iii) that certain engagement letter dated December 11, 2008 covering general tax consulting services (the "Tax Engagement Letter"), and (iv) that certain engagement letter dated December 11, 2008 covering services related to tax claims responses and settlement (the "Claims Engagement Letter"). The four supplemental PwC Declarations were filed with the Court to disclose further agreements between the Debtors and PwC regarding the terms and conditions, including fee structure, for services approved within the scope of the Original Retention Order.

[4] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.     On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND TO THE SUPPLEMENTAL APPLICATION

6.     Pursuant to the Original Retention Order, PwC was retained as compensation and tax advisors and independent auditors to the Debtors in connection with these chapter 11 cases. Specifically, PwC's retention was approved to provide the following services, among others (and as described more thoroughly in the Existing Engagement Letters, as modified by the Original Retention Order), as necessary and requested:

 a. General Compensation Advisory Services, including, but not limited to:

  (i) advising on the design of annual and long-term incentive programs;

  (ii) preparing cost estimates for implementing any arrangements;

  (iii) advising on participant target levels for the incentive programs; and

  (iv) advising on severance and retention programs.

 b. Integrated Auditing Services of the Debtors at December 28, 2008 and for the year then ending;

 c. Review Tribune Company's unaudited consolidated quarterly financial information;

 d. General Tax Consulting Services, including, but not limited to:

  (i) advising on tax issues resulting from the Debtors' chapter 11 cases including assisting with the structuring and estimation of the tax effects of restructuring plan alternatives;

    (ii)  advising on tax planning or reporting matters;

    (iii)  preparing and/or reviewing original and amended returns for all taxes including federal, state and local income taxes, gross receipts, license, sales and use taxes and property taxes.

  e.  Claims Response and Settlement Services including, but not limited to:

    (i)  assisting in managing, responding to and verifying the accuracy of claims submitted for federal income taxes, state and local net income taxes, franchise, sales use, property and business license or gross receipts taxes as a result of the Debtors' chapter 11 cases;

    (ii)  assist in negotiating settlements with taxing authorities with respect to claims submitted due to the Debtors' chapter 11 cases, as well as tax assessments for which the Debtors request assistance during the pendency of these cases.

  f.  Additional compensation, tax and/or accounting consulting incident to the services described in paragraphs (a)-(e) above.

  7.  At the time of emergence from these chapter 11 cases, the Debtors will implement so-called "fresh start accounting" to transition their financial statements from a chapter 11 environment to a non-chapter 11 environment. "Fresh start" accounting refers to the adjustment in the basis of financial reporting of a reorganized debtor as of the date it emerges from bankruptcy, such that all of the reorganized debtor's assets and liabilities are restated from historical values to fair market values. In addition, the debtor's income statement, statements of cash flow, statements of shareholder equity, and other financing statements are reset. Thus, a reorganized debtor emerges from bankruptcy with a clean slate for accounting purposes, rather than as a continuation of the old entity. Implementing such a process in an enterprise of the size and complexity as that of the Debtors' often requires several months of advance preparation by the Debtors' in-house accounting personnel and outside accounting advisors.

  8.  The Debtors believe that it is important to begin this process now. The Debtors recently filed their chapter 11 plan of reorganization and accompanying disclosure statement with the Bankruptcy Court, and the Bankruptcy Court has set a hearing to consider

approval of the Disclosure Statement for May 20, 2010. The Court has additionally allocated time in mid-August for the confirmation hearing on the Plan. Given these upcoming dates, and the numerous other tasks that the Debtors will be required to complete before they can emerge from their chapter 11 cases – each of which requires the time and attention of the Debtors and their advisors – the Debtors have begun to undertake the initial planning and prepatory steps necessary to transition to fresh start accounting.

