**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| TRIBUNE COMPANY, *et al.*[1] ) | Case No.: 08-13141 (KJC) |
| ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Response Deadline: May 11, 2010 at 4:00 p.m., EST |
| ) | Hearing Date:     May 18, 2010 at 1:00 p.m. EST |

**RESPONSE OF ORACLE TO DEBTORS' TWENTY-FOURTH OMNIBUS
(SUBSTANTIVE) OBJECTION TO CLAIMS [NO LIABILITY]
[Tribune Company and Los Angeles Times Companies]
(Claims ## 4748, 4749, 4750, & 4751)**

Oracle Corporation, Oracle America and various affiliates and subsidiaries (collectively, "Oracle"), the successor-in-interest to Sun Microsystems, Inc. ("SMI") and various affiliates and subsidiaries of SMI, hereby responds (the "Response") to the *Debtors' Twenty-Fourth Omnibus (Substantive) Objection To Claims Pursuant To 11 U.S.C. §§ 502(b) of The*

---

1. The Debtors in these chapter II cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); luliusAir Company, LLC (9479); luliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., nlk/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); W A TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtoris435 North Michigan Avenue, Chicago, Illinois 60611.

*Bankruptcy Code, Bankruptcy Rules 3003 and 9007, And Local Rule 3007-1* (the "Objection") filed by the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors").

The Response is based on the grounds set forth herein, the proofs of claim filed in this case by SMI (as identified hereinafter), the *Declaration Of Thomas Carley In Support Of Response Of Oracle To Debtor's Twenty-Fourth Omnibus (Substantive) Objection To Claims [No Liability]* (the "Carley Declaration"), the documents and pleadings on file in this case and such other and further evidence as may be adduced at the trial in support of the Response.  All capitalized terms have the defined meaning set forth in this Response and, in the advent any capitalized is not defined herein it shall have the meaning set forth in the Objection.

## SUMMARY OF RELIEF SOUGHT BY DEBTORS

The Objection seeks entry of an order disallowimg the claims asserted by the following proofs of claim (individually, a "Proof of Claim" and collectively, the "Proofs of Claim") filed by SMI:  (a) Proof of Claim No. 4748 asserted against the Los Angeles Times Newspaper, Inc., (b) Proof of Claim No. 4749 asserted against the Tribune Company, (c) Proof of Claim No. 4750 asserted against the Los Angeles Times International, Ltd., and (d) Proof of Claim No. 4751 asserted against the Los Angeles Times Communications LLC (collectively, the "Disputed Claims").  The Objection is brought on the grounds that (a) the Debtors' books and records do not disclose any liability for any of the Disputed Claims and (b) the underlying contracts at issue, allegedly, were terminated prior to the petition date.  *See* Objection at ¶10 and Exhibit "A" attached thereto at pages 9 and 10.

## SUMMARY OF RELIEF SOUGHT BY ORACLE

Pursuant to 11 U.S.C. §502(a), 11 U.S.C. §503(b), Rule 3001(f) and Rule 3007 of

the Federal Rules of Bankruptcy Procedure, and Local Rule 3007-1, Oracle seeks entry of an order denying the Objection as it pertains to each of the Disputed Claims.  The relief sought by Oracle is based on the grounds that the Debtors have failed to carry their burden to rebut the *prima facie* evidence of the validity and amount of each claim as set forth by each Proof of Claim filed by SMI.  Moreover, with regard to the status of a portion of each Proof of Claim as an administrative expense, Oracle has submitted sufficient evidence in each Proof of Claim and in the Carley Declaration establishing the amounts entitled to priority treatment under 11 U.S.C. §503(b). Oracle submits that, in addition, evidence adduced in support of the Response clearly demonstrates that SMI entered into support and service agreements with the Debtors related to certain hardware and software, the Debtors knowingly and purposefully availed themselves of such services and support, and substantial benefit was realized by the Debtors both pre-bankruptcy and by their respective estates after the commencement of their respective bankruptcy cases.  The value of such services is established by the terms of the LA Times Agreement (as identified below) between SMI and the Debtors.

