# Exhibit A

# SUN MICROSYSTEMS CUSTOMER AGREEMENT

SMI Customer Agreement # **AR-60755**

THIS CUSTOMER AGREEMENT ("Agreement") is made as of <u>September 12, 2001</u>, ("Effective Date") between SUN MICROSYSTEMS, INC., a Delaware corporation with its address at 901 San Antonio Road, Palo Alto, CA 94303, USA ("Sun"), and <u>Tribune Company</u> with its address at <u>435 North Michigan Avenue, Chicago, IL 60611</u> ("Customer").

**BACKGROUND:**

A. Sun licenses software, and sells computer hardware, support, consulting and educational services;

B. Customer wishes to license software and/or purchase certain hardware and other information technology products, as more particularly defined in any attached Product Exhibit ("Products"), and certain support, consulting and educational services, as more particularly defined in any attached Service Exhibit ("Services");

C. Sun and Customer comprise a number of separate operating divisions and Affiliated Companies (as defined below) and Sun and Customer recognize the benefits of having a single contract structure for the sale and purchase of Products and provision of Services identified in any commercial price list of Sun or its Affiliated Companies; and

D. The parties have agreed to a common set of terms as set out below ("Master Terms") and to such Exhibits as may from time to time be attached. Such Exhibits and the Master Terms together constitute this Agreement. The purpose of this Agreement is to create a single mechanism pursuant to which Customer and Customer's Affiliated Companies may acquire Products and Services from Sun and Sun's Affiliated Companies.

## 1 BINDING AGREEMENT AND PRECEDENCE

1.1 This Agreement applies to and binds each of the parties' respective operating divisions. This Agreement also applies to and binds Affiliated Companies of Sun and Affiliated Companies of Customer, which provide written notice of their acceptance of the terms of this Agreement. Submission of a purchase order referencing this Agreement is deemed to constitute acceptance of the terms hereof. "Affiliated Companies" means any entity: a) which is owned 50% or more by a party; or b) over which that party exercises management control; or c) which is under common control with that party; or d) which owns 50% or more of that party.

1.2 The provisions of any Exhibit will take precedence over these Master Terms, to the extent that they are inconsistent.

## 2 ORDERS

2.1 This Agreement governs all orders which Customer submits to Sun, whether by electronic or other means.

2.2 Customer represents and warrants that: (a) it will keep confidential any unique electronic user id and password which Sun assigns to Customer; and (b) all of Customer's employees who submit orders using the assigned user ID and passwords are authorized by Customer to do so. Orders placed electronically have the same legal effect as a signed purchase order.

2.3 Sun's acceptance of Customer's orders is effective upon the earlier of: (a) Sun's issuance of a Sun order confirmation; or (b) Sun's shipment of Products or performance of Services.

## 3 INVOICING, PAYMENT AND TAXES

3.1 Payment terms are cash in advance of shipment, unless Sun and Customer set up and maintain appropriate credit arrangements, in which case payment terms are net thirty (30) days from a correct invoice or delivery of Products, whichever is later.

3.2 Customer will not be required to pay the disputed portion of any invoice, pending resolution of that dispute, if written notice of the dispute has been provided to Sun within fifteen (15) business days of receipt of the invoice for Products or Services. Sun may suspend the delivery of Products and Services upon thirty (30) days' notice to Customer, if payment of all sums which are not the subject of a notified dispute has not been received when due.

3.3 Prices and license fees for Products and Services are exclusive of all sales and other taxes based upon the value of Products or Services and Customer will be responsible for payment of all such taxes.

## 4 REMOTE ACCESS

Customer agrees that Sun may access Products remotely at Customer's site, in order to monitor, manage and service them, and may receive, store and use data from Products for these purposes. All such data will be treated as Information (as defined in Section 6 below), except that Customer permits disclosure for the purposes of fulfilling this Agreement.

