**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, *et al.*[1] | ) | Case No.: 08-13141 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Response Deadline: May 11, 2010 at 4:00 p.m., EST<br>Hearing Date: May 18, 2010 at 1:00 p.m. EST |
| | ) | |

**RESPONSE OF ORACLE TO DEBTORS' TWENTY-FOURTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS [NO LIABILITY] [Tribune Company and Chicago Tribune Companies] (Claims ## 4634, 4635, 4636 & 4640)**

Oracle Corporation, Oracle America and various affiliates and subsidiaries (collectively, "Oracle"), the successor-in-interest to Sun Microsystems, Inc. ("SMI") and various affiliates and subsidiaries of SMI, hereby responds (the "Response") to the *Debtors' Twenty-*

1. The Debtors in these chapter II cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); Chicago Land Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); luliusAir Company, LLC (9479); luliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., nlk/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); W A TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtoris435 North Michigan Avenue, Chicago, Illinois 60611.

*Fourth Omnibus (Substantive) Objection To Claims Pursuant To 11 U.S.C. §§ 502(b) of The Bankruptcy Code, Bankruptcy Rules 3003 and 9007, And Local Rule 3007-1* (the "Objection") filed by the debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors").

The Response is based on the grounds set forth herein, the proofs of claim filed in this case by SMI (as identified hereinafter), the *Declaration Of Thomas Carley In Support Of Response Of Oracle To Debtor's Twenty-Fourth Omnibus (Substantive) Objection To Claims [No Liability][Tribune Company and Chicago Tribune Companies]* (the "Carley Declaration"), the documents and pleadings on file in this case and such other and further evidence as may be adduced at the trial in support of the Response. All capitalized terms have the defined meaning set forth in this Response and, in the advent any capitalized is not defined herein it shall have the meaning set forth in the Objection.

**SUMMARY OF RELIEF SOUGHT BY DEBTORS**

The Objection seeks entry of an order disallowimg the claims asserted by the following proofs of claim (individually, a "Proof of Claim" and collectively, the "Proofs of Claim") filed by SMI: : (a) Proof of Claim 4634 asserted against the Chicago Tribune Company, (b) Proof of Claim No. 4635 asserted against the Tribune Company, (c) Proof of Claim No. 4636 asserted against the Chicago Tribune Newspaper, Inc., (d) Proof of Claim No. 4640 asserted against the Chicago Tribune Press Service, Inc. (collectively, the "Disputed Claims"). The Objection is brought on the grounds that (a) the Debtors' books and records do not disclose any liability for any of the Disputed Claims and (b) the underlying contracts at issue, allegedly, were terminated prior to the petition date. *See* Objection at ¶10 and Exhibit "A"

attached thereto at pages 9 and 10.

## SUMMARY OF RELIEF SOUGHT BY ORACLE

Pursuant to 11 U.S.C. §502(a), 11 U.S.C. §503(b), Rule 3001(f) and Rule 3007 of the Federal Rules of Bankruptcy Procedure, and Local Rule 3007-1, Oracle seeks entry of an order denying the Objection as it pertains to each of the Disputed Claims. The relief sought by Oracle is based on the grounds that the Debtors have failed to carry their burden to rebut the *prima facie* evidence of the validity and amount of each claim as set forth by each Proof of Claim filed by SMI. Moreover, with regard to the status of a portion of each Proof of Claim as an administrative expense, Oracle has submitted sufficient evidence in each Proof of Claim and in the Carley Declaration establishing the amounts entitled to priority treatment under 11 U.S.C. §503(b). Oracle submits that, in addition, evidence adduced in support of the Response clearly demonstrates that SMI entered into support and service agreements with the Debtors related to certain hardware and software, the Debtors knowingly and purposefully availed themselves of such services and support, and substantial benefit was realized by the Debtors both pre-bankruptcy and by their respective estates after the commencement of their respective bankruptcy cases. The value of such services is established by the terms of the Chicago Tribune Agreement (as identified below) between SMI and the Debtors.

