## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: May 20, 2010 at 10:00 a.m. (requested)<br>Objection Deadline: May 17, 2010 at 4:00 p.m. (requested) |

### APPLICATION OF THE EXAMINER FOR AN ORDER AUTHORIZING THE RETENTION OF SAUL EWING LLP AS DELAWARE COUNSEL TO THE EXAMINER *NUNC PRO TUNC* TO APRIL 30, 2010

Kenneth N. Klee, Esquire, the examiner (the "Examiner") appointed in the above-captioned bankruptcy cases by the United States Trustee on April 30, 2010 as directed by the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FOIIM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

593348.4 5/12/10

Agreed Order Directing the Appointment of an Examiner, dated April 20, 2010 [Docket No. 4120] (the "Examiner Order"), as approved by the Court by order dated May 10, 2010 [Docket No. 4320], hereby submits this application (the "Application") for the entry of an order authorizing the Examiner to retain Saul Ewing LLP ("Saul Ewing") as his Delaware counsel in the jointly administered chapter 11 cases of Tribune Company and its affiliates (collectively, the "Debtors"). In support of this Application, the Examiner relies upon the Declaration of Mark Minuti (the "Minuti Declaration"), a copy of which is annexed hereto as **Exhibit A** and respectfully states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of this proceeding and this Application is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are 11 U.S.C. §§ 327 and 105(a).

5. Additionally, the Examiner Order provides, "The Examiner may retain counsel and other professionals if the Examiner determines that such retention is necessary to discharge the Examiner's duties, with such retention to be subject to Court approval after notice under standards equivalent to those set forth in 11 U.S.C. § 327."

### Background

6. On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The

Debtors have continued to operate their businesses and manage their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. On April 20, 2010, the Court entered the Examiner Order, which directed the United States Trustee to appoint an examiner pursuant to section 1104(c)(1) of the Bankruptcy Code. On April 30, 2010, the U.S. Trustee appointed the Examiner, and on the same day filed the Application of the United States Trustee for Order Approving Appointment of Examiner [Docket No. 4213] (the "Examiner Application"). By order dated May 10, 2010 [Docket No. 4320], the Court approved the Examiner Application.

8. The Examiner Order, as modified by the Order Approving Work and Expense Plan and Modifying Examiner Order [Docket No. 4321] (the "Work Plan Order"), directs the Examiner to:

> (i) evaluate the potential claims and causes of action held by the Debtors' estates that are asserted by the Parties, in connection with the leveraged buy-out of Tribune that occurred in 2007 (the "LBO") which may be asserted against any entity which may bear liability, including, without limitation, the Debtors, the Debtors' former and/or present management, including former/present members of Tribune's Board, the Debtors' lenders and the Debtors' advisors, said potential claims and causes of action including, but not being limited to, claims for fraudulent conveyance (including both avoidance of liability and disgorgement of payments), breach of fiduciary duty, aiding and abetting the same, and equitable subordination and the potential defenses asserted by the Parties to such potential claims and causes of action,
>
> (ii) evaluate whether Wilmington Trust Company violated the automatic stay under 11 U.S.C. § 362 by its filing, on March 3, 2010, of its Complaint for Equitable Subordination and Disallowance of Claims, Damages, and Constructive Trust (docketed as Adv. No. 10-50732, D.I. 1),
>
> (iii) evaluate the assertions and defenses made by certain of the Parties in connection with the Motion of JPMorgan Chase Bank, N.A., for Sanctions Against Wilmington Trust Company for Improper Disclosure of Confidential Information in Violation of Court Order (D.I. 3714), and

(iv) otherwise perform the duties of an examiner set forth in 11 U.S.C. §§ 1106(a)(3) and (4) (as limited by this Order) . . . .

(Examiner Order ¶ 2, Work Plan Order ¶ 3). The preceding is referred to herein as the "Investigation."

### Relief Requested

9. By this Application, the Examiner seeks entry of an order, pursuant to 11 U.S.C. §§ 327 and 105(a) and the terms of the Examiner Order, authorizing the employment of Saul Ewing as his Delaware counsel *nunc pro tunc* to April 30, 2010 in connection with his duties as Examiner in these cases.

### Retention of Saul Ewing

10. On May 11, 2010, the Examiner filed his application to retain Klee, Tuchin, Bogdanoff & Stern LLP ("KTBS") as his lead counsel in these bankruptcy cases.

11. The Examiner has selected Saul Ewing to serve as his Delaware counsel because the partners and associates of Saul Ewing possess extensive knowledge and considerable expertise in the fields of bankruptcy, insolvency, reorganizations, debtors' and creditors' rights, litigation, investigations, debt restructuring, and corporate reorganizations, among others. The Examiner has also selected Saul Ewing because of its experience and knowledge practicing before this Court, as well as its proximity to the Court, and its ability to respond quickly to emergency hearings and other emergency matters in the Court.

