# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
|  | **Hearing Date:**<br>**Objection Deadline:** |

## APPLICATION OF THE EXAMINER FOR AN ORDER AUTHORIZING THE RETENTION OF LECG, LLC AS FINANCIAL ADVISOR TO THE EXAMINER *NUNC PRO TUNC* TO APRIL 30, 2010

Kenneth N. Klee, the Examiner (the "Examiner") appointed in the above-captioned

chapter 11 cases (the "Chapter 11 Cases") of Tribune Company and its affiliates (collectively,

the "Debtors") by the Acting United States Trustee ("United States Trustee") on April 30, 2010

pursuant to the *Court's Agreed Order Directing the Appointment of an Examiner entered April*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FOUM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

*20, 2010* [Docket No. 4120] (the "Examiner Order"), hereby submits this application (the "Application") for an order pursuant to 11 U.S.C. §§ 105(a) and 327 authorizing the Examiner to retain and employ LECG, LLC ("LECG"), *nunc pro tunc* to April 30, 2010, as his financial advisor in the Chapter 11 Cases.

In support of the Application, the Examiner relies on the *Declaration of F. Wayne Elggren in Support of the Application of the Examiner Authorizing the Retention of LECG, LLC as Financial Advisor to the Examiner Nunc Pro Tunc to April 30, 2010* (the "Elggren Declaration") and the *Declaration of Fernanda L. Schmid in Support of the Application of the Examiner Authorizing the Retention of LECG, LLC as Financial Advisor to the Examiner Nunc Pro Tunc to April 30, 2010* (the "Schmid Declaration"), which have been submitted concurrently with the Application, and respectfully represents as follows:

## I.

## STATUS OF CASE AND JURISDICTION

1.      On December 8, 2008, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 10, 2008, the Court entered an order providing for the joint administration of the Chapter 11 Cases.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for relief requested herein are sections 105(a) and 327(a) of the Bankruptcy Code, as well as Rule 2014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")

4.      This Application is made pursuant to the Examiner Order, which provides that the Examiner may, subject to Court approval, retain counsel and other professionals at the expense

2

of the estates, if the Examiner determines that such retention is necessary to discharge the Examiner's duties.

## II.

## BACKGROUND

5.    On January 13, 2010, Wilmington Trust Company ("WTC") filed its "Motion for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code." On April 20, 2010, the Court entered the Examiner Order, directing the United States Trustee to appoint an examiner in these cases pursuant to Bankruptcy Code section 1104(c)(1).

6.    Pursuant to the Examiner Order, the Examiner is directed to conduct an investigation (as defined therein, "Investigation") and prepare a report in respect thereof ("Report"), to be filed on or before July 12, 2010 evaluating the following (all as more particularly described in the Examiner Order): (i) potential claims, causes of action, and defenses asserted in respect of the leveraged buy-out of Tribune that occurred in 2007 (the "LBO"), (ii) whether Wilmington Trust Company ("WTC") violated the automatic stay by filing the complaint in Adversary Proceeding No. 10-50732, and (iii) the assertions and defenses made in connection with a certain motion of JPMorgan Chase Bank, N.A. for sanctions against WTC based on the alleged disclosure of confidential information.

7.    On April 30, 2010, the United States Trustee filed her *Notice of Appointment of Examiner* [Docket No. 4212] appointing Kenneth N. Klee, Esq. as the Examiner, subject to Court approval. Contemporaneously therewith, the United States Trustee filed her *Application of the United States Trustee for Order Approving Appointment of Examiner* [Docket No. 4213], which is pending before the Court.

8.    On May 7, 2010, the Examiner filed the *Work And Expense Plan Of Examiner-Designate Kenneth N. Klee, Esq.* [Docket No. 4261] ("Work Plan"). On May 10, 2010, the Court held a status conference regarding the appointment of the Examiner and the adoption of his Work Plan.

9.    On May 11, 2010, the Court entered its *Order Approving Appointment of Examiner* [Docket No. 4320] and its *Order Approving Work And Expense Plan And Modifying Examiner Order* [Docket No. 4321].

