### AGREEMENT BETWEEN NEWSDAY, INC., HOY PUBLICATIONS LLC, AND THE U. S. ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT OF NEW YORK

NEWSDAY, INC. ("Newsday") and HOY PUBLICATIONS LLC, for itself and as successor-in-interest to HOY, LLC ("Hoy") (collectively, the "Newspapers"), by Tribune Company ("Tribune"), the parent corporation and sole owner of the Newspapers, and by the undersigned attorneys, pursuant to authority granted by the Board of Directors of Tribune, and the UNITED STATES ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT OF NEW YORK (the "Office"), hereby enter into this agreement ("this Agreement"). Except as specifically provided below, this Agreement shall be in effect for a period of fifteen (15) months from the date on which it is fully signed and executed.

1. The Office has informed the Newspapers that each is the subject of an investigation being conducted by a grand jury sitting in the Eastern District of New York, with the assistance of the United States Postal Inspection Service (the "Postal Inspection Service"), the Internal Revenue Service ("IRS") and the Nassau County Police Department ("NCPD"), involving circulation reporting fraud.

2. Newsday acknowledges that in or about and between 2001 and May 2004, as set forth in Exhibit A, and Hoy acknowledges that in or about and between 2001 and July 2004, as set forth in Exhibit B, as a result of the conduct of certain Newsday and Hoy executives and employees, Newsday and Hoy violated federal criminal law by engaging in schemes that defrauded their advertisers, by systematically inflating paid circulation numbers reported in their books and records and falsely representing the accuracy of the inflated numbers to the Audit Bureau of Circulations ("ABC"), an industry organization (collectively, "the Unlawful Practices").

3. The Newspapers accept responsibility for their respective conduct by entering into this Agreement and by, among other things, effecting the remedial actions taken to date, maintaining full cooperation with the Office, the Postal Inspection Service, the IRS and NCPD (collectively, the "Investigative Entities"), and undertaking other measures as set forth in this Agreement.

4. In February 2004, Tribune, on behalf of itself and the Newspapers, engaged the law firm Sidley Austin LLP and instructed the Internal Audit Department of Tribune to conduct an investigation into the circulation-reporting practices of the Newspapers (the "internal investigation"). Through Tribune, the Newspapers have shared the results of that internal investigation with the Office. Newsday and Hoy acknowledge that their respective prior, ongoing and future cooperation, and ongoing remediation, as described in paragraphs 5 and 7, are among the factors involved in the Office's decision to enter into this Agreement, and therefore Newsday and Hoy agree to continue to cooperate fully with the Investigative Entities regarding any matter about which either Newsday or Hoy has knowledge.

5. Newsday and Hoy agree that the respective cooperation of Newsday and Hoy shall include, but is not limited to, the following:

    a. completely and truthfully disclosing all information that Newsday or Hoy possesses to the Investigative Entities on any subject about which the Investigative Entities may inquire. Should any waiver of privilege be required to make such disclosure, the Office notes that it shall be requested in conformity with the requirements set forth in the United States Department of Justice ("DOJ") Memorandum entitled: Principles of Federal Prosecution of

2

Business Organizations;

      b.    assembling, organizing and/or providing any and all information, testimony, documents, records or other tangible material that Newsday or Hoy possesses or has in its custody, or control, as may reasonably be requested by the Office or any of the Investigative Entities;

      c.    using the reasonable best efforts of Newsday and Hoy to make available any present and former employees of Newsday and Hoy to provide information and/or testimony as requested by any of the Investigative Entities, including, without limitation, sworn testimony in court proceedings, as well as interviews with law enforcement authorities. Cooperation under this paragraph shall include identification of witnesses who, to the knowledge of either Newsday or Hoy, may have material information regarding the conduct of Newsday or Hoy, or records which may have material information regarding the conduct of Newsday or Hoy;

      d.    providing any information, testimony, documents, records or other tangible material deemed necessary by any of the Investigative Entities or a court to establish the evidentiary foundation necessary to admit into evidence documents in any criminal or other proceeding; and

      e.    consenting to any and all disclosures of any information, testimony, documents, records or other tangible material provided by the Newspapers to the Office pursuant to this Agreement to any other governmental agency designated by the Office as the Office, deems appropriate; and with respect to any such materials that constitute "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal

Procedure, consenting to (i) any order sought by the Office permitting such disclosures; and (ii) the Office's ex parte or in camera application for such orders.

