IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TRIBUNE COMPANY, *et al.*[1] | : | Case No. 08-13141 (KJC) |
| | : | |
| Debtors. | : | Jointly Administered |

## LIMITED OBJECTION OF THE ACE COMPANIES TO DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES

ACE American Insurance Company, ACE Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard Insurance Company, Century Indemnity Company, Indemnity Insurance Company of North America, Insurance Company of North America, Illinois Union Insurance Company, INA

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Surplus Insurance Company, Pacific Employers Insurance Company, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company (collectively and together with each of their affiliates, the "ACE Companies"), by and through their attorneys, Duane Morris LLP, hereby file this Limited Objection to the Disclosure Statement For Joint Plan of Reorganization For Tribune Company And Its Subsidiaries (the "Disclosure Statement") and in support hereof, respectfully state as follows:

## BACKGROUND

1. On December 8, 2008 (the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. Since the Petition Date, the Debtors have continued in possession of their property and the operation of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Code.

3. On December 18, 2008, an official committee of unsecured creditors (the "Committee") was appointed.

4. On or about April 12, 2010, the Debtors filed the Disclosure Statement and the plan related thereto (the "Plan").

## THE ACE INSURANCE PROGRAM

5. Prior to the Petition Date, the ACE Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to certain Debtors and their non-debtor affiliates as named insureds.

6. Prior to the Petition Date, the ACE Companies and the Debtors and/or their non-debtor affiliates also entered into certain written agreements in connection with the Policies (as

renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

7. Pursuant to the Policies and Insurance Agreements (the "ACE Insurance Program"), the ACE Companies provide, *inter alia*, certain workers' compensation, general liability, products liability, directors and officers liability, automobile liability, and certain other liability insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the ACE Companies assert that the insureds, including one or more of the Debtors, are required to pay to the ACE Companies certain amounts including, but not limited to, insurance premiums, including retro and audit premiums, and are responsible for certain deductibles, as more particularly described in the ACE Insurance Program (the "Obligations").

8. The Obligations are secured by the following letters of credit and the proceeds thereof (collectively, as amended, confirmed, supplemented or replaced, the "Letters of Credit"):

   a. Letter of Credit No. TPTS-350275 in the amount of $4,881,802 issued by JPMorgan Chase Bank, N.A.;

   b. Letter of Credit No. TPTS-350116 in the amount of $11,988,631.00 issued by JPMorgan Chase Bank, N.A.;

   c. Letter of Credit No. 00326659 in the amount of $7,516,464.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.;

   d. Letter of Credit No. 33546900 in the amount of $8,523,127.00 issued by Bank One, NA n/k/a JPMorgan Chase Bank, N.A.; and

   e. Letter of Credit No. TPTS-350107 in the amount of $227,734.00 issued by JPMorgan Chase Bank, N.A.

9. The Obligations may also be secured by cash collateral, paid loss deposit funds, loss reimbursement funds and/or other amounts provided by the Debtors and held by, or under the control of, the ACE Companies, as security.

3

DM3\1373053.1

10.     On or about June 12, 2009, ACE American Insurance Company on its own behalf and on behalf of all of its affiliates filed a proof of claim against the Debtors in the bankruptcy case of Tribune Company pursuant to the Stipulation and the Order[2] for the claims arising under the ACE Insurance Program (the "ACE Claims").

## OBJECTION

11.     Section 1125 of the Bankruptcy Code provides that a plan proponent may not solicit acceptance or rejection of a plan unless, before such solicitation, the plan proponent transmits to the parties to be solicited, the plan and a disclosure statement, containing "adequate information," as defined in § 1125(a) of the Bankruptcy Code, which has been approved by the Bankruptcy Court, after notice and a hearing. *See* 11 U.S.C. § 1125(b).

12.     A disclosure statement contains "adequate information" if it provides information concerning the proposed plan of a kind and in sufficient detail that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan. *See* 11 U.S. C. § 1125(a)[3].

