M. PATRICIA SMITH
Solicitor of Labor
TIMOTHY D. HAUSER
Associate Solicitor of Labor
MICHAEL A. SCHLOSS
Senior Trial Attorney
LEONARD H. GERSON
ELIZABETH S. GOLDBERG
Trial Attorneys
United States Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C.  20013
Tel (202) 693-5600
Fax (202) 693-5610

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| In re: | \* | Chapter 11 |
| | \* | |
| TRIBUNE COMPANY, <u>et al</u>, | \* | Case No. 08-13141 (KJC) |
| | \* | |
| Debtors. | \* | Jointly Administered |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OBJECTION OF THE SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR TO THE MOTION FOR APPROVAL OF THE DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION OF THE TRIBUNE COMPANY AND ITS SUBSIDIARIES**

The Secretary of the United States Department of Labor (hereinafter "Secretary" or "DOL"), hereby files this objection (the "Objection") to the motion dated April 12, 2010 (the "Motion") for Approval of Disclosure Statement for Joint Plan of

Reorganization for Tribune Company ( the "Debtor" or "Tribune") and its Subsidiaries

(collectively, the "Debtors"), and represents as follows:

### INTRODUCTORY STATEMENT:

1.      The Secretary has primary responsibility for regulating and enforcing Title

I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et. seq.

("ERISA"), including the responsibility to conduct investigations to determine whether

any person has violated the fiduciary requirements of ERISA.  The Secretary also has the

authority to institute actions in United States district courts for any losses to an ERISA

plan resulting from fiduciary breaches, for restitution of plan losses, for equitable and

remedial relief, and for injunctive relief pursuant to ERISA " 502(a)(2) and (5), 29 U.S.C.

" 1132(a)(2) and (5).

2.      Pursuant to her statutory authority to investigate possible violations of

Title I of ERISA, the Secretary has initiated an investigation with respect to the Tribune

Company Employee Stock Ownership Plan ("Tribune ESOP" or "ESOP" ) for possible

violations of Title I of ERISA, including ERISA " 404 and 406.  This investigation is

ongoing and the Secretary has filed unliquidated proofs of claim against the Tribune and

seventy of its Subsidiary Debtors[1] in connection therewith (the "DOL Proofs of Claim").

3.      Violations for breach of fiduciary duties under Title I of ERISA may give

rise to claims for restitution of losses as well as equitable and remedial relief against plan

fiduciaries and anybody who knowingly participates in those violations.  To the extent

that such violations are found to have occurred with respect to the Tribune ESOP, and

---

[1] Captialized terms have the meaning provided in the Disclosure Statement, unless otherwise defined herein.

one or more of the Debtors are found to be a fiduciary of the ESOP or a knowing

participant in violations of ERISA, any resulting restitution of losses or equitable or

remedial relief are claims against the pertinent estate of the Debtors.

4.      This bankruptcy arose in the aftermath of a failed leveraged buyout of the

Tribune utilizing the Tribune ESOP.  Although the Secretary's investigation is still

continuing, at least one court has already concluded that the Tribune ESOP's

involvement in the leveraged buyout appears to have been improper and in violation of

ERISA.  Just a few months ago the United States District Court for the Northern District

of Illinois denied a motion to dismiss defendants Samuel Zell, Zell's affiliate, EGI-TRB,

L.L.C. (the "Zell Entity") and GreatbancTrust Company ("Greatbanc"), the trustee of the

ESOP, as defendants in a class action for breach of fiduciary duty and prohibited

transactions brought on behalf of participants in the ESOP.  *Neil v. Zell,* 677 F. Supp.2d

1010 (N.D. Ill. 2010) (the "Neil Litigation").  In its opinion, the court essentially

concluded that, assuming the veracity of the factual allegations contained in the

plaintiffs' complaint in that action, the sale of unregistered stock to the ESOP as part of

the failed leveraged buyout constituted a prohibited transaction under § 406(a) of ERISA,

29 U.S.C. § 1106(a).  *Id.* at 1026-27.

5.      The proposed Disclosure Statement fails to inform interested parties about

the Secretary's general concerns as to the Plan described therein and the lack of clarity

and/or completeness as to specific language therein.  As a general matter, despite the

apparent strength of the ESOP participants' claims, the proposed Disclosure Statement

fails to fully and clearly state that it wrongfully seeks to preclude the ESOP and its

participants from obtaining any relief on their apparently strong claims and instead seeks

3

to release non-Debtor third parties, including defendants in the Neil Litigation, from any liability on those claims, or on the potential claims of the Secretary or anybody else under ERISA.

