UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| TRIBUNE COMPANY, et al., ) | Case No. 08-13141 (KJC) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | Hearing Date May 20, 2010 at 10:00 a.m. |
| ) | Response Date: May 13, 2010 |
| ) | Related Docket No. 4008, 4009 |

**RESPONSE OF DEUTSCHE BANK TRUST COMPANY OF AMERICAS, INDENTURE TRUSTEE UNDER THE 1992 INDENTURE, THE 1995 INDENTURE AND THE 1997 INDENTURE TO THE DEBTORS' MOTION TO APPROVE A DISCLOSURE STATEMENT DATED APRIL 12, 2010**

Deutsche Bank Trust Company of Americas ("DBTCA" or the "Indenture Trustee"), successor trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture (as herein defined) hereby files this response (the "Response") to the motion filed by Tribune Company ("Tribune") and its subsidiaries (collectively, the "Debtors") to approve a proposed Disclosure Statement For Joint Plan of Reorganization For Tribune Company and its Subsidiaries dated April 12, 2010 (the "Disclosure Statement"). In support of this Response, DBTCA respectfully represents as follows:

I.

**BACKGROUND**

A.  **The Bankruptcy Cases**

1.  On December 8, 2008 (the "Petition Date"), Tribune and over 100 affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have continued to operate their business and manage their properties as debtors in possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

ME1 9944613v.1

2. Not all of the Tribune entities filed for Chapter 11 relief. Specifically, four Tribune affiliates/subsidiaries did not file for bankruptcy protection: (i) Tribune Interactive, Inc.; (ii) Tribune National Marketing Company; (iii) Chicago National League Ball Club LLC; and (iv) Tribune (FN) Cable Ventures.

3. On December 18, 2008, the United States Trustee for the District of Delaware appointed a committee of unsecured creditors (the "Committee"). At present, the Committee consists of eight members, including DBTCA.

4. The Committee retained special counsel for the purpose of, inter alia, investigating avoidance claims against the Senior Lenders.[1] See Application of Creditors' Committee to retain Zuckerman Spaeder LLP [Docket No. 1953].

5. On April 12, 2010, the Debtors filed the Disclosure Statement. [Docket No. 4008]. On April 12, 2010, the Debtors filed A Notice of Hearing to Consider Approval of the Disclosure Statement for Joint Plan of Reorganization for Tribune Company and Its Subsidiaries. [Docket No. 4009].

6. On April 22, 2010, the Court entered an Order Directing the Appointment of an Examiner. [Docket No. 4120].

7. On May 11, 2010, the Court entered an Order Approving Kenneth Klee as the Examiner. [Docket No. 4320].

8. On April 29, 2010, the Debtors filed a motion for an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Joint Plan of Reorganization for Tribune Company and Its Subsidiaries; (II) Establishing Deadline for Return of Media Ownership Certifications; (III) Scheduling Confirmation Hearing; (IV) Establishing

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Joint Plan of Reorganization for Tribune Company and its Subsidiaries dated April 12, 2010 (the "Plan").

2

Notice and Objection Procedures in Respect of Confirmation of Joint Plan of Reorganization; and (V) Granting Related Relief. [Docket No. 4204].

B. **The Senior Noteholders' Claims**

9. DBTCA presently serves as the Indenture Trustee under the following indentures issued by Tribune:

### i. The 1992 Indenture

10. DBTCA is the Indenture Trustee under that certain indenture dated as of March 1, 1992, as amended and supplemented (the "1992 Indenture"), by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee. On or about June 5, 2009, DBTCA filed a proof of claim for claims under the 1992 Indenture in the amount of $120,500.00.

### ii. The 1995 Indenture

11. DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1995 Indenture"), by and between Tribune and First Interstate Bank of California, as the predecessor indenture trustee. Under the 1995 Indenture, two series of notes were issued: (i) 7.25% Debentures due March 1, 2013; and (ii) 7.50% Debentures due July 1, 2023.

12. On or about June 5, 2009, DBTCA filed a proof of claim for the 7.25% Debentures in the amount of $83,702,999.21. On or about June 5, 2009, DBTCA filed a proof of claim for the 7.50% Debentures in the amount of $102,000,520.83.

### iii. The 1997 Indenture

13. DBTCA is the Indenture Trustee under that certain indenture dated as of January 1, 1997, as amended and supplemented (the "1997 Indenture"), by and between Tribune and Bank of Montreal Trust Company. Under the 1997 Indenture, three series of notes were issued:

(i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008.

14. On or about June 5, 2009, DBTCA filed a proof of claim for the 4.875% Debentures in the amount of $456,946,875.00. On or about June 5, 2009, DBTCA filed a proof of claim for the 5.25% Debentures in the amount of $335,486,250.00. On or about June 5, 2009, DBTCA filed a proof of claim for the 5.67% Debentures in the amount of $69,812,899.00. Collectively, the claims filed by DBTCA under the 1997 Indenture total $862,246,024.00.

