IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------x
In re:                        :  Chapter 11
                              :
TRIBUNE COMPANY, et al.,      :  Case No. 08-13141 (KJC)
                              :
         Debtors.             :  (Jointly Administered)
                              :
                              :  Re: Docket Nos. 4376, 4385 and 4382
                              :
------------------------------x

**REPLY OF SETTLEMENT SUPPORTERS TO OBJECTIONS OF AD HOC GROUP OF SENIOR LENDERS [DKT. NO. 4376], WELLS FARGO BANK, N.A. [DKT. NO. 4382] AND WILMINGTON TRUST COMPANY [DKT. NO. 4385] TO PROPOSED DISCLOSURE STATEMENT AND MOTION FOR APPROVAL OF PLAN SOLICITATION PROCEDURES**

JPMorgan Chase Bank N.A., Agent for the Debtors' prepetition senior lenders and a holder of senior loan claims, Angelo Gordon & Co LP, on behalf of certain funds and managed accounts holding senior loan claims, GoldenTree Asset Management, L.P., on behalf of certain funds and managed accounts holding senior loan claims, Law Debenture Trust Company of New York, solely in its capacity as successor indenture trustee for certain series of the Debtors' prepetition senior notes and Centerbridge Credit Advisors LLC, on behalf of certain funds and managed accounts holding senior notes claims (collectively, the "Settlement Supporters") hereby submit this reply to the Objections of (i) the ad hoc group of certain senior lenders calling themselves the "Credit Agreement Lenders" [Dkt. No. 4376], (ii) Wells Fargo Bank, N.A. [Dkt. No. 4382] and (iii) Wilmington Trust Company ("Wilmington Trust") [Dkt. No. 4385] to the Debtors' proposed Disclosure Statement and their Motion for Approval of Plan Solicitation Procedures.

RLF1 3572208v.1

## I. Requests to Delay Solicitation

1. As the Court is aware, JPMorgan, Angelo Gordon, Law Debenture and Centerbridge, supporters of the settlement of the LBO-Related Causes of Action reflected in the Debtors' proposed plan of reorganization filed on April 12, 2010 (the "Plan"), participated in the hearings regarding whether an Examiner should be appointed in these cases and ultimately consented to the appointment of an examiner on the express understanding, as articulated at the hearing, that the Examiner's work would not delay solicitation of acceptances to or the hearing on confirmation of, the Plan. The Court likewise said that there was sufficient time within which to "dual track" the examiner and confirmation processes. (Hr'g Tr. 45, Apr. 13, 2010). Accordingly, the opponents of the Debtors' proposed plan cannot now use the Examiner's appointment as a basis for seeking to delay the plan solicitation and confirmation process and to frustrate the Settlement Supporters' justifiable reliance that there would be such delay in consenting to the appointment of the Examiner.

2. Just a few weeks ago, while arguing in support of its request for appointment of an Examiner, counsel to Wilmington Trust clearly and forcefully assured the Court and other parties in interest that the Examiner's investigation need not delay the solicitation process for the Plan. The Court and other parties in interest expressly stated that the Examiner's investigation would be conducted on a parallel track with the solicitation process, and the Court defined a schedule for the Examiner's investigation that would meet that end. The Examiner has taken his mission to heart and has put the parties on a schedule designed to meet the schedule set by the Court.

3.  Now, with an Examiner appointed, Wilmington Trust, in its objection to the Disclosure Statement, suddenly reverses course and seeks to delay solicitation pending the completion of the Examiner's investigation, arguing that creditors would be unable to make an informed decision as to whether to accept or reject the Plan if they do not receive the Examiner's report prior to *commencement* of the solicitation. This argument, made so soon after actively participating in formulation of the schedule discussed at recent hearings represents a classic "bait and switch:" pay lip service to the proposed schedule to lure the Debtor and other parties into acquiescence in the Examiner's appointment and then belatedly protest that the agreed schedule is unfair.

4.  The draft Disclosure Statement filed with the Court states that the Examiner's report will be issued no later than July 12, putting all parties on notice and providing almost three full weeks for creditors to consider the report before the voting deadline. Moreover, in response to the varied objections to the Disclosure Statement, the Debtors have proposed to permit Wilmington Trust and other parties to include in the Disclosure Statement statements of their position on the proposed settlement of LBO-related claims under the Plan. The existing timetable ensures that the delivery of the Examiner's report will dovetail with the Plan solicitation and confirmation process (as was intended by the Court) and will provide creditors with ample time to consider the results of the examination, as well as the widely divergent positions of the opponents and supporters of the Plan, when deciding whether to support the Plan. There is absolutely no justification to revisit the agreed schedule at this time, and all of the parties, even those who have little to lose and much to gain from delay, should be held to it. Wilmington

