## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: June 16, 2010 at 11:00 a.m. ET**<br>**Response Deadline: June 9, 2010 at 4:00 p.m. ET** |

### DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007

### ("CLAIMS ASSERTED BY KEVIN MILLEN")

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel,

hereby submit this omnibus objection (the "<u>Objection</u>") to Claim Nos. 526, 688, 1105, and 1118

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

filed by claimant Kevin Millen (the "Millen Claims"), copies of which are attached hereto collectively as Exhibit A.[2]

In November 1998, many media outlets across the United States published a wire service report issued by the Associated Press concerning Mr. Millen's arrests. Among these newspapers was the Hartford Courant, a newspaper operated by Debtor The Hartford Courant Company (the "Courant"). Now, more than ten (10) years later, Mr. Millen has filed suit against the Courant, alleging that the report of his arrests contains "heinous lies" that purportedly give rise to defamation and libel claims. The Millen Claims filed against the Debtors have the same basis as claims that Mr. Millen has asserted against several other media companies, both in and out of chapter 11, which have been summarily dismissed by the respective courts for failure to state a claim and/or because such actions were time-barred under the applicable statutes of limitation.

Consistent with these other courts' treatment of Mr. Millen's claims, the Millen Claims here should be disallowed and expunged under applicable law, because the relevant statutes of limitation expired eight (8) years prior to when Mr. Millen's lawsuit was first filed. Even if this fatal defect could be overcome, which it cannot, the Millen Claims should nonetheless be disallowed based on the Debtors' other defenses, specifically, (i) the Millen Claims fail to state a claim for which relief can be granted and provide no basis for the damages sought thereby; (ii) the facts contained in the article were "substantially true" and therefore not actionable; and (iii) even if the article was defamatory, which it is not, the Courant is protected by the applicable privilege concerning news reports of a person's arrest, the criminal charge, and the contents of an arrest report. Moreover, the Millen Claims are substantially duplicative of

---

[2] At the Debtors' request, the Claims Agent has redacted certain personally identifiable information, including Mr. Millen's social security number, from the Millen Claims as they appear on the Claims Register. The Millen Claims attached hereto as Exhibit A are, in all other respects, true and accurate copies of the claims as filed by Mr. Millen.

each other. This Court should follow the lead of other courts in disallowing Mr. Millen's claims for these reasons.

This Objection is submitted pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the Millen Claims in their entirety. In further support of the Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On December 8, 2008 (the "Petition Date"), Tribune Company and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007.

6.      The Court has jurisdiction over this matter notwithstanding Mr. Millen's pending appeal of this Court's Order sustaining the Debtors' Fourth Omnibus Objection (Non-Substantive) to Claims entered on October 2, 2009 [Docket No. 2271].[4]  Given the fact that this Court's Order sustaining Debtors' Fourth Omnibus Objection to Claims in no way affected the validity or amount of the Millen Claims, the Court's order was not a final or appealable order with respect to the Millen Claims and Mr. Millen does not have standing to assert an appeal of such Order.  See Venen v. Sweet, 758 F.2d 117 (3d Cir. 1985) ("[T]he jurisdiction of the lower court to proceed in a cause is not lost by the taking of an appeal from an order or judgment which is not appealable . . . .  An appeal from a non-appealable judgment or order is sometimes characterized as a 'nullity'.").

## INFORMATION CONCERNING THE MILLEN CLAIMS

7.      The underlying pro se Connecticut Superior Court action upon which the Millen Claims are based was filed on November 17, 2008, shortly before the Petition Date.[5]  In the complaint (the "Complaint"), Mr. Millen contends that he "has been falsely accused" by a three-sentence Hartford Courant newspaper article published in November 1998 concerning the

---

[4] Claim No. 688 was initially included among the "exact duplicate" claims sought to be expunged by the Debtors' Fourth Omnibus Objection to Claims [Docket No. 2095]; however, upon the response of Mr. Millen to the Fourth Omnibus Objection to Claims [Docket No. 2118], the Debtors withdrew their objection only as it related to Mr. Millen's Claim No. 688, without prejudice to file a future substantive objection addressing the merits of all of the Millen Claims.  (See Notice of Withdrawal of Objection to Claim 688, Without Prejudice, filed October 2, 2009 [Docket No. 2263]; Certification of Counsel, filed October 2, 2009 [Docket No. 2264].)  Thus, the Millen Claims were wholly unaffected by the Court's Order Sustaining the Debtors' Fourth Omnibus Objection to Claims.

