## **EXHIBIT A**

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

## Responses To Objections to Disclosure Statement and Solicitation Procedures Motion[1]

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| 1. | U.S. Trustee | 4424 | 1. The Plan includes impermissible discharge, exculpation, injunction, release, and indemnity provisions. | 1. The U.S. Trustee will not be pursuing these issues in connection with the DS Hearing. Instead, the U.S. Trustee intends to object to these provisions in connection with Plan confirmation. |
|  |  |  | 2. The election respecting third party releases should either be entirely separated from the voting process or, alternatively, rejecting creditors should not have the option to grant such releases. | 2. The opt-out releases contained on the ballots conform with well-established case law and are entirely consistent with this Court's recent opinion in Spansion. Indeed, the form of opt-out releases here are identical in all material respects to those approved by this Court in Spansion. |
|  | U.S. Trustee | N/A (Informal Objections) | 1. The DS should be amended to include the following items:<br>a. language clarifying the circumstances under which the DS shall not constitute or be construed as an admission of any fact or liability stipulation or waiver;<br>b. further information regarding the confidentiality concerns related to the request that the Settlement Support Agreement not be disclosed;<br>c. language clarifying the aggregate additional consideration to be provided pursuant to the Global Settlement to the Holders of Senior Noteholder Claims, Other Parent Claims and General Unsecured Claims;<br>d. a description of the limited voting rights associated with the New Class B Common Stock;<br>e. a more detailed description of the use of the Senior Loan Agreement proceeds;<br>f. a statement specifying the statutory termination of exclusivity;<br>g. additional information on the types of Restructuring Transactions contemplated by the Plan;<br>h. additional disclosure concerning the terms of the Equity Incentive | a. The Debtors are modifying the provision at issue to clarify that, subject to applicable Third Circuit case law, the DS shall not constitute or be construed as an admission of any fact or liability stipulation or waiver.<br>b. The Debtors are modifying the DS to reflect that the Settlement Support Agreement has been filed with the Bankruptcy Court.<br>c. The Debtors are modifying the DS to clarify that the Debtors value the aggregate additional consideration to be provided to Holders of Senior Noteholder Claims, Other Parent Claims and General Unsecured Claims against the Filed Subsidiary Debtors pursuant to the Global Settlement at more than $510 million.<br>d. Article IX.G.2 of the DS contains a fulsome description of the voting rights associated with the New Class B Common Stock. Additionally, the Debtors are modifying the DS to add a cross reference directing the reader to such discussion.<br>e. The Debtors will add additional disclosure regarding the use of the Senior Loan Agreement proceeds.<br>f. The Debtors will add additional disclosure specifying the statutory termination of exclusivity.<br>g. The Debtors will add additional disclosure concerning the types of Restructuring Transactions contemplated by the Plan.<br>h. The Debtors will address the inclusion in the Plan of |

---

[1] The Debtors' responses are not intended to convey that the corresponding Objection is properly brought pursuant to section 1125 of the Bankruptcy Code, or that such Objections should be considered in advance of the Confirmation Hearing. The Objections are listed in descending order.

[2] Blacklined copies of the Plan and Disclosure Statement (the "DS") showing changes from the versions filed on April 12, 2010, will be filed with the Court. The Response, filed concurrently with this chart, provides more fulsome responses to certain of the Objections. Capitalized terms used but not defined herein shall have the meanings given to them in the Plan, the Response, or the applicable Objection.

