# **EXHIBIT D**

*Submissions by Certain Interested Parties Regarding the
Leveraged ESOP Transactions*

# STATEMENT OF SETTLEMENT SUPPORTERS RECOMMENDING THAT HOLDERS OF SENIOR LOAN CLAIMS, SENIOR NOTEHOLDER CLAIMS AND OTHER PARENT CLAIMS VOTE TO ACCEPT THE PLAN[1]

The Settlement Supporters comprise a cross section of creditors of Tribune, including two of the three largest Senior Lenders, another significant Senior Lender, the single largest holder of Senior Notes and the successor indenture trustee for certain of the Senior Notes. The LBO-Related Causes of Action seek recoveries from the Senior Lenders and others who participated in the Leveraged ESOP Transactions for the benefit of the Senior Notes and other general unsecured creditors of Tribune. Any ruling on such claims, whether for or against the Debtors' estates, would be adverse to some of the Settlement Supporters and favorable to others. It is therefore significant that, after many months of investigations and difficult negotiations, the Settlement Supporters have mutually agreed that the settlement of the LBO-Related Causes of Action (the "Proposed Settlement") proposed under the Plan is fair and reasonable in light of the risks to all parties, and the massive expense and delay that further litigation would entail.

### A. Investigations and Proposed Settlement

The Debtors, the Creditors' Committee (represented by special litigation counsel hired for such purpose), the Settlement Supporters and numerous other parties have painstakingly investigated the LBO-Related Causes of Action. More than 3.7 million pages of documents have been produced and reviewed by various parties and several depositions were taken. Despite this exhaustive and very expensive review and many months of hard-fought negotiations, the Settlement Supporters continue to disagree regarding the merits of the LBO-Related Causes of Action. The Settlement Supporters do agree, however, that the issues are complex and highly dependent on factual and legal matters as to which the outcome at trial could not be predicted with certainty. In light of each party's view of the litigation uncertainties and the clear and substantial savings in terms of cost and time value of money that will be realized for the estates and ultimately their creditors through a prompt resolution of the issues, the Settlement Supporters have concluded that there is an overlap between what the Senior Lenders should be willing to pay in light of their post-investigation view of the merits of the litigation and to minimize cost and delay and what the estates and their unsecured creditors should be willing to accept in settlement of the LBO-Related Causes of Action in light of their post-investigation view of the merits of the litigation and to minimize cost and delay. The Settlement Supporters believe that a fair and reasonable settlement that avoids what could be years of protracted, prohibitively expensive and value destroying litigation will be beneficial to all parties as the best means of preserving and fairly allocating the value of Tribune and its subsidiaries and thus is the best outcome possible for parties in interest in these cases.

### B. Certain Objections Relevant to Evaluation of the Proposed Settlement

To understand the Settlement Supporters' position regarding the Proposed Settlement, it is helpful to consider the diametrically opposed objections to the Proposed Settlement articulated by the so-called Credit Agreement Lenders, who believe the Proposed Settlement is excessive, and Wilmington Trust Company, indenture trustee for the PHONES, which believes the estate's recoveries under the Proposed Settlement are too low.

*Credit Agreement Lenders Objections to Proposed Settlement.* An ad hoc group of certain Senior Lenders, calling themselves the "Credit Agreement Lenders", argues that the Proposed Settlement is unfair because it is too costly for the Senior Lenders in light of what they view to be the lack of merit of the LBO-Related Causes of Action and also because there are parties who received prepetition payments on LBO-related debt that are not providing disproportionate (or in some cases any) contribution to the settlement.

As noted above, the Settlement Supporters believe that the settlement can be justified based on the benefits of avoiding the likely cost and delay of litigation and/or a fair assessment of the merits. Furthermore, the Settlement Supporters that are Senior Lenders considered potential disgorgement claims against lenders

---

[1] The Debtors did not prepare the statements herein. Rather this narrative was prepared solely by and expresses the views of the Settlement Supporters. The Settlement Supporters include Senior lenders Angelo Gordon & Co. LP, JPMorgan Chase Bank, N.A. and GoldenTree Asset Management, L.P, Senior Notes holder Centerbridge Partners, L.P. and Successor Senior Notes Indenture Trustee Law Debenture Trust Company of New York.

