IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case Nos. 08-13141 (KJC), *et seq.*<br>(jointly administered)<br><br>**Objections Due By: June 7, 2010, 4:00 p.m.**<br>**Hearing Date: June 16, 2010, 11:00 a.m.** |

**MEMORANDUM IN SUPPORT OF
MOVANTS' MOTION FOR CLASS CERTIFICATION AND
CLASS TREATMENT OF MOVANTS' CLASS PROOFS OF CLAIM**

Movants James Allen, Charles Evans, Pearl Evans, Gary Grant, Loretta Grant, Bill McNair and Sean Serrao (collectively, "Movants"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their Motion for Class Certification and Class Treatment of Movants' Class Proofs of Claim (the "Motion"), seeking class certification and class treatment of Movants' class proofs of claim against Debtors Tribune Company and Tribune New York Newspaper Holdings, LLC d/b/a AM New York (collectively, "Tribune" or the "Debtors"), pursuant to Rules 7023 and 9014 of the Federal Rules of Bankruptcy Procedure and Rule 23 of the Federal Rules of Civil Procedure.[1]  For the reasons set forth herein, Movants request that the Court grant the relief requested in the Motion.

---

[1]    While Rule 7023 of the Federal Rules of Bankruptcy Procedure specifically applies to adversary actions, which this is not, "Rule 9014 expands that Rule to contested matters, at the court's discretion." *In re Kaiser Group*, 278 B.R. at 62.  "Rule 9014 thus allows bankruptcy judges to apply Rule 7023 -- and thereby [Federal Rule of Civil Procedure] 23, the class action rule -- to 'any stage' in contested matters. Filing a proof of claim is a 'stage.'"  *In re American Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988). *See also Chateaugay Corp.,* 104 B.R. 626, 633-34 (Bankr. S.D.N.Y. 1989).

# I.    BACKGROUND & PRELIMINARY STATEMENT[2]

On or about August 20, 2007, Movants, on behalf of themselves and all others similarly situated, filed a class action complaint in the New York State Supreme Court, New York County (the "State Court") against Tribune Company and Tribune New York Newspaper Holdings, LLC d/b/a AM New York and Mitchell's Subscription Service LLC d/b/a LBN Consulting, LLC[3] and Morning Newspaper Delivery, Inc.[4]  (LBN Consulting and Morning Newspaper Delivery are collectively referred to as "LBN.")  Movants alleged that defendants had failed to pay them and other similar employees the minimum wage as required under New York Labor Law and regulations.  The action, entitled *John Allen, et al. v. Tribune New York Newspaper Holdings, LLC, et al.*, Index No: 07-602801 (the "State Court Action"), is currently pending in the New York State Supreme Court, New York County (the "State Court").

The defendants in the State Court action filed their answers,[5] and the parties began exchanging discovery.  However, on or about December 8, 2008, Tribune filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532.  Tribune informed the State Court of its bankruptcy filing, and the State Court

---

[2]    In support of this motion, Movants are submitting herewith: Declaration of Charles Evans ("Evans Decl."); Declaration of Gary Grant ("G. Grant Decl."); Declaration of Loretta Grant ("L. Grant Decl."); Declaration of John Heywood ("Heywood Decl.") with exhibit attached; Declaration of Victoria McLaughlin ("McLaughlin Decl."); Declaration of Damion Reid ("Reid Decl."); Declaration of Sean Serrao ("Serrao Decl."); and Declaration of Michael D. Palmer ("Palmer Decl.") with exhibits attached.

[3]    This entity's identity was later clarified as "LBN Consulting LLC."

[4]    Palmer Decl. ¶ 3, Ex. A (State Court Action Complaint).

[5]    Movants have attached Tribune's State Court Action Answer.  Palmer Decl. ¶ 4, Ex. B.

stayed the proceedings with respect to all defendants pending the disposition of the bankruptcy proceeding.[6]

Movants and other potential class members of the State Court Action timely filed Proofs of Claims with the Bankruptcy Court to preserve their claims against the Debtors. Further, Movants timely filed class proofs of claims on behalf of current and former employees of Debtors for unpaid wages.[7] The claims were filed by James Allen, Charles, Evans, Pearl Evans, Gary Grant, Loretta Grant, Bill McNair, and Sean Serrao, "on behalf of themselves and the other similarly situated current and former employees of the Debtor, each of whom was an employee of the Debtor and promoted and distributed AM New York, a free daily newspaper published by the Debtor."[8] The class proofs of claim further explained the basis of the class claims was that the Debtors failed to properly pay Movants and the class claimants the minimum wage for all hours worked.[9] While Movants were unable to provide an exact calculation of the moneys owed to the class, such a calculation could be determined from the Debtors' books and records.[10] For the two class proofs of claim, Movants estimated the value of the class claim as $1,500,000.00.[11]

