UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:

TRIBUNE COMPANY, et al.,

Debtors.

------------------------------------------------------------x

In re:

TRIBUNE NEW YORK NEWSPAPERS
HOLDINGS, LLC,

Debtor

------------------------------------------------------------x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Chapter 11

Case No. 08-13238 (KJC)

## DECLARATION OF CHARLES EVANS

Charles Evans declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I am a New York resident.

3. In or around April 2006, I was hired as an AM New York "promoter."

4. Steve Petersheim was in charge of the AM New York division in which I worked. Mr. Petersheim was one of the people who hired me.

5. The AM New York division in which I worked was sometimes called 3rd Floor Promotions.

6. In or around July 2006, I was promoted to the position "zone leader," and I supervised promoters in my zone. I continued to work for AM New York until around May 2007.

7. A promoter's job was to hand out free AM New York newspapers to people.

8. Promoters were required to be at their post to hand out newspapers at a scheduled time. The scheduled time to start the morning shift was between 6:00 and 7:00 a.m. Promoters could not decide the scheduled start of their shift. The shift was supposed to last three hours.

9. A promoter's compensation was determined in the following way: First, it would be determined the number of bundles of newspapers the promoter handed out during his shift. (A bundle was 100 newspapers.) The company would then multiply the number of bundles by a dollar amount per bundle. When I was a promoter at AM New York, I (and other newly hired promoters) were paid $1.50 per bundle (or $0.015 per newspaper). However, AM New York set a floor for a promoter's compensation per shift. If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor, the promoter would be simply paid the floor.

10. When I was a promoter at AM New York, I (and other promoters hired and working at that time) was paid $21 per shift as a floor.

11. Unless a promoter was recognized to have distributed many bundles, the promoter would receive the floor. For example, as a promoter, I was paid the greater of $21 per shift or $1.50 per bundle. In order to earn more than $21 per shift, I had to distribute 15 or more bundles of newspapers (1500 or more newspapers). *e.g.* $1.50 x 15 bundles = $22.50.

12. It was fairly common that promoters only made the floor compensation.

13. A deduction was taken from promoters' biweekly salary for insurance.

14. Promoters were supervised by zone leaders. Zone leaders observed promoters to make sure that they were properly performing their job.

15. A promoter was not permitted to leave his post until after a zone leader had checked the promoter out for the end of his shift.

16. AM New York wanted promoters to distribute all of the bundles of newspapers given to them.

17. Promoters often worked over four hours during their shift because of the time it took to distribute the newspapers and/or because they had to wait for their supervisor to check them out for the end of their shift.

18. When I was a promoter, I regularly worked over four hours in a shift. I sometimes worked five hours in a shift.

19. Orientation and training was given to promoters to teach them how to do the job.

20. AM New York gave promoters strict rules which they were required to follow while performing their jobs.

21. Promoters were told which geographic location they were supposed to work at distributing papers. Promoters could not choose where they would be posted.

22. Promoters were required to work Monday through Friday.

23. Promoters were given a red vest which said "AM New York" which they were required to wear while working.

24. By observation and experience, I know what I described above applied to all AM New York promoters.

25. I know there were significantly more than 40 promoters working at AM New York at any one time.

//
//
//
//

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 18, 2010

_____
Charles Evans