**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------x

| | |
|---|---|
| **In re:**<br>**TRIBUNE COMPANY, et al.,**<br><br>**Debtors.** | **Chapter 11**<br><br>**Case No. 08-13141 (KJC)**<br><br>**Jointly Administered** |

-------------------------------------------------------x

| | |
|---|---|
| **In re:**<br>**TRIBUNE NEW YORK NEWSPAPERS HOLDINGS, LLC,**<br><br>**Debtor** | **Chapter 11**<br><br>**Case No. 08-13238 (KJC)** |

-------------------------------------------------------x

**DECLARATION OF JOHN HEYWOOD**

John Heywood declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I am a New York resident.

3. In 2003, I was hired as an AM New York "promoter."

4. Steve Petersheim was in charge of the AM New York division in which I worked.

5. In or around November 2005, I was promoted to the position "zone leader," and I supervised promoters in my zone. I continued to work for AM New York until around November 2006.

6. A promoter's job was to hand out free AM New York newspapers to people.

7. Promoters were required to be at their post to hand out newspapers at a scheduled time. The scheduled time to start was between 6:00 and 7:00 a.m. Promoters could not decide the scheduled start of their shift.

8. The promoter's shift was supposed to last around three hours.

9. A promoter's compensation was determined in the following way: First, it would

be determined the number of bundles of newspapers the promoter handed out during his shift. (A bundle was 100 newspapers.) The company would then multiply the number of bundles by a dollar amount per bundle. Originally, it was $2 per bundle (or $0.02 per newspaper). However, it later went down to $1.50 per bundle (or $0.015 per newspaper) for newly hired promoters. However, AM New York set a floor for a promoter's compensation per shift. If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor, the promoter would be simply paid the floor.

10. When I first started with AM New York, the floor amount was $27 per shift.

11. The floor was later reduced to $21 per shift.

12. Unless a promoter distributed several bundles, the promoter would receive the floor.

13. It was fairly common that promoters only made the floor compensation.

14. A deduction was taken from promoters' biweekly salary for insurance.

15. Promoters were supervised by zone leaders. Zone leaders observed promoters to make sure that they were properly performing their job.

16. A promoter was not permitted to leave his post until after a zone leader had checked him out for the end of his shift.

17. AM New York wanted promoters to distribute all of the bundles of newspapers given to them.

18. Promoters typically worked four or more hours in a shift because of the time it took to distribute the newspapers and/or because they had to wait for their supervisor to check them out for the end of their shift.

19. When I was a promoter, I regularly worked four or more hours in a shift.

20. Orientation and training was given to promoters to teach them how to do the job.

21. AM New York gave promoters strict rules which they were required to follow while performing their jobs.

22. Promoters were told which geographic location they were supposed to work at distributing papers. Promoters could not choose where they would be posted.

23. Promoters were required to work Monday through Friday.

24. Promoters were given a red vest which said "AM New York" which they were required to wear while working.

25. By observation and experience, I know what I described above applied to all AM New York promoters.

26. Attached to this declaration is an example of a sheet that was used by zone leaders to record promoters' starting and ending times, compensation, location, number of bundles/newspapers distributed and rate per bundle. (On one corner of the document, the sheet is labeled "TD/Allen 01243.") When I was a promoter, my zone leader used a similar sheet to record this information for me.

27. On the attached exhibit, the promoter made $1.50 per bundle, and for each day, the promoter distributed 1000 copies of the newspaper, in other words, 10 bundles of 100 newspapers.

28. The promoter on the attached exhibit was paid the floor of $21 for each day because 10 bundles x $1.50 per bundle = $15, which was less than the floor. The promoter's total compensation for the week was $105.

29. The attached exhibit also shows that the promoter worked from 6:00 a.m. to 10:30 a.m. each day.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 17, 2010

John Heywood

**Zone** ______ **Leader Name:** ______________________ **WeekEnd:** ______________

REDACTED

| | | | MON AM | MON PM | TUE AM | TUE PM | WED AM | WED PM | THU AM | THU PM | FRI AM | FRI PM | SAT AM | SAT PM | SUN AM | SUN PM | TOTAL | PROM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date: | 3/27/06 | | 3-28-06 | | 3-29-06 | | 3-30-06 | | 3-31-06 | | 4-1-06 | | 4-2-06 | | | |
| NAME: | | TIME | 6-10[30] | | 6-10[30] | | 6-10[30] | | 6-10[30] | | 6-10[30] | | | | | | 105[00] | |
| HOME ZONE: | | COMP | 21[00] | | 21[00] | | 21[00] | | 21[00] | | 21[00] | | | | | | | |
| PR ID: | $ 1[50] | LOC | 62165 | | 62165 | | 62165 | | 62165 | | 62165 | | | | | | | |
| PHONE: | | NOTE | 1000 COPIES | | 1000 COPIES | | 1000 COPIES | | 1000 COPIES | | 1000 COPIES | | | | | | | |
| NAME: | | TIME | | | | | | | | | | | | | | | | |
| HOME ZONE: | | COMP | | | | | | | | | | | | | | | | |
| PR ID: | $ | LOC | | | | | | | | | | | | | | | | |
| PHONE: | | NOTE | | | | | | | | | | | | | | | | |
| NAME: | | TIME | | | | | | | | | | | | | | | | |
| HOME ZONE: | | COMP | | | | | | | | | | | | | | | | |
| PR ID: | $ | LOC | | | | | | | | | | | | | | | | |
| PHONE: | | NOTE | | | | | | | | | | | | | | | | |
| NAME: | | TIME | | | | | | | | | | | | | | | | |
| HOME ZONE: | | COMP | | | | | | | | | | | | | | | | |
| PR ID: | $ | LOC | | | | | | | | | | | | | | | | |
| PHONE: | | NOTE | | | | | | | | | | | | | | | | |
| NAME: | | TIME | | | | | | | | | | | | | | | | |
| HOME ZONE: | | COMP | | | | | | | | | | | | | | | | |
| PR ID: | $ | LOC | | | | | | | | | | | | | | | | |
| PHONE: | | NOTE | | | | | | | | | | | | | | | | |
| NAME: | | TIME | | | | | | | | | | | | | | | | |
| HOME ZONE: | | COMP | | | | | | | | | | | | | | | | |
| PR ID: | $ | LOC | | | | | | | | | | | | | | | | |
| PHONE: | | NOTE | | | | | | | | | | | | | | | | |



CONFIDENTIAL