UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

In re:

TRIBUNE COMPANY, et al.,

Debtors.

---------------------------------------------------------------x

In re:

TRIBUNE NEW YORK NEWSPAPERS HOLDINGS, LLC,

Debtor

---------------------------------------------------------------x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Chapter 11

Case No. 08-13238 (KJC)

## DECLARATION OF LORETTA GRANT

Loretta Grant declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I am a New York resident.

3. I am a named plaintiff in the class action complaint filed in the Supreme Court of the State of New York against Tribune New York Newspaper Holdings, LLC d/b/a AM New York; Tribune Company; Mitchell's Subscription Service LLC d/b/a LBN Consulting, LLC; and Morning Newspaper Delivery, Inc.

4. I worked as a "promoter" for AM New York from approximately January 2006 until February 2006.

5. Steve Petersheim was in charge of the division of AM New York in which I worked.

6. A promoter's job was to hand out free AM New York newspapers to people.

7. Promoters were required to be at their post handing out newspapers at a scheduled time. The scheduled time to start was between 6:00 and 7:00 a.m. Promoters could not decide the scheduled start of their shift.

8. The promoter's shift was supposed to last around three hours.

9. A promoter's compensation was determined in the following way: First, it would be determined the number of bundles of newspapers the promoter handed out during her shift. (A bundle was 100 newspapers.) The company would then multiply the number of bundles by a dollar amount per bundle. When I worked at AM New York, I (and other newly hired promoters) was paid $1.50 per bundle (or $0.015 per newspaper). However, AM New York set a floor for a promoter's compensation per shift. If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor, the promoter would be simply paid the floor.

10. When I worked at AM New York, I (and other newly hired promoters) was paid $21 per shift as a floor.

11. Unless a promoter was recognized to have distributed many bundles, the promoter would receive the floor. For example, I was paid the greater of $21 per shift or $1.50 per bundle. In order to earn more than $21 per shift, I had to distribute 15 or more bundles of newspapers (1500 or more newspapers). *e.g.* $1.50 x 15 bundles = $22.50.

12. It was fairly common that promoters (including myself) only made the floor compensation. (In fact, I never made more than $21 per shift.)

13. A deduction was taken from my biweekly salary for insurance.

14. Promoters were supervised by zone leaders. Zone leaders observed promoters to make sure that we were properly performing our jobs.

2

15. Promoters were not permitted to leave their post until after a zone leader had checked them out for the end of their shift.

16. AM New York required promoters to distribute all of the bundles of newspapers given to them.

17. Promoters typically worked four or more hours in a shift because of the time it took to distribute the newspapers or because they had to wait for their supervisor to check them out for the end of their shift.

18. As a promoter, I often worked four or more hours in a shift. Sometimes, I even worked five hours in a shift.

19. AM New York had an orientation for promoters to teach them about the job.

20. AM New York gave promoters strict rules which we were required to follow while performing our jobs.

21. Promoters were told which geographic location we were supposed to work at distributing papers. A promoter could not choose where she would be posted.

22. Promoters were required to work Monday through Friday.

23. Promoters were given a red vest which said "AM New York" which we were required to wear while working.

24. By observation and experience, I know what I described above applied to all AM New York promoters.

25. I know there were significantly more than 40 promoters working at AM New York at any one time.

//

//

3

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May __17__, 2010

                                                    Loretta Grant