UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

In re:

TRIBUNE COMPANY, et al.,

Debtors.

-----------------------------------------------------------x

In re:

TRIBUNE NEW YORK NEWSPAPERS
HOLDINGS, LLC,

Debtor

-----------------------------------------------------------x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Chapter 11

Case No. 08-13238 (KJC)

## DECLARATION OF DAMION REID

Damion Reid declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I am a New York resident.

3. In 2004, I was hired as an AM New York "promoter." I was hired by Hayden Polacious, an area leader at 3rd Floor Promotions.

4. My understanding was that 3rd Floor Promotions was part of AM New York, and that 3rd Floor Promotions was run by Steve Petersheim.

5. In early 2005, I was promoted to the position "zone leader," and I supervised promoters in my zone. Aside from a few months in 2005, I continued to work for AM New York until December 2006.

6. A promoter's job was to hand out free AM New York newspapers to people.

7. Promoters were required to be at their post handing out newspapers at a scheduled time. The scheduled time to start was between 6:00 and 7:00 a.m. Promoters could not decide the scheduled start of their shift.

8. The promoter's shift was supposed to last around three hours.

9. A promoter's compensation was determined in the following way: First, it would be determined the number of bundles of newspapers the promoter handed out during his shift. (A bundle was 100 newspapers.) The company would then multiply the number of bundles by a dollar amount per bundle. Originally, it was $2 per bundle (or $0.02 per newspaper). AM New York set a floor for a promoter's compensation per shift. If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor, the promoter would be simply paid the floor.

10. When I first started with AM New York, the floor amount was $27 per shift.

11. The floor was later reduced to $21 per shift for new promoters. During much of my employment, promoters' base compensation was $21 per shift.

12. Unless a promoter was recognized to have distributed many bundles, the promoter would receive the floor. It was fairly common that promoters only made the floor compensation.

13. A deduction was taken from promoters' biweekly salary for insurance.

14. I know there were significantly more than 40 promoters working at AM New York at any one time.

15. Promoters were supervised by zone leaders. Zone leaders observed promoters to make sure that they were properly performing their job.

16. A promoter was not permitted to leave their post until after a zone leader had checked them out for the end of their shift.

17. AM New York wanted promoters to distribute all of the bundles of newspapers given to them.

18. It was quite common for promoters to work longer than three hours because they were either waiting for the supervisor to check them out for the end of their shift or were distributing the rest of their newspapers.

19. Promoters sometimes worked four hours in a shift.

20. An orientation and training was given to promoters to teach them how to do the job.

21. Promoters were told which geographic location they were supposed to work at distributing papers. Promoters could not choose where they would be posted.

22. Promoters were required to work Monday through Friday.

23. Promoters were given a red vest which said "AM New York" which they were required to wear while working.

24. By observation and experience, I know what I described above applied to all AM New York promoters.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2010

_____
Damion Reid