UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:

TRIBUNE COMPANY, et al.,

Debtors.

------------------------------------------------------------x

In re:

TRIBUNE NEW YORK NEWSPAPERS
HOLDINGS, LLC,

Debtor

------------------------------------------------------------x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Chapter 11

Case No. 08-13238 (KJC)

## DECLARATION OF SEAN SERRAO

Sean Serrao declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration based on personal knowledge unless indicated otherwise.

2. I am a New York resident.

3. I am a named plaintiff in the class action complaint filed in the Supreme Court of the State of New York against Tribune New York Newspaper Holdings, LLC d/b/a AM New York; Tribune Company; Mitchell's Subscription Service LLC d/b/a LBN Consulting, LLC; and Morning Newspaper Delivery, Inc.

4. I worked as a "promoter" for AM New York in 2006.

5. A man named Steve was in charge of the division of AM New York in which I worked.

6. A promoter's job was to hand out free AM New York newspapers to people.

7. Promoters were required to be at their post handing out newspapers at a scheduled time. The scheduled time that I started my morning shift was 6:00 a.m. Promoters could not decide the scheduled start of their shift.

8. A promoter's compensation was determined in the following way: First, it would be determined the number of bundles of newspapers the promoter handed out during her shift. (A bundle was 100 newspapers.) The company would then multiply the number of bundles by a dollar amount per bundle. When I worked at AM New York, I was paid $1.50 per bundle (or $0.015 per newspaper). However, AM New York set a floor for a promoter's compensation per shift. If the amount of money that the promoter would earn based upon the bundles distributed was less than the floor, the promoter would be simply paid the floor.

9. When I worked at AM New York, I was paid $21 per shift as a floor.

10. It was fairly common that promoters only made the floor compensation.

11. I know that a deduction was taken from my paycheck, although I was not sure the reason.

12. Promoters were supervised by zone leaders. Zone leaders observed promoters to make sure that we were properly performing our jobs.

13. Promoters were not permitted to leave their post until after a zone leader had checked them out for the end of their shift.

14. AM New York wanted promoters to distribute all of the bundles of newspapers given to them.

15. Promoters typically worked four or more hours in a shift because of the time it took to distribute the newspapers and/or because they had to wait for their supervisor to check them out for the end of their shift.

16. As a promoter, I often worked four or more hours in a shift.

17. AM New York had an orientation for promoters to teach them about the job.

18. AM New York gave promoters strict rules which we were required to follow while performing our jobs.

19. Promoters were told which geographic location we were supposed to work at distributing papers. A promoter could not choose where he would be posted.

20. Promoters were required to work Monday through Friday.

21. Promoters were given a red vest which said "AM New York" which we were required to wear while working.

22. By observation and experience, I know what I described above applied to all AM New York promoters.

23. I know there were significantly more than 40 promoters working at AM New York at any one time.

//
//
//
//
//
//
//
//
//
//

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 18, 2010

_____
Sean Serrao