IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br>**Hearing Date: June 16, 2010 at 11:00 a.m. (ET)**<br>**Objection Deadline: June 9, 2010 at 4:00 p.m. (ET)** |

## SECOND SUPPLEMENTAL APPLICATION FOR AN ORDER MODIFYING THE SCOPE OF THE RETENTION OF ERNST AND YOUNG LLP TO INCLUDE CERTAIN VALUATION SERVICES IN CONNECTION WITH THE APPLICATION OF FRESH START ACCOUNTING PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107 *NUNC PRO TUNC* TO APRIL 19, 2010

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors") hereby submit this Second Supplemental Application (the "Second Supplemental Application") for entry of an order, in substantially the form submitted herewith, modifying the scope of the Debtors' already-authorized employment of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Ernst and Young LLP ("E&Y"). E&Y is currently retained by the Debtors pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to provide (i) valuation and business modeling services, (ii) market survey services, and (iii) valuation services for certain FCC licenses held by the Debtors. The terms of E&Y's existing retention by the Debtors are summarized in (a) the Debtors' Application for an Order Authorizing Debtors to Retain and Employ Ernst and Young LLP to provide (i) valuation and business modeling services and (ii) market survey services to the Debtors, pursuant to section 327(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules, nunc pro tunc to May 31, 2009, which was filed on June 5, 2009 [Docket No. 1298] (the "Application") and subsequently approved by an order of this Court on July 21, 2009 [Docket No. 1783] (the "Original Retention Order"); and (b) the Debtors' Supplemental Application for an Order Modifying the Scope of the Retention of Ernst and Young LLP to include continued performance of valuation services relating to FCC licenses, pursuant to sections 327(a) and 1107 of the Bankruptcy Code, nunc pro tunc to January 15, 2010, which was filed on February 22, 2010 [Docket No. 3516] (the "Supplemental Application") and subsequently approved by an order of this Court on March 22, 2010 [Docket No. 3804] (the "Supplemental Retention Order"). The Application and Supplemental Application are hereby incorporated by reference.[2]

The limited purpose of this Second Supplemental Application is to modify the retention of E&Y to encompass certain valuation services related to the application of fresh start accounting and plan of reorganization adjustments upon the Debtors' emergence from bankruptcy (collectively, the "Fresh Start Accounting Valuation Services"). The Fresh Start

---

[2] The Debtors also incorporate herein by reference the Affidavit of Matthew Howley in Support of the Application, which was filed on June 5, 2009 [Docket No. 1298].

Accounting Valuation Services provided by E&Y are described in that certain Statement of Work, dated as of May 11, 2010, by and between E&Y and the Debtors (the "SOW"), a copy of which is attached hereto as Exhibit A. Such services are necessary to the Debtors' successful emergence from chapter 11 but are outside of the scope of the valuation services authorized by the Original Retention Order and the Supplemental Retention Order. Accordingly, the Debtors submit this Second Supplemental Application to encompass the Fresh Start Accounting Valuation Services and obtain Court approval for the SOW. In support of this Second Supplemental Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Tribune CNLBC, LLC,[3] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[3] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

4.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee.

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND TO THE SECOND SUPPLEMENTAL APPLICATION

6.      Pursuant to the Original Retention Order, E&Y was authorized to provide certain valuation services to assist Tribune Company ("Tribune") in testing for the impairment of goodwill and other indefinite lived tangible assets recorded in Tribune's consolidated financial statements (the "Assets") in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 142 ("SFAS 142"), and to test for the recoverability of certain long-lived assets of Tribune in accordance with the professional guidance outlined in Statement of Financial Accounting Standards No. 144 ("SFAS 144") and to provide the Debtors with certain market survey services, including providing broadcasting marketing analyses according to the terms of the Market Services Agreements (as defined in the Application). Pursuant to the Supplemental Retention Order, E&Y was authorized to provide valuation and business modeling services in connection with certain FCC licenses (the "FCC Licenses") held by the Debtors, including determining the fair market value of the FCC Licenses as of November 30, 2009 and testing for the impairment of the FCC Licenses, in accordance with SFAS 142.

