## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ---------------------------------------------------- x | Chapter 11 |
| In re: | : |
| | : Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, et al., | : |
| | : Jointly Administered |
| Debtors. | : |
| | : Objections Due: June 14, 2010 |
| | : @ 4:00 p.m.(ET) |
| ---------------------------------------------------- x | Hearing Date: N/A |

### SIXTEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 1, 2010 THROUGH APRIL 30, 2010

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | April 1, 2010 through April 30, 2010 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $734,608.60      (80% of $918,260.75) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $59,270.50 |

This is a(n):    __x__ Monthly        _____ Interim        _____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |

| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

### TRIBUNE COMPANY, et al.
### SUMMARY OF HOURS
### April 1, 2010 through April 30, 2010

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2010 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $965 | 151.60 | 144,750.00 |
| Richard M. Leder (1988) | Tax | 1962 (NY) | 965 | 12.10 | 11,676.50 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 855 | 162.80 | 139,194.00 |
| Marc A. Alpert (1995) | Corporate | 1987 (NY) | 825 | 3.60 | 2,970.00 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 825 | 50.20 | 41,415.00 |
| N. Theodore Zink, Jr. (1997) | Bankruptcy & Financial Restructuring | 1984 (MS) 1991 (IL) 1996 (NY) | 795 | 59.90 | 47,620.50 |
| Robert Schwinger (1994) | Litigation | 1985 (NY) | 785 | 12.40 | 9,734.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 695 | 169.30 | 117,663.50 |
| Dana Frix (2002) | Communications and Technology | 1989 (PA) 1991 (DC) 2001 (VA) | 675 | 5.80 | 3,915.00 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 650 | 6.90 | 4,485.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 645 | 66.70 | 43,021.50 |
| Francisco Vazquez | Bankruptcy and Financial Restructuring | 1995 (NJ) 1996 (NY) | 625 | 60.60 | 37,875.00 |
| James A. Stenger | Communications and Technology | 1978 (DC) | 495 | 89.70 | 43,411.50 |
| | | | | | |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2010 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Associate:** | | | | | |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 625 | 1.00 | 625.00 |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 595 | 54.50 | 32,427.50 |
| Elizabeth M. Miller | Real Estate | 1989 (CA) 1996 (DC) 1997 (NY) | 595 | 2.30 | 1,368.50 |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 595 | 43.10 | 25,644.50 |
| Robert Kirby | Litigation | 2008 (NY) | 475 | 7.40 | 3,515.00 |
| Meghan Towers | Bankruptcy & Financial Restructuring | 2008 (NY) | 475 | 25.50 | 12,112.50 |
| Blake Betheil | Tax | 2009 (NY) | 405 | 14.20 | 5,751.00 |
| Bonnie Dye | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 3.10 | 1,255.50 |
| Rachel Kurth | Employee Benefits | 2009 (NY) | 405 | 6.30 | 2,551.50 |
| Francesca Perkins | Litigation | 2009 (NY) | 405 | 25.30 | 10,246.50 |
| Megan Strand | Communications and Technology | 2009 (NY) | 405 | 42.40 | 17,172.00 |
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 65.90 | 26,689.50 |
| Kimberly Zafran | Litigation | 2009 (NY) | 405 | 7.20 | 2,916.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | JD-2009 | 355 | 69.30 | 24,601.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 355 | 161.50 | 56,746.75 |
| | | | | | |

| Paraprofessionals: | | | | | |
|---|---|---|---|---|---|
| Lori Moloney | Litigation | n/a | 305 | 1.10 | 335.50 |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 270 | 40.60 | 10,962.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 270 | 31.20 | 8,424.00 |
| Marisa Iacopelli | Litigation | n/a | 240 | 90.20 | 21,648.00 |
| Lissette Mendoza | Litigation | n/a | 240 | 10.50 | 2,520.00 |
| Aram Hanessian | Bankruptcy & Financial Restructuring | n/a | 185 | 14.90 | 2,756.50 |
| | | | | | |
| Librarian: | | | | | |
| Marjorie Richmond | n/a | n/a | 200 | 1.30 | 260.00 |
| | | | | | |
| TOTAL: | | | | 1,570.40 | 918,260.75 |

