## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 08-13141 (KJC) |
| TRIBUNE COMPANY, *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re:  D.I. No. 4598** |

### OBJECTION OF THE
### WASHINGTON-BALTIMORE NEWSPAPER GUILD
### TO THE PROPOSED DISCLOSURE STATEMENT FOR PROPOSED
### AMENDED JOINT PLAN OF REORGANIZATION
### FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES

Washington-Baltimore Newspaper Guild, Local 32035 of The Newspaper Guild-CWA, AFL-CIO ("Guild"), by and through its undersigned counsel, hereby objects to the Proposed Disclosure Statement for Proposed Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries filed with this Court on May 24, 2010 [D.I. No. 4598]. The Guild respectfully believes the Debtors' current description of the TMIP and KOB programs submitted as part of their Plan of Reorganization fails to provide stakeholders with the information necessary to reach an "informed" judgment with regard to these aspects of the Plan. 11 U.S.C. §1125(a)(1). Additionally, the Guild believes inclusion of these plans makes the Debtors' Plan of Reorganization un-confirmable.

1.      On July 22, 2009, the Debtors filed a motion seeking authorization to pay more than $45.6M in bonuses through a Management Incentive Program ("MIP") for approximately 720 managerial employees, a $10.6M Transition MIP ("TMIP") for 21 managers plus a discretionary 1.3 million for 50 other employees, and a Key Operators Bonus ("KOB") of $9.3M for 23 employees. The Debtors described these plans as ordinary course incentive programs.

2.      Thereafter, the Guild and the United States Trustee challenged these programs, in part, on the ground that they were hardly ordinary course transactions, and they contravened Section 503(c) of the Bankruptcy Code.

3.      During a hearing on September 25, 2009, the Guild and the United States Trustee introduced substantial argument and evidence that the Guild believes demonstrates that, at a time when most employees' salaries were frozen, and at a time when the Debtors' OCF was at a historic low, the Debtors proposed payouts of unprecedented cash amounts in terms of total dollars, and as a percentage of operating cash flow.[1]  Additionally, a number of the recipients of the proposed bonuses paid under the TMIP and KOB are officers who joined the Debtors as part of the leveraged buy-out which precipitated this bankruptcy.

4.      At the September 25, 2009 hearing, the Guild maintained – as it does today -- that "expert" evidence and reports relied upon by the Debtors to support the MIP, TMIP and KOB (in particular, the TMIP and KOB) were seriously flawed, as they were based on a faulty peer comparisons, undue speculation, and contrary to actual publicly-disclosed facts and information.

5.      After the September 25, 2009 hearing, in written submissions to the Court, the Debtors insisted that all three components of the Debtors' bonus program were inextricably linked, a position the Debtors later abandoned when the Court did not make an immediate ruling on the bonus program.

6.      In the proposed Disclosure Statement, the Debtors conveniently omit all this information, and thus present stakeholders with an inaccurate and incomplete history of the Debtors' bonus program, "justifications" for the bonus program, or objections to the bonus

---

[1]   The record established that over the past decade, Tribune has never paid out more than 3.3% of OCF, but here, at the maximum level, the payout would amount to 15.7% of OCF.  The maximum OCF level was set at $424M.  The Guild hereby incorporates the pleadings, evidence and record from the September 25, 2009 hearing as if fully set forth herein.

program. Instead, the Debtors simply state, at page 99, note that the "Creditors Committee supports the Debtors' request...." in an apparent effort to persuade stakeholders that these programs are uncontested and should be supported by the creditors of the Debtors' estates. The Statement is entirely silent on the Guild's opposition, and the opposition of the United States Trustee.

7.    More egregiously, the Debtors imply in the Disclosure Statement that incorporation of the TMIP and KOB, as part of a Plan of Reorganization, has already been sanctioned by this Court.[2]  The Debtors state that "[a]t a hearing on January 27, 2010, the Bankruptcy Court suggested that the Debtors consider incorporating the TMIP and KOB into a chapter 11 plan of reorganization." (Statement, p. 99.)  The Guild acknowledges that the Bankruptcy Court commented on the Debtors' treatment of the TMIP and the KOB, after the Debtors had abandoned their position that the MIP, TMIP and KOB were inextricably linked, and as part of the Court's approval of the MIP only.  However, when Debtors made the same statement at the March 23, 2010 hearing on their motion to withdraw the TMIP and KOB, this Court responded that "...regardless of what my expressed words were at the [January 27, 2010] hearing, I didn't suggest that the part of the plan that was proposed and which I had under advisement should or could be the same plan that was under consideration of that I would approve it in the context of the confirmation." (See Transcript of March 23, 2010 hearing, p. 11,

---

[2]   The Guild submits that the inclusion of the TMIP and KOB, as a component of the Debtors' Plan of Reorganization, is a fatal defect that precludes a confirmation of this particular Plan.  If a plan contains flaws rendering it non-confirmable, the Court should reject the disclosure statement to preserve the resources of the Court and the estate. See In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001)("If the disclosure statement describes a plan that is [non-confirmable], the court should exercise its discretion to refuse to consider the adequacy of disclosures.").  A plan is confirmable if it complies with all provisions of the Bankruptcy Code. 11. U.S.C. §1129(a)(1).  Here, for the reasons advanced at the September 25, 2009 hearing, the Guilds submit that the Plan's inclusion of the TMIP and KOB render it unconfirmable. Thus, the disclosure statement, as written, should not be approved.

attached hereto as Exhibit A.) Nevertheless, the Guild believes that the Debtors' inclusion in their Disclosure Statement (which urges support of the Plan of Reorganization) of the Court's statement is misleading. In making this statement, the Guild believes the Debtors are impermissibly seeking to convey to stakeholders that inclusion of the TMIP and KOB in the Plan of Reorganization has the blessing of this Court.

## CONCLUSION

For the reasons set forth herein, the Disclosure Statement fails to provide adequate information to stakeholders of the Debtors' estates about the TMIP and KOB, particularly as it relates to the Debtors' justification for implementing those plans under a Plan of Reorganization. Additionally, the Guild believes that inclusion of the TMIP and the KOB in the Debtors' Plan, makes the Plan of Reorganization un-confirmable. At the very least, any description provided to stakeholders of the TMIP and the KOB should inform stakeholders about opposition to the plans. It should also include the full record of litigation over these plans, including publicly-filed pleadings, transcript and exhibits, of the September 25, 2009 hearing.

Dated: May 26, 2010
     Wilmington, Delaware

CROSS & SIMON, LLC

By: _CPS_____

    Christopher P. Simon (No. 3697)
    Michael J. Joyce (No. 4563)
    913 North Market Street, 11th Floor
    P.O. Box 1380
    Wilmington, Delaware 19899-1380
    (302) 777-4200 (Telephone)
    (302) 777-4224 (Facsimile)
    csimon@crosslaw.com

            -and-

4

Robert E. Paul, Esquire
Zwerdling, Paul, Kahn & Wolly, P.C.
1025 Connecticut Avenue NW, Suite 712
Washington, D.C. 20036-5420
(202) 857-5000 (Telephone)
(202) 223-8417 (Facsimile)

*Counsel to Washington-Baltimore
Newspaper Guild*