# EXHIBIT 1

**BLACK LINE AND CLEAN REVISED PROPOSED ORDER**

[Black Line Reflecting All Changes to Proposed Order
Filed with the Solicitation Motion on April 29, 2010]

**BLACK LINE REVISED PROPOSED ORDER**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Ref. Docket No. ——— 4008, 4009, 4204 |

## ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES; (III) ESTABLISHING DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (IV) SCHEDULING CONFIRMATION HEARING; (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION; AND (VI) GRANTING RELATED RELIEF

Upon the motion, dated April 29, 2010 (the "Motion"), of the Debtors,[2] for entry

of an order, pursuant to sections 105, 1125, 1126 and 1128 of the Bankruptcy Code, Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Rules 2002, 3003, 3017, 3018 and 3020 and Local Rule 3017-1, (i) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the Record Date for purposes of determining which Holders of Claims against the Debtors are entitled to vote on the Plan, (b) approving solicitation materials and procedures for distribution of the Plan, the Disclosure Statement and related materials, (c) approving forms of notice to Holders of Claims and Interests not entitled to vote to accept or reject the Plan; and (d) approving the form of Ballots and Master Ballots and establishing procedures for voting on the Plan; (ii) establishing a deadline for return of the Media Ownership Certifications; (iii) scheduling the Confirmation Hearing; (iv) establishing notice and objection procedures in respect of confirmation of the Plan; and (v) granting related relief, and it appearing that adequate and sufficient notice of the Motion has been given under the circumstances; and upon the filing by the Debtors of ~~the~~that certain Disclosure Statement, dated April 12, 2010, and that certain Amended Disclosure Statement, dated May 24, 2010, relating to the Plan ~~[Docket No. 4008]~~; and the Court having jurisdiction over this matter; and it further appearing that adequate and sufficient notice, pursuant to Bankruptcy Rules 2002(b) and 3017, of the hearing on the Motion and of the hearing to consider approval of the Disclosure Statement has been given; and all objections to the Motion and the Disclosure Statement having been withdrawn or overruled for reasons stated on the record at the hearing to consider approval of the Disclosure Statement and on the Motion; and after due deliberation and upon the Court's determinations that the Disclosure Statement should be approved and that the relief requested in the Motion is in the best interests of the Debtors, their Estates, creditors, and other parties in interest, and sufficient cause appearing therefor,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Motion, as applicable.

**THE COURT FINDS AND DETERMINES THAT:**

  A.  The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

  B.  The forms of Ballots and Master Ballot annexed to this Order as <u>Exhibits A</u> and <u>B</u>, respectively, are (i) sufficiently consistent with Official Form No. 14 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for each Class of Claims entitled to vote to accept or reject the Plan.

  C.  The Ballots, Beneficial Ballots and Master Ballots require the furnishing of sufficient information to assure that duplicate Ballots, Beneficial Ballots and Master Ballots are not submitted and tabulated and that the Master Ballots reflect the votes of the Beneficial Owners of the Debtors' Senior Notes.

  D.  The Debtors need not provide Ballots to Holders of Claims and Interests in Class 1I (EGI-TRB LLC Notes Claims), Class 1J (PHONES Notes Claims), Class 1L (Securities Litigation Claims), Class 1M (Tribune Interests), <u>Classes 50D through 111D (Bridge Loan Guaranty Claims),</u> and Classes 2L through 111L (Securities Litigation Claims), given that the Plan provides that Holders of Claims and Interests in such Classes are Impaired, shall neither receive nor retain any property under the Plan on account of such Claims and Interests, are deemed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

  E.  The Debtors need not provide Ballots to Holders of Claims and Interests in Class 1A (Priority Non-Tax Claims), Class 1B (Other Secured Claims), Class 1F<u>G</u> (Convenience Claims), Classes 2A through 111A (Priority Non-Tax Claims), Classes 2B through 111B (Other

Secured Claims), and Classes 2M through 111M (Interests in Filed Subsidiary Debtors), given

that the Plan provides that Holders of such Claims are Unimpaired, are deemed to have accepted

the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

F.    As Debtors or affiliates of Debtors, Holders of Intercompany Claims are

presumed to accept the Plan.  Accordingly, Solicitation Packages need not be provided to

Holders of such Claims.

G.    The period, set forth below, during which the Debtors may solicit

acceptances to the Plan is a reasonable and adequate period of time for creditors to make an

informed decision to accept or reject the Plan.

H.    The voting procedures set forth in the Motion and the voting instructions

attached to the forms of Ballots and Master Ballot provide for a fair and equitable voting process

and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

I.    The procedures associated with the Ballots <u>and Master Ballot</u> with respect

to a party's right to grant the releases contained in section 11.2.2 of the Plan<u>, and, in respect of

Holders of Bridge Loan Claims in Class 1D, to make the election set forth in Section

3.4.2(b)(ii)(B) of the Plan,</u> are fair and reasonable.

J.    The contents of the Solicitation Packages and other notices, as set forth in

the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice of the

Plan and the Confirmation Hearing to all interested parties.

K.    The combination of direct and published notice of the Plan and

Confirmation Hearing, as set forth in the Motion, provides good and sufficient notice of the Plan,

the Confirmation Hearing and the opportunity to vote on and/or object to the Plan and satisfies

the requirements of due process with respect to all known and unknown creditors of the Debtors.

L.      Except for Senior Loan Guaranty Claims, Bridge Loan Guaranty Claims,

Intercompany Claims, and Securities Litigation Claims, the Prepackaged Plan included as part of

the Plan provides that Claims against and Interests in any Guarantor Non-Debtor that becomes a

Debtor are Unimpaired, and the Debtors need not provide Ballots to Holders of such Claims.

The Prepackaged Plan provides that Senior Loan Guaranty Claims against Guarantor Non-

Debtors are Impaired; however, the Debtors need not provide Ballots to Holders of such Claims

and may count votes cast against Guarantor Debtors in Classes 50C through 111C as votes cast

on the Prepackaged Plan of Subsidiary Non-Debtors that may become Debtors.  The

Prepackaged Plan provides that Intercompany Claims are Impaired; however, as Debtors or

affiliates of Debtors, Holders of such Claims are presumed to accept the Plan and, therefore,

need not receive a Ballot to vote on the Prepackaged Plan.  The Plan provides that Bridge Loan

Guaranty Claims and Securities Litigation Claims against Guarantor Non-Debtors that become

Debtors are Impaired and will neither receive nor retain property under the Plan on account of

such Claims, are deemed to have rejected the Plan and, therefore, are not entitled to vote to

accept or reject the Plan.  Therefore, Holders of such Claims need not receive Ballots to vote on

the Prepackaged Plan.

M.      The notice, solicitation, and voting procedures set forth in the Motion with

respect to Holders of Claims against and Interests in any Guarantor Non-Debtors that commence

Chapter 11 Cases provide a fair and equitable voting process and are consistent with section

1126 of the Bankruptcy Code and the Bankruptcy Rules.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

3.      <u>Record Date</u>.  **May 17, 2010** is established as the Record Date for purposes of determining (i) the Holders of Claims that are entitled to vote on the Plan, and (ii) the Holders of Claims and Interests that are entitled to receive Solicitation Packages or Non-Voting Packages.

4.      <u>Solicitation Package</u>.  The Debtors are authorized and empowered to distribute, or cause to be distributed, to Holders of Claims in the Voting Classes that have not been disallowed for voting purposes ("<u>Voting Claims</u>") by first-class mail, the Solicitation Package, which shall contain copies of:

  a.   a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto;

  b.   the Solicitation Order, excluding exhibits annexed thereto;

  c.   the Confirmation Hearing Notice; ~~and~~

  d.   an appropriate Ballot, together with a pre-paid return envelope;

  e.   <u>a compendium of position statements from various parties in interest</u>.

