# EXHIBIT 1

**CLEAN AND BLACK LINE DISCLOSURE STATEMENT**

[Changed Pages Since the Filing of the Proposed May 27, 2010 Disclosure Statement]

*CHANGED PAGES ONLY*

# PROPOSED DISCLOSURE STATEMENT CHANGED PAGES

## (CLEAN VERSION)

- The following treatment shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan: Each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.

  If Class 1D votes to reject the Plan, the following treatment shall apply:

  (i) Subject to Section 3.2.4(b)(ii)(B) of the Plan, each Holder of a Bridge Loan Claim shall (1) have its Claim treated as a Disputed Claim unless and until such Claim is Allowed, if at all, including determined not to be subject to avoidance, setoff, subordination or other defense, by Final Order, and (2) in full satisfaction, settlement, release and discharge of and in exchange for such Bridge Loan Claim against Tribune, receive, if ultimately Allowed by Final Order, Cash equal to its Pro Rata share of the distributable value of Tribune as determined by the Bankruptcy Court in connection with confirmation of the Plan, taking into account all Allowed Claims against Tribune and also taking into account all Intercompany Claims against Tribune; provided, however, that if the Bankruptcy Court determines in connection with confirmation of the Plan that a different (including a lesser) treatment is appropriate under the requirements of section 1129(b) of the Bankruptcy Code, then such other treatment shall apply. All rights to object to such Bridge Loan Claims and to seek to subject such Claims to avoidance, setoff, subordination, and other defenses are preserved.

  (ii) Each Holder of a Bridge Loan Claim may, on such Holder's Ballot, elect the following treatment of its Bridge Loan Claim: (1) as of the Effective Date, have its Bridge Loan Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (2) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation. Each Holder of a Bridge Loan Claim who has voted in favor of the Plan shall be deemed to have elected the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan with respect to its Bridge Loan Claim unless, on such Holder's Ballot, such Holder elects not to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan.

- Holders of Allowed Senior Noteholder Claims (Class 1E) shall receive, subject to section 5.4.2 of the Plan, a Pro Rata Share of (i) 7.4% of the New Senior Secured Term Loan; (ii) 7.4% of the Distributable Cash; and (iii) 7.4% of the New Common Stock, subject to dilution by the Equity Incentive Plan.

- Holders of Allowed Other Parent Claims (Class 1F) shall each receive an amount of Distributable Cash equal to 35.18% of the aggregate amount in U.S. dollars of such Holder's Allowed Other Parent Claim.

| Class & Description | Estimated Allowed Claims | Treatment | Estimated Recovery to Holders of Allowed Claims and Interests |
|---|---|---|---|
| **Priority Non-Tax Claims (Class 1A):** | $0 to $1 million | Unimpaired | 100% in the form of Reinstatement. See Article IX.D.1.a. |
| **Other Secured Claims (Class 1B):** | Undetermined | Unimpaired | 100% in the form of Reinstatement. See Article IX.D.1.b. |
| **Senior Loan Claims (Class 1C):** | $8.722 billion | Impaired | 0.44% in the form of a Pro Rata share, calculated together with the Holders of Claims in Class 1D that are Allowed pursuant to Section 3.2.4(b)(i), of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation. See Article IX.D.1.c. |
| **Bridge Loan Claims (Class 1D)** | $1.619 billion | Impaired | 0.44%, which recovery percentage shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan. If Class 1D votes to accept the Plan, each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.<br><br>If Class 1D votes to reject the Plan, then the Claims of any Holders who do not elect, or are not deemed to elect, to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan shall be treated as "Disputed Claims." As Holders of Disputed Claims, such rejecting or non-voting Holders will not be entitled to receive any recovery on the Effective Date of the Plan and will likely be subject to protracted litigation after the Effective Date commenced by a representative of the Estates respecting Allowance of their Claims, including litigation respecting whether or not such Claims should be subject to avoidance, setoff, subordination and/or other defenses. If and to the extent such Bridge Loan Claims are ultimately determined by a Final Order to be Allowed Claims, then each Holder shall receive Cash on account of its Allowed Claim in an amount equal to its Pro Rata share of the distributable value of Tribune after taking into account all other Allowed Claims and also Intercompany Claims against Tribune (such distributable value being determined by the Bankruptcy Court in connection with confirmation of the Plan); provided, however, that if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate under section 1129(b) of the Bankruptcy Code, then such other treatment shall apply. The Debtors estimate the recovery by a Holder of a Bridge Loan Claim in the event Class 1D votes to reject the Plan and such Holder does not elect, or is not deemed to elect, the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan will be between 0% and 4.6% of the amount of such Claim. The aggregate recoveries by Bridge Loan Claims cannot materially exceed 4.6% of the amount of the Bridge Loan Claims unless the condition to the Plan Effective Date in Section 10.1.1.(i) of the Plan is waived. The treatment of Bridge Loan Claims under the Plan is further discussed in Article IX.D.1.d herein. |

