### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

```
IN RE:                          )  Case No. 08-13141(KJC)
                                )  (JOINTLY ADMINISTERED)
TRIBUNE COMPANY, et al.,        )  Chapter 11
                                )
                                )  Courtroom 5
                                )  824 Market Street
                     Debtors.   )  Wilmington, Delaware 19801
                                )
                                )  May 28, 2010
                                )  10:06 A.M.
```

TRANSCRIPT OF **(1)** DISCLOSURE STATEMENT FOR JOINT PLAN
OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS
SUBSIDIARIES (DOCKET NO. 4008)**(2)** MOTION TO AUTHORIZE (MOTION
OF THE DEBTORS FOR AN ORDER (I) ESTABLISHING PROCEDURES FOR
SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT JOINT
PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS
SUBSIDIARIES; (II) ESTABLISHING DEADLINE FOR RETURN OF MEDIA
OWNERSHIP CERTIFICATIONS; (III) SCHEDULING CONFIRMATION
HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN
RESPECT OF CONFIRMATION OF JOINT PLAN OF REORGANIZATION; AND
(V) GRANTING RELATED RELIEF) (DOCKET NO. 4204).
BEFORE HONORABLE KEVIN J. CAREY
UNITED STATES CHIEF BANKRUPTCY JUDGE

**APPEARANCES:**

```
For the Debtors:        Cole Schotz Meisel, Forman
                        & Leonard, P.A.
                        By:  NORMAN PERNICK, ESQ.
                        1000 N. West Street, Suite 1200
                        Wilmington, Delaware 19801

                        Sidley Austin LLP
                        By:  BRYAN KRAKAUER, ESQ.
                             KERIANN MILLS, ESQ.
                        One South Dearborn
                        Chicago, Illinois 60603

ECRO:                   AL LUGANO
```

**TRANSCRIPTION SERVICE:**      **TRANSCRIPTS PLUS, INC.**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
**Telephone: 215-862-1115**
**Facsimile: 215-862-6639**
**e-mail CourtTranscripts@aol.com**

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**APPEARANCES:**
(Continued)

| | |
|---|---|
| For Barclays: | Edwards Angell Palmer & Dodge LLP<br>By:  R. CRAIG MARTIN, ESQ.<br>919 North Market Street<br>Wilmington, Delaware 19801 |
| | Mayer Brown, LLP<br>By:  JEAN-MARIE ATAMIAN, ESQ.<br>71 South Wacker Street<br>Chicago, Illinois 60606 |
| For Unsecured Creditors' Committee: | Landis Rath & Cobb<br>By:  MATTHEW McGUIRE, ESQ.<br>919 Market Street, Suite 1800<br>P.O. Box 2087<br>Wilmington, DE 19801 |
| | Chadbourne & Park, LLP<br>By:  DOUGLAS E. DEUTSCH, ESQ.<br>30 Rockefeller Plaza<br>New York, New York 10112 |
| For JPMorgan Chase: | Richards Layton & Finger, PA<br>By:  TRAVIS McROBERTS, ESQ.<br>One Rodney Square, P.O. Box 551<br>Wilmington, Delaware 19899 |
| | Davis Polk & Wardwell LLP<br>By:  ELI VONNEGUT, ESQ.<br>     DAMIAN SCHAIBLE, ESQ.<br>450 Lexington Avenue<br>New York, NY 10017 |
| For Centerbridge Credit | Akin Gump Strauss Hauer & Feld LLP<br>By:  PHIL DUBLIN, ESQ.<br>     ALEXIS FREEMAN, ESQ.<br>One Bryant Park<br>New York, New York 10036 |
| For Wilmington Trust: | Benesch Friedlander Coplan<br>& Aronoff LLP<br>By:  JENNIFER HOOVER, ESQ.<br>222 Delaware Avenue, Suite 801<br>Wilmington, Delaware 19801-1611 |

**APPEARANCES:**
(Continued)


For GreatBanc:                    Womble Carlyle Sandridge & Rice, PLLC
                                  By:   TOM HORAN, ESQ.
                                  222 Delaware Avenue, Suite 1501
                                  Wilmington, Delaware 19801

For the Credit                    Young Conaway Stargatt & Taylor, LLP
Agreement Lenders:                By:  BLAKE CLEARY, ESQ.
                                  The Brandywine Building
                                  1000 West Street, 17th Floor
                                  Wilmington, Delaware 19899-0391

For Wells Fargo:                  Fox Rothschild LLP
                                  By:  JEFFREY SCHLERF, ESQ.
                                  Mellon Bank Center
                                  919 North Market Street, Suite 1400
                                  14th Floor
                                  Wilmington, Delaware 19801-3046

                                  White & Case
                                  By:   THOMAS E. LAURIA, ESQ.
                                        SCOTT GREISSMAN, ESQ.
                                  Wachovia Financial Center
                                  200 South Biscayne Boulevard
                                  Suite 4900
                                  Miami, Florida

For Merrill Lynch:                Potter Anderson & Corroon, LLP
                                  By:  LAURIE SELBER SILVERSTEIN, ESQ.
                                  Hercules Plaza, P.O. Box 951
                                  1313 N. Market Street
                                  Wilmington, Delaware 19899-0951

For Deutsche Bank:                McCarter & English, LLP
                                  By:  KATE BUCK, ESQ.
                                  Renaissance Centre
                                  405 N. King Street, 8th Floor
                                  Wilmington, Delaware 19801

For the Examiner,                 Saul Ewing
Kenneth Klee:                     By:  LUKE MURLEY, ESQ.
                                  222 Delaware Avenue, Suite 1200
                                  P.O. Box 1266

4

**APPEARANCES:**
(Continued)

| | |
|---|---|
| The U.S. Trustee: | United States Department of Justice<br>Office of the U.S. Trustee<br>By:  JOSEPH J. McMAHON, JR., ESQ.<br>844 King Street<br>Wilmington, Delaware 19899 |
| For Morgan Stanley: | Barnes & Thornburg LLP<br>By:  DAVID POWLEN, ESQ.<br>Suite 1200<br>1000 N. West Street<br>Wilmington, Delaware |
| For Washington-<br>Baltimore Newspaper: | Cross & Simon, LLC<br>By:  CHRISTOPHER SIMON, ESQ.<br>     AMY EVANS, ESQ.<br>913 North Market Street, Suite 1001<br>Wilmington, Delaware 19801 |

**TELEPHONIC APPEARANCES:**
**(As reflected on the Confirmed Telephonic Appearance Schedule)**

| | |
|---|---|
| For Tribune Company: | Tribune Company<br>By:  CHANDLER BIGELOW |
| For Tribune Company: | Tribune Company<br>By:  GARY WEITMAN |
| For Tribune Company: | Tribune Company<br>By:  MICHAEL D. ONEAL |
| For Tribune Company: | Tribune Company<br>By:  DON LIEBENTRITT |
| For Tribune Company: | Tribune Company<br>By:  DAVID ELDERSVELD |
| For Tribune Company: | Kramer Levin Naftalis & Frankel, LP<br>By:  KATHERINE CRUZ, ESQ. |
| For Tribune Company: | Kramer Levin Naftalis & Frankel, LP<br>By:  DAVID E. BLABEY, JR., ESQ. |

**TELEPHONIC APPEARANCES:**
**(As reflected on the Confirmed Telephonic Appearance Schedule)**
(Continued)

```
For Tribune Company:      Sidley Austin
                          By:  GREG DEMO, ESQ.

For Tribune Company:      Sidley Austin
                          By:  DAVID MILES, ESQ.

For Tribune Company:      Sidley Austin
                          By:  JILLIAN LUDWIG, ESQ.

For Tribune Company:      Sidley Austin
                          By:  CANDICE KLINE, ESQ.

For Seneca Capital:       Seneca Capital
                          By:  USMAN TAHIR

For Morgan Stanley:       Weil Gotshal & Manges, LLP
                          By:  EVAN LEDERMAN, ESQ.

For JPMorgan Chase:       JPMorgan Chase
                          By:  KEVIN C. KELLEY

For JPMorgan Chase:       JPMorgan Chase Bank, N.A.
                          By:  SHACHAR MINKOVE

For the Credit           Hennigan, Bennett & Dorman, LLP
Agreement Lenders:        By:  JAMES O. JOHNSTON, ESQ.

For Barclays:             Mayer Brown, LLP
                          By:  AMIT TREHAM, ESQ.

For DE Shaw:              DE Shaw
                          By:  SARAH S. JOHNSON

For Wells Fargo:          White & Case
                          By:  SCOTT GREISSMAN, ESQ.

For CitiGroup:            Paul Weiss Rifkind Wharton
                          By:  ANDREW N. GOLDMAN, ESQ.

For CitiGroup:            Paul Weiss Rifkind Wharton
                          By:  ANDREW LEVY, ESQ.
```

**TELEPHONIC APPEARANCES:**
**(As reflected on the Confirmed Telephonic Appearance Schedule)**
(Continued)

```
For CitiGroup:            Paul Weiss Rifkind Wharton
                          By:  OKSANA LASHKO, ESQ.


For CitiGroup:            Paul Weiss Rifkind Wharton
                          By:  ELIZABETH McCOLM, ESQ.


For Angelo, Gordon        Wilmer Cutler Pickering Hale & Dorr
& Co.:                    By:  ANDREW N. GOLDMAN, ESQ.


For U.S. Department       U.S. Department of Labor
of Labor:                 By:  LEONARD GERSON, ESQ.


For RBS Greenwich         RBS Greenwich Capital
Capital:                  By:  JEFFREY FARKAS


For Centerbridge Credit   Akin Gump Strauss Hauer & Feld LLP
                          By:  PHILLIP DUBLIN, ESQ.


For UBS Securities:       UBS Securities Bank
                          By:  NEEL DOSHI


For Unsecured Creditors'  Chadbourne & Park, LLP
Committee:                By:  DOUGLAS E. DEUTSCH, ESQ.


For Unsecured Creditors'  Chadbourne & Park, LLP
Committee:                By:  HOWARD SEIFE, ESQ.


For Unsecured Creditors'  Chadbourne & Park, LLP
Committee:                By:  DAVID LEMAY, ESQ.


For Bank of America:      Bank of America
                          By:  ESTER CHUNG


For Merrill Lynch:        Kaye Scholer, LLP
                          By:  RICHARD CHOIL, ESQ.


For Allen & Company:      Allen & Company
                          By:  MICHAEL CHING


For Law Debenture:        Kasowitz, Benson, Torres
                          & Friedman LLP
                          By:  RICHARD CASHER, ESQ.
```

**TELEPHONIC APPEARANCES:**
**(As reflected on the Confirmed Telephonic Appearance Schedule)**
(Continued)

| | |
|---|---|
| For Law Debenture: | Kasowitz, Benson, Torres & Friedman LLP<br>By: MATTHEW STEIN, ESQ. |
| For Royal Bank of Scotland: | Orrick Herrington<br>By: JAMES BURKE, ESQ. |
| For Wilmington Trust: | Brown Rudnick LLP<br>By: KATHERINE BROMBERG, ESQ. |
| For Wilmington Trust: | Brown Rudnick LLP<br>By: MARTIN SIEGEL, ESQ. |
| For Dow Jones & Co.: | Dow Jones & Co.<br>By: PEG BRICKLEY |
| For Tribune Company: | Sidley Austin<br>By: D'LISIA BERGERON, ESQ. |
| For the Credit Agreement Lenders: | Hennigan, Bennett & Dorman, LLP<br>By: BRUCE BENNETT, ESQ. |
| For Deutsche Bank: | McCarter & English, LLP<br>By: DAVID J. ADLER, ESQ. |
| For Carlson Capital: | Vinson & Elkins<br>By: STEVEN ABRAMOWITZ, ESQ. |
| For Matthew Zloto: | MATTHEW ZLOTO, Pro Se |
| For Macquarie Capital: | Macquarie Capital<br>By: RUSHABH VORA |

1          THE COURT:  Good morning, everyone.   Tell me where

2 we are.

3          MR. KRAKAUER:   Your Honor, Bryan Krakauer on behalf

4 of the debtors.

5          With one exception, all the disclosure statement

6 objections have been resolved.   And I believe the statements

7 also by the various creditors have also been resolved.

8          While the debtors don't necessarily agree with some

9 of the statements in all -- some of the contentions made in all

10 the statements, we're fine sending them all out.

11          I think when we filed the statements on Wednesday,

12 there was one statement where we still had some language issues

13 with the bridge lenders.   They filed a revised statement last

14 night attached to their objection, and their revised statement,

15 if they want to send that out, that's fine with us.

16          So, I think in terms of all the creditors'

17 statements, we are basically done.

18          We also have a -- have resolved with the union their

19 objection to the disclosure statement.   They filed an objection

20 on Wednesday with regard to the compensation issues.   We worked

21 with them yesterday on some revised language in the disclosure

22 statement.   We filed yesterday afternoon a revised disclosure

23 statement with that language.   And they've authorized us to say

24 -- represent to the Court that that resolves their disclosure

25 statement objection.   So, I think we're -- we're done as far as

1 that.

2         And if the Court wanted to look at it, the revised

3 language with regard to the union's or Gould's (phonetic)

4 issues is on Page 38 and 39 of the blackline, as well as 100 to

5 102 of the blackline.

6         THE COURT:  I've read the "Gould's," in quote, thank

7 you.

8         MR. KRAKAUER:  Okay.  The only outstanding objection

9 at this point is from the bridge agent, and they filed an

10 objection late last night.

11         There is one other issue that we'd like to get

12 addressed.  We've asked the various agents and trustees for the

13 addresses for the mailing list for the solicitation package.

14 And with respect to two parties, we've not been able to get a

15 response, both from the PHONES trustee and from the bridge

16 agent.  For whatever reason, we've had a request outstanding

17 for almost a couple weeks, and not gotten any response.

18         So, we'd like to put a sentence in the order

19 basically saying that -- directing them to give us the

20 addresses promptly.  And then if they don't -- if, for whatever

21 reason, we don't get them -- those addresses, that we could

22 then deliver the package to the trustee -- Wilmington Trust for

23 the PHONES, who are the bridge agent.  And they can then

24 deliver the package to their constituencies, just so we have a

25 means of getting it out.  If that's okay with the Court, we

1  would send over a revised version of the order in the next half

2  hour.  That basically would just put that provision in just so

3  we have a mechanism for delivering the package.

4          THE COURT:  All right.  Well, I'll hear from the

5  trustee and agents and/or agents --

6          MR. KRAKAUER:  Okay.

7          THE COURT:  -- on that issue.  Okay.  How would you

8  like to address the remaining objection to the disclosure

9  statement?

10         MR. KRAKAUER:  I think, Your Honor, I'd like to

11 address it now first, and then presumably the bridge agent and

12 other parties would have an opportunity to speak, and I'll

13 respond to that.

14         It's the debtors' view that the disclosure that we

15 have in the disclosure statement that we filed last night is

16 appropriate.  And that the objections of the bridge agent are

17 really plan or confirmation objections.  They're not --

18         THE COURT:  Well, let me ask this:  Who are the

19 holders of the claims?

20         MR. KRAKAUER:  The holders of the claims are mixed.

21 They -- for the most part, they are not the original holders.

22 They are -- they are funds that acquired the claims sometime

23 after the bankruptcy case was filed.

