# EXHIBIT G

*Liquidation Analysis*

46429/0001-6750478v1

## TRIBUNE COMPANY AND ITS DEBTOR SUBSIDIARIES
## LIQUIDATION ANALYSIS

A.  Introduction

Under the "best interests" of creditors test set forth in section 1129(a) (7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests" of creditors test, the Debtors have prepared the following hypothetical liquidation analysis (the "Liquidation Analysis" or "Analysis"), which is based upon certain assumptions discussed in the Disclosure Statement and in the global notes accompanying the Liquidation Analysis (the "Global Notes"). Capitalized terms not defined in the Global Notes shall have the meanings ascribed to them in the Plan and the Disclosure Statement.

The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical chapter 7 liquidation of the Debtors' assets. Asset values discussed in the Liquidation Analysis may differ materially from reorganization or going concern values referred to in the Plan and Disclosure Statement. The Debtors prepared the Liquidation Analysis with the assistance of their advisors.

B.  Scope, Intent, and Purpose of Liquidation Analysis

The determination of the costs of, and hypothetical proceeds from, the liquidation of the Debtors' assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules and Proofs of Claim Filed to date. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Cases, but which could be asserted and Allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Expense Claims, and chapter 7 administrative claims such as wind down costs, trustee fees, and tax liabilities. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed

Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

## Global Notes to Liquidation Analysis

1.     Conversion Date and Appointment of a Chapter 7 Trustee

The Liquidation Analysis assumes conversion of the Debtors' Chapter 11 Cases to chapter 7 liquidation cases on September 30, 2010 (the "Conversion Date"). On the Conversion Date, it is assumed that the Bankruptcy Court would appoint one chapter 7 trustee (the "Trustee") to oversee the liquidation of the Debtors' Estates. In addition, it is assumed that all of Tribune's direct or indirect non-debtor subsidiaries, excluding Tribune Receivables LLC and any foreign subsidiaries would commence liquidation under chapter 7 on the Conversion Date. Tribune Receivables LLC, a special purpose entity which was part of an accounts receivable securitization structure that ceased to be utilized in March 2010, would be liquidated outside of bankruptcy and the interests in the foreign subsidiaries would be sold. In addition, the Debtors' interests in various joint ventures and minority investments would be sold. Tribune Company, its debtor and non-debtor direct and indirect subsidiaries are collectively referred to in the Liquidation Analysis as the "Tribune Entities".

Except as noted herein, the Liquidation Analysis is based upon the unaudited balance sheets of the Tribune Entities as of December 27, 2009 and those values, in total, are assumed to be representative of the Tribune Entities' assets and liabilities at the Conversion Date.

2.     Individual Liquidations

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered, but not substantively consolidated proceeding therefore the Liquidation Analysis considers an entity by entity liquidation. The Analysis takes into account administrative priority Intercompany Claims (those Intercompany Claims arising post-petition as defined in Note 18 below), unsecured prepetition Intercompany Claims, and the equity interests of each parent – subsidiary relationship. In an iterative and sequential fashion, the Liquidation Analysis assumes that liquidation value is cycled among the Tribune Entities to satisfy these Intercompany Claims and Interests which in turn adds to the liquidation value available to satisfy third-party Claims at each entity[1]. The results of the individual entity by entity analysis have been incorporated into the results of Tribune Company, the combined subsidiaries (i.e. all 128 direct or indirect subsidiaries and their interests), with consolidating adjustments, for a combined total liquidation value (see Estimated Liquidation Recoveries on pages 5 & 6).

---

[1] The value from liquidating the assets of each entity net of the costs of liquidation is used to pay out administrative priority intercompany Claims resulting in an increase in value for those entities in a net receivable position and a decrease in value for those entities in a net payable position. The resulting value (if any) is used to pay other administrative and priority Claims. The residual value is allocated among the various unsecured Claims which includes, prepetition Intercompany Claims. Again value flows to those entities in a net receivable position from those entities in a net payable position which results in more value to distribute among the entities other unsecured Claims. (See Notes to lines 18, 19, 23, and 29 of the Liquidation Analysis for additional detail.)

3. Liquidation Methodology

The Tribune Entities are assumed to be liquidated either through a distressed sale on a going concern basis or as part of a straight liquidation of the underlying assets depending on the best course for that entity:

- Distressed Sale — Typically, upon conversion of a chapter 11 case to a chapter 7 case, a business is shut down and ceases all operations. For (i) those Tribune Entities engaged in broadcasting activities[2], (ii) Tribune Media Services[3], and (iii) Forsalebyowner.com Corp., the Liquidation Analysis assumes a sale of the business as a going concern in a "distressed sale". The broadcast entities are assumed to be liquidated through a distressed sale rather than a liquidation of the assets because the value of the broadcast licenses is most likely maximized by keeping the stations operating during the sale process. Similar considerations exist for Tribune Media Services and Forsalebyowner.com Corp, because both are service businesses with minimal tangible assets.

