IN THE UNITED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 08-13141 (KJC) |
| | ) | |
| TRIBUNE COMPANY, et al., | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | Hearing Date: July 13, 2010 at 11:00 a.m. |
| Debtors. | ) | Objection Deadline: July 6, 2010 by 4:00 p.m. |

## MOTION OF IVAN J. BATES FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

Ivan J. Bates ("Mr. Bates" or the "Movant"), by and through his undersigned counsel, hereby files the Motion of Ivan J. Bates for Relief from Automatic Stay under Section 362 of the Bankruptcy Code (the "Motion"). In support of the Motion, the Movant respectfully states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for relief requested herein are 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

2. Mr. Bates is an attorney licensed to practice law in the State of Maryland and maintains his business office in Baltimore City, Maryland.

3. On August 7, 2009, Mr. Bates filed his verified complaint (the "Complaint"), seeking various relief against Defendants Melissa Harris ("Harris"), individually and as an

employee of the Baltimore Sun Company, Julie Bykowicz ("Bykowicz"), individually and as an employee of the Baltimore Sun Company, and The Baltimore Sun Company ("Baltimore Sun") (collectively all defendants will be referred to as the "Defendants"), in the Circuit Court for Baltimore City, Maryland, C.A. No. 24C 0 9004908 (the "Maryland Action").

4. The above-captioned debtors, Tribune Company et al. (the "Debtors") commenced the above-captioned bankruptcy proceeding on December 22, 2008 (the "Petition Date"). Upon information and belief, the Debtors own and operate Defendant Baltimore Sun.

5. Pursuant to the Complaint, Mr. Bates alleges that the Defendants, including the Debtors through their ownership and operation of the Baltimore Sun, published false, misleading and defamatory statements which damaged Mr. Bates' personal and professional reputation. See Complaint at ¶¶ 42, 52 and 58 attached hereto as Exhibit "A".

6. Also in his Complaint, Mr. Bates alleges that because of the extreme and outrageous nature of the Defendants acts, he has suffered and will continue to suffer, severe and extreme emotional distress. Exhibit A ¶¶ 60-66.

7. During the Summer of 2008, the Baltimore Sun published two articles on its website and newspaper that focused on Mr. Bates' testimony at the trial of a former client, Charles Robinson ("Robinson"). Specifically, the articles focused on accusations that Mr. Bates, at the time he represented Robinson, negotiated a contract in which Robinson agreed to pay a sum of $690 in exchange for the victim of the alleged robbery agreeing not to pursue any civil and criminal remedies in connection with the robbery. See Exhibit "A" at ¶14.

8. In particular, on August 8, 2008, the Baltimore Sun published an article on the baltimoresun.com entitled: "'STREET JUSTICE' SEEPS INTO COURT STRATEGY: ACCUSATIONS LINK DEFENSE LAWYER TO DEFENDANTS CULTURE" (hereinafter

"Article 1") Said article was reprinted on or about August 9, 2008 in the Baltimore Sun print newspaper. Both versions of the article were co-authored by Harris and Bykowicz. Id. at ¶ 11.

9. Thereafter, on August 13, 2008, the Baltimore Sun published an article on the baltimoresun.com entitled: "ATTORNEY ACCUSES EX-CLIENT: DEFENSE LAWYER SAYS HE WAS THREATENED" (hereinafter "Article 2") [1]. This article was written by Harris. Id. at ¶ 12.

10. The Articles contains defamatory and libelous statements against Mr. Bates. See Exhibit "A".

11. Through the Maryland Action, Mr. Bates brings claims against the Defendants for defamation, defamation *per se*, tortuous interference with business relationships and intentional infliction of emotional distress.

12. The trial in the Maryland Action is presently going forward against Harris and Bykowicz, but the claims against Baltimore Sun will not go forward if this Court does not grant Plaintiff's Motion for Relief from Stay. See Circuit Court of Maryland Docket Sheet attached as Exhibit "C".

### RELIEF REQUESTED

13. Through his Motion, Movant seeks an Order from this Court granting Plaintiff relief from the automatic stay so that trial in the Maryland Action may go forward against the Baltimore Sun.

### BASIS FOR RELIEF

14. Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay in pertinent part as follows:

"[A] petition filed under ... this title ... operates as a stay ... of –

- (1.) The commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

- (3.) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

Section 362(d) of the Bankruptcy Code provides in pertinent part as follows:

- (d.) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay ...

    - (1.) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

15. The bankruptcy court "shall" lift the automatic stay for "cause." 11 U.S.C. § 326(d)(1). If a creditor seeking relief from the automatic stay makes a *prima facie* case of "cause" for lifting the stay, the burden going forward shifts to the debtor pursuant to Bankruptcy Code § 362(g). See In re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bankr.S.D.N.Y. 1997).

16. Although the term "cause" is not defined in the Bankruptcy Code, whether "cause" exists to lift the automatic stay should be determined on a case by case basis. See Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.), 141 B.R. 574, 576 (Bankr.D.Del. 1992).

