# Exhibit B

www.baltimoresun.com/news/local/baltimore_city/bal-lawyer0808,0,4339526.story

# baltimoresun.com

**From Saturday's Sun**

## 'Street justice' seeps into court strategy

### Accusations link defense lawyers to defendants' culture

By Julie Bykowicz and Melissa Harris

Sun reporters

8:45 PM EDT, August 8, 2008

In two trials this week, Baltimore defense attorneys took the witness stand to defend themselves against allegations of witness tampering -- evidence, prosecutors say, of some attorneys' willingness to push the boundaries by playing into the city's "street justice" culture.

Friday, a judge ruled that a jury can hear testimony from a prosecution witness who said defense attorney Leslie Stein urged him to change his story, telling him that "people don't last long when they snitch."

Baltimore Circuit Judge Timothy Doory said he didn't necessarily believe the witness, Christopher Meadows, over the 35-year veteran attorney, who denied the allegations. But the judge thought "there was enough there" that the jury in the murder trial of Stein's client, Bryant Williams, 24, should be allowed to decide who's telling the truth.



Stein could not be reached Friday afternoon, but in testimony Thursday, he vigorously denied any improper conduct with Meadows, saying the witness told him he had "made a terrible mistake" in accusing Williams and wanted to right it by changing his testimony at the trial.

In another case, prominent defense attorney Ivan Bates took the stand Tuesday in the robbery trial of Charles Robinson, 31, one of his former clients. Bates was accused of negotiating a contract in which Robinson would pay a victim $690 in exchange for not pursuing civil or criminal "remedies."

When the victim, Richard Felty, testified in the trial, he said Robinson did not look like the person who robbed him. Robinson, who was also charged with obstruction of justice, was acquitted on all counts.

In an interview Friday, Bates denied any wrongdoing. "That contract had nothing to do with Charles Robinson," he said. He asserted it was to prevent a civil action.

"I told the victim he would still have to come to court and he would have to tell the truth," Bates said.

"Honest to God that's what I said."

### 'Rare exception'

Baltimore State's Attorney Patricia C. Jessamy and top deputy state's attorneys met Friday afternoon to review the cases involved, said Jessamy spokeswoman Margaret Burns. She said it would be "totally premature" to say whether prosecutors might press charges, such as obstruction of justice or witness intimidation, against the attorneys.

"This is the rare exception to the regular criminal justice process," Burns said of the hearings this week.

The Maryland Attorney Grievance Commission can also review the allegations. In the past three years, the commission has publicly disciplined about 30 city attorneys - most for financial misconduct.

Several seasoned city prosecutors interviewed this week said the majority of defense attorneys closely adhere to the rules of ethics.

But they said that, even apart from the two trials this week, other recent court proceedings have been hampered by whole groups of witnesses suddenly showing up at the defendants' attorneys' offices to sign affidavits recanting their earlier statements to police.

"When the lawyers are involved, you really have to shake your head," said Assistant State's Attorney Theresa Shaffer, a homicide prosecutor for five years. She and many other prosecutors watched the two-day Stein hearing.

"You try to be optimistic about the defense bar," Shaffer said. "It's a profession. You would hope that people don't stoop to that behavior."

### Just 'baloney'

Defense attorney Warren Brown, who also stopped by the Stein hearing, dismissed the prosecutors' complaints as "baloney." "They need to shut up," he said. "They live in glass houses. Prosecutors, police, defense attorneys, even sometimes judges, all have an objective. Everybody, at times in the midst of the emotional practice of criminal law, finds themselves engaged in practices that somebody could complain about."

The public court hearings this week show that some of the alleged questionable behavior is being reviewed by judges.

In the trial of Charles Robinson, which began last week, his new defense attorney, Christie Needleman, called Bates as a witness to show the jury that her client was not obstructing justice when he made tape-recorded calls from jail to ensure that the victim, Felty, would be paid and wouldn't come to court.

Rather, Needleman said, Robinson was trying to execute a deal Bates had negotiated.

Circuit Judge Shirley Watts stopped Bates from answering many of the prosecutor's questions surrounding the contract. Bates said in an interview Friday that the contract, which was signed by Robinson's mother while her son was in jail, had nothing to do with the criminal trial.

### Attorney's doubts

Needleman said she was doubtful of Bates' version.

"The purpose [of the contract] was to control the outcome of the case," Needleman said in court. "For better or worse, or right or wrong, Bates believed this was a legitimate and legal and lawful way to prevent the state's attorney from picking up the case and forwarding it to trial."

She said in an interview Friday that she had "never seen a contract like that. It's the craziest thing that has ever happened to me in court."

