File No. 1324.004

## UNITED STATES BANKRUPTCY COURT
## STATE OF DELAWARE

IN RE:

Tribune Company,

Debtor.

No.    08-13141

Chapter 11

Judge Kevin J. Carey

# RESPONSE TO NOTICE OF DEBTORS' TWENTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007 AND LOCAL RULE 3007-1

NOW COMES Creditor, Cawley Chicago Portfolio, LLC, by and through its attorneys, Ekl Williams LLC, and for its Response to Debtors' Objection to Claims, states as follows:

1.    On or about May 17, 2010, Debtors filed their Notice of Objection to Claims filed by various creditors, including, Cawley Chicago Portfolio, LLC. The basis of Debtors' objection is that the claim was not filed within the Bar Date established by the Court under the March 26, 2009 Bar Date Order. That Bar Date Order established June 12, 2009 at 4 p.m. (prevailing eastern time) as the Bar Date.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Proof of Claim filed by Cawley Chicago Portfolio, LLC. As evidenced by the Court Clerk stamp, the Proof of Claim was filed on June 12, 2009 at 10:38 a.m. which is within the Bar Date set by the Court. The basis of the claim of Cawley Chicago Portfolio, LLC involves unpaid rent under an unexpired lease.

3.    Attached hereto as Exhibit 2 is the receipt of Epiq Bankruptcy Solutions, LLC

showing the claim of Cawley Chicago Portfolio, LLC as having been received on June 12, 2009.

WHEREFORE, Creditor, Cawley Chicago Portfolio, LLC prays this Court deny Debtors' objection to the claim of Cawley Chicago Portfolio, LLC since it was filed in accordance with the Bar Date Order of this Court.  Cawley Chicago Portfolio, LLC prays this Court enter such other and further relief as this Court deems proper.

Respectfully Submitted,

Ekl Williams LLC
Attorneys for Cawley Chicago Portfolio, LLC

Patrick J. Williams
EKL WILLIAMS LLC
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-0045
/tar (6/8/10)
K:\1324 Kohlstedt\004 Cawley-Tribune\Pleadings\Resposne to Notice of Objection

# EXHIBIT 1



File No. 1324.004

UNITED STATES BANKRUPTCY COURT
STATE OF DELAWARE

IN RE:                                    No.   08-13141

Tribune Company,

                        Debtor.    Chapter 11

                                   Judge Kevin J. Carey

## NOTICE OF FILING

TO:    *See Attached Service List*

    PLEASE TAKE NOTICE that on June 11, 2009 the attached Proof of Claim was filed, via Federal Express, with the United States Bankruptcy Court, State of Delaware, a copy of which is hereby served upon you.

## PROOF OF SERVICE

    I, the undersigned, being first duly sworn and under oath, do hereby state and depose that I served a copy of this Proof of Service, along with a copy of the Proof of Claim to the above noted parties in the manner described on the attached service list on _11th_ day of June, 2009.

Subscribed and sworn to before me
this _11th_ day of June, 2009.

Notary Public

"OFFICIAL SEAL"
DEBRA D. YONKEE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/13/2011

PATRICK J. WILLIAMS
EKL WILLIAMS PLLC
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-0045
/ddy (6/11/09)
K:\1324 Kohlsaat\004 Cawley-Tribune\Pleadings\NOF-POC

## SERVICE LIST

United States Bankruptcy Court
Attn. Claims
824 Market Street, 3rd Floor
Wilmington, DE 19801

U.S. Trustee
844 King Street
Room 2207, Lockbox 35
Wilmington, DE 19899
        *Type of Service:*    *First Class Mail*

Epic Bankruptcy Solutions LLC
757 Third Avenue, Third Floor
New York, NY 10017
        *Type of Service:*    *First Class Mail*

Bryan Krakauer
James F. Conlan
Sidley, Austin, Brown & Wood LLP
One S. Dearborn Street
Chicago, IL 60603
        *Type of Service:*    *First Class Mail*

J. Kate Stickles
Norman L. Pernick
Patrick J. Reilley
Cole, Schotz, Meisel, Forman & Leonard
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
        *Type of Service:*    *First Class Mail*

Michael A. Henry
Gross, McGinley, Labarre & Eaton, LLP
33 S. 7th Street
P.O. Box 4060
Allentown, PA 18105-4060
        *Type of Service:*    *First Class Mail*

Patrick Theordore Garvey
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, IL 60603
        *Type of Service:*    *First Class Mail*

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT    District of Delaware | | PROOF OF CLAIM |
|---|---|---|
| **Name of Debtor:** Tribune Company | | **Case Number:** 08-13141 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Cawley Chicago Portfolio, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>c/o Ekl Williams PLLC, Patrick J. Williams<br><br>901 Warrenville Road, #175, Lisle, IL 60532<br><br>Telephone number: 630-654-0045 | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Cawley Chicago Portfolio, LLC - Series J, Joliet Property<br><br>c/o Craig Manske, Development Solutions, Inc.<br>One North Franklin, #3325, Chicago, IL 60606<br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**      $   75,649.06 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount. |
| If all or part of your claim is secured, complete item 4 below; however, if all or part of your claim is unsecured, do not complete item 4. | |
| If all or part of your claim is entitled to priority, complete item 5. | |
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** Executory Lease<br>(See instruction #2 on reverse side.) | |
| **3.  Last four digits of any number by which creditor identifies debtor:** _____<br><br>     **3a. Debtor may have scheduled account as:** _____<br>         (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>**Value of Property:** $_____  **Annual Interest Rate** ___%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>if any: $_____  **Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6.  Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>6/11/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Patrick J. Williams — Attorney* | FOR COURT USE ONLY |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**EXHIBIT A**

JOLIET, ILLINOIS

## OFFICE AND WAREHOUSE LEASE

December 11

THIS INDENTURE is dated as of ~~December 1~~, 1992 and is by
and between **2115 LIMITED PARTNERSHIP**, an Illinois ~~General~~ Limited
Partnership located at ~~1408 Joliet Road, Suite 201~~, Romeoville,
**IL  60441** ("Lessor") and Chicago Tribune Company, an Illinois
corporation, located at 777 West Chicago Avenue, Chicago,
Illinois  60610 ("Lessee"). → 801 Forestwood

Lessor and Lessee hereby agree as follows:

### ARTICLE 1

### Premises and Term

1.1  Lessor, in consideration of the rent to be paid and the
covenants and conditions to be performed and observed by Lessee
as herein provided, does hereby demise and lease to Lessee, and
Lessee does hereby take and lease from Lessor, the building (the
"Building") consisting of approximately **7,395** rentable square
feet of floor space, and the parcel of real estate on which the
building is located, containing approximately **26,840** square
feet, legally described on Exhibit A, attached hereto and made a
part hereof, and all other improvements located thereon, and
hereditaments, appurtenances, easements, and other rights
attached thereto ("Property") (the Building and Property
collectively referred to as the "Leased Premises").  The Property
is commonly known as 2115 Oak Leaf Street, Joliet, Illinois
60435.  The Building to be constructed by Lessor and shall have
within it **1** recessed truck dock, **4** grade-level overhead doors,
**1000** square feet of finished office space, **6,395** square feet of
warehouse space, and office and warehouse washrooms, and the
Property shall contain parking for **40** automobiles.  Lessee shall
have and hold the Leased Premises for and during the term
commencing on the Commencement Date (as hereinafter defined) and,
if the Commencement Date occurs on the first day of a calendar
month, expiring **ten (10)** years thereafter, or, if the
Commencement Date does not occur on the first day of a calendar
month, expiring on the tenth anniversary of the last day of the
calendar month in which the Commencement Date occurs, unless
sooner terminated as herein provided.  Lessor represents and
warrants that the Leased Premises are, and shall be, during the
term of this Lease, subject to no liens, encumbrances,
conditions, covenants or other exceptions to title other than
those listed on Exhibit B attached hereto and made a part hereof.

