**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re <br><br> TRIBUNE COMPANY, et al., <br><br> Debtors. | ) <br> ) <br> ) Chapter 11 <br> ) <br> ) Case No. 08-13141 (KJC) <br> ) <br> ) Jointly Administered <br> ) <br> ) <u>Hearing date</u>: June 16, 2010, at 11:00 a.m. (Eastern) <br> ) <br> ) <u>Objection deadline</u>: June 15, 2010, at 4:00 p.m. (Eastern) <br> ) <br> ) |

**CREDIT AGREEMENT LENDERS' MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS BY JPMORGAN CHASE BANK, N.A.**

The Credit Agreement Lenders[1] hereby move for entry of an order, in substantially the form of the proposed order attached hereto as *Exhibit A*, compelling JPMorgan Chase Bank, N.A. ("JPMorgan"), to produce documents responsive to the *Credit Agreement Lenders' First Request for Production of Documents to JPMorgan Chase Bank, N.A.* (the "Requests"), a copy of which is attached hereto as *Exhibit B*.

**I.    JURISDICTION**

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

2.    The basis for the relief requested is Rules 26 and 37 of the Federal Rules of Civil Procedure and Rules 7026, 7037 and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[1]   The Credit Agreement Lenders are the entities identified in the *Sixth Amended Joint Verified Statement Of Representation Of More Than One Creditor By Hennigan Bennett & Dorman LLP And Young, Conaway, Stargatt & Taylor, LLP* [docket # 4374].

-2-

## II.    INTRODUCTION

3.      JPMorgan is the Administrative Agent under the Credit Agreement pursuant to which the Credit Agreement Lenders hold claims.  The Credit Agreement obligates JPMorgan, as Agent, to maintain a "Register" that includes "the names and addresses of the Lenders" and "the amount of any sum received by the Agent from the Borrower hereunder and each Lender's share thereof."  The Credit Agreement further requires that JPMorgan make the Register "available for inspection by . . . any Lender at any reasonable time and from time to time."

4.      By the Requests, the Credit Agreement Lenders seek the production of this information that the Credit Agreement requires JPMorgan to compile.  Specifically, the Credit Agreement Lenders have asked for (a) the names and addresses of current holders of Credit Agreement debt; and (b) a list of prepetition payments made by the Debtors pursuant to the Credit Agreement.

5.      This information is directly relevant to the Debtors' proposed Plan, as to which solicitation is now underway.  Information regarding the current holders of Credit Agreement debt is necessary to facilitate communication among holders of Credit Agreement claims regarding the Plan and the proposed settlement embodied in it.  Information regarding prepetition payments under the Credit Agreement is necessary to assess the nature and viability of the estates' potential claims for recovery and disgorgement of such payments, all of which are to be waived and released for free, with no consideration given by the payment recipients, under the proposed settlement embodied in the Plan.

6.      Yet, for no apparent reason other than to delay, JPMorgan has refused to produce the requested information.  Rather, JPMorgan has stated that it will allow the Credit Agreement Lenders to review – <u>but not copy</u> – a list of current holders of Credit Agreement claims that includes names but <u>excludes addresses</u>.  JPMorgan has not indicated that it will provide any information whatsoever about the prepetition payments (as to which JPMorgan itself may be the largest recipient).

7.  As this is contrary both to JPMorgan's obligations as Agent under the Credit Agreement and its obligations under the applicable Federal Rules, the Credit Agreement Lenders seek an order compelling JPMorgan's production.

