# **EXHIBIT C**

*Statement of Settlement Supporters Recommending*

*that Holders of Claims Vote to Accept the Plan*

**STATEMENT OF SETTLEMENT SUPPORTERS RECOMMENDING THAT HOLDERS OF CLAIMS VOTE TO ACCEPT THE PLAN**

The Settlement Supporters[1] comprise a cross section of the Debtors' creditors, including four of the five largest Senior Lenders and other Senior Lenders holding in the aggregate more than $3 billion in claims, the single largest holder of Senior Notes and the successor indenture trustee for certain of the Senior Notes. The LBO-Related Causes of Action seek recoveries from the Senior Lenders and others who participated in the Leveraged ESOP Transactions for the benefit of the Senior Notes and other general unsecured creditors of Tribune. Any ruling on such claims, whether for or against the Debtors' estates, would be adverse to some of the Settlement Supporters and favorable to others. It is therefore significant that, after months of investigations and difficult negotiations, the Settlement Supporters have agreed that the settlement of the LBO-Related Causes of Action (the "Settlement") under the Plan is fair and reasonable in light of the risks to all parties, including litigation-related expense and delay.

**A.    Investigations and Settlement**

The Debtors, the Creditors' Committee (represented by special independent litigation counsel), several of the Settlement Supporters and numerous other parties have painstakingly investigated the LBO-Related Causes of Action. More than 4 million pages of documents have been produced and reviewed by various parties and several depositions were taken. Despite this exhaustive and costly review followed by many months of hard-fought negotiations, the Settlement Supporters continue to disagree regarding the merits of the LBO-Related Causes of Action. The Settlement Supporters do agree, however, that the issues are complex and highly dependent on factual and legal matters as to which the outcome at trial is uncertain. In light of each party's view of the litigation uncertainties and the substantial savings in terms of cost and time value of money that will be realized for the estates and ultimately their creditors through a prompt resolution of the issues, the Settlement Supporters have concluded that there is an overlap between what the Senior Lenders should be willing to pay and what the estates and their unsecured creditors should be willing to accept in settlement of the LBO-Related Causes of Action. The Settlement Supporters believe that a fair and reasonable settlement that avoids what could be years of protracted, prohibitively expensive and value destroying litigation is the best means of preserving and fairly allocating the value of Tribune and its subsidiaries to the parties in interest in these cases.

**B.    Certain Objections Relevant to Evaluation of the Settlement**

To understand the Settlement Supporters' position regarding the Settlement, it is helpful to consider the diametrically opposed objections to the Settlement articulated by Wilmington Trust Company, indenture trustee for the PHONES ("WTC"), which believes the estate's recoveries under the Settlement are too low, and the so-called Credit Agreement Lenders, who believe the Settlement is too high.

*Wilmington Trust Company's Objections*: WTC asserts that the LBO-Related Causes of Action are more valuable than the recoveries under the Settlement and that the PHONES, despite their junior subordinated position, would receive recoveries if such claims were litigated to conclusion. The PHONES have little to lose and much to gain from attacking the Settlement, which, though substantial, is not sufficient to provide recoveries in respect of their junior claims. Because of this, the PHONES have every incentive to challenge the Settlement, rolling the dice at the risk of the Senior Notes to try to extract a recovery. Because the recoveries of Law Debenture, Centerbridge and other holders of Senior Notes *could be either greater or less than the value provided in the Settlement if litigation is pursued in lieu of the Settlement*, they are the appropriate parties to weigh the merits of the Settlement relative to litigating the claims. Law Debenture and Centerbridge's support for the Settlement suggests that the PHONES' opposition is unfounded and reflects nothing more than the natural hold-out bias of an out-of- the-money junior creditor class.

*Credit Agreement Lenders' Objections*: An ad hoc group of certain Senior Lenders argues that the Settlement is unfair because it is too costly for the Senior Lenders and also because there are parties that received prepetition payments on LBO-related debt that are not providing contributions to the Settlement.

---

[1] The Settlement Supporters include Senior Lenders Angelo Gordon & Co. LP, Bank of America, N.A., GoldenTree Asset Management, L.P., Viking Global Performance LLC and JPMorgan Chase Bank, N.A., Senior Notes holder Centerbridge Partners, L.P. and Successor Senior Notes Indenture Trustee Law Debenture Trust Company of New York.

