IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) Chapter 11 |
|  | ) |
| TRIBUNE COMPANY, et al.,[1] | ) Case No. 08-13141 (KJC) |
|  | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) **Related to Docket No. 4620** |
|  | ) **Hearing Date: June 16, 2010 at 11:00 a.m.** |
|  | ) |

## BRIDGE AGENT'S OBJECTION TO
## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO
## IMPLEMENT A MANAGEMENT INCENTIVE PLAN FOR 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Wells Fargo Bank, N.A., solely as successor administrative agent and not individually (in such capacity, the "Bridge Agent") under that certain $1.6 billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among Tribune Company ("Tribune" and, collectively with its affiliated debtors and debtors in possession, the "Debtors"), each lender from time to time party thereto (the "Bridge Lenders") and the other named parties thereto, hereby files this objection (the "Objection") to the Motion (the "2010 MIP Motion") of the Debtors For an Order Authorizing the Debtors To Implement a Management Incentive Plan for 2010 (the "2010 MIP"). [Docket No. 4620]. Capitalized terms used herein but not defined shall have the meanings set forth in the 2010 MIP Motion.

## PRELIMINARY STATEMENT

1.  By the 2010 MIP Motion, the Debtors seek authority to make a substantial distribution from estate assets--nearly $43 million of cash payments--to insiders and beneficiaries of Tribune's existing equity interests after the anticipated consummation of the Debtors' plan of reorganization. The propriety of such distribution should not be immunized from review under the rigors of section 1129 of the Bankruptcy Code simply because the Debtors have sought authority to make them by way of a contemporaneous motion, rather than including the request in the plan itself. Such a result would foist form over substance.

2.  As the Court is well aware, the plan does not under any circumstance provide a full recovery to the Bridge Lenders; if they accept, they get a less than one-half of one cent recovery on their claims; if they reject, the plan provides that they may get more or less, but not payment in full. As such, if the Bridge Lenders reject the plan, in assessing whether the plan satisfies the requirements of 1129(b), the Court will have to determine whether or not any junior class is receiving value under the plan. To the extent the 2010 MIP provides value to members of

a junior class, the propriety of such distribution should be assessed under 1129 and may effect the plan's confirmability.

3. The ability of the Bridge Lenders to raise these issues (and for the Court to consider them) in connection with plan confirmation should not be impeded by the 2010 MIP Motion. Moreover, given the fact that the payments envisioned by the 2010 MIP will not be made in any event until after the Debtors' plan comes on for confirmation, there is no reason to consider the request apart from or prior to confirmation.

4. For the forgoing reasons and as more fully set forth below, the 2010 MIP Motion should be denied outright or adjourned until the confirmation hearing.

## BACKGROUND

5. The Debtors filed the 2010 MIP Motion on May 26, 2010. The 2010 MIP provides for, among other things, payment of up to almost $43 million to management if the Debtors achieve certain financial milestones measured by their operating cash flow.

6. On June 1, 2010 the Debtors filed the sixth iteration of their disclosure statement and plan (the "Sixth Disclosure Statement" and "Sixth Plan", respectively). [Docket No. 4650]. The Sixth Disclosure Statement did not discuss the 2010 MIP Motion.

7. On June 2, 2010, the Bridge Agent filed its second supplemental objection to the Sixth Disclosure Statement (the "Second Supplemental Objection") arguing, among other things, that the Sixth Disclosure Statement did not provide adequate information with regard to the 2010 MIP Motion and noting that the 2010 MIP raised certain confirmation issues. [Docket No. 4658]. As the 2010 MIP specifically relates to confirmation of the Sixth Plan, the Bridge Agent stated that

> The fact that the Debtors are distributing material value to management and current shareholders under a motion filed contemporaneously with the plan

process, rather than doing it directly through the Current Plan, does not immunize the distribution from potential scrutiny under the applicable provisions of section 1129, including 1129(a)(4) (requiring court approval of compensation for services incident to, or in connection with, the case or the plan); 1129(a)(5) (requiring disclosure of compensation to insiders); and 1129(b) (the absolute priority rule, which will be applicable here if the Bridge Lender Class rejects the Current Plan). Second Supplemental Objection at 13.

