IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                             :   Chapter 11
                                                   :
TRIBUNE COMPANY, et al.,                           :   Case No. 08-13141 (KJC)
                                                   :
                              Debtors.             :   (Jointly Administered)
                                                   :
                                                   :   Re: Docket Nos. 4733, 4734
                                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JPMORGAN CHASE BANK, N.A.'S RESPONSE TO THE CREDIT AGREEMENT LENDERS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

JPMorgan Chase Bank, N.A. ("JPMorgan"), the Administrative Agent under the Debtors' prepetition Senior Loan Agreement (the "Agent"), hereby submits this objection to the motion of the ad hoc group of Senior Lenders that call themselves the "Credit Agreement Lenders" for entry of an order compelling JPMorgan to produce documents purportedly responsive to the Credit Agreement Lenders' First Request for the Production of Documents to JPMorgan Chase Bank, N.A. (the "Requests").

## I.    INTRODUCTION

1.    The backdrop for the motion to compel is the proposed settlement that the Court will consider at the Confirmation Hearing (the "Settlement").[1] The so-called Credit Agreement Lenders staunchly oppose the Settlement because they believe the Senior Lenders are paying too much to unsecured creditors. Since the Settlement was announced, the Credit Agreement Lenders have repeatedly attacked JPMorgan and the other Settlement proponents and have urged

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Debtors' Disclosure Statement [Docket # 4744].

creditors to vote against the Debtors' Plan of Reorganization ("Plan"). The motion to compel is simply another step in that ongoing campaign to prevent confirmation of the Debtors' Plan.

2.    By their motion, the Credit Agreement Lenders seek to use the Federal Rules of Civil Procedure to force JPMorgan to turn over (i) the names and addresses of current holders of Credit Agreement debt and (ii) the names and addresses of recipients of pre-petition payments made by the Debtors pursuant to the Credit Agreement and the amounts of such payments (the "Lender Contact Information").[2] The Credit Agreement Lenders make no attempt to hide at least one of their principal agendas – they admit that they seek this information "to facilitate communication among holders of Credit Agreement claims regarding the Plan and the proposed settlement embodied in it." Credit Agreement Lenders' Motion to Compel the Production of Documents by JPMorgan Chase Bank, N.A., dated May 25, 2010 ("CAL Motion") ¶ 5.[3] But neither the Federal Rules nor the case law confer on the Credit Agreement Lenders a right to discovery from JPMorgan of the identities and contact information for the lender syndicate for the purpose of soliciting rejections of the Plan. While a party is entitled to discovery of information that is relevant to its claims or defenses and "reasonably calculated to lead to the discovery of admissible evidence," there is no right to seek discovery simply to convince others to vote against a plan of reorganization.

---

[2] As noted below, the Register maintained by JPMorgan does not even contain address information for prepetition lenders who sold their positions, nor does the Credit Agreement require it to contain such information.

[3] Given the nature of the information and the recent activity of some of the Credit Agreement Lenders in the loan trading market, there could, of course, be other undisclosed purposes for seeking the information.

3.      JPMorgan offered to allow the Credit Agreement Lenders to exercise certain rights under the Credit Agreement to inspect the Agent's register of Senior Lenders.[4] The Credit Agreement Lenders rejected JPMorgan's offer, and evidently have declined to access other available means of obtaining at least some of the Lender Contact Information they are seeking.[5] In an effort to avoid the need to bring these issues to the Court, JPMorgan offered to compile and provide to the Credit Agreement Lenders a list of both current and pre-petition Lenders, including amounts paid to pre-petition Lenders and the holdings of current Lenders, on the condition that the information is used for legitimate litigation purposes and not to send mailings or make calls to convince Lenders to vote against the Plan. This offer too was rejected.[6]

4.      The Credit Agreement Lenders half-heartedly suggest that they also seek the requested information to evaluate possible disgorgement claims, but JPMorgan's rejected offers of production, as described above, would have provided them with all of the information needed for that specific purpose. The truth is that evaluating disgorgement claims, which arguably is a legitimate rationale associated with potential confirmation litigation for seeking the information, is not the Credit Agreement Lenders' real goal.

---

[4] Email from S. Katz to J. Johnston and B. Bennett, June 9, 2010 10:31 AM (Attached as Ex A); Email from S. Katz to J. Johnson, B. Bennett and J. Morse, June 9, 2010 1:33 PM. (Attached as Ex A) To the extent the Credit Agreement Lenders contend that JPMorgan has failed to satisfy the terms of the Credit Agreement regarding inspection of the register, that (erroneous) argument is irrelevant to the motion to compel and to this Court, which does not rule on inter-creditor disputes concerning the duties of the Agent.

