IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **TRIBUNE COMPANY, et al.,**[1] | : | **Case No. 08-13141 (KJC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | |

## NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE(S) OF EGI-TRB, L.L.C.

**PLEASE TAKE NOTICE** that, pursuant to Rules 9014 and 7030 of the Federal Rules

of Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Wells Fargo

Bank, N.A. (the "Administrative Agent"), by its undersigned counsel, will take the deposition of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

EGI-TRB, L.L.C. (the "Zell Entity") by its designated representative(s), upon oral examination to be recorded by stenographic and videographic means before a notary public or other officer duly authorized to administer oaths. The deposition shall take place on June 25, 2010 at 10:00 a.m., or such other date and time as the parties may mutually agree, at the offices of White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 and shall continue from day to day until completed.

The Zell Entity shall designate one or more persons to testify on the Zell Entity's behalf in accordance with this notice with respect to the areas of inquiry specified below. The Administrative Agent reserves the right to amend this Notice.

### DEFINITIONS

A.    "Bridge Credit Agreement" means that certain $1.6 billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among Tribune Company, each lender from time to time party thereto, JPMorgan Chase Bank, N.A. ("JPM"), as Syndication Agent, inter alia, Citicorp North America, Inc. and Bank of America, N.A., as Co-Documentation Agents, and J.P. Morgan Securities Inc., Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc. and Banc of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners.

B.    "Communication" means the transmittal of information or attempted transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally, in writing, or by any other means or medium.

C.    "Concerning" means relating to, referring to, describing, reflecting, evidencing or constituting.

D.      "Document" shall be defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

E.      "ESOP" means the Tribune employee stock ownership plan.

F.      "Including" means "including, without limitation" or "including but not limited to."

G.      "Leveraged ESOP Transactions" means the series of transactions culminating in the merger on December 20, 2007 in which Tribune Co. became a wholly-owned subsidiary of the Tribune Employee Stock Option Plan.

H.      "Merger Agreement" means the Agreement and Plan of Merger made as of April 1, 2007 among Tribune Co., GreatBanc Trust Company, the Zell Entity, and Tesop Corporation.

I.      "Mr. Zell" means Samuel Zell.

J.      "Person" or "Persons" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

K.      "Petition Date" means December 8, 2008.

L.      "Plan" means the Joint Chapter 11 Plan of Reorganization for Tribune Company and its Subsidiaries filed as Exhibit A to the Disclosure Statement.

M.      "Relate" and its variants encompass the terms "refer," "reflect," and "concern" and shall be construed to bring within the scope of the Request all documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request, including but not limited

to all documents that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Request.

N.    "Senior Credit Agreement" means the $8.028 billion senior secured credit agreement dated as of May 17, 2007, by and among Tribune, as borrower, the financial institutions party thereto as lenders, JPMorgan Chase Bank, N.A., as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

O.    "Tribune" refers collectively to Tribune Co. and its subsidiaries.

P.    "Valuation" means the actual, perceived, estimated or appraised worth of any entity, asset or property whatsoever, and includes without limitation enterprise value, going concern value, equity value, actual cash value, book value, intrinsic value, liquidation value, and market value.

Q.    "Zell Entity Purchase Agreement" means the Securities Purchase Agreement made as of April 1, 2007 among Tribune Co., the Zell Entity, and Samuel Zell.

R.    "Zell Notes" means the Initial Zell Note and the Subsequent Zell Note.

S.    Reference to a corporation, partnership, limited partnership, limited liability company, unincorporated association, joint venture, government entity, or other fictitious person shall be deemed to include each and all of its present or former subsidiaries, affiliates, predecessors and successors, and, with respect to each of the aforesaid entities, its present or former officers, directors, shareholders, employees, partners, members, general partners, and/or limited partners.

## DEPOSITION TOPICS

1.      The formation, management, capitalization, and business of the Zell Entity and ESOP.

2.      Any benefits or estimates of benefits (including savings) that would flow to Tribune from utilizing the ESOP structure in connection with the Leveraged ESOP Transactions, including but not limited to tax savings following the conversion of Tribune to an S-Corp, savings resulting from the elimination of 401(k) contributions, and savings from the reduction in expenses relating to SEC compliance.

3.      Any evaluation or analysis regarding the value of Tribune or its subsidiaries between January 1, 2007 and the present, including any evaluation or analysis regarding the financial projections of Tribune or its subsidiaries.

