- 1 -

1

2    UNITED STATES BANKRUPTCY COURT

3    DISTRICT OF DELAWARE

4    Case No. 08-13141 (KJC)

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    TRIBUNE COMPANY, et al.,

9

10                   Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                   United States Bankruptcy Court

15                   824 Market Street

16                   Wilmington, Delaware

17

18                   June 16, 2010

19                   11:03 AM

20

21    B E F O R E:

22    HON. KEVIN J. CAREY

23    U.S. BANKRUPTCY JUDGE

24    ECRO: AL LUGANO

25

- 2 -

1

2    HEARING re Motion of the Debtors for an Order Pursuant to

3    Sections 501, 502 and 1111(a) of the Bankruptcy Code,

4    Bankruptcy Rules 2002 and 3003(v)(3), and Local Rules 2002-1(e)

5    Establishing Bar Dates for Filing Proofs of Claim in the

6    Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and

7    Manner of Notice Thereof

8

9    HEARING re Application for Compensation of Offit Kurman, as

10   Ordinary Course Counsel to the Debtors for Certain Labor-

11   Related Matters for the period February 1, 2010 to February 28,

12   2010

13

14   HEARING re Debtors' Twenty-Seventh Omnibus Objection (Non-

15   Substantive) to Claims Pursuant to Section 502(b) of the

16   Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule

17   3007-1

18

19   HEARING re Debtors' Twenty-Eighth Omnibus Objection (Non-

20   Substantive) to Claims Pursuant to Section 502(b) of the

21   Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule

22   3007-1

23

24

25

- 3 -

1

2    HEARING re Debtors' Twenty-Ninth Omnibus (Substantive)

3    Objection to Claims Pursuant to Section 502(b) of the

4    Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule

5    3007-1

6

7    HEARING re Debtors' Thirtieth Omnibus Objection (Non-

8    Substantive) to Claims Pursuant to Section 502(b) of the

9    Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule

10   3007-1

11

12   HEARING re Debtors' Thirty-First Omnibus Objection (Non-

13   Substantive) to Claims Pursuant to Section 502(b) of the

14   Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule

15   3007-1

16

17   HEARING re Second Supplemental Application for an Order

18   Modifying the Scope of the Retention of Ernst and Young LLP to

19   Include Certain Valuation Services in Connection with the

20   Application of Fresh Start Accounting Pursuant to 11 U.S.C. §§

21   327(a) and 1107 Nunc Pro Tunc to April 19, 2010

22

23

24

25

- 4 -

1

2    HEARING re Motion to Extend (Motion Pursuant to 28 U.S.C. §

3    1452 and Bankruptcy Rules 9006(b) and 9027 for Entry of an

4    Order Extending the Debtors' Time to File Notices of Removal of

5    Claims and Causes of Action Related to the Debtors' Chapter 11

6    Proceedings)

7

8    HEARING re Motion to Compel the Production of Documents by

9    JPMorgan Chase Bank, N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

- 5 -

1

2    A P P E A R A N C E S :

3    SIDLEY AUSTIN LLP

4         Attorneys for the Debtors and Debtors-in-Possession

5         One South Dearbourn Street

6         Chicago, IL 60603

7

8    BY:   KENNETH P. KANSA, ESQ.

9          BRYAN KRAKAUER, ESQ.

10         JILLIAN K. LUDWIG, ESQ.

11

12   SIDLEY AUSTIN LLP

13        Attorneys for the Debtors and Debtors-in-Possession

14        555 West Fifth Street

15        Los Angeles, CA 90013

16

17   BY:   KEVIN T. LANTRY, ESQ.

18

19

20

21

22

23

24

25

- 6 -

1

2    COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

3         Attorneys for the Debtor and Debtors-in-Possession

4         1000 North West Street

5         Suite 1200

6         Wilmington, DE 19801

7

8    BY:   NORMAN L. PERNICK, ESQ.

9          J. KATE STICKLES, ESQ.

10         (TELEPHONICALLY)

11

12   CHADBOURNE & PARK LLP

13         Attorneys for the Official Committee of Unsecured

14          Creditors

15         30 Rockefeller Plaza

16         New York, NY 10012

17

18

19   BY:   DOUGLAS E. DEUTSCH, ESQ.

20         DAVID M. LEMAY, ESQ.

21         MARC ROITMAN, ESQ.

22         HOWARD SEIFE, ESQ.

23         (TELEPHONICALLY)

24

25

1

2    LANDIS RATH & COBB LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         919 North Market Street

6         Suite 1800

7         Wilmington, DE 19801

8

9    BY:   MATTHEW B. MCGUIRE, ESQ.

10        (TELEPHONICALLY)

11

12   U.S. DEPARTMENT OF JUSTICE

13        Office of the United States Trustee

14        J. Caleb Boggs Federal Building

15        844 North King Street

16        Room 2207

17        Wilmington, DE 19899

18

19   BY:   JOSEPH MCMAHON, ESQ.

20        (TELEPHONICALLY)

