IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| TRIBUNE COMPANY, et al.,[1] ) | Case No. 08-13141 (KJC) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |
| ) | Hearing Date: July 14, 2010 at 1:30 p.m. |
| ) | Objections Due: July 7, 2010 at 4:00 p.m. |

# MOTION OF BRIDGE AGENT FOR ENTRY OF ORDERS
## (I) ESTABLISHING PROCEDURES FOR ADJUDICATING THE DEBTORS' OBJECTIONS TO THE BRIDGE LOAN CLAIMS IN CONJUNCTION WITH PLAN CONFIRMATION PROCEEDINGS AND (II) ALLOWING SUCH CLAIMS IN FULL

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Wells Fargo Bank, N.A., solely as successor administrative agent and not individually (in such capacity, the "Bridge Agent") under that certain $1.6 billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among Tribune Company ("Tribune" and, collectively with its affiliated debtors and debtors in possession, the "Debtors"), each lender from time to time party thereto (the "Bridge Lenders") and the other named parties thereto, hereby moves this Court (the "Motion"), pursuant to sections 105(a) and 502(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of (I) an order in the form of Exhibit A hereto (the "Procedures Order"), establishing procedures for adjudicating objections to the Bridge Loan Claims, including a briefing and discovery schedule, in conjunction with the confirmation proceedings (the "Confirmation Proceedings") in respect of the Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries dated June 4, 2010 [Docket No. 4690, Ex. A] (the "Plan"), and ultimately, (II) a further order allowing such claims in full.[2]

## PRELIMINARY STATEMENT

1.      The Bridge Agent seeks entry of the Procedures Order, requiring the Debtors to prosecute any objections they may have to the Bridge Loan Claims in connection with the Confirmation Proceedings rather than long after confirmation, as the Debtors have threatened in their Disclosure Statement. The Bridge Loan Claims are scheduled by Tribune as undisputed, and the Bridge Agent has filed a master proof of claim in respect thereof which is prima facie valid. However, the Debtors' reorganization plan provides that if the Bridge Lenders do not vote to accept the Plan, the Bridge Loan Claims shall be deemed disputed and subject to

---

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries, dated June 4, 2010 (the "Disclosure Statement"). [Docket No. 4690]

disallowance. The Debtors also threaten to pursue fraudulent conveyance and avoidance theories to dispute the Bridge Lenders' claims and to engage in "protracted litigation" with the Bridge Lenders over the allowance of their claims, which litigation will not commence until several months after the Effective Date. Notably, the Bridge Lenders are the only class who would receive such treatment under the Plan even though a large portion of the Senior Credit Facility was funded at the same time as the Bridge Facility. The Debtors' approach is clearly a tactic designed to punish the Bridge Lenders by subjecting holders of Bridge Loan Claims to protracted and unnecessary litigation and delaying their distributions if they refuse to support the unfair settlement and accept the meager distributions that they would receive under the Plan.

2. The process that the Debtors have devised to address the allowance of the Bridge Loan Claims unfairly prejudices the Bridge Lenders, defies common sense, and would result in a waste of the Court's and the estates' resources. In seeking to delay presentation of their objection to the Bridge Loan Claims until well after the Effective Date, the Debtors' proposal would require the parties to litigate many of the same issues twice: once at confirmation in connection with determining whether the Settlement of the LBO-Related Causes of Action is reasonable, and again several months later in connection with their post-confirmation challenge to the Bridge Loan Claims.

3. There is no legitimate reason why allowance of the Bridge Loan Claims, which will turn on the same issues that will be hotly contested at confirmation (and that the Debtors have spent more than a year evaluating), should not also be adjudicated at Plan confirmation. The process the Bridge Lenders propose will promote efficiency and substantially reduce the burden on both the parties and the court, and prevent potentially inconsistent results. Moreover, allowance of the Bridge Loan Claims must be adjudicated in connection with the

Confirmation Proceedings because the extent to which the Bridge Loan Claims are allowed could have a direct impact on whether the Plan is confirmable. The Bridge Agent respectfully submits that entry of the Procedures Order, establishing a briefing and discovery schedule that allows for the adjudication of the Debtors' objections to the Bridge Loan Claims in conjunction with the Confirmation Proceedings, will avoid prejudice, further the expeditious and efficient resolution of these cases, and allow for the most efficient use of the Court's resources.[3] The Bridge Agent also requests entry of a further order allowing the Bridge Loan Claims in full.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.     The Bridge Loan Claims (in the amount of $1,619,506,849.32) were scheduled as undisputed in Tribune's Schedules of Assets and Liabilities, Schedule F, filed on June 12, 2009. [Docket No. 1343] In addition, the Bridge Agent's predecessor filed a master proof of claim in respect of the Bridge Loan Claims on June 10, 2009 against the Debtors, which is prima facie valid under section 506(a) of the Bankruptcy Code.

