IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: July 15, 2010 @ 4:00 p.m.<br>Hearing Date: N/A |

SEVENTEENTH MONTHLY APPLICATION OF ALIXPARTNERS, LLP,
FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR COMPENSATION AND REIMBURSEMENT
OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

| | |
|---|---|
| Name of Applicant: | AlixPartners, LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | *Nunc Pro Tunc* to December 19, 2008 |
| Period for which compensation and reimbursement are sought: | May 1, 2010 through May 31, 2010 |
| Amount of monthly fees to be approved | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

as actual, reasonable and necessary: $201,818.50
Amount of monthly expenses sought
as actual, reasonable and necessary: $427.33

This is a __X__ monthly ____ interim ____ final application

Prior Applications:

| Date Filed | Docket No. | Period Covered | Total Fees Requested | Total Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 03/02/09 | 460 | 12/19/08 - 1/31/09 | $ 649,960.75 | $ 11,579.82 | $ 519,968.60 | $ 11,579.82 |
| 03/30/09 | 828 | 2/1/09 - 2/28/09 | $ 411,917.75 | $ 12,482.08 | $ 329,534.20 | $ 12,482.08 |
| 04/29/09 | 1104 | 3/1/09 - 3/31/09 | $ 412,954.25 | $ 3,978.64 | $ 330,363.40 | $ 3,978.64 |
| 05/26/09 | 1240 | 4/1/09 - 4/30/09 | $ 635,338.25 | $ 12,081.96 | $ 508,270.60 | $ 12,081.96 |
| 06/25/09 | 1630 | 5/1/09 - 5/31/09 | $ 533,933.75 | $ 8,547.74 | $ 427,147.00 | $ 8,547.74 |
| 07/27/09 | 1834 | 6/1/09 - 6/30/09 | $ 360,490.75 | $ 5,257.53 | $ 288,392.60 | $ 5,257.53 |
| 08/25/09 | 2015 | 7/1/09 - 7/31/09 | $ 544,657.00 | $ 10,922.39 | $ 435,725.60 | $ 10,922.39 |
| 09/25/09 | 2233 | 8/1/09 - 8/31/09 | $ 604,033.25 | $ 3,317.57 | $ 483,226.60 | $ 3,317.57 |
| 10/26/09 | 2432 | 9/1/09 - 9/30/09 | $ 372,528.75 | $ 14,191.13 | $ 298,023.00 | $ 14,191.13 |
| 11/25/09 | 2636 | 10/1/09 - 10/31/09 | $ 419,020.25 | $ 976.65 | $ 335,216.20 | $ 976.65 |
| 12/28/09 | 2938 | 11/1/09 - 11/30/09 | $ 365,887.00 | $ 318.58 | $ 292,709.60 | $ 318.58 |
| 01/25/10 | 3193 | 12/1/09 - 12/31/09 | $ 351,120.50 | $ 200.08 | $ 280,896.40 | $ 200.08 |
| 02/25/10 | 3535 | 01/1/10 - 01/31/10 | $ 393,054.50 | $ 2,408.32 | $ 314,443.60 | $ 2,408.32 |
| 03/25/10 | 3854 | 02/1/10 - 02/28/10 | $ 271,360.00 | $ 3,333.39 | $ 217,088.00 | $ 3,333.39 |
| 04/26/10 | 4162 | 03/1/10 - 03/31/10 | $ 401,797.00 | $ 4,845.85 | $ 321,437.60 | $ 4,845.85 |
| 05/26/10 | 4618 | 04/01/10-04/30/10 | $ 264,338.50 | $ 2,146.52 | $ 211,470.80 | $ 2,146.52 |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.[2]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>(Jointly Administered)<br><br>Objection Deadline: July 15, 2010 @ 4:00 p.m.<br>Hearing Date: N/A |

## SEVENTEENTH MONTHLY APPLICATION OF ALIXPARTNERS, LLP, FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. §§ 330 AND 331

AlixPartners, LLP ("AlixPartners"), financial advisor to the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby submits this Seventeenth Monthly Application of AlixPartners, LLP, financial advisor to the Official Committee of Unsecured Creditors, for Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. §§ 330 and 331 (the "Application") for services performed during the period commencing May 1, 2010 through and

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

including May 31, 2010 (the "Application Period").[3] In support thereof, AlixPartners respectfully represents as follows:

## BACKGROUND

1. On December 8, 2008, (the "Petition Date"), the Debtors commenced these bankruptcy cases by each filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

3. On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed the Committee, and on December 19, 2008, the Committee selected AlixPartners to serve as its financial advisor.

