IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Hearing Date: July 14, 2010 at 1:30 p.m. EDT**<br>**Objection Deadline: July 7, 2010 at 4:00 p.m. EDT** |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 365(A) AUTHORIZING THE DEBTORS TO ASSUME CERTAIN SYNDICATED PROGRAM AGREEMENTS WITH <u>CARSEY-WERNER DISTRIBUTION</u>

Debtors Tribune Broadcasting Company, KPLR, Inc., Tribune Broadcast Holdings, Inc., Tribune Television Company, Tribune Television Holdings, Inc., and WTXX Inc. (collectively, the "<u>Tribune Parties</u>") hereby move this Court (the "<u>Motion</u>") for entry of an order, pursuant to section 365(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

authorizing the assumption of certain amended syndicated program agreements entered into by the Tribune Parties and Carsey-Werner Distribution ("Carsey-Werner"), as more fully described herein. In further support of the Motion, the Tribune Parties respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), Tribune Company ("Tribune") and certain of its subsidiaries each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An additional Debtor, Tribune CNLBC, LLC,[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 12, 2009. In all, the Debtors comprise 111 entities.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). [Docket Nos. 43, 2333].

3. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

4. On December 18, 2008, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee. The Committee has been apprised of the relief requested herein.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought

---

[2] Tribune CNLBC, LLC was formerly known as Chicago National League Ball Club, LLC.

herein are sections 365(a), 363(b), and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6006(e)(3).

## BACKGROUND TO THE MOTION

6.  Tribune Company ("Tribune"), a Debtor in the above-captioned case, is America's largest employee-owned media company and is the ultimate parent company of each of the other Debtors. Tribune operates businesses in publishing, interactive media, and broadcasting. These operations are conducted through two business divisions: (i) publishing and (ii) broadcasting and entertainment. Tribune's broadcasting and entertainment division owns and operates 23 network-affiliated television stations, "superstation" WGN America, and Chicago cable news station CLTV, which together reach more than 80% of television households in the United States. The Tribune Parties own and operate five (5) of these stations, broadcasting in four (4) distinct designated market areas ("DMAs").[3]

7.  The Tribune Parties program their television stations with a variety of local news, sports, and general entertainment programming, much of which is obtained from third-party program suppliers. General entertainment programming comprises the bulk of a television station's daily broadcast schedule, and such programming has two primary sources: (i) network programming that is provided to the station by a broadcast network (e.g., CBS, ABC, NBC, the CW, and FOX) and generally airs on a uniform schedule on all network-affiliated stations nationwide, and (ii) syndicated programming that is provided to the station from third-party program suppliers, or "syndicators," for broadcast solely within a local DMA, usually during negotiated time periods, or "windows." The agreements that are the subject of this

---

[3] KPLR, Inc. operates KPLR-TV (St. Louis, MO); Tribune Broadcast Holdings, Inc. operates KRCW-TV (Portland, OR); Tribune Television Company operates WTIC-TV (Hartford, CT); Tribune Television Holdings, Inc. operates WXMI-TV (Grand Rapids, MI); and WTXX Inc. operates WCCT-TV, f/k/a WTXX-TV (Hartford, CT). Tribune Broadcasting Company is the parent company of each of the other Tribune Parties.

Motion fall within the second category. Syndicators generally license the right to air the programs that they distribute, on either a "first-run" basis (i.e., programs originally produced and distributed nationally on an individual market-by-market basis) or an "off-network" basis (i.e., programs originally produced and distributed nationally via a major broadcast network and then "re-run"), by entering into syndicated program agreements with television stations throughout the United States.

8.  Prior to the Petition Date, the Tribune Parties, or stations owned by the Tribune Parties, entered into four (4) syndicated program agreements with Carsey-Werner for the popular television series *That '70s Show* (collectively, the "Program Agreements"). Carsey-Werner is an independent distribution company that specializes in the creative development and distribution of quality, comedy programming for domestic and international markets, and currently distributes twenty-seven (27) "off-network" series. *That '70s Show* is a 30-minute situation comedy aired daily by the Tribune Parties' television stations. In all, *That '70s Show* comprises 16.5 hours per week of programming for the Tribune Parties' stations.

