IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** : Chapter 11 |
| : |
| **TRIBUNE COMPANY, et al.,**[1] : Case No. 08-13141 (KJC) |
| : |
| Debtors. : (Jointly Administered) |
| : |

## NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE(S) OF TRIBUNE COMPANY

**PLEASE TAKE NOTICE** that, pursuant to Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Wells Fargo Bank, N.A. (the "Bridge Agent"), by its undersigned counsel, will take the deposition of Tribune

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Company ("Tribune") by its designated representative(s), upon oral examination to be recorded by stenographic and videographic means before a notary public or other officer duly authorized to administer oaths. The deposition shall take place on July 20, 2010 at 10:00 a.m., or such other date and time as the parties may mutually agree, at the offices of White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 and shall continue from day to day until completed.

Tribune shall designate one or more persons to testify on Tribune's behalf in accordance with this notice with respect to the areas of inquiry specified below. The Bridge Agent reserves the right to amend this Notice.

## DEFINITIONS

A.   "Bridge Loan Agreement" means the $1.6 billion Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, by and among Tribune Company, as borrower, each lender from time to time party thereto, and the other named parties thereto.

B.   "Communication" means the transmittal of information or attempted transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally, in writing, or by any other means or medium.

C.   "Concerning" means relating to, referring to, describing, reflecting, evidencing or constituting.

D.   "Disclosure Statement" means the Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries dated June 4, 2010.

E.   "Document" shall be defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including electronic or

computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

    F.    "Global Settlement" means the settlement of the LBO-Related Causes of Action proposed by the Debtors in the above-captioned proceedings.

    G.    "Guarantor Subsidiaries" means the subsidiaries of Tribune Co. that have guaranteed Tribune Co.'s obligations under the Senior Credit Agreement and the Bridge Loan Agreement.

    H.    "Including" means "including, without limitation" or "including but not limited to."

    I.    "JPMorgan" means JPMorgan Chase Bank, N.A. and any of its corporate parents, partners, members, divisions, subsidiaries, officers, directors, representatives, trustees, agents, employees, affiliates, predecessors and successors.

    J.    "LBO-Related Causes of Action" means any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against any Person arising from any transaction related to the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

    K.    "Leveraged ESOP Transactions" means the series of transactions culminating in the merger on December 20, 2007 in which Tribune Co. became a wholly-owned subsidiary of the Tribune Employee Stock Option Plan.

L. "Management Incentive Plans" means the Equity Incentive Plan described on p. 49 of the Plan and the Compensation and Benefit Programs described on p. 49 of the Plan.

M. "Mr. Zell" means Samuel Zell.

N. "Person" or "Persons" means natural persons, proprietorships, corporations, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

O. "Plan" means the Amended Joint Chapter 11 Plan of Reorganization for Tribune Company and its Subsidiaries filed as Exhibit A to the Disclosure Statement.

P. "Relate" and its variants encompass the terms "refer," "reflect," and "concern" and shall be construed to bring within the scope of the Request all documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request, including but not limited to all documents that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Request.

Q. "Releases" means the releases proposed to be granted in connection with the Global Settlement and the Plan.

R. "Released Parties" means the parties proposed to receive the Releases under the Plan.

S. "Settlement Support Agreement" means the agreement made as of April 8, 2010 among certain holders and indenture trustees for holders of claims against Tribune whereby such parties agreed to support a settlement of the LBO-Related Causes of Action on specified terms.

T. "Settlement Term Sheet" means the Settlement Term Sheet attached as Exhibit A to the Settlement Support Agreement.

U.  "Senior Credit Agreement" means the $8.028 billion senior secured credit agreement dated as of May 17, 2007, by and among Tribune, as borrower, the financial institutions party thereto as lenders, JPMorgan Chase Bank, N.A., as administrative agent, and other agents party thereto, as amended, restated, supplemented or otherwise modified from time to time.

