```
                    IN THE UNITED STATES BANKRUPTCY COURT
                       FOR THE DISTRICT OF DELAWARE


     IN RE:                        .    Chapter 11
                                   .
     TRIBUNE COMPANY,              .    Case No. 08-13141(KJC)
     et al.,                       .    (Jointly Administered)
                                   .    July 1, 2010(10:03 a.m.)
                Debtors.           .    (Wilmington)(Telephonic)
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT JUDGE

Appearances:

| | |
|---|---|
| For the Debtors: | Bryan Krakauer, Esq.<br>Sidley Austin LLP |
| For the Examiner: | Kenneth N. Klee, Esq.<br>Martin R. Barash, Esq.<br>Klee, Tuchin, Bogdanoff & Stern |
| For Certain Creditors: | James O. Johnston, Esq.<br>Hennigan, Bennett & Dorman LLP<br>Daniel H. Golden, Esq.<br>Akin, Gump, Strauss, Hauer & Feld<br>Robert Stark, Esq.<br>Martin Siegel, Esq.<br>Brown, Rudnick LLP<br>Scott Greissman, Esq.<br>White & Case LLP<br>Norman L. Pernick, Esq.<br>Cole, Schotz, Meisel, Forman |
| For the Committee: | Kevin LeMay, Esq.<br>Chadbourne & Park, LLP |
| For the U.S. Trustee: | Joseph McMahon, Esq.<br>U.S. Trustee's Office |
| For JPMorgan Chase: | Elliot Moskowitz, Esq.<br>Davis, Polk & Wardell |

Audio Operator:    Brandon McCarthy
Transcriber:       Elaine M. Ryan
                   (302) 683-0221

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE COURT: All rise.

2          THE COURT: Good morning.  This is Judge Carey.

3  We're on the record in the Tribune, Chapter 11 proceeding to

4  consider the examiner's motion for an extension of the report

5  deadline.  As a related matter, the debtor in its reply has

6  suggested a revised, what I'll call confirmation schedule,

7  resulting from the relief, if granted, that the Examiner has

8  requested.   There is according to the written submissions

9  one sticking point concerning the fixing of a voting

10  deadline.  So, let me begin by asking whether the remaining

11  issue has been resolved or whether we need to have a

12  discussion this morning.  I'll turn it over to counsel.

13          MR. KRAKAUER (TELEPHONIC): Your Honor, Bryan

14  Krakauer on behalf of the debtors.  One of my colleagues did

15  speak to credit lenders counsel, Mr. Johnston, the day before

16  yesterday, and it's not resolved this morning.

17          THE COURT: Okay.  Well, I've given some thought to

18  it, and I understand, without determining whether the debtor

19  is correct or not in its assertion of the possible filing of

20  competing plans and whether that impacts the position taken

21  in the remaining objection, I won't decide, but I will say I

22  understand the concern the debtor has expressed and I'm

23  prepared to address it in the following manner, and that is

24  to leave the revised voting deadline where the debtor

25  proposes to leave it but twist the Examiner's arm to have the

1   report in by July 23rd.  So, let me turn -

2         MR. KLEE (TELEPHONIC): Your Honor, this is Kenneth

3   Klee, the Examiner.

4         THE COURT: Good morning, Mr. Klee.

5         MR. KLEE (TELEPHONIC): Good morning.  Your Honor,

6   that arm twisting, if we have to live with it, I guess we

7   have to live with it.  I want the Court to know that Judge

8   Gregg in Michigan has invited me to speak to his bar from

9   July 22nd to July 25th, and it will be difficult for me to file

10  a report on July 23rd, if I'm in Michigan, and we requested

11  the extension to the 27th, not just based on my travel

12  schedule but based on the volume of information that we have

13  to process, based on conflicting testimony in this case.

14  We've already taken 27 interviews, and we have been required

15  now to take many of the examinations under oath, and we're

16  going to have to revisit a few witnesses.  I anticipate an

17  additional 10 interviews are going to be required, and I have

18  been working diligently every week on the road and will not

19  be in a position to finish these interviews until July 9th at

20  the earliest.  So getting a report filed by July 23rd is

21  possible but extremely difficult.

22         THE COURT: Well, having heard what you just said,

23  Mr. Klee, if I give you the weekend until the 26th, does that

24  help?

25         MR. KLEE (TELEPHONIC): I think it would, Your

1    Honor.  I certainly could come in the office on the 26th, and

2    we could probably get something filed by midnight on the 26th,

3    11:59.

4            THE COURT: Alright, then I'm inclined to adjust the

5    deadline accordingly and still leave the voting deadline

6    where it is.  Now, I will give the parties, if anyone wishes

7    to be heard, a very brief opportunity to give a contrary view

8    if they have one.  I'll hear from others.

