# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket No. 4852**<br>**Proposed Hearing on Cross Motion: July 14, 2010 at 1:30 p.m. (ET)**<br>**Proposed Objection Deadline on Cross Motion: July 12, 2010 at 9:00 a.m. (ET)** |

## DEBTORS' (I) OPPOSITION TO THE MOTION OF BRIDGE AGENT FOR ENTRY OF ORDERS (A) ESTABLISHING PROCEDURES FOR ADJUDICATING THE DEBTORS' OBJECTIONS TO THE BRIDGE LOAN CLAIMS IN CONJUNCTION WITH PLAN CONFIRMATION PROCEEDINGS AND (B) ALLOWING SUCH CLAIMS IN FULL AND (II) CROSS MOTION FOR ENTRY OF PRELIMINARY PRE-TRIAL SCHEDULING ORDER FOR THE PLAN CONFIRMATION HEARING

Tribune Company and most of its wholly owned subsidiaries, each of which is a debtor and debtor in possession (each a "Debtor" and collectively, the "Debtors"), hereby file

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

46429/0001-6858277v1

this opposition (the "Opposition") to the Motion of Bridge Agent (the "Bridge Agent") for Entry of Orders (I) Establishing Procedures for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (II) Allowing such Claims in Full [Docket No. 4852] (the "Motion to Adjudicate"). The Debtors further request that the Court enter a preliminary pretrial order specifying the matters to be heard at the Confirmation Hearing of the Debtors' pending Plan of Reorganization in connection with the Global Settlement of the LBO-Related Causes of Action set forth in the Plan (the "Scheduling Motion"). In support of this Opposition and Scheduling Motion, the Debtors respectfully represent as follows:[2]

## PRELIMINARY STATEMENT

1. The Motion to Adjudicate should be denied. While it is cast by the Bridge Agent as a means of promoting "judicial economy," its real effect and apparent purpose is to derail the Plan Confirmation Hearing. The issue that must be determined by the Court at the Plan Confirmation Hearing with respect to approval of the Global Settlement is whether the settlement is fair, reasonable, and in the best interests of the Debtors' Estates. The Bridge Agent's Motion threatens to fundamentally alter the Hearing by transforming it from a hearing on whether the settlement should be approved into something entirely different. At a minimum, the Bridge Agent's proposal would significantly complicate and lengthen the Plan Confirmation Hearing by permitting a satellite trial on Bridge Loan Claims, which in turn would necessitate additional evidence and witnesses and substantially delay confirmation; but much more problematic, the Bridge Agent's proposal could turn the Hearing into the very full blown trial on

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries [Docket No. 4744] (the "Disclosure Statement").

2

46429/0001-6858277v1

the merits of the LBO-Related Causes of Action that other parties are seeking to avoid by entering into the Global Settlement. As such, the Bridge Agent's proposal is flatly contrary to the standards governing confirmation, would be prejudicial to numerous creditors in these cases, and would effectively forestall approval of the Plan in any reasonable time frame.

2. Moreover, all of this is entirely unnecessary, given that the Plan already provides for an effective and fair procedure for the adjudication of the Bridge Loan Claims. The Bridge Agent provides no reason why the Bridge Loan Claimants will be prejudiced by the procedures set forth in the Plan. The Bridge Loan Claims are unsecured Claims against Tribune arising from the Leveraged ESOP Transactions and are guaranteed, on a subordinated basis, by the Guarantor Subsidiaries.[3] As a result of the contractual subordination of the guaranty of the Bridge Loan indebtedness, the Bridge Lenders will not recover any value from the Guarantor Subsidiaries on account of their Claims. Instead, the Bridge Lenders are entitled to recovery on account of their Claims only from Tribune, and only to the extent such recovery is not avoided in connection with certain LBO-Related Causes of Action. The Plan provides the Bridge Loan Claim Holders with the option of participating in the Global Settlement in respect of their recoveries from Tribune on the same terms as are proposed to the Senior Lenders and to thereby settle and resolve any avoidance claims respecting the Bridge Loan Claims, or to not settle and to have their Claims and any avoidance actions respecting their Claims determined in the normal course in the claims process and by adversary proceeding.[4] There is nothing inappropriate or

---

[3] The guaranty by the Guarantor Subsidiaries of the Bridge Loan Claims indebtedness is subordinate to the guaranty of the Senior Loan Agreement indebtedness.

[4] The initial version of the Plan proposed by the Debtors sought to classify the Bridge Lenders with the Senior Lenders. The Bridge Agent not only opposed this classification, but also made clear its intention to reject the Plan and dispute the Global Settlement in its entirety. Against this backdrop, the Debtors modified the Plan to separately classify the Bridge Lenders and the Senior Lenders and to provide the Holders of Bridge Loan Claims the opportunity to opt-out of the Global Settlement. The Plan also provides that each Holder of a Bridge Loan Claim may elect to opt-in to the Global Settlement, even if the Class of Bridge Loan Claims ultimately votes to reject the

3

unfair in resolving the Bridge Loan Claims through the normal claims and adversary proceeding process.

