# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref No. 4852 |

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO MOTION OF BRIDGE AGENT FOR ENTRY OF ORDERS (I) ESTABLISHING PROCEDURES FOR ADJUDICATING THE DEBTORS' OBJECTIONS TO THE BRIDGE LOAN CLAIMS IN CONJUNCTION WITH PLAN CONFIRMATION PROCEEDINGS AND (II) ALLOWING SUCH CLAIMS IN FULL

The Official Committee of Unsecured Creditors (the "Committee") of Tribune

Company and its various debtor-subsidiaries (collectively, the "Debtors") submits this Objection

(the "Objection") to the Motion of Bridge Agent for Entry of Orders (I) Establishing Procedures

for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Confirmation Proceedings and (II) Allowing Such Claims in Full (the "Motion"), and in support

hereof respectfully represents as follows:

**PRELIMINARY STATEMENT**

      1.      Wells Fargo Bank, N.A., as successor administrative agent to the Bridge Loan

Claims[2] ("Wells Fargo"), requests this Court approve certain procedures (the "Proposed

Procedures") for adjudicating the Debtors' objections to the Bridge Loan Claims.  As is typical in

the context of reorganizations before this Court, the Debtors, however, have already proposed a

claims resolution procedure in their Joint Plan of Reorganization (Docket No. 4690, Ex. A) (the

"Plan"), which contemplates that objections to the Bridge Loan Claims will be addressed post-

confirmation, but only if necessary given the circumstances.  Although Wells Fargo may desire

that the claims resolution process proposed under the Plan be administered in a different manner,

the details and parameters of the Plan must be left to the discretion of the Debtors so long as the

Plan is consistent with the Bankruptcy Code.

      2.      Wells Fargo does not seem to contest the Debtors' right to propose the Plan;

during the exclusivity period, Wells Fargo surely cannot dictate how the Debtors determine to

resolve disputed claims under the Plan.  Instead, Wells Fargo suggests that the Court adopt what

it views as a more logical approach to addressing issues that may arise in connection with the

Bridge Loan Claim, assuming the holders of such claims vote to reject the Plan.  Putting aside

that the Debtors' process is the one that should be followed during exclusivity, the reason for the

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and its Subsidiaries*, dated June 4, 2010 (Docket No. 4690).

changes -- preserving judicial resources, ensuring procedural fairness and avoiding undue prejudice -- are simply not well-founded and/or are greatly outweighed by the harm that the Proposed Procedures would cause.

3.       First, if the Bridge Lenders vote in favor of the Plan, all of the underlying issues become moot as the Debtors will never object to the Bridge Loan Claims. Second, Wells Fargo asserts that, in evaluating the Global Settlement, the Court will have to undertake much the same inquiry as it would to determine whether the Bridge Loan Claims should be avoided, and thus that such matters must be addressed together to preserve judicial resources. Of course, and as stated, the avoidance or non-avoidance of the Bridge Loan Claims may never have to be resolved, depending on the outcome of the Plan vote. Moreover, because the Third Circuit mandates that this Court must merely canvass the issues to ensure that the Global Settlement does not fall below the lowest level of reasonableness (rather than conduct a trial or mini-trial on the avoidance of the Bridge Loan Claims), Wells Fargo's insistence on procedures designed to try the Bridge Loan Claims is inappropriate. In fact, if the route proposed by Wells Fargo is adopted, the Court will turn the confirmation process into a hydra-headed beast, where the Court will not only have to determine typical confirmation issues but will also be required to address claim and other issues that will essentially be invited by a ruling that expands the scope of a confirmation hearing as imagined by the Third Circuit. The procedures the Debtors have proposed in connection with confirmation of the Plan are more than adequate to provide the Court and parties in interest with information required to evaluate the Bridge Loan Claims in connection with its assessment of the Global Settlement and confirmation of the Plan.

## COMMITTEE'S OBJECTION

**A.    The Debtors Are Allowed to Determine the Terms of
their Plan of Reorganization During their Exclusivity Periods**

4.      The Plan provides that Bridge Loan Claims that vote to reject the Plan and elect not to participate in the Global Settlement will be deemed "Disputed Claims" if the Bridge Loan Claims class as a whole votes to reject the Plan. See Disclosure Statement at 12, 78. The Plan further provides that a claim must be objected to within 210 days after the Effective Date or such later date as determined by the Court. See Disclosure Statement at 78-79, 109; Plan at 27. Wells Fargo argues that in order to "preserve judicial resources, ensure procedural fairness and avoid undue prejudice," this proposed claim resolution process for Bridge Loan Claims should be replaced with a process that is part and parcel of the Plan confirmation process and which does not address claim issues post-Plan effective date. See Motion ¶ 13. However, Wells Fargo fails to cite to any law that overcomes the obvious: Wells Fargo's preferences (which are at direct odds with the preferences of the Committee) do not alter the Debtors' right to determine the contents of the Plan during the Debtors' exclusivity period.

5.      Section 1121 of the Bankruptcy Code provides that the Debtors are provided an exclusive period of 18 months within which to file a plan of reorganization and 20 months within which to solicit votes in favor of that plan. Furthermore, section 1127 of the Bankruptcy Code provides that "[t]he proponent of a plan may modify such plan at any time before confirmation." This latter section permits the Debtors, and only the Debtors, to modify the Plan before confirmation. See 7 Collier on Bankruptcy ¶1127.02 (16th ed. 2009).

6.      It is not disputed that the Debtors are within their exclusivity periods. The Debtors have included in their Plan commonly-proposed and regularly-approved procedures to resolve objections to claims. In so doing, the Debtors are acting entirely consistent with the

Bankruptcy Code.  Accordingly, it is the Debtors' approach to resolving the claims, and not

Wells Fargo's, that should be sanctioned by the Court.

**B.      Implementing Wells Fargo's Proposal Would be**
**Unduly Burdensome to the Court and the Parties**

7.      With no basis in the law for its request, Wells Fargo can argue only that the

equities -- here, Wells Fargo's notions of judicial economy, fairness and prejudice to the Bridge

Lenders -- dictate the wholesale abandonment of the processes that the Debtors have proposed in

connection with confirmation of their Plan.  The central tenet of Wells Fargo's alternative

proposal is that the possible fraudulent conveyance issues in connection with the Bridge Loan

Claims are so intertwined with Wells Fargo's objections to the Global Settlement and the Plan

that everything would best be resolved together.  However, Wells Fargo fails to appreciate that

this Court is not required to try the potential avoidance of the Bridge Lender Claims in

connection with its assessment of the Global Settlement and confirmation of the Plan.

8.      Wells Fargo seeks to define certain procedures related to the adjudication of

the allowance of Bridge Loan Claims in conjunction with the Confirmation Proceeding.  See

Motion at ¶ 12; see also Order Establishing Procedures for Determining Allowance of Bridge

Loan Claims in Conjunction with Plan Confirmation Proceedings (Docket No. 4852, Ex. A).

These procedures set forth timelines for discovery, deadlines for submitting memoranda of law

and related responses and a hearing date for the Court to consider the contested issues.  Wells

Fargo seeks not to test the Global Settlement or contest confirmation of the Plan; instead, Wells

Fargo's procedures seek to advance litigation related to the LBO-related causes of action (framed

here as the fraudulent conveyance action against the Bridge Loan Claims) in what amounts to a

mini-trial.  This is not consistent with the law in the Third Circuit.

9.      In order to determine whether a proposed settlement should be approved, the Third Circuit Court of Appeals in Myers v. Martin (In re Martin), 91 F.3d 389 (3rd. Cir. 1996) instructed bankruptcy courts to consider (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. See id. at 393.  In evaluating the probability of success in litigation under Martin, a bankruptcy court is not expected to hold a full evidentiary hearing or mini-trial, but should instead "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." See In re Spansion, Inc., No. 09-10690 (KJC), 2009 Bankr. LEXIS 1283, at *3 (Bankr. D. Del. June 2, 2009).  In fact, mini-trials of the type proposed by Wells Fargo are disfavored in the Third Circuit, as well as most other jurisdictions.  See id., 2009 Bankr. LEXIS 1283, at *13  (citing In re Exide Techs., 303 B.R. at 68); Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.), 336 B.R. 87, 93 (Bankr. D. Del. 2005).

10.     Because there is no need to conduct a mini-trial on the Bridge Loan Claims in order to assess the appropriateness of the Global Settlement, Wells Fargo is mistaken when it contends that holding such a mini-trial during the Plan confirmation proceedings, which are expected to be difficult and lengthy without unnecessary additions to the agenda, will enhance judicial economy.

11.     If the Court were, however, to take a contrary approach, the result would likely be a review of the entire Global Settlement and thus require the analysis of all LBO-litigation issues from all of the different perspectives.  Once the Court allows a detailed dive into the fraudulent conveyance actions at confirmation, as opposed to a review of the Global Settlement in a manner that is consistent with Third Circuit case law, the confirmation hearing is

destined to devolve into full-blown litigation of the very issues that the Global Settlement is designed to resolve. In short, the Committee asserts that the issues that should be addressed by the Court at confirmation are those set forth in Section 1129 of the Bankruptcy Code and those related to the fairness and reasonableness of the proposed Global Settlement.

**C.    The Proposed Procedures are Predicated on "Confirmation Issues"**
       **that Should Not be Addressed in the Context of Adjudicating Claims**

12.    In its effort to convince this Court that approval of the Proposed Procedures is warranted, Wells Fargo incorporates a number of assertions that are effectively objections to confirmation of the Plan. Interwoven into the fabric of the Motion, the issues highlight Wells Fargo's real purpose: to advance Wells Fargo's future argument that the Plan is unconfirmable. Such matters are, of course, premature. However, assuming the Court were to believe it should consider these issues now, the Committee's responses follow:

a.    <u>Objection Schedule</u>. Wells Fargo contends that the Plan's post-confirmation objection schedule is prejudicial and that it is thus entitled to the implementation of the Proposed Procedures. Motion ¶ 16. However, arguments concerning the post-confirmation elements of a Plan are regularly and properly addressed through objections to plan confirmation. See, e.g., <u>In re Exide Techs.</u>, 303 B.R. 48, 71 (Bankr. D. Del. 2003) (considering post-confirmation release and injunction provisions of a proposed plan at the plan confirmation hearing).

b.    <u>Classification</u>. Wells Fargo contends that the Plan improperly classifies and treats its claims differently than the purportedly similarly-situated Senior Loan Claims, and that such treatment is detrimental to the Bridge Lenders. Motion ¶ 17. Indeed, Wells Fargo explicitly argues that the proposed classification of claims "does not satisfy the requirement for cram-down treatment under section

1129(b) of the Bankruptcy Code." See Motion ¶ 17. If the Bridge Lenders do not believe that the Plan is confirmable due to improper classification, the appropriate avenue for making such arguments is an objection to plan confirmation. See, e.g., In re Nickels Midway Pier LLC, 2010 Bankr. LEXIS 1642 at *22-*23 (Bankr. D. N.J. May 21, 2010) (considering an objection to plan confirmation based on a creditor's claim of substantial similarity to separately classified creditors); In re TCI 2 Holdings LLC, 428 B.R. 117, 133 (Bankr. D. N.J. 2010) (addressing whether a proposed classification scheme discriminates against certain note holders, determining it does not, and confirming a proposed plan).

      c.      Conditions Precedent. Wells Fargo has additionally argued that the implementation of the Proposed Procedures is supported by its belief that certain conditions to the effectiveness of the Plan will be undeterminable as of the effective date of the Plan. See Motion ¶ 18. However, given that the law does not require adjudication of claims prior to confirmation or the effective date of a plan, there is certainly no need to implement alternative procedures in order to ensure that claims are adjudicated pre-confirmation. See In re Lewis, 875 F.2d 53, 56 (3d Cir. 1989) (allowing a debtor to challenge the validity of a secured claim post-confirmation). To the extent that Wells Fargo believes that the conditions to Plan effectiveness are unworkable, it may object at confirmation. See, e.g., In re TCI 2 Holdings LLC, 428 B.R. at 173 (considering the permissibility of a condition precedent to plan effectiveness at plan confirmation); In re 222 Liberty Assocs., 108 B.R. 971, 976 (Bankr. E.D. Pa. 1990) (considering an objection based on the impropriety of certain conditions precedent to plan confirmation at the confirmation hearing).

13.     Again, if Wells Fargo objects to Plan confirmation, its proper recourse is to vote to reject the Plan and/or object to confirmation of the Plan on whatever grounds it deems appropriate.  As the Court will address any of Wells Fargo's objections at the confirmation hearing, such objections should not be addressed at this time.

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court (a) deny the Motion and (b) grant such other or further relief as the Court deems appropriate.

Dated: July 7, 2010
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David LeMay
Douglas Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York  10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*