## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| TRIBUNE COMPANY, et al., | : Case No. 08-13141 (KJC) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |
|  | : Re: Docket Nos. 4852, 4943 |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### OBJECTION OF CERTAIN SETTLEMENT SUPPORTERS TO MOTION OF BRIDGE AGENT FOR ENTRY OF ORDERS (I) ESTABLISHING PROCEDURES FOR ADJUDICATING THE DEBTORS' OBJECTIONS TO THE BRIDGE LOAN CLAIMS IN CONJUNCTION WITH PLAN CONFIRMATION PROCEEDINGS AND (II) ALLOWING SUCH CLAIMS IN FULL [DKT. NO. 4852] AND JOINDER TO THE DEBTORS' CROSS MOTION FOR ENTRY OF PRELIMINARY PRE-TRIAL SCHEDULING ORDER FOR THE PLAN CONFIRMATION HEARING [DKT. NO. 4943]

JPMorgan Chase Bank, N.A., Agent for the Debtors' prepetition senior lenders

and a holder of senior loan claims, Angelo Gordon & Co. LP, on behalf of certain funds

and managed accounts holding senior loan claims, Law Debenture Trust Company of

New York, solely in its capacity as successor indenture trustee for certain series of the

Debtors' prepetition senior notes, and Centerbridge Credit Advisors LLC, on behalf of

certain funds and managed accounts holding senior notes claims (collectively, the

"Settlement Supporters")[1] hereby submit this objection to the motion (the "Motion") of

Wells Fargo Bank, N.A. ("Wells Fargo"), in its capacity as successor administrative

---

[1] Numerous other Senior Lenders holding substantial claims have also expressed public support for the settlement underlying the Debtors' Plan and the Plan itself.

agent for the Bridge Facility,[2] establishing procedures for adjudicating objections to the

Bridge Loan Claims[3] in conjunction with confirmation of the Debtors' Plan and joinder

to the Debtors' cross motion requesting the entry of a Preliminary Pre-Trial Scheduling

Order for the Plan Confirmation Hearing (the "Preliminary Pre-Trial Scheduling Order").

## INTRODUCTION

1.     Wells Fargo has moved for an order that would require this Court to

conduct a full-blown trial on the merits of some or all of the issues relative to the LBO-

Related Causes of Action[4] at the confirmation hearing, despite the fact that the Plan

settles those claims (the "Settled Claims"). Accordingly, the issue for confirmation is not

trial of the Settled Claims but whether the Court should approve the settlement. Donning

the cloak of judicial economy, Wells Fargo argues that failing to try the claims now

"would be a colossal waste of judicial resources" because the Court, in considering

---

[2] The Bridge Facility consists of that certain Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, among Tribune, the lenders from time to time party thereto, Merrill Lynch Capital Corporation as administrative agent, JPMorgan Chase Bank, N.A., as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as amended, restated, supplemented or otherwise modified from time to time. Plan § 1.1.18.

[3] The Bridge Loan Claims are any "claims," as defined in section 101(5) of the Bankruptcy Code, arising under that certain Senior Unsecured Interim Loan Agreement, dated as of December 20, 2007, among Tribune, the lenders from time to time party thereto, the Merrill Lynch Capital Corporation as administrative agent, JPMorgan Chase Bank, N.A., as syndication agent, and Citicorp North America, Inc. and Bank of America, N.A., as co-documentation agents, as amended, restated, supplemented or otherwise modified from time to time. Plan §§ 1.1.17-18. Under the Plan, the Bridge Loan Claims held by rejecting claimants are disputed claims. Plan § 3.2.4(b)(ii).

[4] As defined in the Plan, the LBO-Related Causes of Action consist of "any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against any Person arising from any transaction related to the leveraged buy-out of Tribune that occurred in 2007, including, without limitation, the purchase by Tribune of its common stock on or about June 4, 2007, the merger and related transactions involving Tribune on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such claims, causes of action, avoidance powers or rights, or legal or equitable remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law." Plan § 1.1.103.

RLF1 3588292v. 1

whether to confirm the Plan, is required to entertain plenary litigation of the Settled Claims. (*See* the Motion at ¶¶ 15-16.) There is one conclusive problem with this argument. It is not true.

2.    With respect to the Settled Claims, the only issue for consideration by the Court at the confirmation hearing is whether the Global Settlement meets the Third Circuit's *Martin* factors and is above the lowest point in the range of reasonableness (which it is). To make that determination, the Court need not—and based on instructive legal precedent, must not—conduct a full trial on the merits of some or all of the issues raised by the Settled Claims as if the Global Settlement had never occurred. Instead, the Court is supposed to "canvass the issues" based on a review of the available record to determine whether the Global Settlement meets the legal standards for approval. This requires, of course, an assessment of the Debtors' business judgment in entering into the Global Settlement and consideration of the four *Martin* factors for the Court to determine whether a finding that the Global Settlement exceeds the lowest point in the range of reasonableness. Here, with millions of pages of documents produced, dozens of depositions taken, and a multi-hundred page Examiner's Report on the way in the wake of an exhaustive investigation, the Court, based on the record alone, will have no difficulty "canvassing the relevant issues."

3.    The assertion that it is either necessary or proper to conduct a full trial on the merits of some or all of the issues raised by the Settled Claims in connection with the upcoming confirmation hearing is simply legally incorrect. Indeed, the reason the *Martin* factors apply to a settlement of this type is to avoid the need for the Court to reach a conclusion on the merits of the litigation when a settlement is proposed. Rather than

RLF1 3588292v. 1

waste resources, the *Martin* factors are designed to save them. To do otherwise would discourage parties from entering into reasonable settlements of disputes, and require the expenditure of enormous resources on settled disputes. This is the genuine waste of Court and estate resources that the legally correct approach to the scope of the confirmation hearing will avoid.

4.    Wells Fargo does not support the Global Settlement and seeks to derail its confirmation. To that end, Wells Fargo (and likely other Plan opponents) no doubt seeks to convert the Court's generous allowance of five full days for the confirmation hearing into a multi-week trial of the settled LBO-Related Causes of Action, replete with numerous unnecessary expert witnesses,[5] fact witnesses, and laborious attorney presentations. As set forth below, Wells Fargo has no legal or practical bases to request this of the Court, and the Court should deny the Motion. Additionally, the Settlement Supporters respectfully request that the Court grant the Debtors' cross-motion and enter the Preliminary Pre-Trial Scheduling Order to delineate the appropriate scope of the scheduled five day confirmation hearing.

---

[5] Unnecessary experts require unnecessary expert reports and unnecessary discovery. Under the Scheduling Order (I) Amending Certain Deadlines in (A) Discovery and Scheduling Order and (B) Solicitation Order, and (II) Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Extension of Report Deadline, parties are to identify potential experts on July 15, disseminate expert reports on August 4, and conduct expert discovery beginning on August 11. Should the Court permit the Bridge Agent or others to convert confirmation into an LBO trial, there likely will be no less than seven experts reporting and testifying as to Tribune's solvency/insolvency at the time of the LBO. The Settlement Supporters respectfully suggest that this completely unnecessary if not inappropriate exercise (particularly following an extensive Examiner's report) would be a colossal waste of time, money, and resources, better spent on confirming the Plan in accordance with applicable legal standards and permitting Tribune to emerge and to grow its business.

4

## ARGUMENT

5.      In determining whether to approve a proposed settlement, courts in the

Third Circuit consider the *"Martin"* factors:  "(1) the probability of success in litigation;

(2) the likely difficulties in collection; (3) the complexity of the litigation involved, and

the expense, inconvenience and delay necessarily attending it; and (4) the paramount

interest of the creditors."[6]  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir.

1996).  When evaluating a settlement in the context of a plan of reorganization, this Court

has also looked to the *"Texaco"* factors that courts in the Second Circuit routinely apply:

> "(1) The balance between the likelihood of plaintiff's or
> defendant's success should the case go to trial vis a vis the
> concrete present and future benefits held forth by the
> settlement without the expense and delay of a trial and
> subsequent appellate procedures.
>
> (2) The prospect of complex and protracted litigation if the
> settlement is not approved.
>
> (3) The proportion of the class members who do not object
> or who affirmatively support the proposed settlement.
>
> (4) The competency and experience of counsel who support
> the settlement.
>
> (5) The relative benefits to be received by individuals or
> groups within the class.
>
> (6) The nature and breadth of releases to be obtained by the
> directors and officers as a result of a settlement.
>
> (7) The extent to which the settlement is truly the product
> of 'arms-length' bargaining, and not of fraud or collusion."

*In re Exide Techs.*, 303 B.R. 48, 67-68 (Bankr. D. Del. 2003) (Carey, J.) (citing *In re*

*Texaco Inc.*, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988)).

---

[6] The *Martin* factors are similar to the *"TMT"* factors articulated by the U.S. Supreme Court in
*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-5
(1968) (*"TMT Trailers"*).

RLF1 3588292v. 1

6.      It is well settled that in evaluating the *Martin* and *Texaco* factors, a court is "not supposed to have a 'mini-trial' on the merits, but rather examine the settlement and determine whether it falls 'below the lowest point in the range of reasonableness.'" *In re G-1 Holdings Inc.*, 420 B.R. 216, 256 (Bankr. D.N.J. 2009) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (same). This Court has noted on several occasions that "the Court's task is not to 'decide the numerous questions of law and fact raised by [objections] but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Exide* 303 B.R. at 68 (quoting *In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986)); *In re New Century TRS Holdings, Inc.*, 390 B.R. 140, 167 (Bankr. D. Del. 2008) (J. Carey) (same) *rev'd on other grounds* 407 B.R. 576 (D. Del. 2009). Numerous bankruptcy courts from around the country have reached the same conclusion. *See, e.g., In re Adelphia Commc'ns*, 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007) ("the court only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement").

7.      This applicable legal standard makes perfect sense. There would be little reason or incentive to settle a case if the court then required the parties to conduct the same trial on the matter they just settled. *See In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979) ("[A]n exact judicial determination of the values in issue would defeat the purpose of compromising the claim."). Indeed, uncertainty over the outcome of a trial and how a Court will decide the merits is precisely what causes parties

to settle. Trying the case as a predicate to approval of settlement is antithetical to the concept of having a settlement at all.

8.       Should Wells Fargo succeed in getting a full merits trial of the LBO-Related Cause of Action, several of the well established *Texaco* and *Martin* factors would be rendered meaningless. For example, why ask the Court to assess the probability of success of a potential litigation if the Court must conduct a full merits trial anyway? Or why should the Court assess and weigh the complexity, cost, expense and delay of a litigation absent approval of a settlement if those costs, expenses and delays will be realized in any event? This Court literally would need to ignore *TMT Trailers*, *Martin*, *Texaco*, and its own precedent (*Exide*) to permit Wells Fargo (or any other opposing party) a merits trial on some or all of the settled issues.

9.       With regard to the specific evidentiary record necessary for approval of a settlement, courts in the Third Circuit have approved a settlement based on factual findings taken "(a) from the proposed findings of fact and conclusions of law of the banks, the Creditors' Committee and the Equity Committee, (b) from a review of the written discovery, documents, depositions of proposed witnesses and similar discovery materials, (c) from the representation of attorneys who investigated the facts, and (d) from argument of attorneys concerning those legal issues." *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 310 (Bankr. W.D. Pa. 1990). Neither expert testimony nor extensive fact testimony on the merits of some or all of the settled claims is required.

10.       The *Lyondell* bankruptcy case illustrates the proper application of the *Texaco* and *Martin* factors when evaluating a settlement. There, U.S. Bankruptcy Judge Robert Gerber stated that his review of a proposed settlement would be limited to the

7

briefing submitted by the parties, the existing record at the time of the settlement, and

that cross examination of underlying merits witnesses would not be required: "I don't

think now, and I'm not sure I'll ever think that I need cross-examination on the merits of

your respective direct testimony presentations to evaluate the propriety of the settlement.

And that cross, that cross examination, together with experts testifying live as to matters

they're presumably going to have already said in major part in their expert reports, is by

far the largest piece of the trial that we'd otherwise be having." (Dec. 4, 2009 Hearing

Tr. at 105-06.)    Notably, at the time Judge Gerber made these statements, the settlement

at issue in *Lyondell* was opposed by the Official Committee of Unsecured Creditors,

which had been granted *STN* standing to prosecute the estate's claims.  Here, unlike

*Lyondell*, the Global Settlement's much further and deeper support consists of a broad

cross-section of major stakeholders, including the Official Creditors' Committee, the lead

Bank Agent, scores of bank claims holders, and the largest public bondholder (and its

Indenture Trustee).

      11.    Finally, where, as here, a court-appointed examiner has conducted a

thorough investigation of potential estate causes of action and will issue a report

cataloguing the results of that investigation, there can be no "straight-faced" argument

that the Court will not have the record with which to adequately assess the Global

Settlement.[7]  In such situations, courts have routinely considered the examiner's findings

in assessing a proposed settlement.  *See, e.g.*, *In re Mirant Corp.*, 348 B.R. 725, 744

---

[7] For these purposes the Settlement Supporters simply note the prospective issuance and directed contents of the examiner's report.  However, by doing so or otherwise they do not intend to imply that, at this time, they either accept or reject the contents of the report, and each reserves its right to disagree with the examiner's yet to-be-released conclusions.

(Bankr. N.D. Tex. 2006) ("All the evidence before the court, the court's extensive experience with the parties and the assurance to such effect of the Examiner support the court's finding that the Settlement is a product of arms-length bargaining"); *In re FiberMark, Inc.*, No. 04-10463, 2005 Bankr. LEXIS 2472, at *11-12 (Bankr. D. Vt. Dec. 2, 2005) ("The issues raised by the Examiner's Report are hotly disputed, and no court has accepted or adopted the findings, conclusions or recommendations of the Examiner's Report. Any attempt to implement the findings, conclusions and recommendations of the Examiner's Report would likely involve litigation that is highly contested, time-consuming and costly. The issues raised by the Examiner's Report (and all other Constituency Causes of Action and Litigation Rights against AIGGIC and Post) are resolved in their entirety by the Constituency Settlement . . . .").

12.     Here, the bases for the Court's application of the binding settlement standards rather than litigation of some or all of the issues settled could hardly be stronger. An extensive investigation has been conducted by two independent parties— the Creditors' Committee and the Examiner. Millions of pages of documents have been produced; numerous depositions will have been taken prior to the confirmation hearing; and an anticipated multi-hundred page examiner report, which will be the product of extensive and numerous interviews and hundreds of pages of briefing, will also be before the Court. The Examiner has projected that the costs of his investigation may exceed $8 million—an intensive review that itself surpasses the mere "canvassing" of the issues that is required for this Court to determine whether the settlement is the sound exercise of the Debtors' business judgment and is above the lowest point in the range of reasonableness. With this extensive record, there is simply no basis to litigate the merits of any of the

9

issues relating to the LBO-Related Causes of Action. The only litigable issue is approval or disapproval of the Global Settlement under the *Martin* factors. In this regard, testimony as to whether the Global Settlement is reasonable given the range of possible outcomes is appropriate, but testimony seeking to pinpoint an outcome on merits-related issues, like, for example, whether Tribune was solvent at a particular point in time, is not. Fact testimony on the identification of potential claims and the business bases for settling them is appropriate, but fact testimony seeking determinations on individual merits issues is not.

13.    The focus of the confirmation hearing should instead be on whether the "Debtors' business judgment in deciding whether to settle a matter" falls below the range of reasonableness. *In re Key3Media Group,* 336 B.R. at 93.

14.    The Court has set aside five days for the confirmation hearing. This is certainly adequate for the task at hand. The Settlement Supporters respectfully suggest that, prior to the wasteful expenditure of millions of dollars on unnecessary expert reporting and discovery, it is essential that the Court now properly limit the scope of the confirmation hearing to the issues that the Court genuinely must decide, including specifying the nature of the testimony the Court will allow.

15.    Absent defining these parameters now, Wells Fargo (and most likely others) will seek to try the LBO-Related Causes of Action, which, by definition, will result in a trial lasting several weeks, extending over a period of several months. This not only unfairly and unreasonably taxes the Court, but also seriously prejudices the Debtors and their creditors. *Not having a trial* was a central factor in the decision to settle the

claims in the first instance and is likewise a central factor for the Court to consider in
determining whether the settlement should be approved.

16.    Also, there is simply no need for this Court to adjudicate any potential
LBO-Related Causes of Action against the Bridge Lenders at this time. As Wells Fargo
admits, the Debtors *may* move to disallow (or commence adversary proceedings) in
respect of certain of the Bridge Loan claims *if* the Plan is confirmed and *if* the Bridge
Lenders vote to reject the Plan and *if*, in so voting, any Bridge Lenders opt out of the
Global Settlement. Should the Bridge Lenders opt to support the Plan or should the
Bridge Lenders reject the Plan but choose to opt-in to the Global Settlement, litigation of
the claims would be entirely avoided.[8] To ask this Court to adjudicate a claim that may
not even be brought based on a series of events that may not occur is ludicrous and would
result in the very waste of judicial resources that Wells Fargo argues should be guarded
against.

## THE SCOPE OF THE HEARING

17.    The Parties are in the process of preparing for the Plan's confirmation
hearing. At this time, all indications are that certain Parties will contest confirmation. As
such, and as Wells Fargo's motion ably demonstrates, it is reasonable to assume that

---

[8] Wells Fargo's claims of prejudice fall flat. Wells Fargo repeatedly contends that the Plan
unfairly prejudices the Bridge Lenders because, unlike the treatment afforded the Senior Lenders, should
the Bridge Lenders vote to reject the Plan, the Bridge Loan Claims will be deemed disallowed. (*See* the
Motion ¶ 8.) That is a complete (and knowing) misrepresentation. In reality, the Bridge Lenders are
afforded the option of opting into the Global Settlement and having their claims allowed *even if* they vote
against the Plan. (*See* Plan §3.2.4.) And if they refuse to participate in the settlement, their claims become
disputed, not disallowed. They retain their right to have their claims addressed on the merits in a future
adversary proceeding, whether before or after the effective date of the plan. To suggest that this choice to
settle or preserve the dispute somehow prejudices the Bridge Lenders is disingenuous at best.

RLF1 3588292v. 1

these Parties would like to expand rather than to focus the scope of the confirmation hearing.

18.    The Settlement Supporters recognize that the Pre-Trial Order that they will provide to the Court a few days prior to the confirmation hearing will detail with particularity the documents, the exhibits, the affidavits, the witnesses, the allocation of trial time within the five days allotted, the facts and law in dispute, and the other matters that this Court's procedures require.  However, at this critical juncture, to avoid unnecessary expenditure of massive resources, the Court should focus the Parties on the issues that the Court will try.  The Settlement Supporters accordingly respectfully suggest that it is essential, now, to set forth the confines of the hearing.

19.    In this regard, the Settlement Supporters suggest that the Court need consider fact documents, testimony, and argument only on the several confirmation standards and the applicable standards for approving the settlement embodied in the plan, which requires consideration of the exercise of the Debtor's business judgment in entering into the Global Settlement.  Nothing else.  In this further regard, the Settlement Supporters suggest that the Court need consider expert testimony and argument only on whether the Global Settlement is above the lowest point in the range of reasonableness. The Court need not hear seven or more experts to try to reach a conclusion on issues like Tribune's solvency or insolvency.  These issues and such testimony are simply beyond the matters at issue for confirmation, even though Wells Fargo and other plan objectors wish otherwise.

20.     Accordingly, to give guidance to the pre-confirmation process and to

focus the confirmation hearing, the Settlement Supporters join the Debtors' cross-motion

and respectfully request that the Court enter the Preliminary Pre-Trial Scheduling Order.

### CONCLUSION

21.     For the reasons set forth above, the Settlement Supporters respectfully

request that the Court deny the Motion and enter the Preliminary Pre-Trial Scheduling

Order.

Dated: July 7, 2010                       Respectfully submitted,
        Wilmington, Delaware

                                          Mark D. Collins (Bar No. 2981)
                                          Robert J. Stearn, Jr. (Bar No. 2915)
                                          Drew G. Sloan (Bar No. 5069)
                                          RICHARDS, LAYTON & FINGER, P.A.
                                          One Rodney Square
                                          920 N. King Street
                                          Wilmington, Delaware 19801
                                          Telephone (302) 651-7700
                                          Facsimile (302) 651 7701

                                          -and-

                                          Dennis E. Glazer
                                          Sharon Katz
                                          Elliot Moskowitz
                                          Michael Russano
                                          DAVIS POLK & WARDWELL LLP
                                          450 Lexington Avenue
                                          New York, New York 10017
                                          (212) 450-4500

                                          *Attorneys for JPMorgan Chase Bank, N.A. and*
                                          *JPMorgan Securities, Inc.*

13

_____
Mark D. Collins (Bar No. 2981)
Drew G. Sloan (Bar No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone (302) 651-7700
Facsimile (302) 651 7701

-and-

Andrew N. Goldman
WILMER CUTLER PICKERING HALE &
DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

*Attorneys for Angelo Gordon & Co. LP*


    */s/ Garvan F. McDaniel*
_____
Garvan F. McDaniel (Bar No. 4167)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
(302) 429-1900
(302) 429-8600 (fax)
gmcdaniel@bglawde.com

-and-

David S. Rosner
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1726

*Attorneys for Law Debenture Trust Company of
New York*

14

RLF1 3588292v. 1

_/s/ Timothy P. Cairns_____
Timothy P. Cairns
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street
17th Floor
Wilmington, DE 19899-8705
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)
tcairns@pszjlaw.com

-and-

Daniel H. Golden
Philip C. Dublin
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com
pdublin@akingump.com

*Attorneys for Centerbridge Credit Advisors LLC*

15