# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket Nos. 4725 and 4726**<br>**Hearing Date: July 14, 2010 at 1:30 p.m. EDT** |

## DEBTORS' OBJECTION TO THE MOTION OF IVAN J. BATES
## FOR RELIEF FROM THE AUTOMATIC STAY

The Baltimore Sun Company (the "Sun") and each of its affiliates that are debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), hereby file this objection (the "Objection") to the Motion of Ivan J. Bates ("Bates") for Relief from the Automatic Stay filed on June 8, 2010 [Docket No. 4725, amended notice at Docket No. 4726] (the "Motion"), which Motion seeks to permit Bates to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CH1 5366520v.3
46429/0001-6861516v1

proceed with a defamation lawsuit (the "Lawsuit") against the Sun in the Circuit Court for Baltimore City, Maryland (the "Circuit Court") and to recover damages in the amount of $13 million against the Debtors on account of such Lawsuit. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Motion should be denied. At its core, the Motion is a disguised attempt to ratify Bates's filing of the Lawsuit in violation of the automatic stay, despite his actual knowledge of the stay's applicability prior to such filing. The Motion should further be denied because Bates has not filed a proof of claim on account of his purported claim and, indeed, failed to do so despite receiving actual notice of the bar date. Bates has made no attempt to justify or explain these actions, and his Motion must be denied.

2.  The automatic stay and the bar date are substantive protections for the Debtors designed to channel claims through the Bankruptcy Court so that the Debtors will know with certainty the scope and amount of claims asserted against them that must be resolved as part of the Debtors' reorganization. In this instance, the Debtors have complied in all respects with their obligations under the Bankruptcy Code and Bankruptcy Rules and have provided Bates with multiple opportunities to properly assert or pursue his claim, which Bates has consistently ignored. The Motion makes no attempt whatsoever to explain Bates's disregard of the automatic stay and failure to abide by the bar date, despite the facts that Bates is a practicing attorney and has retained multiple sets of counsel (including bankruptcy counsel) to represent him. Granting Bates's Motion would seriously prejudice the Debtors because it would render the bar date for filing claims essentially meaningless, as creditors will be able to assert claims against the Debtors freely, notwithstanding knowledge of and failure to comply with the bar date, and without any need to explain such failure. Moreover, the automatic stay would be reduced to a

2

formality, with creditors able to obtain relief from the stay even where they have acted in open defiance of it. Such an outcome would work a serious and substantial prejudice on the Debtors as they attempt to manage their estates. Such prejudice provides further independent reasons to deny the Motion.

## ARGUMENT

### A.  The Lawsuit was Filed in Knowing Violation of the Automatic Stay and is Void as a Matter of Law

3.  Bates's filing of the Lawsuit unquestionably violated the automatic stay, as the Lawsuit was filed more than eight months after the Petition Date.[2] In Bates's case, such stay violation is particularly egregious because it was knowing and willful. Specifically, the Sun received a pre-suit demand letter from counsel for Bates dated July 30, 2009. In a response letter dated August 4, 2009, counsel for the Sun gave Bates actual notice of the Sun's pending chapter 11 bankruptcy and the applicability of the automatic stay (the "Response Letter", a copy of which is attached hereto as Exhibit A).[3] The Response Letter made the existence and applicability of the automatic stay crystal clear; specifically, counsel for the Sun stated in the Response Letter that "[o]ne key effect of the chapter 11 filings is to stay all pending litigation against the Debtors, as well as all other actions to collect claims against the Debtors from prior to the Petition Date. Accordingly, the filing and service of the Complaint in this matter would violate section 362 of the Bankruptcy Code." See Exhibit A at 1-2.[4] After the Response Letter,

---

[2] The Lawsuit is unquestionably subject to the automatic stay, given that the articles published by the Sun that allegedly gave rise to the defamation causes of action asserted in the Lawsuit were each published in August 2008.

[3] Bates's pre-suit demand letter is not attached hereto as an Exhibit. The Debtors would be happy to provide the Court with a copy of such letter to the Court.

[4] The commencement of the Debtors' chapter 11 cases was also widely publicized at the time of filing, including in the Baltimore Sun newspaper. See, e.g., Lorraine Mirabella, Tricia Bishop, and Andrea K. Walker, Sun's Parent Files for Protection from Creditors, Balt. Sun, Dec. 9, 2008, at A.1.

3

it is impossible that Bates was not on full notice of the stay and, as an attorney represented by counsel, it is impossible that Bates did not fully appreciate the import of the stay.

4.  In apparent response, Bates—a practicing attorney represented by counsel—chose to file the Lawsuit on August 7, 2009 against the Sun and two reporters.[5] Bates's filing of the Lawsuit just three (3) days after the date of the Response Letter can be interpreted as nothing other than an intentional decision by Bates and his counsel to violate the stay and to pursue his claims in disregard of this Court's jurisdiction.[6]

5.  The automatic stay imposed by section 362(a) of the Bankruptcy Code prohibits "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a). The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." St. Croix Condominium Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir. 1982).

6.  The Third Circuit has repeatedly held that actions taken in violation of the stay are void, whether or not the party taking such action is aware of the commencement of the bankruptcy case. See, e.g., In re Myers, 491 F.3d 120, 127 (3d Cir. 2007); In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994); Raymark Indus., Inc. v. Lai, 973 F.2d 1125, 1131 (3d Cir. 1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991). "Holding that

---

[5] On August 21, 2009, after being served with the Lawsuit, the Sun's defense counsel filed a Notice of Filing of Voluntary Petition under Chapter 11 of the Bankruptcy Code with the Circuit Court. (See Exhibit C to Mot. at 2.) The Circuit Court promptly issued an order staying the Lawsuit as to the Sun and "deferred [the proceedings] to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code." (Id.)

[6] The Motion asserts that "[a]t the time of the Petition Date, the parties in the Maryland Action were proceeding with motion practice." (Mot. ¶ 19.) This statement is not true. The Lawsuit was not commenced until August 7, 2009, nearly eight (8) months after the Petition Date. (See Mot. ¶ 3; Exhibit A to Mot. at 1.)

4

judicial acts and proceedings in violation of the automatic stay are void ab initio is consistent with the stay's function of enabling the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." Maritime Elec., 959 F.2d at 1207 (citing Hunt v. Bankers Trust Co., 799 F.2d 1060, 1069 (5th Cir. 1986) and In re Holtkamp, 669 F.2d 505 (7th Cir. 1982)) (internal quotations omitted).

      7.    Case law makes clear that the Lawsuit is void as a matter of law and, accordingly, Bates's effort to lift the stay to allow a void lawsuit to proceed should fail. Even assuming for purposes of argument that the Lawsuit may be rehabilitated, under these circumstances the deliberate character of Bates's stay violation in filing the Lawsuit notwithstanding actual knowledge of the stay should cause the Court to rule that Bates may not prosecute the Lawsuit as to the Sun. The Motion addresses none of these issues, but remarkably ignores the stay violation altogether and instead asks this Court in effect to reward Bates's disregard of the stay and ratify the filing of the Lawsuit. Such a result is consistent neither with the prevailing law nor justified by the facts of this case. The Motion should be denied.

    **B.**    **Bates Disregarded the Bar Date for Filing a Timely Proof of Claim and is Now Barred from Asserting a Claim Against the Sun**

      8.    Bates's Motion must additionally fail because he has filed no proof of claim on account of the causes of action at issue in the Lawsuit, and because Bates has no allowed claim against any of the Debtors that is to be liquidated via the Lawsuit. Bates has failed to file a proof of claim against the Sun despite the Debtors' provision to Bates of actual notice of the bar date established by this Court. Prior to receiving Bates's demand letter in July

5

2009, the Debtors were not aware of Bates's existence as a potential creditor. In the Response Letter, the Debtors directed Bates to the chapter 11 case docket and also advised Bates of the bar date for filing proofs of claim. See Exhibit A at 1-2. Thereafter, in the Debtors' next amendment to their schedules of assets and liabilities (collectively, the "Third Amended Schedules"), Bates was listed in the Debtors' creditor matrix and his claim was scheduled by the Sun as a contingent, unliquidated, and disputed claim. See Third Amended Schedules of Assets and Liabilities For The Baltimore Sun Company filed on March 2, 2010 [Docket No. 3576 at 215].

9. Bates was thereafter required to file a proof of claim on account of whatever claims he believed he possessed against the Debtors. This Court's Bar Date Order [Docket No. 813] provides that any claimant holding a claim affected by an amendment or supplement to the Schedules (as defined therein) has thirty (30) days from the service of a notice of the amendment or supplement to the Schedules to file a proof of claim or amend a previously filed proof of claim in respect of the amended scheduled claim. (See Bar Date Order at 2-3). Immediately after filing the Third Amended Schedules, the Debtor prepared a notice to all affected creditors (the "Amended Schedules Bar Date Notice") [Docket No. 3653], informing them of the necessity of filing a proof of claim in the event such creditors' claims were scheduled by the Debtors as "contingent," "unliquidated," or "disputed," or if such creditors disagreed with the amount of the claim scheduled by the Debtors. The Debtors' official claims and noticing agent, Epiq Bankruptcy Solutions, LLC, served the Amended Schedules Bar Date Notice, together with a customized proof of claim form, on all creditors affected by the Third

Amended Schedules on March 5, 2010, including Bates. (See Affidavit of Mailing, Docket No. 3844.)[7] Accordingly, the bar date applicable to Bates was April 5, 2010.

10. Despite the Amended Schedules Bar Date Notice, Bates filed no proof of claim in the Debtors' chapter 11 cases. This Court's Bar Date Order provides that "any person or entity that is required to file a timely Proof of Claim in the form and manner specified by this Order and who fails to do so on or before the date associated with such claim shall not be treated as a creditor in these chapter 11 proceedings and therefore, shall not be permitted to (i) vote on any plan of reorganization or plan of liquidation or (ii) receive any distribution under any confirmed plan." (See Bar Date Order at 7-8.) Thus, pursuant to the Bar Date Order, Bates is affirmatively barred from obtaining any recovery from the Sun on account of the Lawsuit under the Debtors' plan of reorganization.

11. Just as the Motion does not explain or seek to remedy Bates's decision to violate the automatic stay, it likewise offers no basis for Bates's failure to comply with this Court's Bar Date Order. Instead, again like Bates's violation of the automatic stay, the Motion ignores the issue altogether and requests "relief from the automatic stay to … seek damages against the Debtors" with disregard for the Bar Date Order and the Debtors' claims process. (See Mot. at 7.) Notwithstanding Bates's omission of the issue from the Motion, however, the fact remains that Bates has no allowed claim against any of the Debtors, and accordingly relief from the stay to pursue the Lawsuit should be denied.[8]

---

[7] Confirmation that Bates was served with the Amended Schedules Bar Date Notice appears at pages 8-9 of 33 of the Affidavit of Mailing.

[8] As this Court is well aware, a proof of claim may be filed untimely only upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b) (setting the "excusable neglect" standard); Pioneer Inv. Servs. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993) (holding that determination of "excusable neglect" is, at bottom, an equitable one, taking account of all relevant circumstances surrounding the party's omission, including the danger of prejudice to the debtor, the reason for the delay, and whether the party acted in good faith). Here, Bates has made no showing of any kind as to why he failed to comply with the bar date; however, Bates's decision to violate the stay in filing the Lawsuit and his further decision not to mention the stay

CH1 5366520v.3
46429/0001-6861516v1

C. **No "Cause" Exists to Lift the Stay**

12.     Because the Lawsuit is void as a matter of law, and further because Bates has neither filed a timely proof of claim in these cases nor offered any justification as to why his failure to comply with the bar date should be excused (and because he has no allowed claim against any of the Debtors), no "cause" exists to lift the stay and the Motion should accordingly be denied. Even if the Court were to look beyond these dispositive flaws in the Motion, however, the prejudice to the Debtors from allowing a void lawsuit on account of which no proof of claim has been filed to proceed outweighs the prejudice to Bates from denying the Motion.

13.     Section 362(d) of the Bankruptcy Code requires a party seeking relief from the automatic stay to demonstrate "cause."[9] The party seeking relief from the automatic stay has the initial burden to establish its prima facie case in support of relief, which can then be rebutted by the party opposing such relief. See, e.g., In re RNI Wind Down Corp., 348 B.R. 286, 299 (Bankr. D. Del. 2006); Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 577 (Bankr. D. Del. 1992). In determining whether a litigation claimant has demonstrated sufficient cause to lift the automatic stay, courts routinely consider (i) whether allowing the litigation to continue in another forum will result in any great prejudice to the Debtors or the Debtors' estates; (ii) whether maintaining the stay will cause any hardship to the claimant and whether this hardship is greater than the resulting hardship to the Debtors; and (iii) the

---

violation in the Motion call into question whether he is proceeding in good faith respecting other aspects of his purported claims.

[9] Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> 1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

probability of the claimant prevailing on the merits of the lawsuit. See, e.g., Rexene, 141 B.R. at 576; In re The SCO Group, Inc., 395 B.R. 852, 857 (Bankr. D. Del. 2007). None of the considerations weighing in favor of stay relief in Rexene or SCO Group is present here.

    **(i)    Significant Prejudice to the Debtors, their Estates, and Creditors Will Result if the Stay is Lifted to Permit the Lawsuit to Continue**

    14.    The Debtors are approaching emergence from chapter 11, with the hearing on confirmation of the Debtors' plan of reorganization scheduled for August 30, 2010. As part of the confirmation process, the Debtors must certify that the allowed general unsecured claims against the subsidiary Debtors will not exceed $150 million in the aggregate. (See Plan at § 3.3.5(c)). This certification is necessary to inform the subsidiary Debtors' general unsecured creditors of the distribution they may expect to receive under the Debtors' confirmed plan. (See id.) An accurate certification will be difficult, if not impossible, to make if creditors who have ignored the automatic stay and applicable bar date are nonetheless permitted to assert claims with impunity. Such an outcome is particularly prejudicial to the Debtors and to their other creditors in these circumstances, where the Debtors have given Bates actual notice of the automatic stay and claims bar date on multiple separate occasions, providing him with a full and fair opportunity to participate as a creditor in these chapter 11 cases, but where Bates has responded by defying the stay and ignoring the bar date. At this late stage of the Debtors' chapter 11 cases, allowing Bates to proceed with a substantial Lawsuit against the Sun, notwithstanding that the Lawsuit is void and the claim is facially time-barred, would significantly prejudice the confirmation process and the legitimate expectations of the subsidiary Debtors' other general unsecured creditors.

    15.    Allowing the Lawsuit to proceed would also impose significant nearer-term financial obligations on the Debtors. The Debtors will be forced to incur defense costs

9

respecting the Lawsuit that are substantial and are generally not covered by insurance. Moreover the Debtors have a $1 million self-insured retention obligation related to any judgment or settlement amount. The Debtors' concerns regarding estate preservation, as expressed in their prior objections to motions for relief from the stay,[10] are heightened in this instance where Bates has failed to timely file a proof of claim and is not considered a creditor for the purposes of these chapter 11 cases.

### (ii) The Balance of Hardship Favors the Debtors and Maintaining the Automatic Stay

16. In making a showing of "cause," Bates must demonstrate "that the balance of hardships from not obtaining relief tips *significantly* in [his] favor." In re RNI Wind Down Corp., 348 B.R. at 299 (quoting Atl. Marine, Inc. v. Am. Classic Voyages Co. (In re Am. ClassicVoyages Co.), 298 B.R. 222, 225 (D. Del. 2003)) (emphasis added, internal quotation marks omitted). Bates has failed to meet this standard. The only hardships alleged by Bates are that his professional reputation has been harmed by the alleged defamation (Mot. ¶ 20) and that he has incurred considerable legal expense to prosecute the Lawsuit (Mot. ¶ 21).

17. As to the first point, Bates's professional reputation was called into question not by the Sun, but by the underlying allegations made in Maryland state court proceedings regarding his conduct in the representation of his former client, which allegations were merely reported by the Sun. It is also worth noting that Bates waited nearly a year from when the first of the two allegedly defamatory articles were published to file the Lawsuit, which

---

[10] See, e.g., Debtors' Objection to the Motion of Allen Francisco for Relief From Stay Under Section 362 of the Bankruptcy Code (the "Francisco Objection") [Docket No. 465]; Debtors' Objection to the Motion for Relief from Automatic Stay with Respect to E. Michael Gutman, M.D., Mike Gutman, M.D. (MPAC), P.A., and Gutman Pain/Accident Center, Inc. (the "Gutman Objection") [Docket No. 1079]; Debtors' Objection to the Motion of Schur Packaging Systems, Inc. for Relief from the Automatic Stay (the "Schur Objection") [Docket No. 1220]; and Debtors' Objection to the Motion of Jayne Clement for Relief from the Automatic Stay (the "Clement Objection") [Docket No. 1586].

undermines Bates's assertion of urgency, as does the fact that Bates elected not to file a proof of claim once informed of the need to do so.

18.     As to the second point, Bates has chosen, for reasons disclosed neither to the Court nor the Debtors, to proceed with the Lawsuit despite actual knowledge of the stay and his refusal to comply with it, and actual knowledge that he was required to file a proof of claim in the Debtors' chapter 11 cases and chose not to do so. Bates cannot now in good faith argue that because he has incurred costs in proceeding with the Lawsuit rather than abiding by the stay, he must be granted relief from the stay, as then any creditor could manufacture its own basis for relief from the stay perversely by pursuing an action in violation of the stay, then citing the costs incurred in doing so. Such a result is not proper under the Bankruptcy Code, and should not be ordered by this Court.

19.     Moreover, the circumstances of the Lawsuit are in direct contrast to those in Rexene, where discovery was "nearly complete" and the district court had already certified the class and denied the debtor-defendant's motion for summary judgment prior to the bankruptcy filing, 141 B.R. at 577, and in SCO Group, where the parties were on the eve of trial as of the bankruptcy filing and the district court had made substantial findings on the parties' cross motions for summary judgment, 395 B.R. at 855-57. Here, the Lawsuit was stayed against the Sun by the Circuit Court at its inception, and the Sun has not participated in the proceedings to date. The Circuit Court has ruled on only one (1) dispositive motion thus far in the proceedings, and the Sun anticipates substantial defense costs would be incurred if the Lawsuit were permitted to go forward against the Sun. Therefore, the Debtors' interests in maintaining the protections of the automatic stay far outweigh Bates's interests in liquidating his claim at this time, particularly where no timely proof of claim has been filed.

CH1 5366520v.3
46429/0001-6861516v1

### (iii) Bates has Failed to Demonstrate a Likelihood of Success on the Merits of the Lawsuit

20. Finally, Bates has failed to argue, much less establish, that there is any likelihood of success on the merits of the Lawsuit.[11] Even absent all of the other shortcomings of Bates's arguments, the Debtors believe they have strong defenses to each of the causes of action raised in the Lawsuit. Indeed, the Circuit Court has already dismissed Bates's count of intentional infliction of emotional distress, which Bates does not disclose in the Motion.[12]

21. Because the articles refer to a well-known citizen about a matter of public concern, Bates must satisfy the substantial constitutional burdens of demonstrating by clear and convincing evidence that the article was false and that the newspaper knew it was false when it was published. New York Times Co. v. Sullivan, 376 U.S. 254 (1964); Philadelphia Newspapers Inc. v. Hepps, 475 U.S. 767 (1986). For various reasons, including, among other things, the accuracy of the facts published in the articles, the privilege applicable to fair and accurate reports of judicial proceedings, and/or the defense of "substantial truth" applicable to such facts, the Debtors believe that Bates simply cannot meet these burdens.

### CONCLUSION

22. The Debtors have complied fully with the Bankruptcy Code, Bankruptcy Rules, and applicable orders of this Court in informing Bates of the existence and applicability of the automatic stay and of the Court-mandated procedure for asserting a claim in these chapter 11 cases. In response, Bates ignored the stay and elected to proceed with the Lawsuit, and failed to comply with the Court-ordered bar date. Allowing the Lawsuit to proceed on those facts risks

---

[11] The Debtors hereby reserve the right to argue in rebuttal any assertion by Bates that he is likely to prevail on the merits of the Lawsuit. However, since Bates has not attempted to carry, much less met, his prima facie burden with respect to this prong of Rexene, the burden has not shifted to the Debtors.

[12] The co-defendant reporters filed a Motion to Dismiss or in the Alternative for Summary Judgment on February 1, 2010, which was granted in part and denied in part as to all defendants. (See Exhibit C to Mot. at 4-5.)

permitting any creditor, on any facts, to pursue untimely claims against the Debtors notwithstanding that creditor's compliance with bankruptcy law or the bar date. The ensuing inability of the Debtors to know with any reliability the scope and amount of claims that may be asserted against their estates would be a real and substantial prejudice. In contrast, any hardship to Bates from denial of the Motion would be directly attributable to Bates's own actions in this matter – i.e., his violation of the automatic stay and failure to file a proof of claim. The law and facts provide that the Motion should be denied.

Dated: Wilmington, Delaware
July 7, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
Kenneth P. Kansa
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

CH1 5366520v.3
46429/0001-6861516v1