**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------X
| In re: | : | **Chapter 11 Cases** |
| | : | **Case No. 08-13141 (KJC)** |
| **TRIBUNE COMPANY, et al.,** | : | **(Jointly Administered)** |
| | : | |
| Debtors. | : | **Hearing Date and Time:  July 14, 2010** |
| | : | |
| | : | |
-----------------------------------------------------X    **Related to Docket No.  4943, 4949**

**WILMINGTON TRUST COMPANY'S
OBJECTION TO THE CROSS-MOTION OF THE
DEBTORS FOR ENTRY OF A PRELIMINARY PRETRIAL
SCHEDULING ORDER FOR THE PLAN CONFIRMATION HEARING**

Wilmington Trust Company ("Wilmington Trust"), Successor Indenture Trustee for the

Exchangeable Subordinated Debentures due 2029 in the aggregate principal amount of $1.2

billion (generally referred to as the "PHONES") issued in April 1999 by Tribune Company

("Tribune" and, together with its Chapter 11 affiliates, the "Debtors" or the "Company"), by and

through its undersigned counsel, hereby respectfully submits this Objection to the *Debtors' (I)*

*Opposition to the Motion of Bridge Agent For Entry of Orders (A) Establishing Procedures for*

*Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan*

*Confirmation Proceedings and (B) Allowing Such Claims in Full and (II) Cross Motion for Entry*

*of Preliminary Pre-Trial Scheduling Order for the Plan Confirmation Hearing* (the "Cross-

Motion" and the proposed order annexed thereto the "Proposed Scheduling Order").[1]  In support

thereof, Wilmington Trust respectfully states as follows:

---

[1] Capitalized terms not defined herein shall have the meanings ascribed thereto in the Cross-Motion.

## PRELIMINARY STATEMENT

1.      The Cross-Motion and Proposed Scheduling Order are so patently un-Constitutional, so inconsistent with the law and general Delaware Court procedure, and so offensive to fundamental notions of fair case adjudication as to warrant rejection out-of-hand.[2] Wilmington Trust is hard pressed to understand why even *the Debtors* would think the Proposed Scheduling Order is a good idea: while subverting the opposition's ability to present its case may facially seem like good litigation strategy to the Debtors, that is not so if the trial process is so obscenely one-sided as to virtually assure reversal of any confirmation order on due process grounds, among other overarching legal principles.

2.      The Proposed Scheduling Order proposes that all Plan opponents have a shared half-day for opening and closing remarks, two trial days to cross-examine witnesses and present their case, and are limited to introducing evidence only bearing on the reasonableness of the Plan settlement.  Has Debtors' counsel forgotten what case this is?  This is not some small retailer or family-owned tool and die bankruptcy where the dispute is over the proper appraisal of a piece of collateral machinery.  This is the now infamous $13 billion failure of the 110-odd Debtors that chiefly comprise the Tribune media conglomerate, which failure was the result of the Zell-orchestrated leveraged-buyout 11 months before the bankruptcy filings.  It is one of the largest, most important, and most observed Chapter 11 cases of all time.  Indeed, the soon-to-be-

---

[2]      JPMorgan Chase Bank, N.A. ("JPMorgan"), Angelo Gordon & Co., LP, Law Debenture Trust Company of New York, and Centerbridge Credit Advisors, LLC have filed a joinder to the Debtors' Cross-Motion (the "Settlement Party Joinder") [Docket No. 4949].  For the same reasons detailed herein, the Settlement Party Joinder should be disregarded.  Wilmington Trust is, however, troubled by the Joinder's repeated mention of "numerous unnecessary expert witnesses," see Settlement Party Joinder ¶4, as the ability to present necessary expert testimony goes to the heart of due process and is highly beneficial to the Court's fact-finding ability.  Any attempt to limit expert testimony is grossly premature.

published Examiner's Report, exploring potential fraudulent conveyance and other complex theories of estate action against insiders and the other proposed recipients of value and releases, will assuredly be a widely-read and studied document. In the context of this case, the Proposed Scheduling Order is strikingly disingenuous.

3.     The only legal authority offered in support of this remarkable proposal are cases stating that adjudication of a Rule 9019 settlement does not obligate the Court to conduct a full-blown trial on the merits, should the circumstances warrant a more truncated procedure. This principle (as limited as it is) does not trump much more fundamental law. See, e.g., U.S. Const. amend. V ("No person shall be … deprived of … property, without due process of law"); Morgan v. U.S., 304 U.S. 1, 18 (1938) ("The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one"); City of New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297 (1953) ("a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights."); In re Avery, 134 B.R. 447, 448 (Bankr. N.D. Ga. 1991) ("fundamental due process mandates that a creditor be given notice and opportunity to participate" in objecting to a plan); In re Greenburgh, 151 B.R. 709, 715 (Bankr. E.D. Pa. 1993) ("creditors have a right to adequate notice and the opportunity to participate in hearings/meetings in the course of a bankruptcy case, e.g., … the confirmation hearing … before disallowance or discharge of their claims.").

4.     To be sure, the law does not enable the Debtors to float gently out of bankruptcy in the face of known and substantial Plan objections, as if no serious controversy has been raised. They have to prove their case – all of it – including each and every element of Section 1129(a)

and (b). <u>See</u> <u>In re Armstrong World Indus.</u>, 348 B.R. 111, 120 & n. 15 (D. Del 2006).  Parties

have the legal entitlement to contest the Debtors' case – any part of it – with sufficient time for

argument and admission of evidence.  If, for example, parties wish to contest either the standard

for reviewing the proposed settlement (<u>e.g.</u>, heightened scrutiny warranted by evidence of

substantial insider liability to be released by the Plan for no value) or the merits of the settlement

itself (<u>e.g.</u>, delivery of substantial estate value to those without legally sustainable claims or that

net owe the estates a substantially greater sum), the Plan objectors are legally entitled to (i) have

sufficient Courtroom time to present their argument, (ii) have relevant evidence, including expert

testimony, admitted into the record, and (iii) have such argument and evidence considered at trial

and, if necessary, on appeal.  If the Debtors do not wish to introduce responsive evidence, that is

their choice; but, their selected litigation strategy does not overwhelm the objectors' right to a

fair and impartial adjudication.[3]   And, if that means a lengthy confirmation trial (because the

Debtors have opted to advance a highly contentious Plan), then that is the necessary consequence

of the chosen path to exit.

     5.     Independent of all of this, the Cross-Motion also strangely fails to propose any

procedure for adjudicating Wilmington Trust's 66-page proposed *Amended Complaint for*

*Equitable Subordination and Disallowance of Claims, Damages, and Constructive Trust* (the

"<u>Amended Complaint</u>"),[4] Adversary Proceeding Number 10-50732, currently pending against

---

[3]     In fact, Wilmington Trust has long told the Court and other parties-in-interest that it intends to fully litigate these points at trial.

[4]     Wilmington Trust has not yet formally amended its complaint, but the Amended Complaint was filed in draft form annexed to its *Objection to Motion of the Debtors for an Order (I) Determining that Wilmington Trust Company Has Violated Automatic Stay, (II) Requiring Wilmington Trust Company to Show Cause Why It Should Not Be Held in Contempt of Court, and (III) Halting All Proceedings with Respect to the Complaint* [Docket No. 3942].

the lenders slated to receive the lion's-share of estate value under the Debtors' Plan.  That adversary proceeding seeks inter-creditor relief, largely in the form of turn-over of estate distributions to Wilmington Trust and holders of the PHONES.  It was stayed at the insistence of JPMorgan in connection with the appointment of Mr. Klee, as Examiner.   In response to JPMorgan's demand, Wilmington Trust stated in open Court: (i) if the parties demand a stay of this adversary proceeding in deference to Mr. Klee's appointment, Wilmington Trust will not stand in the way; but (ii) Wilmington Trust is not waiving its right to a fair adjudication of the Amended Complaint; and (iii) if the stay means that the confirmation process is delayed as a result (because the nature of the relief requested necessitates adjudication before or in tandem with confirmation), so be it, meaning that Wilmington Trust is not "assuming the risk" of case dislocation and delayed confirmation procedure because of the defendants' desire to see the Examiner's Report first, and litigate Wilmington Trust's Amended Complaint only thereafter.  Any pre-trial Order must appropriately regard the Amended Complaint, and no confirmation procedure can be implemented that essentially "pocket vetoes" the relief requested in that adversary proceeding.

6.    Wilmington Trust is prepared to meet and confer with the Debtors and other parties-in-interest to discuss an appropriate form of pre-trial order.  No party has invited such a dialogue with Wilmington Trust and, in fact, the Cross-Motion and Proposed Scheduling Order came as a complete surprise to Wilmington Trust.  Since (i) the Examiner has not yet issued his highly-anticipated Report and (ii) Plan objectors have not yet filed their Plan objections, it is premature to decide trial procedure. Wilmington Trust is, nevertheless, willing to start the discussion.  In the interim, no form of pre-trial Order should be entered, especially not the remarkably ill-conceived one offered up by the Debtors.

## BACKGROUND

7.    **General Case Background; the LBO.**    On December 8, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

8.    It is well-understood that these Chapter 11 cases were the result of the Debtors' leveraged buy-out (the "LBO"), orchestrated by Sam Zell and certain large financial institutions, completed within one-year of the Petition Date.  The PHONES (and about $1.28 billion of other unsecured bond debt) were issued prior to the LBO and were not redeemed as part of the LBO. It is, in fact, an often-noted characteristic of this "busted-LBO" bankruptcy that so much pre-LBO debt "rode through" the leveraged buyout, creating even greater reason to closely scrutinize that transaction.

9.    **The Plan.**  The Plan proposes to settle all estate causes of action arising from the LBO.   Insiders, such as Sam Zell, are released without contributing any value.   The Plan proposes delivering the vast majority of estate value (plus releases of all estate causes of action) to the lenders that worked hand-in-glove with Zell to orchestrate the LBO.  Wilmington Trust and the PHONES receive nothing under the Plan.  The Debtors attribute this to the PHONES purported contractual subordination, as opposed to any professional's inability or unwillingness to zealously prosecute estate causes of action against management, JPMorgan, etc.

10.    **The Examiner's Appointment**.  On May 10, 2010, the Court entered an Order appointing Kenneth N. Klee, Esq. as Examiner.   Mr. Klee is conducting an exhaustive investigation of the LBO, and resulting estate causes of action.   His Report is presently scheduled to be filed on July 26, 2010.

11.    **Wilmington Trust's Amended Complaint; Agreement To Stay Same**.    On

March 4, 2010, Wilmington Trust filed the Complaint against JPMorgan and certain other LBO

lenders, asserting direct causes of action sounding in equitable subordination, claims

disallowance, constructive trust, among other theories.[5]   In the prayer for relief, Wilmington

Trust requests the imposition of a constructive trust over any estate dividends to the defendants,

among other forms of redress.

12.    In connection with Mr. Klee's appointment, JPMorgan insisted that this adversary

proceeding be stayed.  Wilmington Trust did not oppose the stay, but indicated to all parties that

that decision was dictated by others, and that it did not "assume the risk" of a consequentially

prolonged confirmation or Chapter 11 process.  Specifically, at the April 19, 2010 hearing,

counsel to Wilmington Trust and JPMorgan had the following exchange:

> **MR. BERNSTEIN**:   And there's one other issue that Mr. Stark wants to raise as well.
>
> *        *        *
>
> **MR. STARK**: There was one other issue that was raised by JPMorgan in their last round markup of the [Examiner] Consent Order and that was they wanted a provision to be added, which is not in the provision now that we've been working on, that stays our equitable subordination Complaint.  And what I said to JP Morgan's counsel, and I'm prepared to put it on the record, here's how we respond to that and if it's insufficient, I'm sure Mr. Bernstein will create some colloquy and we'll talk it further through.
>
> We're prepared to litigate the Complaint right now.  We think it's fully briefed on whether or not we violated the automatic stay or whether or not as we contend [there] are direct equitable subordination [counts] that we've asserted.  The parties would like the examiner to investigate that as well, be within the ambit of everything that he's investigating and that's okay with us, but there's three things that emanate out of that.

---

[5]    As mentioned above, <u>supra</u> note 4, Wilmington Trust has publicly filed a draft Amended Complaint.

First is, we're prepared to go forward on that basis of – along the dual track.  This is the litigation track, the examination track is separately.  **If you want to take this out and put it on hold pending resolution of the examination, so be it, but that's not at our request.  In other words, there's a risk being assumed by the Debtors here.  If we're right that we have direct causes of action that are not property of the estate and cannot, as we see the law, be settled by their plan, absent our consent [or] a full adjudication, that's the risk that the Debtors take on with the banks consent and that may be a fundamental confirmation objection, and we're prepared to litigate today and resolve that issue in advance.  But since timing and calendaring is very important to them, that risk – the assumption of that risk falls squarely on them not on us.**

\*       \*       \*

**MR. BERNSTEIN**:   Your Honor, Don Bernstein, for JP Morgan.  We're not trying to preclude any legitimate discovery in connection with the Disclosure Statement, confirmation, what have you, **we're not trying to preclude issues that are relevant to the confirmation and that's what we agreed with Mr. Stark.**   We do understand, however, that Mr. Stark is agreeing that we do not have to answer the Complaint, that all activity associated with the Complaint is suspended, so that we can get on with the examiner and also get on, frankly, with Disclosure Statement and confirmation.

(4/19/10 tr. at 25-28 (emphasis added), excerpt attached as <u>Exhibit A</u>)

## <u>ARGUMENT</u>

**I.     The Cross-Motion Should Be Denied**
**Because The Proposed Scheduling Order Is Patently**
**<u>Un-Constitutional And Otherwise Violates Fundamental Legal Principles</u>.**

13.      Wilmington Trust – one of the Debtors' largest unsecured creditors – is entitled to due process of law, especially in connection with the prosecution of a plan of reorganization that proposes delivering nothing for its $1.2+ billion claim.  <u>See</u> <u>e.g.</u> <u>Reliable Elec. Co. Inc. v Olson Const. Co</u>., 726 F.2d 620, 623 (10th Cir. 1984) ("A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests."); <u>Advantage Healthplan v. Potter</u>, 391 B.R. 521 (D.D.C. 2008) (creditors have due process right to

object to proposed settlement); In re General Development Corp., 165 B.R. 685, 688 (S.D.Fla. 1994) ("It is well established that creditors' rights in bankruptcy cases are property interests that are protected by the Fifth Amendment and that cannot be impaired without notice and an opportunity to be heard."); In re Dehon, 352 B.R. 546, 566 (Bankr. D. Mass 2006) ("The Defendants correctly note that this Court (as well as many others) has held that the Due Process Clause of the Fifth Amendment to the United States Constitution requires notice and an opportunity to be heard before a creditor's claim may be adversely affected by the operation of the federal bankruptcy laws."); Morgan, 304 U.S. at 17 (noting that the fifth amendment right to be heard encompasses the right to present evidence, offer argument and assert counterarguments).

14.    Merely a cursory glance at the Proposed Scheduling Order reveals its true intent: to deny Wilmington Trust and other creditors of their due process entitlements.  By seeking to arbitrarily limit the parties opposing the Plan to "a total [of] two trial days to present their evidence," the Debtors aim to force Wilmington Trust and other plan opponents to abandon arguments and witnesses due to time constraints.  This is tantamount to depriving Wilmington Trust a meaningful opportunity to be heard at confirmation, and it cannot be allowed by this Court. See e.g. Morgan, 304 U.S. at 18 ("The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one").

15.    The Debtors' attempt to limit the trial testimony of experts is similarly inappropriate.  The Debtors will have every opportunity to interpose motions in limine and other evidentiary objections.  That is what the law provides; that is more than sufficient.

16.     Finally, as indicated above, the Proposed Scheduling Order does not mention when and how Wilmington Trust's adversary proceeding should continue.  It would seem that the Debtors intend to "pocket veto" the Amended Complaint, subsume and somehow dispense with the adversary proceeding without adjudication, as part of Plan confirmation.  Again, the Amended Complaint asserts direct (not derivative) claims that cannot be settled out from under Wilmington Trust pursuant to Bankruptcy Code 1123 or Bankruptcy Rule 9019.  See e.g. In re Coram Health Care Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004).  Any pre-trial Order must appropriately consider resolution of the adversary proceeding.

II.     **The Cross-Motion Should Be Denied Because It Is Predicated On A Fundamental Misunderstanding Of The Debtors' Burdens Of Proof And Persuasion At Confirmation.**

17.     The Cross-Motion seems rooted in a fundamental misunderstanding of the Debtors' evidentiary burden under Bankruptcy Rule 9019.  See In re Eastwind Group, Inc., 303 B.R. 743, 750 (Bankr. E.D.Pa. 2004) (burden of proof on settlement proponent).  The Debtors rely on In re Spansion, 2009 WL 1531788 (Bankr. D. Del. June 2, 2009) and the familiar bromide the Court "should not conduct a full blown trial or even a mini-trial on the merits [in connection with a motion under Rule 9019]."  Cross-Motion at ¶¶ 5-6.  From this, the Debtors apparently have concluded that their evidentiary burden is something akin to a "business judgment" showing.  That is not the law.

18.     Rather, the Debtors must produce evidence enabling the Court to "decide whether 'the compromise is fair, reasonable, and in the best interest of the estate.'"  Spansion, 2009 WL 1531788 at *3 (citation omitted).  That is a significant burden, especially in a case of this magnitude and complexity.  As instructed by the Supreme Court, the Court must:

> apprise [itself] of all the facts necessary for an intelligent and
> objective opinion of the probabilities of ultimate success should
> the claim be litigated.  Further, the judge should form an educated
> estimate of the complexity, expense, and likely duration of such
> litigation, the possible difficulties in collecting on any judgment
> which might be obtained, and all other factors relevant to a full and
> fair assessment of the wisdom of the proposed compromise.

Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390

U.S. 414, 424 (1968).  The Court's obligation to "apprise itself of all the facts" stands at cross-

purposes with the Debtors' apparent interest in severely limiting the presentation of evidence and

examination of witnesses.

19.     The Court's Spansion decision proves the point.  In Spansion, the debtors sought

to settle technical intellectual property claims.  The debtors requested Rule 9019 approval of the

settlement, essentially following the same trial approach advocated by the Debtors here – a

summary presentation akin to a "business judgment" showing.   Creditors objected to the

settlement contending that, under TMT Trailer Ferry, the debtors' summary showing was an

insufficient record upon which the Court could approve the settlement.   The Court denied

approval, finding that:

> The Debtors have provided little information as to the specifics of
> the Actions to provide a basis for evaluating the strengths and
> weaknesses of the litigation . . . given the above reasons and the
> largely conclusory record with which I am presented to evaluate
> likelihood of success of the Actions, there is not enough evidence
> before me to conclude whether the proposed settlement amount is
> within the "range of reasonableness."

2009 WL 1531788 at *7-9.   By failing to offer extensive technical evidence on the value of

sophisticated claims, the debtors "failed to meet their burden."  Id. at *4.

20.     The claims at issue here are far more complex, far more sophisticated, far more

technical and far more involved than those at issue in Spansion.  In order to conduct the analysis

11

mandated by <u>TMT Trailer Ferry</u>, the Court will need a substantial evidentiary record.  <u>See</u> <u>TMT Trailer</u>, 390 U.S. at 434 ("It is essential, however, that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.").

21.     If the Debtors truly believe they can carry this evidentiary burden in two trial days, Wilmington Trust will not stand in the way of their self-immolation.[6]  The objection evidence will, however, take far longer.

**III.     The Cross-Motion Should Be Denied
            Because It Is Substantially Premature.**

22.     Additionally, even if the Debtors were not baldly seeking to eviscerate the due process rights of their plan opponents, a scheduling order would still be untimely and inappropriate.  As things stand, the Examiner's report due date has been pushed back to July 26, 2010, with the voting deadline extended to August 6, 2010 and the deadline for plan objections extended to August 13, 2010.  <u>See</u> *Order (I) Amending Certain Deadlines In (A) Discovery And Scheduling Order And (B) Solicitation Order, And, (II) Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq. For Extension of Report Deadline* [Docket No. 4928].  Accordingly, discovery that would otherwise be proceeding with due speed has been delayed.  It

---

[6]     Of course, should the Debtors and Plan Supporters choose to base their case at least in part on their analysis of the estate claims, then all such analyses (and surrounding information) must be made available to the Plan objectors in discovery.  In other words, the law is quite clear that the Debtors and Plan Supporters may not use such analyses as a sword in the litigation, while relying on work-product,  attorney-client communication or other privileges to shield them from discovery production.  <u>See</u> <u>e.g.</u> <u>Glenmede Trust Co. v. B. Ray Thompson, Jr.</u>, 56 F.3d 476 (3d Cir. 1995) (plaintiff waived attorney-client privilege by relying on advice of counsel as affirmative defense).  To date, the Debtors and Plan supporters have refused to produce such information, further suggesting that their proposed litigation strategy could use some further refinement before proposing any form of pre-trial Order.

is impossible at this time to know exactly who the plan opponents would be, what their arguments will be, what fact witnesses need to be called and what expert testimony might be helpful to the Court.  Until there is greater clarity on these important points, any attempt to cap the amount of time for testimony and argument is a futile exercise in wishful thinking.

23.     Finally, the Debtors' Cross-Motion seems to be, on some level, a judicial plea to limit the amount of acrimony that is set to befall the Debtors at plan confirmation.  Alas, the Global Settlement is not a Global Settlement at all, in that it is not supported by some of the largest creditors and even many of the parties purportedly "signed on."  These creditors are entitled to prosecute their objections, and that presentation will necessarily take a significant amount of time.  Other large Chapter 11 cases have taken many days before arriving at a fair presentation of all the evidence necessary to consider the merits of the plan and its compliance with the bankruptcy code, and these Debtors must undergo a similar ordeal, as much as they would prefer otherwise.  See e.g. In re Charter Commmuns., 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (noting that the court heard extensive argument and testimony for nineteen days during the period from July 20 through October 1, 2009); In re Premier International Holdings, Inc., Case No. 09-12019, Docket No. 2114 (Bankr. D. Del. April 30, 2010) (noting that the confirmation hearing was scheduled for ten trial days); In re Adelphia Communications Corp., 368 B.R. 140 (Bankr. S.D.N.Y. 2007) (noting that the confirmation hearing lasted nine days); In re Enron Corp., Case No. 01-16034, Docket No. 19759 (Bankr. S.D.N.Y. July 15, 2004) (noting that the confirmation hearing lasted ten days); In re Exide Technologies, 303 B.R. 48 (Bankr. D. Del. 2003) (noting that the confirmation hearing lasted seven days).

## CONCLUSION

**WHEREFORE**, Wilmington Trust respectfully requests that this Court: (1) deny the Debtors' Cross-Motion; (2) and, grant Wilmington Trust any such further relief as is just and proper.

Dated: July 12, 2010

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By: _____ */s/ Raymond H. Lemisch* _____
Raymond H. Lemisch, Esq. (Del. Bar No. 4204)
Jennifer R. Hoover, Esq. (Del. Bar No. 5111)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone:  (302) 442-7010
Facsimile: (302) 442-7012
Email: rlemisch@beneschlaw.com
Email: jhoover@beneschlaw.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Martin S. Siegel, Esq.
William M. Dolan III, Esq.
Katherine S. Bromberg, Esq.
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801
Email: rstark@brownrudnick.com
Email: msiegel@brownrudnick.com
Email: wdolan@brownrudnick.com
Email: kbromberg@brownrudnick.com

*Counsel to Wilmington Trust Company, as Successor Indenture Trustee for the $1.2 Billion Exchangeable Subordinated Debentures Due 2029, Generally Referred to as the PHONES*