# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** August 9, 2010 @ 1:00 p.m. |
| | **Objection Deadline:** August 2, 2010 @ 4:00 p.m. |

## MOTION OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., FOR ORDER (1) TEMPORARILY AUTHORIZING THE FILING OF THE EXAMINER'S ENTIRE REPORT AND CERTAIN DOCUMENTS UNDER SEAL AND; (2) OVERRULING THE CLAIMS OF CONFIDENTIALITY WITH RESPECT TO THE REPORT AND ITS EXHIBITS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FORM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

1.      Kenneth N. Klee, Esq., the examiner (the "Examiner") appointed in the above-captioned chapter 11 cases ("Chapter 11 Cases") of Tribune Company and its affiliates (collectively, the "Debtors"), by and through his undersigned counsel, respectfully moves the Court for the entry of an order, pursuant to section 107 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and United States Bankruptcy Court for the District of Delaware Local Rule 9018-1(b): (1) authorizing the Examiner to file under seal his entire report (the "Report") and certain Alleged Confidential Materials (as defined below), and if the Court so directs, all of the exhibits to the Report (the "Exhibits"); and (2) overruling the claims of confidentiality, and unsealing the entire Report and the Exhibits (including the transcripts of the Examiner's sworn witness interviews and the exhibits thereto), or directing the Examiner to publicly file those portions of the Report and the Exhibits that the Court deems appropriate.  In support of this motion (the "Motion"), the Examiner shows as follows:

## I.

## INTRODUCTION

2.      After careful consideration, the Examiner has determined that the present Motion is necessary and unavoidable.  As detailed below, the Examiner and his professionals requested that the various parties withdraw, or significantly narrow, their claims of confidentiality as to the documents and information referenced or relied upon in the Report so that the Examiner could file publicly his Report and the Exhibits (including the transcripts of the Examiner's sworn witness interviews and the exhibits thereto).  The Examiner repeatedly cautioned the parties to be

judicious in their claims of confidentiality. Although the Debtors and some parties[2] have worked cooperatively with the Examiner's professionals on these issues, it is the Examiner's view that others have not. Because there is insufficient time for the Examiner to present these issues to the Court for resolution before the deadline for filing his Report, the Examiner has determined he has no choice but to file a redacted version of the Report on July 26, 2010, and file this Motion seeking to file under seal an unredacted version of the Report and the materials used in the Report that remain subject to claims of confidentiality, pending the resolution of these issues. By this Motion, the Examiner endeavors to have these issues resolved at the omnibus hearing scheduled for August 9, 2010 at 1:00 p.m. EDT, so that most, if not all, of the Report and the Exhibits may be made publicly available as soon as possible.

## II.

## STATUS OF CASE AND JURISDICTION

3.      On December 8, 2008, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 10, 2008, the Court entered an order providing for the joint administration of the Chapter 11 Cases.

4.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a

---

[2]    Before the filing of this Motion, JPMorgan Chase Bank, N. A. and J.P. Morgan Securities Inc. withdrew all of their prior confidentiality assertions with respect to documents referred to and/or cited in the Report, except in one respect, which was acceptable to the Examiner.

core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is section 107 of the Bankruptcy Code, Bankruptcy Rule 9018, and United States Bankruptcy Court for the District of Delaware Local Rule 9018-1(b).

## III.

## BACKGROUND

6.    On January 13, 2010, Wilmington Trust Company ("WTC") filed its *Motion for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* [Docket No. 3062]. On April 20, 2010, the Court entered the *Agreed Order Directing the Appointment of Examiner* [Docket No. 4120] (the "Examiner Order"), directing the United States Trustee to appoint an examiner in these cases pursuant to Bankruptcy Code section 1104(c)(1).

7.    Pursuant to the Examiner Order, the Examiner is directed to conduct an investigation (as defined therein, "Investigation") and to prepare the Report in respect thereof, evaluating the following (all as more particularly described in the Examiner Order) asserted by certain designated parties (the "Parties"): (i) potential claims, causes of action, and defenses asserted with respect to the leveraged buy-out of Tribune that occurred in 2007 ("Question One"); (ii) whether WTC violated the automatic stay by filing the complaint in Adversary Proceeding No. 10-50732 ("Question Two"); and (iii) the assertions and defenses made in connection with a certain motion of JPMorgan Chase Bank, N.A. for sanctions against WTC based on the alleged disclosure of confidential information ("Question Three").

8.    On April 30, 2010, the United States Trustee filed her *Notice of Appointment of Examiner* [Docket No. 4212], appointing Kenneth N. Klee, Esq. as the Examiner, subject to Court approval. Contemporaneously therewith, the United States Trustee filed her *Application of the United States Trustee for Order Approving Appointment of Examiner* [Docket No. 4213].

9.     On May 7, 2010, the Examiner filed the *Work And Expense Plan Of Examiner-Designate Kenneth N. Klee, Esq.* [Docket No. 4261] ("Work Plan").  On May 10, 2010, the Court held a status conference regarding the appointment of the Examiner and the adoption of his Work Plan.

10.     On May 11, 2010, the Court entered its *Order Approving Appointment of Examiner* [Docket No. 4320] and its *Order Approving Work And Expense Plan And Modifying Examiner Order* [Docket No. 4321] (the "Work Plan Order").

11.     On June 16, 2010, the Examiner filed the *Supplement Re Examiner's Work and Expense Plan of Court-Appointed Examiner, Kenneth N. Klee* [Docket No. 4794], wherein the Examiner reported, among other things, that the Investigation was requiring more work on the part of the Examiner and his professionals than contemplated prior to the beginning of the Investigation.

12.     On June 23, 2010, the Examiner filed the *Motion of Court-Appointed Examiner Kenneth N. Klee, Esq., for Extension of Report Deadline* [Docket No. 4858] (the "Extension Motion").  By Order dated July 1, 2010 [Docket No. 4928], the Court, *inter alia*, approved the Extension Motion, as modified, and extended the deadline for the Examiner to file his report until 11:59 p.m. on July 26, 2010 (the "Deadline").

13.     The Examiner and his professionals are working hard on the Report, which will be filed by the Deadline.

## IV.

## THE ALLEGED CONFIDENTIAL DOCUMENTS AND INFORMATION

14.     Prior to the appointment of the Examiner, on information and belief, the Official Committee of Unsecured Creditors (the "Committee") obtained certain documents and

information in connection with the Committee's investigation of certain claims and causes of action, subject to the preservation of any claims of confidentiality.

15.     On December 12, 2009, the Court entered the *Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Protections Pursuant to 11 U.S.C. § 105(a)* [Docket No. 2858] (the "Document Depository Order"), authorizing the Debtors to establish and maintain a document depository (the "Document Depository") to store the documents and information provided to the Committee or other parties in these cases, and to provide the Negotiating Parties (as that term is defined in the foregoing order) with access to the Document Depository, subject to the preservation of any claims of confidentiality.

16.     As of mid-July, almost 4.3 million pages of documents have been produced and "deposited" in the Document Depository.  Unbeknownst to the Examiner at the outset of the Investigation, the "Document Depository" created by the Parties was not a single, electronic database containing the documents produced to date, but rather a collection of over 150 compact discs containing documents produced by various parties in connection with the Chapter 11 Cases, in a variety of electronic formats.  The Document Depository contains no organizing map or electronic index.

17.     As contemplated by paragraph 11 of the Examiner Order, the Examiner and his professionals were granted access to the documents in the Document Depository (*i.e.,* received a copy of the disks containing electronic copies of those documents), and used these documents in connection with the Investigation and the preparation of the Report.  In addition to the documents in the Document Depository, the Examiner obtained documents and information

directly from certain parties, which, in many cases, were produced to the Examiner subject to claims of confidentiality. The Examiner and his professionals have complied with the confidentiality obligations associated with the documents to which they have been provided access.

18.    Prior to his formal appointment, the Examiner learned that under the Document Depository Order, nearly every document produced in the Chapter 11 Cases was marked "confidential" or "highly confidential" and its contents could not be publicly disclosed. The "confidential" or "highly confidential" designations of some documents verged on the absurd, and included, among other things, the credit agreements in the case and even documents publicly-filed with the Securities and Exchange Commission. Moreover, the Examiner was not provided any log describing the basis on which any documents were designated as "confidential" or "highly confidential" by any of the persons and entities producing those documents and/or making those designations.

19.    To the best of the Examiner's knowledge, no Party has challenged the designation of as much as a single document as "confidential" or "highly confidential."

20.    As pointed out by the Examiner in his Work Plan, there is internal tension within the Examiner Order when it comes to confidentiality. On the one hand, the Examiner Order provides for the preservation of claims of confidentiality as to documents and information produced to the Examiner. *See* Examiner Order at ¶ 11. On the other hand, the Examiner Order and statements made by the Court on the record in these cases make clear that the Court expects the Examiner to file a public Report. *See* Examiner Order at ¶ 5.

21.    In an attempt to reconcile the internal conflict related to alleged confidentiality, the Examiner proposed a procedure in the Work Plan with the goal of significantly narrowing the

scope of the documents and information which the producing parties believe must remain

confidential. Specifically, paragraphs 26 and 27 of the Work Plan, provide as follows:

> 26.   In an effort to reconcile this conflict, the Examiner has proposed to the Parties that following the formal exchange of briefs and documents described above, each of them shall identify to the Examiner those particular documents that the Party believes in good faith are entitled to protection from public disclosure under applicable law and as to which the Examiner should not publicly disclose in his report. Absent relief prior to July 12, 2010, the report publicly filed on such date will be redacted so as not to disclose the contents of the documents designated by the Parties for protection in response to a deadline that will be established by the Examiner.
>
> 27.   The Examiner has advised Parties that the standard they should utilize in whether to designate documents for non-disclosure is not whether disclosure would be embarrassing to a Party, or harmful to its position in existing or future litigation, but whether there is a bona fide legal basis to prevent its public disclosure. The Examiner hopes and expects that the universe of non-disclosable documents identified by the Parties will be few. In order to address those documents that ultimately may be designated for non-disclosure by a Party, the Examiner will propose that the Court adopt an expedited process for determining whether to lift the protection of any document or information and permit the public filing of the report without redaction – similar to the process utilized in the Lehman case following the filing of the examiner's report.

*See* Work Plan at ¶¶ 26 and 27.

22.   Consistent with the Work Plan, the Examiner required that following the formal

exchange of briefs and documents, each Party identify to the Examiner those particular

documents accompanying the briefs that the Party in good faith believed were entitled to

protection from public disclosure under applicable law. The Examiner made clear to the Parties,

repeatedly, that the standard the Parties should apply to determine whether to designate

documents for continued nondisclosure should not be whether the disclosure would be

embarrassing to a particular Party or even harmful to its position in existing or potential

litigation, but whether there was a *bona fide* legal basis to prevent its initial public disclosure.

The Examiner set June 14, 2010 as the deadline for the Parties to identify any specific document that they claimed to be confidential.

23.     The Examiner's requirements and procedure regarding assertions of confidentiality were set forth in his letter to the Parties dated May 10, 2010, a copy of which is attached hereto as **Exhibit "A"** and incorporated by reference herein, and repeated in his letter of May 26, 2010, a copy of which is attached hereto as **Exhibit "B"** and incorporated by reference herein.

24.     By electronic mail dated June 14, 2010, counsel to the Examiner informed the Parties that the Examiner would move to preserve the claims of confidentiality asserted by the Parties to date.  Further, the Examiner's counsel informed the Parties that, as additional documents were produced or identified, the Examiner would provide the Parties with secured electronic access to those documents for purposes of identifying any additional documents subject to the Parties' claims of confidentiality.  A copy of counsel's electronic mail is attached hereto as **Exhibit "C"** and incorporated by reference herein.

25.     After the June 14, 2010 deadline, in a series of communications dated June 18, 2010, July 9, 2010 and July 12, 2010, counsel to the Examiner identified to the Parties, certain documents that were not submitted with the briefs but which the Examiner might determine to quote or reference in his Report ("Potential Depository Exhibits").  Copies of the foregoing correspondence are attached hereto as **Exhibits "D"** through **"F"** and incorporated by reference herein.  Separately, counsel to the Examiner also dispatched correspondence to counsel for the persons and entities *other than* the Parties who produced the Potential Depository Exhibits ("Non-Party Producing Entities") and provided them with copies or electronic access to such

Potential Depository Exhibits. Those correspondence also urged the Non-Party Producing Entities to be judicious in designating documents for confidential treatment.

26. Likewise, counsel for the Examiner sent email correspondence to counsel for each of the individuals that was interviewed by the Examiner under oath and as to which a stenographic record was taken. Counsel for the Examiner also provided the interviewees copies of their transcript and marked exhibits (collectively, the "Transcripts"). The email requested that the interviewee's counsel advise of any portions of the specific Transcript as to which the interviewee asserted confidentiality and a legal entitlement to protection from public disclosure. Again, the email urged the interviewees to be judicious in any such designations, in deference to the Court's stated objective that the Report be public.[3]

27. Notwithstanding the Court's clear indication that the Examiner's Report should be a public document, and notwithstanding the Examiner's efforts, several of the Parties and the Non-Party Producing Entities have continued to assert claims of confidentiality with respect to a wide range of documents, including Transcripts, and portions of Transcripts, as well as certain broad subject matters contained in documents and discussed with the various witnesses during the Examiner's interviews. Attached hereto as **Exhibit "G"** is a chart (the "Chart") detailing: (i) the current documents and information expected to be utilized in the Report that remain subject to claims of confidentiality (the "Alleged Confidential Materials"); (ii) the specific Transcripts, or portions of Transcripts, subject to claims of nondisclosure; (iii) the identity of the

---

[3]    The Examiner's Report relies upon, and in certain cases quotes or references, statements made during informal interviews that were not conducted under oath, or professionally transcribed. Given the time constraints, the Examiner and his professionals have not yet furnished these interviewees or their counsel with the quotes or references ascribed to them in the Report. The Examiner intends to do so as soon as practicable after the filing of the Report and to provide the interviewees and/or their counsel an opportunity to respond to this Motion and assert any appropriate claims of confidentiality with respect to such quotes or references.

persons or entities asserting such claims; and (iv) if provided, the basis of any confidentiality designation.[4]

28.    As the size and breadth of the Chart indicates, the claims of confidentiality are so broad, and cover so many documents and subjects relevant to the Investigation and the Report, that it is impossible for the Examiner to redact all of this information from the Report without rendering the Report difficult to follow or understand.   Indeed, the problem is not simply whether a particular document should be quoted, but whether the contents or the subject matter may be disclosed, referenced or discussed in the Report, directly or indirectly, without redaction. At least one party has asserted not only that the designated documents must be treated as confidential, but that any *reference* to the contents of the document must remain nonpublic.

29.    These problems are not readily addressed by excising a particular sentence that cites to a designated document as its source.   Without clear direction from the Court and a substantial narrowing of the designations, the Examiner will have to review each and every sentence in the Report to determine whether the confidential subject matter is directly or even indirectly addressed – posing the risk that the Examiner will inadvertently breach an asserted confidentiality entitlement, and substantially increase the time and expense that must be expended before the entirety of the Report can be publicly filed.

30.    By way of example, some of the Debtors' lenders have asserted confidentiality regarding documents and subjects related to the lenders' internal analyses and valuations of the Debtors' business.   Similarly, some lenders have asserted confidentiality as to documents and testimony discussing the fees earned and received as a result of the transactions that are the

---

[4]    As the Examiner and his Professionals finalize the Report, it is possible that additional materials will be added to the Chart of Alleged Confidential Materials.  If so, the Examiner will promptly file a revised Chart and alert the effected parties, so that they may respond to this Motion and assert any appropriate claims of confidentiality with respect to such additional materials.

subject of the Investigation.[5]  These documents, the information contained therein, and the Examiner's observations and conclusions with respect thereto are highly relevant to the Investigation and are discussed throughout the Report.  Putting aside the time and expense, this information cannot be redacted from the Report without severely impairing the substance and quality of the Report, and rendering it of little value to the reader.  The information in these documents is direct evidence bearing on the lenders' state of mind with respect to the value of the Debtors at the closing of each of the steps to the Leveraged ESOP transactions in 2007.

31.    The Examiner does not believe that all claims of confidentiality are well-founded or asserted in good faith.  By way of example, the Examiner questions the propriety of claims of confidentiality related to fees received in connection with a lending transaction that occurred over two years ago, in a vastly different economic environment – particularly when certain parties alleged that those fees might constitute avoidable transfers.  Likewise, some of the parties have claimed confidential treatment for the underwriting analysis employed by them in approving and funding the "step two" debt.  The Examiner doubts that this information would be of any commercial significance, given the passage of time and the occurrence of intervening events involving the Debtors and lending practices generally since these transactions occurred, over two years ago.   It also bears noting that, in every instance, the entity asserting confidentiality voluntarily participated in these transactions and would benefit from the releases proposed under the pending plan of reorganization.

32.    The Examiner has been informed that certain parties maintain that certain Transcripts, or portions of Transcripts, are confidential and should not be made public as part of

---

[5]    One of the Parties asserted that certain testimony given to the Examiner by one witness involved "trade secrets," a claim that was so vague and broad as to make it impossible for the Examiner to determine what other aspects of the Report could possibly involve trade secrets.

the Appendix to the Report. Certain parties further suggest that the interviewees may have conducted themselves differently, had they "known" that the Transcripts would be made public. This contention, however, confuses the confidentiality that exists until the Report is issued with what happens afterward.

33.     Under the Examiner Order, "documents in the [Document] Depository and other information subject to orders of [the] Court relating to confidentiality shall not be disclosed by the Examiner, except in accordance with such orders or further order of [the] Court." *See Examiner Order* at ¶ 11. In addition, under the Examiner Order, as noted previously, the Examiner was expressly made subject to the terms of all confidentiality orders and agreements, including the Depository Order. *Id.*

34.     Under the Work Plan Order, the Examiner was only entitled to furnish to any person or entity confidential information if that person or entity agreed to be bound by the terms of any existing confidentiality agreement or order. *See Work Plan Order* at ¶ 7. Accordingly, before conducting each interview, to the extent an interviewee or the institution employing such interviewee had not already done so, the Examiner required each interviewee to acknowledge, in writing, that he or she was bound by the terms of the Depository Order governing confidentiality.

35.     As a result of the preceding, at the outset of each transcribed interview, the Examiner reminded interviewees that the information furnished to the Examiner was confidential. Any suggestion, however, that the information furnished to the Examiner in the

course of the Investigation would remain confidential in *perpetuity* is frivolous. Paragraphs 4 of

the Work Plan Order provides:

> The delivery of any documents or information by any of the Parties, or by counsel or other professionals engaged by any of the Parties, to the Examiner or to any of the Parties in connection with the Investigation (as defined in the Examiner Order), does not constitute a waiver of attorney-client privilege, attorney work product protection, confidentiality or any other applicable privilege, protection, immunity, or confidentiality, and the delivery of such documents or information to the Examiner or to any of the Parties shall not be the basis for any third party or any other Party to assert that any of the Parties or their counsel or other professionals have waived, in whole or in part, any privilege, protection, immunity, or confidentiality with respect to such documents or information or with respect to any other documents or information that may concern the same subject matter. Notwithstanding the preceding sentence, the Examiner is authorized to disclose to and discuss with any of the Parties, or other persons and entities in the course of his Investigation subject to any existing confidentiality order or obligation as modified in paragraph 7 below, the documents or information disclosed to the Examiner by any other Party (whether in order to verify factual assertions, obtain different points of view, or otherwise) **and to incorporate any of the documents or information provided by the Parties into the Examiner's report; and in each such case, the Parties will not assert attorney-client privilege, attorney work product protection, or any other applicable privilege, protection or immunity with respect to the specific documents or information so disclosed or incorporated.**

*See Work Plan Order*, ¶ 4 (emphasis added).

36.    Indeed, even leaving the Work Plan Order aside, which the Examiner submits is

clear on its face, the Depository Order to which each interviewee agreed to be bound does not

shield information designated as confidential in *perpetuity*.    To the contrary, the

Acknowledgement attached to the Depository Order contains a procedure for challenging the

alleged confidentiality of any document, *See Depository Order*, Exhibit A, ¶ 10, and the

Depository Order specifically provides "that the Court shall retain jurisdiction to address any

issues regarding the disclosure or confidentiality of any documents…" *See Depository Order* at p. 4.

37.     Accordingly, no one can credibly maintain that there was any reasonable expectation that the statements made to the Examiner in any interview would remain shielded from the public eye.

38.     As with the Report and its Exhibits, the Examiner strongly believes that the Transcripts should be made part of the public record of his Investigation to provide a reader of the Report with the full transcribed record of the events and not only those excerpts cited in the Report. To the extent the interviewees or their counsel furnished to the Examiner "corrections" of testimony, these writings also should be made public.

39.     Absent Court relief from the various claims of confidentiality, the Examiner cannot publicly file a version of the Report that is not substantially redacted. By this Motion, the Examiner seeks Court authority to file the entire Report and the Alleged Confidential Materials under seal (on an interim basis), and, on a permanent basis, to publicly file an unredacted version of the Report and all Exhibits referenced therein (including the Transcripts and the exhibits thereto). Further, the Examiner is prepared to file under seal all of the Exhibits to the Report, if requested and authorized by the Court. At this time, it appears that the number of Exhibits to the Report will substantially exceed 1,000.

40.     In the interim, the Examiner intends to publicly file a redacted version of the Report on the Deadline, comprised principally of: a summary of the Examiner's principal conclusions and an overview of the Investigation and factual background (the "Summary"), those portions of the Report addressing Question One that do not involve potential assertions of

confidentiality, the Examiner's analysis of Question Two and Question Three and a glossary of defined terms used in the Report (collectively the "Public Portions").

41.     The Summary is designed to be responsive to the Court's statements on the record, and the request of the Office of the United States Trustee, that the Examiner publicly disclose the major conclusions in the Report relating to Question One on the Deadline. Although the Summary is, by design, less comprehensive that the Report itself, the Summary includes the Examiner's rationale for many of his conclusions.

42.     As a legal matter, it is up to the parties asserting confidentiality to carry their burden of demonstrating to the Court that such documents or information should be protected from disclosure under section 107 of the Bankruptcy Code, and the Examiner shall leave it to those parties to do so.

43.     The Examiner notes that in the event the Court sustains the contention of any party that a document or Transcript, or a portion thereof, is entitled to protection from public disclosure, it may be necessary to furnish the unredacted version of the Report to that party and direct that party to specifically identify those portions of the Report that require redaction in respect thereof.  The Examiner does not want to be placed in the position of having to guess whether the Report directly or indirectly uses information that the Court determines is entitled to protection from public disclosure.  It is likely, moreover, that this process would take substantial time to sort out.

## V.

## RELIEF REQUESTED

44.     By this Motion, the Examiner respectfully requests that, pursuant to section 107 of the Bankruptcy Code and Bankruptcy Rule 9018, this Court enter an order: (1) temporarily

authorizing the Examiner to file under seal the entire Report and the Alleged Confidential Materials, and, if requested by the Court, the Exhibits to the Report; (2) overruling the claims of confidentiality detailed in the Chart, and (3) unsealing and authorizing the public filing of the entire Report and its Exhibits (including the Transcripts and the exhibits thereto), or, alternatively, directing the Examiner to publicly file those portions of the Report and the Exhibits that the Court may deem appropriate.

## VI.

## BASIS FOR RELIEF

45.    There exists a strong presumption under the common law that the public has a right of access to judicial proceedings and records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (citations omitted). Section 107 of the Bankruptcy Code codifies this common law presumption. *See* 11 U.S.C. § 107(a) ("Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge."); *see also In re Joyce*, 399 B.R. 382, 386 n.2 (Bankr. D. Del. 2009) (Walsh, J.) ("[Section] 107 specifically addresses the public's access to judicial records, thereby codifying the public's broad common law right to access judicial records."); *In re PRS Ins. Group, Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001) (Walrath, J.) (holding "[t]he Bankruptcy Code is designed to bring the Debtor's affairs to light, not to hide them," and thus denying motion to seal document under section 107 of the Bankruptcy Code).

46.     This presumption of public access applies with equal force to the reports of examiners. *See, e.g., Gitto v. Worcester Tel. & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 17 (1st Cir. 2005) (holding examiner's report should be made publicly available); *In re Fibermark, Inc.*, 330 B.R. 480, 512 (Bankr. D. Vt. 2005) (granting motion to unseal examiner's report).

47.     Bankruptcy Code section 107(a)'s presumption of public access is subject to the limited exceptions set forth in section 107(b) as follows:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
> 1.    protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> 2.    protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b) (2006).

48.     For information to be entitled to protection under section 107(b)(1), the Court must conclude that "disclosure of [the] information [must] reasonably be expected to cause the entity commercial injury." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (quoting *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004)). In addition, the Court must find that the information "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *In re Alterra Healthcare Corp.*, 353 B.R. at 75-76 (citing *In re Barney's, Inc.*, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996)).

49.     With respect to section 107(b)(2), information may be considered "scandalous or defamatory" if the information could cause "a reasonable person to alter their opinion of [a party] based on the statements therein, taking those statements in the context in which they

appear." *E.g., Phar-Mor, Inc. v. Defs. Named Under Seal*, 191 B.R. 675, 679-80 (Bankr. N.D. Ohio 1995); *see also In re Food Mgmt. Group, LLC*, 359 B.R. 543, 558 n.16 (Bankr. S.D.N.Y. 2007) (stating that "scandalous" matter "generally means 'any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" (citing 2 James W.M. Moore et al., Moore's Federal Practice § 12.37[3] (3d ed. 2006))). Information that is true and already "of public record" is not scandalous or defamatory under section 107(b). *United States v. Continental Airlines, Inc. (In re Continental Airlines)*, 150 B.R. 334, 339 (Bankr. D. Del. 1993); *In re Food Mgmt. Group, LLC*, 359 B.R. at 560. Additionally, the fact that information is prejudicial, embarrassing, or harmful to reputation is insufficient to overcome the strong public policy interest in ensuring public access to records. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179-80 (6th Cir. 1983) (finding that harm to company's reputation was insufficient to warrant sealing of records); *In re Gitto/Global Corp.*, 321 B.R. 367, 376 (Bankr. D. Mass. 2005) ("Discomfort, embarrassment, shame, and remorse do not rise to the level of scandalous or defamatory."); *In re Analytical Systems, Inc.*, 83 B.R. 833, 836 (Bankr. N.D. Ga. 1987) (declining to apply exceptions under section 107(b) where record only supported a finding of possible embarrassment).

50.    In demonstrating that an exception applies under Bankruptcy Code section 107(b), the sealing proponent bears the burden of proof in showing that the interest in secrecy outweighs the presumption in favor of access. *E.g., In re Food Mgmt. Group, LLC*, 359 B.R. at 561; *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006) (rejecting arguments asserted by debtor that sought to maintain confidentiality of settlement agreements under section 107(b)).

51.    Bankruptcy Rule 9018 sets forth the procedures by which a party may move for relief under Bankruptcy Code section 107(b), and provides that:

> [o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information [or] (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code . . . .

Bankruptcy Rule 9018.

52.    The Examiner submits that good cause exists for this Court to immediately authorize the Examiner to file under seal the entire unredacted Report and the Alleged Confidential Materials and, if the Court so directs, all of the Exhibits referenced in the Report. Absent such relief, and in light of the various claims of confidentiality, the Examiner would not be able to file an unredacted Report without violating the confidentiality provisions of the Document Depository Order.

53.    The Examiner also requests that at the omnibus hearing currently scheduled for 1:00 p.m. on August 9, 2010, the Court overrule the various claims of confidentiality. At the hearing on this Motion, the Examiner will be prepared to respond to questions or concerns from the Court as to how a particular document or information may relate to the Investigation and/or the Report. Prior to the hearing on the Motion, the Examiner and his professionals will continue to work with the parties to attempt to narrow the scope of the documents and information alleged to be confidential. By filing the Alleged Confidential Materials under seal, the Court can review such materials in camera for purposes of considering the parties' claims of confidentiality.

54.    A process similar to that set forth in this Motion was utilized by the court presiding over the examiner investigation in *In re Lehman Brothers Holdings, Inc., et al. See Order to Establish a Procedure to Unseal the Examiner's Report, to Establish a Briefing*

*Schedule to Resolve Remaining Confidentiality Issues, and to Establish a Procedure to Provide Access to Documents Cited in the Examiner's Report.*, Case No. 08-13555 (JMP), in *In re Lehman Brothers Holdings, Inc., et al.* (Bankr. S.D.N.Y. March 11, 2010), attached hereto at **Exhibit "H."**

55.     Following the Court's ruling on the Motion, the Court may direct the Examiner to publicly file those portions of the Report and the Exhibits (including the Transcripts and exhibits thereto) that the Court deems appropriate.

## VII.

## NOTICE

56.     This Motion is being served on the Parties, the Non-Party Producing Entities, the non-Party interviewees or their counsel, as well as such other parties as may be entitled to notice of papers filed in these cases.

## VIII.

## NO PRIOR REQUESTS

57.     The Examiner has not previously sought the relief that is requested in this Motion.

## IX.

## CONCLUSION

58.     Based upon all of the foregoing, the Examiner respectfully requests that the Court enter an order: (i) temporarily authorizing the Examiner to file the entire Report and the Alleged Confidential Materials under seal; and (ii) overruling the various claims of confidentiality.

Dated: July 23, 2010

Respectfully Submitted,

KLEE TUCHIN BOGDANOFF & STERN LLP

Lee R. Bogdanoff (CA. Bar No. 119542)
Martin R. Barash (CA Bar No. 162314)
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067-6059
Telephone (310) 407-4000
Facsimile (305) 407-9090

*Counsel to the Examiner*

            and

SAUL EWING LLP


Mark Minuti (Bar No. 2659)
Michael J. Farnan (Bar No. 5165)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone:  (302) 421-6840
Facsimile:  (302) 421-5873
Email: mminuti@saul.com

*Delaware Counsel to the Examiner*