## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date:** August 9, 2010 @ 1:00 p.m.<br>**Objection Deadline:** August 2, 2010 @ 4:00 p.m. |

## MOTION OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., FOR ORDER (I) DISCHARGING EXAMINER; (II) GRANTING RELIEF FROM THIRD-PARTY DISCOVERY; (III) APPROVING THE DISPOSITION OF CERTAIN DOCUMENTS AND INFORMATION; AND (IV) GRANTING CERTAIN ANCILLARY RELIEF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FОИ/М Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Kenneth N. Klee, Esq., the examiner (the "Examiner") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Tribune Company and its affiliates (collectively, the "Debtors"), by and through his undersigned counsel, respectfully moves the Court for the entry of an order: (1) discharging the Examiner; (2) granting the Examiner and his Professionals (as defined below) relief from third-party discovery; (3) authorizing the disposition of the non-confidential documents comprising the Investigative Record (as defined below); (4) exculpating the Examiner and his Professionals in connection with the Investigation (as defined below) and the Report; (5) approving a procedure for the filing and consideration of final fee applications of the Examiner and his Professionals; and (6) authorizing and directing the reimbursement of the reasonable fees and costs incurred by the Examiner and his Professionals in the future circumstances described herein. In support of this motion (the "Motion"), the Examiner shows as follows:

## I.

## STATUS OF CASE AND JURISDICTION

1.    On December 8, 2008, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On December 10, 2008, the Court entered an order providing for the joint administration of the Chapter 11 Cases.

2.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The statutory predicates for the

relief requested herein are sections 105(a) and 1106(b) of the Bankruptcy Code.

## II.

## BACKGROUND

**A.**    **The Appointment of the Examiner.**

4.    On January 13, 2010, Wilmington Trust Company ("WTC") filed its Motion for

Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code.  On April 20,

2010, the Court entered the Agreed Order Directing the Appointment of Examiner (the

"Examiner Order"), directing the United States Trustee to appoint an examiner in these cases

pursuant to Bankruptcy Code section 1104(c)(1).

5.    Pursuant to the Examiner Order, the Examiner is directed to conduct an

investigation (as defined therein, "Investigation") and prepare the Report in respect thereof,

evaluating the following (all as more particularly described in the Examiner Order) asserted by

certain designated parties (the "Parties"): (i) potential claims, causes of action, and defenses

asserted in respect of the leveraged buy-out of Tribune that occurred in 2007; (ii) whether WTC

violated the automatic stay by filing the complaint in Adversary Proceeding No. 10-50732; and

(iii) the assertions and defenses made in connection with a certain motion of JPMorgan Chase

Bank, N.A. for sanctions against WTC based on the alleged disclosure of confidential

information.

6.    On April 30, 2010, the United States Trustee filed her *Notice of Appointment of

Examiner* [Docket No. 4212], appointing Kenneth N. Klee, Esq. as the Examiner, subject to

Court approval.  Contemporaneously therewith, the United States Trustee filed her *Application of

the United States Trustee for Order Approving Appointment of Examiner* [Docket No. 4213].

7.      On May 7, 2010, the Examiner filed the *Work And Expense Plan Of Examiner-Designate Kenneth N. Klee, Esq.* [Docket No. 4261] ("Work Plan").  On May 10, 2010, the Court held a status conference regarding the appointment of the Examiner and the adoption of his Work Plan.

8.      On May 11, 2010, the Court entered its Order Approving Appointment of Examiner [Docket No. 4320] and its Order Approving Work And Expense Plan And Modifying Examiner Order [Docket No. 4321].

9.      By orders dated May 19, 2010 [Docket Nos. 4498-4500], the Court authorized the Examiner to employ, *nunc pro tunc* to April 30, 2010, the law firms of Klee, Tuchin, Bogdanoff & Stern LLP and Saul Ewing LLP as his counsel, and LECG, LLC as his financial advisor (collectively, the "Professionals").

10.     On June 16, 2010, the Examiner filed the *Supplement Re Examiner's Work and Expense Plan of Court-Appointed Examiner, Kenneth N. Klee* [Docket No. 4794], wherein the Examiner reported, among other things, that the Investigation was requiring more work on the part of the Examiner and his Professionals than contemplated prior to the beginning of the Investigation.

11.     On June 23, 2010, the Examiner filed the *Motion of Court-Appointed Examiner Kenneth N. Klee, Esq., for Extension of Report Deadline* [Docket No. 4858] (the "Extension Motion").  By Order dated July 1, 2010 [Docket No. 4928], the Court, *inter alia*, approved the Extension Motion, as modified, and extended the deadline for the Examiner to file his report until 11:59 p.m. on July 26, 2010 (the "Deadline").

**B.**     **The Investigation.**

12.     The Examiner began his investigation in early May and will be filing the Report by the Deadline. The Investigation relates to a series of transactions involving billions of dollars, potential claims against numerous parties, intricate financial analyses, and other factual matters as to which the parties have substantial disagreements, and a lengthy list of wide-ranging legal claims, defenses, and issues arising under state and federal law.

13.     In connection with the Investigation, the Examiner and his Professionals have reviewed and analyzed thousands of documents. In addition, the Examiner and his Professionals conducted numerous interviews.

14.     Prior to the appointment of the Examiner, on information and belief, the Official Committee of Unsecured Creditors (the "Committee") obtained certain documents and information in connection with the Committee's investigation of certain claims and causes of action, subject to the preservation of any claims of confidentiality.

15.     On December 12, 2009, the Court entered the Order (I) Authorizing the Debtors to Establish a Document Depository and Directing the Committee to Deliver Certain Documents to the Depository Pursuant to Federal Rule of Bankruptcy Procedure 2004 and (II) Establishing Settlement Protections Pursuant to 11 U.S.C. § 105(a) [Docket No. 2858] (the "Document Depository Order"), authorizing the Debtors to establish and maintain a document depository (the "Document Depository") to store the documents and information provided to the Committee or other parties in these cases, and to provide the Negotiating Parties (as that term is defined in the foregoing order) with access to the Document Depository, subject to the preservation of any claims of confidentiality.

16.     As of mid-July, almost 4.3 million pages of documents have been produced and "deposited" in the Document Depository.  Unbeknownst to the Examiner at the outset of the Investigation, the "Document Depository" created by the Parties was not a single, electronic database containing the documents produced to date, but rather a collection of over 150 compact discs containing documents produced by various parties in connection with the Chapter 11 Cases, in a variety of electronic formats.  The Document Depository contains no organizing map or electronic index.

17.     As contemplated by paragraph 11 of the Examiner Order, the Examiner and his professionals were granted access to the documents in the Document Depository (*i.e.,* received a copy of the disks containing electronic copies of those documents), and used these documents in connection with the Investigation and the preparation of the Report.  In addition to the documents in the Document Depository, the Examiner obtained documents and information directly from certain parties, which, in many cases, were produced to the Examiner subject to claims of confidentiality.  The Examiner and his professionals have complied with the confidentiality obligations associated with the documents to which they have been provided access.

18.     The documents and information accumulated by the Examiner and his Professionals during the course of the Investigation fall into the following four categories: (1) the documents obtained from the Document Depository (the "Depository Documents"), (2) the documents obtained by the Examiner and his Professionals directly from third parties (the "Third-Party Documents"); (3) professionally transcribed, sworn transcripts of witness interviews (the "Transcripts"); and (4) documents created or compiled by the Examiner and his Professionals that are protected by the attorney-client privilege and/or the work product doctrine

(the "Privileged Materials").  The Privileged Materials include internal correspondence and communications, legal and financial analysis, witness interview notes and drafts of the Report.

19.    In the footnotes thereto, the Report identifies, refers to, and discusses the numerous Depository Documents, Third Party Documents and Transcripts on which the Report relies.  (The Depository Documents and Third Party Documents referenced therein comprise the "Exhibits" to the Report.  The Depository Documents, Third Party Documents and Transcripts that are cited in the Report are hereinafter referred to as the "Investigative Record.")

20.    As a result of assertions of confidentiality by certain Parties and other entities, the Examiner expects to publicly file a redacted Report on the Deadline with a motion seeking the entry of an order (a) authorizing the Examiner to file the entire Report and certain documents under seal; and (b) overruling the various claims of confidentiality as to the Exhibits, certain Transcripts (or portions thereof), and certain information contained in the Report.

21.    Subject to the Court's rulings on the various claims of confidentiality, the Examiner believes that the Report and the Investigative Record should be made available to the public as expeditiously as possible.

## III.

### RELIEF REQUESTED

22.    By this Motion, the Examiner seeks the entry of an order discharging him from his duties under the Examiner Order and granting him and his Professionals additional relief as is customary and appropriate in these circumstances.  The specific relief sought by the Examiner is detailed below.

A.    **Discharge.**

23.    The Examiner seeks an order of the Court discharging him from any commitments or representations with respect to his duties as Examiner. As discussed above, as of the date of the hearing on this Motion, the Examiner will have filed the Report. Therefore, the Examiner will have completed the duties mandated by this Court's Examiner Order, and the Examiner requests that he be discharged as Examiner as of the date of entry of the order granting the Motion.

B.    **Relief from Third-Party Discovery.**

24.    It is possible that the Examiner will receive requests from third parties for all or portions of the Investigative Record, Privileged Materials, or other Depository Documents or Third Party Documents that were obtained by the Examiner or his Professionals but not cited in the Report. It is also possible that third parties will seek testimony from the Examiner or his Professionals. As set forth below, the Examiner respectfully requests that this Court issue an order prohibiting and enjoining such third-party discovery.

25.    As recognized by this Court, "[t]he Examiner performs his duties at the request of the court, for the benefit of the debtor, its creditors and shareholders, and not to 'fuel the litigation fires of third party litigants.'" *In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del 2009) (quoting *In re Baldwin United Corp.*, 46 B.R. 314, 316 (Bankr. S.D. Ohio 1985)). For these reasons, courts have prohibited third-party discovery of examiners' records. *See In re Baldwin United Corp.*, 46 B.R. at 317; *see also Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs)*, 156 B.R. 414, 435 (S.D.N.Y. 1993) (upholding bankruptcy court's denial of request by union for access to the record

supporting the examiner's report and stating that the "public interest is in the Report and the Examiner's conclusions, not in the Record upon [sic] the conclusions are based").

26.     Other courts, including this Court, have entered orders precluding third parties from pursuing discovery against examiners and their professionals, absent specific extraordinary circumstances. *See Order Discharging Examiner and Granting Related Relief,* in *In re Lehman Brothers Holdings, Inc., et al.*, Case No. 08-13555(JMP) (Bankr. S.D.N.Y. July 13, 2010), attached hereto as **Exhibit "A;"** *see also Order Discharging Michael J. Missal as Examiner and Granting Related Relief,* in *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D Del. May 1, 2009), attached hereto as **Exhibit "B;"** *Order Granting in Part the Examiner's Motion for Entry of an Order Regarding Certain Procedural Issues in Connection with the Termination of the Examination of Semcrude, LP., et al.*, in *In re Semcrude, L.P., et al.*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 27, 2009), attached hereto as **Exhibit "C;"** *Orders Granting Motion of Neal Batson, the Enron Corp Examiner, with Respect to Certain Procedural Issues in Connection with the Termination of the Enron Corp. Examination,* in *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Dec. 17, 2003, Feb. 19, 2004, Oct. 5, 2004), attached hereto at **Exhibit "D;"** *Order Discharging Examiner and Establishing Related Procedures,* in *In re Refco Inc., et al.*, Case No. 05-6006 (RDD) (Bankr. S.D.N.Y. Aug. 16, 2007), attached hereto as **Exhibit "E."**

27.     Consistent with the holdings in the cases set forth above, the Examiner respectfully requests that the Court issue an order precluding any third party from issuing or serving upon the Examiner or his Professionals any formal or informal discovery request relating to the Report, the Investigation, the Investigative Record, Privileged Materials, or any other documents that were obtained by the Examiner or his Professionals, but not cited in the Report,

including, but not limited to, any request for production of documents, requests for admissions, interrogatories, subpoenas *duces tecum*, trial subpoenas, requests for testimony, or any other discovery of any kind related to the Report, the Investigation or the Debtors' Chapter 11 Cases. This prohibition, however, shall not apply to requests for documents that the third party demonstrates it cannot obtain from any other source as long as such production does not violate any protective or other order of this Court or seek the production of Privileged Materials.

**C.    Disposition of the Investigative Record.**

28.    To reduce, and hopefully eliminate, the possibility of third-party discovery requests of the Examiner and his Professionals, subject to the Court's rulings on confidentiality, the Examiner respectfully requests that this Court authorize the Examiner to transfer the Report (redacted as necessary to comply with the Court's orders regarding confidentiality) and the non-confidential documents comprising the Investigative Record to Epiq Bankruptcy Solutions, LLC ("Epiq"), or such other entity as the Court determines is appropriate, with the direction that Epiq (or such other designated entity) maintain such documents at the Debtors' sole expense and provide the Parties and the public access thereto, as directed by the Court. Epiq currently is serving as the Debtors' claims agent in these cases.

29.    The Examiner's Professionals have discussed this matter with Epiq, and the Examiner understands that Epiq is capable of storing the Report and the Investigative Record and providing access thereto, subject to its normal and customary fees for doing so. A similar procedure was suggested by the examiner in the *In re Lehman Brothers Holding, Inc.* case and was ultimately adopted by that court. *See Order Discharging Examiner and Granting Related Relief*, in *In re Lehman Brothers Holdings, Inc., et al.*, Case No. 08-13555(JMP) (Bankr. S.D.N.Y. July 13, 2010), attached hereto as **Exhibit "A."**

30.    In addition, subject to resolution of confidentiality issues regarding the Report and the Exhibits, the Examiner requests that the Court authorize Epiq, or such other entity as the Court determines is appropriate, to maintain and make available the Report (redacted, as necessary, to conform to the Court's rulings on confidentiality), and those portions of the Investigate Record that are not confidential, on a web page generally available to the public.

**D.    Exculpation of the Examiner and His Professionals.**

31.    The Examiner further requests the entry of an order exculpating the Examiner and his Professionals in connection with the Investigation and the Report.

32.    As discussed above, an examiner "constitutes a court fiduciary and is amenable to no other purpose or interested party." *In re Baldwin United Corp.*, 46 B.R. at 316 (quoting *In re Hamiel & Sons, Inc.*, 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982)).  Accordingly, a bankruptcy examiner is "considered a quasi-judicial officer similar to a trustee, receiver, referee, conservator, special master, magistrate or prosecutor—and thus is protected by absolute immunity." *Kovalesky v. Carpenter*, No. 95 CIV. 3700 (SAS), 1997 WL 630144, at *4 (S.D.N.Y Oct. 9, 1997); *see also In re Baldwin United Corp.*, 46 B.R. at 317 (stating that a bankruptcy examiner "is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases").

33.    For these reasons, courts have granted exculpation to examiners and their professionals in similar circumstances. *See Order Discharging Examiner and Granting Related Relief, in In re Lehman Brothers Holdings, Inc., et al.*, Case No. 08-13555(JMP) (Bankr. S.D.N.Y. July 13, 2010), attached hereto as **Exhibit "A;"** *see also Order Discharging Michael J. Missal as Examiner and Granting Related Relief, In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (Bankr. D Del. May 1, 2009), attached hereto as **Exhibit "B;"** *Order Granting in*

*Part the Examiner's Motion for Entry of an Order Regarding Certain Procedural Issues in Connection with the Termination of the Examination of Semcrude, LP., et al.*, in *In re Semcrude, L.P., et al.*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 27, 2009), attached hereto as **Exhibit "C;"** *Orders Granting Motion of Neal Batson, the Enron Corp Examiner, with Respect to Certain Procedural Issues in Connection with the Termination of the Enron Corp. Examination,* in *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Dec. 17, 2003, Feb. 19, 2004, Oct. 5, 2004,) attached hereto at **Exhibit "D;"** *Order Discharging Examiner and Establishing Related Procedures,* in *In re Refco Inc., et al.*, Case No. 05-6006 (RDD) (Bankr. S.D.N.Y. Aug. 16, 2007), attached hereto as **Exhibit "E."**

34.     Exculpation of the Examiner and his Professionals in these cases is necessary to avoid wasteful and collateral litigation regarding the Report and the Investigation. Accordingly, the Examiner respectfully requests that any order granting this Motion provide that neither the Examiner nor his Professionals shall have any liability with respect to any act or omission, statement or representation arising out of, relating to, or involving in any way, the Investigation, the Report, or any pleading or other writing filed by the Examiner or his Professionals in connection with the Debtors' Chapter 11 Cases. To be clear, the exculpation and immunity for the Examiner and his Professionals should extend to all acts of the Examiner and his Professionals in connection with the Debtors' Chapter 11 Cases, even after the Report is filed. Of course, any exculpation for the Examiner and his Professionals should not limit the liability of the Examiner or his Professionals for their violation of any applicable disciplinary rule or rule of professional conduct or for any acts of willful misconduct or gross negligence.

**E.**    **Approval of Final Fee Applications of the Examiner and His Professionals.**

35.    The Examiner also respectfully requests that the Court establish a procedure for the filing and consideration of final fee applications to be filed by the Examiner and his Professionals. Specifically, the Examiner requests that the Court set August 31, 2010 as the deadline for the filing of final fee applications, with objections, if any, to be served and filed on or before September 21, 2010. The Examiner further requests that the Court schedule a hearing on such final fee applications at a date and time convenient to the Court, but in no event later than forty-five (45) calendar days from the date such applications are filed.

36.    Finally, the Examiner seeks approval for the reimbursement of the reasonable fees and actual expenses incurred by the Examiner and his Professionals in connection with: (1) disposing of the Investigative Record pursuant to the procedures contemplated herein; (2) responding to any formal or informal discovery requests to the extent that such request are served upon the Examiner or the Examiner's Professionals, notwithstanding the prohibitions established by the Court regarding such discovery; (3) the preparation and prosecution of interim and final fee applications; and (4) such other actions undertaken by the Examiner and his Professionals at the request or direction of the Court. To the extent that the Examiner and his Professionals incur reasonable fees or costs in connection with these matters subsequent to the time period covered by their final fee applications, the Examiner would request that the Debtors be authorized and directed to pay or reimburse the Examiner and his Professionals for such fees and costs without the need for Court approval.

## IV.

## NOTICE

37.     This Motion is being served on the Parties, the producers of the Third-Party Documents or their counsel, the non-Party interviewees or their counsel, as well as such other parties as may be entitled to notice of papers filed in these cases.

## V.

## NO PRIOR REQUESTS

38.     The Examiner has not previously sought the relief that is requested in this Motion.

## VI.

## CONCLUSION

Based upon all of the foregoing, the Examiner respectfully requests that the Court enter an order: (1) discharging the Examiner; (2) granting the Examiner and his Professionals relief from third-party discovery; (3) authorizing the disposition of the Investigative Record; (4) exculpating the Examiner and his Professionals in connection with the Investigation and the Report; (5) approving a procedure for the filing and consideration of final fee applications of the Examiner's Professionals; and (6) authorizing the reimbursement of the reasonable fees and costs incurred by the Examiner and his Professionals in the future circumstances described above.

Dated: July 23, 2010                    Respectfully Submitted,


                                        KLEE TUCHIN BOGDANOFF & STERN LLP

                                        Lee R. Bogdanoff (CA. Bar No. 119542)
                                        Martin R. Barash (CA Bar No. 162314)
                                        1999 Avenue of the Stars, 39th Floor
                                        Los Angeles, CA 90067-6059
                                        Telephone (310) 407-4000
                                        Facsimile (305) 407-9090

                                        *Counsel to the Examiner*

                                                and

                                        SAUL EWING LLP

                                        Mark Minuti (Bar No. 2659)
                                        Michael J. Farnan (Bar No. 5165)
                                        222 Delaware Avenue, Suite 1200
                                        P.O. Box 1266
                                        Wilmington, DE 19899
                                        Telephone: (302) 421-6840
                                        Facsimile: (302) 421-5873
                                        Email: mminuti@saul.com

                                        *Delaware Counsel to the Examiner*