**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------- x    Chapter 11
In re:                                                       :
                                                             :    Case No. 08-13141 (KJC)
TRIBUNE COMPANY, et al.,                                     :
                                                             :    Jointly Administered
                          Debtors.                           :
                                                             :    Objections Due: August 16, 2010
                                                             :    @ 4:00 p.m.(ET)
----------------------------------------------------------- x    Hearing Date: N/A

**EIGHTEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS
CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
<u>JUNE 1, 2010 THROUGH JUNE 30, 2010</u>**

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, <u>nunc pro tunc</u> to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | June 1, 2010 through June 30, 2010 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $982,595.20    (80% of $1,228,244.00) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $63,110.06 |

This is a(n):    <u>  x  </u> Monthly          _____ Interim          _____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |

**TRIBUNE COMPANY, et al.**

**SUMMARY OF HOURS**

<u>June 1, 2010 through June 30, 2010</u>

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2010 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $965 | 123.30 | $118,984.50 |
| Richard Leder (1988) | Tax | 1962 (NY) | 965 | 2.50 | 2,412.50 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 855 | 34.50 | 29,497.50 |
| Marc A. Alpert (1995) | Corporate | 1987 (NY) | 825 | 32.10 | 26,482.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 825 | 82.10 | 67,732.50 |
| N. Theodore Zink, Jr. (1997) | Bankruptcy & Financial Restructuring | 1984 (MS) 1991 (IL) 1996 (NY) | 795 | 119.40 | 94,923.00 |
| Robert Schwinger (1994) | Litigation | 1985 (NY) | 785 | 2.60 | 2,041.00 |
| Edouard S. Markson (2007) | Tax | 1997 (NY) | 765 | 0.60 | 459.00 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 695 | 105.70 | 73,461.50 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 650 | 1.30 | 845.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 645 | 213.70 | 137,836.50 |
| Francisco Vazquez | Bankruptcy and Financial Restructuring | 1995 (NJ) 1996 (NY) | 625 | 119.00 | $74,375.00 |
| James A. Stenger | Communications and Technology | 1978 (DC) | 495 | 75.90 | 37,570.50 |
| | | | | | |

| **Associate:** | | | | | |
|---|---|---|---|---|---|
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 625 | 7.70 | 4,812.50 |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 595 | 150.00 | 89,250.00 |
| Kimberly Giuliano | Intellectual Property | 2005 (NY) | 595 | 9.80 | 5,831.00 |
| Elizabeth M. Miller | Real Estate | 1989 (CA) 1996 (DC) 1997 (NY) | 595 | 16.00 | 9,520.00 |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 595 | 178.30 | 106,088.50 |
| Paul Tanck | Corporate | 2005 (NY) | 595 | 8.00 | 4,760.00 |
| Benjamin Carson | Corporate | 2008 (NY) | 475 | 14.40 | 6,840.00 |
| Robert Kirby | Litigation | 2008 (NY) | 475 | 49.70 | 23,607.50 |
| Blake Betheil | Tax | 2009 (NY) | 405 | 8.00 | 3,240.00 |
| Adrienne Duffy | Corporate | 2009 (NY) | 405 | 16.20 | 6,561.00 |
| Bonnie Dye | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 41.20 | 16,686.00 |
| Alison Kronstadt | Corporate | 2009 (NY) | 405 | 13.20 | 5,346.00 |
| Faryal Malik | Corporate | 2007 (NJ) 2008 (NY) | 405 | 73.10 | 29,605.50 |
| Francesca Perkins | Litigation | 2009 (NY) | 405 | 105.30 | 42,646.50 |
| Megan Strand | Communications and Technology | 2009 (NY) | 405 | 46.90 | 18,994.50 |
| Matthew Weinbaum | Project Finance | 2009 (NY) | 405 | 3.40 | 1,377.00 |
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 28.70 | 11,623.50 |
| Kimberly Zafran | Litigation | 2009 (NY) | 405 | 118.80 | 48,114.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | JD-2009 | 355 | 64.90 | 23,039.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 355 | 150.10 | 53,285.50 |
| | | | | | |

| **Law Clerks:** | | | | | |
|---|---|---|---|---|---|
| Lauren Bressack | n/a | n/a | 250 | 11.80 | 2,950.00 |
| Lindsay MacLeod | n/a | n/a | 250 | 28.10 | 7,025.00 |
| Coleman Miller | n/a | n/a | 250 | 4.70 | 1,175.00 |
| Justin Schenck | n/a | n/a | 250 | 6.00 | 1,500.00 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| Lori Moloney | Litigation | n/a | 305 | 13.00 | 3,965.00 |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 270 | 49.10 | 13,257.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 270 | 20.70 | 5,589.00 |
| Ellen Weissman | Litigation | n/a | 250 | 3.50 | 875.00 |
| Marisa Iacopelli | Litigation | n/a | 240 | 41.30 | 9,912.00 |
| Wale Bakare | Litigation | n/a | 230 | 5.10 | 1,173.00 |
| Jason Lopez | Litigation | n/a | 215 | 4.60 | 989.00 |
| Aram Hanessian | Bankruptcy & Financial Restructuring | n/a | 185 | 7.70 | 1,424.50 |
| | | | | | |
| **Librarian:** | | | | | |
| Barbara Schubeck | n/a | n/a | 200 | 2.80 | 560.00 |
| | | | | | |
| **TOTAL:** | | | | **2,214.80** | **$1,228,244.00** |

BLENDED RATE:     $554.50

_____

\* Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:

TRIBUNE COMPANY, et al.,

        Debtors.

------------------------------------------------------- x

Chapter 11

Case No. 08-13141 (KJC)

Jointly Administered

Objections Due: August 16, 2010
@ 4:00 p.m.(ET)
Hearing Date: N/A

### EIGHTEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JUNE 1, 2010 THROUGH JUNE 30, 2010

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the

"Debtors"), hereby submits this Application (the "Application") for approval and allowance of

compensation for services rendered in the amount of $1,228,244.00 (80% of which equals

$982,595.20) and reimbursement of expenses incurred in the amount of $63,110.06 during the

period commencing June 1, 2010 through and including June 30, 2010 (the "Application

Period").  This Application is submitted pursuant to sections 330 and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals and Committee Members

Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order").  In support of the

Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for relief requested herein are Sections 105(a), 330, 331 and 1103(a) of the Bankruptcy Code.

## BACKGROUND

3.       On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

4.       The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       On December 18, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

6.       On February 20, 2009, the Bankruptcy Court authorized the employment and retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.       On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth N. Klee, Esquire as Examiner in these Chapter 11 cases.

## COMPENSATION PAID AND ITS SOURCES

8.     All services for which compensation is requested by Chabourne were performed for or on behalf of the Committee.

9.     During the Application Period, Chadbourne has received no payment and no promise of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Chadbourne and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

10.     The fee statement for the Application Period is attached hereto as Exhibit A.  This statement contains daily time logs describing the time spent by each attorney and paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2, and the Compensation Order.

## SUMMARY OF SERVICES

11.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees incurred by Chadbourne during the Application Period total $1,228,244.00.  The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

3

12.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.     Bankruptcy General (Matter 002)**

Fees: $20,784.50        Total Hours:   46.90

13.     During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

14.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**     **Committee Meetings (Matter 003)**

Fees: $44,811.00          Total Hours:    73.30

15.     Regular and special meetings of the Committee (the "Committee Meetings") were held during the Application Period and generally occurred weekly, either by telephone conference or in person, to review the Debtors' operational initiatives, the Debtors' finances, pending motions, plan and confirmation issues, the LBO/ESOP investigation and related issues, options related to the Debtors' assets, tax issues and numerous other issues regarding the administration of the Debtors' cases.  Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' cases.  Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings.  Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting all meeting minutes.

**C.**     **Creditor Communications (Matter 004)**

Fees: $3,399.50          Total Hours:    5.10

16.     Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to correspondence and other inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.    Business Operations (Matter 007)**

Fees: $112,082.00          Total Hours:    205.80

17.    During the Application Period, attorneys from Chadbourne continued to devote time on the potential Food Network transaction between a Tribune affiliate and Scripps Networks.  Attorneys from Chadbourne's corporate group continued to review and analyze the transaction documents and participated in discussions with Debtors' counsel to negotiate certain amendments to the underlying partnership agreement.  Further, Chadbourne summarized the progress of the transaction in a written report to the Committee.

18.    During the Application Period, petitions to deny were filed by several parties in response to the Tribune FCC applications.  Professionals from Chadbourne's Communications and Technology Group and Bankruptcy Group expended time reviewing the relief requested in the petitions and performing legal research on issues raised in the objections.  Chadbourne summarized its research and recommendations in a report the Committee and, as a result, prepared and filed a brief in support of Tribune's FCC Applications and its opposition to the petitions to deny.

19.    Finally, Chadbourne attorneys continued to review and monitor issues involving the Debtors' day-to-day business operations.  This included the review of weekly operations and financial reports prepared by the Committee's financial advisors.

E.    **Claims Administration/Bar Date (Matter 009)**

Fees:  $41,055.00          Total Hours:  81.70

20.    During the Application Period, Chadbourne continued to expend efforts in connection with the claims process.  Efforts included reviewing the Debtors' thirty-second omnibus objection to claims.  Chadbourne reviewed and evaluated the relief requested in the motion as well as the bases and processes followed by the Debtors in pursuing the objections and summarized its review in a written report to the Committee.  During this time, Chadbourne also reviewed the proposed settlement of certain disputed employment termination-related claims and followed up with Debtors' counsel regarding the proposed settlement of same.

21.    Chadbourne professionals were further engaged in the review of the Debtors' motion to settle claims and obligations with Morgan Stanley Capital Services arising out of certain swap agreements, debentures and a dispute over advisor services.  Efforts included research and analysis on the contractual issues and participation in discussions with Debtors' counsel on issues raised from the research.  Subsequently, Chadbourne summarized is analysis and recommendations in a written report to the Committee.

22.    During the Application Period, Chadbourne expended further efforts addressing a motion filed by Wilmington Trust Company for allowance of it claim for attorneys' fees in connection with plan confirmation.  Chadbourne reviewed and analyzed the relief requested in the motion and performed related legal research in connection therewith.  Subsequently, Chadbourne summarized its research and recommendations to the Committee.

**F.**     **Fee/Retention Applications (Matter 010)**

Fees: $13,727.00          Total Hours:   35.10

23.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing its seventeenth monthly fee application.  In addition, Chadbourne reviewed the quarterly fee applications filed for all professionals for the interim period ended February 28, 2010 and prepared a summary report for review by the Committee.

24.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.**     **Plan and Disclosure Statement (Matter 011)**

Fees: $251,153.50          Total Hours:   402.40

25.     During the Application Period, Chadbourne professionals were actively engaged in preparing for the hearing on confirmation of the plan.  In an effort to consider and analyze confirmation standards and possible issues that may arise with respect to the confirmation of the plan, Chadbourne continued to review and analyze the plan and disclosure statement, reviewed issues raised in the various objections to the disclosure statement and in other court papers, analyzed hearing transcripts and performed comprehensive legal research on a myriad of issues. For example, Chadbourne reviewed and analyzed potential challenges to the plan that various creditor constituencies may assert.  In addition, Chadbourne continued to research settlement

standards and consider possible objections to the global settlement embodied in the plan. Throughout this process, Chadbourne's team of professionals continued to discuss the various issues raised by its research and participated in frequent discussions with Debtors' counsel.

26.    During this time, the Examiner in these Chapter 11 cases filed a motion to extend the delivery date of the Examiner's report by an additional two weeks, which was granted by the Court on July 1, 2010.  Therefore, the Debtors, with the Committee's support, rescheduled the confirmation hearing and most other confirmation related deadlines (the deadlines were keyed to the expected filing of the Examiner's Report on or about July 12, 2010).  Accordingly, the confirmation hearing is currently scheduled to begin two weeks later, on August 30, 2010.  All other deadlines were extended by two weeks except for the voting deadline, which was adjourned by only one week.

27.    During this time, Chadbourne professionals also began research and development on alternative steps that the Committee might take in the event the proposed plan of reorganization was not confirmed.  These analyses were deemed necessary given the number of objections to the plan that were being prosecuted by different parties and the fact that the Debtors' exclusivity is to terminate soon, August 8, 2010.  Ultimately, an initial outline of options was presented to the Committee.  To ensure the Committee fulfilled its obligations, the Committee requested that Chadbourne continue with alternative planning and preparation.

**H.**     **Executory Contracts (Matter 012)**

Fees:  $2,020.00        Total Hours:     6.40

28.     During the Application Period, the Debtors continued the ongoing process of seeking approval to assume and/or reject certain leases and contracts.  Accordingly, Chadbourne attorneys prepared a summation for review by the Committee of its analysis of the Debtors' motion to approve the assumption of certain syndicated program agreements with Carsey-Werner Distribution in order to ensure the assumption is favorable to the Debtors' estates.

**I.**     **Employee Issues (Matter 014)**

Fees:  $30,619.00        Total Hours:     52.90

29.     During the Application Period, Chadbourne attorneys continued to be engaged in the Debtors' request to continue its Management Incentive Plan (the "2010 MIP") for certain management employees and top executives.  Efforts included analysis of the Debtors' motion for approval of the 2010 MIP and related documentation.  Chadbourne consulted with the Committee's financial advisors on their analysis of the MIP and performed related legal research.  After discussions with certain Committee members, Chadbourne prepared and filed an objection to the 2010 MIP on behalf of the Committee.

**J.**     **Relief from Stay Issues (Matter 015)**

Fees:  $3,323.00        Total Hours:     10.90

30.     During the Application Period, Chadbourne continued the process of reviewing the various motions filed seeking relief from the automatic stay.  Accordingly, Chadbourne

evaluated the relief requested by Ivan J. Bates to allow a prepetition litigation action to proceed to trial. Chadbourne collaborated with Debtors' counsel to analyze and respond collectively to the requested relief.

**K.   Tax Issues (Matter 016)**

Fees: $7,770.50        Total Hours:   13.50

31.    During the Application Period, Chadbourne tax professionals reviewed and analyzed various tax issues arising from the administration of these Chapter 11 cases. Chadbourne's tax team reviewed and analyzed the tax treatment of retiree claims under the U.S. Internal Revenue Code and participated in discussions with a representative of the retirees constituency to address those concerns. Further, Chadbourne reviewed and considered tax implications of the proposed Cooking Channel transaction and provided comment to the draft agreements.

**L.   General Litigation (Matter 017)**

Fees: $230,793.00        Total Hours:   393.40

32.    During the Application Period, professionals from Chadbourne's bankruptcy and litigation teams devoted considerable time to preparing the Committee's reply briefs to the Examiner and related appendices (the "Reply Submission"). In accordance with the guidelines set forth by the Examiner appointed in these Chapter 11 cases, the Reply Submission would address certain claims and defenses not addressed in the Committee's initial submission, which may have been raised in another party's initial brief. In connection therewith, Chadbourne

professionals reviewed, analyzed and prepared a detailed summary of all key parties' initial submissions.

33.     The Committee's Reply Submission addressed in separate parts: (i) potential fraudulent transfer claims arising from the 2007 LBO/ESOP Transaction; (ii) potential third-party claims arising from the 2007 LBO/ESOP Transaction; and (iii) allegations that Wilmington Trust may have violated certain confidentiality requirements during the Chapter 11 Cases.

34.     Chadbourne's team of professionals and paraprofessionals devoted considerable time and effort to meet the requirements set forth by the Examiner in an accurate, efficient and timely manner.  Efforts included a comprehensive review of relevant underlying documentation (such as various court filings, draft complaints, court deposition and hearing transcripts, as well as numerous key discovery documents, many of which were subject to the Depository Order). Accordingly, confidentially and privilege concerns were reviewed and considered with respect to disclosure of such materials in the Reply Submission.  Chadbourne professionals also performed extensive legal research and conferred with the Committee's other professionals to review and address discrete issues raised in connection with the Reply Submission.  During the course of this process, various iterations of the Reply Submission were reviewed and revised by Chadbourne's team of professionals and, ultimately, the Committee furnished its Reply Submission to the Examiner on June 7, 2010.

35.     At that time, Chadbourne began to receive supplemental submissions to the Examiner from other key parties.  In connection therewith, Chadbourne reviewed, analyzed and performed related legal research on certain issues and contentions raised in the submissions.

Analyses of all of the submissions were provided to the Committee.  Further, Chadbourne

researched and responded to follow-up questions raised by the Examiner in connection with the

Committee's Reply Submission.

36.     As was the case with the Committee's initial submission to the Examiner, the

collection, review and preparation of the numerous documents appended to the Reply

Submission was a substantial undertaking.  In addition, the Examiner's Submission guidelines

required, among other things, that the legal briefs be uploaded to an exclusive, secure website

established by the Examiner, and that all references to appended documents, court filings and

legal citations were to contain a hyperlink to the respective documents.  Much of this work was

performed by Chadbourne's team of paraprofessionals.  Because of their knowledge and

involvement in the Committee's investigation as well as their technical acumen, this work was

accomplished in an efficient and timely manner and avoided duplication of effort.

37.     Finally, during this time, the Examiner filed a motion to extend the delivery date

of the Examiner Report and Chadbourne began preparing for the July 1, 2010 hearing on the

Examiner's request.

**M.**     **Review of Prepetition Financings (Matter 019)**

Fees: $92,223.00        Total Hours:   202.60

38.     During the Application Period, Chadbourne professionals continued to devote

time investigating the factual and legal bases on which the Committee may assert potential

challenges in furtherance of the prepetition LBO/ESOP Transactions.  Chadbourne's team of

professionals continued to receive and review documents during this time and reported on the

relevant and noteworthy evidence obtained during its review.  As noted from the amount of

time expended on this matter since the discovery process began, the LBO/ESOP Transactions

review is a massive undertaking. To date, approximately 341,000 documents and computer

records (over 4.1 million pages of materials) have been reviewed since the discovery process

began through the Application Period.

**N.**     **Plan Litigation (Matter 21)**

    Fees: $374,483.00          Total Hours: 684.80

39.     During the Application Period, professionals from Chadbourne' litigation and

bankruptcy groups have been actively engaged in preparing for the contested hearing on

confirmation of the plan. Efforts included monitoring and participating in the discovery

activities being pursued by the parties in connection with the Discovery and Scheduling Order

for Plan Confirmation. Chadbourne professionals reviewed the various discovery requests and

pleadings filed in response to those requests and determined appropriate courses of action for

the Committee. In addition, Chadbourne prepared for and attended several confirmation-related

depositions that were scheduled during this period. In addition, a significant number of

documents were sought and produced by the various parties during this period. Chadbourne's

team of professionals reviewed over 12,000 documents (over 300,000 pages) produced in this

process.

40.     Chadbourne's team also spent substantial time and effort considering confirmation

hearing scenarios and researching and analyzing potential legal/factual issues as well as

potential challenges to confirmation. Various confirmation meetings were held with the

Debtors' professionals and, to a lesser extent, other plan supporters. Chadbourne researched

and prepared an evidentiary record for the hearing and considered and discussed possible expert

and non-expert witnesses.  Further efforts were expended in reviewing the timeline of events during the settlement negotiations and preparation of a detailed factual chronology of the Committee's involvement with the settlement process.

41.     Throughout this process, Chadbourne and the Committee's professionals participated in frequent discussions with plan proponents and the Debtors' professionals in a collaborative effort to address the myriad of issues raised in preparing for confirmation.

### ACTUAL AND NECESSARY EXPENSES

42.     A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $63,110.06 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

43.     Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

44.     With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order

to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

45.      In connection with the LBO/ESOP transaction investigation, Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS").  The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

46.      With respect to outside copy services, Chadbourne utilized the services of an outside vendor (Perfect Imaging & Document Management) for copying over 400 exhibits to certain Examiner submission briefs.  In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

47.      Because of the extraordinary number of documents that have been shared with the Committee and analyzed by Chadbourne and other Committee professionals, the normal Intralinks capacity limit was exceeded during this period.  As a result, additional data storage space was required from Intralinks.  Again, Chadbourne believes that Intralinks is an invaluable tool that allows the Committee members to easily access all background information in these Chapter 11 cases and allows Chadbourne to carefully control access to that data when conflict or other issues arise.   In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

48.    The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

49.    In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

50.    Attorneys and paraprofessionals of Chadbourne have expended a total of 2,214.80 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chabourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $1,228,244.00.

51.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

52.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the

services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period June 1, 2010 through June 30, 2010:  (a) authorizing compensation in the amount of $1,228,244.00 (80% of which equals $982,595.20) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $63,110.06 for a total of $1,291,354.06; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:    July 23, 2010
          New York, New York

CHADBOURNE & PARKE LLP

By: _____
          Douglas E. Deutsch
          (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

## **VERIFICATION**

STATE OF NEW YORK      :
                             : ss:
COUNTY OF NEW YORK   :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 2009.

(b)     I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
23rd day of July 2010

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2010