## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

TRIBUNE COMPANY, et al.,

                Debtors.

:   Chapter 11

:   Case No. 08-13141 (KJC)

:   (Jointly Administered)

:   Re: Docket Nos. 4943, 4949, 4990, 4991,
:   4992

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE OF CERTAIN SETTLEMENT SUPPORTERS (I) TO THE
OBJECTIONS TO THE CROSS-MOTION OF THE DEBTORS FOR ENTRY
OF A PRELIMINARY PRETRIAL SCHEDULING ORDER FOR
THE PLAN CONFIRMATION HEARING SUBMITTED BY THE BRIDGE
AGENTS [DKT. NO. 4991], WILMINGTON TRUST COMPANY [DKT NO. 4990]
AND THE CREDIT AGREEMENT LENDERS [DKT. NO. 4992] AND
(II) IN FURTHER SUPPORT OF THE DEBTORS' CROSS-MOTION FOR
ENTRY OF A PRELIMINARY PRE-TRIAL SCHEDULING ORDER FOR
THE PLAN CONFIRMATION HEARING [DKT. NO. 4943]**

JPMorgan Chase Bank, N.A., Agent for the Debtors' prepetition senior lenders

and a holder of senior loan claims, Angelo Gordon & Co. LP, on behalf of certain funds

and managed accounts holding senior loan claims, Law Debenture Trust Company of

New York, solely in its capacity as successor indenture trustee for certain series of the

Debtors' prepetition senior notes, and Centerbridge Credit Advisors LLC, on behalf of

certain funds and managed accounts holding senior notes claims (collectively, the

"Settlement Supporters")[1] hereby submit this response to the objections to the Debtors'

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Supporters' Objection to Motion of Bridge Agent for Entry of Orders (I) Establishing Procedures for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (II) Allowing Such Claim in Full and Joinder to the Debtors' Cross Motion for Entry of

cross motion requesting the entry of a Preliminary Pre-Trial Scheduling Order for the
Plan Confirmation Hearing filed by Wells Fargo Bank, N.A. ("Wells Fargo"), in its
capacity as successor administrative agent for the Bridge Facility, Wilmington Trust
Company ("Wilmington Trust"), and the Credit Agreement Lenders (the "Wells Fargo
Objection," "Wilmington Trust Objection" and "Credit Agreement Lenders Objection,"
respectively) and in further support of the Debtors' cross motion.

## INTRODUCTION

1.      Wells Fargo, Wilmington Trust and the Credit Agreement Lenders
(collectively the "Plan Opponents") have made it abundantly clear that they would like
nothing more than to wreak havoc on the plan confirmation process and turn what should
be a five-day confirmation hearing into a multi-week (and potentially multi-month) trial
on the merits of the Settled Claims.  No matter how strongly the Plan Opponents
disapprove of the Global Settlement, however, they are not entitled to proceed as if the
settlement does not exist.

2.      The law in this Circuit could not be clearer:  In deciding whether to
approve a settlement, the Court should "canvass the issues" to determine whether the
settlement meets the Third Circuit's *Martin* factors and exceeds the lowest point in the
range of reasonableness.  In fact, courts are specifically cautioned *not* to conduct mini-
trials on the merits of the underlying claims.  To do so would frustrate one of the primary
motivators for settlement – avoidance of trial – and would serve to frustrate the

---

Preliminary Pre-Trial Scheduling Order for the Plan Confirmation Hearing (the "Settlement Supporters'
Response") [Dkt. No. 4949].

Bankruptcy Code's desire that competing claimants reach consensual resolutions with the estate.

3.      These standards apply with equal force to settlements that are incorporated into a plan of reorganization. Indeed, in *In re Exide*, 303 B.R. 48, 67-68 (Bankr. D. Del. 2003) (Carey, J.), this Court, in canvassing the issues, discussed application of the *Martin* and *Texaco* factors to a settlement included in the debtor's plan of reorganization. The Plan Opponents have not cited a singe case – either within or without this Circuit – that supports the notion that a settlement embodied in a plan of reorganization is subject to a heightened, or "canvassing plus," level of scrutiny. Accordingly, with respect to the Settled Claims, the Court need only consider documents, fact and expert testimony, and argument sufficient to determine whether the Global Settlement exceeds the lowest point in the range of reasonableness. The Court need not hear hundreds of hours of testimony from the 16 experts identified by the parties on the merits of the Settled Claims such as Tribune's solvency. Such testimony is simply well beyond the scope of a properly confined confirmation hearing.

4.      If there were a case where a heightened level of settlement scrutiny would be appropriate, this is certainly not that case. Here, at the urging of the very same out-of-the-money creditors who are now opposing the Global Settlement, a thorough investigation of the Settled Claims has been conducted by an independent Examiner and his team of professionals has spent thousands of hours and millions of dollars investigating and analyzing the Settled Claims. It simply strains credibility to assert that

3

the Examiner's Report[2] – consisting of over 1200 pages, over 1100 exhibits and based on 38 witness interviews – does not give this Court exponentially more material than it needs to "canvass the issues."

5.      Despite the foregoing, and despite the Court's clear statement at the hearing on July 14 that it was not going to have a full-blown trial on the merits (*see* Transcript of hearing held on July 14, 2010 ("7/14/10 Hearing Tr.") at 34: 13-21), the Plan Opponents are forging ahead with their scheme to turn the confirmation hearing into the trial of the century.  Disregarding the Third Circuit's canvassing standard, the Plan Opponents have designated six experts, and the settlement proponents, often compelled by no other reason than to protect their respective flanks and designate twelve experts, for a total (so far) of eighteen expert witnesses.  While one would be hard-pressed to find *any* commercial litigation where eighteen experts are necessary, such extensive expert testimony is without question anathema to a canvassing (or even a canvassing plus) exercise.

6.      The time has come to put an end to the Plan Opponents' tactics.  For an out-of-the-money creditor group there is no downside to the cost, noise, delay and destruction of value attendant to a confirmation circus.  But for the future stakeholders of the Debtors, with a real interest in getting the patient off the operating table, such a spectacle could be debilitating.

---

[2] For these purposes, the Settlement Supporters simply note that the Examiner's Report is the result of an extensive and thorough investigation.  However, by doing so or otherwise they do not intend to imply that they either accept or reject the conclusions reached by the Examiner.

7.       Accordingly, the Settlement Supporters respectfully request that the Court enter the Preliminary Pre-Trial Scheduling Order in order to properly delineate the scope of the scheduled five-day confirmation hearing.

## ARGUMENT

### I.    The Standard of Review Should Be Clarified

8.       While the Court has indicated that it does not intend to have a full trial on the merits of the Settled Claims, given the proximity of the confirmation hearing (only three weeks from the August 9 hearing), additional guidance from the Court as to the proper scope of the hearing is necessary so that all parties can tailor their efforts to those issues that the Court intends to decide on August 30.  The Settlement Supporters respectfully submit that the time to provide this guidance is *now*, not as the Objections suggest on the eve of the hearing.  *See* Wells Fargo Objection at ¶¶ 12-13; Wilmington Trust Objection at ¶ 22; Credit Agreement Lenders Objection at p. 2.  It is truly incomprehensible that any party take the position that it is wise or reasonable to charge full steam ahead preparing for a hearing without any idea of what that hearing will look like.  There can be only one explanation for the Plan Opponents sought after ignorance – a hope to sabotage confirmation.

9.       It is neither controversial nor unreasonable for the parties to request guidance on whether the five days set aside for the confirmation hearing will be used to canvass the issues regarding the Global Settlement under the *Martin* and *Texaco* factors (and address legitimate objections raised under 11 U.S.C. §1129), or will instead be the beginning of a multi-week, if not multi-month, trial with dozens of experts, countless fact

5

witnesses, and hundreds of hours of attorney presentations by dozens of parties. The

Debtors, the UCC, and the Settlement Supporters could not be farther apart from Wells

Fargo and Wilmington Trust on this issue. Absent clarification as to whether the Court

intends to apply this Circuit's well-established canvassing standard, all parties will

continue to prepare as if there will be a full trial on the merits of the Settled Claims. As a

result, every additional day that passes without such clarification is another day where the

parties are collectively forced to spend tens of thousands of dollars preparing for a full

trial, largely at the Estate's expense. For example, unless the scope of the confirmation

hearing is fixed now, in addition to the expert reports that will soon be submitted at great

expense, the multiple experts will offer potentially hundreds of hours of testimony[3]

supporting both solvency and insolvency. Such testimony would be nothing more than

an expensive, unnecessary, and time-consuming distraction from the real issue to be

determined at the hearing – whether the Global Settlement exceeds the lowest point in the

range of reasonableness.

10.    To be clear, the Settlement Supporters, the Debtors, and the UCC do not

wish to preclude legitimate testimony on plan confirmation issues under 11 U.S.C. §

1129.[4] The Debtors have acknowledged that they must meet their burden to satisfy both

the Rule 9019 standards and the requirements of Section 1129. *See* 7/14/10 Hearing Tr.

---

[3] Regrettably, the Settlement Supporters will find themselves in the unfortunate position of offering conflicting expert testimony.

[4] The quote from Mr. Bernstein cited in Wilmington Trust's Opposition that JPMorgan is "not trying to preclude issues that are relevant to the confirmation" is entirely consistent with this position. *See* Wilmington Trust Opposition at ¶ 12. A full-blown trial on the merits is not relevant to confirmation, particularly a trial of Wilmington Trust's alleged direct claims against JPMorgan and others, which are not encompassed with the Global Settlement.

at 15:15-19; 29:19-24.[5] This does not, however, require a full-blown trial on the merits

of the Settled Claims. *See, e.g., Key3Media Group, Inc. v. Pulver.com, Inc. (In re*

*Key3Media Group, Inc.*), 336 B.R. 87, 93 (Bankr. D. Del. 2005) (carrying burden of

persuasion on whether a compromise is above the lowest point in the range of

reasonableness "is not … a burden of proof regarding the underlying claim").

## II.    The Appropriate Standard of Review Is to Canvass the Issues

11.     There is no authority in this Circuit or any other that supports conducting a

full trial on the merits of the Settled Claims as if the Global Settlement never occurred.

12.     The U.S. Supreme Court has held that in determining whether to approve a

bankruptcy settlement, a court should make an informed, independent judgment as to

whether the settlement is "fair and equitable." *Protective Comm. for Indep. Stockholders*

*of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). As instructed by the

Third Circuit, the determination of whether to approve a proposed settlement is based on

a consideration of the "*Martin*" factors: "(1) the probability of success in litigation; (2)

the likely difficulties in collection; (3) the complexity of the litigation involved, and the

expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

---

[5] Wilmington Trust's constitutional rights are not implicated. *See* Wilmington Trust Opposition at ¶¶ 13-16. All parties will have a right to come before the Court and object to the Global Settlement, and the Plan generally, within the confines of the law. With respect to the consideration of the Global Settlement, the law clearly defines the Court's obligations. *See infra* Section II. It is clear that the Plan Opponents do not support the Global Settlement, and would not have settled the claims if the claims belonged to them. The claims, however, belong to the Estate. While Wells Fargo and Wilmington Trust have the right to test whether the settlement is reasonable, they do not have the right to simply ignore the existence of the Global Settlement and attempt to try the LBO-Related Causes of Action on the merits on behalf of the estate. There is simply no constitutional right to turn what should be a five-day hearing on plan confirmation into a multi-week trial on claims that do not belong to them that have been settled.

of the creditors."[6] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). This

Court (and many others) have looked to the "*Texaco*" factors that courts in the Second

Circuit routinely apply to evaluate a settlement in the context of a plan of reorganization.

*See In re Exide*, 303 B.R. at 67-68 (citing *In re Texaco Inc.*, 84 B.R. 893, 902 (Bankr.

S.D.N.Y. 1988)).

13.     Importantly, "[i]n determining whether to approve a settlement, the court

is not supposed to have a mini-trial on the merits, but should canvass the issues to see

whether the settlement falls below the lowest point in the range of reasonableness." *In re*

*Key3Media Group, Inc.*, 336 B.R. at 93 (quotation omitted); *In re G-1 Holdings Inc.*, 420

B.R. 216, 256 (Bankr. D.N.J. 2009) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d

Cir. 1983)); *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)

("A bankruptcy court need not conduct an independent investigation into the

reasonableness of the settlement but must only 'canvass the issues and see whether the

settlement falls below the lowest point in the range of reasonableness...It is not necessary

for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute.")

(citation omitted); *see also Bildirici v. Kittay (In re East 44th Realty, LLC)*, Nos. 05-

16167, 07-8799, 2008 U.S. Dist. LEXIS 7337, at \*23 (S.D.N.Y. Jan. 23, 2008) (quoting

*Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)) ("The Supreme Court [in *TMT*

*Trailer*] could not have intended that, in order to avoid a trial, the judge must in effect

conduct one.").

---

[6] The *Martin* factors are similar to the "*TMT*" factors articulated by the U.S. Supreme Court in *TMT Trailer*. 390 U.S. at 424-5 (1968).

14.     The fact that a settlement is incorporated into a plan of reorganization does

not alter the standard by which that settlement is evaluated.[7] *See, e.g., In re Exide*, 303

B.R. at 67-68 (discussing application of the *Martin* and *Texaco* factors in the context of a

settlement proposed in a plan of reorganization).  Accordingly, in cases where a

settlement is proposed in the context of plan confirmation, this Court has stated that "the

Court's task is not to 'decide the numerous questions of law and fact raised by

[objections] but rather to canvass the issues to see whether the settlement fall[s] below

the lowest point in the range of reasonableness." *Id.* (quoting *In re Neshaminy Office

Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986)); *In re New Century TRS Holdings, Inc.*,

390 B.R. 140, 167 (Bankr. D. Del. 2008) (J. Carey) (same), *rev'd on other grounds*, 407

B.R. 576 (D. Del. 2009); *see also In re Spansion, Inc.*, 2009 Bankr. LEXIS 1283, at *22

(Bankr. D. Del. June 2, 2009) (applying "canvass the issues" standard to consideration of

a settlement sought by a Rule 9019 motion).

15.     Moreover, courts in other jurisdictions have consistently applied this

standard where a settlement is considered in connection with a plan of reorganization.

*See, e.g., Six West Retail Acquisition, Inc. v. In re Loews Cineplex Entm't Corp.*, 286

B.R. 239, 248 (S.D.N.Y. 2008) (affirming bankruptcy court's approval of settlement as

part of the plan confirmation process and noting that the bankruptcy court was "not

required to assess the minutia of every claim") (citation omitted); *JPMorgan Chase Bank*

---

[7] It is perfectly appropriate and laudable for debtors to propose a settlement in the context of a plan of reorganization, and 11 U.S.C. §1123(b)(3)(A) expressly permits debtors to do so. *See, e.g., In re Exide*, 303 B.R. at 66 ("A plan may include a provision that settles or adjusts any claim belonging to the debtor of the estate.") (citing *TMT Trailer*, 390 U.S. at 424); *TMT Trailer*, 390 U.S. at 424 ("Compromises are a normal part of the process of reorganization.") (quotation omitted).

9

*v. Charter Commc'ns (In re Charter Commc'ns)*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009) (considering settlement as part of plan confirmation, and stating that the "Court's role in deciding whether to approve a settlement is to canvass the record and ensure that the settlement is (i) fair and equitable; and (ii) does not fall below the lowest point in the range of reasonableness") (citation omitted); *In re Statepark Bldg. Group, Ltd.*, No. 04-33916-HDH-11, 2005 Bankr. LEXIS 3253, at *4, 25-26 (Bankr. N.D. Tex. May 19, 2005) (approving "a series of heavily negotiated, inter-related settlements, which [were] critical to the success of the plan" and stating that "[i]t is not incumbent upon the [settlement] proponent to present a mini-trial or a full evidentiary hearing") (citations omitted); *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 416-17 (Bankr. N.D. Cal. 2004) (court approved settlement incorporated into plan of reorganization noting that in approving any settlement "[r]ather than an exhaustive investigation or a mini-trial on the merits" the court must find that the "settlement was negotiated in good faith and is reasonable, fair and equitable" and that the "court's proper role is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness") (citations omitted); *see also In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 352, 356 (5th Cir. 1997) (affirming entry of settlement that would "clear the way for approval of a plan of reorganization" and noting that "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in [] settlement"). Similarly, in *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l)*, 136 F.3d 45, 47 (1st Cir. 1998), the First Circuit affirmed approval of a settlement agreement settling fraudulent transfer claims brought by the trustee against a group of banks that had

10

financed the debtor's leveraged buyout. With respect to the standard of review, the Court stated:

> [T]he responsibility of the bankruptcy judge, and ours on review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issue and see whether the settlement falls below the lowest point in the range of reasonableness. *Id.* at 51 (quotation omitted).

Notably, the settlement in *In re Healthco* was approved over the objection of non-settling co-defendants in the adversary proceeding. *Id.* at 47, 52 (settlement supported by the unsecured creditors committee and a majority of unsecured creditors; only objections filed by non-settling co-defendants and non-creditors).

16.    The standards set forth in *Martin* and *Texaco* are consistent with the paramount goal of encouraging comprises and settlements. *See, e.g., In re Martin*, 91 F.3d at 393 ("To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy'. . . . Indeed, it is an unusual case in which there is not some litigation that is settled between the representative of the estate and an adverse party.") (internal citation omitted). Permitting testimony on the underlying merits of the Settled Claims is antithetical to the primary reason parties enter into settlements – to avoid the tremendous expense, burden and disruption that would ensue should a trial take place. This is not to suggest that JPMorgan and other lenders are not convinced they would ultimately prevail at a trial – they are – or that the UCC and other creditor groups are not likewise convinced they would prevail – they are. Rather, the Global Settlement reflects a mutual understanding amongst otherwise adverse parties that the claims and defenses are complex, that litigating them to their conclusion is not without risk to either side, and that the enormous cost and expense that would result from

11

such a litigation is not in anyone's interests, least of all the Estate's.  A standard of review which wholly undermines any incentives parties may have to settle disputed claims (which is precisely what permitting Wells Fargo and Wilmington Trust to proceed with a full merits trial or even a novel and undefined "canvassing plus" level of scrutiny would do) simply cannot be sanctioned.

17.    Wells Fargo's contention that application of the *Martin* and *Texaco* factors is somehow not the correct standard rings hollow.  There is no other standard of review to be applied to the approval of a settlement.[8]  Moreover, the cases cited in support of its assertion are inapposite, involving settlements that attempt to settle issues outside the scope of the matter being settled, or claims that do not belong to the estate, or settlements that were not proposed by a disinterested debtor.  *See* Well's Fargo Objection at ¶¶ 20-23; *In re Louise's, Inc.*, 211 B.R 798, 802 (D. Del. 1997) (proposed settlement of exclusivity motion dispute was "so tainted with provisions unrelated to the exclusivity issue," including an attempt to transfer control of the debtor to creditors outside the plan confirmation process, that it could not be considered a Rule 9019 compromise); *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, No. 09-6030, 2010 WL 2196258 (B.A.P. 8th Cir. June 3, 2010) (proposed settlement between debtor and its insurers attempted to prevent non-settling vendors from asserting causes of action belonging solely to the vendors, and did not benefit the estate); *In re Nationwide Sports*

---

[8] Even if, as suggested by the Court during the August 14 hearing, some new "canvassing plus" standard could apply here (a proposition with which the Settlement Proponents respectfully disagree for all the reasons stated herein, including, of course, the existence of the Examiner's Report), the Court has more than enough information at its disposal to conduct such an inquiry without the need to resort to a multi-week trial on the merits of the settled claims.

RLF1 3595382v. 1

*Distrib.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) (debtor could not seek approval under Rule 9019 of a settlement, between itself and several creditors, of motion seeking to appoint a trustee because the motion could later be brought by other parties, the debtor's interests were not necessarily aligned with the estate's interests, and the settlement included issues beyond those involved in the motion being settled); *In re Matco Electronics Group, Inc.*, 287 B.R. 68, 75-79 (Bankr. N.D.N.Y. 2002) (declining to approve proposed settlement of an adversary proceeding commenced by the trustee against the debtor and entity created to purchase debtor's inventory after a three day evidentiary hearing based on application of the Rule 9019 factors). Unlike these cases, the Global Settlement relates only to the LBO-Related Causes of Action – which belong solely to the Estate and which the Estate has exclusive authority to settle – and does not implicate potential direct claims held by non-settling parties.[9] Moreover, the Plan incorporating the Global Settlement was not proposed by a debtor whose interests are not aligned with the estate, as the Debtors here have every intention and ability to carry their burden of proof on both the fairness of the Global Settlement and that each of the factors required under 11 U.S.C. § 1129 is satisfied and that confirmation is therefore in the Estate's best interests.

---

[9] Wilmington Trust's assertion that the Plan cannot be confirmed until any direct claims it has against JPMorgan and others are fully litigated is nonsensical. *See* Wilmington Trust Objection at ¶ 16. Assuming, *arguendo*, that Wilmington Trust has direct claims against any of the lenders (which they do not), they will have an opportunity to assert those claims, which are not being settled as part of the Global Settlement.

13

**III.    The Evidentiary Record Necessary to Canvass the Issues Already Exists**

18.    The Examiner was asked to "evaluate the potential claims and causes of action held by the Debtors' estate that are asserted by the parties, in connection with the leverage buy-out of Tribune that occurred in 2007 . . . including, but not being limited to, claims for fraudulent conveyance (including both avoidance of liability and disgorgement of payments), breach of fiduciary duty, aiding and abetting the same, and equitable subordination and the potential defenses asserted by the Parties to such potential claims and causes of action."[10]  In other words, the merits of the Settled Claims.

19.    After a three-month investigation of virtually unlimited scope, including a review of hundreds of pages of briefing submitted by the parties, tens of thousands of pages of documents, several dozen interviews, and untold numbers of informal exchanges, the Examiner issued a 1000-plus page report detailing his conclusions.  With this extensive record – combined with the millions of pages of produced documents, the multiple depositions already taken in connection with Examiner and UCC investigations, the multiple depositions that are scheduled to occur, and the numerous expert reports that will be filed – there is simply no basis to litigate the merits of any of the issues relating to the Settled Claims or to suggest that the Court does not have the necessary evidentiary record to assess the reasonableness of the Global Settlement.  *See* Settlement Supporters' Response at ¶¶ 11, 12.  Rather, the Court should consider documents, testimony, and argument only on whether the Global Settlement was the product of the Debtors' sound business judgment and is above the lowest point in the range of reasonableness.

---

[10] Agreed Order Directing the Appointment of an Examiner [Dkt. No. 4120 at ¶ 2(i)], as amended by the Order Approving Work and Expense Plan and Modifying Examiner Order [Dkt. No. 4321 at ¶ 3].

20.     By requesting a full trial only months after pining for an Examiner tasked with investigating the very issues they now seek to try, Wells Fargo and Wilmington Trust want a second-bite at the apple.  Indeed, Wells Fargo acknowledges the extensive nature of the Examiner's investigation in its Opposition, noting that the Examiner and "his team continue to review an enormous documentary record and conduct dozens of interviews and examinations of potential witnesses" over a three month period.  *See* Wells Fargo Opposition at ¶ 15.  Far from supporting Wells Fargo's assertion that the length and scope of the Examination supports the need for a longer confirmation hearing, the fact that the Examiner has conducted a thorough investigation and issued a thorough report based on that investigation renders it unnecessary to do anything more than canvass the issues at the confirmation hearing.  And no-one can reasonably dispute that as a result of the Examination the Court has more than enough information at its disposal to do just that.

21.     Moreover, from the outset the parties understood that the Examiner's report would be used in connection with the confirmation hearing.  And, in fact, Wilmington Trust justified the appointment of an examiner because an examiner would, *inter alia*, "substantially assist the Court in evaluating the proposed settlement."[11]

22.     Similarly, the U.S. Trustee expressed his view that the Examiner would provide the court with "an independent and unbiased opinion as to what is the truth" related to the potential LBO-Related Causes of Action and would "go very far in assisting

---

[11] Wilmington Trust Company's Response to: (I) The Official Committee's Statement in Support of Certain Motions Filed by JPMorgan Chase Bank, N.A. and the Debtors; and (II) the Debtor's Reply to Wilmington Trust's Objection to Motion to Halt Equitable Subordination Adversary Proceeding [Dkt. No. 4007 Ex. A at ¶ 8].

RLF1 3595382v. 1

the Court . . . in being prepared for confirmation and addressing all of the[] issues that

continue to linger in this case." *See* Transcript of hearing held on April 13, 2010

("4/13/10 Hearing Tr.") at 39:5-10.  Following these statements, this Court stated that the

U.S. Trustee had "almost spot on expressed the preliminary views about what should

happen here, for the reasons he has stated." 4/13/10 Hearing Tr. at 39:21-23; *see also id.*

at 55:13-14 (noting that the U.S. Trustee "accurately mirrored [the Court's] preliminary

feelings").

     23.    A five-day hearing that limits testimony to that necessary to canvass the

issues and determine whether the Global Settlement falls below the lowest range of

reasonableness (and objections raised under 11 U.S.C. § 1129) is both realistic and

appropriate.  This is supported by the hearings conducted in *In re Spansion* and *In re

Exide*.  First, the hearing in *In re Spansion* was completed in just one day – despite the

fact that, unlike here, no examiner was appointed, the hearing was conducted barely three

months after the bankruptcy petition was filed, and the settlement was not initially

supported by the creditors committee.  2009 Bankr. LEXIS 1283, at *1-2, 27.  Similarly,

the hearing in *In re Exide* lasted just seven days despite the fact that there was no

examiner and the settlement was not supported by the creditors committee.  303 B.R. at

55, 70.  Moreover, much of that time was spent resolving a serious dispute over the

current value of the debtor that resulted in expert testimony from three valuation experts.

*Id.* at 58.  In contrast, here, the Global Settlement is supported by a broad cross-section of

parties, including the UCC (which conducted an extensive, independent investigation of

its own), an Examiner was appointed, and the Debtors' current valuation is not in serious

dispute.  Finally, in both *In re Exide* and *In re Spansion* this Court correctly applied

16

*Martin* and *Texaco* factors to determine whether the settlement was within the range of reasonableness. Although the Court determined there was an insufficient record to determine the reasonableness of the proposed settlements, *see In re Exide*, 303 B.R. at 55, 69 (creditors committee did not support the settlement, in part, because it felt there was insufficient discovery); *In re Spansion*, 2009 U.S. Bankr. LEXIS 1283, at *22 ("[T]he Debtors have provided little information as to the specifics of the Actions to provide a basis for evaluating the strengths and weakness of the litigation."), that simply is not the case here. *See infra* ¶¶ 18-22.

24.     The cases cited by Wilmington Trust in support of a multi-week hearing are unpersuasive. *See* Wilmington Trust Opposition at ¶ 23. Each of these cases involved material issues and circumstances not present here:

- *In re Charter Commc'ns* involved a 19 day hearing covering significant valuation issues, including testimony from five experts. 419 B.R. at 230. The conflict was described by the Court as "one of the longest and no doubt also among the most costly." *Id.* Additionally, an examiner was not appointed.

- *In re Premier Int'l Holdings, Inc.*, No. 09-12019 [Dkt. No. 2114] (Bankr. D. Del. April 30, 2010) involved a 10 day hearing covering significant valuation issues and concerning a plan of reorganization that was not supported by the creditors committee.

- *In re Adelphia* Commc'ns *Corp.*, 368 B.R. 140, 146-47 (Bankr. S.D.N.Y. 2007) involved a 9 day hearing, in a case which involved approximately 230 debtors whom and been in bankruptcy for 4.5 years, and which the Court described as "among the most challenging – and contentious – in bankruptcy history." Additionally, an examiner was not appointed.

- *In re Enron Corp.*, Case No. 01-16034 [Dkt. No. 19759] (Bankr. S.D.N.Y. July 15, 2004) involved a 9 day hearing during which the debtors presented 5 witnesses, including an expert on valuation. In addition, the scope of the examiners appointed by the court were limited to issues having to do with certain creditor classes.

17

- *In re Exide* involved a 7 day hearing, which, as mentioned above, involved a fight over the value of the debtor. 303 B.R. at 58, 66. Further, the settlement was opposed by the creditors committee (not just out-of-the-money creditors), and an examiner was not appointed. *See id.* at 55.

25.     Not one of these cases relied on by Wilmington Trust involved a full trial on the merits of the settled claims. Even amongst these hand-picked extremes, all but one had confirmation hearings lasting 10 days or less. Yet, Wilmington Trust and Wells Fargo, in a case where there have been multiple investigations, including by an Examiner with virtually unlimited scope and authority, and where the Global Settlement is supported by a broad cross-section of the creditor constituency as well as by the UCC – want to put on the bankruptcy trial of the century. That is neither necessary nor appropriate.

## CONCLUSION

26.     For the reasons set forth above, the Settlement Supporters respectfully request that the Court enter an order limiting the scope of the confirmation hearing with respect to the Global Settlement to canvassing the issues to determine whether the settlement exceeds the lowest point in the range of reasonableness.

18

Dated: July 30, 2010
Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (Bar No. 2981)
Robert J. Stearn, Jr. (Bar No. 2915)
Drew G. Sloan (Bar No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone (302) 651-7700
Facsimile (302) 651 7701

-and-

Dennis E. Glazer
Sharon Katz
Elliot Moskowitz
Michael Russano
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4500

*Attorneys for JPMorgan Chase Bank, N.A. and
JPMorgan Securities, Inc.*

_____
Mark D. Collins (Bar No. 2981)
Drew G. Sloan (Bar No. 5069)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone (302) 651-7700
Facsimile (302) 651 7701

-and-

Andrew N. Goldman
WILMER CUTLER PICKERING HALE &
DORR LLP
399 Park Avenue
New York, New York 10022
(212) 230-8800

*Attorneys for Angelo Gordon & Co. LP*


_____/s/ Mary E. Augustine_____
Garvan F. McDaniel (Bar No. 4167)
Mary E. Augustine (Bar No. 4477)
BIFFERATO GENTILOTTI LLC
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
(302) 429-1900
(302) 429-8600 (fax)
gmcdaniel@bglawde.com

-and-

David S. Rosner
KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
1633 Broadway
New York, New York 10019
(212) 506-1726

*Attorneys for Law Debenture Trust Company of
New York*

20

RLF1 3595382v. 1

_____/s/ Timothy P. Cairns_____

Timothy P. Cairns
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street
17th Floor
Wilmington, DE 19899-8705
(302) 652-4100 (Telephone)
(302) 652-4400 (Facsimile)
tcairns@pszjlaw.com

-and-

Daniel H. Golden
Philip C. Dublin
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
dgolden@akingump.com
pdublin@akingump.com

*Attorneys for Centerbridge Credit Advisors LLC*