## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** | : **Chapter 11** |
| | : |
| **TRIBUNE COMPANY, et al.,**[1] | : **Case No. 08-13141 (KJC)** |
| | : |
| **Debtors.** | : **(Jointly Administered)** |
| | : |
| | : **Objection deadline: August 5, 2010 at 5:00 p.m.** |
| | : **Hearing date: August 9, 2010 at 1:00 p.m.** |

## THE BRIDGE AGENT'S MOTION TO CONTINUE (A) THE AUGUST 30, 2010 HEARING ON CONFIRMATION OF THE DEBTORS' PROPOSED PLAN OF REORGANIZATION AND (B) THE AUGUST 9, 2010 HEARING ON THE MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE DEBTORS TO IMPLEMENT A MANAGEMENT INCENTIVE PLAN FOR 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Wells Fargo Bank, N.A., as successor administrative agent (in such capacity, the "Bridge Agent") under that certain $1.6 billion Senior Unsecured Interim Loan Agreement dated as of December 20, 2007, by and among Tribune Company, each lender from time to time party thereto, and the other named parties thereto, hereby moves (A) to continue the August 30, 2010 hearing on confirmation of the Debtors' proposed Plan of Reorganization (the "Plan") for a period of not less than 90 days, (B) to continue to confirmation the August 9, 2010 hearing on the Motion of the Debtors for an Order Authorizing the Debtors to Implement a Management Incentive Plan for 2010 ("Debtors' MIP Motion"), and (C) for corresponding adjustments to the pre-confirmation hearing discovery and briefing schedule.[2] In support of this motion, the Bridge Agent states as follows:

## PRELIMINARY STATEMENT

1.      No one disputes that the pre-confirmation hearing schedule in these cases was extremely tight and, at a minimum, left no margin for error. It is now clear that the confirmation schedule is infeasible and should be extended to allow the parties sufficient time to properly and reasonably complete discovery and to assess the myriad conclusions and findings in the just released Examiner's report. The Bridge Agent recognizes that the Debtors and the supporters of the Settlement Agreement would prefer to plow ahead with a confirmation hearing on August 30. However, given the delay in the discovery process pending the issuance of the Examiner's report

---

[2]     At the July 14, 2010 hearing, the Court adjourned matters related to the Motion of Bridge Agent for Entry of Orders (i) Establishing Procedures for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (ii) Allowing Such Claims in Full [Docket No. 4852] and the Debtors' (i) Opposition to the Motion of Bridge Agent for Entry of Orders (A) Establishing Procedures for Adjudicating the Debtors' Objections to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (B) Allowing Such Claims in Full and (ii) Cross Motion for Entry of Preliminary Pre-Trial Scheduling Order for the Plan Confirmation Hearing [Docket No. 4943] to the August 9, 2010 hearing. At the subsequent hearing on July 29, 2010, the Court set a hearing on August 3, 2010 for further discussion regarding the Examiner's report as well as related scheduling issues. Consequently, the Bridge Agent files and notices this Motion in accordance with the Court's prior direction, but reserves the right to present similar arguments regarding an adjournment at the intervening August 3 hearing.

-2-

and the Examiner's findings regarding the participation of the Debtors' officers in a multi-billion dollar intentionally fraudulent conveyance and the lack of good faith on the part of the agent banks, the Bridge Agent submits that the Debtors' goal of reaching a speedy conclusion to these proceedings must give way to the need for a just one.

## BACKGROUND

2.      On June 4, 2010, the Debtors filed the Plan and the accompanying Disclosure Statement.

3.      On June 7, 2010, after a number of revisions, the Court approved the Debtors' Disclosure Statement.

4.      On April 20, 2010, the Court entered an order directing the appointment of an Examiner and set a due date of July 12, 2010 for the delivery of the Examiner's report.

5.      On May 13, 2010, the Court entered the Discovery and Scheduling Order for Plan Confirmation, which scheduled the hearing on confirmation of the Debtors' proposed Plan for August 16, 2010, and set forth relevant discovery deadlines in connection with the confirmation hearing.

6.      Subsequently, given the scope of the Examiner's report and his uncovering of facts which warranted further investigation, on June 23, 2010, the Examiner sought a two week extension – to July 26 – to file his report. Correspondingly, various parties sought extensions of the relevant discovery and other deadlines that were set forth in the May 13 scheduling order.

7.      On July 1, 2010, the Court granted the Examiner's request for a two week extension and entered an amended scheduling order (the "Scheduling Order"). The amended scheduling order set the following relevant dates in connection with the confirmation hearing:

-3-

a. August 4: Expert reports due;

b. August 11: Expert depositions begin;

c. August 13: Objections to the Debtors' Plan due; and

d. August 30: Confirmation hearing.

8.     On a separate track, the hearing on the Debtors' MIP Motion is currently scheduled for August 9, 2010.

9.     On July 26, 2010, in light of positions taken by certain parties regarding confidentiality, the Examiner released a heavily redacted version of his report, which revealed certain legal analysis and a summary of the Examiner's conclusions, but which did not include any of the facts or evidence on which the Examiner relied to reach his conclusions.

10.    On July 29, 2010, the Court authorized the distribution to the principal parties of the unredacted Examiner's report, which was not released to the parties until the evening of July 29. The unredacted report has not yet been publicly filed.

## BASIS FOR RELIEF

### *The Scheduling Order Leaves Insufficient Time For Discovery*

11.    From the outset, there has been concern about the extremely condensed fact and expert discovery schedule leading up to the confirmation hearing in these cases. The Debtors recently acknowledged the concern in their July 26, 2010 Motion to Authorize the Disclosure of the Examiner's report in which they stated that any delay in releasing the full Examiner's report "could be highly disruptive to the plan confirmation schedule" and "will compress what is already an extremely tight schedule."[3]  The Bridge Agent submits that regardless of the timing

---

[3] Debtors' Motion to Authorize the Disclosure of the Examiner's Report, Exhibits Cited in Report, and Professionally Transcribed, Sworn Transcripts of Witness Interviews to the Parties and Interviewees Pursuant to the Terms of the Document Depository Order at 5, Dkt. No. 5116 (the "Motion to Authorize the Disclosure of the Examiner's Report").

-4-

of the public release of the full Examiner's report, the current schedule has moved beyond "extremely tight" and is now infeasible and prejudicial to those parties who may object to the Plan.

12.     The Bridge Agent and Wilmington Trust collectively served sixteen deposition notices between June 16 and June 29. Not one of the noticed witnesses has appeared for a deposition as of the date of this motion. The depositions were noticed to take place in June and July in order to provide the parties ample time to conduct fact discovery prior to August, when expert discovery and objections and responses to the Debtors' Plan dominate the confirmation schedule.

13.     Throughout the end of June and beginning of July, the Bridge Agent repeatedly requested deposition dates in July from the parties it noticed. All but one of the parties, however, refused to appear for deposition in July. Many witnesses cited the forthcoming issuance of the Examiner's report as the reason to delay their depositions. The difficulty in scheduling witnesses for deposition was candidly acknowledged by the Debtors in the Motion to Authorize the Disclosure of the Examiner's Report, in which the Debtors stated that "the parties are unlikely to be willing to proceed with fact discovery until they have the opportunity to see the Report, the Exhibits, and the Transcripts." Motion to Authorize the Disclosure of the Examiner's Report at 5.

14.     In mid-July, the Bridge Agent attempted again to schedule the noticed depositions for July. Following the hearing before the Court on July 14 – during which the Court advised counsel for JPMorgan that any delay in the filing of expert disclosures would need to be accompanied by a continuation of the confirmation hearing[4] – the Bridge Agent sent letters to counsel for the parties it noticed, including EGI-TRB, LLC, Sam Zell, Angelo Gordon & Co.,

---

[4] Hr'g Tran. 51, July 14, 2010.

WM1A 960172v1 07/30/10

LP, and Centerbridge Credit Partners, LP, seeking July deposition dates. In response, the parties continued to provide deposition dates only in August, including one date after the August 13 confirmation objection deadline.

15.     Under the current schedule, at least eighteen depositions will have to take place in August over the top of expert depositions (at least fourteen experts have been designated by the parties), objections (if they can even be timely filed) and responses to the Debtors' Plan, and voting on the Debtors' Plan. (Additional depositions may be necessary, particularly in light of the Examiner's report which the parties are just now reviewing.) In addition to being impractical, this will mean that expert reports will certainly need to be supplemented in light of fact depositions taken after expert reports are filed on August 4. As the Debtors observed, they could not even fulfill the scheduling requirement to supplement their expert disclosures on July 29 due to the fact that the Examiner's report remained heavily redacted at that time. *See*, *e.g.*, Debtors' Supplement to Expert Disclosure.

16.     Likewise, it will also be impossible to effectively incorporate the deposition testimony into the parties' objections to the Plan which are due August 13.

17.     Moreover, adequately preparing for depositions under the tight schedule has been made even more unworkable given that some parties are still producing documents on a rolling basis. As recently as July 28 the Bridge Agent received a production in excess of 30,000 pages from Angelo Gordon & Co., LP and the Bridge Agent received an additional production from the Debtors on July 29. These productions are in addition to the reams of exhibits that have been appended to the Examiner's Report. Based on the foregoing, the existing confirmation schedule is simply not feasible.

-6-

### *The Parties Need Additional Time In Light Of The Examiner's Report*

18.     The centerpiece of the Debtors' Plan is and always has been the settlement of the LBO Related Causes of Action. Accordingly, the LBO Related Causes of Action will be the centerpiece of the confirmation hearing. It has never been disputed that the LBO Transaction and the LBO Related Causes of Action are exceedingly complex and present manifold difficult legal and factual issues. As proof of the point, the Examiner just completed a multi-million dollar investigation resulting in an over 1,000 page report with over 20,000 pages of documentary exhibits and numerous transcripts from some of the thirty-eight witness interviews he conducted. Given the magnitude and complexity of the Examiner's investigation, just digesting and assessing the Examiner's report will take up a meaningful portion of the approximately 30 days left before the confirmation hearing. This cannot be reasonably and properly accomplished while also conducting all of the fact depositions and expert discovery, not to mention objections and responses to the Plan and preparing for the confirmation hearing.

19.     More important than volume, however, the Examiner's report includes numerous findings regarding intentional fraud by the Debtors' officers and directors and bad faith by agent banks that were clearly outside the contemplation of the Debtors and the UCC while the Plan was being prepared and were obviously not accounted for in reaching the so-called "Global Settlement". The Bridge Agent submits that additional time is required to adequately analyze and take discovery on these issues.

20.     Specifically, the Examiner concluded that it is somewhat likely that Step 2 of the LBO Transaction was an *intentional* fraudulent conveyance of billions of dollars based on conduct of officers of Tribune and that it is reasonably likely that such officers also breached their fiduciary duties. This is a new revelation and obviously was not something contemplated

-7-

by the UCC and the Debtors in their examination of the LBO Related Causes of Action. Indeed,
the Debtors state in the Disclosure Statement that the "most significant" LBO Related Causes of
Action investigated were "claims for *constructive* fraudulent conveyance." Disclosure
Statement at 67 (emphasis added). If intentional fraud had been identified, it is hard to imagine
that the Plan would give these officers releases without requiring them to make any contribution
to the Settlement.[5]

21.     The parties and their experts now need the opportunity to fully explore the facts
surrounding the Examiner's findings in this regard – which findings the Debtors will surely
dispute – in advance of the confirmation hearing. This is over and above previously
contemplated discovery.

22.     As another example, the Examiner concluded that it is reasonably likely that the
agent banks for Step 2 of the LBO Transaction (including Merrill Lynch and JPMorgan) did not
act in good faith in connection with Step 2 of the LBO Transaction, and that the holders of Step
Two Debt would be tainted with the actions of their agent. Given that the agent banks are not
contributing to the Global Settlement in their capacity as agent banks, it is apparent that the
parties who prepared the Plan and the Settlement also did not account for this result. Bad faith is
a highly factual issue that, again, the parties and their experts require further time to explore as
well as to test the Examiner's conclusions.

23.     Furthermore, the Examiner concluded that approximately $4 billion in payments
made to shareholders (including substantial payments to management) following the Step 2
Transactions are reasonably likely to be subject to avoidance. Efforts to recover such payments

---

[5] The Bridge Agent will be surprised if the UCC does not also wish to extend the schedule to allow time to look into
the issues raised by the Examiner that were obviously not uncovered during the UCC's lengthy and expensive
investigation of the LBO Related Causes of Action.

-8-

are not even contemplated in connection with the Settlement and instead all such claims will be released.

24.     Simply put, the architects of this Settlement and Plan are the Debtors (whose officers were implicated in the intentionally fraudulent conveyance) and the agent banks (who were found to have acted in bad faith). They should not be permitted to proceed on this unrealistic schedule in an effort to deprive innocent third parties of the ability to obtain a fair hearing on their objections to the Plan. The Bridge Agent respectfully submits that consideration of the Settlement and Plan on this time frame is simply unjust.

### *The Debtors' MIP Motion Should Likewise Be Continued*

25.     Lastly, the hearing on the Debtors' MIP Motion should similarly be continued. The Debtors' MIP Motion seeks to make an almost $43 million distribution from the estate to "top management" of Tribune and other insiders after Plan confirmation. Given the Examiner's findings regarding Tribune's officers having breached their fiduciary duties, it is premature at best to address Tribune's management incentive plan at the currently scheduled hearing on August 9, 2010. All of these issues should be considered at confirmation.

*[Intentionally Left Blank]*

-9-

## **CONCLUSION**

26.     In light of the foregoing, the Bridge Agent respectfully requests that (A) the

August 30, 2010 hearing on confirmation of the Debtors' proposed Plan, (B) the August 9, 2010

hearing on the Debtors' MIP Motion, and (C) the dates in the amended Scheduling Order be

continued for a period of not less than 90 days.

Dated:   July 30, 2010
        Wilmington, Delaware

**FOX ROTHSCHILD LLP**

Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
John H. Strock (No. 4965)
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

-and-

David G. Hille (admitted *pro hac vice*)
Scott Greissman (admitted *pro hac vice*)
Andrew W. Hammond (admitted *pro hac vice*)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

Thomas E Lauria (admitted *pro hac vice*)
WHITE & CASE LLP
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700

Attorneys for Wells Fargo Bank, N.A.
as Administrative Agent under the
Bridge Credit Agreement

-10-