**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Related to Docket Nos. 4852 and 4943** |

**DEBTORS' SUPPLEMENT WITH RESPECT TO THEIR (I) OPPOSITION TO THE MOTION OF BRIDGE AGENT FOR ENTRY OF ORDERS (A) ESTABLISHING PROCEDURES FOR ADJUDICATING DEBTORS' OBLIGATIONS TO THE BRIDGE LOAN CLAIMS IN CONJUNCTION WITH PLAN CONFIRMATION PROCEEDINGS AND (B) ALLOWING SUCH CLAIMS IN FULL AND (II) CROSS MOTION FOR ENTRY OF PRELIMINARY PRE-TRIAL SCHEDULING ORDER FOR THE PLAN CONFIRMATION HEARING**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), through their undersigned counsel, hereby submit this supplement (the "Supplement") to their (I) Opposition to the Motion of Bridge Agent for Entry of Orders (A)

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Establishing Procedures for Adjudicating Debtors' Obligations to the Bridge Loan Claims in Conjunction with Plan Confirmation Proceedings and (B) Allowing Such Claims in Full and (II) Cross Motion for Entry of Preliminary Pre-Trial Scheduling Order for the Plan Confirmation Hearing[2] filed on July 6, 2010 (the "Scheduling Motion"). (Dkt. 4943.) In support of the Supplement and the Scheduling Motion, Debtors respectfully state the following:

1. On July 6, 2010, Debtors filed the Scheduling Motion, requesting this Court enter an order regarding the appropriate scope and duration of the Plan Confirmation Hearing. (Dkt. 4943 at 9.) On July 14, 2010, this Court held a hearing on the Scheduling Motion. At that hearing, the Court indicated that it would defer resolution of the Scheduling Motion until the August 9, 2010 status hearing. (7/14/10 Hearing Transcript at 27, 56.) The Court also indicated that parties that wished to give additional observations concerning how the Confirmation Hearing should be conducted, could file a supplement to the Scheduling Motion by July 30, 2010, with any replies to those supplemental submissions due on August 5, 2010. (*Id.* at 59.)

2. The Court further explained that ruling on the Scheduling Motion at that time was premature because there were "important events" that had yet to take place. (*Id.* at 21-22, 27.) One of these events was the filing of the Report of Kenneth N. Klee, As Examiner ("Examiner's Report"), which the Court stated would "probably inform not just the parties, but the Court about the scope ... of the confirmation hearing." (*Id.* at 22, 44-45.)

3. The Examiner filed his full report under seal on July 26, 2010, with a summary and heavily-redacted version filed publicly. As a result of the Court's Order (Dkt. 5193), the parties have just yesterday, July 29, 2010, obtained a full, unredacted version of Examiner's Report, along with the exhibits, and related transcripts and financial models. While Debtors are

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries (Dkt. 4744) (the "Disclosure Statement").

reviewing the materials, and do not agree with all the Examiner's conclusions, there is no question but that the Report, exhibits, and transcripts provide a voluminous record of events surrounding the leveraged buy-out of Tribune in 2007 (the "LBO Transaction"). The Examiner conducted 38 interviews of witnesses, had access to the Document Depository that contained over 3 million pages of documents, and "received, reviewed, and considered hundreds of pages of briefing and tens of thousands of pages of documentation" from the parties in connection with his investigation. (Examiner's Report, Vol. 1 at 29-33.) The Examiner's Report itself contains a statement of facts that is over 670 pages in length, contains an analysis of the legal questions relating to the LBO Transaction that is over 420 pages in length, and includes over a thousand exhibits, including numerous transcripts of testimony taken under oath.

4. Debtors intend to present evidence at the Confirmation Hearing in support of each of the prerequisites for confirmation set forth in Bankruptcy Code Section 1129. Much of this evidence is expected to be typical of the type of evidence presented at most confirmation hearings, and Debtors anticipate submitting affidavits in support of these elements, which will streamline the confirmation process. The Debtors will also expect to submit expert analysis and testimony as to the Debtor's present distributable value, which will, among things, inform the Court as which creditor constituencies are, or are not, "in the money," depending upon assumptions as to the validity and enforceability of the claims relating to the LBO Transaction.

5. Debtors further expect that a major portion of the confirmation hearing will involve evidence, submissions and arguments regarding approval of the settlement proposed in the Plan of Reorganization ("Plan"). Creditor voting will, of course, be relevant to such approval. In addition, Debtors agree with the Court's observation that the Examiner's Report will inform, to some degree, the scope of the Confirmation Hearing in regard to approval of the

settlement embodied in the Plan. (*See* 7/14/10 Hearing Transcript at 44-45.) Given the very extensive record that the Examiner has created, it seems clear that the Court can and should use the Report as the factual baseline, together with creditor voting results, to assist in framing the Court's ultimate assessment of the Plan. Specifically, Debtors suggest that the Court clarify that the Confirmation Hearing be principally focused on two issues: (1) whether the statement of facts and conclusions of law in the Examiner's Report that are relevant to the settlement proposed in the Plan are accurate, and if not, what evidence and law supports that party's position; and (2) whether the settlement proposed by the Debtors in the Plan is within the range of reasonableness.

6. Such an approach has three principal benefits. *First*, it will help to define the scope of fact discovery that may be necessary in connection with any evidentiary presentations that may be presented at the Confirmation Hearing. Using the Examiner's Report as a baseline for the hearing will help shorten and focus any additional fact discovery to those matters that are truly in dispute. *Second*, using the Examiner's Report as a baseline will help the Parties streamline the scope and nature of any expert opinion testimony. In fact, given the scope of the Examiner's Report, some parties may conclude they do not need to submit expert reports, but instead, may be willing to rely on the findings of the Examiner on particular issues. At a minimum, the Examiner's Report will help frame the issues and focus the experts on the question of whether they agree or disagree with the factual or legal conclusions set forth in the Examiner's Report. *Third*, using the Examiner's Report to frame the issues will help streamline the Confirmation Hearing itself by ensuring that there are a common set of underlying facts, thereby hopefully shortening the length of the hearing by not requiring the parties to submit duplicative

evidence of facts or legal analysis that has already been extensively assembled and set forth in Examiner's Report.

7. At this point, the parties, which only obtained access to the unredacted Examiner's Report and accompanying supporting materials late yesterday afternoon, have had only a very limited opportunity for review. Further, given the size of the Report and its numerous exhibits, as well as the transcripts of a number of interviews and other supporting documentation, including financial models, the parties have not had an adequate opportunity to fully digest and analyze the materials and formulate views on what specifically they agree or disagree with, nor have the parties likely had an opportunity to fully assess the potential impact the Examiner's findings and conclusions on the Plan and the issues to be considered at the Confirmation Hearing.

8. As noted above, the Court has set a date of August 5, 2010 for the parties to file any reply submissions relating to supplemental filings concerning the Scheduling Motion. Given the current situation, Debtors respectfully suggest that, with the benefit of additional review of the unredacted Examiner's Report, the parties should file proposals on that date with respect to how, if at all, the Examiner's Report should be used to frame any fact discovery, expert reports and the Confirmation Hearing itself. Then, following that submission on August 5, 2010, Debtors believe it would be beneficial for the parties to have a meet and confer conference in advance of the August 9, 2010 status hearing to discuss the procedures to be used at the Confirmation Hearing and to attempt to formulate a joint proposal, to the extent feasible, as to how the Confirmation Hearing should be conducted. Indeed, Debtors would be willing to host such a conference on August 6, 2010.

9. Debtors further propose that the date for the submission of the expert reports be extended from August 4, 2010 to August 11, 2010 and that the date for commencement of expert depositions be extended from August 11, 2010 to August 13, 2010. Given the size of the Examiner's Report and accompanying supporting materials as well as the fact that the Parties were not provided access to the unredacted version of these materials until late yesterday, such an extension is needed to enable the experts to review and take account of the voluminous material contained in the Examiner's Report, the exhibits, transcripts and the financial models. This proposed extension, which is the subject of a separate motion, is also appropriate given the delay that the Parties have experienced in obtaining the materials as well as the fact that the size of the Examiner's Report and accompanying supporting materials is much greater than was anticipated at the time that the schedule was first established.

10. As noted above, the current schedule requires such reports to be filed on August 4, 2010, with expert depositions not to begin before August 11, 2010. That date, however, contemplated that the experts would have had access to the full, unredacted Examiner's Report on July 26, 2010. Additionally, it was not anticipated that the Examiner's Report would consist of more than 1,000 pages, not including the extensive supporting materials that includes interview transcripts, financial models, and over 1100 exhibits. Given this delay, the sheer size of the record created by the Examiner and the potential implications of the Examiner's conclusions based on that record, the parties' experts clearly need additional time to analyze and meaningfully review the materials and then incorporate them into a written report reflecting their considered and expert opinions.[3]

[3] In this regard, the analysis necessary for voting purposes is qualitatively different that the work that the experts must do in order to determine the impact, if any, on their opinions and analysis. In addition to reading the Examiner's Report and supporting materials to form a view as to the merits of the Examiner's conclusions, the experts will also have to access the impact of the Examiner's findings and conclusions on their respective opinions

11. Moreover, as noted above, the Parties may well conclude that their designated experts do not need to submit reports, but instead, a party may be willing to rely on the findings of the Examiner on a particular issue. That determination, in turn, could be informed by what the contours of the Confirmation Hearing look like, which will be the subject of the anticipated meet and confer process described above as well as the status conference set for August 9, 2010.

12. For these reasons, Debtors respectfully request that the date for expert reports to be served should be moved to August 11, 2010, with expert depositions to begin August 13, 2010. Debtors would not propose to adjust any of the other dates at this point, including fact discovery, but recognize, of course, that this will be a topic that will need to be discussed both at the August 6, 2010 proposed meet and confer and the August 9, 2010 status conference.

---

and then set forth in their written reports both their assessment of the Examiner's Report and his findings and conclusions as well as the support for that assessment. As noted above, the Report includes a number of allegations regarding the Leveraged ESOP transactions, some of which are entirely new to the case. Further, the record is voluminous. As such, the experts will clearly need sufficient time to review and assess that underlying record – which includes the analytical work done by the Examiner's financial advisors -- in developing their views as to the significance of the Examiner's stated conclusions.

Dated: Wilmington, Delaware
July 30, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Bryan Krakauer
James F. Bendernagel, Jr.
James W. Ducayet
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: [signature]
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION