**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, *et al.*, | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | RE: Docket Nos. 5114, 5199 |
| | Hearing Date: August 3, 2010 @ 1:00 p.m. |
| _____ | Objection Deadline: August 2, 2010 @ 4:00 p.m. |

**RESPONSE BY AURELIUS CAPITAL MANAGEMENT, LP TO MOTION OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., FOR ORDER (1) TEMPORARILY AUTHORIZING THE FILING OF THE EXAMINER'S ENTIRE REPORT AND CERTAIN DOCUMENTS UNDER SEAL; AND (2) OVERRULING THE CLAIMS OF CONFIDENTIALITY WITH RESPECT TO THE REPORT AND ITS EXHIBITS**

Aurelius Capital Management, LP ("*Aurelius*"), manager of funds that are beneficial owners of certain bonds issued by a Debtor in the above-captioned chapter 11 cases, hereby responds (the "*Response*") to the Motion (the "*Motion*") of Court-Appointed Examiner, Kenneth N. Klee, Esq. (the "*Examiner*"), for Order (1) Temporarily Authorizing the Filing of the Examiner's Entire Report and Certain Documents under Seal (collectively, the "*Report*"); and (2) Overruling the Claims of Confidentiality with respect to the Report and its Exhibits. In support hereof, Aurelius respectfully states as follows:

1.     Aurelius is a holder of the Senior Notes issued and outstanding under the Senior Notes Indentures (each as defined in the Debtors' *Amended Joint Plan of Reorganization* [Docket No. 5205] (the "*Plan*")). The Senior Notes are entitled to vote on the Plan. As such, Aurelius possesses an interest in obtaining an unredacted copy of

the Report so that it may make an informed decision as to whether to support the Plan. Given the Report's breadth, however, public access must be accompanied by a meaningful review period prior to the Plan voting and objection deadlines (currently set for August 6 and 13, respectively). For this reason, Aurelius respectfully requests that the Court not only authorizes the public filing of the unredacted Report but also extends the voting and objection deadlines by 30 days each. Relatedly, the May 17, 2010 Record Date should be reset to August 2, 2010 as claims continue to be actively traded.[1]

       2.       Four principle reasons exist why the entire Report should be made publicly available: First, the Examiner has indicated that the redacted Report "severely impair[s] the substance and quality of the Report, and render[s] it of little value to the reader." Motion at 12, ¶ 30. The Examiner was not employed merely to compound the intrigue surrounding LBO causes of action most critical to creditor recoveries but to inform creditors of their details fully. Creditors such as Aurelius always expected that the Report would be made publicly available in its entirety sufficiently in advance of the voting and confirmation objection deadlines.

       3.       Second, Aurelius is at a severe informational disadvantage because several parties now possess full access to the Report based on the Court's *Order Approving Motion to Authorize the Disclosure of the Examiner's Report Pursuant to the Terms of the Document Depository Order* [Docket No. 5193]. Whether Aurelius actively supports or opposes the Plan, any significant counterweight will likely possess full access to the

---

[1] Aurelius has requested herein to extend the voting and objection deadlines and to reset the Record Date based on the Court's statements at the July 29 hearing that it would consider extending confirmation dates at the August 3 hearing on the Motion.

Report.  Such informational disparity is anathema to a level playing field and unworkable in the context of a contested confirmation with so many parties in interest.

4.    Third, as underscored by the Examiner, the *Order Approving Work and Expense Plan and Modifying Examiner Order* [Docket No. 4321] at paragraph 4 unequivocally states that "the Parties will not assert attorney-client privilege, attorney work product protection, or any other applicable privilege, protection or immunity with respect to the specific documents or information so disclosed [to the Examiner] or incorporated [in the Report]."  This language appears broad enough to cover any claim of confidentiality, mandating full disclosure of the Report.

5.    Fourth, both the Bankruptcy Code and public policy strongly militate in favor of public disclosure of the Report.  Section 107 of the Bankruptcy Code compels public access to "a paper filed in a case under [chapter 11] and dockets of a bankruptcy court," except to the limited extent necessary to protect a party in interest from the disclosure of, (i) "a trade secret or confidential research, development, or commercial information," 11 U.S.C. § 107(b)(1), (ii) "scandalous or defamatory matter," 11 U.S.C. § 107(b)(2), or (iii) information that "would create undue risk of identity theft or other unlawful injury. . . ."  11 U.S.C. § 107(c).  Section 107 sets forth the universe of information protected by a bankruptcy court in determining whether to seal records from public view.  "Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the express exceptions in § 107(b) or (c), it must be open to public inspection." *In re Food Mgmt., Group, LLC*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007).

6.    In compelling public disclosure of bankruptcy court filed documents, section 107 embodies and codifies powerful public policy considerations favoring the

transparency of judicial proceedings. *See, e.g., Video Software Dealer's Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994) ("This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard the integrity, quality, and respect in our judicial system. . .") (internal citation and quotation marks omitted). The broad societal interest in judicial transparency has been repeatedly identified as a critical consideration in determining when to ban public access to information in bankruptcy cases. *See, e.g., Gitto v. Worchester Telegram & Gazette (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.") (quoting *Fern v. United States Trustee (In re Crawford)*, 194 F.3d 954, 960 (9th Cir. 1999)). The party seeking to restrict public access to filings with a bankruptcy court has the heavy burden of demonstrating that the material sought to be maintained under seal falls within an exception to the rule in favor of public filings. *See., e.g., Food Mgmt.*, 359 B.R. at 561.

7.    Here, section 107 of the Bankruptcy Code and public policy strongly favor the filing of the Report in unredacted form. While the issue of confidentiality remains within the purview of the Court, it is significant that the neutral Examiner who is intimately familiar with the subject information has found that many of the confidentiality assertions are not well founded or asserted in good faith and has requested that "the Court overrule the various claims of confidentiality." Motion at 12, ¶ 31; 20, ¶

53. As a result, the Examiner's conclusions in respect of confidentiality should be given great deference.[2]

8. The Examiner has spent vast sums of estate monies to investigate and publicly report on the most salient LBO causes of action. *See Agreed Order Directing the Appointment of an Examiner* at 4, ¶ 5 [Docket No. 4120]. A substantially redacted Report falls well short of the expectations of both the Court and creditors. The importance of the Report in the context of the Plan cannot be overstated. Creditors should be allowed to review the Report to determine whether or not they are obtaining sufficient value under the Plan on account of the LBO causes of action discussed in the Report. In its current, redacted form, however, creditors cannot meaningfully undertake such analysis.

9. For this reason Aurelius desires both the Report's full disclosure, as well as a reasonable opportunity to review the Report prior to Plan-confirmation related deadlines. The current voting and objection deadlines are unworkable if a creditor, such as Aurelius, desires to meaningfully analyze the Report. As a threshold matter, the issue is broader than voting *per se*. Aurelius is not seeking the Report simply to determine how it will vote on the Plan, but rather it seeks the Report in unredacted form to inform itself of the legal positions and objections that it or others may wish to raise in respect of the Plan. As stated, a number of significant parties to these cases now possess complete access to the Report, and their support of or objection to the Plan will undoubtedly be

---

[2] Aurelius reserves the right to contest any assertion of confidentiality at the hearing on the Motion.

swayed by the Report's findings. Aurelius should likewise be afforded the benefit of the Report so that it may make a fully informed decision in respect of the Plan.

10.     Aurelius cannot make any such informed decision, however, because key factual findings are redacted from the Report. Numerous important issues are characterized as close calls by the Examiner, and Aurelius should be permitted unfettered access to such findings to draw its own conclusions prior to the voting deadline. Aurelius should not be placed in a position where it must accept the Examiner's conclusions at face value without the revelation of the underlying facts. The statements made by the Official Creditors Committee at the July 29 hearing that only lawyers care about the details is simply not true. Aurelius is desirous of the underlying facts and also, as an example, the Report's exhibit containing a recovery analysis, a sentiment undoubtedly shared by other creditors.

11.     It cannot be gainsaid that the LBO causes of action are both complex and central to these cases. In connection with the hearing on the Disclosure Statement, the Debtors argued that merely a cursory overview of the LBO causes of action in the Disclosure Statement was adequate because creditors would be entitled to the full independent judgment of the Examiner prior to voting. Now, contrary to those representations, Aurelius is being asked to vote without being afforded a chance to understand the Examiner's conclusions. Aurelius' inability to meaningfully review the Report is especially absurd in the light of the Debtors' *Motion to Amend Discovery and Scheduling Order for Plan Confirmation* [Docket No. 5222] (the "*Motion to Amend*"). Although the Motion to Amend only seeks to extend the dates by which parties are to comply with Fed. R. Bankr. P. 7026 and Fed. R. Civ. P. 26(a)(2) and commence expert

depositions, the Debtors nonetheless acknowledge the daunting task of digesting the Report in exceedingly short order:

> Additionally, it was not anticipated that the Examiner's Report would consist of more than 1,000 pages, not including the extensive supporting materials that includes interview transcripts, financial models, and over 1100 exhibits. Given this delay, the sheer size of the record created by the Examiner and the potential implications of the Examiner's conclusions based on that record, the parties' experts clearly need additional time to analyze and meaningfully review the materials and then incorporate them into a written report reflecting their considered and expert opinions.

Motion to Amend at 2-3, ¶ 4. As with the parties' experts, Aurelius likewise requires sufficient time prior to any voting and objection deadlines to analyze the Report.

12. Furthermore, any contention by the Debtors or other Plan proponents that we all must forge ahead as expeditiously as possible merely to avoid the possibility that a competing plan will be filed is misguided. This is so because the prospect of another plan should not curtail the rights of creditors from being adequately informed in respect of this Plan. Firstly, there does not seem to be significant harm to the Debtors if the voting deadline is extended. The Court has stated that it would not "untrack the debtors' confirmation track awaiting the process of any other plans that were filed to catch up." Tr. of 7/29/10 H'rg at 25. Secondly, since these cases commenced, any objective observer could quickly discern that the key issue in these cases was an understanding of the LBO causes of action. Now, the parties that are asking the Court to maintain the current voting and objection timetable are the same parties who let the first eight months of these cases slip away without commencing a serious investigation of the LBO causes of action, and then they approached the subject matter only reluctantly.

13. The LBO issues are too complex and the dollars at stake too large to simply shrug off the bedrock principal that creditors are to be adequately informed prior to voting or objecting to a plan of reorganization. Contrary to the self-serving statements made by the Plan proponents at the July 29 hearing, sufficient public information does not exist for creditors to make an informed voting decision. If sufficient public information existed, as certain parties assert, there would have been no need for the Examiner or his Report. Creditors should not be prejudiced by an extremely unfair timeline resulting from the actions (or lack thereof) of the Plan proponents through a large part of this case. The singular goal of avoiding a competing plan cannot justify a confirmation schedule that would force creditors to vote without the opportunity to fully vet the Report.

14. A symbiotic relationship has always existed between the filing of the Report and the voting and objection deadlines and confirmation hearing date. While these deadlines were tight when initially set, the deadlines were designed to provide creditors time to review the Report prior to voting on and objecting to the Plan. Before the plan proponents even knew that the Report would be so comprehensive, creditors possessed 18 days to review the Report prior to voting on the Plan. *See Order Approving Disclosure Statement and Establishing Procedures for Solicitation and Tabulation of Votes* [Docket No. 4707] (the "*Disclosure Statement Order*"). Upon extending the Examiner's deadline to file the Report, the Court likewise extended, among other dates, the voting and objection deadlines, although the Court truncated by seven days the period from the Report's issuance to the voting deadline. *See Order (I) Amending Certain Deadlines in (A) Discovery and Scheduling Order and (B) Solicitation Order, and (II)*

*Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq. for Extension of Report Deadline* [Docket No. 4928].  Aurelius asks that the Court extend these dates by 30 days so that it may be afforded a reasonable opportunity to analyze the unredacted Report prior to the voting and objection deadlines.

       15.    Aurelius also requests that the Court reset the Record Date to August 2, 2010.  The Court set May 17, 2010 as "the Record Date for purpose of determining (i) the Holders of Claims that are entitled to vote on the Plan. . . ."  Disclosure Statement Order at 6, ¶ 3. Obviously, the completion and release of the Report was a key milestone in these cases.  Those that currently hold claims and whose positions are affected by the contents of the Report should be the ones voting on the Plan.  Indeed, tens if not hundreds of millions of claims have traded since the Record Date.  As a result, many parties with the true economic interest in the Plan are unlikely to be able to vote their claims while those who previously sold their claims after the Record Date will be entitled to vote on the Plan.  For these reasons, Aurelius requests that the Court reset the May 17 Record Date to August 2, 2010.

**CONCLUSION**

**WHEREFORE**, Aurelius respectfully requests that the Court (a) grant the Motion and order the Examiner to file an unredacted version of the Report; (b) extend the voting and objection deadlines by 30 days to afford Aurelius a reasonable opportunity to review the Report; (c) reset the Record Date to August 2, 2010 so that current creditors may vote on the Plan; and (d) provide Aurelius with such other and further relief as the Court deems just and appropriate.

Dated: August 2, 2010

FERRY, JOSEPH & PEARCE, P.A.

/s/ Theodore J. Tacconelli
Theodore J. Tacconelli (No.2678)
824 Market Street, Suite 1000
P.O. Box 1351
Wilmington, DE 19899
(302) 575-1555

-and-

Scott L. Baena (pro hac vice pending)
Matthew I. Kramer, Esquire (pro hac vice pending)
Bilzin Sumberg Baena Price
& Axelrod, LLP
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-2336
(305) 374-7580

*Counsel for Aurelius Capital Management, LP*