UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING
## SECOND QUARTERLY FEE APPLICATION OF DANIEL J. EDELMAN, INC.

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 540] (the "**Fee Examiner Order**") in connection with the *Second Quarterly Fee Application of Daniel J. Edelman, Inc.* [Docket No. 2357] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $18,908.75

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); ForSaleByOwner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; K.IAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call Inc (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

for the period from June 1, 2009, through August 31, 2009. Daniel J. Edelman, Inc. ("**Edelman**") serves as Corporate Communications and Investor Relations Consultants for the Debtors and Debtors-in-Possession.

## Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On December 26, 2008, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ Daniel J. Edelman, Inc. as Corporate Communications and Investor Relations Consultants Pursuant to 11 U.S.C. Sections 327(a) and 1107, Nunc Pro Tunc to the Petition Date* [Docket No. 146] (the "**Retention Application**"). On March 9, 2009, this Court approved the retention of Edelman (see *Order Authorizing Debtors to Retain and Daniel J. Edelman, Inc. as Corporate Communications and Investor Relations Consultants* [Docket No. 498] (the "**Retention Order**")).

3. Edelman submitted the Fee Application on October 15, 2009, pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5. The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6. Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7. A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the

exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.  The Fee Examiner evaluated the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings, and then issued a Preliminary Report with accompanying exhibits to Edelman. On June 7, 2010, the firm provided a written response addressing the issues raised in the Preliminary Report. After consideration of the additional information provided by Edelman, the Fee Examiner now issues this final report (the "**Final Report**") in a format designed to opine whether the requested fees of the Case Professional meet the applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines.

## DISCUSSION OF FINDINGS

### Technical Requirements

9.  **Reconciliation of Fees.**  The Fee Examiner compared the total amount of fees requested in the Fee Application ("**Fees Requested**") to the fees actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**"). The recomputation of fees revealed no difference between the Fees Requested and the Fees Computed.

10. **Block Billing.**[2] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that were a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[3] The Fee Examiner identified two block billed time entries. Given such a *de minimus* issue, the Fee Examiner makes no recommendation for a fee reduction but asks Edelman to eliminate any block billing in future applications.

11.  **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines* ¶(b)(4)(v). The Retention Application and supporting Declaration of Jeff R. Zilka both state that "[n]otwithstanding any contrary provisions in the Engagement Letter, Edelman will maintain all such time records in tenth-of-an-hour increments." See *Retention Application* ¶14. Nevertheless, Edelman invoiced time entries in quarter-hour increments (0.25, 0.50, 0.75, etc.). Billing in greater than tenth-hour increments is a practice that lends itself to the potential of increased rounding of time, thereby increasing the likelihood that the reported time charged is inflated. It is a practice widely criticized by courts and legal scholars and is typically prohibited by sophisticated consumers as it may result in the billing of time over and above the amount of time actually expended to perform a particular activity. The Fee Examiner requested that Edelman provide an explanation for the use of time increments greater than tenth-hour increments.

Edelman did not address the time increment issue when responding to the Preliminary Report. The Local Rules and UST Guidelines are clear, and Edelman's use of quarter-hour increments was raised previously in regard to the firm's first fee application. In order for rules and requirements to have meaning there must be consequences when they are not followed, especially when the firm

---

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

provides no explanation. The Fee Examiner recommends a 5% fee reduction ($945.44) due to Edleman's failure to comply with the Local Rules and UST Guidelines when recording hourly time.

### Review of Fees

12. **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*. The Fee Application provided the names, positions, and hourly rates of the six Edelman timekeepers who billed to this matter, consisting of one general manager, one managing director, two senior vice presidents, one senior account executive, and one assistant account executive. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[4]

The firm billed a total of 40.25 hours with associated fees of $18,908.75. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| General Manager | 17.00 | 42% | $11,900.00 | 63% |
| Managing Director | 2.75 | 7% | 1,196.25 | 6% |
| Senior Vice President | 8.25 | 20% | 3,588.75 | 19% |
| Senior Account Executive | 8.00 | 20% | 1,480.00 | 8% |
| Assistant Account Executive | 4.25 | 11% | 743.75 | 4% |
| TOTAL | 40.25 | 100% | $18,908.75 | 100% |

The blended hourly rate for Edelman timekeepers is $469.78.

---

[4] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

13. **Hourly Rate Increases.** Edelman increased the hourly rate of Mark R. Fulara between the first and second interim period. This rate increase from $95.00 to $175.00 appears to correspond with a position change from intern to assistant account executive.

14. **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*. In all but two instances, the firm activity descriptions were sufficiently detailed. The Fee Examiner makes no recommendation for a fee reduction resulting from insufficiently described time entries.

15. **Meetings, Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

a. <u>Nonfirm Conferences, Hearings, and Events.</u> Stuart Maue identified one occasion when two or more timekeepers billed to attend the same nonfirm conference. Contrary to Local Rule 2016-2, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 8.75 hours with $3,968.75 in associated fees, were displayed in **Exhibit B** to the Preliminary Report. We identified the timekeeper who appeared most responsible for the matter and/or the particular event (i.e., the individual leading rather than observing a nonfirm conference). The potentially duplicative and unnecessary timekeepers' entries total 6.25 hours with $2,218.75 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested from Edelman an explanation of the necessity of the multiple billers and their respective roles for each event attended by more than one timekeeper.

In response to the Preliminary Report, Edelman provided a detailed description of the conference, including the fact that Edelman sought and received from the Debtors permission multiple firm personnel to participate. Given the additional information provided, the Fee Examiner makes no recommendation for a fee reduction and Exhibit B is omitted from this report.

b. <u>Intraoffice Conferences.</u> Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Application contained only two entries that described intraoffice conferences, and the Fee Examiner identified no occasion when two or more Edelman timekeepers billed to attend the same intraoffice conference.

16. **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Examiner identified one billing entry relating to nonworking travel which was billed at the timekeeper's regular hourly rate, displayed in **Exhibit C** to the Preliminary Report. In addition, the entry was block billed, so it was not possible to determine the actual amount of travel time. The Fee

Examiner requested from Edelman the actual travel time for this entry, and informed the firm that, pending additional information, the Fee Examiner would recommend a fee reduction if any travel time was billed at full rate.

In response to the Preliminary Report, Edelman stated that the amount of travel time included in the blocked time entry amounted to 0.25 hour, prompting the Fee Examiner to again point out the firm's improper use of quarter-hour increments. The timekeeper in question billed the travel time at an hourly rate of $700.00; reducing the rate to $350.00 for the 0.25 hour travel results in a recommended fee reduction in the amount of $87.50. Exhibit C is attached to this report for the Court's reference.

17.     **Edelman Retention/Compensation.** Edelman billed 0.50 hour with associated fees of $350.00 to prepare the firm's retention documents and applications for compensation, which computes to approximately 2% of the Fees Computed. For informational purposes, the fee entries were displayed in **Exhibit D** to the Preliminary Report. Given the *de minimus* hours and fees, Exhibit D is omitted from this report.

### Review of Expenses

18.     The Fee Application did not include a request for the reimbursement of expenses.

### Conclusion

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $17,875.81 ($18,908.75 minus $1,032.94) for the period from June 1, 2009 through August 31, 2009. A summary of the recommendations is attached as Appendix A.

Respectfully submitted,

**STUART MAUE**

By: _____
John L. Decker
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone:   (314) 291-3030
Facsimile:    (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## APPENDIX A

## DANIEL J. EDELMAN, INC.

### SUMMARY OF FINDINGS

#### Second Quarterly Fee Application (June 1, 2009 through August 31, 2009)

**A.     Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $18,908.75 | |
| Expenses Requested | 0.00 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $18,908.75 |
| Fees Computed | $18,908.75 | |
| Expenses Computed | 0.00 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $18,908.75 |

**B.     Recommended Fee Allowance and Expense Reimbursement**

| | | |
|---|---:|---:|
| Fees Requested | $18,908.75 | |
| *Recommended Reduction for Time Increments* | | *($ 945.44)* |
| *Recommended Reduction for Travel* | | *(87.50)* |
| Subtotal | | *($1,032.94)* |
| RECOMMENDED FEE ALLOWANCE | | $17,875.81 |

-11-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 4th day of August, 2010.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Mr. Jeff Zilka
Executive Vice President
Daniel J. Edelman, Inc.
200 East Randolph Street, 63rd Floor
Chicago, IL  60601

_/s/ John L. Decker_
John L. Decker, Esq.

# EXHIBIT A

## SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL
## COMPUTED AT STANDARD RATES
### Daniel J. Edelman, Inc.

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JZIL | Zilka, Jeffrey R. | GENERAL MANAGER | $700.00 | $700.00 | 17.00 | $11,900.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $700.00 | | 17.00 | $11,900.00 |
| | | | | % of Total: | 42.24% | % of Total: 62.93% |
| MWIL | Wiley, Michael | MANAG DIRECTOR | $435.00 | $435.00 | 2.75 | $1,196.25 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $435.00 | | 2.75 | $1,196.25 |
| | | | | % of Total: | 6.83% | % of Total: 6.33% |
| PGOM | Gomes, Philip | SR VICE PRES | $435.00 | $435.00 | 5.25 | $2,283.75 |
| JDIL | Dillard, John | SR VICE PRES | $435.00 | $435.00 | 3.00 | $1,305.00 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $435.00 | | 8.25 | $3,588.75 |
| | | | | % of Total: | 20.50% | % of Total: 18.98% |
| AOSM | Osmar, Allison | SR ACCT EXEC | $185.00 | $185.00 | 8.00 | $1,480.00 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $185.00 | | 8.00 | $1,480.00 |
| | | | | % of Total: | 19.88% | % of Total: 7.83% |
| MFUL | Fulara, Mark R. | ASST ACCT EXEC | $175.00 | $175.00 | 4.25 | $743.75 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $175.00 | | 4.25 | $743.75 |
| | | | | % of Total: | 10.56% | % of Total: 3.93% |
| | Total No. of Billers: 6 | Blended Rate for Report: | $469.78 | | 40.25 | $18,908.75 |

EXHIBIT C
TRAVEL BILLED AT MORE THAN HALF-RATE
Daniel J. Edelman, Inc.

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Zilka, J | 0.75 | 525.00 |
|  | 0.75 | $525.00 |

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Post-Filing Administration/Social Media Counsel | 0.75 | 525.00 |
|  | 0.75 | $525.00 |

EXHIBIT C  PAGE 1 of 3

EXHIBIT C

TRAVEL BILLED AT MORE THAN HALF-RATE

Daniel J. Edelman, Inc.

| DATE | TIMEKEEPER NAME | ENTRY HOURS | HOURS | FEES | TASK HOURS | ~ | | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | *MATTER NAME: Post-Filing Administration/Social Media Counsel* |
| 08/20/09 | Zilka, J | 3.25 | 0.75 | 525.00 | 1.75 | A | 1 | RE-READ PAST CLIPS, WRITE POTENTIAL PLAN OF REORG QUESTIONS, EDITS FROM JOHN 1.75 |
| Thu | 20090831/17 | | | | 0.75 | A | 2 | MEET WITH GARY AT TRIBUNE TO DISCUSS STATE OF PLAY AND NEXT STEPS, |
| | | | | | 0.75 | A | 3 | TRAVEL 1.5 TOTAL: 3.25 |
| | | | 0.75 | $525.00 | | | | |
| Total | | | | | | | | |
| Number of Entries: | 1 | | | | | | | |

~ See the last page of exhibit for explanation

EXHIBIT C  PAGE 2 of 3

EXHIBIT C
TRAVEL BILLED AT MORE THAN HALF-RATE
Daniel J. Edelman, Inc.

SUMMARY OF HOURS AND FEES BY INDIVIDUAL

| TIMEKEEPER NAME | HOURS | FEES |
|---|---|---|
| Zilka, J | 0.75 | 525.00 |
| | 0.75 | $525.00 |

SUMMARY OF HOURS AND FEES BY MATTER

| MATTER NAME | HOURS | FEES |
|---|---|---|
| Post-Filing Administration/Social Media Counsel | 0.75 | 525.00 |
| | 0.75 | $525.00 |

(~) REASONS FOR TASK HOUR ASSIGNMENTS

A    Task Hours Allocated By Fee Auditor

EXHIBIT C  PAGE 3 of 3