**Exhibit 3**

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TRIBUNE COMPANY, et al.

*Recommendation that Creditors
Vote <u>TO ACCEPT</u> the Plan*

June 1, 2010

The Official Committee of Unsecured Creditors of Tribune Company, et al. (the "<u>Committee</u>") recommends that unsecured creditors of the Debtors[1] vote to accept the Joint Plan of Reorganization for Tribune Company and its Subsidiaries (the "<u>Plan</u>").[2]

*What is the Official Committee of Unsecured Creditors?*

On December 18, 2008, the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors. The Committee represents the interests of all general unsecured creditors in the Debtors' bankruptcy cases. As detailed in Article VI.F of the Disclosure Statement, the Committee was, and remains, a diverse group of creditors of the Debtors, and includes the Pension Benefit Guaranty Corp., various trade creditors, financial institutions, indenture trustees, a union and a retiree. Following its appointment, the Committee retained various professionals to assist it in its duties, including attorneys, financial advisors and investment bankers.

*The Committee's Investigation of the Leveraged ESOP Transaction*

From the inception of these cases, the Committee recognized that the major issue in connection with any proposed plan of reorganization for the Debtors was the resolution of certain potential claims and causes of action arising from the transaction during calendar year 2007 pursuant to which the Company became privately held (the "<u>Leveraged ESOP Transaction</u>"). A substantial majority of the value allocation under the Plan to Holders of Allowed Other Parent Claims, Holders of Allowed Senior Noteholder Claims, and Holders of Allowed General Unsecured Claims against Subsidiary Debtors is attributable to the settlement of potential causes of action related to the Leveraged ESOP Transaction (the "<u>Settlement</u>").

Shortly after the formation of the Committee, certain members of the Committee (the "<u>Independent Members</u>") instructed the Committee's professionals to conduct a comprehensive review of the Leveraged ESOP Transaction to ascertain whether the Leveraged ESOP Transaction gave rise to one or more causes of action that might be prosecuted by the Debtors' estates. (The Independent Members only includes those members of the Committee that had not

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[2] The Committee's endorsement of the Plan does not affect any individual Committee member's right to vote and/or be heard on the Plan in such manner as that member sees fit.

-2-                                                                         June 1, 2010

participated in the Leveraged ESOP Transaction. Consistent with the Bylaws of the Committee, non-Independent Members have at all times recused themselves from any participation in the Committee's review of the Leveraged ESOP Transaction). The Independent Members directed the investigation of the Leveraged ESOP Transaction, including the analysis and possible prosecution of any claims arising therefrom.

During the course of the investigation, the Committee reviewed publicly available information and, under Federal Rule of Bankruptcy Procedure 2004, requested, received and reviewed documents from the Debtors and certain other parties that were involved in the Leveraged ESOP Transaction or its financing. In connection with the investigation, the Committee's professionals issued document requests to 46 parties, took the depositions of seven key witnesses, and reviewed over 325,000 documents consisting of over 4,000,000 pages.

In addition to factual discovery, the Committee and its professionals analyzed the legal claims that could potentially be asserted by the Debtors, the Committee or a subsequently-appointed bankruptcy trustee or litigation trust against the various parties involved in the Leveraged ESOP Transaction. Thus, the Committee analyzed numerous potential claims, including claims for fraudulent transfer, equitable subordination, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unlawful repurchase of shares, waste of corporate assets, preference, breach of contract, negligence and gross negligence. Ultimately, the Committee concluded that the estate held a number of potentially viable claims related to the Leveraged ESOP Transaction (collectively, the "Fraudulent Transfer Causes of Action").

By motion dated February 1, 2010, the Committee requested an order granting the Committee standing and authorizing the Committee to commence, prosecute or settle the Fraudulent Transfer Causes of Action (the "Standing Motion"). In connection with the Standing Motion, the Committee filed under seal a draft complaint asserting the Fraudulent Transfer Causes of Action. (To facilitate consideration of the Settlement, the Committee adjourned the Standing Motion.)

In addition, based on its extensive investigation, the Committee also concluded that the Debtors' estates have potentially viable claims against certain third party entities that were involved in the Leveraged ESOP Transaction but were not the subject of the Fraudulent Transfer Causes of Action. Accordingly, the Committee prepared a complaint asserting such claims against a number of parties including Tribune's board of directors at the time of the Leveraged ESOP Transaction, Tribune's largest shareholders during the relevant time period, and Samuel Zell and certain affiliates (collectively, the "Third Party Defendants"). As these claims are also subject to the Settlement, the Committee has refrained from taking any further action with regard to pursuing the Third Party Defendants, including seeking entry of an order granting leave, standing and authority to prosecute such claims, while consideration of the Settlement proceeds.

-3-                                June 1, 2010

*The Committee's Support of the Proposed Leveraged ESOP Settlement Agreement*

With the benefit of almost a year of investigation and review, the Committee engaged in intensive negotiations with the Debtors and certain other interested parties. After several months of discussions, the negotiations resulted in agreement on the economic terms set forth in the Settlement. Certain objecting parties suggest that the terms set forth in the Settlement are either, depending on which side they are on, too rich or not rich enough. Given the strongly held views by such opposing sides, the Committee suggests that the Settlement reached was fair and reasonable.

While the Committee believes that the Debtors' estates hold strong claims against different entities which could ultimately lead to substantial recoveries for the Debtors' estates, the Committee recognizes that there are a variety of defenses available to the putative defendants which make the successful prosecution of the claims uncertain. The expense, delay, complexity and inconvenience associated with prosecuting any litigation related to the Leveraged ESOP Transaction also weigh heavily in favor of the Settlement.

*Distributions Under the Plan of Reorganization*

If the Plan is confirmed and the transactions contemplated thereby are consummated (including the Settlement), the holders of unsecured claims against Tribune Company will receive significant distributions. Holders of Allowed Senior Noteholder Claims against Tribune Company will also receive 35.18% of the aggregate amount of their claims, in the form of each Holder's pro rata share of 7.4% of the New Senior Secured Term Loan, 7.4% of the Distributable Cash and 7.4% of the New Common Stock (subject to dilution by the Equity Incentive Plan). Holders of Allowed Other Parent Claims against Tribune Company will receive an amount of Distributable Cash equal to 35.18% of the aggregate amount of their claims. Holders of Allowed General Unsecured Claims against Subsidiary Debtors will receive payment in full in cash (without post-petition interest); provided, however, that if the Debtors estimate that the sum of all such claims exceeds $150 million in the aggregate,[3] each Holder of an Allowed General Unsecured Claim against Subsidiary Debtors will instead receive its Pro Rata share of $150 million in cash (without post-petition interest).

---

[3]   Pursuant to Section 3.3.5(c) of the Plan, the Senior Lender Settlement Committee may elect to waive this condition and provide additional consideration to Holders of Allowed General Unsecured Claims against Subsidiary Debtors.

-4-                                                                      June 1, 2010

*Conclusion*

Based on the Committee's exhaustive investigation as well as its extensive analyses of the various possible outcomes, the Committee believes that the Settlement is fair and appropriate and provides the best way to maximize the recovery to creditors under the circumstances. Accordingly, the Committee supports the Settlement and recommends that you vote in favor of the Debtors' Plan.

All unsecured creditors should carefully review the Plan and accompanying Disclosure Statement before voting. Unsecured creditors should also review the upcoming report of the Examiner, Kenneth N. Klee, Esq., who was appointed by order of the Court on May 11, 2010 to further investigate, among other things, certain potential claims and defenses asserted by various parties in connection with the Leveraged ESOP Transaction. All unsecured creditors are invited to view the Creditors' Committee's website (http://www.kccllc.net/tribunecommittee) for access to the Plan, the Disclosure Statement, and the Examiner's report (anticipated to become available July 12, 2010), for additional information regarding the Debtors' cases, to obtain copies of the relevant pleadings, and to submit questions to the Committee using the form on the website.

***The Creditors' Committee urges you to vote to accept the Plan in accordance with the voting instructions provided to you on the enclosed ballot***.

                      Very truly yours,

                      THE OFFICIAL COMMITTEE OF UNSECURED
                      CREDITORS OF TRIBUNE COMPANY, et al.