## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 5115** |

### DEBTORS' RESPONSE TO MOTION OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., FOR ORDER (I) DISCHARGING EXAMINER; (II) GRANTING RELIEF FROM THIRD-PARTY DISCOVERY; (III) APPROVING THE DISPOSITION OF CERTAIN DOCUMENTS AND INFORMATION; AND (IV) GRANTING CERTAIN ANCILLARY RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this Response to the relief requested in the Motion of Court-Appointed Examiner,

Kenneth N. Klee, Esq., For Order (I) Discharging Examiner; (II) Granting Relief From Third-

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and

(IV) Granting Certain Ancillary Relief [Docket No. 5115] (the "Discharge Motion")[2] filed on

July 23, 2010.  For the reasons stated herein, the Debtors submit that the Court should hold the

Discharge Motion in abeyance because the relief requested therein by Kenneth N. Klee, Esq. (the

"Examiner") is at this juncture both unwarranted and wholly premature.

   1. The Examiner's undertaking was intended to assist in the analysis and

disposition of issues related to, inter alia, the LBO-Related Causes of Action, and for that reason,

his Report was much anticipated by all interested parties, whatever their perspective on those

issues.  The resulting Report is comprised of four volumes totaling 1,425 pages and is supported

by approximately 1,100 exhibits totaling 21,290 pages and 15 transcripts of witness interviews

(including exhibits thereto) totaling 5,853 pages.  See Docket Nos. 5247-5250.  The complete

Report, totaling over 28,500 pages (with exhibits and transcripts),  has been available in

unredacted form for only approximately two weeks as of this filing.[3]  Creditors and other parties

in interest are still reviewing the reams of information contained in the Report and Investigative

Record and, obviously, will require a reasonable opportunity to thoroughly digest the Report's

contents and fully assess its implications for these cases.[4]

   2. Apart from the challenges posed in digesting the Report by its sheer mass,

the Examiner himself acknowledges that the depth of his investigative efforts and conclusions

are in some respects uneven, i.e., that his investigation and resulting conclusions were more in

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Discharge Motion and the Agreed Order Directing the Appointment of Examiner [Docket No. 4120].

[3] Due to certain confidentiality disputes, the Parties were not able to obtain the unredacted version of the Report and the exhibits to the Report until after the close of business on July 29, 2010.  The Report, together with exhibits and interview transcripts, was made publicly available only on August 3, 2010, when it was posted to the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), http://dm.epiq11.com/trb.

[4] The Report acknowledges that "the Examiner and his advisors considered and developed a massive amount of information" over the time period permitted by the Court.  (Report at 6.)  Accordingly, all parties in interest should be afforded a reasonable amount of time to digest the Report.

depth and definitive in some respects than they were in others.  As noted at the outset of the

Report, "The Examiner did not reach definitive conclusions regarding certain of the issues

considered in the Report, because, as noted, certain issues presented are difficult and nuanced.

As a result, by necessity, the Examiner established a full range of potential conclusions from

highly likely to highly unlikely, with steps in between." (Report at 5-6.)   In light of the

foregoing, it is clear that parties reviewing this Report must closely scrutinize it to understand

what the Examiner did and why, and what he concluded and why, in order to assess the relief

that the Examiner now seeks, to determine whether further information may be required from the

Examiner, and to identify the exit conditions that must be imposed on the Examiner and his

records before he is discharged.  There is no reason why this process should be rushed.

   3.  At the Debtors' omnibus hearings held on July 29, 2010 and August 3,

2010, this Court likewise expressed concern that the relief requested in the Discharge Motion

was premature.  Initially, on July 29, 2010, in response to counsel for the Examiner's question

whether the court would hear the Discharge Motion with the Examiner's motion regarding

certain claims of confidentiality on August 3 rather than August 9, the Court replied:  "No.  In

fact, I may end up moving it back from the 9th ... and the reason is, while I understand why the

Examiner is requesting that, I kind of like to see the dust settle before I let him go." (July 29,

2010 Hr'g Tr. 51: 3-4, 8-10.)[5]  The Court reiterated that same concern to the Examiner at the

August 3, 2010 hearing, when it further adjourned the hearing on the Discharge Motion to

August 20, stating, "I'd indicated previously that I thought that was premature understanding the

Examiner's legitimate desire to be relieved since his task is completed.  I think the words I'd

---

[5] The Court also expressed reluctance at the July 14, 2010 hearing to consider the type of relief requested in the Discharge Motion as soon after the Examiner filed the Report.  More specifically, in response to a comment by the Examiner's counsel regarding the Examiner's intention to seek public release of the Report, together with discharge at the August 9 hearing, the Court replied: "And I would likely be inclined to decide that portion of the relief on the 9th.  Whether I would approve exit conditions on that date is another issue." (July 14, 2010 Hr'g Tr. 13:11-13.)

CHI 5416984v.3
46429/0001-6940972v1

used were, I'd like to see the dust settle a little bit before we let you go, and I have not changed

by mind about that." (Aug. 3, 2010 Hr'g Tr. 43:11-16.) Those very same concerns are shared by

the Debtors and remain unabated as of this filing.

4.     In particular, the Discharge Motion seeks an order granting five items of

relief: (i) discharging the Examiner "from any commitments or representations with respect to

his duties as Examiner" (Discharge Motion ¶ 23); (ii) "prohibiting and enjoining" formal or

informal third-party discovery of documents or materials obtained by the Examiner, whether or

not cited in the Report (Discharge Motion ¶¶ 24-27);[6] (iii) authorizing the Examiner to transfer

the Report and the "non-confidential documents comprising the Investigative Record to Epiq"

(Discharge Motion ¶ 28);[7] (iv) exculpating the Examiner and his professionals in connection

with the Investigation and Report (Discharge Motion ¶ 31); (v) setting August 31, 2010 as the

deadline for the Examiner and his professionals to file final fee applications, setting September

21, 2010 as the objection deadline, scheduling a hearing on the final fee application not later than

45 days after the final fee applications are filed, and approving the reimbursement by the Debtors

of the Examiner's future reasonable fees and expenses without further Court approval (Discharge

Motion ¶¶ 35-36).[8]

5.     However the Court in due course disposes of each of the Examiner's

requests for relief, the Examiner has made no showing that any such relief is necessary at this

time, only a few weeks after producing the unredacted Report and supporting Investigative

---

[6] The prohibition would not apply to "requests for documents that the third party demonstrates it cannot obtain from any other source as long as such production does not violate any protective or other order of this Court or seek the production of Privileged Materials." (Discharge Motion ¶ 27.)

[7] Pursuant to the Court's order at the August 3 hearing, the transfer to Epiq of the Report and the non-confidential Investigative Record has already occurred.

[8] Specifically, the future fees and expenses for which such reimbursement would be sought would be those incurred in connection with (1) disposing of the Investigative Record, (2) responding to discovery requests, (3) preparation and prosecution of final fee applications and (4) "such other actions undertaken by the Examiner and his professionals at the request and direction of the Court." (Discharge Motion ¶ 36.)

Record. As explained above, the relief requested is premature for the following reasons. First, as previously noted, the Report together with the Investigative Record comprises more than 28,500 pages, and has been in the public domain for approximately two weeks as of this filing. The Debtors, their creditors, and other parties in interest are, by necessity, still in the process of reviewing, analyzing, and digesting the Examiner's myriad findings, and now publicly available supporting documents and transcripts. Given the sheer volume of the Report, closing the book immediately on the Examiner's engagement is plainly not warranted at this juncture. As the Court previously observed, it is too early to conclude that the "dust has settled."[9]

6.      Second, although the Debtors disagree with portions of the Report and understand that other Parties likewise have divergent views as to certain of the Report's findings and conclusions, it is evident that the Report will likely have an influence on the resolution of these cases, although the precise scope and manner in which it will be reflected are not yet fully known. In the short time since receiving the full Examiner's Report, the Debtors, the Parties, and other creditors and parties in interest have been assessing the potential implications of the Examiner's findings on the claims that are proposed to be resolved as part of the settlement embodied in the Debtors' plan of reorganization ("Plan"). It is readily apparent, however, that in order to fully assess the impact the Examiner's findings will have in these cases, the Debtors and other parties in interest may need to further probe certain of those findings, as well as what is and what is not contained in the Investigative Record supporting those findings. One thing is abundantly clear: in light of the potential impact of the Report, the Examiner's record must not be prematurely closed and must not, in whole or part, be destroyed. While no one suggests that the Examiner should be forced to remain engaged indefinitely, it is hardly difficult to envision that issues may arise regarding the Report that may require additional discovery or input from

---

[9] July 29, 2010 Hr'g Tr. 51:8-10; Aug. 3, 2010 Hr'g Tr. 43:11-16.

the Examiner.  For these reasons, it is unquestionably premature to terminate the Examiner's engagement.[10]

      7.      Third, it already is clear that the Discharge Motion is deficient because it fails to give adequate consideration to a number of conditions that must be responsibly addressed before any relief may issue.  The Report is silent, for example, as to an appropriate document retention policy for the thousands of documents in the Examiner's possession, whether or not cited in his Report.  Particularly in light of the possibility that litigation may ensue, a workable document retention policy must be developed, and not only for the "Investigative Record" that underlies or is cited specifically in the Report, but also for other materials collected by the Examiner and his team.  In this regard, the Motion makes no provision for the identification of these materials or for their preservation.  Likewise, it is unclear why third-party discovery should be prohibited for non-privileged material.  Additionally, the Discharge Motion fails to require any ongoing duty of cooperation by the Examiner, which may be important as the issues the Report addresses move forward to disposition.  These examples, and potentially others that will emerge as review of the Report continues and the Plan process itself proceeds, only serve to further highlight the need for a thoughtful and constructive approach to their resolution, taking into account the relevance of these issues to the Plan process and to the legitimate interests of all parties concerned, including potential litigants.

      8.      While the Examiner notes that courts have granted similar relief to examiners and their professionals in other proceedings, the orders cited by the Examiner in

---

[10] Considering that the Examiner and his professionals are reported to have incurred an estimated $12-15 million in fees and costs on this engagement (Zach Lowe, Bankruptcy Files Extra: Tribune Examiner Speaks, The Am. Law Daily, Aug. 6, 2010, available at http://mobile.www.law.com/jsp/tal/PubArticleTAL.jsp?id=1202464390545&pAugust__p_Bankruptcy_Files_Extra_ Tribune_Examiner_Speaks&slreturn=1&hbxlogin=1), it seems particularly prudent to ensure that value to the estates is not lost as a result of the Examiner's premature exit, before all interested constituencies have an opportunity to fully assess the Report and, if appropriate, seek additional input or clarification from the Examiner.

support of his position in the Discharge Motion actually underscore why the Examiner's

Discharge Motion is premature and will not enable an orderly and responsible exit.  Each of the

illustrative orders that the Examiner presents was entered only after parties had sufficient time to

review the examiner's report, give due consideration to the relief requested by the examiner, and

raise any objections or necessary conditions thereto.

9.      For example, in In re New Century TRS Holdings, Inc., Case No. 07-

10416 (KJC) (Bankr. D. Del. 2007), the examiner's final report was filed under seal on February

29, 2008 and the report was released from seal on March 26, 2008.  The examiner's motion

seeking a discharge, however, was not filed until July 28, 2008, after the plan was confirmed.

After multiple hearings on the motion, the court granted the examiner partial relief on May 1,

2009, more than a year after the report was unsealed and nine months following plan

confirmation.[11]  In re Lehman Brothers Holdings, Inc. et al., Case No. 08-13555 (JMP)

(Bankr. S.D.N.Y. 2008), the examiner filed the report under seal on February 8, 2010 and filed

the unsealed report on March 11, 2010.  The examiner's motion seeking discharge and

exculpation was not filed until June 2, 2010, and the court entered the order on July 13, 2010,

four months after the filing of the unsealed report.

10.      Similarly, in In re Semcrude, LP., et al., Case No. 08-11525 (BLS) (Bankr.

D. Del. 2008), the examiner completed the report on March 24, 2009 and filed the public report

on April 15, 2009 after providing the parties involved in the examination the opportunity to

review the report and respond with any confidentiality concerns.  The examiner filed his

discharge motion six weeks later on May 29, 2009 and the court entered the order on July 27,

---

[11] Additionally, the Debtors note that in the New Century order cited by the Examiner, the examiner did not request, nor did the court approve, any exculpation of the examiner or his professionals.

2009, again, over three months after the report was publicly filed.[12]  In each of these cases, the parties involved in the examination had sufficient opportunity to review the examiner's report and give proper consideration the scope and implications of the relief requested prior to the court's hearing with respect to such motion.

11.    The Debtors submit that the Court should not definitively consider the exit conditions for the Examiner until parties in interest have had a full opportunity to review and analyze the Report and the Investigative Record, and, in particular, until they have had the opportunity to assess the relief requested in context of the ongoing Plan process.  Indeed, as underscored by the precedents on which the Examiner himself relies, discharging an examiner less than a month after his Report is made publicly available is simply inappropriate in large and complex cases such as this one.  Moreover, rushing to a discharge in the current context, where the Report may play a role in the ultimate resolution of the cases, is wholly unwarranted and potentially prejudicial.

12.    For the reasons set forth herein, the Debtors respectfully request that the Court adjourn the Motion in order to allow parties an opportunity to fully analyze the Report and the Investigative Record, to assess through the Plan discovery process and otherwise whether additional input from the Examiner is necessary or appropriate, and to determine adequate means to address the document retention, third-party discovery, and cooperation issues discussed herein.

---

[12] In In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001), the examiner filed his final report on November 4, 2003 and filed his motion seeking discharge on the same day.  However, in the discharge motion, the examiner sought to be discharged of his duties as examiner as of December 31, 2003, and requested the exculpation consistent with the language that addresses exculpation for the debtors' professionals and the creditors' committee in the debtors' joint plan.  The court in Enron ultimately discharged the examiner of his duties as of December 31, 2003 and approved an exculpation provision that was effective as of the effective date of any plan of reorganization.  The court did not enter an order with respect to the limitation of discovery until February 19, 2004 and did not enter an order with respect to the disposition of documents until October 5, 2004.

13.     Toward that end, the Debtors respectfully reserve all objections to the

relief requested that may be appropriate and may be included in such further Response to the

Discharge Motion as the Court may permit upon deferring the Motion as requested herein.

Dated: Wilmington, Delaware                    Respectfully submitted,

   August 13, 2010                    SIDLEY AUSTIN LLP
                Bryan Krakauer
                James F. Conlan
                Janet E. Henderson
                Kevin T. Lantry
                Jessica C.K. Boelter
                One South Dearborn Street
                Chicago, Illinois  60603
                Telephone: (312) 853-7000
                Facsimile:  (312) 853-7036

                  -and-

                COLE, SCHOTZ, MEISEL,
                FORMAN & LEONARD, P.A.

                By: _____
                Norman L. Pernick (No. 2290)
                J. Kate Stickles (No. 2917)
                Patrick J. Reilley (No. 4451)
                500 Delaware Avenue, Suite 1410
                Wilmington, Delaware 19801
                Telephone: (302) 652-3131
                Facsimile:  (302) 652-3117

                COUNSEL FOR DEBTORS AND DEBTORS IN
                POSSESSION AND CERTAIN NON-DEBTOR
                AFFILIATES