IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket Nos. 5115 and 5382** |

### REPLY OF COURT-APPOINTED EXAMINER, KENNETH N. KLEE, ESQ., IN FURTHER SUPPORT OF HIS MOTION FOR AN ORDER (I) DISCHARGING EXAMINER; (II) GRANTING RELIEF FROM THIRD-PARTY DISCOVERY; (III) APPROVING THE DISPOSITION OF CERTAIN DOCUMENTS AND (IV) GRANTING CERTAIN ANCILLARY RELIEF

Kenneth N. Klee, Esq., the examiner (the "Examiner") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Tribune Company and its affiliates (collectively,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); FOIIM Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

the "Debtors"), by and through his undersigned counsel, respectfully submits this reply in further support of his Motion for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and (IV) Granting Certain Ancillary Relief [Docket No. 5115] (the "Discharge Motion"), which was filed July 23, 2010, originally noticed for hearing on August 9, 2010, and re-noticed for hearing on August 20, 2010 [Docket No. 5270].[2] In further support of the Discharge Motion, and in reply to the sole response received thereto [Docket No. 5382] (the "Debtors' Response"), the Examiner states as follows:

1. As set out in the Examiner Order and the Order Approving Work and Expense Plan and Modifying Examiner Order [Docket No. 4321] (the "Supplemental Order"), the Court directed the Examiner to (i) investigate and evaluate certain claims and contentions raised by the Parties, and (ii) prepare and file a report (the "Report") reflecting the Examiner's reasoning and conclusions. Examiner Order ¶¶ 2, 5; Supplemental Order ¶ 3. Having reviewed tens of thousands of pages of documentary evidence, conducted 38 witness interviews, and filed a four-volume, 1,200+ page Report, the Examiner has completed his assigned task. No Party has asserted that there is any additional work to be done by the Examiner, nor has anyone suggested that the Examiner did less than fully and completely discharge his duties. Indeed, not a single substantive objection to the Discharge Motion has been filed. Accordingly, absent any further assistance the Examiner can provide the Court, the time is now ripe to grant the relief requested in the Discharge Motion. The Examiner should not be left in limbo without any tasks to perform and without closure on his work.

---

[2] Capitalized terms not otherwise defined have the meaning set out in the Discharge Motion.

2. No Party claims that the relief sought by the Discharge Motion is unusual, inappropriate, or unwarranted in any respect. Instead, the sole response filed is a request by the Debtors that the Court adjourn the hearing on the Discharge Motion a third time, apparently indefinitely, while the Parties "thoroughly digest the Report's contents." Debtors' Response ¶ 1. Yet the Debtors and all other Parties already have everything they need to "digest" the Examiner's conclusions and the evidence upon which those conclusions are based—including more than 1,100 primary exhibits, hundreds of pages of transcribed interviews, and scores of additional interview exhibits (all of which have been posted to the internet), as well as the live financial models supporting the recovery scenarios (which were made available to the Parties pursuant to the Document Depository Order). The Debtors' arguments for holding the Examiner in indefinite limbo—and potentially seeking to saddle him and his professionals with burdensome discovery requests—are not well-taken.

3. The Debtors' general statement that they need more time to "digest" the Report (Debtors' Response ¶ 1) is not credible. The Debtors not only have reviewed the Report, they apparently have formed opinions about it and discussed those opinions with other Parties. *See* Debtors' Response ¶ 6 (stating that the Debtors "disagree with portions of the Report and understand that other Parties likewise have divergent views as to certain of the Report's findings and conclusions"). The Debtors' argument in this regard also is inconsistent with their position at the August 3, 2010 hearing that creditors needed only seventeen days to review the Report before voting on the proposed Plan by August 20, 2010. Tellingly, the Debtors' August 13, 2010 motion [Docket No. 5383] seeking to further extend their Plan deadlines says nothing about needing more time to read the Report, but instead seeks to extend the Plan deadlines to facilitate Plan negotiations (which undoubtedly have been influenced by the Report).

4. Far from supporting the Debtors' request for a third adjournment, the length and comprehensiveness of the Report and associated Investigative Record—which the Examiner on his own initiative fought to make publicly available—cut in favor of releasing the Examiner, because his conclusions and the precise basis for those conclusions are set out for everyone to see and evaluate. Additionally, the Examiner and his counsel contacted each of the Parties, including the Debtors, on the day the Report was filed and offered to answer questions concerning any portion of the Report or the Investigative Record that is unclear. Having never availed themselves of this opportunity, the Debtors (of all Parties) should not now be heard to complain of insufficient time to review the Report.

5. The claim that certain Parties may seek discovery of the Examiner to "probe certain of [his] findings, as well as what is and is not in the Investigative Record supporting those findings" (Debtors' Response ¶ 6) is, if anything, a basis for *granting* the relief sought in the Discharge Motion. All Parties are already barred from taking discovery of the Examiner without leave of the Court, *see* Supplemental Order ¶ 5; granting the Discharge Motion will expand the Parties' access to non-privileged materials not otherwise available, as the Debtors obliquely acknowledge. *See* Debtors' Response ¶ 4 n.6 (recognizing that the discovery bar sought in the Discharge Motion "would not apply to 'requests for documents that the third party demonstrates it cannot obtain from any other source as long as such production does not violate any protective or other order of this Court or seek the production of Privileged Materials'") (quoting Discharge Motion ¶ 27). Beyond that, discovery of the Examiner (who is, after all, an officer of the Court[3]) is neither necessary nor appropriate. These Chapter 11 Cases are litigious enough; parties should

---

[3] *See, e.g., In re New Century Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del. 2009); *In re Baldwin United Corp.*, 46 B.R. 314, 316-17 (Bankr. S.D. Ohio 1985).

not be able to use the threat of making the Examiner a pawn in negotiations undertaken against the backdrop of litigation. Subjecting examiners to harassment will discourage qualified individuals from serving in future cases.

6. The Debtors' concerns about "the Examiner's record [being] prematurely closed [or] destroyed" (Debtors' Response ¶¶ 6-7) are misplaced given the Court's prior orders and the precise relief sought in the Discharge Motion. To the extent the "record" to which the Debtors refer is comprised of each and every document on which the Report is based, along with each interview transcript (and every exhibit to every interview transcript), that record is now complete and is in the public domain, preserved indefinitely. To the extent the Debtors refer to other materials in the Examiner's possession, virtually everything either originated in the Document Depository (where it can be freely accessed by the Parties) or has been placed there by the Examiner (such as the live financial models supporting the recovery scenarios, which were made available to the Parties pursuant to the Document Depository Order). For other materials, the relief requested in the Discharge Motion carves out an exception for "requests for documents that . . . cannot [be] obtain[ed] from any other source as long as such production does not violate any protective or other order of this Court or seek the production of Privileged Materials." Discharge Motion ¶ 27. Moreover, the Court approved the Examiner's retention of Klee, Tuchin, Bogdanoff & Stern LLP ("KTB&S"), Saul Ewing LLP ("Saul Ewing"), and LECG, LLC ("LECG") on the terms set out in each firm's respective engagement letter,[4] and each such

---

[4] *See* Order Authorizing Retention of KTB&S as Counsel to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4498]; Order Pursuant to Section 327 of the Bankruptcy Code Authorizing Employment of Saul Ewing as Delaware Counsel to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4499]; Order Authorizing the Retention of LECG as Financial Advisor to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4500].

engagement letter specifically addresses the retention of files related to the engagement.[5] No Party objected to any of these employment applications or to the document retention policies set out therein.

7. With regard to the references in the Debtors' Response to the Court's prior comments on the timing of the Discharge Motion (Debtors' Response ¶¶ 3, 5), it is important to note that the Discharge Motion was originally noticed for hearing on August 9, 2010, and the Court's comments concerned whether to move the hearing to August 3, 2010, when the Court would consider the Examiner's motion to release the Report publicly. The Court thereafter considered the appropriate time for a hearing on this matter and scheduled the hearing for August 20, 2010. The Debtors did not object to the August 20 hearing date when it was set, and no Party other than the Debtors has objected to the Court's consideration of the Discharge Motion at this time.[6]

8. The Debtors' reference to the time period between the appointment and discharge of examiners in other cases does not support the conclusion that a delay is appropriate here. In

---

[5] *See* Declaration of Martin R. Barash in Support of Application of the Examiner for an Order Authorizing Retention of KTB&S as Counsel to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4357], Ex. B (Retention Letter) at 3; Application of the Examiner for an Order Authorizing the Retention of Saul Ewing as Delaware Counsel to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4358], Ex. A (Declaration of Mark Minuti), Ex. 1 (Engagement Letter) at 2 & Attachment (Standard Terms of Engagement for Legal Services); Declaration of F. Wayne Elggren in Support of Application of the Examiner for an Order Authorizing the Retention of LECG as Financial Advisor to the Examiner *Nunc Pro Tunc* to April 30, 2010 [Docket No. 4361], Ex. B (Retainer Agreement) at 2-3.

[6] Similarly unavailing is the suggestion in footnote 10 of the Debtors' Response that the amount of the fees incurred in connection with the Investigation somehow justifies a delay of the Discharge Motion. These issues are separate and distinct. The Examiner and his professionals file their fee applications with the Court, on notice to parties in interest, just as estate professionals are required to do. Any issues relating to the fees and expenses incurred by the Examiner and his professionals may be considered in the ordinary course. Such issues have no bearing on whether the work of the Examiner has been completed, and whether it is now appropriate to discharge the Examiner of his duties. Likewise, needlessly delaying final fee applications while the Debtors "digest" the Report would be unwarranted and prejudicial.

certain of those cases (including *New Century*), the terms of the discharge order were the subject of lengthy controversy. Here, by contrast, no Party has objected to the substance of the relief sought in the Discharge Motion. Moreover, unlike cases in which examiners had a lengthy period of time to conduct an investigation and file a report, by design the Investigation in these Chapter 11 Cases was extraordinarily brief, and the Examiner was charged with performing a very specific task, which he has completed. Prompt entry of the proposed discharge order is entirely consistent with the circumscribed timeframe of the Investigation.

9.  Contrary to the suggestion in the Debtors' Response, neither the Examiner nor the Investigative Record will disappear if the Examiner's Discharge Motion is granted. If the Court determines in the future that there is an additional role for the Examiner in these cases, the Examiner can be re-engaged at that time. If the Discharge Motion is granted, the Investigative Record will be preserved for a reasonable period of time, and the Examiner has proposed reasonable procedures for gaining access to non-privileged materials that cannot be obtained elsewhere. The Examiner has completed his assignment and should be discharged.

WHEREFORE, for all the reasons set out above and in the Discharge Motion, the Examiner respectfully submits that he has completed the work for which he was appointed and should accordingly be discharged on the terms and conditions set out in the Discharge Motion—the substance of which was not objected to by any Party, and is wholly consistent with relief afforded examiners in other cases.

Dated: August 17, 2010                Respectfully Submitted,

KLEE TUCHIN BOGDANOFF & STERN LLP

Lee R. Bogdanoff (CA. Bar No. 119542)
Martin R. Barash (CA Bar No. 162314)
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067-6059
Telephone:   (310) 407-4000
Facsimile:   (310) 407-9090

*Counsel to the Examiner*

and

SAUL EWING LLP

_____
Mark Minuti (Bar No. 2659)
Michael J. Farnan (Bar No. 5165)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone:   (302) 421-6840
Facsimile:   (302) 421-5873
Email: mminuti@saul.com

*Delaware Counsel to the Examiner*