

| 1999 Avenue of the Stars | voice: 310-407-4000 |
| Thirty-Ninth Floor | fax: 310-407-9090 |
| Los Angeles, California 90067 | www.ktbslaw.com |

E-mail: kklee@ktbslaw.com
Direct Dial: 310-407-4080

**CONFIDENTIAL**

May 10, 2010

To: The Parties Listed on Exhibit A
    Attached Hereto

     Re:   *In re Tribune Company, et al.* (collectively, "Debtors"); Request for
            Materials from Parties

Dear Counsel:

The purpose of this letter is to formalize certain previously made requests of the parties identified in this letter in connection with my examination pursuant to the Agreed Order Directing the Appointment of an Examiner, as the same has been or may be augmented ("Agreed Order"):

1.     Please furnish to me through my counsel any documents or analyses that may bear meaningfully upon the factual or legal subject matter of my investigation, especially as it pertains to the interests of your respective clients. I request that all submissions be transmitted (by electronic means if possible) to my proposed counsel, Klee, Tuchin, Bogdanoff & Stern LLP, c/o Martin Barash and Lee Bogdanoff, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067 (mbarash@ktbslaw.com) and Saul Ewing LLP, c/o Mark Minuti, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899 (mminuti@saul.com). I also request that you identify to me the names and contact information of any individuals that you believe I should interview or any discovery that you believe I should conduct in conjunction with my investigation.

2.     I request that, on or before May 21, 2010, the Debtors submit to me through my counsel an electronically annotated statement and documentary appendices setting forth the relevant "basic facts, agreements, and circumstances culminating in the 2007 LBO transaction" and, ultimately, the Debtors' chapter 11 cases. Without limiting the preceding, I request that the narrative cover: (i) the relevant Debtor entities and ownership structure; (ii) the transactions effectuated in

122533.3

To: The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 2

2006; (ii) the Debtors' decision to initiate the process which culminated in the 2007 LBO transaction, including the timing and participation in the relevant board meetings, the establishment of any special committees (and the conduct of the same), the retention of professionals, and the solicitation of proposals, etc.; (iii) the conduct of the sale process (i.e. the solicitation, bid and auction process); (iv) the transactions entered into in April 2007, including the principal agreements and the structure (and any undertakings and conditions contained therein with respect to Step 2); (v) the mechanism for funding of the consideration paid to various parties in connection with the closing of such transactions along with the sources and uses; (vi) the pre- and post-transaction capital structure, including the principal terms of the debt instruments; (vii) the transactions entered into and effectuated in December 2007; and (viii) any prepetition defaults, announcements concerning the same, and the commencement of the cases.  To the maximum extent possible, I urge the Debtors to circulate an initial draft of that narrative, or portions thereof, to the parties and attempt to reach agreement concerning the submission in advance of the submission on May 21, 2010.  I request that on that date, the Debtors furnish the final version of that narrative to me, through my counsel, and the recipients of this letter.

3.      I request that on or before 2:00 p.m., Eastern Time, May 24, 2010, the parties identified below submit to me, through my counsel, electronically annotated legal briefs and documentary appendices in support of their respective positions concerning the first item set forth in the Agreed Order that is the subject of my investigation (the evaluation of potential claims, causes of action, and defenses arising under and in connection with the 2007 LBO  transaction).  As I have discussed with you, I request that these submissions contain comprehensive legal and factual analyses of the issues that you believe are relevant, akin to submissions typically presented in connection with mediations, or trial briefs submitted on the eve of trial.  Your brief should address all claims and causes of action that you believe should be asserted on behalf of the estate; if you maintain that defenses are available in respect of any claim, you should discuss any defense that you believe is applicable.  The appendices submitted with the legal briefs should include: (i) all documents on which the factual contentions in the briefs are based and (ii) copies of any unreported opinions cited therein.

4.      The following <u>maximum</u> page limits apply with respect to the briefs that are due on May 24, 2010 (which page limits do not include tables of contents, tables of authorities, or the contents of the appendices):

Debtors .................................................................................... 75 pages

Official Creditors' Committee.................................................... 75 pages

JPMorganChase Bank N.A., as Agent ..................................... 50 pages

122533.3

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 3

| | |
|---|---|
| Credit Agreement Lenders | 50 pages |
| Wilmington Trust Company | 100 pages |
| Law Debenture Group/Centerbridge Credit Advisors LLC | 50 pages |
| Wells Fargo Bank, N.A. | 50 pages |

These page limits are generous.  Please do not attempt to perform a proverbial end-run around the limits by turning what really belongs in text into footnotes or by attempting to include substantive legal analysis in an appendix.

5.    I encourage you to avoid flowery introductions or rhetorical devices in lieu of concrete analyses and citations to factual support in the record.  I also encourage parties who are aligned with one another with respect to certain issues to attempt to allocate the briefing responsibilities so as to avoid duplication and maximize the impact of the briefing, even if you are adverse to such party as to another matter or the case generally.

6.    One purpose of the factual narrative described in paragraph 2 above is to relieve the parties of the need to include in their submissions background information, and to allow them to focus on the facts and documents that bear on their position.  To the extent the narrative prepared by the Debtors defines certain terms, your brief should use those defined terms.  To the extent you disagree with anything contained in the narrative, subject to the page limit for your brief, you may include in your brief what that disagreement is, and why.

7.    With respect to the second item set forth in the Agreed Order that is the subject of my investigation (i.e., the alleged automatic stay violation of Wilmington Trust), subject to the same deadline set forth above, I request that Wilmington Trust and the Debtors each furnish a supplemental brief of up to 10 pages.

8.    With respect to the third item set forth in the Agreed Order that is the subject of my investigation (the alleged violation of confidentiality undertakings by Wilmington Trust), subject to the same deadline set forth above, I request that Wilmington Trust, JPMorganChase Bank N.A., as Agent, the Debtors and the Official Creditors' Committee each furnish a supplemental brief on those matters of up to 10 pages.

9.    I intend to permit parties to submit reply briefs on or before June 7, 2010.  One purpose of the replies will be to enable a party to address claims or defenses that such party did not address in its opening brief, but were raised by another party in its opening brief.  I will notify the parties regarding page limits and any other requests within a reasonable time after the initial submissions.

122533.3

To: The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 4

10.    I reserve the right to permit other parties to submit briefs, and to otherwise modify anything contained in this letter.

11.    Detailed specifications for the narrative statement, briefs, reply briefs and appendices are set forth in Exhibit B hereto.  Please note that submission of these documents to my professionals must be in both hard copy and electronic form, as more fully described in Exhibit B.   The electronic version of all documents may be submitted to my professionals by CD-ROM, or may be uploaded to a secure document website that my professionals have established in connection with this matter.  In order to obtain a password to that website for purposes of delivering electronic materials to my professionals, please forward the name and email address of the person requiring access to Martin Barash of Klee, Tuchin, Bogdanoff & Stern LLP at mbarash@ktbslaw.com, no later than May 20, 2010.

12.    All submissions must be delivered to my professionals and served contemporaneously on the other parties, such that they are received no later than the deadline that I have established (or will establish) for those materials.

13.    To help focus your efforts, what follows is a list of questions and/or areas of consideration that I presently believe are germane to my examination.  The list is, unfortunately, not exhaustive and is not intended to serve as the outline for your briefs.  Feel free to use your allotted pages to address matters not addressed below.  Also, it is not necessary for each of you to address each and every point listed below.  Nor is it necessary for you to structure your briefs to pose and specifically answer each and every question:[1]

     a.    I am only interested in briefing on choice of law questions if the choice of law makes a difference to the outcome of an issue in dispute.  Accordingly, if you maintain that a particular law governing, for example, fraudulent transfer or conveyance, breach of fiduciary duty or aiding and abetting a breach of fiduciary duty makes a difference, please explain why that law would apply here.

     b.    To the extent Bankruptcy Code section 544(b)(1) is relevant to an issue in dispute, please identify the creditor or creditors, as to each estate, holding an unsecured claim that is allowable under Bankruptcy Code section 502 or that is not allowable only under section 502(e).

---

[1]    Please note that in this letter I sometimes use an informal phrase to describe a transaction (i.e. the 2007 LBO) or class of creditors (i.e. LBO Lenders).  Nothing substantive concerning the merits of the parties' positions is intended by these catch phrases.  Also, the fact that I do not pose a question about a particular cause of action does not mean that I am failing to give that matter serious attention.  Finally, the questions posed are not a matter of academic curiosity. They are, I believe, important questions necessary to help me conduct my investigation.

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 5

    c.    With respect to potential claims for intentional fraudulent transfer or conveyance, and focusing in particular on the respective transferor's intention and acts,[2] please specify the evidence that supports or mitigates against a conclusion that the relevant transferor intended to hinder, delay or defraud creditors as to a particular transfer.  Without limiting the scope of the preceding, I am interested in (i) the extent to which the so-called Tribune Broadcasting Holdco and Tribune Finance, LLC transactions bear upon such questions; (ii)  evidence of bad faith by insiders of Tribune, including concealment, misrepresentation or insider self-dealing in connection with the 2007 transaction, or knowledge of insolvency or undercapitalization; and (iii) if a particular transferor, acting by itself or in tandem with third parties, sought to structure the transaction to preserve the pre-existing structural subordination of some or all of the pre-LBO parent level indebtedness to the new LBO debt, the extent to which such actions could, even if proven, support a conclusion concerning intentional fraudulent transfer or conveyance.

    d.    Did any transferor intend to incur, or did any believe (or reasonably should have believed) that it would incur, debts beyond its ability to pay as they became due?

    e.    With respect to the so-called "collapse" of the transactions comprising Step 1 (and without reference to the separate question concerning the potential collapse of the Step 1 and Step 2 transactions, see below), what are the relative merits of the contention that, functionally, economically and as a matter of law the advances made by the LBO Lenders utilized to pay selling shareholders were transfers from the LBO Lenders to such shareholders for which the parent and/or guarantor subsidiaries received no or unreasonable consideration.  The same question is posed with respect to Step 2.

    f.    On the question of the "collapse" of the transactions comprising Step 1 and Step 2 and, specifically, the potential inclusion of Step 2 indebtedness for purposes of considering insolvency and unreasonably small capital in conjunction with Step 1, to what extent would the application of the doctrines governing the collapse of LBO transactions to the "collapse" suggested here represent an extension of the present law and, if so, is that extension merited?

---

[2]    As a general matters, references to a transferor includes an obligor.

122533.3

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 6

g.   On the question of the inclusion of Step 2 indebtedness for purposes of
     evaluating solvency and unreasonably small capital in connection with
     Step 1, to what extent is it appropriate under the law to include the
     Step 2 debt but discount that indebtedness by the probability that the
     Step 2 transaction would not be consummated and, if so, what would
     the appropriate discount be?

h.   I am interested in an analysis of solvency and unreasonably small
     capital if Step 1 and Step 2 indebtedness are, and are not, aggregated.

i.   To what extent are the (i) processes that resulted in the acceptance of
     the Zell bid and (ii) the trading value of Tribune's debt and equity
     securities immediately following Step 1 and Step 2, dispositive on the
     question of solvency within the Third Circuit; and does the evidence on
     these matters support a finding of solvency based thereon?  Along
     those lines, I am interested in the extent to which the Zell bid was a
     outlier and whether other bids were in the nature of expressions of
     interest or actual offers (and the conditions relating thereto).

j.   For purposes of considering insolvency and unreasonably small capital
     of the guarantor subsidiaries, (i) is it appropriate to aggregate the
     value of such entities in view of the joint and several liability of such
     entities on the LBO indebtedness; (ii) to what extent do inter-
     subsidiary and subsidiary-parent intercompany claims affect the
     preceding question; and (iii) to what extent, if at all, were any of the
     guarantor subsidiaries otherwise unable to satisfy their ratable share
     of such joint and several liability?

k.   To the extent inter-company claims make a difference on the question
     of solvency or unreasonably small capital, are those claims in fact debt,
     and if so, subject to offset or recoupment; and how may that affect the
     preceding questions?

l.   On the question of unreasonably small capital, please address (i) the
     effect of what appears to be the highly-leveraged nature of the 2007
     transaction on the company's ability to withstand reasonably
     foreseeable negative variations and performance; (ii) the likelihood
     that potential asset sales contemplated at the time of Step 1 would
     improve the company's liquidity and ability to service debt; and (iii)
     any reasonably available sources of liquidity.

m.   Leaving aside any advances that ultimately ended being remitted to
     the selling shareholders, is there any credible basis to avoid obligations

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 7

incurred to the LBO Lenders on account of the satisfaction of lawfully owing pre-LBO debt?

n.      Assuming that only the Step 2 transfers may be avoided as fraudulent transfers or conveyances, does it follow that the LBO indebtedness arising in connection with Step 1 would be entitled to participate in distributions from the estates on account of such avoidance or recoveries related thereto?  If not, why not?

o.      To the extent the LBO Lender obligations are avoided at the guarantor subsidiary levels, does Bankruptcy Code section 548 require that such obligations be avoided for all purposes, including the remittance to the parent of distributions available from those estates after the payment of non-LBO indebtedness at the guarantor subsidiary levels?  To what extent is the above noted "collapse" principle, however, solely intended to permit recharacterization of an LBO transaction for the benefit of creditors, and not equity holders?  To what extent are the answers to the preceding questions informed by the fact that (i) if the obligations are avoided at the guarantor subsidiary levels and the excess value were available to the parent entity and its creditors, the beneficiaries of that avoidance would be creditors who were structurally subordinated to guarantor subsidiary indebtedness; and (ii) the ultimate parent shareholders would not benefit from such avoidance but, rather, parent creditors whose claims remain unpaid as a result of an LBO transaction effectuated at the same time for the parent and the guarantor subsidiaries?

p.      I am interested in understanding the impact on recovery of avoidance assuming (i) Step 1 LBO indebtedness is avoided at the parent level only but not at the guarantor subsidiary levels; (ii) Step 1 LBO indebtedness is avoided at the parent and guarantor subsidiary levels; (iii) Step 1 and Step 2 LBO indebtedness are avoided at the parent level only but not at the guarantor subsidiary levels; (iv) Step 2 (but not Step 1) LBO indebtedness is avoided at the parent level only but not at the guarantor subsidiary levels; (v) Step 2 (but not Step 1) LBO indebtedness is avoided at the parent and guarantor subsidiary levels; and (iv) Step 1 and Step 2 LBO indebtedness are avoided at both the parent and guarantor subsidiary levels.  The impact of intercompany claims should be addressed, if relevant.  The cases should also consider whether the obligations incurred on account of the repayment of the pre-LBO are and are not avoidable.  I am interested in, as a base line, what creditors would receive if no avoidance or recoveries were available in connection with the 2007 LBO.  If you wish to answer this

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 8

question, a chart setting forth your analysis would be preferable.  In connection with these cases, it may be appropriate for the parties to designate one party to prepare and present these using an agreed reorganization value or range of values.

q.    To what extent may principal and interest on post-LBO, prepetition indebtedness be avoided and recovered?  Or stated differently, assuming that a particular LBO obligation is avoided, would the estate be permitted to recover payments made on that debt pre-filing?  Why?

r.    If the "collapse" doctrine is applicable to Step 1 and/or Step 2, such that the LBO Lenders are viewed functionally as transferring funds to the selling shareholders, to what extent is the good faith of the LBO Lenders relevant to the question of avoidance of the obligations owing to such Lenders?  See Bankruptcy Code section 548(c) ("to the extent such transferee or obligee gave value to the debtor in exchange for such transfer or obligation").

s.    What evidence supports a finding of lack of good faith, or good faith, by the LBO Lenders, as such term has been shaped under the law?

t.    Is lack of good faith by an agent for a particular tranche of indebtedness be imputed to other lenders?

u.    To the extent advisory and other fees were paid in connection with the LBO transaction and such transaction is found to be a transaction for which the transferor received no or inadequate consideration, or was intentionally fraudulent, to what extent may such fees and expenses be recovered for lack of reasonably equivalent value?

v.    Is the repayment in Step 2 of the note given Zell in Step 1 in dispute?

w.    To what extent are selling shareholders, the LBO Lenders, and other parties entitled to the protections accorded under Bankruptcy Code section 546(e)?  With respect to the LBO Lenders, please be sure to address the potential application of section 546(e) both to the stock pledges and the obligations.

x.    With respect to the question of equitable subordination, if the transactions entered into in connection with the LBO transaction are not avoidable as fraudulent transfers or conveyances, does that mean that any equitable subordination claim will be unsustainable?  If not, why not?

To: The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 9

y.    Are there any predicate facts, and if so what, that would support equitable subordination that would not also support avoidance of fraudulent transfers or conveyances?   Why would equitable subordination be an appropriate remedy in addition to or in lieu of the ordinary remedies available upon avoidance of transfers or obligations?

z.    If equitable subordination were successfully pursued at the guarantor subsidiary levels, would parent creditors benefit?

aa.    What is the specific basis to equitably subordinate the claims of the LBO Lenders for the benefit of other creditors generally (and not any specific creditor group) at any level?  Note: As a general matter, in this examination I am interested in more than just the question of whether a claim (or defense) may survive a motion to dismiss.

bb.    With respect to potential claims for breach of fiduciary duty against officers and directors, if the transactions entered into in connection with the LBO transaction are not avoidable as fraudulent transfers or conveyances, does that mean that any breach of duty claims will be unsustainable?  If not, why not?

cc.    Are there any predicate facts, and if so what, that would support a breach of duty claim that would not also support avoidance of fraudulent transfers or conveyances?

dd.    To what extent, and against whom, may claims be maintained for aiding and abetting breaches of fiduciary duty?

ee.    What is the basis for, and against whom, for claims for unjust enrichment?

ff.    Without limiting the preceding question, what claims, if any, can be asserted against advisors in connection with the LBO transaction?  If any claims exist, who holds those claims?

gg.    To what extent are there potential *pari delicto* and contractual defenses and indemnities in connection with the assertion of any claims, including those enumerated in paragraphs dd and ff?

hh.    With respect to item 2 of the Agreed Order, does a creditor hold a claim for particularized injury where the source of that injury is the disproportionate impact imposed on that creditor, as opposed to the injury suffered by other creditors or the estate generally, because of the operation of a contractual subordination?

To:  The Parties Listed on Exhibit A Attached Hereto
May 10, 2010
Page 10

10.    With respect to any document referenced or included in the aforementioned submissions as to which you maintain confidentiality must be preserved for purposes of the initial filing of my report, and as to which you are the party that previously designated such document as confidential, I request that you notify me and the recipients of the same by no later than June 14, 2010, identifying the specific document that you maintain should be maintained confidential.  If you maintain that confidentiality must be preserved as to any document but you are not the party who has designated such document as confidential, please advise who has so designated such document.  As I have stated previously, the standard you should utilize in whether to designate documents for continued non-disclosure is not whether disclosure would be embarrassing to your client, or harmful to its position in existing or future litigation, but whether there is a bona fide legal basis to prevent its initial public disclosure.

Along those lines, in view of the various confidentiality orders and agreements, I have marked this letter confidential.  Please advise my counsel by the close of business Friday, May 14, 2010 whether you maintain that any portion of this letter must remain confidential, and if so, which portion and why.

Thank you.

Yours truly,

*Kenneth N. Klee*

Kenneth N. Klee, Examiner

KNK:jak
Enclosures
cc:    Wayne Elggren
       Lee R. Bogdanoff
       David M. Stern
       Martin R. Barash

122533.3

# EXHIBIT A

Counsel for Debtors
James F. Conlan
James Bendernagle, Jr.
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Special Counsel for the Committee
Graeme W. Bush
Zukerman Spaeder
1800 M Street, N.W.
Washington, DC 20036

Counsel for Law Debenture
David S. Rosner
Andrew K. Glenn
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

Counsel for Credit Agreement Lenders
Bruce Bennett
James O. Johnston
Hennigan, Bennett & Dorman, LLP
865 South Figueroa Street
Suite 2900
Los Angeles, California 90017

Counsel for Wells Fargo Bank, N.A.

Thomas E Lauria
Gerard H. Uzzi
Scott Greissman
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787

Counsel for the Committee
Howard Seife
Douglas E. Deutsch
David LeMay
Chadbourne & Parke
30 Rockefeller Plaza
New York, New York 10112

Counsel for Wilmington Trust Company
Robert Stark
Martin S. Siegel
Brown Rudnick
Seven Times Square
New York, New York 10036

Counsel for JPMorganChase Bank, N.A.
Donald S. Bernstein
Dennis E. Glazer
Davis Polk & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017

Counsel for Centerbridge Credit
Advisors LLC
Donald Goldman
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036

122533.3

EXHIBIT B

Formatting of Narrative Statement, Briefs and Appendices

General Format

- The narrative statement, all briefs, and all appendices submitted to the Examiner must be submitted in both electronic and hardcopy form.

- The electronic version of these submissions must be in Portable Document Format (aka Adobe Acrobat or .pdf), with no password protection or encryption.  Please also provide copies of the narrative statement and briefs in Microsoft Word (.doc) format.

- The Portable Document Format versions of the narrative statement and briefs must be generated by printing to PDF from the original word processing file, so that the text of the digital brief may be searched and copied.  PDF images created by scanning paper documents do not comply with this requirement.  This requirement does not apply to documentary evidence contained in the appendices.

- The narrative statement and all briefs, appendices and related documents shall be submitted such that they are received by the Examiner on or before the specified deadline.

- The electronic versions of the parties' submissions may be submitted by CD-ROM, or may be uploaded to the Examiner's secure document website. Please forward the name and email address of the person requiring access to the secure document website to Martin Barash at mbarash@ktbslaw.com as soon as possible, and in any event no later than May 20, 2010.

- Hardcopies of the narrative, briefs and appendices should be delivered to the Examiner's professionals as follows:

  o Three (3) copies to Klee, Tuchin, Bogdanoff & Stern LLP, Attn: Martin R. Barash, Esq., 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067.

  o Two (2) copies to Saul Ewing LLP, Attn: Mark Minuti, Esq., 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899.

  o One (1) copy to LECG, Attn: F. Wayne Elggren, 201 South Main, Suite 450, Salt Lake City, UT 84111.

122533.3

     o   One (1) copy to LECG, Attn: Craig Elson, 33 West Monroe, Suite 2300, Chicago, IL 60603-5659

<u>Margins and Type Face.</u>

- The margins of each page shall be no less than 1 inch on the bottom, top, right and left.

- Each brief must contain a table of contents and table of authorities.  (If you have made last-minute revisions to your submissions, please be sure to update the page references in your table before transmitting the brief to the Examiner).

- Text should be no smaller than 12 point type, with the exception of footnotes, which may be no smaller than 10.5 point type.

- Please use a serif font such as Times Roman or Century Schoolbook (rather than a non-serif font, such as Arial).

- Legal citations should conform to the latest version of "A Uniform System of Citation" (i.e., the "Blue Book").

- The narrative statement and briefs shall be double spaced, with the exception of footnotes and block quotes of 50 words or more.

References to Evidence, Appendices, and Hyperlinking.

- The narrative statement and each brief shall contain references to the documentary evidence (including transcripts of depositions, examinations and hearings) that supports the factual contentions contained therein, as set forth in an appendix to be provided with each brief in Portable Document Format.

- The evidentiary references contained in the Portable Document Format version of the narrative statement each brief shall be electronically hyperlinked to the relevant pages in the related appendix.

- The references and hyperlinking shall point to the particular page or pages of the document that support the factual contention, although the appendix should contain the entire document referenced, so that the Examiner may consider the context in which the referenced materials appear. Where feasible, highlighting specific portions of pages is appreciated, but not required.

- Each appendix shall contain a table of contents, with hyperlinks to the first page of each document contained in the appendix.

- References to any pleadings filed in the case should include a citation to the docket item number and a hyperlink to a copy of the pleading, to be set forth in the appendix.

- The Portable Document Format version of each brief may contain hyperlinking in respect of legal citations – and where feasible will be much appreciated by the Examiner – but is not required.