Global Markets & Investment
Banking Group

**Merrill Lynch**

4 World Financial Center
North Tower 30th Floor
New York, New York 10080
212 449 1000

October 17, 2005

STRICTLY PRIVATE AND CONFIDENTIAL

The Board of Directors
Tribune Company
435 North Michigan Avenue
Chicago, Illinois 60611

Attention: *Mr. Dennis J. FitzSimons, Chairman, President, and Chief Executive Officer*

Pursuant to our recent conversations, we are pleased to confirm the arrangements under which Merrill Lynch & Co. ("Merrill Lynch") will act as financial advisor to Tribune Company (the "Company"). As your financial advisor, we will perform such financial advisory and investment banking services for the Company as are customary and appropriate as outlined in Section 1 (Scope of Engagement) below and as you reasonably request including assisting the Company in analyzing, structuring, negotiating and effecting the transactions contemplated as part of this letter agreement.

1.  Scope of Engagement. As your financial advisor, Merrill Lynch proposes to perform the following roles under the scope of its engagement with the Company:

    (a) *Leveraged Recapitalization.* Financial advisor to the Company in structuring a leveraged recapitalization of the Company. For purposes of this agreement, a "Leveraged Recapitalization" is a transaction or series of transactions in which the Company repurchases or redeems 10% or more of the Company's outstanding common stock via open market purchases, a self-tender offer, privately negotiated transactions or otherwise.

    (b) *TMCT Transactions.* Exclusive financial advisor to the Company with respect to the restructuring of the Company's ownership interests in each of two trusts referred to as TMCT, LLC ("TMCT I") and TMCT II, LLC ("TMCT II") (the respective transactions referred to herein as the "TMCT I Transaction" and the "TMCT II Transaction").

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                ML-TRIB-0571054

If requested by the Company, Merrill Lynch will render, in accordance with our customary practice, an opinion (the "Opinion") as to the fairness, from a financial point of view, to the Company, in the case of a TMCT I Transaction or a TMCT II Transaction, of the distribution involved in the restructuring of the Company's ownership interests in TMCT I or TMCT II, as the case may be. The Opinion will be dated as of a date reasonably proximate to the date of the definitive agreement(s) providing for a TMCT I Transaction or a TMCT II Transaction, and will be prepared solely for the use and benefit of the Board of Directors of the Company and will not be disclosed or given to any other person without our prior written consent. If reference to the Opinion is required by law or regulation to be made in a proxy statement, Schedule 14D-9 or offer to purchase of the Company, we will not unreasonably withhold our consent thereto so long as the full text of our Opinion is reproduced therein and we approve in advance the text of any accompanying disclosure.

In the event that the Company makes a tender or exchange offer as part of the Leveraged Recapitalization, the Company will retain Merrill Lynch as dealer-manager for such offer pursuant to a dealer-manager agreement in Merrill Lynch's standard form.

If in connection with the Leveraged Recapitalization, the Company, its subsidiaries, or affiliates enters into a loan financing, public sale or private placement of equity, preferred or debt securities, or other similar securities, and the proceeds of such are used in connection with or to complete the Leveraged Recapitalization ( a "Strategic Financing"), then the Company agrees to offer, to retain Merrill Lynch as a book running lead manager and/or lead arranger or other similar role, as relevant for the type of financing contemplated, on customary terms mutually agreeable between us and under terms no less favorable than those of any other financing source. Any such engagement by Merrill Lynch will only become a commitment by Merrill Lynch in a separate commitment letter, underwriting, or financing agreement or other applicable agreement.

2.  Fees. The Company agrees to pay the following fees to Merrill Lynch for its financial advisory services:

(a) *Leveraged Recapitalization Advisory Fee*: If, during the period Merrill Lynch is retained by the Company or within twenty four months thereafter (the "Tail Period"), a Leveraged Recapitalization is consummated, a fee of $2.0 million, payable in cash, upon the consummation of the Leveraged Recapitalization.

(b) *TMCT Advisory Fee*. If, during the period Merrill Lynch is retained by the Company or within the Tail Period, either a TMCT I Transaction or a TMCT II Transaction is consummated or the Company enters into an agreement regarding a TMCT I Transaction or a TMCT II Transaction (either of which is subsequently consummated), there will be a fee of $0.750 million in the case of a TMCT I Transaction and $0.750 million in the case of a TMCT II Transaction, both payable in cash upon the closing of the respective transaction.

All fees payable hereunder in this Section 2 are net of all applicable withholding and similar taxes.

3.  Expenses. In addition to the fees, the Company agrees to reimburse Merrill Lynch, upon request made from time to time, for its reasonable expenses incurred in connection with this engagement. These expenses generally include travel costs, document production and other customary expenses for this type of transaction, including the reasonable fees and disbursements of legal counsel.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                   ML-TRIB-0571055

4. **Disclosure.** Any document, advice, opinion or analysis provided by Merrill Lynch hereunder will be solely for the use and benefit of the Board of Directors and senior management of the Company and will not be quoted, reproduced, summarized, or otherwise disclosed, nor will any reference to Merrill Lynch be made, without Merrill Lynch's prior written consent. Notwithstanding any other provision of this letter agreement, immediately upon the commencement of discussions with respect to the transactions contemplated hereby, the Company (and each employee, representative or other agent of the Company) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this letter agreement and all materials of any kind (including opinions or other tax analyses) that are provided to the Company relating to such tax treatment and tax structure

5. **Information.** The Company will furnish, or arrange to have furnished to, Merrill Lynch such information as Merrill Lynch believes appropriate to its engagement hereunder (all such information so furnished being the "Information"), and will update such Information as appropriate. The Company recognizes and consents to the fact that Merrill Lynch (i) will use and rely on the accuracy and completeness of the Information supplied or otherwise made available to Merrill Lynch without having any obligation to independently verify the same, (ii) does not assume responsibility for the accuracy or completeness of the Information or such other information, (iii) has no obligation to undertake an independent evaluation, appraisal or physical inspection of any assets or liabilities of, the Company, TMCT I, TMCT II or any entity owning any of the businesses or assets that constitute TMCT I or TMCT II, and (iv) with respect to any financial forecasts (including cost savings and synergies) that may be furnished to or discussed with Merrill Lynch by the Company, TMCT I or TMCT II, will assume that they have been reasonably prepared and reflect the best then currently available estimates and judgment of the Company's or relevant entity's management.

6. **Independent Contractor.** It is understood and agreed that Merrill Lynch is retained to act solely as financial advisor and, in such capacity, shall act as an independent contractor with duties solely to the Company and nothing in this letter agreement or the nature of the services shall be deemed to create a fiduciary or agency relationship between Merrill Lynch and the Company or its stockholders, creditors, employees or any other party.

7. **Term and Termination.** This engagement may be terminated by the Company or Merrill Lynch at any time (the "Term") upon written notice to that effect to the other party, it being understood that the provisions of Section 2 (Fees), 3 (Expenses), 4 (Disclosure), 7 (Term and Termination), 8 (Indemnity) and 10 (Miscellaneous) shall survive termination of this agreement.

8. **Indemnity.** In connection with engagements such as this, it is Merrill Lynch's policy to receive indemnification. The Company agrees to the provisions with respect to the indemnification of Merrill Lynch and the other matters set forth in Annex A. Annex A is incorporated by reference in its entirety into this letter.

9. **Public Announcement.** The Company acknowledges that Merrill Lynch may, at its option and expense, place an announcement in such newspapers, periodicals and electronic media as it may choose, stating that Merrill Lynch has acted as the financial advisor to the Company in connection with any of the transactions contemplated in Section 1 of this letter. Prior to the publication of any such announcement, Merrill Lynch shall obtain the Company's approval of the draft of such announcement. If requested by Merrill Lynch, the Company may include a reference to Merrill Lynch as its financial advisor in any press release or public announcement with respect to the transactions contemplated in this letter agreement.

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**    **ML-TRIB-0571056**

10. <u>Miscellaneous</u>.

(a) Merrill Lynch is acting as Financial Advisor and is not an expert on, and cannot render opinions regarding, legal, accounting, regulatory or tax matters. You should consult with your other professional advisors concerning these matters before undertaking the proposed transaction.

(b) Merrill Lynch is a full service securities firm engaged, either directly or through its affiliates, in various activities including securities trading, investment management, financing and brokerage activities and financial advisory services for companies, governments and individuals. In the ordinary course of these activities, Merrill Lynch and its affiliates may actively trade the debt and equity securities or other financial instruments (or related derivative instruments) of the Company or other parties which may be the subject of the engagement contemplated by this letter agreement for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities or instruments. The interests of the parties described in this Section 10(b) may conflict with yours.

(c) No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby. This letter agreement shall inure to the benefit of and be binding on the Company, Merrill Lynch and their respective successors.

(d) In case any provision of this letter agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this letter agreement shall not in any way be affected or impaired thereby.

(e) This letter agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

(f) Each of Merrill Lynch and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its shareholders) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this letter agreement.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Merrill Lynch the duplicate copy of this letter agreement enclosed herewith. We are delighted to accept this engagement and look forward to working with you on the assignment.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED

By _____
Michael Costa
Investment Banking Group

Accepted and Agreed to as of
the date first written above:

TRIBUNE COMPANY

By _____
Dennis FitzSimons
Chairman, President, and Chief Executive Officer

-4-



## ANNEX A

The Company agrees to indemnify Merrill Lynch and its affiliates and their respective directors, officers, employees, agents and controlling persons (Merrill Lynch and each such person being an "Indemnified Party") from and against any and all losses, claims, damages and liabilities, joint or several, to which such Indemnified Party may become subject under any applicable law, or otherwise, and related to, arising out of, or in connection with, any transaction contemplated by Section 1 of the engagement letter of which this Annex A is a part or the engagement of Merrill Lynch pursuant thereto, and the performance by Merrill Lynch of the services contemplated thereby, and will reimburse each Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. To the extent not precluded by considerations of conflicts of interest, the Indemnified Parties shall use a single firm of attorneys as their counsel. The Company will not be liable under the foregoing to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court of competent jurisdiction to have resulted from Merrill Lynch's bad faith or gross negligence.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to, arising out of, or in connection with, any transaction contemplated by Section 1 of the engagement letter, the engagement of Merrill Lynch pursuant to, or the performance by Merrill Lynch of the services contemplated by, the engagement letter except to the extent that any loss, claim, damage or liability is found in a final judgment by a court of competent jurisdiction to have resulted from an Indemnified Party's bad faith or gross negligence.

If the indemnification of an Indemnified Party provided for in this letter agreement is for any reason held unenforceable, although otherwise applicable in accordance with its terms, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Merrill Lynch, on the other hand, of any transaction contemplated by Section 1 of the engagement letter (whether or not such transaction is consummated) or (ii) if (but only if) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and Merrill Lynch, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and Merrill Lynch of any transaction contemplated by Section 1 of the engagement letter shall be deemed to be in the same proportion that the total value paid or issued or contemplated to be paid or issued to the Company by a Third Party or the relevant counterparty, as a result of or in connection with a transaction contemplated in Section 1 of the engagement letter, bears to the fees paid or to be paid to Merrill Lynch under the engagement letter; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Merrill Lynch under the engagement letter of which this Annex A is a part.

The Company agrees that, without Merrill Lynch's prior written consent, which consent shall not be unreasonably withheld or delayed, it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under this letter agreement (whether or not Merrill Lynch or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding.

If Merrill Lynch or any other Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or a Third Party or the relevant counterparty in which such Indemnified Party is not named as a defendant, the Company will reimburse Merrill Lynch for all reasonable expenses incurred in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    ML-TRIB-0571058

The provisions of this Annex A shall continue to apply and shall remain in full force and effect regardless of any modification or termination of the engagement or engagement letter of which this Annex A is a part or the completion of Merrill Lynch's services thereunder.

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

**ML-TRIB-0571059**