1585 Broadway
New York, NY 10036

# MorganStanley

17 October 2006

**PERSONAL AND CONFIDENTIAL**

Tribune Company
435 North Michigan Avenue
Chicago, IL 60611
Attention: Mr. William A. Osborn
Chairman of the Special Committee of the Board of Directors

Dear Bill:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Morgan Stanley & Co. Incorporated ("Morgan Stanley") is engaged by Tribune Company ("Tribune" or the "Company") as financial advisor to the Special Committee (the "Committee") of Tribune's Board of Directors in connection with (i) a possible sale, merger or other strategic business combination involving a change of control of the Company (a "Transaction") or (ii) a potential recapitalization or restructuring plan (a "Plan") for Tribune, including any potential spin-off, split-off or significant asset sale program involving a Tribune business.

During the term of our engagement we will provide financial advice and assistance in connection with this assignment. Our anticipated responsibilities may include (i) reviewing the analyses and presentations of the Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making recommendations to the Committee to improve the process and (iv) providing the Committee a fairness opinion in accordance with our customary practice.

It is our practice to charge an "Advisory Fee," which is intended to reimburse us for our time and efforts expended in connection with this assignment. For this assignment, the Advisory Fee will be $2,500,000. The Advisory Fee will become payable and is to be paid by the Company upon execution of this letter agreement.

Upon your request, we will render a financial opinion letter in accordance with our customary practice with respect to the consideration to be received in the Transaction or Plan. The terms of our opinion and the nature and scope of any analysis and investigation we undertake in order to render such opinion shall be such as we consider appropriate in the circumstances.

In consideration for our services, we will also charge a "Transaction Fee" of $7,500,000. The Transaction Fee will be payable upon the earlier to occur of (i) the time we advise the Committee that we are prepared to deliver our written opinion in connection with a Transaction or Plan after receiving such request from the Committee, regardless of the conclusion reached therein, (ii) the closing of a Transaction where a financial opinion is not requested by the Committee or (iii) the closing of a Plan where a financial opinion is not requested, but in which, at the request of the Committee, Morgan Stanley played a substantive role.

The Committee agrees to discuss with Morgan Stanley, at an appropriate time, whether any additional fee is appropriate. Any such fee would be payable at any time and at the sole discretion of the Committee, and may reflect such considerations as the duration and complexity of the engagement and, in the event of a Transaction or Plan, the value added by Morgan Stanley, the involvement of the Company's advisors in any contemplated

# Morgan Stanley

financing of any proposed Transaction or Plan, and the timing and certainty of closing. Morgan Stanley acknowledges and agrees that none of the Company, its Board of Directors or the Committee shall be obligated to pay any such additional fee to Morgan Stanley pursuant to this letter.

Notwithstanding the foregoing, should our role change substantially from that outlined in the Independent Financial Advisor Role & Responsibilities Memo dated October 6, a copy of which is attached to this letter as Appendix I, we may propose a revised fee arrangement, it being understood that any such modification must be considered by the Committee in good faith.

Morgan Stanley will rely on the accuracy and completeness, without verifying it independently, of any information we receive in connection with this engagement. We will not independently evaluate or appraise any assets or liabilities that may be involved in this engagement. We will assume that any forecasted financial information reflects the best available estimates of future financial performance. Except as required by law, legal process or in connection with a legal proceeding (in which case reasonable prior notice shall be provided to Morgan Stanley in advance of such disclosure), any advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third party except in accordance with our prior written consent. Notwithstanding the preceding sentence, any written opinion that we render hereunder may be included in a proxy statement, Schedule 14D-9 or other disclosure document to be delivered to the shareholders of the Company in connection with a Transaction or Plan if such inclusion is required by law, provided that the written opinion is reproduced therein in its entirety and any description of or reference to us or our advice in any such document is reasonably acceptable to us and our counsel.

We agree to keep confidential, and not to use other than in connection with this engagement, all information that we receive in connection with this engagement except information that (i) is or becomes generally available to the public (other than as a result of a disclosure by us), (ii) was available to us on a nonconfidential basis prior to its disclosure by the Company, the Committee or their respective advisors, (iii) becomes available to us on a nonconfidential basis prior to its disclosure from a person other than the Company, the Committee or their respective advisors who is not bound by a confidentiality agreement with the Company or otherwise prohibited from transferring such information to us, (iv) the Company agrees may be disclosed or (v) we are required by, law, regulation, legal process or regulatory authority to disclose.

Notwithstanding anything herein to the contrary, Morgan Stanley and the Committee agree that the Company (and its employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind from the commencement of discussions, the U.S. federal and state income tax treatment and tax structure of any Transaction or Plan and all materials of any kind (including opinions or other tax analyses) that are provided to the Company or the Committee relating to such tax treatment and tax structure, except where confidentiality is reasonably necessary to comply with securities laws. For this purpose, "tax structure" is limited to facts relevant to the U.S. federal and state income tax treatment of any Transaction or Plan and does not include information relating to the identity of the parties, their affiliates, agents or advisors.

In addition to our fee for professional services, we will separately bill our reasonable expenses as incurred. Generally these expenses include travel costs, document production and other expenses of this type, and will also include the reasonable fees of outside counsel and other professional advisors should they be engaged with your written consent.

MORGAN STANLEY CONFIDENTIAL　　　　　　　　　　　　MS 00212

# Morgan Stanley

The Company represents that the Committee has been formed by a duly authorized and binding resolution of the Board of Directors of the Company (the "Board Resolution") and represents further that the Board Resolution gives the Committee the authority to engage our services and to bind the Company with regard to the obligations of this letter agreement, including among other things, the payment of any and all fees and expenses of Morgan Stanley and the provision of an indemnity to Morgan Stanley.

Morgan Stanley will act under this letter agreement as an independent contractor with duties solely to the Committee. Because we will be acting on your behalf in this capacity, it is our practice to receive indemnification. A copy of the indemnity between us is attached to this letter. Upon execution by the Committee on behalf of the Company, the indemnity will be a binding obligation of the Company.

Please note that Morgan Stanley is a full service securities firm engaged in securities trading, investment management and brokerage activities, as well as providing investment banking, financing, and financial advisory services; provided, however, that Morgan Stanley acknowledges and agrees that, during the term of this engagement, neither Morgan Stanley nor its affiliates will provide mergers and acquisitions advisory services or act as lead book-runner, underwriter, placement agent, manager or arranger with respect to new money financing to the Company or any third party in connection with a Transaction or Plan without the Committee's prior written consent. In the ordinary course of our trading, brokerage, investment management and financing activities, Morgan Stanley or its affiliates may at any time hold long or short positions, and may trade or otherwise effect transactions, for our own account or the accounts of customers, in debt or equity securities or senior loans of the Company or any other company, commodity or currency that may be involved in this Transaction or Plan.

Our services hereunder may be terminated with or without cause by you or by us at any time and without liability or continuing obligation to you or to us (except for any fees payable pursuant to the terms hereof (and expenses incurred by us) to the date of termination and except, only in the case of termination by you without cause, for our right to fees to the extent payable pursuant to this letter in connection with a Transaction or Plan effected within 18 months of such termination) and provided that the indemnity, nondisclosure and jury trial waiver provisions will remain operative regardless of any such termination. For purposes of this letter agreement, "cause" shall mean a party's conduct that is determined to be gross negligence, bad faith or willful misconduct.

Morgan Stanley, the Company (on its own behalf and, to the extent permitted by law, on behalf of its shareholders), and the Committee each waives any right to trial by jury in any action, claim, suit or proceeding with respect to Morgan Stanley's engagement as financial advisor or its role in connection herewith.

This agreement or its terms may not be modified or amended except in a writing signed by each party. If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter and indemnification form and return them to us.

MORGAN STANLEY CONFIDENTIAL MS 00213

Morgan Stanley

We look forward to working with the Committee on this very important assignment.

Very truly yours,

MORGAN STANLEY & CO. INCORPORATED

By: _____

Paul J. Taubman
Managing Director

Accepted and agreed to:

TRIBUNE COMPANY

By: THE SPECIAL COMMITTEE OF THE
BOARD OF DIRECTORS OF TRIBUNE
COMPANY

By: _____

Title: DIRECTOR

Date: 10/27/06

Enclosure

- 4 -

MORGAN STANLEY CONFIDENTIAL                    MS 00214



**APPENDIX I**

Independent Financial Advisor<br>Role & Responsibilities

Morgan Stanley has been selected by the Independent Special Committee to assist the Committee through the transaction process. The Committee's RFP requested that its financial advisor assist the Committee in (i) reviewing the analyses and presentations of the Company's financial advisors; (ii) representing the Committee throughout the process; (iii) making recommendations to the Committee to improve the process and (iv) providing a fairness opinion. Unless requested by the Committee, Morgan Stanley will not communicate with any bidders or lenders regarding the process. Morgan Stanley's role and responsibilities may be modified at any time by the Committee.

To facilitate the provision of these services, management and the Company's financial advisors will keep Morgan Stanley apprised of all developments throughout the process. In particular, management and the Company's financial advisors will undertake the following:

- Provide Morgan Stanley with all presentation materials and work papers previously reviewed with the Board, engage Morgan Stanley regarding the alternatives reviewed and solicit Morgan Stanley's views regarding the analysis;
- Include Morgan Stanley in due diligence presentations by the Company to its financial advisors and staple financing sources;
- Provide Morgan Stanley with all documents, including bid letters, transaction documents and financing agreements, related to the transaction process;
- Communicate with Morgan Stanley on a regular basis regarding the process and bidders;
- Include Morgan Stanley on the distribution of all reports or other materials provided to the Committee;
- Provide all other information necessary for Morgan Stanley to provide a fairness opinion to the Committee.

Morgan Stanley will not provide financing to any bidder and will not participate in the transaction other than as an advisor to the Committee on a basis determined by the Committee.

MORGAN STANLEY CONFIDENTIAL   MS 00215

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Gentlemen:

This letter will confirm that we have engaged Morgan Stanley & Co. Incorporated to advise and assist us in connection with the matters referred to in our letter agreement dated _____ (the "Engagement Letter"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter, and will reimburse each Indemnified Person for all expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. We will not, however, be responsible for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined to have resulted from the bad faith [**reasonable**] or gross negligence of any Indemnified Person. We also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined to have resulted from the bad faith [**, willful misconduct**] or gross negligence of such Indemnified Person.

[Rule P] We will not, without your prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without our prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

[Rules B] If the indemnification provided for in the first paragraph of this agreement is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, we shall contribute to the amount paid or payable by such Indemnified Person, as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect the relative benefits to you, on the one hand, and us, on the other hand, of the Engagement or [**and**] if the allocation provided by clause (i) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us or our stockholders, as the case may be, in the transaction or transactions that are the subject of the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to you under the Engagement Letter.

The provisions of this agreement shall apply to the Engagement and any modification thereof and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,  TRIBUNE COMPANY, by the Special
Committee of the Board of Directors
of Tribune Company

By _____

Accepted:

MORGAN STANLEY & CO. INCORPORATED

By _____

Date:

9/95

MORGAN STANLEY CONFIDENTIAL       MS 00216

**Rider A**

You agree to promptly reimburse us for any amount paid by us to any Indemnified Person prior to a judicial determination of any matter allegedly giving rise to an obligation on our part under this letter if its finally determined that such Indemnified Person was not entitled to such amount hereunder.

**Rider B**

Each Indemnified Person shall provide us with prompt written notice of the commencement of any action or proceeding with respect to which indemnification or contribution will be sought hereunder, provided that the failure to provide such notice will not relieve us from any liability hereunder except to the extent we are materially prejudiced thereby. We shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Person. Upon assumption by us of the defense of any such action or proceeding, the Indemnified Person shall have the right to participate in such action or proceeding and to retain its own counsel but we shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Person in connection with the defense thereof unless (A) we have agreed to pay such fees and expenses, (B) we shall have failed to employ counsel reasonably satisfactory to the Indemnified Person in a timely manner, (C) the use of counsel chosen by us to represent the Indemnified Person would present such counsel with a conflict of interest, or (D) the Indemnified Person shall have been advised by counsel that there are actual or potential conflicting interests between us and the Indemnified Person, including situations in which there are one or more legal defenses available to the Indemnified Person that are different from or additional to those available to us, provided, however, that we shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys (or one local counsel in each applicable jurisdiction) at any time for all Indemnified Persons.