# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
# MAY 26, 2006

The Tribune Company Board of Directors met on Friday, May 26, 2006 at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Dennis J. FitzSimons, Roger Goodan, Betsy D. Holden, Robert S. Morrison, William A. Osborn, William Stinehart, Jr., Dudley S. Taft and Miles D. White. Jeffrey Chandler, Enrique Hernandez, Jr. and J. Christopher Reyes participated via teleconference.

Portions of the meeting were also attended by Chandler Bigelow III, Donald C. Grenesko, Crane H. Kenney, Thomas D. Leach, Ruthellyn Musil, John E. Reardon and Scott C. Smith. Tom Cole of Sidley Austin, Michael Costa and Michael O'Grady of Merrill Lynch, and Michael Schell, Christina Mohr and Michael Canmann of Citigroup also participated in portions of the meeting.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

## EXECUTIVE SESSION

Mr. FitzSimons called the meeting to order at 10:00 a.m. in executive session, with Mr. Cole present. Mr. FitzSimons reviewed general business trends and discussed the agenda and meeting participants.

## LEVERAGED RECAPITALIZATION

Messrs. Bigelow, Grenesko, Kenney, Leach, Smith, Reardon and Ms. Musil joined the meeting at approximately 10:15 a.m.

Mr. Cole [Redacted]

[Redacted]

Messrs. Costa, O'Grady, Schell, Canmann and Ms. Mohr then joined the meeting and distributed materials addressing the proposed transaction.

Mr. Grenesko then reviewed the terms of a proposed leveraged recapitalization to repurchase up to 75 million shares of common stock of the Company for approximately $2.4 billion. Mr. Grenesko described the proposal that the shares be repurchased through a combination Dutch Auction tender offer, private purchase agreement with the McCormick Tribune Foundation and open market purchases. Mr. Grenesko described the form of financing for the transaction and the terms of the financing. He also reported that the Company would eliminate $200 million of expenses and sell up to $500 million on non-core assets as part of the plan. Mr. Grenesko then

described the primary benefits of the proposed transaction and reported on expected rating agency reaction. Finally, Mr. Grenesko reviewed the expected reaction of shareholders and the financial impact of the transaction. Mr. Grenesko answered questions about the transaction terms throughout his presentation.

Mr. Costa then reviewed the strategic transactions considered by the Board from time to time since its February 2005 Board meeting and the view of Merrill Lynch that the proposed leveraged recapitalization is the most advantageous transaction the Company can pursue at this time for the creation of shareholder value. Mr. Costa reviewed the Company's current capital structure and the advantages of the proposed transaction compared to other strategic alternatives. He also reviewed the negative attributes of the proposal, including somewhat reduced financial flexibility and increased equity volatility. Mr. Costa also pointed out that the leveraged recapitalization will not impair the Company's flexibility to pursue other transactions reviewed by the Company over the past year. Mr. Costa then reviewed the Company's current trading values, cost of capital and potential share price accretion under the proposed transaction. He discussed the lessons from the Knight-Ridder transaction with McClatchy and answered questions regarding the Company's current operating plan and ability to service the increased debt under the proposal. Mr. Costa answered questions from the Board throughout his presentation.

Ms. Mohr then reviewed the mechanics of the tender offer, size and price considerations, trading values of precedent transactions and expected impact on the Company's shares over the short, medium and longer term. Ms. Mohr also reviewed the Company's shareholder base and projected participation levels in the tender offer. She then discussed the preliminary financing structure, summary of terms, including financial covenants, and the impact of being "split rated". Ms. Mohr answered questions throughout her presentation.

Mr. Grenesko then reviewed 5-year financial projections for the Company following the proposed transaction. He also reviewed financial "stress testing" performed by the Company to ensure its ability to service the debt under a variety of possible scenarios, including sustained periods of revenue decline and recession.

Members of the Board inquired about testing of the financial projections across additional scenarios, including the downside scenarios contained in strategic planning materials prepared by Boston Consulting Group (BCG) in 2005. Mr. Stinehart and Mr. Goodan expressed concern regarding adding the projected leverage given the uncertainties of the Company's operating performance. Mr. Stinehart also noted possible alternative strategic preferences, including a spin-off of the broadcasting division or a "sponsored" spin-off of broadcasting and/or certain publishing assets.

Messrs. Grenesko, Bigelow, Costa and Leach answered questions from the Board regarding the proposed transaction in the event of operating shortfalls described in the BCG scenarios. They also described means to reduce the debt via cost controls and the sale of assets. Upon the request of the Board, management agreed to prepare additional financial projections assuming downside

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434011

operating performance and to further describe assets that could be monetized to reduce debt if needed.

Mr. Kenney then reviewed the credit facilities Commitment Letter, term sheet, Fee Letter and draft Offer to Purchase. Throughout Mr. Kenney's presentation, he answered questions from the Board. At the conclusion of Mr. Kenney's report, Messrs. Costa, O'Grady, Schell, Canmann and Ms. Mohr departed.

**BROADCASTING UPDATE**

At approximately 12:45 p.m., Mr. Leach reviewed the status of various broadcasting transactions, including the Company's sale of its Atlanta television station, WATL-TV and its Albany television station, WCWN-TV. First, Mr. Leach reviewed the sale of WATL. He discussed the strategic rationale for the sale, the proposed terms, price and conditions to close. He reviewed the transaction status and following discussion, the Board approved the adoption of the following resolutions:

>   RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of WATL, LLC, including a sale of all or substantially all of the assets of WATL, LLC, for not less than $170 million (collectively, the "Transaction");
>
>   FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company or the President or any Vice President of WATL, LLC (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;
>
>   FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and
>
>   FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434012

Mr. Leach then reviewed the prospects for the sale of WCWN. He reviewed the current bidding, including non-binding indications of interest. He then reviewed the strategic rationale for the divestiture and following discussion, the Board approved the adoption of the following resolutions:

> RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of WCWN LLC, including a sale of all or substantially all of the assets of WCWN LLC, for not less than $12 million (collectively, the "Transaction");
>
> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company or the President or any Vice President of WCWN LLC (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;
>
> FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings, to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and
>
> FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Mr. Leach then reviewed two other major broadcasting transactions being considered by the Company and answered questions from the Board regarding each transaction.

**TMCT UPDATE**

Mr. Kenney reviewed the status of the Company's consideration of the Chandler Trusts' proposal [Redacted] Mr. Stinehart then described the Chandler Trusts' concern about the impact the recapitalization would have on the value of the preferred stock contained in TMCT I. He also reported that if the Company does not

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434013

agree to the Chandler Trusts' proposal to distribute the shares of TMCT I, the Chandler Trusts will not allow a spin-off transaction to occur.

At approximately, 1:35 p.m., Messrs. Stinehart and Goodan departed, Mr. Chandler disconnected and the Board met in private session without the Chandler Trusts' directors in order to discuss the TMCT I transaction. At approximately, 2:10 p.m., the Board recessed for lunch.

## ACTION ON LEVERAGED RECAPITALIZATION

At approximately 2:50 p.m., the Board reconvened with Messrs. Costa, Gronesko, Kenney, Leach, Cole and Ms. Mohr present. Mr. Grenesko then reviewed additional recapitalization projections assuming a $500 million reduction in borrowing and incorporating the BCG "downside" scenario for operating revenue. Mr. Leach then reviewed a list of non-core assets that could be sold to service the debt, should operating performance decline. The Board then questioned management regarding the new material and following discussion, Messrs. Costa and Leach and Ms. Mohr departed.

Mr. Kenney then reviewed resolutions required to approve the proposed share repurchase and financing. Following discussion, a motion was made, seconded and adopted (with Messrs. Chandler, Goodan and Stinehart voting in opposition without stating a reason therefore) to approve the following resolutions:

### Credit Facilities

RESOLVED, that the Board of Directors hereby ratifies and approves in all respects the proposed Credit Facilities Commitment Letter dated May 26, 2006, in the form presented to the Board of Directors at this meeting, to be issued to the Company by Merrill Lynch Capital Corporation ("Merrill Lynch") and Citigroup Global Markets, Inc. ("Citigroup") (including the Summary of Terms and Conditions appended thereto, the Fee Letter issued in connection therewith and the Engagement Letter issued in connection therewith, collectively, the "Commitment") pursuant to which Merrill Lynch and Citigroup will commit to provide credit facilities for the Company in an aggregate principal amount of $4.5 billion, consisting of a revolving line of credit, one or more term loans and other credit accommodations, on substantially the terms described in the Commitment (collectively, the "Credit Facilities"), for the uses and purposes described therein;

FURTHER RESOLVED, that the Board of Directors hereby approves and authorizes the transactions that are the subject of and/or contemplated by the Commitment and the undertakings and obligations of the Company pursuant thereto or in connection therewith, including, without limitation, (i) borrowing from Merrill Lynch or Citigroup and other lenders that may participate in the Credit Facilities from time to time, such sum or sums of money as, in the judgment of the officer or officers hereafter authorized, the Company may from time to time hereafter require, including, without limitation, the Credit Facilities and (ii) entering into interest rate management transactions constituting a

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434014

rate swap, basis swap, forward rate transaction, interest rate option, cap transaction, floor transaction, collar transaction, forward transaction or any other similar transaction (including any option with respect to any of these transactions) or any combination thereof, linked to one or more interest rates with respect to notional amounts of indebtedness under the Credit Facilities determined from time to time by the officer or officers hereafter authorized to be necessary in connection with the Company's financial operations or performance (the "Interest Rate Hedging Transactions") on the terms determined from time to time by the officer or officers hereafter authorized to be necessary in connection with the Company's financial operations or performance or the Credit Facilities, with such changes in terms and conditions as shall be approved by the Chairman, President and Chief Executive Officer, any Senior Vice President, the Vice President and Treasurer or any Vice President of the Company (such officer or officers, which are authorized to act singly or together pursuant hereto, being hereinafter designated as "Authorized Officers"), in their discretion;

FURTHER RESOLVED, that the Authorized Officers are hereby authorized, directed and empowered to (i) execute for, in the name of and on behalf of the Company, and deliver to Merrill Lynch or Citigroup, individually and/or as agents for themselves and the other lenders that may participate in the Credit Facilities, any and all instruments, documents and agreements deemed necessary or desirable by Merrill Lynch and Citigroup in order to evidence the Credit Facilities properly in accordance with the requirements of the Commitment and the Credit Facilities contemplated thereby and any other requirements established by Merrill Lynch, Citigroup or any of the other lenders, including without limitation promissory notes, loan or credit agreements, joinder agreements, indemnity agreements, pledge agreements, security agreements, guarantees, certificates, affidavits, applications, notices, financing statements or any other agreements or instruments evidencing the indebtedness of the Company for the monies so borrowed, with interest thereon, including renewals, extensions and/or amendments of said promissory notes, loan or credit agreements, joinder agreements, indemnity agreements, pledge agreements, security agreements, guarantees, certificates, affidavits, applications, notices, financing statements or any other agreements or instruments (individually and collectively the "Credit Facilities Documents"), all in the form required by Merrill Lynch and Citigroup and approved by the Authorized Officers executing same, the execution of same by such Authorized Officers to constitute conclusive evidence of the approval of same, and to (ii) take from time to time any actions deemed necessary or desirable by the Authorized Officers to establish the Credit Facilities and to evidence the Credit Facilities properly in accordance with the requirements of the Commitment Letter and the Credit Facilities Documents contemplated thereby and any other requirements established by Merrill Lynch, Citigroup and/or any of the other lenders, and to cause the Company to enter into and perform all of its obligations pursuant to the Credit Facilities Documents or otherwise in connection with the Credit Facilities;

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434015

FURTHER RESOLVED, that the Authorized Officers, be and they are each hereby authorized, directed and empowered, in the name of the Company, to execute and deliver for the benefit of each counterparty to the Interest Rate Hedging Transactions ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments evidencing the obligations of the Company under such Interest Rate Hedging Transactions, and each of said Authorized Officers are authorized to from time to time execute renewals, extensions and/or amendments of said ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments;

FURTHER RESOLVED, that each Authorized Officer is hereby authorized, directed and empowered, as security for the indebtedness and other obligations of the Company to Merrill Lynch or Citigroup, individually and/or as agents for themselves, the other lenders that may participate in the Credit Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, whether arising pursuant to this resolution or otherwise, if required by the Commitment, to grant, transfer, pledge, mortgage, assign, or otherwise hypothecate to Merrill Lynch or Citigroup, individually and/or as agents for themselves, the other lenders that may participate in the Credit Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, or deed in trust for its and/or their benefit, any property belonging to the Company and, if required by the Commitment, to execute and deliver to Merrill Lynch or Citigroup, individually and/or as agents for themselves, the other lenders that may participate in the Credit Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, any and all grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements; said instruments, and the promissory notes and other instruments and agreements referred to in the preceding paragraph, may contain such provisions, covenants, recitals and agreements as Merrill Lynch or Citigroup, individually and/or as agents for themselves, the other lenders that may participate in the Credit Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, may require and any of said Authorized Officers may approve, and the execution thereof by said Authorized Officers shall be conclusive evidence of such approval;

FURTHER RESOLVED, that the performance by the Company of its obligations under the Commitment, the Credit Facilities and the Interest Rate Hedging Transactions and any agreements or documents referred to herein or therein be, and it hereby is, ratified, confirmed, approved and adopted in all respects; and

FURTHER RESOLVED, that the Authorized Officers may from time to time designate such individual employee(s) of the Company as they deem appropriate to execute and deliver on behalf of the Company certificates, reports and other documents as may be required from time to time in conjunction with the Commitment, the Credit Facilities and

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434016

the Interest Rate Hedging Transactions, and the actions of such individual(s) shall be binding and enforceable against the Company.

## Stock Repurchases

**Tender Offer**

RESOLVED, that the Board of Directors hereby approves a modified "Dutch Auction" tender offer to purchase up to 53 million shares (together with an additional number of shares equal to 2% of the total outstanding shares, the "Maximum Number of Shares") of the Company's common stock, par value $0.01 per share (the "Shares"), at a price not greater than $32.50 (the "Maximum Offer Price") nor less than $28.00 per Share (the "Minimum Offer Price" and together with the Maximum Offer Price, the "Offer Prices"), net to the seller in cash, without interest (the "Tender Offer") and that the Company is hereby authorized and directed to conduct the Tender Offer and to purchase up to the Maximum Number of Shares at a price not greater than the Maximum Offer Price nor less than the Minimum Offer Price, to be paid from, and subject to the receipt of, borrowings pursuant to the terms of certain term loan and credit facilities to be entered into in connection with the Tender Offer;

RESOLVED FURTHER, that authority is hereby granted to Dennis J. FitzSimons Enrique Hernandez, Jr., Robert S. Morrison, William A. Osborn, and William Stinehart, Jr. (the "Executive Committee") to increase the Offer Prices or the Maximum Number of Shares to be purchased pursuant to the Tender Offer and cause the Company to pay the additional consideration related thereto and to take any and all actions and to do any and all things as in the Executive Committee's judgment may be deemed necessary, desirable or advisable to carry out or fulfill the purposes and intent of these resolutions, including the consummation of the Tender Offer and the related financing transactions described above;

RESOLVED FURTHER, that the Company is hereby authorized to select and pay the lowest purchase price within the range of the Offer Prices that will allow the Company to buy up to the Maximum Number of Shares or, if a lesser number of Shares is properly tendered, all Shares that are properly tendered and not withdrawn (the "Purchase Price");

RESOLVED FURTHER, that the Chairman, President and Chief Executive Officer, any Senior Vice President, the Vice President and Treasurer or any Vice President of the Company (such officer or officers, which are authorized to act singly or together pursuant hereto, being hereinafter designated as the "Authorized Officers") are authorized and empowered to prepare and deliver to the holders of the Shares an Offer to Purchase, together with all amendments or supplements thereto (the "Offer to Purchase"), relating to the Tender Offer;

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434017

RESOLVED FURTHER, that the Authorized Officers are authorized and empowered to prepare and file with the Securities and Exchange Commission (the "SEC") a Tender Offer Statement on Schedule TO (including all exhibits thereto), together with all amendments or supplements thereto (the "Schedule TO"), on the terms discussed with the Board of Directors, together with such changes as may be approved by the Authorized Officers, and to take any and all such further action and pay all fees as may be required by the SEC or deemed necessary, desirable, or advisable, including appearing before the SEC and its staff;

RESOLVED FURTHER, that Crane H. Kenney is hereby appointed as the Company's agent for service in connection with the Schedule TO and any amendments thereto, and Mr. Kenney is authorized to receive notices, orders and communications with respect to the Schedule TO and the Tender Offer, with all powers consequent upon such designation under the rules and regulations promulgated by the SEC;

RESOLVED FURTHER, that the Authorized Officers are authorized to retain (i) Merrill Lynch Capital Corporation and Citigroup Global Markets, Inc. as joint lead financial advisors, (ii) Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated and Citigroup Global Markets Inc. as lead dealer managers, (iii) Georgeson Shareholder Communications, Inc. as Information Agent and (iv) Computershare Trust Company, N.A. as Depositary, in connection with the Tender Offer and that such appointments are approved in all respects, and the Authorized Officers are authorized to execute any necessary documents in connection with such appointments and to pay all fees relating to such engagements; and

FURTHER RESOLVED, that the Authorized Officers may from time to time designate such individual employee(s) of the Company as they deem appropriate to execute and deliver on behalf of the Company certificates, reports and other documents as may be required from time to time in conjunction with the Tender Offer, and the actions of such individual(s) shall be binding and enforceable against the Company.

**Principal Shareholder Purchases**

RESOLVED, that the Board of Directors hereby approves the purchase outside of the Tender Offer of 8,982,800 Shares from Robert R. McCormick Tribune Foundation and 1,017,200 Shares from Cantigny Foundation, in each case pursuant to stock purchase agreements entered into between the Company and each such entity as described at this meeting, with all such Shares to be purchased not earlier than the eleventh business day following the expiration or other termination of the Tender Offer at a price equal to the Purchase Price per Share actually paid by the Company for Shares tendered in the Tender Offer and with the amount of Shares which may be purchased from each such entity being subject to increase or decrease as contemplated in such stock purchase agreements based on changes in the number of Shares subject to, or accepted for purchase in, the Tender Offer; and

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434018

FURTHER RESOLVED, that the Authorized Officers are authorized and empowered to prepare, execute and deliver, in the name and on behalf of the Company, one or more stock purchase agreements containing terms consistent with the foregoing resolution in such form as the executing Authorized Officer shall approve, such approval to be conclusively evidenced by such execution.

**Open Market Purchases**

RESOLVED, that the Authorized Officers are severally authorized to cause the Company to repurchase from time to time up to an additional 12 million Shares (in addition to the $1 billion share repurchase authorized by this Board in December 2005), with all such Shares to be purchased not earlier than the eleventh business day following the expiration or other termination of the Tender Offer;

FURTHER RESOLVED, that all such repurchases shall be made by the Company or by any of the Company's subsidiaries either (a) in accordance with Rule 10b-18 under the Securities Exchange Act of 1934, as amended, including specifically the price limitations thereof, or (b) in privately negotiated transactions, provided that in the case of private transactions (i) the price paid shall be no higher than two percent above the price at which repurchases pursuant to Rule 10b-18 could be made, and (ii) no purchases from "affiliates" of the Company (as the term is used in Rule 144 under the Securities Act of 1933, as amended) shall be made without approval in the specific case by a majority of disinterested directors of the Company;

FURTHER RESOLVED, that any Shares so repurchased shall, in the discretion of the Authorized Officers, either be canceled and retired or added to the Company's treasury stock (directly or indirectly) and, if so added, may be used for sales to employees under the Company's Employee Stock Purchase Plan, for the exercise of stock options granted to employees of the Company and its subsidiaries and for other employee benefit plans;

FURTHER RESOLVED, that the Board of Directors adopts the form of any resolution consistent with the foregoing resolutions requested by any bank, trust company, broker, dealer or other person in connection with such repurchases, provided that the Secretary or the Assistant Secretary of the Company approves the resolution and inserts it in the minute book of the Company; and

FURTHER RESOLVED, that all action heretofore taken by the officers of the Company with respect to the foregoing matters is ratified and approved. The Authorized Officers are severally authorized and empowered to take such steps and do such things (including, without limitation, the payment of fees, charges and expenses), and to execute and file or deliver such documents, as may be required by law or as may be deemed necessary or advisable in their judgment or the judgment of counsel for the Company in connection with the matters set forth in these resolutions.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434019

**Public Debt Issuance**

RESOLVED, by the Board of Directors of the Company, as follows:

1. **General.** This Board authorizes and approves the issuance and sale by the Company from time to time, in one or more public offerings, of up to $2 billion (in aggregate principal amount, or, if issued at an original issue discount, in aggregate public offering price or purchase price, in U.S. dollars or the equivalent in foreign denominated currency or composite currency) (the "Authorized Amount") of unsecured notes, debentures or other debt securities (which may be senior, subordinated, senior subordinated, junior subordinated or any combination of the foregoing) ("Debt Securities") and/or warrants to purchase Debt Securities ("Warrants"). Such Debt Securities and Warrants are collectively referred to herein as the "Securities." The authorization contained in these resolutions shall be in addition to the approximately $1 billion principal amount of debt securities and/or warrants to purchase debt securities remaining unissued under the Company's Form S-3 Registration Statement No. 333-129313 approved by this Board in July 2005 (the "Prior Authorization"), which Prior Authorization this Board hereby reconfirms and approves. The Securities shall be created, issued and sold, subject to the limitations set forth in this resolution, on such terms and conditions as shall be determined by the Special Committee of members of this Board established in Section 5 below.

2. **SEC Registration.** The officers of the Company are severally authorized and directed to prepare and execute, in the name and on behalf of the Company, a Registration Statement on Form S-3, or other appropriate form under the Securities Act of 1933, as amended (the "Securities Act"), for the registration of the Securities up to the Authorized Amount (the "Registration Statement") and the qualification under the Trust Indenture Act of 1939, as amended, of one or more indentures providing for the issuance of the Debt Securities. Any such Registration Statement may be combined with or include Securities previously registered under the Company's Form S-3 Registration Statement No. 333-129313. Upon execution of the Registration Statement by a majority of the directors of the Company, the officers of the Company are directed to cause the Registration Statement to be filed with the Securities and Exchange Commission (the "SEC") (which registration may, but shall not be required to, be made pursuant to Rule 415 of the Securities Act), and to execute and file, in the name and on behalf of the Company, all such other certificates, instruments and documents, to make all such payments and do all such other acts and things, including the execution and filing of amendments or post-effective amendments (including any registration statements or other filings under Rule 462 of the Securities Act) to the Registration Statement and amendments or supplements to any prospectus constituting a part thereof, as they may deem necessary or desirable.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434020

3. **Power of Attorney.** Each officer and director of the Company who may be required to execute the Registration Statement or any amendment thereto or document in connection therewith (whether for and on behalf of the Company or otherwise) is authorized and empowered to execute a power of attorney appointing Chandler Bigelow, Donald C. Grenesko and Crane H. Kenney, or any of them, his or her true and lawful attorney-in-fact and agent to sign in his or her name, place and stead, in any such capacity, any and all amendments (including post-effective amendments) to the Registration Statement and any and all other documents in connection therewith, and to file the same with the SEC, said attorney-in-fact to have the power and authority to do and perform, in the name and on behalf of such officers and directors who shall have executed such a power of attorney, every act whatsoever that such attorney may deem necessary, appropriate or advisable to be done in connection therewith as fully as such officers and directors might or could do in person.

4. **Agent for Service.** The Senior Vice President, General Counsel and Secretary of the Company, or his appointed designee, is designated as the agent for service who shall be duly authorized to receive communications and notices from the SEC with respect to the Registration Statement and with the powers conferred upon him as agent therefore by the Securities Act and the rules and regulations of the SEC thereunder.

5. **Special Committee Establishment and Authority.** There is established a Special Committee of directors, consisting of Messrs. FitzSimons, Osborn and Stinehart to provide for the issuance of the Securities from time to time. The Special Committee is hereby expressly authorized (with the full power of delegation to one or more officers of the Company), with the full power of this Board to the extent provided by law, to consider all matters and to take and authorize to be taken any and all action which might otherwise be taken or authorized by this Board in connection with the offering, sale, issuance and registration of the Securities, including, without limitation, to authorize one or more issues of such Securities and in connection with any such issue to determine, approve or appoint (as applicable): (a) the type, title, designation and form of the Securities, provided that no Securities shall be secured by or convertible into any equity securities of the Company; (b) the aggregate principal amount and denominations; (c) the maturity or maturities, including the terms of any extension thereof; (d) the mode of sale and distribution and, as applicable, the particular underwriters, managing underwriters, agents, dealers and purchasers; (e) the form of any indenture, warrant agreement or underwriting, agency, sales, dealer and/or purchase agreement; (f) the price to be received by the Company for the Securities (which may reflect an original issue discount), and any public offering price, discount or commission paid or allowed in connection therewith; (g) the interest rate or rates, if any, or the formula by which such rate or rates may be established and the dates from which such interest shall accrue; (h) any sinking fund or similar redemption requirement and related redemption prices; (i) optional redemption rights, if any, of the Company or the holders of Securities, and related redemption prices and/or limitations; (j) exchange rights, if any, of the Company or holders of Securities and/or limitations; (k) the ranking of such Securities (senior or

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434021

subordinated) and, if applicable, the subordination provisions of any subordinated Debt Securities; (l) defeasance provisions, if any; (m) the applicable currency or composite currency, and related payment terms; (n) in the case of Warrants, the designation and amount of Debt Securities for which they are exercisable, and the dates, price and other terms of such exercise; (o) additional affirmative or restrictive covenants, if any, to be imposed on the Company with respect to any Securities; (p) any trustees, warrant agents, authentication, calculation, transfer or paying agents and registrars and such other agents as the Special Committee shall deem appropriate (q) any events of default; and (r) such other terms, conditions and provisions, not inconsistent herewith, as the Special Committee shall deem appropriate.

6. **Indenture; Warrant Agreement.** The Chairman, President and Chief Executive Officer, any Senior Vice President, the Vice President and Treasurer or any Vice President of the Company (such officer or officers, which are authorized to act singly or together pursuant hereto, being hereinafter designated as "Authorized Officers") together with the Secretary or any Assistant Secretary of the Company are severally authorized to execute, attest and deliver, in the name and on behalf of the Company, an appropriate indenture or indentures and an appropriate warrant agreement or warrant agreements in substantially the forms as approved by the Special Committee, including indentures and warrant agreements supplemental thereto in forms as approved by the Special Committee with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they may deem necessary or advisable to make any indenture or warrant agreement the valid and effective act and agreement of the Company, including, without limitation, any and all acts necessary or appropriate to qualify any indenture under the Trust Indenture Act of 1939, as amended.

7. **Sales Agreements.** The Authorized Officers are severally authorized to execute, in the name and on behalf of the Company, appropriate underwriting agreements, agency agreements, sales agreements, dealer agreements and/or purchase agreements (collectively, the "Sales Agreements"), substantially in the form as approved by the Special Committee, with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they may deem necessary or advisable to make any Sales Agreement the valid and effective act and agreement of the Company.

8. **Execution of Securities; Facsimile Signatures.** The Authorized Officers are severally authorized to execute the Securities (including any Securities issued in global form), under the corporate seal of the Company attested by its Secretary or Assistant Secretary, and to cause the Securities to be delivered to the trustee or warrant agent therefor, together with an executed authentication and delivery request from the Company, for authentication and delivery by such trustee or warrant agent in accordance with such request. The signatures of the Authorized Officers and the Company seal appearing on the definitive Debt Securities and Warrant Certificates may be engraved, lithographed or

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434022

facsimiles, and the Company adopts for such purpose the facsimile seal of the Company and the facsimile signatures of Dennis J. FitzSimons, Donald C. Grenesko, Chandler Bigelow and Crane H. Kenny, as Chairman, President and Chief Executive Officer, Senior Vice President/Finance and Administration, Vice President and Treasurer and Senior Vice President, General Counsel and Secretary, respectively, whether or not any of such persons actually holds such office at the time Securities are executed, authenticated or delivered.

9.  **Stock Exchange Listing.** The officers of the Company are severally authorized to provide for the filing of a registration statement on Form 8-A under the Securities Exchange Act of 1934, as amended, to be filed with the SEC in connection with the listing of one or more issues of Securities on the New York Stock Exchange, to file an application, and amendments thereto as necessary, with the New York Stock Exchange for the listing of such Securities on such Exchange upon official notice of issuance, to execute and deliver, in the name and on behalf of the Company, such other documents and agreements (including, without limitation, indemnity agreements in form acceptable to such Exchange for the purpose of such listings), to appear before the staff of such Exchange with authority to make such changes in any such application, or to make or amend such documents and agreements relative thereto, as may be necessary to conform with the listing requirements of such Exchange and to take such other action as such officers may deem necessary or advisable to list the Securities on such Exchange.

10. **State and Other Securities Laws.** The officers of the Company are severally authorized to determine the states and such other jurisdictions (including, without limitation, foreign jurisdictions) in which appropriate action shall be taken to qualify or register for sale (or exempt therefrom) all or such part of the Securities as the officers of the Company may deem advisable. The officers of the Company are severally authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in order to comply with the applicable laws of any such states or other jurisdictions, and in connection therewith to execute and file all requisite papers and documents (including, without limitation, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process); and the execution by such officers of any such paper or document or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefor from the Company and the approval and ratification by the Company of the papers and documents so executed and the action so taken, and any resolution of this Board that is required or appropriate in connection therewith shall be deemed to have been adopted by this resolution and may be so certified by the Secretary or Assistant Secretary of the Company.

**Miscellaneous**

FURTHER RESOLVED, that the Authorized Officers are authorized and empowered, for, in the name of and on behalf of the Company, to take any and all such actions and to

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434023

do any and all such things, including without limitation the execution and delivery of all such further agreements, documents, certificates, instruments and undertakings in the name and on behalf of the Company, and to incur such fees and expenses, as in the judgment of any of the Authorized Officers may be deemed necessary, desirable, advisable, expedient, convenient or proper to carry out or fulfill the purposes and intent of the foregoing resolutions and in order to consummate fully all of the transactions contemplated under these resolutions and the instruments and agreements referred to herein, and all acts and prior acts of the Authorized Officers in any way relating to or arising from, or that are in conformity with the purposes and intent of, these resolutions and the instruments and agreements referred to herein are hereby approved, ratified and confirmed in all respects; and

FURTHER RESOLVED, that in connection with the transactions contemplated by the foregoing resolutions, the Secretary and the Assistant Secretary of the Company, and each of them, are authorized and empowered, for, in the name of and on behalf of the Company, to certify more formal or detailed resolutions as the Authorized Officers may deem necessary, desirable or advisable to effectuate the intent and purposes of the foregoing resolutions, and the Secretary and the Assistant Secretary of the Company, and each of them, are authorized and empowered, for, in the name of and on behalf of the Company, to attach such resolutions to these resolutions and thereupon such resolutions shall be deemed the resolutions of the Board of Directors as if set forth at length in these resolutions.

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned at approximately 3:30 p.m.

_____
Secretary

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434024