# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
## SEPTEMBER 21, 2006

The Tribune Company Board of Directors met at 12:30 p.m. on Thursday, September 21, 2006, at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Jeffrey Chandler, Dennis J. FitzSimons, Roger Goodan, Betsy D. Holden, Robert S. Morrison, William A. Osborn, J. Christopher Reyes, William Stinehart, Jr., Dudley S. Taft and Miles D. White. Enrique Hernandez, Jr. participated via telephone.

Portions of the meeting were attended by Donald C. Grenesko, Crane H. Kenney, Timothy J. Landon, Thomas D. Leach, John E. Reardon and Scott C. Smith. Tom Cole of Sidley Austin LLP, Chip Mulaney of Skadden, Arps, Slate, Meagher & Flom LLP, Michael Costa, Todd Kaplan and Mike O'Grady of Merrill Lynch, and Michael Canmann, Christina Mohr and Michael Schell of Citigroup also participated in portions of the meeting.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 12:30 p.m.

## EXECUTIVE SESSION

The directors met in executive session at the beginning of the meeting.

Following the conclusion of the executive session, Messrs. Grenesko, Kenney and Leach, joined the meeting.

## SALE OF BRASSRING, LLC

Mr. Leach presented management's request for authority to dispose of the Company's interest in BrassRing. Mr. Leach reviewed the competitive environment and financial implications of the proposed divestiture. Following discussion, a motion was then made, seconded and approved to adopt the following resolutions regarding the sale of equity interest in BrassRing:

> RESOLVED, that, in connection with the proposed sale of BrassRing, LLC by its equityholders, the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of its equity interest in BrassRing, LLC for not less than $27 million (collectively, the "Transaction");

> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company or the President or any Vice President of Tribune National Marketing Company (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

## SALE OF WLVI-TV BOSTON

Mr. Leach presented management's request for authority to sell WLVI-TV for $113.7 million to Sunbeam Television Corp. Mr. Leach reviewed the terms of the transaction, financial impact of the sale, closing conditions and timetable for the transaction. Following discussion, a motion was then made, seconded and approved to adopt the following resolutions:

RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of all or substantially all of the assets of WLVI Inc. for not less than $113 million (collectively, the "Transaction");

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company or the President or any Vice President of WLVI Inc. (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434049

limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

**SALE OF CORPORATE AIRCRAFT**

Mr. Grenesko then presented management's request for authority to sell the corporate aircraft and purchase a fractional interest in syndicated aircraft. Following discussion, a motion was then made, seconded and approved to adopt the following resolutions regarding the sale of the corporate plane:

RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of its Dassault Falcon 900EX airplane for not less than $32 million (collectively, the "Transaction");

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company or the President or any Vice President of JuliusAir Company, LLC (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings, to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

3

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## DERIVATIVE LAWSUIT

Mr. Kenney presented an update on a new derivative lawsuit filed in connection with the leveraged recapitalization. Mr. Kenney responded to questions throughout his presentation.

## STRATEGIC INITIATIVES UPDATE

Mr. FitzSimons described the strategic review process undertaken since the Board's July 19, 2006 meeting. He also reviewed the strategic analyses previously undertaken by the Company and its financial advisors, beginning in February 2005 with the review of the Broadcasting Group. He then described actions taken by the Company to address the decline in its operating performance throughout 2005 and 2006.

Mr. Cole ██████████████ Redacted ██████████████
██ Redacted ██

Mr. Gronesko then reviewed a report provided to the Board in advance of the meeting regarding the Company's strategic analysis. He provided an update on the status of the leveraged recapitalization, expense controls and divestiture plan. He then reviewed the Publishing and Broadcasting Groups' 2006 strategic plans and operating performance. He also reviewed projected operating performance for 2006-10. Mr. Gronesko answered questions throughout his presentation.

Messrs. Costa, O'Grady and Kaplan then reviewed materials provided to the directors in advance of the meeting. Mr. Costa reviewed the media industry operating environment and stock performance. He reviewed the Company's portfolio of assets and their performance relative to the peer group. He then described each of five different strategic alternatives considered by Merrill Lynch and potential value creation for Tribune shareholders that may result from each alternative. Mr. Costa reviewed possible strategic acquirers and private equity interest in the Company. Mr. O'Grady and Mr. Kaplan then described the condition of debt capital markets and the current availability of leveraged financing for such a transaction. Mr. Costa concluded that in Merrill Lynch's opinion, on a risk-adjusted basis, pursuing a business combination with a strategic or private equity buyer is likely to produce the greatest value to Tribune shareholders. The Board asked questions throughout the presentation.

Mr. Schell and Ms. Mohr then reviewed materials provided to the directors in advance of the meeting. Mr. Schell reviewed five different strategic alternatives and summarized the conclusions of Citigroup regarding each. Ms. Mohr then reviewed operating projection sensitivities, comparing the Company's projections to analyst projections and projections performed by Boston Consulting Group in 2005. She reviewed the same sensitivities for the Company's stock price and performed a valuation summary of Tribune's assets on a consolidated and unconsolidated basis. She then reviewed in detail the strategic alternatives Mr. Schell summarized earlier. She assessed the Company's unaffected stock price and projected the impact

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434051

of each alternative on shareholder value. She also reviewed the time required to achieve each of the transaction alternatives and risks associated with the operating plan for the longer timed alternatives. Ms. Mohr also reviewed the dynamics of financing a transaction for Tribune and the role "stapled financing" plays in that scenario. Ms. Mohr concluded that in Citigroup's opinion, a leveraged buy-out of Tribune would yield the highest value to the Company's shareholders. The Board asked questions throughout the presentation.

After further discussion with each of Merrill Lynch and Citigroup, representatives of Citigroup and Merrill Lynch departed. Mr. FitzSimons then presented management's assessment of the strategic alternatives reviewed by the financial advisors. Mr. FitzSimons concluded with his statement of support for the conclusions reached by Merrill Lynch and Citigroup. Mr. Stinehart then stated the support of the Chandler Trusts for exploring a business combination. The Board then determined it would hear the report regarding the TMCT transaction before concluding its discussion of the strategic alternatives.

**TMCT UPDATE**

Mr. Costa then rejoined the meeting and Mr. Kenney reviewed a report provided to the Board regarding a distribution to the Company from the TMCT partnerships. Mr. Kenney reviewed the asset valuation process, structure and terms of the proposed transaction, tax implications and closing conditions. Mr. Grenesko then reviewed the financial implications of the transaction and accounting treatment. Mr. Stinehart then stated the support of the Chandler Trusts for the proposed transaction and the Chandler Trusts' view of the benefits to all shareholders of pursuing the proposed transaction. Following Mr. Stinehart's statement, the Board met in executive session without the Chandler Trust representatives.

Mr. Kenney then reviewed the improved financial and tax-related terms of this distribution compared to the transaction offered by the Chandler Trusts previously. Mr. Costa then reviewed materials provided to the Board regarding the terms of the transaction, valuation methodology used by Merrill Lynch in analyzing the transaction and financial impact of the transaction on the Company. Mr. Costa concluded his presentation by stating that in the opinion of Merrill Lynch, the transaction was fair from a financial point of view and that a written fairness opinion had been provided to the Company. Mr. Costa then answered questions from the Board and the Board discussed timing of the TMCT transaction in relation to the strategic analysis undertaken by the Company and its financial advisors. Following this discussion, Mr. Costa departed.

The Board, without the Chandler Trust representatives participating, then discussed the relative value of the current TMCT proposal and importance of removing the TMCTs as an obstacle to certain strategic transactions. The Board also discussed the need for a special committee to ensure the strategic review is conducted without the influence of management or the Chandler Trusts.

5

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0434052**

After a brief recess, the full Board of Directors reconvened. Mr. Osborn reviewed the deliberations for the benefit of the Chandler Trust directors and Mr. Osborn asked whether the Chandler Trusts or their advisors planned to participate in the strategic process other than as shareholders. Mr. Stinehart responded that the Chandler Trusts had no plan to participate and he was not aware of their advisors participating. The Board then unanimously approved the engagement of Merrill Lynch and Citigroup to lead the review of strategic alternatives for the Company and the formation of a special committee to oversee the strategic review process. After discussion, it was unanimously agreed that the special committee would consist of Messrs. Hernandez, Morrison, Osborn, Reyes, Taft and White and Ms. Holden, with Mr. Osborn acting as chairman of the committee.

After further discussion, a motion was made, seconded and approved to adopt the following resolutions related to the TMCTs:

RESOLVED, that the Board of Directors of Tribune Company (the "Company") deems it advisable and in the best interest of the stockholders of the Company to enter into a series of transactions whereby certain shares of (i) the Company's Common Stock and Series C Preferred Stock currently held by TMCT, LLC ("TMCT") and (ii) the Company's Common Stock, Series D-1 Preferred Stock and Series D-2 Preferred Stock currently held by TMCT II, LLC ("TMCT II") will be distributed to the Company and certain of its subsidiaries and affiliates (collectively, the "Distribution Transactions"), in each case in accordance with the Distribution Agreements (as defined below);

FURTHER RESOLVED, that (i) the Distribution Agreement (the "TMCT Distribution Agreement"), among the Company, TMCT, Candle Holdings Corporation, Fortify Holdings Corporation, Chandler Trust No. 1 ("Trust No. 1") and Chandler Trust No. 2 ("Trust No. 2" and, together with Trust No. 1, the "Trusts") and (ii) the Distribution Agreement, among the Company, TMCT II, Fortification Holdings Corporation, Wick Holdings Corporation, Eagle New Media Investments, LLC, Eagle Publishing Investments, LLC, Trust No.1 and Trust No. 2 (the "TMCT II Distribution Agreement" and, together with the TMCT Distribution Agreement, the "Distribution Agreements"), each in substantially the form presented at this meeting and the transactions contemplated thereby, be and hereby are approved;

FURTHER RESOLVED, that (i) the Amended and Restated Limited Liability Company Agreement of TMCT, LLC (the "Amended TMCT LLC Agreement") and (ii) the Second Amended and Restated Limited Liability Company Agreement of TMCT II, LLC (the "Amended TMCT II LLC Agreement" and, together with the Amended TMCT LLC Agreement, the "Amended LLC Agreements"), each in substantially the form presented at this meeting, be and hereby are approved;

FURTHER RESOLVED, that (i) the letter agreement from the Trusts addressed to the Company and relating to certain put and call rights with respect to the Company's

6

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

remaining ownership interests in TMCT (the "TMCT Put/Call Agreement") and (ii) the letter agreement from the Trusts addressed to the Company and relating to certain put and call rights with respect to the Company's remaining ownership interests in TMCT II (the "TMCT II Put/Call Agreement" and, together with the TMCT Put/Call Agreement, the "Put/Call Agreements"), each in substantially the form presented at this meeting and the transactions contemplated thereby, be and hereby are approved;

FURTHER RESOLVED, that the Amended and Restated Lease Agreement, between the Company and TMCT (the "Amended Lease"), in substantially the form presented at this meeting and the transactions contemplated thereby, be and hereby is approved;

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, or the President or any Vice President of any of the Company's subsidiaries or affiliates who are parties to any of the documents to be delivered in connection with the Distribution Transactions (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute such Distribution Agreements, Amended LLC Agreements, Put/Call Agreements, the Amended Lease and the related agreements, documents or instruments contemplated thereby with such changes therein as such officer or officers may deem necessary or advisable, all such determinations to be evidenced conclusively by such officer's or officers' execution thereof (such agreements, documents and instruments, as executed, the "Executed Agreements");

FURTHER RESOLVED, that the Authorized Officers of the Company be and hereby severally are authorized and directed to execute and deliver in the name and on behalf of the Company any amendments to the Executed Agreements and any of the related agreements referred to therein as such officer or officers may deem necessary or advisable, all such determinations to be evidenced conclusively by such officer's or officers' execution thereof;

FURTHER RESOLVED, that the transactions expressly contemplated by the Executed Agreements, including the Distribution Transactions and the distributions described in Section 4.6(a) of the TMCT Distribution Agreement and Section 4.6(a) of the TMCT II Distribution Agreement, be and hereby are approved for purposes of Section 203 of the Delaware General Corporation Law and for purposes of the Rights Agreement, dated as of December 12, 1997, between the Company and First Chicago Trust Corporation of New York, as Rights Agent, as amended by Amendment No. 1 to the Rights Agreement, dated as of June 12, 2000 (the "Rights Agreement"), and the Company be and hereby is authorized to enter into an amendment to the Rights Agreement, if necessary, to clarify that none of TMCT, TMCT II, Trust No. 1, Trust No. 2, or any of the trustees of such

7

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0434054

trusts whose beneficial ownership of Tribune common stock is aggregated with such trusts shall be deemed to be an Acquiring Person under the Rights Agreement as a result of such transactions;

FURTHER RESOLVED, that following the Distribution Transactions, none of the Company's authorized 8% Cumulative Convertible Preferred Stock, Series C, without par value (the "Series C Preferred Stock"), will be outstanding, and the Company shall not issue any shares of the Series C Preferred Stock subject to the Amended Certificate of Designation of the Preferred Stock, Series C (without par value) of the Company, dated February 13, 2001, that has been previously filed by the Company with the Secretary of State of the State of Delaware;

FURTHER RESOLVED, that following the Distribution Transactions, none of the Company's authorized Preferred Stock, Series D-2, without par value (the "Series D-2 Preferred Stock"), will be outstanding, and the Company shall not issue any shares of the Series D-2 Preferred Stock subject to the Amended Certificate of Designation of the Preferred Stock, Series D-2 (without par value) of the Company, dated February 13, 2001, that has been previously filed by the Company with the Secretary of State of the State of Delaware;

FURTHER RESOLVED, that the Authorized Officers of the Company be and hereby severally are, authorized to engage such attorneys, accountants, consultants and other professionals as they, in their business judgment, deem necessary to effectuate the transactions contemplated herein, including the payment of fees in connection with services rendered pursuant to such engagements;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings, to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

The Board then reviewed a press release announcing the commencement of the strategic review process and the TMCT distribution.

8

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0434055

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned at 6:00 p.m.

_____
Secretary

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0434056**