**PRIVATE AND CONFIDENTIAL**

December 1, 2006

Chandler Trust No. 1 and Chandler Trust No. 2
350 West Colorado Blvd.
Suite 230
Pasadena, California 91105

Ladies and Gentlemen:

   Chandler Trust No. 1 and Chandler Trust No. 2 (collectively, "you") have requested information from Tribune Company (the "Company") in connection with your consideration of a possible negotiated business combination or other transaction between us and you (a "Transaction"). It is understood and agreed that this agreement creates no obligation to enter into any Transaction or any agreement relating to a Transaction. The Company is willing to furnish such information to you only for the purpose of evaluating such Transaction and pursuant to the terms of this letter agreement (this "Agreement"). You agree that, subject to the terms hereof, such information and any other information the Company or its Representatives (as hereinafter defined) furnish to you or your Representatives, including any technical, scientific, trade secret or other proprietary information of the Company or its affiliates with which you or your Representatives may come into contact in the course of your investigation, and whether oral, written or electronic ("Information"), together with any reports, analyses, compilations, memoranda, notes and any other written or electronic materials prepared by you or your Representatives which contain, reflect or are based upon such Information (collectively, the "Evaluation Material"), will be kept confidential and used only for the purpose of evaluating the Company and a Transaction; provided, however, that any of such Information may be disclosed to your Representatives who reasonably require access to such Information for the purpose of evaluating the Company and a Transaction between us (it being understood that you will cause your Representatives to treat such Information in a confidential manner and in accordance with the terms hereof). You acknowledge and agree that the Company shall remain the exclusive owner of the Information and all patent, copyright, trade secret, trademark, domain name and other intellectual property rights therein. No license or conveyance of any such rights is granted to you or implied under this Agreement. For purposes of this Agreement, references herein to "you" and/or "your Representatives" shall include only your trustees and counsel and, following your provision of prior written notice to the Company, your affiliates, consultants, investment bankers, financial and other advisors, accountants and potential sources of debt financing, and "Representatives" in respect of the Company, shall mean its officers, directors, employees, counsel, investment bankers, consultants and other representatives. For the avoidance of doubt, (i) without the prior written consent of the Company, no person who is a potential source of equity capital or equity financing (other than those listed on Annex A hereto) shall be considered your Representative for any purpose hereunder; and (ii) no affiliate, advisor, accountant, consultant, investment banker, financial advisor or person who is a potential source of debt financing shall be considered your Representative for any purpose hereunder unless and until you shall have executed and delivered to the Company a prior written notice that (x) identifies any such person to whom you intend to provide Information and (y) includes your express

Professionals' Eyes Only

TRB0015964

acknowledgment and agreement that any such person shall be deemed to be your Representative hereunder.

You agree that none of you, your affiliates or any Representatives of you or your affiliates will, acting on your behalf in connection with a possible Transaction, without the prior written consent of the Company, directly or indirectly, (i)(A) discuss with (other than with one of your Representatives and other than those listed on Annex A hereto) or offer to any other person (other than those listed on Annex A hereto) an equity participation in a possible transaction or any other form of joint acquisition by you and such third person, or (B) enter into any agreement, arrangement or understanding with any other person (other than one of your Representatives and other than those listed on Annex A hereto) regarding a possible transaction involving the Company or any of its affiliates or (ii) other than to one of your Representatives or one of the persons listed on Annex A hereto, disclose to or discuss with any other person, including without limitation, any investment bankers or potential sources of capital or financing, (a) the fact that discussions or negotiations are taking place concerning a possible Transaction, (b) any of the terms, conditions or other facts with respect to any such possible Transaction, including the status thereof, (c) any information that could enable such other person to identify the Company or any of its affiliates as a party to any discussions or negotiations with you, or (d) that you have received or produced any Evaluation Material (together with clauses a, b and c above, the "Confidential Information"); provided that the restrictions provided in this paragraph shall terminate from and after the earlier of (1) January 31, 2007 (provided that, if the Company advises you that a bona fide process with respect to a sale of the Company is ongoing, such date shall be extended to February 28, 2007) and (2) the date on which the Company publicly announces that (i) it has approved or entered into an agreement with respect to a merger, business combination, sale of a substantial amount of assets, recapitalization or any other extraordinary corporate transaction with respect to the Company or its affiliates or assets or (ii) the Company is terminating the process by which it is exploring strategic transactions with respect to the Company or its affiliates or assets (such earlier date, the "Termination Date"). You further agree that none of you, your affiliates or any Representatives of you or your affiliates will, acting on your behalf in connection with a possible Transaction, without the prior written consent of the Company, directly or indirectly, enter into any agreement, arrangement or understanding with any other person (other than any person listed on Annex A hereto) that has or would have the effect of requiring such person to provide you with financing or other potential sources of capital on an exclusive basis in connection with a possible transaction involving the Company or any of its affiliates. The term "person" as used in this Agreement shall be broadly interpreted to include, without limitation, the media and any corporation, company, group, partnership or individual. The term "affiliate" as used in this Agreement shall have the meaning ascribed to such term in Rule 12b-2 of the General Rules and Regulations under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

It is understood that all communications which would ordinarily be discussed with either the Company or its financial advisors regarding the possible transaction or requests for information will be submitted or directed only to Michael Costa of Merrill Lynch ((212) 449-8533; michael_costa@ml.com) or Christina Mohr of Citigroup ((212) 816-9247; christina.mohr@citigroup.com). You also agree not to initiate or maintain contact (except for those contacts made in the ordinary course of business) with any officer, director or employee or agent of the Company or its affiliates regarding its business, operations, prospects or finances,

Professionals' Eyes Only

TRB0015965

except for Crane Kenney, Senior Vice President and General Counsel ((312) 222-2491; ckenney@tribune.com), or Donald Grenesko, Senior Vice President/Finance and Administration ((312) 222-3766; dgrenesko@tribune.com), or otherwise with the express written permission of the Company, Michael Costa of Merrill Lynch or Christina Mohr of Citigroup. It is understood that Michael Costa of Merrill Lynch or Christina Mohr of Citigroup will arrange for appropriate contacts for due diligence purposes.

In the event that you or any of your Representatives are required to disclose any Evaluation Material or Confidential Information in connection with any judicial or administrative proceedings pursuant to any oral questions, interrogatories, requests for information or documents, subpoena, Civil Investigation Demand or other legal process, statute rule or other legal, administrative or similar requirement promulgated or imposed by a court or any administrative, regulatory, legislative agency or other organization (collectively, "Applicable Law"), you will in advance of such disclosure provide the Company with prompt notice of such requirement(s), to the extent permitted by Applicable Law and reasonably practicable. You also agree to provide the Company, in advance of any such disclosure, to the extent permitted by Applicable Law and reasonably practicable, with a list of any Evaluation Material or Confidential Information you intend to disclose (and, if applicable, the text of the disclosure language itself) and to cooperate with the Company, at the Company's expense, to the extent it may seek to limit such disclosure, including, if requested, taking all reasonable steps to resist or avoid any such judicial or administrative proceeding referred to above, at the Company's expense. If, in the absence of a protective order or the receipt of a waiver from the Company, you or your Representatives are required under Applicable Law to disclose Evaluation Material or Confidential Information, you or your Representatives may disclose such information without liability hereunder; provided, however, that you agree that you or your Representatives will furnish only that portion of the Evaluation Material or Confidential Information which you or your Representatives are advised by counsel is required under Applicable Law and use your or their reasonable efforts to obtain assurances that confidential treatment will be accorded to such Evaluation Material or Confidential Information, the Company's expense.

In consideration for being furnished with the Evaluation Material you agree that for a period of eighteen months from the date of this Agreement, unless the Company's Board of Directors shall otherwise specifically request in writing in advance, you will not, and shall cause your Representatives and affiliates not to (and you and they will not assist or form a group within the meaning of Section 13(d)(3) of the Exchange Act, act in concert or participate with or encourage other persons to), directly or indirectly, (i) acquire or offer to acquire, seek, propose or agree to acquire, by means of a purchase, tender or exchange offer, business combination or in any other manner, beneficial ownership as defined in Rule 13d-3 under the Exchange Act, of any of the assets, businesses or securities of the Company or any affiliate thereof, including rights or options to acquire such ownership (including from any third party), (ii) initiate, or induce or attempt to induce any other person, entity or group (as defined in Section 13(d)(3) of the Exchange Act) to initiate, any stockholder proposal or tender offer for any securities of the Company or any affiliate thereof, any change of control of the Company or any affiliate thereof or the convening of a stockholders' meeting of the Company or any affiliate thereof or (iii) make any public disclosure, or take any action (including making any non-public communication to the Company) which would reasonably be expected to require the Company or any of its affiliates to make any public disclosure, with respect to any of the matters set forth in this Agreement;

3

provided, however, that the Company agrees that it will permit you and your affiliates to make an offer or proposal for a Transaction at such time as the Board of Directors of the Company (or the Special Committee thereof) authorizes the acceptance of offers or proposals from any other parties interested in pursuing a Transaction; provided further, however, that the restrictions set forth in this paragraph (other than the prohibition on acquiring securities of the Company or any affiliates thereof set forth in clause (i)) shall immediately terminate in the event that (a) the Company publicly announces that it is terminating the process by which it is exploring strategic transactions with respect to the Company or its affiliates or assets, (b) the Termination Date occurs and the Company has not entered into a definitive agreement (an "Alternative Transaction Agreement") with respect to (1) a merger or business combination involving the acquisition of all of the Company's outstanding equity ownership or the sale of all or substantially all of the assets of the Company and its subsidiaries, or (2) a sale of assets, recapitalization or any other extraordinary corporate transaction or transactions with respect to Company or its affiliates or assets that would be subject to approval by a vote of the stockholders of the Company and would result in you receiving an aggregate amount of cash in excess of 50% of the market value of your shares in the Company at the time such Alternative Transaction Agreement is entered into, or (c) the Company enters into an Alternative Transaction Agreement and one of the following occurs: (1) the Company holds a meeting of its shareholders for the purpose of voting on the Alternative Transaction Agreement and the shareholders of the Company do not approve the Alternative Transaction Agreement, (2) the Company does not hold a meeting of its shareholders for the purpose of voting on the Alternative Transaction Agreement within six months of the date of such Alternative Transaction Agreement or (3) the Alternative Transaction Agreement is terminated in accordance with its terms other than for purposes of entering into another Alternative Transaction Agreement relating to a superior proposal.

Promptly, upon the request of the Company, you will (and you will cause your Representatives to) deliver to the Company or destroy all copies of the Evaluation Material, including any notes relating thereto, without retaining any copy thereof, including, to the extent practicable, expunging all such Evaluation Material from any computer, word processor or other device containing such information. If requested by the Company, an appropriate officer of yours will certify to the Company that all such material has been so delivered or destroyed in compliance herewith. Notwithstanding the delivery or destruction of the Evaluation Material required by this paragraph, any and all duties and obligations existing under this Agreement shall remain in full force and effect. Notwithstanding the foregoing, you or your Representatives may keep a copy of the Evaluation Material, including any notes included therein, to the extent necessary to comply with obligations of you or your Representatives under any Applicable Law or other fiduciary obligation.

For a period of two years from the date hereof, you agree that you and your affiliates will not, directly or indirectly, (i) use any of the Evaluation Material to solicit any customers or suppliers of the Company's or any of its affiliates' businesses, or (ii) hire or solicit any officer or director of the Company or any of its affiliates, or any employee of the Company or any of its affiliates with whom you have had contact or who became known to you in connection with your consideration of a Transaction, except that you shall not be precluded from hiring (x) any such officer or employee that is no longer employed by the Company or any of its affiliates and who has not been employed by the Company or any of its affiliates for at least 30

Professionals' Eyes Only

TRB0015967

days prior to such solicitation or hiring or (y) any employee of the Company who responds to a general advertisement or notice not specifically directed at employees of the Company.

The term "Evaluation Material" does not include Information that (i) was or becomes available to you on a non-confidential basis from a source other than the Company or its Representatives provided such other source is not reasonably known by you to be bound by a confidentiality obligation to the Company, (ii) was or becomes generally available to the public (other than as a result of a breach by you or your Representatives of this Agreement) or (iii) is already in your possession, provided that such Information is not reasonably known by you to be subject to another confidentiality agreement or other obligation of secrecy to the Company.

You understand and agree that neither the Company nor any of its Representatives makes any representation or warranty, express or implied, on which you may rely as to the accuracy or completeness of the Evaluation Material for your purposes and that only those representations and warranties made by us in writing in a subsequent definitive agreement related to a Transaction, if any, shall have any legal effect. You agree that other than as may be set forth in such definitive agreement neither the Company nor its Representatives shall have any liability whatsoever to you or any of your Representatives, including, without limitation, in contract, tort or under federal or state securities laws, relating to or resulting from the use of the Evaluation Material or any errors therein or omissions therefrom.

It is agreed that no failure or delay by the Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

You acknowledge that irreparable damage would occur to the Company if any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, you agree that the Company, without prejudice to any rights to judicial relief it may otherwise have, shall be entitled to seek equitable relief, including injunction, in the event of any breach of the provisions of this Agreement. You agree that you will not oppose the granting of such relief on the basis that the Company has an adequate remedy at law.

It is further understood and agreed that unless and until the execution and delivery of a definitive agreement with respect to a Transaction, neither the Company nor you (and your Representatives) intends to be, nor shall either of us be, under any legal obligation of any kind whatsoever with respect to such Transaction or otherwise, by virtue of any written or oral expressions by our respective Representatives with respect to such Transaction, except for the matters specifically agreed to in this Agreement. You further acknowledge and agree that (i) the Company shall have no obligation to authorize or pursue with you or any other party any transaction referred to in the first paragraph of this Agreement, (ii) you understand that the Company has not, as of the date hereof, authorized any such transaction and (iii) the Company reserves the right, in its sole and absolute discretion, to reject all proposals and to terminate discussions and negotiations with you at any time. These provisions may only be modified or waived by a separate writing signed by the Company and you expressly so modifying or waiving these provisions.

Professionals' Eyes Only

TRB0015968

You hereby confirm that you are aware and that your Representatives have been advised that the United States securities laws generally prohibit any person who has material non-public information about a company from purchasing or selling securities of such company on the basis of such information or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person may purchase or sell such securities.

If at any time you cease to consider a Transaction, you agree promptly to notify us of such decision in writing.

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware. In case of any dispute related to this Agreement, you agree that notice may be served upon you at the address set forth on the first page of this Agreement. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

It is understood and agreed that if any provision contained in this Agreement or the application thereof to you, the Company, or any other person or circumstance shall be invalid, illegal or unenforceable in any respect under any applicable law as determined by a court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions contained in this Agreement, or the application of such provision to such persons or circumstances other than those as to which it has been held invalid or unenforceable, shall remain in full force and effect and shall in no way be affected, impaired or invalidated thereby. In the case of any such invalidity, illegality or unenforceability, the parties hereto shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to affect the original intent of the parties.

This Agreement shall benefit and bind successors and assigns of you and of the Company. Any assignment of this Agreement by you without prior written consent of the Company shall be void.

This Agreement (i) constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, (ii) may be amended or modified only in a written instrument executed by the parties hereto and (iii) shall, except as otherwise specifically set forth herein, cease to be effective two years after the date hereof; provided, that the confidentiality provisions contained herein shall continue to apply so long as you retain any Evaluation Material in accordance with the last sentence of the first full paragraph on page 4.

[Remainder of Page Intentionally Left Blank]

Professionals' Eyes Only

TRB0015969

Dec-01-06   05:06pm   From-                                                                 T-965   P.002/002   F-785

If you are in agreement with the foregoing, please so indicate by signing and returning one copy of this Agreement, whereupon this Agreement will constitute our agreement with respect to the subject matter hereof.

Very truly yours,

TRIBUNE COMPANY

By: *[signature]*
Name: Crane Kenney
Title: SVP & GC.

CONFIRMED AND AGREED TO:

CHANDLER TRUST NO. 1

By: *[signature]*
Name: WILLIAM STINEHART JR
Title: Co-Trustee

CHANDLER TRUST NO. 2

By: *[signature]*
Name: WILLIAM STINEHART JR
Title: Co-Trustee

7

Professionals' Eyes Only                                                                                                                    TRB0015970

ANNEX A

Blackstone

BentleyForbes

Cerberus

Fortress

Elevation Partners

Evercore

David Geffen

Hellman and Friedman

Such other parties as the Company's representatives from Merrill Lynch or Citigroup may approve in advance in writing from time to time.

8

CH1 3669034v.4

Professionals' Eyes Only

TRB0015971