Professionals' Eyes Only

Confidential Discussion Materials Prepared for:

# Committee of Independent Directors of the Board of Directors of Tribune

January 27, 2007




corporate and investment banking



CONFIDENTIAL

TRB0011447

Professionals' Eyes Only

# Overview of Potential Transactions

## Third Party Proposals

| | Chandler Trusts | Broad / Yucaipa | Carlyle |
|---|---|---|---|
| **Initial Proposals** | ■ Sale of Publishing to Chandler Trusts/Sponsor<br>■ Tax-free spin-off of Broadcasting<br>   ■ Includes TVFood, excludes Cubs and Comcast SportsNet<br>■ $19 per share cash returned to non-Chandler shareholders | ■ Leveraged recapitalization of Whole Company with new equity investment by Broad/Yucaipa<br>■ $27 per share cash returned to shareholders<br>■ Broad / Yucaipa ownership increasing from 34% to 45% with warrants | ■ $4.8B all-cash acquisition of Broadcasting<br>   ■ Cubs<br>   ■ TVFood<br>   ■ Comcast SportsNet<br>■ $16 per share cash to fund dividend<br>■ Can be combined with recapitalization of Publishing |
| **Revisions to Proposals** | ■ Expected January 26th | ■ Reduced number of warrants to 15% from 20%<br>■ Maximum Broad / Yucaipa ownership capped at 39.9%<br>■ Removed all sponsor approval rights<br>■ Willing to modify put right<br>■ Proposal expires January 27th | ■ Increased offer for TV assets by $110mm, Tribune retains TV Food<br>■ $14 per share cash to fund dividend<br>■ Proposal expires January 29th |

CONFIDENTIAL

TRB0011448

1

# Comparison of Third Party Proposals

| | Chandler Trust Proposal | Broad / Yucaipa Proposal | Carlyle Proposal |
|---|---|---|---|
| **Monetization vs. Upside Retained** | - $19 per share cash returned<br>- Approx. 30% of residual equity exposure, entirely to Broadcasting<br>- Residual equity tied to performance of television and TVFood stake | - $27 per share cash returned<br>- Approx. 10% of residual exposure to publishing/broadcasting retained<br>- Residual equity benefits from<br>  - Deleveraging<br>  - Operational improvements<br>  - Bender resolution | - $14 per share cash to fund dividend<br>- Residual equity exposure to Publishing<br>  - Sale of Broadcasting can be combined with Publishing recapitalization<br>- Residual equity tied to performance of print and interactive assets |
| **Financial Flexibility** | - PF leverage at Broadcasting of 6.75x<br>- Flexibility reduced<br>  - Operating shortfalls magnified<br>- Broadcasting could later be monetized without corporate level tax | - PF leverage at Tribune of 8.1x<br>- Flexibility significantly reduced<br>  - Operating shortfalls magnified | - PF leverage at Publishing of 6.9x<br>- Flexibility reduced<br>  - Operating shortfalls magnified<br>  - Small newspapers only monetizable assets<br>- Tax leakage of $2.50 |
| **Strategic Flexibility** | - Eliminates cross-ownership constraints | - Cross-ownership overhang remains<br>- Limited, if any, ability to pursue acquisitions | - Eliminates cross-ownership constraints<br>- Publishing could subsequently be sold to strategic or financial buyer |
| **Complexity** | - Most complex proposal; requires<br>  - 80% shareholder vote<br>  - IRS ruling<br>  - Audited financials<br>  - Regulatory approvals<br>  - Voting agreement | - Recapitalization straightforward<br>- Transaction requires<br>  - Solvency opinion<br>  - Voting agreement | - Recapitalization straightforward<br>- Sale requires<br>  - Negotiation of definitive agreement<br>  - Regulatory approvals |
| **Timing** | - Longest timeline:<br>  - IRS ruling in ~9-12 months | - Quickest alternative: Completed in 1-2 months | - Recapitalization completed in 1-2 months<br>- Broadcasting sale completed ~3-4 months |

Professionals' Eyes Only

citigroup
corporate and
investment banking

CONFIDENTIAL

TRB0011449

2

Professionals' Eyes Only

# New Developments

- Axel Springer

- Gannett

- Madison Dearborn Consortium



CONFIDENTIAL

TRB0011450

Professionals' Eyes Only

# Overview of Potential Transactions

## Self-Help Transactions

### Whole Company Recapitalization

- Share repurchase + special dividend
- $20 per share cash returned to shareholders
- Sale of Cubs
- Sale of Comcast SportsNet

### Whole Company Recapitalization with Sale of Broadcasting

- Share repurchase + special dividend
- $20 cash per share returned to shareholders
  - $14 cash per share from Carlyle
  - $6 cash per share from additional leverage
- Concurrent announcement and cash sale of Broadcasting
  - TV assets
  - Cubs
  - Comcast SportsNet

### Spin-Off of Broadcasting

- Recapitalization of Publishing
- Subsequent recapitalization of Broadcasting
- $20 per share cash returned to shareholders
- Sale of Cubs
- Sale of Comcast SportsNet



*Note: After-tax proceeds from sale of Cubs and Comcast SportsNet of $391mm and $148mm, respectively.*

CONFIDENTIAL

4

TRB0011451

# Comparison of Self-Help Alternatives

| | Whole Company Recapitalization | Whole Company Recapitalization with Sale of Broadcasting ($4.05B) | Spin-Off Of Broadcasting/ Publishing Recapitalization |
|---|---|---|---|
| **Monetization vs. Upside Retained** | ■ $20 per share cash returned<br>■ Approx. 30% of residual exposure to publishing/broadcasting retained<br>■ Residual equity benefits from<br>  ■ Deleveraging<br>  ■ Operational improvements<br>  ■ Bender resolution | ■ $20 per share cash returned<br>■ Approx. 30% of residual equity exposure, entirely to publishing<br>■ Residual equity tied to performance of print and interactive assets<br>■ Potential Bender resolution upside retained by Tribune shareholders | ■ $20 per share cash returned<br>  ■ $10-$12 upfront; remainder at time of spin-off<br>■ Residual equity in two separately traded securities |
| **Financial Flexibility** | ■ Pro forma Tribune leverage of 7.1x<br>■ Broad portfolio supports leverage<br>■ Flexibility reduced<br>  ■ Operating shortfalls magnified | ■ Pro forma Publishing leverage of 6.9x<br>■ Flexibility reduced<br>  ■ Operating shortfalls magnified<br>  ■ Small newspapers only monetizable assets<br>■ Tax leakage of $2.50 | ■ Pro forma Publishing / Broadcasting leverage of 7.0x / 7.5x<br>■ Flexibility reduced<br>  ■ Operating shortfalls magnified<br>  ■ Limited potential to pursue acquisitions<br>  ■ Monetizable assets in 2 different companies |
| **Strategic Flexibility** | ■ Cross-ownership overhang remains<br>■ Limited, if any, ability to pursue acquisitions | ■ Eliminates cross-ownership constraints<br>■ Publishing could immediately / subsequently be sold to strategic or financial buyer | ■ Eliminates cross-ownership constraints<br>■ Either / both Publishing / Broadcasting could later be monetized without corporate tax<br>■ May require delay in potential strategic premium for Publishing |
| **Complexity** | ■ Most straightforward alternative | ■ Recapitalization straightforward<br>■ Sale requires<br>  ■ Negotiation of definitive agreement<br>  ■ Regulatory approvals | ■ Recapitalization straightforward<br>■ Spin-off requires<br>  ■ Audited financials<br>  ■ Regulatory approvals |
| **Timing** | ■ Quickest alternative: Completed in 1-2 months | ■ Recapitalization completed in 1-2 months<br>■ Broadcasting sale completed ~3-4 months later | ■ Longest timeline:<br>  ■ Recapitalization completed in 1-2 months<br>  ■ Spin-off completed in ~6 months |

Professionals' Eyes Only

CONFIDENTIAL

TRB0011452

5

Professionals' Eyes Only

## Operating Plan – Publishing Sensitivity Cases

- **A Publishing operating environment worse than expected will reduce 2010 EBITDA by ~$310mm versus management plan**

- **A reduction of capital expenditures/ investments in response to a deteriorating operating environment could reduce the resulting cash flow shortfall**

### Publishing Management Plan

|  | 2006A | 2007E | ... | 2010E | '06-'10 CAGR |
|---|---|---|---|---|---|
| Revenue | $ 4,025 | $ 4,123 | | $ 4,364 | 2.0% |
| Cash Expenses | 3,078 | 3,118 | | 3,271 | 1.5% |
| EBITDA | $947 | $1,004 | | $1,093 | 3.7% |
| CapEx and Investments | 417 | 265 | | 220 | (14.8%) |
| EBITDA - Capex | 530 | 739 | | 873 | 13.3% |
| Tax-Effected EBITDA - Capex | 175 | 363 | | 463 | |
| Consolidated EBITDA | $1,313 | $1,359 | | $1,530 | 3.9% |

### Flat Publishing Ad Revenues

|  | 2006A | 2007E | ... | 2010E | '06-'10 CAGR |
|---|---|---|---|---|---|
| Revenue | $ 4,025 | $ 4,026 | | $ 4,007 | (0.1%) |
| Cash Expenses | 3,078 | 3,081 | | 3,082 | 0.0% |
| EBITDA | $947 | $945 | | $925 | (0.6%) |
| CapEx and Investments | 417 | 240 | | 190 | (17.8%) |
| EBITDA - Capex | 530 | 705 | | 735 | 8.5% |
| Tax-Effected EBITDA - Capex | 175 | 351 | | 388 | |
| Tax-effected EBITDA - Capex Shortfall vs. Management Plan | $0 | $12 | | $75 | |
| Cumulative Shortfall | 0 | 12 | | 205 | |
| Consolidated EBITDA | $1,313 | $1,300 | | $1,362 | 0.9% |

### 2% Publishing Ad Revenue Decline

|  | 2006A | 2007E | ... | 2010E | '06-'10 CAGR |
|---|---|---|---|---|---|
| Revenue | $ 4,025 | $ 3,946 | | $ 3,716 | (2.0%) |
| Cash Expenses | 3,078 | 3,049 | | 2,936 | (1.2%) |
| EBITDA | $947 | $897 | | $780 | (4.7%) |
| CapEx and Investments | 417 | 190 | | 150 | (22.6%) |
| EBITDA - Capex | 530 | 707 | | 630 | 4.4% |
| Tax-Effected EBITDA - Capex | 175 | 371 | | 338 | |
| Tax-effected EBITDA - Capex Shortfall vs. Management Plan | $0 | ($8) | | $126 | |
| Cumulative Shortfall | 0 | (8) | | 215 | |
| Consolidated EBITDA | $1,313 | $1,252 | | $1,217 | (1.9%) |

Note: EBITDA excludes stock-based compensation. 2006A based on 52-week results.



CONFIDENTIAL

TRB0011453

6

Professionals' Eyes Only

# Whole Company Recapitalization
## Total Debt / Leverage Sensitivity to Operating Cases



|  | Publishing Management Plan | | | | | Flat Publishing Ad Revenue Case | | | | | 2% Publishing Ad Revenue Decline Case | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 2006PF | 2007E | 2008E | 2009E | 2010E | 2006PF | 2007E | 2008E | 2009E | 2010E | 2006PF | 2007E | 2008E | 2009E | 2010E |
| Publishing EBITDA | $947 | $1,004 | $1,038 | $1,065 | $1,093 | $947 | $945 | $943 | $931 | $925 | $947 | $897 | $862 | $821 | $780 |
| Consol. EBITDA | 1,313 | 1,359 | 1,443 | 1,485 | 1,530 | 1,313 | 1,300 | 1,348 | 1,351 | 1,362 | 1,313 | 1,252 | 1,267 | 1,241 | 1,217 |
| Adj. EBITDA/ Interest Exp | 1.8x | 1.9x | 2.2x | 2.4x | 2.6x | 1.8x | 1.9x | 2.1x | 2.1x | 2.3x | 1.8x | 1.8x | 2.0x | 2.0x | 2.1x |

Net Debt        Net Debt / Adj. EBITDA

CONFIDENTIAL

TRB0011454



## Overview of Transactions

| | Chandler Trusts Tax-Efficient Restructuring | | Broad/Yucaipa Recapitalization | | Carlyle: Broadcasting Sale Plus Recapitalization | | Self-Help Alternatives | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Whole Co. Recapitalization | | Broadcasting Spin and Recapitalization | |
| Price Per Tribune Share | $26.52 | $27.72 | $28.25 | $30.65 | $24.34 | $29.86 | $24.64 | $32.66 | $27.60 | $33.19 |
| % Monetized | 73% | 70% | 96% | 88% | 82% | 67% | 81% | 61% | 72% | 60% |
| Assumed EBITDA Multiples | 9.0x B&E | 9.0x B&E (1) | 7.75x Publ. 8.0x B&E | 8.5x | 7.25x Publ. | 8.75x Publ. | 7.25x | 8.75x | 7.25x Publ. 8.5x B&E | 8.75x Publ. 10.0x B&E |
| Key Closing Conditions | IRS, FCC, HSR, Voting Agreement (at signing) | | HSR, Solvency Opinion, Voting Agreement | | FCC, HSR | | HSR, Solvency Opinion? | | IRS | |
| Existing Tribune Shs. PF Ownership | 100% (Broadcasting Only) | | 66% | 60% | 100% (Publishing Only) | | 100% | | 100% | |
| Anticipated Time to Close | 9-12 Months | | 1-2 Months | | 6 Months | | 1-2 Months | | 9+ Months | |
| Shareholder Approval Required | Yes – 80% | | Yes – Post-Close | | No | | No | | No | |

Legend: Publishing Equity, Broadcasting Equity, Cash, Tribune Equity

(1) "High" Chandler valuation assumes no leakage on TVFood.

Professionals' Eyes Only    CONFIDENTIAL    TRB0011455    8

Professionals' Eyes Only

# Revised Third Party Proposals

**Merrill Lynch**



CONFIDENTIAL

TRB0011456

# THE CARLYLE GROUP

520 MADISON AVENUE, 41ST FLOOR
NEW YORK, NEW YORK 10022
TEL: (212) 381-4900 / FAX: (212) 381-4901

**HIGHLY CONFIDENTIAL**

January 26, 2007

Mr. Michael Costa                                   Ms. Christina Mohr
Merrill Lynch & Co.                                 Citigroup Global Markets Inc.
4 World Financial Center, 30th Floor           388 Greenwich Street, 36th Floor
New York, NY 10080                                  New York, NY 10013

Dear Michael and Christina:

Reference is made to our bid letter of January 17th, wherein The Carlyle Group ("Carlyle") submitted a proposal for the purchase of all of the outstanding capital stock and other equity interests of Tribune Broadcasting (a/k/a the Transferred Entities, as such term is defined in the Stock Purchase Agreement) (the "Business" or the "Company") from the Tribune Company ("Tribune"). Subsequently, you have advised us that we should consider enhancing our proposal to maximize both total value and after tax proceeds for Tribune by providing a revised offer for an alternative mix of assets. We are pleased to submit our revised proposal which offers incremental value of approximately $425 million to Tribune's shareholders via the following enhancements.

a) **Removing the Food Network provides an additional $315 million of value to Tribune**

We have removed the Company's investment in the Food Network from the package of assets on which we are bidding and have assumed that this investment will remain with Tribune's publishing business. Based on our initial valuation of $860 million for the stake in the Food Network, eliminating this asset from our proposal will generate incremental value from tax savings of approximately $315 million or $1.30 per Tribune share. Moreover, the strength of the Food Network along with its fast-growing dividend stream will improve the business profile, cash flow and valuation of the remaining publishing business.

b) **Increasing purchase price on the remaining assets by $110 million**

We propose to buy the assets of the Company excluding the Food Network (broadcasting assets, Cubs and Comcast SportsNet) (the "Remaining Business") for a **total purchase price of $4,050 million.** This is $110 million higher than the valuation proposed in our previous letter (after the removal of the Food Network). Our offer assumes that the assets will be acquired on a debt-free, cash-free basis and will be subject to other terms and conditions to be set forth in the definitive documentation and the satisfactory completion of our pending confirmatory due diligence. Our purchase price also assumes that we agree to a group of 338(h)(10) election entities, which includes WPIX, and that final transition, severance, parachute and related payments are paid for by Tribune.

The form of consideration would be 100% cash and would be financed with a combination of committed debt and equity. The debt portion of the purchase price would be financed with fully committed debt

Tribune Company
c/o Merrill Lynch & Co. and Citigroup Global Markets Inc.
January 26, 2007

capital from Merrill Lynch Capital Corporation, Citigroup Global Markets Inc. and/or Lehman Brothers Inc. (the "Bank Group"). Although we have not included revised financing documents from the Bank Group, each member of the Group has agreed to provide 100% of the required debt financing for the Remaining Business on similar terms as proposed in their previous financing documents provided in Exhibit A of our letter dated January 17. Carlyle will fund 100% of the required equity capital. We have received all necessary approvals from our Investment Committee for this revised proposal and no further internal or external approvals are required with respect to our equity commitment. We would be pleased to review with you the details of the overall financing structure at your convenience.

We continue to believe that our proposal optimally addresses Tribune's objectives with respect to value, speed and assurance of closure. First, assuming the remaining publishing assets will trade at 8.0x - 9.0x 2007 EBITDA, our proposed bid implies a valuation for the whole Company of $33.65 - $37.52 per share, providing shareholders with a premium of 21% - 35% over the undisturbed stock price of $27.89 as of May 26, 2006. Second, our all-cash consideration will provide Tribune the opportunity to further unlock value by either repurchasing shares, issuing a one-time cash dividend to its shareholders, or paying down debt in order to become a high dividend stock valued at a premium multiple. Third, our proposal provides much greater value certainty than a public market spin-off of the Remaining Business. It eliminates the execution risk inherent in a spin-off due to shareholder churn, the limited track record of the CW network and the need for management to execute a turnaround in an environment of increasing secular challenges. More importantly, our proposal will deliver all of the value upfront in cash. Finally, our significant industry experience and resources and our deep knowledge of the FCC approval process and executing complex carve-out deals will assure a speedy closure and a smooth business transition post-closing.

This letter does not constitute a binding agreement to enter into any transaction, which agreement would only be evidenced by the parties' execution of mutually acceptable definitive documentation. Our offer is subject to the completion of confirmatory business, tax, accounting, IT and legal diligence (as outlined in Exhibit B of our letter dated January 17), prior to signing definitive documentation. We expect that this remaining due diligence could be completed concurrent with our negotiation of definitive documentation for the transaction. Our offer is also contingent on receipt of all necessary governmental, regulatory, Major League Baseball and other third party consents, filings, permits or approvals. This proposal will expire at 5:00 PM Eastern Daylight Time on Monday, January 29, 2007.

We are eager to move forward with the proposed transaction and are willing to work with your team to consummate a transaction as soon as practicable. Please feel free to contact us if you have any questions or would like to discuss our proposal further. I can be reached at (212) 381-4889 (office) or (914) 234-6362 (home), or by email at james.attwood@carlyle.com. We look forward to hearing from you.

Sincerely,

*/s/ James W. Attwood/*

James A. Attwood, Jr.
Managing Director

Professionals' Eyes Only
TRB0011458

January 24, 2007

Michael Costa
Managing Director
Merrill Lynch & Co.
4 World Financial Center, 30th Floor
New York, NY 10080

Christina Mohr
Managing Director
Citigroup Global Markets, Inc.
338 Greenwich Street, 36th Floor
New York, NY 10013

Re: Tribune Company ("Tribune" or the "Company")

Dear Mr. Costa and Ms. Mohr:

Thank you for inviting us to present to the Special Committee on Saturday, January 20. We greatly appreciated the opportunity to present our proposal in person and enjoyed spending time with members of the Committee as they consider strategic alternatives for the Tribune Company.

We continue to believe that our proposal offers a compelling combination of superior value, certainty to close and speed of execution. However, in considering the feedback you have communicated over the past week, we are prepared to modify our proposal as follows:

- We will remove all of the Series B Warrants and increase the Series A Warrants by only 5%, resulting in Series A Warrants giving us the right to purchase 15% of Tribune's Common Stock, on a fully diluted basis.
- We will further agree that upon conversion of the Preferred Stock and the exercise of the Series A Warrants we will not own in excess of 39.9% of the voting stock of Tribune.
- We are committed to working in partnership with the existing Board and have confidence that our ideas will receive due consideration by the Board without any special governance protections. In that spirit, we are willing to remove all the Sponsor Approval Rights described on pages 3 and 4 of the Equity Term Sheet submitted as Exhibit E to our proposal, other than customary approval rights with respect to amendments adverse to the rights, preferences or privileges of the Preferred Stock and creation of equity that is senior to, or *pari passu* with, the Preferred Stock.

- For the mutual protection of all constituencies, we propose that a sale of The Chicago Tribune or The Los Angeles Times would require a supermajority (2/3rd) vote of the Board.
- We are willing to have discussions with the Special Committee regarding other Board dynamics and possible solutions to concerns of the Special Committee relating thereto.
- We are open to having a conversation with legal counsel to the Special Committee regarding the Put Option described on page 3 of the Equity Term Sheet.

We understand that the Special Committee plans to meet this Saturday to continue its evaluation process. To accommodate this review, we are willing to extend our offer with the modifications detailed above until Saturday, January 27 at 5:00pm CST.

We continue to believe our proposal is a compelling and unique opportunity for Tribune shareholders. We are excited about the prospect of working closely with the Board to shape the future direction of the Company.

Sincerely,

*[signature: El. Broad]*

Eli Broad
The Broad Investment Company, Inc.

Ronald W. Burkle
The Yucaipa Companies, LLC

Professionals' Eyes Only

TRB0011460

- For the mutual protection of all constituencies, we propose that a sale of The Chicago Tribune or The Los Angeles Times would require a supermajority (2/3rd) vote of the Board.
- We are willing to have discussions with the Special Committee regarding other Board dynamics and possible solutions to concerns of the Special Committee relating thereto.
- We are open to having a conversation with legal counsel to the Special Committee regarding the Put Option described on page 3 of the Equity Term Sheet.

We understand that the Special Committee plans to meet this Saturday to continue its evaluation process. To accommodate this review, we are willing to extend our offer with the modifications detailed above until Saturday, January 27 at 5:00pm CST.

We continue to believe our proposal is a compelling and unique opportunity for Tribune shareholders. We are excited about the prospect of working closely with the Board to shape the future direction of the Company.

Sincerely,

Eli Broad
The Broad Investment Company, Inc.

Ronald W. Burkle
The Yucaipa Companies, LLC

Professionals' Eyes Only
TRB0011461

**Dr. Andreas Wiele**
Member of the Board
President Magazines and International



by email and facsimile

Merrill Lynch & Co., Inc.
Attn.: Mr. Michael Costa
4 World Financial Center
250 Vesey Street

NEW YORK, NY 10080
USA

Dear Michael,

Many thanks for organizing our meetings in Chicago with Dennis Fitzsimmons and members of his management team. These very interesting discussions considerably strengthen our interest in investing in the publishing business of the Tribune Company. Therefore, we authorize you to communicate our strong interest to the Special Committee of the Tribune Company.

If our interest is positively received, we would suggest the following simultaneous steps:

1. Definition of the structure of the offer and the amount of shareholding

2. Detailed due diligence of the main assets as follows:
   - In-depth interviews with all key members of the management and the editorial team of each of the main newspapers and online assets.

We estimate that this process would take 10 to 15 working days and that we would be in a position to make a firm offer at the end of this process pending our board approval.

Best regards,

Andreas Wiele

Hamburg, 26 January 2007

**Axel Springer AG** Axel-Springer-Platz 1, D-20350 Hamburg, Phone: +49 (0) 40 3 47-2 44 44, Fax: +49 (0) 40 3 47-2 56 00
Axel-Springer-Strasse 65, D-10888 Berlin, Phone: +49 (0) 30 25 91-7 26 20, Fax: +49 (0) 30 25 91-7 22 11 andreas.wiele@axelspringer.de

GESAMT SEITEN 01
Fax S Von ID: an: 13434 26.01.2007 17:52 [00:00:38] OK S.001/001

Professionals' Eyes Only                                                                TRB0011462

Professionals' Eyes Only

# Disclaimers

Merrill Lynch prohibits (a) employees from, directly or indirectly, offering a favorable research rating or specific price target, or offering to change such rating or price target, as consideration or inducement for the receipt of business or for compensation, and (b) Research Analysts from being compensated for involvement in investment banking transactions except to the extent that such participation is intended to benefit investor clients.

This presentation is confidential, for your private use only, and may not be shared with others without Merrill Lynch's written permission, except that you (and each of your employees, representatives or other agents) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the matters within and all materials of any kind (including opinions or other tax analyses) that are provided to you relating to such tax treatment and tax structure. For purposes of the preceding sentence, tax refers to U.S. federal and state tax. This presentation is for discussion purposes only. Merrill Lynch is not an expert on, and does not render opinions regarding, legal, accounting, regulatory or tax matters. You should consult with your advisors concerning these matters before undertaking any of the matters contemplated within.

Any terms set forth herein are intended for discussion purposes only and are subject to the final terms as set forth in separate definitive written agreements. This presentation is not a commitment to lend, syndicate a financing, underwrite or purchase securities, or commit capital nor does it obligate us to enter into such a commitment, nor are we acting as a fiduciary to you. By accepting this presentation, subject to applicable law or regulation, you agree to keep confidential the existence of and proposed terms for any transaction contemplated hereby (a "Transaction").

Prior to entering into any Transaction, you should determine, without reliance upon us or our affiliates, the economic risks and merits (and independently determine that you are able to assume these risks) as well as the legal, tax and accounting characterizations and consequences of any such Transaction. In this regard, by accepting this presentation, you acknowledge that (a) we are not in the business of providing (and you are not relying on us for) legal, tax or accounting advice, (b) there may be legal, tax or accounting risks associated with any Transaction, (c) you should receive (and rely on) separate and qualified legal, tax and accounting advice and (d) you should apprise senior management in your organization as to such legal, tax and accounting advice (and any risks associated with any Transaction) and our disclaimer as to these matters. By acceptance of these materials, you and we hereby agree that from the commencement of discussions with respect to any Transaction, and notwithstanding any other provision in this presentation, we hereby confirm that no participant in any Transaction shall be limited from disclosing the U.S. tax treatment or U.S. tax structure of such Transaction.

IRS Circular 230 Disclosure: Citigroup Inc. and its affiliates do not provide tax or legal advice. Any discussion of tax matters in these materials (i) is not intended or written to be used, and cannot be used or relied upon, by you for the purpose of avoiding any tax penalties and (ii) may have been written in connection with the "promotion or marketing" of the Transaction. Accordingly, you should seek advice based on your particular circumstances from an independent tax advisor.

We are required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with us. We will ask for your complete name, street address, and taxpayer ID number. We may also request corporate formation documents, or other forms of identification, to verify information provided.

Any prices or levels contained herein are preliminary and indicative only and do not represent bids or offers. These indications are provided solely for your information and consideration, are subject to change at any time without notice and are not intended as a solicitation with respect to the purchase or sale of any instrument. The information contained in this presentation may include results of analyses from a quantitative model which represent potential future events that may or may not be realized, and is not a complete analysis of every material fact representing any product. Any estimates included herein constitute our judgment as of the date hereof and are subject to change without any notice. We and/or our affiliates may make a market in these instruments for our customers and for our own account. Accordingly, we may have a position in any such instrument at any time.

Although this material may contain publicly available information about Citigroup corporate bond research or economic and market analysis, Citigroup policy (i) prohibits employees from offering, directly or indirectly, a favorable or negative research opinion or offering to change an opinion as consideration or inducement for the receipt of business or for compensation; and (ii) prohibits analysts from being compensated for specific recommendations or views contained in research reports. So as to reduce the potential for conflicts of interest, as well as to reduce any appearance of conflicts of interest, Citigroup has enacted policies and procedures designed to limit communications between its investment banking and research personnel to specifically prescribed circumstances.



CONFIDENTIAL

TRB0011463