January 26, 2007

Michael Costa
Merrill Lynch & Co., Inc.
4 World Financial Center
250 Vesey Street
New York, New York 10080

Christina Mohr
Citigroup Global Markets, Inc.
388 Greenwich Street, 36th Floor
New York, New York 10013

Dear Michael and Christina;

We appreciate the ongoing dialogue with you and the opportunity to meet with Tribune Company's ("Tribune's") special committee last Saturday. The Chandler Trusts have continued to move forward with their proposal on all fronts and we want to take this opportunity to report on our progress. We continue to believe that the Chandler Trusts' proposal provides unique advantages and creates the best opportunity to maximize value for all stockholders.

As we have discussed by telephone, the Chandler Trusts are prepared to make the changes in their proposal described below, designed to provide:

a) a higher level of cash and other value to non-Trust stockholders

b) a greater degree of certainty as to the value of the proposal

c) a higher level of risk sharing on the exchange ratio for Tribune's broadcasting business ("Tribune Broadcasting"); and

d) a greater degree of certainty as to closing.

These changes have been discussed with our equity participants and are agreeable to them.

*Increase Cash Consideration to Public Stockholders*

As outlined in our meeting with Tribune's board of directors last Saturday, the Trusts are prepared to increase the cash consideration in their proposal to the public stockholders by $5.25 to $24.55 per share from $19.30 in their original proposal. This adjustment increases the total cash consideration by 27% with cash now representing 77% of total transaction consideration. They will accomplish this by (i) retaining in the Company its 31.3% interest in the TV Food Network ("TV Food") and WGN Radio, and (ii) increasing the amount of indebtedness to be incurred at Tribune Broadcasting. The net effect of these two adjustments is that the Trusts will

receive $16.43 per share in upfront cash liquidity relative to the $24.55 for the public stockholders. More specifically:

> (i) Since the retention of TV Food and WGN Radio will require their removal from Tribune Broadcasting qualify as a tax free spin-off, it is possible that one other operating business will also be retained and, as a result, some additional cash distributed to non-Trust stockholders. Evaluation of this issue will require close coordination by the Company's and the Trusts' tax counsel. With the Trusts retaining TV Food and WGN Radio, the amount of cash to the public stockholders will be increased $3.88 by per share.

> (ii) The Trusts have also been advised that increasing leverage at Tribune Broadcasting to 7.5x 2007E EBITDA (from the 6.75x leverage ratio in the original proposal) should not adversely affect the expected trading value of the equity since Tribune Broadcasting will still be less levered than its publicly traded peers. Our financing sources have modified the capital structure of Tribune Broadcasting from an all-bank capital structure to a higher leverage capital structure with bank debt and senior subordinated notes, in order to maintain the covenant flexibility to pay a recurring cash dividend to stockholders.

> (iii) The additional leverage will not impact the likelihood that Tribune Broadcasting will trade at 11.0x 2007E EBITDA on a fully-distributed basis. In addition, we believe that the typical debt covenants and restricted payments basket for this level of leverage (restricted payments = EBITDA minus 1.4x gross cash interest expense) would enable the company to pay stockholders an annual cash dividend yield of approximately 3%. Such a dividend policy will be a significant support to the trading valuation of the equity.

We have discussed these adjustments with the Trusts' debt financing sources and can provide financing commitment papers to you on short notice.

*Exchange Value of Trusts' Interest in Tribune Broadcasting*

The Trusts are also prepared to address the concerns you expressed regarding the trading value of Tribune Broadcasting. The Trusts' strongly believe that their proposal valuation at 11.0x 2007E EBITDA, with 7.5x 2007E debt/EBITDA, an implied 13.3x 2007E Free Cash Flow multiple and a 3% recurring dividend yield is a very realistic estimate for the public trading value of Tribune Broadcasting. Nevertheless, the Trusts will be willing to provide protection for the public stockholders by placing a collar around this projected trading level ratio. This collar would also serve to potentially increase the amount of cash the public stockholders would receive in the transaction above $24.55 per share.

This collar would work as follows:

- We would establish a target stock price of $7.09 as the midpoint of the collar, implying a valuation of 11.0x 2007E EBITDA based on Tribune management's forecast. A symmetrical range would then be set around the 11.0x midpoint multiple, with an increase / decrease of one EBITDA multiple point at the high end and low end of the collar range.

2

- The cash payable to the Trusts in the Transaction would be calculated using the high end of the collar range, but an amount equal to the difference in cash represented by the high and low ends of the range would be placed into an escrow account rather than paid to the Trusts at the closing.

- In connection with the merger, all stockholders of Tribune (other than the acquisition vehicle holding the shares contributed by the Trusts) would receive, in addition to cash and Tribune Broadcasting shares, a contingent value right payable for up to the full escrowed amount no later than 120 days following the closing in the event that the trading price for Tribune Broadcasting, as described below, is less than the high end of the collar range, with such payment amount to increase as the trading price decreases to the low end of the range. Any remaining funds in the escrow after payment to the Tribune Broadcasting shareholders would be paid to the Trusts.

- We would establish a pricing period to begin following twenty (20) trading days after the completion of the spin-off, which would last forty (40) additional trading days ("Pricing Period"). We would then select ten (10) trading days randomly during the Pricing Period in order to determine the allocation of cash in the escrow account between the Trusts and the other public stockholders.

- The reference stock prices at the low, mid and high end of the collar would also be subject to adjustment as follows: (i) any change in the amount of actual indebtedness incurred by Tribune Broadcasting prior to the spin-off from that projected, and (ii) any downward adjustment for EBITDA if EBITDA is less than projected between transaction announcement and the pricing period (to maintain the 2007E stated EBITDA multiple at the low, mid and high end of the collar)

Parenthetically, we note that the low end of this collar (10x 2007 EBITDA) is equal to the valuation range contained in our original proposal (9.5x 2006 EBITDA and 10% free cash flow yield) submitted in early December. At the low end of the collar, we believe Tribune Broadcasting would be trading at an attractive valuation relative to its peers with a 10% free cash flow yield and a ~4.5% dividend yield.

*Contingent Litigation Recovery Right*

In response to your requests, the Trusts will modify their proposed Merger Agreement to provide that prior to the merger a contingent litigation recovery right for 80% of recovery in the Matthew Bender and Mosby tax cases be distributed to all stockholders including the Chandler Trusts, with the balance being retained to create an incentive for the remaining company to continue to actively litigate the matter for the next several years. Given the prospects in the Seventh Circuit, we agree with Tribune and the board that this distribution will provide stockholders significant value.

3

Professionals' Eyes Only

TRB0041619

*"Optionality"*

We understand and wish to be responsive to your concern that the draft Merger Agreement contains certain provisions that reduce the certainty of closing. The specific provision raised by you this week is the condition for completion of the Tribune Broadcasting financing. This was not intended to be a "back door" financing out, and upon a full discussion of the mechanics for constituting and separating Tribune Broadcasting, this dimension of "optionality" will be eliminated.

Similarly, some conditions contained in the Trust draft pertain to the provision of separate company financial statements. Material on this subject was to be provided to us this week, but its arrival was, we understand, delayed due to other pressing matters. Once these draft financial statements, timetable and methodology for producing separate company audited financial statements and other related material have been reviewed and discussed, we are confident this issue can be satisfactorily resolved.

There are certain other provisions in the Merger Agreement that touch on this question of optionality that should be discussed by principals, advisors and counsel. Unfortunately, the time suggested by Tribune counsel for today was not feasible and such a discussion should be arranged early next week.

*Valuation and Price*

We expect that changes relayed today in the Trusts' proposal will significantly improve your view of the true value of the Trusts proposal dated January 17th. In addition to the changes described above, we are authorized to inform you that the Trusts, equity participants and their advisors will continue their due diligence and continue to evaluate in good faith the possibility of further increasing the overall valuation afforded by the Trust's proposal. In that regard, the conference call held this week concerning the Company's internet businesses was informative and constructive and the conference call held on the Company's fourth quarter results was enlightening. Some follow up information remains to be received and we will detail that under separate cover.

The other dimension of the Trusts valuation decision is arranging a team of equity partners. All but one of the firms with whom the Trusts are in discussions entered the process midstream, and as a result, all parties are working industriously to complete their diligence review. Not having had the benefit of the standard pre-confidentiality agreement "teaming discussion", all parties are working to reach common ground on valuation. It is the Trusts' objective to pick those partners who will support the optimum proposal and they expect those discussions to reach conclusion within the next week to 10 days, assuming due diligence is not delayed.

In conclusion, we want to reiterate several aspects that are central to the Trusts proposal.

First, the Trusts are mindful of the need for support by major shareholders, and with your permission, we have held initial discussions with the advisors to the McCormick Foundation and Cantigny Foundation. Those discussions are scheduled to continue mid-next week.

4

Professionals' Eyes Only

TRB0041620

Second, the Trusts will complete their due diligence review and their discussions with prospective equity partners as promptly as possible.

Third, the Trusts believe their proposal represents a fair allocation of value and risk, by providing the shareholders (other than the Trusts) a substantial cash distribution per share and all of the value and upside in the broadcast business (which is currently relatively well regarded on Wall Street relative to newspaper publishing). The Trusts receive less cash per share, and retain the publishing business (which is currently much less favored on Wall Street) with their prospective partners.

We hope this information is helpful to your discussion with the Tribune's Special Committee tomorrow and we will await any further guidance you have for us.

Very truly yours,

*[signature]*
Tom Unterman
Rustic Canyon Partners
Costa Letter 1_26_07.DOC

*[signature]*
Michael Smith
Goldman, Sachs & Co.

Professionals' Eyes Only

TRB0041621