| | |
|---|---|
| **From:** | Grenesko, Don |
| **Sent:** | Monday, February 19, 2007 10:41 PM (GMT) |
| **To:** | Bigelow, Chandler <CBigelow@tribune.com> |
| **Subject:** | FW: Project Tower - Summary of Terms |
| **Attach:** | SCAN0825_000.pdf |

-----Original Message-----
**From:** Marc Hauser [mailto:MHauser@egii.com]
**Sent:** Monday, February 19, 2007 4:23 PM
**To:** Grenesko, Don; Kenney, Crane H; michael_costa@ml.com; christina.mohr@citigroup.com
**Cc:** Sam Zell; Bill Pate; Nils Larsen; Joe Paolucci; Mark Sotir; Chris Hochschild; Jeff Klein; Philip Tinkler
**Subject:** Project Tower - Summary of Terms

Attached please find the Summary of Terms detailing the proposed acquisition of the Tribune Company.

If you would, please confirm your receipt of this email and the attachment, and please feel free to contact me if you have any questions. Thank you.

Marc D. Hauser, Esq.
Equity Group Investments
312-466-3281
mhauser@egii.com

**PRIVILEGED AND CONFIDENTIAL**
**FOR DISCUSSION PURPOSES ONLY**

SUMMARY TERM SHEET

PROJECT TOWER

This Summary Term Sheet summarizes the principal terms by which the Tribune Company (the "Target") will be taken private in an ESOP leveraged buyout transaction (the "Transaction").

The completion of the Transaction will be subject to, among other things, satisfactory completion of financial and legal due diligence by the Acquiror (as defined below) and the ESOP Fiduciary (as defined below), as well as the execution and delivery of final documents acceptable to the Acquiror, the ESOP Fiduciary and the Target ("Definitive Documents"). This Summary Term Sheet does not constitute a binding contract or commitment but rather is solely for the purpose of outlining those terms pursuant to which Definitive Documents may ultimately be entered into.

I. ACQUIROR ACQUISITION:

*(A) General*

A Delaware limited liability company with a natural person as its sole member (the "Acquiror"), initially capitalized with $225 million of cash, will acquire all of Target's outstanding common stock pursuant to a merger of a merger subsidiary of the Acquiror organized as a Delaware corporation (the "Merger Subsidiary") with and into the Target (the "Merger"). The Target will be the surviving entity following consummation of the Merger.

*(B) Agreement and Plan of Merger*

The Target, the Acquiror and the Merger Subsidiary will enter into an agreement and plan of merger (the "Merger Agreement"), which will provide, among other things, that each holder of Target's outstanding common stock (including vested options under Target equity incentive plans but excluding treasury shares) will receive $33.00 per share (less, in the case of vested options, the applicable exercise price of such vested options) pursuant to the Merger (collectively, the "Merger Consideration"). All of Target's preferred stock received by the Target Affiliates (described below) in exchange for Target common stock immediately prior to consummation of the Merger will remain outstanding following consummation of the Merger (see below).

The Merger Agreement will be approved by the board of directors of the Target, the Acquiror and the Merger Subsidiary. The Merger Agreement will be approved by the Acquiror, as the sole stockholder of the Merger Subsidiary, and will be submitted for the requisite approval by the stockholders of the Target.

The Merger Agreement will contain representations, warranties and covenants customary for transactions of the nature contemplated by this Summary Term Sheet. In addition, the Merger Agreement will contain certain conditions to closing, including, without limitation, conditions related to: (i) the accuracy of the representations and warranties, (ii) compliance with covenants, (iii) receipt of all required regulatory and third-party consents and approvals, (iv) no material adverse effect on the business of the Target, (v) availability of the Acquisition Financing (as defined below), (vi) issuance of the Warrant (as defined below), (vii) execution and delivery of the Stockholders Agreement (as defined below), (viii) completion of the Affiliate Exchange (as defined below) and (viii) satisfaction of all conditions precedent to the closing of the ESOP Purchase (as defined below) (other than consummation of the Merger).

*(C) Voting Agreement*

Concurrently with the execution and delivery of the Merger Agreement, the Target, the Acquiror, the Merger Subsidiary and each of the Robert R. McCormick Tribune Foundation, Cantigny Foundation and the Chandler Trusts (and any affiliated stockholders, as appropriate) will enter into a voting agreement pursuant to which the Robert R. McCormick Tribune Foundation, Cantigny Foundation and the Chandler Trusts (and any affiliated stockholders, as appropriate) will agree to, among other things, vote in favor of the Merger Agreement and the Merger and take other actions generally designed to ensure approval of the Merger Agreement and the Merger (the "Voting Agreement").

II. ACQUISITION FINANCING:

*(A) Revolving and Term Loan Facility*

The terms of the revolving credit and term loan facilities will be as set forth in the attached commitment letter (collectively, the "Bank Financing"). **[pending receipt of the final commitment letter, please see the attached summary of financing terms]**

*(B) High Yield Debt Financing*

The terms of the senior notes will be as set forth in the attached commitment letter (the "Debt Financing", and together with the Bank Financing, the "Acquisition Financing"). **[pending receipt of the final commitment letter, please see the attached summary of financing terms]**

III. ESOP PURCHASE:

*(A) General*

Immediately following consummation of the Merger, an employee stock ownership plan ("ESOP") will purchase from the Target a number of shares that will result in the ESOP owning 78.6 % of the Target's then outstanding common stock (calculated without giving effect to the Warrant (as defined below) and the Management Incentive Plan (as defined below)) for aggregate consideration of $825 million (the "ESOP Purchase"). After giving effect to the ESOP Purchase, the Acquiror will hold 21.4% of the Target's outstanding common stock (calculated without giving effect to the Warrant and the Management Incentive Plan).

*(B) Equity Purchase Agreement*

Concurrently with the execution and delivery of the Merger Agreement, the Target and a nationally-recognized institutional trustee with an established reputation as an ESOP fiduciary (the "ESOP Fiduciary"), on behalf of the ESOP, will enter into an equity purchase agreement setting forth the terms of the ESOP Purchase (the "Equity Purchase Agreement"). It is contemplated that the ESOP Fiduciary will have made a finding that the consideration to be paid in connection with the ESOP Purchase does not exceed adequate consideration (within the meaning of ERISA § 3(18)(B)) and received an opinion of its financial advisor that the consideration to be paid by the ESOP in connection with the ESOP Purchase does not exceed adequate consideration and that the Transaction is fair to the ESOP, in each case, prior to executing and delivering the Equity Purchase Agreement.

The Equity Purchase Agreement will contain representations, warranties and covenants consistent with the representations, warranties and covenants set forth in the Merger Agreement. In addition, the Equity Purchase Agreement will contain certain conditions to closing, including, without limitation, conditions related to: (i) the accuracy of the representations and warranties, (ii) compliance with certain covenants, (iii) receipt of all required regulatory and third-party consents and approvals, (iv)

- 2 -

no affirmative finding by the ESOP Fiduciary that the ESOP would be effecting the ESOP Purchase for more than adequate consideration (within the meaning of ERISA § 3(18)(B)), (v) receipt by the ESOP Fiduciary of a "bring-down" opinion of its financial advisor that the consideration to be paid by the ESOP in connection with the ESOP Purchase does not exceed adequate consideration and that the Transaction is fair to the ESOP, (vi) availability of the ESOP Financing (as defined below), (vii) execution and delivery of the Stockholders Agreement (as defined below) and (viii) consummation of the Merger.

## IV. ESOP FINANCING:

*(A) General*

The Target and the ESOP will enter into a loan agreement whereby the Target will make an $825 million loan to the ESOP (collectively, the "ESOP Financing") to finance the ESOP Purchase. The Target will make annual contributions of $100 million to the ESOP, and, conversely, the ESOP will make annual principal and interest payments of $100 million to the Target in respect of the ESOP Financing based on an 8.6% interest rate and a 15-year amortization.

## V. ESOP TRUST:

*(A) General*

The Target will establish a stand-alone, tax-qualified stock bonus plan and trust that will comply with the tax and ERISA rules applicable to leveraged ESOPs. Substantially all non-union employees of the Target and its subsidiaries will participate in the ESOP, subject to such restrictions as are determined from time to time by the Board (as defined below).

*(B) Terms*

Shares held by the ESOP will generally be released to eligible participant accounts based upon contributions to the ESOP by the Target with shares released to individual participant accounts in proportion to eligible compensation of the participant. Participant accounts will vest over a six (6) year period (includes pre-participation service), with twenty percent (20%) vesting per year during years two (2) through six (6). Union employees may participate in the ESOP to the extent provided by applicable collective bargaining agreements. As a general matter, shares held by the ESOP will be voted by an ESOP voting committee (the "ESOP Voting Committee"); provided, however, shares held by the ESOP and allocated to participant accounts will be voted as directed by the participants on such matters for which votes are required to be passed through to participants by Internal Revenue Code Section 409(e). The ESOP Voting Committee will be comprised of the Chairman of the Board (as defined below) and two (2) or more officers of the Target to be selected from time to time by the Board.

## VI. WARRANT:

*(A) General*

Immediately following consummation of the Merger, the Target will issue to the Acquiror, a warrant to purchase from the Target a number of shares equal to 20.0% of the Target's then outstanding common stock (on a fully diluted basis after giving effect to the ESOP Purchase and the Management Incentive Plan) at the same price per share paid by the ESOP in the ESOP Purchase, subject to customary adjustments (the "Warrant").

*(B) Warrant Agreement*

Professionals' Eyes Only                                                                                                                   TRB0045154

The Target and the Acquiror will enter into a warrant agreement in connection with consummation of the Merger (the "Warrant Agreement"). The Warrant will be fully vested and exercisable at the time of grant, and will have a term of twenty (20) years. The Warrant Agreement will provide, among other things, customary adjustments to the number and type of shares covered by the Warrant, including anti-dilution protection.

VII. STOCKHOLDERS' RIGHTS:

*(A) General*

The Target, the Acquiror the ESOP Fiduciary, on behalf of the ESOP, will enter into a stockholders agreement (the "Stockholders Agreement") in connection with the consummation of the Merger and the ESOP Purchase.

*(B) Board Composition*

Immediately following consummation of the Merger and the ESOP Purchase, pursuant to the Stockholders Agreement and the amended and restated certificate of incorporation and bylaws of the Target, the board of directors of the Target (the "Board") will consist of seven (7) directors, comprised as follows: (i) two (2) directors designated by the Acquiror, (ii) two (2) directors designated by the ESOP (it being understood that one of the ESOP directors will be the chief executive officer of the Target) and (iii) three (3) independent directors to be mutually agreed upon by the Acquiror and the ESOP (it being understood that two (2) of the initial independent directors will be selected from members of the current Board). In addition, the Acquiror will have the right to designate the chairman of the Board (the "Chairman of the Board"), such designee to possess all of the duties customarily attendant thereto. Members of the Board will be entitled to receive such fees as are reasonably determined by the Board and will be reimbursed for reasonable travel expenses in connection with Board or committee meetings.

*(C) Pre-emptive Rights*

Pursuant to the Stockholders Agreement, each of the Acquiror and the ESOP will have a right of first refusal to purchase their pro rata portion of future equity or convertible securities offered by the Target (other than certain excluded transactions). For the avoidance of doubt, the shares underlying the Warrant to be issued to the Acquiror will be included for purposes of determining pro rata participation in such issuances. All such preemptive rights will not apply to, and will expire upon, a qualified public offering.

*(D) Other Rights and Obligations*

Pursuant to the Stockholders Agreement, each of the parties thereto will be subject to certain limitations on transfer and other covenants generally designed to preserve the Target's status as an S corporation under the Internal Revenue Code. The Acquiror will have co-sale rights and rights of first refusal on secondary transfers by the ESOP. In addition, the Acquiror and the ESOP will be subject to drag along rights.

*(E) Restrictive Covenants*

The Acquiror will have the right to consent to any transaction or arrangement between the Target and the ESOP (other than as contemplated by the Transaction), and will have other customary restrictive covenant consent rights to be discussed.

*(F) Information*

- 4 -

Professionals' Eyes Only
TRB0045155

For so long as they beneficially own ten percent (10%) of the Target's outstanding capital stock, the Target will provide financial reports to each holder of the Target's capital stock (including the holder of the Warrant), including monthly and year-to-date income, balance sheet and cash flow statements as compared to budget and comparable period in prior year, and will provide a written summary of operations each month. An annual audit of the Target's financial statements will be performed by Target's independent accounting firm. Further, such holders will also be entitled to standard inspection and visitation rights. All such information and inspection rights will expire upon a qualified public offering.

VIII. AFFILIATE EXCHANGE:

(A) *General*

Immediately prior to consummation of the Merger, the Target will exchange (the "Affiliate Exchange") its newly issued participating preferred stock for all of the outstanding Target common stock held by certain affiliates of Target (the "Target Affiliates").

(B) *Exchange Agreement*

In connection with the execution and delivery of the Merger Agreement, the Target and each of the Target Affiliates will enter into an exchange agreement (the "Exchange Agreement"). The Exchange Agreement will provide, among other things, that the board of directors of the Target will approve, and cause to be filed, a certificate of designation related to a newly-designated class of participating preferred stock, which will remain outstanding following consummation of the Merger, and that each of the Target Affiliates will agree to exchange all of their Target common stock for a like number of shares of such participating preferred stock immediately prior to consummation of the Merger. Such common stock will become treasury stock of the Target and be canceled in the Merger without consideration in respect thereof.

IX. MISCELLANEOUS:

(A) *S Corporation Election*

The Target will elect, and the ESOP and Acquiror will consent to the Target's election, to be treated as an S corporation for purposes of the Internal Revenue Code after completion of the contemplated transactions.

(B) *Management Equity Incentive Plan*

The Target will establish a management equity incentive plan (in the form of a stock appreciation right or similar incentive program) providing for the issuance to key members of management of the Target of up to five percent (5%) of the Target's outstanding capital stock (calculated after giving effect to the ESOP Purchase and the Warrant) (the "Management Incentive Plan"). Awards under the Management Incentive Plan will be administered by the Board of Target and will be subject to customary vesting and other terms and conditions, and will also have certain additional limitations designed to ensure preservation of the Target's election to be treated as an S corporation.

\* \* \* \*

Professionals' Eyes Only

TRB0045156

## Bank Financing and Debt Financing

Attached.

Professionals' Eyes Only

TRB0045157

Case 08-13141-BLS   Doc 5441-23   Filed 08/20/10   Page 8 of 8

# Financing Overview
## Indicative Summary Term Sheets – Alternative I

| Borrower/Issuer: | Project Tower | | |
|---|---|---|---|
| **Facility/Issue:** | Revolver | Term Loan B | Senior Notes |
| **Principal Amount:** | $750 mm | $8,500 mm | $2,100 mm |
| **Maturity:** | 6 years | 7 years | 8 / 10 years |
| **Assumed Ratings:** | B2/B to B1/B+ | B2/B to B1/B+ | B3/B- to Caa1/CCC+ |
| **Indicative Rate:** | B2/B[1]: L + 225 bps area<br>B1/B+[1]: L + 200 bps area | B2/B[1]: L + 225 bps area<br>B1/B+[1]: L + 200 bps area | 8.50% - 8.75% area |
| **Security:** | First priority lien on stock of subsidiaries | | Unsecured |
| **Guarantees:** | Senior Secured Guarantees | | Senior Subordinated Guarantees |
| **Optional Redemption:** | Anytime at par | Anytime at par | NC-4/NC-5 |

(1) *Corporate Ratings*

Professionals' Eyes Only