**TRIBUNE COMPANY**
**BOARD OF DIRECTORS MEETING**
**APRIL 1, 2007**

The Tribune Company Board of Directors met at 10:20 p.m. Central time on Sunday, April 1, 2007, by conference telephone, pursuant to notice. The following directors participated in the meeting: Jeffrey Chandler, Dennis J. FitzSimons, Roger Goodan, Enrique Hernandez, Jr., Betsy D. Holden, Robert S. Morrison, William A. Osborn, J. Christopher Reyes, William Stinehart, Jr. and Miles D. White. Dudley S. Taft was unable to participate in the meeting.

The following Company officers and advisors also participated in the meeting: Donald C. Grenesko, Crane H. Kenney, Thomas D. Leach, Tom Cole of Sidley Austin LLP, Steve Rosenblum of Wachtell Lipton Rosen & Katz, Charles Mulaney of Skadden, Arps, Slate, Meagher & Flom LLP, Michael Costa of Merrill Lynch, Christina Mohr of Citigroup, Paul Taubman and Tom Whayne of Morgan Stanley, William W. Merten of McDermott Will & Emery, Elyse Bluth of Duff & Phelps, LLC, Marilyn Marchetti of GreatBanc Trust Company and Charles R. Smith of K&L Gates.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 10:20 p.m. Central time.

**LEVERAGED ESOP TRANSACTION**

Mr. FitzSimons reported that the Compensation & Organization Committee and the Special Committee had just concluded separate telephonic meetings regarding the proposed leveraged ESOP transaction with Samuel Zell and the newly-created Tribune Employee Stock Ownership Plan (the "Proposed Transaction") and that the Special Committee was now in a position to recommend the Proposed Transaction to the full Board of Directors for approval.

Mr. Rosenblum then provided the Board with an overview of the Proposed Transaction structure and transaction documents, drafts of which were previously provided to the Directors for their review. Mr. Rosenblum noted that

**REDACTED**

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Mr. Costa then provided an updated financial overview of the Proposed Transaction, comparing it to the proposed leveraged recapitalization/Broadcasting & Entertainment spin-off transaction that the Board had previously reviewed. He also reviewed the letters submitted by another third-party group expressing that group's interest in participating in an ESOP buyout at a price of $34 per share, the same price as contemplated by the Proposed Transaction. Following discussion of these matters, Mr. Costa delivered Merrill Lynch's fairness opinion supporting the Proposed Transaction.

Mr. Whayne next discussed the comparative financial analysis of the Proposed Transaction and the proposed leveraged recapitalization/spin-off transaction, as well as the letters submitted by the third-party group, that his firm provided to the Special Committee. Mr. Whayne then advised the Board that Morgan Stanley had delivered a fairness opinion supporting the Proposed Transaction to the Special Committee and Mr. Whayne provided the same fairness opinion to the full Board.

Ms. Marchetti then reported on the ESOP Trustee's due diligence review and provided an overview of the ESOP-related components of the Proposed Transaction. Ms. Marchetti reported that (i) the ESOP Trustee had received an opinion from its financial advisor, Duff & Phelps, LLC, that the terms of the Proposed Transaction are fair and reasonable from a financial point of view, (ii) the Proposed Transaction had been approved by the ESOP Trustee's ESOP transaction review committee and (iii) the ESOP Trustee was prepared to proceed with document execution.

Following these presentations, Mr. Osborn, as Chair of the Special Committee, advised the Board that the Special Committee, following review with its independent legal and financial advisors, recommends the full Board approve the Proposed Transaction as presented at this meeting. Mr. Osborn and members of senior management then responded to questions from the Directors. During the course of this discussion, Mr. Stinehart advised the Board that he and Messrs. Chandler and Goodan would abstain from the Board vote on the Proposed Transaction, but that the Chandler Trusts would vote in favor of the merger at the special shareholders' meeting and would enter into a voting agreement with the Company evidencing this understanding.

Following discussion, Mr. Rosenblum reviewed the proposed resolutions that were before the Board. On motion duly made and seconded, the Board (with Messrs. Chandler, Goodan and Stinehart abstaining) then adopted the following recitals and resolutions:

WHEREAS, it is proposed that Tribune Company, a Delaware corporation (the "Company"), enter into certain agreements listed on Exhibit A hereto (collectively, as each may be amended, modified, waived or supplemented from time to time, the "Transaction Agreements"), which contemplate the entry into and the consummation of certain transactions and the rights and obligations of the Company with respect thereto (collectively, the "Transactions");

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415621



**WHEREAS**, it is deemed to be in the best interests of the Company to recognize and reward the contribution by the Company's employees to its successful operation, and to provide an incentive for such employees to increase their productivity, by enabling them to acquire stock ownership interests in the Company and to share in the profits of the Company through a plan that will qualify as an "employee stock ownership plan" within the meaning of the Internal Revenue Code of 1986, as amended, and the Employee Retirement Income Security Act of 1974, as amended, to be known as the Tribune Employee Stock Ownership Plan (the "ESOP");

**WHEREAS**, it is proposed that the Company enter into an Agreement and Plan of Merger (the "Merger Agreement"), by and among the Company, GreatBanc Trust Company, as trustee (in such capacity, the "ESOP Fiduciary") and on behalf of the ESOP, and Tesop Corporation, a Delaware corporation wholly owned by the ESOP ("Merger Sub"), and, for the limited purposes set forth therein, EGI-TRB L.L.C., a Delaware corporation ("Tower Acquisition");

**WHEREAS**, the Merger Agreement provides for, among other things, Merger Sub to be merged with and into the Company (the "Merger"), with the Company surviving the Merger (the "Surviving Corporation"), whereby, among other things and subject to the terms and on the conditions stated in the Merger Agreement, each issued and outstanding share of common stock of the Company, par value $0.01 per share ("Common Stock"), other than shares held by the ESOP or with respect to which dissenters' rights are validly exercised and not withdrawn, will be converted into the right to receive $34.00 in cash per share of Common Stock, subject to increase to the extent set forth in the Merger Agreement;

**WHEREAS**, it is proposed that the Company enter into a Securities Purchase Agreement, by and among the Company, Tower Acquisition, and Mr. Samuel Zell (the "Guarantor") (the "Securities Purchase Agreement"), which provides for, among other things, and subject to the terms and on the conditions stated in the Securities Purchase Agreement, (i) prior to the consummation of the Merger (the "First Closing"), (a) Tower Acquisition to acquire, and the Company to sell, 1,470,588 newly issued shares of Common Stock for $34.00 per share (the "Purchased Shares") for an aggregate purchase price of $50,000,000; and (b) an unsecured subordinated exchangeable note, issued by the Company to Tower Acquisition with an aggregate principal amount of $200,000,000, subject to certain terms and conditions stated therein (the "Exchangeable Note") for an aggregate purchase price of $200,000,000; and (ii) immediately following the consummation of the Merger (the "Second Closing"), in exchange for the consideration set forth therein, (a) an unsecured subordinated promissory note, made by the Company to Tower Acquisition with an aggregate principal amount of $225,000,000, subject to certain terms and conditions stated therein (the "Subordinated Promissory Note"); and (b) a warrant to purchase 43,478,261 shares of common stock of the Surviving Corporation (the "Warrant Agreement");

**WHEREAS**, it is proposed that the Company enter into an ESOP Purchase Agreement, by and among the Company and the ESOP (the "ESOP Purchase Agreement"), which provides for, among other things and subject to the terms and on the conditions stated in the ESOP Purchase Agreement, the ESOP to purchase, and the Company to sell, 8,928,571 newly issued shares of Common Stock (the "ESOP Shares") for an aggregate purchase price of $250,000,000;




**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415622

**WHEREAS**, in connection with the ESOP Purchase Agreement, it is proposed that the Company enter into an ESOP Loan Agreement, by and between the Company and the ESOP (the "ESOP Loan Agreement"), which provides for, among other things, and subject to the terms and on the conditions stated in the ESOP Loan Agreement, including execution of a note (the "ESOP Note") and a pledge agreement (the "ESOP Pledge Agreement") in favor of the Company, the extension of credit by the Company to the ESOP Fiduciary to implement the terms of the ESOP Purchase Agreement and to enable the ESOP to purchase Common Stock pursuant thereto;

**WHEREAS**, in connection with the Merger Agreement, the Securities Purchase Agreement and the ESOP Purchase Agreement, it is proposed that the Company enter into an Investor Rights Agreement by and among the Company, Tower Acquisition and the ESOP (the "Investor Rights Agreement"), which provides for, among other things, the right of Tower Acquisition to designate individuals to the Board of Directors of the Company, as well as other matters in connection with the governance of the Company following the execution of said agreements and the consummation of the transactions contemplated thereby;

**WHEREAS**, in connection with the Merger Agreement, the Securities Purchase Agreement and the ESOP Purchase Agreement, it is proposed that the Company enter into a voting agreement with Chandler Trust No. 1 and Chandler Trust No. 2 (the "Voting Agreement"), whereby Chandler Trust No. 1 and Chandler Trust No. 2 each agrees to vote its respective shares of Common Stock in favor of the Merger, tender their respective shares into the Share Repurchase and take other actions designed to ensure approval of the Merger Agreement and the Merger;

**WHEREAS**, it is proposed that the Company enter into registration rights agreements with Tower Acquisition, the ESOP, Chandler Trust No. 1 and Chandler No. 2 (each agreement, a "Registration Rights Agreement"), whereby Tower Acquisition, the ESOP, Chandler Trust No. 1 and Chandler No. 2 are each provided with certain registration rights with respect to shares of Common Stock;

**WHEREAS**, it is proposed that, under the circumstances contemplated by the Merger Agreement, the Company enter into an Exchange Agreement with Eagle New Media Investments, LLC and Eagle Publishing Investments, LLC (collectively, the "Eagle Entities") (the "Exchange Agreement"), under which the Company will, immediately prior to the consummation of the Merger, issue shares of a new series of the Company's preferred stock, as contemplated by the Merger Agreement, to the Eagle Entities, in exchange for all of the shares of Common Stock and preferred stock currently held by the Eagle Entities;

**WHEREAS**, the Company and Computershare Trust Company, N.A. (formerly known as EquiServe Trust Company. N.A., formerly known as First Chicago Trust Company of New York), as Rights Agent (the "Rights Agent"), have executed and entered into a Rights Agreement, dated as of December 12, 1997 (as amended, the "Rights Agreement");

4

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415623



**WHEREAS**, pursuant to Section 27 of the Rights Agreement, the Company and the Rights Agent may from time to time supplement or amend the Rights Agreement in accordance with the provisions thereof;

**WHEREAS**, it is proposed that the Board of Directors of the Company amend the Rights Agreement substantially in the form of <u>Exhibit B</u> hereto ("<u>Amendment No. 3</u>"), to clarify that the execution and performance of the Transaction Agreements do not result in any of the parties thereto being deemed to be an Acquiring Person (as defined in the Rights Agreement);

**WHEREAS**, it is proposed that the Company enter into a First Step Commitment Letter, by and among the Company, Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A. and/or Bank of America, N.A., Banc of America Bridge LLC and Banc of America Securities LLC (collectively, the "<u>First Step Credit Facilities Agents</u>") (including the Summary of Terms and Conditions appended thereto, the Fee Letter issued in connection therewith and the Engagement Letter issued in connection therewith, collectively, the "<u>First Step Commitment</u>"), which provides for, among other things, and subject to the terms and on the conditions stated in the First Step Commitment, the First Step Credit Facilities Agents to provide senior secured credit facilities for the Company in an aggregate principal amount of approximately $8.028 billion, consisting of a $7.015 billion seven-year term loan, a $263 million seven-year term loan and a $750 million six-year revolving line of credit (collectively, the "<u>First Step Credit Facility</u>"), for the uses and purposes described in the First Step Commitment;

**WHEREAS**, it is proposed that the Company enter into a Second Step Commitment Letter, by and among the Company, Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A. and/or Bank of America, N.A., Banc of America Bridge LLC and Banc of America Securities LLC (collectively, the "<u>Second Step Credit Facilities Agents</u>" and, together with the First Step Credit Facilities Agents, the "<u>Credit Facilities Agents</u>") (including the Summary of Terms and Conditions appended thereto, the Fee Letter issued in connection therewith and the Engagement Letter issued in connection therewith, collectively, the "<u>Second Step Commitment</u>" and, together with the First Step Commitment, the "<u>Commitments</u>"), which provides for, among other things, and subject to the terms and on the conditions stated in the Second Step Commitment, the Second Step Credit Facilities Agents to (i) provide an incremental term loan facility for the Company in an aggregate principal amount of approximately $2.105 billion (the "Incremental Facility" and, together with the First Step Credit Facility, the "Secured Facilities") and (ii) either provide a senior unsecured bridge facility for the Company or provide assistance in connection with the issuance of senior notes and/or senior unsecured notes by the Company, in either case in an aggregate principal amount of approximately $2.1 billion (together, the "Unsecured Facility" and the Unsecured Facility together with the Incremental Facility, the "<u>Second Step Credit Facility</u>" and the Second Step Credit Facility together with the First Step Credit Facility, the "<u>Credit Facilities</u>"), each for the uses and purposes described in the Second Step Commitment;

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415624**



**WHEREAS**, in connection with the Company's entry into the Credit Facilities and the issuance of the Securities (as defined under the heading "Capital Market Debt Issuances" below), it is proposed that the Company enter into interest rate management transactions constituting a rate swap, basis swap, forward rate transaction, interest rate option, cap transaction, floor transaction, collar transaction, forward transaction or any other similar transaction (including any option with respect to any of these transactions) or any combination thereof, linked to one or more interest rates with respect to notional amounts of indebtedness under the Credit Facilities and under the Securities determined from time to time by the officer or officers hereafter authorized to be necessary in connection with the Company's financial operations or performance (the "Interest Rate Hedging Transactions");

**WHEREAS**, it is proposed that as promptly as practicable following the execution of the Merger Agreement, the Company commence a self-tender offer to repurchase shares of Common Stock at $34.00 per share, net to the seller in cash (the "Share Repurchase");

**WHEREAS**, a Special Committee of the Board of Directors (the "Special Committee") has been formed consisting of members of the Board of Directors of the Company (the "Board") other than members of the Company's management and representatives of Chandler Trust No. 1 and Chandler Trust No. 2;

**WHEREAS**, the Special Committee has reviewed the terms of the Transaction Agreements and the Transactions with management and its outside legal and financial advisors, and has recommended that the Board approve the Transaction Agreements and the Transactions;

**WHEREAS**, at this meeting, the Board has received the opinion of its financial advisor, Merrill Lynch & Co., Inc., and the Special Committee's financial advisor, Morgan Stanley & Co. Incorporated, with respect to the Transactions, to the effect that the Transactions are fair, from a financial point of view, to the stockholders of the Company (who are not parties to the Transaction Agreements);

**WHEREAS**, at this meeting, the Board has reviewed the terms of the Transaction Agreements and the Transactions, and on the recommendation of the Special Committee and based on the presentations of the Company's outside legal and financial advisors at this and other meetings, and on such other factors as the Board deemed pertinent, determined that entry into the Transaction Agreements and the consummation of the Transactions is advisable, fair to and in the best interests of the Company and its stockholders; and



**WHEREAS**, the Board has determined to approve the Transaction Agreements and to authorize the proper officers of the Company to take all actions necessary and proper for the execution of the Transaction Agreements and the consummation of the Transactions.



6

**NOW, THEREFORE, BE IT:**

### Establishment of ESOP and Appointment of Trustee

**RESOLVED**, that the Board hereby establishes a plan designed to invest primarily in stock of the Corporation, which will qualify as an "employee stock ownership plan" within the meaning of Section 4975(e)(7) of the Internal Revenue Code of 1986, as amended and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974, as amended;

**FURTHER RESOLVED**, that the form of employee stock ownership plan that has been presented to the Board, to be known as the "Tribune Employee Stock Ownership Plan," be and hereby is approved and adopted, effective as of January 1, 2007;

**FURTHER RESOLVED**, that the form of employee stock ownership trust that has been presented to the Board, to be known as the "Tribune Employee Stock Ownership Trust," be and hereby is approved and adopted, effective as of February 7, 2007;

**FURTHER RESOLVED**, that the appointment of GreatBanc Trust Company to serve as trustee of the Tribune Employee Stock Ownership Trust is hereby ratified;

**FURTHER RESOLVED**, that the Tribune Company Employee Benefits Committee is hereby appointed to serve as the Administrator under Section 1.4 of the Tribune Employee Stock Ownership Plan and under Section 2.2 of the Tribune Employee Stock Ownership Trust;

**FURTHER RESOLVED**, that the proper officers of the Corporation are authorized and directed to execute the agreement memorializing the Tribune Employee Stock Ownership Trust on behalf of the Company, to obtain an execution of such agreement by the ESOP Fiduciary and to execute a certification with respect to the adoption of the ESOP; and

**FURTHER RESOLVED**, that the proper officers of the Company are authorized and directed to work with counsel to submit to the Internal Revenue Service copies of the Plan and other documents ancillary thereto, with a request that the Internal Revenue Service issue a determination letter that the Plan is qualified under Code Section 401(a) and that it constitutes an employee stock ownership plan within the meaning of Code 4975(e)(7).

### Approval of the Transaction Agreements and the Transactions

**FURTHER RESOLVED**, that having reviewed the terms of the Transaction Agreements and the Transactions, and on the recommendation of the Special Committee and based on the presentations of the Company's outside legal and financial advisors at this and other meetings, and on such other factors as the Board deemed pertinent, the Board determines that entry into the Transaction Agreements and the consummation of the Transactions is advisable, fair to and in the best interests of the Company and its stockholders;

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415626



**FURTHER RESOLVED**, that the Board hereby approves the form of temporary certificate representing the ESOP Shares to be executed by the President of the Company and attested to by the Secretary or any Assistant Secretary of the Company;

**FURTHER RESOLVED**, that the Board hereby approves the issuance of the Purchased Shares to Tower Acquisition pursuant to the terms of the Securities Purchase Agreement, the issuance of shares of Common Stock to Tower Acquisition pursuant to the terms of the Exchangeable Note (the "Exchange Shares"), and the issuance of the ESOP Shares to the ESOP pursuant to the terms of the ESOP Purchase Agreement, and such shares will be validly issued, fully paid and nonassessable, when the certificates representing the Purchased Shares, Exchange Shares and ESOP Shares, respectively, have been duly executed, countersigned and registered and duly delivered to Tower Acquisition or the ESOP, as applicable, against payment of the agreed consideration therefor in accordance with the Securities Purchase Agreement, the Exchangeable Note and the ESOP Purchase Agreement, respectively;

**FURTHER RESOLVED**, that the Board hereby approves the execution and performance of the Transaction Agreements and the consummation of the Transactions, and intends that the foregoing approval and adoption render inapplicable to the execution of the Transaction Agreements and the Transactions contemplated thereby, including the Merger, all "fair price," "merger moratorium," "control share acquisition," or other antitakeover or similar statutes or regulations, including, without limitation, Section 203 of the Delaware General Corporation Law, that apply or purport to apply to such agreements or transactions, and hereby takes all action necessary to exempt such agreements and transactions therefrom;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to execute and deliver each of the Transaction Agreements in substantially the form presented to the Board at this meeting, with such changes as such officer executing the same may approve, the execution and delivery of each of the Transaction Agreements by such officer to be deemed conclusive evidence that the Board and the Company have approved and adopted, and do approve and adopt, each of the Transaction Agreements as executed; and

**FURTHER RESOLVED**, that the proper officers of the Company be, and each hereby is, authorized to file, execute, verify, acknowledge and deliver, for and on behalf of the Company, any and all notices, certificates, agreements, amendments, instruments and other documents and to perform or do or cause to be performed or done any and all such acts or things and to pay or cause to be paid all necessary fees and expenses, in each case in the name and on behalf of the Company, as they or any of them may deem necessary or advisable to enable, effectuate or carry out the provisions of each of the Transaction Agreements or the intentions and purposes of the foregoing resolutions in connection with the Transactions, the taking of any such action to be deemed conclusive evidence that the Board and the Company have authorized such action.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415627**

## Credit Facilities and Related Matters

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to (i) execute for, in the name of and on behalf of the Company, and deliver to the Credit Facilities Agents, individually and/or as agents for themselves and the other lenders that may participate in the Credit Facilities, any and all instruments, documents and agreements deemed necessary or desirable by the Credit Facilities Agents in order to evidence the Credit Facilities properly in accordance with the requirements of the Commitments and the Credit Facilities contemplated thereby and any other requirements established by the Credit Facilities Agents or any of the other lenders, including without limitation promissory notes, loan or credit agreements, joinder agreements, indemnity agreements, pledge agreements, security agreements, guarantees, certificates, affidavits, applications, notices, financing statements or any other agreements or instruments evidencing the indebtedness of the Company for the monies so borrowed, with interest thereon, including renewals, extensions and/or amendments of said promissory notes, loan or credit agreements, joinder agreements, indemnity agreements, pledge agreements, security agreements, guarantees, certificates, affidavits, applications, notices, financing statements or any other agreements or instruments (individually and collectively, the "Credit Facilities Documents"), all in the form required by the Credit Facilities Agents and approved by the proper officers of the Company executing same, the execution of same by such officers to constitute conclusive evidence of the approval of same, (ii) enter into the Interest Rate Hedging Transactions on terms as, in the judgment of the officer or officers hereafter authorized, the Company may from time to time hereafter require, (iii) take from time to time any actions deemed necessary or desirable by the proper officers of the Company to establish the Credit Facilities and to evidence the Credit Facilities properly in accordance with the requirements of the Commitments and the Credit Facilities Documents contemplated thereby and any other requirements established by the Credit Facilities Agents and/or any of the other lenders, and to cause the Company to enter into and perform all of its obligations pursuant to the Credit Facilities Documents or otherwise in connection with the Credit Facilities and (iv) execute from time to time renewals, extensions and/or amendments of the Credit Facilities Documents;

**FURTHER RESOLVED**, that the proper officers, be and they are each hereby authorized, directed and empowered, in the name of the Company, to execute and deliver for the benefit of each counterparty to the Interest Rate Hedging Transactions ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments evidencing the obligations of the Company under such Interest Rate Hedging Transactions, and each of said Authorized Officers are authorized to from time to time execute renewals, extensions and/or amendments of said ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to, as security for the indebtedness and other obligations of the Company to the Credit Facilities Agents, individually and/or as agents for

9

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**



themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, whether arising pursuant to this resolution or otherwise, if required by the Commitments, grant, transfer, pledge, mortgage, assign, or otherwise hypothecate to the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, or deed in trust for its and/or their benefit, any assets belonging to the Company, including without limitation the capital stock of each of the direct and indirect subsidiaries of the Company, to secure all indebtedness under the Secured Facilities at any time owing to the Credit Facilities Agents, individually and/or as agents for themselves and the other lenders that may participate in the Secured Facilities and, if required by the Commitments, to execute and deliver to the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, any and all grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements; said instruments, and the promissory notes and other instruments and agreements referred to in the preceding paragraph, may contain such provisions, covenants, recitals and agreements as the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, may require and any of said officers may approve, and the execution thereof by said officers shall be conclusive evidence of such approval;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to, as security for the indebtedness and other obligations of the Company to one or more trustees on behalf of the noteholders holding certain of the Company's outstanding senior notes (the "Existing Notes"), if required by the indentures pursuant to which such Existing Notes were issued, grant, transfer, pledge, mortgage, assign, or otherwise hypothecate to such trustee(s) for the benefit of such noteholders, or deed in trust for its and/or their benefit, any assets belonging to the Company as are pledged to Credit Facilities Agents, individually and/or as agents for themselves and the other lenders that may participate in the Secured Facilities, pursuant to the Secured Facilities, to secure, on an equal and ratable basis, all indebtedness at any time owing to such noteholders under such indentures and, if required by such indentures, to execute and deliver to such trustees on behalf of such holders of Existing Notes, any and all grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements; said instruments, and the promissory notes and other instruments and agreements referred to in the preceding paragraph, may contain such provisions, covenants, recitals and agreements as are contained in the grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements executed and delivered pursuant to the Secured Facilities and any of said officers may approve, and the execution thereof by said officers shall be conclusive evidence of such approval;

**FURTHER RESOLVED**, that the performance by the Company of its obligations under the Commitments, the Credit Facilities and the Interest Rate Hedging Transactions and any

10

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415629



agreements or documents referred to herein or therein be, and it hereby is, ratified, confirmed, approved and adopted in all respects;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each hereby is, authorized to file, execute, verify, acknowledge and deliver, for and on behalf of the Company, any and all notices, certificates, agreements, amendments, instruments and other documents and to perform or do or cause to be performed or done any and all such acts or things and to pay or cause to be paid all necessary fees and expenses, in each case in the name and on behalf of the Company, as they or any of them may deem necessary or advisable to enable, effectuate or carry out the provisions of each of the Commitments or the intentions and purposes of the foregoing resolutions in connection with the Credit Facilities and the Interest Rate Hedging Transactions, the taking of any such action to be deemed conclusive evidence that the Board and the Company have authorized such action; and

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to designate such individual employee(s) of the Company as they deem appropriate to execute and deliver on behalf of the Company certificates, reports and other documents as may be required from time to time in conjunction with the Commitments and the Credit Facilities and the Interest Rate Hedging Transactions, and the actions of such individual(s) shall be binding and enforceable against the Company.

## Capital Markets Debt Issuances



**FURTHER RESOLVED**, that the Board of Directors hereby authorizes and approves the issuance and sale by the Company from time to time, in one or more public or Rule 144A or other privately negotiated offerings, of up to $2.1 billion (in aggregate principal amount, or, if issued at an original issue discount, in aggregate offering price or purchase price, in U.S. dollars or the equivalent in foreign denominated currency or composite currency) (the "Authorized Amount") of unsecured notes, debentures or other debt securities (which may be senior, subordinated, senior subordinated, junior subordinated or any combination of the foregoing) ("Debt Securities") and/or warrants to purchase Debt Securities ("Warrants"). Such Debt Securities and Warrants are collectively referred to herein as the "Securities." The Securities shall be created, issued and sold, subject to the limitations set forth in this resolution, on such terms and conditions as shall be determined by the Special Committee of members of this Board established in the resolution immediately following this resolution;



**FURTHER RESOLVED**, that the officers of the Company are severally authorized and directed to prepare and execute, in the name and on behalf of the Company, a Registration Statement on Form S-3, or other appropriate form under the Securities Act of 1933, as amended (the "Securities Act"), for the registration of the Securities up to the Authorized Amount (the "Registration Statement") and the qualification under the Trust Indenture Act of 1939, as amended, of an indenture providing for the issuance of the Debt Securities. Upon execution of the Registration Statement by a majority of the directors of the Company, the officers of the Company are directed to cause the Registration Statement to be filed with the Securities and

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415630**

Exchange Commission (the "SEC") (which registration may, but shall not be required to, be made pursuant to Rule 415 of the Securities Act), and to execute and file, in the name and on behalf of the Company, all such other certificates, instruments and documents, to make all such payments and do all such other acts and things, including the execution and filing of amendments or post-effective amendments (including any registration statements or other filings under Rule 462 of the Securities Act) to the Registration Statement and amendments or supplements to any prospectus constituting a part thereof, as they may deem necessary or desirable;

**FURTHER RESOLVED**, that each officer and director of the Company who may be required to execute the Registration Statement or any amendment thereto or document in connection therewith (whether for and on behalf of the Company or otherwise) is authorized and empowered to execute a power of attorney appointing Chandler Bigelow, Donald C. Grenesko and Crane H. Kenney, or any of them, his or her true and lawful attorney-in-fact and agent to sign in his or her name, place and stead, in any such capacity, any and all amendments (including post-effective amendments) to the Registration Statement and any and all other documents in connection therewith, and to file the same with the SEC, said attorney-in-fact to have the power and authority to do and perform, in the name and on behalf of such officers and directors who shall have executed such a power of attorney, every act whatsoever that such attorney may deem necessary, appropriate or advisable to be done in connection therewith as fully as such officers and directors might or could do in person;

**FURTHER RESOLVED**, that the senior Vice President, General Counsel and Secretary of the Company, or his appointed designee, is designated as the agent for service who shall be duly authorized to receive communications and notices from the SEC with respect to the Registration Statement and with the powers conferred upon him as agent therefore by the Securities Act and the rules and regulations of the SEC thereunder;

**FURTHER RESOLVED**, there is hereby established a Special Pricing Committee of directors, consisting of Messrs. FitzSimons, Hernandez, Morrison, Osborn and Stinehart, to provide for the issuance of the Securities from time to time. The Special Pricing Committee is hereby expressly authorized (with the full power of delegation to one or more officers of the Company), with the full power of this Board to the extent provided by law, to consider all matters and to take and authorize to be taken any and all action which might otherwise be taken or authorized by this Board in connection with the offering, sale, issuance and registration of the Securities, including, without limitation, to authorize one or more issues of such Securities and in connection with any such issue to determine, approve or appoint (as applicable): (a) the type, title, designation and form of the Securities, provided that no Securities shall be secured by or convertible into any equity securities of the Company; (b) the aggregate principal amount and denominations; (c) the maturity or maturities, including the terms of any extension thereof; (d) the mode of sale and distribution and, as applicable, the particular underwriters, managing underwriters, agents, dealers and purchasers; (e) the form of any indenture, warrant agreement or underwriting, agency, sales, dealer and/or purchase agreement; (f) the price to be received by the Company for the Securities (which may reflect an original issue discount), and any public offering price or privately negotiated sale price, discount or commission paid or allowed in

12

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

connection therewith; (g) the interest rate or rates, if any, or the formula by which such rate or rates may be established and the dates from which such interest shall accrue; (h) any sinking fund or similar redemption requirement and related redemption prices; (i) optional redemption rights, if any, of the Company or the holders of Securities, and related redemption prices and/or limitations; (j) exchange rights, if any, of the Company or holders of Securities and/or limitations; (k) the ranking of such Securities (senior or subordinated) and, if applicable, the subordination provisions of any subordinated Debt Securities; (l) defeasance provisions, if any; (m) the applicable currency or composite currency, and related payment terms; (n) in the case of Warrants, the designation and amount of Debt Securities for which they are exercisable, and the dates, price and other terms of such exercise; (o) additional affirmative or restrictive covenants, if any, to be imposed on the Company with respect to any Securities; (p) any trustees, warrant agents, authentication, calculation, transfer or paying agents and registrars and such other agents as the Special Committee shall deem appropriate (q) any events of default; and (r) such other terms, conditions and provisions, not inconsistent herewith, as the Special Pricing Committee shall deem appropriate;

**FURTHER RESOLVED,** that the proper officers, be and they are each hereby authorized, directed and empowered, in the name of the Company, to execute and deliver for the benefit of each counterparty to the Interest Rate Hedging Transactions ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments evidencing the obligations of the Company under such Interest Rate Hedging Transactions, and each of said Authorized Officers are authorized to from time to time execute renewals, extensions and/or amendments of said ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments;

**FURTHER RESOLVED,** that the proper officers are severally authorized to execute, attest and deliver, in the name and on behalf of the Company, an appropriate indenture or indentures and an appropriate warrant agreement or warrant agreements in substantially the forms as approved by the Special Pricing Committee, including indentures and warrant agreements supplemental thereto in forms as approved by the Special Pricing Committee with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they may deem necessary or advisable to make any indenture or warrant agreement the valid and effective act and agreement of the Company, including, without limitation, any and all acts necessary or appropriate to qualify any indenture under the Trust Indenture Act of 1939, as amended;

**FURTHER RESOLVED,** that the proper officers are severally authorized to execute, in the name and on behalf of the Company, appropriate underwriting agreements, agency agreements, sales agreements, dealer agreements and/or purchase agreements (collectively, the "Sales Agreements"), substantially in the form as approved by the Special Pricing Committee, with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they

13

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415632



may deem necessary or advisable to make any Sales Agreement the valid and effective act and agreement of the Company;



**FURTHER RESOLVED**, that the proper officers are severally authorized to execute the Securities (including any Securities issued in global form), under the corporate seal of the Company attested by its Secretary or Assistant Secretary, and to cause the Securities to be delivered to the trustee or warrant agent therefor, together with an executed authentication and delivery request from the Company, for authentication and delivery by such trustee or warrant agent in accordance with such request. The signatures of the proper officers and the Company seal appearing on the definitive Debt Securities and Warrant Certificates may be engraved, lithographed or facsimiles, and the Company adopts for such purpose the facsimile seal of the Company and the facsimile signatures of Dennis J. FitzSimons, Donald C. Grenesko, Chandler Bigelow and Crane H. Kenny, as Chairman, President and Chief Executive Officer, Senior Vice President/Finance and Administration, Vice President and Treasurer and Senior Vice President, General Counsel and Secretary, respectively, whether or not any of such persons actually holds such office at the time Securities are executed, authenticated or delivered;

**FURTHER RESOLVED**, that the proper officers of the Company are severally authorized to provide for the filing of a registration statement on Form 8-A under the Securities Exchange Act of 1934, as amended, to be filed with the SEC in connection with the listing of one or more issues of Securities on the New York Stock Exchange, to file an application, and amendments thereto as necessary, with the New York Stock Exchange for the listing of such Securities on such Exchange upon official notice of issuance, to execute and deliver, in the name and on behalf of the Company, such other documents and agreements (including, without limitation, indemnity agreements in form acceptable to such Exchange for the purpose of such listings),to appear before the staff of such Exchange with authority to make such changes in any such application, or to make or amend such documents and agreements relative thereto, as may be necessary to conform with the listing requirements of such Exchange and to take such other action as such officers may deem necessary or advisable to list the Securities on such Exchange; and

**FURTHER RESOLVED**, that the proper officers are severally authorized to determine the states and such other jurisdictions (including, without limitation, foreign jurisdictions) in which appropriate action shall be taken to qualify or register for sale (or exempt therefrom) all or such part of the Securities as the proper officers may deem advisable. The proper officers are severally authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in order to comply with the applicable laws of any such states or other jurisdictions, and in connection therewith to execute and file all requisite papers and documents (including, without limitation, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process); and the execution by such officers of any such paper or document or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefor from the Company and the approval and ratification by the Company of the papers and documents so executed and the action so taken, and any resolution of this Board that is required or appropriate in connection



14

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415633**



therewith shall be deemed to have been adopted by this resolution and may be so certified by the Secretary or Assistant Secretary of the Company.

### Appointment of Director



**FURTHER RESOLVED**, that concurrently with the occurrence of the First Closing of the Securities Purchase Agreement, or at such later time as may be mutually agreed, Mr. Samuel Zell be appointed as a director of the Company, to serve for a term expiring at the third annual election following consummation of the Merger or upon his earlier death, removal or resignation.

### Vote of Stockholders

**FURTHER RESOLVED**, that the Board directs that the Merger Agreement be submitted to a vote of the stockholders entitled to vote thereon at a special or annual meeting of such stockholders (the "Stockholder Meeting"), along with the Board's recommendation (unless, subject to and in accordance with the terms of the Merger Agreement, such recommendation is withdrawn or modified prior to such submission) that such stockholders adopt the Merger Agreement and that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, to communicate such recommendation to, and to solicit proxies on behalf of the Board from, such stockholders entitled to vote at the Stockholder Meeting in favor of such adoption;

**FURTHER RESOLVED**, that the secretary of the Company be, and hereby is, authorized and directed, subject to the terms of the Merger Agreement, to fix hereafter the date, time and place of the Stockholder Meeting, and the record date for determining the stockholders entitled to notice of and to vote at the Stockholder Meeting (the "Record Date"); and

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, to mail to the stockholders of record as of the close of business on the Record Date, a notice of the Stockholder Meeting, accompanied by a Proxy Statement (as defined below).

### Self Tender Offer

**FURTHER RESOLVED**, that as promptly as practicable following the execution of the Merger Agreement, the Company shall commence the Share Repurchase, by causing to be commenced a self-tender offer to repurchase up to 126 million shares of Common Stock at $34.00 per share, net to the seller in cash; and

**FURTHER RESOLVED**, that the Board of Directors hereby determines to recommend that the Company's stockholders tender their shares in the tender offer.



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415634**

### Regulatory Matters

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, pursuant to the terms of the Transaction Agreements, in the name and on behalf of the Company, promptly to prepare, sign and file, or cause to be filed, with any applicable federal, state, local or foreign country regulatory or supervisory body or stock markets and self-regulatory organizations including, without limitation, the Antitrust Division of the United States Department of Justice (the "DOJ"), the Federal Trade Commission (the "FTC"), the SEC and the Federal Communications Commission (the "FCC") (collectively, "Governmental Entities") all applications, requests for approval, consents, interpretations, or other determinations, notices and other information and documents, and any modifications or supplements thereto, as may be necessary or advisable in connection with the Transaction Agreements and the Transactions, including the Merger, together with all agreements and other information and documents required or appropriate, and any publications required, in connection therewith; and

**FURTHER RESOLVED**, that, subject to the terms and on the conditions stated in the Merger Agreement, the proper officers of the Company be, and each of them hereby is, authorized and directed, pursuant to the terms of the Merger Agreement, to use reasonable best efforts to cooperate with the other parties thereto in (i) determining whether any filings are required to be made with, or consents, permits, authorizations, waivers or approvals are required to be obtained from, any third parties or Governmental Entities in connection with the execution and delivery of the Merger Agreement and the consummation of the transactions contemplated thereby, (ii) timely making all such filings and timely seeking all such consents, permits, authorizations or approvals, and (iii) using reasonable best efforts to take, or cause to be taken, all other actions and doing, or causing to be done, all other things necessary, proper or advisable to consummate and make effective the transactions contemplated by the Merger Agreement, including taking all such further action as reasonably may be necessary to resolve such objections, if any, as the FCC, the FTC, the DOJ, state antitrust enforcement authorities or competition authorities of any other nation or other jurisdiction or any other person may assert under regulatory law with respect to the transactions contemplated by the Merger Agreement, and to avoid or eliminate each and every impediment under any law that may be asserted by any Governmental Entity with respect to the Merger so as to enable the consummation of the Merger to occur as soon as reasonably possible.

### Securities Law Filings

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, with the assistance of counsel, to prepare, sign and file, or cause to be filed, with the SEC any and all statements, reports or other information concerning the Transactions that may be deemed advisable or may be required under the Securities Act of 1933 or the Exchange Act of 1934, each as amended, and the rules and regulations of the SEC promulgated thereunder, including without limitation (i) a proxy statement for delivery to the stockholders of the Company (as it may be amended or supplemented, the "Proxy Statement"), together with any other documents required or

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415635

appropriate in connection therewith; (ii) a tender offer statement on Schedule TO (as it may be amended or supplemented, the "Schedule TO"); (iii) a transaction statement on Schedule 13E-3 in connection with each of the Proxy Statement and the Schedule TO; and (iv) all other reports, statements, documents and information required to be filed with the SEC by the Company in connection with the Transaction Agreements and the Transactions.

## Section 16(b) Exemption

**FURTHER RESOLVED**, that the Board determines to, and hereby does, for purposes of exempting each sale or exchange of Common Stock owned by the individuals named in Exhibit C hereto that occurs pursuant to the terms of the Merger Agreement or in connection with the Share Repurchase, and each (i) exchange of options to purchase Common Stock, (ii) sale or exchange of restricted stock and restricted stock units and (iii) sale or exchange of other equity and equity-based awards, in each case by the individuals listed on such exhibit that occurs pursuant to the terms of the Merger Agreement or in connection with the Share Repurchase, approve each such sale, exchange or disposition as an exempt disposition under Rule 16b-3 promulgated under the Securities Exchange Act of 1934.

## Equity Compensation Matters

**FURTHER RESOLVED**, that, in the event that the Company divests a business unit during the period beginning on the date on which the Company announces a transaction that would constitute a Change in Control (within the meaning of the Company's Incentive Compensation Plan) and the date on which such Change in Control is consummated, the Company shall cause any Company restricted stock units and stock options held by any employee of such divested business unit to be fully vested;

**FURTHER RESOLVED**, that, in the event that the Company eliminates an employee's position during the period beginning on the date on which the Company announces a transaction that would constitute a Change in Control (within the meaning of the Company's Incentive Compensation Plan) and the date on which such Change in Control is consummated, the Company shall cause any Company restricted stock units and stock options held by such employee to be fully vested effective as of the consummation of such Change in Control;

**FURTHER RESOLVED**, that, in the event of a Change in Control (within the meaning of the Company's Incentive Compensation Plan), each participant in the Tribune Company 401(k) Savings and Profit Sharing Plan whose employment with the Company is terminated by the Company other than for cause or is constructively terminated within one year following such Change in Control shall be fully vested in all employer contributions held on such participant's behalf under such plan; and

**FURTHER RESOLVED**, that the Tribune Company Employee Stock Purchase Plan shall be terminated as soon as reasonably practicable and, the Tribune Company Employee Benefits Committee or the proper officers of the Company be, and each of them hereby is, authorized and

17

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415636**

directed, in the name of and on behalf of the Company, to take or cause to be taken any and all action, and to execute and deliver or cause to be executed and delivered any and all agreements, amendments, certificates, reports, applications, notices, letters or other documents as, in the opinion of such committee or any such officer, may be necessary, appropriate or desirable to terminate the Tribune Company Employee Stock Purchase Plan as soon as reasonably practicable.

## Miscellaneous

**FURTHER RESOLVED**, that the Board hereby adopts, as if expressly set forth herein, the form of any resolution required by any governmental authority to be filed in connection with any applications, consents to service, issuer's covenants or other documents, applications, reports or filings relating to the foregoing resolutions if (i) in the opinion of the officer of the Company executing the same, the adoption of such resolutions is necessary or desirable and (ii) the Secretary or an Assistant Secretary of the Company evidences such adoption by inserting in the minutes of this meeting copies of such resolutions, which will thereupon be deemed to be adopted by the Board with the same force and effect as if presented at this meeting;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all action which they may deem necessary or appropriate to communicate the position of the Board, as set forth in these resolutions, to the Company's stockholders, including, without limitation, the dissemination of such position by means of press releases, letters to stockholders of the Company and filings with the SEC, the taking of any such action conclusively to evidence the due authorization and approval thereof by the Board;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized, empowered and directed, in the name of and on behalf of the Company, to execute and deliver or cause to be executed and delivered any and all agreements, amendments, certificates, reports, applications, notices, letters or other documents and to do or cause to be done any and all such other acts and things as, in the opinion of any such officer, may be necessary, appropriate or desirable in order to enable the Company fully and promptly to carry out the purposes and intent of the foregoing resolutions, and any such action taken or any agreement, amendment, certificate, report, application, notice, letter or other document executed and delivered by them or any of them in connection with any such action shall be conclusive evidence of their or his authority to take, execute and deliver the same; and

**FURTHER RESOLVED**, that all actions heretofore taken by any of the directors, officers, employees, representatives or agents of the Company or any of its affiliates in connection with the Transaction Agreements and the Transactions or otherwise referred to in the foregoing resolutions be, and each of the same hereby is, ratified, confirmed and approved in all respects as the act and deed of the Company.

18

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415637

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 11:15 p.m.

Secretary

19

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415638

## EXHIBIT A

Merger Agreement
Securities Purchase Agreement
Exchangeable Note
Subordinated Promissory Note
Warrant Agreement
ESOP Purchase Agreement
ESOP Loan Agreement
ESOP Note
ESOP Pledge Agreement
Investor Rights Agreement
Exchange Agreement
Voting Agreement – Chandler Trusts
Registration Rights Agreement of Chandler Trusts
Registration Rights Agreement of EGI & ESOP
Amendment No. 3 to Rights Plan
First Step Commitment
Second Step Commitment

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## EXHIBIT B

## AMENDMENT NO. 3 TO RIGHTS AGREEMENT

This Amendment No. 3 to Rights Agreement (this "Amendment No. 3"), dated as of April 1, 2007, by and between Tribune Company, a Delaware corporation (the "Company"), and Computershare Trust Company, N.A. (formerly known as EquiServe Trust Company, N.A., formerly known as First Chicago Trust Company of New York), as Rights Agent (the "Rights Agent"), amends the Rights Agreement, dated as of December 12, 1997, as previously amended by Amendment No. 1 thereto, dated as of June 12, 2000, and Amendment No. 2 thereto, dated as of September 21, 2006 (the "Rights Agreement"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such term in the Rights Agreement.

### RECITALS

WHEREAS, the Company and the Rights Agent have executed and entered into the Rights Agreement;

WHEREAS, pursuant to Section 27 of the Rights Agreement, the Company and the Rights Agent may from time to time supplement or amend the Rights Agreement in accordance with the provisions of Section 27 thereof;

WHEREAS, the Company proposes to enter into: (1) an Agreement and Plan of Merger with GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP, and, for the limited purposes set forth therein, EGI-TRB, L.L.C., a Delaware limited liability company ("Tower Acquisition"); (2) a Securities Purchase Agreement with Tower Acquisition and Mr. Samuel Zell, as guarantor; (3) an ESOP Purchase Agreement with the ESOP; (4) an Investor Rights Agreement with Tower Acquisition and the ESOP; (5) a voting agreement with Chandler Trust No. 1 and Chandler Trust No. 2; (6) registration rights agreements with (a) Tower Acquisition and the ESOP, and (b) Chandler Trust No. 1 and Chandler Trust No. 2; and (7) other agreements contemplated by the foregoing or necessary to implement the transactions contemplated by the foregoing (such agreements in clauses (1) through (7), the "Transaction Agreements"); and

WHEREAS, the Board of Directors of the Company has determined that it is in the best interest of the Company and its stockholders to amend the Rights Agreement as set forth below to provide that the execution, delivery and performance of the Transaction Agreements and the transactions contemplated thereby will not result in any Person becoming an Acquiring Person;

NOW, THEREFORE, the Rights Agreement is hereby amended as follows:

1.    The definition of Acquiring Person in Section 1(a) of the Rights Agreement, as previously amended, is hereby further modified and amended by adding the following sentence at

**TRB0415640**

the end of the last sentence thereof:

> Notwithstanding anything in this Agreement to the contrary, no Person shall be deemed to be an Acquiring Person solely by virtue of the execution, delivery or performance of any of the Transaction Agreements or the transactions contemplated thereby.

2.      A new Section 1(ee) is hereby added to Section 1 of the Rights Agreement, which shall read in its entirety as follows:

> "Transaction Agreements" shall mean the following agreements dated as of April 1, 2007: (1) an Agreement and Plan of Merger by and among the Company, GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP, and, for the limited purposes set forth therein, EGI-TRB, L.L.C., a Delaware limited liability company ("Tower Acquisition"); (2) the Securities Purchase Agreement by and among the Company, Tower Acquisition and Mr. Samuel Zell, as guarantor; (3) the ESOP Purchase Agreement by and between the Company and the ESOP; (4) the Investor Rights Agreement by and among the Company, Tower Acquisition and the ESOP; (5) the Voting Agreement by and among the Company, Chandler Trust No. 1 and Chandler Trust No. 2; (6) the Registration Rights Agreements by and among the Company and (a) Tower Acquisition and the ESOP, and (b) Chandler Trust No. 1 and Chandler Trust No. 2; and (7) other agreements contemplated by the foregoing agreements or necessary to implement the transactions contemplated by the foregoing agreements.

3.      This amendment may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

4.      This Amendment shall be deemed to be a contract made under the laws of the State of Delaware and for all purposes shall be governed by and construed in accordance with the laws of such State applicable to contracts to be made and performed entirely within such State.

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415641

IN WITNESS WHEREOF, this Amendment has been duly executed by the Company and the Rights Agent as of the day and year first written above.

TRIBUNE COMPANY


By:_____
Name:
Title:


COMPUTERSHARE TRUST COMPANY, N.A.


By:_____
Name:
Title:

3

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415642

## EXHIBIT C

For a description of the terms of equity awards (including, without limitation, options) referenced below, reference is made to the Company's equity incentive plans and to the Merger Agreement.

| Name of Officer or Director | Number of Shares of Company Common Stock Beneficially Owned | Number of Shares of Company Common Stock Underlying Equity Awards (Including Restricted Stock Units and Stock Options) |
|---|---|---|
| Jeffrey Chandler | 11,187 | 19,200 |
| Dennis J. FitzSimons | 498,299 | 1,936,556 |
| Roger Goodan | 17,246 | 45,200 |
| Donald C. Grenesko | 242,188 | 759,040 |
| Enrique Hernandez, Jr. | 11,330 | 15,200 |
| Betsy D. Holden | 8,661 | 7,200 |
| Crane H. Kenney | 51,669 | 578,397 |
| Timothy J. Landon | 45,982 | 431,015 |
| Thomas D. Leach | 50,741 | 315,742 |
| Luis Lewin | 22,710 | 458,978 |
| R. Mark Mallory | 108,234 | 248,679 |
| Robert S. Morrison | 13,148 | 11,200 |
| Ruthellyn M. Musil | 65,391 | 398,046 |
| William A. Osborn | 11,959 | 11,200 |
| John E. Reardon | 63,782 | 416,821 |
| J. Christopher Reyes | 14,969 | 0 |
| Scott C. Smith | 225,273 | 707,394 |
| William Stinehart, Jr. | 12,650 | 31,700 |
| Dudley S. Taft | 94,660 | 31,200 |
| Miles D. White | 6,419 | 0 |

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**