DUFF & PHELPS, LLC • 311 SOUTH WACKER DRIVE, SUITE 4200 • CHICAGO, IL 60606 • TEL 312-697-4600 • FAX 312-697-0112

# DUFF&PHELPS

February 13, 2007

Board of Directors
Tribune Company
435 North Michigan Avenue
Chicago, IL 60611

Attention: Mr. Crane H. Kenney
Senior Vice President, General Counsel, and Secretary

Dear Directors:

This letter sets forth the terms of an agreement whereby Duff & Phelps, LLC ("Duff & Phelps") will serve as independent financial advisor to the board of directors of Tribune Company (the "Company"), and provide certain opinions (collectively, an "Opinion") as to the solvency and capitalization of (i) the Company after giving effect to the Special Distribution (as described below) and (ii) the Company and the Company's broadcasting unit ("SpinCo") after giving effect to the Spin-off (as described below). Please review this letter agreement, including the attached Terms of Retention (collectively, the "Agreement") as it will govern our engagement (the "Engagement").

The special distribution (the "Special Distribution") is contemplated to be a distribution to Company shareholders in the amount of approximately $5.0 billion, in the form of a stock buyback via self-tender or a special dividend. The Special Distribution is expected to be funded with proceeds from new senior bank debt and a new high yield bond issuance and is expected to be consummated in the first quarter of 2007. As a potential alternative to the Special Distribution, Duff & Phelps will review and opine on the Company's solvency based on a leveraged ESOP buyout transaction ("ESOP"). To the extent the Company pursues the ESOP instead of the Special Distribution, the references to "Special Distribution" in this Agreement shall be deemed to refer to "ESOP" in all places where the context so requires without further act of the parties.

The spin-off (the "Spin-off") is expected to involve a series of transactions whereby (i) SpinCo will (x) borrow an amount equal to its tax basis and make a one-time tax free distribution of that amount (the "Basis Amount") to the Company, which in turn will pay outstanding debt and (y) transfer debt securities to the Company in a face amount equal to the difference between approximately $2.5 billion and the Basis Amount, which will be used by the Company to repay debt; and (ii) contemporaneous with the Company's debt repayment, the Company will spin off SpinCo to Company shareholders via a tax-free distribution of all of the stock of SpinCo. The Spin-off is expected to be consummated in the third quarter of 2007.

www.duffandphelps.com

Bluth
12/17/09

Confidential

D&P_TR108564

Board of Directors
Tribune Company
February 13, 2007
Page 2

Specifically, we will determine whether, as of the date of the Special Distribution and immediately following the consummation of the Special Distribution:

1) The present fair saleable value of the Company's assets exceeds (a) the value of its liabilities, including all contingent and other liabilities, and (b) the amount that will be required to pay its probable liabilities, including all contingent and other liabilities, on its existing debts as such debts become absolute and mature;

2) The sum of the Company's assets at fair valuation is greater than all its debts at fair valuation;

3) The Company will not have an unreasonably small amount of capital for the businesses in which it is engaged or in which management has indicated it intends to engage;

4) The Company will be able to pay its liabilities, including all contingent and other liabilities, as they become absolute and mature; and

5) The present fair saleable value of the Company's assets exceeds the value of its liabilities, including all contingent and other liabilities, by an amount that is greater than the capital of the Company (as determined pursuant to Section 154 of the Delaware General Corporation Law).

In addition, we will determine whether, as of the date of the Spin-off and immediately following the consummation of the Spin-off:

1) The present fair saleable value of each of the Company's and SpinCo's assets exceeds (a) the value of its respective liabilities, including all contingent and other liabilities, and (b) the amount that will be required to pay its probable liabilities, including all contingent and other liabilities, on its respective existing debts as such debts become absolute and mature;

2) The sum of each of the Company's and SpinCo's assets at fair valuation is greater than all its respective debts at fair valuation;

3) Each of the Company and SpinCo will not have an unreasonably small amount of capital for the businesses in which it is engaged or in which management has indicated it intends to engage;

4) Each of the Company and SpinCo will be able to pay its respective liabilities, including all contingent and other liabilities, as they become absolute and mature; and

5) The present fair saleable value of each of the Company's and SpinCo's assets exceeds the value of its respective liabilities, including all contingent and other liabilities, by an

Confidential

D&P_TR108565

Board of Directors
Tribune Company
February 13, 2007
Page 3

amount that is greater than the respective capital of each of the Company and SpinCo (as determined pursuant to Section 154 of the Delaware General Corporation Law).

For the purposes of our Engagement and Opinions, the following terms and phrases will be defined as follows:

"Present fair saleable value" means the aggregate amount of net consideration (as of the date of our Opinions and giving effect to reasonable and customary costs of sale or taxes, where the probable amount of any such taxes is identified to us by the Company) that could be expected to be realized from a willing purchaser by a seller, in an arm's length transaction under present conditions in a current market for the sale of assets of a comparable business enterprise, where both parties are aware of all relevant facts and neither party is under any compulsion to act, where such seller is interested in disposing of the entire operation as a going concern, presuming the business will be continued, except as disclosed to us by the Company, in its present form and character, and with reasonable promptness, not to exceed one year.

"Fair valuation" means the aggregate amount for which assets of an entity would change hands between an interested purchaser and a seller, in an arm's length transaction, where both parties are aware of all relevant facts and neither party is under any compulsion to act.

"Liabilities, including all contingent and other liabilities" have the meanings that are generally determined in accordance with applicable federal laws governing determinations of the insolvency of debtors. "Contingent and other liabilities" means the contingent and other liabilities as either publicly disclosed, set forth in written materials delivered to Duff & Phelps by the Company or identified to us by officers or representatives of the Company.

"Not have an unreasonably small amount of capital for the businesses in which it is engaged or in which management has indicated it intends to engage" and "able to pay its liabilities, including all contingent and other liabilities, as they become absolute and mature." These phrases mean that the Company will be able to generate enough cash from operations, asset dispositions, refinancing, or a combination thereof, to meet its obligations (including all contingent and other liabilities) as they become due.

Duff & Phelps makes no representation as to the legal sufficiency for any purpose of the above definitions. Such definitions are used solely for setting forth the scope of the Opinions.

**Nature and Scope of Engagement.**

In rendering our Opinions, Duff & Phelps will conduct such reviews, analyses, and inquiries and will consider such information and data deemed necessary and appropriate based on the facts and circumstances of the Engagement. Our qualitative analysis will be based on discussions with senior management of the Company and SpinCo concerning the history, current operations and future outlook of the Company and SpinCo. Our financial analysis will be based on available historical financial statements for the Company and SpinCo, as well as internal operating documents, including financial projections for the Company and SpinCo. We will review

Confidential

D&P_TR108566

Board of Directors
Tribune Company
February 13, 2007
Page 4

transaction documents relating to the Special Distribution and the Spin-off, including the agreements with prospective lenders. We will also review industry and comparative public company financial data, to the extent available, obtained from published or other available sources. We will use generally accepted valuation and analytical techniques as the basis for our analysis and Opinions.

Duff & Phelps agrees to provide an indication of our preliminary analysis regarding the Opinions on or before February 20, 2007. Prior to issuing our Opinions, our findings, analysis, and conclusions will be reviewed by our Fairness and Solvency Opinion Review Committee. The final Opinions will be set out in written opinion letters, which will be in a customary form and will set forth the scope of our assignment, the principal materials reviewed, and the assumptions and qualifications upon which we have relied. The Opinions will include, to the extent we believe such is the case, a statement that we have no reason to believe that such assumptions used were other than reasonable.

**Fees.**

Our professional fees for the Engagement will be $1,250,000, payable as follows: $500,000 upon execution of this Agreement, $250,000 upon providing the indication of our preliminary analysis, $250,000 upon informing the Company that we are prepared to render the written Opinion regarding the Special Distribution, and the remainder of the fees upon informing the Company that we are prepared to render the written Opinion regarding the Spin-off. No portion of these fees is contingent upon the consummation of a transaction or the conclusion reached in the Opinions. In addition to professional fees, the Company agrees to promptly reimburse Duff & Phelps, from time to time upon request, for its reasonable out-of-pocket expenses (including travel, meals, lodging, telephone, document reproduction, telecopying, computer charges, and database access fees) and, to the extent agreed in writing in advance by the Company, for reasonable fees and expenses of counsel, consultants, and advisers retained by Duff & Phelps, in each case incurred in connection with the Engagement. In the event that the terms of the Engagement are modified after substantial completion of the analysis by Duff & Phelps in preparation of its Opinions and such modification requires substantial additional analysis or other services by Duff & Phelps, the Company agrees to negotiate in good faith the terms of additional compensation to Duff & Phelps.

Confidential

D&P_TR108567

Board of Directors
Tribune Company
February 13, 2007
Page 5

**Term.**

Either of us may terminate the Engagement at any time by written notice. After termination, we will no longer be obligated to render any additional services, and you will only be liable for paying us for our professional time and reimbursing us for expenses incurred through the date of termination. The other terms of this Agreement will remain in effect, including the indemnification provisions set forth in the Terms of Retention.

In conclusion, we look forward to working with you on this Engagement. If this Agreement, including the Terms of Retention, is acceptable to you, please arrange to have the Agreement fully executed and returned to us along with the retainer.

**DUFF & PHELPS, LLC**

By: _____
Robert A. Bartell, CFA
Managing Director

**AGREED TO AND ACCEPTED BY:**

Tribune Company

By: _____
Crane H. Kenney

Its: Senior Vice President/General Counsel

Confidential

D&P_TR108568

## DUFF & PHELPS, LLC
### Terms of Retention

The following terms set out the agreements under which Duff & Phelps is being engaged by the Board of Directors of the Company (the "Board of Directors"). Capitalized terms used in these Terms of Retention but not defined herein have the meanings ascribed thereto in the letter agreement to which these Terms of Retention are attached.

**Information; Certain Limitations.** The Company warrants and represents that all information provided or otherwise made available to Duff & Phelps by or on behalf of the Company will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections provided by it to Duff & Phelps will have been prepared in good faith and will be based upon assumptions that, in light of the circumstances under which they are made, are reasonable. In rendering its services hereunder, Duff & Phelps will not independently verify the accuracy or completeness of any provided information, data, advice, opinions or representations, whether obtained from public or private sources. Duff & Phelps also will not independently evaluate, appraise or physically inspect any of the Company's specific assets or liabilities (contingent or otherwise). Duff & Phelps further will not independently investigate any legal matters involving the Company. The Opinions will not address any related transaction, will not address the prices at which the Company common stock will trade following the consummation of the Special Distribution or the Spin-off and will not constitute a recommendation as to how any stockholder should vote or act with respect to any matters relating to the Special Distribution, the Spin-off or any related transactions. Duff & Phelps assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company or any other information provided or otherwise made available to Duff & Phelps regarding the Company, the Special Distribution or the Spin-off. The Opinions will be based upon Duff & Phelps's assessment of general economic, financial, and market conditions as they exist and can be evaluated by Duff & Phelps as of the date of the Opinions. An Opinion is inherently subjective; reasonable professionals or individuals reviewing the same information could reach different conclusions. The ultimate decision must be made by the Board of Directors and will need to take into account factors unrelated to the specific financial analysis provided by Duff & Phelps. The Opinions will specifically set forth these and other reasonable limitations and will state that, to the extent that any of these assumptions or any of the facts on which the Opinions are based proves to be untrue in any material respect, the Opinions could not and should not be relied upon. As a financial advisor to the Board of Directors and the officers of the Company, Duff & Phelps will provide the services described herein but will not act as agent or broker to any person. Duff & Phelps will not solicit the purchase or sale of securities.

**Coordination; Legal Matters.** For Duff & Phelps to be effective, it will need the cooperation of the Company and its other advisers. The Company acknowledges that it will need to retain counsel for review of legal matters. Duff & Phelps may rely upon the fact that the Company has been advised by counsel as to all legal matters. Duff & Phelps will not make, and assumes no responsibility to make, any representation, or render any opinion, as to any legal matter.

**Confidentiality.** Duff & Phelps will use any non-public or proprietary information provided by the Company ("Confidential Information") solely in the course of this Engagement and in a manner which Duff & Phelps believes in good faith is consistent with the Company's interests or is required by law. To allow Duff & Phelps to comply with this obligation, all Confidential Information whose sensitivity and confidentiality is not obvious must be marked "confidential." The Company agrees that Duff & Phelps has the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, but only upon the consummation of the Special Distribution or the Spin-off. Prior to the publication of any such advertisement, Duff & Phelps shall obtain the Company's prior written approval of such advertisement, such approval not to be unreasonably withheld.

**Use of Advice.** It is understood that the advice rendered by Duff & Phelps is for the information of the Board of Directors and officers of the Company in connection with their evaluation of the Special Distribution and the Spin-off and any related financing and may not be used for any other purpose without our prior written consent, except that our Opinions may be included in their entirety in any filing with the Securities and Exchange Commission made by the Company in connection with the Special Distribution or the Spin-off. In giving such consent, Duff & Phelps does not hereby admit that it comes within the category of person whose consent is required under Section 7 or Section 11 of the Securities Act of 1933, as amended, or the rules and regulations adopted by the Securities and Exchange Commission thereunder, nor does Duff & Phelps admit that it is an expert with respect to any part of such filing within the meaning of the term "experts" as used in the Securities Act of 1933, as

Terms of Retention
Tribune Company
Page 2

amended or the rules and regulations of the Securities and Exchange Commission thereunder. The Company may summarize or otherwise reference the existence of the Opinions in such documents provided that any such summary or reference language shall be subject to prior approval of Duff & Phelps (not to be unreasonably withheld). Except as set forth above, the Company agrees to obtain Duff & Phelps's written consent (not to be unreasonably withheld) before disclosing any of Duff & Phelps's advice or analysis to anyone, or otherwise making reference to its role, whether orally or in writing. When Duff & Phelps gives such consent, it is subject to the prior approval of Duff & Phelps of such disclosure. Upon receipt of a release agreement holding D&P harmless and in form reasonably satisfactory to Duff & Phelps, the Company may disclose the Opinion to fiduciaries and ESOP trustees.

**Potential Conflicts.** We have undertaken a limited review of our records to determine Duff & Phelps' professional relationship with the Company, and other parties of interest, and have identified no current relationships that would preclude us from accepting this engagement. However, Duff & Phelps may represent (in unrelated matters) parties interested in the Company, the Special Distribution or the Spin-off, or persons who are the Company's competitors or creditors, or whose interests otherwise conflict with those of the Company. In addition, Duff & Phelps may acquire information from them of interest to the Company. Duff & Phelps will not have any obligation to disclose any unrelated representation or any information it learns in the course of any unrelated representation to the Company, or to use that information in connection with the Engagement.

**Corporate Obligation.** The obligations of Duff & Phelps are solely corporate obligations. None of its directors, officers, employees, agents, shareholders, or controlling persons will individually be subject to any liability to the Company or anyone else, and the Company will not assert any such claim.

**Disputes.** We do not anticipate any disputes between us, but it is always prudent to provide a rational process to resolve any that may occur. The parties hereto agree that any legal action or proceeding with respect to this agreement may be brought in the courts of the State of Illinois or of any United States District Court located in the State of Illinois, and each consents to the non-exclusive jurisdiction of those courts. The parties hereto also irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this agreement. Each party hereto waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by the law of such state. Each of Duff & Phelps and the Company waives its constitutional right to a jury trial. Solely for purposes of enforcing the indemnification provisions herein, the Company hereby consents to personal jurisdiction, service of process, and venue in any court in which any Claim which is subject to the terms provided for herein is brought against Duff & Phelps or any other Indemnified Person. Each party hereto agrees that any legal proceeding arising from or in connection with this engagement (or any variation or addition thereto) must be commenced within one year from the date when such party becomes aware of or ought reasonably to have become aware of the facts which give rise to the alleged liability and in any event not later than two years after any alleged breach of contract or act of gross negligence or commission of any other tort.

**Indemnification and Contribution.** Since Duff & Phelps will be acting as the Company's representative in this Engagement and will be relying on information provided by the Company, the Company agrees to promptly, upon demand, indemnify and hold harmless Duff & Phelps and its affiliates, and its and their respective directors, officers, attorneys and other agents, stockholders, employees, and controlling persons (each an "Indemnified Person"), from and against any losses, claims, damages, judgments, assessments, and liabilities (joint or several) to the Company or third parties, (collectively, "Losses"), and will reimburse each Indemnified Person for all costs (including, without limitation, expenses, fees and disbursement, and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and fees and expenses (including, without limitation, reasonable fees and disbursements of counsel and accountants and the costs of any investigation and preparation) as and when they are incurred (collectively, "Expenses"), resulting directly or indirectly from any threatened or pending investigation, lawsuit, action, claim, proceeding, or dispute, including securityholder actions (whether or not Duff & Phelps or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to Duff & Phelps or any other person by the Company or used by the Company in connection with the transaction contemplated by the engagement letter or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not

Terms of Retention
Tribune Company
Page 3

misleading, or (2) are otherwise related to or arise out of Duff & Phelps's engagement, role, activities, or the performance or non-performance of professional services on the Company's behalf. The Company will not be responsible, however, for any Losses or Expenses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily from the fraud, willful misconduct or gross negligence of the Indemnified Person; but pending any such judicial determination, the indemnification and reimbursement obligations of the Company hereunder shall continue to apply. Upon any such determination any Losses or Expenses previously funded by the Company shall be refunded by such Indemnified Person. However, the Company will not be responsible for any Losses which (i) result from any settlement not approved by the Company in its reasonable judgment or (ii) are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of an Indemnified Person. The Company also agrees that no Indemnified Person will be liable to the Company for or in connection with this engagement, except for Losses incurred by the Company which are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of that Indemnified Person.

Duff & Phelps will notify the Company if it learns that any Claim has been instituted based, directly or indirectly, on the transactions which were the subject of Duff & Phelps's engagement under the Agreement, although failure to do so will not relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit substantial rights and defenses. Should any Claim be formally instituted against Duff & Phelps or any other Indemnified Person based, directly or indirectly, on Duff & Phelps's engagement under the Agreement, the Company will be entitled to participate therein with counsel chosen by it and, to the extent that it may wish or as requested by Duff & Phelps, to assume the defense of the Claim, with counsel reasonably satisfactory to Duff & Phelps, so long as the Company continues to pay all costs and expenses of the defense and preparation for such Claim. Even if the Company assumes the defense of a Claim, each Indemnified Person will have the right to participate in such Claim and to retain its own counsel. The Company will be required to pay all reasonable fees and expenses of such counsel as they are incurred only if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are in conflict with or are materially different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Claim on behalf of such Indemnified Person), (2) the Company shall not have assumed the defense of the Claim and employed counsel reasonably satisfactory to such Indemnified Person in a timely matter, or (3) the Company shall have authorized the employment of such counsel in connection with the defense of the Claim.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless (other than as a result of the fraud, willful misconduct or gross negligence of any such Indemnified Person), then the Company and Duff & Phelps will contribute to the Losses and Expenses for which such indemnification is held unavailable or insufficient in such proportion as is appropriate to reflect the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations, subject to the limitation that the contribution by Duff & Phelps and the other Indemnified Persons will not exceed the amount of fees actually received by Duff & Phelps pursuant to Duff & Phelps's engagement. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

These indemnification and contribution provisions shall: (i) remain operative and in full force and effect regardless of any termination or completion of the Engagement; (ii) inure to the benefit of the successors, assigns, heirs, or personal representative of any Indemnified Person; (iii) be in addition to any other rights that any Indemnified Person may have at common law or otherwise; and (iv) apply to activities prior to this date and after any amendment, modification, or future addition to the Agreement.

**Settlement of Claims**. The Company will not, without the prior written consent of Duff & Phelps (which consent shall not be unreasonably withheld), settle, compromise, or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Claim in respect of which indemnification or contribution could be sought hereunder (whether or not Duff & Phelps or any other Indemnified Person is a potential or actual named party to such Claim) unless such settlement, compromise, consent, or termination includes provisions holding harmless and unconditionally releasing Duff & Phelps and

Terms of Retention
Tribune Company
Page 4

each other Indemnified Person hereunder from all liability related to or arising out of such Claim, including claims for contribution.

Confidential

D&P_TR108572

Terms of Retention
Tribune Company
Page 5

**Miscellaneous**. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered: (a) if to the Company, at its offices at Tribune Company, 435 North Michigan Avenue, Chicago, IL 60611, Attention: Crane Kenney; and (b) if to Duff & Phelps, at its offices at 311 S. Wacker Drive, Suite 4200, Attention: Edward Forman, General Counsel. This Agreement has been and is made solely for the benefit of the Company's Board of Directors and officers and Duff & Phelps and the Indemnified Persons and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

This Agreement (including these Terms of Retention and the related engagement letter) (i) contains all of the understandings between the parties hereto with respect to the subject matter hereof, and no party can rely upon or be bound by any understanding or statement, oral or otherwise, not specifically in this Agreement; (ii) cannot be modified or changed except by a written instrument signed by each party hereto; (iii) shall be governed by the law of Illinois without regard to any conflicts of law provisions; (iv) may be executed in counterparts; and (v) shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of the parties hereto and the Indemnified Persons. If any term, provision, covenant, or restriction contained in this Agreement is unenforceable, the remainder of this Agreement shall remain in full force and effect and shall not be affected, impaired, or invalidated in any way.

Confidential

D&P_TR108573