DUFF & PHELPS, LLC • 311 SOUTH WACKER DRIVE, SUITE 4200 • CHICAGO, IL 60606 • TEL 312-697-4600 • FAX 312-697-0112

# DUFF&PHELPS

March 8, 2007

GreatBanc Trust Company,
 as Trustee of the Tribune Company
 Employee Stock Ownership Plan
1301 W. 22nd Street
Suite 800
Oak Brook, IL 60523

Attention:   Marilyn Marchetti

Dear Trustee:

This letter ("Agreement") sets forth the terms of an agreement ("Engagement") in which Duff & Phelps, LLC ("Duff & Phelps") is retained as independent financial advisor to advise GreatBanc Trust Company, as Trustee of a newly formed employee stock ownership plan (an "ESOP") of Tribune Company (the "Company"). Duff & Phelps will provide advice to the Trustee as to the financial feasibility of the ESOP's participation with Equity Group Investments ("EGI") in a purchase of all or substantially all of the Company's shares (the "ESOP Transaction"). This Engagement supersedes an engagement of Duff & Phelps by a Committee of the Company formed to explore the participation of the ESOP in the ESOP Transaction ("Prior Enagement") and the engagement letter dated February 26, 2007 for the Prior Engagement among the Company, the Committee of the Company, and Duff & Phelps is hereby terminated and of no further force and effect.

Duff & Phelps is also engaged by the Company's board of directors, in a letter dated February 13, 2007, to provide certain opinions as to the solvency and capitalization of the Company after giving effect to certain proposed transactions, including the ESOP Transaction ("Solvency Engagement"). Notwithstanding the forgoing, all parties intend that in the event a solvency opinion is required in connection with the transaction contemplated herein, Duff & Phelps will be engaged to render the solvency opinion directly to the Trustee and the Board will be given the right to rely on such opinion, and the letter dated February 13, 2007, will be of no further effect.

1. Duff & Phelps will analyze the financial feasibility of the ESOP's participation with EGI in the proposed purchase of all or substantially all of the Company's shares. The analysis will include, but not be limited to, a preliminary review of (i) the price proposed to be paid by the ESOP; (ii) the structure of the ESOP Transaction, including any funds loaned to the ESOP to finance its purchase of stock; (iii) expected rates of return on the ESOP's investment; and

www.duffandphelps.com

GreatBanc Trust Company,
as Trustee of the Tribune Company
Employee Stock Ownership Plan
March 8, 2007
Page 2

    (iv) potential post-transaction liquidity issues related to repurchases of stock of ESOP participants.

    The ESOP Transaction is a part of a transaction in which EGI will take the company private through a merger. The EGI transaction will be funded with bank financing and senior notes. The ESOP will purchase shares in the Company with the proceeds of a loan from the Company.

2. The Company has agreed that all information supplied to Duff & Phelps in connection with the Solvency Engagement is available to Duff & Phelps in this Engagement; exceptions to this will be detailed in writing. The Company agrees to furnish, or use its best efforts to cause to be furnished, to Duff & Phelps all reasonably requested data and information concerning the Company and an ESOP Transaction and all other such data, material, and information as Duff & Phelps shall reasonably request. The Company warrants and represents that all information provided or otherwise made available to Duff & Phelps by or on behalf of the Company will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections provided by the Company to Duff & Phelps will have been prepared in good faith and be based upon assumptions that, in light of the circumstances under which they are made, are reasonable. In rendering its services hereunder, Duff & Phelps will not independently verify the accuracy or completeness of any provided information, data, advice, opinions or representations, whether obtained from public or private sources. Duff & Phelps also will not independently evaluate, appraise or physically inspect any of the Company's specific assets or liabilities (contingent or otherwise). Duff & Phelps further will not independently investigate any legal matters involving the Company. Duff & Phelps assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company or any other information provided or otherwise made available to Duff & Phelps regarding the Company or an ESOP Transaction. The Trustee acknowledges and agrees that in rendering its services hereunder Duff & Phelps will be using and relying on the information provided by and on behalf of the Company without independent verification thereof by Duff & Phelps. Duff & Phelps assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company.

    Industry information and other economic, investment and financial data used as background for our analysis and review will be obtained from publicly available industry and investment sources, without independently verifying the accuracy thereof.

3. Duff & Phelps agrees to provide a written opinion ("Opinion") and supporting analysis to the Trustee as to whether (i) the consideration to be paid for the shares of the Company's common stock in the ESOP Transaction is not greater than fair market value (as such term is

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
March 8, 2007
Page 3

used in determining "adequate consideration" under Section 3(18) of the Employee Income Retirement Security Act of 1974, as amended), (ii) each interest rate payable by the ESOP under any loan made to the ESOP in connection with the ESOP Transaction (collectively, the "ESOP Loan") is not in excess of a reasonable rate of interest; (iii) the terms of the ESOP Loan are at least as favorable to the ESOP as would be the terms of a comparable extension of credit resulting from arm's-length negotiations between independent parties; and (iv) the terms and conditions of the ESOP Transaction are fair and reasonable to the ESOP from a financial point of view. The Opinion will be delivered to the ESOP Trustee (with a copy made available to the Company) in advance of any public announcement regarding the ESOP Transaction (with such announcement being expected to occur on or about March 19, 2007). The Opinion will include descriptions of the principal materials reviewed by Duff & Phelps, the assumptions and qualifications upon which Duff & Phelps has relied, and such other matters as Duff & Phelps in its sole discretion deems appropriate. Duff & Phelps also agrees to provide an opinion as to (i) through (iv) above at closing of the ESOP Transaction (the "Bringdown Opinion").

4. Duff & Phelps will use any non-public or proprietary information provided by the Company ("Confidential Information") solely in the course of this Engagement (except as such information relates to the Solvency Engagement) and in a manner which Duff & Phelps believes in good faith is consistent with the Company's interests or is required by law. To allow Duff & Phelps to comply with this obligation, all Confidential Information whose sensitivity and confidentiality is not obvious must be marked "confidential." The Company agrees that Duff & Phelps has the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder, but only upon the consummation of an ESOP Transaction. Prior to the publication of any such advertisement, Duff & Phelps shall obtain the Company's prior written approval of such advertisement, such approval not to be unreasonably withheld.

5. It is understood that the advice rendered by Duff & Phelps is for the information of the ESOP Trustee in connection with its evaluation of the ESOP Transaction and may not be used for any other purpose without Duff & Phelps' prior written consent, which consent shall not be unreasonably withheld, except that the Opinion may be included in its entirety in any documents required by a governmental entity. In giving any consent described in the immediately preceding sentence, Duff & Phelps does not hereby admit that it comes within the category of a person whose consent is required under Section 7 or Section 11 of the Securities Act of 1933, as amended, or the rules and regulations adopted by the Securities and Exchange Commission thereunder, nor does Duff & Phelps admit that it is an expert with respect to any part of such filing within the meaning of the term "experts" as used in the Securities Act of 1993, as amended or the rules and regulations of the Securities and Exchange Commission thereunder if required by a governmental entity. The Company may summarize or otherwise reference the existence of the Opinion (a) in any documents required by any such governmental entity and/or (b) to anyone who is a party to this Agreement, the

CONFIDENTIAL

D&P_TR041543

GreatBanc Trust Company,
as Trustee of the Tribune Company
Employee Stock Ownership Plan
March 8, 2007
Page 4

    ESOP Trustee and/or any of its/their respective attorneys and/or advisors, provided that any such summary or referenced language shall be subject to prior approval of Duff & Phelps (not to be unreasonably withheld). Except as otherwise set forth in this Section 5 above, no public reference to this Agreement may be made by Duff & Phelps or the Company without the express written consent of the other party (not to be unreasonably withheld).

6. The Company agrees to pay Duff & Phelps professional fees for this engagement of $1 million, payable as follows: (i) a retainer of $125,000, which was payable upon execution of the Prior Engagement; (ii) a fee of $175,000 upon execution of this Agreement; (iii) $300,000 upon delivery of the Opinion or completion of analysis if a decision is made not to request or issue the Opinion after Duff & Phelps has substantially completed its analysis related to issuing the Opinion; (iv) $200,000 on the date of the shareholder vote with respect to the merger; and (v) $200,000 upon delivery of the Bringdown Opinion or completion of analysis if a decision is made not to issue the Bringdown Opinion after Duff & Phelps has substantially completed its analysis related to issuing the Bringdown Opinion. Notwithstanding the foregoing, in the event the form of the ESOP Transaction is changed from what was originally contemplated, the Company and Duff & Phelps agree that that they will renegotiate, in good faith, the timing of the payment of fees as appropriate for the revised form of transaction. No portion of the fees payable hereunder shall be contingent upon the consummation of the ESOP Transaction or the conclusion reached in the analysis. In addition to professional fees, the Company agrees to promptly reimburse Duff & Phelps, from time to time upon request, for its reasonable out-of-pocket expenses (including travel, meals, lodging, telephone, document reproduction, telecopying, computer charges, and database access fees) and, to the extent agreed in writing in advance by the Company, for reasonable fees and expenses of counsel, consultants, and advisers retained by Duff & Phelps, in each case incurred in connection with the Engagement. In the event that the terms of the Engagement are modified after substantial completion of the analysis by Duff & Phelps and such modification requires substantial additional analysis or other services by Duff & Phelps, the Company agrees to negotiate in good faith the terms of additional compensation to Duff & Phelps.

    In the event that the responsibilities of Duff & Phelps, as required to complete the engagement described herein are expanded significantly beyond the scope contemplated by this Agreement due to unanticipated circumstances which arise subsequent to the date of this Agreement, and which are outside the control of the parties to this Agreement, or if this assignment extends beyond November 30, 2007, due to unanticipated circumstances, the Company and Duff & Phelps agree that they will renegotiate, in good faith, the fees provided herein.

7. Either party may terminate this Agreement at any time upon written notice, without liability or continuing obligation, except as set forth in the remainder of this paragraph. Neither the termination nor completion of this engagement shall affect: (i) any compensation payable to

CONFIDENTIAL

D&P_TR041544

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
March 8, 2007
Page 5

    Duff & Phelps up to the date of termination or completion; (ii) the reimbursement of expenses incurred by Duff & Phelps up to the date of termination or completion; (iii) the indemnification provisions set forth in the Indemnification and Contribution Agreement attached hereto; (iv) the provisions relating to successors and assigns in paragraph 8 hereof; and (v) the confidentiality provisions set forth herein.

8. The Agreement shall inure to the benefit of the respective successors and permitted assigns of the parties hereto and of the indemnified parties hereunder and their respective successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement. This Agreement may not be modified or amended except in writing signed by the parties hereto. Duff & Phelps shall not assign this Agreement without the prior written consent of the Trustee; provided, however, Duff & Phelps shall not be required to obtain such consent for assignments to any successor to all or a substantial portion of the business of Duff & Phelps.

9. In connection with Duff & Phelps's performance under this Agreement, the Company agrees to extend the terms of the Indemnification and Contribution Agreement attached hereto for all services provided under this Agreement. In the event of a termination of this Agreement, the Indemnification and Contribution Agreement shall remain in full force for all services provided by Duff & Phelps under the Agreement.

10. If the Company or the Trustee request Duff & Phelps to render other services not directly incidental to the delivery of the Opinion, the Bringdown Opinion, and supporting analysis, including services relating to administrative investigations or judicial proceedings relating to the ESOP, the Company agrees to compensate Duff & Phelps, in addition to the other fees provided for herein, on a per diem basis at the rates of Duff & Phelps then in effect, plus reimbursement for reasonable out-of-pocket expenses.

CONFIDENTIAL

GreatBanc Trust Company,
　as Trustee of the Tribune Company
　Employee Stock Ownership Plan
March 8, 2007
Page 6


If the foregoing terms are acceptable to you, we request that you arrange to have this letter fully executed and returned to us.

Sincerely,

DUFF & PHELPS, LLC

By: _____
　　　Elyse S. Bluth
　　　Managing Director


**AGREED TO AND ACCEPTED:**

GreatBanc Trust Company,
　as Trustee of the Tribune Company
　Employee Stock Ownership Plan

By: _____  Date: 3/8/07

Tribune Company

By: _____  Date: 3/8/07
　　　Don Grenesko

CONFIDENTIAL

D&P_TR041546

Tribune Company
February 23, 2007

**Miscellaneous**.  Notice given pursuant to any of the provisions of this Indemnification and Contribution Agreement shall be in writing and shall be mailed or delivered: (a) if to the Company, at its offices at Tribune Company, 435 North Michigan Avenue, Chicago, IL 60611, Attention: Crane Kenney; and (b) if to Duff & Phelps, at its offices at 311 S. Wacker Drive, Suite 4200, Attention: Edward Forman, General Counsel. This Indemnification and Contribution Agreement has been and is made solely for the benefit of the Company, its Board of Directors and officers, Duff & Phelps, the Indemnified Persons and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Indemnification and Contribution Agreement.

This Indemnification and Contribution Agreement and the Engagement Agreement (i) contain all of the understandings between the parties hereto with respect to the subject matter hereof, and no party can rely upon or be bound by any understanding or statement, oral or otherwise, not specifically set forth herein and therein; (ii) cannot be modified or changed except by a written instrument signed by each party hereto and thereto; (iii) shall be governed by the law of Illinois without regard to any conflicts of law provisions; (iv) may be executed in counterparts; and (v) shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of the parties hereto and thereto and the Indemnified Persons. If any term, provision, covenant, or restriction contained in the Engagement Agreement or this Indemnification and Contribution Agreement is unenforceable, the remainder of the Engagement Agreement or this Indemnification and Contribution Agreement (as applicable) shall remain in full force and effect and shall not be affected, impaired, or invalidated in any way.

DUFF & PHELPS, LLC

By: _____
Elyse S. Bluth
Managing Director

ESB/amw

**AGREED TO AND ACCEPTED:**

Tribune Company

By: _____ Date: 2/26/07

- 3 -

CONFIDENTIAL

D&P_TR041549

## INDEMNIFICATION AND CONTRIBUTION AGREEMENT

**Indemnification and Contribution.** The Company agrees to promptly, upon demand, indemnify and hold harmless Duff & Phelps and its affiliates, and its and their respective directors, officers, attorneys and other agents, stockholders, employees, and controlling persons (each an "Indemnified Person"), from and against any losses, claims, damages, judgments, assessments, and liabilities (joint or several) to the Company or third parties, (collectively, "Losses"), and will reimburse each Indemnified Person for all costs (including, without limitation, expenses, fees and disbursement, and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and fees and expenses (including, without limitation, reasonable fees and disbursements of counsel and accountants and the costs of any investigation and preparation) as and when they are incurred (collectively, "Expenses"), resulting directly or indirectly from any threatened or pending investigation, lawsuit, action, claim, proceeding, or dispute, including securityholder actions (whether or not Duff & Phelps or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to Duff & Phelps or any other person by the Company or used by the Company in connection with the transaction contemplated by the "Engagement Agreement (as hereinafter defined) or any omission or alleged omission by the Company to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (2) are otherwise related to or arise out of Duff & Phelps's engagement, role, activities, or the performance or non-performance of professional services (collectively, its "Engagement") under the engagement agreement of even date (the "Engagement Agreement") to which the parties hereto and a committee (the "Committee") formed to explore the possible adoption of an employee stock ownership plan by the Company are parties. The Company will not be responsible, however, for any Losses or Expenses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted primarily from the fraud, willful misconduct or gross negligence of the Indemnified Person; but pending any such judicial determination, the indemnification and reimbursement obligations of the Company hereunder shall continue to apply. Upon any such determination any Losses or Expenses previously funded by the Company shall be refunded by such Indemnified Person. However, the Company will not be responsible for any Losses which (i) result from any settlement not approved by the Company in its reasonable judgment or (ii) are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of an Indemnified Person. The Company also agrees that no Indemnified Person will be liable to the Company for or in connection with this Engagement, except for Losses incurred by the Company which are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of that Indemnified Person.

Duff & Phelps will notify the Company if it learns that any Claim has been instituted based, directly or indirectly, on the transactions which were the subject of Duff & Phelps's engagement under the Agreement, although failure to do so will not relieve the Company from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Company to forfeit rights and defenses. Should any Claim be formally instituted against Duff & Phelps or

- 1 -

CONFIDENTIAL

D&P_TR041547

Tribune Company
February 23, 2007

any other Indemnified Person based, directly or indirectly, on Duff & Phelps's Engagement under the Engagement Agreement, the Company will be entitled to participate therein with counsel chosen by it and, to the extent that it may wish or as requested by Duff & Phelps, to assume the defense of the Claim, with counsel reasonably satisfactory to Duff & Phelps, so long as the Company continues to pay all costs and expenses of the defense and preparation for such Claim. Even if the Company assumes the defense of a Claim, each Indemnified Person will have the right to participate in such Claim and to retain its own counsel. The Company will be required to pay all reasonable fees and expenses of such counsel as they are incurred only if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are in conflict with or are materially different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Claim on behalf of such Indemnified Person), (2) the Company shall not have assumed the defense of the Claim and employed counsel reasonably satisfactory to such Indemnified Person in a timely matter, or (3) the Company shall have authorized the employment of such counsel in connection with the defense of the Claim.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless (other than as a result of the fraud, willful misconduct or gross negligence of any such Indemnified Person), then the Company and Duff & Phelps will contribute to the Losses and Expenses for which such indemnification is held unavailable or insufficient in such proportion as is appropriate to reflect the relative fault of the Company and the Indemnified Person, as well as any other relevant equitable considerations, subject to the limitation that the contribution by Duff & Phelps and the other Indemnified Persons will not exceed the amount of fees actually received by Duff & Phelps pursuant to Duff & Phelps's Engagement. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. These indemnification and contribution provisions shall: (i) remain operative and in full force and effect regardless of any termination or completion of the Engagement; (ii) inure to the benefit of the successors, assigns, heirs, or personal representative of any Indemnified Person; (iii) be in addition to any other rights that any Indemnified Person may have at common law or otherwise; and (iv) apply to activities prior to this date and after any amendment, modification, or future addition to the Agreement.

**Settlement of Claims.** The Company will not, without the prior written consent of Duff & Phelps (which consent shall not be unreasonably withheld), settle, compromise, or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Claim in respect of which indemnification or contribution could be sought hereunder (whether or not Duff & Phelps or any other Indemnified Person is a potential or actual named party to such Claim) unless such settlement, compromise, consent, or termination includes provisions holding harmless and unconditionally releasing Duff & Phelps and each other Indemnified Person hereunder from all liability related to or arising out of such Claim, including claims for contribution.

CONFIDENTIAL

D&P_TR041548