DUFF & PHELPS, LLC • 311 SOUTH WACKER DRIVE, SUITE 4200 • CHICAGO, IL 60606 • TEL 312-697-4600 • FAX 312-697-0112

# DUFF&PHELPS

April 1, 2007

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
1301 W. 22nd Street
Suite 800
Oak Brook, IL 60523

Attention:   Marilyn Marchetti

Dear Trustee:

GreatBanc Trust Company, as Trustee (the "Trustee") of the Tribune Company Employee Stock Ownership Plan (the "ESOP") has retained Duff & Phelps, LLC ("Duff & Phelps") as independent financial advisor to provide certain opinions related to a purchase of 8,928,571 shares of newly issued common stock of the Tribune Company ("Tribune" or the "Company") for $250 million or $28.00 per share (the "ESOP Purchase"). The ESOP will pay for the purchase of stock by issuing a note in the amount of $250 million to the Company (the "ESOP Note"). The ESOP will execute and deliver an Agreement and Plan of Merger by and among the ESOP, Tesop Corporation ("Tesop"), a Delaware corporation which is wholly owned by the ESOP, and the Company (the "Merger Agreement") pursuant to which Tesop will be merged with and into the Company ( the "Merger") with the Company as the surviving corporation (the "Surviving Corporation") and the ESOP owning 52% of the Surviving Corporation's fully diluted common equity. These transactions, together with steps described below (under the heading "Proposed Transaction"), are collectively referred to herein as the "Proposed Transaction".

Specifically, Duff & Phelps has been asked to provide a written opinion to the Trustee as to whether (i) the price of $28.00 per share to be paid for the shares of the Company's common stock in the ESOP Purchase is not greater than fair market value (as such term is used in determining "adequate consideration" under Section 3(18) of the Employee Income Retirement Security Act of 1974, as amended), (ii) the interest rate of 5.01% per annum payable by the ESOP under ESOP Note in connection with the ESOP Purchase is not in excess of a reasonable rate of interest; (iii) the terms of the ESOP Note are at least as favorable to the ESOP as would be the terms of a comparable extension of credit resulting from arm's-length negotiations between independent parties; and (iv) the terms and conditions of the Proposed Transaction are fair and reasonable to the ESOP from a financial point of view.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0399457

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
April 1, 2007
Page 2

This opinion letter is intended solely for the information of the Trustee and no other party may rely on this opinion letter for purposes of the Proposed Transaction. Except as required under applicable law or legal process, this letter may not be quoted or referred to, in whole or in part, in any written document, or used for any other purposes, without the prior written consent of Duff & Phelps.

### Description of Proposed Transaction

As currently contemplated, the Company will enter into a number of simultaneous and consecutive transactions with the ESOP, Tesop, EGI-TRB, L.L.C., and Company shareholders.

1. According to a formula provided in the ESOP Purchase Agreement, the Trust will purchase 8,928,571 newly issued, unregistered shares of common stock of the Company for $250,000,000, or $28.00 per share. The ESOP Purchase will be funded by the issuance of the ESOP Note. In conjunction with the ESOP Purchase, the Trustee will agree to the Merger, and to the conversion of its shares of common stock of Tesop into shares of common stock of the Surviving Corporation.

2. The ESOP Note will have an interest rate of 5.01% and will be amortized over 30 years. Debt service of $15,342,301 will be due on April 1 each year, with a balloon payment of $62.5 million due April 1, 2037. Prepayments are allowed without penalty.

3. Per the terms of the Acquirer Purchase Agreement, EGI-TRB, L.L.C. (a Delaware limited liability company with Samuel Zell, individually, as its sole member, (the "Acquirer")) will purchase from the Company an exchangeable note ("Exchangeable Note") with a face value of $200 million and 1,470,588 newly issued shares of Company common stock. The Exchangeable Note will be purchased for $200 million and the common stock will be purchased for an aggregate purchase price of $50 million, or $34.00 per share (together, the "Acquirer Purchase").

4. Subsequent to the ESOP Purchase and Acquirer Purchase, the Company will tender for up to 125.5 million shares of the Company's outstanding common stock at a price of $34.00 per share (the "Share Repurchase"). The Share Repurchase will be funded by the Company with new borrowings. Neither the Acquirer nor the ESOP will participate in the Share Repurchase.

5. The Merger Agreement is expected to be approved by the boards of directors of the Company and Tesop, and the Trustee on behalf of the ESOP, and will be submitted for the requisite approval by the stockholders of the Company.

6. Concurrent with the execution of the Merger Agreement, the Chandler Trusts (and any affiliated stockholders, as appropriate) will enter into a voting agreement pursuant to which

Professionals' Eyes Only
Highly Confidential – Attorneys' Eyes Only

TRB0399458

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
April 1, 2007
Page 3

the Chandler Trusts (and any affiliated stockholders, as appropriate) will agree, among other things, to vote in favor of the Merger Agreement and the Merger and take other actions generally designed to ensure approval of the Merger Agreement and the Merger.

7. The Merger will occur after the Company has received certain regulatory approvals. Pursuant to the Merger Agreement, shares of Company common stock owned by the ESOP will be cancelled and the shares of Tesop common stock owned by the ESOP will be converted into 56,521,739 shares of the common stock of the Surviving Corporation. Specifically, if the Merger closes by December 31, 2007, each holder of the Company's outstanding common stock (including vested options, restricted stock and other equity equivalents under the Company's equity incentive plans but excluding treasury shares and shares held by the ESOP) will receive an amount equal to $34.00 per share (the "Merger Consideration"). In the event the Merger closes after December 31, 2007, the Merger Consideration will increase by 8% per annum accruing daily beginning on January 1, 2008 through and including the date of consummation of the Merger (less, in the case of vested options and other common stock equivalents having exercise prices, the applicable exercise price thereof).

8. Concurrent with consummation of the Merger, per the terms of the Acquirer Purchase Agreement, the Surviving Corporation will sell a note (the "Subordinated Note") and a warrant (the "Warrant") to EGI-TRB, L.L.C. for $315 million. The Subordinated Note bears an interest rate of 4.72% payable in kind, and has a term of eleven years. The Warrant has an exercise price of $500 million which increases $10 million per year for ten years (not to exceed $600 million), an expiration date of April 1, 2022, and is exercisable into 43,478,261 shares of the Company's stock, representing 40% of fully diluted shares outstanding at closing of the Merger.

9. Company management will purchase 3,260,870 shares of Company phantom stock equivalent to 3.0% of the Surviving Corporation's fully diluted equity for $37.0 million.

10. The Surviving Corporation will establish a new management incentive plan which will replace existing plans. Per the terms of the new management incentive plan, management will receive 5,434,783 phantom shares, representing 5% of the fully diluted equity of the Surviving Corporation, at closing of the Merger. Phantom shares vest over three years and cannot be reissued if forfeited or cashed out.

Scope of Analysis

In connection with our opinion, we have made such reviews, analyses, and inquiries as we have deemed necessary and appropriate under the circumstance. Our due diligence included, but was not limited to, the items summarized below:

Professionals' Eyes Only
Highly Confidential — Attorneys' Eyes Only

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
April 1, 2007
Page 4

- Discussed with senior management the history, current operations, and probable future outlook of Tribune, Broadcasting and Publishing, and the operating and financing plans for Tribune, Broadcasting, and Publishing, as well as the financial projections;
- Reviewed Company filings with Securities and Exchange Commission ("SEC"), including:
  - 10-K for the years ended on or about December 31, 2004 to 2006, including annual reports and audited financial statements;
  - Miscellaneous additional Company filings;
- Reviewed various presentations to the Committee of Independent Directors of Board of Directors of Tribune prepared by Merrill Lynch and Citigroup.
- Reviewed various presentations to the Committee of Independent Directors of Board of Directors of Tribune prepared by Morgan Stanley.
- Reviewed financial projections and models for the Company (and/or its separate businesses) for the years ending on or about December 31, 2007 to 2011, prepared by management as presented by Citigroup in financial models.
- Reviewed the financial models created by Equity Group, Inc.
- Reviewed the presentation to Tribune Board of Directors prepared by The Boston Consulting Group, dated October 1, 2005;
- Reviewed Audit Bureau of Circulations reports for the Chicago Tribune for the past two years, and the Los Angeles Times over the past four years;
- Reviewed the Audit Bureau of Circulations' *Top 200 Newspapers by Largest Reported Circulation*;
- Reviewed newspaper articles from various print and interactive publications with regard to the Tribune, selected public companies, and industry related topics;
- Reviewed other information contained in the Company's data room including, but not limited to:
  - 2007 Operating Plan for Tribune Publishing, Broadcasting, and consolidated
  - Financial statements for CareerBuilder, LLC and Classified Ventures, LLC for the years ended December 31, 2004-2006
  - Tribune Company Significant Litigation Summary dated October 21, 2006
  - Eagle New Media Investments, LLC & Eagle Publishing Investment, LLC ownership summary
  - PHONES overview and summary
  - Tribune Company Equity Income breakdown for years 2003 through 2010
  - Retiree Medical Plans and coverage information, Non-qualified pension plans, and Human resources Presentation dated November 2006;
- Reviewed the Tribune Rating Agency Presentation dated March 2007;
- Received information from certain officers of Tribune who have responsibility for legal affairs of Tribune to the effect that, to the best of their knowledge, there is no litigation to which Tribune is currently a party nor any claims or causes of action that are probable of legal assertion against Tribune and that would be reasonably likely to have a material adverse

Professionals' Eyes Only
Highly Confidential – Attorneys' Eyes Only

TRB0399460

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
April 1, 2007
Page 5

effect on the assets, financial condition, business or prospects of Tribune on a consolidated basis;
- Reviewed Standard & Poor's Publishing Industry Survey, dated September 7, 2006;
- Reviewed Morgan Stanley's *The Publishing Handbook: January 2007*;
- Reviewed publicly available information on public companies in the Company's industry deemed comparable, in whole or in part, to the Company including:
  - Securities analyst reports
  - News stories
  - SEC filings
  - Publicly available management presentations
- Analyzed publicly available information on mergers and acquisitions of companies in the Company's industries;
- Reviewed certain other relevant, publicly available information, including economic, industry, and investment information; and
- Such other documents, investment and financial studies, and analyses deemed appropriate by Duff & Phelps.

In addition, we reviewed drafts of documents related to the Proposed Transaction, including but not limited to:

- ESOP Purchase Agreement by and between Tribune Company and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust;
- ESOP Loan Agreement by and between Tribune Company and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust;
- ESOP Pledge Agreement by and between Tribune Company and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust;
- ESOP Note by GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust, to Tribune Company;
- Agreement and Plan of Merger by and among GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Trust, Tesop Corporation, and Tribune Company.
- Voting and Proxy Agreement by and among Chandler Trust No. 1 and Chandler Trust No. 2;
- Securities Purchase Agreement by and between Tribune Company and EGI-TRB, L.L.C.;
- Subordinated Exchange Promissory Note between Tribune Company and EGI-TRB, L.L.C.;
- Registration Rights Agreement between Tribune Company; EGI-TRB, L.L.C.; and GreatBanc Trust Company, as trustee of the Tribune Employee Stock Ownership Plan;
- Investor Rights Agreement by and among Tribune Company, EGI-TRB, L.L.C., and GreatBanc Trust Company, solely as trustee of the Tribune Employee Stock Ownership Plan;
- Subordinated Promissory Note between Tribune Company and EGI-TRB, L.L.C.;
- Warrant to Purchase Shares of Common Stock in the Tribune Company;
- Certificate of Incorporation of Tesop Corporation; and
- Bylaws of Tesop Corporation.

ofessionals' Eyes Only
jhly Confidential – Attorneys' Eyes Only

TRB0399461

GreatBanc Trust Company,
  as Trustee of the Tribune Company
  Employee Stock Ownership Plan
April 1, 2007
Page 6

Duff & Phelps also took into account its assessment of general economic, market, and financial conditions, as well as its experience in securities and business valuation, in general, and with respect to similar transactions, in particular. Duff & Phelps did not make any independent evaluation, appraisal, or physical inspection of any specific assets or liabilities (contingent or otherwise). In performing its analysis and rendering its opinion with respect to the Proposed Transaction, Duff & Phelps (i) relied upon the accuracy, completeness, and fair presentation of all information, data, advice, opinions, and representations obtained from public sources or provided to it from private sources, including Company management, advisers, and legal counsel, and did not attempt to independently verify such information; (ii) assumed that any estimate, evaluation, and projection furnished to Duff & Phelps by Company management was reasonably prepared and based upon the last currently available information and good faith judgment of the person furnishing the same; and (iii) assumed that information supplied and representations made by Company management, advisers, and legal counsel are substantially accurate regarding the Company and the Proposed Transaction.

In its analysis and in connection with the preparation of the opinion, Duff & Phelps has made numerous assumptions with respect to industry performance, general business, market and economic conditions, and other matters, many of which are beyond the control of any party involved in the Proposed Transaction. Duff & Phelps has prepared this opinion effective as of April 1, 2007. The opinion is necessarily based upon market, economic, financial, and other conditions as they exist and can be evaluated as of such date. To the extent that any of the foregoing assumptions or any of the facts on which the opinion is based prove to be untrue in any material respect, the opinion cannot and should not be relied upon.

The basis and methodology for our opinion have been designed specifically for the express purposes of the Trustee and may not translate to any other purposes. It is understood that the opinion is only for the information of the Trustee in connection with its consideration of the Proposed Transaction. The opinion is not a recommendation as to whether to proceed with the Proposed Transaction or any related transaction. The decision as to whether to proceed with the Proposed Transaction or any related transaction may depend on an assessment of factors unrelated to the financial analysis on which the opinion is based.

This letter should not be construed as creating any fiduciary duty on Duff & Phelps's part to any party.

Professionals' Eyes Only
Highly Confidential — Attorneys' Eyes Only

TRB0399462

GreatBanc Trust Company,
   as Trustee of the Tribune Company
   Employee Stock Ownership Plan
April 1, 2007
Page 7

### Conclusions

Based upon and subject to the foregoing, and assuming the accuracy and completeness of the information provided to us, it is Duff & Phelps's opinion that (i) the price of $28.00 per share, or an aggregate amount of $250 million, to be paid by the ESOP for shares of the Company's common stock is not greater than fair market value (as such term is used in determining "adequate consideration" pursuant to Section 3(18) of the Employee Retirement Income Security Act of 1974, as amended); (ii) the interest rate of 5.01% per annum on the ESOP Note does not exceed a reasonable rate of interest; (iii) the financial terms of the ESOP Note are at least as favorable to the ESOP as would be the terms of a comparable loan resulting from negotiations between independent parties; and (iv) the terms and conditions of the Proposed Transaction are fair and reasonable to the ESOP from a financial point of view.

Respectfully submitted,

*Duff & Phelps, LLC*

DUFF & PHELPS, LLC

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0399463