*HIGHLY CONFIDENTIAL*

| J.P. MORGAN SECURITIES INC. JPMORGAN CHASE BANK, N.A. 270 Park Avenue New York, NY 10017 | MERRILL LYNCH CAPITAL CORPORATION 4 World Financial Center New York, NY 10080 | CITIGROUP GLOBAL MARKETS INC. 388 Greenwich Street New York, NY 10013 | BANC OF AMERICA SECURITIES LLC BANC OF AMERICA BRIDGE LLC BANK OF AMERICA, N.A. 9 West 57th Street New York, NY 10019 |

April 5, 2007

Tribune Company
435 North Michigan Avenue, 6th Floor
Chicago, Illinois 60611

Attention:   Don Grenesko
             Senior Vice President, Finance and Administration

Re: **Project Tower – Amended and Restated Second Step Fee Letter**

Ladies and Gentlemen:

Reference is made to the Project Tower – Amended and Restated Second Step Commitment Letter dated the date hereof between J.P. Morgan Securities Inc. ("JPMorgan"), JPMorgan Chase Bank, N.A. ("JPMCB"), Merrill Lynch Capital Corporation ("Merrill Lynch"), Citigroup Global Markets Inc. ("CGMI") on behalf of Citigroup (as defined below), Bank of America, N.A. ("Bank of America"), Banc of America Bridge LLC ("Banc of America Bridge"), Banc of America Securities LLC ("BAS") and you (the "Second Step Commitment Letter"). Capitalized terms used but not defined in this letter agreement (and references to "you") have the meanings assigned thereto in the Second Step Commitment Letter (including attachments thereto). This letter amends, restates and supersedes in its entirety the Project Tower – Second Step Fee Letter among JPMorgan, JPMCB, Merrill Lynch, and Citigroup dated April 1, 2007 and such Fee Letter shall be of no further force or effect.

1.   Facilities Fees. As consideration for the Initial Lenders' agreements under the Second Step Commitment Letter in respect of the Second Step Facilities and their services in structuring and arranging the Second Step Facilities, you agree to pay or cause to be paid the following fees to the applicable Initial Lenders (or the Administrative Agent in the case of the Agency Fees):

Underwriting Fees:                    (A)  Incremental Facility.

An underwriting fee (the "Underwriting Fee") in an amount equal to 1.625% of the aggregate amount of the commitments pursuant to the Second Step Commitment Letter in respect of the Incremental Facility, which will be allocated

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236411

among JPMCB, Merrill Lynch, CGMI and Bank of America ratably in accordance with their respective commitments thereunder on the date hereof and will be earned and due and payable on the Second Step Closing Date.

(B) Senior Bridge Facility.

As consideration for the commitments and agreements under the Second Step Commitment Letter with respect to the Senior Bridge Facility, you agree to pay or cause to be paid to Merrill Lynch, JPMCB, CGMI and Banc of America Bridge the following fees (which will be allocated among them ratably in accordance with their respective commitments thereunder on the date hereof):

(a) whether or not any Initial Senior Loans are made, a commitment fee (the "Bridge Commitment Fee") equal to 0.75% of the amount of the Senior Bridge Facility, payable on the Second Step Closing Date;

(b) if and to the extent any Initial Senior Loans are made, a takedown fee (the "Takedown Fee") in an amount equal to 1.25% of the principal amount of the Initial Senior Loans made, payable on the Second Step Closing Date; and

(c) on the Initial Maturity Date for the Initial Senior Loans, a conversion fee ("Senior Unsecured Conversion Fee") equal to 2.00% of the aggregate principal amount of the Initial Senior Loans outstanding on such date (as determined immediately prior to the conversion of such Initial Senior Loans to Extended Senior Term Loans).

If amounts borrowed under the Senior Bridge Facility are repaid with the proceeds of an offering of debt securities pursuant to which an Underwriter (as defined below) receives fees, then Tribune shall be entitled to a credit against any fees paid to such participating Underwriter in connection with such offering equal to (it being understood that for purposes of calculating such credit, "Applicable Portion of the Takedown Fee" shall mean an amount equal to (i) the aggregate principal amount of the Initial Senior Loans being repaid with the proceeds of such offering multiplied by (ii) in the case of (A) JPMorgan and Merrill Lynch, 0.375%, (B) CGMI, 0.3125% and (C) Banc of America Bridge, 0.1875%): (a) if the offering of debt securities is consummated on or before the 90th day following the Second Step Closing Date, 75% of the Applicable Portion of the Takedown Fee paid to such Lead Arranger shall be credited to you on such date, (b) if the offering of debt securities is consummated on or after the 91st day but prior to the 181st day following the Second Step Closing Date, 50% of the Appli-

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236412

<table>
<tr><td></td><td>cable Portion of the Takedown Fee paid to such Lead Arranger shall be credited to you on such date, (c) if the offering of debt securities is consummated on or after the 181st day but prior to the 271st day following the Second Step Closing Date, 25% of the Applicable Portion of the Takedown Fee paid to such Lead Arranger shall be credited to you on such date and (d) if the offering of debt securities shall not have been consummated before the 271st day following the Second Step Closing Date, 0% of the Takedown Fee shall be credited to you on such date.</td></tr>
</table>

cable Portion of the Takedown Fee paid to such Lead Arranger shall be credited to you on such date, (c) if the offering of debt securities is consummated on or after the 181st day but prior to the 271st day following the Second Step Closing Date, 25% of the Applicable Portion of the Takedown Fee paid to such Lead Arranger shall be credited to you on such date and (d) if the offering of debt securities shall not have been consummated before the 271st day following the Second Step Closing Date, 0% of the Takedown Fee shall be credited to you on such date.

<u>Agency Fees</u>:    An administrative agency fee in respect of the Senior Bridge Facility, payable to the Administrative Agent in an amount to be agreed upon, such fee to be paid on the Second Step Closing Date. Such fees shall be in addition to your obligations under Section 7 of the Second Step Commitment Letter.

2.    <u>Alternate Financing Fee</u>. In addition, as consideration for the agreements of the Initial Lenders under the Second Step Commitment Letter in respect of the Second Step Facilities, in the event that, within 12 months following the consummation of the First Step Transactions, you or any of your or Holdco's respective subsidiaries consummates an Alternate Financing (as defined below), you agree to pay to JPMCB, Merrill Lynch, CGMI and Bank of America the Underwriting Fee set forth in paragraph 1(A) and to Merrill Lynch, JPMCB, CGMI and Banc of America Bridge the Bridge Commitment Fee and Takedown Fee set forth in paragraph 1(B)(a) and (b) in each case in the same proportion as set forth in Paragraph 1(A) or 1(B) above, as applicable, (the "<u>Alternate Financing Fee</u>"), which shall be earned and due and payable on the date of consummation of such Alternate Financing. An "<u>Alternate Financing</u>" shall mean a debt financing (or series of related debt financings) for the purposes set forth in the Second Step Commitment Letter provided other than pursuant to arrangements with the Initial Lenders and Lead Arrangers acting in the roles contemplated by the Second Step Commitment Letter. Notwithstanding the foregoing, you shall not be required to pay (or cause to be paid) the Alternate Financing Fee owing to an Initial Lender, as applicable, if:

(i) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Merrill Lynch, Merrill Lynch shall have breached its obligations to provide the financing contemplated by the Second Step Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction (as defined below);

(ii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to JPMCB, JPMCB shall have breached its obligations to provide the financing contemplated by the Second Step Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction;

(ii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Citigroup, Citigroup shall have breached its obligations to provide the financing contemplated by the Second Step Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction;

(iii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Bank of America, Bank of America shall have breached its obligations to provide the financing con-

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0236413

templated by the Second Step Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction; or

(iv) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Banc of America Bridge, Banc of America Bridge shall have breached its obligations to provide the financing contemplated by the Second Step Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction.

For purposes of this Paragraph 2, "Declined to Participate in an Alternate Transaction" shall mean (a) you have disclosed to the Initial Lenders and the Lead Arrangers the material terms and conditions of the debt financing proposed for the purposes set forth in the Second Step Commitment Letter (any such financing transactions, an "Alternate Transaction") (it being understood that no Alternate Transaction will be proposed primarily for the purpose of obtaining more favorable pricing, fees or other economic terms), (b) you offered to the Initial Lenders and the Underwriters a bona fide right to provide on an exclusive basis such Alternate Transaction on the same terms and conditions as those disclosed by you in equivalent roles and with equivalent titles as provided to the Initial Lenders in the Second Step Commitment Letter and as provided to the Underwriters in the Engagement Letter (as defined below), (c) an Initial Lender, as applicable, refused to provide such financing substantially on the terms and conditions disclosed by you or on other terms and conditions that are as favorable, taken as a whole, as those disclosed by you, and (d) the lenders providing the Alternate Transaction provided such financing substantially on the terms and conditions disclosed by you to the Initial Lenders or on other terms and conditions that are as favorable, taken as a whole, as such terms and conditions.

        3.      Market Flex. Notwithstanding anything to the contrary in this letter agreement, the Second Step Commitment Letter or Term Sheets, we shall have the right in our commercially reasonable judgment (with the consent of each of the Lead Arrangers but without the consent of, but in consultation with, you) prior to the Flex Termination Date to change the following terms of the Incremental Facility or the Senior Bridge Facility if in our commercially reasonable judgment such change is necessary to achieve a successful syndication of the Incremental Facility or the Senior Bridge Facility, as the case may be:

(a) the interest rate margins applicable to the Incremental Facility; *provided* that such interest rate margins may not be increased by more than 50 basis points from the highest applicable interest margins set forth in the Incremental Facility Term Sheet; *provided, further* that any increase in the interest margins permitted by the foregoing may, at the option of the Lead Arrangers, (i) take the form of original issue discount with original issue discount being equated to such interest margins in a manner determined by the Lead Arrangers and consistent with generally accepted financial practice based on an assumed four-year life to maturity or (ii) be accomplished by a combination of an increase in interest rates and such original issue discount;

(b) reallocate up to $1,400 million of the Incremental Facility to the Senior Bridge Facility or Senior Notes; *provided* that Tribune shall be entitled to a credit against any fees paid to the Initial Lenders (in the case of the Senior Bridge Facility) or the Underwriters (in the case of the Senior Notes), as the case may be, in connection with any such reallocation such that the reallocation does not result in an increase in the weighted average fee obligation of Tribune over the fees that would have been payable had such reallocation not occurred; and

(c) provide that any Senior Notes are secured on a second lien basis (with such intercreditor terms as may be customary for similar issuances of second lien notes at the time issued) with any or all of the collateral securing the Senior Secured Credit Facilities.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236414

The Initial Lenders' rights under this paragraph will survive the execution of the Incremental Amendments and Bridge Documents and any related borrowings and continue in effect until the earlier date (the "Flex Termination Date") of (a) the date each Initial Lender's aggregate exposure under the Incremental Facility shall be $0 and (b) 45 days following the Second Step Closing Date. In the event that the Incremental Amendments and Bridge Documents are executed and delivered prior to the Flex Termination Date, so long as (i) such amendments are not otherwise inconsistent with applicable law and (ii) Tribune shall have received reasonable notice of such amendments and a reasonable opportunity to review and comment thereon, you agree to execute and deliver all amendments and waivers to the Operative Documents to give effect to the foregoing. The provisions of this paragraph shall survive the Second Step Closing Date and are an express condition to our commitment under the Second Step Commitment Letter.

4.     Securities Offering. You agree to enter into an engagement letter (the "Engagement Letter") pursuant to which the underwriters named therein (the "Underwriters") (or one or more of their affiliates) have been engaged to act as underwriters, bookrunners, placement agents and/or initial purchasers in connection with one or more securities offerings, the proceeds of which will be used to refinance the Senior Bridge Facility. You agree that, upon written notice by the Underwriters (a "Debt Securities Notice"), at any time and from time to time from and after the 90th day after the date of Second Step Closing Date and prior to the first anniversary thereof, Tribune will issue and sell such aggregate principal amount of senior debt securities (which may, in consultation with you, be either unsecured or secured on a second priority basis with any or all of the collateral securing the Senior Secured Credit Facilities and in any event with senior subordinated guarantees from all subsidiaries that guarantee the Bank Facilities) (the "Securities") as will generate gross proceeds sufficient to replace (in whole or in part as determined by the Underwriters in their reasonable discretion applied consistently with other similarly situated clients of the Underwriters ("commercially reasonable discretion")) the commitments in respect of, or refinance (in whole or in part as determined by the Underwriters in their commercially reasonable), the Senior Bridge Facility, in each case upon such terms and conditions as may be specified by the Underwriters (in consultation with Tribune) in the Debt Securities Notice; *provided, however*, that (i) the Underwriters, in their commercially reasonable discretion after consultation with you, shall determine whether such securities will be issued through a registered public offering or a private placement for resale pursuant to Rule 144A; (ii) such securities will not mature any earlier than six months after the final maturity of the Tranche B Facility and will contain such terms, including registration rights (in the event of a private placement or Rule 144A offering), covenants, events of default, subordination provisions, floating or fixed interest rate, yield and redemption prices and dates and conditions as are customary for similar financings as determined, in consultation with Tribune, by the Underwriters in their commercially reasonable discretion; *provided, however*, that, without Tribune's consent, the weighted average yield *per annum* payable on such securities, together with any Senior Bridge Loans that will remain outstanding after the application of the net proceeds of such issuance, shall not exceed (a) 12.0% if the corporate credit ratings for Tribune are B2 (no negative outlook) or better by Moody's and B (no negative outlook) or better by S&P and (b) 12.5% if the corporate credit ratings are not as described in the immediately preceding clause (a) (the "Senior Unsecured Bridge Cap") and (iii) all other arrangements with respect to such securities shall be reasonably satisfactory in all respects to the Underwriters (in consultation with Tribune) in light of then prevailing market conditions and the financial condition of Tribune and its subsidiaries (taken as a whole) at the date of sale. The Lead Arrangers shall have the right to enforce the Underwriters' rights under this paragraph and such rights will survive the execution of the Operative Documents and the funding of the Senior Bridge Facility.

5.     Confidentiality. The parties hereto hereby agree that this letter agreement is subject to the confidentiality provisions in the Second Step Commitment Letter.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236415

6. <u>Miscellaneous</u>. It is understood and agreed that this letter agreement shall not constitute or give rise to any obligation to provide any financing; such an obligation will arise only under the Second Step Commitment Letter if accepted in accordance with its terms. This letter agreement may not be amended or any provision hereof waived or modified except by an instrument in writing signed by each of the parties hereto. This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York. This letter agreement may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this letter agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this letter agreement.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0236416

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, the Initial Lenders and the Lead Arrangers.

Very truly yours,

MERRILL LYNCH CAPITAL
CORPORATION

By: _____*Stphn B Pams*_____
    Name: Stephen Pams
    Title: Vice President

CITIGROUP GLOBAL MARKETS INC.

By: _____
    Name:
    Title:

J.P. MORGAN SECURITIES INC.

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, N.A.

By: _____
    Name:
    Title:

[Step Two Fee Letter]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236417

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, the Initial Lenders and the Lead Arrangers.

Very truly yours,

MERRILL LYNCH CAPITAL
CORPORATION

By: _____
    Name:
    Title:

CITIGROUP GLOBAL MARKETS INC.

By: _____
    Name: Robert H. Chen
    Title: Director

J.P. MORGAN SECURITIES INC.

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, N.A.

By: _____
    Name:
    Title:

[Step Two Fee Letter]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236418

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, the Initial Lenders and the Lead Arrangers.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: _____
    Name:
    Title:

CITIGROUP GLOBAL MARKETS INC.

By: _____
    Name:
    Title:

J.P. MORGAN SECURITIES INC.

By: _____
    Name: Robert Anastasio
    Title: Vice President

JPMORGAN CHASE BANK, N.A.

By: _____
    Name: Robert Anastasio
    Title: Vice President

[Step Two Fee Letter]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236419

04/04/2007  20:01     312-828-7393                BANK OF AMERICA                         PAGE  02/05

BANK OF AMERICA, N.A.

By: *[signature]*
Name: DANIEL R. PETRIK
Title: SENIOR VICE PRESIDENT

BANC OF AMERICA BRIDGE LLC

By: _____
Name:
Title:

BANC OF AMERICA SECURITIES LLC

By: _____
Name:
Title:

[Step Two Fee Letter]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236420

BANK OF AMERICA, N.A.

By: _____
    Name:
    Title:

BANC OF AMERICA BRIDGE LLC

By: *[signature]*
    Name: James G. Rose
    Title: Managing Director

BANC OF AMERICA SECURITIES LLC

By: *[signature]*
    Name: James G. Rose
    Title: Managing Director

[Step Two Fee Letter]


Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236421

Accepted and agreed to as of
the date first written above:

TRIBUNE COMPANY

By: *[signature]*
Name: Donald C. Grenesko
Title: Senior Vice President, Finance and Administration

Acknowledged:

EGI-TRB, L.L.C.

By: _____
Name:
Title:

[Second Step Fee Letter]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236422

Accepted and agreed to as of
the date first above written:

TRIBUNE COMPANY

By: _____
Name: Dennis J. FitzSimons
Title: Chairman, President and
       Chief Executive Officer


EGI-TRB, L.L.C.

By: _____*[signature]*_____
Name: Philip G. Tinkler
Title: Vice President

Signature Page to the Second Step Fee Letter

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0236423