**EXECUTION COPY**

GUARANTEE AGREEMENT dated as of June 4, 2007, among Tribune Company ("Borrower"), each of the subsidiaries of Borrower listed on Annex I hereto (each such subsidiary individually, a "Guarantor" and, collectively, the "Guarantors") and JPMORGAN CHASE BANK, N.A., a national banking corporation ("JPMorgan"), as administrative agent (the "Agent") for the Secured Parties (as defined in the Credit Agreement).

Reference is made to the Credit Agreement dated as of May 17, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among Borrower, the lenders from time to time party thereto (the "Lenders"), the Agent and the other parties thereto. Capitalized terms used herein and not defined herein shall have the meanings assigned to such terms in the Credit Agreement.

The Lenders have agreed to make Advances to Borrower, and the Issuing Banks have agreed to issue Letters of Credit for the account of Borrower and the Subsidiaries, pursuant to, and upon the terms and subject to the conditions specified in, the Credit Agreement. Each of the Guarantors acknowledges that it will derive substantial benefit from the making of the Advances by the Lenders, and the issuance of the Letters of Credit by the Issuing Banks. The obligations of the Lenders to make Advances and of the Issuing Banks to issue Letters of Credit are conditioned on, among other things, the execution and delivery by the Guarantors of a Guarantee Agreement in the form hereof. As consideration therefor and in order to induce the Lenders to make Advances and the Issuing Banks to issue Letters of Credit, the Guarantors are willing to execute this Agreement.

Accordingly, the parties hereto agree as follows:

SECTION 1. Guarantee. Each Guarantor unconditionally guarantees, jointly with the other Guarantors and severally, as a primary obligor and not merely as a surety, all of (a) the Obligations, (b) the due and punctual performance of all covenants, agreements, obligations and liabilities of the Borrower and each Loan Party under or pursuant to the Credit Agreement and the other Loan Documents, (c) the Secured Hedging Obligations and (d) the Secured Cash Management Obligations (all the monetary and other obligations described in the preceding clauses (a) through (d) being collectively called the "Guaranteed Obligations"). Each Guarantor further agrees that the Guaranteed Obligations may be extended or renewed, in whole or in part, without notice to or further assent from it, and that it will remain bound upon its guarantee notwithstanding any extension or renewal of any Guaranteed Obligation.

SECTION 2. Guaranteed Obligations Not Waived. To the fullest extent permitted by applicable law, each Guarantor waives presentment to, demand of payment from and protest to Borrower of any of the Guaranteed Obligations, and also waives notice of acceptance of its guarantee and notice of protest for nonpayment. To the fullest extent permitted by applicable law, the obligations of each Guarantor hereunder shall not be affected by (a) the failure of the Agent or any other Secured Party to assert any claim or demand or to enforce or exercise any right or remedy against Borrower or any other Guarantor under the provisions of the Credit Agreement, any other Loan Document or otherwise, (b) any rescission, waiver,

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

amendment or modification of, or any release from any of the terms or provisions of, this Agreement, any other Loan Document, any Guarantee or any other agreement, including with respect to any other Guarantor under this Agreement, (c) the failure to perfect any security interest in, or the release of, any of the security held by or on behalf of the Agent or any other Secured Party or (d) any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or otherwise operate as a discharge of any Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations).

SECTION 3. Security. Each of the Guarantors authorizes the Agent (on behalf of itself and the other Secured Parties) to (a) take and hold security for the payment of the Guaranteed Obligations and exchange, enforce, waive and release any such security, (b) apply such security and direct the order or manner of sale thereof as it in its sole discretion may determine and (c) release or substitute any one or more endorsees, other guarantors of other obligors, all without affecting the obligations of any Guarantor hereunder.

SECTION 4. Guarantee of Payment. Each Guarantor further agrees that its guarantee constitutes a guarantee of payment when due and not of collection, and waives any right to require that any resort be had by the Agent or any other Secured Party to any of the security held for payment of the Guaranteed Obligations or to any balance of any deposit account or credit on the books of the Agent or any other Secured Party in favor of Borrower or any other person.

SECTION 5. No Discharge or Diminishment of Guarantee. The obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Guaranteed Obligations), including any claim of waiver, release, surrender, alteration or compromise of any of the Guaranteed Obligations, and shall not be subject to any defense (other than a defense of payment) or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations or otherwise. Without limiting the generality of the foregoing, the obligations of each Guarantor hereunder shall not be discharged or impaired or otherwise affected by the failure of the Agent or any other Secured Party to assert any claim or demand or to enforce any remedy under the Credit Agreement, any other Loan Document or any other agreement, by any waiver or modification of any provision of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the Guaranteed Obligations, or by any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of each Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Guaranteed Obligations).

SECTION 6. Defenses of Borrower Waived. To the fullest extent permitted by applicable law, each of the Guarantors waives any defense based on or arising out of any defense of Borrower (other than the defense of payment in full) or the unenforceability of the Guaranteed Obligations or any part thereof from any cause, or the cessation from any cause of the liability of Borrower, other than the final and indefeasible payment in full in cash of the Guaranteed

Obligations. The Agent and the other Secured Parties may, at their election, foreclose on any security held by one or more of them by one or more judicial or nonjudicial sales, accept an assignment of any such security in lieu of foreclosure, compromise or adjust any part of the Guaranteed Obligations, make any other accommodation with Borrower or any other guarantor or exercise any other right or remedy available to them against Borrower or any other guarantor, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Guaranteed Obligations have been fully, finally and indefeasibly paid in cash. Pursuant to applicable law, each of the Guarantors waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of such Guarantor against any Borrower or any other Guarantor or guarantor, as the case may be, or any security.

SECTION 7.  Agreement to Pay; Subordination.  In furtherance of the foregoing and not in limitation of any other right that the Agent or any other Secured Party has at law or in equity against any Guarantor by virtue hereof, upon the failure of Borrower or any other Loan Party to pay any Guaranteed Obligation when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise, each Guarantor hereby promises to and upon written demand will promptly pay, or cause to be paid, to the Agent or such other Secured Party as designated thereby in cash the amount of such unpaid Guaranteed Obligations.  Upon payment by any Guarantor of any sums to the Agent or any Secured Party as provided above, all rights of such Guarantor against Borrower arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all the Guaranteed Obligations. In addition, any indebtedness of Borrower now or hereafter held by any Guarantor is hereby subordinated in right of payment to the prior payment in full in cash of the Guaranteed Obligations, except to the extent payments, prepayments or redemptions of any such indebtedness are permitted under Section 5.02(j) of the Credit Agreement.  If any amount shall erroneously be paid to any Guarantor on account of (i) such subrogation, contribution, reimbursement, indemnity or similar right or (ii) any such indebtedness of Borrower (other than any indebtedness permitted to be paid, repaid or redeemed pursuant to Section 5.02(j) of the Credit Agreement), such amount shall be held in trust for the benefit of the Secured Parties and shall forthwith be paid to the Agent to be credited against the payment of the Guaranteed Obligations, whether matured or unmatured, in accordance with the terms of the Loan Documents.

SECTION 8.  Information.  Each of the Guarantors assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Guaranteed Obligations and the nature, scope and extent of the risks that such Guarantor assumes and incurs hereunder, and agrees that none of the Agent or the other Secured Parties will have any duty to advise any of the Guarantors of information known to it or any of them regarding such circumstances or risks.

SECTION 9.  Representations and Warranties.  Each of the Guarantors represents and warrants as to itself that all representations and warranties relating to it contained in the Credit Agreement are true and correct.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

SECTION 10. Termination. The Guarantees made hereunder (a) shall terminate when all the Guaranteed Obligations (other than contingent obligations for unasserted claims) have been paid in full in cash and the Lenders have no further commitments to lend under the Credit Agreement, no Letters of Credit are outstanding or all outstanding Letters of Credit have been cash collateralized or secured by a back-up letter of credit and the Issuing Bank has no further obligation to issue Letters of Credit under the Credit Agreement and (b) shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Guaranteed Obligation is rescinded or must otherwise be restored by any Secured Party or any Guarantor upon the bankruptcy or reorganization of Borrower, any Guarantor or otherwise. In connection with the foregoing, the Agent shall execute and deliver to such Guarantor or Guarantor's designee, at such Guarantor's expense, any documents or instruments which such Guarantor shall reasonably request from time to time to evidence such termination and release.

SECTION 11. Binding Effect; Several Agreement; Assignments; Release. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the Guarantors that are contained in this Agreement shall bind and inure to the benefit of each party hereto and their respective successors and assigns. This Agreement shall become effective as to any Guarantor when a counterpart hereof (or a Supplement referred to in Section 20) executed on behalf of such Guarantor shall have been delivered to the Agent, and a counterpart hereof (or a Supplement referred to in Section 20) shall have been executed on behalf of the Agent, and thereafter shall be binding upon such Guarantor and the Agent and their respective successors and assigns, and shall inure to the benefit of such Guarantor, the Agent and the other Secured Parties, and their respective successors and assigns, except that no Guarantor shall have the right to assign its rights or obligations hereunder or any interest herein (and any such attempted assignment shall be void). If a Guarantor shall become an Immaterial Subsidiary or if all of the Equity Interests or all or substantially all of the assets of a Guarantor are sold, transferred or otherwise disposed of pursuant to a transaction permitted by Section 5.02(b) of the Credit Agreement or if a Guarantor is otherwise no longer required to be a "Guarantor" pursuant to the Credit Agreement, in each case such Guarantor shall be released from its obligations under this Agreement without further action. This Agreement shall be construed as a separate agreement with respect to each Guarantor and may be amended, modified, supplemented, waived or released with respect to any Guarantor without the approval of any other Guarantor and without affecting the obligations of any other Guarantor hereunder.

SECTION 12. Waivers; Amendment. (a) No failure or delay of the Agent in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the Agent hereunder and of the other Secured Parties under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provision of this Agreement or consent to any departure by any Guarantor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) below, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No

notice or demand on any Guarantor in any case shall entitle such Guarantor to any other or further notice or demand in similar or other circumstances.

(b) Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to a written agreement entered into between the Guarantors with respect to which such waiver, amendment or modification relates and the Agent, with the prior written consent of the Required Lenders (except as otherwise provided in the Credit Agreement including Section 8.20 thereof).

SECTION 13. <u>Governing Law</u>. This agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 14. <u>Notices</u>. All communications and notices hereunder shall be in writing and given as provided in Section 8.02 of the Credit Agreement. All communications and notices hereunder to each Guarantor shall be given to it in care of Borrower at Borrower's address set forth in Section 8.02 of the Credit Agreement.

SECTION 15. <u>Survival of Agreement; Severability</u>. (a) All covenants, agreements, representations and warranties made by the Guarantors herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement or any other Loan Document shall be considered to have been relied upon by the Agent and the other Secured Parties and shall survive the making by the Lenders of the Advances and the issuance of the Letters of Credit by the Issuing Banks regardless of any investigation made by the Secured Parties or on their behalf, and shall continue in full force and effect as long as the principal of or any accrued interest on any Guaranteed Obligation (other than contingent obligations for unasserted claims) is outstanding and unpaid or any Letter of Credit is outstanding or all outstanding Letters of Credit have been cash collateralized or secured by a back-up letter of credit and as long as the Commitments have not been terminated or have not expired.

(b) In the event any one or more of the provisions contained in this Agreement or in any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 16. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract (subject to Section 11), and shall become effective as provided in Section 11. Delivery of an executed signature page to this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Agreement.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

SECTION 17.  Rules of Interpretation.  The rules of interpretation specified in Sections 1.02 and 8.17 of the Credit Agreement shall be applicable to this Agreement.

SECTION 18.  Jurisdiction; Consent to Service of Process.  (a)  Each Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that the Agent or any other Secured Party may otherwise have to bring any action or proceeding relating to this Agreement or the other Loan Documents against any Guarantor or its properties in the courts of any jurisdiction.

(b)  Each Guarantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the other Loan Documents in any New York State or Federal court.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

SECTION 19.  Waiver of Jury Trial.  Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation directly or indirectly arising out of, under or in connection with this Agreement or the other Loan Documents.  Each party hereto (a) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (b) acknowledges that it and the other parties hereto have been induced to enter into this Agreement and the other Loan Documents, as applicable, by, among other things, the mutual waivers and certifications in this Section 19.

SECTION 20.  Additional Guarantors.  Pursuant to Section 5.01(l) of the Credit Agreement, each wholly owned Domestic Subsidiary of Borrower (to the extent such Subsidiary (i) is not an Immaterial Subsidiary after the Closing Date, a Subsidiary of a Foreign Subsidiary of Borrower or a Receivables Subsidiary or (ii) is not merged or consolidated with and into Borrower or any Guarantor in compliance with Section 5.02(b) on or prior to the 30th day after such Subsidiary shall become a Subsidiary) that was not in existence or not a wholly owned Domestic Subsidiary on the date of the Credit Agreement is required to enter into this Agreement as a Guarantor upon becoming a wholly owned Domestic Subsidiary.  Upon execution and delivery after the date hereof by the Agent and any such wholly owned Domestic Subsidiary of an instrument ("Supplement") in the form of Exhibit 1, such Subsidiary shall become a Guarantor hereunder with the same force and effect as if originally named as a Guarantor herein.

The execution and delivery of any Supplement adding an additional Guarantor as a party to this Agreement shall not require the consent of any other Guarantor hereunder or of any Secured Party. Subject to Section 11, the rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor as a party to this Agreement.

SECTION 21. Right of Setoff. Upon (a) the occurrence and during the continuance of any Event of Default and (b) the making of the request or the granting of the consent specified by Section 6.01 of the Credit Agreement to authorize the Agent to declare the Advances due and payable pursuant to the provisions of Section 6.01 of the Credit Agreement, each Secured Party is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by such Secured Party to or for the credit or the account of any Guarantor against any or all the obligations of such Guarantor now or hereafter existing under this Agreement and the other Loan Documents held by such Secured Party, whether or not such Secured Party shall have made any demand under this Agreement or any other Loan Document and although such obligations may be unmatured. Each Secured Party agrees promptly to notify Guarantor after any such set-off and application; provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of each Secured Party under this Section 21 are in addition to other rights and remedies (including other rights of setoff) which such Secured Party may have.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

**TRIBUNE BROADCASTING HOLDCO, LLC**
**TRIBUNE FINANCE, LLC**
**TRIBUNE LOS ANGELES, INC.**
**TMD, INC.**
**TRIBUNE NEW YORK NEWSPAPER HOLDINGS, LLC**

By: _____
Name:  Chandler Bigelow
Title:   Treasurer

**EACH OF THE GUARANTORS LISTED ON SCHEDULE I HERETO**

By: _____
Name:  Chandler Bigelow
Title:   Assistant Treasurer

[guarantee]

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

JPMORGAN CHASE BANK, N.A.,
as Agent

By: _____
Name:
Title:      **ROBERT** ANASTASIO
            **VICE PRESIDENT**

[guarantee]

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0521009

ANNEX I TO THE
GUARANTEE AGREEMENT

Guarantor

The Baltimore Sun Company
Chicago Tribune Company
The Daily Press, Inc.
The Hartford Courant Company
Orlando Sentinel Communications Company
The Morning Call, Inc.
Sun-Sentinel Company
Newsday, Inc.
Tribune Interactive, Inc.
Tribune Los Angeles, Inc.
Tribune Media Services, Inc.
Tribune Broadcasting Company
KHCW Inc.
KSWB Inc.
KPLR, Inc.
KTLA Inc.
KWGN Inc.
Tower Distribution Company
Tribune Broadcast Holdings, Inc.
Tribune Entertainment Company
Tribune Television Company
Channel 40, Inc.
Channel 39, Inc.
Tribune Television Holdings, Inc.
Tribune Television New Orleans, Inc.
Tribune Television Northwest, Inc.
WDCW Broadcasting, Inc.
WGN Continental Broadcasting Company
WPIX, Inc.
Tribune Finance, LLC
Homestead Publishing Company
Patuxent Publishing Company
Chicagoland Publishing Company
Tribune Direct Marketing, Inc.
Virginia Gazette Companies, LLC
E Z Buy & E Z Sell Recycler Corporation of Southern California
Forum Publishing Group, Inc.
Courant Specialty Products, Inc.
New Mass Media, Inc.
TMLH2, Inc.
Southern Connecticut Newspapers, Inc.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TMLS1, Inc.
Gold Coast Publications, Inc.
TMD, Inc.
Distribution Systems of America, Inc.
Los Angeles Times Communications LLC
Tribune Manhattan Newspaper Holdings, Inc.
Tribune New York Newspaper Holdings, LLC
TMS Entertainment Guides, Inc.
Tribune Media Net, Inc.
Tribune National Marketing Company
Tribune Broadcasting Holdco, LLC
ChicagoLand Television News, Inc.
5800 Sunset Productions Inc.
Tribune (FN) Cable Ventures, Inc.
WTXX Inc.
Chicago National League Ball Club, Inc.
Tribune California Properties, Inc.
California Community News Corporation
Hoy Publications, LLC

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0521011

EXHIBIT 1 TO THE
GUARANTEE AGREEMENT

SUPPLEMENT NO. [ ] dated as of [          ] , to the Guarantee
Agreement (the "Guarantee Agreement") dated as of June 4, 2007, among
TRIBUNE COMPANY (the "Borrower"), each of the subsidiaries of Bor-
rower listed on Annex I thereto (each such subsidiary individually, a
"Guarantor" and, collectively, the "Guarantors") and JPMORGAN
CHASE BANK, N.A., a national banking corporation ("JPMorgan"), as
administrative agent (the "Agent") for the Secured Parties (as defined in
the Credit Agreement).

A. Reference is made to the Credit Agreement dated as of May 17, 2007 (as
amended, amended and restated, supplemented or otherwise modified from time to time, the
"Credit Agreement"), among Borrower, the lenders from time to time party thereto (the "Lend-
ers"), the Agent and the other parties thereto.

B. Capitalized terms used herein and not otherwise defined herein shall have the
meanings assigned to such terms in the Guarantee Agreement and the Credit Agreement.

C. The Guarantors have entered into the Guarantee Agreement in order to induce
the Lenders to make Advances and the Issuing Banks to issue Letters of Credit. Section 20 of
the Guarantee Agreement provides that additional Subsidiaries (subject to the terms and condi-
tions of Section 20) of Borrower may become Guarantors under the Guarantee Agreement by
execution and delivery of an instrument in the form of this Supplement. The undersigned Sub-
sidiary of Borrower (the "New Guarantor") is executing this Supplement to become a Guarantor
under the Guarantee Agreement in order to induce the Lenders to make additional Advances and
the Issuing Banks to issue additional Letters of Credit and as consideration for Advances previ-
ously made and Letters of Credit previously issued.

Accordingly, the Agent and the New Guarantor agree as follows:

SECTION 1. In accordance with Section 20 of the Guarantee Agreement, the
New Guarantor by its signature below becomes a Guarantor under the Guarantee Agreement
with the same force and effect as if originally named therein as a Guarantor and the New Guar-
antor hereby (a) agrees to all the terms and provisions of the Guarantee Agreement applicable to
it as a Guarantor thereunder and (b) represents and warrants that the representations and warran-
ties made by it as a Guarantor thereunder are true and correct on and as of the date hereof. Each
reference to a Guarantor in the Guarantee Agreement shall be deemed to include the New Guar-
antor. The Guarantee Agreement is hereby incorporated herein by reference.

SECTION 2. The New Guarantor represents and warrants to the Agent and the
other Secured Parties that this Supplement has been duly authorized, executed and delivered by it
and constitutes its legal, valid and binding obligation, enforceable against it in accordance with
its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, re-
organization, moratorium or similar laws affecting the enforcement of creditors' rights generally

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

SECTION 3.  This Supplement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Supplement shall become effective when the Agent shall have received counterparts of this Supplement that, when taken together, bear the signatures of the New Guarantor and the Agent. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Supplement.

SECTION 4.  Except as expressly supplemented hereby, the Guarantee Agreement shall remain in full force and effect.

SECTION 5.  This supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6.  In case any one or more of the provisions contained in this Supplement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and in the Guarantee Agreement shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision hereof in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties hereto shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 7.  All communications and notices hereunder shall be in writing and given as provided in Section 14 of the Guarantee Agreement. All communications and notices hereunder to the New Guarantor shall be given to it in care of Borrower at Borrower's address set forth in Section 8.02 of the Credit Agreement.

SECTION 8.  The New Guarantor agrees to reimburse the Agent for its reasonable and documented out-of-pocket expenses in connection with this Supplement, including the reasonable and documented fees, disbursements and other charges of counsel for the Agent.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the day and year first above written.

EACH OF THE SUBSIDIARIES LISTED
ON SCHEDULE I HERETO,

by

_____
Name:
Title:

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0521014

2

JPMORGAN CHASE BANK, N.A.,
as Agent,

by

_____

Name:
Title:

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## SCHEDULE I

The Baltimore Sun Company
Chicago Tribune Company
The Daily Press, Inc.
The Hartford Courant Company
Orlando Sentinel Communications Company
The Morning Call, Inc.
Sun-Sentinel Company
Newsday, Inc.
Tribune Interactive, Inc.
Tribune Media Services, Inc.
Tribune Broadcasting Company
KHCW Inc.
KSWB Inc.
KPLR, Inc.
KTLA Inc.
KWGN Inc.
Tower Distribution Company
Tribune Broadcast Holdings, Inc.
Tribune Entertainment Company
Tribune Television Company
Channel 40, Inc.
Channel 39, Inc.
Tribune Television Holdings, Inc.
Tribune Television New Orleans, Inc.
Tribune Television Northwest, Inc.
WDCW Broadcasting, Inc.
WGN Continental Broadcasting Company
WPIX, Inc.
Homestead Publishing Company
Patuxent Publishing Company
Chicagoland Publishing Company
Tribune Direct Marketing, Inc.
Virginia Gazette Companies, LLC
E Z Buy & E Z Sell Recycler Corporation of Southern California
Forum Publishing Group, Inc.
Courant Specialty Products, Inc.
New Mass Media, Inc.
TMLH2, Inc.
Southern Connecticut Newspapers, Inc.
TMLS I, Inc.
Gold Coast Publications, Inc.
Distribution Systems of America, Inc.
Los Angeles Times Communications LLC
Tribune Manhattan Newspaper Holdings, Inc.
TMS Entertainment Guides, Inc.

Tribune Media Net, Inc.
Tribune National Marketing Company
ChicagoLand Television News, Inc.
5800 Sunset Productions Inc.
Tribune (FN) Cable Ventures, Inc.
WTXX Inc.
Chicago National League Ball Club, Inc.
Tribune California Properties, Inc.
California Community News Corporation
Hoy Publications, LLC

[guarantee]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0521016