TRIBUNE FINANCE, LLC

LIMITED LIABILITY COMPANY AGREEMENT

Dated as of May __, 2007

**TRIBUNE FINANCE, LLC**
a Delaware Limited Liability Company

**LIMITED LIABILITY COMPANY AGREEMENT**

THIS AGREEMENT is made and entered into as of May [•], 2007 by and between Tribune Finance, LLC, a Delaware limited liability company (the "Company"), and Tribune Company, a Delaware corporation and the sole member of the Company (the "Member").

**PRELIMINARY STATEMENT**

WHEREAS, on May 16, 2007, there was filed a Certificate of Formation with the Secretary of State of the State of Delaware to organize the Company under and pursuant to the Delaware Limited Liability Company Act, as amended (the "Act"); and

WHEREAS, in accordance with the Act, each of the Company and the Member desires to enter into this Agreement to set forth the rights, powers and interests of the Member with respect to the Company and to provide for the management of the business and operations of the Company.

NOW, THEREFORE, in consideration of the mutual promises and agreements made herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**ARTICLE I**

**ORGANIZATION**

1.1   Formation.  The Company has been organized as a Delaware limited liability company under and pursuant to the Act by the filing of a Certificate of Formation with the Office of the Secretary of State of Delaware as required by the Act. In the event of a conflict between the terms of this Agreement and the Certificate of Formation, the terms of the Certificate of Formation shall prevail.

1.2   Name.  The name of the Company is Tribune Finance, LLC. To the extent permitted by the Act, the Company may conduct its business under one or more assumed names deemed advisable by the Member.

1.3   Purposes.  The purposes of the Company are to engage in any activity and/or business for which limited liability companies may be formed under the Act. The Company shall have all the powers necessary or convenient to effect any purpose for which it is formed, including all powers granted by the Act.

1.4     Duration. The Company shall continue in existence until the Company shall be dissolved and its affairs wound up in accordance with the Act or this Agreement.

1.5     Registered Office and Registered Agent; Principal Office. (a) The registered office of the Company required by the Act to be maintained in the State of Delaware shall be the initial registered office named in the Certificate of Formation or such other office (which need not be a place of business of the Company) as the Member may designate from time to time in the manner provided by the Act.

(b)     The registered agent of the Company in the State of Delaware shall be the initial registered agent named in the Certificate of Formation or such other person or entity as the Member may designate in the manner provided by the Act.

(c)     The principal office of the Company shall initially be at 435 North Michigan Avenue, Chicago, IL 60611 or at such place as the Member may designate from time to time, which need not be in the State of Delaware, and the Company shall maintain records there for inspection as required by the Act. The Company may have such other offices as the Member may designate from time to time.

1.6     Qualification in Other Jurisdictions. The Member shall have authority to cause the Company to do business in jurisdictions other than the State of Delaware if such jurisdiction has enacted a limited liability company statute and the Member shall have approved the qualification of the Company under such statute to do business as a foreign limited liability company in such jurisdiction.

1.7     No State-Law Partnership. No provisions of this Agreement shall be deemed or construed to constitute the Company a partnership (including, without limitation, a limited partnership) or joint venture for any purposes.

## ARTICLE II

### RIGHTS, POWERS AND OBLIGATIONS OF THE MEMBER

2.1     Sole Member. The Member is the sole member of the Company. As of the date hereof, there are no other Members of the Company and no other person or entity has any right to take part in the ownership of the Company.

2.2     Authority. Each of the President, any Vice President, the Treasurer, any Assistant Treasurer, the Secretary or any Assistant Secretary of the Company or the Member shall have the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

2.3     Liability to Third Parties. The Member shall not be liable for the debts, obligations or liabilities of the Company, including under a judgment, decree or order of a court.

2.4 <u>Management of Business</u>. Except as otherwise expressly provided in this Agreement, the powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, the Member.

## ARTICLE III

## CAPITAL CONTRIBUTIONS; CAPITAL WITHDRAWALS

3.1 <u>Initial Contribution</u>. The Member shall make a contribution (the "Initial Contribution") to the Company of $10.00.

3.2 <u>Initial Membership Interest</u>. Upon making the Initial Contribution, the Member shall own 100% of the membership interests of the Company ("Membership Interests").

3.3 <u>No Further Required Capital Contributions</u>. The Member shall not be obligated to make any capital contributions other than the Initial Contribution.

3.4 <u>Withdrawal of Capital</u>. Except as otherwise provided herein or in the Act, the Member shall have no right to withdraw, or receive any return of, all or any portion of the Member's Initial Contribution.

3.5 <u>Interest</u>. No interest shall be paid by the Company on capital contributions.

## ARTICLE IV

## ALLOCATIONS

4.1 Because the Company is a business entity that has a single owner and is not a corporation, it is disregarded as an entity separate from its owner for federal income tax purposes under Section 301.7701-2(c)(2)(i) of the U.S. Treasury Regulations. Accordingly, all items of income, gain, loss, deduction and credit of the Company for all taxable periods will be treated for federal income tax purposes, and for state and local income and other tax purposes to the extent permitted by applicable law, as realized or incurred directly by the Member.

## ARTICLE V

## APPOINTMENT OF OFFICERS

5.1 As of the date of this Agreement, the executive officers of the Company are as follows, each of whom is appointed to the office set forth opposite his or her name to serve until his or her death, resignation or earlier removal by the Member:

| Name | Title(s) |
|---|---|
| Donald C. Grenesko | President |
| Chandler Bigelow III | Vice President |
| Crane H. Kenney | Secretary |
| Mark W. Hianik | Assistant Secretary |
| Chandler Bigelow III | Treasurer |
| R. Mark Mallory | Assistant Treasurer |
| Jack Rodden | Assistant Treasurer |
| Patrick M. Shanahan | Assistant Treasurer |

## ARTICLE VI

## MEETINGS OF MEMBERS

6.1   Meetings.  Meetings of Members shall not be required as long as the Member remains the sole member of the Company.

6.2   Action by Written Consent.  Any action that may be taken at a meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action to be taken, shall be signed and dated by the sole Member. Such consent shall have the same force and effect as a vote of the signing Member at a meeting duly called and held. No prior notice from the signing Member to the Company shall be required in connection with the use of a written consent pursuant to this Section 6.2.

## ARTICLE VII

## OWNERSHIP OF COMPANY PROPERTY

7.1   All interests, properties, whether real or personal, rights of any type owned or held by the Company, whether owned or held by the Company at the date of its formation or thereafter acquired (collectively, "Company Property"), shall be deemed to be owned by the Company as an entity, and no Member shall have any ownership interest in such Company Property or any portion thereof. Title to any or all Company Property may be held in the name of the Company or one or more nominees, as the Member may determine. All Company Property shall be recorded as the property of the Company on its books and records, irrespective of the name in which legal title to such Company Property is held.

## ARTICLE VIII

## BOOKS AND RECORDS

8.1   Books and Records of Account.  The Company shall maintain adequate books and records of account that shall be maintained on the accrual method of accounting.

8.2     Availability of Books of Account. All of the books of account of the Company shall at all times be maintained at the principal office of the Company, or at such other place or places as may be designated by the Member.

8.3     Company Tax Returns. The Company shall file all tax returns, if any, required to be filed by the Company.

8.4     Audits. The Company is not required to perform an audit each fiscal year but will do so if requested by the Member.

8.5     Fiscal Year. The fiscal year of the Company shall begin on the first Monday after the last Sunday in December of each year and end on the last Sunday in the following December.

## ARTICLE IX

## INDEMNIFICATION; LIMITATION OF LIABILITY

9.1     Limitation of Liability and Indemnification of the Member. (a) The Member (including, for all purposes of this Section 9.1, any officer, director, manager, managing member, member or employee of the Member, or any or their respective estates, heirs, personal representatives, receivers, trustees, successors, assignees and/or transferees, collectively, the "Member Parties" and each individually, a "Member Party") shall not be liable, responsible or accountable, in damages or otherwise, to the Company or any other person for: (i) any act performed, or the omission to perform any act, within the scope of the power and authority conferred on the Member by this Agreement and/or by the Act except by reason of acts or omissions found by a court of competent jurisdiction upon entry of a final judgment rendered and unappealable or not timely appealed ("Judicially Determined") to constitute fraud, gross negligence or reckless or intentional misconduct; (ii) the termination of the Company and this Agreement pursuant to the terms hereof; (iii) the performance by a Member Party of, or the omission by a Member Party to perform, any act which such Member Party reasonably believed to be consistent with the advice of attorneys, accountants or other professional advisers to the Company with respect to matters relating to the Company, including actions or omissions determined to constitute violations of law but which were not undertaken in bad faith; or (iv) the conduct of any person selected or engaged by such Member Party.

(b)     The Company, its receivers, trustees, successors, assignees and/or transferees shall indemnify, defend and hold the Member Parties harmless from and against any and all liabilities, damages, losses, costs and expenses of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by a Member Party (including amounts paid in satisfaction of judgments, in settlement of any action, suit, demand, investigation, claim or proceeding ("Claim"), as fines or penalties) and from and against all legal or other costs as well as the expenses of investigating or defending against any Claim or threatened or anticipated Claim arising out of, connected with or relating to this Agreement, the Company or its business affairs in any way; provided, that the conduct of such Member Party which gave rise to such

Claim would not have resulted in liability to such Member Party under the standards set forth in Section 9.1(a).

(c) A Member Party shall be entitled to receive and shall receive, upon application therefor, advances to cover the costs of defending or settling any Claim or any threatened or anticipated Claim against such Member Party that may be subject to indemnification hereunder upon receipt by the Company of an undertaking by or on behalf of such Member Party to repay such advances to the Company, without interest, if such Member Party is Judicially Determined not to be entitled to indemnification under Section 9.1(b).

(d) All rights of a Member Party to indemnification under this Section 9.1 shall (i) be cumulative of, and in addition to, any right to which the Member Parties may be entitled by contract or as a matter of law or equity, and (ii) survive the dissolution, liquidation or termination of the Company as well as the removal, bankruptcy, dissolution or insolvency of such Member Party.

(e) The termination of any Claim or threatened Claim against a Member Party by judgment, order, settlement or upon a plea of *nolo contendere* or its equivalent shall not, of itself, cause such Member Party not to be entitled to indemnification hereunder. A Member Party shall be entitled to receive indemnification as provided herein unless and until Judicially Determined not to be so entitled.

(f) Notwithstanding any of the foregoing to the contrary, the provisions of this Section 9.1 shall not be construed so as to permit the indemnification of a Member Party to the extent (but only to the extent) that such indemnification would be inconsistent with the requirements of the Act, but shall be construed so as to effectuate the provisions of this Section 9.1 to the fullest extent permitted by the Act.

9.2 **Limit on Liability of Member.** The indemnification set forth in this Agreement shall in no event cause the Member to incur any personal liability beyond its total capital contribution, nor shall it result in any liability of the Member to any third party.

## ARTICLE X

## DISSOLUTION AND WINDING UP

10.1. **Events Causing Dissolution.** The Company shall be dissolved upon the first of the following events to occur:

(a) The written consent of the Member at any time to dissolve and wind up the affairs of the Company; or

(b) The occurrence of any other event that causes the dissolution of a limited liability company under the Act.

10.2. <u>Winding Up</u>. If the Company is dissolved pursuant to <u>Section 10.1</u>, the Company's affairs shall be wound up as soon as reasonably practicable as determined by the Member.

10.3 <u>Distributions on Liquidation</u>. (a) Upon completion of all desired sales of Company assets, and after payment of all selling costs and expenses, the proceeds of such sales, and any Company assets that are to be distributed in kind, will be distributed to the following groups in the following order of priority: (i) to satisfy Company liabilities to creditors; (ii) to satisfy Company obligations to the Member; and (iii) to the Member, in proportion to its percentage interest. All distributions required under this <u>Section 10.3</u> shall be made to the Member within 90 days after the date of such liquidation.

(b) The claims of each priority group specified above shall be satisfied in full before satisfying any claims of a lower priority group. If the assets available for disposition are insufficient to dispose of all claims of a priority group, the available assets shall be distributed in proportion to the amounts owed to each creditor or Membership Interests in such group.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.1 <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which will constitute one and the same agreement.

11.2 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersedes any prior agreement and understanding of the parties relating to such subject matter. This Agreement supersedes any and all other agreements, either oral or written, between such parties with respect to the subject matter hereof.

11.3 <u>Partial Invalidity</u>. Wherever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law, but in case any one or more of the provisions contained herein shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions hereof, unless such a construction would be unreasonable.

11.4 <u>Amendment</u>. This Agreement may be amended, supplemented or modified only by a written agreement executed by the Member.

11.5 <u>Binding Effect; Benefit</u>. This Agreement shall be binding upon and shall inure to the benefit of all of the parties hereto, all persons indemnified hereunder and their respective estates, permitted successors, transferees, custodians, executors, administrators, legal representatives, heirs and permitted assignees.

11.6 <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the local, internal laws of the State of Delaware. In particular, this Agreement is intended to comply with the requirements of the Act and the Certificate of Formation of the Company. In the event of a direct conflict between the provisions of this Agreement and the mandatory provisions of the Act or any provision of the Certificate of Formation of the Company, the Act and the Certificate of Formation of the Company, in that order of priority, will control.

11.7 <u>Headings and Captions</u>. All headings and captions contained in this Agreement are included for convenience of reference only and shall not be deemed a part of this Agreement.

11.8 <u>Terms Generally</u>. The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined. The term "and/or" is used herein to mean both "and" as well as "or." The use of "and/or" in certain contexts in no respects qualifies or modifies the use of the terms "and" or "or" in others. "Or" shall not be interpreted to be exclusive unless the context otherwise requires; and "and" shall not be interpreted to require the conjunctive, in each case unless the context otherwise requires. The terms "include" and "including" are to be construed as non-exclusive (so that, by way of example and for the avoidance of doubt, "including" shall mean "including without limitation"), in each case unless the context otherwise requires.

11.9 <u>Creditors</u>. None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any creditor of the Member or of the Company. No creditor who makes a loan to the Member or to the Company may have or acquire, solely as a result of making such loan, any membership interest or interest in the profits or property of the Company, other than such membership interest or interest in the profits or property of the Company that may be expressly granted to such creditor, with the written consent of the Member, pursuant to the terms of such loan.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date first above written.

TRIBUNE FINANCE, LLC

By: *[signature: Bigelow]*

Its: _____

SOLE MEMBER:

TRIBUNE COMPANY

By: *[signature: Bigelow]*

Its: _____