From: CN=Jeff Sell/O=JPMCHASE
Date: 03/28/2007 09:59:47 PM
To: CN=Brian Sankey/O=JPMCHASE@JPMCHASE
Subject: Fw: Zell

I mentioned several weeks ago, I approved ( subject to ESOP particulars) our 1/3 participation in the leveraged buy-out of the Tribune via an ESOP sponsored by Sam Zell. Given the ESOP structure, leverage is at the limit and the company's management is probably B at best. Counterbalancing these negatives is Zell's reputation as a sponsor and the nature and marketability of the broadcasting /publishing asset base. The deal is proposed to be done in two stages, stage one a leveraging of the present company ( present corporate structure ) with approximately $4.2B of new money with a amortization profile so that if the second stage doesn't happen, the first stage financing can stand alone. Stage two is an additional $4.2B in debt utilizing an ESOP trust (owned by the employees ).
Yesterday, the deal team informed me that over the weekend, the company, Merrill and Citi discovered that the exiting debt indentures ( some of the existing debt will remain in the capital structure junior in order of repayment due to the fact that the new debt will have operating subsidiary guarantees that exiting debt doesn't enjoy ) require that separate financial statements are required for each legal entity if we take the security envisioned in the original approval ( pledge of the stock of the operating subs.) The company says they produce statements by line of business and can't produce legal entity statements. Merrill and Citi served up a structure which they have already approved which would give up the pledge of the stock of the operating subsidiaries and replace that security with a pledge of the stock of a new intermediate holding company for the publishing assets which would hold a single asset, an inter-company note in the amount t of $4.2B. We would continue to have guarantees of the operating subsidiaries which will provide us with a superior claim vis a vis the existing debt. The rub in the new structure is that the value of the collateral offered is less than the face value of the secured debt. The new bank debt would be partially secured. Under the bankruptcy laws we would not be entitled to post petition interest if we are only partially secured. The repayment of our principal would be assured via the guarantees of the operating subsidiaries but interest post petition could not be claimed by secured debt since by definition the face of note is less than face of debt . Properly disclosed, Andy is highly confident we can sell stage one debt which would be syndicated in the next two -three months. My concern is that the $4.2B stage two financing is not envisioned to be consummated until next May. 50% of the $4.2 B is expected to be senior secured debt and 50% unsecured bonds. No problem with bonds since they will have subordinated guarantees, the rub is that the senior secured may not be able to be placed because of lack of full security. We could flex $1..5B of $2B into additional unsecured bonds but that would leave us stuck with 1/3 of a $.5B senior bridge if spreads widen and investors become more discerning. As I said , I'm not concerned in the short term ( I agree with Andy ) , its the second stage a year down the road. I'm comfortable the guarantees would give us assurance of

Highly Confidential - Attorneys' Eyes Only

JPM_00353676

repayment of principal ,,,,it's the interest post petition.   I feel this second bridge has a possibility of being hung if markets tighten. I've given up my crystal ball forecasting when that will happen but eventually it will.  Andy is highly confident in stage two but acknowledges it could be a tough syndication.  I've told the team I'm not comfortable approving the new structure for the reasons cited but would understand if Senor Mangernnt wanted to do this to further the Zell realtionship.  It's a question of lost income and leverage in a bankruptcy negotiation.  Can we talk tomorrow am at 7:30 NY time??
----- Forwarded by Jeff Sell/JPMCHASE on 03/28/2007 08:40 PM ----- Special Credits Group - Tel 212-270-0552 Fax 212-270-0427

**Jeff Sell/JPMCHASE**

02/26/2007 03:17 PM

fyi.  see update below.   Our commitment is still subject to due diligence of ESOP particulars.
----- Forwarded by Jeff Sell/JPMCHASE on 02/26/2007 03:15 PM -----

**Rajesh Kapadia/JPMCHASE**

02/26/2007 03:03 PM

Sent from my BlackBerry Wireless Handheld
   Inactive hide details for Brit J BartterBrit J Bartter

        From: Brit J Bartter
        Sent: 02/26/2007 01:51 PM CST
        To: Jamie Dimon; James Lee; Douglas Braunstein;
     Jennifer Nason
        Cc: Rajesh Kapadia; Joachim Sonne
        Subject: Zell

Team,
Raj, Joachim and I had lunch today with the Zell team working on the TRB project.  Officially, they have not heard anything from the Special Committee or its advisor (MS) following Saturday's Board Mtg. At the same time, work at the working group level continues so they are confident that they are still in it. Apparently, in this situation, given the failed auction of the company and the extremely strained Board dynamics, management is potentially less able than normal to direct the outcome here. The Special

Highly Confidential - Attorneys' Eyes Only

JPM_00353677

Committee is being very careful to have a smart but certain outcome this time around. The Zell team is working to remove any impediments to their offer not being perceived as fully baked. The next Board meeting is Saturday, March 10th. As time progresses, the hope is that the Zell proposal will be better understood and perceived as more and more nearly complete. They believe the Board has set the end of March as their deadline to chose a path.

Brit

Brit J. Bartter
Vice Chairman
J.P. Morgan Securities Inc.
227 West Monroe Street, Suite 2800
Chicago, IL 60606
Telephone: 312-541-4216
Facsimile:   312-541-3429
Cellular:    847-715-8570
brit.j.bartter@jpmorgan.com

Highly Confidential - Attorneys' Eyes Only

JPM_00353678