
**RatingsDirect**

RESEARCH

Recovery Report:

# Tribune Co.'s Secured Financing

| | |
|---|---|
| **Publication date:** | 19-Apr-2007 |
| **Primary Credit Analyst:** | Peggy Hwan Hebard,CFA,CPA, New York (1) 212-438-2319; peggy_hebard@standardandpoors.com |
| **Secondary Credit Analyst:** | Emile Courtney, CFA, New York (1) 212-438-7824; emile_courtney@standardandpoors.com |

On April 19, 2007, Standard & Poor's Ratings Services assigned its loan and recovery ratings to Chicago, Ill.-based Tribune Co.'s proposed approximate $10.1 billion bank facility (see table 1 for the breakdown of tranches). The loan was rated 'BB-' (at the same level as the corporate credit rating on Tribune) with a recovery rating of '2', indicating the expectation for substantial (80%-100%) recovery of principal in the event of a payment default. Concurrently, the 'BB-' loan rating was placed on CreditWatch with negative implications in accordance with the corporate credit rating on the company.

The 'BB-' corporate credit rating (and other ratings) on Tribune remains on CreditWatch with negative implications as the company completes a leveraged buyout transaction valued at just under $14.5 billion (incorporating the assumption or repayment of approximately $5.7 billion of debt, which includes the principal amount of Tribune's PHONES). Furthermore, based on our analysis of the proposed capital structure, we have determined that if shareholders approve the transaction as outlined, we would lower the corporate credit rating to 'B' with a stable outlook. Under these circumstances, the bank loan rating would also be lowered to 'B'.

The rating on Tribune's existing unsecured notes are currently rated 'BB-'. Upon the close of the proposed bank transaction, Standard & Poor's will lower the rating on these unsecured notes to 'B' from 'BB-'. This rating will remain on CreditWatch with negative implications and will be lowered further to 'CCC+' if shareholder approval for the LBO is obtained. While these notes will benefit from the same security package as the proposed bank facility due to negative pledge covenants in existing bond indentures, they will not benefit from upstream guarantees from the company's operating subsidiaries as is the case with the bank facility, which will benefit from a senior guarantee. Also, given the amount of priority debt ahead of these notes, we will assign them a recovery rating of '5' upon the close of the proposed bank transaction, indicating the expectation for negligible (0%-25%) recovery of principal in the event of a payment default.

Proceeds from the new credit facilities (other than the revolving credit facility) and the expected $2.1 billion unrated bridge facility (or senior unsecured notes), combined with $315 million of cash from Zell and $215 million option proceeds, would be used, among other things, to repurchase the outstanding public shares of Tribune and repay existing bank debt, as well as for related fees and expenses. The $263 million delayed-draw term loan B would be available to help repay maturing medium-term notes in 2008.

Table 1

| Tribune Co.--Credit Profile | | | | | |
|---|---|---|---|---|---|
| **Corporate credit rating** | BB-/Watch Neg/-- | | | | |
| **Facility/Issue** | **Issue rating** | **Recovery rating** | **Expected recovery** | **Maturity** | **Repayment** |
| $750M revolving credit facility | BB-/Watch Neg | 2 | 80-100 | 2013 | Bullet |
| $7,015M term loan B | BB-/Watch Neg | 2 | 80-100 | 2014 | 1% annually; balance at maturity |

Table 1

| Tribune Co.--Credit Profile (cont.) | | | | | |
|---|---|---|---|---|---|
| $263M delayed-draw term loan | BB-/Watch Neg | 2 | 80-100 | 2014 | 1% annually; balance at maturity |
| $2,105M incremental term loan B | BB-/Watch Neg | 2 | 80-100 | 2014 | 1% annually; balance at maturity |

A summary of the terms and conditions of the credit facilities is provided in table 3. Important considerations are as follows:

- The collateral for the credit facilities will consist of the pledge of the stock from two of Tribune's subsidiaries, Tribune Broadcasting Holdco LLC and Tribune Finance LLC. This constitutes a weaker claim to the full value of the company than a direct lien on the assets of the subsidiaries. While Tribune Broadcasting Holdco LLC directly owns the broadcasting assets, Tribune Finance LLC does not directly own the publishing assets. Tribune Finance LLC, however, has a note receivable from the publishing subsidiary in an amount of at least $3 billion. This collateral will be shared on a pro rata basis with Tribune's existing senior unsecured debt, which will become secured, and is expected to total about $1.5 billion pro forma for the refinancing as outlined in table 1;
- The credit facilities will benefit from an upstream guarantee from certain of Tribune's subsidiaries, which will provide the holders of this debt with a direct claim against the operating subsidiaries that is structurally superior to the pledge of the subsidiary stock as collateral. As such, our analysis considers the credit facilities to have a higher priority claim to the value of the company than the secured notes if Tribune were to default. Because the subsidiary guarantees will be unsecured, however, the credit facilities will rank pari passu with any other unsecured claims at the subsidiary level;
- Step 2 of the transaction contemplates raising an additional $2.1 billion by borrowing under a new unrated senior unsecured bridge facility or using $2.1 billion of new senior unsecured notes. Such debt is expected to benefit from subsidiary guarantees, but these guarantees are expected to be senior subordinated guarantees and, thus, junior to the guarantees supporting the credit facilities; and
- The existing senior unsecured debt and subordinated debt (PHONES) will not benefit from a guarantee from the subsidiaries.

## Recovery Analysis

Table 2

| Tribune Co.--Simulated Default/Valuation Variables | | | | | |
|---|---|---|---|---|---|
| Corporate credit rating | BB-/Watch Neg/-- | | | | |
| --Simulation default-- | | --Valuation-- | | --Results-- | |
| Years to default | 3 (the end of fiscal 2009) | Emergence capital structure (debt/equity) | 70%/30% | Unadjusted value | $9,812 million |
| LIBOR rise | 150 bps | Cost of equity | 15.0% | Priority claims | $687 million |
| LIBOR margin increase | 350 bps | Effective tax | 20.0% | Adjusted value | $9,075 million |
| Default first-lien debt | $9,251 million | After-tax cost of debt | 8.3% | | |
| Default EBITDA (F2009) | $1,141 million | Weighted avg cost of capital | 10.3% | Estimated principal recovery of first-lien facilities | 80%-100% |
| Revenue growth rate | 2007: (8.5)%; 2008: (1.4)%; 2009: (2.7)% | Equivalent EBITDA multiple | 8.0x | | |
| EBITDA margin | 2007: 25.9%; 2008: 25.2%; 2009: 23.9% | Unlevered free cash flow at default | $1,011 million | | |

Standard & Poor's. All rights reserved. No reprint or dissemination without S&Ps permission. See Terms of Use/Disclaimer on the last page.
Standard & Poor's | RatingsDirect                                                                                              Page 2 of 5
573997 | 300116450

rofessionals' Eyes Only                                                                                                    TRB0125761

**Table 2**

| Tribune Co.--Simulated Default/Valuation Variables (cont.) |  |
| --- | --- |
| Maintenance capex | $90 million |

### Simulated default scenario

Pro forma for Tribune's LBO, the company will have a highly leveraged capital structure, with 2007 debt to EBITDA (adjusted for operating leases and the PHONES) of 8.9x. This will weaken Tribune's debt service coverage ratios and cash generating capability, although its liquidity will benefit from substantial borrowing capacity on its revolving facility. Operationally, the company's results will still rely on the health of the publishing and broadcast advertising revenue climate, which is sensitive to economic cycles and is in the midst of a secular shift.

Given these risks, our default scenario contemplates that the sector downturn is more prolonged and pronounced than the company's expectations and other recent downturns. In our scenario, default was driven by a continued decline in advertising and circulation revenues, coupled with volatility in broadcast and entertainment revenues, as these are the key drivers to the company's revenue and EBITDA. More specifically, our analysis assumed the following:

- Publishing adverting revenues decline 7% in 2007, 4% in 2008, and 4% in 2009;
- Circulation revenues decrease 5% in 2007, 5% in 2008, and 5% in 2009;
- Broadcast and entertainment revenues fall 16% in 2007, increase 3% in 2008 (driven by increased political advertising), and decline in 3% in 2009;
- Step 2 of the transaction is completed by the end of 2007 and includes borrowing the $2.105 billion incremental term loan B and $2.1 billion unsecured bridge facility (or issuance of $2.1 billion of senior unsecured notes) as previously outlined;
- The Chicago Cubs and Comcast SportsNet divestitures are completed by the end of 2007, with the net proceeds used to repay a portion of the credit facilities;
- The $263 million delayed-draw term loan is drawn in 2008 and used to repay the maturing $263 million of medium-term notes;
- Capital expenditures total $100 million in 2007, $90 million in 2008, and $90 million in 2009;
- LIBOR rises by 150 basis points;
- The credit facilities' interest rates increase by 150 basis points to reflect the higher risk resulting from the borrowers simulated credit deterioration; and
- A fully drawn revolving credit facility at the time of default.

The impact of these assumptions on Tribune's consolidated revenue and EBITDA and other modeling assumptions are highlighted in table 2. Under our scenario, the company is expected to default in 2009, when its cash flow and revolving credit capacity are unable to cover its interest expense, capital expenditures, and working capital needs.

### Valuation

Standard & Poor's believes that Tribune would reorganize if it experienced a payment default given its strong competitive positions in the newspaper publishing and broadcasting industries. To value the company, we assumed a perpetual free cash flow growth rate of 0%, reflecting the mature nature of the newspaper business and rising competition from alternative media. These discounted cash flow assumptions produce an enterprise value of approximately $9.1 billion (after accounting for priority claims of about 7% for administrative expenses and other priority claims, such as capitalized lease obligations), which is equivalent to an EBITDA multiple of 8.0x. This is less than Tribune's purchase multiple of about 10x, but is aligned with our default scenario, reflecting rising competition from alternative media.

### Results

This valuation is sufficient to provide recovery in the high 90% area to lenders of the credit facilities, before considering the potential for other unsecured claims against the subsidiaries. Other potential unsecured subsidiary claims could include deficiency claims for rejected operating leases, pension or union employee contracts, or terminated broadcasting rights. Even with the potential for such claims, we still feel that the value of the company is sufficient to provide the credit facilities' lenders with an

80%-100% recovery of principal in our simulated default scenario. Given this recovery level and that the existing senior unsecured debt would be structurally subordinated to the senior secured credit facilities, we expect the senior unsecured debt to have negligible (0%-25%) principal recovery prospects.

**Table 3**

| Transaction Summary | |
|---|---|
| Borrower(s) | Tribune Company |
| Guarantor(s) | Certain domestic subsidiaries of the borrower |
| Structure | The loan consists of a $750 million six-year revolving credit facility, a $7.015 billion initial seven-year term loan B, a $263 million seven-year delayed-draw term loan B, and a $2.105 seven-year term loan B. The revolving credit facility will not amortize and will be due in full at maturity, and the term loans will amortize in equal quarterly installments at a rate of 1% annually, with the balance due at maturity. |
| Security package | Stock of Tribune Finance LLC and Tribune Broadcasting Holdco LLC |
| Financial covenants | Total guaranteed maximum debt to EBITDA of 9.0x for 2007, 9.0x for 2008, 8.75x for 2009, 8.5x for 2010, and 8.25x in 2011. Total EBITDA coverage of interest expense of 1.10x for 2007, 1.15x for 2008, 1.20x for 2009, and 1.25x for 2010 and thereafter. |

Standard & Poor's. All rights reserved. No reprint or dissemination without S&Ps permission. See Terms of Use/Disclaimer on the last page.

rofessionals' Eyes Only                                                                                                         TRB0125763

Copyright © 2007, Standard & Poors, a division of The McGraw-Hill Companies, Inc. (S&P). S&P and/or its third party licensors have exclusive proprietary rights in the data or information provided herein. This data/information may only be used internally for business purposes and shall not be used for any unlawful or unauthorized purposes. Dissemination, distribution or reproduction of this data/information in any form is strictly prohibited except with the prior written permission of S&P. Because of the possibility of human or mechanical error by S&P, its affiliates or its third party licensors, S&P, its affiliates and its third party licensors do not guarantee the accuracy, adequacy, completeness or availability of any information and is not responsible for any errors or omissions or for the results obtained from the use of such information. S&P GIVES NO EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. In no event shall S&P, its affiliates and its third party licensors be liable for any direct, indirect, special or consequential damages in connection with subscribers or others use of the data/information contained herein. Access to the data or information contained herein is subject to termination in the event any agreement with a third-party of information or software is terminated.

Analytic services provided by Standard & Poor's Ratings Services (Ratings Services) are the result of separate activities designed to preserve the independence and objectivity of ratings opinions. The credit ratings and observations contained herein are solely statements of opinion and not statements of fact or recommendations to purchase, hold, or sell any securities or make any other investment decisions. Accordingly, any user of the information contained herein should not rely on any credit rating or other opinion contained herein in making any investment decision. Ratings are based on information received by Ratings Services. Other divisions of Standard & Poor's may have information that is not available to Ratings Services. Standard & Poor's has established policies and procedures to maintain the confidentiality of non-public information received during the ratings process.

Ratings Services receives compensation for its ratings. Such compensation is normally paid either by the issuers of such securities or third parties participating in marketing the securities. While Standard & Poor's reserves the right to disseminate the rating, it receives no payment for doing so, except for subscriptions to its publications. Additional information about our ratings fees is available at www.standardandpoors.com/usratingsfees.

Any Passwords/user IDs issued by S&P to users are single user-dedicated and may ONLY be used by the individual to whom they have been assigned. No sharing of passwords/user IDs and no simultaneous access via the same password/user ID is permitted. To reprint, translate, or use the data or information other than as provided herein, contact Client Services, 55 Water Street, New York, NY 10041; (1)212.438.9823 or by e-mail to: research_request@standardandpoors.com.

Copyright © 1994-2007 Standard & Poors, a division of The McGraw-Hill Companies. All Rights Reserved.    The McGraw-Hill Companies