themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, whether arising pursuant to this resolution or otherwise, if required by the Commitments, grant, transfer, pledge, mortgage, assign, or otherwise hypothecate to the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, or deed in trust for its and/or their benefit, any assets belonging to the Company, including without limitation the capital stock of each of the direct and indirect subsidiaries of the Company, to secure all indebtedness under the Secured Facilities at any time owing to the Credit Facilities Agents, individually and/or as agents for themselves and the other lenders that may participate in the Secured Facilities and, if required by the Commitments, to execute and deliver to the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, any and all grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements; said instruments, and the promissory notes and other instruments and agreements referred to in the preceding paragraph, may contain such provisions, covenants, recitals and agreements as the Credit Facilities Agents, individually and/or as agents for themselves, the other lenders that may participate in the Secured Facilities and each party that may act as a counterparty to an Interest Rate Hedging Transaction, may require and any of said officers may approve, and the execution thereof by said officers shall be conclusive evidence of such approval;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to, as security for the indebtedness and other obligations of the Company to one or more trustees on behalf of the noteholders holding certain of the Company's outstanding senior notes (the "Existing Notes"), if required by the indentures pursuant to which such Existing Notes were issued, grant, transfer, pledge, mortgage, assign, or otherwise hypothecate to such trustee(s) for the benefit of such noteholders, or deed in trust for its and/or their benefit, any assets belonging to the Company as are pledged to Credit Facilities Agents, individually and/or as agents for themselves and the other lenders that may participate in the Secured Facilities, pursuant to the Secured Facilities, to secure, on an equal and ratable basis, all indebtedness at any time owing to such noteholders under such indentures and, if required by such indentures, to execute and deliver to such trustees on behalf of such holders of Existing Notes, any and all grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements; said instruments, and the promissory notes and other instruments and agreements referred to in the preceding paragraph, may contain such provisions, covenants, recitals and agreements as are contained in the grants, transfers, pledge agreements, mortgages, deeds of trust, financing statements, security agreements and other hypothecation agreements executed and delivered pursuant to the Secured Facilities and any of said officers may approve, and the execution thereof by said officers shall be conclusive evidence of such approval;

**FURTHER RESOLVED**, that the performance by the Company of its obligations under the Commitments, the Credit Facilities and the Interest Rate Hedging Transactions and any

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533555

agreements or documents referred to herein or therein be, and it hereby is, ratified, confirmed, approved and adopted in all respects;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each hereby is, authorized to file, execute, verify, acknowledge and deliver, for and on behalf of the Company, any and all notices, certificates, agreements, amendments, instruments and other documents and to perform or do or cause to be performed or done any and all such acts or things and to pay or cause to be paid all necessary fees and expenses, in each case in the name and on behalf of the Company, as they or any of them may deem necessary or advisable to enable, effectuate or carry out the provisions of each of the Commitments or the intentions and purposes of the foregoing resolutions in connection with the Credit Facilities and the Interest Rate Hedging Transactions, the taking of any such action to be deemed conclusive evidence that the Board and the Company have authorized such action; and

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized for and on behalf of the Company to designate such individual employee(s) of the Company as they deem appropriate to execute and deliver on behalf of the Company certificates, reports and other documents as may be required from time to time in conjunction with the Commitments and the Credit Facilities and the Interest Rate Hedging Transactions, and the actions of such individual(s) shall be binding and enforceable against the Company.

## Capital Markets Debt Issuances

**FURTHER RESOLVED**, that the Board of Directors hereby authorizes and approves the issuance and sale by the Company from time to time, in one or more public or Rule 144A or other privately negotiated offerings, of up to $2.1 billion (in aggregate principal amount, or, if issued at an original issue discount, in aggregate offering price or purchase price, in U.S. dollars or the equivalent in foreign denominated currency or composite currency) (the "Authorized Amount") of unsecured notes, debentures or other debt securities (which may be senior, subordinated, senior subordinated, junior subordinated or any combination of the foregoing) ("Debt Securities") and/or warrants to purchase Debt Securities ("Warrants"). Such Debt Securities and Warrants are collectively referred to herein as the "Securities." The Securities shall be created, issued and sold, subject to the limitations set forth in this resolution, on such terms and conditions as shall be determined by the Special Committee of members of this Board established in the resolution immediately following this resolution;

**FURTHER RESOLVED**, that the officers of the Company are severally authorized and directed to prepare and execute, in the name and on behalf of the Company, a Registration Statement on Form S-3, or other appropriate form under the Securities Act of 1933, as amended (the "Securities Act"), for the registration of the Securities up to the Authorized Amount (the "Registration Statement") and the qualification under the Trust Indenture Act of 1939, as amended, of an indenture providing for the issuance of the Debt Securities. Upon execution of the Registration Statement by a majority of the directors of the Company, the officers of the Company are directed to cause the Registration Statement to be filed with the Securities and

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0533556

Exchange Commission (the "SEC") (which registration may, but shall not be required to, be made pursuant to Rule 415 of the Securities Act), and to execute and file, in the name and on behalf of the Company, all such other certificates, instruments and documents, to make all such payments and do all such other acts and things, including the execution and filing of amendments or post-effective amendments (including any registration statements or other filings under Rule 462 of the Securities Act) to the Registration Statement and amendments or supplements to any prospectus constituting a part thereof, as they may deem necessary or desirable;

**FURTHER RESOLVED,** that each officer and director of the Company who may be required to execute the Registration Statement or any amendment thereto or document in connection therewith (whether for and on behalf of the Company or otherwise) is authorized and empowered to execute a power of attorney appointing Chandler Bigelow, Donald C. Grenesko and Crane H. Kenney, or any of them, his or her true and lawful attorney-in-fact and agent to sign in his or her name, place and stead, in any such capacity, any and all amendments (including post-effective amendments) to the Registration Statement and any and all other documents in connection therewith, and to file the same with the SEC, said attorney-in-fact to have the power and authority to do and perform, in the name and on behalf of such officers and directors who shall have executed such a power of attorney, every act whatsoever that such attorney may deem necessary, appropriate or advisable to be done in connection therewith as fully as such officers and directors might or could do in person;

**FURTHER RESOLVED,** that the senior Vice President, General Counsel and Secretary of the Company, or his appointed designee, is designated as the agent for service who shall be duly authorized to receive communications and notices from the SEC with respect to the Registration Statement and with the powers conferred upon him as agent therefore by the Securities Act and the rules and regulations of the SEC thereunder;

**FURTHER RESOLVED,** there is hereby established a Special Pricing Committee of directors, consisting of Messrs. FitzSimons, Hernandez, Morrison, Osborn and Stinehart, to provide for the issuance of the Securities from time to time. The Special Pricing Committee is hereby expressly authorized (with the full power of delegation to one or more officers of the Company), with the full power of this Board to the extent provided by law, to consider all matters and to take and authorize to be taken any and all action which might otherwise be taken or authorized by this Board in connection with the offering, sale, issuance and registration of the Securities, including, without limitation, to authorize one or more issues of such Securities and in connection with any such issue to determine, approve or appoint (as applicable): (a) the type, title, designation and form of the Securities, provided that no Securities shall be secured by or convertible into any equity securities of the Company; (b) the aggregate principal amount and denominations; (c) the maturity or maturities, including the terms of any extension thereof; (d) the mode of sale and distribution and, as applicable, the particular underwriters, managing underwriters, agents, dealers and purchasers; (e) the form of any indenture, warrant agreement or underwriting, agency, sales, dealer and/or purchase agreement; (f) the price to be received by the Company for the Securities (which may reflect an original issue discount), and any public offering price or privately negotiated sale price, discount or commission paid or allowed in

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only
TRB0533557

connection therewith; (g) the interest rate or rates, if any, or the formula by which such rate or rates may be established and the dates from which such interest shall accrue; (h) any sinking fund or similar redemption requirement and related redemption prices; (i) optional redemption rights, if any, of the Company or the holders of Securities, and related redemption prices and/or limitations; (j) exchange rights, if any, of the Company or holders of Securities and/or limitations; (k) the ranking of such Securities (senior or subordinated) and, if applicable, the subordination provisions of any subordinated Debt Securities; (l) defeasance provisions, if any; (m) the applicable currency or composite currency, and related payment terms; (n) in the case of Warrants, the designation and amount of Debt Securities for which they are exercisable, and the dates, price and other terms of such exercise; (o) additional affirmative or restrictive covenants, if any, to be imposed on the Company with respect to any Securities; (p) any trustees, warrant agents, authentication, calculation, transfer or paying agents and registrars and such other agents as the Special Committee shall deem appropriate (q) any events of default; and (r) such other terms, conditions and provisions, not inconsistent herewith, as the Special Pricing Committee shall deem appropriate;

**FURTHER RESOLVED,** that the proper officers, be and they are each hereby authorized, directed and empowered, in the name of the Company, to execute and deliver for the benefit of each counterparty to the Interest Rate Hedging Transactions ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments evidencing the obligations of the Company under such Interest Rate Hedging Transactions, and each of said Authorized Officers are authorized to from time to time execute renewals, extensions and/or amendments of said ISDA master agreements, confirmations, schedules, joinder agreements, pledge agreements, security agreements, financing statements or other agreements or instruments;

**FURTHER RESOLVED,** that the proper officers are severally authorized to execute, attest and deliver, in the name and on behalf of the Company, an appropriate indenture or indentures and an appropriate warrant agreement or warrant agreements in substantially the forms as approved by the Special Pricing Committee, including indentures and warrant agreements supplemental thereto in forms as approved by the Special Pricing Committee with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they may deem necessary or advisable to make any indenture or warrant agreement the valid and effective act and agreement of the Company, including, without limitation, any and all acts necessary or appropriate to qualify any indenture under the Trust Indenture Act of 1939, as amended;

**FURTHER RESOLVED,** that the proper officers are severally authorized to execute, in the name and on behalf of the Company, appropriate underwriting agreements, agency agreements, sales agreements, dealer agreements and/or purchase agreements (collectively, the "Sales Agreements"), substantially in the form as approved by the Special Pricing Committee, with such changes as the executing officers may approve, such approval to be conclusively evidenced by such execution, and such officers are severally authorized to perform any and all acts that they

13

may deem necessary or advisable to make any Sales Agreement the valid and effective act and agreement of the Company;

**FURTHER RESOLVED,** that the proper officers are severally authorized to execute the Securities (including any Securities issued in global form), under the corporate seal of the Company attested by its Secretary or Assistant Secretary, and to cause the Securities to be delivered to the trustee or warrant agent therefor, together with an executed authentication and delivery request from the Company, for authentication and delivery by such trustee or warrant agent in accordance with such request. The signatures of the proper officers and the Company seal appearing on the definitive Debt Securities and Warrant Certificates may be engraved, lithographed or facsimiles, and the Company adopts for such purpose the facsimile seal of the Company and the facsimile signatures of Dennis J. FitzSimons, Donald C. Grenesko, Chandler Bigelow and Crane H. Kenny, as Chairman, President and Chief Executive Officer, Senior Vice President/Finance and Administration, Vice President and Treasurer and Senior Vice President, General Counsel and Secretary, respectively, whether or not any of such persons actually holds such office at the time Securities are executed, authenticated or delivered;

**FURTHER RESOLVED,** that the proper officers of the Company are severally authorized to provide for the filing of a registration statement on Form 8-A under the Securities Exchange Act of 1934, as amended, to be filed with the SEC in connection with the listing of one or more issues of Securities on the New York Stock Exchange, to file an application, and amendments thereto as necessary, with the New York Stock Exchange for the listing of such Securities on such Exchange upon official notice of issuance, to execute and deliver, in the name and on behalf of the Company, such other documents and agreements (including, without limitation, indemnity agreements in form acceptable to such Exchange for the purpose of such listings),to appear before the staff of such Exchange with authority to make such changes in any such application, or to make or amend such documents and agreements relative thereto, as may be necessary to conform with the listing requirements of such Exchange and to take such other action as such officers may deem necessary or advisable to list the Securities on such Exchange; and

**FURTHER RESOLVED,** that the proper officers are severally authorized to determine the states and such other jurisdictions (including, without limitation, foreign jurisdictions) in which appropriate action shall be taken to qualify or register for sale (or exempt therefrom) all or such part of the Securities as the proper officers may deem advisable. The proper officers are severally authorized to perform on behalf of the Company any and all such acts as they may deem necessary or advisable in order to comply with the applicable laws of any such states or other jurisdictions, and in connection therewith to execute and file all requisite papers and documents (including, without limitation, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process); and the execution by such officers of any such paper or document or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefor from the Company and the approval and ratification by the Company of the papers and documents so executed and the action so taken, and any resolution of this Board that is required or appropriate in connection

14

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0533559

therewith shall be deemed to have been adopted by this resolution and may be so certified by the Secretary or Assistant Secretary of the Company.

## Appointment of Director

**FURTHER RESOLVED**, that concurrently with the occurrence of the First Closing of the Securities Purchase Agreement, or at such later time as may be mutually agreed, Mr. Samuel Zell be appointed as a director of the Company, to serve for a term expiring at the third annual election following consummation of the Merger or upon his earlier death, removal or resignation.

## Vote of Stockholders

**FURTHER RESOLVED**, that the Board directs that the Merger Agreement be submitted to a vote of the stockholders entitled to vote thereon at a special or annual meeting of such stockholders (the "Stockholder Meeting"), along with the Board's recommendation (unless, subject to and in accordance with the terms of the Merger Agreement, such recommendation is withdrawn or modified prior to such submission) that such stockholders adopt the Merger Agreement and that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, to communicate such recommendation to, and to solicit proxies on behalf of the Board from, such stockholders entitled to vote at the Stockholder Meeting in favor of such adoption;

**FURTHER RESOLVED**, that the secretary of the Company be, and hereby is, authorized and directed, subject to the terms of the Merger Agreement, to fix hereafter the date, time and place of the Stockholder Meeting, and the record date for determining the stockholders entitled to notice of and to vote at the Stockholder Meeting (the "Record Date"); and

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, to mail to the stockholders of record as of the close of business on the Record Date, a notice of the Stockholder Meeting, accompanied by a Proxy Statement (as defined below).

## Self Tender Offer

**FURTHER RESOLVED**, that as promptly as practicable following the execution of the Merger Agreement, the Company shall commence the Share Repurchase, by causing to be commenced a self-tender offer to repurchase up to 126 million shares of Common Stock at $34.00 per share, net to the seller in cash; and

**FURTHER RESOLVED**, that the Board of Directors hereby determines to recommend that the Company's stockholders tender their shares in the tender offer.

15

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533560

## Regulatory Matters

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, pursuant to the terms of the Transaction Agreements, in the name and on behalf of the Company, promptly to prepare, sign and file, or cause to be filed, with any applicable federal, state, local or foreign country regulatory or supervisory body or stock markets and self-regulatory organizations including, without limitation, the Antitrust Division of the United States Department of Justice (the "DOJ"), the Federal Trade Commission (the "FTC"), the SEC and the Federal Communications Commission (the "FCC") (collectively, "Governmental Entities") all applications, requests for approval, consents, interpretations, or other determinations, notices and other information and documents, and any modifications or supplements thereto, as may be necessary or advisable in connection with the Transaction Agreements and the Transactions, including the Merger, together with all agreements and other information and documents required or appropriate, and any publications required, in connection therewith; and

**FURTHER RESOLVED**, that, subject to the terms and on the conditions stated in the Merger Agreement, the proper officers of the Company be, and each of them hereby is, authorized and directed, pursuant to the terms of the Merger Agreement, to use reasonable best efforts to cooperate with the other parties thereto in (i) determining whether any filings are required to be made with, or consents, permits, authorizations, waivers or approvals are required to be obtained from, any third parties or Governmental Entities in connection with the execution and delivery of the Merger Agreement and the consummation of the transactions contemplated thereby, (ii) timely making all such filings and timely seeking all such consents, permits, authorizations or approvals, and (iii) using reasonable best efforts to take, or cause to be taken, all other actions and doing, or causing to be done, all other things necessary, proper or advisable to consummate and make effective the transactions contemplated by the Merger Agreement, including taking all such further action as reasonably may be necessary to resolve such objections, if any, as the FCC, the FTC, the DOJ, state antitrust enforcement authorities or competition authorities of any other nation or other jurisdiction or any other person may assert under regulatory law with respect to the transactions contemplated by the Merger Agreement, and to avoid or eliminate each and every impediment under any law that may be asserted by any Governmental Entity with respect to the Merger so as to enable the consummation of the Merger to occur as soon as reasonably possible.

## Securities Law Filings

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name and on behalf of the Company, with the assistance of counsel, to prepare, sign and file, or cause to be filed, with the SEC any and all statements, reports or other information concerning the Transactions that may be deemed advisable or may be required under the Securities Act of 1933 or the Exchange Act of 1934, each as amended, and the rules and regulations of the SEC promulgated thereunder, including without limitation (i) a proxy statement for delivery to the stockholders of the Company (as it may be amended or supplemented, the "Proxy Statement"), together with any other documents required or

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533561

appropriate in connection therewith; (ii) a tender offer statement on Schedule TO (as it may be amended or supplemented, the "Schedule TO"); (iii) a transaction statement on Schedule 13E-3 in connection with each of the Proxy Statement and the Schedule TO; and (iv) all other reports, statements, documents and information required to be filed with the SEC by the Company in connection with the Transaction Agreements and the Transactions.

## Section 16(b) Exemption

**FURTHER RESOLVED**, that the Board determines to, and hereby does, for purposes of exempting each sale or exchange of Common Stock owned by the individuals named in Exhibit C hereto that occurs pursuant to the terms of the Merger Agreement or in connection with the Share Repurchase, and each (i) exchange of options to purchase Common Stock, (ii) sale or exchange of restricted stock and restricted stock units and (iii) sale or exchange of other equity and equity-based awards, in each case by the individuals listed on such exhibit that occurs pursuant to the terms of the Merger Agreement or in connection with the Share Repurchase, approve each such sale, exchange or disposition as an exempt disposition under Rule 16b-3 promulgated under the Securities Exchange Act of 1934.

## Equity Compensation Matters

**FURTHER RESOLVED**, that, in the event that the Company divests a business unit during the period beginning on the date on which the Company announces a transaction that would constitute a Change in Control (within the meaning of the Company's Incentive Compensation Plan) and the date on which such Change in Control is consummated, the Company shall cause any Company restricted stock units and stock options held by any employee of such divested business unit to be fully vested;

**FURTHER RESOLVED**, that, in the event that the Company eliminates an employee's position during the period beginning on the date on which the Company announces a transaction that would constitute a Change in Control (within the meaning of the Company's Incentive Compensation Plan) and the date on which such Change in Control is consummated, the Company shall cause any Company restricted stock units and stock options held by such employee to be fully vested effective as of the consummation of such Change in Control;

**FURTHER RESOLVED**, that, in the event of a Change in Control (within the meaning of the Company's Incentive Compensation Plan), each participant in the Tribune Company 401(k) Savings and Profit Sharing Plan whose employment with the Company is terminated by the Company other than for cause or is constructively terminated within one year following such Change in Control shall be fully vested in all employer contributions held on such participant's behalf under such plan; and

**FURTHER RESOLVED**, that the Tribune Company Employee Stock Purchase Plan shall be terminated as soon as reasonably practicable and, the Tribune Company Employee Benefits Committee or the proper officers of the Company be, and each of them hereby is, authorized and

17

directed, in the name of and on behalf of the Company, to take or cause to be taken any and all action, and to execute and deliver or cause to be executed and delivered any and all agreements, amendments, certificates, reports, applications, notices, letters or other documents as, in the opinion of such committee or any such officer, may be necessary, appropriate or desirable to terminate the Tribune Company Employee Stock Purchase Plan as soon as reasonably practicable.

### Miscellaneous

**FURTHER RESOLVED**, that the Board hereby adopts, as if expressly set forth herein, the form of any resolution required by any governmental authority to be filed in connection with any applications, consents to service, issuer's covenants or other documents, applications, reports or filings relating to the foregoing resolutions if (i) in the opinion of the officer of the Company executing the same, the adoption of such resolutions is necessary or desirable and (ii) the Secretary or an Assistant Secretary of the Company evidences such adoption by inserting in the minutes of this meeting copies of such resolutions, which will thereupon be deemed to be adopted by the Board with the same force and effect as if presented at this meeting;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized and directed, in the name of and on behalf of the Company, to take or cause to be taken any and all action which they may deem necessary or appropriate to communicate the position of the Board, as set forth in these resolutions, to the Company's stockholders, including, without limitation, the dissemination of such position by means of press releases, letters to stockholders of the Company and filings with the SEC, the taking of any such action conclusively to evidence the due authorization and approval thereof by the Board;

**FURTHER RESOLVED**, that the proper officers of the Company be, and each of them hereby is, authorized, empowered and directed, in the name of and on behalf of the Company, to execute and deliver or cause to be executed and delivered any and all agreements, amendments, certificates, reports, applications, notices, letters or other documents and to do or cause to be done any and all such other acts and things as, in the opinion of any such officer, may be necessary, appropriate or desirable in order to enable the Company fully and promptly to carry out the purposes and intent of the foregoing resolutions, and any such action taken or any agreement, amendment, certificate, report, application, notice, letter or other document executed and delivered by them or any of them in connection with any such action shall be conclusive evidence of their or his authority to take, execute and deliver the same; and

**FURTHER RESOLVED**, that all actions heretofore taken by any of the directors, officers, employees, representatives or agents of the Company or any of its affiliates in connection with the Transaction Agreements and the Transactions or otherwise referred to in the foregoing resolutions be, and each of the same hereby is, ratified, confirmed and approved in all respects as the act and deed of the Company.

18

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533563

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned at 11:15
p.m.

_____
Secretary

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0533564

# EXHIBIT A

Merger Agreement
Securities Purchase Agreement
Exchangeable Note
Subordinated Promissory Note
Warrant Agreement
ESOP Purchase Agreement
ESOP Loan Agreement
ESOP Note
ESOP Pledge Agreement
Investor Rights Agreement
Exchange Agreement
Voting Agreement – Chandler Trusts
Registration Rights Agreement of Chandler Trusts
Registration Rights Agreement of EGI & ESOP
Amendment No. 3 to Rights Plan
First Step Commitment
Second Step Commitment

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

## EXHIBIT B

## AMENDMENT NO. 3 TO RIGHTS AGREEMENT

This Amendment No. 3 to Rights Agreement (this "Amendment No. 3"), dated as of April 1, 2007, by and between Tribune Company, a Delaware corporation (the "Company"), and Computershare Trust Company, N.A. (formerly known as EquiServe Trust Company, N.A., formerly known as First Chicago Trust Company of New York), as Rights Agent (the "Rights Agent"), amends the Rights Agreement, dated as of December 12, 1997, as previously amended by Amendment No. 1 thereto, dated as of June 12, 2000, and Amendment No. 2 thereto, dated as of September 21, 2006 (the "Rights Agreement"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such term in the Rights Agreement.

## RECITALS

WHEREAS, the Company and the Rights Agent have executed and entered into the Rights Agreement;

WHEREAS, pursuant to Section 27 of the Rights Agreement, the Company and the Rights Agent may from time to time supplement or amend the Rights Agreement in accordance with the provisions of Section 27 thereof;

WHEREAS, the Company proposes to enter into: (1) an Agreement and Plan of Merger with GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP, and, for the limited purposes set forth therein, EGI-TRB, L.L.C., a Delaware limited liability company ("Tower Acquisition"); (2) a Securities Purchase Agreement with Tower Acquisition and Mr. Samuel Zell, as guarantor; (3) an ESOP Purchase Agreement with the ESOP; (4) an Investor Rights Agreement with Tower Acquisition and the ESOP; (5) a voting agreement with Chandler Trust No. 1 and Chandler Trust No. 2; (6) registration rights agreements with (a) Tower Acquisition and the ESOP, and (b) Chandler Trust No. 1 and Chandler Trust No. 2; and (7) other agreements contemplated by the foregoing or necessary to implement the transactions contemplated by the foregoing (such agreements in clauses (1) through (7), the "Transaction Agreements"); and

WHEREAS, the Board of Directors of the Company has determined that it is in the best interest of the Company and its stockholders to amend the Rights Agreement as set forth below to provide that the execution, delivery and performance of the Transaction Agreements and the transactions contemplated thereby will not result in any Person becoming an Acquiring Person;

NOW, THEREFORE, the Rights Agreement is hereby amended as follows:

1.     The definition of Acquiring Person in Section 1(a) of the Rights Agreement, as previously amended, is hereby further modified and amended by adding the following sentence at

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

the end of the last sentence thereof:

> Notwithstanding anything in this Agreement to the contrary, no Person shall be deemed to be an Acquiring Person solely by virtue of the execution, delivery or performance of any of the Transaction Agreements or the transactions contemplated thereby.

2.    A new Section 1(ee) is hereby added to Section 1 of the Rights Agreement, which shall read in its entirety as follows:

> "Transaction Agreements" shall mean the following agreements dated as of April 1, 2007:  (1) an Agreement and Plan of Merger by and among the Company, GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP, and, for the limited purposes set forth therein, EGI-TRB, L.L.C., a Delaware limited liability company ("Tower Acquisition"); (2) the Securities Purchase Agreement by and among the Company, Tower Acquisition and Mr. Samuel Zell, as guarantor; (3) the ESOP Purchase Agreement by and between the Company and the ESOP; (4) the Investor Rights Agreement by and among the Company, Tower Acquisition and the ESOP; (5) the Voting Agreement by and among the Company, Chandler Trust No. 1 and Chandler Trust No. 2; (6) the Registration Rights Agreements by and among the Company and (a) Tower Acquisition and the ESOP, and (b) Chandler Trust No. 1 and Chandler Trust No. 2; and (7) other agreements contemplated by the foregoing agreements or necessary to implement the transactions contemplated by the foregoing agreements.

3.    This amendment may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

4.    This Amendment shall be deemed to be a contract made under the laws of the State of Delaware and for all purposes shall be governed by and construed in accordance with the laws of such State applicable to contracts to be made and performed entirely within such State.

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533567

IN WITNESS WHEREOF, this Amendment has been duly executed by the Company and the Rights Agent as of the day and year first written above.

TRIBUNE COMPANY


By:_____
Name:
Title:



COMPUTERSHARE TRUST COMPANY, N.A.


By:_____
Name:
Title:

3

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533568

**EXHIBIT C**

For a description of the terms of equity awards (including, without limitation, options) referenced below, reference is made to the Company's equity incentive plans and to the Merger Agreement.

| Name of Officer or Director | Number of Shares of Company Common Stock Beneficially Owned | Number of Shares of Company Common Stock Underlying Equity Awards (Including Restricted Stock Units and Stock Options) |
|---|---|---|
| Jeffrey Chandler | 11,187 | 19,200 |
| Dennis J. FitzSimons | 498,299 | 1,936,556 |
| Roger Goodan | 17,246 | 45,200 |
| Donald C. Grenesko | 242,188 | 759,040 |
| Enrique Hernandez, Jr. | 11,330 | 15,200 |
| Betsy D. Holden | 8,661 | 7,200 |
| Crane H. Kenney | 51,669 | 578,397 |
| Timothy J. Landon | 45,982 | 431,015 |
| Thomas D. Leach | 50,741 | 315,742 |
| Luis Lewin | 22,710 | 458,978 |
| R. Mark Mallory | 108,234 | 248,679 |
| Robert S. Morrison | 13,148 | 11,200 |
| Ruthellyn M. Musil | 65,391 | 398,046 |
| William A. Osborn | 11,959 | 11,200 |
| John E. Reardon | 63,782 | 416,821 |
| J. Christopher Reyes | 14,969 | 0 |
| Scott C. Smith | 225,273 | 707,394 |
| William Stinehart, Jr. | 12,650 | 31,700 |
| Dudley S. Taft | 94,660 | 31,200 |
| Miles D. White | 6,419 | 0 |

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**6**

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533570

# TRIBUNE COMPANY
## STOCK PERFORMANCE REPORT
*as of May 1, 2007*



### Total Returns
(price change plus dividends)

| | YTD | Annual 3 year | Annual 5 year |
|---|---|---|---|
| **Tribune** | **7.2%** | **-10.1%** | **-4.3%** |
| **S&P 500** | **5.4%** | **12.3%** | **8.6%** |
| **S&P PUB** | **1.2%** | **-0.2%** | **2.8%** |

## STOCK PERFORMANCE/TRADING ACTIVITY

Since the April 2 announcement of a transaction which will result in Tribune going private and shareholders receiving $34 per share, the stock has traded in the $32 range. Tribune stock is up over 7% for the year on a total return basis, above both the S&P 500 Index and the S&P Publishing Index.

Average daily volume year-to-date is 2 million shares, up from 1.8 million shares during the comparable period last year. However, since April 2 (when 16.5 million shares traded), average daily volume is 3.2 million shares.

Short interest currently is 6 million shares, representing about 3% of shares outstanding. This is below the 6% average of our newspaper peers, and given our transaction, short selling is not expected to increase significantly unless there is a perceived risk of closing.

## VALUATION

In the $32 range, the stock trades at a 9x multiple (enterprise value/2007 operating cash flow), slightly above the newspaper group average.

First quarter earnings, announced April 19, were 2 cents below analysts' consensus estimates, although the stock was unaffected. Tribune is now covered by 15 analysts, as Credit Suisse and Thomas Weisel recently suspended coverage of the publishing industry. Twelve analysts rate Tribune "hold" with one "underperform." Merrill Lynch and Morgan Stanley are restricted because of involvement in our transaction. Analysts who have price targets are at $34, reflecting the terms of our transaction; the stock is neither being valued, nor trading, on fundamentals.

| EV/EBITDA Multiples | |
|---|---|
| | May |
| **Tribune** | **9.0x** |
| Cable | 8.5x |
| Entertainment | 9.5x |
| Newspapers | 8.3x |
| Radio | 10.8x |
| Television | 11.7x |

*Source: Merrill Lynch*
*Based on 2007 estimated operating cash flow.*

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# TRIBUNE COMPANY
## STOCK PERFORMANCE REPORT

### SHAREHOLDER ANALYSIS

Most of Tribune's top institutional investors have not sold shares since the April 2 announcement. Our stockwatch service believes they waited to sell into the recently launched tender. Exceptions include Ariel Capital, which has sold approximately 8.5 million shares to date and Fidelity, which has sold 2.5 million shares. Robert Torray liquidated its position of 1.8 million shares.

As expected, buyers of the stock have been hedge funds and arbitrageurs. While hard to identify because they trade constantly, Westchester Capital Management, an "arb mutual fund" is believed to have a position of 1.3 million shares in its "merger fund." All other identifiable arb or hedge funds currently hold fewer than 1 million shares.

### TOP 15 SHAREHOLDERS
*As of 4/20/2007*
*(Shares in millions)*

|     |                                      | Shares Held | % of S/O | Style       |
| --- | ------------------------------------ | ----------- | -------- | ----------- |
| 1.  | Chandler Trusts                      | 48.1        | 20.0%    | n/a         |
| 2.  | McCormick Tribune Foundation         | 31.3        | 13.0%    | n/a         |
| 3.  | Employees                            | 23.3        | 10.0%    | n/a         |
| 4.  | T. Rowe Price Associates             | 20.2        | 8.4%     | Active      |
| 5.  | Ariel Capital Management             | 6.1         | 2.5%     | Active      |
| 6.  | Morgan Stanley Investment Management | 5.6         | 2.3%     | Active      |
| 7.  | The Vanguard Group                   | 5.5         | 2.3%     | Index       |
| 8.  | Barclays Global Investors            | 5.3         | 2.2%     | Index/Quant |
| 9.  | State Street Global Advisors         | 5.0         | 2.1%     | Index       |
| 10. | LSV Asset Management                 | 4.8         | 2.0%     | Quant       |
| 11. | Northern Trust Investments           | 4.0         | 1.7%     | Index       |
| 12. | GAMCO Investors                      | 3.3         | 1.4%     | Active      |
| 13. | Nelson Peltz                         | 2.8         | 1.2%     | Activist    |
| 14. | Dimensional Fund Advisors            | 2.6         | 1.1%     | Quant       |
| 15. | Northern Trust Global Advisors       | 1.9         | 0.8%     | Active      |

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533572

## TRIBUNE COMPANY
## BENCHMARK COMPANY TOTAL RETURNS
*Through May 1, 2007*

| | YTD | | 1-Year | | 3-Year | | 5-Year |
|---|---|---|---|---|---|---|---|
| Sinclair[1] | 59.1% | Sinclair | 121.3% | Sinclair | 14.1% | Sinclair | 6.6% |
| Dow Jones[2] | 49.9% | Dow Jones | 56.3% | Dow Jones | 9.7% | Washington Post | 4.8% |
| Belo | 8.7% | **Tribune** | **16.5%** | Hearst-Argyle | 1.0% | Dow Jones | 3.3% |
| **Tribune** | **7.2%** | Hearst-Argyle | 14.9% | Washington Post | -5.1% | Scripps | 2.5% |
| Washington Post | 3.2% | Belo | 11.2% | Scripps | -5.5% | Hearst-Argyle | 0.0% |
| Hearst-Argyle | 3.1% | Gannett | 8.0% | Belo | -9.5% | Belo | -1.5% |
| New York Times | 1.6% | New York Times | 2.1% | **Tribune** | **-10.1%** | Gannett | -3.0% |
| Gannett | -3.3% | Washington Post | 1.0% | Gannett | -10.9% | **Tribune** | **-4.3%** |
| Scripps | -13.1% | Scripps | -5.1% | New York Times | -16.9% | New York Times | -10.4% |
| McClatchy | -31.6% | McClatchy | -33.6% | McClatchy | -24.5% | McClatchy | -12.3% |
| | | | | | | | |
| S&P 500 | 5.4% | | 15.5% | | 12.3% | | 8.6% |
| S&P Pub | 1.2% | | 17.4% | | -0.2% | | 2.8% |

[1] Sinclair's stock price has risen from $10.50 to $16.55 due to an improved outlook: debt repayment, lower programming costs and recent retransmission consent agreements.

[2] On May 1, publishing peers rose sharply after News Corp. made an unsolicited bid for Dow Jones. Dow Jones stock rose 55% on the news and is now up 50% year-to-date. Prior to this development, the S&P Publishing Index, which includes Dow Jones, was down 2%.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0533573

AUDIT COMMITTEE

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRIBUNE COMPANY
AUDIT COMMITTEE MEETING
WEDNESDAY, MAY 9, 2007 (7:30 A.M.)
McCORMICK ROOM
24th FLOOR, TRIBUNE TOWER

AGENDA

|  | Tab No. |
|---|---|
| Approve Minutes of February 13 and April 18, 2007 Audit Committee Meetings | 1 |
| Audit Committee Responsibility Summary | 2 |
| Internal Audit Status Report | 3 |
| 2007 Internal Controls Certification Project Plan | 4 |
| 2007 Audit Plan and Fees | 5 |
| Private Sessions | |

PARTICIPANTS

**_Audit Committee_**
Betsy D. Holden
William A. Osborn, Chair
J. Christopher Reyes
Dudley S. Taft

**_Other Board Members_**
Jeffrey Chandler
Roger Goodan

**_PricewaterhouseCoopers LLP_**
Kevin Maguire          Engagement Partner
Stephanie Potter       Engagement Senior Manager

**_Management_**
Tom Caputo             Vice President, Auditing
Dennis FitzSimons      Chairman, President and CEO
Don Grenesko           Sr. Vice President, Finance & Administration
Mark Mallory           Vice President and Controller

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only