CONFIDENTIAL

To be disclosed only to
Members of the Special Committee

TRIBUNE COMPANY

SPECIAL COMMITTEE OF THE

BOARD OF DIRECTORS MEETING

MARCH 30, 2007

        Pursuant to notice, a meeting of the Special Committee (the "Committee") of Tribune Company (the "Company") was held at 11:00 A.M. on March 30, 2007 at the offices of the Company. All of the members of the Committee were in attendance: William A. Osborn, Chairman, Enrique Hernandez, Jr., Betsy D. Holden, Robert S. Morrison, J. Christopher Reyes, Dudley S. Taft and Miles D. White. Also in attendance were Messrs. Dennis J. FitzSimons, Scott Smith, Donald C. Grenesko, Crane H. Kenney and Thomas D. Leach of the Company; Mr. Charles W. Mulaney, Jr. of Skadden, Arps, Slate, Meagher & Flom LLP; Mr. Thomas A. Cole of Sidley Austin LLP; Mr. Steven A. Rosenblum of Wachtell, Lipton, Rosen & Katz; Messrs. Michael Costa and Todd Kaplan of Merrill Lynch & Co.; Ms. Christina Mohr of Citigroup; and Messrs. Paul Taubman and Thomas Whayne of Morgan Stanley.

        After preliminary discussions and a brief review of the meeting's agenda, Mr. Osborn called the meeting to order.

        At the request of Mr. Osborn, Mr. Whayne referred to materials previously distributed to the members of the Committee and provided Morgan Stanley's perspectives on the Company's recent financial performance, including comparisons of the Company's year-to-date performance against management's plan for 2007 and against the Company's performance for the comparable period in 2006. Mr. Whayne observed that the Company's year-to-date performance was on track with management's plan. Mr. Whayne then discussed the Company's recent credit rating by two ratings agencies and noted that financial performance by the Company in line with management's downside case could pose a risk to the Company's ability to consummate a transaction involving forward-looking financing conditions. Mr. Whayne also reviewed the estimates by research analysts of the Company's future financial performance and made general observations about certain comparable companies' stock price appreciation and trading multiples since the initiation of the Company's strategic review process in September 2006. Questions and an extended discussion ensued.

        Mr. Osborn then requested that Mr. Kaplan of Merrill Lynch discuss the conditionality of the financing associated with Mr. Zell's proposal. Merrill Lynch is one of the

principal lenders financing the Zell proposal. Referring to materials previously distributed to the members of the Committee, Mr. Kaplan reviewed the quantitative and qualitative conditions to closing for the first and second step financing of Mr. Zell's proposal, including the conditions of the debt/EBITDA covenant/condition and the "material adverse effect" clause in the most recent versions of the financing commitments. Mr. Cole then briefly discussed the terms of the "material adverse effect" clause in the merger agreement associated with Mr. Zell's proposal. The members of the Committee asked numerous questions, including questions regarding Mr. Kaplan's observation that that the financing had been arranged to provide minimal conditionality to the proposed ESOP transaction with Mr. Zell. Mr. Kaplan indicated that there would have to be very substantial, and at this point highly unlikely, deterioration in the Company's operating results before the lenders would have grounds not to fund at closing. Questions and a discussion ensued.

Considerations relating to the terms and remaining deal points to be negotiated with Mr. Zell were then reviewed. A lengthy discussion followed.

At 12 P.M., Mr. Osborn adjourned the meeting, and the members of the Committee joined a meeting of the Board of Directors (the "Board") of the Company.

At 2 P.M., the Committee reconvened.

At Mr. Osborn's request, Mr. FitzSimons reported that it was management's recommendation that the Company proceed with Mr. Zell's proposal. Mr. FitzSimons also provided his views on the likely positive employee reaction to the Zell proposal. Questions and a discussed followed. Mr. Osborn then excused representatives from the Company, Sidley Austin, Wachtell, Merrill Lynch and Citigroup.

Mr. Osborn then provided his perspective on Messrs. Broad and Burkle's reengagement relating to a possible ESOP transaction for the Company. He referenced a letter received from Messrs. Broad and Burkle and his proposed response to it on behalf of the Board. The Committee agreed that the Company and all advisors should cooperate with Messrs. Broad and Burkle and respond to reasonable requests for additional due diligence. Questions and a discussion followed, including with respect to the potential effect of the reengagement with Messrs. Broad and Burkle on the negotiations with Mr. Zell.

Referring to materials previously distributed to the Committee, Messrs. Taubman and Whayne then discussed different valuation methods to evaluate Mr. Zell's proposal as compared with a recapitalization plan. Messrs. Taubman and Whayne analyzed the premium associated with Mr. Zell's proposal under different perspectives and in comparison with other public-to-private transactions. Questions and an extended discussion followed.

The Committee and its advisors then discussed at length the relative advantages and disadvantages of Mr. Zell's proposal, a potential Broad/Burkle ESOP transaction and the recapitalization plan. The discussion included considerations of the various deal terms still to be negotiated relating to Mr. Zell's proposal, the uncertainty associated with any Broad/Burkle transaction and the potential reaction of the public markets to the proposed recapitalization. Mr. Mulaney reviewed some of the contingencies and uncertainties associated with Mr. Zell's

proposal, including the conditionality of the financing and the necessary receipt of FCC waivers on terms acceptable to Mr. Zell. Following further discussion, the Committee directed Mr. Osborn to contact Mr. Zell to attempt to improve the deal terms for the Company. The Committee determined to instruct its advisors from Merrill Lynch & Co. to tell Messrs. Broad and Burkle that the Committee had not yet reached a decision about a transaction for the Company and would continue to provide Messrs. Broad and Burkle additional due diligence.

The Committee then scheduled its next meeting for April 1, 2007 at 10:00 A.M., to be followed by a meeting of the Board immediately thereafter. There being no further business the meeting was adjourned.