| | |
|---|---|
| **From:** | Bigelow, Chandler <CBigelow@tribune.com> |
| **Sent:** | Thursday, April 5, 2007 9:10 AM |
| **To:** | Bryan Browning <BBROWNIN@valuationresearch.com> |
| **Subject:** | FW: VRC engagement markup - revised |
| **Attach:** | 1127014_1.DOC; VRC Engagement Agreement (TRB Edits 4 4 07).DOC |

Bryan – attached are our comments to the letter. Please have your attorneys contact Mark Hianik (our AGC) directly with questions. Mark can be reached at 312-222-4303. Many thanks and we'll see you shortly. Thanks, Chandler

-----Original Message-----
**From:** Hianik, Mark W.
**Sent:** Wednesday, April 04, 2007 6:24 PM
**To:** Bigelow, Chandler
**Cc:** Eldersveld, David
**Subject:** FW: VRC engagement markup - revised

CB,

I layered just a few comments on top of Steve's and Rick's. Mark up attached. If it looks okay, please forward to VRC. Thanks.

Mark

**From:** SARosenblum@WLRK.com [mailto:SARosenblum@WLRK.com]
**Sent:** Wednesday, April 04, 2007 4:32 PM
**To:** Bigelow, Chandler; Eldersveld, David; Hianik, Mark W.; lbarden@sidley.com
**Cc:** falexander@mnat.com; PMindlin@WLRK.com; SJSeligman@WLRK.com
**Subject:** VRC engagement markup - revised

Sorry, I missed one change in what I sent before. Please use this version. Thanks.

Steve

<<1127014_1.DOC>>

****************************************************************
Any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties and is not intended to be used or referred to in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement.

****************************************************************
Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (postmaster@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments. Thank you in advance for your cooperation and assistance. www.wlrk.com
****************************************************************



VRC0075238

CONFIDENTIAL

# VRC

{ DATE \@ "MMMM d, yyyy" } — Deleted: April 4, 2007

Tribune Company Board of Directors, — Deleted: c/o
c/o Mr. Chandler Bigelow
Vice President/Treasurer
Tribune Company
435 North Michigan Ave
Chicago, IL 60611

Dear Mr. Chandler Bigelow:

Valuation Research Corporation ("VRC") is pleased to present its proposal for services to the Board of Directors of the Tribune Company (the "Company") for the purpose of engaging VRC to provide opinions regarding solvency of the Company following the contemplated transactions as set forth below. The Company will be taken private through a two-step process involving a newly formed Tribune employee stock ownership plan (the "ESOP") and investments by EGI-TRB, L.L.C. ("EGI-TRB"), a limited liability company owned by Samuel Zell ("Zell"). — Deleted: , LLC

The first step of the process involves (i) the purchase by EGI-TRB of newly issued common stock (the "Common Stock") from the Company for $34.00 per share, for an aggregate purchase price of $50 million in cash, and an exchangeable note for a purchase price of $250 million in cash (collectively, the "Step One EGI-TRB Purchase"), (ii) the purchase by the ESOP of newly issued Common Stock from the Company for $28.00 per share, for an aggregate purchase price of $250 million, paid for by a note to the Company (the "ESOP Purchase"), (iii) the borrowing by the Company of debt of approximately $7.0 billion (the "Step One Debt Financing"), (iv) the purchase by the Company from its stockholders of approximately 126 million shares of Common Stock at $34.00 per share, equaling approximately $4.2 billion (the "Step One Common Stock Purchase"), (v) the refinancing of existing debt of approximately $2.8 billion (the "Step One Debt Refinancing"), (vi) the roll-over of certain existing debt of approximately $2.4 billion (the "Step One Debt Roll-Over") and (vii) the payment of financing and transaction fees of approximately $152 million (the "Step One Fees") . The Step One EGI-TRB Purchase, the ESOP Purchase, the Step One Debt Financing, the Step One Common Stock Purchase, the Step One Debt Refinancing, the Step One Debt Roll-Over, and the Step One Fees are collectively referred to as the "Step One Transactions."

Deleted: by Zell
Deleted: Zell
Deleted: c
Deleted: s
Deleted: by the ESOP
Deleted: in exchange for
Deleted: of public common shares
Deleted: the
Deleted: T
Deleted: s
Deleted: Zell
Deleted: .

The second step involves (i) the borrowing by the Company of additional debt of approximately $4.2 billion (the "Step Two Debt Financing"), (ii) the repayment by the Company of the exchangeable note acquired by EGI-TRB in the Step One EGI-TRB Purchase, (iii) the closing of the merger (the "Merger") in which all of the remaining Common Stock, other than shares held by the ESOP (but including shares held by EGI-TRB), will be cashed out at $34 per share (plus 8% annualized accretion starting January 1, 2008, if the Merger has not closed by then), for an aggregate of approximately $4.3 billion (the "Step Two Common Stock Purchase"), (iv) the purchase by EGI-TRB from the Company of a subordinated note for $225 million, and the purchase by EGI-TRB from the Company of a 15-year warrant, for a purchase price of $90

1

VRC0075239

million, such warrant to give EGI-TRB the right to acquire shares of Common Stock representing 40% of the economic interest in the equity of the Company at an initial aggregate exercise price of $500 million, increasing by $10 million per year for the first 10 years to a maximum aggregate exercise price of $600 million (collectively, the "Step Two EGI-TRB Purchase"), (v) the roll-over of certain existing debt of approximately $9.1 billion (the "Step Two Debt Roll-Over"), (vi) the payment of financing and transaction fees of approximately $154 million (the "Step Two Fees"), (vii) the election of an S-Corporation status following the Merger (the "S-Corp Election"), and (viii) the sale of the Chicago Cubs and interest in Comcast, which may occur before or after the closing of the Merger (the "Cubs/Comcast Sale"). The Step Two Debt Financing, the Merger, the Step Two Common Stock Purchase, the Step Two EGI-TRB Purchase, the Step Two Debt Roll-Over, the Step Two Fees, the S-Corp Election and the Cubs/Comcast Sale are collectively referred to as the "Step Two Transactions." The Step One Transactions and Step Two Transactions are collectively referred to as the "Transactions."

**Introduction and Purpose**

In connection with the prospective Transactions, the Company has requested VRC to provide opinions (the "Opinions"), on a consolidated pro forma basis and immediately after and giving effect to the consummation of the applicable Transactions, as to the solvency of the Company, and as to surplus as determined under Section 154 of the Delaware General Corporation Law ("DGCL"), at two different time periods: upon the closing of the Step One Transactions, which are expected to occur in the second quarter of 2007 (the "Step One Opinion") and upon the closing of the Step Two Transactions, which are expected to occur in the fourth quarter of 2007, but may occur in the first quarter of 2008 (The "Step Two Opinion"). The S-Corp Election is expected to occur at the beginning of 2008, but may not occur until the beginning of 2009 if the Merger does not close before the end of 2007, and the Cubs/Comcast Sale may occur before or after the closing of the Merger. The benefits from the S-Corp Election and the Cubs/Comcast Sale will be incorporated into the Step Two Opinion.

By signing this letter, VRC hereby accepts this engagement by the Company under the terms hereof. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of VRC and the Company.

The Opinions will address only the matters set forth in the preceding paragraph and will not address any other matter, including, without limitation, (i) the fairness of the Transactions, in whole or in part, or any terms associated therewith to the holders of any class of securities, creditors or other stakeholders or members of the Company, including the fairness of the consideration to be received by the Company's minority stockholders in connection with the Transactions, (ii) the relative risks or merits of the Transactions or any other business strategies or transactional alternatives that may be available to the Company, (iii) the underlying business decisions of the Company to consummate the Transactions, (iv) any specific legal, tax, accounting, or financial reporting matters related to or associated with the Company or the Transactions or (v) the fair value of the Company under any state or federal laws or principle sounding in equity relating to appraisal rights or similar matters.

Margin annotations (tracked changes):
- Deleted: (ii) the purchase of a subordinated note and warrants by Zell for $250 million in exchange for Zell's interest in the Company's newly issued common stock and exchangeable note issued in Step One Transactions (the "Step Two Zell Purchase"), (iii) the purchase of the remaining public common shares at $34.00 per share plus accretion, equaling approximately $4.3 billion (the "Step Two Common Stock Purchase"),
- Deleted: i
- Deleted: (v) the closing of the merger (The "Merger"),
- Deleted: the Step Two Zell Purchase,
- Deleted: One
- Deleted: the Merger,
- Deleted: .
- Deleted: and based upon our discussions with you
- Deleted: is
- Deleted: be no later than May 31,
- Deleted: is
- Deleted: be no later than December 31, 2007
- Deleted: are expected to take place in early 2008 and the benefits
- Deleted: s

VALUATION RESEARCH CORPORATION

The Opinions will be addressed to and solely for the benefit of the Company's Board of Directors. [Question to company – will lenders require reliance? If so, should request from VRC in engagement.]

**Solvency Tests and Definitions**

For purposes of the Opinions, the following tests of solvency, and of capital and surplus under Section 154 of the DGCL, are defined (each capitalized term used herein is defined below):

- Each of the Fair Value and Present Fair Saleable Value of the aggregate assets of the subject entity exceeds its liabilities (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), and such excess is in an amount that is greater than the capital of the Company (as determined pursuant to Section 154 of the DGCL);

- The subject entity will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), as such debts mature or otherwise become absolute or due; and [Deleted: It is reasonable to believe that t]

- The subject entity Does Not Have Unreasonably Small Capital.

For purposes of the Opinions, the following terms are defined:

**Fair Value** and **Present Fair Saleable Value** - The amount at which the aggregate or total assets of the subject entity (including goodwill) would change hands between an independent willing buyer and an independent willing seller, within a commercially reasonable period of time, each having reasonable knowledge of the relevant facts, neither being under any compulsion to act, and, for purposes of the Step Two Opinion, both having structures similar to the structure contemplated in the Transactions by the subject entity (an S-Corporation, owned entirely by an ESOP, which receives favorable federal income tax treatment), or another structure resulting in equivalent favorable federal income tax treatment. [Deleted: reasonably equivalent value] [Deleted: legal]

**Does Not Have Unreasonably Small Capital** - This phrase relates to the ability of the subject entity to continue as a going concern and not lack sufficient capital for the businesses in which it is engaged, and will be engaged, as management has indicated such businesses are now conducted and are proposed to be conducted.

**Stated Liabilities** - The recorded liabilities of the subject entity as presented on the most recent balance sheet provided to VRC. Stated Liabilities exclude the New Financing.

**New Financing** - The indebtedness incurred, assumed or guaranteed by the subject entity in connection with the Step One Transactions, in the case of the Step One Opinion, and in connection with the Transactions as a whole, in the case of the Step Two Opinion.

Valuation Research Corporation    200 W. Madison Street Chicago, IL 60606    Phone 312.957.7500    valuationresearch.com

VRC0075241

VALUATION RESEARCH CORPORATION

**Identified Contingent Liabilities** - The reasonably estimated contingent liabilities that may result from, without limitation, threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, contract obligations, uninsured risks, purchase obligations, taxes, and other contingent liabilities as identified and explained to VRC by the Company in terms of their nature, expected timing and estimated dollar amount by responsible officers of the Company. Because Identified Contingent Liabilities are estimates of responsible officers of the Company, VRC expresses no opinion as to the completeness or propriety of such items or amounts. Except for the Identified Contingent Liabilities, VRC will assume that there are no hidden, unapparent, or unexpected conditions or circumstances (contingent or otherwise) that could affect the operating or financial conditions of the Company and accepts no responsibility for discovering any such conditions or circumstances. VRC will, however, advise whether, after discussion with management with respect thereto, and based on its inquiries and its experience in reviewing such liabilities, it has reason to believe that Identified Contingent Liabilities are materially understated or that it would be unreasonable for VRC to utilize such estimates in the course of its analysis, as well as whether anything has come to its attention suggesting that material contingent liabilities have not been identified or disclosed.

VRC makes no representation as to the legal sufficiency for any purpose of the above definitions. Such definitions are used solely for setting forth the scope of the Opinions.

**Scope of the Assignment**

In rendering the Opinions, VRC will conduct such reviews, analyses, and inquiries and will consider such information, data and other material deemed necessary and appropriate based on the facts and circumstances of the assignment. In conducting its reviews and analyses, and as a basis for arriving at its conclusions, VRC will utilize methodology, procedures and considerations deemed relevant and customary under the circumstances. VRC will also consider its assessment of general economic, industry, market, financial and other conditions, which may or may not prove to be accurate, as well as its experience as a financial advisor in general.

The Company hereby agrees to furnish VRC with all reasonably available information and data concerning the Company and the Transactions (the "Information") that VRC deems appropriate and will, if requested, provide VRC with reasonable access to the Company's officers, directors, employees, independent accountants, legal counsel and other advisors. The Company represents and warrants that all Information (other than financial forecasts and projections) made available to VRC by or on behalf of the Company, at all times during the period of VRC's engagement hereunder, will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in the light of the circumstances under which such statements are made. The Company further represents and warrants that any financial forecasts and projections provided by it to VRC will have been prepared in good faith and will be based upon assumptions that, in light of the circumstances under which they are made, are reasonable.

VALUATION RESEARCH CORPORATION

In connection with the Opinions, the Company acknowledges and agrees that in rendering VRC's services hereunder, VRC will be using and relying on the Information and information available from public sources and other sources deemed reliable by VRC, in each case, without independent verification or independent appraisal of any of the Company's assets. The Company agrees to notify VRC promptly (i) if any such Information becomes inaccurate, incomplete or misleading in any material respect, (ii) if the Information needs to be updated to be accurate in all material respects and (iii) of any material adverse change, or development that could reasonably be expected to lead to any material adverse change, in its business, properties, operations, financial condition or prospects; and if any such Information needs to be so updated, the Company will do so promptly. VRC will assume and rely upon, without independent verification or independent appraisal, the accuracy and completeness of all Information, and all other information data and other material (including, without limitation, financial forecasts and projections) furnished or otherwise made available to VRC, discussed with or reviewed by VRC, or publicly available, and VRC will not assume any responsibility for independently verifying such Information or other information, data or other material. In addition, VRC will assume and rely upon, without independent verification, that the Company's financial forecasts and projections have been reasonably and prudently prepared and therefore reflect the best currently available estimates and judgments of management as to the expected future financial performance of the Company. VRC will advise, however, whether anything has come to its attention in the course of its engagement which has led it to believe that any such financial forecasts and projections are unreasonable or that any such information or data is inaccurate in any material respect, or that it was unreasonable for VRC to utilize and rely upon such financial forecasts, projections, information and data, or that there has been any material adverse change with respect to the Company.

[Deleted: rendering]

VRC will also assume that the Transactions will be consummated in a timely manner in accordance with the terms and conditions set forth in the agreements and other documents provided to VRC, that the Company is in compliance, and will remain in compliance, with any and all applicable laws, rules or regulations of any and all legal or regulatory authorities and that the Transaction will be consummated in a manner that complies with any and all applicable laws, rules and regulations of any and all legal or regulatory authorities.

VRC will not initiate any discussions, or solicit any indications of interest, with any third parties with respect to the Company.

The Opinions will be valid only for the pro forma capital structure of the Company immediately after and giving effect to the consummation of the applicable Transactions and will not be valid for any subsequent business acquisition, dividend, share repurchase, debt or equity financing, recapitalization, restructuring or other actions or events not specifically referred to in the Opinions. Furthermore, the Opinions do not represent an assurance, guarantee, or warranty that the Company will not default on any of its debt obligations or other liabilities, nor will VRC make any assurance, guarantee, or warranty that any covenants, financial or otherwise, associated with any financing will not be breached in the future.

VALUATION RESEARCH CORPORATION

The Opinions will be necessarily based on economic, industry, market, financial and other conditions and circumstances as they exist and to the extent that they can be evaluated by VRC as of the date thereof. VRC assumes no responsibility to update or revise either of the Opinions based upon any events or circumstances occurring subsequent to the date thereof.

VRC will not conduct or provide contingent liability assessments of any kind, so that the Opinions will not reflect any contingent liabilities whatsoever unless such contingent liabilities are identified in writing and explained to VRC in terms of their nature, estimated timing and estimated dollar amount by responsible officers of the Company. Because any contingent liabilities considered including, without limitation, Identified Contingent Liabilities, would be estimates of responsible officers of the Company, VRC has no duty to determine and will express no opinion as to the completeness, reasonableness or propriety of such items.

The Opinions will be addressed to and solely for the benefit of the Company's Board of Directors and may be shared, without reliance, with management and each prospective lender under the contemplated credit facilities. [Question for company – will lenders require reliance?]

[Deleted: with]

The Opinions and any other financial advice, written or oral, rendered by VRC is intended solely for the benefit and use of the Company Board of Directors. Company Board of Directors agree that such Opinion and advice may not be disclosed publicly or made available to third parties without the prior written consent of VRC, except that either Opinion may be included in its entirety in any filing with the Securities and Exchange Commission made by the Company in connection with the Transactions. The Company may also summarize or otherwise reference the existence of and basis for the Opinions in such documents provided that any such summary or reference language shall be subject to VRC's prior approval, which will not be unreasonably withheld or delayed. VRC is being retained by the Company under this agreement as an independent contractor, and it is understood and agreed that this agreement does not create a fiduciary relationship between VRC and the Company Board of Directors and/or and each prospective lender under the contemplated credit facilities.

**Format and Delivery**

VRC will provide the Company with (i) the Opinions, which will be in letter format describing the procedures, methodologies, conclusions and limitations associated with VRC's reviews and analyses, including a reasonable amount of supporting documentation and commentary with respect to the Opinions as may be reasonably requested by the Company, and, if requested, (ii) a single presentation of our analysis to the Company Board of Directors.

VRC understands that the Step One Opinion will be required in the second quarter of 2007 and the Step Two Opinion is expected to be required in the fourth quarter of 2007. Assuming (i) VRC receives a signed engagement letter by April ___, 2007, (ii) VRC receives all reasonably requested information, data and other material promptly upon request, (iii) VRC has reasonable access to management for purposes of discussion and inquiry and (iv) all information and data furnished to or discussed with VRC accurately reflects VRC's current understanding of the

[Deleted: no later than May 31,]
[Deleted: will]
[Deleted: no later than December 31,]
[Deleted: 4]

Valuation Research Corporation    200 W. Madison Street Chicago, IL 60606    Phone 312.957.7500    valuationresearch.com

VALUATION RESEARCH CORPORATION

Company and the Transactions, VRC will work with the Company to meet the necessary time frame and associated deadlines.

### Indemnification

Formatted: Keep with next

The Company and VRC shall enter into an indemnification agreement (the "Indemnification Agreement") in the form attached hereto. The Indemnification Agreement shall survive any termination or expiration of this agreement.

### Fees and Expenses

VRC's fee for the services outlined herein is set forth below, plus allocated expenses and reasonable out-of-pocket expenses, including legal fees and any indemnification costs, as set forth in the Indemnification Agreement. All such amounts are due and payable by the Company and its successors and assigns upon either the issuance of the final Opinions or VRC's services are terminated as set forth below. VRC's fees and expenses are not contingent on the consummation of the Transactions or any other matters related to or associated therewith. VRC's fee, exclusive of expenses, estimated will be:

**One Million Five Hundred Thousand Dollars**
**($1,500,000)**

A retainer fee of $400,000 shall be wired upon acceptance of this engagement. All payments should be wired to: M&I Marshall & Ilsley Bank; Valuation Research Corporation; For Credit to Account Number 00002-75387; ABA #0750-0005-1. Please note on the wire slip that C. Ann Kramer, Chief Financial Officer, is to be notified upon receipt of funds. An additional payment of $600,000 is required upon delivery of the Step One Opinion. The remainder will be required upon delivery of the Step Two Opinion.

In addition to VRC's fees and expenses, the Company agrees to pay VRC's then current hourly rates for any time incurred reviewing or assisting in the preparation of any required external documentation related to or associated with this assignment including, without limitation, documents to be filed with any legal or regulatory authority including, without limitation, the Securities and Exchange Commission. Further, VRC reserves the right to review any documentation related to or associated with this assignment which contains any direct or indirect reference to VRC, including, without limitation, any public document, prior to dissemination or publication and such dissemination or publication is subject to the prior written consent and approval of VRC, except as required by law or by a court of competent jurisdiction.

VRC's engagement hereunder may be terminated by the Company at any time. Upon termination, the Company shall pay in full VRC's fee as set forth above. In addition, following such termination, VRC shall remain entitled to any additional time and expenses incurred but not yet paid prior to such termination.

Valuation Research Corporation    200 W. Madison Street Chicago, IL 60606    Phone 312.957.7500    valuationresearch.com

VRC0075245

CONFIDENTIAL

VALUATION RESEARCH CORPORATION

Title: _____

Date: _____

VRC0075247

CONFIDENTIAL

VALUATION RESEARCH CORPORATION

# Exhibit 1
Indemnification Agreement

VRC0075248

VALUATION RESEARCH CORPORATION

VALUATION RESEARCH CORPORATION
INDEMNIFICATION AGREEMENT

Tribune Company, including its direct and indirect subsidiaries, assigns and surviving corporations and its successors in interest, (collectively, the "Company"), pursuant to the Engagement Letter with Valuation Research Corporation ("VRC") dated April\_\_\_, 2007 (the "Engagement Letter") and in consideration of the obligations under the Engagement Letter agrees as follows:

                                                                              [Deleted: 2]

In connection with VRC's engagement to advise and assist the Company with the matters set forth in the Engagement Letter, the Company agrees that in the event that VRC, any of its respective affiliates, or any of their respective directors, officers, members, employees, agents or controlling persons, if any (each of the foregoing being an "Indemnified Person") become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including with the Company's equity holders, related to, arising out of or in connection with VRC's engagement, the Company will promptly reimburse each such Indemnified Person for its legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith. The Company will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expense to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with VRC's engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities or expense is initiated or brought by or on the Company's behalf and whether or not in connection with any action, proceeding or investigation in which the Company or such Indemnified Persons are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's equity holders or creditors related to, arising out of or in connection with VRC's engagement except to the extent that any loss, claim, damage or liability is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence.

     If for any reason the foregoing indemnification is held unenforceable (other than due to a failure to meet the standard of care set forth above), then the Company shall contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by the Company; provided, however, that, to the extent permitted by applicable law, in no event shall VRC or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to VRC. The Company's reimbursement, indemnity and contribution obligations under this letter shall be in addition to any liability which the Company may otherwise have, shall not be limited by any rights VRC or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of and Indemnified Person.

     The Company agrees that, without VRC's prior written consent (which will not be unreasonably withheld or delayed), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, or proceeding or investigation in respect of which indemnification or contribution could be sought hereunder (whether or not VRC or any other Indemnified Persons are an actual or potential party to such claim, action or proceeding or investigation), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Person from all liability arising out of such claim, action or proceeding or investigation.

VRC0075249

VALUATION RESEARCH CORPORATION

No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby. This agreement and any claim related directly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed and construed in accordance with the laws of the State of Illinois (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of Illinois located in the City of Chicago and County of Cook or in the United States District Court for Cook County, and each party hereto submits to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its stockholders and creditors) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of or in connection with VRC's engagement. This agreement shall survive the termination or expiration of VRC's engagement.

**Deleted:** New York

**Deleted:** New York located in the City and County of New York or in the United States District Court for the Southern District of New York

Invoices for all expenses incurred by VRC, and subject to indemnification hereunder, shall be forwarded to the Company and shall be immediately due and payable by the Company upon receipt.

The Company agrees that in the event of any claim brought by the Company against VRC relating to the Engagement Letter, VRC's liability to the Company shall be limited to the total amount of fees paid by the Company to VRC under the Engagement Letter. This limitation of liability shall not apply to any damages determined to have resulted from VRC's bad faith, gross negligence or willful misconduct.

The receipt of the Engagement Letter is acknowledged and is in full force and effect as evidenced by the actions of the Company and VRC in commencing the Engagement Letter.

This Indemnification Agreement is dated April __, 2007.

**Deleted:** 2