*Highly Confidential*

| J.P. MORGAN SECURITIES INC. | MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED | CITIGROUP GLOBAL MARKETS INC. | BANC OF AMERICA SECURITIES LLC |
|---|---|---|---|
| 270 Park Avenue | 4 World Financial Center | 388 Greenwich Street | 9 West 57th Street |
| New York, NY 10017 | New York, NY 10080 | New York, NY 10013 | New York, NY 10019 |

April 5, 2007

Tribune Company
435 North Michigan Avenue, 6th Floor
Chicago, Illinois 60611

Attention: Don Grenesko
Senior Vice President, Finance and Administration

Re: **Project Tower — Amended and Restated First Step Engagement Letter**

Ladies and Gentlemen:

Tribune Company ("you") has advised J.P. Morgan Securities Inc. ("JPMorgan"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), Citigroup Global Markets Inc. ("Citigroup") and Banc of America Securities LLC ("BAS" and, together with JPMorgan, MLPF&S and Citigroup, the "Dealer Managers") that it intends to enter into the First Step Transactions (defined below). For purposes of this Engagement Letter, "Citigroup," "we" or "us" shall mean Citigroup Global Markets Inc., Citibank, N.A., Citicorp USA, Inc., Citicorp North America, Inc. and/or any of their affiliates as Citigroup shall determine to be appropriate to provide the services contemplated herein. This letter amends, restates and supersedes in its entirety the Project Tower – First Step Engagement Letter among JPMorgan, JPMCB, Merrill Lynch, and Citigroup dated April 1, 2007 and such Engagement Letter shall be of no further force or effect.

You have also advised us that (i) you have entered into an agreement and plan of merger dated the date hereof (the "Acquisition Agreement") with a new employee stock ownership plan sponsored by you (the "ESOP") that will be a "qualified plan" and an "employee stock ownership plan" under the Internal Revenue Code of 1986, as amended (the "Code") for the benefit of employees of Tribune and its subsidiaries (the administrator of the ESOP will be a fiduciary that is qualified under the Code) and an entity formed by the ESOP, pursuant to which such entity will be merged (the "Acquisition") with and into Tribune, with Tribune continuing as the surviving corporation, (ii) subsequent to entering into the Acquisition Agreement and prior to consummating the Acquisition, you intend to repurchase certain shares of your common stock (the "Stock Repurchase") and/or pay a special one time dividend on the shares of your common stock that are not repurchased in the Stock Repurchase (the "Dividend") and refinance certain of your existing indebtedness (the "Refinancing"), (iii) concurrently with the execution and delivery of the Acquisition Agreement, you intend to enter into a securities purchase agreement (the "Securities Purchase Agreement") with EGI-TRB, L.L.C., a newly formed single member

**HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY**

-2-

limited liability company ("Holdco") owned by Samuel Zell ("Zell") pursuant to which Holdco will invest (the "Zell Investment"), which investment will be personally guaranteed by Zell, in Tribune $250.0 million in cash in exchange for $50.0 million of Tribune common equity (at a price of $34.00 per share) and an unsecured subordinated exchangeable promissory note in the principal amount of $200.0 million due upon the earlier to occur of the consummation of the Acquisition and the termination of the Acquisition Agreement in accordance with its terms (the "Zell Note"), (iv) concurrently with the execution and delivery of the Acquisition Agreement, Tribune will form the ESOP and (v) concurrently with or as soon as practicable following the execution of the Acquisition Agreement, the ESOP will purchase $250.0 million of Tribune common equity (at a price not in excess of fair market value for purposes of Section 3(18) of ERISA) in exchange for a $250.0 million aggregate principal amount 30-year note (at a reasonable rate of interest and otherwise on arm's length terms that are generally fair and reasonable to the ESOP from a financial point of view) (such note, the "ESOP Note" and such investment, the "ESOP Investment")

Accordingly, the parties hereto agree as follows:

1.      **Engagement of the Dealer Managers.**  You hereby engage each of the Dealer Managers to be the exclusive dealer managers in connection with the Stock Repurchase.

Notwithstanding the foregoing, each Dealer Manager reserves the right not to act as dealer manager as described above.  In connection with the Stock Repurchase, you shall enter into a dealer manager agreement with such Dealer Manager(s), which agreement shall be consistent with this Engagement Letter and otherwise in a mutually acceptable form.

2.      **Matters Relating to Engagement.**  You acknowledge that the Dealer Managers have been engaged solely to provide the services set forth in this Engagement Letter.  In rendering such services, each of the Dealer Managers shall act as an independent contractor, and any duties of such Dealer Manager arising out of its engagement hereunder shall be owed solely to you.

You acknowledge that each of the Dealer Managers is a securities firm that is engaged in securities trading and brokerage activities, as well as providing investment banking and financial advisory services.  In the ordinary course of trading and brokerage activities, each of the Dealer Managers and their respective affiliates thereof may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of customers, in debt or equity securities of entities that may be involved in the transactions contemplated hereby.  Each of the Dealer Managers recognizes its responsibility for compliance with federal securities laws in connection with such activities.

You acknowledge that each of the Dealer Managers will be acting pursuant to a contractual relationship on an arm's length basis and in no event do the parties intend that each of the Dealer Managers act or be responsible as a fiduciary to you, your management, stockholders, creditors or any other person. You and the Dealer Managers each hereby expressly disclaim any fiduciary relationship and agree that they are each responsible for making their own independent judgments with respect to any transactions entered into between them.

**HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY**                              ML-TRIB-0000818

-3-

In addition, each of the Dealer Managers and their respective affiliates may from time to time perform various investment banking, commercial banking and financial advisory services for other clients and customers who may have conflicting interests with respect to you or the Stock Repurchase. The Dealer Managers and their respective affiliates will not use confidential information obtained from you, pursuant to this engagement or their other relationships with you in connection with the performance by the Dealer Managers and their respective affiliates of services for other companies, and the Dealer Managers and their respective affiliates will not furnish any such information to other companies. You also acknowledge that the Dealer Managers and their respective affiliates have no obligation to use in connection with this engagement, or to furnish to you, confidential information obtained from other companies.

Furthermore, you acknowledge that the Dealer Managers and their respective affiliates may have fiduciary or other relationships whereby the Dealer Managers and their respective affiliates may exercise voting power over securities of various persons, which securities may from time to time include securities of yours or others with interests in respect of the Stock Repurchase. You acknowledge that the Dealer Managers and their respective affiliates may exercise such powers and otherwise perform their functions in connection with such fiduciary or other relationships without regard to the Dealer Managers and their respective affiliates relationship to you hereunder.

3.    **Termination.** This Engagement Letter may be terminated by a Dealer Manager as to itself at any time upon not less than 10 days' prior written notice to you. This Engagement Letter may be terminated by you upon not less than 10 days prior written notice to the Dealer Managers after the earliest to occur of (w) the date of termination of the Acquisition Agreement, (x) the consummation of the Stock Repurchase or (y) August 17, 2007. Upon any termination of this Engagement Letter, the obligations of the parties hereunder shall terminate, except for their obligations under paragraphs 4, 5(b), 7 and 8 below, which in each case shall survive in accordance with its terms.

4.    **Indemnification.** You shall indemnify and hold harmless the Dealer Managers and the other Indemnified Persons referred to therein to the extent set forth in Annex I hereto to the extent set forth therein, which annex is incorporated by reference herein and constitutes a part hereof; *provided* that to the extent any dealer manager agreement shall be executed by any Dealer Manager in connection with the Stock Repurchase, then any claim by such Dealer Manager as an Indemnified Person for indemnity relating to the Stock Repurchase shall be made pursuant to the indemnity provisions of that document.

5.    **Fees and Expenses.** (a) Dealer Manager Fee. In connection with the Stock Repurchase, you shall pay (or cause to be paid) aggregate customary dealer manager fees in an amount to be agreed.

(b)    Reimbursement of Expenses. You shall reimburse the Dealer Managers promptly upon presentation of invoices specifying the expenses so incurred, for all their reasonable out-of-pocket costs and expenses (including, without limitation, reasonable fees, disbursements and other charges of one law firm as counsel for the Dealer Managers) incurred in connection with the preparation of this Engagement Letter or any of the documents or other matters relating to the Stock Repurchase or any of the other transactions contemplated hereby, whether or not the Stock Repurchase or any of the other transactions contemplated hereby are consummated; *provided, however,* that if a dealer manager agreement is executed and delivered by the Dealer Managers and you relating to the Stock Repurchase, the reimbursement provisions of any such agreement shall supersede the provisions of this

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

-4-

paragraph (b). You shall be responsible for all printing costs, filing fees and "blue-sky" fees and expenses.

Your obligation to pay each such fee shall be absolute and unconditional and shall not be subject to reduction by way of set-off or counterclaim.

6.    **Disclosure.**  In connection with its engagement hereunder, the Dealer Managers shall assist you in preparing an offer to purchase or other document to be used in connection with the Stock Repurchase (the "Offers to Purchase"). You shall furnish to the Dealer Managers, promptly upon such information becoming available, all financial and other information concerning you and related matters (the "Information") which the Dealer Managers may reasonably request for inclusion in any of the Offers to Purchase or otherwise. The Dealer Managers may rely, without independent verification, upon the accuracy and completeness of the Information and any Offer to Purchase, and the Dealer Managers do not assume any responsibility therefor.

The Dealer Managers may (subject to paragraph 7(a) below) share any Offer to Purchase, the Information and any other information or matters relating to you or the transactions contemplated hereby with their affiliates and the Dealer Managers' affiliates may likewise share information relating to you or such transactions with the Dealer Managers. Each of the Dealer Managers shall be responsible for their compliance with paragraph 7(a) below.

7.    **Confidentiality.**  (a) Each Dealer Manager shall use all information provided to it by or on behalf of you in connection with the First Step Transactions solely for the purpose of providing the services that are the subject of this Engagement Letter and shall treat all such information confidentially, *provided* that nothing herein shall prevent each Dealer Manager from disclosing any such information (with a request for confidential treatment in the case of clause (i) or (ii), if available) (i) to the extent required, pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law or compulsory legal process, (ii) upon the request or demand of any regulatory authority having jurisdiction over such Dealer Manager or any affiliate thereof, (iii) to the extent that such information becomes publicly available other than by reason of disclosure by the Dealer Managers, or (iv) to the Dealer Managers or their respective officers, directors, affiliates, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information (it being understood that the Dealer Managers shall be responsible for any breach of this provision by any of their respective related parties).

(b)    You will not disclose either the existence of this Engagement Letter or the contents hereof to any person without the prior written approval of the Dealer Managers (which consent will not be unreasonably withheld, conditioned or delayed), except that you may disclose this Engagement Letter and the contents hereof (i) to your and Holdco's respective officers, directors, employees, attorneys and legal advisors on a confidential and "need-to-know" basis and (ii) as required by applicable law or compulsory legal process. The provisions contained in this paragraph 7 shall remain in full force and effect for a period of one year following the termination of this Engagement Letter, notwithstanding the termination of this Engagement Letter.

**HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY**

ML-TRIB-0000820

-5-

8.      **Governing Law and Submission to Jurisdiction.**  THIS ENGAGEMENT LETTER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.  YOU AND THE DEALER MANAGERS IRREVOCABLY AGREE TO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY OR ON BEHALF OF ANY PARTY RELATED TO OR ARISING OUT OF THIS ENGAGEMENT LETTER OR THE PERFORMANCE OF SERVICES HEREUNDER.

The parties hereto irrevocably and unconditionally submit to the nonexclusive jurisdiction of any state or federal court sitting in The City of New York over any suit, action or proceeding arising out of or relating to this Engagement Letter.  Service of any process, summons, notice or document by registered mail addressed to you shall be effective service of process against such person for any suit, action or proceeding brought in any such court.  The parties hereto irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any such court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  A final judgment in any such suit, action or proceeding brought against any party hereto in any such court may be enforced in any other courts to whose jurisdiction such party are or may be subject, by suit upon judgment.

9.      **Miscellaneous.**  This Engagement Letter contains the entire agreement between the parties relating to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto.  This Engagement Letter may not be amended or modified except by a writing executed by each of the parties hereto.  Paragraph headings herein are for convenience only and are not a part of this Engagement Letter.  This Engagement Letter is solely for the benefit of you and the Dealer Managers, and no other person (except for Indemnified Persons, to the extent set forth in Annex I hereto) shall acquire or have any rights under or by virtue of this Engagement Letter.  This Engagement Letter is not intended to create a fiduciary relationship among the parties hereto.  This Engagement Letter may not be assigned by you without the Dealer Managers' prior written consent.  This Engagement Letter may not be assigned by any Dealer Manager, other than to one or more of its affiliates, without your prior written consent.

If any term, provision, covenant or restriction contained in this Engagement Letter is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions, covenants and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.  You and the Dealer Managers shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, void or unenforceable provisions.

This Engagement Letter may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.  Delivery of an executed counterpart of a signature page of this Engagement Letter by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature Page Follows]

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Dealer Managers the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you and the Dealer Managers.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

By: _Stephen D Pan_____
Name: Stephen Paras
Title: Managing Director

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name:
Title:

J.P. MORGAN SECURITIES INC.

By:_____
Name:
Title:

[Step One Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

ML-TRIB-0000822

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Dealer Managers the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you and the Dealer Managers.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

By:_____
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name: _Robert H. Chen_
Title: _Director_

J.P. MORGAN SECURITIES INC.

By:_____
Name:
Title:

[Step One Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

ML-TRIB-0000823

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Dealer Managers the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you and the Dealer Managers.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

By:_____
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name:
Title:

J.P. MORGAN SECURITIES INC.,

By:_____
Name:
Title:                    Robert Anastasio
                          Vice President

[Step One Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

ML-TRIB-0000824

BANC OF AMERICA SECURITIES LLC

By: _____
Name: James G Rose
Title: Managing Director

[Step One Engagement Letter]

**HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY**

**ML-TRIB-0000825**

Accepted and agreed to as of
the date first written above:

TRIBUNE COMPANY

By: _____

    Name:  Donald C. Grenesko
    Title:   Senior Vice President, Finance and Administration

Acknowledged:

EGI-TRB, L.L.C.

By: _____

    Name:
    Title:

[First Step Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

ML-TRIB-0000826

Accepted and agreed to as of
the date first above written:

TRIBUNE COMPANY

By: _____
Name: Dennis J. FitzSimons
Title: Chairman, President and
       Chief Executive Officer

EGI-TRB, L.L.C.

By: ~~~~~~~~~~~~~~~~
Name: Philip G. Tinkler
Title: Vice President

Signature Page to the First Step Engagement Letter

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY                    ML-TRIB-0000827

ANNEX I
to the Engagement Letter

All capitalized terms used herein but not defined herein shall have the meanings provided in the Engagement Letter to which this Annex I is attached (the "Engagement Letter").

In connection with the Dealer Managers' engagement to render investment banking services to you in connection with the transactions proposed by the Engagement Letter, you will indemnify and hold harmless each of the Dealer Managers, their respective affiliates, and their respective directors, officers, agents, advisors, controlling persons or employees (hereinafter collectively, the "Indemnified Persons"), to the full extent lawful, from and against, and the Indemnified Persons shall have no liability to you, your affiliates or your officers, directors, employees, advisors, controlling persons, agents (collectively, the "Representatives"), creditors or security holders for, any damages, losses, expenses, claims or proceedings including shareholder actions (collectively, "losses") to the extent (i) related to or arising out of (A) oral or written information provided by you, which you or any Indemnified Person provides to any actual or potential offerees, or (B) other action or failure to act by you or any Representative or by any Indemnified Person at the request or with the consent of you or any Representative, or (ii) otherwise related to or arising out of such engagement or any transaction or conduct in connection therewith (including, without limitation, in connection with any action, suit or proceeding (except that this clause (ii) shall not apply with respect to any losses finally judicially determined by a court of competent jurisdiction to have resulted from such Indemnified Person's bad faith, gross negligence or willful misconduct).

If the foregoing indemnity is unavailable to the Indemnified Person for any reason (other than as provided in the immediately preceding paragraph), you will contribute to any claims, damages, liabilities or expenses related to or arising out of such engagement or any transaction or conduct in connection therewith. For such losses referred to in clause (i) of the immediately preceding paragraph, you and the Dealer Managers shall contribute in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Indemnified Persons and by you from the actual or proposed transaction giving rise to such engagement; *provided* that the Indemnified Persons' aggregate contribution to the amount paid or payable under this paragraph shall not exceed the aggregate amount of the fees actually received by the respective Dealer Managers under the Engagement Letter. For any other losses, or for losses referred to in clause (i) of the first paragraph hereof if the allocation provided by the immediately preceding sentence is unavailable for any reason, you and the Dealer Managers shall contribute in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of each of them in connection with the statements, omissions or other conduct which resulted in such losses, as well as any other relevant equitable considerations; *provided* the Indemnified Persons' aggregate contribution to the amount paid or payable under this paragraph shall not exceed the aggregate amount of the fees actually received by the respective Dealer Managers under the Engagement Letter. Benefits received (or anticipated to be received) by you and your affiliates shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, exchangeable, issuable or transferable in such transaction or proposed transaction, and benefits received by any Indemnified Person (or anticipated to be received) shall be deemed to be equal to the compensation payable by you to such Indemnified Person in connection with such engagement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by you or other conduct by you (or any Representative) or by an Indemnified Person at the request or with the

A-1

ML-TRIB-0000828

consent of you or any Representative, on the one hand, or by an Indemnified Person (other than at the request or with the consent of you or any Representative) on the other hand. The Indemnified Persons and you agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

You will not, without the prior written consent of the Dealer Managers (not to be unreasonably withheld) settle or compromise or consent to the entry of any judgment in any pending or threatened claim or proceeding related to or arising out of such engagement or transactions or conduct in connection therewith (whether or not any Indemnified Person is a party to such claim or proceeding) unless such settlement (a) includes a provision unconditionally releasing each Indemnified Person from and holding each Indemnified Person harmless against all liability in respect of claims by any releasing party related to or arising out of such engagement or any transaction or conduct in connection therewith and (b) does not include any admission or stipulation as to fault or liability regarding any Indemnified Person. You will not be liable in respect of any settlement effected by an Indemnified Person without your consent, which consent will not be unreasonably withheld. You will also promptly reimburse each Indemnified Person for all reasonable out-of-pocket expenses (including reasonable counsel fees and expenses) as they are incurred by the Indemnified Persons in connection with investigating, preparing or defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such claim or proceeding).

If any action, suit, proceeding or investigation is commenced as to which an Indemnified Person proposes to demand indemnification, such Indemnified Person shall notify you with reasonable promptness; *provided* that any failure by such Indemnified Person to notify you shall not relieve you from your obligations hereunder (except, with respect to your obligations under the second paragraph hereof, to the extent that you are materially prejudiced by such failure to promptly notify). You shall be entitled to assume the defense of any such action, suit, proceeding or investigation, including the employment of counsel reasonably satisfactory to the Indemnified Persons. Each Indemnified Person shall have the right to counsel of its own choice to represent it, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (a) you have failed to promptly assume the defense and employ counsel reasonably satisfactory to such Indemnified Person in accordance with the preceding sentence, or (b) such Indemnified Person shall have been advised by counsel that there exists an actual or potential conflict of interests between or among you and such Indemnified Person, including a situation in which one or more legal defenses may be available to such Indemnified Person that are inconsistent with those available to you (in which case you shall not be entitled to assume the defense of such action, suit or investigation on behalf of such Indemnified Person); *provided* that you shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceeding arising out of the same general allegations which does not give rise to any actual or potential conflict among the Indemnified Persons, be liable for fees and expenses of more than one separate firm of attorneys (in addition to any local counsel) at any time for all Indemnified Persons; and such counsel shall, to the extent consistent with its professional responsibilities, cooperate with you and any counsel designated by you.

The foregoing shall be in addition to any rights that the Indemnified Persons may have at common law or otherwise.

This Indemnification shall remain in full force and effect following the completion or termination of such engagement.

A-2

HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY

ML-TRIB-0000829

**HIGHLY CONFIDENTIAL - ATTORNEY EYES' ONLY**

**ML-TRIB-0000830**