*Highly Confidential*

| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED 4 World Financial Center New York, NY 10080 | J.P. MORGAN SECURITIES INC. 270 Park Avenue New York, NY 10017 | CITIGROUP GLOBAL MARKETS INC. 388 Greenwich Street New York, NY 10013 | BANC OF AMERICA SECURITIES LLC 9 West 57th Street New York, NY 10019 |
|---|---|---|---|

April 5, 2007

Tribune Company
435 North Michigan Avenue, 6th Floor
Chicago, Illinois 60611

Attention:    Don Grenesko
              Senior Vice President, Finance and Administration

Re: __Project Tower — Amended and Restated Second Step Engagement Letter__

Ladies and Gentlemen:

Tribune Company ("you") has advised Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), J.P. Morgan Securities Inc. ("JPMorgan"), Citigroup Global Markets Inc. ("Citigroup") and Banc of America Securities LLC ("BAS" and, together with JPMorgan, MLPF&S and Citigroup, the "Managers") that it intends to establish the Second Step Facilities (as defined below).  For purposes of this Engagement Letter, "Citigroup," "we" or "us" shall mean Citigroup Global Markets Inc., Citibank, N.A., Citicorp USA, Inc., Citicorp North America, Inc. and/or any of their affiliates as Citigroup shall determine to be appropriate to provide the services contemplated herein.  This letter amends, restates and supersedes in its entirety the Project Tower – Second Step Engagement Letter among JPMorgan, JPMCB, Merrill Lynch, and Citigroup dated April 1, 2007 and such Engagement Letter shall be of no further force or effect.

You have also advised us that (i) you have entered into an agreement and plan of merger dated the date hereof (the "Acquisition Agreement") with a new employee stock ownership plan sponsored by Tribune (the "ESOP") that will be a "qualified plan" and an "employee stock ownership plan" under the Internal Revenue Code of 1986, as amended (the "Code") for the benefit of employees of Tribune and its subsidiaries (the administrator of the ESOP will be a fiduciary that is qualified under the Code) and an entity formed by the ESOP, pursuant to which such entity ("Merger Sub") will be merged (the "Acquisition") with and into Tribune with Tribune continuing as the surviving corporation, (ii) concurrently with the execution and delivery of the Acquisition Agreement, you intend to enter into a securities purchase agreement with EGI-TRB, L.L.C., a newly formed single member limited liability company ("Holdco") owned by Samuel Zell ("Zell"), pursuant to which Holdco will invest, which investment will be personally guaranteed by Zell, in Tribune $250.0 million in cash in exchange for $50.0 million of common equity (at a price of $34.00 per share) and an unsecured subordinated exchangeable promissory note in the principal amount of $200.0 million due upon the earlier to occur of the consummation of the Acquisition and the termination of the Acquisition Agreement in accordance

          BOA-TRB-0004765

-2-

with its terms, (iii) concurrently with the execution and delivery of the Acquisition Agreement, Tribune will form the ESOP, (iv) concurrently with or as soon as practicable following the execution of the Acquisition Agreement, the ESOP will purchase $250.0 million of Tribune common equity (at a price not in excess of fair market value for purposes of Section 3(18) of ERISA) in exchange for a $250.0 million aggregate principal amount 30 year note (at a reasonable rate of interest and otherwise on arms' length terms that are generally fair and reasonable to the ESOP from a financial point of view) (such note, the "<u>ESOP Note</u>" and such investment, the "<u>ESOP Investment</u>"), (v) immediately upon consummation of the Acquisition, the ESOP will own 100% of the equity of Tribune, (vi) immediately following the consummation of the Acquisition, Holdco will use the cash proceeds it receives from the Acquisition plus an additional $65.0 million to purchase: (a) an 11 year $225.0 million initial principal amount pay-in-kind subordinated note (the "<u>Zell Sub Note</u>") and (b) a 15 year warrant (the "<u>Warrant</u>") to purchase the number of shares of the common stock of Tribune (on a fully diluted basis) set forth in the Warrant at the exercise price provided for in the Warrant (such purchase, the "<u>Holdco Purchase</u>"), and (vii) Tribune will borrow funds under its credit agreement pursuant to an incremental term loan facility thereunder (the "<u>Incremental Facility</u>") to finance in part the Acquisition and will either (a) borrow up to $2,100 million in senior unsecured loans from one or more lenders under a senior unsecured bridge facility (the "<u>Senior Bridge Facility</u>" and together with the Incremental Facility, the "<u>Second Step Facilities</u>") or (b) issue $2,100 million of Notes (defined below).

Accordingly, the parties hereto agree as follows:

1.     **Engagement of the Managers.**  You hereby engage MLPF&S, JPMorgan, Citigroup and BAS to be the joint bookrunning managers and the exclusive lead underwriters of, or exclusive lead placement agents for, or exclusive lead initial purchasers of, any public or private offering of debt securities issued by Holdco, Tribune or any of your or their respective subsidiaries solely in connection with the consummation of the Acquisition or the issuance of any debt securities issued to refinance (in whole or in part) the Senior Bridge Facility (any such securities being ("<u>Securities</u>") any such offering being an "<u>Offering</u>"), whether completed before, on or after the closing date of the Second Step Transactions (the "<u>Second Step Closing Date</u>"), including, but not limited to, the contemplated issuance by Tribune of senior notes (the "<u>Senior Notes</u>") and/or senior subordinated notes (the "<u>Senior Subordinated Notes</u>" and together with the Senior Notes, the "<u>Notes</u>") in an aggregate principal amount of up to approximately $2,100.0 million (or any greater amount included in one or more Offerings and allocated between Senior Notes and Senior Subordinated Notes as determined by the Managers in consultation with you) having standard market terms comparable to similar offerings being made at the time, as shall be agreed between you and the Managers (the "<u>Proposed Financing</u>").  The Managers will maintain sole physical books in connection with any Offering.  Notwithstanding anything to the contrary herein, the following financings shall not constitute an Offering: (x) the making of loans under the Second Step Facilities, (y) the making of loans customarily referred to as a commercial bank financing and (z) the issuance of any debt securities in connection with the refinancing of any of your debt other than the Senior Bridge Facility.

During the term hereof, you will not, will cause your subsidiaries not to, and will use commercially reasonable efforts to cause Tribune and its subsidiaries not to, initiate, solicit or enter into any discussions or negotiations looking toward the issuance, offering or sale of any Securities to any third parties in connection with financing the transactions described in the immediately preceding paragraph, except through the Managers.  In the event that you or your subsidiaries receives any inquiry concerning

-3-

any Securities, you agree that the party so receiving such inquiry will promptly inform the Managers of such inquiry. In addition, you agree that from the date hereof until the termination of this Engagement Letter, you and your subsidiaries will not and you will use commercially reasonable efforts to cause Tribune and its subsidiaries not to offer, sell, contract to sell or otherwise dispose of any securities substantially similar to such Securities to any third parties without the Managers' prior written consent (such consent not to be unreasonably withheld or delayed). You further represent and agree that no offers or sales of securities to third parties of the same or a similar class as any of the Securities in the Proposed Financing have been made or will be made by you or on your behalf which would be integrated with the offer and sale of such Securities under the doctrine of integration referred to in Regulation D under the Securities Act.

Notwithstanding the foregoing, each Manager reserves the right not to participate in any Offering, and the foregoing is not an agreement by such Manager to underwrite, place or purchase any Securities or otherwise provide any financing (any such obligation will arise only under an underwriting, placement agency agreement or purchase agreement, if accepted in accordance with its terms). In connection with any Offering in which any Manager elects to participate, you shall (or shall cause the issuer to) enter into an underwriting agreement, placement agency agreement or purchase agreement, as applicable, with such Manager(s), which agreement shall be consistent with this Engagement Letter and otherwise in a mutually acceptable form.

In connection with any Offering in which the Managers participate, the name of each Manager will appear on the front and back cover pages of each prospectus, private placement memorandum, confidential offering memorandum or other document prepared in connection with any Offering with (i) Merrill Lynch having "left" placement and the names of the other Managers appearing in such order as they appear in the caption of this letter and (ii) the name of each other underwriter, initial purchaser or placement agent involved in such Offering shall appear as designated by mutual consent of the Managers and you (each such consent not to be unreasonably withheld or delayed).

It is currently expected that the Proposed Financing will be consummated on or prior to the Second Step Closing Date. You agree to and to use your commercially reasonable efforts to cause Tribune to promptly commence the preparation of a registration statement or a Rule 144A offering memorandum or other private placement memorandum relating to the Proposed Financing. You further agree that you will and will use your commercially reasonable efforts to cause Tribune to (a) provide the Managers as soon as practicable but in any event no later than is reasonable and customary for financings of this type, with a complete initial draft of a registration statement or a Rule 144A offering memorandum or other private placement memorandum relating to the Proposed Financing, which contains all financial statements and other data to be included therein (including all audited financial statements, all unaudited financial statements (which shall have been reviewed by the independent accountants for Tribune as provided in Statement on Auditing Standards No. 100) and all appropriate pro forma financial statements prepared in accordance with, or reconciled to, generally accepted accounting principles and practices in the United States ("U.S. GAAP") and prepared in accordance with Regulation S-X under the Securities Act of 1933 (the "Securities Act"), and all other data (including selected financial data) that the Securities and Exchange Commission would require in a registered offering of any Securities in the Proposed Financing or that would be necessary for the Managers' to receive customary "comfort" (including "negative assurance" comfort) from independent accountants in connection with the Proposed Financing), and (b) provide the Managers, as soon as practicable but in any event no

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

-4-

later than is reasonable and customary for financings of this type, with a complete printed preliminary prospectus or preliminary offering memorandum or preliminary private placement memorandum suitable for use in a customary high-yield road show relating to the issuance of such Securities (including all audited financial statements, all unaudited financial statements (which shall have been reviewed by the independent accountants for Tribune as provided in Statement on Auditing Standards No. 100) and all appropriate pro forma financial statements prepared in accordance with, or reconciled to, U.S. GAAP and prepared in accordance with Regulation S-X under the Securities Act, and all other data (including selected financial data) that the Securities and Exchange Commission would require in a registered offering of such Securities or that would be necessary for the Managers to receive customary "comfort" (including "negative assurance" comfort) from independent accountants in connection with the Proposed Financing).  To assist the Managers in a timely completion of the Offering, you agree, upon the Managers' reasonable request, to make your, and to use your commercially reasonable efforts to make Tribune's, senior officers and representatives available to the Managers in connection with the Offering, including making them reasonably available to assist in the preparation of one or more offering documents (including assistance in obtaining industry data), to participate in due diligence sessions and to participate in one or more road shows to market applicable Securities.

You also agree that you will promptly commence the preparation of materials for a presentation to Standard & Poor's Rating Group and Moody's Investors Service, Inc. for a rating on the Notes.

2.      **Matters Relating to Engagement.**  You acknowledge that the Managers have been engaged solely to provide the services set forth in this Engagement Letter.  In rendering such services, each of the Managers shall act as an independent contractor, and any duties of such Manager arising out of its engagement hereunder shall be owed solely to you.

You acknowledge that each of the Managers is a securities firm that is engaged in securities trading and brokerage activities, as well as providing investment banking and financial advisory services.  In the ordinary course of trading and brokerage activities, each of the Managers and their respective affiliates thereof may at any time hold long or short positions, and may trade or otherwise effect transactions, for their own account or the accounts of customers, in debt or equity securities of entities that may be involved in the transactions contemplated hereby.  Each of the Managers recognizes its responsibility for compliance with federal securities laws in connection with such activities.

You acknowledge that each of the Managers will be acting pursuant to a contractual relationship on an arm's length basis and in no event do the parties intend that each of the Managers act or be responsible as a fiduciary to you, your management, stockholders, creditors or any other person.  You and the Managers each hereby expressly disclaim any fiduciary relationship and agree that they are each responsible for making their own independent judgments with respect to any transactions entered into between them.

In addition, each of the Managers and their respective affiliates may from time to time perform various investment banking, commercial banking and financial advisory services for other clients and customers who may have conflicting interests with respect to you or the Offering.  None of the Managers and their respective affiliates will use confidential information obtained from you pursuant to this engagement or their other relationships with you in connection with the performance by the Managers and their respective affiliates of services for other companies, and the Managers and their respective affili-

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

-5-

ates will not furnish any such information to other companies. You also acknowledge that the Managers and their respective affiliates have no obligation to use in connection with this engagement, or to furnish to you, confidential information obtained from other companies.

Furthermore, you acknowledge that the Managers and their respective affiliates may have fiduciary or other relationships whereby the Managers and their respective affiliates may exercise voting power over securities of various persons, which securities may from time to time include securities of yours, potential purchasers of the Securities or others with interests in respect of the Offering. You acknowledge that the Managers and their respective subsidiaries may exercise such powers and otherwise perform their functions in connection with such fiduciary or other relationships without regard to the Managers and their respective affiliates relationships to you hereunder.

3.      **Termination.** This Engagement Letter may be terminated by a Manager as to itself at any time upon not less than 10 days' prior written notice to you. This Engagement Letter may be terminated by you upon not less than 10 days prior written notice to the Managers after the earliest to occur of (w) the date of termination of the Acquisition Agreement, (x) the issuance of the aggregate principal amount of Notes required (together with the Incremental Facility) to complete the Acquisition prior to, on or after the Second Step Closing Date for which the Managers have acted in the capacities and been paid the fees set forth in this Engagement Letter, (y) May 31, 2008 or (z) the date on which all outstanding Initial Senior Loans are repaid in full. Upon any termination of this Engagement Letter, the obligations of the parties hereunder shall terminate, except for their obligations under paragraphs 4, 5(b), 7 and 8 below, which in each case shall survive in accordance with its terms.

4.      **Indemnification.** You shall indemnify and hold harmless the Managers and the other Indemnified Persons referred to therein to the extent set forth in Annex I hereto to the extent set forth therein, which annex is incorporated by reference herein and constitutes a part hereof; *provided* that to the extent any underwriting agreement, placement agency agreement, purchase agreement shall be executed by any Manager in connection with an Offering, then any claim by such Manager as an Indemnified Person for indemnity shall be made pursuant to the indemnity provisions of that document.

5.      **Fees and Expenses.** (a) Underwriting Fee. In any Offering that is consummated before termination of this Engagement Letter and in which the Managers act as lead underwriters, lead placement agents or lead initial purchasers, you shall pay (or cause to be paid) aggregate underwriters' or initial purchasers' discounts, or placement agency fees, as applicable, equal to 2.00% of the gross proceeds of such Offering (the "Underwriting Fee"), 30% of which will be allocated to each of MLPF&S and JPMorgan, 25% of which will be allocated to Citigroup and 15% of which will be allocated to BAS, in each case payable at the closing of such Offering. If prior to the termination of our engagement hereunder any Offering is consummated other than with each of the Managers acting in the capacities specified in Section 1 of this Engagement Letter (other than any Offering in which any such Manager has declined in writing to participate), then upon consummation thereof you shall pay (or cause to be paid) to the Managers a fee of 2.00% of the aggregate principal amount of Notes offered thereby, which will be allocated to each Manager as set forth in the immediately preceding sentence.

(b)      Reimbursement of Expenses. You shall reimburse (or cause to be reimbursed) the Managers promptly upon presentation of invoices specifying the expenses so incurred, for all their reasonable out-of-pocket costs and expenses (including, without limitation, reasonable fees, disbursements and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                      BOA-TRB-0004769

-6-

other charges of one law firm as counsel for the Managers) incurred in connection with the preparation of this Engagement Letter or any of the documents or other matters relating to each Offering or any of the other transactions contemplated hereby, whether or not any Securities are issued, offered or sold; *provided, however*, that if the Securities are issued pursuant to an Offering in which a Manager participates in the capacity contemplated herein, there shall be no obligation by you to reimburse any such costs and expenses of such Manager (including expenses of such Manager's counsel). You shall be responsible for all printing costs, filing fees and "blue-sky" fees and expenses.

Your obligation to pay each such fee shall be absolute and unconditional and shall not be subject to reduction by way of set-off or counterclaim.

6.     **Disclosure.** In connection with its engagement hereunder, the Managers shall assist you in preparing a prospectus, offering circular, private placement memorandum or other document to be used in connection with each Offering in which the Managers participate (the "Offering Document"). You shall furnish to the Managers, promptly upon such information becoming available, all financial and other information concerning Tribune and related matters (the "Information") which the Managers may reasonably request for inclusion in any Offering Document or otherwise. The Managers may rely, without independent verification, upon the accuracy and completeness of the Information and any Offering Document, and the Managers do not assume any responsibility therefor.

The Managers may (subject to paragraph 7(a) below) share any Offering Document, the Information and any other information or matters relating to you or the transactions contemplated hereby with their affiliates, and the Managers' affiliates may likewise share information relating to you or such transactions with the Managers. Each of the Managers shall be responsible for their compliance with paragraph 7(a) below.

7.     **Confidentiality.** (a)  Each Managers shall use all information provided to it by or on behalf of you in connection with the Second Step Transactions solely for the purpose of providing the services that are the subject of this Engagement Letter and shall treat all such information confidentially, *provided* that nothing herein shall prevent each Manager from disclosing any such information (with a request for confidential treatment in the case of clause (i) or (ii), if available) (i) to the extent required, pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law or compulsory legal process, (ii) upon the request or demand of any regulatory authority having jurisdiction over such Manager or any affiliate thereof, (iii) to the extent that such information becomes publicly available other than by reason of disclosure by the Managers, or (iv) to the Managers or their respective officers, directors, affiliates, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information (it being understood that the Managers shall be responsible for any breach of this provision by any of their respective related parties).

(b)     You will not disclose either the existence of this Engagement Letter or the contents hereof to any person without the prior written approval of the Managers (which consent will not be unreasonably withheld, conditioned or delayed), except that you may disclose this Engagement Letter and the contents hereof (i) to your and Holdco's respective officers, directors, employees, attorneys and legal advisors on a confidential and "need-to-know" basis and (ii) as required by applicable law or compul-

sory legal process.  The provisions contained in this paragraph 7 shall remain in full force and effect for a period of one year following the termination of this Engagement Letter, notwithstanding the termination of this Engagement Letter.

8.      **Governing Law and Submission to Jurisdiction.**  THIS ENGAGEMENT LETTER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.  YOU AND THE MANAGERS IRREVOCABLY AGREE TO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY OR ON BEHALF OF ANY PARTY RELATED TO OR ARISING OUT OF THIS ENGAGEMENT LETTER OR THE PERFORMANCE OF SERVICES HEREUNDER.

The parties hereto irrevocably and unconditionally submit to the nonexclusive jurisdiction of any state or federal court sitting in The City of New York over any suit, action or proceeding arising out of or relating to this Engagement Letter.  Service of any process, summons, notice or document by registered mail addressed to you shall be effective service of process against such person for any suit, action or proceeding brought in any such court.  The parties hereto irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any such court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.  A final judgment in any such suit, action or proceeding brought against any party hereto in any such court may be enforced in any other courts to whose jurisdiction such party are or may be subject, by suit upon judgment.

9.      **Miscellaneous.**  This Engagement Letter contains the entire agreement between the parties relating to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto.  This Engagement Letter may not be amended or modified except by a writing executed by each of the parties hereto.  Paragraph headings herein are for convenience only and are not a part of this Engagement Letter.  This Engagement Letter is solely for the benefit of you and the Managers, and no other person (except for Indemnified Persons, to the extent set forth in Annex I hereto) shall acquire or have any rights under or by virtue of this Engagement Letter.  This Engagement Letter is not intended to create a fiduciary relationship among the parties hereto.  This Engagement Letter may not be assigned by you without the Managers' prior written consent.  This Engagement Letter may not be assigned by a Manager, other than to one or more of its affiliates, without your prior written consent.

If any term, provision, covenant or restriction contained in this Engagement Letter is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions, covenants and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.  You and the Managers shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, void or unenforceable provisions.

This Engagement Letter may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.  Delivery of an executed

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

-8-

counterpart of a signature page of this Engagement Letter by facsimile transmission shall be effective as delivery of a manually executed counterpart hereof.

[Signature Page Follows]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to MLPF&S, Citigroup and JPMorgan the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, MLPF&S, Citigroup and JPMorgan.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

By: _Stephen D Pa_
Name: Stephen Pams
Title: Managing Director

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name:
Title:

J.P. MORGAN SECURITIES INC.

By:_____
Name:
Title:

[Step Two Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to MLPF&S, Citigroup and JPMorgan the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, MLPF&S, Citigroup and JPMorgan.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED,

By:_____
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name:   Robert H. Chen
Title:   Director

J.P. MORGAN SECURITIES INC.

By:_____
Name:
Title:

[Step Two Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BOA-TRB-0004774

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to MLPF&S, Citigroup and JPMorgan the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, MLPF&S, Citigroup and JPMorgan.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED,

By:_____
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.,

By:_____
Name:
Title:

J.P. MORGAN SECURITIES INC.

By:_____
Name:               Robert Anastasio
Title:              Vice President

[Step Two Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

BANC OF AMERICA SECURITIES LLC

By: _____

Name: James G. Rose
Title: Managing Director

[Step Two Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    BOA-TRB-0004776

Accepted and agreed to as of
the date first above written:

TRIBUNE COMPANY

By:
    Name:   Donald C. Grenesko
    Title:   Senior Vice President, Finance and Administration

Acknowledged:

EGI-TRB, L.L.C.

By: _____
    Name:
    Title:

[Second Step Engagement Letter]

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Accepted and agreed to as of
the date first above written:

TRIBUNE COMPANY

By:    _____
Name:  Dennis J. FitzSimons
Title: Chairman, President and
       Chief Executive Officer


EGI-TRB, L.L.C.

By:    _____
Name:  Philip G. Tinkler
Title: Vice President

**Signature Page to the Second Step Engagement Letter**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                        BOA-TRB-0004778

**CONFIDENTIAL**                                                                   **ANNEX I**
                                                                        **to the Engagement Letter**

All capitalized terms used herein but not defined herein shall have the meanings provided in the En-
gagement Letter to which this Annex I is attached (the "Engagement Letter").

In connection with the Managers' engagement to render investment banking services to you in connec-
tion with the transactions proposed by the Engagement Letter, you or the relevant issuers (the "Indem-
nifying Party") will indemnify and hold harmless each of the Managers, their respective affiliates, and
their respective directors, officers, agents, advisors, controlling persons or employees (hereinafter col-
lectively, the "Indemnified Persons"), to the full extent lawful, from and against, and the Indemnified
Persons shall have no liability to the Indemnifying Parties, their respective affiliates, officers, direc-
tors, employees, advisors, controlling persons, agents (collectively, the "Representatives"), creditors or
security holders for, any damages, losses, expenses, claims or proceedings including shareholder ac-
tions (collectively, "losses") to the extent (i) related to or arising out of (A) oral or written information
provided by an Indemnifying Party, which an Indemnifying Party or any Indemnified Person provides
to any actual or potential buyers, sellers, investors or offerees, or (B) other action or failure to act by
an Indemnifying Party or any Representative or by any Indemnified Person at the request or with the
consent of an Indemnifying Person or any Representative, or (ii) otherwise related to or arising out of
such engagement or any transaction or conduct in connection therewith (including, without limitation,
in connection with any action, suit or proceeding), except that this clause (ii) shall not apply with re-
spect to any losses finally judicially determined by a court of competent jurisdiction to have resulted
from such Indemnified Person's bad faith, gross negligence or willful misconduct.

If the foregoing indemnity is unavailable to the Indemnified Person for any reason (other than as pro-
vided in the immediately preceding paragraph), the Indemnifying Party will contribute to any claims,
damages, liabilities or expenses related to or arising out of such engagement or any transaction or con-
duct in connection therewith.  For such losses referred to in clause (i) of the immediately preceding
paragraph, the Indemnifying Party and the Managers shall contribute in such proportion as is appro-
priate to reflect the relative benefits received (or anticipated to be received) by the Indemnified Per-
sons and by the Indemnifying Party from the actual or proposed transaction giving rise to such en-
gagement; *provided* that the Indemnified Persons' aggregate contribution to the amount paid or pay-
able under this paragraph shall not exceed the aggregate amount of the fees actually received by the
respective Managers under the Engagement Letter.  For any other losses, or for losses referred to in
clause (i) of the first paragraph hereof if the allocation provided by the immediately preceding sen-
tence is unavailable for any reason, the Indemnifying Party and the Managers shall contribute in such
proportion as is appropriate to reflect not only such relative benefits but also the relative fault of each
of them in connection with the statements, omissions or other conduct which resulted in such losses, as
well as any other relevant equitable considerations; *provided* the Indemnified Persons' aggregate con-
tribution to the amount paid or payable under this paragraph shall not exceed the aggregate amount of
the fees actually received by the respective Managers under the Engagement Letter.  Benefits received
(or anticipated to be received) by the Indemnifying Party and its affiliates shall be deemed to be equal
to the aggregate cash consideration and value of securities or any other property payable, exchange-
able, issuable or transferable in such transaction or proposed transaction, and benefits received by any
Indemnified Person (or anticipated to be received) shall be deemed to be equal to the compensation
payable by you to such Indemnified Person in connection with such engagement.  Relative fault shall
be determined by reference to, among other things, whether any alleged untrue statement or omission
or any other alleged conduct relates to information provided by an Indemnifying Party or other con-
duct by an Indemnifying Party (or any Representative) or by an Indemnified Person at the request or

A-1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          BOA-TRB-0004779

with the consent of you or any Representative, on the one hand, or by an Indemnified Person (other than at the request or with the consent of an Indemnifying Party or any Representative) on the other hand. The Indemnified Persons and you agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above.

No Indemnifying Party will, without the prior written consent of the Managers (not to be unreasonably withheld) settle or compromise or consent to the entry of any judgment in any pending or threatened claim or proceeding related to or arising out of such engagement or transactions or conduct in connection therewith (whether or not any Indemnified Person is a party to such claim or proceeding) unless such settlement (a) includes a provision unconditionally releasing each Indemnified Person from and holding each Indemnified Person harmless against all liability in respect of claims by any releasing party related to or arising out of such engagement or any transaction or conduct in connection therewith and (b) does not include any admission or stipulation as to fault or liability regarding any Indemnified Person. The Indemnifying Party will not be liable in respect of any settlement effected by an Indemnified Person without your consent, which consent will not be unreasonably withheld. The Indemnifying Party will also promptly reimburse each Indemnified Person for all reasonable out-of-pocket expenses (including reasonable counsel fees and expenses) as they are incurred by the Indemnified Persons in connection with investigating, preparing or defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such claim or proceeding).

If any action, suit, proceeding or investigation is commenced as to which an Indemnified Person proposes to demand indemnification, such Indemnified Person shall notify you with reasonable promptness; *provided* that any failure by such Indemnified Person to notify you shall not relieve you from your obligations hereunder (except, with respect to your obligations under the second paragraph hereof, to the extent that you are materially prejudiced by such failure to promptly notify). You shall be entitled to assume the defense of any such action, suit, proceeding or investigation, including the employment of counsel reasonably satisfactory to the Indemnified Persons. Each Indemnified Person shall have the right to counsel of its own choice to represent it, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (a) you have failed to promptly assume the defense and employ counsel reasonably satisfactory to such Indemnified Person in accordance with the preceding sentence, or (b) such Indemnified Person shall have been advised by counsel that there exists an actual or potential conflict of interests between or among you and such Indemnified Person, including a situation in which one or more legal defenses may be available to such Indemnified Person that are inconsistent with those available to you (in which case you shall not be entitled to assume the defense of such action, suit or investigation on behalf of such Indemnified Person); *provided* that you shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceeding arising out of the same general allegations which does not give rise to any actual or potential conflict among the Indemnified Persons, be liable for fees and expenses of more than one separate firm of attorneys (in addition to any local counsel) at any time for all Indemnified Persons; and such counsel shall, to the extent consistent with its professional responsibilities, cooperate with you and any counsel designated by you.

The foregoing shall be in addition to any rights that the Indemnified Persons may have at common law or otherwise.

This Indemnification shall remain in full force and effect following the completion or termination of such engagement.

A-2