# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
# MAY 26, 2006

The Tribune Company Board of Directors met on Friday, May 26, 2006 at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Dennis J. FitzSimons, Roger Goodan, Betsy D. Holden, Robert S. Morrison, William A. Osborn, William Stinehart, Jr., Dudley S. Taft and Miles D. White. Jeffrey Chandler, Enrique Hernandez, Jr. and J. Christopher Reyes participated via teleconference.

Portions of the meeting were also attended by Chandler Bigelow III, Donald C. Grenesko, Crane H. Kenney, Thomas D. Leach, Ruthellyn Musil, John E. Reardon and Scott C. Smith. Tom Cole of Sidley Austin, Michael Costa and Michael O'Grady of Merrill Lynch, and Michael Schell, Christina Mohr and Michael Canmann of Citigroup also participated in portions of the meeting.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

## EXECUTIVE SESSION

Mr. FitzSimons called the meeting to order at 10:00 a.m. in executive session, with Mr. Cole present. Mr. FitzSimons reviewed general business trends and discussed the agenda and meeting participants.

## LEVERAGED RECAPITALIZATION

Messrs. Bigelow, Grenesko, Kenney, Leach, Smith, Reardon and Ms. Musil joined the meeting at approximately 10:15 a.m.

Mr. Cole then advised the Board of their duties as fiduciaries in contemplating the proposed transactions. He also reviewed the statutory duties of directors under Delaware law in recapitalization transactions and discussed the fiduciary and securities law aspects of entering into agreements with the McCormick Tribune Foundation and the Chandler Trusts, should they so elect, to repurchase shares directly from those entities apart from a tender offer.

Messrs. Costa, O'Grady, Schell, Canmann and Ms. Mohr then joined the meeting and distributed materials addressing the proposed transaction.

Mr. Grenesko then reviewed the terms of a proposed leveraged recapitalization to repurchase up to 75 million shares of common stock of the Company for approximately $2.4 billion. Mr. Grenesko described the proposal that the shares be repurchased through a combination Dutch Auction tender offer, private purchase agreement with the McCormick Tribune Foundation and open market purchases. Mr. Grenesko described the form of financing for the transaction and the terms of the financing. He also reported that the Company would eliminate $200 million of expenses and sell up to $500 million on non-core assets as part of the plan. Mr. Grenesko then

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB-UR-0434010

described the primary benefits of the proposed transaction and reported on expected rating agency reaction. Finally, Mr. Grenesko reviewed the expected reaction of shareholders and the financial impact of the transaction. Mr. Grenesko answered questions about the transaction terms throughout his presentation.

Mr. Costa then reviewed the strategic transactions considered by the Board from time to time since its February 2005 Board meeting and the view of Merrill Lynch that the proposed leveraged recapitalization is the most advantageous transaction the Company can pursue at this time for the creation of shareholder value. Mr. Costa reviewed the Company's current capital structure and the advantages of the proposed transaction compared to other strategic alternatives. He also reviewed the negative attributes of the proposal, including somewhat reduced financial flexibility and increased equity volatility. Mr. Costa also pointed out that the leveraged recapitalization will not impair the Company's flexibility to pursue other transactions reviewed by the Company over the past year. Mr. Costa then reviewed the Company's current trading values, cost of capital and potential share price accretion under the proposed transaction. He discussed the lessons from the Knight-Ridder transaction with McClatchy and answered questions regarding the Company's current operating plan and ability to service the increased debt under the proposal. Mr. Costa answered questions from the Board throughout his presentation.

Ms. Mohr then reviewed the mechanics of the tender offer, size and price considerations, trading values of precedent transactions and expected impact on the Company's shares over the short, medium and longer term. Ms. Mohr also reviewed the Company's shareholder base and projected participation levels in the tender offer. She then discussed the preliminary financing structure, summary of terms, including financial covenants, and the impact of being "split rated". Ms. Mohr answered questions throughout her presentation.

Mr. Grenesko then reviewed 5-year financial projections for the Company following the proposed transaction. He also reviewed financial "stress testing" performed by the Company to ensure its ability to service the debt under a variety of possible scenarios, including sustained periods of revenue decline and recession.

Members of the Board inquired about testing of the financial projections across additional scenarios, including the downside scenarios contained in strategic planning materials prepared by Boston Consulting Group (BCG) in 2005. Mr. Stinehart and Mr. Goodan expressed concern regarding adding the projected leverage given the uncertainties of the Company's operating performance. Mr. Stinehart also noted possible alternative strategic preferences, including a spin-off of the broadcasting division or a "sponsored" spin-off of broadcasting and/or certain publishing assets.

Messrs. Grenesko, Bigelow, Costa and Leach answered questions from the Board regarding the proposed transaction in the event of operating shortfalls described in the BCG scenarios. They also described means to reduce the debt via cost controls and the sale of assets. Upon the request of the Board, management agreed to prepare additional financial projections assuming downside

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB-UR-0434011

operating performance and to further describe assets that could be monetized to reduce debt if needed.

Mr. Kenney then reviewed the credit facilities Commitment Letter, term sheet, Fee Letter and draft Offer to Purchase. Throughout Mr. Kenney's presentation, he answered questions from the Board. At the conclusion of Mr. Kenney's report, Messrs. Costa, O'Grady, Schell, Canmann and Ms. Mohr departed.

**BROADCASTING UPDATE**

At approximately 12:45 p.m., Mr. Leach reviewed the status of various broadcasting transactions, including the Company's sale of its Atlanta television station, WATL-TV and its Albany television station, WCWN-TV. First, Mr. Leach reviewed the sale of WATL. He discussed the strategic rationale for the sale, the proposed terms, price and conditions to close. He reviewed the transaction status and following discussion, the Board approved the adoption of the following resolutions:

> RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of WATL, LLC, including a sale of all or substantially all of the assets of WATL, LLC, for not less than $170 million (collectively, the "Transaction");
>
> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company or the President or any Vice President of WATL, LLC (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;
>
> FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and
>
> FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB-UR-0434012

Mr. Leach then reviewed the prospects for the sale of WCWN. He reviewed the current bidding, including non-binding indications of interest. He then reviewed the strategic rationale for the divestiture and following discussion, the Board approved the adoption of the following resolutions:

> RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of WCWN LLC, including a sale of all or substantially all of the assets of WCWN LLC, for not less than $12 million (collectively, the "Transaction");
>
> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company or the President or any Vice President of WCWN LLC (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;
>
> FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings, to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and
>
> FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Mr. Leach then reviewed two other major broadcasting transactions being considered by the Company and answered questions from the Board regarding each transaction.

**TMCT UPDATE**

Mr. Kenney reviewed the status of the Company's consideration of the Chandler Trusts' proposal to distribute interests in the TMCT I limited liability company to the Company. Mr. Kenney described the valuations ascribed by the Company and the Chandler Trusts to the assets of TMCT I and the state of negotiations. Mr. Kenney also described the relationship between the proposed distribution of TMCT I and the proposed leveraged recapitalization. Mr. Stinehart then described the Chandler Trusts' concern about the impact the recapitalization would have on the value of the preferred stock contained in TMCT I. He also reported that if the Company does not

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB-UR-0434013