***HIGHLY CONFIDENTIAL***

J.P. MORGAN SECURITIES INC.
JPMORGAN CHASE BANK, N.A.
270 Park Avenue
New York, NY 10017

MERRILL LYNCH CAPITAL CORPORATION
4 World Financial Center
New York, NY 10080

CITIGROUP GLOBAL MARKETS INC.
388 Greenwich Street
New York, NY 10013

BANC OF AMERICA SECURITIES LLC
BANK OF AMERICA, N.A.
9 West 57th Street
New York, NY 10019

April 5, 2007

Tribune Company
435 North Michigan Avenue, 6th Floor
Chicago, Illinois 60611

Attention: Don Grenesko
Senior Vice President, Finance and Administration

**Re: Project Tower – Amended and Restated First Step Fee Letter**

Ladies and Gentlemen:

Reference is made to the Project Tower – Amended and Restated First Step Commitment Letter dated the date hereof between J.P. Morgan Securities Inc. ("JPMorgan"), JPMorgan Chase Bank, N.A. ("JPMCB"), Merrill Lynch Capital Corporation ("Merrill Lynch"), Citigroup Global Markets Inc. ("CGMI") on behalf of Citigroup, Bank of America, N.A. ("Bank of America"), Banc of America Securities LLC ("BAS") and you (the "Commitment Letter"). Capitalized terms used but not defined in this letter agreement (and references to "you") have the meanings assigned thereto in the Amended and Restated Commitment Letter (including attachments thereto). This letter amends, restates and supersedes in its entirety the Project Tower – First Step Fee Letter among JPMorgan, JPMCB, Merrill Lynch, and Citigroup dated April 1, 2007 and such Fee Letter shall be of no further force or effect.

1. Facilities Fees. As consideration for the Initial Lenders' agreements under the Commitment Letter in respect of the Senior Secured Credit Facilities and their services in structuring and arranging the Senior Secured Credit Facilities, you agree to pay or cause to be paid the following fees to the Initial Lenders (other than the Agency Fees which shall be paid to the Administrative Agent):

Underwriting Fees: An underwriting fee (the "Underwriting Fee") in an amount equal to 1.625% of the aggregate amount of the commitments pursuant to the Commitment Letter in respect of the Senior Secured Credit Facilities, which will be allocated among the Initial Lenders ratably in accordance with their respective commitments on the date hereof thereunder and will be earned and due and payable on the Closing Date.

Agency Fees: An administrative agency fee in respect of the Senior Secured Credit Facilities payable to the Administrative Agent in an amount to be agreed upon, such fee to be paid on the Closing Date and on each anniversary of the Closing Date so long as the Senior Secured Credit Facilities are in effect. Such fees shall be in addition to your obligations under Section 7 of the Commitment Letter.

2. Alternate Financing Fee. In addition, as consideration for the agreements of the Initial Lenders under the Commitment Letter in respect of the Senior Secured Credit Facilities, in the event that, within 12 months following the date of this letter agreement, you, Holdco or any of your or Holdco's respective subsidiaries consummates an Alternate Financing (as defined below), you agree to pay to the Initial Lenders the Underwriting Fee set forth in Paragraph 1 above in the same proportion as set forth in Paragraph 1 above (the "Alternate Financing Fee"), which shall be earned and due and payable on the date of consummation of such Alternate Financing. An "Alternate Financing" shall mean a debt financing (or series of related debt financings) for the purposes set forth in the Commitment Letter provided other than pursuant to arrangements with JPMorgan, JPMCB, Merrill Lynch, Citigroup, Bank of America and BAS acting in the roles contemplated by the Commitment Letter. Notwithstanding the foregoing, you shall not be required to pay (or cause to be paid) the Alternate Financing Fee owing to an Initial Lender, as applicable, if:

(i) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to JPMCB, JPMCB shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction;

(ii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Merrill Lynch, Merrill Lynch shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction (as defined below);

(iii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Citigroup, Citigroup shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction; or

(iv) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Bank of America, Bank of America shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction.

For purposes of this Paragraph 2, "Declined to Participate in an Alternate Transaction" shall mean (a) you have disclosed to the Initial Lenders and the Lead Arrangers the material terms and conditions of the debt financing proposed for the purposes set forth in the Commitment Letter and the debt financing proposed for the purpose of and as part of consummating the Second Step Transactions (any such combination of financing transactions, an "Alternate Transaction") (it being understood that no Alternate Transaction will be proposed primarily for the purpose of obtaining more favorable pricing, fees or other economic terms), (b) you offered to the Initial Lenders a bona fide right to provide on an exclusive basis such Alternate Transaction on the same terms and conditions as those disclosed by you in equivalent roles and with equivalent titles as provided to the Lead Arrangers and Initial Lenders in the Commitment Letter, (c) JPMCB, Merrill Lynch, Citigroup or Bank of America, as applicable, refused to provide such financing



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY 

substantially on the terms and conditions disclosed by you or on other terms and conditions that are as favorable, taken as a whole, as those disclosed by you, and (d) the lenders providing the Alternate Transaction provided such financing substantially on the terms and conditions disclosed by you to the Initial Lenders and Lead Arrangers or on other terms and conditions that are as favorable, taken as a whole, as such terms and conditions.

3. Market Flex. Notwithstanding anything to the contrary in this letter agreement, the Commitment Letter or Term Sheet, we shall have the right in our commercially reasonable judgment (with the consent of each of the Lead Arrangers but without the consent of, but in consultation with, you) prior to the Flex Termination Date to (i) change the interest rate margins applicable to each of the Senior Secured Credit Facilities, in each case if in our commercially reasonable judgment such change or modification is necessary to achieve a successful syndication; *provided* that the interest rate margins applicable to the Senior Secured Credit Facilities may not be increased by more than (x) 50 basis points if the corporate credit ratings for Tribune are B2 (no negative outlook) or better by Moody's and B (no negative outlook) or better by S&P and (y) 75 basis points if the corporate credit ratings are not as described in clause (x), in each case from the highest applicable interest margins or spreads, as the case may be, set forth in the Term Sheet, (ii) change the commitment fee in respect of the unused Delay Draw Facility to be equal to no more than 50% of the Applicable Margin on LIBOR Loans that are Tranche B Term Loans and (iii) to modify condition (vii) to the Incremental Facility described in the Term Sheet under "Incremental Facility" to provide that in the event the Applicable Margins for the Incremental Facility are greater than the Applicable Margins for the Tranche B Facility made on the Closing Date by 25 basis points or more, then the Applicable Margins for the existing Tranche B Facility shall be increased to equal the Applicable Margins for the Incremental Facility. Any increase in the interest margins permitted by the foregoing may, at the option of the Lead Arrangers, (i) take the form of original issue discount with original issue discount being equated to such interest margins in a manner determined by the Lead Arrangers and consistent with generally accepted financial practice based on an assumed four-year life to maturity or (ii) be accomplished by a combination of an increase in interest rates and such original issue discount; *provided* that Tribune may make Revolving Loans on the Closing Date to the extent of any original issue discount.

The Initial Lenders' rights under this paragraph will survive the execution of the Credit Documents and any borrowings thereunder and continue in effect until the earlier date (the "Flex Termination Date") of (a) the date the aggregate Initial Lenders' exposure under the Senior Secured Credit Facilities shall be at or below $450.0 million and (b) 45 days following the Closing Date. In the event that the Credit Documents are executed and delivered prior to the Flex Termination Date, so long as (i) such amendments are not otherwise inconsistent with applicable law and (ii) Tribune shall have received reasonable notice of such amendments and a reasonable opportunity to review and comment thereon, you agree to execute and deliver all amendments and waivers to the Credit Documents to give effect to the foregoing. The provisions of this paragraph shall survive the Closing Date and are an express condition to our commitment under the Commitment Letter.

4. Confidentiality. The parties hereto hereby agree that this letter agreement is subject to the confidentiality provisions in the Commitment Letter.

5. Miscellaneous. It is understood and agreed that this letter agreement shall not constitute or give rise to any obligation to provide any financing; such an obligation will arise only under the Commitment Letter if accepted in accordance with its terms. This letter agreement may not be amended or any provision hereof waived or modified except by an instrument in writing signed by each of the parties hereto. This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York. This letter agreement may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement.



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY 

Delivery of an executed counterpart of a signature page of this letter agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this letter agreement.



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

BOA-TRB-0002060

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: [signature]
Name: Stephen Paras
Title: Vice President

CITIGROUP GLOBAL MARKETS INC.

By: ______________________
Name:
Title:

J.P. MORGAN SECURITIES INC.

By: ______________________
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: ______________________
Name:
Title:

[Step One Fee Letter]

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: ______________________________
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.

By: ______________________________
Name: Robert H. Chen
Title: Director

J.P. MORGAN SECURITIES INC.

By: ______________________________
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: ______________________________
Name:
Title:

[Step One Fee Letter]

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: ______________________________
Name:
Title:

CITIGROUP GLOBAL MARKETS INC.

By: ______________________________
Name:
Title:

J.P. MORGAN SECURITIES INC.

By: ______________________________
Name: Robert Anastasio
Title: Vice President

JPMORGAN CHASE BANK, N.A.

By: ______________________________
Name: Robert Anastasio
Title: Vice President

[Step One Fee Letter]

BANK OF AMERICA, N.A.

By: [signature]
Name: DANIEL R. PETRIK
Title: SENIOR VICE PRESIDENT

BANC OF AMERICA SECURITIES LLC

By: ______________________
Name:
Title:

[Step One Fee Letter]

BANK OF AMERICA, N.A.

By: ______________________________
Name:
Title:

BANC OF AMERICA SECURITIES LLC

By: ______________________________
Name: James G. Rose
Title: Managing Director

[Step One Fee Letter]