

PRIVILEGED AND CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT

# Memorandum

**TO:** Jill Greenthal
Kate Bueker

**FROM:** Herbert S. Wander
Eric A. Smith

**DATE:** March 26, 2007

**SUBJECT:** Summary of Proposed Transaction

---

This summary is an outline of a series of proposed transactions whereby the Robert R. McCormick Tribune Foundation (the "**Foundation**") would enter into a derivative security arrangement with the Chandler Trusts (the "**Trusts**") with respect to the capital stock of the Tribune Company ("**Tribune**"). This transaction is intended to be structured in such a manner as to not give rise to recapture liability under Section 16. The courts have indicated that this is a permissible goal when parties are structuring transactions. For the purposes of this analysis, we are making the following assumptions: (i) the tender price by the Tribune for its shares is $31 (the "**Tender Price**"), (ii) the market price of Tribune stock on the Tender Date (as hereinafter defined) is $30 (the "**Market Price**") and (iii) the put option price, as finally determined by a formula on the Tender Date is $28 (the "**Put Option Price**"). We understand that each of these assumptions is subject to discussion between the various parties.

STEP ONE

The Foundation would grant a put (the "**Put**") to the Trusts for the purchase of a negotiated number of Tribune shares (the "**Option Shares**") at an exercise price equal the Put Option Price. The Put would provide that it is exercisable during the following period(s): (i) the ten business day period beginning 90 days[1] after the Tender Date (the "**Initial Exercise Period**"); provided, that in the event the Put is out-of-the-money (within the meaning of Rule 16b-6(b)), the Put may not be exercised during such Initial Exercise Period, however if the Put is in-the-money (within the meaning of Rule 16b-6(b) during the Initial Exercise Period, but the Trusts fail to exercise the Put, the Put shall expire at the end of the Initial Exercise Period and (ii) in the event that the Put is not in-the-money during the Initial Exercise Period, then the Put shall

---

[1] The beginning of the Initial Exercise Period should coincide with the expected effectiveness of the Trusts S-3.

be exercisable during the period beginning the business day after the end of the six month anniversary of the Tender Date and ending on the date that is five business days following the six-month anniversary of the Tender Date (the "**Final Exercise Period**"), regardless of whether the Put is in-the-money or not. In order to exercise the Put, the Trusts shall send a notice to the Foundation indicating their intent to exercise the Put, and if the Put is in-the-money for on the date of such notice, then the Trusts may then exercise the Put. The Put will provide that the Put Option Price will not be fixed until it is finally determined on the Tender Date.

As consideration for the Put, would issue the Put in exchange for the Trusts causing their directors to resign from the Tribune Board, as well as certain contractual concessions the Foundation could negotiate with the Tribune, such as board rights on the Tribune board and registration rights.

Rule 16b-6 states "the establishment or increase in a call equivalent position or liquidation of or decrease in a put equivalent position shall be deemed a purchase of the underlying security for purposes of section 16(b)." A call equivalent position is defined as "a derivative security position that increases in value as the value of the underlying equity increases." (Section 16(a)-1(b)) A put equivalent position is defined as "a derivative security that increases in value as the value of the underlying equity decreases." (Section 16(a)-1(h)). Therefore for Section 16(b) purposes, the Put would be deemed to be purchases by the Foundation, and sales by the Trusts.

An option without a fixed price is not deemed to be a derivative subject to Section 16. (See SEC Release No. 34-28869, page 16). According to the release accompanying the final rules, "in the case of an option with a floating price that will become fixed as of an event or a specified date prior to exercise, the right is deemed to become a derivative security upon fixing of the price." (See SEC Release No. 34-28869, page 16) Thus the grant of the Put is not deemed derivatives for purposes of Section 16 until their exercise price is fixed.

In addition to the fixing of the exercise price on the Tender Date, there is further support for establishing the Tender Date as the date of the disposition and acquisition of the Put. This is a facts and circumstances test, but there is good case law support that under our circumstances the acquisition does not occur until the Tender Date. The court decisions provide that for Section 16 purposes, the date of purchase is the date on which the buyer becomes irrevocably committed to the transaction, thereby fixing his rights and obligations and rendering him incapable of controlling the transaction in a way that can be turned to speculative advantage. If a transaction is subject to material contingencies or conditions that are conditions precedent to a person's obligation to perform under the agreement, the person's obligations are not fixed, and the person is not irrevocably committed to the transaction. However, an exception exists where the performance of the condition precedent is within the exclusive control of one of the parties to the agreement and that party has the ability to manipulate the date on which the contract becomes binding. Where the insider has control over the performance of the conditions precedent, courts have generally chosen the purchase date that is most likely to result in the insider's liability. In this situation, a court would likely determine that the Put has material conditions (i.e. the tender offer going through, any material adverse change provisions in the Tribune's financing for the tender offer, governmental approvals, legal opinions, etc.) that are outside the control of the Foundation and the Trusts.

FOUN0000075

STEP TWO

Each of the Foundation and the Trusts may fully participate in the Tribune tender offer. The date that the Tribune announces that it has accepted the shares tendered by it shareholders and becomes bound to pay for them shall be the **"Tender Date"**.

The tender of shares by the Foundation and the Trusts to the Tribune is deemed a sale for purposes of 16(b). The date of sale is the Tender Date, and therefore, the Foundation is exposed to the risk that it will be deemed to have engaged in both a sale and a purchase for purposes of Section 16.

The Foundation would not have received a short-swing profit from the above described purchase(s) and sale so long as the actual sale and purchase occurred simultaneously because Rule 16(b)-6(c)(2) states that profits from "derivative securities and underlying securities shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase." Assuming the Tender Date and the date of the purchase of the Put have occurred on the same date, the relevant price for determining short swing profit would be the market price of the stock of the Tribune, which would be identical ($30 in this case). This is despite the fact that neither the actual purchase nor sale took place at an economic price of $30.

STEP THREE

If the Put is in-the-money and exercisable by the Trusts during the Initial Exercise Period, the Trusts will likely exercise the Put, and cause the Foundation to purchase the Option Shares at the Put Option Price. If the Put is not in-the-money during the Initial Exercise Period, the Trusts could sell their shares in the Tribune in the open market under the S-3 provided to them by the Tribune. In the event that the Trusts were not able to sell all of the shares under the S-3, the Trusts would have the ability to exercise the Put during the Final Exercise Period.

Under Rule 16b-6(b), the closing of a derivative position as the result of the exercise of a derivative security shall be exempt from the operation of Section 16(b); provided that the acquisition of underlying securities from an out-of-the-money option shall not be exempt from Section 16(b).

In the event that the Put is out-of-the-money in the Initial Exercise Period, the Trusts will not exercise the option until after the six month anniversary of the Tender Date. If after the six month anniversary of the Tender Date the Put remains out-of-the-money, the Trusts will be free to exercise the Put free from Section 16 liability, as while this closing of the Put is not exempt from the operation of Section 16, it occurs outside of the six month short swing profit window.