

| | |
|---|---|
| **KPMG LLP**<br>303 East Wacker Drive<br>Chicago, IL 60601-5212 | Telephone  312 665 1000<br>Fax        312 665 6000<br>Internet    www.us.kpmg.com |

February 14, 2007

**PRIVATE**

Mr. Nils Larsen
Equity Group Investments
Two North Riverside Plaza – Suite 600
Chicago, IL 60606

Dear Mr. Larsen:

This letter confirms the terms of the engagement of KPMG LLP ("KPMG" or "we") by Equity Group Investments, LLC ("Client" or "you") to assist you in performing due diligence of the Tribune Company ("Target").

**Objective**

Our objective is to assist you with your assessment of the risks and opportunities of your proposed investment in Target. In this regard, we will read information you, your advisors, and Target provide to us, and make inquiries directed toward those business activities and related financial data you have identified as important to your investment decision.

**Approach**

The approach you have requested us to take to the engagement is described in Appendix 1. We anticipate that the fieldwork will take place in Chicago, Illinois beginning the week of February 12, 2007.

You will determine and advise us whether further work should be directed to the issues identified. The scope of such further work, which would require further information from and greater access to Target's management, will be agreed with you in an addendum to this letter as Phase II of our engagement.

**Tax Advice Standards**

We do not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 ("Covered Opinion"). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

**CONFIDENTIAL**

**EGI-LAW 00010751**

Nils Larson
Equity Group Investments
February 14, 2007
Page 2

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter for the issuance of a Covered Opinion.

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. Under these standards, we must be able to determine that any return position on which we advise has a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by the IRS) if the position does not involve a transaction designated by the IRS as a "listed transaction" or a transaction with the principal purpose of avoiding or evading any tax imposed by the Internal Revenue Code (a "principal purpose transaction"). If the advice relates to a "principal purpose transaction", we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the IRS) with respect to the position. In determining whether a position satisfies the "realistic possibility" and "should" standards, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

**Reporting**

We will communicate the status of our work to you throughout our engagement. We will present our findings to you in a PowerPoint slide report at the completion of this phase of our engagement, based on the results of performing the work described in Appendix 1.

**Other terms and conditions**

Our engagement is subject to the attached Standard Terms and Conditions for Advisory and Tax Services dated September 10, 2006 and the Due Diligence Assistance Addendum to Standard Terms and Conditions dated November 2, 2006 (collectively, the "Standard Terms and Conditions"), except as such terms and conditions are modified in this letter.

**Other relationships**

KPMG has historically provided tax services and other advisory services to the Target and subsidiaries of Target. Please refer to paragraph 21 of the Standard Terms and Conditions.

**Engagement team**

I will have overall responsibility for the conduct of our engagement. Cathy Bedrick, a transaction services director in our Chicago office, will lead our efforts on a day-to-day basis. Jim Tansey, a transaction services tax partner, will be responsible for performing the tax due diligence assistance aspects of our engagement.

**CONFIDENTIAL**

**EGI-LAW 00010752**

Nils Larson
Equity Group Investments
February 14, 2007
Page 3

**Fees**

Our fees for this engagement will be based on the actual time incurred to complete the engagement at the following hourly rates of the individuals who perform the services.

*   Partner - $600/hour
*   Director/Manager - $525/hour
*   Senior/Staff - $350/hour

These rates are based on our standard rates discounted by 25%. We anticipate that the financial due diligence team will consist of approximately ten people and the tax due diligence team will consist of three to four people and that Phase I work will require approximately two weeks. Accounting and tax structuring services, if any, will be billed separately based on standard hourly rates.

In addition to professional fees, you agree to reimburse KPMG for our reasonable out-of-pocket expenses incurred in connection with our services, such as travel, reproduction, telephone, postage, typing and printing. Neither the amount of our fees nor the payment of our fees and expenses will depend upon the results of our work, the price you pay for your investment in Target or whether you consummate the investment.

**Debriefing**

Upon completion of the engagement, as part of our commitment to the quality of our service, we would welcome the opportunity to receive your comments on our work and the service delivered.

**CONFIDENTIAL**

Nils Larson
Equity Group Investments
February 14, 2007
Page 4

**Confirmation**

Please indicate your acceptance of these arrangements by signing both copies of this letter in the space provided below and returning one signed copy of the letter to me. We would be pleased to discuss this letter and our engagement with you at any time. We look forward to working with you on this exciting and challenging project.

Very truly yours,

KPMG LLP

Joseph Hartman, *Partner*
Transaction Services

cc:

**Accepted By Equity Group Investments, LLC:**

By: _____     _____
                                                                         Date

Title: _____

CONFIDENTIAL

*Appendix 1*

## Scope of Phase I Due Diligence Assistance Services

Unless otherwise noted, our work will concentrate on the last two fiscal years (FY 2005 and FY 2006) or the most recent available year-to-date financial information for FY 2006 (September 2006).

Phase I will involve the following activities requested by you:

**Financial due diligence assistance procedures**

1  Read data room and other materials you specify.
2  Read Target's financial statements, including FY 2005 10K and FY 2006 quarterly 10Q filings.
3  Read Target's auditors' work papers and management letter for FY 2005 and quarterly work papers for FY 2006 (as available).
4  Obtain and read the 12/31/06 and 9/30/06 balance sheet. Comment on the nature and amount of the Company's balance sheet accounts including accounting policies and estimates, cash versus non-cash items, anticipated cash source and use timing, commitments and contingencies and potential off balance sheet exposures identified. These procedures would specifically include:
   • Discuss current cash outstanding and Target's estimated roll-forward of available cash at the closing date with management.
   • Obtain and read accounts receivable aging and related bad debt reserve methodology.
   • Discuss inventory valuation policies with management.
   • Discuss accounting, valuation and supporting contractual commitments for broadcast rights and broadcast rights payables with management.
   • Discuss accounting for assets and liabilities for entities and/or assets that are held for sale, including cash and non-cash balances, valuation and related allowances, and anticipated timing of proposed sales.
   • Obtain and discuss prepaid account support.
   • Obtain and discuss historical capital expenditure (segmenting growth and maintenance capital expenditures) on a historical and prospective basis.
   • Discuss accounting for investments including valuation methodology, impact on net income/EBITDA, cash flow sources/uses, and related cash flow requirements.
   • Discuss pension and post retirement accounting including assumptions, impact on financials for change in related assumptions, and funding requirements prospectively.
   • Discuss self-insurance reserves and related accounting methodology.
   • Discuss other accruals/reserves and related accounting methodology, account valuation, and prospective cash flow requirements of such.
   • Read debt agreements for debt that you highlight that will be acquired in this transaction. Summarize significant terms and debt covenants, as well as, principal and interest payment requirements on a prospective basis.
   • Discuss other on and off-balance contingencies and commitments highlighted by management.

5  Chicago Cubs and CSN procedures:
   • Obtain and discuss income statement and balance sheet for each entity.

**CONFIDENTIAL**                                      **EGI-LAW 00010755**

- Discuss intercompany transactions and related accounting treatment of such transactions between the Chicago Cubs, CSN and other Target entities.
- Discuss shared costs between the Chicago Cubs, CSN and Target.
- Obtain a listing of commitments and contingencies related to the Chicago Cubs and to CSN and discuss with management the estimated timing of any related cash payments and change in control provisions (as applicable).

6    Careerbuider.com procedures:
- Obtain and read financial statements for Careerbuilder.com.
- Discuss revenue recognition and other significant accounting methodologies with management.
- Discuss accounting for consolidation of earnings for Careerbuilder.com into Target.
- Discuss cash flow sources or uses of Target for investment in Careerbuilder.com.
- Discuss related party transactions between Careerbuilder.com and Target.

7    You have requested that we do not perform any quality of earnings analysis, but we will highlight topics and/or exposures to you that may impact the quality of earnings presented by management.

**Tax due diligence assistance procedures**

8    Meet with Target's officers and management in order to develop an understanding of Target, including its:
- History; and
- Organizational structure.
9    Obtain and read a summary of the components of current and deferred tax accounts (asset and liability) and reserve analyses, and inquire about historical positions taken;
10   Read Target's financial statements;
11   Read Target's auditors' work papers and management letter related to tax matters for the most recently completed audit available;
12   Inquire about structuring of material transactions in all open tax years (including acquisitions, dispositions, joint ventures, and intercompany transactions) and the tax treatment thereof; and,
13   Read reports issued regarding completed and ongoing tax examinations, administrative proceedings, or tax litigation, and consider the resulting cash flow and financial statement implications with respect to future open years.

**CONFIDENTIAL**

**EGI-LAW 00010756**

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

(a) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client. References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached (the "Engagement Letter").

(b) In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(c) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

(a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

(b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables.

(c) Client acknowledges and agrees that any advice, recommendations, information or work product provided to Client by KPMG in connection with this engagement is for the sole use of Client and may not be relied upon by any third party. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for each party's indemnification obligations herein, neither Client nor KPMG shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to KPMG under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend Client from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against Client to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the

Page 1

Revised 9/10/06

CONFIDENTIAL

EGI-LAW 00010757

## KPMG LLP
### Standard Terms and Conditions for Advisory and Tax Services

date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement arising out of (x) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than in accordance with Paragraph 4(c); (y) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (z) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of options described in (i) or (ii) above, Client shall return the Deliverable to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) Each party agrees to indemnify, hold harmless and defend the other from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the indemnifying party.

(b) In accordance with Paragraph 4(c) Client agrees to indemnify, defend and hold harmless KPMG from and against any and all Liabilities incurred or suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG's advice, recommendations, information or work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional obligations of Client in connection with this engagement. Client acknowledges that Client's failure to perform these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(b) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (iv) relates to the tax treatment or tax structure of any transaction, (v) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction or (vi) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

Page 2

Revised 9/10/06

**CONFIDENTIAL**

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

(b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for one copy thereof that the Receiving Party may retain for its records. The Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 11 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

12. **Assignment; Use of Member Firms.** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld. Notwithstanding the foregoing, to the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services, including any applicable tax advice, may be performed by the member firm of KPMG International practicing in such jurisdiction. Accordingly, Client consents to KPMG's disclosure to a member firm and such member firm's use of data and information, including tax return information, received from or at the request or direction of Client for the purpose of completing the services under the Engagement Letter.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("CPR Arbitration Rules"). By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15. **Miscellaneous.**

(a) Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) KPMG may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Client unless no such hard copy is transmitted by KPMG to Client.

Revised 9/10/06

CONFIDENTIAL

EGI-LAW 00010759

## KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

(c) For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

16. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representation, understandings or agreements relating thereto.

17. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a

material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(d) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(e) Client acknowledges that in connection with any tax compliance services provided by KPMG under the Engagement Letter, KPMG may utilize the services of affiliates and third party service providers within and without the United States to organize and input data, operate the software used to generate tax returns for Client or its personnel and perform other related tasks. Client hereby consents to KPMG's use of such affiliates and third party service providers and the disclosure to such affiliates and third party service providers and their use of tax return information, received from Client or its personnel for the purpose of preparing, assisting in preparing, or obtaining or providing services in connection with preparing, any tax return required under the Engagement Letter.

(f) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1973, each as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

Revised 9/10/06

CONFIDENTIAL

EGI-LAW 00010760

## APPENDIX A

### [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address

The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and may not be relied upon by you or any other person or organization. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

*Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.

Very truly yours,

[Name of Client]

By: _____
    Name:
    Title:

**\*Accepted and Agreed to on this ___ day of ____, 20__ by:**

[Name of Third Party

By: _____
    Name:
    Title:
\* Remove if a signed acknowledgement is not required by the terms of Paragraph 4(c).

Page 5                                                                Revised 9/10/06

**CONFIDENTIAL**                                                    **EGI-LAW 00010761**

# KPMG LLP
## Due Diligence Assistance Addendum to Standard Terms and Conditions

This Due Diligence Assistance Addendum to the Standard Terms and Conditions is an integral part of the accompanying Standard Terms and Conditions for Advisory and Tax Services. "Target" herein refers to the entity(ies) or division(s) representing the subject of the due diligence assistance procedures described in the Engagement Letter.

18. **Procedures.**

(a) The procedures KPMG will perform are limited to those referred to in the Engagement Letter and are limited in nature and extent to those that Client has determined meets its needs and, as such, will not necessarily disclose all significant matters about Target or reveal errors in the underlying information, instances of fraud, or illegal acts, if any. KPMG will provide no assurance and make no representation regarding the sufficiency of the procedures either for the purpose for which KPMG has been engaged or for any other purpose.

(b) KPMG will express no opinion and will provide no other form of assurance on Target's historical or prospective financial information or Target's internal controls over financial reporting under any audit or other attestation standards such as those issued by the Public Company Accounting Oversight Board and the AICPA.

19. **Timing.** KPMG's estimates of fees and expenses depends upon a variety of factors outside KPMG's control, including but not limited to, the availability of information, the degree of cooperation KPMG receives from Client's and Target's personnel and advisors, and the timeliness and completeness of the responses by Client's and Target's personnel and advisors to KPMG's requests for information.

20. **Other Potential Bidders.** KPMG may potentially be engaged by other parties in connection with the transaction involving Target that is the subject of this Engagement Letter. If the KPMG engagement team providing services to Client becomes aware that a separate KPMG team has been so engaged by another party, KPMG will notify Client that KPMG has been so engaged (subject to any confidentiality restrictions) and will take all reasonable steps to prevent the disclosure, without appropriate prior approvals, of information between the KPMG team serving Client and the engagement team serving any other party. Unless Client elects to exercise Client's right to terminate the Engagement Letter, Client agrees that KPMG may be so engaged by other parties and Client waives any potential conflict.

21. **Other Relationships with Target.**

(a) If Client is a potential purchaser of or investor in Target and KPMG serves as independent auditors of Target, or provides any other services to Target, KPMG will take all reasonable steps to prevent the disclosure, without appropriate prior approvals, of confidential information between the KPMG engagement team serving Client and the KPMG engagement team serving Target. However, Client hereby acknowledges and agrees that KPMG may be in possession of confidential information concerning Target that may be relevant to Client's

due diligence procedures and that such information will not be disclosed to Client unless Target provides written consent to such disclosure in advance. KPMG's professional responsibilities may require that KPMG inform the engagement team serving Target about information coming to KPMG's attention during the performance of services for Client under the Engagement Letter that could affect KPMG's engagements with Target.

(b) If the Engagement Letter discloses a relationship between KPMG and Target, Client acknowledges that such relationship with Target may represent an actual or potential conflict of interest for KPMG in light of the services KPMG has agreed to provide to Client under the Engagement Letter. Client hereby agrees that KPMG's relationship shall not constitute a conflict of interest for purposes of KPMG's engagement under the Engagement Letter and Client expressly waives its right to assert any such conflict against KPMG. Client hereby acknowledges that KPMG's agreement to provide the services under the Engagement Letter is based upon and subject to the foregoing waiver and, in the event that Client revokes such waiver, KPMG's engagement under the Engagement Letter will automatically terminate.

22. **Reporting.** Client agrees to promptly review reports prepared by KPMG ("Reports") and to advise KPMG on a timely basis of any additional procedures Client would like KPMG to perform or areas to address. Unless specifically requested by Client, KPMG is not obligated to provide copies of Reports to Target for the purpose of confirming Target's representations concerning the accuracy of the factual information presented in Reports. KPMG's findings will not constitute recommendations to Client as to whether or not Client should proceed with any proposed transaction.

23. **Limitation on the Use and Distribution of Reports.** Because of the special nature of services provided by KPMG under the Engagement Letter, KPMG's Reports are not suited for any purpose other than to assist Client in Client's evaluation of the potential transaction, and Client agrees Reports will be used for that purpose only. Reports will be provided by KPMG for Client's information only, and except as provided in paragraph 4(c), Client agrees that the Reports may not be copied, quoted or referred to, in whole or in part, by Client without KPMG's prior written consent. For purposes of Paragraph 4(c), the Client's board of directors, management and other employees, Client's independent external audit firm, and attorneys acting as Client's counsel in the contemplated transaction are not considered to be third parties, provided that each of the foregoing is subject to a binding obligation (through a written agreement or professional obligation) to maintain the confidentiality of the Reports.

24. **Target Information and Access.** The provisions of Paragraph 9(b), "Use of Information," and Paragraph 11, "Confidentiality," shall apply to information about Target provided to KPMG in the course of performing the services under the Engagement Letter. Client agrees to use all reasonable efforts to arrange for KPMG's access to Target's personnel and advisors, business offices and financial information as required for KPMG to perform the services contemplated by the Engagement letter.

Revised 11/2/06

CONFIDENTIAL

EGI-LAW 00010762