# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
## OCTOBER 17, 2007

The Tribune Company Board of Directors met at 9:00 a.m. on Wednesday, October 17, 2007, at Tribune Tower, Chicago, Illinois, pursuant to notice.  The meeting was attended by Dennis J. FitzSimons, Betsy D. Holden, Robert S. Morrison, William A. Osborn, Dudley S. Taft and Samuel Zell.

Portions of the meeting were attended by Harry A. Amsden, Chandler Bigelow, Kenneth DePaola, Donald C. Grenesko, Crane H. Kenney, Timothy J. Landon, Thomas D. Leach, John E. Reardon, Scott C. Smith and John J. Vitanovec.  Tom Cole of Sidley Austin LLP, William Kunkel of Skadden, Arps, Slate, Meagher & Flom LLP, Michael Canmann, Christina Mohr and Michael Schell of Citigroup and Tom Whayne and Paul Taubman of Morgan Stanley also participated in portions of the meeting.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 9:00 a.m.

## EXECUTIVE SESSION

The directors met in executive session at the beginning of the meeting.  At the conclusion of the executive session, Messrs. Grenesko, Kenney, Landon, Leach, Reardon and Smith joined the meeting.

## APPROVAL OF MINUTES

A motion was made, seconded and approved to adopt the minutes of the July 18 and September 28, 2007 Board of Directors meetings and the August 21, 2007 Special Shareholders meeting.

## PREFERRED STOCK DIVIDEND

A motion was made, seconded and approved to adopt the following resolution:

> RESOLVED, that there is hereby declared a dividend of $8.9375 per share on the Series D-1 Convertible Preferred Stock of the Company payable on December 13, 2007 to stockholders of record at the start of business on December 13, 2007.

## DEVELOPMENT UPDATE

Mr. Leach discussed a written report submitted to the Board prior to the meeting regarding the status of current development activities.  As part of the report, Mr. Leach presented

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

management's request for funding a national on-line entertainment channel under the Metromix brand. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> RESOLVED, that the Board of Directors of the Company hereby authorizes the Company (or any affiliate thereof) to invest up to $18 million (in a combination of cash and assets) in connection with the formation of an interactive joint venture with Gannett Co., Inc. under the Metromix brand (the "Metromix Joint Venture");

> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President, the Executive Vice President or any Vice President of Tribune Publishing Company, the President, any Senior Vice President or any Vice President of Tribune Interactive, Inc. or the President, any Senior Vice President or any Vice President of Chicago Tribune Company (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate the terms of, document and execute agreements and instruments evidencing the Metromix Joint Venture as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

> FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings, to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the foregoing resolutions and in order to fully effectuate the purposes of the foregoing resolutions; and

> FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Mr. Leach next presented management's request for approval of the sale of Southern Connecticut Newspapers, Inc. ("SCNI"). Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) of SCNI for not less than $62 million (exclusive of the real property owned by SCNI) (the "SCNI Sale Transaction");

> FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President, the Executive

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415664

Vice President or any Vice President of Tribune Publishing Company or the President or any Vice President of SCNI (the "Authorized Officers") be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the SCNI Sale Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings Including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Mr. Leach then presented management's request for authority to sell the KTLA Studio Lot and three nearby off-site parking lots on terms and conditions to be approved by the Executive Committee of the Board of Directors. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

RESOLVED, that the Executive Committee of the Board of Directors is hereby authorized (with full power of delegation) to (i) approve the sale by the Company (or any affiliate thereof) of the KTLA Studio Lot located at 5800 Sunset Boulevard, Hollywood, California and the three nearby off-site parking lots (the "Real Property") and all related assets utilized in connection with the television studio production business (together with the Real Property, the "Property"), in each case, on terms and conditions to be approved by the Executive Committee and (ii) to structure the sale of the Real Property consistent with a deferred like-kind exchange under Section 1031 of the Internal Revenue Code;

FURTHER RESOLVED, that the Executive Committee of the Board of Directors is hereby authorized (with full power of delegation) to approve the leaseback by the Company (or any affiliate thereof) of all or a portion of the Property, in each case, on terms and conditions to be approved by the Executive Committee; and

FURTHER RESOLVED, that the Executive Committee of the Board of Directors is hereby authorized (with full power of delegation) to take all necessary actions such that

3

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

the transactions described above comply with the terms of each of the Company's indentures, including making a determination as to whether the Property, or any portion thereof, constitutes "Principal Property" as defined in the following indentures of the Company: (i) Indenture, dated as of January 1, 1997, between the Company and Citibank, N.A. (successor to Bank of Montreal Trust Company and Bank of New York), as trustee, (ii) Indenture, dated as of January 30, 1995, between the Company (as successor pursuant to the First Supplemental Indenture to The Times Mirror Company, f/k/a New TMC Inc.) and Citibank, N.A. (successor to Bank of New York, Wells Fargo Bank, N.A. and First Interstate Bank of California), as trustee, (iii) Indenture, dated as of March 19, 1996, between the Company (as successor pursuant to the Second Supplemental Indenture to The Times Mirror Company) and Citibank, N.A., as trustee, and (iv) Indenture, dated as of March 1, 1992 between the Company and Citibank, N.A. (successor to Continental Bank, National Association, Bank of Montreal Trust Company and Bank of New York), as trustee.

### THIRD QUARTER OPERATING RESULTS/FOURTH QUARTER PROJECTIONS AND STOCK PERFORMANCE REPORT

Mr. Grenesko reviewed the third quarter operating results of each of the Company's lines of business and commented on factors impacting the results. Mr. Grenesko next reviewed the performance of the Company's stock and market factors affecting the stock. Mr. Grenesko also reviewed operating performance trends for the Company compared to its industry peers. Mr. Grenesko then answered questions from the Board.

At this point, Messrs. Canmann, Cole, Kunkel, Schell, Taubman, Whayne, Amsden, Bigelow, DePaola and Vitanovec and Ms. Mohr joined the meeting.

### 5 YEAR PROJECTIONS: BASE CASE AND SENSITIVITIES

Mr. Grenesko presented an overview of a written report submitted to the Board prior to the meeting concerning information and analyses supporting the Company's current five-year financial projections. The analyses covered three operating scenarios - a management base case, a downside case and an upside case - assuming, for each scenario, financing the second step merger as planned and also at increased borrowing costs in the event the Company's four lead banks restructure the second step financing under a "full flex" scenario. Messrs. Smith, Amsden, Landon and DePaola then presented detailed projections and key assumptions for the publishing and interactive groups and answered questions from the Board. Messrs. Reardon and Vitanovec then presented detailed projections and key assumptions for the broadcasting group and answered questions from the Board.

### DEBT MARKET UPDATE

Mr. Schell then discussed the presentation from Citigroup regarding the debt market and

4

TRB0415666

Citigroup's possible need to cease providing advisory services to Tribune given its obligation to finance the second step of the leveraged ESOP transaction. Ms. Mohr and Mr. Whayne separately reviewed current equity and credit market conditions and an overview of the publishing and broadcasting sectors in the context of the Company's transaction.  Mr. Whayne also commented on the Company's current operating outlook and expected leverage profile following the second step merger. Ms. Mohr and Mr. Whayne answered questions from the Board and following their reports, Mr. Zell departed due to a scheduling conflict and Messrs. Canmann and Schell and Ms. Mohr departed.

## ESOP TRANSACTION UPDATE

Messrs. Kenney, Bigelow and Cole then presented an update on the status of the leveraged ESOP transaction.  Mr. Kenney reported on the status of the FCC approval process.  Mr. Bigelow then reported on (i) the status of Valuation Research Corporation's (VRC) due diligence review in preparation for VRC's delivery of a solvency opinion prior to closing the second step merger and (ii) the status of the second step financing in light of current market conditions and the Company's recent operating results.  Messrs. Kenney and Cole then reviewed the remaining legal issues and closing logistics.  The presenters then answered questions from the Board.

## AUDIT COMMITTEE REPORT

Mr. Osborn reported on the business discussed at the Audit Committee meeting held earlier in the day.

Mr. Osborn reported that the Committee reviewed third quarter financial results and a draft of the press release to be issued the following morning.

Mr. Osborn next reported on management's update on some of the Company's more significant accounting and financial reporting issues.

Mr. Osborn reported on the status of the internal controls certification project and noted that the overall results of this year's review have been excellent.  To date, no material weaknesses (requiring public disclosure) or significant deficiencies (requiring disclosure to the Committee) have been identified.

Mr. Osborn next reported that the Committee reviewed the internal audit status report and that no significant issues were noted.

The Committee also discussed the results of the annual audit of executive expense reports and travel logs for the Company's fractional interest in two private aircrafts.  The Committee determined that the executives complied with the Company's travel and entertainment policies and usage of the chartered flights was appropriate and adequately documented.

5

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only



Mr. Osborn then reported that the Committee reviewed (i) the Company's procedures for handling complaints relating to accounting, internal controls or auditing matters and (ii) the Company's policies regarding hiring current of former employees of its independent accountants. The Committee determined the Company's practices and policies in these two areas were satisfactory.



## EXECUTIVE SESSION/SPECIAL COMMITTEE

Management then departed the meeting and the independent directors, together with Messrs. Kunkel, Whayne and Taubman, met in executive session.

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 12:15 p.m.

_____
Secretary

6

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0415668**