# TRIBUNE

## BOARD OF DIRECTORS MEETING
### December 18, 2007

**Master Copy**

**Confidential**

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414932

**TRIBUNE COMPANY**
**BOARD OF DIRECTORS MEETING**
**TUESDAY, DECEMBER 18, 2007**
**PATTERSON BOARD ROOM, 24TH FLOOR (1:00 P.M.)**
**TRIBUNE TOWER**

### AGENDA

|  | Tab No. |
|---|---|
| Approve minutes of December 4, 2007 Board of Directors meeting | 1 |
| December results | |
| Transaction update | |
|    • Surviving corporation directors/committees | |
| Financing update | |
| Solvency presentations/delivery of solvency opinion | |
|    • Management | |
|    • Valuation Research Corporation | 2 |
| Director deferred stock compensation plan amendments | 3 |
| Communications plan | |
| Executive session | |

**Tribune Company**

| | |
|---|---|
| Chandler Bigelow | Thomas D. Leach |
| Donald C. Grenesko | John E. Reardon |
| Crane H. Kenney | Scott C. Smith |
| Timothy J. Landon | |

**Other Participants**

| | |
|---|---|
| Bryan Browning, VRC | Chad Rucker, VRC |
| Tom Cole, Sidley Austin LLP | Paul Taubman, Morgan Stanley |
| Chip Mulaney, Skadden Arps | Thomas Whayne, Morgan Stanley |
| Steven A. Rosenblum, Wachtell Lipton | |

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

1

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414934

# TRIBUNE COMPANY
## BOARD OF DIRECTORS MEETING
### DECEMBER 4, 2007

The Tribune Company Board of Directors met at 9:00 a.m. on Tuesday, December 4, 2007, at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Dennis J. FitzSimons, Enrique Hernandez, Jr., Robert S. Morrison, William A. Osborn and Samuel Zell. Betsy D. Holden and Dudley S. Taft participated via telephone.

Portions of the meeting were attended by Chandler Bigelow, Donald C. Grenesko, Crane H. Kenney, Timothy J. Landon, Thomas D. Leach, John E. Reardon and Scott C. Smith. Larry Barden of Sidley Austin LLP, Chip Mulaney of Skadden, Arps, Slate, Meagher & Flom LLP, Bryan Browning, Bill Hughes and Chad Rucker of Valuation Research Corporation also participated in portions of the meeting. Steve Rosenblum of Wachtell, Lipton, Rosen & Katz and Tom Whayne of Morgan Stanley participated in a portion of the meeting via telephone.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 9:00 a.m.

## EXECUTIVE SESSION

The directors met in executive session at the beginning of the meeting. At the conclusion of executive session, Messrs. Bigelow, Grenesko, Kenney, Landon, Leach, Reardon and Smith joined the meeting.

## APPROVAL OF MINUTES

A motion was made, seconded and approved to adopt the minutes of the October 17, November 5 and November 21, 2007 meetings of the Board of Directors.

## COMPANY PERFORMANCE

Mr. Grenesko reviewed the projected financial performance of each of the Company's lines of business for the fourth quarter and complete fiscal year and commented on factors impacting the results. Mr. Reardon next presented a broadcasting performance update. A discussion followed the presentations.

## TRANSACTION UPDATE

Messrs. Bigelow and Kenney presented an update on the status of the merger closing. Mr. Kenney started with an update on the status of the FCC approval process. Mr. Bigelow next reported on the status of the second step financing and solvency opinion to be delivered by

Valuation Research Consultants (VRC). At the conclusion of the discussion, Messrs. Barden, Browning, Hughes, Mulaney, Rosenblum, Rucker and Whayne joined the meeting.

Messrs. Browning, Hughes and Rucker of VRC then made a comprehensive presentation regarding VRC's solvency analysis and the solvency opinion required to close the merger. Messrs. Browning, Hughes and Rucker referred to a written report provided in advance to the Board and described the seven month process used by VRC to reach their preliminary conclusions regarding solvency. The presentation showed the various tests used by VRC in its solvency analysis, comparable transactions, case comparisons and the assumptions VRC relied upon in reaching its solvency determination. VRC also reviewed its qualifications and the process by which its preliminary solvency analysis would be reviewed for modification prior to VRC issuing a final solvency opinion. A lengthy discussion followed the presentation and Messrs. Browning, Hughes and Rucker answered questions from the Board. Messrs. Browning, Hughes, Rosenblum, Rucker and Whayne then left the meeting.

Mr. Kenney next updated the board on the proposed closing timetable. Mr. Bigelow then advised the board on the directors' and officers' liability insurance coverage following the closing. A discussion followed the presentation.

## DEVELOPMENT UPDATE

Mr. Leach discussed a written report submitted to the Board prior to the meeting regarding the status of current development activities. As part of the report, Mr. Leach presented the terms of the proposed sale of the KTLA Studio Lot and three nearby off-site parking lots. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> WHEREAS, the Company has entered into a non-binding letter of intent with Hudson Capital LLC ("Hudson") pursuant to which it is proposed that the Company (or any affiliate thereof) will sell to Hudson (or any affiliate thereof) the KTLA Studio Lot located at 5800 Sunset Boulevard, Hollywood, California and the three nearby off-site parking lots (the "Real Property") and all related assets utilized in connection with the television studio production business (together with the Real Property, the "Property"), for an aggregate cash purchase price of $142 million;

> WHEREAS, it is contemplated that the sale of the Real Property will be structured in a manner consistent with a deferred like-kind exchange under Section 1031 of the Internal Revenue Code;

> WHEREAS, in connection with the sale of the Property, it is proposed that KTLA Inc. (or any other affiliate of the Company) will enter into a lease agreement (the "Lease Agreement") with Hudson (or any affiliate thereof) pursuant to which KTLA Inc. (or any affiliate thereof) will lease back the portion of the Real Property that is currently used by

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

KTLA Inc. and certain other affiliates of the Company for a term of approximately three years and on other terms and conditions to be approved by the Authorized Officers (as defined below);

WHEREAS, the Company is party to that certain (i) Indenture, dated as of March 1, 1992 between the Company and Citibank, N.A. (successor to Continental Bank, National Association, Bank of Montreal Trust Company and Bank of New York), as trustee (the "1992 Indenture"), (ii) Indenture, dated as of January 30, 1995, between the Company (as successor pursuant to the First Supplemental Indenture to The Times Mirror Company, f/k/a New TMC Inc.) and Citibank, N.A. (successor to Bank of New York, Wells Fargo Bank, N.A. and First Interstate Bank of California), as trustee ("the "1995 Indenture"), (iii) Indenture, dated as of March 19, 1996, between the Company (as successor pursuant to the Second Supplemental Indenture to The Times Mirror Company) and Citibank, N.A., as trustee (the "1996 Indenture"), and (iv) Indenture, dated as of January 1, 1997, between the Company and Citibank, N.A. (successor to Bank of Montreal Trust Company and Bank of New York), as trustee (the "1997 Indenture" and, together with the 1992 Indenture, the 1995 Indenture and the 1996 Indenture, the "Indentures");

WHEREAS, the Indentures each contain certain restrictions on the Company's and its subsidiaries' ability to enter into sale and lease-back transactions for terms in excess of three years with respect to "Principal Property" (as defined in the relevant Indenture), in each case, subject to certain exceptions;

WHEREAS, the 1992 Indenture and the 1997 Indenture each define "Principal Property" as "any manufacturing or printing plant, warehouse, office building, power plant or transmission facility owned by the Company or any Subsidiary or any property or right owned by or granted to the Company or any Subsidiary and used or held for use in the newspaper, newsprint, radio or television business conducted by the Company or any Subsidiary, except any manufacturing or printing plant, warehouse, office building, power plant or transmission facility or property or right which in the opinion of the Board of Directors of the Company is not of material importance to the total business conducted by the Company and its Subsidiaries considered as one enterprise"; and

WHEREAS, the 1995 Indenture and the 1996 Indenture (pursuant to an Officers' Certificate dated September 9, 1997) each define "Principal Property" as "any manufacturing plant or facility located within the United States of America (other than its territories or possessions) and owned by the Company or any Subsidiary, except any such plant or facility which, in the opinion of the Board of Directors of the Company, is not of material importance to the business conducted by the Company and its Subsidiaries, taken as a whole."

3

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414937

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) to Hudson (or any affiliate thereof) of the Property for an aggregate cash purchase price of not less than $135 million (the "Sale Transaction");

FURTHER RESOLVED, that the Board of Directors of the Company hereby authorizes the sale of the Real Property pursuant to the Sale Transaction to be structured in a manner consistent with a deferred like-kind exchange under Section 1031 of the Internal Revenue Code;

FURTHER RESOLVED, that, in connection with the sale of the Property, the Board of Directors of the Company hereby authorizes KTLA Inc. (or any other affiliate of the Company) to enter into a lease agreement (the "Lease Agreement") with Hudson (or any affiliate thereof) pursuant to which KTLA Inc. (or any affiliate thereof) will lease back the portion of the Real Property that is currently used by KTLA Inc. and certain other affiliates of the Company (the "Leased Premises") for a term of approximately three years and on other terms and conditions to be approved by the Authorized Officers (as defined below);

FURTHER RESOLVED, that for purposes of each of the Indentures, the Board of Directors of the Company hereby determines that the Leased Premises do not constitute "Principal Property" as defined in each of the Indentures;

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company, the President or any Vice President of KTLA Inc., or the President or any Vice President of Tribune California Properties, Inc. (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Sale Transaction, the Lease Agreement and the other transactions contemplated by the these resolutions as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in

4

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414938

connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

## FSBO DIVESTITURE

Mr. Landon presented management's request for authority to transfer ForSaleByOwner.com to Classified Ventures for at least $90 million. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

RESOLVED, that the Board of Directors of the Company hereby approves the transfer by the Company (or any affiliate thereof) of Stemweb, Inc. (the parent holding company of ForSaleByOwner.com Corp.) ("FSBO") to Classified Ventures, LLC ("CV") for not less than $90 million through a combination of (i) a capital contribution to CV of at least 27.8% of FSBO common stock and (ii) the sale to CV of the remaining shares of FSBO common stock (collectively, the "Transaction");

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President, the Executive Vice President or any Vice President of Tribune Publishing Company, the President, any Senior Vice President or any Vice President of Tribune Interactive, Inc. or the President or Vice President of Eagle New Media Investments, LLC (the "Authorized Officers") be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings Including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414939

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Messrs. Bigelow, Landon, Leach, Reardon and Smith departed the meeting.

## AUDIT COMMITTEE REPORT

Mr. Osborn reported on the business discussed at the Audit Committee meeting held earlier in the day.

Mr. Osborn reported that the Committee reviewed management's annual impairment review of goodwill and other intangible assets. The Committee noted that Management is presently analyzing whether an impairment charge will be required for the Company's newspaper group and will retain an accounting firm to assist in that analysis.

Mr. Osborn then reported that the Committee reviewed the status of the Company's internal controls certification project and the internal audit status report.

Mr. Osborn next reported on a management report on enterprise risk management, including a discussion of the results of the Company's annual Code of Business Conduct compliance process and the status of the Company's business continuity plans.

Finally, Mr. Osborn reported that the Committee performed its annual review and reassessment of the Committee charter and recommended for full Board approval a revision to the charter to add the responsibility for reviewing transactions under the Company's Related Person Transactions Policy, a responsibility delegated to it when the policy was adopted last year. Following discussion, a motion was made, seconded and approved to adopt the following resolution:

RESOLVED, that the revised Operating Charter of the Audit Committee, in the form presented at this meeting, is hereby adopted and approved.

## COMPENSATION & ORGANIZATION COMMITTEE REPORT

Mr. Morrison reported on the business discussed at the Compensation & Organization Committee meeting held earlier in the day.

Mr. Morrison reported that the Committee performed its annual review and reassessment of the Committee charter and is not proposing any changes to the charter at this time.

6

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414940

Mr. Morrison then reported that the Committee reviewed a written report summarizing 2007/2008 compensation recommendations for which management will be seeking approval at the February Committee meeting.

Mr. Morrison also reported that certain directors desired to change their payment elections under the directors' deferred compensation plans and that counsel to the Company has confirmed that such changes are permitted and appropriate. The Committee instructed management to take appropriate action to facilitate modified payment elections under the plans. At the conclusion of Mrs. Morrison's report, Messrs. Barden, Kenney and Grenesko departed.

## EXECUTIVE SESSION

The directors met in a second executive session.

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 11:40 a.m.

_____
Secretary

7

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414941

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414942



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

# *Discussion Outline*

➢ **Situation Overview**

➢ **Solvency Opinion Process**

➢ **Key Assumptions**

➢ **Summary of Solvency Analyses**

➢ **Conclusions**

➢ **Questions**

➢ **VRC's Qualifications and Highlighted Experience**



2
*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414944

# *Situation Overview*

- Tribune Company ("Tribune" or the "Company") is anticipating the closing of certain transactions which will include the completion of the Company's previously announced Merger, in which the publicly held shares of the Company's common stock will be converted into the right to receive $34 per share in cash, and the borrowing of additional debt to finance the Merger (the "Step Two Transactions").

- The Board of Directors has engaged Valuation Research Corporation ("VRC") to provide its opinion, as to whether, immediately after and giving effect to the consummations of the Step Two Transactions, the Company will be solvent and will have adequate capital to conduct ongoing operations.

### *Valuation and Capital Adequacy Tests:*

> ➢ *Immediately after and giving effect to the consummation of the Step Two Transactions, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune will exceed its liabilities (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing);*

### *Cash Flow Test:*

> ➢ *Immediately after and giving effect to the consummation of the Step Two Transactions, Tribune will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), as such debts mature or otherwise become absolute or due; and*

### *Capitalization Test:*

> ➢ *As of the date hereof, immediately after and giving effect to the consummation of the Step Two Transactions, Tribune Does Not Have Unreasonably Small Capital.*

---



Strong values.

3

*Preliminary Draft*
*Subject to Revision*



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414945

# *Solvency Opinion Process*

➢ Collected data from Tribune and other sources relating to Tribune and pertinent industries, capital markets, competitors, and comparable companies;

➢ Held discussions with Management of each operating division and appropriate corporate personnel of Tribune;

➢ Held numerous conference calls with corporate and operating personnel to discuss monthly and quarterly financial performance and expectations for the future;

➢ Analyzed the data received and reviewed the notes from our discussions with Tribune personnel;

➢ Conducted valuation and solvency opinion analyses;

➢ Conducted sensitivity and downside testing utilizing Management's downside projections; and

➢ Concluded whether or not Tribune meets the tests of solvency for the Step Two Transactions.



Strong values.

4

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# *Key Assumptions*

➢ The standards of value used for the solvency of the Step Two Transactions include Fair Value and Present Fair Saleable Value and have been modified for this opinion. The modification assumes that the buyer would have a structure similar to the structure contemplated in the Step Two Transactions (an S-Corporation, owned entirely by an ESOP, which receives federal income tax deferrals or another structure resulting in equivalent favorable federal income tax treatment to Tribune);

➢ VRC relied upon Management's Base Case and Downside Case projections for its opinion;

➢ VRC relied upon achieving S-Corp ESOP tax savings for Tribune which are determined using the Base Case forecast; and

➢ Assumes that the Company can refinance guaranteed debt after the expiration of the credit agreements.



Strong values.

5

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414947

# *Summary of Solvency Analyses*

➢ **Valuation Tests**

➢ **Comparison of December 4th and December 18th Presentations**

➢ **Cash Flow Test**

➢ **Sensitivity Test**

➢ **Case Comparisons**



6

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414948

# Valuation Tests *($ in millions)*

| Valuation Method | Valuation Summary | | |
|---|---|---|---|
| | Low | Mid | High |
| Comparable Companies | $9,248.1 | $9,865.3 | $10,482.5 |
| Comparable Transactions | $10,782.0 | $11,081.5 | $11,381.0 |
| Discounted Cash Flow | $9,525.6 | $10,234.4 | $10,943.2 |
| Sum of Business Segments[1] | $9,316.8 | $9,909.7 | $10,502.5 |
| **Average Operating Enterprise Value** | **$9,718.1** | **$10,272.7** | **$10,827.3** |
| + Equity Investments and Other Assets[2] | $3,186.3 | $3,417.2 | $3,648.1 |
| + NPV of S-Corp - ESOP Tax Savings | $815.8 | $876.0 | $936.1 |
| **Adjusted Enterprise Value** | **$13,720.2** | **$14,565.8** | **$15,411.4** |
| + Cash | $197.7 | $197.7 | $197.7 |
| - Debt | ($12,593.2) | ($12,593.2) | ($12,593.2) |
| - Identified Contingent Liabilities | ($86.8) | ($86.8) | ($86.8) |
| **Equity Value** | **$1,238.0** | **$2,083.6** | **$2,929.2** |
| *% of Enterprise Value* | *9.0%* | *14.3%* | *19.0%* |

| Operating Enterprise Value Multiples | | Valuation Summary | | |
|---|---|---|---|---|
| | | Low | Mid | High |
| PF LTM EBITDA | $1,198.0 | 8.1x | 8.6x | 9.0x |
| 2007P EBITDA | $1,191.4 | 8.2x | 8.6x | 9.1x |
| 2008P EBITDA | $1,193.3 | 8.1x | 8.6x | 9.1x |

| Consolidated Enterprise Value Multiples | | | | |
|---|---|---|---|---|
| PF Adjusted LTM EBITDA[3] | $1,259.1 | 10.9x | 11.6x | 12.2x |
| 2007P Adjusted EBITDA[3] | $1,276.3 | 10.8x | 11.4x | 12.1x |
| 2008P Adjusted EBITDA[3] | $1,291.9 | 10.6x | 11.3x | 11.9x |

- ▪ [1] *Includes the value of radio.*
- ▪ [2] *Includes (i) after tax value of potential real estate sales and (ii) the value of the Time Warner stock associated with the PHONES securities.*
- ▪ [3] *Adjusted EBITDA includes cash from equity investments.*



Strong values.

7

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414949

# *Valuation Methodologies*

### COMPARABLE COMPANIES METHOD:

- Indications of value were derived from EBITDA valuation multiples observed from comparable publicly traded companies.
- Comparable companies used in this analysis included:
  - ➢ Publishing: Gannett, Washington Post, McClatchy Co., New York Times, and Lee Enterprises
  - ➢ Broadcasting: Hearst Argyle, Sinclair Broadcasting, Lin TV, Gray Television, and Nexstar Broadcasting
  - ➢ Diversified media: EW Scripps, Belo, and Media General
- The observed LTM to forward (2008) mean and median EBITDA multiples were 6.2 to 7.1 for publishing, 8.2 to 11.4 for broadcasting and 7.3 to 8.3 for diversified media.
- In valuing the consolidated operations of Tribune, VRC applied weightings to the comparables used in the analysis. VRC applied LTM to forward (2008) EBITDA multiples that ranged from 7.8 to 8.8.

### COMPARABLE TRANSACTIONS METHOD:

- Indications of value were derived from EBITDA valuation multiples observed from comparable transactions.
- Publishing comparable transactions: Quebecor/Osprey Media Income Fund; News Corp./Dow Jones & Co.; Wilkes-Barre Publishing Co./The Times Leader; Philadelphia Media Holdings LLC/Philadelphia Newspapers Inc.; MediaNews Group./Knight Ridder, Inc.; McClatchy Co.,/Knight Ridder, and Lee Enterprises/Pulitzer
- Broadcasting comparable transactions: Oak Hill Capital Partners/Broadcast Media Group; Thomas Lee/Univision; Hearst Argyle/WKCF-TV; Media General/NBC Universal; Raycom Media/The Liberty Corp.; Lin Television/Emmis Communications; and Journal Communications/Emmis Communications
- The observed LTM mean and median EBITDA multiples were 11.5 and 12.0 for publishing, and 13.6 and 14.1 for broadcasting.
- In valuing the consolidated operations of Tribune VRC applied LTM EBITDA multiples that ranged from 9.0 to 9.5.



Strong values.

8

*Preliminary Draft*
*Subject to Revision*



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414950

## *Valuation Methodologies* (continued)

### *DISCOUNTED CASH FLOW METHOD (continued):*

- Indications of value were derived from expected future cash flows discounted to present value using a rate that is judged to be commensurate with the risk associated with the projected cash flows. For purposes of this analysis, VRC derived enterprise value indications using forecasted cash flows obtained from management.

- VRC applied discount rates that ranged from 7.5% to 8.5% for publishing and the consolidated operations, and 6.5% to 7.5% for broadcasting.

- VRC applied EBITDA exit multiples that ranged from 7.25 to 8.25 for the consolidated operations, 5.75 to 6.75 for publishing and 9.5 to 10.5 for broadcasting.





Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414951

# *Valuation Comparison: December 4th and 18th Board Presentations*
## *($ in millions)*

| | December 4th Valuation Summary | December 18th Valuation Summary | Change |
|---|---|---|---|
| **Average Operating Enterprise Value** [1] | $9,989.1 | $10,272.7 | $283.6 |
| + Equity Investments and Other Assets [2] | $3,312.1 | $3,417.2 | $105.1 |
| + NPV of S-Corp - ESOP Tax Savings [3] | $2,024.7 | $876.0 | ($1,148.7) |
| **Adjusted Enterprise Value** | $15,325.9 | $14,565.8 | ($760.0) |
| + Cash | $197.7 | $197.7 | -- |
| - Debt [4] | ($13,188.1) | ($12,593.2) | $594.9 |
| - Identified Contingent Liabilities | ($86.8) | ($86.8) | -- |
| **Equity Value** | $2,248.7 | $2,083.6 | ($165.1) |
| *% of Enterprise Value* | *14.7%* | *14.3%* | *-0.4%* |

- [1] *Includes an adjustment to the discounted cash flow valuation that lowered the tax rate to be consistent with the Company's and to include annual severance expenses.*
- [2] *Adjusted to (i) exclude the value of the KTLA lot and the tax benefits associated with Recycler, which were both reflected in the Company's base case forecast, (ii) reflect an updated value for Classified Ventures and (iii) reflect the market value of the 16 million shares of Time Warner stock associated with the PHONES liability, which previously had been netted against the PHONES liability.*
- [3] *Adjusted due to an increase in the discount rate to 16% from 10%.*
- [4] *PHONES liability has been adjusted to the current market value.*



Strong values.

10

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414952

# CASH FLOW TEST



*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## Base Case Cash Flow Test ($ in millions)

| Cash Flow Summary | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P |
|---|---|---|---|---|---|---|---|---|
| *Adjusted EBITDA* | *$1,193.3* | *$1,236.8* | *$1,282.1* | *$1,298.6* | *$1,348.8* | *$1,382.7* | *$1,417.4* | *$1,453.0* |
| Cash Received from Equity Investments | $98.6 | $115.4 | $140.3 | $162.9 | $181.1 | $202.1 | $226.6 | $255.1 |
| Equity Income Adjustment for Asset Sales | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Cash Taxes | $0.0 | $0.0 | ($1.0) | ($2.3) | ($3.7) | ($5.1) | ($6.6) | ($8.4) |
| ESOP Repurchase Obligation | $0.0 | ($0.1) | ($0.2) | ($0.5) | ($1.0) | ($1.7) | ($2.5) | ($3.4) |
| Addback for non-cash retirement expense | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 |
| Net Cash Interest Expense | ($953.8) | ($936.4) | ($946.2) | ($941.8) | ($923.0) | ($895.5) | ($860.3) | ($819.3) |
| Severance and Other | ($32.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) |
| *Operating Cash Flow* | *$366.1* | *$465.8* | *$525.0* | *$566.9* | *$652.2* | *$732.6* | *$824.6* | *$926.9* |
| Capital Expenditures | ($132.2) | ($128.3) | ($128.5) | ($128.5) | ($128.5) | ($128.5) | ($128.5) | ($128.5) |
| Other | $815.0 | ($91.0) | ($92.0) | ($95.0) | ($100.0) | ($100.0) | ($100.0) | ($100.0) |
| *Cash Flow Available for Debt Repayment* | *$1,048.9* | *$246.5* | *$304.5* | *$343.4* | *$423.7* | *$504.1* | *$596.2* | *$698.4* |
| Scheduled Debt Repayments | ($110.8) | ($77.7) | ($527.6) | ($77.9) | ($78.8) | ($160.8) | ($6,215.9) | ($2,087.7) |
| Other Financing Activities | $186.1 | ($0.5) | ($0.5) | ($0.5) | ($0.5) | ($0.5) | $6,214.7 | $1,695.2 |
| *Net Cash Flow* | *$1,124.2* | *$168.3* | *($223.6)* | *$265.0* | *$344.4* | *$342.8* | *$595.0* | *$306.0* |
| Beginning Cash | $197.7 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 |
| Minimum Cash Balance | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) |
| Revolver Borrowings | $0.0 | $0.0 | $223.6 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| *Cash Available for Discretionary Prepayments* | *$1,247.0* | *$168.3* | *$0.0* | *$265.0* | *$344.4* | *$342.8* | *$595.0* | *$306.0* |



VRC
Strong values.

12

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Base Case Debt Covenant Summary ($ in millions)

| Covenant Analysis | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P |
|---|---|---|---|---|---|---|---|---|---|
| EBITDA | $1,191.4 | $1,193.3 | $1,236.8 | $1,282.1 | $1,298.6 | $1,348.8 | $1,382.7 | $1,417.4 | $1,453.0 |
| Covenant EBITDA | $1,316.3 | $1,346.0 | $1,404.5 | $1,474.7 | $1,513.7 | $1,582.2 | $1,637.1 | $1,696.3 | $1,760.3 |
| Guaranteed Debt | $10,167.5 | $9,116.0 | $8,880.9 | $9,038.0 | $8,706.4 | $8,295.6 | $7,886.5 | $7,366.2 | $7,014.4 |
| Projected Guaranteed Debt / Covenant EBITDA | 7.72x | 6.77x | 6.32x | 6.13x | 5.75x | 5.24x | 4.82x | 4.34x | 3.98x |
| *Maximum Leverage Ratio* | *9.00x* | *9.00x* | *8.75x* | *8.50x* | *8.25x* | *8.25x* | *8.25x* | *8.25x* | *8.25x* |
| *$ Cushion (Covenant EBITDA)* | *$186.6* | *$333.1* | *$389.6* | *$411.4* | *$458.4* | *$576.6* | *$681.2* | *$803.4* | *$910.1* |
| Projected Covenant EBITDA / Cash Interest | 3.23x | 1.41x | 1.50x | 1.55x | 1.60x | 1.71x | 1.82x | 1.97x | 2.14x |
| *Minimum Required Interest Coverage Ratio* | *1.10x* | *1.15x* | *1.20x* | *1.25x* | *1.25x* | *1.25x* | *1.25x* | *1.25x* | *1.25x* |
| *$ Cushion (Cash Interest)* | *$789.6* | *$212.5* | *$231.8* | *$231.3* | *$266.9* | *$340.5* | *$411.9* | *$494.5* | *$586.7* |



VRC

Strong values.

*13*

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# *SENSITIVITY TEST*



*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# *Sensitivity Test Assumptions*

- **Corporate:**

    1. *Discretionary acquisition expenditures are projected to be $50 million in fiscal years 2008 through 2013*
    2. *Potential asset sales in 2013*

- **Publishing:**

    ***Total Revenues:*** *4.9% decline in fiscal year 2008, 3.6% decline in 2009, 2.8% decline in 2010, 2.7% decline in 2011, and 2.5% decline for 2012 and beyond*

    ***EBITDA Margins:*** *20.7% in fiscal year 2008, 19.8% in year 2009, 19.5% in year 2010, 19.4% in 2011, and 19.4% for 2012 and beyond*

- **Broadcasting:**

    ***Total Revenues:*** *1.9% increase in fiscal year 2008, 1.6% decline in 2009, 2.7% increase in 2010, 0.8% decline in 2011, and 2.1% increase for 2012 and beyond*

    ***EBITDA Margins:*** *32.6% in fiscal year 2008, 33.3% in 2009, 34.0% in 2010, 31.3% in 2011, and 31.4% for 2012 and beyond*





*Preliminary Draft*
*Subject to Revision*

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414957

# *Sensitivity Case Cash Flow Test* ($ in millions)

| Cash Flow Summary | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P |
|---|---|---|---|---|---|---|---|---|
| *Adjusted EBITDA* | *$1,145.0* | *$1,093.7* | *$1,086.5* | *$1,030.1* | *$1,022.6* | *$1,015.3* | *$1,008.6* | *$1,002.4* |
| Cash Received from Equity Investments | $98.6 | $115.4 | $140.3 | $162.9 | $181.1 | $202.1 | $226.6 | $255.1 |
| Equity Income Adjustment for Asset Sales | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | ($27.0) | ($59.3) | ($65.2) |
| Cash Taxes | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| ESOP Repurchase Obligation | $0.0 | ($0.1) | ($0.2) | ($0.5) | ($1.0) | ($1.7) | ($2.5) | ($3.4) |
| Addback for non-cash retirement expense | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 |
| Net Cash Interest Expense | ($925.0) | ($908.9) | ($924.4) | ($931.4) | ($931.9) | ($926.9) | ($888.9) | ($886.9) |
| Severance and Other | ($32.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) | ($10.0) |
| *Operating Cash Flow* | *$346.6* | *$350.1* | *$352.2* | *$311.0* | *$320.8* | *$311.9* | *$334.5* | *$352.0* |
| Capital Expenditures | ($132.2) | ($103.3) | ($103.5) | ($103.5) | ($103.5) | ($103.5) | ($103.5) | ($103.5) |
| Other[1] | $849.0 | ($50.0) | ($50.0) | ($50.0) | ($50.0) | $784.2 | ($50.0) | ($50.0) |
| *Cash Flow Available for Debt Repayment* | *$1,063.4* | *$196.9* | *$198.7* | *$157.5* | *$167.3* | *$992.7* | *$181.0* | *$198.5* |
| Scheduled Debt Repayments | ($110.8) | ($77.7) | ($527.6) | ($77.9) | ($78.8) | ($160.8) | ($6,310.5) | ($2,088.6) |
| Other Financing Activities | $186.1 | ($0.5) | ($0.5) | ($0.5) | ($0.5) | ($0.5) | $6,309.3 | $1,695.2 |
| *Net Cash Flow* | *$1,138.8* | *$118.7* | *($329.4)* | *$79.2* | *$88.0* | *$831.3* | *$179.9* | *($194.9)* |
| Beginning Cash | $197.7 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 | $75.0 |
| Minimum Cash Balance | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) | ($75.0) |
| Revolver Borrowings | $0.0 | $0.0 | $329.4 | $0.0 | $0.0 | $0.0 | $0.0 | $194.9 |
| *Cash Available for Discretionary Prepayments* | *$1,261.5* | *$118.7* | *$0.0* | *$79.2* | *$88.0* | *$831.3* | *$179.9* | *$0.0* |

- ▫ *[1] Reflects the sale of CareerBuilder in 2013.*



Strong values.

16

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## Sensitivity Case Debt Covenant Summary ($ in millions)

| Covenant Analysis | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P |
|---|---|---|---|---|---|---|---|---|---|
| EBITDA | $1,191.4 | $1,145.0 | $1,093.7 | $1,086.5 | $1,030.1 | $1,022.6 | $1,015.3 | $1,008.6 | $1,002.4 |
| Covenant EBITDA | $1,371.3 | $1,300.7 | $1,264.3 | $1,282.1 | $1,248.2 | $1,258.9 | $1,242.8 | $1,228.2 | $1,244.5 |
| Guaranteed Debt | $10,167.5 | $9,101.5 | $8,916.1 | $9,178.9 | $9,033.2 | $8,878.8 | $7,981.1 | $7,876.9 | $8,025.0 |
| Projected Guaranteed Debt / Covenant EBITDA | 7.41x | 7.00x | 7.05x | 7.16x | 7.24x | 7.05x | 6.42x | 6.41x | 6.45x |
| Maximum Leverage Ratio | 9.00x | 9.00x | 8.75x | 8.50x | 8.25x | 8.25x | 8.25x | 8.25x | 8.25x |
| $ Cushion (Covenant EBITDA) | $241.6 | $289.4 | $245.4 | $202.3 | $153.3 | $182.7 | $275.4 | $273.4 | $271.8 |
| Projected Covenant EBITDA / Cash Interest | 3.37x | 1.40x | 1.38x | 1.38x | 1.33x | 1.34x | 1.34x | 1.38x | 1.40x |
| Minimum Required Interest Coverage Ratio | 1.10x | 1.15x | 1.20x | 1.25x | 1.25x | 1.25x | 1.25x | 1.25x | 1.25x |
| $ Cushion (Cash Interest) | $839.6 | $198.9 | $139.5 | $96.0 | $61.9 | $70.0 | $65.1 | $91.4 | $106.5 |



Strong values.

17

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414959

# *CASE COMPARISONS*



*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# Base Case vs. Downside Case Comparison ($ in millions)

| Consolidated Company Comparison | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| *Revenue* | | | | | | | | | | |
| Base Case | $5,096.3 | $4,936.4 | $5,016.1 | $5,146.8 | $5,244.8 | $5,371.1 | $5,500.4 | $5,632.9 | $5,768.5 | $47,713.4 |
| Downside Case | $5,096.3 | $4,695.3 | $4,550.2 | $4,486.2 | $4,389.5 | $4,333.8 | $4,280.7 | $4,230.0 | $4,181.7 | $40,243.8 |
| $ Variance | $0.0 | ($241.1) | ($465.9) | ($660.6) | ($855.3) | ($1,037.2) | ($1,219.7) | ($1,402.9) | ($1,586.8) | ($7,469.5) |
| % Variance | 0.0% | -4.9% | -9.3% | -12.8% | -16.3% | -19.3% | -22.2% | -24.9% | -27.5% | -15.7% |
| *EBITDA* | | | | | | | | | | |
| Base Case | $1,191.4 | $1,193.3 | $1,236.8 | $1,282.1 | $1,298.6 | $1,348.8 | $1,382.7 | $1,417.4 | $1,453.0 | $11,804.2 |
| Downside Case | $1,191.4 | $1,145.0 | $1,093.7 | $1,086.5 | $1,030.1 | $1,022.6 | $1,015.3 | $1,008.6 | $1,002.4 | $9,595.6 |
| $ Variance | $0.0 | ($48.3) | ($143.2) | ($195.6) | ($268.5) | ($326.2) | ($367.4) | ($408.8) | ($450.6) | ($2,208.6) |
| % Variance | 0.0% | -4.0% | -11.6% | -15.3% | -20.7% | -24.2% | -26.6% | -28.8% | -31.0% | -18.7% |
| *Cash Available for Debt Repayment* | | | | | | | | | | |
| Base Case | $1,053.4 | $1,048.9 | $246.5 | $304.5 | $343.4 | $423.7 | $504.1 | $596.2 | $698.4 | $5,219.1 |
| Downside Case | $1,053.4 | $1,063.4 | $196.9 | $198.7 | $157.5 | $167.3 | $992.7 | $181.0 | $198.5 | $4,209.4 |
| $ Variance | $0.0 | $14.5 | ($49.7) | ($105.8) | ($185.9) | ($256.4) | $488.6 | ($415.1) | ($499.9) | ($1,009.6) |
| % Variance | 0.0% | 1.4% | -20.1% | -34.7% | -54.1% | -60.5% | 96.9% | -69.6% | -71.6% | -19.3% |
| *Guaranteed Debt / Covenant EBITDA* | | | | | | | | | | |
| Base Case | 7.72x | 6.77x | 6.32x | 6.13x | 5.75x | 5.24x | 4.82x | 4.34x | 3.98x | |
| Downside Case | 7.41x | 7.00x | 7.05x | 7.16x | 7.24x | 7.05x | 6.42x | 6.41x | 6.45x | |
| Covenant | 9.00x | 9.00x | 8.75x | 8.50x | 8.25x | 8.25x | 8.25x | 8.25x | 8.25x | |
| *Covenant EBITDA / Cash Interest* | | | | | | | | | | |
| Base Case | 3.23x | 1.41x | 1.50x | 1.55x | 1.60x | 1.71x | 1.82x | 1.97x | 2.14x | |
| Downside Case | 3.37x | 1.40x | 1.38x | 1.38x | 1.33x | 1.34x | 1.34x | 1.38x | 1.40x | |
| Covenant | 1.10x | 1.15x | 1.20x | 1.25x | 1.25x | 1.25x | 1.25x | 1.25x | 1.25x | |
| *Total Debt [1]* | | | | | | | | | | |
| Base Case | $12,464.6 | $11,297.1 | $11,096.5 | $10,840.2 | $10,547.4 | $10,176.9 | $9,728.7 | $9,254.2 | $8,622.3 | |
| Downside Case | $12,464.6 | $11,310.9 | $11,190.8 | $11,074.0 | $11,003.8 | $10,929.4 | $10,005.8 | $9,961.0 | $9,843.6 | |
| $ Variance | $0.0 | $13.8 | $94.3 | $233.8 | $456.5 | $752.9 | $277.0 | $706.8 | $1,221.3 | |
| % Variance | 0.0% | 0.1% | 0.9% | 2.2% | 4.3% | 7.4% | 2.8% | 7.6% | 14.2% | |

- [1] *The total debt values on this schedule differ from the total debt values shown on pages 7 and 8 because they exclude $128.6 million of option value that is embedded within the current market value of the PHONES. THE PHONES liability in this schedule solely reflects the discounted value of the debt component.*



19

*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# *Base Case vs. Downside Case Comparison* ($ in millions) (continued)

| Publishing Segment Comparison | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| *Revenue* | | | | | | | | | | |
| Base Case | $3,713.5 | $3,679.9 | $3,752.0 | $3,840.2 | $3,927.6 | $4,019.3 | $4,113.1 | $4,209.0 | $4,307.2 | $35,561.8 |
| Downside Case | $3,713.5 | $3,511.3 | $3,385.6 | $3,290.0 | $3,202.3 | $3,122.0 | $3,043.7 | $2,967.4 | $2,893.0 | $29,128.7 |
| $ Variance | $0.0 | ($168.6) | ($366.4) | ($550.2) | ($725.4) | ($897.3) | ($1,069.3) | ($1,241.6) | ($1,414.2) | ($6,433.1) |
| % Variance | 0.0% | -4.6% | -9.8% | -14.3% | -18.5% | -22.3% | -26.0% | -29.5% | -32.8% | -18.1% |
| *EBITDA* | | | | | | | | | | |
| Base Case | $817.8 | $786.1 | $814.2 | $844.2 | $874.8 | $906.3 | $927.5 | $949.1 | $971.3 | $7,891.4 |
| Downside Case | $817.8 | $745.8 | $691.9 | $666.3 | $644.6 | $628.6 | $613.5 | $598.7 | $584.3 | $5,991.7 |
| $ Variance | $0.0 | ($40.3) | ($122.3) | ($177.8) | ($230.2) | ($277.7) | ($314.0) | ($350.4) | ($387.0) | ($1,899.7) |
| % Variance | 0.0% | -5.1% | -15.0% | -21.1% | -26.3% | -30.6% | -33.9% | -36.9% | -39.8% | -24.1% |

| Broadcasting Segment Comparison[1] | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P | 2014P | 2015P | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| *Revenue* | | | | | | | | | | |
| Base Case | $1,382.9 | $1,256.5 | $1,264.1 | $1,306.6 | $1,317.2 | $1,351.8 | $1,387.4 | $1,423.8 | $1,461.5 | $12,151.6 |
| Downside Case | $1,382.9 | $1,184.1 | $1,164.6 | $1,196.3 | $1,187.3 | $1,211.9 | $1,236.9 | $1,262.6 | $1,288.7 | $11,115.1 |
| $ Variance | $0.0 | ($72.5) | ($99.5) | ($110.4) | ($129.9) | ($140.0) | ($150.4) | ($161.3) | ($172.6) | ($1,036.4) |
| % Variance | 0.0% | -5.8% | -7.9% | -8.4% | -9.9% | -10.4% | -10.8% | -11.3% | -11.8% | -8.5% |
| *EBITDA* | | | | | | | | | | |
| Base Case | $415.2 | $448.5 | $463.9 | $479.3 | $465.0 | $483.8 | $496.5 | $509.6 | $523.0 | $4,284.9 |
| Downside Case | $415.2 | $385.5 | $388.0 | $406.5 | $371.8 | $380.3 | $388.1 | $396.2 | $404.4 | $3,536.0 |
| $ Variance | $0.0 | ($63.0) | ($75.9) | ($72.8) | ($93.3) | ($103.5) | ($108.4) | ($113.4) | ($118.6) | ($748.9) |
| % Variance | 0.0% | -14.1% | -16.4% | -15.2% | -20.1% | -21.4% | -21.8% | -22.3% | -22.7% | -17.5% |

- [1] *Includes financial results for radio.*



20

*Preliminary Draft*
*Subject to Revision*



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414962

# *VRC'S QUALIFICATIONS AND HIGHLIGHTED TRANSACTION EXPERIENCE*



*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# *VRC's Qualifications*

- Established in 1975, VRC is an independent, international financial advisory firm.

  - *Eight domestic offices: New York, Princeton, Boston, Chicago, Cincinnati, Milwaukee, Tampa and San Francisco*
  - *Eight global affiliates: Argentina, Australia, Brazil, Hong Kong, Mexico, Spain, United Kingdom and Venezuela*

- Core services include financial opinions with respect to valuation, solvency, capital adequacy and fairness in connection with mergers, acquisitions, divestitures, leveraged buyouts, recapitalizations, financings and financial and tax reporting matters.

  - VRC's core services provide its clients with strategic advisory, enhanced due diligence and sophisticated financial modeling
  - Transactional: Valuation, Fairness, Solvency and Capital Adequacy Opinions
  - Financial Reporting: Fair Value Reporting; Allocation of Purchase Price (SFAS 141); Goodwill Impairment (SFAS 142); Stock Based Compensation (SFAS 123-R)
  - Tax Reporting: Deferred Compensation (IRC Sec 409A); Allocation of Purchase Cost (IRC Sec 1060 / 338); Valuation of Legal Entities

- Full-service, in-house valuation capabilities include businesses, equity and debt securities, loans, derivative instruments, structured products, intangible assets, fixed assets and real estate.

- *Significant experience with respect to M&A, leveraged finance and complex capital structures results from producing over 1,000 solvency, capital adequacy and fairness opinions in connection with a variety of transactions of all sizes covering all major industry groups.*

*Our client base includes some of the largest and most prestigious companies in the world*

 Altria  Bank of America. Cargill THE CARLYLE GROUP Goldman Sachs  PEPSICO 

 VRC
Strong values.

*Preliminary Draft*
*Subject to Revision*

 TRIBUNE

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414964

# *Highlighted Solvency Opinion Transaction Experience*

---

**SOLVENCY OPINIONS**

$425,000,000 leveraged recapitalization
$157,300,000 dividend payment

**US Oncology**

We provided a solvency opinion to the board of
directors of **US Oncology**.

**VRC**

---

**SOLVENCY OPINIONS**


communications

$400 million "Dutch Auction" tender offer

We provided a solvency opinion to the Board of
Directors of **Emmis Communications Corporation.**

**VRC**

---

**SOLVENCY OPINIONS**


NPC
INTERNATIONAL

the world's largest Pizza Hut franchisee


Pizza Hut

has been acquired by **Merrill Lynch
Global Private Equity.**

We provided a solvency opinion to the board
of directors of **NPC International, Inc.**

**VRC**

---

**SOLVENCY OPINIONS**

waterpik

has been acquired by

THE CARLYLE GROUP

and



for approximately $369 million.

We provided a solvency opinion to the board
of directors of **Water Pik Technologies, Inc.**
and **ING Capital LLC.**

**VRC**

---

**SOLVENCY AND CAPITAL ADEQUACY OPINIONS**

Payment of a $2.4 billion dividend in
connection with a $3.25 billion leveraged
recapitalization transaction.


HMA

We provided solvency and capital adequacy
opinions in connection with the recapitalization of
**Health Management Associates, Inc.**

**VRC**

---

**SOLVENCY OPINIONS**

The Board of Directors of Sorenson Communications, Inc.
(a portfolio company of GTC Golder Rauner LLC)
has authorized a $1.1 billion recapitalization of

**sorenson communications**
Connecting You

led by

**GTCR**

We provided a solvency opinion to the Board of
Directors of Sorenson Communications, Inc. in
connection with the recapitalization

**VRC**

---

**SOLVENCY OPINIONS**

LAZARD

$1.9 billion recapitalization

We rendered a solvency opinion to the
Board of Directors of **Lazard**.

**VRC**

---

**SOLVENCY OPINIONS**



We provided a solvency opinion in support of the
acquisition of **MGM** by:

**SONY**      PROVIDENCE EQUITY

TEXAS
PACIFIC      **Comcast**
GROUP

MERCHANT BANKING

**VRC**

---


**VRC**
Strong values.

23
*Preliminary Draft
Subject to Revision*


**TRIBUNE**

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414965

# *Disclaimer*

- *The accompanying material was compiled on a confidential basis for use solely by the Board of Directors of Tribune Company as of December 18, 2007. This material is not intended to provide the sole basis for evaluating any transaction or event, does not purport to contain all information that may be required and should not be considered a recommendation with respect to any transaction or event. This material was prepared for a specific use by specific persons as of a specific date and was not prepared to conform with any disclosure standards under securities laws or otherwise. Neither VRC nor any of its officers, directors, employees, affiliates, advisors, agents or representatives warrants the accuracy or completeness of any of the material set forth herein. Nothing contained in the accompanying material should be relied upon as a promise or representation as to the past, the present or the future. This material must not be copied, reproduced, distributed or passed to others at any time without the prior written consent of VRC.*

- *It should be understood that any estimates, forecasts or projections contained in the accompanying material were prepared or derived from information supplied by the Company and public sources have been assumed by VRC to be correct and representative of the operations of Tribune without independent verification thereof. Accordingly, no representation or warranty can be or is made by VRC as to the accuracy or achievability of any such third-party valuations, estimates, forecasts or projections and VRC expressly disclaims any and all liability relating to or resulting from the use of this material. Actual results may vary from such estimates, valuations, forecasts or projections and such variations may be material. Subsequent events may impact the analyses and conclusions set forth in the accompanying material and VRC does not assume any responsibility to update or revise the accompanying material for any events subsequent to the specified date set forth herein.*



VRC
Strong values.

24
*Preliminary Draft*
*Subject to Revision*



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414966

3

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

## TRIBUNE COMPANY
## DIRECTORS' DEFERRED STOCK PLANS

Tribune maintains deferred compensation plans on behalf of non-employee Directors to provide an opportunity to defer cash and stock retainers. The Company maintains separate plans for the deferral of cash awards and stock awards. In addition, we continue to maintain deferred cash and stock awards for former Times Mirror Directors. The Tribune Directors deferred cash awards will pay out balances automatically on closing of the going-private transaction. Times Mirror Directors with deferred cash awards will be given the opportunity to elect whether to receive lump sums on closing. However, there is no provision for automatic payment of deferred stock awards under either the Tribune or Times Mirror Plans on change in control of the Company.

Given that deferred stock awards can no longer be tracked in the value of Tribune stock after the closing of the transaction, Management recommends that accounts under the plans be converted to a cash equivalent (at $34 per share) and credited with interest going forward at a rate equal to 120% of the Applicable Federal Rate under the Internal Revenue Code, compounded quarterly. This is the same rate applied to cash deferrals under the Management Deferred Bonus Plan. Account balances, with interest, would then be paid out in accordance with Directors' previous election.

In addition, we recommend that participants in the Tribune Directors' Deferred Stock Plan be given an opportunity to accelerate their prior deferral elections. Because of a delay in full implementation of IRS rules regarding deferred compensation, participants have the ability to change a payment election before the end of the year. We recommend that participants in the Tribune Director's Deferred Stock Plan who had previously elected to receive payments over multiple years be given an opportunity to change their election to receive payment in a lump sum following termination of Board service. At the Director's election, this would more closely align payments under the stock deferral plan with the lump sum deferred cash payments made on closing of the transaction.

Attached are Board resolutions implementing these recommendations.

MMH
12/1707

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414968

# TRIBUNE COMPANY

## PROPOSED BOARD OF DIRECTORS RESOLUTIONS

### (Director Compensation Plan Amendments)

RESOLVED, that the 1996 Tribune Company Nonemployee Director Stock Compensation Plan and the Times Mirror Company Nonemployee Directors Stock Plan be amended to provide (i) for the conversion of deferred stock account balances from Tribune common stock equivalents to cash equivalents in connection with the ESOP/Zell merger closing and (ii) for the establishment of an interest component (at 120% of the long-term Applicable Federal Rate, compounded quarterly) on unpaid account balances;

FURTHER RESOLVED, that Directors with deferred stock awards under the 1996 Tribune Company Nonemployee Director Stock Compensation Plan or Tribune Company Incentive Compensation Plan be permitted to change their payment elections prior to December 31, 2007 to provide for the acceleration of payments following termination of Board service; and

FURTHER RESOLVED, that the Tribune Company Employee Benefits Committee be, and hereby is, authorized (with full power of delegation), in the name and on behalf of the Board of Directors (or any committee thereof) to take all steps necessary to effect the foregoing resolution, including preparing, executing, delivering and filing the amendment and such other documents as may be required by law or as may be deemed necessary or proper in connection with the matters set forth in these resolutions.

MWH
12/17/07

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**