EXECUTION VERSION

INDEMNITY, SUBROGATION and CONTRIBUTION AGREEMENT dated as of December 20, 2007, among Tribune Company, a Delaware corporation ("Borrower"), each of the subsidiaries of the Borrower listed on Schedule I hereto (each such subsidiary individually, a "Guarantor" and collectively, the "Guarantors") and MERRILL LYNCH CAPITAL CORPORATION ("Merrill Lynch"), as administrative agent (in such capacity, the "Agent") for the Lenders (as defined below).

Reference is made to (a) the Credit Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among the Borrower, the lenders from time to time party thereto (the "Lenders"), the Agent and the other agent bank party thereto and (b) the Guarantee Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Guarantee Agreement"), among the Guarantors and the Agent. Capitalized terms used herein and not defined herein shall have the meanings assigned to such terms in the Credit Agreement.

The Lenders have agreed to make Advances to the Borrower for the account of the Borrower and the Subsidiaries, pursuant to, and upon the terms and subject to the conditions specified in, the Credit Agreement. Each of the Guarantors has agreed to guarantee, among other things, all the obligations of the Borrower under the Credit Agreement (upon the terms specified in the Guarantee Agreement). The obligations of the Lenders to make Advances are conditioned on, among other things, the execution and delivery by the Borrower and the Guarantors of an agreement in the form hereof.

Accordingly, the parties hereto agree as follows:

SECTION 1. Indemnity and Subrogation. In addition to all such rights of indemnity and subrogation as the Guarantors may have under applicable law (but subject to Section 3), the Borrower agrees that (a) in the event a payment shall be made by any Guarantor under, and to the extent required by, the Guarantee Agreement, the Borrower shall indemnify such Guarantor for the full amount of such payment and such Guarantor shall be subrogated to the rights of the person to whom such payment shall have been made to the extent of such payment and (b) in the event any assets of any Guarantor shall be sold to satisfy a claim of any Lender, the Borrower shall indemnify such Guarantor in an amount equal to the greater of the book value or the fair market value of the assets so sold.

SECTION 2. Contribution and Subrogation. Each Guarantor (a "Contributing Guarantor") agrees (subject to Section 3) that, in the event a payment shall be made by any other Guarantor under, and to the extent required by, the Guarantee Agreement or assets of any other Guarantor shall be sold to satisfy a claim of any Lender and such other Guarantor (the "Claiming Guarantor") shall not have been fully indemnified by the Borrower as provided in Section 1, the Contributing Guarantor shall indemnify the Claiming Guarantor in an amount equal to the amount of such payment, in

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517271

each case multiplied by a fraction of which the numerator shall be the net worth (computed by the Borrower and the Guarantors, as applicable, in their sole discretion) of the Contributing Guarantor on the date hereof (or, in the case of any Guarantor becoming a party hereto pursuant to Section 12, the date of the Supplement hereto executed and delivered by such Guarantor) and the denominator shall be the aggregate net worth (computed by the Borrower and the Guarantors, as applicable, in their sole discretion) of all the Guarantors on the date hereof (or, in the case of any Guarantor becoming a party hereto pursuant to Section 12, the date of the Supplement hereto executed and delivered by such Guarantor). Valuation of the net worth of the Contributing Guarantor (and all Guarantors) on a fair market value basis will be determined by application of appropriate valuation methodologies (income, market and/or cost approaches) in the sole discretion of the Borrower and the Guarantors, as applicable. Any Contributing Guarantor making any payment to a Claiming Guarantor pursuant to this Section 2 shall be subrogated to the rights of such Claiming Guarantor under Section 1 to the extent of such payment.

SECTION 3. Subordination. Notwithstanding any provision of this Agreement to the contrary, all rights of the Guarantors under Sections 1 and 2 and all other rights of indemnity, contribution or subrogation under applicable law or otherwise shall be fully subordinated to the indefeasible payment in full in cash of the Obligations. No failure on the part of the Borrower or any Guarantor to make the payments required by Sections 1 and 2 (or any other payments required under applicable law or otherwise) shall in any respect limit the obligations and liabilities of any Guarantor with respect to its obligations hereunder, and each Guarantor shall remain liable for the full amount of the obligations of such Guarantor hereunder.

SECTION 4. Termination. This Agreement shall survive and be in full force and effect so long as any Obligation is outstanding and has not been indefeasibly paid in full in cash or any of the Commitments under the Credit Agreement have not been terminated, and shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Obligation is rescinded or must otherwise be restored by any Lender or any Guarantor upon the bankruptcy or reorganization of the Borrower, any Guarantor or otherwise. In connection with the foregoing, the Agent shall execute and deliver to such Guarantor or Guarantor's designee, at such Guarantor's expense, any documents or instruments which such Guarantor shall reasonably request from time to time to evidence such termination and release.

SECTION 5. Governing Law. This agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6. No Waiver; Amendment. No failure on the part of the Agent or any Guarantor to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy by the Agent or any Guarantor preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law. None of the Agent and the Guarantors shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such parties.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517272

Neither this Agreement nor any provision hereof may be waived, amended or modified except pursuant to a written agreement entered into between the Borrower, the Guarantors and the Agent, with the prior written consent of the Required Lenders (except as otherwise provided in the Credit Agreement); provided that the Agent's and the Required Lenders' consent shall not be required for modifications which, if not made hereto, would result in material adverse tax consequences to either the Borrower or any Guarantor as a result of Borrower's making a Subchapter S Corporation election.

SECTION 7. Notices. All communications and notices hereunder shall be in writing and given as provided in the Guarantee Agreement and addressed as specified therein.

SECTION 8. Binding Agreement; Assignments. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of the parties that are contained in this Agreement shall bind and inure to the benefit of their respective successors and assigns. Neither the Borrower nor any Guarantor may assign or transfer any of its rights or obligations hereunder (and any such attempted assignment or transfer shall be void) without the prior written consent of the Required Lenders. Notwithstanding the foregoing, at the time any Guarantor is released from its obligations under the Guarantee Agreement in accordance with such Guarantee Agreement and the Credit Agreement, such Guarantor will cease to have any rights or obligations under this Agreement.

SECTION 9. Survival of Agreement; Severability. All covenants and agreements made by the Borrower and each Guarantor herein and in the certificates or other instruments prepared or delivered in connection with this Agreement or the other Loan Documents shall be considered to have been relied upon by the Agent, the other Lenders and each Guarantor and shall survive the making by the Lenders of the Advances, and shall continue in full force and effect as long as the principal of or any accrued interest on any Advances or any other fee or amount payable under the Credit Agreement or this Agreement or under any of the other Loan Documents is outstanding and unpaid and as long as the Commitments have not been terminated.

SECTION 10. Severability. In case any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, no party hereto shall be required to comply with such provision for so long as such provision is held to be invalid, illegal or unenforceable, but the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby. The parties shall endeavor in good faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 11. Counterparts. This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which when taken together shall constitute a single contract (subject to Section 8), and shall become

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517273

4

effective as provided in Section 8. Delivery of an executed signature page to this Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Agreement.

SECTION 12. Rules of Interpretation. The rules of interpretation specified in Section 1.02 and 8.17 of the Credit Agreement shall be applicable to this Agreement.

SECTION 13. Additional Guarantors. Pursuant to Section 5.01(l) of the Credit Agreement, each wholly owned Domestic Subsidiary of Borrower (to the extent such Subsidiary (i) is not an Immaterial Subsidiary after the Closing Date, a Subsidiary of a Foreign Subsidiary of Borrower or a Receivables Subsidiary or (ii) is not merged or consolidated with and into Borrower or any Guarantor in compliance with Section 5.02(b) of the Credit Agreement on or prior to the 30th day after such Subsidiary shall become a Subsidiary) that was not in existence or not a wholly owned Domestic Subsidiary on the date of the Credit Agreement is required to enter into the Guarantee Agreement as a Guarantor upon becoming a wholly owned Domestic Subsidiary. Upon execution and delivery after the date hereof by the Agent and any such wholly owned Domestic Subsidiary of an instrument in the form of Exhibit 1 to the Guarantee Agreement, such Subsidiary shall become a Guarantor thereunder with the same force and effect as if originally named as a Guarantor therein. Section 7 of the Guarantee Agreement requires that any such Guarantor enter into this Agreement. Upon execution and delivery after the date hereof by the Agent and any such Guarantor of an instrument ("Supplement") in the form of Annex 1 hereto, such Guarantor shall become a party hereto as a Guarantor with the same force and effect as if originally named as a Guarantor herein. The execution and delivery of any Supplement adding an additional Guarantor as a party to this Agreement shall not require the consent of any other Guarantor under the Guarantee Agreement or hereunder or of any Lender. Subject to Section 8, the rights and obligations of each Guarantor hereunder shall remain in full force and effect notwithstanding the addition of any new Guarantor as a party to this Agreement.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517274

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first appearing above.

TRIBUNE COMPANY, as the Borrower,

By: _____
Name:
Title:

[Indemnity Subrogation and Contribution Agreement]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517275

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first appearing above.

        EACH OF THE SUBSIDIARIES LISTED ON SCHEDULE 1 HERETO, as a Guarantor,

By: _____
Name:
Title:

[Indemnity Subrogation and Contribution Agreement]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517276

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the date first appearing above.

MERRILL LYNCH CAPITAL CORPORATION,
as Agent

By: _____
Name:
Title:

[Indemnity Subrogation and Contribution Agreement]

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

SCHEDULE I
TO THE INDEMNITY SUBROGATION
AND CONTRIBUTION AGREEMENT

Guarantors

The Baltimore Sun Company
Chicago Tribune Company
The Daily Press, Inc.
The Hartford Courant Company
Orlando Sentinel Communications Company
The Morning Call, Inc.
Sun-Sentinel Company
Newsday, Inc.
Tribune Interactive, Inc.
Tribune Los Angeles, Inc.
Tribune Media Services, Inc.
Tribune Broadcasting Company
KHCW Inc.
KSWB Inc.
KPLR, Inc.
KTLA Inc.
KWGN Inc.
Tower Distribution Company
Tribune Broadcast Holdings, Inc.
Tribune Entertainment Company
Tribune Television Company
Channel 40, Inc.
Channel 39, Inc.
Tribune Television Holdings, Inc.
Tribune Television New Orleans, Inc.
Tribune Television Northwest, Inc.
WDCW Broadcasting, Inc.
WGN Continental Broadcasting Company
WPIX, Inc.
Tribune Finance, LLC
Homestead Publishing Company
Patuxent Publishing Company
Chicagoland Publishing Company
Tribune Direct Marketing, Inc.
Virginia Gazette Companies, LLC
Forum Publishing Group, Inc.
Courant Specialty Products, Inc.
New Mass Media, Inc.
TMLH2, Inc.
TMLS1, Inc.
Gold Coast Publications, Inc.
Distribution Systems of America, Inc.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517278

Los Angeles Times Communications LLC
Tribune Manhattan Newspaper Holdings, Inc.
Tribune New York Newspaper Holdings, LLC
TMS Entertainment Guides, Inc.
Tribune Media Net, Inc.
Tribune National Marketing Company
Tribune Broadcasting Holdco, LLC
ChicagoLand Television News, Inc.
5800 Sunset Productions Inc.
Tribune (FN) Cable Ventures, Inc.
WTXX Inc.
Chicago National League Ball Club, Inc.
Tribune California Properties, Inc.
California Community News Corporation
Hoy Publications, LLC
Eagle New Media Investments, LLC
Stemweb, Inc.
ForSaleByOwner.com
Homeowners Realty, Inc.
Internet Foreclosure Service, Inc.
Newport Media, Inc.
Eagle Publishing Investments, LLC
Star Community Publishing Group, LLC

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517279

ANNEX 1 TO
THE INDEMNITY, SUBROGATION AND
CONTRIBUTION AGREEMENT

SUPPLEMENT NO. [ ] dated as of [           ], to the Indemnity, Subrogation and Contribution Agreement dated as of December 20, 2007 (the "Indemnity, Subrogation and Contribution Agreement"), among TRIBUNE COMPANY, a Delaware limited liability company (the "Borrower"), each of the subsidiaries of the Borrower listed on Schedule I thereto (each such subsidiary individually, a "Guarantor" and, collectively, the "Guarantors") and MERRILL LYNCH CAPITAL CORPORATION ("Merrill Lynch"), as administrative agent (the "Agent") for the Lenders (as defined below).

A. Reference is made to (a) the Credit Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), among the Borrower, the lenders from time to time party thereto (the "Lenders"), the Agent and the other agent banks thereto and (b) the Guarantee Agreement dated as of December 20, 2007 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Guarantee Agreement"), among the Guarantors and the Agent.

B. Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Indemnity, Subrogation and Contribution Agreement and the Credit Agreement.

C. The Borrower and the Guarantors have entered into the Indemnity, Subrogation and Contribution Agreement in order to induce the Lenders to make Advances. Pursuant to Section 5.01(l) of the Credit Agreement, certain subsidiaries that were not in existence or not such a subsidiary on the date of the Credit Agreement are required to enter into the Guarantee Agreement as a Guarantor. Section 12 of the Indemnity, Subrogation and Contribution Agreement provides that additional Subsidiaries may become Guarantors under the Indemnity, Subrogation and Contribution Agreement by execution and delivery of an instrument in the form of this Supplement. The undersigned Subsidiary (the "New Guarantor") is executing this Supplement in accordance with the requirements of the Credit Agreement to become a Guarantor under the Indemnity, Subrogation and Contribution Agreement in order to induce the Lenders to make the Advances.

Accordingly, the Agent and the New Guarantor agree as follows:

SECTION 1. In accordance with Section 12 of the Indemnity, Subrogation and Contribution Agreement, the New Guarantor by its signature below becomes a Guarantor under the Indemnity, Subrogation and Contribution Agreement with the same force and effect as if originally named therein as a Guarantor and the New Guarantor hereby agrees to all the terms and provisions of the Indemnity, Subrogation and Contribution Agreement applicable to it as a Guarantor thereunder. Each reference to a Guarantor in the Indemnity, Subrogation and Contribution Agreement shall be deemed to include

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517280

the New Guarantor. The Indemnity, Subrogation and Contribution Agreement is hereby incorporated herein by reference.

SECTION 2. The New Guarantor represents and warrants to the Agent and the Lenders that this Supplement has been duly authorized, executed and delivered by it and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

SECTION 3. This Supplement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Supplement shall become effective when the Agent shall have received counterparts of this Supplement that, when taken together, bear the signatures of the New Guarantor and the Agent. Delivery of an executed signature page to this Supplement by facsimile transmission shall be as effective as delivery of a manually signed counterpart of this Supplement.

SECTION 4. Except as expressly supplemented hereby, the Indemnity, Subrogation and Contribution Agreement shall remain in full force and effect.

SECTION 5. This Supplement shall be governed by, and construed in accordance with, the laws of the State of New York.

SECTION 6. In case any one or more of the provisions contained in this Supplement should be held invalid, illegal or unenforceable in any respect, neither party hereto shall be required to comply with such provision for so long as such provision is held to be invalid, illegal or unenforceable, but the validity, legality and enforceability of the remaining provisions contained herein and in the Indemnity, Subrogation and Contribution Agreement shall not in any way be affected or impaired. The parties hereto shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

SECTION 7. All communications and notices hereunder shall be in writing and given as provided in Section 7 of the Indemnity, Subrogation and Contribution Agreement.

SECTION 8. The New Guarantor agrees to reimburse the Agent for its reasonable out-of-pocket expenses in connection with this Supplement, including the reasonable fees, other charges and disbursements of counsel for the Agent.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0517281

3

IN WITNESS WHEREOF, the New Guarantor and the Agent have duly executed this Supplement to the Indemnity, Subrogation and Contribution Agreement as of the day and year first above written.

[Name of New Guarantor],

by

_____

Name:

Title:

MERRILL LYNCH CAPITAL CORPORATION, as Agent,

by

_____

Name:

Title:

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517282

SCHEDULE I
TO SUPPLEMENT NO. [ ] TO THE INDEMNITY
SUBROGATION AND CONTRIBUTION AGREEMENT

Guarantors

| Name | Address |
|------|---------|
|      |         |

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0517283