# TRIBUNE COMPANY
## NOMINATING & GOVERNANCE COMMITTEE
### BOARD COMMITTEE STRUCTURE AND MEMBERSHIP REVIEW

The Nominating & Governance Committee Charter requires the Committee to periodically review and make recommendations to the Board with respect to the size, structure or meeting frequency of the Board and Board committees.

With the recent resignations of the three Chandler Trust directors and Chris Reyes' scheduled resignation following the July Board meeting, the committee membership will be as follows:

**Audit Committee**
Betsy D. Holden
William A. Osborn, Chair
Dudley S. Taft

**Nominating & Governance Committee**
Enrique Hernandez, Jr., Chair
Robert S. Morrison

**Executive Committee**
Dennis J. FitzSimons, Chair
Enrique Hernandez, Jr.
Robert S. Morrison
William A. Osborn

**Compensation & Organization Committee**
Enrique Hernandez, Jr.
Robert S. Morrison, Chair
Miles D. White

Given the relatively short time frame anticipated between now and the merger closing, management recommends that we leave the size of the three NYSE-mandated Board committees at three members each and appoint Miles White to fill the vacancy on the Nominating & Governance Committee that will be created by Chris Reyes' resignation. A proposed resolution is attached.

MWH
7/11/07

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# TRIBUNE COMPANY

## PROPOSED BOARD OF DIRECTORS RESOLUTION

### (Committee Appointment)

RESOLVED, that Miles D. White is appointed as a member of the Nominating & Governance Committee of the Board of Directors to hold office until the next Annual Meeting of Shareholders and until his successor is appointed.

MWH
7/11/07

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

4

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414631

# TRIBUNE COMPANY
## NOMINATING & GOVERNANCE COMMITTEE
## GOVERNANCE DOCUMENTS REVIEW

**By-Laws**



**Board Governance Guidelines**

Redacted

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**



**Nominating & Governance Committee Charter**

MWH
7/11/07

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

# TRIBUNE COMPANY

## PROPOSED BOARD OF DIRECTORS RESOLUTION

### (Approval of Amended By-Laws)

RESOLVED, that the amended By-Laws, substantially in the form presented at this meeting, are hereby adopted and approved.

MWH
7/11/07

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414634

DRAFT
ANNEX A

## BY-LAWS

of

### Tribune Company

### a Delaware Corporation

As amended and in effect on ~~October 19, 2005~~July 18, 2007

### ARTICLE I



### ARTICLE II



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only


Redacted

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414636



Redacted

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only



## ARTICLE III



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414638



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414639



- 6 -

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414640



- 7 -

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414641



- 8 -

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only



## ARTICLE IV



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414643



Redacted

- 10 -

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0414644**



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414645



## ARTICLE V



Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414646



Redacted

- 13 -

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414647



Redacted

## ARTICLE VI

Redacted

- 14 -

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414648



## ARTICLE VII



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0414649**



- 16 -

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414650



**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0414651**

## BOARD OF DIRECTORS GOVERNANCE GUIDELINES
### (As amended and in effect on October 19, 2005)

**1.    Director Qualifications**

The Board will have a majority of directors who meet the criteria for independence required by the New York Stock Exchange (NYSE), with a preference that no more than three members of the Board be employees of the Company.  The Board has adopted categorical standards, set forth in Annex A to these guidelines, to assist it in determining director independence under the NYSE independence criteria.  The Board seeks members from diverse professional backgrounds who combine a broad spectrum of experience and expertise with a reputation for integrity.  Directors should have experience in positions with a high degree of responsibility, be leaders in the organizations with which they are affiliated, be selected based upon contributions they can make to the Board and management and be free from relationships or conflicts of interest that could interfere with the director's duties to the Company and its shareholders.

**2.    Size of Board**

The number of directors shall not exceed a number that can function efficiently as a body.  The Nominating & Governance Committee, in consultation with the Chairman and CEO (if the Chairman is not the CEO), considers and makes recommendations concerning the appropriate size and membership needs of the Board.  Normally, the number of directors will be approximately 12-13; however the availability of uniquely qualified candidates or succession planning considerations may justify size increases.

**3.    Selection of New Directors**

The Nominating & Governance Committee will be responsible for identifying and making recommendations regarding new director candidates.  The Board expects the Nominating & Governance Committee to consider the views of the Chairman and CEO (if the Chairman is not the CEO) in making appointments, but it is the Nominating & Governance Committee's responsibility to make director recommendations to the full Board for approval.  The Nominating & Governance Committee will consider director candidates recommended by shareholders who, in the sole discretion of the Nominating & Governance Committee, satisfy the director qualifications set forth above and are otherwise determined to be suitable director candidates.  Shareholders who choose to submit director nominees to the Nominating & Governance Committee shall provide the information, and follow the procedures, outlined in the Company's By-Laws.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

4.   **Retirement Policy**

Mandatory retirement for non-employee directors is required at the Annual
Meeting of Shareholders immediately following their 72nd birthday.  An officer
of the Company shall retire promptly following (i) such officer's resignation as
an officer of the Company or (ii) at the Annual Meeting of Shareholders
immediately following such officer's retirement as an officer of the Company.

5.   **Term Limits**

The Board does not believe it should establish term limits.  Term limits have the
disadvantage of losing the contribution of directors who have been able to
develop, over a period of time, increasing insight into the Company and its
operations and, therefore, provide an increasing contribution to the Board as a
whole.

6.   **Classified Board**

The Board believes that electing directors for three-year terms on a classified
basis with one class coming up for election each year is beneficial, as it
promotes consistency in governance.  The Board also believes it is important for
the Company to control its own destiny and supports maintaining structural
protections that will allow the Company to deal with potential suitors on its own
terms and in the best interests of its shareholders.

7.   **Directors Changing Their Present Job Responsibility**

The Board expects directors who change the responsibility they held when they
were elected to the Board to promptly advise the Nominating & Governance
Committee for review and recommendation to the Board.  It is not the sense of
the Board that in every instance the directors who retire or change from the
position they held when they came on the Board should necessarily leave the
Board.  There should, however, be an opportunity for the Board through the
Nominating & Governance Committee to review the continued appropriateness
of Board membership under the circumstances.

8.   **Director Responsibilities**

The basic responsibility of Directors is to exercise their business judgment and
act in what they reasonably believe to be in the best interests of the Company
and its shareholders.  In discharging that obligation, Directors should be entitled
to rely on the honesty and integrity of the Company's senior executives and its
outside advisors and auditors.  The Directors shall also be entitled to have the
Company purchase reasonable directors' and officers' liability insurance on
their behalf, to the benefits of indemnification to the fullest extent permitted by
law and the Company's charter, by-laws and any indemnification agreements,
and to exculpation as provided by state law and the Company's charter.

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Directors are expected to attend Board meetings and meetings of committees on which they serve, and to spend the time needed and meet as frequently as necessary to properly discharge their responsibilities. Directors are also expected to attend annual meetings of shareholders.

Directors are expected to act ethically at all times and to adhere to the policies comprising the Company's Code of Business Conduct.

9. **Board Committees**

The Board will have at all times an Audit Committee, a Nominating & Governance Committee and a Compensation & Organization Committee. All of the members of these committees will be independent directors under the criteria established by the New York Stock Exchange and the Securities and Exchange Commission. The Board may also have an Executive Committee, which may contain one or more management directors. There will, from time to time, be occasions in which the Board may want to form a new committee depending upon the circumstances. Members of the committees are recommended to the Board by the Nominating & Governance Committee in consultation with the Chairman and CEO (if the Chairman is not the CEO). Committee members shall possess such skill and experience as is appropriate for the committee or committees on which they serve.

Each of the Audit Committee, the Nominating & Governance Committee and the Compensation & Organization Committee will have its own charter. The charters will set forth the purposes, goals and responsibilities of these committees as well as qualifications for committee membership, procedures for committee member appointment and removal, committee structure and operations, and committee reporting to the Board. The responsibilities of these and any other Board committees are also provided in the Company's by-laws.

The Nominating & Governance Committee shall recommend the chair of each committee to the Board, in consultation with the Chairman and CEO (if the Chairman is not the CEO). The committee chair, in consultation with committee members, shall determine committee agendas and the length and frequency of committee meetings, consistent with any requirements set forth in the committee's charter, if applicable. The meeting schedule for each committee will be furnished to all Directors.

10. **Rotation of Committee Assignments**

The Board believes that committee assignments should be based on the director's knowledge, interests and areas of expertise. The Board believes experience and continuity are more important than rotation and that Board members should only be rotated if rotation is likely to improve committee performance or facilitate committee work.

3

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414654

## 11. Agendas of Board Meetings

The Chairman, in consultation with members of the Board when appropriate, will establish the agenda for Board meetings.

## 12. Distribution of Materials for Board Meetings

The Board believes it is critical for members to have materials on topics to be discussed sufficiently in advance of the meeting date and for Board members to be kept abreast of developments between Board meetings. The Company regularly informs Board members of Company and competitive developments and, except in the case of special meetings, distributes, generally a week in advance, written materials for use at Board and Board committee meetings.

## 13. Executive Sessions of Directors

Executive sessions are those sessions that include only non-employee directors and those members of management or legal, financial or other advisors whose participation is requested. Executive sessions should occur on a regular basis at the discretion of the directors. If, at any time, the group of non-employee directors includes one or more directors who do not satisfy the then current independence criteria of the NYSE, the Company shall, at least one time per year, schedule an executive session including only those non-employee directors who satisfy the then current NYSE independence criteria. The Board of Directors, by resolution of a majority of the non-employee directors, shall designate one non-employee director to preside at these sessions and his or her name will be disclosed in the annual proxy statement. Potential topics for executive sessions shall be provided to the incumbent presiding director, who shall schedule such sessions as needed.

## 14. Attendance of Management at Board Meetings

The Board believes it is important for directors to know the Company's key senior officers well and believes that their regular attendance at and participation in Board and Board committee meetings is helpful.

## 15. Board Access to Senior Management and Independent Advisors

Board members have complete access to the Company's management and its auditors. It is assumed that Board members will use judgment to be sure that such contact is not distracting to the business operation of the Company and that the Chairman and CEO (if the Chairman is not the CEO) is appropriately advised of any such contact.

The Board and each committee have the power to hire independent legal, financial or other advisors as they may deem necessary, without consulting or obtaining the approval of any officer of the Company in advance.

4

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

16. **Director Compensation**

The Compensation & Organization Committee will determine the form and amount of director compensation in accordance with policies and principles established by the Committee from time to time. The Compensation & Organization Committee will consider that directors' independence may be jeopardized if director compensation and perquisites exceed customary levels, if the Company makes substantial charitable contributions to organizations with which a director is affiliated, or if the Company enters into consulting contracts with (or provides other indirect forms of compensation to) a director or an organization with which a director is affiliated.

It is appropriate for Company management to report once a year to the Compensation & Organization Committee regarding the status of director compensation in relation to comparable U.S. companies. In addition, the Compensation & Organization Committee will conduct periodic reviews of director compensation. Changes in director compensation, if any, should come as a recommendation of the Compensation & Organization Committee following discussion and concurrence by the Board.

17. **Annual Performance Evaluations**

Board Effectiveness Review. The Board will conduct an annual self-evaluation to determine whether it and its committees are functioning effectively. The Nominating & Governance Committee, in conjunction with the presiding non-management director, will review comments from all directors and report to the Board with an assessment of the Board's performance and any recommendations following each such review. All directors are free to make suggestions on improvement of the Board's practices at any time and are encouraged to do so.

Director Evaluation. The Nominating & Governance Committee shall be responsible for reviewing with the Board, on an annual basis, the requisite skills and characteristics of prospective Board members as well as the composition of the Board as a whole. This assessment will include members' qualification as independent, as well as consideration of diversity, age, skills and experience in the context of the needs of the Board. The Board expects that the Nominating & Governance Committee will take action to effect changes in incumbent directors if, in the opinion of the Committee after discussion with the Chairman and CEO (if the Chairman is not the CEO), such changes are deemed to be appropriate.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414656

**18.    Succession Planning and Management Development**

The CEO will make an annual report to the Board on succession planning. There should also be available, on a continuing basis, the CEO's recommendation as a successor should he/she be unexpectedly disabled.

The CEO will make an annual report to the Board on the Company's program for management development. This report should be given to the Board at the same time as the succession planning report.

**19.    Formal Evaluation of Chairman/CEO**

The Compensation & Organization Committee conducts the Chairman and CEO (if the Chairman is not the CEO) evaluations in the context of its review of the Company's performance for purposes of awarding compensation. The Compensation & Organization Committee Chairman reports to the Board on the evaluation in an Executive Session.

**20.    Separate Positions of Chairman and CEO**

The Board has no policy with respect to the separation of the offices of Chairman and CEO. The Board believes that this issue is part of the succession planning process and that it is in the best interest of the Company for the Board to make a determination each time it elects a new Chairman or CEO.

**21.    Former CEO Status on Board**

When the Chairman is also the CEO of the Company, the Board expects the Chairman to resign upon retirement as CEO. There may be circumstances where the Board's policy to accept the resignation would not apply, including to accommodate the transition for the new Chairman or where the current Chairman cedes the title of CEO to another individual.

**22.    Board Interaction with Media, Institutional Investors, Peers, Customers, etc.**

The Board believes that under ordinary circumstances, management speaks for the Company and the Chairman speaks for the Board. It is expected that communication between Board members or retired Board members and constituencies outside the Company would be done with the knowledge of management and, except as approved by the Nominating & Governance Committee, only at the request of management.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRB0414657**

23. **Director Orientation and Continuing Education**

All new non-management directors must participate in the Company's orientation program, which should be conducted within two months of the meeting at which they are elected. This orientation will include presentations by senior management to familiarize new directors with the Company's strategic plans, its significant financial, accounting and risk management issues, its compliance programs, its Code of Business Conduct, its principal officers and its internal and independent auditors. The orientation program will include visits to the Company's headquarters and, to the extent practical, certain of the Company's significant facilities. All other directors will be invited to attend the orientation program.

24. **Review and Amendment**

The Nominating & Governance Committee shall periodically review and reassess the adequacy of these guidelines and recommend changes to the Board for approval. The Board reserves the right to amend these Guidelines from time to time as it determines to be desirable or appropriate.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414658

**Annex A**

## CATEGORICAL STANDARDS

To be considered independent under the rules of the New York Stock Exchange, the Board must determine that a director has no direct or indirect material relationship with the Company. The Board has established the following categorical standards to assist it in making this determination. A director is not independent under these categorical standards if:

- The director is, or has been within the last three years, an employee of the Company, or an immediate family member of the director is, or has been within the last three years, an executive officer, of the Company.

- The director has received, or has an immediate family member who has received, during any twelve-month period within the last three years, more than $100,000 in direct compensation from the Company, other than director and committee fees and pension or other forms of deferred compensation for prior service (provided such compensation is not contingent in any way on continued service).

- (i) The director or an immediate family member is a current partner of a firm that is the Company's internal or external auditor; (ii) the director is a current employee of such a firm; (iii) the director has an immediate family member who is a current employee of such a firm and who participates in the firm's audit, assurance or tax compliance (but not tax planning) practice; or (iv) the director or an immediate family member was within the last three years (but is no longer) a partner or employee of such firm and personally worked on the Company's audit within that time.

- The director or an immediate family member is, or has been within the last three years, employed as an executive officer of another company where any of the Company's present executive officers at the same time serves or served on that company's compensation committee.

- The director is a current employee, or an immediate family member is a current executive officer, of a company that has made payments to, or received payments from, the Company for property or services in an amount which, in any of the last three fiscal years, exceeded the greater of $1 million or 2% of such other company's consolidated gross revenues.

- The director is a current employee, or an immediate family member is a current executive officer, of a company which was indebted to the Company, or to which the Company was indebted, where the total amount of either company's indebtedness to the other, in any of the last three fiscal years, exceeded 5% or more of such other company's total consolidated assets.

- The director or an immediate family member is a current officer, director or trustee of a charitable organization where the Company's (or an affiliated charitable foundation's) annual discretionary charitable contributions to the charitable organization, in any of the last three fiscal years, exceeded the greater of $1 million or 5% of such charitable organization's consolidated gross revenues.

i

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Direct or indirect ownership of even a significant amount of Company stock by a director who is otherwise independent as a result of the application of the foregoing standards will not, by itself, bar an independence finding as to such director.

For purposes of these categorical standards, "immediate family member" includes a director's spouse, parents, children, siblings, mothers and fathers-in-law, sons and daughters-in-law, brothers and sisters-in-law, and anyone (other than domestic employees) who share such director's home.  When applying the three-year look back provision to the foregoing categorical standards, the Company need not consider individuals who are no longer immediate family members as a result of legal separation or divorce, or those who have died or become incapacitated.

For purposes of these categorical standards, "executive officer" means a company's president, principal financial officer, principal accounting officer (or controller), any vice president in charge of a principal business unit, division or function (such as sales, administration or finance), or other officer who performs a policy-making function, or any other person who performs similar policy-making functions for the company. Officers of a company's subsidiaries shall be deemed officers of the company if they perform such policy-making functions for the company.

The Board will annually review all relationships between the Company and its outside directors and publicly disclose whether its outside directors are independent.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414660

## NOMINATING & GOVERNANCE COMMITTEE
## CHARTER
### (As in effect on October 19, 2005)

### Purpose

The Nominating & Governance Committee is appointed by the Board of Directors to: (a) identify and make recommendations regarding new director candidates; (b) review and recommend the renomination of incumbent directors; (c) review and recommend committee appointments; (d) review and recommend changes to the Board of Director Governance Guidelines; (e) in conjunction with the presiding non-management director, lead the Board in its annual review of the Board's performance; and (f) perform other related tasks, including studying the size, committee structure or meeting frequency of the Board, as may be requested from time to time by the Board of Directors.

### Committee Membership

The Nominating & Governance Committee shall consist of no fewer than three members. The members of the Committee shall meet the independence requirements of the New York Stock Exchange. The members of the Committee, including a chairperson, shall be appointed and replaced by the Board of Directors based on the recommendations of the Committee.

### Committee Authority and Responsibilities

1.    The Committee shall identify individuals qualified to become Board members, as such qualifications are defined in the Board's Governance Guidelines, for recommendation to the Board.

2.    The Committee shall also consider and evaluate other director candidates brought to the Committee's attention, including shareholder nominees, taking into account the qualifications for director nominees set forth in the Board's Governance Guidelines.

3.    The Committee shall recommend to the Board (i) the nominees for election as directors at each annual or special meeting of shareholders where directors are to be elected, (ii) the persons to be appointed by the Board to fill any Board vacancies and (iii) the membership of the individual Board committees, including this Committee.

4.    The Committee shall, in conjunction with the presiding non-management director, lead the Board in an annual performance evaluation, including soliciting comments from all directors, preparing a report to the Board with an assessment of the performance of the Board and making recommendations for improvements of the Board's operations.

5.    The Committee shall lead the Board in an annual review of the skills and characteristics of individual Board members as well as the composition of the

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

Board as a whole and the individual Board committees, including assessments of independence of non-management directors, and shall take action to effect changes in incumbent directors if deemed appropriate.

6.  The Committee shall periodically review and make recommendations to the Board with respect to the size, structure or meeting frequency of the Board and Board committees

7.  The Committee shall periodically review and reassess the adequacy of the Board's Governance Guidelines and recommend changes to the Board for approval.

8.  The Committee shall have the sole authority to retain and terminate any search firm used to identify director candidates and shall have sole authority to approve the search firm's fees and other retention terms.

9.  The Committee shall have the authority to obtain advice and assistance from internal or external legal, accounting or other advisors.

10. The Committee may form and delegate authority to subcommittees when appropriate.

11. The Committee shall make regular reports to the Board.

12. The Committee shall review and reassess the adequacy of this Charter annually and recommend any proposed changes to the Board for approval. The Committee shall annually review its own performance.

13. The Committee shall review procedures for the receipt, retention and treatment, by either the Committee chairperson or the non-management directors as a group, of communications received by the Company regarding corporate governance matters, and the submission by interested parties of concerns regarding corporate governance matters.

14. The Committee shall review all shareholder proposals submitted for inclusion in the Company's annual proxy materials or for consideration at any shareholders meeting and make recommendations on such proposals to the full Board as appropriate.

15. The Committee shall review and approve the corporate governance disclosures to be included in the Company's annual proxy statement or annual report on Form 10-K filed with the SEC.

16. The Committee shall carry out such other duties as may be delegated to it from time to time by the Board.

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414662

TRB0414663

COMPENSATION & ORGANIZATION
COMMITTEE

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

**TRIBUNE COMPANY**
**COMPENSATION & ORGANIZATION COMMITTEE MEETING**
**WEDNESDAY, JULY 18, 2007 (8:30 A.M.)**
**LAKEVIEW ROOM**
**24TH FLOOR, TRIBUNE TOWER**

**AGENDA**

|                                                        | Tab No. |
| ------------------------------------------------------ | :-----: |
| Approve minutes of February 13 and April 1, 2007 meetings |    1    |
| Compensation review                                    |    2    |

**Compensation & Organization Committee**
Enrique Hernandez, Jr.
Robert S. Morrison, Chairman
Miles D. White

**Tribune Company**
Dennis J. FitzSimons
Donald C. Grenesko
Crane H. Kenney

**Frederic W. Cook & Co., Inc.**
George Paulin (by telephone)

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414664

1

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

**TRIBUNE COMPANY**
**COMPENSATION & ORGANIZATION COMMITTEE MEETING**
**FEBRUARY 13, 2007**

The Compensation & Organization Committee met at 7:30 a.m. on Tuesday, February 13, 2007 at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Enrique Hernandez, Jr., Robert S. Morrison and Miles D. White. Jeffrey Chandler and George B. Paulin of Frederic W. Cook & Co., Inc. participated via telephone. Dennis J. FitzSimons, Donald C. Grenesko and Crane H. Kenney attended a portion of the meeting.

Mr. Morrison acted as Chairman of the meeting. Messrs. FitzSimons, Grenesko and Kenney were present as the meeting was called to order and Messrs. Chandler and Paulin were on the telephone. The following business was discussed by the Committee:

1.    The minutes of the December 12, 2006 Committee meeting were approved.

2.    Mr. Kenney presented management's recommendation to allow for the deferral of future director stock awards made under the Incentive Compensation Plan on the same terms and conditions provided for in the 1996 Nonemployee Director Stock Compensation Plan, the predecessor plan for these awards. Following discussion, the Committee approved management's recommendation.

3.    Mr. Kenney 

4.    Mr. Grenesko presented management's 2006 bonus payout recommendations. Following discussion, the Committee approved the aggregate 2006 bonus payout recommendations as presented. The Committee also approved operating cash flow and equity income as the financial performance criteria for the determination of 2007 MIP bonuses, as well as the specific operating cash flow and equity income targets by group for 2007.

5.    Mr. Grenesko then reviewed the final 2007 equity compensation recommendations, which followed the general framework outlined by management and endorsed by Mr. Paulin at the December Committee meeting. These recommendations include: (i) accelerated vesting of equity awards in certain change in control transactions; (ii) full vesting of all non-union employees in their 401(k) company contribution accounts in the

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

event of both a change in control of Tribune and involuntary or constructive termination of employment; (iii) adjustments to outstanding equity grants held by Tribune Broadcasting employees in connection with a potential spin-off of the Broadcasting group; (iv) the payment of any special cash dividend in a leveraged recapitalization transaction to holders of restricted stock units; (v) the resetting of stock ownership guidelines following a leveraged recapitalization transaction; and (vi) the termination of the Employee Stock Purchase Plan. These recommendations will be implemented, as appropriate, in connection with the transaction or transactions approved by the Board at the conclusion of the Special Committee's strategic review process.

6.  Mr. Grenesko then reviewed management's recommendation for restricted stock unit awards to key employees of the Company. Following discussion, the Committee approved, with Mr. Chandler abstaining for purposes of Exchange Act Rules 16b-3(d)(1) and 16b-3(b)(3), the grant of up to 2 million restricted stock units to approximately 780 employees. The terms of the restricted stock unit awards are as follows:

| | |
|---|---|
| Date of Grant: | February 13, 2007 |
| Clawback: | Restricted stock units may be suspended, canceled or forfeited and gains may be forfeited if participant engages in any act of fraud, insider trading or other securities law violation |
| Retirement, death or disability: | Immediate vesting |
| Vesting: | 33 1/3% per year beginning February 13, 2008 |
| Dividends: | Dividend equivalents accumulated in stock and paid in additional shares at vesting |
| Voting rights: | None, prior to vesting |

The Committee also approved the grant of 100,000 restricted stock units to be used by management to attract and retain management talent. At this point, Messrs. Grenesko and Kenney departed the meeting.

7.  The Committee next reviewed compensation analyses and supporting market data for the four executive officers to be named in the 2007 proxy statement (other than Mr. FitzSimons). Following discussion, the Committee, with Mr. Chandler abstaining from the approval of the restricted stock unit awards for purposes of Securities Exchange Act Rules 16b-3(d)(1) and 16b-3(b)(3), approved 2006 bonuses (based on the achievement of previously approved financial targets and individual performance goals), 2007 salary

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414667

adjustments and 2007 restricted stock unit awards for the executives to be named in the proxy (other than Mr. FitzSimons) and the next 25 most highly compensated Tribune executives. At this point, Mr. FitzSimons departed the meeting.

8. The Committee next reviewed a compensation analysis and supporting data for Mr. FitzSimons. After discussion, the Committee approved an increase in Mr. FitzSimons' salary of approximately 3% to $1,015,000. The Committee also approved a 2006 bonus of $1.4 million under the MIP (based on the achievement of previously approved financial targets and individual performance goals) and, with Mr. Chandler abstaining for purposes of Securities Exchange Act Rules 16b-3(d)(1) and 16b-3(b)(3), a 2007 restricted stock unit award of 135,000 shares.

There being no further business to come before the Committee, the meeting was adjourned at 10:00 a.m.


Robert S. Morrison
Chairman

3

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414668

**TRIBUNE COMPANY**
**COMPENSATION & ORGANIZATION COMMITTEE MEETING**
**APRIL 1, 2007**

The Compensation & Organization Committee met at 9:45 p.m. Central time on Sunday, April 1, 2007, by conference telephone, pursuant to notice. The following committee members participated in the meeting: Jeffrey Chandler, Enrique Hernandez, Jr. and Robert S. Morrison. Dennis J. Fitzsimons, Donald C. Grenesko and Crane H. Kenney also participated in portions of the meeting.

Mr. Morrison acted as Chairman of the meeting. Messrs. FitzSimons, Grenesko and Kenney participated as the meeting was called to order. The meeting was convened to discuss a special cash bonus pool and phantom stock plan proposed by management in connection with, and conditioned upon consummation of, the proposed leveraged ESOP transaction (the "ESOP Transaction").

1.      The Committee first considered special incentive awards comprised of (i) a cash bonus pool totaling $6.5 million to be awarded to approximately 32 management and other key employees who were critical to the strategic review process and (ii) the establishment of a 3% phantom stock pool in the surviving company to be awarded to approximately 17 members of senior management who were directly involved with the ESOP Transaction, such awards to be made, in each case, in respect of past and future services as employees of the Company (the "Special Incentive Awards").

2.      The Committee next considered the establishment of a 5% phantom stock pool in the surviving company to be awarded to approximately 200 members of management and other key employees as a long term incentive, such awards to be made in respect of past and future services as employees of the Company (the "Management Equity Incentive Plan Awards").

3.      Following discussion, the Committee approved the Special Incentive Awards and the Management Equity Incentive Plan Awards, substantially in accordance with the terms outlined in Exhibit A, respectively and, in each case, subject to such modifications as management shall reasonably determine in connection with the negotiation of the ESOP Transaction or otherwise, and adopted the following resolution:

        RESOLVED, that the Special Incentive Awards and the Management Equity Incentive Plan Awards and other matters contemplated thereby be, and they hereby are, approved as employment compensation or other employee benefit arrangements.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

There being no further business to come before the Committee, the meeting was adjourned at 10:00 p.m.

_____

Robert S. Morrison
Chairman

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414670

**2**

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0414671

**Tribune Company**
**Compensation and Organization Committee**
**Executive Compensation Update**

### 2007 Management Incentive Plan

At the February meeting, the Board and Compensation Committee approved the 2007 Operating Plan and Management Incentive Plan. Consistent with past practice, the MIP targets for the corporate office, publishing and broadcasting and entertainment groups, and individual business units are based upon operating cash flow and, in certain cases, equity income.

Publishing's advertising revenues through six periods are coming in well below expectations, partially offset by lower newsprint and staffing levels. Operating cash flow is well below plan. Broadcasting's revenues, expenses and operating cash flow are somewhat below plan. For the first half, equity income from CareerBuilder, Classified Ventures, TV Food Network and Comcast Sports Net is higher than anticipated. We have reset sale goals to incent better sales performance in the 3rd and 4th quarters and are working on additional cost saving initiatives to reduce the OCF shortfall.

Based on first half results, we expect bonuses for the Publishing Group and individual newspapers to average about 50% of target, Broadcasting about 90% and the Corporate Office should earn around 65% of target. According to the merger agreement, bonuses will be calculated on our established formulas and paid consistent with past practices.

### Special Incentive Awards

At a meeting on April 1, the Committee approved special incentive awards to recognize the exceptional performance of certain members of management in structuring and negotiating the ESOP/Zell transaction. This unique transaction structure created over $1B in shareholder value above Tribune's unaffected stock price.

The Committee approved cash awards of $6.5 million to 32 individuals to be paid at the close of the transaction. At management's recommendation, 275,000 restricted stock units ($9.3 million) previously approved by the Committee that had not yet been awarded were cancelled. Subsequent to the April 1 meeting, management decided to increase the number of participants to 40 while reducing the total amount of the cash award to $5.4 million. (Exhibit I)

The Committee also approved a 3% pool of phantom stock in the new company to be awarded to 17 members of senior management who played critical roles in the transaction. Because this award is directly related to the successful completion of the ESOP/Zell transaction, individual awards will be approved by the Committee at the close of the transaction.

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

### Long-Term Equity Incentive

In addition to the above, the Committee approved a 5% phantom stock pool in the new company as a long-term incentive for the management team. Management is recommending that about 3-1/2% of the pool be awarded at, or shortly after, the close of the transaction to around 200 individuals. The number of participants is well below the 775 who received restricted stock in February, but more in line with private equity practices. The remaining phantom stock would be awarded annually over the next several years. This 5% pool is not directly related to the completion of the transaction but was created to motivate operational performance going forward. Therefore, individual awards should be formally approved by the Compensation Committee of the new company.

The Zell organization and GreatBanc, the ESOP trustee, have previously approved the special cash and equity incentive awards and the long-term equity plan.

DCG/jo
07/11/07

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0414673

Exhibit I

## Tribune Company
### Special Incentive Awards
### Approved Terms

**Cash Bonus**
  Date of Payment:    Close of ESOP/Zell transaction
  Payout:    To be made to all awardees including in event of involuntary termination between the signing and the close of the transaction.  Will not be paid to those who voluntarily terminate.

**3% Phantom Stock**
  Date of Grant:    Close of ESOP/Zell transaction
  Vesting:    (1)  50% upon closing of the transaction; remaining 50% vested one year later.
  (2)  100% upon a Change in Control of the Company or termination of employment due to death, disability, retirement or involuntary termination.
  Payment:    1/3 of award will be settled and paid in cash on the fourth, sixth, and eighth anniversary of date of grant.

**Participants**

| | Cash Bonuses | Preliminary 3% Equity Pool |
|---|---|---|
| Dennis FitzSimons | Declined | 0.35% |
| Don Grenesko | $400,000 | 0.25 |
| Redacted | Declined | 0.25 |
| Crane Kenney | 600,000 | 0.25 |
| Redacted | 250,000 | 0.20 |
| | 250,000 | 0.20 |
| Tim Landon | 300,000 | 0.20 |
| Redacted | 400,000 | 0.20 |
| John Reardon | 200,000 | 0.175 |
| Scott Smith | Declined | 0.175 |
| Redacted | 300,000 | 0.15 |
| | 100,000 | 0.15 |
| Chandler Bigelow | 400,000 | 0.10 |
| Redacted | 350,000 | 0.10 |
| Harry Amsden | 150,000 | 0.05 |
| Redacted | 75,000 | 0.05 |
| | 75,000 | 0.05 |
| | 75,000 | 0.05 |
| 25 at $25-175,000 | 1,125,000 | - |
| | $5,400,000 | 2.95% |

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

Exhibit II

**Zell/ESOP Transaction**
**5% Management Equity Incentive Plan**

**General Pool:**   5% phantom stock

**Date of Grant:**   3-1/2% at close of transaction; 1-1/2% over next several years

**Vesting:**   33% per year
100% upon a Change in Control of the Company or termination
due to death, disability or retirement

**5% Pool:**   Up to 200 awardees
Publisher and most department heads at large and mid-size papers
Publisher and key department heads at small papers
GMs at all TV stations plus head of sales at 10 largest stations
Certain Corporate and Group SVPs and VPs
Certain high potential employees throughout Company

**Payout:**   5th anniversary of award; can be deferred additional 5 years

**Valuations:**   Based upon ESOP trustee valuation

DCG/jo
07/11/07

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**                                    TRB0414675