TRIBUNE COMPANY
BOARD OF DIRECTORS MEETING
JULY 18, 2007

The Tribune Company Board of Directors met at 9:00 a.m. on Wednesday, July 18, 2007, at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Dennis J. FitzSimons, Betsy D. Holden, William A. Osborn, Dudley S. Taft, Miles D. White and Samuel Zell. Enrique Hernandez, Jr. and Robert S. Morrison participated via telephone.

Portions of the meeting were attended by Chandler Bigelow, Donald C. Grenesko, Tony Hunter, Crane H. Kenney, Timothy J. Landon, Thomas D. Leach, John E. Reardon, Shaun Sheehan, Scott C. Smith and Kara Walsh.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 9:00 a.m.

## EXECUTIVE SESSION

The directors met in executive session at the beginning of the meeting.

## APPROVAL OF MINUTES

A motion was made, seconded and approved to adopt the minutes of the May 9 and May 21, 2007 Board of Directors meetings and the May 9, 2007 Annual Shareholders meeting.

## PREFERRED STOCK DIVIDEND

A motion was made, seconded and approved to adopt the following resolutions:

> RESOLVED, that there is hereby declared a dividend of $8.9375 per share on the Series D-1 Convertible Preferred Stock of the Company payable on September 13, 2007 to stockholders of record at the start of business on September 13, 2007.

## SECOND QUARTER OPERATING RESULTS/STOCK PERFORMANCE REPORT

Mr. Grenesko reviewed the second quarter operating results of each of the Company's lines of business and commented on factors impacting the results. Mr. Grenesko next reviewed the performance of the Company's stock and market factors affecting the stock. Mr. Grenesko also reviewed operating performance trends for the Company compared to its industry peers. Mr. Grenesko then answered questions from the Board of Directors.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415655

## DEVELOPMENT UPDATE

Mr. Leach discussed a written report submitted to the Board prior to the meeting regarding the status of current development activities. A discussion followed Mr. Leach's presentation.

## SCNI UPDATE

Mr. Smith reviewed the status of the Company's proposed sale of Southern Connecticut Newspapers, Inc. (SCNI). Given the preliminary stage of discussions with several interested parties, management requested authority to sell SCNI on terms and conditions to be approved by the Executive Committee of the Board of Directors. Following discussion, a motion was made, seconded and approved to adopt the following resolution:

> RESOLVED, that the Executive Committee of the Board of the Directors is hereby authorized (with full power of delegation) to approve the sale by the Company (or any affiliate thereof) of Southern Connecticut Newspapers, Inc. on terms and conditions to be approved by the Executive Committee.

## LEVERAGED ESOP TRANSACTION UPDATE

Messrs. Kenney, Bigelow and Sheehan presented an update on the leveraged ESOP transaction. Mr. Kenney reported on

— **REDACTED** —

Mr. Sheehan reported on the status of the FCC approval process.

Mr. Bigelow then provided a financing update including a discussion of alternatives for completing the second step financing in the face of tighter market conditions and the Company's current operating results. Mr. Bigelow also reported on certain interest rate hedging transactions undertaken to reduce the Company's interest rate risk. Mr. Bigelow then presented several alternative financing strategies that could enable the Company to repay Term Loan X more quickly and facilitate a successfully syndicated second step financing, including a proposed asset-backed commercial paper facility. Following discussion, a motion was then made, seconded and approved to adopt the following resolutions:

> WHEREAS, the Company is party to that certain (i) Indenture, dated as of March 1, 1992 between the Company and Citibank, N.A. (successor to Continental Bank, National Association, Bank of Montreal Trust Company and Bank of New York), as trustee, as supplemented and/or amended (the "<u>1992 Indenture</u>") and (ii) Indenture, dated as of January 1, 1997, between the Company and Citibank, N.A. (successor to Bank of Montreal Trust Company and Bank of New York), as trustee, as supplemented and/or amended (the "<u>1997 Indenture</u>");

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415656

WHEREAS, on May 17, 2007, the Company entered into a definitive Credit Agreement (the "Credit Agreement") by and among the Company, as borrower, the lenders party thereto, JPMorgan Chase Bank, N.A., as administrative agent, Merrill Lynch Capital Corporation, as syndication agent, Citicorp North America, Inc., Bank of America, N.A. and Barclay's Bank plc, as co-documentation agents, and J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners;

WHEREAS, it is proposed that the Company or one or more of its Subsidiaries (collectively, "Tribune") enter into one or more receivables financing facilities in an aggregate amount not to exceed the amount permitted for such purposes by the Credit Agreement (each a "Receivables Facility"), each which Receivables Facility is expected to provide Tribune with a flexible and low cost source of liquidity;

WHEREAS, each Receivables Facility is expected to be entered into through a newly-formed, wholly-owned, bankruptcy-remote, special purpose subsidiary (each such subsidiary, a "Receivables SPE"), which Receivables SPE will (i) obtain, by way of transfer, assignment, purchase or other disposition, receivables, unbilled revenue related thereto and other assets related thereto (collectively, "Receivables") from Tribune and (ii) transfer, assign, sell, pledge or otherwise dispose of such Receivables in connection with a financing transaction related thereto;

WHEREAS, in connection with each such Receivables Facility, Tribune may act as an originator and/or a servicer of the Receivables subject to such Receivables Facility; and

WHEREAS, it is deemed to be in the best interests of Tribune to enter into Receivables Facilities to obtain flexible and low cost sources of liquidity.

NOW, THEREFORE, BE IT RESOLVED, that each Receivables Facility be, and hereby is, approved, ratified and adopted in all respects, including the formation of each Receivables SPE, the transfer, assignment, sale or other disposition of the Receivables from Tribune to Receivables SPE, the transfer, assignment, sale, pledge or other disposition from Receivables SPE in connection with a financing transaction related thereto, the origination and servicing of such Receivables by Tribune and any related actions or transactions (collectively, the "Receivables Facility Transactions");

FURTHER RESOLVED, that the proper officers of the Company be, and each of them hereby is, authorized, directed and empowered, in the name of and on behalf of the Company, to (i) execute for, in the name of and on behalf of the Company, any and all instruments, documents and agreements deemed necessary or desirable by the liquidity providers under the Receivables Facilities (the "Liquidity Providers") in order to evidence the Receivables Facility Transactions properly in accordance with any requirements established by such Liquidity Providers, including renewals, extensions and/or

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415657

amendments of any such instruments, documents and agreements (individually and collectively, the "Receivables Facilities Documents"), all in the form required by the Liquidity Providers and approved by the proper officers of the Company executing same, the execution of same by such officers to constitute conclusive evidence of the approval of same, (ii) take from time to time any actions deemed necessary or desirable by the proper officers of the Company to establish the Receivables Facilities and to evidence the Receivables Facility Transactions properly in accordance with the Receivables Facilities Documents and any other requirements established by the Liquidity Providers, and to cause the Company to enter into and perform all of its obligations pursuant to the Receivables Facilities Documents or otherwise in connection with the Receivables Facility Transactions and (iii) execute from time to time renewals, extensions and/or amendments to the Receivables Facilities Documents;

RESOLVED, that the proper officers of the Company be and hereby are authorized, directed and empowered, in the name of and on behalf of the Company, to take any and all such actions and to do any and all such things, including without limitation the execution and delivery of all such further agreements, amendments to the Receivables Facilities Documents, documents, certificates, instruments and undertakings, and to incur such fees and expenses, as in the judgment of any of the proper officers may be deemed necessary, desirable, advisable, expedient, convenient or proper to carry out or fulfill the purposes and intent of the foregoing resolutions, and all acts and prior acts of such officers in any way relating to or arising from, or that are in conformity with the purposes and intent of, these resolutions and the instruments and agreements referred to herein and therein are hereby approved, ratified and confirmed in all respects;

FURTHER RESOLVED, that all actions heretofore taken by any of the directors, officers, employees, representatives or agents of the Company or any of its affiliates in connection with the foregoing resolutions be, and each of the same hereby is, ratified, confirmed and approved in all respects as the act and deed of the Company; and

FURTHER RESOLVED, that for purposes of the 1992 Indenture and the 1997 Indenture, including Section 10.07 thereof, the Board hereby approves the exclusion of each Receivables SPE from the definition of "Restricted Subsidiary" in each of the Indentures.

## SUN-TIMES NEWS GROUP DISTRIBUTION AGREEMENT

Mr. Hunter outlined the terms of a proposed distribution outsourcing arrangement between Sun-Times News Group (STNG) and Chicago Tribune Company (CTC) whereby STNG would outsource to CTC all home delivery and suburban single-copy delivery of the Chicago Sun-Times and most of STNG's suburban publications. A discussion followed Mr. Hunter's presentation.

4

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415658

## METROMIX UPDATE

Ms. Walsh presented an update on the roll-out of Metromix to all of the Company's newspaper markets and the status of negotiations for a proposed joint venture with Gannett that would add Gannett's newspaper markets as affiliates. A discussion followed Ms. Walsh's presentation.

## COMPENSATION & ORGANIZATION COMMITTEE REPORT

Mr. Morrison reported on the business discussed at the Compensation & Organization Committee meeting held earlier in the day.

Mr. Morrison noted that the Committee reviewed an executive compensation update presented by management. The update covered expected 2007 MIP payouts based on year-to-date operating results and a recap of the special incentive and long-term equity incentive awards previously approved by the Committee. A discussion followed Mr. Morrison's report.

## NOMINATING & GOVERNANCE COMMITTEE REPORT

Mr. Hernandez reported on the business discussed at the Nominating & Governance Committee meeting held earlier in the day.

Mr. Hernandez reported that the Committee reviewed a potential Board candidate, but deferred formal action pending further review with outside counsel.

Mr. Hernandez next reported that the Committee reviewed the Board's size, structure and meeting frequency and agreed that no changes were required at this time.

Mr. Hernandez then reported that the Committee recommended that Mr. Zell be appointed to the Nominating & Governance Committee to fill the vacancy in the Committee resulting from Mr. Reyes resignation from the Board. In making this recommendation, the Committee noted that it determined that Mr. Zell is independent under both the NYSE listing standards and the categorical standards for independence included in the Board Governance Guidelines. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> RESOLVED, that, in the business judgment of this Board, Samuel Zell is "independent" under the New York Stock Exchange listing standards and the categorical standards for independence set forth in the Board Governance Guidelines; and

> FURTHER RESOLVED, that Samuel Zell is appointed as a member of the Nominating & Governance Committee of the Board of Directors to hold office until the next Annual Meeting of Shareholders and until his successor is appointed.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415659

Mr. Hernandez also reported that the Committee recommends amending the By-Laws to eliminate the provisions of Article VIII governing the Chandler Trust director representatives (which are no longer operative due to their departure from the Board) and to reduce the general size of the Board from between 12-16 members to between 8-12 members. Following discussion, a motion was then made, seconded and approved to adopt the following resolution:

> RESOLVED, that the amended By-Laws, substantially in the form presented at this meeting, are hereby adopted and approved.

Finally, Mr. Hernandez reported on the annual reviews of the Board Governance Guidelines and Committee charter and noted that the Committee is not recommending any changes to either the Governance Guidelines or the Committee charter at this time.

A discussion followed Mr. Hernandez's report.

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned at 11:50 a.m.

_____
Secretary

6

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415660