# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
# DECEMBER 4, 2007

The Tribune Company Board of Directors met at 9:00 a.m. on Tuesday, December 4, 2007, at Tribune Tower, Chicago, Illinois, pursuant to notice. The meeting was attended by Dennis J. FitzSimons, Enrique Hernandez, Jr., Robert S. Morrison, William A. Osborn and Samuel Zell. Betsy D. Holden and Dudley S. Taft participated via telephone.

Portions of the meeting were attended by Chandler Bigelow, Donald C. Grenesko, Crane H. Kenney, Timothy J. Landon, Thomas D. Leach, John E. Reardon and Scott C. Smith. Larry Barden of Sidley Austin LLP, Chip Mulaney of Skadden, Arps, Slate, Meagher & Flom LLP, Bryan Browning, Bill Hughes and Chad Rucker of Valuation Research Corporation also participated in portions of the meeting. Steve Rosenblum of Wachtell, Lipton, Rosen & Katz and Tom Whayne of Morgan Stanley participated in a portion of the meeting via telephone.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 9:00 a.m.

## EXECUTIVE SESSION

The directors met in executive session at the beginning of the meeting. At the conclusion of executive session, Messrs. Bigelow, Grenesko, Kenney, Landon, Leach, Reardon and Smith joined the meeting.

## APPROVAL OF MINUTES

A motion was made, seconded and approved to adopt the minutes of the October 17, November 5 and November 21, 2007 meetings of the Board of Directors.

## COMPANY PERFORMANCE

Mr. Grenesko reviewed the projected financial performance of each of the Company's lines of business for the fourth quarter and complete fiscal year and commented on factors impacting the results. Mr. Reardon next presented a broadcasting performance update. A discussion followed the presentations.

## TRANSACTION UPDATE

Messrs. Bigelow and Kenney presented an update on the status of the merger closing. Mr. Kenney started with an update on the status of the FCC approval process. Mr. Bigelow next reported on the status of the second step financing and solvency opinion to be delivered by

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

Valuation Research Consultants (VRC). At the conclusion of the discussion, Messrs. Barden, Browning, Hughes, Mulaney, Rosenblum, Rucker and Whayne joined the meeting.

Messrs. Browning, Hughes and Rucker of VRC then made a comprehensive presentation regarding VRC's solvency analysis and the solvency opinion required to close the merger. Messrs. Browning, Hughes and Rucker referred to a written report provided in advance to the Board and described the seven month process used by VRC to reach their preliminary conclusions regarding solvency. The presentation showed the various tests used by VRC in its solvency analysis, comparable transactions, case comparisons and the assumptions VRC relied upon in reaching its solvency determination. VRC also reviewed its qualifications and the process by which its preliminary solvency analysis would be reviewed for modification prior to VRC issuing a final solvency opinion. A lengthy discussion followed the presentation and Messrs. Browning, Hughes and Rucker answered questions from the Board. Messrs. Browning, Hughes, Rosenblum, Rucker and Whayne then left the meeting.

Mr. Kenney next updated the board on the proposed closing timetable. Mr. Bigelow then advised the board on the directors' and officers' liability insurance coverage following the closing. A discussion followed the presentation.

## DEVELOPMENT UPDATE

Mr. Leach discussed a written report submitted to the Board prior to the meeting regarding the status of current development activities. As part of the report, Mr. Leach presented the terms of the proposed sale of the KTLA Studio Lot and three nearby off-site parking lots. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> WHEREAS, the Company has entered into a non-binding letter of intent with Hudson Capital LLC ("Hudson") pursuant to which it is proposed that the Company (or any affiliate thereof) will sell to Hudson (or any affiliate thereof) the KTLA Studio Lot located at 5800 Sunset Boulevard, Hollywood, California and the three nearby off-site parking lots (the "Real Property") and all related assets utilized in connection with the television studio production business (together with the Real Property, the "Property"), for an aggregate cash purchase price of $142 million;
>
> WHEREAS, it is contemplated that the sale of the Real Property will be structured in a manner consistent with a deferred like-kind exchange under Section 1031 of the Internal Revenue Code;
>
> WHEREAS, in connection with the sale of the Property, it is proposed that KTLA Inc. (or any other affiliate of the Company) will enter into a lease agreement (the "Lease Agreement") with Hudson (or any affiliate thereof) pursuant to which KTLA Inc. (or any affiliate thereof) will lease back the portion of the Real Property that is currently used by KTLA Inc. and certain other affiliates of the Company for a term of approximately three

2

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

years and on other terms and conditions to be approved by the Authorized Officers (as defined below);

WHEREAS, the Company is party to that certain (i) Indenture, dated as of March 1, 1992 between the Company and Citibank, N.A. (successor to Continental Bank, National Association, Bank of Montreal Trust Company and Bank of New York), as trustee (the "1992 Indenture"), (ii) Indenture, dated as of January 30, 1995, between the Company (as successor pursuant to the First Supplemental Indenture to The Times Mirror Company, f/k/a New TMC Inc.) and Citibank, N.A. (successor to Bank of New York, Wells Fargo Bank, N.A. and First Interstate Bank of California), as trustee ("the "1995 Indenture"), (iii) Indenture, dated as of March 19, 1996, between the Company (as successor pursuant to the Second Supplemental Indenture to The Times Mirror Company) and Citibank, N.A., as trustee (the "1996 Indenture"), and (iv) Indenture, dated as of January 1, 1997, between the Company and Citibank, N.A. (successor to Bank of Montreal Trust Company and Bank of New York), as trustee (the "1997 Indenture" and, together with the 1992 Indenture, the 1995 Indenture and the 1996 Indenture, the "Indentures");

WHEREAS, the Indentures each contain certain restrictions on the Company's and its subsidiaries' ability to enter into sale and lease-back transactions for terms in excess of three years with respect to "Principal Property" (as defined in the relevant Indenture), in each case, subject to certain exceptions;

WHEREAS, the 1992 Indenture and the 1997 Indenture each define "Principal Property" as "any manufacturing or printing plant, warehouse, office building, power plant or transmission facility owned by the Company or any Subsidiary or any property or right owned by or granted to the Company or any Subsidiary and used or held for use in the newspaper, newsprint, radio or television business conducted by the Company or any Subsidiary, except any manufacturing or printing plant, warehouse, office building, power plant or transmission facility or property or right which in the opinion of the Board of Directors of the Company is not of material importance to the total business conducted by the Company and its Subsidiaries considered as one enterprise"; and

WHEREAS, the 1995 Indenture and the 1996 Indenture (pursuant to an Officers' Certificate dated September 9, 1997) each define "Principal Property" as "any manufacturing plant or facility located within the United States of America (other than its territories or possessions) and owned by the Company or any Subsidiary, except any such plant or facility which, in the opinion of the Board of Directors of the Company, is not of material importance to the business conducted by the Company and its Subsidiaries, taken as a whole."

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415678

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of the Company hereby approves the sale by the Company (or any affiliate thereof) to Hudson (or any affiliate thereof) of the Property for an aggregate cash purchase price of not less than $135 million (the "Sale Transaction");

FURTHER RESOLVED, that the Board of Directors of the Company hereby authorizes the sale of the Real Property pursuant to the Sale Transaction to be structured in a manner consistent with a deferred like-kind exchange under Section 1031 of the Internal Revenue Code;

FURTHER RESOLVED, that, in connection with the sale of the Property, the Board of Directors of the Company hereby authorizes KTLA Inc. (or any other affiliate of the Company) to enter into a lease agreement (the "Lease Agreement") with Hudson (or any affiliate thereof) pursuant to which KTLA Inc. (or any affiliate thereof) will lease back the portion of the Real Property that is currently used by KTLA Inc. and certain other affiliates of the Company (the "Leased Premises") for a term of approximately three years and on other terms and conditions to be approved by the Authorized Officers (as defined below);

FURTHER RESOLVED, that for purposes of each of the Indentures, the Board of Directors of the Company hereby determines that the Leased Premises do not constitute "Principal Property" as defined in each of the Indentures;

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President or any Vice President of Tribune Broadcasting Company, the President or any Vice President of KTLA Inc., or the President or any Vice President of Tribune California Properties, Inc. (the "Authorized Officers"), be and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Sale Transaction, the Lease Agreement and the other transactions contemplated by the these resolutions as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings (including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415679

connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

## FSBO DIVESTITURE

Mr. Landon presented management's request for authority to transfer ForSaleByOwner.com to Classified Ventures for at least $90 million. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

RESOLVED, that the Board of Directors of the Company hereby approves the transfer by the Company (or any affiliate thereof) of Stemweb, Inc. (the parent holding company of ForSaleByOwner.com Corp.) ("FSBO") to Classified Ventures, LLC ("CV") for not less than $90 million through a combination of (i) a capital contribution to CV of at least 27.8% of FSBO common stock and (ii) the sale to CV of the remaining shares of FSBO common stock (collectively, the "Transaction");

FURTHER RESOLVED, that the Chairman, President and Chief Executive Officer, any Senior Vice President or any Vice President of the Company, the President, the Executive Vice President or any Vice President of Tribune Publishing Company, the President, any Senior Vice President or any Vice President of Tribune Interactive, Inc. or the President or Vice President of Eagle New Media Investments, LLC (the "Authorized Officers") be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to negotiate, document and execute agreements and instruments evidencing the Transaction as such Authorized Officer executing the same may approve, such approval to be conclusively evidenced by such officer's execution thereof;

FURTHER RESOLVED, that the Authorized Officers be, and each of them hereby is, authorized (with full power of delegation) in the name and on behalf of the Company (or any affiliate thereof) to make all such arrangements, to do and perform all such acts and things, to execute and deliver all such agreements, certificates, instruments and documents, to make all governmental, regulatory or other filings Including, without limitation, filings pursuant to the Hart-Scott-Rodino Antitrust Improvements Act), to pay all such amounts, and to take all such actions as they may deem advisable or necessary in connection with the matters set forth in these resolutions and in order to fully effectuate the purposes of these resolutions; and

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415680

FURTHER RESOLVED, that all actions previously taken by or on behalf of the Company (or any affiliate thereof) in connection with the matters set forth in these resolutions be, and hereby are, ratified, confirmed and approved in all respects.

Messrs. Bigelow, Landon, Leach, Reardon and Smith departed the meeting.

### AUDIT COMMITTEE REPORT

Mr. Osborn reported on the business discussed at the Audit Committee meeting held earlier in the day.

Mr. Osborn reported that the Committee reviewed the status of management's annual impairment review of goodwill and other intangible assets.

Mr. Osborn then reported that the Committee reviewed the status of the Company's internal controls certification project and the internal audit status report.

Mr. Osborn next reported on a management report on enterprise risk management, including a discussion of the results of the Company's annual Code of Business Conduct compliance process and the status of the Company's business continuity plans.

Finally, Mr. Osborn reported that the Committee performed its annual review and reassessment of the Committee charter and recommended for full Board approval a revision to the charter to add the responsibility for reviewing transactions under the Company's Related Person Transactions Policy, a responsibility delegated to it when the policy was adopted last year. Following discussion, a motion was made, seconded and approved to adopt the following resolution:

RESOLVED, that the revised Operating Charter of the Audit Committee, in the form presented at this meeting, is hereby adopted and approved.

### COMPENSATION & ORGANIZATION COMMITTEE REPORT

Mr. Morrison reported on the business discussed at the Compensation & Organization Committee meeting held earlier in the day.

Mr. Morrison reported that the Committee performed its annual review and reassessment of the Committee charter and is not proposing any changes to the charter at this time.

6

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415681

Mr. Morrison then reported that the Committee reviewed a written report summarizing 2007/2008 compensation recommendations for which management will be seeking approval at the February Committee meeting.

Mr. Morrison also reported that certain directors desired to change their payment elections under the directors' deferred compensation plans and that counsel to the Company has confirmed that such changes are permitted and appropriate. The Committee instructed management to take appropriate action to facilitate modified payment elections under the plans. At the conclusion of Mrs. Morrison's report, Messrs. Barden, Kenney and Grenesko departed.

## EXECUTIVE SESSION

The directors met in a second executive session.

## ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 11:40 a.m.

_____
Secretary

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only
TRB0415682