CONFIDENTIAL

| | |
|---|---|
| **From:** | Hianik, Mark W. <MHianik@tribune.com> |
| **Sent:** | Monday, December 3, 2007 7:31 PM |
| **To:** | Chad Rucker <crucker@valuationresearch.com>; Bigelow, Chandler <CBigelow@tribune.com> |
| **Cc:** | Bryanbrowning@valuationresearch.com |
| **Subject:** | RE: Representation Letters |
| **Attach:** | VRC Tribune Representation Letters (Second Step Solvency Opinion)(12 03 07 draft) (excl refinance)(clean).doc; VRC Tribune Representation Letters (Second Step Solvency Opinion)(12 03 07 draft)(excl refinance).doc; VRC Refinancing Rep Letter (TRB Edits 12 03 07)(clean).doc; VRC Refinancing Rep Letter (TRB Edits 12 03 07).doc |

Chad,

Attached are clean and marked copies of revised drafts of the rep letter drafts you circulated yesterday. Chandler will also have hard copies for you in the morning. Any questions, please call. Thanks.

**Mark W. Hianik**
Vice President/Assistant General Counsel & Assistant Secretary
Tribune Company
435 North Michigan Avenue
6th Floor
Chicago, Illinois 60611
312/222-4303 (phone)
312/222-4206 (fax)
mhianik@tribune.com

---

**From:** Chad Rucker [mailto:crucker@valuationresearch.com]
**Sent:** Sunday, December 02, 2007 5:04 PM
**To:** Bigelow, Chandler; Hianik, Mark W.
**Cc:** Bryanbrowning@valuationresearch.com
**Subject:** Representation Letters

Please find attached a draft of the representation letters.

---

**From:** Bigelow, Chandler [mailto:CBigelow@tribune.com]
**Sent:** Sun 12/2/2007 7:57 AM
**To:** Chad Rucker
**Subject:** Re: Call

Thanks. That should work. Chandler

----- Original Message -----
From: Chad Rucker <crucker@valuationresearch.com>
To: Bigelow, Chandler
Cc: Bryan Browning <BBROWNIN@valuationresearch.com>
Sent: Sun Dec 02 07:52:04 2007
Subject: RE: Call

Can we do ll:45 a.m.

Name of Acct: Ciardo-2

Dial in # : 800-261-3225 (US & Canada)

VRC0179110

CONFIDENTIAL

720-239-5494 (International)

Participant Code: 532267

Leader PIN: 6257

From: Bigelow, Chandler [mailto:CBigelow@tribune.com]
Sent: Sun 12/2/2007 7:51 AM
To: Chad Rucker; Bryan Browning
Subject: Call

Can we have a call at 11am NYC time?

VRC0179111

CONFIDENTIAL

**DRAFT**
**12/03/07**

December [ ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), the following representation is being made with respect to the Identified Contingent Liabilities (defined below) of **Tribune Company**, on a consolidated basis with all of its direct and indirect subsidiaries and equity interests, ("Tribune"). This representation is being made by a responsible officer of Tribune who can attest to the correctness of the following:

Identified Contingent Liabilities are defined as the reasonably estimated contingent liabilities that may result from, without limitation, threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, uninsured risks, purchase obligations, taxes and other contingent liabilities as identified and explained to VRC in terms of their nature, expected timing and estimated dollar amount by a responsible officer of Tribune. Identified Contingent Liabilities may not meet the criteria for accrual under Statement of Financial Accounting Standards No. 5 and, therefore, may not be recorded as liabilities under Generally Accepted Accounting Principles in the United States.

The undersigned, in his capacity as a responsible officer of Tribune, represents to VRC that all of the material Identified Contingent Liabilities of Tribune have been adequately provided for on Tribune's balance sheet as of September 30, 2007 (the most recent balance sheet furnished to VRC), with the exception of the following list, which represents all other material Identified Contingent Liabilities, and that there are no other material Identified Contingent Liabilities of Tribune expected to have a material adverse effect on Tribune. If no other material Identified Contingent Liabilities are present please state "none." Please provide an additional attachment if required.

VRC0179112

CONFIDENTIAL

Valuation Research Corporation
December [  ], 2007
Page 2

| Description of Identified Contingent Liabilities | Expected Timing | Estimated Amount ($) |
| --- | --- | --- |

[See Annex A Attached]

Respectfully Submitted,

Donald C. Grenesko
Senior Vice President/Finance & Administration

CONFIDENTIAL

## Annex A: Identified Contingent Liabilities

1.  The payment of a portion of the earn-out for ForSaleByOwner.com of approximately $0.2 million.

2.  The obligations of the Company and its Subsidiaries, as applicable, under certain lease agreements are guaranteed by the Company or one of its Subsidiaries. (These obligations are not material in number or financial impact to the Company and, to the best of the Company's knowledge, are not expected to have a significant impact on the Company's financial condition on a going forward basis.)

3.  As of November 26, 2007, the Company and its Subsidiaries had outstanding standby letters of credit in an aggregate amount of $64.7 million.

4.  The Company and its Subsidiaries, as applicable, have ongoing indemnification obligations in recent sale transactions, including, but not limited to, the sale of WATL-TV (Atlanta), the sale of WCWN-TV (Albany), the sale of WLVI-TV (Boston), the sale of an equity interest in BrassRing, LLC, the sale of *Hoy*, New York, the sale of the Interactive Program Guide patent portfolio, the sale of the San Fernando Valley printing facility, the sale of NewsCom LLC, the sale of EZ Buy and EZ Sell Recycler Corporation and subsidiaries and the sale of Southern Connecticut Newspapers, Inc. (These obligations are generally capped at negotiated maximums expressed as a percentage of the respective sales prices (typically less than 25% of the sales price absent fraud) and, to the best of the Company's knowledge, are not expected to result in any payouts by the Company.)

5.  In connection with the March 2005 acquisition of Topix LLC, beginning in March 2010, the Company may become obligated for its pro rata share (currently 42.5%) of the purchase price for the 20.69% minority interest owned by Topix management upon the exercise of the management put right (becoming exercisable anytime after March 2010 and until March 2015) or the TKG Internet Holdings II, LLC call right (becoming exercisable anytime after March 2011 and until March 2016). The purchase price for the 20.69% minority interest will be the fair market value of the interest at the time of the exercise of the put or call option, respectively. Based on the valuation from the last financing round in October 2006, this liability would be approximately $6.3 million.

6.  In connection with a 4% investment by Microsoft Corporation in CareerBuilder, LLC, Microsoft has the ability to put its interest in CareerBuilder back to CareerBuilder at the end of seven years (earliest possible date would be January 1, 2014). As part of the investment transaction, the Company has agreed to fund up to 50% of the purchase price for Microsoft's investment in CareerBuilder in the event CareerBuilder does not have sufficient funds to consummate the purchase of the interest pursuant to the put option. (Maximum potential liability for this guaranty is $55.3 million).

CONFIDENTIAL

7.     In connection with the inquiry of the United States Attorney for the Eastern District of New York (the "U.S. Attorney") into the circulation practices at *Newsday* and *Hoy*, New York (as disclosed in the Company's most recent Annual Report on Form 10-K) (the "Newsday/Hoy Matter"), the U.S. Attorney recently proposed a settlement in the Newsday/Hoy Matter by means of a deferred prosecution agreement with the Company and payment by the Company of a fine in the amount of $15 million. The Company reserves the right to continue to negotiate with the U.S. Attorney regarding the terms of a possible settlement in the Newsday/Hoy Matter and ultimately enter into a settlement agreement or other arrangement on no less favorable terms than those proposed by the U.S. Attorney.

8.     In connection with the pending lawsuit filed against Newsday, Inc. and Tribune Company by several Long Island auto dealerships alleging discriminatory pricing and antitrust violations and circulation-based fraud claims stemming from the circulation fraud at *Newsday* and *Hoy*, plaintiffs' counsel has proposed a $10 million payment to resolve the suit. The Company reserves the right to continue to negotiate with plaintiffs' counsel regarding the terms of a possible settlement and ultimately enter into a settlement agreement or other arrangement on no less favorable terms than those proposed.

9.     The Company's senior credit facilities are guaranteed by certain of the Company's direct and indirect U.S. subsidiaries and secured by a pledge of the capital stock of two Company subsidiaries. Certain outstanding senior notes and debentures of the Company are secured on an equal and ratable basis with the senior credit facilities. The Company's senior credit facilities are already reflected as a liability of the Company. For more information, please see pages 28 and 29 of the April 2007 bank book which was prepared in connection with the syndication of the senior credit facilities.

CONFIDENTIAL

December [    ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), the following representation is being made with respect to the assets and liabilities of **Tribune Company**, on a consolidated basis with all of its direct and indirect subsidiaries and equity interests (collectively "Tribune"). This representation is being made by a responsible officer of Tribune who can attest to the correctness of the following:

The undersigned, in his capacity as a responsible officer of Tribune, represents to VRC that there have not been any material adverse changes in the assets or liabilities of Tribune between September 30, 2007 (the most recent balance sheet furnished to VRC) and the date hereof, that may materially affect, without limitation, Tribune's business operations or condition (financial or otherwise), except as listed below. If no material adverse changes have occurred, please state "none." Please provide an additional attachment if required.

Description of Material Adverse Changes

None

_____

Respectfully Submitted,

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179116

CONFIDENTIAL

December [  ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> The provided financial forecasts of Tribune, on a consolidated and pro-forma basis, (as represented in the Excel file entitled "model_negotiated_proposal_november21_2007.xls" delivered to VRC via email on November 21, 2007) reflect Management's best estimates of Tribune Base and Tribune Downside case forecasts, and, while such forecasts are subject to many factors outside Management's control, in Management's view they are reasonable and obtainable based on Management's involvement and understanding of the business operations, its markets, the strategic vision, the competitive landscape, and regulatory and economic trends.

Respectfully Submitted,


Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179117

CONFIDENTIAL

December [   ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> The estimated annual federal income tax savings through projected year 2022 (set forth in Schedule A attached) that are forecasted as a result of the Company taxable status as a corporation taxed under Subchapter S of the Internal Revenue Code of 1986, as amended, and owned entirely by an Employee Stock Ownership Plan (an "S-Corp ESOP") is reasonable and represents Management's best estimate of annual federal income tax savings based upon management's current understanding of existing federal income tax laws related to S-Corp ESOPs. While such forecasted federal tax savings are subject to many factors outside Management's control, in Management's view they are reasonable and obtainable based on Management's understanding of the existing federal income tax laws and the Company's current business operations, strategic vision and competitive and regulatory landscape.

> Management understands that the net present value of the estimated federal income tax savings set forth in Schedule A are based upon the Excel file entitled "model_negotiated_proposal_november21_2007.xls" delivered to VRC via email on November 21, 2007. This file includes projections through 2017 which are based on Management's five-year financial outlook through 2012 and the subsequent extrapolation of these projections through 2017. Management understands that VRC performed further extrapolation of these projections through 2022 in determining the projected tax savings that will be used in calculating the pro forma equity value of Tribune immediately after and giving effect to the merger transaction in VRC's solvency opinion.

Respectfully Submitted,

VRC0179118

CONFIDENTIAL

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179119

CONFIDENTIAL

December [ ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> Based upon Tribune's current understanding of the Delaware General Corporation Law, the Board of Directors fiduciary and corporate governance duties and responsibilities, and current federal income tax laws, Management believes that it is reasonable and appropriate for VRC to assume that Tribune will retain all of the forecasted tax savings (set forth in Schedule A attached) even if the warrant under which the Zell Group may acquire approximately 40 percent of the economic interest of Tribune (the "Zell Group Warrant") is exercised before its expiration date in the year 2022.

> On the same basis, Management further believes that it is reasonable and appropriate for VRC to assume that if the Zell Group Warrant were exercised before the expiration date that Tribune would not pay any portion of the Zell Group's annual income taxes that result from its ownership of Tribune common stock.

Respectfully Submitted,


Donald C. Grenesko
Senior Vice President/Finance & Administration

CONFIDENTIAL

DRAFT
12/03/07 _ _ _ _ { Deleted: 01 }

December [ ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), the following representation is being made with respect to the Identified Contingent Liabilities (defined below) of **Tribune Company**, on a consolidated basis with all of its direct and indirect subsidiaries and equity interests, ("Tribune"). This representation is being made by a responsible officer of Tribune who can attest to the correctness of the following:

Identified Contingent Liabilities are defined as the reasonably estimated contingent liabilities that may result from, without limitation, threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, uninsured risks, purchase obligations, taxes and other contingent liabilities as identified and explained to VRC in terms of their nature, expected timing and estimated dollar amount by a responsible officer of Tribune. Identified Contingent Liabilities may not meet the criteria for accrual under Statement of Financial Accounting Standards No. 5 and, therefore, may not be recorded as liabilities under Generally Accepted Accounting Principles in the United States.

The undersigned, in his capacity as a responsible officer of Tribune, represents to VRC that all of the material Identified Contingent Liabilities of Tribune have been adequately provided for on Tribune's balance sheet as of September 30, 2007 (the most recent balance sheet furnished to VRC), with the exception of the following list, which represents all other material Identified Contingent Liabilities, and that there are no other material Identified Contingent Liabilities of Tribune expected to have a material adverse effect on Tribune. If no other material Identified Contingent Liabilities are present please state "none." Please provide an additional attachment if required.

VRC0179121

CONFIDENTIAL

Valuation Research Corporation
December [  ], 2007
Page 2

| Description of Identified Contingent Liabilities | Expected Timing | Estimated Amount ($) |
| --- | --- | --- |
| [See Annex A Attached] | | |

Respectfully Submitted,


Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179122

CONFIDENTIAL

### Annex A: Identified Contingent Liabilities

1.  The payment of a portion of the earn-out for ForSaleByOwner.com of approximately $0.2 million.

2.  The obligations of the Company and its Subsidiaries, as applicable, under certain lease agreements are guaranteed by the Company or one of its Subsidiaries. (These obligations are not material in number or financial impact to the Company and, to the best of the Company's knowledge, are not expected to have a significant impact on the Company's financial condition on a going forward basis.)

3.  As of November 26, 2007, the Company and its Subsidiaries had outstanding standby letters of credit in an aggregate amount of $64.7 million.

4.  The Company and its Subsidiaries, as applicable, have ongoing indemnification obligations in recent sale transactions, including, but not limited to, the sale of WATL-TV (Atlanta), the sale of WCWN-TV (Albany), the sale of WLVI-TV (Boston), the sale of an equity interest in BrassRing, LLC, the sale of *Hoy*, New York, the sale of the Interactive Program Guide patent portfolio, the sale of the San Fernando Valley printing facility, the sale of NewsCom LLC, the sale of EZ Buy and EZ Sell Recycler Corporation and subsidiaries and the sale of Southern Connecticut Newspapers, Inc. (These obligations are generally capped at negotiated maximums expressed as a percentage of the respective sales prices (typically less than 25% of the sales price absent fraud) and, to the best of the Company's knowledge, are not expected to result in any payouts by the Company.)

5.  In connection with the March 2005 acquisition of Topix LLC, beginning in March 2010, the Company may become obligated for its pro rata share (currently 42.5%) of the purchase price for the 20.69% minority interest owned by Topix management upon the exercise of the management put right (becoming exercisable anytime after March 2010 and until March 2015) or the TKG Internet Holdings II, LLC call right (becoming exercisable anytime after March 2011 and until March 2016). The purchase price for the 20.69% minority interest will be the fair market value of the interest at the time of the exercise of the put or call option, respectively. Based on the valuation from the last financing round in October 2006, this liability would be approximately $6.3 million.

6.  In connection with a 4% investment by Microsoft Corporation in CareerBuilder, LLC, Microsoft has the ability to put its interest in CareerBuilder back to CareerBuilder at the end of seven years (earliest possible date would be January 1, 2014). As part of the investment transaction, the Company has agreed to fund up to 50% of the purchase price for Microsoft's investment in CareerBuilder in the event CareerBuilder does not have sufficient funds to consummate the purchase of the interest pursuant to the put option. (Maximum potential liability for this guaranty is $55.3 million).

VRC0179123

CONFIDENTIAL

7.    In connection with the inquiry of the United States Attorney for the Eastern
      District of New York (the "U.S. Attorney") into the circulation practices at
      *Newsday* and *Hoy*, New York (as disclosed in the Company's most recent Annual
      Report on Form 10-K) (the "Newsday/Hoy Matter"), the U.S. Attorney recently
      proposed a settlement in the Newsday/Hoy Matter by means of a deferred
      prosecution agreement with the Company and payment by the Company of a fine
      in the amount of $15 million. The Company reserves the right to continue to
      negotiate with the U.S. Attorney regarding the terms of a possible settlement in
      the Newsday/Hoy Matter and ultimately enter into a settlement agreement or
      other arrangement on no less favorable terms than those proposed by the U.S.
      Attorney.

8.    In connection with the pending lawsuit filed against Newsday, Inc. and Tribune
      Company by several Long Island auto dealerships alleging discriminatory pricing
      and antitrust violations and circulation-based fraud claims stemming from the
      circulation fraud at *Newsday* and *Hoy*, plaintiffs' counsel has proposed a $10
      million payment to resolve the suit. The Company reserves the right to continue
      to negotiate with plaintiffs' counsel regarding the terms of a possible settlement
      and ultimately enter into a settlement agreement or other arrangement on no less
      favorable terms than those proposed.

9.    The Company's senior credit facilities are guaranteed by certain of the Company's
      direct and indirect U.S. subsidiaries and secured by a pledge of the capital stock
      of two Company subsidiaries. Certain outstanding senior notes and debentures of
      the Company are secured on an equal and ratable basis with the senior credit
      facilities. The Company's senior credit facilities are already reflected as a
      liability of the Company. For more information, please see pages 28 and 29 of
      the April 2007 bank book which was prepared in connection with the syndication
      of the senior credit facilities.

VRC0179124

CONFIDENTIAL

December [   ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), the following representation is being made with respect to the assets and liabilities of **Tribune Company**, on a consolidated basis with all of its direct and indirect subsidiaries and equity interests (collectively "Tribune"). This representation is being made by a responsible officer of Tribune who can attest to the correctness of the following:

The undersigned, in his capacity as a responsible officer of Tribune, represents to VRC that there have not been any material adverse changes in the assets or liabilities of Tribune between September 30, 2007 (the most recent balance sheet furnished to VRC) and the date hereof, that may materially affect, without limitation, Tribune's business operations or condition (financial or otherwise), except as listed below. If no material adverse changes have occurred, please state "none." Please provide an additional attachment if required.

<u>Description of Material Adverse Changes</u>

None


Respectfully Submitted,



Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179125

CONFIDENTIAL

December [   ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> The provided financial forecasts of Tribune, on a consolidated and pro-forma basis, (as represented in the Excel file entitled "model_negotiated_proposal_november21_2007.xls" delivered to VRC via email on November 21, 2007) reflect Management's best estimates of Tribune Base and Tribune Downside case forecasts, and, while such forecasts are subject to many factors outside Management's control, in Management's view they are reasonable and obtainable based on Management's involvement and understanding of the business operations, its markets, the strategic vision, the competitive landscape, and regulatory and economic trends.

**Deleted:** (i) financial forecast model entitled "Tribune Company Five-Year Financial Outlook – November 21, 2007 and (ii) fourth quarter operating projections

Respectfully Submitted,

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179126

CONFIDENTIAL

December [   ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY  10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

The estimated annual federal income tax savings through projected year 2022 (set forth in Schedule A attached) that are forecasted as a result of the Company taxable status as a corporation taxed under Subchapter S of the Internal Revenue Code of 1986, as amended, and owned entirely by an Employee Stock Ownership Plan (an "S-Corp ESOP") is reasonable and represents Management's best estimate of annual federal income tax savings based upon management's current understanding of existing federal income tax laws related to S-Corp ESOPs.  While such forecasted federal tax savings are subject to many factors outside Management's control, in Management's view they are reasonable and obtainable based on Management's understanding of the existing federal income tax laws and the Company's current business operations, strategic vision and competitive and regulatory landscape.

Management understands that the net present value of the estimated federal income tax savings set forth in Schedule A are based upon the Excel file entitled "model negotiated proposal november21 2007.xls" delivered to VRC via email on November 21, 2007.  This file includes projections through 2017 which are based on Management's five-year financial outlook through 2012 and the subsequent extrapolation of these projections through 2017. Management understands that VRC performed further extrapolation of these projections through 2022 in determining the projected tax savings that will be used in calculating the pro forma equity value of Tribune immediately after and giving effect to the merger transaction in VRC's solvency opinion.

Respectfully Submitted,

| Deleted: provided |
| Deleted: the |
| Deleted: , |
| Deleted: , |
| Deleted: , and regulatory and economic trends |
| Deleted: these |
| Deleted: Tribune Base Case Forecast as of |
| Deleted: and |
| Deleted: Further, Management understands that if actual annual federal income tax savings are less than forecast because Tribune's actual financial performance is less than forecast, that VRC's opinion with respect to the solvency of the Company may differ. |

VRC0179127

CONFIDENTIAL

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179128

CONFIDENTIAL

December [  ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> Based upon Tribune's current understanding of the Delaware General Corporation Law, the Board of Directors fiduciary and corporate governance duties and responsibilities, and current federal income tax laws, Management believes that it is reasonable and appropriate for VRC to assume that Tribune will retain all of the forecasted tax savings (set forth in Schedule A attached) even if the warrant under which the Zell Group may acquire approximately 40 percent of the economic interest of Tribune (the "Zell Group Warrant") is exercised before its expiration date in the year 2022.
>
> On the same basis, Management further believes that it is reasonable and appropriate for VRC to assume that if the Zell Group Warrant were exercised before the expiration date that Tribune would not pay any portion of the Zell Group's annual income taxes that result from its ownership of Tribune common stock.

| | Deleted comment |
|---|---|
| | **Deleted:** Corporate |
| | **Deleted:** s |
| | **Deleted:** requirements |
| | **Deleted:** attached |
| | **Deleted:** warrants |
| | **Deleted:** that |
| | **Deleted:** has to |
| | **Deleted:** the their |
| | **Deleted:** Management believes that it reasonable and appropriate for VRC to assume that the Zell Group Warrants will not be purchased by Tribune or exercised by before the year 2022. |
| | **Deleted:** Further, |
| | **Deleted:** warrants to acquire approximately 40 percent of the economic interest of Tribune |
| | **Deleted:** the |
| | **Deleted:** Management understands that if Tribune's actual annual federal income tax savings are less than forecast (attached in Schedule A) that VRC's opinion with respect to the solvency of the Company may differ. |

Respectfully Submitted,

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179129

CONFIDENTIAL

**DRAFT**
**12/03/07**

December [    ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to **Tribune Company** ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

> Based upon (i) management's best understanding of the debt and loan capital markets and (ii) management's recent discussions with Morgan Stanley, management believes that it is reasonable and appropriate for VRC to assume that Tribune, in the downside forecast described in the Excel file entitled "model_negotiated_proposal_november21_2007.xls" delivered to VRC via email on November 21, 2007 ("Tribune Downside Forecast"), would be able to refinance (i) any outstanding balances of Term Loan B under the Credit Agreement dated May 17, 2007, as amended (the "Credit Agreement"), that mature in 2014 and (ii) any outstanding balances under the Senior Unsecured Interim Loan Agreement to be dated as of the closing date (or any notes issued to refinance such facility) that mature in 2015, in each case, without the need for any asset sales other than those incorporated into the Tribune Downside Forecast.

> The Tribune Downside Forecast assumes that in 2014 (i) the Total Guaranteed Leverage Ratio (as defined in the Credit Agreement) will be approximately 7.0:1.0, (ii) the Interest Coverage Ratio (as defined in the Credit Agreement) will be approximately 1.3:1.0 and (iii) the ratio of total consolidated indebtedness (excluding the Zell Notes) to last twelve months EBITDA will be approximately 8.1:1.0.

> The Tribune Downside Forecast assumes that in 2015 (i) the Total Guaranteed Leverage Ratio (as defined in the Credit Agreement) will be approximately 7.0:1.0, (ii) the Interest Coverage Ratio (as defined in the Credit Agreement) will be approximately 1.3:1.0 and (iii) the ratio of total consolidated indebtedness (excluding the Zell Notes) to last twelve months EBITDA will be approximately 7.9:1.0.

Respectfully Submitted,

Donald C. Grenesko
Senior Vice President/Finance & Administration

VRC0179130

CONFIDENTIAL

DRAFT
12/03/07

December [   ], 2007

Valuation Research Corporation
500 Fifth Avenue
39th Floor
New York, NY 10110

Ladies and Gentlemen:

Pursuant to, and solely for the purpose of, the performance of certain procedures in connection with the solvency opinion of Valuation Research Corporation ("VRC"), we provide the following representation with respect to Tribune Company ("Tribune"). This representation is being made by a duly authorized officer of Tribune who can attest to the correctness of the following:

Based upon (i) management's best understanding of the debt and loan capital markets and (ii) management's recent discussions with Morgan Stanley, management believes that it is reasonable and appropriate for VRC to assume that Tribune, in the downside forecast described in the Excel file entitled "model_negotiated_proposal_november21_2007.xls" delivered to VRC via email on November 21, 2007 ("Tribune Downside Forecast"), would be able to refinance (i) any outstanding balances of Term Loan B under the Credit Agreement dated May 17, 2007, as amended (the "Credit Agreement"), that mature in 2014 and (ii) any outstanding balances under the Senior Unsecured Interim Loan Agreement to be dated as of the closing date (or any notes issued to refinance such facility) that mature in 2015, in each case, without the need for any asset sales other than those incorporated into the Tribune Downside Forecast.

The Tribune Downside Forecast assumes that in 2014 (i) the Total Guaranteed Leverage Ratio (as defined in the Credit Agreement) will be approximately 7.0:1.0, (ii) the Interest Coverage Ratio (as defined in the Credit Agreement) will be approximately 1.3:1.0, and (iii) the ratio of total consolidated indebtedness (excluding the Zell Notes) to last twelve months EBITDA will be approximately 8.1:1.0.

The Tribune Downside Forecast assumes that in 2015 (i) the Total Guaranteed Leverage Ratio (as defined in the Credit Agreement) will be approximately 7.0:1.0, (ii) the Interest Coverage Ratio (as defined in the Credit Agreement) will be approximately 1.3:1.0, and (iii) the ratio of total consolidated indebtedness (excluding the Zell Notes) to last twelve months EBITDA will be approximately 7.9:1.0.

Respectfully Submitted,

Donald C. Grenesko

Formatted: Justified

Deleted: ¶
¶

Formatted: Underline

Formatted: Underline

Deleted: scenario

Deleted: Tribune Downside Forecast dated

Deleted: that

Formatted: Underline

Deleted: that matures in 2014 and

Deleted: Bridge Note

Deleted: matures

Deleted: ;

Deleted: Management believes that it is reasonable and appropriate for VRC to assume that in the

Deleted: dated November 21, 2007 that Tribune will be able to refinance any

Deleted: Debt

Deleted: indenture) that matures in 2014 if

Deleted: Guaranteed Debt to Covenant EBITDA

Deleted: indenture) is approximately 7.0 times, the Covenant EBITDA to Cash Interest Expenses (as defined in the indenture) is

Deleted: times,

Deleted: the

Deleted: debt

Deleted: is

Deleted: times without the need for any asset sales.

Deleted: Management believes that it is reasonable and appropriate for VRC to assume

Deleted: the Tribune Downside Forecast dated November 21, 2007 that Tribune will be able to refinance a ... [1]

Deleted: indenture) that matures ... [2]

Deleted: Guaranteed Debt to Co ... [3]

Deleted: Expenses

Deleted: indenture) is

Deleted: times,

Deleted: the

Deleted: debt

Deleted: is

Deleted: times without the next ... [4]

Deleted: ¶ ... [5]

Deleted: ¶

CONFIDENTIAL

| Senior Vice President/Finance & Administration

**Deleted:** ¶
¶
¶
¶

VRC0179132

CONFIDENTIAL

Page 1: [1] Deleted                    deldersveld                    12/3/2007 10:11:00 AM

the Tribune Downside Forecast dated November 21, 2007 that Tribune will be able to refinance any Guaranteed Debt

Page 1: [2] Deleted                    deldersveld                    12/3/2007 10:11:00 AM

indenture) that matures in 2015 if

Page 1: [3] Deleted                    deldersveld                    12/3/2007 10:11:00 AM

Guaranteed Debt to Covenant EBITDA (as defined in the indenture) is less approximately 7.0 times and the Covenant EBITDA to Cash

Page 1: [4] Deleted                    deldersveld                    12/3/2007 10:11:00 AM

times without the need for any asset sales.

Page 1: [5] Deleted                    deldersveld                    12/3/2007 10:11:00 AM

VRC0179133