*ATTORNEY-CLIENT COMMUNICATION*

**MINUTES OF A MEETING
OF THE ADVISORY COMMITTEE OF THE
BOARD OF DIRECTORS OF THE
ROBERT R. McCORMICK TRIBUNE FOUNDATION**

**August 17, 2007**

A meeting of the advisory committee (the "**Committee**") of the Board of Directors (the "**Board**") of the Robert R. McCormick Tribune Foundation (the "**Foundation**") was held at 10:00 a.m. Central Time on Friday, August 17, 2007 in Chicago, Illinois at the Foundation's offices. An agenda is attached.

Present at the meeting were James C. Dowdle and John W. Madigan, both of whom are independent directors ("**Independent Directors**") appointed by the Board to serve as the Committee. Also present was Dennis FitzSimons, a Board member of the Foundation. Also present were Jill Greenthal of The Blackstone Group ("**Blackstone**") and, on the telephone, Sean Madnani and Miriam Tawil of Blackstone, Herbert S. Wander of Katten Muchin Rosenman LLP ("**Katten**"), Thomas E. Chomicz of Quarles & Brady LLP ("**Quarles & Brady**") and, on the telephone, Brien O'Brien of Advisory Research, Inc. ("**Advisory Research**"). Mr. Chomicz acted as secretary of the meeting.

The minutes of the meeting of May 17, 2007 of the Committee were approved.

Prior to the meeting, the Committee had been furnished with a number of written reports.

Ms. Greenthal of Blackstone led a discussion with respect to the conditions precedent to consummation of the merger of Tribune Company (the "Company") into a separate corporation wholly owned by an Employee ~~Share~~Stock Ownership Plan. Any material adverse change is tied to industry standards and, so long as the Company is within the range of industry performance, there should not be a material adverse change. Assuming a closing in the fourth quarter, the financing covenants shall be satisfied based on the financial results of the Company in the preceding four quarters. The solvency opinion is not an insignificant hurdle. It is a key gate-keeping item and will be provided by Valuation Research. Another condition to closing is the need for a waiver from the Federal Communications Commission (the "**Commission**"). There is the expectation of the Company that a waiver will be issued at the October meeting of the Commission. There was a discussion of pending lawsuits involving the sale of the Chicago Cubs and the impact on the financial covenants of the existing bonds of the Company. Mr. FitzSimons advised that counsel to the Company believes that the sale of the Cubs should not be an issue. Sale of the Chicago Cubs may be contracted for this year, but closed after the end of the calendar year to take advantage of certain tax efficiencies.

Ms. Greenthal then proceeded to make a presentation to the Committee with respect to various aspects of the merger and the financial condition of the Company, as contained in the Blackstone written report (a copy of which is attached to the Secretary's copy of these minutes) discussed below.

Ms. Greenthal reviewed the revenue growth of the Publishing and Broadcasting operations. There has been a continuing decline in newspaper revenues, whereas television revenues have been somewhat steady.

The Committee was advised that the Federal Reserve Board had reduced the discount rates and that this action should have a positive impact on the interest rate for the financing to be incurred by the Company in connection with the merger.

Ms. Greenthal then went on to review the terms of the merger. There was discussion with respect to the continuing interest of Mr. Zell and the termination fee of $25 million. The Committee was advised that Mr. Zell still has a $50 million equity investment and a $200 million subordinated note, which will remain in place if he decided not to move forward with the merger. Conversations between Mr. Zell and representatives of the Company have indicated that he still is moving forward towards a closing.

There was a review of the valuations of the shares of the Company and the current price and the merger price of $34.00 per share. There was a review of public market valuations of comparable companies, many of which are 100% newspapers, whereas the Company is diversified with broadcasting and other non-newspaper operations and investments.

There was discussion of deterioration in the credit markets which has impacted available financing for leveraged buyout transactions, as requests for $300 billion to $400 billion of financing have been unfulfilled. As a result, many prices for acquisitions will go down.

There was a review of the summary financial comparisons under a base case, management forecasts, sensitivity case and Wall Street average, and analysis of cash flow available for the Company over the next five (5) years.

Ms. Greenthal rendered the opinion of Blackstone that the merger price of $34.00

per share was a fair to the Foundation from a financial viewpoint and recommended that the Committee recommend to the Board of Directors that it vote all shares of Company stock owned by the Foundation in favor of the merger.

Mr. Wander of Katten then proceeded to review a memorandum provided to the Committee describing certain benefits that will be granted to certain Company officers (including Messrs. FitzSimons, Heller and Smith) in the form of a cash bonus pool, management equity incentive plan, indemnification and insurance, stock options, restricted stock and transitional compensation plans. Mr. Wander advised the Committee that the benefits that Messrs. FitzSimons, Hiller and Smith expect to receive upon consummation of the merger have a valid business purpose for the Company, are commercially reasonable and are standard in transactions of this type. Each of the benefits was negotiated at arm's length between the Company and Mr. Zell, and they serve a business purpose for the Company, both before and after the consummation of the merger, and were either approved or recommended by the Special Committee of the Company's Board of Directors (which is made up of independent directors of the Company). Messrs. FitzSimons, Hiller and Smith do not serve on the Special Committee. Moreover, the stock options, restricted stock and transitional compensation plan were in place prior to the strategic review by the Company and were also approved and recommended by the Independent Committee of the Company Board, which did not include any members of the Foundation's Board. Based on the experience of Katten, it is typical that the management of a company being acquired will negotiate employment and equity arrangements similar to the arrangements described in the memorandum.

Thomas E. Chomicz of Quarles & Brady made a detailed review of the draft of the legal opinion provided to the Committee which provided: (1) that the proposed decision of the Foundation Board to vote the Foundation's Company stock to approve the merger will be in compliance with applicable standards for prudent investment decisions by the Directors of the Foundation under Illinois state law, (2) that the approval of the merger will not jeopardize the Foundation's tax exempt status under Internal Revenue Code Section 501(a), as an organization described in Internal Revenue Code Section 501(c)(3), or cause the Foundation or its Foundation managers to incur any excise tax under Internal Revenue Code Section 4958.

After further discussions and questions, and upon motion made and seconded, the Committee approved a recommendation to the Board that the Board authorize a vote of all shares of common stock of the Company owned by the Foundation in favor of the merger.

There being no further business to come before the Committee, the meeting was adjourned at 10:30 a.m.

Thomas E. Chomicz, Acting Secretary

Approved:

James C. Dowdle, Advisory Committee Member

John W. Madigan, Advisory Committee Member