*ATTORNEY-CLIENT COMMUNICATION*

## MINUTES OF A MEETING
## OF THE BOARD OF DIRECTORS OF THE
## ROBERT R. McCORMICK TRIBUNE FOUNDATION

**August 17, 2007**

A meeting of the Board of Directors (the "Board") of the Robert R. McCormick Tribune Foundation (the "**Foundation**") was held at 10:30 a.m. Central Time on Friday, August 17, 2007 in Chicago, Illinois at the Foundation's offices. An agenda is attached.

Present at the meeting were James C. Dowdle, Dennis FitzSimons, David Hiller (participating by telephone), John W. Madigan and Scott Smith, constituting the entire Board. Also present by invitation were Jill Greenthal of The Blackstone Group ("**Blackstone**") and, on the telephone, Sean Madnani and Miriam Tawil of Blackstone, Herbert S. Wander of Katten Muchin Rosenman LLP ("**Katten**"), and Thomas E. Chomicz of Quarles & Brady LLP ("**Quarles & Brady**"). Also in attendance via telephone was Brien O'Brien of Advisory Research, Inc. ("**Advisory Research**"). Mr. FitzSimons chaired the meeting and Mr. Chomicz acted as secretary of the meeting.

The minutes of the Special Meeting of the Board of Directors of May 17, 2007 were approved.

Prior to the meeting, the Board had been furnished with a written report of Blackstone concerning the proposed merger of Tribune Company (the "**Company**"), a memorandum from Katten describing the benefits which may be received by certain officers of the Company as a result of the merger transaction, including members of the Board who are officers of the Company ("Katten Legal Memorandum") and a draft of the proposed legal opinion from Quarles & Brady ("Quarles & Brady Legal Opinion").

Report of Blackstone

Ms. Greenthal of Blackstone led a discussion with respect to the conditions preceding consummation of the merger. One of the conditions to closing is that there shall not have been any material adverse change. The definition of a material adverse change is tied to industry standards and, so long as the Company is within the range of industry performance, there should not be a material adverse change. Assuming closing in the fourth quarter, the financing covenants shall be satisfied, based on the financial results of the Company in the preceding four quarters. The solvency opinion is not an insignificant hurdle. It is a key gate-keeping item and will be provided by Valuation Research. Another condition to closing is the need for a waiver from the Federal Communications Commission (the "**Commission**"). There is the expectation of the Company that a waiver will be issued in the October meeting of the Commission.

Ms. Greenthal reviewed the Company's stock price performance since January 2006 relative to trading history, 2007 financial drivers, the Company's year-to-date revenue

FOUN0009910

performance, summary of base case financials and sensitivity case financials and a summary of financial comparisons.

During and after Ms. Greenthal's presentation, the directors and the advisors engaged in a thorough discussion of the issues.

The Fairness Presentation

Ms. Greenthal then reviewed orally and in a written presentation the valuation of the Company from the viewpoint of cash flow, sum of the parts, publicly traded comparable companies and private market valuations.

Ms. Greenthal then made a presentation which focused on Blackstone's written opinion as to the fairness of the per share merger price from a financial point of view. Blackstone's opinion concluded that the $34.00 per share offered to holders of Company common stock, as consideration for the merger, is fair to the Foundation from a financial viewpoint.

Katten Legal Memorandum

Herbert S. Wander of Katten discussed the Katten Legal Memorandum which concluded that each of the benefits that Messrs. FitzSimons, Hiller and Smith are expected to receive as officers of the Company upon consummation of the merger has a valid business purpose, are commercially reasonable and are standard in transactions of this type.

Quarles & Brady Legal Opinion

Thomas E. Chomicz of Quarles & Brady advised the Board that based on the facts and a review of certain documents, it was the opinion of Quarles & Brady that (1) the proposed decision by the Board to vote all of the shares of Company stock owned by the Foundation in favor of the merger will be in compliance with applicable standards for prudent investment decisions by the Board under Illinois state law, and (2) approval of the merger will not jeopardize the Foundation's tax-exempt status under Internal Revenue Code Section 501(a), as an organization described in Internal Revenue Code Section 501(c)(3) or cause the Foundation or its Foundation managers to incur any excise tax under Internal Revenue Code Section 4958.

Report of the Advisory Committee to the Board.

The Advisory Committee submitted its written report to the Board.

The Advisory Committee then made its formal recommendation that the Board approve a vote by the Foundation of all of its shares of common stock of the Company in favor of the merger. The members of the Board asked numerous questions of the advisors to discuss the valuation and analysis at length. The Directors questioned the advisors in detail concerning the fiduciary, legal, securities law and investment considerations included in the recommendation from the Advisory Committee and its advisors. A discussion ensued with respect to the merger and the reasons for consideration.

FOUN0009911

After a discussion, the Board members agreed upon motion and seconded, to authorize a vote by the Foundation of all of its common stock in the Company in favor of the merger. The Board of Directors was advised to execute a Unanimous Written Consent of Directors authorizing the approval and the reason therefore to be circulated to the Board members for their execution.

There being no further business to come before the Board, the meeting was adjourned at 11:00 a.m.

_____
Thomas E. Chomicz, Acting Secretary

FOUN0009912