CONFIDENTIAL COMMUNICATION

# ROBERT R. MCCORMICK TRIBUNE FOUNDATION

Report of Advisory Committee to the Board of Directors
August 17, 2007

As you know, Tribune Company (the "Company") in September of 2006 formed an independent Special Committee (the "Special Committee") of its Board of Directors (the "Tribune Board") to explore strategic alternatives for preserving and creating additional shareholder value and thereafter to make recommendations to the Tribune Board with respect to one or more strategic alternatives.

Pursuant to the resolutions adopted by the Board of Directors ("Board") of the Robert R. McCormick Tribune Foundation (the "Foundation") on December 14, 2006, the undersigned, James C. Dowdle and John W. Madigan, were appointed as an Advisory Committee to the Board as follows:

    RESOLVED, that the Board appoint an Advisory Committee (the "Advisory Committee") to consist of Mr. John Madigan and Mr. James Dowdle and authorize it to undertake the following: (a) to analyze and evaluate courses of action that the Foundation should take with respect to the Shares in light of Tribune's strategic assessment; (b) to retain a financial advisor to provide advice to the Advisory Committee and the Board with respect to the Shares and possible actions that could be taken by the Foundation with respect to the Shares; (c) to recommend to the Board any actions that it determines should be taken with respect to the Shares; (d) to execute on behalf of the Foundation a non-disclosure agreement with Tribune to obtain access to confidential information of Tribune, and (e) to take such actions, make such filings including but not limited to an amendment to Schedule 13D originally filed with the Securities and Exchange Commission, to disclose the actions approved by this resolution, and issue such public announcements as it deems appropriate and necessary in connection with its activities.

    FURTHER RESOLVED, that the directors and officers are hereby authorized and directed to execute and deliver, for and on behalf of the Foundation, the 13D amendment in such form and substance as has been approved by the Advisory Committee and to take such actions and execute such additional documents or instruments from time to time as they deem appropriate to accomplish the actions described in the foregoing resolution.

In furtherance of the foregoing appointment and authorization, the Advisory Committee has taken the following steps:

    1.    The Advisory Committee, on behalf of the Foundation, retained The Blackstone Group L.P. ("Blackstone") as financial advisor as provided in the Board resolution.

    2.    The Advisory Committee consulted with Blackstone, as well as Katten Muchin Rosenman LLP, Special Counsel to the Foundation ("Special Counsel"), Quarles & Brady LLP,

General Counsel to the Foundation ("General Counsel"), and Brien O'Brien of Advisory Research, investment advisor to the Foundation ("Advisory Research"; Special Counsel, Blackstone, General Counsel and Advisory Research collectively referred to herein as the "Advisors") in connection with the Advisory Committee's evaluation of possible actions available to the Foundation with respect to any financial restructuring alternatives considered by the Special Committee and the Company and related financial, investment, tax and legal issues. The Advisory Committee had numerous in-person meetings, as well as generally daily telephonic meetings, with the Advisors. It received numerous legal, informational and due diligence memoranda prepared by Special Counsel and General Counsel, as well as detailed financial analyses provided by Blackstone and Advisory Research regarding the Company, its business, prospects and existing and proposed capital structure and a number of restructuring alternatives. The Advisory Committee considered, analyzed and discussed these memoranda with the Advisors.

      3.      The Advisory Committee reviewed with the Advisors various reorganization alternatives and related information.

During the course of this review, the Advisory Committee and the Advisors participated in an all-day due diligence meeting and subsequent due diligence meetings with Company management, and the Advisors, on behalf of the Advisory Committee, engaged in numerous discussions with counsel to the Company and its investment bankers, special counsel and investment bankers for the Special Committee, representatives of the Chandler Trusts, and representatives of multiple third parties.

Current Transaction

The Company subsequently approved on April 1, 2007, a series of transactions (collectively known as the "Leveraged ESOP Transactions") (i) with a newly formed Tribune Employee Stock Ownership Plan (the "ESOP"), (ii) a limited liability company ("Zell LLC") wholly owned by Sam Investment Trust established for the benefit of Samuel Zell and his family, and (iii) Mr. Zell. The Leveraged ESOP Transactions include the following series of transactions:

    (1)    The Zell LLC agreed to invest $250 million in the Company in exchange for (i) approximately 1.5 million shares of the Company's common stock ("Company Stock") at $34.00 per share, and (ii) an unsecured subordinated exchangeable promissory note of the Company in the amount of $200.0 million which would be required to be repaid prior to the Merger (as defined below). The promissory note would be exchangeable at the Company's option or automatically under certain circumstances into approximately 5.9 million shares of Company Stock. Mr. Zell would be appointed, effective upon closing the investment in the Company by the Zell LLC, as a member of the Tribune Board. If the purchase agreement for the investment by the Zell LLC is terminated under certain specified circumstances, including by reason of the Tribune Board's determination to accept a superior proposal, the Company will be obligated to pay Zell LLC a termination fee of $25 million.

FOUN0006690

(2)  The Company has agreed to reimburse Zell LLC for up to $2.5 million of unreimbursed expenses following consummation of the investment by Zell LLC and up to an additional $2.5 million of unreimbursed expenses following consummation of the second investment by Zell LLC described in clause (6) below.

(3)  The ESOP purchased on April 1, 2007 approximately 8.9 million shares of Company Stock from the Company at a price of $28.00 per share. The ESOP paid for this purchase with a promissory note in favor of the Company in the principal amount of $250 million to be repaid by the ESOP over the thirty (30) year life of the loan through its use of annual contributions from the Company to the ESOP and/or distributions paid on the shares of the Company Stock held by the ESOP.

(4)  The Company has agreed to launch a tender offer to repurchase approximately 126 million shares of Company Stock that are currently outstanding at a price of $34.00 per share (the "Tender"). The Tender would not be contingent on any minimum number of shares of Company Stock being tendered. The Chandler Trusts have agreed to cause Jeffrey Chandler, Roger Goodan and William Stinehart, Jr., each of whom are currently serving on the Tribune Board as representatives of the Chandler Trusts, to resign as directors of the Company, effective upon the Company's acceptance of their shares of Company Stock for purchase in the Tender.

(5)  The Company has entered into an Agreement and Plan of Merger with GreatBanc Trust Company as Trustee of the ESOP, the Zell LLC and a separate corporation wholly owned by the ESOP, pursuant to which such separate corporation would be merged with and into the Company ("Merger"). Following such Merger, the Company will continue as a surviving corporation wholly owned by the ESOP. In connection with the Merger, all of the outstanding shares of Company Stock other than those held by the ESOP will receive consideration of $34.00 per share ("Merger Price"). If the Merger does not close by January 1, 2008 shareholders will receive an additional 8% annualized "ticking fee" calculated from January 1, 2008 to the date of closing of the Merger. The Company may participate in discussions and negotiations with, and furnish non-public information to, a party that has made a competing proposal, if the Special Committee determines in good faith that such proposal could reasonably be expected to result in a transaction or transactions that are more favorable to the Company and its shareholders that the Merger. The Merger agreement is subject to various closing conditions, including approval of the Merger by holders of a majority of the outstanding shares of Company Stock, receipt of necessary consents and approvals of the FCC and Major League Baseball, receipt of financing commitments and receipt of a solvency opinion. The Merger agreement also gives the Company or the ESOP the right to terminate the Merger transaction if stockholder approval is not obtained or if the Merger does not close by May 31, 2008. The Company also has the right to terminate the Merger agreement in the event that the closing of Zell LLC's initial investment described in clause (1) is not consummated on or prior to August 17, 2007.

(6)  In the Merger Zell LLC will receive cash for the shares of Company Stock it owns. Immediately prior to the Merger, the Company will repay the exchangeable

3

promissory note held by Zell LLC. Following the consummation of the Merger, Zell LLC has agreed that it will purchase from the Company a $225.0 million subordinated promissory note and a 15-year warrant for $90.0 million. The warrant will entitle Zell LLC to purchase approximately 43.4 million shares of Company Stock which will represent approximately 40% of the economic equity interest in the Company following the Merger. The warrant will have an initial aggregate exercise price of $500 million increasing by $10 million per year for the first ten (10) years of the warrant, for a maximum aggregate exercise price of $600 million.

(7)   The Company has agreed to grant Zell LLC and the ESOP registration rights with respect to the shares of Company Stock that the Zell LLC and ESOP purchased from the Company.

(8)   In connection with the approval of the Leveraged ESOP Transactions, the Tribune Board approved certain cash compensation awards and a phantom equity plan for members of management and other key employees conditioned upon consummation of the Merger. The cash transaction bonus pool will be in the aggregate of $6.5 million for 38 individuals. Mr. Scott C. Smith, Mr. David D. Hiller and Mr. Dennis FitzSimons have voluntarily elected not to participate in this pool. The phantom equity pool will provide two tranches of phantom stock awards to be granted to certain members of management. The first tranche will include shares of phantom stock with an economic value equal to 5% of the outstanding shares of Company Stock and will be awarded upon consummation of the Merger. The second tranche of awards will include shares with an economic value equal to 3% of the outstanding Company Stock to be awarded upon consummation of the Merger.

The Company has secured financing commitments from certain lenders to provide the Company with the ability to borrow the amounts required to finance the Leveraged ESOP Transactions.

The Company's largest shareholder, the Chandler Trusts, entered into a voting agreement whereby the Chandler Trusts have committed to vote all of their shares of Company Stock in favor of the approval and adoption of the Merger and the Leveraged ESOP Transactions.

Tender

As a result of the Tender, the Foundation received approximately $556.3 million for 16.2 million shares of Company Stock. Following the consummation of the Tender, the Foundation presently has cash and investments of approximately $852 million and its Tribune equity with a value of $396 million, increasing further diversification of the Foundation's portfolio.

Merger

Blackstone has analyzed the terms of the Merger and submitted to the Advisory Committee a written report and fairness opinion to the effect that the Merger Price is fair to the

4

FOUN0006692

Foundation from a financial point of view. In Blackstone's fairness opinion and the report that accompanied it, Blackstone advised that as a result of the Merger and receipt of the Merger Price, the Foundation will increase diversification of the overall investment portfolio of the Foundation with the elimination of that portion of the portfolio that is represented by the stock of the Company.

Advisory Research has provided its opinion that approval of the Merger and receipt of the Merger Price would be a prudent investment transaction in the context of the Foundation's overall investment portfolio.

Herbert Wander of the Special Counsel, led a discussion of the benefits received by certain members of the Board of Directors of the Foundation concluding that the awarding of such benefits has a valid business purpose, is commercially reasonable and is standard in transactions of this type. Thomas E. Chomicz of the General Counsel, discussed various aspects of the legal opinion to be provided by the General Counsel, concluding that the decision to approve the Merger will be in compliance with applicable standards for prudent investment decisions by the Board of Directors of the Foundation under applicable Illinois state law and will not jeopardize the tax exempt status of the Foundation under Section 501(c)(3) of the Internal Revenue Code, or cause the Foundation or the Foundation managers to incur any excise tax under Section 4958 of the Code.

The Advisory Committee considers the foregoing factors identified by Blackstone to be important in consideration of the Merger, including but not limited to the fact that receipt of the Merger Price would increase the overall liquidity of the Foundation's investment portfolio which would provide the Foundation with additional flexibility in its investment opportunities to enable the Foundation to be in a better position to carry out its on-going charitable activity.

Accordingly, the Advisory Committee has concluded that approval of the Merger and receipt of the Merger Price is in the best interests of the Foundation and recommends that the Board of Directors authorize the Foundation to approve the Merger.

                    Respectfully submitted,

                    James C. Dowdle

                    John W. Madigan

FOUN0006693