PRIVILEGED AND CONFIDENTIAL – ATTORNEY-CLIENT COMMUNICATION

UNANIMOUS WRITTEN CONSENT OF THE DIRECTORS OF
THE ROBERT R. MCCORMICK TRIBUNE FOUNDATION

The undersigned, being all of the directors of the Robert R. McCormick Tribune Foundation, an Illinois not-for-profit corporation (the "Foundation"), hereby take the following actions and adopt the following resolutions by unanimous written consent ("Consent") pursuant to Section 108.45 of the Illinois General Not for Profit Corporation Act of 1986, as amended (the "Act"):

WHEREAS, in September, 2006, Tribune Company (the "Company") formed an independent special committee (the "Special Committee") of its board of directors (the "Tribune Board") to oversee exploration of strategic alternatives for preserving, and creating additional, shareholder value, and to thereafter make a recommendation to the Tribune Board with respect to one or more such strategic alternatives;

WHEREAS, in view of the Company's strategic assessment and because of the Foundation's sizable investment in the Company, the Board of Directors of the Foundation (the "Board") on December 14, 2006, established an advisory committee (the "Advisory Committee") consisting of John W. Madigan and James C. Dowdle, both of whom were members of the Board but were not currently employed by the Company, to analyze and evaluate the course of action that the Foundation should take with respect to its shares of common stock of the Company (the "Tribune Stock"), with the members of the Board who were also executives of the Company recusing themselves from the evaluation process;

WHEREAS, the Board authorized the retention of Katten Muchin Rosenman LLP ("Special Counsel") to serve as special legal counsel to the Foundation and to assist the Advisory Committee and the Board with respect to their review of potential actions that the Foundation should take with respect to the Tribune Stock;

WHEREAS, the Board authorized the Advisory Committee to engage a financial advisor for the Foundation, and the Advisory Committee thereafter retained The Blackstone Group L.P. ("Blackstone") as such independent financial advisor;

WHEREAS, the Foundation also requested Quarles & Brady LLP, general counsel to the Foundation, and Brien O'Brien of Advisory Research ("Advisory Research"), the Foundation's long-time financial advisor, to assist in evaluating alternatives available to the Foundation with respect to any financial restructuring considered by the Special Committee and the Company and to provide advice to the Advisory Committee and the Board regarding related tax, legal, financial and investment issues;

WHEREAS, the Advisory Committee consulted extensively with its Special Counsel, Blackstone, Quarles & Brady LLP and Advisory Research (hereinafter collectively referred to as the "Advisors") to assist in evaluating the possible actions available to the Foundation with respect to any financial restructuring alternatives considered by the Special Committee and

related financial, investment, tax, and legal issues; the Advisory Committee had numerous in-person meetings, as well as generally daily telephonic meetings, with the Advisors; it received numerous legal, informational and due diligence memoranda prepared by Special Counsel and General Counsel, as well as detailed financial analyses provided by Blackstone and Advisory Research regarding the Company, its business prospects and existing and proposed capital structure, and a number of restructuring alternatives; and the Advisory Committee considered, analyzed, and discussed these memoranda with the Advisors;

**WHEREAS**, the Advisory Committee reviewed with the Advisors multiple alternative restructuring proposals and related information;

**WHEREAS,** the Advisory Committee and the Advisors participated in an all-day due diligence meeting with Company management, and the Advisors, on behalf of the Advisory Committee, participated in additional due diligence conferences with Company management, engaged in numerous discussions with counsel to the Company and its investment bankers, special counsel and investment bankers for the Special Committee, representatives of the Chandler Trusts, and representatives of multiple third parties;

**WHEREAS,** the Company subsequently approved a series of transactions (collectively known as "Leveraged ESOP Transaction") (i) with a newly-formed Tribune Employee Stock Ownership Plan (the "ESOP"), (ii) a limited liability company ("Zell LLC") wholly owned by Sam Investment Trust, established for the benefit of Samuel Zell and his family, and (iii) Samuel Zell ("Mr. Zell");

**WHEREAS**, the Company has entered into an Agreement and Plan of Merger with Great Banc Trust Company as Trustee of the ESOP, Zell, LLC, and a separate corporation wholly owned by the ESOP, pursuant to which such separate corporation would be merged with and into the Company ("Merger"). Following such Merger, the Company would continue as a surviving corporation wholly owned by the ESOP. In connection with the Merger, all of the outstanding shares of Company stock other than those held by the ESOP would be exchanged for cash consideration of $34.00 per share ("Merger Price"). If the Merger does not close by January 1, 2008, shareholders will receive an additional 8% annualized "ticking fee" calculated from January 1, 2008 to the date of closing;

**WHEREAS**, as part of the Leveraged ESOP Transaction, the Company completed a tender to repurchase approximately 126 million shares of Company common stock currently outstanding at a price of $34.00 per share ("Tender"). As a result of the Tender, the Foundation received approximately $556.3 million for approximately 16.2 million shares of Company common stock. Following the Tender, the Foundation had cash and non-Company investments of approximately $852 million and Company common stock with a value of $396 million (assuming a post-Tender price of approximately $34.00 per share), significantly increasing the diversification of the Foundation's portfolio;

**WHEREAS**, the Foundation currently owns 11.8 million shares of common stock of the Company with an approximate value of $396 million (based on the Merger Price), which represents approximately 10% of the total outstanding stock of the Company. The shares of common stock of the Company owned by the Foundation represent approximately 32% of the aggregate investment assets of the Foundation (the balance of which is in marketable securities and cash having an approximate value of $852 million);

FOUN0006698

**WHEREAS**, the Board received a memorandum prepared by Special Counsel advising that certain benefits to be provided to officers of the Company (including certain directors of the Foundation who are also officers of the Company) upon consummation of the Merger, have a valid business purpose, are commercially reasonable and are standard in transactions of this type ("The Katten Legal Memorandum");

**WHEREAS**, the Board reviewed a draft of a legal opinion provided by Quarles & Brady LLP which provided that: (1) the proposed decision of the Board to vote the Foundation's Company stock in favor of the Merger would be in compliance with applicable standards for prudent investment decisions by the Directors of the Foundation under Illinois state law; (2) the approval of the Merger would not jeopardize the Foundation's tax exempt status under Internal Revenue Code Section 501(a) as an organization described in Internal Revenue Code Section 501(c)(3), or cause the Foundation or its managers to incur any excise tax under Internal Revenue Code Section 4958 ("Quarles & Brady Legal Opinion");

**WHEREAS**, the Advisory Committee presented its Report ("Report") to a meeting of the Board held on August 17, 2007 and recommended to the Board for the reasons stated in the Report that the Board approve a vote of all shares of Company common stock owned by the Foundation in favor of the Merger;

**WHEREAS**, the Board considered whether to vote in favor of the Merger at a special meeting on August 17, 2007, at which: (a) the Advisory Committee recommended to the Board to that it approve the vote of all of the shares of Company stock owned by the Foundation in favor of the Merger; (b) Blackstone analyzed the Leveraged ESOP Transaction and made a presentation to the Board with respect to the Merger price of $34.00 per share and presented the Board with a written report and its fairness opinion that the Merger price of $34.00 per share would be fair to the Foundation from a financial point of view (the "Fairness Opinion"); and (c) Advisory Research provided its opinion that a decision by the Board to vote in favor of the Merger would be a prudent investment decision, in the context of the Foundation's overall investment portfolio (the "Advisory Research Opinion");

**WHEREAS**, the Board has relied on the Report, the Fairness Opinion, the Advisory Research Opinion, the Katten Legal Memorandum, and the Quarles & Brady Legal Opinion (copies of which are attached to the Secretary's copy of this Consent) in its deliberations with respect to the Merger;

**WHEREAS**, the Board thereafter had the opportunity to ask questions of the Advisors with respect to the Merger, and engaged in related discussions;

**WHEREAS**, the Directors of the Foundation who are executives of the Company are acting solely in their capacity as directors of the Foundation and in exercising their approval set forth herein are relying on the Report of and the recommendation of the Advisory Committee;

**WHEREAS**, at such meeting the Board, considering all of the foregoing, unanimously approved a vote of all the Company stock owned by the Foundation in favor of the Merger; and

**WHEREAS**, the Board has determined that, although it has the authority pursuant to Article 8, Section 3 and Section 4.C. of its Articles of Incorporation to authorize the vote in favor of the Merger by approval of a majority of the directors in office, it desires that the authorization be approved by a unanimous consent and approval of the Board, including the affirmative votes of John W. Madigan and James C. Dowdle, members of the Board who were determined by the

FOUN0006699

Board to be disinterested directors ("Disinterested Directors") for purposes of Section 108.60 of the Act.

**NOW THEREFORE, BE IT RESOLVED**, that the Board and the Disinterested Directors hereby approve the vote of all of the Company stock owned by the Foundation in favor of the Merger.

**FURTHER RESOLVED**, that the Board hereby delegates to the President and other officers of the Foundation the full power and authority:

(a) to execute and deliver the documents and instruments as may be necessary or desirable in order to accomplish the vote in favor of the Merger and to fulfill the foregoing resolutions of the Board and those adopted at the special meeting; and

(b) to execute and deliver such reports, filings and other documents as may be necessary or advisable, as deemed appropriate by the Foundation's legal advisors;

**FURTHER RESOLVED**, that the President and other officers of the Foundation are, and each of them hereby is, authorized to do or cause to be done in the name of and on behalf of the Foundation any and all acts and deeds and to execute and deliver any and all agreements, instruments or other documents as they deem necessary or desirable to effectuate the foregoing resolutions.

IN WITNESS WHEREOF, the undersigned have executed this Consent as of this 17th day of August, 2007.

**[SIGNATURES ATTACHED]**

FOUN0006700

Signature Page

                ROBERT R. MCCORMICK TRIBUNE FOUNDATION

**BOARD OF DIRECTORS**

_____
James C. Dowdle

_____
Dennis J. FitzSimons

_____
David D. Hiller

_____
John W. Madigan

_____
Scott C. Smith

**DISINTERESTED DIRECTORS**

_____
James C. Dowdle

_____
John W. Madigan

5