# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
# DECEMBER 7, 2008

A telephonic meeting of the Board of Directors (the "Board") of Tribune Company (the "Company") was originated at 2 North Riverside Plaza in Chicago, Illinois beginning at approximately 2:00 p.m. (Chicago time) on December 7, 2008. The meeting was called pursuant to valid notice. Written materials were sent to the Board in advance of the meeting.

The following Directors participated in the meeting: Samuel Zell, Jeffrey S. Berg, Brian L. Greenspun, Betsy D. Holden, William A. Osborn, William C. Pate, Mark Shapiro, Maggie Wilderotter and Frank E. Wood.

Also attending, by invitation of the Board, were the following officers, employees and guests of the Company: Randy Michaels, Gerald A. Spector, Nils E. Larsen, Donald J. Liebentritt, Chandler Bigelow, David P. Eldersveld, Daniel G. Kazan, Brian F. Litman, Gary Weitman, Terry Holt and Randolph Read. Also in attendance were Larry A. Barden, James F. Conlan and Bryan Krakauer from Sidley Austin LLP and James Millstein, John Chachas and Suneel Mandava from Lazard Frères & Co. LLC.

Mr. Zell served as chairman of the meeting and Mr. Eldersveld acted as secretary of the meeting. After determination that a quorum was present, the meeting was called to order.

## OFFICER ELECTION

Mr. Zell nominated Nils E. Larsen for election as an officer of the Company. A motion was then made, seconded and approved to adopt the following resolution:

> RESOLVED, that Nils E. Larsen is hereby elected to serve as an Executive Vice President of the Company until his successor shall be elected and qualified or until his earlier resignation or removal.

Messrs. Zell, Bigelow and Liebentritt then provided an update on the recent discussions among management and the Company's senior lenders, which involved a meeting on December 3, 2008 with the senior lender steering committee, which included JPMorgan, the agent on the Company's senior credit facility.

Management reported to the Board that the senior lender steering committee and its advisors were apprised of the Company's current operating performance, the pressure on its ability to support its debt obligations and to remain in compliance with its financial covenants and the magnitude of the near-term payments to junior creditors. Management explained to the Board that the members of the senior lender steering committee understood the immediacy of the alternatives facing the Company.

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415733

Mr. Zell then reported on his recent discussion with Mr. Dimon, the Chairman and Chief Executive Officer of JPMorgan Chase & Co. Mr. Zell stated that Mr. Dimon was not opposed to the Company's potential determination to seek protection under chapter 11 of the United States Bankruptcy Code. Ms. Wilderotter noted that she had a similar conversation with Mr. Dimon.

Mr. Bigelow reported that holders of the Company's PHONES securities had continued to submit PHONES to the Company for exchange, as permitted by the terms and conditions of the PHONES. Mr. Bigelow then reminded the Board of the near-term debt maturities and other capital structure considerations that had been the subject of detailed discussion at prior Board meetings.

Management then reviewed with the Board the various alternatives that had been discussed with the Board at its December 1, 2008 meeting. A detailed discussion then followed during which management, Lazard and Sidley Austin addressed questions raised by the Board.

Mr. Bigelow then reviewed the Company's current liquidity, which included a detailed discussion of the potential impact of a near-term bankruptcy filing. As a part of such discussion, Mr. Bigelow updated the Board on the sale of the approximately 16 million shares of Time Warner, Inc. Following discussion, a motion was then made, seconded and approved to adopt the following resolution:

> RESOLVED, that the sale from time to time in one or more open market or other sale transactions of any or all of the shares of common stock of Time Warner, Inc. held by the Company be, and hereby is, authorized, approved and ratified, such sale(s) to be made at such sale price(s) as the Chairman and Chief Executive Officer, Chief Operating Officer, Executive Vice President and Chief Administrative Officer or Chief Financial Officer shall determine to be appropriate, with the consummation of any such sale to be conclusive evidence of such determination.

Mr. Bigelow then described the status of the Company's negotiations with respect to certain debtor-in-possession financing alternatives. The two primary alternatives included a potential extension of the asset-backed commercial paper facility currently in place with Barclays. The proposal involved a 120-day extension of the $300 million facility which would avoid a rapid amortization that would otherwise be triggered by a bankruptcy filing or other event of default. Mr. Bigelow noted that the current borrowing base would currently provide for approximately $225 million of availability. The terms would also include a $50 million cash-collateralized letter of credit facility. Mr. Bigelow noted that the Company was also discussing a more traditional form of a debtor-in-possession facility with JPMorgan, Bank of America and Citi which would provide for a $175 million facility with a 364-day term. Management reported that, based on the current status of the negotiations, the Barclays extension would provide for more loan availability and increased operating flexibility and also allow time for the Company to negotiate a longer-term facility, if one was deemed necessary.

Management then updated the Board on its contingency planning and the preparation engaged in by management together with its legal and financial advisors with respect to each of the alternatives. This discussion included consideration of the effect that a bankruptcy filing could

2

**Professionals' Eyes Only**
**Highly Confidential -- Attorneys' Eyes Only**

TRB0415734

have on employees, business operations, the effect on the employee stock ownership plan and other constituencies.

Mr. Osborn asked Lazard for a statement with respect to the various alternatives. Lazard noted the considerations related to making significant payments to junior creditors in light of the continued pressure on the Company's operating performance and the uncertainty surrounding the Company's ability to continue to support its debt obligations and maintain compliance with its financial covenants. Lazard then discussed the status of the Company's pending transactions, describing the execution risk associated with each transaction. Lazard also noted the risks and uncertainties associated with the use of existing sources of liquidity, in particular the senior delayed draw term loan and revolving credit facility, to fund payments to junior creditors. Lazard stated that a voluntary filing under chapter 11 of the bankruptcy code was the most prudent course of action. Management then responded that it concurred with the statement provided by Lazard.

Following that, the Board resolved to continue its consideration of the various alternatives and determined to meet again the following day.

Sidley Austin

**REDACTED**

There being no further business to come before the Board, the meeting was adjourned at approximately 2:45 p.m.

David P. Eldersveld
Secretary

3

Professionals' Eyes Only
Highly Confidential -- Attorneys' Eyes Only

TRB0415735