## Exhibit A

**BYLAWS OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF TRIBUNE COMPANY, <u>ET AL</u>.,
<u>CASE NO. 08-13141 (KJC)</u>**

### I. MEMBERSHIP

A.      Membership on the Official Committee of Unsecured Creditors (the

**"Committee"**) of Tribune Company., <u>et al</u>. (collectively, the **"Debtors"**) shall be held in the

name of the creditor appointed to the Committee (each such creditor, a **"Member"**) by the

United States Trustee for Region 3 (the **"U.S. Trustee"**).  Except as provided in Article VII of

these Bylaws, each Member shall have one vote on all matters submitted to the Committee for

its consideration.

B.      Any Member of the Committee may designate a representative and one or

more alternate representatives to attend Committee meetings, <u>provided</u> (i) such representative

and alternates are officers of the Member, employees of the Member, attorney or an attorney-in-

fact for, or other professional retained by, the Member, (ii) such designation is made to the

Committee Chairs (as defined below) or Committee counsel prior to the relevant meeting, and

(iii) such representative and alternates, as applicable, have agreed to abide by these bylaws,

including, without limitation, with respect to duties of confidentiality, as applicable to such

Member.  The initial designation of the primary representative and the alternate

representative(s) for each Member is set forth in Schedule I attached hereto.  An alternate shall

have all of the powers and duties of a Member for all purposes of the meetings in the absence of

the primary representative.

C.      A Member resigning from the Committee shall give written notice of such resignation to the U.S. Trustee, the Committee Chairs and Committee counsel.  If a Member resigns from the Committee, the Committee may make recommendations to the United States Bankruptcy Court for the District of Delaware (the "**Court**") or the U.S. Trustee for a substitute.  If feasible, the recommended substitute should represent interests similar to those of the resigning Member but in no event shall the resigning Member or any transferee of such resigning Member's unsecured claim have the right to designate or recommend a successor for such Member of the Committee.  During the period after the resignation and prior to the appointment of a substitute by the United States Trustee, the membership of the Committee shall consist of those Members remaining after the resignation.

D.      Committee counsel represents and acts on behalf of the Committee with regard to matters relating to the Debtors' chapter 11 cases.  Committee counsel does not represent the Members in their individual capacities.  Therefore, only the Committee (by a vote of two thirds of the Members), and not any individual Member, has authority to waive the attorney-client privilege and (with counsel) the attorney work product privilege.

E.      A Member that transfers (other than to an affiliate), whether by sale, participation, grant of an option, or other method, or receives payment on account of its claim, in either case in an amount in excess of 35% of the dollar amount of its claim as of December 8, 2008, shall promptly, upon (i) reaching an agreement in principle with respect to such transfer or (ii) receiving payment on account of its claim, provide written notice to the Chairs and Committee counsel.

## II. COMMITTEE CHAIRS

A.      There shall be one or more Committee chairs (the chair or chairs serving from time to time being referred to herein as the **"Chairs"**), and there may be a secretary of the Committee, each of whom shall be elected from among the representatives of the Members, by a majority vote of the Committee, and who shall serve until the earlier of resignation, removal, or dissolution of the Committee at the conclusion of these cases. As of January 26, 2008, the Chairs of the Committee shall be **Warner Bros. Television** and **JPMorgan Chase Bank, N.A.**

B.      As authorized by the Committee, any Chair or the Committee's professional advisors shall speak for the Committee in reporting the Committee's non-confidential resolutions and positions to other parties-in-interest in these cases and to the press, if appropriate. Committee counsel and other professionals that may be retained by the Committee shall be authorized to act on the advice and instructions of the Chairs issued in accordance with Article VI of these bylaws. Either Chair shall have the authority to sign documents on behalf of the Committee as appropriate in order to implement decisions of the Committee.

C.      Either Chair may be removed, with or without cause, by affirmative vote of a majority of the Members. If either of the Chairs is removed, voluntarily resigns its position, or resigns from the Committee, then the Committee shall promptly consider whether to elect a successor. A special meeting for considering the election of a successor co-chair shall be called by Committee counsel as soon as practicable upon telephonic, facsimile, or electronic mail notice. Notwithstanding the foregoing, the Committee shall at all times have at least one Chair.

### III. QUORUM

A.      A quorum for the transaction of business at any meeting shall consist of a majority of the Members of the entire Committee as then constituted.  As used herein, a "majority" means a number greater than fifty percent (50%).

B.      No Member of the Committee may vote except by its designated representative or designated alternate.

C.      Proxies in respect of specific issues shall be permitted, <u>provided</u> such proxy vote shall be confirmed in writing (including by facsimile or electronic mail) to the Chairs and Committee counsel by the voting Member prior to such vote.  Voting by a designated alternate shall not be deemed to be voting by proxy.

### IV. MEETINGS

A.      No meeting shall be held unless a quorum is present at the beginning of the meeting and the following notice procedures have been complied with.

B.      Regular meetings shall be held from time to time on dates and at locations designated by the Chairs.  Announcements of the date and place of the next succeeding meeting shall be made by the Chairs at a duly scheduled meeting, if possible, and confirmed by Committee counsel by mail, overnight courier, electronic mail or facsimile transmission sent to all Members on as much notice as is reasonably practicable, but in no event less than two (2) business days' notice.

C.      Special meetings may be requested by any Member on at least forty-eight (48) hours, or by the Chairs or Committee counsel on at least twenty-four (24) hours, prior notice to each Member by telephone, overnight mail, electronic mail or facsimile transmission;

provided, however, that in an emergency any Member or Committee counsel may request a special meeting on shorter notice.  If such notice is by telephone, it shall be confirmed by electronic mail or facsimile transmission.  If a special meeting is requested pursuant to this article, the Chairs shall call the special meeting.  The purpose of the special meeting shall be set forth in the notice and, except in emergency circumstances, no additional subjects shall be discussed by or presented to the Committee for consideration at such meeting.

       D.     The Chairs shall call all regular meetings, and shall call special meetings whenever deemed appropriate by the Chairs or whenever requested to do so by any Member of the Committee.

       E.     Meetings shall be held in person or by telephonic conference call; provided, however, that the Chairs will use their best efforts to provide notice in excess of forty-eight (48) hours for meetings held in person.  All meetings to be held in person shall also afford Members the opportunity to participate by telephone.

       F.     Due to the potentially sensitive, non-public nature of subjects that may be discussed by the Committee and the possibility of detrimental effect on the Debtors, their estates, and all of the creditors in the case of public dissemination of such discussion, meetings of the Committee shall not be open to persons other than Members of the Committee, their designated representatives or alternates and designated counsel and financial and other advisors, and professionals employed by the Committee; provided, however, that the Committee, by affirmative vote of a majority of its Members, may for special, limited purposes, permit other persons to attend who shall not be deemed Members of the Committee under these bylaws.

       G.     The Chairs (or, in their absence, Committee counsel) or such other person as the Chairs may designate, shall preside at all meetings of the Committee.

## V. AGENDA

A.      To the extent possible, matters shall be presented to the Committee upon written agenda prepared by the Committee's professional advisors with the input of the Chairs and transmitted to the Committee Members not less than twenty-four (24) hours prior to Committee meetings. Any Member of the Committee shall be entitled to request that a matter be included on the agenda and if such a request is made then such matter shall be included, so long as such request is made not less than twenty-four (24) hours prior to the Committee meeting in question.

B.      Matters as to which the Debtors request action by the Committee at a regular meeting of the Committee shall be presented to the Chairs in writing, with copies to each Committee Member and its counsel (if any), when feasible, not less than twenty-four (24) hours prior to the meeting at which such matters are to be considered. The Chairs may, in their discretion, include matters for consideration by the Committee raised by the Debtors on less than twenty-four (24) hours notice to the Committee.

C.      Minutes of all Committee meetings shall be recorded by Committee counsel, which shall also maintain a record of all formal actions taken by the Committee. Such record shall not specifically note the votes of each Member with respect to such action, unless one or more Members specifically request that its or their votes be specifically noted, in which case such record shall specifically note the votes of the Member or Members who made such request. All recorded minutes shall be deemed recorded in draft form until approved by the Committee. Minutes shall be deemed approved by the Committee and in final form following distribution unless comments are received by Committee counsel within seven days after distribution to the Members, in which event revised minutes reflecting such comments may be

distributed and shall be deemed approved unless additional comments are received to such

revised portions within three days of dissemination thereof.  If Committee counsel, after

consultation with the Chairs, determine not to accept comments submitted by a Member and the

differences cannot be resolved through discussions with that Member, the minutes shall not be

deemed approved unless either (i) the proposed minutes are amended to note the Member's

dissent, or (ii) such minutes are approved after discussion at a subsequent meeting of the

Committee.

      D.      Written communications to and among Members, their counsel, their

financial and other advisors and Committee professionals may be made by hand, mail,

overnight courier, facsimile or electronic-mail transmission, at the then most current address

provided to Committee counsel.  Records of any such written communications shall be deemed

sufficient and conclusive evidence of the communication, without the need for follow-up

confirmation.  It shall be the responsibility of each Member, its counsel, financial and other

advisors or Committee professional to notify Committee counsel of any change in contact

information.  The initial Committee contact list as of the date of adoption of these Bylaws is

annexed hereto as Exhibit A.  It shall be the responsibility of Committee counsel to provide an

updated Committee working group contact list to all Members, their counsel and other

Committee professionals when any changes are made.

## VI. ACTION BY COMMITTEE

      A.      Action by the Committee taken at Committee meetings shall require the

affirmative vote of a majority of those present and voting who do not abstain from voting

pursuant to Article VII of these bylaws if a quorum is present, unless a supermajority vote is

specifically prescribed by these Bylaws in a particular instance. The Chairs or Committee counsel shall tally and record the votes of the Members. Voting shall not be conducted by secret ballot unless the Committee determines, by a majority vote, to proceed by secret ballot in any particular instance. The determination by the Chairs or Committee counsel of the vote of the Committee with respect to any matter will be final.

B. Committee action may be taken without a meeting by the affirmative vote of a majority of those polled and voting (unless a supermajority vote is otherwise specifically required under these Bylaws to effect such action), and who do not abstain from voting pursuant to Article VII of these bylaws, in accordance with the polling procedures described below if the Chairs determine, upon consultation with Committee counsel, that the situation is appropriate for such action, provided, however, that in order for such action to be taken by polling, a quorum must be voting, and, provided further, that no such action may be taken if at least three Members request that a meeting be held to consider the action. In such cases, votes may be obtained by polling Members on the issue by telephone, electronic mail or facsimile transmission. Polling may be conducted by the Chairs or Committee counsel. Such a vote shall be effective if a good-faith effort is made to reach and consult with each representative of the Members of the Committee or their designated alternates and, when requested by such Member or its designated alternate, its counsel, with respect to the proposed action. The Chairs or Committee counsel shall provide prompt notice of any such action to each Member who has not given approval, which notice shall be confirmed in writing or by electronic mail.

C. Without prior Committee action or consent, the Chairs, with the advice of the professional advisors to the Committee, shall be empowered to consent to, or otherwise act on, relatively minor matters between meetings, which may include (i) requests by any party-in-

interest in the Debtors' bankruptcy cases for the entry of Court orders or other matters involving amounts not greater than $200,000 and (ii) other matters not readily susceptible of monetary evaluation that, in the good-faith judgment of the Chairs, upon advice of Committee counsel, are considered to be in the Debtors' ordinary course of business or not significant.

Additionally, in the event that action is required by the Committee on shortened notice, and it is impracticable in the judgment of Committee counsel to poll the entire Committee for its views, the Chairs are empowered with the advice of Committee counsel to consent to or otherwise act on such matters on "negative notice" of the action to be taken to the individual Members, giving them adequate time to respond, i.e., the Chairs may act unless informed otherwise by a Member. "Negative notice" shall have been given when the Members and their counsel (if any) receive a memorandum, email, or phone call from Committee counsel informing each Member of the proposed action and requesting that the Member contact Committee counsel by a specified time, which, absent exigent circumstances, shall not be less than 24 hours after the delivery of the aforementioned memorandum, email or telephone call from Committee counsel, if the Member does not support the action.  If Committee counsel does not receive a response or objection from the Member, that Member shall be deemed to have voted in favor of the action. For any action taken via "negative notice," all Members of the Committee shall be provided notice of the issue being voted upon except to the extent it has been previously determined at a Committee meeting pursuant to Article VII hereof that a particular Member has a conflict of interest with respect to the particular vote and is therefore recused from voting.

Notwithstanding the foregoing, the Chairs shall not be permitted to take any action with respect to any matter concerning the compensation of the Debtors' executives or the compensation of professionals retained in the bankruptcy cases, which in all cases shall require the affirmative

9

vote of the Members.  The Committee shall be advised promptly of any matters so acted on by

the Chairs, which shall use best efforts to do so not later than twenty-four (24) hours following

such action.  This authorization is for convenience purposes only and it is not intended that all

such matters be handled without consultation with the Committee.

D.      In special, unexpected situations, action may be taken by the Chairs on

behalf of the Committee without a meeting, provided, however, that the Chairs determine, after

consultation with Committee counsel, that such action is vital to the interests of the Committee,

and provided, further, that the Chairs shall first make a good-faith effort to poll, by telephone

and electronic mail, the Members of the Committee or their designated alternates and, when

requested by such Member or its designated alternate, its counsel, concerning the matter at

issue.

E.      Upon request by a Member of the Committee, such Member's vote on any

matter shall be recorded in any minutes of the appropriate meeting or, if no meeting is held, in

the written results of any polling of the Committee on such matter.

## VII.  CONFLICTS OF INTEREST

A.      If any matter under consideration by the Committee appears in the judgment

of Committee counsel to involve a conflict of interest with any Member(s) serving on the

Committee, Committee counsel shall so advise all of the Member(s) of the Committee of the

conflict of interest.  Under such circumstances, the Member(s) with the alleged conflicting

interest (the **"Allegedly Conflicted Member(s)"**) may participate in discussions concerning the

matter unless (a) the Allegedly Conflicted Member(s) choose to abstain from (x) attending all

or any portion of the discussion of the matter or (y) the Committee by majority vote (excluding

10

any Allegedly Conflicted Member) determines to exclude the Allegedly Conflicted Member(s) from all or any portion of the discussion of the matter; and (b) shall abstain from voting on the matter being considered by the Committee.  Consistent with the foregoing, no Allegedly Conflicted Member(s) shall have access to reports or work product (including draft pleadings) prepared by counsel or any other professional retained by the Committee with respect to the matter in respect of which the alleged conflict of interest exists unless a majority of Members of the Committee, excluding any Allegedly Conflicted Member(s), concludes that access should be granted to serve the interests represented by the Committee.  Nothing contained in these bylaws shall be construed to limit the Committee's ability to seek removal by the Court or the U.S. Trustee of any Member from the Committee.

B.      While all Committee Members acknowledge that as members of the Committee they are acting as fiduciaries in their capacity as such, nothing contained in these bylaws shall, subject to confidentiality and related issues, prevent any Member from exercising (or omitting to exercise) or seeking (or omitting to seek) to enforce or protect any of its rights as an individual creditor or other party-in-interest in these cases as it may deem appropriate.  Each Member of the Committee retains the right to appear in the chapter 11 cases of the Debtors in respect of its own interests and to take a position different from that of the Committee; provided, however, that no Member shall purport to represent or speak for the Committee in connection therewith.

C.      Whenever these bylaws require the affirmative vote, action or presence of a minimum number of members (e.g., majority), members that voluntarily abstain or are required to abstain pursuant to Article VII. A. of these bylaws shall be excluded in determining such minimum number.

11

D.      In any instance where a Member voluntarily abstains or is required to abstain due to an actual or alleged conflict of interest, the minutes of the applicable meeting shall reflect such abstention.

## VIII. CONFIDENTIALITY OF INFORMATION

A.      Each Member of the Committee is aware of the fiduciary duty that it has to unsecured creditors of the Debtors and agrees that it will act in accordance with such duty in dealing with confidential information.

B.      Confidential information shall mean all matters discussed at Committee meetings (whether or not memorialized in any minutes thereof), any information or material (whether written, electronic or oral) distributed to a Member or its representatives by or through the Committee and any information or material received from the Debtors or their representatives, in each instance, that is not generally available to the public; provided, however, that confidential information shall not include information (i) that is available to or was in the possession of a Member on a non-confidential basis prior to the receipt of such information in its capacity as a Member, (ii) that is separately received by a Member outside of that Member's capacity as a Committee Member, (iii) that is or becomes available to the public generally other than as a result of a breach of any of the provisions of this Article VIII, or (iv) that becomes independently available to a Member by a means other than service on or in connection with its membership on the Committee so long as the Member's receipt of such information is not governed by any other confidentiality provisions or agreements; and provided further, however, that with respect to clauses (i) or (iii) above, such information became available to the public or was obtained from a source that the Member believes, after

reasonable inquiry, was not prohibited from disclosing such information publicly. Confidential information of the Committee (that does not involve Company Information (as defined below)) shall not be disclosed or revealed to third parties (including the media) unless authorized by vote of a majority of the Committee. Confidential information provided by (or based on information provided by) the Debtors or their respective non-Debtor subsidiaries and affiliates ("**Company Information**") may only be disclosed or revealed to third parties in compliance with these Bylaws and, to the extent applicable, the provisions of the Unanimous Written Consent and Acknowledgement, dated as of January 26, 2009, pursuant to which these Bylaws were adopted (the "**Consent and Acknowledgement**"). Notwithstanding the foregoing, a Member may share any confidential information covered by these Bylaws: (a) with other Members of the Committee and such Members' representatives to the Committee (except as the Company (as that term is defined in the Consent and Acknowledgement) may otherwise specify in writing with respect to specific items of Company Information that the Company has in good faith and for a valid business purpose determined should not be shared with one or more Committee members specifically identified by the Company); (b) with the Committee's professionals; (c) in the context of court proceedings, after the Member has sought an order providing that such information shall be filed under seal and has given notice of the filing of such motion to the Debtors' counsel and the Committee counsel; (d) with the Member's regulators and with the Member's attorneys, financial consultants, outside auditors, other professionals, affiliates, directors, officers, employees or agents who require such information in order to discharge the responsibilities of the Member as a Committee Member, provided that the person or entity (other than a regulator) receiving such disclosure agrees (via oral or written communication) to be and is bound by this obligation of confidentiality; (e) when required by

law, rule, auditor, or any regulatory authority, provided, however, that when a Member is served with a subpoena or other process requiring production of documents or disclosure of information that is privileged as to the Committee, such Member must provide written notice to the Chairs and the Committee Counsel as promptly as is practicable, and if possible in light of the deadlines required by such subpoena or other process, as far as possible in advance of such deadlines in order to enable the Committee to seek to have such process quashed or to attempt to obtain a protective order or other appropriate relief and such Member shall cooperate insofar as is reasonable with such efforts by the Committee; and (f) with third parties, provided that confidentiality agreements acceptable to the Committee and, to the extent that any Company Information is involved, the Debtors, are duly executed with such other persons, and approved by the affirmative vote of a majority of the Committee, with a copy of said agreement delivered to the Debtors to the extent that any Company Information is involved.   Subject to the provisions hereof, it is understood that the mere possession of confidential information by a Member or its representatives as a result of the Member's membership on the Committee is not and would not, in and of itself, constitute a breach of this provision at any time that such Member or its representative take any action with respect to such Member's claim.   Members and their representatives shall advise any party with whom they are permitted to communicate confidential information of the confidential nature of the material and the business of the Committee.

C.      Nothing contained in these bylaws shall preclude Committee Members, including, without limitation, Committee Members that are financial institutions pursuant to bank credit facilities, or agents for or representatives of specific creditor constituencies, such as retirees or labor unions, from making disclosures of non-confidential information to third

parties. Nothing contained in these bylaws shall preclude Members of the Committee from

sharing confidential information received by the Committee from the Debtors (but not from the

Committee, its counsel or advisors) with third parties on any basis agreed by the Debtors.

        D.      Upon the resignation or removal of a Member of the Committee, such

Member shall promptly return to Committee counsel or certify that the Member has used

commercially reasonable efforts to destroy any non-public or confidential material (including

copies thereof) received by the Member in its capacity as a Member of the Committee.

Notwithstanding the resignation or removal of a Member, such Member shall continue to be

bound by the confidentiality obligations of these bylaws.

        E.      If a Member violates the provisions of this article, the Committee may

request that the U.S. Trustee or the Court remove such Member from the Committee.

        F.      Nothing in this Article VIII shall be deemed or construed to waive, alter or

affect Members' qualified indemnity or similar protections under applicable law. No Member

shall have any liability with respect to another Member's breach or alleged breach of the

provisions contained herein.

G.      Notwithstanding the foregoing, Committee member Pension Benefit Guaranty

Corporation ("PBGC"), as a governmental agency, may disclose Confidential Information: (i)

to the Executive Branch of the United States, the PBGC and PBGC Board of Directors'

officials, advisors, consultants, and representatives who have a need to know the information as

part of their job responsibilities; (ii) in the context of a court proceeding relating to the

termination of a defined benefit plan sponsored by any of the Debtors, after PBGC has sought

an order providing that such information shall be filed under seal and has given notice of the

filing of such motion to the Committee and the Debtors, or (iii) upon request from Congress or any committee, joint committee or subcommittee thereof or the Comptroller General, provided, that in the event of disclosure pursuant to this section (iii), PBGC will attempt to give reasonable advanced notice under the circumstances to the Committee and the Debtors.

## IX. PROFESSIONALS

The Committee may engage professionals by an affirmative vote of the majority of the members of the Committee.

## X. SUBCOMMITTEES

The Committee may create such subcommittees as and if it deems appropriate so long as such appointment and delegation are approved by a majority of the Members of the Committee. The Chairs, subject to approval by a majority of the Members of the Committee, shall appoint the membership for each of the subcommittees created, provided, however, no Allegedly Conflicted Member(s) may serve on a subcommittee tasked with investigating, reviewing, or considering matters with respect to which the alleged conflict of interest of such Allegedly Conflicted Member(s) exist.

## XI. EXPENSES

Reimbursement of reasonable expenses incurred in connection with Committee business by Members (including for each Member, one representative and one alternate) shall be sought by the Committee from the Debtors; provided, however, that nothing contained in these bylaws shall preclude Members from seeking reimbursement for underlying claims, including claims for fees and expenses, that the Members may hold against the Debtors.

Reasonable expenses of the Committee shall include expenses for attendance at meetings by the respective representatives and/or alternates of Committee Members, and shall include expenses incurred for transportation, hotel, food, taxicabs, and related expenses, consistent with the U.S. Trustee's guidelines for such expenses. Reimbursement may also be sought for long-distance telephone calls and such other out-of-pocket expenses as may be permitted by the U.S. Trustee's guidelines. Requests for reimbursement of expenses shall be itemized by each Member that submits such requests, and shall be accompanied by supporting receipts or similar documentation.

## XII. RULES OF PROCEDURE

The Chairs shall preside over each Committee meeting in a manner that promotes fairness, a full opportunity for discussion and analysis of all business coming before the Committee, and a full opportunity for each Member to express its view. Parliamentary procedures and any formal "Rules of Order" need not be followed.

## XIII. EX OFFICIO MEMBERS

The Committee shall have the right to appoint ex officio Members of the Committee upon a vote of a majority of the Committee. The resolution appointing such ex officio member shall identify the specific matters for which such ex officio member is being appointed. The Committee (acting at a meeting held in accordance with Article IV hereof) may exclude or condition the attendance of any ex officio Member at Committee meetings or the transmission of information or documents to any ex officio Member. Except as set forth herein, or as otherwise adopted by the Committee at the time of, or subsequent to, its appointment, any ex officio Member of the Committee shall enjoy all rights and privileges, and shall be bound by

the terms hereof (including, without limitation, any duties of confidentiality applicable to Members); provided, however, that in no event shall any ex officio Member have the right to (a) vote on any matter coming before the Committee or (b) seek reimbursement of any expenses incurred in connection with Committee business under Article XI of these bylaws. Any ex officio Member of the Committee may be removed at any time, with or without cause, by affirmative vote of a majority of the Members of the Committee.

## XIV.  EFFECTIVENESS/AMENDMENT TO BYLAWS

These bylaws shall become effective when approved, and may be amended, waived or repealed, by a majority of the Members of the Committee.

## XV. THIRD PARTY RIGHTS UNDER THE BYLAWS

Nothing in these Bylaws shall be construed as conferring upon any third party, other than the Company solely to the extent set forth in the Consent and Acknowledgement, any third-party beneficiary status, including any right of enforcement of the provisions hereof.

# Schedule I

**JPMORGAN CHASE BANK, N.A.**
*Co-Chair*
277 Park Avenue
8th Floor
New York, NY  10172

| | |
|---|---|
| Miriam Kulnis | Tel:  (212) 622-4526<br>Fax:  (212) 622-4556<br>miriam.kulnis@chase.com |
| Kevin C. Kelley | Tel: (212) 648-0427<br>kevin.c.kelley@chase.com |
| Andrew Laughlin | Andrew.j.laughlin@jpmchase.com |

*COUNSEL FOR JP MORGAN CHASE BANK, N.A.*

DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY  10017
Tel:  (212) 450-4000

| | |
|---|---|
| Donald S. Bernstein | Tel:  (212) 450-4092<br>donald.bernstein@dpw.com |
| Damian S. Schaible | Tel:  (212) 450-4580<br>Fax:  (212) 450-3580<br>damian.schaible@dpw.com |
| Daniel Smit | Tel:  (212) 450-4947<br>Fax:  (212) 450-3947<br>Daniel.smit@dpw.com |

1

**WARNER BROS. TELEVISION**
*Co-Chair*
4000 Warner Boulevard
Building 156
Room 5158
Burbank, CA  91522

| | |
|---|---|
| Wayne M. Smith | Tel: (818) 954-6007 |
| Vice President, Senior Litigation & | Fax: 818-954-5434 |
| Chief Patent Counsel | wayne.smith@warnerbros.com |

*COUNSEL FOR WARNER BROS. TELEVISION*

KIRKLAND ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Tel:  (212) 446-4800
Fax:  (212) 446-4900

| | |
|---|---|
| Edward Sassower | Tel: (212) 446-4733 |
| Partner | esassower@kirkland.com |

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax   (212) 697-1559

| | |
|---|---|
| Steven J. Reisman | Tel: (212) 696-6065 |
| Partner | sreisman@curtis.com |
| | |
| Jerrold L. Bregman | Tel (212) 696-6185 |
| Counsel | jbregman@curtis.com |

2

**DEUTSCHE BANK TRUST COMPANY AMERICAS**
MS NYC60-2720
60 Wall Street
New York, NY 10005-2858

| | |
|---|---|
| Stanley Burg | Tel: (212) 250-5280 |
| | Fax: (212) 797-0022 |
| | stan.burg@db.com |
| | |
| Rodney Gaughan, CCTS | Tel: (212) 250-2935 |
| Vice President | Rodney.gaughan@db.com |

*COUNSEL FOR DEUTSCHE BANK*

MCCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, NY 10167
Tel: (212) 609-6800
Fax: (212) 609-6921

| | |
|---|---|
| David Adler | Tel: (212) 609-6847 |
| Partner | dadler@mccarter.com |
| | |
| G. Amanda Mallan | gmallan@mccarter.com |

MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel. (302) 984-6300
Fax: (302) 984.6399

| | |
|---|---|
| Katherine Mayer | Tel: (302) 984-6312 |
| Partner | kmayer@mccarter.com |

3

**MERRILL LYNCH CAPITAL CORPORATION**
4 World Financial Center
250 Vesey Street
New York, NY  10080

Michael O'Brien

Tel:  (212) 449-0948
Fax:  (212) 738-1186
m_obrien@ml.com

Stephanie Vallillo

Tel:  (212) 449-4839
Cell: (917) 862-0265
stephanie_vallillo@ml.com


*COUNSEL FOR MERRILL LYNCH CAPITAL CORPORATION*

KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
Tel:  (212) 836-8000
Fax:  (212) 836-8689

Madlyn Gleich Primoff

Tel: (212) 836-7042
Fax: (212) 836-6525
mprimoff@kayescholer.com

Margot B. Schonholtz

Tel:  (212) 836-7064
Fax:  (212) 836-6465
mschonholtz@kayescholer.com

Richard Choi

Tel:  (212) 836-8276
Fax:  (212) 836-6622
rchoi@kayescholer.com


*LOCAL COUNSEL FOR MERRILL LYNCH CAPITAL CORPORATION*

POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel:  (302) 984-6000
Fax:  (302) 658-1192

Laurie S. Silverstein
Partner

Tel:  (302) 984-6033
Fax:  (302) 658-1192
lsilverstein@potteranderson.com

Rufus S. McNeill (Steve)
Associate

rmcneill@potteranderson.com

4

**PENSION BENEFIT GUARANTY CORPORATION**
United States Government Agency
1200 K Street NW
Washington, DC  2005-4026
Phone:  (202) 326-4020 (Ext. 3759)
   (800) 400-7242 (Ext. 3759)
Fax:  (202) 326-4112

| | |
|---|---|
| Craig Yamaoka | Tel: (202) 326-4000 x3614<br>Fax: (212) 842-2643<br>yamaoka.craig@pbgc.gov |
| Christine Fogt | Tel. (202) 326-4000 x3647<br>Fogt.Marie-Christine@pbgc.gov |
| Kartar Khalsa | khalsa.karter@pbgc.gov |
| Frank Anderson<br>*Counsel* | Tel: (202) 326-4000 x 3759<br>Fax: (202) 326-4112<br>anderson.frank@pbgc.gov |
| Cassandra Burton<br>*Counsel* | Tel: (202) 326-4000 x 6778<br>burton.cassandra@pbgc.gov |

**VERTIS, INC.**
250 West Pratt Street
Baltimore, MD  21201

| | |
|---|---|
| David Glogoff | dglogoff@vertisinc.com |
| Isaac Warren | iwarren@vertiskinc.com |

**WASHINGTON-BALTIMORE NEWSPAPER GUILD, LOCAL 32035**
10386 Eclipse Way
Columbia, MD 21044

William Salganik                          Tel:  (301) 854-0522
President                                      Cell: (410) 245-6520
                                                    billsalganik@gmail.com

*COUNSEL FOR WASHINGTON-BALTIMORE NEWSPAPER GUILD,*
*LOCAL 32035*

ZWERDLING, PAUL, KAHN & WOLLY, P.C.
1025 Connecticut Avenue, N.W.
Suite 712
Washington, DC 20036
Tel:  (202) 857-5000
Fax:  (202) 223-8417

Robert E. Paul                          rpaul@zwerdling.com

**WILLIAM NIESE**
6061 Lake Vista Drive
Bonsall, CA 92003

William Niese                            Tel:  (760) 758-7101
                                                  Cell:  (760) 758-7131
                                                  niesesr@cox.net

*COUNSEL FOR WILLIAM NIESE*

TEITELBAUM & BASKIN LLP
3 Barker Ave, Third Floor
White Plains, New York 10601
Tel:  (914) 437-7670
Fax: (914) 437-7672
NY Tel:  (646) 233-3013

Jay Teitelbaum                         Tel:  (914) 437-7670
                                                  Fax:  (914) 437-7672
                                                  Cell: (914) 714-4047
                                                  jteitelbaum@tblawllp.com

6

**WILMINGTON TRUST COMPANY**
Rodney Square North
1100 North Market Street
Wilmington, DE  19890-1600

Pat Healy                                    Tel:  (302) 636-6391
                                             Fax:  (302) 636-4149
                                             phealy@wilmingtontrust.com

*COUNSEL FOR WILMINGTON TRUST*

Brown Rudnick, LLP
Seven Times Square
New York, NY  10036

Robert Stark                                 Tel:  (212) 209-4862
                                             Fax:  (212) 938-2862
                                             rstark@brownrudnick.com

Daniel J. Saval                              Tel:  (212) 209-4905
                                             Fax:  (212) 938-2893
                                             dsaval@brownrudnick.com