# Morningstar® Document Research SM

# FORM SC TO-I/A

## TRIBUNE CO - TRBCQ

**Filed: May 11, 2007 (period: )**

Amendment to a previously filed SC TO-I

<u>QuickLinks</u> -- Click here to rapidly navigate through this document

# United States
# Securities and Exchange Commission
### Washington, D.C. 20549

## SCHEDULE TO
### (Amendment No. 5)

Tender Offer Statement Under Section 14(d)(1) or 13(e)(1)
of the Securities Exchange Act of 1934

# TRIBUNE COMPANY
*(Name of Subject Company (Issuer))*

# TRIBUNE COMPANY
*(Issuer)*

**Common Stock, Par Value $0.01 Per Share**
**(including the associated Preferred Share Purchase Rights)**
*(Title of Class of Securities)*

896047 10 7
*(CUSIP Number of Class of Securities)*

**Crane H. Kenney**
**Senior Vice President,**
**General Counsel and Secretary**
**Tribune Company**
**435 North Michigan Avenue**
**Chicago, Illinois 60611**
**(312) 222-9100**
*(Name, address and telephone number of person authorized to receive notices*
*and communications on behalf of Filing Persons)*

*Copies to:*

| | | |
|---|---|---|
| Steven A. Rosenblum | Thomas A. Cole | Charles W. Mulaney, Jr. |
| Wachtell, Lipton, Rosen & Katz | Larry A. Barden | Richard C. Witzel, Jr. |
| 51 West 52nd Street | Sidley Austin LLP | Skadden, Arps, Slate, Meagher & Flom, LLP |
| New York, New York 10019 | One South Dearborn Street | 333 West Wacker Dr. |
| (212) 403-1000 | Chicago, Illinois 60603 | Chicago, Illinois 60606 |
| | (312) 853-7000 | (312) 407-0700 |

### CALCULATION OF FILING FEE

| Transaction Valuation* | Amount of Filing Fee** |
|---|---|
| $4,284,000,000 | $131,519 |

\*

Estimated for purposes of calculating the amount of the filing fee only, this amount is based on the purchase of 126,000,000 shares of common stock at a price of $34.00 per share.

\*\*

The amount of the filing fee, calculated in accordance with Rule 0-11 of the Securities Exchange Act of 1934, as amended, equals $30.70 per million of the value of the transaction.

☒   Check the box if any part of the filing fee is offset as provided by Rule 0-11(a)(2) and identify the filing with which the offsetting fee was previously paid. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

Amount Previously Paid: $131,519.00

Filing Party: Tribune Company

Form or Registration No.: Schedule TO

Date Filed: April 25, 2007

☐   Check the box if the filing relates solely to preliminary communications made before the commencement of a tender offer.

Check the appropriate boxes below to designate any transaction to which the statement relates:

☐   third party tender offer subject to Rule 14d-1.

☒   issuer tender offer subject to Rule 13e-4.

☒   going private transaction subject to Rule 13e-3.

☐   amendment to Schedule 13D under Rule 13d-2.

Check the following box if the filing is a final amendment reporting the results of the tender offer: ☐

## INTRODUCTION

This Amendment No. 5 (this "Amendment No. 5") amends and supplements Amendment No. 4 filed with the Securities and Exchange Commission (the "SEC") on May 4, 2007, Amendment No. 3 filed with the SEC on May 1, 2007, Amendment No. 2 filed with the SEC on April 27, 2007, Amendment No. 1 filed with the SEC on April 26, 2007 and the Tender Offer Statement and Rule 13e-3 Transaction Statement under cover of a Schedule TO filed by Tribune Company, a Delaware corporation (the "Company"), on April 25, 2007 (as amended, the "Schedule TO"), in connection with the Agreement and Plan of Merger, dated as of April 1, 2007 (the "Merger Agreement"), by and among the Company, GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP and, for limited purposes, EGI-TRB, L.L.C., a Delaware limited liability company wholly owned by a trust established for the benefit of Samuel Zell and his family. In connection with the Merger Agreement, the Company is offering to purchase up to 126,000,000 shares of its common stock, par value $0.01 per share, including the associated preferred share purchase rights issued under the Rights Agreement, dated as of December 12, 1997, as amended, between the Company and Computershare Trust Company, N.A. (as successor to First Chicago Trust Company of New York), as Rights Agent, at a price of $34.00 per share, net to the seller in cash, less any applicable withholding taxes and without interest, upon the terms and subject to the conditions set forth in the Offer to Purchase, dated April 25, 2007 (the "Offer to Purchase"), and in the related Letter of Transmittal (the "Letter of Transmittal," which, together with the Offer to Purchase, as amended or supplemented from time to time, constitute the "Tender Offer"), copies of which are attached to the Schedule TO as Exhibits (a)(1)(A) and (a)(1)(B), respectively.

The information in the Tender Offer, including all schedules and annexes thereto, which were previously filed with the Schedule TO, is hereby expressly incorporated by reference into this Amendment No. 5, except that such information is hereby amended and supplemented to the extent specifically provided herein.

## Item 4. *Terms of the Transaction.*

Item 4(a) of the Schedule TO is hereby amended and supplemented by adding the following at the end thereof:

As discussed in the Offer to Purchase under "The Tender Offer—Conditions of the Tender Offer," one of the conditions to the Tender Offer is the receipt of an opinion from Valuation Research Corporation or another nationally recognized valuation firm satisfactory to the Company, in form and substance satisfactory to the Company, as to the solvency of the Company after giving effect to the Tender Offer. As of May 9, 2007, this condition has been satisfied. The opinion of Valuation Research Corporation is attached hereto as Exhibit (c)(11). For additional information, see "Special Factors—Opinion of Valuation Research Corporation."

## Item 10. *Financial Statements.*

Item 10 of the Schedule TO is hereby amended and supplemented by amending and supplementing the information set forth in the Offer to Purchase under "The Tender Offer—Certain Financial Information" by adding the following at the end of the subsection entitled "Summary Historical Consolidated Financial Data":

*Historical Financial Information.*   We incorporate by reference the financial statements and notes thereto set forth in Item 1 of our Quarterly Report on Form 10-Q for the quarterly period ended April 1, 2007. You should refer to "The Tender Offer—Information About Tribune

Source: TRIBUNE CO, SC TO-I/A, May 11, 2007                    Powered by Morningstar® Document Research℠

Company" for instructions on how you can obtain copies of our SEC filings, including filings that contain our financial statements.

   *Summary Historical Consolidated Financial Data.*    The following table sets forth our summary historical consolidated financial data for the quarterly periods ended April 1, 2007 and March 26, 2006, certain selected ratios for the quarterly periods ended April 1, 2007 and March 26, 2006, and our financial position at April 1, 2007. This financial data has been derived from, and should be read in conjunction with, our audited consolidated financial statements and the related notes filed as part of our Annual Report on Form 10-K for the year ended December 31, 2006 and our unaudited consolidated financial statements and the related notes filed as part of our Quarterly Report on Form 10-Q for the quarterly period ended April 1, 2007. Financial data for the quarterly periods ended April 1, 2007 and March 26, 2006, and the selected ratios for the quarterly periods ended April 1, 2007 and March 26, 2006 are unaudited and, in the opinion of our management, include all adjustments necessary for a fair presentation of the data. The results of operations for the interim periods are not necessarily indicative of the results to be expected for the entire year.

3

Powered by Morningstar® Document Research℠

**TRIBUNE COMPANY AND SUBSIDIARIES**
**CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS**
(In thousands of dollars, except per share data)
(Unaudited)

| | First Quarter Ended | |
| --- | --- | --- |
| | April 1, 2007 | March 26, 2006 |
| Operating Revenues | $ 1,214,502 | $ 1,269,421 |
| | | |
| **Operating Expenses** | | |
| Cost of sales (exclusive of items shown below) | 617,032 | 631,369 |
| Selling, general and administrative | 358,976 | 366,591 |
| Depreciation | 52,025 | 49,870 |
| Amortization of intangible assets | 5,007 | 4,690 |
| | | |
| Total operating expenses | 1,033,040 | 1,052,520 |
| | | |
| Operating Profit | 181,462 | 216,901 |
| Net income on equity investments | 12,684 | 6,548 |
| Interest and dividend income | 3,154 | 2,180 |
| Interest expense | (83,249) | (48,772) |
| Loss on change in fair values of derivatives and related investments | (69,780) | (10,317) |
| Gain on sales of investments, net | 73 | 3,466 |
| Other non-operating loss, net | (14,008) | (6,846) |
| | | |
| Income from Continuing Operations Before Income Taxes | 30,336 | 163,160 |
| Income taxes | (19,257) | (64,004) |
| | | |
| Income from Continuing Operations | 11,079 | 99,156 |
| | | |
| Income (Loss) from Discontinued Operations, net of tax | (34,374) | 3,608 |
| | | |
| Net Income (Loss) | (23,295) | 102,764 |
| Preferred dividends | — | (2,103) |
| | | |
| Net Income (Loss) Attributable to Common Shares | $ (23,295) | $ 100,661 |
| | | |
| **Earnings (Loss) Per Share:** | | |
| Basic: | | |
| Continuing operations | $ .05 | $ .32 |
| Discontinued operations | (.14) | .01 |
| | | |
| Net income (loss) | $ (.10) | $ .33 |
| | | |
| Diluted: | | |
| Continuing operations | $ .05 | $ .32 |
| Discontinued operations | (.14) | .01 |
| | | |
| Net income (loss) | $ (.10) | $ .33 |
| | | |
| Dividends per common share | $ .18 | $ .18 |

4

Powered by Morningstar® Document Research℠

**Summary Historical Consolidated Financial Data**

| | Three Months Ended | |
| --- | --- | --- |
| | April 1, 2007 | March 26, 2006 |
| | (unaudited) | |
| **Selected Ratio:** | | |
| Ratio of earnings to fixed charges | 1.7x | 4.0x |

| | At April 1, 2007 |
| --- | --- |
| | (unaudited) |
| | (Dollars in thousands, except per share amounts) |
| **Financial Position:** | |
| Assets | $ 13,183,924 |
| Current liabilities | 2,454,709 |
| Long-term debt | 3,608,570 |
| Other non-current liabilities | 2,816,225 |
| Shareholders' equity | 4,304,420 |
| Book value per common share | $ 17.89 |

5

Powered by Morningstar® Document Research℠

Item 10 of the Schedule TO is hereby further amended and supplemented by amending and supplementing the information set forth in the Offer to Purchase under "The Tender Offer—Certain Financial Information" by adding the following at the end of the subsection entitled "Summary Unaudited Pro Forma Consolidated Financial Data":

The following unaudited pro forma condensed consolidated financial statements present the Company's pro forma consolidated financial position at April 1, 2007 and its pro forma consolidated results of operations for the quarter then ended. These unaudited pro forma consolidated financial statements are derived from our historical unaudited condensed consolidated financial statements and give effect to the repurchase of shares of Company Common Stock pursuant to the Tender Offer and the related refinancings of certain indebtedness of the Company, as if such repurchase and refinancings had occurred at the beginning of fiscal year 2006 for purposes of the pro forma condensed consolidated statement of income and as if such repurchase and refinancings had occurred at the end of the first fiscal quarter of 2007 for purposes of the pro forma condensed consolidated balance sheet. In addition, these unaudited pro forma condensed consolidated financial statements give effect to the Step One Purchase Transaction as if such transaction had been consummated at the beginning of fiscal year 2006 for purposes of the pro forma condensed consolidated statement of income and as if such transaction had been consummated at the end of the first fiscal quarter of 2007 for purposes of the pro forma condensed consolidated balance sheet.

The unaudited pro forma condensed consolidated financial statements include adjustments directly attributable to the Tender Offer and related refinancings that are expected to have a continuing impact on the Company. The unaudited pro forma condensed consolidated financial statements do not give effect to the consummation of the Merger, the repayment of the Exchangeable Note held by the Zell Entity or the issuance of the $225 million Subordinated Note or the 15-year Warrant to the Zell Entity in the Step Two Purchase Transaction because the consummation of such transactions is subject to the satisfaction of certain conditions, including stockholder approval, receipt of financing, FCC approval and the receipt of a solvency opinion. The pro forma adjustments are described in the accompanying notes to the unaudited pro forma condensed consolidated financial statements. We believe the assumptions used, and pro forma adjustments derived from such assumptions, are reasonable based upon currently available information. However, such adjustments are subject to change based on finalization of the Tender Offer and related refinancings. The Tender Offer is subject to a number of conditions, and there can be no assurance that the Tender Offer will be consummated or when such consummation might occur.

These unaudited pro forma condensed consolidated financial statements should be read in conjunction with our audited consolidated financial statements and the related notes filed as part of our Annual Report on Form 10-K for the year ended December 31, 2006 and our unaudited condensed consolidated financial statements and the related notes filed as part of our Quarterly Report on Form 10-Q for the quarterly period ended April 1, 2007, which are incorporated herein by reference. These unaudited pro forma condensed consolidated financial statements are not necessarily indicative of either our financial position or the results of operations that actually would have been attained had the repurchase of shares of Company Common Stock and related refinancings pursuant to the Tender Offer, and consummation of the Step One Purchase Transaction, been completed at the dates indicated, or that will be achieved in the future. These unaudited pro forma condensed consolidated financial statements have been included herein for informational and comparative purposes only. Our future results are subject to prevailing economic and industry specific conditions and financial, business and other known and unknown risks and uncertainties, certain of which are beyond our control. These factors include, without limitation, those described in this Offer to Purchase under "Cautionary Note on Forward-Looking Statements."

6

**Pro Forma Condensed Consolidated Statement of Income (Unaudited)**

| | First Quarter Ended April 1, 2007 | | |
| --- | --- | --- | --- |
| | Historical | Pro Forma Adjustments | Pro Forma |
| | (In thousands, except per share data) | | |
| **Operating Revenues** | $ 1,214,502 | $ — | $ 1,214,502 |
| **Operating Expenses** | | | |
| Cost of sales (exclusive of items shown below) | 617,032 | — | 617,032 |
| Selling, general and administrative | 358,976 | — | 358,976 |
| Depreciation | 52,025 | — | 52,025 |
| Amortization of intangible assets | 5,007 | | 5,007 |
| Total operating expenses | 1,033,040 | | 1,033,040 |
| **Operating Profit** | 181,462 | — | 181,462 |
| Net income on equity investments | 12,684 | — | 12,684 |
| Interest and dividend income | 3,154 | | 3,154 |
| Interest expense | (83,249) | (99,345)(a) | (182,594) |
| Loss on change in fair values of derivatives and related investments | (69,780) | — | (69,780) |
| Gain on sales of investments, net | 73 | — | 73 |
| Other non-operating loss, net | (14,008) | — | (14,008) |
| **Income from Continuing Operations Before Income Taxes** | 30,336 | (99,345) | (69,009) |
| Income taxes | (19,257) | 37,254 (b) | 17,997 |
| **Income from Continuing Operations** | $ 11,079 | $ (62,090) | $ (51,011) |
| **Earnings Per Share from Continuing Operations** | | | |
| Basic | $ 0.05 | | $ (.44) |
| Diluted | $ 0.05 | | $ (.40) |
| **Weighted-average Common Shares Outstanding** | | | |
| Basic | 239,959 | (124,529)(c) | 115,430 |
| Diluted | 242,052 | (118,647)(c) | 123,405 |
| Book value per common share | $ 17.89 | | $ 0.47 |
| Ratio of earnings to fixed charges | 1.7 | | 0.8 |

See "Notes to Unaudited Pro Forma Condensed Consolidated Financial Statements."

7

Powered by Morningstar® Document Research℠

## Pro Forma Condensed Consolidated Balance Sheet (Unaudited)

As of April 1, 2007

| | Historical | Pro Forma Adjustments | Pro Forma |
|---|---|---|---|
| | | (In thousands of dollars) | |
| **Assets** | | | |
| **Current Assets** | | | |
| Cash and cash equivalents | $ 182,109 | $ — | $ 182,109 |
| Accounts receivable, net | 676,973 | — | 676,973 |
| Inventories | 50,146 | — | 50,146 |
| Broadcast rights | 243,061 | — | 243,061 |
| Deferred income taxes | 79,374 | — | 79,374 |
| Assets held for sale | 4,535 | — | 4,535 |
| Prepaid expenses and other | 69,588 | — | 69,588 |
| Total current assets | 1,305,786 | — | 1,305,786 |
| **Properties** | | | |
| Property, plant and equipment | 3,586,372 | — | 3,586,372 |
| Accumulated depreciation | (1,940,230) | — | (1,940,230) |
| Net properties | 1,646,142 | — | 1,646,142 |
| **Other Assets** | | | |
| Broadcast rights | 250,984 | — | 250,984 |
| Goodwill | 5,780,251 | — | 5,780,251 |
| Other intangible assets, net | 2,807,545 | — | 2,807,545 |
| Time Warner stock related to PHONES debt | 315,520 | — | 315,520 |
| Other investments | 536,526 | — | 536,526 |
| Prepaid pension costs | 307,207 | — | 307,207 |
| Assets held for sale | 84,681 | — | 84,681 |
| Other | 149,282 | 113,368 (d) | 262,650 |
| Total other assets | 10,231,996 | 113,368 | 10,345,364 |
| Total assets | $ 13,183,924 | $ 113,368 | $ 13,297,292 |
| **Liabilities and Shareholders' Equity** | | | |
| **Current Liabilities** | | | |
| Borrowings under bridge credit facility | $ 1,325,000 | $ (1,325,000)(e) | $ — |
| Other debt due within one year | 22,664 | — | 22,664 |
| Contracts payable for broadcast rights | 290,927 | — | 290,927 |
| Deferred income | 205,837 | — | 205,837 |
| Accounts payable, accrued expenses and other current liabilities | 610,281 | (6,237)(d) | 604,044 |
| Total current liabilities | 2,454,709 | (1,331,237) | 1,123,472 |
| **Long-Term Debt** | | | |
| PHONES debt related to Time Warner stock | 612,080 | — | 612,080 |
| Other long-term debt (less portions due within one year) | 2,996,490 | 5,694,520 (e) | 8,691,010 |
| Total long-term debt | 3,608,570 | 5,694,520 | 9,303,090 |
| **Other Non-Current Liabilities** | | | |
| Deferred income taxes | 1,897,399 | — | 1,897,399 |
| Contracts payable for broadcast rights | 377,785 | — | 377,785 |
| Compensation and other obligations | 541,041 | — | 541,041 |
| Total other non-current liabilities | 2,816,225 | | 2,816,225 |
| **Shareholders' Equity** | | | |
| Common stock and additional paid-in capital | 6,870,377 | (1,793,879)(g) | 5,076,498 |
| Retained earnings | 3,016,452 | (10,395)(d) | 510,314 |
| | | (101)(f) | |
| | | (2,495,641)(g) | |
| Treasury common stock (at cost) | (4,972,072) | 50,101 (f) | (4,921,971) |
| Unearned ESOP shares | (250,000) | — | (250,000) |
| Accumulated other comprehensive income (loss) | (360,337) | — | (360,337) |

| | | | | | |
|---|---|---|---|---|---|
| Total shareholders' equity | | 4,304,420 | (4,249,915) | | 54,505 |
| Total liabilities and shareholders' equity | $ | 13,183,924 | $ 113,368 | $ | 13,297,292 |

See "Notes to Unaudited Pro Forma Condensed Consolidated Financial Statements."

8

Powered by Morningstar® Document Research℠

**Notes to Unaudited Pro Forma Condensed Consolidated Financial Statements**

On April 1, 2007, our Board, based on the recommendation of the Special Committee, approved the Company's entry into the Leveraged ESOP Transactions. In connection with the Leveraged ESOP Transactions, the Company agreed to launch the Tender Offer to repurchase up to 126,000,000 shares of Company Common Stock that are currently outstanding at a price of $34.00 per share. On April 1, 2007, the Company also entered into the Zell Entity Purchase Agreement and the ESOP Purchase Agreement. The terms of these agreements included the following:

- Pursuant to the ESOP Purchase Agreement, on April 1, 2007, the ESOP purchased from the Company 8,928,571 shares of Company Common Stock at a price of $28.00 per share. The ESOP paid for this purchase with a promissory note of the ESOP in favor of the Company in the principal amount of $250 million, to be repaid by the ESOP over the 30-year life of the loan through its use of annual contributions from the Company to the ESOP and/or distributions paid on the shares of Company Common Stock held by the ESOP.

- Pursuant to the Zell Entity Purchase Agreement, on April 23, 2007, the Zell Entity made an initial investment of $250 million in the Company in exchange for (1) 1,470,588 shares of Company Common Stock at $34.00 per share and (2) an unsecured subordinated exchangeable promissory note of the Company in the principal amount of $200 million. The promissory note is exchangeable at the Company's option, or automatically upon termination of the Merger Agreement, into an aggregate of 5,882,353 shares of Company Common Stock, subject to antidilution adjustments.

To finance the Tender Offer and to refinance indebtedness under its existing credit facilities, the Company has secured financing commitments from certain lenders.

The unaudited pro forma condensed consolidated statement of income does not reflect material non-recurring charges, which we anticipate will affect income from continuing operations within 12 months following the Tender Offer and related refinancings. The most significant of these charges are costs related to the extinguishment of the Company's existing term facility and bridge credit facility. We currently estimate that the income statement charges related to the extinguishment will be approximately $9 million after-tax. The unaudited pro forma condensed consolidated balance sheet reflects the impact of these non-recurring charges.

The pro forma adjustments for the Tender Offer and related refinancings, and the Step One Purchase Transaction are described below.

*(a)*

The pro forma interest expense adjustment assumes the issuance of approximately $7.0 billion of new variable rate debt to finance the Tender Offer, and to refinance the Company's existing term facility and bridge credit facility. A rate of 7.86%, based on LIBOR (at May 9, 2007) plus a spread of 2.5%, has been used to compute pro forma interest expense on the new borrowings. The pro forma interest expense adjustment is net of the historical interest expense on the Company's term facility and bridge credit facility that were assumed to be refinanced and includes the amortization of estimated debt issuance costs of $130 million using an average life of seven years. A one-eighth percentage point change in the assumed interest rate on the new borrowings would increase or decrease pro forma interest expense by approximately $9 million.

In addition, the pro forma interest expense adjustment also includes interest on the $200 million subordinated exchangeable promissory note issued in connection with the Zell Entity Purchase Agreement. A rate of 4.81%, based on the rate specified in the Zell Entity Purchase Agreement, has been used to compute interest expense on the promissory note.

9

Powered by Morningstar® Document Research℠

The following table summarizes the pro forma interest expense adjustment.

**Pro forma interest expense adjustment ($ in millions)**

| | |
|---|---:|
| New variable rate debt | $ 138 |
| $200 million promissory note | 2 |
| Amortization of debt issuance costs | 5 |
| Less: existing term facility | (25) |
| Less: existing bridge credit facility | (21) |
| Interest expense adjustment | $ 99 |

(b)

Reflects the income tax effect of the pro forma interest expense adjustment utilizing the applicable statutory tax rate for the quarter ended April 1, 2007.

(c)

The pro forma adjustment to basic weighted-average common shares outstanding reflects the repurchase of 126,000,000 shares of Company Common Stock and the issuance of 1,470,588 shares of Company Common Stock as of the beginning of fiscal year 2006 in connection with the Zell Entity Purchase Agreement. The pro forma adjustment to diluted weighted-average common shares outstanding also reflects the assumed conversion of the $200 million promissory note into 5,882,353 shares of Company Common Stock as of the beginning of fiscal year 2006.

(d)

Reflects $130 million of debt issuance costs in connection with the new borrowings and the write-off of $17 million of debt issuance costs ($10 million after-tax) as a result of the extinguishment of the term facility and bridge credit facility.

(e)

To record the issuance of the new borrowings and the refinancing of the existing term facility and existing bridge credit facility.

(f)

To record the issuance of shares of Company Common Stock to the Zell Entity in connection with the Step One Purchase Transaction. The shares were assumed to have been issued from our existing treasury common stock at the average value of $34.07 per share.

(g)

To record the repurchase and subsequent retirement of 126,000,000 of Company Common Stock at $34.00 per share in connection with the Tender Offer, including $5.5 million of related transaction costs.

## Item 12. *Exhibits*.

Item 12 of the Schedule TO is hereby amended and supplemented by adding the following exhibits:

(a)(5)(J)    Press Release of Tribune Company, dated May 9, 2007 (incorporated by reference to Exhibit 99.1 of the Company's Current Report on Form 8-K, filed with the Securities and Exchange Commission on May 10, 2007).

(c)(11)    Opinion of Valuation Research Corporation, dated May 9, 2007.

(c)(12)    Tribune Company Solvency Opinion Analysis, dated May 9, 2007, prepared by Valuation Research Corporation for the Board of Directors of Tribune.

10

Powered by Morningstar® Document Research℠

**Item 13.** *Additional Information Required by Schedule 13E-3.*

**Schedule 13E-3, Item 9. Reports, Opinions, Appraisals and Negotiations**

Item 13, Schedule 13E-3, Item 9(a), of the Schedule TO is hereby amended and supplemented by amending and supplementing the information set forth in the Offer to Purchase by adding the following new section after the section entitled "Special Factors—Opinion of the Company's Financial Advisor":

**Opinion of Valuation Research Corporation**

The Company has engaged Valuation Research Corporation ("VRC") to conduct and provide solvency and capital adequacy analyses and solvency and capital adequacy opinions to the Company after giving effect to the Step One Transactions (as defined below), and subsequent solvency and capital adequacy analyses and solvency and capital adequacy opinions in connection with the Merger and related transactions. The Company selected VRC based on its qualifications, expertise and reputation in providing valuation and solvency opinions.

On May 9, 2007, VRC made a presentation to the Board and provided the Board with a written opinion stating that, as of such date: (1) immediately before giving effect to the consummation of the Step One Transactions, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune exceeds its liabilities (including the Stated Liabilities and the Identified Contingent Liabilities) (the "Capital Reduction Test"); (2) immediately after and giving effect to the consummation of the Step One Common Stock Purchase, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune will exceed its liabilities (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), and such excess is in an amount that is not less than the capital of the Company (as determined pursuant to Section 154 of the Delaware General Corporation Law) (the "Valuation and Capital Adequacy Test"); (3) immediately after and giving effect to the consummation of the Step One Transactions, Tribune will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing) (each as defined below), as such debts mature or otherwise become absolute or due (the "Cash Flow Test"); and (4) immediately after and giving effect to the consummation of the Step One Transactions, Tribune Does Not Have Unreasonably Small Capital (as defined below) (the "Capitalization Test").

The full text of VRC's written opinion, dated as of May 9, 2007, which sets forth the assumptions made, procedures followed, matters considered and qualifications and limitations of the reviews undertaken in rendering its opinion, is attached as Exhibit (c)(11) to the Schedule TO, and incorporated herein by reference. The written presentation materials provided by VRC to the Board on May 9, 2007 is attached as Exhibit (c)(12) to the Schedule TO, and incorporated herein by reference. The summary below is qualified by reference to the full text of the opinion and the written presentation. We encourage you to read the full text of the opinion in its entirety. VRC's opinion is directed to the Board, addresses only the matters set forth therein, and does not constitute a recommendation to any stockholder of the Company as to whether such stockholder should tender shares in the Tender Offer.

Furthermore, VRC's opinion does not represent an assurance, guarantee, or warranty that the Company will not default on any of its debt obligations or other liabilities in either the Step One Transactions or Step Two Transactions (as defined below), nor does the opinion provide any assurance, guarantee, or warranty that any covenants, financial or otherwise, associated with any financing will not be breached in the future.

11

In its presentation to the Board on May 9, 2007, VRC reviewed the Valuation and Capital Adequacy Test, the Cash Flow Test, the Capitalization Test and the Capital Reduction Test. In connection with the Valuation and Capital Adequacy Test, VRC estimated the Fair Value and Present Fair Saleable Value of the Company by using comparable companies, comparable transactions, sum of individual assets, and discounted cash flow valuation methodologies. VRC estimated Fair Value and Present Fair Saleable Value ranges of approximately $13.9 billion to $16.4 billion for the Company's aggregate assets including goodwill, with a midpoint of $15.1 billion. For VRC's analysis, aggregate assets including goodwill is represented by enterprise value. VRC's corresponding estimates for the Company's equity value as a percent of enterprise value ranged from a low of 32.5 percent to a high of 42.8 percent, with a midpoint of 38.1 percent. With respect to the Cash Flow Test, VRC estimated net cash flow, after scheduled debt repayments, of $211.0 million, $175.0 million, $437.1 million, $67.1 million, $553.2 million, $611.2 million and $579.7 million in 2007 through 2013, respectively. It also reviewed sensitivity cash flow cases showing lower, but still positive, cash flows after scheduled debt repayments in all years from 2007 to 2013 except 2010. In the 2010 sensitivity cash flow case, VRC estimated that the Company would have to draw down approximately $82.6 million on its revolving credit facility. However, VRC believes that the Company maintains adequate liquidity in the 2010 sensitivity cash flow case by maintaining an estimated $174.7 million of cash and $667.4 million of availability under its $750 million revolving credit facility. With respect to the Capitalization Test, VRC discussed the post-transaction relative equity value of the Company, as well as various sensitivity tests it had conducted. It estimated a post-transaction equity value range of approximately $4.5 billion to $7.0 billion. With respect to the Capital Reduction Test, VRC estimates the Company's equity value as a percent of enterprise value ranged from a low of 69.4 percent to a high of 74.0 percent, with a midpoint of 71.9 percent.

In rendering its opinion, VRC estimated the Fair Value and Present Fair Saleable Value of the aggregate assets of the Company on a consolidated basis immediately after and giving effect to the consummation of the following transactions: (1) the purchase by the Zell Entity of newly issued Company Common Stock for an aggregate purchase price of $50 million in cash, and an exchangeable note for a purchase price of $200 million in cash, (2) the ESOP Purchase Agreement, (3) the borrowing by the Company of debt of approximately $7.0 billion under the First Step Credit Facilities, (4) the Tender Offer, (5) the refinancing of existing debt of approximately $2.4 billion in accordance with the First Step Credit Facilities, (6) the roll-over of certain existing debt of approximately $2.4 billion and (7) the payment of financing and other transaction fees of approximately $152 million (collectively, the "Step One Transactions"). For purposes of VRC's opinion, the following terms have the meanings set forth below:

(1) "Fair Value" means the amount at which the aggregate or total assets of the Company would change hands between a willing buyer and a willing seller, within a commercially reasonable period of time, each having reasonable knowledge of the relevant facts, neither being under any compulsion to act.

(2) "Present Fair Saleable Value" means with respect to the assets of the Company, the amount that may be realized if such aggregate assets are sold with reasonable promptness.

(3) "Does Not Have Unreasonably Small Capital" means, with respect to the Company, that the Company does not lack sufficient capital for the businesses in which it is engaged, and will be engaged, as management has indicated such businesses are now conducted and are proposed to be conducted.

(4) "Stated Liabilities" means the recorded liabilities of the subject entity as presented on the most recent balance sheet provided to VRC, which excludes the new financing (as defined below).

12

Powered by Morningstar® Document Research℠

(5) "Step Two Transactions" means: (i) the borrowing by the Company of additional debt of approximately $4.2 billion; (ii) the repayment by the Company of the exchangeable note acquired by the Zell Entity under the Zell Entity Purchase Agreement; (iii) the closing of the Merger; (iv) the purchase by the Zell Entity from the Company of a subordinated note for $225 million and the purchase by the Zell Entity of the Warrant; (v) the roll-over of certain existing debt of approximately $9.1 billion; (vi) the payment of cash distributions triggered by a change of control of approximately $104 million; (vii) the payment of financing and other transaction fees of approximately $120 million; (viii) the election of an S-Corporation status following the Merger; and (ix) the sale of the Chicago Cubs and interest in Comcast SportsNet Chicago.

(6) "New Financing" means the indebtedness incurred, assumed or guaranteed by the Company in connection with the Step One Transactions.

(7) "Identified Contingent Liabilities" means the reasonably estimated contingent liabilities that may result from threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, contract obligations, uninsured risks, purchase obligations, taxes, and other contingent liabilities as identified and explained to VRC by the Company in terms of their nature, expected timing and estimated dollar amount by responsible officers of the Company.

VRC's opinion was based on, among other things, its solvency and capital adequacy analyses following a review of certain of the Company's public filings, discussions with management, review of industry data, and review of information provided by the Company including the forecasts reflected in VRC's written presentation included as Exhibit (c)(12) to the Schedule TO.

In rendering its opinion, VRC assumed and relied upon the accuracy and completeness of all information, data and other material (including certain financial forecasts) furnished or otherwise made available to it by the Company, discussed with or reviewed by VRC with the Company, or publicly available, and VRC did not assume any responsibility for independently verifying such information, data or materials. Nothing came to the attention of VRC to lead it to believe that it was unreasonable for VRC to utilize and rely upon such financial forecasts, information and data.

VRC's opinion was based on, among other things, the assumptions that: (1) the Company will be able to refinance debts when they mature and that it will not make acquisitions or dispositions other than those assumed during the forecast period based on the financial forecasts provided to VRC; and (2) that the Step One Transactions will be consummated in accordance with the terms and conditions of the ESOP Transaction Model dated April 2007, term sheets or Step One Transactions agreements provided to VRC and that the Company is in compliance in all material respects with any and all applicable laws, rules or regulations of any and all legal or regulatory authorities.

The Company also expects that VRC will provide a solvency opinion in connection with the Merger. The Company's receipt of a satisfactory solvency opinion giving effect to the Merger and related transactions is a condition to consummation of the Merger. The Company will pay VRC fees of $1.5 million for services rendered in connection with delivering these opinions plus expenses.

In 2006, VRC provided real estate appraisal services to the Company in connection with the restructuring of the TMCT LLCs, for which it was paid customary fees.

Item 13, Schedule 13E-3, Item 9(b), of the Schedule TO is hereby amended by adding the following at the end thereof:

The information set forth in the Offer to Purchase under "Special Factors—Opinion of Valuation Research Corporation" is incorporated herein by reference.

13

Powered by Morningstar® Document Research℠

Item 13, Schedule 13E-3, Item 9(c), of the Schedule TO is hereby amended by adding the following after the first sentence thereof:

The materials attached as Exhibits (c)(11) and (c)(12) to the Offer to Purchase are incorporated herein by reference.

14

## SIGNATURE

After due inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Date: May 10, 2007

TRIBUNE COMPANY

By:    /s/ CRANE H. KENNEY

Name: Crane H. Kenney
Title: Senior Vice President, General Counsel and Secretary

15

### Exhibit Index

| | |
|---|---|
| (a)(1)(A)* | Offer to Purchase, dated April 25, 2007. |
| (a)(1)(B)* | Letter of Transmittal including Guidelines for Certification of Taxpayer Identification Number on Substitute Form W-9. |
| (a)(1)(C)* | Notice of Guaranteed Delivery. |
| (a)(1)(D)* | Letter to Brokers, Dealers, Commercial Banks, Trust Companies and Other Nominees, dated April 25, 2007. |
| (a)(1)(E)* | Letter to Clients for use by Brokers, Dealers, Commercial Banks, Trust Companies and Other Nominees, dated April 25, 2007. |
| (a)(1)(F)* | Form of Summary Advertisement, dated April 25, 2007. |
| (a)(1)(G)* | Form of Letter From Tribune Company to Participants in the Tribune Company Employee Stock Purchase Plan, dated April 25, 2007. |
| (a)(1)(H)* | Form of Letter From the Northern Trust Company to Participants in the Tribune Company Retirement Plans, dated April 25, 2007. |
| (a)(2) | Not Applicable. |
| (a)(3) | Not Applicable. |
| (a)(4) | Not Applicable. |
| (a)(5)(A)* | First Amended Complaint filed in the Superior Court of California, Los Angeles County, captioned Garamella v. FitzSimons, et al., Case No. BC362110, filed on April 4, 2007. |
| (a)(5)(B)* | Complaint filed in the Chancery Division of the Circuit Court of Cook County, Illinois, captioned Simpson v. Tribune Co., et al., Case No. 07CH9519, filed on April 5, 2007. |
| (a)(5)(C)** | Tender Offer Employee Questions and Answers, made available April 25, 2007. |
| (a)(5)(D)** | Press Release, dated April 25, 2007. |
| (a)(5)(E)** | Tender Offer Employee Questions and Answers, made available April 26, 2007. |
| (a)(5)(F)*** | Transcript of a video message addressed to Tribune employees on April 27, 2007. |
| (a)(5)(G)*** | Tender Offer Employee Questions and Answers, made available April 27, 2007. |
| (a)(5)(H)**** | Tender Offer Employee Question and Answer, made available May 1, 2007. |
| (a)(5)(I)***** | Tender Offer Employee Questions and Answers, made available May 4, 2007. |
| (a)(5)(J) | Press Release of Tribune Company, dated May 9, 2007 (incorporated by reference to Exhibit 99.1 of the Company's Current Report on Form 8-K, filed with the Securities and Exchange Commission on May 10, 2007). |
| (b)(1)(A) | Amended and Restated First Step Commitment Letter, dated as of April 5, 2007, by and among Tribune Company, J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., Banc of America Securities LLC and Bank of America, N.A., incorporated by reference to Exhibit 10.10 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (b)(1)(B) | Amended and Restated Second Step Commitment Letter, dated as of April 5, 2007, by and among Tribune Company, J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., Banc of America Securities LLC, Banc of America Bridge LLC and Bank of America, N.A., incorporated by reference to Exhibit 10.11 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (b)(2)(A)* | Exhibit A to Amended and Restated First Step Commitment Letter, dated as of April 5, 2007, by and among Tribune Company, J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., Banc of America Securities LLC and Bank of America, N.A. |

16

Powered by Morningstar® Document Research℠

| | |
|---|---|
| (b)(2)(B)* | Exhibit A to Amended and Restated Second Step Commitment Letter, dated as of April 5, 2007, by and among Tribune Company, J.P. Morgan Securities Inc., JPMorgan Chase Bank, N.A., Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., Banc of America Securities LLC, Banc of America Bridge LLC and Bank of America, N.A. |
| (c)(1)* | Opinion of Morgan Stanley & Co. Incorporated, dated April 1, 2007 (included as Annex I to this Statement). |
| (c)(2)* | Opinion of Merrill Lynch & Co., dated April 1, 2007 (included as Annex II to this Statement). |
| (c)(3)* | Excerpt from financial analysis presentation materials, dated February 12, 2007, prepared by Merrill Lynch & Co. and Citigroup Global Markets Inc., for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(4)* | Excerpt from financial analysis presentation materials, dated February 24, 2007, prepared by Merrill Lynch & Co. and Citigroup Global Markets Inc., for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(5)* | Financial analysis presentation materials, dated March 21, 2007, prepared by Merrill Lynch & Co. and Citigroup Global Markets Inc., for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(6)* | Financial analysis presentation materials, dated March 30, 2007, prepared by Merrill Lynch & Co. and Citigroup Global Markets Inc., for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(7)* | Financial analysis presentation materials, dated March 21, 2007, prepared by Morgan Stanley & Co. Incorporated, for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(8)* | Financial analysis presentation materials, dated March 30, 2007, prepared by Morgan Stanley & Co. Incorporated, for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(9)* | Financial analysis presentation materials, dated March 30, 2007, prepared by Morgan Stanley & Co. Incorporated, for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(10)* | Financial analysis presentation materials, dated April 1, 2007, prepared by Morgan Stanley & Co. Incorporated, for the Committee of Independent Directors of the Board of Directors of Tribune. |
| (c)(11)****** | Opinion of Valuation Research Corporation, dated May 9, 2007. |
| (c)(12)****** | Tribune Company Solvency Opinion Analysis, dated May 9, 2007, prepared by Valuation Research Corporation for the Board of Directors of Tribune. |
| (d)(1) | Agreement and Plan of Merger, dated as of April 1, 2007, by and among Tribune Company, Tesop Corporation, GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan and EGI-TRB, L.L.C. (solely for the limited purposes of Section 8.12 thereof), incorporated by reference of Exhibit 10.1 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(2) | Registration Rights Agreement, dated as of April 1, 2007, by and among Tribune Company, EGI-TRB, L.L.C. and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 4.1 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |

17

| (d)(3) | Registration Rights Agreement, dated as of April 1, 2007, by and between Tribune Company and each of Chandler Trust No. 1 and Chandler Trust No. 2, incorporated by reference to Exhibit 4.2 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(4) | Securities Purchase Agreement, dated as of April 1, 2007, by and among Tribune Company, EGI-TRB, L.L.C. and Samuel Zell, incorporated by reference to Exhibit 10.2 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(5) | Form of Subordinated Exchangeable Promissory Note of Tribune Company, incorporated by reference to Exhibit 10.3 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(6) | Form of Subordinated Promissory Note of Tribune Company, incorporated by reference to Exhibit 10.4 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(7) | Form of Warrant Agreement, incorporated by reference to Exhibit 10.5 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(8) | ESOP Purchase Agreement, dated as of April 1, 2007, by and between Tribune Company and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, a separate trust created under the Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 10.6 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(9) | ESOP Loan Agreement, dated as of April 1, 2007, by and between Tribune Company and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which implements and forms a part of the Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 10.7 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(10) | ESOP Note, dated as of April 1, 2007, executed by GreatBanc Trust Company, not in its individual or corporate capacity, but solely in its capacity as trustee of the Tribune Employee Stock Ownership Trust, which implements and forms a part of the Tribune Employee Stock Ownership Plan in favor of Tribune Company, incorporated by reference to Exhibit 10.8 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(11) | ESOP Pledge Agreement, dated as of April 1, 2007, between the Company and GreatBanc Trust Company, not in its individual or corporate capacity but solely in its capacity as trustee of the Tribune Employee Stock Ownership Trust which forms a part of the Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 10.9 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(12) | Investor Rights Agreement, dated as of April 1, 2007, by and among Tribune Company, EGI-TRB, L.L.C. and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 10.12 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |

Source: TRIBUNE CO, SC TO-I/A, May 11, 2007

Powered by Morningstar® Document Research℠

| (d)(13) | Voting Agreement, dated as of April 1, 2007, by and among Tribune Company, and each of Chandler Trust No. 1 and Chandler Trust No. 2, incorporated by reference to Exhibit 10.13 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
|---|---|
| (d)(14) | Tribune Employee Stock Ownership Plan, incorporated by reference to Exhibit 10.14 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(15) | Tribune Employee Stock Ownership Trust, dated April 1, 2007, by and between Tribune Company and GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, incorporated by reference to Exhibit 10.15 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(16) | Rights Agreement between Tribune Company and First Chicago Trust Company of New York, as Rights Agent, dated as of December 12, 1997, incorporated by reference from Exhibit 4.1 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 1 to Current Report on Form 8-K, dated December 12, 1997. |
| (d)(17) | Amendment No. 1, dated as of June 12, 2000, to the Rights Agreement between Tribune Company and First Chicago Trust Company of New York, as Rights Agent, incorporated by reference from Exhibit 4.1 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 4.1 to Current Report on Form 8-K, dated June 12, 2000. |
| (d)(18) | Amendment No. 2, dated as of September 21, 2006, to the Rights Agreement between Tribune Company and Computershare Trust Company, N.A. (formerly known as EquiServe Trust Company, N.A., formerly known as First Chicago Trust Company of New York), as Rights Agent, incorporated by reference from Exhibit 4.1 to Current Report on Form 8-K, dated September 21, 2006. |
| (d)(19) | Amendment No. 3, dated as of April 1, 2007, to the Rights Agreement between Tribune Company and Computershare Trust Company, N.A. (formerly known as EquiServe Trust Company, N.A., formerly known as First Chicago Trust Company of New York), as Rights Agent, as amended by Amendment No. 1, dated as of June 12, 2000, and Amendment No. 2, dated as of September 21, 2006, incorporated by reference to Exhibit 4.3 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 5, 2007. |
| (d)(20) | Tribune Company Supplemental Retirement Plan, as amended and restated October 18, 2006, incorporated by reference from Exhibit 10.1 of the Company's Form 10-K for the fiscal year ended December 31, 2006, as filed with the Securities and Exchange Commission on February 26, 2007, incorporating by reference from Exhibit 10.3 to Current Report on Form 8-K, dated October 18, 2006. |
| (d)(21) | Tribune Company Directors' Deferred Compensation Plan, as amended and restated effective as of January 1, 2005, incorporated by reference from Exhibit 10.2 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.2 to Current Report on Form 8-K, dated December 22, 2005. |

19

Powered by Morningstar® Document Research℠

| (d)(22) | The Times Mirror Company Deferred Compensation Plan for Non-Employee Directors, incorporated by reference from Exhibit 10.3 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.7 to The Times Mirror Company's Annual Report on Form 10-K as filed March 29, 1995. |
| (d)(23) | Tribune Company Bonus Deferral Plan, as amended and restated as of October 18, 2006, incorporated by reference from Exhibit 10.4 of the Company's Form 10-K for the fiscal year ended December 31, 2006, as filed with the Securities and Exchange Commission on February 26, 2007, incorporating by reference from Exhibit 10.1 to Current Report on Form 8-K, dated October 18, 2006. |
| (d)(24) | Tribune Company 1992 Long-Term Incentive Plan, effective as of April 29, 1992, as amended April 19, 1994, incorporated by reference from Exhibit 10.5 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.11 to Annual Report on Form 10-K as filed March 22, 1995. |
| (d)(25) | First Amendment to Tribune Company 1992 Long-Term Incentive Plan, effective October 24, 2000, incorporated by reference from Exhibit 10.5a of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.6a to Annual Report on Form 10-K as filed March 27, 2001. |
| (d)(26) | Tribune Company Executive Financial Counseling Plan, effective October 19, 1988, as amended January 1, 1994, incorporated by reference from Exhibit 10.6 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.13 to Annual Report on Form 10-K as filed March 23, 1994. |
| (d)(27) | Tribune Company Transitional Compensation Plan for Executive Employees, amended and restated effective as of July 19, 2006, incorporated by reference from Exhibit 10.7 of the Company's Form 10-K for the fiscal year ended December 31, 2006, as filed with the Securities and Exchange Commission on February 26, 2007. |
| (d)(28) | Tribune Company Supplemental Defined Contribution Plan, as amended and effective as of October 18, 2006, incorporated by reference from Exhibit 10.8 of the Company's Form 10-K for the fiscal year ended December 31, 2006, as filed with the Securities and Exchange Commission on February 26, 2007, incorporating by reference from Exhibit 10.2 to Current Report on Form 8-K, dated October 18, 2006. |
| (d)(29) | Tribune Company Employee Stock Purchase Plan, as amended and restated July 27, 1999, incorporated by reference from Exhibit 10.9 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.10 to Annual Report on Form 10-K as filed March 16, 2000. |
| (d)(30) | First Amendment to Tribune Company Employee Stock Purchase Plan, as amended and restated July 27, 1999, incorporated by reference from Exhibit 10.9a of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.10a to Quarterly Report on Form 10-Q for the quarter ended September 24, 2000. |

Source: TRIBUNE CO, SC TO-I/A, May 11, 2007

Powered by Morningstar™ Document Research℠

(d)(31) Second Amendment to Tribune Company Employee Stock Purchase Plan, effective as of May 7, 2002, incorporated by reference from Exhibit 10.9b of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.8b to Annual Report on Form 10-K as filed March 12, 2003.

(d)(32) Tribune Company 1995 Non-employee Director Stock Option Plan, as amended and restated effective December 9, 2003, incorporated by reference from Exhibit 10.10 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.9 to Annual Report on Form 10-K as filed February 27, 2004.

(d)(33) Tribune Company 1996 Non-employee Director Stock Compensation Plan, as amended and restated effective January 1, 2005, incorporated by reference from Exhibit 10.11 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.4 to Current Report of Form 8-K dated December 22, 2005.

(d)(34) Tribune Company Incentive Compensation Plan, as amended and restated effective May 12, 2004, incorporated by reference from Exhibit 10.12 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.1 to Quarterly Report on Form 10-Q for the quarter ended June 27, 2004.

(d)(35) Form of Notice of Grant and Stock Option Term Sheet, incorporated by reference from Exhibit 10.12a of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.1 to Current Report on Form 8-K dated February 11, 2005.

(d)(36) Form of Restricted Stock Unit Award Notice, incorporated by reference from Exhibit 10.12b of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.1 to Current Report on Form 8-K dated February 21, 2006.

(d)(37) The Times Mirror Company 1997 Directors Stock Option Plan, incorporated by reference from Exhibit 10.13 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.15 to The Times Mirror Company's Annual Report on Form 10-K as filed March 18, 1997.

(d)(38) Limited Liability Company Agreement of TMCT, LLC, dated August 8, 1997, incorporated by reference from Exhibit 10.14 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.1 to The Times Mirror Company's Current Report on Form 8-K, dated August 8, 1997.

(d)(39) Lease Agreement between TMCT, LLC and Times Mirror, dated August 8, 1997, incorporated by reference from Exhibit 10.15 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.4 to The Times Mirror Company's Current Report on Form 8-K, dated August 8, 1997.

21

| (d)(40) | Amended and Restated Limited Liability Company Agreement of TMCT II, LLC, dated September 3, 1999, incorporated by reference from Exhibit 10.16 of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.1 to The Times Mirror Company's Current Report on Form 8-K, dated September 3, 1999. |
| (d)(41) | First Amendment to Amended and Restated Limited Liability Agreement of TMCT II, LLC, dated as of August 14, 2000, incorporated by reference from Exhibit 10.16a of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.17a to Annual Report on Form 10-K as filed March 27, 2001. |
| (d)(42) | Second Amendment to Amended and Restated Limited Liability Agreement of TMCT II, LLC, dated as of August 1, 2002, incorporated by reference from Exhibit 10.16a of the Company's Form 10-K for the fiscal year ended December 25, 2005, as filed with the Securities and Exchange Commission on February 28, 2006, incorporating by reference from Exhibit 10.14b to Annual Report on Form 10-K, as filed March 12, 2003. |
| (d)(43) | Subordinated Exchangeable Promissory Note of Tribune Company, dated April 23, 2007, incorporated by reference to Exhibit 10.1 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 24, 2007. |
| (d)(44) | Letter Agreement, dated April 23, 2007, among Tribune Company, EGI-TRB, L.L.C. and Samuel Zell, incorporated by reference to Exhibit 10.2 of the Company's Current Report on Form 8-K, as filed with the Securities and Exchange Commission on April 24, 2007. |
| (f) | Not Applicable. |
| (g) | Not Applicable. |
| (h) | Not Applicable. |

\*
Previously filed on Schedule TO on April 25, 2007.

\*\*
Previously filed on Amendment No. 1 to Schedule TO on April 26, 2007.

\*\*\*
Previously filed on Amendment No. 2 to Schedule TO on April 27, 2007.

\*\*\*\*
Previously filed on Amendment No. 3 to Schedule TO on May 1, 2007.

\*\*\*\*\*
Previously filed on Amendment No. 4 to Schedule TO on May 4, 2007.

\*\*\*\*\*\*
Filed herewith.

22

QuickLinks

INTRODUCTION

Item 4. Terms of the Transaction
Item 10. Financial Statements .
SIGNATURE
Exhibit Index

QuickLinks -- Click here to rapidly navigate through this document

Exhibit (c)(11)



May 9, 2007

Tribune Company Board of Directors
435 North Michigan Ave
Chicago, IL 60611

Ladies and Gentlemen:

Valuation Research Corporation ("VRC") has been engaged to perform certain financial advisory services in connection with a contemplated multi-step purchase transaction involving Tribune Company ("Tribune" or the "Company"). Tribune will be taken private through a two-step process involving a newly formed Tribune employee stock ownership plan (the "ESOP") and investments by EGI-TRB, L.L.C. ("EGI-TRB"), a limited liability company owned by Samuel Zell ("Zell").

The first step will involve (i) the purchase by EGI-TRB of newly issued common stock (the "Common Stock") from the Company for $34.00 per share, for an aggregate purchase price of $50 million in cash, and an exchangeable note for a purchase price of $200 million in cash (collectively, the "Step One EGI-TRB Purchase"); (ii) the purchase by the ESOP of newly issued Common Stock from the Company for $28.00 per share, for an aggregate purchase price of $250 million, which will be paid for by a note to the Company (the "ESOP Purchase"); (iii) the borrowing by the Company of debt of approximately $7.0 billion (the "Step One Debt Financing"); (iv) the purchase by the Company from its stockholders of up to 126 million shares of Common Stock at $34.00 per share, equaling approximately $4.3 billion (the "Step One Common Stock Purchase"); (v) the refinancing of existing debt of approximately $2.8 billion (the "Step One Debt Refinancing"); (vi) the roll-over of certain existing debt of approximately $2.4 billion (the "Step One Debt Roll-Over") and (vii) the payment of financing and other transaction fees of approximately $152 million (the "Step One Fees"). The Step One EGI-TRB Purchase, the ESOP Purchase, the Step One Debt Financing, the Step One Common Stock Purchase, the Step One Debt Refinancing, the Step One Debt Roll-Over, and the Step One Fees are collectively referred to as the "Step One Transactions."

The second step will involve (i) the borrowing by the Company of additional debt of approximately $4.2 billion (the "Step Two Debt Financing"); (ii) the repayment by the Company of the exchangeable note acquired by EGI-TRB in the Step One EGI-TRB Purchase (the "Step Two Repayment"); (iii) the closing of the merger (the "Merger") in which all of the remaining Common Stock, other than shares held by the ESOP (but including shares held by EGI-TRB), will be converted into the right to receive $34 per share (plus 8% annualized accretion starting January 1, 2008, if the Merger has not closed by then), for an aggregate of approximately $4.3 billion; (iv) the purchase by EGI-TRB from the Company of a subordinated note for $225 million, and the purchase by EGI-TRB from the Company of a 15-year warrant, for a purchase price of $90 million, which gives EGI-TRB the right to acquire shares of Common Stock representing 40% of the economic interest in the equity of the Company at an initial aggregate exercise price of $500 million, increasing by $10 million per year for the first 10 years to a maximum aggregate exercise price of $600 million (collectively, the "Step Two EGI-TRB Purchase"); (v) the roll-over of certain existing debt of approximately $9.1 billion (the "Step Two Debt Roll-Over"); (vi) the payment of cash distributions triggered by a change of control of approximately $104 million (the "Step Two COC Payments"); (vii) the payment of financing and other transaction fees of approximately $120 million (the "Step Two Fees"); (viii) the election of an S-Corporation status following the Merger (the "S-Corp Election") and (ix) the sale of the Chicago Cubs and interest in Comcast SportsNet Chicago, which may occur before or after the closing of the Merger (the "Cubs/Comcast Sale"). The Step Two Debt Financing, the Step Two Repayment, the Merger, the Step Two EGI-TRB Purchase, the Step Two Debt Roll-Over, the Step Two COC Payments, the Step Two Fees, the S-Corp Election and the Cubs/Comcast Sale are collectively referred to as the "Step Two Transactions." The Step One Transactions and Step Two Transactions are collectively referred to as the "Transactions."

In connection with the Step One Transactions, the Company has requested VRC's written opinion (the "Opinion"), as to the solvency and capital adequacy of Tribune, on a consolidated basis immediately after and giving effect to the consummation of the Step One Transactions, including whether each of the tests of solvency and capital adequacy defined hereinafter is satisfied. The Opinion is rendered on the basis of consummation only of the Step One Transactions and does not address consummation of the Step Two Transactions, which may be the subject of a separate opinion at the request of the Company at a future date. For purposes of the Opinion, the following terms are defined:

**Fair Value**—The amount at which the aggregate or total assets of the subject entity (including goodwill) would change hands between a willing buyer and a willing seller, within a commercially reasonable period of time, each having reasonable knowledge of the relevant facts, neither being under any compulsion to act.

**Present Fair Saleable Value**—The amount that may be realized by a willing seller from a willing buyer if the subject entity's aggregate or total assets (including goodwill) are sold with reasonable promptness.

**Does Not Have Unreasonably Small Capital**—This phrase relates to the ability of the subject entity to continue as a going concern and not lack sufficient capital for the businesses in which it is engaged, and will be engaged, as management has indicated such businesses are now conducted and are proposed to be conducted.

**Stated Liabilities**—The recorded liabilities of the subject entity as presented on the most recent balance sheet provided to VRC. Stated Liabilities exclude the New Financing.

**New Financing**—The indebtedness incurred, assumed or guaranteed by the subject entity in connection with the Step One Transactions.

**Identified Contingent Liabilities**—The reasonably estimated contingent liabilities that may result from, without limitation, threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, contract obligations, uninsured risks, purchase obligations, taxes, and other contingent liabilities as identified and explained to VRC by the Company in terms of their nature, expected timing and estimated dollar amount by responsible officers of the Company. Because Identified Contingent Liabilities are estimates of responsible officers of the Company, VRC expresses no opinion as to the completeness or propriety of such items or amounts. Except for the Identified Contingent Liabilities, VRC assumes that there are no hidden, unapparent, or unexpected conditions or circumstances (contingent or otherwise) that could affect the operating or financial conditions of the Company and accepts no responsibility for discovering any such conditions or circumstances. VRC advises the Company, however, after discussion with management with respect thereto, and based on its inquiries and its experience in reviewing such liabilities, (i) that VRC has no reason to believe that Identified Contingent Liabilities are materially understated, (ii) that VRC has reason to believe that it would be unreasonable for VRC to utilize such estimates in the course of its analysis, and (iii) that nothing has come to VRC's attention suggesting that material contingent liabilities have not been identified or disclosed.

VRC makes no representation as to the legal sufficiency for any purpose of the above definitions. Such definitions are used solely for setting forth the scope of the Opinions.

In rendering the Opinion, VRC conducted such reviews, analyses and inquiries reasonably deemed necessary or appropriate under the circumstances. Among other things, VRC has:

- Reviewed the Company's Form 10K for the period ended December 31, 2006;

- Reviewed the Company's Form 8K filed on April 05, 2007;

- Reviewed internal interim financial statements for the period ended March 31, 2007;

- Reviewed the Company's un-audited balance sheet for April 1, 2007;

- Reviewed the ESOP Transaction Model dated April, 2007, titled "2/8/07 - 2007 Revised Operating Plan Case" (the "Base Forecast Model");

- Reviewed the ESOP Transaction Model dated April, 2007, titled "2/8/07—Pub Ad Rev -2% and B&E OCF Flat Case" (the "Downside Forecast Model");

- Reviewed the draft of the Confidential Information Memorandum for Public Investors, dated April 16, 2007;

- Reviewed the Draft of the Summary of Terms and Conditions of the Senior Secured Credit Facilities, the Incremental Credit Facility, and the Senior Unsecured Bridge Facility dated April 13, 2007;

- Reviewed the Company's revised organizational structure that describes the revised collateral package for the Transactions as of May 7, 2007;

- Reviewed the Company's Offer to Purchase, dated April 25, 2007, and the related Schedule TO dated the same date;

- Reviewed the Company's summary of the Participating Hybrid Option Note Exchangeable Securities ("PHONES");

- Reviewed the PHONES Debt Offering Prospectus dated March 31, 1999;

- Obtained a written representations from responsible officers of the Company that there are approximately $97.1 million of Identified Contingent Liabilities;

- Obtained a written representations from responsible officers of the Company that there have not been any material adverse changes in the assets or liabilities of Tribune between April 1, 2007 and the date hereof, that may materially affect, without limitation, Tribune's business operations or condition;

- Obtained a written representations from responsible officers of the Company that the Base Forecast Model provided to VRC reflect Management's best estimates, and are reasonable and obtainable based on Management's involvement and understanding of the business operations, its markets, the strategic vision, the competitive landscape, and regulatory and economic trends;

- Reviewed the presentation titled "Tribune April 2007", which was presented to VRC on April 5, 2007;

- Reviewed the Rating Agency presentation dated March 2007;

- Reviewed the presentation titled "Zell Proposal—Sources and Uses and PF Capitalization" dated April 1, 2007;

- Reviewed BIA Financial, "Investing in Television Market Report", 4th edition, 2006 for the Company's Broadcasting operations;

- Reviewed BIA Financial, "Investing in Radio Market Report", 3rd edition, 2006 for the Company's Broadcasting operations;

- Reviewed the NAB / BCFM Television Financial Report—2006 edition for the Company's Broadcasting operations;

- Reviewed current research reports prepared by Thomson Financial and Morgan Stanley for the Company's Broadcasting operations;

- Reviewed current research reports prepared by Wachovia Capital, UBS, Bear Stearns, JPMorgan, Deutsche Bank, Citigroup, Credit Suisse, and Morgan Stanley for the Publishing Operations;

- Reviewed current Standard & Poor's Industry Surveys: Publishing Operations;

- Reviewed audited financial statements for Television Food Network, G.P. ("TV Food Network") for the years ended December 31, 2004 through 2005;

- Reviewed internal income statements for 2006 and budgeted income statements for 2007 for TV Food Network;

- Reviewed Agreement of General Partnership for TV Food Network;

- Reviewed the analyst reports, press releases, and public filings of various companies operating in the cable industry;

- Reviewed internal income statements for 2006 and budgeted income statements for 2007 for Comcast SportsNet;

- Reviewed the Amended and Restated LLC Agreement for Comcast SportsNet;

- Reviewed various financial statements for the periods December 31, 2001 through 2006 for CareerBuilder.com ("CareerBuilder");

- Reviewed forecasted income statements for the periods December 31, 2007 through 2009 for CareerBuilder;

- Reviewed other internal operating and financial data for the periods between 2004 and 2006 relating to unique visitors, sell thru rates, and pricing and volume for CareerBuilder;

- Reviewed the Amended and Restated LLC and Affiliate Agreements for CareerBuilder;

- Reviewed various financial statements and forecasts for the periods December 31, 2001 through 2007 for Classified Ventures.com ("Classified Ventures");

- Reviewed the LLC Agreement and First Amendment to LLC Agreement for Classified Ventures;

- Reviewed various historical financial statements for other Tribune equity investments, including ShopLocal, Topix.net, and Legacy.com;

- Reviewed various LLC, Affiliate, and Stockholder Agreements for ShopLocal, Topix.net, and Legacy.com;

- Reviewed 2006 valuation report for Topix.net

- Reviewed various financial statements for the periods for the December 31, 2005 through September 30, 2006 for Quetzel/J.P. Morgan L.P.;

- Reviewed memo relating to low income housing credits;

- Reviewed various other schedules and workbooks from the data room;

- Developed indications of value for the Company, the operating divisions and the equity interests of Tribune using generally accepted valuation methodology;

- Performed a cash flow and debt repayment analysis for the Company;

- Reviewed the industries in which the Company operates, which included a review of (i) certain research of the industries in which the Company operates, (ii) certain publicly traded companies deemed comparable to the Company and (iii) certain mergers and acquisitions involving businesses deemed comparable to the Company;

- Held discussions and multiple meetings with certain members of the Company's management team with respect to the past, present, and future operating and financial conditions of the Company, among other subjects;

- Conducted such other reviews, analyses and inquiries and considered such other economic, industry, market, financial and other information and data deemed appropriate by VRC.

In conducting its review and analysis, and as a basis for arriving at the Opinion, VRC utilized methodologies, procedures, and considerations deemed relevant and customary under the circumstances. VRC also considered its assessment of general economic, industry, market, financial and other conditions and its experience as a valuation advisor in general.

Source: TRIBUNE CO, SC TO-I/A, May 11, 2007

Powered by Morningstar® Document Research℠

VRC has assumed that the Company will be able to refinance debts when they mature and that it will not make acquisitions or dispositions other than those assumed during the forecast period based on the financial forecasts provided.

VRC further assumed that the Step One Transactions will be consummated in accordance with the terms and conditions set forth in the Base Forecast Model, term sheets, or Step One Transactions agreements provided to VRC and that the Company is in compliance, and will remain in compliance, in all material respects with any and all applicable laws, rules or regulations of any and all legal or regulatory authorities.

In rendering the Opinion, VRC assumed and relied upon, without independent verification, the accuracy and completeness of all information, data and other material (including, without limitation, the Base Forecast Model and the Downside Forecast Model) furnished or otherwise made available by the Company to VRC, discussed with or reviewed by VRC with the Company, or publicly available, and VRC did not assume any responsibility for independently verifying such information, data or other materials. In addition, VRC assumed and relied upon, without independent verification, that the Base Forecast Model and the Downside Forecast Model have been reasonably and prudently prepared and therefore reflect the best currently available estimates and judgments of management as to the expected future financial performance of the Company. In connection with its review of the Base Forecast Model and Downside Forecast Model, VRC advises the Company, after discussion with management with respect thereto, that nothing has come to VRC's attention to lead VRC to believe that it was unreasonable for VRC to utilize and rely upon such financial forecasts, projections, information and data.

VRC used the same valuation methodologies in determining Fair Value and Present Fair Saleable Value. Notwithstanding the use of Fair Value and Present Fair Saleable Value, VRC did not and will not initiate any discussions with, or solicit any indications of interest from, any third parties with respect to the Company. VRC has not performed any appraisals or valuations of specific assets or liabilities of the Company and has not made and will not make any physical inspection, evaluation or appraisal of any specific assets or liabilities. VRC has made various judgments and estimates it considers reasonable and appropriate under the circumstances are made by VRC in the determination of Fair Value and Present Fair Saleable Value, no assurance can be given by VRC that the sale price which might ultimately be realized in any actual transaction, if and when effected, will be at the amount VRC believes to be Fair Value or Present Fair Saleable Value. VRC has not considered the amount of any transaction expenses, other than the Step One Fees, that may be payable by the Company in any future transaction in determining Fair Value and Present Fair Salable Value.

The Opinion does not address (i) the relative risks or merits of the Transactions or any other business strategies or transaction alternatives that may be available to the Company; (ii) the underlying business decisions of the Company to consummate the Transactions; (iii) any specific legal, tax, accounting, or financial reporting matters related to or associated with the Company or the Transactions or (iv) the fair value of the Company under any state or federal laws relating to appraisal or similar rights. The Opinion is in no way given as an indication as to the fairness of the Transaction to any stockholder or any other stakeholder of the Company and should not be construed as investment advice in any manner whatsoever.

The Opinion and any other financial advice, written or oral, rendered by VRC is intended solely for the benefit and use of the Company Board of Directors. The Company's officers may also rely on the Opinion. The Company agrees that the Opinion and advice may not be disclosed publicly or made available to third parties without the prior written consent of VRC, except that the Opinion may, if required, be included in their entirety in any filing with the Securities and Exchange Commission made by the Company in connection with the Transactions, with an appropriate disclaimer that the Opinion is intended solely for the benefit and use of the Company Board of Directors and the Company's officers.

Powered by Morningstar® Document Research℠

With respect to the solvency of the Company, the Opinion is only valid for the capital structure of the Company immediately after and giving effect to the consummation of the Step One Transactions, and will not be valid for any subsequent business acquisition, dividend, share repurchase, debt or equity financing, recapitalization, restructuring or other actions or events not specifically referred to in either the Step One Transactions. Furthermore, the Opinion does not represent an assurance, guarantee, or warranty that the Company will not default on any of its debt obligations or other liabilities in either the Step One Transactions or Step Two Transactions, nor does the Opinion provide any assurance, guarantee, or warranty that any covenants, financial or otherwise, associated with any financing will not be breached in the future.

The Opinion is necessarily based on economic, industry, market, financial and other conditions and circumstances as they exist and to the extent they can be evaluated by VRC as of the date hereof. In particular, this Opinion does not address the economic, industry, market financial and other conditions that may exist at the time of consummation of the Step Two Transactions. The Opinion can only be relied upon by the parties to whom it is addressed and the officers of the Company and as of the date hereof. Neither all nor any part of the Opinion should be disclosed publicly or made available to third parties without prior written consent of VRC, such consent not to be unreasonably withheld or delayed, except as may otherwise be provided in the Solvency Engagement Letter between VRC and the Company dated April 11, 2007 or required by law or by a court of competent jurisdiction.

VRC will not conduct or provide contingent liability assessments of any kind, so that the Opinion will not reflect any contingent liabilities whatsoever unless such contingent liabilities are identified in writing and explained to VRC in terms of their nature, estimated timing and estimated dollar amount by responsible officers of the Company. Because any contingent liabilities considered including, without limitation, Identified Contingent Liabilities, would be estimates of responsible officers of the Company, VRC has no duty to determine and will express no opinion as to the completeness, reasonableness or propriety of such items.

VRC is being retained by the Company under this agreement as an independent contractor, and it is understood and agreed that this agreement does not create a fiduciary relationship between VRC and the Company Board of Directors and/or and each prospective lender under the contemplated credit facilities or other indebtedness.

VRC has not been involved in the structuring, documentation or negotiation of the Transactions and has not, other than the delivery of the Opinion and its review and analysis undertaken in connection therewith as described herein, provided any financial advisory or investment banking services to the Company related to or associated with the Transactions.

In its normal course of business, VRC is regularly engaged to provide financial opinions with respect to valuation, solvency, capital adequacy and fairness in connection with mergers, acquisitions, divestitures, leveraged buyouts, recapitalizations and financings.

Based on the foregoing, and in reliance thereon, VRC expresses the following Opinion:

- Immediately before giving effect to the consummation of the Step One Transactions, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune exceeds its liabilities (including Stated Liabilities and the Identified Contingent Liabilities);

- Immediately after and giving effect to the consummation of the Step One Common Stock Purchase, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune will exceed its liabilities (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), and such excess is in an amount that is not less than the capital of the Company (as determined pursuant to Section 154 of the DGCL);

- As of the date hereof, immediately after and giving effect to the consummation of the Step One Transactions, Tribune will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), as such debts mature or otherwise become absolute or due; and

- As of the date hereof, immediately after and giving effect to the consummation of the Step One Transactions, Tribune Does Not Have Unreasonably Small Capital.

Respectfully submitted,

VALUATION RESEARCH CORPORATION

*Valuation Research Corporation,*

Engagement Number: 50004214

QuickLinks

Exhibit (c)(11)

Exhibit (c)(12)



Private & Confidential

VRC
*Strong Values*
Valuation Research Corporation

*Tribune Company*
*Solvency Opinion Analysis*
*May 9, 2007*

NEW YORK · PRINCETON · BOSTON · CHICAGO · CINCINNATI · MILWAUKEE · SAN FRANCISCO · TAMPA

## *Discussion Outline*

➢ VRC's Qualifications and Highlighted Experience

➢ Situation Overview

➢ Solvency Process

➢ Summary of Solvency Analyses

➢ Conclusions

➢ Questions



2



# *VRC's Qualifications*

- Established in 1975, VRC is an independent, international financial advisory firm.
    - *Eight domestic offices: New York, Princeton, Boston, Chicago, Cincinnati, Milwaukee, Tampa and San Francisco*
    - *Nine global affiliates: Argentina, Australia, Brazil, Chile, Hong Kong, Mexico, Spain, United Kingdom and Venezuela*

- Core services include financial opinions with respect to valuation, solvency, capital adequacy and fairness in connection with mergers, acquisitions, divestitures, leveraged buyouts, recapitalizations, financings and financial and tax reporting matters.
    - *VRC's core services provide its clients with strategic advisory, enhanced due diligence and sophisticated financial modeling*
    - *Transactional: Valuation, Fairness, Solvency and Capital Adequacy Opinions*
    - *Financial Reporting: Fair Value Reporting; Allocation of Purchase Price (SFAS 141); Goodwill Impairment (SFAS 142); Stock Based Compensation (SFAS 123-R)*
    - *Tax Reporting: Deferred Compensation (IRC Sec 409A); Allocation of Purchase Cost (IRC Sec 1060 / 338); Valuation of Legal Entities*

- Full-service, in-house valuation capabilities include businesses, equity and debt securities, loans, derivative instruments, structured products, intangible assets, fixed assets and real estate.

- *Significant experience with respect to M&A, leveraged finance and complex capital structures results from producing over 1,000 solvency, capital adequacy and fairness opinions in connection with a variety of transactions of all sizes covering all major industry groups.*

*Our client base includes some of the largest and most prestigious companies in the world*

    

   3   

# *Highlighted Solvency Opinion Transaction Experience*



















4



**TRIBUNE**

## *Situation Overview*

- In connection with the Step One Transactions relating to the first step of the acquisition of the Company by a new Employee Stock Ownership Plan and EGI TRB, L.L.C., a limited liability company owned by Samuel Zell, the Board of Directors has engaged VRC to provide its opinion, as to whether as of May 9, 2007 (with a bring down to be provided at the expiration of the tender offer period), immediately after and giving effect to the consummations of the Step One Transactions, the Company will be Solvent and will have Adequate Capital to conduct ongoing operations.

***Valuation and Capital Adequacy Tests:***

> ➤ *Immediately after and giving effect to the consummation of the Step One Common Stock Purchase, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune will exceed its liabilities (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), and such excess is in an amount that is not less than the capital of the Company (as determined pursuant to Section 154 of the DGCL);*

***Cash Flow Test:***

> ➤ *As of the date hereof, immediately after and giving effect to the consummation of the Step One Transactions, Tribune will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), as such debts mature or otherwise become absolute or due; and*

***Capitalization Test:***

> ➤ *As of the date hereof, immediately after and giving effect to the consummation of the Step One Transactions, Tribune Does Not Have Unreasonably Small Capital.*



5



## *Situation Overview (continued)*

- The Board of Directors has also engaged VRC to provide its opinion, as to whether as of May 9, 2007 immediately before the consummation of the Step One Transactions, the Company meets the Capital Reduction Provisions of Section 244 of DGCL.

*Capital Reduction Test:*

> *Each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune exceeds its liabilities (including Stated Liabilities and the Identified Contingent Liabilities) immediately before giving effect to the consummation of the Step One Transactions;*

*VRC's conclusions are qualified entirely by the full text of its written Opinion letter.*



6



## *Solvency Opinion Process*

➢ Collected data relating to Tribune and pertinent industries, capital markets, competitors, and comparables;

➢ Held discussions with management of each operating division and appropriate corporate personnel of Tribune;

➢ Analyzed the data received and collected and reviewed the notes from our discussions with Tribune personnel;

➢ Conducted valuation and solvency opinion analyses;

➢ Conducted sensitivity and downside testing; and

➢ Concluded whether or not Tribune meets the proper tests of solvency for the Step One Transactions.



7



# *Summary of Solvency Analyses*

➢ **Valuation and Capital Adequacy Tests**

➢ **Cash Flow Test**

➢ **Capitalization Tests**

➢ **Capital Reduction Test**



8



# VALUATION AND CAPITAL ADEQUACY TESTS





# *Valuation and Capital Adequacy Tests* ($ in millions)

| Valuation Method | Valuation Summary | | |
|---|---|---|---|
| | Low | Mid | High |
| Comparable Companies | $11,355.8 | $12,635.1 | $13,632.8 |
| Comparable Transactions | $11,533.4 | $12,625.6 | $13,632.6 |
| Sum of Individual Assets | $11,407.3 | $12,729.7 | $13,932.1 |
| Discounted Cash Flow | $9,630.7 | $10,540.7 | $11,262.6 |
| **Average Operating Enterprise Value** | **$11,191.8** | **$12,878.9** | **$13,855.6** |
| + Equity Investments | $2,612.0 | $2,666.0 | $2,761.0 |
| + NPV of PHONES Tax Savings | $382.7 | $382.7 | $382.7 |
| **Adjusted Enterprise Value** | **$13,196.5** | **$15,147.4** | **$16,999.2** |
| + Cash | $182.1 | $182.1 | $182.1 |
| - Debt | ($9,463.8) | ($9,463.8) | ($9,463.8) |
| - Identified Contingent Liabilities | ($97.1) | ($97.1) | ($97.1) |
| **Equity Value** | **$4,537.7** | **$5,764.5** | **$7,626.4** |
| % of Enterprise Value | 12.9% | 11.1% | 12.7% |
| Less: Par value of Capital Stock | $3.9 | $3.9 | $3.9 |
| **Excess Capital** | **$4,533.8** | **$5,760.7** | **$7,616.5** |

| Operating Enterprise Value Multiples | | Valuation Summary | | |
|---|---|---|---|---|
| | | Low | Mid | High |
| LTM EBITDA (3/31/07) | $2,233.4 | 5.9x | 7.5x | 8.5x |
| CFY EBITDA (2007) | $2,305.9 | 5.7x | 6.3x | 7.0x |
| NFY EBITDA (2008) | $2,450.1 | 5.4x | 6.2x | 6.9x |

| Consolidated Enterprise Value Multiples | | Valuation Summary | | |
|---|---|---|---|---|
| | | Low | Mid | High |
| LTM EBITDA (3/31/07) | $1,372.6 | 7.9x | 10.9x | 14.6x |
| CFY EBITDA (2007) | $1,390.7 | 10.0x | 10.9x | 11.8x |
| NFY EBITDA (2008) | $1,518.4 | 9.3x | 10.0x | 10.8x |




- EBITDA figures include $60 million of anticipated cost savings
- EBITDA figures used for Consolidated Enterprise Value multiples include cash received from equity investments.
- Cash and outstanding debt balances are pro forma for Step One as of 3/31/07.

**VRC**
*Strong Values.*

10

**TRIBUNE**

# CASH FLOW TEST



**TRIBUNE**

Powered by Morningstar® Document Research℠

## *Base Case Cash Flow Test* (*$ in millions*)

| Cash Flow Summary | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P |
|---|---|---|---|---|---|---|---|
| Adjusted EBITDA | $1,385.9 | $1,428.4 | $1,448.4 | $1,478.5 | $1,475.1 | $1,481.0 | $1,486.9 |
| Cash Received from Equity Investments | $84.8 | $99.2 | $118.2 | $145.7 | $173.1 | $210.2 | $238.3 |
| Cash Taxes | ($151.0) | ($190.7) | ($225.0) | ($257.5) | ($282.5) | ($310.5) | ($332.6) |
| Cash Interest Income | $5.3 | $5.2 | $5.2 | $5.2 | $5.2 | $5.2 | $5.2 |
| Cash Interest Expense | ($557.6) | ($568.0) | ($568.9) | ($527.1) | ($489.2) | ($445.0) | ($398.4) |
| Change in Working Capital | ($20.0) | ($26.0) | ($26.5) | ($27.1) | ($27.6) | ($28.2) | ($28.3) |
| Operating Cash Flow | $667.4 | $737.0 | $771.4 | $817.9 | $854.2 | $912.8 | $964.1 |
| Capital Expenditures | ($174.5) | ($171.5) | ($127.8) | ($128.0) | ($128.0) | ($128.7) | ($129.5) |
| Other Investing Activities | ($96.7) | ($251.0) | ($100.0) | ($100.0) | ($100.0) | ($100.0) | ($100.0) |
| Cash Flow Available for Debt Repayment | $396.2 | $314.5 | $543.6 | $589.9 | $626.2 | $684.1 | $734.6 |

 

| | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P |
|---|---|---|---|---|---|---|---|
| Net Cash Flow | $211.0 | $175.0 | $402.1 | $367.1 | $553.2 | $611.2 | $579.7 |
| Beginning Cash | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 |
| Minimum Cash Balance | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) |
| Revolver Borrowings | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |

▪ *Adjusted EBITDA figures include $60 million of anticipated cost savings*
▪ *Under the Company's revolver it has the ability to borrow up to $750 million*

**VRC**
*Strong Values*

12

**TRIBUNE**

## *Base Case Debt Covenant Summary* ($ in millions)

| Credit Ratios | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P |
|---|---|---|---|---|---|---|---|
| EBITDA | $1,305.9 | $1,360.4 | $1,388.4 | $1,418.5 | $1,415.1 | $1,421.0 | $1,426.9 |
| Cost Savings | $0.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 |
| Cash Received from Equity Investments | $84.8 | $99.2 | $118.2 | $145.7 | $173.1 | $210.2 | $231.3 |
| Covenant EBITDA | $1,390.7 | $1,519.6 | $1,566.6 | $1,624.2 | $1,648.2 | $1,691.2 | $1,718.2 |
| Guaranteed Debt / Covenant EBITDA | 6.42x | 6.06x | 6.61x | 5.46x | 2.97x | 2.49x | 2.97x |
| Maximum Guaranteed Leverage Ratio | 6.25x | 6.00x | 5.75x | 5.50x | 5.25x | 5.25x | 5.25x |
| *(Excess / Deficit)* | *0.17x* | *0.06x* | *0.86x* | *0.04x* | *2.28x* | *2.76x* | *2.28x* |
| | | | | | | | |
| Covenant EBITDA / Cash Interest | 2.46x | 2.67x | 2.86x | 3.08x | 3.37x | 3.88x | 4.31x |
| Minimum Interest Coverage | 1.75x | 2.00x | 2.00x | 2.00x | 2.00x | 2.00x | 2.00x |
| *(Excess / Deficit)* | *0.71x* | *0.67x* | *0.86x* | *1.08x* | *1.37x* | *1.88x* | *2.31x* |



13

# CAPITALIZATION TESTS





## *Capitalization Tests*

➢ Post-Transaction Relative Equity Value

➢ Sensitivity Tests



15    **TRIBUNE**

## *Post Transaction Relative Equity Value*

| | | | |
|---|---|---|---|
| Adjusted Enterprise Value | $13,896.5 | $15,147.4 | $16,399.2 |
| + Cash | $182.1 | $182.1 | $182.1 |
| - Debt | ($9,463.8) | ($9,463.8) | ($9,463.8) |
| - Identified Contingent Liabilities | ($97.1) | ($97.1) | ($97.1) |
| Equity Value | $4,517.7 | $5,768.5 | $7,020.4 |



16



## *Sensitivity Test Assumptions*

- **Corporate:**

  1. Discretionary acquisition expenditures are projected to be $50 million in fiscal years 2009 through 2013

- **Publishing:**

  1. 3% decline in revenues for fiscal years 2008 and 2009
  2. 2% decline in revenues in fiscal years 2010 through 2013
  3. 22% EBITDA margin in fiscal year 2008, 21% EBITDA margin in fiscal year 2009, 22% EBITDA margin in fiscal year 2010 and 24% EBITDA margin in fiscal year in 2011
  4. 24.4% EBITDA margin in fiscal years 2012 and 2013

- **Broadcasting:**

  1. 5% decline in revenues for fiscal years 2008 and 2009
  2. 3% decline in revenues in fiscal year 2010
  3. 2% decline in revenues in fiscal years 2011 through 2013
  4. 32% EBITDA margin in fiscal year 2008, 33% EBITDA margin in fiscal year 2009, 34% EBITDA margin in fiscal year 2010 and 35% EBITDA margin in fiscal year in 2011
  5. 35.8% EBITDA margin in fiscal years 2012 and 2013



17



## *Sensitivity Cash Flow Test* (S in millions)

| Cash Flow Summary | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P |
|---|---|---|---|---|---|---|---|
| *Adjusted EBITDA* | $1,305.9 | $1,224.9 | $1,154.2 | $1,173.8 | $1,295.9 | $1,237.9 | $1,216.6 |
| Cash Received from Equity Investments | $84.8 | $99.2 | $118.2 | $145.7 | $173.1 | $210.2 | $231.3 |
| Cash Taxes | ($151.0) | ($112.3) | ($103.5) | ($128.2) | ($174.5) | ($197.5) | ($205.0) |
| Cash Interest Income | $5.3 | $5.2 | $5.2 | $5.2 | $5.2 | $5.2 | $5.2 |
| Cash Interest Expense | ($557.6) | ($572.3) | ($562.6) | ($551.4) | ($524.2) | ($489.8) | ($454.5) |
| Change in Working Capital | ($20.0) | ($26.0) | ($26.5) | ($27.1) | ($27.6) | ($28.2) | ($28.3) |
| *Operating Cash Flow* | $667.4 | $618.8 | $585.0 | $618.1 | $698.6 | $737.9 | $765.3 |
| Capital Expenditures | ($174.5) | ($171.5) | ($127.8) | ($128.0) | ($129.0) | ($128.7) | ($129.5) |
| Other Investing Activities | ($96.7) | ($251.0) | ($50.0) | ($50.0) | ($50.0) | ($50.0) | ($50.0) |
| *Cash Flow Available for Debt Repayment* | $396.2 | $196.2 | $407.2 | $440.0 | $519.9 | $559.2 | $585.9 |

| Net Cash Flow | $211.0 | $56.8 | $300.8 | ($82.9) | $407.2 | $496.4 | $451.1 |
|---|---|---|---|---|---|---|---|
| Beginning Cash | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 | $174.7 |
| Minimum Cash Balance | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) | ($174.7) |
| Revolver Borrowings | $0.0 | $0.0 | $0.0 | $82.6 | $0.0 | $0.0 | $0.0 |



18



## Sensitivity Case Debt Covenant Summary ($ in millions)

| Credit Ratios | 2007P | 2008P | 2009P | 2010P | 2011P | 2012P | 2013P |
|---|---|---|---|---|---|---|---|
| EBITDA | $1,205.9 | $1,164.9 | $1,094.2 | $1,113.8 | $1,175.9 | $1,177.9 | $1,156.6 |
| Cost Savings | $0.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 | $60.0 |
| Cash Received from Equity Investments | $84.8 | $99.2 | $118.2 | $145.7 | $173.1 | $210.2 | $231.3 |
| Covenant EBITDA | $1,290.7 | $1,324.1 | $1,272.4 | $1,319.5 | $1,409.1 | $1,448.1 | $1,447.8 |
| Guaranteed Debt / Covenant EBITDA | 4.42x | 4.76x | 4.46x | 4.40x | 3.84x | 3.26x | 3.01x |
| Maximum Guaranteed Leverage Ratio | 6.25x | 6.00x | 5.75x | 5.50x | 5.25x | 5.25x | 5.25x |



| Covenant EBITDA / Cash Interest | 2.49x | 2.31x | 2.26x | 2.29x | 2.63x | 2.94x | 3.19x |
|---|---|---|---|---|---|---|---|
| Minimum Interest Coverage | 1.75x | 2.00x | 2.00x | 2.00x | 2.00x | 2.00x | 2.00x |
| Cushion | 0.74x | 0.31x | 0.26x | 0.39x | 0.60x | 0.94x | 1.19x |



19

# CAPITAL REDUCTION TEST





## *Capital Reduction Test* (*$ in millions*)

| Valuation Method | Valuation Summary | | |
|---|---|---|---|
| | Low | Mid | High |
| Comparable Companies | $11,205.8 | $12,416.8 | $13,493.8 |
| Comparable Transactions | $11,753.4 | $12,625.6 | $13,493.8 |
| Sum of Individual Assets | $11,487.3 | $12,729.7 | $13,972.1 |
| Discounted Cash Flow | $9,830.7 | $10,596.7 | $11,262.6 |
| **Average Operating Enterprise Value** | **$11,101.8** | **$12,078.7** | **$13,055.6** |
| + Equity Investments | $2,412.0 | $2,686.0 | $2,961.0 |
| + NPV of PHONES Tax Savings | $382.7 | $382.7 | $382.7 |
| **Adjusted Enterprise Value** | **$13,896.5** | **$15,147.4** | **$16,399.2** |
| + Cash | $182.1 | $182.1 | $182.1 |
| - Debt | ($4,344.2) | ($4,344.2) | ($4,344.2) |
| - Identified Contingent Liabilities | ($97.1) | ($97.1) | ($97.1) |
| **Equity Value** | **$9,637.3** | **$10,888.2** | **$12,140.1** |
| **% of Enterprise Value** | **69.4%** | **71.9%** | **74.0%** |



21



## *Disclaimer*

- The accompanying material was compiled on a confidential basis for use solely by the Board of Directors of The Tribune Company as of May 9, 2007. This material is not intended to provide the sole basis for evaluating any transaction or event, does not purport to contain all information that may be required and should not be considered a recommendation with respect to any transaction or event. This material was prepared for a specific use by specific persons as of a specific date and was not prepared to conform with any disclosure standards under securities laws or otherwise. Neither Valuation Research Corporation ("VRC") nor any of its officers, directors, employees, affiliates, advisors, agents or representatives warrants the accuracy or completeness of any of the material set forth herein. Nothing contained in the accompanying material is, or shall be relied upon as, a promise or representation as to the past, the present or the future. This material must not be copied, reproduced, distributed or passed to others at any time without the prior written consent of VRC.

- It should be understood that any estimates, valuations, forecasts or projections contained in the accompanying material were prepared or derived from information supplied by the Company and public sources without the assumption by VRC of responsibility for any independent verification thereof. Accordingly, no representation or warranty can be or is made by VRC as to the accuracy or achievability of any such valuations, estimates, forecasts or projections and VRC expressly disclaims any and all liability relating to or resulting from the use of this material. Actual results may vary from such estimates, valuations, forecasts or projections and such variations may be material. Subsequent events may impact the analyses and conclusions set forth in the accompanying material and VRC does not assume any responsibility to update or revise the accompanying material for any events subsequent to the specified date set forth herein.



22



Created by Morningstar® Document Research℠
http://documentresearch.morningstar.com