*HIGHLY CONFIDENTIAL*

| | |
|---|---|
| MERRILL LYNCH CAPITAL CORPORATION<br>4 World Financial Center<br>New York, NY 10080 | CITIGROUP GLOBAL MARKETS INC.<br>388 Greenwich Street<br>New York, NY 10013 |

J.P. MORGAN SECURITIES INC.
JPMORGAN CHASE BANK, N.A.
270 Park Avenue
New York, NY 10017

April 1, 2007

Tribune Company
435 North Michigan Avenue, 6th Floor
Chicago, Illinois 60611

Attention: Don Grenesko
  Senior Vice President, Finance and Administration

### Re: Project Tower – First Step Fee Letter

Ladies and Gentlemen:

Reference is made to the Project Tower - First Step Commitment Letter dated the date hereof between Merrill Lynch Capital Corporation ("Merrill Lynch"), Citigroup Global Markets Inc. ("CGMI") on behalf of Citigroup, J.P. Morgan Securities Inc. ("JPMorgan"), JPMorgan Chase Bank, N.A. ("JPMCB") and you (the "Commitment Letter"). Capitalized terms used but not defined in this letter agreement (and references to "you") have the meanings assigned thereto in the Commitment Letter (including attachments thereto).

1. Facilities Fees. As consideration for the Initial Lenders' agreements under the Commitment Letter in respect of the Senior Secured Credit Facilities and their services in structuring and arranging the Senior Secured Credit Facilities, you agree to pay or cause to be paid the following fees to the Initial Lenders (other than the Agency Fees which shall be paid to the Administrative Agent):

| | |
|---|---|
| Underwriting Fees: | An underwriting fee (the "Underwriting Fee") in an amount equal to 1.625% of the aggregate amount of the commitments pursuant to the Commitment Letter in respect of the Senior Secured Credit Facilities, 1/3 of which will be allocated to each Initial Lender, which fee shall be earned and due and payable on the Closing Date. |

<u>Agency Fees</u>:  An administrative agency fee in respect of the Senior Secured Credit Facilities payable to the Administrative Agent in an amount to be agreed upon, such fee to be paid on the Closing Date and on each anniversary of the Closing Date so long as the Senior Secured Credit Facilities are in effect. Such fees shall be in addition to your obligations under Section 7 of the Commitment Letter.

2.  <u>Alternate Financing Fee</u>. In addition, as consideration for the agreements of the Initial Lenders under the Commitment Letter in respect of the Senior Secured Credit Facilities, in the event that, within 12 months following the date of this letter agreement, you, Holdco or any of your or Holdco's respective subsidiaries consummates an Alternate Financing (as defined below), you agree to pay to the Initial Lenders the Underwriting Fee set forth in Paragraph 1 above (1/3 of which will be allocated to each Initial Lender) (the "<u>Alternate Financing Fee</u>"), which shall be earned and due and payable on the date of consummation of such Alternate Financing. An "<u>Alternate Financing</u>" shall mean a debt financing (or series of related debt financings) for the purposes set forth in the Commitment Letter provided other than pursuant to arrangements with Merrill Lynch, Citigroup, JPMorgan and JPMCB acting in the roles contemplated by the Commitment Letter. Notwithstanding the foregoing, you shall not be required to pay (or cause to be paid) the Alternate Financing Fee owing to an Initial Lender, as applicable, if:

(i) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Merrill Lynch, Merrill Lynch shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction (as defined below);

(ii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to Citigroup, Citigroup shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction; or

(iii) with respect to the Alternate Financing Fee otherwise due under this Paragraph 2 to JPMCB, JPMCB shall have breached its obligations to provide the financing contemplated by the Commitment Letter in any material respect or shall have Declined to Participate in an Alternate Transaction.

For purposes of this Paragraph 2, "<u>Declined to Participate in an Alternate Transaction</u>" shall mean (a) you have disclosed to the Initial Lenders and the Lead Arrangers the material terms and conditions of the debt financing proposed for the purposes set forth in the Commitment Letter and the debt financing proposed for the purpose of and as part of consummating the Second Step Transactions (any such combination of financing transactions, an "<u>Alternate Transaction</u>") (it being understood that no Alternate Transaction will be proposed primarily for the purpose of obtaining more favorable pricing, fees or other economic terms), (b) you offered to the Initial Lenders a bona fide right to provide on an exclusive basis such Alternate Transaction on the same terms and conditions as those disclosed by you in equivalent roles and with equivalent titles as provided to the Lead Arrangers and Initial Lenders in the Commitment Letter, (c) Merrill Lynch, Citigroup or JPMCB, as applicable, refused to provide such financing substantially on the terms and conditions disclosed by you or on other terms and conditions that are as favorable, taken as a whole, as those disclosed by you, and (d) the lenders providing the Alternate Transaction provided such financing substantially on the terms and conditions disclosed by you to the Initial Lenders and Lead Arrangers or on other terms and conditions that are as favorable, taken as a whole, as such terms and conditions.

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105224

3.  Market Flex. Notwithstanding anything to the contrary in this letter agreement, the Commitment Letter or Term Sheet, we shall have the right in our commercially reasonable judgment (with the consent of each of the Lead Arrangers but without the consent of, but in consultation with, you) prior to the Flex Termination Date to (i) change the interest rate margins applicable to each of the Senior Secured Credit Facilities, in each case if in our commercially reasonable judgment such change or modification is necessary to achieve a successful syndication; *provided* that the interest rate margins applicable to the Senior Secured Credit Facilities may not be increased by more than (x) 50 basis points if the corporate credit ratings for Tribune are B2 (no negative outlook) or better by Moody's and B (no negative outlook) or better by S&P and (y) 75 basis points if the corporate credit ratings are not as described in clause (x), in each case from the highest applicable interest margins or spreads, as the case may be, set forth in the Term Sheet, (ii) change the commitment fee in respect of the unused Delay Draw Facility to be equal to no more than 50% of the Applicable Margin on LIBOR Loans that are Tranche B Term Loans and (iii) to modify condition (vii) to the Incremental Facility described in the Term Sheet under "Incremental Facility" to provide that in the event the Applicable Margins for the Incremental Facility are greater than the Applicable Margins for the Tranche B Facility made on the Closing Date by 25 basis points or more, then the Applicable Margins for the existing Tranche B Facility shall be increased to equal the Applicable Margins for the Incremental Facility. Any increase in the interest margins permitted by the foregoing may, at the option of the Lead Arrangers, (i) take the form of original issue discount with original issue discount being equated to such interest margins in a manner determined by the Lead Arrangers and consistent with generally accepted financial practice based on an assumed four-year life to maturity or (ii) be accomplished by a combination of an increase in interest rates and such original issue discount; *provided* that Tribune may make Revolving Loans on the Closing Date to the extent of any original issue discount.

The Initial Lenders' rights under this paragraph will survive the execution of the Credit Documents and any borrowings thereunder and continue in effect until the earlier date (the "Flex Termination Date") of (a) the date each Initial Lender's aggregate exposure under the Senior Secured Credit Facilities shall be at or below $150.0 million and (b) 45 days following the Closing Date. In the event that the Credit Documents are executed and delivered prior to the Flex Termination Date, so long as (i) such amendments are not otherwise inconsistent with applicable law and (ii) Tribune shall have received reasonable notice of such amendments and a reasonable opportunity to review and comment thereon, you agree to execute and deliver all amendments and waivers to the Credit Documents to give effect to the foregoing. The provisions of this paragraph shall survive the Closing Date and are an express condition to our commitment under the Commitment Letter.

4.  Confidentiality. The parties hereto hereby agree that this letter agreement is subject to the confidentiality provisions in the Commitment Letter.

5.  Miscellaneous. It is understood and agreed that this letter agreement shall not constitute or give rise to any obligation to provide any financing; such an obligation will arise only under the Commitment Letter if accepted in accordance with its terms. This letter agreement may not be amended or any provision hereof waived or modified except by an instrument in writing signed by each of the parties hereto. This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York. This letter agreement may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this letter agreement by facsimile transmission shall be effective as delivery of a manually executed counterpart of this letter agreement.

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105225

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: _____
Name: David Tovlin
Title: Vice President

CITIGROUP GLOBAL MARKETS INC.

By: _____
Name:
Title:

J.P. MORGAN SECURITIES INC.

By: _____
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:

[Step One Fee Letter]

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105226

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL
CORPORATION

By: _____
    Name:
    Title:

CITIGROUP GLOBAL MARKETS INC.

By: _*/s/ Julie Persily*_____
    Name: Julie Persily
    Title: Managing Director

J.P. MORGAN SECURITIES INC.

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, N.A.

By: _____
    Name:
    Title:

[Step One Fee Letter]

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105227

If the foregoing correctly sets forth our understanding, please indicate your acceptance of the terms hereof by signing in the appropriate spaces below and returning to the Initial Lenders the enclosed duplicate originals hereof, whereupon this letter shall become a binding agreement among you, Merrill Lynch, Citigroup JPMorgan and JPMCB.

Very truly yours,

MERRILL LYNCH CAPITAL CORPORATION

By: _____
    Name:
    Title:

CITIGROUP GLOBAL MARKETS INC.

By: _____
    Name:
    Title:

J.P. MORGAN SECURITIES INC.

By: _____
    Name:
    Title:   Robert Anastasio
           Vice President

JPMORGAN CHASE BANK, N.A.

By: _____
    Name:
    Title:   Robert Anastasio
           Vice President

[Step One Fee Letter]

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105228

Accepted and agreed to as of
the date first written above:

TRIBUNE COMPANY

By: *(signature)*
Name: Donald C. Grenesko
Title: Senior Vice President, Finance and Administration

Acknowledged:

EGI-TRB, L.L.C.

By: _____
    Name:
    Title:

[First Step Fee Letter]

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105229

Accepted and agreed to as of
the date first above written:

TRIBUNE COMPANY

By: _____
Name: Dennis J. FitzSimons
Title: Chairman, President and
Chief Executive Officer

EGI-TRB, L.L.C.

By: *[signature]*
Name: Philip G. Tinkler
Title: Vice President

Signature Page to the First Step Fee Letter

Professionals' Eyes Only
Highly Confidential - Attorneys' Eyes Only

TRB0105230