## CERTIFICATE OF THE ASSISTANT SECRETARY
## OF
## TRIBUNE COMPANY

### Dated June 4, 2007

Reference is hereby made to the Credit Agreement (the "Credit Agreement"), dated as of May 17, 2007, among Tribune Company, as Borrower, the Lenders party thereto, JPMorgan Chase Bank, N.A., as Administrative Agent, Merrill Lynch Capital Corporation, as Syndication Agent, Citicorp North America, Inc., Bank of America, N.A., and Barclay's Bank PLC as Co-Documentation Agents, and J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc., and Banc of America Securities LLC, as Joint Lead Arrangers and Joint Bookrunners. All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Credit Agreement or incorporated therein.

The undersigned, Mark W. Hianik, certifies that he is the duly elected, qualified and acting Assistant Secretary of Tribune Company (the "Company"), a corporation duly organized and existing under the laws of the State of Delaware, and that as Assistant Secretary, he is the keeper of the corporate records and seal of said Company.

The undersigned further certifies in his capacity as Assistant Secretary of the Company:

1.      Attached hereto as *Exhibit A* is a true, correct and complete copy of the Certificate of Incorporation of the Company, as in full force and effect on the date hereof. No document with respect to an amendment to the Certificate of Incorporation of the Company has been filed in the office of the Secretary of State of the State of Delaware since the date shown on the face of the state certification attached hereto and no action has been taken by the Company in contemplation of any such amendment or dissolution, consolidation or other merger of the Company other than in connection with the Transactions.

2.      Attached hereto as *Exhibit B* is a true, correct and complete copy of the Bylaws of the Company as in full force and effect on the date hereof. No action has been taken by the Company in contemplation of any amendment with respect to such Bylaws other than in connection with the Transactions.

3.      Attached hereto as *Exhibit C* is a true, correct and complete copy of resolutions duly adopted by the Board of Directors of the Company by written consent approving and authorizing the delivery and performance of the Credit Agreement, the Guarantee, the other Loan Documents and the transactions contemplated thereby to which the Company is a party. Such resolutions have not been amended, rescinded or modified since their adoption and remain in full force and effect as of the date hereof.

These resolutions are the only resolutions adopted by the Board of Directors of the Company relating to the Credit Agreement, the Guarantee, the other Loan Documents and the transactions contemplated thereby to which the Company is a party.

4.    Attached hereto as *Exhibit D* is a certificate of good standing of the Borrower, dated as of _June 1_, 2007, issued by the Secretary of State of Delaware to the effect that the Company is duly incorporated under the laws of the State of Delaware, is in good standing and has a legal corporate existence.

5.    Each of the following persons: (i) is the duly elected, qualified and acting officer of the Company occupying the offices set forth opposite his or her name, and the signature set forth opposite his or her name is his or her true signature (ii) is duly authorized to execute, deliver and act, in the name and on behalf of the Company, with respect to the Credit Agreement, the Guarantee and the other Loan Documents and (iii) is authorized to give notices and to take other action on the Company's behalf under the Credit Agreement, the Guarantee and the other Loan Documents:

| | | |
|---|---|---|
| Donald C. Grenesko | Chief Financial Officer | |
| Mark W. Hianik | Assistant Secretary | |
| Chandler Bigelow | Vice President and Treasurer | |

Sidley Austin LLP is entitled to rely on this certificate in connection with the legal opinions such law firm is rendering pursuant to Section 3.01(b)(ii) of the Credit Agreement.

\*\*\*\*\*\*\*

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the date first set forth above.

_____

Mark W. Hianik
Assistant Secretary

Exhibit A

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 05:01 PM 06/12/2000
001297643 – 0674607

## AMENDED AND RESTATED
### CERTIFICATE OF INCORPORATION
### OF
### TRIBUNE COMPANY

### Pursuant to Sections 242 and 245 of the
### Delaware General Corporation Law

Tribune Company (the "Corporation"), a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

1. The name of the Corporation is Tribune Company. The date of the filing of its original Certificate of Incorporation with the Secretary of State was March 19, 1968.

2. The Board of Directors of the Corporation unanimously adopted resolutions proposing and declaring advisable the following amendments to the Restated Certificate of Incorporation:

The first paragraph of Article FOURTH is hereby amended and restated to read in its entirety as follows:

"FOURTH: The total number of shares of stock which the corporation shall have authority to issue is one billion four hundred twelve million (1,412,000,000) shares consisting of (A) twelve million (12,000,000) shares of Preferred Stock, without par value, issuable in one or more series as hereinafter provided, and (B) one billion four hundred million (1,400,000,000) shares of Common Stock, par value $.01 per share."

A new Article FOURTEENTH is hereby added to read in its entirety as follows:

"FOURTEENTH: Notwithstanding any other provision in this Amended and Restated Certificate of Incorporation, no provision of Article VIII of the by-laws of the corporation (for so long as such Article VIII is in effect) may be altered, amended or repealed, nor may any provision inconsistent therewith be adopted, including by means of merger, consolidation, asset transfer or other transaction with any affiliated entity in which the corporation is not the surviving or continuing entity, except by the affirmative vote of all of the holders of outstanding stock of the corporation entitled to vote or of all of the members of the Board of Directors."

3. On June 12, 2000, at a special meeting of the stockholders of the Corporation, the stockholders of the Corporation approved the foregoing amendments in accordance with the provisions of the Restated Certificate of Incorporation and the Delaware General Corporation Law.

4. The foregoing amendments and this Amended and Restated Certificate of Incorporation have been duly adopted by the Board of Directors of the Corporation and duly executed and acknowledged in accordance with Sections 103, 242 and 245 of the Delaware General Corporation Law.

5. The capital of the Corporation shall not be reduced under or by reason of the foregoing amendments.

6. Effective as of 5:00 p.m., New York City time, on June 12, 2000, the text of the Amended and Restated Certificate of Incorporation of the Corporation is hereby restated to read in its entirety as follows:

\*     \*     \*     \*

FIRST: The name of the corporation is TRIBUNE COMPANY.

SECOND: The address of its registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

THIRD: The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of stock which the corporation shall have authority to issue is one billion four hundred twelve million (1,412,000,000) shares, consisting of (A) twelve million (12,000,000) shares of Preferred Stock, without par value, issuable in one or more series as hereinafter provided, and (B) one billion four hundred million (1,400,000,000) shares of Common Stock, par value $.01 per share.

The Common Stock of the corporation may be issued from time to time by authority of the Board of Directors of the corporation in accordance with applicable law. All shares of Preferred Stock at any time having the status of authorized and unissued shares of Preferred Stock may be issued from time to time in one or more series in such amounts per series and with such designations as may be provided by the Board of Directors of the corporation, and shares of any such series (a) may have such full or limited voting powers, or no voting powers, (b) may have such sinking fund provisions or redemption price or prices and terms and conditions, (c) may be entitled to receive dividends (cumulative or non-cumulative) at such rate or rates, on such conditions, and at such times, and payable in preference to, or in such relation to, the dividends payable on any other class or classes or series of capital stocks, (d) may have such rights upon the liquidation or dissolution of, or upon any distribution of the assets of, the corporation, (e) may be made convertible into, or exchangeable for, shares of any other class or classes or of any other series of the same or any other class or classes of the capital stock of the corporation, at such price or prices or at such rates of exchange, and with such adjustments, and (f) shall have such other preferences and relative, participating, optional or other special rights, qualifications, limitations or restrictions thereof, all as shall be stated and expressed in the resolution or resolutions providing for the issuance of such Preferred Stock from time to time adopted by the Board of Directors of the corporation. Authority is hereby granted to and vested in the Board of Directors of the corporation to establish and designate, by resolution adopted by

-2-

such Board, series of Preferred Stock from the authorized and unissued shares of the Preferred Stock and in such resolution to determine and fix the various terms, rights and preferences of the shares of any such series as specified in clauses (a) through (f) above, subject, however, to such restrictions and limitations as are, or may be, from time to time provided by law or contained in this Amended and Restated Certificate of Incorporation in its present form or as hereinafter amended. The stated value of the shares of each series of Preferred Stock shall be fixed by the Board of Directors of the corporation in the resolution establishing such series. All shares of any one series of Preferred Stock shall be alike in all respects.

The corporation shall not be required to issue fractional shares of any class of stock or to maintain or record fractional shares upon the books and records of the corporation. The Board of Directors of the corporation may determine by resolution from time to time whether or not fractional shares of any new or existing class or series of stock shall be permitted or recognized. In the event (a) the Board of Directors determines at any time to eliminate fractional shares of a class or series of stock as to which fractional shares are then outstanding or (b) corporate action is taken at any time which would result in the ownership of fractional interests in shares of any class or series of stock as to which the Board of Directors has determined that fractional shares are not permitted or recognized, the corporation shall arrange for the disposition of such fractional interests in such shares by the persons entitled thereto or pay in cash the fair value of such fractional interests or make other provision with respect thereto, in each case in such manner as may be permitted or required by law.

Each stockholder of record of Common Stock shall be entitled to one vote for every full share standing in his name on the books of the corporation on all matters presented for a vote of stockholders at a meeting thereof. A stockholder of record owning a fractional share of Common Stock (when permitted) shall be entitled to exercise fractional voting rights, to receive dividends thereon and to participate in the assets of the corporation in the event of liquidation, in each case proportionate to such fractional interest.

In consideration of the issue by the corporation, and the purchase by the holders thereof, of shares of the capital stock of the corporation, each and every present and future holder of shares of the capital stock of the corporation shall be conclusively deemed, by acquiring or holding such shares, to have agreed that the voting rights of such holders and the restrictions and qualifications thereof shall be as set forth in the Amended and Restated Certificate of Incorporation of the corporation, as now or hereafter amended pursuant to law, and in resolutions providing for series of Preferred Stock of the corporation.

FIFTH: No holder of capital stock of the corporation shall have any preemptive right to subscribe to any additional issue or sale of the capital stock of the corporation or to acquire any security convertible into capital stock of the corporation.

SIXTH: A merger or consolidation to which the corporation is a party but not the surviving party, or a sale, lease or exchange to any person, firm or corporation of all or substantially all of the assets of the corporation, may be made upon such terms and conditions and for such consideration as the Board of Directors shall approve and deem appropriate, when and as authorized by the affirmative vote of the holders of at least 66 2/3% of the outstanding capital stock of the corporation entitled to vote thereon, or such greater percentage of such stock

as may be required by other applicable provisions of this Amended and Restated Certificate of Incorporation, taken at an annual or special meeting of stockholders. This Article SIXTH may be amended only by the affirmative vote of the holders of at least 66 2/3% of the outstanding capital stock of the corporation entitled to vote thereon, taken at an annual or special meeting of stockholders.

SEVENTH: None of the following transactions may be effectuated unless a meeting of stockholders of the corporation is held to act thereon and the votes of the holders of its voting securities representing at least 80% of the votes entitled to be cast are cast in favor thereof:

(a)    An acquisition by the corporation of stock of an Interested Party;

(b)    A sale, lease or exchange of all or the major portion of the assets of the corporation or an Interested Party to the other;

(c)    A merger or consolidation to which the corporation and an Interested Party are parties; or

(d)    An amendment or repeal of this Article.

As used in this Article, "Interested Party" means any person, firm or corporation, or any group thereof acting in concert, which owns of record or beneficially, directly or indirectly, more than 10% of any class of stock of the corporation.

EIGHTH: The directors of the corporation shall be classified with respect to the time for which they shall hold office by dividing them into three classes, each consisting, as nearly as may be possible, of one-third of the whole number of the Board of Directors. At the 1974 annual meeting of stockholders the directors of the first class shall be elected for a term of one year, the directors of the second class shall be elected for a term of two years and the directors of the third class shall be elected for a term of three years. At each subsequent annual meeting of stockholders the successors to the directors whose terms shall expire that year shall be elected to hold office for the term of three years, so that the term of office of one class of directors shall expire in each year. In any event each director of the corporation shall hold office until his successor is duly elected and qualified.

NINTH: Election of directors need not be by ballot unless the by-laws so provide.

TENTH: The Board of Directors is expressly authorized to make, alter, amend and repeal the by-laws of the corporation.

ELEVENTH: Without limiting the power and authority of the Board of Directors to make, alter, amend and repeal by-laws of the corporation pursuant to Article TENTH or otherwise, by-laws of the corporation may also be made, altered, amended and repealed by the stockholders but only by the affirmative vote of the holders of 80% of the outstanding stock of the corporation entitled to vote. Any action required or permitted to be taken at any annual or

-4-

special meeting of stockholders of the corporation may be taken without a meeting only if a consent in writing setting forth the action so taken shall be signed by all stockholders entitled to vote with respect to the subject matter thereof. The affirmative vote of 80% of the outstanding stock of the corporation entitled to vote shall be required to amend or repeal this Article ELEVENTH.

TWELFTH: No person who is or was a director of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except that, unless otherwise permitted under applicable laws, this paragraph shall not eliminate or limit liability (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit. If the Delaware General Corporation Law is amended to authorize corporate action further eliminating or limiting the personal liability of directors, or extending similar protection to officers, then the liability of a director or officer, as applicable, of the corporation shall be eliminated or limited to the fullest extent permitted by the Delaware General Corporation Law as so amended. No amendment to or repeal of this Article TWELFTH shall apply to or have any effect on the liability or alleged liability of any director of the corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the corporation or is or was serving at the request of the corporation as a director or officer of another corporation or of a partnership, joint venture, trust or any other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, or officer or in any other capacity while serving as a director or officer, shall be indemnified and held harmless by the corporation to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the corporation to provide broader indemnification rights than said law permitted the corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director or officer and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that, except as provided in the next succeeding paragraph, the corporation shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the corporation. The right to indemnification conferred in this Article shall be a contract right and shall include the right to be paid by the corporation the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director or officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered

-5-

by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding shall be made only upon delivery to the corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Article or otherwise. The corporation may, by action of its Board of Directors, provide indemnification to persons who are or were employees and agents of the corporation, and persons who serve or have served at the request of the corporation as employees or agents of another corporation or any other enterprise as aforesaid, with the same scope and effect as the foregoing indemnification of directors and officers.

If a claim under the preceding paragraph of this Article is not paid in full by the corporation within thirty days after a written claim has been received by the corporation, the claimant may at any time thereafter bring suit against the corporation to recover the unpaid amount of the claim and, if successful in whole or in part, the claimant shall be entitled to be paid also the expense of prosecuting such claim. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in defending any proceeding in advance of its final disposition where the required undertaking, if any is required, has been tendered to the corporation) that the claimant has not met the standards of conduct which make it permissible under the Delaware General Corporation Law for the corporation to indemnify the claimant for the amount claimed, but the burden of proving such defense shall be on the corporation. Neither the failure of the corporation (including its Board of Directors, independent legal counsel or stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the corporation (including its Board of Directors, independent legal counsel or stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of this Amended and Restated Certificate of Incorporation, by-law, agreement, vote of stockholders or disinterested directors or otherwise. The corporation may enter into separate written agreements with directors, officers, employees and agents of the corporation and of other enterprises, which agreements expressly provide for indemnification and reimbursement of such persons to the fullest extent now or hereafter permitted by this Article or applicable law.

The corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the corporation or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the corporation would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

THIRTEENTH: The corporation reserves the right to amend, alter, change or repeal any provision now or hereafter contained in this Amended and Restated Certificate of Incorporation, and to add new provisions, in the manner now or hereafter prescribed by statute,

and all rights, preferences and privileges of whatsoever nature conferred upon stockholders, directors and officers pursuant to this Amended and Restated Certificate of Incorporation in its present form or as hereafter amended are granted subject to this reservation; provided that any provision in this Amended and Restated Certificate of Incorporation, the amendment of which is expressly required by this Amended and Restated Certificate of Incorporation to be authorized by a higher percentage vote of stockholders than is required by statute, shall be amended or repealed only in accordance with the express requirements of this Amended and Restated Certificate of Incorporation, as amended from time to time.

        FOURTEENTH: Notwithstanding any other provision in this Amended and Restated Certificate of Incorporation, no provision of Article VIII of the by-laws of the corporation (for so long as such Article VIII is in effect) may be altered, amended or repealed, nor may any provision inconsistent therewith be adopted, including by means of merger, consolidation, asset transfer or other transaction with any affiliated entity in which the corporation is not the surviving or continuing entity, except by the affirmative vote of all of the holders of outstanding stock of the corporation entitled to vote or of all of the members of the Board of Directors

-7-

IN WITNESS WHEREOF, Tribune Company has caused this certificate to be signed by Crane H. Kenney, its Senior Vice President, General Counsel and Secretary, this 12th day of June. 2000.

TRIBUNE COMPANY,

By: _____

Name: Crane H. Kenney
Title: Senior Vice President,
       General Counsel and Secretary

*STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 05:02 PM 06/12/2000
001297644 - 0674607*

**AMENDED**

**CERTIFICATE OF DESIGNATION**

of

**SERIES A JUNIOR PARTICIPATING PREFERRED STOCK**

**(WITHOUT PAR VALUE)**

of

**TRIBUNE COMPANY**

**Pursuant to Section 151 of the
Delaware General Corporation Law**

---

TRIBUNE COMPANY (the "Corporation"), a corporation organized and existing under the Delaware General Corporation Law (the "DGCL"), hereby certifies that the following resolution was adopted by the Board of Directors of the Corporation as required by Section 151 of the DGCL at a meeting duly called and held on June 12, 2000:

RESOLVED, that pursuant to the authority granted to and vested in the Board of Directors of the Corporation (hereinafter called the "Board of Directors" or the "Board") in accordance with the provisions of the Amended and Restated Certificate of Incorporation, the Board of Directors hereby amends, effective as of June 12, 2000, the Certificate of Designation establishing the Series A Junior Participating Preferred Stock, filed on December 31, 1987 (the "Certificate"), as amended and restated on January 5, 1998, by amending and restating the designation and number of shares, and the relative rights, preferences, and limitations of such Series A Junior Participating Preferred Stock, no shares of which have been issued, as follows:

Series A Junior Participating Preferred Stock:

Section 1    Designation and Amount. The shares of such series shall be designated as "Series A Junior Participating Preferred Stock" (the "Series A Preferred Stock") and the number of shares constituting the Series A Preferred Stock shall be 6,000,000. Such number of shares may be increased or decreased by resolution of the Board of Directors; provided, that no decrease shall reduce the number of shares of Series A Preferred Stock to a number less than the number of shares then outstanding plus the number of shares reserved for issuance upon the exercise of outstanding options, rights or warrants or upon the conversion of any outstanding securities issued by the Corporation convertible into Series A Preferred Stock.

- ·- ·· ·· 7//8: 11:45/NO 4861296649 .

Section 2.    Dividends and Distributions.

(A)    Subject to the rights of the holders of any shares of any series of Preferred Stock (or any similar stock) ranking prior and superior to the Series A Preferred Stock with respect to dividends, the holders of shares of Series A Preferred Stock, in preference to the holders of Common Stock, par value $.01 per share (the "Common Stock"), of the Corporation, and of any other junior stock, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, quarterly dividends payable in cash on the first day of March, June, September and December in each year (each such date being referred to herein as a "Quarterly Dividend Payment Date"), commencing on the first Quarterly Dividend Payment Date after the first issuance of a share or fraction of a share of Series A Preferred Stock, in an amount per share (rounded to the nearest cent) equal to the greater of (a) $1 or (b) subject to the provision for adjustment hereinafter set forth, 100 times the aggregate per share amount of all cash dividends, and 100 times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions, other than a dividend payable in shares of Common Stock or a subdivision of the outstanding shares of Common Stock (by reclassification or otherwise), declared on the Common Stock since the immediately preceding Quarterly Dividend Payment Date or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any share or fraction of a share of Series A Preferred Stock. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event under clause (b) of the preceding sentence shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(B)    The Corporation shall declare a dividend or distribution on the Series A Preferred Stock as provided in paragraph (A) of this Section immediately after it declares a dividend or distribution on the Common Stock (other than a dividend payable in shares of Common Stock); provided that, in the event no dividend or distribution shall have been declared on the Common Stock during the period between any Quarterly Dividend Payment Date and the next subsequent Quarterly Dividend Payment Date, a dividend of $1 per share on the Series A Preferred Stock shall nevertheless be payable on such subsequent Quarterly Dividend Payment Date.

(C)    Dividends shall begin to accrue and be cumulative on outstanding shares of Series A Preferred Stock from the Quarterly Dividend Payment Date next preceding the date of issue of such shares, unless the date of issue of such shares is prior to the record date for the first Quarterly Dividend Payment Date, in which case dividends on such shares shall begin to accrue from the date of issue of such shares, or unless the date of issue is a Quarterly Dividend Payment Date or is a date after the record date for the

determination of holders of shares of Series A Preferred Stock entitled to receive a quarterly dividend and before such Quarterly Dividend Payment Date, in either of which events such dividends shall begin to accrue and be cumulative from such Quarterly Dividend Payment Date   Accrued but unpaid dividends shall not bear interest. Dividends paid on the shares of Series A Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding. The Board of Directors may fix a record date for the determination of holders of shares of Series A Preferred Stock entitled to receive payment of a dividend or distribution declared thereon, which record date shall be not more than 60 days prior to the date fixed for the payment thereof.

Section 3.   _Voting Rights_. The holders of shares of Series A Preferred Stock shall have the following voting rights:

(A)   Subject to the provision for adjustment hereinafter set forth, each share of Series A Preferred Stock shall entitle the holder thereof to 100 votes on all matters submitted to a vote of the stockholders of the Corporation. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the number of votes per share to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event shall be adjusted by multiplying such number by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(B)   Except as otherwise provided herein, in any other Certificate of Designation creating a series of Preferred Stock or any similar stock, or by law, the holders of shares of Series A Preferred Stock and the holders of shares of Common Stock and any other capital stock of the Corporation having general voting rights shall vote together as one class on all matters submitted to a vote of stockholders of the Corporation

(C)   Except as set forth herein, or as otherwise provided by law, holders of Series A Preferred Stock shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of Common Stock as set forth herein) for the taking of any corporate action

Section 4.   _Certain Restrictions_

(A)   Whenever quarterly dividends or other dividends or distributions payable on the Series A Preferred Stock as provided in Section 2 are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on

-3-

shares of Series A Preferred Stock outstanding shall have been paid in full, the Corporation shall not:

      (i)    declare or pay dividends, or make any other distributions, on any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock;

      (ii)    declare or pay dividends, or make any other distributions, on any shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except dividends paid ratably on the Series A Preferred Stock and all such parity stock on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled;

      (iii)    redeem or purchase or otherwise acquire for consideration shares of any stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock, provided that the Corporation may at any time redeem, purchase or otherwise acquire shares of any such junior stock in exchange for shares of any stock of the Corporation ranking junior (either as to dividends or upon dissolution, liquidation or winding up) to the Series A Preferred Stock; or

      (iv)    redeem or purchase or otherwise acquire for consideration any shares of Series A Preferred Stock, or any shares of stock ranking on a parity with the Series A Preferred Stock, except in accordance with a purchase offer made in writing or by publication (as determined by the Board of Directors) to all holders of such shares upon such terms as the Board of Directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine in good faith will result in fair and equitable treatment among the respective series or classes.

      (B)    The Corporation shall not permit any subsidiary of the Corporation to purchase or otherwise acquire for consideration any shares of stock of the Corporation unless the Corporation could, under paragraph (A) of this Section 4, purchase or otherwise acquire such shares at such time and in such manner.

      Section 5.    <u>Reacquired Shares</u>.  Any shares of Series A Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired and cancelled promptly after the acquisition thereof.  All such shares shall upon their cancellation become authorized but unissued shares of Preferred Stock and may be reissued as part of a new series of Preferred Stock subject to the conditions and restrictions on issuance set forth herein, in the Amended and Restated Certificate of Incorporation, or in any other Certificate of Designation creating a series of Preferred Stock or any similar stock or as otherwise required by law.

      Section 6.    <u>Liquidation, Dissolution or Winding Up</u>.  Upon any liquidation, dissolution or winding up of the Corporation, no distribution shall be made (1) to the holders of

-4-

shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Preferred Stock unless, prior thereto, the holders of shares of Series A Preferred Stock shall have received $100 per share, plus an amount equal to accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment, provided that the holders of shares of Series A Preferred Stock shall be entitled to receive an aggregate amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount to be distributed per share to holders of shares of Common Stock, or (2) to the holders of shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Preferred Stock, except distributions made ratably on the Series A Preferred Stock and all such parity stock in proportion to the total amounts to which the holders of all such shares are entitled upon such liquidation, dissolution or winding up. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the aggregate amount to which holders of shares of Series A Preferred Stock were entitled immediately prior to such event under the proviso in clause (1) of the preceding sentence shall be adjusted by multiplying such amount by a fraction the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

Section 7      Consolidation, Merger, etc  In case the Corporation shall enter into any consolidation, merger, combination or other transaction in which the shares of Common Stock are exchanged for or changed into other stock or securities, cash and/or any other property, then in any such case each share of Series A Preferred Stock shall at the same time be similarly exchanged or changed into an amount per share, subject to the provision for adjustment hereinafter set forth, equal to 100 times the aggregate amount of stock, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each share of Common Stock is exchanged or changed. In the event the Corporation shall at any time declare or pay any dividend on the Common Stock payable in shares of Common Stock, or effect a subdivision or combination or consolidation of the outstanding shares of Common Stock (by reclassification or otherwise than by payment of a dividend in shares of Common Stock) into a greater or lesser number of shares of Common Stock, then in each such case the amount set forth in the preceding sentence with respect to the exchange or change of shares of Series A Preferred Stock shall be adjusted by multiplying such amount by a fraction, the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

Section 8.      No Redemption.  The shares of Series A Preferred Stock shall not be redeemable.

Section 9      Rank.  The Series A Preferred Stock shall rank, with respect to the payment of dividends and the distribution of assets, junior to all series of any other class of the Corporation's Preferred Stock.

-5-

·· ·· -v/ vi  11:43/NO. 486129664,

Section 10.    Amendment.  The Amended and Restated Certificate of Incorporation of the Corporation shall not be amended in any manner which would materially alter or change the powers, preferences or special rights of the Series A Preferred Stock so as to affect them adversely without the affirmative vote of the holders of at least two-thirds of the outstanding shares of Series A Preferred Stock, voting together as a single class.

Section 11.    Effectiveness.  This Certificate shall be effective as of 5:00 p.m., New York City time, on June 12, 2000.

IN WITNESS WHEREOF, Tribune Company has caused this certificate to be signed by Crane H. Kenney, its Senior Vice President, General Counsel and Secretary, this 12th day of June, 2000.

TRIBUNE COMPANY

By: _____

Name: Crane H. Kenney
Title: Senior Vice President,
General Counsel and Secretary

-7-

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION·OF· CORPORATIONS
FILED 05:03 PM 06/12/2000
001297645 − 0674607

# CERTIFICATE OF DESIGNATION

## OF THE

## PREFERRED STOCK, SERIES C

## (WITHOUT PAR VALUE)

## OF

## TRIBUNE COMPANY

### Pursuant to Section 151 of the

### Delaware General Corporation Law

The undersigned duly authorized officer of Tribune Company (the "Company"), a corporation organized and existing under the Delaware General Corporation Law (the "DGCL"), in accordance with the provisions of Section 103 thereof, and pursuant to Section 151 thereof, DOES HEREBY CERTIFY:

That pursuant to the authority conferred upon the Board of Directors by the Amended and Restated Certificate of Incorporation of the Company (the "Certificate of Incorporation"), the Board of Directors of the Company (the "Board" or "Board of Directors") on June 12, 2000 adopted the following resolution creating 823,568 shares of Preferred Stock, without par value, each designated as set forth below:

RESOLVED, that pursuant to the authority expressly granted to and vested in the Board of Directors by provisions of the Certificate of Incorporation, and the DGCL, the issuance of a series of the Company's preferred stock, without par value (the "Preferred Stock"), which shall consist of 823,568 of the 12,000,000 shares of Preferred Stock that the Company now has authority to issue, be, and the same hereby is, authorized, and the Board of Directors hereby fixes the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, of the shares of such series (in addition to the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, set forth in the Certificate of Incorporation that may be applicable to the Preferred Stock) as follows:

1. Designation and Rank. The designation of such series of the Preferred Stock authorized by this resolution shall be the 8% Cumulative Convertible Preferred Stock, Series C (the "Series C Preferred Stock"). The number of shares of Series C Preferred Stock shall be 823,568. The Series C Preferred Stock shall rank prior to the Common Stock (as hereinafter defined) of the Company and to all other classes and series of equity securities of the Company now or hereafter authorized, issued or outstanding (the Common Stock and such other classes and series of equity securities not expressly designated as ranking on a parity with or senior to the Series C Preferred Stock collectively may be referred to herein as the "Junior Stock") as to dividend rights and rights upon liquidation, winding up or dissolution of the Company, other

than any classes or series of equity securities of the Company expressly designated as ranking on a parity with (the "Parity Stock") or senior to (the "Senior Stock") the Series C Preferred Stock as to dividend rights and rights upon liquidation, winding up or dissolution of the Company. The Series C Preferred Stock shall be subject to creation of Senior Stock, Parity Stock and Junior Stock, to the extent not expressly prohibited by the Certificate of Incorporation or Section 5(c)(i) or 5(c)(ii) hereof, with respect to the payment of dividends and upon liquidation.

2  Cumulative Dividends; Priority.

(a) Payment of Dividends

(i) The holders of record of shares of Series C Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefor, cumulative cash dividends from the date of issuance of such shares at the rate per annum per share of 8% ($40 per annum) (the "Dividend Rate"), which shall be payable quarterly in arrears on the tenth day of March, June, September and December in each year (or if such day is a non-business day, on the next business day), commencing on September 10, 2000 (each of such dates a "Dividend Payment Date"). No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the Series C Preferred Stock that may be in arrears

(ii) Each declared dividend shall be payable to holders of record as they appear on the stock books of the Company at the close of business on such record dates, not more than 60 calendar days preceding the applicable Dividend Payment Dates therefor, as are determined by the Board of Directors (each of such dates a "Record Date"). Quarterly dividend periods (each a "Dividend Period") shall commence on and include the eleventh day of March, June, September and December of each year and shall end on and include the date immediately preceding the next following Dividend Payment Date. Dividends on the shares of Series C Preferred Stock shall be fully cumulative and shall accrue (whether or not declared) from the first day of each Dividend Period; provided, however, that any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period

(b) Priority as to Dividends.

(i) Subject to the provisions hereof, no cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set apart for payment on Preferred Stock that constitutes Parity Stock or Junior Stock with respect to dividends for any Dividend Period unless full dividends on the Series C Preferred Stock for the immediately preceding Dividend Period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment). When dividends are not paid in full (or declared and a sum sufficient for such full payment not so set apart) upon the Series C Preferred Stock and any Parity Stock, all dividends declared upon shares of Series C Preferred Stock and any Parity Stock shall be declared pro rata with respect thereto, so that in all cases the amount of dividends declared per share on the Series C Preferred Stock and such Parity Stock shall bear to each other the same ratio that accrued dividends for the then-

current Dividend Period per share on the shares of Series C Preferred Stock (which shall include any accumulation in respect of unpaid dividends for prior Dividend Periods) and dividends, including accumulations, if any, of such Parity Stock, bear to each other.

(ii)  Except as provided in the preceding paragraph, full dividends on the Series C Preferred Stock must be declared and paid or set apart for payment for the immediately preceding Dividend Period before (A) any cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set aside for payment upon the Common Stock or any other Junior Stock of the Company or (B) any Common Stock or any other Junior Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock), except by redemption into or exchange for Junior Stock or (C) any Series C Preferred Stock or Parity Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock). The Company shall not permit any subsidiary of the Company to purchase or otherwise acquire for consideration any shares of stock of the Company if under the preceding sentence, the Company would be prohibited from purchasing or otherwise acquiring such shares at such time and in such manner.

(iii)  No dividend shall be paid or set aside for holders of the Series C Preferred Stock for any Dividend Period unless full dividends on any Preferred Stock that constitutes Senior Stock with respect to dividends for that period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment).

(c)  <u>Adjustment to Dividend Rate</u>  If the dividends received deduction (the "DRD") contained in Section 243 of the Internal Revenue Code of 1986, as amended (the "Code"), or any comparable provision that may be adopted subsequently, should be reduced or eliminated, then, upon receipt by the Company of one or more written requests signed by holders of record of at least 50% of the outstanding shares of Series C Preferred Stock (a "Rate Adjustment Request"), the Company shall, for Dividend Periods commencing on or after such Rate Adjustment Request, adjust the Dividend Rate by multiplying the Dividend Rate by a fraction, the numerator of which is .895 and the denominator of which is [1 - .35 (1 - DRDP)]. For purposes of the preceding formula, "DRDP" shall mean the DRD percentage specified in Section 243(a)(1) of the Code, or any comparable provision that may be adopted subsequently.

The Dividend Rate shall be adjusted only to take into account reductions in the DRDP from the current 70% rate. In the case of any particular dividend payment, no adjustment to the Dividend Rate shall be made to the extent that such dividend payment is not made out of the "earnings and profits" of the Company as determined under the Code. If, at the time of the payment of a particular dividend, it is reasonably uncertain whether such dividend (or portion thereof) will be paid out of the earnings and profits of the Company, such dividend (or portion thereof) shall be presumed not to be paid out of earnings and profits and, accordingly, no adjustment to the Dividend Rate shall be made. If, and to the extent that, such dividend is subsequently determined to have been paid out of earnings and profits, the Company shall, on the next Dividend Payment Date, increase the amount of the dividend payment to take into account the adjustment to the Dividend Rate that would have been made had the previous

-3-

- ·· ·· ··/·. ·· ··:45/NU. 4861296649 F 2ι

dividend (or portion thereof) been treated as having been paid out of earnings and profits of the Company.

The objective of this provision 2(c) is, in the event of a reduction of the DRDP, to provide holders of the Preferred Stock with the same amount of net dividends, on an after Federal tax basis, as would have been received at the time of issuance of the Preferred Stock, taking into account the highest Federal income tax rate applicable to corporations and the 70% DRD prevailing at the time of issuance of the Preferred Stock. Accordingly, if fundamental changes are made to the Federal income tax system (e.g., replacement of the DRD with a dividends received credit), no adjustment to the Dividend Rate shall be made if the dividends received by holders of the Preferred Stock, on an after Federal tax basis, is not altered. All determinations required to be made hereunder shall be made by the Board of Directors in its sole discretion.

3. Conversion at Option of the Company.

(a) General.

(i) The shares of the Series C Preferred Stock shall not be convertible at the option of the Company except (A) following receipt of a Rate Adjustment Request (as contemplated by Section 2(c)) or (B) upon the later to occur of (x) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series C Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No. 2 have been distributed to the beneficiaries thereof and (y) February 1, 2025 (the date of receipt of a Rate Adjustment Request or such later date being the "Convertibility Date"). Subject to and upon compliance with the provisions of this Section 3, shares of Series C Preferred Stock may be converted, in whole or in part, at the election of the Company by resolution of the Board of Directors, in whole or in part, at the election of the Company from time to time on or after the Convertibility Date. Conversion shall be made as provided in Section 3(b), at any time or from time to time on or after the Convertibility Date. Conversion shall be made as provided in Section 3(b), at any time or from holders of Series C Preferred Stock, in respect of the conversion of each share of Series C Preferred Stock so converted, certificates representing the number of fully paid and non-assessable shares (the "Conversion Shares") of common stock, par value $.01 per share, of the Company ("Common Stock") equal to the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series C Preferred Stock to the Conversion Date (as hereinafter defined) divided by (2) the Common Share Value (as hereinafter defined). The aggregate number of shares of Common Stock that a holder of shares of Series C Preferred Stock that have been converted is entitled to receive pursuant to this Section 3 or Section 4 is hereinafter referred to as the "Aggregate Conversion Shares."

(ii) The "Common Share Value" shall mean the average of the closing prices of the Common Stock for the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date (as defined below), as reported in The Wall Street Journal, or, if no closing prices were so reported, the average of the mean between the high bid and low asked price per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date in the over-the-counter market, as reported by the National Association of Securities Dealers, Inc. Automated Quotation System or such other system then in use, or, if the Common Stock is not then quoted

-4-

by any such organization, the average of the mean between the closing bid and asked prices per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date, as furnished by a professional market maker making a market in the Common Stock, or, if there is no such market maker, the fair market value of a share of Common Stock determined by whatever method the Board of Directors reasonably determines to use. In the case of a conversion pursuant to this Section 3, the "Valuation Date" shall mean the Conversion Notice Date (as defined in Section 3(b)), and in the case of any conversion pursuant to Section 4, the "Valuation Date" shall mean the Conversion Time (as hereinafter defined).

      (b) <u>Notice of Conversion</u>. Notice of any conversion, setting forth (i) the Conversion Date (as defined in Section 3(c) hereof), (ii) a statement that dividends on the shares of Series C Preferred Stock to be converted will cease to accrue on such Conversion Date, and (iii) the method(s) by which the holders may surrender the certificates representing shares of Series C Preferred Stock that have been converted and obtain the Conversion Shares therefor, shall be mailed, postage prepaid, on a date (the "Conversion Notice Date") that is at least 15 days but not more than 45 days prior to said Conversion Date to each holder of record of the Series C Preferred Stock to be converted at his, her or its address as the same shall appear on the books of the Company. If less than all the shares of the Series C Preferred Stock owned by such holder are then to be converted, the notice shall specify the number of shares thereof that are to be converted and the numbers of the certificates representing such shares.

      (c) <u>Method of Conversion</u>  The surrender of any certificate evidencing shares of Series C Preferred Stock that have been converted shall be made by the holder thereof by the surrender of the certificate or certificates formerly representing the shares of Series C Preferred Stock converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series C Preferred Stock) at any time during its usual business hours. Shares of Series C Preferred Stock called for conversion shall be deemed to have been converted, and the shares of Common Stock to be issued in respect of the shares of Series C Preferred Stock converted shall be deemed to have been issued, as of the close of business on the date fixed for conversion (the "Conversion Date"), without regard to when certificates evidencing such Series C Preferred Stock are surrendered pursuant to this Section 3(c) or certificates evidencing such Common Stock are issued pursuant to Section 3(d). The rights of the holder of Series C Preferred Stock that has been converted, except for the right to receive the Aggregate Conversion Shares therefor in accordance herewith (and any cash payments to which such holder is entitled pursuant to Section 3(e) hereof), shall cease on the Conversion Date  In the case of lost or destroyed certificates evidencing ownership of shares of Series C Preferred Stock that have been converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

      (d) <u>Issuance of Certificates for Common Stock</u>. As soon as practicable after its receipt of any certificate or certificates formerly evidencing ownership of shares of Series C Preferred Stock that have been converted, the Company shall issue and shall deliver to the person for whose account such certificates formerly representing shares of Series C Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion of such shares of Series C

-5-

Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares as determined by the Company, in accordance with Section 3(e) hereof.

(e) Fractional Shares. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series C Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series C Preferred Stock shall be converted at one time for the account of the same holder, the number of full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(f) Payment of Taxes. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series C Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(g) Common Stock Reserved for Conversion. The Company shall at all times from and after the Conversion Date reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series C Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series C Preferred Stock.

4. Conversion at the Option of Holders.

(a) General. After the later to occur of (i) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series C Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No. 2 have been distributed to the beneficiaries thereof and (ii) February 1, 2025, the holder of any Series C Preferred Stock may convert pursuant to this Section 4 all or any part (in whole number of shares only) of the Series C Preferred Stock held by such holder into fully paid and non-assessable shares of Common Stock. The number of shares of Common Stock into which a share of Series C Preferred Stock may be converted shall be equal to the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series C Preferred Stock to the Conversion Time (as hereinafter defined) divided by (2) the Common Share Value.

(b) Method of Conversion. Each conversion of Series C Preferred Stock shall be effected by the surrender of the certificate or certificates representing the shares of Series C Preferred Stock to be converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series C Preferred Stock) at any time during its usual business hours, together with written notice by the

holder of such Series C Preferred Stock stating that such holder desires to convert the shares of Series C Preferred Stock, or a stated number of such shares, represented by such certificate or certificates, which notice shall also specify the name or names (with addresses) and denominations in which the certificate or certificates for the Common Stock shall be issued and shall include instructions for delivery thereof. Any conversion pursuant to this Section 4 shall be deemed to have been effected as of the close of business on the date on which such certificate or certificates shall have been surrendered and such notice shall have been received, and at such time (the "Conversion Time") the rights of the holder of Series C Preferred Stock (or specified portion thereof) as such holder shall cease and the person or persons in whose name or names any certificate or certificates for shares of Common Stock are to be issued upon conversion shall be deemed to have become the holder or holders of record of the shares of Common Stock represented thereby. In the case of lost or destroyed certificates evidencing ownership of shares of Series C Preferred Stock to be converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

(c) <u>Issuance of Certificates for Common Stock</u>. As soon as practicable after its receipt of any certificate or certificates evidencing ownership of shares of Series C Preferred Stock to be converted pursuant to this Section 4, the Company shall issue and shall deliver to the person for whose account such shares of Series C Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion of such shares of Series C Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares as determined by the Company, in accordance with Section 4(d) hereof.

(d) <u>Fractional Shares</u>. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series C Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series C Preferred Stock shall be converted at one time for the account of the same holder, the number of full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(e) <u>Payment of Taxes</u>. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series C Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(f) <u>Common Stock Reserved for Conversion</u>. The Company shall at all times from and after the Conversion Time reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series C Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series C Preferred Stock.

-7-

5. Voting Rights.

(a) General Voting Rights. Except as expressly provided hereinafter in this Section 5, or as otherwise from time to time required by applicable law, the Series C Preferred Stock shall have no voting rights.

(b) Voting Rights Upon Dividend Arrears.

(i) Right to Elect Directors. In the event that an amount equal to six quarterly dividend payments on the Series C Preferred Stock shall have accrued and be unpaid (the occurrence of such contingency marking the beginning of a period herein referred to as the "Default Period," which shall extend until such time as all accrued and unpaid dividends for all previous Dividend Periods and for the current Dividend Period on all shares of Series C Preferred Stock then outstanding shall have been declared and paid or declared and a sum sufficient for such full payment set apart for payment), the holders of the Series C Preferred Stock shall have the right, voting separately as a class together with holders of shares of any Parity Stock upon which like voting rights have been conferred and are exercisable (such shares of Series C Preferred Stock and shares of Parity Stock are hereinafter referred to as "Voting Parity Stock"), to elect two members of the Board of Directors, each member to be in addition to the then authorized number of directors, at the next annual meeting of stockholders or at a special meeting called as described below and thereafter until the Default Period shall have ended.

(ii) Special Meeting; Written Consent. Whenever such voting right shall vest, it may be exercised initially by the vote of the holders of a plurality of the voting power of Series C Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a special meeting of holders of the Series C Preferred Stock and Voting Parity Stock or at the next annual meeting of stockholders  A special meeting for the exercise of such right shall be called by the Secretary of the Company as promptly as possible, and in any event within 10 days after receipt of a written request signed by the holders of record of at least 25% of the outstanding shares of the Series C Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders. Any action required or permitted to be taken at any such special meeting of such holders may be taken by a consent or consents in writing of such stockholders, setting forth the action so taken, which consent or consents shall be signed by the holders of Series C Preferred Stock and Voting Parity Stock representing a majority of the voting power of shares of such Series C Preferred Stock and Voting Parity Stock and shall be delivered to the Company in the manner set forth from time to time in the DGCL.

(iii) Term of Office of Directors. Any director who shall have been elected by holders of the Series C Preferred Stock and Voting Parity Stock entitled to vote in accordance with this subparagraph (b) shall hold office for a term expiring (subject to the earlier expiry of such term, as set forth below) at the annual meeting of stockholders at which the term of office of his class shall expire and during such term may be removed at any time, only for cause, by, and only by. the affirmative vote of the holders of record of a majority of the

-8-

- ·· · · ·· ··IU/ DI. 11:45/NO. 4861296649 .

voting power of the Series C Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a special meeting of such stockholders called for such purpose, and any vacancy created by such removal may also be filled at such meeting. A meeting for the removal of a director elected by the holders of the Series C Preferred Stock and Voting Parity Stock and the filling of the vacancy created thereby shall be called by the Secretary of the Company as promptly as possible and in any event within 10 days after receipt of a request therefor signed by the holders of not less than 25% of the aggregate outstanding voting power of the Series C Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Such meeting shall be held at the earliest practicable date thereafter, provided that no such meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders. Simultaneously with the expiration of the Default Period, the terms of office of all directors elected by the holders of the shares of Series C Preferred Stock and the Voting Parity Stock pursuant hereto then in office shall, without further action, thereupon terminate unless otherwise required by law. Upon such termination the number of directors constituting the Board of Directors of the Company shall, without further action, be reduced by two, subject always to the increase of the number of directors pursuant to the foregoing provisions in the case of the future right of holders of the shares of Series C Preferred Stock and Voting Parity Stock to elect directors as provided above.

(iv) *Vacancies*. Any vacancy caused by the death, resignation or removal of a director who shall have been elected in accordance with this subparagraph (b) may be filled by the remaining director so elected or, if not so filled, by a vote of holders of a plurality of the voting power of the Series C Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a meeting called for such purpose. Unless such vacancy shall have been filled by the remaining director as aforesaid, such meeting shall be called by the Secretary of the Company at the earliest practicable date after such death or resignation, and in any event within 10 days after receipt of a written request signed by the holders of record of at least 25% of the outstanding shares of the Series C Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders.

(v) *Stockholders' Right to Call Meeting*. If any meeting of the holders of the Series C Preferred Stock and Voting Parity Stock required by this subparagraph (b) to be called shall not have been called within 30 days after personal service of a written request therefor upon the Secretary of the Company or within 30 days after mailing the same within the United States of America by registered mail addressed to the Secretary of the Company at its principal executive offices, subject to any applicable notice requirements imposed by law or regulation, then the holders of record of at least 25% of the outstanding shares of the Series C Preferred Stock and Voting Parity Stock may designate in writing one of their number to call such meeting at the expense of the Company, and such meeting may be called by such person so designated upon the notice required for annual meetings of stockholders or such shorter notice (but in no event shorter than permitted by law or regulation) as may be acceptable to the holders of a majority of the total voting power of the Series C Preferred Stock and Voting Parity Stock Any holder of Series C Preferred Stock and Voting Parity Stock so designated shall have access to the Series C Preferred Stock and Voting Parity Stock books of the Company for the purpose of causing such meeting to be called pursuant to these provisions.

(vi) <u>Quorum</u>. At any meeting of the holders of the Series C Preferred Stock called in accordance with the provisions of this subparagraph (b) for the election or removal of directors, the presence in person or by proxy of the holders of a majority of the total voting power of the Series C Preferred Stock and Voting Parity Stock shall be required to constitute a quorum; in the absence of a quorum, the holders of a majority of the total number of votes present in person or by proxy shall have power to adjourn the meeting from time to time without notice other than an announcement at the meeting, until a quorum shall be present.

(c) <u>Voting Rights on Extraordinary Matters</u>.

(i) So long as any shares of Series C Preferred Stock shall be outstanding, the holders of the Series C Preferred Stock shall have the right, voting separately as a class together with holders of shares of any Voting Parity Stock (with two-thirds of the voting power of such stock at the time outstanding given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class, or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL, required for approval by such holders), to vote on: (i) the liquidation or dissolution of the Company; (ii) any proposal to authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock ranking pari passu with, or prior to, the shares of the Series C Preferred Stock in powers, rights or preferences upon the liquidation, dissolution or winding up of affairs of the Company or as to dividends; and (iii) any proposal to amend by merger, amendment or otherwise (or otherwise alter or repeal) the Certificate of Incorporation (or this resolution) if such amendment, alteration or repeal would increase or decrease the aggregate number of authorized shares of Series C Preferred Stock or any Voting Parity Stock, increase or decrease the par value of the shares of Series C Preferred Stock or any Voting Parity Stock, or alter or change the powers, preferences, or special rights of the shares of Series C Preferred Stock or any Voting Parity Stock so as to affect them adversely. An amendment that increases the number of authorized shares of any class or series of Preferred Stock or authorizes the creation or issuance of other classes or series of Preferred Stock, in each case ranking junior to the Series C Preferred Stock with respect to the payment of dividends and distribution of assets upon liquidation, dissolution or winding up shall not be considered to be such an adverse change.

(ii) So long as any shares of Series C Preferred Stock shall be outstanding and unless the consent or approval of a greater number of shares shall then be required by applicable law, without first obtaining the approval of the holders of at least two-thirds of the voting power of the Series C Preferred Stock at the time outstanding (voting separately as a class together with the holders of shares of Voting Parity Stock) given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class (or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL), the Company shall not either directly or indirectly or through merger or consolidation with any other entity, (i) authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock that would place or have the effect of placing restrictions on the obligation of the Company to pay dividends to the holders of Series C Preferred Stock or to perform any of its obligations to the holders of Series C Preferred Stock at any time; or (ii) authorize, enter into or permit to exist any covenant or agreement that would place or have the effect of placing

-10-

restrictions on the obligations of the Company to pay dividends to holders of Series C Preferred Stock or to perform any of its other obligations to the holders of Series C Preferred Stock at any time; provided, however, that notwithstanding the foregoing, the Company may from time to time enter into credit agreements and indentures that provide for limitations on the ability of the Company to pay dividends on its capital stock generally, so long as the Board of Directors determines, in its sole discretion, that such limitation is necessary in order to obtain financing on commercially reasonable terms.

(d) <u>One Vote Per Share</u>. In connection with any matter on which holders of the Series C Preferred Stock are entitled to vote as provided in subparagraphs (b) and (c) above, or any other matter on which the holders of the Series C Preferred Stock are entitled to vote as one class or otherwise pursuant to applicable law or the provisions of the Certificate of Incorporation, each holder of Series C Preferred Stock shall be entitled to one vote for each share of Series C Preferred Stock held by such holder.

6. <u>No Sinking Fund</u>. No sinking fund will be established for the retirement or redemption of shares of Series C Preferred Stock.

7. <u>Liquidation Rights; Priority</u>.

(a) In the event of any liquidation, dissolution or winding up of the affairs of the Company, whether voluntary or involuntary, after payment or provision for payment of the debts and other liabilities of the Company, the holders of shares of the Series C Preferred Stock shall be entitled to receive, out of the assets of the Company, whether such assets are capital or surplus and whether or not any dividends as such are declared, $500 per share plus an amount equal to all accrued and unpaid dividends for the then-current plus all prior Dividend Periods, and no more, before any distribution shall be made to the holders of the Common Stock or any other class of stock or series thereof ranking junior to the Series C Preferred Stock with respect to the distribution of assets upon liquidation, dissolution or winding up of the Company. Unless specifically designated as junior or senior to the Series C Preferred Stock with respect to the liquidation, dissolution or winding up of the affairs of the Company or as to dividends, all other series or classes of Preferred Stock of the Company shall rank on a parity with the Series C Preferred Stock with respect to the distribution of assets.

(b) Nothing contained in this Section 7 shall be deemed to prevent conversion of shares of the Series C Preferred Stock by the Company in the manner provided in Section 3. Neither the merger nor consolidation of the Company into or with any other entity, nor the merger or consolidation of any other entity into or with the Company, nor a sale, transfer or lease of all or any part of the assets of the Company, shall be deemed to be a liquidation, dissolution or winding up of the Company within the meaning of this Section 7.

(c) Written notice of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Company, stating a payment date and the place where the distributable amounts shall be payable, shall be given by mail, postage prepaid, no less than 30 days prior to the payment date stated therein, to the holders of record of the Series C Preferred Stock at their respective addresses as the same shall appear on the books of the Company.

-11-

.. .. ... ιν/ ν.. ι ι · τɔ/ ΝΟ. 4001290099  ? ¿

(d) If the amounts available for distribution with respect to the Series C Preferred Stock and all other outstanding stock of the Company ranking on a parity with the Series C Preferred Stock upon liquidation, dissolution or winding up are not sufficient to satisfy the full liquidation rights of all the outstanding Series C Preferred Stock and stock ranking on a parity therewith, then the holders of each series of such stock will share ratably in any such distribution of assets in proportion to the full respective preferential amount (which in the case of the Series C Preferred Stock shall mean the amounts specified in Section 7(a) and in the case of any other series of preferred stock may include accumulated dividends if contemplated by such series) to which they are entitled.

8. <u>Status of Shares Converted</u>. Shares of Series C Preferred Stock converted or purchased or otherwise acquired for value by the Company, shall, after such event, have the status of authorized and unissued shares of Preferred Stock without designation and may be reissued by the Company at any time as shares of any series of Preferred Stock.

9. <u>Effectiveness</u>. This certificate shall be effective as of 5:00 p.m., New York City time, on June 12, 2000.

-12-

IN WITNESS WHEREOF, Tribune Company has caused this certificate to be signed by Crane H. Kenney, its Senior Vice President, General Counsel and Secretary, this 12th day of June, 2000.

TRIBUNE COMPANY

By: _____

Name: Crane H. Kenney
Title:   Senior Vice President,
           General Counsel and Secretary

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 05:04 PM 06/12/2000*
*001297646 - 0674607*

## CERTIFICATE OF DESIGNATION

### OF THE

### PREFERRED STOCK, SERIES D-1

#### (WITHOUT PAR VALUE)

#### OF

#### TRIBUNE COMPANY

#### Pursuant to Section 151 of the

#### Delaware General Corporation Law

The undersigned duly authorized officer of Tribune Company (the "Company"), a corporation organized and existing under the Delaware General Corporation Law (the "DGCL"), in accordance with the provisions of Section 103 thereof, and pursuant to Section 151 thereof, DOES HEREBY CERTIFY:

That pursuant to the authority conferred upon the Board of Directors by the Amended and Restated Certificate of Incorporation of the Company (the "Certificate of Incorporation"), the Board of Directors of the Company (the "Board" or "Board of Directors") on June 12, 2000 adopted the following resolution creating 380,972 shares of Preferred Stock, Series D-1 (in addition to the shares of Preferred Stock, Series D-2, which were also created on such date), without par value, each designated as set forth below:

RESOLVED, that pursuant to the authority expressly granted to and vested in the Board of Directors by provisions of the Certificate of Incorporation, and the DGCL, the issuance of a series of the Company's preferred stock, without par value (the "Preferred Stock"), which shall consist of 380,972 of the 12,000,000 shares of Preferred Stock that the Company now has authority to issue, be, and the same hereby is, authorized, and the Board of Directors hereby fixes the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, of the shares of such series (in addition to the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, set forth in the Certificate of Incorporation that may be applicable to the Preferred Stock) as follows:

1. Designation and Rank. The designation of such series of the Preferred Stock authorized by this resolution shall be the Preferred Stock, Series D-1 (the "Series D-1 Preferred Stock"). The number of shares of Series D-1 Preferred Stock shall be 380,972. The Series D-1 Preferred Stock shall rank prior to the Common Stock (as hereinafter defined) of the Company and to all other classes and series of equity securities of the Company now or hereafter authorized, issued or outstanding (the Common Stock and such other classes and series of equity securities not expressly designated as ranking on a parity with or senior to the Series D-1 Preferred Stock collectively may be referred to herein as the "Junior Stock") as to dividend rights

and rights upon liquidation, winding up or dissolution of the Company, other than (a) the Company's (i) 8% Cumulative Convertible Preferred Stock, Series C (the "Series C Preferred Stock") and (ii) Series D-2 Preferred Stock (the "Series D-2 Preferred Stock"), with respect to which the Series D-1 Preferred Stock is expressly designated as ranking on a parity as to dividend rights and rights upon liquidation, winding up or dissolution of the Company; and (b) any other classes or series of equity securities of the Company expressly designated as ranking on a parity with (collectively with the Series C Preferred Stock and the Series D-2 Preferred Stock, the "Parity Stock") or senior to (the "Senior Stock") the Series D-1 Preferred Stock as to dividend rights and rights upon liquidation, winding up or dissolution of the Company. The Series D-1 Preferred Stock shall be subject to creation of Senior Stock, Parity Stock and Junior Stock, to the extent not expressly prohibited by the Certificate of Incorporation or Section 5(c)(i) or 5(c)(ii) hereof, with respect to the payment of dividends and upon liquidation.

2. Cumulative Dividends; Priority.

(a) Payment of Dividends.

(i) The holders of record of shares of Series D-1 Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefor, cumulative cash dividends from the date of issuance of such shares at the rate per annum per share of 5.8% (i.e., $29 per annum) (the "Dividend Rate"), as adjusted from time to time pursuant to Section 2(c) hereof. Dividends shall be payable quarterly on the tenth day of March, June, September and December in each year (or if such day is a non-business day, on the next business day) with respect to the quarter ending on the last day of such month, commencing on September 10, 2000 (each of such dates a "Dividend Payment Date"). No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the Series D-1 Preferred Stock that may be in arrears.

(ii) Each declared dividend shall be payable to holders of record as they appear on the stock books of the Company at the close of business on such record dates, not more than 60 calendar days preceding the applicable Dividend Payment Dates therefor, as are determined by the Board of Directors (each of such dates a "Record Date"). Quarterly dividend periods (each a "Dividend Period") shall commence on and include the first day of January, April, July, and October of each year and shall end on and include the last day of March, June, September and December, respectively of such year. Dividends on the shares of Series D-1 Preferred Stock shall be fully cumulative and shall accrue (whether or not declared) from the first day of each Dividend Period; provided, however, that the amount of any dividend payable for any Dividend Period shorter than a full Dividend Period, shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period.

(b) Priority as to Dividends.

(i) Subject to the provisions hereof, no cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set apart for payment on Preferred Stock that constitutes Parity Stock or Junior Stock with respect to dividends for any Dividend Period unless full dividends on the Series D-1 Preferred Stock for the

2

immediately preceding Dividend Period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment). When dividends are not paid in full (or declared and a sum sufficient for such full payment not so set apart) upon the Series D-1 Preferred Stock and any Parity Stock, all dividends declared upon shares of Series D-1 Preferred Stock and any Parity Stock shall be declared pro rata with respect thereto, so that in all cases the amount of dividends declared per share on the Series D-1 Preferred Stock and such Parity Stock shall bear to each other the same ratio that accrued dividends for the then-current Dividend Period per share on the shares of Series D-1 Preferred Stock (which shall include any accumulation in respect of unpaid dividends for prior Dividend Periods) and dividends, including accumulations, if any, of such Parity Stock, bear to each other.

(ii) Except as provided in the preceding paragraph, full dividends on the Series D-1 Preferred Stock must be declared and paid or set apart for payment for the immediately preceding Dividend Period before (A) any cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set aside for payment upon the Common Stock or any other Junior Stock of the Company or (B) any Common Stock or any other Junior Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock), except by redemption into or exchange for Junior Stock or (C) any Series D-1 Preferred Stock or Parity Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock). The Company shall not permit any subsidiary of the Company to purchase or otherwise acquire for consideration any shares of stock of the Company if under the preceding sentence, the Company would be prohibited from purchasing or otherwise acquiring such shares at such time and in such manner.

(iii) No dividend shall be paid or set aside for holders of the Series D-1 Preferred Stock for any Dividend Period unless full dividends on any Preferred Stock that constitutes Senior Stock with respect to dividends for that period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment).

(c) Adjustment to Dividend Rate.

(i) The Dividend Rate shall not be adjusted prior to the end of the Dividend Period ending on December 31, 2001.

(ii) The Dividend Rate for each subsequent year (commencing with the year that begins on January 1, 2002) shall be adjusted upward in accordance with Schedule A attached hereto.

(iii) Increases in the Dividend Rate are subject to the following limitation: the Dividend Rate shall, under no circumstances, exceed 8.4% per annum.

3

3. Conversion at Option of the Company.

(a) General.

(i) The shares of the Series D-1 Preferred Stock shall not be convertible at the option of the Company except upon the later to occur of (x) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series D-1 Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No. 2 have been distributed to the beneficiaries thereof and (y) February 1, 2025 (such later date being the "Convertibility Date"). Subject to and upon compliance with the provisions of this Section 3, shares of Series D-1 Preferred Stock may be converted, in whole or in part, at the election of the Company by resolution of the Board of Directors, upon notice as provided in Section 3(b), at any time or from time to time on or after the Convertibility Date. Conversion shall be made by delivering to the holders of Series D-1 Preferred Stock, in respect of the conversion of each share of Series D-1 Preferred Stock so converted, certificates representing the number of fully paid and non-assessable shares (the "Conversion Shares") of common stock, par value $.01 per share, of the Company ("Common Stock") equal to the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series D-1 Preferred Stock to the Conversion Date (as hereinafter defined) divided by (2) the Common Share Value (as hereinafter defined). The aggregate number of shares of Common Stock that a holder of shares of Series D-1 Preferred Stock that have been converted is entitled to receive pursuant to this Section 3 or Section 4 is hereinafter referred to as the "Aggregate Conversion Shares."

(ii) The "Common Share Value" shall mean the average of the closing prices of the Common Stock for the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date (as defined below), as reported in *The Wall Street Journal*, or, if no closing prices were so reported, the average of the mean between the high bid and low asked price per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date in the over-the-counter market, as reported by the National Association of Securities Dealers, Inc. Automated Quotation System or such other system then in use, or, if the Common Stock is not then quoted by any such organization, the average of the mean between the closing bid and asked prices per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date, as furnished by a professional market maker making a market in the Common Stock, or, if there is no such market maker, the fair market value of a share of Common Stock determined by whatever method the Board of Directors reasonably determines to use. In the case of a conversion pursuant to this Section 3, the "Valuation Date" shall mean the Conversion Notice Date (as defined in Section 3(b)), and in the case of any conversion pursuant to Section 4, the "Valuation Date" shall mean the Conversion Time (as hereinafter defined).

(b) Notice of Conversion.  Notice of any conversion, setting forth (i) the Conversion Date (as defined in Section 3(c) hereof), (ii) a statement that dividends on the shares of Series D-1 Preferred Stock to be converted will cease to accrue on such Conversion Date, and (iii) the method(s) by which the holders may surrender the certificates representing shares of Series D-1 Preferred Stock that have been converted and obtain the Conversion Shares therefor, shall be mailed, postage prepaid, on a date (the "Conversion Notice Date") that is at least 15 days

4

but not more than 45 days prior to said Conversion Date to each holder of record of the Series D-1 Preferred Stock to be converted at his, her or its address as the same shall appear on the books of the Company. If less than all the shares of the Series D-1 Preferred Stock owned by such holder are then to be converted, the notice shall specify the number of shares thereof that are to be converted and the numbers of the certificates representing such shares.

(c) Method of Conversion. The surrender of any certificate evidencing shares of Series D-1 Preferred Stock that have been converted shall be made by the holder thereof by the surrender of the certificate or certificates formerly representing the shares of Series D-1 Preferred Stock converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series D-1 Preferred Stock) at any time during its usual business hours. Shares of Series D-1 Preferred Stock called for conversion shall be deemed to have been converted, and the shares of Common Stock to be issued in respect of the shares of Series D-1 Preferred Stock converted shall be deemed to have been issued, as of the close of business on the date fixed for conversion (the "Conversion Date"), without regard to when certificates evidencing such Series D-1 Preferred Stock are surrendered pursuant to this Section 3(c) or certificates evidencing such Common Stock are issued pursuant to Section 3(d). The rights of the holder of Series D-1 Preferred Stock that has been converted, except for the right to receive the Aggregate Conversion Shares therefor in accordance herewith (and any cash payments to which such holder is entitled pursuant to Section 3(e) hereof), shall cease on the Conversion Date. In the case of lost or destroyed certificates evidencing ownership of shares of Series D-1 Preferred Stock that have been converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

(d) Issuance of Certificates for Common Stock. As soon as practicable after its receipt of any certificate or certificates formerly evidencing ownership of shares of Series D-1 Preferred Stock that have been converted, the Company shall issue and shall deliver to the person for whose account such certificates formerly representing shares of Series D-1 Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion of such shares of Series D-1 Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares as determined by the Company, in accordance with Section 3(e) hereof.

(e) Fractional Shares. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series D-1 Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series D-1 Preferred Stock shall be converted at one time for the account of the same holder, the number of full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(f) Payment of Taxes. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series D-1 Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder

5

of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(g) Common Stock Reserved for Conversion. The Company shall at all times from and after the Conversion Date reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series D-1 Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series D-1 Preferred Stock.

4    Conversion at the Option of Holders.

(a) General. After the later to occur of (i) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series D-1 Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No. 2 have been distributed to the beneficiaries thereof and (ii) February 1, 2025, the holder of any Series D-1 Preferred Stock may convert pursuant to this Section 4 all or any part (in whole number of shares only) of the Series D-1 Preferred Stock held by such holder into fully paid and non-assessable shares of Common Stock. The number of shares of Common Stock into which a share of Series D-1 Preferred Stock may be converted shall be equal to the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series D-1 Preferred Stock to the Conversion Time (as hereinafter defined) divided by (2) the Common Share Value.

(b) Method of Conversion. Each conversion of Series D-1 Preferred Stock shall be effected by the surrender of the certificate or certificates representing the shares of Series D-1 Preferred Stock to be converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series D-1 Preferred Stock) at any time during its usual business hours, together with written notice by the holder of such Series D-1 Preferred Stock stating that such holder desires to convert the shares of Series D-1 Preferred Stock, or a stated number of such shares, represented by such certificate or certificates, which notice shall also specify the name or names (with addresses) and denominations in which the certificate or certificates for the Common Stock shall be issued and shall include instructions for delivery thereof. Any conversion pursuant to this Section 4 shall be deemed to have been effected as of the close of business on the date on which such certificate or certificates shall have been surrendered and such notice shall have been received, and at such time (the "Conversion Time") the rights of the holder of Series D-1 Preferred Stock (or specified portion thereof) as such holder shall cease and the person or persons in whose name or names any certificate or certificates for shares of Common Stock are to be issued upon conversion shall be deemed to have become the holder or holders of record of the shares of Common Stock represented thereby. In the case of lost or destroyed certificates evidencing ownership of shares of Series D-1 Preferred Stock to be converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

6

(c) <u>Issuance of Certificates for Common Stock</u>. As soon as practicable after its receipt of any certificate or certificates evidencing ownership of shares of Series D-1 Preferred Stock to be converted pursuant to this Section 4, the Company shall issue and shall deliver to the person for whose account such shares of Series D-1 Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock issuable upon the conversion of such shares of Series D-1 Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares as determined by the Company, in accordance with Section 4(d) hereof.

(d) <u>Fractional Shares</u>. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series D-1 Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series D-1 Preferred Stock shall be converted at one time for the account of the same holder, the number of full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(e) <u>Payment of Taxes</u>. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series D-1 Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(f) <u>Common Stock Reserved for Conversion</u>. The Company shall at all times from and after the Conversion Time reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series D-1 Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series D-1 Preferred Stock.

5. <u>Voting Rights</u>.

(a) <u>General Voting Rights</u>. Except as expressly provided hereinafter in this Section 5, or as otherwise from time to time required by applicable law, the Series D-1 Preferred Stock shall have no voting rights.

7

(b) <u>Voting Rights Upon Dividend Arrears.</u>

(i) <u>Right to Elect Directors</u>. In the event that an amount equal to six quarterly dividend payments on the Series D-1 Preferred Stock shall have accrued and be unpaid (the occurrence of such contingency marking the beginning of a period herein referred to as the "Default Period," which shall extend until such time as all accrued and unpaid dividends for all previous Dividend Periods and for the current Dividend Period on all shares of Series D-1 Preferred Stock then outstanding shall have been declared and paid or declared and a sum sufficient for such full payment set apart for payment), the holders of the Series D-1 Preferred Stock shall have the right, voting separately as a class together with holders of shares of the Series D-2 Preferred Stock and any other Parity Stock upon which like voting rights have been conferred and are exercisable (such shares of Series D-1 Preferred Stock, shares of Series D-2 Preferred Stock, and other shares of Parity Stock are hereinafter referred to as "Voting Parity Stock"), to elect two members of the Board of Directors, each member to be in addition to the then authorized number of directors, at the next annual meeting of stockholders or at a special meeting called as described below and thereafter until the Default Period shall have ended.

(ii) <u>Special Meeting; Written Consent</u> Whenever such voting right shall vest, it may be exercised initially by the vote of the holders of a plurality of the voting power of Series D-1 Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a special meeting of holders of the Series D-1 Preferred Stock and Voting Parity Stock or at the next annual meeting of stockholders. A special meeting for the exercise of such right shall be called by the Secretary of the Company as promptly as possible, and in any event within 10 days after receipt of a written request signed by the holders of record of at least 25% of the outstanding shares of the Series D-1 Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders Any action required or permitted to be taken at any such special meeting of such holders may be taken by a consent or consents in writing of such stockholders, setting forth the action so taken, which consent or consents shall be signed by the holders of Series D-1 Preferred Stock and Voting Parity Stock representing a majority of the voting power of shares of such Series D-1 Preferred Stock and Voting Parity Stock and shall be delivered to the Company in the manner set forth from time to time in the DGCL.

(iii) <u>Term of Office of Directors</u>. Any director who shall have been elected by holders of the Series D-1 Preferred Stock and Voting Parity Stock entitled to vote in accordance with this subparagraph (b) shall hold office for a term expiring (subject to the earlier expiry of such term, as set forth below) at the annual meeting of stockholders at which the term of office of his class shall expire and during such term may be removed at any time, only for cause, by, and only by, the affirmative vote of the holders of record of a majority of the voting power of the Series D-1 Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a special meeting of such stockholders called for such purpose, and any vacancy created by such removal may also be filled at such meeting. A meeting for the removal of a director elected by the holders of the Series D-1 Preferred Stock

8

and Voting Parity Stock and the filling of the vacancy created thereby shall be called by the Secretary of the Company as promptly as possible and in any event within 10 days after receipt of a request therefor signed by the holders of not less than 25% of the aggregate outstanding voting power of the Series D-1 Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Such meeting shall be held at the earliest practicable date thereafter, provided that no such meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders. Simultaneously with the expiration of the Default Period, the terms of office of all directors elected by the holders of the shares of Series D-1 Preferred Stock and the Voting Parity Stock pursuant hereto then in office shall, without further action, thereupon terminate unless otherwise required by law. Upon such termination the number of directors constituting the Board of Directors of the Company shall, without further action, be reduced by two, subject always to the increase of the number of directors pursuant to the foregoing provisions in the case of the future right of holders of the shares of Series D-1 Preferred Stock and Voting Parity Stock to elect directors as provided above.

(iv) <u>Vacancies</u>.  Any vacancy caused by the death, resignation or removal of a director who shall have been elected in accordance with this subparagraph (b) may be filled by the remaining director so elected or, if not so filled, by a vote of holders of a plurality of the voting power of the Series D-1 Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a meeting called for such purpose. Unless such vacancy shall have been filled by the remaining director as aforesaid, such meeting shall be called by the Secretary of the Company at the earliest practicable date after such death or resignation, and in any event within 10 days after receipt of a written request signed by the holders of record of at least 25% of the outstanding shares of the Series D-1 Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders.

(v) <u>Stockholders' Right to Call Meeting</u>.  If any meeting of the holders of the Series D-1 Preferred Stock and Voting Parity Stock required by this subparagraph (b) to be called shall not have been called within 30 days after personal service of a written request therefor upon the Secretary of the Company or within 30 days after mailing the same within the United States of America by registered mail addressed to the Secretary of the Company at its principal executive offices, subject to any applicable notice requirements imposed by law or regulation, then the holders of record of at least 25% of the outstanding shares of the Series D-1 Preferred Stock and Voting Parity Stock may designate in writing one of their number to call such meeting at the expense of the Company, and such meeting may be called by such person so designated upon the notice required for annual meetings of stockholders or such shorter notice (but in no event shorter than permitted by law or regulation) as may be acceptable to the holders of a majority of the total voting power of the Series D-1 Preferred Stock and Voting Parity Stock. Any holder of Series D-1 Preferred Stock and Voting Parity Stock so designated shall have access to the Series D-1 Preferred Stock and Voting Parity Stock books of the Company for the purpose of causing such meeting to be called pursuant to these provisions.

(vi) <u>Quorum</u>.  At any meeting of the holders of the Series D-1 Preferred Stock called in accordance with the provisions of this subparagraph (b) for the election

9

or removal of directors, the presence in person or by proxy of the holders of a majority of the total voting power of the Series D-1 Preferred Stock and Voting Parity Stock shall be required to constitute a quorum; in the absence of a quorum, the holders of a majority of the total number of votes present in person or by proxy shall have power to adjourn the meeting from time to time without notice other than an announcement at the meeting, until a quorum shall be present.

(c) Voting Rights on Extraordinary Matters.

(i) So long as any shares of Series D-1 Preferred Stock shall be outstanding, the holders of the Series D-1 Preferred Stock shall have the right, voting separately as a class together with holders of shares of any Voting Parity Stock (with two-thirds of the voting power of such stock at the time outstanding given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class, or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL, required for approval by such holders), to vote on: (i) the liquidation or dissolution of the Company; (ii) any proposal to authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock ranking pari passu with, or prior to, the shares of the Series D-1 Preferred Stock in powers, rights or preferences upon the liquidation, dissolution or winding up of the affairs of the Company or as to dividends; and (iii) any proposal to amend by merger, amendment or otherwise (or otherwise alter or repeal) the Certificate of Incorporation (or this resolution) if such amendment, alteration or repeal would increase or decrease the aggregate number of authorized shares of Series D-1 Preferred Stock or any Voting Parity Stock, increase or decrease the par value of the shares of Series D-1 Preferred Stock or any Voting Parity Stock, or alter or change the powers, preferences, or special rights of the shares of Series D-1 Preferred Stock or any Voting Parity Stock so as to affect them adversely. An amendment that increases the number of authorized shares of any class or series of Preferred Stock or authorizes the creation or issuance of other classes or series of Preferred Stock, in each case ranking junior to the Series D-1 Preferred Stock with respect to the payment of dividends and distribution of assets upon liquidation, dissolution or winding up shall not be considered to be such an adverse change.

(ii) So long as any shares of Series D-1 Preferred Stock shall be outstanding and unless the consent or approval of a greater number of shares shall then be required by applicable law, without first obtaining the approval of the holders of at least two-thirds of the voting power of the Series D-1 Preferred Stock at the time outstanding (voting separately as a class together with the holders of shares of Voting Parity Stock) given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class (or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL), the Company shall not either directly or indirectly or through merger or consolidation with any other entity, (i) authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock that would place or have the effect of placing restrictions on the obligation of the Company to pay dividends to the holders of Series D-1 Preferred Stock or to perform any of its obligations to the holders of Series D-1 Preferred Stock at any time; or (ii) authorize, enter into or permit to exist any covenant or agreement that would place or have the effect of placing restrictions on the obligations of the Company to pay dividends to holders of Series D-1 Preferred Stock or to perform any of its other obligations to the holders of Series D-1 Preferred

10

Stock at any time; provided, however, that notwithstanding the foregoing, the Company may from time to time enter into credit agreements and indentures that provide for limitations on the ability of the Company to pay dividends on its capital stock generally, so long as the Board of Directors determines, in its sole discretion, that such limitation is necessary in order to obtain financing on commercially reasonable terms.

(d) One Vote Per Share. In connection with any matter on which holders of the Series D-1 Preferred Stock are entitled to vote as provided in subparagraphs (b) and (c) above, or any other matter on which the holders of the Series D-1 Preferred Stock are entitled to vote as one class or otherwise pursuant to applicable law or the provisions of the Certificate of Incorporation, each holder of Series D-1 Preferred Stock shall be entitled to one vote for each share of Series D-1 Preferred Stock held by such holder.

(e) Except as otherwise required by law, the holders of Series D-1 Preferred Stock and holders of Series D-2 Preferred Stock will vote together as a single class.

6. No Sinking Fund. No sinking fund will be established for the retirement or redemption of shares of Series D-1 Preferred Stock.

7. Liquidation Rights; Priority

(a) In the event of any liquidation, dissolution or winding up of the affairs of the Company, whether voluntary or involuntary, after payment or provision for payment of the debts and other liabilities of the Company, the holders of shares of the Series D-1 Preferred Stock shall be entitled to receive, out of the assets of the Company, whether such assets are capital or surplus and whether or not any dividends as such are declared, $500 per share plus an amount equal to all accrued and unpaid dividends for the then-current plus all prior Dividend Periods, and no more, before any distribution shall be made to the holders of the Common Stock or any other class of stock or series thereof ranking junior to the Series D-1 Preferred Stock with respect to the distribution of assets upon liquidation, dissolution or winding up of the Company. The Series D-2 Preferred Stock and, unless specifically designated as junior or senior to the Series D-1 Preferred Stock with respect to the liquidation, dissolution or winding up of the affairs of the Company or as to dividends, all other series or classes of Preferred Stock of the Company shall rank on a parity with the Series D-1 Preferred Stock with respect to the distribution of assets

(b) Nothing contained in this Section 7 shall be deemed to prevent conversion of shares of the Series D-1 Preferred Stock by the Company in the manner provided in Section 3. Neither the merger nor consolidation of the Company into or with any other entity, nor the merger or consolidation of any other entity into or with the Company, nor a sale, transfer or lease of all or any part of the assets of the Company, shall be deemed to be a liquidation, dissolution or winding up of the Company within the meaning of this Section 7.

(c) Written notice of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Company, stating a payment date and the place where the distributable amounts shall be payable, shall be given by mail, postage prepaid, no less than 30

days prior to the payment date stated therein, to the holders of record of the Series D-1 Preferred Stock at their respective addresses as the same shall appear on the books of the Company.

(d) If the amounts available for distribution with respect to the Series D-1 Preferred Stock and all other outstanding stock of the Company ranking on a parity with the Series D-1 Preferred Stock upon liquidation, dissolution or winding up are not sufficient to satisfy the full liquidation rights of all the outstanding Series D-1 Preferred Stock and stock ranking on a parity therewith, then the holders of each series of such stock will share ratably in any such distribution of assets in proportion to the full respective preferential amount (which in the case of the Series D-1 Preferred Stock shall mean the amounts specified in Section 7(a) and in the case of any other series of preferred stock may include accumulated dividends if contemplated by such series) to which they are entitled

8. Status of Shares Converted. Shares of Series D-1 Preferred Stock converted or purchased or otherwise acquired for value by the Company, shall, after such event, have the status of authorized and unissued shares of Preferred Stock without designation and may be reissued by the Company at any time as shares of any series of Preferred Stock.

9. Effectiveness. This certificate shall be effective as of 5:00 p.m., New York City time, on June 12, 2000.

12

IN WITNESS WHEREOF, Tribune Company has caused this certificate to be
signed by Crane H. Kenney, its Senior Vice President, General Counsel and Secretary, this 12th
day of June, 2000

TRIBUNE COMPANY

By: _____

Name:  Crane H. Kenney
Title:  Senior Vice President,
        General Counsel and Secretary

## Schedule A

### Dividend Rates

| Year | Dividend Rate |
|------|---------------|
| 2000 | 5.80% |
| 2001 | 5.80% |
| 2002 | 6.01% |
| 2003 | 6 22% |
| 2004 | 6.44% |
| 2005 | 6.67% |
| 2006 | 6.91% |
| 2007 | 7.15% |
| 2008 | 7.41% |
| 2009 | 7 67% |
| 2010 | 7-95% |
| 2011 | 8 23% |
| 2012 and thereafter | 8 40% |

14

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 05:05 PM 06/12/2000*
*001297647 – 0674607*

# CERTIFICATE OF DESIGNATION

## OF THE

## PREFERRED STOCK, SERIES D-2

### (WITHOUT PAR VALUE)

## OF

## TRIBUNE COMPANY

### Pursuant to Section 151 of the

### Delaware General Corporation Law

The undersigned duly authorized officer of Tribune Company (the "Company"), a corporation organized and existing under the Delaware General Corporation Law (the "DGCL"), in accordance with the provisions of Section 103 thereof, and pursuant to Section 151 thereof, DOES HEREBY CERTIFY:

That pursuant to the authority conferred upon the Board of Directors by the Amended and Restated Certificate of Incorporation of the Company (the "Certificate of Incorporation"), the Board of Directors of the Company (the "Board" or "Board of Directors") on June 12, 2000 adopted the following resolution creating 245,100 shares of Preferred Stock, Series D-2 (in addition to the shares of Preferred Stock, Series D-1, which were also created on such date), without par value, each designated as set forth below:

RESOLVED, that pursuant to the authority expressly granted to and vested in the Board of Directors by provisions of the Certificate of Incorporation, and the DGCL, the issuance of a series of the Company's preferred stock, without par value (the "Preferred Stock"), which shall consist of 245,100 of the 12,000,000 shares of Preferred Stock that the Company now has authority to issue, be, and the same hereby is, authorized, and the Board of Directors hereby fixes the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, of the shares of such series (in addition to the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, set forth in the Certificate of Incorporation that may be applicable to the Preferred Stock) as follows:

1. Designation and Rank  The designation of such series of the Preferred Stock authorized by this resolution shall be the Preferred Stock, Series D-2 (the "Series D-2 Preferred Stock"). The number of shares of Series D-2 Preferred Stock shall be 245,100. The Series D-2 Preferred Stock shall rank prior to the Common Stock (as hereinafter defined) of the Company and to all other classes and series of equity securities of the Company now or hereafter authorized, issued or outstanding (the Common Stock and such other classes and series of equity securities not expressly designated as ranking on a parity with or senior to the Series D-2

Preferred Stock collectively may be referred to herein as the "Junior Stock") as to dividend rights and rights upon liquidation, winding up or dissolution of the Company, other than (a) the Company's (i) 8% Cumulative Convertible Preferred Stock, Series C (the "Series C Preferred Stock") and (ii) Series D-1 Preferred Stock (the "Series D-1 Preferred Stock"), with respect to which the Series D-2 Preferred Stock is expressly designated as ranking on a parity as to dividend rights and rights upon liquidation, winding up or dissolution of the Company; and (b) any other classes or series of equity securities of the Company expressly designated as ranking on a parity with (collectively with the Series C Preferred Stock and the Series D-1 Preferred Stock, the "Parity Stock") or senior to (the "Senior Stock") the Series D-2 Preferred Stock as to dividend rights and rights upon liquidation, winding up or dissolution of the Company. The Series D-2 Preferred Stock shall be subject to creation of Senior Stock, Parity Stock and Junior Stock, to the extent not expressly prohibited by the Certificate of Incorporation or Section 5(c)(i) or 5(c)(ii) hereof, with respect to the payment of dividends and upon liquidation.

2.  Cumulative Dividends; Priority.

(a) Payment of Dividends.

(i) The holders of record of shares of Series D-2 Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefor, cumulative cash dividends from the date of issuance of such shares at the rate per annum per share of 5.8% (*i.e.*, $29 per annum) (the "Dividend Rate"), as adjusted from time to time pursuant to Section 2(c) hereof. Dividends shall be payable quarterly on the tenth day of March, June, September and December in each year (or if such day is a non-business day, on the next business day) with respect to the quarter ending on the last day of such month, commencing on September 10, 2000 (each of such dates a "Dividend Payment Date"). No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the Series D-2 Preferred Stock that may be in arrears.

(ii) Each declared dividend shall be payable to holders of record as they appear on the stock books of the Company at the close of business on such record dates, not more than 60 calendar days preceding the applicable Dividend Payment Dates therefor, as are determined by the Board of Directors (each of such dates a "Record Date"). Quarterly dividend periods (each a "Dividend Period") shall commence on and include the first day of January, April, July, and October of each year and shall end on and include the last day of March, June, September and December, respectively of such year. Dividends on the shares of Series D-2 Preferred Stock shall be fully cumulative and shall accrue (whether or not declared) from the first day of each Dividend Period; provided, however, that the amount of any dividend payable for any Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period.

(b) Priority as to Dividends.

(i) Subject to the provisions hereof, no cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set apart for payment on Preferred Stock that constitutes Parity Stock or Junior Stock with respect to

2

dividends for any Dividend Period unless full dividends on the Series D-2 Preferred Stock for the immediately preceding Dividend Period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment). When dividends are not paid in full (or declared and a sum sufficient for such full payment not so set apart) upon the Series D-2 Preferred Stock and any Parity Stock, all dividends declared upon shares of Series D-2 Preferred Stock and any Parity Stock shall be declared pro rata with respect thereto, so that in all cases the amount of dividends declared per share on the Series D-2 Preferred Stock and such Parity Stock shall bear to each other the same ratio that accrued dividends for the then-current Dividend Period per share on the shares of Series D-2 Preferred Stock (which shall include any accumulation in respect of unpaid dividends for prior Dividend Periods) and dividends, including accumulations, if any, of such Parity Stock, bear to each other.

(ii) Except as provided in the preceding paragraph, full dividends on the Series D-2 Preferred Stock must be declared and paid or set apart for payment for the immediately preceding Dividend Period before (A) any cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set aside for payment upon the Common Stock or any other Junior Stock of the Company or (B) any Common Stock or any other Junior Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock), except by redemption into or exchange for Junior Stock or (C) any Series D-2 Preferred Stock or Parity Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock) The Company shall not permit any subsidiary of the Company to purchase or otherwise acquire for consideration any shares of stock of the Company if under the preceding sentence, the Company would be prohibited from purchasing or otherwise acquiring such shares at such time and in such manner.

(iii) No dividend shall be paid or set aside for holders of the Series D-2 Preferred Stock for any Dividend Period unless full dividends on any Preferred Stock that constitutes Senior Stock with respect to dividends for that period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment)

(c) Adjustment to Dividend Rate.

(i) The Dividend Rate shall not be adjusted prior to the end of the Dividend Period ending on December 31, 2001.

(ii) The Dividend Rate for each subsequent year (commencing with the year that begins January 1, 2002) shall be adjusted upward in accordance with Schedule A attached hereto.

(iii) Increases in the Dividend Rate are subject to the following limitation: the Dividend Rate shall, under no circumstances, exceed 8.4% per annum.

3

### 3. Conversion at Option of the Company.

#### (a) General.

(i) The shares of the Series D-2 Preferred Stock shall not be convertible at the option of the Company except upon the later to occur of (x) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series D-2 Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No. 2 have been distributed to the beneficiaries thereof and (y) February 1, 2025 (such later date being the "Convertibility Date"). Subject to and upon compliance with the provisions of this Section 3, shares of Series D-2 Preferred Stock may be converted, in whole or in part, at the election of the Company by resolution of the Board of Directors, upon notice as provided in Section 3(b), at any time or from time to time on or after the Convertibility Date. Conversion shall be made by delivering to the holders of Series D-2 Preferred Stock, in respect of the conversion of each share of Series D-2 Preferred Stock so converted, certificates representing the number of fully paid and non-assessable shares (the "Conversion Shares") of common stock, par value $.01 per share, of the Company ("Common Stock") equal to (subject to Section 3(h) hereof) the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series D-2 Preferred Stock to the Conversion Date (as hereinafter defined) divided by (2) the Common Share Value (as hereinafter defined). The aggregate number of shares of Common Stock (and, if applicable, "Conversion Preferred," as such term is defined below) that a holder of shares of Series D-2 Preferred Stock that have been converted is entitled to receive pursuant to this Section 3 or Section 4 is hereinafter referred to as the "Aggregate Conversion Shares."

(ii) The "Common Share Value" shall mean the average of the closing prices of the Common Stock for the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date (as defined below), as reported in *The Wall Street Journal*, or, if no closing prices were so reported, the average of the mean between the high bid and low asked price per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date in the over-the-counter market, as reported by the National Association of Securities Dealers, Inc. Automated Quotation System or such other system then in use, or, if the Common Stock is not then quoted by any such organization, the average of the mean between the closing bid and asked prices per share of Common Stock for each of the 20 days during which trades of Common Stock occurred immediately preceding the Valuation Date, as furnished by a professional market maker making a market in the Common Stock, or, if there is no such market maker, the fair market value of a share of Common Stock determined by whatever method the Board of Directors reasonably determines to use. In the case of a conversion pursuant to this Section 3, the "Valuation Date" shall mean the Conversion Notice Date (as defined in Section 3(b)), and in the case of any conversion pursuant to Section 4, the "Valuation Date" shall mean the Conversion Time (as hereinafter defined).

(b) Notice of Conversion. Notice of any conversion, setting forth (i) the Conversion Date (as defined in Section 3(c) hereof), (ii) a statement that dividends on the shares of Series D-2 Preferred Stock to be converted will cease to accrue on such Conversion Date, and (iii) the method(s) by which the holders may surrender the certificates representing shares of Series D-2 Preferred Stock that have been converted and obtain the Conversion Shares therefor,

4

shall be mailed, postage prepaid, on a date (the "Conversion Notice Date") that is at least 15 days but not more than 45 days prior to said Conversion Date to each holder of record of the Series D-2 Preferred Stock to be converted at his, her or its address as the same shall appear on the books of the Company. If less than all the shares of the Series D-2 Preferred Stock owned by such holder are then to be converted, the notice shall specify the number of shares thereof that are to be converted and the numbers of the certificates representing such shares. If applicable, the notice shall also specify the "Maximum Number" applicable to, and the amount of "Conversion Cash" to be received by (absent an election pursuant to Section 3(h)(v) hereof to receive "Conversion Preferred") such holder (as such terms are defined below).

(c) <u>Method of Conversion</u>. The surrender of any certificate evidencing shares of Series D-2 Preferred Stock that have been converted shall be made by the holder thereof by the surrender of the certificate or certificates formerly representing the shares of Series D-2 Preferred Stock converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series D-2 Preferred Stock) at any time during its usual business hours. Shares of Series D-2 Preferred Stock called for conversion shall be deemed to have been converted, and the shares of Common Stock (and, if applicable, Conversion Preferred) to be issued in respect of the shares of Series D-2 Preferred Stock converted shall be deemed to have been issued, as of the close of business on the date fixed for conversion (the "Conversion Date"), without regard to when certificates evidencing such Series D-2 Preferred Stock are surrendered pursuant to this Section 3(c) or certificates evidencing such Common Stock (and, if applicable, Conversion Preferred) are issued pursuant to Section 3(d). The rights of the holder of Series D-2 Preferred Stock that has been converted, except for the right to receive the Aggregate Conversion Shares therefor in accordance herewith (and any cash payments to which such holder is entitled pursuant to Sections 3(e) and (h) hereof), shall cease on the Conversion Date. In the case of lost or destroyed certificates evidencing ownership of shares of Series D-2 Preferred Stock that have been converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

(d) <u>Issuance of Certificates for Common Stock</u>. As soon as practicable after its receipt of any certificate or certificates formerly evidencing ownership of shares of Series D-2 Preferred Stock that have been converted, the Company shall issue and shall deliver to the person for whose account such certificates formerly representing shares of Series D-2 Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock (and, if applicable, Conversion Preferred) issuable upon the conversion of such shares of Series D-2 Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares or Conversion Cash as determined by the Company, in accordance with Sections 3(e) and (h) hereof, respectively.

(e) <u>Fractional Shares</u>. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series D-2 Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series D-2 Preferred Stock shall be converted at one time for the account of the same holder, the number of

full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(f) Payment of Taxes. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series D-2 Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(g) Common Stock Reserved for Conversion. The Company shall at all times from and after the Conversion Date reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series D-2 Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series D-2 Preferred Stock

(h) Limitation on the Number of Shares of Common Stock

(i) The number of shares of Common Stock into which the Series D-2 Preferred Stock may be converted shall be limited, as set forth herein.

(ii) The maximum number of shares of Common Stock into which the Series D-2 Preferred Stock may be converted is, in the aggregate, 7,392,355 shares of Common Stock (the "Maximum Number"). If the Company in any manner subdivides or combines the outstanding shares of Common Stock, then the Maximum Number shall be adjusted appropriately.

(iii) On conversion, no holder shall be entitled to receive more shares of Common Stock than its pro rata share of the Maximum Number (a holder's "Pro Rata Number"), which shall be calculated by dividing (A) the number of shares of Series D-2 Preferred Stock held by such holder which are then being converted, by (B) 245,100.

(iv) If, as a result of Section 3(h)(iii), immediately above, a holder's Pro Rata Number is less than the number of shares of Common Stock to which such holder would otherwise be entitled (a holder's "Unrestricted Number"), then, such holder shall be entitled to receive from the Company a cash payment ("Conversion Cash") equal to:

(A) the Common Share Value, multiplied by

(B) the positive difference between (a) such holder's Unrestricted Number minus (b) such holder's Pro Rata Number.

(v) In lieu of Conversion Cash, a holder may elect, by providing written notice to the Company, which notice must be received by the Company at least five days prior to the Conversion Date, to exchange, in lieu of conversion, the number of shares of Series

6

D-2 Preferred Stock held by such holder which as a result of Section 3(h)(iii) cannot be fully converted into such holder's Unrestricted Number, for a like number of shares of a new series of preferred stock of the Company (the "Conversion Preferred") which shall be identical to the Series D-2 Preferred Stock, except that it shall (A) not be convertible into or exchangeable for Common Stock and (B) be redeemable, at liquidation value plus accrued but unpaid dividends, by the Company at any time.

4    Conversion at the Option of Holders.

(a) General.  After the later to occur of (i) the date on which a written notice has been mailed or otherwise distributed by the Company to each record holder of the Series D-2 Preferred Stock stating that the assets of either Chandler Trust No. 1 or Chandler Trust No 2 have been distributed to the beneficiaries thereof and (ii) February 1, 2025, the holder of any Series D-2 Preferred Stock may convert pursuant to this Section 4 all or any part (in whole number of shares only) of the Series D-2 Preferred Stock held by such holder into fully paid and non-assessable shares of Common Stock.  Subject to Section 4(g) below, the number of shares of Common Stock into which a share of Series D-2 Preferred Stock may be converted shall be equal to the quotient of (1) $500 plus accrued and unpaid dividends on such shares of Series D-2 Preferred Stock to the Conversion Time (as hereinafter defined) divided by (2) the Common Share Value.

(b) Method of Conversion.  Each conversion of Series D-2 Preferred Stock shall be effected by the surrender of the certificate or certificates representing the shares of Series D-2 Preferred Stock to be converted (with proper endorsement or instruments of transfer) to the Company at the principal office of the Company (or such other office or agency of the Company as the Company may designate in writing to the holder or holders of the Series D-2 Preferred Stock) at any time during its usual business hours, together with written notice by the holder of such Series D-2 Preferred Stock stating that such holder desires to convert the shares of Series D-2 Preferred Stock, or a stated number of such shares, represented by such certificate or certificates, which notice shall also specify the name or names (with addresses) and denominations in which the certificate or certificates for the Common Stock (and, if applicable, Conversion Preferred) shall be issued and shall include instructions for delivery thereof  If such holder desires to receive Conversion Preferred in lieu of any Conversion Cash that may be payable to such holder, the notice shall so state.  Any conversion pursuant to this Section 4 shall be deemed to have been effected as of the close of business on the date on which such certificate or certificates shall have been surrendered and such notice shall have been received, and at such time (the "Conversion Time") the rights of the holder of Series D-2 Preferred Stock (or specified portion thereof) as such holder shall cease and the person or persons in whose name or names any certificate or certificates for shares of Common Stock (and, if applicable, Conversion Preferred) are to be issued upon conversion shall be deemed to have become the holder or holders of record of the shares of Common Stock (and, if applicable, Conversion Preferred) represented thereby.  In the case of lost or destroyed certificates evidencing ownership of shares of Series D-2 Preferred Stock to be converted, the holder shall submit proof of loss or destruction and such indemnity as shall be required by the Company.

(c) Issuance of Certificates for Common Stock.  As soon as practicable after its receipt of any certificate or certificates evidencing ownership of shares of Series D-2

7

Preferred Stock to be converted pursuant to this Section 4, the Company shall issue and shall deliver to the person for whose account such shares of Series D-2 Preferred Stock were so surrendered, or on his, her or its written order, a certificate or certificates for the number of full shares of Common Stock (and, if applicable, Conversion Preferred) issuable upon the conversion of such shares of Series D-2 Preferred Stock and a check or cash payment (if any) to which such holder is entitled with respect to fractional shares or Conversion Cash as determined by the Company, in accordance with Sections 4(d) and (g) hereof, respectively.

(d) Fractional Shares. No fractional shares or scrip representing fractional shares shall be issued upon the conversion of any shares of Series D-2 Preferred Stock, but the holder thereof will receive in cash an amount equal to the value of such fractional share of Common Stock based on the Common Share Value. If more than one share of Series D-2 Preferred Stock shall be converted at one time for the account of the same holder, the number of full shares issuable upon conversion thereof shall be computed on the basis of the aggregate number of such shares so surrendered.

(e) Payment of Taxes. The Company shall pay any tax in respect of the issuance of stock certificates on conversion of shares of Series D-2 Preferred Stock. The Company shall not, however, be required to pay any tax that may be payable in respect of any transfer involved in the issuance and delivery of stock in any name other than that of the holder of the shares converted, and the Company shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issuance thereof shall have paid to the Company the amount of any such tax or shall have established to the satisfaction of the Company that such tax has been paid.

(f) Common Stock Reserved for Conversion. The Company shall at all times from and after the Conversion Time reserve and keep available out of its authorized and unissued Common Stock the full number of shares of Common Stock deliverable upon the conversion of all outstanding shares of Series D-2 Preferred Stock and shall take all such action as may be required from time to time in order that it may validly and legally issue fully paid and non-assessable shares of Common Stock upon conversion of the Series D-2 Preferred Stock.

(g) Limitation on the Number of Shares of Common Stock.

(i) The number of shares of Common Stock into which the Series D-2 Preferred Stock may be converted shall be limited, as set forth herein.

(ii) On conversion, no holder shall be entitled to receive more shares of Common Stock than its Pro Rata Number.

(iii) If, as a result of Section 4(g)(ii), immediately above, a holder's Pro Rata Number is less than such holder's Unrestricted Number, then such holder shall be entitled to receive from the Company the Conversion Cash.

(iv) In lieu of Conversion Cash, a holder may elect, by providing notice of such election in the notice of conversion delivered pursuant to Section 4(b), to exchange, in lieu of conversion, the number of shares of Series D-2 Preferred Stock held by such

8

holder which as a result of Section 4(g)(iii) cannot be fully converted into such holder's
Unrestricted Number, for a like number of shares of Conversion Preferred.

## 5. Voting Rights.

(a) General Voting Rights. Except as expressly provided hereinafter in
this Section 5, or as otherwise from time to time required by applicable law, the Series D-2
Preferred Stock shall have no voting rights.

(b) Voting Rights Upon Dividend Arrears.

(i) Right to Elect Directors. In the event that an amount equal to
six quarterly dividend payments on the Series D-2 Preferred Stock shall have accrued and be
unpaid (the occurrence of such contingency marking the beginning of a period herein referred to
as the "Default Period," which shall extend until such time as all accrued and unpaid dividends
for all previous Dividend Periods and for the current Dividend Period on all shares of Series D-2
Preferred Stock then outstanding shall have been declared and paid or declared and a sum
sufficient for such full payment set apart for payment), the holders of the Series D-2 Preferred
Stock shall have the right, voting separately as a class together with holders of shares of the
Series D-1 Preferred Stock and any other Parity Stock upon which like voting rights have been
conferred and are exercisable (such shares of Series D-1 Preferred Stock, shares of Series D-2
Preferred Stock, and other shares of Parity Stock are hereinafter referred to as "Voting Parity
Stock"), to elect two members of the Board of Directors, each member to be in addition to the
then authorized number of directors, at the next annual meeting of stockholders or at a special
meeting called as described below and thereafter until the Default Period shall have ended.

(ii) Special Meeting; Written Consent. Whenever such voting right
shall vest, it may be exercised initially by the vote of the holders of a plurality of the voting
power of Series D-2 Preferred Stock and Voting Parity Stock present and voting as a single class,
in person or by proxy, at a special meeting of holders of the Series D-2 Preferred Stock and
Voting Parity Stock or at the next annual meeting of stockholders. A special meeting for the
exercise of such right shall be called by the Secretary of the Company as promptly as possible,
and in any event within 10 days after receipt of a written request signed by the holders of record
of at least 25% of the outstanding shares of the Series D-2 Preferred Stock and Voting Parity
Stock, subject to any applicable notice requirements imposed by law or regulation.
Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be
held during the 90-day period preceding the date fixed for the annual meeting of stockholders.
Any action required or permitted to be taken at any such special meeting of such holders may be
taken by a consent or consents in writing of such stockholders, setting forth the action so taken,
which consent or consents shall be signed by the holders of Series D-2 Preferred Stock and
Voting Parity Stock representing a majority of the voting power of shares of such Series D-2
Preferred Stock and Voting Parity Stock and shall be delivered to the Company in the manner set
forth from time to time in the DGCL.

(iii) Term of Office of Directors. Any director who shall have
been elected by holders of the Series D-2 Preferred Stock and Voting Parity Stock entitled to
vote in accordance with this subparagraph (b) shall hold office for a term expiring (subject to the

9

earlier expiry of such term, as set forth below) at the annual meeting of stockholders at which the term of office of his class shall expire and during such term may be removed at any time, only for cause, by, and only by, the affirmative vote of the holders of record of a majority of the voting power of the Series D-2 Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a special meeting of such stockholders called for such purpose, and any vacancy created by such removal may also be filled at such meeting. A meeting for the removal of a director elected by the holders of the Series D-2 Preferred Stock and Voting Parity Stock and the filling of the vacancy created thereby shall be called by the Secretary of the Company as promptly as possible and in any event within 10 days after receipt of a request therefor signed by the holders of not less than 25% of the aggregate outstanding voting power of the Series D-2 Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Such meeting shall be held at the earliest practicable date thereafter, provided that no such meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders. Simultaneously with the expiration of the Default Period, the terms of office of all directors elected by the holders of the shares of Series D-2 Preferred Stock and the Voting Parity Stock pursuant hereto then in office shall, without further action, thereupon terminate unless otherwise required by law. Upon such termination the number of directors constituting the Board of Directors of the Company shall, without further action, be reduced by two, subject always to the increase of the number of directors pursuant to the foregoing provisions in the case of the future right of holders of the shares of Series D-2 Preferred Stock and Voting Parity Stock to elect directors as provided above.

    (iv) <u>Vacancies</u>. Any vacancy caused by the death, resignation or removal of a director who shall have been elected in accordance with this subparagraph (b) may be filled by the remaining director so elected or, if not so filled, by a vote of holders of a plurality of the voting power of the Series D-2 Preferred Stock and Voting Parity Stock present and voting as a single class, in person or by proxy, at a meeting called for such purpose. Unless such vacancy shall have been filled by the remaining director as aforesaid, such meeting shall be called by the Secretary of the Company at the earliest practicable date after such death or resignation, and in any event within 10 days after receipt of a written request signed by the holders of record of at least 25% of the outstanding shares of the Series D-2 Preferred Stock and Voting Parity Stock, subject to any applicable notice requirements imposed by law or regulation. Notwithstanding the provisions of this paragraph, no such special meeting shall be required to be held during the 90-day period preceding the date fixed for the annual meeting of stockholders.

    (v) <u>Stockholders' Right to Call Meeting</u>. If any meeting of the holders of the Series D-2 Preferred Stock and Voting Parity Stock required by this subparagraph (b) to be called shall not have been called within 30 days after personal service of a written request therefor upon the Secretary of the Company or within 30 days after mailing the same within the United States of America by registered mail addressed to the Secretary of the Company at its principal executive offices, subject to any applicable notice requirements imposed by law or regulation, then the holders of record of at least 25% of the outstanding shares of the Series D-2 Preferred Stock and Voting Parity Stock may designate in writing one of their number to call such meeting at the expense of the Company, and such meeting may be called by such person so designated upon the notice required for annual meetings of stockholders or such shorter notice (but in no event shorter than permitted by law or regulation) as may be acceptable

to the holders of a majority of the total voting power of the Series D-2 Preferred Stock and Voting Parity Stock. Any holder of Series D-2 Preferred Stock and Voting Parity Stock so designated shall have access to the Series D-2 Preferred Stock and Voting Parity Stock books of the Company for the purpose of causing such meeting to be called pursuant to these provisions.

(vi) Quorum. At any meeting of the holders of the Series D-2 Preferred Stock called in accordance with the provisions of this subparagraph (b) for the election or removal of directors, the presence in person or by proxy of the holders of a majority of the total voting power of the Series D-2 Preferred Stock and Voting Parity Stock shall be required to constitute a quorum; in the absence of a quorum, the holders of a majority of the total number of votes present in person or by proxy shall have power to adjourn the meeting from time to time without notice other than an announcement at the meeting, until a quorum shall be present.

(c) Voting Rights on Extraordinary Matters.

(i) So long as any shares of Series D-2 Preferred Stock shall be outstanding, the holders of the Series D-2 Preferred Stock shall have the right, voting separately as a class together with holders of shares of any Voting Parity Stock (with two-thirds of the voting power of such stock at the time outstanding given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class, or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL, required for approval by such holders), to vote on: (i) the liquidation or dissolution of the Company; (ii) any proposal to authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock ranking pari passu with, or prior to, the shares of the Series D-2 Preferred Stock in powers, rights or preferences upon the liquidation, dissolution or winding up of the affairs of the Company or as to dividends; and (iii) any proposal to amend by merger, amendment or otherwise (or otherwise alter or repeal) the Certificate of Incorporation (or this resolution) if such amendment, alteration or repeal would increase or decrease the aggregate number of authorized shares of Series D-2 Preferred Stock or any Voting Parity Stock, increase or decrease the par value of the shares of Series D-2 Preferred Stock or any Voting Parity Stock, or alter or change the powers, preferences, or special rights of the shares of Series D-2 Preferred Stock or any Voting Parity Stock so as to affect them adversely  An amendment that increases the number of authorized shares of any class or series of Preferred Stock or authorizes the creation or issuance of other classes or series of Preferred Stock, in each case ranking junior to the Series D-2 Preferred Stock with respect to the payment of dividends and distribution of assets upon liquidation, dissolution or winding up shall not be considered to be such an adverse change.

(ii) So long as any shares of Series D-2 Preferred Stock shall be outstanding and unless the consent or approval of a greater number of shares shall then be required by applicable law, without first obtaining the approval of the holders of at least two-thirds of the voting power of the Series D-2 Preferred Stock at the time outstanding (voting separately as a class together with the holders of shares of Voting Parity Stock) given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a class (or by a consent or consents in writing setting forth such approval, which consent shall be delivered to the Company in the manner set forth from time to time in the DGCL), the Company shall not either directly or indirectly or through merger or consolidation with any other

11

entity, (i) authorize, create or issue, or increase the authorized or issued amount of, any class or series of capital stock that would place or have the effect of placing restrictions on the obligation of the Company to pay dividends to the holders of Series D-2 Preferred Stock or to perform any of its obligations to the holders of Series D-2 Preferred Stock at any time; or (ii) authorize, enter into or permit to exist any covenant or agreement that would place or have the effect of placing restrictions on the obligations of the Company to pay dividends to holders of Series D-2 Preferred Stock or to perform any of its other obligations to the holders of Series D-2 Preferred Stock at any time; provided, however, that notwithstanding the foregoing, the Company may from time to time enter into credit agreements and indentures that provide for limitations on the ability of the Company to pay dividends on its capital stock generally, so long as the Board of Directors determines, in its sole discretion, that such limitation is necessary in order to obtain financing on commercially reasonable terms.

(d) One Vote Per Share. In connection with any matter on which holders of the Series D-2 Preferred Stock are entitled to vote as provided in subparagraphs (b) and (c) above, or any other matter on which the holders of the Series D-2 Preferred Stock are entitled to vote as one class or otherwise pursuant to applicable law or the provisions of the Certificate of Incorporation, each holder of Series D-2 Preferred Stock shall be entitled to one vote for each share of Series D-2 Preferred Stock held by such holder.

(e) Except as otherwise required by law, the holders of Series D-2 Preferred Stock and holders of Series D-1 Preferred Stock will vote together as a single class.

6. No Sinking Fund. No sinking fund will be established for the retirement or redemption of shares of Series D-2 Preferred Stock.

7. Liquidation Rights; Priority.

(a) In the event of any liquidation, dissolution or winding up of the affairs of the Company, whether voluntary or involuntary, after payment or provision for payment of the debts and other liabilities of the Company, the holders of shares of the Series D-2 Preferred Stock shall be entitled to receive, out of the assets of the Company, whether such assets are capital or surplus and whether or not any dividends as such are declared, $500 per share plus an amount equal to all accrued and unpaid dividends for the then-current plus all prior Dividend Periods, and no more, before any distribution shall be made to the holders of the Common Stock or any other class of stock or series thereof ranking junior to the Series D-2 Preferred Stock with respect to the distribution of assets upon liquidation, dissolution or winding up of the Company. The Series D-2 Preferred Stock and, unless specifically designated as junior or senior to the Series D-2 Preferred Stock with respect to the liquidation, dissolution or winding up of the affairs of the Company or as to dividends, all other series or classes of Preferred Stock of the Company shall rank on a parity with the Series D-2 Preferred Stock with respect to the distribution of assets.

(b) Nothing contained in this Section 7 shall be deemed to prevent conversion of shares of the Series D-2 Preferred Stock by the Company in the manner provided in Section 3. Neither the merger nor consolidation of the Company into or with any other entity, nor the merger or consolidation of any other entity into or with the Company, nor a sale, transfer

12

or lease of all or any part of the assets of the Company, shall be deemed to be a liquidation, dissolution or winding up of the Company within the meaning of this Section 7.

(c) Written notice of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Company, stating a payment date and the place where the distributable amounts shall be payable, shall be given by mail, postage prepaid, no less than 30 days prior to the payment date stated therein, to the holders of record of the Series D-2 Preferred Stock at their respective addresses as the same shall appear on the books of the Company.

(d) If the amounts available for distribution with respect to the Series D-2 Preferred Stock and all other outstanding stock of the Company ranking on a parity with the Series D-2 Preferred Stock upon liquidation, dissolution or winding up are not sufficient to satisfy the full liquidation rights of all the outstanding Series D-2 Preferred Stock and stock ranking on a parity therewith, then the holders of each series of such stock will share ratably in any such distribution of assets in proportion to the full respective preferential amount (which in the case of the Series D-2 Preferred Stock shall mean the amounts specified in Section 7(a) and in the case of any other series of preferred stock may include accumulated dividends if contemplated by such series) to which they are entitled.

8. Status of Shares Converted. Shares of Series D-2 Preferred Stock converted or purchased or otherwise acquired for value by the Company, shall, after such event, have the status of authorized and unissued shares of Preferred Stock without designation and may be reissued by the Company at any time as shares of any series of Preferred Stock.

9. Effectiveness. This certificate shall be effective as of 5:00 p.m., New York City time, on June 12, 2000.

13

IN WITNESS WHEREOF, Tribune Company has caused this certificate to be signed by Crane H. Kenney, its Senior Vice President, General Counsel and Secretary, this 12th day of June, 2000.

TRIBUNE COMPANY

By: _____

Name: Crane H. Kenney
Title: Senior Vice President,
       General Counsel and Secretary

14

Schedule A

Dividend Rates

| Year | Dividend Rate |
|------|---------------|
| 2000 | 5.80% |
| 2001 | 5.80% |
| 2002 | 6.01% |
| 2003 | 6.22% |
| 2004 | 6.44% |
| 2005 | 6.67% |
| 2006 | 6.91% |
| 2007 | 7.15% |
| 2008 | 7.41% |
| 2009 | 7.67% |
| 2010 | 7.95% |
| 2011 | 8.23% |
| 2012 and thereafter | 8.40% |

15

CERTIFICATE OF OWNERSHIP AND MERGER
OF
TRIBUNE PROPERTIES, INC.
INTO
TRIBUNE COMPANY

The undersigned corporation does hereby certify that:

1. Tribune Company, (the "Company") is a business corporation of the State of Delaware.

2. The Company is the owner of all of the outstanding shares of the stock of Tribune Properties, Inc., ("TPI") which is also a business corporation of the State of Delaware.

3. On December 18, 2000, the Board of Directors of the Company adopted the following resolutions to merge TPI into the Company:

**WHEREAS,** management has proposed that TPI, a wholly-owned subsidiary of the Company, be merged with and into the Company.

**NOW, THEREFORE, BE IT RESOLVED,** that the merger of TPI, a wholly-owned subsidiary of the Company, with and into the Company is hereby authorized and approved under the terms and conditions of the following Agreement of Merger (the "Agreement"):

AGREEMENT OF MERGER
OF
TRIBUNE PROPERTIES, INC.
WITH AND INTO
TRIBUNE COMPANY

FIRST: TPI, a Delaware corporation and wholly-owned subsidiary of the Company, shall be merged with and into the Company, a Delaware corporation, and the Company shall be the surviving corporation.

SECOND: The Certificate of Incorporation of the Company on the effective date of the merger shall continue to be its Certificate of Incorporation.

THIRD: On the effective date of the merger, the separate existence of TPI shall cease, and the Company as the surviving corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises of TPI and all property, real, personal or mixed, tangible or intangible, and all debts due on whatever account and all other choses in action and all and every other interest of or belonging to or due TPI shall be taken and deemed to be transferred to and vested in the Company without further act or deed, and the title to any real estate, or any interest therein vested in TPI by deed or otherwise shall not revert or be in any way impaired by reason of this merger; but all rights of creditors and all liens upon any property of TPI shall be preserved unimpaired, and all debts, liabilities and obligations of TPI shall attach to the Company and may be enforced against it to the same extent as though such debts, liabilities and obligations have been incurred or contracted by it.

FOURTH: On the effective date of the merger, each share of stock of the Company issued and outstanding on that date shall remain issued and outstanding and shall not be exchanged or converted in any manner. All shares of stock of TPI issued and outstanding shall be cancelled forthwith and the certificates representing such shares shall be presented for surrender and cancellation.

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 06:55 PM 12/26/2000*
*001649949 — 0674607*

FIFTH: The effective date of the merger shall be December 31, 2000.

SIXTH: The Company will cause to be executed and filed and/or recorded any document or documents prescribed by the laws of the State of Delaware and any other applicable jurisdiction and will cause to be performed all necessary acts therein and elsewhere to effectuate the merger

SEVENTH: This Agreement may be amended or terminated and abandoned by the board of directors of TPI and the Company at any time prior to the effective date as filed with the office of the Delaware Secretary of State.

> **RESOLVED FURTHER,** that the Chairman, President and Chief Executive Officer, the Executive Vice President, any Senior Vice President or any Vice President of the Company be, and each hereby is, authorized to execute and deliver, in the name and on behalf of the Company, as appropriate, any and all agreements, certificates and instruments and to do and perform all such acts and things on behalf of the Company as they may deem necessary in order to fully effectuate the purposes of the foregoing resolution.

Executed on December _2/_, 2000

TRIBUNE COMPANY

By:_____

Name: Mark W. Hianik

Title: Vice President

Dec-27-00   04:44pm   From-TRIBUNE CO LEGAL DEPT          +312 222 4208          T-813   P.002/003   F-249

# CERTIFICATE OF OWNERSHIP AND MERGER
## OF CHANDIS ACQUISITION CORPORATION
### INTO TRIBUNE COMPANY

The undersigned corporation does hereby certify that:

1. Tribune Company (the "Company") is a Delaware corporation.

2. The Company is the owner of all of the outstanding shares of the capital stock of Chandis Acquisition Corporation ("Chandis"), which is also a Delaware corporation.

3. On December 14, 2000, the Chief Executive Officer of the Company, acting on behalf of the Board of Directors of the Company and in accordance with authority delegated to the Chief Executive Officer by the Board of Directors, adopted the following resolutions to merge Chandis with and into the Company:

WHEREAS, pursuant to resolutions adopted by the Board of Directors of the Company at the regular meeting held on February 17, 1998, the Chief Executive Officer is authorized in the name and on behalf of the Company to execute all corporate resolutions required for the purpose of facilitating intercompany subsidiary transactions involving direct subsidiaries of the Company; and

WHEREAS, management has proposed that Chandis Acquisition Corporation ("Chandis"), a wholly owned subsidiary of the Company, be merged with and into the Company (the "Merger").

NOW, THEREFORE, BE IT RESOLVED, that Chandis be merged with and into this Company, and that all of the estate, property, rights, privileges, powers and franchises of Chandis be vested in and held and enjoyed by this Company as fully and entirely and without change or diminution as the same were before held and enjoyed by Chandis in its name; and

RESOLVED FURTHER, that this Company shall assume all of the liabilities and obligations of Chandis; and

RESOLVED FURTHER, that this Company shall cause to be executed and filed and/or recorded the documents prescribed by the laws of the State of Delaware and by the laws of any other appropriate jurisdiction and will cause to be performed all necessary acts within the State of Delaware and within any other appropriate jurisdiction; and

RESOLVED FURTHER, that the effective date of the Merger shall be December 31, 2000; and

RESOLVED FURTHER, that the Chairman, President and Chief Executive Officer, the Executive Vice President, any Senior Vice President or any Vice President of the Company be, and each hereby is, authorized to execute and deliver, in the name and on behalf of the Company, as appropriate, any and all agreements, certificates and instruments and to do and perform all such acts and things on behalf of the Company as they may deem necessary in order to fully effectuate the purposes of the foregoing resolutions.

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 11:30 AM 12/28/2000*
*001654791 - 0674607*

:            ·

Executed on December15, 2000

**TRIBUNE COMPANY**

By:_____

Mark W. Hianik
Vice President

02/15/01  17:03 FAX 213 237 4743        LEGAL DEPT

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 08:10 PM 02/15/2001
010077696 - 0674607

## CERTIFICATE OF AMENDMENT TO
## CERTIFICATE OF DESIGNATION
## OF THE
## PREFERRED STOCK, SERIES C
## (WITHOUT PAR VALUE)
## OF
## TRIBUNE COMPANY

### Pursuant to Section 242 of the
### Delaware General Corporation Law

The undersigned duly authorized officer of Tribune Company (the "Company"), a corporation organized and existing under the Delaware General Corporation Law (the "DGCL"), in accordance with the provisions of Section 103 thereof, and pursuant to Section 242 thereof, DOES HEREBY CERTIFY:

FIRST: Pursuant to the authority conferred upon the Board of Directors by the Amended and Restated Certificate of Incorporation of the Company (the "Certificate of Incorporation"), the Board of Directors of the Company (the "Board" or "Board of Directors") on June 12, 2000 adopted resolutions creating 823,568 shares of Series C Preferred Stock (as defined below);

SECOND: On June 12, 2000, the Company filed a Certificate of Designation establishing the rights, preferences, privileges and restrictions relating to the Series C Preferred Stock;

THIRD: On February 13, 2001, the Board of Directors duly adopted and approved the amendment of the Certificate of Designation to read in its entirety as set forth herein; and

FOURTH: The designation of and the rights, preferences, privileges and restrictions relating to Series C Preferred Stock are hereby fixed as set forth herein and the original Certificate of Designation is hereby replaced by this Certificate of Amendment to Certificate of Designation and is hereby amended to read in its entirety as follows:

RESOLVED, that pursuant to the authority expressly granted to and vested in the Board of Directors by provisions of the Certificate of Incorporation, and the DGCL, the issuance of a series of the Company's preferred stock, without par value (the "Preferred Stock"), which shall consist of 823,568 of the 12,000,000 shares of Preferred Stock that the Company now has authority to issue, be, and the same hereby is, authorized, and the Board of Directors hereby fixes the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, of the shares of such series (in addition to the powers, designations, preferences and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions, set forth in the Certificate of Incorporation that may be applicable to the Preferred Stock) as follows:

W/440838v3

1. <u>Designation and Rank</u>. The designation of such series of the Preferred Stock authorized by this resolution shall be the 8% Cumulative Convertible Preferred Stock, Series C (the "Series C Preferred Stock"). The number of shares of Series C Preferred Stock shall be 823,568. The Series C Preferred Stock shall rank prior to the Common Stock (as hereinafter defined) of the Company and to all other classes and series of equity securities of the Company now or hereafter authorized, issued or outstanding (the Common Stock and such other classes and series of equity securities not expressly designated as ranking on a parity with or senior to the Series C Preferred Stock collectively may be referred to herein as the "Junior Stock") as to dividend rights and rights upon liquidation, winding up or dissolution of the Company, other than any classes or series of equity securities of the Company expressly designated as ranking on a parity with (the "Parity Stock") or senior to (the "Senior Stock") the Series C Preferred Stock as to dividend rights and rights upon liquidation, winding up or dissolution of the Company. The Series C Preferred Stock shall be subject to creation of Senior Stock, Parity Stock and Junior Stock, to the extent not expressly prohibited by the Certificate of Incorporation or Section 5(c)(i) or 5(c)(ii) hereof, with respect to the payment of dividends and upon liquidation.

2. <u>Cumulative Dividends; Priority</u>.

    (a) <u>Payment of Dividends</u>.

        (i) The holders of record of shares of Series C Preferred Stock shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available therefor, cumulative cash dividends from the date of issuance of such shares at the rate per annum per share of 8% ($40 per annum) (the "Dividend Rate"), which shall be payable quarterly in arrears on the second Thursday of March, June, September and December in each year (or if such day is a non-business day, on the next business day), commencing on March 8, 2001 (each of such dates a "Dividend Payment Date"). No interest, or sum of money in lieu of interest, shall be payable in respect of any dividend payment or payments on the Series C Preferred Stock that may be in arrears.

        (ii) Each declared dividend shall be payable to holders of record as they appear on the stock books of the Company at the close of business on such record dates, not more than 60 calendar days preceding the applicable Dividend Payment Dates therefor, as are determined by the Board of Directors (each of such dates a "Record Date"). Quarterly dividend periods (each a "Dividend Period") shall commence on and include the first day of January, April, July, and October of each year and shall end on and include the last day of March, June, September and December, respectively of such year. Dividends on the shares of Series C Preferred Stock shall be fully cumulative and shall accrue (whether or not declared) from the first day of each Dividend Period; provided, however, that any dividend payable for any other Dividend Period shorter than a full Dividend Period shall be computed on the basis of a 360-day year composed of twelve 30-day months and the actual number of days elapsed in the relevant Dividend Period.

    (b) <u>Priority as to Dividends</u>.

        (i) Subject to the provisions hereof, no cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set

-2-

apart for payment on Preferred Stock that constitutes Parity Stock or Junior Stock with respect to dividends for any Dividend Period unless full dividends on the Series C Preferred Stock for the immediately preceding Dividend Period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment). When dividends are not paid in full (or declared and a sum sufficient for such full payment not so set apart) upon the Series C Preferred Stock and any Parity Stock, all dividends declared upon shares of Series C Preferred Stock and any Parity Stock shall be declared pro rata with respect thereto, so that in all cases the amount of dividends declared per share on the Series C Preferred Stock and such Parity Stock shall bear to each other the same ratio that accrued dividends for the then-current Dividend Period per share on the shares of Series C Preferred Stock (which shall include any accumulation in respect of unpaid dividends for prior Dividend Periods) and dividends, including accumulations, if any, of such Parity Stock, bear to each other.

(ii) Except as provided in the preceding paragraph, full dividends on the Series C Preferred Stock must be declared and paid or set apart for payment for the immediately preceding Dividend Period before (A) any cash dividend or other distribution (other than in Common Stock or other Junior Stock) shall be declared or paid or set aside for payment upon the Common Stock or any other Junior Stock of the Company or (B) any Common Stock or any other Junior Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock), except by redemption into or exchange for Junior Stock or (C) any Series C Preferred Stock or Parity Stock is redeemed, purchased or otherwise acquired by the Company for any consideration (or any moneys are paid to or made available for a sinking fund for the redemption of any shares of any such stock). The Company shall not permit any subsidiary of the Company to purchase or otherwise acquire for consideration any shares of stock of the Company if under the preceding sentence, the Company would be prohibited from purchasing or otherwise acquiring such shares at such time and in such manner.

(iii) No dividend shall be paid or set aside for holders of the Series C Preferred Stock for any Dividend Period unless full dividends on any Preferred Stock that constitutes Senior Stock with respect to dividends for that period have been or contemporaneously are declared and paid (or declared and a sum sufficient for the payment thereof set apart for such payment).

(c) Adjustment to Dividend Rate. If the dividends received deduction (the "DRD") contained in Section 243 of the Internal Revenue Code of 1986, as amended (the "Code"), or any comparable provision that may be adopted subsequently, should be reduced or eliminated, then, upon receipt by the Company of one or more written requests signed by holders of record of at least 50% of the outstanding shares of Series C Preferred Stock (a "Rate Adjustment Request"), the Company shall, for Dividend Periods commencing on or after such Rate Adjustment Request, adjust the Dividend Rate by multiplying such rate by a fraction, the numerator of which is .895 and the denominator of which is $(1 - .35 (1 - DRDP))$. For purposes of the preceding formula, "DRDP" shall mean the DRD percentage specified in Section 243(a)(1) of the Code, or any comparable provision that may be adopted subsequently.

The Dividend Rate shall be adjusted only to take into account reductions in the DRDP from the current 70% rate. In the case of any particular dividend payment, no