# TRIBUNE COMPANY
# BOARD OF DIRECTORS MEETING
# DECEMBER 18, 2007

The Tribune Company Board of Directors met at 1:00 p.m. on Tuesday, December 18, 2007, pursuant to notice. The following directors participated in the meeting at Tribune Tower: Dennis J. FitzSimons and William A. Osborn. Enrique Hernandez, Jr., Robert S. Morrison, Dudley S. Taft and Samuel Zell participated in the meeting by telephone. Betsy Holden participated in a portion of the meeting by telephone.

Chandler Bigelow, David P. Eldersveld, Donald C. Grenesko, Crane H. Kenney, Timothy J. Landon, John E. Reardon and Scott C. Smith participated in the meeting. Chip Mulaney of Skadden, Arps, Slate, Meagher & Flom LLP, Thomas Cole of Sidley Austin LLP, Tom Whayne of Morgan Stanley, and Chad Rucker and Bryan Browning of Valuation Research Corporation also participated in the meeting. Steve Rosenblum of Wachtell, Lipton Rosen & Katz participated in the meeting by telephone.

Mr. FitzSimons acted as chairman of the meeting and Mr. Kenney acted as secretary.

Mr. FitzSimons called the meeting to order at 1:00 p.m.

## INTRODUCTION

Mr. FitzSimons provided a brief update on the FCC approval of the going private transaction and the status of the due diligence review being conducted by Valuation Research Corporation ("VRC") and the lead syndication banks in connection with the second step financing.

## APPROVAL OF MINUTES

A motion was made, seconded and approved to adopt the minutes of the December 4, 2007 meetings of the Board of Directors.

## COMPANY PERFORMANCE

Mr. Grenesko reviewed the projected financial performance of each of the Company's lines of business for December and commented on factors impacting the results. A discussion followed the presentation.

## TRANSACTION UPDATE

Mr. Kenney presented an update on the status of the merger and the latest discussions with the lenders. A discussion followed.

Mr. Kenney noted that in order to ensure the initial surviving corporation directors have been

approved by the current Board of the Company for change of control definition purposes post-merger closing, the current Board must approve the contemplated surviving corporation director slate. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> WHEREAS, the Company has entered into that certain Agreement and Plan of Merger (the "Merger Agreement"), dated as of April 1, 2007, by and among the Company, GreatBanc Trust Company, not in its individual or corporate capacity, but solely as trustee of the Tribune Employee Stock Ownership Trust, which forms a part of the Tribune Employee Stock Ownership Plan (the "ESOP"), Tesop Corporation, a Delaware corporation wholly owned by the ESOP, and EGI-TRB, L.L.C., a Delaware limited liability company (capitalized terms used but not defined herein shall have the meaning ascribed to them in the Merger Agreement);
>
> WHEREAS, pursuant to the Merger Agreement, at the Effective Time of the Merger, the directors of Tesop Corporation as of the Effective Time shall be the initial directors of the Surviving Corporation and shall hold office until their respective successors are duly elected and qualified, or their earlier death, resignation or removal (collectively, the "Post-Merger Directors"); and
>
> WHEREAS, the Post-Merger Directors are expected to be: Dennis J. FitzSimons, Betsy D. Holden, William A. Osborn, William C. Pate, Maggie Wilderotter and Samuel Zell.
>
> NOW, THEREFORE, BE IT RESOLVED, that each of the Post-Merger Directors is hereby approved by the current Board of Directors of the Company, for any and all purposes, to serve as a director of the Surviving Corporation following the Effective Time of the Merger.

Mr. Kenney next discussed certain amendments required to be made to the Director Deferred Stock plans as a result of the going private transaction. Given that deferred stock awards can no longer be tracked in the value of Tribune stock after the closing, management recommends that accounts under the plans be converted to a cash equivalent (at $34 per share) and credited with interest going forward at a rate equal to 120% of the long-term Applicable Federal Rate under the Internal Revenue Code, compounded quarterly. This is the same rate applied to cash deferrals under the Management Deferred Bonus Plan. Account balances, with interest, would then be paid out in accordance with Directors' previous elections. In addition, management recommends that participants in the Tribune Directors' Deferred Stock Plan be given an opportunity to accelerate their prior deferral elections. Following discussion, a motion was made, seconded and approved to adopt the following resolutions:

> RESOLVED, that the 1996 Tribune Company Nonemployee Director Stock Compensation Plan and the Times Mirror Company Nonemployee Directors Stock Plan be amended to provide (i) for the conversion of deferred stock account balances from Tribune common stock equivalents to cash equivalents in connection with the ESOP/Zell

2

merger closing and (ii) for the establishment of an interest component (at 120% of the long-term Applicable Federal Rate, compounded quarterly) on unpaid account balances;

FURTHER RESOLVED, that Directors with deferred stock awards under the 1996 Tribune Company Nonemployee Director Stock Compensation Plan or Tribune Company Incentive Compensation Plan be permitted to change their payment elections prior to December 31, 2007 to provide for the acceleration of payments following termination of Board service; and

FURTHER RESOLVED, that the Tribune Company Employee Benefits Committee be, and hereby is, authorized (with full power of delegation), in the name and on behalf of the Board of Directors (or any committee thereof) to take all steps necessary to effect the foregoing resolution, including preparing, executing, delivering and filing the amendment and such other documents as may be required by law or as may be deemed necessary or proper in connection with the matters set forth in these resolutions.

## SOLVENCY PRESENTATIONS

Messrs. Bigelow and Grenesko first presented management's overview related to VRC's solvency analysis. Messrs. Browning and Rucker of VRC next reviewed its solvency analysis with the Board. Management confirmed its belief that VRC's analysis and the underlying assumptions and projections are reasonable, if not conservative. Diligence questions that had been posed by the banks to VRC and to management were previously made available to the Board. The Board (directly and through its counsel and financial advisors) posed its own questions to VRC and to management and received answers thereto. Without limitation, (i) VRC confirmed that its opinion was the result of its independent, professional advice without improper influence of management, (ii) VRC confirmed that it engaged in a significant testing of both management's base case and downside cases, (iii) VRC confirmed that it had received all the information it had requested from the Company; (iv) VRC described its internal opinion review process as rigorous and confirmed that its fee would be the same whether it opined favorably or unfavorably as to solvency and (v) VRC explained the changes in its approach to PHONES valuation and that such change was not, in any event, outcome determinative. After completion of VRC's review and presentation and all questions and answers, VRC rendered its opinion, and said that it would provide a written opinion brought down to closing. Management then advised the Board that management stands ready to deliver the closing certificate contemplated by the Credit Agreement as to solvency and that such certificate will be based upon its own analysis, as further supported by the VRC opinion and analysis. Thereupon, the Board recessed and the Special Committee met with its counsel and financial advisors. When the board reconvened, it was advised that the Special Committee recommended acceptance of the VRC opinion in satisfaction of the condition to closing set forth in the Merger Agreement.

Based upon the presentations and discussions at the meeting (as well as presentations and discussions at prior meetings of the Board, including on May 9, 2007 and December 4, 2007) and the recommendation of the Special Committee, the Board, with Mr. Zell abstaining,

3

determined (i) that it could rely in good faith on the VRC opinion and (ii) that the opinion is in form and substance satisfactory to the Company for purposes of Section 6.2(e) of the Merger Agreement.

**EXECUTIVE SESSION**

The Board then met in executive session.

**ADJOURNMENT**

There being no further business to come before the Board, the meeting was adjourned at 3:00 p.m.

_____
Secretary

4