

December 20, 2007

Tribune Company Board of Directors
435 North Michigan Ave
Chicago, IL 60611

Ladies and Gentlemen:

Valuation Research Corporation ("VRC") has been engaged to perform certain financial advisory services in connection with a contemplated multi-step purchase and merger transaction involving Tribune Company ("Tribune" or the "Company"). Tribune will be taken private through a two-step process involving the Tribune employee stock ownership plan (the "ESOP") and investments by EGI-TRB, L.L.C. ("EGI-TRB"), a limited liability company owned by Samuel Zell ("Zell").

In the first Step, (i) EGI-TRB purchased newly issued common stock (the "Common Stock") from the Company for $34.00 per share, for an aggregate purchase price of $50 million in cash, and an exchangeable note for a purchase price of $200 million in cash (collectively, the "Step One EGI-TRB Purchase"); (ii) the ESOP purchased newly issued Common Stock from the Company for $28.00 per share, for an aggregate purchase price of $250 million, which was paid for by a note to the Company (the "ESOP Purchase"); (iii) the Company borrowed approximately $7.0 billion through a $5.5 billion Term Loan B Tranche and a $1.5 billion New Term Loan X Tranche ($750 million of New Term Loan X matures 18 months after the date of the initial draw and the remaining $750 million matures 24 months after the date of the initial draw) (the "Step One Debt Financing"); (iv) the Company purchased from its stockholders 126 million shares of Common Stock at $34.00 per share, equaling approximately $4.3 billion (the "Step One Common Stock Purchase"); (v) the Company refinanced existing debt of approximately $2.8 billion (the "Step One Debt Refinancing"); (vi) the Company rolled over certain existing debt of approximately $2.4 billion (the "Step One Debt Roll-Over") and (vii) the Company paid financing and other transaction fees of approximately $152 million (the "Step One Fees"). The Step One EGI-TRB Purchase, the ESOP Purchase, the Step One Debt Financing, the Step One Common Stock Purchase, the Step One Debt Refinancing, the Step One Debt Roll-Over, and the Step One Fees are collectively referred to as the "Step One Transactions."

The second step will involve (i) the borrowing by the Company of additional debt of approximately $3.7 billion (the "Step Two Debt Financing"); (ii) the use by the Company of approximately $500 million of existing cash; (iii) the repayment by the Company of the exchangeable note acquired by EGI-TRB in the Step One EGI-TRB Purchase (the "Step Two Repayment"); (iv) the closing of the merger (the "Merger") in which all of the remaining Common Stock, other than shares held by the ESOP (but including shares held by EGI-TRB), will be converted into the right to receive $34 per share (plus 8% annualized accretion starting January 1, 2008, if the Merger has not closed by then), for an aggregate of approximately $4.3 billion; (v) the purchase by EGI-TRB from the Company of a subordinated note for $225 million, and the purchase by EGI-TRB from the Company of a 15-year warrant, for a purchase price of $90 million, which gives EGI-TRB the right to acquire shares of Common Stock representing 40% of the economic interest in the equity of the Company at an initial aggregate exercise price of $500 million, increasing by $10 million per year for the first 10 years to a maximum aggregate exercise price of $600 million (collectively, the "Step Two EGI-TRB Purchase"); (vi) the roll-over by the Company of certain existing debt of approximately $8.9 billion (the "Step Two Debt Roll-Over"); (vii) the payment by the Company of cash distributions triggered by a change of control of approximately $104 million (the "Step Two COC Payments"); (viii) the payment by the Company of financing and other transaction fees of approximately $120 million (the "Step Two Fees"); (ix) the election by the Company of an S-Corporation status following the Merger (the "S-Corp Election") and (x) the disposition by the Company of part or all of its interest in the Chicago Cubs and interest in Comcast SportsNet Chicago, which will occur after the closing of the Merger (the "Cubs/Comcast Sale"). The Step Two Debt Financing, the Step Two Repayment, the Merger, the Step Two EGI-TRB Purchase, the Step Two Debt Roll-Over, the Step Two COC Payments, the Step Two Fees, the S-Corp Election and the Cubs/Comcast Sale are collectively referred to as the "Step Two Transactions" or "Transactions."

The Company has requested VRC's written opinion (the "Opinion") as to the solvency of Tribune, on a consolidated basis, immediately after and giving effect to the consummation of the Step Two Transactions, including whether each of the tests of solvency defined hereinafter is satisfied. For purposes of the Opinion, the following terms are defined:

**Fair Value** - The amount at which the aggregate or total assets of the subject entity (including goodwill) would change hands between a willing buyer and a willing seller, within a commercially reasonable period of time, each having reasonable knowledge of the relevant facts, neither being under any compulsion to act, and, both having structures similar to the structure contemplated in the Transactions by the subject entity (an S-Corporation, owned entirely by an ESOP, which receives favorable federal income tax treatment), or another structure resulting in equivalent favorable federal income tax treatment to the Company.

**Present Fair Saleable Value** - The amount that may be realized by a willing seller from a willing buyer if the subject entity's aggregate or total assets (including goodwill) are sold with reasonable promptness with both having structures similar to the structure contemplated in the Transactions by the subject entity (an S-Corporation, owned entirely by an ESOP, which receives favorable federal income tax treatment), or another structure resulting in equivalent favorable federal income tax treatment to the Company.

**Does Not Have Unreasonably Small Capital** - This phrase relates to the ability of the subject entity to continue as a going concern and not lack sufficient capital for the businesses in which it is engaged, and will be engaged, as management has indicated such businesses are now conducted and are proposed to be conducted.

**Stated Liabilities** - The recorded liabilities of the subject entity as presented on the most recent balance sheet provided to VRC. Stated Liabilities exclude the New Financing.

**New Financing** - The indebtedness incurred, assumed or guaranteed by the subject entity in connection with the Step Two Transactions.

**Identified Contingent Liabilities** - The reasonably estimated contingent liabilities that may result from, without limitation, threatened or pending litigation, asserted claims and assessments, environmental conditions, guaranties, indemnities, contract obligations, uninsured risks, purchase obligations, taxes, and other contingent liabilities as identified and explained to VRC by the Company in terms of their nature, expected timing and estimated dollar amount by responsible officers of the Company. Because Identified Contingent Liabilities are estimates of responsible officers of the Company, VRC expresses no opinion as to the completeness or propriety of such items or amounts. Except for the Identified Contingent Liabilities, VRC assumes that there are no hidden, unapparent, or unexpected conditions or circumstances (contingent or otherwise) that could affect the operating or financial conditions of the Company and accepts no responsibility for discovering any such conditions or circumstances. VRC advises the Company, however, after discussion with management with respect thereto, and based on its inquiries and its experience in reviewing such liabilities, (i) that VRC has no reason to believe that Identified Contingent Liabilities are materially understated, (ii) that VRC has no reason to believe that it would be unreasonable for VRC to utilize such estimates in the course of its analysis, and (iii) that nothing has come to VRC's attention suggesting that material contingent liabilities have not been identified or disclosed.

VRC makes no representation as to the legal sufficiency for any purpose of the above definitions. Such definitions are used solely for setting forth the scope of the Opinion.

In rendering the Opinion, VRC conducted such reviews, analyses and inquiries reasonably deemed necessary or appropriate under the circumstances. Among other things, VRC has:

- Attended Tribune Board of Directors meetings on May 9, 2007, December 4, 2007 and December 18, 2007 in Chicago;
- Had multiple teleconferences and meetings in Chicago with Tribune Management and managers of the Company's key operating divisions with respect to the past, present, and future operating and financial conditions of the Company, among other subjects;

- Reviewed the preliminary offering memorandum for $1.6 billion of Senior Notes due 2015 dated November 21, 2007;
- Reviewed the ESOP Transaction Model dated November, titled "model_negotiated_proposal_november21_2007.xls" which contains Tribune's base case forecast (the "Base Forecast Model" or "Base Case Forecast"), and Tribune's Downside Forecast (the "Downside Forecast Model" or "Downside Case Forecast");
- Reviewed a memorandum titled "Tribune Fourth Quarter 2007 Projected Operating Results" dated November 20, 2007;
- Reviewed interim financial results for period ended October 2007 ("Period 10"), November 2007 ("Period 11"), and the first two weeks of financial results for December 2007 ("Period 12") with Management;
- Reviewed a draft memorandum titled "Description of Exchange Notes" dated December 8, 2007;
- Reviewed a draft of the $1.6 billion Senior Unsecured Interim Loan Agreement dated December 12, 2007;
- Reviewed the Company's Form 10-Qs for the quarters ended April 1, 2007, June 30, 2007, and September 30, 2007;
- Reviewed the Company's Form 8-Ks filed on April 05, 2007, April 19, 2007, April 24, 2007, April 25, 2007, May 10, 2007, June 1, 2007, June 5, 2007, June 29, 2007, July 17, 2007, July 20, 2007,July 25, 2007, and October 24, 2007August 10, 2007 , August 21, 2007, October 24, 2007, and December 3, 2007;
- Reviewed a memorandum titled "Estimated Term Loan X Repayment Schedule" dated September 19, 2007;
- Reviewed a memorandum titled "Tribune Company Estimated Merger Covenant Test" dated September 19, 2007;
- Reviewed a memorandum titled "Summary of Real Estate Opportunities dated September 19, 2007";
- Reviewed a memorandum titled "Tribune Company Cubs Sale Update" dated September 19, 2007;
- Reviewed a memorandum titled "Status of Newsday Litigation and U.S. Attorney Investigation and Leveraged ESOP Litigation" dated September 18, 2007;
- Reviewed the Company's Form DEF14A and amendments to Form DEF14A that were filed with the Securities and Exchange Commission on April 5, 2007, April 6, 2007, April 13, 2007, April 24, 2007, April 25, 2007, April 26, 2007, April 27, 2007, May 1, 2007, May 4, 2007, May 10; 2007, May 17, 2007, May 22, 2007, May 25, 2007, May 31, 2007, June 14, 2007, June 15, 2007, July 3, 2007, July 13, 2007, July 18, 2007, July 25, 2007, August 3, 2007, August 6, 2007, and August 13, 2007;
- Reviewed the preliminary merger proxy statement which was filed with the Securities and Exchange Commission on June 1, 2007 and the final merger proxy statement which was filed on July 13, 2007;
- Reviewed the prospectus that was filed with the Securities and Exchange Commission to sell 20.3 million shares of common equity dated April 25, 2007;
- Reviewed the Company's Form 10-K for the period ended December 31, 2006;
- Reviewed internal interim financial statements for the period ended April 1, 2007, September 30, 2007, and Period 11;
- Reviewed the draft of the Confidential Information Memorandum for Public Investors, dated April 16, 2007;
- Reviewed the Terms and Conditions of the Senior Secured Credit Facilities, the Incremental Credit Facility, and the Senior Unsecured Bridge Facility filed on Form 8-K with the Securities and Exchange Commission;

- Reviewed the Credit Agreement, dated as of May 17, 2007, by and among Tribune Company, as borrower, the lenders party thereto, JPMorgan Chase Bank, N.A., as administrative agent, Merrill Lynch Capital Corporation, as syndication agent, Citicorp North America, Inc., Bank of America, N.A. and Barclay's Bank plc, as co-documentation agents, and J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc. and Banc of America Securities LLC, as joint lead arrangers and joint bookrunners;
- Reviewed the Company's revised organizational structure that describes the revised collateral package for the Transactions as of May 7, 2007;
- Reviewed the Company's summary of the Participating Hybrid Option Note Exchangeable Securities ("PHONES");
- Reviewed the PHONES Debt Offering Prospectus dated March 31, 1999;
- Obtained a written representation from a responsible officer of the Company that there are approximately $86.8 million of Identified Contingent Liabilities;
- Obtained a written representation from a responsible officer of the Company that there have not been any material adverse changes in the assets or liabilities of Tribune between September 30, 2007 and the date hereof, that may materially affect, without limitation, Tribune's business operations or condition;
- Obtained a written representation from a responsible officer of the Company that the Base Case Forecast provided to VRC reflect Management's best estimates, and are reasonable and attainable based on Management's involvement and understanding of the business operations, its markets, the strategic vision, the competitive landscape, and regulatory and economic trends;
- Obtained a written representation from a responsible officer of the Company that the Company's annual tax savings as an S-Corp ESOP are reasonable and attainable, as described below;
- Obtained a written representation from a responsible officer with respect to the Company's ability to refinance its debts when they come due, as described below;
- Obtained a written representation from a responsible officer of the Company with respect to the PHONES liability, as described below;
- Reviewed the presentation titled "Tribune April 2007," which was presented to VRC on April 5, 2007;
- Reviewed the Rating Agency presentation dated March 2007;
- Reviewed the presentation titled "Zell Proposal – Sources and Uses and PF Capitalization" dated April 1, 2007;
- Reviewed BIA Financial, "Investing in Television Market Report", 4th edition, 2006 for the Company's Broadcasting operations;
- Reviewed BIA Financial, "Investing in Radio Market Report", 3rd edition, 2006 for the Company's Broadcasting operations;
- Reviewed the NAB / BCFM Television Financial Report – 2006 edition for the Company's Broadcasting operations;
- Reviewed research reports prepared by Thomson Financial and Morgan Stanley for the Company's Broadcasting operations;

- Reviewed research reports prepared by Wachovia Capital, UBS, Bear Stearns, JPMorgan, Deutsche Bank, Citigroup, Credit Suisse, and Morgan Stanley for the Publishing Operations;

- Reviewed current Standard & Poor's Industry Surveys: Publishing Operations;

- Reviewed audited financial statements for Television Food Network, G.P. ("TV Food Network") for the years ended December 31, 2004 through 2005, September 2007 year-to-date and September 2006 prior year-to-date;

- Reviewed internal income statements for 2006 and budgeted income statements for 2007 for TV Food Network;

- Reviewed Agreement of General Partnership for TV Food Network;

- Reviewed the analyst reports, press releases, and public filings of various companies operating in the cable industry;

- Reviewed internal income statements for 2006 and budgeted income statements for 2007 for Comcast SportsNet;

- Reviewed the Amended and Restated LLC Agreement for Comcast SportsNet;

- Reviewed the financial statements for August 2007 year-to-date and August 2006 prior year-to-date for Comcast SportsNet;

- Reviewed "August 2007 CFO package" for CareerBuilder which also included an updated 2007 forecast;

- Reviewed various financial statements for the periods December 31, 2001 through 2006 for CareerBuilder.com ("CareerBuilder");

- Reviewed forecasted income statements for the periods December 31, 2007 through 2009 for CareerBuilder;

- Reviewed other internal operating and financial data for the periods between 2004 and 2006 relating to unique visitors, sell thru rates, and pricing and volume for CareerBuilder;

- Reviewed the Amended and Restated LLC and Affiliate Agreements for CareerBuilder;

- Reviewed various financial statements and forecasts for the periods December 31, 2001 through 2007, August 2007 year-to-date and August 2006 prior year-to-date for Classified Ventures.com ("Classified Ventures");

- Reviewed the LLC Agreement and First Amendment to LLC Agreement for Classified Ventures;

- Reviewed various historical financial statements for other Tribune equity investments, including ShopLocal, Topix.net, and Legacy.com;
    - Reviewed various LLC, Affiliate, and Stockholder Agreements for ShopLocal, Topix.net, and Legacy.com;
    - Reviewed August 2007 year-to-date and August 2006 year-to-date financial statements for Topix.net;
    - Reviewed 2006 valuation report for Topix.net;
    - Reviewed August 2007 year-to-date and August 2006 year-to-date financial statements for ShopLocal;

  - Reviewed August 2007 year-to date and August 2006 year-to-date financial statements for Legacy.com;

- Reviewed various financial statements for the periods for the December 31, 2005 through September June 30, 2007 for Quetzel/J.P. Morgan L.P.;

- Reviewed memo relating to low income housing credits and Tribune's valuation of these credits as of October 12, 2007;

- Reviewed various other schedules and workbooks from the data room;

- Developed indications of value for the Company, the operating divisions and the equity interests of Tribune using generally accepted valuation methodology;

- Performed a cash flow and debt repayment analysis for the Company;

- Reviewed the industries in which the Company operates, which included a review of (i) certain research of the industries in which the Company operates, (ii) certain publicly traded companies deemed comparable to the Company and (iii) certain mergers and acquisitions involving businesses deemed comparable to the Company;

- Reviewed the questions submitted by representatives of J.P. Morgan Securities Inc., JP Morgan Chase Bank, N.A. Merrill Lynch Capital Corporation, Citigroup Global Markets Inc., Bank of America, N. A. and Banc of America Securities LLC on December 7, 2007, December 11, 2007 and December 17, 2007; and

- Conducted such other reviews, analyses and inquiries and considered such other economic, industry, market, financial and other information and data deemed appropriate by VRC.

In conducting its review and analysis, and as a basis for arriving at the Opinion, VRC utilized methodologies, procedures, and considerations deemed relevant and customary under the circumstances. VRC also considered its assessment of general economic, industry, market, financial and other conditions and its experience as a valuation advisor in general.

In rendering the Opinion, VRC assumed and relied upon, without independent verification, the accuracy and completeness of all information, data and other material (including, without limitation, the Base Forecast Model and the Downside Forecast Model) furnished or otherwise made available by the Company to VRC, discussed with or reviewed by VRC with the Company, or publicly available, and VRC did not assume any responsibility for independently verifying such information, data or other materials. In addition, VRC assumed and relied upon, without independent verification, that the Base Forecast Model and the Downside Forecast Model have been reasonably and prudently prepared and therefore reflect the best currently available estimates and judgments of management as to the expected future financial performance of the Company. In connection with its review of the Base Forecast Model and Downside Forecast Model, VRC advises the Company, after discussion with management with respect thereto, that nothing has come to VRC's attention to lead VRC to believe that it was unreasonable for VRC to utilize and rely upon such financial forecasts, projections, information and data.

VRC used the same valuation methodologies in determining Fair Value and Present Fair Saleable Value. Notwithstanding the use of Fair Value and Present Fair Saleable Value, VRC did not and will not initiate any discussions with, or solicit any indications of interest from, any third parties with respect to the Company. VRC has not performed any appraisals or valuations of specific assets or liabilities of the Company and has not made and will not make any physical inspection, evaluation or appraisal of any specific assets or liabilities. VRC has made various judgments and estimates it considers reasonable and appropriate under the circumstances in the determination of Fair Value and Present Fair Saleable Value, and no assurance can be given by VRC that the sale price which might ultimately be realized in any actual transaction, if and when effected, will be at the amount VRC believes to be Fair Value or Present Fair Saleable Value. VRC has not considered the amount of any transaction expenses, other than

the Step Two Fees, that may be payable by the Company in any future transaction in determining Fair Value and Present Fair Saleable Value.

VRC has assumed that Company will not make acquisitions or dispositions other than those assumed in the Base Case Forecast, and a potential sale of an equity investment in the Downside Forecast in 2013.

VRC further assumed that the Step Two Transactions will be consummated in accordance with the terms and conditions set forth in the Base Forecast Model, term sheets, or Step Two Transactions agreements provided to VRC; and that the Company is in compliance, and will remain in compliance, in all material respects with any and all applicable laws, rules or regulations of any and all legal or regulatory authorities.

Tribune provided VRC with the Base Case Forecast and the subsequent extrapolation by Management of these projections through 2017 applying the revenue and operating cash flow growth rates for the fifth year of the Base Case Forecast and underlying assumptions as used in developing the Base Case Forecast (the "Management Five-Year Extrapolation"). VRC then performed further extrapolation of these projections to the year 2022 ("VRC Five-Year Extrapolation") by also applying the same general growth rates and underlying assumptions as used by Management in developing the Base Case Forecast and Management Five-Year Extrapolation, except VRC applied a lower growth rate in equity investment income beginning in 2018 than the Company forecast in 2017. VRC used the Base Case Forecast, the Management Five-Year Extrapolation and the VRC Five-Year Extrapolation to estimate the Company's annual tax savings as an S-Corp ESOP. VRC has received a representation letter from an officer of the Company that, while the realization of the Base Case Forecast, the Management Five-Year Extrapolation and the VRC Five-Year Extrapolation are subject to many factors outside Management's control, in Management's view the Company's annual tax savings as an S-Corp ESOP as reflected in the Base Case Forecast, the Management Five-Year Extrapolation and the VRC Five-Year Extrapolation are reasonable and attainable by the Company based on Management's understanding of the existing income tax laws governing S-Corp ESOPs, the Company's current business operations, strategic vision and competitive and regulatory landscape, and the growth rates and underlying assumptions utilized (i) by Management in developing the Base Case Forecast and the Management Five-Year Extrapolation and (ii) by VRC in developing the VRC Five-Year Extrapolation. VRC has relied upon this representation letter in concluding its Opinion.

A responsible officer of the Company has provided VRC with a representation letter that the book value of the PHONES as reported in the Company's Form 10-Q for the quarter ended September 30, 2007 is a reasonable estimate of the Company's liability associated with the PHONES. VRC has relied upon this representation letter in concluding its Opinion.

A responsible officer of the Company has provided VRC with representation letter that based upon (i) Management's best understanding of the debt and loan capital markets and (ii) Management's recent discussions with Morgan Stanley, Management believes that it is reasonable for VRC to assume that the Company would be able to refinance it debts when they come due in the Downside Case Forecast. VRC has relied upon this representation letter in concluding its Opinion and has assumed that the Company would be able to refinance the New Financing and any other existing indebtedness for borrowed money upon their scheduled maturities without the need for asset sales other than those incorporated into the Downside Case Forecast.

The Opinion does not address (i) the relative risks or merits of the Transactions or any other business strategies or transaction alternatives that may be available to the Company; (ii) the underlying business decisions of the Company to consummate the Transactions; (iii) any specific legal, tax, accounting, or financial reporting matters related to or associated with the Company or the Transactions or (iv) the fair value of the Company under any state or federal laws relating to appraisal or similar rights. The Opinion is in no way given as an indication as to the fairness of the Transaction to any stockholder or any other stakeholder of the Company and should not be construed as investment advice in any manner whatsoever.

The Opinion and any other financial advice, written or oral, rendered by VRC is intended solely for the benefit and use of the Company's Board of Directors. The Company's officers may also rely on the Opinion. The Company agrees that the Opinion and advice may not be disclosed publicly or made available to third parties without the prior written consent of VRC, such consent not to be unreasonably withheld or delayed, except as may otherwise be

provided in the Solvency Engagement Letter between VRC and the Company dated April 11, 2007 or required by law or by a court of competent jurisdiction; provided, however, that the Opinion may, if required, be included in its entirety in any filing with the Securities and Exchange Commission made by the Company in connection with the Transactions, with an appropriate disclaimer that the Opinion is intended solely for the benefit and use of the Company's Board of Directors and the Company's officers.

With respect to the solvency of the Company, the Opinion is only valid for the capital structure of the Company immediately after and giving effect to the consummation of the Step Two Transactions, and will not be valid for any subsequent business acquisition, dividend, share repurchase, debt or equity financing, recapitalization, restructuring or other actions or events not specifically referred to in the Step Two Transactions. Furthermore, the Opinion does not represent an assurance, guarantee, or warranty that the Company will not default on any of its debt obligations or other liabilities in the Step Two Transactions, nor does the Opinion provide any assurance, guarantee, or warranty that any covenants, financial or otherwise, associated with any financing will not be breached in the future.

The Opinion is necessarily based on economic, industry, market, financial and other conditions and circumstances as they exist and to the extent they can be evaluated by VRC as of the date hereof.

VRC did not conduct or provide contingent liability assessments of any kind, and the Opinion does not reflect any contingent liabilities whatsoever unless such contingent liabilities were identified in writing and explained to VRC in terms of their nature, estimated timing and estimated dollar amount by responsible officers of the Company. Because any contingent liabilities considered including, without limitation, Identified Contingent Liabilities, are estimates of responsible officers of the Company, VRC did not determine and does not express any opinion as to the completeness, reasonableness or propriety of such items.

VRC is being retained by the Company under this agreement as an independent contractor, and it is understood and agreed that this agreement does not create a fiduciary relationship between VRC and the Company's Board of Directors and/or any prospective lender under the contemplated credit facilities or other indebtedness. Moreover, while VRC has relied on certain factual information provided by the Company and its lenders and financial and legal advisors, and considered inquiries from and views expressed by others, the Opinion is based upon VRC's independent judgment and views.

VRC has not been involved in the structuring, documentation or negotiation of the Transactions and has not, other than the delivery of the Opinion and its review and analysis undertaken in connection therewith as described herein. provided any financial advisory or investment banking services to the Company related to or associated with the Transactions.

In its normal course of business, VRC is regularly engaged to provide financial opinions with respect to valuation, solvency, capital adequacy and fairness in connection with mergers, acquisitions, divestitures, leveraged buyouts, recapitalizations and financings.

Based on the foregoing, and in reliance thereon, VRC expresses the following Opinion:

- Immediately after and giving effect to the consummation of the Step Two Transactions, each of the Fair Value and Present Fair Saleable Value of the aggregate assets (including goodwill) of Tribune will exceed its liabilities (including Stated Liabilities, the Identified Contingent Liabilities and the New Financing);

- As of the date hereof, immediately after and giving effect to the consummation of the Step Two Transactions, Tribune will be able to pay its debts (including the Stated Liabilities, the Identified Contingent Liabilities and the New Financing), as such debts mature or otherwise become absolute or due; and

- As of the date hereof, immediately after and giving effect to the consummation of the Step Two Transactions, Tribune Does Not Have Unreasonably Small Capital.

Respectfully submitted,

VALUATION RESEARCH CORPORATION

Valuation Research Corporation

Engagement Number: 50004214