

# Selling Chicago Cubs Without Recognizing Any Taxable Gain

## How *Chicago Tribune* did it

By Tom R. Wechter

Originally published in the *AICPA Tax Insider Newsletter*.

December 10, 2009

One Atlantic Center, Suite 2300
1201 West Peachtree Street
**Atlanta**, Georgia 30309
t 404.437.7000 f 404.437.7100

225 Franklin Street, Suite 2600
**Boston**, MA 02110
t 617.848.5750 f 617.848.5784

233 South Wacker Drive
Suite 6600
**Chicago**, IL 60606-6473
t 312.258.5500 f 312.258.5600

One Westminster Place
**Lake Forest**, IL 60045-1885
t 847.295.9200 f 847.295.7810

900 Third Avenue
**New York**, NY 10022
t 212.753.5000 f 212.753.5044

One Market
Spear Street Tower
Thirty-Second Floor
**San Francisco**, CA 94105
t 415.901.8700 f 415.901.8701

1666 K Street NW, Suite 300
**Washington**, DC 20006
t 202.778.6400 f 202.778.6460

www.schiffhardin.com



The Tribune used the leverage partnership technique to transfer the Chicago Cubs to the Ricketts family without triggering the recognition of any gain.

### Purchase of Tribune Company

In December of 2007, Samuel Zell purchased the Chicago Tribune Company, using an Employee Stock Ownership Plan (ESOP), leaving the Tribune an S corporation 100-percent owned by an ESOP. As part of the buy out, the ESOP borrowed $250 million from the Tribune to purchase Tribune shares and the Tribune borrowed $7 billion to redeem the remaining shares of the Tribune. Zell for $90 million purchased a warrant exercisable anytime within fifteen years of issuance which gave Zell the right to acquire 40 percent of the Tribune from the ESOP for $500 million plus $10 million a year until the exercise price is equal to $600 million. The acquisition was structured to provide the Tribune with sheltered income to pay off the borrowing and Zell with the conversion of ordinary income into capital gains. One of the assets owned by the Tribune was the Chicago Cubs which it had purchased in 1981 for $21 million.

### Built-in Gain Rules

As an S corporation, the Tribune became subject to the built-in gain rules of Code Section 1374. Under those rules if an S corporation during the recognition period has net recognized built-in gain, a tax is imposed on the income of the corporation for that tax year. The amount of the tax imposed is computed by applying the highest corporate tax rate, which is 35 percent, to the net recognized built-in gain. The recognition period is the 10-year period beginning on the first day of the first year for which the corporation is an S corporation. The term recognized built-in gain means any gain recognized during the recognition period equal to the excess of the FMV of the disposed asset as of the first day of the recognition period over the adjusted basis of the asset at that time. For the Tribune, the recognition period began on January 1, 2008. Therefore, if the Tribune sold the Chicago Cubs for the asking price of $1 billion, the Tribune would have recognized almost $1 billion of built-in gain and would have incurred a tax at the corporate level of $400 million, both federal and state combined.

### Structure of Sale of the Chicago Cubs by the Tribune

To sell the Chicago Cubs to the Ricketts family, who had offered $845 million, but not trigger the Chicago Cubs built-in gain, the Tribune pulled a play from its tax play book that it had recently used to sell Newsday to Cablevision Systems, Inc., without triggering any built-in gain. That tax structure is referred to as a "leveraged partnership". In executing the leveraged partnership structure, a new limited liability company – Newco – taxed as a partnership was formed, to which the Tribune contributed the Chicago Cubs and its associated business for a five-percent interest and the Ricketts family contributed $150 million in cash for a 95 percent interest. The Ricketts family had certain call rights and the right of first refusal with respect to the membership interest owned by the Tribune and the Tribune has certain rights to put the membership interest to Ricketts family. In addition, Newco borrowed $698.75 million and the Tribune guaranteed the repayment of the principal and interest of the loan. From the funds provided by the debt and the equity financing, a special distribution of $740 million was made to the Tribune.

### Avoidance of Disguised Sale Rules

To avoid the triggering of the built in gain with respect to the Chicago Cubs assets, the planning employed by the Tribune depended upon avoiding the disguised rules. Under Section 707(a)(2)(B), where there are related transfers of property or money to a partnership and transfers of property or money by the partnership to the partner and when viewed together these transfers are characterized as a sale or exchange, then such transfers will be treated as a sale or exchange. Under Reg. Section 1.707-3(c)(1), if within a two year period, a partner transfers property to a partnership and the partnership transfers money or other consideration to the partner, the transactions are presumed to be a sales of the property to the partnership unless the facts and circumstances clearly establish otherwise. Reg. section 1.707-5(b)(1) provides that, for purposes of Reg. Section 1.707-3(c), if a partner transfers property to a partnership and the partnership incurs a liability and all or portion of the proceeds of that liability are allocable under Reg. Section 1.163-8T to a transfer of money to the partner made within 90 days of incurring the liability, the transfer of money to the partner is taken into account only to the extent that the amount of money transferred exceeds the partner's allocable share of the liability. Thus, if the partner's allocable share of the liability equals or exceeds the amount of debt financed money conveyed to that partner within 90 days of incurring the debt, no amount of the money is treated as the proceeds of a disguised sale by the transferring partner. The guarantee of the debt from which the proceeds distributed to the Tribune came created a risk of loss in the Tribune so that the debt was allocated to the Tribune under Section 752. The guarantee of the liability by the Tribune provided it with an increased basis and allowed it to receive the special distribution of cash without any gain recognition.

### Guarantee of Debt by the Tribune

The key to the success of the leveraged partnership technique is the guarantee of Newco's debt. The guarantee



of the debt from which the proceeds distributed to the Tribune came increased the Tribune's basis under Code Section 752 and allowed it to receive the special distribution of cash without any gain recognition. If the guarantee is disregarded, the liability will be treated as nonrecourse liability and will be allocated to the members in accordance with their sharing of the profits. See Reg. Section 1.752-3(a). Since the Tribune and the Ricketts share the profits in accordance with their percentage interests, the nonrecourse liability would be shared in that proportion and the Tribune would not have basis in its interest equal to the amount of the distribution. As a result it would recognize gain under Code Section 731 to the extent that the distribution exceeded its basis.

### IRS Challenge As in ILM 200246014

No doubt the IRS will challenge the leveraged partnership technique. In ILM 200246014, the IRS advised that a leveraged partnership transaction should be challenged on the grounds that:

1. The guarantee should not be respected;
2. The anti-abuse provisions of Reg. 1.701-2(a) should apply and
3. The transaction should be recast in accordance with its substance as a sale.

It would appear that as long as the Tribune's guarantee is respected and Reg. Section 1.707-5(b)(1) applies, the IRS challenges should not be upheld.

### Conclusion

There is no way to assess the merits of the IRS' position with respect to leveraged partnership transactions, since there is no precedent but the IRS regulations, Reg. Section 1.707-5(b)(1), support the leveraged partnership technique. If the facts support that the likelihood of the Tribune having to honor its guarantee is somewhat more than remote, then the guarantee should be respected and the leveraged partnership technique should be effective for the Tribune to escape the recognition of the built-in gain upon the transfer of the Chicago Cubs to the Ricketts family.



## About the Author

**Thomas R. Wechter** concentrates his practice in tax planning for individuals, corporations, and venture capital and private equity firms. He focuses on complex transactions involving acquisitions, dispositions, spin-offs and new venture investments.

## About Schiff Hardin LLP

**Schiff Hardin LLP** is a general practice law firm representing clients across the United States and around the world.  We have attorneys in offices located in Atlanta, Boston, Chicago, Lake Forest, New York, San Francisco and Washington.

This publication has been prepared for the general information of clients and friends of the firm. It is not intended to provide legal advice with respect to any specific matter. Under rules applicable to the professional conduct of attorneys in various jurisdictions, it may be considered advertising material. The advice contained in this article is not intended or written to be used, and cannot be used by a taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer under law.

For more information visit our Web site at www.schiffhardin.com.

© 2009 Schiff Hardin LLP