**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------- x   Chapter 11

In re:                                                                  :

                                                                        :   Case No. 08-13141 (KJC)

TRIBUNE COMPANY, et al.,                                 :

                                                                        :   Jointly Administered

          Debtors.                                            :

                                                                        :   Objections Due: September 14, 2010
                                                                        :   @ 4:00 p.m.(ET)

----------------------------------------------------------- x   Hearing Date:  N/A

**NINETEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS
CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
JULY 1, 2010 THROUGH JULY 31, 2010**

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | February 20, 2009, nunc pro tunc to December 18, 2008 |
| Period for Which Compensation and Reimbursement is Sought: | July 1, 2010 through July 31, 2010 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary | $1,153,677.60    (80% of $1,442,097.00) |
| Amount of Expense Reimbursement is Sought as Actual, Reasonable and Necessary: | $    22,233.25 |

This is a(n):     _x_ Monthly          ____ Interim          ____ Final Application

Prior Applications Filed:

| Date Filed | Docket No. | Period Covered | Fees Requested | Expenses Requested | Fees Approved | Expenses Approved |
|---|---|---|---|---|---|---|
| 2/25/2009 | 452 | 12/18/08 - 1/31/09 | $1,025,328.00 | $20,199.48 | $820,262.40 | $20,199.48 |
| 3/25/2009 | 809 | 2/1/09 - 2/28/09 | $642,734.00 | $42,979.74 | $514,187.20 | $42,979.74 |
| 4/25/2009 | 1087 | 3/1/09 - 3/31/09 | $663,569.50 | $12,315.26 | $530,855.60 | $12,315.26 |
| 5/26/2009 | 1239 | 4/1/09 - 4/30/09 | $515,864.50 | $8,352.11 | $412,691.60 | $8,352.11 |
| 6/26/2009 | 1649 | 5/1/09 - 5/31/09 | $582,143.25 | $31,011.71 | $465,714.60 | $31,011.71 |
| 7/27/2009 | 1832 | 6/1/09 - 6/30/09 | $726,009.50 | $32,090.07 | $580,807.60 | $32,090.07 |
| 8/25/2009 | 2009 | 7/1/09 - 7/31/09 | $1,453,980.25 | $37,749.39 | $1,163,184.20 | $37,749.39 |
| 9/25/2009 | 2232 | 8/1/09 - 8/31/09 | $1,450,944.50 | $52,216.32 | $1,160,755.60 | $52,216.32 |
| 10/26/2009 | 2430 | 9/1/09 - 9/30/09 | $1,418,350.00 | $40,049.24 | $1,134,680.00 | $40,049.24 |
| 11/25/2009 | 2634 | 10/1/09 - 10/31/09 | $1,670,709.75 | $25,752.36 | $1,336,567.80 | $25,752.36 |
| 12/28/2009 | 2937 | 11/1/09 - 11/30/09 | $1,461,754.00 | $99,575.80 | $1,169,403.20 | $99,575.80 |
| 1/25/2010 | 3197 | 12/1/09 - 12/31/09 | $1,519,536.50 | $72,274.74 | $1,215,629.20 | $72,274.74 |
| 2/25/2010 | 3534 | 1/1/10 - 1/31/10 | $1,960,664.50 | $71,749.46 | $1,568,531.60 | $71,749.46 |
| 3/26/2010 | 3865 | 2/1/10 - 2/28/10 | $1,516,158.50 | $90,806.96 | $1,212,926.80 | $90,806.96 |
| 4/26/2010 | 4160 | 3/1/10 - 3/31/10 | $1,494,305.50 | $110,300.89 | $1,195,444.40 | $110,300.89 |

| 5/25/2010 | 4601 | 4/1/10 - 4/30/10 | $918,260.75 | $59,270.50 | $734,608.60 | $59,270.50 |
| 6/25/2010 | 4882 | 5/1/10 - 5/31/10 | $1,331,321.00 | $57,905.29 | $1,065,056.80 | $57,905.29 |
| 7/26/2010 | 5120 | 6/1/10 - 6/30/10 | $1,228,244.00 | $63,110.06 | $982,595.20 | $63,110.06 |

**TRIBUNE COMPANY, et al.**

**SUMMARY OF HOURS**

**July 1, 2010 through July 31, 2010**

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2010 HOURLY RATE | TOTAL HOURS | TOTAL |
|------|-----------|-------------------|------------------|-------------|-------|
| **Partner\*** | | | | | |
| Howard Seife (1997) | Bankruptcy and Financial Restructuring | 1979 (NY) | $965 | 125.00 | $119,418.75 |
| Richard Leder (1988) | Tax | 1962 (NY) | 965 | 19.40 | 18,721.00 |
| David M. LeMay (2001) | Bankruptcy and Financial Restructuring | 1982 (NY) | 855 | 123.30 | 105,421.50 |
| Claude Serfilippi (1996) | Corporate | 1989 (NY) | 855 | 0.60 | 513.00 |
| Marc A. Alpert (1995) | Corporate | 1987 (NY) | 825 | 9.50 | 7,837.50 |
| Thomas J. McCormack (1992) | Litigation | 1983 (NY) | 825 | 147.70 | 121,357.50 |
| Jeffrey Robins (2001) | Trusts & Estates | 1990 (NY) | 825 | 0.60 | 495.00 |
| William A. Greason (1987) | Corporate | 1988 (NY) | 795 | 3.70 | 2,941.50 |
| N. Theodore Zink, Jr. (1997) | Bankruptcy & Financial Restructuring | 1984 (MS) 1991 (IL) 1996 (NY) | 795 | 153.70 | 122,191.50 |
| Robert Schwinger (1994) | Litigation | 1985 (NY) | 785 | 3.20 | 2,512.00 |
| Kevin Smith (2001) | Corporate | 1993 (NY) | 745 | 13.30 | 9,908.50 |
| Douglas E. Deutsch (2009) | Bankruptcy and Financial Restructuring | 1997 (NY) | 695 | 149.00 | 103,555.00 |
| Andrew Rosenblatt (2009) | Bankruptcy and Financial Restructuring | 1998 (NY) | 695 | 9.10 | 6,324.50 |
| David Gallai (2008) | Employee Benefits | 2000 (NY) | 650 | 9.10 | 5,915.00 |
| | | | | | |
| **Counsel:** | | | | | |
| Mark D. Ashley | Litigation | 1995 (NY) | 645 | 207.00 | 132,773.25 |
| Francisco Vazquez | Bankruptcy and Financial Restructuring | 1995 (NJ) 1996 (NY) | 625 | 141.30 | 88,312.50 |

| NAME | DEPARTMENT | YEAR OF ADMISSION | 2010 HOURLY RATE | TOTAL HOURS | TOTAL |
|---|---|---|---|---|---|
| James A. Stenger | Communications and Technology | 1978 (DC) | 495 | 44.20 | 21,879.00 |
| | | | | | |
| **Associate:** | | | | | |
| Christy L. Rivera | Bankruptcy and Financial Restructuring | 2002 (NY) | 625 | 18.50 | 11,562.50 |
| Robert J. Gayda | Bankruptcy and Financial Restructuring | 2005 (NY) | 595 | 174.70 | 103,946.50 |
| Elizabeth M. Miller | Real Estate | 1989 (CA) 1996 (DC) 1997 (NY) | 595 | 14.90 | 8,865.50 |
| Alexandra K. Nellos | Litigation | 2004 (NY) | 595 | 153.40 | 91,273.00 |
| Benjamin Carson | Corporate | 2008 (NY) | 475 | 17.70 | 8,407.50 |
| Robert Kirby | Litigation | 2008 (NY) | 475 | 37.30 | 17,717.50 |
| Blake Betheil | Tax | 2009 (NY) | 405 | 24.80 | 10,044.00 |
| Adrienne Duffy | Corporate | 2009 (NY) | 405 | 34.40 | 13,932.00 |
| Bonnie Dye | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 30.80 | 12,474.00 |
| Alison Kronstadt | Corporate | 2009 (NY) | 405 | 27.60 | 11,178.00 |
| Faryal Malik | Corporate | 2007 (NJ) 2008 (NY) | 405 | 32.30 | 13,081.50 |
| Francesca Perkins | Litigation | 2009 (NY) | 405 | 114.10 | 46,210.50 |
| Megan Strand | Communications and Technology | 2009 (NY) | 405 | 29.10 | 11,785.50 |
| Young Yoo | Bankruptcy & Financial Restructuring | 2009 (NY) | 405 | 38.20 | 15,471.00 |
| Kimberly Zafran | Litigation | 2009 (NY) | 405 | 143.20 | 57,996.00 |
| Eric Daucher | Bankruptcy & Financial Restructuring | JD-2009 | 355 | 47.10 | 16,720.50 |
| Marc Roitman | Bankruptcy & Financial Restructuring | 2010 (NY) | 355 | 197.10 | 69,970.50 |
| | | | | | |

| Law Clerks: | | | | | |
|---|---|---|---|---|---|
| Philip Kaminsky | n/a | n/a | 250 | 12.30 | 3,075.00 |
| Lindsay MacLeod | n/a | n/a | 250 | 15.10 | 3,775.00 |
| Justin Schenck | n/a | n/a | 250 | 4.10 | 1,025.00 |
| | | | | | |
| **Paraprofessionals:** | | | | | |
| David Bava | Bankruptcy & Financial Restructuring | n/a | 270 | 48.90 | 13,203.00 |
| Helen M. Lamb | Bankruptcy and Financial Restructuring | n/a | 270 | 31.90 | 8,613.00 |
| Marisa Iacopelli | Litigation | n/a | 240 | 81.60 | 19,584.00 |
| Aram Hanessian | Bankruptcy & Financial Restructuring | n/a | 185 | 11.40 | 2,109.00 |
| | | | | | |
| **TOTAL:** | | | | **2,500.20** | **$1,442,097.00** |

BLENDED RATE:     $577.75

---

\*  Includes year elected Partner at firm or joined firm as Partner.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:

TRIBUNE COMPANY, et al.,

                  Debtors.

---------------------------------------------------------- x

: Chapter 11

: Case No. 08-13141 (KJC)

: Jointly Administered

: Objections Due: September 14, 2010
  @ 4:00 p.m.(ET)
: Hearing Date: N/A

## NINETEENTH MONTHLY APPLICATION OF CHADBOURNE & PARKE LLP, AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TRIBUNE COMPANY, ET AL. FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD JULY 1, 2010 THROUGH JULY 31, 2010

Chadbourne & Parke LLP ("Chadbourne"), as co-counsel to the Official Committee of Unsecured Creditors (the "Committee") of Tribune Company et al. (collectively, the "Debtors"), hereby submits this Application (the "Application") for approval and allowance of compensation for services rendered in the amount of $1,442,097.00 (80% of which equals $1,153.677.60) and reimbursement of expenses incurred in the amount of $22,233.25 during the period commencing July 1, 2010 through and including July 31, 2010 (the "Application Period"). This Application is submitted pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and Committee Members Pursuant to 11 U.S.C. §§ 105(a) and 331 (the "Compensation Order").  In support of the Application, Chadbourne respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334.  Venue of this proceeding and this Application is proper in this district pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The statutory bases for relief requested herein are Sections 105(a), 330, 331 and

1103(a) of the Bankruptcy Code.

## BACKGROUND

3.      On December 8, 2008 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court").  On December 10, 2008, the

Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural

purposes only.

4.      The Debtors have continued in possession of their respective properties and have

continued to operate and maintain their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

5.      On December 18, 2009, the Office of the United States Trustee appointed the

Committee pursuant to section 1102 of the Bankruptcy Code.

6.      On February 20, 2009, the Bankruptcy Court authorized the employment and

retention of Chadbourne as co-counsel for the Committee, nunc pro tunc to December 18, 2008.

7.      On May 10, 2010, the Bankruptcy Court authorized the appointment of Kenneth

N. Klee, Esquire as Examiner in these Chapter 11 cases.

## COMPENSATION PAID AND ITS SOURCES

8.     All services for which compensation is requested by Chabourne were performed

for or on behalf of the Committee.

9.     During the Application Period, Chadbourne has received no payment and no

promise of payment from any source for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement

or understanding between Chadbourne and any other person, other than members of the firm,

for sharing of compensation to be received for services rendered in these cases.

## FEE STATEMENTS

10.     The fee statement for the Application Period is attached hereto as Exhibit A.  This

statement contains daily time logs describing the time spent by each attorney and

paraprofessional for this period.  To the best of Chadbourne's knowledge, this Application

complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the

Guidelines adopted by the Office of the United States Trustee, Del. Bankr. L.R. 2016-2, and the

Compensation Order.

## SUMMARY OF SERVICES

11.     As set forth in the detailed statement of fees attached hereto as Exhibit A, fees

incurred by Chadbourne during the Application Period total $1,442,097.00.  The services

rendered by Chadbourne during the Application Period are grouped into specific project

categories as set forth in Exhibit A.  The attorneys and paraprofessionals who rendered services

relating to each category are identified, along with the number of hours for each individual and

the total compensation sought for each category.

12.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

**A.      Bankruptcy General (Matter 002)**

Fees:  $21,156.00        Total Hours:    45.70

13.     During the Application Period, Chadbourne devoted numerous hours to the fulfillment of its professional duties and responsibilities in connection with the administration of these chapter 11 cases including: (i) meetings with and addressing the inquiries of the Debtors and the Debtors' professionals, other Committee professionals, the United States Trustee and other parties in interest in these cases; (ii) monitoring of incoming correspondence, pleadings, and dockets; (iii) preparing for and attending various omnibus hearings and court conferences on behalf of the Committee; and (iv) disseminating information to the Committee and other various parties-in-interest.  Also, Chadbourne established and maintains an Intralinks account in order to provide a repository for memoranda and pleadings readily accessible by members of the Committee.

14.     Chadbourne's paraprofessionals have also been required to monitor and retrieve all newly filed pleadings from the Bankruptcy Court's docket, prepare and distribute daily status reports, maintain a current case calendar and post Committee-related pleadings and memoranda to Intralinks.  Chadbourne's paraprofessionals supervise the internal management of documents and the distribution of documents both to the professionals at Chadbourne and to the members of the Committee, coordinate receipt of pleadings, correspondence and other documents, assist attorneys in preparation of papers for electronic filing, and respond to third-party requests for documents.

**B.**    **Committee Meetings (Matter 003)**

Fees: $72,222.00          Total Hours:    107.80

15.    Regular and special meetings of the Committee (the "Committee Meetings") were held during the Application Period and generally occurred weekly, either by telephone conference or in person, to review the Debtors' operational initiatives, the Debtors' finances, pending motions, plan and confirmation issues, the LBO/ESOP investigation and related issues, options related to the Debtors' assets, tax issues and numerous other issues regarding the administration of the Debtors' cases. Committee Meetings continue to be the most effective and efficient way of providing a forum for Committee members to express their views and to ensure that all members of the Committee are kept informed of the events occurring in the Debtors' cases. Further, minutes are recorded at each Committee Meeting to provide an official record of those meetings. Chadbourne attorneys prepared for these meetings and spent time, among other things, reviewing materials and drafting agendas, preparing presentation materials, conducting the meetings, and drafting all meeting minutes.

**C.**    **Creditor Communications (Matter 004)**

Fees: $4,315.50          Total Hours:    6.30

16.    Chadbourne, as counsel to the Committee, is the focal point for creditor inquiries. During the Application Period, Chadbourne attorneys reviewed and responded to correspondence and other inquiries received from unsecured creditors and participated in telephone conferences with members of the Committee to discuss open issues and developments in the Debtors' cases.

**D.**    **Business Operations (Matter 007)**

Fees: $60,318.50        Total Hours:    118.10

17.    During the Application period, Chadbourne attorneys continued to devote time with respect to corporate and transactional matters concerning the Debtors' businesses.  Efforts included review of the Debtors' motion to enter into a settlement agreement between a subsidiary Debtor and MediaNews resolving a dispute arising from a prepetition option agreement for purchase of the assets and business operations of the *L.A. Daily News*. Chadbourne and the Committee's financial advisors analyzed the relief requested in the motion as well as the underlying option purchase agreement and engaged with the Debtor's professionals on their approach to the resolution.  As a result, the Committee's professionals determined the resulting compromise was fair and reasonable.

18.    Chadbourne continued to devote time to the potential Food Network transaction between a Tribune affiliate and Scripps Networks.  Attorneys from Chadbourne's corporate group continued to analyze and provide comments to the transaction documents and reviewed and considered various transaction scenarios.

19.    During the Application Period, professionals from Chadbourne's Communications and Technology Group and Bankruptcy Group expended further time reviewing and responding to "petitions to deny" filed by several parties in response to the Tribune FCC applications. Efforts included review and analysis of additional responses to the petitions to deny including related legal research.   In addition, Chadbourne's Communications and Technology team expended time reviewing and commenting on FCC related aspects of the Committee's alternative plan and disclosure statement.  In particular, Chadbourne's team researched and

analyzed FCC requirements for the establishment of certain corporate structures that would likely be required for a Committee alternative plan. Chadbourne worked on drafting the appropriate corporate documents that would be necessary in this scenario.

20.     Finally, Chadbourne attorneys continued to review and monitor issues involving the Debtors' day-to-day business operations. This included the review of weekly operations and financial reports prepared by the Committee's financial advisors.

**E.      Claims Administration/Bar Date (Matter 009)**

Fees: $12,434.00          Total Hours:    27.00

21.     During the Application Period, Chadbourne continued to expend efforts in connection with the claims process. Efforts included reviewing the Debtors' thirty-third and thirty-fourth omnibus objections to claims. Chadbourne reviewed and evaluated the relief requested in the motions as well as the bases and processes followed by the Debtors in pursuing the objections and summarized its review in a written report to the Committee.

22.     During the Application Period, Chadbourne expended further efforts addressing a motion filed by Wilmington Trust Company ("WTC") for allowance of it claim for attorneys' fees in connection with plan confirmation. Chadbourne collaborated with Debtors' counsel to analyze and respond collectively to the requested relief.   Subsequently, WTC adjourned the hearing date and objection deadline to mid-August.

**F.**    **Fee/Retention Applications (Matter 010)**

      Fees:  $18,553.50        Total Hours:    49.50

23.     Chadbourne expended further time during the Application Period in compliance with the Bankruptcy Court's fee procedures in these cases.  Efforts included preparing and filing its eighteenth monthly fee application and sixth interim fee application.

24.     During this time, Chadbourne continued to review and address certain disputed issues raised in the Fee Examiner's final report on Chadbourne's third interim fee application and participated in discussions with the Fee Examiner on a resolution of those issues.

25.     In continuance of an ongoing process, Chadbourne expended time on the treatment of ordinary course professionals.  These efforts included the review and analysis of filed affidavits to ensure qualification criteria were satisfied and the monitoring of spending and monthly fee caps in connection with same.

**G.**    **Plan and Disclosure Statement (Matter 011)**

      Fees:  $415,040.00      Total Hours:    661.80

26.     During the Application Period, Chadbourne professionals continued to be engaged in research and development on alternative steps that the Committee might take in the event the proposed plan of reorganization was not confirmed.  These analyses were deemed necessary given the number of objections to the plan that were being prosecuted by different parties and the imminent termination of the Debtors' exclusivity period.  After an initial outline of options was presented to the Committee, the Committee requested that Chadbourne continue with alternative planning and preparation.   In formulating alternative plan strategies,

professionals from Chadbourne's bankruptcy, corporate, litigation and tax teams conducted extensive legal research and analyses necessary in developing a plan structure. In connection therewith, Chadbourne professionals prepared for and participated in meetings with certain key constituencies to review and discuss alternative plan strategies. Finally, Chadbourne compiled its research in a presentation setting forth the elements of its alternative plan strategy which was reviewed and discussed with the Committee.

27.     During this time, the Committee continued preparing for the August 29, 2010 hearing on confirmation of the Debtors' plan of reorganization. As part of the process, Chadbourne's team of professionals met and conferred on a regular basis with certain key supporters of the Debtors' plan (the "Plan Supporters") to discuss various confirmation issues and address pending motions that were inconsistent with the Committee's and Plan Supporters' position. Specifically, Chadbourne expended further time in response to Bridge Agent's motion to establish procedures for adjudicating the Debtors' objections to the bridge loan claims (the "Bridge Agent Motion"). Chadbourne, on behalf of the Committee, prepared and filed an objection to the Bridge Agent Motion and prepared and filed a statement in support of the Debtors' objection and cross motion. Further, Chadbourne collaborated with and provided comments on the Debtors' and Plan Supporters' responsive pleadings and reviewed and provided comments on the Debtors' amended scheduling order. Hearing on the Bridge Agent Motion is currently pending.

28.     Following the filing of the Examiner's Report (as more fully described in Section M of this Application), court papers were filed and discussions ensued on further extending the dates on the confirmation schedule in order to allow sufficient time to properly

review and assess the conclusions in the Examiner's Report. The parties ultimately reached consensus on a revised confirmation schedule, which was memorialized in Court Order dated August 3, 2010.

**H.    Employee Issues (Matter 014)**

Fees: $18,109.00          Total Hours:    25.70

29.      During the Application Period, Chadbourne attorneys continued to be engaged in negotiations on the Debtors' request to continue its Management Incentive Plan (the "2010 MIP") for certain management employees and top executives. Chadbourne consulted with the Committee's financial advisors on their analysis of the 2010 MIP and prepared a counterproposal which was presented to and approved by the Committee. Ultimately, following further discussions with the Debtors' professionals, the Debtors accepted the Committee's counterproposal on the 2010 MIP.

30.      During this time, the Debtors filed a supplement to their plan of reorganization which would institute a severance program for 42 senior executives providing, among other things, certain protections upon termination after the effective date (the "Severance Plan"). The Committee has taken an active role in negotiating the terms to the Severance Plan. In connection therewith, professionals from Chadbourne's Employment group and the Committee's financial advisors have undertaken a comprehensive review of the terms of the Severance Plan and, subsequently, Chadbourne professionals participated in discussions with Debtors' counsel on suggested changes to the Plan. The Committee is kept regularly apprised of the progress of these ongoing negotiations.

**I.      Relief from Stay Issues (Matter 015)**

Fees: $2,798.00          Total Hours:     5.60

31.      During the Application Period, Chadbourne professionals remained engaged in addressing and responding to the Ivan J. Bates motion for relief from the automatic stay. Efforts included continued collaboration with Debtors' counsel to analyze and respond collectively to the requested relief.

**J.      Tax Issues (Matter 016)**

Fees: $30,858.50          Total Hours:     47.10

32.      During the Application Period, Chadbourne tax professionals reviewed and analyzed various tax issues arising from the administration of these Chapter 11 cases. Chadbourne reviewed and considered tax implications of the proposed Cooking Channel transaction and provided comment to the draft agreements.

33.      During the Application Period, professionals from Chadbourne's tax team also reviewed the terms of the Committee's alternative draft plan of reorganization and disclosure statement to ascertain the U.S. federal income tax consequences of adopting the proposed plan from various perspectives, including the perspective of creditors.  In addition, Chadbourne researched the characterization of various bankruptcy trusts and analyzed the tax treatment of those trusts.

**K.**    **General Litigation (Matter 017)**

Fees:  $148,679.00        Total Hours:  243.80

34.    During the Application Period, Chadbourne professionals were fully engaged in reviewing the highly anticipated report of the Examiner summarizing his conclusions of the major issues concerning the LBO-related causes of action (the "Examiner's Report").

35.    On July 24, 2010, prior to filing his report, the Examiner filed a motion seeking to temporarily file his entire report under seal with a request that the Court resolve various parties' confidentiality claims so that the entire report can be viewed by the public in its entirety.  On July 26, 2010, the Examiner's Report was filed in a redacted form.  To keep the Committee apprised, the redacted report was immediately studied by Chadbourne and, soon after, a summary analysis was provide to the Committee.

36.    During this period and in response to the Examiner's seal motion, Chadbourne worked with the Debtors to file a motion requesting the Examiner be authorized to provide certain parties the unredacted report and exhibits pursuant to the protections of the Document Depository Order pending resolution of the confidentiality issues raised in the Examiner's seal motion.  The unredacted report was made available to those certain parties following an expedited hearing on the Debtors' motion on July 29, 2010.  Subsequently, pursuant to an order of the Court, the full unredacted Examiner's Report was made public on August 3, 2010.

37.    Review of the Examiner's Report was a considerable undertaking, as the report comprised four volumes totaling 1,425 pages and is supported by approximately 1,100 exhibits.  As part of the extensive review process, Chadbourne's team of professionals analyzed and researched various discrete issues raised in the report.  In addition, Chadbourne participated in

discussions with the Committee's financial advisors to review and consider various recovery

scenarios as a result of the Examiner's conclusions as well as implications on plan confirmation.

Based on its substantive review, Chadbourne prepared a detailed factual and legal analysis of

the Examiner's Report for presentation to the Committee.

**L.     Travel (Matter 018)**

     Fees: $2,443.00          Total Hours:    6.00

38.     During the Application Period, Chadbourne attorneys travelled to Wilmington,

Delaware to attend an omnibus hearing at the Bankruptcy Court.  The hours reflect non-

working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**M.     Plan Litigation (Matter 21)**

     Fees: $635,170.00          Total Hours:    1,155.80

39.     During the Application Period, professionals from Chadbourne's litigation and

bankruptcy groups have been actively engaged in preparing for the contested hearing on

confirmation of the plan.  Efforts included monitoring and participating in the discovery

activities being pursued by the parties in connection with the Discovery and Scheduling Order

for Plan Confirmation.  Chadbourne professionals reviewed the various discovery requests and

pleadings filed in response to those requests and determined appropriate courses of action for

the Committee.  Chadbourne also prepared for and attended several confirmation-related

depositions that were scheduled during this period.  As a significant number of documents were

sought (on confirmation-related discovery requests) and produced by the various parties during

this period, Chadbourne's team of professionals continued to review documents during this

time.  To date, as part of the plan discovery process, Chadbourne has reviewed approximately 15,000 documents (over 203,000 pages of materials).

40.     Chadbourne's team also spent substantial time and effort considering confirmation hearing scenarios and researching and analyzing potential legal/factual issues as well as potential challenges to confirmation.  Frequent meetings were held with the Debtors' professionals and other plan supporters to address various confirmation-related challenges and reviewed and discussed counter-arguments in connection therewith.  Chadbourne prepared for and attended a Court hearing where certain confirmation-related pleadings were addressed.

41.     During this time, Chadbourne professionals continued to research and prepare an evidentiary record for the confirmation hearing and considered and discussed possible expert and fact witnesses for the Committee and certain plan proponents.  Subsequent review and preparation of expert and fact witness disclosures and discussion and preparation of hearing testimony ensued.  Further efforts were expended in reviewing the timeline of events during the settlement negotiations and preparation of a detailed factual outline and chronology of the Committee's involvement with the settlement process.

42.     Following the release of the Examiner's Report during the Application Period, Chadbourne's litigation professionals expended time on the review and analysis of the report in order to evaluate the impact of the Examiner's conclusions on plan confirmation and consider litigation options.

43.     Throughout this process, Chadbourne and the Committee's professionals continued to participate in frequent meetings and discussions with plan proponents and the Debtors' professionals in a collaborative effort to address the myriad of issues raised in

preparing for confirmation and continued to update the Committee on the progress of these efforts.

## ACTUAL AND NECESSARY EXPENSES

44.    A summary of the actual and necessary expenses and daily logs of expenses incurred by Chadbourne during the Application Period in the amount of $22,233.25 is attached hereto as Exhibit B.  Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, the firm has reduced this charge to $0.10/per page. Chadbourne customarily charges its clients $1.25/per page for out-going facsimile transmissions.  For purposes of these cases, the firm has reduced this charge to $1.00/per page.

45.    Due to the national nature of the Debtors' business and the Committee's participation in weekly meetings by telephone, long distance telephone and conference call services have been required.  In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers.  Chadbourne utilizes outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

46.    With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services.  In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

47.     The category of meal expenses represents (i) reimbursement of reasonable costs of meals of those Chadbourne attorneys and other employees who worked late into the evenings or on weekends and while travelling (which is consistent with firm policy) and (ii) the catering costs in connection with in-person Committee meetings, settlement meetings and depositions hosted by Chadbourne in which breakfast, lunch and/or other refreshments were served.

48.     In order to meet deadlines and satisfy the demands of these cases, attorneys and other employees of Chadbourne were required to work late in the evenings or on weekends. Consistent with firm policy, reasonable transportation costs were reimbursed as well as paraprofessional overtime.

## VALUATION OF SERVICES

49.     Attorneys and paraprofessionals of Chadbourne have expended a total of 2,500.20 hours in connection with the matter during the Application Period.  The nature of the work performed by these persons is fully set forth on Exhibit A attached hereto.  These are Chabourne's normal hourly rates for work of this character.  The reasonable value of services rendered by Chadbourne to the Committee during the Application Period is $1,442,097.00.

50.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed prior to the preparation of this Application, Chadbourne reserves the right to request additional compensation for such services, and reimbursement of such expenses in a future application.

51.     In accordance with the factors enumerated in section 330 of the Bankruptcy Code, it is respectfully submitted that the amount requested by Chadbourne is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the

services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.  Moreover, Chadbourne has reviewed the requirements of Del. Bankr. L.R. 2016-2 and believes that this Application complies with that Rule.

WHEREFORE, Chadbourne respectfully requests that this Court authorize that an allowance be made to Chadbourne pursuant to the terms of the Compensation Order for the period July 1, 2010 through July 31, 2010:  (a) authorizing compensation in the amount of $1,442,097.00 (80% of which equals $1,153,677.60) for professional services rendered, and reimbursement of expenses incurred in connection therewith in the amount of $22,233.25 for a total of $1,464,330.25; (b) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein; and (c) granting such other and further relief as this Court deems just and proper.

Dated:   August 24, 2010
         New York, New York

**CHADBOURNE & PARKE LLP**

By: _____
         Douglas E. Deutsch
         (A Member of the Firm)

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Co-Counsel to The Official Committee of
Unsecured Tribune Company, et al.

**VERIFICATION**

STATE OF NEW YORK    :
                           : ss:
COUNTY OF NEW YORK  :

Douglas E. Deutsch, after being duly sworn according to law, deposes and says:

(a)     I am a partner with the applicant firm, Chadbourne & Parke LLP, and have been admitted to the bar of the State of New York since 2009.

(b)     I am familiar with the work performed on behalf of the Committee by the lawyers in the firm.

(c)     I have reviewed the foregoing Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2 and submit that the Application substantially complies with such order.

_____
Douglas E. Deutsch

Sworn to before me this
24th day of August 2010

_____
Francisco Vazquez
Notary Public, State of New York
No. 31-6013920
Qualified in New York County
Commission Expires December 27, 2010