## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## DECLARATION OF DAVID G. HEIMAN

David G. Heiman declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney at law admitted and in good standing to practice law in the State of Ohio.

2.      I am a partner in the law firm of Jones Day ("Jones Day"), and I am duly authorized to make this declaration (the "Declaration") on behalf of Jones Day. I make this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS 1, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (5612); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Declaration, pursuant to Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), in support of the Debtors' Application for an Order

Authorizing the Retention of Jones Day as Special Counsel for the Special Committee of the

Tribune Company's Board of Directors Pursuant to 11 U.S.C. §§ 327(e), Nunc Pro Tunc to

August 22, 2010 (the "Application").[2]  Unless otherwise stated in this Declaration, I have

personal knowledge of the facts set forth herein.

### Scope Of Services to be Provided by Jones Day

3.    The Debtors are seeking to employ Jones Day to advise a committee of the board

of directors of Tribune Company (the "Special Committee") formed in respect of the

reorganization of the Debtors, including the appropriate resolution of causes of action relating to

the LBO (as defined in the Application) in the Debtors' chapter 11 cases.  Specifically, it is my

understanding that the Special Committee has been charged with

- reviewing, evaluating and approving, from time to time as appropriate or advisable, the structure, terms or conditions of, and authorize the execution and filing of, any plan of reorganization and any and all amendments, modifications, supplements and exhibits thereto;

- taking such action from time to time, as the Special Committee deems appropriate or advisable, to resolve any and all claims, causes of action, avoidance powers or rights, and legal or equitable remedies against the Company or any of its subsidiaries ("Claims"), including, without limitation, any Claims arising from any transaction related to the leveraged buy-out of the Company, including, without limitation, the purchase by the Company of its common stock on or about June 4, 2007, the merger and related transactions involving the Company on or about December 20, 2007, and any financing committed to, incurred or repaid in connection with any such transaction, regardless of whether such Claims may be asserted pursuant to the Bankruptcy Code or any other applicable law, including, without limitation, the review, evaluation and approval of any support agreement or any agreement for the satisfaction, settlement, discharge and/or release of any such Claims;

---

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Application.

- taking such action from time to time as the Special Committee deems appropriate or advisable to fully inform itself with respect to any Claims or the structure, terms or conditions of any plan of reorganization;

- reviewing, evaluating and approving, and authorizing the execution and filing of, any and all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to take any and all further actions the Special Committee deems appropriate or advisable in connection with the chapter 11 cases; and

- taking such other actions to assist the Board in carrying out its responsibilities as the Board may delegate to or request of the Special Committee from time to time.

(collectively, the "Special Committee Matters").

4.    Jones Day will be advising the Special Committee with respect to the Special Committee Matters, and specifically, with respect to: (i) any plan of reorganization; (ii) any and all claims, causes of action, avoidance powers or rights and legal or equitable remedies arising out of the LBO; and (iii) other, similar matters as the Special Committee may request during the pendency of these chapter 11 cases, or otherwise, related to the Special Committee Matters.

5.    Jones Day is well-qualified to represent the Special Committee in connection with the Special Committee Matters as special counsel in these chapter 11 cases in an efficient and effective manner.  In order to minimize costs, Jones Day will work closely with the Debtors, the Special Committee and each of the Debtors' other retained professionals as necessary to delineate clearly the professionals' respective duties so as to prevent unnecessary duplication of services whenever possible.

### Payment of Jones Day's Fees and Expenses

6.    Subject to the Court's approval of the Application, Jones Day intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered; and (b) seek reimbursement of actual and necessary out-of-pocket expenses according to its customary reimbursement policies, which Jones Day submits are reasonable.  Jones Day's hourly rates, which are attached as Schedule 3

hereto for those lawyers currently expected to spend significant time on these chapter 11 cases, may change from time to time in accordance with Jones Day's established billing practices and procedures.

       7.    Jones Day intends to maintain detailed, contemporaneous time records and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any additional procedures that may be established by the Court in these chapter 11 cases. Jones Day understands that interim and final fee awards are subject to approval by this Court.

### Jones Day Does Not Represent or Hold any Adverse Interest<br>With Respect to the Matters on Which it is to be Employed

       8.    The Debtors have provided Jones Day with a list of the names (collectively, the "Interested Parties") of individuals or institutions in the following categories:

      (a)    the Debtors and non-debtor affiliates;

      (b)    the current and former directors and officers of Tribune Company and other Debtors;

      (c)    the forty largest consolidated unsecured creditors (consolidated);

      (d)    the prepetition lenders to the Debtors;

      (e)    counterparties to hedging agreements;

      (f)    professionals retained by prepetition lenders;

      (g)    indenture trustee;

      (h)    insurance carriers;

      (i)    other professionals retained by the Debtors outside of the ordinary course of business;

      (j)    major customers of the Debtors;

      (k)    parties to significant litigation with the Debtors;

      (l)    significant landlords of the Debtors;

| | |
|---|---|
| (m) | the Judges on the United States Bankruptcy Court for the District of Delaware; |
| (n) | the Office of the United States Trustee; |
| (o) | the ESOP trustee; |
| (p) | entities involved in leveraged ESOP transactions; |
| (q) | significant former shareholders; |
| (r) | major holders of the PHONES; |
| (s) | counterparties to recent significant asset dispositions; |
| (t) | counterparties to a "formation agreement"; |
| (u) | joint venture partners; |
| (v) | equity method investments; |
| (w) | former indenture trustees; |
| (x) | the agents under credit agreements; and |
| (y) | certain other parties. |

The identities of the Interested Parties are set forth on Schedule 1 hereto.

9.     To check and clear potential conflicts of interest in these cases, as well as determine all "connections" (as such term is used in Bankruptcy Rule 2014) to the Debtors, their creditors, the Special Committee, other parties in interest, their respective attorneys and accountants, the United States Trustee (the "United States Trustee"), or any person employed in the office of the United States Trustee, Jones Day researched its client database for the past two years to determine whether it had any relationships with Interested Parties.

10.     In preparing this Declaration, Jones Day used a set of procedures developed by Jones Day to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of special counsel by a debtor under section 327(e) of the Bankruptcy Code (the "Disclosure Procedures"). Pursuant to the Disclosure Procedures,

Jones Day performed the actions described below to determine whether Jones Day or any of its

attorneys has any connections with, or is currently representing potential parties in interest in

these chapter 11 cases.  In particular:

(a)     Jones Day compared each of the Interested Parties to the names that Jones
Day maintains in its master client database created from its conflict
clearance and billing records.  Jones Day's client database includes (i) the
name of each current or former client, (ii) the names of any entities
materially related to, or materially adverse to, such current or former
client, and (iii) the names of the Jones Day attorneys responsible for such
current or former clients.

(b)     Any matches between the Interested Parties and the entities in Jones Day's
client database were identified, reviewed and compiled for purposes of
this Declaration.  To the extent that Jones Day currently represents any
Interested Parties or potential affiliates of Interested Parties in active
matters, the identities of such entities are set forth on Schedule 2 hereto.
All of the Jones Day engagements set forth in Schedule 2 are in matters
unrelated to the Debtors, other than Jones Day's representation of the
Debtors themselves.

11.     The client connections listed on Schedule 2 hereto were reviewed under

my supervision, and from such review it was determined that, in respect of each connection

between Jones Day and such parties, Jones Day does not hold or represent an interest that is

adverse to the Special Committee or the Debtors' estates with respect to the matters for which

Jones Day is proposed to be employed, as required by section 327(e) of the Bankruptcy Code.

12.     In addition to the foregoing, to the best of my knowledge, information and

belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor Jones Day,

nor any partner or associate thereof, has any connection with (a) the United States Trustee for

Region 3 or any person employed by the Office of the United States Trustee; or (b) any creditors

or other parties in interest that would be adverse to the Special Committee or to the Debtors or

their estates with respect to the matters for which Jones Day seeks to be retained.  As part of its

practice, Jones Day appears in cases, proceedings and transactions involving many different

attorneys, accountants, financial consultants, and investment bankers, some of which now or may in the future represent claimants and other parties in interest in these cases. Jones Day is not aware of any relationship it has with any such attorneys, accountants, financial consultants and investment bankers that would be adverse to the Special Committee or to the Debtors or their estates with respect to the matters for which Jones Day is proposed to be retained. Jones Day has not represented and will not represent any such parties in relation to the matters for which Jones Day is proposed to be retained by the Special Committee.

13.     On March 10, 2009, the Court entered the Order Authorizing Debtors and Debtors in Possession to Employ and Retain Jones Day as Special Counsel for Certain Litigation Matters Pursuant to 11 U.S.C. §§ 327(e) and 1107, nunc pro tunc to the Petition Date. Pursuant to such order, Jones Day has represented, and continues to represent, the Debtors regarding certain antitrust matters (the "Anti-Trust Matters") throughout the Debtors' chapter 11 cases. To the extent necessary, the Jones Day lawyers working on the Anti-Trust Matters will be separated by an ethical wall from the lawyers who will work on the Special Committee Matters. Jones Day's current engagement with the Debtors on the Anti-Trust Matters has been minimal throughout these cases, and in any event, does not conflict or interfere with Jones Day's proposed retention for the Special Committee Matters.

14.     Jones Day received approximately $130,394.21 from the Debtors and affiliates within one year prior to the Petition Date, and $138,372.58 since the Petition Date (with $18,381.77 in holdbacks), on account of services rendered with regard to the Anti-Trust Matters.[3]

---

[3]     Jones Day also has approximately $32,385 in accrued, but unpaid fees in connection with its engagement on Anti-Trust Matters. Jones Day intends to file an application with the Court for the payment of these fees.

15.     To the best of my knowledge, information and belief, Jones Day does not hold or represent an interest adverse to the Special Committee or to the Debtors or their estates in the matters for which Jones Day is proposed to be retained.  Accordingly, I believe that Jones Day satisfies the requirements for employment as special counsel pursuant to section 327(e) of the Bankruptcy Code.

16.     Despite the efforts described above to identify and disclose Jones Day's connections with parties in interest in these chapter 11 cases, entities that are not currently identified as Interested Parties, but may nonetheless be or later become parties in interest in these chapter 11 cases, would not be disclosed in this Declaration.  Accordingly, if Jones Day discovers additional information regarding Interested Parties that requires disclosure, it will submit a supplemental disclosure to the Court containing such additional information.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 30, 2010

David G. Heiman, Esq.