## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: September 21, 2010 at 4:00 p.m. ET**<br>**Hearing Date: October 22, 2010 at 2:00 p.m. ET** |

## SUMMARY SHEET FOR FINAL APPLICATION OF KENNETH N. KLEE, THE EXAMINER, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 30, 2010 THROUGH AUGUST 20, 2010

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); ChicagoLand Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

| | |
|---|---|
| Name of Applicant: | Kenneth N. Klee, Esq., as the Examiner appointed in the above-captioned cases |
| Date of Appointment: | April 30, 2010<br>(Order entered May 11, 2010) |
| Period for Which Compensation and Reimbursement is Sought: | April 30, 2010 through August 20, 2010 (the "Final Application Period") plus amounts incurred thereafter relating to preparation of final fee applications, replies to any objections, and appearance at the hearing thereon[2] |
| Amount of Compensation for Final Application Period sought as actual, reasonable and necessary: | $663,292.50 |
| Amount of Expense Reimbursement for Final Application Period sought as actual, reasonable and necessary: | $27,422.93 |
| Amount of Compensation and Expense Reimbursement sought as actual, reasonable and necessary in connection with final fee applications | TBD |

This is a(n):        ☐ Monthly        ☐ Interim        ☒ Final Application.

---

[2]  The amounts referenced herein are calculated based on information received through August 25, 2010. The Examiner intends to file one or more supplements to this Final Application, prior to the hearing thereon detailing: (a) the fees and expenses incurred in connection with the preparation and prosecution of this Final Application, and (b) any additional expenses for which the Examiner does not yet have complete or final billing information, including but not limited to, telephone expenses, PACER services, and Federal Express charges.

## PRIOR APPLICATIONS FILED

| Date Filed and Docket No. | Application Period | Fees Requested | Expenses Requested | CNO Docket No. | Fees Approved | Expenses Approved | 20% Holdback |
|---|---|---|---|---|---|---|---|
| 8/10/2010 D.I. 5326 | 4/30/2010 | $6,922.50 | $-0- | Pending | Pending | Pending | Pending |
| 8/10/2010 D.I. 5327 | 5/1/2010 – 5/31/2010 | $176,426.25 | $3,791.40 | Pending | Pending | Pending | Pending |
| 8/10/2010 D.I. 5328 | 6/1/2010 – 6/30/2010 | $267,637.50 | $12,866.82 | Pending | Pending | Pending | Pending |
| 8/25/2010 D.I. 5522 | 7/1/2010 – 7/31/2010 | $188,906.25 | $8,522.44 | Pending | Pending | Pending | Pending |

## REQUESTED AMOUNTS NOT INCLUDED IN PRIOR APPLICATIONS

| Period | Fees Requested | Expenses Requested |
|---|---|---|
| 8/1/2010-8/20/2010 ("August Period") | $23,400.00 | $2,242.27 |
| Final Fee Application Preparation and Prosecution | TBD | TBD |

2

## FEE SUMMARY FOR THE AUGUST PERIOD

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Kenneth N. Klee, Esq. | Partner 1999; Member of CA Bar Since 1975 | Bankruptcy | $975.00 | 32.70 | $23,400.00 |

**Grand Total:**  $23,400.00
**Total Hours:**  32.70[3]

---

[3] In the exercise of his billing discretion, the Examiner voluntarily wrote off $390.00 in fees for the August Period, representing .40 hours of service, which hours and fees are excluded from the foregoing chart and in this calculation.

## COMPENSATION BY CATEGORY FOR AUGUST PERIOD

| Project Categories | Total Hours Billed | Total Fees |
|---|---|---|
| 010 – Case Administration | 3.40 | $3,315.00 |
| 020 – Meetings and Communications | 1.40 | $1,365.00 |
| 040 – Fee/ Employment Applications | 2.00 | $1,950.00 |
| 080 – Asset Analysis and Recovery | 1.50 | $1,462.50 |
| 120 – Litigation | 7.00 | $6,825.00 |
| 900 – Non-Working Travel | 17.40 | $8,482.50 |
| **Total:** | **32.70** | **$23,400.00** |

## EXPENSE SUMMARY FOR THE AUGUST PERIOD

| Expense Category | Total Expenses |
|---|---|
| Messenger/ Overnight Services | $47.30 |
| Court Fees | $58.00 |
| Parking | $61.38 |
| Travel - Meals | $35.51 |
| Travel | $2,040.08 |
| **Total:** | **$2,242.27** |

## CUMULATIVE FEE SUMMARY FOR THE FINAL APPLICATION PERIOD

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|
| Kenneth N. Klee, Esq. | Partner 1999; Member of CA Bar Since 1975 | Bankruptcy | $975.00 | 726.90 | $663,292.50 |

Grand Total:     726.90
Total Hours:     $663,292.50[4]

---

[4]   In the exercise of his billing discretion, the Examiner voluntarily wrote off $12,772.50 in fees for the Final Application Period, representing 13.10 hours of service, which hours and fees are excluded from the foregoing chart and in this calculation.

124648_2.DOC

## CUMULATIVE COMPENSATION BY CATEGORY
## FOR THE FINAL APPLICATION PERIOD

| Project Categories | Total Hours Billed | Total Fees |
|---|---|---|
| 010 – Case Administration | 31.70 | $30,907.50 |
| 020 – Meetings and Communications | 66.70 | $65,032.50 |
| 040 – Fee/ Employment Applications | 10.10 | $9,847.50 |
| 080 – Asset Analysis and Recovery | 278.50 | $271,537.50 |
| 095 – Legal Research re Investigation | 11.80 | $11,505.00 |
| 096 – Questions Two & Three | 24.80 | $24,180.00 |
| 097 – Witness Interviews/ Discovery | 203.10 | $198,022.50 |
| 120 – Litigation | 7.00 | $6,825.00 |
| 900 – Non-Working Travel | 93.20 | $45,435.00 |
| **Total:** | **726.90** | **$663,292.50** |

## CUMULATIVE EXPENSE SUMMARY FOR THE FINAL APPLICATION PERIOD

| Expense Category | Total Expenses |
|---|---|
| Messenger/ Overnight Services | $247.16 |
| Court Fees | $58.00 |
| Parking | $146.03 |
| Telephone (Long Distance and Conference Calls) | $30.00 |
| Travel - Meals | $388.61 |
| Travel | $26,553.13 |
| **Total:** | **$27,422.93** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: September 21, 2010 at 4:00 p.m. ET**<br>**Hearing Date: October 22, 2010 at 2:00 p.m. ET** |

### FINAL APPLICATION OF KENNETH N. KLEE, THE EXAMINER, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 30, 2010 THROUGH AUGUST 20, 2010

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8655); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago National League Ball Club n/k/a Tribune CNLBC, LLC (0347); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH, Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Brook Productions, Inc. (2598); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, Inc. (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

124648_2.DOC

Kenneth N. Klee, Esq., the examiner (the "Examiner") appointed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of Tribune Company and its affiliates (collectively, the "Debtors" or "Tribune"), hereby submits his *Final Application of Kenneth N. Klee, the Examiner, for Compensation and for Reimbursement of Expenses for the Period April 30, 2010 through August 20, 2010* (the "Final Application") and applies to the Court for final allowance and payment of compensation for the period April 30, 2010 through and including August 20, 2010, and reimbursement of expenses for the same period of time. The Examiner also requests allowance of his fees and expenses incurred and to be incurred in connection with the preparation and prosecution of this Final Application.

By this Final Application, the Examiner seeks final approval of compensation and reimbursement of expenses in the total amount of $690,715.43, comprising: (i) professional fees in the amount of $663,292.50 incurred during the period April 30, 2010 through and including August 20, 2010 (the "Final Application Period"), (ii) out-of-pocket expenses incurred by the Examiner during the Final Application Period in the amount of $27,422.93 and (iii) additional amounts, to be determined, in respect of this Final Application, which amounts will be set forth in one or more subsequent filings before the hearing on this Final Application.[2] The Examiner requests that the Court direct the Debtors to promptly disburse to the Examiner all amounts allowed by the Court that have not already been paid to the Examiner.

In support of this Final Application, the Examiner respectfully represents as follows:

## I.

## INTRODUCTION

1.    On December 8, 2008, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Court entered an order providing for the joint administration of the Chapter 11 Cases.

---

[2]    The amounts referenced herein are calculated based on information received through August 25, 2010. The Examiner intends to file one or more supplements to this Final Application, prior to the hearing thereon detailing: (a) the fees and expenses incurred in connection with the preparation and prosecution of this Final Application, and (b) any additional expenses for which the Examiner does not yet have complete or final billing information, including but not limited to, telephone expenses, PACER services, and Federal Express charges.

2.    On April 20, 2010, the Court entered that certain *Agreed Order Directing the Appointment of an Examiner* [Docket No. 4120] (the "Examiner Order"), which, among other things, directed the Office of the United States Trustee (the "United States Trustee") to appoint an examiner in these cases pursuant to section 1104(c)(1) of the Bankruptcy Code.

3.    On April 30, 2010, the United States Trustee filed that certain *Notice of Appointment of Examiner* [Docket No. 4212] appointing Kenneth N. Klee, Esq. as the Examiner.  Contemporaneously therewith, the United States Trustee filed that certain *Application of the United States Trustee for Order Approving Appointment of Examiner* [Docket No. 4213].

4.    On May 7, 2010, the Examiner filed that certain *Work and Expense Plan of Examiner-Designate Kenneth N. Klee, Esq.* [Docket No. 4261] ("Work Plan").  On May 10, 2010, the Court held a status conference regarding the appointment of the Examiner and adopted the Work Plan.

5.    On May 11, 2010, the Court entered that certain *Order Approving Appointment of Examiner* [Docket No. 4320] (the "Examiner Order"), a copy of which is attached hereto as Exhibit A, and that certain *Order Approving Work and Expense Plan and Modifying Examiner Order* [Docket No. 4321] ("Supplemental Order").

6.    On May 12, 2010, the Examiner filed that certain *Application of the Examiner for an Order Authorizing the Retention of Klee, Tuchin, Bogdanoff & Stern LLP as Counsel to the Examiner Nunc Pro Tunc to April 30, 2010* [Docket No. 4356].  On May 19, 2010, the Court entered that certain *Order Authorizing the Retention of Klee, Tuchin, Bogdanoff & Stern LLP as Counsel to the Examiner Nunc Pro Tunc to April 30, 2010* [Docket No. 4498].

7.    On May 15, 2010, the Examiner filed that certain *Application of the Examiner for an Order Authorizing the Retention of Saul Ewing LLP as Delaware Counsel to the Examiner Nunc Pro Tunc to April 30, 2010* [Docket No. 4358].  On May 19, 2010, the Court entered that certain *Order Pursuant to Section 327 of the Bankruptcy Code Authorizing the Employment of Saul Ewing LLP as Delaware Counsel to the Examiner Nunc Pro Tunc to April 30, 2010* [Docket No. 4499].

8.    On May 15, 2010, the Examiner filed that certain *Application of the Examiner for an Order Authorizing the Retention of LECG, LLC as Financial Advisor to the Examiner Nunc Pro Tunc*

*to April 30, 2010* [Docket No. 4360]. On May 19, 2010, the Court entered that certain *Order Authorizing the Retention of LECG, LLC as Financial Advisor to the Examiner Nunc Pro Tunc to April 30, 2010* [Docket No. 4500].

9.    Pursuant to the Examiner Order, as modified by the Supplemental Order, the Examiner was directed to conduct an investigation ("Investigation"), responding to each of the following Questions:

> Question One: evaluate the potential claims and causes of action held by the Debtors' estates that are asserted by the Parties, in connection with the leveraged buy-out of Tribune that occurred in 2007 (the "LBO") which may be asserted against any entity which may bear liability, including, without limitation, the Debtors, the Debtors' former and/or present management, including former/present members of Tribune's Board, the Debtors' lenders and the Debtors' advisors, said potential claims and causes of action including, but not limited to, claims for fraudulent conveyance (including both avoidance of liability and disgorgement of payments), breach of fiduciary duty, aiding and abetting the same, and equitable subordination and the potential defenses asserted by the Parties to such potential claims and causes of action.

> Question Two: evaluate whether Wilmington Trust Company violated the automatic stay under 11 U.S.C. § 362 by its filing, on March 3, 2010, of its Complaint for Equitable Subordination and Disallowance of Claims, Damages and Constructive Trust.

> Question Three: evaluate the assertions and defenses made by certain of the Parties in connection with the Motion of JPMorgan Chase Bank, N.A., for Sanctions Against Wilmington Trust Company for Improper Disclosure of Confidential Information in Violation of Court Order (D.I. 3714).

10.    In addition, the Examiner Order specified that the Examiner would "otherwise perform the duties of an Examiner set forth in 11 U.S.C. § 1106(a)(3) and (4) (as limited by this Order)." The Examiner Order directed the Examiner to prepare and file a report in respect of the Investigation on or before July 12, 2010, unless such time shall be extended by order of the Bankruptcy Court on application by the Examiner and notice to the Parties.

11.    On June 16, 2010, the Examiner filed the *Supplement Re: Examiner's Work and Expense Plan of Court-Appointed Examiner, Kenneth N. Klee, Esq.* [Docket No. 4797], apprising the

Bankruptcy Court of the progress of the Investigation and advising the Bankruptcy Court that the scope and breadth of the work required to complete the Investigation was substantially greater than anticipated when the Examiner's Work Plan was filed, prior to the commencement of the Investigation.

12.   On June 23, 2010, the Examiner filed that certain *Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq. for Extension of Report Deadline* [Docket No. 4858], which requested that the Court extend the deadline to file the Report.  On July 1, 2010, the Court entered that certain *Order (I) Amending Certain Deadlines in (A) Discovery and Scheduling Order and (B) Solicitation Order and (II) Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Extension of Report Deadline* [Docket No. 4928], which extended the deadline to file the Report through and including July 26, 2010.

13.   On July 23, 2010, the Examiner filed that certain *Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief From Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* [Docket No. 5115], which, among other things, requested that the Examiner be discharged of his duties and granted related relief.

14.   On July 26, 2010, the Examiner publicly filed a version of the Report that redacted certain findings and conclusions from the Investigation that some parties had identified as potentially implicating confidential information.  *See Report of Kenneth N. Klee, as Examiner (Volume One)* [Docket No. 5130]; *Report of Kenneth N. Klee, as Examiner (Volume Two)* [Docket No. 5131]; *Report of Kenneth N. Klee, as Examiner (Volume Three)* [Docket No. 5132]; *Report of Kenneth N. Klee, as Examiner (Volume Four)* [Docket No. 5133].

15.   On August 3, 2010, after issues pertaining to potentially confidential information had been resolved, the Examiner publicly filed the Report setting forth in full the findings and conclusions from the Investigation.  *See Report of Kenneth N. Klee, as Examiner (Volume One)* [Docket No. 5247]; *Report of Kenneth N. Klee, as Examiner (Volume Two)* [Docket No. 5248]; *Report of Kenneth N. Klee, as Examiner (Volume Three)* [Docket No. 5249]; *Report of Kenneth N. Klee, as Examiner (Volume Four)* [Docket No. 5250].

16.    By any measure, the Report is lengthy and substantial.  The Report comprises over 1,400 pages of factual narrative and legal analysis, contains over 4,600 footnotes, addresses the 38 witness interviews conducted by the Examiner and his professionals, cites to over 600 case authorities, and references approximately 1,100 exhibits substantiating the statements and conclusions contained in the Report, which exhibits themselves comprise over 21,000 pages.

17.    On July 23, 2010, the Examiner filed his motion seeking a discharge of his duties, relief from third-party discovery, relief relating to the disposition of certain documents and information gathered during the course of the Investigation, and related relief ("Discharge Motion").  *See Motion to Authorize Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* [Docket No. 5115].   The Debtors filed a response to the Discharge Motion urging the Court to delay ruling on that Motion, *see Response to Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* [Docket No. 5382], to which the Examiner filed a reply arguing otherwise.  *See Reply of Court-Appointed Examiner, Kenneth N. Klee, Esq., in Further Support of His Motion for an Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and (IV) Granting Certain Ancillary Relief* [Docket No. 5405].  Informally, the Debtors also made certain other requests, to which the Examiner did not agree, regarding the relief to be granted under the Discharge Motion.  On August 20, 2010, the Court held a hearing on the Discharge Motion and adopted the Examiner's views on the scope of the relief and granted the Discharge Motion.

18.    On August 26, 2010, the Court entered its *Order Approving Motion of Court-Appointed Examiner, Kenneth N. Klee, Esq., for Order (I) Discharging Examiner; (II) Granting Relief from Third-Party Discovery; (III) Approving the Disposition of Certain Documents and Information; and (IV) Granting Certain Ancillary Relief* [Docket No. 5541], which discharged the Examiner of his duties effective as of August 20, 2010, and authorized the other related relief requested by the

Examiner.

19.     This Court has jurisdiction over this Final Application under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for relief requested herein are sections 105(a) and 330 of the Bankruptcy Code, as well as Rules 2016 and 2016-2 of the Bankruptcy Rules and Local Rules, respectively.

II.

**COMPENSATION TO BE PAID AND ITS SOURCE**

20.     All services for which the Examiner requests compensation were performed by the Examiner pursuant to the authorization and direction set forth in the Examiner Order.

21.     The Examiner has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Final Application. There is no agreement or understanding between the Examiner and any other person for sharing of compensation to be received for services rendered in these cases, other than the partners of Klee, Tuchin, Bogdanoff & Stern LLP, of which the Examiner is a partner and who serves as his counsel in these Chapter 11 Cases.

22.     Prior to the scheduled hearing on this Final Application, the Examiner anticipates being paid from the Debtors' estates in respect of his monthly applications listed the Summary Sheet that accompanies this Final Application, in accordance with that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 225] (the "Interim Compensation Order").

23.     Following the scheduled hearing on this Final Application, and subject to the Court's ruling thereon, the Examiner likewise anticipates being paid from the Debtors' estates in respect of the "holdback" amounts under the monthly applications, and such additional amounts as are requested herein.

## III.

## OVERVIEW OF THE ENGAGEMENT

24.     The Examiner hereby incorporates by reference the detailed overview of the Investigation and related matters addressed by the Examiner and his legal and financial advisors that is set forth in Section III of the *Final Application of Klee, Tuchin, Bogdanoff & Stern LLP for Compensation and Reimbursement of Expenses as Counsel to Kenneth N. Klee, The Examiner, for The Period April 30, 2010 Through August 20, 2010,* which is being filed concurrently herewith.

## IV.

## SUMMARY OF SERVICES BY CATEGORY

25.     To the best of the Examiner's knowledge, this Final Application complies with section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Interim Compensation Order and that certain *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Considerations of Fee Applications* [Docket No. 546] (the "Fee Examiner Order").   Copies of the Examiner's detailed invoices for services provided during the months of April, May, June, and July 2010 are attached to the monthly applications for each of those months, as referenced above. Copies of the Examiner's detailed time entries for the period August 1, 2010 through August 20, 2010, which are sorted by activity category, along with the number of hours and the total compensation sought for each category, are attached hereto as Exhibit B.

26.     The Examiner's appointment was approved by the Court to conduct the Investigation and prepare and submit the Report.   The services rendered by the Examiner during the Final Application Period to discharge such duties are grouped into categories as set forth below.   The Examiner placed the services provided in the category that best relates to such services.   Because certain services may relate to one or more categories, however, services pertaining to one category may in fact be included in another category.   The services performed are generally described below and sorted by activity category, with a more detailed identification of the actual services rendered in the invoices that are attached to the monthly applications for the months of April, May, June, and July

2010, and the invoice for the period August 1, 2010 through August 20, 2010, which is attached hereto as Exhibit B.

## A.    Case Administration -- 010.

27.    The Examiner devoted time in this category to addressing various administrative matters necessary to the effective discharge of his duties and essential to the efficient and successful prosecution of the Investigation, including, without limitation, the following matters: (a) preparing an initial budget for the Investigation, (b) developing and establishing the initial parameters and scope of the Investigation and the Report, (c) preparing the Examiner's work plan and updating and modifying his work plan, (d) evaluating the work plans for the Examiner's legal and financial advisors and consulting with his advisors regarding such work plans, (e) expanding and broadening the parameters and scope of the Investigation following certain developments, and analyzing additional matters and topics to be addressed in connection with the Investigation, (f) supplementing the budget for the Investigation as required by the circumstances, (g) analyzing and addressing confidentiality issues and similar matters incidental to the Examiner's appointment, and conferring with his advisors, the parties to the Investigation and the United States Trustee regarding such matters, (h) preparing certain requests for relief related to the Investigation, including requests for an extension of time in which to file the Report, approval of the submission of sealed and public versions of the Report, and an order discharging the Examiner from his duties, (i) preparing for and attending various hearings related to administration of the Investigation and preparation of the Report, (j) addressing logistical issues related to the conduct of the Investigation and other matters attendant to preparation of the Report, and (k) consulting with the Examiner's legal and financial advisors concerning the foregoing matters when necessary and appropriate.

Fees: $30,907.50     Hours: 31.70

## B.    Meetings and Communications -- 020.

28.    The Examiner devoted time in this category to meeting and communicating with his legal and financial advisors, the parties to the Investigation and their respective counsel, and the United States Trustee regarding various matters related to the Investigation, including, without limitation, the

following meetings and communications: (a) conducting in person meetings with the Examiner's advisors concerning the initial parameters of the Investigation and the matters to be examined, analyzed and researched in connection therewith, (b) preparing for and attending multiple in-person meetings with the parties involved in the Investigation, during which they presented their respective positions regarding the various assertions and issues subject to the Investigation, and communicating with such parties during the course of the Investigation regarding matters related to the Investigation, (c) engaging in communications with the United States Trustee regarding the status and timing of the Investigation and developments arising in connection therewith, preparation of the Report and other matters related to the Examiner's appointment and the Investigation, and (d) engaging in regular and periodic communications with the Examiner's legal and financial advisors concerning the status of the Investigation, the developments arising during the course of the Investigation and additional matters to be examined, analyzed and researched by such advisors, which were particularly critical to effectively coordinate and delegate responsibilities among the Examiner's advisors and efficiently prepare the Report by the deadline established by the Court.

Fees: $65,032.50    Hours: 66.70

**C.    Fee/Employment Applications -- 040.**

29.    The Examiner devoted time in this category to addressing various matters related to his appointment as Examiner, the retention of his legal and financial advisors, and compensation for services rendered and reimbursement of expenses incurred by the Examiner, including, without limitation, the following matters: (a) reviewing and preparing verified statements, security forms and associated documents related to his appointment as Examiner, (b) analyzing and revising agreements related the Examiner's proposed retention of his legal and financial advisors, (c) reviewing and preparing applications to employ the Examiner's legal and financial advisors, (d) communicating with the Examiner's legal and financial advisors and the United States Trustee regarding the proposed retention of professionals, and (e) reviewing and preparing the Examiner's monthly fee applications for April, May, June, and July 2010.

Fees: $9,847.50    Hours: 10.10

**D.    Asset Analysis and Recovery -- 080.**

30.    The Examiner devoted substantial time in this category addressing numerous matters related to the extraordinarily complex issues posed by Question One of the Investigation, including, without limitation, the following matters: (a) analyzing highly complex legal and factual issues implicated by Question One, including complicated and nuanced legal and factual issues concerning potential intentional and constructive fraudulent transfer claims, potential causes of action under applicable nonbankruptcy law, potential defenses to such claims, and the actions of the parties in connection with the Tribune leveraged buy-out transactions, (b) analyzing documents and memoranda prepared by the Examiner's legal and financial advisors concerning key legal and factual issues implicated by Question One, (c) reviewing voluminous documents and exhibits to the Report related to the Tribune leveraged buy-out transactions and other disputes that were the subject of Question One, including critical transactional documents, witness interview and hearing transcripts, reports and briefs prepared and submitted by the parties, communications among the parties, financial models and projections, solvency and valuation analyses, recovery analyses, and other sources of information, (d) developing the Examiner's findings, analyses and conclusions regarding the myriad issues implicated by Question One, including updated and refined findings, analyses and conclusions arising from ongoing developments as they occurred during the Investigation, (e) reviewing, revising and finalizing multiple sections of the Report (which ultimately exceeded 1,400 pages in length) setting forth the summary and background of the Investigation and the Examiner's findings and conclusions concerning Question One, and (f) regularly communicating with the Examiner's legal and financial advisors concerning such matters.

Fees: $271,537.50    Hours: 278.50

**E.    Legal Research re Investigation -- 095.**

31.    The Examiner devoted time in this category to conducting legal research on various topics primarily related to Question One of the Investigation and the potential claims and causes of actions related to the Tribune leveraged buy-out transactions and associated potential defenses, including, without limitation, research regarding issues related to constructive and intentional

fraudulent transfer claims and applicable defenses, application of Bankruptcy Code section 546(e), and the rule of explicitness.

Fees: $11,505.00      Hours: 11.80

**F.      Questions Two & Three -- 096.**

32.      The Examiner devoted time in this category to addressing matters related to Question Two (the allegations that Wilmington Trust Co. violated the automatic stay) and Question Three (the allegations that Wilmington Trust Co. violated certain orders of the Court governing confidential documents and breached its fiduciary duties as a member of the creditors' committee) of the Investigation, including, without limitation, the following matters: (a) analyzing the briefs submitted by the parties on Questions Two and Three, (b) analyzing factual and legal issues related to Questions Two and Three and developing the Examiner's findings and conclusions in connection therewith, (c) communicating with the Examiner's legal advisors regarding his findings and conclusions with respect to Questions Two and Three, and (d) reviewing, revising and finalizing the sections of the Report setting forth the Examiner's findings and conclusions concerning Questions Two and Three.

Fees: $24,180.00      Hours: 24.80

**G.      Witness Interviews / Discovery -- 097.**

33.      The Examiner devoted substantial time in this category to engaging in various tasks necessary to conduct witness interviews and discovery critical to the Investigation, including, without limitation, the following matters: (a) planning and coordinating witness interviews and areas of discovery with the Examiner's legal advisors and counsel to the parties to the Investigation, (b) establishing and implementing witness interview protocols, (c) preparing and analyzing witness interview outlines and the documents and exhibits that were associated with witness interviews, (d) attending and conducting multiple witness interviews in which the Examiner served a primary role and actively examined and questioned witnesses (notably, the Examiner and his legal advisors eventually interviewed 38 interviews over 46 days in four cities in connection with the Investigation, and the Examiner attended 33 of these interviews in person (of which three were attended by video conference)), and (e) communicating with the Examiner's legal advisors concerning numerous matters

related to witness interviews and discovery in connection with the Investigation.

Fees: $198,022.50    Hours: 203.10

**H.    Litigation -- 120.**

34.    The Examiner devoted limited time in this category prosecuting the Discharge Motion, including analyzing the Debtors' response to the Discharge Motion, reviewing and preparing a reply to such response, preparing an order granting the Discharge Motion and addressing related matters.

Fees: $6,825.00    Hours: 7.00

**I.    Non-Working Travel -- 900.**

35.    Throughout the Final Application Period, the Examiner was required to travel for multiple witness interviews and hearings related to the Investigation, as well as meetings with the parties and United States Trustee regarding the Investigation. To the extent the Examiner did not or was unable to engage in other work during such travel, it has been charged to this category at a reduced hourly rate (50%) as non-working travel.

Fees: $45,435.00    Hours: 93.20

**V.**

**ACTUAL AND NECESSARY EXPENSES BY CATEGORY**

36.    The Examiner is seeking reimbursement of $27,422.93 in costs and expenses he incurred during the Final Application Period. The following is a description of the Examiner's accounting procedures for the general categories of costs and expenses for which he is seeking reimbursement. These costs and expenses are being billed to the Debtors' estates at the same rates that are customarily billed to non-debtor clients. Itemized statements of the costs and expenses incurred by the Examiner for the months of April, May, June, and July 2010 are attached to the monthly applications for each of those months, as referenced above. An itemized statement of the costs and expenses incurred by the Examiner for the period August 1, 2010 through August 20, 2010 is set forth on Exhibit C attached hereto.

**A.    Messenger/Overnight Services.**

37.    When exigencies required, the Examiner used messenger services and overnight courier

services, such as Federal Express, to deliver documents. The total amount of messenger/overnight services expenses incurred by the Examiner during the Final Application Period was $247.16.

**B.    Court Fees.**

38.    The Examiner incurred expenses in this category in connection with fees charged to telephonically attend hearings. The total amount of expenses attributable to court fees incurred by the Examiner during the Final Application Period was $58.00.

**C.    Parking.**

39.    This category includes costs incurred by the Examiner for parking fees associated with travel for meetings, interviews and/or Court hearings. The total amount of parking expenses incurred by the Examiner during the Final Application Period was $146.03.

**D.    Telephone (Long Distance and Conference Calls).**

40.    The Examiner only seeks reimbursement for actual charges in this expense category. The total amount of telephone expenses incurred by the Examiner during the Final Application Period was $30.00.

**E.    Travel – Meals.**

41.    The Examiner incurred incidental costs for out-of-the-area meals. The total amount of meals expenses incurred by the Examiner during the Final Application Period was $388.61.

**F.    Travel.**

42.    To conduct the Investigation and discharge his duties, the Examiner was required to travel to meetings, interviews and/or Court hearings. This category includes taxi and/or car service used to/from the airport and meetings, mileage reimbursement, and hotel and airfare (lowest refundable coach rate) expenses. The Examiner seeks only reimbursement for actual charges in this category. The total amount of travel expenses incurred by the Examiner during the Final Application Period was $26,553.13.

## VI.

## CONCLUSION

43.    In accordance with the factors enumerated in section 330 of the Bankruptcy Code, the Examiner respectfully submits that his fees are fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under the Bankruptcy Code. Moreover, the Examiner also has reviewed the requirements of Rule 2016, Local Rule 2016-2, the Interim Compensation Order, and the Fee Examiner Order, and he believes that this Final Application complies with such rules and orders.

**WHEREFORE,** the Examiner respectfully requests that the Court enter an order (A) granting a final award in favor of the Examiner for (i) professional fees incurred during the Final Application Period of $663,292.50, (ii) out-of-pocket expenses incurred by the Examiner during the Final Application Period in the amount of $27,422.93, and (iii) additional amounts that may be set forth in one or more subsequent filings before the hearing on this Final Application in respect of miscellaneous expenses as to which the Examiner has not yet received a final or complete billing; (B) granting a final award of professional fees and out-of-pocket expenses incurred in connection with the preparation and prosecution of this Final Application, including any fees and costs incurred in responding to any formal and informal objections, inquiries and responses thereto, and appearing at the hearing thereon; and (C) directing the Debtors to promptly disburse to the Examiner all amounts allowed by the Court that have not already been paid to the Examiner.

Dated:    August 31, 2010
            Los Angeles, California

By: _____

Kenneth N. Klee, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090

*The Examiner*

## VERIFICATION

STATE OF CALIFORNIA          :

                                     :

COUNTY OF LOS ANGELES        :

       I, Kenneth N. Klee, Esq., after being duly sworn according to law, deposes and says:

      a)      I am the Court-approved Examiner in the above-captioned cases.

      b)      I am familiar with the work I performed as Examiner during the Final Application Period.

      c)      I have reviewed the foregoing Final Application.  The facts set forth therein are true and correct to the best of my knowledge, information and belief.  Moreover, I have reviewed the Local Bankruptcy Rules for the District of Delaware and submit that the Final Application substantially complies with such rules.

                                                 Kenneth N. Klee, Esq.

SWORN AND SUBSCRIBED
before me this 31st day of August 2010.

Notary Public
My Commission Expires:

APRYL CAROL BOND
Commission # 1871893
Notary Public - California
Los Angeles County
My Comm. Expires Nov 22, 2013