# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered<br><br>**Related to Docket No. 5485** |

## DEBTORS' OBJECTION TO THE MOTION OF IVAN J. BATES FOR AN ORDER TO EXTEND THE BAR DATE TO FILE CLAIMS AGAINST THE DEBTORS' ESTATES

The Baltimore Sun Company (the "Sun") and each of its affiliates that are debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), submit this objection (the "Objection") to the Motion of Ivan J. Bates ("Bates") for an Order to Extend the Bar Date to File Claims Against the Debtors' Estates filed on August 24, 2010 [Docket No. 5485] (the "Motion"), which Motion seeks to extend the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

CH1 5430923v.3

bar date to ratify Bates's late proof of claim (the "Late-Filed Claim"),[2] notwithstanding that such claim was filed more than four and a half months after the expiration of the supplemental bar date applicable to his purported claim, and despite actual notice to counsel to Bates of such bar date. In support of this Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Motion is a transparent attempt by Bates to ratify his failure to comply with the statutory and procedural requirements of the Bankruptcy Code, Bankruptcy Rules, and orders of this Court in pursuit of prepetition litigation against the Debtors. The undisputed facts demonstrate that Bates, an attorney represented by counsel, had actual notice of the applicable bar date, served on his counsel of record, and simply failed to file a timely proof of claim. Indeed, Bates attempted to file a proof of claim only after the Debtors raised the issue in support of their objection to Bates's motion for relief from the automatic stay.[3]

2. The Motion should be denied because it is based solely on the untenable arguments that Bates should be excused from filing a timely claim because: (i) the Lawsuit Bates commenced against the Sun in August 2009 in violation of the automatic stay constituted all due and proper notice of his claim (Mot. ¶ 7); (ii) the notice of the bar date was served on his attorney in Maryland—the counsel of record in Bates's underlying Lawsuit upon which the claim is predicated—instead of on one of Bates's other attorneys (Mot. ¶¶ 12, 16); and/or (iii) the

---

[2] See Claim No. 6643, a copy of which is attached hereto as Exhibit A. The Late-Filed Claim is improperly asserted against "Tribune Company, et al.," contrary to this Court's Order Pursuant to Sections 501, 501, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2001-1(e) Establishing Bar Dates For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order") [Docket No. 813] requiring that proofs of claim be asserted against a specific Debtor. Tribune Company is not a defendant in Bates's underlying prepetition defamation lawsuit against the Sun (the "Lawsuit"); accordingly, the Debtors have assumed that Bates's intention was to submit a proof of claim against The Baltimore Sun Company.

[3] See Motion of Ivan J. Bates for Relief from the Automatic Stay [Docket No. 4725] (the "Stay Relief Motion") and Debtors' Objection to the Motion of Ivan J. Bates for Relief from the Automatic Stay [Docket No. 4951] (the "Stay Relief Objection").

Debtors' amendment of their schedules of assets and liabilities (the "Schedules") to list Bates's contingent, unliquidated, and disputed claim, which automatically gave Bates a supplemental bar date specific to his claim (the "Amended Schedules Bar Date"),[4] created a "dramatic ambiguity" as to when the proof of claim was due (Mot. ¶ 15). These arguments are at odds with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, this Court's Bar Date Order, and the standard of "excusable neglect" that Bates bears the burden of meeting, as set forth by the United States Supreme Court in Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380 (1993).

        3.      Granting either the Motion or Bates's previously-filed Stay Relief Motion would seriously prejudice the Debtors because it would embolden creditors to assert late claims freely against the Debtors, notwithstanding knowledge of and failure to comply with the bar date, and without any need to justify such failure in accordance with prevailing law. As the Supreme Court noted in Pioneer, it is the requirement that the party's neglect of the bar date be "excusable" that "will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1)." Pioneer, 507 U.S. at 395. In this instance, the Debtors have complied in all respects with their obligations under the Bankruptcy Code and Bankruptcy Rules and have provided Bates with a specific, supplemental notice and opportunity to assert his claim properly. Bates ignored that notice. Neither the Motion nor the Stay Relief Motion provides a credible explanation of Bates's failure to abide by the bar date, despite the facts that Bates is a practicing attorney and has retained multiple sets of counsel (including bankruptcy counsel) to represent him.[5] Accordingly, the

---

[4] See Bar Date Order at 2-3.

[5] From his pleadings, Bates appears to have retained Fox Rothschild LLP as Delaware bankruptcy counsel. As is well-known to the Court, Fox Rothschild is unquestionably familiar with the standards for the relief sought by the

Debtors urge this Court to deny the Motion and to disallow and expunge the Late-Filed Claim as a claim filed in contravention of the deadlines imposed by the Bar Date Order.

## FACTUAL BACKGROUND TO THE OBJECTION

4. The facts are not materially in dispute. The following is a summary of the key events applicable to the Motion and the Objection, in chronological order:

- August 8-13, 2008: The Sun published two articles that Bates alleges were defamatory;[6]

- December 8, 2008: The Debtors commenced these chapter 11 cases;

- March 25, 2009: The Court entered the Bar Date Order, establishing June 12, 2009 as the deadline for filing proofs of claim against the Debtors (the "General Bar Date");

- May 12, 2009: The Debtors published notice of the General Bar Date in the National Editions of the *Wall Street Journal* and *The New York Times*, and in the *Los Angeles Times* and the *Chicago Tribune*;[7]

- June 12, 2009: The General Bar Date passed;

- July 30, 2009: Bates's counsel sent a pre-suit demand letter to the Sun;

- August 4, 2009: Counsel to the Sun sent a response letter to Bates's counsel, providing actual notice of the Sun's pending chapter 11 case, the applicability of the automatic stay, and the General Bar Date;

- August 7, 2009: Notwithstanding the automatic stay, Bates commenced the Lawsuit against the Sun and two reporters in the Circuit Court for Baltimore City, Maryland (the "Circuit Court");

- August 21, 2009: The Sun filed a Notice of Filing of Voluntary Petition under Chapter 11 of the Bankruptcy Code with the Circuit Court and the Lawsuit was subsequently stayed;

- March 2, 2010: The Debtors filed the third amendment to the Schedules (collectively, the "Third Amended Schedules"), listing Bates's

---

Motion generally and the procedural posture of the Debtors' cases specifically, as Fox Rothschild has appeared on behalf of parties other than Bates in these cases.

[6] See Exhibit A at 7 (Complaint ¶ 11-13).

[7] See Certificate of Publication of Notice of Bar Date [Docket No. 1280].

4

|  |  |
|---|---|
|  | potential claim as a contingent, unliquidated, and disputed claim;[8] |
| • March 5, 2010: | The Debtors served notice of the filing of the Third Amended Schedules (the "Amended Schedules Bar Date Notice") [Docket No. 3653] on all affected creditors, including Bates (through his counsel), together with a customized proof of claim form;[9] |
| • April 6, 2010: | The Amended Schedules Bar Date passed; |
| • June 8, 2010: | Bates filed the Stay Relief Motion; and |
| • August 24, 2010: | Bates filed the Motion and the Late-Filed Claim. |

## ARGUMENT

5.  The filing of proofs of claim against the Debtors in these chapter 11 cases is subject to the deadlines and procedures set forth in the Bar Date Order, in accordance with Bankruptcy Rules 3001, 3002, 3003, and 5005. The time for filing proofs of claim may be enlarged after the expiration of the bar date only "for cause" and upon a showing of "excusable neglect" by the party seeking to effect the untimely filing. See Fed. R. Bankr. P. 9006(b)(1) (setting the "excusable neglect" standard).

6.  Like "cause," the term "excusable neglect" is not defined in the Bankruptcy Code. However, the Supreme Court has enumerated four factors to be considered in determining whether a party's neglect was excusable: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. Pioneer, 507 U.S. at 397; In re O'Brien Envtl. Energy Inc., 188 F.3d 116, 125 (3d Cir. 1999) (adopting and applying the Pioneer factors in the Third Circuit). In

---

[8] See Docket No. 3576 at 215.

[9] A copy of the Amended Schedules Bar Date Notice, together with the customized proof of claim form specific to Bates, are attached hereto as Exhibit B. Confirmation that Bates was served with the Amended Schedules Bar Date Notice appears at pages 8-9 of 33 of the Affidavit of Mailing, Docket No. 3844, and is not in dispute.

addition, courts must also consider the "totality of circumstances presented" when determining whether the neglect was excusable. Pacificorp v. W.R. Grace, 2006 WL 2375371, *1 (D. Del. 2006); see also In re Am. Classic Voyages Co., 405 F.3d 127, 133 (3d Cir. 2005) ("All [Pioneer] factors must be considered and balanced; no one factor trumps the others."). Bates has failed to carry his burden with respect to the Pioneer factors and to show that his failure to file a timely claim was due to "excusable neglect." Accordingly, the Motion should be denied.

I. **BATES'S MOTION SHOULD BE DENIED BECAUSE HE FAILS TO SATISFY THE PIONEER FACTORS**

   A. **The Debtors Will Suffer Substantial Prejudice if the Late-Filed Claim is Deemed Timely**

   7. In balancing the Pioneer factors, it is evident that the Debtors and their existing creditors would suffer a real and substantial prejudice if the Motion were granted. The bar date is a substantive protection for the Debtors, designed to channel claims through the Bankruptcy Court in a timely manner so that the Debtors will know with certainty the scope and amount of claims asserted against them that must be resolved as part of the Debtors' reorganization. The Debtors' claims process is very well advanced, with the Debtors having filed thirty-five omnibus claims objections, and having obtained orders of the Bankruptcy Court disallowing approximately 1,540 proofs of claim filed in their chapter 11 cases, including 105 claims on the basis that they were untimely filed. Bates has presented no justification for why this process must be reopened notwithstanding his unquestioned knowledge of the bar date applicable to his claim and his election not to file a proof of claim by such bar date. Instead, Bates attempts to convert willful defiance of and refusal to comply with the bar date into excusable neglect, which would at best severely weaken the Bar Date Order and at worst renders the requirement to demonstrate "excusable neglect" a nullity.

8. The Debtors have relied on the General Bar Date and various supplemental bar dates to define the universe of claims against their estates, so that they and the various constituencies in their chapter 11 cases may accurately size the scope of general unsecured claims against them. Allowing relief from those bar dates absent a showing of compelling circumstances would severely prejudice the ability of the Debtors and the various constituencies in their cases to know the scope of such claims with any reliability. Granting relief from the bar date in the instant case is particularly prejudicial to the Debtors and the other constituencies in these cases, where the Debtors have given Bates constructive and actual notice of the claims bar date on multiple separate occasions, providing him with a full and fair opportunity to participate as a creditor in these chapter 11 cases, but where Bates has responded by ignoring the automatic stay and the bar date.

9. The prejudice to the Debtors and other constituencies is further magnified in the instant case because Bates's claim is asserted at a face amount of $13 million, or roughly 8-15% of the amount projected by the Debtors as the allowed amount for all general unsecured claims against the estates of the Debtors other than Tribune Company. (See Disclosure Statement for Amended Joint Plan of Reorganization for Tribune Company and Its Subsidiaries at 14, Docket No. 4690). Bates's assertion that there is no prejudice to the Debtors because the Late-Filed Claim is contingent, unliquidated, and disputed (Mot. ¶ 18) is without merit. Although the Sun vigorously disputes that Bates is owed anything, or has a meritorious cause of action in any way, permitting any late-filed claim of that size to proceed at this late stage of the claims reconciliation process is necessarily prejudicial to the Debtors and to other constituencies. Prejudice to the Debtors thus weighs powerfully in favor of denying the Motion.

### B. Bates's Delay was Excessive

10. In this case, more than four and a half months has elapsed between the expiration of the Amended Schedules Bar Date and when Bates filed the Late-Filed Claim. Although Bates first notified the Debtors of his potential claim in July 2009 after the expiration of the General Bar Date, the Debtors provided Bates with another opportunity to file a proof of claim several months later, when the Debtors listed Bates's potential claim on the Third Amended Schedules, filed on March 2, 2010. The Bar Date Order provides that any claimant holding a claim affected by an amendment or supplement to the Schedules has thirty (30) days from the service of a notice of the amendment or supplement to the Schedules to file a proof of claim or amend a previously-filed proof of claim in respect of the amended scheduled claim. (See Bar Date Order at 2-3; see also Exhibit B at 2.)

11. The Court-appointed claims and noticing agent, Epiq Bankruptcy Solutions, LLC, served the Amended Schedules Bar Date Notice, together with a customized proof of claim form, on all creditors affected by the Third Amended Schedules on March 5, 2010, including Bates. (See Affidavit of Mailing, Docket No. 3844.) Thus, the Amended Schedules Bar Date applicable to Bates was April 6, 2010. (See Exhibit B at 3.)

12. Despite receiving the Amended Schedules Bar Date Notice, Bates filed no proof of claim in the Debtors' chapter 11 cases until August 24, 2010, more than four and a half months after the expiration of the Amended Schedules Bar Date. Even if Bates's delay in seeking to file a proof of claim is judged only from the time the Debtors served Bates with the Amended Schedules Bar Date Notice (a delay of 4 ½ months), rather than from the time Bates first became aware of the General Bar Date in August 2009 (a delay of over a year), Bates's delay was excessive and unreasonable under the circumstances.

CH1 5430923v.3

C.  **Bates's Delay Was Not "Excusable" and Was Within His Control**

13.     The third <u>Pioneer</u> prong concerns whether the reason for the delay leads to the conclusion that such delay should be excused by the Court. The Supreme Court explained that there is "a range of possible explanations for a party's failure to comply with a court-ordered filing deadline". . . from forces beyond a party's control to the party's decision to simply flout a deadline. <u>Pioneer</u>, 507 U.S. at 387-388. Delay caused by "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect . . . ." <u>Id.</u> at 392. The Third Circuit has noted that in assessing a party's reason for delay, "[t]here is a qualitative distinction between inadvertence which occurs despite counsel's affirmative efforts to comply and inadvertence which results from counsel's lack of diligence." <u>Consol. Freightways Corp. v. Larson</u>, 827 F.2d 916, 919 (3d Cir. 1987) (interpreting "excusable neglect" under Fed. R. Civ. P. 4(a)(5)). The Motion sets forth three reasons why Bates believes cause exists to enlarge the applicable bar date, which are discussed below in turn. None of these reasons indicates that any forces beyond Bates's control affected his ability to file a timely claim, or that any affirmative efforts were made by Bates to comply with the applicable bar date that would support a finding of "excusable neglect."

(i)     **The Filing of the Lawsuit in Violation of the Automatic Stay Does Not Constitute a Proof of Claim**

14.     Bates's first argument in support of the ratification of the Late-Filed Claim is that "Mr. Bates believed that the ongoing litigation of the underlying action provided the Debtors and its [sic] counsel with proper notice of his claims." (Mot. ¶ 7.) However, this argument contradicts the plain text of the Bankruptcy Code, Bankruptcy Rules, and this Court's Bar Date Order. While it is true that the demand letter and eventual filing of the Lawsuit put the Debtors on notice as to the existence of the purported defamation action, the complaint is not a

9

substitute for a proof of claim, particularly when such complaint is filed in violation of the automatic stay (of which Bates undisputedly had actual knowledge) and is void ab initio.

15.     Bankruptcy Code section 501(a) provides that creditors may file proofs of claim, and section 502(a) provides that such filed proofs of claim are deemed allowed unless objected to. 11 U.S.C. §§ 501, 502. Section 502(a) further provides that the bankruptcy court shall determine the allowed amount, if any, of disputed claims, except to the extent that proof of such claim is not timely filed. 11 U.S.C. § 502(a)(9). Procedurally, Bankruptcy Rule 3002(a) states that "an unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed . . . ." Fed. R. Bankr. P. 3002(a). Such proof of claim must "conform substantially to the appropriate Official Form," Fed. R. Bankr. P. 3001, and must be "filed with the clerk in the district where the case under the Code is pending, Fed. R. Bankr. P. 3002(b), 5005(a)(1). Bates has provided no authority for the proposition that the mere filing of a complaint in state court, without more, excuses the filing of a proof of claim, and the Debtors are aware of none. Failure to read the rules of procedure is not excusable. Consol. Freightways, 827 F.2d at 919 (citing Campbell v. Bowlin, 724 F.2d 484 (5th Cir. 1984)).

16.     Moreover, immediately after filing the Third Amended Schedules, the Debtors served the Amended Schedules Bar Date Notice on all affected creditors, specifically including Bates, informing them of the necessity of filing a proof of claim in the event such creditors' claims were scheduled by the Debtors as "contingent," "unliquidated," or "disputed," or if such creditors disagreed with the amount of the claim scheduled by the Debtors. (See Exhibit B at 2-3.) Thus, Bates was on notice that, notwithstanding the filing of the Lawsuit, he was required to file a proof of claim in accordance with the Bar Date Order, the Bankruptcy Code, and all applicable Bankruptcy Rules. It is beyond the bounds of credibility that Bates, an

10

attorney represented by counsel and fully aware of the Sun's pending bankruptcy proceedings, was unaware of, and justifiably ignored, notices directed to him that thousands of other creditors have complied with to date.

### (ii) Service of the Amended Schedules Bar Date Notice on Bates's Counsel Constitutes Actual Notice to Bates

17. Bates next argues that "[d]espite Debtors' knowledge in August of 2009 that Mr. Bates was represented by Mr. Telfair, Debtors sent the Notice of Third Amended Schedules on March 5, 2010 to Mr. Bates to the attention of David Ellin (Mr. Bates' local counsel in Maryland) . . . ." (Mot. ¶ 12.) Bates does not dispute that he was served with the Amended Schedules Bar Date Notice through his counsel, Mr. Ellin. The Debtors served Mr. Ellin because he is Bates's counsel of record in the underlying Lawsuit, having signed the complaint filed in the Circuit Court on August 7, 2009. (See Exhibit A at 18 (Compl. at 15).)[10] Bates offers no legal basis to support his contention that the service of the Amended Schedules Bar Date Notice on Mr. Ellin, his counsel of record in the Lawsuit upon with the claim is based, should excuse his compliance with that Notice. Put simply, the Debtors provided notice of the bar date at the correct address for Bates's counsel of record. Bates cannot credibly argue that provision of notice to his attorney of record—who would reasonably be expected to appreciate the significance of the bar date notice[11] –is improper solely because he was represented by other attorneys as well. Accordingly, this argument provides no support for a finding of excusable neglect.

---

[10] Based upon the Debtors' review of the docket in the Lawsuit, Mr. Telfair filed a motion to be admitted pro hac vice in the Circuit Court in March 2010, which motion was granted in May 2010, two months after the Amended Schedules Bar Date Notice was filed and served, and after the expiration of the Amended Schedules Bar Date. Even if Mr. Telfair had been counsel of record at the time, the Debtors submit that all due and proper notice was provided under the circumstances.

[11] Nonetheless, Pioneer makes clear that clients must be held accountable for the acts and omissions of their attorneys. Pioneer, 507 U.S. at 396-397.

11

### (iii) There Was No "Dramatic Ambiguity" in the Amended Schedules Bar Date Notice

18. Bates's final argument in support of "excusable neglect" appears to be that the "Debtors [sic] notice of the April 6, 2010 claims bar date contradicted Debtors' prior correspondence to Mr. Telfair that 'the proof of claims deadline was June 12, 2009.'" (Mot. ¶ 13.) Bates further states that "[e]xcusable neglect in the late filing of a proof of claim exists when the particular bar date is not ordinary and there was a "dramatic ambiguity" in the notice." (Mot. ¶ 15.) In making this argument, Bates misconstrues and misapplies the "dramatic ambiguity" that was found to exist in the Pioneer case with the facts at bar. In Pioneer, the Supreme Court found the notice of the bar date to be inadequate under the circumstances because of the "peculiar and inconspicuous placement of the bar date in a notice regarding a creditors' meeting, without any indication of the significance of the bar date." Pioneer, 507 U.S. at 398. Weighed with all other factors, the unorthodox notice was found to excuse the creditor's failure to file a timely claim.

19. Here, by contrast, the Amended Schedules Bar Date Notice that was served on Bates, through his counsel, was entirely consistent with the Bar Date Order established by this Court. It stated in clear, conspicuous language that creditors received the notice because they may be holders of claims affected by the Third Amended Schedules and described in detail (a) who must file a proof of claim, (b) the procedures for filing a proof of claim, and (c) the deadline for filing such proof of claim. (See Exhibit B.) In addition, the Debtors attached a customized proof of claim form with general instructions on completing the form. Thus, the Amended Schedules Bar Date was "prominently announced and accompanied by an explanation of its significance." See Pioneer, 507 U.S. at 398. The Motion does not describe what "dramatic ambiguity" Bates found in the Amended Schedules Bar Date Notice. Nor does Bates adequately

12

address how a supplemental bar date applicable to his claim, consistent with this Court's Bar Date Order, "contradicts" the expiration of the General Bar Date. Rather, Bates's decision not to file a timely proof of claim when presented with an opportunity to do so can only be viewed as deliberate.

### D.    Bates has Demonstrated No Affirmative Effort to Comply with the Bar Date

20.    The final prong of Pioneer concerns whether the claimant acted in good faith. In evaluating a party's compliance with an applicable deadline, the Third Circuit has stated in parallel contexts that it will find excusable neglect in those instances where, after weighing the relevant considerations, it is satisfied that the party has "exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as the result of some minor neglect, compliance was not achieved." Consol. Freightways, 827 F.2d at 920.

21.    Bates's failure to file a proof of claim was no minor neglect, nor an issue of technical non-compliance with applicable rules and Court orders. The Motion provides no credible explanation as to why Bates, an attorney represented by multiple sets of counsel, did not comply with the applicable bar date. Indeed, Bates acknowledges that he received the Amended Schedules Bar Date Notice through his counsel, which Notice sets forth in bold-faced type the deadline for filing a proof of claim. There is nothing in the Motion or in Bates's conduct to date to suggest that he acted with all due care and diligence with respect to the bar date. Rather, Bates did not file the Late-Filed Claim until after the Debtors raised the issue in the Stay Relief Objection, and then did so during a consensual continuance of the hearing on the Stay Relief Motion. The totality of the circumstances weighs strongly against granting Bates a "permissive reprieve" by allowing the Late-Filed Claim to stand.

13

CH1 5430923v.3

## II. BATES'S ATTEMPTS TO JUSTIFY VIOLATING THE AUTOMATIC STAY DO NOT WEIGH IN FAVOR OF PERMITTING THE LATE-FILED CLAIM

22. In the Motion, Bates attempts to justify the stay violation by citing the one-year statute of limitations for commencing defamation actions. (See Mot. ¶ 17.) This argument is without merit, given that the Bankruptcy Code tolls applicable statutes of limitation for the commencement of a civil action against a debtor during the pendency of the automatic stay. See 11 U.S.C. § 108(c). Alternatively, Bates contends that he filed the Lawsuit to preserve the jurisdiction of the Circuit Court. (See Mot. ¶ 17.) Similarly, Bates's assertion that this Court lacks jurisdiction over his allegations of intentional infliction of emotional distress is irrelevant, since the Circuit Court has dismissed that count of the complaint.[12]

23. Bates's tactical decision to attempt to avoid this Court's jurisdiction by filing the Lawsuit in violation of the automatic stay, and then his compounding that decision by disregarding the notice of the Amended Schedules Bar Date and failing to file a proof of claim in response to it, cannot form an after-the-fact basis for affording relief from the bar date. To the contrary, Bates's admission that he willfully chose to violate the automatic stay to obtain a perceived litigation advantage raises serious concerns as to whether Bates is proceeding in good faith.[13] Moreover, such tactics are unavailing, given that the Bankruptcy Court has jurisdiction regardless of whether Bates filed a proof of claim. Congress has mandated that the Bankruptcy Court have exclusive jurisdiction over the disposition of a debtor's property, which includes any claims brought against that property. See 28 U.S.C. § 1334(e); see also United Student Aid

---

[12] The co-defendant reporters filed a Motion to Dismiss or in the Alternative for Summary Judgment on February 1, 2010, which was granted in part and denied in part as to all defendants. (See Exhibit C to Stay Relief Motion at 4-5.)

[13] Although these arguments were not raised in the Stay Relief Motion (and thus could not be addressed by the Debtors in the Stay Relief Objection), the Debtors submit that Bates's admission that he willfully violated the automatic stay for tactical reasons weighs against granting the Stay Relief Motion.

Funds, 2010 WL 1027825, *7; Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 447 (2004) ("Bankruptcy Courts have exclusive jurisdiction over a debtor's property.").

## CONCLUSION

24. The Debtors have complied fully with the Bankruptcy Code, Bankruptcy Rules, and applicable orders of this Court in informing Bates of the existence and applicability of the Court-mandated procedure for asserting a claim in these chapter 11 cases. Bates filed the underlying Lawsuit against the Debtors in violation of the automatic stay after the General Bar Date had passed, and could have, but did not, request that the Court permit him to file a proof of claim at that time. Out of an abundance of caution, the Debtors specifically amended their Schedules to include Bates's potential claim, and gave his counsel of record notice of the Amended Schedules Bar Date. Yet again, Bates ignored the opportunity to file a timely claim. Only now, when the Debtors have opposed Bates's similarly belated attempt to ratify his willful violation of the Debtors' automatic stay, has Bates sought to correct his inaction. After balancing the Pioneer factors, the Debtors respectfully submit that there is no cause for allowing Bates to maintain an untimely claim against the Debtors. The law and undisputed facts provide that the Motion should be denied and the Late-Filed Claim should be disallowed in its entirety and expunged.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>September 8, 2010 | Respectfully submitted,<br><br>SIDLEY AUSTIN LLP<br>James F. Conlan<br>Bryan Krakauer<br>Kenneth P. Kansa<br>Jillian K. Ludwig<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>-and-<br><br>COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br><br>By: _____<br>Norman L. Pernick (No. 2290)<br>J. Kate Stickles (No. 2917)<br>Patrick J. Reilley (No. 4451)<br>1500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Telephone: (302) 652-3131<br>Facsimile: (302) 652-3117<br><br>ATTORNEYS FOR DEBTORS AND<br>DEBTORS IN POSSESSION |

CH1 5430923v.3