# EXHIBIT A

Excerpt from Transcript of Hearing Held on July 29, 2010
in *In re Tribune Company, et al.* Case No. 08-13141 (KJC) (Bankr. D. Del.)

1  the dual track. Sometimes dual tracks converge and you've got
2  to choose which track you want. Going forward with the plan,
3  removing out the most salient point, the evidence leading to
4  conclusions that says their settlement makes no sense, I think
5  suggests the plan to -- the confirmation order, if it is
6  confirmed over that, to an independent reason for appeal, which
7  is that people didn't have the opportunity to actually know
8  what the underlying evidence is. They need to know. We all
9  need to talk about it.
10             THE COURT: Appeals don't concern me, Mr. Stark.
11             MR. STARK: I understand, Your Honor. It wasn't
12 intended that way. It's intended to get to surety. I may not
13 be the one appealing it, but we need to get to surety. Thank
14 you.
15             THE COURT: Thank you.
16             MR. LEMAY: Your Honor, good morning. David LeMay
17 from Chadbourne and Park for the Official Committee of
18 Unsecured Creditors. We are here, of course, having a
19 conversation about voting deadlines and voting, I'll note that
20 Mr. Stark's clients actually are statutorily deemed to have
21 voted no. So his clients, in effect because of the way the
22 plan has constructed, have in effect been deemed to have cast
23 their vote no -- we know what their vote is. I actually
24 represent the people who are supposed to be voting and do have
25 a vote on the plan. Mr. Stark's clients don't because of the

1  subordinated nature of their claim and the fact that the plan,
2  if confirmed, just does not provide them with any recovery.
3          So let's talk about voting, Your Honor, and so here
4  it is, the Examiner's report.  I love being a lawyer.  I'm
5  always very happy and proud to be a lawyer, but Your Honor in
6  the real world the only people who would ever say that this is
7  skimpy or scant or insufficient are lawyers; real people don't
8  do that.  Now there is a very valid for lawyers and Your Honor
9  absolutely averted to it in connection with the trial and the
10 hearing on confirmation issues.  That's when the lawyers should
11 dig into all of these pages and there will be that hearing, but
12 honestly let's think about the voice of the United States
13 Congress when telling us all what we should be thinking about
14 here.
15         Disclosure statement has already been approved, so
16 this isn't literally a hearing under Section 1125, but I think
17 Your Honor might indulge me in thinking that 1125 is probably
18 the best and most reasonable template or standard in which the
19 Court should assess what to do with this voting deadline.  And
20 Congress was thinking about that, Congress was thinking about
21 what people should have in front of them, we all know it.  It's
22 what the -- the information is that which a hypothetical
23 investor typical of the holders of claims or interests in the
24 relevant class would need to make an informed judgment.
25 Typical investor, informed judgment.

1  Again, we are not having a Section 1125 hearing,
2  we've already had that, but I think Congress' intent speaks
3  very clear here.  And truly, Your Honor, from the point of view
4  of a typical investor, I think the Examiner's conclusions not
5  only can be adequately summed up in 15 or 20 pages, I actually
6  tried to do it and I think it can be done in about four
7  sentences.
8  Let's take Mr. Johnston's clients, for example.  The
9  issue for Mr. Johnston's clients is as follows from the
10 Examiner's point of view, to the extent that they hold step one
11 debt, they can either take 92.5 percent of the enterprise value
12 of the company and get on with life or they can alternatively
13 decide that perhaps some of these causes of action that the
14 Examiner identified with respect to selling shareholders and
15 with respect to possible officers are worth pursuing instead or
16 in lieu of.  And so it's a question for them, it's a question
17 they can decide, and I guess it's whether they feel lucky that
18 day or not, but I don't think that it's really the case that
19 anybody in that class has a difficult dilemma.
20 Let's look at the general unsecured creditors,
21 people like the ones I represent.  They've got a pretty --
22 they've got a choice and the Examiner tells them what to think
23 about.  And what the Examiner tells them is well, okay, you can
24 vote in favor of this plan and then get what we think is a very
25 good recovery and a very meaningful recovery to general

1  unsecured creditors, or you can roll the dice on the litigation
2  option pursuing the selling shareholders, pursuing the option -
3  - the officers and directors and you can get in line with $7
4  billion of senior debt that the Examiner has said is probably
5  unassailable. We might disagree with that at a trial, but
6  basically the Examiner is telling the investor in my clients'
7  class well, take the plan, take the recovery or take the
8  litigation option, but if you take the litigation option you
9  might be sharing and share alike with $7 billion of senior debt
10 from step one.
11         Again, you could do the same thing with both step
12 two and the bridge lenders. The Examiner's conclusions as to
13 those folks, and the reasons for those conclusions, are no
14 secret at all. Basically I think the Examiner's report lays
15 out kind of a road map of where they stand.
16         So, Your Honor, I think that the Court identified at
17 the beginning of the hearing the very issue, the distinction
18 between voting and Congress' intention in setting up the voting
19 scheme in Section 1125 and typical investor on the one hand and
20 the lawyers work of having a confirmation hearing on the other.
21 There's no doubt no one in this case -- no one has held any
22 brief, we certainly don't hold any brief for secrecy. We would
23 like to see the secrecy issue dismissed. It is unfortunate
24 that we're at this turn, not much that we can do about it. All
25 of that, I think though, will be resolved before confirmation

1  and I think it is important to keep the voting deadline where
2  it is.
3         Let me talk, Your Honor, about harm.  In addition to
4  the harm relating to competing plans, and I think that is a
5  very real harm, let's remember that, you know, while
6  professional investors here and there -- professional investors
7  in the senior loan category, professional investors in the sub
8  debt and even the professional investors who are bondholders,
9  while they essentially jostle and shove and do all the things
10 that are totally appropriate, there really are a bunch of
11 smaller and much less sophisticated people out there.  You've
12 heard from counsel representing one of the creditors' committee
13 members who represents a bunch of retirees whose retirement
14 payments are not being paid to them currently.
15        There are small creditors out there who are being
16 harmed by every day that they do not get their recovery.  Those
17 are the people that we represent.  Of course we represent the
18 bondholders as well, but I think it's very important while we
19 think about issues of harm to remember that the trade vendor,
20 the butcher, the baker, the candlestick maker, is sitting
21 waiting for his or her recovery and ought not to be made to sit
22 any longer.
23        So, Your Honor, with all that in mind, we would
24 strongly urge that the voting deadline be kept where it is.  I
25 think Your Honor hit right on the mark at the beginning when

1   the Court first addressed this issue.  And to the extent that
2   there's any validity at all to some of the things that have
3   been said, I think that validity rests in the need to get the
4   Examiner's report in connection with the confirmation hearing,
5   not in connection with the voting deadline, where I think
6   Congress has given us quite a roadmap of the level of
7   information that's needed.
8               Your Honor, unless you have questions, that's really
9   all I've got.
10              THE COURT:  I did not.  Thank you.
11              MR. MINUTI:  Good afternoon, Your Honor.  Mark
12  Minuti for Saul Ewing.  Your Honor, I represent the Examiner in
13  the case.  I want to point out that the Examiner is on the
14  phone and available to answer any questions that Your Honor may
15  have.
16              THE COURT:  Thank you.
17              MR. MINUTI:  Your Honor, the Examiner doesn't take a
18  position with respect to the voting deadline and pushing
19  deadlines back, but I thought it would be helpful if I sort of
20  told Your Honor where I think we are on the confidentiality
21  issue so Your Honor can have an idea of what those issues are
22  in the event Your Honor wants to deal with scheduling of those
23  issues as they impact upon the other question Your Honor is
24  being asked to decide right now.
25              Of course, as Your Honor well knows, the Examiner