REDACTED

# Exhibit B

**Letter dated September 2, 2010 from Edward A. Friedman to
Howard Seife and Graeme Buush**

REDACTED

# FRIEDMAN KAPLAN SEILER & ADELMAN LLP

BRUCE S. KAPLAN
EDWARD A. FRIEDMAN
GARY D. FRIEDMAN
BARRY A. ADELMAN
ERIC SEILER
ROBERT D. KAPLAN
ANDREW W. GOLDWATER
ROBERT J. LACK
GREGG S. LERNER
WILLIAM P. WEINTRAUB
RICHARD M. HOFFMAN
SCOTT N. BERMAN
GERALD ADLER
ERIC CORNGOLD
HAL NEIER
PHILIPPE ADLER
LANCE J. GOTKO
KATHERINE L. PRINGLE
MERYL S. ROSENBLATT
DANIEL B. RAPPORT
DAVID I. TANENBAUM
HALLIE B. LEVIN
ANNE E. BEAUMONT
MARY E. MULLIGAN
EMILY A. STUBBS
KENT K. ANKER
AMY C. BROWN
MALA AHUJA HARKER
RICARDO SOLANO JR.

1633 BROADWAY

NEW YORK, NY 10019-6708

TELEPHONE (212) 833-1100

FACSIMILE (212) 833-1250

WWW.FKLAW.COM

WRITER'S DIRECT DIAL
(212) 833-1102

WRITER'S DIRECT FAX
(212) 373-7902

E-MAIL
EFRIEDMAN@FKLAW.COM

HARVEY WEISSBARD
NORMAN ALPERT
ANDREW A. QUARTNER
ASAF REINDEL
COUNSEL

JESSICA A. MURZYN
JEFFREY C. FOURMAUX
LISA S. GETSON
JOHN N. ORSINI
JEFFREY R. WANG
CHAD M. LEICHT
JASON C. RUBINSTEIN
MICHAEL A. GORDON
ROBERT S. LANDY
RICKIE M. SONPAL
STEVEN E. FRANKEL
L. REID SKIBELL
EAMONN O'HAGAN
DANIEL R. GREENBERG
SHEELA V. PAI
JESSICA RICHMAN SMITH
KEVIN L. OBERDORFER
ELLEN LONDON
TIMOTHY M. HAGGERTY
JOHN C. LIN
ANDREW S. PAK
PHILIP A. WELLNER
BETTY W. GEE
AMY K. PENN
ANDREW LEVINE
GREGORY W. FOX
RAHUL AGARWAL
CHRISTOPHER M. COLORADO
KENNETH N. EBIE
KIZZY L. JARASHOW
BENJAMIN S. HOLZER

September 2, 2010

Howard Seife, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

Graeme W. Bush, Esq.
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036-5807

Re: *Tribune Company, et al.*
(U.S. Bankruptcy Court, D. Del., Case No. 08-13141 – KJC)

Dear Howard and Graeme:

This firm represents Aurelius Capital Management, LP and its funds. Aurelius believes itself to be the second largest holder of Tribune's senior notes.

Last year, the Official Committee of Unsecured Creditors (the "Committee") in the Tribune cases engaged Zuckerman Spaeder as special litigation counsel. That engagement was necessary as a result of Chadbourne's conflict with regard to potential estate causes of action against Chadbourne clients, including LBO lenders, and other parties aligned with Chadbourne clients. However, hiring special litigation counsel would be mere window-dressing if the respective roles of Chadbourne and Zuckerman are not clearly delineated and strictly complied with. The responsibility to honor and enforce an appropriate delineation lies with both of your firms as well as with the members of the Committee.

913064.7

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Howard Seife, Esq.                           - 2 -                        September 2, 2010
Graeme W. Bush, Esq.

        We write this letter to convey our views concerning that delineation and to
seek prompt confirmation from each of your firms that you agree with this delineation
(or, if not, to indicate with specificity the areas of disagreement). We also request
confirmation from each of you that your own firm and, to the best of your knowledge, the
other firm have complied and will comply with the delineation of your respective roles
set forth herein (whether or not you agree with our delineation). Especially given that the
Committee will soon be called upon to provide its mediation statement to Judge Gross,
we request your response by 5 pm this coming Tuesday (September 6), in order to ensure
that the Committee's participation in the mediation process is not tainted or delayed and
to afford pre-LBO unsecured creditors the opportunity to seek relief, if warranted, in
order to avoid further prejudice from any ethical impropriety.

        The central question in the mediation (which is really the central question
in connection with any effort in these cases to formulate a plan) will be, what is the
proper and reasonable evaluation and resolution of the claims and causes of action that
are described in the Examiner Report. In particular, the resolution of the claims against
and concerning the LBO lenders will be critical to the debtors' reorganization prospects
and their ability to confirm a plan. Accordingly, Chadbourne's conflicts with LBO
lenders and others should entirely preclude Chadbourne's involvement in providing legal
counsel to the Committee in regard to such matters.

        While attorney conflicts of interest are disabling without regard to whether
they actually result in impropriety or prejudice, we believe the history of this case shows
that the Committee and Chadbourne have conducted themselves in a fashion that is
incompatible with elemental legal and ethical responsibilities of a statutory committee
and its counsel. The Examiner's Report describes the substantial and meritorious claims
that are available for the benefit of the debtors' estates as against the LBO lenders. These
are claims that the Committee and unconflicted counsel should have been investigating
and advocating during the twenty months these cases were pending before the issuance of
the Examiner Report. It has been all the more shocking to see how the Committee and
Chadbourne conducted themselves after the Report's release – for example, seeking to
prevent unsecured creditors from reading the unredacted Examiner's Report before the
voting period expired; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In sum, we believe this situation presents a textbook case
on why attorney conflicts of interest should not be tolerated.

        It is essential that there be a clear understanding as to what is ethically
required on the part of Committee counsel in the context of the mediation, and going
forward in these cases. To date, we believe that Chadbourne's conflicts with LBO
lenders and others have undermined the ability of the Committee to act for the benefit of
its principal constituents, including the senior noteholders, and it has utterly failed to
effectively represent those interests. It is essential that independent, conflict-free
counsel—which Zuckerman Spaeder purports to be—represent the Committee, without

913064.7

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Howard Seife, Esq.                              - 3 -                          September 2, 2010
Graeme W. Bush, Esq.

*any* involvement by Chadbourne, in all matters concerning claims against LBO lenders
and other Chadbourne clients, including advice and counsel with respect to such claims,
negotiations, and plan proposals.

Many of the principal claims discussed in the Examiner Report are
directly assertable against the LBO lenders, including JPMorgan and Merrill Lynch, who
are clients of the Chadbourne firm. These claims include not only fraudulent conveyance
and avoidance claims, but also tort actions, such as aiding and abetting breaches of
fiduciary duty. To the extent that claims are assertable against parties other than LBO
lenders, such as officers, directors, shareholders and advisors, those claims are closely
related, both factually and legally, to claims that should be asserted against LBO lenders.

In light of Chadbourne's conflicts, Chadbourne should not be advising the
Committee in any way with respect to a proposed settlement of any of these claims, nor
speaking on behalf of the Committee in any court proceedings, or in any mediation
sessions, or in private negotiations with respect to these claims. Similarly, Chadbourne
should not be advising the Committee in any way with respect to the contents of the
Examiner Report, or the conclusions to be drawn from that report as to evaluation of
claims and/or a reasonable resolution of such claims.

As the Committee deliberates with respect to the appropriate position for
the Committee to take in the mediation – or otherwise with respect to evaluation of
potential claims in litigation and the formulation of a plan that necessarily addresses these
matters – it would be unethical for Chadbourne to participate in those deliberations in any
way. Nor can Chadbourne be the representative of the Committee in presentations or
negotiations with respect to any position it decides to take.

Within the subject matter scope of Chadbourne's conflicts (which
includes, among other things, all potential litigation claims covered by the Examiner
Report), Chadbourne should wholly disengage, and Zuckerman Spaeder should be the
only counsel (other than local counsel) for the Committee. With respect to this subject
matter, Chadbourne should not be appearing on the record, commenting privately,
responding to questions, participating in the mediation, engaging in informal discussions
or negotiations, drafting pleadings or other documents, or commenting on pleadings or
other documents prepared by others. Moreover, any ethical proscription on
Chadbourne's conduct applies regardless whether Zuckerman is also participating.
Anything Chadbourne might say or do within the pertinent subject matter scope would be
presumptively tainted by conflicts even if Zuckerman is theoretically in a position to
express disagreement with Chadbourne. Indeed, since Zuckerman presumably is capable
of handling the representation within the areas of Chadbourne's conflict, we would infer
if Chadbourne insists on participating in matters within the scope of Zuckerman's
engagement that such participation is intended to undermine Zuckerman's independence
or the Committee's reliance on any advice from Zuckerman with which Chadbourne

913064.7

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

Howard Seife, Esq.                    - 4 -                    September 2, 2010
Graeme W. Bush, Esq.

disagrees.  Zuckerman should not be put in the position of having to debate against
advice from a conflicted co-counsel, and the Committee should not be allowed to choose
between the advice of unconflicted counsel and the advice of conflicted counsel.

    We understand that JPMorgan and Merrill Lynch have consented to
Chadbourne negotiating with them on behalf of the Committee.  It is quite apparent why
those firms  found it in their interest to provide that consent, but for like reason it is not in
the interests of the unsecured creditors for Chadbourne to be representing or advising
them in negotiations against those firms.

    Within the scope of Zuckerman's engagement and Chadbourne's conflict,
it is Zuckerman's responsibility, as well as Chadbourne's, to ensure that the Committee
obtains the independent advice and representation it is entitled to and is completely
insulated from Chadbourne.  For the avoidance of doubt, it would be wholly
inappropriate for Zuckerman to limit its role based on instruction from Chadbourne, or to
consider anything other than the best interests of the unsecured creditors when
performing its responsibilities.  If Zuckerman observes conduct by Chadbourne that is
inconsistent with the ethically-required limitations on Chadbourne's role, it is
Zuckerman's responsibility to take all necessary action to rectify that problem and its
consequences, if need be by disclosing it to unsecured creditors and seeking relief from
the Bankruptcy Court.

    As set forth above, we would appreciate your written response by 5 pm on
Tuesday, September 6.

    We look forward to hearing from you.

                        Very truly yours,

                        Edward A. Friedman


cc:    David Adler, Esq.
       Edward Sassower, Esq.
       Robert Stark, Esq.




913064.7