## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING
## FOURTH INTERIM FEE APPLICATION OF MOELIS & COMPANY LLC

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Fourth Interim Fee Application of Moelis & Company LLC* [Docket No. 3301] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $600,000.00 and reimbursement of expenses that total $3,171.56 for the period from September 1, 2009 through

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

November 30, 2009. Moelis & Company LLC ("**Moelis**") serves as financial advisor and investment banker to the Official Committee of Unsecured Creditors (the "**Committee**").

### Background

1.      On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") commenced a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2.      On January 30, 2009, the Committee filed the *Application for Entry of an Order Pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing Employment of Moelis & Company LLC as Investment Banker to the Unofficial Committee of Unsecured Creditors Nunc Pro Tunc to January 6, 2009* [Docket No. 312] (the "**Retention Application**"). On March 12, 2009, this Court approved the retention of Moelis as investment banker to the Committee by entering the *Consent Order Pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure Authorizing Employment of Moelis & Company LLC as Investment Banker to the Unofficial Committee of Unsecured Creditors Effective as of January 6, 2009* [Docket No. 523] (the "**Retention Order**").

3.      The Retention Application requested the allowance of compensation and reimbursement of expenses in accordance with the terms of an engagement letter between the Committee and Moelis dated January 30, 2009 (the "**Engagement Letter**"). The Engagement Letter established a fixed fee for Moelis of $200,000 per month, an additional fee of $7,500,000 upon consummation of reorganization or restructuring, and reimbursement for all reasonable and documented out-of-pocket expenses.

4.      Pursuant to the Retention Order, "Moelis shall be compensated in accordance with the terms of the Moelis Engagement Letter and, in particular, all of Moelis' fees and expenses in these cases including without limitation the Monthly Fee and the Restructuring Fee (as defined in the

Engagement Letter) are approved pursuant to Bankruptcy Code section 328 (a)." The Retention Order also provided that the "Court will review Moelis' compensation (including any request for compensation under the fee 'tail' provision of paragraph 8(b) of the Engagement Letter) (i) under the standards set forth in 11 U.S.C. §§ 330 and 331 in the event that an objection is filed by the Office of the United States Trustee and (ii) under the standard set forth in 11 U.S.C. § 328(a) if an objection is filed by a party in interest other than the Office of the United States Trustee."

5.      Moelis submitted the Fee Application on February 3, 2010, pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the **"Interim Compensation Order"**).

<u>**Applicable Standards**</u>

6.      In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

7.      The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the **"Bankruptcy Code"**), the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the **"Local Rules"**), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the **"UST Guidelines"**). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

-3-

8.      Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

9.      A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred.  A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules.  Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application.  A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

10.      The Fee Examiner evaluated the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings, and then issued a Preliminary Report with accompanying exhibits to Moelis.  In response, Moelis and the Fee Examiner discussed the issues raised in the Preliminary Report over the telephone.  After consideration of the additional information provided by the Moelis, the Fee Examiner now issues this final report (the "**Final Report**") "in a format designed to opine whether the requested fees of the Case Professional meet the

applicable standards of section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Guidelines." *Fee Examiner Order ¶5.*

## DISCUSSION OF FINDINGS

### Technical Requirements

11.    **Reconciliation of Fees and Expenses.** Moelis requested fees in accordance with the terms and conditions set forth in the Engagement Letter. Using the fixed monthly fee, the total hours billed by the firm, and the hours billed by each timekeeper, the Fee Examiner calculated a blended hourly rate for each month for the firm. The blended hourly rate assigned to each timekeeper was then used to calculate a fee for each entry. The calculation of the blended hourly rate resulted in a discrepancy of $0.78 that is attributed to rounding.

The Fee Examiner compared the total amount of expenses requested in the Fee Application ("**Expenses Requested**") to the expenses actually documented in the electronic and/or hard copy data received from the firm ("**Expenses Computed**"). The Fee Examiner identified no discrepancies between the Expenses Requested and the Expenses Computed.

12.    **Block Billing.**[2] The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii).* The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines ¶(b)(4)(v).*[3]

---

[2] The Fee Examiner's methodology for reviewing fees includes addressing the uncertainty of quantifying time resulting from block billing. Block billing is the practice of billing more than one task in a single entry with a single time increment assigned to the entire entry. As an alternative to discounting the entire amount billed for an entry that is block billed, the Fee Examiner assigns an equal proportional amount of time to each of the tasks contained within the blocked entry. This methodology has been adopted by courts when evaluating fees and ruling on fee applications, and presents a reasonable alternative to discounting block billed time entries in their entirety.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g., In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply

Moelis substantially complied with the Local Rules and UST Guidelines, as the Fee Examiner identified only three instances of block billing.

13.    **Time Increments.**  The Retention Order grants Moelis a limited waiver from the Local Rules, allowing Moelis to record time in one-half hour increments rather than the customary one-tenth hour increment.

### Review of Hourly Fees

14.    **Firm Staffing.**  The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*.  The Fee Application provided the names and positions of the eight Moelis timekeepers who billed to this matter, consisting of three managing directors, one senior vice president, two vice presidents, one associate, and one analyst. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[4]

The firm billed a total of 667.00 hours with associated fees of $600,000.78.[5]  The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

---

an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007).  Across the board cuts range from five to 100 percent.  *See id.* at 495 n.7 and cases cited.

[4] This Final Report includes exhibits that detail and support the findings discussed therein.  Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits.  For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[5] This figure reflects the fees computed by the Fee Examiner.

| Position | Hours | Percentage of Total Hours | Computed Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Managing Director | 122.50 | 18% | $109,735.91 | 18% |
| Senior Vice President | 67.50 | 10% | 59,417.64 | 10% |
| Vice President | 154.50 | 23% | 139,212.32 | 23% |
| Associate | 142.50 | 22% | 129,460.40 | 22% |
| Analyst | 180.00 | 27% | 162,174.51 | 27% |
| TOTAL | 667.00 | 100% | $600,000.78 | 100% |

15.     **Timekeepers' Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services.  *See 11 U.S.C. § 330(4)*.  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  On the whole, each Moelis timekeeper appeared to perform either core team responsibilities necessary to the engagement, or performed limited but discrete, necessary, and/or fungible tasks that did not appear to be duplicated by other professionals.

16.     **Meetings, Conferences, Hearings, and Other Events.**  The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" (*Local Rule 2016-2(d)(ix)*), and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*.  While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified numerous occasions where two or more (and up to eight) timekeepers attended the same meeting, conference, hearing, or other event.  Contrary to Local Rules and UST Guidelines, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees.  The entries, totaling 148.00 hours, were displayed in **Exhibit B** to the Preliminary Report.  In each instance where multiple timekeepers attended a meeting, conference, hearing, or other event, the Fee Examiner identified the timekeeper who appeared most responsible for the matter or the particular event (*i.e.*, the individual leading rather than observing a

conference).  The potentially duplicative and unnecessary timekeepers' entries totaled 94.50 hours and were highlighted in bold and marked with an ampersand [&] in the exhibit.  The Fee Examiner requested that the firm provide what the Local Rules and UST Guidelines mandate -- an explanation of the duplicative attendees' roles and comment on the necessity of the multiple attendees for each event.

   As with past responses to the Fee Examiner, Moelis explained the firm's team approach of staffing the matter with distinct timekeepers responsible for various aspects of the case and emphasized Moelis' role in both restructuring and media.  Perhaps most importantly, under the flat fee payment structure the benefits offered by the participation of multiple timekeepers do not carry corresponding costs to the Debtors.  After consideration of all the responsive information provided, the Fee Examiner makes no recommendation for a fee reduction resulting from multiple Moelis personnel attending the same meeting, conference, or event.  Exhibit B is omitted from this report.

   17. **Intraoffice Conferences.**  Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel.  The Fee Examiner identified billing activities by Moelis timekeepers describing intraoffice conferences totaling 69.50 hours, or approximately 10% of the total hours as displayed in **Exhibit C** to the Preliminary Report.  The Fee Examiner observed that in every instance of intraoffice conferencing, two or more timekeepers invoiced fees associated with the intraoffice conference.  While the Fee Examiner acknowledges that Moelis is compensated at a flat rate and therefore the Debtors' estates arguably incurred no additional cost for the firm's intraoffice communication, the firm is nonetheless encouraged to eliminate any unnecessary intraoffice conferencing and provide an explanation when more than one timekeeper bills to attend the same firm meeting.

   In response to the Preliminary Report, Moelis emphasized the need for intraoffice conferencing given the firm's bicoastal team approach, and stressed that Moelis is compensated at a flat rate and therefore the Debtors' estates arguably incurred no additional cost for the firm's intraoffice

communication.    After consideration of all facts and circumstances, the Fee Examiner makes no

recommendation for a fee reduction.  Exhibit C is omitted from this report.

18.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity

descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any

portion thereof, is actual, reasonable and necessary."    The Local Rules further provide that fee

applications "shall include complete and detailed activity descriptions," each activity description "shall

include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the

subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall

individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing

and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that

"time entries for telephone calls, letters, and other communications should give sufficient detail to

identify the parties to and the nature of the communication.    Time entries for court hearings and

conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

a.    **Vague Communications.**  The Fee Examiner reviewed the substantive detail of

each billing entry describing communication activities and identified 89.00 hours where the billing

narrative failed to disclose the subject matter of and/or participants to a communication.   The time

entries were provided to the firm in **Exhibit D** to the Preliminary Report.   For example, Moelis

timekeepers routinely recorded time entries such as "call with Zuckerman" and "professional meeting."

Such billing narratives provide the client or reviewer with scant substantive detail, making it impossible

to evaluate the necessity and scope of the activity.  The Fee Examiner invited comment from Moelis

regarding the continued practice of insufficiently describing activities, and requested that in future

applications Moelis provide sufficient detail for each time entry and in particular disclose the subject

matter and participants for every billing activity describing communications.

In response to the Preliminary Report, Moelis provided the requested detail and

indicated that the firm would strive to provide more detailed billing narratives regarding conferencing

activities. After consideration of the additional information provided, and in light of Moelis' flat fee arrangement, the Fee Examiner makes no recommendation for a fee reduction. Exhibit D is omitted from this report.

        b.    **Vague Tasks.**  The Fee Examiner reviewed the substantive detail of each billing entry and provided to Moelis Exhibit E to the Preliminary Report which set forth the task descriptions where the Fee Examiner could not determine the precise nature of the services performed by the timekeeper. As stated in the Local Rules and UST Guidelines, billing entries must adequately describe the services actually performed to allow a determination of whether the task was staffed appropriately and/or whether the task was duplicated by other timekeepers.[6]  The Fee Examiner requested Moelis provide sufficient detail for each time entry and in particular disclose the precise nature of the services performed by each timekeeper.

        Subsequent to the Fee Examiner issuing the Preliminary Report, when responding to a report for the previous interim period Moelis provided the Fee Examiner with a key by which the various tasks and activities may be deciphered.   In light of the additional information, the Fee Examiner makes no recommendation for a fee reduction and Exhibit E is omitted from this report.

        19.    **Administrative Activities.**  Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any billing entries describing administrative activities.

        20.    **Clerical Activities.**  Clerical activities are tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.[7]  The Fee Examiner did not identify any time entries describing clerical activities.

---

[6] Vague entries do not allow the court to determine the reasonableness and necessity of the effort of expended, and fees may be denied or reduced when insufficiently documents. *E.g.*, *In re Bennett Funding, Inc.*, 213 B.R. 234, 245-46 (Bankr. N.D.N.Y. 1997).

[7] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing

21.    **Travel.**    The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Examiner did not identify any entries describing travel.

22.    **Moelis Retention/Compensation.**    The Fee Examiner did not identify any billing entries relating to the firm's retention documents and applications for compensation.

Review of Expenses

23.    **Itemization of Expenses.**    The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*.    The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense.    Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*.    Moelis provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.    The Fee Examiner notes that the firm adjusted lodging charges to comply with the applicable limits, and indentified no questionable expense items.

CONCLUSION

The Fee Examiner submits this Final Report regarding the Fee Application and the fees and expenses discussed above.    The Fee Examiner recommends approval of fees in the amount of

---

differing approaches to clerical work at professional rates).    These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

$600,000.00 and reimbursement of expenses in the amount of $3,171.56 for the interim period from September 1, 2009 through November 30, 2009.

Respectfully submitted,

**STUART MAUE**

By: _____
John L. Decker
3840 McKelvey Road
St. Louis, Missouri 63044
Telephone:    (314) 291-3030
Facsimile:    (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 14th day of September, 2010.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Mr. Thane W. Carlston
Moelis & Company LLC
1999 Avenue of the Stars, 19th Floor
Los Angeles, CA  90067

John L. Decker, Esq.

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Moelis & Company LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| NMAH | Mahmoodzadegan, Navid | MANAG DIRECTOR | $304.41 | $733.94 | 76.00 | $41,397.29 |
| JMOM | Momtazee, John | MANAG DIRECTOR | $304.41 | $733.94 | 66.00 | $35,873.84 |
| TCAR | Carlston, Thane | MANAG DIRECTOR | $304.41 | $733.94 | 61.50 | $35,301.04 |
| | No. of Billers for Position: 3 | Blended Rate for Position: | $553.18 | | 203.50 | $112,572.17 |
| | | | | % of Total: | 16.75% | % of Total: 18.76% |
| ZJAM | Jamal, Zul | SR. VICE PRES | $304.41 | $733.94 | 79.50 | $40,830.53 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $513.59 | | 79.50 | $40,830.53 |
| | | | | % of Total: | 6.54% | % of Total: 6.81% |
| AAJM | Ajmera, Ashish | VICE PRESIDENT | $304.41 | $733.94 | 241.00 | $112,810.26 |
| LKWO | Kwon, Larry | VICE PRESIDENT | $304.41 | $733.94 | 83.50 | $42,907.23 |
| | No. of Billers for Position: 2 | Blended Rate for Position: | $479.87 | | 324.50 | $155,717.49 |
| | | | | % of Total: | 26.71% | % of Total: 25.95% |
| EGLU | Glucoft, Evan | ASSOCIATE | $304.41 | $733.94 | 282.00 | $132,989.20 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $471.59 | | 282.00 | $132,989.20 |
| | | | | % of Total: | 23.21% | % of Total: 22.16% |
| VPAT | Patel, Vishal | ANALYST | $304.41 | $733.94 | 230.00 | $124,657.55 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $541.99 | | 230.00 | $124,657.55 |
| | | | | % of Total: | 18.93% | % of Total: 20.78% |
| MCRO | Cronin, Michael | SUM ASSO INTERN | $304.41 | $304.41 | 15.00 | $4,566.15 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $304.41 | | 15.00 | $4,566.15 |
| | | | | % of Total: | 1.23% | % of Total: 0.76% |
| SDUV | Duvvuru, Sakya | SUM ANALYST INT | $304.41 | $700.53 | 80.50 | $28,664.27 |

EXHIBIT A

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Moelis & Company LLC**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|----------|------|----------|--------------|--------------|----------------|---------------|
| | No. of Billers for Position: 1 | Blended Rate for Position: | $356.08 | | 80.50 | $28,664.27 |
| | | | | | % of Total: 6.63% | % of Total: 4.78% |
| | Total No. of Billers: 10 | Blended Rate for Report: | $493.82 | | 1,215.00 | $599,997.34 |