UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| TRIBUNE COMPANY *et al.,* | : | Case No. 08-13141 (KJC) |
|  | : | Jointly Administered |
| Debtors. | : |  |
| _____ | : | **Hearing Date: 10/22/2010 @ 10:00 a.m.** |

**Re:  D.I. 3281**

## SUPPLEMENT TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES

The Official Committee of Unsecured Creditors (the "Committee") of the Tribune Company (the "Company") and its various debtor-subsidiaries (collectively, the "Debtors") hereby supplements its February 1, 2010 motion (the "Original Motion") for entry of an order pursuant to 11 U.S.C. §§ 105, 1103 and 1109, granting the Committee leave, standing and authority on behalf of the Debtors' estates to commence, prosecute and settle claims and counterclaims arising out of or in connection with the Debtors' 2007 leveraged buyout transaction ("LBO") against the lenders that financed the LBO and the financial advisors who recommended proceeding with the LBO (the "LBO Claims").  The Committee incorporates by reference the Original Motion and the briefs filed by the Committee in support of that motion [D.I. Nos. 3281 & 3410].  The Original Motion should be granted for the reasons set forth therein and for the additional reasons set forth below.

The Committee supplements its Original Motion to reflect developments since the Original Motion was briefed, including the Report of Kenneth N. Klee, as Examiner ("Examiner's Report") [D.I. Nos. 5130-5133].  Those developments further confirm that the Committee should be granted standing to pursue the LBO Claims.  In addition, the Committee

has revised its draft complaint, attached in a redacted form as Exhibit A hereto, to take account

of facts that came to light after the Original Motion was filed and other recent developments.[1]

## BACKGROUND

On December 8, 2008 (the "Petition Date"), the Debtors commenced these chapter 11

cases, and the Debtors continue to operate their businesses and manage their properties as

debtors-in-possession.

On December 18, 2008, the United States Trustee for the District of Delaware appointed

the Committee to represent the interests of all unsecured creditors in the Debtors' cases.  The

current members of the Committee are:  JPMorgan Chase Bank, N.A.,[2] in its capacity as lender;

Deutsche Bank Trust Company Americas, as successor Indenture Trustee; Wilmington Trust

Company, as successor Indenture Trustee; Warner Brothers Television; Buena Vista Television;[3]

William Niese; Pension Benefit Guaranty Corporation; and Washington-Baltimore Newspaper

Guild, Local 32035.[4] *See* Second Amended Notice of Appointment of Committee of Unsecured

Creditors (May 26, 2009) [D.I. No. 1238].

---

[1] While the Committee would prefer to file the unredacted version of its draft complaint publicly, a number of allegations in the draft complaint are based on documents and information that has been designated as confidential under the document depository order or that are otherwise confidential.  Accordingly, in compliance with its obligations under that order, the Committee has also filed contemporaneously herewith a motion to file the unredacted version of its draft complaint under seal.

[2] In accordance with the Committee's Bylaws, JPMorgan Chase Bank, N.A. has at all times been recused from any participation of any kind in the Committee's review or deliberations concerning any aspect of the LBO, and they have been carefully screened from access to any Committee professional analysis or other non-public information that relates to the LBO investigation.  Further, under those Bylaws, JPMorgan Chase Bank, N.A. acknowledged its inability to participate in Committee deliberations (or to see Committee work product) related to the LBO and cooperated in the screening and recusal process described above.

[3] Buena Vista Television replaced Vertis, Inc. when the latter entity resigned in April of 2009.  Both are trade creditors of the Debtors.

[4] Merrill Lynch Capital Corporation was a member of the Committee but resigned from the Committee on September 9, 2009.  The vacancy created by Merrill Lynch's resignation was not filled.

The Original Motion was filed on February 1, 2010, and fully briefed for a hearing scheduled for February 18, 2010. The Court deferred hearing the Original Motion at the February 18 hearing, and the Committee later agreed to adjourn the Original Motion while the Committee and various other parties sought to finalize and document the consensual resolution of the LBO Claims that had been tentatively reached by the parties in interest.

On September 1, 2010, this Court entered its "Order Appointing Mediator" [D.I. No. 5591]. Pursuant to that Order, the Honorable Kevin Gross, United States Bankruptcy Judge, has been appointed "to mediate disputes . . . concerning the appropriate terms of a [plan of reorganization], including the appropriate resolution of the LBO-Related Causes of Action" (as defined therein).

The Committee fully supports the mediation process and the efforts of the Mediator to achieve a consensual plan. This Supplement is not filed with any intent to thwart or interfere with the mediation, and granting this motion will not impact the mediation process. But as Committee counsel recently noted on the record, the December 8, 2010 statutory deadline imposed by section 546(a)(2) of the Bankruptcy Code is looming. *See* Hearing Transcript at 56-57, *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del. Aug. 20, 2010). Because the Committee cannot risk that valuable estate claims will be forever lost by the passage of the filing deadline, it files this Supplement now so that the issue of standing can be dealt with, and the necessary complaint filed, well before the statutory deadline. As long as the mediation is pending before Judge Gross, the Committee will stand down from initiating its prosecution of the claims. This is the process specifically contemplated by decretal paragraph 10 of the Order Appointing Mediator.

## ARGUMENT

**I.  The case for granting the Committee standing is even stronger today than when the Original Motion was filed.**

The Committee's briefing on the Original Motion demonstrated that all the requirements for granting the Committee standing to pursue the LBO Claims have been met.  The LBO Claims are more than "colorable" and would, if successful, dramatically increase distributions to unsecured creditors.  The Debtors' disabling conflicts, and their avowed unwillingness to litigate the LBO Claims, make plain that they cannot and will not zealously pursue claims that implicate the conduct of their own current directors and officers.  *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 575 (3d Cir. 2003) (en banc); *Infinity Investors Ltd. v. Kingsborough* (*In re Yes! Entm't Corp.*), 316 B.R. 141, 145 (D. Del. 2004).  Developments since the Original Motion was briefed only strengthen the case for standing.

**A.  The claims in the Committee's draft complaint are more than colorable.**

The Examiner's Report makes abundantly clear that the LBO Claims are colorable.  He found, for example, that it is "somewhat likely that a court would conclude that the Step Two transactions constituted intentional fraudulent transfers," and that it is "highly likely that a court would conclude that Tribune was rendered insolvent and left without adequate capital after giving effect to the Step Two Transactions."  Examiner's Report, Vol. 1 at 8, 18.  While the Examiner concluded that it would be more difficult to prove intentional and constructive fraudulent transfer claims with regard to the Step One Transactions, he found that many of the questions were close, leaving no doubt that such claims are substantial.  For example, he found that, while it was "somewhat unlikely" that a court would collapse Step One and Step Two in evaluating solvency of the Debtors at Step One and that doing so would lead to a finding of

4

insolvency at Step One (conclusions with which the Committee respectfully disagrees), these were "close" or "exceedingly close" questions. Examiner Report, Vol. 1 at 16, 18, and Vol. 2 at 206. In short, the Examiner's Report confirms that the LBO Claims easily meet the "colorable" standard.

Nor is there any question that the value to unsecured creditors of the claims in the revised draft complaint far exceeds the costs that the Committee would incur to pursue them. For example, Tribune's incurred obligation in connection with Step Two alone was almost $4 billion, and Tribune paid out about $120 million in fees in connection with Step Two. Examiner's Report, Vol. 2 at 509 n.2277 (summarizing VRC Step Two solvency opinion's recitation of Step Two debt and fees). Thus, the claims have the potential to provide a substantial benefit to non-bank creditors.

**B.     The Debtors are clearly conflicted and will not pursue the LBO Claims.**

The Examiner's Report graphically illustrates the conflicts the Debtors would face in pursuing the LBO Claims. The Examiner concluded that Tribune's procurement of a solvency opinion in connection with Step Two of the LBO was "marred by dishonesty and lack of candor," Examiner's Report, Vol. 1 at 10, and that "one or more members of Tribune's senior financial management were not honest or candid in connection with key aspects of the Step Two Transactions . . . ." *Id.*, Vol. 2 at 386. The Examiner focused on conduct by Tribune's former and current chief financial officers. The Debtors have an obvious interest in establishing that the Examiner was wrong in his findings and that their senior financial management was not dishonest in connection with Step Two of the LBO. In sum, the Debtors can not evaluate in good faith the merits of LBO Claims asserting that their current CFO engaged in dishonest

conduct, they cannot vigorously pursue such claims against their own current and former officers and directors, and they have made it clear that they have no intention of pursuing such claims at all.

The testimony of the Debtors' own witness, David Kurtz of Lazard Freres & Co. LLC, the Debtors' Investment Banker and Financial Advisor,[5] at the hearing held before the Court on February 18, 2010, confirms that the Debtors can not be relied on to prosecute the LBO Claims vigorously. Mr. Kurtz testified that the Debtors intended to seek a global resolution of the LBO Claims and, failing that, to file a plan incorporating a settlement of the LBO Claims, but did not intend to litigate the LBO Claims on the merits. *See* Hearing Transcript at 51, *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del. Feb. 18, 2010) (relevant excerpts attached as Exhibit B hereto). In fact, Mr. Kurtz could not think of any circumstances in which the Debtors would decide to pursue litigation to resolve the LBO Claims. *Id.* at 52. As of the briefing on the original motion and Mr. Kurtz's testimony, the Debtors had not even sought to retain un-conflicted counsel that could pursue the LBO Claims. *Id.* at 59. Indeed, as discussed *infra*, it appears that the Debtors still have not retained counsel prepared to litigate the LBO Claims.

Instead, the Debtors' investigation into the LBO Claims was conducted by the Debtors' bankruptcy counsel, who cannot litigate such claims because they represent some of the key lenders that are defendants to the LBO Claims. *Id.* at 58-59. Additionally, throughout this period of investigation, four of Tribune's ten directors and three members of its senior management, including its chief financial officer, were implicated in the LBO Claims.

---

[5]    Order Authorizing Debtors to Employ and Retain Lazard Freres & Co. LLC (Mar. 13, 2009) [D.I. No. 524].

The Debtors' inability to pursue the LBO Claims that implicate the conduct of many of the Debtors' current officers and directors is underscored by the recent appointment of Donald J. Liebentritt to be Tribune's Chief Restructuring Officer. Mr. Kurtz testified that the principal person he reported to with respect to matters arising from the LBO Transaction was Mr. Liebentritt, then the Debtors' general counsel. *Id.* at 56. Mr. Liebentritt is the former president of EGI, and a long-time business associate of Samuel Zell and, as of the February 18, 2010 hearing, an employee of EGI. *Id.* at 57. The Committee, in a separate motion filed on September 13, 2010, seeks standing to pursue claims arising from the LBO against EGI and Zell, among others. Accordingly, the Debtors' point man for dealing with the LBO Claims has conflicts that make it impossible for him to make truly independent judgments concerning the merits of the LBO Claims.

The Debtors' recent formation of a special committee of the Tribune board, 20 months into the case and in the wake of the Examiner's Report finding that their senior financial management engaged in dishonest conduct, does not and cannot cure these conflicts and clear the Debtors to retain control of the LBO Claims. In fact, the Debtors' submissions concerning the Debtors' recent application to retain Jones Day as counsel to the special committee make clear that the special committee was not formed to litigate the LBO Claims. Rather, it was formed to advise the Debtors on their reorganization efforts, and Jones Day's representation will be limited to advising the special counsel on restructuring issues.[6] Thus, with the deadline to bring certain

---

[6] Notice of Application for an Order Authorizing the Retention of Jones Day as Special Counsel for the Special Committee of the Tribune Company Board of Directors Pursuant to 11 U.S.C. §§ 327(e) and 1107, *Nunc Pro Tunc* to August 22, 2010, at 9 (filed Aug. 30, 2010) ("Jones Day Retention App.") [D.I. No. 5562]; Reply of the Debtors and Debtors in Possession in Support of the Jones Day Retention App. [D.I. No. 5665]; Statement of Special Committee of Tribune Company's Board of Directors in Support of the Debtors' Application To Retain Jones Day As Counsel for the Special Committee [D.I. No. 5664].

of the LBO Claims less than three months away, the Debtors still have not sought to retain counsel tasked with pursuing the LBO Claims.

As demonstrated in the Original Motion, the law overwhelmingly supports granting the Committee standing to pursue the LBO Claims in the circumstances present here; indeed, the cases recognize the problem inherent in allowing a Debtor to control causes of action that implicate its own leadership. *Cybergenics*, 330 F.3d at 573. The law simply reflects the common sense conclusion that, given how Debtors have approached the LBO Claims to date, a special committee of four Tribune directors – even assuming *arguendo* the committee were created to control the LBO Claims for the Debtors – could not make a disinterested decision whether to sue, or how to resolve claims against, four of their fellow directors and three senior officers of Tribune, including its chief financial officer.

## II.    There are additional meritorious claims that should be pursued.

Facts that have come to light since the Original Motion was filed demonstrate that there are additional colorable LBO Claims that would substantially benefit the Debtors' estates and should be pursued. The Committee's revised draft complaint (Ex. A) sets forth new claims, including the following:

(a) a separate fraudulent transfer claim of actual fraud against the LBO Lenders based on the facts developed by the Examiner that he concluded made it reasonably likely that there was an intentional fraudulent transfer in connection with Step Two of the LBO (the Committee had already alleged an actual fraud claim against the Lenders as to the whole LBO based on other facts);

(b) federal and state law tort claims against Morgan Stanley arising out of its conduct while an advisor to the Company and the special committee to the Tribune Board of Directors from 2006 to 2008; and

(c) a claim of aiding and abetting breach of fiduciary duties against Morgan Stanley, JPMorgan, Merrill Lynch, Citigroup, and Bank of America alleging that Tribune's senior financial management breached its fiduciary duties to the Company by taking improper actions to close the LBO and that Tribune management was aided and abetted by these defendants.

The attached complaint demonstrates that the new claims, several of which are based on facts developed in the Examiner's Report, are colorable and would produce significant benefits for unsecured creditors if successful. The new claims are closely intertwined with the LBO Claims asserted in the draft complaint attached to the Committee's Original Motion.

The same conflicts detailed in the briefing on the Original Motion and above therefore disable the Debtors from pursuing these new claims. Given that the Debtors have already demonstrated – and their financial advisor, Mr. Kurtz, has confirmed in testimony before this Court – that they have no intention of pursuing the claims in the Committee's original draft complaint, there is no basis to conclude that Debtors are any more likely to file, let alone litigate vigorously, causes of action focused on Step Two of the LBO transaction or the other added claims. The new fraudulent transfer claim based on actual fraud alleges wrongful actions taken by Company management, including current officers, to ensure that the LBO would be completed. Similarly, the aiding and abetting breach of fiduciary duty claim will require presentation of evidence establishing the Tribune officers' breach of their duties. As such, the Debtors should not be permitted to retain control over claims that would force them to allege and

9

prove misconduct by, inter alia, the Company's current leadership and the LBO Lenders who will, upon conclusion of these Chapter 11 cases, have substantial equity in Tribune.

In addition to adding new claims, the attached complaint makes various other revisions based on factual and other developments since the original motion for standing was filed.

Finally, the Committee explained in the Original Motion why the Committee should not be required to make a formal demand on the Debtors to bring the LBO Claims. *See* Original Motion at 9-11. In the circumstances present here, for the reasons presented in the Original Motion and herein, and given that the cost-benefit analysis strongly supports standing for the Committee, there is a rebuttable presumption that the Debtors' failure to bring the claims is unjustified and a demand upon the Debtors would be futile. *See, e.g., In re Gibson Group, Inc.,* 66 F.3d 1436, 1442 (6th Cir. 1995). This analysis is accentuated by the now looming two-year deadline to assert the LBO Claims.

**WHEREFORE**, for the reasons presented herein and in the Committee's Original

Motion and briefs in support of the Original Motion , the Committee respectfully requests that

the Court grant the Committee standing to pursue the LBO Claims and such other relief as the

Court deems appropriate.

Dated: Wilmington, Delaware
September 14, 2010

ZUCKERMAN SPAEDER LLP

Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE  19801
Telephone:  (302) 427-0400
Facsimile:  (302) 427-8242

- and -

Graeme W. Bush, Esquire
James Sottile, Esquire
Andrew N. Goldfarb, Esquire
1800 M Street, N.W., Suite 1000
Washington, DC  20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

Special Counsel to the Official Committee
of Unsecured Creditors
