## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: Sept. 22, 2010, 1:30 P.M.**<br>**Objection Deadline: Sept. 20, 2010, 4:00 P.M.** |
| | **Ref. No. 5669** |

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF AURELIUS CAPITAL MANAGEMENT, LP TO DISQUALIFY CHADBOURNE & PARKE LLP FROM ACTING ON BEHALF OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN MATTERS IN WHICH IT HAS CONFLICTS OF INTEREST

The Official Committee of Unsecured Creditors (the **"Committee"**) of Tribune Company and its various debtor-subsidiaries (collectively, the **"Debtors"** or **"Tribune"**), respectfully submits this objection (the **"Objection"**) to the Motion of Aurelius Capital Management, LP to Disqualify Chadbourne & Parke LLP From Acting on Behalf of the Official Committee of Unsecured Creditors in Matters in Which it Has Conflicts of Interest (the **"Aurelius Motion"**), and represents as follows:

### PRELIMINARY STATEMENT

1.     Twenty-one months after the Committee selected Chadbourne & Parke LLP (**"Chadbourne"**) as its co-counsel and Chadbourne disclosed representations of various case parties in unrelated matters, nineteen months after the Court approved Chadbourne's retention and found that it had no adverse interest and was disinterested, more than twelve months after

the Court approved the retention and mandate of Zuckerman Spaeder LLP ("**Zuckerman**") as special counsel, and nine months after Aurelius Capital Management, LP ("**Aurelius**") first appeared in these cases, but only days before mediation is to commence, Aurelius moves to disqualify Chadbourne. Aurelius professes to be shocked to discover that Chadbourne and Zuckerman are doing exactly what they said they would do in their Court-approved retention applications -- working together on the investigation and negotiation of claims, including against parties Chadbourne represents in unrelated matters. The Aurelius Motion must be denied because this Court's approval of the retentions of Chadbourne and Zuckerman, after full disclosure of Chadbourne's connections and potential conflicts and the scope of its representation of the Committee, was -- and remains -- entirely correct.

2.     From the inception of the Debtors' bankruptcy cases, it was widely recognized that the major issue in the case was the investigation and resolution of certain potential claims and causes of action in favor of the Debtors' estates related to the 2007 leveraged buyout of Tribune. From the outset, Chadbourne disclosed ongoing representations of certain parties, in matters unrelated to the Tribune bankruptcy cases, who appeared to be creditors of Tribune or appeared to otherwise be involved in the case (the "**Case Parties**"). Chadbourne also disclosed that it had obtained waivers with respect to two Case Parties who were Committee members. Those waivers permitted Chadbourne to investigate claims against those two Case Parties and to negotiate settlements with them but not to sue them. Chadbourne further disclosed that it would not represent the Committee with respect to the investigation or prosecution of potential claims against certain other Case Parties and that the Committee would instead be represented by co-counsel as to those potential claims. The U.S. Trustee was satisfied with Chadbourne's

disclosures and the terms of Chadbourne's retention, no party in interest objected to the Committee's selection of Chadbourne as its counsel, and the Court approved Chadbourne's retention upon the full and complete record before it.

3.     Five months after Chadbourne's retention was approved, the Committee determined to retain Zuckerman as special counsel that could pursue litigation against those Case Parties that Chadbourne could not sue.  Zuckerman's retention application made explicit that while Zuckerman would work with Chadbourne on the investigation and negotiation of claims against those certain Case Parties that Chadbourne could not sue, Zuckerman would bring any litigation against those Case Parties on its own.  Once again, the U.S. Trustee was satisfied with the Committee's process, no objections were interposed, and the Court approved the Committee's retention of Zuckerman as its special counsel.  About five months later, Zuckerman filed, on behalf of the Committee, a motion for standing to sue the lenders of Tribune for actions related to the 2007 leveraged buyout transactions.

4.     On September 12, 2010, about a year after Zuckerman's retention was approved, Aurelius moved to disqualify Chadbourne.  The Aurelius Motion does not assert that new facts have suddenly come to light with respect, for example, to the disclosures made in Chadbourne's application.  Instead, the Aurelius Motion claims that Chadbourne is prohibited from doing exactly what the retention applications approved by this Court said it would do -- investigate and negotiate claims against two Case Parties that it represents in unrelated matters.  In addition, the Aurelius Motion suggests that Zuckerman was failing to do its job as special counsel because it was working with Chadbourne, as its retention application said it would, on the investigation and

negotiation of claims against these Case Parties.  To ask the obvious rhetorical question: how can this be?

5.    The Aurelius Motion, one of two motions filed by Aurelius on the eve of court ordered mediation, should be viewed for what it is: a tactical move by a creditor unhappy with positions taken by the Committee.  The Aurelius Motion is designed to disrupt the Committee's ability to participate effectively in the upcoming mediation by depriving it of the knowledge and experience of its chosen co-counsel.  The fact that one creditor disagrees with positions taken by the Committee is not, and cannot, be a basis for disqualifying counsel who has been actively participating in investigations and plan negotiations for almost two years, after full disclosure of connections and potential conflicts and the roles of counsel, retention of special counsel, and approval of all of those steps by this Court.  Whatever its motives, Aurelius cannot be permitted to dictate the Committee's choice of counsel.

6.    In short, the matters raised in the Aurelius Motion have been addressed by the Committee (through, among other things, disclosures and the retention of Zuckerman) and by the Court.  Those prudent steps and disclosures led to prior judicial determinations that the Committee's professionals are not adverse and are disinterested.  Nothing has changed since those retentions were approved, except to make clear that the interests of a single entity with a parochial position are not aligned with the interests of the Committee -- a Committee whose members act as fiduciaries for all general unsecured creditors.  For these reasons, and for the reasons set forth more fully below, the Aurelius Motion is without merit and should be denied.

## BACKGROUND

**A.    Debtors' Filing and Appointment of Committee**

7.      On December 8, 2008, the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").[1]

8.      On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee.    The Committee immediately conducted interviews to select counsel.

9.      During Chadbourne's interview by the Committee and during its initial meeting with the Committee, Chadbourne disclosed that it had connections with certain Case Parties who were involved in the 2007 leveraged buyout transactions (the "**Leveraged ESOP Transaction**") and that Chadbourne would be unable to bring claims against those Case Parties.

**B.    Retention of Committee Counsel**

10.     On January 16, 2009, the Committee filed an Application to Employ and Retain Chadbourne & Parke LLP as Co-Counsel to the Official Committee of Unsecured Creditors and the attached LeMay Affidavit in Support of Chadbourne Retention Application (Docket No. 243) (the "**Chadbourne Application**").  The Chadbourne Application disclosed, among other things, that Chadbourne represented certain Case Parties (including Committee members JPMorgan Chase & Co. ("**JPMC**") and Merrill Lynch & Co. ("**Merrill Lynch**")) in matters unrelated to this case.

---

[1]   An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code on October 12, 2009.

11.     On February 16, 2009, after having met with the U.S. Trustee to discuss the terms

of its retention, conflicts issues and the process the Committee wished to follow to ensure it was

properly and appropriately represented, Chadbourne filed its First Supplemental Affidavit in

Connection with the Chadbourne Application (Docket No. 395) (the **"First Supplemental**

**Affidavit"**).  In the First Supplemental Affidavit, Chadbourne noted that it had obtained certain

waivers from JPMC and Merrill Lynch with respect to investigating and negotiating matters

related to the Leveraged ESOP Transaction.  Chadbourne further acknowledged in the First

Supplemental Affidavit that it was not able to initiate or pursue litigation against JPMC or

Merrill Lynch.  With respect to certain other Case Parties who were also clients of Chadbourne

(including Citigroup, Merrill Lynch, and Morgan Stanley), Chadbourne reported that it had

advised the Committee that it could not investigate or litigate against such clients and that such

work would need to be handled by co-counsel, Landis, Rath & Cobb LLP (**"Landis"**), or by

special counsel, should one be retained.  *See* First Supplemental Affidavit at ¶ 8.

12.     No formal objections were raised to the Chadbourne Application and, based on

the First Supplemental Affidavit, the U.S. Trustee was satisfied that the Committee's selection of

professionals was appropriate.  On February 20, 2009, the Court entered its order (Docket No.

429) (the **"Chadbourne Retention Order"**) granting the Chadbourne Application.   The

Chadbourne Retention Order, among other things, found that upon consideration of the

Chadbourne Application and all pleadings related thereto, including the First Supplemental

Affidavit, it appeared that "Chadbourne neither holds nor represents any interest adverse to the

Debtors' estates; and it further appear[s] that Chadbourne is a 'disinterested person,' as that term

is defined in section 101(14) of the Bankruptcy Code . . . ."  *See* Chadbourne Retention Order at

p.2. Based on these considerations and others, the Chadbourne Application was granted.[2] *See id.*

13.    Five months later, the Committee decided to retain Zuckerman as special counsel "to assist in the further investigation of the Leveraged ESOP Transaction" and to negotiate with the lenders, and should negotiations not be successful, "to bring any such causes of action against the lenders as may be deemed appropriate by the Creditors' Committee." *See* Application of the Official Committee of Unsecured Creditors of Tribune Company, *et al.*, Pursuant to 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014, for an Order Authorizing the Employment and Retention of Zuckerman Spaeder as Special Counsel Nunc Pro Tunc to August 6, 2009 (Docket No. 1953) (the "**Zuckerman Application**").    The Zuckerman Application made explicit that Zuckerman would assist Chadbourne in the further investigation of the Leveraged ESOP Transaction and in related negotiations.    Absent a consensual resolution, Zuckerman would bring any litigation against the lenders. *See id.* at ¶¶ 9-10.    No objections were filed to Zuckerman's proposed retention by the Committee.    On September 3, 2009, the Court entered an order authorizing the retention of Zuckerman as special counsel to the Committee (Docket No. 2088) (the "**Zuckerman Retention Order**").

14.    Subsequent to the Zuckerman Retention Order, two motions were filed to appoint an examiner in the Tribune bankruptcy cases. *See* Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, its Affiliates, and Certain Third Parties, or

---

[2]    The Chadbourne Retention Order included a reservation of rights requested by the U.S. Trustee, which stated: "Nothing in this Order is intended or shall be deemed to prejudice or augment the rights of the Acting United States Trustee under 11 U.S.C. §§ 328(c), 330 or 331 or applicable law in the event that the Committee seeks to employ additional law firms to investigate and/or pursue claims and causes of action related to the 2007 leveraged buyout." *See* Chadbourne Retention Order, p.2.

Alternatively, for the Appointment of an Examiner (dated August 26, 2009) (Docket No. 2031) (the "**First Examiner Motion**") and Motion of Wilmington Trust Company for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (dated January 13, 2010) (Docket No. 3062) (the "**Second Examiner Motion**").

15.    Both the First and the Second Examiner Motions alleged that conflicts of the Debtors and the Committee's professionals made appointment of an examiner necessary.   In responding to the First and the Second Examiner Motions, the Committee painstakingly reviewed the factual case record with respect to its professionals, noting in its first response that the "retention-related documents demonstrate that the Creditors' Committee Counsel made all required bankruptcy and ethical disclosures and confined its efforts -- through the use of co-counsel -- to those tasks where there could be no legitimate question about its motivations or loyalties."[3]  Attached as Exhibit "A" to the Committee's Response to First Examiner Motion was a declaration by Graeme W. Bush of Zuckerman (the "**Bush Declaration**").   The Bush Declaration stated, in relevant part, the following:

> Zuckerman will represent the Committee in any litigation that the Committee determines to pursue, with authorization from the Court, challenging the [Debtors' obligations under the so-called Senior Credit Facility and Bridge Facility entered into by the Debtors in connection with the LBO (the "**Obligations**")].   Second, the Committee is looking to Zuckerman to provide an independent analysis and view with respect to the merits and strength of defenses and counterclaims with respect to the Obligations and to provide an independent analysis and view with respect to any proposed settlement of the Obligations. . . . Zuckerman has been

---

[3]    *See* Response and Partial Objection of the Official Committee of Unsecured Creditors to Motion of Law Debenture Trust Company of New York for Leave to Conduct Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure of Tribune Company, its Affiliates, and Certain Third Parties, or Alternatively, for the Appointment of an Examiner at ¶ 17 (dated September 17, 2009) (Docket No. 2136) (the "**Committee's Response to First Examiner Motion**"); *see also* Objection of the Official Committee of Unsecured Creditors to Motion of Wilmington Trust Company for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code at ¶¶ 21-28 (dated February 11, 2010) (Docket No. 3360).

> informed by the Committee that there are no restrictions on its ability to
> follow up on areas that we conclude merit further work or to pursue legal
> theories or factual investigations that we conclude are required in order to
> form a complete and independent view of the Obligations.

Bush Declaration at p.2.

16.    On February 1, 2010, Zuckerman filed the Motion of the Official Committee of

Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to

Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates (Docket No.

3281) (the "**February 1, 2010 Standing Motion**").  The February 1, 2010 Standing Motion,

which was supplemented on September 14, 2010, sought authority for the Committee, acting

through Zuckerman, to file suit against certain pre-petition lenders of Tribune on behalf of the

Debtors' bankruptcy estates.

**C.    Appointment of Examiner**

17.    The Second Examiner Motion, filed by Wilmington Trust Company, was

ultimately agreed to in the Agreed Order Directing the Appointment of the Examiner (Docket

No. 4120).  On April 30, 2010, the U.S. Trustee appointed Kenneth N. Klee as Examiner

(Docket No. 4212), and on May 11, 2010, the Court entered a supplemental order establishing

the scope of the required examination (Docket No. 4321).

18.    On July 26, 2010, the Examiner filed the Report of Kenneth N. Klee, as

Examiner, dated July 26, 2010 (Docket Nos. 5130-33) (the "**Examiner's Report**").

19.    Following the release of the Examiner's Report, the parties tried to reach

resolution of the issues through further intense and difficult negotiations.  To date, those

negotiations have not been successful.

**D.      Aurelius and Recent Case Actions**

20.      Aurelius first appeared at a hearing in the case as early as December 1, 2009. Aurelius's first Court filing (at that time, Aurelius was represented by different counsel; no notice of appearance appears to have been filed before that first Court filing) was made on February 9, 2010. *See* Objection of Aurelius Capital Management, LP to Motion of the Official Committee of Unsecured Creditors for Entry of Order Authorizing Filing of Exhibit Under Seal (Docket No. 3352).

21.      On August 14, 2010, Aurelius's counsel sent an e-mail to counsel to the Committee conveying Aurelius's ostensible concern with the process the Committee was pursuing and raising the issue of Chadbourne's alleged conflicts.   In the e-mail, Aurelius's counsel asked to meet with the Committee.

22.      On August 19, 2010, Aurelius made an oral presentation to the Committee.  The presentation provided by Aurelius is subject to the protections of Rule 408 of the Federal Rules of Evidence, but no limitations were placed on the scope or length of Aurelius's presentation.

23.      On September 2, 2010, Aurelius's counsel sent a letter to counsel to the Committee regarding many of the same matters originally raised in his previous e-mail.  *See* Aurelius Motion, Exhibit B.

24.      On September 13, 2010, before the Aurelius Motion was filed, the Committee sent a reply letter to Aurelius in response.  *See* Aurelius Motion, Exhibit C.

25.      On Monday, September 13, 2010, the Committee filed the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Certain Claims of the Debtors' Estates (Docket

No. 5668) (the **September 13, 2010 Standing Motion**," together with the February 1, 2010

Standing Motion, the **"Standing Motions"**).  On Tuesday, September 14, 2010, the Committee

(through Zuckerman) filed a supplement to its February 1, 2010 Standing Motion (Docket No.

5698).  By those two Standing Motions, and the attached complaints, the Committee is seeking

to prosecute all of the causes of action identified in the Examiner's Report.

## DISCUSSION

26.     The Aurelius Motion seeks to disqualify counsel selected by the Committee some

21 months ago.  The Aurelius Motion ignores numerous critical facts:

- the connections and alleged "conflicts" at issue were fully disclosed to the Committee, the Court and to all parties when Chadbourne was retained, and appropriate steps were put in place to address any possible concerns;

- the Committee subsequently retained special counsel (Zuckerman) to address any issues that might be created by the Committee's desire to prosecute certain causes of actions that could not be prosecuted by Chadbourne;

- Aurelius makes no showing that Chadbourne has taken any actions that were not fully consistent with the Chadbourne Application and the Chadbourne Retention Order;

- the Committee's membership currently consists of eight sophisticated Case Parties,[4] all of whom are represented by outside counsel or whose internal representative is a lawyer and each, unsurprisingly, with its own highly developed views of issues;

- the fact that the Committee has not selected the course of action preferred by Aurelius does not make the Committee's actions improper;

- before the Aurelius Motion was even filed, the Committee had already filed the Standing Motions (with proposed complaints attached) to bring the very actions that Aurelius claims are being ignored; and

- given that Chadbourne has been involved in the case for almost 21 months and has spent thousands of hours immersing itself in the detailed intricacies of this

---

[4]     JPMC has recused itself and does not participate in any discussions related to the Leveraged ESOP Transaction.

complex case, the Committee will face enormous prejudice if its counsel of choice is barred from participating in the mediation and the case.

I.    **The Aurelius Motion Should Be Dismissed Because it Fails to Satisfy FRCP 60(b)**

27.    Aurelius's main legal argument is that Chadbourne should be disqualified under section 1103(b) of the Bankruptcy Code because, as disclosed in its retention application, it currently represents certain significant Case Parties in matters unrelated to the Tribune bankruptcy cases.    This Court has already determined in its order granting Chadbourne's retention application that Chadbourne (i) does not hold an adverse interest within the meaning of section 1103(b), and (ii) is disinterested.    Aurelius effectively seeks to overturn that determination relying solely on facts that were fully disclosed to the Court and all parties at the time -- that Chadbourne represented certain Case Parties on unrelated matters.    In the absence of new or undisclosed facts, this Court's prior determination cannot be disturbed.

28.    As the Chadbourne Retention Order is a final order,[5] and as Aurelius does not begin to meet the requirements of Rule 60(b) of the Federal Rules of Civil Procedure on the basis of "newly discovered evidence" (or for any other reason set forth in Fed. R. Civ. P. 60(b)), the Aurelius Motion should be summarily denied.

II.    **This Court's Finding that Chadbourne Does Not Hold an "Adverse Interest" Under Section 1103 Remains Correct**

29.    A review of the statutory language, the cases, and the legislative history demonstrates that the proscription on having an adverse interest in section 1103(b) does not preclude committee counsel's representation of parties with an "adverse interest" when counsel's

---

[5]    "Orders determining the appointment of professionals in a bankruptcy case are final." *In re Adelphia Comm'cns. Corp.*, 333 B.R. 649, 657 (S.D.N.Y. 2005).

representation is on matters unrelated to the bankruptcy case. Here, Chadbourne represents Case Parties only on unrelated matters and, accordingly, does not run afoul of section 1103(b).

30.     In relevant part, section 1103(b) of the Bankruptcy Code provides that "[a]n attorney or accountant employed to represent a committee appointed under section 1102 of this title *may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case.*"

31.     Numerous courts have confirmed that section 1103(b) does not apply if committee counsel "represents an entity with an adverse interest *in a matter unrelated to the bankruptcy case* or in a matter that pre-dates [counsel's] representation of the [c]ommittee." *See In re Nat'l Century Fin. Enters., Inc.,* 298 B.R. 112, 117 (Bankr. S.D. Ohio 2003) (emphasis added) (citing *Exco Res. v. Milbank* (*In re Enron*), No. 02-CV-5638 (BSJ), 2003 WL 223455, *5 (S.D.N.Y. Feb. 3, 2003)); *see also In re Firstmark Corp.*, 132 F.3d 1179, 1182-83 (7th Cir. 1997) (attorney not disqualified from representing a committee when represented both committee and debtor's former senior executive who also received a preferential transfer, where representation of the executive was unrelated to case at issue); *In re Walnut Equip. Leasing Co.,* 213 B.R. 285, 289 (Bankr. E.D. Pa. 1997) ("Significantly, . . . [section 1103 does] not bar such [committee] professionals from representing other entities in matters unrelated to the case."); *Daido Steel Co. v. Committee of Unsecured Creditors*, 178 B.R. 129, 131 (D. Ohio 1995). The legislative history of section 1103(b) also makes explicit that "[i]t does not require the attorney to cease representation of the creditors in matters unrelated to the case." H.R. Rep. No. 595, 95th Cong., 1st Sess. 104-05 (1977), *reprinted in,* 1978 U.S.C.C.A.N. 5787, 6065-6067 (1977).

32.     Chadbourne fully disclosed at the outset of this case that it represented various Case Parties in unrelated matters. *See* discussion *infra* at ¶¶ 10-12. Aurelius does not contend that Chadbourne represents any Case Parties in matters related to this bankruptcy,[6] and its argument therefore fails at the threshold. On this basis alone, the Aurelius Motion should be denied.

33.     The cases and facts cited by Aurelius in support of its argument that section 1103(b) supposedly prohibits Chadbourne from being involved in any and all Leveraged ESOP Transaction matters do not, in fact, support Aurelius's arguments at all.

34.     In particular, Aurelius relies on cases where committee counsel represented a creditor in a matter **related** to the bankruptcy, in sharp contrast to this case where Chadbourne represents Case Parties on **unrelated** matters. For example, Aurelius cites *In re 3dfx Interactive*, 2007 Bankr. LEXIS 1941 (Bankr. N.D. Cal. 2007) to support its claim that section 1103(b) prohibits representing two case parties in different case matters. But that case is clearly not on point. There, counsel for a creditors' committee represented the committee in mediation while, at the same time, counsel defended the chair of the creditors' committee in an action in the same bankruptcy case brought by the chapter 11 trustee. The court found, not surprisingly, that this "dual representation" in the same case violated section 1103. The case has no application to Chadbourne's representation of Case Parties in unrelated matters, because those representations are expressly permitted by section 1103(b).

---

[6]   Aurelius instead complains that Chadbourne has done what it said it would do in its retention application and what was contemplated by Zuckerman's retention application -- work together with Zuckerman on investigating the Leveraged ESOP Transaction and negotiating towards a resolution of lender claims. There is no dispute that, as reflected in the time records cited by Aurelius, *see* Aurelius Motion at pp.11-12, Zuckerman and Chadbourne have both participated in the investigation of the Leveraged ESOP Transaction and the negotiation of lender claims.

35.    Aurelius's reliance on the *Project Orange* case is similarly unavailing.  *In re Project Orange Assocs.*, 431 B.R. 353 (Bankr. S.D.N.Y. 2010) involves the attempted retention of counsel *by the debtor* under section 327 of the Code at the outset of a bankruptcy case where the proposed counsel acknowledged, and then recanted, having a conflict with one of the main case parties.  *See id.* at 368-69.  Again, these are not our facts.  Our case involves the attempted disqualification of committee counsel and therefore section 1103(b) is the test.  The test is not under the significantly more stringent standard of section 327 that applies to debtor's counsel.  *See In re eToys, Inc.*, 331 B.R. 176, 192 n.5 (Bankr. D. Del. 2005) (describing the "higher standard" for retention of debtors' counsel).  Moreover, in sharp contrast to *Project Orange,* where the Court was considering retention at the beginning of a case, Aurelius here seeks to disqualify Chadbourne almost 21 months into an extraordinarily complex case.  Here the Court has already approved the retention of Chadbourne after full disclosure of the potential conflicts; in *Project Orange*, the Court denied retention of debtors' counsel on a record where, among other things, the conflict disclosures were misleading, incomplete and contradictory.  *See* 431 B.R. at 368-69.  Thus, *Project Orange*, which involved a different statutory test and dramatically different facts, does not support Aurelius's position.

36.    Section 1103(b) has no application here because Chadbourne represents Case Parties only in matters unrelated to the Tribune bankruptcy cases.  The Court's order approving Chadbourne's retention and finding that Chadbourne holds no adverse interest in connection with the case was and remains entirely correct.[7]

---

[7]    Aurelius describes "two egregious examples" of "Chadbourne's active involvement in steering the Committee towards a settlement of the LBO-Causes of Action" that demonstrate why the relief it seeks is necessary.  *See* Aurelius Motion at ¶ 46.  Neither shows anything of the sort.  Instead, these examples show only that Aurelius

## III.    The Committee's Choice of Counsel Should Be Respected

37.    In deciding the Aurelius Motion, the Court should also defer to the wishes of a

party to select and retain its own counsel, a paramount right in our legal system. *See, e.g., In re*

*Enron Corp.*, No. 01-16034 (AJC), 2002 WL 32034346, *4 (Bankr. S.D.N.Y. May 23, 2002)

("One's choice of counsel is entitled to great deference."); *In re Caldor, Inc.*, 193 B.R. 165, 170

(Bankr. S.D.N.Y. 1996) ("Public policy favors permitting parties to retain professionals of their

choice."); *In re Brennan*, 187 B.R. 135, 149-50, 154 (Bankr. D. N.J. 1995) ("[T]here is a

presumption in favor of a party's right to counsel of choice.") (*citing Panduit Corp. v. All States*

*Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1576-77 (Fed. Cir. 1984)); *In re Heck's, Inc.*, 83 B.R. 410,

416 (S.D. W. Va. 1988) ("It has long been held that '[t]he relationship between attorney and

client is highly confidential, demanding personal faith and confidence in order that they may

work together harmoniously.  Only in the rarest of cases should the [client] be deprived of

---

is bringing this Motion because it disagrees with the Committee's judgments on how to best serve the interests of all the creditors it acts for.

Aurelius begins by reviewing its perception of the July 29, 2010 hearing at which the Committee argued for maintaining the then-existing deadline to vote on the Settlement Plan. *See* Aurelius Motion at ¶¶ 21-24.  A review of the full July 29, 2010 transcript demonstrates that Committee counsel stated that it preferred that the full Examiner Report would be released very promptly while noting that the summary of that report already provided to creditors was sufficient for solicitation purposes. *See* Transcript of Record at 28, *In re Tribune Co., et al.*, No. 08-13141 (KJC) (Bankr. D. Del. Jan. 27, 2010).  This was an unremarkable reflection on the legal standard.

In fact, essentially the same comment was made by the Court earlier in the hearing: "So I'm not sure, for voting purposes, really what else needs to be aired to enable people entitled to vote to have a meaningful -- to have adequate information. It's really, in my mind, for confirmation . . . ." *Id.* at pp.17-18.  That Aurelius would have preferred for Committee counsel to take a different position in argument shows only that litigation positions of one creditor may differ from those of a creditors' committee -- a point that is hardly surprising and does not remotely support disqualification.

Next, Aurelius argues (in a partially redacted part of the Aurelius Motion that is the subject of the Objection of the Official Committee of Unsecured Creditors to Aurelius's Sealing Motions) that certain other actions taken by Chadbourne hurt non-lender creditors. *See* Aurelius Motion at ¶¶ 27-28.  Leaving aside Aurelius's improper and misleading inclusion in its (even if redacted) court papers of its own inaccurate and hearsay version of confidential settlement discussions to which Aurelius was not a party, Aurelius's argument here amounts (again) to nothing more than -- at most -- a disagreement with the Committee's approach to settlement negotiations.

selecting his own counsel . . . .'") (citation omitted).   Aurelius is not even a member of the

Committee, and certainly has no mandate to dictate who the Committee selects as its counsel.

38.    This principle gains even greater significance when the Committee's selection of

counsel is being challenged months after the fact.  *See In re Enron*, 2002 WL 32034346 at *4

(where party filed disqualification motion *60 days* after committee counsel's application was

approved, court noted the "inconsistency with the concern raised" and the "lack of urgency" in

prosecution and stated that the delay would provide a separate ground to deny the relief sought).

Moreover,   courts   should   approach   disqualification   with   great   reluctance   because

"disqualification has an immediate adverse effect on the client by separating him from counsel of

his choice, and . . . disqualification motions are often interposed for tactical reasons." *See Bd. of*

*Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (emphasis added); *see also Integrated*

*Health Servs. v. THCI, Co. LLC*, 327 B.R. 200, 204 (D. Del. 2005) (district court emphasizing

that motions to disqualify are generally disfavored).

39.    In the present case, the Aurelius Motion was filed about 21 months (not two

months, as in *Enron*) after Chadbourne filed its application and at least nine months after

Aurelius became involved in the case.  To paraphrase the *Enron* court, the lack of urgency in

prosecuting a disqualification motion (based on facts that have been on record during the full

tenure of Aurelius's involvement) seems totally inconsistent with the concerns raised and

provides an additional ground on which to deny the requested relief. *See In re Enron*, 2002 WL

32034346 at *4.  Here, the adverse effect on the Committee could not be more dramatic -- the

parties will begin a crucial mediation of the major case issues in less than a week.  That timing

itself strongly suggests that the Aurelius Motion was, as the *Nyquist* court observed, "interposed

for tactical reasons." The threat of disqualification is clearly being used here to pursue a tactical

objective. The Committee's choice of counsel, and the Court's approval of that choice, should be

honored.

## IV.    This Court's Finding That Chadbourne Is "Disinterested" Remains Correct

40.    Aurelius also argues that Chadbourne must satisfy the "disinterested" standard set

forth in section 328(c) of the Bankruptcy Code and that Chadbourne does not do so. Section

328(c) on its face says nothing about retention of Committee counsel, which is covered by

section 1103(b).[8]  A number of courts have therefore held that Committee counsel need only

satisfy the requirements of section 1103(b) to be retained. *See, e.g., In re eToys, Inc.*, 331 B.R.

176, 192 n.5 (Bankr. D. Del. 2005) ("Committee counsel, retained under section 1103, need only

show it does not represent an interest adverse to the estate; in fact, committee counsel is

specifically authorized to represent a creditor in the case so long as its interests are not adverse to

the committee's. . . . In contrast, debtor's counsel, retained under section 327, must establish that

it is disinterested, which is a higher standard."); *In re Enron*, 2002 WL 32034346 at *7  ("It

should be observed that the standards for the retention of [debtor] professionals under § 327(a)

are different from the standards for the retention of [committee] professionals under § 1103(b).")

(alterations in original); *In re Firstmark Corp.*, 132 F.3d 1179, 1182-83 (7th Cir. 1997) (court of

appeals rejecting the applicability of section 327 to the retention of committee professionals).

41.    The plain language of section 328(c) and the weight of the case law demonstrate

that committee counsel need not be disinterested to be retained under section 1103.    It

---

[8]    Section 328(c) states:

   [T]he court may deny allowance of compensation for services and reimbursement of expenses of a
   professional person employed under section 327 or 1103 of this title if, at any time during such
   professional person's employment ..., such professional person is not a disinterested person . . . .

necessarily follows that committee counsel cannot be disqualified on the ground that they are not disinterested.   As the Aurelius Motion seeks to disqualify Chadbourne, the "disinterested" requirement of section 328(c) has no application here.

42.     Aurelius relies on a single wrongly decided case to support its argument that the disinterested standard applies to retention (and disqualification) of committee counsel, *In re Greystone Holdings, LLC,* 305 B.R. 456 (Bankr. N.D. Ohio 2003).   That decision finds no support in the language of section 328(c) and is against the weight of the case law.   However, even if *Greystone* were correctly decided, and section 328(c)'s disinterested requirement applies to retention of committee counsel, this standard is also satisfied.

43.     "Disinterestedness" is defined in section 101(14) of the Bankruptcy Code as, in relevant part, "a person that does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."   While "adverse interest" is not defined in the Bankruptcy Code, courts have used the following definition:

   a.  to possess . . . any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

   b.  to possess a predisposition under circumstances that render such a bias against the estate.

*See In re Arochem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999).

44.     The adverse interest must be "material,"[9] and mere speculation cannot establish an adverse interest.[10] Here, the actual facts, as opposed to Aurelius's "horrible imaginings,"[11] show that Chadbourne's representation of the Committee has not been affected by its representation of certain Case Parties in unrelated matters.   Chadbourne has investigated the Leveraged ESOP Transaction (with Zuckerman), the fruits of which (all 4 million pages of discovered documents) ultimately enabled the Examiner to issue his Examiner's Report.   Meanwhile, the Committee (through Zuckerman) filed the February 1, 2010 Standing Motion to allow it to sue the lenders in the Leveraged ESOP Transaction and the Committee (through Chadbourne, Zuckerman, and Landis) filed the September 13, 2010 Standing Motion to allow it to sue certain third parties, including officers, directors, shareholders and Sam Zell.   Aurelius provides no evidence to support its innuendoes that Chadbourne has a materially adverse interest, and Chadbourne's work representing the Committee establishes that it does not.

45.     In granting Chadbourne's retention application, this Court determined that Chadbourne is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code. Aurelius points to no new or previously undisclosed facts that could support reopening that determination and its argument therefore fails at the outset.   Chadbourne's demonstrated

---

[9]   *See, e.g., In re Pinebrook, LLC*, No. 09-11212 (RGM), 2009 Bankr. LEXIS 3753, *5-6 (Bankr. E.D. Va. Nov. 18, 2009) (court holding that only *materially* adverse interests compromise disinterestedness under section 101(14)(C), "Congress clearly anticipated the possibility of there being some adversity.  Congress clearly felt that not every adversity was a disqualification.  The adversity must be material.").

[10]   This Court, among others, has also made clear that mere speculation or even the appearance of conflict does not implicate the "adverse interest" criteria. *See, e.g., In re eToys*, 331 B.R. at 197 (in case regarding committee counsel, court stated: "While the relationships may raise an appearance of a conflict, they are not actual conflicts and disqualification is not warranted."); *In re Muma Services, Inc.*, 286 B.R. 583, 590 (Bankr. D. Del. 2002) ("[T]he Third Circuit has held that disqualification of counsel *cannot* be premised on the appearance of conflict alone.") (citation omitted) (emphasis in original).

[11]   *See In re Marvel Entertainment Group*, 140 F.3d 463, 477 (3d Cir. 1998), *quoting In re BH&P, Inc.*, 949 F.3d 1300, 1313 (3d Cir. 1991)("[I]t must be made clear that '[h]orrible imaginings alone cannot be allowed to carry the day. . . .'").

satisfaction of the adverse interest standard, once again establishes that it satisfies the disinterested standard now.

## V.    The Committee's Retention of Zuckerman as Special Counsel

46.    Zuckerman was retained by the Committee to assist in the investigation of the Leveraged ESOP Transaction, to assist in the related negotiations with lenders and, should negotiations not be successful, to bring actions against the lenders. *See* Zuckerman Application at ¶ 10.  The retention of special counsel was not only intended to arm the Committee with counsel that was in a position to sue the lenders but, also, avoid any appearance that the Committee did not have access to the advice of independent counsel.  This latter justification is, in fact, very similar to the justification recently provided by the Special Committee of the Debtors' Board of Directors (the **"Special Committee"**) in its application to retain Jones Day as special counsel. *See* Application for an Order Authorizing the Retention of Jones Day as Special Counsel for the Special Committee of Tribune Company's Board of Directors (dated August 30, 2010) (Docket No. 5562) (the **"Jones Day Application"**).

47.    The Debtors' Special Committee was formed to provide the independent directors advice with respect to, primarily, Leveraged ESOP Transaction cause of action issues. *See* Jones Day Application at ¶ 7.  Jones Day is not to supplant the Debtors' current co-counsel (Sidley Austin and Cole, Schotz) but, rather, is retained to provide the Special Committee directors with independent professional advice. *See id.* at ¶ 11.  Based on these representations, the Jones Day Application was approved by the Court on September 15, 2010. *See* Docket No. 5704.

48.    Courts have stated that the approach taken by the Committee with Chadbourne and the approach taken by the Debtors with Jones Day is an effective way to address issues like

those raised herein. *See, e.g., In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002) (listing special counsel as a "procedure to address conflict of interest issues"), *aff'd Exco Res. v. Milbank* (*In re Enron*), No. 02-CV-5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003). In fact, it is now widely prevalent, if not standard practice to obtain special counsel for creditors' committees in major bankruptcy cases. *See, e.g., In re Spansion Inc.*, No. 09-10690 (KJC) (Bankr. D. Del. 2009); *In re American Home Mortgage Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del 2007); *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. 2008); *In re Chrysler LLC*, No. 09-50002 (AJG) (Bankr. S.D.N.Y. 2009); *In re General Motors Corp.*, No. 09-50026 (REG) (Bankr. S.D.N.Y. 2009); *In re Value City Holdings, Inc.*, No. 08-14197 (JMP) (Bankr. S.D.N.Y. 2008).

49.    In this case, the Committee retained special counsel to commence, if needed, any litigation against the lenders and "to provide an independent analysis and view with respect to the merits and strength of defenses and counterclaims with respect to the [Leveraged ESOP Transaction] Obligations and to provide an independent analysis and view with respect to any proposed settlement of the [Leveraged ESOP Transaction] Obligations." *See* Bush Declaration at p.2. Zuckerman has in fact provided such independent analysis and views to the Committee. *See id.* Aurelius cites no evidence to the contrary. Accordingly, the Committee and Chadbourne have not only satisfied the requirements of the applicable rules but have also satisfied any legitimate concerns with appearances.

50.   WHEREFORE, the Committee respectfully requests that the Court deny the Aurelius Motion in its entirety and grant such other and further relief as may be just and proper.

Dated: September 20, 2010
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

- and -

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

_Counsel to the Official Committee of Unsecured Creditors_

- and -

Graeme W. Bush
James Sottile
**ZUCKERMAN SPAEDER LLP**
1800 M. Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

_Special Counsel to the Official Committee of Unsecured Creditors_