## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, et al., | ) | Case No. 08-13141 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date September 22, 2010** |
| | ) | **Response Date:  September 20, 2010** |
| | ) | **Related Docket No. 5669** |

**RESPONSE OF DEUTSCHE BANK TRUST COMPANY AMERICAS,
INDENTURE TRUSTEE UNDER THE 1992 INDENTURE, THE 1995
INDENTURE AND THE 1997 INDENTURE TO THE MOTION OF AURELIUS
CAPITAL MANAGEMENT, LP TO DISQUALIFY CHADBOURNE & PARKE LLP
FROM ACTING ON BEHALF OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN MATTERS IN WHICH IT HAS CONFLICTS OF INTEREST**

Deutsche Bank Trust Company Americas ("DBTCA" or the "Indenture Trustee"),

successor trustee under the 1992 Indenture, the 1995 Indenture and the 1997 Indenture (as herein

defined) hereby files this response (the "Response") to the motion filed by Aurelius Capital

Management, LP ("Aurelius") for entry of an order (i) disqualifying Chadbourne & Parke LLP

("Chadbourne") from advising, representing or otherwise acting as legal counsel for the Official

Committee of Unsecured Creditors in all matters in which it has conflicts of interest, including,

but not limited to, (a) the upcoming mediation pursuant to this Court's Order Appointing

Mediator, entered September 1, 2010 [Docket No. 5591], and (b) any potential or actual LBO-

Related Cause of Action[1] or settlement thereof, and any Chapter 11 plan to the extent it deals

with the foregoing, and (ii) directing that special conflicts counsel to the Committee, Zuckerman

Spaeder LLP ("Zuckerman"), solely represent the Committee in such matters without any

influence from or participation by Chadbourne (the "Motion"). [Docket No. 5669]. For the

reasons stated herein, DBTCA believes that substantially all of the relief sought in the second

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Motion.

and third decretal paragraphs of Aurelius' proposed order is appropriate and should be entered by the Court. In support of this Response, DBTCA respectfully represents as follows:

## PRELIMINARY STATEMENT

This case is at a critical point. The various constituents, armed with the exhaustive report of the examiner, Kenneth N. Klee, are now preparing for a two day mediation before Judge Kevin Gross on September 26-27, 2010 (the "Plan Mediation"). In advance of the Plan Mediation, Aurelius has filed the Motion which seeks to disqualify Chadbourne from acting on the Committee's behalf with respect to the LBO Related Causes of Action. The Motion marks the third time in this 21 month old case that a party has raised Chadbourne's conflicts as it pertains to the resolution of the LBO Related Causes of Action. In order to preserve the integrity of the bankruptcy process, DBTCA believes that it is important that these allegations be addressed once and for all. To preserve the integrity of the bankruptcy process, DBTCA believes that Zuckerman -- and only Zuckerman -- should negotiate directly with the parties with whom Chadbourne has conflicts, and that Zuckerman -- and only Zuckerman --should advise the Committee with respect to LBO Related Causes of Action.

DBTCA believes Zuckerman acting as sole counsel to the Committee is the appropriate remedy for at least two reasons. First, the case is at a critical point where negotiations will be taking place at the Plan Mediation. Permitting Chadbourne to negotiate directly with parties whom it represents in other engagements creates an appearance of impropriety. DBTCA also submits that this conduct is not permissible under either Sections 1103(b) or 327(a) of the Bankruptcy Code.

Second, the repeated allegations of conflicts have cast a shadow over this case that there is a compromised Committee which is "pulling its punches" in regard to the LBO Related Causes of Action. Because the resolution of these claims is the main issue in this case, DBTCA

2

believes that in order to preserve the integrity of the process, Zuckerman -- and only Zuckerman

-- should be negotiating on behalf of the Committee. Zuckerman has been retained by the

Committee for over a year now, is free from conflicts and is completely up to speed on the issues

surrounding the LBO Related Causes of Action. As such, there is no prejudice in directing that

Zuckerman conduct all negotiations and provide all advice concerning the LBO Related Causes

of Action on behalf of the Committee.

**STATEMENT OF RELEVANT FACTS**

A.    **Chapter 11 Cases**

1.       On December 8, 2008 (the "Petition Date"), Tribune Company and its related

affiliates (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy

Code. The Debtors continue to operate their businesses and manage their properties as debtors in

possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On April 20, 2010,

the Court entered an order directing the United States Trustee to appoint an examiner in the

Debtors' cases pursuant to Bankruptcy Code §1104(c)(1). Kenneth N. Klee was thereafter

appointed as examiner. On August 3, 2010, the Examiner filed his report on the LBO Related

Causes of Action.

2.       On December 18, 2008, the Office of the United States Trustee appointed the

nine-member statutory Committee (the "Committee" or "Official Committee"). At present, the

Official Committee consists of the following eight members: (i) JP Morgan Chase Bank, N.A.,

(ii) Warner Bros. Television, (iii) William Niese, (iv) Pension Benefit Guaranty Corporation, (v)

Washington-Baltimore Newspaper Guild, Local 32035, (vi) Buena Vista Television, (vii)

Wilmington Trust Company and (viii) DBTCA . See Second Amended Notice of Appointment

of Committee of Unsecured Creditors, dated May 26, 2009. [Docket No. 1238].

3

B.      **The Senior Noteholders' Claims**

3.      DBTCA presently serves as the Indenture Trustee under the following indentures issued by Tribune:

i.      **The 1992 Indenture**

4.      DBTCA is the Indenture Trustee under that certain indenture dated as of March 1, 1992, as amended and supplemented (the "1992 Indenture"), by and between Tribune and Continental Bank, N.A, as the predecessor indenture trustee.  The amounts owed under the 1992 Indenture are no less than $120,500.00.

ii.     **The 1995 Indenture**

5.      DBTCA is the Indenture Trustee under that certain indenture dated as of January 30, 1995, as amended and supplemented (the "1995 Indenture"), by and between Tribune  and First Interstate Bank of California, as the predecessor indenture trustee.  Under the 1995 Indenture, two series of notes were issued: (i) 7.25% Debentures due March 1, 2013; and (ii) 7.50% Debentures due July 1, 2023.  Collectively, the amounts owed under the 1995 Indenture are no less than $185,703,521.00.

iii.    **The 1997 Indenture**

6.      DBTCA is the Indenture Trustee under that certain indenture dated as of January 1, 1997, as amended and supplemented (the "1997 Indenture"), by and between Tribune and Bank of Montreal Trust Company.  Under the 1997 Indenture, three series of notes were issued: (i) 4.875% Debentures due August 15, 2010; (ii) 5.25% Debentures due August 15, 2015; and (iii) 5.67% Debentures due December 8, 2008.  Collectively, the amounts owed under the 1997 Indenture are no less than $862,246,024.00.

C.    **Chadbourne Retention**

7.    On January 16, 2009, the Official Committee filed (i) an Application for an Order

Authorizing the Employment and Retention of Chadbourne as Counsel to the Committee; and

(ii) the Affidavit of David M. LeMay (collectively, the "Chadbourne Retention Application")

seeking entry of an order approving the retention and employment of Chadbourne as co-counsel

to the Official Committee.  [Docket No. # 243].

8.    On February 16, 2009, Chadbourne filed the First Supplemental Affidavit of

David M. LeMay in Connection with the Retention and Employment of Chadbourne as Counsel

to the Official Committee (the "Supplemental Affidavit"). [Docket No. # 395].

9.    In the Supplemental Affidavit, Mr. LeMay notes:

> As disclosed in the Prior Affidavit, JPMorgan Chase & Co. and Merrill Lynch &
> Co., Inc... are current clients of Chadbourne in various matters entirely unrelated
> to the Debtors or to these Chapter 11 cases, and subsidiaries of JPMC and Merrill
> Lynch are members of the Creditors' Committee. Subsequent to the submission of
> the Prior Affidavit, Chadbourne obtained written confirmation from JPMC and
> Merrill Lynch, respectively, of Chadbourne's ability to review and investigate
> certain possible avoidance and litigation issues potentially arising in connection
> with (i) the Senior Credit Agreement dated May 17, 2007, as amended, among
> Tribune Company, as borrower, the lenders party thereto, JPMorgan Chase Bank
> N.A. as Administrative Agent, and certain other parties named therein, and (ii) the
> Senior Unsecured Interim Term Loan Agreement dated December 20, 2007,
> among Tribune Company, the Lenders named therein, Merrill Lynch Capital
> Corporation, as Administrative Agent, and certain other parties named therein (the
> "Bridge Facility"), **and to negotiate with JPMC and Merrill Lynch,**
> **respectively, concerning such issues** (in the case of Merrill Lynch, such ability
> to review and investigate is limited to the Bridge Facility). Copies of the letters
> evidencing such written confirmation have been furnished to the U.S. Trustee.
> Under applicable ethical rules, Chadbourne is not able to initiate or pursue
> litigation against JPMC or Merrill Lynch relating to such issues, and the
> respective letters from JPMC and Merrill Lynch do not permit Chadbourne to
> initiate or pursue any such litigation.

Supplemental Affidavit at ¶4.

10.    No reference to a reciprocal waiver (*i.e.* a waiver by the Committee ) is referenced

in either the LeMay Affidavit or the Supplemental Affidavit.

ME1 10618434v.1

11.    On February 20, 2009, this Court entered an Order Authorizing the Employment

and Retention of Chadbourne as Co-Counsel to the Official Committee effective as of December

18,2008 (the "Chadbourne Retention Order"). [Docket No. # 429].

12.    The Chadbourne Retention Order provides that:

ORDERED, that pursuant to sections 327 and 1103(a) of the Bankruptcy Code,
the employment and retention of Chadbourne as co-counsel for the Creditors'
Committee is hereby approved, nunc pro tunc to December 18, 2008, on the terms
and conditions set forth in the Application and in the LeMay Affidavit; and it is
further;

ORDERED that nothing in this Order is intended to or shall be deemed to
prejudice or augment the rights of the Acting United States Trustee under 11
U.S.C. §§ 328(c), 330 and 331 and applicable law in the event that the Committee
seeks to employ any additional law firms to investigate and/or pursue claims and
causes of action related to the 2007 leveraged buyout...

**D.    Retention of Zuckerman Spaeder**

13.    On August 13, 2009, the Official Committee filed an application to pursuant to 11

U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014, For An Order Authorizing The Employment

And Retention Of Zuckerman Spaeder LLP As Special Counsel Nunc Pro Tunc To August 6,

2009 (the "Zuckerman Retention Application"). Docket No. 1953.

14.    The Zuckerman Retention Application notes as follows:

At the time of its retention and again upon receiving the Creditors' Committee's
instruction to conduct the preliminary investigation (and as specifically disclosed
in detail in the Supplemental Affidavit), Chadbourne advised the Creditors'
Committee that, while it would be able to investigate and conduct settlement
negotiations with the lenders in the Leveraged ESOP Transactions and would be
able if necessary to pursue litigation against many of the participants in the
Leveraged ESOP Transactions, Chadbourne would be unable because of conflicts
to bring claims against certain of such lenders or to investigate or bring certain
claims against certain financial advisors who participated in the Leveraged ESOP
Transactions

After consultation with its counsel, the Creditors' Committee, acting through the
Independent Members, determined that good cause exists to retain special counsel
to assist in the further investigation of the Leveraged ESOP Transactions, and in
negotiations with the respective lenders and the Debtors looking toward a

6

consensual resolution of any claims if such a resolution can be achieved on terms
that are satisfactory to the Committee, and in the event that negotiations do not
produce an outcome satisfactory to the Committee, to be able to bring any such
causes of action against the lenders as may be deemed appropriate by the
Creditors' Committee to the extent the Committee may be authorized by
subsequent order of the Court to bring such causes of action.

Zuckerman Retention Application at ¶¶9-10.

## E.    **Chadbourne Conflicts**

15.    During the course of this bankruptcy, Chadbourne' conflicts have been raised by

representatives of the pre-LBO bondholders on a number of occasions as detailed below:

### i.    **Law Debenture's 2004 Motion**

16.    On August 26, 2009, Law Debenture, the indenture trustee under the 1996

indenture, filed a motion seeking entry of an order authorizing and directing creditor discovery

relating to Tribune's leveraged buyout transaction consummated in 2007 or, alternatively, the

appointment of an examiner (the "2004 Motion"). Docket 2031.

17.    In support of its request to conduct 2004 discovery, Law Debenture noted:

Contrary to these assertions, if [Chadbourne] is unable to prosecute claims against
its clients, it logically would be unable to investigate and negotiate against the
same clients. Both Delaware and New York law are consistent with this view.
Delaware law provides that "a lawyer shall not represent a client if the
representation involves a concurrent conflict of interest. A concurrent conflict of
interest exists if: (1) the representation of one client will be directly adverse to
another client; or (2) there is a significant risk that the representation of one or
more clients will be materially limited by the lawyer's responsibilities to another
client, a former client or a third person or by a personal interest of the lawyer."
Del. R. Prof. Resp. 1.7…. The Second Circuit has held that it is "prima facie
improper" for an attorney to represent simultaneously a client and another party
with interests directly adverse to that client. *Cinema 5, Ltd. v. Cinerama, Inc.,* 528
F.2d 1384, 1387 (2d Cir. 1976). The attorney "must be prepared to show, at the
very least, that there will be no actual or apparent conflict in loyalties or
diminution in the vigor of his representation." *Id.*

2004 Motion at 24.

ME1 10618434v.1

18.    On September 17, 2009, the Committee opposed the 2004 Motion (the

"Committee Opposition to the 2004 Motion"). Docket No. 2136.  With respect to the conflict

issue, the Committee Opposition to the 2004 Motion noted:

> Importantly, however, as part of the development of its LBO analysis, the
> Creditors' Committee took an additional action: the Committee hired Zuckerman
> Spaeder LLP as special counsel…Under the Zuckerman Retention Order,
> Zuckerman's mandate is not limited -- claims to the contrary notwithstanding --
> but provides Zuckerman the broadest possible grant of authority necessary to do
> its job, mirroring the typical broad language used by courts in these instances. To
> that end, Zuckerman has been given independent authority, unfettered access to
> all the discovery materials produced, a mandate to review all issues it believes
> necessary to fulfill its tasks, and has been directed by the Committee to prepare in
> the event commencement of litigation should be necessary.

Committee Opposition to the 2004 Motion at 18, 21.

19.    The 2004 Motion was resolved consensually by the parties and the Court never

ruled on any of the issues raised in the motion.[2]

ii.    **The Examiner Motion**

20.    On January 13, 2010, Wilmington Trust Company, as Indenture Trustee for the

PHONES filed a motion seeking the appointment of an examiner (the "Examiner Motion").

Docket No. 3062.  In the Examiner Motion, WTC stated:

> Chadbourne is compromised by its long-standing and important business
> relationships with many of the LBO Parties. Chadbourne has advised the Official
> Committee that it is unable to initiate or pursue litigation against J.P. Morgan or
> Merrill due to such conflicts.

Examiner Motion at ¶12.

21.    The Committee opposed the Examiner Motion (the "Committee Opposition to

Examiner Motion").  Docket No. 3360. In the Committee Opposition to Examiner Motion,

Committee noted:

---

[2] Separately, the Court did address the request for an Examiner in its April 20, 2010 Order.

8

> Zuckerman has confirmed its independent mandate from the Committee...
> Zuckerman, Chadbourne and Landis coordinate efforts with respect to the
> investigation but, simply put, Zuckerman does not "report" to Chadbourne and is
> in no way subordinate to Chadbourne on the matters it is handling for the
> Committee.

See Committee Opposition to Examiner Motion at ¶26 (footnote omitted). Of particular

importance, the omitted footnote states "[a]s disclosed in its retention papers,

Chadbourne sought and received the necessary **written waivers from JPM and Merrill**

**to conduct an investigation of the LBO claims**...." *Id.* (emphasis supplied).

## RESPONSE TO MOTION

22.    As noted, this bankruptcy is at a critical stage.  With the assistance of the

Examiner's Report, the parties in interest will attempt to resolve plan issues before the

Honorable Kevin Gross on September 26-27, 2010.  Given Chadbourne's conflicts as disclosed

in the LeMay Affidavit and Supplemental Affidavit, the question before this Court is whether

Chadbourne should be permitted, on behalf of the Committee, to engage in negotiations with

parties sitting across the table who are its clients (JP Morgan, Merrill), and to advise the

Committee with respect to such matters.

23.    DBTCA submits that such conduct would create a significant appearance of

impropriety.  DBTCA believes that Zuckerman should be Committee Counsel at the Plan

Mediation and with respect to all other matters in which Chadbourne has an adverse interest.

DBTCA reaches this conclusion for two reasons.

9

**A.      There Is An Appearance Of Impropriety If Chadbourne Is Negotiating
With Its Clients On The LBO Related Causes Of Action**

24.      First, it is uncertain whether Chadbourne is authorized to negotiate directly with

the parties whom it represents.  Rule 1.7(b) of the Professional Rules of Conduct (applicable in

both New York[3] and Delaware) provides:

> (b) Notwithstanding the existence of a concurrent conflict of interest under
> paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably
> believes that the lawyer will be able to provide competent and diligent
> representation to each affected client; (2) the representation is not prohibited by
> law; (3) the representation does not involve the assertion of a claim by one client
> against another client represented by the lawyer in the same litigation or other
> proceeding before a tribunal; and (4) each affected client gives informed consent,
> confirmed in writing.

25.      In a non-bankruptcy setting, a lawyer can represent clients with concurrent

conflicts of interest if the four conditions identified in Rule 1.7 are satisfied.  Whether such

waivers were granted (or whether such waiver would be valid) in a bankruptcy setting is an open

issue.  Case law suggests that waivers are inappropriate.  For example, in *In re Granite Partners*,

219 B.R. 22 (Bankr. S.D.N.Y. 1998), Judge Bernstein noted:

> [a]lthough the client can, under certain circumstances, waive the conflict... the
> mandatory provisions of section 327(a) do not allow for waiver. *See, e.g., In re
> Perry*, 194 B.R. at 880; *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016
> (Bankr.N.D.Ill.1993); *In re Tinley Plaza Assocs.*, 142 B.R. at 278; *In re Diamond
> Mortgage Corp.*, 135 B.R. 78, 90 (Bankr.N.D.Ill.1990); *In re Amdura Corp.*, 121
> B.R. 862, 866 (Bankr.D.Colo.1990); *see generally* 3 Lawrence P. King, et al.
> *Collier on Bankruptcy* ¶ 328.05[3], at 328-32 (15th ed. rev.1997)("Collier ");
> Robin E. Phelan & John D. Penn, *Bankruptcy Ethics, An Oxymoron*, 5 Am.
> Bankr.Inst. L.Rev. 1, 27 (1997)("What may be ethically acceptable in commercial
> settings (e.g., waivers upon informed consent) will not necessarily pass muster
> under section 327."). *But cf. In re Lee,* 94 B.R. 172, 179
> (Bankr.C.D.Cal.1988)(under Rule 5-102 of the California Rules of Professional
> Conduct, attorney desiring to represent both a debtor in possession and a
> conflicting interest must obtain a written waiver from the debtor, all creditors and
> the United States trustee).

---

[3] New York adopted the Model Rules of Professional Conduct on April 1, 2009.

MEI 10618434v.1

*Granite Partners* 219 B.R. at 34; *see also In re Project Orange*, 431 B.R. 363 (Bankr.

S.D.N.Y. 2010).

26.     In *In re Enron Corp.*, Case No. 01-16034 (AJG), 2002 WL 32034346 ("Enron")

at 7 (Bankr. S.D.N.Y. May 23, 2002), Chief Judge Gonzales noted that the counsel to the

committee must satisfy the requirements of Bankruptcy Code §327(a):

> [g]enerally, both § 1103( b) and § 327(a) commonly share the prohibition that a
> professional not represent an entity holding an adverse interest in connection with
> the case. *See* 7 COLLIER ON BANKRUPTCY 1103.04[2] at 1103-18 (15th ed.
> Rev.2002). However, unlike § 1103(b), § 327(a) also prohibits the professional to
> be employed from holding an adverse interest and prohibits the professional to be
> employed from being not disinterested. *See* 11 U.S.C. § 327(a). That being said,
> 11 U.S.C. § 328(c) provides that the court may deny the allowance of
> compensation for services rendered and reimbursement of expenses to a
> professional employed under § 1103 if, at any time during such professionals
> employment, such professional is not disinterested....Although § 328(c) concerns
> compensation and not retention, when read in conjunction with § 1103(b), §
> 328(c) has been interpreted to impose additional considerations in analyzing the
> retention of committee professionals under § 1103(b) by incorporating standards
> and authority native to retaining professionals under § 327(a).

*Enron* at 7.

27.     In *Enron*, an objection was filed which sought to disqualify Milbank Tweed, as

counsel to the committee, on numerous bases including Milbank's failure to satisfy the "adverse

interest" and "disinterested person" standards of under the Bankruptcy Code.  Ultimately, the

court concluded that Milbank would not be disqualified:

> The Court finds that Milbank is not involved in any aspect of this case in which it
> has an adverse interest and as such there is no basis for the Court to conclude that
> the actions of Milbank in this case may violate DR 5-101(A). The Court was
> provided, for *in camera* review, copies of all relevant waivers that could impact
> upon this Court's determination....Here, there is case law that supports the
> proposition that the disciplinary rules under this Canon cannot stand as the only
> basis under which a violation is found. *See In re Caldor, Inc.,* 193 B.R. 165, 181
> (Bankr.S.D.N.Y.1996). Further, Milbank has avoided the appearance of
> impropriety by the use of conflicts counsel and ethical walls.

*Enron* at 9-10.  In the instant case, Aurelius is not seeking to disqualify Chadbourne but

only to prevent Chadbourne from providing legal services to the Committee in areas where it is conflicted.

28.     Because resolution of the LBO Related Causes of Action will involve significant sums (even for the financial institutions that are at issue here), DBTCA believes that there is an appearance of impropriety if Chadbourne is participating in these negotiations directly with parties who are otherwise its clients, or advising the Committee about such causes of action.[4]  As noted above, Chadbourne's conflicts have been raised at various points during the course of the case.  It is not constructive for the Chapter 11 process for these assertions to be repeated.  These assertions will cast a cloud over the proceeding and will distract the parties from the main issue in this case.  Accordingly, DBTCA believes that Chadbourne should not be involved in any negotiations concerning the settlement of the LBO Related Causes of Action.[5]

**B.      There Is No Prejudice In Directing That Zuckerman Conduct All Negotiations**

29.     As noted, Zuckerman has been retained by the Committee for over a year. Zuckerman is ready to prosecute the LBO Related Causes of Action (should the Court grant the standing motion).  Accordingly, Zuckerman is up to speed on all the issues surrounding the LBO Related Causes of Action and there is no prejudice which will result if the Court directs that Zuckerman -- and only Zuckerman -- conducts negotiations on behalf of the Committee and advise it with respect to the LBO Related Causes of Action.

---

[4] Assuming that Chadbourne did not have a waiver from the Committee (or the waiver is unenforceable), the Court should address this issue now while the parties are at loggerheads and no settlement has been reached.
[5] DBTCA does not seek the disqualification of Chadbourne as Committee Counsel under Bankruptcy Code §1103(b) nor does DBTCA believe that the Court should impose any penalty at this time.  For that reason, cases that discuss the appearance of impropriety as a basis for complete disqualification of counsel are not relevant to this analysis.

12

## CONCLUSION

**WHEREFORE**, DBTCA respectfully requests that the Court grant the Motion with the

relief as noted herein and provide such further relief as is just and proper.

Dated:  September 20, 2010
        Wilmington, DE

**McCARTER & ENGLISH LLP**

By:     /s/ Katharine L. Mayer
        Katharine L. Mayer (DE# 3758)
        Renaissance Centre
        405 N. King Street, 8th Floor
        Wilmington, DE 19801
        (302) 984-6300
        (302) 984-6399 Facsimile
        (302) 984-2494 Direct Fax
        kmayer@mccarter.com

        -and-

        David J. Adler, Esq. (DA0048)
        245 Park Avenue
        27th Floor
        New York, New York  10167
        (212) 609-6800 - Telephone
        (212) 609-6921 - Facsimile
        dadler@mccarter.com

        *Counsel for Deutsche Bank Trust Company
        Americas*

13