**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, <u>et</u> <u>al</u>., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Nos. 5669, 5740 and 5742** |

**REPLY OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE
RESPONSE OF DEUTSCHE BANK TRUST COMPANY AMERICAS AND THE
JOINDER OF WILMINGTON TRUST COMPANY TO THE MOTION OF AURELIUS
CAPITAL MANAGEMENT, LP TO DISQUALIFY CHADBOURNE & PARKE LLP
FROM ACTING ON BEHALF OF THE OFFICIAL COMMITTEE OF UNSECURED
<u>CREDITORS IN MATTERS IN WHICH IT HAS CONFLICTS OF INTEREST</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune

Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"),

respectfully submits this reply (the "**Reply**") to (a) the Response of Deutsche Bank Trust

Company Americas, Indenture Trustee Under the 1992 Indenture, the 1995 Indenture and the

1997 Indenture to the Motion of Aurelius Capital Management, LP to Disqualify Chadbourne &

Parke LLP from Acting on Behalf of the Official Committee of Unsecured Creditors in Matters

in Which it Has Conflicts of Interest (the "**Deutsche Bank Joinder**"), and (b) the Joinder of

Wilmington Trust Company to the Motion of Aurelius Capital Management, LP to Disqualify

Chadbourne & Parke LLP from Acting on Behalf of the Official Committee of Unsecured

Creditors in Matters in Which it Has Conflicts of Interest (the "**Wilmington Trust Joinder**,"

together with the Deutsche Bank Joinder, the "**Joinders**").  The Reply is necessary because

Deutsche Bank Trust Company Americas ("**Deutsche Bank**") and Wilmington Trust Company

("**Wilmington Trust**"; together with Deutsche Bank, the "**Joining Parties**") have raised issues in their respective Joinders that were not previously brought to the Court's attention in the motion (the "**Aurelius Motion**") of Aurelius Capital Management, LP ("**Aurelius**") to disqualify Chadbourne & Parke LLP ("**Chadbourne**") as Committee counsel.  As these issues were not addressed in the Aurelius Motion or the Committee's related objection (the "**Committee Objection**"),[1] they require a response.  In support of its Reply, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      On September 12, 2010, Aurelius filed the Aurelius Motion and sought expedited consideration of same.  Eight days later, Deutsche Bank and Wilmington Trust, two Committee members, joined the Aurelius Motion.  Like the Aurelius Motion, the Joinders fail to provide any evidence in support of the claim that the Committee's retention of Chadbourne should be limited or terminated twenty-one months into the Debtors' bankruptcy cases, even though -- among other things -- the two Committee members know that the Committee has very recently reexamined this issue and confirmed that Chadbourne has no conflict and that a proper protocol is in place to address any possible alleged appearance of impropriety.  *See* **Exhibit "A"** (Committee Resolution, dated September 10, 2010).  The Deutsche Bank Joinder also fails to disclose that a substantial part of the indentures of which it serves as indenture trustee was recently sold by Centerbridge to Aurelius.  The Joinders do, however, include references to certain legal and factual issues that have not previously been raised by Aurelius.  The Committee files this Reply in order to address these issues.

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Committee Objection.

**REPLY**

2.      The Joining Parties argue that because of its representations of certain parties in matters unrelated to these cases, Chadbourne should be precluded from participating in the upcoming mediation and plan negotiations because: 1) the conflict waivers Chadbourne obtained are ineffective under bankruptcy law; 2) Chadbourne may not have obtained an effective waiver from the Committee; and 3) in any event, there would be an appearance of impropriety if Chadbourne continued to participate in such negotiations.  *See* Deutsche Bank Joinder at ¶ 25 and Wilmington Trust Joinder at ¶ 4 n.1.  As demonstrated below, there is no substance to any of these arguments.

3.      The Joining Parties' waiver argument relies on cases holding that a waiver cannot overcome the express statutory requirements of section 327, which sets the standard for retention of counsel *for a debtor or trustee*.  Those cases have no application here for two reasons.  First, section 1103, rather than section 327, is the applicable statute for retention of counsel *for a committee*.  This distinction is important because the conflict analysis is significantly more stringent under the debtor/section 327 test.  *See, e.g., In re eToys, Inc.,* 331 B.R. 176, 192 n.5 (Bankr. D. Del. 2005) (describing "higher standard" for retention of debtors' counsel).  Even if the cases the Joining Parties rely on were applying the section 1103 standard at issue here, they almost all involve significant failure to make disclosures, dual representations of adverse interests within the same case or both.  Those are not our facts.

4.      Second, unlike in the cases relied on by the Joining Parties, the Committee's retention of Chadbourne clearly meets the applicable bankruptcy law requirements without regard to the waivers.  Chadbourne represents interested parties *only* on matters unrelated to

these bankruptcy cases, which is expressly permitted by section 1103.  *See* Committee Objection

at ¶¶ 29-32.   Additionally, while most courts expressly have rejected waivers for a debtor's

section 327(a) professionals, the same is not true for committee professional waivers.  *See, e.g.,*

*In re Muma Services, Inc.*, 286 B.R. 583 (Bankr. D. Del. 2002) (denying trustee's motion to

disqualify creditor committee's counsel because, *inter alia,* counsel obtained both oral and

implied waivers); *In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 32034346, *13 (Bankr.

S.D.N.Y. May 23, 2002) (court in its analysis, relied on copies of conflict letters submitted *in*

*camera*).

5.        Nevertheless, the Joining Parties have cited exclusively to section 327(a) cases[2]

involving the retention of *debtor's counsel* in support of their assertions that waivers are

"inappropriate" or are not effective for committee professionals.  *See, e.g., Century Indemnity*

*Co. v. Congoleum Corp.* (*In re Congoleum, Corp.*), 426 F.3d 675, 692 (3d Cir. 2005) (court

rejecting retention application of debtors' counsel under section 327(a) based on concurrent

representation of asbestos claimants); *In re Project Orange Assocs.*, 431 B.R. 363, 368-69

(Bankr. S.D.N.Y. 2010) (court rejecting retention application of debtors' counsel under section

327(a) based on, among other things, conflict disclosures that were misleading, incomplete and

contradictory).[3] In other words, their purported legal precedent on this point is wholly inapposite.

---

[2]     *See* Deutsche Bank Joinder at ¶ 25 and Wilmington Trust Joinder at ¶ 4 n1.

[3]     *See also In re Perry*, 194 B.R. 875, 881 (E.D. Ca. 1996) (affirming the denial of fees under section 328(c) for
trustee's counsel retained under section 327(a)); *In re Granite Partners*, 219 B.R. 22, 36 (Bankr. S.D.N.Y.
1998) (reducing fees under section 328(c) for trustee's counsel retained under section 327(a)); *In re Envirodyne*
*Indus., Inc.*, 150 B.R. 1008, 1019 (Bankr. N.D. Ill. 1993) (rejecting retention application of debtors' counsel
under section 327(a)); *In re Amer. Printers & Lithographers*, 148 B.R. 862, 864 (Bankr. N.D. Ill. 1992) (same);
*In re Tinley Plaza Assocs.*, 142 B.R. 272, 280 (Bankr. N.D. Ill. 1992) (same); *In re EWC, Inc.*, 138 B.R. 276,
284-85 (Bankr. W.D. Okl. 1992) (disqualifying debtor's counsel under section 327(a) and disgorging all fees
under section 330(a)); *In re Diamond Mortgage Corp. of Ill.*, 135 B.R. 78, 84 (Bankr. N.D. Ill. 1990) (reducing
fees under section 328(c) for debtors' co-counsel retained under section 327(a)); *In re Amdura Corp.*, 121 B.R.

6.      Deutsche Bank's suggestion that no waiver was obtained by Chadbourne from the Committee, *see* Deutsche Bank Joinder at ¶¶ 10, 25, is simply wrong.  Chadbourne disclosed its connections to the Committee, obtained Committee approval with respect to the Chadbourne Application (which was signed by the Committee's co-chairs) and then disclosed its connections to the public at large when it filed its retention application and the related First Supplemental Affidavit.  *See* Committee Objection at ¶¶ 10-11 (discussing history of Chadbourne's retention).  No party in interest (including, without limitation, the Joining Parties) ever filed an objection to the Chadbourne Application and, after requisite notice and hearing, the Court approved the Committee's retention of Chadbourne.  *See id.* at ¶ 12.  This is all that is needed for a valid waiver.  *See, e.g., Kaiser Group Int'l, Inc. v. Nova Hut* (*In re Kaiser Group Int'l, Inc.*), 272 B.R. 846, 851 (Bankr. D. Del. 2002) (finding that waiver existed where client talked to debtors' counsel about creation of ethical wall related to alleged conflict and debtors' counsel implemented request); *see also Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582 (D. Del. 2001) ("As a general matter, a client may expressly or impliedly waive his objection and consent to an adverse representation.").

7.      Moreover, the resolution adopted by the Committee on September 10, 2010 expressly confirms its waiver of conflicts with respect to Chadbourne:

> The Committee notes that Chadbourne's conflicts have been known to the Committee since its retention and have been addressed at other times during the bankruptcy proceedings, and specifically notes the application to retain Chadbourne as Committee counsel, disclosures made by Chadbourne in connection with its retention by the Committee, the approval by the Court of Chadbourne's retention and the finding by the

---

862, 871 (Bankr. D. Colo. 1990) (concluding debtors' co-counsel under section 327 could not be disinterested); *In re Lee*, 94 B.R. 172, 180 (Bankr. C.D. Ca. 1988) (reviewing section 327(a) requirements in two related cases and denying retention in one of the cases).

Court that Chadbourne is disinterested and neither holds nor represents any interest adverse to the Debtors' estates, the retention application made by special counsel, Zuckerman Spaeder LLP, and the pleadings filed in connection therewith, the pleadings filed in connection with earlier criticisms of the Committee's independence and Chadbourne's involvement in the investigation of the LBO Claims, and the minutes of and deliberations by the Committee during the course of the bankruptcy proceeding. The Committee confirms its waiver of conflicts arising from Chadbourne & Parke's representation of JPMorgan and Merrill Lynch subject to the existing limitations on Chadbourne's representation of the Committee . . . .

8.      Finally, both Joining Parties suggest that there is an appearance of impropriety that requires the Court to disqualify Chadbourne.[4] The Joining Parties are flatly wrong on the law they cite in support of that proposition. The law in the Third Circuit is clear that, "[t]he presence of the appearance of impropriety standing alone is not a sufficient ground for disqualification. . . ." *In re Congoleum, Corp.*, 426 F.3d 675, 692 (3d Cir. 2005); *see also In re Marvel Entertainment Group*, 140 F.3d 463, 477 (3d Cir. 1998) (*quoting In re BH&P, Inc.*, 949 F.2d 1300, 1313 (3d Cir. 1991) ("[I]t must be made clear that '[h]orrible imaginings alone cannot be allowed to carry the day. . . .'")). Additionally, mere speculation or even the appearance of conflict does not implicate the "adverse interest" criteria. *See, e.g., In re eToys*, 331 B.R. at 197 (in case regarding committee counsel, court stated: "While the relationships may raise an appearance of conflict, they are not actual conflicts and disqualification is not warranted."); *In re Muma Services, Inc.*, 286 B.R. 583, 590 (Bankr. D. Del. 2002) ("[T]he Third Circuit has held

---

4       *See* Deutsche Bank Joinder at ¶ 28 (As the actions will involve significant sums, Deutsche Bank believes "that there is an appearance of impropriety if Chadbourne is participating in these negotiations directly with parties who are otherwise its clients, or advising the Committee about such causes of action."); Wilmington Trust Joinder at ¶ 4 (Chadbourne's representation in *Tousa* and large and sophisticated practice on behalf of defendant banks "all create a penumbra giving rise to healthy skepticism that Chadbourne can or ever will zealously negotiate against Defendant Banks"). *But see In re Walnut Equip. Leasing Co., Inc.*, 213 B.R. 285, 291 (Bankr. E.D. Pa. 1999) (court holding that because committee counsel retained the ability to still identify issues that might require action against certain client, committee counsel's inability to bring claims against that client did not restrict or limit committee counsel's ability to zealously perform its duty on behalf of the committee under section 1103).

that disqualification of counsel cannot be premised on the appearance of conflict alone.") (citation omitted).

9.      In any event, in retaining Chadbourne at the outset of the case, the Committee expressly anticipated, planned for and disclosed how it would proceed on the day it determined that it required the services of special counsel.  More than a year ago, the Committee took those actions and retained Zuckerman as special counsel to work with Chadbourne with respect to the investigation and negotiation of claims arising from the Tribune leveraged buy-out ("LBO Claims").  The Committee recently confirmed, in the resolution adopted on September 10, 2010 "that it expects to continue to receive the independent advice and counsel of Zuckerman Spaeder with respect to resolution of the LBO Claims, including specifically in the upcoming mediation." Further, the Committee confirmed and directed that:

- Zuckerman Spaeder is to be directly involved in all mediation sessions and in settlement discussions with respect to the LBO Claims, and that Zuckerman Spaeder and Chadbourne & Parke are to coordinate their activities in connection with the mediation and settlement negotiations;

- Zuckerman Spaeder advise the Committee directly in connection with the merits of the positions that are taken by parties in the mediation and settlement discussions with respect to the possible resolution of the LBO Claims; and

- Zuckerman Spaeder should, as appropriate, provide an assessment of the value of particular LBO Claims as such assessments become relevant to issues that are addressed in the mediation and settlement discussions.

10.     Under these circumstances, and notwithstanding the arguments of the Joining Parties, there is no basis to grant the relief sought in the Aurelius Motion.  Accordingly, the Committee requests that the Aurelius Motion be denied.

WHEREFORE, the Committee again respectfully requests that the Court deny the Aurelius Motion in its entirety and grant such other and further relief as may be just and proper.


Dated:  September 21, 2010
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Adam G. Landis*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Howard Seife
David M. LeMay
Douglas E. Deutsch
**CHADBOURNE & PARKE LLP**
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

- and -

Graeme W. Bush
James Sottile
**ZUCKERMAN SPAEDER LLP**
1800 M. Street, N.W., Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

*Special Counsel to the Official Committee of Unsecured Creditors*

698.001-W0009731

# EXHIBIT A

{698.001-W0009731

**TRIBUNE CREDITORS' COMMITTEE RESOLUTION**

On September 10, 2010 the Committee adopted the following resolution by a vote of 5-2:

**RESOLUTION**:

The Committee notes that Chadbourne's conflicts have been known to the Committee since its retention and have been addressed at other times during the bankruptcy proceedings, and specifically notes the application to retain Chadbourne as Committee counsel, disclosures made by Chadbourne in connection with its retention by the Committee, the approval by the Court of Chadbourne's retention and the finding by the Court that Chadbourne is disinterested and neither holds nor represents any interest adverse to the Debtors' estates, the retention application made by special counsel, Zuckerman Spaeder LLP, and the pleadings filed in connection therewith, the pleadings filed in connection with earlier criticisms of the Committee's independence and Chadbourne's involvement in the investigation of the LBO Claims, and the minutes of and deliberations by the Committee during the course of the bankruptcy proceeding. The Committee confirms its waiver of conflicts arising from Chadbourne & Parke's representation of JPMorgan and Merrill Lynch subject to the existing limitations on Chadbourne's representation of the Committee and confirms that it expects to continue to receive the independent advice and counsel of Zuckerman Spaeder LLP with respect to resolution of the LBO Claims, including specifically in the upcoming mediation.

To ensure that the record is clear, the Committee expressly confirms and directs that:

- Zuckerman Spaeder is to be directly involved in all mediation sessions and in settlement discussions with respect to the LBO Claims, and that Zuckerman Spaeder LLP and Chadbourne & Parke are to coordinate their activities in connection with the mediation and settlement negotiations;

- Zuckerman Spaeder advise the Committee directly in connection with the merits of the positions that are taken by parties in the mediation and settlement discussions with respect to the possible resolution of the LBO Claims; and

- Zuckerman should, as appropriate, provide an assessment of the value of particular LBO Claims as such assessments become relevant to issues that are addressed in the mediation and settlement discussions.

For purposes of this resolution, "LBO Claims" include claims against the senior LBO lenders, the directors and officers of the Debtors, shareholders of the Company who were bought out as a result of the LBO, and financial and other advisors to the Debtors in connection with the LBO.

{698.001-W0009731.}                                    A-2