IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TRIBUNE COMPANY, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 08-13141 (KJC), *et seq.*<br>(jointly administered)<br><br>**Hearing Date: September 22, 2010 at 1:30 p.m.** |

**JOINDER OF WILLIAM A. NIESE,
A MEMBER OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS AND A REPRESENTIVE
OF THE TM RETIREES, TO THE OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO MOTION OF AURELIUS
CAPITAL MANAGEMENT TO DISQUALIFY CHADBOURNE PARK, LLC FROM
ACTING ON BEHALF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
*(relates to Docket Nos. 5669 & 5737)*

Teitelbaum & Baskin, LLP and Pinckney, Harris & Weidinger, LLC, as attorneys for (x)William A. Niese, in his capacity as a TM Retiree and a member of the Official Committee of Unsecured Creditors, and William A. Niese and (y) approximately 200 other former employees (and beneficiaries of such former employees) (the "TM Retirees") of The Times Mirror Company ("Times Mirror"), who were receiving or entitled to receive payments under certain qualified and non-qualified retirement plans of one or more of the Debtors, for their statement in support of the objection, dated September 20, 2010 (the "Objection") (Docket No. 5737) filed by the Official Committee of Unsecured Creditors (the "OCC" or the "Committee") to the Motion of Aurelius Capital Management, LP to disqualify Chadbourne Park, LLC ("Chadbourne") from acting on behalf of the Committee in matters in which Chadbourne has a conflict of interest (the "Motion"), respectfully state:

1. Mr. Niese and the TM Retirees support the Objection and adopt the well pleaded legal and factual arguments made in the Objection.

2. Mr. Niese and the TM Retirees apologize for the late filing of this pleading.

However, until the late and surprising joinder in the Motion by two members of the Committee, Wilmington Trust (Docket No. 5742, filed approximately 5:25 p.m. on September 20, 2010) and Deutsche Bank (Docket No. 5740, filed approximately 4:40 p.m. on September 20, 2010), Mr. Niese and the TM Retirees did not intend to file a response to the Motion.

3. However, the strategic defection of two Committee members has painted a distorted picture of this matter. Indeed, as this Court will be more fully apprised by counsel for the Committee, in response to the serious allegations raised in the Motion, the entire Committee, (other than JP Morgan) carefully reconsidered the conflict issues. By a majority of 5 to 2, the Committee reaffirmed its knowing and intentional waiver of Chadbourne's conflicts with certain financial institutions, including JPMorgan, to (x) permit Chadbourne to participate in plan settlement discussions, including with such institutions, and (y) retain Zuckerman Spaeder as special counsel to, *inter alia*, participate in plan settlement discussions and litigate matters on behalf of the Committee where Chadbourne was precluded from doing so. The Committee further reaffirmed that the filing of the retention applications by the Committee on behalf of Chadbourne and Zuckerman are unequivocal writings evidencing such a knowing and intentional waiver.

4. Until now, the Committee as a whole, including Wilmington Trust, Deutsche Bank and even JP Morgan, as a target of potential litigation, has conducted itself in a manner which favored a consensual resolution of these cases over a protracted litigation based upon (x) careful consideration of the merits and defenses of claims and (y) the impact of litigation versus settlement upon the financial/institutional creditors holding billions of dollars of claims in the cases and the current and former employees and trade creditors holding several hundred million dollars of claims.

5. Unfortunately, it appears that the case has devolved into a feeding frenzy for hedge funds and their attorneys, at the expense of current and former employees and trade creditors.

6. The Motion by Aurelius on the cusp of the upcoming mediation is more than coincidental—it is clearly a strategic ploy to undermine the role of the Committee in the upcoming mediation. This is not to say that the Committee lacks confidence in Zuckerman. It is simply that Chadbourne has been the Committee's general counsel, and has coordinated and spearheaded the team of legal and financial advisors retained by the Committee to advise the Committee on all aspects of the bankruptcy process and the impact of litigation versus settlement. At this late and critical stage of the case, disqualifying Chadbourne from the mediation process would severely prejudice the Committee and the constituencies it protects.

7. Aurelius has been purchasing claims in this case at some discount with full knowledge of all of the facts, including the prior approval by this Court of the retention of Chadbourne, as Committee counsel, and Zuckerman Spaeder, as Committee conflicts counsel.

8. More troublesome is the joinder of two Committee members who actively participated (i) in all Committee discussions concerning the Chadbourne conflicts and retention of Chadbourne[1], (ii) in the decision that Chadbourne would be involved in all plan discussions, and (iii) the selection and retention of Zuckerman to participate in such discussions and to litigate any matters where Chadbourne was precluded from doing so. Moreover, these two Committee members participated in innumerable Committee meetings wherein Chadbourne and Zuckerman, as counsel, and Moelis & Co. and Alix Partners, as financial advisors, reported on,

---

[1] The initial selection of Chadbourne by the Committee in Wilmington on the date the Committee was formed was by the members of the Committee after meeting numerous firms. The undersigned was present at that meeting on behalf of Mr. Niese and participated in the process. Wilmington had not yet been appointed to the Committee. It was one person –one vote and the inference by Wilmington Trust (Joinder para 4) that JP Morgan had any greater say is baseless and offensive.

among other things settlement discussions, plan iterations, litigation updates involving, among other things LBO and other claims against JP Morgan and other parties with disclosed conflicts. While it is clear that the members of the Committee did not always see eye to eye on the best resolution of the complex issues raised, it appeared that the members of the Committee were wearing their fiduciary hats and together with all of their advisors, were acting in a manner which was in the best interests of creditors in general. **At no time during these discussions, was there any objection, including by Wilmington Trust or Deutsche Bank, to the process or the roles of the professionals.**

9. Unlike Aurelius, Wilmington Trust and Deutsche Bank, the TM Retirees do not have the luxury of averaging down their financial investment in these cases. The TM Retirees have already lost the investment of their life's work and a substantial piece of their future. The balance sheet and tactical maneuverings of institutional investors has an immediate, dramatic and real impact on the lives of the TM Retirees and similarly situated creditors who are among the constituents which the Committee was formed to protect. This latest side show has already cost this estate millions of dollars which could have been used to pay creditors.

10. Giving any further credence to the disingenuous allegations in the Motion or the Joinders will only serve to exacerbate the chaos and uncertainty in these cases.

11. The Committee has made a knowing and intentional decision regarding its selection of counsel. This Court has approved the retention of such counsel. The Committee trusts Chadbourne and Zuckerman to represent the interests of the Committee before this Court and in the mediation. To now circumscribe the role of counsel or permit parties to dictate the role of Committee counsel would severely prejudice the Committee's ability to be an effective advocate before this Court and at the mediation.

**WHEREFORE,** the TM Retirees and William A. Niese, as a member of the Committee respectfully request that the Motion be denied and that the Court grant such other and further relief as may be just and proper.

Dated: September 21, 2010  
      Wilmington, Delaware

Respectfully submitted,

PINCKNEY, HARRIS & WEIDINGER, LLC

/s/ Adam Hiller
Adam Hiller (DE No. 4105)
1220 North Market Street, Suite 950
Wilmington, Delaware 19801
(302) 504-1497 telephone
(302) 442-7046 facsimile

-and-

Jay Teitelbaum, Esquire
Teitelbaum & Baskin, LLP
Counselors at Law
3 Barker Avenue, Third Floor
White Plains, New York  10601
(512) 474-1554 telephone
(512) 474-1579 facsimile

*Attorneys for the TM Retirees*