# **Exhibit A**

```
                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF DELAWARE

                             )
IN RE:                       )    Bankruptcy Action
                             )    08-13141-KJC
TRIBUNE COMPANY, et al.,     )
                             )    Chapter 11
                             )    Wilmington, DE
              Debtors,       )    April 13, 2010
                             )    10:00 a.m.

                       TRANSCRIPT OF HEARING
               BEFORE THE HONORABLE KEVIN J. CAREY
                 UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtors:            JAMES CONLAN, ESQUIRE
                            BRIAN KRAKAUER, ESQUIRE
                            JAMES BENDERNAGEL, ESQUIRE
                            Sidley, Austin, LLP
                            One South Dearborn Street
                            Chicago, Illinois 60603

Audio Operator:             Al Lugano

Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026-129
                            PHONE:  (856)435-7172
                            FAX:    (856) 435-7124
                            Email:  Dianadoman@comcast.ne

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Appearances Continued)

| | |
|---|---|
| For Creditors Committee: | HOWARD SEIFE, ESQUIRE<br>Chadbourne & Parke, LLP<br>30 Rockefeller Plaza<br>New York, New York 10112<br><br>GRAEME BUSH, ESQUIRE<br>Zuckerman Spaeder, LP<br>1800 M Street NW<br>Suite 1000<br>Washington, DC 20036 |
| For U.S. Trustee: | WILLIAM HARRINGTON, ESQUIRE<br>Office of the U.S. Trustee<br>844 King Street<br>Wilmington, Delaware |
| For JPMorgan: | DON BERNSTEIN, ESQUIRE<br>DENNIS GLAZER, ESQUIRE<br>Davis, Polk & Wardwell, LLP<br>450 Lexington Avenue<br>New York, New York |
| For Retiree Claimants: | JAY TEITELBAUM, ESQUIRE<br>Teitelbaum & Baskin, LLP<br>White Plains, NY |
| For Wilmington Trust: | ROBERT STARK, ESQUIRE<br>WILLIAM M. DOLAN, ESQUIRE<br>Brown, Rudnick<br>7 Times Square #47<br>New York, New York 10036 |
| For Centerbridge: | DANIEL GOLDEN, ESQUIRE<br>ABID QURESHI, ESQUIRE<br>Akin, Gump, Strauss, Hauer & Feld<br>One Bryant Park<br>New York, New York 10036 |
| For Credit Party Lender: | BRUCE BENNETT, ESQUIRE<br>Hennigan, Bennett & Dorman<br>865 South Figueroa Street<br>Suite 2900<br>Los Angeles, CA 90017 |
| For Law Debenture: | DAVID ROSNER, ESQUIRE<br>Kasowitz, Benson, Torres & Friedman<br>1633 Broadway<br>New York, New York 10019 |

# I N D E X

**MOTION TO TERMINATE EXCLUSIVITY**

| | |
|---|---|
| Mr. Conlan | 5, 10 |
| Mr. Bush | 6 |
| Mr. Seife | 12 |
| Mr. Bernstein | 13 |
| Mr. Riley | 14 |
| Mr. Teitelbaum | 15 |
| Mr. Rosner | 18 |
| Mr. Golden | 19 |
| Mr. Stark | 22 |
| Mr. Bennett | 25 |
| THE COURT: Ruling | 32 |

**EXAMINER MOTION**

| | |
|---|---|
| Mr. Stark | 33 |
| Mr. Glazer | 34 |
| Mr. Seife | 36 |
| Mr. Harrington | 38, 60 |
| Mr. Conlon | 42, 52 |
| Mr. Stark | 43, 49, 54, 60 |
| Mr. Bendernagel | 47 |
| Mr. Glazer | 59 |

**MOTION TO CONDUCT DISCOVERY**

| | |
|---|---|
| Mr. Bennett | 67 |
| Mr. Qureshi | 69 |

4

1       (Call to the Order of the Court)
2            THE COURT: Good morning, everyone.
3            MR. CONLAN: Good morning, Your Honor. Jim Conlan
4   from Sidley, Austin on behalf of the debtors. Your Honor,
5   first, if I may, an introduction to provide some context for
6   today's agenda.
7            What we took from the February 18th hearing,
8   including Your Honor's remarks, were that we needed to file a
9   plan with diverse support, and that support of the Creditor's
10  Committee would be good.
11           We've done that. It starts with the settlement
12  support agreement, which I'll sometimes refer to as the SSA.
13  The SSA includes signatories, JPMorgan Chase, as well as
14  Angelo, Gordon, both senior loan claimants.
15           It includes as a signatory, Centerbridge, as a senior
16  note holder, a very big senior note holder, they hold about 37
17  percent of the issue. It includes Law Debenture, the
18  indentured trustee for senior notes. Importantly, the
19  Committee supports the SSA and Mr. Bush will rise in a moment
20  to describe that support.
21           The retirees support and have filed a pleading
22  regarding same. The deal, Your Honor, came together on or
23  about March 30th. Accordingly, we have filed a motion to
24  extend front end exclusivity to today. Sorry, we filed a
25  motion to extend front end exclusivity to March 30th, but,

Conlan - Argument 5

1  frankly, we've altered it since then, because we don't need the
2  front end extension beyond today, because we filed the plan and
3  disclosure statement yesterday.
4     THE COURT: Sorry. Is there a hearing date set on
5  that?
6     MR. CONLAN: For the motion? Yes. Today. We filed
7  the motion to extend, Your Honor, so that the terms of the SSA,
8  which were -- the deal for which was struck on March 30th could
9  be finalized. It was finalized last week, and notice was filed
10 last week by the debtor, with a term sheet describing the SSA
11 attached.
12    The SSA itself was filed yesterday afternoon by
13 JPMorgan. We then continued work on the plan and disclosure
14 statement to reflect the terms of the SSA. Yesterday, we filed
15 that plan and disclosure statement reflecting the SSA. We have
16 set May 20th through your clerk's office as a hearing date on
17 the disclosure statement that was filed yesterday.
18    We will also tee up for that date, for May 20th, a
19 motion for approval of notice and balloting procedures. We
20 will also tee up for that day, May 20th, a motion to extend
21 back end exclusivity to track the balloting and notice order.
22    I want to pause for a moment to ask Mr. Bush, co-
23 counsel, special counsel to the Official Unsecured Creditors
24 Committee to join me to describe their support.
25    THE COURT: Before you do, let me just take the

Bush - Argument                                                     6

scheduling proposal one step further, and that is, if you were to have a approved disclosure statement on May 20, when is it the debtor would contemplate looking for a confirmation hearing date? Just ballpark.

MR. CONLAN: End of July, beginning of August.

THE COURT: Thank you.

MR. BUSH: Good morning, Your Honor. Graeme Bush from Zuckerman, Spaeder. Zuckerman, Spaeder was retained as special counsel to provide independent counsel and advice to the Creditor's Committee in connection with the LBO related claims.

We have done exactly that. We -- the scope of our retention was to investigate the potential fraudulent conveyance and related claims relating to the LBO, to make an evaluation of those claims, to represent the Committee in connection with any settlement negotiations that may occur.

And to pursue litigation, if that became necessary. We were retained by the Committee in mid-August of last year, and Your Honor approved our retention on September 3rd.

Since that time, we have reviewed a very large number of documents. As Your Honor will recall from prior proceedings, over 3.2 million pages of documents have been produced from over 46 parties in the case.

We deposed 7 people from the debtors, from the solvency consultants involved in the transaction, and from

Bush - Argument                                                   7

1   JPMorgan, and we interviewed others.  We worked with financial
2   consultants to evaluate the solvency issues.  We conducted an
3   extensive legal and factual evaluation and analysis of the
4   claims that the debtor may have that might be asserted by the
5   Committee on behalf of the debtor.
6        We were not constrained in anyway in the work that we
7   did.  We reported to the Committee, we did not report, or take
8   direction from any other professional representing the
9   Committee, it was always the Committee that was our client.
10       We coordinated our work with other interested
11  parties, including, importantly, Centerbridge and Law
12  Debenture, and some other parties who were interested in the
13  case.
14       We gave our views to the Committee and made our
15  recommendations to the Committee.  And as Your Honor knows, the
16  Committee authorized and instructed us to prepare a complaint
17  and to file a standing motion.  That standing motion was before
18  Your Honor on February 18th.
19       We have also been involved in all of the settlement
20  negotiations that have occurred in which the Committee was
21  involved, and we believe that our work has been a significant
22  factor in achieving the settlement that's here before you, or
23  that will be before you in due course.
24       We believe that that settlement is a fair and
25  reasonable settlement, and is in the best interests of the

Bush - Argument                                      8

1  creditors as a whole. I note that today is not the day to
2  discuss the merits of the settlement, but just by way of
3  background, under a strict priority here, if there were no
4  fraudulent conveyance and related claims, the bonds and the
5  general unsecured creditors of the Tribune Company would get
6  about 2 percent of their claims.
7       And under the settlement, the bonds and the general
8  unsecured creditors are getting over 35 -- a little over 35
9  percent of their claims, and the subsidiary general unsecured
10 creditors are being paid in full.
11      Unfortunately, there are some creditors who will be
12 getting nothing from the settlement, and that's because of
13 where they stand in the capital structure of the company. And
14 just, again, by way of setting a framework in order for those
15 creditors to achieve any recovery, we would have to be 100
16 percent successful.
17      I don't mean 70 percent, or 60 percent, a hundred
18 percent successful on the claims, in order to produce enough of
19 a recovery for those creditors to get anything out of the
20 settlement, or out of the claims.
21      As Mr. Conlan says, the Creditor's Committee has
22 determined to support the settlement. And as part of that, it
23 will be adjourning the standing motion that is pending before
24 Your Honor sine die, pending the outcome of the settlement
25 approval process.

```
                          Bush - Argument                        9
 1          Let me just talk very briefly about that.  The time
 2   will come when the Court will make a determination whether the
 3   settlement meets the standards for approval under the
 4   Bankruptcy Code.  At that point, there will be a full adversary
 5   process in which those parties who believe that the settlement
 6   is inadequate will have a full opportunity to try and make
 7   their case in front of the Court.  All the parties who are
 8   involved here are very sophisticated and have access to all of
 9   the documents and all of the testimony.
10          And the ability to conduct their own financial and
11   legal analysis and present their case to the Court.  There's no
12   reason that we can see to deviate from the normal process of
13   presenting this to the Court for a determination of whether the
14   settlement is fair and reasonable and in the best interests of
15   the creditors and the estate.
16          I would make one further observation, which is that
17   we were hired, or retained specifically in order to be an
18   independent voice, it's taken us -- or give an independent
19   view.  It's taken us 6 to 7 months since we were retained to
20   conduct the evaluation that's, in part, contributed to us being
21   here today.
22          It's very hard to imagine how anybody else could come
23   in now and do it in any substantially -- in any substantially
24   less -- or shorter period of time.
25          And we think that to do that would be -- to go down
```

```
                        Conlan - Argument                    10
```

1  that path would be, not only unnecessary delay, but a waste of
2  time and resources of the debtor. And that's particularly true
3  in light of the fact that, when the settlement is presented to
4  Your Honor there will be every opportunity to test the bona
5  fides of it.
6         And ultimately it's Your Honor's decision whether the
7  settlement's fair and reasonable.
8         That's all I have right now. If you have any
9  questions, I'm happy to answer them.
10        MR. CONLAN: Your Honor, Jim Conlan, again, on behalf
11 of the debtor. As described by Mr. Bush, but in my words, the
12 plan and the disclosure statement we have filed and the process
13 we have now set in motion, should, in our view, be the prism
14 through which all matters, including those that are up today,
15 are viewed, in order to efficiently administer these cases.
16 That process, the disclosure statement approval process, the
17 approval of the balloting and procedures motion, and ultimately
18 the confirmation hearing, should act as the funnel,
19 procedurally and otherwise, for all other matters.
20        Consequently, and this is a suggestion, and I want to
21 put exclusivity aside for just a moment and deal with that
22 separately, we believe that like the standing motion, which has
23 been continued sine die, that the examiner motion and related
24 matters should be adjourned sine die.
25        And I won't say that again, I'll just refer to it as