## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 22, 2010 at 2:00 p.m. EDT**<br>**Objection Deadline: October 15, 2010 at 4:00 p.m. EDT** |

### DEBTORS' THIRTY-SIXTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3001, 3003, AND 3007[2]

### ("CLAIMS ASSERTED BY EMERSON TUCKER")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC (KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

[2] Mr. Tucker's two proofs of claim are duplicates of each other, which were mailed to two different addresses and therefore separately docketed. To the extent that this Objection does not comply in all respects with Local Rule 3007-1 or with the Settlement Procedures Order [Docket No. 2657], the Debtors submit that such deviation is not material and respectfully request that the Court waive the limitation on the number of substantive objections the Court will hear at the omnibus hearing for which this Objection is scheduled.

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to Claim Nos. 6447 and 6462 filed against Debtor Chicago Tribune Company ("CTC") by claimant Emerson Tucker (collectively, the "Tucker Claim"), copies of which are attached to the Objection as Exhibit A.[3] The Debtors object to the Tucker Claim because the claim (i) is based upon a misstatement of fact concerning statements Mr. Tucker alleges the Chicago Tribune newspaper made about him (which neither the Chicago Tribune nor its sister publication, RedEye, ever made), and (ii) fails to set forth the necessary factual and legal predicates for a claim of defamation, as well as being subject to numerous well-recognized defenses applicable to the reporting of news stories. The Tucker Claim also asserts various causes of action that, as described in more detail below, Mr. Tucker cannot properly assert on any theory of fact or law against CTC.

This Objection is submitted pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). By this Objection, the Debtors request the entry of an order disallowing and expunging the Tucker Claim in its entirety, as indicated in further detail below. In support of the Objection, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.        On December 8, 2008 (the "Petition Date"), each of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008,

---

[3] Again, Mr. Tucker's two proofs of claim are duplicates of each other, which were mailed to two different addresses and therefore separately docketed. Because the claims are duplicates, the Debtors refer to the two proofs of claim as a single claim, i.e., the Tucker Claim, to which the Debtors object. For the avoidance of doubt, the Debtors seek to have both of Mr. Tucker's claims disallowed and expunged from the Claims Register.

the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Chicago National League Ball Club, LLC, voluntarily commenced a chapter 11 case on October 12, 2009, and that case was procedurally consolidated with the other Debtors' chapter 11 cases by an order of the Bankruptcy Court entered October 14, 2009.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

3.      On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Committee").

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Rules 3001, 3001, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND OF THE DEBTORS' CLAIMS PROCESS

5.      On March 23, 2009 the Debtors filed their schedules of assets and liabilities and statements of financial affairs [Docket Nos. 567-789], which were subsequently amended on April 13, 2009 [Docket Nos. 894-957], June 12, 2009 [Docket Nos. 1343-1453], March 2, 2010 [Docket Nos. 3548-3599], and May 14, 2010 [Docket No. 4388] (collectively, the "Schedules").[4]

---

[4] Tribune CNLBC, LLC filed its schedules of assets and liabilities and statements of financial affairs on October 12, 2009. [CNLBC Docket Nos. 8 and 9], which were subsequently amended on December 9, 2009 [Docket No. 2779] and May 14, 2010 [Docket No. 4389].

6.     On March 26, 2009, the Court entered an order (the "Bar Date Order") (i) establishing June 12, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.[5]  Of relevance to this Objection, the Bar Date Order granted any claimants holding a claim affected by amendments to the Schedules an additional 30 days from the applicable amendment or supplement to the Schedules to file a proof of claim or amend a previously filed proof of claim in connection therewith.

7.     Mr. Tucker's claim was not included on CTC's original Schedules; however, his claim was added as a contingent, unliquidated, disputed claim on CTC's Schedule F as a result of the March 2, 2010 amendments [*see* Docket No. 3552].  Mr. Tucker was accordingly mailed notice of the applicable Bar Date and a proof of claim form on March 5, 2010, and filed his proofs of claim, each in the amount of $300,000, with the Claims Agent (as defined below) on March 29, 2010.

8.     To date, approximately 6,330 Proofs of Claim have been filed in these chapter 11 cases.  The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Epiq Bankruptcy Solutions, LLC ("Epiq"), the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

---

[5] The Court set July 26, 2010 at 4:00 p.m. as the deadline for filing of Proofs of Claim against Tribune CNLBC, LLC.  (*See* Order Pursuant to Sections 501, 502, and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Date For Filing Proofs of Claim in the Tribune CNLBC, LLC Bankruptcy Case and Approving the Form and Manner of Notice Thereof [Docket No. 4709].)

## INFORMATION CONCERNING THE TUCKER CLAIM

9.      Mr. Tucker filed a *pro se* action upon which the Tucker Claim is based in the

United States District Court for the District of New Jersey on May 2, 2008.[6] Mr. Tucker's

original complaint filed at that time asserted a wide range of claims against numerous

defendants.  Of relevance to this Objection, paragraph I of Mr. Tucker's original complaint

alleged defamation, slander, libel, and due process and equal protection violations against

"Chicago Tribune newspaper" and nine other newspapers and television stations in the New

York and Chicago metropolitan areas (the "<u>Media Defendants</u>").[7] The original complaint was

dismissed without prejudice November 18, 2008 on multiple grounds, including, as to the claims

against the Media Defendants, improper joinder to the claims Mr. Tucker asserted against

various government authorities and officials relating to his arrest and detention.  The District

Court's November 18th dismissal opinion and order are attached collectively as <u>Exhibit C</u>.  As a

result, Mr. Tucker had no action pending against CTC, or any other Debtor, as of the Petition

Date.

10.    Mr. Tucker filed an amended complaint in March 2009 (the "<u>Complaint</u>").

The Complaint again named "Chicago Tribune Newspaper", among other media outlets, as a

defendant, and made the same allegations against the Media Defendants as the original

complaint, despite the fact that CTC filed a chapter 11 petition in the interceding time between

Mr. Tucker's original and amended complaints.  Mr. Tucker neither sought nor obtained relief

from the automatic stay pursuant to section 362(a) of the Bankruptcy Code prior to filing the

Complaint.

---

[6] The case is styled *Tucker v. N.Y. Police Dep't et al.*, Case No. 2:08-cv-02156.  A copy of the docket sheet is attached as <u>Exhibit B</u>.
[7] The Debtors assumed for purposes of scheduling Mr. Tucker's claim (as a contingent, unliquidated, disputed claim) that his intention in naming "Chicago Tribune newspaper" was to assert a claim against CTC, as the entity that publishes the <u>Chicago Tribune</u>.  The Debtors have made the same assumption in preparing this Objection.

11.    On February 23, 2010, the District Court again granted a motion by certain of the Media Defendants to dismiss the Complaint without prejudice on grounds of improper joinder. (Order 3.)  In so holding, the Court reasoned that "the accuracy of news organizations' reporting regarding Plaintiff's criminal record, and status as a suspect in various criminal matters, present completely distinct factual and legal questions from Plaintiff's numerous underlying claims (e.g., false arrest, false imprisonment, violations of the Equal Protection Clause)." (*Id.*)  The Court thus agreed that the Defendants' claims were improperly joined in Mr. Tucker's action and accordingly dismissed Mr. Tucker's claims against the moving defendants. (*Id.*)  In a footnote, the Court clarified: "For the same reasons, the Court will also dismiss Plaintiff's claims against CBS Television News Broadcast, CNN Television News Broadcast, Chicago Sun-Times Newspaper and Chicago Tribune Company and the Chicago Tribune Newspaper (the Tribune filed a notice of bankruptcy on September 6, 2009)." (*Id.* at 1 n.1.)  The District Court's February 23rd opinion and order are collectively attached to the Objection as <u>Exhibit D</u>.  Mr. Tucker appealed the second dismissal, and his appeal is presently pending before the Third Circuit.[8]

12.    The Complaint names over 45 defendants, including the Media Defendants. Other named defendants include, among others, the New York Police Department, New York City Mayor Michael Bloomberg, and former Governor of Illinois Rod Blagojevich.  Count IV of the Complaint sets out Mr. Tucker's claims against the Media Defendants and other parties,

---

[8] By filing a proof of claim against CTC, Mr. Tucker unquestionably submitted to the jurisdiction of this Court for purposes of adjudicating his claim. *See, e.g., United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1380 (2010) (claimant's filing of proof of claim in bankruptcy case was an act that submitted claimant to the bankruptcy court's jurisdiction with respect to that claim).  Given that Mr. Tucker's filing of the Complaint in March 2009 was void as a violation of the automatic stay, the existence of that appeal does not divest this Court of jurisdiction over this Objection. *See, e.g., In re W.R. Grace & Co.*, 384 B.R. 678, 685-86 (Bankr. D. Del. 2008) (dismissing civil action filed in violation of the automatic stay and deeming such action "null and void as to the Debtors").  In addition, as a practical matter, Mr. Tucker's exact grounds for appeal remain unclear; accordingly, to ensure that the Debtors' Claims Register reflects only valid and legitimate claims against the Debtors to the maximum extent possible, the Debtors have filed this Objection.

alleging the defendants labeled Mr. Tucker as a "serial killer" because "he [is] a member of the black race."[9]  (Compl. ¶ 122.)

13.  Mr. Tucker further alleges that, as a result of the Media Defendants purportedly labeling him a "serial killer", he "'sustained' actual injury in the form of defamation of character, damages to his good reputation, an immediate threat of danger to the life, liberty, and the interference with his relationships with females, with his lifestyle, with any jobs that he may get in the public/community and with his small business plans that he was about to set up as a 'Black Man.'" (*Id.* at ¶ 169.)  Mr. Tucker concludes that the Media Defendants, by reporting his arrest and investigations surrounding him, "have all trampled upon his Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution." (*Id.*) In addition, Mr. Tucker asserts that by "labeling plaintiff a serial killer in their reported newspaper articles and on their Television Station reports," the Media Defendants "facilitated" libel, slander and defamation "thereby violating his rights to privacy under both State and federal law." (*Id.* at ¶ 184 (citation omitted).)

14.  Mr. Tucker attempts to support his allegations over the course of several pages by describing news stories published in a variety of newspapers (some of which are unnamed) that Mr. Tucker apparently believes either exemplify similar unfair treatment of the subject of an arrest by the Media Defendants or, in contrast to Mr. Tucker's case, he believes demonstrate fair treatment of the accused.  From these articles, Mr. Tucker concludes in the Complaint that the Media Defendants, including CTC, "have acted in deliberate indifference to his safety when they label him as a killer ('serial') due to he [sic] being black, while at the same time they label similarly situated white people whom [sic] are suspects in murders as just

---

[9] As discussed in detail at paragraphs 20-22, *infra*, and as demonstrated by the articles attached hereto as <u>Exhibit E</u>, this allegation is factually incorrect.

'suspects' only, thereby violating his rights under the equal protection clause of the Fourteenth Amendment." (*Id.* at ¶ 185.)

15.   As compensation for his alleged injuries, Mr. Tucker requests nominal, actual, special, and treble damages from the Media Defendants in an amount to be determined at trial. (*Id.* at 184 ¶ (a)-(d).)  In addition, he seeks compensatory damages against the Media Defendants in the amount of $50,000,000, punitive damages in the amount of $50,000,000, and costs, including attorneys' fees. (*Id.* at 136 ¶ (f)-(g).)[10]

16.   The Tucker Claim attaches no supporting documentation other than a portion of the Complaint, and provides no additional explanation for the basis or amount of the claim. Thus, upon review of the Tucker Claim, their own books and records, and the operative facts and law, the Debtors have determined that they have no liability whatsoever to Mr. Tucker, much less that Mr. Tucker is entitled to an allowed claim of $300,000.

## **RELIEF REQUESTED**

17.   By this Objection, the Debtors seek entry of an order, pursuant to Sections 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003 and 3007, disallowing and expunging the Tucker Claim in its entirety because (i) the Tucker Claim is based upon Mr. Tucker's misstatement of fact (namely, that the <u>Chicago Tribune</u> stated or plausibly implied Mr. Tucker was a "serial killer"), which is the sole factual basis for his Complaint as it relates to CTC; (ii) the Tucker Claim fails to set forth the required factual and legal bases for a claim of defamation, libel and slander, and is subject to numerous well-recognized defenses applicable to the reporting of news stories; and (iii) various additional claims the Complaint asserted (or possibly asserted) as part of the Tucker Claim are otherwise improperly asserted against CTC. The Debtors also seek an order directing the Claims Agent to expunge the two proofs of claim

---

[10] The Debtors are unaware of how Mr. Tucker calculated the $300,000 amount set forth in the Tucker Claim.

comprising the Tucker Claim from the Claims Register so that the Claims Register accurately reflects the claims outstanding against the Debtors' estates.

## BASIS FOR RELIEF

18.    When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—*i.e.*, a document providing proof of a "right to payment"—against the debtor's estate. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007); 11 U.S.C. § 101(5) (a "claim" for bankruptcy purposes means a "right to payment," whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured).  A party asserting a claim against a debtor must initially allege sufficient facts to support its claim, and only if this standard of sufficiency is met is the claim entitled to a presumption of validity.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992); *see also* Fed. R. Bankr. P. 3001(f).

19.    Section 502(b)(1) of the Bankruptcy Code governs claims objections and provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>> (1)    such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

20.    The Tucker Claim is not an allowable claim for several reasons.  Most fundamentally, the Tucker Claim fails because there is no factual basis for the claim.  Although Mr. Tucker repeats throughout the portions of the Complaint attached to his proof of claim that his claim is based on the <u>Chicago Tribune</u> and the other Media Defendants calling him a "serial killer," the relevant articles neither contain such a statement nor provide any basis on which to

conclude plausibly that the Chicago Tribune made such a statement. The only articles CTC has

published that mention Mr. Tucker are two versions of the same article—a more detailed version

published in the Chicago Tribune on May 18, 2007 and an abbreviated version published the

same day in CTC's free daily newspaper the RedEye—and a subsequent article published in the

Chicago Tribune January 15, 2008.[11]  The three articles are attached hereto as Exhibit E.[12]

        21.      The first two articles contain a straightforward report concerning Mr.

Tucker's arrest and investigations relating to him, and quote Chicago police detective John

Climack as saying that Mr. Tucker was a suspect in a homicide investigation in New York City

for a 2003 murder and a suspect in a Chicago investigation for a 2006 murder, and that both

authorities charged and arrested Mr. Tucker for those crimes. In addition, the articles quote

Detective Climack as saying that police in two additional jurisdictions suspected Mr. Tucker's

involvement in "other cold cases." See Exhibit E. The articles also report that Mr. Tucker had

previously served 11 years in a New Jersey prison for murder and was released in 2001. See Id.

The January 2008 article reiterates the same details regarding Mr. Tucker's arrest and the crimes

with which he was charged, and reports that Mr. Tucker was required to submit to DNA testing

in connection with the Chicago murder investigation.

        22.      The May 2007 Chicago Tribune articles simply quote police authorities as

saying Mr. Tucker had been arrested and charged with two separate murders, in two separate

jurisdictions, and that Mr. Tucker had previously been convicted of murder. The January 2008

article is a seven-sentence report simply setting forth the fact that a judge ordered Mr. Tucker to

---

[11] The January 15, 2008 Chicago Tribune article refers to Mr. Tucker as "Emerson Turner." The content of the article, however, makes evident that the report concerns the same Emerson Tucker as the May 18, 2007 articles. The article's reference to "Turner" rather than "Tucker" appears to be an inadvertent error that has no effect on Mr. Tucker's claim or the relief the Debtors are seeking herein.
[12] See Declaration of Debra Bade, attached hereto as Exhibit F, attesting that the declarant has conducted a review of the Chicago Tribune's electronic archives and the three articles in Exhibit E are the only three articles relevant to the Complaint.

submit to DNA testing. The articles do not, however, contain the alleged statement Mr. Tucker

claims is defamatory. Nor does Mr. Tucker anywhere allege that the statements the articles

actually contain are false. Without making any claim as to the falsity of the published factual

statements, Mr. Tucker twists those statements to imply the <u>Chicago Tribune</u> painted him in a

false light by suggesting he is a "serial killer." For a false light claim to proceed, however, a

plaintiff is required to demonstrate that the statements the defendant made were false. *Romaine*

*v. Kallinger*, 109 N.J. 282, 294 (1988). Mr. Tucker has not even made such an allegation, much

less provided any basis on which the Court could conclude that any statements in the articles are

false.

        23.     In any event, whether Mr. Tucker's claim is for defamation or false light,

CTC is insulated from liability because its articles contained a "fair report" of an official action.

This privilege, considered "one of the most powerful and frequently invoked common-law

defenses," attaches where the report is an accurate, complete or fair abridgment of the occurrence

that is recounted. *Salzano v. N. Jersey Media Group Inc.*, 993 A.2d 778, 786, 798 (N.J. 2010)

(quoting Rodney A. Smolla, *Law of Defamation* § 8.67 (Thomson Reuters/West 2d ed. 2008));

*Solaia Technology, LLC v. Specialty Pub. Co.*, 852 N.E. 2d 825, 842 (Ill. 1997). Nowhere in his

pleading does Mr. Tucker deny that he was arrested and charged with these two separate crimes,

or that he served 11 years in prison for a murder conviction. Thus, his defamation and similar

claims must fail.

        24.     Even if a court found the fair report privilege did not apply, the Tucker

Claim is not allowable as a matter of law. Mr. Tucker has the burden under the laws of any

jurisdiction that may be relevant (New Jersey or Illinois) to show that specific false statements

the <u>Chicago Tribune</u> made resulted in specific harms; but he has failed to do so. *See, e.g.,*

*Naleway v. Agnich*, 897 N.E. 2d 902, 908 (Ill. App. Ct. 2008) ("To establish defamation, a plaintiff must present facts showing that the defendant made a defamatory statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages.") (citation omitted); *Petersen v. Meggitt*, 969 A.2d 500, 507 (N.J. Super. Ct. App. Div. 2009) ("In any defamation action, the plaintiff bears the burden of establishing, in addition to damages, that the defendant '(1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff.'") (citation omitted); *see also Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518 (D.N.J. 1998) (without specific allegations as to what was defamatory, there can be no claim for defamation).

      25.    Mr. Tucker has not even attempted to make such a showing in either the Complaint or in his proof of claim. Instead, Mr. Tucker only repeats several times that the Chicago Tribune's alleged description of him as a "serial killer" caused him various harms, most particularly "actual injury in the form of defamation of character, damages to his good reputation, an immediate threat of danger to the [sic] life, liberty, and the interference with his relationships with females, with his lifestyle, with any jobs that he may get in the public/community and with his small business plans that he was about to set up as a 'Black Man.'" (Compl. ¶ 169.) It is clear from a review of the relevant articles, however, that this claim is baseless because CTC never published the statements Mr. Tucker attributes to its newspapers. As a result, the Tucker Claim cannot stand.[13]

---

[13] The Tucker Claim also provides no evidence or basis on which to conclude that (i) any of the harms asserted therein have in fact been visited on Mr. Tucker, or (ii) assuming for argument's sake that they have, that those harms are in any way tied to any statement made by or action of the Chicago Tribune, particularly given that the Tucker Claim is based upon a statement that the Chicago Tribune did not make. These factors provide independent grounds on which to disallow the Tucker Claim beyond those articulated above and elsewhere in the Objection.

26.     Further, in Illinois, even a defamatory statement will not be *per se* actionable if it is reasonably susceptible to an innocent construction. *Green v. Rogers*, 917 N.E. 2d 450, 462-63 (Ill. 2009). Under Illinois law, in evaluating whether a statement is susceptible to an innocent construction, a court must consider the statement in context, the express language contained in the statement, and any implications arising from those words. *Id.* Here, the Chicago Tribune articles contained no statement that Mr. Tucker committed any murders in a serial fashion. Instead, the Chicago Tribune articles were simply a report of the investigations relating to Mr. Tucker and his prior arrest and conviction, which Mr. Tucker has not even claimed, let alone proved, to be factually inaccurate.[14]

27.     Further, as a limited purpose public figure, to support his defamation claim, Mr. Tucker must prove not only that the statements Chicago Tribune published about him were false, but also that they were published with actual malice. Mr. Tucker, however, makes no allegation, apart from assertions of unspecified racial animus, that the Chicago Tribune acted from actual malice in purportedly labeling him a "serial killer." Mr. Tucker must demonstrate actual malice on the part of the Chicago Tribune in making any allegedly-defamatory statements about him because applicable law provides that Mr. Tucker's arrest and criminal record rendered him a limited-purpose public figure. *See, e.g., Berkery v. Estate of Stuart*, 988 A.3d 1201, 1206 (N.J. Super. Ct. App. Div. 2010) ("an individual's involvement in publicized criminal activities and associations with organized criminal groups qualifies as a public controversy or issue that gives rise to limited-purpose public figure status") (citation and internal quotations omitted). As

---

[14] Moreover, in light of the fact that the murders the Chicago Tribune articles reported took place over at least a 15-year period, the conduct the articles attributed to Mr. Tucker would not meet the definition of "serial killing," which requires the murder of "more than three victims one at a time in a relatively short interval." *See* wordnetweb.princeton.edu/perl/webwn; *see also Salzano*, 993 A.2d 778 (New Jersey court consulted dictionary to determine whether statement was defamatory); *Romaine v. Kallinger*, 537 A.2d 284, 289 (N.J. 1988) (same); *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 45 (N.J. 1989) (same); *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1138 (N.J. 1999) (same).

a limited-purpose public figure, Mr. Tucker was required to prove the <u>Chicago Tribune</u> acted out

of actual malice in allegedly publishing defamatory statements about him. *See, e.g., Imperial*

*Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1020 (Ill. 2008) ("If the

plaintiffs are public figures or officials, the first amendment precludes them from obtaining

redress in a defamation action unless they can prove that the allegedly defamatory statements

were made with actual malice.") (citation omitted); *Berkery*, 988 A.3d at 1206 ("recovery for

defamation is limited by the First Amendment requirement that public officials or public figures

prove actual malice to recover damages") (citation and internal quotations omitted). The

Complaint, however, does not allege – much less demonstrate – actual malice on the part of the

<u>Chicago Tribune</u>, and on that basis, Mr. Tucker's defamation claim also fails on its merits. *See*

*Darakjian v. Hanna*, 366 N.J. Super. 238, 248-249 (App. Div. 2004) (affirming dismissal of

complaint where plaintiff did not provide facts demonstrating defendant's malice).

        28.     Finally, Mr. Tucker has improperly asserted due process and equal

protection claims against non-state actors, including CTC. To establish a violation of due

process and equal protection rights under the Constitution, a plaintiff must demonstrate the

allegedly unconstitutional conduct (1) was committed by a person acting under the color of state

law and (2) deprived him of rights, privileges, or immunities secured by the Constitution or

federal laws. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). As the <u>Chicago</u>

<u>Tribune</u> is neither a state actor nor a person acting under the color of state law, the <u>Chicago</u>

<u>Tribune</u> is an improper defendant. Thus, Mr. Tucker's equal protection and due process claims

are meritless. *See, e.g., Burke v. Ocean County Prosecutor's Office*, No. 07-3623, 2008 U.S.

Dist. LEXIS 8646, at *5 (D. N.J. Feb. 4, 2008) (declining to recognize a newspaper as a state

actor in a section 1983 claim).

29.     Accordingly, for the foregoing reasons, the Tucker Claim is not an allowable claim and is not entitled to any distribution in these chapter 11 cases.  The Debtors object to the Tucker Claim and request it be disallowed in its entirety and expunged.  The Debtors also request that the Court authorize the Claims Agent to expunge the Tucker Claim from the Claims Register so that the Claims Register reflects more accurately the claims asserted and outstanding against the Debtors.

## NOTICE

30.     Notice of this Objection has been provided to:  (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' postpetition financing facility; (v) Emerson Tucker; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

31.     No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001, 3003, and 3007, (i) disallowing in full and expunging the Tucker Claim; (ii) directing the Claims Agent to expunge the Tucker Claim from the Claims Register; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
            September 22, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Bryan Krakauer
Kenneth P. Kansa
Alison L. Triggs
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone:  (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION