# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 22, 2010 at 2:00 p.m. EDT**<br>**Objection Deadline: October 15, 2010 at 4:00 p.m. EDT** |

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING DEBTOR TRIBUNE COMPANY TO RETAIN AND EMPLOY SITRICK AND COMPANY AS CORPORATE COMMUNICATIONS CONSULTANTS PURSUANT TO 11 U.S.C. § 327(a), *NUNC PRO TUNC* TO AUGUST 26, 2010

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors"), hereby apply to the Court (the "Application") for entry of an order authorizing Debtor Tribune Company ("Tribune") to retain and employ

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Sitrick And Company, a division of Sitrick Brincko Group, LLC ("Sitrick") as corporate communications consultants in these chapter 11 cases, pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Debtors submit (i) the Declaration of Michael S. Sitrick, the chairman and chief executive officer of Sitrick, a copy of which is attached hereto as Exhibit A and incorporated herein by reference, and (ii) that certain engagement letter, dated August 26, 2010, by and between Tribune and Sitrick (the "Engagement Letter"), a copy of which is attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On December 8, 2008 (the "Petition Date"), each of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only. An additional Debtor, Chicago National League Ball Club, LLC, voluntarily commenced a chapter 11 case on October 12, 2009, and that case was procedurally consolidated with the other Debtors' chapter 11 cases by an order of the Bankruptcy Court entered October 14, 2009.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee.

3.  On December 18, 2008, the Office of the United States Trustee appointed an official committee of unsecured creditors in these cases (the "Committee").

4.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

5.  The Debtors seek to retain and employ Sitrick as corporate communications consultants in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014. The services Sitrick will provide, and the terms and conditions under which Sitrick will provide such services, are summarized in this Application, and are described more fully in the Engagement Letter attached hereto as Exhibit B.

6.  The Debtors collectively comprise one of the world's leading media companies, with print and broadcast media operations in numerous metropolitan markets throughout the United States. As a first-tier global media company, the Debtors and their reorganization proceedings have been the subject of intense media interest and scrutiny since the commencement of those proceedings. The Court and the major parties-in-interest in the Debtors' chapter 11 cases are doubtless aware that the level of media scrutiny and interest in the Debtors' reorganization process far exceeds that even of large chapter 11 proceedings in this District.

7.  The process of addressing, responding to, and proactively engaging media reports and interest in the Debtors and their reorganization proceedings requires an exceptional commitment of resources and effort in addition to the already considerable media relations efforts that attend the non-restructuring aspects of the Debtors' businesses. The Debtors have

3

accordingly determined that it is in their estates' best interests to retain Sitrick to permit them to address various restructuring-related aspects of their media relations efforts, and to develop their overall media relations plan for the balance of their chapter 11 cases and for the period following their emergence. The retention of Sitrick as described in this Application and the Engagement Letter will permit the Debtors to manage their restructuring-related media relations efforts with greater effectiveness at a comparatively modest cost, and should be approved as a result.

8. The Debtors have selected Sitrick to provide advice and consulting services relating to their media relations efforts based on Sitrick's exceptional experience in media matters relating to major corporations generally, and in working with large companies that are parties to restructuring proceedings in particular. Because of Sitrick's broad and deep experience in restructuring areas, the Debtors may call upon Sitrick to perform a wide range of strategic communications services in connection with their reorganization, and hence request authority to retain Sitrick to perform strategic communications services generally, rather than attempt to delineate specific tasks Sitrick would or might perform. Any services Sitrick may perform, however, will not duplicate those services Daniel J. Edelman, Inc. (discussed below) is providing. Sitrick was founded in 1989 and is one of the nation's top strategic communications companies, focused on providing advice to large corporate clients on crisis communications. Since its founding, Sitrick has provided services to corporations in more than 300 chapter 11 cases and approximately 100 out-of-court restructurings. Sitrick Decl. ¶ 3.

9. The services Sitrick provides as a corporate communications consultant will not duplicate services the Debtors' other professionals are providing. Specifically, the Debtors have previously retained Daniel J. Edelman, Inc. ("Edelman") as corporate communications and investor relations consultants pursuant to sections 327(a) and 1107 of the

Bankruptcy Code, as authorized by an order of the Bankruptcy Court entered on March 9, 2009. (*See* Order Authorizing Debtors to Retain and Employ Daniel J. Edelman, Inc. as Corporate Communications and Investor Relations Consultants Pursuant to 11 U.S.C. §§ 327(a) and 1107, *Nunc Pro Tunc* to the Petition Date, Docket No. 498.) Since even before the commencement of these chapter 11 cases, the Debtors have utilized Edelman's services judiciously to develop scripts for call centers providing information to creditors and other stakeholders concerning the Debtors' chapter 11 cases, provide limited advice in addressing certain reorganization-related media matters, and function in a role similar to that of an investor relations consultant in an entity outside the chapter 11 context, *i.e.*, facilitating the Debtors' provision of information concerning the state of their businesses, finances, and future prospects in an effective and organized fashion. The Debtors have been pleased with Edelman's services, and wish to continue using those services on a limited basis during these chapter 11 cases, particularly in connection with necessary communications that will attend the Debtors' emergence from chapter 11.

      10.    The Debtors have now determined that it is beneficial for them to retain and employ Sitrick to provide advice and consultation on certain other media-related issues respecting their businesses in light of the considerable media interest generated by the Debtors' restructuring proceedings, which level of interest has only intensified in recent months. Specifically, the Debtors seek to retain and employ Sitrick, as a leading media relations firm, to provide advice and render services that would enable the Debtors to respond proactively and effectively to rumors, potential news stories, news stories, blogs and other digital and traditional media regarding their businesses and their restructuring. Sitrick's services will also encompass providing advice and consultation concerning the Debtors' overall media strategy. Neither

Edelman nor any other outside advisor has performed this role to date during the Debtors' chapter 11 cases. Given the effect (both positive and detrimental) that both digital and traditional media stories have and can have on the company and its restructuring efforts, it would now be beneficial for the Debtors to retain Sitrick to perform such a role given the high level of scrutiny the media is paying to the Debtors and their reorganization proceedings and the benefit to the Debtors, as a leading global media company, to address rumors, potential media reports and actual media reports about their businesses and restructuring effectively and proactively.

11.     The Debtors' management will closely monitor the services both Sitrick and Edelman perform to ensure there is no overlap or duplication of effort and cost. The Debtors' management has already met jointly with representatives of Sitrick and Edelman to discuss the parties' retentions and the scope of services each will provide, and both Sitrick and Edelman are, in the Debtors' view, clear as to the scope of their respective services. Based on the difference in focus of the two firms' specialties – Sitrick providing tailored media relations advice and other strategic communications counsel as needed and Edelman providing more traditional creditor/investor outreach – the Debtors do not believe any significant risk of overlap or duplication exists. The limited and judicious nature of the Debtors' use of Edelman's services to date is additional evidence that the Debtors will, in practice, ensure that Sitrick and Edelman only provide essential services following the approval of Sitrick's retention by the Debtors.[2]

12.     Upon approval of the Engagement Letter by the Bankruptcy Court, the Engagement Letter provides that Tribune will pay to Sitrick a non-refundable retainer of sixty

---

[2] The record before the Court concerning Edelman's fees makes clear that the Debtors have been economical and efficient in utilizing Edelman's services to date. From commencement of the Debtors' chapter 11 cases in December 2008 through June 2010, Edelman's fees in these cases totaled $70,924. (*See* Quarterly Fee Applications of Daniel J. Edelman, Inc., Docket Nos. 1750, 2357, 3121, 4038, and 5009.) This comparatively modest fee total provides proof positive that the Debtors' management has managed the services of Edelman closely, a pattern of strong management that will continue with respect to Tribune's retention of Sitrick and the relationship between the two professionals' retentions as well.

thousand dollars ($60,000.00). *See* Engagement Letter § 2. Pursuant to the terms and conditions of the Engagement Letter, Sitrick's fees will be applied against the retainer and will be determined in accordance with Sitrick's standard hourly billing rates, which range from $185 to $895 per hour, depending on the professional performing the services. Once the retainer has been fully applied against time charges, additional time charges will be billed as incurred.

    13. Tribune shall also reimburse Sitrick for all reasonable and necessary out-of-pocket expenses Sitrick incurs in the course of providing services to the Debtors. In connection with such expenses, the Engagement Letter provides that Tribune will pay to Sitrick, upon approval of the Engagement Letter by the Bankruptcy Court, an expense advance of $10,000, from which such expenses shall be deducted and thereafter billed to Tribune. *See* Engagement Letter at § 3. As detailed in the Engagement Letter, Sitrick will be required to submit applications for allowance of its fees and reimbursement of its expenses to the Bankruptcy Court, and will be compensated for its services and reimbursed for its expenses in accordance with the terms of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, and applicable orders of the Bankruptcy Court.

    14. As described more fully therein, the Engagement Letter further provides that Tribune will indemnify and hold harmless Sitrick and all its affiliates for any losses, claims, damages, liabilities, and costs and expenses (including, but not limited to, reasonable attorneys' fees) arising from the engagement. In accordance with the prevailing practice for professional retentions in this Circuit, however, such indemnification shall not, however, apply to any losses, claims, damages, liabilities, costs or expenses Sitrick or its affiliates incurs as a result of its gross negligence, bad faith, self-dealing, breach of fiduciary duty, or reckless or willful misconduct.

7

As with its fees, all requests by Sitrick for payment of indemnity pursuant to the Engagement Letter shall be made by application and subject to the Bankruptcy Court's approval.

15. In addition, the Engagement Letter provides that the indemnification provisions shall not apply to any of Sitrick's or its affiliates' losses, claims, damages, liabilities, costs, or expenses that relate to a dispute in which the Debtors allege the breach of Sitrick's contractual obligations, except to the extent the Bankruptcy Court determines indemnification would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003). Such limitation shall only apply for as long as the Bankruptcy Court has jurisdiction over the payment of fees and expenses provided for in the Engagement Letter.

16. Based on Sitrick's representations to the Debtors, and to the best of the Debtors' knowledge, information, and belief, Sitrick has no connection to the Debtors, their creditors, the Office of the United States Trustee for Region 3, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, other than its representation of the Debtors in connection with these cases and except as set forth in the Sitrick Declaration. *See* Sitrick Decl. ¶ 4. Sitrick has advised the Debtors that it is not employed by, and has not been employed by, any entity other than the Debtors in the matters related to these chapter 11 cases. *Id.* The Debtors have provided Sitrick with a list of parties-in-interest in their chapter 11 cases. Sitrick has conducted a search of its records to identify parties-in-interest who it currently represents or formerly represented with respect to matters unrelated to the Debtors' cases. The Sitrick searched are listed on Schedule 1 to the Sitrick Application, while parties listed on Schedule 1 who are Sitrick's current and former clients are detailed on Schedule 2 to the Sitrick Declaration.

17. Despite Sitrick's efforts to identify and disclose its connections with parties-in-interest in these cases, because the Debtors and their non-Debtor affiliates consist of over 115 entities with thousands of creditors and other relationships, Sitrick has advised Tribune that it is unable to state with certainty that it has disclosed every client relationship or other connection that may be of relevance to its conflicts check for this engagement. In this regard, if Sitrick discovers additional information that requires disclosure, Sitrick has advised Tribune that it will file a supplemental disclosure with the Court as soon as practicable. In addition, Sitrick has advised Tribune that it will conduct an ongoing review of its relationships relevant to the Debtors and these chapter 11 cases, and will update its disclosures as necessary. Sitrick Decl. ¶ 9.

## BASIS FOR RELIEF

18. The Debtors' retention of Sitrick is authorized by section 327(a) of the Bankruptcy Code, which provides that a debtor in possession, with the court's approval, may employ professionals who "do not hold or represent an interest adverse to the estate," and who are "disinterested persons." 11 U.S.C. § 327(a); *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991) (quoting *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988)) (to be retained pursuant to section 327(a), a professional person "must 'not hold or represent an interest adverse to the estate' and must be a 'disinterested person'"); Fed. R. Bankr. P. 2014 (setting out the procedural requirements to apply for an order authorizing employment of professionals under section 327(a)). A "disinterested person" is one who does not have an interest materially adverse to the interest of the estate by reason of any direct or indirect relationship with the debtor, or for any other reason. *See* 11 U.S.C. § 101(14)(e).

19. To Tribune's knowledge, and based on Sitrick's representations in the Sitrick Declaration, Sitrick (i) is not a creditor, an equity security holder, or an insider of any of the Debtors, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of any of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, any of the Debtors or for any other reason. Tribune has additionally reviewed the Sitrick Declaration and its schedules and notes that Sitrick has represented no party-in-interest (other than its proposed representation of Tribune) in connection with the Debtors' chapter 11 cases. Accordingly, Sitrick is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code, and is therefore eligible for retention by Tribune in these cases as set forth in this Application.

20. Retaining Sitrick to provide corporate communications consultation services is in the best interests of the Debtors and their estates and creditors as a whole. Sitrick will provide advice and services that will enable the Debtors to tailor their media strategy to respond in the most effective and efficient manner to rumors, potential media reports, media reports, news stories, blogs, and other communications regarding the Debtors' restructuring of their businesses, and will facilitate the Debtors' development of an effective media strategy in connection with the balance of their chapter 11 cases and their emergence from chapter 11. The Debtors therefore request this Court's authorization to retain Sitrick.

21. Tribune seeks to retain Sitrick *nunc pro tunc* to August 26, 2010, when Sitrick first began providing corporate communications consultation services to the Debtors. It is well established that a bankruptcy court has the power to grant retroactive approval of employment of a professional in a chapter 11 case. *See, e.g., In re Arkansas Co., Inc.*, 798 F.2d

645, 648 (3d Cir. 1986) (authorizing retroactive approval of the employment of a professional pursuant to section 327(a) of the Bankruptcy Code); *In re Primary Health Sys. Inc.*, Case No. 99-0615, 2002 WL 500567 (D. Del. Mar. 28, 2002). To exercise its discretion to grant retroactive approval, the bankruptcy court must find that it would have granted prior approval pursuant to the requirements of section 327, and that other factors counsel in favor of retroactive approval, including, among other factors, (1) whether the applicant was under time pressure to begin service without approval; (2) the length of the delay; and (3) the extent to which compensation to the applicant will prejudice innocent third parties. *Arkansas*, 798 F.2d at 650.

22. Retroactive approval of Sitrick's retention is appropriate under the circumstances. First, Sitrick's retention satisfies the requirements of section 327(a). Further, it was necessary for Sitrick to begin providing services to the Debtors before obtaining Bankruptcy Court approval for such services due to the time-sensitive nature of developing the Debtors' responses to increasingly-intense media coverage of the Debtors' businesses and restructuring efforts. The Debtors note that they are filing the Application within one month of the commencement of Sitrick providing services, very shortly after the parties executed the Engagement Letter, and that the Application is being noticed for the first available omnibus hearing after execution of the Engagement Letter. Moreover, Sitrick's fees in connection with its corporate communications consultation services to date are relatively modest, totaling approximately $18,000 including expenses, and as a result, the Debtors believe compensating Sitrick for the services it has rendered will not prejudice any third parties. The Debtors therefore request that the Court approve Sitrick's retention on a *nunc pro tunc* basis to cover the period since August 26, 2010 during which fees were incurred, as well as subsequent periods.

## NOTICE

23.     Notice of this Application has been provided to: (i) the Office of the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for the Steering Committee for Tribune's prepetition loan facilities; (iv) counsel for the administrative agent for the Debtors' post-petition financing facility; (v) counsel to Sitrick; and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

## NO PRIOR REQUEST

24.     No previous application for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, pursuant to Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014 (i) authorizing Tribune to retain Sitrick to provide corporate communications services as described in the Engagement Letter and (ii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware  
September 24, 2010

Respectfully submitted,

TRIBUNE COMPANY  
(for itself and on behalf of each Debtor)

_____  
David P. Eldersveld  
Senior Vice President, General Counsel & Secretary