UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRIBUNE COMPANY, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13141 (KJC)<br><br>Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING
## THIRD QUARTERLY APPLICATION OF MERCER (US) INC.

Stuart Maue (the "**Fee Examiner**") submits this Final Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *Third Quarterly Application of Mercer (US) Inc.* [Docket No. 2369] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $257,466.75 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

reimbursement of expenses that total $22,492.81 for the period from June 1, 2009 through August 31, 2009. Mercer (US) Inc. ("**Mercer**") serves as Compensation Consultant to the Debtors.

## Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**"), each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On January 7, 2009, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ Mercer (US) Inc. as Compensation Consultant to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to January 12, 2009* [Docket No. 893] (the "**Retention Application**"). By order dated May 11, 2009, this Court approved the Retention Application. (see *Order Authorizing Debtors to Retain and Employ Mercer (US) Inc. as Compensation Consultant to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to January 12, 2009.* [Docket No.1179]) ("**Retention Order**").

3. Mercer submitted the Fee Application on October 15, 2009, pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.  The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.  Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7.  A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the

exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8. The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Interim Compensation Order, and all related filings, and on November 20, 2009, issued a Preliminary Report to Mercer for review and comment. The firm provided a written response on September 20, 2010. After evaluation and consideration of the additional information provided by Mercer, the Fee Examiner submits this Final Report for the Court's consideration. This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS

### Technical Requirements

9. **Reconciliation of Fees and Expenses.** The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application ("**Fees Requested**" and "**Expenses Requested**") to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm ("**Fees Computed**" and "**Expenses Computed**"). The Fee Examiner identified no discrepancies between the Fees Requested and the Fees Computed, nor any discrepancies between the Expenses Requested and the Expenses Computed.

10. **Block Billing.** The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii)*. The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or

'lumped' together, with each service showing a separate time entry." *UST Guidelines* ¶(b)(4)(v).[2] Mercer's First and Second Quarterly Fee Applications contained a number of block billed entries, and Mercer previously indicated that the firm would endeavor to reduce this practice. The present Fee Application contained only one block billed time entry. The Fee Examiner makes no recommendation for a fee reduction.

11. **Time Increments.** The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv)*. The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines* ¶(b)(4)(v). Mercer was granted a limited waiver of the requirements of Local Rule 2016-2 allowing the firm to invoice the time in quarter hour increments. *Retention Order, p. 3*. Mercer complied with the Retention Order regarding time increments.

### Review of Fees

12. **Firm Staffing.** The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines* ¶(b)(1)(iii). The Fee Application provided the names, positions, and hourly rates of the 16 Mercer professionals who billed to this matter, consisting of 1 principal, 1 senior associate, 5 associates, 8 analysts, and 1 researcher. A summary of hours and fees billed by each timekeeper is displayed in **Exhibit A**.[3]

---

[2] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g.*, *In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g.*, *In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

[3] This Final Report includes exhibits that detail and support the findings discussed herein. Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits. For purpose of context, other tasks

The firm billed a total of 671.00 hours with associated fees of $257,466.75. The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| Principal | 140.50 | 21% | $101,862.50 | 40% |
| Senior Associate | 149.00 | 22% | 73,457.00 | 29% |
| Associate | 9.25 | 1% | 2,638.75 | 1% |
| Analyst | 342.25 | 51% | 77,348.50 | 30% |
| Researcher | 30.00 | 5% | 2,160.00 | * |
| TOTAL | 671.00 | 100% | $257,466.75 | 100% |

* Less than 1%

The blended hourly rate for the Mercer professionals is $383.71.

13. **Hourly Rate Increases.** Mercer did not increase the hourly rate of any timekeeper during the third interim period.

14. **Complete and Detailed Task Descriptions.** Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary." The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*. The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication. Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.

Contrary to the requirements of the Local Rules and the Guidelines, Stuart Maue identified activity descriptions in the Fee Application that were not sufficiently detailed. The four

---

within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

entries, totaling 30.50 hours with $2,406.50 in associated fees, were displayed in **Exhibit B** to the Preliminary Report and included the task descriptions "Bankruptcy research" and "Project management." Each of the entries lack the specificity required to determine the exact nature of the activity performed (i.e., review, draft, revise, etc.). The Fee Examiner requested from Mercer sufficient detail for each billing entry.

In response to the Preliminary Report, Mercer provided a complete and detailed description for each of the four time entries in question. After review of the additional information, the Fee Examiner makes no recommendation for a fee reduction. Exhibit B is omitted from this report.

15. **Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *Local Rule 2016-2(d)(ix)*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions when two or more timekeepers billed to attend the same nonfirm conference, hearing, or other event. Contrary to Local Rule 2016-2, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 10.25 hours with $5,380.50 in associated fees, were displayed in **Exhibit C** to the Preliminary Report. In each instance where more than one timekeeper attended a nonfirm conference or event, we identified the timekeeper who appeared most responsible for the matter and/or the particular event (i.e., the individual leading rather than observing a nonfirm conference). The potentially duplicative and unnecessary timekeepers' entries total 5.75 hours with $2,234.00 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the

exhibit. The Fee Examiner requested from Mercer an explanation of the necessity of the multiple billers and their respective roles.

In response to the Preliminary Report, Mercer stated that each of the meetings identified required the presence of more than one firm timekeeper, that each timekeeper played a separate and distinct role, and that one person could not have effectively and efficiently handled the meeting alone. The firm further provided a breakdown of the individual timekeepers and their contributions to the meetings identified in the exhibit. The additional information brings the Fee Application in accord with the Local Rules and UST Guidelines, and after review of same the Fee Examiner makes no recommendation for a fee reduction. Exhibit C is omitted from this report.

16. **Intraoffice Conferences.** Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel. The Fee Examiner identified time entries invoiced by Mercer that described intraoffice conferences resulting in 21.50 hours with $9,623.50 in associated fees, which computes to approximately 4% of the Fees Computed. The entries were displayed in **Exhibit D** to the Preliminary Report. In certain instances, two or more firm professionals and/or paraprofessionals billed to attend the same internal conference, totaling 9.75 hours with $3,503.50 in associated fees. The entries describing intraoffice conferences attended by two or more firm personnel were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested an explanation for the necessity of more than one participant billing for the same intraoffice conference.

In response to the Preliminary Report, Mercer stated that the internal meetings included in the Fee Application were the most efficient and comprehensive means to allow the firm to advise the Debtors, that without the meetings firm timekeepers would have had to spend hours reviewing information and work product assigned to others, and that each individual was necessary and filled a distinct role. Mercer also provided a spreadsheet which identified the role and contribution of the various individuals. After consideration of the additional information provided, and in light of the

relatively small percentage of total fees arising from intrafirm communication, the Fee Examiner makes no recommendation for a fee reduction. Exhibit D is omitted from this report.

17. **Administrative Activities.** Activities associated with the day-to-day operations of the firm are considered administrative in nature and as such are reflected in the hourly rates charged by the firm. The Fee Examiner did not identify any time entries that described administrative activities.

18. **Clerical Activities.** Clerical activities are tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.[4] The Fee Examiner did not identify any billing entries containing clerical activities.

19. **Travel.** The Local Rules provide that nonworking travel time "shall be separately described and may be billed at no more than 50% of regular hourly rates." *Local Rule 2016-2(d)(viii)*. The Fee Application did not include any entries describing travel.

20. **Mercer Retention/Compensation.** The Fee Application did not include any entries related to the firm's retention or compensation.

### Review of Expenses

21. **Complete and Detailed Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*. The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of

---

[4] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates). These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines* ¶*(b)(5)(iii)*. Mercer provided an itemization for the firm expenses that included the category, the date, the description, and the amount.

22. **Overtime Expenses.** Mercer requested reimbursement of meals ($410.60) and transportation ($293.60) incurred while working beyond regular business hours. The charges were displayed in **Exhibit E** to the Preliminary Report. Although a firm may have a policy that personnel may be reimbursed for travel home when working late and meals for employees while working late, such charges are generally considered part of the firm's overhead. The Preliminary Report stated that, pending additional information from Mercer, the Fee Examiner intended to recommend that the overtime charges be disallowed.

In response, Mercer agreed to a voluntary expense reduction in the amount of $704.20 resulting from the overtime expense items listed in the attached Exhibit E.

23. **Vaguely Described Expenses.** The firm requested reimbursement for charges totaling $20,800.50 which are displayed in the following table. The Fee Examiner requested from Mercer additional information regarding the purpose and necessity of the charges.

| Entry Date | Amount | Description |
|---|---|---|
| 06/30/09 | $4,638.15 | Legal Fees |
| 07/28/09 | $600.00 | Tribune Company – Bankruptcy Data research |
| 07/31/09 | $10,478.25 | Legal Fees |
| 08/26/09 | $5,084.10 | Legal Fees |

In response, Mercer stated that the $600.00 charge was incurred for access to a bankruptcy research database. Upon further inquiry by the Fee Examiner, Mercer's counsel confirmed the expense was charged to the Debtors at actual cost. Concerning the legal fee charges, Mercer stated the costs were incurred in connection with the drafting and filing of the firm's first and second fee applications and corresponding monthly fee statements, costs that are reimbursable under the terms of

Mercer's engagement. The Fee Examiner reviewed the underlying invoices and identified no objectionable fees or costs.

24. **Travel Meals.** Mercer requested reimbursement for one travel meal in the amount of $25.00. In this Court, the Fee Examiner applies a per person ceiling of $15.00 for breakfast is $15.00, $25.00 for lunch, and $50.00 for dinner. The charge in question, displayed in the table below, appeared to exceed the ceiling amount.

| Entry Date | Amount | Description | Meal Type | Ceiling | Amount in Excess of Ceiling |
|---|---|---|---|---|---|
| 08/11/09 | $25.00 | Hotel breakfast | Breakfast | $15.00 | $10.00 |

In response, Mercer agreed to a voluntary expense reduction in the amount of $10.00 resulting from the amount of the breakfast charge in excess of the ceiling.

### Conclusion

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above. The Fee Examiner recommends the approval of fees in the amount of $257,466.75 and reimbursement of expenses in the amount of $21,778.61 ($22,492.81 minus $714.20) for the period from June 1, 2009 through August 31, 2009. The findings are summarized in the attached Appendix A.

                                Respectfully submitted,

                                STUART MAUE

                                By: /s/ John L. Decker

                                John L. Decker
                                3840 McKelvey Road
                                St. Louis, Missouri 63044
                                Telephone: (314) 291-3030
                                Facsimile: (314) 291-6546
                                tribunebkr@smmj.com

                                *Fee Examiner*

## APPENDIX A

### MERCER (US) INC.

#### SUMMARY OF FINDINGS

##### Third Quarterly Application (June 1, 2009 through August 31, 2009)

**A.     Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $257,466.75 | |
| Expenses Requested | 22,492.81 | |
| TOTAL FEES AND EXPENSES REQUESTED | | $279,959.56 |
| Fees Computed | $257,466.75 | |
| Expenses Computed | 22,492.81 | |
| TOTAL FEES AND EXPENSES COMPUTED | | $279,959.56 |

**B.     Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---:|---:|---:|
| Fees Requested | $257,466.75 | | |
| RECOMMENDED FEE ALLOWANCE | | | $257,466.75 |
| Expenses Requested | $22,492.81 | | |
| *Agreed Reduction for Overtime Expenses* | | ($704.20) | |
| *Agreed Reduction for Travel Meals* | | (10.00) | |
| Subtotal | | ($714.20) | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 21,778.61 |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $279,245.36 |

Case 08-13141-BLS   Doc 5860   Filed 10/01/10   Page 13 of 18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 1st day of October, 2010.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for Prepetition Lenders, JP Morgan Chase Bank, N.A.)

Mr. John Dempsey
Mercer (US) Inc.
10 South Wacker Drive, Suite 1700
Chicago, IL  60606

_____
John L. Decker, Esq.

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**
**COMPUTED AT STANDARD RATES**
Mercer (US) Inc.

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JDEM | Dempsey, John | PRINCIPAL | $725.00 | $725.00 | 140.50 | $101,862.50 |
| No. of Billers for Position: 1 | | Blended Rate for Position: | $725.00 | | 140.50 | $101,862.50 |
| | | | | % of Total: | 20.94% | % of Total: 39.56% |
| MLON | Long, Marcia | SR. ASSOCIATE | $493.00 | $493.00 | 149.00 | $73,457.00 |
| No. of Billers for Position: 1 | | Blended Rate for Position: | $493.00 | | 149.00 | $73,457.00 |
| | | | | % of Total: | 22.21% | % of Total: 28.53% |
| KFEL | Feldt, Kate | ASSOCIATE | $290.00 | $290.00 | 5.00 | $1,450.00 |
| LKAP | Kaplan, Lauren | ASSOCIATE | $290.00 | $290.00 | 1.50 | $435.00 |
| SWAD | Wadgaonkar, Shruti | ASSOCIATE | $255.00 | $255.00 | 1.25 | $318.75 |
| JBEC | Beckett, Joshua | ASSOCIATE | $290.00 | $290.00 | 1.00 | $290.00 |
| BWAL | Walters, Barbara | ASSOCIATE | $290.00 | $290.00 | 0.50 | $145.00 |
| No. of Billers for Position: 5 | | Blended Rate for Position: | $285.27 | | 9.25 | $2,638.75 |
| | | | | % of Total: | 1.38% | % of Total: 1.02% |
| JWU | Wu, Justin | ANALYST | $226.00 | $226.00 | 171.75 | $38,815.50 |
| JDON | Donnell, Julie | ANALYST | $226.00 | $226.00 | 65.50 | $14,803.00 |
| EREN | Rentsch, Eric | ANALYST | $226.00 | $226.00 | 40.75 | $9,209.50 |
| MMOS | Moses, Michael | ANALYST | $226.00 | $226.00 | 36.75 | $8,305.50 |
| CSUN | Sung, Christina | ANALYST | $226.00 | $226.00 | 18.00 | $4,068.00 |
| JNIE | Nieting, Justin | ANALYST | $226.00 | $226.00 | 5.25 | $1,186.50 |
| JKLE | Klein, Jon | ANALYST | $226.00 | $226.00 | 3.25 | $734.50 |
| JWOL | Wolf, Jessica | ANALYST | $226.00 | $226.00 | 1.00 | $226.00 |
| No. of Billers for Position: 8 | | Blended Rate for Position: | $226.00 | | 342.25 | $77,348.50 |
| | | | | % of Total: | 51.01% | % of Total: 30.04% |
| JMAY | Mayer, Julie | RESEARCHER | $72.00 | $72.00 | 30.00 | $2,160.00 |

**EXHIBIT A**

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Mercer (US) Inc.**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| No. of Billers for Position: 1 | | Blended Rate for Position: | $72.00 | | 30.00 | $2,160.00 |
| | | | | | % of Total: 4.47% | % of Total: 0.84% |
| Total No. of Billers: 16 | | Blended Rate for Report: | $383.71 | | 671.00 | $257,466.75 |

EXHIBIT E

Transportation and Meals - Late Work

Mercer (US) Inc.

| DATE | INVOICE/ENTRY # | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| Category: Meals - Non-Travel (Late Work) | | | | | |
| 06/08/09 | 200906/1 | 110.00 | | 110.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>LUNCH AT RIVERS FOR TRIBUNE MEETING ON MAY 22, 2009 |
| 06/08/09 | 200906/2 | 7.50 | | 7.50 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 06/30/09 | 200906/8 | 31.70 | | 31.70 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/06/09 | 200907/3 | 14.00 | | 14.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/07/09 | 200907/5 | 11.90 | | 11.90 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/10/09 | 200907/7 | 10.22 | | 10.22 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/13/09 | 200907/9 | 30.00 | | 30.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/14/09 | 200907/11 | 33.00 | | 33.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/15/09 | 200907/13 | 13.00 | | 13.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/16/09 | 200907/15 | 39.59 | | 39.59 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/20/09 | 200907/16 | 23.35 | | 23.35 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/30/09 | 200907/21 | 12.00 | | 12.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 07/31/09 | 200907/23 | 15.00 | | 15.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER WORKING LATE |
| 08/19/09 | 200908/11 | 15.00 | | 15.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER - WORKING LATE |
| 08/19/09 | 200908/7 | 10.75 | | 10.75 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER - WORKING LATE |
| 08/19/09 | 200908/6 | 8.12 | | 8.12 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER - WORKING LATE |

EXHIBIT E

Transportation and Meals - Late Work

Mercer (US) Inc.

| DATE | INVOICE/ENTRY # | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| Category: Meals - Non-Travel (Late Work) | | | | | |
| 08/19/09 | 200908/14 | 13.95 | | 13.95 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER - WORKING LATE |
| 08/19/09 | 200908/3 | 11.52 | | 11.52 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>DINNER - WORKING LATE |
| Meals - Non-Travel (Late Work): | | $410.60 | | $410.60 | |
| Category: Transportation - Late Work | | | | | |
| 06/08/09 | 200906/3 | 15.00 | | 15.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 06/08/09 | 200906/4 | 12.00 | | 12.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>TAXI TO MERCER - WORKING LATE |
| 07/01/09 | 200907/1 | 18.00 | | 18.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/06/09 | 200907/2 | 18.00 | | 18.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/07/09 | 200907/4 | 20.00 | | 20.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/10/09 | 200907/6 | 18.00 | | 18.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/13/09 | 200907/8 | 19.00 | | 19.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/14/09 | 200907/10 | 20.00 | | 20.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/15/09 | 200907/12 | 18.00 | | 18.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/16/09 | 200907/14 | 19.00 | | 19.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/20/09 | 200907/17 | 9.95 | | 9.95 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/30/09 | 200907/20 | 19.00 | | 19.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |
| 07/31/09 | 200907/22 | 20.00 | | 20.00 | MATTER NAME: Comp - Compensation Consultant to the Debtors<br>CAB HOME - WORKING LATE |

EXHIBIT E

Transportation and Meals - Late Work

Mercer (US) Inc.

| DATE | INVOICE/ENTRY # | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| Category: Transportation - Late Work | | | | | |
| 08/19/09 | 200908/4 | 15.00 | | 15.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| 08/19/09 | 200908/5 | 15.00 | | 15.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| 08/19/09 | 200908/8 | 10.00 | | 10.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| 08/19/09 | 200908/9 | 10.00 | | 10.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| 08/19/09 | 200908/10 | 10.00 | | 10.00 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| 08/19/09 | 200908/15 | 7.65 | | 7.65 | *MATTER NAME: Comp - Compensation Consultant to the Debtors*<br>CAB HOME - WORKING LATE |
| Transportation - Late Work: | | $293.60 | | $293.60 | |
| | | $704.20 | | $704.20 | |