# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |

## FEE EXAMINER'S FINAL REPORT REGARDING
## FIRST QUARTERLY FEE APPLICATION OF ERNST & YOUNG LLP

Stuart Maue (the "**Fee Examiner**") submits this Preliminary Report pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for Compensation and Reimbursement of Expenses for Professionals and Consideration of Fee Applications* [Docket No. 546] (the "**Fee Examiner Order**") in connection with the *First Quarterly Fee Application of Ernst & Young LLP* [Docket No. 2359] (the "**Fee Application**"). The Fee Application seeks approval of fees that total $555,000.00 and reimbursement of expenses that total $6,438.77 for the period from May 31, 2009

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

through August 31, 2009. Ernst & Young LLP ("**E&Y**") provides valuation and business modeling and marketing survey services provider to the Debtor and Debtors in Possession.

## Background

1. On December 8, 2008 (the "**Petition Date**"), Tribune Company and its listed subsidiaries and affiliates (each a "**Debtor**" and collectively the "**Debtors**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2008, the Bankruptcy Court entered an order consolidating the Debtors' Chapter 11 cases for procedural purposes only.

2. On June 5, 2009, the Debtors filed the *Application for an Order Authorizing Debtors to Retain and Employ Ernst & Young LLP to Provide (I) Valuation and Business Modeling Services and (II) Market Survey Services to the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 1107, Nunc Pro Tunc to May 31, 2009* [Docket No. 1298] (the "**Retention Application**"). By order dated July 21, 2009, this Court approved the retention of E&Y [Docket No. 1783] (the "**Retention Order**"). By order dated March 22, 2010, this Court entered an order modifying the scope of E&Y's retention to include continued performance of valuation services relating to FCC licenses [Docket No. 3804]; by order dated June 14, 2010, this Court entered an order further modifying the scope of E&Y's retention to include fresh start accounting valuation services [Docket No. 4779] (collectively the "**Supplemental Retention Orders**").

3. E&Y submitted the Fee Application on October 15, 2009, pursuant to the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, (January 15, 2009) [Docket No. 225] (the "**Interim Compensation Order**").

## Applicable Standards

4. In light of the size and complexity of these Chapter 11 cases, this Court appointed the Fee Examiner "to act as a special consultant to the Court for professional fee and expense analysis and review, as described in [the Fee Examiner Order]" and observed that "it is necessary to establish uniform procedures for the review, allowance, and payment of fees and expenses of Case Professionals

to ensure compliance with section 330 of the Bankruptcy Code and other applicable rules and guidelines." *Fee Examiner Order* ¶¶ 1, 3.

5.    The Fee Examiner reviewed the Fee Application for compliance with sections 330 and 331 of the Bankruptcy Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the United States Trustee Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 (28 C.F.R. Part 58, Appendix A) (the "**UST Guidelines**"). In addition, the Fee Examiner reviewed the Fee Application for general compliance with legal precedent established by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, state ethics rules, other applicable precedent, and industry standards.

6.    Pursuant to Section 330 of the Bankruptcy Code, the Court may award professionals "reasonable compensation for actual, necessary services." *11 U.S.C. § 330(a)(1)(A)*. In evaluating the amount of reasonable compensation to be awarded, "the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." *11 U.S.C. §§ 330(a)(3)(A-F)*.

7.    A fee applicant bears the burden of proof on all of the elements of a fee application, including proving that the services provided were necessary and reasonable and that the billed expenses

were necessary, reasonable, and actually incurred. A fee application must comply with the format and content requirements outlined in the applicable guidelines and bankruptcy rules. Moreover, the exercise of billing judgment is an inherent and unavoidable component of every fee application. A fee applicant must make a good faith effort to exclude excessive, redundant or otherwise unnecessary hours from a fee request.

8.      The Fee Examiner completed the preliminary evaluation of the Fee Application, the Retention Application, the Retention Order, the Supplemental Retention Orders, the Interim Compensation Order, and all related filings and provided a Preliminary Report to E&Y for review and comment. Counsel for E&Y communicated with the Fee Examiner in June 2010, provided exhibits of time entries to the Fee Examiner on September 16, 2010, and engaged in further conversation and correspondence with the Fee Examiner on October 4, 2010. After evaluation and consideration of the additional information provided by E&Y, the Fee Examiner submits this Final Report for the Court's consideration. This Final Report is in a format designed to quantify and present factual data relevant to whether the requested fees and expenses of the applicant meet the applicable standards of section 330 of the Bankruptcy Code and Local Rule 2016-2, and will also inform the Court of all proposed consensual resolutions of the fee and/or expense reimbursement request for the professional and the basis for such proposed consensual resolution.

## DISCUSSION OF FINDINGS

### Technical Requirements

9.      **Reconciliation of Fees and Expenses.** The Fee Examiner compared the total amount of fees and expenses requested in the Fee Application (**"Fees Requested"** and **"Expenses Requested"**) to the fees and expenses actually documented in the electronic and/or hard copy data received from the firm (**"Fees Computed"** and **"Expenses Computed"**). The Fee Application requested $550,825.00 in fees for hourly services and $4,175.00 in flat fees. The Fee Examiner recomputed the requested hourly fees by multiplying each timekeeper's total hours by the applicable hourly rate. For the flat fees, the

Fee Application provided the total fee amount and the total hours billed. Using this information, the Fee Examiner calculated a blended hourly rate of $94.89 ($4,175.00/44.00 hours) for external contractor Ginny McGee.[2] The calculation of the blended hourly rate resulted in a discrepancy of $0.16 that is attributed to rounding.

The Fee Examiner further determined that there is no discrepancy between the Expenses Requested and the Expenses Computed. The figures in this report and the accompanying exhibits reflect Fees Computed and Expenses Computed.

10.   **Block Billing.**   The Local Rules provide that "[a]ctivity descriptions shall not be lumped – each activity shall have a separate description and a time allotment." *Local Rule 2016-2(d)(vii).* The UST Guidelines further provide that where a timekeeper's daily time entries exceed 0.50 hour on a daily aggregate, "services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *UST Guidelines ¶(b)(4)(v).*[3] E&Y block billed entries totaling 102.20 hours with $44,700.00 in associated fees; the entries were displayed in **Exhibit C** to the Preliminary Report, which was provided to the firm to illustrate the issue in order that future fee application do not contain block billed time entries. The Fee Examiner confirmed that E&Y's second interim fee application contains no block billed entries, and accordingly makes no recommendation for a fee reduction. Exhibit C is omitted from this report.

11.   **Time Increments.**   The Local Rules provide that "[a]ctivities shall be billed in tenths of an hour (six (6) minutes)." *Local Rule 2016-2(d)(iv).* The UST Guidelines further provide that time entries "should be kept contemporaneously with the services rendered in time periods of tenths of an hour." *UST Guidelines ¶(b)(4)(v).* E&Y timekeepers recorded the billing entries in tenths of an hour.

---

[2] The 44.00 hours stated in the Fee Application were then allocated between the two market surveys based on the total amounts billed for each survey.

[3] The judicial response to block billing varies. Some courts summarily disallow all fees in excess of one-half hour for each lumped entry, *e.g., In re Brous*, 370 B.R. 563, 570 (Bankr. S.D.N.Y. 2007), whereas other courts apply an across the board percentage reduction, *e.g., In re Baker*, 374 B.R. 489, 496 (Bankr. E.D.N.Y. 2007). Across the board cuts range from five to 100 percent. *See id.* at 495 n.7 and cases cited.

## Review of Fees

12.     **Firm Staffing.**   The UST Guidelines state that fee applications should identify the "[n]ames and hourly rates of all applicant's professionals and paraprofessionals who billed time, [an] explanation of any changes in hourly rates from those previously charged, and [a] statement of whether the compensation is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under title 11." *UST Guidelines ¶(b)(1)(iii)*.   The Fee Application provided the names, positions, and hourly rates of the 33 E&Y professionals and paraprofessionals who billed to this matter, consisting of 6 PPED's, 3 senior managers, 5 managers, 11 senior 1&2, 7 staff, and 1 external contractor.   A summary of hours and fees billed by each timekeeper is displayed in the attached **Exhibit A.**[4]

The firm invoiced a total of 1,683.00 hours with associated fees of $555,000.16.[5]   The following table displays the hours and fees computed by timekeeper position and the percentage of total hours and fees for each position:

| Position | Hours | Percentage of Total Hours | Fees | Percentage of Total Fees |
|---|---|---|---|---|
| PPED | 137.80 | 8% | $ 72,345.00 | 13% |
| Senior Manager | 268.90 | 16% | 127,727.50 | 23% |
| Manager | 330.00 | 20% | 123,750.00 | 22% |
| Senior 1&2 | 691.00 | 41% | 190,025.00 | 34% |
| Staff | 211.30 | 12% | 36,977.50 | 7% |
| External Contractor | 44.00 | 3% | 4,175.16 | * |
| TOTAL | 1,683.00 | 100% | $555,000.16 | 100% |

\* Less than 1%

The blended hourly rate for the E&Y timekeepers (excluding the flat fee) is $336.07.

13.     **Hourly Rate Increases**.   Ernst & Young did not increase the hourly rate of any timekeeper during this interim period.

---

[4] This Final Report includes exhibits that detail and support the findings discussed herein.   Each time entry associated with a specific category, as well as a summary of the total hours and fees, is displayed in the exhibit. The tasks included in a specific category are underlined in the fee exhibits.   For purpose of context, other tasks within the same entry are also displayed but not underlined, and are not included in the total hours and fees for the exhibit category.

[5] This amount reflects the Fees Computed.

14.    **Timekeepers Roles.**  A court may not allow compensation of fees for duplicative or unnecessary services.  *See 11 U.S.C. § 330(4).*  With this directive in mind, the Fee Examiner reviewed the billing entries of each timekeeper to evaluate his or her contribution to the representation, including a comparison to others' efforts.  Fifteen E&Y timekeepers devoted limited time and effort to the bankruptcy proceedings, and it appears certain such timekeepers billed for activities that may have been performed by other timekeepers.  The Fee Examiner requested from E&Y additional information regarding the necessity and role of the timekeepers displayed in **Exhibit B** to the Preliminary Report.  The billing entries of the timekeepers in question totaled 51.20 hours and $16,950.00 in associated fees.

In response to the Preliminary Report, E&Y provided additional information regarding the role and necessity of the timekeepers questioned by the Fee Examiner.  After consideration of the additional detail, the Fee Examiner makes no recommendation for a fee reduction.  Exhibit B is omitted from this report.

15.    **Complete and Detailed Task Descriptions.**  Local Rule 2016-2(d) states that activity descriptions "shall be sufficiently detailed to allow the Court to determine whether all the time, or any portion thereof, is actual, reasonable and necessary."  The Local Rules further provide that fee applications "shall include complete and detailed activity descriptions," each activity description "shall include the type of activity (*e.g.*, phone call, research)," each activity description "shall include the subject matter (*e.g.*, exclusivity motion, section 341 meeting)," and that activity descriptions "shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing and the participant's role." *Local Rule 2016-2(d)(ii, v, vi, and ix)*.  The UST Guidelines provide that "time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time entries for court hearings and conferences should identify the subject of the hearing or conference." *UST Guidelines ¶(b)(4)(v)*.  E&Y timekeepers sufficiently described their billing activities.

16. **Conferences, Hearings, and Other Events.** The Local Rules provide that "activity descriptions shall individually identify all meetings and hearings, each participant, the subject(s) of the meeting or hearing, and the participant's role" *(Local Rule 2016-2(d)(ix))*, and the UST Guidelines further provide that "[i]f more than one professional from the applicant firm attends a hearing or conference, the applicant should explain the need for multiple attendees." *UST Guidelines ¶(b)(4)(v)*. While it may be appropriate to have multiple attendees at some meetings, conferences, hearings or other events, it is the applicant's burden to justify overlapping staffing and to identify each participant's role.

The Fee Examiner identified occasions when two or more timekeepers billed to attend the same nonfirm conference, hearing, or other event. Contrary to Local Rule 2016-2, neither the Fee Application nor the activity descriptions explained the role of each participant or the need for multiple attendees. The entries, totaling 259.07 hours with $103,476.67 in associated fees, were displayed in **Exhibit D** to the Preliminary Report. In each instance where more than one timekeeper attended a nonfirm conference or event, we identified the timekeeper who appeared most responsible for the matter and/or the particular event (i.e., the professional leading rather than observing a nonfirm conference). The potentially duplicative and unnecessary timekeepers' entries totaled 186.90 hours with $69,414.17 in associated fees, and were highlighted in bold and marked with an ampersand [&] in the exhibit. The Fee Examiner requested from E&Y an explanation of the necessity of the multiple billers and their respective roles.

In response to the Preliminary Report, E&Y provided a spreadsheet in which the firm addressed each of the conferences and events questioned by the Fee Examiner by providing for each attendee the individual's position, role, and contribution. The additional information provided by E&Y brings the Fee Application in accord with the Local Rules and UST Guidelines. After review and consideration of the detail provided, the Fee Examiner makes no recommendation for a fee reduction and Exhibit D is omitted from this report.

17.   **Intraoffice Conferences.**  Frequent intraoffice conferences may indicate inappropriate levels of staffing, unnecessary conferring, or the use of inexperienced personnel.  The time entries that described intraoffice conferences totaled 220.13 hours with $88,138.33 in associated fees, which computes to approximately 16% of the Fees Computed.  The entries were provided to E&Y in **Exhibit E** to the Preliminary Report.  On nearly every occasion, two or more firm professionals and/or paraprofessionals billed to attend the same internal conference, representing 186.33 hours with $74,843.33 in associated fees.  The entries describing intraoffice conferences attended by two or more firm personnel (all of the conferences but one) were highlighted in bold and marked with an ampersand [&] in the exhibit.  The Fee Examiner requested from E&Y an explanation for the necessity of more than one participant billing for the same intraoffice conference.

In response to the Preliminary Report, E&Y provided the Fee Examiner with a spreadsheet in which the role and necessity of each attendee at each questioned conference.  Despite the additional detail provided, the Fee Examiner is concerned over the percentage of fees that resulted from intrafirm communication.  However, as the Fee Examiner identified no time entries for intraoffice conferences in E&Y's second interim application, the high ratio of fees in the current Fee Application appears to result from project initiation rather than reflecting an ongoing billing issue.  The Fee Examiner makes no recommendation for a fee reduction, and Exhibit E is omitted from this report.

18.   **Clerical Activities.**  Clerical activities are tasks that may be effectively performed by administrative assistants, secretaries, or support personnel.[6]  The Fee Examiner raised concerns about four time entries that described formatting and proofreading a report; the task descriptions were

---

[6] "Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate." *Fibermark*, 349 B.R. at 397; *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758 769 (Bankr. E.D.N.Y. 2005) (overhead not compensable); *but see Bennett Funding*, 213 B.R. at 247-48 (discussing differing approaches to clerical work at professional rates).  These overhead activities may include: mailing; photocopying, word processing (including the creation of templates), formatting, creating spreadsheets, printing, organizing files, checking for docket updates, creating binders, and secretarial overtime. *Fibermark*, 349 B.R. at 396-97.

displayed in **Exhibit F** to the Preliminary Report and totaled 8.30 hours with $1,452.50 in associated fees.

In response, E&Y explained that while the terms used in the task descriptions may raise the inference that the work was clerical or non-professional in nature, in fact the work performed was substantive and required technical knowledge and the ability to confirm that the proper methodology was applied. After consideration of the additional information provided by E&Y, the Fee Examiner makes no recommendation for a fee reduction. Exhibit F is omitted from this report.

19.    **Travel.** The Fee Application did not include entries describing travel.

20.    **E&Y Retention/Compensation.** The firm did not invoice any hours or associated fees to prepare the firm's retention documents and applications for compensation.

### Review of Expenses

21.    **Complete and Detailed Itemization of Expenses.** The Local Rules provide that fee applications "shall contain an expense summary by category for the entire period of the request" and "shall itemize each expense within each category, including the date the expense was incurred, the charge and the individual incurring the expense, if available." *Local Rule 2016-2(e)(i-ii)*. The UST Guidelines further provide that expenses "must be actual and necessary and supported by documentation as appropriate" and that applicants should disclose "a detailed itemization of all expenses incurred, [a] description of expense (*e.g.*, type of travel, type of fare, rate, destination), [the] method of computation, and, where relevant, name of the person incurring the expense and purpose of the expense. Itemized expenses should be identified by their nature (*e.g.*, long distance telephone, copy costs, messengers, computer research, airline travel, etc.) and by the month incurred." *UST Guidelines ¶(b)(5)(iii)*. E&Y provided an itemization for the firm expenses that included the category, the date, the description, the amount, and the name of the timekeeper who incurred the charge.

22.    **Local Meals.** E&Y requested reimbursement of $452.95 for local meals. Although a firm may have a policy that personnel may be reimbursed for working meals, such charges are

generally considered part of the firm's overhead.    The Fee Examiner requested from E&Y an explanation for the purpose of the meal charges displayed in **Exhibit G** to the Preliminary Report.

In response, E&Y stated that the charges were the result of working late at night or during the weekend to meet deadlines imposed by the Debtors or working lunches that were necessary to meet same-day client deadlines.    Nonetheless, after further communication with the Fee Examiner, E&Y agreed to a voluntary fee reduction in the amount of $452.95.

23.    **Travel Expenses**

a.    **Travel Meals.**    E&Y requested reimbursement for travel meals in the amount of $507.54.    In this Court, the Fee Examiner applies a per person ceiling of $15.00 for breakfast, $25.00 for lunch, and $50.00 for dinner.    Four meal charges identified as breakfast charges exceeded the ceiling, as displayed in the table below:

| Entry Date | Amount | Description | Meal Type | Ceiling | Amount in Excess of Ceiling |
|---|---|---|---|---|---|
| 06/25/09 | $20.00 | Breakfast expense [Joshua Putnam] | Breakfast | $15.00 | $5.00 |
| 06/26/09 | $18.00 | Breakfast expense [Joshua Putnam] | Breakfast | $15.00 | $3.00 |
| 07/08/09 | $16.00 | Breakfast expense [Joshua Putnam] | Breakfast | $15.00 | $1.00 |
| 07/09/09 | $18.00 | Breakfast expense [Joshua Putnam] | Breakfast | $15.00 | $3.00 |

The Preliminary Report informed E&Y that, pending additional information from the firm, the Fee Examiner intended to recommend an expense reduction in the amount of $12.00. In response to the Preliminary Report, E&Y agreed to a $12.00 expense reduction.

b.    **Lodging.**    E&Y requested reimbursement for lodging in the amount of $1,795.11.    In this Court, the Fee Examiner applies a ceiling for lodging is $350.00 per night (domestic).    One lodging charge appeared to exceed the limit:

| Entry Date | Amount | Description |
|---|---|---|
| 07/10/09 | $413.70 | Chicago lodging expense [Joshua Putnam] |

The Preliminary Report informed E&Y that, pending additional information from the firm, the Fee Examiner intended to recommend an expense reduction of $63.70, the amount in

excess of the $350.00 ceiling.    In response, E&Y agreed to a voluntary expense reduction in the amount of $63.70.

**Conclusion**

The Fee Examiner submits this final report regarding the Fee Application and the fees and expenses discussed above.    The Fee Examiner recommends the approval of fees in the amount of $555,000.00 and reimbursement of expenses in the amount of $5,910.12 ($6,438.77 minus $528.65) for the period from May 31, 2009 through August 31, 2009.    The findings are summarized in the attached Appendix A.

Respectfully submitted,

**STUART MAUE**

By: _____
John L. Decker
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:   (314) 291-6546
tribunebkr@smmj.com

*Fee Examiner*

## APPENDIX A

**ERNST & YOUNG LLP**

### SUMMARY OF FINDINGS

#### First Quarterly Fee Application (May 31, 2009 through August 31, 2009)

**A.     Amounts Requested and Computed**

| | | |
|---|---:|---:|
| Fees Requested | $555,000.00 | |
| Expenses Requested | 6,438.77 | |
| | | |
| TOTAL FEES AND EXPENSES REQUESTED | | $561,438.77 |
| | | |
| Fees Computed | $555,000.16 | |
| Expenses Computed | 6,438.77 | |
| | | |
| TOTAL FEES AND EXPENSES COMPUTED | | $561,438.93 |
| | | |
| Discrepancy in Fees | ($    0.16) | |
| | | |
| TOTAL DIFFERENCE BETWEEN COMPUTED AND REQUESTED FEES AND EXPENSES | | ($    0.16) |

**B.     Recommended Fee Allowance and Expense Reimbursement**

| | | | |
|---|---:|---:|---:|
| Fees Requested | $555,000.00 | | |
| | | | |
| RECOMMENDED FEE ALLOWANCE | | | $555,000.00 |
| | | | |
| Expenses Requested | $6,438.77 | | |
| *Agreed Reduction for Local Meals* | | ($452.95) | |
| *Agreed Reduction for Travel Meals* | | (12.00) | |
| *Agreed Reduction for Lodging* | | (63.70) | |
| Subtotal | | ($528.65) | |
| | | | |
| RECOMMENDED EXPENSE REIMBURSEMENT | | | 5,910.12 |
| | | | |
| TOTAL RECOMMENDED FEE ALLOWANCE AND EXPENSE REIMBURSEMENT | | | $560,910.12 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via First Class Mail, postage prepaid, to the following Notice Parties on the 5th day of October, 2010.

Joseph J. McMahon, Jr., Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
(US Trustee)

Adam G. Landis, Esq.
Matthew B. McGuire, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, DE  19801
(Counsel to Creditors' Committee)

Stuart M. Brown, Esq.
Edwards Angell Palmer & Dodge
919 North Market Street, Suite 1500
Wilmington, DE  19801
(Counsel to Barclays Bank PLC)

Mark D. Collins, Esq.
Katisha D. Fortune, Esq.
Richards, Layton & Finger, P.A.
920 N. King Street
P.O. Box 551
Wilmington, DE  19899-0511
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Kenneth P. Kansa, Esq.
Jillian K. Ludwig, Esq.
Mr. James F. Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL  60603
(Counsel to Debtors)

Howard Seife, Esq.
David M. LeMay, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
(Counsel to Creditors' Committee)

Brian Trust, Esq.
Amit K. Trehan, Esq.
Mayer Brown LLP
1675 Broadway
New York, NY  10019-5820
(Counsel to Barclays Bank PLC)

Norman J. Pernick, Esq.
J. Kate Stickles, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Ave., Suite 1400
Wilmington, DE  19801-1496
(Co-Counsel to Debtors)

Donald S. Bernstein, Esq.
James A. Florack, Esq.
Damian S. Schaible, Esq.
Davis, Polk, & Wardwell, LLP
450 Lexington Avenue
New York, NY  10017
(Counsel to Administrative Agent for
Prepetition Lenders, JP Morgan
Chase Bank, N.A.)

Matthew Howley, Esq.
Ernst & Young LLP
233 South Wacker Drive
Chicago, IL  60606

John L. Decker, Esq.

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Ernst & Young**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|----------|------|----------|--------------|--------------|----------------|---------------|
| MHOW | Howley, Matthew | PPED | $525.00 | $525.00 | 90.50 | $47,512.50 |
| JMAS | Mason, Jon | PPED | $525.00 | $525.00 | 32.90 | $17,272.50 |
| SWOJ | Wojcickyi, Stefan | PPED | $525.00 | $525.00 | 8.00 | $4,200.00 |
| BTHO | Thompson, Brett | PPED | $525.00 | $525.00 | 5.00 | $2,625.00 |
| BSTA | Stall, Bob | PPED | $525.00 | $525.00 | 1.00 | $525.00 |
| RLIE | Liebman, Richard | PPED | $525.00 | $525.00 | 0.40 | $210.00 |
| No. of Billers for Position: 6 | | Blended Rate for Position: | $525.00 | | 137.80 | $72,345.00 |
| | | | | % of Total: 8.19% | | % of Total: 13.04% |
| THUS | Hussain, Tariq | SENIOR MANAGER | $475.00 | $475.00 | 100.00 | $47,500.00 |
| BVEN | Venisnik, Bradley | SENIOR MANAGER | $475.00 | $475.00 | 85.70 | $40,707.50 |
| JPUT | Putnam, Joshua | SENIOR MANAGER | $475.00 | $475.00 | 83.20 | $39,520.00 |
| No. of Billers for Position: 3 | | Blended Rate for Position: | $475.00 | | 268.90 | $127,727.50 |
| | | | | % of Total: 15.98% | | % of Total: 23.01% |
| MJON | Jones, Matthew | MANAGER | $375.00 | $375.00 | 209.00 | $78,375.00 |
| CWEN | Wen, Clark | MANAGER | $375.00 | $375.00 | 71.00 | $26,625.00 |
| BJOH | Johnson, Bret | MANAGER | $375.00 | $375.00 | 48.50 | $18,187.50 |
| MMOL | Molepske, Mark | MANAGER | $375.00 | $375.00 | 1.00 | $375.00 |
| MGUP | Gupta, Mihir | MANAGER | $375.00 | $375.00 | 0.50 | $187.50 |
| No. of Billers for Position: 5 | | Blended Rate for Position: | $375.00 | | 330.00 | $123,750.00 |
| | | | | % of Total: 19.61% | | % of Total: 22.30% |
| MKEA | Kearns, Mike | SENIOR 1&2 | $275.00 | $275.00 | 274.00 | $75,350.00 |
| CKUD | Kudrna, Chris | SENIOR 1&2 | $275.00 | $275.00 | 207.50 | $57,062.50 |
| SMUL | Mulcahy, Sean | SENIOR 1&2 | $275.00 | $275.00 | 97.00 | $26,675.00 |
| JKNI | Knightly, Jim | SENIOR 1&2 | $275.00 | $275.00 | 76.00 | $20,900.00 |
| ABHA | Bhagwat, Aditya | SENIOR 1&2 | $275.00 | $275.00 | 10.00 | $2,750.00 |
| ATAR | Tarasenko, Aaron | SENIOR 1&2 | $275.00 | $275.00 | 6.50 | $1,787.50 |
| RSAL | Salmon, Rita | SENIOR 1&2 | $275.00 | $275.00 | 5.00 | $1,375.00 |

**SUMMARY OF HOURS AND FEES BY POSITION AND INDIVIDUAL**

**COMPUTED AT STANDARD RATES**

**Ernst & Young**

| INITIALS | NAME | POSITION | MINUMUM RATE | MAXIMUM RATE | HOURS COMPUTED | FEES COMPUTED |
|---|---|---|---|---|---|---|
| JORR | Orraca, Javier | SENIOR 1&2 | $275.00 | $275.00 | 5.00 | $1,375.00 |
| TVES | Vescovi, Tony | SENIOR 1&2 | $275.00 | $275.00 | 4.00 | $1,100.00 |
| YYEU | Yeung, Yikwan | SENIOR 1&2 | $275.00 | $275.00 | 3.00 | $825.00 |
| JYOU | Young, Jennifer | SENIOR 1&2 | $275.00 | $275.00 | 3.00 | $825.00 |
| | No. of Billers for Position: 11 | Blended Rate for Position: | $275.00 | | 691.00 | $190,025.00 |
| | | | | | % of Total: 41.06% | % of Total: 34.24% |
| TSCH | Schelitzche, Tonya | STAFF | $175.00 | $175.00 | 127.00 | $22,225.00 |
| GFRA | Frankenthal, Gretchen | STAFF | $175.00 | $175.00 | 43.00 | $7,525.00 |
| KLAT | Latka, Kathy | STAFF | $175.00 | $175.00 | 20.00 | $3,500.00 |
| BKIM | Kim, Billy | STAFF | $175.00 | $175.00 | 12.50 | $2,187.50 |
| JLEO | Leong, James | STAFF | $175.00 | $175.00 | 7.00 | $1,225.00 |
| MCOR | Cornish, Matthew | STAFF | $175.00 | $175.00 | 1.00 | $175.00 |
| RPET | Petry, Rob | STAFF | $175.00 | $175.00 | 0.80 | $140.00 |
| | No. of Billers for Position: 7 | Blended Rate for Position: | $175.00 | | 211.30 | $36,977.50 |
| | | | | | % of Total: 12.55% | % of Total: 6.66% |
| GMCG | McGee, Ginny | EXT CONTRACTOR | $94.89 | $94.89 | 44.00 | $4,175.16 |
| | No. of Billers for Position: 1 | Blended Rate for Position: | $94.89 | | 44.00 | $4,175.16 |
| | | | | | % of Total: 2.61% | % of Total: 0.75% |
| | Total No. of Billers: 33 | Blended Rate for Report: | $329.77 | | 1,683.00 | $555,000.16 |

EXHIBIT G

Local Meals

Ernst & Young

| DATE | INVOICE/ENTRY# | AMOUNT BILLED | DETAIL AMOUNT | EXHIBIT AMOUNT | DESCRIPTION |
|------|----------------|---------------|---------------|----------------|-------------|
| 06/17/09 | 130121511/2 | 57.06 | | 57.06 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING LUNCH EXPENSE W/ COLLEAGUES - JON MASON |
| 06/19/09 | 130121511/10 | 50.00 | | 50.00 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE (W/ COLLEAGUES) - CHRIS KUDRNA |
| 06/19/09 | 130121511/11 | 128.83 | | 128.83 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE (W/ COLLEAGUES) - CHRIS KUDRNA |
| 06/22/09 | 130121511/14 | 21.11 | | 21.11 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE - MIKE KEARNS |
| 06/24/09 | 130121511/35 | 61.18 | | 61.18 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE (W/ COLLEAGUES) - MIKE KEARNS |
| 07/01/09 | 130121511/58 | 25.00 | | 25.00 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE - MIKE KEARNS |
| 07/08/09 | 130121511/62 | 78.22 | | 78.22 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING OVERTIME MEAL EXPENSE (W/ COLLEAGUES) - CHRIS KUDRNA |
| 07/13/09 | 130121511/77 | 12.27 | | 12.27 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING LUNCH EXPENSE - CHRIS KUDRNA |
| 07/17/09 | 130121511/79 | 19.28 | | 19.28 | *MATTER NAME: EXP - Expenses*<br>LOCAL MEALS - WORKING LUNCH EXPENSE - CHRIS KUDRNA |
| | | $452.95 | | $452.95 | |