# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered<br>Related to Docket Nos. 3281, 3371, 5668, and 5698 |

## DEBTORS' (I) SUPPLEMENTAL RESPONSE AND LIMITED OBJECTION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES AND SUPPLEMENT TO MOTION, AND (II) RESPONSE AND LIMITED OBJECTION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CERTAIN CLAIMS OF THE DEBTORS' ESTATES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc., f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Tribune Company ("Tribune") and its affiliated debtors and debtors in possession in the above captioned cases (collectively the "Debtors") hereby submit their (i) supplemental response and limited objection to the Motion of the Official Committee of Unsecured Creditors (the "Committee") for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates filed on or about February 1, 2010 (D.I. 3281) ("Original Motion") and the supplement to the Original Motion filed on or about September 14, 2010 (D.I. 5698) (the "Supplement"), and (ii) response and limited objection to the newly-filed Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates filed on or about September 13, 2010 (D.I. 5668) ("Standing Motion"), by which the Committee seeks standing and authority to commence, prosecute and settle certain claims of the Debtors' estates against D&O Defendants, Subsidiary Defendants, Large Shareholders, Zell Defendants, Tower Defendants, Valuation Research Corporation, Additional Parties and Shareholder Defendants (each as defined in the Standing Motion) arising in connection with the 2007 leveraged buy out transactions that returned the Debtors to private ownership (the "LBO Transactions"). (The Original Motion, Supplement, and Standing Motion may collectively be referred to as the "Motions," and LBO Claims and Claims, as defined in the Original Motion and Standing Motion, respectively, may hereinafter be collectively referred to as the "LBO-Related Claims").[2] In addition to this response, the Debtors incorporate, by reference, subsection C of their response to the Committee's Original Motion, which addresses the authority of the Debtors to settle causes of action belonging to the estate, notwithstanding an order of this Court granting the Committee derivative standing to pursue such

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Original Motion or the Standing Motion, as applicable.

causes of action. (*See* Debtors' Response and Objection to the Motion of the Official Committee of Unsecured Creditors For Entry of An Order Granting Leave, Standing, And Authority to Prosecute Causes of Action on Behalf of the Debtors' Estates, D.I. 3371.) Subsection C of the Debtors' Response to the Original Motion is attached hereto as Exhibit A.

## PRELIMINARY STATEMENT

In the Motions, the Committee makes a number of unfounded assertions regarding the Debtors' alleged handling of the potential LBO-Related Claims. The Debtors vehemently disagree with each of these arguments. In fact, the Debtors have conducted an exhaustive investigation of the LBO-Related Claims and have gone to considerable lengths to facilitate other parties' investigations, including the Committee's, as evidenced by the Debtors' ongoing cooperation with information requests and the Debtors' establishment of the Document Depository. In addition, the Debtors have worked arduously with their various creditor constituencies toward the achievement of a consensual plan of reorganization and cooperated fully with the Examiner in connection with his investigation.

The Debtors also believe that it is important that the LBO-Related Claims be preserved and the Debtors intend to continue to work cooperatively with the Committee in connection with their pursuit of the LBO-Related Claims. As such, the Debtors do not oppose the relief requested in the Motions, with the following proviso. For the reasons set forth herein and in their response to the Original Motion, the Debtors object to the Motions' attempt to force the Debtors' relinquishment of their statutory right to settle estate causes of action.[3] Accordingly, the Debtors request that the relief sought in the Motions be qualified in the manner proposed herein.

---

[3] The Committee does not seek standing to prosecute claims arising out of intercompany transactions between and among Tribune and its various subsidiaries. The Debtors intend shortly to file a motion to approve a stipulation among the parties that would toll the statute of limitations with respect to any such claims.

In further support of this response and limited objection, the Debtors respectfully state as follows:

## ARGUMENT

### The Debtors Should Retain the Authority to Settle LBO-Related Claims

1.  If the Court were to grant the Committee standing to pursue the LBO-Related Claims, the Debtors should nevertheless retain the authority to settle those causes of action.[4] The Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") grant a debtor the authority to settle claims that arise in its chapter 11 cases. *See* Fed. R. Bankr. P. 9019 ("On motion by the trustee [or debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."). In addition, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, a debtor may settle any claim that belongs to the estate through its plan of reorganization. *See* 11 U.S.C. § 1123(b)(3)(A) ("A plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."). As a general rule, "the Code and Rule 9019 authorize only the debtor-in-possession to pursue or settle the estate's legal claims." *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 179 (2d Cir. 2005).

2.  A debtor retains the authority to settle causes of action belonging to the estate, even where a bankruptcy court has granted the creditors committee derivative standing to prosecute those causes of action. For example, in *In re Exide Technologies*, the debtors' plan of reorganization contained a settlement of the creditors committee's adversary proceeding against the debtors' prepetition lenders. *See In re Exide Techs.*, 303 B.R. 48, 66 (Bankr. D. Del. 2003).

---

[4] For a further discussion of this issue, see subsection C of the Debtors' Response and Objection to the Motion of the Official Committee of Unsecured Creditors For Entry of An Order Granting Leave, Standing, And Authority to Prosecute Causes of Action on Behalf of the Debtors' Estates, D.I. 3371, incorporated by reference and attached hereto as Exhibit A.

The committee and other parties argued the plan could not "be confirmed because a key element of the Plan is the settlement of the Creditors Committee's Adversary Proceeding by including broad releases of claims related to the Prepetition Credit Facility." *Id.* Specifically, the objecting parties argued that the Court lacked the authority to approve the settlement because it "was (i) made by the Debtor, who is not a party to the litigation and has no standing or right to settle the litigation; and (ii) falls far below the 'range of reasonableness' for settlement of the Adversary Proceeding." *Id.* Though this Court ultimately denied confirmation of the plan, it rejected the committee's claim that the debtors lacked the authority to settle claims against the estate through plan confirmation. *Id.* at 67 ("After examination of the plain language of § 1123(b)(3)(A) and upon review of the relevant decisional law on the issue, I conclude that § 1123(b)(3)(A) authorizes the Debtor to propose a settlement of the Creditors Committee's Adversary Proceeding in its plan."). *See also In re Allegheny Int'l, Inc.*, 118 B.R. 282, 309 (Bankr. W.D. Pa. 1990) (confirming debtor's plan, which included settlement of an adversary proceeding brought derivatively by the equity committee, over the equity committee's objection); *In re Fugazy*, 150 B.R. 103 (Bankr. S.D.N.Y) (ordering evidentiary hearing on debtor's proposed settlement of fraudulent transfer claims before considering creditors committee's request for derivative standing to assert claims); *In re Matco Elecs. Group, Inc.*, 287 B.R. 68 (Bankr. N.D.N.Y. 2002) (denying debtor's proposal to settle claims asserted derivatively by creditors committee, but establishing, by considering the settlement, that debtors retain the right to settle such claims, where settlement is fair and equitable and in the best interests of the estate).

        3.      The bankruptcy court and district court decisions in *In re Adelphia Communications Corp.* further support the principle that granting a creditors committee

derivative standing to pursue estate causes of action does not divest the debtor of its rights to settle those claims. *See In re Adelphia Commcn's Corp.*, 368 B.R. 140 (Bankr. S.D.N.Y. 2007), *aff'd*, 371 B.R. 660 (S.D.N.Y. 2007). There, the bankruptcy court granted derivative standing to the creditors committee and the equity committee to pursue litigation against the debtors' prepetition lenders and investment banks on behalf of the estate. *See Adelphia.*, 368 B.R. at 375. The debtors subsequently proposed a plan that had, as its cornerstone, a global settlement that transferred those claims to a litigation trust, and the equity committee objected. *Id.* at 376. Holding that the bankruptcy court did not abuse its discretion by withdrawing standing, the district court observed that the committee's argument wrongly presupposed that by obtaining derivative standing, it obtained "inalienable oversight of the claims it brought on behalf of the estate." *Adelphia*, 371 B.R. at 672. The district court reasoned that the committee lacked "inalienable oversight" over the claims because they "have always been *derivative* claims belonging to the Debtors (*who were never stripped of their inherent standing to settle those claims*), and because the Bankruptcy Court retained discretionary authority to withdraw the Equity Committee's standing upon concluding doing so would be in the best interests of the creditors." *Id.* at 672 (second emphasis added).

4.  As in *Adelphia*, an order granting derivative standing to the Committee in this case need not confer the Committee "inalienable oversight" over the LBO-Related Claims; rather an order which preserves the Debtors' inherent authority to settle estate causes of action serves the interests of the constituencies in these cases, while at the same time reflects Congress' desire—as evidenced by Rule 9019 and "numerous provisions in the Bankruptcy Code"—to preserve "the debtor's authority to manage the estate and its legal claims." *Smart World*, 423 F.3d at 175.

5.     Consistent with the Bankruptcy Code and applicable precedent, the Debtors should retain the right to settle, including through a plan of reorganization, any of the LBO-Related Claims that may be prosecuted by the Committee. No basis exists to strip the Debtors of their right to seek a settlement of the LBO-Related Claims, whether pursuant to a plan under the authority conferred by section 1123(b)(3)(A) or on a stand alone basis under Bankruptcy Rule 9019. Accordingly, the Committee's request for exclusive authority to settle estate causes of action should be denied.

## CONCLUSION

6.     For the foregoing reasons, the relief requested in the Committee's Motions should be denied to the extent it seeks to deprive the Debtors of the authority to settle estate causes of action such as the LBO-Related Claims, including through a plan of reorganization. Moreover, the Debtors believe that the Committee's efforts should be focused on preserving the LBO-Related Claims in the broader context of the ongoing proceedings given the possibility that such claims may be settled or prosecuted pursuant to a plan of reorganization.

Dated: Wilmington, Delaware
      October 7, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Janet E. Henderson
James F. Bendernagel
Jillian K. Ludwig
One South Dearborn Street
Chicago, IL  60603
Telephone: (312) 853-7000
Facsimile:  (312) 853-7036

-and-

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.

By: /s/ *illegible signature*
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
Telephone: (302) 652-3131
Facsimile:  (302) 652-3117

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION