**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| TRIBUNE COMPANY, <u>et</u> <u>al.</u>,[1] | ) | Case No. 08-13141 (KJC) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related to Docket Nos. 3281, 5668 and 5698 |
| | ) | Hearing Date: October 22, 2010 at 2:00 p.m. |

**THE BRIDGE AGENT'S LIMITED OBJECTION TO (I) MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES AND (II) MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CERTAIN CLAIMS OF THE DEBTORS' ESTATES**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC, f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

Wells Fargo Bank, N.A., as successor administrative agent (in such capacity, and not individually, the "Bridge Agent") under that certain $1.6 billion Senior Unsecured Interim Loan Agreement (the "Bridge Loan Credit Agreement"), dated as of December 20, 2007, by and among Tribune Company ("Tribune"), each lender from time to time party thereto (the "Bridge Lenders"), and the other named parties thereto, hereby submits this Limited Objection to (I) the Motion of the Official Committee of Unsecured Creditors For Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates [Docket No. 3281], as supplemented by the Supplement to Motion of the Official Committee of Unsecured Creditors For Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates [Docket No. 5698], (the "Zuckerman Standing Motion"), and (II) the Motion of the Official Committee of Unsecured Creditors For Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Certain Claims of the Debtors' Estates [Docket No. 5668] (the "Chadbourne Standing Motion" and, together with the Zuckerman Standing Motion, the "Committee Standing Motions").

**PRELIMINARY STATEMENT**

1. The Bridge Agent does not object to the Committee Standing Motions to the extent they achieve their ultimate stated purpose – preservation of <u>all</u> estate claims and causes of action that are subject to the two year statutes of limitations under sections 108(a), 546(a) and 549 of the Bankruptcy Code, which are expiring on December 8, 2010. As the Court is aware, the mediation has not yet achieved a global resolution, and it is also apparent that any restructuring will not be consummated in the cases until well after December 8, 2010. Therefore it is imperative that all estate claims and causes of action be fully preserved.

However, the Committee Standing Motions and the respective complaints attached thereto (the "Committee Complaints") in their current form provide the Bridge Agent with cause for concern.

2. As a general matter, the Bridge Agent is concerned that the Committee's counsel will not aggressively pursue all potential claims and causes of action, but, rather, will selectively pursue only certain claims and causes of action with the goal of achieving a settlement which pays in full certain favored unsecured creditors to the detriment of the Bridge Lenders and other constituencies. The Examiner's Report identified and analyzed numerous estate claims and causes of action arising out of the Debtors' failed pre-petition leveraged buy-out transaction (the "LBO Transaction"). While the Bridge Agent does not, in this context, advocate in support of or against any of the Examiner's findings or conclusions, a number of potential scenarios identified by the Examiner could benefit the Bridge Lenders. Moreover, given the uncertainty resulting from the current status of plan negotiations and the alleged conflicts of interest between and among certain Committee members and the Committee's professionals, it may eventually become necessary to transition prosecution or control of estate claims and causes of action to a newly established fiduciary body, to avoid even the appearance or taint of conflict that might be ascribed to any of the Committee's strategic decisions.[2] The Bridge Agent therefore requests that any order approving the Committee Standing Motions specifically provide that it does not prejudice and reserves the rights of parties in interest to seek the

---

[2] For example, the Bridge Lenders respectfully submit that any complaint that is ultimately filed by the Committee should preserve all options with respect to the prosecution of causes of action identified in the complaint. However, the Committee Complaints fail to demand a trial by jury with respect to all issues so triable in accordance with Fed. R. Civ. P. 38 to ensure that the Debtors do not waive their right to a jury trial. Preserving such optionality will ensure that if an estate representative is later appointed, it will have the ability to prosecute the action in the manner that it sees fit.

establishment or appointment of a truly disinterested fiduciary body, represented by its own professionals, that would be charged with pursuing <u>all</u> claims.

3.   Additionally, completely absent from the Committee Standing Motions and the Committee Complaints is any reference to estate claims or causes of action among the Debtors and/or their affiliates. The Debtors have repeatedly acknowledged the existence, as of the Petition Date (defined below), of tens of thousands of intercompany claims totaling tens of billions of dollars, which arose as a consequence of the massive complexities and interconnectedness of their corporate structure and enterprises. Indeed, the purported "resolution" of intercompany claims, and the associated allocation of value between Tribune, on the one hand, and the Guarantor Subsidiaries on the other, appear to be an integral feature of any reorganization contemplated by the Debtors or certain Senior Lenders. The Bridge Agent believes that the Debtors are improperly shifting substantial value from Tribune to the Guarantor Subsidiaries on account of intercompany claims to enhance the recovery of the Senior Lenders at the expense of the Bridge Lenders and other unsecured creditors at the Tribune level.

4.   Specifically, the Debtors and certain Senior Lenders have taken the position that the baseline recovery for the Bridge Lenders' claims against Tribune is $68-77 million (<u>i.e.</u> assuming the Bridge Lenders' claims are not avoided).[3] This baseline recovery is predicated on a proposed resolution of intercompany claims that transfers substantial value from Tribune to the Guarantor Subsidiaries in violation of the Bridge Guarantee Agreement and other applicable law.[4] In fact, the Bridge Agent believes that a proper allocation of value and treatment of

---

[3] The Debtors' initial plan of reorganization (the "Debtors' Initial Plan") provided for a baseline recovery for the Bridge Lenders' claims of $74 million. Similarly, the plan of reorganization recently filed by Angelo Gordon and Oaktree (the "AG/O Plan") provides for a $68 to $74 million baseline recovery for the Bridge Lenders' claims and the Plan Term Sheet recently filed in connection with the mediation provides for a $77.7 million baseline recovery for the Bridge Lenders' claims.

[4] The Bridge Guarantee Agreement provides that "any indebtedness" of Tribune held by a Guarantor Subsidiary is subordinate to the payment "in full in cash" of the Bridge Guarantees.

intercompany claims would yield a much greater baseline recovery for the Bridge Lenders. (Certain litigation scenarios identified by the Examiner would further increase the recovery for the Bridge Lenders.)

5. Although it is clear that the proposed resolution of intercompany claims would have an obvious and material impact on the recoveries of Tribune creditors, this essential element of the Debtors' restructuring efforts has never been meaningfully addressed or explained. The Bridge Agent submits that a tolling of the statute of limitations may be impractical under the circumstances, and that it would be a gross dereliction of the fiduciary and professional responsibilities of the estates' various representatives to allow the statute of limitations to expire on any claims or causes of action, including any related to intercompany transfers.[5] To eliminate any risk associated with the potential expiration of any statute of limitations on intercompany claims, this issue should be satisfactorily addressed before December 8, 2010, so that all potential causes of action relating to intercompany claims and causes of action are preserved.

6. In light of the foregoing, the Bridge Agent also respectfully requests that any order granting the Committee standing to commence and prosecute the various causes of action identified in the Committee Complaints reflect that the Committee's ability to settle any estate claims is subject to Bankruptcy Court approval under applicable law after notice and an opportunity to be heard by all parties in interest, and that any and all rights of parties in interest

---

[5] It is difficult to see how intercompany claims could be fairly addressed by one representative for all the estates, and the Bridge Agent believes it may be necessary to appoint a new estate fiduciary to address intercompany claims to avoid conflicts among the estates. See In re Adelphia Comm'cns Corp., 336 B.R. 610, 671 (Bankr. S.D.N.Y. 2006), aff'd, 342 B.R. 122 (S.D.N.Y. 2006) ("[I]f the Debtors actually took sides [in interdebtor disputes] in a way that injured one or another of the estates to whom they owed their duties of loyalty, that would result in at least the appearance of impropriety, and, the Court fears, the reality as well.").

to propose a reorganization plan that settles or otherwise resolves any estate claims are fully preserved.

## BACKGROUND

### A.    Procedural Background

7.    Tribune and certain of its subsidiaries (the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") on December 8, 2008 (the "Petition Date").

8.    Pursuant to sections 108(a), 546(a) and 549(d)(i) of the Bankruptcy Code, the statute of limitations for commencing various estate claims and causes of action is two years from the Petition Date.  Therefore, many significant estate claims, including claims related to (i) the LBO Transaction ("LBO-Related Causes of Action") and (ii) transfers among the Debtors and/or their non-Debtor affiliates may be time barred if brought after December 8, 2010.

9.    On December 18, 2008, the Office of the United States Trustee of the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). [Docket No. 101]  On February 20, 2009, the Court entered an order granting the Committee's application to employ and retain Chadbourne & Parke LLP as its co-counsel. [Docket No. 429]  On August 13, 2009, the Committee filed a motion (the "Zuckerman Retention Motion") to retain Zuckerman Spaeder LLP ("Zuckerman") as its special counsel because Chadbourne would be "unable because of conflicts to bring claims against" certain lenders under the LBO Transaction.  (Zuckerman Retention Motion at 4) [Docket No. 1953]  On September 3, 2009, the Court entered an order granting the Committee's application to employ and retain Zuckerman as its special counsel.  [Docket No. 2088]

10. On January 13, 2010, Wilmington Trust, as successor indenture trustee for the PHONES Notes, filed a Motion for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code. [Docket No. 3062] On April 20, 2010, the Court entered an Agreed Order Directing the Appointment of an Examiner (the "Examiner Appointment Order") to investigate and evaluate, among other things, the LBO-Related Causes of Action. [Docket No. 4120] On April 30, 2010, the U.S. Trustee filed an application for an order to approve the appointment of Kenneth N. Klee, Esq. as examiner (the "Examiner"). [Docket No. 4213] On May 11, 2010, the Court approved the appointment of the Examiner. [Docket No. 4320]

11. Pursuant to the Examiner Appointment Order, the Examiner filed his unredacted report (the "Examiner's Report") on August 3, 2010. [Docket Nos. 5247, 5248, 5249, 5250] The Examiner's Report was four volumes and included over 1,000 exhibits.

**B.    The Debtors' Restructuring Efforts**

12. On April 8, 2010, Angelo Gordon & Co., L.P. ("Angelo Gordon"), Centerbridge Partners, L.P., JPMorgan Chase Bank, N.A. and Law Debenture Trust Company of New York, entered into a Settlement Support Agreement (the "Settlement Support Agreement") in respect of a purported global resolution of the LBO-Related Causes of Action. [Docket No. 3970] On April 12, 2010, the Debtors filed a plan of reorganization (the "Debtors' Initial Plan") and a disclosure statement (the "Debtors' Initial Disclosure Statement"), which incorporated the terms of the Settlement Support Agreement. [Docket No. 4008] The Committee supported the Debtors' Initial Plan, which provided enhanced recoveries to certain unsecured creditors but almost no recovery for the Bridge Lenders. On June 7, 2010, the Court entered an order approving the Debtors' Initial Disclosure Statement, as amended. [Docket No. 4707]

13. On August 8, 2010, the Debtors' exclusive period to file a chapter 11 plan and solicit acceptances expired. The Settlement Support Agreement thereafter terminated, when the Examiner Report revealed the true extent of the LBO-Related Causes of Action.

14. On September 1, 2010 the Court entered an order appointing the Honorable Kevin Gross as mediator (the "Mediator") to attempt to reach a settlement among all constituencies. [Docket No. 5591] Mediation sessions were held on September 25 and 26, 2010.

15. On September 17, 2010, Angelo Gordon and Oaktree Capital Management, L.P. ("Oaktree") filed the AG/O Plan. [Docket No. 5728] On September 28, 2010, the Mediator filed a certificate regarding the mediation and attached as an exhibit a term sheet reflecting a settlement between the Debtors, Angelo Gordon and Oaktree. [Docket No. 5831] The certificate also provided that the Mediator would continue to hold the mediation open for further proceedings. Further mediation sessions were held on October 4 and 5, 2010, but no global resolution was reached. The mediation is continuing.

**C.  Committee Standing Motions**

16. The Committee filed the Zuckerman Standing Motion on February 1, 2010. The Zuckerman Standing Motion seeks "entry of an order . . . granting the Committee leave, standing and authority on behalf of the Debtors' estates to commence, prosecute and settle claims and counterclaims arising out of or in connection with the Debtors' 2007 LBO transaction." (Zuckerman Standing Motion at 1)  The Zuckerman Standing Motion was put on hold when the Committee agreed to support the Settlement Support Agreement and the Debtors' Initial Plan.

17. The Committee filed the Chadbourne Standing Motion on September 13, 2010. The Chadbourne Standing Motion seeks "entry of an order . . . granting the Committee leave,

standing and authority on behalf of the Debtors' estates to commence, prosecute and settle claims and/or causes of action . . . on behalf of the Debtors' estates" against certain of the Debtors' directors and officers, certain of the Debtors' former shareholders, Valuation Research Corporation and certain other parties.  Attached as Exhibit A to the Chadbourne Standing Motion, and filed under seal, is a complaint (the "Chadbourne Complaint") bringing actions against the aforementioned parties.

18.     The Committee filed the Zuckerman Standing Motion Supplement on September 14, 2010.  Attached as Exhibit A to the Zuckerman Standing Motion Supplement is a redacted version of the Zuckerman Complaint, updated to "to take account of facts that came to light after the [Zuckerman Standing Motion] was filed and other recent developments."[6]  (Zuckerman Standing Motion Supplement at 2)  The updated, redacted Zuckerman Complaint asserts fifteen separate causes of action, none of which addresses issues related to the prosecution of intercompany claims.

## LIMITED OBJECTION

19.     The Bridge Agent supports the Committee's efforts to preserve all estate claims and causes of action which are subject to the two year statute of limitation under sections 108(a), 546(c) and 549 of the Bankruptcy Code, and which is expiring on December 8, 2010.  However, the Bridge Agent objects to the Committee Standing Motions and the Committee Complaints for the limited reasons set forth below.

---

[6] The Zuckerman Complaint names the following parties as defendants: JPMorgan Chase Bank, N.A., individually and as Administrative Agent; Merrill Lynch Capital Corporation, individually and as Administrative Agent; Merrill, Lynch, Pierce, Fenner & Smith Incorporated; J.P. Morgan Securities Inc.; Citicorp North America, Inc., individually and as Administrative Agent; Citigroup Global Markets, Inc.; Bank of America, N.A.; Banc of America Securities, LLC; and Morgan Stanley & Co. Inc.

I. **<u>Intercompany Claims are Not Preserved Under the Committee Complaints</u>**

20. The Debtors have repeatedly acknowledged the massive extent and complexities of their intercompany relationships and transactions. For example:

- The Debtors' cash management motion states:

    In the normal course of their businesses, the Debtors and their non-Debtor affiliates engage in various intercompany transactions due to their centralized cash administration system. As of any given date, there are numerous intercompany claims . . . that reflect intercompany receivables and payables made in the ordinary course between and among the Debtors and between and among the Debtors and their non-Debtor affiliates . . . . (Cash Management Motion at 23) [Docket No. 10]

- The Debtors' Initial Disclosure Statement states that there are "hundreds of thousands of individual transactions over the history of the Debtors constituting intercompany claims." (Debtors' Initial Disclosure Statement at 10)

- The Debtors' Initial Disclosure Statement describes how the Debtors "resolved" intercompany claims, stating:

    The estimated Distributable Value attributable to Tribune of $537 million is net of approximately $333 million to be allocated to Tribune's direct and indirect subsidiaries based upon an estimated resolution of Intercompany Claims. The estimate of $537 million of Distributable Value attributable to Tribune includes (i) attributing to Tribune a recovery of approximately $368.8 million related to cash transferred to certain of Tribune's subsidiaries just prior to the Petition Date . . ., (ii) attributing to Tribune a recovery of approximately $264 million related to receivables from and equity interest in Tribune Receivables, LLC, a Subsidiary Non-Debtor . . ., and (iii) resolution of Claims between and among Tribune, on the one hand, and Tribune's direct and indirect subsidiaries, on the other hand, taking account the likely enforceability of such Claims. (<u>Id.</u> at 79, n. 51)

21. The disclosure statement filed in connection with the AG/O Plan (at p. 14-16) adopts the same analysis and resolution of intercompany claims as proposed in the Debtors' Initial Disclosure Statement. However, such "resolution" of intercompany claims violates the

Bridge Lenders' rights under the Bridge Guarantee Agreement. The Bridge Guarantee Agreement (at p. 4) provides that "any indebtedness" of Tribune held by a Guarantor Subsidiary is subordinate to the payment "in full in cash" of the Bridge Guarantees. Unless the Bridge Lenders are being paid in full in cash under any proposed plan, the resolution of intercompany claims, and any distribution of Tribune value to the Guarantor Subsidiaries on account of claims against Tribune held by the Guarantor Subsidiaries, would violate the Bridge Guarantee Agreement.

22. The Bridge Lenders are uniquely interested in the resolution of intercompany claims between Tribune and the Guarantor Subsidiaries because it could have a substantial impact on their recoveries. As the Court is aware, the Bridge Lenders have claims at Tribune which are *pari passu* with the Senior Lenders and other Tribune unsecured creditors. Any value improperly attributed to the Guarantor Subsidiaries on account of the resolution of intercompany claims appears designed to increase the recovery of the Senior Lenders at the expense of the Bridge Lenders.

23. In fact, the Bridge Agent believes that a proper allocation of value and treatment of intercompany claims yields a baseline recovery for the Bridge Lenders that is much higher than any amount currently contemplated by the Debtors' and certain Senior Lenders assuming no fraudulent conveyance (and that certain fraudulent conveyance scenarios identified by the Examiner would yield an even greater recovery).

24. The Debtors have never disclosed in any meaningful way how they "resolved" the billions of dollars of intercompany claims.[7] The Bridge Agent has carefully analyzed these

---

[7] The Bridge Agent questions whether the Debtors or the Committee can fairly resolve intercompany claims given the inherent conflict of interests involved in representing co-Debtors with opposing claims. See note 5 above.

issues and expects to take extensive discovery and otherwise fully protect its rights and remedies in this regard in connection with any chapter 11 plan proposed in these cases.

25. Given that most of the unsecured claims reside at the parent level entity (including the claims of the Senior Notes and the PHONES Notes), the Committee (as fiduciaries for the unsecured creditors at Tribune) has a vested interest in ensuring that the resolution of intercompany claims does not siphon value from the parent company down to the Guarantor Subsidiary level where it will be trapped by the subsidiary guarantees held by the Senior Lenders.

26. The resolution of intercompany claims and the allocation of estate value should be achieved fairly in light of the actual facts and the relative rights of the various creditor constituencies.  <u>Intercompany claims should not be used as a mechanism to improperly transfer value to the Senior Lenders or to reallocate value solely for purposes of justifying a non-global settlement supported by the Debtors and certain favored constituencies.</u>  To date, the Committee has not expressed any interest in taking action to either preserve intercompany claims or challenge the Debtors' proposed resolution of such matters.

27. Moreover, as of this date, the Debtors have done nothing to pursue or preserve these claims notwithstanding that they must be addressed in connection with confirmation of a chapter 11 plan.  It is clear that a restructuring will not be consummated before December 8, 2010.  The Bridge Agent believes it is critical that all potential claims be preserved in light of the upcoming December 8, 2010 expiration of the statute of limitations.

## II.    Other Concerns

28. The Committee Standing Motions seek broad authority for the Committee to prosecute and settle LBO-Related Causes of Action.  The Bridge Agent respectfully requests that

any order approving the Committee Standing Motions should make clear that (i) all rights of parties in interest to seek the appointment of a new disinterested fiduciary to pursue <u>all</u> claims are preserved and (ii) any settlement is subject to Bankruptcy Court approval under applicable law after notice and an opportunity to be heard by all parties in interest.  Furthermore, the Committee's settlement authority should not preclude other parties from pursuing and proposing settlements of the LBO-Related Causes of Action or proposing a plan of reorganization that purports to settle the LBO-Related Causes of Action.

**CONCLUSION**

29. For the foregoing reasons, the Bridge Agent respectfully requests that Committee Standing Motions be granted only with the modifications specified herein.

Dated: October 7, 2010
       Wilmington, Delaware

       **FOX ROTHSCHILD LLP**

       */s/ Jeffrey M. Schlerf*
       Jeffrey M. Schlerf (No. 3047)
       John H. Strock (No. 4965)
       Citizens Bank Center
       919 North Market Street, Suite 1600
       Wilmington, Delaware 19801
       Telephone: (302) 654-7444
       Facsimile: (302) 656-8920

       -and-

       David G. Hille (admitted *pro hac vice*)
       Scott Greissman (admitted *pro hac vice*)
       Andrew W. Hammond (admitted *pro hac vice*)
       WHITE & CASE LLP
       1155 Avenue of the Americas
       New York, NY 10036
       (212) 819-8200

       Thomas E Lauria (admitted *pro hac vice*)
       WHITE & CASE LLP
       200 South Biscayne Boulevard, Suite 4900
       Miami, Florida 33131
       (305) 371-2700

       Attorneys for Wells Fargo Bank, N.A.
       as Administrative Agent under the
       Bridge Credit Agreement