IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al., | Case No. 08-13141 (KJC) |
| Debtors. | Jointly Administered |
| | Hearing Date: October 22, 2010 at 2:00 p.m.<br>Objection Deadline: October 15, 2010 at 4:00 p.m. |
| | Ref. No. 5680 |

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTION OF AURELIUS CAPITAL MANAGEMENT, LP,
FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

The Official Committee of Unsecured Creditors (the "**Committee**") of Tribune Company and its various debtor-subsidiaries (collectively, the "**Debtors**" or "**Tribune**"), respectfully submits this objection (the "**Objection**") to the Motion of Aurelius Capital Management, LP ("**Aurelius**"), for the Appointment of a Chapter 11 Trustee (the "**Motion**"), and represents as follows:

PRELIMINARY STATEMENT

1. The appointment of a trustee is unwarranted, especially in light of recent developments. The Debtors, the Committee and major senior lenders announced earlier this week an agreement in principle for a plan of reorganization, including the settlement of certain claims related to the 2007 leveraged buyout of Tribune. The plan settlement (the "**Mediation Settlement**") was the product of a lengthy and intense Court-ordered mediation overseen by Judge Kevin Gross. The Mediation Settlement, which has been approved by the Special Committee of the Debtors' Board of Directors, will be embodied in a plan of reorganization to be filed in the very near future. The Mediation Settlement alone provides a basis to deny the

Motion. Such relief would undermine the significant efforts undertaken by all participants in the mediation and set back the Debtors' prospects of promptly exiting chapter 11.

2. Even if the Mediation Settlement were not to be consummated, there are still no grounds for the appointment of a trustee. The premise underlying the Motion is that the Debtors and the Committee are conflicted with respect to the 2007 leveraged buyout of Tribune (the **"LBO Transaction"**) and unable and unwilling to assert related claims arising from that transaction (the **"LBO-Related Causes of Action"**). That premise is entirely unfounded as to the Committee.

3. The Committee has filed two motions seeking standing to bring the very claims and causes of action that Aurelius alleges the Committee is unable to bring. The Committee has completed its investigation with respect to the LBO Transaction, and has completed drafts of complaints, copies of which were attached as exhibits to the standing motions. Should the Court approve the standing motions, then the Committee will be in a position to immediately commence the LBO-Related Causes of Action to ensure that applicable statutes of limitations do not run. Furthermore, given that Chadbourne & Parke LLP (**"Chadbourne"**) has now withdrawn as counsel of record for the Committee's complaint to pursue the LBO-Related Causes of Action, any issues raised by Aurelius related to the role of Chadbourne are now moot. The Committee, acting through Zuckerman Spaeder LLP (**"Zuckerman"**) and Landis Rath & Cobb LLP (**"Landis"**), will be prosecuting the LBO-Related Causes of Action against non-settling parties as the fiduciary to all unsecured creditors once standing is granted. Furthermore, in the event the Mediation Settlement is not ultimately consummated, the Committee is fully prepared to prosecute LBO-Related Causes of Action against all parties involved in the LBO Transaction.

4. Finally, to bring in a trustee and displace the Debtors' management at this point in these cases, nearly two years in, would be inappropriate and wasteful. A trustee would inevitably duplicate the efforts of the Debtors and the Committee, needlessly consume estate resources and further complicate the Debtors' cases. There is no need to inject a new set of professionals who would need to spend substantial time becoming familiar with the Debtors, their business and the history of these cases. The cost and added complexity is simply not in the best interest of the estate or unsecured creditors.

5. The Motion is an overt tactical move by a creditor unhappy with positions taken by the Debtors and the Committee. The Court should not advance Aurelius's interests ahead of, and at the expense of, the broad and balanced interests of unsecured creditors generally, interests which only the Committee, and no one individual creditor, can fairly represent. The Motion should be denied.

## BACKGROUND

### A. Debtors' Bankruptcy Filing, Committee's Standing and Mediation

6. On December 8, 2008, the Debtors commenced their bankruptcy cases by each filing with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").[1]

7. On December 18, 2008, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee.

8. On February 20, 2009, the Court entered an order approving the retention of Chadbourne as counsel to the Committee (Docket No. 429).

---

[1] An additional Debtor, Tribune CNLBC, LLC, filed a voluntary petition under Chapter 11 of Title 11 of the Bankruptcy Code on October 12, 2009.

3

9. On September 3, 2009, the Court entered an order authorizing the retention of Zuckerman as special counsel to the Committee (Docket No. 2088).

10. On February 1, 2010, Zuckerman filed the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Claims and Counterclaims of the Debtors' Estates (Docket No. 3281) (the "**February 1, 2010 Standing Motion**"). The February 1, 2010 Standing Motion, which was supplemented on September 14, 2010 (Docket No. 5698), sought authority for the Committee, acting through Zuckerman, to file suit against certain pre-petition lenders that financed the LBO Transaction and certain financial advisors of Tribune on behalf of the Debtors' bankruptcy estates. This motion has been adjourned several times and remains outstanding but is scheduled for a hearing on October 22, 2010.

11. On September 1, 2010, the Court entered the Order Appointing Mediator (Docket No. 5591) ordering the mediation of disputes concerning the appropriate terms of a plan, including the appropriate resolution of the LBO-Related Causes of Action (the "**Mediation**"). The Mediation began on September 25, 2010 and, as of the date of this Objection, remains open.

12. On September 13, 2010, Chadbourne, jointly with Zuckerman and Landis, filed the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Commence, Prosecute and Settle Certain Claims of the Debtors' Estates (Docket No. 5668) (the "**September 13, 2010 Standing Motion**," together with the February 1, 2010 Standing Motion, the "**Standing Motions**"). With respect to the September 13, 2010 Standing Motion and the related proposed complaint, Chadbourne withdrew as counsel of record on October 13, 2010 and Zuckerman and Landis will serve as counsel going forward (Docket No. 5942). By the two Standing Motions, the Committee is seeking standing to

prosecute all of the causes of action identified in the Report of Kenneth N. Klee as Examiner (dated July 26, 2010) (Docket No. 5130-33) (the "**Examiner's Report**").

13. On September 13, 2010, almost immediately following the Committee's filing of its September 13, 2010 Standing Motion, Aurelius filed the instant Motion.

14. On October 12, 2010, the Debtors announced an agreement in principle among the Debtors, the Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co. L.P., and JPMorgan Chase Bank, N.A. ("**JPMorgan**") with respect to a plan of reorganization that settles certain claims related to the LBO Transaction. The Mediation Settlement was negotiated with the assistance of the Court-appointed mediator, Judge Kevin Gross.

## ARGUMENT

15. Aurelius has moved to appoint a trustee under section 1104(a)(1), (2) and (3). For the reasons set forth below, the standards required under each of these statutory provisions are not, and cannot be, satisfied by Aurelius in these cases.

### I. The High Burden of Proof Required By Section 1104(a)

16. Under section 1104(a), a court shall order appointment of a trustee (1) if there is a showing of "cause," (2) if the appointment of a chapter 11 trustee would be in the interests of creditors, equity security holders and other interests of the estate, or (3) if grounds exist to dismiss or convert the case to a case under chapter 7 of the Bankruptcy Code under section 1112 of the Bankruptcy Code, but the appointment of a trustee is in the best interests of the creditors and estate. *See* 11 U.S.C. § 1104(a).

17. The law of the Third Circuit is clear: a party moving for the appointment of a trustee "'must prove the need for a trustee . . . by clear and convincing evidence.'" *In re Marvel Entm't Grp.*, 140 F.3d 463, 471 (3d Cir. 1998). For evidence to be "clear and convincing" it must "produce[] in the mind of the trier of fact a firm belief or conviction as to the truth of the

allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings Inc.)*, 295 B.R. 502, 508 (D.N.J. 2003) (citing *Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990)), *aff'd* 385 F.3d 313 (3d Cir. 2004).

18. The clear and convincing evidence standard applies to all three subsections of section 1104(a). *See In re G-I Holdings, Inc.*, 385 F.3d at 317-18 ("The party moving for the appointment of a trustee . . . must prove the need for a trustee under either subsection [(a)(1) or (a)(2)] by clear and convincing evidence.") (*quoting In re Marvel*, 140 F.3d at 471) (alterations in original); *see also Taub v. Taub (In re Taub)*, 427 B.R. 208, 232 (Bankr. E.D.N.Y. 2010) (court applying clear and convincing evidence standard to subsection (a)(3)). This high evidentiary burden is reinforced by a strong presumption against appointing a trustee, which is based in part on the recognition that the debtor-in-possession is usually the best party to conduct operations during the reorganization, *see In re Marvel*, 140 F.3d at 471, as well as the immense cost, disruption and delay that implicitly results from the need of the trustee and his new counsel to familiarize themselves with the debtors and the cases. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003). The appointment of a chapter 11 trustee has therefore been characterized by this Court, among many others, as "a last resort," *see In re W.R. Grace & Co.*, 285 B.R. 148, 160 (Bankr. D. Del. 2002), and as "an extraordinary remedy that is the exception, and not the rule." *See In re Spansion, Inc.*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) (*citing In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989)). As described below, the Motion fails to satisfy this high

evidentiary burden and does not overcome the strong presumption against the appointment of a trustee.

II. **No Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(1)**

19. Section 1104(a)(1) provides that "the court shall order the appointment of a trustee for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . ." *See* 11 U.S.C. § 1104.

20. Aurelius has made numerous allegations of misconduct against current management, all of which relate to the LBO Transaction. Based on these allegations, Aurelius argues two main points in support of the appointment of a trustee: (i) that a lack of creditor confidence and extreme acrimony prevents confirmation of a plan while the debtors remain in possession; and (ii) the Debtors and the Committee are both conflicted and that both are unable or unwilling to bring the LBO-Related Causes of Action. As discussed below, these allegations are not true. First, the efforts leading to, and the very existence of, the Mediation Settlement speaks directly against the Motion's allegations that the parties are deadlocked and incapable of submitting a confirmable plan of reorganization. Second, the Committee is fully prepared to prosecute the LBO-Related Causes of Action against non-settling parties and in the event the Mediation Settlement is not ultimately consummated, the Committee is also fully prepared to prosecute the LBO-Related Causes of Action against all parties involved in the LBO Transaction. Therefore, no cause exists to justify the appointment of a trustee.

    A. **The Appointment of a Trustee is Inappropriate In Light of the Mediation Settlement**

21. Aurelius has alleged that severe acrimony exists that has resulted in a "deadlock" which is impeding plan processes and prevents confirmation of a plan while the debtors remain

7

in possession. *See* Motion at ¶¶ 65-69. However, this is simply not true, especially in light of the Mediation Settlement. As the Court is aware, key constituents in these cases participated in mediation before Judge Gross to try to resolve issues related to the plan and treatment of the LBO-Related Causes of Action.

22. After intense negotiations, the Mediation Settlement was announced on October 12th. Given the Mediation Settlement and the recent breakthrough toward a negotiated plan, it would make no sense for the Court to now appoint a chapter 11 trustee. Appointing a trustee at this stage in these cases would undermine all of the progress made by the parties involved in the Mediation Settlement. Any discord that Aurelius has with the Mediation Settlement, including treatment of the LBO-Related Causes of Action can, and should be addressed in the context of confirmation, but does not justify the extreme measure of appointing a trustee.

23. Even had the Mediation Settlement not been achieved, the circumstances in these cases do not justify the appointment of a trustee. It has been established by the Third Circuit that there is no *per se* rule by which mere conflicts or acrimony between debtor and creditor mandate the appointment of a trustee. *See In re Marvel Entm't Grp.*, 140 F.3d 463, 472-73 (3d Cir. 1998). It is also clear from the caselaw that acrimony must rise to extreme levels to constitute cause. *See, e.g., Taub v. Taub (In re Taub)*, 427 B.R. 208, 229 (Bankr. E.D.N.Y. 2010) (holding that acrimony and conflicts between parties extended well beyond the healthy conflicts that always exist between debtor and creditor); *In re Nartron Corp.*, 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005) (court noted deep-seeded conflict and animosity that would likely continue at unacceptable levels).

24. Accordingly, while "in certain extreme cases, the presence of rancor and acrimony has been found to be significant enough to constitute cause to appoint a trustee under

section 1104(a)(1), . . . [n]either loss of confidence, however reasonable, or acrimony, however bitter, necessarily results in appointment of a trustee." *See In re Sundale, Ltd.*, 400 B.R. 890, 909 (Bankr. S.D. Fla. 2009). Moreover, at least one bankruptcy court has noted the importance of recognizing that "the appointment of a trustee will not make the [i]ntercreditor [d]isputes go away. It will just lengthen the time it will take to get them resolved." *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 661 (Bankr. S.D.N.Y. 2006) (court denying motions for appointment of a trustee).

25. Here, there is no reason to believe that the appointment of a chapter 11 trustee would expedite the plan process or resolve complicated intercreditor disputes, particularly those that have not been resolved with the assistance of a court-appointed mediator. To the contrary, a chapter 11 trustee would require a significant amount of time to understand the complex nature of the bankruptcy cases and the many different creditor interests at issue, thereby delaying the plan process.

### B. Cause for Debtors' Inability or Unwillingness to Sue is Obviated by Committee's Ability to Obtain Derivative Standing

26. The Motion also argues that the Debtors and the Committee are both conflicted and unable or unwilling to bring the LBO-Related Causes of Action. Should no other party be available to pursue estate causes of action, the inability or unwillingness of a debtors' current management to pursue estate causes of action has been cited as a key factor for the appointment of a trustee. *See In re PRS Ins. Grp., Inc.*, 274 B.R. 381, 388 (Bankr. D. Del. 2001).

27. However, the ability of creditors' committees to obtain derivative standing to bring estate causes of action is well-settled within this Circuit, particularly in the event that debtors are unable or unwilling to do so. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 566 (3d Cir. 2003);

9

*Official Comm. of Unsecured Creditors v. Barron (In re Polaroid Corp.)*, No. 03-56404 (PJW), 2004 Bankr. LEXIS 841, at *4-5 (Bankr. D. Del. June 22, 2004); *Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.)*, No. 01-11353 (PJW), 2003 Bankr. LEXIS 940, at *4-5 (Bankr. D. Del. Aug. 14, 2003).

28. The availability of a creditors' committee to derivatively bring estate causes of action obviates the need for the appointment of a trustee. As the Court of Appeals in this Circuit has explained:

> [D]isallowing derivative suits and forcing creditors' committees to move to appoint trustees would amount to 'replac[ing] the scalpel of derivative suit with a chainsaw.' . . . In short, we believe that appointing a trustee is too drastic a step to constitute a serious alternative to allowing derivative suits by creditors' committees. Indeed, because much of Chapter 11 is premised on allowing current management to remain in control of the debtor, it is unlikely that Congress intended to force a court to displace that management in the relatively commonplace event that a debtor makes a questionable decision not to prosecute a fraudulent avoidance claim.

See *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003).

29. Accordingly, this Court has found the existence of a creditors' committee, to pursue an action that the debtor is unable or unwilling to pursue, to be a basis to deny the appointment of a trustee under section 1104(a)(1). *See In re W.R. Grace & Co.*, 285 B.R. 148, 159-60 (Bankr. D. Del. 2002) (where debtor and certain committees sought trustee appointment for single issue of debtor-in-possession refusing to pursue a fraudulent conveyance action, the court held that a committee pursuing the action obviated the need for a "last resort" trustee appointment); *see also In re Royster Co.*, 145 B.R. 88, 91 (Bankr. M.D. Fla. 1992) (where creditors' committee was briefed on action that might be pursued, court found it would be inappropriate to appoint a trustee).

### C. The Committee is Prepared to Pursue the LBO-Related Causes of Action

30. As reflected in the Standing Motions that have been filed before the Court and are scheduled for hearing, the Committee is ready, willing and able to pursue the LBO-Related Causes of Action. The Committee has already completed its investigation of the LBO Transaction, which involved the review of millions of pages of documents obtained from relevant parties and other discovery. In addition to the Committee's own investigation, the Committee has had the benefit of extensive factual findings reflected in the Examiner's Report. These investigations have culminated in the preparation by the Committee of two separate complaints, the first against certain LBO Transaction lenders and advisors, and the second against certain directors and officers, and shareholders of Tribune.

### D. The Committee Does Not Possess Disabling Conflicts of Interest

31. Recognizing full well that the Committee has taken all necessary steps to be in a position to bring the LBO-Related Causes of Action, Aurelius erroneously alleges that the Committee and Committee's counsel are conflicted. Specifically, Aurelius alleges that the Committee has acted in the interest of certain of its members to the detriment of others. *See* Motion at ¶ 76.

32. As a threshold matter, since the filing of this Motion, Aurelius withdrew its Disqualification Motion with prejudice on October 8, 2010 and Chadbourne withdrew as counsel with respect to the Committee's September 13, 2010 Standing Motion on October 13, 2010. Zuckerman and Landis will serve as counsel to the Committee on the motion and on the related proposed complaint. Therefore, any issues regarding Chadbourne's alleged conflicts are moot and not relevant with respect to the instant Motion.

33. As to the Committee itself, there is simply no basis to assert that the Committee is not making independent and informed determinations as to what is in the best interests of all

creditors. To start, only one member of the Committee, JPMorgan, was involved in the LBO Transaction, and JPMorgan does not participate in any Committee discussions related to the LBO Transaction and does not receive any materials or information related to the Committee's investigation and analysis of the LBO Transaction. The other seven members of the Committee had no involvement in the LBO Transaction and are independent fiduciaries for all unsecured creditors with respect to issues related to the LBO-Related Causes of Action. The Committee members are sophisticated parties, all of whom are represented by outside counsel or whose internal representatives are lawyers and each, unsurprisingly, has its own highly developed views of the issues in these cases.

34. In summary, Aurelius does not, because it cannot, provide any evidence, much less clear and convincing evidence, that any Committee member has been unduly influenced or has taken any action inconsistent with, or in violation of, its fiduciary duties. Aurelius's complaints against the Committee stem from its disagreement with the Committee's position on matters related to the LBO-Related Causes of Action. However, this disagreement does not establish cause justifying the appointment of a trustee.

### III. The Appointment of a Trustee Would Not Be in the Best Interests of the Estate Under Section 1104(a)(2)

35. The Motion is also wrong in its assertion that the appointment of a trustee would be in the best interests of the estate and creditors. Significantly, section 1104(a)(2) requires a finding that appointment of a trustee would be in the interest of essentially *all interested constituencies*, and not simply some or most of the case parties. *See In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 Bankr. LEXIS 2192, at *19 (Bankr. S.D.N.Y. May 16, 2003) (emphasis added). Under section 1104(a)(2), a creditor group, no matter how dominant, cannot justify the appointment of a trustee simply by alleging that the appointment would be in its individual

interest. It must show that the appointment is in the interests of all those with a stake in the estate, which in this case would include unsecured creditors and other case parties. *See In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001). Here, Aurelius cannot establish that appointment of a trustee is in the best interests of the estate and its creditors.

36.     Despite Aurelius's desire to replace the Committee's judgment with its own, the Committee is capable of determining what is in the best interests of the estates and their creditors. In fact, this task is paramount to the Committee's fiduciary duties and the Committee's processes and judgments are fair and consistent with the actions of an independent fiduciary. As described above, the Committee has no conflicts that prevent it from bringing the LBO-Related Causes of Action, and, in fact, has vigilantly taken all necessary steps to be in a position to assert them.

37.     The appointment of a trustee would not be in the best interests of the estate. To the contrary, appointing a chapter 11 trustee at this critical stage in the cases would be disastrous. As described above, certain of the key constituents have agreed to the Mediation Settlement and will be filing a joint plan of reorganization embodying the settlement. The appointment of a trustee would undermine the plan process and set these cases back.

38.     Moreover, appointing a chapter 11 trustee and engaging a new set of professionals would add unnecessary cost and complexity to these cases. A chapter 11 trustee and its professionals would be expected to spend time becoming familiar with the Debtors' business operations and the relief obtained in the chapter 11 cases before even considering plan and LBO Transaction-related issues. Almost two years have passed since the commencement of these cases, and the costs associated with a trustee's "catch-up" efforts would be borne by the estate to

the detriment of unsecured creditors. These costs would be especially unjustified given that the Committee is in a position to commence the LBO-Related Causes of Action.

39. Finally, from an operational standpoint, the Committee is informed that Tribune's businesses have exceeded projections. Aurelius has never alleged otherwise in its Motion. Displacing management could result in harm to operations and loss in value to the business, all to the detriment of the estates and their creditors. Accordingly, the appointment of a chapter 11 trustee is not in the best interests of the estate or the unsecured creditors under section 1104(a)(2).

## IV. Trustee Appointment is Not Appropriate Under Section 1104(a)(3)

40. Aurelius's final argument is that a chapter 11 trustee should be appointed based on section 1104(a)(3). Section 1104(a)(3) of the Bankruptcy Code requires the Court to appoint a trustee "if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee . . . is in the best interests of creditors and the estate." *See* 11 U.S.C. § 1104(a)(3). Under the terms of the statute, a movant must first establish "cause" exists under section 1112 for conversion or dismissal of the chapter 11 case.[2] *See In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004). "Cause" under section 1112(b), however, is separate and distinct from section 1104(a)(1) "cause." Section 1112(b)(4) sets forth a non-exclusive list of what constitutes "cause" to convert or dismiss a case. *See* 11

---

[2] Section 1112 provides, in relevant part:

(b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request if a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *if the movant establishes cause.*"

*See* 11 U.S.C. § 1112 (emphasis added).

14

U.S.C. § 1112(b)(4); *see also Taub v. Taub (In re Taub)*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (citation omitted).

41. In a brief, essentially unsupported argument at the end of its Motion, Aurelius asserts that there is "cause" that warrants dismissal or conversion under a section 1104(a)(3) analysis. The alleged "cause" is (i) deadlock between the parties, and (ii) the Debtors' inability to propose a confirmable plan. *See* Motion at ¶ 93. Of course, as already set forth in detail above, the Mediation Settlement and positive plan developments make clear that there is no deadlock and the Debtors are able to propose a confirmable plan. Accordingly, the standards under section 1104(a)(3) cannot be satisfied and Aurelius's request for the appointment of a chapter 11 trustee must be denied on this ground also.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Committee respectfully requests that the Court deny the Motion in its entirety and grant such other and further relief as may be just and proper.

Dated: October 15, 2010  
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ illegible signature

Adam G. Landis (No. 3407)  
Daniel B. Rath (No. 3022)  
Rebecca L. Butcher (No. 3816)  
Matthew B. McGuire (No. 4366)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450

- and -

Howard Seife  
David M. LeMay  
Andrew Rosenblatt  
**CHADBOURNE & PARKE LLP**  
30 Rockefeller Plaza  
New York, New York 10112  
Telephone: (212) 408-5100  
Facsimile: (212) 541-5369

*Counsel to the Official Committee of Unsecured Creditors*

- and -

Graeme W. Bush  
James Sottile  
**ZUCKERMAN SPAEDER LLP**  
1800 M. Street, N.W., Suite 1000  
Washington, DC 20036  
Telephone: (202) 778-1800  
Facsimile: (202) 822-8106

*Special Counsel to the Official Committee of Unsecured Creditors*