## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRIBUNE COMPANY, et al.,[1] | Case No. 08-13141 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  October 22, 2010 at 2:00 p.m. (ET)**<br>**Ref. Nos. 3281, 5668, 5698, 5909, 5910, 5922,**<br>**5871 and 5951** |

### REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF (i) ITS SEPTEMBER 14, 2010 SUPPLEMENT TO ITS MOTION FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS AND COUNTERCLAIMS OF THE DEBTORS' ESTATES AND (ii) ITS SEPTEMBER 13, 2010 MOTION FOR ENTRY OF AN ORDER GRANTING LEAVE, STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CERTAIN CLAIMS OF THE DEBTORS' ESTATES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); foresalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services, LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo., Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company, LLC (9479); JuliusAir Company II, LLC; KJAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347) Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); New River Center Maintenance Association, Inc. (5621); Newscom Services, Inc. (4817); Newspapers Readers Agency, Inc. (7335); North Michigan Production Company (5466), North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc. (1088); Tribune California Properties, Inc. (1629); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WATL, LLC (7384); WCCT, Inc. f/k/a WTXX Inc. (1268); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WLVI Inc. (8074); and WPIX, Inc. (0191). The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

The Official Committee of Unsecured Creditors (the "Committee") of the Tribune Company (the "Company") and its various debtor-subsidiaries (collectively, the "Debtors"), by and through its undersigned counsel, submits this reply memorandum in support of its two pending motions for standing to pursue claims (the "LBO Claims") arising out of and related to the Debtors' 2007 leveraged buyout transaction (the "LBO Transaction"):  (i) its motion for entry of an order pursuant to 11 U.S.C. §§ 105, 1103 and 1109, granting the Committee leave, standing and authority on behalf of the Debtors' estates to commence, prosecute and settle claims and counterclaims against certain lenders and advisors arising out of or in connection with the LBO Transaction (the "Original Standing Motion") [D.I. 3281, filed on Feb. 1, 2010], and its September 14, 2010 Supplement thereto (the "Supplement") [D.I. 5698]; and (ii) its September 13, 2010 motion for entry of an order granting leave, standing and authority to commence, prosecute and settle certain claims of the debtors' estates against certain Tribune directors, officers, shareholders, and other parties ("Standing Motion for Non-Lender LBO Claims"; together with the Original Standing Motion, the "Standing Motions") [D.I. 5668].

Several parties filed limited objections and/or responses to the Supplement and Standing Motion for Non-Lender LBO Claims.[2] None of the responding parties oppose the Committee's requests for standing.  Accordingly, the Court should grant the Standing Motions and authorize the Committee to pursue the LBO Claims.

---

[2]    The Debtors filed a "Supplemental Response and Limited Objection" to the Original Standing Motion and a "Response and Limited Objection" to the Standing Motion for Third Party Claims [D.I. 5909]; Bridge Agent Wells Fargo filed a "Limited Objection" [D.I. 5910]; Aurelius Capital Management, LP, filed a "Limited Objection" [D.I. 5922]; the Credit Agreement Lenders ("CAL") filed a "Response" [D.I. 5871]; Wilmington Trust Co. filed a "Limited Objection" [D.I. 5951].  As of the time of this filing, the Committee understands that Merrill Lynch may also file a response that does not object to the Committee receiving standing to pursue colorable claims.

In further support of the Standing Motions, the Committee respectfully submits as follows:

## PRELIMINARY STATEMENT

Much has happened since the Committee filed the Standing Motion for Non-Lender Party Claims and the Supplement to the Original Standing Motion on September 13 and 14. Most notably, the Committee, Debtors, Oaktree Capital Management, L.P., and Angelo, Gordon & Co, L.P. (two of the leading Credit Agreement Lenders), and JPMorgan Chase Bank, N.A. (the Administrative Agent on the Senior Credit Facility) have reached agreement in principle on a proposed plan of reorganization that they will be submitting to this Court shortly.

However, this agreement only confirms the need to grant the Committee's Standing Motions for two reasons. First, whatever form a plan of reorganization takes – whether it includes terms reflecting the latest tentative settlement or not – valuable claims arising from the LBO Transaction must and will be litigated for the benefit of Debtors' estates and their unsecured creditors. These include claims against Tribune advisors, shareholders, directors and officers. Second, the Debtors cannot and should not be the party that litigates or settles these valuable LBO Claims.

The Debtors agree that all potential LBO Claims should be preserved, and effectively admit that they are not the proper party to pursue such claims, nor do they intend to. Yet the Debtors still contend they should retain authority to settle the LBO Claims. CAL's Response to the Supplement supports this argument. It makes no sense to leave the hopelessly conflicted Debtors, who recognize that they should not, and do not intend to, pursue the LBO Claims, with the authority to settle those claims out from under the Committee. The Committee has been conducting an extensive investigation into the LBO for well over a year, is conflict-free, and is

3

ready to prosecute the LBO Claims. The Committee is the party committed to maximizing the value of those claims for the benefit of the Debtors' estates and their creditors, and should be given the settlement authority that is part and parcel of the standing to prosecute the claims.

Wells Fargo (the current Administrative Agent under the Bridge Facility), Aurelius, Merrill Lynch, and Wilmington Trust, while not opposing the Committee's standing, seek changes to the draft complaint or want intercompany claims between and among Tribune entities to be preserved. If granted standing, the Committee will address these points. It will file a revised complaint that, in its considered judgment, offers unsecured creditors the opportunity to achieve the best possible recovery. Likewise, as noted in Debtors' response, the Committee anticipates that a consensual agreement among the parties will toll the statute of limitations with respect to intercompany claims, thereby fully preserving those claims and removing the urgency that attends the pending Standing Motions.

Finally, the Court should reject any suggestion lodged by Wells Fargo or Wilmington Trust that the Court consider whether to authorize, now or in the future, a party other than the Committee to bring the LBO Claims. The Committee has focused on investigating the LBO Claims for over a year through unconflicted counsel, and the Court-appointed Examiner also reviewed and reported on the LBO Claims in a multi-hundred page report. It would be an enormous and unnecessary waste of resources for a new party to begin to investigate, review and analyze the LBO Claims at this point in the cases.

The December 2010 statute of limitations looms for certain of the unresolved fraudulent conveyance claims. The Debtors have abandoned any pretense that they can or should be entrusted to prosecute the LBO Claims. Accordingly, the Court should grant the Standing

Motions and vest the Committee with authority to bring, prosecute, and settle remaining claims relating to the LBO Transaction for the benefit of the Debtors' estates.

## ARGUMENT

I.    **The Committee Should Receive Authority To Settle The Causes Of Action It Pursues.**

    A.    **The Committee Should Have Full Power To Settle Any LBO Claims It Is Given Standing To Pursue.**

While acknowledging that the Committee should receive standing to pursue all non-settled claims related to the LBO Transaction, the Debtors (along with CAL) contend that the Debtors should retain the right to settle such claims.  In other words, the Debtors seek the authority to settle litigation that they are too conflicted to pursue vigorously in the first instance. That approach would weaken the entire purpose of granting a creditors committee derivative standing – ensuring that an unconflicted representative of creditors will zealously pursue claims that the Debtors will not.  Only the Committee, not the Debtors, should have the authority to settle LBO Claims.

The Debtors have interests that are inconsistent with maximizing the recovery on the LBO Claims.  For example, many of the likely defendants on the LBO Claims are current or former officers and directors of the Debtors.  The Debtors may be inclined to delay or obstruct the Committee's efforts to prosecute the Claims in order to protect these defendants and to resolve those Claims at a bargain price.  The risk is too high that Debtors may use any retained power to settle to prevent the Committee from achieving a resolution of the claims that achieves fair value for unsecured creditors.  Given the conflicts previously identified by the Committee, the Debtors should be not be allowed to compromise or extinguish colorable, valuable claims that the Committee intends to pursue.

Accordingly, any grant of derivative standing to the Committee to litigate all remaining LBO Claims should confer on the Committee the ability to settle the LBO Claims in order to ensure that the Committee is able to maximize the value of these causes of action for the estate. *See, e.g.*, *In re Adelphia Communications Corp.*, 361 B.R. 337, 355 & n.82 (S.D.N.Y. 2007) ("There can be little doubt that the right to litigate a cause of action must include the right to withdraw it, settle it or try it");[3] *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 458-59 (2d Cir. 2007) (hearing Rule 9019 motion filed by creditors' committee seeking to settle claims that the committee had brought derivatively against prepetition lenders). A contrary result would undermine the fundamental purpose of a grant of standing to the Committee. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573-80 (3d Cir. 2003).

## B.    The Court Should Decline To Approve Any Proposed Settlement Of LBO Claims That Is Not Supported By The Committee.

Should the Court grant the Committee standing to litigate the estate's claims arising out of the LBO Transaction but determine that the Committee does not have exclusive power to settle those claims, it should make clear that the Committee's consent to any settlement of LBO Claims is required so that the Debtors do not attempt to settle the LBO Claims around the Committee. *See In re Adelphia*, 361 B.R. at 355. Courts are properly wary of approving settlements of such claims where a creditors committee that has been given standing to pursue such claims does not support the settlement. According substantial weight to the views of a

---

[3] In that *Adelphia* decision, the district court interpreted section 1123(b)(3) of the Code to permit inclusion in a plan of a settlement only where that settlement has been agreed to by the "necessary" parties – i.e., the parties to the litigation. *Id.* at 358.

creditors committee is appropriate given the committee's role as representative of and fiduciary for the interests of the whole class of unsecured creditors.

This Court's decision in *In re Exide Technologies*, 303 B.R. 48 (Bankr. D. Del. 2003), underscores this point.[4]  In that case, the Court rejected the debtor's proposed settlement of the adversary proceeding because it was not fair and equitable to general unsecured creditors.  303 B.R. at 68.  The Court assessed the settlement under the prevailing Third Circuit test, which requires the reviewing court to consider the "paramount interest of the creditors" among other factors.  303 B.R. at 67 (citing *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002)).  In *In re Exide*, the unsecured creditors overwhelmingly opposed the plan, and the Court gave that opposition "substantial weight" in refusing to approve the proposed settlement.  *Id.* at 70; *see also In re Matco Electronics Group, Inc.*, 287 B.R. 68, 77 (Bankr. N.D.N.Y. 2002) (denying debtors' Rule 9019 motion seeking approval of a purported settlement of an adversary proceeding where creditors committee had authority to prosecute that adversary proceeding and "the Committee expressed serious objections to the Settlement Agreement").[5]

Similarly, in *In Smart World Technologies, LLC v. Juno Online Servs., Inc. (In re Smart World Technologies, LLC)*, the Second Circuit recognized that "perverse dynamics" may arise where the court has authorized one party to prosecute claims on behalf of the debtor's estate, but

---

[4]  The Debtors cite *In re Exide* in their response for the unremarkable point that section 1123(b)(3)(A) of the Code permits a debtor to "*propose* a settlement of the Creditors Committee's Adversary Proceeding in its plan." Debtors' Supp. Resp. at 4-5 (citing *In re Exide*, 303 B.R. at 67) (emphasis added).

[5]  Indeed, where courts approve plan settlements that have not been negotiated between the parties to the dispute being settled, creditors committee support for the settlement is a critically important factor in approval. *See In re Exide*, 303 B.R. at 70 (citing cases); *In re Allegheny Int'l, Inc.*, 118 B.R. 282, 308 09 (Bankr. W.D. Pa. 1990) (confirming debtor's plan of reorganization including settlement of adversary proceeding brought derivatively by the creditors committee where that settlement had been negotiated by and had the support of the creditors committee, among others).

other parties are concurrently permitted to settle those claims out from under the party authorized to prosecute them. 423 F.3d 166, 177 (2d Cir. 2005). The court explained that "allowing creditors and other parties to bring Rule 9019 motions over [the objection of the party authorized to prosecute claims on behalf of the estate] will encourage parties against whom the estate has a valid claim to delay and obstruct litigation, in the hopes that a creditor with a small interest in the estate will eventually propose a settlement disposing of the estate's valuable causes of action at a low price." *See id.*[6]

In sum, this is a case where even the Debtors concede that they are not an appropriate steward of the LBO Claims. The same conflicts that disable the Debtors from litigating the LBO Claims apply to any action by the Debtors to settle or extinguish the LBO Claims. As a result, the Court should confer standing on the Committee that includes authority to resolve the LBO Claims. Should the Court preserve the Debtors' ability to propose a settlement of the LBO Claims in a plan, the Court should consider the Committee's support necessary to approval of any such plan settlement.

## II.    The Other Limited Objections To The Standing Motions Should Be Rejected.

The filings in response to the Standing Motions contain a few other limited objections. The concerns about the Committee's readiness, willingness, and ability to vigorously pursue the viable LBO Claims are misplaced. The grant of standing to the Committee should not be deferred or restricted in any fashion.

---

[6]    Given the circumstances here – where the Committee seeks to limit the Debtors' power to settle claims that even the Debtor agrees the Committee should have exclusive standing to pursue – the reliance of the Debtors and CAL on *Smart World* is misplaced. Debtors' Response at 4; CAL Response at 2 n.5. In *Smart World*, the creditors sought to block the debtor-in-possession from pursuing the estate's legal claims. *See* 423 F.3d at 176-77. Thus, the *Smart World* court was faced with the converse situation from that present here.

**A.    The Committee Intends To Pursue All Colorable LBO Claims Against The Appropriate Parties And To Ensure That All Claims Are Preserved.**

Certain of the responses contend that the draft complaints are defective in various respects. However, the draft complaints are just that: drafts. The Committee continues to refine its pleadings, and should the Standing Motions be granted, intends to pursue all meritorious LBO Claims that, in its best judgment, will maximize recoveries for creditors. None of the contentions about the draft complaints warrant deferring resolution of the Standing Motions or restricting or withholding the scope of standing the Court confers upon the Committee.

First, Wilmington Trust and Wells Fargo contend that the draft complaints omit colorable claims. WT Limited Obj. at 2-3; Wells Fargo Limited Obj. at 3-4. The Committee continues to evaluate the legal and factual bases for potential causes of action, and will consult with these parties as appropriate to evaluate any claims they believe should be brought. The Committee will work with its professionals to ensure that the complaint it files upon receiving standing asserts all colorable claims that may yield the largest possible recovery for unsecured creditors. As to the preservation and prosecution of intercompany claims, which are not currently included in the draft complaints, the Committee expects that all relevant parties will agree imminently to toll the statute of limitations on those claims. As such, resolution of whether, how, and who litigates the intercompany claims can likely be deferred beyond the current December 8, 2010 deadline for bringing the LBO Claims.[7]

---

[7]   The Committee also agrees that any order granting the Committee standing should authorize the Committee to pursue all LBO Claims as that term is defined in the Supplement, and should not confine the Committee's standing only to those causes of action and parties contained in the draft complaints. *See* Aurelius Limited Obj. at 5-6.

Second, Wilmington Trust and Wells Fargo note that the Committee's draft complaints fail to request a jury trial. WT Limited Obj. at 3; Wells Fargo Obj. at 3 n.2. Should the Court confer standing on the Committee, the Committee will prosecute the Complaints in a manner designed to maximize chances for success, which will require the Committee to make any number of strategic decisions, including, without limitation, whether to request a jury trial with respect to claims so triable. While the Committee understands and appreciates the points made by Wilmington Trust and Wells Fargo in this regard, these decisions will be made by the Committee in due course, and need not be a condition to the grant of standing to prosecute the actions.[8]

## B.     The Court Should Reject Any Request To Appoint A Separate Fiduciary To Pursue the LBO Claims.

Certain parties seek to preserve their ability to seek an independent fiduciary other than the Committee to pursue the LBO Claims or any intercompany claims that exist. *See* Wells Fargo Limited Obj. at 3, 13; Aurelius Limited Obj. at 5. The Court should reject such a request out of hand. The Committee respectfully refers the Court to its October 15 Objection to Aurelius's Motion for Appointment of a Chapter 11 Trustee [D.I. 5976], as well as objections submitted by other parties, for a more complete explanation of why appointment of a trustee or other independent fiduciary is unnecessary, untimely, and unjustified in law and in fact. In light

---

[8] Additionally, the Committee understands that Merrill Lynch may file a response contending that certain claims in the draft complaint against Merrill Lynch as agent on the Bridge Facility, must be brought instead against the current Bridge Agent, Wells Fargo, or against the individual Bridge Facility lenders of record. Should the claims seeking avoidance of obligations incurred under the Bridge Facility need to be brought against Wells Fargo, the successor to Merrill Lynch as Bridge Agent, the Committee will so amend the complaint. Moreover, the Committee has sought discovery to identify the Bridge Facility lenders of record so that it can pursue avoidance and preference claims against such lenders as to all principal, interest, and fee payments made by Tribune in connection with the Bridge Facility.

of the steps the Committee has taken – including certain steps pursuant to agreement with Aurelius – to reaffirm and ensure its independence and ability to litigate the LBO Claims without conflict, the Committee respectfully submits that appointment of a trustee or other body to pursue the LBO Claims is unnecessary. Wilmington Trust's suggestion to the contrary (WT Limited Obj. at 3) is without foundation. At this point in the case – where conflicts-free Committee counsel has been investigating the LBO Claims for over a year, where the Court already appointed an Examiner and received his extensive report assessing the LBO Claims, and where the mediation has resulted in a settlement that appears to have widespread support – it would be a colossal waste of time and the Debtors estates' money to appoint yet another party or body to start investigating the LBO Transaction anew.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, for the reasons presented herein and in the Committee's prior memoranda on the Standing Motions, the Committee respectfully requests that the Court grant the Standing Motions.

Dated:  October 19, 2010
          Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_(signature)_

Adam G. Landis (No. 3407)
Daniel B. Rath (No. 3022)
Rebecca L. Butcher (No. 3816)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

- and -

Graeme W. Bush
James Sottile
Andrew N. Goldfarb
Thomas G. Macauley
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC  20036
Telephone:  (202) 778-1800
Facsimile:  (202) 822-8106

_Counsel to the Official Committee of Unsecured Creditors_