# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| TRIBUNE COMPANY, *et al.*,[1] | ) Case No. 08-13141 (KJC) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

**SPECIFIC DISCLOSURE STATEMENT FOR THE JOINT PLAN OF
REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES
PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS
MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS
CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS
CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF
SENIOR NOTES AND WILMINGTON TRUST COMPANY, IN ITS CAPACITY AS
<u>SUCCESSOR INDENTURE TRUSTEE FOR THE PHONES NOTES</u>**

ASHBY & GEDDES, P.A.
William P. Bowden (I.D. No. 2553)
Amanda M. Winfree (I.D. No. 4615)
500 Delaware Avenue, P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
*Counsel for Aurelius Capital Management, LP*

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden
Philip C. Dublin
One Bryant Park
New York, New York 10036
(212) 872-1000

McCARTER & ENGLISH, LLP
David J. Adler
245 Park Avenue
New York, NY 10167
212-609-6800

McCARTER & ENGLISH, LLP
Katharine L. Mayer (I.D. No. 3758)
Renaissance Centre, 405 N. King Street
Wilmington, DE 19801
302-984-6300

*Counsel for Deutsche Bank Trust Company Americas, solely in its capacity as successor Indenture Trustee for
certain series of Senior Notes*

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
David S. Rosner
Richard F. Casher
1633 Broadway
New York, New York 10019
(212) 506-1700

BIFFERATO GENTILOTTI LLC
Garvan F. McDaniel (I.D. No. 4167)
800 N. King Street, Plaza Level
Wilmington, Delaware 19801
(302) 429-1900

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as successor Indenture Trustee for
certain series of Senior Notes*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are listed on the following page.

BROWN RUDNICK LLP  SULLIVAN HAZELTINE ALLINSON LLC
Robert J. Stark  William D. Sullivan (I.D. No. 2820)
Martin S. Siegel  Elihu E. Allinson, III (I.D. No. 3476)
Gordon Z. Novod  4 East 8th Street, Suite 400
Seven Times Square  Wilmington, DE 19801
New York, NY 10036  302-428-8191
212-209-4800

*Counsel for Wilmington Trust Company, solely in its capacity as Successor Indenture Trustee for the PHONES Notes*

DATED:  October 29, 2010

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PRE-LBO DEBTHOLDER PLAN.  THIS PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.  SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PRE-LBO DEBTHOLDER PLAN MAY OCCUR ONLY AFTER THE BANKRUPTCY COURT APPROVES THIS PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT.**

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tribune Company (0355); 435 Production Company (8865); 5800 Sunset Productions Inc. (5510); Baltimore Newspaper Networks, Inc. (8258); California Community News Corporation (5306); Candle Holdings Corporation (5626); Channel 20, Inc. (7399); Channel 39, Inc. (5256); Channel 40, Inc. (3844); Chicago Avenue Construction Company (8634); Chicago River Production Company (5434); Chicago Tribune Company (3437); Chicago Tribune Newspapers, Inc. (0439); Chicago Tribune Press Service, Inc. (3167); ChicagoLand Microwave Licensee, Inc. (1579); Chicagoland Publishing Company (3237); Chicagoland Television News, Inc. (1352); Courant Specialty Products, Inc. (9221); Direct Mail Associates, Inc. (6121); Distribution Systems of America, Inc. (3811); Eagle New Media Investments, LLC (6661); Eagle Publishing Investments, LLC (6327); forsalebyowner.com corp. (0219); ForSaleByOwner.com Referral Services LLC (9205); Fortify Holdings Corporation (5628); Forum Publishing Group, Inc. (2940); Gold Coast Publications, Inc. (5505); GreenCo, Inc. (7416); Heart & Crown Advertising, Inc. (9808); Homeowners Realty, Inc. (1507); Homestead Publishing Co. (4903); Hoy, LLC (8033); Hoy Publications, LLC (2352); InsertCo, Inc. (2663); Internet Foreclosure Service, Inc. (6550); JuliusAir Company LLC (9479); JuliusAir Company II, LLC; KIAH Inc. (4014); KPLR, Inc. (7943); KSWB Inc. (7035); KTLA Inc. (3404); KWGN Inc. (5347); Los Angeles Times Communications LLC (1324); Los Angeles Times International, Ltd. (6079); Los Angeles Times Newspapers, Inc. (0416); Magic T Music Publishing Company (6522); NBBF, LLC (0893); Neocomm, Inc. (7208); New Mass. Media, Inc. (9553); Newscom Services, Inc. (4817); Newspaper Readers Agency, Inc. (7335); North Michigan Production Company (5466); North Orange Avenue Properties, Inc. (4056); Oak Brook Productions, Inc. (2598); Orlando Sentinel Communications Company (3775); Patuxent Publishing Company (4223); Publishers Forest Products Co. of Washington (4750); Sentinel Communications News Ventures, Inc. (2027); Shepard's Inc. (7931); Signs of Distinction, Inc. (3603); Southern Connecticut Newspapers, Inc. (1455); Star Community Publishing Group, LLC (5612); Stemweb, Inc. (4276); Sun-Sentinel Company (2684); The Baltimore Sun Company (6880); The Daily Press, Inc. (9368); The Hartford Courant Company (3490); The Morning Call, Inc. (7560); The Other Company LLC (5337); Times Mirror Land and Timber Company (7088); Times Mirror Payroll Processing Company, Inc. (4227); Times Mirror Services Company, Inc. (1326); TMLH 2, Inc. (0720); TMLS I, Inc. (0719); TMS Entertainment Guides, Inc. (6325); Tower Distribution Company (9066); Towering T Music Publishing Company (2470); Tribune Broadcast Holdings, Inc. (4438); Tribune Broadcasting Company (2569); Tribune Broadcasting Holdco, LLC (2534); Tribune Broadcasting News Network, Inc., n/k/a Tribune Washington Bureau Inc. (1088); Tribune California Properties, Inc. (1629); Tribune CNLBC, LLC f/k/a Chicago National League Ball Club, LLC (0347); Tribune Direct Marketing, Inc. (1479); Tribune Entertainment Company (6232); Tribune Entertainment Production Company (5393); Tribune Finance, LLC (2537); Tribune Finance Service Center, Inc. (7844); Tribune License, Inc. (1035); Tribune Los Angeles, Inc. (4522); Tribune Manhattan Newspaper Holdings, Inc. (7279); Tribune Media Net, Inc. (7847); Tribune Media Services, Inc. (1080); Tribune Network Holdings Company (9936); Tribune New York Newspaper Holdings, LLC (7278); Tribune NM, Inc. (9939); Tribune Publishing Company (9720); Tribune Television Company (1634); Tribune Television Holdings, Inc. (1630); Tribune Television New Orleans, Inc. (4055); Tribune Television Northwest, Inc. (2975); ValuMail, Inc. (9512); Virginia Community Shoppers, LLC (4025); Virginia Gazette Companies, LLC (9587); WA TL, LLC (7384); WCWN LLC (5982); WDCW Broadcasting, Inc. (8300); WGN Continental Broadcasting Company (9530); WL VI Inc. (8074); WPIX, Inc. (0191); and WTXX Inc. (1268).  The Debtors' corporate headquarters and the mailing address for each Debtor is 435 North Michigan Avenue, Chicago, Illinois 60611.

2

**Table of Contents**

**Page**

**I. SUMMARY OF THE PRE-LBO DEBTHOLDER PLAN**................................................**5**

    **A.**    **Introduction**..........................................................................**5**

    **B.**    **Special Considerations**.........................................................**16**
            1.    Senior Loan Claim Sharing Resolution ...........................16
            2.    PHONES Notes Claim Resolution....................................17
            3.    Put Options and Claims Purchase .....................................17
            4.    Intercompany Claims........................................................20
            5.    LBO-Related Causes of Action ........................................21

    **C.**    **The Pre-LBO Debtholder Plan is Fair, Reasonable and In the**
            **Best Interests of the Debtors' Estates and All Creditors**......................**22**

**II. TREATMENT UNDER THE PRE-LBO DEBTHOLDER PLAN** ........................**23**

**III. ESTIMATED RECOVERIES UNDER THE PRE-LBO DEBTHOLDER**
     **PLAN**........................................................................................**27**

**IV. ESTIMATED LIQUIDATION RECOVERIES    UNDER THE PRE-**
     **LBO DEBTHOLDER PLAN** ...........................................................**40**

**V. CLASSES ENTITLED TO VOTE ON THE PRE-LBO DEBTHOLDER**
     **PLAN**........................................................................................**50**

**VI. CERTAIN FACTORS AFFECTING THE PRE-LBO DEBTHOLDER**
     **PLAN**........................................................................................**51**

    **A.**    **Certain Risk Factors Specific to the Pre-LBO Debtholder Plan**........**51**
            1.    Length of Litigation ........................................................51
            2.    Impact of Timing on Value of New Common Stock/New
                  Warrants ........................................................................51
             3.    Outcome of Litigation Trust Causes of Action and State
                  Law Avoidance Claims....................................................51
             4.    Determination of Senior Loan Claim Sharing Resolution.............51
            5.    Determination of PHONES Notes Claims Resolution...................52
             6.    Assumptions Regarding DEV and Allocation of DEV.................52
             7.    Claims Purchase Price Caps.............................................53
             8.    FCC Related Considerations and Risks Respecting the
                  Debtors' Businesses ........................................................53

i

| | | | |
|---|---|---|---|
| **B.** | | **Additional Factors to Be Considered** | ........................................................**57** |
| | 1. | The Proponents Have No Duty to Update | ......................................57 |
| | 2. | No Representations Outside the Joint Disclosure Statement | .........58 |
| | 3. | Proponents Can Withdraw the Pre-LBO Debtholder Plan | ...........58 |
| | 4. | No Legal or Tax Advice Is Provided to You by the Pre-LBO Debtholder Specific Disclosure Statement | ...........................58 |
| | 5. | No Admission Made | ..................................................................58 |
| | 6. | A Liquid Trading Market for the Trust Interests is Unlikely to Develop | ..............................................................................58 |
| **C.** | | **Certain Tax Matters** | ..................................................................**58** |

**VII. CONFIRMATION OF THE PRE-LBO DEBTHOLDER PLAN** .......................**59**

| | | | |
|---|---|---|---|
| **A.** | | **Requirements for Confirmation of the Pre-LBO Debtholder Plan** | ...............................................................................**59** |
| | 1. | Requirements of Section 1129(a) of the Bankruptcy Code | ...........59 |
| | 2. | Requirements of Section 1129(b) of the Bankruptcy Code | ...........62 |

**VIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PRE-LBO DEBTHOLDER PLAN** .......................................**64**

| | | |
|---|---|---|
| **A.** | **Liquidation Under Chapter 7** | ........................................................**64** |
| **B.** | **Alternative Plan of Reorganization** | ..............................................**64** |

**IX. CERTAIN FEDERAL, STATE AND FOREIGN SECURITIES LAW CONSIDERATIONS** ............................................................................**65**

| | | |
|---|---|---|
| **A.** | **Federal and State Securities Law Considerations.** | .............................**65** |
| **B.** | **Subsequent Transfers of New Securities** | ..............................................**65** |

**X. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PRE-LBO DEBTHOLDER PLAN** ............................................................................**66**

| | | | |
|---|---|---|---|
| **A.** | | **Federal Income Tax Consequences to the Debtors** | ...............................**68** |
| | 1. | Termination of Subchapter S Corporation Status | ........................68 |
| | 2. | Cancellation of Debt and Reduction of Tax Attributes | ................68 |
| **B.** | | **Federal Income Tax Consequences to Holders of Claims and Interests** | ...............................................................................**69** |
| | 1. | Consequences of Exchanges | ......................................................70 |
| **C.** | | **Consequences of Holding Exchanged Consideration** | ...........................**79** |

1.   Federal Income Tax Treatment of the New Senior Secured
     Term Loan.................................................................................79
2.   Ownership and Disposition of New Common Stock....................80
3.   Tax Treatment of the Distribution Trust and Holders of
     Distribution Trust Interests ............................................................80
4.   Tax Treatment of the Creditors' Trust and Holders of
     Creditors' Trust Interests ...............................................................82
5.   Basis Allocation.........................................................................84
6.   Limitations on Capital Losses.....................................................84

D.   **Additional Considerations.................................................................85**
1.   Accrued but Unpaid Interest .......................................................85
2.   Market Discount.........................................................................85

E.   **Non-U.S. Holders .............................................................................86**
1.   General Consequences to Non-U.S. Holders ...............................86

F.   **Information Reporting and Backup Withholding ...............................87**
1.   Recent Legislation ......................................................................88

G.   **Federal Income Tax Treatment of Disputed Claims Reserves ............88**

H.   **Importance of Obtaining Professional Tax Assistance........................89**

XI. CONCLUSION .........................................................................................90

THE INFORMATION CONTAINED IN THIS SPECIFIC DISCLOSURE STATEMENT FOR THE JOINT PLAN OF REORGANIZATION (THE "PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT") FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES PROPOSED BY AURELIUS CAPITAL MANAGEMENT, LP, ON BEHALF OF ITS MANAGED ENTITIES, DEUTSCHE BANK TRUST COMPANY AMERICAS, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, LAW DEBENTURE TRUST COMPANY OF NEW YORK, IN ITS CAPACITY AS SUCCESSOR INDENTURE TRUSTEE FOR CERTAIN SERIES OF SENIOR NOTES, AND WILMINGTON TRUST COMPANY, IN ITS CAPACITY AS THE PHONES NOTES INDENTURE TRUSTEE, ARE INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE JOINT PLAN OF REORGANIZATION FOR TRIBUNE COMPANY AND ITS SUBSIDIARIES, AS MAY BE MODIFIED AMENDED, AND/OR SUPPLEMENTED FROM TIME TO TIME (THE "PRE-LBO DEBTHOLDER PLAN") AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PRE-LBO DEBTHOLDER PLAN. NO SOLICITATION OF VOTES TO ACCEPT THE PRE-LBO DEBTHOLDER PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE").

ALL CREDITORS ENTITLED TO VOTE ON THE PRE-LBO DEBTHOLDER PLAN ARE ADVISED AND ENCOURAGED TO READ THE GENERAL DISCLOSURE STATEMENT, THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT AND THE PRE-LBO DEBTHOLDER PLAN *IN THEIR ENTIRETY* BEFORE VOTING TO ACCEPT OR REJECT THE PRE-LBO DEBTHOLDER PLAN OR ANY OTHER PLAN FILED IN THESE CASES (COLLECTIVELY, THE "COMPETING PLANS"). ALL CREDITORS ENTITLED TO VOTE ON THE PRE-LBO DEBTHOLDER PLAN SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN SECTION XII OF THE GENERAL DISCLOSURE STATEMENT AND SECTION VI OF THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PRE-LBO DEBTHOLDER PLAN OR ANY COMPETING PLAN. A COPY OF THE PRE-LBO DEBTHOLDER PLAN IS ANNEXED HERETO AS EXHIBIT A. SUMMARIES AND STATEMENTS MADE IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PRE-LBO DEBTHOLDER PLAN AND THE EXHIBITS ANNEXED TO THE PRE-LBO DEBTHOLDER PLAN AND THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTIONS SET FORTH IN THE GENERAL DISCLOSURE STATEMENT, THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT AND THE TERMS OF THE PRE-LBO

DEBTHOLDER PLAN, THE TERMS OF THE PRE-LBO DEBTHOLDER PLAN WILL GOVERN.

THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

CERTAIN STATEMENTS CONTAINED IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT, INCLUDING PROJECTED FINANCIAL INFORMATION, VALUATION, THE ALLOCATION OF VALUE AMONG THE DEBTORS AND THEIR NON-DEBTOR AFFILIATES, ILLUSTRATIVE CREDITOR RECOVERIES AND OTHER FORWARD-LOOKING STATEMENTS, ARE BASED, AT LEAST IN PART, ON ESTIMATES AND ASSUMPTIONS OBTAINED DIRECTLY FROM THE DEBTORS, AS SET FORTH IN THE GENERAL DISCLOSURE STATEMENT. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES. MOREOVER, THE PROPONENTS RESERVE ALL OF THEIR RESPECTIVE RIGHTS TO ASSERT AT CONFIRMATION THAT THE VALUATION AND ALLOCATION OF VALUE MAY BE DIFFERENT THAN AS SET FORTH IN THE GENERAL DISCLOSURE STATEMENT. FORWARD-LOOKING STATEMENTS ARE PROVIDED IN OR ADOPTED BY THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN AND IN THE GENERAL DISCLOSURE STATEMENT.

FURTHER, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS HEREIN ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE, BUT ARE SUBJECT TO A WIDE RANGE OF RISKS INCLUDING, BUT NOT LIMITED TO, RISKS ASSOCIATED WITH (I) FUTURE FINANCIAL RESULTS AND LIQUIDITY, INCLUDING THE ABILITY TO FINANCE OPERATIONS IN THE NORMAL COURSE, (II) VARIOUS FACTORS THAT MAY AFFECT THE VALUE OF THE NEW COMMON STOCK TO BE ISSUED UNDER THE PRE-LBO DEBTHOLDER PLAN, (III) THE RELATIONSHIPS WITH AND PAYMENT TERMS PROVIDED BY TRADE CREDITORS, (IV) ADDITIONAL FINANCING REQUIREMENTS POST-RESTRUCTURING, (V) FUTURE DISPOSITIONS AND ACQUISITIONS, (VI) THE EFFECT OF COMPETITIVE PRODUCTS, SERVICES OR PRICING BY COMPETITORS, (VII) CHANGES TO THE COSTS OF COMMODITIES AND RAW MATERIALS, (VIII) THE PROPOSED RESTRUCTURING AND COSTS ASSOCIATED THEREWITH, (IX) THE ABILITY TO OBTAIN RELIEF FROM THE BANKRUPTCY COURT TO FACILITATE THE SMOOTH OPERATION UNDER CHAPTER 11, (X) THE CONFIRMATION AND CONSUMMATION OF THE PRE-LBO DEBTHOLDER PLAN AND (XI) EACH OF THE OTHER RISKS IDENTIFIED IN THE GENERAL

DISCLOSURE STATEMENT AND THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT. DUE TO THESE UNCERTAINTIES, READERS CANNOT BE ASSURED THAT ANY FORWARD-LOOKING STATEMENTS WILL PROVE TO BE CORRECT. THE PROPONENTS ARE UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIM ANY OBLIGATION TO) UPDATE OR ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTORS, THE PROPONENTS OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PRE-LBO DEBTHOLDER PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS IN THESE CHAPTER 11 CASES.

THE STATEMENTS CONTAINED IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN AND THE DELIVERY OF THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. CREDITORS ENTITLED TO VOTE ON THE PRE-LBO DEBTHOLDER PLAN SHOULD CAREFULLY READ THE GENERAL DISCLOSURE STATEMENT AND THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT IN THEIR ENTIRETY, INCLUDING THE PRE-LBO DEBTHOLDER PLAN, PRIOR TO VOTING ON THE PRE-LBO DEBTHOLDER PLAN OR ANY OF THE COMPETING PLANS.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

**THE PROPONENTS BELIEVE THAT THE PRE-LBO DEBTHOLDER PLAN IS FAIR AND EQUITABLE, WILL PRESERVE ALL CREDITORS' APPLICABLE RIGHTS WITH RESPECT TO CAUSES OF ACTION ARISING OUT OF THE 2007 LEVERAGED BUYOUT OF THE TRIBUNE ENTITIES, WILL MAXIMIZE THE RECOVERY FOR THE DEBTORS' CREDITORS AND ALL PARTIES IN INTEREST, ENABLE THE DEBTORS TO REORGANIZE**

SUCCESSFULLY, AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND, THAT ACCEPTANCE OF THE PRE-LBO DEBTHOLDER PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR CREDITORS.

THE PROPONENTS URGE CREDITORS TO VOTE TO ACCEPT THE PRE-LBO DEBTHOLDER PLAN. THE PROPONENTS BELIEVE THAT THE PRE-LBO DEBTHOLDER PLAN PROVIDES THE HIGHEST AND BEST RECOVERY FOR THE DEBTORS' CREDITORS AND PRESERVES CREDITORS' RIGHTS TO DUE PROCESS.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THE PRE-LBO DEBTHOLDER SPECIFIC DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

# I.

## SUMMARY OF THE PRE-LBO DEBTHOLDER PLAN[2]

### A.  Introduction[3]

The following summary is a general overview only, which is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information, and financial statements and notes thereto appearing elsewhere in the Pre-LBO Debtholder Specific Disclosure Statement, the General Disclosure Statement and the Pre-LBO Debtholder Plan.  Aurelius Capital Management, LP, on behalf of its managed entities ("Aurelius"), Deutsche Bank Trust Company Americas, in its capacity as successor Indenture Trustee for certain series of Senior Notes ("Deutsche Bank"), Law Debenture Trust Company of New York, in its capacity as successor indenture trustee for certain series of Senior Notes ("Law Debenture"), and Wilmington Trust Company, in its capacity as the PHONES Notes Indenture Trustee ("Wilmington Trust"), are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code (the "Proponents").  The Proponents reserve the right to modify the Pre-LBO Debtholder Plan consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

The Pre-LBO Debtholder Plan described herein constitutes a separate plan of reorganization for each of the 111 Debtors and, to the extent they commence chapter 11 cases prior to the date the Pre-LBO Debtholder Plan is confirmed by the Bankruptcy Court, a prepackaged plan of reorganization for the each of the Subsidiary Non-Debtors.

### 1.  Overview

In accordance with the findings set forth in the Examiner's Report, including, among others, that some if not all of the claims arising out of the leveraged buyout of the Tribune Entities in 2007[4] may be found to be fraudulent transfers subject to avoidance under applicable provisions of the Bankruptcy Code and/or other applicable law, the Pre-LBO Debtholder Plan provides that all litigation related to the leveraged buyout will be preserved and, following the Effective Date, will be prosecuted by a multi-trust structure comprised of the Litigation Trust and the Creditors' Trust, while still providing a substantial distribution of the Debtors' total distributable enterprise value ("DEV") upon the Debtors' emergence from chapter 11.[5]  The causes of action to be prosecuted by the Trusts include litigation regarding, among other things, (i) the avoidability of the indebtedness incurred by the Debtors in connection with the 2007 leveraged buyout, (ii) whether recipients of pre-Effective Date payments in respect of the debt incurred pursuant to the leveraged buyout will be required to disgorge such payments,

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to such terms in the Pre-LBO Debtholder Plan.

[3] The description of the Pre-LBO Debtholder Plan contained in the Pre-LBO Debtholder Specific Disclosure Statement is qualified in its entirety by the Pre-LBO Debtholder Plan and the operative provisions thereof.  To the extent there is any inconsistency between the description of the Pre-LBO Debtholder Plan in the Pre-LBO Debtholder Specific Disclosure Statement and Pre-LBO Debtholder Plan, the Pre-LBO Debtholder Plan and the operative provisions therein shall control.

[4] A description of the leveraged buyout can be found in section VII.A of the General Disclosure Statement.

[5] To the extent any Trust Causes of Action are commenced prior to the Effective Date, control over the prosecution of such causes of action will be transferred to the Litigation Trust or the Creditors' Trust, as applicable, on the Effective Date pursuant to the terms of the Pre-LBO Debtholder Plan.

(iii) whether the shareholders that had their stock redeemed in connection with the leveraged buyout will be required to disgorge such payments, (iv) claims against the Debtors' officers, directors and advisors, (v) claims against Sam Zell and his Affiliates, (vi) the applicability of the subordination provisions in the Bridge Loan Agreement (to the extent required), (vii) to the extent not determined prior to the Effective Date, the PHONES Notes Claims Resolution,[6] (viii) to the extent not determined prior to the Effective Date, the Senior Loan Claim Sharing Resolution and (ix) to the extent not determined prior to the Effective Date, the appropriate treatment for Intercompany Claims (the foregoing, together with any other causes of action that may be prosecuted by the Litigation Trust and the Creditors' Trust are referred to as the "Trust Causes of Action").

As a result of the trust components of the Pre-LBO Debtholder Plan, the Pre-LBO Debtholder Plan will be able to go effective expeditiously and with fewer conditions than the other plans of reorganization that have been proposed in the Debtors' Chapter 11 Cases. For example, confirmation and effectiveness of the Pre-LBO Debtholder Plan are not conditioned upon, among other things (i) the Bankruptcy Court reaching a particular conclusion on certain aspects of the causes of action arising from the leveraged buyout, (ii) the Bankruptcy Court approving a transparently self-serving settlement reached between the principal targets of the Examiner's Report and a Creditors' Committee rife with conflicts or (iii) the Bankruptcy Court granting sweeping and unjustified releases, exculpations and indemnification to parties that, through their fraudulent activities, materially and adversely harmed the Debtors' Estates and their Creditors, including innocent pre-leveraged buyout creditors.

Although ultimate recoveries for each Impaired Class of Claims will be based on the final resolution of the Trust Causes of Action, the Pre-LBO Debtholder Plan permits between 34.7% and 51.2%[7] of the Debtors' DEV to be distributed to Creditors upon the Debtors' emergence from chapter 11. Initial Distributions to each Class of Claims will generally represent a recovery

---

[6] Prior to the Petition Date, Holders of PHONES Notes were contractually entitled to exchange PHONES Notes for an amount of Cash equal to ninety five percent (95%) (or one hundred percent (100%) under certain circumstances) of the then-current market value of two shares of Time Warner Inc. stock. According to the General Disclosure Statement, the approximate carrying value of PHONES Notes on the Petition Date was $759 million, comprised of $703 million of PHONES Notes not submitted for exchange and a $56 million liability for PHONES Notes that were exchanged but not settled in Cash. Prior to PHONES Notes being submitted for exchange, there were approximately $1.197 billion in PHONES Notes outstanding. The Debtors, in the General Disclosure Statement, represent that they have been informed by the PHONES Notes Indenture Trustee that the PHONES Notes Indenture Trustee and certain Holders of the PHONES Notes have disputed that the aggregate outstanding amount of the PHONES Notes should be reduced by the amount of PHONES Notes submitted for exchange but not paid for in Cash. In fact, the Proof of Claim filed by the PHONES Notes Indenture Trustee, on behalf of the Holders of the PHONES Notes, includes the PHONES Notes tendered for exchange in the aggregate amount of the PHONES Notes Claims, noting that the exchanges with respect to such PHONES Notes were not consummated because the issuer failed to make the required exchange payments and thus, the Allowed amount of PHONES Notes Claims should be $1.197 billion. In connection with Confirmation, the Proponents are seeking a determination by the Bankruptcy Court regarding the classification of the PHONES Notes Exchange Claims for purposes of the Pre-LBO Debtholder Plan. The outcome of the PHONES Notes Claims Resolution will determine the amount of the PHONES Notes Claims and PHONES Notes Exchange Claims and the priority of the PHONES Notes Exchange Claims vis-à-vis the PHONES Notes Claims. It is possible that the PHONES Notes Claims Resolution will determine that the PHONES Notes Exchange Claims should be classified as PHONES Notes Claims due to the failure of the issuer to consummate the exchange. Alternately, the PHONES Notes Claims Resolution might determine that the PHONES Notes Exchange Claims should be classified as Subordinated Securities Claims and, therefore, subordinate to payment in full of the PHONES Notes Claims. The outcome of the PHONES Notes Claims Resolution will affect, among other things, both the amount of Initial Distributions allocable to the PHONES Notes (and, accordingly, the amount actually paid over to the Senior Noteholders on account of enforcement of the subordination provisions of the PHONES Notes Indenture) and the series of Trust Interests that will be distributed to the Holders of PHONES Notes Exchange Claims.

[7] This range is premised upon on a DEV of $6.750 billion; however, the allocation of such DEV among Tribune and its Subsidiaries and, accordingly, ultimate recoveries by Creditors of Tribune and its Subsidiaries will depend on a determination by the Bankruptcy Court of (i) the actual DEV; (ii) the allocation of the DEV among Tribune and its Subsidiaries; (iii) the Senior Loan Claim Sharing Resolution; and (iv) the PHONES Notes Claims Resolution. For the avoidance of doubt, the Proponents expressly reserve all rights to assert that a different DEV for the Tribune Entities and/or different allocation of DEV among Tribune and the Subsidiaries is correct at Confirmation.

assuming that the resolution of all Trust Causes of Action has the least favorable outcome vis-à-vis such Class.

## 2. Valuation

The Pre-LBO Debtholder Plan is not tied to a specific valuation upon its filing but rather distributions to Creditors will be premised, in part, on the DEV determined by the Bankruptcy Court in connection with Confirmation. The Debtors' financial advisor, Lazard, has, however, estimated the Debtors' DEV to be $6.75 billion, with such value allocated approximately $4.3 billion to the value of the New Common Stock, approximately $1.1 billion to the value of the New Senior Secured Term Loan and $1.4 billion to Cash that will be distributed to Creditors. *See* General Disclosure Statement, Exhibit F. The Proponents are not adopting Lazard's valuation for purposes of the Pre-LBO Debtholder Plan at this time based on the fact that, among other things: (i) the underlying projections for Lazard's valuation were not provided to the Proponents with sufficient lead time to be able to analyze properly the description of the analyses performed by Lazard and (ii) the projections were qualified in their entirety as not being "a complete description of the analyses performed by Lazard." However, for purposes of enabling Creditors to analyze, on an "apples to apples" basis, their projected recoveries under the Pre-LBO Debtholder Plan as compared to the plan of reorganization filed by the Debtors, the Creditors' Committee, Oaktree Capital Management, L.P., Angelo, Gordon & Co., L.P. and JPMorgan Chase Bank, N.A. on October 22, 2010 (the "Debtor/LBO Lender Plan"), the recoveries described in section III herein utilize the Debtors' $6.75 billion DEV and the allocation of the DEV among Tribune, on the one hand, and its Subsidiaries (on a consolidated basis), on the other, in a manner consistent with the Debtor/LBO Lender Plan. The Proponents expressly reserve their rights to assert that a different DEV for the Tribune Entities and/or different allocation of DEV among Tribune and the Subsidiaries is correct at Confirmation.

## 3. Trusts

Pursuant to the terms of the Pre-LBO Debtholder Plan, three distinct Trusts will be created on the Effective Date: (i) a Litigation Trust; (ii) a Distribution Trust; and (iii) a Creditors' Trust. The Trusts are structured such that the Litigation Trust is a sub-trust of the Distribution Trust, while the Creditors' Trust is an unrelated entity.

The Litigation Trust will be created in order to prosecute the Litigation Trust Causes of Action, which will be transferred from the Debtors' Estates to the Litigation Trust on the Effective Date of the Pre-LBO Debtholder Plan, along with all of the rights of the Debtors and the Creditors' Committee with respect to the Litigation Trust Causes of Action necessary to protect, conserve, and liquidate all Litigation Trust Causes of Action as quickly as reasonably practicable, including, without limitation, control over (including the right to waive) all attorney/client privileges, work product privileges, accountant/client privileges and any other evidentiary privileges relating to the Litigation Trust Causes of Action that, prior to the Effective Date, belonged to the Debtors pursuant to applicable federal and state law. The Litigation Trust Causes of Action include, but are not limited to the following: (i) all claims and causes of action belonging to the Debtors' Estates arising out of the 2007 leveraged buyout of the Tribune Entities including, without limitation, causes of action related to the avoidability of all debt incurred by the Debtors in connection with leveraged buyout and the disgorgement of all

amounts paid to lenders, advisors and agents in connection with the leveraged buyout; (ii) all claims and causes of action against the Debtors' officers, directors and advisors (including Valuation Research Corporation); (iii) Intercompany Claims Avoidance Actions; (iv) claims and causes of action against Sam Zell and his Affiliates; (v) the Morgan Stanley Claims, which arise from, among other things, the Debtors' retention of MSCS, a certain swap transaction and the disposition of certain notes, bonds and other indebtedness held by MSCS; and (vi) all claims and Estate causes of action under chapter 5 of the Bankruptcy Code that are not Abandoned Claims.

When Litigation Trust Causes of Action are resolved pursuant to either a settlement or litigation, any net recoveries obtained by the Litigation Trust in connection therewith will be transferred to the Distribution Trust for distribution to Holders of Distribution Trust Interests in accordance with the terms of the Distribution Trust Agreement and the Litigation Distribution Orders. The distribution of proceeds to Holders of Distribution Trust Interests from the Litigation Trust Causes of Action and other value held in the Distribution Trust will be determined by the Bankruptcy Court or such other court of competent jurisdiction based on the outcome of the Litigation Trust Causes of Action. Accordingly, the Distribution Trust's role will be, among other things, to (i) hold all DEV remaining on the Effective Date of the Pre-LBO Debtholder Plan after Initial Distributions have been made and until a resolution of the Litigation Trust Causes of Action is reached, (ii) receive the proceeds of the Litigation Trust Causes of Action and (iii) make distributions to Holders of Distribution Trust Interests in accordance with the terms of the Litigation Distribution Orders (which orders will provide for the allocation of distributions among the Holders of Distribution Trust Interests based on the resolution (by settlement or litigation) of the applicable Litigation Trust Causes of Action).

The Creditors' Trust will be created on the Effective Date and have dual functions – first, it will function as a litigation trust with respect to the State Law Avoidance Claims, which consist of claims and causes of action fundamentally different and distinct from those that will be prosecuted by the Litigation Trust. Second, and unlike the Litigation Trust, the Creditors' Trust will directly make distributions of the proceeds recovered in connection with the State Law Avoidance Claims to Holders of Creditors' Trust Interests. The Creditors' Trust Interests and the Creditors' Trust Distribution Orders will govern the relative rights and priorities of distributions made on account of the State Law Avoidance Claims. All Holders of Claims against Tribune will be deemed to have transferred, on the Effective Date, any right they may possess to bring the State Law Avoidance Claims to the Creditors' Trust in exchange for Creditors' Trust Interests unless such holder of Claims against Tribune has elected, on the applicable Pre-LBO Debtholder Ballot, not to make such contribution (the "Non-Contribution Election"). State Law Avoidance Claims include, but are not limited to: (i) claims; (ii) causes of action; (iii) avoidance powers or rights; and (iv) legal or equitable remedies against the shareholders in Tribune whose stock was redeemed in connection with the leveraged buyout.

Each Trust will be governed by a three member trust advisory board and managed by a trustee. The procedures for selecting the Distribution Trust Advisory Board and the Distribution Trustee will be filed with the Bankruptcy Court by the Proponents no later than November 23, 2010. Aurelius will appoint two members to the Creditors' Trust Advisory Board and the Litigation Trust Advisory Board while the PHONES Notes Indenture Trustee will appoint one member to the aforementioned advisory boards. The trustee for each of the Litigation Trust and Creditors' Trusts will be appointed by Aurelius after reasonable consultation with each of the

other Proponents. The identities of each of the advisory board members as well as each of the trustees will be disclosed in the Pre-LBO Debtholder Plan Supplement. To the extent the Senior Noteholders have actually received distributions from all sources of recovery under the Pre-LBO Debtholder Plan with a value aggregating the entire principal amount (plus pre-Petition Date interest) on the Senior Notes, the advisory boards of the Litigation Trust and the Creditors' Trust may be reconstituted as follows: (i) pursuant to the terms of the Litigation Trust Agreement, the holders of the Class 1I Distribution Trust Interests may elect, by majority vote, to replace any member of the Litigation Trust Advisory Board that was not appointed by the PHONES Notes Trustee; and (ii) pursuant to the Creditors' Trust Agreement, the holders of the Class 1I Creditors' Trust Interests may elect, by majority vote, to replace any member of the Creditors' Trust Board that was not appointed by the PHONES Notes Trustee.

The initial funding for the Distribution Trust will be obtained through a contribution from the Debtors of $40 million in Cash. The Distribution Trust will use a portion of such funding to provide the initial funding for the Litigation Trust. Any portion of the Distribution Trust Initial Funding that has not been utilized prior to the wind-up of the Distribution Trust will revert back to the Reorganized Debtors and will, under no circumstances, be distributed to the Holders of Distribution Trust Interests or become part of the Distribution Trust Reserves. The initial funding for the Creditors' Trust will be obtained through interest free loans from the Distribution Trust. Each of the Trusts will have the authority to use proceeds from its assets and obtain from other sources additional financing, if necessary, in each case as set forth in the applicable trust agreement.

4. Initial Distributions

Except for (i) Initial Distributions to Holders of Other Guarantor Debtor Claims who will receive Cash equal to 8% of their Allowed Other Guarantor Debtor Claim,[8] and (ii) Initial Distributions to Holders of Other Non-Guarantor Debtor Claims, who will be paid in full, in Cash, on their Allowed Claims (including Postpetition Interest), Initial Distributions to all Classes of Claims entitled to an Initial Distribution will be comprised of a "strip" of consideration consisting of a Pro Rata share of: (a) New Common Stock and/or New Warrants; (b) the New Senior Secured Term Loan; and (c) Cash; *provided, however,* that notwithstanding the default distribution of a strip of consideration, in accordance with the terms of the Other Parent Claims Put Option, Holders of Other Parent Claims may receive an increased Cash-only distribution under the Pre-LBO Debtholder Plan.

After Initial Distributions are made, the remaining DEV will be placed into the Distribution Trust and reserved for distribution to Creditors pending the determination of the Litigation Trust Causes of Action and, if not determined in connection with Confirmation, the Senior Loan Claim Sharing Resolution (discussed in section I.B(1)) and the PHONES Notes

---

[8] In the event that an Other Guarantor Debtor Claims Class as a whole votes to accept the Pre-LBO Debtholder Plan, each Holder of an Other Guarantor Debtor Claim in such Class that is Allowed as of the Voting Deadline can elect to put its Allowed Claim to the Claims Purchaser in exchange for Cash equal to 25% of its Allowed Claim, with the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, receiving all distributions on account thereof (i.e., Initial Distributions and Distribution Trust Interests). To the extent the aggregate consideration necessary to purchase Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Guarantor Debtor Purchase Price and the remaining portion of the applicable Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the applicable Other Guarantor Debtor Put Claims.

Claims Resolution (discussed in section I.B.(2)). In addition to providing for a substantial portion of the Debtors' DEV to be distributed to Creditors on the Effective Date, or as soon thereafter as practicable, the Pre-LBO Debtholder Plan also avoids any possibility that Initial Distributions will be subject to disgorgement based on the outcome of the Litigation Trust Causes of Action or, to the extent not determined prior to the Effective Date, the Senior Loan Claim Sharing Resolution, since Initial Distributions are generally based upon the minimum distribution each Class would be entitled to receive regardless of the outcome of the Trust Causes of Action and the allocation of the DEV among Tribune and the Subsidiaries as set forth in the Debtor/LBO Lender Plan.[9]

In order to calculate the Initial Distributions and potential future distributions, the Pre-LBO Debtholder Plan provides that the Bankruptcy Court will determine the total DEV for the Tribune Entities in connection with the Confirmation Hearing. The Bankruptcy Court will also determine, in connection with the Confirmation Hearing, the allocation of the DEV among Tribune and the Subsidiaries (on a consolidated basis), which may include allocations based on the value of Intercompany Claims. The DEV and the ultimate allocation of DEV determined by the Bankruptcy Court may differ from the total DEV and the allocation of value contained in the specific disclosure statement to the Debtor/LBO Lender Plan and, accordingly, Initial Distributions shall be based on such DEV and the allocation of such DEV among Tribune and the Subsidiary Debtors (on a consolidated basis) as is determined by the Bankruptcy Court in connection with Confirmation. However, for illustrative purposes only, the Pre-LBO Debtholder Specific Disclosure Statement references a DEV of $6.75 billion, with such DEV allocated (again, for illustrative purposes only) 8.4% (or $564 million) to Tribune and 91.6% (or $6.186 billion) to the Subsidiaries (on a consolidated basis) in order for Creditors to compare recoveries under the Pre-LBO Debtholder Plan and Debtor/LBO Lender Plan on an "apples to apples" basis.[10]

Under the Pre-LBO Debtholder Plan, the following Holders of Claims will receive Initial Distributions: (i) Step One Lenders; (ii) Senior Noteholders; (iii) Holders of Other Parent Claims; (iv) Holders of Other Guarantor Debtor Claims; and (v) Holders of Other Non-Guarantor Debtor Claims.[11] Additionally, Step Two Lenders may receive Initial Distributions, but only in the event that the Bankruptcy Court determines that the sharing provisions of the Senior Loan Agreement are enforceable regardless of whether Step Two Senior Loan Claims or Step Two Senior Loan Guaranty Claims are avoided. Certain Creditors, including Bridge Loan Lenders, PHONES Noteholders, EGI-TRB LLC Noteholders and Holders of Subordinated Securities Claims will not receive an Initial Distribution under the Pre-LBO Debtholder Plan.

For the purpose of calculating the Initial Distributions at Tribune, the Parent Consideration will, in the first instance, be divided Pro Rata among all Classes of Claims at

---

[9] Notwithstanding anything contained in the Pre-LBO Debtholder Plan, all current and former Holders of Senior Loan Claims and all Loan Agents and advisors that received payments in respect of such Claims or in connection with the incurrence of obligations of the Debtors prior to the Effective Date (whether on account of principal, interest, fees, expenses or otherwise) may be required to disgorge such amounts based on the final resolution of the Litigation Trust Causes of Action.

[10] The Proponents reserve their respective rights to assert that the DEV and the allocation of the DEV among Tribune and the Subsidiaries may be different than that set forth in the Debtor/LBO Lender Plan.

[11] For clarity, it is noted herein that Holders of Allowed Other Parent Claims and Allowed Other Guarantor Debtor Claims, in each case, as of the Voting Deadline, will be presented with an option to put their Allowed Claims and, thus, their consideration under the Plan, to the Claims Purchaser for a Cash payment of 15% and 25% (subject to the Claims Purchase Price Caps) of their Allowed Claims, respectively, subject to the conditions set forth in the Pre-LBO Debtholder Plan.

Tribune (other than Intercompany Claims). For the avoidance of doubt, all such Classes (*i.e.*, Step One Senior Loan Claims, Step Two Senior Loan Claims, Bridge Loan Claims, Senior Noteholder Claims, PHONES Notes Claims, EGI-TRB LLC Notes Claims, Other Parent Claims and Subordinated Securities Claims) will be treated *pari passu* for purposes of allocating the Initial Distributions, without regard to any subordination provisions in the applicable documents or under applicable law or any potential claims for, among other things, avoidance or subordination.

Based on the illustrative $6.75 billion DEV, with 8.4% being allocated to Tribune (again, for illustrative purposes only), the Senior Noteholders will receive an Initial Distribution equal to an approximate recovery of 4.3%[12] on the Senior Noteholder Claims (taking into account their Pro Rata benefit of the subordination provisions of the PHONES Notes Indenture and EGI-TRB LLC Notes and a reduction of value on account of Distributable Cash otherwise allocable to the Senior Noteholders that will be used to satisfy a portion of the Other Non-Guarantor Debtor Claims).

Each Holder of an Allowed Other Parent Claim that does not elect the Other Parent Claims Put Option, if consummated, will receive an Initial Distribution equal to an approximate recovery of 4.3% - 4.4% of its Allowed Other Parent Claim. In the event that the Allowed Other Parent Claims Class as a whole votes to accept the Pre-LBO Debtholder Plan, each Holder of an Other Parent Claim that is Allowed as of the Voting Deadline and that has made the Other Parent Claims Put Election will put such Allowed Claim to the Claims Purchaser in exchange for Cash equal to 15% of its Allowed Claim.[13]

Each Holder of an Allowed Other Guarantor Debtor Claim that does not elect the Other Guarantor Debtor Claims Put Option, if consummated, will receive an Initial Distribution equal to an approximate recovery of 8% of its Allowed Other Guarantor Debtor Claims. In the event that an Other Guarantor Debtor Claims Class as a whole votes to accept the Pre-LBO Debtholder Plan, each Holder of an Other Guarantor Debtor Claim in such Class that is Allowed as of the Voting Deadline and has made the Other Guarantor Debtor Claims Put Election will put such Allowed Claim to the Claims Purchaser in exchange for Cash equal to 25% of its Allowed Claim.[14]

Each Holder of an Allowed Other Non-Guarantor Debtor Claim will receive payment in full, in Cash (including Postpetition Interest) on account of its Allowed Claim.

---

[12] All estimated recoveries set forth herein are for illustrative purposes only and assume a $6.75 billion DEV allocated 8.4% to Tribune and 91.6% to Tribune's subsidiaries on a consolidated basis.

[13] If the Other Parent Claims Class votes in favor of the Pre-LBO Debtholder Plan, for each Holder of an Allowed Other Parent Claim that elects the Other Parent Claims Put Option and does not make the Non-Contribution Election, the Initial Distributions and Trust Interests that would otherwise go to such Holder will be distributed to the Claims Purchaser. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[14] If an Other Guarantor Debtor Claims Class votes in favor of the Pre-LBO Debtholder Plan, for each Holder of an Allowed Other Guarantor Debtor Claim that elects the Other Guarantor Debtor Claims Put Option, the Initial Distributions and Distribution Trust Interests that would otherwise go to such Holder will be distributed to the Claims Purchaser. To the extent the aggregate consideration necessary to purchase Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Guarantor Debtor Purchase Price and the remaining portion of the applicable Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the applicable Other Guarantor Debtor Put Claims.

After the Initial Distributions on account of Senior Noteholder Claims (including a Pro Rata share of the distributions that would be allocable in respect of the PHONES Notes Claims and EGI-TRB LLC Notes Claims, but for the subordination provisions contained in the applicable documents), Other Parent Claims, Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims are accounted for, and in order to ensure that DEV sufficient to satisfy all remaining Pre-LBO Debt Claims in full will be available for distribution in the event the LBO Debt is avoided, all remaining DEV will be deemed consolidated into one pool of DEV (the "Remaining Consideration Pool"). From the Remaining Consideration Pool, an amount of DEV sufficient to compensate all Pre-LBO Debt Claims (*i.e.*, all Senior Noteholder Claims, PHONES Notes Claims (including PHONES Notes Exchange Claims that are classified as PHONES Notes Claims), Other Parent Claims, Other Guarantor Debtor Claims and Subordinated Securities Claims arising from Pre-LBO Debt, if any, in full (including Postpetition Interest through December 8, 2012), after giving effect to the Initial Distributions discussed above, will be placed into the Distribution Trust Reserve (such amount referred to herein as the "Non-LBO Debt Reserve DEV"). After reservation of the Non-LBO Debt Reserve DEV, all remaining DEV in the Remaining Consideration Pool (the "LBO Debt Reserve DEV") will be allocated, on a Pro Rata basis, and without regard to the subordination provisions in the applicable documents or any potential claims for, among others, avoidance or subordination, among the Step One Lender Claims, the Step Two Lender Claims and the Bridge Loan Lender Claims.

Holders of Step One Lender Claims will receive an Initial Distribution equal to their Pro Rata share of the LBO Debt Reserve DEV (*i.e.*, their own worst-case recovery if all LBO-Related Causes of Action were successful), resulting in an approximate recovery of 34.2%-38.7% on the Step One Lender Claims. Additionally, in the event that the Senior Loan Claim Sharing Resolution enforces the sharing provisions of the Senior Loan Agreement, Holders of Step Two Lender Claims will also receive their Pro Rata share of the LBO Debt Reserve DEV resulting in an approximate recovery of 34.2%-38.7% on the Step Two Lender Claims. The Pro Rata share of the LBO Debt Reserve DEV in respect of the Bridge Loan Lender Claims and, if the sharing provisions of the Senior Loan Agreement are found not to apply (or the Court defers consideration of the Senior Loan Claim Sharing Resolution), the Step Two Lender Claims, will be transferred to the Distribution Trust Reserve, in each case for ultimate distribution in accordance with the Litigation Distribution Orders.

For the avoidance of doubt, Initial Distributions to LBO Lenders, to the extent applicable, will be on account of their Senior Loan Claims against both Tribune and the Guarantor Debtors, with the ultimate allocation of such distribution among Tribune and the Guarantor Debtors determined in connection with the Litigation Distribution Orders, and will not be subject to disgorgement.

5. <u>Distributions of Distribution Trust Interests and Creditors' Trust Interests</u>

In addition to the Initial Distributions set forth above, the Pre-LBO Debtholder Plan provides that most Creditors will also receive interests in the Distribution Trust and, in some circumstances, interests in the Creditors' Trust. Each type of Trust Interest provides the Holder thereof with separate and distinct rights, and future distributions (if any) to all Creditors will be based upon their Trust Interests. Whether a Class receives distributions on account of its Trust

Interests will depend, among other things, on the final resolution of the Trust Causes of Action, as well as the Senior Loan Claim Sharing Resolution.

The Distribution Trust Interests shall determine the distributions of the Distribution Trust Reserve, as well as the proceeds of the Litigation Trust Causes of Action, in accordance with the Litigation Distribution Orders, the Senior Loan Claim Sharing Resolution and the PHONES Notes Claim Resolution. All Classes of Impaired Claims, other than Intercompany Claims, shall be eligible to receive Distribution Trust Interests; *provided, however*, that, to the extent applicable, subject to the Claims Purchase Caps, Holders of Other Parent Claims and Other Guarantor Debtor Claims that elect the Other Parent Claims Put Option or Other Guarantor Debtor Claims Put Option, respectively (and if applicable), shall not be entitled to receive Distribution Trust Interests as such Distribution Trust Interests will, instead, be distributed to the Claims Purchaser.

Similarly, the Creditors' Trust Interests will determine the distributions of the proceeds of the State Law Avoidance Claims, in accordance with the Creditors' Trust Distribution Orders, the Senior Loan Claim Sharing Resolution and the PHONES Notes Claim Resolution. Holders of Step One Senior Loan Claims, Step Two Senior Loan Claims, Bridge Loan Claims, Senior Noteholder Claims, PHONES Notes Claims, EGI-TRB LLC Notes Claims, Other Parent Claims and Subordinated Securities Claims that do not make the Non-Contribution Election shall receive a Pro Rata share of Creditors' Trust Interests allocable to their Class, calculated according to the amount of Creditors in such Class that do not elect the Non-Contribution Election. Notwithstanding the foregoing, subject to the Other Parent Claims Purchase Price Cap, Holders of Other Parent Claims that elect the Other Parent Claims Put Option shall not be entitled to receive Creditors' Trust Interests if the Claims Purchase is consummated and such Creditors' Trust Interests will, instead, be distributed to the Claims Purchaser.

6. Corporate Governance of Reorganized Tribune

The board of directors of Reorganized Tribune shall have seven (7) members, one of which will be the chief executive officer of Reorganized Tribune (to the extent the position is not vacant). The procedures for selecting the remaining members of the board of directors of Reorganized Tribune shall be set forth in a filing with the Bankruptcy Court by the Proponents no later than November 23, 2010. All members of the initial board of directors of Reorganized Tribune will be in compliance with all applicable requirements of the Communications Act and the FCC's rules.

Three members of the initial board of directors of Reorganized Tribune (including the chief executive officer of Reorganized Tribune, to the extent the position is not vacant) shall serve for a one-year term, two members of the initial board of directors of Reorganized Tribune shall serve for a two-year term and two members of the initial board of directors of Reorganized Tribune shall serve for a three-year term, and in each case be subject to re-election based on a shareholder vote pursuant to the terms of the Certificate of Incorporation and applicable law; *provided, however*, that until the termination or dissolution of the Distribution Trust, the Distribution Trust, at the direction of the Distribution Trust Advisory Board, shall have the right to appoint two members to the board of directors of Reorganized Tribune.

7. Post-Effective Date Capital Structure

    a. *New Senior Secured Term Loan Agreement*

    Subject to the terms of section 5.6 of the Pre-LBO Debtor Plan, on the Effective Date: (i) Reorganized Tribune, as borrower; (ii) the other Reorganized Debtors and certain of the Subsidiary Non-Debtors (including, without limitation, the Guarantor Non-Debtors and any successors to the Reorganized Debtors after giving effect to the Restructuring Transactions), as guarantors; (iii) the administrative agent party thereto; (iv) the Distribution Trust; and (v) the Holders of Claims receiving a distribution of the New Senior Secured Term Loan under the Pre-LBO Debtholder Plan shall become parties to, and be bound by the terms of, the New Senior Secured Term Loan Agreement regardless of whether any party actually executes the New Senior Secured Term Loan Agreement. If issued, the New Senior Secured Term Loan shall (1) be guaranteed by the U.S. subsidiaries of Reorganized Tribune (including, without limitation, the Guarantor Non-Debtors and any successors to the Reorganized Debtors after giving effect to the Restructuring Transactions), (2) be secured by certain assets of Reorganized Tribune and the guarantors thereof subject to specified exceptions and customary intercreditor arrangements, (3) have interest payable in Cash quarterly, (4) have principal payable in Cash quarterly, with the unpaid balance payable on the final maturity date thereof, (5) mature on the fifth anniversary of the Effective Date, (6) include usual and customary affirmative and negative covenants for term loan facilities of this type, and (7) be repayable by Reorganized Tribune at any time prior to scheduled maturity without premium or penalty. The New Senior Secured Term Loan Agreement shall contain terms substantially as set forth in Exhibit 5.6 to be filed with the Debtor/LBO Lender Plan Supplement.

    b. *Description of Exit Facility*

    Section 5.10 of the Pre-LBO Debtholder Plan provides that on the Effective Date, without any requirement of further action by security holders or directors of the Debtors or Reorganized Debtors, the Debtors shall be authorized, but not directed, to enter into the Exit Facility Credit Agreement, if any, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of the liens securing the Exit Facility. The terms of the Exit Facility shall be consistent with those that will be disclosed in Exhibit 5.10 to the Debtor/LBO Lender Plan.

    c. *New Common Stock and New Warrants*

    On, or as promptly as reasonably practicable after, the Effective Date or a subsequent Distribution Date, as applicable, Reorganized Tribune shall issue shares of New Common Stock and New Warrants and all instruments, certificates and other documents required to be issued or distributed pursuant to the Pre-LBO Debtholder Plan.

    On the Effective Date, the Distribution Trust, for purposes of funding the Distribution Trust Reserve, will receive New Warrants and one share of New Class C Common Stock. Reorganized Tribune shall not issue any other shares of New Class C Common Stock at any time without the prior written consent of the Distribution Trust, such consent to be in the sole discretion of the Distribution Trust. The New Class C Common Stock shall not be subject to

optional redemption. On the date on which the Distribution Trust is dissolved or otherwise wound down, Reorganized Tribune shall redeem the outstanding share of New Class C Common Stock at a price of $1.00 per share. As the sole holder of New Class C Common Stock, the Distribution Trust, through the Distribution Trust Advisory Board, shall have the right to elect two members of the board of directors of Reorganized Tribune. New Class C Common Stock may not be transferred without the approval of the board of directors of Reorganized Tribune. Without the consent or approval of the Distribution Trust (such consent to be in the sole discretion of the Distribution Trust), Reorganized Tribune will not directly or indirectly, by way of merger, consolidation, operation of law or otherwise: (i) alter or change the rights, preferences or privileges of the New Class C Common Stock; (ii) take any action, including amending Reorganized Tribune's Certificate of Incorporation or bylaws that would adversely affect the rights, preferences or privileges of the New Class C Common Stock; (iii) increase or decrease the authorized number of shares of New Class C Common Stock; or (iv) increase or decrease the authorized size of Reorganized Tribune's board of directors.

Except as otherwise provided in the Pre-LBO Debtholder Plan, including as specifically provided in Section 5.4.2 thereof, each Holder of a Claim to receive a distribution of New Common Stock pursuant to the Pre-LBO Debtholder Plan will be issued New Class A Common Stock, provided that any such Holder will be entitled to receive all or a portion of its shares of New Common Stock in the form of New Class B Common Stock or New Warrants if such Holder informs the Debtors and the Proponents of its desire to receive such New Class B Common Stock or New Warrants by the date announced by the Proponents in a filing with the Bankruptcy Court, with such date to be no earlier than the first day of the Confirmation Hearing. New Class A Common Stock will have voting rights consistent with standard voting common stock. New Class B Common Stock will have more limited voting rights and is designed to be non-attributable under the FCC's rules. New Warrants can be exercised for the purchase of either Class A Common Stock or Class B Common Stock, at the option of the holder thereof.

Specifically, holders of New Class B Common Stock will be entitled to vote as a separate class on any amendment, repeal or modification of any provision of the Restated Certificate of Incorporation for Reorganized Tribune that adversely affects the rights of the New Class B Common Stock in a manner different from the rights of the New Class A Common Stock. In addition, the holders of New Class B Common Stock will be entitled to vote together with holders of the New Class A Common Stock on the following non-ordinary course transactions to the extent that these matters are submitted to a vote of the holders of New Class A Common Stock: (i) any authorization of, or increase in the number of authorized shares of, any class of capital stock ranking pari passu with or senior to the New Class A Common Stock or New Class B Common Stock; (ii) any amendment to the Restated Certificate of Incorporation of Reorganized Tribune or the Bylaws of Reorganized Tribune; (iii) any amendment to any stockholders or comparable agreement; (iv) any sale, lease or other disposition of all or substantially all of the assets of Reorganized Tribune through one or more transactions; (v) any recapitalization, reorganization, share exchange, consolidation or merger of Reorganized Tribune or its capital stock; (vi) any issuance or entry into an agreement for the issuance of capital stock (or any options or other securities convertible into capital stock) of Reorganized Tribune, including any stock option or stock incentive plan; (vii) any redemption, purchase or other acquisition by Reorganized Tribune of any of its capital stock (except for purchases from

employees upon termination of employment); and (viii) any liquidation, dissolution, distribution of assets or winding-up of Reorganized Tribune.

Each Holder of a Claim that is entitled to receive a distribution of New Common Stock and/or New Warrants pursuant to the Pre-LBO Debtholder Plan will be required to demonstrate that the issuance of New Common Stock to such Holder would not impair the ability of the Reorganized Debtors to comply with FCC-related ownership requirements and restrictions and would not impair the ability of the Reorganized Debtors to obtain the grant of the FCC Applications necessary to implement the Pre-LBO Debtholder Plan. Applicable FCC ownership requirements and restrictions, discussed in detail on pages 33-38 of the Debtor/LBO Lender Specific Disclosure Statement, include (i) FCC broadcast multiple ownership and cross-ownership restrictions and (ii) restrictions in Section 310(b) of the Communications Act on the direct or indirect ownership or control of licenses by non-U.S. persons.

## B.    Special Considerations

### 1.    Senior Loan Claim Sharing Resolution

The Pre-LBO Debtholder Plan provides that the Bankruptcy Court will determine the applicability of Sections 2.13 and 2.15 of the Senior Loan Agreement in the event that the Step Two Senior Loan Claims and/or Step Two Senior Loan Guaranty Claims are avoided. Sections 2.13 and 2.15 of the Senior Loan Agreement provide, among other things, that Senior Lenders must share ratably with all other Senior Lenders any payments received on account of Senior Loan Claims. This sharing is applicable to any Senior Loan Lender that receives payment on account of its Senior Loan Claims, and sharing applies across all Senior Lenders regardless of whether they are categorized as Step One Lenders or Step Two Lenders. The Senior Loan Agreement is silent, however, as to whether the sharing provisions are enforceable by Senior Loan Lenders whose Claims are avoided.

Pursuant to the Pre-LBO Debtholder Plan, the Proponents are requesting that the Bankruptcy Court determine, either in connection with Confirmation or thereafter, the enforceability of the sharing provisions in these Chapter 11 Cases. Specifically, the Proponents seek a determination regarding whether the sharing provisions would be enforceable (and thereby mandate sharing among all Senior Lenders) regardless of whether Step Two Lender Claims are avoided in connection with the LBO-Related Causes of Action (the "Senior Loan Claim Sharing Resolution"). The Senior Loan Claim Sharing Resolution will determine whether the Step Two Lenders receive an Initial Distribution and whether the series of Trust Interests allocated to the Step Two Lender Claims will provide for a ratable share of the Step One Lender recoveries in the event that Step Two is avoided, or whether the series of Trust Interests distributed to Step Two Lenders will receive distributions only in the event Step Two Senior Loan Claims are found not to be avoided or if all LBO Debt is avoided. If it is found that sharing will not apply in the event that Step Two Lender Claims are avoided, then Step Two Lenders (i) will not receive an Initial Distribution, and instead the Initial Distribution that would otherwise be allocable to the Step Two Lenders will be held in the Distribution Trust Reserves pending the resolution of the Litigation Trust Causes of Action, nor (ii) will they receive any distributions on account of their Trust Interests until the LBO-Related Causes of Action are resolved with respect to their Claims.

2. PHONES Notes Claim Resolution

As set forth in further detail in section III.A.2.e. of the General Disclosure Statement, prior to the Petition Date, Holders of PHONES Notes were contractually entitled to exchange PHONES Notes for an amount of Cash equal to ninety five percent (95%) (or one hundred percent (100%) under certain circumstances) of the then-current market value of two shares of Time Warner Inc. stock. According to the General Disclosure Statement, the approximate carrying value of PHONES Notes on the Petition Date was $759 million, comprised of $703 million of PHONES Notes not submitted for exchange and a $56 million liability for PHONES Notes that were exchanged but not settled in Cash (the "PHONES Notes Exchange Claims"). The Debtors, in the General Disclosure Statement, represent that they have been informed by the PHONES Notes Indenture Trustee that the PHONES Notes Indenture Trustee and certain Holders of the PHONES Notes have disputed that the aggregate outstanding amount of the PHONES Notes should be reduced by the amount of PHONES Notes submitted for exchange but not paid for in Cash. In fact, the Proof of Claim filed by the PHONES Notes Indenture Trustee, on behalf of the Holders of the PHONES Notes, includes the PHONES Notes tendered for exchange in the aggregate amount of the PHONES Notes Claims, noting that the exchanges with respect to such PHONES Notes were not consummated because the issuer failed to make the required exchange payments and thus, the Allowed amount of PHONES Notes Claims should be $1.197 billion.

In connection with Confirmation, the Proponents are seeking a determination by the Bankruptcy Court regarding the classification of the PHONES Notes Exchange Claims for purposes of the Pre-LBO Debtholder Plan (the "PHONES Notes Claim Resolution"). The outcome of the PHONES Notes Claims Resolution will determine the amount of the PHONES Notes Claims and PHONES Notes Exchange Claims and the priority of the PHONES Notes Exchange Claims vis-à-vis the PHONES Notes Claims. It is possible that the PHONES Notes Claims Resolution will determine that the PHONES Notes Exchange Claims should be classified as PHONES Notes Claims due to the failure of the issuer to consummate the exchange. Alternately, the PHONES Notes Claims Resolution might determine that the PHONES Notes Exchange Claims should be classified as Subordinated Securities Claims and, therefore, subordinate to payment in full of the PHONES Notes Claims. The outcome of the PHONES Notes Claims Resolution will affect, among other things, both the amount of Initial Distributions allocable to the PHONES Notes (and, accordingly, the amount actually paid over to the Senior Noteholders on account of enforcement of the subordination provisions of the PHONES Notes Indenture) and the series and amount of Trust Interests that will be distributed to the Holders of PHONES Notes Exchange Claims.

3. Put Options and Claims Purchase

a) *Other Parent Claims Put Option*

Pursuant to the terms of the Pre-LBO Debtholder Plan, if the Class of Other Parent Claims votes in favor of the Pre-LBO Debtholder Plan, Holders of Other Parent Claims that are Allowed as of the Voting Record Date will be given the opportunity to "put" (*i.e.*, sell) their Claims to the Claims Purchaser in exchange for Cash in an amount equal to 15% of their Allowed Other Parent Claims, subject to the Other Parent Claims Purchase Price Cap.

Accordingly, the Other Parent Claims Put Option will allow Holders of Allowed Other Parent Claims to essentially "cash out" of the Debtors' Chapter 11 Cases on the Initial Distribution Date by selling their Allowed Other Parent Claims in exchange for a lump sum Cash payment from the Claims Purchaser (up to the amount of the Other Parent Claims Purchase Price Cap) in an amount greater than the Initial Distribution than they would otherwise be entitled to receive under the Pre-LBO Debtholder Plan, instead of receiving a lesser recovery through their Initial Distribution and waiting for further distributions from the Distribution Trust and Creditors' Trust.

The Claims Purchase of the Other Parent Claims that make the Other Parent Claims Put Election will only occur if certain conditions are met. These conditions are as follows:

- The Other Parent Claims Put Option is only applicable to Holders of an Other Parent Claims that are Allowed as of the Voting Record Date.

- Such Holder of an Allowed Other Parent Claim must check the Other Parent Claim Put Election on its Pre-LBO Debtholder Ballot. Making this election indicates that the Other Parent Claim Holder (i) elects to sell, subject to the Other Parent Claims Purchase Price Cap, its Allowed Other Parent Claims to the Claims Purchaser in the event that all applicable preconditions to consummation of the Claims Purchase are met, rather than accept the treatment provided to Holders of Allowed Other Parent Claims under the Pre-LBO Debtholder Plan, and (ii) that such Holder of Other Parent Claims will, subject to the Other Parent Claims Purchase Price Cap, in exchange for payment in Cash for its Other Parent Claim, transfer such Claim and all attendant rights to Initial Distributions and distributions on account of Trust Interests to the Claims Purchaser.

- The Holder of the Allowed Other Parent Claim does not make the Non-Contribution Election on its Pre-LBO Debtholder Ballot and, instead, agrees to transfer, on the Effective Date, any State Law Avoidance Claims it may possess to the Creditors' Trust.

- The Other Parent Claims Class must, as a whole, vote to accept the Pre-LBO Debtholder Plan.

- The Pre-LBO Debtholder Plan must be confirmed by the Bankruptcy Court.

If all of the above conditions are satisfied, the Other Parent Claims Put Option will be consummated and Holders of Allowed Other Parent Claims who elect the Other Parent Claims Put Option will (a) be bound by the Other Parent Claims Put Election and will not be able to alter their Pre-LBO Debtholder Ballot to select different treatment, (b) not receive any Initial Distributions or Trust Interests on account of their Other Parent Claims and will, instead, transfer any rights to receive such Initial Distributions and Trust Interests to the Claims Purchaser and (c) have their involvement in the Debtors Chapter 11 Cases in their capacity as Other Parent Claim Holders terminated; *provided, however*, that if the Other Parent Claims Purchase Price Cap is exceeded, the Holders of Other Parent Put Claims shall (x) receive Initial Distributions and Trust Interests on account of that portion of their Other Parent Put Claim that is in excess of the Other

Parent Claims Purchase Price Cap (discussed in more detail below) and (y) shall not have their involvement in the Chapter 11 Cases terminated with respect to such portion of their Other Parent Put Claim.

The Claims Purchase of the Other Parent Put Claims will be subject to the Other Parent Claims Purchase Price Cap. The Other Parent Claims Purchase Price Cap caps the maximum aggregate amount of the Other Parent Claims Purchase Price paid for the Other Parent Put Claims at $24.25 million, unless otherwise increased in the sole discretion of the Claims Purchaser. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds $24.25 million, the Claims Purchaser will purchase a Pro Rata percent of all of such Other Parent Put Claims, rounded to the nearest whole dollar. The remaining portion of each Other Parent Put Claim that remains (*i.e.*, for which Cash payment is not made) shall receive a Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests allocable to that part of the Other Parent Put Claim.

b) *Other Guarantor Debtor Claims Put Option*

Pursuant to the terms of the Pre-LBO Debtholder Plan, if the applicable Class of Other Guarantor Debtor Claims in which a specific Other Guarantor Debtor Claim resides votes in favor of the Pre-LBO Debtholder Plan, Holders of Other Guarantor Debtor Claims in such Class that are Allowed as of the Voting Record Date will be given the opportunity to "put" (*i.e.*, sell) their Allowed Other Guarantor Debtor Claims to the Claims Purchaser in exchange for Cash in an amount equal to 25% of their Allowed Other Guarantor Debtor Claims, subject to the Other Guarantor Debtor Claims Purchase Cap. Accordingly, the Other Guarantor Debtor Claims Put Option will allow Holders of Allowed Guarantor Debtor Claims to essentially "cash out" of the Debtors' Chapter 11 Cases on the Initial Distribution Date by selling their Allowed Other Guarantor Debtor Claims in exchange for a lump sum Cash payment from the Claims Purchaser (up to the amount of the Other Guarantor Debtor Claims Purchase Cap) in an amount greater than the Initial Distribution than they would otherwise be entitled to receive under the Pre-LBO Debtholder Plan, instead of receiving a lesser recovery through their Initial Distribution and waiting for further distributions from the Distribution Trust.

The Claims Purchase of the Other Guarantor Debtor Claims that make the Other Guarantor Debtor Claims Put Election will only occur if certain conditions are met. These conditions are as follows:

- The Other Guarantor Debtor Claims Put Option is only applicable to Holders of an Other Guarantor Debtor Claims that are Allowed as of the Voting Record Date.

- Such Holder of an Allowed Other Guarantor Debtor Claim must check the Other Guarantor Debtor Claim Put Election on its Pre-LBO Debtholder Ballot. Making this election indicates that the Other Guarantor Debtor Claim Holder (i) elects to sell, subject to the Other Guarantor Debtor Claims Purchase Price Cap, its Allowed Other Guarantor Debtor Claims to the Claims Purchaser in the event that all applicable preconditions to consummation of the Claims Purchase are met, rather than accept the treatment provided to Holders of Allowed Other Guarantor Debtor Claims under the Pre-LBO Debtholder Plan, and (ii) that such

Holder of Other Guarantor Debtor Claims will, subject to the Other Guarantor Debtor Claims Purchase Price Cap, in exchange for payment in Cash for its Other Guarantor Debtor Claim, transfer such Claim and all attendant rights to Initial Distributions and distributions on account of Distribution Trust Interests to the Claims Purchaser.

- The applicable Class of Other Guarantor Debtor Claims in which such Holder's Claim resides must, as a whole, vote to accept the Pre-LBO Debtholder Plan.

- The Pre-LBO Debtholder Plan must be confirmed by the Bankruptcy Court.

If all of the above conditions are satisfied, the Other Guarantor Debtor Claims Put Option will be consummated and Holders of Allowed Other Guarantor Debtor Claims who elect the Other Guarantor Debtor Claims Put Option will (a) be bound by the Other Guarantor Debtor Claims Put Election and will not be able to alter their Pre-LBO Debtholder Ballot to select different treatment, (b) not receive any Initial Distributions on account of their Other Guarantor Debtor Claims and will, instead, transfer any rights to receive such Initial Distributions and Distribution Trust Interests to the Claims Purchaser and (c) have their involvement in the Debtors Chapter 11 Cases in their capacity as Other Guarantor Debtor Claim Holders terminated; *provided, however*, that if the Other Guarantor Debtor Claims Purchase Price Cap is exceeded, the Holders of Other Guarantor Debtor Put Claims shall (x) receive Initial Distributions and Distribution Trust Interests on account of that portion of their Other Guarantor Debtor Put Claim that is in excess of the Other Guarantor Debtor Claims Purchase Cap (discussed in more detail below) and (y) shall not have their involvement in the Chapter 11 Cases terminated with respect to the remaining portion of their Other Guarantor Debtor Put Claim.

The Claims Purchase of the Other Guarantor Debtor Claims will be subject to the Other Guarantor Debtor Put Claims Purchase Price Cap. The Other Guarantor Debtor Claims Purchase Price Cap caps the maximum aggregate amount of the Other Guarantor Debtor Purchase Price paid for the Other Guarantor Debtor Put Claims at $20.75 million, unless otherwise increased in the sole discretion of the Claims Purchaser. To the extent the aggregate consideration necessary to purchase the Other Guarantor Debtor Put Claims exceeds $20.75 million, the Claims Purchaser will purchase a Pro Rata percent of all of such Other Guarantor Debtor Put Claims, rounded to the nearest whole dollar. The remaining portion of each Other Guarantor Debtor Put Claim that remains (*i.e.*, for which Cash payment is not made) shall receive a Pro Rata portion of the Initial Distribution and Distribution Trust Interests allocable to that part of the Other Guarantor Debtor Put Claim.

4.  Intercompany Claims

The Debtors state in the General Disclosure Statement that Intercompany Claims are comprised of hundreds of thousands of individual transactions aggregating approximately $6.23 billion-$8.57 billion. While the Proponents have not performed an independent analysis regarding the amount, nature and allowability of the Intercompany Claims and do not take a position on the validity, allowability, avoidability or amount of any Intercompany Claims that may exist, according to an analysis prepared by the Debtors and relied upon by the Examiner, Intercompany Claims held by Guarantor Subsidiaries against Tribune are reported to aggregate

approximately $4.59 billion-$6.41 billion, while Intercompany Claims held by Tribune against the Guarantor Subsidiaries are reported to aggregate between $1.64 billion-$2.16 billion. That same analysis performed by the Debtors and relied upon by the Examiner estimates that approximately 40% – 56% of the Claims of Guarantor Subsidiaries against Tribune will likely be Allowed while 47% – 61% of Tribune Claims against the Guarantor Subsidiaries will likely be Allowed.

In addition to the forgoing risk of value shifting, certain Intercompany Claims arising out of transactions undertaken between 2006 and 2008 (including Claims arising out of the repayment of certain intercompany notes, aggregating approximately $3.98 billion[15], on June 4, 2007) may be subject to avoidance as preferential transfers or fraudulent conveyances under Bankruptcy Code sections 547 and 548, respectively, or subject to recharacterization as capital contributions or other equity infusions. The disposition of the Intercompany Claims Avoidance Actions would similarly affect allocation of value among Tribune and its subsidiaries.

Currently the time limitations under applicable law, including under the Bankruptcy Code, within which the Debtors and Non-Debtor Subsidiaries may commence the Intercompany Claims Avoidance Actions (the "Statutes of Limitation") may expire on or around December 8, 2010. As of the date hereof, the Debtors, with the support of certain parties in interest in the Chapter 11 Cases, have filed with the Bankruptcy Court a proposed tolling agreement (the "Tolling Agreement") seeking to toll the applicable Statutes of Limitation. By entering into the Tolling Agreement, the Debtors and the Non-Debtor Subsidiaries are seeking to preserve the Intercompany Claims Avoidance Actions and waive the applicable Statutes of Limitation. The Tolling Agreement seeks to extend the Statutes of Limitation until June 30, 2011 (unless certain other termination events occur). Upon Bankruptcy Court approval of the Tolling Agreement, the Statutes of Limitation with respect to the Intercompany Claims Avoidance Actions will be extended, allowing the Intercompany Claims Avoidance Actions to be investigated and prosecuted post-Confirmation. The Pre-LBO Debtholder Plan contemplates that all matters related to Intercompany Claims will be either litigated in connection with Confirmation or become Litigation Trust Causes of Action, the resolution of which will impact ultimate distributions to Creditors.

5.      LBO-Related Causes of Action

Aggregate recoveries for most Classes under the Pre-LBO Debtholder Plan depend heavily on the ultimate outcome of the LBO-Related Causes of Action and the State Law Avoidance Claims. While the Examiner's Report contains detailed analyses and projected outcomes regarding the LBO-Related Causes of Action to be pursued by the Litigation Trust and State Law Avoidance Claims to be pursued by the Creditors' Trust, it is not known with certainty how a court will rule on the issues, nor what the ultimate recoveries will be. Furthermore, it is unknown how long it will take to settle or reach and recover on judgments in the LBO-Related Causes of Action and the State Law Avoidance Claims.

All current and former LBO Lenders, and all Loan Agents and advisors that received payments in respect of such Claims or in connection with the incurrence of such obligations of

---

[15] The information contained herein was obtained in Exhibits 1071 and 1072 to the Examiner's Report.

the Debtors prior to the Effective Date, (whether on account of principal, interest, fees, expenses or otherwise) may be required to disgorge such amounts based on the final resolution of the Litigation Trust Causes of Action (but they will not be required to disgorge any consideration received under the Pre-LBO Debtholder Plan regardless of the final resolution of the Litigation Trust Causes of Action). All proceeds of the Litigation Trust Causes of Action and all amounts held in the Distribution Trust Reserve, net of any additional expenses of the Litigation Trust and Distribution Trust (including without limitation any taxes required to be paid by such Trusts), shall be distributed to the Holders of Distribution Trust Interests in accordance with the terms of the Pre-LBO Debtholder Plan and the Litigation Distribution Orders.

### C. The Pre-LBO Debtholder Plan is Fair, Reasonable and In the Best Interests of the Debtors' Estates and All Creditors

The Proponents believe that the Pre-LBO Debtholder Plan is fair, reasonable and in the best interests of the Debtors' Estates and all Creditors. The Pre-LBO Debtholder Plan is intended to prosecute all claims and causes of action addressed in the Examiner's Report; yet, the Proponents recognize that while the Examiner conducted a thorough review of the 2007 leveraged buyout and a comprehensive analysis of the potential litigation outcomes, the Proponents also recognize that the Examiner is not a court of law nor would the Examiner's Report be conclusive in any litigation brought involving the legal issues analyzed therein. Accordingly, the Pre-LBO Debtholder Plan, unlike other plans proposed in the Chapter 11 Cases, is not premised on a proposed settlement derived from the Proponents' artificial, self-serving interpretation of how a court would adjudicate the LBO-Related Causes of Action and the State Law Avoidance Claims. Instead, the Pre-LBO Debtholder Plan generally distributes, on the Effective Date, the minimum recovery each Class would receive taking into account such Class's own worst outcome of the Trust Causes of Action and leaves the questions of fact and law regarding the LBO-Related Causes of Action and the State Law Avoidance Claims to be determined by the appropriate court of law or settled by the applicable parties after the Effective Date of the Pre-LBO Debtholder Plan.

**THE PROPONENTS BELIEVE THAT THE PRE-LBO DEBTHOLDER PLAN WILL ENABLE THE DEBTORS TO REORGANIZE SUCCESSFULLY AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PRE-LBO DEBTHOLDER PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR CREDITORS. THE PROPONENTS URGE CREDITORS TO VOTE TO ACCEPT THE PRE-LBO DEBTHOLDER PLAN.**

# II.

## TREATMENT UNDER THE PRE-LBO DEBTHOLDER PLAN

### Chart of Consideration Allocable to Each Class

The following is representative of the consideration each Class of Claims is entitled to receive under the Pre-LBO Debtholder Plan.  Each of the recovery components for Impaired Classes, *i.e.*, Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests, are explained in further detail in the preceding section and in the operative provisions of the Pre-LBO Debtholder Plan.

*Treatment of Administrative and Priority Tax Claims*

| Class[16] | Treatment |
|---|---|
| DIP Facility Claims | Payment in full in Cash. |
| Administrative Expense Claims | Payment in full in Cash at the time such Administrative Expense Claim becomes Allowed. |
| Priority Tax Claims | At the option of the Reorganized Debtors either (i) payment in full in Cash after such Priority Tax Claim becomes an Allowed Claim, (ii) regular installment payments in Cash equal to the Allowed amount of such Claim over a period ending not later than the fifth anniversary of the Petition Date, together with interest compounded annually from the Effective Date on any outstanding balance calculated at a rate determined under section 511 of the Bankruptcy Code or (iii) such other treatment as agreed to by the Holder of an Allowed Priority Tax Claim and the Reorganized Debtors. |

*Unimpaired Classes Whose Claims Are Being Reinstated*

| Class[17] | Treatment |
|---|---|
| Priority Non-Tax Claims Classes | Reinstated. |
| Other Secured Claims | Reinstated. |

*Other Classes of Claims and Interests*

| Class | Initial Distribution | Distribution Trust Interests | Creditors' Trust Interests |
|---|---|---|---|
| Step One Senior Loan Claims | Pro Rata share of LBO Debt Reserve DEV allocable to | Class 1C Distribution Trust Interests on | Class 1C Creditors' Trust Interests, but only to the |

---

[16] Treatment applies to such Class at all Debtor entities.
[17] Treatment applies to such Class at all Debtor entities.

| Class | Initial Distribution | Distribution Trust Interests | Creditors' Trust Interests |
|---|---|---|---|
| (Class1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | Step One Lender Claims Classes, on account of Claims against Tribune and the Guarantor Debtors. | account of Claims against Tribune and Class 50C-111C Distribution Trust Interests on account of Claims against the respective Guarantor Debtors. | extent such Holder of a Step One Senior Loan Claim has not made the Non-Contribution Election. |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | Pro Rata share of LBO Debt Reserve DEV allocable to Step Two Lender Classes, on account of Claims against Tribune and the Guarantor Debtors, but only in the event the Senior Loan Claim Sharing Resolution is determined in favor of Step Two Lenders (*i.e.*, sharing is enforced). If the Senior Loan Claim Sharing Resolution is not determined in favor of Step Two Lenders or if the Bankruptcy Court defers consideration of the Senior Loan Claim Sharing Resolution, the Initial Distribution otherwise allocable to the Step Two Lenders will be placed in the Distribution Trust Reserve for ultimate distribution in accordance with the Litigation Distribution Orders. | Class 1D Distribution Trust Interests on account of Claims against Tribune and Class 50D-111D Distribution Trust Interests on account of Claims against the respective Guarantor Debtors. | Class 1D Creditors' Trust Interests, but only to the extent such Holder of a Step Two Senior Loan Claim has not made the Non-Contribution Election. |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | The amount of the LBO Debt Reserve DEV otherwise allocable to the Classes of Bridge Loan Lenders shall be placed in the Distribution Trust Reserve for ultimate distribution in accordance with the Litigation Distribution Orders. | Class 1E Distribution Trust Interests and Class 50E-111E Distribution Trust Interests, as applicable. | Class 1E Creditors' Trust Interests, but only to the extent such Holder of a Bridge Loan Claim has not made the Non-Contribution Election. |
| Senior Noteholder Claims (Class 1F). | Pro Rata share of Parent DEV allocable to Senior Noteholder Class, plus a Pro Rata share of initial distributions otherwise allocable to the EGI-TRB LLC Notes Class and the PHONES Notes Class in accordance with the applicable | Class 1F Distribution Trust Interests. | Class 1F Creditors' Trust Interests, but only to the extent such Holder of a Senior Noteholder Claim has not made the Non-Contribution Election. |

| Class | Initial Distribution | Distribution Trust Interests | Creditors' Trust Interests |
|---|---|---|---|
| | subordination provisions in the EGI-TRB LLC Notes and the PHONES Notes Indenture, less the amount of Cash received as an Initial Distribution that is necessary to fund any shortfall to ensure that Holders of Allowed Other Non-Guarantor Debtor Claims are paid in full, in Cash (including Postpetition Interest). | | |
| Other Parent Claims (Class 1G). [18] | Pro Rata share of Parent DEV; *provided, however*, if the Class of Other Parent Claims votes to accept the Pre-LBO Debtholder Plan, subject to the Other Parent Claims Purchase Price Cap, each Holder of an Allowed Other Parent Claim shall have the right to put its Allowed Other Parent Claim to the Claims Purchaser in exchange for payment in Cash equal to 15% of such Holder's Allowed Other Parent Claim. | Class 1G Distribution Trust Interests; *provided, however*, that to the extent the Other Parent Claims Class votes to accept the Pre-LBO Debtholder Plan and the Claims Purchase is consummated, Holders of Other Parent Claims that elected the Other Parent Claims Put Option shall not receive Class 1G Distribution Trust Interests. | Class 1G Creditors' Trust Interests, but only to the extent such Holder of Other Parent Claims has not made the Non-Contribution Election; *provided, however,* that to the extent the Other Parent Claims Class votes to accept the Pre-LBO Debtholder Plan and the Claims Purchase is consummated, such Holder did not elect the Other Parent Claims Put Option. |
| Other Non-Guarantor Debtor Claims (Classes 2G-49G). | Payment in full, in Cash (including Postpetition Interest). | n/a | n/a |
| Other Guarantor Debtor Claims (Classes 50G-111G). [19] | Cash equal to 8% of their Allowed Other Guarantor Debtor Claim; *provided, however*, if the applicable Class of Other Guarantor Debtor Claims votes to accept the Pre-LBO Debtholder Plan, | Class 50G-111G Distribution Trust Interests; *provided, however*, that to the extent the applicable Other Guarantor Debtor Claims Class votes to | n/a |

---

[18] If Class 1G accepts the Pre-LBO Debtholder Plan, for each Allowed Other Parent Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Parent Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests and Creditors' Trust Interests). In order for an Other Parent Claims Put Option to be effective, the Holder of an Allowed Other Parent Claim electing the Other Parent Claims Put Option must also not make the Non-Contribution Election. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[19] For each of Class 50G-111G that accepts the Pre-LBO Debtholder Plan, for each Allowed Other Guarantor Debtor Claim in such accepting Class that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, shall receive all distributions on account thereof (i.e., Initial Distributions and Distribution Trust Interests). To the extent the aggregate consideration necessary to purchase Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims in the applicable Class, rounded to the nearest whole dollar, at the Other Guarantor Debtor Purchase Price and the remaining portion of the applicable Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the applicable Other Guarantor Debtor Put Claims.

| Class | Initial Distribution | Distribution Trust Interests | Creditors' Trust Interests |
|---|---|---|---|
| | subject to the Other Guarantor Debtor Purchase Price Cap, each Holder of an Allowed Other Guarantor Debtor Claim in the applicable accepting Class shall be able to put its Allowed Other Guarantor Debtor Claim to the Claims Purchaser in exchange for payment in Cash equal to 25% of such Holder's Allowed Other Guarantor Debtor Claim in such accepting Class. | accept the Pre-LBO Debtholder Plan, each Holder of an Other Guarantor Debtor Claim in such Class that elected the Other Guarantor Debtor Claims Put Option shall not receive Class 50G-111G Distribution Trust Interests, as applicable. | |
| EGI-TRB LLC Notes Claims (Class 1H). | Pro Rata share of Parent DEV allocable to EGI-TRB LLC Notes Claims will be (i) turned over to Senior Noteholders on account of the subordination provisions in the EGI-TRB LLC Notes and (ii) the remainder placed in the Distribution Trust Reserves for other potential beneficiaries of the subordination provisions of the EGI-TRB LLC Notes pending allowance of such potential beneficiaries' Claims and ultimately distributed in accordance with the Litigation Distribution Orders. | Class 1H Distribution Trust Interests; *provided, however,* that distributions on account of Class 1H Distribution Trust Interests shall be allocated in accordance with the subordination provisions of the EGI-TRB LLC Notes. | Class 1H Creditors' Trust Interests, but only to the extent such Holder of EGI-TRB LLC Notes Claims has not made the Non-Contribution Election; *provided, however,* that distributions on account of Class 1H Creditors' Trust Interests may be allocated in accordance with the subordination provisions of the EGI-TRB LLC Notes to the extent deemed applicable pursuant to the Creditors' Trust Distribution Orders. |
| PHONES Notes Claims (Class 1I).[20] | Pro Rata share of Parent DEV allocable to PHONES Notes Claims will be (i) turned over to Senior Noteholders on account of the subordination provisions in the PHONES Notes Indenture and (ii) the remainder placed in the Distribution Trust Reserves for other potential beneficiaries of the subordination provisions of the PHONES Notes Indenture pending allowance of such potential beneficiaries' Claims and ultimately distributed in accordance with the Litigation | Class 1I Distribution Trust Interests; *provided, however,* that distributions on account of Class 1I Distribution Trust Interests shall be allocated in accordance with the subordination provisions of the PHONES Notes Indenture. | Class 1I Creditors' Trust Interests, but only to the extent such Holder of PHONES Notes Claims has not made the Non-Contribution Election; *provided, however,* that distributions on account of Creditors' Trust Interests may be allocated in accordance with the subordination provisions of the PHONES Notes Indenture, to the extent deemed applicable pursuant to the Creditors' Trust Distribution Orders. |

[20] The PHONES Notes Claims Class may include PHONES Notes Exchange Claims depending on the PHONES Notes Claims Resolution. The PHONES Notes Claims and the PHONES Notes Exchange Claims shall be Allowed in the amount(s) determined by the Bankruptcy Court.

| Class | Initial Distribution | Distribution Trust Interests | Creditors' Trust Interests |
|---|---|---|---|
| | Distribution Orders. | | |
| Subordinated Securities Claims (Class 1K). | The amount that would have equated to an initial distribution otherwise allocable to Subordinated Securities Claims shall be placed in the Distribution Trust Reserve for ultimate distribution in accordance with the Litigation Distribution Orders. | Class 1K Distribution Trust Interests on account of Claims against Tribune. | Class 1K Creditors' Trust Interests, but only to the extent such Holder of a Subordinated Securities Claim has not made the Non-Contribution Election. |

## III.

## ESTIMATED RECOVERIES UNDER THE PRE-LBO DEBTHOLDER PLAN

All estimated recoveries contemplated in the following charts are based solely on consideration related to the DEV. For illustrative purposes and to enable Creditors to compare their estimated recoveries under the Debtor/LBO Lender Plan to their estimated recoveries under the Pre-LBO Debtholder Plan, the DEV of $6.75 billion and the 8.4%/91.6% allocation of DEV between Tribune and its Subsidiaries are used herein for illustrative purposes only. As previously noted, the actual DEV and allocation of the DEV among Tribune and its Subsidiaries will be determined by the Bankruptcy Court in connection with Confirmation and the Proponents reserve all rights to assert at Confirmation that the DEV or the allocation thereof between Tribune and the Subsidiaries is different than set forth herein.

*Chart 1– Assumptions: (i) Step Two Lenders share in all Step One Lender recoveries even if Step Two Lender Claims are avoided; (ii) PHONES Notes Claims are Allowed in the amount of $703 million; and (iii) PHONES Notes Exchange Claims are classified as Subordinated Securities Claims and Allowed in the amount of $56 million.*

The following chart depicts estimated recoveries for each Class of Claims and Interests under the Pre-LBO Debtholder Plan using the Chart 1 – Assumptions. The Initial Distribution to all Classes in the aggregate is $3.458 billion or 51.2% of the DEV using these assumptions.

| Class | Estimated Claim Amounts[21] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|

[21] For the exclusive purpose of making Initial Distributions under the Pre-LBO Debtholder Plan, the Step One Senior Loan Claims and Step Two Senior Loan Claims have been provisionally Allowed in the amounts listed above. For the avoidance of doubt, the Claims of the LBO Lenders continue to be subject to challenge by the Litigation Trust.

| Class | Estimated Claim Amounts[21] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Step One Senior Loan Claims (Class 1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | $6.621 billion | 38.7% | 38.7% or 45.9%[22] | 57.4% | 75.6% |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | $2.101 billion | 38.7% | 38.7% or 45.9%[23] | 57.4% | 75.6% |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | $1.620 billion | 0.0% | 38.7% or 0.0%[24] | 0.0% | 4.8% |
| Senior Noteholder Claims (Class 1F).[25] | $1.283 billion | 4.8% | 100.0% | 100.0% | 4.8% |
| Other Parent Claims (Class 1G). | $154 million[26] | 4.4% or 15.0%[27] | 100.0% | 76.6% | 4.4% |

---

[22] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[23] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[24] The higher percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The lower percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[25] Estimated percentage recoveries shown for the Senior Noteholder Class are gross percentages. The actual estimated recovery percentages retained by the Senior Noteholders will be reduced to account for any payments required to be made on account of the Other Non-Guarantor Debtor Claims. Thus, for example, the net Initial Distribution for Senior Noteholder Claims will be 4.3%.

[26] For illustrative purposes, the estimated Claim amount utilized herein for the Other Parent Claims is equal to the mid-point estimated Other Parent Claims amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan.

[27] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Parent Claims Put Option or the conditions precedent for the Other Parent Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Parent Claims Put Option and the conditions precedent for the Other Parent Claims Put Option have been satisfied. The Other Parent Claims Put Option provides that if Class 1G accepts the Pre-LBO Debtholder Plan, for each Allowed Other Parent Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Parent Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests, Creditors' Trust Interests and the seller will not receive any further distribution on account of their Claim). In order for an Other Parent Claims Put Option to be effective, the Holder of an Allowed Other Parent

| Class | Estimated Claim Amounts[21] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Other Non-Guarantor Debtor Claims (Classes 2G-49G). | $6 million[28] | 100.0% | 100.0% | 100.0% | 100.0% |
| Other Guarantor Debtor Claims (Classes 50G-111G). | $112 million[29] | 8.0% or 25.0%[30] | 100.0% | 100.0% | 8.0% |
| EGI-TRB LLC Notes Claims (Class 1H). | $235 million | 0.0% | 0.0% | 0.0% | 0.0% |
| PHONES Notes Claims (Class 1I). | $703 million | 0.0% | 100.0% | 32.9% | 0.0% |
| Subordinated Securities Claims (Class 1K). | $56 million | 0.0% | 100.0% | 0.0% | 0.0% |
| Tribune Interests (Class 1L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Non-Guarantor Debtors (Classes 2L-49L). | N/A | N/A | N/A | N/A | N/A |

Claim electing the Other Parent Claims Put Option must also not make the Non-Contribution Election. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[28] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[29] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[30] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Guarantor Debtor Put Option or the conditions precedent for the Other Guarantor Debtor Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Guarantor Debtor Claims Put Option and the conditions precedent for the Other Guarantor Debtor Claims Put Option have been satisfied. The Other Guarantor Debtor Claims Put Option provides that for each of 50G-111G that accepts the Pre-LBO Debtholder Plan, for each Allowed Other Guarantor Debtor Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, shall receive all distributions on account thereof (i.e., Initial Distributions, Distribution Trust Interests and the seller will not receive any further distribution on account of their Claim). To the extent the aggregate consideration necessary to purchase the Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims, rounded to the nearest whole dollar, at the Other Guarantor Debtor Claims Purchase Price and the remaining portion of the Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the Other Guarantor Debtor Put Claims.

| Class | Estimated Claim Amounts[21] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Interests in Guarantor Debtors (Classes 50L-111L). | N/A | N/A | N/A | N/A | N/A |

*Chart 2 – Assumptions: (i) Step Two Lenders share in all Step One Lender recoveries even if Step Two Lender Claims are avoided; and (ii) PHONES Notes Claims are Allowed in the amount of $1.197 billion.*

The following chart depicts estimated recoveries for each Class of Claims and Interests under the Pre-LBO Debtholder Plan using the Chart 2 – Assumptions. The Initial Distribution to all Classes in the aggregate is $3.057 billion or 45.3% of the DEV using these assumptions.

| Class | Estimated Claim Amounts[31] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Step One Senior Loan Claims (Class 1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | $6.621 billion | 34.2% | 34.2% or 40.5%[32] | 57.4% | 75.6% |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | $2.101 billion | 34.2% | 34.2% or 40.5%[33] | 57.4% | 75.6% |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | $1.620 billion | 0.0% | 34.2% or 0.0%[34] | 0.0% | 4.8% |

---

[31] For the exclusive purpose of making Initial Distributions under the Pre-LBO Debtholder Plan, the Step One Senior Loan Claims and Step Two Senior Loan Claims have been provisionally Allowed in the amounts listed above. For the avoidance of doubt, the Claims of the LBO Lenders continue to be subject to challenge by the Litigation Trust.

[32] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[33] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[34] The higher percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The lower percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

| Class | Estimated Claim Amounts[31] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Senior Noteholder Claims (Class 1F).[35] | $1.283 billion | 4.8% | 100.0% | 100.0% | 4.8% |
| Other Parent Claims (Class 1G). | $154 million[36] | 4.3% or 15.0%[37] | 100.0% | 62.6% | 4.3% |
| Other Non-Guarantor Debtor Claims (Classes 2G-49G). | $6 million[38] | 100.0% | 100.0% | 100.0% | 100.0% |
| Other Guarantor Debtor Claims (Classes 50G-111G). | $112 million[39] | 8.0% or 25.0%[40] | 100.0% | 100.0% | 8.0% |

[35]Estimated percentage recoveries shown for the Senior Noteholder Class are gross percentages. The actual estimated recovery percentages retained by the Senior Noteholders will be reduced to account for any payments required to be made on account of the Other Non-Guarantor Debtor Claims. Thus, for example, the net Initial Distribution for Senior Noteholder Claims will be 4.3%.

[36] For illustrative purposes, the estimated Claim amount utilized herein for the Other Parent Claims is equal to the mid-point estimated Other Parent Claims amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan.

[37] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Parent Claims Put Option or the conditions precedent for the Other Parent Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Parent Claims Put Option and the conditions precedent for the Other Parent Claims Put Option have been satisfied. The Other Parent Claims Put Option provides that if Class 1G accepts the Pre-LBO Debtholder Plan, for each Allowed Other Parent Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Parent Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests, Creditors' Trust Interests and the seller will not receive any further distribution on account of their Claim). In order for an Other Parent Claims Put Option to be effective, the Holder of an Allowed Other Parent Claim electing the Other Parent Claims Put Option must also not make the Non-Contribution Election. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[38] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[39] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[40] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Guarantor Debtor Claims Put Option or the conditions precedent for the Other Guarantor Debtor Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Guarantor Debtor Claims Put Option and the conditions precedent for the Other Guarantor Debtor Claims Put Option have been satisfied. The Other Guarantor Debtor Claims Put Option provides that for each 50G-111G that accepts the Pre-LBO Debtholder Plan, for each Allowed Other Guarantor Debtor Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests, and the seller will not receive any further distribution on account of their Claim). To the extent the aggregate consideration necessary to purchase the Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims, rounded to the nearest whole dollar, at the Other Guarantor Debtor Claims Purchase Price and the remaining portion of the Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the Other Guarantor Debtor Put Claims.

| Class | Estimated Claim Amounts[31] | Estimated Total Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| EGI-TRB LLC Notes Claims (Class 1H). | $235 million | 0.0% | 0.0% | 0.0% | 0.0% |
| PHONES Notes Claims (Class 1I). | $1.197 billion | 0.0% | 100.0% | 21.1% | 0.0% |
| Subordinated Securities Claims (Class 1K). | $0 | N/A | N/A | N/A | N/A |
| Tribune Interests (Class 1L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Non-Guarantor Debtors (Classes 2L-49L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Guarantor Debtors (Classes 50L-111L). | N/A | N/A | N/A | N/A | N/A |

*Chart 3– Assumptions: (i) Step Two Lenders do not share in Step One Lender recoveries if Step Two Lender Claims are avoided; (ii) PHONES Notes Claims are Allowed in the amount of $703 million; and (iii) PHONES Notes Exchange Claims are classified as Subordinated Securities Claims and Allowed in the amount of $56 million,*

The following chart depicts estimated recoveries for each Class of Claims and Interests under the Pre-LBO Debtholder Plan using the Chart 3 – Assumptions. The Initial Distribution to all Classes in the aggregate is $2.644 billion or 39.2% of the DEV using these assumptions.

| Class | Estimated Claim Amounts[41] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Step One Senior Loan Claims (Class 1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | $6.621 billion | 38.7% | 38.7% or 45.9%[42] | 75.6% | 75.6% |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | $2.101 billion | 0.0% | 38.7% or 45.9%[43] | 0.0% | 75.6% |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | $1.620 billion | 0.0% | 38.7% or 0.0%[44] | 0.0% | 4.8% |

[41] For the exclusive purpose of making Initial Distributions under the Pre-LBO Debtholder Plan, the Step One Senior Loan Claims and Step Two Senior Loan Claims have been provisionally Allowed in the amounts listed above. For the avoidance of doubt, the Claims of the LBO Lenders continue to be subject to challenge by the Litigation Trust.

[42] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[43] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[44] The higher percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO Debt is avoided. The lower percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

| Class | Estimated Claim Amounts[41] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Senior Noteholder Claims (Class 1F). [45] | $1.283 billion | 4.8% | 100.0% | 100.0% | 4.8% |
| Other Parent Claims (Class 1G). | $154 million[46] | 4.4% or 15.0%[47] | 100.0% | 76.6% | 4.4% |
| Other Non-Guarantor Debtor Claims (Classes 2G-49G). | $6 million[48] | 100.0% | 100.0% | 100.0% | 100.0% |
| Other Guarantor Debtor Claims (Classes 50G-111G). | $112 million[49] | 8.0% or 25.0%[50] | 100.0% | 100.0% | 8.0% |

[45] Estimated percentage recoveries shown for the Senior Noteholder Class are gross percentages. The actual estimated recovery percentages retained by the Senior Noteholders will be reduced to account for any payments required to be made on account of the Other Non-Guarantor Debtor Claims. Thus, for example, the net Initial Distribution for Senior Noteholder Claims will be 4.3%.

[46] For illustrative purposes, the estimated Claim amount utilized herein for the Other Parent Claims is equal to the mid-point estimated Other Parent Claims amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan.

[47] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Parent Claims Put Option or the conditions precedent for the Other Parent Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Parent Claims Put Option and the conditions precedent for the Other Parent Claims Put Option have been satisfied. The Other Parent Claims Put Option provides that if Class 1G accepts the Pre-LBO Debtholder Plan, for each Allowed Other Parent Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Parent Claim, shall receive all distributions on account thereof (i.e., Initial Distributions, Distribution Trust Interests, Creditors' Trust Interests and the seller will not receive any further distribution on account of their Claim). In order for an Other Parent Claims Put Option to be effective, the Holder of an Allowed Other Parent Claim electing the Other Parent Claims Put Option must also not make the Non-Contribution Election. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[48] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[49] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[50] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Parent Claims Put Option or the conditions precedent for the Other Guarantor Debtor Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Guarantor Debtor Claims Put Option and the conditions precedent for the Other Guarantor Debtor Claims Put Option have been satisfied. The Other Guarantor Debtor Claims Put Option provides that for each of 50G-111G that accepts the Pre-LBO Debtholder Plan, for each Allowed Other Guarantor Debtor Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, shall receive all distributions on account thereof (i.e., Initial Distributions, Distribution Trust Interests and the seller will not receive any further distribution on account of their Claim). To the extent the aggregate consideration necessary to purchase the Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims, rounded to the nearest whole dollar, at the Other Guarantor Debtor Claims Purchase Price and the remaining portion of the Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the Other Guarantor Debtor Put Claims.

| Class | Estimated Claim Amounts[41] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| EGI-TRB LLC Notes Claims (Class 1H). | $235 million | 0.0% | 0.0% | 0.0% | 0.0% |
| PHONES Notes Claims (Class 1I). | $703 million | 0.0% | 100.0% | 32.9% | 0.0% |
| Subordinated Securities Claims (Class 1K). | $56 million | 0.0% | 100.0% | 0.0% | 0.0% |
| Tribune Interests (Class 1L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Non-Guarantor Subsidiaries (Classes 2L-49L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Guarantor Subsidiaries (Classes 50L-111L). | N/A | N/A | N/A | N/A | N/A |

*Chart 4– Assumptions: (i) Step Two Lenders do not share in Step One Lender recoveries if Step Two Lender Claims are avoided; and (ii) PHONES Notes Claims are Allowed in the amount of $1.197 billion.*

     The following chart depicts estimated recoveries for each Class of Claims and Interests under the Pre-LBO Debtholder Plan using the Chart 4 – Assumptions. The Initial Distribution to all Classes in the aggregate is $2.340 billion or 34.7% of the DEV using these assumptions.

| Class | Estimated Claim Amounts[51] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Step One Senior Loan Claims (Class 1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | $6.621 billion | 34.2% | 34.2% or 40.5%[52] | 75.6% | 75.6% |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | $2.101 billion | 0.0% | 34.2% or 40.5%[53] | 0.0% | 75.6% |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | $1.620 billion | 0.0% | 34.2% or 0.0%[54] | 0.0% | 4.8% |
| Senior Noteholder Claims (Class 1F).[55] | $1.283 billion | 4.8% | 100.0% | 100.0% | 4.8% |

---

[51] For the exclusive purpose of making Initial Distributions under the Pre-LBO Debtholder Plan, the Step One Senior Loan Claims and Step Two Senior Loan Claims have been provisionally Allowed in the amounts listed above. For the avoidance of doubt, the Claims of the LBO Lenders continue to be subject to challenge by the Litigation Trust.

[52] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[53] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[54] The higher percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The lower percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

| Class | Estimated Claim Amounts[51] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Other Parent Claims (Class 1G). | $154 million[56] | 4.3% or 15.0%[57] | 100.0% | 62.6% | 4.3% |
| Other Non-Guarantor Debtor Claims (Classes 2G-49G). | $6 million[58] | 100.0% | 100.0% | 100.0% | 100.0% |
| Other Guarantor Debtor Claims (Classes 50G-111G). | $112 million[59] | 8.0% or 25.0%[60] | 100.0% | 100.0% | 8.0% |
| EGI-TRB LLC Notes Claims (Class 1H). | $235 million | 0.0% | 0.0% | 0.0% | 0.0% |

[55] Estimated percentage recoveries shown for the Senior Noteholder Class are gross percentages. The actual estimated recovery percentages retained by the Senior Noteholders will be reduced to account for any payments required to be made on account of the Other Non-Guarantor Debtor Claims. Thus, for example, the net Initial Distribution for Senior Noteholder Claims will be 4.3%.

[56] For illustrative purposes, the estimated Claim amount utilized herein for the Other Parent Claims is equal to the mid-point estimated Other Parent Claims amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan.

[57] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Parent Claims Put Option or the conditions precedent for the Other Parent Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Parent Claims Put Option and the conditions precedent for the Other Parent Claims Put Option have been satisfied. The Other Parent Claims Put Option provides that if Class 1G accepts the Pre-LBO Debtholder Plan, for each Allowed Other Parent Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Parent Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests, Creditors' Trust Interests and the seller will not receive any further distribution on account of their Claim). In order for an Other Parent Claims Put Option to be effective, the Holder of an Allowed Other Parent Claim electing the Other Parent Claims Put Option must also not make the Non-Contribution Election. To the extent the aggregate consideration necessary to purchase the Other Parent Put Claims exceeds the Other Parent Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Parent Put Claims, rounded to the nearest whole dollar, at the Other Parent Claims Purchase Price and the remaining portion of the Other Parent Put Claims shall receive their Pro Rata portion of the Initial Distribution, Distribution Trust Interests and Creditors' Trust Interests on account of such remaining portion of the Other Parent Put Claims.

[58] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[59] The combined estimated Claim amounts utilized herein for the Other Guarantor Debtor Claims and Other Non-Guarantor Debtor Claims equal the mid-point estimated amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan for the General Unsecured Claims (as defined in the Debtor/LBO Lender Plan) against the Filed Subsidiary Debtors. The actual Allowed amounts of Other Parent Claims, Other Guarantor Debtors Claims and Other Non-Guarantor Debtor Claims may differ substantially depending on the outcome of the Claims reconciliation process.

[60] The lower percentage recovery is based on a circumstance where the applicable Holder has not elected the Other Guarantor Debtor Claims Put Option or the conditions precedent for the Other Guarantor Debtor Claims Put Option have not been satisfied. The higher percentage recovery reflects a circumstance where the Holder elects the Other Guarantor Debtor Claims Put Option and the conditions precedent for the Other Guarantor Debtor Claims Put Option have been satisfied. The Other Guarantor Debtor Claims Put Option provides that for each 50G-111G that accepts the Pre-LBO Debtholder Plan, for each Allowed Other Guarantor Debtor Claim that is put to the Claims Purchaser, the Claims Purchaser, as transferee of such Other Guarantor Debtor Claim, shall receive all distributions on account thereof (*i.e.*, Initial Distributions, Distribution Trust Interests and the seller will not receive any further distribution on account of their Claim). To the extent the aggregate consideration necessary to purchase the Other Guarantor Debtor Put Claims exceeds the Other Guarantor Debtor Claims Purchase Price Cap, the Claims Purchaser will purchase a Pro Rata share of the Other Guarantor Debtor Put Claims, rounded to the nearest whole dollar, at the Other Guarantor Debtor Claims Purchase Price and the remaining portion of the Other Guarantor Debtor Put Claims shall receive their Pro Rata portion of the Initial Distribution and Distribution Trust Interests on account of such remaining portion of the Other Guarantor Debtor Put Claims.

| Class | Estimated Claim Amounts[81] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| PHONES Notes Claims (Class 1I). | $1.197 billion | 0.0% | 100.0% | 21.1% | 0.0% |
| Subordinated Securities Claims (Class 1K). | $0 | N/A | N/A | N/A | N/A |
| Tribune Interests (Class 1L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Non-Guarantor Subsidiaries (Classes 2L-49L). | N/A | N/A | N/A | N/A | N/A |
| Interests in Guarantor Subsidiaries (Classes 50L-111L). | N/A | N/A | N/A | N/A | N/A |

# IV.

## ESTIMATED LIQUIDATION RECOVERIES
## UNDER THE PRE-LBO DEBTHOLDER PLAN

The estimated recoveries displayed in the following charts apply the Debtors' Liquidation Analysis (which can be found at Exhibit D to the General Disclosure Statement) to the basic constructs outlined in the Pre-LBO Debtholder Plan; *provided, however*, that (i) the Put Options and (ii) the Senior Noteholder backstop of the Other Non-Guarantor Debtor Claims recovery would be unavailable in a liquidation scenario. The following charts utilize a $3.783 billion liquidation value, which represents the Debtors' high-end estimated liquidation value after chapter 11 Administrative and Priority Claims are paid (net of $560 million of pension termination claims) (the "Liquidation Value"). Additionally, although the Debtors' Liquidation Analysis contemplates an entity-by-entity valuation, it does not set forth an illustrative Liquidation Value split between Tribune and its Subsidiaries. Accordingly, for illustrative purposes and to facilitate a comparison on an apples-to-apples basis with the recovery scenarios outlined under the Pre-LBO Debtholder Plan, the following charts assume that 8.4% of the Liquidation Value is allocable to Tribune with 91.6% of such Liquidation Value allocable to the Subsidiaries.

All Initial Distributions contemplated herein shall be paid using consideration obtained from Estate assets and not from any other funding source, i.e., the Distribution Trust Assets or the Creditors' Trust Assets.

*Chart 1– Assumptions: (i) Step Two Lenders share in all Step One Lender recoveries even if Step Two Lender Claims are avoided; (ii) PHONES Notes Claims are Allowed in the amount of $703 million; and (iii) PHONES Notes Exchange Claims are classified as Subordinated Securities Claims and Allowed in the amount of $56 million.*

The following chart depicts estimated recoveries for each Class of Claims and Interests in a liquidation scenario using the Chart 1 – Assumptions. The Initial Distribution to all Classes in the aggregate is $914 million or 24.2% of the Liquidation Value using these assumptions.

| Class | Estimated Claim Amounts[61] | Estimated Recovery On Account of the Initial Distribution | Estimated Total Recovery if All LBO Debt is Avoided | Estimated Total Recovery if Only Step Two LBO Debt/Bridge Loan Debt/EGI-TRB Notes are Avoided and Step One Lenders are Not Entitled to Benefit Therefrom | Estimated Total Recovery if the LBO Debt is Allowed (Not Avoided) |
|---|---|---|---|---|---|
| Step One Senior Loan Claims (Class 1C)/Step One Senior Loan Guaranty Claims (Classes 50C-111C). | $6.621 billion | 9.9% | 9.9% or 11.8%[62] | 32.1% | 42.3% |
| Step Two Senior Loan Claims (Class 1D)/Step Two Senior Loan Guaranty Claims (Classes 50D-111D). | $2.101 billion | 9.9% | 9.9% or 11.8%[63] | 32.1% | 42.3% |
| Bridge Loan Claims (Class 1E)/Bridge Loan Guaranty Claims (Classes 50E-111E). | $1.620 billion | 0.0% | 9.9% or 0.0%[64] | 0.0% | 2.7% |
| Senior Noteholder Claims (Class 1F). | $1.283 billion | 2.7% | 100.0% | 62.8% | 2.7% |
| Other Parent Claims (Class 1G). | $154 million[65] | 2.5% | 100.0% | 41.0% | 2.5% |

[61] For the hypothetical purpose of making Initial Distributions under a liquidation scenario, the Step One Senior Loan Claims and Step Two Senior Loan Claims would be provisionally Allowed in the amounts listed above.

[62] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[63] The lower percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The higher percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[64] The higher percentage recovery is based on the outcome where all Step One Lender Claims, Step Two Lender Claims and Bridge Loan Lender Claims are treated *pari passu* if all LBO-Debt is avoided. The lower percentage recovery is based on the outcome where all LBO Debt is avoided and all DEV remaining after non-LBO debt is paid in full is deemed to reside at the Guarantor Subsidiaries and the Bridge Loan Lenders remain contractually subordinated to the Step One Lenders and Step Two Lenders.

[65] For illustrative purposes, the estimated Claim amount utilized herein for the Other Parent Claims is equal to the mid-point estimated Other Parent Claims amount utilized in the specific disclosure statement to the Debtor/LBO Lender Plan.