9. Accordingly, Tribune and PwC have recently negotiated and entered into the Supplemental Engagement Letter, pursuant to which PwC has agreed to provide transaction advisory services related to the Debtors' evaluation and assessment of the application of fresh start accounting. Assistance with the application of fresh start accounting was not among the services that PwC or the Debtors contemplated under the Existing Engagement Letters. The Fresh Start Accounting Services to be provided by PwC in connection with this project include, but are not limited to, the following:

- a. Advising the Debtors' management on the development of a detailed project plan, including assistance with project management of the Debtors' various work streams required to emerge from bankruptcy;

- b. Advising on the requirements of fresh start accounting, as codified in existing and new accounting policies and based on PwC's knowledge of standard industry practice;

- c. Facilitating practical and technical workshops and training for the Debtors' employees;

- d. Advising on technical accounting and reporting issues that typically arise in the fresh start accounting and reporting process;

- e. Coordinating with the Debtors' in-house tax professionals and outside tax specialists for fresh start accounting tax implications, structuring issues, and accounting policy changes;

- f. Advising on the technical requirements of fresh start accounting related to valuations, such as the development of valuation assumptions and methodologies;

g. Providing guidance on the standard industry practices regarding preparation, presentation, and disclosure of the bankruptcy and fresh start related accounting in a Form 10 or equivalent filing with the Securities and Exchange Commission and related proforma financial statements;

h. Advising on the tactical and systemic ways to embed the valuation and accounting policy adjustments that arise as a result of the fresh start accounting in the Debtors' systems and processes;

i. Advising the Debtors' management on the requirements of public company post-bankruptcy fresh start accounting and reporting; and

j. Advising the Debtors' management on finalizing the opening balance sheet to reflect fresh start accounting adjustments.

10. The Fresh Start Accounting Services contemplated in the Supplemental Engagement Letter will not be duplicative of those services provided by any other of the Debtors' professionals, and PwC will coordinate any services performed at the Debtors' request with the Debtors' other professionals, as appropriate, to avoid duplication of effort.

### RELIEF REQUESTED

11. By this Supplemental Application, the Debtors seek authorization for Tribune to employ and retain PwC to provide the Fresh Start Accounting Services, as described in the Supplemental Engagement Letter annexed hereto as <u>Exhibit A</u>, pursuant to sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014, <u>nunc pro tunc</u> to February 8, 2010.

12. The modified retention and employment of PwC is requested in accordance with and subject to the terms of the Original Retention Order. All provisions of the Original Retention Order remain in full force and effect, are unaffected by this Supplemental Application, and shall control over the terms of the Supplemental Engagement Letter.[5] Moreover, the terms of the Existing Engagement Letters, as such agreement and letters have

---

[5] Specifically, the provisions in the Supplemental Engagement Letter regarding the Debtors' indemnification obligations and PwC's limitation of liability thereunder shall be deemed to be modified by the terms of the Original Retention Order that were incorporated at the request of the Office of the United States Trustee to address the United States Trustee's concerns regarding similar provisions in the Original Engagement Letters.

7

been and may be modified by applicable orders of the Bankruptcy Court, remain in full force and effect and are not modified by the parties' entry into the Supplemental Engagement Letter.

13. PwC intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Fresh Start Accounting Services performed under the Supplemental Engagement Letter, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders established by this Court, consistent with the limited waiver of the information requirements of Local Rule 2016-2 that was granted to PwC with respect to the submission of time records in the Original Retention Order. The proposed compensation for the Fresh Start Accounting Services is set forth in the Supplemental Engagement Letter (the "Fee Structure"). See Supplemental Engagement Letter at 9. See also Application at ¶¶ 15-16. Specifically, in consideration of PwC's services under the Supplemental Engagement Letter, Tribune has agreed to the payment of fees on a monthly basis at the hourly rates specified in the Supplemental Engagement Letter and the reimbursement of all actual and necessary out-of-pocket expenses and internal per-ticket charges for booking travel. See Supplemental Engagement Letter at 8-9. At this time, PwC estimates that its fees for the Fresh Start Accounting Services will range between $750,000 and $1,500,000. See Supplemental Engagement Letter at 9. The Debtors believe that the foregoing Fee Structure is (a) reasonable, (b) market-based, and (c) merited by PwC's extensive knowledge and experience of the Debtors and its successful provision of similar services to other companies emerging from chapter 11.

## LEGAL AUTHORITY

14. In the instant case, the retention of PwC by Tribune with respect to the Fresh Start Accounting Services contemplated by the Supplemental Engagement Letter is in the best interests of the Debtors' estates and creditors, and satisfies all other standards for retention under sections 327(a) and 1107. Tribune's existing retention of PwC, and the proposed modification of that retention described herein, comply in all respects with section 327(a) of the Bankruptcy Code, which provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e). To the best of the Debtors' knowledge, information, and belief, and based on PwC's representations in the Fifth Supplemental England Declaration, PwC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for employment in these cases.

15. Since the time of its initial engagement in December 2008, PwC's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' business operations, finance and accounting systems, creditors, and related matters. Accordingly, the Debtors have selected PwC to provide the project management expertise and advice necessary to assist them in implementing fresh start

9

accounting upon emergence from chapter 11. Given PwC's experience in providing compensation, tax, accounting, and auditing services to the Debtors in connection with their business operations, and given further that PwC has developed a deep understanding of many aspects of the Debtors' business operations, the Debtors have selected PwC to perform the services described in the Supplemental Engagement Letter as well, and believe that PwC is particularly well-suited to assist the Debtors in implementing fresh start accounting and to perform the needed services efficiently and cost-effectively on behalf of the Debtors. The time and cost associated with engaging new consultants who are unfamiliar with the Debtors and their assets would be both costly and inefficient, needlessly expending the Debtors' assets.

16. Tribune seeks to retain PwC nunc pro tunc to February 8, 2010, the point at which PwC first began providing the Fresh Start Accounting Services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28, 2002). In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time pressure to begin service without approval; (2) the amount of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. In re Arkansas Co., Inc., 798 F.2d at 650. As noted above, the Debtors and PwC have begun to undertake the initial planning and prepatory steps related to the transition to fresh start accounting, and the services rendered by PwC prior to the date of this Supplemental Application are preliminary in nature and on a limited basis. Meanwhile, Tribune and PwC have been

negotiating the terms of PwC's Supplemental Engagement Letter and preparing this Supplemental Application. As a result of the Debtors' request that PwC commence the Fresh Start Accounting Services prior to the finalization of the Supplemental Engagement Letter and the filing of this Supplemental Application, PwC incurred approximately $90,000 in fees from February 2010 through March 2010, and an estimated $45,000 in fees in April 2010. The Debtors accordingly believe that these amounts and PwC's future compensation do not prejudice innocent third parties. The Debtors therefore request that the Court approve PwC's retention on a nunc pro tunc basis in order to cover the period in which those fees were incurred, as well as subsequent periods.

17.     The authority to retain consultants to assist with a chapter 11 debtor's transition to fresh start accounting has been granted to other chapter 11 debtors by courts in this and other districts. See, e.g., In re CIT Group Inc., Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. Jan. 26, 2010) (authorizing the retention of KPMG LLP to provide fresh start accounting services, among other services); In re Chemtura Corporation, Case No. 09-11233 (REG) (Bankr. S.D.N.Y Nov. 23, 2009) (authorizing the retention of Deloitte Financial Advisory Services LLP to provide fresh start accounting services, among other services); In re UTGR, Inc. d/b/a Twin River, et al., Case No. 09-12418 (ANV) (Bankr. D.R.I. Nov. 18, 2009) (authorizing the retention of PwC to provide fresh start accounting services, among other services); In re Lyondell Chemical Company, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Oct. 20, 2009) (expanding the scope of PwC's existing retention as independent auditors and accountants to include fresh start accounting services); In re Visteon Corporation, Case No. 09-11786 (CSS) (Bankr. D. Del. Oct. 7, 2009) (expanding the scope of Ernst & Young LLP's exiting retention to include fresh start accounting and valuation services). The Debtors therefore request this Court's authorization to

approve the expansion of PwC's services on behalf of the Debtors pursuant to the terms of the Supplemental Engagement Letter.

## NOTICE

18. Notice of this Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the administrative agents for Tribune's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to PwC; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

19. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) approving the Supplemental Application and the retention of PwC to provide the Fresh Start Accounting Services pursuant to sections 327(a) and 1107 of the Bankruptcy Code and pursuant to the terms of the Supplemental Engagement Letter, nunc pro tunc to February 8, 2010, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: April 30, 2010

                                  TRIBUNE COMPANY
                                  (for itself and on behalf of each Debtor)

                                  */s/ Chandler Bigelow III*
                                  Chandler Bigelow III
                                  Senior Vice President / Chief Financial Officer