## BACKGROUND

1.     On September 12, 2001, SMI and Tribune Company entered into that certain *Sun Microsystems Customer Agreement, SMI Customer Agreement #AR-60755*, as supplemented by various exhibits, schedules and statements of work and as amended from time to time, including but not limited to, that certain *Product Exhibit* dated September 12, 2001 (collectively, the "SMI Customer Agreement #AR-60755").  *See* Carley Declaration at ¶6 and Exhibit "A" attached thereto.   Pursuant to the Customer Agreement #AR-60755, SMI licensed software (the "Licenses"), sold computer hardware (the "Hardware") and provided support, consulting and educational services (the "Services") to the Tribune Company and its subsidiaries, operating divisions and Affiliated Companies, including without limitation, the Los Angeles Times Newspapers, Inc., the Los Angeles International, Ltd. and the Los Angeles Times Communications LLC (collectively, the "LA Times Companies").  *Id.* at ¶¶ A., B., C. and D,

and ¶1.1 of the SMI Customer Agreement #AR-60755. Further, the Tribune and the LA Times Companies each are liable for payment of any Licenses granted, Hardware sold, and Services provided pursuant to the SMI Customer Agreement #AR-60755 and any related agreement, exhibit schedule and/or statement of work. *Id.* at §§1.1, 2.1, and 3.1.

        2.    Pursuant to SMI's usual business practices and SMI Customer Agreement #AR- 60755, SMI and LA Times Companies entered into that certain *Sun Preventive Services Statement of Work*, dated August 15, 2006 (the "LA Times SOW"). *See* Carley Declaration at ¶7 and Exhibit "B" attached thereto. The LA Times SOW provides, in pertinent part, that (a) the term of the agreement is three years, effective July 30, 2006 through July 29, 2009, (b) the LA Times Companies will have the option to renew the contract at the end of the term, (c) the LA Times Companies will issue to SMI a purchase order fully funded at the start of each year and will issue additional purchase orders thereafter as needed, and (d) this agreement is subject to the terms and conditions of the General Terms AR-60-755BU between the parties, executed as of July 30, 2006. *Id.* at §3.1, §1, §3.1, §9, respectively.

        3.    Pursuant to SMI Customer Agreement #AR-60755 and as supplemented by the LA Times SOW, SMI and the LA Times Companies entered into that certain *Support Services Agreement, Contract No. NK2025221* ("Contract NK2025221") whereby SMI undertook to provide support services with respect to certain Hardware and software identified on certain schedules (the "Schedules") with such services subject to renewal by the LA Times Companies on an annual basis commencing on August 1 and running through July 31 of each annual period when such services are ordered. The LA Times Companies initially acquired support services pursuant to Contract NK2025221 starting on August 1, 2006 through July 31, 2007 and, thereafter, renewed such services for the period starting on August 1, 2007 through July 31, 2008. *See* Carley Declaration at ¶8 and Exhibit "C" attached thereto. Contract NK2025221 sets forth the specific Services provided to the LA Times Companies and the prices associated with such Services. *Id.*

4. In advance of the termination date of any service and support agreement (including but not limited to the LA Times Agreement at issue), SMI's usual practice provided for the SMI account representative to contact the customer prior to termination of the support and services agreement to confirm whether the customer desired to renew the support services as described in the customer's Support Services Agreement and, if so, to confirm that it intended to issue a new purchase order as funding for the renewal of the Agreement. *See* Carley Declaration at ¶9. In the event that a customer indicated it did not want to renew support services and that a new purchase order would not be issued, SMI's practice was to have the customer confirm that it wished to terminate support services in writing so that SMI and the customer had a clear understanding that the customer no longer wanted SMI to continue to provide what are typically important support services for the customer's hardware and software systems. *Id.*

5. Pursuant to SMI's usual business practices related to the renewal of Support Services Agreements, SMI representatives contacted the LA Times Companies regarding the renewal of Contract NK2025221 and the LA Times SOW and confirmed that each company desired (a) to renew the support services after the end of the August 1, 2007-July31, 2008 term of Contract NK2025221 and the LA Times SOW, (b) to continue receiving the support services specified in those agreements, and (c) to issue a new purchase order for payment of such support services as required by the SMI Customer Agreement #AR-60755, the LA Times SOW, and Contract NK2025221 (collectively, the "LA Times Agreement"). *See* Carley Declaration at ¶10. Accordingly, pursuant to the request of the LA Times Companies, SMI continued to provide support services to the LA Times Companies from and after August 1, 2008 and such companies utilized the support services and availed themselves of such support services continually from August 1, 2008 through April 23, 2009. *Id.* and Exhibit "D" attached thereto. At no time either before or after July 31, 2008 did the LA Times Companies ever notify SMI in writing or otherwise that it no longer wanted to receive support services pursuant to the LA

Times Agreement.  Based on the aforementioned facts, the fees that would be associated with SMI's provision of support services pursuant to the LA Times Agreement would be no less than the amount that the LA Times Companies paid for such services for the period August 1, 2007 through July 31, 2008, which amount is reflected on Exhibit C on page 36 of 37 as $867,760.  *Id.*

6. Pursuant to the LA Times Agreement, the LA Times Companies are indebted to Oracle, in not less than the amounts set forth on the following Proofs of Claim filed by SMI on June 11, 2009, for Services provided to such Debtors:

| LA Times Company/Debtor | Case No. | Claim No. | Pre-Petition Claim | Post-Petition Claim |
| --- | --- | --- | --- | --- |
| Los Angeles Times Newspaper, Inc. | 08-13187 | 4748 | $ 293,156.21 | $ 536,316.79 |
| Tribune Company | 08-13141 | 4749 | $ 293,156.21 | $ 536,316.79 |
| Los Angeles Times International, Ltd. | 08-13186 | 4750 | $ 293,156.21 | $ 536,316.79 |
| Los Angeles Times Communications, LLC | 08-13185 | 4751 | $ 293,156.21 | $ 536,316.79 |

As of this date, the full amount of each such Proof of Claim remains due and owing by each respective LA Times Company.  *See* Carley Declaration at ¶11.

## **LEGAL ARGUMENT**

<u>The Claims Should Be Allowed Because The LA Times Companies Have Failed To Rebut The *Prima Facie* Validity and Amount of the Claims As Evidenced By The Proof of Claim</u>

The filing of a proof of claim constitutes *prima facie* evidence of its amount and validity.  *In re Planet Hollywood International*, 274 B.R. 391 394 (D. Del. 2001) *citing In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992); *see* Fed. R. Bankr. P. 3001(f).  Pursuant to the express language of Rule 3001(f), "[a] party objecting to a claim has the initial burden of

presenting a <u>substantial factual basis</u> to overcome the *prima facie* validity of a proof of claim [and] [t]his evidence must be of a probative force equal to that of the creditor's proof of claim." *In re Hinkely*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), *aff'd*, 89 B.R. 608 (S.D. Tex. 1988), *aff'd* 879 F.2d 859 (5th Cir. 1989) (emphasis added); *accord, Brown v. IRS (In re Brown)*, 82 F.3d 801 (8th Cir. 1996); *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2rd 635 (3rd Cir. 1991); *In re Allegheny Int'l, Inc.*, *supra*; *In re Lewis*, 80 B.R. 39, 40 (E.D. Pa. 1987). In order "to overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly,* 245 B.R. 768, 773 (2rd Cir. B.A.P. 2000), *aff'd* 242 F.3d 362 (2rd Cir. 2000). Where a debtor simply makes a *pro forma* objection without any evidentiary support, a court may summarily overrule such objections. *See e.g.*, *Garner v. Shier (In re Garner)*, 246 B.R. 617, 620, 623 (B.A.P. 9th Cir. 2000). The *prima facie* validity of a proof of claim is "strong enough to carry over a mere formal objection without more." *In re Schlehr*, 290 B.R. 387, 395 (Bankr. D. Mont. 2003). Thus, "[u]nless the trustee, as objector, introduces evidence as to the invalidity of the claim or the excessiveness of the amount, the claimant need offer no further proof of the merits of the claim." *In re Brown*, 82 F.3d 801 (8th Cir. 1996) *cited in 4 Collier on Bankruptcy*, 15th Edition Revised (2006), §502.02[3][f] at pg. 502-18 n. 38.

*Garner* is instructive with regard to the generalized, non-specific nature of the "books and records" objection asserted by the Debtors in this instance. In *Garner*, the debtor objected to a proof of claim by merely asserting that "there is no obligation to pay . . . and there are no written documents or other competent evidence of any valid obligations owed . . ." and, at the hearing, the debtor failed to offer any evidence in support of such assertions. *Garner,* 246 B.R.

at 620.   Accordingly, the *Garner* Court held that the debtor did not fulfill its burden of producing competent evidence rebutting the presumption of validity afforded the proof of claim.  *See Garner*, 246 B.R. at 620.

The situation before this Court, essentially, is no different than the situation presented to the *Garner* court.   Here, the Bigelow Declaration[2] filed by the Debtors merely states that agents for the Debtors' estates have expended "considerable time and resources . . . to review reconciled the Proofs of Claim filed against the debtors in these Chapter 11 cases [and that] the Debtors have determined they have no liability for the Proofs of Claim . . . ." at issue in the Objection.   *See* Bigelow Declaration at ¶4.   Simply put, the Bigelow Declaration *fails to submit any substantial factual evidence* satisfying the Debtors' burden to overcome the *prima facie* presumption of validity of the existence of the claims or their respective amount as set forth in each Proof of Claim.   The Bigelow Declaration does not address with any particularity the underlying facts supporting the Objection to any claim evidenced by any one of the Proofs of Claim.   Instead, the Bigelow Declaration simply asserts that the declarant is one of the Debtors' managers, he is generally familiar with the Debtors' books and records and certain unidentified employees assisted in the claims review and reconciliation process.   *See* Bigelow Declaration at ¶¶ 1, 3 and 4.   Clearly, all that Mr. Bigelow attests to is the process that he – or some other unidentified person – participated in and that he believes the Debtors' books and records do not reflect the existence of any debt owed to Oracle.  *See* Bigelow Declaration at ¶5.

By his declaration, Mr. Bigelow fails to show that he has any personal knowledge of the underlying LA Times Agreement or the business relationship between SMI and the

---

[2] *See Declaration of Chandler Bigelow III In Support of Debtors' Twenty-Fourth Omnibus (Substantive) Objection* (the "Bigelow Declaration") filed in support of the Objection.

Debtors.  Accordingly, by his declaration, he has not submitted any "substantial factual" evidence bearing on either the existence of a liability owed to Oracle or the amount of any such claim.  Instead, the Bigelow Declaration limits its factual assertions to the generalized process by which unidentified employees undertook at his direction regarding the claims filed in this case.  The only fact that he can attest to is that this process failed to disclose any record of the obligation represented by each Proof of Claim.  He cannot – and has not – contended that such a claim does not exist or that the Debtors, in fact, conclusively are not indebted to Oracle.  His evidence, in short, does not address any of the claims evidenced by any of the Proofs of Claim.

Standing alone, the Bigelow Declaration clearly does not satisfy the Debtors' burden of adducing "substantial factual" evidence rebutting any element of the claims asserted by each respective Proof of Claim.  As in *Garner*, the Debtors in this case have merely asserted that "there is no obligation to pay . . . ." 246 B.R. at 620.  Essentially, the Bigelow Declaration puts before this Court no evidence other than the bare assertion by Mr. Bigelow that he is familiar with the Debtors' books and records and that he did not find support for the claims at issue.  These conclusionary statements, standing alone, certainly do not "overcome th[e] *prima facie* evidence . . . [set forth in each Proof of Claim because they do not constitute] evidence which, if believed, would refute at least one of the allegations essential to the claim."  *In re Reilly,* 245 B.R. at 773.  As *Garner* teaches, where a debtor simply makes a *pro forma* objection without competent evidentiary support, a court should summarily overrule such objections.  See *Garner*, 246 B.R. at 623.  Under these circumstances, the *prima facie* validity of a Claim No. 2964 is "strong enough to carry over a mere formal objection without more."  *In re Schlehr*, 290 B.R. at 395.

<u>The Services Provided By SMI Post-Petition To The LA Times Companies Are Entitled To Treatment As Administrative Expense Claims</u>.

In these cases, after the Petition Date SMI provided Services whose value was not less than $ 536,316.79.  As set forth below, these Services constitute "actual, necessary costs and expenses of preserving" the LA Times Companies' bankruptcy estates and, accordingly, they should be allowed as administrative expenses entitled to full payment.

Section 503(b) (1) (A) of the Code provides for priority treatment of "actual, necessary costs and expenses of preserving the estate." *In re Pinnacle Brands, Inc*., 259 B.R. 46, 50 (Bkrtcy.D.Del. 2001.) *citing* 11 U.S.C. § 503(b).  In general, post-petition business expenses are granted administrative-expense priority so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize. *In re Kadjevich*, 220 F.3d 1016, 1020 (9th Cir. 2000) *citing Microsoft Corp. v. DAK Indus., Inc.* (In re DAK Indus., Inc.), 66 F.3d 1091, 1097 (9th Cir.1995) ("Payment of administrative expenses allows the debtor to secure goods and services necessary to administer the estate, which ultimately accrues to the benefit of all creditors."); *accord*, *In re Mammoth Mart, Inc*., 536 F.2d 950, 954 (1st Cir.1976).  Section 503(b) contemplates some *quid-pro-quo* wherein the estate accrues debt in exchange for some consideration necessary to the operation of the estate. *Pennsylvania Dept. of Environmental Resources v. Tri-State Clinical Laboratories, Inc.*, 178 F.3d 685, 689-90 (3d Cir.1999); *In re Valley Media, Inc*., 2002 WL 999311 (Bkrtcy.D.Del. 2002.) at p. 21.  Priority is granted to compensate the providers of necessary goods, services or labor. *Id.*  Moreover, *w*here a debtor continues to receive the benefits from the other party to an executory contract or unexpired lease, "the debtor-in-possession is obligated to pay for the reasonable value of the services." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984).  In order for an administrative claim to be

allowed, the transaction must be between the creditor and the debtor, and the estate must receive a benefit from the transaction. *In re MUMA Services, Inc.*, 279 B.R. 478, 489 (Bankr. D. Del. 2002), citing *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999).

"Determining whether a creditor has an administrative claim is a two- prong test: the expense must have arisen from a post-petition transaction between the creditor and the trustee (or debtor-in-possession), and the transaction must have substantially benefited the estate." *In re Pinnacle Brands, Inc.*, 259 B.R. at 50 *citing Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir.1995); *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1133 (10th Cir.1993); *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir.1976)*. Accord*, *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bkrtcy.D.Del.,2001), *In re Valley Media, Inc.*, 2002 WL 999311 (Bkrtcy.D.Del.,2002.) at p. 21.

Here, the two prong test clearly is satisfied. First, there is no question that the Services were provided after the Petition Date to the LA Times Companies in their capacities as debtors-in-possession. Their assent to the LA Times Agreement clearly is demonstrated by that fact they did not take the steps necessary to terminate the LA Times Agreement, either before or after the Petition Date. *See* Carley Declaration at ¶10. Moreover, as the Usage Log clearly indicates, the LA Times Companies accepted the Services after the Petition Date and realized the benefits of the Services. *See* the Usage Log attached thereto as Exhibit "D to the Carley Declaration at ¶10. Thus, the first element of the test for allowance of an administrative claim is satisfied.

Second, by the very nature of the support and services provided pursuant to the LA Times Agreement, the LA Times Companies' bankruptcy estates received substantial benefit from the

Services after the Petition Date through at least April 23, 2009. *See* Carley Declaration at ¶10. Similarly, there can be no reasonable question that the LA Times Companies' use of the Services in the operation of their businesses significantly benefitted their respective estates. The Services utilized by the LA Times Companies not only helped them operate their businesses, but they also were important in maintaining the value of their business and assets. Therefore, the second prong of Section 503(b) also is satisfied in this instance.

WHEREFORE, Oracle seeks entry of an order (i) denying the Objection to the extent that it seeks disallowance of any one of the Proofs of Claim, (ii) allowing the Proofs of Claim in their entirety, including allowance of administrative expense status as set forth in each Proof of Claim, and (iii) granting such other and further relief as may be permitted by law or equity in this instance.

**WHITE AND WILLIAMS LLP**

/s/ James S. Yoder
James S. Yoder (DE No. 2643)
824 N. Market Street, Suite 902
P. O. Box 709
Wilmington, DE 19899-0709
Telephone: (302) 467-4524
Facsimile: (302) 467-4554
E-mail: yoderj@whiteandwilliams.com

BIALSON, BERGEN & SCHWAB
Thomas M. Gaa
2600 El Camino Real, Suite 300
Palo Alto, California 94306
Telephone: (650) 857-9500
Facsimile: (650) 494-2738
E-mail: tom@bbslaw.com

Date: May 11, 2010          *Attorneys for ORACLE CORPORATION*