## 5 LIMITED WARRANTIES

5.1 Sun warrants Products and Services as specified in each Exhibit.

5.2 UNLESS SPECIFIED IN THIS AGREEMENT, ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS AND WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY, SATISFACTORY QUALITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, ARE DISCLAIMED, EXCEPT TO THE EXTENT THAT SUCH DISCLAIMERS ARE HELD TO BE LEGALLY INVALID.

## 6 CONFIDENTIAL INFORMATION

If either party desires that Information provided to the other party under this Agreement be held in confidence, that party will, prior to or at the time of disclosure, identify the Information in writing as confidential or proprietary ("Information"). The recipient may not disclose Information, may use it only for purposes specifically contemplated in this Agreement, and must treat it with the same degree of care as it does its own similar Information, but with no less than reasonable care. These obligations do not apply to Information which: (a) is or becomes known by the recipient without breach of any obligation to maintain its confidentiality; (b) is or becomes

known to the public through no act or omission of the recipient; (c) is independently developed by the recipient without the use of Information; or (d) is disclosed in response to a valid order by a court or governmental body, if prior to such disclosure, the recipient gives written notice to the discloser, so as to afford it the opportunity to object. This Section 6 will not affect any other confidential disclosure agreement between the parties.

7  NUCLEAR APPLICATIONS

Customer acknowledges that Products and Services are not designed or intended for use in the design, construction, operation or maintenance of any nuclear facility.

8  IMPORT AND EXPORT LAWS

All Products, Services and technical data delivered under this Agreement are subject to U.S. and local export control laws and may be subject to export or import regulations of other countries. Customer agrees to comply strictly with all such laws and regulations and acknowledges that it has the responsibility to obtain such licenses to export, re-export or import as may be required after delivery to Customer.

9  TRADEMARKS

"Sun Trademarks" means all names, marks, logos, designs, trade dress and other brand designations used by Sun in connection with Products and Services. Customer may refer to Products and Services by the associated Sun Trademarks, provided that such reference is not misleading and complies with Sun's Trademark and Logo Policies, which are located at: http://www.sun.com/policies/trademarks. Customer may not remove or alter any Sun Trademarks, nor may it co-logo Products or Services. Customer agrees that any use of Sun Trademarks by Customer will inure to the sole benefit of Sun. Customer agrees not to incorporate any Sun Trademarks into Customer's trademarks, service marks, company names, Internet addresses, domain names, or any other similar designations.

10  INTELLECTUAL PROPERTY CLAIMS

10.1  Sun will indemnify Customer for its reasonably incurred legal expenses and will defend or settle, at Sun's option and expense, any legal proceeding brought against Customer, to the extent that it is based on a claim that Products infringe a trade secret, trademark, mask work, copyright, or patent. Sun will pay all such expenses, together with damages and costs awarded by the court which finally determines the case, or are incurred in the settlement thereof, if Customer: (i) gives written notice of the claim promptly to Sun; (ii) gives Sun sole control of the defense and settlement of the claim; (iii) provides to Sun, at Sun's expense, all available information and reasonable assistance; and (iv) has not compromised or settled such claim.

10.2  If Products are found to infringe, Sun will: (i) obtain for Customer the right to use such Products; (ii) replace the Products with non-infringing products or modify the Products so that they become non-infringing; or, if neither of these alternatives is reasonably available, (iii) remove the infringing Products and refund their net book value.

10.3  Sun has no obligation under this Section 10 for any claim which results from: (i) use of Products in combination with any non-Sun-provided equipment, software or data; (ii) Sun's compliance with designs or specifications of Customer; (iii) modification of Products other than at Sun's direction; or (iv) use of an allegedly infringing version of Products, if the alleged infringement could be avoided by the use of a different version made available to Customer at no additional charge.

10.4  This Section 10 states the entire liability of Sun and exclusive remedies of Customer for claims of infringement.

11  LIMITATION OF LIABILITY

11.1  Except for breach of any applicable license grant, the indemnity provided in Section 10 above, and to the extent not prohibited by applicable law, each party's aggregate liability to the other for claims relating to this Agreement, whether for breach or in tort, including negligence, will be limited to the amount paid to Sun during the previous twelve (12) months for the Product or Service which is the subject matter of the claim, up to a maximum of U.S. $2,000,000 or its local currency equivalent.

11.2  Neither party will be liable for any indirect, punitive, special, incidental or consequential damages in connection with or arising out of this Agreement (including loss of business, revenue, profits, use, data, electronically transmitted orders, or other economic advantage), however it arises, whether for breach or in tort, including negligence, even if that party has been previously advised of the possibility of such damages.

11.3  Liability for damages will be limited and excluded, even if any exclusive remedy provided for in this Agreement fails of its essential purpose.

12  TERMINATION

Either party may terminate this Agreement upon written notice, if the other party fails to cure a material breach within thirty (30) days of written notice of such breach.

13  ASSIGNMENT

Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld, except that both parties may assign their right to receive payment.

14  DISPUTE RESOLUTION

The parties will use reasonable efforts to resolve any dispute arising out of this Agreement through a meeting of appropriate account managers from each party. If the parties are unable to resolve the dispute, either party may escalate the dispute to its executives. If an executive level meeting fails to resolve the dispute within thirty (30) days after escalation, either party may seek any available legal relief. This provision will not affect either party's right to seek injunctive or other provisional relief at any time.

15  GOVERNING LAW

15.1  Disputes which cannot be settled amicably will be governed either by the laws of the state of California, USA, except that the national laws of Customer's domicile will apply, if its corporate headquarters are located outside the United States. Choice of law rules of any jurisdiction and the United Nations Convention on Contracts for the International Sale of Goods will not apply.

15.2  At Customer's option, the venue for resolution of any disputes will be the appropriate courts located either in Santa Clara County, California, USA.; New York City, New York, USA; Toronto, Canada; Sydney, Australia; Singapore; London, U.K.; Stockholm, Sweden; or Paris, France.

16  GENERAL

16.1  A party is not liable under this Agreement for non-performance caused by events or conditions beyond that

SMI Customer Agreement

party's control, if the party makes reasonable efforts to perform. This provision does not relieve either party of its obligation to make payments then owing.

16.2 All written notices required by this Agreement must be delivered in person or by means evidenced by a delivery receipt or acknowledgment and will be effective upon receipt. Except for modifications to this Agreement, each notice communicated in electronic form will be considered to be written.

16.3 This Agreement is not intended to create a partnership, franchise, joint venture, agency, or a fiduciary or employment relationship. Neither party may bind the other party or act in a manner which expresses or implies a relationship other than that of independent contractor.

16.4 If any provision of this Agreement is held invalid by any law or regulation of any government or by any court or arbitrator, such invalidity will not affect the enforceability of other provisions.

16.5 Rights and obligations under this Agreement which by their nature should survive, will remain in effect after termination or expiration hereof.

16.6 Any express waiver or failure to exercise promptly any right under this Agreement will not create a continuing waiver or any expectation of non-enforcement.

16.7 a) No modification to this Agreement will be binding, unless in writing and manually signed by an authorized representative of each party.
b) This Agreement is the parties' entire agreement relating to its subject matter. It cancels and supersedes all prior or contemporaneous oral or written communications, proposals, conditions, representations and warranties and prevails over any conflicting or additional terms of any quote, purchase order, acknowledgment, or other communication between the parties relating to its subject matter during the term of this Agreement.

TO SIGNIFY THEIR AGREEMENT, THE PARTIES' AUTHORIZED REPRESENTATIVES HAVE EXECUTED THIS AGREEMENT, AS OF THE EFFECTIVE DATE.

**SUN MICROSYSTEMS**

Signed: _[signature]_

Name: Anthony J Berba

Title: Finance Director

**CUSTOMER**

Signed: _[signature]_

Name: Rich Michalak

Title: Corporate Purchasing/Technology

**Sun Microsystems, Inc. Customer Agreement**

SMI Customer Agreement # AR-60755-E

## PRODUCT EXHIBIT

THIS PRODUCT EXHIBIT ("Exhibit") is made as of September 12, 2001 ("Effective Date") between Sun Microsystems, Inc., ("Sun") and ("Customer"), and is an Exhibit to the Sun Microsystems, Inc. Customer Agreement ("Agreement") dated September 12, 2001 between Customer and Sun.

### 1 DEFINITIONS

1.1 "Equipment" means the hardware components, Software media and spare parts of Products listed in Sun's price lists.

1.2 "Products" mean Equipment or Software.

1.3 "Software" means any software program provided by Sun in machine-readable form listed in Sun's price lists. Software also includes any modifications which correct errors in the software program, any enhancements which subsequently alter or add functions to the software program and any user manuals or other documentation for the software program.

### 2 FORECASTS AND REPORTS

Customer will use good faith efforts to notify Sun on a rolling basis of Customer's forecast for Products, by operating divisions and Affiliated Companies by country. Customer will provide a monthly report to Sun with the serial numbers, new country of installation and date of export for each Product exported from the country in which they were originally installed.

### 3 TERM AND TERMINATION

This Exhibit will remain in force for five (5) years from the Effective Date. It may be extended by agreement.

### 4 PRICE AND LICENSE FEES

Prices and license fees for Products will be based on the appropriate price lists in effect in the country in which such Products are to be installed.

### 5 DISCOUNTS

5.1 For Products which are discountable in the appropriate Sun price lists, Sun agrees to grant to Customer the discounts set out in either Schedule A to this Exhibit or the SP Addendum to this Exhibit, as applicable.

5.2 Within thirty (30) days of each anniversary date of this Exhibit, Sun will determine Customer's discount for the following year, based on Customer's verifiable worldwide purchases from Sun and its authorized resellers during the current year and Sun's applicable discount policies.

### 6 ORDERS AND DELIVERY

6.1 Customer will reference the Agreement number set out above when placing orders. Sun will meet the delivery dates mentioned in its order acknowledgment form.

6.2 Sun may make reasonable partial deliveries and invoice for them separately, if it notifies Customer accordingly and Customer has given its approval in writing. Sun reserves the right to make Product substitutions and modifications that do not cause a material adverse affect in overall Product performance.

6.3 Title to Equipment and risk of loss of or damage to Products will pass to Customer upon delivery, which will be made in accordance with Incoterms 2000, as specified in the applicable Sun price list.

6.4 Customer may cancel, reschedule or reconfigure the whole or part of any order once at no charge, as long as the written request is received by Sun at least thirty (30) days prior to the scheduled delivery date and the requested delivery date is within ninety (90) days of the original delivery date. If an order is canceled, rescheduled or reconfigured at Customer's request on any other basis, Sun may charge Customer a restocking fee equal to three percent (3%) of the purchase price of the canceled, rescheduled, reconfigured or canceled portion of the order.

### 7 EQUIPMENT UPGRADES

The list price of upgrades is based upon Customer: (i) owning, using and possessing the specified parts from Equipment being upgraded ("Specified Parts") for at least ninety (90) days prior to upgrading, and (ii) returning to Sun the Specified Parts within thirty (30) days of upgrade delivery to Customer site. If Customer does not comply with both (i) and (ii), then for upgrades sold through the Sun Upgrade Allowance Program ("UAP"), Customer agrees to pay Sun the percentage allowance that was deducted from the list price of the selected configuration with the exception of those Specified Parts which are exempt from the Sun UAP (as identified on the applicable Sun price list), where Customer agrees to pay the difference between the list price of the purchased upgrade and the list price of the upgraded Equipment.

### 8 BINARY CODE LICENSE

8.1 Sun grants to Customer a non-exclusive and non-transferable license for the internal use only of Software, by the number of users and the class of computer hardware for which the applicable fee has been paid. Software that is not licensed by Sun as the original licensor is subject to the license terms of the original licensor; Sun may include such additional terms in Supplemental License Terms. Software is confidential and copyrighted. Except as specifically authorized in any Supplemental License Terms, Customer may not make copies of Software, other than for archival purposes. Unless enforcement is prohibited by applicable law, Customer may not modify, decompile, or reverse-engineer Software. Customer may not publish or provide the results of any benchmark or comparison tests run on Software to any third party without the prior written consent of Sun.

8.2 This license is effective until terminated. Customer may terminate this license at any time by destroying all copies of Software. This license will terminate immediately without notice from Sun, if Customer fails to comply materially with any provision of this Agreement. Upon termination, Customer must destroy all copies of Software.

8.3 If Software is being acquired by or on behalf of the U.S. Government or by a U.S. Government prime contractor or subcontractor (at any tier), then the Government's rights in Software and accompanying documentation are only as set

*SMI Customer Agreement*
*Product Exhibit*

out in this Agreement; this is in accordance with 48 CFR 227.7201 through 227.7202-4 (for Department of Defense (DoD) acquisitions) and with 48 CFR 2.101 and 12.212 (for non-DoD acquisitions).

9 WARRANTY

9.1 The duration of the warranty provided below and any applicable response times will vary by the Product. Details of the specific warranty for each Product can be found at [http://www.sun.com/service/support/warranty] the "Warranty Web-Page". The applicable warranties that apply to purchases will be the warranty details that appear on the Warranty Web-Page as of the date of each order, which is hereby incorporated by reference. Any changes to warranty details specified on the Warranty Web-Page will not apply to Products purchased prior to such change.

9.2 Subject to 9.1 above, Sun warrants that:
(i) Equipment will be free from defects in materials and workmanship, and
(ii) Sun has the right to grant to Customer the licenses and rights stipulated in this Exhibit.

9.3 Customer's sole and exclusive remedy and Sun's entire liability for breach of the warranties specified in this Section 9 will be the repair or, at Sun's option and expense, replacement of defective Products. Equipment which fails within seventy-two (72) hours of installation (DOA) will be replaced free of charge.

9.4 No warranty will apply to any Product that has been: (i) modified, altered or adapted without Sun's written consent; (ii) maltreated or used in a manner other than in accordance with that Product's manual; (iii) repaired by any third party in a manner which fails to meet Sun's quality standards; or (iv) improperly installed by any party other than Sun. Product problems attributable to the use of Products with equipment or software not supplied or expressly approved by Sun are not covered under warranty. Any services provided for Products which are out of warranty will be billed on a time and materials basis.

10 RESALE OF EQUIPMENT

Customer may transfer ownership of and operating system Software license related to Equipment, if: (i) the transfer occurs at least six (6) months after the date of delivery of that Equipment by Sun, and (ii) Customer notifies Sun and obtains a written undertaking from its transferee, that the latter will comply with licensing terms equivalent to those set out in Section 8 above.

11 PRODUCT AVAILABILITY

11.1 Customer may purchase spare parts for Equipment at the last revision level purchased under this Exhibit, for a period of five (5) years after the last delivery of such Equipment to any of Sun's customers, or for as long as such spare parts are made available by Sun, whichever is later.

---

TO SIGNIFY THEIR AGREEMENT TO THESE TERMS, THE PARTIES' AUTHORIZED REPRESENTATIVES HAVE EXECUTED THIS EXHIBIT, AS OF THE EFFECTIVE DATE

| SUN MICROSYSTEMS, INC. | CUSTOMER |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Anthony J Benson | Name: Rich Michalak |
| Title: Financial Director | Title: Corporate Purchasing/Technology |

*SMI Customer Agreement*
*Product Exhibit*

## SCHEDULE A
## DISCOUNTS

**CONFIDENTIAL**

**END USER DISCOUNTS**

| Sun Price Lists | A |
|---|---|
| Category A: | 40% |
| Category B: | 22% |
| Category H: | 10% |
| Category J: | 10% |
| Category M: | 10% |

The above discounts are for direct purchases from Sun only, and are Confidential Information under Section 6 of the Customer Agreement. Sun's obligation to extend the above discounts is conditioned on Customer's complying with its obligations to treat the above discounts as Confidential Information under Section 6 of the Customer Agreement.