## BACKGROUND

1. On September 12, 2001, SMI and the Tribune Company entered into that certain *Sun Microsystems Customer Agreement, SMI Customer Agreement #AR-60755*, as supplemented by various exhibits, schedules and statements of work and as amended from time to time, including but not limited to, that certain *Product Exhibit* dated September 12, 2001

(collectively, the "SMI Customer Agreement #AR-60755"). *See* Carley Declaration at ¶6 and Exhibit "A" attached thereto. Pursuant to the Customer Agreement #AR-60755, SMI licensed software (the "Licenses"), sold computer hardware (the "Hardware") and provided support, consulting and educational services (the "Services") to the Tribune Company and its subsidiaries, operating divisions and Affiliated Companies, including without limitation, the Chicago Tribune Company, the Tribune Company, the Chicago Tribune Newspapers, Inc., and the Chicago Tribune Press Service, Inc. (collectively, the "Chicago Tribune Companies"). *Id.* at ¶¶ A., B., C. and D, and ¶1.1 of the SMI Customer Agreement #AR-60755. Further, the Tribune and the Chicago Tribune Companies each are liable for payment of any Licenses granted, Hardware sold, and Services provided pursuant to the SMI Customer Agreement #AR-60755 and any related agreement, exhibit schedule and/or statement of work. *Id.* at §§1.1, 2.1, and 3.1.

2. Pursuant to SMI Customer Agreement #AR-60755, SMI and the Chicago Tribune Companies entered into that certain *Support Services Agreement, Contract No. NK20275335* ("Contract NK20275335") whereby SMI undertook to provide support services with respect to certain Hardware and software identified on certain schedules (the "Schedules") with such services subject to renewal by the Chicago Tribune Companies on an annual basis commencing on July1 and running through June 30 of each annual period when such services are ordered. The Chicago Tribune Companies initially acquired support services pursuant to Contract NK2025221 starting on July 1, 2006 through June 30, 2007 and, thereafter, renewed such services for the period starting on July 1, 2007 through June 30, 2008. A true and accurate copy of Contract NK20275335 covering the support services for this latter period is attached hereto as Exhibit "B" and is incorporated by reference herein as if fully set forth. Contract

NK20275335 sets forth the specific Services provided to the Chicago Tribune Companies and the prices associated with such Services. *See* Carley Declaration at ¶7.

3. Based on SMI's usual business practices regarding the provision of support services and the actual Services provided to the Debtors by SMI, the Chicago Tribune Companies (a) had the option to renew their Contract NK20275335 at the end of the term as of June 30, 2008 and (b) once they exercised that option they were required to issue to SMI a purchase order fully funded at the start of each year and to issue additional purchase orders thereafter as needed. *See* Carley Declaration at ¶8.

4. In advance of the termination date of any service and support agreement, SMI's usual practice provided for the SMI account representative to contact the customer prior to termination of the support and services agreement to confirm whether the customer desired to renew the support services as described in the customer's Support Services Agreement and, if so, to confirm that it intended to issue a new purchase order as funding for the renewal of the Agreement. In the event that a customer indicated it did not want to renew support services and that a new purchase order would not be issued, SMI's practice was to have the customer confirm that it wished to terminate support services in writing so that SMI and the customer had a clear understanding that the customer no longer wanted SMI to continue to provide what are typically important support services for the customer's hardware and software systems. *See* Carley Declaration at ¶9.

5. Pursuant to SMI's usual business practices related to the renewal of Support Services Agreements, SMI representatives contacted the Chicago Tribune Companies regarding the renewal of Contract NK20275335 and confirmed that each company desired (a) to

renew the support services after the end of the July 1, 2007 - June 30, 2008 term of Contract NK20275335 (b) to continue receiving the support services specified in this agreement, and (c) to issue a new purchase order for payment of such support services as required by the SMI Customer Agreement #AR-60755 and Contract NK20275335 (collectively, the "Chicago Tribune Agreement"). Accordingly, pursuant to the request of the Chicago Tribune Companies, SMI continued to provide support services to the Chicago Tribune Companies from and after July 1, 2008 and such companies utilized the support services and availed themselves of such support services continually from July 1, 2008 through at least January 28, 2009. A true and accurate copy of the Usage Log is attached hereto as Exhibit "C" and incorporated by reference as if fully set forth. *See* Carley Declaration at ¶10.

6. At no time either before or after June 30, 2008 did the Chicago Tribune Companies ever notify SMI in writing or otherwise that it no longer wanted to receive support services pursuant to the Chicago Tribune Agreement. Based on the aforementioned facts, the fees that would be associated with SMI's provision of support services pursuant to the Chicago Tribune Agreement would be no less than the amount that the Chicago Tribune Companies paid for such services for the period July 1, 2007 through June 30, 2008 as stated on the Proofs of Claims filed by SMI against the Chicago Tribune Companies (as set forth below). *See* Carley Declaration at ¶11.

7. Pursuant to the Chicago Tribune Agreement, the Chicago Tribune Companies are indebted to Oracle, in not less than the amounts set forth on the following Proofs of Claim filed by SMI on June 11, 2009, for Services provided to such Debtors:

| Chicago Tribune Company/Debtor | Case No. | Claim No. | Pre-Petition Claim | Post-Petition Claim |
|---|---|---|---|---|
| Chicago Tribune Company | 08-13152 | 4634 | $438,981.26 | $562,444.74 |
| Tribune Company | 08-13141 | 4735 | $438,981.26 | $562,444.74 |
| Chicago Tribune Newspaper, Inc. | 08-13153 | 4636 | $438,981.26 | $562,444.74 |
| Chicago Tribune Press Chicago Tribune Service, Inc. | 08-13185 | 4751 | $438,981.26 | $562,444.74 |

As of this date, the full amount of each such Proof of Claim remains due and owing by each respective Chicago Tribune Company *See* Carley Declaration at ¶11.

## LEGAL ARGUMENT

The Claims Should Be Allowed Because The Debtors Have Failed To Rebut The *Prima Facie* Validity and Amount of the Claims As Evidenced By The Proof of Claim

The filing of a proof of claim constitutes *prima facie* evidence of its amount and validity. *In re Planet Hollywood International*, 274 B.R. 391 394 (D. Del. 2001) *citing In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992); *see* Fed. R. Bankr. P. 3001(f). Pursuant to the express language of Rule 3001(f), "[a] party objecting to a claim has the initial burden of presenting a substantial factual basis to overcome the *prima facie* validity of a proof of claim [and] [t]his evidence must be of a probative force equal to that of the creditor's proof of claim." *In re Hinkely*, 58 B.R. 339, 348 (Bankr. S.D. Tex. 1986), *aff'd*, 89 B.R. 608 (S.D. Tex. 1988), *aff'd* 879 F.2d 859 (5th Cir. 1989) (emphasis added); *accord, Brown v. IRS (In re Brown)*, 82 F.3d 801 (8th Cir. 1996); *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2rd 635 (3rd

Cir. 1991); *In re Allegheny Int'l, Inc., supra*; *In re Lewis*, 80 B.R. 39, 40 (E.D. Pa. 1987). In order "to overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2rd Cir. B.A.P. 2000), *aff'd* 242 F.3d 362 (2rd Cir. 2000). Where a debtor simply makes a *pro forma* objection without any evidentiary support, a court may summarily overrule such objections. *See e.g.*, *Garner v. Shier (In re Garner)*, 246 B.R. 617, 620, 623 (B.A.P. 9th Cir. 2000). The *prima facie* validity of a proof of claim is "strong enough to carry over a mere formal objection without more." *In re Schlehr*, 290 B.R. 387, 395 (Bankr. D. Mont. 2003). Thus, "[u]nless the trustee, as objector, introduces evidence as to the invalidity of the claim or the excessiveness of the amount, the claimant need offer no further proof of the merits of the claim." *In re Brown*, 82 F.3d 801 (8th Cir. 1996) *cited in 4 Collier on Bankruptcy*, 15th Edition Revised (2006), §502.02[3][f] at pg. 502-18 n. 38.

*Garner* is instructive with regard to the generalized, non-specific nature of the "books and records" objection asserted by the Debtors in this instance. In *Garner*, the debtor objected to a proof of claim by merely asserting that "there is no obligation to pay . . . and there are no written documents or other competent evidence of any valid obligations owed . . ." and, at the hearing, the debtor failed to offer any evidence in support of such assertions. *Garner*, 246 B.R. at 620. Accordingly, the *Garner* Court held that the debtor did not fulfill its burden of producing competent evidence rebutting the presumption of validity afforded the proof of claim. *See Garner*, 246 B.R. at 620.

The situation before this Court, essentially, is no different than the situation

presented to the *Garner* court. Here, the Bigelow Declaration[2] filed by the Debtors merely states that agents for the Debtors' estates have expended "considerable time and resources . . . to review reconciled the Proofs of Claim filed against the debtors in these Chapter 11 cases [and that] the Debtors have determined they have no liability for the Proofs of Claim . . . ." at issue in the Objection. *See* Bigelow Declaration at ¶4. Simply put, the Bigelow Declaration *fails to submit any substantial factual evidence* satisfying the Debtors' burden to overcome the *prima facie* presumption of validity of the existence of the claims or their respective amount as set forth in each Proof of Claim. The Bigelow Declaration does not address with any particularity the underlying facts supporting the Objection to any claim evidenced by any one of the Proofs of Claim. Instead, the Bigelow Declaration simply asserts that the declarant is one of the Debtors' managers, he is generally familiar with the Debtors' books and records and certain unidentified employees assisted in the claims review and reconciliation process. *See* Bigelow Declaration at ¶¶ 1, 3 and 4. Clearly, all that Mr. Bigelow attests to is the process that he – or some other unidentified person – participated in and that he believes the Debtors' books and records do not reflect the existence of any debt owed to Oracle. *See* Bigelow Declaration at ¶5.

By his declaration, Mr. Bigelow fails to show that he has any personal knowledge of the underlying Chicago Tribune Agreement or the business relationship between SMI and the Debtors. Accordingly, by his declaration, he has not submitted any "substantial factual" evidence bearing on either the existence of a liability owed to Oracle or the amount of any such claim. Instead, the Bigelow Declaration limits its factual assertions to the generalized process by which unidentified employees undertook at his direction regarding the claims filed in this

2 *See Declaration of Chandler Bigelow III In Support of Debtors' Twenty-Fourth Omnibus (Substantive) Objection* (the "Bigelow Declaration") filed in support of the Objection.

case. The only fact that he can attest to is that this process failed to disclose any record of the obligation represented by each Proof of Claim. He cannot – and has not – contended that such a claim does not exist or that the Debtors, in fact, conclusively are not indebted to Oracle. His evidence, in short, does not address any of the claims evidenced by any of the Proofs of Claim.

Standing alone, the Bigelow Declaration clearly does not satisfy the Debtors' burden of adducing "substantial factual" evidence rebutting any element of the claims asserted by each respective Proof of Claim. As in *Garner,* the Debtors in this case have merely asserted that "there is no obligation to pay . . . ." 246 B.R. at 620. Essentially, the Bigelow Declaration puts before this Court no evidence other than the bare assertion by Mr. Bigelow that he is familiar with the Debtors' books and records and that he did not find support for the claims at issue. These conclusionary statements, standing alone, certainly do not "overcome th[e] *prima facie* evidence . . . [set forth in each Proof of Claim because they do not constitute] evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly,* 245 B.R. at 773. As *Garner* teaches, where a debtor simply makes a *pro forma* objection without competent evidentiary support, a court should summarily overrule such objections. *See Garner*, 246 B.R. at 623. Under these circumstances, the *prima facie* validity of a Claim No. 2964 is "strong enough to carry over a mere formal objection without more." *In re Schlehr*, 290 B.R. at 395.

<u>The Services Provided By SMI Post-Petition To The Chicago Tribune Companies Are Entitled To Treatment As Administrative Expense Claims</u>.

In these cases, after the Petition Date SMI provided Services whose value was not less than $ 562,444.26. *See* Carley Declaration at ¶11. As set forth below, these Services constitute "actual, necessary costs and expenses of preserving" the Chicago Tribune Companies' bankruptcy estates and, accordingly, they should be allowed as administrative expenses entitled

to full payment.

Section 503(b) (1) (A) of the Code provides for priority treatment of "actual, necessary costs and expenses of preserving the estate." *In re Pinnacle Brands, Inc*., 259 B.R. 46, 50 (Bkrtcy.D.Del. 2001.) *citing* 11 U.S.C. § 503(b). In general, post-petition business expenses are granted administrative-expense priority so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize. *In re Kadjevich*, 220 F.3d 1016, 1020 (9th Cir. 2000) *citing Microsoft Corp. v. DAK Indus., Inc.* (In re DAK Indus., Inc.), 66 F.3d 1091, 1097 (9th Cir.1995) ("Payment of administrative expenses allows the debtor to secure goods and services necessary to administer the estate, which ultimately accrues to the benefit of all creditors."); *accord*, *In re Mammoth Mart, Inc*., 536 F.2d 950, 954 (1st Cir.1976). Section 503(b) contemplates some *quid-pro-quo* wherein the estate accrues debt in exchange for some consideration necessary to the operation of the estate. *Pennsylvania Dept. of Environmental Resources v. Tri-State Clinical Laboratories, Inc.*, 178 F.3d 685, 689-90 (3d Cir.1999); *In re Valley Media, Inc*., 2002 WL 999311 (Bkrtcy.D.Del. 2002.) at p. 21. Priority is granted to compensate the providers of necessary goods, services or labor. *Id.* Moreover, *w*here a debtor continues to receive the benefits from the other party to an executory contract or unexpired lease, "the debtor-in-possession is obligated to pay for the reasonable value of the services." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). In order for an administrative claim to be allowed, the transaction must be between the creditor and the debtor, and the estate must receive a benefit from the transaction. *In re MUMA Services, Inc.*, 279 B.R. 478, 489 (Bankr. D. Del. 2002), citing *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999).

"Determining whether a creditor has an administrative claim is a two- prong test: the

expense must have arisen from a post-petition transaction between the creditor and the trustee (or debtor-in-possession), and the transaction must have substantially benefited the estate." *In re Pinnacle Brands, Inc*., 259 B.R. at 50 *citing Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.*), 66 F.3d 1091, 1094 (9th Cir.1995); *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1133 (10th Cir.1993); *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir.1976). *Accord, In re Unidigital, Inc*., 262 B.R. 283, 288 (Bkrtcy.D.Del.,2001), *In re Valley Media, Inc*., 2002 WL 999311 (Bkrtcy.D.Del. 2002.) at p. 21.

Here, the two prong test clearly is satisfied. First, there is no question that the Services were provided after the Petition Date to the Chicago Tribune Companies in their capacities as debtors-in-possession. Their assent to the Chicago Tribune Agreement clearly is demonstrated by that fact they did not take the steps necessary to terminate the Chicago Tribune Agreement, either before or after the Petition Date. *See* Carley Declaration at ¶10. Moreover, as the Usage Log clearly indicates, the Chicago Tribune Companies accepted the Services after the Petition Date and realized the benefits of the Services. *See* the Usage Log attached thereto as Exhibit "D to the Carley Declaration at ¶10. Thus, the first element of the test for allowance of an administrative claim is satisfied.

Second, by the very nature of the support and services provided pursuant to the Chicago Tribune Agreement, the Chicago Tribune Companies' bankruptcy estates received substantial benefit from the Services after the Petition Date through at least January 28, 2009. *See* Carley Declaration at ¶10. Similarly, there can be no reasonable question that the Chicago Tribune Companies' use of the Services in the operation of their businesses significantly benefited their

respective estates. The Services utilized by the Chicago Tribune Companies not only helped them operate their businesses, but they also were important in maintaining the value of their business and assets. Therefore, the second prong of Section 503(b) also is satisfied in this instance.

WHEREFORE, Oracle seeks entry of an order (i) denying the Objection to the extent that it seeks disallowance of any one of the Proofs of Claim, (ii) allowing the Proofs of Claim in their entirety, including allowance of administrative expense status as set forth in each Proof of Claim, and (iii) granting such other and further relief as may be permitted by law or equity in this instance.

Dated: May 11, 2010

**WHITE AND WILLIAMS LLP**

/s/ James S. Yoder
James S. Yoder (DE No. 2643)
824 N. Market Street, Suite 902
P. O. Box 709
Wilmington, DE 19899-0709
Telephone: (302) 467-4524
Facsimile: (302) 467-4554
E-mail: yoderj@whiteandwilliams.com

BIALSON, BERGEN & SCHWAB
Thomas M. Gaa
2600 El Camino Real, Suite 300
Palo Alto, California 94306
Telephone: (650) 857-9500
Facsimile: (650) 494-2738
E-mail: tom@bbslaw.com
*Attorneys for ORACLE CORPORATION*