12. Accordingly, the Examiner believes that Saul Ewing is well qualified to represent him in these chapter 11 cases.

13. Subject to further order of this Court, the Examiner seeks to retain Saul Ewing to render the following types of services:

(a) Take all necessary actions to assist the Examiner in the Investigation;

(b) Working with KTBS, prepare on behalf of the Examiner all reports, pleadings, applications, and other necessary documents in the discharge of the Examiner's duties;

(c) Assist the Examiner in undertaking additional tasks that the Court may direct; and

(d) Perform all other necessary legal services on behalf of the Examiner in connection with the above-captioned chapter 11 cases.

14. Subject to approval of the Court, the terms of Saul Ewing's engagement with the Examiner are set forth in the engagement letter attached to the Minuti Declaration at Exhibit 1 (the "Engagement Letter"). As set forth in the Engagement Letter, compensation for Saul Ewing's services and reimbursement of Saul Ewing's expenses in connection with the engagement shall be paid by the Debtors' bankruptcy estates, in such amounts as the Court may allow and the Examiner shall under no circumstances have any liability whatsoever in connection with any of Saul Ewing's fees and expenses.

15. Subject to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of this Court (the "Local Rules"), the Examiner understands that Saul Ewing will charge its standard hourly rates for this engagement. The attorneys at Saul Ewing who will be primarily responsible for this matter and their current hourly rates are Mark Minuti ($560), Charles O. Monk ($700) and Nicholas J. Nastasi ($425)  The current hourly rate for other Saul Ewing attorneys, paralegals, and professional staff are within the following ranges:

| **Billing Category** | **Range** |
|---|---|
| Partners | $335 – 655 |
| Special Counsel | $275 – 535 |
| Associates | $215 – 390 |
| Paraprofessionals | $105 – 240 |

16. The Examiner understands that these hourly rates are subject to periodic adjustments to reflect economic and other conditions. Saul Ewing will maintain detailed records

of actual and necessary costs and expenses incurred in connection with the legal services described above. These rates are set at a level designed to fairly compensate the firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is Saul Ewing's policy to charge its clients for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges at the rate of $.10 per page, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. The firm will charge the Examiner for these expenses in a manner and at rates consistent with charges made generally to the firm's other clients, subject to the Local Rules.

17. To the best of the Examiner's knowledge, information, and belief based upon the Minuti Declaration, Saul Ewing does not hold any disqualifying interest adverse to the Debtors' estates in matters upon which Saul Ewing is to be engaged by the Examiner.

18. As set forth in the Minuti Declaration, the Examiner understands that Saul Ewing and certain of its partners, counsel, and associates may represent, or may in the past have represented, the Debtors or creditors or equity security holders of the Debtors in connection with matters entirely unrelated to the matters on which the Examiner seeks to employ Saul Ewing. A list of such known connections between Saul Ewing and the Debtors and its creditors or equity security holders is annexed to the Minuti Declaration.

19. To the best of the Examiner's knowledge, information, and belief based upon the Minuti Declaration, Saul Ewing's connections with the Debtors, their creditors, and other parties-in-interest are set forth in the Minuti Declaration.

20. The Examiner does not believe that any of the above-referenced connections should be disqualifying and has determined that the retention and employment of Saul Ewing is in the best interest of the Debtors' estates and their creditors. Accordingly, for the reasons set forth in the Minuti Declaration, the Examiner believes that Saul Ewing is disinterested, as that term is defined by 11 U.S.C. § 101(14).

21. Based upon the Minuti Declaration, the Examiner understands that the disclosures by Saul Ewing set forth in the Minuti Declaration, and the exhibits thereto, have been made based upon a review of the best information available at this time and that, to the extent that it is determined that any additional matters should be disclosed, Saul Ewing will file a supplemental affidavit setting forth such disclosures pursuant to Local Bankruptcy Rule 2014-1(a).

22. No previous application for the relief sought herein has been made to this or any other Court.

## **NOTICE**

23. Pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b), notice of this application has been given to (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; and (d) all parties requesting notice pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, the Examiner respectfully requests that the Court enter an order authorizing the Examiner to retain and employ Saul Ewing as Delaware counsel to the Examiner, *nunc pro tunc* to April 30, 2010, and granting such other and further relief as the Court deems just and proper.

Dated: May 12, 2010

/s/ Kenneth N. Klee
Kenneth N. Klee, as Examiner
KLEE TUCHIN BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067-6059
(310) 407-4000