### III.

### RELIEF REQUESTED

10.    By this Application, the Examiner seeks entry of an order, pursuant to sections 105(a) and 327 of the Bankruptcy Code and the terms of Examiner Order, authorizing the employment and retention of LECG as his financial advisor, *nunc pro tunc* to April 30, 2010, to assist him in conducting the Investigation, preparing the Report, and discharging his other duties as Examiner.  The Examiner has selected LECG to serve as his financial advisor in the Chapter 11 Cases because LECG is well-qualified to perform these services and has extensive accounting and financial advisory experience, expertise and resources.

### Retention of LECG

11.    The Examiner has determined that the retention of LECG is necessary and appropriate to discharge his duties as Examiner and that the professionals of LECG have the experience and expertise that is necessary and appropriate to assist the Examiner in this assignment.

12.    LECG is an international expert analysis and consulting firm with more than seven hundred professionals worldwide that provide a wide range of expert services, including economic and financial analyses, expert testimony, litigation support and strategic management consulting, to a variety of public and private enterprises.  LECG and its professionals, including the professionals that will have primary responsibility for the engagement with the Examiner, also serve as examiners, trustees and expert witnesses in bankruptcy cases nationwide.

13.    Attached as <u>Exhibit A</u> to the Elggren Declaration are professional biographies for those LECG professionals that LECG currently expects will be significantly involved in the conduct of the Investigation and the drafting of the Report.

4

14.     By retaining LECG as his financial advisor, the Examiner will benefit from the experience and knowledge of its professionals that have well developed and significant expertise in financial analysis.   The Examiner believes that LECG is amply qualified to serve as his financial advisor in connection with these Chapter 11 Cases.

### Services to be Provided by LECG

15.     Attached as <u>Exhibit B</u> to the Elggren Declaration is a copy of the retention letter agreement between Kenneth N. Klee, as Examiner and LECG.  The Examiner anticipates that the services to be provided by LECG will include the following:

     a.     assist the Examiner in identifying, investigating and analyzing the financial circumstances of the Debtors prior to and following the LBO;

     b.     assist the Examiner in identifying, investigating and analyzing the financial circumstances surrounding and the various transactions implementing the LBO; and

     c.     assist the Examiner in data collection, document management and discovery support; and

     d.     perform all other services necessary to fulfill the role of financial advisor to the Examiner that the Examiner may determine are necessary and appropriate to the discharge of his duties.

16.     LECG intends to work closely with the Examiner's proposed counsel to minimize any duplication services performed or charged to the Debtors' estates, and to ensure that the Investigation is performed and the Report is drafted in an effective and efficient matter.  As reflected in the Work Plan, the Examiner has proposed a plan for the Investigation that is designed to capitalize on the substantial investigative and analytical work undertaken to date by the principal constituencies in these cases, rather than attempting to launch the Investigation from scratch.  The Examiner respectfully submits that his proposed work plan will save the estates significant resources, and enable LECG to approach the Investigation efficiently.

### Professional Compensation

17.     LECG intends to apply to the Court for allowance of compensation and reimbursement of expenses for professional services rendered in connection with the Chapter 11

Cases. Subject to Court approval and the orders governing compensation for professional services performed and reimbursement of expenses incurred in the Chapter 11 Case, and the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), compensation will be payable to LECG on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by LECG. LECG professional billing rates for 2010 range as follows:

| | |
|---|---|
| Director | $590 to $745 |
| Consultant/Principal | $330 to $590 |
| Associate | $245 to $330 |
| Accounting Analyst | $225 to $245 |
| Practice Management | $125 to $200 |

18.     The Examiner understands that the hourly rates set forth above are LECG's standard rates, which have been set at a level designed to fairly compensate LECG for the work of its professionals and to cover fixed and routine overhead expenses. Such rates are adjusted periodically, typically on January 1 of each year, to reflect the advancing experience, capabilities, and seniority of LECG's professionals as well as general economic factors. The Examiner respectfully submits that LECG's rates are reasonable and comparable to the rates charged by other firms for similar services.

19.     The Examiner understands that it is LECG's practice to charge its clients for expenses actually incurred in connection with the client's case. The expenses charged to clients include, among other things, charges for messenger services, air couriers, photocopying, travel expenses, postage, long distance telephone, investigative searches, and other charges customarily invoiced by accounting and financial advisory firms in addition to fees for professional services.

20.     With respect to fees and charges incurred by LECG on behalf of the Examiner in connection with data collection, document management and discovery support services ("Discovery Support Services"), certain services are charged at an hourly rate and other charges

6

are based upon a fixed fee schedule. Both the hourly rates and fixed fees for these services are set forth in Exhibit C to the Elggren Declaration. The Examiner believes that LECG's rates for the Discovery Support Services are reasonable and is advised that they are comparable to the rates charged by other firms for similar services.

21.     LECG shall file applications and be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and such other procedures as may be fixed by order of this Court.

### Disinterestedness of LECG

22.     As described in the Schmid Declaration, LECG undertook an investigation and determined that it had no conflicts or connections with the following (i) the Debtors, creditors, other parties in interest in the Chapter 11 Cases and their respective attorneys and accountants, as listed on Exhibit A thereto, (ii) the following four entities which provided services in connection with the Merger (as that term is defined in the Definitive Proxy Statement filed by Tribune Company on Schedule 14A pursuant to the Securities Exchange Act of 1934, as amended, dated July 13 2007) and related transactions: Citigroup Global Markets, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Morgan Stanley; and Valuation Research Corporation and (iii) the United States Trustee for Region 3 and/or any person employed in the United States Trustee offices located in Region 3 listed on Exhibit B thereto (all of the foregoing constituting the "Identified Parties"), except as follows and as set forth in Exhibit C thereto:

a.     Craig Elson, a LECG professional who will be providing services in this matter, was interviewed by the Unsecured Creditors Committee Special Counsel with respect to the Chapter 11 Cases. Mr. Elson was not hired, and he did not receive any confidential information; and

b.     LECG and its professionals provide services in many bankruptcies across the country in which some of the Identified Parties may have creditor claims in the bankruptcies.

7

c.    Throughout its history, LECG and its professionals have provided services, now provide services, and likely will provide services in the future to parties adverse to many of the creditors and other parties in interest in these cases.

23.    The Examiner does not believe that any such connections between LECG and the Identified Parties creates a disqualifying interest that is adverse to the Debtors or their estates in the matters upon which LECG is to be engaged by the Examiner.

24.    Based upon the Schmid Declaration and except as set forth therein, the Examiner is informed and believes that LECG does not have any other known connections with the Identified Parties, and does not have any interest that is materially adverse to the interests of the Debtors or their estates, or any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason.    Consequently, the Examiner respectfully submits that LECG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

25.    The Examiner understands that the disclosures by LECG set forth in the Schmid Declaration, and the exhibits thereto, have been made based upon a review of the best information available at the time.    To the extent any additional connections are discovered, LECG has agreed to file a supplemental declaration setting forth such disclosures.

### IV.

### NOTICE

26.    Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) the Official Committee of Unsecured Creditors; and (iv) all parties having requested notices in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.    After a hearing date on this Application has been set in accordance with Local Rule 2014-1(b), notice of such hearing will be served on the parties listed above, as well as any other parties as may be required by Local Rule 2002-1(b).    The Examiner submits that, in light of the nature of the relief requested, no other or further notice need be given.

## V.

### NO PRIOR REQUEST

27.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Examiner respectfully requests that this Court grant the Application and enter an order authorizing the Examiner to retain and employ LECG as financial advisor to the Examiner, *nunc pro tunc* to April 30, 2010, and granting such other and further relief as the Court deems just and proper.

Dated: May 12, 2010

Kenneth N. Klee
Examiner


Respectfully submitted:

/s/ Martin R. Barash

Martin R. Barash (CA Bar No. 162314)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067-6049
Telephone: (310) 407-4000
Facsimile: (310) 407-9090

Proposed Attorneys to the Examiner