6.  Newsday and Hoy agree to pay a total of $15 million in cash jointly and severally (the "Payment") to settle a civil forfeiture action, brought pursuant to a Verified Complaint in Rem captioned "United States of America v. $15,000,000.00 in United States currency" and that shall be filed in the Eastern District of New York (the "Civil in Rem Action") on the same day as the execution of this Agreement. The Stipulation of Settlement and Decree of Forfeiture pursuant to which the civil forfeiture action shall be settled is attached hereto and its terms are incorporated herein by reference. The Payment shall be made on or before the earlier of December 20, 2007 or ten (10) days after the filing of the Civil In Rem Action (the "Due Date"), either by wire transfer or by certified or bank check. If the Payment is made by wire transfer, it must be completed on or before the Due Date, in accordance with written wiring instructions provided by the Office. If the Payment is made by certified or bank check, it must be made payable to the "United States Marshals Service," and note on its face the docket number of the civil forfeiture action, and be delivered via overnight courier on or before the Due Date to Assistant United States Attorney Kathleen Nandan, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, 7th Floor, Brooklyn, New York 11201. The parties understand that under Department of Justice policy, persons who claim restitution for fraudulent circulation reporting by the Newspapers between 2001 and July 2004 and who have not been made whole by settlement with the Newspapers, may apply to DOJ for compensation from funds received from the Payment.

4

7.	Newsday and Hoy represent that in response to the Unlawful Practices uncovered by the investigation conducted by the Investigative Entities and by the internal investigation, their current management has taken numerous remedial actions. These remedial actions (collectively, the "Remedial Actions, Policies and Procedures") include:

a.	the termination of employees, including senior managers, at both Newsday and Hoy, whose improper activities and/or lax supervision contributed to a systemic practice of falsifying paid circulation data and reporting it to ABC;

b.	the institution at both Newsday and Hoy of requirements, enforced by penalties that include loss of incentive compensation, personal certification by the Chief Executive Officer and Publisher, Chief Financial Officer and Vice President for Circulation of the accuracy of reported circulation, and, on a quarterly basis, the completion of detailed questionnaires signed by the Chief Executive Officer and Publisher, Chief Financial Officer, and Vice President for Circulation about current practices relating to circulation numbers reported to ABC;

c.	the addition of circulation audits to the scope of work conducted during annual internal audits at Newsday and Hoy;

d.	the assignment of the Finance departments at Newsday and Hoy to exercise joint responsibility with the Circulation departments of the Newspapers to prepare and verify monthly paid circulation data as well as to review reports of unsold newspapers by distributors and to establish guidelines limiting use of third-party bulk sales;

e.	the implementation of regular field-testing and auditing by Newsday and

Hoy of third-party newspaper distributors ("distributors"), supplemented by requirements that contracts with distributors specify all terms in writing, and that invoices issued to those distributors specify all work requested.

8. In consideration of Newsday's and Hoy's respective: (a) acceptance of responsibility for their conduct as acknowledged herein; (b) cooperation to date and agreement to continue to cooperate with the Investigative Entities; (c) agreement to make the payment set forth in paragraph 6 above; (d) implementation of the Remedial Actions, Policies and Procedures; (e) payment of approximately $83 million, to date, to entities that placed ads in Newsday and Hoy in settlement of pending or potential claims related to the Unlawful Practices; and (f) agreement otherwise to comply with all of the terms of this Agreement, the Office agrees that, except as provided in this Agreement, neither Newsday nor Hoy will be prosecuted for the Unlawful Practices.

9. Newsday and Hoy understand and agree that should the Office, in its sole discretion, determine that either Newsday or Hoy has deliberately given false, incomplete, or misleading information under this Agreement, has otherwise deliberately violated any provisions of this Agreement or has committed, or attempted to commit, any crimes other than the Unlawful Practices, then that party shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including a prosecution relating to the Unlawful Practices. Newsday and Hoy both agree that in the event of the foregoing, any prosecution relating to the Unlawful Practices that is not time-barred by the applicable statute of limitations on the date of this Agreement may be commenced against them in accordance with

this Agreement, notwithstanding the expiration of any statute of limitations. By this Agreement, Newsday and Hoy both expressly intend to and do waive any rights in this respect. Such waiver is knowing, voluntary and made after consultation with counsel.

10. Newsday and Hoy further understand and agree that in the event the Office, in its sole discretion, determines that either Newsday or Hoy has knowingly violated any provision of this Agreement or has committed or attempted to commit any crimes other than crimes relating to the Unlawful Practices: (a) all statements made by or on behalf of the Newspapers to any of the Investigative Entities, including the acknowledgment and acceptance of responsibility set forth in this Agreement and the exhibits hereto, and any testimony given by that party before a grand jury or elsewhere, whether before or after the date of this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any criminal proceeding brought by the Office against that party; and (b) the same party shall not assert in any criminal proceeding against it brought by the Office any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule or provision, that statements made by or on behalf of that party before or after the date of this Agreement, or any leads derived therefrom, should be suppressed.

11. Newsday and Hoy agree that the decision on whether conduct and/or statements of any individual will be imputed to Newsday or Hoy for purposes of determining whether Newsday or Hoy or both violated any provision of this Agreement shall be in the sole discretion of the Office, provided, however, that the statements of any former officer, director or

employee of Newsday or Hoy, made after his or her termination from employment at Newsday or Hoy, shall not be attributed to the Newspapers for the purposes of paragraphs 9-11. Should the Office determine that Newsday or Hoy has committed a knowing breach of any provision of this Agreement, the Office will provide written notice to that party, addressed to its counsel, Thomas McC. Souther, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, or to any successor that it may designate, and will provide it with a two-week period from the date of receipt of such notice in which to make a presentation to the Office to demonstrate that no breach has occurred or, to the extent relevant, that the breach was not knowing or had been cured. Newsday and Hoy understand and agree that the exercise of discretion by the Office is not subject to review in any court or tribunal.

12.    Newsday and Hoy agree that they shall not, through their attorneys, Board of Directors, agents, officers or other authorized employees, make any public statement, in litigation or otherwise, contradicting their respective acceptances of responsibility, including the admissions set forth in Exhibit A and Exhibit B. Any such contradictory statement by Newsday or Hoy, their present or future attorneys, Board of Directors, agents, officers or employees shall constitute a breach of this Agreement and the party in breach thereafter shall be subject to prosecution as set forth in this Agreement. The decision as to whether any such contradictory statement will be imputed to Newsday or Hoy for the purpose of determining whether either has breached this Agreement shall be at the sole discretion of the Office. Following notification by the Office to Newsday or Hoy of any such contradictory statement, the party so notified may avoid a breach of this Agreement by publicly repudiating such statement within 72 hours after

notification by the Office. This paragraph is not intended to apply to any statement made by any Newsday or Hoy officer, director or employee or former officer, director or employee who has been charged with a crime or other wrongdoing by the government or an agency thereof.

13. If either Newsday or Hoy sells or merges all or substantially all of its business operations as they exist as of the date of this Agreement to or into a single purchaser or group of affiliated purchasers during the term of this Agreement, that seller or merging party shall include in any contract for sale or merger a provision binding the purchaser/successor to the obligations described in this Agreement.

14. Newsday and Hoy agree that, following expiration of this Agreement, they will continue to cooperate with the Investigative Entities in connection with any proceeding relating to the Unlawful Practices. Newsday and Hoy shall have no obligation to cooperate if either is a defendant in any such proceeding.

15. Newsday and Hoy agree that this Agreement, including Exhibits A and B hereto, may be released to the public.

16. It is understood that this Agreement is binding only on Newsday, Hoy and the Office, and specifically does not bind any other federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, the Office will bring this Agreement and Newsday's and Hoy's cooperation and the Remedial Actions, Policies and Procedures to the attention of other federal agencies, state or local law enforcement agencies, and any licensing or regulatory authorities if Newsday or Hoy so requests. It is the intent of the parties to this Agreement that this Agreement does not confer or provide

9

any benefits, privileges or rights to any individual or any entity other than the parties hereto, and that nothing in this Agreement shall be construed as acknowledging that this Agreement, including Exhibit A and Exhibit B, the evidence underlying this Agreement and Exhibit A and Exhibit B, shall be admissible in any proceeding other than a proceeding brought by the Office. No promises, agreements or conditions have been entered into other than those set forth in this

Agreement, and none will be entered into unless memorialized in writing and signed by all parties. This Agreement supersedes any prior promises, agreements or conditions between the parties. To become effective, this Agreement must be signed by all signatories listed below.

Dated: December 11, 2007
Brooklyn, New York

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York

By: _____
Cynthia M. Monaco
Senior Litigation Counsel

Approved By: _____
Eric R. Komitee
Chief, Business and Securities Fraud Unit

_____
Greg D. Andres
Chief, Criminal Division

AGREED AND CONSENTED TO BY:

_____
Dennis FitzSimons
Chairman & Chief Executive Officer
Tribune Company, as sole owner of Newsday, Inc. and Hoy Publications LLC

_____
Thomas McC. Souther Esq.
Counsel to Newsday, Inc. and Hoy Publications LLC

## EXHIBIT A

In any criminal proceeding brought by the United States Attorney's Office for the Eastern District of New York, the following statement by Newsday, Inc. ("Newsday"), shall be admissible against it pursuant to Rules 801(d)(2) and 804(b)(3) of the Federal Rules of Evidence:

1. Newsday is a New York corporation headquartered and with its principal place of business in Melville, New York. At all relevant times, Newsday published a daily newspaper by the same name, which it sold and distributed throughout the New York metropolitan area, including all five boroughs of New York City, Long Island and New Jersey.

2. The Audit Bureau of Circulation ("ABC") is a not-for-profit organization whose membership at all relevant times included Newsday, and certain of its advertisers. ABC served as an industry watchdog to insure the integrity of paid circulation data submitted by publishers to advertisers. In order to qualify for membership in ABC, a newspaper publisher was required to meet a paid circulation threshold, which was verified through annual audits by ABC. Certain advertisers depended on ABC-audited paid circulation data to negotiate advertising rates with publishers, including certain advertisers in Newsday.

3. From approximately 2001 until May 2004, senior managers of Newsday and subordinate employees under those managers' direction engaged in fraudulent practices that systematically inflated paid circulation numbers reported in Newsday's books and records and falsely represented to ABC that the inflated numbers were accurate. A goal of the scheme was to mislead ABC to verify by audit Newsday's claims that its paid circulation was increasing or at least not declining, and thereby, to induce certain advertisers to pay higher rates than accurate reports by Newsday to ABC would have justified.

4. Among the fraudulent techniques used by Newsday managers and employees to inflate paid circulation numbers that they then reported to ABC was to make incentive and bonus payments to distributors of Newsday newspapers, ostensibly for bona fide performance, that were in fact conditioned on the distributors overstating the number of copies that they had actually delivered and understating the number of copies that had been returned by retail stores and hawkers because those copies had not been sold.

5. As part of this fraudulent technique, Newsday managers directed home delivery agents to lie to ABC auditors tasked to verify the accuracy of the information that the agents were reporting to Newsday and that Newsday was relaying to ABC.

6. As a further part of this fraudulent technique, Newsday managers also compensated a distributor as if it was selling up to 65,000 copies of the newspaper each weekday, and up to 50,000 copies of the newspaper each Sunday when, as the managers knew, at no time did that distributor actually sell more than 10,000 copies in a single day.

1

7. In the Spring 2004, Newsday managers sought further to mislead ABC about the distribution operation described in paragraph 6 above. To convince ABC that the circulation numbers that Newsday had previously attributed to that operation had been accurate, Newsday managers invited ABC auditors to observe a "re-creation" in which Newsday employees were dispatched in the guise of customers to buy newspapers from hawkers stationed at locations throughout Long Island. This was for the purpose of misleading the auditors into believing that Newsday had actually sold newspapers to real customers when it had not.

8. Another fraudulent technique used by Newsday managers and employees to inflate paid circulation numbers that they then reported to ABC was to run programs in which newspapers were delivered, without charge, to homes where no one had requested delivery, which the Newsday managers then counted and caused to be counted as paid home subscribers, in violation of ABC rules.

9. Another fraudulent technique used by Newsday managers and employees to inflate paid circulation numbers that they then reported to ABC was to conceal days in which paid circulation had been less than anticipated by falsely attributing those days to other days that under ABC reporting rules could be excluded from circulation computations.

Dated: December 12, 2007.

_____
Dennis FitzSimons
Chairman & Chief Executive Officer
Tribune Company, as sole owner of Newsday, Inc.

_____
Thomas McC. Souther, Esq.
Counsel to Newsday, Inc.

## EXHIBIT B

In any criminal proceeding brought by the United States Attorney's Office for the Eastern District of New York, the following statement by Hoy Publications, LLC, shall be admissible against it pursuant to Rules 801(d)(2) and 804(b)(3) of the Federal Rules of Evidence:

1. Hoy Publications, LLC, is a Delaware Corporation that maintained offices in, among other places, Melville, New York, from its creation in January 2004 until approximately May 15, 2007. Between 1999 and May 15, 2007, Hoy LLC and as its successor-in-interest, Hoy Publications, LLC (collectively, "Hoy"), published several Spanish-language daily newspapers. These included a newspaper that was sold and distributed throughout the New York metropolitan area, including all five boroughs of New York City, Long Island and New Jersey ("Hoy New York"), a newspaper that was sold and distributed in Chicago beginning in approximately September 2003 ("Hoy Chicago") and a newspaper that was sold and distributed in Los Angeles beginning in approximately March 2004 ("Hoy Los Angeles") (collectively, the "Hoy Newspapers").

2. The Audit Bureau of Circulation ("ABC") is a not-for-profit organization whose membership at all relevant times included Hoy and its advertisers. ABC served as an industry watchdog to insure the integrity of paid circulation data submitted by publishers to advertisers. In order to qualify for membership in ABC, a newspaper publisher was required to meet a paid circulation threshold, which was verified through annual audits by ABC. Certain advertisers depended on ABC-audited paid circulation data to negotiate advertising rates with publishers, including advertisers in the Hoy Newspapers. Certain advertisers also considered unaudited paid circulation republished by ABC in deciding whether to advertise in new publications and what advertising rates to accept.

3. Senior managers of Hoy and subordinate employees under those managers' direction engaged in fraudulent practices that systematically inflated paid circulation numbers for Hoy New York from approximately 2001 until July 2004, Hoy Chicago from approximately September 2003 until July 2004, and Hoy Los Angeles from approximately March 2004 until July 2004 that were reported in Hoy's books and records and falsely represented to ABC that the inflated numbers were accurate. A goal of the scheme was to mislead ABC to verify by audit Hoy's false claims that its paid circulation was substantially increasing, and thereby to induce certain advertisers to pay higher rates than accurate reports by Hoy to ABC would have justified. A related goal upon the launching of Hoy Chicago in September 2003 and Hoy Los Angeles in March 2004 was to publish through ABC, false, as yet unaudited paid circulation data in order to convince potential advertisers that the success of these new editions justified buying advertising space in them.

4. Among the fraudulent techniques used by Hoy managers and employees to inflate paid circulation numbers that they then reported to ABC was to falsify Hoy New York's records to

  make it appear as if there were large numbers of paying subscribers for the newspaper, when in fact, few were actually paying to subscribe.

5. Another fraudulent technique used by Hoy managers and employees to inflate paid circulation numbers that they then reported to ABC was to pay third party distributors of the Hoy Newspapers to accept and falsely to report as sold thousands more copies per day than the retail stores, hawkers and vending machines served by those distributors could actually sell.

6. A related fraudulent technique used by Hoy managers to inflate paid circulation numbers that they then reported to ABC was to falsify and cause others, including Hoy employees and distributors of the Hoy Newspapers, to falsify "return affidavits" from the distributors documenting how many newspaper copies had been returned by retail stores and hawkers because they had not been sold.

Dated: December 12, 2007.

_____
Dennis FitzSimons
Chairman & Chief Executive Officer
Tribune Company as sole owner of Hoy Publications, LLC

_____
Thomas McC. Souther, Esq.
Counsel to Hoy Publications, LLC

2