13.     Courts in the Third Circuit consistently refuse to approve disclosure statements that lack the information that a "reasonable hypothetical investor" would require to make an

---

[2] On or about June 9, 2009, the Court (as defined herein) entered an order (the "Order") approving that certain stipulation (the "Stipulation") dated as of June 5, 2009 by and between the Debtors and the ACE Companies which provides, *inter alia*, that notwithstanding anything to the contrary set forth in the Bar Date Order (as defined therein) or notice thereof, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures and/or local bankruptcy rules, (i) the Claimant on its own behalf and on behalf of all of the ACE Companies shall be permitted to file a single proof of claim and (ii) such claim shall be filed in the case of Tribune Company (Case No. 08-13141) but shall be deemed to have been filed by each of the ACE Companies under the applicable Policies and Insurance Agreements in each of the Debtors' cases.

[3] 11 U.S.C. § 1125(a)(1) provides in pertinent part:
    (a) In this section –
    (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan . . . .

4

informed decision about the proposed plan. *See, e.g., In re Route 202 Corp.*, 37 B.R. 367, 375-76 (Bankr. E.D. Pa. 1984); *In re Fierman*, 21 B.R. 314 (Bankr. E.D. Pa. 1982); *In re East Redley Corp.*, 16 B.R. 429 (Bankr. E.D. Pa. 1982) ; *In re Civitella*, 15 B.R. 206 (Bankr. E.D. Pa. 1981); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417-18 (3d Cir.), *cert. denied*, 488 U.S. 967 (1988).

### A. The ACE Companies Are Not Able To Determine How The ACE Insurance Program or The Claims Arising Therefrom Will Be Treated.

14. Neither the Disclosure Statement nor the Plan specifically provides for the treatment of the ACE Insurance Program or other insurance policies and related agreements or for the claims arising therefrom including, but not limited to, the ACE Claim.

#### 1. The Disclosure Statement And Plan Must Provide For The Treatment of the ACE Claims.

15. The ACE Claim is secured by the Letters of Credit and any other collateral and/or security held by, or under the control of, the ACE Companies.

16. The Letters of Credit are not property of the Debtors' estates.

17. The Disclosure Statement and Plan separately classify General Unsecured Claims and Secured Claims and define a Secured Claim as a "a Claim . . . secured by a Lien on collateral to the extent of the value of such collateral." *See* Disclosure Statement § IX.C; Plan §§ 1.1, 3.2, and 3.3.

18. As drafted, it is not clear if "Secured Claims" and the reference therein to "collateral" include claims secured by property that is not property of the Debtors' estates such as the ACE Claims which are secured, at least in part, by the Letters of Credit.

19. Accordingly, the Disclosure Statement and Plan do not expressly provide for the classification or treatment of the ACE Claims.

20. The Disclosure Statement and Plan should be revised to provide that the ACE Claims shall be deemed (i) Secured Claims that are Reinstated pursuant to the Plan and thus, remain secured by the Letters of Credit and other collateral and security and the proceeds thereof provided by the Debtors to them and (ii) General Unsecured Claims as to the remaining balance thereof, if any.

### 2. The ACE Insurance Program Must Be Assumed In Its Entirety Pursuant to § 365 of the Bankruptcy Code.

21. The ACE Insurance Program must be read, interpreted and enforced in its entirety. *See In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

22. Therefore, to the extent that the Debtors seek to assume or continue any of the Policies, the Debtors must assume or continue in effect the ACE Insurance Program in its entirety. *See In re Aneco Elec. Constr.*, 326 B.R. at 202. *See also In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir.), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992) (stating "(a)ssumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1982) (stating "assumption or rejection of an executory contrary requires an all-or-nothing commitment going forward, and that hence a debtor cannot assume part of an executory contract in the future while rejecting another part"); *In re Morande Enters.*, 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) (citation omitted) (stating that the "law is clear that an executory contract may not be assumed in part and rejected in part"); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (citation omitted) (stating "(i)t is settled

6

law that a trustee or a debtor in possession 'takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*'"). *See also AGV Productions, Inc. v. Metro Goldwyn-Mayer, Inc.*, 115 F. Supp.2d 378, 391 (S.D.N.Y. 2000) (citing cases).

23. Sections IX.H.1 and IX.H.2 of the Disclosure Statement provides that with certain exceptions, on the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed and that the proposed cure amount for any such executory contract or unexpired leases is assumed to be zero dollars unless otherwise indicated in a "schedule to be filed with the Bankruptcy Court." *See also* Plan §§ 6.1, 6.2.

24. As set forth above, the Debtors may not assume portions of the ACE Insurance Program without assuming all of the Policies and Insurance Agreements which comprise the ACE Insurance Program in their entirety.

25. However, §§ IX.H.1 and IX.H.2 of the Disclosure Statement does not clearly provide that the Debtors will assume the ACE Insurance Program in its entirety.

26. Therefore, the ACE Companies cannot determine how the ACE Insurance Program and thus, the claims of the ACE Companies will be treated and thus, object to the Disclosure Statement on the basis that it lacks of adequate information under § 1125 of the Bankruptcy Code.

27. Additionally, in order to assume the ACE Insurance Program, the Debtors must satisfy the requirements of § 365 of the Bankruptcy Code. Specifically, the Debtors must: (a) cure any defaults, (b) compensate the ACE Companies for any actual pecuniary loss resulting from any defaults, and (c) provide adequate assurance of future performance (collectively, the "Assumption Requirements").

7

DM3\1373053.1

28. Section IX.H.2 of the Disclosure Statement which provides that the cure amount is presumed to be zero dollars (unless listed otherwise on a schedule not yet filed) does not satisfy the Assumption Requirements.

29. Accordingly, the Plan and Disclosure Statement should be modified to expressly provide that: (i) as of the Effective Date, the ACE Insurance Program shall be assumed in its entirety, (ii) on or before the Effective Date, the Debtors shall satisfy the Assumption Requirements for the ACE Insurance Program and (iii) that nothing in any way limits, diminishes or otherwise alters or impairs the legal, equitable or contractual rights, defenses, obligations and claims of the ACE Companies, the Debtors (or after the Effective Date, the Reorganized Debtors) under the ACE Insurance Program and applicable non-bankruptcy law or modifies the coverage provided thereunder or the terms and conditions thereof

30. Further, the Plan and Disclosure Statement should be modified to expressly provide that the Reorganized Debtors will be liable for all of the Debtors' obligations and liabilities, whether now existing or hereafter arising and regardless of when the underlying cause of action and/or claim arose, under the ACE Insurance Program including, without limitation, the duty to continue to provide collateral and security as required by the ACE Insurance Program.

### 3. The Disclosure Statement And Plan Should Provide That The ACE Companies' Claims Are Allowed Administrative Expense Claims To Be Paid In Ordinary Course.

31. As drafted, the Disclosure Statement and Plan provide that holders of "Allowed Administrative Expense Claims that are not yet due on the Effective Date or that represent obligations incurred by the Debtors in the ordinary course of their business during these Chapter 11 Cases, or assumed by Debtors during these Chapter 11 Cases" shall be paid at such time as they become due in the ordinary course of business. *See* Disclosure Statement § IX.B.2, Plan § 2.2.

32. However, the Disclosure Statement and Plan do not provide for ordinary course Administrative Expense Claims to become "Allowed."

33. Accordingly, the Disclosure Statement and Plan should be revised to provide that the claims of the ACE Companies arising under the ACE Insurance Program (i) shall be Allowed Administrative Expense Claims, (ii) shall be due and payable in the ordinary course of business by the Debtors (or after the Effective Date, by the Reorganized Debtors) pursuant to the ACE Insurance Program without the need or requirement for the ACE Companies to file claims, motions, applications, proofs of claim, cure claims or objections to cure claims, (iii) shall not be discharged or released by the Plan or the Confirmation Order, and (iv) shall remain secured by the Letters of Credit and other collateral or security and the proceeds thereof provided by the Debtors to them.

34. The Disclosure Statement and Plan should specifically provide that Administrative Expense Claims which are incurred pursuant to assumed insurance policies and related insurance agreements are incurred in the ordinary course of business and that such ordinary course claims are *Allowed* Administrative Expense Claims so as to be entitled to a payment under the Plan.

**B.     Proposed Resolution of Objection**

35. The ACE Companies hereby request that the following language be added to the Plan to resolve the Objection:

> Notwithstanding anything to the contrary in the Disclosure Statement, Plan, Plan Supplement, any other Plan document or the Confirmation Order (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), (i) nothing therein or herein in any way limits, diminishes or otherwise alters or impairs the legal, equitable or contractual rights, defenses, obligations and claims of the ACE Companies, the Debtors (or after the Effective Date, the Reorganized Debtors) under the ACE Insurance Program and applicable non-bankruptcy law or modifies the coverage

DM3\1373053.1

provided thereunder or the terms and conditions thereof; (ii) the Debtors and the Reorganized Debtors: (a) shall assume the ACE Insurance Program on the Effective Date and (b) shall cure defaults, if any, related to such assumption, and (c) the Reorganized Debtors shall remain liable for any Claim under the ACE Insurance Program that becomes liquidated, or is due and owing, after the time of the assumption (regardless of when the underlying cause of action and/or claim arose) and shall pay such Claim in the ordinary course of business; (iii) as of the Effective Date, the Reorganized Debtors shall be liable for all of the Debtors' obligations and liabilities, whether now existing or hereafter arising and regardless of when the underlying cause of action and/or claim arose, under the ACE Insurance Program including, without limitation, the duty to continue to provide collateral and security as required by the ACE Insurance Program, and (iv) the Claims of the ACE Companies related to the ACE Insurance Program shall be (a) Allowed Administrative Expense Claims due and payable in the ordinary course of business by the Debtors (or after the Effective Date, by the Reorganized Debtors) pursuant to the ACE Insurance Program, and the ACE Companies shall not be required to file or serve requests, applications, motions, cure claims, objections to cure amounts or proofs of claim and shall not be subject to any bar date or similar deadline and (b) shall remain secured by any and all letters of credit and other collateral or security and the proceeds thereof provided by the Debtors to them.

"ACE Companies" means, collectively, ACE American Insurance Company, ACE Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Bankers Standard Insurance Company, Century Indemnity Company, Indemnity Insurance Company of North America, Insurance Company of North America, Illinois Union Insurance Company, INA Surplus Insurance Company, Pacific Employers Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, ESIS, Inc. and each of their respective affiliates.

"ACE Insurance Program" means all insurance policies and all agreements, document or instruments relating thereto including, without limitation, claims servicing agreements and collateral and/or security agreements, that have been issued or entered into by the ACE Companies (or any of them) to or with one or more of the Debtors and their respective predecessors and/or affiliates.

### C.     Reservation of Rights

36.     The ACE Companies specifically reserve their right to assert additional objections to the Disclosure Statement and the Plan including, but not limited to, the right to object to the proposed treatment of director and officer liability insurance policies.

DM3\1373053.1

## **CONCLUSION**

WHEREFORE, the ACE Companies respectfully request that this Court (a) either (i) condition any approval of the Disclosure Statement to inclusion of the modifications requested herein or (ii) deny the Debtors' request for approval of the Disclosure Statement as it does not contain the adequate information required by 11 U.S.C. § 1125 and (b) grant such other relief as the Court deems appropriate.

Dated: May 13, 2010

DUANE MORRIS LLP

By: */s/ Richard W. Riley*
Richard W. Riley, Esquire
DE I.D.: 4052
1100 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
rwriley@duanemorris.com

and

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
mreed@duanemorris.com
wmsimkulak@duanemorris.com

Counsel to the ACE Companies