6.      The Secretary believes that the Plan's attempt to relieve non-Debtors of any ERISA liability is impermissible, particularly as it is only the LBO Lenders who are providing any consideration for their release.  Equally as important, none of such consideration is being paid to satisfy released ERISA claims.  The proposed Disclosure Statement fails completely to address these infirmities.

7.      The proposed Disclosure Statement is similarly opaque in connection with disclosing the existence and substance of the Secretary's position that the Plan's attempt to subordinate ERISA claims to the claims of unsecured creditors is contrary to § 510(b) of the Bankruptcy Code.  Similarly, the Disclosure Statement is infirm in connection with its discussion of the Plan's further attempt to subordinate ERISA claims to the equity interests in the Subsidiary Debtors without any legal foundation.

8.      In sum, it is the position of the Secretary that the Plan is unconfirmable. However, even if decision on these Plan infirmities is not reached in connection with the Debtors' present motion but, withheld until the hearing on confirmation of the Plan (the "Confirmation Hearing"), the Secretary still believes that the Disclosure Statement should not be included in its present form.  At the very least, it should be amended to include a discussion of the matters raised herein and the resulting risks that those matters pose to the Plan and its confirmation.

**THE DEBTORS HAVE FAILED TO ADEQUATELY DISCLOSE HOW
CREDITORS WILL BE AFECTED BY THE PLAN'S IMPERMISSIBLE
THIRD PARTY RELEASES:**

9.      "Full and honest disclosure" in a disclosure statement is recognized by the

Third Circuit as being "crucial to the effective functioning of the federal bankruptcy

system." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 362 (3d

Cir. 1996).  Its importance "cannot be overstated." *Id.*

10.      Section 1125 of the Bankruptcy Code requires "candid disclosure,"

*Oneida Motor Freight Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.), *cert.*

denied, 488 U.S. 967 (1988) in a form understandable by "the average unsecured

creditor." *In re Radco Properties, Inc*., 402 B.R. 666, 683 (E.D. N.C. 2009).

11.      Notwithstanding the requirements of section 1125, and the case law

governing its application, the Debtors have failed to provide a clear description of

significant aspects of the Plan.  Rather than attempting to candidly describe the effects of

the Plan, the Debtors have attempted in their proposed Disclosure Statement to obscure

the nature of the releases that they are seeking and the impact on ERISA claims made in

these Chapter 11 Cases or elsewhere.  This is the exact opposite of what Congress

intended.

12.      The Debtors fail to provide any description of the releases and related

injunctions set forth in Article XI of the Plan.  Instead, the Disclosure Statement section

ostensibly describing these provisions, Section L entitled "Injunctions, Releases and

Discharges," contains nothing more than a word for word regurgitation of Article XI.

This failure to provide any description of the dense language of Article XI makes a

mockery of § 1125's disclosure requirements; this is particularly true of the attempt to release third party ERISA claims.

13.    Section 11.2.2 of the Plan contains a broad release of the claims of creditors against third parties (the "Third Party Release").  It is the position of the Secretary that a release of third party claims under a chapter 11 plan is barred by § 524(e) of the Bankruptcy Code.[2]  Assuming, arguendo, that releases of third party ERISA claims may be had (again, a proposition with which the Secretary strongly disagrees), the failure of the released non-Debtors (other than the LBO Lenders) to provide any financial contribution and the lack of any distribution being provided to ERISA claimants for the release of their claims causes the Plan's proposed release to fail the minimum conditions that the Third Circuit stated in *In re Continental Airlines*, 203 F.3d 203, 213-214 (3d Cir. 2000), were required, if it were ever to rule that a third party release was not barred by § 524(e).  *E.g., In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 606-608 (Bankr. D. Del. 2001).

14.    The Debtors should revise the Disclosure Statement to reflect the view of the Secretary that the Plan's proposed Third Party Release makes the Plan not confirmable.  The Debtors also must revise the Disclosure Statement to provide average creditors, including all of the participants in the ESOP, with the information they need to understand who they would be releasing, if they fail to opt out of the Third Party Release.

15.    As written, the Disclosure Statement is unlikely to provide ESOP participants voting on the Plan with a simple, clear picture of all of the implications and results that would follow their vote for, or against, the Plan.  For example, to know that

---

[2] Section 524(e) states in pertinent part: "[D]ischarge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524 (e).

by voting to accept the Plan a participant would be granting a release to Greatbanc, the ESOP's trustee (and thus possibly foreclosing their best opportunity to recover on their pension claims in the Neil Litigation), the participant would need to analyze (i) the language in § 11.2.2, the third party release provision of the Plan; (ii) then the definition of "Released Parties" in § 1.1.149 of the Plan; (iii) then the definition of "Related Person" in § 1.1.147 of the Plan; (iv) then the definition of "Affiliate" in § 1.1.3 of the Plan; (v) then the definition of "Affiliate" in § 101(2) of the Bankruptcy Code; (vi) then the participant need to know that the ESOP owned 20% or more of the outstanding voting securities of the Tribune; and (vii) finally, the participant would need to know that Greatbanc was the ESOP's trustee.  Moreover, the Secretary employs the term "analyze" to describe the burden placed upon an average creditor because these are not simple definitions that need to be deciphered, but lengthy ones with multiple parts.

16.    It is important to note that Greatbanc is not some minor entity that happens to accidentally fall within the scope of the Third Party Release.  As the trustee of the ESOP at the time of the LBO (and to this day), it is a major defendant in the Neil Litigation; one that failed in its motion to dismiss; and one that is now subject to the plaintiffs' motion for summary judgment.  On page 27 the Disclosure Statement discusses the role of Greatbanc in the LBO and on page 43 it identifies Greatbanc as a defendant in the Neil Litigation (not by name, but as "the trustee of the ESOP").  However, the Disclosure Statement never discloses to creditors, including participants protected by ERISA, that the release they are being asked to provide under the Plan seeks to free Greatbanc from any ERISA liability in connection with the LBO, including those claims to which it is subject in the Neil Litigation.  Such a glaring omission certainly fails

to satisfy the Third Circuit's requirement for candid disclosure set forth in *Oneida Motor Freight*, 848 F.2d at 417.

17.     Unlike Greatbanc, the Disclosure Statement on page 60 identifies Zell and the Zell Entity as entities being released, but only with respect to the release being provided by the Debtors.  No mention is made of the fact that Zell and the Zell Entity also are being released by holders of claims held by non-Debtors pursuant to the Third Party Release.

18.     Creditors should not need to speculate on who will be beneficiaries of the Third Party Release, particularly if such beneficiaries are defendants in a known ERISA action (including EGI, LLC, a new defendant in the Neil Litigation).

19.     The Debtors apparently are relying on what they believe to be the consensual nature of the proposed Third Party Release.  It is the position of the Secretary that for a release to be truly consensual a creditor must have the right to accept a plan of reorganization without releasing its claim against a third party.  *In re Monroe Well Service, Inc.*, 80 B.R. 324, 329 (Bankr. E.D. Va. 1987).  The voting procedures should be revised to allow those who vote to accept the Plan, particularly participants protected by ERISA, to opt out of the Third Party Release.  Moreover, under the proposed Plan those creditors in unimpaired classes are not even given a choice; they automatically are "deemed" to grant a release of their claims against non-Debtors even if their ERISA claims against the non-Debtors are completely unconnected to their claims against the Debtors.  The right to opt out must be extended to those creditors, particularly all ERISA protected participants, who are deemed to accept the Plan.

20.    The Plan's Third Party Release is being effectuated by the Supplemental Injunction contained in § 11.4.1 of the Plan.  The language of the Supplemental Injunction is of such breadth that it would enjoin creditors who have opted out of the Third Party Release from pursuing their claims against the Released Parties.  Thus, the Third Party Release will become entirely nonconsensual.  Accordingly, the following language should be added to the Plan and Disclosure Statement:  "Notwithstanding any language to the contrary set forth herein, no Person who has opted out of any release provided under this Plan shall be enjoined in any way by the injunctive relief provided herein."

21    In light of these numerous infirmities in the Third Party Release, the following language should be added to Article XIV, entitled Risks Factors, of the Disclosure Statement: "Certain Holders of a Claim have asserted that the releases and related injunctive relief provided in Article XI of the Plan are not permissible.  The Bankruptcy Court may find that such releases must be modified in order for the Plan to be confirmed."

**THE DISCLOSURE STATEMENT REQUIRES ADDITIONAL DISCLOSURE ON THE PLAN'S IMPERMISSIBLE ATTEMPT TO SUBORDINATE ERISA CLAIMS PURSUANT TO § 510(b):**

22.    The Debtors must revise the Disclosure Statement to reflect the Secretary's belief that the Plan improperly subordinates ERISA claims pursuant to § 510(b) of the Bankruptcy Code.  Additional language also is necessary to reflect the Secretary's position that even if § 510(b) can be used to subordinate ERISA claims, the Plan improperly subordinates such ERISA claims to the equity interests in the Subsidiary

Debtors.  *In re Lernout & Hauspie Speech Products, N.V.*, 264 B.R. 336 (Bankr. D. Del. 2001).

**OTHER PLAN PROVISIONS REQUIRING FURTHER DISCLOSURE:**

23.     Section 6.8 of the Plan provides for, among other things, termination of the ESOP, forgiveness of the ESOP Note and other actions.  It further gives notice that the Debtors may seek, in their sole discretion, various rulings from the Court with respect to such relief including "the legal effect of the forgiveness of the ESOP Note."  Plan at § 6.8.  The Disclosure Statement, like the provisions regarding the Plan's releases and injunctions, does nothing more than repeat the language in § 6.8 of the Plan.  In particular, it provides absolutely no information or guidance as to what the actions contemplated thereby are or what "legal effect" may be included.

24.     As the individual statutorily charged by Congress with primary responsibility for regulating and enforcing ERISA, the Secretary clearly has an interest in objecting to any attempt to use the forum of this Court to foreclose her from complying with that responsibility in any fashion or to foreclose her from making her own determinations as to the "legal effect" of any matter.  The Disclosure Statement should note the Secretary's additional strong objection to use the forum of this Court to foreclose the jurisdiction of any other court to address matters placed under such court's jurisdiction by ERISA.  The Secretary may certainly reach her own conclusions as to the 'legal effect' of the activities described in § 6.8 or any other post-petition activities and may seek to enforce those conclusions in other courts as provided by ERISA.

25.     The Debtors by this language may be seeking improperly to use the forum of this Court to foreclose or impinge upon the jurisdiction of the court in which the Neil

Litigation is pending.  Regardless of the undisclosed specifics identifying what they truly mean by the "legal effect" language, the Debtors by this language clearly seek to use the forum of this Court to address issues beyond the termination of the ESOP, the DOL Proofs of Claim or other claims properly before this Court in connection with the confirmation of a Tribune plan of reorganization. The Disclosure Statement should be modified to include an explanation of the specific relief the Debtors may seek pursuant to § 6.8 of the Plan.

26.    Section 11.6 of the Plan, which is entitled "Exculpation," frees the "Released Parties" from liability, among other things, "for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases."  Plan at § 11.6. Again, the Disclosure Statement simply repeats the language in § 11.6 rather than explaining its purpose.  The Debtors, among others, have ongoing fiduciary, reporting and other postpetition ERISA obligations, and the Disclosure Statement fails to explain why they should be relieved from their liability in connection therewith.

27.    Section 11.7 of the Plan provides for the assumption of the Debtors' obligation to indemnify their officers, directors and employees for actions occurring prior to the Petition Date.  Again, the Disclosure Statement simply repeats the language in § 11.7 rather than explaining its purpose.  There is a mention of indemnification claims in § VII.F.3(a) of the Disclosure Statement.  However, in addition to being located in a totally different section of the Disclosure Statement, the disclosed information only raises questions as to why the indemnification obligations of the Debtors are being assumed.

28.    The Disclosure Statement states that releases are being provided because "litigation involving present and former directors, officers and employees of the Debtors

likely would trigger statutory, contractual and/or common law claims for advancement,
indemnification and/or contribution from the Debtors, as would litigation involving the
advisers, Mr. Zell and the Zell Entity."  Disclosure Statement at § VII.F.3(a).   However,
the Third Circuit has stated that granting a release simply to protect against an indemnity
obligation "would turn bankruptcy principles on their head."  *Continental Airlines*, 203
F.3d at 217.  In addition, such contingent claims for indemnification are disallowed
pursuant to § 502(e)(1)(B) of the Bankruptcy Code.  E.g., *In re Pinacle Brands, Inc*., 259
B.R. 46, 55 (Bankr. Del. 2001).  The Debtors need to disclose the estimated cost for the
assumption of such indemnification obligations and the reasons for their assumption
rather than allowing for their extinguishment pursuant to § 502(e)(1)(B).

**CONCLUSION:**

WHEREFORE, based on the foregoing, the Secretary respectfully requests that approval of the Disclosure Statement be denied until the requested additional disclosure is provided and that the Court grant such other and further relief that it deems just and proper.


Dated: Washington, D.C.

May 13, 2010     M. PATRICIA SMITH
            Solicitor of Labor

            TIMOTHY D. HAUSER
            Associate Solicitor of Labor

            __/s Michael Schloss_____
            MICHAEL SCHLOSS
            Senior Trial Attorney
            LEONARD H. GERSON
            ELIZABETH S. GOLDBERG
            Trial Attorneys
            Plan Benefits Security Division
            Office of the Solicitor
            U.S. Department of Labor
            P.O. Box 1914
            Washington, D.C. 20013
            Tel (202) 693-5600
            Fax (202) 693-5610