## II.

## STANDARDS FOR APPROVAL OF DISCLOSURE STATEMENT

15. Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information to a debtor's creditors in sufficient detail so as to "enable a hypothetical reasonable investor . . . to make an informed judgment about the Plan." 11 U.S.C. § 1125(a)(1). The purpose of a disclosure statement is to provide a debtor's creditor with adequate information upon which to base a voting decision on an otherwise confirmable plan of reorganization.

16. The following matters generally must be addressed in order for a disclosure statement to be approved for dissemination:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable

transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

In re Metrocraft Publishing Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

17. Even if it adequately addresses all necessary issues, a disclosure statement that describes a plan of reorganization that is unconfirmable on its face should not be approved. See In re Phoenix Petroleum, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001)("the disclosure statement should be disapproved at the threshold only where the plan it describes displays fatal deficiencies or the stark absence of good faith."); In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1985)("if, on the face of the plan, the plan could not be confirmed, the court will not subject the estate to the expense of soliciting votes and seeking confirmation."); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988)("approval [of a disclosure statement] should be withheld if . . . it is apparent that the Plan will not comply with [Bankruptcy] code § 1129(a)").

18. This rule is premised on efficiency and judicial economy; a "court will not proceed with the time consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable." In re Kehn Ranch, Inc., 41 B.R. 832, 833 (Bankr. D.S.D. 1984).

### III.

### THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

A.  **The Disclosure Statement is Silent regarding the Circumstances Surrounding the Appointment of the Examiner, the Scope of his Investigation and other Relevant Information**

19. The Disclosure Statement does not reference the appointment of the Examiner, the scope of his investigation, the expected expense pursuant to the Examiner's work plan and the date on which the Examiner will issue his report. More importantly, the Disclosure

Statement should indicate how members of voting classes (including the holders of the Senior Notes) may review the Examiner's report <u>PRIOR</u> to voting on the Plan (ideally the Disclosure Statement should indicate the date on which the report will be issued and contain a hyperlink for creditors to review the report on the internet).

**B.     Inadequate Description of the Senior Notes**

20.    Page 31 of the Disclosure Statement sets forth the most basic information concerning the Senior Notes. The Debtors should provide more background information concerning the Senior Notes and the circumstances under which Tribune entered into these agreements. In addition, the Schedule on page 31 does not indicate which Indenture governs each of the Senior Notes. Moreover, page 31 of the Disclosure Statement does not reflect the CUSIP number assigned to each of the Senior Notes (although such CUSIPs are identified in the proposed form of ballot). Finally, the description does not indicate the amounts that were asserted in the proofs of claims filed by DBTCA. In order to satisfy Section 1125 of the Bankruptcy Code, this information should be included.

21.    In addition, the claims filed by DBTCA were for amounts in excess of the amount identified by the Debtors. For example, the Indenture Trustee filed: (i) a claim under the 7.25% Debentures under the 1995 Indenture in the amount of $83,702,999.21 and (ii) a claim under the 7.50% Debentures under the 1995 Indenture in the amount of $102,000,520.83 (total $185.704 million). The Disclosure Statement indicates that these claims will be allowed in the amounts of $82.083 million and $98.750 million (total $180.83 million) . Accordingly, there is a difference of approximately $4.87 million between the amount filed by the Trustee and the amount to be allowed by the Debtors. Similarly, with respect to the 1997 Indenture (consisting of three series of notes), the Indenture Trustee filed claims under the three series of notes for $862.246 million. The Disclosure Statement indicates that these claims will be allowed in the amount of $849.55

million -- a $12.7 million difference. The Debtors should explain why the amounts set forth on the Trustee's proof of claim are not being allowed as filed.

C.         **Inadequate Description of the LBO - Related Causes of Action**

22.      Pages 27-30 and pages 55-58 purport to describe the LBO -Related Causes of Action and the potential claims arising from that transaction. According to the Debtors the LBO - Related Causes of Action are a "central issue in these Chapter 11 Cases". See Disclosure Statement at 56. The description of the LBO Related Causes of Action are described from the Debtor's view point -- which is distorted. Accordingly, the description of these claims does not provide adequate information concerning the nature of the claims, and the amount of the potential recovery to the estate under different scenarios. It is respectfully submitted that these sections be modified to include the views of the Committee, J.P Morgan Chase, other Senior Lenders and Law Debenture, the Indenture Trustee for the 1996 Indenture.

D.         **Inadequate Description of the Distribution Mechanism to the Holders of the Senior Notes**

23.      On page 92 of the Disclosure Statement, the Debtors indicate that "Distributions to holders of Senior Noteholder Claims shall be made by book-entry exchange through the facilities of the Depository Trust Company ("<u>DTC</u>")( in accordance with customary practices of DTC, as and to the extent practicable, and the Distribution Record Date[2] shall not apply..." Section 7.7.2 of the Plan sets forth the mechanisms for distributions to the holders of Senior Notes.

24.      There are several issues with respect to the Debtors' proposed mechanism of distributions to Senior Noteholders. First, if the Distribution Record Date does not apply to the Senior Notes, what date will serve as the record date for purposes of distribution to a Senior

---

[2] Section 1.1.55 of the Plan defines "<u>Distribution Record Date</u>" as "the Confirmation Date or such other date as may be designated in the Confirmation Order."

Noteholder? Will it be the Record Date for purposes of voting[3], the date on which the Debtors contact DTC after confirmation or some other date? The Disclosure Statement is entirely silent on what the record date will be for distributions to Senior Holders. Second, it is the practice of DBTCA to distribute cash, but not securities. Because the Plan provides for the distributions of the New Senior Secured Term Loan and the New Common Stock to the holders of Class 1D (Senior Noteholder Claims), the Plan should note that these distributions will be effectuated by the Disbursing Agent. Finally, with respect to one of the Indentures, certain participants hold the obligation directly (i.e. not through DTC), the Disclosure Statement and the Plan should address how distributions will be effectuated to these holders.

### E. Inadequate Discussion with respect to Cancellation of Indentures and the discharge of DBTCA as Indenture Trustee

25. Section 5.8 of the Plan provides for, among other things, the cancellation of the Senior Notes, Debentures, and other Instruments. The Disclosure Statement does not provide any information regarding the cancellation of the Indentures and/or the Debentures. Page 102 of the Disclosure Statement discusses surrender of instruments as a condition of participation in the Plan. The Disclosure Statement does not address the fact that the Debentures and the Indentures will be cancelled under the Plan. Moreover, the Plan and the Disclosure Statement should address that upon cancellation of the Indentures, DBTCA will be relieved of its obligations as Indenture Trustee for the Senior Notes.

### F. Inadequate Discussion Of Disparate Treatment to Class 1D Creditors as a Result of the Allowance of Professional Fee Claims

26. The Plan provides for the payment of virtually all the fees and expenses of the major constituencies in these case. Section 9.1.1 through section 9.1.4 provide for the payment

---

[3] The Debtors have indicated that they would like to establish a voting record date for next Monday, May 17, 2010. To date, DBTCA has not been contacted by the Debtors about the mechanics for this process.

in full of the Lender Fees (see Section 9.1.1 - not subject to any cap), Senior Lender Settlement Fees (see Section 9.1.2 - subject to a $5 million cap), Creditors Committee Member Fees (see section 9.1.3 - subject to a cap of $1.5 million) and Senior Noteholders Fee/Expense Claims (see section 9.1.4 -- subject to a $5.25 million+ cap). The definition of Senior Noteholders Fee/Expense Claims includes Law Debenture but does not include DBTCA. DBTCA does not object to the payment of the fees of these professionals at this time. However, what is fair is fair and the Debtors, having agreed to pay the fee claims of the Committee (with the exception of the Indenture Trustee) and Law Debenture, should provide the same treatment with respect to the fees and expenses of the DBTCA. First, the failure to do so will create a discrepancy in the expected amounts which will be received by the holders under the 1996 Indenture vis a vis the 1992, 1995 and 1997 Indentures. DBTCA has a charging lien against any funds received under the Plan and, if it is required to assert this charging lien, the value to be received by the Noteholders will be reduced. If DBTCA asserts a charging lien, the result will be that similarly situated creditors will receive disparate treatment because the 1996 holders having had the fees and expenses of their Indenture Trustee paid by the estate will receive a higher distribution.

27. If the Debtors do not wish to provide a mechanism for the payment of the Professional Fee/Expense Claims of DBTCA, it should reference in the Disclosure Statement that the holders of the 1992, 1995 and 1997 Indentures will receive less than the 1996 Indentures because of the way the Plan is presently structured.[4]

---

[4] For purposes of calculating the difference in recovery to the different holders of Senior Notes in Class 1.D, the Debtors should estimate that the fees and expenses of DBTCA and its professionals to date for its services in this case are approximately $1.3 to $1.5 million. It is respectfully suggested that these amounts are minor in the scheme of this case and the Debtors should simply allow the fees according to the same procedures set forth in Section 9.1.1 through 9.1.4 as to other professionals.

ME1 9944613v.1

## CONCLUSION

**WHEREFORE**, DBTCA respectfully requests that the Court require the Debtors to revise the Disclosure Statement consistent with the issues raised herein and, in the absence of such, deny approval of the Disclosure Statement along with such other and further relief as is just and proper.

Dated: May 13, 2010
       Wilmington, DE

**McCARTER & ENGLISH LLP**

By:  /s/ Katharine L. Mayer
Katharine L. Mayer (DE# 3758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
(302) 984-6399 Facsimile
(302) 984-2494 Direct Fax
kmayer@mccarter.com

-and-

David J. Adler, Esq. (DA0048)
245 Park Avenue
27th Floor
New York, New York 10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
dadler@mccarter.com

*Counsel for Deutsche Bank Trust Company Americas*

10

ME1 9944613v.1