Trust is asking the Court to backtrack over a bridge that was crossed when the schedule was set, and such disingenuous hold-up tactics should not be countenanced.[1]

## II. Requests for Extensive Additional Disclosure Regarding LBO-Related Causes of Action and the Proposed Settlement Thereof

5. As the Debtors and many other parties have noted, the exhaustive and expensive investigations conducted by numerous parties of the potential LBO-Related Causes of Action have been central to these cases. The bulk of the objections to the Debtors' proposed Disclosure Statement filed by the Credit Agreement Lenders, Wells Fargo and Wilmington Trust, while purporting to relate to what these parties feel are inadequacies in the Debtors' disclosure regarding the LBO-Related Causes of Action, are in fact, by and large, statements of litigation positions in advance of the hearing on confirmation of the Plan. Some say the settlement is too low for various reasons and others say the settlement is too high. Of course, Settlement Supporters take the view (supported by these divergent positions) that the settlement falls within the range of reasonableness. It would seem, in fact, that the protestations raised by objectors on both sides, high and low, readily make the Settlement Supporters' case.

6. Unsurprisingly, each objector seeks additional disclosure heavily tilted towards its parochial view of the merits of the LBO-Related Causes of Action and of the

---

[1] Wilmington Trust's misleading and thoroughly irresponsible attempt in its objection to call into question the regulatory approval process underway with the FCC is just another unfortunate example of a hold-up value leverage play. Contrary to Wilmington Trust's claims, the Debtors' FCC applications clearly outline contemplated methods of compliance with foreign ownership and other ownership limitations. The methods proposed to be used by the Debtors to ensure compliance with foreign ownership rules have been consistently allowed and the agency recently approved the use of certain of those methods to ensure compliance with the multiple and cross ownership rules in connection with the emergence of NextMedia from bankruptcy protection.

4

RLF1 3572208v. 1

proposed settlement, all in an effort to further its particularized agenda. As is inevitable with objections filed by parties with conflicting interests, the proposed additional disclosure conflicts and is impossible to reconcile. The fact that the settlement is being resisted by the Credit Agreement Lenders on the grounds that it provides too *much* value to junior creditors and by Wilmington Trust on the grounds that it provides too *little* value to junior creditors demonstrates the inherent reasonableness of the Debtors' proposal. Instead of trying to reconcile the conflicting and parochial disclosure proposals, it makes sense to permit the relevant parties to include in the Disclosure Statement a short statement of their respective positions with respect to the Plan and the proposed settlement on which the Plan is premised.

7.  The Settlement Supporters believe it should be more than sufficient to fairly and efficiently resolve the conflicting disclosure objections and to fairly present the competing views of the LBO-Related Causes of Action and the Plan, to allow each of Wilmington Trust, Wells Fargo, the Credit Agreement Lenders, the Unsecured Creditors' Committee and the Settlement Supporters to include a two-page statement of their respective views in the Disclosure Statement.

8.  Limiting the submission to two pages adequately serves the purposes of the objectors while minimizing the rhetorical opportunities that would be abused by all of the parties if more voluminous materials were permitted. Given the substantial briefing on these issues that has occurred to date, any objector who feels constrained by the page limit can refer in their statement to their more comprehensive papers previously filed with the Court.

## CONCLUSION

9. The Settlement Supporters respectfully request that the Court (i) reject Wilmington Trust's and Wells Fargo's requests to delay the commencement of the Plan solicitation and (ii) resolve the conflicting disclosure objections of the so-called Credit Agreement Lenders, Wilmington Trust and Wells Fargo by permitting those parties, the Unsecured Creditors' Committee and the Settlement Supporters, to submit two-page statements of their respective positions for inclusion in the Disclosure Statement.

Dated: May 17, 2010
Wilmington, Delaware

Respectfully submitted,

/s/ Damian S. Schaible
Donald S. Bernstein
Damian S. Schaible
Eli J. Vonnegut
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A.*

/s/ Andrew N. Goldman
Andrew N. Goldman
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

*Attorneys for Angelo Gordon & Co LP*

/s/ Karen Weber
Karen Weber
Director – Bank Debt

*GoldenTree Asset Management, L.P.*
*Not in its Individual and Principal Capacity but as*
*Investment Advisor on behalf of one or more*
*Managed Clients*


/s/ David S. Rosner
David S. Rosner
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1726

*Attorneys for Law Debenture Trust Company of*
*New York*


/s/ Daniel H. Golden
Daniel H. Golden
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-8000

*Attorneys for Centerbridge Credit Advisors LLC*