[5] The case is styled Kevin Millen v. Hartford Courant, Case No. HHD-CV-08-5025316-S.  The action remains pending, subject to the automatic stay of section 362(a) of the Bankruptcy Code, and no answer or dispositive pleading has yet been filed by the Courant.

4

circumstances of his arrests at that time.  A copy of the Complaint is attached hereto as <u>Exhibit</u>

<u>B</u>, and is also substantially reproduced in the supporting documentation attached to the first of

the four Millen Claims, Claim No. 526.[6]  The Courant article attached to the Complaint reported

as follows:

> Former Hoya charged with stalking Thompson
>
> A former Georgetown basketball player accused of stalking and
> making threatening phone calls to coach John Thompson was
> ordered held for a preliminary psychiatric evaluation, WTOP-AM
> in Washington reported Wednesday.  Kevin Millen, who played
> for Georgetown in 1991-95, appeared in District of Columbia
> Superior Court after being detained by University Police Monday.
> The arrest warrant stated Millen was upset over job opportunities
> arranged by [Thompson that hadn't panned out].

<u>Exhibit B</u>, Complaint at 4.[7]

        8.      Also attached to the Complaint are intake sheets from the District of

Columbia Department of Corrections, one for each of his two arrests at the time the Courant

article was published.  These documents state that Mr. Millen was arrested on November 3, 1998

and was formally charged with (i) making threats to John Thompson and/or his staff members

and (ii) unlawfully entering the Georgetown University campus.  <u>See</u> <u>Exhibit A</u>, Claim No. 526

at 9 (containing the District of Columbia Department of Corrections' intake sheet dated

November 4, 1998, stating that Mr. Millen was charged upon his first arrest with

"Threats/Unlawful Entry").  After being released on bond, Mr. Millen was arrested less than a

week later on November 9, 1998 for unlawfully entering campus.  <u>See</u> <u>Exhibit A</u>, Claim No. 526

at 10 (containing the District of Columbia Department of Corrections' intake sheet dated

---

[6] The 7-page Complaint consists of (1) the "Complaint Against the Defendant;" (2) a statement of facts; (3) a
"Motion for Relief Sought;" (4) an excerpt of the <u>Hartford Courant</u> article; (5) a copy of Mr. Millen's Social
Security Administration benefits statement; (6) a copy of Mr. Millen's driver's license; and (7) an article from the
Memphis <u>Commercial Appeal</u> newspaper.  Pages 5 and 6 have been redacted from this filing to protect Mr. Millen's
personally identifiable information and are not germane to this Objection.

[7] The <u>Hartford Courant</u> article attached to the Complaint did not repeat the final five words of the sentence.

November 10, 1998, stating that Mr. Millen was charged with "Unlawful Entry"). <u>See also</u>
<u>Former Hoyas Player Faces More Charges; Millen Arrested After Visit to Campus</u>, The
Washington Post; Nov. 11, 1998 at C06 (reporting on the circumstances of Mr. Millen's second
arrest).

      9.    Against this backdrop, the Complaint alleges that Mr. Millen "has been
falsely accused" and that "the Hartford Courant input lies to defame" him, because he "has never
been charged or copped to a stalking charge." <u>Exhibit B</u>, Complaint at 1. The Complaint further
asserts that "[t]he charges [Mr. Millen] was incarcerated for are to be seen, "but [stalking] is not
the charge." <u>Id</u>. Based on these statements in the Complaint, the Debtors have determined that
Mr. Millen's cause of action for defamation rests solely upon the <u>Hartford Courant</u>'s
characterization of the charges and accusations against Mr. Millen as "stalking." The Debtors
have not been able to identify any other statement in the Courant article that the Complaint
alleges is untrue.

      10.    The Complaint asserts, without specifics, that "this is hampering [him]
from getting jobs" and "has made mankind despise [him]." <u>Exhibit B</u>, Complaint at 1-2. The
relief requested in the Complaint, which is likewise asserted by each of the Millen Claims, is
$250,000.00, "a 15% share of the newspaper annual gross", and "a monthly income of
$4,500.00."[8] <u>Exhibit B</u>, Complaint at 3. The Millen Claims offer no basis whatsoever for the
calculation of damages sought, and instead state that "What I would like the court to do is allow
the paper the opportunity to make up for its mistakes … but being greedy is not the purpose for
me." <u>Id</u>.

---

[8] Claim No. 688 asserts a claim for $250,000.00, 15% share of newspaper "monthly" gross, and "$4,000" monthly
income. The Debtors have interpreted the four Millen Claims as making duplicative, but not aggregate demands;
however, in Mr. Millen's Objection to Disclosure Statement, Mr. Millen appears to assert that he is entitled to
"$1,000,000 plus 15% share of the company and a $6,500 dollar monthly check." <u>See</u> Objection to Disclosure
Statement [D.I. 4153]. Conversely, Mr. Millen suggests in that filing that the Debtors could simply "sign the
company over to me, and all debt incurred by others will be washed out." <u>Id</u>.

## RELIEF REQUESTED

11.     By this Objection, the Debtors seek entry of an order, pursuant to Section

502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and

expunging the Millen Claims in their entirety on the basis that the applicable statute of limitation

expired eight (8) years prior to when the underlying lawsuit was first filed.  Additionally, the

Millen Claims are facially without merit in that they fail to state a claim for which relief can be

granted and the article complained of was substantially true.  Even if the Millen Claims had any

facial validity, which they do not, the Courant is protected by the applicable privilege concerning

news reports of a person's arrest, the criminal charge, and the contents of an arrest report.

Finally, the Millen Claims are substantively duplicative of each other (and, accordingly, three of

the four Millen Claims should be disallowed on that basis alone).  The Debtors also seek an order

directing the Claims Agent to expunge the Millen Claims from the Claims Register so that the

Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## APPLICABLE LAW

12.     When a debtor declares bankruptcy, each of its creditors is entitled to file a

proof of claim—i.e., a document providing proof of a "right to payment"—against the debtor's

estate.  See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007);

11 U.S.C. § 101(5) (A "claim" for bankruptcy purposes means a "right to payment", whether or

not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured).  A party asserting a

claim against a debtor must initially allege sufficient facts to support its claim, and only if this

standard of sufficiency is met is the claim entitled to a presumption of validity.  In re Allegheny

Int'l, Inc., 954 F.2d 167, 173-174 (3d Cir. 1992).  See also Fed. R. Bankr. P. 3001(f).

13.     This Objection is founded on section 502(b)(1) of the Bankruptcy Code,

which provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a
> hearing, shall determine the amount of such claim in lawful
> currency of the United States as of the date of the filing of the
> petition, and shall allow such claim in such amount, except to the
> extent that—
>> (1)     such claim is unenforceable against the debtor and
>> property of the debtor, under any agreement or applicable
>> law for a reason other than because such claim is
>> contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).  Section 502(b)(1) recognizes the settled principle that "[c]reditors'

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating

the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."

Travelers, 549 U.S. at 450-51 (citing Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20

(2000)).

14.     Pursuant to section 558 of the Bankruptcy Code, "[t]he estate shall have

the benefit of any defense available to the debtor as against any entity other than the estate,

including statutes of limitation, statutes of frauds, usury, and other personal defenses."  11

U.S.C. § 558.  Here, even being mindful of the pro se nature of the Millen Claims and making all

reasonable inferences in favor of Mr. Millen, there is no actionable "right to payment" that could

be asserted against the Courant Mr. Millen, and the Millen Claims fail to support an allowable

claim in any amount, much less in the amount of the damages requested.  The applicable statutes

of limitation expired eight (8) years prior to when the action was first brought, which alone is a

sufficient basis for summary dismissal.  The Debtors' other defenses compel the same

conclusion.  Additionally, even if Mr. Millen had a viable claim, which he does not, the Millen

Claims do not provide any basis upon which the Court can conclude that the Courant owes Mr.

Millen $250,000.00, plus a 15% ownership interest in the Courant, plus a monthly income of

$4,500.00 per month for the alleged defamation.  Mr. Millen has assigned to the Debtors this arbitrary liability for the alleged defamation without any relevant or plausible evidence to support the claimed amount.

15.    In disallowing and expunging the Millen Claims, this Court would follow the lead of other Courts that have dismissed Mr. Millen's substantially identical claims against other newspapers that carried the same wire report.  See Millen v. The Commercial Appeal, Case No 08-2732 (JDT) (W.D. Tenn. Feb. 11, 2009) (sua sponte dismissal based on statute of limitations and failure to state a claim) (a copy of which is attached hereto as Exhibit C);  Millen v. Kansas City Star, Case No. 08-879 (SOW) (W.D. Mo. Feb. 9, 2009) (dismissal based on statute of limitations) (a copy of which is attached hereto as Exhibit D); Millen v. Wisconsin State Journal, Case No. 09-512 (BC) (W.D. Wisc. Nov. 3, 2009) (sua sponte dismissal based on failure to state a claim) (a copy of which is attached hereto as Exhibit E); and Millen v. Tampa Tribune, Case No. 09-1506 (RAL) (M.D. Fla. Aug. 7, 2009) (sua sponte dismissal based on statute of limitations) (a copy of which is attached hereto as Exhibit F).[9]  Mr. Millen also filed a proof of claim in the chapter 11 bankruptcy case of In re Philadelphia Newspapers, LLC, Case No. 09-11204 (JKF) (Bankr. E.D. Pa.), which remains pending.  As noted herein, all but one of the above-referenced orders were entered by the respective courts sua sponte, prior to any answer or responsive pleading from the defendants named in the lawsuits.  In Millen v. Kansas City Star, the defendant filed a motion to dismiss on the substantially identical grounds as requested here, that the statute of limitations barred the action, that the complaint failed to identify a false

---

[9] Mr. Millen filed successive appeals of each of these rulings to the respective United States Courts of Appeal and to the Supreme Court.  In the case of Millen v. The Commercial Appeal, the United States Supreme Court entered an order denying Mr. Millen's request to file an appeal in forma pauperis and dismissed the petition for writ of certiorari.  Finding that Mr. Millen "has repeatedly abused this Court's process," the Court directed the Clerk "not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and the petition is submitted win compliance with Rule 33.1."  Millen v. The Commercial Appeal, Case No 08-2732 (JDT) (W.D. Tenn. Dec 18, 2009).  A copy of the transmittal from the United States Supreme Court to the Clerk of the United States Court of Appeals for the Sixth Circuit, dated December 14, 2009, is attached hereto as Exhibit G.

statement, and that the defendants were protected by the fair reporting privilege.  See Def. Mot.

to Dismiss, Millen v. Kansas City Star, Case No. 08-879 (SOW) (W.D. Mo. Jan. 30, 2009).

Within ten days of the filing of the motion to dismiss, the District Court entered an order

dismissing the action on statute of limitations grounds.  Millen v. Kansas City Star, Case No. 08-

879 (SOW) (W.D. Mo. Feb. 9, 2009).  Given that the statutes of limitation and standards for

pleading defamation at issue in each of the above cases are substantially similar, if not identical,

to the Connecticut statutes of limitations and defamation laws applicable to the Millen Claims,

and that the facts and circumstances are identical in all relevant respects and not in dispute, this

Court is well-situated to similarly rule as a matter of law that the Millen Claims should be

disallowed and expunged.

### A.      THE MILLEN CLAIMS ARE TIME-BARRED

16.      The Complaint was not filed until November 17, 2008, more than ten (10)

years after the Courant published the article.  Under Conn. Gen. Stat. § 52-597, a cause of action

for libel must be brought within two (2) years from the date of the act complained of.[10]  Here, the

statute of limitations on the underlying action upon which Mr. Millen submitted the Millen

Claims ran over eight (8) years before the Complaint was filed; thus, the Millen Claims are time-

barred and should be disallowed on that basis.

17.      In the Complaint, Mr. Millen states that "The paper has misconstrued me

and with the statue of limitation being once you discovered, hopefully you will give me the right

to sue." Exhibit B, Complaint at 1.  However, the timing of Mr. Millen's discovery is

completely irrelevant, because Connecticut law provides that the statute of limitations on a claim

for libel runs from the date of publication, not discovery.  See L. Cohen and Co., Inc. v. Dun &

---

[10] To the extent Mr. Millen's allegations can be liberally construed to suggest the presence of a state law claim for
any other tort, any such claim is time-barred by the three-year statute of limitations for actions founded on a tort.
See Conn. Gen. Stat. § 52-577 (2005).

<u>Bradstreet, Inc.</u>, 629 F. Supp. 1425, 1428 (D. Conn. 1986) ("The "discovery" rule urged by the plaintiff is inconsistent with the express language of C.G.S. § 52-597, which requires that actions for libel or slander be brought "within two years from the date of the act complained of.""). The Complaint's assertion that "Tolling is an issue because it's been so long" (<u>Exhibit B</u>, Complaint at 1) is likewise without merit, since the applicable statute of limitations is equitably tolled only when a defendant has fraudulently concealed the existence of a cause of action from the plaintiff. <u>See</u> Conn. Gen. Stat. § 52-559 (2005). Here, Mr. Millen has not alleged any such fraudulent concealment; nor could he, as the Courant article was openly published.[11]

18.     Similarly, in Mr. Millen's suits against the Memphis <u>Commercial Appeal</u>, the <u>Kansas City Star</u>, and the <u>Tampa Tribune</u> for each of the articles published by those newspapers, the District Courts ruled on the same basis as the Debtors are urging here: that the applicable statute of limitations had long since run and tolling was unavailable. <u>See</u> <u>Millen v. The Commercial Appeal</u>, Case No 08-2732 (JDT) (W.D. Tenn. Feb. 11, 2009) (finding that the suit was filed nearly ten years after the publication and "the fact that Plaintiff may have only recently discovered the article on the internet does not save the action."); <u>Millen v. Kansas City Star</u>, Case No. 08-879 (SOW) (W.D. Mo. Feb. 9, 2009) (same); <u>Millen v. Tampa Tribune</u>, Case No. 09-1506 (RAL) (M.D. Fla. Aug. 7, 2009) (finding that the suit was time-barred and that Mr. Millen had alleged insufficient facts to justify tolling).

**B.     THE DEBTORS' DEFENSES ALSO REQUIRE THE MILLEN CLAIMS BE DISALLOWED**

19.     The fact that the Millen Claims are time-barred on their face makes it unnecessary for the Court to consider whatever the merits of the Claims may be. However,

---

[11] The Complaint's citation to the Supreme Court case of <u>Masson v. New Yorker Magazine</u>, 501 U.S. 496 (1991), for authority to bring the suit despite the expiration of the statute of limitations is unavailing. That case concerns defamation under California law, and does not address issues of either statutes of limitation or equitable tolling.

assuming arguendo that Mr. Millen's underlying Complaint for libel was timely brought, which it was not, the Millen Claims must nonetheless be disallowed because (i) they fail to state a claim for which relief can be granted, (ii) the article was substantially true; and (iii) the article is protected by the fair reporting privilege.

### i.    The Millen Claims Fail to State a Claim For Which Relief Can Be Granted

20.    The Connecticut Supreme Court has defined defamation as "the unprivileged communication of a false statement that tends either to harm the reputation of another by lowering him or her in the estimation of the community or to deter others from dealing or associating with him or her." Woodcock v. Journal Publishing Co., 646 A.2d 92 (Conn. 1990). The Millen Claims could not survive a motion to dismiss for failure to state a claim for which relief could be granted because the Courant made no defamatory statements concerning Mr. Millen and the Complaint identifies no harm to Mr. Millen that is attributable to the Hartford Courant article, as opposed to any other article published by the numerous other media outlets at the time, or to the general existence of the records discussed in the article.

21.    Mr. Millen concedes, as he must, that he was arrested and charged with "threats" and "unlawful entry", as described in the body of the article. The substance of the article, then, is entirely true, and not actionable. Rather, the Complaint focuses on the word "stalking" in the Courant article as the sole basis for the defamation cause of action. However, this characterization is either true or substantially true and likewise not actionable.

22.    Contemporaneous and subsequent news reports on the matter indicate that the both initial arrest warrant issued for Mr. Millen, and the charge he eventually pleaded guilty to in January 1999, related to an allegation of stalking. The second reproduced article attached to the Complaint, entitled "Former Hoya is Arrested", was published by the Memphis Commercial

12

<u>Appeal</u> and not by the <u>Hartford Courant</u>.[12]  However, the <u>Commercial Appeal</u> article cites the

same WTOP-AM radio report, and reports that "a warrant was issued Sept. 28 for Millen's arrest

on a charge of stalking after Thompson was unable to get Millen to stop harassing the coach and

his staff.  The warrant stated that Millen was upset over job opportunities that hadn't panned out,

and that Millen made 37 threatening phone calls to the university from February through

August."  <u>See</u> <u>Exhibit A</u>, Claim No. 526 at 7.  Moreover, later press reports indicate that Mr.

Millen ultimately pleaded guilty to one misdemeanor count of unlawful entry and to a

misdemeanor count of stalking and was sentenced to a six-month suspended sentence and two

years' probation.  <u>See</u> <u>Former Hoya Pleads Guilty Under Deal in Threat Case</u>, The Washington

Post, Jan. 29, 1999 at B02 (a copy of which is attached hereto as <u>Exhibit H</u>).  In return for the

plea, the threat charges were dropped against Mr. Millen.  <u>Id.</u>

      **ii.**       **The Article Was Substantially True and Not Actionable**

      23.      The Millen Claims must also be disallowed because the allegedly

defamatory statement that Mr. Millen was charged with "stalking" his former coach was

substantially true and is therefore not actionable.  Under the doctrine of substantial truth, it is not

necessary that the published words be literally true.  <u>See</u> <u>Finnelli v. Tepfer</u>, CV-07-5011659S,

2009 Conn. Super. LEXIS 1114 at *13 (Conn. Super. Ct., Apr. 24, 2009) (Gilardi, J.).  Even

assuming that Mr. Millen was not charged with the crime of "stalking" at the time the Courant

article was published, the inaccuracy is merely one "of a technical nature that conveyed the same

meaning as the true facts would have in the eyes of the average reader."  <u>Id.</u> at *11 (finding that

our First Amendment precedent merely requires the "gist" of the story to be true).  "[M]inor

---

[12] Nonetheless, both articles are representative of the numerous materially similar articles identified by the Debtors that were published by news outlets across the county at the time Mr. Millen was arrested in November 1998.  <u>See,</u> <u>also</u> <u>Ex-Hoya Threatens Coach Thompson</u>, The Washington Post; Nov. 5, 1998 at C02; <u>Former Georgetown player</u> <u>detained, reportedly for threatening coach</u>, The Associated Press (Wash., D.C.), Nov. 5, 1998.  A compendium of these articles and the other articles cited in this Objection will be submitted to the Court at its request.

errors that do not change a reader's perception of the statement do not make the statement actionable." Id. at *13-14.  The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced.  Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 113, 448 A.2d 1217 (Conn. 1982).

24.       Both common law and First Amendment jurisprudence submit the issue of substantial truth to the court as a matter of law when appropriate.  Mercer v. Cosley, 110 Conn. App. 283, 303 (2008); Finnelli, 2009 Conn. Super. LEXIS 1114 at *11.  "The author's job is not simply to copy statements verbatim, but to interpret and rework them into the whole . . . A fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts."  Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 321 (1984) (citations omitted; internal quotation marks omitted.).

25.       Based on the Complaint, Mr. Millen does not (and cannot) dispute that he in fact was charged by the District of Columbia police after making threatening phone calls to Mr. Thompson and unlawfully entering the campus.  Instead, he takes the untenable position that the Courant article was false and defamatory because the article summarized the charges of "threats" and "unlawful entry" as "stalking."  However, it is beyond reasonable dispute that a verbatim report of the language of the criminal charge would not have had a different effect on the reader than the language actually used in the article.  See Finnelli, 2009 Conn. Super. LEXIS 1114 at *18; Goodrich v. Waterbury Republican-American, Inc., 188 Conn. at 113.

26.       In the District of Columbia, as in most jurisdictions in the United States, stalking statutes specifically include within their purview, harassing or threatening phone calls. In fact, the District of Columbia has defined stalking as follows:

> Any person who on more than 1 occasion engages in conduct with
> the intent to cause emotional distress to another person or places
> another person in reasonable fear of death or bodily injury by

14

willfully, maliciously, and repeatedly following or harassing that person, or who, without a legal purpose, willfully, maliciously, and repeatedly follows or harasses another person, is guilty of the crime of stalking....

D.C. Code § 22-504 (1996). The statute defines the term "harassing" as follows:

For the purposes of this section, the term "harassing" means engaging in a course of conduct either in person, by telephone, or in writing, directed at a specific person, which seriously alarms, annoys, frightens, or torments the person, or engaging in a course of conduct either in person, by telephone, or in writing, which would cause a reasonable person to be seriously alarmed, annoyed, frightened or tormented.

D.C. Code § 22-504(e) (1996). Moreover, as discussed above, later press reports indicate that Mr. Millen eventually entered into a plea agreement with the prosecutor's office for a misdemeanor count of stalking, in return for having the two more serious threat charged dropped and other charges not pursued. See Former Hoya Pleads Guilty Under Deal in Threat Case, The Washington Post, Jan. 29, 1999 at B02 ("Millen, 25, pleaded guilty yesterday to one misdemeanor count of unlawful entry and to a misdemeanor count of stalking... In exchange for yesterday's guilty plea, prosecutors agreed to drop the threat charges and not to charge Millen with nine counts of contempt growing out of alleged violations of court orders that he have no contact with Thompson...."). Accordingly, in light of all of the facts and circumstances, the article must be considered accurate and complete or, at a minimum, a fair abridgment of the occurrence reported.

### iii.    The Article is Protected by the Fair Reporting Privilege

27.    Even if the Courant article was defamatory, which it is not, the fair reporting privilege protects "the publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern ... if the report is accurate and complete or a fair abridgment of the occurrence reported." Burton v. Am. Lawyer Media, Inc., 83 Conn. App. 134, 137-38 (2004) (citing 3

15

Restatement (Second), Torts, Report of Official Proceeding or Public Meeting, § 611, p. 297 (1977)). A newspaper report of an arrest, the criminal charge, and the contents of the arrest warrant or arrest report all fall within the scope of this privilege even if the article only captures the "gist" or the "sting" of the action, though not verbatim. See Finnelli, 2009 Conn. Super. LEXIS 1114, *18.

28.    The privilege can only be defeated if the defendant acted with malice. See Burton, 83 Conn. App. at 138. "Generally, the determination of whether the contents of a newspaper article are privileged as fair reporting is an issue of law." Id. at 138-39. The Millen Claims fall far short of stating facts sufficient to support the existence of malice on the part of the Courant, especially since the Courant article was but one of many substantially similar articles published across the nation at the time, based on wire service reports. The Complaint states only that "This would be a malicious and heinous writing because the charge is very heavy." See Exhibit B, Complaint at 1.

C.    **THE MILLEN CLAIMS ARE DUPLICATIVE**

29.    The Debtors do not believe that any of the Millen Claims have substantive merit, under the applicable law and facts, as discussed in detail above. However, the four Millen Claims represent claims for the same alleged liability, in the same amount, and by the same creditor.[13] It is axiomatic that the Debtors are not required to pay any claimant more than once on the same obligation or debt, and the failure to disallow at least three of the four Millen

---

[13] Two of the Millen Claims, Claim Nos. 526 and 688 are "exact duplicates", while the remaining Millen Claims are variously asserted against Tribune Company and/or The Hartford Courant Company. Pursuant to Local Rule 3007-1(d)(i), claims filed against two different Debtors are not "duplicate claims" subject to non-substantive omnibus objections, unless the cases are substantively consolidated. Accordingly, the Debtors have brought this Objection as a substantive objection.

Claims, to the extent they are duplicative, would result in Mr. Millen receiving an unwarranted recovery against the Debtors' estates, to the detriment of other creditors in these cases.[14]

30.    Accordingly, for these cumulative reasons, the Millen Claims are not allowable claims and are not entitled to any distribution in these chapter 11 cases. The Debtors object to the allowance of the Millen Claims and request that they be disallowed in their entirety and expunged. The Debtors also request that the Court authorize the Claims Agent to expunge the Millen Claims from the Claims Register as sought by this Objection so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

## NOTICE

31.    Notice of this Objection has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Kevin Millen; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

32.    As noted herein, the Debtors previously objected to Claim No. 688 in the Debtors' Fourth Omnibus Objection (Non-Substantive) to Claims on the basis that it was an "exact duplicate" of Claim No. 526 [Docket No. 2095]; however, the Debtors withdrew that objection only as it related to Mr. Millen's Claim No. 688, without prejudice. (See Notice of Withdrawal of Objection to Claim 688, Without Prejudice, filed October 2, 2009 [Docket No.

---

[14] The only Millen Claim properly asserted against The Hartford Courant Company, which is the Debtor named in the underlying Complaint, is Claim No. 1118. At minimum, the Debtors request that this Court disallow and expunge Claim Nos. 526, 688, and 1105 as duplicative claims.

46429/0001-6747611v1

2263]; Certification of Counsel, filed October 2, 2009 [Docket No. 2264].) Subject to the

foregoing, no previous or other application for the relief sought herein has been made to this

Court or to any other court.

      WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

that the Court enter an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy

Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Millen Claims;

(ii) directing the Claims Agent to expunge the Millen Claims from the Claims Register; and

(iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      May 17, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

46429/0001-6747611v1