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | Plan; | the TMIP and the KOB prior to the hearing on approval of the Disclosure Statement. |
| | | | i. additional disclosure regarding contributions to the Debtors' Multiemployer Pension Plans. | i. The Debtors are adding additional disclosure regarding historical contribution information for the Debtors' multiemployer pension plans. |
| | | | j. information providing the full names of the unions representing Debtors' employees. | j. The Debtors are adding an exhibit to the DS setting forth the full names of the unions representing the Debtors' employees as well as the full names of the collecting bargaining agreements to which the debtors are party. |
| | | | k. additional information concerning the tax liability stemming from the Cubs disposition; and | k. The Debtors anticipate supplementing the DS to provide additional disclosure regarding the tax implications of the Cubs disposition. |
| | | | l. additional information relating to the reasonableness of the settlement of claims related to the Debtors' the Leveraged ESOP Transactions. | l. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors will supplement this description by providing access to additional materials relevant to the settlement, including (i) the Offer to Purchase filed by Tribune with the FCC in connection with the Leveraged ESOP Transactions, which sets forth a detailed description of the Leveraged ESOP Transactions and a description of the definitive documents entered in connection therewith and (ii) the Examiner's report reflecting the results of the Examiner's investigation of the asserted LBO-Related Causes of Action, which the Debtors anticipate making available on the website of the Debtors' voting agent no later than July 12, 2010. In addition, the Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 2. The DS should include more information relating to the Debtors' evaluation of the claims and causes of action that may be asserted, and the viability of any defenses to those claims, in connection with the Leveraged ESOP Transactions. | 2. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors will supplement this description by adding language to the DS directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be |

## RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | | available on that website no later than July 12, 2010. The Examiner's report will evaluate, among other things, the potential claims and causes of action held by the Debtors' estates that are asserted by certain parties in connection with the Leveraged ESOP Transactions. |
| | | | 3. The Plan should be revised to provide for the Plan Supplement to be filed no later than July 15, 2010. | 3. The Plan will be revised to provide for the Plan Supplement to be filed no later than July 15, 2010. |
| 2. | Wilmington Trust Company, as Indenture Trustee for the PHONES Notes | 4385 | 1. The DS Hearing should be adjourned so that the DS can be revised to incorporate the Examiner's report. | 1. The Debtors will amend the DS to include language directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be available on that website no later than July 12, 2010. In addition, for the reasons set forth in the Response, adjourning the DS hearing is unwarranted. |
| | | | 2. The DS Hearing should be adjourned while certain FCC issues are resolved. | 2. The arguments raised by Wilmington Trust relate to alleged Plan deficiencies and are therefore Plan confirmation objections. Moreover, as set forth in more detail in the Response, these arguments are inaccurate in substance and misconstrue the law relating to FCC approvals. |
| | | | 3. The DS presents the global settlement and the discussion of the LBO-Related Causes of Action from the Debtors' viewpoint and does not present alternative viewpoints. | 3. The Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 4. If no adjournment is granted, the solicitation package should include a letter from Wilmington Trust addressing Wilmington Trust's concerns. | 4. The Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement, including Wilmington Trust, to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 5. The DS should be supplemented to include the following:<br>a. information concerning the value of the Subsidiary Non-Debtors;<br>b. information concerning the value of the Chapter 5 avoidance claims against Morgan Stanley;<br>c. information concerning the value of the other Chapter 5 avoidance claims at the parent company level that are to be released under the Plan;<br>d. information concerning the meaning of the Restructuring | a. The Debtors will amend the DS to provide a additional disclosure concerning the portion of Distributable Value attributable to the Subsidiary Non-Debtors.<br>b. The Debtors will amend the DS to provide additional disclosure concerning the Morgan Stanley Swap Agreement.<br>c. The Debtors will amend the DS to include additional disclosure regarding the Debtors' analysis of certain prepetition payments and transfers made by Tribune for potential avoidance as preferential payments under Chapter 5 of the Bankruptcy Code.<br>d. The Debtors will amend the DS to provide |

-3-

## RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | Transactions that are to be approved under the Plan; | additional disclosure concerning the Restructuring Transactions. |
| | | | e. a statement that the third party releases on the ballot seek to enjoin third party claims regardless of whether a voter chooses to opt out on the ballot; | e. Multiple provisions of the DS clearly state the conditions under which parties will be deemed to grant the releases set forth in the Plan. Nevertheless, the Debtors will add additional disclosure pertaining to the releases provided pursuant to the Plan. |
| | | | f. information concerning which parties are being released from estate and third party liability, their relationship to the Debtors and the LBO, and what consideration they are giving for such releases; and | f. Multiple provisions of the DS clearly state the conditions under which parties will be deemed to grant the releases set forth in the Plan. Nevertheless, the Debtors will add additional disclosure pertaining to the releases provided pursuant to the Plan. |
| | | | g. the anticipated management incentive programs and the reason for such programs. | g. The Debtors will address the inclusion in the Plan of the TMIP and the KOB prior to the hearing on approval of the Disclosure Statement. |
| | | | 6. The DS and Solicitation Motion should specify whether Wilmington Trust should vote or file a 3018 motion respecting its claim for compensation and indemnity as Indenture Trustee. | 6. The Debtors have addressed this issue and clarified their position in the Response. |
| | | | 7. The Solicitation Motion does not address possible "aiding and abetting" claims that Wilmington Trust believes it could have against Subsidiary Non-Debtors. | 7. Any such claims against Subsidiary Non-Debtors that become parties to a Prepackaged Plan would be Securities Litigation Claims and hence not entitled to vote on the Plan. |
| | | | 8. The Solicitation Motion (which purports to distribute Class B shares in lieu of Class A shares) requests Plan related relief that is inappropriate prior to the Confirmation Hearing. | 8. Wilmington Trust lacks standing to raise this objection as it will receive neither Class A nor Class B shares under the Plan. However, the Debtors have proposed modifications to the form of order to address this objection. |
| | | | 9. Wilmington Trust should be a notice party for objections and other filings and mentioned in notices, "tombstone" ads, etc. | 9. Wilmington Trust is a representative of creditors that apparently intends to object to confirmation of the Plan and, accordingly, will receive all notices, objections, etc., via electronic means as soon as they are filed with the Court. |
| 3. | County of San Bernardino, California, a California Taxing Authority | 4383 | 1. The DS does not state the applicable interest rate for and the lien retention of San Bernardino's secured tax claim. | 1. This is a Plan confirmation objection. Nevertheless, to clarify the treatment of San Bernardino's claim under the Plan, the Debtors will amend the Plan to provide that "Other Secured Claims" do not include "Priority Tax Claims" and that "Priority Tax Claims" expressly include any "secured or unsecured Claims" of a governmental unit entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. The Plan currently provides that, if so entitled, Holders of Priority Tax Claims such Claims shall receive interest at a rate determined under section 511 of the Bankruptcy Code. |
| 4. | Wells Fargo | 4382 | 1. The settlement suffers from infirmities that make the Plan patently | 1. Wells Fargo provides no support for its contention |

-4-

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | Bank N.A.'s, as administrative agent for the Bridge Loans | | unconfirmable including (i) allocating the entire burden of settling on the Bridge Lenders, (ii) disparate recoveries among the LBO lenders, (iii) improper classification of the Bridge Lenders in the same class as the other LBO-related obligations thus disenfranchising them, and (iv) effectively wiping out the Bridge Lenders without contribution from other parties. | that these objections render the Plan patently unconfirmable other than a passing reference in the introduction to its Objection. These issues are confirmation objections; they do not render the Plan patently unconfirmable and will be addressed by the Debtors at the Confirmation Hearing. |
| | | | 2. The DS should include the following concerning the LBO (i) the material terms of the primary deal documents; (ii) a flowchart showing the source and use of funds; (iii) disclosure of the parties who provided funding and received payments in connection; (iv) balance sheets before and after each purported phase of the LBO; (v) disclosure of projections prepared by and for the Company showing basic financial assumptions and anticipated liquidity; (vi) a description of the Company's financial performance after the LBO and an explanation of the variance from the projections made in connection with the LBO; and (vii) disclosure of LBO-related advisors and their fees. | 2. The Debtors will provide access to additional materials relevant to the Leveraged ESOP Transactions, including (i) the Offer to Purchase filed by Tribune with the FCC in connection with the Leveraged ESOP Transactions, which sets forth a detailed description of the Leveraged ESOP Transactions and a description of the definitive documents entered in connection therewith and (ii) the Examiner's report reflecting the results of the Examiner's investigation of the asserted LBO-Related Causes of Action, which the Debtors anticipate making available on the website of the Debtors' voting agent no later than July 12, 2010. |
| | | | 3. The DS should include a discussion of the LBO-Related Causes of Action against each potential defendant, an assessment of the LBO-Related Causes of Action, and a discussion of potential defenses. | 3. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. The Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions. In addition, the Debtors will amend the DS to include language directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be available on that website no later than July 12, 2010. The Examiner's report will evaluate, among other things, the potential claims and causes of action held by the Debtors' estates that are asserted by certain parties in connection with the Leveraged ESOP Transactions. |
| | | | 4. The DS should include the potential outcomes of the LBO-Related Causes of Action including (i) expected recoveries, (ii) potential consequences of avoidance actions and disgorgement, (iii) impact on stakeholder recoveries at the parent/subsidiary levels, and (iv) the possible time and expense of each litigation scenario. | 4. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors will supplement this description by providing access to additional materials relevant to the settlement, including (i) the Offer to Purchase filed by Tribune with the FCC in connection with the Leveraged ESOP Transactions, which sets forth a detailed description of the Leveraged ESOP Transactions and a description of the definitive documents entered in connection therewith and (ii) the |

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | | Examiner's report reflecting the results of the Examiner's investigation of the asserted LBO-Related Causes of Action, which the Debtors anticipate making available on the website of the Debtors' voting agent no later than July 12, 2010. In addition, the Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 5. The DS should include the terms of the settlement with the potential results from litigating the LBO-Related Causes of Action. | 5. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors will supplement this description by providing access to additional materials relevant to the settlement, including (i) the Offer to Purchase filed by Tribune with the FCC in connection with the Leveraged ESOP Transactions, which sets forth a detailed description of the Leveraged ESOP Transactions and a description of the definitive documents entered in connection therewith and (ii) the Examiner's report reflecting the results of the Examiner's investigation of the asserted LBO-Related Causes of Action, which the Debtors anticipate making available on the website of the Debtors' voting agent no later than July 12, 2010. In addition, the Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 6. The DS needs separate valuations of each Debtor and the allocation of value, with support, between the enterprise, Tribune, and its subsidiaries. | 6. The Debtors have provided Wells Fargo's financial advisors with, among other things, the allocation of Distributable Value by entity (including an explanation of the rational for such allocation). |
| | | | 7. The DS needs more disclosure concerning the claims pool and the treatment of the intercompany claims. | 7. The Debtors have provided Wells Fargo's financial advisors with substantial information to allow them to form an independent assessment of the intercompany claims and the recoveries under the Plan including but not limited to (a) entity by entity intercompany balances as of the Petition Date, (b) memoranda and exhibits providing information and analysis of major components of the balances, (c) the allocation of |

-6-

## RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | | Distributable Value by entity (including an explanation of the rational for such allocation), and (d) an Excel based model showing how the value at each entity is used to pay claims, including intercompany claims, and such value flows through the corporate structure and results in a split of the Total Distributable Value of 91.2% to the various subsidiaries and 8.8% to Tribune Company. |
| | | | 8. The DS should include the reasons for classifying the Bridge Loan and Senior Lenders Claims together. | 8. These are Plan confirmation objections, which may be raised at the Confirmation Hearing. |
| | | | 9. The DS should include justification for the guarantor non-Debtor releases and the settlement releases. | 9. These are Plan confirmation objections, which may be raised at the Confirmation Hearing. The Debtors will amend the DS, however, to provide additional disclosure concerning the releases. |
| | | | 10. The DS should disclose that the settlement disproportionately affects certain creditors and the reasons for this disparate treatment. | 10. These are Plan confirmation objections, which may be raised at the Confirmation Hearing. |
| | | | 11. The DS Hearing should be adjourned so that the DS can be revised to incorporate the Examiner's report. | 11. The Debtors will amend the DS to include language directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be available on that website no later than July 12, 2010. Moreover, for the reasons set forth in the Response, adjourning the DS hearing is unwarranted. |
| 5. | Deutsche Bank Trust Company of Americas, as Indenture Trustee under the 1992, 1995, and 1997 Indentures. | 4378 | 1. The DS should contain information about the appointment of the Examiner, the scope of his investigation, and how to view the report prior to voting. | 1. The Debtors will amend the DS to include additional disclosure regarding the scope of the Examiner's investigation. In addition, will amend the DS to include language directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be available prior on that website no later than July 12, 2010. |
| | | | 2. The DS should contain additional information on the schedule on page 31 including (i) which Indenture governs the Senior Note, (ii) the CUSIP numbers, and (iii) that the filed proofs of claim are different from the amounts in the DS. | 2. The DS identifies the Indenture under which each Senior Note is issued. The Debtors will amend the relevant DS provision to include the appropriate CUSIP numbers. The Debtors have will also add additional disclosure to clarify that the amounts listed on page 31 of the DS are *principal* amounts, do not include any interest or fees, and do not purport to represent the Allowed amount of the Senior Noteholder Claims. |
| | | | 3. The DS provides only the Debtors' viewpoint on the LBO-Related Causes of Action and does not provide adequate information concerning potential recoveries. The settlement section should be modified to include the views of the Committee, JPMorgan Chase, other Senior Lenders, and Law Debenture. | 3. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors have invited those parties objecting to the adequacy of disclosure concerning the |

-7-

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | | LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 4. The DS should provide the record date will be for distributions to Senior Notes. | 4. This is a Plan confirmation objection. Nevertheless, the Debtors will amend the Plan to provide that, unless otherwise set forth in the Confirmation Order, a record date shall not be established for the Senior Noteholder Claims and that the Debtors shall instead rely upon a "mandatory exchange" through DTC, if applicable, or a surrender of the Senior Notes. |
| | | | 5. The Plan and DS should note the Disbursing Agent will distribute New Common Stock and New Senior Secured Term Loan to Class 1D. | 5. This is a Plan confirmation objection. Nevertheless, the Debtors will amend the Plan to provide that, unless the distributions of New Common Stock and New Senior Secured Term Loan to Holders of Senior Noteholder Claims are made through DTC that they shall be made by the Disbursing Agent. |
| | | | 6. The Plan and DS should specify how distributions will be made to parties who hold obligations directly (and not through DTC). | 6. This is a Plan confirmation objection. Nevertheless, the Debtors will amend the Plan to clarify the mechanic for distributions to parties that hold Senior Noteholder Claims directly. |
| | | | 7. The DS provides an inadequate discussion with respect to the cancellation of indentures and the discharge of Deutsche Bank as Trustee. | 7. The Debtors have made clear in the DS that upon cancellation of the Indentures that the Indenture Trustee shall be relieved of its obligations. |
| | | | 8. The DS and Plan should address the disparate treatment of Class 1D creditors from the payment of the Lender Fees, Senior Lender Settlement Fees, Creditors Committee Member Fees, and Senior Noteholders Fee/Expense Claims (including the fees of Law Debenture). | 8. This is a Plan confirmation objection, which may be raised at the Confirmation Hearing. |
| 6. | Department of Labor ("DOL") | 4377 | 1. The DS should address how creditors will be affected by the third party releases in Article XI of the Plan. | 1. This is a Plan confirmation objection, which may be raised at the Confirmation Hearing. However, the Debtors will add additional information to the DS to address the DOL's concerns. |
| | | | 2. The DS should disclose the DOL's belief that proposed third party releases are barred by § 524(e) and make the Plan unconfirmable. | 2. These are Plan confirmation objections, which may be raised at the Confirmation Hearing. |
| | | | 3. The voting procedures should be revised to allow accepting creditors and deemed accepting creditors to opt out of the third party releases. | 3. The opt-out mechanisms for the third party releases provide for consensual releases that are identical in all relevant respects to those approved by the Court in Spansion and otherwise conform with prevailing case law. |
| | | | 4. The DS and Plan should narrow the Supplemental Injunction in § 11.4.1, which enjoins creditors who opted out of the releases from pursuing claims against the Released Parties. The following language should be added to Article XIV, entitled Risks Factors, of the DS: "Certain Holders of a Claim have asserted that the releases and related injunctive relief provided in Article XI of the Plan are not permissible. The Bankruptcy Court may find that such releases must be modified in order for the Plan to be confirmed." | 4. This is a Plan confirmation objection. Nevertheless, the Debtors will modify Section 11.4 of the Plan to clarify that it only pertains to "Released Claims" under the Plan. In addition, the Debtors will add a disclosure to the Risk Factors in the DS to address the DOL's concerns. |

-8-

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | 5. The DS should reflect the DOL's belief that ERISA claims are improperly subordinated pursuant to 510(b) that if § 510(b) can be used to subordinate ERISA claims, such ERISA claims are improperly subordinate to equity interests in the Subsidiary Debtors. | 5. These are Plan confirmation objections. Nevertheless, the Debtors will amend the Plan to carve-out ERISA claims from the definition of "Securities Litigation Claim" if there has been a judicial determination by Final Order that any such claim is not subject to subordination under section 510(b) of the Bankruptcy Code. In addition, the Plan does not seek to subordinate ERISA claims to equity interests at the Filed Subsidiary Debtors and the Debtors will modify Section 3.3.7(b) of the Plan to provide the basis upon which such interests are being Reinstated. |
| | | | 6. The DS should include an explanation of the specific relief the Debtors may seek pursuant to section 6.8 of the Plan. | 6. Section 6.8 of the Plan, which is also set forth in Article IX.H.8 of the DS, sets forth certain legal determinations relating to the contemplated treatment of the ESOP under the Plan that the Debtors may seek in their sole discretion. The Debtors believe the list is sufficiently descriptive of the nature of the determinations that the Debtors may choose to seek from the Court and provides as much specificity as the Debtors are able to provide at this time. In the event the Debtors elect to pursue any such findings they will provide such notice as is required under applicable law and the Court's procedures. |
| | | | 7. The DS should explain why they should be released from ongoing fiduciary, reporting, and postpetition ERISA obligations. | 7. This is a Plan confirmation objection, which may be raised at the confirmation hearing. The DOL has not articulated in its objection its basis for concluding that ERISA claims are subject to the Plan's exculpation provision, or that this provision is inconsistent with or overrides any limitations on exculpation set forth under ERISA. Moreover, the Debtors submit that the Plan's exculpation provision is customary in chapter 11 cases of this type and shall be prepared to address any objections to such provision at the Confirmation Hearing. |
| | | | 8. The DS should include the estimated costs for the assumption of the indemnification obligations contained in section 11.7 of the Plan and the reasons for the assumption rather than allowing extinguishment through §502(e)(1)(B). | The indemnity provisions of the Plan are customary for Plans of this type. In any event, the claims that could result in larger costs are being released pursuant to the Plan. |
| 7. | Credit Agreement Lenders, (Bennett Group) | 4376 | 1. The DS should include additional information regarding the nature of the LBO-Related Causes of Action, including with respect to the following points (a) the facts necessary to prevail on the claims; (b) the DS should describe what plaintiffs must prove for a material recovery; and (c) the DS should explain the alleged bases for and the relative strengths and weaknesses of the claims. | 1-5. Article VII of the DS sets forth a description of the settlement of claims related to the Leveraged ESOP Transactions. Though the Debtors believe this description provides adequate information regarding the settlement of claims related to the Leveraged ESOP Transactions, the Debtors will supplement this |

# RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | 2. The DS should include additional information regarding Subsidiary Guarantors, such as: (a) why the subsidiary guarantees' viability is critical; (b) whether Tribune creditors can prosecute, or benefit from, avoidance actions on behalf of the subsidiaries; and (c) challenges to avoidance of the subsidiary guarantees. | description by providing access to additional materials relevant to the settlement, including (i) the Offer to Purchase filed by Tribune with the FCC in connection with the Leveraged ESOP Transactions, which sets forth a detailed description of the Leveraged ESOP Transactions and a description of the definitive documents entered in connection therewith and (ii) the Examiner's report reflecting the results of the Examiner's investigation of the asserted LBO-Related Causes of Action, which the Debtors anticipate making available on the website of the Debtors' voting agent no later than July 12, 2010. In addition, the Debtors have invited those parties objecting to the adequacy of disclosure concerning the LBO-Related Causes of Action and the proposed settlement to provide their own written submissions, which the Debtors will endeavor to include in the DS. |
| | | | 3. The DS should further discuss the independence of the Tender Offer and Merger. | |
| | | | 4. The Plan and DS should include relevant facts for consideration of the Plan and the proposed settlement, including: (a) describing the sale and auction process and the potential relevance of bids received in the LBO and that the ESOP and Tender Offer were the result of a year-long auction process; (b) explaining that even if plaintiffs prevailed in avoiding the Credit Agreement debt used to fund the tender offer as a fraudulent transfer, the Debtors would still total $3 billion plus; (c) explaining that the ESOP resulted in a present value of tax savings of $1 billion plus; and (d) disclosing that 546(e) of the Bankruptcy Code poses a hurdle to recovery of the alleged fraudulent conveyance claims. | |
| | | | 5. The DS should provide additional information on the releases, indemnities, and contributions to the settlement, including (a) how the global settlement was derived or how it is justified or appropriate; (b) the implications of the significance of the more than $2 billion paid to third parties in connection with the Leveraged ESOP Transactions exceeds $2 billion; (c) the nature of the claims against Zell, the Chandler Trusts, McCormick Foundation, Cantigny Foundation, and their principal advisors, and how the settlement takes these claims into account; and (d) the releases provided to certain parties. | |
| | | | 6. The DS should mention the appointment of the Examiner and the scope of issues to be investigated. | 6. The Debtors will amend the DS to include language directing interested parties to the website of the Debtors' voting agent to review the Examiner's report, which should be available on that website no later than July 12, 2010. In addition, for the reasons set forth in the Response, adjourning the DS hearing is unwarranted. |
| | | | 7. The releases (i) attempt to coerce creditors from opting out by providing that any creditor who fails to give a release shall not receive the benefit of the releases and (ii) provide disparate and unequal treatment to members of the same class that are contributing equally to the proposed settlement. | 7. This is a Plan confirmation objection, which may be raised at the Confirmation Hearing. |
| | | | 8. The DS should disclose the terms of the New Senior Secured Term Loan, such as the interest rate, rate of amortization, and collateral. | 8. Additional information with respect to the New Senior Secured Term Loan will be provided with the Plan Supplement. |
| | | | 9. The DS should estimate the total cash liability of the Other Parent Claims. | 9. The Debtors will amend the Disclosure Statement to provide additional disclosure regarding the cash liability of the Other Parent Claims. |
| | | | 10. The DS should describe the nature of the Retiree Claim Settlements. | 10. The Debtors will add additional disclosure to the DS setting forth the salient terms of the Retiree Claim |

-10-

## RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| | | | | Settlements. |
| | | | 11. The DS should provide additional information regarding the TMIP and KOB. | 11. The Debtors will address the inclusion in the Plan of the TMIP and the KOB prior to the hearing on approval of the Disclosure Statement. |
| 8. | ACE American Insurance Company (the "ACE Objection") | 4373 | 1. The DS should provide disclosure regarding the treatment of ACE's claims, secured by various Letters of Credit (as defined in the ACE Objection) such that ACE can determine if such claims are Secured or General Unsecured Claims, and the Plan and DS should provide that ACE's claims shall be deemed (i) Secured Claims to the extent secured by Letters of Credit and (ii) General Unsecured Claims as to the remaining balance thereof, if any. | 1-3. The Debtors will amend the DS to include additional disclosure relevant to ACE's Objection. |
| | | | 2. The Plan and DS should state whether the ACE Insurance Program will be assumed, and the cure provision (which provides a cure amount of zero dollars) is inadequate. | |
| | | | 3. The Plan and DS should provide that ACE's claims arising under the ACE Insurance Program shall (i) be Allowed Administrative Expense Claims; (ii) be due and payable without ACE filing claims, motions, proofs of claim, cure claims, or objections to cure claims; (iii) not be discharged or released by the Plan or Confirmation Order; and (iv) remain secured by the Letters of Credit and other collateral provided by the Debtors. | |
| 9. | Crabhouse Plaintiffs | 4368 | 1. The DS should specify that (i) New York Circulation Action defendant Hoy Publications LLC has admitted to the alleged fraud and that such claims cannot be discharged in bankruptcy and (ii) that incorrectly identifies Tribune ND as a defendant in the Circulation Action and fails to identify Newsday, Inc., a defendant in the New York Circulation Action. | 1. The Debtors will amend the DS to include additional disclosure relevant to this Objection. |
| 10. | Virginia W. Thomson | 4348 | 1. Ms. Thomson requests payment of her claim in the principal amount of $5,035 plus her accrued interest in the amount of $652.81. | 1. Ms. Thomson's objection does not relate to the DS and is more properly addressed through the claims reconciliation process. |
| 11. | Robert Henke | 4310 | 1. The DS should estimate the Allowed Claims in Classes 2E-111E and state that the $150 million reserved for distribution to the Allowed Claims in Classes 2E-111E is inadequate. | 1. The Debtors will amend the DS to include additional disclosure regarding outstanding litigation claims against the Debtors. |
| | | | 2. The Debtors' estimate with respect to Allowed Claims in Classes 2E-111E violates the intent of bankruptcy law by discounting penalties for negligence or malice when there are other options. | 2. This is a Plan confirmation objection, which may be raised at the Confirmation Hearing. |
| 12. | Maureen Dombeck | 4154 | 1. Ms. Dombeck challenges the Debtors' objection to her claim in the amount of $50,000. | 1. Ms. Dombeck's objection does not relate to the DS and is more properly addressed through the claims reconciliation process. |
| 13. | Kevin Millen | 4153 | 1. Mr. Millen requests administrative payment for damages arising from an alleged slander of Mr. Millen that appeared in certain of the Tribune Company's newspapers in the amount of $1 million plus 15% of the equity in Tribune Company and a $6,500 monthly check. As alternative compensation, Mr. Millen requests the opportunity to purchase the Tribune Company free and clear of all other interests for $1.00. | 1. Mr. Millen's objection does not relate to the DS and is more properly addressed through the claims reconciliation process. |
| 14. | Dilip K. Patel | 4403 | 1. Mr. Patel informed the Debtors, via a faxed letter, that he is the owner of a corporate bond and that he objects to the DS generally. | 1. Mr. Patel's objection does not relate to the DS and is more properly addressed through the claims |

-11-

## RESPONSES TO OBJECTIONS TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

| Item No. | Objecting Party | Docket No. | Objections | Proposed Resolution/Response[2] |
|---|---|---|---|---|
| 15. | Morgan Stanley & Co. | N/A, Informal | 1. The Plan's provisions concerning the Debtors' retention of the Morgan Stanley Claims should clarify that the Debtors are not seeking to retain LBO-Related Causes of Action against Morgan Stanley. | reconciliation process.<br><br>1. This is a Plan confirmation objection. Nevertheless, the Debtors will modify the Plan's definition of "Morgan Stanley Claims" to not include LBO-Related Causes of Action. |
| 16. | Longacre | N/A, Informal | 1. The Plan should clarify when distributions are to be made to Holders of Disputed Claims that are Allowed after the Effective Date.<br><br>2. The Plan should provide for interim "catch-up" payments from the Subsidiary GUC Reserve(s). | 1. This is a Plan confirmation objection. Nevertheless, the Debtors will modify Section 7.1 of the Plan to clarify when distributions shall be made to Holders of such Claims.<br><br>2. This is a Plan confirmation objection. Nevertheless, the Debtors will modify Section 7.2.2(b) of the Plan to provide for interim "catch-up" payments from the Subsidiary GUC Reserve(s), if any, under certain circumstances. |
| 17. | Centerbridge | N/A, Informal | 1. Section 13.9 of the Plan pertaining to Centerbridge's consent rights should be modified. | 1. This is a Plan confirmation objection. Nevertheless, the Debtors will modify Section 13.9 of the Plan in the manner requested by Centerbridge. |