receiving pre-petition payments in connection with the Proposed Settlement, and concluded that such claims were not worth pursuing because of the legal and practical hurdles to obtaining any meaningful recoveries after the cost of pursuing such claims. The Settlement Supporters that are Senior Lenders reached this conclusion because, among other things, there are more than ***nine hundred*** recipients of prepetition payments on account of the Senior Credit Facility alone, and even assuming it were possible to effectively pursue these parties (which would be a costly, time-consuming and uncertain exercise to say the least), the defendants would raise the very defenses being asserted by the Credit Agreement Lenders as the basis for attacking the Proposed Settlement as excessive (and perhaps additional defenses). Moreover, many of the potential defendants would lack any incentive to settle the claims because they are not current creditors hoping to receive distributions from the estate. The putative disgorgement defendants would also assert guarantee claims for each dollar, if any, ultimately disgorged, potentially diluting recoveries of the non-disgorging Senior Lenders. As a result, it is the position of the Settlement Supporters that are Senior Lenders that the expected benefits to the estates and their creditors (including the current Senior Lenders) from pursuing disgorgement claims would in all likelihood be minimal and dwarfed by the cost of prosecuting such claims.

*Wilmington Trust Company's Objections to Proposed Settlement*: In contrast to the Credit Agreement Lenders, Wilmington Trust Company, indenture trustee for the PHONES, asserts that the LBO-Related Claims are more valuable than the recoveries under the proposed settlement and believes that the PHONES, despite their junior subordinated position in Tribune's capital structure, could receive recoveries if such claims were litigated to conclusion. The PHONES have little to lose and much to gain from attacking the Proposed Settlement, which, though substantial, is not sufficient to provide incremental recoveries in respect of their junior claims. Because of this, the PHONES have an incentive to put the benefits of the Proposed Settlement at risk, effectively rolling the dice at the risk of the Senior Notes to try to attain a recovery. Because the recoveries of Law Debenture, Centerbridge and other senior noteholders *could be either greater or lesser than the value provided in the Proposed Settlement if litigation is pursued in lieu of the settlement,* they are the appropriate parties to weigh the merits of the Proposed Settlement relative to litigating the claims. The fact that Law Debenture and Centerbridge are among the Settlement Supporters suggests that the PHONES' opposition to the Proposed Settlement is unfounded and reflects nothing more than the natural hold-out bias of an out-of- the-money junior creditor class.

## C.    Reasons for Senior Lenders and Senior Unsecured Creditors To Support Proposed Settlement

In the month following the announcement of the Proposed Settlement and the filing of the Plan, Rule 2019 filings by counsel to the Credit Agreement Lenders disclosed that twenty-one separate Senior Lenders dropped out of their ad hoc group, and the amount of the claims held by the group dropped by approximately ***$1,300,000,000***. This is a concrete indication that numerous Senior Lenders in addition to those who are officially supporting the Proposed Settlement agree that the Proposed Settlement appropriately resolves the LBO-Related Causes of Action. Law Debenture and Centerbridge believe that numerous senior noteholders also support the Proposed Settlement, as is evidenced by the absence of material objections to the disclosure statement by any senior noteholder, and will vote in favor of the Plan implementing the Proposed Settlement.

The Proposed Settlement deserves the support of all parties with a material interest in the estate. It pays all general unsecured creditors of Tribune's subsidiaries in cash in full. Senior Noteholders will receive approximately $427 million in excess of the amount to which the Debtors submit that they would be entitled in the absence of the LBO-Related Causes of Action. General unsecured creditors of Tribune Company will receive a fixed 35.18% recovery, also substantially in excess of the Debtors' view of their baseline entitlement. The cost to the Senior Lenders of the Proposed Settlement, while significant, represents four cents of the Senior Lenders' recovery, and given the complexity of the issues involved, the expense and delay of litigation over the LBO-Related Causes of Action could entail significantly greater costs. Most importantly, the Proposed Settlement will allow the Debtors to emerge from bankruptcy protection quickly and stop the massive outlay of administrative expenses, thus maximizing the value of the Debtors' estates to the direct and substantial benefit of creditors of the estate entitled to distributions on their claims, including the Credit Agreement Lenders.

      For all of these reasons, the Settlement Supporters believe that the Proposed Settlement provides the best available resolution of these cases.

## CREDITORS' COMMITTEE INSERT FOR DISCLOSURE[1] STATEMENT DISCUSSION OF LBO SETTLEMENT[2]

On December 18, 2008, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Creditors' Committee. The Committee represents the interests of all general unsecured creditors in the Debtors' bankruptcy cases. As detailed in Article VI.F of the Disclosure Statement, the Creditors' Committee was, and remains, a diverse group of creditors of the Debtors, including the Pension Benefit Guaranty Corp., various trade creditors, financial institutions, indenture trustees, a union and a retiree. Following its appointment, the Creditors' Committee retained various professionals to assist it in its duties, including attorneys, financial advisors and investment bankers.

From the inception of these cases, the Committee recognized that the major issue in connection with any proposed plan of reorganization for the Debtors was the resolution of certain potential claims and causes of action arising from the series of transactions during calendar year 2007 pursuant to which the Company became privately held (the "Leveraged ESOP Transaction"). Shortly after the formation of the Creditors' Committee, certain members of the Creditors' Committee (the "Independent Members") instructed the Committee's professionals to conduct a comprehensive review of the transaction to ascertain whether the Leveraged ESOP Transaction gave rise to one or more causes of action that might be prosecuted by the Debtors' estates. (The Independent Members excludes those members of the Creditors' Committee that participated in the financing of the Leveraged ESOP Transaction and, therefore, consistent with the Bylaws of the Creditors' Committee, have at all times recused themselves from any participation in the Committee's review of the Leveraged ESOP Transaction.) The Independent Members directed the investigation of the Leveraged ESOP Transaction, including the analysis and possible prosecution of any claims arising therefrom.

During the course of the investigation, the Creditors' Committee reviewed publicly available information and, under Federal Rule of Bankruptcy Procedure 2004, requested, received and reviewed documents from the Debtors and certain other parties

---

[1] The Debtors did not prepare the statements herein. Rather, this narrative was prepared solely by and expresses the views of the Creditors' Committee.

[2] The Disclosure Statement contains statements of various parties expressing disparate views with respect to the LBO-Related Causes of Action. By this submission, the Creditors' Committee does not endorse the views expressed by any other party, including the Debtors.

that were involved in the Leveraged ESOP Transaction or its financing. In connection with the investigation, the Committee's professionals issued document requests to 46 parties, took the depositions of seven key witnesses, and reviewed over 325,000 documents consisting of over 4,000,000 pages.

In addition to factual discovery, the Creditors' Committee and its professionals analyzed the legal claims that could potentially be asserted by the Debtors, the Creditors' Committee or a subsequently-appointed bankruptcy trustee or litigation trust against the various parties involved in the Leveraged ESOP Transaction. Thus, the Creditors' Committee analyzed numerous potential claims, including claims for fraudulent transfer, equitable subordination, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unlawful repurchase of shares, waste of corporate assets, preference, breach of contract, negligence and gross negligence. Ultimately, the Creditors' Committee concluded that the estate held a number of potentially viable claims related to the Leveraged ESOP Transaction (collectively, the "Fraudulent Transfer Causes of Action").

By motion dated February 1, 2010, the Creditors' Committee requested an order granting the Creditors' Committee standing and authorizing the Creditors' Committee to commence, prosecute or settle the Fraudulent Transfer Causes of Action (the "Standing Motion"). In connection with the Standing Motion, the Creditors' Committee filed under seal a draft complaint asserting the Fraudulent Transfer Causes of Action. (To facilitate consideration of the Global Settlement, the Creditors' Committee adjourned the Standing Motion.)

In addition, based on its extensive investigation, the Creditors' Committee also concluded that the Debtors' estates have potentially viable claims against certain third party entities that were involved in the Leveraged ESOP Transaction but were not the subject of the Fraudulent Transfer Causes of Action. Accordingly, the Creditors' Committee prepared a complaint asserting such claims against a number of parties including Tribune's board of directors at the time of the Leveraged ESOP Transaction, Tribune's largest shareholders during the relevant time period, and Samuel Zell and certain affiliates (collectively, the "Third Party Defendants"). The Creditors' Committee has refrained from taking any further action with regard to the possible claims against the Third Party Defendants, including seeking entry of an order granting leave, standing and authority to prosecute such claims, while consideration of the Global Settlement proceeds.

After months of intensive negotiations, the Creditors' Committee, the Debtors and certain other interested parties agreed to the economic terms set forth in the Global Settlement. While it believes that the Debtors' estates hold viable claims against different entities, the Creditors' Committee supports the settlement. The Creditors' Committee

recognizes that there are a variety of defenses available to the putative defendants, the existence of which make the prosecution of the claims uncertain. The expense, delay, complexity and inconvenience associated with prosecuting any litigation related to the Leveraged ESOP Transaction also weighed heavily in favor of the settlement.

Based on the Creditors' Committee's exhaustive investigation as well as the extensive analyses performed by the Creditors' Committee of the various possible outcomes, the Committee believes that the proposed settlement is fair and appropriate and provides the best way to maximize the recovery to creditors under the circumstances.