Movants now move for class treatment of the Movants' class proofs of claim. Class treatment of the class proofs of claim meaningfully advances the goals of bankruptcy, because it permits the economical filing of and efficient handling of innumerable relatively small claims

---

[6]    Movants moved the State Court to permit them to proceed against the non-bankrupt defendants; however, Movants' motion was denied. Palmer Decl. ¶ 7.

[7]    Palmer Decl. ¶ 8, Ex. C (Class Proof of Claim filed against Debtor Tribune New York Newspaper Holdings, LLC); ¶ 9, Ex. D (Class Proof of Claim filed against Debtor Tribune Company).

[8]    Palmer Decl., Ex. C at 2; Ex. D at 2.

[9]    *Id.*

[10]    Palmer Decl., Ex. C at 3; Ex. D at 3.

[11]    Palmer Decl., Ex. C at 1; Ex. D at 1.

having common bases that would be difficult for claimants to pursue individually, especially since members of the putative class have not received individual notice of Tribune's bankruptcy. This approach ensures adequate collective representation of those claims within the bankruptcy and facilitates a unified defense of those claims when contested.

Movants seek to certify a class composed of individuals who worked for Debtors in a position in which they promoted newspapers by handing them out to people, at anytime between August 20, 2001[12] and December 8, 2008.[13]


## II.    FACTS

Tribune publishes AM New York, a free daily newspaper that circulates in New York City.[14]   Tribune contracted with LBN to promote and distribute AM New York.[15]   Tribune and LBN hired Movants and others as "promoters" to distribute the free newspaper.[16]   LBN and Tribune (mis)classified promoters as independent contractors.[17]

---

[12]   The statute of limitations for a New York minimum wage claim is six years.  Accordingly, the class period began six years from the date Movants filed the State Court Action.

[13]   Only individuals who worked for Debtors prior to the date that Debtors filed for Chapter 11 relief are included in the class.

[14]   Palmer Decl., Ex. B at ¶ 13.

[15]   Palmer Decl., Ex. B at ¶ 16.

[16]   Evans Decl. ¶¶ 3-5; G. Grant Decl. ¶¶ 4-5; L. Grant Decl. ¶¶ 4-5; Heywood Decl. ¶¶ 3-4; McLaughlin Decl. ¶¶ 3-4; Reid Decl. ¶¶ 3-4; Serrao Decl. ¶¶ 4-5.

[17]   *See, e.g.* Palmer Decl., Ex. B at ¶¶ 6-12. While the Debtors referred to promoters as independent contractors, "[a]n employer's characterization of an employee [as an independent contractor] is not controlling . . . ." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1050 (2d Cir.1988) ("[A]n employer's self-serving label of workers as independent contractors is not controlling."). New York minimum wage law defines an "employee" as "includ[ing] any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. Law. § 651. The definition of an employee under the New York minimum wage law is virtually identical to the definition under the Fair Labor Standards Act (FLSA); accordingly, New York courts utilize the same "economic reality" test for determining whether a person is an "employee" as

## A.    PROMOTERS' JOB DESCRIPTION AND JOB DUTIES

A promoters' job was to hand out free newspapers to passersby.[18]  Prior to starting the job, promoters were given a short training.[19]  In the field, promoters were told where they were supposed to stand to distribute the newspaper and were directed to hand out one newspaper at a time.[20]  Promoters were not permitted to take any breaks and could not eat, drink, smoke or use their cell phones during the shift.[21]  They were not allowed to distribute other products during the shift and thus could not perform work for another job while promoting AM New York.[22] Promoters were given a red vest with the words "AM New York" written on it; they were required to wear the vest as a uniform while distributing the newspapers.[23]  Promoters were

---

is used under the FLSA.  *Ansoumana*, 255 F. Supp. 2d at 189; *Campos v. Lemay*, No. 05 Civ. 2089, 2007 U.S. Dist. LEXIS 33877, at *12 (S.D.N.Y. May 7, 2007).

As merits are not properly considered in a Rule 23 motion, this brief is not devoted to Movant's argument that promoters were employees under New York minimum wage law.  Nevertheless, Movants are confident that the Court will ultimately find that promoters were tightly controlled in the performance of their job, did not invest in AM New York, had a position that did not required specialized skill, but their services were an integral part of the business, and that, accordingly, the "economic reality" of the situation was that promoters depended on AM New York to sell their labor and were not in business for themselves. *Ansoumana*, 255 F. Supp. 2d at 190-192.  Accordingly, Movants anticipate that the Court will find that promoters qualify as "employees" under the New York minimum wage law.  *Id.*

[18]    Evans Decl. ¶ 7; G. Grant Decl. ¶7; L. Grant Decl. ¶ 6; Heywood Decl. ¶ 6; McLaughlin Decl. ¶ 5; Reid Decl. ¶ 6; Serrao Decl. ¶ 6.

[19]    Evans Decl. ¶ 19; G. Grant Decl. ¶ 21; L. Grant Decl. ¶ 19; Heywood Decl. ¶ 20; McLaughlin Decl. ¶18;  Reid Decl. ¶ 20; Serrao Decl. ¶ 17.

[20]    Evans Decl. ¶ 21; G. Grant Decl. ¶ 23; L. Grant Decl. ¶ 21; Heywood Decl. ¶ 22; McLaughlin Decl. ¶20; Reid Decl. ¶ 21; Serrao Decl. ¶ 19.  Palmer Decl. ¶ 10, Ex. E (*Promoter Rules*).

[21]    Palmer Decl. ¶ 11, Ex. F (*Promoter Open House – Agenda & Script*) at 1; Ex. E.

[22]    *See* Palmer Decl., Ex. E.

[23]    Evans Decl. ¶ 23; G. Grant Decl. ¶ 25; L. Grant Decl. ¶ 23; Heywood Decl. ¶ 24; McLaughlin Decl. ¶22;  Reid Decl. ¶ 23; Serrao Decl. ¶ 21.  Palmer Decl., Ex. E; Ex. F at 1-2.

supervised by zone leaders, who monitored promoters to confirm that they were properly performing their job.[24]

Promoters could not set their own schedule and were expected to work Monday through Friday.[25]  They were required to give 24 hour notice for an excused absence and would be terminated for an unexcused absence.[26]  It was a condition of the job that Promoters pay into an insurance program.[27]

Promoters were required to be at their post to hand out newspapers at a scheduled time.[28] In the morning, a promoter's shift began between 6:00 a.m. and 7:00 a.m.[29]  A shift was supposed to last three hours; however, promoters regularly worked for four or more hours.[30] One reason for the length of the shifts was that AM New York expected promoters to distribute all of the bundles of newspapers prior to leaving.[31]  Sometimes it took four or more hours to hand out the newspapers to passersby.  The second reason that promoters often worked four or

---

[24]  Evans Decl. ¶14; G. Grant Decl. ¶ 16; L. Grant Decl. ¶ 14; Heywood Decl. ¶ 15; McLaughlin Decl. ¶13;  Reid Decl. ¶ 15; Serrao Decl. ¶ 12.  *See* Palmer Decl., Ex. F at 1.

[25]  Evans Decl. ¶ 22; G. Grant Decl. ¶ 24; L. Grant Decl. ¶ 22; Heywood Decl. ¶ 23; McLaughlin Decl. ¶21;  Reid Decl. ¶ 22; Serrao Decl. ¶ 20.

[26]  Palmer Decl., Ex. E.

[27]  Evans Decl. ¶ 13; G. Grant Decl. ¶ 15; L. Grant Decl. ¶ 13; Heywood Decl. ¶ 14; McLaughlin Decl. ¶12;  Reid Decl. ¶ 13.

[28]  Evans Decl. ¶ 8; G. Grant Decl. ¶ 8; L. Grant Decl. ¶ 7; Heywood Decl. ¶ 7; McLaughlin Decl. ¶ 6; Reid Decl. ¶ 7; Serrao Decl. ¶ 7.  *See* Palmer Decl., Ex. F at 1.

[29]  Evans Decl. ¶ 8; G. Grant Decl. ¶ 8; L. Grant Decl. ¶ 7; Heywood Decl. ¶ 7; McLaughlin Decl. ¶ 6; Reid Decl. ¶ 7;  Serrao Decl. ¶ 7.

[30]  Evans Decl. ¶¶ 8, 17-18; G. Grant Decl. ¶¶ 9, 19-20; L. Grant Decl. ¶¶ 8, 17-18; Heywood Decl. ¶¶ 8, 18-19, 29; McLaughlin Decl. ¶¶ 7, 16-17. Reid Decl. ¶¶ 8, 19; Serrao Decl. ¶¶ 15-16  *See* Palmer Decl., Ex. F at 1 ("3 hour shift, you have to hold it or go before or after")

[31]  Evans Decl. ¶¶ 16-17; G. Grant Decl. ¶¶ 18-19; L. Grant Decl. ¶¶16-17; Heywood Decl. ¶¶17-18; McLaughlin Decl. ¶¶ 15-16;  Reid Decl. ¶¶ 17-18; Serrao Decl. ¶¶14-15.

more hours in a shift is because promoters were required to wait until their supervisor (or "zone leader") returned to check them out at the end of each shift.[32]  If a promoter left before the zone leader arrived, the promoter would not get paid.[33]

**B.    PROMOTERS WERE SYSTEMATICALLY NOT PAID MINIMUM WAGE**

A promoter's compensation was determined in the following way:  First, the promoter's supervisor calculated the number of bundles of newspapers the promoter handed out during his shift.[34]  (A bundle was 100 newspapers.) [35]  The number of bundles was then multiplied by a dollar amount per bundle.[36]  At one point, a promoter could earn $2 per bundle (or $0.02 per newspaper).[37]  Sometime prior to 2006, the rate went down to $1.50 per bundle (or $0.015 per newspaper) for newly hired promoters.[38]

AM New York also set a floor for promoter's compensation per shift.[39]  If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor,

---

[32]    Evans Decl. ¶¶ 15, 17; G. Grant Decl. ¶¶ 17, 19; L. Grant Decl. ¶¶ 15,17; Heywood Decl. ¶¶ 16,18; McLaughlin Decl. ¶¶ 14, 16;  Reid Decl. ¶¶ 16, 18; Serrao Decl. ¶¶ 13, 15.

[33]    Palmer Decl., Ex. E.

[34]    Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8; Reid Decl. ¶ 9; Serrao Decl. ¶ 8.

[35]    Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8; Reid Decl. ¶ 9; Serrao Decl. ¶ 8.

[36]    Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8; Reid Decl. ¶ 9; Serrao Decl. ¶ 8.

[37]    G. Grant Decl. ¶ 10; Heywood Decl. ¶ 9; Reid Decl. ¶ 9.

[38]    Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8; Serrao Decl. ¶ 8.

[39]    Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8; Reid Decl. ¶ 9; Serrao Decl. ¶ 8.

the promoter was simply paid the floor.[40]  At one point, the floor amount was $27 per shift.[41]
Sometime prior to 2006, the floor was reduced to $21 per shift.[42]

Unless a promoter distributed a significant number of newspaper bundles, the promoter
would receive the floor.[43]   For example, with a floor of $21 per shift, a promoter who made
$1.50 per bundle would have to distribute 15 or more bundles of newspapers (1500 or more
newspapers) to earn more than $21.[44]  ($1.50 x 15 bundles = $22.50.)

Promoters regularly only made the floor compensation.[45]  Accordingly, it was common
for promoters to work four (or more) hours and receive only $21 for the shift.

The hours worked and compensation received by promoters can be determined by records
in Debtor's possession.[46]

From March 31, 2000 until December 31, 2004, the minimum wage in New York was
$5.15 per hour.  N.Y. Lab. Law § 652.  From January 1, 2005 until December 31, 2005, the
minimum wage was $6.00 per hour.  *Id.*  From January 1, 2006 until December 31, 2006, the

---

[40]   Evans Decl. ¶ 9; G. Grant Decl. ¶ 10; L. Grant Decl. ¶ 9; Heywood Decl. ¶ 9; McLaughlin Decl. ¶ 8;
Reid Decl. ¶ 9; Serrao Decl. ¶ 8.

[41]   G. Grant Decl. ¶ 11; Heywood Decl. ¶ 10; Reid Decl. ¶ 10.

[42]   Evans Decl. ¶ 10; G. Grant Decl. ¶ 12; L. Grant Decl. ¶ 10; Heywood Decl. ¶¶ 11, 28, Ex.;
McLaughlin Decl. ¶ 9;  Reid Decl. ¶ 11; Serrao Decl. ¶ 9.

[43]   Evans Decl. ¶ 11; G. Grant Decl. ¶ 13; L. Grant Decl. ¶ 11; Heywood Decl. ¶ 12; McLaughlin Decl.
¶10;  Reid Decl. ¶ 12.

[44]   Evans Decl. ¶ 11; G. Grant Decl. ¶ 13; L. Grant Decl. ¶ 11; McLaughlin Decl. ¶ 10.

[45]   Evans Decl. ¶ 12; G. Grant Decl. ¶ 14; L. Grant Decl. ¶ 12; Heywood Decl. ¶ 13; McLaughlin Decl.
¶11;  Reid Decl. ¶ 12; Serrao Decl. ¶ 10.

[46]   Attached to the declaration of John Heywood, a former promoter and zone leader, is an example of a
sheet that was used by zone leaders to record promoters' starting and ending times, compensation,
location, number of newspaper bundles distributed, and rate per bundle.  Heywood Decl. ¶ 26, Ex. (The
document was produced by Tribune in the State Court Action prior to the case being stayed. Palmer Decl.
¶ 12).  From documents such as this one, it will be possible to determine whether a promoter was paid
below the minimum wage. *See* Heywood Decl. ¶¶ 27-29.

minimum wage was $6.75 per hour.  *Id.*  Since January 1, 2007, the New York minimum wage has been $7.25 per hour.  *Id.*

During the class period (August 20, 2001 to December 8, 2008), promoters were regularly paid hourly wages less than the minimum wage.  For example, a promoter who worked four-and-a-half hours and made $21 earned $4.67 per hour.  On the other hand, if a promoter distributed 15 bundles and made $22.50 while working four-and-a-half hours, the promoter would have made $5 per hour.  In both cases, the promoter made significantly less than minimum wage.

Without a doubt, the system by which promoters were compensated regularly resulted in them making less than the statutory minimum wage.

## III.    ARGUMENT

### A.    CLASS CERTIFICATION AND CLASS TREATMENT OF MOVANTS' CLASS PROOFS OF CLAIM SHOULD BE GRANTED

It is well-established that the Court has the discretion to certify class proofs of claim in bankruptcy proceedings, and may do so at *any stage* in the proceedings.  "[T]he vast majority of courts who have recently considered the issue have concluded that class proofs of claim are now regularly permitted in a bankruptcy proceeding."  *In re Kaiser Group Int'l*, 278 B.R. 58, 62 (Bankr. D. Del. 2002).  *See also In re Chateaugay Corp.,* 104 B.R. at 634.[47]  By certifying the class, the Court effectively ratifies the Movants' authority *nunc pro tunc* to file proof of claim on behalf of the putative class members.  *In re American Reserve Corp.,* 840 F.2d at 493 ("If the

---

[47]    *See, also e.g., In re: United Artists Theatre Company (Hacienda Heating & Cooling, Inc. v. United Artists Theatre Circuit, Inc.*, 410 B.R. 385 (Bankr. D. Del. 2009); *In re: United Cos. Fin. Corp.*, 276 B.R. 368 (Bankr. D. Del. 2002); *In re American Reserve,* 840 F.2d 487; *In re Spring Ford Indus.*, Chapter 11, Bankruptcy No. 02-15015DWS, 2004 Bankr. LEXIS 112  (Bankr. E.D. Pa. Jan. 20, 2004); *In re First Interregional Equity Corp.,* 227 B.R. 358, 366 (Bankr. D.N.J. 1998)*; In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997)*; In re Sacred Heart Hospital of Norristown*, 177 B.R. 16 (Bankr. E.D. Pa. 1995.

court certifies the class, . . . the self-appointed agent has become 'authorized', and the original filing is effective for the whole class (the principals).").

Here, the putative class consists of the persons who hand out free newspapers on city street corners and subway stations – many of whom made less than the statutory minimum wage, none of whom were sent notice of Tribune's bankruptcy.  Under these circumstances, class proofs of claim serve a critically important bankruptcy function because they facilitate recognition of creditors who would be disenfranchised if required to pursue their claims individually.  As one court cogently explained:

> Since there are significant opportunity costs associated with identifying and investigating claims and since many potential litigants with small claims are unaware of the full scope of their rights in bankruptcy, the class action may be the only practical means of permitting small claims to be brought. . . .  To deny the use of a class claim would frustrate this policy and, as a practical matter, leave the majority of small claimants in bankruptcy proceedings without a remedy.

*In re Zenith Labs.,* 104 B.R. 659, 662-663 (Bankr. D.N.J. 1989).[48]  Requiring individual proofs of claim under these circumstances "effectively requires the small claimant to 'opt in.'  Perhaps this perspective reflects the view that the debtor's assets are to be conserved for larger creditors.  This policy, however, is utterly without support in the Code or its legislative history."  *Id* at 664.

Where, as here, a class has not been previously certified by any other court, the bankruptcy court, upon motion of the party filing the class proof of claim, must consider the certifiability of the class for which the class proof of claim was filed and evaluate the motion

---

[48]   *See also In re American Reserve,* 840 F.2d at 489 ("The combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing."); *In re:  Bill Heard Enters. (Kettell v. Bill Heard Enters.),* 400 B.R. 795 (Bankr. N.D. Ala. 2009) ("The Court further believes that [certification] is necessary to protect the employees' rights given the relatively small nature of their individual claims and the concern . . . that persons holding small claims may not prosecute same absent the class procedures.").

under the traditional factors of Federal Rule of Civil Procedure 23. *See In re United Artists*, 410

B.R. at 391 (Rule 7023 of the Federal Rules of Bankruptcy Procedure makes Rule 23 of the

Federal Rules of Civil Procedure applicable to bankruptcy proceedings). *See also In re*

*American Reserve Corp.*, 840 F.2d at 488 ("Rule 9014 thus allows bankruptcy judges to apply

Rule 7023 -- and thereby [Federal Rule of Civil Procedure] 23, the class action rule -- to 'any

stage' in contested matters. Filing a proof of claim is a 'stage.'"); *supra* at 1 n1. Here, class

certification is appropriate because Movants can establish that the prerequisites of Rule 23(a) are

satisfied and that a class action may be maintained under Rule 23(b)(3). *See In re Initial Public*

*Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

**1.      The Merits Of The Case Are Not Evaluated In A Class Certification Determination.**

"For the purposes of considering a motion for class certification, a court should assume

that the substantive allegations of the complaint are generally true and not inquire into the merits

of the case." *In re Spring Ford Indus.***,** Chapter 11, Bankruptcy No. 02-15015DWS**,** 2004 Bankr.

LEXIS 112, at *22 (Bankr. E.D. Pa. Jan. 20, 2004). "A plaintiff need not establish by a

preponderance of the evidence the merits of its claims at the class certification stage, and any

inquiry into the merits that is not necessary to a Rule 23 decision is precluded." *Behrend v.*

*Comcast Corp.,* 264 F.R.D. 150, 155 (E.D. Pa. 2010).

**2.      The Movants Satisfy All Of The Requirements Of Rule 23(a).**

Rule 23 permits class certification if: (1) the class is so numerous that joinder of all

members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class, (5)

common questions of law or fact predominate over questions affecting only individual members

and (6) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(a) and (b)(3).

Movants satisfy each of these requirements.

a.    **Numerosity – Rule 23(a)(1)**

The essential element of any class action is that the proposed class be so large that joinder of all individual class members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "The Third Circuit has indicated that this numerosity requirement generally is met 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'"  *In re United Artists*, 410 B.R. at 392 (quoting *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001)).  *See, e.g., In re Kaiser Group*, 278 B.R. at 64 (certifying class of 47).

Here, numerosity is met.  There were significantly more than 40 promoters working at any given time,[49] and with turn over, Movants are confident that the putative class includes more than 100 persons.

b.    **Common Questions Of Law Or Fact – Rule 23(a)(2)**

To satisfy Rule 23(a)(2), Movants need only show that they share at least one question of fact or law with the rest of the putative class.  *In re United Artists,* 410 B.R. at 392 ("The Third Circuit has held that 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'") (quoting *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994)).  All class members need not share identical claims.  *Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 255, 271 (D. Del. 2009).  "'[F]actual differences among the claims of the putative class members do not defeat certification.'"  *In re United Artists,* 410 B.R. at 392 (quoting *Baby Neal,* 43 F.3d at 56).  *See*

---

[49]    Evans Decl. ¶ 25; L. Grant Decl. ¶ 25; McLaughlin Decl. ¶ 24;  Reid Decl. ¶ 14; Serrao Decl. ¶ 23.

*Ansoumana*, 201 F.R.D. at 86 (ruling that differences in the amount of hours worked by class members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted). Indeed, "[o]nce a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality." *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (internal quotation omitted, alteration in original).

Here, the common questions of fact and law include: (1) what are the policies, procedures and protocols of Debtors regarding payment of minimum wage to promoters; (2) what are the policies, procedures and protocols of Debtors regarding the recording of hours worked by promoters; (3) what are the policies, procedures and protocols of Debtors regarding payment of wages for all hours worked by promoters; and (4) whether promoters were employees of Debtors under the New York minimum wage law. This matter can be assessed on a class wide basis since the class members are all treated exactly the same by the Debtor. The basic issues can be resolved by examining how the Debtors treated, managed, paid, supervised and controlled all class members.

Thus, the commonality requirement is satisfied where, as here, the injuries complained of by the Movants allegedly resulted from the same practice or policy that allegedly injured or will injure the proposed class members. *See Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) ("[A]n allegation that the defendants' overall policy injured the plaintiffs satisfies the commonality requirement.").

c.      **Typicality -- Rule 23(a)(3)**

Typicality requires that the class representative be a member of the class he represents and "possess the same interest and suffer the same injury" as class members. *General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982).* "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *In re United Artists,* 410 B.R. at 393 (quoting *Baby Neal,* 43 F.3d at 56). The named plaintiff's claims need not be identical to the claims of the classes to satisfy typicality. *In re Kaiser Group*, 278 B.R. at 66. "'The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Id.* (quoting *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions),* 148 F.3d 283, 311 (3d Cir. 1998)). Moreover, Rule 23's typicality and commonality requirements "tend to merge," and a finding of commonality ordinarily will support a finding of typicality. *Falcon,* 457 U.S. at 157 n. 13.

Here, Movants are members of the putative classes and possess the same interests, suffered the same injury and allege identical violations to other class members. The typicality requirement is met.

d.      **Adequacy Of Representation -- Rule 23(a)(4)**

Rule 23(a)(4) requires that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.

*Klingensmith v. BP Prods. N. Am., Inc.*, Civ. No. 07-1065, 2008 U.S. Dist. LEXIS 72540, at *8 (W.D. Pa. Sept. 23, 2008); *Johnson,* 673 F. Supp. 2d at 279-80.

The proposed class representatives have no conflict with any class members, and will fairly and adequately protect the interests of the classes. Movants are adequate representatives because they were subjected to the same unlawful conduct as the class members. *Johnson,* 673 F. Supp. 2d at 280.

Movants have retained counsel who are qualified and experienced in class action and employment/wage litigation, and have retained local counsel with experience in the Delaware bankruptcy courts. Counsel have extensive experience litigating plaintiffs' class actions as well as FLSA and state labor claims, and have in the past repeatedly and successfully managed large class-action litigations.[50] Accordingly, both elements of Rule 23(a)(4) are satisfied.

**3.      The Movants Satisfy The Requirements Of Rule 23(b)(3).**

    **a.      Predominance**

To satisfy predominance under Rule 23(b)(3), the Movants must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In Re Visa Check/Mastercard Antitrust Litigation*, 280 F.3d 124, 136 (2d Cir. 2001) (citation and internal quotations omitted)). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Community Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 308-09 (3d Cir. 2005); *In re Kaiser Group*, 278 B.R. at 66. Predominance is generally satisfied

---

[50]     *See* Palmer Decl. ¶¶ 15, 16, 20.

unless it is clear that individual issues will overwhelm the common questions. *In re Community Bank,* 418 F.3d at 309.

Predominance does not require that each and every issue in the case be identical for each and every class member. The fact that class members' individual unpaid wages (or damages) may vary does not thwart predominance. *Id.* at 305-06 ("Although the calculation of individual damages is necessarily an individual inquiry, the courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues predominate."). *See Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 183 (W.D.N.Y. 2005) (ruling that issues concerning the amount of overtime compensation due to each plaintiff did not bar certification of state law class).

This action concerns the Debtor's practices that improperly deny class members the benefits of the New York Labor Code governing employees. Debtors misclassified the class members as "independent contractors"[51] and uniformly applied a pay structure that failed to comply with New York's minimum wage statute. Common issues predominate here because the challenged practices apply uniformly to all class members. Courts have found predominance satisfied and certified classes under similar circumstances. *See, e.g., Walker v. Bankers Life & Cas. Co.,* Civ. No.: 06 C 6906, 2007 U.S. Dist. LEXIS 73502, at *21 (N.D. Ill. July 28, 2008) (class certified where "common questions concern whether Bankers Life misclassified its agents as independent contractors instead of employees"); *Smellie v. Mount Sinai Hosp.,* No. 03 Civ. 0805 (LTS)(DFE), 2004 U.S. Dist. LEXIS 24006, at *19-20 (S.D.N.Y. Nov. 24, 2004) (class certified where class members shared common question as to whether they should have been treated as independent contractors); *Ansoumana,* 201 F.R.D. at 89 ("Th[e] single issue [of

---

[51]    *See, e.g.* Palmer Decl., Ex. B at ¶¶ 6-12, Fourth Affirm. Def.

whether the plaintiffs were employees rather than independent contractors] predominates over all other factual and legal issues presented, because each proposed Plaintiff class member did substantially the same type of work, for the same type of employer, and was assigned in the same sort of way."); *Reich v. ABC/York-Estes Corp.*, No. 91 C 6265, 1997 U.S. Dist. LEXIS 2531, at *19-20 (N.D. Ill. Mar. 4, 1997) (class certified where defendants treated group of exotic dancers as independent contractors; "the women's employment status is certainly an issue they have in common").

> **b.** **Superiority**

The superiority of class treatment compared to other available methods of litigating these claims is unquestionable. Practically speaking, given the pendency of the asset distribution, the only alternatives to certifying this class are to force many AM New York promoters to abandon their legal rights altogether. Such a remedy is not a remedy at all.

In *In re Spring Ford,* the court granted class certification despite the timeliness objections lodged by the debtor. 2004 Bankr. LEXIS 112. There, employees had brought a class action in federal court alleging violations of the Worker Adjustment and Retraining Notification (WARN) Act in December 2001. In April 2002, the defendant petitioned for bankruptcy. The employees filed a class proof of claim in August 2002 but did not move for certification until April 2003 -- five months after a plan had been confirmed and some distributions already had been made. The debtor argued that the motion was "untimely." The court certified the class, concluding that the debtor was not prejudiced by the timing of the motion because "the Debtor was fully aware of the Class Claim when it sought confirmation and, while some distributions have been made, the Confirmed Plan contemplates payment of disputed, unliquidated or contingent claims." *Id.* at *20.

The court further noted the unfairness to the putative class members of denying the certification motion.

> [A]n individual plaintiff's recovery in a WARN Act case is likely to be relatively small compared to the costs associated with pursuing individual litigation, or in this case individual proofs of claim. Moreover, the bar date for such claims has long passed, and would thus place on each individual employee the additional burden of seeking to enlarge time. It is unlikely that many individual members would go to the trouble for a disputed claim that will likely amount to a few thousand dollars apiece. Finally, the Debtor's WARN Act liability arises from the Debtor's common course of conduct toward all the class members. The interest of the class members in judicial economy therefore lies in a single class adjudication rather than individualized adjudications.

*Id.* at *34 (internal citations omitted). *See also In re First Interregional Equity*, 227 B.R. at 371 ("[I]f the unnamed class members are largely a group which a debtor has refused to notify individually, or if they are in large part unknown creditors, then the class device may provide the only form of notice to such parties and be advisable to utilize.") (citation omitted).

Similarly, here, the factors of fairness and judicial economy weigh in favor of the Court exercising its discretion to grant class certification in this case.

## IV.    CONCLUSION

For the reasons above, Movants respectfully request that the Court grant the relief requested in the Motion, certifying a class composed of individuals who worked for Debtors in a position in which they promoted newspapers by handing them out to people, at any time between August 20, 2001 and December 8, 2008, and granting class treatment of Movants' Class Proofs

of Claim against Debtor Tribune Company (Case No. 08-13141) and Debtor Tribune New York

Newspaper Holdings (Case No. 08-13238).


Dated:  Wilmington, Delaware              Respectfully submitted,
        May 20, 2010
                                          PINCKNEY, HARRIS & WEIDINGER, LLC


                                           /s/ Adam Hiller
                                          Adam Hiller (DE No. 4105)
                                          Donna Harris (DE No. 3740)
                                          1220 North Market Street, Suite 950
                                          Wilmington, Delaware 19801
                                          (302) 504-1497 telephone
                                          (302) 442-7046 facsimile

                                          -and-

                                          Michael D. Palmer, Esquire*
                                          Charles Joseph, Esquire*
                                          JOSEPH, HERZFELD, HESTER &
                                          KIRSCHENBAUM LLP
                                          757 Third Avenue, 25th Floor
                                          New York, NY 10017
                                          (212) 688-5640 telephone
                                          (212) 688-2548 facsimile
                                          * *Pro Hac Vice* Motion Forthcoming

                                          *Attorneys for Movants and putative class members*