7.      At the time of emergence from these chapter 11 cases, the Debtors will implement so-called "fresh start accounting" to transition their financial statements from a

chapter 11 environment to a non-chapter 11 environment. "Fresh start" accounting refers to the adjustment in the basis of financial reporting of a reorganized debtor as of the date it emerges from bankruptcy, such that all of the reorganized debtor's assets and liabilities are restated from historical values to fair market values.[4] In addition, the debtor's income statement, statements of cash flow, statements of shareholder equity, and other financing statements are reset. Thus, a reorganized debtor emerges from bankruptcy with a clean slate for accounting purposes, rather than as a continuation of the old entity. Implementing such a process in an enterprise of the size and complexity as that of the Debtors' often requires several months of advance preparation by the Debtors' in-house accounting personnel and outside accounting advisors.[5]

8.     The Debtors continue to progress towards the approval of the Disclosure Statement and confirmation of a chapter 11 plan of reorganization. Following the hearing to consider approval of the Disclosure Statement on May 20, 2010, the Debtors anticipate obtaining final Court approval of the Disclosure Statement and commencing the solicitation process on the Plan in late May, and the Bankruptcy Court has previously allocated time in mid-August for the confirmation hearing on the Plan. Given these upcoming dates, and the numerous other tasks that the Debtors will be required to complete before they can emerge from their chapter 11 cases – each of which requires the time and attention of the Debtors and their advisors – the Debtors have undertaken the initial planning and prepatory steps necessary to transition to fresh start accounting.

---

[4] According to Accounting Standards Codification 820 ("ASC 820"), fair value is defined as "the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date."

[5] On April 30, 2010, the Debtors filed the Supplemental Application for an Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP ("PwC") to Include Certain Advisory Services in Connection with the Application of Fresh Start Accounting Services Pursuant to 11 U.S.C. §§ 327(a) and 1107 Nunc Pro Tunc to February 8, 2010 (DI 4216), and subsequently approved by order of this Court dated May 14, 2010 (DI 4414). The valuation services provided by E&Y with respect to the Debtors' implementation of fresh start accounting are complementary and will not duplicate the project management and related accounting services provided by PwC.

9. Accordingly, Tribune and E&Y have recently negotiated and entered into the SOW, pursuant to which E&Y has agreed to provide the Fresh Start Accounting Valuation Services.[6] Assistance with the valuation of the Debtors' assets for the purposes of fresh start accounting was not among the services that E&Y or the Debtors contemplated under their existing engagement letters and statements of work that were the basis of the Application and the Supplemental Application, nor has it been necessary to date for the Debtors to retain an outside professional to assist with such services. The Fresh Start Accounting Valuation Services to be provided by E&Y include the valuation of the Debtors' tangible personal property, certain portions of the Debtors' inventory, and intangible assets. Specific tasks to be performed by E&Y in connection with the Debtors' valuation for fresh start accounting purposes include, but are not limited to, the following:

    a. Consideration of applicable economic, industry, and competitive environments, including relevant historical and future estimated trends;

    b. Application of the Income, Market and/or Cost Approaches to value;

    c. Preparation of a narrative report summarizing the methodologies employed in the valuation analysis, the assumptions upon which the analysis was based, and E&Y's recommendations;

    d. Allocation of the business enterprise value of Tribune Company to its reporting units;

    e. Consideration of applicable economic, industry, and competitive environments in which the Debtors' reporting units operate;

    f. Analysis and valuation of the Debtors' tangible personal property, including (i) leasehold improvements; (ii) machinery and equipment; (iii) spare parts inventory; (iv) warehouse equipment; (v) vehicles; and (vi) other assets;

---

[6] To the extent that the summary of the proposed engagement described herein differs from the terms of the SOW attached hereto as Exhibit A, the terms of the SOW shall control.

      g. Analysis and valuation of the Debtors' intangible assets, including (i) mastheads; (ii) subscriber relationships; (iii) advertiser relationships; (iv) commercial printing and distribution agreements; (v) network affiliation agreements; (vi) MSO agreements; (vii) FCC licenses; (viii) database technology; and (ix) assembled workforce; and

      h. Reconciliation and componentization of significant tangible personal property to assign fair values to the Debtors' individual assets and reconcile to the historical tax basis for the individual assets.

10. The Fresh Start Accounting Valuation Services contemplated in the SOW will not be duplicative of those services provided by any other of the Debtors' professionals, including PwC and Lazard Frères & Co., LLC, and the Debtors will coordinate any services performed by E&Y covered by the SOW with the services provided by the Debtors' other professionals, as appropriate, to avoid duplication of effort.

## RELIEF REQUESTED

11. By this Second Supplemental Application, the Debtors seek authorization to employ and retain E&Y nunc pro tunc to April 19, 2010, to provide the Fresh Start Accounting Valuation Services in connection with the Debtors' transition to fresh start accounting, as outlined in the SOW attached hereto as Exhibit A and in accordance with the engagement letter dated May 15, 2009 between Tribune and E&Y (the "Agreement") which was approved by this Court pursuant to the Original Retention Order.

12. Modifying the scope of E&Y's representation to include the Fresh Start Accounting Valuation Services is in the best interests of the Debtors' estates and creditors because E&Y is best positioned to perform the needed services efficiently and economically on behalf of the Debtors. The partners, managers and staff of E&Y, through E&Y's prior work for the Debtors, are very familiar with the Debtors, their business operations, their financial

statements, and certain of their tangible and intangible assets that are the subject of the valuation to be performed pursuant to the SOW. It is in the best interest of the estates and creditors that the Debtors retain E&Y to continue to perform the necessary Fresh Start Accounting Valuation Services, as the time and cost associated with engaging new consultants who are unfamiliar with the Debtors and their assets would be both costly and inefficient. The Debtors therefore request this Court's authorization to approve the expansion of E&Y's Application to include the Fresh Start Accounting Valuation Services pursuant to the terms of the SOW, nunc pro tunc to April 19, 2010.

13. Subject to the Court's approval, E&Y will charge the Debtors for its performance of the Fresh Start Accounting Valuation Services on the basis described in the SOW, in accordance with the applicable orders of this Court concerning the compensation of professionals in the Debtors' chapter 11 cases. See Application at ¶¶ 14-15. E&Y estimates that its fees in connection with the Fresh Start Accounting Valuation Services will range from approximately $600,000 to approximately $700,000 in total. The projected amount of E&Y's fees as described in this paragraph is provided solely as an estimate and is not intended to be construed as a cap on E&Y's fees, nor are the Debtors requesting a cap on E&Y's fees. Moreover, the projected amounts of E&Y's fees described in this paragraph are subject to change depending upon unforeseen events or delays in connection with this engagement, and E&Y has not agreed to these projected amounts or timeframes given the possibility of such unforeseen events or delays.

## LEGAL AUTHORITY

14. The Debtors' existing retention of E&Y, and the proposed modification of that retention described herein, are pursuant to section 327(a) of the Bankruptcy Code, which

provides in relevant part that a debtor in possession, with the Court's approval, may employ professionals (such as attorneys or accountants) "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; see also In re BH&P, Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (citing In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988) (for a professional to be retained, such professional "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. See 11 U.S.C. § 101(14)(e).

15. To the best of the Debtors' knowledge, information and belief, and based on E&Y's representations in the Howley Affidavit, E&Y is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, eligible for employment in these cases.

16. In the instant case, the retention of E&Y by the Debtors with respect to the Fresh Start Accounting Valuation Services is in the best interests of the Debtors' estates, and satisfies all other standards for retention under sections 327(a) and 1107. The Fresh Start Accounting Valuation Services are similar in nature to the valuation services already within the scope of the types of services for which the E&Y is currently retained by the Debtors and this Second Supplemental Application and SOW should as a result be approved by the Court.

17. Tribune seeks to retain E&Y nunc pro tunc to April 19, 2010, the point at which E&Y first began providing the Fresh Start Accounting Valuation Services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. See, e.g., In re Arkansas Co., Inc., 798 F.2d 645, 648 (3d Cir. 1986); In re Primary Health Sys. Inc., 2002 WL 500567 (D. Del. Mar. 28,

2002). In determining whether the court should exercise its discretion to grant retroactive approval the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327(a), and may consider additional factors such as (1) whether the applicant was under time pressure to begin service without approval; (2) the amount of delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. In re Arkansas Co., Inc., 798 F.2d at 650.

18.  As noted above, the Debtors and E&Y have begun to undertake the initial planning and prepatory steps related to the transition to fresh start accounting, and the services rendered by E&Y prior to the date of this Second Supplemental Application are preliminary in nature and on a limited basis. Meanwhile, Tribune and E&Y have been negotiating the terms of the SOW (the completion of which was necessary in advance of the filing of this Second Supplemental Application) and preparing this Second Supplemental Application. As a result of the Debtors' request that E&Y commence the Fresh Start Accounting Valuation Services prior to the finalization of the SOW and the filing of this Second Supplemental Application, E&Y has incurred approximately $35,000 in fees since April 19, 2010. The Debtors believe that these amounts and E&Y's future compensation do not prejudice innocent third parties. The Debtors therefore request that the Court approve E&Y retention on a nunc pro tunc basis in order to cover the period in which those fees were incurred, as well as subsequent periods.

19.  The authority to retain consultants to assist with a chapter 11 debtor's transition to fresh start accounting has been granted to other chapter 11 debtors by courts in this and other districts. See, e.g., In re CIT Group Inc., Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. Jan. 26, 2010) (authorizing the retention of KPMG LLP to provide fresh start accounting services, among other services); In re Chemtura Corp., Case No. 09-11233 (REG) (Bankr.

S.D.N.Y Nov. 23, 2009) (authorizing the retention of Deloitte Financial Advisory Services LLP to provide fresh start accounting services, among other services); In re UTGR, Inc. d/b/a Twin River, et al., Case No. 09-12418 (ANV) (Bankr. D.R.I. Nov. 18, 2009) (authorizing the retention of PricewaterhouseCoopers to provide fresh start accounting services, among other services); In re Lyondell Chem. Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Oct. 20, 2009) (expanding the scope of PricewaterhouseCoopers' existing retention as independent auditors and accountants to include fresh start accounting services); In re Visteon Corp., Case No. 09-11786 (CSS) (Bankr. D. Del. Oct. 7, 2009) (expanding the scope of E&Y's existing retention to include fresh start accounting and valuation services). The Debtors therefore request this Court's authorization to approve the expansion of E&Y's services on behalf of the Debtors pursuant to the terms of the SOW.

## NOTICE

20. Notice of this Second Supplemental Application has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) counsel for the administrative agents for Tribune Company's prepetition loan facilities; (iv) the administrative agent for Debtors' postpetition loan facility; (v) counsel to E&Y; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

21. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto, (i) authorizing the Debtors' second supplemental application and retention of E&Y to perform the Fresh Start Accounting Valuation Services in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code nunc pro tunc to April 19, 2010, pursuant to the terms of the SOW, and (ii) granting to the Debtors such other relief as may be just and proper.

Dated: May 24, 2010

                                         TRIBUNE COMPANY
                                         (for itself and on behalf of each Debtor)

                                         */s/ Brian Litman*
                                         Brian Litman
                                         Vice President/Corporate Controller

CH1 5314543v1