BLENDED RATE:     $586.70

_____

* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x   Chapter 11
In re:                                                  :
                                                        :   Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                :
                                                        :   Jointly Administered
              Debtors.                                  :
                                                        :   Objections Due: June 14, 2010
                                                        :   @ 4:00 p.m.(ET)
------------------------------------------------------- x   Hearing Date:  N/A
```

**SIXTEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
APRIL 1, 2010 THROUGH APRIL 30, 2010**

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $918,260.75 (80% of which equals $734,608.60) and reimbursement of expenses incurred in the amount of $59,270.50 during the period commencing April 1, 2010 through and including April 30, 2010 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

### COMPENSATION PAID AND ITS SOURCES

8.      All services for which compensation is requested by Chabourne were performed

for or on behalf of the Committee.

9.      During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

### FEE STATEMENTS

10.      The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2, and the

Compensation Order.

### SUMMARY OF SERVICES

11.      As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $918,260.75.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

12.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.     Bankruptcy General (Matter 002)**

Fees:  $26,530.00        Total Hours:    66.40

13.     During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

14.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**     **Committee Meetings (Matter 003)**

    Fees:  $65,570.00       Total Hours:    105.50

    15.     Regular and special meetings of the Committee (the "Committee Meetings") were held during the Application Period and generally occurred weekly, either by telephone conference or in person, to review the Debtors' operational initiatives, the Debtors' finances, pending motions, the plan and disclosure statement, the LBO/ESOP investigation and related issues, options related to the Debtors' assets, tax issues and numerous other issues regarding the administration of the Debtors' cases.  Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting all meeting minutes.

**C.**     **Creditor Communications (Matter 004)**

    Fees:  $2,866.00       Total Hours:    4.00

    16.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries.  During the Application Period, Chadbourne attorneys reviewed and responded to correspondence and other inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.    Business Operations (Matter 007)**

Fees:  $84,716.00        Total Hours:    167.20

17.    During the Application period, Chadbourne attorneys devoted time with respect to corporate and transactional matters concerning the Debtors' businesses.  Efforts included further time devoted by Chadbourne's corporate group to analyze a transaction involving Tribune's interest in Food Networks and potential implications resulting therefrom.

18.    During the Application Period, substantial efforts continued to be exerted with respect to Federal Communications Commission ("FCC") matters.  Among other things, attorneys from Chadbourne's Communications and Technology Group reviewed, commented on and performed related legal research on the Debtors' FCC applications as well as on numerous provisions in the Debtors' draft plan, disclosure statement and solicitation materials which relate to FCC matters.  Chadbourne also accompanied Debtors' counsel to several meetings with FCC representatives regarding the applications.   The culmination of the extensive FCC related analysis and research performed by Chadbourne was summarized in both a written report and an in-person presentation to the Committee.

19.    During the Application Period, Chadbourne reviewed and analyzed two motions filed by the Debtors to enter into settlement agreements with the State of California and the State of Connecticut, both involving tax disputes.  Chadbourne analyzed the relief requested, performed related legal research and engaged in discussions with Debtors' counsel on specifics of the underlying agreements to ensure the relief was appropriate, fair and beneficial to the Debtors' estates.

20.     Finally, Chadbourne attorneys continued to review and monitor issues involving the Debtors' day-to-day business operations.  This included the review of weekly operations and financial reports prepared by the Committee's financial advisors as well as the Debtors' 2010 business plan.

**E.    Claims Administration/Bar Date (Matter 009)**

Fees:  $15,242.00          Total Hours:    32.00

21.     During the Application Period, Chadbourne continued to expend efforts in connection with the claims process.  Efforts included reviewing the Debtors' nineteenth through twenty-sixth omnibus objections to claims as well as one stand-alone objection to the claim of Robert Henke.  Chadbourne reviewed and evaluated the relief requested in the motions as well as the bases and processes followed by the Debtors in pursuing the objections and performed follow-up with the Committees' financial advisors where appropriate.  Further, Chadbourne updated the Committee on the details of the requested relief by the Debtors and recommended a Committee course of action.

22.     During this time, Chadbourne continued to work in cooperation with the Debtors to review and negotiate certain retiree claims.  As a result, the resolution of these claims was reflected in the consensual settlement agreement which was incorporated in the Debtors' plan of reorganization.

**F.**  **Fee/Retention Applications (Matter 010)**

Fees:  $30,759.00        Total Hours:  73.30

23.     During the Application Period, the Debtors filed an application to expand the

scope of the existing retention of Lazard Frères in connection with additional services to

provided on the Food Networks matter.  Chadbourne reviewed the application in order to

ensure its reasonableness and summarized its research in memoranda to the Committee.

24.     Chadbourne expended further time during the Application Period in compliance

with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing

its fifteenth monthly fee application and fifth interim fee application.  In addition, Chadbourne

prepared and filed the Committee's tenth request for reimbursement of expenses.

25.     During this time, Chadbourne continued to research and address issues raised in

the Fee Examiner's initial report on Chadbourne's third interim fee application.  Chadbourne

participated in discussions with the Fee Examiner to resolve certain concerns and,

subsequently, finalized and submitted its response to the report.

26.     In continuance of an ongoing process, Chadbourne expended time on the

treatment of ordinary course professionals.  These efforts included the review and analysis of

filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and

monthly fee caps in connection with same.

**G.    Plan and Disclosure Statement (Matter 011)**

Fees: $207,226.50          Total Hours:   305.30

27.    During the Application Period, Chadbourne attorneys continued to be actively engaged in the plan and confirmation process.  After lengthy and contentious negotiations among certain creditor constituencies on the LBO/ESOP Transaction, an agreement was reached and was reflected in a Settlement Support Agreement.  Resolution of the LBO/ESOP Transaction was key to the Debtors filing of a proposed disclosure statement and plan of reorganization on April 12, 2008.  The plan and disclosure statement embodied the essential terms of the Settlement Support Agreement.

28.    Chadbourne professionals reviewed and analyzed the Debtors' draft plan and disclosure statement and researched numerous issues raised in the plan including, among other things, pension/compensation matters, releases, and various FCC issues.   Chadbourne also expended time reviewing the solicitation motion and related materials.   Chadbourne and Debtors' counsel engaged in numerous discussions regarding the draft plan, disclosure statement and solicitation materials, during which various terms were negotiated.

29.    During this time, Chadbourne prepared a comprehensive analysis outlining the structure and substantive issues of the plan documents for presentation to the Committee.

**H.**    **Tax Issues (Matter 016)**

Fees: $18,109.00        Total Hours:    27.30

30.    During the Application Period, professionals from Chadbourne's tax group reviewed the terms of draft plan of reorganization and disclosure statement to ascertain the U.S. federal income tax consequences of adopting the proposed Plan from various perspectives, including the perspective of creditors.  Further, Chadbourne provided tax-related comments and proposed changes to language in the draft Plan and U.S. federal income tax disclosure in draft Disclosure Statement.

**I.**    **General Litigation (Matter 017)**

Fees: $364,625.50        Total Hours:    558.00

31.    During the Application Period, Chadbourne's bankruptcy and litigation professionals continued to be engaged in matters relating to actions taken by Wilmington Trust Company ("WTC"), including WTC's motion for an appointment of an examiner (the "Examiner Motion").  In preparing for the April 13, 2010 hearing, Chadbourne professionals continued to review and address issues raised in the Examiner Motion as well as motions filed by the Debtors and JPMorgan Chase related to WTC's actions in these bankruptcy cases. (These filings are more fully described in Chadbourne's March Application).   Accordingly, Chadbourne attorneys expended time researching, preparing and filing a statement in support of the Debtors' and JPM's filings.

32.    During the April 13, 2010 hearing, Judge Carey indicated that he was inclined to appoint an Examiner.  Because it appeared that there could be substantial disputes among

certain parties as to the scope, cost and duration of the Examiner, the Judge granted the parties

request for a status conference on April 19, 2010 to address and resolve those issues.  Over the

weekend, prior to the status conference, the U.S. Trustee circulated a draft Order Directing the

Appointment of an Examiner (the "Order), together with a request that all Examiner

nominations be submitted by close of business on April 21, 2010.  Chadbourne participated in

intense negotiations among the various parties and reviewed and provided comments to the

draft Order.  Ultimately, all relevant parties agreed to the terms of the Order.

33.    During this time, in accordance with the U.S. Trustee's request, Chadbourne

participated in discussions with Committee members, Committee professionals and the Debtors

regarding potential Examiner candidates.  Based on these discussions, Chadbourne reviewed

resumes and related materials, performed background research and engaged in discussions with

potential candidates.  Further review and research was performed on those nominees put forth

by other relevant parties in order to ensure the selection of the most qualified and practical

candidate.  As a result, Chadbourne prepared and submitted to the U.S. Trustee a list of

candidates approved by the Committee.  The U.S. Trustee ultimately selected Kenneth N. Klee,

Esquire as Examiner in these Chapter 11 cases, and his appointment was authorized by the

Bankruptcy Court by Order dated May 10, 2010.

34.    Following discussions with the Examiner's counsel, professionals from

Chadbourne's bankruptcy and litigation teams assumed the task of preparing a comprehensive

submission to the Examiner relating to the Committee's investigation of the LBO/ESOP

Transaction.  In that context, Chadbourne and the Committee's other professionals reviewed

and discussed issues raised by the document production including, among other things, scope,

substance and privilege issues.  Numerous materials and work product were reviewed and prepared for submission.   This is a substantial undertaking which is ongoing.

35.     Finally, during the Application Period, the Committee was served a request from WTC seeking certain information related to the Committee's LBO investigation.  Chadbourne's litigation team reviewed and discussed issues arising from the WTC request and gathered and prepared the relevant information in response thereto.

**J.     Travel (Matter 018)**

Fees:  $3,119.75          Total Hours:    10.50

36.     During the Application Period, Chadbourne attorneys travelled to Wilmington, Delaware to attend omnibus hearings at the Bankruptcy Court.  During this time, one of Chadbourne's Washington DC-based attorneys, with very specialized skills (FCC counsel), travelled to New York to participate in an in-person Creditors' Committee meeting.  The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**K.     Review of Prepetition Financings (Matter 019)**

Fees:  $99,497.00      Total Hours:    220.90

37.     During the Application Period, Chadbourne attorneys expended further time on the ongoing comprehensive review of the Debtors' prepetition financing documents and capital structure as part of the Committee's review and analysis of potential challenges that could be asserted with respect to certain prepetition LBO/ESOP Transaction.   Chadbourne's team of professionals continued to receive and review documents during this time that, to date, totalled

approximately 325,000 documents and computer records (over 4 million pages of materials) since the discovery process began through the Application Period. Finally, as noted above and from the amount of time expended in this matter, the 2007 LBO/ESOP Transaction review/investigation is a massive undertaking involving over 40 professionals and paraprofessionals working for Chadbourne alone. This should not be surprising given what is at stake: over $11 billion in claims.

38.    In addition, and as part of its ongoing analysis of the Settlement Support Agreement and related plan issues, Chadbourne attorneys continue analyzing the legal standards and requirements of such potential challenges and any possible defenses and other considerations related thereto. In particular, Chadbourne analyzed the validity of certain guarantees and the affect of the avoidance thereof and the possibility of addressing the LBO/ESOP Transaction claims in a plan of reorganization.

39.    Chadbourne's analysis was significant to the negotiations of the settlement of the claims and causes of action arising from the LBO/ESOP Transaction. Chadbourne's LBO/ESOP investigation team expended great efforts in the negotiations and various settlement permutations which resulted in the approval of a Settlement Support Agreement reached with certain creditor constituencies on April 8, 2010. Finally, as noted above, the settlement was ultimately embodied in the Debtors' draft plan of reorganization.

## ACTUAL AND NECESSARY EXPENSES

40.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $59,270.50 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

41.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

42.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

43.     With respect to court reporter fees, Chadbourne utilized the services of an outside vendor (TSG Reporting) for transcript services of depositions and Bankruptcy Court hearings.

In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

44.    In connection with the LBO/ESOP transaction investigation, Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS").  The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

45.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

46.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

47.    Attorneys and paraprofessionals of Chadbourne have expended a total of 1,570.40 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are

Chabourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $918,260.75.

48.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

49.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period April 1, 2010 through April 30, 2010:  (a) authorizing compensation in the amount of $918,260.75 (80% of which equals $734,608.60) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $59,270.50 for a total of $977,531.25; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   May 25, 2010
       New York, New York

CHADBOURNE & PARKE LLP

By: _____
     Douglas E. Deutsch
     (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

## VERIFICATION

STATE OF NEW YORK    :
                     :  ss:
COUNTY OF NEW YORK   :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)    I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 2009.

(b)    I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)    I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
25th day of May 2010

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2010