5.      The Debtors are authorized to distribute the Disclosure Statement and Plan, and all exhibits thereto, on CD-ROM; <u>provided</u>, <u>however</u>, that any party receiving the CD-ROM may request hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, without charge, from the Voting Agent; and <u>provided further</u>, that the

Debtors may distribute hard copies of the Disclosure Statement, the Plan and other exhibits

annexed thereto as part of the Solicitation Packages to the extent the Debtors deem it necessary.

6.      To the extent that the following parties have not otherwise received a

Solicitation Package, as of the commencement of the solicitation process, the Debtors shall

distribute (a) a CD-ROM containing the Disclosure Statement, together with the Plan and other

exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed hereto, and (c)

the Confirmation Hearing Notice to: (i) the Office of the United States Trustee; (ii) counsel for

the Committee; (iii) counsel to the Loan ~~Agent~~Agents for Tribune Company's pre-petition loan

facilities; (iv) counsel to the administrative agent for the Debtors' post-petition financing facility;

and (v) all parties having requested notice pursuant to Bankruptcy Rule 2002.

7.      A transferee of a Voting Claim shall be entitled to receive a Solicitation

Package ~~and cast a Ballot~~ on account of ~~the~~a transferred Claim only if: (a) all actions necessary

to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by

the Record Date, or (b) the transferee files, no later than the Record Date, (i) the documentation

required by Bankruptcy Rule 3001(e) to evidence such transfer and (ii) a sworn statement of the

transferor supporting the validity of the transfer.

8.      Where a Claim is transferred after the transferor has completed a Ballot,

the transferee of such Claim shall be bound by any vote (and the consequences thereof) and, if

applicable, any election(s) made on the Ballot by the Holder as of the Record Date of such

transferred Claim.

9.      Notices to Holders of Unimpaired Claims and Interests. The Unimpaired

Class Notice, substantially in the form annexed hereto as Exhibit C, is hereby approved. The

Debtors are not required to transmit Solicitation Packages to members of Class 1A (Priority Non-Tax Claims), Class 1B (Other Secured Claims), Class 1FG (Convenience Claims), Classes 2A through 111A (Priority Non-Tax Claims), Classes 2B through 111B (Other Secured Claims), and Classes 2M through 111M (Interests in Filed Subsidiary Debtors) unless such party makes a specific request to the Voting Agent. The Debtors shall instead mail, or cause to be mailed, to each member of the Unimpaired Classes a Non-Voting Package containing (i) the Confirmation Hearing Notice, (ii) this Order, excluding the exhibits annexed hereto, and (iii) the Unimpaired Class Notice. If the Holder of a Claim in any of the Unimpaired Classes makes a specific request to the Voting Agent, such party shall receive a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto.

10.    Notices to Deemed Rejecting Classes.  The Rejecting Class Notice, substantially in the form annexed hereto as Exhibit D, is hereby approved.  The Debtors are not required to transmit Solicitation Packages to members of Class 1I (EGI-TRB LLC Notes Claims), Class 1J (PHONES Notes Claims), Class 1L (Securities Litigation Claims), Class 1M (Tribune Interests), Classes 50D through 111D (Bridge Loan Guaranty Claims), or Classes 2L through 111L (Securities Litigation Claims).  The Debtors shall instead mail, or cause to be mailed, to each member of the Deemed Rejecting Classes a Non-Voting Package consisting of (i) the Confirmation Hearing Notice, (ii) this Order, excluding exhibits annexed hereto, and (iii) the Rejecting Class Notice. If the Holder of a Claim in any of the Deemed Rejecting Classes makes a specific request to the Voting Agent, such party shall receive a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto.

11.    Confirmation Hearing Notice.  The Confirmation Hearing Notice, substantially in the form annexed hereto as Exhibit E, is hereby approved.

12. <u>Notices to Holders of Customer Program Claims</u>. The Credit/Refund Notice, substantially in the form annexed hereto as <u>Exhibit G</u>, is hereby approved. The Debtors are not required to distribute copies of solicitation materials (including, but not limited to, Solicitation Packages and Ballots) other than the Credit/Refund Notice to Holders of Customer Program Claims; <u>provided</u>, <u>however</u>, that, upon written request to the Voting Agent on or prior to **July 14, 2010 at 4:00 p.m. (prevailing Eastern Time)**, the Voting Agent shall provide a Solicitation Package, including an appropriate Ballot, to a Holder of a Customer Program Claim in order to vote to accept or reject the Plan; and <u>provided further</u> that notwithstanding the foregoing, the Debtors shall have the right, but not the obligation, to satisfy any Customer Program Claim pursuant to the authority granted to the Debtors under the Customer Programs Order, in which case the Holder of any such Claim shall not be entitled to vote on the Plan.

13. <u>Notices to Holders of Claims Against and Interests in Guarantor Non-Debtors that Become Debtors, if Any</u>. The Debtors are not required to transmit Solicitation Packages to Holders of Claims against and Interests in any Guarantor Non-Debtor in connection with the Prepackaged Plan.

14. <u>Non-Delivery of Solicitation Materials to Holders of Intercompany Claims</u>. The Debtors are not required to distribute Solicitation Packages or Non-Voting Packages to Holders of Intercompany Claims.

15. <u>Non-Delivery of Solicitation Materials to Undeliverable Addresses</u>. With respect to addresses from which notices of the hearing to approve the Disclosure Statement were returned as undeliverable by the United States Postal Service, the Debtors are excused from distributing Solicitation Packages or Non-Voting Packages or any other materials or notices

(including any updates, supplements, amendments or modifications thereto) to those persons or entities listed at such addresses unless the Debtors have been or are provided with an accurate address for any such entity prior to the distribution of the solicitation materials, and failure to distribute Solicitation Packages or Non-Voting Notices to such persons or entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined below) or ~~violation of~~violate Bankruptcy Rule 3017(d).

16.    Approving Forms of Ballots and Master Ballot, Distribution Thereof. The Ballots and Master Ballot, which shall be substantially in the forms annexed hereto as Exhibits A and B, respectively, are hereby approved. In response to the Technical Comment on Voting Procedures Motion filed by Bank of America on May 19, 2010, in the event the Debtors, JPMorgan Chase Bank, N.A., and Bank of America determine that a Master Ballot for certain of Bank of America's Senior Loan Claims is appropriate, Bank of America will be provided a Master Ballot substantially in the form of the Master Ballot for Senior Noteholder Claims attached to this Order as Exhibit B (which form is hereby approved), and Bank of America shall be entitled to summarize on that Master Ballot otherwise valid votes of beneficial Holders of Senior Loan Claims thereon. In the event the parties do not agree on the appropriateness of using such a Master Ballot or absence of need for such Master Ballot, any of the parties may bring the matter before the Court, without prejudice from this Order, and each of the parties agrees not to oppose an expedited hearing on the issue.

17.    The Voting Agent shall customize, to the extent possible, each Ballot to include each Claim Holder's name, address, and the amount of such Claim Holder's Claim.

18.     Wherever possible, creditors who have more than one Claim against one or more of the Debtors shall receive only one Solicitation Package and one or more Ballots, as necessary.

19.     Solicitation Packages, which shall include Ballots or Beneficial Ballots, as appropriate, shall be distributed to Holders of Voting Claims, as of the Record Date, in the following Classes, which Classes are designated as Voting Classes under the Plan:

| Class | Description |
|-------|-------------|
| 1C | Senior Loan Claims |
| 1D | Bridge Loan Claims |
| 1DE | Senior Noteholder Claims |
| 1EF | Other Parent Claims |
| 50C-111C | Senior Loan Guaranty Claims against Filed Subsidiary Debtors |
| 2E-111E | General Unsecured Claims against Filed Subsidiary Debtors |

20.     With respect to Solicitation Packages to be distributed to Holders of Senior Noteholder Claims, the Debtors shall distribute, or cause to be distributed, a reasonably sufficient number of Solicitation Packages, including Beneficial Ballots, to Voting Nominees for distribution to the Beneficial Owners of the Claims for whom such Voting Nominee acts.  Upon written request with supporting documentation, the Debtors shall reimburse each Voting Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

21.     Each Voting Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned Beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master Ballot by the Voting Deadline, and (iv) retain the underlying Beneficial Ballots

received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

22.    For the avoidance of doubt, unless a Holder of a Claim or Interest otherwise agrees to grant the releases provided in Section 11.2.2 of the Plan, each such Holder whose Claim or Interest is in a Class of Claims or Interests that is deemed to reject the Plan shall not be deemed to provide such releases.

23.    ~~22.~~ The contents of the Solicitation Package and the manner of service of the Solicitation Package satisfy the requirements of Bankruptcy Rule 3017(d).

24.    ~~23.~~ Voting Deadline.  Ballots and Master Ballots must be properly executed and completed, and the originals thereof shall be delivered to the Voting Agent so as to be actually received by no later than **July 30, 2010 at 4:00 p.m. (prevailing Eastern Time)** by (a) first-class mail postage prepaid in the return envelope provided with the Ballot, or (b) personal delivery or overnight courier, in each case to the addresses provided in the Solicitation Packages.

25.    ~~24.~~ Solicitation Commencement.  The Debtors shall use their reasonable best efforts to complete mailing of the solicitation materials ~~by **June 1, 2010.**~~ within seven business days following entry of this Order.

26.    ~~25.~~ Voting Agent.  Epiq Bankruptcy Solutions, LLC is authorized to perform all services related to solicitation of the Plan, consistent with the existing terms of its appointment by this Court as Voting Agent.

27.    26. Ballot Tabulation.  Solely for purposes of voting to accept or reject the

Plan, and not for any other purposes, and without prejudice to the rights of the Debtors in any

other context, each Holder of a Voting Claim shall be entitled to vote the amount of such Claim

as set forth in the Debtors' filed Schedules (as may be amended from time to time) unless such

Holder has timely filed a proof of claim, in which event such Holder would be entitled to vote

the amount of such Claim as set forth in such proof of claim, subject to the following:

    a.  if a Claim is deemed "Allowed" pursuant to an agreement with
the Debtors or an order of this Court or the Plan, such Claim
shall be allowed for voting purposes in the "Allowed" amount
set forth in this Court's order or the Plan, as applicable;

    b.  if a Claim has been estimated or otherwise allowed for voting
purposes by order of the Court, such Claim shall be
temporarily allowed in the amount so estimated or allowed by
the Court for voting purposes only;

    c.  if no proof of claim has been timely filed and the Claim has not
been disallowed, then the vote amount shall be the non-
contingent, liquidated, and undisputed amount as set forth in
the Debtors' filed Schedules;

    d.  if a proof of claim has been timely filed and the Claim has not
been disallowed, and the Claim is not (i) the subject of a
pending objection, (ii) contingent (as determined on the face of
the claim or after a reasonable review of the supporting
documentation by the Debtors or the Voting Agent), (iii) filed
entirely in an unknown, unliquidated or undetermined amount
(as determined on the face of the claim or after a reasonable
review of the supporting documentation by the Debtors or the
Voting Agent), or (iv) deemed disputed under the Plan, the
vote amount is the liquidated amount as set forth on the proof
of claim;

    e.  if a proof of claim has been timely filed and the Claim has not
been disallowed, and the Claim is (i) contingent (as determined
on the face of the claim or after a reasonable review of the
supporting documentation by the Debtors or the Voting Agent),
(ii) filed entirely in an unknown, unliquidated or undetermined
amount (as determined on the face of the claim or after a
reasonable review of the supporting documentation by the

Debtors or the Voting Agent), or (iii) deemed disputed under the Plan, such claim shall be temporarily allowed for voting purposes only, and not for any other purposes and without prejudice to the rights of the Debtors in any other context, at $1.00;

f.   if (i) a proof of claim has been filed and is the subject of a pending objection, or (ii) if the Debtors have amended or supplemented the Schedules to (a) eliminate a Claim or (b) to change the nature or characterization of a Claim but the thirty (30) day period specified in the Bar Date Order for the relevant Holder of such Claim to file a proof of claim in response to such amendment has not yet passed, then such Claim shall be disallowed for voting purposes, except to the extent and in the manner as may be set forth in the objection, amendment, or supplement;

g.   to the extent that a Holder of Claims has filed or purchased duplicative Claims that are classified under the Plan in the same Class, such Holder shall be provided with a single Solicitation Package and a single Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to the allowance of such duplicate Claims;

h.   where a Holder of Claims has asserted its Claims against no particular Debtor, against multiple Debtors, or against all Debtors without filing separate proofs of claim against each Debtor as required by the Bar Date Order, and the Debtors are not able to determine which Debtor such Claims should properly be asserted against after the exercise of reasonable diligence, such Holder shall not be entitled to a vote on account of such Claims;

i.   Claims, whether scheduled or filed, for $0.00 will be disallowed for voting purposes; and

j.   if a proof of claim has been filed in a liquidated amount but also purports to include other, unliquidated amounts, the vote amount shall be solely the liquidated, non-disputed amount set forth on the proof of claim.

28.   27. If any Holder of a Claim wishes to have its Claim allowed for purposes of voting to accept or reject the Plan in a manner that is inconsistent with the amount or classification set forth on the Ballot it received or the tabulation rules set forth in this Order, or if

any party that did not receive a Ballot wishes to have its Claim temporarily allowed for voting

purposes only, such Holder must serve on the Debtors and file with the Bankruptcy Court, on or

before **June 21, 2010**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily

allowing such Claim for purposes of voting (the "3018 Motion").  A 3018 Motion must set forth,

with particularity, the amount and classification in which such Holder believes its Claim should

be allowed for voting purposes and the evidence in support of its belief.

29.    28. In respect of any timely-filed 3018 Motion, the Ballot in question shall

be counted (a) in the amount established by this Court in an order entered on or before the

Voting Deadline or (b) if such an order has not been entered by the Voting Deadline and unless

the Debtors and the party have come to an agreement as to the relief requested in the 3018

Motion, in an amount equal to (i) the liquidated, non-contingent, and non-disputed amount of

such Claim as set forth in the Schedules; (ii) if a proof of claim has been timely filed in respect

of such claim, the liquidated, non-contingent, and non-disputed amount set forth in such proof of

claim; or (iii) if neither (i) nor (ii) applies, such party shall not have a Ballot counted at all.

30.    29. **July 13, 2010** is established as the date for a hearing to consider any

and all 3018 Motions.

31.    30. Whenever a Holder of a Claim or a Voting Nominee casts more than

one Ballot or Master Ballot voting the same Claim(s) before the Voting Deadline, the last dated

and  valid Ballot or Master Ballot received before the Voting Deadline shall be deemed to reflect

the voter's intent and supersede any prior Ballots or Master Ballots.

32.    31. If a Holder of Claims or a Voting Nominee casts multiple Ballots or

Master Ballots (except in the case of supplemental Master Ballots) that are received by the

Voting Agent on the same day but are voted inconsistently, such Ballots or Master Ballots will not be counted.

33.    32. Any Ballot that partially rejects and partially accepts the Plan will not be counted.

34.    33. Each Holder of Senior Loan Claims and Senior Loan Guaranty Claims shall be entitled to cast a single Ballot with respect to such Claims, with each vote to be counted as a vote to accept or reject the Plan in Class 1C and each of Classes 50C through 111C, and a vote to accept or reject the Prepackaged Plan of any Guarantor Non-Debtor that becomes a Debtor. A vote to accept the Plan in Class 1C and each of Classes 50C through 111C is also (i) an acceptance of the compromise and settlement set forth in the Plan by and among the Guarantor Non-Debtors, on the one hand, and the holders of Senior Loan Guaranty Claims, on the other hand (the "Guarantor Non-Debtor Compromise and Release") and (ii) a grant of authority to the Loan Agents (as such term is defined in the Plan) to enter into any and all agreements and take any and all actions that such Loan Agents deem necessary or appropriate to effectuate the Guarantor Non-Debtor Compromise and Release and all other terms of the Plan.

35.    34. A Holder of Voting Claims in more than one Voting Class under the Plan must submit a separate Ballot on account of its vote(s) in each separate Voting Class of Claims in which it wishes to cast a vote to accept or reject the Plan.

36.    35. The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

    a.    any Ballot or Master Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate

an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan;

b.  any Ballot or Master Ballot received after the Voting Deadline in the Debtors' sole discretion;

c.  any Ballot or Master Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.  any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.  any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

f.  any Ballot or Master Ballot without a signature or an original signature; and

g.  any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

37.  36. The following voting procedures and standard assumptions shall be used in tabulating the Ballots, subject to any contrary order(s) of this Court:

a.  Delivery of Ballots and Master Ballots to the Voting Agent will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Voting Agent.

b.  The Debtors, in their sole discretion, may waive any defect in any Ballot or Master Ballot at any time, including failure to file such Ballot or Master Ballot in a timely manner, either before or after the close of voting, and without notice; provided, however, that the Debtors or the Voting Agent shall maintain a record of any waivers granted under this subsection. Unless the Ballot or Master Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors may, in their sole discretion, reject any defective or late-filed Ballot or Master Ballot as invalid and, therefore, decline to utilize it in connection with confirmation of the Plan.

c.  After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

d.  Defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

e.      Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any of them incur any liabilities for failure to provide such notification.  Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) shall not be counted.

38.      37. Master Ballot Tabulation.  With respect to the tabulation of Master Ballots and Beneficial Ballots for Senior Noteholder Claims cast by Voting Nominees and Beneficial Owners, respectively, the principal amount held by Voting Nominees and Beneficial Owners on the Record Date, as evidenced by the record and depository listings, shall be used as the amount to tabulate acceptance or rejection of the Plan, although any principal amounts may be adjusted by the Voting Agent to account for prepetition interest.

39.      38. The following additional rules shall apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners of Senior Notes:

a.      Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such Beneficial Owners in the applicable tranche of Senior Notes as of the Record Date, as evidenced by the record and depository listings.  Votes submitted by a Voting Nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of Senior Notes held by such Voting Nominee.

b.      To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable tranche of Senior Notes.

c.      Where a Beneficial Owner holds its Senior Notes through more than one Voting Nominee, it must execute a separate Beneficial Ballot for each block of Senior Notes.  However, such Beneficial Owner must vote all of its Senior Noteholder Claims in the same manner, to either accept or reject the Plan.  Accordingly, if such Beneficial Owner returns more than one Beneficial Ballot to more than one Voting Nominee voting different Senior Noteholder Claims and the Beneficial Ballots are not voted in the

same manner, as reflected on such separate Master Ballots, such votes will not be counted.

40.     39. Epiq The Voting Agent is required to file the results of its tabulation of votes to accept or reject the Plan no later than **August 6, 2010**.

41.     40. Media Ownership Certification Deadline.  Any Holder of a Claim or Claims that (i) is anticipated to receive New Common Stock under the Plan, (ii) believes that the amount of its Claims (or Claims that it intends to acquire prior to the Effective Date of the Plan) may entitle it to receive (for any reason, including, but not limited to, as a result of the distribution by the Debtors of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of Loan Claims/Loan Guaranty Claims or Senior Noteholder Claims, in accordance with section 5.4.2 of the Plan) five percent (5%) or more of the New Class A Common Stock under the Plan (a "Potential 5% Holder"), and (iii) wishes to remain eligible to receive 5% or more of the New Class A Common Stock is required to (a) contact the Debtors and complete, execute and submit to the Debtors a Media Ownership Certification on or prior to **July 1, 2010** (the "Certification Deadline"), and (b) cooperate with the Debtors in the preparation of any amendment to the FCC Applications necessitated thereby.

42.     41. In the event a Potential 5% Holder does not submit an executed Media Ownership Certification by the Certification Deadline, in accordance with section 5.4.2 of the Plan, such Potential 5% Holder may, in the event it would ultimately be entitled under the Plan to receive more than five percent (5%) of the New Class A Common Stock but for the failure to submit an executed Media Ownership Certification by the Certification Deadline (and, thus, the failure to be made a "party" to the FCC Applications), receive New Class B Common Stock in lieu of New Class A Common Stock to the extent deemed appropriate by Reorganized Tribune to

19

ensure compliance with the Communications Act or the FCC rules and/or to avoid substantial

delay in obtaining the FCC Approval.  Further, Reorganized Tribune may issue shares of New

Class B Common Stock in lieu of shares of New Class A Common Stock to a Potential 5%

Holder if Reorganized Tribune determines, based on the Holder's Media Ownership Certification

(or failure to provide the Media Ownership Certification or otherwise to comply with the

applicable provisions of the Plan), that such Holder may have other media interests that could

impair the ability of Reorganized Tribune to comply with the Communications Act or the FCC's

rules.  The provisions of this paragraph are subject to confirmation of the Plan, and the rights of

all parties to interpose an objection to the Plan or respecting the distribution and terms of the

New Common Stock are preserved for the hearing on confirmation of the Plan; provided,

however, that nothing in this paragraph shall be interpreted as conferring standing to raise such

issues on any party not otherwise having standing with respect thereto.

43.    42. Confirmation of the Plan.  TheIn accordance with the Discovery and

Scheduling Order for Plan Confirmation [Docket No. 4366], the Confirmation Hearing shall be

held before this Court on **August 16, 2010 at 10:00 a.m. (prevailing Eastern Time)**.  The

Confirmation Hearing may be continued from time to time by the Court without further notice.

44.    43. Objections to confirmation of the Plan (including any supporting

memoranda) must: (i) be made in writing; (ii) state the name and address of the objecting party

and the nature of the claim or interest of such party; (iii) state with particularity the legal and

factual basis and nature of objection to confirmation of the Plan; and (iv) be filed with the Court,

together with proof of service, and served so that they are received on or before **July 30, 2010 at**

**4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") by the following parties:

Co-Counsel for the Debtors and Debtors in Possession

| Sidley Austin LLP | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
|---|---|
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, Illinois 60603 | Wilmington, DE 19801 |
| Fax (312) 853-7036 | Fax (302) 652-3177 |
| Attn: Jessica C.K. Boelter | Attn: Norman L. Pernick |

-and-

The Office of the United States Trustee

J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box 35
Wilmington, DE 19801
Fax (302) 573-6497
Attn: Joseph McMahon

-and-

Co-Counsel to the Official Committee of Unsecured Creditors

| Chadbourne & Parke, LLP | Landis, Rath & Cobb, LLP |
|---|---|
| 30 Rockefeller Plaza | 919 Market Street, Suite 1800 |
| New York, NY 10112 | Wilmington, DE 19801 |
| Fax (212) 408-5100 | Fax (302) 467-4400 |
| Attn: Douglas A. Deutsch | Attn: Adam G. Landis |

45.    44. The Court shall consider only timely-filed written objections to confirmation of the Plan.  All objections not timely filed and served in accordance with the procedures described herein by the Objection Deadline shall be deemed overruled.

46.    45. The Debtors shall publish the Publication Notice, substantially in the form annexed hereto as Exhibit F, once each in the national editions of The Wall Street Journal, The New York Times, the Los Angeles Times, and the Chicago Tribune not less than twenty (20) days before the Objection Deadline.

47.    46. The forms of mailed and published notice of the Confirmation Hearing are approved in all respects.  The scope of mailed and published notice of the Confirmation

Hearing is adequate and provides known and unknown claimants with good and sufficient notice of the Confirmation Hearing.

48. 47. The Debtors are authorized to make any non-substantive changes to the Disclosure Statement, voting procedures, Ballots, Master Ballots, Non-Voting Notices, Credit/Refund Notices and/or forms of mailed and published notice of the Confirmation Hearing without further order of the Court, including, without limitation, changes to correct typographical, grammatical, and/or formatting errors or omissions and to conform the Disclosure Statement and any other materials in the Solicitation Package to the Plan prior to mailing to parties in interest.

49. 48. The Debtors, and any party supporting the Plan, shall file responses, if any, to any objection to confirmation of the Plan on or before **August 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**.  The Debtors shall also file with the Court their proposed findings of fact and conclusions of law and their memorandum of law in support of confirmation on or before such date.

50. 49. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

51. 50. The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

Dated:  Wilmington, Delaware
              _____, 2010

           _____
                    The Honorable Kevin J. Carey

Chief United States Bankruptcy Judge

**CLEAN REVISED PROPOSED ORDER**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 4008, 4009, 4204** |

### ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT AMENDED JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES; (III) ESTABLISHING DEADLINE FOR RETURN OF MEDIA OWNERSHIP CERTIFICATIONS; (IV) SCHEDULING CONFIRMATION HEARING; (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION; AND (VI) GRANTING RELATED RELIEF

Upon the motion, dated April 29, 2010 (the "Motion"), of the Debtors,[2] for entry

of an order, pursuant to sections 105, 1125, 1126 and 1128 of the Bankruptcy Code, Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or the Motion, as applicable.

Rules 2002, 3003, 3017, 3018 and 3020 and Local Rule 3017-1, (i) establishing procedures for

the solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the

Record Date for purposes of determining which Holders of Claims against the Debtors are

entitled to vote on the Plan, (b) approving solicitation materials and procedures for distribution

of the Plan, the Disclosure Statement and related materials, (c) approving forms of notice to

Holders of Claims and Interests not entitled to vote to accept or reject the Plan; and (d)

approving the form of Ballots and Master Ballots and establishing procedures for voting on the

Plan; (ii) establishing a deadline for return of the Media Ownership Certifications; (iii)

scheduling the Confirmation Hearing; (iv) establishing notice and objection procedures in

respect of confirmation of the Plan; and (v) granting related relief, and it appearing that adequate

and sufficient notice of the Motion has been given under the circumstances; and upon the filing

by the Debtors of that certain Disclosure Statement, dated April 12, 2010, and that certain

Amended Disclosure Statement, dated May 24, 2010, relating to the Plan; and the Court having

jurisdiction over this matter; and it further appearing that adequate and sufficient notice, pursuant

to Bankruptcy Rules 2002(b) and 3017, of the hearing on the Motion and of the hearing to

consider approval of the Disclosure Statement has been given; and all objections to the Motion

and the Disclosure Statement having been withdrawn or overruled for reasons stated on the

record at the hearing to consider approval of the Disclosure Statement and on the Motion; and

after due deliberation and upon the Court's determinations that the Disclosure Statement should

be approved and that the relief requested in the Motion is in the best interests of the Debtors,

their Estates, creditors, and other parties in interest, and sufficient cause appearing therefor,

**THE COURT FINDS AND DETERMINES THAT:**

A.     The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

B.     The forms of Ballots and Master Ballot annexed to this Order as <u>Exhibits</u> <u>A</u> and <u>B</u>, respectively, are (i) sufficiently consistent with Official Form No. 14 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for each Class of Claims entitled to vote to accept or reject the Plan.

C.     The Ballots, Beneficial Ballots and Master Ballots require the furnishing of sufficient information to assure that duplicate Ballots, Beneficial Ballots and Master Ballots are not submitted and tabulated and that the Master Ballots reflect the votes of the Beneficial Owners of the Debtors' Senior Notes.

D.     The Debtors need not provide Ballots to Holders of Claims and Interests in Class 1I (EGI-TRB LLC Notes Claims), Class 1J (PHONES Notes Claims), Class 1L (Securities Litigation Claims), Class 1M (Tribune Interests), Classes 50D through 111D (Bridge Loan Guaranty Claims), and Classes 2L through 111L (Securities Litigation Claims), given that the Plan provides that Holders of Claims and Interests in such Classes are Impaired, shall neither receive nor retain any property under the Plan on account of such Claims and Interests, are deemed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

E.     The Debtors need not provide Ballots to Holders of Claims and Interests in Class 1A (Priority Non-Tax Claims), Class 1B (Other Secured Claims), Class 1G (Convenience Claims), Classes 2A through 111A (Priority Non-Tax Claims), Classes 2B through 111B (Other Secured Claims), and Classes 2M through 111M (Interests in Filed Subsidiary Debtors), given

that the Plan provides that Holders of such Claims are Unimpaired, are deemed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

F.    As Debtors or affiliates of Debtors, Holders of Intercompany Claims are presumed to accept the Plan. Accordingly, Solicitation Packages need not be provided to Holders of such Claims.

G.    The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable and adequate period of time for creditors to make an informed decision to accept or reject the Plan.

H.    The voting procedures set forth in the Motion and the voting instructions attached to the forms of Ballots and Master Ballot provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

I.    The procedures associated with the Ballots and Master Ballot with respect to a party's right to grant the releases contained in section 11.2.2 of the Plan, and, in respect of Holders of Bridge Loan Claims in Class 1D, to make the election set forth in Section 3.4.2(b)(ii)(B) of the Plan, are fair and reasonable.

J.    The contents of the Solicitation Packages and other notices, as set forth in the Motion, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice of the Plan and the Confirmation Hearing to all interested parties.

K.    The combination of direct and published notice of the Plan and Confirmation Hearing, as set forth in the Motion, provides good and sufficient notice of the Plan, the Confirmation Hearing and the opportunity to vote on and/or object to the Plan and satisfies the requirements of due process with respect to all known and unknown creditors of the Debtors.

L.    Except for Senior Loan Guaranty Claims, Bridge Loan Guaranty Claims, Intercompany Claims, and Securities Litigation Claims, the Prepackaged Plan included as part of the Plan provides that Claims against and Interests in any Guarantor Non-Debtor that becomes a Debtor are Unimpaired, and the Debtors need not provide Ballots to Holders of such Claims. The Prepackaged Plan provides that Senior Loan Guaranty Claims against Guarantor Non-Debtors are Impaired; however, the Debtors need not provide Ballots to Holders of such Claims and may count votes cast against Guarantor Debtors in Classes 50C through 111C as votes cast on the Prepackaged Plan of Subsidiary Non-Debtors that may become Debtors. The Prepackaged Plan provides that Intercompany Claims are Impaired; however, as Debtors or affiliates of Debtors, Holders of such Claims are presumed to accept the Plan and, therefore, need not receive a Ballot to vote on the Prepackaged Plan. The Plan provides that Bridge Loan Guaranty Claims and Securities Litigation Claims against Guarantor Non-Debtors that become Debtors are Impaired and will neither receive nor retain property under the Plan on account of such Claims, are deemed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Therefore, Holders of such Claims need not receive Ballots to vote on the Prepackaged Plan.

M.    The notice, solicitation, and voting procedures set forth in the Motion with respect to Holders of Claims against and Interests in any Guarantor Non-Debtors that commence Chapter 11 Cases provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the Bankruptcy Rules.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted.

2.      The Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

3.      <u>Record Date</u>.  **May 17, 2010** is established as the Record Date for purposes of determining (i) the Holders of Claims that are entitled to vote on the Plan, and (ii) the Holders of Claims and Interests that are entitled to receive Solicitation Packages or Non-Voting Packages.

4.      <u>Solicitation Package</u>.  The Debtors are authorized and empowered to distribute, or cause to be distributed, to Holders of Claims in the Voting Classes that have not been disallowed for voting purposes ("<u>Voting Claims</u>") by first-class mail, the Solicitation Package, which shall contain copies of:

   a.  a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto;

   b.  the Solicitation Order, excluding exhibits annexed thereto;

   c.  the Confirmation Hearing Notice;

   d.  an appropriate Ballot, together with a pre-paid return envelope;

   e.  a compendium of position statements from various parties in interest.

5.      The Debtors are authorized to distribute the Disclosure Statement and Plan, and all exhibits thereto, on CD-ROM; <u>provided</u>, <u>however</u>, that any party receiving the CD-ROM may request hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, without charge, from the Voting Agent; and <u>provided</u> <u>further</u>, that the Debtors may distribute hard copies of the Disclosure Statement, the Plan and other exhibits annexed thereto as part of the Solicitation Packages to the extent the Debtors deem it necessary.

6.      To the extent that the following parties have not otherwise received a Solicitation Package, as of the commencement of the solicitation process, the Debtors shall

distribute (a) a CD-ROM containing the Disclosure Statement, together with the Plan and other exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed hereto, and (c) the Confirmation Hearing Notice to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the Loan Agents for Tribune Company's pre-petition loan facilities; (iv) counsel to the administrative agent for the Debtors' post-petition financing facility; and (v) all parties having requested notice pursuant to Bankruptcy Rule 2002.

7.    A transferee of a Voting Claim shall be entitled to receive a Solicitation Package on account of a transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Record Date, or (b) the transferee files, no later than the Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence such transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

8.    Where a Claim is transferred after the transferor has completed a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) and, if applicable, any election(s) made on the Ballot by the Holder as of the Record Date of such transferred Claim.

9.    <u>Notices to Holders of Unimpaired Claims and Interests</u>. The Unimpaired Class Notice, substantially in the form annexed hereto as <u>Exhibit C</u>, is hereby approved. The Debtors are not required to transmit Solicitation Packages to members of Class 1A (Priority Non-Tax Claims), Class 1B (Other Secured Claims), Class 1G (Convenience Claims), Classes 2A through 111A (Priority Non-Tax Claims), Classes 2B through 111B (Other Secured Claims), and Classes 2M through 111M (Interests in Filed Subsidiary Debtors) unless such party makes a specific request to the Voting Agent. The Debtors shall instead mail, or cause to be mailed, to

each member of the Unimpaired Classes a Non-Voting Package containing (i) the Confirmation

Hearing Notice, (ii) this Order, excluding the exhibits annexed hereto, and (iii) the Unimpaired

Class Notice. If the Holder of a Claim in any of the Unimpaired Classes makes a specific

request to the Voting Agent, such party shall receive a CD-ROM containing the Disclosure

Statement, together with the Plan and other exhibits annexed thereto.

          10.    <u>Notices to Deemed Rejecting Classes</u>. The Rejecting Class Notice,

substantially in the form annexed hereto as <u>Exhibit D</u>, is hereby approved. The Debtors are not

required to transmit Solicitation Packages to members of Class 1I (EGI-TRB LLC Notes

Claims), Class 1J (PHONES Notes Claims), Class 1L (Securities Litigation Claims), Class 1M

(Tribune Interests), Classes 50D through 111D (Bridge Loan Guaranty Claims), or Classes 2L

through 111L (Securities Litigation Claims). The Debtors shall instead mail, or cause to be

mailed, to each member of the Deemed Rejecting Classes a Non-Voting Package consisting of

(i) the Confirmation Hearing Notice, (ii) this Order, excluding exhibits annexed hereto, and (iii)

the Rejecting Class Notice. If the Holder of a Claim in any of the Deemed Rejecting Classes

makes a specific request to the Voting Agent, such party shall receive a CD-ROM containing the

Disclosure Statement, together with the Plan and other exhibits annexed thereto.

          11.    <u>Confirmation Hearing Notice</u>. The Confirmation Hearing Notice,

substantially in the form annexed hereto as <u>Exhibit E</u>, is hereby approved.

          12.    <u>Notices to Holders of Customer Program Claims</u>. The Credit/Refund

Notice, substantially in the form annexed hereto as <u>Exhibit G</u>, is hereby approved. The Debtors

are not required to distribute copies of solicitation materials (including, but not limited to,

Solicitation Packages and Ballots) other than the Credit/Refund Notice to Holders of Customer

Program Claims; <u>provided</u>, <u>however</u>, that, upon written request to the Voting Agent on or prior

to **July 14, 2010 at 4:00 p.m. (prevailing Eastern Time)**, the Voting Agent shall provide a Solicitation Package, including an appropriate Ballot, to a Holder of a Customer Program Claim in order to vote to accept or reject the Plan; and <u>provided further</u> that notwithstanding the foregoing, the Debtors shall have the right, but not the obligation, to satisfy any Customer Program Claim pursuant to the authority granted to the Debtors under the Customer Programs Order, in which case the Holder of any such Claim shall not be entitled to vote on the Plan.

13.     <u>Notices to Holders of Claims Against and Interests in Guarantor Non-Debtors that Become Debtors, if Any</u>. The Debtors are not required to transmit Solicitation Packages to Holders of Claims against and Interests in any Guarantor Non-Debtor in connection with the Prepackaged Plan.

14.     <u>Non-Delivery of Solicitation Materials to Holders of Intercompany Claims</u>. The Debtors are not required to distribute Solicitation Packages or Non-Voting Packages to Holders of Intercompany Claims.

15.     <u>Non-Delivery of Solicitation Materials to Undeliverable Addresses</u>. With respect to addresses from which notices of the hearing to approve the Disclosure Statement were returned as undeliverable by the United States Postal Service, the Debtors are excused from distributing Solicitation Packages or Non-Voting Packages or any other materials or notices (including any updates, supplements, amendments or modifications thereto) to those persons or entities listed at such addresses unless the Debtors have been or are provided with an accurate address for any such entity prior to the distribution of the solicitation materials, and failure to distribute Solicitation Packages or Non-Voting Notices to such persons or entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline (as defined below) or violate Bankruptcy Rule 3017(d).

16. <u>Approving Forms of Ballots and Master Ballot, Distribution Thereof</u>. The Ballots and Master Ballot, which shall be substantially in the forms annexed hereto as <u>Exhibits A</u> and <u>B</u>, respectively, are hereby approved. In response to the Technical Comment on Voting Procedures Motion filed by Bank of America on May 19, 2010, in the event the Debtors, JPMorgan Chase Bank, N.A., and Bank of America determine that a Master Ballot for certain of Bank of America's Senior Loan Claims is appropriate, Bank of America will be provided a Master Ballot substantially in the form of the Master Ballot for Senior Noteholder Claims attached to this Order as <u>Exhibit B</u> (which form is hereby approved), and Bank of America shall be entitled to summarize on that Master Ballot otherwise valid votes of beneficial Holders of Senior Loan Claims thereon. In the event the parties do not agree on the appropriateness of using such a Master Ballot or absence of need for such Master Ballot, any of the parties may bring the matter before the Court, without prejudice from this Order, and each of the parties agrees not to oppose an expedited hearing on the issue.

17. The Voting Agent shall customize, to the extent possible, each Ballot to include each Claim Holder's name, address, and the amount of such Claim Holder's Claim.

18. Wherever possible, creditors who have more than one Claim against one or more of the Debtors shall receive only one Solicitation Package and one or more Ballots, as necessary.

19. Solicitation Packages, which shall include Ballots or Beneficial Ballots, as appropriate, shall be distributed to Holders of Voting Claims, as of the Record Date, in the following Classes, which Classes are designated as Voting Classes under the Plan:

| Class | Description |
|---|---|
| 1C | Senior Loan Claims |
| 1D | Bridge Loan Claims |
| 1E | Senior Noteholder Claims |
| 1F | Other Parent Claims |
| 50C-111C | Senior Loan Guaranty Claims against Filed Subsidiary Debtors |
| 2E-111E | General Unsecured Claims against Filed Subsidiary Debtors |

20.    With respect to Solicitation Packages to be distributed to Holders of Senior Noteholder Claims, the Debtors shall distribute, or cause to be distributed, a reasonably sufficient number of Solicitation Packages, including Beneficial Ballots, to Voting Nominees for distribution to the Beneficial Owners of the Claims for whom such Voting Nominee acts. Upon written request with supporting documentation, the Debtors shall reimburse each Voting Nominee for its reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages.

21.    Each Voting Nominee is required to (i) forward the Solicitation Packages to Beneficial Owners, (ii) receive returned Beneficial Ballots from the Beneficial Owners, (iii) tabulate the results according to the instructions set forth in the Master Ballot, return such results in a Master Ballot by the Voting Deadline, and (iv) retain the underlying Beneficial Ballots received from the Beneficial Owners for inspection for a period of one (1) year following the Voting Deadline.

22.    For the avoidance of doubt, unless a Holder of a Claim or Interest otherwise agrees to grant the releases provided in Section 11.2.2 of the Plan, each such Holder whose Claim or Interest is in a Class of Claims or Interests that is deemed to reject the Plan shall not be deemed to provide such releases.

23.    The contents of the Solicitation Package and the manner of service of the Solicitation Package satisfy the requirements of Bankruptcy Rule 3017(d).

24.    <u>Voting Deadline</u>.  Ballots and Master Ballots must be properly executed and completed, and the originals thereof shall be delivered to the Voting Agent so as to be actually received by no later than **July 30, 2010 at 4:00 p.m. (prevailing Eastern Time)** by (a) first-class mail postage prepaid in the return envelope provided with the Ballot, or (b) personal delivery or overnight courier, in each case to the addresses provided in the Solicitation Packages.

25.    <u>Solicitation Commencement</u>.  The Debtors shall use their reasonable best efforts to complete mailing of the solicitation materials within seven business days following entry of this Order.

26.    <u>Voting Agent</u>.  Epiq Bankruptcy Solutions, LLC is authorized to perform all services related to solicitation of the Plan, consistent with the existing terms of its appointment by this Court as Voting Agent.

27.    <u>Ballot Tabulation</u>.  Solely for purposes of voting to accept or reject the Plan, and not for any other purposes, and without prejudice to the rights of the Debtors in any other context, each Holder of a Voting Claim shall be entitled to vote the amount of such Claim as set forth in the Debtors' filed Schedules (as may be amended from time to time) unless such Holder has filed a proof of claim, in which event such Holder would be entitled to vote the amount of such Claim as set forth in such proof of claim, subject to the following:

  a.  if a Claim is deemed "Allowed" pursuant to an agreement with the Debtors or an order of this Court or the Plan, such Claim shall be allowed for voting purposes in the "Allowed" amount set forth in this Court's order or the Plan, as applicable;

  b.  if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only;

  c.  if no proof of claim has been filed and the Claim has not been disallowed, then the vote amount shall be the non-contingent,

liquidated, and undisputed amount as set forth in the Debtors' filed Schedules;

d.   if a proof of claim has been filed and the Claim has not been disallowed, and the Claim is not (i) the subject of a pending objection, (ii) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), (iii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), or (iv) deemed disputed under the Plan, the vote amount is the liquidated amount as set forth on the proof of claim;

e.   if a proof of claim has been filed and the Claim has not been disallowed, and the Claim is (i) contingent (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), (ii) filed entirely in an unknown, unliquidated or undetermined amount (as determined on the face of the claim or after a reasonable review of the supporting documentation by the Debtors or the Voting Agent), or (iii) deemed disputed under the Plan, such claim shall be temporarily allowed for voting purposes only, and not for any other purposes and without prejudice to the rights of the Debtors in any other context, at $1.00;

f.   if (i) a proof of claim has been filed and is the subject of a pending objection, or (ii) the Debtors have amended or supplemented the Schedules to (a) eliminate a Claim or (b) to change the nature or characterization of a Claim but the thirty (30) day period specified in the Bar Date Order for the relevant Holder of such Claim to file a proof of claim in response to such amendment has not yet passed, then such Claim shall be disallowed for voting purposes, except to the extent and in the manner as may be set forth in the objection, amendment, or supplement;

g.   to the extent that a Holder of Claims has filed or purchased duplicative Claims that are classified under the Plan in the same Class, such Holder shall be provided with a single Solicitation Package and a single Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to the allowance of such duplicate Claims;

     h.  where a Holder of Claims has asserted its Claims against no particular Debtor, against multiple Debtors, or against all Debtors without filing separate proofs of claim against each Debtor as required by the Bar Date Order, and the Debtors are not able to determine which Debtor such Claims should properly be asserted against after the exercise of reasonable diligence, such Holder shall not be entitled to a vote on account of such Claims;

     i.  Claims, whether scheduled or filed, for $0.00 will be disallowed for voting purposes; and

     j.  if a proof of claim has been filed in a liquidated amount but also purports to include other, unliquidated amounts, the vote amount shall be solely the liquidated, non-disputed amount set forth on the proof of claim.

     28.    If any Holder of a Claim wishes to have its Claim allowed for purposes of voting to accept or reject the Plan in a manner that is inconsistent with the amount or classification set forth on the Ballot it received or the tabulation rules set forth in this Order, or if any party that did not receive a Ballot wishes to have its Claim temporarily allowed for voting purposes only, such Holder must serve on the Debtors and file with the Bankruptcy Court, on or before **June 21, 2010**, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "3018 Motion"). A 3018 Motion must set forth, with particularity, the amount and classification in which such Holder believes its Claim should be allowed for voting purposes and the evidence in support of its belief.

     29.    In respect of any timely-filed 3018 Motion, the Ballot in question shall be counted (a) in the amount established by this Court in an order entered on or before the Voting Deadline or (b) if such an order has not been entered by the Voting Deadline and unless the Debtors and the party have come to an agreement as to the relief requested in the 3018 Motion, in an amount equal to (i) the liquidated, non-contingent, and non-disputed amount of such Claim as set forth in the Schedules; (ii) if a proof of claim has been timely filed in respect of such

claim, the liquidated, non-contingent, and non-disputed amount set forth in such proof of claim; or (iii) if neither (i) nor (ii) applies, such party shall not have a Ballot counted at all.

30.     **July 13, 2010** is established as the date for a hearing to consider any and all 3018 Motions.

31.     Whenever a Holder of a Claim or a Voting Nominee casts more than one Ballot or Master Ballot voting the same Claim(s) before the Voting Deadline, the last dated and valid Ballot or Master Ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior Ballots or Master Ballots.

32.     If a Holder of Claims or a Voting Nominee casts multiple Ballots or Master Ballots (except in the case of supplemental Master Ballots) that are received by the Voting Agent on the same day but are voted inconsistently, such Ballots or Master Ballots will not be counted.

33.     Any Ballot that partially rejects and partially accepts the Plan will not be counted.

34.     Each Holder of Senior Loan Claims and Senior Loan Guaranty Claims shall be entitled to cast a single Ballot with respect to such Claims, with each vote to be counted as a vote to accept or reject the Plan in Class 1C and each of Classes 50C through 111C, and a vote to accept or reject the Prepackaged Plan of any Guarantor Non-Debtor that becomes a Debtor.  A vote to accept the Plan in Class 1C and each of Classes 50C through 111C is also (i) an acceptance of the compromise and settlement set forth in the Plan by and among the Guarantor Non-Debtors, on the one hand, and the holders of Senior Loan Guaranty Claims, on the other hand (the "Guarantor Non-Debtor Compromise and Release") and (ii) a grant of authority to the Loan Agents (as such term is defined in the Plan) to enter into any and all

agreements and take any and all actions that such Loan Agents deem necessary or appropriate to

effectuate the Guarantor Non-Debtor Compromise and Release and all other terms of the Plan.

35.    A Holder of Voting Claims in more than one Voting Class under the Plan

must submit a separate Ballot on account of its vote(s) in each separate Voting Class of Claims

in which it wishes to cast a vote to accept or reject the Plan.

36.    The following types of Ballots will not be counted in determining whether

the Plan has been accepted or rejected:

a.    any Ballot or Master Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan;

b.    any Ballot or Master Ballot received after the Voting Deadline in the Debtors' sole discretion;

c.    any Ballot or Master Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.    any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.    any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

f.    any Ballot or Master Ballot without a signature or an original signature; and

g.    any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

37.    The following voting procedures and standard assumptions shall be used

in tabulating the Ballots, subject to any contrary order(s) of this Court:

a.    Delivery of Ballots and Master Ballots to the Voting Agent will be deemed made only when the original, executed Ballot or Master Ballot is actually received by the Voting Agent.

b.    The Debtors, in their sole discretion, may waive any defect in any Ballot or Master Ballot at any time, including failure to file such Ballot or Master

Ballot in a timely manner, either before or after the close of voting, and without notice; provided, however, that the Debtors or the Voting Agent shall maintain a record of any waivers granted under this subsection. Unless the Ballot or Master Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors may, in their sole discretion, reject any defective or late-filed Ballot or Master Ballot as invalid and, therefore, decline to utilize it in connection with confirmation of the Plan.

c.    After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

d.    Defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

e.    Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any of them incur any liabilities for failure to provide such notification. Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) shall not be counted.

38.    Master Ballot Tabulation. With respect to the tabulation of Master Ballots and Beneficial Ballots for Senior Noteholder Claims cast by Voting Nominees and Beneficial Owners, respectively, the principal amount held by Voting Nominees and Beneficial Owners on the Record Date, as evidenced by the record and depository listings, shall be used as the amount to tabulate acceptance or rejection of the Plan, although any principal amounts may be adjusted by the Voting Agent to account for prepetition interest.

39.    The following additional rules shall apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners of Senior Notes:

a.    Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such Beneficial Owners in the applicable tranche of Senior Notes as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of Senior Notes held by such Voting Nominee.

b.    To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable tranche of Senior Notes.

c.    Where a Beneficial Owner holds its Senior Notes through more than one Voting Nominee, it must execute a separate Beneficial Ballot for each block of Senior Notes. However, such Beneficial Owner must vote all of its Senior Noteholder Claims in the same manner, to either accept or reject the Plan. Accordingly, if such Beneficial Owner returns more than one Beneficial Ballot to more than one Voting Nominee voting different Senior Noteholder Claims and the Beneficial Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

40.    The Voting Agent is required to file the results of its tabulation of votes to accept or reject the Plan no later than **August 6, 2010**.

41.    <u>Media Ownership Certification Deadline</u>. Any Holder of a Claim or Claims that (i) is anticipated to receive New Common Stock under the Plan, (ii) believes that the amount of its Claims (or Claims that it intends to acquire prior to the Effective Date of the Plan) may entitle it to receive (for any reason, including, but not limited to, as a result of the distribution by the Debtors of New Warrants or New Class B Common Stock in lieu of New Class A Common Stock to other Holders of Loan Claims/Loan Guaranty Claims or Senior Noteholder Claims, in accordance with section 5.4.2 of the Plan) five percent (5%) or more of the New Class A Common Stock under the Plan (a "<u>Potential 5% Holder</u>"), and (iii) wishes to remain eligible to receive 5% or more of the New Class A Common Stock is required to (a) contact the Debtors and complete, execute and submit to the Debtors a Media Ownership Certification on or prior to **July 1, 2010** (the "<u>Certification Deadline</u>"), and (b) cooperate with the Debtors in the preparation of any amendment to the FCC Applications necessitated thereby.

42.    In the event a Potential 5% Holder does not submit an executed Media Ownership Certification by the Certification Deadline, in accordance with section 5.4.2 of the Plan, such Potential 5% Holder may, in the event it would ultimately be entitled under the Plan to receive more than five percent (5%) of the New Class A Common Stock but for the failure to submit an executed Media Ownership Certification by the Certification Deadline (and, thus, the failure to be made a "party" to the FCC Applications), receive New Class B Common Stock in lieu of New Class A Common Stock to the extent deemed appropriate by Reorganized Tribune to ensure compliance with the Communications Act or the FCC rules and/or to avoid substantial delay in obtaining the FCC Approval.  Further, Reorganized Tribune may issue shares of New Class B Common Stock in lieu of shares of New Class A Common Stock to a Potential 5% Holder if Reorganized Tribune determines, based on the Holder's Media Ownership Certification (or failure to provide the Media Ownership Certification or otherwise to comply with the applicable provisions of the Plan), that such Holder may have other media interests that could impair the ability of Reorganized Tribune to comply with the Communications Act or the FCC's rules.  The provisions of this paragraph are subject to confirmation of the Plan, and the rights of all parties to interpose an objection to the Plan or respecting the distribution and terms of the New Common Stock are preserved for the hearing on confirmation of the Plan; provided, however, that nothing in this paragraph shall be interpreted as conferring standing to raise such issues on any party not otherwise having standing with respect thereto.

43.    Confirmation of the Plan.  In accordance with the Discovery and Scheduling Order for Plan Confirmation [Docket No. 4366], the Confirmation Hearing shall be held before this Court on **August 16, 2010 at 10:00 a.m. (prevailing Eastern Time)**.  The Confirmation Hearing may be continued from time to time by the Court without further notice.

44.    Objections to confirmation of the Plan (including any supporting memoranda) must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the legal and factual basis and nature of objection to confirmation of the Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are received on or before **July 30, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") by the following parties:

Co-Counsel for the Debtors and Debtors in Possession

| | |
|---|---|
| Sidley Austin LLP | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
| One South Dearborn Street | 500 Delaware Avenue, Suite 1410 |
| Chicago, Illinois 60603 | Wilmington, DE 19801 |
| Fax (312) 853-7036 | Fax (302) 652-3177 |
| Attn: Jessica C.K. Boelter | Attn: Norman L. Pernick |

-and-

The Office of the United States Trustee

J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box 35
Wilmington, DE 19801
Fax (302) 573-6497
Attn: Joseph McMahon

-and-

Co-Counsel to the Official Committee of Unsecured Creditors

| | |
|---|---|
| Chadbourne & Parke, LLP | Landis, Rath & Cobb, LLP |
| 30 Rockefeller Plaza | 919 Market Street, Suite 1800 |
| New York, NY 10112 | Wilmington, DE 19801 |
| Fax (212) 408-5100 | Fax (302) 467-4400 |
| Attn: Douglas A. Deutsch | Attn: Adam G. Landis |

45.    The Court shall consider only timely-filed written objections to confirmation of the Plan. All objections not timely filed and served in accordance with the procedures described herein by the Objection Deadline shall be deemed overruled.

46.    The Debtors shall publish the Publication Notice, substantially in the form annexed hereto as Exhibit F, once each in the national editions of The Wall Street Journal, The

New York Times, the Los Angeles Times, and the Chicago Tribune not less than twenty (20) days before the Objection Deadline.

47.    The forms of mailed and published notice of the Confirmation Hearing are approved in all respects.  The scope of mailed and published notice of the Confirmation Hearing is adequate and provides known and unknown claimants with good and sufficient notice of the Confirmation Hearing.

48.    The Debtors are authorized to make any non-substantive changes to the Disclosure Statement, voting procedures, Ballots, Master Ballots, Non-Voting Notices, Credit/Refund Notices and/or forms of mailed and published notice of the Confirmation Hearing without further order of the Court, including, without limitation, changes to correct typographical, grammatical, and/or formatting errors or omissions and to conform the Disclosure Statement and any other materials in the Solicitation Package to the Plan prior to mailing to parties in interest.

49.    The Debtors, and any party supporting the Plan, shall file responses, if any, to any objection to confirmation of the Plan on or before **August 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**.  The Debtors shall also file with the Court their proposed findings of fact and conclusions of law and their memorandum of law in support of confirmation on or before such date.

50.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

51.    The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court.

Dated: Wilmington, Delaware
        _____, 2010

                                       _____
                                       The Honorable Kevin J. Carey
                                       Chief United States Bankruptcy Judge