Claims in Class 1C are Impaired, and Holders of Class 1C Claims are entitled to vote to accept or reject the Plan.

(d)     Class 1D – Bridge Loan Claims

Class 1D consists of all Bridge Loan Claims against Tribune. Bridge Loan Claims are Claims arising under the Bridge Loan Agreement.

The following treatment shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan: Each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.

If Class 1D votes to reject the Plan, the treatment of Bridge Loan Claims is set forth in Section 3.2.4(b)(ii)(A) and 3.2.4(b)(ii)(B) of the Plan, which Holders of Bridge Loan Claim are urged to review. In summary, such treatment is as follows:

If the Bridge Loan Class rejects the Plan, the Claims of any Holders who do not elect, and are not deemed to elect, to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan will be subject to treatment as Disputed Claims, and the Bankruptcy Court will determine after confirmation of the Plan whether or not and the extent to which such Claims should be Allowed Claims not subject to avoidance, setoff, subordination, or other defenses. Such Disputed Claims, to the extent ultimately determined by Final Order to be Allowed Claims, will receive cram down treatment pursuant to Section 1129(b) of the Bankruptcy Code, which may be (i) Cash in an amount equal to their Pro Rata share of Tribune's distributable value after taking into account all Allowed Claims against Tribune and Intercompany Claims against Tribune, or (ii) if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate under Section 1129(b) of the Bankruptcy Code, then such different treatment. To the extent that the cram down treatment entitles the Holders of Allowed Bridge Loan Claims to Cash in an amount equal to a share of Tribune's distributable value, such distributable value, including any allocation of value on account of Intercompany Claims among Tribune and its direct and indirect subsidiaries, would be determined by the Bankruptcy Court in connection with confirmation of the Plan.

If the Bridge Loan Class rejects the Plan, the Plan also provides that a Holder of a Bridge Loan Claim may elect the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan and thereby receive for itself on account of its Bridge Loan Claim the same treatment such Holder would have received if the Class of Bridge Loan Claims had accepted the Plan. This elected treatment is described specifically in Section 3.2.4(b)(ii)(B) of the Plan. The election of such treatment must be made in a timely filed Ballot accompanying the Holder's vote in connection with the Plan. To the extent a Holder does not make a timely election, then: (i) if such Holder voted in favor of the Plan in respect of its Bridge Loan Claim, such Holder shall be deemed to have elected treatment of its Bridge Loan Claim in accordance with Section 3.2.4(b)(ii)(B) of the Plan; and (ii) if such Holder voted to reject the Plan, or did not vote, in respect of its Bridge Loan Claim, such Holder shall be deemed to have elected not to have its Bridge Loan Claim treated in accordance with Section 3.2.4(b)(ii)(B) of the Plan.

To the extent that the Bridge Loan Class votes against the Plan and Holders of Bridge Loan Claims do not elect, and have not been deemed to elect, the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan, the Debtors estimate that the distribution to Holders of Bridge Loan Claims will be between 0% and 4.6% of their Bridge Loan Claims (equivalent to an estimated aggregate dollar recovery of $0 to $74 million for the entire Class of Bridge Loan Claims if such Class rejects the Plan). The Debtors' high-end estimate of a 4.6%

cram down recovery reflects an estimated recovery by Holders of Bridge Loan Claims if: (i) such Claims are determined by Final Order to be fully Allowed Claims not subject to avoidance, setoff, subordination, or other defenses; (ii) the portion of Distributable Value (as Distributable Value is estimated in Article XII.B.1 of this Disclosure Statement ) attributable to Tribune is determined to be $537 million, and (iii) the Bankruptcy Court does not determine that a cram down treatment different from a Pro Rata allocation of Tribune's distributable value is appropriate.

The following may be further noted regarding the recovery by Holders of Bridge Loan Claims in the event of cram down treatment:

(i) The Bridge Loan Claims will be treated as Disputed Claims and therefore not be entitled to any distributions under the Plan until and unless they are Allowed after resolution of all objections to such Claims, including objections based upon avoidance, setoff, subordination and/ or other Claim defenses, which is likely to be substantially after the Effective Date of the Plan. If the Bridge Loan Claims are not determined to be Allowed Claims, then no distribution will be made on account of Bridge Loan Claims. The issues raised in Claim objections to the Bridge Loan Claims may include, but not be limited to, the potential avoidance claims respecting the Bridge Loan Claims generally described in Article VII of this Disclosure Statement and in various submissions by creditors in the compendium accompanying this Disclosure Statement. The Holders of the Bridge Loans Claims subject to cram down will not receive releases and any and all objections to such Claims, including objections based upon Claim avoidance, setoff, subordination and other Claim defenses, will be preserved. Holders of Bridge Loan Claims subject to cram down also will not receive the indemnities set forth in Article 11 of the Plan.

(ii) The Bankruptcy Court's determination of Tribune's actual value available for distribution on account of Allowed Claims may be different from the distributable value of $537 million estimated in Article XII.B.1 of this Disclosure Statement. To the extent the Bankruptcy Court determines Tribune's distributable value to be lower than $537 million, Holders of Allowed Bridge Loan Claims will likely recover less than 4.6% of Allowed Bridge Loan Claims.[60]

(iii) The Plan provides that if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate for Allowed Bridge Loan Claims pursuant to 1129(b) of the Bankruptcy Code, then such different treatment shall apply to Allowed Bridge Loan Claims. The Bankruptcy Court may determine that the appropriate treatment of the Holders of Bridge Loan Claims subject to cram down under 1129(b) is different from the Pro Rata distribution of Tribune's distributable value.

(iv) To the extent, in the event of cram down, the aggregate recovery on account of Allowed Bridge Loan Claims is determined to be materially greater than that anticipated by the Distributable Value estimated in this Disclosure Statement — i.e., materially greater than an aggregate recovery of 4.6% on account of Bridge Loan Claims — then the condition to the Plan Effective Date in Section 10.1.1(i) of the Plan would need to be waived for the Plan to become Effective.

Claims in Class 1D are Impaired, and Holders of Class 1D Claims are entitled to vote to accept or reject the Plan.

---

[60] The estimate of $537 million of Distributable Value attributable to Tribune includes (a) attributing to Tribune a recovery of approximately $368.8 million related to cash transferred to certain of Tribune's subsidiaries just prior to the Petition Date (see Article I.C and Article XII.B.1 of this Disclosure Statement), (b) attributing to Tribune a recovery of approximately $264 million related to receivables from and equity interest in Tribune Receivables, LLC, a Subsidiary Non-Debtor (see Article VI.A.2 of this Disclosure Statement), and (c) resolution of Claims between and among Tribune, on the one hand, and Tribune's direct and indirect subsidiaries, on the other hand, taking account the likely enforceability of such Claims. The Bankruptcy Court's determination of Tribune's distributable value in connection with confirmation of the Plan may reflect a value or attribution of these assets and a resolution of Intercompany Claims different from that used by the Debtors to estimate Distributable Value.

**BLACK LINED PROPOSED DISCLOSURE STATEMENT CHANGED PAGES**

- The following treatment shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan: Each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.

    If Class 1D votes to reject the Plan, the following treatment shall apply:

    (i) Subject to Section 3.2.4(b)(ii)(B) of the Plan, each Holder of a Bridge Loan Claim shall (a1) have its Claim treated as a Disputed Claim unless and until such Claim is Allowed by Final Order, and without limitation, all rights of the Debtors and their Estates with respect to avoidance and setoff shall be preserved, and (b, if at all, including determined not to be subject to avoidance, setoff, subordination or other defense, by Final Order, and (2) in full satisfaction, settlement, release and discharge of and in exchange for such Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive, if ultimately Allowed by Final Order, such distribution and treatment in Cash as may be proposed by the Debtors that would satisfy Cash equal to its Pro Rata share of the distributable value of Tribune as determined by the Bankruptcy Court in connection with confirmation of the Plan, taking into account all Allowed Claims against Tribune and also taking into account all Intercompany Claims against Tribune; provided, however, that if the Bankruptcy Court determines in connection with confirmation of the Plan that a different (including a lesser) treatment is appropriate under the requirements of section 1129(b) of the Bankruptcy Code, then such other treatment shall apply. All rights to object to such Bridge Loan Claims and to seek to subject such Claims to avoidance, setoff, subordination, and other defenses are preserved.

    (ii) Each Holder of a Bridge Loan Claim may, on such Holder's Ballot, elect the following treatment of its Bridge Loan Claim: (1) as of the Effective Date, have its Bridge Loan Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (2) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation. Each Holder of a Bridge Loan Claim who has voted in favor of the Plan shall be deemed to have elected the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan with respect to its Bridge Loan Claim unless, on such Holder's Ballot, such Holder elects not to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan.

- Holders of Allowed Senior Noteholder Claims (Class 1E) shall receive, subject to section 5.4.2 of the Plan, a Pro Rata Share of (i) 7.4% of the New Senior Secured Term Loan; (ii) 7.4% of the Distributable Cash; and (iii) 7.4% of the New Common Stock, subject to dilution by the Equity Incentive Plan.

| Bridge Loan Claims (Class 1D) | $1.619 billion | Impaired | 0.44%, which recovery percentage shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan. If Class 1D votes to accept the Plan, each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.<br><br>If Class 1D votes to reject the Plan, ~~subject to Section 3.2.4(b)(ii)(B) of the Plan,~~ then the Claims of any Holders who do not elect ~~and~~, or are not deemed to elect, to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan shall be treated as "Disputed Claims," ~~under the Plan.~~ As Holders of Disputed Claims, such rejecting or non-voting Holders will not be entitled to receive any recovery on the Effective Date of the Plan and will likely be subject to protracted litigation <u>after the Effective Date</u> commenced by a representative of the Estates ~~seeking the disallowance of their Claims,~~ <u>respecting Allowance of their Claims, including litigation respecting whether or not such Claims should be subject to avoidance, setoff, subordination and/or other defenses.</u> If <u>and to the extent</u> such Bridge Loan Claims are ultimately <u>determined by a Final Order to be</u> Allowed, ~~each Holder's recovery percentage on the Allowed amount of such Claim will be based upon a determination and application~~ <u>Claims, then each Holder shall receive Cash on account of its Allowed Claim in an amount equal to its Pro Rata share</u> of the distributable value of Tribune ~~at Plan Confirmation and the allocation of such distributable value to the recoveries of Holders of Claims against Tribune under the Plan. The Debtors believe that the recoveries by Bridge Loan Claims determined by this method will not exceed~~ <u>after taking into account all other Allowed Claims and also Intercompany Claims against Tribune (such distributable value being determined by the Bankruptcy Court in connection with confirmation of the Plan); provided, however, that if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate under section 1129(b) of the Bankruptcy Code, then such other treatment shall apply. The Debtors estimate the recovery by a Holder of a Bridge Loan Claim in the event Class 1D votes to reject the Plan and such Holder does not elect, or is not deemed to elect, the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan will be between 0% and</u> 4.6% of the amount of such ~~Allowed Claim (such 4.6% being determined by the application of the mid-point estimate of total "Distributable Value" of Tribune as defined herein and the resulting allocation of such "Distributable Value" to the recoveries of Holders of Claims against Tribune under the Plan).~~ <u>Claim.</u> The <u>aggregate</u> recoveries by Bridge Loan Claims cannot materially exceed ~~such~~ 4.6% of the amount of ~~such Allowed~~ <u>the Bridge Loan</u> Claims unless the condition to the Plan Effective Date in Section 10.1.1.(i) of the Plan is waived. ~~See~~<u>The treatment of Bridge Loan Claims under the Plan is further discussed in</u> Article IX.D.1.d herein. |

Claims in Class 1C are Impaired, and Holders of Class 1C Claims are entitled to vote to accept or reject the Plan.

(d)   Class 1D – Bridge Loan Claims

Class 1D consists of all Bridge Loan Claims against Tribune. Bridge Loan Claims are Claims arising under the Bridge Loan Agreement.

The following treatment shall apply to all Holders of Bridge Loan Claims if Class 1D votes to accept the Plan: Each Holder of a Bridge Loan Claim shall (a) as of the Effective Date, have its Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (b) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for each Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation.

If Class 1D votes to reject the Plan, the ~~following treatment shall apply:~~ treatment of Bridge Loan Claims is set forth in Section 3.2.4(b)(ii)(A) and 3.2.4(b)(ii)(B) of the Plan, which Holders of Bridge Loan Claim are urged to review. In summary, such treatment is as follows:

If the Bridge Loan Class rejects the Plan, the Claims of any Holders who do not elect, and are not deemed to elect, to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan will be subject to treatment as Disputed Claims, and the Bankruptcy Court will determine after confirmation of the Plan whether or not and the extent to which such Claims should be Allowed Claims not subject to avoidance, setoff, subordination, or other defenses. Such Disputed Claims, to the extent ultimately determined by Final Order to be Allowed Claims, will receive cram down treatment pursuant to Section 1129(b) of the Bankruptcy Code, which may be (i) Cash in an amount equal to their Pro Rata share of Tribune's distributable value after taking into account all Allowed Claims against Tribune and Intercompany Claims against Tribune, or (ii) if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate under Section 1129(b) of the Bankruptcy Code, then such different treatment. To the extent that the cram down treatment entitles the Holders of Allowed Bridge Loan Claims to Cash in an amount equal to a share of Tribune's distributable value, such distributable value, including any allocation of value on account of Intercompany Claims among Tribune and its direct and indirect subsidiaries, would be determined by the Bankruptcy Court in connection with confirmation of the Plan.

If the Bridge Loan Class rejects the Plan, the Plan also provides that a Holder of a Bridge Loan Claim may elect the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan and thereby receive for itself on account of its Bridge Loan Claim the same treatment such Holder would have received if the Class of Bridge Loan Claims had accepted the Plan. This elected treatment is described specifically in Section 3.2.4(b)(ii)(B) of the Plan. The election of such treatment must be made in a timely filed Ballot accompanying the Holder's vote in connection with the Plan. To the extent a Holder does not make a timely election, then: (i) if such Holder voted in favor of the Plan in respect of its Bridge Loan Claim, such Holder shall be deemed to have elected treatment of its Bridge Loan Claim in accordance with Section 3.2.4(b)(ii)(B) of the Plan; and (ii) if such Holder voted to reject the Plan, or did not vote, in respect of its Bridge Loan Claim, such Holder shall be deemed to have elected not to have its Bridge Loan Claim treated in accordance with Section 3.2.4(b)(ii)(B) of the Plan.

To the extent that the Bridge Loan Class votes against the Plan and Holders of Bridge Loan Claims do not elect, and have not been deemed to elect, the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan, the Debtors estimate that the distribution to Holders of Bridge Loan Claims will be between 0% and 4.6% of their Bridge Loan Claims (equivalent to an estimated aggregate dollar recovery of $0 to $74 million for the entire Class of Bridge Loan Claims if such Class rejects the Plan). The Debtors' high-end estimate of a 4.6%

78

~~cram down recovery reflects an estimated recovery by Holders of Bridge Loan Claims if: (i) such Claims are determined by Final Order to be fully Allowed Claims not subject to avoidance, setoff, subordination, or other defenses; (ii) the portion of Distributable Value (as Distributable Value is estimated in Article XII.B.1 of this Disclosure Statement ) attributable to Tribune is determined to be $537 million, and (iii) the Bankruptcy Court does not determine that a cram down treatment different from a Pro Rata allocation of Tribune's distributable value is appropriate.~~

~~The following may be further noted regarding the recovery by Holders of Bridge Loan Claims in the event of cram down~~ treatment:

(i) ~~Subject to Section 3.2.4(b)(ii)(B) of the Plan, each Holder of a Bridge Loan Claim shall (a) have its Claim treated as a Disputed Claim unless and until Allowed by Final Order, and without limitation, all rights of the Debtors and their Estates with respect to avoidance and setoff shall be preserved, and (b) in full satisfaction, settlement, release and discharge of and in exchange for such Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive, if ultimately Allowed, such distribution and treatment in Cash as may be proposed by the Debtors that would satisfy the requirements of section 1129(b) of the Bankruptcy Code not to exceed an amount determined by application of the mid-point estimate of total "Distributable Value" as defined herein and the allocation of such "Distributable Value" underlying the recoveries of Holders of Claims against Tribune under the Plan.~~ The Bridge Loan Claims will be treated as Disputed Claims and therefore not be entitled to any distributions under the Plan until and unless they are Allowed after resolution of all objections to such Claims, including objections based upon avoidance, setoff, subordination and/ or other Claim defenses, which is likely to be substantially after the Effective Date of the Plan. If the Bridge Loan Claims are not determined to be Allowed Claims, then no distribution will be made on account of Bridge Loan Claims. The issues raised in Claim objections to the Bridge Loan Claims may include, but not be limited to, the potential avoidance claims respecting the Bridge Loan Claims generally described in Article VII of this Disclosure Statement and in various submissions by creditors in the compendium accompanying this Disclosure Statement. The Holders of the Bridge Loans Claims subject to cram down will not receive releases and any and all objections to such Claims, including objections based upon Claim avoidance, setoff, subordination and other Claim defenses, will be preserved. Holders of Bridge Loan Claims subject to cram down also will not receive the indemnities set forth in Article 11 of the Plan.

(ii) ~~Each Holder of a Bridge Loan Claim may, on such Holder's Ballot, elect the following treatment of its Bridge Loan Claim: (1) as of the Effective Date, have its Bridge Loan Claim Allowed in an amount equal to the principal amount of such Claim plus accrued interest as of the Petition Date, and (2) on or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Bridge Loan Claim against Tribune, subject to Section 5.4.2 of the Plan, receive such Holder's Pro Rata share, calculated together with the Holders of Allowed Claims in Class 1C, of the Loan Claims Loan Allocation, the Loan Claims Cash Allocation and the Loan Claims Stock Allocation. Each Holder of a Bridge Loan Claim who has voted in favor of the Plan shall be deemed to have elected the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan with respect to its Bridge Loan Claim unless, on such Holder's Ballot, such Holder elects not to receive the treatment set forth in Section 3.2.4(b)(ii)(B) of the Plan.~~ The Bankruptcy Court's determination of Tribune's actual value available for distribution on account of Allowed Claims may be different from the distributable value of $537 million estimated in Article XII.B.1 of this Disclosure Statement. To the extent the Bankruptcy Court determines Tribune's

79

<u>distributable value to be lower than $537 million. Holders of Allowed Bridge Loan Claims will likely recover less than 4.6% of Allowed Bridge Loan Claims.[21]</u>

(iii) ~~If the Bridge Lender Class rejects the Tribune Plan, then each Bridge Lender who does not vote in favor of the Plan and who does not elect to receive the Plan treatment for an accepting class will receive a "cram down" treatment proposed by the Debtors in accordance with section~~<u>The Plan provides that if the Bankruptcy Court determines that a different (including a lesser) treatment is appropriate for Allowed Bridge Loan Claims pursuant to</u> 1129(b) of the Bankruptcy Code. ~~Such cram down treatment would entitle such Bridge Lender, if and to the extent its claim is determined by Final Order to be Allowed, to receive a distribution that the Debtors intend to determine based upon the allocation of Tribune's Distributable Value to the recoveries of Holders of Claims against Tribune under the Plan. The Allowance of Bridge Loan Claims will be subject to litigation and determination after Plan Confirmation, and includes determining whether or not such Claims are subject to setoff or avoidance. The Debtors estimate the distribution to holders of Bridge Loan Claims in the event of cram down will not exceed consideration with a calculated value of approximately $74 million, equivalent to a recovery of about 4.6%, if all the Bridge Loan Claims are determined to be Allowed Claims in an amount equal to the full amount of principal and interest accrued thereon prior to the Petition Date and are not subject to avoidance or setoff. This estimate is based upon Tribune's Distributable Value (as defined in Article XII.B.1 of this Disclosure Statement) not exceeding the $537 million estimate provided in Article XII.B.1 of this Disclosure Statement. The estimate in this Disclosure Statement, however, may be disputed and the Bankruptcy Court may determine in connection with Confirmation (either through litigation or settlement) that the actual Distributable Value is different than the estimate provided in Article XII.B.1 of this Disclosure Statement. If Tribune's actual Distributable Value is determined to be lower than $537 million, then the distribution on account of any Allowed Claims of the Bridge Claim Holders would be lower. The estimate of Tribune Distributable Value of $537 million, for example, includes the recovery by Tribune of approximately $368.8 million transferred to certain of Tribune's subsidiaries just prior to the Petition Date, the equity value of Tribune Receivables, LLC, and the value received by Tribune on account of its receivables from and equity interests in its subsidiaries. To the extent it is determined at Confirmation that the actual Distributable Value does not provide for recovery by Tribune of the full $368.8 million transferred prior to the Petition Date and/or or does not attribute to Tribune the equity value of Tribune Receivables, LLC or subsidiary receivables transferred to Tribune, then the actual Distributable Value may be substantially less than $537 million. The allowed amount of the intercompany receivables between Tribune and its direct and indirect subsidiaries, which also may be determined or settled at Confirmation, may also impact Distributable Value. To the extent, in the event of cram down, the recovery on account of Allowed Bridge Loan Claims is determined to be materially greater than that anticipated by the Distributable Value estimated in the Disclosure Statement, then the condition to the Plan Effective Date in Section 10.1.1(i) would need to be waived for the Plan to become Effective.~~<u>, then such different treatment shall apply to Allowed Bridge Loan Claims. The Bankruptcy Court may determine that the appropriate treatment of the Holders of Bridge Loan Claims subject to cram down under 1129(b) is different from the Pro Rata distribution of Tribune's distributable value.</u>

(iv) <u>To the extent, in the event of cram down, the **aggregate** recovery on account of Allowed Bridge Loan Claims is determined to be materially greater than that anticipated by the Distributable Value</u>

---

[21] <u>The estimate of $537 million of Distributable Value attributable to Tribune includes (a) attributing to Tribune a recovery of approximately $368.8 million related to cash transferred to certain of Tribune's subsidiaries just prior to the Petition Date (see Article I.C and Article XII.B.1 of this Disclosure Statement), (b) attributing to Tribune a recovery of approximately $264 million related to receivables from and equity interest in Tribune Receivables, LLC, a Subsidiary Non-Debtor (see Article VI.A.2 of this Disclosure Statement), and (c) resolution of Claims between and among Tribune, on the one hand, and Tribune's direct and indirect subsidiaries, on the other hand, taking account the likely enforceability of such Claims. The Bankruptcy Court's determination of Tribune's distributable value in connection with confirmation of the Plan may reflect a value or attribution of these assets and a resolution of Intercompany Claims different from that used by the Debtors to estimate Distributable Value.</u>

<u>estimated in this Disclosure Statement — i.e., materially greater than an aggregate recovery of 4.6% on account of Bridge Loan Claims —</u> <u>then the condition to the Plan Effective Date in Section 10.1.1(i) of the Plan would need to be waived for the Plan to become Effective.</u>

Claims in Class 1D are Impaired, and Holders of Class 1D Claims are entitled to vote to accept or reject the Plan.

   (e) Class 1E - Senior Noteholder Claims

Class 1E consists of all Senior Noteholder Claims against Tribune. Senior Noteholder Claims are all Claims arising under or evidenced by the Senior Notes Indentures and related documents and any Claim of the Senior Noteholders arising under the Pledge Agreement. The Senior Noteholder Claims shall together be deemed Allowed in the aggregate amount of $1,283,055,743.77. The Senior Noteholder Claims shall not be subject to reduction, disallowance, subordination, set off or counterclaim (other than the Senior Noteholder Claims of MSCS with respect to the Morgan Stanley Claims).

On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Senior Noteholder Claims against Tribune, subject to Section 5.4.2 of the Plan, each Holder of an Allowed Senior Noteholder Claim shall receive such Holder's Pro Rata share of 7.4% of the New Senior Secured Term Loan, 7.4% of the Distributable Cash, and 7.4% of the New Common Stock, subject to dilution by the Equity Incentive Plan.

Claims in Class 1D are Impaired, and Holders of Class 1E Claims are entitled to vote to accept or reject the Plan.

   (f) Class 1F – Other Parent Claims

Class 1F consists of all Other Parent Claims against Tribune. Other Parent Claims are General Unsecured Claims against Tribune and for the avoidance of doubt includes all Claims against Tribune under Non-Qualified Former Employee Benefit Plans with the exception of Convenience Claims.

On or as soon as practicable after the applicable Distribution Date, in full satisfaction, settlement, release and discharge of and in exchange for Allowed Other Parent Claims against Tribune, each Holder of an Allowed Other Parent Claim shall receive an amount of Distributable Cash equal to 35.18% of the aggregate amount in U.S. dollars of such Holder's Allowed Other Parent Claim.

Claims in Class 1F are Impaired, and Holders of Class 1F Claims are entitled to vote to accept or reject the Plan.

   (g) Class 1G – Convenience Class Claims.

Class 1G consists of all Convenience Claims against Tribune. A Convenience Claim is a Claim against Tribune that would otherwise be a General Unsecured Claim that is (i) in an amount equal to or less than $1,000 or (ii) in an amount that has been reduced to $1,000 pursuant to a Convenience Class Election made by the Holder of such Claim; provided, however, that where any portion(s) of a single Claim has been transferred on or after March 30, 2010, any transferred portion(s) shall continue to be treated together April 12, 2010, such Claim as a single Claim for purposes of the Convenience Class Election and determining whether such Claim qualifies as a Convenience Claim.

If you are the Holder of a General Unsecured Claim against Tribune, the Ballot included as part of the Solicitation Package that includes this Disclosure Statement provides for you to make the Convenience Class Election. The Convenience Class Election is an irrevocable election made on the Ballot by the Holder of a