24         THE COURT:  Okay.  So, we're not talking about Mom

25 and Pop?

1        MR. KRAKAUER:  Oh, no.  As far as I know, these are

2 all -- they were originally all institutional holders, and I

3 believe they still are all institutional holders.  There are no

4 Mom and Pops here at all.

5        THE COURT:  Okay.

6        MR. KRAKAUER:  It's changed from originally -- they

7 were mostly banks and lending parties to now funds that have

8 acquired these in the distress -- when they were distressed.

9        THE COURT:  Okay.

10        MR. KRAKAUER:  Okay.  Let me first give some

11 background, just in terms of our dealings with the bridge over

12 the last couple of weeks in regard to the plan and disclosure

13 statement.  Because they've, in their objection, pointed to the

14 various versions.

15        And we've tried to work with them quite a bit,

16 there's been a lot of back and forth.  The bridge agent

17 objected --

18        THE COURT:  Well, let me ask you this.

19        MR. KRAKAUER:  Right.

20        THE COURT:  What would be the purpose of letting me

21 hear the history?  I have read the papers.  I know there's been

22 a lot of back and forth.

23        If it's to say the debtor has been doing its best to

24 try to accommodate the objection, I'll accept that proposition

25 as true.

1          MR. KRAKAUER:  Okay.  I'll make it shorter then, Your

2   Honor, so we can move on.  That's fine.

3          The first objection is to the specific treatment

4   that's provided for the bridge.  And they're objecting to the

5   treatment in the event that they don't vote for the plan.

6          THE COURT:  Well, in the event that the class

7   rejects --

8          MR. KRAKAUER:  Correct.

9          THE COURT:  -- the plan.

10         MR. KRAKAUER:  That's correct, Your Honor.  And what

11  we've provided:  First, we've been -- we have now, in what

12  we've filed, been clear as to the form of consideration.  And

13  we are going to give cash.

14         So, in terms of what they get on their claim, it is

15  cash.

16         THE COURT:  What happens to an individual claim

17  holder who has, in that class, who's voted for the plan, but

18  the class rejects?

19         MR. KRAKAUER:  Okay.

20         THE COURT:  How does that person get treated?  And

21  how does the person get treated who has rejected the plan?

22         MR. KRAKAUER:  Okay.  What we've done is provide that

23  if the class rejects, you have an option:

24         You can, if you want, settle your claim, take the

25  plan consideration that was offered, get a release, and be done

1  with it.

2          THE COURT:  And the disclosure statement, if I read

3  it correctly, provides what the maximum recovery would be under

4  that scenario, am I correct?

5          MR. KRAKAUER:  Under that scenario, the recovery is

6  fixed.

7          THE COURT:  Okay.

8          MR. KRAKAUER:  Okay?  You get a -- there's a set

9  amount.  There's an amount of cash that's approximately --

10 slightly less than $8 million, if everybody accepted, and it's

11 just distributed pro rata among the bridge holders.

12         THE COURT:  Okay.

13         MR. KRAKAUER:  Okay?  We have --

14         THE COURT:  And if you -- if the class rejects, and

15 the individual claim holder votes to reject, then that claim is

16 treated as a disputed claim.

17         MR. KRAKAUER:  Correct.

18         THE COURT:  And then that scenario gets followed.

19         MR. KRAKAUER:  Correct.

20         THE COURT:  I will tell you from my standpoint, if

21 there is a serious remaining objection to the disclosure

22 statement, that's where it would lie.

23         MR. KRAKAUER:  Okay.  Let me explain what we've done

24 because we --

25         THE COURT:  Well, I've read what you've done.

1            MR. KRAKAUER:  Okay.

2            THE COURT:  Okay?  And you've addressed it actually

3  in three or four different places --

4            MR. KRAKAUER:  Okay.

5            THE COURT:  -- in the revised disclosure statement.

6  But as I read it -- and, you know, these are institutional

7  investors, maybe they're smarter than I am.  But -- and I --

8  and I read it over and over again.  And that, for me, is maybe

9  where the confusion lies.  And I suppose that that class can

10 argue at confirmation that you can't offer that disparate

11 treatment within the class.  That doesn't have to be decided

12 now.

13           MR. KRAKAUER:  Right.

14           THE COURT:  I just -- I will just say the way it's

15 articulated is so cumbersome that I -- you know, I have some

16 sympathy for the argument that it's as yet a little bit

17 unclear.

18           MR. KRAKAUER:  Okay.

19           THE COURT:  I mean I -- and, frankly, I sat there --

20 I don't know how to better say it, but --

21           MR. KRAKAUER:  It's --

22           THE COURT:  -- I think maybe it could be better said.

23           MR. KRAKAUER:  Okay.  Can I take a shot --

24           THE COURT:  And I'm sorry, I keep interrupting.

25           MR. KRAKAUER:  No, no, no --

1            THE COURT:  Yes.

2            MR. KRAKAUER:  That's a fair point.  And could I take

3  a shot at articulating what we meant?  Maybe we could just --

4  so at least we're all clear on that.

5            THE COURT:  Okay?

6            MR. KRAKAUER:  Okay.

7            THE COURT:  Yes.

8            MR. KRAKAUER:  If -- first, if the class accepts

9  there's consideration that's provided to the class, and

10  actually that's a strip of cash equity and some debt, same

11  consideration -- form of consideration that's going to other --

12  the senior lender constituency.  If the class rejects you have

13  a choice, and everybody has a choice.  It's not just those who

14  vote in favor.  You can decide to get the same consideration

15  you would have gotten if the classes had accepted, or you could

16  decide not to.

17            If you decide to get the same consideration as if the

18  class had accepted, you take it, you get your releases, and

19  there's no more litigation with regard to your claim.

20            THE COURT:  Yes, in the class acceptance scenario --

21            MR. KRAKAUER:  Right.

22            THE COURT:  -- that, I think, is well enough set out.

23  That's the easy part, I think.

24            MR. KRAKAUER:  Okay.

25            THE COURT:  It's the class rejection scenario that I

1  think --

2        MR. KRAKAUER:  Okay.  If the class rejects, every

3  person gets the election.  And the only difference is if you

4  wind up not filling out the box, then if you voted in favor,

5  we're going to presume that you wanted the treatment, and we'll

6  give it to you.  And if you voted against or didn't vote, we're

7  going to assume you didn't want the treatment, and we won't

8  give it to you -- the acceptable treatment.  And maybe there's

9  a way we can articulate that slightly better.

10        THE COURT:  Actually maybe you just said it.

11        MR. KRAKAUER:  We could try and revise it this

12  afternoon and get it back in hopefully closer to plain English.

13  But I understand the point.

14        THE COURT:  Yeah, I mean I -- you know -- I don't --

15        MR. KRAKAUER:  Okay.

16        THE COURT:  I am not about to open a debate about --

17        MR. KRAKAUER:  Right.

18        THE COURT:  -- disclosure statements, and whether

19  they should be 10 pages or 150 pages.  This is a long one.

20        MR. KRAKAUER:  Yeah.

21        THE COURT:  But the parties are almost there, so I'm

22  not -- you know, I don't mean to upset that apple cart.

23        MR. KRAKAUER:  Okay.

24        THE COURT:  I'd just like to get to the finish line

25  on this one.

1          MR. KRAKAUER:  Understand.

2          THE COURT:  All right.

3          MR. KRAKAUER:  Okay.  The objection that's been filed

4  is really not to that point, it's to the point of assuming a

5  person doesn't want the settlement treatment, what do they then

6  get?

7          THE COURT:  I know.  And it's running through the

8  scenario of what it means.

9          MR. KRAKAUER:  Right.

10         THE COURT:  And I -- you know, under the

11  circumstances, given all the "what ifs," I don't -- you tell me

12  how you think you could best address that.

13         MR. KRAKAUER:  Well, Your Honor, I think we've

14  addressed it as best we can.  The -- ultimately it's going to

15  be for this Court to decide what's an appropriate treatment.

16  We have -- what we've done is say in the plan, "you get what

17  you're entitled to under 1129(b)."  And it's going to be a

18  legal determination for this Court to ultimately figure out

19  what that means.

20         And to the extent you determine that a specific value

21  is appropriate, we'll pay it in cash if the claim is allowed.

22  And then there's going to be a subsequent proceeding to

23  determine whether these claims are going to be allowed.

24         We've set forth in the disclosure statement what the

25  debtors' view is of how we would -- we think it likely will

1  work.  And we've said take a look at the value of the parent,
2  and you value the parent, and then you look at what are allowed
3  claims against the parent, and you get a share of that value,
4  essentially.

5          And then there -- and we've identified some issues
6  that people might argue about in terms of what the actual value
7  is.  You know, that's how we think it probably plays out.  But,
8  again, we can't say more than that because ultimately this
9  Court may disagree with us, may find something else.  Somebody
10  may argue that 1129(b) provides for something different.  And
11  whatever this Court determines, that's what it will be.

12          And we've estimated what we believe -- what we've
13  indicated is only an estimate of what the recovery range would
14  be under that scenario, and we've said that it could be zero,
15  it could be 4.6 percent of your claim, if it's allowed.  And I
16  think that's about what we can do.  I think that's a fair
17  explanation for people to try to make a decision on, I don't
18  know what else we could do.

19          So, in our view, that's adequate.  And I think to do
20  more would be to presume what this Court would rule, which is
21  inappropriate.

22          And I don't know if you want me to address anything
23  else they've raised.

24          THE COURT:  Well, I will tell you for now -- I mean
25  I'm looking at the objection.  And it seems to me the heart of

1  it is contained in Paragraphs 12, 13, and 14.  Paragraph 12, we

2  just talked about.

3          MR. KRAKAUER: Right.

4          THE COURT:  Paragraph 13 -- and I'm saying this so

5  Mr. Lauria can come up and tell me why I'm wrong.  But that's

6  what confirmation objections are all about, it seems to me.

7  And that would require no further change.

8          And with respect to 14, you know, it's in the bridge

9  lender letter in almost precisely that language.  And I will

10 tell you, putting aside judicial hubris, in that letter, the

11 bridge loan lenders essentially say that despite the fact the

12 Court has approved the disclosure statement, it's inadequate.

13         Now, that's not -- those aren't the words that they

14 use, but that's the essence of it.  And I'll permit that

15 because I understand the parties' position here, and I

16 understand its desire to articulate it in such a certain way so

17 -- but I'm not going to have that added to the disclosure

18 statement.  It's clearly set forth in almost that language in

19 the -- maybe it is the exact language in the proposed letter,

20 and I'm okay with that.

21         And I -- so, unless you see more in the objection

22 than what we've just discussed, I'll hear from the bridge

23 lenders.

24         MR. KRAKAUER:  I'll save my comments for response.

25         THE COURT:  Okay.

1          MR. KRAKAUER:  Thank you, Your Honor.

2          MR. LAURIA:  Good morning, Your Honor.  Tom Lauria

3 with White & Case for Wells Fargo Bank, NA as bridge agent.

4          I'm going to try to streamline my comments based on

5 the Court's comments.  I think that actually the Court

6 understands some of our most important problems, but not all of

7 them.

8          One point I want to clarify as far as who the holders

9 of the debt are, I don't think that we, or anybody right now,

10 knows exactly who holds the debt.  Certainly I've been in

11 contact with a number of holders who are funds and investors,

12 but we have not heard from or been in contact with holders of

13 all of the debt.

14          And so standing here right now, I don't think it's

15 fair to make a representation as to who holds all the debt.

16 There may well be very small funds and investment vehicles that

17 are involved in this debt at this point.  It's basically freely

18 traded.  And so I just wanted to clarify that point.

19          THE COURT:  Well, let me put it this way: While there

20 may be varying degrees of sophistication among the holders,

21 we're not talking about unsophisticated individual holders, are

22 we?

23          MR. LAURIA:  Well, Your Honor, quite frankly, there

24 are retirement -- personal retirement trusts and funds that do

25 trade in these types of instruments.  And I can't represent to

1  the Court that those types of holders aren't involved in this

2  debt.

3          I'm not saying that I know personally that they are,

4  I just -- we just don't know.  We've only heard from a bit more

5  than half of the debt has been vocal and involved in our

6  participation in the case here.  So, I don't know who holds the

7  rest.

8          THE COURT:  Okay.

9          MR. LAURIA:  Your Honor, our first point is really

10 the -- and, you know, just kind of cutting right to where the

11 Court was.  You have a treatment specified in the plan.  You

12 have a description of how that treatment might play out in the

13 disclosure statement that is, quite frankly, inconsistent with

14 the treatment specified in the plan.  And I really want to

15 start with the notion that a treatment can be whatever is

16 required under 1129(b).  That's a new one for me.

17         Ordinarily, putting aside the -- the kind of

18 deathtrap structure here.  Ordinarily, you'll see a treatment

19 of a class in a plan and a reservation of rights to seek to

20 confirm the plan over the objection of that class if they

21 reject with the debtor, in effect, arguing that the treatment

22 satisfies the legal standard, 1129(b).

23         And, in fact, you know, it's interesting.  If you

24 look at the plan on Pages 31 and 32 where -- this is Section

25 3.3.4, which is the bridge loan guarantee claims.  In fact,

1  there is a treatment set forth that after all four paragraphs

2  are read, what it means is that the bridge loan guarantees are

3  going to recover nothing under the plan.  And that they're

4  deemed to have rejected.

5         Since they're deemed to have rejected, that treatment

6  will -- the Court will have to determine satisfies the

7  requirement of 1129(b).  And if it does not, then presumably

8  there's a defect in the plan.

9         But that is a treatment that can then be tested

10 against the legal standard.

11        When you contrast that language with what is now on

12 Pages 26 through 27, and really, I guess, it's on Page 27.  I'm

13 looking at the blackline, Your Honor, by the way.

14        THE COURT:  I am, too.

15        MR. LAURIA:  The treatment there, if we reject, boils

16 down to treatment in cash as may be proposed by the debtors

17 that would satisfy the requirements of Section 1129(b) of the

18 Bankruptcy Code.

19        That's not a treatment.  That's just a statement of

20 the legal standard that will have to be applied to determine if

21 the treatment works.

22        Now, you know, the debtor says, well, the treatment

23 will be whatever the Court determines it will be to satisfy

24 1129(b).  I don't think that is a treatment.  I think that's --

25 they're basically saying it's going to be whatever it turns out

1  to be at the end of the day.  And I don't think that's -- I

2  don't think that clears the hurdle.

3          I think what the debtor is supposed to say is what

4  the treatment will be, and take the position that that

5  treatment will satisfy 1129(b).  And when you look at the

6  disclosure statement discussion of this, which is on Pages 77

7  through 79 of the mark-up that we got yesterday, Your Honor, we

8  agree wholeheartedly with the Court that the description there

9  is very difficult to understand.  I'd like to think I've been

10  doing this for a while, and I haven't been able to come to rest

11  on what those words actually mean.

12          But the reality is -- I think counsel has described

13  it relatively clearly on the record.  And I think I can

14  actually even do better to say it sounds like what their

15  intention is that if you object, you become a disputed -- if

16  the class rejects and you reject, your claim is a disputed

17  claim.

18          If you come into possession of an allowed claim, that

19  claim will get a pro rata share of the distributable value at

20  Tribune.

21          It's about that simple.  And it's disturbing to me

22  that the plan treatment, which is the binding piece of paper

23  here, the disclosure statement is just a description.  As

24  counsel said, it's the debtors' view of how this would probably

25  work out.  That's not binding on them, it's not binding on

1  JPMorgan, it's not binding on the Creditors' Committee, it's

2  not binding on anyone.  It's just the debtors' view of how it

3  would probably work out.

4        The treatment ought to be clear, and it's not that

5  hard to make it clear because they've told us what the

6  intention is.  We're supposed to get, if we get an allowed

7  claim, a pro rata share of the distributable value at Tribune.

8        Now, they're -- you know, big picture:  The

9  disclosure statement ought to say, in my opinion, that there

10 are three things that go into figuring out what that is:

11       There's the enterprise value;

12       There's the allocation of that value to Tribune,

13 that's Number 2.

14       And, Number 3, there is a determination of the size

15 of the claims pool.

16       Once you have those pieces of information, you can

17 figure out what the pro rata share recovery would be.  And I

18 think the debtors try to make a couple of points very -- excuse

19 the word "clumsily," which convert this discussion into gobbily

20 gook.  The debtors try to say, Number 1, if the midpoint

21 distributable -- estimated distributable value of $6.1 billion

22 is utilized, and if that enterprise value is allocated to

23 Tribune as contemplated by the plan, and if the estimated

24 claims at Tribune are as assumed by the debtor, then the

25 recovery of the allowed bridge loan claims, assuming they get

1  allowed, would get 4.6 percent.  And that 4.6 percent is $74

2  million distributed over $1.6 billion of claim amount.  Okay?

3            So, the debtors are trying to say that if you use

4  that math, that's the number you come to.

5            And then the debtors go on to say that we're

6  reserving our right to argue that the enterprise value is a

7  different number, and that it should be allocated in a

8  different way, and that maybe the claims pool should be a

9  different number, and so you could get a different lower

10  number, maybe all the way down to zero.

11            Now, that, I think, starts to become good disclosure.

12  I think if the plan says the allowed claim gets its pro rata

13  share of the distributable value at Tribune, and then the

14  disclosure statement says how the debtor thinks we're going to

15  figure that out.  And the disclosure statement says if we use

16  the numbers we are already using in the plan, here's where you

17  come out.  But we're reserving our right to take a different

18  position on that, and other people have the right to take a

19  different position.

20            Now, what it doesn't say -- and what I think it

21  should say -- is just -- right where it says the debtor

22  reserves its rights, it ought to make it clear that nothing

23  about the plan impairs our rights to take a different position,

24  as well.  For example, that the claims pool should be smaller,

25  or that the enterprise value should be greater, or that the

1    allocation should go more to Tribune, which would produce a

2    percentage recovery greater than 4.6 percent.

3           THE COURT:  But those are confirmation objections,

4    are they not?

5           MR. LAURIA:  Well -- no.  No.  Because either our

6    rights are -- what is not a confirmation objection is are our

7    rights on those issues preserved or not.  The debtors should

8    just say.  If they say our rights are not preserved, I'm with

9    you, Your Honor, I think we have a confirmation issue.

10          But I think the debtor should be required to say do

11   the bridge lenders have the right to take whatever position

12   they want to on these issues, or is there anything about the

13   plan that impairs or restricts that?  Then we can argue at

14   confirmation about what that means.

15          But for disclosure, they ought to say do we have a

16   clean slate or don't we?  They make a point of saying they have

17   a clean slate.  It makes me concerned that when you reserve one

18   side's rights and not the other's, that there maybe is an

19   absence of mutuality.

20          And so I think what we're entitled to is a disclosure

21   by the debtor as to are all of our rights on these issues that

22   will drive the recovery preserved or not?

23          THE COURT:  Okay.  Then what about everybody else's

24   rights?

25          MR. LAURIA: I think they should say -- they should

1  take a position.  At the end of the day, everybody else's

2  recovery has been set.  This is just arguing about what

3  percentage of the $74 million we get or are we entitled to

4  more?

5          And the interesting thing that happens there, if we

6  prove that we're entitled to more, there's a condition built in

7  the plan that has to be waived for the plan to continue to be

8  confirmable.

9          So, in other words, if we're entitled to -- let --

10  it's actually kind of interesting the way the debtors have

11  worked this because they didn't use the number, the $74

12  million; they used the percentage, 4.6, which is interesting to

13  me because let's say the bridge lender claims are allowed in

14  the amount of $10 million.  Okay?  4.6 of $10 million is

15  $460,000, I think.

16          Let's say we do all the math and it says that the

17  recovery is supposed to be 20 percent, okay?  20 percent on $10

18  million is $2 million.  That is a -- the condition to

19  confirmation has now been crossed.  I don't understand why.

20  Because they contemplated $74 million being available as if the

21  whole claim were allowed.

22          So, it seems to me that the right way to do it is

23  they should be saying that if the recovery is more than the 74

24  million, then there's a condition.  I don't know why the debtor

25  would lock the condition at the percentage.  Because as the

1    number goes down, the percentage can go up without increasing

2    the burden on the estate.   It just seems the right way to do

3    it.

4          But the key point, Your Honor, is -- and it's very

5    troubling.   We've been at this for quite a while with the

6    debtor trying to sort through this.   And what we -- all we've

7    gotten is a, I think, meaningless statement in the plan that

8    says our treatment has to comply with 1129(b).   It doesn't say

9    what the treatment is, and the debtor tries to say, well, look

10   at the disclosure statement.

11         But the problem is that's not binding.   The

12   disclosure statement is, as the debtor said, it's our view of

13   how it would probably work.

14         They -- I think they have -- like they did in

15   connection with the treatment of our guarantee claims, I think

16   it's incumbent upon the debtor to specify a treatment which, if

17   the debtor's straight, it's the pro rata share of distributable

18   value to Tribune, put it in the plan.   And then in the

19   discussion in the disclosure statement, say how you think it

20   might work, how it might not work, what other people's views

21   might be.   You don't know what other people's views might be.

22   What the factors are that would impact how that comes out,

23   which I think are fairly easy to identify.   That's a fair

24   treatment, and it's a fair disclosure.

25         But to just say it's 1129(b), and then have a

1  possible way it works out in the disclosure statement really

2  doesn't get us there.

3          And let me just illustrate for a moment.  The debtors

4  seem to think that 1129(b) is a very clear thing.  So clear

5  that my clients will know what that means.

6          But, you know, there are lots of cases written about

7  what 1129(b) means for unsecured creditors who reject the plan.

8          The Code itself isn't even entirely clear.  You know,

9  when you look at 1129(b), there are two options for unsecured

10  creditors, either you have to get value equal to the allowed

11  amount of your claim, that's Choice 1.  Or Choice 2, nobody

12  junior to you can get anything, the Absolute Priority Rule.

13          Now, they're obviously not going down Fork 1.

14  They're not going to provide us property having value equal to

15  the amount of our claim, so we're down Fork 2.

16          Well, Fork 2 doesn't say we're entitled to the pro

17  rata share of the distributable value at Tribune.  1129(b) does

18  not say that.  It says the plan's confirmable as long as nobody

19  junior to you gets anything.

20          Why should we have a plan treatment that basically is

21  subject to legal debate as to what it means when the debtor

22  tells us they have a very clear view of what the treatment is

23  supposed to be?  Which they say is embedded in the gobbily gook

24  in the disclosure statement at Pages 77 through 79.  And the

25  debtors know how to do it the right way.  They know how to

1  describe treatment for a rejecting class, and then preserve

2  their right to argue that that treatment satisfies 1129(b).

3  They've done it with the treatment of our subsidiary guarantee

4  claims.   They don't say that treatment has to satisfy.   They --

5  under the argument of counsel, the treatment there ought to be

6  the same thing because they've deemed us to reject.

7           So, we know we're going to 1129(b) for that.   Why

8  isn't the treatment of the subsidiary guarantee claims

9  treatment that satisfies 1129(b) and we'll tell you what it is

10 later?

11          I think it's easy enough for the debtors to solve

12 this problem.   We're not asking to burden them that they should

13 solve it, and not leave us all trying to guess what's going to

14 happen next.

15          The other point I want to make, Your Honor -- and I

16 guess this is in response to the Court's earlier expression of

17 view that Paragraph 14 is really a confirmation objection.   And

18 I understand the Court's --

19          THE COURT:  No, I said that with respect to 13.

20          MR. LAURIA:  I'm sorry.

21          THE COURT:  That's okay.

22          MR. LAURIA:  Well, this is -- I guess this is the

23 reservation of rights issue.  I just think the debtor should

24 tell us -- we can -- if they say our rights are not reserved,

25 we can argue about whether or not that creates a confirmation

1    objection.  But I think they should just tell us, are they

2    reserved or not?  I'm not telling them to say our rights are

3    reserved.  I think they just should say, are our rights on

4    these issues reserved or not?  And we'll argue about what that

5    means at confirmation, but we ought to know what their position

6    is.

7         Paragraph 14, Your Honor, is -- you know, and it kind

8    of straddles between sounding like a confirmation objection and

9    a disclosure objection, I apologize for that.  We wrote this

10   very quickly last night.

11        I want the Court to understand, and I apologize for

12   the lateness of the filing.  We got the disclosure statement

13   and plan as modified between 3:30 and 4 yesterday afternoon.

14   We, you know, worked as quickly as we could to put together

15   what we hope was a respectable objection and filed it as

16   quickly as possible.  But I did want to apologize for that, and

17   let the Court know the circumstances.

18        The concern that I have here is that much was said on

19   the record at the last hearing on the disclosure statement.

20   That there would be no nonconsensual, nondebtor releases in

21   this plan without people getting to check the box.  That if a

22   creditor was going to release -- grant the nondebtor releases,

23   there was a -- going to be an affirmative opt in to that

24   release.  Not an opt out, but an affirmative opt in.  And the

25   Court, if I understood correctly, seemed to feel very strongly

1  that that was appropriate and required.

2          However, in re-reading the plan and disclosure

3  statement, it becomes apparent to me that there are releases

4  that the bridge lenders are going to be giving to the senior

5  lenders regardless of whether or not they check the box.  The

6  bridge lenders have, under non-bankruptcy law, the right to

7  challenge the enforceability of the subordination provision in

8  the guarantees.  And I will tell the Court that on the basis of

9  our diligence to this point, we go believe there are challenges

10 to that subordination provision, and we intend to assert them

11 and protect them.  The plan very clearly enforces the

12 subordination.

13         Now, I think that creates a confirmation issue.  But

14 separate and apart, I think the debtor has to say in the

15 disclosure statement there are no releases unless you check

16 the box, except for the claims that the bridge lenders have

17 against the senior lenders, who are release parties, with

18 respect to the enforcement of their subordination right under

19 the subordination agreement.  We intend those to go away when

20 the plan be confirmed regardless of whether or not you check a

21 box.

22         Now, there are others.  We also believe that we have

23 the right under 510(c) to seek to equitably subordinate at the

24 subsidiary level the claims of the senior lenders.  In fact,

25 Judge Shannon in Elrod Holding has specifically held that when

33

1 a secured creditor class asserts equitable subordination

2 against another secured creditor class, that usually is -- and

3 that case was sufficiently indigenous to the secured creditor.

4 In other words, it was not an estate claim that the secured

5 creditors had the right to assert equitable subordination,

6 which is the case here.

7          This is an internecine battle between two groups of

8 secured creditors at the subsidiary level.  And we believe that

9 there is a basis to seek equitable subordination of the senior

10 lender guarantee claims at the subsidiaries.  That right is

11 also stripped away by the treatment under the plan without our

12 consent.  In other words, a right that we have against a

13 nondebtor, the senior lenders, is being taken away by the plan.

14          Now, I do believe that this is going to create a very

15 serious confirmation issue for these debtors.  Taking away our

16 right to seek enforcement of the subordination agreement or

17 challenge enforcement of the subordination agreement, taking

18 away our right under these circumstances under 510(c).

19          But put that aside, the debtor needs to make the

20 disclosure that there are certain nondebtor releases that are

21 being imposed by the plan non-consensually.  In other words, it

22 doesn't matter if we check the box or don't check the box.

23 Those claims are going to be released by confirmation of the

24 plan.

25          And there's another category, Your Honor, which we

1  have attempted to identify, which is our state law remedies

2  that would be available to pursue our deficiency against the

3  senior lenders once we get our recovery, if anything, under the

4  plan.   State law gives us right.   Those rights, apparently, go

5  away.

6          Now, I've asked the debtor to try to tell us what's

7  happening here.  Are -- is this a nondebtor release or not?

8  And the debtor says, "Well, it's a legal opinion, I can't tell

9  you.:

10          I don't think they can slide like that.   I think when

11  read the language of the plan, it appears that they are

12  enforcing the subordination agreement.   And that confirmation

13  gives a distribution in respect to that.

14          And so I think it's incumbent upon them to say, yeah,

15  you've got claims against the senior lenders that are going to

16  be released by confirmation, and we'll take that up at

17  confirmation.   But it's -- they're supposed to say, they can't

18  just slide along.

19          In this regard, in this instance, this is a little

20  bit -- just an illustrative point.   On Page 36 of the plan, at

21  4.6.3, if you look at the interlineated language, the debtors

22  made a point of saying that if we reject the plan, we don't get

23  the benefit of the releases.   But they didn't say if we reject

24  the plan, we aren't giving any releases either.

25          Now, it seems to me that, consistent with the Court's

1  views as expressed last week, that the debtors should be

2  required to say that if we reject the plan, and we don't check

3  the box, we're neither getting nor giving any releases.  It's

4  simple.  It's clear.  It's easy to say.  It doesn't take a lot

5  of words.

6          But they don't.  They went to the trouble to put in

7  extra words to say, "We don't get the benefit of the releases."

8   But we're giving and getting if we accept.  If we reject, we

9  shouldn't be doing either.  Again, it's just one side of

10  disclosure which raises the question, "Well, what do they

11  intend?"

12          Well, when you go back and you read the treatment, it

13  seems like actually there are some releases but the debtor

14  doesn't want to say.

15          So, Your Honor, we think it would be very easy for

16  them to put in a treatment that they say is what they intend in

17  the plan, and then to describe how it works in the disclosure

18  statement, recognizing the plan is the binding document.

19          We think that they ought to come clean on what is

20  being released non-consensually on our behalf under the plan.

21          And I guess, Your Honor, if it turns out that the

22  debtor does intend to release certain of our rights and

23  remedies against the senior lenders under the plan, we're going

24  to have to come back here soon and take up the issue of how

25  we're going to litigate that between here and confirmation.

1  Because I think my clients are entitled to have a plenary trial

2  on those issues, not just a summary hearing, which I think is

3  what the debtors envision.  I think the debtors think that, you

4  know, part of the morass of confirmation is going to include

5  whatever arguments we have about our defenses to the

6  enforcement of the subordination agreement.  And I think we're

7  entitled to our day in court on that.

8          THE COURT:  Well, I've had that situation before.

9  Exide was probably the case where I had the most of it.  And we

10 found a way to manage everybody getting a day in court without

11 a plenary trial, although I guess some might be of the view

12 that it came close.  But that's not an issue for today.

13         MR. LAURIA:  All right.

14         THE COURT:  Okay.  Anything further, Mr. Lauria?

15         MR. LAURIA:  That's it, Your Honor.  Thank you very

16 much.

17         THE COURT:  Okay.  Hold your peace for a moment.  Let

18 me as if anyone else wishes to be heard in connection with the

19 amended disclosure statement?  But I only want to hear the

20 following:

21         One, if your issue hasn't been resolved, despite the

22 fact the debtor says that it has been.

23         What I don't need further comment on is comments from

24 others on the issue that I'll characterize as being now between

25 the bridge loan lenders and the debtor.

1          MR. JOHNSTON:  Your Honor, this is Jim Johnston of

2   Hennigan, Bennett & Dorman.  May I be heard?

3          THE COURT:  Go ahead.

4          MR. JOHNSTON:  Thank you.  Very briefly.  We

5   obviously disagree with a lot of what Mr. Lauria said, but

6   we'll --

7          THE COURT:  I'm sorry.  Did you hear what I just

8   said, Counsel?

9          MR. JOHNSTON:  Yes.  I'm sorry, Your Honor.

10          THE COURT:  I do not want to hear --

11          MR. JOHNSTON:  I was not intending to address it.

12          A separate issue.  We learned from the agenda

13   yesterday that the Creditors' Committee planned on including in

14   the solicitation packages a letter to creditors supporting the

15   plan.  I had the debtors send me a copy of that letter, and I

16   see that it's largely another advertisement for the proposed

17   settlement.

18          And this letter is apparently in addition to the

19   three-page party submission that the Committee also plans to

20   include with the submissions of my clients and Mr. Lauria, and

21   everybody else.

22          Your Honor, we have two problems with this:

23          First, you'll recall that the debtors and the

24   Committee made a big deal of limiting the parties' submissions

25   to three pages, and only three pages.  Ours was originally

1  eight, we worked really hard to cut it down to three pages.

2  And there was a lot more that we could have said, and didn't

3  because of page limitation.

4        By submitting the letter and the position statement,

5  the Committee really gets two bites at the apple and 150

6  percent more space.  We don't think that's appropriate.

7        Second, a Committee letter separated out from the

8  parties' position statements gives the Committee's position

9  prominence over all of the other submission.  And we'd submit

10 that the Committee can't have it both ways.  It's either a

11 partisan supporting the settlement through a party submission,

12 or it's its usual role, a fiduciary to all unsecured creditors,

13 including my client, advising the creditor constituency

14 generally with respect to its views on the plan.

15       Under the circumstances of this case, choosing the

16 advocate for the proposed settlement, it shouldn't also get the

17 ability to have a separate piece of paper included in the

18 solicitation packages directed to creditors.  So, that's our

19 issue there, Your Honor.

20       I also heard Mr. Krakauer this morning make the

21 request for the holders' list and information from the various

22 trustees and agents.  We actually have an outstanding discovery

23 request to JPMorgan for the credit agreement, holder list and

24 addresses.  And if Your Honor is going to be ordering provision

25 of that information, we would like to be included.

1          THE COURT:  Anyone else care to be heart?

2          MR. SIEGEL:  Yes, Your Honor.  This is Martin Siegel

3   from Brown Rudnick on behalf of Wilmington Trust.

4          Our issue relates to the issue Mr. Krakauer raised

5   this morning regarding directing Wilmington Trust to either

6   distribute the solicitation packages or give them the list.

7          We have the same issue that Mr. Lauria raised.  The

8   reason we didn't respond to the request is we're not

9   necessarily sure who all of the PHONES holders are today.

10         And you'll recall, Your Honor, that we objected to

11  the disclosure statement, at least because it didn't adequately

12  deal with the fact that even though Wilmington Trust is an

13  indenture trustee, and entitled to have its fees paid by the --

14  or reimbursed by the debtors, they've ignored all of those

15  requests.  And the issue for Wilmington Trust is we don't

16  believe that they have a right not to be paying those fees in

17  Wilmington Trust because of the separate issue on behalf of the

18  PHONES treatment to not deal with legitimate requests by an

19  indenture trustee who is entitled under the indenture to have

20  its expenses for that kind of thing paid.

21         So, you know, we're reluctant to give them a list

22  that we're not sure is accurate, and we're reluctant -- and

23  Wilmington Trust doesn't believe that it should be required to

24  pay out of its own pocket to do the solicitation.  So, I

25  haven't seen his new order yet, by we just wanted to make sure

1  that the Court was aware of our concerns, and we think that

2  they have no right not to resolve those issue with Wilmington

3  Trust, and they just continue to ignore it and now they want to

4  put an order in front of Your Honor that we think is

5  inappropriate.

6          THE COURT:  Thank you.  Does anyone else wish to be

7  heard?

8          MR. SCHAIBLE:  Your Honor, Damian Schaible of Davis

9  Polk representing JPMorgan.

10          I have no need to be heard by this Court except with

11  respect to the second of Hennigan Bennett's request relating to

12  JPMorgan somehow being ordered by the Court in a disclosure

13  statement order to provide to a law firm representing certain

14  creditors, certain of the lenders information from the debtors

15  -- from the agents --

16          THE COURT:  There are --

17          MR. SCHAIBLE:  -- register --

18          THE COURT:  There are no discovery requests properly

19  before me today.  My rulings today will concern only that which

20  is before me, which are a request to approve the disclosure

21  statement and a request to approve plan solicitation

22  procedures.

23          Anyone else wish to be heard?

24              (No audible response heard)

25          THE COURT:  Okay.  Let me just ask the Committee to

1   address briefly the two bites at the apple argument.

2         MR. DEUTSCH:  Your Honor, excuse me.  Doug Deutsch

3   from Chadbourne and Park on behalf of the Official Committee of

4   Unsecured Creditors.  Sorry about my voice.

5         With respect to two bites at the apple, Your Honor,

6   first of all, this was not something that just came up in the

7   last few days.  The letter was attached and included with the

8   submissions on the -- prior to the first disclosure statement

9   hearing.  And it was actually -- so, it was actually an agenda

10  item included thereon.

11        This is not any change over the last week or the last

12  two weeks, it's been -- we've taken a consistent position, and

13  that is that the Committee's generally entitled to include a

14  letter in with the materials that go to the creditors.

15        Secondly, Your Honor, we've actually  referenced in

16  other materials we've filed, as I believe the debtors have,

17  that among other things, we referenced the letter in our

18  submission.  The submissions were filed on, I believe, Monday.

19  Nobody's come back and objected to it, you know, in a timely

20  manner as was required pursuant to your procedures.

21        We believe that the letter which does not talk about

22  the LBO and the ESOP in any detail, but generally gives the

23  Committee's position with respect to the plan that is -- to

24  support the plan.  We have reviewed all the details and sets

25  forth who the Committee is is fair and appropriate to include.

1          With respect to the additional submission that was

2    brought on later, it does not.  That addressed specifically the

3    LBO issues, issues that we don't address in any detail in the

4    letter.

5          THE COURT:  Well, show me the two items.  Tell me

6    where they are in my binder.  The letters, I think, are with

7    the solicitation part.

8          MR. DEUTSCH:  We're checking, Your Honor, but it

9    should be Exhibit H to the solicitation.

10                        (Pause)

11         THE COURT:  Bear with me while I get there.

12                        (Pause)

13         THE COURT:  Hold on, I'll get there eventually.

14                        (Pause)

15         MR. DEUTSCH:  Your Honor, we have the --

16         THE COURT:  Yes, it's -- it's -- I'm looking in the

17   blackline, which I guess it's not there.  It's in the other

18   one, I think.  But if you have separate copies, you can hand

19   them up.

20                        (Pause)

21         MR. DEUTSCH:  Your Honor, I have the statement with

22   respect to the submission -- the Committee's submission in my

23   hand.  I don't -- do you have the letter?

24         THE COURT:  I can't find it.  So, bring up whatever

25   you have.

1      MR. JOHNSTON:  Your Honor, Jim Johnston again.  I'd

2  be happy to read the passages to you that we find objectionable

3  from the Committee's letter.

4      THE COURT:  That's all right.  Let me get it in front

5  of me.

6      MR. JOHNSTON:  Okay.

7                  (Pause)

8      MR. DEUTSCH:  Your Honor, may I approach?

9      THE COURT:  You may.

10                  (Pause)

11      THE COURT:  Okay.  Go ahead.

12      MR. JOHNSTON:  Was that directed to me, Your Honor?

13      THE COURT:  Yes, Mr. Johnston.

14      MR. JOHNSTON:  Thank you.  The -- in the second

15  paragraph, the second half, there is a specific description of

16  the LBO related causes of action.  And then it says, "The

17  settlement embodied in the plan, avoid uncertain expensive

18  litigation, and pave the way to the resolution of these cases

19  and distributions to parties in interest.  Based on the

20  Creditors' Committee's extensive analysis of various possible

21  outcomes, the Committee believes that the settlements provide

22  unsecured creditors with the means to maximize recovery."

23      And then on the second page, there's kind of a

24  reiteration of that in the first full paragraph where they

25  discuss that "A substantial majority of the value allocated

1  under the plan to holders of claims is attributable to the

2  settlement of the LBO related causes of action.  As such, the

3  Creditors' Committee believes the settlement of the LBO related

4  causes of action provides a fair and appropriate treatment to

5  holders of unsecured claims against Tribune Company and

6  subsidiaries."

7         That is a distillation of what they say in their much

8  longer position statement.

9         THE COURT:  Well, I don't think that's a -- there

10  should be one document.

11        I'm sorry that the issue has only come this late, but

12  it's a fair comment.  So, it's got to be one.

13        MR. DEUTSCH:  Okay, Your Honor.  Well --

14        THE COURT:  Make whatever amendments you need to

15  make.

16        MR. DEUTSCH:  Yup.

17        THE COURT:  Does anyone else wish to be heard?

18              (No audible response heard)

19        THE COURT:  Okay.  I have another hearing scheduled

20  for 11 o'clock.  So, I'm going to take a break now.  But I'd

21  like to see Mr. Lauria and Mr. Krakauer at sidebar.  On the

22  record.

23   (Whereupon, a sidebar conference is held.  This side bar is

24        transcribed and under separate cover).

25        THE COURT:  I have another matter scheduled for 11

1  o'clock.  I'm going to recess now and we will reconvene,

2  assuming I'm finished my 11 o'clock hearing at noon.  Court

3  will stand in recess.

4             (Recess 11:03 A.M./Reconvene 12:14 P.M.)

5             THE COURT:  Good afternoon.  Mr. Krakauer?

6             MR. KRAKAUER:  Your Honor, we did spend some time

7  talking outside, not just with the bridge agent, but also with

8  our other constituencies, the Creditors' Committee,

9  noteholders, senior lenders, et cetera.

10             Unfortunately, with respect to -- I thought we made

11  some progress.  But with respect to reaching an agreement with

12  the bridge lenders, I do not think we have an agreement.  But

13  let me tell you what I propose to do on this:

14             First, we would modify the plan language with respect

15  to the treatment to the bridge.  And what it would say, in

16  essence, is that in -- is that they -- if there is a cram-down,

17  and they don't make the election to accept the settlement, the

18  individual holder, then they're treated as a disputed claim

19  until and unless their claim is determined to be an allowed

20  claim, which is not subject to setoff, avoidance, subordination

21  defenses, and such.

22             And in that event, they would get, to the extent they

23  have an allowed claim, a pro rata share taking into account

24  other claims against the Tribune, Tribune being the parent, of

25  the distributable value of Tribune as determined by the Court

1 at confirmation.

2        And the only caveat to that would be that unless this

3 Court determines at confirmation that some other treatment is

4 appropriate under the requirements of 1129(b), in which case

5 the other treatment would apply, whether it's higher or lower,

6 and that just leaves it open so that if we come to

7 confirmation, and you determine that this doesn't satisfy

8 1129(b), or somebody wants to argue that, and there is -- you

9 find out something else is appropriate, you still get the plan

10 confirmed and go ahead.

11        And there is a condition precedent to the effective

12 date which if you determine that an amount above a certain cash

13 level is appropriate, then we'd have to get that -- then we'd

14 have to waive that.  But that becomes a waiver issue, and we

15 either waive it or don't waive it.

16        So, we think that that is the proper approach.  It

17 does say what it is we're going to propose at confirmation.

18 And we would make corresponding changes in the disclosure

19 statement to take account of that.

20        Process wise, since we don't have an agreement with

21 Mr. Lauria on this, what I would suggest is we just send in the

22 language, we'll try and do that for both the plan and

23 disclosure statement as promptly as possible, we'll have to get

24 it in later today.  He could respond in writing if he wants on

25 Monday, and then if the Court feels -- doesn't feel the need

1 for another hearing, you could just rule on it.  If you do, you

2 could call us up or tell us to get back on the phone.  That's

3 my suggestion, at least.

4        THE COURT:  Okay.  Mr. Lauria?

5        MR. LAURIA:  Thank you, Your Honor.

6        Just to help the Court understand a little bit about

7 how this process is working and how difficult it is, my

8 colleagues and I actually sat in a conference room by ourselves

9 for 45 minutes.  The debtor came in with language that it had

10 negotiated with the other constituencies, I don't know which of

11 the other constituencies.  And refused to accept any comments,

12 or suggestions, or changes that we had.  And, quite frankly,

13 didn't even want to explain the significance of some of the

14 ways that this treatment deviates from the treatment that is

15 currently provided in the plan.

16        For example, the plan already has a concept of an

17 allowed -- a disputed claim and an allowed claim.

18        THE COURT:  I don't want to hear details at this

19 point.

20        MR. LAURIA:  All right.  All right.

21        THE COURT:  In terms of process, I'm prepared to

22 accept Mr. Krakauer's recommendation.

23        I was more interested in hearing your response about

24 the process that he proposes.

25        MR. LAURIA:  Your Honor, I presume that he didn't

1  want us to file a response if we have one on Monday, that he

2  meant Tuesday.  And --

3         THE COURT:  Let's put it this way, I won't read it

4  til Tuesday anyway.

5         MR. LAURIA:  All right.  So, Your Honor, we -- I

6  guess if the debtor wants to provide us with revisions to the

7  plan and disclosure statement, we will review them.  I guess

8  the Court should set a time for them to provide that, and then

9  a time for us to file the reply.

10         I would only ask that we get some time on Tuesday in

11  business hours to finalize our reply, if we have one, so that

12  it's not due first thing Tuesday morning.

13         THE COURT:  Understood.  Mr. Krakauer?

14         MR. KRAKAUER:  Timing wise, Your Honor, why don't we

15  do this, just so -- I know people have -- are in transit,

16  including myself, and things like that.  If you'll let us get

17  it on file sometime --

18         (Attorneys engaged in off-the-record colloquy)

19         MR. KRAKAUER:  We could either file it tomorrow or we

20  could file it -- let's say -- I'm trying not to disturb

21  peoples' weekends.  Why don't we get it on file by 10 o'clock

22  on Tuesday morning?

23         THE COURT:  Okay.

24         MR. KRAKAUER:  Okay?

25         THE COURT:  And then you want til 10 o'clock the

1  following day to respond, how's that?

2          MR. LAURIA:  That'd be fine.

3          THE COURT:  Okay.

4          MR. KRAKAUER:  Fine.

5          THE COURT:  Bear with me.

6          MR. KRAKAUER:  And all we'll file, Your Honor, will

7  be the changed pages.

8          THE COURT:  Yes, that's what I'd -- all I'd like to

9  see is blacklines of only those provisions, and limited to

10 those provisions we've talked about today.

11         MR. KRAKAUER:  Yup.

12         THE COURT:  And responses limited the same way.

13                     (Pause)

14         THE COURT:  All right.  I'm not going to set another

15 day and time now.  What I'll do is after I receive those -- and

16 make sure I get chambers copies delivered timely.  I'll reach

17 out to the parties, probably set a conference telephone call

18 for sometime later next week, or I'll put it this way, as soon

19 as I'm prepared to address the parties.

20         Now, let's talk about how that impacts -- oh, I'm

21 sorry.  Yes -- and is that it on disclosure?  I think --

22         MR. KRAKAUER:  Can I just raise one other point, Your

23 Honor, just on the Creditors' Committee's letter?  Since it is

24 typical for the Creditors' Committee to have a letter, I would

25 ask that you give them slightly more than three pages to get

1  their letter in one submission, maybe four or five.  That's

2  just my view.

3        THE COURT:  How much do you think you need?

4        MR. DEUTSCH:  Your Honor, Doug Deutsch on behalf of

5  the Committee.

6        Four pages should be adequate, Your Honor.

7        THE COURT:  That's fine.

8        MR. DEUTSCH:  Okay.  Thank you.

9        THE COURT:  Okay.  Shall we switch over to

10 solicitation then, if we're finished with disclosure?

11       MR. KRAKAUER:  Yes.

12       THE COURT:  Okay.

13       MR. KRAKAUER:  I do think we need to get disclosure

14 wrapped up next week to be on track, though.

15       THE COURT:  I'm --

16       MR. KRAKAUER:  I understand.

17       THE COURT:  I had hoped we could have wrapped it up

18 today.

19       MR. KRAKAUER:  Understand.

20       THE COURT:  All right.  But let's talk about a couple

21 of things on disclosure.

22       First, let's address the issue with respect to the

23 PHONES and the bridge lenders, the issues that the debtor has

24 raised with respect to addresses.  I'm prepared to order that

25 whatever addresses are available be made available to the

1  debtors.

2       I'd be prepared to order the alternative relief that

3  the debtor requested provided that the agents and/or indenture

4  trustee would get an administrative expense claim for the cost

5  of making such service.

6       MR. KRAKAUER:  Your Honor, I'm fine with that.  We

7  don't have a -- I, frankly, didn't know that was even an issue.

8  But the costs -- mailing costs and administrative costs of

9  sending this out, it was something that we can compensate them

10 for.

11      THE COURT:  Okay.  Now, I wanted to talk about --

12 well, I wanted to talk about at least one of the dates in the

13 proposed schedule for solicitation.

14      The debtors have an omnibus date now scheduled for

15 Tuesday, July 13th.  And the 3018 hearing date has been

16 triggered to that.

17      But I will not be sitting on the 13th, but attending

18 a Circuit -- well, there's a government acronym for it, but

19 it's an emergency planning in case Hurricane Katrina-like

20 things happen.  We have plans to keep going, notwithstanding

21 that.

22      But I will be sitting the following day.  So, I would

23 be willing to fix that hearing date, subject to what we're

24 about to discuss, for say 1:30 on July 13th.

25      Now, that having been said, first I wanted to ask,

52

1  other than 3018 hearings, what else had the debtor contemplated

2  scheduling for that day and time, and how much do they

3  anticipate -- or what do they anticipate in the way of such

4  requests, if any?

5          MR. KRAKAUER:  Your Honor, in terms of things that we

6  actually have scheduled, it's not much.  Maybe some adjourned

7  claims that were up.  And the only other thing I could think of

8  is it would be natural later if there turned out to be any

9  discovery disputes in connection with the plan confirmation

10 that somebody might want to use it for that.

11         THE COURT:  Well, it's my intention to schedule a

12 hearing on confirmation status on that day and time anyway.

13         MR. KRAKAUER:  Okay.

14         THE COURT:  So, if you think I should enter an order,

15 prepare one for me and I'll fix that.

16         The other thing I though it would do is, assuming for

17 the moment that the examiner is able to meet his deadline with

18 respect to the filing of a report, I would set a status hearing

19 in connection with the examiner's report, as well.

20         Now, I tell you I do that not to invite filings or

21 discussions, but I will be out of the office -- put it this

22 way.  My last day in the office is going to be July 15th.  I

23 will not be returning to the office until July 28th.

24         So, the purpose, in part, from my standpoint, was to

25 be able to address what was simmering at that point because

1  given the posture of the case and how it's developed, it would

2  not be my intention -- well, let me take a step back.

3         When a judge is absent, and an emergency matter comes

4  in, it's handled by a duty judge under our highly confidential

5  and super secret duty judge assignment plan.  It would not be

6  my intention to refer -- and the judge who is absent is first

7  contacted and given the choice of what the judge wants to do or

8  referring it to the duty judge.  It would not be my intention

9  to refer anything in connection with this case to a duty judge.

10  I'd like to keep my friends that I have.

11                         (Laughter)

12         THE COURT:  So, I tell you this for your planning

13  purposes in terms of my schedule.  I otherwise don't feel

14  compelled to tell people when I'm taking my summer vacation,

15  but that would be it.

16         Okay.  So, that's why those two status hearings.  Is

17  there anything else at this point of debate or controversy to

18  be discussed in connection with solicitation?

19                    (No audible response heard)

20         THE COURT:  A welcomed silence.  Okay.  Then what

21  I'll do is await the filings on those limited issues and

22  sometime -- it will surely be next week, and I'll get to you as

23  soon as I can.  We'll set up a conference telephone call, at

24  which all can join if they wish, to come to a conclusion.

25         Are there any questions?

1          MR. KRAKAUER:  No, Your Honor.

2          THE COURT:  Is there anything further for today?

3          MR. KRAKAUER:  Not on my account.

4          THE COURT:  All right.  Good holiday everyone.  That

5   concludes this hearing.  Court will stand adjourned.

6          MR. KRAKAUER:  Oh, Your Honor, I did have one other

7   thing.

8          THE COURT:  Back on the record.

9          MR. KRAKAUER:  My apologies.  You had asked us at the

10  last hearing about court dates.

11         THE COURT:  But you wanted to stay with the presently

12  scheduled confirmation date.

13         MR. KRAKAUER:  Yes.

14         THE COURT:  I had assumed you had because the

15  proposed order still has that date.

16         MR. KRAKAUER:  Yes.  And I -- the only thing I would

17  ask that the Court consider -- ask that the Court consider is

18  if it turns out that for whatever reason, since we do have a

19  number of parties which are talking about putting on, quote,

20  "trials on the merits" and such in terms of projections, if

21  things don't get done the week of the 16th, it would be helpful

22  to reserve at least some of the time the week of the 30th to

23  catch any spillover so we'd make sure we get this completely

24  done.

25         THE COURT:  Well, I don't know that I have the luxury

1  to do that.  I did -- I have thought about what would happen if

2  we didn't finish a week and I think what I mentioned to you was

3  that I likely would have no more time in August to devote to

4  that.  And I don't know that I can consume two weeks with

5  Tribune in August.

6       My present thinking is we'd be in September/October

7  before we finish.  Now, I know that's not welcomed news, but

8  I'll give further consideration to it.

9       MR. KRAKAUER:  Okay.  And I wasn't suggesting we get

10  the whole week of August 30th, just some time in case we needed

11  some to finish up or --

12       THE COURT:  I understand.

13       MR. KRAKAUER:  Okay.  Thank you, Your Honor.

14       THE COURT:  Okay.  Thank you.

15     (Whereupon, at 12:31 P.M., the hearing was adjourned.)

16

17                    CERTIFICATE

18    I certify that the foregoing is a correct transcript from

19  the electronic sound recording of the proceedings in the

20  above-entitled matter.

21

22

23   /s/ Karen Hartmann    AAERT CET**D0475 Date:  May 29, 2010

24  TRANSCRIPTS PLUS, INC.

25

**$**

**$1.6-** 25:2
**$10-** 27:14,17
**$2-** 27:18
**$460,000-** 27:15
**$6.1-** 24:21
**$74-** 25:1 27:3, 11,20
**$8-** 13:10

**&**

**&-** 20:3 37:2

**/**

**/S/-** 55:23

**1**

**1-** 24:20 29:11,13
**10-** 16:19 48:21, 25
**100-** 9:4
**102-** 9:5
**11-** 44:20,25 45:2
**1129B-** 17:17 18:10 21:16,22 22:7,17,24 23:5 28:8,25 29:4,7,9, 17 30:2,7,9 46:4, 8
**11:03-** 45:4
**12-** 19:1
**12:14-** 45:4
**12:31-** 55:15
**13-** 19:1,4 30:19
**13TH-** 51:15,17,24
**14-** 19:1,8 30:17 31:7
**150-** 16:19 38:5
**15TH-** 52:22
**16TH-** 54:21
**1:30-** 51:24

**2**

**2-** 24:13 29:11, 15,16
**20-** 27:17
**2010-** 55:23
**26-** 22:12
**27-** 22:12
**28TH-** 52:23
**29-** 55:23

**3**

**3-** 24:14
**3.3.4-** 21:25

**3018-** 51:15 52:1
**30TH-** 54:22 55:10
**31-** 21:24
**32-** 21:24
**36-** 34:20
**38-** 9:4
**39-** 9:4
**3:30-** 31:13

**4**

**4-** 31:13
**4.6-** 18:15 25:1 26:2 27:12,14
**4.6.3-** 34:21
**45-** 47:9

**5**

**510C-** 32:23 33:18

**7**

**74-** 27:23
**77-** 23:6 29:24
**79-** 23:7 29:24

**A**

**ABILITY-** 38:17
**ABLE-** 9:14 23:10 52:17,25
**ABOVE-** 46:12
**ABSENCE-** 26:19
**ABSENT-** 53:3,6
**ABSOLUTE-** 29:12
**ACCEPT-** 11:24 35:8 45:17 47:11, 22
**ACCEPTABLE-** 16:8
**ACCEPTANCE-** 15:20
**ACCEPTED-** 13:10 15:15,18
**ACCEPTS-** 15:8
**ACCOMMODATE-** 11:24
**ACCOUNT-** 45:23 46:19 54:3
**ACCURATE-** 39:22
**ACQUIRED-** 10:22 11:8
**ACRONYM-** 51:18
**ACTION-** 43:16 44:2,4
**ACTUAL-** 18:6
**ADDED-** 19:17
**ADDITION-** 37:18
**ADDITIONAL-** 42:1
**ADDRESS-** 10:8,11 17:12 18:22

37:11 41:1 42:3 49:19 50:22 52:25
**ADDRESSED-** 9:12 14:2 17:14 42:2
**ADDRESSES-** 9:13, 20,21 38:24 50:24,25
**ADEQUATE-** 18:19 50:6
**ADEQUATELY-** 39:11
**ADJOURNED-** 52:6 54:5 55:15
**ADMINISTRATIVE-** 51:4,8
**ADVERTISEMENT-** 37:16
**ADVISING-** 38:13
**ADVOCATE-** 38:16
**AFTERNOON-** 8:22 16:12 31:13 45:5
**AGAINST-** 16:6 18:3 22:10 32:17 33:2,12 34:2,15 35:23 44:5 45:24
**AGENDA-** 37:12 41:9
**AGENT-** 9:9,16,23 10:11,16 11:16 20:3 45:7
**AGENTS-** 9:12 10:5 38:22 40:15 51:3
**AGREE-** 8:8 23:8
**AGREEMENT-** 32:19 33:16,17 34:12 36:6 38:23 45:11, 12 46:20
**AHEAD-** 37:3 43:11 46:10
**ALLOCATED-** 24:22 25:7 43:25
**ALLOCATION-** 24:12 26:1
**ALLOWED-** 17:21, 23 18:2,15 23:18 24:6,25 25:1,12 27:13,21 29:10 45:19,23 47:17
**ALTERNATIVE-** 51:2
**AM/RECONVENE-** 45:4
**AMENDED-** 36:19
**AMENDMENTS-** 44:14
**AMONG-** 13:11 20:20 41:17
**AMOUNT-** 13:9

25:2 27:14 29:11, 15 46:12
**ANALYSIS-** 43:20
**AND/OR-** 10:5 51:3
**ANTICIPATE-** 52:3
**ANYWAY-** 48:4 52:12
**APOLOGIES-** 54:9
**APOLOGIZE-** 31:9, 11,16
**APPARENT-** 32:3
**APPARENTLY-** 34:4 37:18
**APPEARS-** 34:11
**APPLE-** 16:22 38:5 41:1,5
**APPLIED-** 22:20
**APPLY-** 46:5
**APPROACH-** 43:8 46:16
**APPROPRIATE-** 10:16 17:15,21 32:1 38:6 41:25 44:4 46:4,9,13
**APPROVE-** 40:20,21
**APPROVED-** 19:12
**APPROXIMATELY-** 13:9
**AREN'T-** 19:13 21:1 34:24
**ARGUE-** 14:10 18:6,10 25:6 26:13 30:2,25 31:4 46:8
**ARGUING-** 21:21 27:2
**ARGUMENT-** 14:16 30:5 41:1
**ARGUMENTS-** 36:5
**ARTICULATE-** 16:9 19:16
**ARTICULATED-** 14:15
**ARTICULATING-** 15:3
**ASSERT-** 32:10 33:5
**ASSERTS-** 33:1
**ASSIGNMENT-** 53:5
**ASSUME-** 16:7
**ASSUMED-** 24:24 54:14
**ASSUMING-** 17:4 24:25 45:2 52:16
**ATTACHED-** 8:14

ATTEMPTED- 34:1
ATTENDING- 51:17
ATTORNEYS- 48:18
ATTRIBUTABLE-
44:1
AUGUST- 55:3,5,10
AUTHORIZED- 8:23
AVAILABLE- 27:20
34:2 50:25
AVOID- 43:17
AVOIDANCE- 45:20
AWAIT- 53:21
AWARE- 40:1

**B**

BACK- 11:16,22
16:12 35:12,24
41:19 47:2 53:2
54:8
BACKGROUND- 11:11
BANK- 20:3
BANKRUPTCY-
10:23 22:18
BANKS- 11:7
BAR- 44:23
BASED- 20:4 43:19
BASIS- 32:8 33:9
BATTLE- 33:7
BEAR- 42:11 49:5
BECOME- 23:15
25:11
BECOMES- 32:3
46:14
BELIEVES- 43:21
44:3
BENEFIT- 34:23
35:7
BENNETT- 37:2
BENNETT'S- 40:11
BETWEEN- 31:8,13
33:7 35:25 36:24
BIG- 24:8 37:24
BILLION- 24:21
25:2
BINDER- 42:6
BINDING- 23:22,
25 24:1,2 28:11
35:18
BIT- 11:15 14:16
21:4 34:20 47:6
BITES- 38:5 41:1,
5
BLACKLINE- 9:4,5
22:13 42:17
BLACKLINES- 49:9

BOTH- 9:15 38:10
46:22
BOX- 16:4 31:21
32:5,16,21 33:22
35:3
BREAK- 44:20
BRIDGE- 8:13 9:9,
15,23 10:11,16
11:11,16 12:4
13:11 19:8,11,22
20:3 21:25 22:2
24:25 26:11
27:13 32:4,6,16
36:25 45:7,12,15
50:23
BROUGHT- 42:2
BROWN- 39:3
BRYAN- 8:3
BUILT- 27:6
BURDEN- 28:2
30:12
BUSINESS- 48:11

**C**

CALL- 47:2 49:17
53:23
CAN- 9:23 12:2,
24 14:9,23 15:14
16:9 17:14 18:16
19:5 21:15 22:9
23:13 24:16
26:13 28:1 29:12
30:24,25 34:10
42:18 49:22 51:9
53:23,24 55:4
CAN'T- 14:10
18:8 20:25 34:8,
17 38:10 42:24
CARE- 39:1
CART- 16:22
CASE- 10:23 20:3
21:6 33:3,6 36:9
38:15 46:4 51:19
53:1,9 55:10
CASES- 29:6 43:18
CASH- 12:13,15
13:9 15:10 17:21
22:16 46:12
CATCH- 54:23
CATEGORY- 33:25
CAUSES- 43:16
44:2,4
CAVEAT- 46:2
CERTAIN- 19:16
33:20 35:22
40:13,14 46:12

CERTAINLY- 20:10
CERTIFICATE-
55:17
CERTIFY- 55:18
CETERA- 45:9
CHADBOURNE- 41:3
CHALLENGE- 32:7
33:17
CHALLENGES- 32:9
CHAMBERS- 49:16
CHANGE- 19:7
41:11
CHANGED- 11:6
49:7
CHANGES- 46:18
47:12
CHARACTERIZE-
36:24
CHECK- 31:21
32:5,15,20 33:22
35:2
CHECKING- 42:8
CHOICE- 15:13
29:11 53:7
CHOOSING- 38:15
CIRCUIT- 51:18
CIRCUMSTANCES-
17:11 31:17
33:18 38:15
CLAIM- 12:14,16,
24 13:15,16
15:19 17:21
18:15 23:16,17,
18,19 24:7 25:2,
12 27:21 29:11,
15 33:4 45:18,19,
20,23 47:17 51:4
CLAIMS- 10:19,20,
22 17:23 18:3
21:25 24:15,24,
25 25:8,24 27:13
28:15 30:4,8
32:16,24 33:10,
23 34:15 44:1,5
45:24 52:7
CLARIFY- 20:8,18
CLASS- 12:6,17,
18,23 13:14 14:9,
11 15:8,9,12,18,
20,25 16:2 21:19,
20 23:16 30:1
33:1,2
CLASSES- 15:15
CLEAN- 26:16,17
35:19
CLEAR- 12:12

15:4 24:4,5
25:22 29:4,8,22
35:4
CLEARLY- 19:18
23:13 32:11
CLEARS- 23:2
CLIENTS- 29:5
36:1 37:20
CLOSE- 36:12
CLOSER- 16:12
CLUMSILY- 24:19
CODE- 22:18 29:8
COLLEAGUES- 47:8
COLLOQUY- 48:18
COME- 19:5 23:10,
18 25:4,17 35:19,
24 41:19 44:11
46:6 53:24
COMES- 28:22 53:3
COMMENT- 36:23
44:12
COMMENTS- 19:24
20:4,5 36:23
47:11
COMMITTEE- 24:1
37:13,19,24 38:5,
7,10 40:25 41:3,
25 43:21 44:3
45:8 49:24 50:5
COMMITTEE'S-
38:8 41:13,23
42:22 43:3,20
49:23
COMPANY- 44:5
COMPELLED- 53:14
COMPENSATE- 51:9
COMPENSATION-
8:20
COMPLETELY- 54:23
COMPLY- 28:8
CONCEPT- 47:16
CONCERN- 31:18
40:19
CONCERNED- 26:17
CONCERNS- 40:1
CONCLUDES- 54:5
CONCLUSION- 53:24
CONDITION- 27:6,
18,24,25 46:11
CONFERENCE-
44:23 47:8 49:17
53:23
CONFIDENTIAL-
53:4
CONFIRM- 21:20

27:8 29:18
**CONFIRMATION-** 10:17 14:10 19:6 26:3,6,9,14 27:19 30:17,25 31:5,8 32:13 33:15,23 34:12, 16,17 35:25 36:4 46:1,3,7,17 52:9, 12 54:12
**CONFIRMED-** 32:20 46:10
**CONFUSION-** 14:9
**CONNECTION-** 28:15 36:18 52:9, 19 53:9,18
**CONSENT-** 33:12
**CONSIDER-** 54:17
**CONSIDERATION-** 12:12,25 15:9,11, 14,17 55:8
**CONSISTENT-** 34:25 41:12
**CONSTITUENCIES-** 9:24 45:8 47:10, 11
**CONSTITUENCY-** 15:12 38:13
**CONSUME-** 55:4
**CONTACT-** 20:11,12
**CONTACTED-** 53:7
**CONTAINED-** 19:1
**CONTEMPLATED-** 24:23 27:20 52:1
**CONTENTIONS-** 8:9
**CONTINUE-** 27:7 40:3
**CONTRAST-** 22:11
**CONTROVERSY-** 53:17
**CONVERT-** 24:19
**COPIES-** 42:18 49:16
**COPY-** 37:15
**CORRECT-** 12:8,10 13:4,17,19 55:18
**CORRECTLY-** 13:3 31:25
**CORRESPONDING-** 46:18
**COST-** 51:4
**COSTS-** 51:8
**COUNSEL-** 23:12, 24 30:5 37:8
**COUPLE-** 9:17 11:12 24:18 50:20

**COURT'S-** 20:5 30:16,18 34:25
**COVER-** 44:24
**CRAM-DOWN-** 45:16
**CREATE-** 33:14
**CREATES-** 30:25 32:13
**CREDIT-** 38:23
**CREDITOR-** 31:22 33:1,2,3 38:13
**CREDITORS-** 8:7 29:7,10 33:5,8 37:14 38:12,18 40:14 41:4,14 43:22
**CREDITORS'-** 8:16 24:1 37:13 43:20 44:3 45:8 49:23, 24
**CROSSED-** 27:19
**CUMBERSOME-** 14:15
**CURRENTLY-** 47:15
**CUT-** 38:1
**CUTTING-** 21:10

---
D
---

**DAMIAN-** 40:8
**DATE-** 46:12 51:14,15,23 54:12,15 55:23
**DATES-** 51:12 54:10
**DAVIS-** 40:8
**DAY-** 23:1 27:1 36:7,10 49:1,15 51:22 52:2,12,22
**DAYS-** 41:7
**DEADLINE-** 52:17
**DEAL-** 37:24 39:12,18
**DEALINGS-** 11:11
**DEATHTRAP-** 21:18
**DEBATE-** 16:16 29:21 53:17
**DEBT-** 15:10 20:9, 10,13,15,17 21:2, 5
**DEBTOR-** 11:23 21:21 22:22 23:3 24:24 25:14,21 26:10,21 27:24 28:6,9,12,16 29:21 30:23 32:14 33:19 34:6, 8 35:13,22 36:22, 25 47:9 48:6

50:23 51:3 52:1
**DEBTOR'S-** 28:17
**DEBTORS-** 8:4,8 22:16 24:18,20 25:3,5 26:7 27:10 29:3,25 30:11 33:15 34:21 35:1 36:3 37:15,23 39:14 40:14 41:16 51:1, 14
**DEBTORS'-** 10:14 17:25 23:24 24:2
**DECIDE-** 15:14,16, 17 17:15
**DECIDED-** 14:11
**DECISION-** 18:17
**DEEMED-** 22:4,5 30:6
**DEFECT-** 22:8
**DEFENSES-** 36:5 45:21
**DEFICIENCY-** 34:2
**DEGREES-** 20:20
**DELIVER-** 9:22,24
**DELIVERED-** 49:16
**DELIVERING-** 10:3
**DESCRIBE-** 30:1 35:17
**DESCRIBED-** 23:12
**DESCRIPTION-** 21:12 23:8,23 43:15
**DESIRE-** 19:16
**DESPITE-** 19:11 36:21
**DETAIL-** 41:22 42:3
**DETAILS-** 41:24 47:18
**DETERMINATION-** 17:18 24:14
**DETERMINE-** 17:20, 23 22:6,20 46:7, 12
**DETERMINED-** 45:19,25
**DETERMINES-** 18:11 22:23 46:3
**DEUTSCH-** 41:2 42:8,15,21 43:8 44:13,16 50:4,8
**DEVELOPED-** 53:1
**DEVIATES-** 47:14
**DEVOTE-** 55:3
**DIDN'T-** 16:6,7

27:11 34:23 38:2 39:8,11 47:13,25 51:7 55:2
**DIFFERENCE-** 16:3
**DIFFERENT-** 14:3 18:10 25:7,8,9, 17,19,23
**DIFFICULT-** 23:9 47:7
**DILIGENCE-** 32:9
**DIRECTED-** 38:18 43:12
**DIRECTING-** 9:19 39:5
**DISAGREE-** 18:9 37:5
**DISCLOSURE-** 8:5, 19,21,22,24 10:8, 14,15 11:12 13:2, 21 14:5 16:18 17:24 19:12,17 21:13 23:6,23 24:9 25:11,14,15 26:15,20 28:10, 12,19,24 29:1,24 31:9,12,19 32:2, 15 33:20 35:10, 17 36:19 39:11 40:12,20 41:8 46:18,23 48:7 49:21 50:10,13,21
**DISCOVERY-** 38:22 40:18 52:9
**DISCUSS-** 43:25 51:24
**DISCUSSED-** 19:22 53:18
**DISCUSSION-** 23:6 24:19 28:19
**DISCUSSIONS-** 52:21
**DISPARATE-** 14:10
**DISPUTED-** 13:16 23:15,16 45:18 47:17
**DISPUTES-** 52:9 4:7
**DISTILLATION-** 44:7
**DISTRESS-** 11:8
**DISTRESSED-** 11:8
**DISTRIBUTABLE-** 23:19 24:7,21 25:13 28:17 29:17 45:25
**DISTRIBUTE-** 39:6
**DISTRIBUTED-**

13:11 25:2
**DISTRIBUTION-**
34:13
**DISTRIBUTIONS-**
43:19
**DISTURB-** 48:20
**DISTURBING-** 23:21
**DOCUMENT-** 35:18
44:10
**DOESN'T-** 14:11
17:5 25:20 28:8
29:2,16 33:22
35:4,14 39:23
46:7,25
**DORMAN-** 37:2
**DOUG-** 41:2 50:4
**DRIVE-** 26:22
**DUE-** 48:12
**DUTY-** 53:4,5,8,9

---
E
---

**EARLIER-** 30:16
**EASY-** 15:23
28:23 30:11 35:4,
15
**EFFECT-** 21:21
**EFFECTIVE-** 46:11
**EIGHT-** 38:1
**ELECTION-** 16:3
45:17
**ELECTRONIC-** 55:19
**ELROD-** 32:25
**ELSE'S-** 26:23
27:1
**EMBEDDED-** 29:23
**EMBODIED-** 43:17
**EMERGENCY-** 51:19
53:3
**ENFORCEABILITY-**
32:7
**ENFORCEMENT-**
32:18 33:16,17
36:6
**ENFORCES-** 32:11
**ENFORCING-** 34:12
**ENGAGED-** 48:18
**ENGLISH-** 16:12
**ENTER-** 52:14
**ENTERPRISE-**
24:11,22 25:6,25
**ENTIRELY-** 29:8
**ENTITLED-** 17:17
26:20 27:3,6,9
29:16 36:1,7
39:13,19 41:13

**EQUAL-** 29:10,14
**EQUITABLE-** 33:1,
5,9
**EQUITABLY-** 32:23
**EQUITY-** 15:10
**ESOP-** 41:22
**ESSENCE-** 19:14
45:16
**ESSENTIALLY-**
18:4 19:11
**ESTATE-** 28:2 33:4
**ESTIMATE-** 18:13
**ESTIMATED-** 18:12
24:21,23
**ET-** 45:9
**EVENTUALLY-** 42:13
**EVERYBODY-** 13:10
15:13 26:23 27:1
36:10 37:21
**EVERYONE-** 8:1
54:4
**EXACT-** 19:19
**EXACTLY-** 20:10
**EXAMINER-** 52:17
**EXAMINER'S-** 52:19
**EXAMPLE-** 25:24
47:16
**EXCEPT-** 32:16
40:10
**EXCEPTION-** 8:5
**EXCUSE-** 24:18
41:2
**EXHIBIT-** 42:9
**EXIDE-** 36:9
**EXPENSE-** 51:4
**EXPENSES-** 39:20
**EXPENSIVE-** 43:17
**EXPLAIN-** 13:23
47:13
**EXPLANATION-**
18:17
**EXPRESSED-** 35:1
**EXPRESSION-** 30:16
**EXTENSIVE-** 43:20
**EXTENT-** 17:20
45:22
**EXTRA-** 35:7

---
F
---

**FACTORS-** 28:22
**FAIR-** 15:2 18:16
20:15 28:23,24
41:25 44:4,12
**FAIRLY-** 28:23
**FAR-** 8:25 11:1

**FARGO-** 20:3
**FAVOR-** 15:14 16:4
**FEEL-** 31:25
46:25 53:13
**FEELS-** 46:25
**FEES-** 39:13,16
**FIDUCIARY-** 38:12
**FIGURE-** 17:18
24:17 25:15
**FIGURING-** 24:10
**FILE-** 48:1,9,17,
19,20,21 49:6
**FILED-** 8:11,13,
19,22 9:9 10:15,
23 12:12 17:3
31:15 41:16,18
**FILING-** 31:12
52:18
**FILINGS-** 52:20
53:21
**FILLING-** 16:4
**FINALIZE-** 48:11
**FIND-** 18:9 42:24
43:2 46:9
**FINE-** 8:10,15
12:2 49:2,4 50:7
51:6
**FIRM-** 40:13
**FIRST-** 10:11
11:10 12:3,11
15:8 21:9 37:23
41:6,8 43:24
45:14 48:12
50:22 51:25 53:6
**FIVE-** 50:1
**FIX-** 51:23 52:15
**FIXED-** 13:6
**FOLLOWED-** 13:18
**FOLLOWING-** 36:20
49:1 51:22
**FOREGOING-** 55:18
**FORK-** 29:13,15,16
**FORM-** 12:12 15:11
**FORTH-** 11:16,22
17:24 19:18 22:1
41:25
**FOUND-** 36:10
**FOUR-** 14:3 22:1
50:1,6
**FRANKLY-** 14:19
20:23 21:13
47:12 51:7
**FREELY-** 20:17
**FRIENDS-** 53:10
**FRONT-** 40:4 43:4

**FUNDS-** 10:22
11:7 20:11,16,24
**FURTHER-** 19:7
36:14,23 54:2
55:8

---
G
---

**GENERALLY-** 38:14
41:13,22
**GET-** 9:11,14,21
12:14,20,21,25
13:8 15:14,17,18
16:12,24 17:6,16
18:3 23:19 24:6,
25 25:1,9 27:3
29:2,10,12 34:3,
22 35:7 38:16
42:11,13 43:4
45:22 46:9,13,23
47:2 48:10,16,21
49:16,25 50:13
51:4 53:22 54:21,
23 55:9
**GETS-** 13:18 16:3
25:12 29:19 38:5
**GIVE-** 9:19 11:10
12:13 16:6,8
39:6,21 49:25
55:8
**GIVEN-** 17:11
53:1,7
**GIVES-** 34:4,13
38:8 41:22
**GO-** 24:10 25:5
26:1 28:1 32:9,
19 34:4 35:12
37:3 41:14 43:11
46:10
**GOBBILY-** 24:19
29:23
**GOING-** 12:13
15:11 16:5,7
17:14,17,22,23
19:17 20:4 22:3,
25 25:14 29:13,
14 30:7,13 31:22,
23 32:4 33:14,23
34:15 35:23,25
36:4 38:24 44:20
45:1 46:17 49:14
51:20 52:22
**GOOD-** 8:1 20:2
25:11 45:5 54:4
**GOOK-** 24:20 29:23
**GOT-** 23:7 31:12
34:15 44:12

GOULD'S- 9:3,6
GOVERNMENT- 51:18
GRANT- 31:22
GREATER- 25:25
26:2
GROUPS- 33:7
GUARANTEE- 21:25
28:15 30:3,8
33:10
GUARANTEES- 22:2
32:8
GUESS- 22:12
30:13,16,22
35:21 36:11
42:17 48:6,7

H
HALF- 10:1 21:5
43:15
HAND- 42:18,23
HANDLED- 53:4
HAPPEN- 30:14
51:20 55:1
HAPPENING- 34:7
HAPPENS- 12:16
27:5
HAPPY- 43:2
HARD- 24:5 38:1
HASN'T- 36:21
HAVEN'T- 23:10
39:25
HEAR- 10:4 11:21
19:22 36:19 37:7,
10 47:18
HEARD- 20:12
21:4 36:18 37:2
38:20 40:7,10,23,
24 44:17,18 53:19
HEARING- 31:19
36:2 41:9 44:19
45:2 47:1,23
51:15,23 52:12,
18 54:5,10 55:15
HEARINGS- 52:1
53:16
HEART- 18:25 39:1
HELD- 32:25 44:23
HELP- 47:6
HELPFUL- 54:21
HENNIGAN- 37:2
40:11
HERE'S- 25:16
HIGHER- 46:5
HIGHLY- 53:4
HISTORY- 11:21
HOLD- 36:17 42:13

HOLDER- 12:17
13:15 38:23 45:18
HOLDERS- 10:19,
20,21 11:2,3
13:11 20:8,11,12,
20,21 21:1 39:9
44:1,5
HOLDERS'- 38:21
HOLDING- 32:25
HOLDS- 20:10,15
21:6
HOLIDAY- 54:4
HOPE- 31:15
HOPED- 50:17
HOPEFULLY- 16:12
HOUR- 10:2
HOURS- 48:11
HOW'S- 49:1
HUBRIS- 19:10
HURDLE- 23:2
HURRICANE- 51:19

I
IDENTIFIED- 18:5
IDENTIFY- 28:23
34:1
IFS- 17:11
IGNORED- 39:14
ILLUSTRATE- 29:3
ILLUSTRATIVE-
34:20
IMPACT- 28:22
IMPACTS- 49:20
IMPAIRS- 25:23
26:13
IMPORTANT- 20:6
IMPOSED- 33:21
INADEQUATE- 19:12
INAPPROPRIATE-
18:21 40:5
INC- 55:24
INCONSISTENT-
21:13
INCREASING- 28:1
INCUMBENT- 28:16
34:14
INDENTURE- 39:13,
19 51:3
INDICATED- 18:13
INDIGENOUS- 33:3
INDIVIDUAL-
12:16 13:15
20:21 45:18
INFORMATION-
24:16 38:21,25

INSTANCE- 34:19
INSTITUTIONAL-
11:2,3 14:6
INSTRUMENTS-
20:25
INTEND- 32:10,19
35:11,16,22
INTENDING- 37:11
INTENTION- 23:15
24:6 52:11 53:2,
6,8
INTEREST- 43:19
INTERESTED- 47:23
INTERESTING-
21:23 27:5,10,12
INTERLINEATED-
34:21
INTERNECINE- 33:7
INTERRUPTING-
14:24
INVESTMENT- 20:16
INVESTORS- 14:7
20:11
INVITE- 52:20
ISN'T- 29:8 30:8
ISSUE- 9:11 10:7
26:9 30:23 32:13
33:15 35:24
36:12,21,24
37:12 38:19 39:4,
7,15,17 40:2
44:11 46:14
50:22 51:7
ISSUES- 8:12,20
9:4 18:5 26:7,12,
21 31:4 36:2
42:3 50:23 53:21
IT'S- 10:14 11:6,
23 13:10 14:14,
16,21 15:13,25
17:4,7,14,17
18:15 19:8,12,18
20:14,17 21:23
22:12,25 23:21,
24,25 24:1,2,4
27:10 28:4,12,16,
17,24,25 30:11
34:8,14,17 35:3,
4,9 37:16 38:10,
12 41:12 42:16,
17 44:12 46:5
48:12 51:19 52:6,
11 53:1,4
ITEM- 41:10
ITEMS- 42:5

J
JIM- 37:1 43:1
JOHNSTON- 37:1,4,
9,11 43:1,6,12,
13,14
JOIN- 53:24
JPMORGAN- 24:1
38:23 40:9,12
JUDGE- 32:25
53:3,4,5,6,7,8,9
JUDICIAL- 19:10
JULY- 51:15,24
52:22,23
JUNIOR- 29:12,19

K
KATRINA-LIKE-
51:19
KEY- 28:4
KNOWS- 20:10
KRAKAUER- 8:3
9:8 10:6,10,20
11:1,6,10,19
12:1,8,10,19,22
13:5,8,13,17,19,
23 14:1,4,13,18,
21,23,25 15:2,6,
8,21,24 16:2,11,
15,17,20,23 17:1,
3,9,13 19:3,24
20:1 38:20 39:4
44:21 45:5,6
48:13,14,19,24
49:4,6,11,22
50:11,13,16,19
51:6 52:5,13
54:1,3,6,9,13,16
55:9,13
KRAKAUER'S- 47:22

L
LANGUAGE- 8:12,
21,23 9:3 19:9,
18,19 22:11
34:11,21 45:14
46:22 47:9
LARGELY- 37:16
LATE- 9:10 44:11
LATENESS- 31:12
LATER- 30:10
42:4 26:24 49:18
52:8
LAUGHTER- 53:11
LAURIA- 19:5
20:2,23 21:9

22:15 26:5,25
30:20,22 36:13,
14,15 37:5,20
39:7 44:21 46:21
47:4,5,20,25
48:5 49:2
**LBO-** 41:22 42:3
43:16 44:2,3
**LEARNED-** 37:12
**LEAVE-** 30:13
**LEAVES-** 46:6
**LEGAL-** 17:18
21:22 22:10,20
29:21 34:8
**LEGITIMATE-** 39:18
**LENDER-** 15:12
19:9 27:13 33:10
**LENDERS-** 8:13
19:11,23 26:11
32:4,5,6,16,17,
24 33:13 34:3,15
35:23 36:25
40:14 45:9,12
50:23
**LENDING-** 11:7
**LET'S-** 27:13,16
48:3,20 49:20
50:20,22
**LETTER-** 19:9,10,
19 37:14,15,18
38:4,7 41:7,14,
17,21 42:4,23
43:3 49:23,24
50:1
**LETTERS-** 42:6
**LETTING-** 11:20
**LEVEL-** 32:24
33:8 46:13
**LIES-** 14:9
**LIMITATION-** 38:3
**LIMITED-** 49:9,12
53:21
**LIMITING-** 37:24
**LINE-** 16:24
**LIST-** 9:13 38:21,
23 39:6,21
**LITIGATE-** 35:25
**LITIGATION-**
15:19 43:18
**LOAN-** 19:11
21:25 22:2 24:25
36:25
**LOCK-** 27:25
**LONG-** 16:19 29:18
**LONGER-** 44:8
**LOOK-** 9:2 18:1,2

21:24 23:5 28:9
29:9 34:21
**LOOKING-** 18:25
22:13 42:16
**LOT-** 11:16,22
35:4 37:5 38:2
**LOTS-** 29:6
**LOWER-** 25:9 46:5
**LUXURY-** 54:25

---
M
---

**MAILING-** 9:13
51:8
**MAJORITY-** 43:25
**MAKING-** 51:5
**MANAGE-** 36:10
**MANNER-** 41:20
**MARKUP-** 23:7
**MARTIN-** 39:2
**MATERIALS-** 41:14,
16
**MATH-** 25:4 27:16
**MATTER-** 33:22
44:25 53:3 55:20
**MAXIMIZE-** 43:22
**MAXIMUM-** 13:3
**MEANINGLESS-** 28:7
**MEANS-** 9:25 17:8,
19 22:2 26:14
29:5,7,21 31:5
43:22
**MEANT-** 15:3 48:2
**MECHANISM-** 10:3
**MEET-** 52:17
**MERITS-** 54:20
**MIDPOINT-** 24:20
**MILLION-** 13:10
25:2 27:3,12,14,
18,20,24
**MIXED-** 10:20
**MODIFIED-** 31:13
**MODIFY-** 45:14
**MOM-** 10:24 11:4
**MONDAY-** 41:18
46:25 48:1
**MORASS-** 36:4
**MORNING-** 8:1
20:2 38:20 39:5
48:12,22
**MOVE-** 12:2
**MUCH-** 31:18
36:16 44:7 50:3
52:2,6
**MUTUALITY-** 26:19

---
N
---

**NA-** 20:3
**NATURAL-** 52:8
**NECESSARILY-** 8:8
39:9
**NEEDED-** 55:10
**NEGOTIATED-** 47:10
**NEITHER-** 35:3
**NEW-** 21:16 39:25
**NEWS-** 55:7
**NIGHT-** 8:14 9:10
10:15 31:10
**NOBODY-** 29:11,18
**NOBODY'S-** 41:19
**NONBANKRUPTCY-**
32:6
**NONCONSENSUAL-**
31:20
**NON-CONSENSUALLY-**
33:21 35:20
**NONDEBTOR-** 31:20,
22 33:13,20 34:7
**NOON-** 45:2
**NOR-** 35:3
**NOTEHOLDERS-** 45:9
**NOTION-** 21:15
**NOTWITHSTANDING-**
51:20
**NUMBERS-** 25:16

---
O
---

**OBJECT-** 23:15
**OBJECTED-** 11:17
39:10 41:19
**OBJECTING-** 12:4
**OBJECTION-** 8:14,
19,25 9:8,10
10:8 11:13,24
12:3 13:21 17:3
18:25 19:21
21:20 26:6 30:17
31:1,8,9,15
**OBJECTIONABLE-**
43:2
**OBJECTIONS-** 8:6
10:16,17 19:6
26:3
**OBVIOUSLY-** 29:13
37:5
**OFFER-** 14:10
**OFFERED-** 12:25
**OFFICE-** 52:21,22,
23
**OFFICIAL-** 41:3
**OMNIBUS-** 51:14

**ONE-** 8:5,12 9:11
16:19,25 20:8
21:16 26:17 35:9
36:21 42:18
44:10,12 48:1,11
49:22 50:1 51:12
52:15 54:6
**OPEN-** 16:16 46:6
**OPINION-** 24:9
34:8
**OPPORTUNITY-**
10:12
**OPT-** 31:23,24
**OPTION-** 12:23
**OPTIONS-** 29:9
**ORDER-** 9:18 10:1
39:25 40:4,13
50:24 51:2 52:14
54:15
**ORDERED-** 40:12
**ORDERING-** 38:24
**ORDINARILY-**
21:17,18
**ORIGINAL-** 10:21
**ORIGINALLY-** 11:2,
6 37:25
**OTHER'S-** 26:18
**OTHERWISE-** 53:13
**OURS-** 37:25
**OURSELVES-** 47:8
**OUTCOMES-** 43:21
**OUTSTANDING-** 9:8,
16 38:22
**OWN-** 39:24

---
P
---

**PACKAGE-** 9:13,22,
24 10:3
**PACKAGES-** 37:14
38:18 39:6
**PAID-** 39:13,20
**PAPERS-** 11:21
**PARENT-** 18:1,2,3
45:24
**PARK-** 41:3
**PARTICIPATION-**
21:6
**PARTIES-** 9:14
10:12 11:7 16:21
32:17 43:19
49:17,19 54:19
**PARTIES'-** 19:15
37:24 38:8
**PARTISAN-** 38:11
**PARTY-** 37:19
38:11

PASSAGES- 43:2
PAUSE- 42:10,12,
14,20 43:7,10
49:13
PAVE- 43:18
PAY- 17:21 39:24
PAYING- 39:16
PEACE- 36:17
PEOPLE- 18:6,17
25:18 31:21
48:15 53:14
PEOPLE'S- 28:20,
21
PEOPLES'- 48:21
PERCENT- 18:15
25:1 26:2 27:17
38:6
PERCENTAGE- 26:2
27:3,12,25 28:1
PERMIT- 19:14
PERSON- 12:20,21
16:3 17:5
PERSONAL- 20:24
PERSONALLY- 21:3
PHONE- 47:2
PHONES- 9:15,23
39:9,18 50:23
PICTURE- 24:8
PIECE- 23:22
38:17
PIECES- 24:16
PLACES- 14:3
PLAIN- 16:12
PLAN- 10:17
11:12 12:5,9,17,
21,25 17:16
21:11,14,19,20,
24 22:3,8 23:22
24:23 25:12,16,
23 26:13 27:7
28:7,18 29:7,20
31:13,21 32:2,11,
20 33:11,13,21,
24 34:4,11,20,22,
24 35:2,17,18,20,
23 37:15 38:14
40:21 41:23,24
43:17 44:1 45:14
46:9,22 47:15,16
48:7 52:9 53:5
PLAN'S- 29:18
PLANNED- 37:13
PLANNING- 51:19
53:12
PLANS- 37:19
51:20

PLAY- 21:12
PLAYS- 18:7
PLENARY- 36:1,11
PM- 45:4 55:15
POCKET- 39:24
POINTED- 11:13
POINTS- 24:18
POLK- 40:9
POOL- 24:15 25:8,
24
POP- 10:25
POPS- 11:4
POSITION- 19:15
23:4 25:18,19,23
26:11 27:1 31:5
38:4,8 41:12,23
44:8
POSSESSION- 23:18
POSTURE- 53:1
PRECEDENT- 46:11
PRECISELY- 19:9
PREPARE- 52:15
PREPARED- 47:21
49:19 50:24 51:2
PRESENT- 55:6
PRESENTLY- 54:11
PRESERVE- 30:1
PRESERVED- 26:7,
8,22
PRESUMABLY-
10:11 22:7
PRESUME- 16:5
18:20 47:25
PRIOR- 41:8
PRIORITY- 29:12
PRO- 13:11 23:19
24:7,17 25:12
28:17 29:16 45:23
PROBABLY- 18:7
23:24 24:3 28:13
36:9 49:17
PROBLEM- 28:11
30:12
PROBLEMS- 20:6
37:22
PROCEDURES-
40:22 41:20
PROCEEDINGS-
55:19
PROCESS- 46:20
47:7,21,24
PRODUCE- 26:1
PROGRESS- 45:11
PROJECTIONS-
54:20

PROMPTLY- 9:20
46:23
PROPER- 46:16
PROPERLY- 40:18
PROPERTY- 29:14
PROPOSE- 45:13
46:17
PROPOSED- 19:19
22:16 37:16
38:16 51:13 54:15
PROPOSES- 47:24
PROPOSITION-
11:24
PROTECT- 32:11
PROVIDE- 12:22
29:14 40:13
43:21 48:6,8
PROVIDED- 12:4,
11 15:9 47:15
51:3
PROVIDES- 13:3
18:10 44:4
PROVISION- 10:2
32:7,10 38:24
PROVISIONS- 49:9,
10
PURPOSE- 11:20
52:24
PURPOSES- 53:13
PURSUANT- 41:20
PURSUE- 34:2
PUTTING- 19:10
21:17 54:19

Q

QUESTIONS- 53:25
QUICKLY- 31:10,
14,16
QUOTE- 9:6 54:19

R

RAISE- 49:22
RAISED- 18:23
39:4,7 50:24
RAISES- 35:10
RANGE- 18:13
RATA- 13:11
23:19 24:7,17
25:12 28:17
29:17 45:23
REACH- 49:16
REACHING- 45:11
REALITY- 23:12
REASON- 9:16,21
39:8 54:18
RECEIVE- 49:15

RECOGNIZING-
35:18
RECOMMENDATION-
47:22
RECONVENE- 45:1
RECORDING- 55:19
RECOVER- 22:3
RECOVERY- 13:3,5
18:13 24:17,25
26:2,22 27:2,17,
23 34:3 43:22
REFERENCED-
41:15,17
REFERRING- 53:8
REFUSED- 47:11
REGARDLESS- 32:5,
20
REGISTER- 40:17
REIMBURSED- 39:14
REITERATION-
43:24
REJECT- 13:15
21:21 22:15
23:16 29:7 30:6
34:22,23 35:2,8
REJECTED- 12:21
22:4,5
REJECTING- 30:1
REJECTION- 15:25
REJECTS- 12:7,18,
23 13:14 15:12
16:2 23:16
RELATIVELY- 23:13
RELEASE- 12:25
31:22,24 32:17
34:7 35:22
RELEASED- 33:23
34:16 35:20
RELEASES- 15:18
31:20,22 32:3,15
33:20 34:23,24
35:3,7,13
RELIEF- 51:2
RELUCTANT- 39:21,
22
REMAINING- 10:8
13:21
REMEDIES- 34:1
35:23
REPLY- 48:9,11
REPORT- 52:18,19
REPRESENTATION-
20:15
REQUEST- 9:16
38:21,23 39:8
40:11,20,21

**REQUESTED-** 51:3
**REQUESTS-** 39:15,
18 40:18 52:4
**REQUIRE-** 19:7
**REQUIRED-** 21:16
26:10 32:1 35:2
39:23 41:20
**REQUIREMENT-** 22:7
**REQUIREMENTS-**
22:17 46:4
**REREADING-** 32:2
**RESERVATION-**
21:19 30:23
**RESERVE-** 26:17
54:22
**RESERVES-** 25:22
**RESERVING-** 25:6,
17
**RESOLUTION-** 43:18
**RESOLVE-** 40:2
**RESOLVED-** 8:6,7,
18 36:21
**RESOLVES-** 8:24
**RESPECT-** 9:14
19:8 30:19 32:18
34:13 38:14
40:11 41:5,23
42:1,22 45:10,11,
14 50:22,24 52:18
**RESPECTABLE-**
31:15
**RESPOND-** 10:13
39:8 46:24 49:1
**RESPONSE-** 9:15,
17 19:24 30:16
40:24 44:18
47:23 48:1 53:19
**RESPONSES-** 49:12
**RESTRICTS-** 26:13
**RETIREMENT-** 20:24
**RETURNING-** 52:23
**REVIEWED-** 41:24
**REVISE-** 16:11
**REVISED-** 8:13,14,
21,22 9:2 10:1
14:5
**REVISIONS-** 48:6
**RIGHTS-** 21:19
25:22,23 26:6,7,
8,18,21,24 30:23,
24 31:2,3 34:4
35:22
**ROLE-** 38:12
**ROOM-** 47:8
**RUDNICK-** 39:3

29:12 47:1
**RULINGS-** 40:19
**RUNNING-** 17:7

S

**SAT-** 14:19 47:8
**SATISFIES-** 21:22
22:6 30:2,9
**SATISFY-** 22:17,
23 23:5 30:4 46:7
**SAVE-** 19:24
**SCENARIO-** 13:4,5,
18 15:20,25 17:8
18:14
**SCHAIBLE-** 40:8,17
**SCHEDULE-** 51:13
52:11 53:13
**SCHEDULED-** 44:19,
25 51:14 52:6
54:12
**SCHEDULING-** 52:2
**SECOND-** 38:7
40:11 43:14,15,23
**SECONDLY-** 41:15
**SECRET-** 53:5
**SECURED-** 33:1,2,
3,4,8
**SEE-** 19:21 21:18
37:16 44:21 49:9
**SEEK-** 21:19
32:23 33:9,16
**SEEN-** 39:25
**SENDING-** 8:10
51:9
**SENIOR-** 15:12
32:4,17,24 33:9,
13 34:3,15 35:23
45:9
**SENTENCE-** 9:18
**SEPARATE-** 32:14
37:12 38:17
39:17 42:18 44:24
**SEPARATED-** 38:7
**SEPTEMBER/OCTOBER**
- 55:6
**SERIOUS-** 13:21
33:15
**SERVICE-** 51:5
**SET-** 13:18 15:22
17:24 19:18 22:1
27:2 48:8 49:14,
17 52:18 53:23
**SETOFF-** 45:20
**SETS-** 41:24
**SETTLE-** 12:24
**SETTLEMENT-** 17:5

37:17 38:11,16
43:17 44:2,3
45:17
**SETTLEMENTS-**
43:21
**SHALL-** 50:9
**SHANNON-** 32:25
**SHARE-** 18:3
23:19 24:7,17
25:13 28:17
29:17 45:23
**SHORTER-** 12:1
**SHOT-** 14:23 15:3
**SHOULDN'T-** 35:9
38:16
**SHOW-** 42:5
**SIDE-** 35:9 44:23
**SIDE'S-** 26:18
**SIDEBAR-** 44:21,23
**SIEGEL-** 39:2
**SIGNIFICANCE-**
47:13
**SILENCE-** 53:20
**SIMMERING-** 52:25
**SIMPLE-** 23:21
35:4
**SITTING-** 51:17,22
**SITUATION-** 36:8
**SIZE-** 24:14
**SLATE-** 26:16,17
**SLIDE-** 34:10,18
**SLIGHTLY-** 13:10
16:9 49:25
**SMALL-** 20:16
**SMALLER-** 25:24
**SMARTER-** 14:7
**SOLICITATION-**
9:13 37:14 38:18
39:6,24 40:21
42:7,9 50:10
51:13 53:18
**SOLVE-** 30:11,13
**SOPHISTICATION-**
20:20
**SOUND-** 55:19
**SOUNDING-** 31:8
**SOUNDS-** 23:14
**SPACE-** 38:6
**SPECIFIC-** 12:3
17:20 43:15
**SPECIFICALLY-**
32:25 42:2
**SPECIFIED-** 21:11,
14
**SPECIFY-** 28:16

**SPILLOVER-** 54:23
**STAND-** 45:3 54:5
**STANDARD-** 21:22
22:10,20
**STANDING-** 20:14
**STANDPOINT-**
13:20 52:24
**START-** 21:15
**STARTS-** 25:11
**STATE-** 34:1,4
**STATEMENT-** 8:5,
12,13,14,19,22,
23,25 10:9,15
11:13 13:2,22
14:5 17:24 19:12,
18 21:13 22:19
23:6,23 24:9
25:14,15 28:7,10,
12,19 29:1,24
31:12,19 32:3,15
35:18 36:19 38:4
39:11 40:13,21
41:8 42:21 44:8
46:19,23 48:7
**STATEMENTS-** 8:6,
9,10,11,17 16:18
38:8
**STATUS-** 52:12,18
53:16
**STAY-** 54:11
**STEP-** 53:2
**STRADDLES-** 31:8
**STRAIGHT-** 28:17
**STREAMLINE-** 20:4
**STRIP-** 15:10
**STRIPPED-** 33:11
**STRONGLY-** 31:25
**STRUCTURE-** 21:18
**SUBMISSION-**
37:19 38:9,11
41:18 42:1,22
50:1
**SUBMISSIONS-**
37:20,24 41:8,18
**SUBMITTING-** 38:4
**SUBORDINATE-**
32:23
**SUBORDINATION-**
32:7,10,12,18,19
33:1,5,9,16,17
34:12 36:6 45:20
**SUBSEQUENT-** 17:22
**SUBSIDIARIES-**
33:10 44:6
**SUBSIDIARY-** 30:3,
8 32:24 33:8

SUBSTANTIAL- 43:25
SUFFICIENTLY- 33:3
SUGGESTION- 47:3
SUGGESTIONS- 47:12
SUMMARY- 36:2
SUMMER- 53:14
SUPER- 53:5
SUPPORT- 41:24
SUPPORTING- 37:14 38:11
SUPPOSE- 14:9
SUPPOSED- 23:3 24:6 27:17 29:23 34:17
SURELY- 53:22
SWITCH- 50:9
SYMPATHY- 14:16

---

T

TAKING- 33:15,17 45:23 53:14
TELEPHONE- 49:17 53:23
TELLING- 31:2
TELLS- 29:22
TERMS- 8:16 11:11 12:14 18:6 47:21 52:5 53:13 54:20
TESTED- 22:9
THAT'D- 49:2
THEREON- 41:10
THREE- 14:3 24:10 37:19,25 38:1 49:25
TIL- 48:4,25
TIME- 45:6 48:8, 9,10 49:15 52:2, 12 54:22 55:3,10
TIMELY- 41:19 49:16
TIMING- 48:14
TODAY- 36:12 39:9 40:19 46:24 49:10 50:18 54:2
TOGETHER- 31:14
TOM- 20:2
TOMORROW- 48:19
TRACK- 50:14
TRADE- 20:25
TRADED- 20:18
TRANSCRIBED-

44:24
TRANSCRIPT- 55:18
TRANSCRIPTS- 55:24
TRANSIT- 48:15
TREATED- 12:20, 21 13:16 45:18
TREATMENT- 12:3, 5 14:11 16:5,7,8 17:5,15 21:11,12, 14,15,18,21 22:1, 5,9,15,16,19,21, 22,24 23:4,5,22 24:4 28:8,9,15, 16,24 29:20,22 30:1,2,3,4,5,8,9 33:11 35:12,16 39:18 44:4 45:15 46:3,5 47:14
TRIAL- 36:1,11
TRIALS- 54:20
TRIBUNE- 23:20 24:7,12,23,24 25:13 26:1 28:18 29:17 44:5 45:24, 25 55:5
TRIED- 11:15
TRIES- 28:9
TRIGGERED- 51:16
TROUBLE- 35:6
TROUBLING- 28:5
TRUST- 9:22 39:3, 5,12,15,17,23 40:3
TRUSTEE- 9:15,22 10:5 39:13,19 51:4
TRUSTEES- 9:12 38:22
TRUSTS- 20:24
TUESDAY- 48:2,4, 10,12,22 51:15
TURNED- 52:8
TURNS- 22:25 35:21 54:18
TWO- 9:14 29:9 33:7 37:22 38:5 41:1,5,12 42:5 53:16 55:4
TYPES- 20:25 21:1
TYPICAL- 49:24

---

U

ULTIMATELY- 17:14,18 18:8
UNCERTAIN- 43:17

UNCLEAR- 14:17
UNDERSTANDS- 20:6
UNDERSTOOD- 31:25 48:13
UNFORTUNATELY- 45:10
UNION- 8:18
UNION'S- 9:3
UNLESS- 19:21 32:15 45:19 46:2
UNSECURED- 29:7, 9 38:12 41:4 43:22 44:5
UNSOPHISTICATED- 20:21
UPSET- 16:22
USED- 27:12
USING- 25:16
UTILIZED- 24:22

---

V

VACATION- 53:14
VALUE- 17:20 18:1,2,3,6 23:19 24:7,11,12,21,22 25:6,13,25 28:18 29:10,14,17 43:25 45:25
VARIOUS- 8:7 9:12 11:14 38:21 43:20
VARYING- 20:20
VEHICLES- 20:16
VERSION- 10:1
VERSIONS- 11:14
VIEW- 10:14 17:25 18:19 23:24 24:2 28:12 29:22 30:17 36:11 50:2
VIEWS- 28:20,21 35:1 38:14
VOCAL- 21:5
VOICE- 41:4
VOTE- 12:5 15:14 16:6
VOTED- 12:17 16:4,6
VOTES- 13:15

---

W

WAIVER- 46:14
WANTS- 46:8,24 48:6 53:7
WASN'T- 55:9
WAYS- 38:10 47:14

WE'RE- 8:10,25 10:24 15:4 16:5, 6 20:21 24:6 25:5,14,17 26:20 27:6,9 29:15,16 30:7,12 35:3,8, 23,25 36:6 39:8, 21,22 42:8 46:17 50:10 51:23
WEDNESDAY- 8:11, 20
WEEK- 35:1 41:11 49:18 50:14 53:22 54:21,22 55:2,10
WEEKENDS- 48:21
WEEKS- 9:17 11:12 41:12 55:4
WELCOMED- 53:20 55:7
WELLS- 20:3
WHEREUPON- 44:23 55:15
WHITE- 20:3
WHO'S- 12:17
WHOLE- 27:21 55:10
WHOLEHEARTEDLY- 23:8
WILL- 13:20 14:14 17:25 18:11,24 19:9 22:6,20,23 23:4, 5,19 26:22 29:5 32:8 40:19 45:1, 3 48:7 49:6 51:17,22 52:21, 23 53:22 54:5
WILLING- 51:23
WILMINGTON- 9:22 39:3,5,12,15,17, 23 40:2
WIND- 16:4
WISE- 46:20 48:14
WISH- 40:6,23 44:17 53:24
WISHES- 36:18
WON'T- 16:7 48:3
WORD- 24:19
WORDS- 19:13 23:11 27:9 33:4, 12,21 35:5,7
WORK- 11:15 18:1 23:25 24:3 28:13, 20
WORKED- 8:20

27:11 31:14 38:1
**WORKING-** 47:7
**WORKS-** 22:21
29:1 35:17
**WRAPPED-** 50:14,17
**WRITING-** 46:24
**WRITTEN-** 29:6
**WROTE-** 31:9

—————— Y ——————
**YESTERDAY-** 8:21,
22 23:7 31:13
37:13
**YOU'LL-** 21:18
37:23 39:10 48:16
**YOU'RE-** 17:17
**YOU'VE-** 13:25
14:2 34:15
**YUP-** 44:16 49:11