  The distressed sale process is assumed to be conducted over a six-month period to minimize the disruptions to the operations of the businesses. While some entities may be sold in a shorter timeframe, other entities may take longer, especially the Debtors' broadcast operations which are subject to FCC regulation on the transfer of ownership. The Liquidation Analysis does not take any FCC regulatory impediments into account. Due to a number of factors including (a) the expedited nature of the sale process, (b) potential deterioration of the businesses during the chapter 7 liquidation, (c) the "as is" nature of the asset sales given the limited ability of the Trustee to provide representations, warranties, and indemnifications, and (d) the number of broadcast stations to be sold at a single time, management and their advisors believe that it is appropriate to apply discounts of 15% (high recovery) to 30% (low recovery) to the assumed going concern value of those entities[4]. It is assumed that the buyer would acquire all assets of the entity (excluding cash) and assume post-petition liabilities as well as key contracts. It is possible a buyer may seek to refrain from assuming all of the stations' broadcast rights contracts or other liabilities resulting in additional Claims that would further reduce creditor recoveries under a chapter 7 liquidation.

  If the Debtors' broadcast operations were shut down in their entirety, as may normally occur upon conversion to chapter 7, the Tribune Entities believe the liquidation recoveries on the broadcast assets would be substantially lower than those reflected in the Liquidation Analysis.

- Shut Down — The Liquidation Analysis assumes that all other Tribune Entities, including those engaged in publishing activities, would cease operations immediately. Most of their

---

[2] The Tribune Entities engaged in broadcasting activities excludes inactive broadcast related legal entities which are assumed to be liquidated.

[3] The Tribune Media Services ("TMS") business is comprised of Tribune Media Services, Inc., Tribune Media Services B.V., TMS Entertainment Guides Canada Corp., Tribune Hong Kong Ltd., and Los Angeles Times International, Ltd.

[4] The going concern value of these entities was determined by the Debtors' investment banker as part of the valuation included in Article XI.B of this Disclosure Statement.

3

employees would be severed and their assets liquidated piecemeal over three to six months.

The resulting Gross Liquidation Proceeds assumed to be received as a result of the sale and liquidation of the assets and operations of the Tribune Entities, as outlined above, less the Costs Associated with Liquidation as detailed in Notes 10 to 15 below, is then used to satisfy the various Claims, including chapter 7 Claims, chapter 11 Administrative Expenses and Priority Non-Tax Claims, and pre-petition Claims. The Liquidation Analysis assumes that the Trustee would resolve Claims and other matters involving the Debtors' estates and make distributions to creditors over an 18-month period.

4.  Other Potential Recoveries and Other Potential Claims

In the event Claims related to the Leveraged ESOP Transactions were to go forward, the Debtors believe the recoveries to impaired creditors other than the Senior Lenders in these Chapter 11 Cases in connection with such litigation, if any, will likely be less than if the settlement related to such claims is approved in connection with the Plan. This settlement is described in Article VIII of the Disclosure Statement pertaining to the proposed settlement of Claims related to the Leveraged ESOP Transactions pursuant to the Plan. In addition, as described in this liquidation analysis, irrespective of whether or not such settlement is approved or litigation is pursued, the recoveries to the Senior Lenders and the Bridge Lenders will also likely be lower in a liquidation context than if the Plan is approved.

Liquidation would likely result in additional Claims against the Debtors' Estates, which unless specifically noted have not been quantified. One example would be Claims related to the rejection of those executory contracts and unexpired leases either not assumed by the buyer of those entities sold as a going concern or rejected as a part of the liquidation of those entities whose operations are shut down upon conversion. These rejections would create a larger number of unsecured Claims (and administrative priority Claims in the case of those leases and contracts already assumed by the Debtors). These additional Claims would dilute any potential recoveries to holders of other prepetition unsecured Claims. No attempt has been made to estimate these additional unsecured and/or administrative Claims that may occur in a chapter 7 liquidation.

## Estimated Liquidation Recoveries

($ in 000's)

| Row # | | Tribune Company (Stand Alone) | | | | | Combined Subsidiaries (excludes Tribune Company) | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | $ Book Value | Low $ | Low % Recovery | High $ | High % | $ Book Value | Low $ | Low % Recovery | High $ | High % |
| 1 | Cash | $ 397,709 | $ 397,709 | 100.0% | $ 397,709 | 100.0% | $ 1,117,166 | $ 1,117,166 | 100.0% | $ 1,117,166 | 100.0% |
| 2 | Accounts Receivable | 580 | 348 | 60.0% | 464 | 80.0% | 481,978 | 268,377 | 55.7% | 385,583 | 80.0% |
| 3 | Inventory | - | - | 0.0% | - | 0.0% | 24,731 | 12,365 | 50.0% | 14,839 | 60.0% |
| 4 | Property, Plant & Equipment | 46,190 | 23,965 | 51.9% | 36,930 | 80.0% | 901,842 | 271,318 | 30.1% | 370,808 | 41.1% |
| 5 | GW & Intangibles | - | - | 0.0% | - | 0.0% | 49,695 | - | 0.0% | - | 0.0% |
| 6 | Investments | 17,552,390 | 71,400 | 0.4% | 86,700 | 0.5% | 7,712,406 | 1,163,775 | 15.1% | 1,413,155 | 18.3% |
| 7 | Other Assets | 158,347 | - | 0.0% | 7,917 | 5.0% | 37,486 | - | 0.0% | 1,874 | 5.0% |
| 8 | Book Value of Assets of Going Concern Sale | - | - | 0.0% | - | 0.0% | 3,062,946 | 1,655,028 | 54.0% | 2,009,677 | 65.6% |
| 9 | **Gross Liquidation Proceeds** | $ 18,155,216 | $ 493,422 | 2.7% | $ 529,720 | 2.9% | $ 13,388,251 | $ 4,488,029 | 33.5% | $ 5,313,102 | 39.7% |
| | Less (Costs) Associated with Liquidation | | | | | | | | | | |
| 10 | Professional Fees | | (3,554) | | (4,302) | | | (80,482) | | (99,063) | |
| 11 | Taxes on Dispositions | | (199,877) | | (226,564) | | | (1,093,862) | | (1,414,387) | |
| 12 | Ch.7 Trustee | | (1,914) | | (2,640) | | | (67,413) | | (83,914) | |
| 13 | Sale Period Profit / (Loss) & Equity Income | | - | | - | | | 75,713 | | 106,256 | |
| 14 | Wind Down Costs | | (950) | | (854) | | | (25,492) | | (25,589) | |
| 15 | Severance | | (12,631) | | (12,631) | | | (143,287) | | (149,205) | |
| 16 | **Total Liquidation Costs** | | $ (218,926) | | $ (246,991) | | | $ (1,334,822) | | $ (1,665,909) | |
| 17 | **Value Before I/C & Investment Recovery** | | $ 274,496 | | $ 282,729 | | | $ 3,153,207 | | $ 3,647,193 | |
| | Add Recoveries from I/C Rec. & Inv. | | | | | | | | | | |
| 18 | Admin Priority I/C Receivables | $ 323,470 | $ 321,509 | 99.4% | $ 321,791 | 99.5% | $ 1,119,754 | $ 1,117,725 | 99.8% | $ 1,118,059 | 99.8% |
| 19 | I/C Receivables (Pre-Petition) | 4,021,465 | 66,451 | 1.7% | 94,293 | 2.3% | 26,444,340 | 29,909 | 0.1% | 46,733 | 0.2% |
| 20 | Investments in Subsidiaries | 17,526,159 | - | 0.0% | 6,475 | 0.0% | 9,022,780 | - | 0.0% | 34,447 | 0.4% |
| 21 | **Total Recoveries** | $ 21,871,094 | $ 387,961 | | $ 422,559 | | $ 36,586,874 | $ 1,147,634 | | $ 1,199,240 | |
| 22 | **Value After Recoveries (Before Ch.11 Claims)** | | $ 662,456 | | $ 705,288 | | | $ 4,300,841 | | $ 4,846,439 | |
| | Less Ch.11 Admin & Priority Claims (Paid) | | | | | | | | | | |
| 23 | Admin Priority I/C Payables | (539,774) | (539,774) | 100.0% | (539,774) | 100.0% | (903,451) | (899,461) | 99.6% | (900,077) | 99.6% |
| 24 | Admin Claims - Ch.11 Trade & Other | (132,950) | (108,188) | 81.4% | (132,950) | 100.0% | (233,676) | (215,520) | 92.2% | (221,627) | 94.8% |
| 25 | Admin Claims - Ch.11 Unpaid Prof Fees | (21,000) | (1,682) | 8.0% | (1,511) | 7.2% | (21,000) | (19,318) | 92.0% | (19,489) | 92.8% |
| 26 | Priority Tax Claims | (160,000) | (12,813) | 8.0% | (11,511) | 7.2% | (160,000) | (147,187) | 92.0% | (148,489) | 92.8% |
| 27 | **Total Ch.11 Claims (Paid)** | $ (853,724) | $ (662,456) | | $ (685,745) | | $ (1,318,127) | $ (1,281,487) | | $ (1,289,682) | |
| 28 | **Value After Ch.11 Admin & Priority Claims Paid** | | $ - | | $ 19,542 | | | $ 3,019,355 | | $ 3,556,757 | |
| | Less Pre-Petition Claims (Paid) | Est. Claim | | | | | Est. Claim | | | | |
| 29 | I/C Claims | $ (16,478,401) | $ - | 0.0% | $ (11,007) | 0.1% | $ (13,987,404) | $ (96,360) | 0.7% | $ (137,681) | 1.0% |
| 30 | Joint & Several Pension Termination Claims | (560,600) | - | 0.0% | - | 0.0% | (560,600) | (521,075) | 92.9% | (560,600) | 100.0% |
| 31 | Senior Debt | (8,789,017) | - | 0.0% | (5,871) | 0.1% | (8,789,017) | (2,027,547) | 23.1% | (2,377,858) | 27.1% |
| 32 | Bridge | (1,619,507) | - | 0.0% | (1,082) | 0.1% | (1,619,507) | (373,606) | 23.1% | (438,156) | 27.1% |
| 33 | Bonds | (1,283,056) | - | 0.0% | (857) | 0.1% | (1,283,056) | - | 0.0% | - | 0.0% |
| 34 | Other General Unsecured Claims | (91,462) | - | 0.0% | (61) | 0.1% | (120,000) | (766) | 0.6% | (1,539) | 1.3% |
| 35 | Subordinated Debt | (994,172) | - | 0.0% | (664) | 0.1% | (994,172) | - | 0.0% | - | 0.0% |
| 36 | **Total Pre-Petition Claims / (Claims Paid)** | $ (29,816,214) | $ - | | $ (19,542) | | $ (27,353,755) | $ (3,019,355) | | $ (3,515,834) | |
| 37 | **Equity Value** | | $ - | | $ - | | | $ - | | $ 40,922 | |

(a) Claims against multiple Debtors are shown as a single amount (i.e. Senior Debt is shown as $8.7b rather than $8.7b times the number of entities against which the Claim applies).

($ in 000's)

| Row # | | Eliminations - Adjustments | | | Combined (Tribune Company & all Subsidiaries) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Book Value $ | Low $ | High $ | $ | Low $ | Low % | High $ | High % |
| | | | | | Book Value | | | | |
| 1 | Cash | | | | $ 1,514,875 | $ 1,514,875 | 100.0% | $ 1,514,875 | 100.0% |
| 2 | Accounts Receivable | | | | 482,558 | 268,725 | 55.7% | 386,047 | 80.0% |
| 3 | Inventory | | | | 24,731 | 12,365 | 50.0% | 14,839 | 60.0% |
| 4 | Property, Plant & Equipment | | | | 948,032 | 295,282 | 31.1% | 407,738 | 43.0% |
| 5 | GW & Intangibles | | | | 49,695 | - | 0.0% | - | 0.0% |
| 6 | Investments | $ (24,840,008) | | | 424,789 | 1,235,175 | 290.8% | 1,499,855 | 353.1% |
| 7 | Other Assets | | | | 195,833 | - | 0.0% | 9,792 | 5.0% |
| 8 | Book Value of Assets of Going Concern Sale | $ (1,708,931) | | | 1,354,016 | 1,655,028 | 122.2% | 2,009,677 | 148.4% |
| 9 | Gross Liquidation Proceeds | $ (26,548,939) | | | $ 4,994,529 | $ 4,981,451 | 99.7% | $ 5,842,822 | 117.0% |
| | Less (Costs) Associated with Liquidation | | | | | | | | |
| 10 | Professional Fees | | | | | (84,035) | | (103,365) | |
| 11 | Taxes on Dispositions | | | | | (1,293,739) | | (1,640,951) | |
| 12 | Ch.7 Trustee | | | | | (69,327) | | (86,554) | |
| 13 | Sale Period Profit / (Loss) & Equity Income | | | | | 75,713 | | 106,256 | |
| 14 | Wind Down Costs | | | | | (26,442) | | (26,443) | |
| 15 | Severance | | | | | (155,918) | | (161,836) | |
| 16 | Total Liquidation Costs | | | | | $ (1,553,748) | | $ (1,912,894) | |
| 17 | Value Before I/C & Investment Recovery | | | | | $ 3,427,703 | | $ 3,929,928 | |
| | Add Recoveries from I/C Rec. & Inv. | | | | | | | | |
| 18 | Admin Priority I/C Receivables | $ (1,443,224) | $ (1,439,235) | $ (1,439,850) | $ - | $ - | 0.0% | $ - | 0.0% |
| 19 | I/C Receivables (Pre-Petition) | $ (30,465,805) | $ (96,360) | $ (141,027) | - | - | 0.0% | - | 0.0% |
| 20 | Investments in Subsidiaries | $ (26,548,939) | $ - | $ (40,922) | - | - | 0.0% | - | 0.0% |
| 21 | Total Recoveries | $ (58,457,968) | $ (1,535,595) | $ (1,621,799) | $ - | $ - | | $ - | |
| 22 | Value After Recoveries (Before Ch.11 Claims) | | | | | $ 3,427,703 | | $ 3,929,928 | |
| | Less Ch.11 Admin & Priority Claims (Paid) | | | | | | | | |
| 23 | Admin Priority I/C Payables | $ 1,443,224 | $ 1,439,235 | $ 1,439,850 | - | - | 0.0% | - | 0.0% |
| 24 | Admin Claims - Ch.11 Trade & Other | | | | (366,626) | (323,708) | 88.3% | (354,578) | 96.7% |
| 25 | Admin Claims - Ch.11 Unpaid Prof Fees | | | | (21,000) | (21,000) | 100.0% | (21,000) | 100.0% |
| 26 | Priority Tax Claims | | | | (160,000) | (160,000) | 100.0% | (160,000) | 100.0% |
| 27 | Total Ch.11 Claims (Paid) | $ 1,443,224 | $ 1,439,235 | $ 1,439,850 | $ (547,626) | $ (504,708) | | $ (535,578) | |
| 28 | Value After Ch.11 Admin & Priority Claims Paid | | $ (96,360) | $ (181,949) | | $ 2,922,994 | | $ 3,394,350 | |
| | Less Pre-Petition Claims (Paid) | Est. Claim | | | Est. Claim | | | | |
| 29 | I/C Claims | $ 30,465,805 | $ 96,360 | $ 148,689 | $ - | $ - | 0.0% | $ - | 0.0% |
| 30 | Joint & Several Pension Termination Claims | | | | (560,600) | (521,075) | 92.9% | (560,600) | 100.0% |
| 31 | Senior Debt | | $ (373,606) | $ (446,317) | (8,789,017) | (2,401,153) | 27.3% | (2,830,046) | 32.2% |
| 32 | Bridge | | $ 373,606 | $ 438,064 | (1,619,507) | - | 0.0% | (1,174) | 0.1% |
| 33 | Bonds | | $ - | $ (73) | (1,283,056) | - | 0.0% | (930) | 0.1% |
| 34 | Other General Unsecured Claims | | | | (211,462) | (766) | 0.4% | (1,601) | 0.8% |
| 35 | Subordinated Debt | | $ - | $ 664 | (994,172) | - | 0.0% | - | 0.0% |
| 36 | Total Pre-Petition Claims / (Claims Paid) | $ 30,465,805 | $ 96,360 | $ 141,027 | $ (13,457,813) | $ (2,922,994) | | $ (3,394,350) | |
| 37 | Equity Value | | $ - | $ (40,922) | $ - | | | $ - | |

(a) Claims against multiple Debtors are shown as a single amount (i.e. Senior Debt is shown as $8.7b rather than $8.7b times the number of entities against which the Claim applies).

6

5. Note on Eliminations / Adjustments

The Eliminations / Adjustments column is used to show (a) the elimination of Intercompany Claim activity and (b) the reallocation of value among pre-petition Claims due to contractual subordination.

| ($000s) | Intercompany Elimination | | | Tribune Intercompany Subordination | | Contractual Subordination Bridge Guarantee Subordination | | Subordinated Debt Adjustment | | TOTAL | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eliminations / Adjustments | Book Value $ | Low $ | High $ | Low $ | High $ | Low $ | High $ | Low $ | High $ | Book Value $ | Low $ | High $ |
| Admin Priority I/C Receivables | (1,443,224) | (1,439,235) | (1,439,850) | | | | | | | (1,443,224) | (1,439,235) | (1,439,850) |
| I/C Receivables (Pre-Petition) | (30,465,805) | (96,360) | (141,027) | | | | | | | (30,465,805) | (96,360) | (141,027) |
| Investments in Subsidiaries | - | - | (40,922) | | | | | | | - | - | (40,922) |
| Total Recoveries | (31,909,029) | (1,535,595) | (1,621,799) | | | | | | | (31,909,029) | (1,535,595) | (1,621,799) |
| Admin Priority I/C Claims | 1,443,224 | 1,439,235 | 1,439,850 | | | | | | | 1,443,224 | 1,439,235 | 1,439,850 |
| Total Ch.11 Claims (Paid) | 1,443,224 | 1,439,235 | 1,439,850 | | | | | | | 1,443,224 | 1,439,235 | 1,439,850 |
| I/C Claims | 30,465,805 | 96,360 | 141,027 | - | 7,662 | | | | | 30,465,805 | 96,360 | 148,689 |
| Senior Debt | | | | - | (7,662) | (373,606) | (438,156) | - | (499) | - | (373,606) | (446,317) |
| Bridge | | | | | | 373,606 | 438,156 | - | (92) | - | 373,606 | 438,064 |
| Bonds | | | | | | | | - | (73) | - | - | (73) |
| Subordinated Debt | | | | | | | | - | 664 | - | - | 664 |
| Total Pre-Petition Claims / (Claims Paid) | 30,465,805 | 96,360 | 141,027 | - | - | - | - | - | - | 30,465,805 | 96,360 | 141,027 |
| Total Eliminations / Adjustments | - | - | (40,922) | - | - | - | - | - | - | - | - | (40,922) |

The Intercompany Elimination nets the offsetting payable and receivable balances to zero for presentation purposes to show a total combined liquidation analysis for all of the Tribune Entities.
The Contractual Subordination section details the following adjustments specified under the associated credit agreements:

- Any value that would be distributed to Guarantor Debtors on the account of Intercompany Claims against Tribune Company is redistributed to the Senior Loan Guaranty Claims;

- Any value that would be distributed to the Bridge Loan Guaranty Claims is redistributed to the Senior Loan Guaranty Claims; and
- Any value that would be distributed to the Subordinated Debt Claims (comprised of the EGI-TRB LLC Notes Claims and the PHONES Notes Claims) is redistributed to the Senior Loan Claims, Bridge Loan Claim, and Senior Noteholder Claims on a Pro Rata basis.

## Notes to Specified Lines Items of Liquidation Analysis
**Asset Liquidation Values**

1. **Cash** - 100% recovery of projected available Cash balances as of the Conversion Date. Cash recovery excludes restricted Cash related to (a) approximately $2 million in a segregated utility adequate assurance account and (b) approximately $15.9 million collateralizing a letter of credit. Tribune Company Cash includes $368 million of cash.

2. **Trade Accounts Receivable** – At December 2009, the majority of the advertising trade receivables were held by Tribune Receivables, LLC ("TREC"), a bankruptcy remote entity, to support an asset backed securitization[5]. The receivables at other Tribune Entities include a mix of single copy newspaper sales, home circulation, commercial printing and delivery and other miscellaneous receivables. The Liquidation Analysis assumes an estimated recovery range of between 55% and 80% of the net book value of advertising accounts receivable at TREC (consistent with the assumptions used under the DIP Facility in the calculation of eligible trade accounts receivable), a recovery of 60% to 80% of the net book value of accounts receivable at the other entities driven by assumed offsets, particularly on circulation and commercial printing and delivery receivables for a combined blended recovery of 56% to 80%.

3. **Inventory** – Inventories are comprised mainly of newsprint, ink and other supplies. Due to the costs associated with transport and handling, and possible shrinkage, the Liquidation Analysis assumes a recovery range of between 50% - 60% of net book value.

4. **Property, Plant & Equipment** includes the following:

   - **Land, Buildings & Leasehold Improvements** – The liquidation value for land and buildings is based upon a review conducted by management, which assumes a discount to prior appraisal information based on (a) current market factors, (b) a forced liquidation of empty buildings in a six-month period, and (c) maintaining the property and removing equipment.

     The majority of the liquidation value relates to properties held by Chicago Tribune Company (including Tribune Tower in downtown Chicago and the Freedom Center printing and distribution complex near downtown Chicago), Los Angeles Times Communications LLC (including the Times Mirror Square office building, printing and distribution center in downtown Los Angeles) and Tribune Company (two properties used for office, printing and distribution by The Baltimore Sun Company). Leasehold improvements are assumed to have no value.

   - **Machinery & Equipment** – Primarily consists of printing presses and related equipment. Given current depressed market conditions with most potential buyers of these assets experiencing financial distress, it is likely that these assets would not command significant value. Therefore the expected recovery range is 5% - 10% of net book value.

   - **Construction in Progress** – Primarily relates to software development and web width reduction projects which are assumed to have no recovery value given the need for additional funding to complete any outstanding projects.

5. **Goodwill & Intangibles** – As part of the Analysis, the Debtors' investment banker surveyed the current publishing marketplace for comparable transactions and was not able to find any recent

---

[5] The Tribune Entities terminated their accounts receivable securitization facility in March 2010. This termination will not have a material impact on the overall recoveries under the Liquidation Analysis.

transactions or public comparables that would lend support to significant value for intangible publishing assets. In addition, any goodwill is assumed to have no value.

6. **Investments** – Investments are assumed to be liquidated through a distressed sale at a 15% to 30% discount to the going concern values determined in the valuation contained in Article XII.B of the Disclosure Statement. The primary investments include Television Food Network, G.P. (31.3% held by non-debtor Tribune (FN) Cable Ventures, Inc.), CareerBuilder, LLC (30.8% held by non-debtor Tribune National Marketing Company), Classified Ventures (27.8% ownership between Tribune Company and non-debtor Tribune National Marketing Company), Legacy.com, Inc. (49.1% owned by Tribune Company), and Chicago Baseball Holdings, LLC (5% held by Tribune Sports Network Holdings, LLC, Tribune CNLBC, LLC, Tribune DQ, LLC, and Tribune WFPT, LLC).

7. **Other Assets** –Includes prepaid, deposits, tax refunds receivable and other sundry assets which are assumed to have minimal value in a liquidation.

8. **Assets Sold as a Going Concern** –The Liquidation Analysis separates out the book value of assets of entities that are sold as a going concern. See Global Note #3 above for explanation of how the going concern value was discounted to obtain the liquidation value. The following are the entities assumed to be sold as going concerns under a distressed sale:

| Legal Entity Name | Legal Entity Name |
|---|---|
| 1 Chicagoland Television News, Inc. | 13 KSWB Inc. |
| 2 Oak Brook Productions, Inc. | 14 Forsalebyowner.com Corp. |
| 3 KIAH Inc. | 15 Forsalebyowner.com Referral Services, LLC |
| 4 KPLR, Inc. | 16 Tribune Television Company |
| 5 KTLA Inc. | 17 Tribune Television New Orleans, Inc. |
| 6 Channel 40, Inc. | 18 Tribune Television Holdings, Inc. |
| 7 KWGN, Inc. | 19 Tribune Television Northwest, Inc. |
| 8 Tribune Media Services, Inc. | 20 WDCW Broadcasting, Inc. |
| 9 Tribune Media Services B.V. | 21 Tower Distribution Company |
| 10 TMS Entertainment Guides Canada Corp | 22 WGN Continental Broadcasting Company |
| 11 Tribune Hong Kong Ltd. | 23 WPIX, Inc. |
| 12 Tribune Broadcast Holdings, Inc. | 24 Channel 39, Inc. |
| | 25 Los Angeles Times International, Ltd |

10. **Professional Fees** – Includes investment banking fees and real estate brokerage fees on distressed sales and property dispositions (together compromising 2.0% of liquidation proceeds excluding cash), and chapter 7 professional fees estimated at 0.6% of liquidation proceeds excluding cash.

11. **Taxes on Disposition** - Management and its advisors have estimated the taxes that would be paid on the net gains on the disposition of the assets of the Tribune Entities, at an assumed tax rate of 41%.

12. **Chapter 7 Trustee Fees** –Although section 326 of the Bankruptcy Code provides for statutory Trustee fees of 3.0% for liquidation proceeds in excess of $1,000,000, the Liquidation Analysis assumes that the Bankruptcy Court will only authorize Trustee fees of 2.0% of liquidation proceeds

9

excluding cash. Should the Bankruptcy Court authorize Trustee fees in excess of 2.0%, the liquidation proceeds available for distribution would be reduced.

13. **Sale Period Profit / (Loss)** –For those Tribune Entities that are assumed to be sold as a going concern, the Liquidation Analysis assumes that those entities will continue to operate during a six month sale period. Therefore the Liquidation Analysis includes an estimated Sale Period Profit / (Loss) equal to a 30% (High) to 50% (Low) discount to 6 months of the budgeted 2010 operating cash flow. The discount factors in reduced performance and potential additional employee retention costs during a distressed sale.

14. **Wind Down Costs** –For those entities to be Shut Down, the Liquidation Analysis assumes that operations would immediately cease upon filing of chapter 7, (e.g.; publishing entities would stop printing newspapers), and the majority of the staff would be severed (see Note 15), with minimal staff remaining to assist in the shutdown of operations and assist the chapter 7 Trustee in the wind down and sale of individual assets.
Costs associated with the limited operation of corporate functions during the liquidation (including finance, technology, human resource and property service centers) are allocated to all the Tribune Entities on a Pro Rata basis, based upon Gross Liquidation Proceeds. These functions will support the collection of accounts receivable, the termination of employees, the management of payroll remittances, the ongoing operations of Tribune Entities to be sold, the maintenance and closing of accounting records, and the preparation of estate tax returns and the management of asset sales during the liquidation period. These costs assume that the current corporate and service center head count of approximately 840 is immediately reduced to approximately 165 upon filing for chapter 7, and by the end of the 6 month liquidation period has been reduced to 66 full time employees. The Liquidation Analysis assumes that employees retained beyond the start of the liquidation process are paid stay bonuses equal to three months of their base salary.

15. **Employee Severance Costs** - Employee severance is based upon the Court approved severance policy. The Liquidation Analysis assumes that for any entity sold as a going concern, the buyer(s) would offer employment to all current employees and therefore the estate would not incur any severance related costs for these entities. Pursuant to the Court approved severance policy, the Analysis assumes lump sum payments without benefits continuation for all employees of entities that are liquidated. In certain instances there is insufficient value to satisfy the severance Claims in full resulting in less than 100% recovery on these Claims.

**Recoveries from Intercompany Balances and Investments in Subsidiaries**

18. **Administrative Priority Intercompany Receivables** –These are net Intercompany receivable and payable balances that have arisen since the commencement of the Chapter 11 Cases.[6] Per the Final Order (I) Approving Cash Management Systems, (II) Authorizing Use of Prepetition Bank Accounts and Business Forms, and (III) Granting Superpriority Expense Status to Postpetition intercompany Transactions (the "Final Cash Management Order"), these intercompany balances have super priority status and as such are satisfied in advance of all other chapter 11 Claims. Also in accordance with the Final Cash Management Order, the administrative priority intercompany receivables & payables among Tribune Company, Tribune Finance Service Center, Inc., and Tribune Publishing Company are consolidated.

---

[6] For all Debtors, the Intercompany Priority Claims are the balances that have arisen since December 8, 2008, except for Tribune CNLBC LLC, where the balances have arisen since it filed for chapter 11 on October 12, 2009.

The Liquidation Analysis assumes that intercompany Claims are satisfied from the Value After Recoveries and each subsidiary receives value on account of its respective priority intercompany receivables, which in turn is value used to satisfy priority intercompany payables.

19. **Pre-Petition Intercompany Receivables** - Represents the total intercompany amounts owning among the Tribune Entities at the time of the chapter 11 filings. Consistent with the treatment of such Claims under the Final Cash Management Order, pre-petition intercompany Claims and Payables among Tribune Company, Tribune Finance Service Center, Inc., and Tribune Publishing Company are likewise consolidated in accordance with the Final Cash Management Order. The pre-petition intercompany recoveries are adjusted in accordance with the contractual obligations under the various credit and guarantee agreements (see Global Notes 2 & 5).

    The Liquidation Analysis assumes all intercompany balances are valid at the amounts reflected in the books and records of the Tribune Entities without giving effect to any potential challenges to their validity.

20. **Investments in Subsidiaries** –Represents the equity value in direct subsidiaries. For most entities the Claims exceed the value so there is no equity value to distribute to its parent.

**Chapter 11 Administrative Claims**

23. **Administrative Priority Intercompany Claims (See Note 18 Above)**

24. **Chapter 11 Trade Claims** –Administrative Claims arising from operation of the Debtors' businesses post petition and prior to the Conversion Date.[7]

25. **Chapter 11 Unpaid Professional Fees** –Administrative Claims for unpaid professional fees as of the Conversion Date are paid Pro Rata by all of the Debtors.

26. **Priority Tax Claims** –Includes an estimated Allowed amount for existing tax Claims that would occur in a liquidation. Certain existing tax Claims are joint and several liabilities of all of the Debtors and the estimated Allowed amount is consistent with the assumptions with regard to resolving outstanding tax disputes incorporated into the Debtors' business plan. These Claims are assumed to be satisfied in full Pro Rata across all of the Debtors.
    To the extent that there is insufficient value at a given Subsidiary to satisfy its proportionate share of the tax claim, the Liquidation Analysis assumes that value is used Pro Rata from other Tribune Entities to satisfy the tax claim in full.

**Pre-Petition Claims**

After the deduction of chapter 11 administrative priority Claims, as outlined, the Net Liquidation Value at the Tribune Entities is allocated Pro Rata to the pre-petition unsecured Claims at each entity.

29. **Pre-Petition Intercompany Claims (See Note 19 Above)**

---

[7] An estimate for 503(b)(9) Claims is not included as most 503(b)(9) Claims have already been satisfied pursuant to an order of the Bankruptcy Court.

30. **Joint and Several Pension Termination Claims** – The Liquidation Analysis assumes that the Tribune Entities would terminate their various pension plans and therefore the Pension Benefit Guarantee Corporation ("PBGC") would have a claim for the unfunded portion of the pension plans. This is a joint and several liability among all entities and has been estimated with assistance from the Company's actuarial consultants. It does not include potential additional Claims related to any withdrawal from multi-employer plans.

31. **Senior Debt** – Includes the estimated Allowed amounts for the Senior Loan Claims, Senior Loan Guaranty Claims and the Barclay's Swap Claim. The Senior Loan Claims assume that all undrawn prepetition letters of credit, which primarily backstop the self insured portion of the Tribune Entities' workers compensation liability are drawn at the time of the liquidation.

32. **Bridge Debt** – Includes the Bridge Loan Claims and the Bridge Loan Guaranty Claims. As the Bridge Loan Guaranty Claims are subordinated to the Senior Loan Guaranty Claims, the value initially recovered on account of the Bridge Loan Guaranty is reallocated to the Senior Debt Claims (see Global Note 5).

33. **Bond Debt** - The Senior Noteholder Claims are unsecured Claims at Tribune Company, pari-passu with the Senior Debt and Bridge Debt Claims. The Senior Noteholder Claims are also beneficiaries of certain stock pledges; however as there is no equity value in the related entities, these are not reflected in the Liquidation Analysis.

34. **Other General Unsecured Claims** – Includes an estimate of Allowed Claims, including pre-petition trade Claims. Numerous Litigation Claims have been asserted against the Tribune Entities, which the Tribune Entities generally do not believe have validity and are likely to be disallowed. Accordingly these Litigation Claims are not included in the estimate of General Unsecured Claims.

35. **Subordinated Debt Claims** – Includes (i) Exchangeable Subordinated Debentures due 2029 (the "PHONES Notes") (both the unredeemed notes at face value and the unfunded redemptions at redemption value), and (ii) a subordinated promissory note due to EGI-TRB LLC and its assignees (the "EGI-TRB LLC Notes") (see Global Note 5).

37. **Equity Value** – To the extent that a legal entity has sufficient Value After Chapter 11 Administrative and Priority Claims and its Pre-Petition Claims have been repaid in full, the Liquidation Analyses assumes any excess equity value is then available for its respective parent to repay Administrative and Pre-Petition Claims (see Note 20). There is no equity value at Tribune Company.