17. As is often cited in this Court, In re Rexene provides the "balancing test" to determine whether cause exists to lift the automatic stay. 141 B.R. at 576. Under Rexene, the balancing test looks at three factors to decide whether to lift the automatic stay, including:

---

[1] Collectively Article 1 and Article 2 will be referred to as the "Articles". The Articles are attached as Exhibit "B".

  (a.)  whether prejudice will be caused to the estate or the debtor;

  (b.)  whether hardship to the movant from continuing the stay outweighs any hardship to the debtor; and

  (c.)  whether the movant has a reasonable probability of prevailing on the merits of the suit. Id.

18. Movant has satisfied the three factors set forth in Rexene. With respect to the first factor, no prejudice will befall the Debtors if the Maryland Action is allowed to move forward. The Maryland Action is not related to the bankruptcy proceedings before this Court. To the contrary, Debtors state clearly in their first day pleadings that this bankruptcy was the result of a one-third decrease in cash flow due to an industry-wide drop in advertising revenue. See Affidavit of Chandler Bigelow III, Senior Vice President and Chief Financial Officer of Tribune Company in Support of First Day Motions (the "Affidavit") ¶ 24.

19. At the time of the Petition Date, the parties in the Maryland Action were proceeding with motion practice and the parties have begun the discovery process. As Harris and Bykowicz are employees of the Baltimore Sun, it is vital that the Baltimore Sun remain an active party in the litigation.

20. With respect to the second Rexene factor, the hardship to the movant, the potential prejudice to Mr. Bates from the continuation of the stay strongly outweighs any possible hardship to the Debtors. Movant's claims arose approximately two years ago, following the Debtors' publication of defamatory statements about the Movant. Debtors' actions have irreparably harmed Movant's professional reputation, and have significantly impacted the financial success of his law practice. Movant filed the Maryland Action in an effort to clear his reputation of these false and highly-damaging statements, and deserves an opportunity to proceed with the Maryland Action on the merits.

21. Additionally, in his Complaint Mr. Bates articulates allegations of intentional infliction of emotional distress. Claims relating to personal injuries, such as the infliction of emotional distress, will not be resolved in this Court. Resolution of the claims of emotional distress should be resolved in the Circuit Court of Maryland.

22. Conversely, Debtors will suffer little or no hardship if the action goes forth in Maryland, and any hardship the Debtors would face is small in comparison to that of Mr. Bates. Upon information and belief, Debtors already have defense counsel for themselves, as well as Defendants Harris and Bykowicz. See Exhibit C. The Baltimore Sun, operating as it does in Maryland, would experience less disruption if the Maryland Action proceeded in the original forum. Requiring this matter to proceed before the Delaware Bankruptcy Court would be disruptive and expensive to the Defendants and the Movant.

23. It should be noted that Mr. Bates has incurred considerable legal expenses to prosecute the Maryland Action. Aside from retaining bankruptcy counsel in Delaware, Mr. Bates retained counsel in Maryland.

24. In deciding whether to lift the automatic stay, this Court has also considered general policies, which include:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case . . . 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the proceeding; and 12) impact of the stay on the parties and the balance of the harms.

In re: SCO Group, Inc., 395 B.R. at 857-858.

25. The factors discussed by the court in SCO Group strongly weigh in Movant's favor. The Maryland Action has no effect on Debtors need to reorganize in bankruptcy.

26. Moreover, judicial economy strongly weighs in favor of trying Movant's claims in Maryland. Discovery, witnesses and the locale of Mr. Bates' practice are all located in Maryland.

27. Lastly, the balance of the harms significantly weighs in Movant's favor. Mr. Bates should be allowed the opportunity to attempt to clear his name in a timely manner. His professional reputation is at stake, and he will continue to suffer severe pecuniary harm with respect to his business if this Court does not grant Movant relief from the automatic stay. Conversely, the Debtors will not be harmed if the stay is lifted with respect to Movant.

WHEREFORE, Ivan J. Bates respectfully requests the entry of an order substantially in the form attached as Exhibit "D", granting (i) relief from the automatic stay to allow for the continuation and resolution of the Maryland Action against the Baltimore Sun, seek damages against Debtors, and to apply the proceeds of insurance to the extent such proceeds are available to any judgment and attorneys' fees and costs that may arise as a consequence of the litigation of Mr. Bates' claims, and (ii) such other relief as is deemed just and proper.

**FOX ROTHSCHILD LLP**

/s/ DANIELLE S. BLOUNT, ESQUIRE
L. Jason Cornell, Esquire (No. 3821)
Danielle S. Blount, Esquire (No. 5135)
919 North Market Street, Suite 810
Wilmington, DE 19899-2323
302/654-7444; 302/656-8920 (fax)

*Attorneys for Ivan J. Bates*

Dated: June 8, 2010