During a bench conference, the judge said that she, too, was "surprised" to see that the contract was facilitated by Bates and drawn up on his letterhead. Bates had probably since realized "it was not the best thing to do," Watts commented.

In the trial of Bryant Williams, Meadows, 26, told authorities on Tuesday about the alleged threats from Stein. On Thursday, the prosecutor asked the judge to include evidence of threats against the witness in the trial and to take Stein off the case. Meadows testified that Stein, in four meetings, urged him to change his testimony.

Stein testified that Meadows, a convicted drug dealer, contacted him and said he wanted to change his testimony at the trial.

Doory said his ruling should not be construed as indicating he doesn't believe Stein. However, he said, the jury should decide who's telling the truth.

**Unusual actions**

Among the facts Doory said he considered were documents showing that Stein signed himself into the jail three times as Meadows' attorney, an "unusual encounter" between the two of them Tuesday in the courthouse lockup, Williams' announcement to a correctional officer that Meadows would not be testifying against him and an audiotaped discussion between Stein and Meadows early Thursday morning.

The judge also said that Stein's own testimony that he was aware of threats between Meadows and Williams was "most damaging."

After the judge's ruling, Stein withdrew from Williams' case. A new date for his murder trial had not been set.

**julie.bykowicz@baltsun.com**

**melissa.harris@baltsun.com**

Copyright © 2008, The Baltimore Sun

www.baltimoresun.com/news/local/baltimore_city/bal-md.lawyer13aug13,0,6535550.story

# baltimoresun.com

## Attorney accuses ex-client

### Defense lawyer says he was threatened

By Melissa Harris

Sun reporter

August 13, 2008

A Baltimore defense attorney who took the stand last week to defend himself against allegations of witness tampering has filed assault and witness retaliation charges against a former client.

Tony N. Garcia is alleging that Charles Robinson, 31, confronted him and demanded that his colleague, defense attorney Ivan Bates, refund him his $2,500 fee. Garcia had assisted Bates with Robinson's case.



When Garcia told Robinson that he wasn't his primary attorney and that Robinson would have to take the matter up with Bates, Robinson replied, "I can walk up on you any time, anywhere. The next time I won't be talking," Garcia alleged in charging documents. Robinson then extended his hand and fingers in the shape of a gun, Garcia wrote.

During Robinson's recent trial on theft and assault charges, his new attorney, Christie Needleman, called Bates and Garcia, who had previously represented him, to the witness stand. She accused Bates of negotiating and Garcia of drawing up an improper contract in which Robinson would pay the victim $690 for not pursuing "civil or criminal remedies."

Bates and Garcia tried to get out of testifying by bringing in their own attorneys and invoking the attorney-client privilege and their Fifth Amendment right to avoid self-incrimination.

Garcia testified that Bates asked him to draw up the contract based on the outcome of negotiations between Robinson's mother and the victim. Garcia wasn't involved in those talks, he testified. Bates denied on the witness stand ever asking Garcia to author the contract, which was on Bates' letterhead.

"The client feels that Ivan Bates left him high and dry to cover for his own mistake," Needleman said. "He feels that Ivan didn't tell the truth on the witness stand and basically denied having anything to do with the contract other than witnessing it. This wouldn't be a big deal if Ivan had said, 'I'm sorry. Here's your money back. I don't feel like I earned it.'"

Needleman said Bates described the agreement to Robinson as a legal method of ensuring that the

victim, tow truck operator Richard Felty, wouldn't show up for trial. Without Felty's testimony, prosecutor Kelly Madigan would have had to drop the charges.

A jury acquitted Robinson of all charges. Felty testified that the man who stole his cell phone and camera during a dispute over a tow looked nothing like Robinson.

During a bench conference, Judge Shirley Marie Watts said the contract was "not the best thing to do," and Bates' attorney said the veteran lawyer's law license was at risk.

Garcia's charges "are retaliation" for embarrassing information appearing in the news media, Robinson's aunt, Richard Etta Smith, said yesterday. "I don't think my nephew did any harm or hurt to the man physically."

Robinson was arrested at the city's Circuit Courthouse yesterday as he was about to appear for a violation-of-probation hearing.

In court records, Garcia alleged that Robinson noticed him Friday at Guilford Avenue and Saratoga Street, got out of a white car driven by a woman, and said, "Tell Bates to give me my money back, and we will be straight."

Efforts by Garcia to explain that he had no control over the money did not placate Robinson.

Garcia wrote that he felt that Robinson, given his "criminal record and history of violence," was "ready, willing and able to carry out" the threats.

Bates and Garcia did not return phone messages.

melissa.harris@baltsun.com

Copyright © 2008, The Baltimore Sun