1.2  Lessee shall have the right, at its option, to renew
this Lease for **two (2)** additional terms of **5** years each.
Such options may be exercised by Lessee delivering to Lessor
written notice, at least 180 days prior to the end of the then
current term, of Lessee's exercise of its option.  Upon such
exercise by Lessee, the term of this Lease shall be renewed for

☒ 003/024

an additional __5__ year period. Lease rate for renewal terms as follows:

Term 1:    Year 1 – $6.60/rentable sq.ft.
           Year 2 – $6.80/rentable sq.ft.
           Year 3 – $7.00/rentable sq.ft.
           Year 4 – $7.21/rentable sq.ft.
           Year 5 – $7.43/rentable sq.ft.

Term 2:    Year 1 – $7.65/rentable sq.ft.
           Year 2 – $7.88/rentable sq.ft.
           Year 3 – $8.12/rentable sq.ft.
           Year 4 – $8.36/rentable sq.ft.
           Year 5 – $8.61/rentable sq.ft.

## ARTICLE 2

### Rent

2.1  Lessee shall pay as basic rent ("Basic Rent") for the Leased Premises from the Commencement Date of this Lease as follows:

Years 1-3 @ $5.20/rentable sq.ft.    Year  7 @ $5.86/rentable sq.ft.
Year 4    @ $5.36/rentable sq.ft.    Year  8 @ $6.04/rentable sq.ft.
Year 5    @ $5.52/rentable sq.ft.    Year  9 @ $6.22/rentable sq.ft.
Year 6    @ $5.69/rentable sq.ft.    Year 10 @ $6.41/rentable sq.ft.

Base Rent shall be paid in 12 equal monthly installments in advance, on the Commencement Date and on the first day of each calendar month thereafter.  Basic Rent for a period of less than one year or one calendar month shall be adjusted pro rata.  First month's rent shall be payable at Lease execution.

2.2  All rent and any other sums due Lessor hereunder shall be paid in lawful money of the United States of America at such place as Lessor may have designated in a notice to Lessee, and in the absence of such designation, shall be paid to Lessor at the address set forth in the first paragraph of this Lease.

## ARTICLE 3

### Improvements

3.1  Lessor shall, at its own cost and expense, obtain from an environmental consulting firm designated by Lessee, within 30 days after the date of this Lease, a Phase I environmental audit of the Leased Premises.  In the event such audit shows conditions on the Leased Premises that are not acceptable to Lessee, in Lessee's sole discretion, Lessor shall correct such conditions within 30 days thereafter in a manner approved by Lessee, or Lessee shall have the right, by delivering notice to Lessor, to terminate this Lease, whereupon neither party shall have further liability to the other.

3.2  The Building shall be constructed on the Property by Lessor, in a location approved by Lessee.  The Building shall be an

-2-

an additional ___5___ year period.  Lease rate for renewal terms
as follows:

Term 1:  Year 1 - $6.60/rentable sq.ft.
         Year 2 - $6.80/rentable sq.ft.
         Year 3 - $7.00/rentable sq.ft.
         Year 4 - $7.21/rentable sq.ft.
         Year 5 - $7.43/rentable sq.ft.

Term 2:  Year 1 - $7.65/rentable sq.ft.
         Year 2 - $7.88/rentable sq.ft.
         Year 3 - $8.12/rentable sq.ft.
         Year 4 - $8.36/rentable sq.ft.
         Year 5 - $8.61/rentable sq.ft.

## ARTICLE 2

### Rent

2.1  Lessee shall pay as basic rent ("Basic Rent") for the
Leased Premises from the Commencement Date of this Lease as follows:

Years 1-3 @ $5.20/rentable sq.ft.    Year  7 @ $5.86/rentable sq.ft.
Year 4    @ $5.36/rentable sq.ft.    Year  8 @ $6.04/rentable sq.ft.
Year 5    @ $5.52/rentable sq.ft.    Year  9 @ $6.22/rentable sq.ft.
Year 6    @ $5.69/rentable sq.ft.    Year 10 @ $6.41/rentable sq.ft.

Base Rent shall be paid in 12 equal monthly installments in advance,
on the Commencement Date and on the first day of each calendar month
thereafter.  Basic Rent for a period  of less than one year or one
calendar month shall be adjusted pro rata.  First month's rent shall
be payable at Lease execution.

2.2  All rent and any other sums due Lessor hereunder shall be
paid in lawful money of the United States of America at such place
as Lessor may have designated in a notice to Lessee, and in the
absence of such designation, shall be paid to Lessor at the address
set forth in the first paragraph of this Lease.

## ARTICLE 3

### Improvements

3.1  Lessor shall, at its own cost and expense, obtain from an
environmental consulting firm designated by Lessee, within 30 days
after the date of this Lease, a Phase I environmental audit of the
Leased Premises.  In the event such audit shows conditions on the
Leased Premises that are not acceptable to Lessee, in Lessee's sole
discretion, Lessor shall correct such conditions within 30 days
thereafter in a manner approved by Lessee, or Lessee shall have the
right, by delivering notice to Lessor, to terminate this Lease,
whereupon neither party shall have further liability to the other.

3.2  The Building shall be constructed on the Property by
Lessor, in a location approved by Lessee.  The Building shall be an

-2-

<u>1993</u>, Lessee shall have the right, at any time until the Commencement Date does occur, to terminate this Lease upon notice to Lessor, in which event neither party shall have any further liability hereunder.

3.3   Lessor and Lessee acknowledge that this Lease is contingent upon Lessor closing on the purchase of the real estate described in Exhibit A attached hereto.  If Lessor is unable to have such purchase under contract within 30 days of the execution of this Lease, either party shall have the option to cancel this Lease by giving to the other party written notice of cancellation.  If Lessor is unable to close on the purchase of said real estate under contract on or before February 15, 1993, either party shall have the option to cancel this Lease by giving to the other party written notice of cancellation.

3.4   Lessor represents and warrants that all improvements constituting a part of the Leased Premises shall, as of the Commencement Date, comply with all applicable federal, state or municipal governmental, or other governmental or quasi-governmental, laws, ordinances, declarations of park covenants, orders, rules or regulations, including, but not limited to, any applicable zoning and building laws, declarations of park covenants, and ordinances and any environmental requirements of any governmental authority. Lessor further represents and warrants that the Leased Premises may, under applicable zoning laws, declarations of park covenants, and ordinances, be used by Lessee to store and deliver newspapers and other materials, to conduct a newspaper distribution business therefrom, and to operate offices in connection therewith.

<u>ARTICLE 4</u>

<u>Taxes and Assessments</u>

4.1   As rent, in addition to Basic Rent, Lessee shall pay all general real estate taxes and special assessments for public improvements or benefits, for the Leased Premises, which at any time during the term of this Lease may be assessed, levied or imposed upon or become a lien upon the Leased Premises or any part thereof (all of which are herein referred to as "Impositions"); provided, however, that if, by law, any Imposition with respect to the Leased Premises is payable, or may at the option of the taxpayer be paid, in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), the same shall be paid by Lessee, together with any accrued interest on the unpaid balance of such Imposition, in installments as the same respectively become due and Lessee shall be responsible only for those installments that are allocable to the term of this Lease, and provided, further, that any Imposition assessed for, or allocable to, a fiscal period of the taxing authority, a part of which period is included within the term of this Lease, and a part of which is included in a period of time before or after the term of this Lease , shall (whether or not, during the term of this Lease, such Imposition shall be assessed, levied, or imposed upon or become due and payable or a lien upon the

-4-

Leased Premises or any part thereof) be prorated as of the Commencement Date or the termination of the term of this Lease, so that Lessor shall be entirely responsible for that portion of such Imposition allocable to the period of time before or after the termination of the term of this Lease, and Lessee shall be responsible for that portion allocable to the term of this Lease.

4.2  Nothing in this Lease shall require Lessee to pay any franchise, income, excess profits or revenue tax or any other tax, assessment, charge or levy upon the rent, that may be payable by Lessor.

4.3  All bills for Impositions shall be sent to Lessee.  Lessee shall cause all Impositions to be paid to the appropriate taxing authority, on or before the due date for such Imposition, and shall, upon request, provide Lessor with Paid receipts therefor.

4.4  Lessee shall have the right to contest in good faith the amount or validity of any Imposition by appropriate proceedings, and so long as such contest shall operate to prevent the sale of the Leased Premises for non-payment, Lessee shall not be required to pay any such contested Impositions until the contested amount has been finally determined.  Any costs associated with such contest shall be considered an Imposition hereunder.

4.5  Lessee shall receive full benefit of any State of Illinois Enterprise Zone and Des Plaines River Valley incentives and tax abatements received by Lessor, as attached in Exhibit E hereof.

<u>ARTICLE 5</u>

<u>Use of Leased Premises; Signage</u>

5.1  The Leased Premises may be used for any lawful purpose.

5.2  Lessee shall have the right to erect, on the exterior of the Building and at appropriate places chosen by Lessee on the Property, illuminated signs of a size, material and content chosen by Lessee, subject, however to applicable governmental requirements, and the Declaration of Restrictions & Conditions for Oak Leaf Center and amendments thereto, attached hereto as Exhibit B.

5.3  Lessee shall not make or permit any use of the Leased Premises, or any part thereof, which violates any applicable statute, ordinance, regulation or other requirement of any governmental authority, or which constitutes a nuisance, public or private, or a hazard, or which may render void or voidable any insurance then in force pursuant to the provisions of this Lease.

<u>ARTICLE 6</u>
<u>Maintenance and Repair</u>

6.1  Lessor shall make all repairs, alterations, replacements or modifications of any sort that may be necessary in the Leased

-5-

Premises as a result of faulty workmanship or materials used in the construction of the Leased Premises pursuant to Section 3.2 hereof, for a period of one year after the Commencement Date.  Lessor represents and warrants that at the Commencement Date all roof, exterior, interior, and structural portions of the Building and all HVAC, plumbing electrical and other building systems in the Building shall be in good condition and repair, and in good working order, and all roads, parking areas, landscaping and other exterior improvements on the Property shall be in good condition and repair.

6.2   Lessee shall keep the Leased Premises in good condition and repair, ordinary wear and tear and loss by condemnation, fire or other casualty excepted, and in a condition conforming to the requirements of all applicable statutes, ordinances, regulations and other requirements of any governmental authority, and the requirements of all policies of insurance maintained in force on or with respect to the Leased Premises and the Property pursuant to the provisions of this Lease.

<u>ARTICLE 7</u>

<u>Insurance</u>

7.1   Lessee shall, at its own expense, keep the improvements which are now or hereafter a part of the Building insured at all times throughout the term of this Lease, with a fire and extended coverage insurance policy, in an amount equal to 100% of the replacement value for the Building, and such boiler or explosion insurance coverages as may be customary for similarly equipped property.

7.2   Lessee shall, at its own expense, throughout the term of this Lease, maintain comprehensive general liability insurance covering claims for personal and bodily injury or property damage occurring in, on, under, within, upon or about the Leased Premises, or as a result of operations thereon, for limits of not less than $1,000,000 combined single limit for personal and bodily injury or property damage, and workmen's compensation insurance in the statutorily required amounts.

7.3   All policies of insurance provided for in Sections 7.1 and 7.2 (other than workmen's compensation insurance) shall name Lessor and Lessee and Lessor's Mortgagee as named insureds as their respective interests may appear.  All such policies shall provide that they shall not be invalidated by any act or negligence of any party thereunder.  All such policies shall contain an agreement by the insured that such policies shall not be cancelled or materially changed without at least 30 days prior written notice to both Lessor and Lessee.

7.4   Each of the parties hereby waives all claims for recovery from the other party for any loss or damage to any of its property insured (or required hereunder to be insured) under valid and

collectible insurance policies to the extent of any recovery collectible (or which would have been collectible had such insurance required hereunder been obtained) under such insurance policies plus any deductible amounts, and each party hereby waives any right of subrogation that may otherwise accrue to any insurance company or other entity against the other party hereunder.

### ARTICLE 8

### Liens

8.1  Lessor and Lessee shall not suffer or permit any vendor's mechanic's, laborer's or materialman's or similar lien claim to be filed against the Leased Premises or any interest of Lessor or Lessee therein by reason of labor, services or materials supplied or claimed to have been supplied to Lessor or Lessee, respectively (including labor, services or materials supplied in connection with the construction or restoration referred to in Section 3.2 or in Articles 10, 11 and 12 hereof).  If any such lien claim shall at any time be filed against the Leased Premises, the party responsible for the work associated with such lien claim shall, within 30 days after notice of the filing thereof, cause the same to be released and discharged; provided, however, that such responsible party shall have the right to contest in good faith the amount or validity of such lien claim by appropriate proceedings, and so long as such contest shall operate to prevent foreclosure of such lien claim or sale of the Leased Premises for non-payment, the responsible party shall not be required to pay the contested lien claim until the contested amount has finally been determined.

### ARTICLE 9

### Assignment and Subletting

9.1  Lessee shall have the right to assign this Lease or sublet all or any part of the Leased Premises.  Any such assignment or sublease shall not relieve Lessee of its obligations under this Agreement.

### ARTICLE 10

### Condemnation

10.1  If, during the term of this Lease, the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain, or if less than the entire Leased Premises shall be taken, but the improvements which are a part of the Leased Premises cannot, in Lessee's opinion, be repaired, restored or replaced to or operated as an economically useful unit, this Lease shall terminate on the date of vesting of title in condemnor under such eminent domain proceedings (the "Vesting Date"), and all rental and other sums payable by Lessee hereunder shall be prorated to the Vesting Date.

10.2  If less than the entire Leased Premises shall be taken as a result of the exercise of the power of eminent domain, and the improvements can, in Lessee's opinion, be repaired, restored or replaced to or operated as an economically useful unit, this Lease shall not terminate and Lessee shall continue to perform and observe all of its obligations hereunder, provided, however, that Basic Rent and all other sums and charges required to be paid by Lessee under this Lease shall be ratably adjusted as of the Vesting Date.  Lessor shall promptly restore that portion of the improvements not so taken, to an economically useful and architecturally complete unit of the same general character and condition (as nearly as may be possible) as existed before such taking.  Before Lessor shall let any contracts for, or commence the work of, such restoration, and during the course of such restoration, Lessor shall obtain Lessee's prior approval of the plans and specifications therefor and shall restore the improvements in accordance with the plans and specifications that have been approved by Lessee.

10.3  Any condemnation award shall be divided between Lessor and Lessee as their interests may appear.  Lessor and Lessee shall join together in negotiating the amount of any such award.

### ARTICLE 11

### Damage and Restoration

11.1  If any of the improvements which are part of the Leased Premises shall be damaged or destroyed, regardless of the cause, or amount of the loss or the existence of insurance to cover it, Lessor shall restore such improvements as nearly as possible to their value, condition and character immediately prior to the loss, unless such damage or destruction renders more than 30% of the usable space in such improvements untenantable, in which event Lessee shall have the right to terminate this Lease, and in the event of such termination, Lessor shall not be required to restore.  Notice of such termination shall be delivered within 60 days after the date of such damage or destruction.  If Lessee does not terminate this Lease, restoration shall be promptly commenced and diligently pursued to completion, due allowance being made for time needed to adjust insurance and for Force Majeure.  Before Lessor shall let any contracts for, or commence the work of, such restoration, and during the course of such restoration, Lessor shall obtain Lessee's prior approval of the plans and specifications therefor and shall restore the improvements in accordance with the plans and specifications that have been approved by Lessee.

11.2  Insurance proceeds shall be paid jointly to Lessor and Lessee to be used for the restoration of the Leased Premises except if Lessee terminates this Lease pursuant to Section 11.1 above, in which event the proceeds shall be the property of the Lessor.  The amount of any insurance proceeds shall be settled, negotiated and adjusted jointly by Lessor and Lessee.

11.3   There shall be a pro rata abatement of Basic Rent and any other amounts payable hereunder, and the performance of any obligations hereunder, by Lessee in the event of any damage or destruction to the Leased Premises, to the extent and for the time the Leased Premises are not usable for Lessee's business operations. If Lessor terminates this Lease as provided in Section 11.1 above, Basic Rent and all other amounts payable hereunder shall be prorated to the date of such damage or destruction.

## ARTICLE 12

### Changes and Alterations

12.1   Lessee shall have the right, at any time and from time to time during the term of this Lease, to make such changes and alterations to the Leased Premises as Lessee shall deem necessary or desirable in connection with the requirements of its business, subject to the following conditions which Lessee shall observe and perform:

(a) No change or alteration shall be undertaken until Lessee shall have procured and paid for, so far as the same may be required from time to time, all municipal permits and authorizations of the various municipal departments having jurisdiction.

(b) No structural or exterior change or alteration, no change or alteration involving building systems, and no change costing in excess of $10,000 in any one instance, shall be undertaken until plans and specifications have first been submitted to and approved in writing by Lessor, which approval shall not be unreasonably withheld.

(c) All improvements and alterations made or installed by Lessee in or on the Leased Premises shall immediately upon completion or installation thereof be and become a part of the Leased Premises and subject as such to the terms of this Lease.

12.2   Lessor shall make no alterations, additions or modifications to the Leased Premises after the Commencement Date, except as otherwise specified in this Lease.

## ARTICLE 13

### Quiet Enjoyment

13.1   Lessor represents and warrants that, if Lessee shall pay all sums and perform all obligations required of it hereunder, Lessee shall have quiet and peaceful enjoyment of the Leased Premises, and Lessee's possession and use thereof shall not be interfered with or disturbed by Lessor or any party claiming by, through or under Lessor.

-9-

06/11/2009 10:17 FAX                                                      ☑ 011/024

## ARTICLE 14

### General Indemnification

14.1   To the extent permitted by law, Lessor and Lessee shall each defend, indemnify and save harmless the other against and from any and all liabilities, claims, causes of action, suits, demands or judgments arising from any act or negligence of the indemnifying party or any of the indemnifying party's agents, contractors, servants, employees, or licensees; and the indemnifying party shall further indemnify and save harmless the other against and from all costs and expenses, including, without limitation, all attorney's fees, arising in connection therewith or in any proceeding arising therefrom.   The indemnifying party, upon notice from the other, agrees to resist  and defend such action or proceeding and to employ counsel therefor reasonably satisfactory to the other party. Nothing herein contained shall be deemed to indemnify either party against any claim, to the extent arising from and proximately caused by its own acts, omissions, or negligence or that of its own agents, contractors, servants, employees or licensees.

## ARTICLE 15

### Covenant Against Waste; Environmental Covenants

15.1   Lessee covenants not to do or suffer any waste on the Leased Premises.

15.2   Lessee shall not, during the term hereof, generate, treat, recycle, store, release, or dispose of, on the Leased Premises, any polychlorinated biphenyls or equipment containing same, hazardous or toxic substance or waste, special waste, petroleum or petroleum-based substance or waste, product or by-product, or any constituent of any such substance, waste or product (except for hazardous substances lawfully utilized and lawfully disposed of in the normal course of business).   Lessee agrees to hold Lessor harmless and indemnified from and against any liabilities, claims, causes of action, suits, demands, judgments or costs incurred or suffered by Lessor as a result of the generation, treatment, recycling, storing, release or disposal of, on the Leased Premises, any such materials by Lessee.   Lessor represents and warrants that no such materials were generated, treated, recycled, stored, released or disposed of, on the Leased Premises prior to the Commencement Date of this Lease, and agrees that it shall not cause any such materials to be generated, treated, recycled, stored, released or disposed of, anywhere on the Leased Premises during the term of this Lease.   Lessor agrees to hold Lessee harmless and indemnified from and against any liabilities claims, causes of actions, suits, demands, judgments or costs incurred or suffered by Lessee as a result of the generation, treatment, recycling, storing, release or disposal of, on the Leased Premises, any such materials prior to the Commencement Date of this Lease, or by Lessor during the term of this Lease.

-10-

## ARTICLE 16

### Access and Inspection of Leased Premises by Lessor

16.1   Lessee agrees to permit Lessor and the authorized
representatives of Lessor, upon reasonable notice, to enter the
Leased Premises at all times for the purposes of (a) inspecting the
same, and (b) making any necessary repairs to the Leased Premises
and performing any work therein that may be necessary by reason of
Lessee's default under the terms of this Lease.   Nothing herein
shall imply any duty upon the part of Lessor to do any such work
which under any provision of this Lease Lessee may be required to
perform and the performance thereof by Lessor shall not constitute a
waiver of Lessee's default in failing to perform the same.

16.2   Lessor is hereby given the right, at all reasonable times
during the last six months of the term hereunder, to enter the
Leased Premises and to exhibit the same for the purpose of sale or
of renting.

## ARTICLE 17

### Default

17.1   If (i) Lessee shall default in the payment of rent or any
other amounts due under this Lease, and such default shall continue
for 10 days after written notice of default or (ii) if Lessee shall
default in the performance of any other obligation under this Lease
and such default shall continue for 30 days after written notice
thereof given by Lessor to Lessee (or in case of defaults which
cannot be cured within 30 days, if cure is not commenced within 30
days and diligently pursued thereafter), Lessor may, at its option,
elect to terminate this Lease or (without terminating this Lease)
terminate Lessee's right of possession of the Leased Premises.   In
the event of the termination of this Lease or right to possession or
both, as the case may be, Lessor shall attempt to relet the Leased
Premises or any part or parts thereof for the account of Lessee or
otherwise, and receive and collect the rents therefor, applying the
same first to the payment of such expenses as Lessor may have
incurred in recovering possession of the Leased Premises, including
reasonable legal expenses and attorneys' fees, and for putting the
same into good order or condition or preparing  or altering the same
for re-rental, and expenses, commissions and charges paid, assumed
or incurred by Lessor in and about the reletting of the Leased
Premises, and then to the fulfillment of the covenants of Lessee
hereunder.   Any such reletting may be for the remainder of the term
of this Lease or for a longer or shorter period.   In any such case
and whether or not the Leased Premises or any part thereof be relet,
Lessee shall pay to Lessor all amounts due and owing under this
Lease up to the time of such termination of this Lease, or of such
recovery of possession of the Leased Premises by Lessor, as the case
may be, and thereafter, Lessee shall pay to Lessor until the end of
the term of this Lease the equivalent of the amount of all the Basic
Rent reserved herein and all other amounts required to be paid by

-11-

Lessee hereunder, less the net avails of reletting, if any, and the same shall be due and payable by Lessee to Lessor on each of the payment days herein specified.

17.2   Lessor shall not be deemed to be in default in the performance of any obligation required to be performed by it hereunder unless and until it has failed to perform such obligation within 30 days after written notice of default from Lessee to Lessor; provided, however, that if the nature of Lessor's obligation is such that more than 30 days are reasonably required for its performance then Lessor shall not be deemed to be in default if it shall commence such performance within said 30-day period and thereafter diligently prosecute the same to completion.  If Lessor has failed to perform its obligations within said 30-day period (or failed to commence such performance and diligently prosecute the same to completion within said 30-day period if such obligation reasonably requires more than 30 days for its completion), then Lessee shall have the right to terminate this Lease, upon notice to Lessor, or at its option to perform such obligation on behalf of, and for the account of Lessor, and Lessor shall reimburse Lessee for its reasonable expenses incurred in connection with completing such performance within 10 days after receiving an itemized bill therefor.  If Lessor fails to pay such expenses within said 10-day period, Lessee may deduct the amount of such expenses from the next installment of rent becoming due under this Lease until all such expenses have been completely recovered by Lessee.  Lessor shall also be liable to Lessee for such damages as Lessee may suffer as a result of Lessor's default.

## ARTICLE 18

### Holding Over

18.1   If Lessee remains in possession of any part of the Leased Premises, after expiration or termination of the term of this Lease, as it may be extended under Section 1.2 hereof, such continued possession shall, create a month-to-month tenancy on the terms and conditions set forth herein, but at a Basic Rental equal to 150% of the Basic Rental payable prior to the expiration or termination of the term.  Nothing herein contained shall give Lessee any right to hold over beyond expiration or termination of the term of this Lease.

## ARTICLE 19

### Estoppel Certificates

19.1   Lessee shall execute, acknowledge and deliver to Lessor from time to time, within 30 days after request by Lessor, a statement in writing certifying to any party designated in Lessor's request, that this lease is unmodified and in full force and effect (or if there have been modifications that this Lease is in full

-12-

force and effect as modified, stating the modifications), the date to which the Basic Rent has been paid and whether Lessor is, to its knowledge, in default under this Lease, and if in default, specifying each such default. Certificates delivered hereunder may be relied upon by the party or parties to whom the certification is made.

### ARTICLE 20

### Surrender of Leased Premises

20.1  Lessee shall, upon termination of this Lease, surrender to Lessor the Leased Premises in the same order, condition and repair as exist on the Commencement Date, except for ordinary wear and tear and for condemnation or damage from fire or other casualty and for alterations Lessee is permitted to make hereunder. Lessee shall remove all its furniture, furnishings and equipment from the Leased Premises prior to such termination.

### ARTICLE 21

### Applicable Law

21.1  The lease shall be construed and enforced in accordance with laws of the State of Illinois.

### Article 22

### Utilities

22.1  Lessee agrees to pay or cause to be paid all charges for gas, electricity, light, heat, power, telephone, water and sewer charges, and other utilities and services used, rendered or supplied to the Leased Premises. Lessor shall, at its own expense, cause all such utilities used in the Leased Premises to be separately metered.

### ARTICLE 23

### Option to Purchase

23.1  Provided this Lease shall be in full force and effect, and Lessee shall not be in default hereunder at the time and have been given notice of such default by Lessor, Lessee shall have the option to purchase the Leased Premises at the end of the tenth (10th) year of this Lease, upon 180 days prior written notice to the Lessor. In the event the Lessee exercises such option, Lessee shall pay to Lessor on the date of closing ("Selected Settlement Date") a purchase price no greater than Four Hundred Forty-Eight Thousand and no/100 Dollars ($448,000.00). Lessee also reserves the right to purchase by the appraisal method as outlined on attached Exhibit D.

This option to purchase shall also be available to Lessee, upon 180 days prior written notice to Lessor, in the fifth (5th) year of

-13-

each option term.  The price for the Leased Premises shall be determined by the appraisal method as outlined on attached Exhibit D.

Additionally, Lessee shall be extended the Right of First Refusal for the Leased Premises in the event of a proposed sale of the Leased Premises.  Any proposed sale shall be presented in the form of a Letter of Intent.  The Lessee shall have thirty (30) days to exercise the Right of First Refusal during either the original or extended Lease terms.

23.2  After the exercise of such option, Lessor, on the Selected Settlement Date or the next business day if the Selected Settlement Date is a Saturday, Sunday or holiday, shall convey to Lessee good and merchantable title to the Leased Premises, free and clear of all liens and encumbrances, save only "Permitted Exceptions" as hereinafter defined, by good and sufficient recordable general warranty deed.  Title to the Leased Premises shall be evidenced by a commitment, obtained by Lessor within 30 days after exercise of the option by Lessee, for an owners policy of title insurance (which shall be an ALTA Form B Owner's policy) in the amount of the purchase price dated on or after the date of Lessee's exercise of its option, issued by Chicago Title Insurance Company, reflecting Lessee as the proposed insured and showing title in Lessor, with extended coverage over the general exceptions to title then set forth in the printed forms of such commitments, and subject only to the following (herein called "Permitted Exceptions"):

(a)  Any pending procedure under the law of eminent domain in which the award has not been paid in whole or in part and provided Lessor shall assign and transfer to Lessee all rights in such award.

(b)  Liens and encumbrances which may be discharged and released of record by the payment of money in an amount not in excess of the net amount of the purchase price.

(c)  Rights and interests of Lessee under this Lease.

(d)  Things done or suffered by Lessee or by anyone claiming by, through or under Lessee.

(e)  Title matters which are listed on Exhibit B hereto.

(f)  Assignments or subleases permitted under this Lease.

Lessor shall also, at its own expense, deliver to Lessee, within 30 days after exercise of the option, a current ALTA land title survey for the Leased Premises.  The title commitment and survey shall be paid for by Lessor.  If the title commitment or plat of survey to be obtained by Lessor discloses either unpermitted exceptions or survey matters that render the title unmerchantable or show encroachments

-14-

(herein referred to as "survey defects"), Lessor shall have 30 days from the date of delivery thereof to have the exceptions removed from the commitment or to correct such survey defects or to have the title insurer commit to insure against loss or damage that may be occasioned by such exceptions or survey defects, and, if Lessor fails to have the exceptions removed or correct any survey defects, or in the alternative, to obtain the commitment for title insurance specified above as to such exceptions or survey defects within the specified time, Lessee shall have the right to terminate its obligation to purchase and Lessor shall be liable to Lessee for damages; or in the alternative, Lessee may elect, upon notice to Lessor within 10 days after the expiration of the 30-day period, to purchase the Leased Premises, with title as it then is and with the right to deduct from the option price liens or encumbrances of a definite or ascertainable amount. Each title insurance policy or commitment procured hereunder shall be conclusive evidence of good title as shown therein subject only to the exceptions as therein stated. Upon exercise of the option by Lessee, the Leased Premises shall be conveyed and the purchase price paid on the Selected Settlement Date at the offices of Lessee's attorney in Chicago, Illinois, the funds to be paid by certified or cashier's checks. If either party shall notify the other party hereto more than 5 days prior to the Selected Settlement Date that the purchase and sale is to be closed through escrow, then notwithstanding any other provisions hereof the purchase and sale provided for herein shall be closed through escrow in accordance with the general provisions of the usual form of Deed and Money Escrow Agreement then in use by Chicago Title and Trust Company, with such special provisions inserted in the escrow agreement as may be required to conform with the provisions of this Article. Upon the creation of such an escrow, anything herein to the contrary notwithstanding, payment of purchase price and delivery of deed shall be made through the escrow and the cost of such escrow shall be divided equally between Lessor and Lessee. Lessor shall pay all state, county or municipal transfer taxes that may be due in connection with the conveyance of the Leased Premises to Lessee. On the Selected Settlement Date, Lessee shall be entitled to a credit against the purchase price in the amount of unaccrued rent paid in advance of such date. Impositions shall be prorated between parties.

## ARTICLE 24

### Notices

24.1  Each notice, request, demand, consent, approval or other communication which may be or is required to be given under this Lease shall be in writing and shall be deemed to have been properly given when delivered personally at the address designated hereunder for the intended party during normal business hours, or when sent through United States registered or certified mail, return receipt requested, postage prepaid, or by a recognized overnight delivery service, addressed as follows:

| | | |
|---|---|---|
| (a) | If to Lessor: | 2115 Limited Partnership |
| | | c/o RocBaar Real Estate, Inc. |
| | 801 Forestwood, P.O.Box 127R | ~~1408 Joliet Road, Suite 201~~ |
| | | Romeoville, IL  60441 |
| | | |
| | with copy to: | William H. Towle |
| | | Herrick, Peregrine, Towle & Howie |
| | | 1010 Lake Street, Suite 210 |
| | | Oak Park, IL  60301 |
| | | |
| (b) | If to Lessee: | Chicago Tribune Company |
| | | 777 West Chicago Avenue |
| | | Chicago, IL  60610-2489 |
| | | Attn:  Jeffrey A. Elliott |
| | | |
| | with copy to: | The Tribune Company |
| | | 435 N. Michigan Avenue |
| | | Chicago, Illinois  60611-4041 |
| | | Attn:  General Counsel |

or to such other addressee or address, as Lessor or Lessee may from
time to time designate by written notice to the other party.  Each
said notice, request or demand which is delivered in accordance with
this Article shall be deemed given as of the date it is received by
the addressee.


## ARTICLE 25

### Broker

25.1  Lessor and Lessee each warrant to the other that no
broker or finder participated in the negotiation of this Lease or
had any contact with such warranting party in connection with this
Lease, other than __Cushman & Wakefield of Illinois, Inc.__  Each party
agrees to hold the other party harmless and indemnified against any
liability, commission, cost or expense arising from a breach of the
indemnifying party's warranty hereunder.  Lessor shall pay any
commission owing to __Cushman & Wakefield of Illinois, Inc.__ as a
result of this Lease.


## ARTICLE 26

### Miscellaneous

26.1  If any term or provision of this Lease or the application
thereof to any person or circumstance shall, to any extent, be
invalid or unenforceable, the remainder of this Lease, or the
application of such term or provisions to persons or circumstances
other than those as to which it is held invalid or unenforceable,
shall not be affected thereby, and each term and provision of this
Lease shall be valid and be enforced to the fullest extent permitted
by law.

26.2  Provisions setting forth obligations or conditions to be performed or observed by Lessor or Lessee shall be construed as covenants by such party to perform or observe the same.

26.3  The specific remedies to which Lessor or Lessee may resort under the terms of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which they may be lawfully entitled in case of any breach or threatened breach by either of them of any provision of this Lease. The failure of Lessor or Lessee to insist in any one or more cases upon the strict performance of any of the covenants or requirements of this Lease, shall not be construed as a waiver or relinquishment for the future of such covenant or requirement.  In addition to the other remedies in this Lease provided, Lessor and Lessee shall be entitled to the restraint by injunction of the violation of any of the covenants, conditions or provisions of this Lease or to a decree compelling specific performance of any such covenants, conditions or provisions.

26.4  The captions of this Lease are for convenience and reference only and in no way define, limit or describe the scope or intent of this Lease nor in any way affect this Lease.

26.5  This Lease may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts together shall constitute but one and the same agreement which shall be sufficiently evidenced by any such executed counterpart.

26.6  No agreement hereafter made shall be effective to change, modify, discharge or effect an abandonment of this Lease in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

26.7  The covenants and agreements herein contained shall, subject to the provisions of this Lease, bind and inure to the benefit of the heirs, executors, legal representatives, successors and assigns of the respective parties hereto.

26.8  Nothing in this Lease shall be construed as creating a partnership or joint venture between Lessor and Lessee, or cause either party to be responsible in any way for the debts or obligations of the other.

26.9  Time is of the essence of this Lease.

26.10  A short form of this Lease shall be executed by the parties and recorded in the county in which the Leased Premises are located, to give third parties notice of this Lease and of Lessee's option to purchase and other rights hereunder.

26.11  Submission of this Lease by one party for examination by

the other, or execution of this Lease by one party, shall not constitute a binding offer of such party, until this Lease is executed and delivered by both parties.

26.12   Any indemnifications contained in this Lease by either party shall survive the termination of this Lease.

### ARTICLE 27

#### Definitions

27.1   Whenever in this Lease the term "Force Majeure" appears, it shall be construed to mean delays due to strikes, lock-outs, acts of God, inability to obtain labor or materials, governmental restrictions, enemy action, civil commotion, fire, unavoidable casualty or other causes beyond the reasonable control of a party after using diligent efforts including pursuit of all legal or equitable remedies available to such party.  Financial inability of any party shall not be deemed to be a Force Majeure.

27.2   Whenever in this Lease the term "person" is used, it shall mean a natural person, company, corporation, partnership, firm, governmental body, or agency or instrumentality of a governmental body.

27.3   Whenever in this Lease the term "lease year" is used it shall mean a twelve-month period beginning on the Commencement Date, and ending, if the Commencement Date is on the first day of a calendar month, on the day prior to the anniversary of such Commencement Date, or, if the Commencement Date is not on the first day of a calendar month, ending on the anniversary date of the last day of the calendar month in which the Commencement Date occurs; and each succeeding twelve-month period thereafter.

### ARTICLE 28

#### Lease Subordination

28.1   Lessee agrees that the Lease shall be subordinate to any mortgage or trust deed that is now or may hereafter be placed upon the Premises and to any and all advances made or to be made thereunder, and to the interest thereon and all renewals, replacements and extensions thereof, but only on the condition that the mortgagee or trustee enters into a Subordination, Non-Disturbance and Attornment Agreement with the Lessee (and Lessee agrees to enter into such agreement) providing that the rights of Lessee under the Lease, including, without limitation, Lessee's option to purchase, shall remain in full force and effect and its possession of the Premises thereunder shall remain undisturbed during the term of the Lease, and during any renewal or extension thereof in accordance with its terms, provided Lessee shall have performed and shall continue to perform all of the covenants and conditions of the Lease to be by it performed and shall not be in

-18-

default thereunder, provided the mortgagee shall not be liable for any default by Lessor under the Lease, prior to the time it succeeds to Lessor's interest in the Leased Premises.

        IN WITNESS HEREOF, the parties have executed this Lease as of the day and year first above written.

              LESSOR:               2115 Limited Partnership

                              By:   RocBaar Real Estate, Inc.
                                    General Partner

                              By:   _____
                                    Brett A. Baarstad, Vice President


              LESSEE:               Chicago Tribune Company

                              By:   _____
                                    Howard Hay, Vice President

## EXHIBIT A

### LEASED PREMISES

SOUTHERN ONE-THIRD OF LOT 15 IN OAK LEAF CENTER UNIT 5, BEING A
SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 18, TOWNSHIP
35 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING
TO THE PLAT THEREOF RECORDED OCTOBER 11, 1990 AS DOCUMENT NO. R90-
56704, IN WILL COUNTY, ILLINOIS TOGETHER WITH BUILDING TO BE
CONSTRUCTED THEREON.


(EXACT LAND SQUARE FOOTAGE WILL BE CONFIRMED BY SURVEY)


COMMON ADDRESS:   2115 OAK LEAF STREET, JOLIET, IL 60435.

**EXHIBIT B**

**Title Exceptions**

None

**Park Covenants**

as Attached

## EXHIBIT C

### PLANS AND SPECIFICATIONS

Plan dated March 23, 1992 (revised April 3, 1992) as prepared by
Joel Scheckerman Associates, Limited (#9241), and again as revised
on April 16, 1992 as noted on Plan.  Further Plan revisions to occur
as noted by Article 1.1 and Article 3.2 of this Lease.

EXHIBIT D

Appraisal Method for Option to Purchase

In the event, Lessee exercises Option to Purchase as outlined in Article 23, Lessee shall pay to Lessor on the Selected Settlement Date the purchase price as established using the formula as outlined herein.

The price for the Leased Premises, which price shall be paid to Lessor (or as Lessor otherwise directs in writing), shall be the fair market value thereof at the time of purchase. The fair market value of the building at the time of the Purchase Option shall be determined by the written appraisal report of three (3) appraisers appointed as follows: Lessor and Lessee shall, by notice in writing to the other, within fifteen (15) days after Lessee gives notice of election of purchase, appoint an appraiser, and the two appraisers so appointed shall within ten (10) days after the second such appointment appoint a third appraiser. In the event that the two appraisers appointed by the parties are unable to agree upon and appoint a third appraiser within said ten (10) days, the third appraiser shall be appointed by the Chief Judge for the U.S. District Court for the Northern District of Illinois. The fees or these appraisers shall be paid as follows: (i) the appraiser appointed by Lessor shall be paid by Lessor, and (ii) the appraiser appointed by Lessee shall be paid by Lessee, and (iii) the appraiser appointed by the other two appraisers or said Chief Judge shall be paid equally by Lessor and Lessee. The appraisers shall submit a written report to Lessor and Lessee within sixty (60) days after the appointment of the third appraiser. Such report shall state the appraisal value of the property determined by each appraiser as of the date of such report and the average (arithmetic mean) of all of the three (3) appraisal values. Said average shall be the fair market value of the property for purposes of this paragraph.



## LEASE AMENDMENT #1

THIS AMENDMENT #1 TO LEASE, is made and entered this ___1st___ day of December, 2003 by and between 2115 LIMITED PARTNERSHIP ("Lessor") and CHICAGO TRIBUNE COMPANY ("Lessee").

WHEREAS, Lessor and Lessee are parties to that certain Lease dated 8/93 (the "Lease") for the premises known as 2115 Oakleaf, Joliet, Illinois (the "Premises"); and

WHEREAS, the parties wish to modify the Lease pursuant to the terms hereof.

NOW THEREFORE, in consideration of the continued letting of the Premises, the mutual covenants set forth herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree that the following terms and conditions shall become effective with the execution hereof and expressly incorporated into and made a part of the Lease:

1.  This document shall extend the term of the Lease for a period of two (2) years (said period hereinafter referred to as "Extended Term") from September 1, 2003 through August 31, 2005.

2.  The annual rent for Extended Term is as follows:
    Year 1 - $6.60/sq.ft.
    Year 2 - $6.60/sq.ft.

3.  Lessee shall have the right to renew the Extended Term. Such option may be exercised by Lessee delivering to Lessor written notice, at least 180 days prior to the end of the then Extended Term of Lessee's exercise of its option. Rental rate for the two year renewal of the Extended Term shall be $ Above /sq.ft.

4.  Any notice to Lessor which may be required in accordance with the Office and Warehouse Lease shall be addressed as follows: 2115 Limited Partnership, c/o RocBaar Real Estate, Inc. P.O. Box 138, Downers Grove, IL 60515.

5.  All other terms, conditions, provisions and covenants of the Lease not expressly changed hereby shall remain in full force and effect during the Extended Term.

IN WITNESS WHEREOF, Lessor and Lessee have caused this agreement to be executed pursuant to due authority.

LESSOR:                                          LESSEE:

2115 LIMITED PARTNERSHIP          CHICAGO TRIBUNE COMPANY

By RoeBaer Real Estate, Inc.
General Partner

By: _____                       By: _____
Brett A. Baarstad
Vice President

## LEASE AMENDMENT #2

THIS AMENDMENT #2 TO LEASE, is made and entered this __1st__ day of __Sept__, 2005 by and between 2115 LIMITED PARTNERSHIP ("Lessor") and CHICAGO TRIBUNE COMPANY ("Lessee").

WHEREAS, Lessor and Lessee are parties to that certain Lease dated _____ (the "Lease") for the premises known as 2115 _____, Joliet, Illinois (the "Premises"); and

WHEREAS, the parties wish to amend the Lease pursuant to the terms hereof.

NOW THEREFORE, in consideration of the continued letting of the Premises, the mutual covenants set forth herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree that the following terms and conditions shall become effective with the execution hereof and expressly incorporated into and made a part of the Lease:

1.    This document shall extend the term of the Lease for a period of one (1) year (said period hereinafter referred to as "Extended Term") from September 1, 2005 through August 31, 2006 at the same rental rate as is currently being paid by Lessee.

2.    All other terms, conditions, provisions and covenants of the Lease not expressly changed hereby shall remain in full force and effect during the Extended Term.

IN WITNESS WHEREOF, Lessor and Lessee have caused this agreement to be executed pursuant to due authority.

LESSOR:                                          LESSEE:

2115 LIMITED PARTNERSHIP             CHICAGO TRIBUNE COMPANY

By RocBaar Real Estate, Inc.
General Partner

By: _____           By: _____
Its: _____           Its: _Vice President Circulation_
                                                        _and Consumer Marketing_

## LEASE AMENDMENT #3

THIS AMENDMENT #3 TO LEASE, is made and entered this _24th_ day of _August_, 2006 by and between ~~2115 LIMITED PARTNERSHIP~~ ("Lessor") and CHICAGO TRIBUNE COMPANY ("Lessee"). _CAWLEY CHICAGO PORTFOLIO- SERIES J. JOLIET PROPERTY_

WHEREAS, Lessor and Lessee are parties to that certain Lease dated December 11, 1992 (the "Lease") and amended per Lease Amendment dated May 28, 1992, Lease Amendment #2 dated September 26, 2003, and Lease Amendment #2 dated June 1, 2005 all for the premises known as 2115 Oak Leaf Street, Joliet, Illinois (the "Premises"); and

WHEREAS, the parties wish to amend the Lease pursuant to the terms hereof.

NOW, THEREFORE, in consideration of the continued letting of the Premises, the mutual covenants set forth herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree that the following terms and conditions shall become effective with the execution hereof and expressly incorporated into and made a part of the Lease:

1.  This document shall serve as written notice by Lessee to Lessor of its desire to extend the Office and Warehouse Lease an additional one (1) year (said period hereinafter referred to as "Extended Term") from September 1, 2006 through August 31, 2007.  All the terms, conditions, provisions and covenants of the Office and Warehouse Lease shall remain in full force and effect during the Extended Term, provided, however, that the annual rent shall be adjusted as provided below in Paragraph 2 of this Lease Amendment #3.

2.  The annual rent for Extended Term is $6.10/sq.ft.

3.  Lessee shall have the right to renew the Extended Term for an additional period of one year (the "Second Renewal").  Such option may be exercised by Lessee delivering to Lessor written notice, at least 180 days prior to the end of the then Extended Term, of Lessee's exercise of its option.  Rental rate for the Second Renewal shall be $6.65/sq.ft.

4.  Any notice to Lessor which may be required in accordance with the Office and Warehouse Lease shall be addressed as follows: 2115 Limited Partnership, c/o RocBaar Real Estate, Inc., P.O. Box 138, Downers Grove, IL 60515.

5.  All other terms, conditions, provisions and covenants of the Lease not expressly changed hereby shall remain in full force and effect during the Extended Term and the Second Renenwal.

IN WITNESS WHEREOF, Lessor and Lessee have caused this agreement to be executed in their names pursuant to due authority.

LESSOR:

2115 LIMITED PARTNERSHIP

By:  RocBaar Real Estate, Inc.,
        General Partner

By: _____
      Brett A. Baarstad
      Vice President

LESSEE:

CHICAGO TRIBUNE COMPANY

By: _____

<u>LEASE AMENDMENT #4</u>

THIS AMENDMENT #4 TO LEASE, is made and entered this _____ day of _____, 2007 by and between CAWLEY CHICAGO PORTFOLIO LLC. ("Lessor"), successor in interest to 2115 LIMITED PARTNERSHIP and CHICAGO TRIBUNE COMPANY ("Lessee").

WHEREAS, Lessor and Lessee are parties to that certain Lease dated December 11, 1992 (the "Lease") and amended per Lease Amendment dated May 28, 1992, Lease Amendment #2 dated September 26, 2003, and Lease Amendment #2 dated June 1, 2005, and Lease Amendment #3 dated August 24, 2006 (the previous amendments collectively referred to as the "Amendments"), all for the premises known as 2115 Oakleaf St., Joliet, Illinois (the "Premises"); and

WHEREAS, the parties wish to amend the Lease pursuant to the terms hereof.

NOW THEREFORE, in consideration of the continued letting of the Premises, the mutual covenants set forth herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree that the following terms and conditions shall become effective with the execution hereof and expressly incorporated into and made a part of the Lease:

1.  This document shall serve as written notice by Lessee to Lessor of its desire to extend the Lease an additional 4 (four) years and 1 (one) month (said period hereinafter referred to as "Extended Term") from September 1, 2007 through September 30, 2011.  All the terms, conditions, provisions and covenants of the Lease and Amendments shall remain in full force and effect during the Extended Term, provided, however, that the annual rent shall be adjusted as provided below in Paragraph 2 of this Lease Amendment #4.

2.  During the Extended Term, the net rent shall be as follows:

    | | |
    |---|---|
    | 9/1/2007-8/31/2008: | $6.75/sq.ft. |
    | 9/1/2008-8/31/2009: | $6.95/sq.ft. |
    | 9/1/2009-8/31/2010: | $7.16/sq.ft. |
    | 9/1/2010-8/31/2011: | $7.38/sq.ft. |
    | 9/1/2011-9/30/2011: | $7.60/sq.ft. |

3.  All other terms, conditions, provisions and covenants of the Lease and Amendments not expressly changed hereby shall remain in full force and effect during the Extended Term.

IN WITNESS WHEREOF, Lessor and Lessee have caused this agreement to be executed in their names pursuant to due authority.

LESSOR:                                    LESSEE:

CAWLEY CHICAGO PORTFOLIO, LLC.              CHICAGO TRIBUNE COMPANY

By: _____                By: _____
      Daniel P. Cawley
      Managing Partner

**EXHIBIT 2**



P  646 282 2500   F  646 282 2501
757 THIRD AVENUE, NEW YORK, NY 10017
WWW.EPIQSYSTEMS.COM

**** TRB CLMLTR (MERGE2,TXNUM2) 4000093127 ****
CAWLEY CHICAGO PORTFOLIO, LLC
C/O EKL WILLIAMS PLLC
901 WARRENVILLE ROAD # 175
LISLE, IL 60532

August 26, 2009

## ACKNOWLEDGEMENT OF RECEIPT OF PROOF OF CLAIM

This letter serves as acknowledgement that the claim identified below has been recorded
by Epiq Bankruptcy Solutions, LLC, the court-approved claims agent, on the claims
register in the THE TRIBUNE COMPANY case.  To ensure that your claim has been
recorded correctly, please review the following information:

| | |
|---|---|
| Debtor: | TRIBUNE COMPANY |
| Case Number: | 08-13141 |
| Creditor: | CAWLEY CHICAGO PORTFOLIO, LLC |
| Date Received: | 06/12/2009 |
| Claim Number: | 5830 |

*Please note that nothing in this Acknowledgement should be construed to mean or imply
that your claim is being allowed.  The Debtor may elect to object to the identified claim
on various grounds.*

We also strongly encourage you to review your proof of claim on our website at
http://chapter11.epiqsystems.com/TRB.  To find your imaged claim, click on the "Filed
Claims & Schedules" icon at the top of the page, type in your claim number in the
"Claim #" field, and click "Search".  Additionally, you may search for your claim by
typing in your name in the appropriate search field.

If you have any questions, please contact us at 646-282-2400 or via our contact form on
our website at http://www.epiq11.com/contact.aspx.  Please be sure to specify the client
name about which you are inquiring.

EPIQ BANKRUPTCY SOLUTIONS, LLC

File No. 1324.004

# UNITED STATES BANKRUPTCY COURT
## STATE OF DELAWARE

IN RE:

Tribune Company,

Debtor.

No.   08-13141

Chapter 11

Judge Kevin J. Carey

## NOTICE OF FILING

TO:   **_See Attached Service List_**

PLEASE TAKE NOTICE that on  June 8, 2010 the attached Response to Notice of Debtors' Twenty-Seventh  Omnibus Objection to Claims pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1 was filed, via Federal Express with the United States Bankruptcy Court a copy of which is hereby served upon you.

## PROOF OF SERVICE

I, the undersigned, being first duly sworn and under oath, do hereby state and depose that I mailed a copy of the Notice of Filing along with a copy of the aforementioned to the above noted parties at their respective address by depositing said documents in a properly sealed, addressed and postage paid envelope and mailing in the U.S. mail in Lisle, Illinois on June 8, 2010, OR BY Federal Express as designated.

Ekl Williams LLC
901 Warrenville Road - Suite 175
Lisle, IL 60532
(630)654-0045
/tar (6/8/10)
K:\1324 Kohlstedt\004 Cawley-Tribune\Pleadings\NOF-Response

Subscribed and sworn to before me
this 8th day of June, 2010.

Notary Public

"OFFICIAL SEAL"
PATRICIA A. ROMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/3/2013

# SERVICE LIST

United States Bankruptcy Court
 for the District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

U.S. Trustee
844 King Street
Room 2207, Lockbox 35
Wilmington, DE 19899
       *Type of Service:*     *First Class Mail*

Epic Bankruptcy Solutions LLC
757 Third Avenue, Third Floor
New York, NY 10017
       *Type of Service:*     *First Class Mail*

Bryan Krakauer
James F. Conlan
Sidley, Austin, Brown & Wood LLP
One S. Dearborn Street
Chicago, IL 60603
       *Type of Service:*     *Federal Express*

J. Kate Stickles
Norman L. Pernick
Patrick J. Reilley
Cole, Schotz, Meisel, Forman & Leonard
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
       *Type of Service:*     *Federal Express*

Michael A. Henry
Gross, McGinley, Labarre & Eaton, LLP
33 S. 7th Street
P.O. Box 4060
Allentown, PA 18105-4060
       *Type of Service:*     *First Class Mail*

Patrick Theordore Garvey
Johnson & Bell, Ltd.
33 W. Monroe, Suite 2700
Chicago, IL 60603
       *Type of Service:*     *First Class Mail*