### III. BACKGROUND

8.  JPMorgan supports the proposed Plan and settlement. The Credit Agreement Lenders do not.

9.  One of the Credit Agreement Lenders' primary objections is that the settlement is internally inconsistent. On one hand, the settlement is premised on the assumption that there exists a material risk that some portion of Credit Agreement obligations may be avoided as a fraudulent conveyance. In particular, the settlement requires current holders of Credit Agreement claims to give up $425 million or more of distributions to which they otherwise would be entitled. On the other hand, the settlement provides consideration-free releases of all potential estate claims to recover $2 billion in prepetition payments made by the Debtors under the Credit Agreement – at least some of which would be avoidable and recoverable in the event that the underlying Credit Agreement debt is avoided. The Credit Agreement Lenders believe that it is illogical, inequitable, and unfair to require a contribution from some (current holders of Credit Agreement debt) and not others (prepetition payment recipients) who have the exact same exposure in respect of the exact same claims.

10. JPMorgan recognizes that this is an issue with respect to the Plan. Specifically, as part of the "Settlement Supporter" position statement approved by the Court and included in the solicitation packages sent with the Plan, JPMorgan stated the following (with emphasis as in the original):

> The Credit Agreement Lenders believe that any settlement should be funded, at least in part, from disgorgement recoveries against lenders that received principal and interest debt payments from Tribune. The Settlement Supporters believe that any disgorgement

claims would yield *de minimis* recoveries for the following reasons: (i) there are more than **_nine hundred_** recipients of prepetition payments on account of the Senior Credit Facility alone, several of which no longer exist or have undergone substantial restructuring, making the prospect of a material recovery extremely unlikely and any pursuit of disgorgement prohibitively expensive and complex . . . . The potential benefit of disgorgement claims would thus be dwarfed by the costs of pursuing such claims.[2]

11. The Credit Agreement Lenders served their Requests to obtain the identity of the current holders of Credit Agreement claims (those being asked to support the settlement and vote on the Plan) and to gather information regarding the prepetition payments made under the Credit Agreement – the payments that JPMorgan claims would be too difficult to recover in an avoidance action.

12. The Requests are simple and straightforward. They seek only two things:

- "Documents sufficient to establish the identi[t]y of all current holders of Credit Agreement debt. A single list of the current holders of Credit Agreement debt, together with their addresses, will suffice." Notably, the Credit Agreement Lenders have *not* asked for any information regarding the size of the claims held by other lenders – only for their names and addresses.

- "Documents sufficient to establish the identity and addresses of all entities who received Payments, including but not limited to the more than 900 recipients you reference in Exhibit D to the Disclosure Statement, including the amounts of such Payments. A list of such entities and their addresses, with the dates of Payments and amounts received will suffice"

---

[2] *Notice of Filing Further Revised Compendium of Submissions by Certain Creditors or Creditor Representatives Respecting the LBO-Related Causes of Action and the Global Settlement* [docket # 4696], Ex. A. (Statement of Settlement Supporters) at 3 (emphasis in original). A copy of this "Settlement Supporter" submission is attached hereto as *Exhibit C*.

13. The Credit Agreement Lenders served the Requests on May 25, 2010, pursuant to the Court's *Discovery and Scheduling Order for Plan Confirmation*, which requires that "all parties-in-interest and other persons who are served with written discovery requests shall make their good faith, best efforts to respond to such requests and to complete production of all responsive documents and information <u>within two weeks</u> of receipt of such written discovery requests."[3]

14. Exactly two weeks later, JPMorgan served its Responses,[4] by which JPMorgan refused to provide the requested information. JPMorgan asserted that the information was "irrelevant and not reasonably calculated to lead to the discovery of admissible information" and that it would be "unduly burdensome" to produce the addresses of current holders of Credit Agreement debt, the addresses of the recipients of prepetition payments, or the amounts of the prepetition payments.[5] Rather, JPMorgan stated only that it would "make available for inspection a copy of the register for the recordation of the names of the Lenders, as referred to in Section 8.07(d) of the Credit Agreement."[6]

15. As set forth in the accompanying Certification of Counsel, counsel for JPMorgan subsequently clarified that the "register" that JPMorgan would allow the Credit Agreement Lenders to "inspect" would not include addresses. Counsel for JPMorgan also did not confirm whether the "register" would include information regarding prepetition payment amounts or recipients. Finally, counsel for JPMorgan stated that the Credit Agreement Lenders "would <u>not</u> be permitted to make a photocopy" of that "register."[7]

---

[3] *Discovery and Scheduling Order for Plan Confirmation* [docket # 4366] (the "<u>Discovery Order</u>"), ¶ 2 (emphasis added).

[4] *Responses and Objections of JPMorgan Chase Bank, N.A. to the Credit Agreement Lenders' First Request for Production of Documents* (the "<u>Responses</u>"), a copy of which is attached hereto as *Exhibit D*.

[5] Responses at 6-7.

[6] Responses at 1.

[7] This is reminiscent of JPMorgan's response to an informal request for a copy of the Register made by the Credit Agreement Lenders last year. JPMorgan refused to provide a photocopy of the document and instead required counsel to the Credit Agreement Lenders to read the

16. Having been unable to resolve the issues consensually, the Credit Agreement Lenders had no choice but to file the Motion.

## IV. ARGUMENT

17. The Court's Discovery Order establishes a protocol to deal with plan confirmation discovery issues in an efficient manner, obligating parties to "make their good faith, best efforts to respond to [discovery] requests and to <u>complete</u> production of all responsive documents and information <u>within two weeks</u> of receipt of such written discovery request." JPMorgan has made a mockery of that obligation, waiting until the very last day to respond to the Credit Agreement Lenders' Requests, refusing to produce any information whatsoever, and forcing the Credit Agreement Lenders to consume the Court's time and resources with this Motion. This is the antithesis of "good faith, best efforts."

18. For the reasons set forth below, there are no grounds to withhold the requested information, and JPMorgan must be compelled to produce information responsive to the Requests immediately.

### A. The Request For Information Regarding Current Holders Of Credit Agreement Debt Is Relevant And Not Burdensome.

19. As an initial matter, the names and addresses of current holders of Credit Agreement debt indisputably constitute relevant information at this stage of these proceedings. It is well-settled in the Third Circuit that, following approval of a disclosure statement, creditors have the right to communicate with one another regarding the plan under solicitation and regarding potential alternatives:

> A creditor may receive information from sources other than the disclosure statement. Section 1125 itself defines "typical

---

document (on oversized paper in minuscule type) in the offices of JPMorgan's counsel in New York. Counsel for the Credit Agreement Lenders had barely scratched the surface of the information in the document after four or more hours of note taking – a truly absurd process.

> investor" of a particular class in part, as one having "such ability to obtain such information from sources other than the disclosures required by this section. . . ." 11 U.S.C. § 1125(a)(2)(C). In enacting the bankruptcy code, Congress contemplated that creditors would be in active negotiations with the debtor over the plan. . . . Allowing the bankruptcy court to regulate communications between creditors under the guise of "adequate information" undercuts the very purpose of the statutory requirement. . . .
>
> The ability of a creditor to compare the debtor's proposals against other possibilities is a powerful tool by which to judge the reasonableness of the proposals. A broad exclusivity provision, holding that only the debtor's plan may be "on the table,' takes this tool from creditors. Other creditors will not have comparisons with which to judge the proposals of the debtor's plan, to the benefit of the debtor proposing a reorganization plan. The history of § 1121 gives no indication that Congress intended to benefit the debtor in this way.

*Century Glove, Inc. v First American Bank of New York*, 860 F.2d 94, 100-01, 102 (3d Cir. 1988).

20. The right to communicate with fellow creditors is linked inexorably with the requirement that creditor information be made publicly available. Indeed, the Bankruptcy Rules require that the names and addresses of all creditors to be publicly filed, *see* Fed. R. Bankr. P. 1007(a), and be available for public inspection, *see* 11 U.S.C. § 107(a).

21. Courts called upon to consider the issue of access to creditor information therefore consistently hold that creditor data be made available in order to enhance communications among creditors. For example, the Court in *In re MorAmerica Financial Corp.*,

158 B.R. 135 (Bankr. N.D. Iowa 1993), rejected an attempt to seal the names of creditors, reasoning as follows:

> An open record in this case enhances the likelihood that creditors will confer among themselves as to their best alternatives in this reorganization case. <u>The ability to campaign among one's fellow creditors is an important ability in a bankruptcy case. Sealing of creditor lists inhibits that ability</u>.

*Id.*, 158 B.R. at 137 (emphasis added); *see also In re Foundation for New Era Philanthropy*, 1995 Bankr. LEXIS 2204 at *20 (Bankr. E.D. Pa. May 18, 1995) ("The bankruptcy process is by nature an open one, since it is often not a two party dispute. . . . <u>The negotiation among creditors (including the possible assignment of claims) is a part of the chapter 11 reorganization process which would be hampered were creditor identities kept confidential</u>.") (emphasis added); *In re Lehman Brothers, Inc.*, 2008 Bankr. LEXIS 3543, *8 (Bankr. S.D.N.Y. Nov. 26, 2008) (directing production of list of names and addresses of similarly situated creditors) ("having the ability to contact people with the same kinds of claims may be helpful both in proving the deferred compensation claims and identifying any third parties that potentially may be liable with the debtor").

22. Here, the list of creditors filed by the Debtors is 2,387 pages long and is not categorized by type of claim or creditor,[8] making meaningful communication targeted specifically to Credit Agreement lenders impossible and cost prohibitive. Accordingly, the Credit Agreement Lenders have asked JPMorgan to provide address information with respect to the current holders of Credit Agreement debt.

23. JPMorgan's claim that it would be "burdensome" to provide this information is not credible. First, as noted above, the Credit Agreement under which JPMorgan serves as Agent specifically requires JPMorgan to maintain a list of the names and addresses of the holders

---

[8] *See Certificate of Consolidated List of Creditors* [docket # 17].

of Credit Agreement debt. *See* Credit Agreement § 8.07(d) ("The Agent shall maintain . . . a register for the recordation of the names and addresses of the Lenders and the Commitments of, and principal amount of the Advances owing to, each Lender from time to time.").[9] In fact, as the Court is aware, JPMorgan has been compensated throughout the case for its services in this regard. It cannot possibly be "burdensome" for JPMorgan to provide the information it was hired and paid to record and maintain.

24. Second, the Debtors have indicated that JPMorgan <u>already</u> has compiled this information in response to a request for creditor information to be used in connection with the service of the Disclosure Statement solicitation packages. *See* Transcript of hearing held May 28, 2010, at 9:11-18 ("Mr. Krakauer: . . . There is one other issue that we'd like to get addressed. We've asked the various agents and trustees for the addresses for the mailing list for the solicitation package. And with respect to two parties, we've not been able to get a response, both from the PHONES trustee and from the bridge agent. For whatever reason, we've had a request outstanding for almost a couple weeks, and not gotten any response.") (implying that JPMorgan, as an "agent," willingly provided such information).[10] In any event, if the information has not yet been compiled, it soon will be, as JPMorgan is the one entity with the name and address information necessary for the accurate delivery of solicitation materials to Credit Agreement lenders.

25. Third, there can be no argument that the Credit Agreement Lenders are not parties authorized to access the names and addresses of other holders of Credit Agreement debt. The Credit Agreement Lenders hold billions of dollars of claims against the Debtors, and obviously qualify as parties in interest in these cases. Moreover, as noted above, the Credit Agreement itself provides the Credit Agreement Lenders with an absolute right to access information contained on the register maintained by JPMorgan. *See* Credit Agreement § 8.07(d) ("The

---

[9]  Relevant excerpts of the Credit Agreement are attached hereto as *Exhibit E*.

[10]  An excerpt of this Transcript is attached as *Exhibit F*.

Register shall be available for inspection by Borrower or any Lender at any reasonable time and from time to time upon reasonable prior notice.").

26.     In sum, information regarding the names and addresses of current holders of Credit Agreement debt is relevant and producible.

**B.     The Request For Information Regarding Prepetition Payments Is Relevant And Not Burdensome.**

27.     Information regarding the amounts and recipients of the Debtors' prepetition payments under the Credit Agreement Lenders also is directly relevant to Plan confirmation matters.

28.     JPMorgan's relevance objection is perplexing given that JPMorgan itself has put the nature of the payments and the identity of the recipients directly at issue.  As noted above, JPMorgan has argued that claims for disgorgement of prepetition payments "would yield *de minimis* recoveries" because of, among other things, the sheer number of payment recipients (which, according to JPMorgan, "mak[es] the prospect of a material recovery extremely unlikely and . . . prohibitively expensive and complex").

29.     Information concerning the nature of the payment recipients and the amount of the payments therefore is highly relevant to an evaluation of those assertions, and to the claims that the Plan proposes to waive and release for no consideration.  For example, such information will reveal if there really are "nine hundred recipients of prepetition payments" (as JPMorgan claims) or whether many payments went to affiliated entities who owned Credit Agreement debt in multiple funds (*e.g.*, ABC Fund 1, ABC Fund 2, ABC Fund 3, etc., all at the same address and with the same place of service).  Such information also will reveal the relative size of payments received by the alleged nine hundred recipients, and will show whether (as is highly likely given the presence of a few large initial holders of the debt – most notably, JPMorgan itself) a large proportion of the prepetition payments were received by just a handful of entities, making litigation easily manageable.  At a most basic level, such information also will reveal the identity

of the entities who are to receive free releases under the proposed Plan – information that will be critical to the Court's assessment of the legality and reasonableness of those releases.

30. As with its argument with respect to the names and addresses of current Credit Agreement lenders, JPMorgan's contention that it would be burdensome to provide a list of payment recipients and amounts is simply not credible. Here, once again, the Credit Agreement itself specifically requires JPMorgan to compile and maintain this information:

> The Register maintained by the Agent pursuant to Section 8.07(d) <u>shall include</u> a control account, and a subsidiary account for each Lender, in which accounts (taken together) shall be recorded (i) the date and amount of each Borrowing made hereunder, the Type of Advances comprising such Borrowing and, if appropriate, the Interest Period applicable thereto, (ii) the terms of each Assignment and Acceptance delivered to and accepted by it, (iii) the amount of any principal or interest due and payable or to become due and payable from Borrower to each Lender hereunder and (iv) <u>the amount of any sum received by the Agent from Borrower hereunder and each Lender's share thereof</u>.

Credit Agreement § 2.16(b) (emphasis added).

Further, it is clear that JPMorgan already has prepared and evaluated information containing the identity of the holders of Credit Agreement debt that received prepetition payments. Otherwise, JPMorgan would not have been in a position to argue that the universe of entities receiving such payments consists of "more than ***nine hundred*** recipients" and to claim that "several of [such recipients] no longer exist or have undergone substantial restructuring." JPMorgan cannot access this information for its own purposes and then refuse legitimate requests for the information from others.

31. In sum, information regarding the prepetition payments made by the Debtors pursuant to the Credit Agreement, including names and addresses of recipients and payment amounts and date, is relevant and producible

**V.     CONCLUSION**

For all of the foregoing reasons, the Credit Agreement Lenders respectfully request that this Court enter an Order, substantially in the form attached hereto as *Exhibit A*, compelling JPMorgan immediately to produce documents responsive to the Requests and granting such other and further relief as the Court deems just and proper.

Dated:  June 9, 2010                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ M. Blake Cleary
Robert S. Brady (No. 2847)
M. Blake Cleary (No. 3614)
The Brandywine Building – 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899 0391
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

- and -

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
James O. Johnston
Joshua D. Morse
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone:  (213) 694-1200
Telecopier:  (213) 694-1234

*Counsel to the Credit Agreement Lenders*