The Settlement Supporters believe that the Settlement can be justified based on the benefits of avoiding the certain cost and delay of litigation and a fair assessment of the merits. JPMorgan and Angelo Gordon agreed to the Settlement in spite of their views as to the merits of the claims largely in order to preserve the enterprise value of Tribune and expedite their recoveries by avoiding what could be years of value destroying litigation. By maximizing the value of Tribune and expediting its emergence, which is the primary purpose of the Settlement, the Settlement redounds to the benefit of *all* Senior Lenders as the residual owners of Tribune, which is why the Settlement is funded equally by all Senior Lenders.

C.    **Law Debenture's and Centerbridge's Views of the Merits of the LBO-Related Causes of Action**

While the Supporting Senior Noteholders believe that the Settlement is fair and reasonable, if the Plan is not confirmed, the Supporting Senior Noteholders intend to cause the Debtors' estates to prosecute the LBO-Related Causes of Action for the benefit of Tribune and its creditors. The Supporting Senior Noteholders believe the litigation would succeed for the following reasons, among others:

- The LBO rendered Tribune insolvent and Tribune did not receive reasonably equivalent value. The LBO rendered the Debtors insolvent by more than tripling the Debtors' debt through the incurrence of over $11 billion in debt that provided no benefit to Tribune or its affiliates. Of the LBO proceeds, approximately $8.3 billion was used to cash out shareholders, $380 million was used to pay professional and other fees related to the LBO and $2.8 billion was used to refinance existing debt as to which Tribune's affiliates were not indebted. Neither the funds used for the share purchase nor the funds used for professional or other fees conferred any value to the Debtors as they were only incurred to facilitate the avoidable obligations and transfers pursuant to the LBO.

- The Two Phase LBO was one integrated transaction. Phase I and Phase II of the LBO are collapsible and the Debtors, Zell and the Senior Lenders understood that the LBO constituted one integrated transaction that closed in two Phases – a fact supported by the interconnectedness of the various agreements and indicated by key transactional documents. In addition, Tribune's Board approved the entire transaction at its April 1, 2007 Board meeting.

- The Credit Agreement guarantees are avoidable as constructively fraudulent transfers because, on an integrated basis, the Debtors did not receive reasonably equivalent value and the LBO rendered the Debtors insolvent. *Even on an individualized basis, Tribune's subsidiaries received no value in exchange for the incurrence of their newfound obligations. The LBO provided no direct value, nor did it provide any indirect value to these entities – not even synergistic benefits.*

- The LBO-Related transfers and obligations are avoidable as intentional fraudulent transfers based on, among other things, the Senior Lenders' knowledge that the LBO would render Tribune insolvent.

- Any claims against the Debtors retained by the Senior Lenders following litigation of the LBO-Related Causes of Action are subject to equitable subordination and, therefore, would not diminish the recoveries for the Senior Noteholders or any of the Debtors' other non-LBO related creditors.

- Upon the successful prosecution of the LBO-Related Causes of Action, the Senior Lenders will have their claims disallowed and will be required to return all monies paid by the Debtors or their affiliates, prepetition or postpetition, on account of the LBO-related debt.

D.    **The Senior Lenders' Views of the Merits of the LBO-Related Causes of Action**

The Senior Lender Settlement Supporters believe that the LBO-Related Causes of Action lack merit for a number of reasons, including:

- Contemporaneous financial analyses show that Tribune was solvent both at the time of the recapitalization and at the time of the merger, and solvency is a complete defense to constructive fraudulent conveyance challenge.

- The recapitalization and the subsequent merger were independent transactions and must be analyzed separately when determining solvency. Even if the Debtors were successful in avoiding the merger loans, the Senior Lenders would be entitled to receive substantially all of the equity of the Reorganized Debtors based on the recapitalization loans alone.

- Even if Tribune's obligations to the Senior Lenders could be avoided on the grounds that Tribune was insolvent at the time of the recapitalization and/or the merger, (i) the Senior Loan guaranties would be insulated from attack because Tribune's guarantor subsidiaries had more than $2 billion less debt than did

.

Tribune at the time and were therefore solvent throughout the relevant period and (ii) more than $3 billion of the Senior Loans were used to refinance existing debt and for other general corporate purposes and would thus be shielded from avoidance.
- The Senior Lenders acted in the good faith belief that Tribune was solvent after giving effect to the recapitalization and merger transactions, and this good faith is a complete defense to any fraudulent conveyance challenges in this case.
- Any litigation outcome that would yield any material recovery to other creditors would require (i) avoidance of both the recapitalization loans and the merger loans, (ii) avoidance of both Tribune's obligations *and* the subsidiary guarantees and (iii) application of unprecedented remedies, such as complete disallowance of the guarantee claims.

The Senior Lender Settlement Supporters and the so-called Credit Agreement Lenders agree that the LBO-Related Causes of Action lack merit, but they disagree as to the amount and sources of funding for the Settlement. The Credit Agreement Lenders believe that any settlement should be funded, at least in part, from disgorgement recoveries against lenders that received principal and interest debt payments from Tribune. The Settlement Supporters believe that any disgorgement claims would yield *de minimis* recoveries for the following reasons: (i) there are more than *nine hundred* recipients of prepetition payments on account of the Senior Credit Facility alone, several of which no longer exist or have undergone substantial restructuring, making the prospect of a material recovery extremely unlikely and any pursuit of disgorgement prohibitively expensive and complex, (ii) disgorgement defendants would have the same (if not more) defenses to disgorgement that current Senior Lenders have to claims avoidance but none of the incentive to settle to facilitate distributions from the estates and (iii) disgorgement defendants would assert revived claims against Tribune and the guarantors for each dollar, if any, disgorged, thus severely diluting recoveries of non-disgorging Senior Lenders. The potential benefit of disgorgement claims would thus be dwarfed by the costs of pursuing such claims.

## E.    Reasons to Support the Settlement

While the Settlement Supporters differ strongly on the merits of the LBO-Related Causes of Action, each has come to the independent conclusion that the Settlement is the right compromise that allows the Debtors to emerge from bankruptcy and permit each to realize value sooner and without lengthy and value-destroying litigation. The Settlement Supporters are confident that through the Plan solicitation process, substantial majorities in each of their classes of creditors will express their agreement. By one month following the announcement of the Settlement and the filing of the Plan, Rule 2019 filings by counsel to the Credit Agreement Lenders disclosed that there were twenty-one fewer Senior Lenders (representing six different funds) in their group, and the amount of the claims held by the group dropped by approximately $1.3 billion. At the same time, four of the five largest Senior Lenders and other Senior Lenders holding in the aggregate more than $3 billion in claims have so far affirmatively expressed their support for the Settlement and the Plan  This is a concrete indication that numerous Senior Lenders in addition to those who are officially supporting the Settlement agree that the Settlement appropriately resolves the LBO-Related Causes of Action. Law Debenture and Centerbridge believe that numerous senior noteholders also support the Settlement (as is evidenced by the absence of material objections to the disclosure statement by any senior noteholder) and will vote in favor of the Plan implementing the Settlement.

The Settlement pays all general unsecured creditors of Tribune's subsidiaries in cash in full. Senior Noteholders will receive approximately $427 million in excess of the amount to which the Debtors submit that they would be entitled in the absence of the LBO-Related Causes of Action. General unsecured creditors of Tribune Company will receive a fixed 35.18% recovery, also substantially in excess of the Debtors' view of their baseline entitlement. The cost to the Senior Lenders of the Settlement, while significant, represents a very small percentage of the Senior Lenders' recovery, and given the complexity of the issues involved, the expense and delay of litigation over the LBO-Related Causes of Action could entail significantly greater costs. Most importantly, the Settlement will allow the Debtors to emerge from bankruptcy protection quickly and stop the massive outlay of administrative expenses, thus maximizing the value of the Debtors' estates to the direct and substantial benefit of all creditors entitled to distributions on their claims.

For all of these reasons, the Settlement Supporters believe that the Settlement provides the best available resolution of these cases.