8. On June 4, 2010, the Debtors filed the seventh iteration of their disclosure statement and plan (the "Current Disclosure Statement" and "Current Plan", respectively). [Docket No. 4690]. The Debtors added to the Current Disclosure Statement, at the Court's direction, disclosure advising creditors as to the filing of the 2010 MIP Motion. Current Disclosure Statement at 41. The Court approved the Current Disclosure Statement and established procedures for solicitation by order dated June 7, 2010. [Docket No. 4707].

9. Under the solicitation order, the Debtors are required to use their "reasonable best efforts to complete mailing of solicitation materials within seven business days", i.e., by June 16, 2010, and the Court established July 30, 2010 as the plan voting deadline, and scheduled August 16, 2010 as the date of commencement of the confirmation hearing. Thus, notwithstanding that the Court directed the Debtors to include disclosure of the 2010 MIP Motion in the Current Disclosure Statement, the Debtors seek approval of the 2010 MIP prior to mailing of the solicitation materials

## OBJECTION

10. The Bridge Agent believes that the 2010 MIP, which provides for post-confirmation payments of up to $43 million to insiders and beneficiaries of Tribune's existing equity interests, should not be immunized from review under Section 1129 of the Bankruptcy Code simply because the Debtors seek its approval through the 2010 MIP Motion, rather than in connection with confirmation of the Current Plan.

NEWYORK 7684338 (2K)

11.     As the Court is aware, the Current Plan does not provide for a full recovery of the claims of the Bridge Lenders. Rather, the Bridge Lenders can accept the proposed recovery of 0.44% of their claims; alternatively, if the Bridge Lender class rejects the Current Plan, the Bridge Lenders will receive some other treatment, which may be more or less than 0.44%, but in no event will be payment in full. As such, under Section 1129(b) of the Bankruptcy Code, the Court will have to determine at confirmation whether or not any junior class is receiving value under the Current Plan. To the extent that the 2010 MIP operates to provide value to creditors or interest holders who are junior to the Bridge Lenders, the 2010 MIP should be evaluated in the confirmation context, because such payments would impact the Debtors' ability to confirm the Current Plan.

12.     In short, the Debtors propose to pay millions of dollars to management under the 2010 MIP, while paying almost nothing on account of the $1.6 billion of claims of the Bridge Lenders. The Court should evaluate these substantial payments to insiders in the context of confirmation of the Current Plan. The Debtors should not be permitted to avoid such scrutiny or moot a confirmation objection by the Bridge Agent simply because they sought approval of the 2010 MIP outside of the confirmation process.

13.     The Bridge Agent also notes that the Debtors are seeking in the context of confirmation of the Current Plan approval of their other incentive plans, including an equity incentive plan, a Transition Management Incentive Plan (the so-called TMIP) and a Key Operators Bonus. Together with the 2010 MIP, these incentive plans may provide for the distribution of millions of dollars of value to insiders. The Bridge Agent respectfully submits that <u>all</u> of these incentive plans should be considered together at confirmation.

## CONCLUSION

14. Based on the foregoing, the Bridge Agent respectfully requests that the Court deny the 2010 MIP Motion and consider the 2010 MIP Motion at the confirmation hearing on the Current Plan.

Dated: June 10, 2010
       Wilmington, Delaware

FOX ROTHSCHILD LLP

By: _____
Jeffrey M. Schlerf, Esq. (No. 3047)
Eric M. Sutty, Esq. (No. 4007)
John H. Strock, Esq. (No. 4965)
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington Delaware 19801
Telephone: (302) 654-7444

-and-

WHITE & CASE LLP
Thomas E Lauria
Gerard Uzzi
David Hille
Andrew Hammond
Scott Greissman
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 819-8113

Attorneys for the Bridge Agent