[5] The Credit Agreement Lenders acknowledge that such information is available in the Debtors' schedules as filed with the Court. CAL Motion ¶ 22. That the Credit Agreement Lenders feel this information is not user-friendly or organized the way they want it to be does not provide a basis to compel JPMorgan to produce the information sought.

[6] Email chain between E. Moskowitz and J. Johnston, June 10, 2010 7:22 PM – June 14, 2010 9:00 PM. (Attached as Ex A)

3

5.      Finally, the Credit Agreement Lenders unfairly allege that JPMorgan has not

acted in good faith in connection with this discovery dispute.[7] But, as is evident from the offers

of voluntary production described above, JPMorgan has bent over backwards, even after the

Credit Agreement Lenders filed the motion to compel, in efforts to reach a compromise

resolution of the issue. In reality, it is the Credit Agreement Lenders, who, by seeking to misuse

the discovery rules to provide them a more effective means to lobby against the Plan, are abusing

process and inappropriately seeking to enlist the Court's aid in doing so.

## II.    ARGUMENT

### A.    The Credit Agreement Lenders' Requests Do Not Seek Relevant Or Admissible Evidence

6.      The scope of permissible discovery is well known. Only discovery that is

relevant to a party's claims or defenses, and "reasonably calculated to lead to the discovery of

admissible evidence" is permitted under the applicable Federal Rules. *See* Fed. R. Bankr. P.

7026; Fed. R. Civ. P. 26(b)(1).

7.      The burden is on the Credit Agreement Lenders to demonstrate to the Court why

the information they seek is relevant to their claims or defenses. *See Alexander v. FBI*, 186

F.R.D. 154, 159 (D.D.C. 1999) (holding that "the proponent of a motion to compel discovery

bears the initial burden of proving that the information sought is relevant."); *Trader v. Fiat*

*Distribs., Inc.*, No. 76-249, 1981 U.S. Dist. LEXIS 17802 at *5 (D. Del. Jan. 16, 1981) (denying

---

[7] The Credit Agreement Lenders claim gratuitously and, indeed, disingenuously that JPMorgan "has made a mockery of" its obligation to comply with a discovery request within two weeks of receipt of such written discovery request, pursuant to the Court's Discovery Order. CAL Motion ¶ 17. To the contrary, as acknowledged by the Credit Agreement Lenders, JPMorgan served its responses on June 7, 2010, within the period of two weeks from the date of receipt of the Requests, raising the matter under dispute – that the information requested is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Responses and Objections of JPMorgan Chase Bank, N.A., dated June 7, 2010, at 6-7. (Attached as Ex. B). It defies logic that Credit Agreement Lenders would suggest that timely compliance is "the antithesis of 'good faith, best efforts.'" CAL Motion ¶ 17.

4

plaintiff's motion to compel because "[t]hey have not met their burden of showing the relevancy" of the requested information); *cf. In re Joy Global, Inc.*, No. 01-039-LPS, 2008 U.S. Dist. LEXIS 46495 at *8-9 (D. Del. June 16, 2008) (on a motion to compel, court must first find the evidence sought relevant before proceeding to evaluate the strength of opponent's arguments against discovery). The Credit Agreement Lenders have failed to carry this burden.

8.    The Credit Agreement Lenders offer two reasons in support of their request for the Lender Contact Information. First, they argue that the information is needed so they can more easily communicate with other Lenders and urge them to vote against the Debtors' Plan. *See* CAL Motion ¶ 5. Second, they argue that the information is relevant to the Court's assessment of the value of the disgorgement claims that will be settled under the Plan. *See* CAL Motion ¶ 29.

9.    As to the first reason, the Credit Agreement Lenders do not even attempt to argue that seeking information to enable them to urge Lenders to vote against the Plan is somehow relevant to pending or potential litigation, or "reasonably calculated to lead to the discovery of admissible evidence," because plainly it is not. As to the second rationale, JPMorgan has offered to supply the names and amounts paid to all prepetition and current Lenders. To the extent the Credit Agreement Lenders wish to argue at the Confirmation Hearing that "a large proportion of the prepetition payments were received by just a handful of entities" (*see* CAL Motion ¶ 29) – which is the sole litigation rationale offered in the Motion – JPMorgan's offer of production will enable them to do exactly that.

10.    Indeed, it is readily apparent from reading the motion to compel that the second offered rationale for seeking the information – evaluating disgorgement claims – is a red herring.

The motion is devoted almost entirely to a discussion of the ability of creditors to communicate with each other and even the fairness of the Settlement. Recognizing that the stated reasons do not provide legal justification for discovery of the information, the Credit Agreement Lenders feel obliged to add perfunctory references in two paragraphs at the end of the motion noting that the information might also be relevant to litigation before the Court. It is plain from the motion, and from the record to date, that the Credit Agreement Lenders believe they do not have sufficient votes to block the Plan, and are desperate to obtain information that will permit them to generate, through whatever means, additional "No" votes. JPMorgan cannot be compelled under the guise of purportedly legitimate discovery to provide information that will be used by an adversary of the Plan to solicit rejections in this way. It is a mockery of the Court's process if otherwise confidential contact information for creditors could be obtained in discovery for the sole purpose of lobbying against the Plan. If this were permitted, such information would be sought by Plan opponents in every single case.

11.     JPMorgan remains willing to supply to the Credit Agreement Lenders the Lender information that is (arguably) relevant or reasonably calculated to lead to the discovery of admissible evidence – i.e., the names of pre-petition and current Lenders and amounts paid to them, to be used for litigation purposes only. However, now that the Credit Agreement Lenders' true, non-litigation objectives for seeking the information are known, JPMorgan must request that discovery of the information be permitted only on the condition that the information may be used for legitimate litigation purposes, and that the Court's process not be hijacked as a means to enable the Credit Agreement Lenders to obtain information to which they are not otherwise entitled for the purposes of waging war over the Settlement.

RLF1 3582133v 1

12.    In all truth, it is unclear why the Credit Agreement Lenders need this information.
They have already made their views concerning the Settlement known to all of the Lenders.  On
April 12, 2010, immediately after the Disclosure Statement and Plan were filed, the Credit
Agreement Lenders submitted a statement setting forth their view that the Settlement is unfair,
detailing their objections to the terms of the Settlement, and urging current Senior Lenders not to
support the Plan.[8]  One month later, the Credit Agreement Lenders again expressed their position
in an objection to the Disclosure Statement, which described the alleged unfairness of the
Settlement framed as objections to the sufficiency of the Disclosure Statement.[9]  And, the Credit
Agreement Lenders' position could not have been more clearly or fully stated than in their
position statement that is being included with the solicitation package mailed to parties in interest
for purposes of solicitation of votes on the Plan.  In that statement (and in the longer, nine-page
version filed with the Court[10]), the Credit Agreement Lenders explain what are, in their view, the
purported shortcomings of the Settlement, and urge creditors to reject the Plan.  In bold, italic
text, offset in boxes from the rest of the statement, the Credit Agreement Lenders clearly
communicate their view:

---

[8] *Credit Agreement Lenders' (A) Statement Regarding Purported "Settlement" of "LBO-Related Causes of Action", and (B) Request for Termination of Plan Exclusivity* [Docket No. 3999].

[9] *Credit Agreement Lenders' Objection to Disclosure Statement and Motion for Approval of Plan Solicitation Procedures* [Docket No. 4376]

[10] *Credit Agreement Lenders' Submission of Disclosure Statement Position Statement* [Docket No. 4453], Exhibit A

7

> *The Credit Agreement Lenders Recommend That You Vote To __Reject__ The Tribune Plan*

> *A $425 Million Settlement Payment By Holders Of Credit Agreement Claims Is Unwarranted*

> *Holders Of Credit Agreement Claims Unfairly Bear The Entire Cost Of Settlement*

13.    In sum, the Credit Agreement Lenders' motion seeking to compel the production of addresses for current Senior Lenders is not only an improper use of the discovery process, but it is also unnecessary in light of their repeated proclamations in court filings and ultimately in the solicitation package itself. JPMorgan has offered to provide to the Credit Agreement Lenders information sufficient to address the asserted need to assess the nature and viability of the estates' potential claims for recovery and disgorgement of such payments.

14.    It is readily apparent that, if the Credit Agreement Lenders were truly concerned with the disgorgement claims as opposed to fomenting opposition to the Plan, they would focus on the size of the payments that were made instead of the *addresses* of the holders. The Credit Agreement Lenders have failed to articulate a connection between the addresses of current or past Senior Lenders and the purported "litigation" rationale because the information sought is not relevant to any claim or defense, nor is it reasonably calculated to lead to the discovery of admissible evidence, as required by FRCP 26(b)(1), and the Court should not allow the Credit Agreement Lenders to use the tool of discovery for any other purpose.

**B.    The Alleged Right To Communicate With Other Creditors Does Not Compel The Production From One Creditor Of Irrelevant And Commercially Sensitive Information To Another**

15.    There is no authority, cited by the Credit Agreement Lenders or otherwise, that entitles a creditor to discovery from another creditor (or its agent) of other creditors' identities

8

for purposes of soliciting acceptances or rejections to a Plan. And there is certainly no requirement that one creditor divulge information about itself, especially of a commercially sensitive nature, in order to facilitate such an effort.

16. If the Credit Agreement Lenders may claim entitlement to anything at all under the case law, it is only the ability to communicate freely with other creditors about the Debtors' proposed Plan, and JPMorgan does not seek to restrict their ability to do so. Cases relied upon by the Credit Agreement Lenders to support their claim that JPMorgan must provide contact information for Senior Lenders are readily distinguishable. The cases address allegedly improper attempts by the *debtor* (or trustee) to silence discussion among creditors using Section 1125(b) of the code or to seal the disclosure of all creditor names and addresses. These cases are silent regarding whether there is any requirement that a *creditor* disclose contact information to another *creditor* for solicitation purposes. *Century Glove, Inc. v. First American Bank of New York*'s solicitude to the "ability of a creditor to compare the debtor's proposals against other possibilities," 860 F.2d 94, 102 (3d Cir. 1988), hardly compels the Credit Agreement Lenders' desired result.[11] It is one thing to read broadly a rule regarding the scope of permissible solicitation so it does not preclude creditors from engaging in dialogue over a plan. It is quite another to require creditors to disclose to other creditors how they may be contacted for such a purpose. The cases permit dialogue, but do not require a creditor to facilitate another creditor's efforts to engage in it.

---

[11] It is worth noting that not all bankruptcy courts have embraced the same broad approach to Section 1125 that was espoused in *Century Glove*. The court in *In re Clamp-All Corp*, 233 B.R. 198, 207-08 (Bankr. D. Mass 1999), for example, stated more than a decade later that it "believe[d] that the Century Glove analysis fails to sufficiently recognize Congress' intention to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan."

9

17.    The other cases relied upon by the Credit Agreement Lenders are similarly

inapposite.  In both *In re MorAmerica Fin. Corp.*, 158 B.R. 135 (Bankr. N.D. Iowa 1993) and *In

re Foundation for New Era Philanthropy*, No. 95-13729F, 1995 Bankr. LEXIS 2204 (Bankr.

E.D. Pa. May 18, 1995), the alleged impropriety was the *debtor's* motion for an order pursuant to

11 U.S.C. 107(b) to file under seal the list of creditors required by Fed. R. Bankr. P. 1007.  In

each case, the court denied the motions to seal under § 107(a) and (b) because filed documents

are "public records and open to examination." *Foundation for New Era Philanthropy*, 1995

Bankr. LEXIS 2204 at *11-12, 20; *MorAmerica*, 158 B.R. at 137.  The instant motion concerns

no attempt by the Debtors, or any party, to file a list of creditors under seal.  Creditors in those

cases were faced with the prospect of being precluded access to information about other creditors

being filed with the Court – a far cry from the circumstances at issue here, where JPMorgan has

not attempted to file such information, and has agreed to provide to the Credit Agreement

Lenders the identity of *every* lender so long as the information is used solely for legitimate

litigation purposes.  *See Foundation for New Era Philanthropy*, 1995 Bankr. LEXIS 2204 at

*18-29, 20; *MorAmerica*, 158 B.R. at 137.

18.    The fact that the information sought might assist the Credit Agreement Lenders in

their campaign does not render it discoverable.  *In re Lehman Brothers Inc.*, No. 08-01420, 2008

Bankr. LEXIS 3543 (Bankr. S.D.N.Y. Nov. 26, 2008) (brought under the Securities Investor

Protection Act (SIPA)) is not to the contrary.  Critical to the court's reasoning in that case was

that the SIPA *trustee*, who sought to preclude parties covered under Lehman's deferred

compensation plans from obtaining information about each other, "in contrast with the disclosure

regime applicable in a chapter 11 case," was "under no obligation to file the lists, statements and

schedules that one required of a debtor under Federal Rule of Bankruptcy Procedure 1007."

*Lehman Brothers*, 2008 Bankr. LEXIS 3543 at *9. Beyond the issue of case administration, the

court noted that allowing former employees to contact others who might have similar claims for

compensation or other relief under Lehman's deferred compensation plans might lead to

discovery of documentation evidencing liabilities of Lehman, a consideration for which there is

no analog here, as discussed *supra* Section II.A. *Id.* at *8. The SIPA liquidation was also,

notably, in the "early stages," at which time it was "both premature and presumptuous to

speculate as to any distributions that may ultimately be made" to the movants. *Id.* at *7. The

need for discovery to determine whether possible claims may exist for other similarly situated

parties is a matter entirely different from the desire for information irrelevant to litigation claims

in the context of a bankruptcy case two months prior to Plan confirmation where a Court-

directed solicitation process is well underway.

### C. The Credit Agreement Lenders Seek a Remedy Not Appropriately Addressed by the Federal Rules

19.     The Credit Agreement Lenders misuse the discovery process by attempting to

enforce and expand an asserted "absolute" contractual right to access information contained on

the register (CAL Motion ¶ 25) by means of a motion to compel. Beyond the plain fact that

JPMorgan has already offered to make the Register "available for inspection" per the Credit

Agreement, there is no basis for using FRCP 26 and this forum in the context of Plan

confirmation litigation as a means of addressing disagreements between non-debtor parties

regarding their respective rights under a contract *inter se*.[12] *Cf. MONY Life Ins. Co. v. Hinsdale*

---

[12] The Credit Agreement Lenders moreover reference the right to communicate with fellow creditors under Fed. R. Bankr. P. 1007(a), while acknowledging simultaneously that a list of creditors *was* in fact filed by the Debtors. The organizational quality of such a list does not compel the conclusion that JPMorgan should be required

11

*Mgmt Corp.*, No. 00-C-1563, 2002 U.S. Dist. LEXIS 10771 (N.D. Ill. June 6, 2002) (contractual

right to information is entirely distinct from the right to discover that information under the

Federal Rules of Civil Procedure). In addition, the Register maintained by JPMorgan does not

even contain address information for prepetition lenders who sold their positions, nor does the

Credit Agreement require it to contain such information.

> **D.      Even If The Credit Agreement Lenders Were Entitled To The Information They Seek, JPMorgan Cannot Produce It Without Revealing Commercially Sensitive Information Relative To Other Parties**

20.     The addresses of prepetition and current lenders are commercially sensitive

information that Lenders expect will be held in confidence by the Agent. Under the Discovery

and Scheduling Order for Plan Confirmation [Docket No. 4366] ¶ 2, dated May 13, 2010,

"[d]ocuments produced in response to discovery requests shall be made available to all interested

parties in connection with Plan confirmation, subject to applicable confidentiality agreements."

Because the Credit Agreement Lenders have opted to use the discovery process to obtain the

information they seek, JPMorgan would be placed in a position of being forced to reveal other

parties' commercially sensitive information to all interested parties in these cases. Given that the

Credit Agreement Lenders are seeking to stretch the discovery rules beyond their permitted

purpose, it is not appropriate or necessary to put JPMorgan in the untenable position, as Agent

for the Credit Agreement, of having to reveal information beyond what is already available in

proofs of claim and the record in the case.

---

to supply a more user-friendly directory to aid in the Credit Agreement Lenders' antagonistic campaign. But even if that were not the case, the lender list supplied by Debtors is in fact populated with addresses as well as names – not only that, but it also is formatted so as to easily create pages of mailing labels. *See Certificate of Consolidated List of Creditors* [Docket No. 17]

RLF1 3582133v 1

## III.    CONCLUSION

21.    It is evident that the Credit Agreement Lenders are using the discovery process as an inappropriate sword in their campaign against the Debtors' Plan. Their attempt to legitimize this effort under the guise of evaluating disgorgement claims is entirely transparent from their own admissions and from their evidently prodigious urge to convince others to reject the Plan. While the Bankruptcy Code and interpretive case law may entitle them to communicate with other creditors to this end, it in no way compels other creditors to provide the means, and certainly does not compel the production of irrelevant and commercially sensitive information under FRCP 26. JPMorgan has offered to provide the Credit Agreement Lenders with everything they require to assess the nature and viability of the estate's potential claims for recovery and disgorgement. If the Credit Agreement Lenders are of the view that their rights under the Credit Agreement go beyond inspection of the lender list as offered by JPMorgan (which they do not), they should undertake to pursue contractual remedies. Discovery in these proceedings should be limited to legitimate purposes within the Federal Rules given the issues before the Court; it should not be used to draw the Court into disputes that are not before the Court.

22.    For the foregoing reasons, JPMorgan respectfully requests that the Court deny the Credit Agreement Lenders' motion to compel.

RLF1 3582133v 1

Dated: June 15, 2010
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Drew G. Sloan (No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Donald S. Bernstein
Dennis E. Glazer
Sharon Katz
Damian S. Schaible
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for JPMorgan Chase Bank, N.A.*

14