4.      The valuation of the reorganized Tribune and its subsidiaries.

5.      The Zell Notes, including but not limited to the treatment of the Zell Notes under the Plan.

6.      All offers made by Mr. Zell, the Sam Investment Trust, or by any entity owned or controlled by Mr. Zell or the Sam Investment Trust (including the Zell Entity) to purchase shares of Tribune or to loan money to Tribune.

7.      Negotiations with Tribune concerning financing with respect to the Leveraged ESOP Transactions.

8.      Communications (whether oral or written) between the Zell Entity, Mr. Zell, Tribune, JPM or any other entity regarding the impact or potential impact of the Leveraged ESOP Transactions on Tribune's solvency.

9.    Any financial analysis performed by the Zell Entity (or anyone on the Zell Entity's behalf) concerning the Leveraged ESOP Transactions and Tribune's solvency, including the effect of the Leveraged ESOP Transactions on Tribune's solvency.

10.   The Zell Entity's decision to increase the offering price for Tribune shares to $33.50 per share and, subsequently, to $34 per share.

11.   The purchase by the Zell Entity of approximately 1,470,588 shares of Tribune stock on or about April 23, 2007.

12.   The investment of approximately $200 million by the Zell Entity in Tribune on or about April 23, 2007 in the form of an unsecured subordinated exchangeable promissory note.

13.   The Zell Entity's proposal to invest $225 million in a Tribune subordinated note in connection with the Leveraged ESOP Transactions.

14.   The facts and circumstances surrounding Mr. Zell becoming a member of Tribune's board of directors.

15.   The negotiations with Tribune regarding proposals to structure the Leveraged ESOP Transactions, including the creation and use of Tribune Finance LLC and Tribune Broadcasting Holdco, LLC, and the use of guarantees by Tribune's subsidiaries.

16.   Any study or analysis performed by the Zell Entity (or anyone acting on the Zell Entity's behalf) concerning (i) Tribune's financial condition and financial projections; (ii) the nature of Tribune's business and future business prospects; and (iii) the benefits, if any, to be received by Tribune and/or its subsidiaries as a result of the Leveraged ESOP Transactions, including communications regarding such analyses.

17.   The Leveraged ESOP Transactions that were approved by Tribune's Board of Directors on or about April 1, 2007, including the Agreement and Plan of Merger, the Zell Entity

Securities Purchase Agreement, the ESOP Purchase Agreement, the ESOP Note, the ESOP Loan

Agreement, the ESOP Pledge Agreement, the Investor Rights Agreement, the Voting

Agreement, the Registration Rights Agreements, the Step One and Step Two Commitment

Letters, and the Tender Offer.

18.     The need for, and feasibility of, obtaining FCC approval in connection with the

Leveraged ESOP Transactions.

19.     The reasons for, and benefits of, having Tribune qualify as a subchapter S

corporation in connection with Leveraged ESOP Transactions.

20.     All payments made by Tribune to or for the benefit of Mr. Zell, the Zell Entity,

the Sam Investment Trust or any other entity owned or controlled by the Zell Entity, Mr. Zell or

the Sam Investment Trust during the period of January 1, 2007 through the Petition Date.

21.     All payments received by Mr. Zell, the Zell Entity, the Sam Investment Trust or

any other entity owned or controlled by the Zell Entity, Mr. Zell or the Sam Investment Trust

during the period of January 1, 2007 through the Petition Date in connection with the Leveraged

ESOP Transactions, Merger Agreement and Zell Entity Purchase Agreement.

22.     Any evaluation or analysis of the potential for the obligations incurred or

consideration paid in connection with the Leveraged ESOP Transactions, Zell Entity Purchase

Agreement, Merger Agreement, the Senior Credit Agreement, and the Bridge Credit Agreement

to be avoided or challenged under the Bankruptcy Code or state fraudulent conveyance law.

23.    The Zell Entity's production of documents in response to discovery requests

propounded by the Administrative Agent and any matter relating to such documents.

Dated:   June 16, 2010
         Wilmington, Delaware

**FOX ROTHSCHILD LLP**

Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

-and-

David G. Hille (admitted *pro hac vice*)
Scott Greissman (admitted *pro hac vice*)
Andrew W. Hammond (admitted *pro hac vice*)
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

-and-

Thomas E Lauria (admitted *pro hac vice*)
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700

Attorneys for Wells Fargo Bank, N.A.
as Administrative Agent under the
Bridge Credit Agreement