21

22

23

24

25

- 8 -

1

2    AKIN, GUMP, STRAUSS, HAUER & FELD LLP

3         Attorneys for Centerbridge Credit Advisors

4         One Bryant Park

5         New York, NY 10036

6

7    BY:   ALEXIS FREEMAN, ESQ.

8         (TELEPHONICALLY)

9

10   ALSTON & BIRD LLP

11        Attorneys for Ernst & Young LLP

12        90 Park Avenue

13        New York, NY 10016

14

15   BY:   JOHN W. WEISS, ESQ.

16        (TELEPHONICALLY)

17

18   BARNES & THORNBURG LLP

19        Attorneys for Morgan Stanley & Company

20        Suite 1200

21        1000 North West Street

22        Wilmington, DE 19801

23

24   BY:   DAVID M. POWLEN, ESQ.

25        (TELEPHONICALLY)

1

2   BENESCH, FRIEDLANDER LLP

3        Attorneys for Wilmington Trust Company

4        222 Delaware Avenue

5        Suite 801

6        Wilmington, DE 19801

7

8   BY:   JENNIFER R. HOOVER, ESQ.

9        (TELEPHONICALLY)

10

11  BROWN RUDNICK LLP

12        Attorneys for Wilmington Trust Company

13        Seven Times Square

14        New York, NY 10036

15

16  BY:   KATHERINE S. BROMBERG, ESQ.

17        ANDREW S. DASH, ESQ.

18        MARTIN S. SIEGEL, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

1

2    DAVIS POLK & WARDWELL LLP

3          Attorneys for JPMorgan Chase Bank, N.A.

4          450 Lexington Avenue

5          New York, NY 10017

6

7    BY:   ELLIOT MOSKOWITZ, ESQ.

8          BENJAMIN S. KAMINETZKY, ESQ.

9          (TELEPHONICALLY)

10

11   EDWARDS ANGELL PALMER & DODGE LLP

12          Attorneys for Barclays Bank

13          919 North Market Street

14          15th Floor

15          Wilmington, DE 19801

16

17   BY:   R. CRAIG MARTIN, ESQ.

18

19

20

21

22

23

24

25

- 11 -

1

2    HENNIGAN, BENNETT & DORMAN LLP

3          Attorneys for Credit Agreement Lenders

4          865 South Figueroa Street

5          Suite 2900

6          Los Angeles, CA 90017

7

8    BY:   JAMES O. JOHNSTON, ESQ.

9          (TELEPHONICALLY)

10

11   KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

12         Attorneys for Law Debenture Trust Company of the Americas

13         1633 Broadway

14         New York, New York 10019

15

16   BY:   MATTHEW B. STEIN, ESQ.

17         (TELEPHONICALLY)

18

19   KAYE SCHOLER LLP

20         Attorneys for Merrill Lynch Capital Corporation

21         425 Park Avenue

22         New York, NY 10022

23

24   BY    MADLYN G. PRIMOFF, ESQ.

25         (TELEPHONICALLY)

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Interested Party

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7   BY:   DAVID E. BLABEY, JR., ESQ.

8         KATHERINE G. CRUZ, ESQ.

9

10  ORRICK, HERRINGTON & SUTCLIFFE LLP

11        Attorneys for Royal Bank of Scotland

12        51 West 52nd Street

13        New York, NY 10019

14

15  BY:   COURTNEY M. ROGERS, ESQ.

16        (TELEPHONICALLY)

17

18  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

19        Attorneys for Citigroup

20        1285 Avenue of the Americas

21        New York, NY 10019

22

23  BY:   OKSANA LASHKO, ESQ.

24        STUART C. MCPHAIL, ESQ.

25        (TELEPHONICALLY)

1

2   POTTER ANDERSON & CORROON LLP

3         Attorneys for Merrill Lynch Capital Corporation

4         1313 North Market Street

5         Wilmington, DE 19801

6

7   BY:   LAURIE SILVER SILVERSTEIN, ESQ.

8         (TELEPHONICALLY)

9

10   RICHARDS, LAYTON & FINGER, P.A.

11         Attorneys for JPMorgan Chase Bank, N.A.

12         920 North King Street

13         Wilmington, DE 19801

14

15   BY:   ROBERT J. STEARN, JR., ESQ.

16         (TELEPHONICALLY)

17

18   WEIL GOTSHAL & MANGES LLP

19         Attorneys for Morgan Stanley & Co.

20         767 Fifth Avenue

21         New York, NY 10153

22

23   BY:   EVAN S. LEDERMAN, ESQ.

24         (TELEPHONICALLY)

25

- 14 -

1

2    WHITE & CASE LLP

3         Attorneys for Wells Fargo Bank

4         1155 Avenue of the Americas

5         New York, NY 10036

6

7    BY:   SCOTT GREISSMAN, ESQ.

8         (TELEPHONICALLY)

9

10   WILMER CUTLER PICKERING HALE & DORR, LLP

11        Attorneys for Angelo, Gordon & Co.

12        399 Park Avenue

13        New York, NY 10022

14

15   BY:   ANDREW N. GOLDMAN, ESQ.

16        (TELEPHONICALLY)

17

18   WOMBLE CARLYLE SANDRIDGE & RICE PLLC

19        Attorneys for GreatBanc Trust Company

20        222 Delaware Avenue

21        Wilmington, DE 19801

22

23   BY:   THOMAS M. HORAN, ESQ.

24        (TELEPHONICALLY)

25

1

2    YOUNG CONAWAY STARGATT & TAYLOR LLP

3          Attorneys for Credit Lenders

4          The Brandywine Building

5          1000 West Street

6          17th Floor

7          Wilmington, DE 19801

8

9

10   BY:    ROBERT S. BRADY, ESQ.

11          (TELEPHONICALLY)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           P R O C E E D I N G S

2           THE CLERK:  All rise.

3           THE COURT:  Good morning.  This is Judge Carey.  We're

4   on the record in the Tribune Chapter 11 proceeding.  There is

5   an extensive amended agenda which was filed yesterday at docket

6   number 4786.  But only one matter remains to be heard.  So --

7   and that is the item listed at number 19, the credit agreement

8   lenders' motion to compel production of documents by JPMorgan

9   Chase Bank to which a response has been filed.

10          Let me begin by asking, have the parties resolved this

11  matter or narrowed the issues?

12          MR. JOHNSTON:  Your Honor, this is Jim Johnston of

13  Hennigan Bennett & Dorman on behalf of the credit agreement

14  lenders.  Unfortunately, the matter is not resolved.  And,

15  except for a few points that I think were conceded in the

16  objection, the issues have not been narrowed.

17          THE COURT:  All right.  Let's proceed then.  I'll hear

18  first from the movant.

19          MR. JOHNSTON (TELEPHONICALLY):  Thank you, Your Honor,

20  for the opportunity to participate by telephone.  And I do hate

21  to take up the Court's time with a discovery matter.  It really

22  shouldn't have come to this and, in fact, this may be the most

23  limited least invasive discovery request you've been confronted

24  with.

25          We seek only two things, Your Honor.  One, a list of

Case 08-13141-BLS    Doc 4847    Filed 06/22/10    Page 17 of 39
TRIBUNE COMPANY, et al.

- 17 -

1    the names and addresses of current holders of credit agreement

2    debt; and two, a list of the pre-petition payments that were

3    made by the debtors under the credit agreement for which

4    JPMorgan served as agent.

5           We did make a formal request for this information

6    pursuant to the Court's discovery and scheduling order for plan

7    confirmation which was intended to streamline plan discovery

8    and requires parties to respond and use good faith efforts to

9    produce within two weeks.  After serving our discovery

10   requests, we heard nothing, we got nothing for the full two

11   weeks at which time JPMorgan served us with their blanket

12   refusal to produce.  And they claim two bases for refusing.

13   They claim that production of the information we requested

14   would be unduly burdensome.  And they claim that the

15   information we sought was not relevant.  JPMorgan did say that

16   we could come inspect a list of the names of current holders of

17   credit agreement debt, but they said that that list would not

18   include addresses or apparently any information at all

19   regarding the pre-petition payments under the credit agreement.

20   And when we asked, they clarified that by "inspect", they meant

21   that literally.  We could look but we couldn't even make a

22   photocopy of the list.

23          THE COURT:  Well, let me -- so that I'm clear, I'm

24   looking at the June 10th, 2010 e-mail from Elliot Moskowitz to

25   you which makes a proposal that goes, in part, as follows:

- 18 -

1    "JPMorgan is willing to compile and provide you with a list of

2    both current and pre-petition lenders including amounts paid to

3    pre-petition lenders and holdings of current lenders except for

4    mailing addresses."  Now they did want certain restrictions

5    beyond that.  But it sounds to me, again, confidentiality and

6    litigation use issues aside, in terms of the information itself

7    that you requested and JPMorgan has offered to produce, you're

8    now at a place where it strikes me that what remains is the

9    address issue.

10          MR. JOHNSTON:  I agree with that, Your Honor.

11          THE COURT:  Okay.

12          MR. JOHNSTON:  That offer was not made until after the

13   meet and confer process and after we filed our motion.  So, I

14   agree that to the extent that to the extent the offer still

15   stands that was made in the e-mail, JPMorgan has conceded that

16   we are entitled to the payment information.  They've conceded

17   that we're entitled to a list of the names of holders but

18   they've attempted to tie our hands with respect to use of that

19   list of names and have refused to provide us with the

20   addresses.

21          THE COURT:  I understand that and I'll also rejoin

22   that I don't know that JPMorgan conceded anything but they did

23   make a proposal.

24          MR. JOHNSTON:  Agreed.

25          THE COURT:  All right.

- 19 -

1        MR. JOHNSTON:  And the timing was such that that

2    occurred after we filed our motion.

3        THE COURT:  Understood.

4        MR. JOHNSTON:  A few takeaways from the objection.  I

5    think it's notable that JPMorgan no longer argues that it would

6    be burdensome to produce this information.  As indicated by the

7    offer, JPMorgan's now offered to produce at least most of it

8    without claiming that it would be burdensome.  And as we noted

9    in our motion, this is actually one of the duties of JPMorgan

10   as agent.  It's tapped with compiling this information, with

11   maintaining it and it's getting paid for it during the case.

12   So we'd submit that there's certainly no burdensome aspect to

13   our request.

14        JPMorgan, as we discussed, also does not argue that

15   information regarding the pre-petition payments is irrelevant.

16   So I'll skip over the arguments on that point.  Can return to

17   it if, in fact, they do not concede that point.

18        So there really is the issue for today which is are we

19   entitled to a list of the names and addresses of current

20   holders of credit agreement debt for purposes of contacting

21   lenders.  Let's consider what's not at issue or at least not

22   contested in the objection.  JPMorgan does not deny that the

23   credit agreement specifically gives us the right to this

24   information, both names and addresses.  They don't deny that it

25   already compiled this information and gave it to the debtors

TRIBUNE COMPANY, et al.

- 20 -

1    for purposes of plan solicitation.  And they don't deny that

2    lender information is required to be made public by Bankruptcy

3    Rule 1007 and Section 107 of the Bankruptcy Code.

4         So what is the argument for withholding creditor

5    information from us?  As best I can tell, the argument is that

6    identities of creditors being asked to vote on the plan and

7    approve the settlement is not relevant to litigation over plan

8    confirmation.  And I'd submit, Your Honor, that this is simply

9    wrong.  In the most basic sense, nothing could be more relevant

10   to a case like this one where you have one group of creditors

11   within a class who support a plan.  You have another group

12   within that class who do not support the plan.  And you have a

13   majority of creditors who are unidentified and apparently

14   undecided.

15        The plan and settlement here are going to rise or fall

16   based on the votes of that third group.  JPMorgan knows this

17   and it apparently doesn't want us to find out who they are, who

18   these creditors are.  It doesn't want us talking to them.  But

19   the desire to protect a settlement doesn't make this

20   information any less relevant or any less discoverable.

21        The cases we cited, starting with the Third Circuit

22   seminal decision in Century Glove established that a core

23   purpose of the Bankruptcy Code is to facilitate communications

24   and negotiations among creditors after a disclosure statement

25   has been approved.

TRIBUNE COMPANY, et al.

- 21 -

1        There's a theme in the objection where JPMorgan tries

2    to portray our desire to have a dialogue with other creditors

3    as somehow sinister and inappropriate.  But this is exactly

4    what the Third Circuit and other Courts have indicated should

5    occur once a disclosure statement's approved.  That's what the

6    plan process is all about.  And the Bankruptcy Code itself

7    specifically contemplates that parties will be engaged in

8    soliciting not only acceptances but rejections of a plan once a

9    disclosure statement's approved.  It's right there in black and

10   white in Section 1125(e).  Creditors are entitled to have

11   dissenting positions be heard.

12        And when you step back and consider it more broadly,

13   the plan process, all the provisions of Chapter 11, are

14   supposed to be about fairness and a level playing field.  And

15   in this regard, Your Honor, it's worth noting that JPMorgan and

16   other settlement supporters, Centerbridge, Angelo Gordon, are

17   actively engaged in doing what JPMorgan says that we should not

18   be.  They're out there contacting credit agreement lenders.

19   They're trying to convince them to vote in favor of the plan

20   and support the settlement.  And I'd submit that it makes

21   absolutely no sense and it can't possibly be the rule that

22   JPMorgan gets to access the creditor information for its own

23   purposes to try to marshal yes votes on the plan while denying

24   opponents of the plan the ability to provide a countervailing

25   voice.

- 22 -

1        Four other very brief points.  Although JPMorgan

2    claims that the creditor information is irrelevant, I note that

3    it recently submitted a discovery request in connection with

4    plan confirmation to Wells Fargo who's the agent for the bridge

5    facility.  In that discovery request, they specifically

6    requested, "all documents sufficient to identify the bridge

7    lenders".  This is exactly what we asked JPMorgan for.  Their

8    request to Wells Fargo completely undercuts its argument that

9    our request doesn't seek relevant information.

10        I also note that the information we seek isn't

11    confidential and it isn't commercially sensitive.  The credit

12    agreement provides that we can have it.  The bankruptcy rules

13    require it to be disclosed.  Earlier in this case, in fact,

14    JPMorgan willingly provided the name, claim amount, contact

15    information and phone and fax numbers for the ten largest

16    credit agreement lenders which the debtors published as part of

17    their bankruptcy petition.  It says so right on the bankruptcy

18    petition which "the following lenders are the largest holders

19    of the senior facility based on information recently provided

20    to the debtors by JPMorgan Chase Bank, N.A., agent for the

21    senior facility".  This is disclosure, again, completely

22    undercuts JPMorgan's argument that our request somehow seeks

23    commercially sensitive information.  When it served JPMorgan's

24    purposes, the information was handed over and made public.

25        The third point is that JPMorgan cannot escape its

- 23 -

1   production obligations by pointing to the debtors' list of

2   creditors.  As we noted in our motion, that list is 2,300 some

3   odd pages long, has 71,600 names and it's not categorized in

4   any way.  It's just impossible to determine which of the names

5   are those of credit agreement lenders and the information is

6   just not usable in any practical manner.

7          And finally, I would note that information about the

8   identity of credit agreement lenders could itself lead to

9   discoverable information directly from those lenders, meaning,

10  that the information sought would fall squarely within Rule

11  7026.

12         So we submit, Your Honor, that the requested

13  information for current lender names and addresses as well as

14  the information about pre-petition payments is relevant,

15  discoverable and should be produced.  And that's all I have for

16  now.

17         THE COURT:  Thank you.  Let me hear from JPMorgan

18  Chase Bank.

19         MR. STEARN (TELEPHONICALLY):  Good morning, Your

20  Honor.  And may it please the Court.  This is Bob Stearn from

21  Richards Layton & Finger on behalf of JPMorgan Chase.  With me

22  today from Davis Polk & Wardwell are Elliot Moskowitz and

23  Benjamin Kaminetzky.  The Court has kindly granted our motions

24  for their admission pro hac vice.  And Mr. Moskowitz will be

25  presenting argument today on behalf of JPMorgan Chase.

TRIBUNE COMPANY, et al.

- 24 -

1           THE COURT:  Very well.

2           MR. MOSKOWITZ (TELEPHONICALLY):  Good morning, Your

3     Honor.  For the record, Elliot Moskowitz from the law firm of

4     Davis Polk & Wardwell representing JPMorgan Chase Bank.  Thank

5     you, Your Honor, for taking the time to hear us on a discovery

6     dispute.  My remarks will be brief.  And, in fact, I think that

7     it was extremely helpful at the beginning of the discussion

8     that Your Honor on the compromised proposal that we have

9     rendered to the credit agreement lenders.  And I want to come

10    back to that in a minute after making just a couple of

11    introductory remarks 'cause I really think that is the heart of

12    the issue and that the issues in dispute are, frankly, narrow

13    and should easily be resolved by the Court.

14          I thought that Mr. Johnston's recitation was actually

15    quite helpful as I thought that their brief was helpful.

16    They're not trying to hide the ball as to what -- as to the

17    reasons that they're seeking this information.  It's quite

18    plain from their brief and also from Mr. Johnston's

19    presentation that they want this information not particularly

20    to support any of their litigation arguments, such as their

21    disgorgement claim, or if that's what they want, they cert --

22    that's really a secondary or tertiary issue.  What they really

23    want the information for is for them to be able to call around

24    and send out supplemental mailings so that they can convince

25    people to vote against the plan.  And I'm not chastising them

TRIBUNE COMPANY, et al.

- 25 -

1    for that.  I'm just stating factually that that is what they

2    intend to do.  And I commend them for their candor that that's

3    what they told the Court that that's what they intend to do.

4    And for good reason.  The Century Glove case, which is cited in

5    their case (sic), provides that they can have free

6    communication with other creditors and a debtor, for example,

7    cannot impose limitations on communications with other

8    creditors.  No one is disputing that this what Century Glove

9    provides.

10            The question before us here on a motion to compel --

11    and I remind also that it's the movant's burden on a motion to

12    compel to convince the Court that the information that they're

13    requesting and that the relief that they're requesting should

14    be granted.

15            The rules that are applicable on a motion to compel

16    don't fit that which -- the purpose for which they're seeking

17    the information.  And in fact, I think Mr. Johnston a bit

18    misstated the rules when he articulated to the Court why he

19    should be entitled to the discovery that he seeks.  I hearken

20    back to Rule 7026 of the Federal Rules of Bankruptcy Procedure

21    that provides that only information that is relevant to any

22    claims or defenses and reasonably calculated to lead to the

23    discovery of admissible evidence is an appropriate subject of

24    discovery.  And I do not believe that they have carried their

25    burden to show that for the purpose -- not for litigation

- 26 -

1    claims, for nonlitigation purposes, to use information that

2    they seek to call around to other lenders and to convince them

3    to vote against the plan or to do anything else that they want

4    to use the information for, 'cause there may be other purposes

5    as well, that that simply is trying to fit a square peg in a

6    round hole.  The rules of discovery simply do not provide them

7    the ability to do that.  I know why they want the information.

8    That's clear.  The question simply before the Court is whether

9    the rules of discovery allow them to get that information and

10   the specific information that they have requested.

11            And here now, I want to come back to the proposal that

12   we've actually made to them and as the Court rightly focused on

13   at the beginning of this discussion.  And I think even from the

14   things that Mr. Johnston said at the beginning of this call,

15   there may actually be less in dispute than I had thought going

16   into the call.  What we have offered to provide them with,

17   because we recognize that if the information is relevant to

18   litigation -- and I would say arguably relevant, because the

19   Court, I think, rightly pointed out at the beginning that we're

20   not necessarily conceding anything.  We're certainly at least

21   just trying to broker a conclusion and take up less of the

22   Court's time.

23            What we have offered them is simply the following.

24   Number one, a list of all the pre-petition lenders and the

25   amounts paid to them.  And here, I pause for a moment.  And I

TRIBUNE COMPANY, et al.

- 27 -

1    think that I heard Mr. Johnston say that he's no longer seeking

2    the addresses of the pre-petition lenders.  So that issue, I

3    think, is no longer in dispute.  And then, the second thing

4    that we offered to give them is a list of all the current

5    lenders and their holdings.  And there, I think, is the crux --

6    and there is the crux of the dispute.  They also want not only

7    that but also the addresses.  Why?  Again, not for any

8    litigation purpose but so that they can call around and send

9    out mailings to these folks.  And, mind you, they have already

10   sent out mailings to these folks through the process of the

11   Court has already imposed for a disclosure of information.  And

12   their positions are well articulated to the community of

13   lenders as we've shown in the brief.  And then, secondly, all

14   we ask is that, consistent with the rules of discovery, that

15   there be a limitation imposed that the information be used for

16   litigation purposes only.  And here again, I pause, Your Honor,

17   by saying that that's not a very radical suggestion.

18   Protective orders all the time are imposed by this Court and by

19   other Courts that provide that information that is sought and

20   received in discovery is used only for litigation.  And I'll

21   just cite to one example.  I'm sure the Court is aware of many

22   others.  But in this Court's protective order entered in the In

23   re Tropicana Entertainment case, and I'm quoting here from the

24   very first paragraph of the protective order, this Court

25   entered an order that provided "Subject to the terms set forth

- 28 -

1    below, all confidential information obtained through discovery

2    in the Chapter 11 cases shall be used by the persons receiving

3    such materials only for" -- and here's the key part -- "the

4    purpose of preparing for and conducting litigation in

5    connection with the Chapter 11 cases."

6           And that's really all we're asking the Court to do

7    here.  We're asking the Court to basically put the test to the

8    credit agreement lenders and to suggest that if they are truly

9    seeking the information for litigation purposes that they just

10   receive that which is useful for liti -- arguably useful for

11   litigation purposes.  And then secondly, that it only be used

12   for litigation and not for the other purposes that they wish to

13   use it for.  And I understand why they want to use it for those

14   other purposes.  But that doesn't make it right and it doesn't

15   make it appropriate -- a subject for discovery under the

16   Federal Rules of Civil Procedure.

17          I'll just take a moment to respond to a couple of the

18   other points that Mr. Johnston made at the end of his

19   recitation.  Number one, with respect to our discovery requests

20   to Wells Fargo, I would note simply that we didn't -- we're not

21   seeking the same information that the credit agreement lenders

22   are seeking from us.  For example, we haven't sought the

23   addresses and we're certainly -- and the subject of a separate

24   meet and confer with Wells Fargo is not before the Court today.

25   I'm just simply noting that our positions are entirely

TRIBUNE COMPANY, et al.

- 29 -

1  consistent.  And then, secondly, as for the debtors' list of

2  creditors and that not being sufficiently usable form for them

3  to do what they want to do, here again, I would just suggest

4  that we are not obligated under the rules of discovery to take

5  the debtors' information and to put it in a more usable form

6  for them.  We are just obligated to produce that which the

7  rules of discovery require us to produce.

8        I'll close by saying that I think that the proposal

9  that we made to them, and, I think, that the Court focused on

10  at the beginning of the discussion, is a very good faith

11  compromise proposal.  And it is our request, respectfully, that

12  the Court resolve this issue by entering an order that provides

13  for that proposal to be entered.

14        THE COURT:  Thank you.  Mr. Johnston, I'll allow brief

15  rebuttal.

16        MR. JOHNSTON:  Very brief, Your Honor.  Rule 7026, or

17  actually, Civil Procedure Rule 26(b)(1) provides that "The

18  Court may order discovery of any matter relevant to the subject

19  matter involved in the action."  For all the reasons I

20  mentioned earlier, the identity and addresses of creditors,

21  credit agreement lenders in this case, are absolutely relevant

22  to the subject matter involved in the action.

23        I will say it's ironic that JPMorgan now says that we

24  should be happy with the position statement that's included in

25  the disclosure statement along with hundreds of other pages of

TRIBUNE COMPANY, et al.

- 30 -

1   information when it was JPMorgan that argued strenuously to

2   limit us to three pages.  They now try to cut off our right to

3   make our points directly to the holders.  They can't have it

4   both ways there.

5        With respect to the information regarding pre-petition

6   payment, obviously, we still seek that.  We seek that

7   specifically to respond to an argument made my JPMorgan that

8   the claims for disgorgement of two billion dollars in pre-

9   petition payments made under the credit agreement are somehow

10  difficult to pursue because there are so many credit agreement

11  lenders.  We seek the addresses of the people who received

12  payments pre-petition to respond to an argument made by

13  JPMorgan that those lenders would be difficult to sue because

14  we don't know where they are, they're widely dispersed or

15  anything like that, address information is relevant.

16       And that's it, Your Honor.  It seems to put form over

17  substance in the extreme to say that we should have to rely on

18  the giant list of creditors that's been filed here.  If Your

19  Honor rules that somehow JPMorgan's not obligated to turn over

20  what the credit agreement says it has to turn over to us in the

21  form of names and addresses, we'll ask the debtors for it.

22  We'll try to get the debtors for it.  This appears to be, like

23  I said, form over substance.  And I don't think I need to say

24  anymore on the point.

25       MR. MOSKOWITZ:  Your Honor, may I briefly respond?

- 31 -

1              THE COURT:  Briefly.

2              MR. MOSKOWITZ:  Fair enough.  Just, I guess, three

3     micro quick points.  Just in terms of if we're going to focus

4     on the rule of discovery, I just -- I don't want to conflate

5     two portions of the rules.  I'm sure the Court is well familiar

6     that the rule -- and I'm reading from it right now -- says

7     "information that is relevant to any parties' claim or

8     defense".  A separate portion of the rule says that "For good

9     cause shown, the Court may order discovery of any matter

10    relevant to the subject matter involved in the action."  I

11    think either part of the rule, I think, frankly, does not apply

12    for the nonlitigation purpose for which they seek the

13    information.  That's number one.

14              Number two, I think it's conceded almost that the

15    address information that they seek really is relevant just to

16    the nonlitigation purpose.  If the purpose truly were a

17    litigation purpose only, they would not need the address

18    information.  I don't have to belabor what their own arguments

19    are right now.  But if the Court reviews what their arguments

20    are with respect to disgorgement, they don't need the address

21    information.  They just really need to know, to support their

22    point, that the largest amount of the amounts that would be

23    disgorged are not disbursed among 900 lenders; they're

24    concentrated among just a few lenders.

25              And again, we're not trying to stop them from going

TRIBUNE COMPANY, et al.

- 32 -

1    out and communicating with other lenders or with their

2    creditors.  Oh, they've done plenty of that and they continue

3    to do that.  We simply don't have an obligation, under the

4    rules of discovery, to facilitate that and help them to do

5    that.  There's no support in the cases that they cited for that

6    and it's not evident from a plain reading of the rules.

7            THE COURT:  All right.  I'll note for the record that

8    there is an extensive sign-up on the telephone participants

9    today.  But, frankly, I'm not inclined to hear from others in

10   connection with the dispute that's been teed up today strictly

11   between two parties.  So I've heard the argument and I'm

12   prepared to make my ruling.

13           I will note that the parties, respectively, did cite a

14   number of cases none of which were directly on point.  That's

15   not a criticism.  But I did find, in fact, some of the cases

16   helpful.

17           And I'll start by referring to In re CGE Shattuck.

18   It's a District of New Hampshire case -- Bankruptcy Court

19   reported at 254 B.R. 5.  In that case, the bankruptcy judge

20   notes, among other things, the Third Circuit's Century Glove

21   decision.  And while it determines that Century Glove is not

22   applicable, I think the Court there correctly characterizes

23   what Century Glove stands for.  And that is, the proposition

24   that creditors may communicate with each other regarding a

25   Court-approved disclosure statement.

Case 08-13141-BLS   Doc 4847   Filed 06/22/10   Page 33 of 39
TRIBUNE COMPANY, et al.

- 33 -

1    Turning directly to Century Glove, let me just read a

2    couple things that the Third Circuit said.  And Century Glove's

3    recorded at 860 F.2d 94.  It's a 1988 decision.  And among

4    other things, the Circuit says in its opinion, "The statute",

5    referring to the Bankruptcy Code, "however, never limits the

6    facts which a creditor may receive but only the time when a

7    creditor may be solicited.  Congress was concerned not that

8    creditors' votes were based on misinformation but that they

9    were based on no information at all.  Further," it says, "as

10   the district court pointed out, allowing a bankruptcy court to

11   regulate communications between creditors conflicts with the

12   language of the statute.  A creditor may receive information

13   from sources other than the disclosure statement."

14        Finally, the Court went on to say, "Where, as here",

15   meaning under the circumstances before it, which I acknowledge

16   are different than these, "the creditors are counseled and

17   already have received disclosure about the debtors' business.

18   There seems little need for additional procedural formalities."

19        I do conclude that the discovery and scheduling order

20   entered by this Court, which is at docket number 4366, does

21   serve as the appropriate vehicle for the request that the

22   movants have made here.  The argument in opposition to the

23   request is that the Court should recognize the distinction

24   between solicitation purposes, that is, the movants' obvious

25   desire here to defeat the proposed plan by soliciting negative

- 34 -

1  votes, and that is clear, versus the litigation purposes,

2  which, under these circumstances, as it's characterized in the

3  papers before me, the movants' ability to assess the value of

4  disgorgement claims which are proposed to be settled under the

5  proposed plan.

6          Based upon the submissions, the arguments of counsel

7  and my review of what I think to be applicable Third Circuit

8  law, I am going to order that JPMorgan compile and provide a

9  list of both current and pre-petition lenders, including

10 amounts paid to pre-petition lenders and holdings of current

11 lenders, including mailing addresses.  Here, I conclude that

12 there is a legitimate litigation purpose.  That having been

13 said, I also find that there's likely a legitimate solicitation

14 purpose.  But even if there weren't here, I take the Third

15 Circuit's admonition.  And to the extent that there is a

16 legitimate litigation purpose here, I direct this information

17 be turned over.  The Court will not interfere in the

18 circumstances with respect to solicitation activity that's

19 anticipated by the parties here because there has been an

20 approved disclosure statement absent some impropriety in the

21 communication that's anticipated by the movant here with other

22 credit agreement lenders.  I will limit, however, the use of

23 the information not in the way that JPMorgan Chase has

24 requested but simply for use in this bankruptcy proceeding in

25 the main case and in connection with the confirmation hearing.

- 35 -

1    To the extent other uses are required or requested, the parties

2    can seek further relief of this Court.

3            I'll ask two questions, the first of which is how much

4    time would JPMorgan Chase like or request within which to turn

5    over this information?

6            MR. MOSKOWITZ:  Elliot Moskowitz for the record, Your

7    Honor.  With respect to the information for current lenders, it

8    would be a short period of time.  I think certainly by the

9    end -- I think for sure by the end of the week.  But there's

10   one clarification and this is also responsive to Your Honor's

11   question.  With respect to the pre-petition lenders, if Your

12   Honor is talking about mailing addresses for those folks as

13   well, I'm advised that JPMorgan does not maintain, certainly,

14   in any readily findable format or any more readily findable for

15   JPMorgan than for the credit agreement lenders, the addresses

16   for people who no longer hold the debt.  And so, in that

17   respect -- and also, I don't take Mr. Johnston still to be

18   seeking that information based on the clarification at the

19   beginning of his remarks.  So both just in terms of

20   accessibility to that information and also because I think they

21   stood down from their request, I would ask that there be a

22   clarification, Your Honor, that just with respect to the

23   mailing addresses for former holders of the debt, that that not

24   be -- that there would not be an obligation on the part of

25   JPMorgan to undertake to somehow find that information out.

- 36 -

1    It's certainly not readily accessible.

2            THE COURT:  Mr. Johnston?

3            MR. JOHNSTON:  May I be heard, Your Honor?

4            THE COURT:  Yes.  I thought I said clearly in my reply

5    that we do seek the addresses of the recipients of the pre-

6    petition lenders even though to no longer hold the debt because

7    it's directly relevant to responding and testing the arguments

8    made by the settlement supporters that seeking litigation

9    against these folks would be burdensome, difficult and

10   ultimately not productive.  I find it hard to believe that

11   JPMorgan, as agent for this debt, who received all the

12   transfers who knows who signed up, who made the disbursement to

13   the people of the pre-petition payment does not have this

14   information readily accessible.

15           THE COURT:  Well, let me just say this.  At the

16   beginning, you did say current holders -- addresses of current

17   holders of credit agreement debt.  I'm willing to accept, at

18   Mr. Moskowitz' word, that the information may not be readily

19   available.  What the information is that I don't have is just

20   how much effort, if any, would result in the discovery of this

21   information.  So the parties need to have a further discussion.

22   It's not off the table as far as I'm concerned.  But I would be

23   willing to consider the burden involved in ferreting it out.

24   In any event, the information that's readily available must be

25   turned over at the earliest time.

- 37 -

1        So I'll ask counsel to confer and submit a form of

2    order that embodies this ruling.  And to the extent that there

3    remains a disagreement about how much effort and burden it

4    would involve in producing addresses for lenders who no longer

5    hold the debt, the parties can reach out by conference

6    telephone.  But do that immediately, next day or two, because I

7    want to put this matter to bed.  Are there any questions?

8        MR. JOHNSTON:  One question, Your Honor, just in terms

9    of the clarification.  I don't think I need to make this but at

10    the end of your ruling, you indicated that the information

11    would be produced subject to the condition that it's for use in

12    this bankruptcy proceeding in the main case and in connection

13    with the confirmation hearing.  I just want to make it clear

14    that that includes our ability to use the information to

15    contact current lenders of the debt with respect to the plan.

16        THE COURT:  It doesn't preclude it.

17        MR. JOHNSTON:  Very good.  Thank you.

18        THE COURT:  Any other questions?  All right.  Thank

19    you, counsel.  That concludes this hearing.  The Court will

20    stand adjourned.

21        MR. JOHNSTON:  Thank you, Your Honor.

22        MR. MOSKOWITZ:  Thank you, Your Honor.

23        (Whereupon these proceedings were concluded at 11:36 a.m.)

24

25

1

2                          I N D E X

3

4                        R U L I N G S

5    DESCRIPTION                               PAGE      LINE

6    JPMorgan ORDERED to compile and provide list      34         8

7    of both current and pre-petition lenders,

8    including amounts paid to pre-petition

9    lenders and holdings of current lenders,

10   including mailing addresses; information

11   to be provided is limited for use in this

12   bankruptcy proceeding in the main case

13   and in connection with confirmation hearing

14

15

16

17

18

19

20

21

22

23

24

25

- 39 -

1

2                              C E R T I F I C a T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      LISA BAR-LEIB (CET**D-486)

9      AAERT Electronic Certified Transcriber

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date:  June 17 2010

17

18

19

20

21

22

23

24

25