6.     The Debtors' initial joint plan of reorganization classified the Bridge Loan Claims together with the claims of the Senior Lenders at Tribune and deemed such claims allowed. (See Joint Plan of Reorganization for Tribune Company and its Subsidiaries, dated April 12, 2010 [Docket No. 4008, Ex. A] at 25) The Bridge Agent questioned this classification

---

[3]     The Bridge Agent brings this Motion now because there likely would be insufficient time to address these issues if raised in the Bridge Agent's objection to Plan confirmation (due July 30, 2010). Moreover, as the outcome of this Motion may bear on the Bridge Lenders' voting on the Plan, the Bridge Agent was compelled to seek a hearing on the Motion in advance of the July 30 voting deadline.

scheme, and on May 19, 2010, the Debtors filed an amended reorganization plan that separately classified the Bridge Loan Claims. (See Proposed Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries, dated May 19, 2010 [Docket No. 4472, Ex. A] at 26) The Debtors subsequently filed several iterations of the disclosure statement and reorganization plan in response to objections raised by several parties, including the Bridge Agent, and ultimately filed the current Disclosure Statement and current Plan on June 4, 2010.

7. Under the current Plan, the Claims of the Senior Lenders will be deemed Allowed, regardless of whether the Holders of those Claims vote to accept or reject the Plan. (Plan at 26, 31; Disclosure Statement at 77) If a Bridge Lender votes to accept the Plan, it will receive the same Settlement treatment as the holders of Senior Loan Claims on a pro rata basis, i.e., a distribution equal to 0.44% of its claims. (Disclosure Statement at 12, 78)

8. In contrast, if the Bridge Loan Class rejects the current Plan, the Claims of Bridge Lenders that vote to reject are deemed Disputed Claims. (Disclosure Statement at 78) Specifically, the Plan provides:

> If the Bridge Loan Class rejects the Plan, the Claims of any Holders who do not elect, and are not deemed to elect, to receive the treatment [of holders accepting] the Plan <u>will be subject to treatment as Disputed Claims, and the Bankruptcy Court will determine after confirmation of the Plan whether or not and the extent to which such Claims should be Allowed Claims not subject to avoidance, setoff, subordination, or other defenses.</u>

(Disclosure Statement at 78 (emphasis added))

9. The Debtors state in the Disclosure Statement that, "[t]he issues raised in Claim objections to the Bridge Loan Claims may include . . . the potential avoidance claims respecting the Bridge Loan Claims generally described in [the discussion of the Settlement] in this Disclosure Statement." (Disclosure Statement at 79) The Disclosure Statement further provides that the Debtors may commence "[a]ctions for avoidance, setoff, or subordination and

assertion of other defenses . . . by adversary proceeding or by Claim objection as appropriate under the Bankruptcy Rules" in respect of disputed Bridge Loan Claims. (Id.)

10.     In addition, the Debtors threaten to subject the Bridge Lenders "to protracted litigation after the Effective Date," and warn that the final order necessary to deem a Bridge Loan Claim an Allowed Claim "is likely to be substantially after the Effective Date of the Plan." (Disclosure Statement at 12, 79) To carry out this threat, the Debtors reserve the right to serve and file objections to the allowance of claims by no "later than (i) 210 days after the Effective Date or (ii) such later date as may be determined by the Bankruptcy Court upon a motion which may be made without further notice or hearing," and reserve the right to provide some other, lesser, undisclosed cram down treatment on account of the Bridge Loan Claims in the event they are deemed Allowed. (Id. at 78-79, 109; Plan at 27)

## RELIEF REQUESTED

11.     By this Motion, the Bridge Agent seeks allowance of the Bridge Lenders' Claims and to have the Debtors' objections to the Bridge Loan Claims adjudicated in conjunction with the Confirmation Proceedings. By the Debtors' own admission, the vast majority of the issues and facts underpinning any objection the Debtors may raise to the Bridge Loan Claims will be addressed during the Confirmation Proceedings as part of the assessment of whether the Settlement of the LBO-Related Causes of Action is fair and reasonable. (See Disclosure Statement at 79 ("The issues raised in Claim objections to the Bridge Loan Claims may include, but not be limited to, the potential avoidance claims respecting the Bridge Loan Claims generally described in [the discussion of the Settlement in] this Disclosure Statement.")) Thus, requiring the Debtors to prosecute objections to the Bridge Loan Claims in conjunction with the Confirmation Proceedings will further the interests of all parties by conserving the resources of

the Court, the Debtors' estate and the parties, and will avoid undue prejudice to the Bridge Lenders as well as potentially inconsistent results. The relief sought herein will not prejudice the Debtors, who have already spent more than a year investigating the LBO-Related Causes of Action (see Disclosure Statement at 65) and bear the burden of proof at confirmation of demonstrating that the Settlement is reasonable and also in respect of any objection to the Bridge Loan Claims.

12. Accordingly, the Bridge Agent seeks entry of the Procedures Order implementing a schedule that would enable the Court to adjudicate allowance of the Bridge Loan Claims in conjunction with the Confirmation Proceedings. The Procedures Order provides that:

- Any discovery relating to the claims objections shall be conducted pursuant to the Court's Discovery and Scheduling Order for Plan Confirmation, dated May 13, 2010, with such modifications as agreed to by the parties or as directed by the Court;[4]

- The Debtors shall file a memorandum of law providing the basis for disputing the Bridge Loan Claims by July 20, 2010;

- The Bridge Agent shall submit any response thereto by August 3, 2010;

- A hearing on the Debtors' objections to the Bridge Loan Claims shall be held in conjunction with the Confirmation Proceedings scheduled to commence on August 16, 2010.

The Bridge Agent also requests entry of a further order allowing the Bridge Loan Claims in full.

### BASIS FOR RELIEF

13. Under section 502(a) of the Bankruptcy Code, the Bridge Loan Claims are "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502(b) of the Bankruptcy Code provides that, "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the

---

[4] The Bridge Agent respectfully requests that any further scheduling or procedural orders relating to Confirmation Proceedings also incorporate procedures relating to the Bridge Loan Claims adjudication.

petition, and shall allow such claim in such amount, except to the extent that [one of the enumerated exceptions in section 502(b) exists]." 11 U.S.C. § 502(b). The current Plan and Disclosure Statement provide that, unless the Bridge Lenders vote to accept the Plan, the Debtors threaten to dispute the Bridge Loan Claims based on, among other things, theories of "avoidance, setoff, or subordination." (Disclosure Statement at 79) The Debtors bear the burden of proof in respect of any objection to the Bridge Loan Claims. In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (objector bears burden of producing evidence sufficient to negate prima facie validity of filed claim). To preserve judicial resources, ensure procedural fairness and avoid undue prejudice, the Debtors' objection to the Bridge Loan Claims should be addressed as part of the Confirmation Proceedings.

I.  **The Bridge Loan Claims Should Be Adjudicated as Part of the Confirmation Proceedings for Judicial Economy Reasons**

14. The Confirmation Proceedings will necessarily require the presentation of evidence concerning the merits of the LBO-Related Causes of Action in order for the Court to determine whether the Settlement, which is the centerpiece of the Plan, is fair and reasonable and in the best interests of creditors. (Plan at 47; Disclosure Statement at 6-7, 67-69) At the same time, the Debtors state that if the Bridge Lenders do not vote to accept the Plan, their Claims are disputed and will be subject to "protracted litigation" involving the same fraudulent conveyance and avoidance actions that are purportedly resolved in their entirety by the Settlement. (Disclosure Statement at 12, 79) Accordingly, any evidence that the Debtors would adduce with respect to the fairness of the Settlement will bear directly on the theories the Debtors would advance in disputing the Bridge Loan Claims. Conversely, if the Debtors contend that the Bridge Loan Claims should be avoided as a fraudulent conveyance, such allegations, and the evidence adduced in support of such allegations, would bear directly on the fairness of the

Settlement. For example, if the Debtors successfully demonstrate that the Bridge Loan Claims should be avoided, then the Settlement—which allows Lenders who structured the 2007 LBO transaction (including the Bridge Facility) to retain all of their fees—would be inherently unfair to creditors and should not be approved by this Court.

15. The process proposed by the Debtors, who should be acting as estate fiduciaries for all constituencies, is clearly a tactical one created without any regard for judicial efficiency or fairness to the Bridge Lenders. Given the substantial overlap between the issues that will be addressed at confirmation and the objections to the Bridge Loan Claims that the Debtors threaten to prosecute thereafter, it would be a colossal waste of judicial resources to address the Claims objections in a separate proceeding. See, e.g., In re TMI Litigation, 193 F.3d 613, 724 (3d Cir. 1999) (purpose of consolidating adversary proceedings is "to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues"). Nor would re-litigating LBO-Related Causes of Action in a post-confirmation claims objection process be an efficient use of estate or other parties' resources.

## II. The Bridge Lenders Will Be Prejudiced if Forced to Litigate Allowance of the Bridge Loan Claims Post-Confirmation

16. As described above, adjudicating the Debtors' objections to the Bridge Loan Claims after confirmation of the Plan will result in a waste of judicial and estate resources as it will require avoidance actions and related claims to be litigated twice. The schedule proposed by the Debtors also prejudices the Bridge Lenders both in terms of cost and delay. The Plan provides that the Debtors may wait seven months before addressing their objection to the Bridge Loan Claims, which would unnecessarily delay distributions to the Bridge Lenders. (Plan at 56; Disclosure Statement at 108) And allowing the Debtors to prosecute objections to the

Bridge Loan Claims as much as 210 days after the Effective Date would force the Bridge Lenders to expend significant additional resources to re-litigate LBO-Related Causes of Action post-confirmation.[5]

17. In addition, the Debtors' proposed schedule is inherently unfair to the Bridge Lenders vis-à-vis other similarly situated creditors. Under the Plan, Senior Lenders, who participated in Step 2 of the 2007 LBO transaction along with the Bridge Lenders, have their claims deemed Allowed and will receive their distribution shortly after the Effective Date regardless of whether they vote to accept or reject the Plan. As discussed above, Bridge Lenders who vote to reject the Plan will have their Claims deemed Disputed and will be subjected to "protracted litigation" that may not commence until seven months after the Effective Date. (Disclosure Statement at 12, 77-79) If the Debtors' basis for treating the rejecting Bridge Loan Claims as disputed and seeking to disallow these Claims is that Step 2 of the 2007 LBO was a fraudulent conveyance, then the allowance and distribution on account of the similarly situated Senior Loan Claims is extremely prejudicial to the Bridge Lenders and moreover does not satisfy the requirements for cram-down treatment under section 1129(b) of the Bankruptcy Code.

18. Finally, if the Bridge Lenders' claims are not heard concurrently with Plan confirmation, the Bridge Lenders could be denied the opportunity to present a substantial basis for why the Plan is not confirmable. If the Bridge Lenders are entitled (which the Bridge Agent believes they are) to a pro rata share of Tribune's distributable value, yielding a recovery of more than 4.6%, and it is later determined that the Bridge Loan Claims are deemed Allowed in full (or perhaps even at some lesser amount), the Bridge Lenders may be entitled to a recovery greater

---

[5] It is also possible that the Bridge Lenders would be prejudiced by the scope of the releases and injunctions granted under the Plan. For example, the order barring contribution and indemnity claims may act to limit the Bridge Lenders' ability to counterclaim or cross-claim in any post-confirmation litigation of their Claims relating to the LBO-Related Causes of Action. (Disclosure Statement at 115-116)

than $74 million. However, it is a condition to effectiveness of the Plan that the Bridge Lenders not receive a recovery greater than $74 million. (Disclosure Statement at 80; Plan § 10.1.1(i)) Accordingly, it is necessary to determine both the Bridge Lenders' pro rata share of Tribune's distributable value and the allowed amount of the Bridge Loan Claims to ascertain whether the Plan is confirmable.[6] If the Debtors are permitted to delay prosecuting any objections they may have to the Bridge Loan Claims until 210 days after the Effective Date, any argument by the Bridge Lenders that the Plan was unconfirmable as a result of the Court's ruling on the allowance of the Bridge Loan Claims may be rendered equitably moot by the substantial consummation of the Plan.

## NOTICE

19.     Notice of this Motion has been provided to: (i) counsel for the Debtors; (ii) the Office of the United States Trustee; (iii) counsel for the Creditors Committee; and (iv) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Bridge Agent submits that no other or further notice is necessary.

---

[6]     Scheduling objections to Bridge Loan Claims so that they proceed in conjunction with the Confirmation Proceedings is also appropriate because the Court will already be calculating the distributable value of Tribune (a necessary step in determining the Bridge Lenders' recovery) during the Confirmation Proceedings. (Disclosure Statement at 78)

## CONCLUSION

WHEREFORE, the Bridge Agent respectfully requests that the Court enter (i) the Procedures Order (in the form of Exhibit A hereto), establishing procedures for adjudicating the Debtors' objections to the Bridge Loan Claims, and ultimately, (ii) a further order allowing such claims in full.

Dated: June 22, 2010
      Wilmington, Delaware

                          FOX ROTHSCHILD LLP

                          By: /s/ *signature*
                          Jeffrey M. Schlerf, Esq. (No. 3647)
                          Eric M. Sutty, Esq. (No. 4007)
                          John H. Strock, Esq. (No. 4965)
                          Citizens Bank Center
                          919 North Market Street, Suite 1600
                          Wilmington Delaware 19801
                          Telephone: (302) 654-7444

                          -and-

                          WHITE & CASE LLP
                          Thomas E Lauria
                          Gerard Uzzi
                          David Hille
                          Andrew Hammond
                          Scott Greissman
                          1155 Avenue of the Americas
                          New York, NY 10036
                          Telephone: (212) 819-8200
                          Facsimile: (212) 819-8113

                          Attorneys for the Administrative Agent