4. On February 20, 2009, this Court entered an order authorizing the employment and retention of AlixPartners as financial advisor to the Committee *nunc pro tunc* to December 19, 2008.

5. On March 19, 2009, the Court entered an order appointing Stuart Maue as fee examiner for these chapter 11 cases *nunc pro tunc* to February 20, 2009.

6. On August 14, 2009, Stuart Maue submitted its Fee Examiner's Final Report Regarding First Interim Fee Application of AlixPartners, LLP.

7. On March 23, 2010, Stuart Maue submitted its Fee Examiner's Final Reports Regarding the Second & Third Interim Fee Application of AlixPartners, LLP.

---

[3] Professional fees for this Application Period include $607.49 related to prior filing period which were not included in any prior Application.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

9.   The statutory bases for relief requested herein are Bankruptcy Code Sections 105(a), 330 and 331.

## TERMS AND CONDITIONS OF COMPENSATION OF ALIXPARTNERS

10.   Subject to Court approval, AlixPartners seeks payment for compensation on an hourly basis, plus reimbursement of actual, necessary expenses incurred by AlixPartners during the Application Period. The rates charged by AlixPartners in these cases do not differ from the rates charged to AlixPartners' non-bankruptcy clients.

11.   A summary of the hours spent, the names of each professional rendering services to the Committee during the Application Period, the regular customary billing rates and the total value of time incurred by each of the AlixPartners professionals rendering services to the Committee is attached hereto as Exhibit "A." A copy of the computer generated time entries reflecting the time recorded for these services, organized in project billing categories in accordance with the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines"), is attached hereto as Exhibit "B." A statement of expenses incurred by AlixPartners during the Application Period is attached hereto as Exhibit "C." All time entries and requested expenses are in compliance with Local Rule 2016-2.[4]

---

[4] AlixPartners has also attempted to ensure that this Application complies with the Guidelines. To the extent that the Guidelines conflict with local rules, in particular, Local Rule 2016-2, AlixPartners has chosen to comply with such local rule. AlixPartners will supplement this Application with additional detail or information upon request.

5

12. On January 15, 2009, this Court entered the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Administrative Order"). Pursuant to the Administrative Order, AlixPartners and other professionals retained in these cases are authorized to file and to serve upon the Debtors and the parties identified in the Administrative Order monthly fee applications (each a "Monthly Fee Application") of their fees and expenses. After the expiration of a twenty (20) day objection period, the Debtors are authorized to promptly pay eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Fee Application, unless an objection has been lodged against specific fees and/or expenses, or the Court orders otherwise.

13. In accordance with the Administrative Order, AlixPartners has filed and served upon the Debtors and other parties identified in the Administrative Order this Application with respect to fees and expenses incurred during the Application Period; to wit, fees in the amount of $201,818.50 and expenses in the amount of $427.33.

14. All services and costs for which compensation is requested by AlixPartners in this Application were reasonable and necessary and were performed for and on behalf of the Committee during the Application Period.

## CASE STATUS

15. To the best of AlixPartners' knowledge, the Debtors' monthly operating reports contain up-to-date information regarding the amount of cash on hand or on deposit in the Debtors' estates, the Debtors' operating profits or losses, and the amount of unencumbered funds in the Debtors' estates.

16. To the best of AlixPartners' knowledge, the Debtors have paid to the United States Trustee their initial quarterly fees and have filed their monthly operating reports for all fiscal periods through April 25, 2010.

### NARRATIVE SUMMARY OF SERVICES
### RENDERED ON A PROJECT SUMMARY BASIS

17. All of the professional services that AlixPartners rendered to the Committee during the Application Period are set forth in detail in Exhibit "B," segregated according to project billing categories pursuant to the Guidelines. A brief description of certain services deserving specific mention are highlighted below, by project category:

(A) **Business Analysis:** (Total Hours: 4.9; Total Fees: $2,669.00)

18. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed the Debtors' business units and their operations. In addition, AlixPartners reviewed and analyzed news, developments and actions of industry peers and competitors in the Debtors' various markets. AlixPartners also reviewed third party research on the newspaper and broadcasting industry and competitors.

(B) **Current Financials:** (Total Hours: 128.1; Total Fees: $70,528.00)

19. Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed the Debtors' historical and current financial statements, operating statistics and management operating reports. AlixPartners prepared weekly presentations to the Committee on cash flow and operating performance. AlixPartners also reviewed and analyzed the weekly cash flow reports provided by the Debtors comparing actual performance to forecast, by week, for a thirteen week period and received clarification on variances with Debtors' advisors. Furthermore, AlixPartners reviewed and analyzed Debtors' March 2010, Q1 2010, and April 2010 operating results.

(C)    <u>Employee Issues</u>: (Total Hours: 36.0; Total Fees: $20,991.00)

20.    Among other services provided in this category during the Application Period, AlixPartners performed its review and analysis of the Debtors' proposed 2010 management incentive compensation programs and severance agreement related to a senior Tribune executive. AlixPartners also prepared a report to the Committee on the Debtors' proposed 2010 management incentive compensation programs.

(D)    <u>Plan of Reorganization</u>: (Total Hours: 27.1; Total Fees: $16,358.00)

21.    Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed the proposed settlement agreement and related supporting documents between the Debtors and various creditor parties. In addition, AlixPartners reviewed and analyzed the Debtors' draft of the amended Disclosure Statement and Plan of Reorganization.

(E)    <u>Executory Contracts</u>: (Total Hours: 3.3; Total Fees: $2,046.00)

22.    Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed Debtors' Motion of Debtors for an Order Authorizing Rejection of the Master Agreement with Dun & Bradstreet and provided comments to Committee counsel.

(F)    <u>Misc. Motions</u>: (Total Hours: 9.9; Total Fees: $5,840.00)

23.    Among other services provided in this category during the Application Period, AlixPartners reviewed and analyzed various motions which are not otherwise specifically identified by a separate time category. During the Application Period, these motions included the *Supplemental Application for an Order Modifying the Scope of the Retention of PricewaterhouseCoopers LLP to Include Certain Advisory Services in Connection with the*

*Application of Fresh Start Accounting Services and Motion to Authorize (Second Supplemental Application for an Order Modifying the Scope of the Retention of Ernst and Young LLP to Include Certain Valuation Services in Connection with the Application of Fresh Start Accounting.*

      (G)    <u>Avoidance Actions</u>: (Total Hours: 127.5; Total Fees: $60,582.00)

24. Among other services provided in this category during the Application Period, AlixPartners worked closely with Committee counsel and reviewed and analyzed potential avoidance actions, including those relating to the Debtors' leveraged ESOP transaction. In addition, AlixPartners assisted Committee counsel in reviewing and analyzing a significant body of documents produced through the discovery process related to the aforementioned leveraged ESOP transaction. Furthermore, AlixPartners held meetings with and provided information to the Examiner and its financial advisors.

      (H)    <u>UCC Meetings</u>: (Total Hours: 10.6; Total Fees: $6,736.00)

25. Among other services provided in this category during the Application Period, AlixPartners participated in regular meetings of the Committee and with the Committee's professionals including in person and telephonic meetings.

      (I)    <u>Billing and Retention</u>: (Total Hours: 23.5; Total Fees: $13,551.00)

26. Among other services provided in this category during the Application Period, AlixPartners prepared and filed its Sixteenth Monthly Fee Application and exhibits. Also, AlixPartners prepared detailed responses to the Fee Examiner's preliminary reports regarding the Fourth Interim Fee Application.

      (J)    <u>Non-Working Travel</u>: (Total Hours: 9.5; Total Fees: $5,035.00, before 50% adjustment)

27. During the Application Period, AlixPartners incurred non-working travel time necessary to attend an in-person Committee meeting in New York. Non-working travel fees requested are at 50% of AlixPartners' normal hourly rates.

## COMPENSATION REQUESTED

28. AlixPartners expended 380.4 hours during the Application Period in furtherance of its efforts on behalf of the Committee. AlixPartners requests allowance of compensation in the amount of $201,818.50 for services rendered during the Application Period. Pursuant to the Administrative Order, AlixPartners requests payment of 80% of the total fees requested, or $161,454.80. None of the requested fees detailed herein have been paid.

## REIMBURSEMENT OF EXPENSES

29. During the Application Period, AlixPartners incurred certain necessary expenses in rendering services to the Committee as set forth in Exhibit "C." AlixPartners seeks reimbursement only for the actual expenses charged by third-party service providers. AlixPartners seeks reimbursement for computer assisted research, which is the actual cost of such charges.

30. AlixPartners seeks reimbursement for its reasonable, necessary and actual expenses incurred during the Application Period for the total amount of $427.33.

## LEGAL STANDARD

31. Bankruptcy Code Section 330(a)(1) allows the payment of:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional and the cost of comparable services in non-bankruptcy contexts. See Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Building Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994). Thus, the "baseline rule is for firms to receive their customary rates." Zolfo Cooper, 50 F.3d at 259.

32. In accordance with its practices in both bankruptcy and non-bankruptcy matters, AlixPartners has calculated its compensation requested in this Application by applying its standard hourly rates to the number of hours worked. AlixPartners' calculation is based upon hourly rates that are well within the range of rates that are charged by comparable firms in similar bankruptcy cases. Accordingly, AlixPartners' rates should be determined to be reasonable under Bankruptcy Code Section 330.

33. AlixPartners' fees during the Application Period are also reasonable under the prevailing legal standard and should be allowed. The amount of these fees is not unusual given the complexity and size of the Debtors' Chapter 11 cases. AlixPartners' fees are commensurate with fees that other financial advisors of comparable experience and expertise have charged and been awarded in similar Chapter 11 cases. Accordingly, AlixPartners' fees are reasonable pursuant to Bankruptcy Code Section 330.

34. Bankruptcy Code Section 330(a)(1)(B) permits reimbursement for actual, necessary expenses. AlixPartners' expenses incurred during the Application Period are set forth in this Application and constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. AlixPartners has properly requested reimbursement of only actual, necessary and appropriate expenses.

35. Except as permitted by Rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or understanding exists between AlixPartners and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Committee.

36. Pursuant to the standards set forth in Bankruptcy Code Sections 330 and 331, AlixPartners submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

37. The time records annexed to this Application constitute only a general statement of the services rendered and time expended without description of the pressure and constraints under which AlixPartners actually rendered these services. The considerable challenges of these cases have been attended to and managed by AlixPartners at all levels, promptly, expertly and often to the exclusion of other matters in AlixPartners' office. AlixPartners submits, therefore, that its fees and expenses were actually, necessary, reasonable and justified, and should be allowed in full.

## NOTICE AND NO PRIOR APPLICATION

38. No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Application has been given to: (a) the Debtors; (b) counsel to the Debtors; (c) the United States Trustee; and (d) all parties required to be given notice in the Administrative Order. In light of the nature of the relief requested herein, AlixPartners submits that no further or other notice is required.

39. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, AlixPartners respectfully requests that the Court: (i) grant the Application; and (ii) grant such other and further relief as is just and proper.

Dated: June 25, 2010  
       Wilmington, Delaware

**ALIXPARTNERS, LLP**

_____  
Alan D. Holtz  
40 West 57th Street  
New York, NY 10019  
Telephone: (212) 490-2500  
Facsimile: (212) 490-1344

*Financial Advisor to the Official Committee of Unsecured Creditors*