9.  The Program Agreements set forth the terms governing the broadcast of *That '70s Show* by each station, including, among other things, the term (i.e., each of the Agreements run through September 22, 2013), the number of episodes to be aired over the term, the number of times *That '70s Show* is to be aired each week, the time periods within which the episodes must be run, and the weekly fee. The Tribune Parties view these Program Agreements as economically favorable and desire to maintain them. Among other things, the Program Agreements allow the Tribune Parties to broadcast *That '70s Show* in time periods that optimize the stations' ability to retain their audience from program to program and to otherwise manage their broadcast schedules to greatest advantage. Additionally, the Tribune Parties have the right

to sell and insert commercial advertisements within the syndicated programming and to retain all the proceeds derived therefrom, an important source of revenue to the Tribune Parties.

10. As a result of recent discussions, the parties have agreed to certain amendments to the Program Agreements, on the basis of which the Tribune Parties are prepared to assume such Agreements, as amended. The amended Program Agreements will reduce, effective July 5, 2010, the weekly fees paid to Carsey-Werner in the Portland and Hartford DMAs by approximately 35% and 20%, respectively, over the remaining term of the Agreements. The aggregate savings to the Tribune Parties over time from these reductions will be approximately $445,000. In addition, the amendments will expand the time period windows for the Tribune Parties to air *That '70s Show* in the Hartford, Portland, and Grand Rapids DMAs.[4] Copies of the Program Agreements, as amended, are attached hereto as Exhibit A.[5]

11. The Tribune Parties and Carsey-Werner agree that the total amount that the Tribune Parties would be required to pay to "cure" prepetition defaults as a condition of the assumption of the Program Agreements is $143,483.80 (the "Cure Amount"). The allocable portion of the Cure Amount due from each of the Tribune Parties, if any, as reflected in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs, is as follows:

| Debtor | Schedule No. | Total Amount |
| --- | --- | --- |
| Tribune Broadcast Holdings, Inc. | 222000380 | $87,665.90 |
| Tribune Television Company | 241002410 | $35,349.45 |
| KPLR, Inc. | 181000370 | $13,150.00 |
| Tribune Television Holdings, Inc. | 242000560 | $7,318.45 |

---

[4] The parties do not intend to amend the Program Agreement relating to KPLR-TV (St. Louis, MO).

[5] The Program Agreements are reflected in "deal memos" setting forth the economic and other material terms governing the broadcast of *That '70s Show* by the Tribune Parties in the relevant broadcast markets. The Program Agreements have been redacted to protect pricing information that the Tribune Parties and Carsey-Werner consider confidential and commercially or competitive information. Unredacted copies of the Program Agreements will be made available upon request to the Office of the United States Trustee, counsel for the Committee, and the agent for the senior lenders subject to appropriate confidentiality restrictions. Nothing contained in this Motion is intended to alter any provision of the Program Agreements. In the event of a discrepancy between the description of Program Agreements in this Motion and their actual terms, the terms of such Agreements shall control.

The Tribune Parties will pay the Cure Amount within ten (10) business days after the later to occur of the entry of the Order approving this Motion and the parties' execution of the amendments to the Program Agreements.

## RELIEF REQUESTED

12. By this Motion, the Tribune Parties seek entry of an order authorizing and approving the assumption of the Program Agreements, as amended, pursuant to section 365(a) of the Bankruptcy Code, effective upon the Court's authorization of the relief requested herein and the payment of the Cure Amount. The Tribune Parties also respectfully request that the Court authorize them to seek assumption of the multiple executory contracts that comprise the Program Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3).

## BASIS FOR RELIEF

13. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a); see University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1075 (3d Cir. 1992) (discussing the necessity for court approval of the assumption of a contract pursuant to procedures set forth in section 365(a)). A debtor's assumption or rejection of an executory contract is subject to review under the business judgment standard. In re ANC Rental Corp., 278 B.R. 714, 723 (Bankr. D. Del. 2002) ("In order to assume and assign an executory contract or unexpired lease. . . the debtor must establish that the decision is one made in its sound business judgment."); see In re Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) ("motions to reject executory contracts are evaluated under the business judgment test").

14. Under the business judgment test, a debtor is required to proffer a reason as to why, in its business judgment, assumption or rejection of the executory contract or unexpired lease at issue benefits the debtor's estate and then articulate the bases of that determination. See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). Application of the business judgment standard thus dictates "that a court should approve a debtor's business decision unless the decision is the product of bad faith or gross abuse of discretion." See Federal-Mogul, 293 B.R. at 126; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986); Enterra Corp. v. SGS Assocs., 600 F. Supp. 678, 684-85 (E.D. Pa. 1985) (business judgment standard requires deference to debtor's management absent showing of bad faith, fraud, or gross overreaching).

15. The Tribune Parties believe, in their business judgment, that the assumption of the Program Agreements, as amended, is in the best interests of their estates and creditors. Maintaining the rights to broadcast quality syndicated programming, like *That '70s Show*, is an integral component of the Tribune Parties' broadcast business. The strength and popularity of the Tribune Parties' complement of syndicated programs, including *That '70s Show*, has a direct impact on viewership, which in turn serves as the basis for setting the rates which can be charged to advertisers. Maintaining the syndicated rights to *That '70s Show* provided to the Tribune Parties under the Program Agreements is thus important to the ongoing business operations of the Tribune Parties. Syndicated programming agreements are typically negotiated and entered into one to three years in advance of the programs' available air dates. As such, suitable substitute programming would not likely be readily available if the Tribune Parties were to lose the benefit of the Program Agreements.

16. Further, the rates charged by the Tribune Parties for placement of commercial advertising in the syndicated programming are based on the audience ratings achieved. Ratings for a particular program are enhanced by quality adjacent programming; program schedules are meticulously orchestrated to maximize audience retention, yielding greater ratings and increased advertising revenue opportunities. Significant economic benefit thus is conferred upon the Tribune Parties through the advertising revenue generated by quality programming, such as *That '70s Show*. Conversely, any loss of such programming would interrupt the program schedule and likely negatively impact ratings and revenue to the Tribune Parties. In addition, pursuant to the amendments to the Program Agreements, the Tribune Parties are receiving the economic benefit of the reduced fees charged by Carsey-Werner for the broadcast of *That '70s Show* in the Portland and Hartford DMAs, and the benefit of expanded broadcast windows in the Hartford, Portland, and Grand Rapids DMAs. The Tribune Parties therefore respectfully submit that the assumption of the Program Agreements is supported by sound business judgment and is in the best interests of their estates and creditors.

17. Section 365(b)(1) of the Bankruptcy Code provides that the trustee or debtor in possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations – by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. See, e.g., Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.), 6 F.3d 492, 496 (7th Cir. 1993). The Tribune Parties respectfully submit that they have met all of the requirements for the assumption of the Program Agreements because the Tribune Parties have agreed to the payment of the Cure Amount upon approval of this Motion and the Debtors have sufficient liquidity for the performance of postpetition contractual obligations going forward.

18.     Finally, the Tribune Parties respectfully request that the Court authorize them to seek assumption of the multiple executory contracts that comprise the Program Agreements in this one Motion, pursuant to Bankruptcy Rule 6006(e)(3). Bankruptcy Rule 6006(e) limits the ability of a debtor to "seek authority to assume or assign multiple executory contracts or unexpired leases in one motion unless (1) all executory contracts or unexpired leases to be assumed or assigned are between the same parties or are to be assigned to the same assignee; (2) the trustee [or debtor in possession] seeks to assume, but not assign to more than one assignee, unexpired leases of real property; or (3) the court otherwise authorizes the motion to be filed." Fed. R. Bankr. P. 6006(e). Four (4) separate agreements will be assumed pursuant to this Motion, as amended. As discussed herein, each of the Program Agreements meet the foregoing criteria. Therefore, the Tribune Parties respectfully submit that the interests of judicial economy are best served by seeking the relief requested herein in this one Motion. The Tribune Parties have complied in all respects with the provisions in Rule 6006(f), pertaining to omnibus motions to assume multiple executory contracts.

## NOTICE

19.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to the steering committee for the Debtors' prepetition loan facilities; (iv) counsel to the administrative agent for the Debtors' postpetition financing facility; (v) counsel to Carsey-Werner; and (vi) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit no other or further notice is necessary.

## NO PRIOR REQUEST

20.     The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Tribune Parties respectfully request that the Court enter an order, in substantially the form attached hereto, authorizing and approving the assumption of the Program Agreements, as amended, effective as of the date of the entry of the order and the payment of the Cure Amount, and granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
June 25, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP  
James F. Conlan  
Bryan Krakauer  
Janet E. Henderson  
Jillian K. Ludwig  
One South Dearborn Street  
Chicago, IL 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,  
FORMAN & LEONARD, P.A.

By: _____  
Norman L. Pernick (No. 2290)  
J. Kate Stickles (No. 2917)  
Patrick J. Reilley (No. 4451)  
500 Delaware Avenue, Suite 1410  
Wilmington, DE 19801  
Telephone: (302) 652-3131  
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND  
DEBTORS IN POSSESSION