V.  "Tribune" refers collectively to Tribune Co. and its subsidiaries.

W.  "Zell Entity" means EGI-TRB, L.L.C.

X.  Reference to a corporation, partnership, limited partnership, limited liability company, unincorporated association, joint venture, government entity, or other fictitious person shall be deemed to include each and all of its present or former subsidiaries, affiliates, predecessors and successors, and, with respect to each of the aforesaid entities, its present or former officers, directors, shareholders, employees, partners, members, general partners, and/or limited partners.

## DEPOSITION TOPICS

1.  The structure of and reasons for carrying out the Leveraged ESOP Transactions.

2.  The negotiations of the Leveraged ESOP Transactions.

3.  Any information provided to Tribune's Board of Directors or any Special Committee of Tribune's Board of Directors regarding the Leveraged ESOP Transactions, in particular the impact of the Leveraged ESOP Transactions on Tribune's financial conditions or solvency.

4.  Any communications (whether oral or written) between Tribune's Board of Directors or any Special Committee of Tribune's Board of Directors and Tribune's management,

JPMorgan, or any other Person regarding the impact or potential impact of the Leveraged ESOP Transactions on Tribune's financial conditions or solvency.

5. Tribune's financial projections for 2007 provided to JPMorgan and Valuation Research Corporation.

6. The cash and equity bonuses paid to Tribune employees and directors in connection with the Leveraged ESOP Transactions.

7. The Global Settlement, Settlement Term Sheet and Settlement Support Agreement, including but not limited to all negotiations related thereto.

8. Any negotiations or communications between representatives of Tribune and potential targets of the LBO-Related Causes of Action regarding the settlement of the LBO-Related Causes of Action.

9. The estimated resolution of intercompany claims referred to in footnote 51 of the Disclosure Statement, including any analysis of the likely enforceability of such claims.

10. The intercompany account balances of Tribune and the Guarantor Subsidiaries, including any analyses related thereto.

11. Creditor recoveries under the Global Settlement.

12. Creditor recoveries under any scenario other than the Global Settlement, including any analysis of the potential recoveries of creditors absent a settlement of the LBO-Related Causes of Action.

13. The Debtors' position, expressed at p. 113 of the Disclosure Statement, that litigation involving the advisers to the Leveraged ESOP Transactions, Mr. Zell, or the Zell Entity would likely trigger claims for advancement, indemnification, and/or contribution from the Debtors, including any written agreements supporting that position.

14. The financial and non-financial contributions to the Global Settlement and to the Debtors' reorganization made or proposed to be made by the Released Parties.

15. The potential preference payments described on pp. 57-58 of the Disclosure Statement.

16. The Debtors' decision-making process concerning whether to pursue preference avoidance actions, including communications between or among the Debtors, the Creditors' Committee and any lenders under the Senior Credit Agreement (including their agents or counsel) concerning whether it would be cost efficient to commence any preference avoidance actions as described on p. 58 of the Disclosure Statement.

17. The Management Incentive Plans, including the Debtors' decision-making process concerning the Management Incentive Plans, the proposed recipients of equity or other value under the Management Incentive Plans, and the proposed recipients' equity holdings in Tribune, if any, on December 20, 2008.

18. Tribune's production of documents in response to discovery requests propounded by the Bridge Agent and any matter relating to such documents.

Dated: June 29, 2010
Wilmington, Delaware

                        FOX ROTHSCHILD LLP

                        Jeffrey M. Schlerf (No. 3047)
                        John H. Strock (No. 4965)
                        Citizens Bank Center
                        919 North Market Street, Suite 1600
                        Wilmington, Delaware 19801
                        (302) 654-7444

                              -and-

Thomas E Lauria (admitted *pro hac vice*)
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700

-and-

David G. Hille (admitted *pro hac vice*)
Scott Greissman (admitted *pro hac vice*)
Andrew W. Hammond (admitted *pro hac vice*)
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

Attorneys for Wells Fargo Bank, N.A.
as Administrative Agent under the
Bridge Credit Agreement