9            MR. JOHNSTON (TELEPHONIC):   Your Honor, Jim

10   Johnston of Hennigan, Bennett & Dorman on behalf of the

11   credit agreement lenders.  I would like to give you a short

12   contrary view and a plea for at least a slightly longer

13   review period for the examiner's report.  I think we've been

14   consistent, and you've heard us raise the point a number of

15   times before that we think creditors and particularly credit

16   agreement lenders who are being asked to give $425 million to

17   settle the claims that the Examiner's looking at should have

18   at least a modicum of opportunity to read, understand, digest

19   the Examiner's conclusions about those claims.  You heard us

20   at the hearing on the Examiner's appointment.  You heard us

21   at the hearing on the disclosure statement.  The point's

22   always been simply that the debtors should give creditor

23   access to the report, tell them how to get it, give them time

24   to get it and then give them a little bit of time to read it.

25   The original scheduling order accomplished that objective,

1    but frankly, just barely.  It gave creditors 18 days between

2    a July 12 deadline for filing of the report and a July 30

3    voting deadline.  In that time frame creditors would still

4    have to be vigilant.  They'd have to mark their calendars

5    knowing when the report's coming out, download it, and devote

6    immediate attention to it.  Under the debtors' current

7    proposal, even if the examiner report's filed a day earlier,

8    at midnight on the 26th, you're really giving creditors an

9    effective period of a week or less to get this report, read

10   it, and cast their ballot.  In that regard, I think it's

11   important to note that the voting deadline here is a deadline

12   for receipt.  It's not a deadline for mailing or postmarking.

13   So what you really have to look at, a creditor to be safe is

14   going to have to mail their ballot by August the 3rd, maybe

15   Wednesday, August the 4th, if they really want to push their

16   luck, and that then gives them 7 days to digest a report

17   that's surely going to be hundreds of pages if examiner

18   reports in any of the other big cases out there are any

19   indication, there may be a thousand pages or more, and we'd

20   submit that under the circumstances, that really would defeat

21   one of the fundamental purposes of having an Examiner here.

22   The issues to be covered by the examiner report are complex

23   as evidenced by the request for more time by Mr. Klee's

24   comments this morning.  I'd say if anything, that request

25   counsels in favor of a longer review period for creditors not

1   a shorter review period, and all that we're asking is simply

2   that the existing 18-, actually 17-day review period be

3   maintained and that the voting deadline be pushed back a week

4   till the 13th.   That's still more than 2 weeks before the

5   start of the confirmation hearing.  It's the same date that

6   objections to confirmation are now due, and it preserves all

7   the existing time periods that were set previously by Your

8   Honor.  No one previously objected to those time periods and

9   I think they're still reasonable now.  Just to briefly touch

10  on the argument that was made in the papers yesterday that we

11  heard for the first time yesterday that our concerns aren't

12  genuine and that this is all somehow a ruse so that we can

13  confuse people by filing a plan in the voting period, I'd

14  have to confess, I laughed out loud when I read it yesterday.

15  Your Honor knows that we care about the vote on this plan.

16  That's what the hearing was all about last time we were

17  before the Court discussing the creditor list to be provided

18  by JPMorgan.  That's what we're focused on, getting creditors

19  information about the plan that's now on the table, and the

20  fact is, when I got the email from the debtors late last

21  Friday afternoon proposing a different schedule, I didn't

22  hesitate.  I didn't think about ways that I could spin it to

23  our advantage.  I responded immediately, and I indicated that

24  the review period should be the same as that under the

25  existing order to give creditors the same period time to

1  review the report.  I didn't say anything about plan

2  exclusivity because the thought never crossed my mind.  We've

3  been focused from the start on insuring that the Examiner's

4  conclusions get into the hands of creditors before the voting

5  deadline.  That's what's at issue today.  And, I guess I'll

6  close by noting that if this really was a scheme to get our

7  plan out there before the voting deadline, it wouldn't be a

8  very effective one.  Exclusivity terminates over the weekend

9  of August 7 and 8.  If you assume that we file a plan first

10  thing Monday morning, August 9, and I don't know whether we

11  will or not, that's not going to have any impact on the votes

12  that would be due if Your Honor sets the voting deadline for

13  Friday the 13th.  Creditors would still need to mail their

14  ballots by Tuesday the 10th or Wednesday the 11th.  Having

15  another plan on file for a day or two just isn't going to

16  matter.  We couldn't solicit votes on it.  It wouldn't be

17  served on all creditors.  I'd venture to guess that most

18  creditors wouldn't even hear about it until well after the

19  voting deadline comes and goes.  Surely the debtors' plan is

20  not so fragile that it can't withstand the presence of

21  another plan for a day or two at the end of the balloting

22  deadline, and the bogeyman of chaos, confusion just doesn't

23  ring true, and so, I'd submit that what's really a remote

24  hypothetical possibility that some creditor somewhere might

25  be confused in a 2- or 3-day period after exclusivity ends

1  and before the voting deadline, it just doesn't justify

2  truncating what's already a very short review period for

3  creditors to consider this very important document that will

4  be filed.

5       THE COURT: And if a second plan should be filed,

6  what is the Court required to do under these circumstances,

7  in your view?

8       MR. JOHNSTON (TELEPHONIC):  I don't think the

9  Court is required to do anything.  In the period between -

10  say a plan is filed on August 9 and a deadline for voting on

11  the existing plan is filed on August 13 there's nothing for

12  the Court to do.  The first step in respect of an alternative

13  plan would be consideration of a disclosure statement which

14  certainly wouldn't happen before the 13th.

15       MR. KRAKAUER (TELEPHONIC): Your Honor, can I

16  address those points?

17       THE COURT: Let me hear from others who wish to be

18  heard first then I'll go back to the debtor.  Anyone else

19  wish to be heard?

20       MR. LeMAY (TELEPHONIC): Your Honor, David LeMay

21  from Chadbourne & Park on behalf of the Official Committee of

22  Unsecured Creditors.  As you know from the paper that went

23  in, the Committee supports the debtors' position on this and

24  does believe that the voting deadline should take place

25  within the current exclusive period.  Notably absent from Mr.

1    Johnston's remarks was any offer to voluntarily agree to

2    delay or defer filing his plan until after the voting

3    deadline.  I think that speaks volumes because if it really

4    were not part of their calculus, then I think that would be

5    the easy way to get us off this rock.  Your Honor, consistent

6    with your request that remarks be kept brief, that's all I've

7    got for you, and I thank you for your time.

8             THE COURT: Thank you.  Anyone else wish to be

9    heard?

10            MR. MOSKOWITZ (TELEPHONIC): Your Honor, Elliot

11   Moskowitz of Davis, Polk representing JPMorgan Chase Bank.

12   May I be heard briefly?

13            THE COURT: Yes.

14            MR. MOSKOWITZ (TELEPHONIC): I just also want to

15   just supplement the remarks that were just made by counsel to

16   the Creditors Committee.  You know, just to respond very,

17   very briefly, I think that the notion that Mr. Johnston

18   paints a picture that when exclusivity runs out there'll be

19   just, you know, coming in the mail another plan that's been

20   filed and people are not going to really focus on it.  It's

21   just a total fantasy because the notion of filing a separate

22   plan, an alternative plan has been their game plan from the

23   very beginning and that's the reason why we were before Your

24   Honor a few weeks ago on the discovery request when they

25   requested all of the creditor information, they did that

1    because they want to tell people that this is coming.

2    They've been focused from the start.  It's no secret that

3    they want to file an alternative plan and when Mr. Johnston

4    says that he cares about the vote on this plan, I agree with

5    him.  He does care about the vote on this plan.  He wants it

6    to vote it down, and he wants everyone to vote it down, and

7    the proposal that he has put before the Court actually

8    enhances the possibility that that will happen, not on the

9    merits but because of the confusion that will ensue because

10   what's going to happen is, in just a few extra days the

11   parties are going to have, that he has requested, and that

12   separates his proposal from the debtors' proposal, it's just

13   a few extra days, but in those few extra days people are not

14   going to be sitting there just focusing on the examiner's

15   report, they going to also be sitting there focusing on the

16   examiner's report and his competing plan.  So, we submit that

17   actually the proposal that he is suggesting leads to much

18   more confusion and much less clouding of the process, and

19   that perfectly suits their objectives.  We think it's

20   inappropriate to use the Examiner's good faith request for

21   more time to do a complete end run around the debtors' right

22   of exclusivity and for those reasons, Your Honor, we

23   completely support the debtors' proposal and it should be

24   adopted in its entirety.

25            THE COURT: Is there anyone else who wishes to be

1    heard?

2         MR. KRAKAUER (TELEPHONIC): The debtor at the end,

3    Your Honor.

4         THE COURT: I won't forget you, Mr. Krakauer.

5         MR. KRAKAUER (TELEPHONIC): Thank you.

6         THE COURT: Alright.  I hear no additional response.

7    Mr. Krakauer?

8         MR. KRAKAUER (TELEPHONIC): Yes.  Your Honor, first,

9    in terms of the voting deadline, we would be okay with a

10   voting deadline that says that the 6th is the date that you

11   have to submit your ballots, which according to Mr. Johnston

12   would allow another 2 or 3 days, and then we would provide

13   that the ballots actually have to received by the 13th, and I

14   think that does give another couple of days in the process.

15        THE COURT: Well, when you say "submit" what

16   precisely do you mean?  Postmarks?

17        MR. KRAKAUER (TELEPHONIC): That people have to

18   postmark for mailing by the 6th, and then we have to actually

19   receive it by the 13th.

20        THE COURT: Okay.

21        MR. KRAKAUER (TELEPHONIC): I think that would work

22   in terms of somebody knowing that they could hold onto their

23   ballot through the 6th, review the examiner report for this

24   whole 11 or 12 days, and then they'd just have to postmark

25   their ballot by the 6th.  Then they should all be in by the

1    13th, and then we'd just extend the date for effect to

2    tabulate a week.  I think that would be fine with us, gives a

3    couple more days, which is what I think Your Honor was trying

4    to do.

5            THE COURT: Alright.  Does anyone have a comment

6    limited to the specific suggestion made by the debtor here?

7            MR. GOLDEN (TELEPHONIC): Your Honor, it's Danny

8    Golden from Akin, Gump on behalf of Center Bridge.  Obviously

9    we just heard the suggestion, and we want to give people as

10   much time as they can between the filing of the examiner's

11   report and the voting deadline.  The problem with the

12   proposed extension is that I'm concerned that we are now

13   going to plunge these cases into a much more chaotic state.

14   You've already heard, I guess by reference, that the credit

15   agreement lenders may or may not, I would suggest may, but

16   may or may not be filing a competing plan on the moment of

17   the termination or the end of the current exclusivity period.

18   There may be other plans that will have to be filed in

19   respect of that and people won't know when or if they should

20   be filing competing plans because they want to see the

21   outcome of the result of the vote on this plan.  Given Mr.

22   Krakauer's suggestion to in effect extend the voting deadline

23   so that the votes are cast, postmarked, although most votes

24   aren't really postmarked because they're done through DPC.

25   People are not going to know for several more days what the

1    results of the vote are.  All of this potential chaos could

2    be avoided, I suggest to the Court, if the parties on this

3    call would agree to a relatively short standstill so that no

4    competing plans are filed until such time as the votes are

5    officially announced because if this plan is accepted, I

6    believe, can't confirm this, can't say it definitively, but I

7    believe that if this plan is accepted by the requisite

8    majority the likelihood of the filing of competing plans

9    becomes much more remote.  So I think we can solve all of

10   this and save probably a few hundred thousand trees if we get

11   the parties to agree to a stand-down or a standstill until

12   the announcement of the voting deadline so that nobody will

13   feel compelled in order to protect their particular interests

14   to rush in and file a competing plan.

15          THE COURT: Well, I think -

16          MR. KRAKAUER (TELEPHONIC): Your Honor, for the

17   debtors' standpoint, we would also endorse Mr. Golden's

18   suggestion.

19          THE COURT: Well, it's a wonderful suggestion that I

20   think would contribute to the efficient administration of

21   this phase of the Chapter 11, but there's at least one party

22   or group of parties that apparently, at least until the phone

23   call today, has refused to agree to that, and without a

24   motion or agreement in front of me, I can't order it, and I'm

25   unfortunately in that position.  I don't know how else to

1    address that comment.  It's a good suggestion, but one that

2    apparently at least one important constituent does not wish

3    to accept.  So, the consequence of that, of course, is that

4    the voting period will remain shorter than it would like,

5    but, you know, everyone here is well represented and

6    represents sophisticated parties and they make these

7    decisions understanding what the consequences are likely to

8    be.

9         MR. JOHNSTON (TELEPHONIC):  Your Honor, this is

10    Jim Johnston.  May I be heard on that point?

11         THE COURT: Briefly, yes.

12         MR. JOHNSTON (TELEPHONIC):  No one has asked us to

13    refrain from filing for a week voluntarily in exchange for

14    what I think the proposal would be a longer solicitation

15    period.  I heard Mr. LeMay say for the first time, I didn't

16    think it was fair to necessarily put my clients in that

17    choice and I certainly wasn't going to volunteer it, but if

18    Your Honor is posing the choice between having a voting

19    deadline whether it's postmarked or receipt of August 6th or

20    having a voting deadline of August 13 on the condition that

21    we agree not to file a plan, I'd ask you to give me the

22    chance to ask my clients about that and get back to the

23    debtors later today.  I understand the concerns, and I think

24    that that very well may be something that my clients would

25    want to do.

1          THE COURT: Well, let me say this: I will be

2    attending a funeral tomorrow, so will not be in the office.

3    I'd like to resolve this today one way or the other.  What I

4    would be willing to do is to adjourn this telephone hearing

5    to sometime later this afternoon.  Now, I have a telephone

6    conference scheduled for 5 o'clock today.  I'd like to

7    resolve this before then.  So, I would be willing to set you

8    for, you know, say, 3 o'clock in the afternoon, if you think

9    that gives you enough time.

10          MR. JOHNSTON (TELEPHONIC):  I have a commitment,

11    Your Honor, from 1 until 3 East Coast Time.  If we could do

12    it at 3:30, that would work for my schedule, and I will get

13    ahold of as many people as I can on my end.

14          MR. LeMAY (TELEPHONIC): Your Honor, David LeMay

15    again.  It occurs to me though that in order for this to work

16    it would not be just Mr. Johnston's client that we'd need to

17    know from but, you know, there are at least two other

18    constituencies who are vigorously opposing the plan, and I

19    gather, although I've not heard from them directly, that one

20    or more of them may have a plan up its own sleeve and so I

21    think in order to achieve the kind of stand-down that you're

22    talking about, we would need to put that question to, in

23    effect, everyone who is vigorously litigating against the

24    plan, unless I'm mistaken.  Thank you.

25          MR. JOHNSTON (TELEPHONIC):  Your Honor, I think we

1    need to step back a minute.  If he's referring to Wilmington

2    Trust, the phone's counsel, they're already deemed to reject

3    this plan.  So, there's no issue of a vote here, and I

4    thought the issue was confusion of creditors who are actually

5    voting on the plan.

6              MR. STARK (TELEPHONIC): Your Honor, it's Robert

7    Stark.  Maybe I can obviate the issue very quickly, if Your

8    Honor will hear me now?

9              THE COURT: Briefly.

10             MR. STARK (TELEPHONIC): I have no intention of

11   filing a plan.  So if a standstill is voluntarily needed by

12   me to give Mr. LeMay and others comfort, we'll agree to the

13   standstill.

14             THE COURT: Thank you, Mr. Stark.

15             MR. MOSKOWITZ (TELEPHONIC): Your Honor, Elliot

16   Moskowitz of Davis, Polk.  There's also the matter of the

17   bridge agent as well who may file a competing plan.

18             MR. GREISSMAN (TELEPHONIC): This is Scott Greissman

19   from White & Case representing the bridge agent.  We've

20   agreed to a consensual resolution with the debtors on this

21   issue, and whatever agreement the parties reach, we don't

22   intend to upset.  So, we won't be filing a competing plan in

23   the 7-day grace period that everyone seems to be considering.

24             THE COURT: Okay.  So - Well, let me ask this: Have

25   we reached agreement or do parties still need time to consult

1   others and if so, what time this afternoon can we put on for

2   an adjourned call?

3          MR. JOHNSTON (TELEPHONIC):  Your Honor, Jim

4   Johnston again.  I definitely need to consult with my clients

5   about what I understand the choice to be here.  So, I would

6   like to reconvene this afternoon.  If 3:30 is convenient for

7   the Court, that would work on my end.

8          THE COURT: Alright, 3:30 is fine.  Anyone else have

9   an issue with that time?

10          MR. KLEE (TELEPHONIC): Your Honor, this is Ken

11   Klee, the Examiner.  This is not my issue and I have an

12   examination that's starting at 3:30 in New York that I

13   believe I need to be at, it's under oath.  So, I'm willing to

14   abide by whatever the Court orders on this, whether my

15   extension goes to the 26th or the 27th.  I'd prefer the 27th,

16   but I can live with the 26th if I have to.

17          THE COURT: Okay.  Then you're excused from the next

18   call, Mr. Klee, thank you.  Anyone else have any issues with

19   the timing?

20          MR. MOSKOWITZ (TELEPHONIC): Your Honor, Elliot

21   Moskowitz for JPMorgan.  I just ask for a clarification if

22   we're to be entirely clear about what we are going back to

23   and then resolving at 3:30.   The idea, Your Honor, if I may

24   clarify, the idea is that the ballots will have to be

25   postmarked by August 6th or the voting deadline will actually

1    be extended until August 13th?  I think there may not be

2    crystal clarification as to what the proposal is on the

3    table, and whatever that proposal is, I understand it to be

4    joined with the standstill that everyone now is going back to

5    confirm or at least the credit agreement lenders are going to

6    confirm, is acceptable to all their individual members.

7         UNIDENTIFIED SPEAKER (TELEPHONIC): The request is

8    that the voting deadline be moved to August 13 on the

9    condition that my clients not file a plan before that time,

10   as I understand it.

11        MR. KRAKAUER (TELEPHONIC): I think we want to put

12   in the order that no plan could be filed prior to the 13th,

13   prior to or on the 13th.

14        MR. MOSKOWITZ (TELEPHONIC): I guess no plan - Your

15   Honor, this is Elliot Moskowitz.  No plan - and I guess my

16   lingering concern is that while the parties who have been

17   most vociferous about their intent to file a plan are all

18   represented on this call, there could very well be other

19   parties out there among the creditors who could themselves

20   file a plan and the resolution that we're solving for on this

21   conference call or at the 3:30 p.m. conference call, even if

22   Mr. Johnston's client agrees, won't necessarily resolve that

23   issue.  There's still going to be right of somebody out there

24   filing a competing plan and plunging us into the chaos that

25   we've been expressing concerns about the entire time.

1          THE COURT: Well, that may be -

2          MR. MOSKOWITZ (TELEPHONIC): This whole mechanic is

3     absolutely necessary or if the proposal that was discussed at

4     the beginning of the conference call may still make more

5     sense upon reflection.

6          THE COURT: Well, let's do this: The answer is, that

7     problem is still out there, I think, but as I understand the

8     existing dynamics among the parties, those about whom the

9     debtor is most concerned, it sounds to me, have either signed

10    on or are willing to consult their clients in that respect.

11    To the extent the parties have other issues or want to have

12    further discussions, I would prefer they do that outside of

13    my presence.  We'll reconvene at a later time this afternoon.

14    To the extent agreement has not been reached among what the

15    group views as the necessary parties, I'll make a decision on

16    the motion before me and we'll go from there.

17         MR. PERNICK (TELEPHONIC): Your Honor, this is Norm

18    Pernick with a logistical issue, and I don't know if the

19    CourtCall operator's on.  Would it be possible to just use

20    the same dial-in information from CourtCall to make it easy

21    on everybody?

22         THE COURT: Let me ask.  Is the CourtCall operator

23    on the phone?

24         COURTCALL: I am here, Your Honor, and yes, it would

25    be fine to use the same.

1          MR. PERNICK (TELEPHONIC): Great, thank you.

2          THE COURT: Okay, and parties can sign up until the

3     time of hearing.

4          MR. KLEE (TELEPHONIC): Your Honor, this is Ken

5     Klee.  I have a related issue.  The Court has set a status

6     conference for July 14th on the issue of confidential

7     documents referenced in the examiner report.  Since the

8     examiner report will now not be filed until July 26th or 27th,

9     depending on what the Court's order is, can we set a status

10    conference continuance 2 days after the filing of the

11    examiner report?

12         THE COURT: No, because I will not be here.

13         MR. KLEE (TELEPHONIC): Okay.

14         THE COURT: Here's a thought that I do have though.

15    The next omnibus hearing - I'm sorry, it's not an omnibus

16    hearing.  The next hearing, it's set on the debtors' 2010 MIP

17    plan is scheduled for August 9th.  I don't think I scheduled

18    anything else for that day, but let me check that.

19         MR. PERNICK (TELEPHONIC): Right now what we have,

20    Your Honor, starts at 1 and we have 3 to 4 hours reserved.

21         THE COURT: Yeah.  I mean, I would be willing to add

22    that, Mr. Klee to that day and time.

23         MR. KLEE (TELEPHONIC): Thank you, Your Honor.

24         THE COURT: Okay.  Anything further before we

25    adjourn for now?

1              MR. SIEGEL (TELEPHONIC): Your Honor, this is Martin

2    Siegel from Brown, Rudnick for Wilmington Trust.  We

3    currently still have a status conference scheduled for the

4    14th, and I don't know whether you want to discuss that,

5    keeping that date at least if there are any discovery or

6    other issues at this time or at the 3:30 conference call, but

7    we think the 14th should still be a status conference if there

8    are any disputes that the parties cannot resolve by

9    themselves.  We're hopeful of resolving all disputes, but

10   discovery is ongoing and in any large case like this, there

11   are always lingering issues attempting to get schedules,

12   particular with the Examiner still conducting examinations,

13   and we think it would be helpful to keep the 14th as a status

14   conference and that in fact may help the parties resolve any

15   lingering discovery issues.  I just wanted to make sure that

16   the request about the 14th doesn't include any open discovery

17   issues.

18              THE COURT: Mr. Klee?

19              MR. KLEE (TELEPHONIC): That's fine with me.

20              THE COURT: Alright.  That's okay with me too.  Any

21   other questions?

22              MR. McMAHON (TELEPHONIC): Your Honor, if I may jump

23   in.  Excuse me, Joseph McMahon for the United States Trustee.

24   I have a question related to the differential scheduling

25   versus the filing of the report versus the status conference.

1   Clearly the parties have been discussing an extended voting

2   period with an eye towards insuring that there's, I guess,

3   equal time for exposure of a publicly filed complete report.

4   To the extent that a sizeable portion or the entire report

5   was going to be filed under seal because of issues relating

6   to confidentiality and the like, I gather that now those

7   issues will be considered on the date scheduled for the MIP

8   hearing; is that correct?

9       THE COURT: Well, let's look at - The answer is, it

10  seems to me that that's the earliest time on our present

11  schedule that they should be considered, but I want to say

12  this, I would not expect that the entire report would be

13  filed under seal.  I would expect that the largest portion of

14  it and certainly enough to be meaningful would be immediately

15  publicly available, and regardless of where in the report -

16  it sometimes comes at the end, maybe usually, there's going

17  to be a place at which Mr. Klee says, Here are the claims

18  that may exist and against whom.  I would expect that that

19  would immediately be publicly available.  So, it seems to me,

20  Mr. McMahon, that if there are other issues to be determined

21  with respect to confidentiality, they would not and should

22  not include what I've just outlined, but if Mr. -

23      MR. McMAHON (TELEPHONIC): Your Honor, I appreciate

24  that clarification.

25      THE COURT: Okay.  And, Mr. Klee, if you take issue

1    with that, tell me now.

2        MR. KLEE (TELEPHONIC): I don't, Your Honor.  What

3    we'll have to do as we move toward the filing of the report

4    is to have an executive summary session and the fact session

5    that can be filed without having to file it under seal.  The

6    problem in the case, as I addressed before, is the large,

7    broad confidentiality order that has designated many

8    documents as confidential.  The parties have in good faith

9    limited the number of confidential documents, and we'll do

10   our best to live with that limited designation until we have

11   the hearing on the 9th.

12       THE COURT: Very well.  Alright, we will adjourn

13   until 3:30 this afternoon, Eastern Time.  The Court is now in

14   recess.

15       ALL (TELEPHONIC): Thank you, Your Honor.

16       (Whereupon at 10:36 a.m., a recess was taken in the

17   hearing in this matter.)

18       (Whereupon at 3:33 p.m., the hearing in this matter

19   reconvened and the following proceedings were had:)

20       THE CLERK: All rise.

21       THE COURT: Good afternoon.  This is Judge Carey.

22   We're back on the record again in the Tribune Company,

23   Chapter 11, proceeding to address at this point scheduling.

24   Let me ask debtors' counsel to report on where the parties

25   stand.

1          MR. KRAKAUER (TELEPHONIC): Your Honor, Bryan

2     Krakauer on behalf of the Tribune debtors.  First, with

3     regard to the suggestion that I made with regard to sending

4     in the ballots on the 6th rather than having to worry about

5     what Mr. Johnston said about having to send them in 2 days

6     prior.  We did confirm with Epiq, and we could live with

7     something that basically said something like the following:

8     The voting deadline is extended to August 6th at 4 p.m.

9     provided that any properly executed and completed ballot or

10    master ballot is placed in overnight mail on the 6th and

11    actually received by the voting agent no later than the 9th,

12    which is the following Monday at 4 p.m., would also be

13    counted, and I think that will at least make sure that if

14    somebody wanted to wait until the 6th in reviewing the report,

15    they could still send it in by overnight mail and it would be

16    okay.  So, I wanted to report on that first.  And then

17    second, one of my partners did talk to Mr. Johnston, he'll

18    speak for himself, obviously, but he indicated that he would

19    - that Oak Tree would be willing to bind themselves but that

20    it would take him another day to confer with the rest of his

21    clients and to see whether they would similarly bind

22    themselves.  I talked also to Mr. Greissman who is counsel

23    for the bridge, and he indicated that he only could bind the

24    bridge agent, would not have an opportunity to talk to all

25    the bridge holders at this time individually.  Our view, the

1    debtors' view is just - at this point it is too unwieldy and

2    too much uncertainty with regard to who else might file a

3    plan or whether a plan would be filed, and we do believe it

4    would create an enormous amount of confusion and be

5    inappropriate in terms of having a plan filed right before

6    the voting deadline.  So, we would ask the Court to go with

7    the 6th rather than the 13th with the proviso for people to

8    have the ability to put the ballot in overnight mail on the

9    6th if they wish.

10          THE COURT: Alright.  Does anyone else wish to be

11    heard briefly other than to repeat any argument that has been

12    made during the earlier phone call today?

13          MR. JOHNSTON (TELEPHONIC): Your Honor, Jim Johnston

14    of Hennigan, Bennett & Dorman on behalf of the credit

15    agreement lenders.  I would.  I have to say I'm completely

16    flabbergasted by this turn of events.  I spoke to the debtors

17    - well, first, I spoke to the largest of my clients which is

18    Oak Tree.  Oak Tree is the one that was designated as a

19    negotiating party, has access to all the confidential

20    information and the like, and I did get the commitment that

21    they would refrain from filing a plan through August 13th if

22    the voting deadline was extended until August 13th.  I told

23    them that my 16 remaining clients, I was virtually certain

24    that I could get that commitment, and I could get it by

25    tomorrow morning by sending out an email after this hearing,

1   and that should have addressed the concerns that you heard

2   this morning that there would be confusion and chaos because

3   of a filing by my clients of a plan during the voting period.

4   Suddenly we hear that that's not good enough and they're

5   concerned about the bridge facility, which is a class to

6   receive a distribution of less than 1 percent on their claims

7   and is guaranteed to reject the plan.  I think that that

8   shows the concerns you heard this morning about confusion and

9   chaos just don't ring true and what's going on here for

10  whatever reason is that the settlement supporters want to do

11  everything they can to insure that the examiner's report has

12  the most minimal impact possible.  They don't want credit

13  agreement lenders, the class that's voting on this plan and

14  that will have the most impact on the vote, to hear what the

15  Examiner has to say.  I think for all the reasons discussed

16  this morning, it's perfectly appropriate to set the plan

17  voting deadline at August 13th.  An August 6th deadline

18  enforcing people to put their ballots by FedEx on August 6th

19  is simply not meaningful.  The creditors will not have the

20  ability to read and understand the examiner's report and it's

21  not appropriate.

22          THE COURT: Does anyone else wish to be heard?

23          MR. MOSKOWITZ (TELEPHONIC): Yes, Your Honor.

24  Elliot Moskowitz of Davis, Polk represent JPMorgan.  Can I

25  just be heard for about 1 minute?

1          THE COURT: Go ahead.

2          MR. MOSKOWITZ (TELEPHONIC): I just want - I'm sorry

3    that Mr. Johnston is flabbergasted, but I would remind

4    everyone that, of course, on the call this morning, we

5    certainly did talk about the concern that we're not only

6    concerned about his clients filing an alternative plan, but

7    of course anybody could file an alternative plan, and now we

8    also know that the bridge agent can only bind the agent and

9    is not even going to speak to the various holders.  So

10   there's a risk there as well, and even for purposes of this

11   call, Mr. Johnston can't even deliver anyone beyond Oak Tree.

12   I think we have a solution that works.  We have a solution

13   that makes sense, and it's also a solution that speaks

14   directly to the concern that Mr. Johnston referred to on the

15   call this morning when he pointed out to the Court that

16   parties really wouldn't have until August 6th.  They would

17   have only until a couple of days before because things had to

18   be received by August 6th.  That concern has now been totally

19   resolved, and so, for those reasons, Your Honor, and for all

20   the reasons that were discussed this morning, I think the

21   debtors' proposal, which I think is supported by everyone and

22   addresses the concerns that were raised earlier, should be

23   adopted.

24          THE COURT: Well, there's a lot I'd like to say, but

25   I'm not going to at this point.  I will, however, ask that

1   the debtor provide to me one form of order that grants the

2   Examiner's motion to extend the deadline from July 12th, 2010

3   to July 26th, 2010 at 11:59 p.m., Eastern Time, and to provide

4   in the same form of order what the debtor provided in its

5   proposed order attached to its reply but with one change, and

6   that is extending the voting deadline to August 6, 2010 and

7   requiring only that ballots be postmarked by that day and

8   time.  Are there any questions?

9          MR. KRAKAUER (TELEPHONIC): Your Honor, could I just

10  suggest one point on that?

11          THE COURT: Only if it's a question.

12          MR. KRAKAUER (TELEPHONIC): Okay.  Would there be a

13  date that the ballots actually have to be received by Epiq

14  because they were insistent that that would have be worked in

15  order for them to be an appropriate certification?

16          THE COURT: I'm not going to require that, given the

17  time frame within which creditors have to vote, that they

18  have to send overnight mail, and Epiq and everyone else will

19  just have to deal with the consequences of it.  The parties

20  have put the Court in an uncomfortable situation and that's

21  how I intend and will address it.  Now, if you get a form of

22  order to me today, within the next hour, it will be acted on

23  and docketed by the end of the day.  Otherwise, I won't see

24  it till Monday.  I leave the choice to you.  Are there any

25  other questions?

1      MR. BARASH (TELEPHONIC): Yes, Your Honor, I have a

2  question.  This is Martin Barash, Klee, Tuchin, Bogdanoff &

3  Stern, for the Examiner.  We had attached to the motion a

4  very simple form of order.  I understand the Court would like

5  one form of order.  I would kindly request that any form of

6  order relating to the relief requested by the Examiner, which

7  should be very simple, be copied on my office so that we can

8  quickly look at it and sign off.

9      THE COURT: It's going to say the same thing that

10  your form of order says with respect to that language with

11  respect to your motion except for the change in the date and

12  time.  I prefer to get an order entered today, and I will

13  review myself whether the order that's presented has been

14  faithfully memorialized.

15      MR. BARASH (TELEPHONIC): Thank you, Your Honor.

16      THE COURT: Are there any other questions?  Alright,

17  thank you.  That concludes this hearing.  Court will stand

18  adjourned.

19      (Whereupon at 3:44 p.m., the hearing in this matter

20  was concluded for this date.)

        I, Elaine M. Ryan, approved transcriber for the
United States Courts, certify that the foregoing is a correct
transcript from the electronic sound recording of the
proceedings in the above-entitled matter.

/s/ Elaine M. Ryan_____July 2, 2010
Elaine M. Ryan
2801 Faulkland Road
Wilmington, DE 19808
(302) 683-0221