3. The Debtors do, however, agree that it would useful for the Court to establish procedures regarding the conduct of the Plan Confirmation Hearing. To that end, the Debtors request, by cross motion, that the Court enter a preliminary pre-trial scheduling order for the purpose of providing clarity to all parties as to the schedule and evidentiary matters to be addressed at the Plan Confirmation Hearing – i.e., whether, taking account of the votes of the creditor classes, the Debtors' proposed Global Settlement of the potential LBO-Related Causes of Action should be approved. To that end, and consistent with applicable law, the Debtors request that the Court enter the proposed Scheduling Order to (1) make clear that such determination does not, as the Bridge Agent suggests, require a full blown trial on the merits of the claims to be settled, (2) specify the nature of the evidentiary presentations that will be permitted and (3) allocate time for parties to make their presentations at the Confirmation Hearing.

## ARGUMENT

### I. The Relief Requested by the Bridge Agent In the Motion To Adjudicate Is Unnecessary, Contrary to the Debtors' Pending Plan and Would Be Prejudicial to Debtors and the Settling Parties.

4. The Bridge Agent's effort to adjudicate the allowance of the Bridge Loan Claims at the Confirmation Hearing is contrary to the terms and provisions of the Plan proposed by the Debtors. The matter to be considered at the Confirmation Hearing in connection with the potential LBO-Related Causes of Action is whether, taking into account the votes of applicable creditor classes, the Global Settlement should be approved in connection with Plan

---

Plan. See Plan §3.2.4(b)(ii)(B).

Confirmation. Adjudication of the potential allowance of the Bridge Loan Claims is thus outside the scope of the matters properly considered in determining whether or not the Plan should be confirmed.

5. For purposes of evaluating whether the Global Settlement in the Plan should be approved, applicable case law provides that the Court need only canvass the issues and determine that the settlement is fair and equitable, reasonable, and in the best interests of the Debtors' Estates. See, e.g., In re Spansion, Inc., 2009 WL 1531788, 7 (Bankr. D. Del. 2009) ("In evaluating this aspect of the proposed settlement, the Court's task is not to 'decide issues of law or fact raised by the [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness.") (citing In re Exide Technologies, 303 B.R. 48, 68 (Bankr. D. Del. 2003); see also In re Integrated Health Services, Inc., 2001 WL 1820426, at *2, 2001 Bankr. LEXIS 100, at *7 (Bankr. D. Del. Jan. 3, 2001) (same) (citations omitted).

6. To make this determination, the Court need consider the following four factors: "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay…; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). In evaluating the Martin factors, existing precedent makes clear that the Court should only examine the Global Settlement for purposes of determining whether it falls below the lowest point in the range of reasonableness – the Court should not conduct a full blown trial or even a mini-trial on the merits. See, e.g., In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005) ("In determining whether to approve a settlement, "[t]he court is not supposed to have a 'mini-trial' on the merits, but should 'canvass the issues to see whether the settlement

46429/0001-6858277v1

falls below the lowest point in the range of reasonableness.' ") (citations omitted); In re Cellular Info. Sys., 171 B.R. 926, 948 (Bankr. S.D.N.Y. 1994) ("The Supreme Court could not have intended that, in order to avoid a trial, the judge must in effect conduct one.") (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982). In this regard, it should be noted that the Court's ability to "canvass" the issues will be assisted by the review of the same issues that the Examiner is currently reviewing in connection with his forthcoming report.

       7.    Consistent with this standard, the Debtors intend to present evidence at the Confirmation Hearing in support of the fairness and reasonableness of the Global Settlement. While the Debtors' presentation will address each of the criteria relevant to approval of the Global Settlement during the Confirmation Hearing, the Debtors do **not** anticipate presenting evidence with respect of each issue relevant to the potential allowance of the Bridge Loan Claims, nor should they be required to present detailed and exhaustive evidence regarding all other potential LBO-Related Causes of Action, which, as explained below, would likely become necessary if the Bridge Loan Claims are to be adjudicated at the Plan Confirmation Hearing. To the contrary, the Debtors expect that its presentation will involve the testimony of a limited number of fact and expert witnesses and that it can be accomplished within the five-day Confirmation Hearing scheduled by this Court. By contrast, the procedure proposed by the Bridge Agent – i.e., adjudication of the allowance of the Bridge Loan Claims at the Confirmation Hearing itself – will necessarily range far beyond the "canvassing of issues" relevant to approval of the Global Settlement. Indeed, litigation of the allowance of the Bridge Loan Claims would likely turn the Plan Confirmation Hearing into a full blown trial on the merits of the LBO-Related Causes of Action. This conclusion flows from the fact that many of the factual and legal issues relevant to an adjudication of the Bridge Loan Claims are also relevant to resolution of

other of the LBO-Related Causes of Action. In order to protect their rights in the event that the Plan is not approved by the Court, a multitude of additional parties (whose claims would otherwise be resolved through the Global Settlement) would seek to intervene and litigate the very claims that the Global Settlement is designed to resolve.

8. Transforming the Confirmation Hearing in this manner is wholly inappropriate and would significantly prejudice the Debtors, the settling parties and other creditors. As an initial matter, such a change would likely extend the Confirmation Hearing well beyond the timeframe the Debtors foresee as needed to establish a record sufficient for the Court to consider approval of the Global Settlement.

9. More significantly, however, permitting adjudication of the allowance of the Bridge Loan Claims to proceed at this juncture would significantly prejudice the parties participating in the Global Settlement, who would be forced to confront potential adverse adjudications of the claims and commit significant time and resources to presenting evidence in support of or opposing such determinations. By contrast, adjudicating allowance of the Bridge Loan Claims following implementation of the Global Settlement, as proposed in the Plan, would not implicate the interests of the hundreds of parties participating in the Global Settlement, as the Claims of such parties will be conclusively resolved if the Court confirms the Plan. After the Global Settlement is final and the Plan is effective, other parties in interest ought not have the same levels of concern regarding potential adverse determinations respecting the Claims.

10. The relief requested by the Bridge Agent would also improperly modify the procedures set forth in the Plan for litigation concerning the potential allowance of Bridge Loan Claims. As noted above, the Plan enables each Bridge Lender to either (i) consensually elect to participate in the Global Settlement, thereby resolving all LBO-Related Causes of Action against

46429/0001-6858277v1

such Holder without the need for costly and protracted litigation or (ii) decline to participate in the Global Settlement, thereby preserving litigation of all LBO-Related Causes of Action against such Holder for resolution following the Effective Date of the Plan. There is nothing in the Bankruptcy Code or applicable law which permits the Bridge Lenders to compel the Debtors to propose an alternative Plan providing for a different treatment, and the Bridge Agent makes no credible argument that the Bridge Claimants will be prejudiced by such a procedure.

11. Finally, the Global Settlement conclusively settles the potential LBO-Related Causes of Action without the need for protracted and costly litigation prior to confirmation of the Plan, in large part, because of the agreement of certain Senior Lenders to reallocate significant value to which the Class of Senior Loan Claims would otherwise be entitled under the Plan to the Holders of General Unsecured Claims and Senior Noteholder Claims against Tribune. The Debtors believe that one of the principal reasons those Senior Lenders are willing to provide this consideration is in exchange for a prompt and conclusive resolution of the potential LBO-Related Causes of Action. Granting the relief proposed by the Bridge Agent would unfairly undermine this core feature of the Plan by permitting the Bridge Lenders to unilaterally halt consideration of the Global Settlement for the sole purpose of litigating their own Claims. Such a result would undermine one of the important elements of the deal struck by the parties, and would undoubtedly prejudice the Debtors Estates', creditors, and other parties in interest.

12. In short, through the Motion to Adjudicate, the Bridge Agent, who has as of this date declined to participate in the Global Settlement, is essentially seeking relief that directly jeopardizes the support of those parties that have agreed to participate in the Global Settlement.

46429/0001-6858277v1

## II. The Court Should Enter A Scheduling Order To Clarify the Conduct and Timing of the Confirmation Hearing.

13. In light of the issues raised by the Motion to Adjudicate, the Debtors respectfully suggest that the Court enter an order that provides all parties with clarity as to the appropriate scope and timing of the Plan Confirmation Hearing. Such an order should specify the timing for opening and closing remarks, allocate time to the proponents and opponents of the Plan regarding the presentation of evidence, and make clear that expert reports and expert and fact testimony pertaining to any potential LBO-Related Cause of Action shall be limited to the issues that must be resolved – i.e., the reasonableness of the settlement as informed by the Texaco/Martin factors. A proposed form for such a Scheduling Order is submitted herewith and attached as Exhibit A. It is the Debtors' belief that the proposed Scheduling Order will be of significant assistance to all of the parties as they prepare for the Hearing, and ensure that the Hearing is conducted in the most efficient and effective manner possible.

## CONCLUSION

14. For all the reasons stated above, adjudication of the allowance of the Bridge Loan Claims in conjunction with the Plan Confirmation Hearing as proposed by the Bridge Agent is not only unnecessary in that the Plan fully protects the Bridge Lenders' rights, but is likely, at a minimum to delay Plan Confirmation Hearing and could lead to an adjudication of the very causes of action that the Global Settlement is intended to resolve. In contrast entry of the Scheduling Order will not only aid the parties in interest in preparing for the Confirmation Hearing, but will ensure that the Confirmation Hearing is conducted by such parties in an efficient, orderly and expeditious manner.

15. Accordingly, the Debtors respectfully request that the Court (i) deny the Motion to Adjudicate in all respects, including with respect to allowance of the Bridge Loan

9

Claims in full and (ii) enter an order, in substantially the form attached hereto as <u>Exhibit A</u> approving the Scheduling Order and granting such other and further relief as the Court deems just and proper.

Dated:  Wilmington, Delaware
       July 6, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Janet E. Henderson
Kevin T. Lantry
Kerriann S. Mills
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION